## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DONNA CURLING, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CA No. 1:17cv02989-AT** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BRIAN KEMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## STATE DEFENDANTS' BRIEF IN RESPONSE
## TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Come Now the State Election Board ("SEB"), Secretary of State and Chair of the SEB Brian P. Kemp, members of the SEB David J. Worley, Rebecca N. Sullivan, Ralph F. Simpson, and Seth Harp, and Merle King (hereafter "State Defendants") through counsel, and hereby file this response to the Defendants' Motion for Limited Early and Expedited Discovery.  Doc. 4.

Plaintiffs' motion seeks expedited discovery for their election contest claims that were filed pursuant to O.C.G.A. § 21-2-522.  Plaintiffs assert that they are entitled to discovery on these claims pursuant to O.C.G.A. § 21-2-525(b).  Doc. 4 at 2.  In addition, Plaintiffs assert that they are entitled to discovery because they intend to file a motion for preliminary injunction.  *Id.*

1

**I.     Plaintiffs Are Not Entitled to Discovery for Their Election Contest Claims Because Those Claims Are Moot.**

Plaintiffs' request for expedited discovery should be denied because the election contest claims, and all additional claims seeking to void the June 20, 2017 run-off results, are moot.  *Roudebush v. Hartke*, 405 U.S. 15, 19 (1972).

Pursuant to "Article III of the United States Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."  *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  "[D]ismissal is compulsory as federal subject matter jurisdiction vanishes at the instant the case is mooted."  *Beta Upsilon Chi Upsilon Chptr. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009) (internal citation omitted).

The Constitution provides that the members of the House of Representatives are the judge of elections for its own members.

> Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members,

U.S. Const. Art. I, § 5, Cl. 1.  While state recount or election challenge statutes relating to congressional elections are valid exercises of the state's powers pursuant to U.S. Const. Art. I, § 4, Cl. 1, once the House or Senate member is sworn in and the returns are accepted by that member's chamber, any recount

challenge is moot.  *Roudebush*, 405 U.S. at 19; *McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985).

In *Roudebush* the losing candidate in an election for the House of Representatives, Roudebush, filed a state court election contest.  The winning candidate, Hartke, filed an action in federal court seeking to enjoin the state court action.  A three judge panel enjoined the recount.  While the case was on appeal to the Supreme Court, Hartke was sworn in but only *conditionally*, "without prejudice to the outcome of an appeal pending in the Supreme Court of the United States, and without prejudice to the outcome of any recount that the Supreme Court might order."  *Id.* at 18.  Because the Senate had "postposed making a final determination of who is entitled to the office of Senator, pending the outcome of [the] lawsuit," the Supreme Court held the case was not moot.  *Id.* at 19.  Here, the election was certified on June 26, 2017 and Representative Handel was sworn in to office that same day.[1]  Once a member of the House is sworn in the only election challenge available is in the House of Representatives.  *See* 2 U.S.C. § 381 *et seq.*

Two Court of Appeals cases, both resulting from the 1984 congressional election for Indiana's Eighth Congressional District, further support dismissal of

---

[1] Because the election was a special election to fill a vacancy, there was no two-month window between the certification of elections in November and the candidate's January swearing in.

3

Plaintiffs' election contest claims here. *McIntyre,* 766 F.2d 1078; *Morgan v. U.S.*, 801 F.2d 445 (D.C. Cir. 1986), *cert. denied*, 480 U.S. 911 (1987).

On election night in November 1984, McCloskey, a Democrat, was initially declared the winner by 72 votes. *Morgan*, 801 F.2d at 446. After a recount, McIntyre, a Republican, was declared the winner by 34 votes. *Id.* The Secretary of State certified McIntyre the winner on Dec. 13, 1984. *Id.* Both candidates sought recounts in fifteen counties. *McIntyre*, 766 F.2d at 1080. When the House of Representative convened, the recounts were not complete. *Id.* The House appointed a Committee to investigate and then initiated its own recount. *Id.* Meanwhile, the "recount supervised by the state courts and completed January 22, 1985 showed that McIntyre had won by 418 votes." *Morgan*, 801 F.2d at 446. On April 29, 1985, the House Committee reported that McCloskey won by 4 votes and on May 1, 1985, the House seated McCloskey by a party line vote. *Id.*

