```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,          :
                                     :
 5            PLAINTIFFS,            :
     vs.                             :   DOCKET NUMBER
 6                                   :   1:17-CV-2989-AT
     BRIAN P. KEMP, ET AL.,          :
 7                                   :
              DEFENDANTS.            :
 8

 9

10        TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11           BEFORE THE HONORABLE AMY TOTENBERG

12              UNITED STATES DISTRICT JUDGE

13                    AUGUST 22, 2017

14                      3:33 P.M.

15

16

17

18

19

20

21    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                 TRANSCRIPT PRODUCED BY:

23

     OFFICIAL COURT REPORTER:          SHANNON R. WELCH, RMR, CRR
24                                      2394 UNITED STATES COURTHOUSE
                                        75 TED TURNER DRIVE, SOUTHWEST
25                                      ATLANTA, GEORGIA  30303
                                        (404) 215-1383
```

```
 1                A P P E A R A N C E S   O F   C O U N S E L

 2

 3   FOR THE PLAINTIFFS:

 4
         BRYAN MYERSON WARD
 5       AARON WRIGHT
         HOLCOMB & WARD, LLP
 6

 7
     FOR THE STATE OF GEORGIA DEFENDANTS:
 8

 9       CRISTINA CORREIA
         JOSIAH BENJAMIN HEIDT
10       ELIZABETH AHERN MONYAK
         ATTORNEY GENERAL'S OFFICE - ATLANTA
11
     FOR THE FULTON COUNTY DEFENDANTS:
12

13       CHERYL RINGER
         KAYE WOODARD BURWELL
14       DAVID R. LOWMAN

15
     FOR THE DEKALB COUNTY DEFENDANTS:
16

17       BENNETT DAVIS BRYAN
         DEKALB COUNTY DEPARTMENT OF LAW
18

19   FOR THE COBB COUNTY DEFENDANTS:

20
         DANIEL WALTER WHITE
21       SARAH HEGENER
         HAYNIE LITCHFIELD CRANE & WHITE
22

23   FOR REPRESENTATIVE KAREN HANDEL

24
         ANNE WARE LEWIS
25       STRICKLAND BROCKINGTON LEWIS LLP
```

|    |                                                                    |
|----|--------------------------------------------------------------------|
| 1  | **P R O C E E D I N G S**                                          |
| 2  | **(Atlanta, Fulton County, Georgia; August 22, 2017.)**            |
| 3  | COURTROOM DEPUTY CLERK:  Good afternoon, Counsel.                   |
| 4  | This is Amy McConochie, Judge Totenberg's courtroom deputy          |
| 5  | clerk.  The Court is joining the conference call in Civil           |
| 6  | Action 17-CV-2989.  That is the case of *Curling, et al. vs.*       |
| 7  | *Kemp, et al.*                                                     |
| 8  | Counsel, I'm going to remind you -- I think we're                  |
| 9  | going to have a large number of people on this call.  So it is      |
| 10 | imperative that before you start speaking you announce your         |
| 11 | name so that both Judge Totenberg and the court reporter,           |
| 12 | Ms. Welch, will know who is speaking at any given time.             |
| 13 | Now I'm going to ask you all to please introduce                   |
| 14 | yourselves so that we'll know who is on the line.  And then         |
| 15 | we'll get started with the conference call.  And Judge             |
| 16 | Totenberg will be on the line with you.  Thank you.                |
| 17 | MR. WARD:  This is Bryan Ward.  I am counsel for the               |
| 18 | plaintiffs in this matter.  And I have on the line as well          |
| 19 | calling in from separate numbers two of the plaintiffs in the      |
| 20 | matter, Marilyn Marks and Donna Curling.  Marilyn Marks is with     |
| 21 | the Coalition for Good Governance.  And Donna Curling is an         |
| 22 | individual plaintiff.                                              |
| 23 | Also calling in on behalf of the plaintiffs is Aaron              |
| 24 | Wright on a separate line.  He is also in my firm, Holcomb &        |
| 25 | Ward.  And finally I have Edward Schwartz calling in from           |

1  Steptoe & Johnson.  He has not made an appearance yet in this

2  case.  I sent an e-mail to the clerk earlier today just noting

3  that Mr. Schwartz would be -- and Steptoe & Johnson would be

4  coming in as counsel in this case in representing the

5  plaintiffs.  And so at this point, he plans on just monitoring

6  on the line and not speaking at this point.

7          THE COURT:  All right.  This is Judge Totenberg.  Can

8  defense counsel go ahead and introduce themselves?

9          MS. CORREIA:  Your Honor, this is Cris Correia with

10  the Attorney General's office.  And I have Elizabeth Monyak and

11  Josiah Heidt in my office as well.  We represent all of the

12  State defendants in the action.

13          MR. WHITE:  Your Honor, this is Daniel White.  I

14  represent the Cobb County Board of Elections, and I have Sarah

15  Hegener from my office as well.  And we represent all the Cobb

16  County defendants.

17          MR. BRYAN:  This is Bennett Bryan.  I am just here by

18  myself.  I represent all of the Dekalb County defendants.

