## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING et al.,**

   **Plaintiffs,**

**vs.**

**BRIAN P. KEMP et al.**

   **Defendants.**

_____

**CIVIL ACTION FILE NO.
2017-CV-02989-AT**

## DEKALB DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT

**DEFENDANTS** Maxine Daniels, Michael Coveny, Anthony Lewis, Leona Perry, Samuel Tillman, and Baoky Vu ("Individual DeKalb Defendants") and Defendant DeKalb County Board of Registrations and Elections ("DeKalb Board") (together "DeKalb Defendants") respectfully move this Court to dismiss **Plaintiffs' Amended Complaint** pursuant to Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) and submit this **Motion to Dismiss and Brief in Support**, showing the Court as follows:

# I.   INTRODUCTION AND BACKGROUND

<u>Curling v. Kemp I</u>

On the eve of advance voting in Georgia's sixth congressional district run-off election, Donna Curling and several of the Plaintiffs in the instant case filed a complaint and an emergency motion for temporary restraining order and interlocutory injunction in Fulton County Superior Court. <u>See</u> <u>Curling v. Kemp I</u>, Case. No. 2017CV290630 (Ga. Sup. Ct. May 26, 2017) (Trial Court Pleading). In the complaint, Plaintiffs asserted that the Direct Recording Electronic ("DRE") voting equipment and related voting system "cannot be used safely and accurately." <u>Id.</u> ¶ 41.

On June 7, 2017, the court held an evidentiary hearing on the emergency motion and heard testimony from several of Plaintiffs' expert witnesses concerning the alleged vulnerability of Georgia's voting system. [Doc. 16]. However, the court dismissed the case because Plaintiffs "failed to demonstrate any concrete harm" such that the court could not "adopt Plaintiffs' conclusion that Georgia's DRE voting equipment and its related voting system are unsafe, inaccurate and impracticable within the meaning of the statute." <u>See</u> <u>Curling</u>, cite <u>supra</u>, (Trial Court Order).

<u>Curling v. Kemp II</u>

On July 3, 2017, Plaintiffs filed the original complaint in Fulton County Superior Court. On August 4, 2017, Plaintiffs filed a motion for leave to file an amended complaint in Fulton County Superior Court. On August 8, 2017, Defendants Kemp, the State Election Board ("SEB"), and the named members of the SEB ("State Defendants") removed the action to this Court. [Doc. 1]. On August 18, 2017, Plaintiffs filed an amended complaint ("Amended Complaint") [Doc. 15], which is the subject of this motion.

Like <u>Curling v. Kemp I</u>, the instant case concerns the same DRE voting equipment and the same allegations that the system cannot be used "safely or accurately in the Runoff." [Doc. 15 ¶ 25]. Plaintiff's Complaint asserts eight counts against various defendants alleging violations of the Georgia Constitution, Georgia election code, Georgia election regulations, and claims pursuant to federal statute 42 U.S.C. § 1983. Specifically, Plaintiffs assert the following claims:

- Count I – state law claim against defendants in their individual capacities for alleged violations of Georgia Constitution Art. II, Sec. I, Para. I concerning the conduct of elections. [Doc. 15 ¶¶ 130-148].

- Count II – federal claim against defendants in their official and individual capacities under 42 U.S.C. § 1983 for alleged violations of federal due process and First Amendment rights. [Doc. 15 ¶¶ 149-162].

- Count III – federal claim against defendants in their official and individual capacities under 42 U.S.C. § 1983 for alleged violations of federal equal protection rights. [Doc. 15 ¶¶ 163-179].

- Count IV – state law claim against defendants in official and individual capacities for alleged failure to recanvass votes. [Doc. 15 ¶¶ 180-187].

- Count V – N/A to DeKalb Defendants.

- Count VI – state law election contest against defendants in official and individual capacities under O.C.G.A. § 21-2-520 for alleged election irregularities relating to the use of DRE machines. [Doc. 15 ¶¶ 197-206].

- Count VII – state law election contest against defendants in official and individual capacities under O.C.G.A. § 21-2-520 for alleged election irregularities related to the use of illegal ballots. [Doc. 15 ¶¶ 207-215].

