## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DONNA CURLING, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CA No. 1:17cv02989-AT** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BRIAN KEMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COBB COUNTY DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT

COME NOW, the Cobb County Board of Elections and Registration ("Cobb BOE"), Director of the Cobb BOE Janine Eveler, and members of the Cobb BOE Phil Daniell, Fred Aiken, Joe Pettit, Jessica Brooks, and Darryl O. Wilson (collectively the "Cobb Defendants") through counsel, and pursuant to Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) move this Court to dismiss Plaintiffs' Verified Amended Election Contest and Complaint for Declaratory Relief, Injunctive Relief, Damages, and Writs of Mandamus. [Doc. 15]. In support of their motion the Cobb Defendants show the Court as follows:

### INTRODUCTION

This action was originally filed by six Georgia residents and an out-of-state non-profit organization in Fulton County Superior court, alleging various claims

against state and county election officials regarding the Georgia 6th Congressional District runoff election between candidates Karen Handel and Jon Ossoff. At the center of most of Plaintiffs' claims are speculative allegations that the Direct Recording Electronic ("DRE") voting machines used by the defendants to conduct the election have been "compromised" and cannot be "used safely and accurately by the electors." [Doc 15. ¶136, ¶140].

The present action is directly related to a prior case brought in Fulton County Superior Court by several of the Plaintiffs in the current action, including Donna Curling and the non-profit corporation Coalition for Good Governance, Inc. (f/k/a The Rocky Mountain Foundation, Inc.), against the Secretary of State and the three county elections boards named as defendants in this case. *See*, Curling v. Kemp I, Civil Action No. 2017cv290630, Fulton Co. Sup. Ct., May 26, 2017). In that action, the plaintiffs sought to enjoin the use of DRE machines during the runoff election and asked the court to require the defendants to use only paper ballots in conducting the election. *See*, Curling I, *supra*, Court's Order of June 9, 2017

An evidentiary hearing was held in that case on June 7, 2017 and the court ultimately entered an order denying the request for an injunction, dismissing the action, and finding an "absence of evidence…that Georgia's DRE voting equipment and its related voting system are unsafe, inaccurate and impracticable within the meaning of the statute." (Id., p. 5).

Plaintiffs filed the present action on July 3, 2017, on the last possible day for filing an elections contest petition to challenge the results of the runoff.  O.C.G.A. § 21-2-524.  Despite the strict service and hearing requirements of that section, no Cobb Defendants were served with the original Complaint until August 4, 2017 and the Cobb BOE was not served until August 10, 2017. [Doc. 19]. On August 8, 2017, the action was removed to the United States District Court for the Northern District of Georgia. [Doc. 1].

Concurrent with the removal of this matter, Plaintiffs filed a Motion for Leave to File an Amended Complaint. [Doc. 2]. Subsequently, this Court ruled that Plaintiffs were permitted to amend the Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and deemed the Amended Complaint filed as of August 18, 2017. [Doc 14]. All Defendants were thereafter ordered to file responsive pleadings to Plaintiffs' Amended Complaint by August 29, 2017. [Doc. 40].

Plaintiffs' Amended Complaint contains nine separate causes of action challenging the Defendants' use of DRE voting equipment to conduct the 6th District Runoff Election on June 20, 2017. Plaintiffs seek to void the results of the runoff election and seek to require the use of paper ballots in the future based upon speculation that an outside party may have interfered with the DRE voting machines

and other election equipment. [cite]. Specifically, Plaintiffs assert the following claims in their Amended Complaint:

Count I -    a state law claim pursuant to Article II of the Georgia Constitution Art. II. Sec. I, Para I. regarding the conduct of elections [Doc. 15, ¶¶ 130-148];

Count II -   a federal claim alleging violation of Plaintiff's Due Process rights brought against defendants in their official and individual capacities under 42 U.S.C. §1983 [Doc. 15 ¶¶ 149-162];

Count III -  a federal claim alleging violation of Plaintiff's Equal Protection rights brought against defendants in their official and individual capacities under 42 U.S.C. §1983 [Doc. 15 ¶¶ 163-179];

