```
 1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,            :
                                       :
 5           PLAINTIFFS,               :
     vs.                               :  DOCKET NUMBER
 6                                     :  1:17-CV-2989-AT
     BRIAN P. KEMP, ET AL.,            :
 7                                     :
             DEFENDANTS.               :
 8

 9


10        TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11           BEFORE THE HONORABLE AMY TOTENBERG

12           UNITED STATES DISTRICT JUDGE

13                   AUGUST 31, 2017

14                      2:00 P.M.

15

16

17

18

19

20

21   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                 TRANSCRIPT PRODUCED BY:

23

     OFFICIAL COURT REPORTER:          SHANNON R. WELCH, RMR, CRR
24                                      2394 UNITED STATES COURTHOUSE
                                        75 TED TURNER DRIVE, SOUTHWEST
25                                      ATLANTA, GEORGIA  30303
                                        (404) 215-1383
```

```
1              A P P E A R A N C E S   O F   C O U N S E L

2

3    FOR THE PLAINTIFFS:

4
          BRYAN MYERSON WARD
5         HOLCOMB & WARD, LLP

6         EDWARD BRUCE SCHWARTZ
          JOE ROBERT CALDWELL, JR.
7         STEPTOE & JOHNSON, LLP

8
     FOR THE STATE OF GEORGIA DEFENDANTS:
9

10        CRISTINA CORREIA
          ELIZABETH AHERN MONYAK
11        ATTORNEY GENERAL'S OFFICE - ATLANTA

12
     FOR THE FULTON COUNTY DEFENDANTS:
13

14        CHERYL RINGER
          KAYE WOODARD BURWELL
15        DAVID R. LOWMAN

16
     FOR THE DEKALB COUNTY DEFENDANTS:
17

18        BENNETT DAVIS BRYAN
          DEKALB COUNTY DEPARTMENT OF LAW
19

20   FOR THE COBB COUNTY DEFENDANTS:

21
          DANIEL WALTER WHITE
22        HAYNIE LITCHFIELD CRANE & WHITE

23

24

25
```

```
 1                    P R O C E E D I N G S

 2     (Atlanta, Fulton County, Georgia; August 31, 2017.)

 3                 COURTROOM DEPUTY CLERK:  Good afternoon, Counsel.

 4     This is Amy McConochie, Judge Totenberg's courtroom deputy

 5     clerk.  The Court is joining the conference call in Civil

 6     Action 17-CV-2989.  That is the case of Curling, et al. vs.

 7     Kemp, et al.

 8                 Counsel, I'm going to remind you that we have quite a

 9     few participants on the line.  So you need to announce your

10     name before you start speaking so that both Judge Totenberg and

11     the court reporter, Ms. Welch, will know who is speaking at any

12     given time.

13                 Now I'm going to ask you all to please introduce

14     yourselves starting with counsel for the plaintiff so that

15     Judge Totenberg will know who is on the line.  Then she will be

16     on the line with you.  Thank you.

17                 MR. WARD:  This is Bryan Ward for plaintiffs.  And

18     I'll let the Steptoe counsel introduce themselves.

19                 MR. SCHWARTZ:  Yes.  Good afternoon, this is Ed

20     Schwartz from Steptoe & Johnson.  And I'm here with my partner,

21     Joe Caldwell from Steptoe & Johnson, counsel for plaintiffs.

22                 MS. CORREIA:  This is Cris Correia at the Attorney

23     General's Office.  And Elizabeth Monyak is also here.

24                 MR. BRYAN:  This is Bennett Bryan with Dekalb County.

25                 MR. WHITE:  This is Daniel White with Cobb County.
```

1          MS. BURWELL:  Kaye Burwell, David Lowman, and Cheryl

2    Ringer for Fulton County.

3          THE COURT:  All right.  This is Judge Totenberg.

4    Thank you for making yourselves available so quickly.  And,

5    Mr. Schwartz and Mr. Caldwell, for the purposes of this

6    hearing, I will authorize your active participation.  And we'll

7    address or you will address later on any issues about the

8    admission on a pro hac basis that still have to be resolved.

9          But in the interest of time, I'm going to proceed in

10   that way.

11         MR. SCHWARTZ:  Thank you.

12         THE COURT:  Frankly, I just was surprised by the late

13   motion for an extension.  I understand that plaintiffs' counsel

14   is in the process of some degree of change.  But the complexity

15   and volume of this case has been obvious from the get-go.

16         And, Mr. Ward, are you -- was it your plan to stay on

17   the case?

18         MR. WARD:  For the moment at least, Your Honor.

19         THE COURT:  All right.  So I just thought that the

20   proposed extension of time, A, was late, as was the request for

21   more pages late.  And, finally, the extension request indicated

22   it would basically barely modify the time frame, but, in fact,

23   it modifies it quite a bit.

24         Under the plan established during the phone

25   conference, the defendants would be filing the responses to the

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1    preliminary injunction motion by September 5th.  But under the

2    proposal submitted by the plaintiffs, all of that would be

3    completed by the 12th.  And then, of course, you also have the

4    additional three days that you've allocated for the plaintiffs'

5    reply, which we just didn't deal with the plaintiffs' reply

6    brief on our earlier phone conference.

