**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, ET AL.** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**BRIAN KEMP, ET AL.** )<br>)<br>**Defendant.** )<br>) | **Civil Action File No. 1:17-cv-2989-AT** |

## SECOND AMENDED COMPLAINT

Plaintiffs Donna Curling, Donna Price, Jeffrey Schoenberg, Laura Digges, William Digges III, Ricardo Davis, Edward Curtis Terry and the Coalition for Good Governance, hereby allege and plead for their Second Amended Complaint as follows:

## PRELIMINARY STATEMENT

1.      The right to vote is the most fundamental and sacrosanct of all of the rights conferred on U.S. citizens by the Constitution as well as by the Georgia Constitution and Georgia state law.  It is the foundation of our democracy. As the Supreme Court has set out in unambiguous terms, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17

(1964). *See also Wexler v. Anderson*, 452 F.3d 1226, 1232 (III) (11th Cir.2006) ("The right to vote is fundamental, forming the bedrock of our democracy.").  The Georgia Constitution as well reflects the drafters' recognition of the vital role that the right to vote plays in the management of the State's affairs by explicitly providing that "[e]lections by the people shall be by secret ballot and shall be conducted in accordance with procedures provided by law."  Ga. Const. Art. II § 1, ¶ 1.

2.     In reaction to the profound challenges that emerged from the 2000 Bush-Gore presidential election, many states, Georgia among them, turned to paperless electronic voting systems in the expectation that this technology would prevent a reprise of that election's problems. Plaintiffs raise no questions regarding the intent behind that change.  However, over the years, it has been increasingly apparent that paperless electronic voting systems have not, and could not, live up to expectations.  Indeed, the system is now known to be so vulnerable to intrusion and manipulation that the nation's leading cybersecurity experts have been going to great lengths to educate both the states and Congress about the perils inherent in those systems, and to urge the return to paper ballots.

3.     Despite the inclination to put great faith in the wonders of technology, it is decidedly not the answer when it comes to voting systems.  The Direct Recording Equipment ("DRE") voting system ("Voting System") used in Georgia

is a prime illustration of the regrettable incompatibility between the functioning of the current electronic voting system and the voters' right to cast a secret ballot and have that vote accurately counted.  Because of such concerns, states across the country, in increasing numbers, have been returning to the safety of paper ballots, with only five states remaining, like Georgia, using all electronic voting.

4.     The inherent vulnerabilities of DREs tremendously compromise the rights of voters in any jurisdiction.  Furthermore, the integrity of Georgia's Voting System was significantly eroded as a consequence of the misfeasance and malfeasance of the Defendants:  The central server used both to store voters' personal identifying data and to program every electronic voting machine in Georgia was readily accessible in the many months (and possibly years) leading up to the 2016 Presidential election, and subsequent 2017 elections --  and accessible not merely to cybersecurity experts, but to anyone with a modicum of familiarity with computer use.  The central server was wide open for anyone to enter the system and readily access personal data of Georgia voters.  Furthermore, such an intruder could also easily manipulate the server's data and voter registration software, and thereby render legitimate voters ineligible, add fictitious voters to the list, and switch votes so as to increase the numbers for the candidate of the intruder's choosing.

5.     The gross abrogation of the Constitutional and statutory obligations to protect the franchise rights of Georgia voters did not stop there.  Instead, when the security failure was discovered by a local cybersecurity expert and brought to the attention of two of the Defendants, the expert was warned to drop the issue. And it was not only the warnings from this cybersecurity expert that these Defendants ignored.  Later, they would turn a blind eye to other critical warnings from more than twenty leading cybersecurity and voting system experts, from the Department of Homeland Security ("DHS"), from the Federal Bureau of Investigation ("FBI"), and from the Election Assistance Commission ("EAC").

6.     Indeed, Secretary of State Brian P. Kemp ("Kemp" or "Secretary Kemp") not only ignored each of these warnings, but also refused the offers of assistance in remedying the problems that the DHS and the FBI made to him, and urged him to accept.  Rather, Kemp went public with completely unfounded allegations of an attempted takeover of Georgia's electoral system by the federal government.  Notably, the FBI eventually seized control of Georgia's central server.

7.     Even under the very best of circumstances – with the current voting systems properly installed, programmed, and operated – the inherent flaws in the DREs render it not possible for the state to comply with the election law or to protect the rights of Georgia voters.  Yet, these are not the best of circumstances;

4

far from it.  Rather, there is compelling evidence that the rights of Georgia voters guaranteed by Georgia statute and the U.S. and Georgia constitutions (1) to vote in absolute secrecy and (2) to have their votes counted accurately, have been flagrantly and repeatedly breached by Defendants' conduct.

8.      This case is not merely about a technical violation or a theoretical risk.  It is about forcing voters to choose between totally relinquishing their right to vote and acquiescing to cast their vote despite very real risks:  the risk that how they voted will be exposed; the risk that their vote will not be properly counted; the risk that the declared results will be contrary to the will of voters, and furthermore, the risk that there will be no way to verify the validity of the election.

9.      Any question of convenience of Defendants and their commitment to a woefully flawed and wholly indefensible voting system must not be permitted to take priority over the statutory and Constitutional rights of Georgia voters.

10.      This complaint sets forth the violations of law and the other serious irregularities that occurred during the November 8, 2016 General Election, ("2016 General Election"), the April 18, 2017, 6th Congressional District Special Election ("Special Election"), and the June 20, 2017, 6th Congressional District Runoff Election ("Runoff") (collectively, the "Relevant Previous Elections") causing the results of such elections to be indeterminable.

11.     For these reasons and those demonstrated below, Plaintiffs respectfully ask the Court: (1) to hold Defendants liable for the violations of Georgia voters' rights in connection with the Relevant Previous Elections, and to ensure that those rights are protected in connection with the scheduled November, 2017, May, 2018, and November, 2018 General Elections, as well as any future Runoff or Special Elections, (collectively, the "Relevant Pending Elections") and (2) to enter an order providing such relief as is necessary and appropriate to protect Georgia's voters from such future, irreparable harm.

## PLAINTIFFS

12.     Plaintiffs are electors who are residents of Georgia as well as an association that includes, among its members, electors of the State of Georgia who are concerned about the integrity, credibility, security, and reliability of the electoral process.  All Plaintiffs have cast ballots in one or more of the Relevant Previous Elections, and all but Plaintiff Davis have cast ballots on the DRE System in one or more of the Relevant Previous Elections. All Plaintiffs are members of the Coalition for Good Governance.

13.     DONNA CURLING ("Curling") is an elector of the State of Georgia, a resident of Fulton County, and a member of the Coalition for Good Governance. Curling voted in the Relevant Previous Elections, and intends to vote in all future elections for which she is eligible.

6

14.     Due to concerns over the integrity of prior Georgia elections, Curling requested that Secretary of State Brian P. Kemp ("Secretary Kemp") reexamine Georgia's Voting System.  Curling also chose to exercise her right to cast her vote using a verifiable paper ballot in the Runoff, so as to ensure that her vote would be permanently recorded on an independent record.  To do so, Curling persisted through considerable inconvenience – only to be incorrectly told by Defendants Kemp and the Fulton County Board of Registration and Elections that she had not, in fact, cast a ballot, creating irreparable harm that her ballot was not counted. Without the intervention of this Court, Curling will be compelled to choose between relinquishing her right to vote and acquiescing to cast her vote under a system that violates Georgians' rights to absolute secrecy and cannot reliably determine election outcomes that can be legally certified. As such, Curling has standing to bring her claims.

