## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING et al.,

   Plaintiffs,

vs.

BRIAN P. KEMP et al.

   Defendants.
_____

CIVIL ACTION FILE NO.
2017-CV-02989-AT

## DEKALB DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT

**DEFENDANTS** Maxine Daniels, Michael Coveny, Anthony Lewis, Leona Perry, Samuel Tillman, and Baoky Vu ("Individual DeKalb Defendants") and Defendant DeKalb County Board of Registrations and Elections ("DeKalb Board") (together "DeKalb Defendants") respectfully move this Court to dismiss **Plaintiffs' Second Amended Complaint** pursuant to Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) and submit this **Motion to Dismiss and Brief in Support**, showing the Court as follows:

## I.    INTRODUCTION AND BACKGROUND

<u>Curling v. Kemp I</u>

On the eve of advance voting in Georgia's sixth congressional district run-off election, Donna Curling and several of the Plaintiffs in the instant case filed a complaint and an emergency motion for temporary restraining order and interlocutory injunction in Fulton County Superior Court. <u>See</u> <u>Curling v. Kemp I</u>, Case. No. 2017CV290630 (Ga. Sup. Ct. May 26, 2017) (Trial Court Pleading). In that complaint, Plaintiffs asserted that the Direct Recording Electronic ("DRE") voting equipment and related voting system "cannot be used safely and accurately."  <u>Id.</u> ¶ 41.

On June 7, 2017, the court held an evidentiary hearing on the emergency motion and heard testimony from several of Plaintiffs' expert witnesses concerning the alleged vulnerability of Georgia's voting system. [Doc. 16]. However, the court dismissed the case because Plaintiffs "failed to demonstrate any concrete harm" such that the court could not "adopt Plaintiffs' conclusion that Georgia's DRE voting equipment and its related voting system are unsafe, inaccurate and impracticable within the meaning of the statute." <u>See</u> <u>Curling v. Kemp I</u>, cite <u>supra</u>, (Trial Court Order).

### Petition to Re-canvass Voter Cards

On June 26, 2017, several purported DeKalb County voters and members of Plaintiff CGG submitted a petition to the DeKalb County Board of Elections and Registration ("Board"), asking the Board to re-canvass voter cards of several precincts. [Doc. 70 ¶ 53-56]. In their petition to re-canvass, the reason they provided for the re-canvass request was that the memory cards "*may* contain errors and discrepancies, which must be examined and corrected." [Doc. 2 p. 234] (emphasis added). The Plaintiffs do not allege that discrepancies or errors appeared, but rather that DRE machines "must be presumed to have caused substantial discrepancies or errors in returns." [Doc. 70 ¶ 157]. The Board denied the request.

### Curling v. Kemp II

On July 3, 2017, Plaintiffs filed the original complaint in Fulton County Superior Court. [Doc. 2]. On August 4, 2017, Plaintiffs filed a motion for leave to file an amended complaint in Fulton County Superior Court. On August 8, 2017, Defendants Kemp, the State Election Board ("SEB"), and the named members of the SEB ("State Defendants") removed the action to this Court. [Doc. 1]. On August 18, 2017, Plaintiffs filed an amended complaint [Doc. 15] and on September 15, 2017, Plaintiffs filed a

second amended complaint ("Complaint" or "Petition") [Doc. 70] which is the subject of this motion.

Like <u>Curling v. Kemp I</u>, the instant case concerns the same DRE voting equipment and the same allegations that the system is insecure. Plaintiff's Complaint asserts eight counts against various defendants alleging violations of the Georgia Constitution, Georgia election code, Georgia election regulations, and claims pursuant to federal statute 42 U.S.C. § 1983. Specifically, Plaintiffs assert the following claims:

- Counts I-V are federal § 1983 claims against the Defendants in their individual and official capacities for alleged violations of the Plaintiffs' right to vote, the right to due process, and the right to equal protection under the 14th Amendment. [Doc. 70 ¶¶ 58-102].

- Count VI – state law claim against the Defendants in their individual capacities for alleged violations of the right to vote by secret ballot under the Georgia Constitution. [<u>Id.</u>  ¶¶ 103-112].

- Count VII – state law claim against the Defendants in their individual capacities for alleged violations of the state electronic voting system under the Georgia Constitution. [<u>Id.</u> ¶¶ 113-125].

- Count VIII – N/A to DeKalb Defendants.

