# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al; | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) FILE NO: 1:17cv02989-AT |
| BRIAN P. KEMP, et al.; | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## FULTON COUNTY DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

COME NOW the Fulton County Board of Registration and Elections ("FCBRE"), Director Richard Barron, members of the FCBRE Mary Carole Cooney, Vernetta Nuriddin, David J. Burge, Stan Matarazzo[1], Mark Wingate[2] and

---

[1] Stan Matarazzo was named in the initial Complaint. Although the Complaint has been twice amended without including Mr. Matarazzo as a Defendant, he has not been formally dismissed from this case.

[2] Mark Wingate was named as a Defendant in the Amended Complaint. Although the Second Amended Complaint does not include Mr. Wingate as a Defendant, he has not been formally dismissed from this case. Additionally, as one of the Fulton County Defendants named in the Amended Complaint, Mr. Wingate has a pending motion to Remand the Case to State Court.

Aaron Johnson, (hereafter "Fulton County Defendants") through counsel, and pursuant to Fed. R. Civ. Proc. 81(c), hereby file their response to Plaintiffs' Second Amended Complaint. The Fulton County Defendants provide the following in support of their motion for dismissal of all claims pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).

## I.  **INTRODUCTION**

This action was initially filed on July 3, 2017, in Fulton County Superior Court (*Curling II)* on behalf of six individuals and an out-of-state organization against twenty-nine state and county defendants, asserting eight causes of action. Doc. 1-2. Plaintiffs are challenging the use of the Direct Recording Electronic ("DRE") machines that were used for voting during the June 20, 2017 run-off for the Sixth Congressional District.[3]

On August 8, 2017, Defendant Kemp, the State Election Board ("SEB"), and the named members of the SEB ("State Defendants") removed the action to this

---

[3] Plaintiffs Donna Curling, Donna Price, and Coalition for Good Governance filed a similar action just prior to the June 20, 2017 run-off election and sought an injunction preventing Defendants from using DRE machines for the election. The motion for injunction was denied and all claims dismissed by the Court. *Curling, et al., v. Kemp, et al.*, CA No. 2017cv290630 (Fulton County Superior Court, June 9, 2017).  (*Curling I*).

Court. [Doc. 1].[4] On August 18, 2017, Plaintiffs filed an Amended Complaint [Doc. 15] and on September 15, 2017, Plaintiffs filed a Second Amended Complaint ("Complaint" or "Petition") [Doc. 70] which is the subject of this motion.

Like *Curling I*, the instant case raises the same concerns about the same DRE voting equipment and the same allegations that the DRE system is insecure. Plaintiffs' Second Amended Complaint asserts eleven counts against various defendants alleging violations of the Georgia Constitution, Georgia election code, Georgia election regulations, and claims pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs assert the following claims:

• Counts I-V are federal § 1983 claims against the Defendants in their individual and official capacities for alleged violations of the Plaintiffs' right to vote, the right to due process, and the right to equal protection under the 14th Amendment. [Doc. 70 ¶¶ 58-102].

• Count VI – state law claim against the Defendants in their individual capacities for alleged violations of the right to vote by secret ballot under the Georgia Constitution. [Id. ¶¶ 103-112].

---

[4] At the time of removal, five (5) defendants remained unserved: Janine Eveler, Jessica Brooks, Darryl O. Wilson, Cobb County Board of Registration and Elections and Mark Wingate. The Notice of Removal does not recite that these defendants consented to removal. [Doc 1 ¶¶ 24, 27, 31-33].

3

• Count VII – state law claim against the Defendants in their individual capacities for alleged violations of the state electronic voting system law and of the Georgia Constitution. [Id. ¶¶ 113-125].

• Count VIII – Not applicable to Fulton County Defendants.

• Count IX – state law writ of mandamus claim against the Defendants in their official capacities seeking to prohibit the use of DRE machines and requiring use of hand counted ballots or optical scanners. [Id. ¶¶ 138-144].

• Count X – Not applicable to Fulton County Defendants.

• Count XI – Not applicable to Fulton County Defendants.

