## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING et al.,**

   **Plaintiffs,**

**vs.**

**BRIAN P. KEMP et al.**

   **Defendants.**

**_____**

**CIVIL ACTION FILE NO.
2017-CV-02989-AT**

## REPLY BRIEF IN SUPPORT OF
## DEKALB DEFENDANTS' MOTION TO DISMISS

**DEFENDANTS** Maxine Daniels, Michael Coveny, Anthony Lewis, Leona Perry, Samuel Tillman, and Baoky Vu ("Individual DeKalb Defendants") and Defendant DeKalb County Board of Registrations and Elections ("DeKalb Board") (together "DeKalb Defendants") submit this **Reply Brief in Support of DeKalb Defendants' Motion to Dismiss**, showing the Court as follows:

## I.    INTRODUCTION

As the style of the case suggests, the Plaintiffs want a second bite at the apple in Curling v. Kemp II ("Curling II"). In Curling v. Kemp I, ("Curling I") Plaintiffs had the opportunity to assert all claims related to the safety, accuracy, and constitutionality of the DRE voting system but failed to do so. Res judicata and collateral estoppel bar the re-litigation of those claims and issues. Furthermore, the DeKalb Defendants are immune from Plaintiffs' claims, and Plaintiffs have failed to state a claim upon which relief may be granted. Thus, DeKalb Defendants respectfully move this Court to dismiss Curling II.

## II.   FACTS AND BACKGROUND

The facts and procedural posture of this case have been articulated in numerous pleadings and briefs. In an effort to avoid redundancy, this section will only include facts most pertinent to the arguments below.

- Curling I concerned the safety, accuracy, and constitutionality of the DRE voting system. [See Curling I Verified Complaint ¶ 43; June 6, 2017 Hearing Transcript ("Hearing Transcript") at 129:15, 287:22, 292:10; June

9, 2017 Order Dismissing Verified Complaint ("June 9 Order") at *4].[1] The Plaintiffs sought declaratory, injunctive, and mandamus relief to prevent the Defendants from using the DRE system to conduct elections. [Id.]

- The Plaintiffs' own description of Curling I is worth quoting:

  We have a cause of action for the violation of the fundamental right to vote which underlines all of our request for relief in this case. We sought declaratory relief, injunctive relief, and mandamus. And those causes of action all overlay the injury, which is to the fundamental right to vote... And what we have done in our complaint, paragraph 43 is: the fundamental constitutional right to vote of the voters who are plaintiffs and of the members of Rocky Mountain Foundation, which is a plaintiff, are threatened by having to cast their votes in an environment like this using a voting system that is neither safe nor reliable.

  [Hearing Transcript 239:12–240:7].

- Though Plaintiffs did not assert claims under the federal constitution in the Verified Complaint, they could have. See June 9 Order at *4 ("Although such [constitutional] claims could be properly brought before this Court, in this instance Plaintiffs have failed to make such a pleading.").

- Similarly, Curling II concerns the safety, accuracy, and constitutionality of the DRE voting system. [Second Amended Complaint,

---

[1] Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage. U.S. ex rel. Osheroff v.

Doc. 70 ¶¶ 1, 3, 7, 124; Doc. 93 p. 2]. The Plaintiffs seek declaratory, injunctive, and mandamus relief to prevent the Defendants from using the DRE system to conduct elections. [Doc. 70 ¶¶ 163-173].

- Though all parties to <u>Curling I</u> are also parties to <u>Curling II</u>, Plaintiffs added several new Plaintiffs and Defendants in <u>Curling II</u>. The new Plaintiffs are concerned Georgia voters and CGG members, and the new Defendants are the various Boards of Elections and their members. [Doc. 70 ¶ 12.] Plaintiffs also incorporated the elections of November 8, 2016, April 18, 2017, June 20, 2017, and Future Relevant Elections into the Second Amended Complaint.

## III.   ARGUMENT AND CITATION TO AUTHORITY

### a. Plaintiffs' Claims Concerning the Safety, Reliability, and Constitutionality of the DRE Voting System Are Barred by Res Judicata and Collateral Estoppel

#### i.  Res Judicata

Plaintiffs claim that <u>Curling I</u> and <u>Curling II</u> involve different parties and different subject matter. Plaintiffs also claim that they did not have a full and fair opportunity to litigate their claims in <u>Curling I</u>. However, Defendants have satisfied each prong of the res judicata analysis.

