IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONNA CURLING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CA No. 1:17cv02989-AT |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN KEMP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

## I.  Plaintiffs Lack Standing.

Plaintiffs assert that they have standing because Plaintiffs in other lawsuits were not dismissed for lack of standing.  Doc. 93 at 7-11.  The fact that other Plaintiffs either alleged sufficient facts to establish standing, or that Defendants in those cases did not challenge standing, has absolutely no bearing on whether these Defendants establish standing in this case.[1]  Nor is Plaintiffs' assertion that the Court does not need to analyze standing as to each Plaintiff, since "only one party must have standing for a case to proceed," an accurate statement of law.  Doc. 93 at 14.  While a single Plaintiff may pursue an action, *each* Plaintiff in a lawsuit must establish standing.  "[A]t the pleading stage, the plaintiff must clearly . . .

---

[1] Nor do cases in state court support a finding of standing pursuant to Art. III of the U.S. Constitution.  Standing in this action is a matter of federal, not state, law.

allege facts demonstrating each element" of standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation omitted).  And standing must be demonstrated "for each claim he seeks to press and for each form of relief that is sought."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

Plaintiffs assert that "a claim is not a generalized grievance solely because the injury is shared in substantially equal measure by a large group of citizens." Doc. 93 at 8.  Defendants have not argued otherwise.  Instead, Defendants contend that Plaintiffs have not alleged that they have suffered any concrete *injury* that is causally connected to any of Defendants' conduct.

## II.   Plaintiffs Confuse Eleventh Amendment Immunity As to the Forum With Immunity From Liability.

Plaintiffs correctly recite that by removing this action to federal court, Defendants have waived immunity *as to the forum*.  However Defendants retain all defenses they would have had in state court, including immunity from liability. *Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013).  *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) is not to the contrary.  In *Lapides* the Supreme Court held that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . *in a federal forum*."  535 U.S. at 624 (emphasis added).  *Lapides* was limited to "state-law claims, in respect to which the State has explicitly waived

2

immunity from state-court proceedings."  535 U.S. at 617.  Plaintiffs incorrectly

assert that "[w]hether a case is brought under federal or state law is irrelevant to

the issue of 11th Amendment immunity against a *federal forum*."  Doc. 93 at 17

(emphasis added).  There is no *forum* immunity for federal claims, only state law

claims.  As the Supreme Court has explained, "[i]t is difficult to think of a greater

intrusion on state sovereignty than when a federal court instructs state officials on

how to conform their conduct to state law.  Such a result conflicts directly with the

principles of federalism that underlie the Eleventh Amendment."  *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  "For that reason, a federal

court may not entertain a cause of action against a state for alleged violations of

*state law*, even if that state claim is pendent to a federal claim which the district

court could adjudicate."  *DeKalb County Sch. Dist. v. Schrenko*, 109 F.3d 680, 688

(11th Cir. 1997) (emphasis added).  It is that forum immunity, i.e., immunity as to

*where* Plaintiffs' *state law claims* may be heard, that Defendants have waived by

removal, nothing more.  To the extent that Plaintiffs' claims, in state court, were

subject to dismissal for Eleventh Amendment immunity (federal claims) or state

sovereign immunity (state claims), they are still subject to dismissal after removal

to this Court.[2]  Contrary to Plaintiffs' assertions, the Eleventh Amendment

---

[2] Plaintiffs correctly state that Defendants, in their individual capacities, do not

provides immunity *from liability* for federal claims against States, state agencies, and state officials sued in their official capacities.   *Kentucky v. Graham*, 473 U.S. 159, 167-169 (1985).  Additionally, the Supreme Court has repeatedly held that Sec. 1983 *does not* abrogate Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Will v. Michigan*, 491 U.S. 58 (1989). Plaintiffs' statement that Sec. 1983 abrogates "any sovereign immunity that the defendants may enjoy under Georgia law," is wrong.  "The elements of, and the defenses to, a federal cause of action are defined by federal law."  *Howlett v. Rose*, 496 U.S. 356, 375-76 (1990).  The immunity Defendants, in their official capacities, retain for federal claims in federal court is the Eleventh Amendment.

