```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,          :
                                     :
 5            PLAINTIFFS,            :
     vs.                             :   DOCKET NUMBER
 6                                   :   1:17-CV-2989-AT
     BRIAN P. KEMP, ET AL.,          :
 7                                   :
              DEFENDANTS.            :
 8

 9

10      TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11         BEFORE THE HONORABLE AMY TOTENBERG

12            UNITED STATES DISTRICT JUDGE

13                  NOVEMBER 7, 2017

14                    10:35 A.M.

15

16

17

18

19

20

21   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22              TRANSCRIPT PRODUCED BY:

23
     OFFICIAL COURT REPORTER:      SHANNON R. WELCH, RMR, CRR
24                                 2394 UNITED STATES COURTHOUSE
                                   75 TED TURNER DRIVE, SOUTHWEST
25                                 ATLANTA, GEORGIA  30303
                                   (404) 215-1383
```

```
1              A P P E A R A N C E S   O F   C O U N S E L

2

3    FOR THE PLAINTIFFS:

4
         BRYAN MYERSON WARD
5        HOLCOMB & WARD, LLP

6        JOE ROBERT CALDWELL, JR.
         STEPTOE & JOHNSON, LLP
7

8    FOR THE STATE OF GEORGIA DEFENDANTS:

9
         ROY E. BARNES
10       JOHN FRANK SALTER, JR.
         THE BARNES LAW GROUP, LLC
11
     FOR THE FULTON COUNTY DEFENDANTS:
12

13       KAYE WOODARD BURWELL
         CHERYL RINGER
14       DAVID R. LOWMAN

15
     FOR THE DEKALB COUNTY DEFENDANTS:
16

17       BENNETT DAVIS BRYAN
         DEKALB COUNTY DEPARTMENT OF LAW
18

19   FOR THE COBB COUNTY DEFENDANTS:

20
         DANIEL WALTER WHITE
21       HAYNIE LITCHFIELD CRANE & WHITE

22

23   FOR MERLE KING:

24       ROBERT S. HIGHSMITH
         GRANT SCHNELL
25       HOLLAND & KNIGHT, LLP - ATL
```

1              **P R O C E E D I N G S**

2      **(Atlanta, Fulton County, Georgia; November 7, 2017.)**

3              COURTROOM DEPUTY CLERK:  Good morning, Counsel.  This

4      is Amy McConochie, Judge Totenberg's courtroom deputy clerk.

5      The Court is joining the conference call in Civil Action Number

6      1:17-CV-2989.  That is the case of *Curling vs. Kemp*.

7              Counsel, it sounds like we have a lot of participants

8      on the call.  So I'm going to remind you that when you start

9      speaking you need to announce your name first so that both

10     Judge Totenberg and the court reporter, Ms. Welch, will know

11     who is speaking at any given time.

12             Now I'm going to ask you-all to please introduce

13     yourselves.  So we will have a basic roll call starting with

14     plaintiffs' counsel.  And then Judge Totenberg will be on the

15     line with you.  Thank you.

16             MR. CALDWELL:  For plaintiffs, it is Joe Caldwell,

17     Ms. McConochie.

18             COURTROOM DEPUTY CLERK:  Thank you.

19             MR. BARNES:  This is Roy Barnes and John Salter.  We

20     represent Kemp -- Secretary Kemp and the Board of Elections.

21             MR. WARD:  This is Bryan Ward for plaintiffs as well

22     from Holcomb & Ward.  And I know on the line as well is Marilyn

23     Marks for the Coalition of Good Governance -- Coalition for

24     Good Governance.  Excuse me.

25             MR. WHITE:  Daniel White is here for Cobb County

1    Board of Elections.

2            MR. BRYAN:  Bennett Bryan is here for all the Dekalb

3    County defendants.

4            MS. BURWELL:  Kaye Burwell, Cheryl Ringer, and David

5    Lowman for Fulton County.

6            THE COURT:  Is that it?  This is Judge Totenberg.

7            MR. HIGHSMITH:  This is Robert Highsmith and Grant

8    Schnell representing Merle King.  We have not yet formally

9    entered an appearance but will be doing so later this

10   afternoon.

11           THE COURT:  I'm sorry.  State your name again since I

12   didn't have it in front of me.

