## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, et al.,

Plaintiffs,

v.

BRIAN KEMP, et al.,

Defendants.

CIVIL ACTION FILE

NO. 1:17-CV-02989-AT

### ADVISORY NOTICE OF DEFENDANTS SECRETARY OF STATE KEMP AND STATE ELECTION BOARD OFFICIALS REGARDING IMMUNITY

**COMES NOW,** Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board and hereby files this advisory notice regarding immunity as requested by the Court. *See* Doc. 189.

### INTRODUCTION

The Court has asked these Defendants to evaluate and respond regarding the posture of issues concerning immunity if, as discussed during a status conference on May 1, 2018, the Plaintiffs were to limit and/or dismiss certain claims in manners as discussed informally between the parties or as contemplated by the "Coalition Plaintiffs'" pending Motion seeking leave to file a Third Amended Complaint.

## PROCEDURAL REVIEW

Plaintiffs first filed suit on July 3, 2017.  Less than thirty days later (after removal to this Court), Plaintiffs first moved for leave to amend their Complaint. Doc. 2.  This Court granted leave and deemed that amended Complaint filed as of August 18, 2017. Doc. 14 (Order); *see also* Doc. 15 (Amended Complaint).  Motions to Dismiss by the various defendants were filed. *See, e.g.*, Docs. 47, 48, 49, and 50.  Two days later, CGG asked to Court to entertain yet another amendment of its pleadings following a change in its legal representation. *See, e.g.*, Doc. 57.  By leave, the Second Amended Complaint was filed on September 15, 2017. Doc. 70.[1]

Throughout October, Motions to Dismiss were filed and briefed to apparent conclusion addressing the altered theories contained in the Second Amended Complaint.  By entry of November 2, 2017, these Motions were noted as under submission.  These Motions to Dismiss have been briefed fully and pending ever since.

Due to turnover in the legal representation, various withdrawal maneuvers, and extensions of time ensued. *See, e.g.*, Docs. 104; 112; 114; 115 (CGG's motion to stay, filed Nov. 28, 2017); 116 (order granting motion to

---

[1] In substance, the Second Amended Complaint dropped claims against Defendant Karen Handel and signaled a morphing of Plaintiffs' claims away from what had been a contest to the results of the Ossoff-Handel election. *See, e.g.*, Docs. 76, 81.

withdraw of former attorneys Schwartz and Caldwell from CGG's representation, staying and administratively closing the case); 127; 135.

Fast forward to May of 2018, and the Plaintiffs appear irreconcilably divided into two factions with separate legal teams and different legal tactics. On one side are Plaintiffs Donna Curling, Donna Price, and Jeffrey Schoenberg, represented by various counsel. The other group of Plaintiffs—comprised of CGG, Ricardo Davis, Laura Digges, and William Digges, III—are represented by a different team of attorneys and calling themselves "the Coalition Plaintiffs." Doc. 160. Nevertheless, despite the best efforts of the Plaintiffs' factions to devise stratagems to evade the substantial immunities asserted in the Motion(s) to Dismiss, neither group has a viable path to overcoming them.

## STATEMENT OF FACTS

Apparently, the Third Amended Complaint reflects the Coalition Plaintiffs' distinct version of how their case should be framed by mitigating "the prejudicial impact of" the conflict of interest that tainted the Second Amended Complaint by, *inter alia*, "refining and streamlining the claims," "dismissing certain parties," and "adding necessary parties," and "correcting and updating certain allegations." Doc. 160 at 2. Further, the Coalition Plaintiffs purport that these changes will "eliminate sovereign-immunity and qualified immunity issues." Doc. 160 at 3. Taking a different procedural tack,

the Curling Plaintiffs have proposed to "cull" their claims through a proposed draft dismissal that, although circulated among the parties, has not been filed.

Because of the relief both plaintiff factions still wish to seek, formidable immunities remain notwithstanding the Plaintiffs' respectively different attempts to plead artfully around them.  Were this Court to grant the relief sought by Plaintiffs, the November 2018 election would still go forward, only without an adequate means of counting votes using DRE machines.  Put simply, if you take DRE machines away, the Plaintiffs put themselves (and the Court) essentially in a position of controlling the government apparatus going forward, with de facto authority over how and what procedures will be used to count votes.

