```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,            :
                                       :
 5           PLAINTIFFS,               :
     vs.                               :   DOCKET NUMBER
 6                                     :   1:17-CV-2989-AT
     BRIAN P. KEMP, ET AL.,           :
 7                                     :
             DEFENDANTS.               :
 8

 9

10        TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

11          BEFORE THE HONORABLE AMY TOTENBERG

12            UNITED STATES DISTRICT JUDGE

13                    MAY 10, 2018

14                     6:23 P.M.

15

16

17

18

19

20

21   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                TRANSCRIPT PRODUCED BY:

23

     OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR
24                                   2394 UNITED STATES COURTHOUSE
                                     75 TED TURNER DRIVE, SOUTHWEST
25                                   ATLANTA, GEORGIA  30303
                                     (404) 215-1383
```

```
 1              A P P E A R A N C E S   O F   C O U N S E L

 2

 3    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
      SCHOENBERG:
 4

 5         CATHERINE CHAPPLE
           MORRISON & FOERSTER, LLP
 6
           HALSEY G. KNAPP, JR.
 7         KREVOLIN & HORST, LLC

 8
      FOR THE PLAINTIFF COALITION FOR GOOD GOVERNANCE:
 9

10         BRUCE P. BROWN
           BRUCE P. BROWN LAW
11

12    FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
      WILLIAM DIGGES, III, AND RICARDO DAVIS:
13

14         CARY ICHTER
           ICHTER DAVIS, LLC
15

16    FOR THE STATE OF GEORGIA DEFENDANTS:

17

18         JOHN FRANK SALTER, JR.
           THE BARNES LAW GROUP, LLC
19

20    FOR THE FULTON COUNTY DEFENDANTS:

21         CHERYL RINGER
           OFFICE OF THE FULTON COUNTY ATTORNEY
22

23

24

25
                                              (...CONT'D...)
```

```
1    (...CONT'D....)

2

3    FOR THE DEKALB COUNTY DEFENDANTS:

4
         LAURA JOHNSON
5        DEKALB COUNTY DEPARTMENT OF LAW

6

7    FOR THE COBB COUNTY DEFENDANTS:

8
         DANIEL WALTER WHITE
9        HAYNIE LITCHFIELD & WHITE

10

11   FOR THE DEFENDANT MERLE KING, IN HIS INDIVIDUAL CAPACITY AND
     HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE CENTER FOR
12   ELECTION SYSTEMS AT KENNESAW STATE UNIVERSITY:

13
         GRANT EDWARD SCHNELL
14       HOLLAND & KNIGHT, LLP

15

16

17

18

19

20

21

22

23

24

25
```

1          **P R O C E E D I N G S**

2     **(Atlanta, Fulton County, Georgia; May 10, 2018.)**

3               THE COURT:  Have a seat.

4               All right.  We're having a status conference on

5     preservation issues.  This is *Donna Curling, et al. vs. Brian*

6     *Kemp*, Civil Action File Number 1:17-CV-2989.  I have a chart

7     here with everyone's names.  So I think in the interest of time

8     I'm not going to make everyone repeat that.

9               Do you have a joint report about where you are at?

10              MR. SALTER:  I think we do.  I think there was one

11    objection that my friends for the Coalition want to put on the

12    record of some nature.

13              If you want me to lead off first, Bruce?

14              MR. BROWN:  Yes.  Go ahead.

15              MR. SALTER:  Your Honor, I don't normally do this in

16    federal court much, how you go about approaching.