The *McIntyre* case began as a state election contest. After recount results were reported in two counties, McIntyre filed objections seeking that the state courts give "new legal instructions about which ballots count." *McIntyre*, 766 F.2d at 1080. McCloskey removed the case to federal court, asserting that the objections filed by McIntyre raised a federal question. *Id.* McCloskey moved for a remand. The district court dismissed the action because, in the district court's

4

view "the state courts lacked jurisdiction to determine the federal issues. Because the district court cannot have jurisdiction when the state court had none, the proceedings had to be terminated." *Id.*

The Seventh Circuit Court of Appeals held that once the House of Representatives had "made its 'unconditional and final judgment'" there was no longer any case or controversy for the federal court and therefore no jurisdiction. *McIntyre*, 766 F.2d at 1081 ("Nothing we say or do, nothing the state court says or does, could affect the outcome of this election."). However, because the Court of Appeals determined that the case had not been properly removed, the case was remanded to the state court rather than dismissed. *McIntyre*, 766 F.2d at 1083.

> The courts of Indiana are entitled to decide for themselves whether to conduct further proceedings with respect to this election -- free, that is, if the cases were improvidently removed. That the case is defunct for purposes of relief in federal courts does not mean that we should *prohibit* Indiana from adjudicating any issues that remain live under state law -- yet prohibition would be the outcome of dismissal rather than remand. No principle of federal law requires Indiana's courts to conduct further proceedings; we do not intimate that the state courts should do so; the state courts are free to decline to proceed; but if the cases were improvidently removed, no principle of federal law bars such proceedings, either. **If the cases were properly removed, however, then the only appropriate disposition is dismissal**.

*McIntyre*, 766 F.2d at 1083 (emphasis added in bold, italics in original).

Here, unlike *McIntyre* this case *was* properly removed because Plaintiffs raised two federal claims in the complaint and amended complaint.  Doc. 1-2 at 55-63, Doc. 15 at 71-85.  Moreover, just as in *McIntyre*, "[b]ecause [the Congress member] has been seated, it is not possible for a federal court to opine on the propriety of that decision or award relief; the federal issues therefore no longer present a case or controversy."  *Id.* at 1082.  Because this Court "may not award relief," Plaintiffs' election contest claims "no longer presents a 'case or controversy' within the meaning of Article III."  *Id.* at 1081.

In another case resulting from the same 1984 congressional election, a group of voters sued the United States, the House of Representatives, and others "alleg[ing] that the refusal to seat McIntyre violated their rights of free speech and association, their first amendment right to petition the government for redress of grievances, their rights under the due process clause and the tenth amendment, along with several other constitutional provisions and the Federal Contested Election Act, Pub. L. No. 91-138, 83 Stat. 284 (1969) (codified at 2 U.S.C. §§ 381-396 (1982))."  *Morgan*, 801 F.2d at 446.  The D.C. Circuit Court of Appeals held that:

> It is difficult to imagine a clearer case of 'textually demonstrable constitutional commitment' of an issue to another branch of government to the exclusion of the courts, . . . than the language of Article I, section 5, clause 1 that 'each House shall be the Judge of the

> Elections, Returns and Qualifications of its own Members.'  The
> provision states not merely that each House 'may judge' these
> matters, but that each House 'shall be *the* Judge' (emphasis added).
> The exclusion of others -- and in particular of others who are judges --
> could not be more evident.

*Morgan*, 801 F.2d at 447.  Like the *McIntyre* Court, the *Morgan* Court recognized that "once the outcome of the contest has been conclusively adjudged by the House there is no meaningful relief [the court] can provide, and the dispute is therefore moot."  *Morgan*, 801 F.2d at 451.

Plaintiffs' election contest claims are moot.  Since there are no election contest claims properly before the Court, no discovery is needed to address those claims.