19          MS. BURWELL:  And this is Kaye Burwell.  And I, along

20  with Cheryl Ringer and David Lowman, represent the Fulton

21  County defendants.

22          MS. LEWIS:  And this is Anne Lewis.  I'm counsel to

23  Karen Handel who has been named as a candidate in this case.

24          THE COURT:  All right.  That sounds like it is

25  everybody.

```
 1              Good afternoon.  Thank you for making yourselves

 2     available so quickly.  It seemed to me that I needed to chat

 3     with you about the status of this case as soon as possible at

 4     this juncture before we just splurged in ten different

 5     directions.

 6              It appears that all defendants have been served at

 7     this point.  I don't know if there are any objections to

 8     service.  But it does look like everyone has been served.

 9              Is that correct?

10         MS. CORREIA:  That's true of the State defendants,

11     Your Honor.

12              (Unintelligible cross-talk)

13         COURTROOM DEPUTY CLERK:  I'm sorry.  Everyone, this

14     is Amy McConochie.  Thank you.  Please announce your name

15     before you start speaking.  Thank you.

16         MS. LEWIS:  This is Anne Lewis.  Mr. Ward and I have

17     been talking the last couple of days about acknowledging

18     service for Representative Handel.  And so hopefully I'll be

19     back in the office tomorrow and can do that -- get him a draft

20     and get that in.

21              As far as your question about whether there are any

22     objections to service, there probably will be.

23         MR. BRYAN:  This is Bennett Bryan on behalf of the

24     Dekalb County defendants.  We have all been -- all of my

25     clients have been served.
```

```
1              THE COURT:  What about Fulton County?  Did I hear
2     from you?  I'm sorry.
3              UNIDENTIFIED FEMALE DEFENSE COUNSEL:  For Fulton
4     County, all of our defendants were served with the original
5     complaint.
6              THE COURT:  All right.  It seems like what we have
7     got here on one hand is a lot of immunity and other related
8     jurisdictional or standing related potential defenses, if I
9     understand what is being asserted in the original motion to
10    dismiss, which will be refiled.  We have got a request for
11    expedited discovery.
12             I have no idea when a preliminary injunction will be
13    filed in terms of a motion for preliminary injunction.  And I
14    think just to get any sense of the shape of the case I need to
15    have some idea whether, in fact, a motion for a preliminary
16    injunction is going to be filed in the next number of days and,
17    if so, when approximately.
18             MR. WARD:  Your Honor, this is Bryan Ward for
19    plaintiffs.  And I can address that.  We do intend to file a
20    motion for preliminary injunction in the near future.  We
21    intend to file it next week.  We were hoping to have it this
22    week.  But we just -- our clients just hired new counsel, and
23    it will take them a little bit of time to get up to speed.
24             I think in the long run it is going to help move this
25    case along having additional counsel involved.  Certainly
```

1    highly qualified counsel.  But it takes a little bit of time

2    for them to get up to speed.  So I would anticipate that it

3    would be at some point mid next week that we would be filing

4    our motion for preliminary injunction.

5         THE COURT:  Well, clarify this for me.  The way that

6    the defendants appear to be construing your current complaint

7    and what you're seeking is that it is focused on retrospective

8    relief and a challenge to the election that already has

9    occurred in the Sixth District.

10        To what extent is that -- are you actually looking

11   for prospective relief independent of that election?

12        MR. WARD:  Well, seven of our nine claims -- that is,

13   every claim we have other than the election contest -- seek

14   prospective relief.  In other words -- and a focus of that

15   relief is to have the use of the DRE voting computers that have

16   been used for the June 20th runoff election and the April 18th

17   special election -- to have those discontinued for the reasons

18   we set out, that they simply cannot comply with the Georgia

19   statutory law and as a consequence do not comply with the

20   Georgia Constitution.  And so that is the relief that we're

21   seeking for all of our claims other than the election contest.

22        THE COURT:  What will be the focus though of the

23   preliminary injunction motion?  Is it -- is the emergency from

24   your perspective and the need for irreparable relief relating

25   to the election that has occurred, or is it based on the

1    sheer -- the fact that we're about to go through another voting

2    cycle or both?

3            MR. WARD:  The latter, Your Honor.  It is in order to

4    prevent the use of the DRE voting computers in the upcoming

5    elections that are to be held on November 7 with early voting

6    to start before that.

7            THE COURT:  So --

8            MR. WARD:  We -- I'm sorry.  Go ahead.

9            THE COURT:  Go ahead.

10           MR. WARD:  I just want to note that we want to make

11   sure that we have this resolved in a way so that there are no

12   issues in terms of timing between when this Court may issue an

13   order and the ability of the State to implement that order.  We

14   think that the timing that we -- that we have in mind,

15   certainly if we file next week for preliminary injunction, that

16   shouldn't be an issue.  But that is the rush on our end to make

17   sure it doesn't become an issue.