- Count VIII – N/A to DeKalb Defendants.

–4–

- Count IX – state law mandamus claim against defendants in official capacities [Doc. 15 ¶¶ 233-240].

In their prayer for relief, the Plaintiffs ask the Court to declare that defendants have violated the Georgia Constitution, federal law through 42 U.S.C. §1983, the Georgia election code, and Georgia election regulations. [Doc. 15 p. 113-114]. The Plaintiffs also ask the Court to void the special election, order Defendants to conduct another election, and enjoin defendants from using the DRE system. Id.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### a. The Court Should Dismiss Plaintiffs' Complaint For Lack of Subject Matter Jurisdiction

When a district court lacks subject matter jurisdiction, the Court should dismiss the complaint under Fed. R. Civ. P. 12(b)(1). Here, sovereign immunity, official immunity, qualified immunity, Eleventh Amendment immunity, statute of limitations, and principles of standing, mootness, res judicata, and collateral estoppel divest this Court of subject matter jurisdiction over the DeKalb Defendants. For the reasons set forth below, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims should be dismissed.

### i. Sovereign Immunity Bars All State Law Claims (Counts IV, VI, VII) as to the Individual DeKalb Defendants Sued in their Official Capacities

In Counts IV, VI, and VII, Plaintiffs assert state law claims against the Individual DeKalb Defendants in their official capacities for failure to recanvass votes under Ga. Comp. R. & Regs. 183-1-12 (Count IV), and for election contests (Counts VI and VII). However, these claims are barred by sovereign immunity.

GA. CONST. ART. I, SEC. II, PAR. IX (e) bars all suits against the County[1] except where the General Assembly has specifically waived sovereign immunity and provided the extent of that waiver. Id.; Olvera v. University System of Georgia's Board of Regents, 298 Ga. 425 (2016). A suit against an individual in her official capacity is a suit against the County itself. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Thus, the Plaintiffs have the burden to show that the General Assembly has explicitly waived the County's sovereign immunity and the extent of that waiver for Counts IV, VI, and VII.

---

[1] Sovereign immunity extends to counties because "[c]ounties are political subdivisions of the state ... organized ... for the purpose of administering locally the powers and policies of the state." Miree v. U.S., 242 Ga. 126, 134 (1978).

Concerning Count IV, the Plaintiffs have identified no waiver of sovereign immunity for an alleged failure to recanvass votes under Ga. Comp. R. & Regs. 183-1-12. Indeed, the words "sovereign" and "immunity" do not appear in Title 183 of the Georgia Administrative Code. Concerning Counts VI and VII, the Plaintiffs have identified no waiver of sovereign immunity for the *County* for an election contest.[2] Therefore, Counts IV, VI, and VII must be dismissed against the individual defendants in their official capacities.

### ii. Official Immunity Bars All State Law Claims (Counts I, IV, VI, and VII) as to the Individual DeKalb Defendants Sued in Their Individual Capacities

Plaintiffs assert state law claims against the Individual DeKalb Defendants in their individual capacities for alleged violations of Plaintiffs' right to vote under the Georgia constitution (Count I), failure to recanvass votes under Ga. Comp. R. & Regs. 183-1-12 (Count IV), and for elections

---

[2] The General Assembly has waived sovereign immunity for the election superintendent in election contests. See O.C.G.A. § 21-2-524(a)(3) and § 21-2-520(c) (the election superintendent is a "defendant" in election contests). The DeKalb County Board of Registrations and Elections is the election superintendent for DeKalb County elections. See O.C.G.A. § 21-2-40(a)(authorizing General Assembly to create county board of elections as election superintendent by local act); Ga. L. 2003, p. 4200 § 1 (local act creating DeKalb County Board of Registrations and Elections). Thus, the General Assembly has waived sovereign immunity *only* for the DeKalb BRE for Counts VI and VII, not for any other entity.

contests (Counts VI and VII). However, these claims are barred by official immunity.