Count IV -   a state law claim for "failure to recanvass votes" [Doc. 15 ¶¶ 180-187];

Count V -    a state law claim against Sec. Kemp only for injunctive and declaratory relief regarding certification of the DRE machines [Doc 15 ¶¶ 188-197], not applicable to Cobb Defendants;

Count VI -   a state law election contest against defendants in official and individual capacities under O.C.G.A. § 21-2-520 for alleged election irregularities relating to the use of DRE machines. [Doc. 15 ¶¶ 197-206];

Count VII - state law election contest against defendants in official and individual capacities under O.C.G.A. § 21-2-520 for alleged election irregularities related to the use of illegal ballots. [Doc. 15 ¶¶ 207-215];

Count VIII – state law mandamus claim against Sec. Kemp regarding recertification of DRE machines – not applicable to Cobb Defendants [Doc. 15 ¶¶ 216-232];

Count IX -  state law mandamus claim against defendants in their official capacities seeking to require the use of paper or optical scan ballots [Doc. 15 ¶¶ 233-240].

The Cobb Defendants move to dismiss all counts of Plaintiffs' Amended Complaint seeking relief against them, because this Court lacks subject matter jurisdiction on the grounds of lack of standing, sovereign immunity, official immunity, and Eleventh Amendment immunity.  Additionally, Plaintiffs have failed to state a claim upon which relief can be granted.  Specifically, Plaintiffs' claims are barred by qualified immunity, the statute of limitations, and the doctrine of laches, among other defenses. In the interest of the Court's time, the Cobb Defendants will not recount many of the arguments and authority cited by the State Defendants in their Motion to Dismiss and Brief in Support, but instead hereby join in the State Defendants' motion and incorporate their motion and brief in support where applicable to the Cobb Defendants.

## ARGUMENT & CITATION TO AUTHORITY

## I.   This Court lacks subject matter jurisdiction over the claims in Plaintiffs' Amended Complaint

A complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) where the district court lacks subject matter jurisdiction. The Cobb Defendants challenge to subject matter jurisdiction is based on Plaintiffs' lack of standing, qualified immunity under 42 USC § 1983, and official immunity under GA. Const. Art. I, Sec. II, Para. IX(d).

### A. Plaintiffs lack standing to bring the claims asserted in the Amended Complaint

The Cobb Defendants hereby join and incorporate the arguments contained in the State Defendants' Brief in Support of their Motion to Dismiss regarding Plaintiffs' the lack of standing to bring the claims it asserts. [Doc. 49, pp. 4-12] Specifically, Plaintiffs cannot meet the three elements of the constitutional minimum of standing as set forth in United States v. Hays, 515 U.S. 737, 742-743 (1995) and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).  For all the reasons stated in the State's brief, the Cobb Defendants move to dismiss all claims against them for failure to state a claim upon which relief can be granted.[1]

---

[1] As noted in the State's brief, Defendants concede that Plaintiffs L. Digges and W. Digges are Cobb County residents who have standing to bring the election contest claims (Counts VI and VII). However, Plaintiffs Curling and Schoenberg are not

### B. All state law claims as to the Individual Cobb Defendants sued in their official capacities (Counts IV, VI, VII) are barred by sovereign immunity

Plaintiffs assert state law claims against the individual Cobb Defendants in their official capacities for failure to recanvass votes under Ga. Comp. R. & Regs. 183-1-12 (Count IV), and for election contests (Counts VI and VII). However, these claims are barred by sovereign immunity under GA. CONST. ART. I, SEC. II, PAR. IX (e). This provision bars all suits against the State of Georgia except in matters where the General Assembly has specifically waived sovereign immunity and provided the extent of that waiver. Id.; Olvera v. University System of Georgia's Board of Regents, 298 Ga. 425 (2016). The sovereign immunity of the State extends to counties because "[c]ounties are political subdivisions of the state ... organized … for the purpose of administering locally the powers and policies of the state." Miree v. U.S., 242 Ga. 126, 134 (1978). A suit against an individual in her official capacity is a suit against the County itself. Kentucky v. Graham, 473 U.S. 159, 165 (1985).