7            Well, all of that gets us to September 15, which

8    would be perhaps livable if we didn't have to potentially have

9    a hearing and the Court didn't have to actually issue a

10   decision and it didn't have to read anything.

11           But obviously I do have to read something.  My law

12   clerk has to read quite a bit, and we have to have a hearing.

13   So -- and we are in a very time-compressed situation.

14           I really need to understand, Number 1, what it --

15   what it is that the plaintiffs are going to be seeking in this

16   motion.  Because I don't even know that.  What is the scope of

17   relief?

18           MR. SCHWARTZ:  So, Your Honor, this is Ed Schwartz

19   from Steptoe.  I would be happy to address that.  And, first,

20   let me say that we do apologize for the very late filing.  And

21   I have to say we're feeling quite sheepish about it.  It is not

22   the way we like to practice, to say the least.

23           We had just been engaged the day before the Court's

24   August 22 status conference when the current briefing motion

25   for the motion was set.  And we have been working around the

1   clock to get up to speed and work on the papers.  We really

2   didn't realize until late last evening that we really did not

3   feel that we could -- would be able to file by last night a set

4   of papers that we felt really did justice for the factual and

5   legal issues that the motion will address.

6           And, candidly, we also felt like we needed extra time

7   to make sure that we were narrowing the scope of those issues

8   to only those that Your Honor would need to address to timely

9   rule on the motion.

10          So, you know, if Your Honor is prepared to grant us

11  an extension until close of business tomorrow, we are confident

12  that we can accomplish both of those goals.  And in doing so,

13  we'll be able to frame our motion and the requested relief in a

14  way that will enable Your Honor to be able to conduct a hearing

15  and rule in a timely manner.

16          So with respect to the answer to your question, what

17  plaintiffs will be seeking in the motion for preliminary

18  injunction in particular is an order that would enjoin the

19  defendants from using the State's direct recording electronic

20  voting equipment in the upcoming November 7 elections to be

21  conducted in the three relevant counties, Fulton, Dekalb, and

22  Cobb only, and in any subsequent related runoff elections, and

23  that they instead use paper ballots rather than what we believe

24  we will be able to demonstrate is the corrupted DRE equipment.

25  So that is the scope of the relief that we will be seeking.

1    And I hope that is helpful to Your Honor.  And we do realize

2    that perhaps was not made clear to you previously.

3           And then I would also -- I think it might also be

4    helpful to articulate for you the scope of the motion that we

5    will be filing on which we would be seeking that relief.

6           THE COURT:  Go ahead.

7           MR. SCHWARTZ:  Would you like me to address that as

8    well?

9           THE COURT:  Yes.

10          MR. SCHWARTZ:  The motion will be based on the fact

11   that the use of the equipment will violate the State election

12   laws in two ways:  One, it will violate the voters' rights

13   under Georgia law to be able to vote in absolute secrecy.  That

14   right is codified in the Georgia election statute as well as in

15   the Georgia Constitution.

16          And we are confident that we will be able to

17   demonstrate that we have a substantial likelihood of prevailing

18   on the merits at trial in establishing that the DRE system that

19   the State plans on using cannot satisfy those standards.

20          Secondly, we will move on the grounds that the use of

21   the DRE equipment will also violate the rights of voters to

22   have their votes accurately recorded and tallied.  And we will

23   be demonstrating in the motion the basis for that argument.

24   And it will be supported by affidavits from some of the

25   nation's leading cybersecurity experts who are focusing on this

1   particular issue.

2          To be clear, the motion is not going to be based

3   primarily at all -- in fact, it will be based upon a unique set

4   of facts and conditions that have arisen in Georgia and in

5   these three counties in which we are -- about which we're

6   filing the motion.

7          This is not a motion that will be predicated upon

8   challenging the use of this type of equipment which is used in

9   other jurisdictions.  That will be addressed in there.  But it

10  is the events that took place during the course of the year

11  that we believe we will be able to demonstrate will preclude

12  the defendants from being able to deploy the DRE system in a

13  way that will not violate the rights that I've articulated.

14         So just to be clear, we will not be moving in the PI

15  motion on the federal constitutional law in Section 1983

16  claims.  Though we certainly intend to pursue those claims at

17  trial.  But in order to put before Your Honor just those issues

18  and arguments that we believe you need to address in order to

19  grant the relief that we're seeking, we will not be moving on

20  the federal constitutional law claims nor will we be seeking

21  any relief on the State contest claim.

22         And if I can add one more point with respect to

23  scope, Your Honor.  Nor will plaintiffs be renewing their

24  motion for expedited discovery to be conducted in advance of

25  the hearing.  We believe that we will be able to demonstrate

1    the plaintiffs are entitled to the relief that we'll be seeking

2    in the preliminary injunction motion without the benefit of

3    that discovery.

4              THE COURT:  Well --

5              MR. SCHWARTZ:  So, Your Honor --

6              THE COURT:  Yes.  Go ahead.

7              MR. SCHWARTZ:  I'm sorry.  Go ahead.

8              THE COURT:  That is fine.

9              MR. SCHWARTZ:  I was just going to say if Your Honor

10   is prepared to grant us an extension until 6:00 P.M. tomorrow

11   we are comfortable that we will be able to file a motion that

12   will address the particular arguments I've identified and

13   seeking the narrow relief that I have identified.