15.     Plaintiff COALITION FOR GOOD GOVERNANCE ("CGG") (formerly Rocky Mountain Foundation) is a non-profit corporation organized and existing under the laws of the State of Colorado.  CGG's purpose is to advance the constitutional liberties and individual rights of citizens, with an emphasis on elections.  CGG is a membership organization, and its membership includes all named individual Plaintiffs, as well as other electors of the State of Georgia who reside in, variously, Fulton County, Cobb County, DeKalb County, the 6th

Congressional District of the State of Georgia, and other municipalities within the state that will conduct Relevant Pending Elections.  CGG's members were subjected to a system that violated their rights to vote in absolute secrecy and to have their votes counted accurately.  Plaintiff CGG has associational standing to bring this complaint on behalf of CGG's Georgia individual elector members: (1) those members would otherwise have standing to sue in their own right; (2) the interests CGG seeks to protect are germane to CGG's purpose; and (3) with the exception of Counts VI and VII, the relief requested herein does not require the participation of CGG's individual Georgia elector members in the lawsuit.

16.     Plaintiff DONNA PRICE ("Price") is an elector of the State of Georgia, a resident of DeKalb County, and a member of CGG.  Due to concerns over the integrity of prior Georgia elections, prior to the Runoff, Price joined the group of 13 other electors who exercised their right under O.C.G.A §21-2-379.2(a) to request that Secretary Kemp reexamine Georgia's Voting System, --a request Secretary Kemp effectively denied, abridging her rights to assure that future elections would be conducted on compliant systems.  She cast her vote on a DRE in the 2016 General Election, and intends to vote in all future elections for which she is eligible.  Without the intervention of this Court, Price will be compelled to choose between relinquishing her right to vote and acquiescing to cast her vote

under a system that violates her right to vote in absolute secrecy and to have her vote accurately counted.  As such, Price has standing to bring her claims.

17.    Plaintiff JEFFREY SCHOENBERG ("Schoenberg") is an elector of the State of Georgia and a resident of DeKalb County. He casts his ballot on DRE machines in all  the Relevant Previous Elections and intends to vote in all future elections for which he is eligible. In casting his ballot in a voting system that violated his right to a secret ballot and abridged his right to participate in a legally conducted election with a determinable and certifiable result, Schoenberg suffered irreparable harm.   Without the intervention of this Court, Schoenberg will be compelled to choose between relinquishing his right to vote and acquiescing to cast his vote under a system that violates his right to vote in absolute secrecy and to have his vote accurately counted.  As such, Schoenberg has standing to bring his claims.

18.    Plaintiff LAURA DIGGES ("L. Digges") is an elector of the State of Georgia and a resident of Cobb County. She intends to vote in all future elections for which she is eligible.  Due to concerns over the integrity of prior Georgia elections, L. Digges chose to exercise her right to cast her vote using a verifiable paper ballot in the Runoff, so as to ensure that her vote would be permanently recorded on an independent record that could be recounted accurately.  L. Digges persisted through considerable inconvenience to do so.  In the Special Election and

the 2016 General Election, L. Digges cast her ballot on DRE machines. In casting her ballot in a voting system that violated her right to a secret ballot and abridged her right to participate in a legally conducted election with a determinable and certifiable result, L. Digges suffered irreparable harm. Without the intervention of this Court, L. Digges will be compelled to choose between relinquishing her right to vote and acquiescing to cast her vote under a system that violates her right to vote in absolute secrecy and to have her votes accurately counted.  As such, L. Digges has standing to bring her claims.

19.     Plaintiff WILLIAM DIGGES III ("W. Digges") is an elector of the State of Georgia and a resident of Cobb County.  Due to concerns over the integrity of prior Georgia elections, W. Digges chose to exercise her right to cast his vote using a verifiable paper ballot in the Runoff, so as to ensure that his vote would be permanently recorded on an independent record that could be recounted accurately.  W. Digges persisted through considerable inconvenience to do so.  In the Special Election and the 2016 General Election, W. Digges cast his ballot on DRE machines. In casting his ballot in a voting system that violated his right to a secret ballot and abridged his right to participate in a legally conducted election with a determinable and certifiable result, L. Digges suffered irreparable harm.  W. Digges plans to vote in all future elections in which he is eligible. Without the intervention of this Court, W. Digges will be compelled to choose between

relinquishing his right to vote and acquiescing to cast his vote under a system that violates his right to vote in absolute secrecy and to have his votes accurately counted.  As such, he has standing to bring his claims.

20.     Plaintiff RICARDO DAVIS ("Davis") is an elector of the State of Georgia, and a resident of Cherokee County. Due to concerns over the integrity of prior Georgia elections, prior to the Runoff, Davis joined the group of 13 other electors who exercised their right under O.C.G.A §21-2-379.2(a) to request that Secretary Kemp reexamine Georgia's DRE Voting System, --a request Secretary Kemp effectively denied, abridging Davis' rights to assure that future elections would be conducted on compliant systems.  Davis intends to vote in all future elections in which he is eligible. Without the intervention of this court, Davis will be compelled to choose between relinquishing his right to vote and acquiescing to cast his vote under a system that violates his right to vote in absolute secrecy and to have his votes accurately counted. As such, he has standing to bring his claims.

21.     Plaintiff EDWARD CURTIS TERRY ("Terry") is a registered voter in the State of Georgia, a resident of the City of Clarkston ("Clarkston") in DeKalb County, and the Mayor of Clarkston. Terry is a candidate for re-election in the upcoming November 7, 2017 municipal election, and as such has an interest in ensuring that the rights of his supporters to cast their votes in secrecy and to have their votes, as well as those of other Terry supporters, counted accurately, are

11

honored, and that his personal rights as an elector are as well. Terry, both as a voter and as a candidate, along with his voters, will suffer irreparable harm not only because of the anticipated violation of the secrecy of the November 2017 municipal election ballots, but because of the chilling effect that will impact his voters and likely Clarkston's voter turnout because of the growing understanding of the DRE's violation of voter privacy. Terry voted in the 2106 General Election on election day in his neighborhood precinct on a DRE machine. In casting his ballot in a voting system that violated his right to a secret ballot and abridged his right to participate in a legally conducted election with a determinable and certifiable result, Terry suffered irreparable harm. Terry plans to vote in every Relevant Future Elections for which he is eligible. It is well established that political candidates have the right to challenge election procedures that impact their ability to compete for votes. Terry has standing as a voter, and as a candidate and third party standing representing voters to bring his claims.

## DEFENDANTS

22. Defendant BRIAN P. KEMP ("Kemp" or "Secretary Kemp") is the Secretary of State of Georgia and, in that role, also serves as Chair of the State Election Board. Secretary Kemp was, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continues to be responsible for the orderly and accurate administration of Georgia's electoral processes. This responsibility

includes the duty to ensure that legally compliant voting systems are in place, and to conduct any reexaminations of Georgia's DRE System currently in use, upon request or at his own discretion.

23.     Defendants DAVID J. WORLEY, REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, and SETH HARP ("Members of the State Election Board") are members of the State Election Board in Georgia. As members, they were, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continue to be responsible for (1) promulgating rules and regulations to ensure the legality and purity of all elections, (2) investigating frauds and irregularities in elections, and (3) reporting election law violations to the Attorney General or appropriate district attorney.

24.     Defendant STATE ELECTION BOARD ("State Board") was, for the Runoff and for the Relevant Pending Elections, continues to be responsible for (1) promulgating rules and regulations to ensure the legality and purity of all elections, (2) investigating frauds and irregularities in elections, and (3) reporting election law violations to the Attorney General or appropriate district attorney.  The State Board promulgated Rule 183-1-12.01 requiring the use of DRE's in the state's elections, other than municipal elections.