- Count IX – state law writ of mandamus claim against the Defendants in their official capacities seeking to prohibit the use of DRE machines and use hand counted ballots only. [Id. ¶¶ 138-144].

- Count X – N/A to DeKalb Defendants.

- Count XI – state law writ of mandamus claim against Defendants seeking to require Defendants to re-canvass the memory cards used in Georgia's Sixth congressional district special election. [Id. ¶¶ 155-162].

Relevant to the DeKalb Defendants, the Plaintiffs ask the Court to: declare that Defendants have violated the Georgia Constitution, the federal constitution, the Georgia election code, and Georgia election regulations [Id. ¶ 163]; declare that Defendants violated their duty to re-canvass the memory cards used in Georgia's Sixth congressional district special election and order Defendants to re-canvass those cards [Id. ¶¶ 164, 170]; enjoin Defendants from using DRE voting equipment and order them to use optical scanners or hand counted ballots [Id. ¶¶ 165, 168]; and order Defendants to provide a plan to comply with the Court's Order within thirty (30) days [Id. ¶ 166], among other things.

## II.   ARGUMENT AND CITATION TO AUTHORITY

### a. The Court Should Dismiss Plaintiffs' Complaint For Lack of Subject Matter Jurisdiction

When a district court lacks subject matter jurisdiction, the Court should dismiss the complaint under Fed. R. Civ. P. 12(b)(1). Here, sovereign immunity, official immunity, qualified immunity, Eleventh Amendment immunity, statute of limitations, and principles of standing, mootness, res judicata, and collateral estoppel divest this Court of subject matter jurisdiction over the DeKalb Defendants. For the reasons set forth below, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims should be dismissed.

### i.   Eleventh Amendment Immunity Bars All Federal Claims (Counts I-V) as to the DeKalb Defendants in their Official Capacities

The Eleventh Amendment bars claims against a state in federal court, except where the state has consented to be sued. Lassiter v. Alabama A&M University, 3 F.3d 1482, 1485 (11th Cir. 1993). Eleventh Amendment immunity also bar claims against County officials when acting as an "arm of the state." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Because elections are governed entirely by state laws and regulations, the DeKalb

Defendants act as arms of the state when conducting elections. See Casey v. Clayton County, 2007 WL 788943 at *8 (N.D. Ga. Mar. 14, 2007) ("the Board [of elections] acts as an arm of the state for purposes of conducting elections" under the Eleventh Amendment). Therefore, the Defendants in their official capacities are immune from Plaintiffs' § 1983 claims under the Eleventh Amendment.

It is true that in Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002), the U.S. Supreme Court held that a state defendant can waive Eleventh Amendment immunity concerning *state law claims* when it removes a case to federal court. Id. at 624. However, Lapides only applies to waive immunity as to those claims for which the state has already consented to be sued in state court. See Stallworth v. Alabama Department of Mental Health & Mental Retardation, 801 F. Supp. 2d 1231 (M.D. Ala. Aug. 10, 2011) (holding state did not waive Eleventh Amendment immunity in removing action to federal court).  Here, the state has not consented to these actions in state or federal court. For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are barred by the Eleventh Amendment.

### ii. Qualified Immunity Bars Counts I-V as to the DeKalb Defendants in Their Individual Capacities

In Counts I-V, the Plaintiffs allege that the Defendants violated the Plaintiffs' constitutional right to vote, right to due process, and right to equal protection by using allegedly faulty DRE voting machines and by failing to re-canvass votes under Ga. Comp. R. & Regs. 183-1-12.02(7)(a). However, these claims are barred by qualified immunity.

Qualified immunity protects officials from § 1983 claims if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The dispositive issue is "whether it would be clear to a reasonable [state official] that his conduct was unlawful." Leslie v. Hancock County Board of Education, 720 F.3d 1338, 1345 (11th Cir. 2013) (citations omitted). The Plaintiffs must show a U.S. Supreme Court case, a Georgia Supreme Court case, or an Eleventh Circuit case that would put the Defendants on notice that the conduct in question was clearly unlawful. Id.