Relevant to the Fulton County Defendants, the Plaintiffs ask the Court to: declare that the all of the Defendants have violated the Georgia Constitution, the federal constitution, the Georgia election code, and Georgia election regulations [Id. ¶ 163]; enjoin all of the Defendants from using DRE voting equipment and order them to use optical scanners or hand counted ballots [Id. ¶¶ 165, 168]; and order all of the Defendants to provide a plan to comply with the Court's Order within thirty (30) days [Id. ¶ 166], among other things.

II.   **ARGUMENT AND CITATION OF AUTHORITY**

   **A.   Incorporation and Adoption of Arguments presented by State Defendants and Other County Defendants**.

For the reasons set forth below, and for the reasons, arguments and citations

4

of authority set forth in the State, Cobb, and DeKalb Defendants' Motions to Dismiss, which the Fulton County Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims should be dismissed. Additionally, the Fulton County Defendants offer the following:

**B.      Plaintiffs' Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction**

When a district court lacks subject matter jurisdiction, the Court should dismiss the complaint under Fed. R. Civ. P. 12(b)(1). Here, sovereign immunity, official immunity, qualified immunity, Eleventh Amendment immunity, the statute of limitations, and principles of standing, mootness, res judicata, and collateral estoppel divest this Court of subject matter jurisdiction over the Fulton County Defendants.  In addition, a Complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim.

**i.      Sovereign Immunity Bars Plaintiffs' State Law Claims (Count's VI and VII).**

In Counts VI and VII of the Second Amended Complaint, the Plaintiffs seek to assert state law claims against the Defendants in their official and individual capacities for alleged violations of the right to vote by secret ballot and alleged violations of the state electronic voting system under the Georgia Constitution and

O.C.G.A. §§ 21-2-379 and 21-2-379.1 *et seq.*  [Doc. 70 ¶¶ 103-125].  These claims must also be dismissed for lack of jurisdiction because there is no waiver of sovereign immunity to authorize a lawsuit under O.C.G.A. §§ 21-2-379 and 21-2-379.1 *et seq.* against a government or county agency or government or county officials acting in their official capacity.[5]  It is well-established that "[a] county is not liable for any cause of action unless made so by statute."  O.C.G.A. § 36-1-4.  Moreover, "sovereign immunity extends to the state and all of its departments and agencies.  The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Ga. Const. of 1983, Art. I, Sec. II, Para. IX(e).  This provision of the Georgia Constitution extends sovereign immunity to counties.  Toombs County v. O'Neal, 254 Ga. 390, 391(1), 330 S.E.2d 95 (1985); Gilbert v. Richardson, 264 Ga. 744, 747(2), 452 S.E.2d 476 (1994); Layer v. Barrow County, 297 Ga. 871, 778 S.E.2d

---

[5] The Georgia Supreme Court has repeatedly stated that sovereign immunity applies to public officials sued in their official capacities because these "are in reality suits against the state." *Georgia Department of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 599, n. 4 (2014), citing *Cameron v. Lang*, 274 Ga. 122, 126 (2001).  While the Georgia Supreme Court has held that sovereign immunity does not generally bar suits for prospective injunctive relief in which state officials are sued in their *individual* capacities for allegedly unlawful official acts [*see Lathrop v. Deal*, 2017 Ga. LEXIS 529 at *47 (2017); *Center for a Sustainable Coast*, 294 Ga. at 603].

156, 158 (2015).

### ii.   Plaintiffs Cannot Demonstrate the Existence of a Clear, Unequivocal Waiver of Sovereign Immunity.

The "sweep of sovereign immunity" under the Georgia Constitution is "broad." *Olvera v. University System of Georgia's Board of Regents*, 298 Ga. 425, 426 (2016). The 1991 amendment to the Georgia Constitution gave the legislature the "exclusive power to waive sovereign immunity":

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can *only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.*

Ga. Const. Art. I, Sec. II, Par. IX (e) (emphasis added). "Where the sovereign has sovereign immunity from a cause of action, and has not waived that immunity, the immunity rises to a constitutional right and cannot be abrogated by any court." *Ga. Dep't of County Health v. Neal*, 334 Ga. App. 851, 854 (2015); s*ee Center for Sustainable Coast*, 294 Ga. at 599. ("The history of sovereign immunity in our State shows that the 1991 amendment intended to expressly reserve the power to waive sovereign immunity exclusively to the legislature.")