---

<u>Humana, Inc.</u>, 776 F.3d 805, 811 n. 4 (11th Cir. 2015).

<u>Prong 1: Identity of Parties</u>

First, identity of parties exists between Plaintiffs Coalition for Good Governance (CGG), Curling, and Price and Defendants Kemp, Barron, Daniels, and Eveler, because each of them are parties to both actions. At minimum, claims between those entities are barred.

Second, the new parties in <u>Curling II</u> have privity with the parties from <u>Curling I</u>. "Privity may be established if the party to the first suit represented the interests of the party to the second suit." <u>Brown & Williamson Tobacco Corp.</u>, 280 Ga. 420 (2006); <u>see also</u> <u>Lilly v. Heard</u>, 295 Ga. 399, 400 (2014) (holding that concerned voters in pre-election challenge adequately represented the interests of concerned voters in post-election challenge). Under <u>Lilly</u>, the concerned voters in <u>Curling I</u> represented the same interests of the concerned voters (e.g. Plaintiff Ted Terry) in <u>Curling II</u> and therefore have privity with each other.

Furthermore, an organization has privity with its members. <u>See Coffee Iron Works v. Qore, Inc.</u>, 322 Ga.App. 137 (2013) (holding that a shareholder of a corporation has privity with that corporation for res judicata purposes); <u>QOS Networks Ltd. v. Warburg</u>, Pincus & Co., 294 Ga.App. 528 (2008) (corporation had privity with shareholders); <u>Dalton Paving and Construction, Inc. v. South Green Construction of Georgia, Inc.</u>,

284 Ga.App. 506 (2007) (subcontractors had privity with general contractor).

In Curling I and II, the Plaintiffs are members of CGG. Under Coffee Iron Works, CGG represented the interests of its members in Curling I and therefore has privity with the CGG members here. Prong 1 is satisfied.

### Prong 2: Identity of Claims

Plaintiffs argue that prong 2 is not satisfied because the subject matter between the cases is different. Plaintiffs initially distinguished the cases by arguing that Curling II involved fundamental constitutional rights while Curling I did not. [Doc. 91 p. 83]. Plaintiffs have since dropped that argument and now offer only a conclusory statement without analysis that "the claims in the current case are distinct." [Doc. 93 p. 67].

In fact, the claims in both cases involve the same subject matter. Under Georgia law, "[a] cause of action [is] deemed to be the entire set of facts which give rise to an enforceable claim." Crowe v. Elder, 290 Ga. 686, 688 (2012). "[O]ne must assert all claims for relief concerning *the same subject matter* in one lawsuit and any claims for relief concerning that same subject matter which are not raised will be res judicata." Harris v. Deutsche Bank National Trust Co., 338 Ga.App. 838 (2016) (emphasis in original) (quoting Lawson v. Watkins, 261 Ga. 147, 149 (1991)).

Here, the subject matter in <u>Curling I</u> and <u>Curling II</u> is the same: the safety, accuracy, and constitutionality of Georgia's DRE voting system. Likewise, the nature of the ultimate relief sought is the same: declaratory, injunctive, and mandamus relief to prevent the use of the DRE voting system in the future. As Judge Esmond Adams explained in <u>Curling I</u>, Plaintiffs could have asserted all claims related to the safety, accuracy, and constitutionality of the DRE voting system. Plaintiffs' addition of past and future relevant elections to this lawsuit does not change the analysis. Plaintiffs could have brought actions related to past and future elections in <u>Curling I</u>. Their failure to do so precludes raising them in <u>Curling II</u>. Prong 2 is satisfied.

Prong 3: Previous Adjudication

Plaintiffs argue that the third prong is not satisfied because "there was no opportunity to adjudicate the constitutional law claims" and "there was no adjudication on the merit." [Doc. 93 p. 67]. However, the only reason the <u>Curling I</u> court did not adjudicate the constitutional law claims was because Plaintiffs chose not to plead constitutional claims.