## III.    Plaintiffs Misunderstand the State Defendants' Arguments Related to Ex Parte Young.

Plaintiffs contend that their claims fit within the *Ex Parte Young*, 209 U.S. 123 (1908), exception because they seek prospective injunctive relief.  Doc. 93 at 18.  That is one requirement for application of the *Ex Parte Young* exception, but it is not the only requirement.  Nor do Plaintiffs seek *only* prospective relief.  *See*

---

have Eleventh Amendment immunity. Defendants have not suggested otherwise. Defendants, in their individual capacities, are entitled to qualified immunity from any damages claim.  Plaintiffs, in their individual capacities, are not proper parties for injunctive relief claims.  *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989); *Edwards v. Wallace Comm. Coll.*, 49 F.3d 1517, 1524 n. 9 (11th Cir. 1995).

Doc. 70 ¶ 163 (seeking "declaratory relief deeming that Defendants *have violated* the Georgia Constitution, Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983," and other provisions of state law.) (emphasis added).  Plaintiffs also seek "nominal compensatory damages," from Defendants.  Doc. 70 ¶ 171.

Additionally, with respect to the prospective injunctive relief Plaintiffs seek against any State Defendant, *Ex Parte Young* only permits suit against a State official in their official capacity when that official has "responsibility to enforce the law or laws at issue in the suit."  *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  Plaintiffs assert that the *Grizzle* Court found "Mr. Kemp and the SEB members have the requisite responsibility related to elections to be subject to suit under the *Ex Parte Young* exception."  Doc. 93 at 20.  First, the members of the SEB were not parties in the *Grizzle* litigation, and the district court dismissed the SEB as a Defendant. 634 F.3d at 1318.  Second, the State Defendants do not contend that they may never be sued in their official capacity pursuant to the *Ex Parte Young* exception.  Rather, Defendants argue that the injunctive relief Plaintiffs seek in *this* lawsuit, i.e., prohibiting the use of DRE voting equipment, is not something either Defendant King or the members of the State Election Board has "responsibility to enforce."  *Grizzle*, 634 F.3d at 1319.  Therefore, these State Defendants do not fall within the *Ex Parte Young* exception.

Additionally, Plaintiffs' claims for retrospective relief, i.e., declaratory relief that Plaintiffs' rights have – in the past – been violated, are not subject to the *Ex Parte Young* exception. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 no. 24 (1997). Finally, to the extent that Plaintiffs' claims for prospective injunctive relief are premised solely on alleged *past* violations of federal law, and not continuing violations, the *Ex Parte Young* exception again does not apply. *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238 (11th Cir. 2014).

## IV.   Plaintiffs' Federal Claims.

Plaintiffs contend that because the right to vote is protected by the Fourteenth Amendment they have a Procedural Due Process claim. Plaintiffs simply misunderstand the elements of a cause of action for procedural due process. Plaintiffs mistakenly suggest that Defendants are arguing that Plaintiffs must somehow exhaust their state remedies. It is not a matter of exhaustion but an element of the cause of action that no adequate process, i.e., a state remedy, exists. *See Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011). Where a state remedy exists, like here, there simply is no cause of action. Nor is a state remedy inadequate merely because a claim may be barred by state immunity laws. *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1459 (11th Cir. 1985).

Plaintiffs' allegations also fail to sufficiently allege a substantive due process claim because they are premised on assertions that Defendants have violated state law and not that Plaintiffs have been denied the right to vote.  Doc. 70 at ¶¶ 61, 85.  Even if Plaintiffs were correct as to their interpretation of state law, a "[m]ere violation of a state statute does not infringe the federal Constitution."  *Snowden v. Hughes*, 321 U.S. 1, 11 (1944).

Plaintiffs cite to numerous election cases where courts have held that Plaintiffs, in those cases, sufficiently alleged constitutional violations and suggest that Plaintiffs here have therefore sufficiently alleged a violation.  However, the allegations here do *not* include allegations of racial discrimination.  *Compare Black v. McGuffage*, 209 F. Supp. 2d 889 (N.D. Ill. 2002); *Common Cause Southern Christian Leadership Conference v. Jones*, 213 F. Supp. 2d 1106 (C.D. Cal. 2001).  Nor do Plaintiffs here allege that they were unable to cast a ballot. *Compare  Dunn v. Blumstein*, 405 U.S. 330 (1972) (imposition of residency requirement); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) (allegations that voters were unable to cast ballots or were made to wait 9 hours to cast a ballot where only 1 voting machine was working).  Plaintiffs do not allege that one single vote in *any* prior election was not cast correctly.  Instead, they ask the Court to "presume" that DRE machines are not reliable.  Doc. 70 at

7

¶¶ 62, 73, 74, 123, 124, 157, 162, 164, 170.  Here, Plaintiffs have not alleged any burden on their right to vote by use of DREs, absent criminal conduct, and have therefore failed to sufficiently allege a federal constitutional claim.  But even if this Court found that Plaintiffs' right to vote was burdened, that burden is not severe, and the State's interests in complying with the HAVA is sufficient to justify any minimal burden.  *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003).