13           MR. HIGHSMITH:  Robert Highsmith, H-I-G-H-S-M-I-T-H.

14           THE COURT:  All right.

15           MR. HIGHSMITH:  And Grant Schnell, S-C-H-N-E-L-L.

16           THE COURT:  All right.  Very good.  Just one second.

17           **(There was a brief pause in the proceedings.)**

18           THE COURT:  All right.  Well, I asked for this phone

19   conference both because of the change of counsel and because of

20   the request on the plaintiffs' part to file a motion on

21   spoliation and just to sort of check in regarding what is

22   happening in the case.

23           We're in a weird posture of the case relative to the

24   spoliation issue that the plaintiffs raised.  And technically,

25   of course, if you want that motion in front of me, I absolutely

1    do need a motion.  But at the same time, I want to recognize

2    the reality that is a complicated one.

3           On one hand, the defendants did represent to the

4    Court that there was a preservation agreement and that you --

5    and there was a lot of discussion about preservation including

6    as to the State server is my recall.  And on the other hand,

7    I'm in the position that I have so far stayed discovery in

8    order to deal with immunity issues.

9           So -- and, you know, I may end up just dealing with

10   immunity issues first so that we can get going one way or the

11   other or find out that I don't have jurisdiction because of

12   that.  But it is immunity and jurisdiction issues that are the

13   preeminent reasons why the Court has stayed discovery.  And

14   then that sort of relates to the spoliation issue.  And yet I

15   still have a duty to ensure that evidence is not destroyed

16   here.

17          So I would like to know at this point what has the

18   State done to address the wiping of the data from the central

19   server operated by the Center for Election Systems.

20          MR. SALTER:  This is John Salter for the record with

21   the Barnes Law Group.  Your Honor, we made an appearance on

22   Friday, and we are getting up to speed on the case, including

23   the motions.  There was -- we have been -- I think we just --

24   there was a report that was actually issued by the Secretary of

25   State.

1          It does appear that it is kind of a complicated issue

2    as to whether or not this particular server, which we don't

3    think was the central server -- and we don't think it had any

4    information that would actually, you know, lead to add

5    (undiscernible).  By the way the plaintiffs describe it --

6          THE COURT:  All right.  Talk slower and closer to the

7    phone.

8          MR. SALTER:  (Undiscernible.)

9          THE COURT:  Stop.  Stop.  I'm sorry.  Mr. Salter, I

10   can't hear you.  So just be sure you're close to the phone and

11   speak slowly enough.  Because somehow because of all the people

12   on the phone, it is very murky when you are speaking.

13         All right.  So just go slow enough so that we're

14   going to be able to -- if the words are unclear that we can

15   have a chance at getting them.  Thank you.

16         MR. SALTER:  Okay.  We don't -- let me shorten it up

17   for you, Your Honor.  I don't think that what happened at

18   KSU -- my understanding -- and, again, those aren't my clients

19   in the case.  But my understanding is that what they did

20   regarding this particular server was -- I believe it was even

21   known about or referenced in attachments to the very first

22   complaint that the plaintiffs filed.  I think it was known by

23   all parties, as far as I understand, that this particular

24   server involved in the March incident was going to be

25   repurposed and taken out of circulation for the purposes that

1    it was used at CES.  That is my very preliminary understanding.

2         Again, I am still getting up to speed on all that is

3    going on, all of the different iterations of the allegations,

4    which, of course, will define what is, quote-unquote, evidence

5    in the case.

6         I would also point out that when we get litigation

7    hold letters we look at those.  People in litigation do.  And

8    they generally rely on what is delineated out in that letter

9    and compare it with the allegations as they exist at the time.

10        The fact that the allegations have been kind of a

11   moving target with the different amendments and so on and so

12   forth --

13        THE COURT:  All right.  I don't want you to be making

14   a full argument on spoliation.  I'm not accusing anyone of

15   spoliation at all.  I'm asking a simple question, which was

16   what has the State done to address the wiping of the data from

17   the central server either by -- at the Center for Election

18   Systems.

19        I'm not saying that -- you made a lot of different

20   arguments.  I didn't ask for any of that.  I'm just trying

21   because we're not -- there is a lot I can't do in this case

22   until I rule on the jurisdiction issues.

23        On the other hand, I do have an obligation to make

24   sure that we're not going further into the hole and find out

25   what is being done.  And I don't need to know about everything.

1  But I do need to know that I'm not sitting here while nothing

2  is happening to deal with a very serious issue.