Any notion that, once barred from using DRE machines, the State (and/or its 159 counties) could retool for statewide elections (a mere five (5) months from now) without suffering a substantial impact on its sovereignty and the public purse is out of touch with reality.  The State and Counties of Georgia currently do not have enough optical scanners statewide to make counting votes exclusively with those machines a viable option.  Counting paper ballots by hand would be a logistic and expensive challenge, if it could be done at all by November 2018.  This case is, therefore, completely unlike a simple prohibitory injunction restraining one rogue official bent upon taking

unconstitutional action.  Regardless of how they try to disguise it, Plaintiffs want relief that goes to the heart of why sovereign immunity exists.

Notwithstanding the pretense that Plaintiffs might limit their claims to injunctive and declaratory relief that is "purely prospective," this Court cannot take Plaintiffs' posturing at face value.[2]  Elsewhere in their allegations, Plaintiffs admit their claims still depend upon "Relevant Past Elections" because Plaintiffs are desperate to show the "imminent harm" and/or "certain future injury" required for constitutional standing under Article III. *See, e.g.*, "Coalition Plaintiffs'" Notice Identifying Paragraphs, Doc. 190 at 10 ("Including these [past elections from November and December 2017] in the [Third Amended Complaint] is necessary because the defendants' conduct in those elections provides additional factual grounds for inferring that defendants will engage in the same conduct—and are likely to cause future injury to the Coalition Plaintiffs—in the Relevant Upcoming Elections."). Plaintiffs are, therefore, using past events as evidence of "imminent harm" to try (unsuccessfully) to establish constitutional standing under Article III.[3]  No

---

[2] "[C]ourts generally look to substance of a pleading, not its labels and form." *Picket v. Williamson*, 2015 WL 2450767, * 2 (N.D. Ala. May 22, 2015) (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 (11th Cir. 2005)).

[3] A recent opinion from the Eleventh Circuit shows Plaintiffs' theory of "presumed-vulnerability harm" face an uphill climb on constitutional standing. *See Georgia Republican Party et al v. Securities and Exchange Comm'n*, Case 16-16623 at *7 (11th Cir. April 26, 2018) (under Article III, "allegations of *possible* future injury" or "that

matter their disclaimers, Plaintiffs necessarily must seek declaratory relief that is retrospective (i.e. that adjudicates past actions).  For this reason alone (in addition to others), the State Defendants' immunity remains operative and vital.

## CITATION OF LEGAL AUTHORITY

Regardless of Plaintiffs' intents to circumvent the applicable immunities, Plaintiffs still understate the legal obstacles raised by Defendants' Motions to Dismiss.  This statement of position is really an advisory opinion of the State Defendants, given at the request of the Court.  Assuming Defendants correctly understand the intentions of the respective Plaintiff-factions, one could infer as follows:

(1) Assuming all Plaintiffs dismissed all claims against the State Defendants in their individual capacity and pursued only claims in official capacities, qualified immunity of the State Defendants would seem moot as to these State Defendants.

(2) Assuming all Plaintiffs dismissed all claims based upon state-law violations, normal sovereign immunity would still be implicated to the

_____

require guesswork as to how independent decisionmakers will exercise their judgment" failed to establish standing) (internal quotation omitted) (original emphasis retained).

extent the State's inherent immunity from suit under its own laws is maintained by the Eleventh Amendment.

Even if all the above assumptions hold, therefore, insurmountable issues of immunity still remain operative, regardless of whether the Coalition Plaintiffs are granted leave to file their purported Third Amended Complaint or whether the Curling Plaintiffs dismiss all but claims they describe as prospective-only injunctive/declaratory relief.

A.   SOVEREIGN IMMUNITY REMAINS NOTWITHSTANDING PLAINTIFFS' WISHFUL THINKING AND EFFORTS TO EVADE IT BY ARTFUL PLEADING.

Assuming, *arguendo*, the Plaintiffs were to cull their claims down only to federal claims against State Defendants in their official capacities that does not remove immunity.  Plaintiffs ask this Court to control, through injunctive and declaratory relief, the State's discretionary decision regarding the certification of DRE machines and, de facto, compel the State Defendants and all of Georgia's counties to count ballots in some other way for the upcoming November 2018 election.[4]

The Eleventh Amendment bars suits against state officials where the state is, in reality, the true party in interest. *See, e.g., Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999) (district court's denial of motion

---

[4] Section 1983 does not override a State's Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989).

to dismiss on Eleventh Amendment immunity appealable immediately); *See also Manders v. Lee*, 338 F.3d 1304, 1308 (11th. Cir. 2003) (to receive Eleventh Amendment immunity, defendant need only be acting as the "arms of the State"). Here, Plaintiffs' continued request for relief against the public officials in their official capacity is implicated because the state is, in fact, "the real party in interest."