17              May I show you a document?

18              THE COURT:  Sure.  Just give it to Ms. McConochie.

19              MR. SALTER:  I don't want to be tackled.

20              That is a document that we understand that may be --

21    it is posted at a precinct after -- after things are being shut

22    down I understand.  And it links a serial number with some

23    votes and a -- and the precinct.  And what I understand is the

24    plaintiffs would -- are asking in terms of facilitating

25    their --

```
 1                THE COURT:  I'm just going to make this -- do you
 2    mind if I make this an exhibit?
 3                MR. SALTER:  I would like a copy back at some point
 4    so I can walk home with it.  But we can provide a copy to you.
 5                THE COURT:  We'll make it as Joint Exhibit Number 1?
 6                COURTROOM DEPUTY CLERK:  Whose is it, Your Honor?
 7                MR. SALTER:  You keep that.  Cary has got another for
 8    me.
 9                THE COURT:  So is this your exhibit?  Coalition's
10    Exhibit Number 1?
11                MR. ICHTER:  Yes.
12                THE COURT:  Any objections to its admission?
13                MR. KNAPP:  No, Your Honor.
14                THE COURT:  All right.  It is admitted.
15                MR. SALTER:  Are we okay on that?
16                MS. RINGER:  Yes.
17                MR. SALTER:  Your Honor, what we're trying to do is
18    to figure out and ascertain in order for them to try to link up
19    votes, precincts, and machines whether or not we can go and get
20    this document in an easy route or a hard route.
21                THE COURT:  You mean ones for every single machine?
22    Is that -- is this what this is?
23                MR. SALTER:  What that is --
24                THE COURT:  Or is this the summary total for each
25    precinct that was posted on the board or something like that
```

1    that used to be actually even the vote on the door?

2              MR. SALTER:  The logistical question is can we get

3    that.  We think we can.  We don't think we have an objection to

4    letting the -- facilitating that going to the plaintiffs.

5              MR. ICHTER:  Those are per machine.

6              MR. SALTER:  So there's going to be a lot of them.

7    The question is:  Is there a way to feasibly get that to the

8    plaintiff so that they -- their experts can be informed and

9    they can facilitate culling down what machines they would need

10   in order to sample them?

11             There are two possible routes that we are going to

12   investigate.  My deadline is to tell them whether or not there

13   is an easy way or a hard way in order -- can we facilitate

14   that.  That is Wednesday at noon.

15             I'm going to try to tell them whether or not there is

16   a server at each county that we can go to -- are we able to go

17   there and then print that off and get that to them so they can

18   deliver that to them.  That is Wednesday by noon getting it to

19   them.  It is telling them can we do it by server in each county

20   of the three counties or are we going to have to go find a way

21   cooperating with the plaintiffs' side -- both plaintiff groups,

22   go to the superior courts where this is sealed after each

23   election and find it and get it and is that feasible.

24             My report by Wednesday at noon next week is to say --

25   report back with the Secretary of State's technical people can

1    we do this the easy way or whether we're going to do it the

2    hard way.

3            Now let me point one thing out to you, which I think

4    this is one of -- I'm glad you are sitting down.  I think we

5    have a semblance of interest here.  This is not something where

6    I think you're going to have a hard time with us on timing.

7    And the reason is --

8            THE COURT:  I'm just going to let Ms. Burgess see

9    what has been produced so she understands what we're talking

10   about.

11           Go ahead.

12           MR. SALTER:  Right now I think all three of the

13   counties, Fulton, Cobb, and Dekalb, are at least out of

14   extremis right now in terms of going forward in the next few

15   days going through this election in May.

16           So I think that they can stand down.  I think the

17   notice, I think, was filed by Dekalb last week or week before.