## II.  Plaintiffs Are Not Entitled to Expedited Discovery Before Defendants' Immunity Defenses Are Adjudicated.

The State Defendants have asserted Eleventh Amendment immunity, sovereign immunity, and official immunity.  Doc. 8-1.  Once these immunities are raised, the State Defendants should be permitted to respond to Plaintiffs' Amended Complaint *prior to* being required to participate in discovery.  *Howe v. City of Enter.*, 861 F.3d 1300, 1302 (11th Cir. 2017) (holding that "requiring the parties to develop their Rule 26(f) report before the court ruled on the immunity defenses [was] inconsistent with . . . decisions which establish that immunity is a right not to be subjected to litigation beyond the point at which immunity is asserted.").  In

*Howe*, the district court had denied Defendants' motion to dismiss without prejudice and instructed the Plaintiff to file another amended complaint. 861 F.3d at 1301. The Court also simultaneously required the defendants to participate in the Rule 26(f) conference and then file a Rule 26 report. *Id.* The Eleventh Circuit reversed the district court's order to the extent it was requiring government defendants to participate in *any* discovery prior to adjudication on the merits of their claims. *Id.* at 1302.

> In the present case, the district court's order not only reserved ruling on the defendants' claims to immunity until after Howe filed a second amended complaint, it also instructed the parties to confer and develop their Rule 26(f) report. Under Rule 26(f), the parties must confer and develop a proposed discovery plan, and '[i]n conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case . . . .' Fed. R. Civ. P. 26(f)(2) (emphasis added). The part of the order requiring the parties to confer and discuss settlement before the court ruled on the defendants' motion to dismiss on immunity grounds is inconsistent with our decision in *Bouchard Transportation*. And the part of the order requiring the parties to develop their Rule 26(f) report before the court ruled on the immunity defenses is also inconsistent with *Bouchard Transportation* and other decisions which establish that immunity is a right not to be subjected to litigation beyond the point at which immunity is asserted.

*Howe*, 861 F.3d at 1302.

Plaintiffs suggest that "any Eleventh Amendment or sovereign immunity issues" have been resolved by their Amended Complaint. Doc. 10 at 2. However, after review of the Amended Complaint, the State Defendants reassert their

8

Eleventh Amendment, sovereign immunity, and official immunity defenses. Additionally, the State Defendants assert qualified immunity as to Counts II and III of the Amended Complaint.[2]

The Supreme Court has explained that the defense of Eleventh Amendment immunity is concerned "not only with the States' ability to withstand suit, but [] their privilege not to be sued." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 n.5 (1993). Eleventh Amendment immunity goes to the Court's subject matter jurisdiction. *Seminole Tribe v. Fla.*, 517 U.S. 44, 72-73 (1996). Whether the immunity applies must be resolved before the Court may address the underlying claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The State Defendants' immunities, which go to subject matter jurisdiction, are immunity both from damages and from suit, and would be effectively lost if Defendants are required to engage in any discovery or discovery related activities before their entitlement to immunity is resolved.

Likewise, the State Defendants will assert the defense of qualified immunity with respect to the federal constitutional claims. This immunity seeks "to protect government officials from the cost of trial and the burdens of broad reaching discovery." *Caraballo-Sandoval v. R.E. Honsted*, 35 F.3d 521, 524 (11th Cir.

---

[2] The State Defendants, pursuant to Fed. R. Civ. Proc. 15(a)(3), will file a motion to dismiss and brief in support on or before September 1, 2017.

1994) (affirming a stay of discovery until district court decided the issue of qualified immunity).  As noted above, Supreme Court precedent plainly instructs that immunity issues, including qualified immunity, should be resolved where possible before commencement of discovery, and that the denial of these immunities on legal grounds is immediately appealable.  *See e.g. Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985).  The plain import is that immunity issues are recognized as threshold issues that should be resolved before further litigation occurs in the case.