18           THE COURT:  Well, I think it is pretty close.  It is

19   hard to say it is not an issue, frankly.  But I'm -- not having

20   seen the motion, I can't be 100 percent sure.  But just

21   thinking about trying to resolve these issues and much less

22   deal with your request for expedited discovery and issue a

23   decision also before early voting starts would be a -- is a

24   tall order.

25           Does early voting start October 1st or October 7th?

1    When does it begin?

2            MR. WARD:  I believe it is October 6th.  But any of

3    the defendants can correct me if I'm wrong.

4            MS. CORREIA:  This is Cris Correia, Your Honor.  I

5    believe it is October 13.  I can try to pull that up while

6    we're on the phone.

7            THE COURT:  That would be great.

8            Well, I know that you didn't necessarily prepare to

9    argue anything relating to the defenses at this point.  But

10   just give me some preview of why you think I can at this point

11   deal with the issue of the election that has already confirmed,

12   given the fact that Ms. Handel has been sworn in.

13           I mean, the initial issues in the motion to dismiss

14   filed by defendants, which now is mooted, still seem to me

15   significant issues -- the *Roudebush* and *McIntyre* case issues.

16           I'm not -- just in terms of our allocation of time

17   under these circumstances, I would like to have some notion of

18   what your comeback about that is.

19           MR. WARD:  Yes, Your Honor.  If you'll see even in

20   the State's motion to dismiss, they have noted in a number of

21   areas where their defenses are -- they relate only to -- well,

22   to claims that were in the original complaint but not the

23   amended complaint.  And they do not relate to the prospective

24   relief that we're seeking in our preliminary injunction motion.

25           THE COURT:  But what is the prospective relief as to

1    Ms. Handel?  I mean, it seems to me what those cases talk about

2    is that this -- this person who has been elected to the House

3    of Representatives -- to the extent that her election is being

4    challenged, that is up to the House of Representatives to

5    review.

6             MR. WARD:  Okay.  And just to be clear -- again, this

7    is Bryan Ward.  To be clear, Karen Handel is not a defendant

8    with respect to any of the prospective relief we're seeking.

9    So she would not have a role with respect to the preliminary

10   injunction motion that we're seeking.  It would be solely with

11   respect to the election contest.

12            With respect to the election contest, obviously we

13   would like the chance to brief this issue.  But the idea that

14   under Article 1, Section 4 of the U.S. Constitution that the

15   members of the House decide their own elections -- that has --

16   obviously that has been in place since the founding of our

17   country.  Yet there have been many decisions by the House

18   itself that has relied upon the state courts that are -- the

19   judges handling election contests before they even look at it.

20            And so it is a matter where they can make a decision

21   on there, but they have essentially farmed out much of the

22   process to the states to decide.  And this, of course, has been

23   brought to you through supplemental jurisdiction by the removal

24   of the defendants.

25            THE COURT:  Well, let me just say I think it is

1    messy.  And certainly we'll keep an open mind about it.  But I

2    think it is very messy.  And it really does relate to what the

3    focus of this case is.  When you're looking at emergency

4    relief, obviously there were different dimensions of getting --

5    having a hearing on emergency relief.  And if you're really

6    ultimately focused on that issue, even if you're concerned

7    about other prospective relief issues, it may be simply by the

8    removal makes -- puts it in a very -- not in a very positive or

9    likely light.

10          So, you know, this is something for you to deal with.

11   But I -- it looks -- all of that looks more like retrospective

12   relief to me and also ones that I don't have jurisdiction over.

13   But you might be able to persuade me otherwise.

14          As to --

15          MR. WARD:  Your Honor, just to be clear -- I'm sorry.

16   I didn't mean to interrupt.  I thought you were waiting.

17          THE COURT:  That's all right.

18          MR. WARD:  Just to be clear, there are two different

19   sides to this.  What the election contest which is seeking --

20   that is retrospective relief for the election contest.  But the

21   other claims have prospective and retrospective relief -- well,

22   depending on the claims.  Some of them are simply only

23   prospective relief.  But there are two separate areas in terms

24   of what we're seeking.

25          THE COURT:  I understand that.  But in terms of if we

1  are really trying to determine what there is even a possibility

2  of you are having a hearing on and getting some expedited

3  discovery on, it obviously should be on any claim that is more

4  likely to be possibly one that is one that you prevail on.  Not

5  one that is more difficult in terms of immunity, constitutional

6  bars, et cetera.

7         So that is all I'm trying to point out to you in

8  terms of how broad your reach is here and what we're going to

9  be able to do in a very short period of time.  Because even if

10  it is mid-October that voting begins, it is a very short period

11  of time for you to proceed, me to have a hearing, and for also

12  a ruling to be issued that is in time in the event you were to

13  prevail that the State could do anything on an orderly basis in

14  response to.  So all of those are concerns to me.

15         MS. CORREIA:  Your Honor, this is Cris Correia.  Just

16  to let the Court know, I did look up the date.  Advanced

17  in-person voting begins October 16.  Absentee ballots begin

18  being mailed on October 13.

19         THE COURT:  All right.  Thank you very much.  I

20  appreciate it.