GA. CONST. ART. I, SEC. II, PARA. IX(D) provides "official immunity" to government officials sued in their individual capacities "for the performance or nonperformance of their official functions." Id.; Lathrop v. Deal, --- Ga. ---, 801 S.E.2d 867, 888 (Jun. 19, 2017). In Lathrop, the Georgia Supreme Court interpreted this provision to bar claims against officials for declaratory and injunctive relief premised on past violations of law, but not for prospective relief premised on imminent future violations of law. Id. ("We conclude that Article I, Section II, Paragraph IX (d) concerns suits … for … retrospective relief. It does not limit the availability of prospective relief.").

- In Count I, Plaintiffs request that the Court "declare that these Defendants have violated the Constitution" and "void *ab initio* the Runoff and the certification of its result." [Doc. 15 ¶ 145].

- In Count IV, Plaintiffs request the Court to declare that the Defendants "willfully violated their duty" and to "void *ab initio* the Runoff and a certification of its result." [Doc. 15 ¶¶ 186-187].

- In Counts VI and VII, Plaintiffs ask the Court to "declare this election and the certification of its result void *ab initio*." [Doc. 15 ¶ 206].

As these claims seek retrospective relief against officials in their individual capacities for past performance of official duties (where no malice has been alleged in the performance of discretionary duties and no negligence has been alleged in the performance of ministerial duties, other than in a conclusory fashion), they are barred by official immunity under Lathrop.

### iii. Qualified Immunity Bars All Federal Claims (Counts II-III) as to the DeKalb Defendants in Their Individual Capacities

In Counts II and III, the Plaintiffs allege that the Defendants violated the Plaintiffs' constitutional right to vote and right to due process (Count II) and right to equal protection (Count III) by using allegedly faulty DRE voting machines and by failing to recanvass votes under Ga. Comp. R. & Regs. 183-1-12.02(7)(a). However, these claims are barred by qualified immunity.

Qualified immunity protects officials from § 1983 claims if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The dispositive issue is "whether it

would be clear to a reasonable [state official] that his conduct was unlawful." Leslie v. Hancock County Board of Education, 720 F.3d 1338, 1345 (11th Cir. 2013) (citations omitted). The Plaintiffs must show a U.S. Supreme Court case, a Georgia Supreme Court case, or an Eleventh Circuit case that would put the defendants on notice that the conduct in question was clearly unlawful. Id. Or, Plaintiffs must show that the Defendants' conduct so obviously violated that constitution that prior case law is unnecessary. Id. at 1346 (citing Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012)).

Plaintiffs can point to no controlling case law that would put Defendants on notice that conducting elections using DRE voting machines was a clear violation of any of Plaintiffs' constitutional rights. Likewise, Plaintiffs can point to no controlling case law that would put Defendants on notice that deciding not to recanvass voter cards was a clear violation of any of Plaintiffs' constitutional rights.

Furthermore, the Defendants' conduct was not so obviously in violation of the constitution such that case law is unnecessary. In fact, the Defendants' conduct was directed by state law. Election superintendents are required to conduct elections using DRE machines by state law under the direction of the Georgia Secretary of State. See O.C.G.A. § 21-2-300, et

seq. Thus, no reasonable election official would believe that using DRE machines is a clear violation of Plaintiffs' constitutional rights. Similarly, election superintendents may only recanvass the memory cards if it appears that a discrepancy or error has been made. See Ga. Comp. R. & Regs. 183-1-12.02(7)(a). As no discrepancy or error appeared or was presented to the Defendants,[3] the recanvass was not authorized under state regulations. Thus, no reasonable election official would believe that deciding not to recanvass the voter cards in this election was a clear violation of Plaintiffs' constitutional rights.

Though not controlling, Johnson v. Randoph County, 301 Ga. App. 265 (2009), is persuasive authority. In Johnson, a board of elections challenged the plaintiff candidate's petition for office because the petition was not properly notarized as required by the Georgia election code. The plaintiff filed § 1983 claims against the county board of elections for alleged violations of his right to vote and equal protection, among other things. Id. at 266. The court held that the board members were protected by qualified immunity because "no reasonable official would have believed that

---

[3] The Plaintiffs' petition only provided a conclusory statement that the memory cards "may contain errors and discrepancies" but provided no facts or evidence to support that statement. [Doc. 15-3 p. 42].

compliance with [the Georgia election code] ... constituted an unlawful action." <u>Id.</u> at 269.