The burden of demonstrating a waiver of sovereign immunity rests upon the party claiming the benefit of the waiver. Georgia Dep't of Labor v. RTT Assocs., Inc., 299 Ga. 78, 81, 786 S.E.2d 840, 843 (2016). Plaintiffs have identified no

---

Cobb residents and, more importantly, all Defendants' election contest claims are moot because Rep. Handel has been seated by the U.S. Congress. [See Doc. 28 at 2-7].

waiver of sovereign immunity for the alleged failure to recanvass votes under Ga. Comp. R. & Regs. 183-1-12 (Count III), nor have they identified a waiver of sovereign immunity for the *County* for an election contest.[2] Therefore, Counts IV, VI, and VII must be dismissed against the individual defendants in their official capacities.

### C. All state law claims as to the Individual Cobb Defendants sued in their individual capacities (Counts I, IV, VI, and VII) are barred by official immunity

Plaintiffs assert claims against the Individual Cobb Defendants in their individual capacities for alleged violations of Plaintiffs' right to vote under the Georgia constitution (Count I), failure to recanvass votes under Ga. Comp. R. & Regs. 183-1-12 (Count IV), and for elections contests (Counts VI and VII). However, these claims are barred by official immunity.

GA. CONST. ART. I, SEC. II, PARA. IX(D) provides "official immunity" to government officials sued in their individual capacities "for the performance or

---

[2] The General Assembly has waived sovereign immunity for the election superintendent only in election contests. See O.C.G.A. § 21-2-524(a)(3) and § 21-2-520(c) (the election superintendent is a "defendant" in election contests). The Cobb County Board of Elections and Registration is the election superintendent for Cobb County elections. See O.C.G.A. § 21-2-40(a) (authorizing General Assembly to create county board of elections as election superintendent by local act). Thus, the General Assembly has waived sovereign immunity *only* for the Cobb BOE for Counts VI and VII, not for any other entity, and those claims are moot.

nonperformance of their official functions." Id.; Lathrop v. Deal, --- Ga. ---, 801 S.E.2d 867, 888 (Jun. 19, 2017). As noted in the briefs of the State Defendants and other county Defendants, the Georgia Supreme Court has interpreted this provision to bar claims against officials for declaratory and injunctive relief premised on past violations of law. Id. ("We conclude that Article I, Section II, Paragraph IX (d) concerns suits … for … retrospective relief. It does not limit the availability of prospective relief.").

Cobb Defendants hereby incorporate State Defendants' and the other county defendants' arguments regarding official immunity, specifically with respect to those claims in Counts I, IV, VI, and VII that allege harm and seek relief due to the past actions of the Cobb Defendants.

### D. Plaintiffs' claims are barred by Eleventh Amendment immunity

The Eleventh Amendment bars claims against a state in federal court, except where the state has consented to be sued. Lassiter v. Alabama A&M University, 3 F.3d 1482, 1485 (11th Cir. 1993). County officials are considered state officials under the Eleventh Amendment when acting as an "arm of the state." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). This Court has held that a county election board acts as an arm of the state when conducting elections and "there can be little doubt that Eleventh Amendment Immunity would attach." See Casey v. Clayton County, 2007 WL 788943 at *8 (N.D. Ga. Mar. 14, 2007). Plaintiffs aver in the

Amended Complaint that the Cobb Defendants are "state officials." [Doc. 15 ¶ 153]. Therefore, the Defendants in their official capacities are immune from Plaintiffs' claims under the Eleventh Amendment.

While a defendant may waive Eleventh Amendment immunity concerning state law claims when it removes a case to federal court, (Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002)), the waiver only applies to those claims for which the state has already consented to be sued in state court. *See,* Stallworth v. Alabama Department of Mental Health & Mental Retardation, 801 F. Supp. 2d 1231 (M.D. Ala. Aug. 10, 2011) (holding state did not waive Eleventh Amendment immunity in removing action to federal court). Here, the state has not consented to the claims asserted by Plaintiffs in state or federal court, and, therefore, these actions are barred by Eleventh Amendment.