14             THE COURT:  Okay.  Well, you have no doubt read the

15   papers associated with the various State challenges here.  And

16   I'm trying to determine what is different here because there

17   was a really fairly long and substantive response filed to the

18   plaintiffs' motion for TRO.  And the response was filed on

19   May 26, 2017, by the State.  And the motion itself was filed in

20   superior court on May 25th or a verified complaint was.

21             I don't know whether -- whether there was -- what

22   there exactly was as a motion because it was framed as a

23   request for injunctive relief.

24             So what is different at this point?  Since this has

25   had various rounds before now, what is the emergency at this

1    point?

2         I mean, obviously everyone wants an election to run

3    with integrity.  But this litigation has been going round and

4    round for some time, and it doesn't mean that I think that

5    there aren't potential claims here.

6         But in particular the State law claims have been

7    focused on rather than the federal claims in preceding rounds

8    of State litigation.

9         So what is different now?

10        MR. SCHWARTZ:  Let me address the two questions that

11   you have raised, Your Honor.  With respect to what is

12   different -- and we obviously -- when I say we, I mean Steptoe

13   was obviously not involved in the prior briefing.

14        But what I can tell you is that we will be submitting

15   as support for the motion affidavits from a number of leading

16   experts, one of whom has had personal involvement with the DRE

17   equipment -- that is Logan Lamb, whose name you have seen who

18   was the first cybersecurity expert to be able to walk in the

19   wide-open door that the State had left open to its -- to its

20   servers -- and then also from other leading cybersecurity

21   experts who are nationally recognized for their expertise with

22   respect to the vulnerabilities of voting equipment in general

23   and will be able to address in particular the circumstances of

24   this equipment and the risk to Georgia's voters arising from

25   the fact that the server was left wide-open for anyone to walk

1    in and manipulate voters' records and to infect the software

2    with code that would make it impossible for the State to use

3    that equipment with anything close to assurance that voters'

4    votes will be accurately recorded and tallied.

5              And we believe that you will see, Your Honor, that

6    the facts that we will put in front of you in support of that

7    motion are compelling.  And, of course, we'll be prepared to

8    address at the hearing these facts further including with

9    testimony from some of those experts.

10             THE COURT:  I guess what I'm asking about

11   additionally is what is different in terms of the challenge to

12   the nature of the legal claims, whether it be as to standing,

13   as to whether there is a private right of action, or other

14   defenses that have been asserted.  And are you proceeding on a

15   mandamus theory at this junction?  Or what are you proceeding

16   under?

17             Because obviously Judge Adams has already issued one

18   ruling and she -- she was -- two rulings.  One is the first one

19   from May where she thought that the evidence was insufficient

20   and later on with sovereign immunity.

21             MR. SCHWARTZ:  Yes.

22             THE COURT:  What is different relative to the legal

23   posture as opposed to the factual posture that you hope to be

24   able to adduce?

25             MR. SCHWARTZ:  Yes.  So, Your Honor, with respect to

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1  factual posture, you know, as I indicated, we will be filing

2  with the motion affidavits that were not before the Court

3  previously on the TRO motion.  And it is a very, very different

4  set of facts and support from leading experts that will be

5  supporting our motion.

6      THE COURT:  I understand that.  But what about just

7  simply the whole legal posture of the case rather than the

8  factual posture?

9      MR. SCHWARTZ:  Okay.

10     THE COURT:  What claims are you proceeding on that

11  are somehow different?  Because there were obviously some real

12  problems with some of those claims in terms of just

13  technicalities and whether there is a private right of

14  action -- you may not agree about that -- or whether there was

15  sovereign immunity.

16     But just even the mention right now of the right to

17  privacy here in this connection, that is something that I don't

18  see in the complaint.  But that is -- but putting that aside,

19  you know, certainly there's some real issues based on Georgia

20  law about what rights you have in connection with the

21  functionality of the system and what the standard of review is

22  and how reviewable it is.

23     MR. SCHWARTZ:  So, Your Honor, a couple of things.

24  With respect to the right of Georgia voters to vote in absolute

25  secrecy, as I indicated, is stated expressly in the Georgia

1    Code and in the Georgia Constitution.  That is something that

2    the plaintiffs became aware of after the complaint was filed

3    and the TRO motion was considered.  And, frankly, you know,

4    that is a critical element of the basis on which we'll be

5    seeking a preliminary injunction.

6              THE COURT:  Let me just stop you there.  After the

7    current -- after the complaint that got removed here and

8    then --

9              MR. SCHWARTZ:  Yes, Your Honor.

10             THE COURT:  And then after the amended complaint,

11   there was a --

12             MR. SCHWARTZ:  Yes, Your Honor.

13             THE COURT:  All right.

14             MR. SCHWARTZ:  Yes.  And then with respect to the

15   relief that we will be seeking, we're not seeking relief on a

16   mandamus claim.  We're simply asking the Court to exercise its

17   equitable powers to enjoin the use of the DRE equipment in

18   order to protect Georgia voters, the voters in the three

19   counties that I identified, from being deprived of their

20   rights -- of their right to vote.