25.     Defendant RICHARD BARRON ("Barron") is the Director of the Fulton County Board of Registration and Elections.  As such, he was, for the

13

Relevant Previous Elections, and, for the Relevant Pending Elections, continues to be responsible for conducting the elections in Fulton County.

26.    Defendants MARY CAROLE COONEY, VERNETTA NURIDDIN, DAVID J. BURGE, and AARON JOHNSON ("Members of Fulton County Board of Registration and Elections") are members of the Fulton County Board of Registration and Elections who were, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continue to be, responsible for conducting the elections in Fulton County.

27.    Defendant FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS ("Fulton Board") was, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continues to be responsible for conducting elections in Fulton County.

28.    Defendant MAXINE DANIELS ("Daniels") is the Director of the DeKalb County Board of Registration and Elections for DeKalb County. As such, she was, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continues to be responsible for conducting elections in DeKalb County.

29.    Defendants MICHAEL P. COVENY, ANTHONY LEWIS, LEONA PERRY, SAMUEL E. TILLMAN, and BAOKY N. VU ("Members of DeKalb County Board of Registration and Elections") are members of the DeKalb County Board of Registration and Elections. As members, they were, for the Relevant

14

Previous Elections, and for Relevant Pending Elections, continue to be responsible for conducting elections in DeKalb County.

30.     Defendant DEKALB COUNTY BOARD OF REGISTRATION AND ELECTIONS ("DeKalb Board") was, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continues to be responsible for conducting elections in DeKalb County.

31.     Defendant JANINE EVELER ("Eveler") is the Director of the Cobb County Board of Elections and Registration. As such, she was, for the Relevant Previous Elections, and, for the Relevant Pending Elections, continues to be responsible for conducting elections in Cobb County.

32.     Defendants PHIL DANIELL, FRED AIKEN, JOE PETTIT, JESSICA BROOKS, and DARRYL O. WILSON ("Members of Cobb County Board of Elections and Registration") are members of the Cobb County Board of Elections and Registration. As members, they were, for the Relevant Previous Elections, and for the Relevant Pending Elections, continue to be responsible for elections in Cobb County.

33.     Defendant COBB COUNTY BOARD OF ELECTIONS AND REGISTRATION ("Cobb Board") was, for the Relevant Previous Elections, and for the Relevant Pending Elections, continues to be responsible for election in Cobb County.

15

34.     Defendant MERLE KING ("King") is Executive Director of the Center for Election Systems at Kennesaw State University ("CES").  As such, he was, for Relevant Previous Elections, and is expected to remain, for the Relevant Pending Elections, responsible for overseeing, managing, and securing the electronic election infrastructure for the State of Georgia, including portions of the DRE System, and to be responsible for creating Georgia's ballots.

## I.  JURISDICTION AND VENUE

35.     On August 8, 2017, Defendants consented to jurisdiction when they removed this action on the basis of Federal Question jurisdiction under 28 U.S.C. 1331.  Dkt. No. 1-14.

36.     Further, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201, and 2202.

37.     Venue lies in this court pursuant to 28 U.S.C. §1391(b) because all reside in the district and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

## II.  FACTUAL BACKGROUND

### A.     Georgia's Voting System is Fundamentally Flawed and Vulnerable

38.     Georgia's Voting System relies primarily of the use of DRE voting computers, which, by design, directly record an elector's vote on an electronic medium ("DRE System").  *See* O.C.G.A. §§ 21-2-379.1 to -379.12; *see also* Ga. Comp. R. & Regs. 183-1-12.01. The DREs used in Georgia provide no method

16

through which voters can be assured that their vote has been accurately recorded, in contrast with an anonymous paper ballot which the voter marks and reviews before he casts his ballot.  DREs produce neither a paper trail nor any other means by which the records of votes cast can be audited.

39.    In addition, it is possible, by accessing memory card data in a DRE to obtain a list of when voters voted on the DRE to determine for whom a particular voter cast his or her ballot, presuming the DRE is operating properly.  Because DREs record individual ballot data with unique serial numbers in chronological, as opposed to randomized, order, someone present in the polling place (such as a poll worker or political poll watcher) could take note of the order in which voters cast their ballots, and then match a particular voter with the individual electronic ballot data from the DRE machines. While this may not be practicable during busy voting times in large urban or suburban precincts with a significant number of DRE machines used by a large number of voters, it remains a very real prospect for voters during off-peak voting times, especially in early voting periods and in small towns and rural precincts.

40.    These inherent problems are exacerbated by the fact that Georgia uses DREs that run on antiquated software that is programmed by and downloaded from one central location, the Center for Elections Systems ("CES"), located at Kennesaw State University ("KSU").  Relying on a single site renders Georgia's

Voting System far more vulnerable than systems that are managed through numerous sites at the county level across the state.  In Georgia, only one server needs to be compromised in order for an intruder to exploit it, making Georgia elections a tempting target.

41.    In addition to the problems associated with the DRE system in general, and the added vulnerabilities created by Georgia's antiquated software and single point of entry, Georgia's Voting System has long been at further risk because of Defendant King's gross mismanagement.

**B.    The Exposure and Breaches of Georgia's Electronic Voting System Have Been Undeniably Established**

42.    In August of 2016, a professional cybersecurity expert residing in Georgia, Logan Lamb ("Lamb"), who was interested in the state's election system, accessed CES's public website.  Shockingly, Lamb was able to access key components of Georgia's electronic election infrastructure, without so much as entering a password.  It should be noted that these actions were in accordance with both the law and the general standards followed by most professionals in the cybersecurity industry.

43.    In accessing these election system files, Lamb found a startling amount of private information, including: driver license numbers, birthdates, and the last four digits of social security numbers for over six-and-a-half million Georgia voters; the passwords given to polling place supervisors on election day to

18

control the opening and closing of the DREs and to make administrative corrections in the event a DRE encountered a problem; and executable programs that could be used to implant malware and vote stealing programs in the system.

44.     This publicly available information easily found by Lamb provided everything a bad actor would need to interfere with an election and to manipulate its outcome – while likely avoiding detection.

## C.     The Defendants' Unwillingness to Recognize and Respond to the Problems

45.     Lamb immediately alerted Defendant King, the Georgia official responsible for overseeing, managing, and securing Georgia's electronic election infrastructure, to the serious security vulnerabilities he had discovered.  In response, Lamb was cautioned by Defendant King that if he talked about it, he would be "crushed by the politicians downtown."

46.     Upon information and belief, not only did Georgia fail to take remedial action when alerted to the problem Lamb raised, it failed to act even in the face of the detailed information on the cybersecurity threats facing the nation's election systems, and the recommended specific steps to reduce the risk, which were disseminated by the FBI, the DHS and the EAC.  The press reported that Georgia was the only state to refuse all federal assistance to help ensure the security of its election infrastructure.  Neither did the state officials respond to a letter that had been drafted by a group of over twenty voting system and

cybersecurity experts expressing their heightened concerns about Georgia's Voting System.

**D.     The Consequences of Georgia's Failure to Act**

47.     In February 2017, a cybersecurity colleague of Lamb's, Chris Grayson ("Grayson"), was able to repeat what Lamb had done seven months earlier.  Around that same time, Lamb also found that, not only could he still easily access and download the same information as he had previously done, he discovered additional and updated information, including more recent database files and passwords.

48.     Upon information and belief, Grayson notified a colleague and a faculty member at KSU of his findings. This colleague then notified KSU's University Information Technology Services ("UITS") Information Security Office, which in turn notified Defendant King.  The day after Grayson's notification, the KSU UITS Information Security Office seized CES's server.  Two days after Grayson's notification, the FBI had been alerted and took possession of the server.