Plaintiffs can point to no case law that would put Defendants on notice that conducting elections using DRE voting machines was a clear violation of Plaintiffs' right to vote, right to due process, or right to equal protection under the law. In fact, Favorito v. Handel expressly held that use

–8–

of DRE machines *was* consistent with the state and federal constitutions'
right to vote, due process, and equal protection. Furthermore, election
superintendents are required to conduct elections using DRE machines by
state law. <u>See</u> O.C.G.A. § 21-2-300, <u>et</u> <u>seq</u>. Thus, no reasonable election
official would believe that using DRE machines is a clear violation of
Plaintiffs' constitutional rights.

Similarly, Plaintiffs can point to no controlling case law that would
put Defendants on notice that deciding not to re-canvass voter cards was a
clear violation of any of Plaintiffs' constitutional rights. election
superintendents may only re-canvass the voter cards if it appears that a
discrepancy or error has been made. <u>See</u> Ga. Comp. R. & Regs. 183-1-
12.02(7)(a). As no discrepancy or error appeared,[1] the re-canvass was not
authorized under state regulations. Thus, no reasonable election official
would believe that deciding not to re-canvass the voter cards in this election
was a clear violation of Plaintiffs' constitutional rights.

Though not controlling, <u>Johnson v. Randoph County</u>, 301 Ga. App.
265 (2009), is persuasive authority. In <u>Johnson</u>, a board of elections

---

[1] Indeed, the Complaint does not even allege that a discrepancy or error
appeared, but rather presumes that a discrepancy or error occurred, which
is not the standard under any law or regulation. [Doc. 70 ¶ 157].
Furthermore, the petition to re-canvass itself only said that the voter cards
may contain errors.

challenged the plaintiff candidate's petition for office because the petition was not properly notarized as required by the Georgia election code. The plaintiff filed § 1983 claims against the county board of elections for alleged violations of his right to vote and equal protection, among other things. Id. at 266. The court held that the board members were protected by qualified immunity because "no reasonable official would have believed that compliance with [the Georgia election code] ... constituted an unlawful action." Id. at 269.

Johnson's reasoning is sound and it applies here. No reasonable election board member would believe that (a) conducting elections using DRE equipment required by state law and upheld by the Georgia Supreme Court, or (b) deciding not to re-canvass voting equipment because no error or discrepancy appeared on the returns was a clear violation of Plaintiffs' constitutional rights.

For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Counts I-IV are barred by qualified immunity.

### iii. Official Immunity Bars Counts VI and VII as to the DeKalb Defendants Sued in Their Individual Capacities

Plaintiffs assert state law claims against the DeKalb Defendants in their individual capacities for alleged violations of Plaintiffs' right to vote and right to vote by secret ballot under the Georgia Constitution. However, these claims are barred by official immunity.

GA. CONST. ART. I, SEC. II, PARA. IX(D) provides "official immunity" to government officials sued in their individual capacities "for the performance or nonperformance of their official functions." Id.; Lathrop v. Deal, --- Ga. ---, 801 S.E.2d 867, 888 (2017). Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority" unless that official acted with actual malice. Cameron v. Lang, 273 Ga. 122, 123 (2001). "In the context of official immunity, actual malice means a deliberate intention to do a wrongful act." Johnson v. Randolph, 301 Ga. App. 265, 271 (2009). Here, Plaintiffs fail to even allege that the DeKalb Defendants acted with actual malice. For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are barred by official immunity.

### iv.  Plaintiffs' Claims are Barred by Res Judicata and Collateral Estoppel

Plaintiffs' claims rest on the premise that the DRE voting system is unable to be safely and accurately used to conduct elections. However, this issue has already been litigated and therefore is barred by res judicata and collateral estoppel principles.

<u>Res Judicata</u>

State law guides the analysis when a federal court is asked to apply res judicata to a state court judgment. <u>Amey, Inc. v. Gulf Abstract and Title, Inc.</u>, 758 F.2d 1486, 1509 (11th Cir. 1985). Under Georgia law, res judicata is a three-prong analysis: (1) identity of parties or their privies; (2) identity of cause of action; and (3) previous adjudication on the merits by court of competent jurisdiction. <u>Lilly v. Heard</u>, 295 Ga. 399, 401 (2014); <u>see</u> O.C.G.A. § 9-12-40 (a court's judgment "is conclusive between the same parties and their privies as to all matter put in issue or which ... might have been put in issue").