The Georgia courts have also made clear that it is the *plaintiff's burden* to demonstrate the existence of an explicit waiver of sovereign immunity to authorize

the suit.  *See, e.g.*, *Neal*, 334 Ga. App. at 855 ("It is axiomatic that the party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver"). Thus, in order to survive this Motion, Plaintiffs must show the existence of a statute that specifically waives sovereign immunity.  Plaintiffs have not met their burden.

### iii.   Qualified Immunity Bars Counts I-V as to the Fulton County Defendants in Their Individual Capacities

In Counts I-V, the Plaintiffs allege that the Defendants violated the Plaintiffs' constitutional right to vote, right to due process, and right to equal protection by using allegedly faulty DRE voting machines and by failing to re-canvass votes under Ga. Comp. R. & Regs. 183-1-12.02(7)(a). However, these claims are barred by qualified immunity. Qualified immunity protects officials from § 1983 claims if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The dispositive issue is "whether it would be clear to a reasonable [state official] that his conduct was unlawful." *Leslie v. Hancock County Board of Education*, 720 F.3d 1338, 1345 (11th Cir. 2013) (citations omitted). The Plaintiffs must show a U.S. Supreme Court case, a Georgia Supreme Court case, or an Eleventh Circuit case that would put the Defendants on notice that the conduct in question was clearly unlawful. *Id.* Plaintiffs can point to

8

no case law that would put Defendants on notice that conducting elections using DRE voting machines as mandated by state law, was a clear violation of Plaintiffs' right to vote, right to due process, or right to equal protection under the law. In fact, *Favorito v. Handel* expressly held that use of DRE machines was consistent with the state and federal constitutions' right to vote, due process, and equal protection. Furthermore, election superintendents are required to conduct elections using DRE machines by state law. *See* O.C.G.A. § 21-2-300, *et seq.* Thus, no reasonable election official would believe that using the same DRE machines that were the subject of the *Favorito* decision, is a clear violation of Plaintiffs' constitutional rights. For these reasons, and for the reasons set forth in the State, Cobb, and DeKalb Defendants' Motions to Dismiss, Counts I-IV are barred by qualified immunity.

### iv.    Official Immunity Bars Counts VI and VII as to the Fulton County Defendants Sued in Their Individual Capacities

Plaintiffs assert state law claims against the Fulton County Defendants in their individual capacities for alleged violations of Plaintiffs' right to vote and right to vote by secret ballot under the Georgia Constitution.  However, these claims are barred by official immunity. Ga. Const. Art. I, Sec. II, Para. IX(D) provides "official immunity" to government officials sued in their individual capacities "for

the performance or nonperformance of their official functions." *Id.*; *Lathrop v. Deal*, --- Ga. ---, 801 S.E.2d 867, 888 (2017). Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority" unless that official acted with actual malice. *Cameron v. Lang*, 273 Ga. 122, 123 (2001). "In the context of official immunity, actual malice means a deliberate intention to do a wrongful act." *Johnson v. Randolph*, 301 Ga. App. 265, 271 (2009). Here, Plaintiffs fail to even allege that the Fulton County Defendants acted with actual malice. For these reasons, and for the reasons set forth in the State, Cobb, and DeKalb Defendants' Motions to Dismiss, Plaintiffs' claims are barred by official immunity.

## C.    Plaintiffs' Complaint Should Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted

### i.    Plaintiffs Do Not Have a Colorable Claim Under 42 U.S.C. § 1983.

The law governing the invocation of section 1983 for alleged "malfunctions" of the electoral process is well settled. **The [federal] Constitution is not an election fraud statute: protection is extended to the right of all qualified citizens to vote in state and federal elections**… *Bodine v. Elkhart County Election Bd*., 788 F.2d 1270 (1986) *citing Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 1377-78, 12 L.Ed.2d 506 (1964). "It is not every election irregularity,