The Plaintiffs' argument that Curling I involved no adjudication on the merits is specious. The <u>Curling I</u> Plaintiffs filed a Verified Complaint, the Defendants filed motions to dismiss, the court held a hearing on the

motions, and the court dismissed the case. Thus, the June 9, 2017 Order dismissing the Plaintiffs' Verified Complaint was a final judgment under O.C.G.A. § 9-11-54.[2]

An erroneous judgment can be attacked "only by appeal or by a direct proceeding to set it aside." Nally v. Bartown County Grand Jurors, 280 Ga. 790 (2006). The *Rooker-Feldman* doctrine bars federal district courts from hearing matters related to previous state court litigation. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476–82 (1983). "[F]ederal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009).

If the Plaintiffs disagreed with any part of the June 9, 2017 Order, the Plaintiffs had the opportunity to appeal that decision. Allowing these claims to proceed amounts to a collateral attack on the Fulton County Superior Court's order. Thus, Prong 3 is satisfied and res judicata prevents these claims from being re-litigated here.

---

[2] Plaintiffs argue that the court in Curling I only denied the TRO, but in fact the court dismissed the Verified Complaint. June 9 Order at *8 ("the Complaint is hereby DISMISSED").

<u>Collateral Estoppel</u>

Plaintiffs only attack the identity of issues prong in its collateral estoppel arguments. [Doc. 93 p. 69]. Plaintiffs characterize the issue in <u>Curling I</u> as "the potential impact of the DRE-based voting system on the safety and accuracy of the Runoff election." <u>Id.</u> However, Plaintiffs do not offer an analysis of the issue in <u>Curling II</u> but rather present a conclusory statement that the claims in <u>Curling II</u> "are much broader and go far beyond the narrow scope" of <u>Curling I</u>. However, as described above, the issue underlying all the claims in <u>Curling II</u> is the safety, accuracy, and constitutionality of the DRE voting system. Thus, Plaintiffs are collaterally estopped from re-litigating these issues.

### b. 11th Amendment Immunity Bars Counts I-IV Because DeKalb Defendants Act as "Arms of the State" When Conducting Elections

Plaintiffs argue that the 11th Amendment is inapplicable here because: (a) the DeKalb Defendants are not acting as "arms of the state" when conducting elections, (b) § 1983 abrogates Eleventh Amendment immunity and state sovereign immunity, (c) the DeKalb Defendants waived their immunity by removing the action to federal court, and (d) this case falls under the <u>Ex parte Young</u> immunity exception. However, Plaintiffs' argument misconstrues 11th Amendment case law.

### i.  DeKalb Defendants are "Arms of the State"

11th Amendment immunity bars claims in federal court against county officials when acting as an "arm of the state." <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003). To determine whether an official is acting as an arm of the state, the court must consider the following criteria in light of the relevant function:

> (1)    how state law defines the entity;
> (2)    what degree of control the state maintains over the entity;
> (3)    the source of the entity's funds;
> (4)    who bears financial responsibility for judgments entered against the entity.

<u>Abusaid v. Hillsborough County Board of County Commissioners</u>, 405 F.3d 1298, 1304 (11th Cir. 2005). Here, the relevant function is conducting elections.

Plaintiffs argue that election board members are not acting as "arms of the state" when conducting elections. However, the court in <u>Casey v. Clayton County</u>, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007) explains why the Plaintiffs are wrong in a thorough analysis worth quoting in full:

> Certainly, if the Court were to confine its inquiry to whether the Board acts as an arm of the state for purposes of conducting elections in general, there can be little doubt that Eleventh Amendment immunity would attach. The [DeKalb] Board of Elections was created by the Georgia General Assembly pursuant to its statutory authority, and vested with broad