Finally, Plaintiffs cite numerous election cases where, because different counties within a state were using different ballot methods or methods of counting ballots, an Equal Protection violation was established.  Doc. 93 at 47.  These cases are not applicable here because the same system of voting is used statewide.

## V.     The State Defendants Are Entitled to Qualified Immunity.

Defendants, in their individual capacities, are entitled to qualified immunity from Plaintiffs' federal constitutional claims for nominal damages.  Plaintiffs assert that Defendants are not entitled to qualified immunity because it is clearly established that Plaintiffs have a right "to have their votes counted and to have their votes valued equally to those of other electors."  Doc. 93 at 29.  Whether the law is clearly established looks to whether the Defendants had fair notice that their conduct was unlawful.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  General principles of law are not specific enough to provide fair warning.  *Mercado v. City*

*of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  For the law to be clearly

established to the point that qualified immunity does not apply, it must have been

developed in such a concrete and factually defined context to make it obvious to all

reasonable government actors, in the government official's place, that "what he is

doing violates federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, where the Georgia Supreme Court has previously upheld the use of DRE

machines for Georgia elections, Defendants could not be on notice that continued

use of those DRE machines somehow violated Plaintiffs' federal constitutional

rights.  *See Favorito*, *supra; Wexler v. Anderson*, 452 F.3d 1226 (11th Cir. 2006),

*cert. denied*, 549 U.S. 1111 (2007).

**VI.  Plaintiffs' State Law Claims**

**A.    Counts 6, 7, and 10 Are Barred by Sovereign Immunity**.

Numerous cases in Georgia and elsewhere make clear that a party cannot

evade the bar of sovereign immunity through pleading devices naming a state

officer or employee in an "individual," rather than an "official capacity."  *See* Doc.

83-1 at 14-26 and authorities cited therein.   If the relief sought will control the

actions of the State, affect State property or funds, or subject the State to liability,

the real party in interest is the State, notwithstanding the fact that the nominal

defendant is a state officer or employee sued in an individual capacity.   When the

9

suit is in substance and reality a lawsuit against the State, the lawsuit may proceed *only* when the plaintiff satisfies its affirmative burden of demonstrating the existence of an explicit waiver of sovereign immunity.

The Georgia Supreme Court recently acknowledged this well established principle in *Lathrop v. Deal* when in quoting from its decision in *Roberts v. Barwick*, 187 Ga. 691, 695 (1939), it held that "any case, regardless of who are named parties thereto, that could result in judgment or decree that would in any manner affect or control the property or action of the State, in a manner not prescribed by statute, is a suit against the State and cannot be brought without her consent." *Lathrop*, 2017 Ga. LEXIS 529 at *9 (2017).  As discussed in the State Defendants' opening brief [Doc. 83-1 at 16-22], the *Lathrop* court endorsed the analysis in numerous cases where Georgia courts made clear that it is the substance and nature of the claims – and not the plaintiff's party designation – that determines whether the lawsuit is against the State and thus actionable only where there is a waiver of sovereign immunity.  *See Cannon v. Montgomery*, 184 Ga. 588 (1937); *Musgrove v. Georgia R.& B.,* 204 Ga. 139 (1948); *Holcombe v. Georgia Milk Producers Confederation*, 188 Ga. 358 (1939);  *Peters v. Boggs*, 217 Ga. 471 (1961) (all cited in *Lathrop*).  Plaintiffs make *no* attempt to discuss this body of case law or explain how this lawsuit does not in fact seek to control state action

and state property, given their request to enjoin the use of currently existing DREs (state property) and undertake costly efforts to notify registered voters. (Doc. 70 at ¶¶ 112, 125; 154).

Plaintiffs also make *no* attempt to point to the existence of a waiver of sovereign immunity in the Georgia Constitution, the Georgia Election law, or the Georgia Personal Identity Protection Act ("PIPA") to authorize the claims in Counts 6, 7, and 10, respectively.  It is "axiomatic that the party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver." *Georgia Dept. of Comty. Health v. Neal*, 334 Ga. App. 851, 855 (2015).  Contrary to Plaintiffs' erroneous assertion that sovereign immunity includes "broad exceptions" [Doc. 93 at 22], Georgia courts have stated precisely the opposite: "'[S]tatutes providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed against a finding of waiver.'" *Columbus Consolidated Gov't v. Woody*, 342 Ga. App. 233, 237-238 (2017);  *see also GDC Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299 (11th Cir. 2017) ("explicit waivers of sovereign immunity are narrowly construed in favor of the sovereign and are not enlarged beyond what the language requires.")