3          MR. SALTER:  Judge --

4          THE COURT:  So if somebody has something -- actually

5  real information to provide me, that is what I want to hear,

6  including what has the State learned from the FBI, what is the

7  status of that, what is the length of time it is going to be to

8  find out what is available from the State.  That is what I'm

9  looking for.  Not who is at fault, that something was raised

10  earlier, or anything else.

11          I know that Mr. Salter and Mr. Barnes and others

12  weren't here in prior phone calls.  But it was my certain

13  understanding that there were some clear preservation requests

14  that would be applicable here.  I may be in error.  But I'm not

15  trying to resolve that part now.  I'm really just trying to

16  say:  What has happened?

17          MR. HIGHSMITH:  Your Honor, Robert Highsmith on

18  behalf of Merle King at the Center for Election Systems.  Like

19  the Barnes Law Group, we were only engaged Friday.  And so we

20  are working diligently to be prepared to give a full answer to

21  the Court's question.

22          It is my understanding that -- and I will only say

23  one sentence about the substantive issue of spoliation because

24  I heard Your Honor.  It is our conclusion at this point that

25  nothing on that server even in July was relevant to the claims

1    then pending or that could have been reasonably anticipated to

2    be pending before the Court.

3              That said, we are prepared to reach out to the FBI by

4    subpoena, if necessary, to obtain the forensic image that we

5    believe exists of the server and obviously with the new claims

6    and new litigation hold information that the State law

7    department received on September 29th and, of course, moving

8    forward with us now representing Mr. King, you know, to

9    preserve all evidence as we are required to do under the

10   Court's rules and the litigation hold notices that we received

11   and when we have received them.

12             At this point, Your Honor, that is the sum total of

13   Holland & Knight's knowledge of the matter.

14             THE COURT:  All right.

15             MR. BARNES:  This is Roy Barnes.  Could I say one

16   thing following up?

17             THE COURT:  Yes.

18             MR. BARNES:  Okay.  First -- excuse me -- I agree

19   with what Robert says from our initial investigation.  However,

20   you know, you need -- the plaintiff needs to say -- I mean,

21   we're not destroying anything.  But, you know, it is an

22   ongoing -- we are having an election today.  For example, 400

23   elections are happening today.

24             The plaintiff needs to tell us exactly what they are

25   saying that is in writing -- and I would suggest to you that it

1    should be by motion -- exactly what it is that we're to

2    preserve.

3              As I read the complaint and its iterations, I mean,

4    none of -- what happened at KSU was not relevant to this

5    complaint as Mr. Highsmith has spoken out.  But I don't want to

6    have an inadvertent something that is claimed as spoliation.

7    Exactly what is it?  Exactly what is it that needs to be

8    preserved?

9              I mean, we're running -- the State is running

10   elections all the time, and there is information that is going

11   back and forth.  And just an amorphous saying, well, preserve

12   all evidence -- what is the evidence?  Tell us what the

13   evidence is, and we will seek to preserve it.

14             I mean, nobody is trying to destroy anything.  And --

15   but we need some certainty, and that is the reason -- and we

16   want a record built also.  And that is the reason that they

17   should file a motion or at least give a notice.  These are the

18   specific things that we want done -- that we want preserved.

19   Because you just can't stop the whole State of Georgia and say

20   don't touch anything with any computer because they are all

21   used in elections.

22             THE COURT:  Mr. --

23             MR. CALDWELL:  Your Honor, this is Joe Caldwell for

24   the plaintiffs.  I will say that I sent a litigation hold

25   letter that was dated September 12th to all parties.  I'm

1    hearing from some of them that they say they received it on

2    September 29th.  But it was very, very specific.

3            I know that prior to our entry into the case in late

4    August that Bryan Ward's firm representing the plaintiffs at

5    that time had a litigation hold letter that was circulated in

6    or around July 25th, I believe it was.  Those were very

7    specific.

8            But with respect to the CES server, the argument from

9    defendants that it is not related is one that remains

10   unexplained to us.  That server was the central server that

11   programmed the other connections to it, both the GEMS servers

12   of the counties, the DREs, et cetera.  And to the extent that

13   it is plaintiffs' desire to try to determine if there were

14   vulnerabilities in the electronic voting systems, that server

15   was clearly central.