Plaintiffs cannot point to the removal to this Court by the State Defendants as a waiver of Defendants' immunity. *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013). While voluntary removal waives state immunity from suit in a Federal forum, the removing state retains all defenses it would have enjoyed had the matter been litigated in state court *including immunity from liability*. *Stroud*, *supra* at 1298 ("the Eleventh Amendment is neither a source of nor a limitation on state's sovereign immunity from suit[, but rather] . . . it is a *recognition of states' sovereign immunity in federal court*." (emphasis supplied). Thus, consent to a federal *forum* does not necessarily entail a waiver of a State's *sovereign immunity from* suit under its own laws, even as against federal constitutional claims asserted under Section 1983. *See, e.g., Moon v. Rockdale Cty.*, 188 F.Supp.3d 1369, 1380 (N.D.Ga. 2016); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 764 F.Supp.2d 1306, 1321 (M.D. Ga. 2011), aff'd, 687 F.3d 1244 (11th Cir. 2012) (pre-*Stroud* decision).

Here, the relevant question is whether the State Defendants would be immune from Plaintiffs' claims if they had remained in state court. Were this suit still pending in state court, immunity would bar Plaintiffs' claims against the State (and officers in their official capacities) for injunctive relief and declaratory relief based on an enforcement of an allegedly unconstitutional law. *Lathrop v. Deal*, 301 Ga. 408 (2017). Under the Eleventh Amendment and Eleventh Circuit precedent in *Stroud*, the result should not be different here just because this case pends before a federal court.

Arguably, another issue is whether, under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), an exception to immunity could be operative. The Supreme Court's decision in *Ex parte Young* provided a narrow exception to the above-stated general rule of immunity when a suit alleged a violation of a federal constitution against a state official in her official capacity for injunctive relief only on a prospective basis.

The relief sought by these Plaintiffs could not fall within *Ex parte Young*'s exception. Unlike the typical case for the exception, this is not a case involving an ultra vires act or seeking to enjoin the enforcement of an unconstitutionally void statute. *C.f. Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011) (*Ex parte Young's* exception applied to preliminary injunction seeking to declare statutory provision unconstitutional). Instead, Plaintiffs seek to enjoin enforcement a statutory regime the Plaintiffs concede is constitutional and

prevent a state official from exercising discretion granted him by an express statute.

Unlike a situation where a state officer has engaged in actions without legal authority, here Georgia law affirmatively requires the Secretary of State to administer the DRE system.  Code section 21-2-50 states that the Secretary "shall perform all the duties imposed by this chapter," including the duty "[t]o develop, program, build and review ballots for use by counties and municipalities on direct recording electronic (DRE) voting systems in use in the state." O.C.G.A. § 21-2-50(15).  As this Court well knows, the Supreme Court of Georgia has already held that voters do not have a right under state law to a particular balloting system and, further, held that the DRE system does not violate the Georgia Constitution's requirement that voting be by secret ballot. *Favorito v. Handel*, 285 Ga. 795 (2009).

Plaintiffs insist, however, that unless the State Defendants agree with Plaintiffs' belief that DRE machines must be *presumed* to be so unworkably vulnerable—and that that vulnerability cannot be mitigated or managed by other measures—the State Defendants are enforcing *constitutional* laws *unconstitutionally*. *See, e.g.*, Doc. 160-1 at 40 ¶ 115 (alleging use of DREs in elections in November of 2016, April of 2017 and June of 2017, "Defendants caused Georgia voters to cast votes on an illegal and unreliable system that

must be presumed to be compromised").[5]  Plaintiffs make this broad indictment of Georgia's system without any plausible factual allegation that even a single one of their votes was recorded incorrectly.

Plaintiffs' allegations depend entirely upon rank speculation about potential interference by a third party engaged in criminal conduct.  Because of this disagreement over whether Defendants are performing their discretionary acts in good faith, the Plaintiffs contend this Court should compel the State of Georgia (and, by extension, every county therein) to perform elections entirely without DRE machines statewide.