18   I think they are okay right now.

19           One thing I want to put on the record -- so I think

20   we're doing that.  But we're still going to have to deal with

21   things coming up.  I mean, there will be a runoff.  There will

22   be a November election.  So we're not interested in dragging

23   our feet.  So I think we can make that report --

24           THE COURT:  You're not interested in dragging your

25   feet?  I just wanted to hear you.

```
 1          MR. SALTER:  No.  So there you go.

 2          So we're going to make that report to my friends on

 3  the other side by Wednesday at noon as to whether or not we

 4  think we can download this and produce it or whether or not we

 5  are going to have to go to each superior court in the three

 6  counties.

 7          One thing I have -- I want to put on the record to

 8  our -- that may provide my clients and perhaps the county some

 9  latitude is that we have agreed jointly with both of the

10  plaintiff groups that if it becomes feasible for the Secretary

11  of State to triage DRE machines from other counties of the

12  state, i.e., counties that are not Cobb, Fulton, or Dekalb --

13  that if we were able to do that, that would not be a violation

14  of any of the holds or the preservation obligations.

15          In other words, if we can get those machines and

16  bring them in and put them into use, that is not going to

17  violate any of our obligations of preservation.  I'm not saying

18  it can be done.  We're going to investigate whether or not it

19  is feasible.  We are still spread thin.  But maybe we can rob

20  Peter to pay Paul a little bit and not run afoul of any

21  preservation obligation.

22          THE COURT:  Just so we're not kind of all on edge all

23  the time, we are fine for this election and we're fine through

24  the runoff; is that -- I mean, the runoff, as we all recognize,

25  usually has a smaller number of voters.
```

1          So it is really the -- it is the general election

2     that we will end up having -- we don't want to wait until the

3     last moment.  We don't want to go through this again.

4          MR. SALTER:  Well, I don't either.  But there is a --

5     depending upon the runoff volume and the county, that could be

6     a problem.  One thing to that question as to whether or not we

7     are going to have -- I think we're going to be clear of May.

8     The runoff is subject to one county in particular we're worried

9     about battery levels.  And they are checking that right now.

10    We think we're going to get by.  If it will be, it'll be by the

11    skin of our teeth.  But I think we can get through May on that.

12          THE COURT:  When is the runoff?

13          MS. RINGER:  July.

14          THE COURT:  July.

15          MR. SALTER:  And there is going to be a runoff.

16          THE COURT:  There is going to be a runoff.  So we

17    really need to -- I don't want to wait until June 20th to be

18    dealing with that.  So we are going to --

19          MR. SALTER:  We agree.  Everybody knows that our

20    people will get freed up more once the May or logistically we

21    will have more latitude and be able to be more responsive and

22    liaison with our people a little better once the May election

23    results are certified and those people have more down time.

24          I want to put one more ask of the plaintiffs.  I

25    think this is more the Coalition plaintiffs and not the

1    Curling.  We have asked -- there is a question as to -- on our

2    side as to why the Coalition plaintiffs have a litigation hold

3    that includes optical scanning machines that are not DRE

4    machines.

5          They have got, I think, a systemic concern in terms

6    of preservation.  We don't see that as part of the complaint.

7    But they have agreed to caucus and get us an answer in a week

8    as to whether or not that should continue to be part of their

9    hold demand and, if so, what will be the scale of it and can

10   they narrow the scope and what is the reasoning for that in

11   terms of the complaint.

12         Is that fair?

13         MR. BROWN:  That is fair, John.

14         THE COURT:  So what is your time frame for responding

15   to that?

16         MR. BROWN:  We can respond by Tuesday, Your Honor.

17         THE COURT:  All right.

18         MR. SALTER:  With that, there is a detail ask of

19   David -- I think Catherine presented on behalf of Curling.  But

20   it is joint, as I understand.  And I may mangle this.  So

21   Catherine can feel free to come push me off the microphone.

22         But basically what they are trying to achieve is a

23   list of the machines used by each of the counties, Cobb,

24   Fulton, and Dekalb, that would provide a serial number of every

25   machine, what election it was -- all the elections that they

were used in, back to and including November 2016 to the present -- or through May or through July? That just occurred to me.

MS. CHAPPLE: What works? Through May?

MR. SALTER: We should have asked that.

**(There was a brief pause in the proceedings.)**

MS. CHAPPLE: It would have to obviously be after.

MR. WHITE: For Cobb County, our concern that I raised in there is we do know there is one state reg that is applicable that says, after you do testing, you can't give the serial -- you can't reproduce the serial number. So we could not produce a list of the serial numbers and precincts for May until after the May election.

MR. SALTER: After the May.