The Supreme Court has repeatedly stated that the purpose of governmental immunity is not only protection from civil damages, but also protection from the rigors of litigation itself, including the potential for disruptiveness of discovery. *Id.* at 526; *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982).  Indeed, the Court has emphasized that "[o]ne of the purposes of the *Harlow* [ ] immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'particularly disruptive of effective government.'"  *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Harlow*, 457 U.S. at 817).  In *Ashcroft v. Iqbal*, the Supreme Court reaffirmed this principle, holding that "[t]he basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"  556 U.S. 662, 685 (2009) (quoting *Siegert v. Gilly*, 500

U.S. 226, 236 (1991)).  If Defendants are required to participate in discovery before the immunity issues have been ruled upon, the immunities will be effectively lost.

## III.   Plaintiffs Are Not Entitled to Expedited Discovery in This Matter.

The burden is on Plaintiffs to show good cause why this Court should grant their motion for expedited discovery.

> Factors the Court considers in deciding whether a party has shown good cause include: (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made.

*Digital Assur. Certification, LLC v. Pendolino*, 2017 U.S. Dist. LEXIS 25359 *6-7 (M.D. Fla. Feb. 23, 2017) (citing *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)).

Plaintiffs contend that they are entitled to expedited discovery for a preliminary injunction motion that they have yet to file.  Doc. 4 at 9-10.  Despite not having filed their motion, Plaintiffs seek to serve Defendants with broad ranging discovery requests in an abbreviated time frame.  The two cases cited by Plaintiffs do not support Plaintiffs' entitlement to expedited discovery in this case. In *Thyssenkrupp Elevator Corp. v. Hubbard*, 2013 U.S. Dist. LEXIS 66949 *1 (M.D. Fla. 2013) the parties had *jointly* proposed a scheduling order for discovery

11

prior to a preliminary injunction hearing.  In *Merial LLC v. Fidopharm*,
1:13CV1207-SCJ (ECF 20), the district court permitted expedited discovery in a
case that did not involve government defendants and therefore could not have
considered the impact of immunity defenses on the request for discovery.
Additionally, in both cases, the Plaintiff had already filed a preliminary injunction
motion prior to or contemporaneous with the request for discovery.  Here, despite
filing the initial complaint on July 3, 2017, Plaintiffs failed to promptly serve
Defendants and have yet to file their motion for preliminary injunction.  Therefore,
the first factor weighs against granting the Plaintiffs' motion.

    Plaintiffs' requests for documents are broad and include approximately three
pages of definitions and another four pages of instructions.  These definitions and
instructions add to the breadth and burdensomeness of the requests.  For instance,
the term "document" is defined to include "any document now or at any time in
Defendant's possession, custody or control."  Doc. 4-1 at 2; Doc. 4-2 at 2; Doc. 4-3
at 2.  The definition goes on to state that "A person is deemed in control of a
document if the person has any ownership, possession or custody of the document,
*or the right to secure the document or a copy therefor from any person or public or
private entity having physical possession thereof*."  *Id.* (emphasis added).
Definitions included in requests for production are one factor in measuring the

burdensomeness of the request. *Digital Assur. Certification, LLC v. Pendolino*,
2017 U.S. Dist. LEXIS 25359 *8 (M.D. Fla. Feb. 23, 2017) ("The breadth and
burdensomeness of [Plaintiffs'] requests for production is also evidenced by its
definition of 'Documents' which is seventeen lines long."). Additionally, the
individual document requests are written broadly. For instance, Plaintiffs request
that Defendants provide:

> Any Document relating to electronic pollbooks' errors or *glitches*
> which occurred on Special Election voting day . . . or which occurred
> during *any other election in 2016 or 2017* . . .

Doc. 4-1 at 9 ¶ 6 (emphasis added). First, Plaintiffs do not define "glitches" and
then seek every document, including documents that have never been in
Defendants' possession or control but where any of the Defendants have the right
to get a copy from any public or private entity, relating to *every election* in this
state during the past two years. That's every municipal election, every county
election, every state and federal election, primaries and general, partisan and non-
partisan. That includes *every* polling place in the State of Georgia for every
election over the past two years. Plaintiffs' requests are overly broad and are
burdensome.

Plaintiffs assert that they need discovery to support their preliminary
injunction motion. However, the claims presented in Plaintiffs' complaint are

largely barred as a matter of law.  No amount of discovery can create a cause of action where none currently exists.  Moreover, without a preliminary injunction before the Court, there is no way to assess whether discovery is needed.