21         MS. RINGER:  Your Honor, this is Cheryl Ringer for

22  Fulton County.  We're trying to get additional information.

23  However, we do want the Court to be aware that the voting

24  machines have to be programmed prior to the beginning of early

25  voting.  So in our minds, that pushes our timeline back.  So

1  we're trying to get you additional information before the call

2  ends.

3          THE COURT:  All right.  Does anyone else have any

4  information regarding how much time is needed for programming

5  the voting machines?

6          MS. CORREIA:  Your Honor, this is Cris Correia again.

7  And I don't have specific dates I can give you.  But I do know

8  that, you know, ballots have to be made up for all of these

9  jurisdictions, all of the municipalities and some counties,

10  that are having elections in November.  And that happens

11  several weeks before -- typically before the ballots start

12  going out.  Because each different precinct is essentially a

13  different ballot under the -- for the DRE machine.  So all of

14  that is done weeks in advance.

15          THE COURT:  All right.  Well, what I think would be

16  useful is if by the close of business on Friday I have this

17  information:  How much time will it take to program the voting

18  machines?  How much in advance each of the jurisdictions

19  creates their ballots?  And I realize that may be the norm.  It

20  doesn't mean that things can't happen faster.  But at least I

21  should know what the anticipated schedule for this election

22  cycle is for accomplishing all of those tasks that are

23  necessary to lead up to having the election on the dates

24  identified.

25          So I just would ask the defendants to cooperate in

1   doing that.  And you can just do separate submissions.  You can

2   do a collective submission.  But by the close of business on

3   Friday, I would like to see that.

4            MS. CORREIA:  Certainly.

5            THE COURT:  Now, I know that the plaintiffs have

6   represented there are some modifications in their complaint.

7   It is obviously longer.  But it would seem to me that many of

8   the issues that the defendants originally moved on remain the

9   same.

10            So can you advise me whether you would be able to

11   file a motion to dismiss by Friday as well so we can get those

12   issues on an expedited time schedule also?

13            MS. CORREIA:  Your Honor, this is Cris Correia.  For

14   the State defendants, there are actually additional counts.

15   The defendants are being sued now in the individual capacity as

16   well on the federal claim.  So we have additional defenses that

17   we would need to add to the brief.  And I have an Eleventh

18   Circuit brief filing on Friday.  So it would be extraordinarily

19   difficult for me to get it to the Court by Friday.

20            We're also trying to go through -- and, obviously, we

21   have now -- in our response to the request for discovery, we

22   have researched the mootness issue and have been able to put

23   forth -- put that forth to the judge as well.

24            But -- and so we are trying to go through and

25   reorganize our old brief as much as possible to pull out -- to

1    limit the number of pages so that we're not submitting another

2    50-page brief.  But it would be very difficult to do by Friday.

3              THE COURT:  All right.  So when can you do it by?

4              MS. CORREIA:  Next Tuesday.  Would that work?

5              THE COURT:  Yes.  That is fine.

6              MS. CORREIA:  Thank you.  And can we have extra pages

7    like we did on the --

8              THE COURT:  Yes, you may.

9              MS. CORREIA:  Thank you.

10             THE COURT:  How many pages are you asking for?

11             MS. CORREIA:  Well, with the new qualified

12   immunity -- and I won't argue the mootness again.  I'll just

13   refer to the other brief.  But if we could stick to 50, that

14   would be helpful.  We will try to limit it to fewer than 50.

15   But there are additional claims as well.

16             THE COURT:  All right.  With respect to the qualified

17   immunity claim though, I would ask you at this point to not

18   devote all the time in the world to that because I can't

19   restrict you on how you balance it.  But I don't know how

20   helpful that is going to be in terms of proceeding here.

21             You're obviously entitled to preserve your claims and

22   have me review them.  But I'm going to -- if I end up having a

23   hearing on the preliminary injunction, I'm going to end up

24   having to do all of this simultaneously.  I'll consider the

25   motion to dismiss at the same time.

1          It seems -- at least as to some of the prospective

2    relief requested, it would seem we have a situation either in

3    terms of mandamus claims as recognized as allowable under

4    *Lathrop vs. Deal* or the traditional 1983 claims that might be

5    allowed as well for prospective relief, not for damages

6    relief -- that there are some claims here that may be able to

7    persist here.  That is just in terms of the sovereign immunity

8    and related defenses that have been at this point raised at

9    least to the extent that I can identify them in your original

10   motion.

11          What I don't know -- and this is for the plaintiffs

12   to really focus on -- is that to the extent I'm really looking

13   at prospective relief I don't have any factually nuanced,

14   developed record upon which I can at this juncture know that

15   this is an emergency.

16          I mean, there may be real defects in the system for

17   all I know.  I really don't -- I'm obviously not a student of

18   that at this point.  But I don't know that there is an

19   emergency, especially given the nature of the election cycle

20   right now.