<u>Johnson</u>'s reasoning is sound and it applies here. No reasonable election board member would believe that (a) conducting elections using DRE equipment required by state law, or (b) deciding not to recanvass voting equipment because no error or discrepancy appeared was a clear violation of Plaintiffs' constitutional rights. Therefore, qualified immunity bars Counts II and III against the Individual DeKalb Defendants in their individual capacities.

### iv. Eleventh Amendment Immunity Bars All Claims as to the DeKalb Defendants in their Official Capacities

The Eleventh Amendment bars claims against a state in federal court, except where the state has consented to be sued. <u>Lassiter v. Alabama A&M University</u>, 3 F.3d 1482, 1485 (11th Cir. 1993). Eleventh Amendment immunity also bar claims against County officials when acting as an "arm of the state." <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003). Because elections are governed entirely by state laws and regulations, the DeKalb Defendants act as arms of the state when conducting elections. <u>See</u> <u>Casey v. Clayton County</u>, 2007 WL 788943 at *8 (N.D. Ga. Mar. 14, 2007) ("the Board [of elections] acts as an arm of the state for purposes of conducting

elections" under the Eleventh Amendment).[4] Therefore, the Defendants in their official capacities are immune from Plaintiffs' claims under the Eleventh Amendment.

It is true that the U.S. Supreme Court held in <u>Lapides v. Board of Regents of the University System of Georgia</u>, 535 U.S. 613 (2002), that a state defendant can waive Eleventh Amendment immunity concerning state law claims when it removes a case to federal court. <u>Id.</u> at 624. However, <u>Lapides</u> only applies to waive immunity as to those claims for which the state has already consented to be sued in state court. <u>See</u> <u>Stallworth v. Alabama Department of Mental Health & Mental Retardation</u>, 801 F. Supp. 2d 1231 (M.D. Ala. Aug. 10, 2011) (holding state did not waive Eleventh Amendment immunity in removing action to federal court).  Here, the state has not consented to these actions in state or federal court, and therefore these actions are barred by Eleventh Amendment immunity.

### v. Plaintiffs' Claims are Barred by Res Judicata and Collateral Estoppel

Plaintiffs' claims rest on a single premise: the DRE voting system is unable to be safely and accurately used to conduct elections. However, this

---

[4] Indeed, Plaintiffs concede that the DeKalb Defendants are "state officials." [Doc. 15 ¶ 153].

issue has already been litigated and therefore is barred by res judicata and collateral estoppel principles.

<p align="center">Res Judicata</p>

State law guides the analysis when a federal court is asked to apply res judicata to a state court judgment. Amey, Inc. v. Gulf Abstract and Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985). Under Georgia law, res judicata is a three-prong analysis: (1) identity of parties or their privies; (2) identity of cause of action; and (3) previous adjudication on the merits by court of competent jurisdiction. Lilly v. Heard, 295 Ga. 399, 401 (2014); see O.C.G.A. § 9-12-40 (a court's judgment "is conclusive between the same parties and their privies as to all matter put in issue or which … might have been put in issue").

In Lilly, a concerned voter brought a pre-election challenge to a Baker County Board of Education member's candidacy, claiming that the candidate did not meet the residency requirements. Id. at 400. The Baker County Board of Elections held an evidentiary hearing and resolved the issue in favor of the candidate. The concerned voter chose not to appeal the decision. Id. After the election, other concerned voters filed suit to challenge the election on the same ground that the candidate did not meet residency requirement, but the Georgia Supreme Court dismissed the

action on res judicata grounds. Id. at 405. The court found that concerned voters in the pre-election challenge had identity of interests with voters in the post-election challenge; that pre- and post- election challenges based on the same set of facts satisfies the identity of causes of action prong; and that the Board of Election hearing, where the challenger had a right to be heard and present evidence, was an adjudication on the merits. Id.