## II.    Plaintiffs have failed to state a claim upon which relief can be granted

Even if this Court declines to dismiss the Complaint on the basis of subject matter jurisdiction, Plaintiffs claims are still subject to dismissal for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Pro. 12(b)(6).

### A. Plaintiff's claims against the Cobb Defendants under 42 USC § 1983 are barred by Qualified Immunity

Qualified immunity protects government officials performing their discretionary functions from being sued for damages in their individual capacities

under 42 USC § 1983.  Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692 (1999).

Further, government entities will not be held liable for damages under 42 USC §

1983 unless a plaintiff can show that the offending government official violated the

plaintiff's constitutional rights pursuant to an official government policy or custom.

Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). For the

reasons stated herein, the Cobb Defendants named in both their individual and

official capacities are entitled to qualified immunity to Plaintiffs' claims for damages

under Counts II and III.

**1. Plaintiffs' claims for damages under Counts II and III against the Cobb Defendants in their individual capacities are barred by qualified immunity**

The qualified immunity analysis, as it pertains to the members of the Cobb

BOE sued in their individual capacities, begins with considering whether the

individually named members of the Cobb BOE and the Cobb BOE Director, Janine

Eveler, were acting within their discretionary authority in conducting the 6th District

runoff election. *See,* Cottone v. Jenne, II, 326 F.3d 1352, 1357 (11th Cir.2003).

Government officials act within their discretionary authority when they perform

legitimate job-related functions they have the power to perform. Id. *See also,*

Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir.2004). As the

Director and appointed members of the Cobb BOE, the Cobb Defendants have all

the powers enumerated in OCGA § 21-2-70, including the power to conduct all

elections in such a manner as to guarantee secrecy of the ballot and to select and equip polling places for use in primaries and elections. In conducting the 6th District runoff election, the Cobb Defendants were clearly acting within their discretionary authority to conduct elections in accordance with OCGA§ 12-2-70.

Upon Defendants' showing of discretionary authority, the burden then shifts to Plaintiffs to demonstrate that their allegations, if true, amount to a constitutional violation, and whether the rights allegedly violated were clearly established. *See* Barnett v. City of Florence, 409 Fed.Appx. 266, 270 (11th Cir.2010). In Count II of the Amended Complaint, Plaintiffs argue that the Cobb Defendants violated their right to due process under the 1st and 14th amendments.  As demonstrated in the State Defendants' Motion to Dismiss and Brief in Support Section II.A, Plaintiffs have failed to show that they suffered a concrete injury to their due process rights.[3] Therefore, Plaintiffs cannot show that the Cobb Defendants' actions violated Plaintiffs' due process rights. Further, Plaintiffs have failed to offer any established precedent in support of their due process claim, which is necessary to demonstrate

---

[3] The Cobb Defendants join and incorporate the arguments contained in the State Defendants' Brief in Support of their Motion to Dismiss regarding Plaintiffs' failure to demonstrate a due process violation. *See* Subsection II(A) of the State's Brief [Doc. 49].

that Plaintiffs' alleged rights were clearly established for the purpose overcoming qualified immunity.[4]

Moving on to Count III of the Amended Complaint, Plaintiffs argue that the Cobb Defendants violated their right to equal protection under the 14th amendment because voters who use DRE voting equipment to cast ballots are treated less favorably than those who vote by absentee ballot. [Doc 15 ¶¶ 163-179]. As demonstrated in the State Defendants' brief, Plaintiffs lack standing to bring this claim because none of the Plaintiffs actually voted on a DRE machine. *See*, State's Brief, Doc. 49, p. 6. However, even if they could establish standing, Plaintiffs have not made out an Equal Protection claim for the reasons stated in Defendants' initial motion to dismiss, Doc. 8-1 at 27-30.[5]

Accordingly, Plaintiffs have not shown that the individually named Cobb Defendants violated Plaintiffs' equal protection rights in using the DRE voting equipment to conduct the runoff election. Further, Plaintiffs have failed to offer established precedent in support of their equal protection claim, as required to

---

[4] Plaintiff may carry his or her burden to demonstrate that the right allegedly violated was clearly established for qualified immunity purposes by identifying a materially similar case that establishes that alleged right. Loftus v. Clark–Moore, 690 F.3d 1200, 1204 (11th Cir.2012).