21             With the respect to legal defenses the defendants

22   have raised previously, we'll obviously be addressing those in

23   response to the motion to dismiss.  We were not planning on

24   addressing those specifically in the preliminary injunction

25   motion.

1          But obviously to the extent that Your Honor would

2     like us to do so, we can file a supplemental brief or address

3     it in our reply brief or however -- whatever would be helpful

4     to Your Honor.  But obviously we'll be responding in the near

5     future to the motion to dismiss, and we'll be addressing those

6     issues there.

7          THE COURT:  I guess what you tell me about this very

8     important new claim is the very concern I have in some ways at

9     the same time.  If it is an important new claim, why are we

10    rushing about like this?  I'm not trying to diminish the

11    importance of any particular election cycle.

12         But right now it is -- of the election cycles that

13    occur in Georgia, this is not one which has significant offices

14    at issue.  All offices are important, and all elections are

15    important.  But surely the next election cycle in 2018 is

16    more -- far more significant.

17         Why is it that plaintiffs are not willing just simply

18    to do this in an orderly basis so we're not rushing about and

19    proceeding even with articulation of claims that have not been

20    to date framed in the way that you would like to see fit in

21    what the current complaint is in front of me even?

22         I mean -- I'm just continuing the question that I

23    posed in my last order that I issued.  I don't understand why

24    we would be racing around like this on something as important

25    as an election dispute and the integrity of the voting system.

```
1              I don't know how we get it done in a reasonable

2     fashion even if I, you know, say let's go ahead on Friday --

3     and that is perhaps not such a huge distance in time.  But when

4     I'm hearing about a new claim, it potentially changes the

5     complexion of the case.  Maybe it doesn't.

6              If it is taking you a lot of time -- and I realize

7     you haven't been on the case long -- but somebody who is a

8     skilled practitioner and you're going to end up all probably

9     day and night working until Friday to get this done, what do we

10    think a hearing would be like and my assembling this?  How does

11    this really benefit the public or the plaintiffs' cause?

12             MR. SCHWARTZ:  Well, Your Honor, with all due

13    respect, I think you suggested the answer to that question when

14    you said that with something as important as an election and

15    voters' rights.  And I think that supplies the answer as to

16    what is the emergency, what is the urgency.

17             We are only seeking an injunction with respect to the

18    use of this equipment in three counties.  And it is a small

19    election.  And there are a couple of different ways of looking

20    at that.  One, we're just asking the State to use paper

21    ballots, something that they do anyway.  They supply paper

22    ballots.  But they are obligated to supply a voter ballot to

23    any voter that wants to use them.  They will have paper

24    ballots.  All we're asking them to do is not also use the

25    corrupted DRE equipment that they have in place.
```

```
 1            So, you know, our perspective is really quite simple.
 2    The statute says that if anyone can learn how any single voter
 3    voted then the State cannot use that DRE machine.  And it is
 4    that specific.  To us, if that is what -- if we can prove at
 5    that hearing -- and I'm confident we can -- that the State
 6    cannot go ahead and use that equipment without violating that
 7    statute -- and not just with respect to one voter but many
 8    voters -- then they cannot be permitted to use that equipment.
 9            So while it is a fair perspective to be sure to say
10    this is not such an important election when the State of
11    Georgia embedded in its Constitution a right to vote in secret
12    and when the Georgia legislature put it -- you know, took the
13    unusual step of codifying a very detailed regulatory regime as
14    to the obligations of the State and the manner in which it
15    conducts its election, it did not reserve those rights just for
16    really important elections.  It reserved those rights to every
17    single voter, every single vote, and every single election.
18            THE COURT:  Did it establish a private right of
19    action?
20            MR. SCHWARTZ:  And we will indeed be able to
21    demonstrate that the plaintiffs are entitled to pursue these
22    claims.
23            THE COURT:  All right.  Tell me what statute you are
24    referencing.
25            MR. SCHWARTZ:  I'm sorry?
```

```
 1              THE COURT:  What statutory provision are you
 2    referencing --
 3              MR. SCHWARTZ:  Oh, for the --
 4              THE COURT:  -- and regulatory scheme?
 5              MR. SCHWARTZ:  Yes.  If you could give me a moment,
 6    Your Honor.
 7              I believe it is five provisions of the Georgia Code.
 8              THE COURT:  All right.  You can look for it and tell
 9    me at -- your colleague can look for it, and you can tell me --
10    share it at the end of the conference.
11              I just want to be clear.  It is not that I don't
12    think this issue is important.  And I have tried to give it the
13    greatest priority.
14              My concern is because it is so important it should be
15    properly presented.  And that is my concern.  It is not
16    denigrating the election cycle right now but my, in fact,
17    elevation of the issue that it should be properly presented and
18    that we actually have the time to do this because the Georgia
19    Supreme Court has said in the *Favorito* case, 285 Ga. at 797, at
20    787, that the plaintiffs always have the right to proceed by
21    absentee paper ballot and that that is an acceptable
22    alternative.
23              But you're obviously saying that as a matter of law
24    that they cannot actually mandate at this point or use the DRE,
25    and that is a whole other thing.  But really it is sort of in
```

1    its own way encompassed to some extent in *Favorito*.