49.     On at least two occasions prior to the seizure by the FBI, Defendant King and Defendant CES were made aware of this data breach.  KSU issued a press release as to this data breach on March 1, 2017, and press accounts report that Defendant Kemp was aware of this breach by March 3, 2017.

20

50.     In a separate incident, on April 15, 2017, four electronic pollbooks and memory cards containing the PII of voters in Cobb County were stolen.  Press accounts have quoted Cobb County election officials as stating that these pollbooks contained state-wide voter information.

51.     On information and belief, Defendants Kemp, King, and KSU failed to notify the consumer reporting agencies and the 6.5 million Georgia voters whose personal identifying information had been compromised by the CES system, as required by O.C.G.A §10-1-912.  Their failure to do so exposed those voters to substantially greater risk of their personal data being misused in ways that would harm them. And even after the occurrence of an actual security breach in April 2017 - the theft of electronic pollbooks containing statewide voter registration database and software to program voter access cards – no action was taken to properly report either security breach of voter data.

52.     The DRE system did not, and cannot ever, meet Georgia's constitutional statutory requirements, and caused each of the Relevant Previous Elections to generate indeterminable results, abridging numerous state and federal rights of the Plaintiffs and all other Georgia voters.

**E.     Discrepancies in the Election Returns and the Denial of a Right to Recanvass**

21

53.     Georgia voters were also denied their right to recanvas, and therefore, the ability to investigate whether these security breaches and irregularities resulted in a detectable manipulation of the Relevant Previous Election processes.

54.     In June 2017, certain Electors who are Members of Plaintiff CGG petitioned the DeKalb Board and the Cobb Board to recanvass certain precincts in both counties following the Runoff.  The precincts in which recanvassing was sought were selected based on anomalous-appearing results, such as extreme swings between purported absentee results and purported results.

55.     Certain Electors who are Members of Plaintiff CGG questioned whether Georgia's DRE System caused substantial discrepancies or errors in returns.  Given the fundamental insecurity and lack of auditability of the DRE System, these anomalous results may not be apparent on the face of the returns. Members therefore sought a recanvass.

56.     Upon information and belief, Defendants Daniels, Members of the DeKalb Board, the DeKalb Board, Eveler, Members of the Cobb Board, and the Cobb Board, despite being presented with a recanvass request which explicitly informed them of their obligation to recanvass the requested precincts, refused to recanvass these precincts.

57.     Upon information and belief, Secretary Kemp was informed of these proper requests for recanvassing and the denials of the requests, did not act to

permit such recanvassing, and certified the election result, despite his knowledge

that voters had concerns about anomalies in identified precincts and voters' rights

to recanvass prior to certification had been violated.

### III.  CLAIMS

**COUNT I:  VIOLATION OF FUNDAMENTAL RIGHT
TO VOTE UNDER THE DUE PROCESS CLAUSE
OF THE 14TH AMENDMENT AND OF 42 U.S.C. § 1983**

**(All Plaintiffs against All Defendants in their Official and Individual
Capacities, except State Board, Fulton Board, DeKalb Board, and Cobb
Board)**

58.     Plaintiffs incorporate the allegations of paragraphs 1 through 57 above

as if expressly realleged herein.

59.     The right to vote is a fundamental right protected by the Due Process

Clause of the Fourteenth Amendment of the U.S. Constitution.

60.     The fundamental right to vote encompasses the right to have that vote

counted accurately, and it is protected by the Due Process Clause of the Fourteenth

Amendment of the U.S. Constitution.

61.     Defendants violated Plaintiffs' fundamental right to vote by deploying

a DRE voting equipment system that by its design and management by

Defendants:

(a)     Failed to provide reasonable and adequate protection against the

real and substantial threat of electronic and other intrusion and

23

manipulation by individuals and entities without authorization to do so;

(b)     Failed to include the minimal and legally required steps to ensure that such equipment could not be operated without authorization; to provide the minimal and legally required protection for such equipment to secure against unauthorized tampering; to test, inspect, and seal, as required by law, the equipment to ensure that each DRE unit would count all votes cast and that no votes that were not properly cast  would not be counted; and to ensure that all such equipment, firmware, and software is reliable, accurate, and capable of secure operation as required by law;

(c)     Failed to provide a reasonable and adequate method for voting by which Georgia electors' votes would be accurately counted; and

(d)     Failed to provide reasonable, adequate and legally mandated methods and steps to ensure that the votes of Georgia electors were accurately counted, including, but not limited to, by failing to allow for mandatory vote recanvassing in DeKalb and Fulton Counties in the Runoff, and required pre-Runoff re-examination of the DRE voting system by Defendant Kemp as formally and timely requested by certain Plaintiffs.

62.    By choosing to move forward in using the non-compliant system, Defendants willfully and negligently abrogated their statutory duties and abused their discretion, subjecting voters to cast votes on an illegal and unreliable system—a system that must be presumed to be compromised and incapable of producing verifiable results.

63.    On information and belief, despite their knowledge that the DRE System do not comply and cannot be made to comply with the Election Code, these Defendants willfully and knowingly plan to continue to use the non-compliant DRE System in the Relevant Pending Elections.

64.    On information and belief, Plaintiffs received no notice that their votes under the DRE system could not be counted accurately due to Defendant's material non-compliance with the Election Code.

65.    Defendants' violation of the Due Process Clause is patently and fundamentally unfair and therefore relief under 42 U.S.C. § 1983 is warranted. Accordingly, Plaintiffs ask this Court to (a) declare that these Defendants violated the Due Process Clause of the Fourteenth Amendment; (b) enjoin Defendants' use of Georgia's DRE System for future elections; (c) award nominal compensatory relief in the amount of $1, in recognition of these Defendants' violation of applicable federal and state laws and, as subsequent causation, the rights of Plaintiffs; and (d) award attorneys' fees and costs for Defendants' causation of

concrete injury to Plaintiffs, whose fundamental right to have their vote counted as cast was thwarted.

## COUNT II:  VIOLATION OF FUNDAMENTAL RIGHT TO VOTE UNDER THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT AND OF 42 U.S.C. § 1983

### (Denial of Equal Protection to DRE Voters)

### (All Plaintiffs against All Defendants in their Official and Individual Capacities, except State Board, Fulton Board, DeKalb Board, and Cobb Board)

66.     Plaintiffs incorporate the allegations of paragraphs 1 through 65 above as if expressly realleged herein.

67.     The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

68.     The Equal Protection Clause protects the manner of the exercise of the right to vote, and a state may not value one person's vote over that of another. U.S. Const. amend. XIV § 1.

69.     On information and belief, the Secretary of State and County Boards allowed electors to vote in the Relevant Previous Elections using two different methods: (a) voting using the DRE System and (b) voting using paper ballots (available to provisional and absentee voters).

70.     On information and belief, absentee paper ballots are verifiable, recountable ballots, which can be counted, reviewed, and discrepancies corrected under the supervision of a court.

71.     DRE ballots are counted electronically and cannot reliably prevent or detect errors or reliably determine the election results.  The DRE System:

a.      Produces only an electronic representation of a vote, with no independent reference document, and cannot therefore provide for a means by which the accuracy of the recording of DRE ballots can be tested or verified;

b.      Does not provide reasonable and adequate protection, as required by the Georgia Election Code, against the real and substantial threat of electronic and other intrusion and manipulation by individuals and entities without authorization to do so; or

c.      Provide a reasonable and adequate method for voting by which Georgia electors' votes would be accurately counted.

72.     The injuries suffered by Georgia electors were compounded dramatically by Defendants' failure to include the minimal and legally required steps to ensure that such equipment could not be  manipulated or operated without authorization; to provide the minimal and legally required protection for such equipment to secure against unauthorized tampering; to test, inspect, and seal as

required by law the equipment to ensure that each DRE unit would count all votes cast and that no votes that were not properly cast for that election would be counted; and to ensure that all such equipment, firmware, and software is reliable, accurate, and capable of secure operation as required by law, and properly certified to comply with Georgia Election Code and Election Rules.