In <u>Lilly</u>, a concerned voter brought a pre-election challenge to a Baker County Board of Education member's candidacy, claiming that the candidate did not meet the residency requirements. <u>Id.</u> at 400. The Baker County Board of Elections held an evidentiary hearing and resolved the issue in favor of the candidate. The concerned voter chose not to appeal the

decision. Id. After the election, other concerned voters filed suit to challenge the election on the same ground that the candidate did not meet residency requirement, but the Georgia Supreme Court dismissed the action on res judicata grounds. Id. at 405. The court found that concerned voters in the pre-election challenge had identity of interests with voters in the post-election challenge; that pre- and post- election challenges based on the same set of facts satisfies the identity of causes of action prong; and that the Board of Election hearing, where the challenger had a right to be heard and present evidence, was an adjudication on the merits. Id.

Under Lilly, Plaintiffs' claims are barred by res judicata. As in Lilly, there is identity of parties between Curling I and Curling II. Several plaintiffs and defendants are party to both actions, but the new Curling II parties' interests (concerns about the safety and accuracy of the DRE voting systems) were adequately represented by the parties in Curling I. Second, the pre- and post-election challenges here concern the same essential claim: the DRE voting system is unsafe and inaccurate for use in conducting elections. As in Lilly, this satisfies the second prong. Finally, the parties had a full opportunity to present evidence and make arguments. In fact, the Plaintiffs here had a more full and fair opportunity than the plaintiffs in Lilly because they introduced expert witness testimony and

reports to a superior court judge rather than an administrative body. Thus, under <u>Lilly</u>, Plaintiffs' claims are barred by res judicata.

Collateral Estoppel

"Collateral estoppel is applicable where (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the prior litigation; and (4) the party against whom the earlier decision is asserted has had a full and fair opportunity to litigate the issue in the prior action." <u>Fountain v. Metropolitan Atlanta Rapid Transit Authority</u>, 849 F.2d 1414, 1415 (11th Cir. 1988) (citing <u>I.A. Durbin, Inc. v. Jefferson National Bank</u>, 793 F.2d 1541 (11th Cir. 1986)); see also <u>Fields v. Sarasota-Manatee Airport Authority</u>, 755 F. Supp. 377 (M.D. Fla. Jan. 14, 1991) (holding that collateral estoppel bars claims where the party introduced several witness, including expert witnesses) (affirmed but criticized on other grounds by <u>Fields v. Sarasota Manatee Airport Authority</u>, 953 F.2d 1299 (11th Cir. 1992)).

As explained above, the primary issue at stake is the same: the safety and accuracy of the DRE voting system for conducting elections. Second, the issue was actually litigated. Indeed, it was the locus of the preliminary

injunction hearing. Third, the issue was critical to the ultimate denial, as the court specifically noted that she found no harm and no evidence that the DRE voting system was inaccurate or unsafe for use in conducting elections. Fourth, Plaintiffs had a full and fair opportunity to litigate the issue. Like in <u>Fields</u>, Plaintiffs presented several witnesses, including expert witnesses. For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are barred by res judicata and collateral estoppel.

### v. Plaintiffs' Claims are not Justiciable

#### 1. Plaintiffs Lack Standing

For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs lack standing to assert this action.

#### 2. Plaintiffs' Claims are Moot

For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are moot.

### vi. Plaintiffs' Claims are Barred by the Statute of Limitations

For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are barred by the statute of limitations.

## b. The Court Should Dismiss Plaintiffs' Complaint For Failure to State a Claim

For the reasons set forth below, Plaintiffs have failed to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### i. Plaintiffs Fail to Identify a Private Right Of Action for Counts VI and VII

"Civil liability may only be authorized ... when the General Assembly has *expressly provided* for a private right of action." Somerville v. White, 337 Ga. App. 414, 416 (2016) (emphasis in original) (holding that notary statute does not create a cause of action for violations thereof). When a plaintiff alleges statutory or constitutional violations, the court must interpret the statute or constitutional provision "to determine whether it displays an intent to create not just a private right of action but also a private remedy." Anthony v. American General Financial Services, 287 Ga. 448, 459 (2010) (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)); see also Lathrop v. Deal, --- Ga. --- 801 S.E.2d 867 (2017) ("This Court ...

–16–

squarely rejected the notion that the Due Process Clause expressly or by implication affords a right of action...”). Georgia has no state law equivalent to 42 U.S.C. § 1983 that would provide a cause of action against an individual for an alleged violation of the state constitution. Howard v. Miller, 222 Ga. App. 868, 871 (1996); see also Taylor v. Jackson, 2017 WL 579956 (S.D. Ga. Jan. 20, 2017) (“We have no equivalent to 42 U.S.C. § 1983”).