however, which will give rise to a constitutional claim and an action under section 1983." *Hennings v. Grafton,* 523 F.2d 861, 864 (7th Cir.1975).   The court in *Hennings* held that section 1983 is implicated only when there is "*willful* conduct which undermines the organic processes by which candidates are elected." 523 F.2d at 864 (emphasis added); see also *Shannon v. Jacobowitz*, 394 F.3d 90, 97 (2d Cir.2005) ("Because no conduct is alleged that would indicate an intentional deprivation of the right to vote, we find no cognizable federal due process claim."); *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir.1992) ("Principles of federalism limit the power of federal courts to intervene in state elections.")   Because Plaintiffs have failed to show willful intent, they have failed to state a constitutional violation of the Fourteenth Amendment. Every election irregularity will not rise to a constitutional violation. *Pettengill v. Putnam County R-1 Sch. Dist.*, 472 F.2d 121, 121-22 (8th Cir. 1973).   The Constitution does not mandate flawless or perfect elections. *Bodine* 788 F.2d at 1272 (7th Cir. 1986). Absent invidious discrimination or "fraudulent interference with a free election by stuffing the ballot box," voter irregularities do not amount to constitutional violations. *Pettengill*, 472 F.2d 121, 122 (8th Cir. 1973).

In addition, in *Gamza v. Aguirre*, 619 F.2d 449, 453 9 (5th Cir. 1980) the Fifth Circuit explained that "[i]f every state election irregularity were considered a

11

federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss."

### ii.     Plaintiffs Fail to Sufficiently Allege a Due Process Claim.

The Fourteenth Amendment's due process clause provides two types of protection: (1) substantive due process; and (2) procedural due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*).  Counts I, II, and IV of Plaintiffs' Second Amendment Complaint assert federal due process claims that are premised on Defendants' use of the DRE voting system.   "Plaintiffs' claim is therefore a procedural due process claim.  Areas in which rights are created by the state are not subject to substantive due process protection. *McKinney*, 20 F.3d at 1556. "As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural--not substantive--due process are observed." *Id.* Of course, Plaintiffs must still identify and establish the liberty or property interests they assert have been granted pursuant to state law.[6]

---

[6] The Georgia Supreme Court has held that the use of DRE voting machines does not violate voters' state or federal constitutional rights, including substantive due process rights. *Favorito v. Handel*, 285 Ga. 795, 797-798 (2009) (explaining that voters do not have a right to a particular ballot system and that "it is the job of

Procedural due process is a guarantee of fair procedures whereby the state may not deprive a person of life, liberty, or property without providing "appropriate procedural safeguards." *Daniels v. Williams*, 474 U.S. 327, 337-338 (1986). "The fundamental requirement of [procedural] due process is the opportunity to be heard." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981). "A §1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." *Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Plaintiffs have not even sufficiently alleged the first step, identifying a constitutionally-protected liberty or property interest. As noted, the Georgia Supreme Court has already held that voters do *not* have a right under state law to a particular balloting system.  *Favorito*, 285 Ga. at 797-798.

Additionally, even if Plaintiffs could articulate a constitutionally protected liberty interest, Plaintiffs cannot satisfy the third step, i.e., constitutionally inadequate process. The Eleventh Circuit has repeatedly explained that procedural due process violations are not complete unless and until the state refuses to provide due process. *McKinney*, 20 F.3d at 1562; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289,

---

democratically-elected representatives to weigh the pros and cons of various balloting systems.").

1294 (11th Cir. 2007).  Only when the state refuses to provide a process sufficient to remedy the deprivation does a constitutional violation become actionable under § 1983.  *Id.  See also Wells v. Columbus Tech. College*, 510 Fed. Appx. 893, 897 (11th Cir. 2013) (explaining that "[p]rocedural due process violations do not even exist unless no adequate state remedies are available.") (quoting *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000)).

Here, Plaintiffs have not alleged that state remedies are not available.  In fact, Plaintiffs requested a state remedy but failed to follow through.  In their Complaint at ¶¶ 33-35, Plaintiffs' assert in part, "a group of Georgia electors utilized their rights under O.C.G.A §21-2-379.217 and requested that Georgia's DRE-Based Voting System be reexamined."  In their Amended Complaint at ¶ 97, Plaintiffs' again assert, "a group of Georgia electors, including Davis, exercised their rights under O.C.G.A. § 21-2-379.2(a) by requesting that Georgia's Voting System be reexamined and listing a number of security concerns."  [Doc. 15 ¶ 97].