powers to manage the conduct of elections on behalf of the state. [See Ga. L. 2003, p. 4200 § 1]. To that end, the State exercises significant control over the Board's election-related activities. The state fixes the duties of the Board, [see id. § 9]..., O.C.G.A. §§ 21-2-70,-212 (setting forth duties of election superintendents and registrars respectively), establishes the minimum qualifications for Board members, [see Ga. L. 2003, p. 4200 § 3], sets certification and minimum training requirements, and disciplines officials who fail to comply with those requirements, see O.C.G.A. § 21-2-100 (requiring at least one member of county board of elections or designee of board to attend minimum of 12 hours training annually as selected by Secretary of State, and providing that failure to attend training may result in imposition of fines by State Board of Elections); O.C.G.A. § 21-2-101 (requiring designee of board of elections charged with daily operations of such board to complete a certification program approved by the Secretary of State, and providing that Secretary of State, in his or her sole discretion, may waive certification requirement in whole or part). Moreover, the County's control over the Board of Elections is generally attenuated. Similarly, the Board, and not the County, has the power to control its organization and elect its officers, determine its procedural rules and regulations, adopt bylaws, specify the functions and duties of its employees, and take any other actions appropriate to the management of its affairs, provided that these actions do not conflict with state law. [Ga. L. 2003, p. 4200 § 13]. Finally, although [Ga. L. 2003, p. 4200]  purports to grant the County Commission budgetary control, the Court questions the true extent of the County's budgetary authority in light of the county's apparent obligations under state law regarding the conduct of elections, and the relationship between those obligations and citizens' ability to exercise their fundamental right to vote.

–11–

<u>Casey</u> at \*8. In addition, the DeKalb Board's compensation is set by the state [Ga. L 2005, p. 3780, § 1(18)] and the DeKalb Board has the authority to override any rule or regulation of a county executive committee [Ga. L. 2003, p. 4200 § 179]. Unlike Clayton County, the DeKalb County governing authority cannot appoint or remove board members, and therefore the County has even less control over the its Board than does Clayton County.

<u>Casey</u>'s analysis is consistent with <u>McConnell v. Adams</u>, 829 F.2d 1319 (1987), where the Fourth Circuit held that local election boards are arms of the state under the 11th Amendment because they "bear a closer nexus to the state than with the localities where there work." <u>Id.</u> at 1327. <u>See</u> <u>also</u> <u>Tiraco v. New York State Board of Elections</u>, 963 F.Supp.2d 184 (Aug. 7, 2013) (dismissing complaint against board of elections under 11th Amendment immunity); <u>Libertarian Party of Virginia v. Virginia State Board of Elections</u>, 2010 WL 3732012 (Sept. 16, 2010) (board of elections is "arm of the state" under 11th Amendment).

As the DeKalb County Board was created by the state and is controlled by the state, and the business of conducting elections is governing entirely by state law, the DeKalb Defendants in their official

capacities are "arms of the state" and immune from Plaintiffs' § 1983 claims under the 11th Amendment.

### ii. Section 1983 Does Not Abrogate Eleventh Amendment Immunity

Plaintiffs claim that "Section 1983 constitutes a valid abrogation by Congress" of sovereign immunity and, in turn, 11th Amendment immunity. [Doc. 93 p. 16]. This is a misstatement of law. In reality, "Congress did not abrogate states' sovereign immunity through enacting § 1983." Casey v. Clayton County, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007) (citing Quern v. Jordan, 440 U.S. 332, 345 (1979) and Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986)).

In support of their argument, Plaintiffs cite Howlett v. Rose, 496 U.S. 356 (1990). However, in Howlett, the U.S. Supreme Court clearly explained that "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court." Id. at 2437. As explained above, the DeKalb Defendants in their official capacities are "arms of the state" when conducting elections and therefore are immune from Counts I-IV.

### iii. DeKalb Defendants Did Not Waive Immunity by Removing to Federal Court

In some circumstances, a state defendant can waive 11th Amendment immunity by removal to federal court. See Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002). However, Lapides only applied to claims for which the state had already consented to be sued in state court. Id. at 624. The Eleventh Circuit clarified the scope of Lapides in Stroud v. McIntosh: "an arm of the state remains immune from liability for claims under [federal law], notwithstanding its removal of the case." 722 F.3d 1294, 1303 (11th Cir. 2013). As the state has not consented to suit under § 1983, 11th Amendment immunity protects the DeKalb Defendants as arms of the state.

### iv.  Ex Parte Young does not apply

The DeKalb Defendants assert that the Ex parte Young exception does not apply and hereby incorporates the State, Fulton, and Cobb County Defendants' arguments as if fully stated herein.