In order to qualify as a waiver of sovereign immunity, the language must be explicit and "'*specifically* provide that sovereign immunity is waived *and* the

extent of such waiver.'" *Anstadt v. Board of Regents of the University System of Georgia*, 303 Ga. App. 483, 487 (2010) (emphasis in original, internal citations omitted). "Waivers of sovereign immunity are not to be implied." *Id.* Here, there is *nothing* in the language of Article II, Section I, Paragraph I of the Georgia Constitution (Count 6), nothing in the cited Election Code provisions, O.C.G.A. §§ 21-2-379.1, 379.7, and 379.9 (Counts 6 and 7) and nothing in PIPA, O.C.G.A. § 10-1-910, et seq. (Count 10) to authorize suits against the State. This case does not, therefore, require the Court to interpret language in order to determine whether a waiver exists because there is *no language whatsoever* in any of the statutory or constitutional provisions authorizing suit against the State. Thus, if Counts 6, 7, and 10 are properly suits against the State, it is clear – and not even disputed by Plaintiffs – that sovereign immunity will bar the claims, regardless of the artful drafting of the Plaintiffs.

      1.  <u>Counts 6, 7, and 10 Cannot Proceed as Individual Capacity Claims</u>.

      Plaintiffs conspicuously refuse to explain why the claims are not in substance claims against the State; instead, their only response is to quote one sentence from *Lathrop* for the proposition that sovereign immunity does not bar individual capacity claims. Doc. 93 at 23. Plaintiffs are correct that sovereign immunity does not bar individual capacity claims (although such claims may be

barred by official immunity); however, as discussed above, sovereign immunity *does* bar the claim if it is in effect and substance against the State.   Sovereign immunity cannot be circumvented by simply adding the words "individual capacity" in the caption, or sovereign immunity would cease to exist.

In *Lathrop*, the Supreme Court made clear that a party *cannot* do what Plaintiffs are attempting here -- circumvent sovereign immunity by pleading an individual capacity claim when the suit seeks to control state property or state action.  *Lathrop*, 2017 Ga. LEXIS 529 at *9-18.  The Georgia Supreme Court in *Lathrop* recognized that individual capacity suits were appropriate in one type of case not applicable here: where the officer or employee "'ha[d] committed or threaten[ed] to commit wrong or injury to the person or property of the plaintiff either without right and authority or contrary to the statute under which they purport to act.'" *Id.* at *47, *11-12 (internal citations omitted).

Plaintiffs' claims are not like the individual capacity claims discussed in *Lathrop*.  Plaintiffs are not alleging that the State Defendants are taking enforcement actions against them based on a statute that they allege to be unconstitutional, nor are they contending that any State Defendant took actions without lawful authority and beyond the scope of official power.  The Secretary of State *is* authorized by law to administer a DRE voting system and to select voting

13

equipment for State-wide use.  O.C.G.A. §§ 21-2-50(15).[3]  Thus, there can be no dispute that the Secretary has acted within the bounds of his legal authority, and the parties disagree only on the appropriateness and reasonableness of actions that the Secretary *is* legally authorized to undertake.  Because this case is not seeking "injunctive and declaratory relief from the enforcement of laws that are alleged to be unconstitutional" [*Lathrop*, 2017 Ga LEXIS 529 at *49], it does not fall within the exception for individual capacity suits discussed in *Lathrop*.

Plaintiffs' claim that "sovereign immunity under state law includes an exception analogous to *Ex Parte Young*" [Doc. 93 at 23] reflects confusion.  First, *Ex Parte Young* stands as an exception to the State's *11th Amendment immunity*, which authorizes a federal claim against a state official in his official capacity for prospective injunctive relief based on an alleged violation of federal law.  It does not create an "exception" to the State's *sovereign immunity* under *state* law. *Seminole Tribe of Florida v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1243 (11th Cir. 2014) (plaintiff "cannot circumvent the sovereign immunity [of a State] by suing [state official] based on the decision in *Ex Parte Young*.")