16           It sounds, Your Honor, like from the comments of

17   counsel that still the State has not served its subpoena on the

18   FBI.  And even if it has served its subpoena on the FBI, that

19   subpoena doesn't go far enough.  That subpoena seeks to obtain

20   a copy of the forensic image that was taken by the FBI during

21   the period of March 3rd to March 17th.

22           But there is additional information that the FBI may

23   have related to that server that we also want to have

24   preserved.  We're not asking that it be produced at this time

25   either in response to the subpoena or to us.  Nor are we saying

1    that it is admissible at this time.

2          What we're merely saying is that it needs to be

3    preserved at this time for later determination about whether

4    there is something that is relevant to this litigation within

5    that computer.

6          If at this point no subpoena has been served, then we

7    remain as vulnerable now as we were at the time that we brought

8    this to the attention of the Court.

9          THE COURT:  All right.  Well, let me ask -- let me

10   ask the parties this.  We have a bunch of new counsel.  And I

11   know you're coming up to speed.  But -- and you'll have to come

12   up to speed very quickly.

13         But is there any reason why you-all can't have a

14   phone conference and actually focus on whatever has been

15   requested now?  If there is something that the defendants are

16   seeking clarification about, ask directly the plaintiffs'

17   counsel to do that.  If you want, you can have a court reporter

18   there so that you-all just have a very clear record of what

19   you're talking about.  It is not necessary.  But it is a

20   feasible thing so that there is no confusion about it.

21         But is there any reason why you can't do that?

22   Basically all the letters that -- the plaintiffs can provide

23   you again all the letters that have been provided in case there

24   is any confusion about that and any e-mails that might still

25   have confirmed what was going to happen, what the agreement

1    was, and if it preceded the July 25th date as well.  And you

2    have a phone conference and really -- because you are all in

3    different places, and you allocate enough time to really hammer

4    this out.

5            Is there -- what is the problem with that, if any?

6            MR. CALDWELL:  Your Honor, again, Joe Caldwell for

7    the plaintiffs.  I would be willing to circulate to opposing

8    counsel a draft preservation order so that we could use it as a

9    basis.  And then we can all submit our respective amendments to

10   it and discuss in the hopes of submitting it to the Court.  So

11   that within the next two or three days, we could have it to the

12   Court so that a preservation order could be entered.

13           I would still worry about what is in the FBI's

14   possession about whether they are or are not deleting data on

15   their copy of the server's data.  But we can certainly

16   circulate that draft order.

17           THE COURT:  Well, you could come to some agreement

18   about the scope of whatever the subpoena is that is going to be

19   sent included in that.  I can't -- obviously, the FBI is not

20   before me.  But at least agreeing as to the scope of the

21   subpoena would make a difference.

22           All right.  What is the defendants' position as to

23   that?

24           MR. BARNES:  Your Honor, Number 1 -- I'm sorry.  This

25   is Roy Barnes.  Number 1 is he can circulate, you know,

1  whatever he wants.  But I want this to follow the rules of the

2  court.  Make a motion.  Show why that is relevant.  Let us

3  reply.  Let the -- and if it requires an evidentiary hearing,

4  then the Court can have one and make the ruling.

5           This business of just saying, well, preserve

6  everything and for no reason and for -- in trying to hamper the

7  ongoing operation of the State Board of Elections seems a

8  little bit too broad.

9           Number 2, if counsel has a problem with the FBI, he

10 needs to contact the FBI too.  I don't -- I'm not a conspiracy

11 fellow.  I don't believe the FBI is over there in some kind of

12 big conspiracy.  I mean, he can contact the FBI.

13          Sometimes they don't even pay attention to federal

14 judges.  And so I don't -- but I don't believe they destroyed

15 any kind of evidence.  They came in and mirrored the server.

16          THE COURT:  I don't know that they did.

17 Mr. Barnes -- Governor Barnes, I don't know that they mirrored

18 the server.  I don't know any of that.  And I just want to

19 interrupt you, in fact.

20          I understand I can have a hearing and do all of this.

21 But it seems almost unlike you, frankly, not to at least have a

22 phone -- have an actual substantive conversation.  I don't know

23 that they are asking for the world.  And maybe you are right.

24          But why wouldn't the preliminary thing before you-all

25 spend -- basically burn up another forest be simply to have a

1    true conversation and really try to figure out whether you can

2    resolve something that is going to work for this case and also

3    not hamper -- excessively hamper the State.