Under these circumstances, the application of an exception under *Ex parte Young* is problematic for Plaintiffs for three separate and independent reasons, any one of which is adequate to require dismissal under the Eleventh Amendment.  First, Plaintiffs' relief does not remedy a violation of federal law that is "ongoing" and "continuous."  Second, and notwithstanding Plaintiffs' description as "only" for prospective relief, Plaintiffs' claims attempt "to adjudicate the legality of past conduct," meaning their relief is not truly or in substance, purely prospective.  Finally, to the extent this suit usurps Georgia's control over its elections, Plaintiffs' relief "implicates special sovereignty

---

[5] Further, Plaintiffs' claims discount the value DRE machines offer in terms of accessibility for the blind and visually impaired.  *See* 52 U.S.C. § 21081(a)(3) (Help America Vote Act requiring use of at least one direct recording electronic voting system).

interests" such that this suit cannot be exempted from immunity under *Ex parte Young*. Each of these issues are addressed more particularly below.

   1. *Ex parte Young's immunity exception is inapplicable without a violation of federal law that is "ongoing" and "continuous."*

One exception to 11th Amendment immunity would allow redress for violation of a federal law that was "ongoing" and "continuous." That cannot be the case here. Under the relevant statutes, and as conceded by the Plaintiffs, the Secretary of State makes periodic evaluations of the safety and security of voting by DRE machines "at any time" and/or upon request. *See, generally*, O.C.G.A. § 21-2-379.2.

Regardless of Plaintiffs' allegations, the law makes clear that the Secretary of State undertakes an ongoing and continuous review to ensure that DREs can be safely and accurately used by electors in Georgia elections. Contrary to the frivolous contention—which Plaintiffs know to be untrue—that "no efforts have been made" (Doc. 160-1 at 39 ¶ 112) to ensure Georgia's elections system is safe and secure, as recently as the past year (after many of the past events supposedly relevant to the Coalition Plaintiffs' Third Amended Complaint), the Secretary of State commissioned examiners to assess and verify that Georgia's system for employing DREs "can be safely and accurately used by electors in Georgia elections." *See, e.g.*, Ex. 1 (Examination Report, certified by Secretary Kemp on April 20, 2018). Georgia's law regarding

ongoing reassessments of the safety and accuracy of DRE machines belies Plaintiffs' pretense of redressing a presumed "vulnerability" that these State Defendants are allowing to fester to the specific detriment of any of the named Plaintiffs.

In the absence of proof to the contrary—and especially where "none of the alleged injuries have actually occurred," there is a "legal presumption that public officials will perform their duty in a lawful manner." *Elder v. City of Winder*, 201 Ga. 511, 512 (1946).  Plaintiffs' "presumed-vulnerability harm" flips this presumption of lawful performance on its head for no reason other than Plaintiffs' own suspicion of technology and irrational nostalgia for paper balloting.   Plaintiffs' differences of personal opinions—based on media reports—as to the qualitative assessment of future vulnerability to criminal, third-party hacking does not convert their claims into a redressable violation of federal law that is "continuous" and "ongoing."

2. *Ex parte Young's exception to immunity does not apply because Plaintiffs' relief would "adjudicate the legality of past conduct," meaning their relief is not "purely prospective."*

Another potential exception—for purely prospective relief—would not be available to the Plaintiffs either.  The *Ex parte Young* exception does not allow a plaintiff "to adjudicate the legality of past conduct." *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).  Although Plaintiffs claim their relief is prospective only, their relief remains "backward-looking" because it "seeks to remedy harm

'resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014) (quotation omitted).[6]   Plaintiffs' claims for retrospective relief—i.e. declaratory relief that their rights have, in the past, been violated— are not subject to the *Ex parte Young* exception.

Plaintiffs seek declaratory relief that is, by definition and necessity, an adjudication of the legality of past conduct. *See, e.g.*, Doc. 160-1 at 40 ¶ 115 (alleging that by using of DREs in elections in November of 2016, April of 2017 and June of 2017, "Defendants caused Georgia voters to cast votes on an illegal and unreliable system that must be presumed to be compromised").   For instance, the Coalition Plaintiffs base their constitutional standing upon their assertion that "*prior* and intended" "unconstitutional enforcement of O.C.G.A. § 21-2-383(b) is at stake. *See, e.g.*, Doc. 160-1 at 54 ¶ 148.   Consequently, the relief sought by the Plaintiffs is not limited only to the prospective but, rather, embraces past conduct, too.   For this other reason, therefore, there is no exception to immunity under *Ex parte Young*.