MS. CHAPPLE: And if --

MR. SALTER: It will probably be after May anyway.

MS. CHAPPLE: Right.

MR. BROWN: So include May.

MR. SALTER: Include May. Understood.

Okay. Does that make sense?

THE COURT: Yes.

MR. SALTER: So basically that would be the time frame, but it will be serial number for machine; elections used -- where that machine was used; the last election used, which would be May; and whether or not it was sequestered,

```
 1    which is a whole thing but --
 2              MS. CHAPPLE:  And precinct.
 3              MR. SALTER:  And precinct.  Thank you.  And that
 4    precinct thing -- that is why we're trying to get some of these
 5    records to be able to show -- put serial number with precincts
 6    and so on and so forth.
 7              Am I missing anything else?
 8              All right.  That is what we're driving towards.
 9              THE COURT:  So is the anticipation then that with
10    this information that you will be able to -- that the
11    plaintiffs will be able to give a sample so that you can, in
12    fact, free some of the machines?
13              MR. SALTER:  Yes.  And I want to put one thing on the
14    record.  Then I know Bruce has one thing he wants to put on the
15    record.  I think Bruce is going to have maybe some sort of
16    objection just for the record that preserves something or
17    other.
18              We have not elicited a warranty or guaranty or really
19    even much of an idea as to how many machines they are going to
20    ultimately ask for.  And so we are moving forward in good faith
21    that that will not be onerous.  We're leaving that for another
22    day.  That is not decided yet for a lot of practical reasons
23    but also so we could have an agreement that we could present to
24    Your Honor.
25              We are going to work towards and drive towards
```

1   getting them this information in the hopes that that good faith

2   will be returned.  And I hope it will be, and I expect it will

3   be.

4           I think that is all if Bruce -- is there anything

5   else?

6           MS. CHAPPLE:  Can I just -- to Mr. Salter's last

7   point, we -- the Curling plaintiffs just really appreciate

8   everyone today in the spirit of cooperation.  And as soon as we

9   get that information, we're going to process it quickly and

10  get, you know, the numbers so that we can release them.

11          THE COURT:  So what is your target date?  Because I'm

12  just -- I don't want things to collapse at the last moment.

13          MS. CHAPPLE:  Right.  So --

14          MR. SALTER:  The good thing is we're in agreement --

15  both of us are motivated on the time because we are going to

16  head into November.  Our interest is to try to give them data

17  so that they can tell us how many and then release -- kind of

18  like to Pharaoh, let my people go, with the machines.  And they

19  want -- their interest is in getting the data.

20          So I don't think this is a problem where both sides

21  are not interested in getting the --

22          THE COURT:  But are you concerned about the July

23  primary?  That is what I'm --

24          MR. SALTER:  Yes.  It is still -- I can't warrant

25  that.  And we still have some issues where we might be pulling

1    through by the skin of our teeth to get machines.

2              THE COURT:  So you are thinking --

3              MR. SALTER:  We don't think this is doomed to fail.

4              THE COURT:  No.  I understand that.  But they are

5    going to be giving data in June -- I guess early June that

6    would include May.  So I'm just looking at the -- that is why

7    I'm just looking at the time frame.

8              So are we talking about, like, the 7th of June?  I

9    don't know.

10             MR. SALTER:  I can't warrant that, Judge, because

11   we're still not sure whether we're going to have to go the long

12   route or the short route to get them the precinct, serial

13   number --

14             THE COURT:  All right.  Well, if you could -- I know

15   we've resolved the problem for the emergency for this immediate

16   election.  But I think you -- once you have all investigated

17   next week, I think you do have to have some type of outer

18   schedule so that we are not here on the cusp of July 4th.