Plaintiffs' discovery requests are burdensome, both in their breadth as discussed above, and because government Defendants are entitled, as a matter of law, to have their immunity defenses adjudicated *before* they are required to engage in discovery.  *Howe*, 861 F.3d at 1302.  In addition, Plaintiffs initiated this suit at a time when Defendants are busy preparing for the upcoming municipal elections.  Plaintiffs' discovery requests, particularly at a time when election officials are preparing for the upcoming election, are particularly burdensome.

Finally, with respect to the last factor, Plaintiffs are seeking discovery not only prior to the time set in the local rules, but within days of finally serving several of the Defendants, including two of the State Defendants, with process.[3] Plaintiffs are not entitled to sit on their hands for weeks and then demand that

---

[3] State Defendants David Worley and Merle King were served on August 11 and August 18, 2017 respectively.  Despite removal to this Court on August 8, 2017, both State Defendants were served with a summons from the Fulton County Superior Court.  *See* Fed. R. Civ. Proc. 81(c)(1) and 4(a) and 4(b).  Courts have shown reluctance to grant motions for expedited discovery where defendants have not been properly served.  *See Sokolowski v. Adelson*, 2014 U.S. Dist. LEXIS 196331 at *7-8 and n. 5 (D. Nev. 2014) (denying motion for expedited discovery filed before motion for preliminary injunction had been filed and before defendants had been served with process).

Defendants be subjected to broad reaching discovery in an expedited manner.

Moreover, as set forth above, the State Defendants are asserting Eleventh

Amendment immunity, sovereign immunity, official immunity, and qualified

immunity.  These Defendants are entitled to adjudication on their immunity

defenses *before* discovery.  556 U.S. at 685.

### CONCLUSION

For the foregoing reasons, the State Defendants pray that Plaintiffs' motion

be denied.

Respectfully submitted,

CHRISTOPHER M. CARR
Attorney General                               112505

ANNETTE M. COWART               191199
Deputy Attorney General

RUSSELL D. WILLARD               760280
Senior Assistant Attorney General

/s/Cristina M. Correia
CRISTINA M. CORREIA               188620
Assistant Attorney General

ELIZABETH A. MONYAK               005745
Assistant Attorney General

JOSIAH B. HEIDT                               104183
Assistant Attorney General

15

Georgia Department of Law
40 Capitol Square SW
Atlanta, GA  30334
404-656-7063

Attorneys for State Defendants

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square SW
Atlanta, GA  30334
ccorreia@law.ga.gov
404-656-7063
404-651-9325

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendants' Brief in Response to Plaintiffs' Motion for Expedited Discovery was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing

**STATE DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS'**

**MOTION FOR EXPEDITED DISCOVERY** with the Clerk of Court using the

CM/ECF system, which will automatically send email notification of such filing to

the following attorneys of record:

Bryan Ward
Marvin Lim
Holcomb + Ward LLP
3399 Peachtree Rd NE, Suite 400
Atlanta, GA 30326
Bryan.Ward@holcombward.com
Marvin@holcombward.com

Overtis Hicks Brantley
Bennett D. Bryan
DeKalb County Law Department
1300 Commerce Drive 5th Floor
Decatur, GA 30030

Patrise M. Perkins-Hooker
Kaye Burwell
Cheryl Ringer
Fulton County Attorney's Office
141 Pryor Street SW Suite 4038
Atlanta, GA 30303
Facsimile:  (404) 730-6324

Daniel W. White
Haynie, Litchfield, Crane & White, PC
222 Washington Avenue
Marietta, Georgia 30060

I further certify that I have served, by electronic mail, the following non-cm/ecf participants:

| | Jon Ossoff |
| Rep. Karen Handel | Candidate for Congress |
| U.S. Congressional District 6 | c/o Russell Waldon, Esq. |
| c/o Anne Lewis, Esq. | rwaldon@wachp.com |
| awl@sbllaw.net | |

    This 21st day of August, 2017.


                /s/ Cristina Correia_____
                Assistant Attorney General