21          We're not facing a major election cycle.  I'm not

22   trying to minimize the officeholders who are up for election or

23   what is happening in the city.  But it is not clear to me that

24   having a preliminary injunction hearing on a thin record under

25   these circumstances or ruling, even if I have a hearing, is

1   really in anyone's interest.  Not that I won't do it if I think

2   it is warranted.  But I'm not clear what the emergency is at

3   this juncture, other than obviously there is great value in

4   voting and having integrity in the voting system.  But why that

5   won't be protected by having a more considered development of

6   the record and a proper hearing at a later point in time I'm

7   not clear.

8         So when -- in drafting the motion for preliminary

9   injunction, I would ask the plaintiffs to keep that foremost in

10  your minds in terms of trying to persuade me that all of this

11  is going to make sense and how much time I should allocate to

12  such a hearing under these circumstances also.

13        Again, this is not to minimize the seriousness of the

14  claims.  But I'm looking at it in terms of the posture of the

15  case right now and what could actually realistically be put on,

16  absorbed, and result in a considered, useful decision for all

17  of the parties in a time frame that is going to comport with

18  this election schedule.

19        Are the county defendants just going to adopt the

20  State's motion to dismiss, or are there going to be separate

21  motions to dismiss filed on Tuesday too?

22        MR. BRYAN:  Your Honor, this is Bennett Bryan on

23  behalf of the Dekalb County defendants.  I would anticipate

24  that the Dekalb defendants would adopt many of the State

25  defendants' arguments but will likely at least -- will likely

1    file their own but keep it short and try not to repeat anything

2    that the State defendants will be arguing.

3            THE COURT:  All right.

4            MR. WHITE:  Daniel White on behalf of Cobb County.  I

5    would anticipate the same.

6            MS. BURWELL:  This is Kaye Burwell for Fulton County.

7    I would anticipate the same.

8            And there is one other issue that relates, I think,

9    to the county defendants, which is the plaintiffs have

10   requested a litigation hold on the actual voting machines.

11           THE COURT:  All right.  I'm going to deal with that.

12   But I just want to get the schedule down, first of all.

13           All right.  So all of you can file -- do your filing

14   by Tuesday as well -- the county defendants?

15           MS. BURWELL:  Yes, Your Honor.

16           MR. WHITE:  Yes.  This is Daniel White.  We can do

17   that.

18           MR. BRYAN:  This is Bennett Bryan.  Agreed.

19           THE COURT:  All right.  Well, obviously the

20   plaintiffs are going to be working on your motion for

21   preliminary injunction.

22           How long will you need to respond to the motion to

23   dismiss?

24           MR. WARD:  We have -- the new counsel will likely be

25   the ones handling that.

```
 1              Would ten days be sufficient, Your Honor?

 2         THE COURT:  Well, not if you want to have a

 3    preliminary injunction hearing earlier.  So I would suggest if

 4    you are going to want to have a hearing soon you better -- you

 5    better respond by the following Tuesday yourselves.

 6         MR. WARD:  So September 5th?

 7         THE COURT:  Right.

 8         MR. WARD:  I believe we can do that.

 9         THE COURT:  You can file up to midnight if you want.

10    But that is up to you.

11         Now, Mr. Ward, you're going to stay -- your firm is

12    going to stay on the case?

13         MR. WARD:  Yes, Your Honor.

14         THE COURT:  All right.  Now, once we get all of that,

15    then I think we'll be in a better position to determine how I'm

16    going to proceed in terms of having a hearing.  But it doesn't

17    answer the question of discovery.  And it may just -- that is a

18    concern, especially with the motion to dismiss hanging out

19    there.

20         Is there some particular piece of information or

21    pieces of information concretely that the plaintiffs believe

22    are essential in order to proceed in a preliminary injunction

23    hearing?

24         You don't have to tell me that now.  I know you just

25    said, well, it was -- I remember reviewing your request.  But
```

1    then you also want to take depositions.  I'm just trying to

2    figure out how all of that would happen again before a hearing.

3          So if there is something in particular that is still

4    more -- could be more narrowly defined, I think it would be

5    useful for the Court.  I'm not going to authorize expedited

6    discovery though until I at least see your motion for

7    preliminary injunction and I'm able to review myself the

8    motions to dismiss.  That is another sort of kink in the whole

9    process in terms of scheduling a hearing.

10          MR. WARD:  Your Honor, this is Bryan Ward.  Are you

11   saying that -- what we did with our motion for expedited

12   discovery was pare it down to what we believed was essential

13   for the election contest and the preliminary injunction motion.

14   And that being just a few requests of what has been breached

15   for the defendants for whom we sent requests and -- or proposed

16   sending requests and then just two depositions.

17          Are you asking us to outline what it is we have asked

18   for in that motion more specifically or to pare that down

19   further?

20          THE COURT:  I'm trying to say it may need to be pared

21   down further if I only get your response to the motion to

22   dismiss on the 5th.  We're in a chase basically to have a

23   hearing on this by the third week of September.  I'm just

24   trying to think about -- and maybe before then.  I'm just

25   trying to be realistic about what could actually be

1    accomplished in that time period and what is essential to you.

2          I mean, I don't have to approve it exactly.  But I

3    just am saying I don't see it happening as even a reality

4    unless you have a pared-down version of this and dealing with

5    these governmental entities.