Under Lilly, Plaintiffs' claims are barred by res judicata. As in Lilly, there is identity of parties between Curling I and Curling II. Several plaintiffs and defendants are party to both actions, but the new Curling II parties' interests (concerns about the safety and accuracy of the DRE voting systems) were adequately represented by the parties in Curling I. Second, the pre- and post-election challenges here concern the same essential claim: the DRE voting system is unsafe and inaccurate for use in conducting elections. As in Lilly, this satisfies the second prong. Finally, the parties had a full opportunity to present evidence and make arguments. In fact, the Plaintiffs here had a more full and fair opportunity than the plaintiffs in Lilly because they introduced expert witness testimony and reports to a superior court judge rather than an administrative body. Thus, under Lilly, Plaintiffs' claims are barred by res judicata.

Collateral Estoppel

"Collateral estoppel is applicable where (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the prior litigation; and (4) the party against whom the earlier decision is asserted has had a full and fair opportunity to litigate the issue in the prior action." Fountain v. Metropolitan Atlanta Rapid Transit Authority, 849 F.2d 1414, 1415 (11th Cir. 1988) (citing I.A. Durbin, Inc. v. Jefferson National Bank, 793 F.2d 1541 (11th Cir. 1986)); see also Fields v. Sarasota-Manatee Airport Authority, 755 F. Supp. 377 (M.D. Fla. Jan. 14, 1991) (holding that collateral estoppel bars claims where the party introduced several witness, including experts witnesses) (affirmed but criticized on other grounds by Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299 (11th Cir. 1992)).

As explained above, the primary issue at stake is the same: the safety and accuracy of the DRE voting system for conducting elections. Second, the issue was actually litigated. Indeed, it was the locus of the preliminary injunction hearing. Third, the issue was critical to the ultimate denial, as the court specifically noted that she found no harm and no evidence that

the DRE voting system was inaccurate or unsafe for use in conducting elections. Fourth, Plaintiffs had a full and fair opportunity to litigate the issue. Like in <u>Fields</u>, Plaintiffs presented several witnesses, including expert witnesses. Thus, Plaintiffs' claims are barred by collateral estoppel.

For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are barred by res judicata and collateral estoppel.

### vi.  Plaintiffs Lack Standing

For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs lack standing to assert this action.

### vii.  Plaintiffs' Claims are Moot

For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are moot.

### viii.  Plaintiffs' Claims are Barred by the Statute of Limitations

For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference

as if fully stated herein, Plaintiffs' claims are barred by the statute of limitations.

### b. The Court Should Dismiss Plaintiffs' Complaint For Failure to State a Claim Upon Which Relief May Be Granted

For the reasons set forth below and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs have failed to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### III.   CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint.

Respectfully submitted this <u>29th</u> day of August, 2017.

<div style="margin-left: 3em;">

LAURA K. JOHNSON
DEPUTY COUNTY ATTORNEY
Georgia Bar No. 392090

Terry G. Phillips
SUPERVISING ATTORNEY
Georgia Bar No. 576865

<u>*/s/ Bennett D. Bryan*</u>
Bennett D. Bryan
ASSISTANT COUNTY ATTORNEY
Georgia Bar No. 157099

</div>

Attorneys for Defendants

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

Bennett D. Bryan
Assistant County Attorney
1300 Commerce Drive, 5th Floor
Decatur, GA 30030
(404) 371-3011 – Telephone
(404) 371-3024 – Facsmile
bdbryan@dekalbcountyga.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING et al.,

    **Plaintiffs,**

**vs.**

**BRIAN P. KEMP et al.**

    **Defendants.**

CIVIL ACTION FILE NO.
2017-CV-02989-AT

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2017, I electronically filed the foregoing **MOTION TO DISMISS AND BRIEF IN SUPPORT** with the CM/ECF system which will send electronic notification to all counsel of record.

           */s/Bennett D. Bryan*
           Bennett D. Bryan
           ASSISTANT COUNTY ATTORNEY
           Georgia Bar No. 157099