[5] Defendants hereby adopt and incorporate by reference the equal protection arguments in both briefs filed by the State.

overcome qualified immunity. *See* <u>Loftus v. Clark–Moore,</u> 690 F.3d 1200, 1204 (11th Cir.2012).

Inasmuch as Plaintiffs have failed to make the requisite showings that would preclude the application of qualified immunity to the Cobb Defendants in their individual capacities, the Cobb Defendants move to dismiss Plaintiffs' claims for damages against these defendants under Counts II and III.

### 2. Plaintiffs' claims for damages under Counts II and III against the Cobb Defendants in their official capacities are barred by qualified immunity

Plaintiffs' claims against the individually named Cobb Defendants in their official capacities are tantamount to claims against the Cobb BOE itself. <u>Monell v. Dep't of Social Servs.,</u> 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). The Cobb BOE cannot be held liable for damages under § 1983 unless Plaintiffs can show that the individually named Cobb Defendants committed an alleged constitutional violation pursuant to an official Cobb BOE policy or custom. <u>Id.</u> at 690, 98 S.Ct. 2018.

As demonstrated, Plaintiffs have failed to show, as a threshold matter, that the Cobb Defendants' actions in conducting the 6th District runoff election amounted to a violation of Plaintiffs' constitutional rights. Further, Plaintiffs have failed to demonstrate that the Cobb Defendants' employment of the particular DRE machines used to conduct the runoff election was pursuant to an official policy of Cobb County or the Cobb BOE. The Cobb Defendants only use DRE voting equipment that is

certified by the Secretary of State pursuant to OCGA § 21-2-379.2.  The Cobb

Defendants have no role or discretion in the ultimate approval of DRE equipment.

Thus, the Cobb Defendants were acting pursuant to state policy in employing the

particular DRE equipment used to conduct the runoff election, and not to a Cobb

County or Cobb BOE policy.

As Plaintiffs have failed to make the requisite showings that would preclude

the application of qualified immunity to the Cobb Defendants in their official

capacities, the Cobb Defendants move to dismiss Plaintiffs' claims for damages

against these defendants under Counts II and III.

### B.  There is no private right of action for a failure to recanvass votes

In Count IV of the Amended Complaint, Plaintiffs allege that they are entitled

to declaratory and injunctive relief because the Cobb Defendants did not recanvass

votes cast at Cobb County precincts during the runoff election in response to a voter

recanvassing request. [Doc. 15 ¶¶ 180-187]. Plaintiffs rely on Ga. Comp. R. & Regs.

183-1-12[6] in support of this argument; however, that regulation does not provide a

private right of action to voters allegedly aggrieved by an election superintendent's

---

[6] Cobb Defendants note that while Ga. Comp. R. & Regs. 183-1-12.02(7)(a) states
that three electors may petition the election superintendent for a recanvass, none of
the "members of CGG" alleged to have petitioned for the recanvass are named as
Plaintiffs in this suit, and any claim they might have as an allegedly aggrieved
elector is not able to be brought by CGG on their behalf.

"failure to recanvass votes," and Plaintiffs have cited no statutory or other legal authority that suggests they have a private right to the relief they request.

In Georgia, "[c]ivil liability may only be authorized . . . when the General Assembly has expressly provided for a private right of action in the textual provisions of the statute." Somerville v. White, 337 Ga. App. 414, 416 (2016) (emphasis in original); Anthony v. Am. Gen. Fin. Servs., 287 Ga. 448, 454-459 (2010) (holding that the notary statute does not contain an express private cause of action and rejecting any implied private right of action). "The judicial task is, of course, to interpret the statute the General Assembly has passed 'to determine whether it displays an intent to create not just a private right of action but also a private remedy.'" Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)).