2         Now, it may be that there are compelling other pieces

3    of evidence that might get us to that point.  But it is going

4    to be a hard case because of that.  And the status of the law.

5    So I'm just -- that is why I'm saying why would I -- at this

6    juncture, it just doesn't seem prudent on my part to push like

7    this for something that is so important and then to do it in

8    what I consider potentially a half-baked way.

9         MR. SCHWARTZ:  Your Honor -- and I think we

10   completely understand Your Honor's concern, which you have

11   certainly articulated before.  And I think what -- what we can

12   say at this point is that we are -- we will file a set of

13   papers that are going to -- that will address a narrow set of

14   issues.

15        And I do have the statutory provision in front of me.

16   I'm happy to identify those for you.  They will be narrow, and

17   I can't tell you that these are simple, simple facts to deal

18   with.  But we do believe that we can frame these issues, frame

19   and present the evidence in a way that -- and frankly -- and do

20   so in the way that the facts will be so compelling that Your

21   Honor will be able to address them in a timely way.

22        The other piece of this, Your Honor, is that we're

23   only talking about the conduct of, you know, as you accurately

24   described, small elections in three counties of Georgia.

25        THE COURT:  But these are not minor counties.  These

1    are -- these are counties with large populations.

2           MR. SCHWARTZ:  Indeed.  And we will be prepared to

3    demonstrate, Your Honor, certainly by the hearing that this

4    should really be no issue whatsoever for these jurisdictions to

5    handle these elections by paper ballot.  They already use paper

6    ballots.  They will get a -- they can and we know do expect a

7    small voter turnout.  And they can present data and we can

8    present data on what they can reasonably expect in the upcoming

9    elections.

10          This is easily manageable for them.  This is not, you

11   know, months or even weeks of lead-up time that they are going

12   to need to do this.  And they know these facts.  We are --

13   we'll be able to present these facts as well to Your Honor.

14          So we are confident, Your Honor, that you -- that by

15   the time we're done with this, by the time we're done with the

16   hearing, that you will be comfortable with the facts as we have

17   presented them and comfortable that, you know, you have a

18   sufficient handle to be able to rule.

19          THE COURT:  All right.  Does defense counsel wish to

20   be heard?

21          MS. CORREIA:  Your Honor, this is Cris Correia with

22   the Attorney General's office.  As I explained to plaintiffs'

23   counsel yesterday morning when they asked us to consent to the

24   extension, our concern is that the entire matter be resolved.

25   Well, that we have sufficient time to respond, especially if

1    there are now new claims being presented that are not even part

2    of the complaint.  But that we first have sufficient time to

3    respond but also that the entire matter be resolved

4    sufficiently early before the start of the election for the

5    counties to know with certainty which way they are proceeding

6    and the State.

7           You know, if the Court extends the briefing

8    deadlines, we would ask that the Court consider ruling simply

9    on the briefs and forgoing a hearing just to get the matter

10   resolved earlier.

11          THE COURT:  All right.  Well --

12          MR. WHITE:  Your Honor, this is Daniel White for Cobb

13   County.  I was just -- the last allegation of -- factual

14   allegation involving, you know, corruption with these machines

15   was April 18.  And today we are just hearing a new legal claim

16   based on that factual allegation from half a year ago.

17          And I just don't -- I understand the seriousness of

18   this.  And I agree with the Court.  This needs to be dealt with

19   properly.  But the idea that we would be responding to a claim

20   that has never been raised before within a one-week period of

21   time and then -- and I understand the Court is concerned about

22   the only -- I hear plaintiff saying there are only three

23   counties.

24          But the reality of the matter is if they -- if they

25   manage to prevail and the Court ordered the paper ballots to be

```
 1   used, every single municipal election in the State would be

 2   challenged after the close of the election because they would

 3   come with a court order saying we have an order from a judge

 4   saying that these machines can't be trusted.

 5          So even though they are trying to limit it to these

 6   three counties, that is not the practical effect of what they

 7   are asking for.  And we would just -- our county, you know,

 8   would need at least a couple of months to -- they are saying we

 9   have to provide paper ballots.  But that is not for election

10   day purposes.  That is for absentee.

11          We just don't think -- we don't think that the time

12   frame is conducive to considering, you know, a late-filed

13   motion for injunction that is two months into this case now.

14          MR. SCHWARTZ:  Your Honor, this is Ed Schwartz.  If I

15   can respond briefly.  The argument with respect to the

16   inability of defendants to satisfy the voters' rights to vote

17   in absolute secrecy -- this is not something predicated on any

18   particular corruption.  Frankly, it is predicated upon the way

19   in which the system was set up from the get-go to operate.

20          And, you know, we have joined the case only recently.

21   I can't address why it wasn't raised previously other than this

22   is something that one of the computer experts -- cybersecurity

23   expert who was able to lawfully access the system discovered

24   when he was -- when he was looking at the system.  And that was

25   only fairly recently.
```

1              You know, I'm frankly shocked to hear that defendants

2    say they need two months to print more paper ballots so its

3    voters can use them in these upcoming municipal elections in

4    which they do not anticipate a large turnout.