73.     On information and belief, these Defendants failed to take such steps to attempt to mitigate the security failures, and conduct an election on a system that could comply with the Georgia Election Code the DRE Voting System knowing that these voting systems had been unsecured, breached, and compromised, could not be presumed to be safe, and were materially non-compliant with applicable Election Code statutes and governing regulations.

74.     By choosing to move forward in using the non-compliant system, Defendants willfully and negligently abrogated their statutory duties and abused their discretion, subjecting voters to cast votes on an illegal and unreliable system—a system that must be presumed to be compromised and incapable of producing verifiable results.

75.     The voters of the respective ballots have not been treated equally in that the votes of those who voted by DRE cannot be meaningfully recounted, reviewed against an independent record to verify, or have discrepancies detected and corrected.  DRE votes are unequally weighted, with greater weight given to

those who vote by absentee paper ballot, whose votes can be verified as to voter intent, can be accurately recounted, and can have processing errors identified and corrected, while votes cast by DRE, whose votes do not share those essential advantages.

76.    Additionally, DRE voters' ballots are cast in a system that permits records to be kept to connect the voter with his or her, violating the DRE voter's rights to a secret ballot, while paper ballots are not marked with unique, potentially traceable identifiers, and cannot be connected to the voter.

77.    The rights of Georgia electors using DRE voting equipment to cast their ballots in the Relevant Previous Elections were also not treated equally by virtue of the egregious security failures in the CES election management server. Although the CES security failures put all voting system components at risk, the majority of the security failures could be mitigated for paper ballot votes, but not for DRE votes.  In an election contest, the paper ballots could be counted manually and voter intent and accurate tabulation determined, regardless of security failures that may impact DRE system tabulations.  DRE system failures cannot be so mitigated nor the impact determined, creating unequal weighting between the two types of ballots cast.

78.    The Plaintiffs who voted in Relevant Previous Elections using the DRE System are all similarly situated to other registered electors in the same

29

elections who voted using the DRE System.  All Plaintiffs are eligible to vote in Future Pending Elections which may employ the improper DRE System.

79.    Defendant's conduct described herein violated the Fourteenth Amendment right of these Plaintiffs to enjoy equal protection of the law.

80.    Accordingly, Plaintiffs ask this Court to (a) declare that these Defendants violated the Equal Protection Clause of the Fourteenth Amendment; (b) enjoin Defendants' use of Georgia's DRE System for future elections; (c) award nominal compensatory relief in the amount of $1, in recognition of these Defendants' violation of federal laws and, as subsequent causation, the rights of Plaintiffs; and (d) award attorneys' fees and costs for Defendants' causation of concrete injury to Plaintiffs, whose fundamental right to have their vote counted as cast was unequally burdened.

### COUNT III:  DENIAL OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND INFRINGEMENT OF THE FUNDAMENTAL RIGHT TO VOTE; 42 U.S.C. § 1983

**(All Plaintiffs against All Defendants in their Official and Individual Capacities, except State Board, Fulton Board, DeKalb Board, and Cobb Board)**

81.    Plaintiffs incorporate the allegations of paragraphs 1 through 80 above as if expressly realleged herein.

82.     The Due Process Clause of the Fourteenth Amendment declares that "no State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

83.     The right to vote is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

84.     The fundamental right to vote encompasses the right to have that vote counted accurately, and it is protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

85.     The systems, practices, policies, and procedures adopted and implemented by Defendants substantially and unduly burdens, chills, and infringes upon the fundamental right to vote using a secret ballot, in violation of the substantive protections of the Due Process Clause of the Fourteenth Amendment without due process of law by:

    a.     Failing to provide reasonable and adequate protection of the voting system against the real and substantial threat of electronic and other intrusion and manipulation by individuals and entities without authorization to do so;

    b.     Failing to include the minimal and legally required to steps to ensure that such equipment could not be operated without authorization; to provide the minimal and legally required protection for such equipment to

31

secure against unauthorized tampering; to test, inspect and seal as required by law the equipment to ensure that each DRE unit would count all votes cast and that no votes that were not properly cast for that election would be counted; and to ensure that all such equipment, firmware and software is reliable, accurate, and capable of secure operation as required by law;

  c. Failing to provide a reasonable and adequate method for voting by which Georgia electors' votes would be accurately counted; and

  d. Failing to provide reasonable, adequate and legally mandated methods and steps to ensure that the votes of Georgia electors were accurately counted, including, but not limited to, by failing to allow for mandatory vote recanvassing in DeKalb and Fulton Counties in the Runoff, and required pre-Runoff re-examination of the DRE voting system by Defendant Kemp as formally and timely requested by certain Plaintiffs.

86. These burdens and infringements are neither justified by, nor necessary to promote, a substantial and compelling state interest that cannot be accomplished by other, less restrictive means.

87. As a direct and proximate result of the continuing implementation of the DRE Voting System by Defendants that deprives Georgia electors of their rights to have their counts accurately recorded and counted, to vote in elections in which election results can be accurately and confidently reported and legally

certified, and in which they can have confidence that the candidates who won the most votes are seated, Plaintiffs and others similarly situated have suffered and will suffer deprivation of and irreparable harm to their fundamental constitutional right to vote, and will a suffer a chilling effect on their decisions to vote in Relevant Pending Elections.  Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from continue to deploy systems and mechanisms for voting, including, but not limited to, the DRE system, that deprive Georgia electors of their electoral rights, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

88.     The foregoing deprivations of federal constitutional rights have been and will be effected by Defendants acting under color of state law.

## COUNT IV:  DENIAL OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND INFRINGEMENT OF THE FUNDAMENTAL RIGHT TO VOTE; 42 U.S.C. § 1983

**(All Plaintiffs against All Defendants in their Official and Individual Capacities, except State Board, Fulton Board, DeKalb Board, and Cobb Board)**

89.     Plaintiffs incorporate the allegations of paragraphs 1 through 88 above as if expressly realleged herein.

90.     The Due Process Clause of the Fourteenth Amendment declares that "no State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

91.     The systems, practices, policies, and procedures adopted and implemented by Defendants substantially and unduly burdens, chills, and infringes upon the fundamental right to vote using a secret ballot in violation of the substantive protections of the Due Process Clause of the Fourteenth Amendment.

92.     These burdens and infringements are neither justified by, nor necessary to promote, a substantial and compelling state interest that cannot be accomplished by other, less restrictive means.

93.     As a direct and proximate result of the continuing implementation of the DRE machines by Defendants, which makes ballots cast by some voters individually identifiable, Plaintiffs and others similarly situated have suffered and will suffer deprivation of and irreparable harm to their fundamental constitutional right to vote using a secret ballot. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from implementing the DRE machines, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

94.     The foregoing deprivations of federal constitutional rights have been and will be effected by Defendants acting under color of state law.

34

## COUNT V: DENIAL OF EQUAL PROTECTION OF THE FOURTEENTH AMENDMENT AND THE INFRINGEMENT OF THE RIGHT TO VOTE; 42 U.S.C. § 1983

### (All Plaintiffs against All Defendants in their Official and Individual Capacities, except State Board, Fulton Board, DeKalb Board, and Cobb Board)

95.    Plaintiffs incorporate the allegations of paragraphs 1 through 94 above as if expressly realleged herein.

96.    The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

97.    Plaintiffs who voted using DRE machines are, in all material respects, similarly situated to each other and to other persons who have voted and will vote in elections conducted by the Secretary by using optical scan systems or paper ballots.