In Counts VI and VII, Plaintiffs seek relief for alleged intrusions on the constitutional right to vote by secret ballot found in GA. CONST. ART. II, § 1, ¶ 1, and for alleged violations of certain provisions of the election code. However, Plaintiffs’ have failed to identify a cause of action under the Georgia constitution or the Georgia election code for either claim.

For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants’ Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs have failed to state a claim upon which relief may be granted for Counts VI and VII.

### ii. The Plaintiffs Cannot Demonstrate a Clear Right to Relief or a Gross Abuse of Discretion Entitling them to Mandamus for Counts IX and XI

“Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy.”

Merchant Law Firm, P.C. v. Emerson, --- Ga. ---, 800 S.E.2d 557, 560 (2017). "Mandamus will issue against a public official only where the petitioner has demonstrated a clear legal right to relief or a gross abuse of discretion." Gwinnett County v. Ehler Enterprises, 270 Ga. 570, 570 (1999). "When challenging the discretionary decisions of public officials, the Plaintiff must show that Defendant committed a gross abuse of discretion." Bland Farms, LLC v. Georgia Department of Agriculture, 281 Ga. 192 (2006). "A discretionary act requires deliberation and the exercise of judgment." Murray v. Georgia Department of Transportation, 284 Ga. App. 263, 268 (2007).

## Count IX

Count IX asks the Court to order Defendants to conduct elections without using DRE machines. For the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs have failed to state a claim upon which relief may be granted.

## Count XI

Count XI asks the Court to order Defendants to re-canvass voter cards in the completed special election. The decision whether to re-canvass voter cards is a discretionary one. Re-canvassing voter cards is appropriate

"whenever it appears that there is a discrepancy in the returns recorded for any voting machine or machines or that an error, although not apparent on the face of the returns, exists." O.C.G.A. § 21-2-495(b); <u>see also</u> Ga. Comp. R. & Regs. 183-1-12.02(7)(a). This decision concerning whether to order a recount requires deliberation and the exercise of judgment. Specifically, it requires the Board to determine whether (a) a discrepancy appeared in the returns, and/or (b) that an error exists.

Here, the Board considered the petition to re-canvass, which requested that the Board re-canvass certain memory cards because they *may* contain errors and discrepancies. The petition was not supported by any facts. Furthermore, the Complaint does not even allege facts that a discrepancy or error appeared but rather states that the DRE machines "must be presumed to have caused substantial discrepancies or errors in returns." [Doc. 70 ¶ 157]. A presumed error is not the standard under any law or regulation. Therefore, Plaintiffs have not demonstrated a clear right to relief nor a gross abuse of discretion by the Board's decision not to re-canvass the voter cards.

For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Motions to Dismiss, which the DeKalb Defendants

incorporate by reference as if fully stated herein, Plaintiffs have failed to state a claim for mandamus in Counts IX and XI.

## III.   CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint.

Respectfully submitted this <u>22nd</u> day of September, 2017.

LAURA K. JOHNSON
DEPUTY COUNTY ATTORNEY
Georgia Bar No. 392090

Terry G. Phillips
SUPERVISING ATTORNEY
Georgia Bar No. 576865

<u>/s/ Bennett D. Bryan</u>
Bennett D. Bryan
ASSISTANT COUNTY ATTORNEY
Georgia Bar No. 157099
Attorneys for Defendants

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

Bennett D. Bryan
Assistant County Attorney
1300 Commerce Drive, 5th Floor
Decatur, GA 30030
(404) 371-3011 – Telephone
(404) 371-3024 – Facsmile
bdbryan@dekalbcountyga.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING et al.,

    **Plaintiffs,**

vs.

BRIAN P. KEMP et al.

    **Defendants.**

_____

**CIVIL ACTION FILE NO.
2017-CV-02989-AT**

## CERTIFICATE OF SERVICE

    I hereby certify that on September 22, 2017, I electronically filed the foregoing **MOTION TO DISMISS AND BRIEF IN SUPPORT** with the CM/ECF system which will send electronic notification to all counsel of record.

                      */s/Bennett D. Bryan*
                      Bennett D. Bryan
                      ASSISTANT COUNTY ATTORNEY
                      Georgia Bar No. 157099