Plaintiffs have a remedy that they failed to exhaust.  The availability of a state remedy means that the procedural due process claim asserted does not exist.  *See Horton v. Bd. of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("If state court could [provide an adequate remedy], then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the

state remedy or attempted to do so."). Moreover, the Eleventh Circuit has held that a state remedy is *not* inadequate merely because a claim may be barred by state immunity laws. *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1459 (11th Cir. 1985); *Taylor v. Ledbetter*, 791 F.2d 881, 884 (11th Cir. 1986). Accordingly, Plaintiffs fail to state a procedural due process claim.

### iii.   Plaintiffs Fail to Sufficiently Allege an Equal Protection Claim.

Plaintiffs' equal protection claim is premised on allegations that use of a DRE machine to cast a ballot is less favorable than voting by absentee ballot. *See* Counts II and V of Plaintiff's Second Amended Complaint. [Doc. 70 ¶¶ 66-80, 95-102]. Plaintiffs have not made out an Equal Protection claim.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons *similarly situated* should be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (emphasis added). An Equal Protection claim requires a showing that a plaintiff has been the victim of intentional discrimination. *Batson v. Kentucky*, 476 U.S. 79, 94, n.18 (1986). The requisite discriminatory purpose must be "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in

15

part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted). A plaintiff may prove intent with direct or circumstantial evidence. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999).

The first step in any Equal Protection claim is to establish that a recognizable, distinct class is singled out for different treatment under the laws as written or as applied. *Castaneda v. Partida*, 430 U.S. 482, 494 (1977). Here, Plaintiffs fail this first step. Plaintiffs' complaint is not that similarly situated voters are treated differently, it's that voters (like Plaintiffs) that choose to vote by absentee paper ballot get a paper ballot and voters that choose to vote on a DRE machine do not. In other words, the two classes of voters which Plaintiffs seek to create are not similarly situated. As soon as a voter picks their ballot method, they become dissimilar. All voters get a choice to vote by absentee paper ballot or by DRE machine. *See Favorito*, 285 Ga. at 798. "To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, [courts] are obliged to apply the 'similarly situated' requirement with rigor." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *Id.* (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)). As the

Georgia Supreme Court recognized in an earlier challenge to Georgia's use of DRE machines, all Georgia voters "have the option of casting an absentee ballot or using the touch screen electronic voting machines on election day." *Favorito*, 285 Ga. at 798.[7]  To the extent that different recount procedures are necessarily applied to these different ballots does not violate the Equal Protection Clause. *Id.* at 799. Where, as here, there are no allegations that Plaintiffs are members of a suspect or quasi-suspect class, "[t]he general rule is that [the state action] is presumed to be valid and will be sustained if the classification drawn by the [state action] is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440.

Consequently, the jurisprudence in this area mandates that Plaintiffs' Section 1983 claims be dismissed for failure to state a claim for the denial or deprivation of constitutional rights.

### iv.  The Plaintiffs Cannot Demonstrate a Clear Right to Relief or a Gross Abuse of Discretion Entitling them to Mandamus for Count IX

"Mandamus is an extraordinary remedy to compel a public officer to

---

[7] Plaintiff Ricardo Davis was a Plaintiff in *Favorito v. Handel*, CA No. 2006cv119719 (Fulton County Superior Court). Davis is therefore barred by *res judicata* from relitigating the same claims here. Federal courts, pursuant to the Full Faith and Credit Clause, 28 U.S.C. § 1738, give state court judgments the same preclusive effect as would other courts in that state. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).

perform a required duty when there is no other adequate legal remedy." *Merchant Law Firm, P.C. v. Emerson*, --- Ga. ---, 800 S.E.2d 557, 560 (2017). Mandamus is only available to a plaintiff who can articulate "a clear legal right" to have the particular act performed. *Gwinnett County v. Ehler Enterprises*, 270 Ga. 570, 570 (1999). In this case, Plaintiffs have not shown the clear legal right to compel Defendants to act in a manner contrary to law. State law determines the voting process in Georgia. O.C.G.A. § 21-2-300, *et seq.* Therefore, Plaintiffs have not met, and cannot meet, their burden of showing a clear legal right to the requested relief.