### c. Qualified Immunity Bars Counts I-V as to the DeKalb Defendants in Their Individual Capacities Because There is No Clearly Established Law That Conducting Elections Using the DRE System is Unconstitutional

Qualified immunity "protects all but the plainly incompetent." White v. Pauly, 137 S.Ct. 548, 551 (2017) (quoting Mullenix v. Luna, 136 S.Ct. 305 (2015)). "In the last five years, [the U.S. Supreme Court] has issued a number of opinions reversing federal courts in qualified immunity cases."

–14–

<u>Id.</u> This is because federal courts are defining clearly established law "at a high level of generality." <u>Id.</u> at 552 (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)). Here, the Plaintiffs argue that the right to vote, to vote by secret ballot, to enjoy equal protection of the law, etc., are the clearly established rights. This characterization is devoid of context and rises to the "high level of generality" the U.S. Supreme Court has repeatedly rejected.

The real questions is whether it is clearly established that use of DRE machines is unconstitutional. Or, in other words, whether it would be clear to a reasonable county election official that using DRE machines is unconstitutional. <u>See</u> <u>Leslie v. Hancock County Board of Education</u>, 720 F.3d 1338, 1345 (11th Cir. 2013) (citations omitted) (the standard is "whether it would be clear to a reasonable [official] that his conduct was unlawful").

The Plaintiffs cannot show a U.S. Supreme Court case, a Georgia Supreme Court case, or an Eleventh Circuit case that would put a county elections official on notice that using DRE equipment is unconstitutional. [Doc. 91 p. 37]. The Plaintiffs only cite to district court cases in sister circuits, and none of those even contemplate DRE machines. The only relevant case that provides guidance is <u>Favorito v. Handel</u>, 285 Ga. 795 (2009), where the Georgia Supreme Court held that using a DRE voting

system did not violate equal protection, due process, or any other constitutional rights. Plaintiffs' response is that <u>Favorito</u> "should not be followed by this Court." [Doc. 91 pp. 51-52]. Unfortunately for Plaintiffs, even if the Court were to determine that <u>Favorito</u> was wrongly decided, that would not preclude qualified immunity. In fact, until the Georgia or U.S. Supreme Court overrules that case, <u>Favorito</u> is the *only* clearly established law on the subject.

Plaintiffs also argue that the opinions of their computer experts put the DeKalb Defendants on notice that using DRE was clearly a violation of Plaintiffs' constitutional rights. However, the opinion of a computer science expert hired by a biased advocacy group has never been grounds to create clearly established law that would abrogate qualified immunity.

### i. There is No Clearly Established Law Concerning the Constitutionality of Board Decisions Related to the Re-canvass of Voter Cards

To the extent that Plaintiffs argue that failing to a re-canvass the voter cards is a violation of their constitutional rights, DeKalb Defendants are protected by qualified immunity. Plaintiffs can point to no case law that would put a reasonable county elections official on notice that deciding not to re-canvass voter cards violates the Plaintiffs' constitutional rights.

In fact, election superintendents may only re-canvass the voter cards if it appears that a discrepancy or error has been made. See Ga. Comp. R. & Regs. 183-1-12.02(7)(a). As no discrepancy or error appeared,[3] the re-canvass was not authorized under state regulations. Thus, no reasonable election official would believe that deciding not to re-canvass the voter cards in this election was a clear violation of Plaintiffs' constitutional rights.

### d. Official Immunity Bars Counts VI and VII Because DeKalb Defendants Lacked Actual Malice When Using DRE Machines Required by Georgia Election Law

"In the context of official immunity, actual malice means a deliberate intention to do a wrongful act." Johnson v. Randolph, 301 Ga.App. 265, 271 (2009). Plaintiffs have failed to allege any act that would show actual malice or an intent to injure. Furthermore, DeKalb Defendants merely used the DRE machines as required by state law. As the Johnson court held, compliance with the election code is enough to show that Defendants are entitled to official immunity. For these reasons, and for the reasons set forth in the State, Cobb, and Fulton Defendants' Briefs, which the DeKalb

---

[3] The Complaint does not even allege that a discrepancy or error appeared, but rather presumes that a discrepancy or error occurred, which is not the standard under any law or regulation. [Doc. 70 ¶ 157]. Furthermore, the petition to re-canvass itself only said that the voter cards may contain errors.

Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are barred by official immunity.

### e. Plaintiffs' Claims are not Justiciable

For the reasons set forth in the State, Cobb, and Fulton Defendants' Briefs, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs' claims are moot, barred by the statute of limitations, and the Plaintiffs lack standing to assert this action.

### f. Plaintiffs Fail to State a Claim for Counts VI and VII Because They Fail to Identify a Private Right Of Action

Plaintiffs argue that courts may create a new private cause of action even where the Georgia General Assembly has not provided one. In support, Plaintiffs cite McConnell v. Department of Labor, 337 Ga.App. 457 (2016). That judgment was vacated by the Georgia Supreme Court,[4] but even if McConnell was still good law it would provide no assistance to the Plaintiffs here. In McConnell, the plaintiff argued that a privacy statute created a statutory duty and a right of action by implication, *but the Court of Appeals rejected that argument*, holding that the purported cause of action "has no source in Georgia statutory or case law and ... therefore failed to state a claim." Id. at 462. Thus, Plaintiffs have failed to identify a

---

[4] McConnell v. Department of Labor, 2017 WL 4017958 (Ga. 2017).

cause of action and therefore have failed to state a claim upon which relief may be granted for Counts VI and VII.

### g. The Plaintiffs Cannot Demonstrate a Clear Right to Relief or a Gross Abuse of Discretion Entitling them to Mandamus for Counts IX and XI

#### i. Count IX

Count IX asks the Court to order Defendants to conduct elections without using DRE machines. For the reasons set forth in the State, Cobb, and Fulton Defendants' Briefs, which the DeKalb Defendants incorporate by reference as if fully stated herein, Plaintiffs have failed to state a claim upon which relief may be granted.

#### ii. Count XI

Plaintiffs argue that the decision concerning whether to re-canvass voter cards is mandatory upon the petition of three voters because Ga. Comp. R. & Regs. 183-1-12.02(7)(a) contains the word "shall." [Doc. 93 p. 59]. However, this shallow analysis does not put the word "shall" in context. As described in the DeKalb Defendants' Motion to Dismiss, the decision concerning whether to recanvass requires the Board to determine whether (a) a discrepancy appeared in the returns, and/or (b) that an error exists. This requires deliberation and the exercise of judgment. Only after these decisions have been made does the word "shall" become operative. Here,

the Plaintiffs have not alleged and identified any specific discrepancy or error, Plaintiffs have not pleaded facts sufficient to support a mandamus claim. As such, that claim should be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, and for the reasons set forth in the State, Cobb, and Fulton County Defendants' briefs, the Court should dismiss Plaintiffs' Complaint.

Respectfully submitted this 24th day of October, 2017.

LAURA K. JOHNSON
DEPUTY COUNTY ATTORNEY
Georgia Bar No. 392090

Terry G. Phillips
SUPERVISING ATTORNEY
Georgia Bar No. 576865

*/s/ Bennett D. Bryan*
Bennett D. Bryan
ASSISTANT COUNTY ATTORNEY
Georgia Bar No. 157099
Attorneys for Defendants

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Bennett D. Bryan
Assistant County Attorney
1300 Commerce Drive, 5th Floor
Decatur, GA 30030
(404) 371-3011 – Telephone
(404) 371-3024 – Facsmile
bdbryan@dekalbcountyga.gov

–20–

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING et al.,

   Plaintiffs,

vs.

BRIAN P. KEMP et al.

   Defendants.
_____

CIVIL ACTION FILE NO.
2017-CV-02989-AT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2017, I electronically filed the foregoing **<u>REPLY BRIEF IN SUPPORT OF DEKALB DEFENDANTS' MOTION TO DISMISS</u>** with the CM/ECF system which will send electronic notification to all counsel of record.

*/s/Bennett D. Bryan*
Bennett D. Bryan
ASSISTANT COUNTY ATTORNEY
Georgia Bar No. 157099