---

[3] The Second Amended Complaint makes several allegations relating to CES Director King and the State Election Board that reflect a lack of understanding about those State Defendants' legal authority.  For example, Defendant King did not "deploy" a voting system, nor is he authorized to do so [Doc. 70 at ¶ 112], and the State Election Board lacks the authority to remove DREs. [Doc. 70 at ¶ 143].

14

Moreover, to the extent that Plaintiffs are attempting to compare a federal claim for prospective injunctive relief authorized by *Ex Parte Young* with a state law individual capacity claim for injunctive relief as discussed in *Lathrop*, there exists an important distinction between these claims: An *Ex Parte Young* claim is brought against the state officer in an *official capacity* whereas under *Lathrop*, a claim for prospective injunctive relief against a state officer based on enforcement of an allegedly unconstitutional state statute is an *individual capacity* claim, with the state officer facing potential personal liability for his or her acts.  The "individual capacity" suit discussed in *Lathrop* thus involves a far narrower category of case than that at issue in the *Ex Parte Young* scenario because it is limited to *ultra vires* acts where the state employee may be held personally liable for his or her alleged unlawful conduct.

### 2.  "Official Immunity" Applies Only if the Court Allows the Claims To Be Brought As Individual Capacity Claims.

Contrary to Plaintiffs' suggestion [Doc. 93 at 23-25], the State Defendants are not arguing that the doctrine of "official immunity" should be applied to this case.  Official immunity under the Georgia Constitution applies to claims against state officers or employees sued in their individual capacity, and it bars claims for damages and retrospective relief.  *See* GA. CONST. Art. I, Sec. II, Para. IX(d); *Lathrop*, 2017 GA. LEXIS 529 at *48.  If a state officer or employee is sued in an

*official* capacity, the suit is deemed to be a suit against the State [*see Cameron v. Lang*, 274 Ga. 122, 126 (2001)], in which case, *sovereign immunity*, and not *official* immunity, is the immunity that could potentially bar the action.  *See City of Atlanta v. Mitcham*, 296 Ga. 576, 582 (2015) (discussing distinction between official immunity and sovereign immunity).  The State Defendants' position is that this lawsuit is in substance and reality a suit against the state officers and employees in an official capacity and cannot proceed as an individual capacity suit.  Thus, sovereign immunity, and not official immunity, bars the claims.

The State Defendants are merely arguing, in the alternative, that if this Court were to rule that Counts 6, 7, and/or 10 may proceed as individual capacity suits, then, in that event, official immunity would apply, and those claims would be barred because they are based on past acts and thus seek retrospective relief. *Lathrop*, 2017 GA. LEXIS 529 at *48; *see also* Doc. 49-1 at 21-23; Doc. 83-1 at 26, n.13.

**B.      Counts 6, 7, and 10 Should Be Dismissed For Failure to State a Claim.**

Counts 6, 7, and 10 are also subject to dismissal because there is no private right of action based on the allegedly violated constitutional and statutory provisions.  [Doc. 83-1 at 37-42].  With respect to the constitutional claim (Count 6), numerous cases have held that "Georgia has 'no equivalent to 42 U.S.C. § 1983

16

which gives a claim against a state officer individually for certain unconstitutional acts.'" *Davis v. Standifer*, 275 Ga. App. 769, 772, n. 2, citing *Howard v. Miller*, 222 Ga. App. 868, 872 (1996).  Plaintiffs make no attempt to discuss or distinguish this authority, but merely argue that in *Favorito v. Handel*, 285 Ga. 795 (2009), the constitutional claim based on use of DREs (dismissed on summary judgment) was not dismissed for lack of a private right of action. [Doc. 93 at 54].  While the lack of a private right of action could have provided yet another basis to dismiss the claim in that case, the fact that the dismissal in that case was not premised on a ground never raised by the litigants obviously does *not* stand for the proposition that there *is* a private right of action based on a violation of the Georgia Constitution.  *See Palmer v. State*, 282 Ga. 466, 468 (2007) ("It is axiomatic that the decisions of this Court do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion.")

With respect to the claims based on alleged violations of provisions of the Election Code and PIPA (Counts 7 and 10), the State Defendants' Brief cited case law setting forth the "'longstanding precedential authority rejecting the creation of implied private rights of action.'" *Bellsouth Telecommunications v. Cobb County*, 342 Ga. App. 323, 326 (2017), (internal citations omitted).  Plaintiffs' contention that this principle is somehow limited to cases involving violations of *penal*

17

statutes [Doc. 93 at 53] is plainly incorrect.  Numerous Georgia cases have rejected implied causes of action in cases involving alleged violations of *civil* statutes.  *See Bellsouth* 342 Ga. App. at 328 (9-1-1 Act); *Wells Fargo Bank v. Jenkins*, 293 Ga. 162, 165 (2013) (federal banking statute).