4              Yes, the State has elections.  Of course, the real

5    election is today.  We're not talking about necessarily

6    forever.  But why wouldn't you -- I don't understand why you

7    wouldn't at least sit down and see as new counsel whether there

8    is something you could hammer out that works?  And you of all

9    people are extremely gifted in the art of the deal.

10             MR. BARNES:  Well, I don't have any -- I don't have

11   any problem with that.  But what I'm saying is:  Before any

12   order is entered, I want to be sure that we're heard about that

13   with the proper procedures.

14             I mean, we don't have any problem in preserving

15   things.  I mean, we don't have any problem whatsoever.  And we

16   have preserved.  But I just -- what I don't like is, you know,

17   sending e-mails to the Court, and then it precipitating all of

18   this without some -- I mean, why didn't counsel send me that to

19   start with?  This is what we want preserved.  And we have tried

20   to abide by that.

21             Now, Robert Highsmith, I think, may have something

22   because I heard him trying to get in.

23             MR. HIGHSMITH:  I'm sorry, Governor.  I didn't mean

24   to step on you.

25             MR. BARNES:  That is all right.  No.  No.  No.

```
 1              MR. HIGHSMITH:  Your Honor, we hear you.  And
 2   absolutely for Mr. King -- this is -- again, this is Robert
 3   Highsmith for Mr. King.  We absolutely are willing to confer
 4   with Mr. Caldwell about these issues.  We absolutely believe
 5   that it is appropriate for him to reach out to us and say,
 6   you're the new counsel.  Let's talk about what we need to do.
 7              Instead of doing that, Mr. Caldwell e-mailed the
 8   Court on Thursday, the day before we were engaged, and even on
 9   today's call seems to think that the only solution to any of
10   this is a -- is an order of the Court.  That is obviously the
11   Court's -- the Court's decision to make.
12              But to answer the question the Court posed, yes,
13   absolutely we are willing to confer with plaintiffs' counsel
14   and iron out, you know, what is to be preserved going forward.
15              THE COURT:  All right.  Well, all I will say is this.
16   I would never rule on anything as to spoliation, which has so
17   many significant consequences, without a proper motion.  But it
18   is normal in this court for parties to engage in discussions
19   regarding protective orders that include preservation terms and
20   to prepare consent orders for the Court to sign in that
21   context.  And that is kind of an everyday business.  And I
22   think you-all know that.
23              So I wasn't viewing it as -- this item that I have
24   raised as one dealing with spoliation but simply with
25   preservation and protection of the evidence, without making any
```

1   judgments as to -- as to spoliation claims.  But preservation

2   of the evidence for whatever -- you know, for whatever has

3   happened is essential to the integrity of the legal process and

4   if it is, in fact, relevant evidence or potentially relevant

5   evidence.

6           And we just don't know.  You know, new counsel,

7   respectfully, you can't know either at this juncture.  So that

8   is why I'm encouraging you to do this.  Not because of just

9   simply the letter.  There was a lot of things going on.  I was

10  getting their letter.  I was getting new counsel -- new

11  counsel's appearance in the case.

12          It made all of this a lot -- basically rise to the

13  top in saying I need to have a phone call with you-all.  So if

14  you can do that this week, that would be extremely helpful.

15  And then you can -- whatever you think at the end of it -- if

16  you don't have any agreement, that is fine.  And I mean, it --

17  it is not fine.  But that will be the state of things.  But I

18  would like you to report basically the fruits of your

19  discussions by next week.

20          MR. CALDWELL:  Thank you, Your Honor.  This is Joe

21  Caldwell again.  And we appreciate that.  Number 1, I think we

22  made it clear that we're not filing a spoliation motion before

23  the other court at this time.  That was not the purpose of our

24  alerting the Court.  It was solely preservation.

25          Secondly is the fact that we are mindful of the

1    Court's standing order.  Paragraph 3(e) says that we do have to

2    obtain permission from the Court prior to seeking a protective

3    order.  And in some minds a protective order and preservation

4    order there is little distinction.

5              However, that said, I suggest that we as plaintiffs

6    will circulate a draft order to defendants, and we will do that

7    within a day, Your Honor, again in hopes that we can get

8    something to the Court by the end of this week.

9              I look forward to conferences with counsel toward

10   that end with all deliberate speed to get something to the

11   Court by the end of this week to make sure that if there is

12   anything that remains and has not been erased at this point

13   pertaining to that CES server that it can be preserved.