---

[6] Simply because the remedy will occur in the future, does not transform it into "prospective" relief, especially where "the relevant events [to Plaintiffs' claims] have already occurred." *Fedorov v. Board of Regents for University of Georgia*, 194 F.Supp.2d 1378, 1387 (S.D. Ga. 2002).

3. *Ex parte Young's exception to immunity does not apply because Plaintiffs' relief "implicates special sovereignty interests" such that this suit is essentially to usurp the State's role in the regulation of elections.*

Most importantly, the drastic ramifications that would be inflicted upon the State provide another separate and independent reason why immunity under the Eleventh Amendment bars Plaintiffs' relief. Under these circumstances, a coercive intrusion by federal courts into the exercise of state official's discretion under a constitutional law "implicates special sovereignty interests." The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996) (citing *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 48, (1994)). "It also serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Id.*

An order of injunction that bars use of DRE machines during the November 2018 election would put these private Plaintiffs (and this federal court) in the *de facto* driver's seat with control over the election system. Put simply, whether or not DRE machines are available for use, an election will occur in November 2018. Notwithstanding Plaintiffs' uninformed assumptions, there are not currently enough optical scanners statewide to make that a viable alternative option for counting efficiently all the ballots

expected to be cast in November of 2018. And, again, notwithstanding Plaintiffs' baseless assurances, overriding a constitutional statute and mandating by injunction a reversion to using and counting paper ballots by hand for a statewide election implicates exactly the "special sovereignty interest" that makes an exception under *Ex parte Young* infirm. This is, therefore, not a simple prohibitory injunction restraining one rogue official against unconstitutional action.

The *Young* exception may not be applicable if the suit would "upset the balance of federal and state interests that it embodies.*" Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 277 (1997). In weighing an exception to immunity, this Court cannot ignore the burdens of manpower and probable outright procurement expense that would necessarily be thrust upon the State and every County Board of Elections in this State. If the Plaintiffs were to prevail, Georgia's sovereign interests "would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Idaho*, 521 U.S. at 287. Regardless of how they try to disguise it, Plaintiffs want to seize the reins of government—the very thing some of the immunities at issue exist to prevent except under exceptional circumstances not present here.

B.   AS TO THE STATE ELECTION BOARD DEFENDANTS, THE STATE
DEFENDANTS WOULD CONTINUE TO ASSERT THE ELEVENTH AMENDMENT,
SOVEREIGN IMMUNITY, AND LEGISLATIVE IMMUNITY.

The Eleventh Amendment and sovereign immunity would bar any claims against a state defendant, in official capacity, who has no direct involvement in enforcement of the use of DRE's.  With respect to the individual members of the SEB, Plaintiffs allege only that these members are responsible for rule promulgation, investigating frauds and election regularities and reporting election law violations to the Attorney General.  None of the legal responsibilities of the SEB members are sufficiently connected to the state action Plaintiffs seek to enjoin to exempt this suit from the Eleventh Amendment under *Ex parte Young*.[7]  SEB members, therefore, have complete immunity under this theory.

## CONCLUSION

Should the Plaintiffs try to cull their claims as signaled (but not yet accomplished), the State Defendants would expect to take position(s) that the above-referenced immunities would still be operative and, indeed, impregnable.  We hope this statement is helpful to the Court.

---

[7] To the extent that SEB members in their official capacity promulgate rules under authority delegated them by the General Assembly, any claim against them regarding rulemaking would also be barred in totality for legislative immunity. *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005).

This 8th day of May, 2018.

**BARNES LAW GROUP, LLC**

*/s/John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I have read the Court's Standing Order in Cases Proceedings Before the Honorable Amy Totenberg and that I will comply with its provisions during the pendency of this litigation.

*/s/John F. Salter*


## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Century Schoolbook and a point size of 13.

*/s/John F. Salter*

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have electronically filed the foregoing

**ADVISORY NOTICE OF DEFENDANTS SECRETARY OF STATE KEMP AND STATE ELECTION BOARD OFFICIALS REGARDING IMMUNITY** with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all attorneys of record.

This 8th day of May, 2018.

**BARNES LAW GROUP, LLC**

*/s/ John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*