19             MR. SALTER:  We don't want to be here.

20             THE COURT:  It has to be resolved.

21             MS. CHAPPLE:  Could we submit sort of a joint

22   status --

23             THE COURT:  Sure.

24             MS. CHAPPLE:  -- update on -- after Wednesday -- on

25   Wednesday so -- after we know whether -- or Thursday?

```
 1   Thursday?
 2            MS. RINGER:  Thursday.
 3            MS. CHAPPLE:  Thursday.
 4            THE COURT:  That is fine.  Very good.
 5            MR. SALTER:  May I sit, Your Honor?
 6            THE COURT:  Yes, you may.
 7            MS. CHAPPLE:  May I also sit?
 8            THE COURT:  Yes, of course.  Any time.
 9            MR. BROWN:  Your Honor, Bruce Brown for the Coalition
10   plaintiffs.  And we had worked together with the Curling
11   plaintiffs to arrive at this process.
12            The one thing that we have concern about is that the
13   timing of this is such that in our view the defendants have in
14   a sense run out the clock on the May 22nd election.  And by
15   doing that, there is a whole nother group of machines that have
16   gone from being what we think should have been preserved to
17   being used in an election.  And we don't know the impact that
18   using the machines has upon their stored memory.  We asked for
19   that information.  We don't have it.  It could be that there is
20   some memory that is retained.
21            So that being the case, there is an opportunity that
22   those defendants have between now and the election to give us
23   the information that we would need to select a relatively small
24   sample of those not to disturb but just to switch out so that
25   the machines that we would select to switch out could be
```

1   preserved by looking at the data or by copying the data.

2           THE COURT:  Switch out with what?

3           MR. BROWN:  With other machines that are innocuous,

4   that are not controversial.  So that would --

5           THE COURT:  And where do the innocuous ones come

6   from?  From some other counties?

7           MR. BROWN:  It could come from another county or from

8   somewhere else.

9           THE COURT:  Is that what they are looking at in part

10  to see if there are these -- when Mr. Salter says that they are

11  going to talk to the Secretary of State's office to see whether

12  there are machines available?  I'm not clear.

13          MR. BROWN:  Yes.  I don't think they -- well, no, I

14  don't think -- I'm not representing that the defendants have

15  agreed to this.  But we would -- we would suggest that it is a

16  big move for a defendant to take a disputed piece of evidence

17  and move it away from discovery.  And this is one way that they

18  could mitigate whatever harm that might cause.

19          Thank you, Your Honor.

20          MR. SALTER:  Your Honor, Halsey wanted me -- I

21  thought I said it, but I want to make double sure.  It matters.

22  That the litigation hold as to both parties does not apply

23  except as to Fulton, Cobb, and Dekalb.  We are clear on that.

24          MR. BROWN:  That is correct, Your Honor.

25          MR. KNAPP:  That is correct, Your Honor.

1          THE COURT:  All right.  Good.

2          MR. SALTER:  And that would allow us to investigate

3   whether or not -- and I don't know whether we can -- whether or

4   not there are other machines that can be used.

5          THE COURT:  And we're talking about trying to do this

6   for the May 22nd election?  No?

7          MR. SALTER:  No.  I don't think that is feasible.

8          THE COURT:  Or we're talking about this for the

9   general election or for the runoff?

10          MR. SALTER:  Any time.

11          THE COURT:  Any time?

12          MR. SALTER:  Any time.

13          THE COURT:  All right.  Well, I don't -- you know,

14   knowing the way that the state is, I mean, it is great that

15   they can try to do it for the 22nd.  I don't know whether I

16   would -- hope springs eternal.

17          MR. SALTER:  I think it would be hard to tell

18   counties right now to have to count on those machines and we --

19          THE COURT:  I think to -- to think about it for the

20   summer -- I mean, for the July runoff or for the fall -- I

21   mean, I do need to reiterate.  This is still -- you know, this

22   is -- my interest was making sure that the information was

23   preserved.  I don't know what is going to happen yet.  But I

24   could not allow the information not to be preserved.