6          So I mean, I'm not going to say no at this point to

7    what you have there.  But I think it would probably be in your

8    interest to provide me something that is actually a little more

9    viable, if that is what you want to do and if you want to have

10   a hearing.  And you really have to pay attention to what this

11   schedule would look like.  So you don't have the schedule of

12   how long it is going to take the defendants to get ready for

13   the election.  And so I'm not going to hold you to anything at

14   this point.

15         But once you review it after it is filed on Friday, I

16   think you need to keep that in mind and given the fact that

17   also Eleventh Circuit authority does seem to say I need to at

18   least have addressed the subject matter and the immunity

19   defenses in some way before I am authorizing expedited

20   discovery.

21         So the soonest I'm going to have all of that fully

22   briefed is when your brief is in on the 5th.  Just keep that in

23   mind.  And I would like you to identify after you review their

24   response at the time that you file the motion for preliminary

25   injunction what you think is a reasonable time frame for having

```
1    the hearing and having a very short burst of discovery.  And if
2    you're suggesting that the discovery be narrowed so I can see
3    that, go ahead and identify that.  If you are saying it is the
4    same amount of discovery, then just refer me to the docket
5    number.  So that should be filed at the same time that you're
6    filing the motion for preliminary injunction on the 5th.
7                MR. WARD:  Understood, Your Honor.
8                THE COURT:  As a matter of professional courtesy, I
9    would ask though that the defense counsel to the extent that
10   you're going to reassert some of the same arguments that were
11   already made in the motion to dismiss -- and I assume you
12   will -- I ask you still to identify which defenses are going to
13   be reasserted by Friday.  I understand that counsel is very
14   busy.  But that seems like a no-brainer.
15               MS. CORREIA:  On behalf of the State defendants, we
16   can do that.
17               You don't want that filed with the Court, Your Honor,
18   or do you?
19               THE COURT:  No.  You can just provide it by letter to
20   plaintiffs' counsel.
21               MS. CORREIA:  Plaintiffs' counsel.
22               THE COURT:  Yes.  Thank you.
23               MR. BRYAN:  This is Bennett Bryan.  Likewise for the
24   Dekalb defendants.
25               MR. WHITE:  This is Daniel White.  Cobb County is
```

1    happy to comply with that.

2           MS. BURWELL:  Kaye Burwell for Fulton County as well,

3    Your Honor.

4           THE COURT:  All right.  Great.  All right.  I think

5    that takes care of the scheduling issues.  To the extent that

6    everyone ends up recognizing that there is any prospective

7    relief issues that are properly before the Court, it would be

8    helpful, even though you all disagree, to identify what you

9    actually can concede that might, in fact, realistically be a

10   prospective relief issue that is not barred either under state

11   law or for federal law.

12          Okay.  Now, as to the voting machines, I know that

13   Fulton wants them -- and Dekalb and I assume Cobb as well would

14   like to liberate the machines so that you can get ready.  But

15   tell me why that is not taken care of by virtue of your

16   providing me a time frame for when the voting machines need to

17   be programmed by.

18          UNIDENTIFIED FEMALE DEFENSE COUNSEL:  (Inaudible)

19   Fulton County, Your Honor.  I think we have that (inaudible).

20          THE COURT:  I'm sorry.  I just couldn't hear you.

21          UNIDENTIFIED FEMALE DEFENSE COUNSEL:  For Fulton

22   County, Your Honor, we would be -- once we get the information

23   from our clients in terms of how much time they need with the

24   machines, we would be able to let the Court know the drop-dead

25   date by which we would need to use the machines.  But the

1    litigation hold being in place would prevent us from using the

2    machines at all.  But we will get that information to you, Your

3    Honor.

4              THE COURT:  Aren't we addressing the litigation hold

5    issue by virtue of my at least considering your time frame for

6    programming the voting machines?

7              UNIDENTIFIED FEMALE DEFENSE COUNSEL:  Yes, Your

8    Honor, you are.

9              THE COURT:  Okay.  Very good.

10             MR. WARD:  Your Honor, if I may address that.  This

11   issue is raised for -- this is Bryan Ward for the plaintiffs.

12   This issue was brought up to us last week for the first time by

13   Fulton County.  And our position all along, even immediately,

14   was we're willing to work with you on this.

15             And what our client is really -- what we foresee in

16   the future is to have -- we are not going to be testing every

17   single machine and memory card.  But we do want to do a

18   sampling of them.  So we can work with Fulton County on this

19   issue and are certainly willing to plan once we get the

20   information from them that we have requested so we can identify

21   certain machines for us to do a sample of the machines.  And I

22   don't think there would be any issue with there having enough

23   machines for this upcoming election at that point.

24             THE COURT:  So what sort of information do you need

25   in order to be able to identify how many you need for sampling?

1          MR. WARD:  Which machines were used in which

2   precinct.  Because we know of certain issues that came up

3   during the special election and the runoff.  And so we would

4   want to have that so we can figure out the correct sample to

5   take of those machines.