Turning to the language of the regulation, Ga. Comp. R. & Regs. 183-1-12-.02(7) provides that the election superintendent shall order a recanvass of a particular precinct or precincts *in which it shall appear that a discrepancy or error* has been made. This language suggests that the election superintendent has the discretion to determine whether a recanvassing is warranted, and Ga. Comp. R. & Regs. 183-1-12-.02(7) clearly does not provide a right of private action or a remedy against the election superintendent in exercising this discretion.

The language of Ga. Comp. R. & Regs. 183-1-12-.02(7) is similar to that used in OCGA § 21-2-495, which provides that "*whenever it appears that there is a*

*discrepancy in the returns recorded for any voting machine or machines or that an error…exists*, the superintendent shall, either of his or her own motion or upon the sworn petition of three electors of any precinct, order a recanvass of the votes…" (emphasis added.) Again, this language implies that the election superintendent has the discretion to order a recanvassing of votes and does not contain any language suggesting that there is a private remedy against the superintendent in exercising her discretion that a recanvass is not warranted.

Because Plaintiffs are not entitled to seek the relief requested under Ga. Comp. R. & Regs. 183-1-12-.02(7), the Cobb Defendants move to dismiss all claims against them in Count IV for failure to state a claim upon which relief can be granted.

## C. Plaintiffs' election contest claims are barred by the statute of limitations

The Cobb Defendants hereby join and incorporate the arguments contained in Section II.B of the State Defendants' Brief in Support of their original Motion to Dismiss regarding the statute of limitations barring Plaintiffs' election contest claims. [Doc. 8].  None of the Cobb Defendants were served with process until a month after this action was originally filed, including Cobb BOE that was not served until August 10, 2017. Plaintiffs' failure to strictly comply with the deadlines in the applicable election contest provisions means that this matter is both moot and barred by the statute of limitations. For all the reasons stated in the State Defendants' Brief,

the Cobb Defendants move to dismiss all claims against them under Counts VI and VII of the Amended Complaint.

**D. Plaintiffs' claims are barred by the doctrine of laches**

The doctrine of laches requires proof of (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) prejudice to the party asserting the defense. AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1545 (11th Cir. 1986). Plaintiffs have caused unreasonable delay in instituting and prosecuting this action without viable explanation. As shown herein, this delay will prejudice the Cobb Defendants as they prepare for the quickly approaching county elections early voting deadline.

**1. Plaintiffs' state and federal constitution claims were inexcusably delayed.**

Counts I-III of Plaintiffs' Amended Complaint are based on allegations that the DRE voting machines are unsecure and compromised, and have not been properly certified for use in accordance with Georgia law. According to the Amended Complaint, Plaintiffs became aware of these alleged issues with the DRE System as early as the special election which took place in April of 2017. Plaintiffs were certainly aware of these issues by the time early voting in the runoff election began because Plaintiffs Curling, Price, and Coalition for Good Governance (formerly Rocky Mountain Foundation, Inc.) instituted a lawsuit on May 25, 2017,

attempting to prevent Cobb and the other county defendants from conducting the runoff election using the DRE voting system based on the same alleged issues with the DRE voting equipment.

Thus, Plaintiffs could have brought their constitutional claims under Counts I-III as soon as early voting in the runoff election began. Delay is to be measured from the time at which the plaintiff knows or should know that she has a provable claim. *See* Kason Indus., Inv., v. Component Hardware Grp., Inc., 120F.3d 1200, 1206 (11th Cir. 1997).  Because the alleged violation of Plaintiffs' rights was in the use of the DRE voting machines regardless of the outcome of the election, these claims became ripe for review as soon as the Cobb Defendants began conducting the runoff election using the DRE voting machines. There was no reason for Plaintiffs to wait until the election results were announced to bring these claims; however, Plaintiffs did not institute this suit until July 3, 2017. Thus, Plaintiffs claims under Counts I-III of the Amended Complaint were inexcusably delayed.