5              We are going to be happy to address those facts at

6    the hearing, frankly.  We don't expect them to -- we expect to

7    be able to demonstrate that they can do this in a much shorter

8    period of time than that.

9              THE COURT:  So --

10             MR. WHITE:  Your Honor, Daniel White again.  I --

11             THE COURT:  Is that what you were saying?  I wasn't

12   sure that that is what you were saying, that it was going to

13   take two months to print the ballots.

14             MR. WHITE:  No.  And it -- they keep producing --

15   Your Honor, Daniel White again.  It is not simply printing out

16   ballots.  In order to ensure the total right of privacy that

17   they seem to want to raise, we would have to train poll workers

18   on how to administer an election day that occurs only on paper

19   ballots.  Right now there is a limited number of staff -- and,

20   again, this would all come into evidence if we needed to have a

21   hearing.  There is a limited number of staff that deal with

22   absentee ballots.  That is different than training all the poll

23   workers.

24             And we are not -- granted, Cobb County only has four

25   municipalities doing an election here.  But that is dozens of

1    workers that we have to train on specific procedures so that we

2    can protect the very rights that they are complaining about

3    here and teach them and show them the proper way to conduct a

4    secret ballot election on paper, which is different from what

5    they have been trained for.  Most of these people have been

6    doing this volunteer work for several election cycles.

7           And to teach them a new method to administer -- that

8    is what we're talking about.  We're not talking about printing

9    ballots.  That is not at all what we're saying.  We're talking

10   about training people to conduct a secret election that they

11   have never had to do before.

12          MR. SCHWARTZ:  Your Honor, the poll workers have to

13   know how to administer paper ballots because voters have a

14   right to use paper ballots and they are going to have them

15   there.  There is a -- it is codified in the statute the time

16   frame under which each of the counties has to train their poll

17   workers.  They have got -- and I don't have that schedule in

18   front of me.  But they have got plenty of time to do this.

19          What we're talking about doing is ordering paper

20   ballots, have them delivered, and buying enough cardboard

21   dividers so that voters can fill them out in privacy on a big

22   long table.  I have to believe that it is a whole lot easier to

23   train people to do that than to train them on how to use the

24   DRE machines.

25          This is a smoke screen, Your Honor.  I'm sorry.  This

1   is -- people have been voting this way since the country was

2   founded.  People are still voting this way in small towns in

3   Georgia and elsewhere around the country.

4          THE COURT:  All right.  I think I've heard enough.

5   All right.  Why don't we do this --

6          MR. BRYAN:  Your Honor --

7          THE COURT:  Yes.  Who is that?

8          MR. BRYAN:  I'm sorry, Your Honor.  I didn't mean to

9   interrupt.  This is Bennett Bryan from Dekalb County.  If I

10  might ring in briefly, this issue -- this factual issue that

11  we're arguing over right now is one that we covered in a

12  preliminary injunction hearing in Fulton County Superior Court.

13         Ms. Curling testified that it would take five minutes

14  for the counties to train the employees and to get everything

15  else in place.  And then, of course, you know, defense

16  witnesses testified otherwise.  Of course, all this would come

17  out again because we would be litigating more or less the same

18  issues.

19         But, Your Honor, I just -- it is not a smoke screen.

20  Again, government officials administering elections -- there is

21  a lot of moving parts to that.

22         But that being said, Your Honor, I would also just

23  like to repeat what Ms. Correia had mentioned that should any

24  extension be granted I think it would -- we would request that

25  it be ruled on based on just the motions as opposed to having a

1    hearing.

2            Thank you, Your Honor.

3            THE COURT:  All right.  Well, let me say, first of

4    all, that if you're seeking to proceed on this additional

5    claim, Mr. Schwartz, you need at least to file a motion for

6    leave to amend the complaint and identify that claim.  And that

7    needs to be done simultaneous at minimum with the motion for

8    the preliminary injunction.

9            Secondly, I think you should just go ahead and -- you

10   have Ms. McConochie's e-mail.  So go ahead and e-mail to

11   Ms. McConochie whatever constitutional and statutory provisions

12   you're relying on for this new claim so that I can look at that

13   this afternoon.

14           MR. SCHWARTZ:  Yes, Your Honor.

15           THE COURT:  And obviously copy opposing counsel.

16           Third, I have read the order that deals with the

17   question of the viability of the paper ballot issues.  But was

18   there a transcript of the hearing?  Do any of the defense

19   counsel know that?

20           MS. CORREIA:  Your Honor, this is Cris Correia with

21   the State.  Yes, there is a transcript.  And I believe those

22   were uploaded for the Court by plaintiffs' counsel -- both the

23   transcript and the exhibits.  If not, I can certainly provide

24   them to the Court.