98.    The systems, practices, policies, and procedures adopted and implemented by Defendants treat Plaintiffs who use DRE machines differently than persons who vote by paper ballots by creating a disparate likelihood of their ballots being made identifiable, because DRE electronic ballots are permanently marked with a serial number that denotes the chronological order of voting on the DRE. When individual ballots are recorded chronologically, records can be maintained to connect the ballot with the voter.  This is not true for absentee paper

ballots which are anonymous and contain no unique marks and are not maintained in a fashion that can be connected with the voter.

99.    The systems, practices, policies, and procedures adopted and implemented by Defendants have deprived and will deprive Plaintiffs of their right to equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment.

100.   The burdens and infringements imposed on these fundamental rights are differentially imposed upon Plaintiffs and other voters without justification by any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

101.   Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from applying and approving systems, practices, policies and procedures that deprive Plaintiffs of equal protection of the laws, Plaintiffs will continue to suffer great and irreparable harm.

102.   The foregoing deprivations of federal constitutional rights have been and will be effected by Defendants acting under color of state law.

**COUNT VI:  VIOLATION OF STATE BALLOT SECRECY LAWS –
Ga. Const. Art. II § 1 Par. 1, O.C.G.A. § 21-2-379.1(6)**

**(All Plaintiffs against All Defendants in their Individual Capacities, except
State Board, Fulton Board, DeKalb Board, and Cobb Board)**

103.   Plaintiffs incorporate the allegations of paragraphs 1 through 102 above as if expressly realleged herein.

104.   The Georgia Constitution expressly guarantees to Georgia electors the right to vote by "secret ballot."  Ga. Const. Art. II, §1, ¶1.

105.   Georgia's election law codifies and builds upon this constitutional mandate by expressly providing that no voting machine can be used in George unless it "permit[s] and require[s] voting in absolute secrecy and shall be so constructed that no person can see or know for whom any other elector has voted or is voting." Ga. Code Ann. § 21-2-379.1(6).

106.   The Secretary of State has violated this statutory obligation and deprived Georgia electors of their right to vote by absolutely secret ballot by deploying DRE system throughout Georgia that does not provide for "absolute secrecy."  To the contrary, the DRE's used throughout the state would enable those who wish to determine how particular electors voted to do exactly that.  This is a design flaw, violating federal voting system standards, that is inherent to the particular Diebold DRE system used through Georgia that is well-recognized by leading computer scientists and voting systems experts, and would be therefore known to Defendant King.

107.   In particular, Georgia's Diebold DRE system records votes in the order in which they were cast in a numerical sequence, permanently marking the

electronic ballot with a unique serial number that can always be used to determine where it fell in the chronology of votes cast on the machine.  Georgia's DRE units do not reorder or randomize the order of the ballots in any way to protect ballot secrecy, although federal voting system standards require such protection. Collecting votes in random order so that they cannot be traced to electors has been a fundamentally important function in election administration since the late 1800's when states began adopting the right to absolute secrecy in voting, which now all 50 states recognize.

108.   But the DRE system used in Georgia does not provide even this most basic, obvious, and critical feature to protect the secrecy of the ballot.  By recording votes in the sequence in which they were cast, the DRE allows votes to become traceable to anyone who knows the order of the voters.  As such, votes can be matched to pollworker or pollwatcher records, polling place security video, or ExpressPoll book timestamps to determine how voters voted.

109.   For example, it is possible for election workers who have access to the electronic ballot records and who have observed the order in which individuals have cast their ballots to discover how those individuals voted.

110.   A voter's identity could therefore be easily linked to their ballot by observation of the order in which they voted.  Plaintiffs who voted in the Relevant

Previous Elections were among those using the DRE machines, and  thus their ballots were subject to being traced.

111.   Even if this vulnerability is not exploited, knowledge that a voter's electronic ballot may be connected back to the voter creates a chilling effect on voting one's conscience, or voting at all.  This knowledge creates harm to the Plaintiffs and other voters at the time that they make their decision on whether to vote and how  to vote, which may vary by election and their personal fear of reprisal.

112.   The Secretary and Defendant King, by deploying throughout the State a DRE Voting System with this known design flaw that prevents Georgia electors from voting e in "absolute secrecy," violated Ga. Const. Art. II § 1 Par. 1, and Ga. Code Ann. § 21-2-379.1(6), and will continue to do so unless enjoined.

## COUNT VII:  VIOLATION OF STATE ELECTRONIC VOTING SYSTEM LAW

**(All Plaintiffs against All Defendants in their Individual Capacities, except State Board, Fulton Board, DeKalb Board, and Cobb Board)**

113.   Plaintiffs incorporate the allegations of paragraphs 1 through 112 above as if expressly realleged herein.

114.   The Georgia Constitution requires that elections be conducted in accordance with the laws and procedures of the State of Georgia.  Ga. Const. Art. II, § 1, ¶ 1.

115.   Georgia's election law requires that DRE Systems "shall, when properly operated, record correctly and accurately every vote cast." O.C.G.A. § 21-2-379.1(8)

116.   In addition, Georgia's election law requires that prior to using each DRE System for voting, the superintendent of each county or municipality take certain steps to examine and then secure each DRE System so it cannot be operated without authorization.  O.C.G.A. § 21-2-379.6(a).

117.   Georgia's election law also requires that within days prior to an election, the superintendent take certain steps to test the DRE Systems to ascertain that each will correctly count the votes cast and to take additional testing measures in runoff elections that include the testing of all memory cards. O.C.G.A. § 21-2-379(6)(c).

118.   Georgia's election law also requires the superintendent to take certain steps to have each DRE System tested, inspected, and sealed prior to delivery to the polling place and, prior to opening the polls each day on which the units will be used, requires the poll manager to break the seal on each unit, turn on each unit, certify that each unit is operating properly, and take and keep records that each unit is set to zero. O.C.G.A. § 21-2-379.7(b).

119.   Furthermore, Georgia's election law requires the superintendent and poll managers to protect against molestation of and injury to the DRE Systems at

polling places and to call upon law enforcement officers for assistance when necessary. O.C.G.A. § 21-2-379.7(c).

120.   Also, Georgia's election law requires that, on the day of any election, the superintendent ensure that each DRE System's tabulating mechanism is secure throughout the day during the primary or election.  O.C.G.A. § 21-2-379.7(d)(3).

121.   Georgia's election law also requires that the superintendent store the DRE Systems under his or her supervision or designate another party to provide secure storage of the DRE Systems when not in use at an election. O.C.G.A. § 21-2-379.9(b)

122.   Furthermore, Georgia's voting systems must be certified, to "assure that hardware, firmware, and software have been shown to be reliable, accurate, and capable of secure operation before they are used in elections in the State." Ga. Comp. R. & Regs. 590-8-1-.01(a)(3).

123.   On information and belief, these Defendants violated Georgia election law and knew that these voting systems had been unsecured, breached, and compromised; could not be presumed to be safe; and were materially non-compliant with applicable Election Code statutes and governing regulations. These Defendants were aware of numerous expert opinions advising against the use of these systems in the Relevant Previous Elections because they were neither safe nor accurate and should have been presumed to be compromised.

124.   By choosing to move forward in using the non-compliant system, Defendants willfully and negligently abrogated their statutory duties and abused their discretion, subjecting voters to cast votes on an illegal and unreliable system—a system that must be presumed to be compromised and incapable of producing verifiable results.  The DRE Voting System did not and cannot meet Georgia's statutory and regulatory requirements for safety, security, and accuracy of the equipment.