For the reasons set forth herein and also in the State, Cobb, and DeKalb Defendants' Motions to Dismiss, Plaintiffs have failed to state a claim upon which relief may be granted.

**D.    Plaintiffs' Are Collaterally Estopped from Bringing Claims That Have Already Been Adjudicated in a Court of Law.**

Plaintiffs' claims rest on the premise that the DRE voting system is unable to be safely and accurately used to conduct elections. However, this issue has already been litigated and therefore is barred by res judicata and collateral estoppel principles. The Court in *Curling I* specifically held that Plaintiffs' state law causes of action were subject to qualified immunity and must be dismissed; and Plaintiff' request for writ of mandamus must necessarily fail. [See Court's

18

instruction included in Doc 14; See also, Doc 17].

State law guides the analysis when a federal court is asked to apply res judicata to a state court judgment. *Amey, Inc. v. Gulf Abstract and Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985). Under Georgia law, res judicata is a three-prong analysis: (1) identity of parties or their privies; (2) identity of cause of action; and (3) previous adjudication on the merits by court of competent jurisdiction. *Lilly v. Heard*, 295 Ga. 399, 401 (2014); see O.C.G.A. § 9-12-40 (a court's judgment "is conclusive between the same parties and their privies as to all matter put in issue or which … might have been put in issue").

Under the *Lilly* analysis, Plaintiffs' claims in the instant case are barred by res judicata.  As in *Lilly*, there is identity of parties between *Curling I* and *Curling II.* Several plaintiffs and defendants are party to both actions, but the new *Curling II* parties' interests (concerns about the safety and accuracy of the DRE voting systems) were adequately represented by the parties in *Curling I*. Second, the pre- and post-election challenges here concern the same essential claim: the DRE voting system is unsafe and inaccurate for use in conducting elections. As in *Lilly*, this satisfies the second prong. Finally, the parties had a full opportunity to present evidence and make arguments. In fact, the Plaintiffs here had a more full and fair opportunity than the plaintiffs in *Lilly* because they introduced expert witness

19

testimony and reports to a superior court judge rather than an administrative body. Thus, under Lilly, Plaintiffs' claims are barred by res judicata.

Collateral estoppel or issue preclusion prevents the re-litigation of an issue that is identical to one decided in a prior proceeding involving the same parties or their privies. *See Langton v. Dept. of Corrections*, 220 Ga. App. 445, 446, 469 S.E.2d 509 (1996). When the doctrine of collateral estoppel applies, an issue previously litigated and adjudicated on the merits cannot be re-litigated even as part of a different cause of action. *Jordan v. Bd. of Public Safety*, 253 Ga. App. 339, 342, 559 S.E.2d 94 (2002). This doctrine prevents a litigant from splitting his claims against the same party into a series of lawsuits. *See Id.* at 341, 559 S.E.2d 94.

In addition, the preclusion doctrines of res judicata (or claim preclusion) and collateral estoppel (or issue preclusion) apply to a cause of action "even if some new factual allegations have been made, some new relief has been requested, or a new defendant has been added." *Medlin v. Carpenter*, 174 Ga. App. 50, 51, 329 S.E.2d 159 (1985) (internal citations omitted.) A party may only assert the doctrine of collateral estoppel if the issue was (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment. *Boozer v. Higdon*, 252 Ga. 276, 278, 313 S.E.2d 100, 102 (Ga.1984) ("In order to

20

successfully plead collateral estoppel, ... one must prove that the contested issues, even though arising out of a different claim, were actually litigated and decided and were necessary to the prior decision.")