Plaintiffs also distort State Defendants' position when they claim that the State Defendants relied upon O.C.G.A. § 9-2-8(a) to argue against a private right of action [Doc. 93 at 54].  Instead, the State Defendants argued correctly that the Georgia courts have stated that the existence of this statute "counsels against deviating from our established precedent to find new implied civil causes of action," even with statutes that were enacted prior to 2010.  *Bell South Telecommunications*, 342 Ga. App. at 326 (considering legislative intent underlying § 9-2-8(a) in declining to recognize private right of action in pre-2010 statute).

### C.   The Mandamus Claims in Counts 8, 9, and 11 Should be Dismissed.

1.   <u>The Secretary Has No Mandatory Duty to Re-Examine the DREs.</u>

The mandamus claim in Count 8 fails because the Secretary has no mandatory legal duty to re-examine the DREs unless he has been requested to do so by ten or more electors who have paid reasonable costs. O.C.G.A. § 21-2-379.2(a).  Plaintiffs argue that because the Secretary has exercised his *discretion*

under the Election Code to re-examine the voting system at no cost to electors, the statutory requirement that costs be paid before the re-examination must occur should be read out of the statute, and the law re-written to impose a new mandatory duty to conduct a re-examination when costs have *not* been paid.

Here, a plain reading of O.C.G.A. § 21-2-379(b) shows a legislative decision that the Secretary's mandatory duty to undertake a requested re-examination is not triggered unless and until the requestors pay reasonable costs. The Secretary's discretionary determination to re-examine voting equipment, without charge to requesting electors, does not convert this discretionary act into a mandatory duty.

In response to the argument that the mandamus claim is moot given that the Secretary is conducting a re-examination, Plaintiffs argue that mandamus is still warranted because the examination has not been completed "on a timely basis" [Doc. 93 at 57]: The statute imposes no mandatory duty on the Secretary to complete re-examinations within a specified time, and, therefore, no mandamus relief could include a completion date certain.

2. The State Election Board Must Be Dismissed From Count 9.

The State Board is not a proper party to a mandamus action under the well-established rule that mandamus actions may only be brought against public officials in their official capacity and may not be brought against the office or the

employing state agency. [*See* Doc. 83-1 at 49 and authorities cited therein].   The

Plaintiffs concede this point by making no opposition.

3.   Counts 9 and 11 Fail Because the State Defendants Are Not
       "Superintendents" as Defined in the Election Code.

Plaintiffs make no arguments in response to the State Defendants' argument

[Doc. 83-1 at 46-48] that they cannot be liable in Counts 9 or 11 because they are

not "superintendents" under O.C.G.A. § 21-2-334 and Ga. Comp. R. & Regs. 183-

1-12-.02(7)(a), a term which is defined in the Election Code to refer to various

county or municipal employees and expressly excludes state agencies or officials.

O.C.G.A. § 21-2-2(35).   Plaintiffs' Brief contains no argument in opposition and

thus also concedes that point.

## CONCLUSION

For the foregoing reasons, the State Defendants pray that all claims against

them be dismissed.

Respectfully submitted,

CHRISTOPHER M. CARR
Attorney General                         112505

ANNETTE M. COWART               191199
Deputy Attorney General

RUSSELL D. WILLARD            760280
Senior Assistant Attorney General

/s/Cristina M. Correia
CRISTINA M. CORREIA          188620
Assistant Attorney General


/s/Elizabeth A. Monyak
ELIZABETH A. MONYAK          005745
Assistant Attorney General


JOSIAH B. HEIDT              104183
Assistant Attorney General

Georgia Department of Law
40 Capitol Square SW
Atlanta, GA  30334
404-656-7063

Attorneys for State Defendants

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square SW
Atlanta, GA  30334
ccorreia@law.ga.gov
404-656-7063
404-651-9325

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendants' Brief in Support of Motion to Dismiss was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

/s/ Cristina Correia
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO**

**DISMISS** with the Clerk of Court using the CM/ECF system, which will

automatically send email notification of such filing to all attorneys of record.

This 30th day of October, 2017.

/s/ Cristina Correia
Assistant Attorney General