14             THE COURT:  All right.  Well --

15             MR. BARNES:  Your Honor --

16             THE COURT:  Yes.

17             MR. BARNES:  -- this is Roy Barnes.  Could I bring up

18   one other little matter?

19             THE COURT:  Yes.

20             MR. BARNES:  We think -- we would respectfully

21   request that you consider allowing us to have oral arguments on

22   the motion to dismiss and the issues that are pending before

23   you at an appropriate time that Ms. McConochie or the Court

24   could schedule it for us.

25             THE COURT:  Are you going to be able to do it in the

1    next week?

2           MR. BARNES:  I can't do it in a week.  But, you know,

3    we could -- when do you have time open?

4           THE COURT:  Well, I don't have that much time, and we

5    basically have indicated in prior conferences that we were

6    going to be trying to get an order out by the end of November

7    because the case really will -- either should -- either should

8    proceed with discovery expeditiously -- and that was the

9    context of all the Court's conversations with the parties -- or

10   else if it is -- can't -- if there is no jurisdiction, then

11   there is no jurisdiction.  That is the end here.

12          So, you know, I don't have my schedule in front of me

13   exactly.  Ms. McConochie, of course, is here and does.  But if

14   you can do November 17th, which is, I realize, next week, it is

15   a good day.  Or we can do it the following Monday if that --

16   no.  I'm out the following Monday.  So I'm sorry.  That is

17   not -- that is not possible.

18          MR. BARNES:  We will get with Ms. McConochie later if

19   we see -- we are reviewing everything that has been filed.  So

20   if there is something that is obvious that needs to be added,

21   we'll do it expeditiously.

22          THE COURT:  All right.  Well, again, if you want to

23   appear here on the 17th, that is an option.  We can do it.

24          But are you saying you want -- I mean, I have -- I

25   have a huge volume of pages, as you know, that I've allowed.

1   Are you saying you might actually want to petition to add

2   additional arguments and more briefing?

3          MR. BARNES:  Well, probably not.  But, you know, I

4   would like to read what folks have -- we're going through the

5   same thing you are.

6          THE COURT:  Well --

7          MR. BARNES:  We want --

8          THE COURT:  I'm not going to cross that bridge until

9   it happens.  But I -- since every argument conceivable seems to

10  have been raised by the State or the counties, I'm -- I'm

11  loathe to say we should see more paper.

12         I mean, as it is, I would say that you ought to

13  consider things like whether you really are going to stand by

14  some of the arguments that have been made.  For instance, on

15  Page 14 of the State defendants' brief in support of their

16  motion to dismiss, the last paragraph before Section C says,

17  finally, plaintiffs seek injunctive relief and damages against

18  Secretary Kemp in his official capacity.  All claims for money

19  damages and injunctive relief related to past elections are

20  retrospective and therefore barred.

21         Okay.  But does that mean that the State concedes

22  that claims for injunctive relief prospectively are not barred?

23  I mean, I think that is -- are we -- just as a matter of candor

24  with the Court?

25         MR. BARNES:  Well, that is what we're hoping for in

1    reviewing it to be able to clear some of that up.

2           We'll get through this as expeditiously as we can.

3    If there is something that absolutely needs to be, we'll file a

4    motion as we think is appropriate.

5           THE COURT:  All right.  Well -- yeah.

6           MR. HIGHSMITH:  Your Honor, for Mr. King, we are

7    available on the 17th.

8           THE COURT:  How are the counties?  I haven't asked

9    anything of you.  Is there anything relative to the counties

10   that -- I assume there might be as to still the question of any

11   preservation.

12          MS. BURWELL:  This is Kaye Burwell.

13          MR. WHITE:  Kaye, go ahead.

14          MS. BURWELL:  I was just going to say nothing for

15   Fulton County.

16          MR. WHITE:  Your Honor, Daniel White for Cobb County.

17   I'm not aware of anything at this time.  I am going to sit down

18   and have a -- I would be happy to talk through anything with

19   plaintiffs' counsel just to make sure we -- we did -- we also

20   got the multiple versions of preservation letters from

21   different counsel.

22          And so we have attempted to comply with it.  But it

23   might be worth it just to sit down and say here is what we have

24   preserved.  Do you have any problems with that?  So we'll make

25   that effort later this week.