25          I know that -- I will reiterate again that it would

1    be in my mind virtually impossible to have a trial before the

2    November election in time to do anything with that.  But we

3    will get something out on the status of the third amended

4    complaint.  And also basically, you know, the thing about it

5    is -- at this juncture is the defendant has made -- the state

6    has made clear at the very least that they have planned to

7    reassert their sovereign immunity defenses no matter what.  So

8    there is no avoiding the fact that there is a substantial order

9    that I have to deal with.  And that is just -- that is the way

10   it is.

11            And I really commend you-all on great work today, on

12   the plaintiffs keeping it together, and we're not having two

13   different fronts that would make it impossible.

14            MR. SALTER:  We appreciate that too, Judge.

15            THE COURT:  So -- but all of these are significant

16   challenges in moving this forward, as if it wasn't already a

17   very difficult subject.

18            I think I have looked at every election case I could

19   that was even comparable to this.  And I understand that the

20   landscape here is changing in terms of some of the concerns and

21   the world at large that we're facing.  But these are daunting

22   and usually not successful cases.

23            So it is not like I can just say, oh, hey, that has

24   no basis, let's just proceed ahead.  That is -- it is not like

25   that.  I just have to make sure that we are -- the information

1   is preserved in the event the claims -- any portion of the

2   claims went forward that the information was there.

3            And I really do appreciate greatly your coming down

4   really at the 11th hour.  I think it was obviously productive.

5   And no more phone conferences with 20 people on the phone.

6   Totally unproductive.

7            So most appreciated.  Thank you for flying in,

8   Ms. Chapple.  I'm sure there may be other people who did too

9   I'm not aware of.  Let me know what your schedule is.  And

10  really the end of Friday -- the end of Thursday is fine.  There

11  is no rush once we -- unless something explodes.  And I am not

12  expecting it to explode.

13           This is on the record.  I'm taking -- basically

14  adopting what you have said as the order of the Court, that

15  that is the agreement and what you -- that has been set forth.

16  There are some portions of the agreement that are obviously

17  still in motion.

18           But the agreement at base still is that there is --

19  that the current computers -- computers that are voting

20  machines that are on hold will stay on hold.  And there is --

21  and they will not be put into play in an upcoming immediate

22  election on the 22nd of May and that you have a procedure

23  agreed upon for determining what data -- a variety of data that

24  would be necessary for the plaintiffs to be able to identify a

25  sample so that we can not be holding all of these voting

1    machines ad nauseam into the future.

2          And that is -- so I basically approve of the general

3    terms of the agreement as the order of the Court.  And only so

4    that there is not any misconception, I do consider that that is

5    a commitment on everyone's part.

6          MR. SALTER:  At the risk of opening up a can of

7    worms, the hold thing is a mess.  I'm just going to tell you.

8          THE COURT:  Is a mess?

9          MR. SALTER:  Yeah.  What is on hold is a bit of a

10   sticky wicket with each different county.  But I'll just put

11   that out there for the record.

12         THE COURT:  Well, after I got Dekalb's note, I

13   started wondering about that myself.

14         But let me -- without opening up a can of worms or a

15   sticky wicket, there are machines that are not -- that have

16   been held back without regard to what room they are in?

17         MR. SALTER:  We are certainly -- not we, but the

18   counties have been certainly holding back every machine that

19   they possibly can because we want to try to preempt this

20   dispute to the extent that it is possible for us to do.  And --

21         THE COURT:  Well, I trust that given the

22   aggressiveness of the plaintiffs' counsel on this issue that if

23   there was something they needed to bring to my attention they

24   would at this point.

25         All right.  Well, thank you very much.  We'll see you

1    probably sooner rather than later.  But I hope not.

2             MR. SALTER:  Thank you, Your Honor.

3             COURTROOM SECURITY OFFICER:  All rise.  Court is in

4    recess.

5                     **(The proceedings were thereby concluded at 6:46**

6                     **P.M.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   21 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   11th day of May, 2018.

14

15

16

17                           _____
                             SHANNON R. WELCH, RMR, CRR
18                           OFFICIAL COURT REPORTER
                             UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```