6          THE COURT:  Well, can defense counsel tell me what

7   would make it difficult to respond to that request, or can it

8   be responded to so that we can move forward on a prompt basis?

9   Can you respond to that by Thursday of next week?

10          MS. BURWELL:  So the Court is going to grant the --

11   this is Kaye Burwell.  So part of the issue is whether that

12   expedited discovery -- we needed to go ahead and comply with

13   his request.

14          THE COURT:  No, I didn't say that.  I said before I

15   wasn't going to make a decision about expedited discovery.  But

16   what I said was is there any reason -- can you articulate for

17   me at least by next Thursday, other than the theory of we don't

18   want to cooperate with expedited discovery, what makes it

19   difficult or not to provide the sort of sampling that has been

20   requested so that we can have a little more flexibility in our

21   time frame.

22          MS. BURWELL:  Your Honor, I don't believe that

23   initially he had requested a sampling.

24          MS. RINGER:  This is Cheryl Ringer for Fulton County.

25   Am I to understand in order to determine the sampling you want

1    the serial numbers; correct?

2         MR. WARD:  Correct.  So we can determine the

3    information to determine what precinct the machines came from.

4    And just to be clear, too, this really doesn't relate to

5    expedited discovery or not.  This is whether or not they are

6    preserving evidence.  So that would relate to any discovery

7    that would take place in this case.

8         So whether or not it is granted on an expedited

9    basis, the evidence needs to be preserved one way or the other.

10   And we are saying we can move forward and we can come to an

11   agreement that is going -- that should make it no problem for

12   Fulton County to have all the machines they need in this

13   election.

14        MS. RINGER:  This is Cheryl Ringer again for Fulton

15   County.  So, Your Honor, I think the initial concern was that I

16   believe the expedited discovery requests did include a request

17   for those serial numbers.  But at Your Honor's direction, we

18   will seek to get the serial numbers from our client so that we

19   can move forward with this issue.

20        THE COURT:  Okay.  I think that would be helpful so

21   at least we have some ability for you all to talk about an

22   agreement that would not put so much time pressure on everybody

23   and that would also allow you to have more machines right from

24   the start in your possession that you can use and program and

25   not everything have to be done at the last moment.

 1              MS. RINGER:  Yes, Your Honor.

 2              THE COURT:  Okay.  Well, if you can -- so I want to

 3    make sure everyone is clear.  So you are going to be providing

 4    the serial numbers on the machines.  And can you do that by

 5    next Thursday?

 6              UNIDENTIFIED FEMALE DEFENSE COUNSEL:  Yes, Your

 7    Honor.  I just talked to my client.  I believe that we can.  If

 8    I find that there is any sort of problem, I will let the Court

 9    know immediately.

10              THE COURT:  All right.  Is this -- you need this also

11    from the other county defendants, too, Mr. Ward?

12              MR. WARD:  Well, my understanding is that -- this is

13    Bryan Ward.  My understanding is it was just a Fulton County

14    issue only.  I haven't heard this from any of the other

15    counties.

16              MR. WHITE:  Your Honor, this is Daniel White for Cobb

17    County.  We have -- we don't have quite the same demand as

18    Fulton.  But there were some concerns about, you know,

19    providing, you know, whatever number of machines they wanted.

20              I agree with the Court that if we could come up with

21    some kind of agreement that we probably -- we would be willing

22    to do that.  We would want to -- in whatever agreement we had,

23    we would want to address security and confidentiality concerns

24    for protecting this evidence.  But I think we could work that

25    out.

```
 1              MR. BRYAN:  Your Honor, this is Bennett Bryan for

 2    Dekalb County defendants.  I agree that -- based on what I've

 3    heard in this conversation so far, I believe that we can -- we

 4    can work this out one way or the other by next Thursday.  This

 5    probably will require a separate phone call with plaintiffs'

 6    counsel.

 7              THE COURT:  I'm sure.

 8              MR. BRYAN:  But I'm sure we can work it out.

 9              THE COURT:  All right.  Why don't y'all endeavor to

10    do that.  I'm sure you will need more conversation between

11    yourselves and understand what you're talking about better than

12    I do at this juncture.

13              Are there any other issues that you all need to talk

14    about?

15              MR. WARD:  Bryan Ward on behalf of plaintiffs.  I

16    have nothing further, Your Honor.

17              MS. CORREIA:  Cris Correia on behalf of the State

18    defendants, Your Honor.  I have nothing further.

19              MR. BRYAN:  Bennett Bryan on behalf of the Dekalb

20    County defendants.  Nothing further.

21              MR. WHITE:  This is Daniel White on behalf of Cobb

22    County.  I just want to point out -- and I'm sure the Court

23    will do this.  But as much advance notice of whatever hearing

24    date the Court intends to set would be great.  I have already

25    submitted a leave for a good portion of September.  But I will
```

1    do what I can to adjust my schedule if the Court needs to hear

2    it on one of those dates.