### 2.  Plaintiffs' remaining claims were inexcusably delayed

Plaintiffs failure to recanvass claim, election contest claims, and mandamus claim became ripe for review when the results of the runoff election were returned. *See* National Advertising Co. v. City of Miami, 402 F.3d 1335 (11th Cir. 2005) (holding that when a plaintiff is challenging a governmental act, the issues are ripe for judicial review if a plaintiff shows he has sustained, or is in immediate danger of

sustaining, a direct injury as the result of that act.) Although Plaintiffs timely filed their original election contest complaint after the election results were announced, several inexcusable delays have occurred since then, with Plaintiff failing to timely serve the Complaint and waiting to amend the Complaint until over a month after the election results were returned.

As noted in subsection II.C of this brief, Plaintiffs caused an inexcusable delay by not quickly serving the Cobb Defendants with the Complaint and the Special Process Summons required in an election contest. Indeed, Plaintiffs failed to properly serve the Summons upon any of the Cobb Defendants until over a month after the deadline for filing an election contest claim, and some of the Cobb Defendants were not served until as late as August 18, 2017. The Georgia Supreme Court has held that an unexcused delay in properly serving an elections contest petition is grounds for dismissal due to laches.  *See*, Swain v. Thompson, 281 Ga. 30 (2006), where the Georgia Supreme Court affirmed the dismissal of a petition challenging an election when the *pro se* plaintiff had the defendant personally served with a normal summons form, but did not use the special process form required by O.C.G.A. § 21-2-524(f).  Swain, 281 Ga. at 30.

Further, on top of this delay, Plaintiffs did not file their motion to amend their original complaint until August 8, 2017, and it was not deemed to have been filed until August 18, 2017. This amounts to an inexcusable delay, which is in

contravention with the legislature's strong desire to avoid election uncertainty and confusion resulting from an election contest claim. *See* <u>Plyman v. Glynn County,</u> 276 Ga, 426, 578 S.E. 2d 124 (2003).  For these reasons, Plaintiffs are guilty of laches in failing to quickly serve and amend their complaint and this Court should dismiss their claims accordingly.

## <u>CONCLUSION</u>

This Court lacks subject matter jurisdiction over the claims in Plaintiffs' Amended Complaint because Plaintiffs lack standing and have failed to demonstrate waivers of sovereign, official and Eleventh Amendment immunities. Therefore, the claims should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(1).  Likewise, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6).  For all the reasons set forth above and in the briefs of the State and the other county Defendants, the Cobb Defendants respectfully move this Court to dismiss Plaintiffs' Amended Complaint.

Submitted this 29th day of August, 2017.

HAYNIE, LITCHFIELD, CRANE & WHITE, PC

/s/Daniel W. White_____
DANIEL W. WHITE
Georgia Bar No. 153033
SARAH G. HEGENER
Georgia Bar No. 534438

*Attorneys for Cobb County Defendants*

222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlclaw.com

## <u>CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ Daniel W. White
DANIEL W. WHITE
Georgia Bar No. 153033
*Attorney for Defendant Cobb County Board of Elections*

HAYNIE, LITCHFIELD, CRANE & WHITE, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlclaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2017, I electronically filed the foregoing COBB COUNTY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

BRYAN WARD, *Attorney for Plaintiffs*

CHRISTOPHER M. CARR, Attorney General
CRISTINA M. CORREIA, Assistant Attorney General
ELIZABETH A. MONYAK, Assistant Attorney General
JOSIAH B. HEIDT, Assistant Attorney General
*Attorneys for State Defendants*

OVERTIS HICKS BRANTLEY
BENNETT D. BRYAN
*Attorneys for DeKalb County Defendants*

PATRISE M. PERKINS-HOOKER
KAYE BURWELL
CHERYL RINGER
*Attorneys for Fulton County Defendants*

ANNE LEWIS
*Attorney for Rep. Karen Handel*

RUSSELL D. WALDON
*Attorney for Jon Ossoff*

/s/Daniel W. White
DANIEL W. WHITE
Georgia Bar No. 153033

HAYNIE, LITCHFIELD, CRANE & WHITE, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlclaw.com