25           THE COURT:  Okay.  I don't know.  If you would just

```
1   simply take a look at what is on the docket.  Ms. Correia, if

2   it is not, just simply would you also write to Ms. McConochie

3   this afternoon and say -- tell me the document number it is.

4   And if it is not, instead just go ahead and file it yourself.

5          MS. CORREIA:  Certainly, Your Honor.  It is not --

6   I'm sure it is not on the docket, but the Court had us e-mail

7   the orders.  And I thought that that included the transcripts

8   as well.  But we can certainly file them.

9          THE COURT:  All right.  Well, just as to the

10  transcripts, that would be helpful partially because my law

11  clerk had to go to another appointment outside the office for

12  the next few hours.  So I need to look at whatever is there

13  sooner than that.

14         MS. CORREIA:  Certainly.

15         THE COURT:  And I think what we should do is that,

16  Mr. Schwartz, you can continue working on this with the notion

17  you're getting until 6:00 P.M. on Friday.  I think though I'm

18  not going to -- I would like to look at whatever provisions

19  that you're saying you're proceeding based on, and I would like

20  to look at what was covered in the last hearing about the

21  ballot issue before I make any decision as to how -- how I'm

22  proceeding here.

23         But just in order to, you know, keep things moving

24  and not have any further delay, I would say go ahead.  You're

25  basically proceeding at your own risk at this point because, as
```

1    I've said both in these phone conferences as well as in my

2    orders, I'm happy to, you know, move this case rapidly so we

3    could have a proper preliminary injunction hearing this winter.

4            And that is still on my mind here.  So I'm going to

5    look at this.  And if I -- even if I permit this to occur, I

6    will still look at whether I want to -- while I will schedule a

7    hearing if I decide to proceed here, I cannot tell you that I

8    will actually determine that a hearing is necessary once I get

9    these papers.

10           So, you know, just for purposes of having something

11   on the agenda, I'm going to -- just as I have said now, well,

12   all right, we're going to let you file something on Friday

13   but -- possibly.  But I have to really decide it.  And we will

14   let you know once I get a chance this afternoon to look at

15   everything.  And so you just have to keep on working on it.

16   You need to, of course, also resolve the admission issues.

17           I'm just trying to think what else there is.  If I

18   allow the filing, I'll let the defendants have an additional

19   day to respond.

20           MS. CORREIA:  Your Honor, this is Cris Correia with

21   the State.  We would ask until the end of the week.  And, Your

22   Honor, the reason we do that is because with the initial

23   deadline we would get -- we would have their affidavits in hand

24   to draft responses and to start doing that before the holiday

25   weekend.

1          Without that, we will essentially have two or three

2    business days only to respond.  Even through September the 8th

3    on Friday, that only gives us four business days to talk to our

4    witnesses who will, you know, be unavailable over the holiday

5    weekend.

6          THE COURT:  So what day are you asking for?  Right

7    now it's --

8          MS. CORREIA:  Your Honor, we would ask for the 8th,

9    which would give us four business days.

10         THE COURT:  So you want until Friday?

11         MS. CORREIA:  Yes.

12         THE COURT:  All right.  I can't give you until

13   Friday.  That really doesn't give us enough time.  But I'll

14   consider Thursday while I'm considering this whole situation.

15         All right?

16         MS. CORREIA:  Thank you.

17         MR. SCHWARTZ:  Your Honor, at the risk of seeking to

18   gild the lily here, we're thinking also about the motion to

19   dismiss.  I would say already right now it is a preliminary

20   injunction motion.