125.   On information and belief, despite their knowledge that the DRE Voting System does not comply with the Election Code, these Defendants willfully and knowingly plan to continue to use the non-compliant DRE System in Relevant Pending Elections.  This Court should enjoin these Defendants' illegal use in future elections of Georgia's DRE System.

## COUNT VIII: WRIT OF MANDAMUS

**O.C.G.A. § 9-6-20 Requiring Exercise of the Public Duty to Reexamine Georgia's DRE System Established by O.C.G.A. § 21-2-379.2(b) and to Use Optical Scan System or Paper Ballots in Lieu of DRE Machines to Comply with Requirements for Voting Machines**

### (All Plaintiffs against Defendant Secretary Kemp)

126.   Plaintiffs incorporate the allegations of paragraphs 1 through 125 above as if expressly realleged herein.

127.   Under O.C.G.A. § 21-2-379.2(a), the Secretary of State may, at any time, in his or her discretion or upon request of electors, reexamine any DRE System.

128.   The purpose of the Secretary of State's power to reexamine any DRE system at his discretion is to ensure that the DRE System can be "safely and accurately used by electors at primaries and elections." O.C.G.A. § 21-2-379.2(b).

129.   Under O.C.G.A. § 21-2-379.2(c), a voting system that can no longer be safely or accurately used by electors because of any problem concerning its ability to accurately record or tabulate votes cannot be used.

130.   O.C.G.A. § 21-2-334 states that when the use of voting machines is not possible or practicable, voting may be conducted by paper ballots.

131.   Secretary Kemp was aware of numerous security breaches and statutory non-compliance of the DRE System, but acted in an arbitrary and capricious manner by ignoring security threats and grossly abused his discretion by failing to reexamine Georgia's DRE System before the Runoff after receiving the formal request for re-examination from citizens provided for in O.C.G.A. § 21-2-379.2(a).

132.   On information and belief, Secretary Kemp plans to maintain approval of the systems for use again in Relevant Pending Elections and beyond – despite being fully aware of the burden the systems impose on Georgia electors' right to

vote and of the fact that the systems do not, and cannot, comply with numerous provisions of the Election Code.

133.   In failing to carry out this duty, Secretary Kemp deprived Plaintiffs of rights secured by the Constitution and the laws of the United States as well as the Constitution and the laws of the State of Georgia.

134.   Apart from this Court's issuance of the writ of mandamus, Plaintiffs have no other legal remedy to compel enforcement of Secretary Kemp's official, public duty to conduct the reexamination required by Georgia Code Sections 21-2-379.2(b), nor do they have any other remedy to compel enforcement of Secretary Kemp's duties to remove from commission voting machines that are non-compliant, and replace them with a safe, accurate, and legally compliant system.

135.   For the reasons provided, Plaintiffs respectfully ask this Court to issue a writ of mandamus for Secretary Kemp to fulfill his public duty to timely reexamine the DRE System, to discontinue the use of the DRE System, and to utilize either a fully compliant and certified optical scanning voting system, pursuant to Georgia Code Section 21-2-366, or, pursuant to §§ 21-2-281 and 21-2-334, use hand-counted paper ballots in the conduct of Relevant Pending Elections.

136.   Apart from this Court's issuance of the writ of mandamus, Plaintiffs have no other legal remedy to compel enforcement of Defendants Kemp, King,

CES and Eveler's official, public duty to issue the notice required under Georgia law after a disclosure of PII.

137.   For these reasons, Plaintiffs respectfully ask this Court to issue a Writ of Mandamus ordering  Defendants Kemp, King, CES and

## COUNT IX:  WRIT OF MANDAMUS

### Requiring Exercise of the Public Duty to Use Optical Scan System or Paper Ballots in Lieu of DRE Machines to Comply with "Practicable" Requirements of O.C.G.A. § 9-6-20

### (All Plaintiffs against Defendants Members of State Board, State Board, Daniels, Members of the DeKalb Board, DeKalb Board, Eveler, Members of the Cobb Board, Cobb Board, Barron, Members of the Fulton Board, and Fulton Board, in their Official Capacities)

138.   Plaintiffs incorporate the allegations of paragraphs 1 through 137 above as if expressly realleged herein.

139.   O.C.G.A. § 21-2-334 states that when the use of voting machines is not possible or practicable, voting may be conducted by paper ballots. O.C.G.A. § 21-2-366 states that authority may be given by any county or municipality to authorize by majority vote to direct the use of optical scanning voting systems.

140.   State Board, County Board, and County Election Officials were aware of numerous security breaches and statutory non-compliance of the DRE System, but acted in an arbitrary and capricious manner by ignoring security threats and

grossly abused their discretion by failing remove from use DRE Systems that are not practicable.

141.   On information and belief, State Board, County Board, and County Election Officials plan to use the systems again in Relevant Pending Elections and beyond – despite being fully aware of the burden the systems impose on Georgia electors' right to vote and of the fact that the systems do not comply with numerous provisions of the Election Code.

142.   In failing to carry out this duty, State Board, County Board, and County Election Officials deprived Plaintiffs of rights secured by the Constitution and the laws of the United States as well as the Constitution and the laws of the State of Georgia.

143.   Apart from this Court's issuance of the writ of mandamus, Plaintiffs have no other legal remedy to compel enforcement of State Board, County Board, and County Election Officials' official, public duty to remove from commission voting machines that are not "practicable," and replace them with a safe, accurate, and legally compliant system.

144.   For the reasons provided, Plaintiffs respectfully ask this Court to issue a writ of mandamus ordering State Board, County Board, and County Election Officials to discontinue the use of the DRE System and to utilize either a fully compliant and certified optical scanning voting system, pursuant to Georgia Code

Section 21-2-366, or, pursuant to §§ 21-2-281 and 21-2-334, use hand-counted

paper ballots in the conduct of Relevant Pending Elections.

## COUNT X: VIOLATION OF STATE LAW REQUIRING NOFITICATION OF UNAUTHORIZED DISCLOURE OF PERSONAL IDENTIFYING INFORMATION

### (As to Plaintiffs Curling, Terry, Price, Schoenberg, L. Digges, W. Digges and Davis Against Defendants Kemp, King and Eveler)

145.   Plaintiffs incorporate the allegations of paragraphs 1 through 144

above as if expressly realleged herein.

146.   Georgia law requires that "Any information broker or data collector

that maintains computerized data that includes personal information of individuals

shall give notice of any breach of the security of the system following discovery or

notification of the breach in the security of the data to any resident of this state

whose unencrypted personal information was, or is reasonably believed to have

been, acquired by an unauthorized person. The notice shall be made in the most

expedient time possible and without unreasonable delay, consistent with the

legitimate needs of law enforcement, as provided in subsection (c) of this Code

section, or with any measures necessary to determine the scope of the breach and

restore the reasonable integrity, security, and confidentiality of the data system."

O.C.G.A. § 10-1-912.

147.   During the period in question, the Secretary of State and KSU were

"data collectors" as defined in O.G.A.C. §10-1-911(2), and collected or maintained

personal information of individuals ("PII"), including their names, birthdates, driver's license numbers and the last four digits of their SSNs.  This information was collected for purposes of maintaining voter registration rolls and not for purposes of traffic safety, law enforcement, or licensing purposes or for purposes of providing public access to court records or to real or personal property information.

148.   From at least August 2016 to March 2017, PII resident on a server maintained by CES could be accessed by the public without the use of a password or other authentication through the *elections.kennesaw.edu* website. From August 2016 to March 2017, this PII was known to be accessed at least five times by unauthorized individuals.  And in each case, the unencrypted voter PII was successfully downloaded by the unauthorized individuals.

149.   On at least two occasions during this period, Defendant King was made aware of this data breach.  KSU issued a press release as to this data breach on March 1, 2017, and press accounts report that Defendant Kemp was aware of this breach by March 3, 2017.