"Privity" is a "connection or relationship between two parties, each having a legally recognized interest in the same subject matter." *U.S. Micro Corp. v. Atlantix Global Sys*., LLC, 278 Ga. App. 599, 602, 630 S.E.2d 416, 419 (2006) (quoting Black's Law Dictionary, p. 1237 (8th ed.2004)). *See also Old Republic Nat. Title Ins. Co. v. Hartford Acc. & Indem. Co*., 2:12-CV-0004-RWS, 2013 WL 1943427, at * 9 (N.D. Ga. May 9, 2013). *See also QOS Networks Ltd. v. Warburg, Pincus & Co*., 294 Ga. App. 528, 534, 669 S.E.2d 536, 542 (2008) ("While parties need not be identical, they must be so connected with a party to the previous judgment that the party fully represents the interest of the privy.*")*

Applying this definition of "privy" to the circumstances presented here, Plaintiffs in the *Curling I* litigation, were privies for the Plaintiffs in the instant matter.  Many of the Plaintiffs in the instant matter were also plaintiffs in *Curling I*[8], and thus they had control over the litigation.  Accordingly, the interests of the

---

[8] Plaintiffs Donna Curling, Donna Price, and Coalition for Good Governance (formally known as Rocky Mountain Foundation) were Plaintiffs in *Curling I*. Secretary of State Brian Kemp and the various county Defendants were also Defendants in *Curling I*.  In *Curling I*, Plaintiffs' motion for injunction was denied and all state law claims were dismissed by the Court. *Curling, et al., v. Kemp, et*

*Culling I* plaintiffs are fully congruent with interests of the Plaintiffs in the matter before this Court, and the *Curling I* plaintiffs fully "represented" the interests of these Plaintiffs.

Accordingly, because Plaintiffs' claims were (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment. *Boozer* at 278, Plaintiffs are collaterally estopped from having their claims re-litigated in this Court.

## III.  CONCLUSION

Based on the foregoing, the Fulton County Defendants requests that this Court grant the requested Motion to Dismiss.

**Respectfully submitted this 29th day of September, 2017.**

**OFFICE OF THE COUNTY ATTORNEY**

**/s/Cheryl Ringer**
**Kaye Burwell**
**Georgia Bar Number:   775060**
**kaye.burwell@fultoncountyga.gov**
**Cheryl Ringer**
**Georgia Bar Number: 557420**
**cheryl.ringer@fultoncountyga.gov**
**David Lowman**
**Georgia Bar Number: 460298**

*al.*, CA No. 2017cv290630 (Fulton County Superior Court, June 9, 2017).

**david.lowman@fultoncountyga.gov**

**ATTORNEYS FOR DEFENDANTS RICHARD BARRON MARY CAROLE COONEY, VERNETTA NURIDDIN, DAVID J. BURGE, STAN MATARAZZO, AARON JOHNSON, AND THE FULTON COUNTY BOARD OF REGISTRATION & ELECTIONS**

Office of the County Attorney
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303

P:\CALitigation\Elections\Curling, Donna v. Kemp, Brian (Curling II) 1.17-CV-02989-AT- (DRL)\Pleadings\9.25.17 Fulton County Defendants' Brief in Support of Their MTD(2).docx

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the forgoing **FULTON COUNTY DEFENDANTS'**
**BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** was prepared in 14-
point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

This 29th day of September, 2017.

**/s/David R. Lowman**
Georgia Bar Number: 460298
david.lowman@fultoncountyga.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing **BRIEF IN SUPPORT OF FULTON COUNTY DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Bryan Ward Marvin Lim
Holcomb + Ward LLP
3399 Peachtree Rd NE, Suite 400
Atlanta, GA 30326
Bryan.Ward@holcombward.com
Marvin@holcombward.com

Overtis Hicks Brantley Bennett D. Bryan
DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, GA 30030

Daniel W. White
Haynie, Litchfield, Crane & White, PC
222 Washington Avenue
Marietta, Georgia 30060

Jon Ossoff
Candidate for Congress
c/o Russell Waldon, Esq.
Waldon Adelman Castilla Hiestand & Prout
900 Circle 75 Parkway, N.W.
Suite 1040
Atlanta, GA 30339-3084
rwaldon@wachp.com

I further certify that I have served, by electronic mail, the following non-cm/ecf participants:

Rep. Karen Handel
U.S. Congressional District 6
c/o Anne Lewis, Esq. awl@sbllaw.net

This 29th day of September, 2017.

**/s/David R. Lowman**
Georgia Bar Number: 460298
david.lowman@fultoncountyga.gov

P:\CALitigation\Elections\ Pleadings\9.25.17 Fulton County Defendants' Brief in Support of Their MTD(2).docx