1          THE COURT:  Thank you.

2          MR. BRYAN:  Your Honor, this is Bennett Bryan on

3    behalf of Dekalb.  I will repeat what Mr. White just said.  I

4    believe we have resolved those issues with plaintiffs' counsel.

5          But, plaintiffs' counsel, if you believe that there

6    are still outstanding issues that we need to deal with, I'm

7    happy to have a conference call about that.  Thank you.

8          THE COURT:  All right.  Well, Mr. Caldwell, I think

9    that you should reach out to the counties' counsel to make sure

10   that you're all on the same page, given the potential for

11   confusion here.  And I don't want confusion to be a source of

12   the problem.

13         MR. CALDWELL:  I certainly will, Your Honor.  This is

14   Joe Caldwell.  I certainly will.

15         THE COURT:  Well, in any event, I know you said you

16   were going to get back to me by Friday.  But I would like a

17   report by Monday in any event about what -- it can be the close

18   of business but Monday as to what is going on.

19         And I will continue to think about the 17th.

20         MR. BARNES:  I'm available on the 17th.  We would

21   like to do it in the morning if we could.

22         MR. CALDWELL:  Your Honor, this is Joe Caldwell for

23   the plaintiffs.  I would have to talk to Mr. Ed Schwartz who is

24   in a deposition and not available today.  But I'll circle back

25   to the Court on that.

```
1              THE COURT:  All right.

2              Just one second.  I want to check with Ms. McConochie

3     about our schedule for something.

4                 (There was a brief pause in the proceedings.)

5              THE COURT:  All right.  Well, Ms. McConochie will

6     circle back.  Please hold the 17th for now.  And, new counsel,

7     when you are reviewing all the paper, if you find something

8     that you think you can simplify, that is one -- that is

9     something different.  If you really, as in the paragraph I just

10    read to you from Page 14, acknowledge that there is a claim,

11    for instance, for injunctive relief prospectively, which you

12    may not, then let's just not be back-ended about it.

13             But if we have oral argument, that is what I'm

14    looking for.  And I don't need it in paper.  I think you could

15    come acknowledge it.  It would be great if you did it in paper.

16    But the whole point is to make this simpler because this case

17    is with the volume of paper that has already been filed

18    extremely complex.

19             MR. BARNES:  All right.  We'll do that.

20             THE COURT:  Are there any -- are there any items that

21    the parties can stipulate to also that is -- and I'm not

22    talking about all sorts of facts -- but maybe procedural

23    history or anything else like that that you want to -- that you

24    can stipulate to?

25             And I know that is much more challenging sometimes.
```

1   But if you think that there is something that would be helpful

2   to the Court and to the parties in trying to simplify an

3   understanding of what has happened here and you can agree on

4   some stipulated set of facts or description of the procedural

5   posture of the case, that is great.  If you can't and it will

6   take more time than it is worth because you don't think you're

7   going to get to much, that is a whole other matter.

8            All right.  Thank you very much.  And we'll -- we may

9   see you on the 17th.  We'll see about that.  And thank you for

10   agreeing to meet and try to see what you can do to address and

11   resolve any pending preservation issues.

12            It would be preferable to have a joint report rather

13   than one party or another and people conflicting that.  So even

14   if you don't completely agree as to the results of your

15   conversations, you could still have it in one joint report.

16            And I don't see --

17            MR. CALDWELL:  This is Joe Caldwell.  We'll do so,

18   Your Honor.

19            THE COURT:  I don't see any reason why that needs to

20   be more than four pages, excluding the caption.  So you can put

21   a caption on the front page.  And then if you end up being --

22   being in differing positions, two pages on each side.

23            And if you need -- if you find it is just impossible,

24   then just give -- write a note to Ms. McConochie and tell me

25   what you need.  But, really, I'm not looking for pages and

1    pages.  I'm just trying to figure out where we're at.  And you
2    don't need to be writing pages and pages at this time either.
3              All right.  Thank you so much.  Have a good day.
4              MR. CALDWELL:  Thank you, Your Honor.
5              MR. BARNES:  Thank you.
6              MR. HIGHSMITH:  Thank you, Judge.
7                  **(The proceedings were thereby concluded at**
8                  **11:13 A.M.)**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                    C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6       I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   25 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12       In testimony whereof, I hereunto set my hand on this, the

13   7th day of November, 2017.

14

15

16

17                           _____
                             SHANNON R. WELCH, RMR, CRR
18                           OFFICIAL COURT REPORTER
                             UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```