3           THE COURT:  All right.  Mr. --

4           MS. BURWELL:  This is Kaye Burwell for Fulton County.

5    We don't have anything else, Your Honor.

6           THE COURT:  Mr. Ward, are you -- is counsel from

7    Steptoe & Johnson going to move for pro hac admission?  Are you

8    going to be functioning as both co-counsel and local counsel?

9           MR. WARD:  They will be -- we will be moving for pro

10   hac admission.

11          THE COURT:  Why don't you do that as soon as possible

12   so we aren't in this awkward position.  All right?

13          MR. WARD:  Yes, Your Honor.

14          THE COURT:  And in terms of scheduling, obviously

15   we're not likely to have anything on the week of the 5th.  So

16   you -- but after that, I really can't tell you.  I don't know

17   also without seeing the schedule that will be filed on Friday.

18          MR. WHITE:  Okay.  That is fine.

19          THE COURT:  I'm going to get a much better sense when

20   I actually can read all the briefs, frankly.  But we'll -- we

21   will identify a date after at least next -- we'll try to next

22   week.

23          And I want to make sure though that we are making

24   productive use of any hearing we have.  And it is not just all

25   over the place.  Because as I said, I'm concerned that there

```
 1   are serious issues raised here.  But I am also concerned that
 2   they may not be adequately presented just before us in a
 3   preliminary injunction hearing on this schedule with as little
 4   discovery as likely will have occurred at that time.
 5           The plaintiffs, of course, may have the same amount
 6   of pages that the defendants have in responding.
 7           MR. WARD:  Thank you, Your Honor.
 8           THE COURT:  And if you need more pages on the
 9   preliminary injunction motion, please write us in advance
10   rather than just delivering 50 or 100 pages on the day of
11   Tuesday with a motion asking for the extra pages.  I would like
12   to understand what precisely you're doing because it is
13   really -- it is a very large complaint.
14           So to me at this juncture as I read this, I don't
15   really have a notion of exactly what you're going to be wanting
16   a hearing on as opposed to the overall relief that you're
17   seeking.  I don't even know whether you're looking for
18   statewide relief or only relief as to the way voting occurs in
19   these particular counties.  So --
20           MR. WARD:  We will address that, Your Honor.
21           THE COURT:  That is some of my anxiety about
22   proceeding and not knowing how much time is needed, what is
23   realistic, whether it is so outside the ken of possibility in
24   this time frame that I should just wait or give you a hearing
25   and tell you that you'll end up having to wait.  So those
```

1    are -- you've got us in a very compressed time frame.  That is

2    where I began, and that is where I end.

3             So all right.  Well, I look forward to hearing from

4    you all and seeing your filings.

5             And have a good day -- what is left of it.

6             MS. CORREIA:  Thank you, Your Honor.

7             MR. WARD:  Thank you, Your Honor.

8             MR. WHITE:  Thank you, Your Honor.

9             MS. CORREIA:  Your Honor?

10            THE COURT:  Yes.

11            MS. CORREIA:  Cris Correia for the State defendants.

12   I'm sorry.  I did think of one thing.

13            When the plaintiffs do file their preliminary

14   injunction motion, I don't believe -- how much time do I have

15   to respond to that?  I don't believe we covered that.

16            THE COURT:  I'm going to tell you the bad news.  I

17   think you have to respond by that Friday, even if it is just an

18   initial response.  I mean, it is just -- you can respond as

19   late as you want and if you -- but I don't know how I could

20   possibly even begin to make a decision if I don't have -- if

21   you want to have until Monday morning, that is fine.  So --

22            MS. CORREIA:  Thank you.  I will take Monday morning

23   if that is okay.

24            THE COURT:  So if you file it by 10:00 on Monday

25   morning -- what is that date?

```
1              MS. CORREIA:  Labor Day.

2              THE COURT:  Okay.  I thought that their --

3              COURTROOM DEPUTY CLERK:  He is going to file his

4    motion for preliminary injunction sometime next week, Your

5    Honor.

6              THE COURT:  Well, I guess it really depends on --

7    obviously on when it is actually being filed.

8              Mr. Ward, are you -- is Wednesday a realistic date or

9    not?  Are you telling -- because I have heard many dates since

10   this --

11             MR. WARD:  Wednesday is a realistic date.  Yeah.  We

12   can file by then.

13             THE COURT:  All right.  Then the defendants need to

14   file their response by that Tuesday after Labor Day, the same

15   day that the plaintiffs are having to file their response to

16   your motion to dismiss.  And it can be at any hour that night.

17   Okay.

18             MS. CORREIA:  Thank you, Your Honor.

19             THE COURT:  Okay.  All right.  Thank you for flagging

20   that.  I appreciate it.

21             Anything else that we missed?  All right.  Hearing

22   none, we'll adjourn.  All right.  Take care.

23                  (The proceedings were thereby concluded at 4:23

24                  P.M.)

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1              C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    32 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12       In testimony whereof, I hereunto set my hand on this, the

13   23rd day of August, 2017.

14

15

16

17                    _____
                      SHANNON R. WELCH, RMR, CRR
18                    OFFICIAL COURT REPORTER
                      UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25