21         If Your Honor would be comfortable with giving us

22   until the end of the week to respond to the motion to dismiss

23   now that we're not -- we're thinking perhaps now that we're not

24   getting expedited discovery that Your Honor might be

25   comfortable with that schedule.

```
 1              THE COURT:  Right now your --
 2              MR. SCHWARTZ:  Our response is currently due Tuesday,
 3    Your Honor.
 4              THE COURT:  Tuesday.  I think that we have the
 5    problem that no one thinks about how much work that we have to
 6    do.  You're all looking at your work.  So, you know, I'll give
 7    you one extra day if we proceed this way.  And if we don't,
 8    then I'm just going to move the whole schedule.
 9              MR. SCHWARTZ:  Thank you, Your Honor.
10              MS. CORREIA:  Your Honor, this is Cris Correia with
11    the Attorney General's office again.  I just want to point out
12    that plaintiffs have indicated that their motion for
13    preliminary injunction will not include responses to our legal
14    arguments made in our motion to dismiss.  If they are not going
15    to include them there, it will be difficult for us to respond
16    to their preliminary injunction motion since they haven't even
17    filed a response to our motion to dismiss yet.
18              MR. SCHWARTZ:  I'm sorry.  So the point is that you
19    won't be able to respond to arguments we're not making in our
20    motion?
21              MS. CORREIA:  The legal merit of why there is a cause
22    of action, why immunity does not bar this action entirely.
23              THE COURT:  Well, won't that --
24              MR. SCHWARTZ:  That can be briefed in the motion --
25    sorry, Your Honor.
```

```
1            THE COURT:  That is all right.  Go ahead.

2            MR. SCHWARTZ:  I was just going to say that those

3   issues are going to be briefed in the motion to dismiss

4   briefing.  I don't know why you -- are you saying that you

5   would feel compelled to address them in opposing the

6   preliminary injunction motion as opposed to in a reply to our

7   opposition on the motion to dismiss?

8            MS. CORREIA:  This is Cris Correia again.  Yes,

9   absolutely.  The first prong of the preliminary injunction

10  motion is likelihood to succeed on the merits.  I think that

11  includes whether or not you have a claim going forward.

12           Well, I would suggest that if you feel compelled to

13  address an issue not made in our motion that is certainly your

14  right.  But I'm not understanding why you would feel so

15  compelled.

16           THE COURT:  Ms. Correia, I don't see how you are

17  harmed.  I am giving you 50 pages to file a motion to dismiss.

18  I think you would be harmed -- I think the real problem is that

19  there is a whole claim here that hasn't been articulated.  That

20  is a bigger issue relative to the motion to dismiss because you

21  have already filed your motion to dismiss.

22           So that -- that is what I perceive is the issue, not

23  that you won't be able to use your page allotment in the

24  preliminary injunction motion.  Because you can obviously deal

25  with that by reference to whatever you filed in your motion to
```

```
 1    dismiss.  So --
 2              MR. SCHWARTZ:  Your Honor, with respect to the
 3    preliminary -- I'm sorry.  Go ahead.
 4              THE COURT:  Yes.
 5              MR. SCHWARTZ:  I was just going to say that you
 6    reminded me of one point that I neglected to make.  And that is
 7    that in the papers that we will be filing on Friday we are not
 8    going to be seeking an enlargement of the page limit.  We will
 9    plan on filing a memorandum of law that is no more than 25
10    pages.
11              THE COURT:  Well, Mr. Schwartz, can you all file an
12    amended complaint by noon tomorrow?
13              MR. SCHWARTZ:  We will do our best, Your Honor.  If I
14    can speak candidly, there is some -- we were hoping to file an
15    amended complaint that is perhaps a little more streamlined
16    than the one that was removed to the federal court.  We won't
17    be able to get that done by tomorrow.
18              But if it is helpful for us to file the complaint
19    that you now have with an amendment that just addresses the --
20    I'll call it the privacy claim, I think we can do that.
21              THE COURT:  All right.  Why don't you just file
22    something -- a request to amend with that claim by itself to
23    be -- you don't have to restate everything else so that we can
24    all see what it is.  And that way, the defendants can write to
25    me and ask -- basically outline how many pages they need in
```

```
 1    order to file a supplemental motion to dismiss on that.
 2              MR. SCHWARTZ:  Yes, Your Honor.
 3              MS. CORREIA:  Your Honor, this is Cris Correia again.
 4    When would our supplemental motion to dismiss be due?
 5              THE COURT:  I'm just trying to think about the
 6    briefing.  Can you do that by Wednesday?
 7              MS. CORREIA:  Your Honor, without even seeing the
 8    claim, it is a little bit difficult to say.  We will certainly
 9    try that.  But we are also -- we would also be responding to
10    their motion for preliminary injunction at the same time.
11    There's only two of us on this case.
12              THE COURT:  I understand that.  But I thought I was
13    giving you -- you know what I think is I need to look at the
14    schedule altogether because I have -- this is a lot of
15    different moving parts.  So I just wanted to get the amendment
16    before me in a time that I can actually reach you all on
17    Friday.
18              So just give me the proposed amended claim.  And
19    then, you know, we'll deal later on with the streamlining of
20    the complaint, et cetera.  Because I still just have to decide
21    if we're proceeding here at all.
22              And I think that we're in a difficult position.
23    There have been multiple changes in counsel in representing the
24    Curling plaintiffs.  And this is just -- while all of this is
25    important, the reality is it is not that the Curling plaintiffs
```

```
 1   haven't had access to the courts either and will continue to
 2   have access to the courts.  So I just think I have to make that
 3   fundamental management determination at this point in how to
 4   proceed.
 5           So I would like to see the motion for leave to amend
 6   the complaint to add that particular claim filed by noon on
 7   Friday.
 8           MR. SCHWARTZ:  Yes, Your Honor.
 9           THE COURT:  Okay.  And we'll look for your respective
10   letters to Ms. McConochie and the transcript.  If we already
11   have the transcript, Ms. Correia, my apologies.  I'll try to go
12   and look myself to see if I can easily see it.  But I think it
13   just might be faster for you to send it on.
14           MS. CORREIA:  Okay.  I'm happy to put it on the
15   docket, Your Honor.
16           THE COURT:  All right.  Thank you.  Is there anything
17   else we should address at this time?
18           MR. SCHWARTZ:  Not for the plaintiffs, Your Honor.
19           MS. CORREIA:  Not for the State, Your Honor.
20           THE COURT:  All right.  Thank you very much.
21           MR. SCHWARTZ:  Thank you, Your Honor.
22           THE COURT:  All right.  We're adjourned then.
23                   (The proceedings were thereby concluded at 2:53
24                   P.M.)
25
```

```
 1                C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   33 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   8th day of September, 2017.

14

15

16

17        _____
          SHANNON R. WELCH, RMR, CRR
18        OFFICIAL COURT REPORTER
          UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```