150.   From August 2016 until the filing of this Second Amended Complaint, Plaintiffs Curling, Terry, Price, Schoenberg, L. Digges, W. Digges and Davis have received no notice of this data breach from the Secretary of State in any form permitted by O.G.A.C. §10-1-911(4).

151.   In a separate incident, on April 15, 2017, four electronic pollbooks and memory cards containing the PII of voters in Cobb County were stolen.   Press accounts have quoted Cobb County election officials as stating that these pollbooks contained state-wide voter information.

152.   The Cobb County Board of Elections and Registration is a "data collector" as defined in O.G.A.C. §10-1-911(2), and collected or maintained personal information of individuals ("PII"), including their names, birthdates, driver's license numbers and the last four digits of their SSNs.  This information was collected for purposes of maintaining voter registration rolls and not for purposes of traffic safety, law enforcement, or licensing purposes or for purposes of providing public access to court records or to real or personal property information.

153.   From April 2017 until the filing of this Second Amended Complaint, Plaintiffs Curling, Terry, Price, Schoenberg, L. Digges, W. Digges and Davis have received no notice of this data breach from the Defendant Eveler in any form permitted by O.G.A.C. §10-1-911(4).

154.   This Court should direct Defendants to issue the notice required under Georgia law to Plaintiffs whose PII was disclosed as a result of the two aforementioned breaches, and any other relief that this Court deems proper.

## COUNT XI:  WRIT OF MANDAMUS - O.C.G.A. § 9-6-20

### Requiring Exercise of the Public Duty to Recanvass by Defendants DeKalb Board, Cobb Board, Eveler, Daniels, and Kemp

155.   Plaintiffs incorporate the allegations of paragraphs 1 through 154 above as if expressly realleged herein.

156.   Georgia election rules dictate that the "election superintendent shall, either of his or her own motion, or upon petition of any candidate or political party or three electors of the county or municipality, as may be the case, order a recanvass of all the memory cards (PCMCIA cards) for a particular precinct or precincts for one or more offices in which it shall appear that a discrepancy or error, although not apparent on the face of the returns, has been made." Ga. Comp. R. & Regs. 183-1-12-.02(7)(a).

157.   Georgia's DRE System must be presumed to have caused substantial discrepancies or errors in returns, even if not apparent on the face of the returns. Given the fundamental insecurity and lack of auditability of the DRE System, direct evidence of manipulation is not required to establish the substantial likelihood that discrepancies or errors did, in fact, occur in these particular returns.

158.   On information and belief, at least three electors who are members of Plaintiff CGG petitioned the DeKalb Board and the Cobb Board to recanvass certain precincts in both counties.

50

159.   Defendants Daniels, Members of the DeKalb Board, the DeKalb Board, Eveler, Members of the Cobb Board, and the Cobb Board, despite being presented with a recanvass request which explicitly informed them of their obligation to recanvass the requested precincts, refused to recanvass these precincts. The electors have a clear legal right to have the recanvass performed. Defendants' knowing refusal to recanvass is a violation of their duty and amounts to willful misconduct.

160.   On information and belief, Secretary Kemp was informed of these proper requests for recanvassing and the denials of the requests, did not act to permit such recanvassing, and certified the election result, despite his knowledge that voters had concerns about anomalies in identified precincts and voters' clear legal rights to recanvass prior to certification had been violated.  His knowing refusal to recanvass is a violation of his duty and amounts to willful misconduct.

161.   Apart from this Court's issuance of the writ of mandamus, Plaintiffs have no other legal remedy to compel enforcement of Defendants' official, public duty to order a recanvass as requested and as required under Georgia law.

162.   For these reasons, Plaintiffs respectfully ask this Court to issue a writ of mandamus ordering Defendants Daniels, Members of the DeKalb Board, the DeKalb Board, Eveler, Members of the Cobb Board, the Cobb Board, and Kemp to

recanvass these precincts permitting electors to explore presumed discrepancies, and any other relief that this Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this court:

163. To grant declaratory relief deeming that Defendants have violated the Georgia Constitution, the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, Georgia election law, including Georgia's system certification regulations and safety and security provisions;

164. To grant declaratory relief deeming that Defendants Daniels, Members of the DeKalb Board, the DeKalb Board, Eveler, Members of the Cobb Board, and the Cobb Board are in violation of their duty to re-canvass these precincts permitting electors to explore presumed discrepancies and propose their correction prior to election certification;

165. To grant injunctive relief prohibiting Defendants from using any system or devices for voting, including, but not limited to, Direct-Recording Electronic ("DRE") voting equipment, that does not fully satisfy the obligations of the Defendants under Georgia Code Sections 21-2-322, 21-2-379.1(8), 21-2-379.2 (a), 21-2-379.2 (b), 21-2-379.2 (c), 21-2-379.6 (a), 21-2-379.6 (c), 21-2-379.7 (b), 21-2-379.7 (c), 21-2-379.7 (d)(3), and 21-2-379.9 (b); Georgia Rule and Regulation Section 590-8-1-.01(a)(3); and Georgia Constitution Article II, Section

1, Paragraph 1 that protect the rights of Georgia electors under Georgia law and under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

166.   To grant an Order directing Defendants to submit to the Court within thirty days of entry of the Court's Order a plan providing in sufficient detail for the Court to evaluate the specific steps they intend to take to comply with the terms of the Court's Order.

167.   To issue a writ of mandamus ordering Secretary Kemp to fulfill his public duty to timely reexamine the DRE System, to discontinue the use of the DRE System, and to utilize either a fully compliant and certified optical scanning voting system, pursuant to Georgia Code Section 21-2-366, or, pursuant to §§ 21-2-281 and 21-2-334, use hand-counted paper ballots in the conduct of Relevant Pending Elections.

168.   To issue a writ of mandamus ordering State Board, County Board, and County Election Officials to discontinue the use of the DRE System and to utilize either a fully compliant and certified optical scanning voting system, pursuant to Georgia Code Section 21-2-366, or, pursuant to §§ 21-2-281 and 21-2-334, use hand-counted paper ballots in the conduct of Relevant Pending Elections.

169.   To issue a writ of mandamus ordering Defendants Kemp, King, CES, and Eveler to issue the notice required under O.C.G.A. § 10-1-912 to Plaintiffs

whose Personal Identifying Information (PII) was disclosed as a result of security breaches, and any other relief that this Court deems proper.

170.   To issue a writ of mandamus ordering Defendants Daniels, Members of the DeKalb Board, the DeKalb Board, Eveler, Members of the Cobb Board, the Cobb Board, and Kemp to recanvass these precincts permitting electors to explore presumed discrepancies.

171.   To grant nominal compensatory damages in the amount of $1, in recognition of Defendants' violation of applicable federal and state laws, which have caused harm to Plaintiffs;

172.   To award attorneys' fees and costs for the deprivation of civil rights arising from alleged Defendants' patent and fundamental unfairness in conducting elections on Georgia's Voting System, causing 42 U.S.C. § 1983 violations; and

173.   To grant all other relief this Court deems proper.

Dated: September 15, 2017                    Respectfully submitted,

/s/Bryan M. Ward
BRYAN M. WARD
Georgia Bar No. 736656
MARVIN LIM
Georgia Bar No. 147236
HOLCOMB AND WARD, LLP
Suite 400
3399 Peachtree Road, NE
Atlanta, GA 30326
Telephone:  (404) 601-2803
Facsimile:  (404) 393-1554

**PROOF OF SERVICE**

I hereby certify that a true copy of the above document was served upon the

attorneys of record through the Court's electronic filing service on September 15,

2017.

/s/ *Bryan M. Ward*
Bryan M. Ward