## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.** | ) |
| **Plaintiffs,** | ) |
|  | ) |
| **v.** | ) **Civil Action** |
|  | ) **No. 1:17-cv-02989-AT** |
| **BRIAN KEMP, ET AL.** | ) |
|  | ) |
| **Defendants.** | ) |

## JOINT NOTICE OF PLAINTIFFS PROPOSING A SCHEDULE

Pursuant to this Court's Amended Order (Doc. 227) granting the Coalition

Plaintiffs' motion for leave to amend (Doc. 160), Plaintiffs Coalition for Good

Governance, Laura Digges, William Digges III, Megan Missett, and Ricardo Davis

(the "Coalition Plaintiffs"), conferred through counsel with the Curling Plaintiffs[1]

and with Defendants Brian P. Kemp, the State Board Members (together with

Defendant Kemp, the "State Defendants"),[2] and the Fulton Board Members about

proposing a schedule.[3]

---

[1] Plaintiffs Donna Curling, Donna Price, and Jeffrey Schoenberg.

[2] Official-capacity Defendants David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, and Seth Harp.

[3] Official-capacity Defendants Mary Carole Cooney, Vernetta Nuriddin, David J. Burge, Stan Matarazzo, and Aaron Johnson.

The Defendants rejected the schedule that the Plaintiffs proposed. Then, rather than participate in a joint filing, which the Court's Order seemed to contemplate, (Doc. 227, at 1), and rather than make any effort to try to negotiate a compromise schedule, the Defendants simply prepared and abruptly filed their own proposed schedule without any pretense of conferral.[4]   (Doc. 228.)  Since the Defendants have given them no other option, the Coalition Plaintiffs and the Curling Plaintiffs together propose the schedule attached hereto as **Exhibit 1**.

## I.    Schedule Proposed by Both Groups of Plaintiffs.

At the May 1, 2018 hearing before this Court, lead counsel for the State Defendants, former Georgia Governor Roy Barnes, acknowledged the following regarding Georgia's use of direct-recording electronic ("DRE") voting machines: "[E]verybody admits we are going to replace these."  Hr. Tr., May 1, 2018, at 28:22.  Similarly, Defendant Kemp reportedly publicly acknowledged just last

---

[4] Defendants' claim that "Plaintiffs fashioned their schedule without prior consultation with counsel for the Defendants" is misleading.  (Doc. 228 at 2.)  As Defendants' own filing shows, Plaintiffs sent a proposed schedule to Defendants on June 13—a full week before the Court's deadline for the parties to propose a schedule—for the very purpose of consulting Defendants and conferring with them on an appropriate schedule.  (*Id.* at Exhibit A.)  Defendants did not respond until June 18.  (*Id.* at Exhibit C.)  They then abruptly filed their own submission the next day.

week that Georgia's DRE voting machines "should be phased out and replaced with a system that uses paper for verification," just as Plaintiffs seek in this case.[5] Thus, by the State Defendants' own admission, the issue here is not **whether** Georgia must replace DREs, which have been found to be inherently unreliable, but **when**.

Defendants insist on a lengthy briefing schedule in this case for new motions to dismiss the Coalition Plaintiffs' Third Amended Complaint ("TAC") and refuse to even entertain setting a schedule that includes any other dates.  Defendants now argue that it is not feasible for this Court to award any relief before the November 2018 election regarding the voting machines that Defendants admit must be replaced.  Defendants are wrong.  Simply by using the paper ballot scanning and tabulation capabilities of their **current** Diebold AccuVote system, the Defendants are able to conduct a paper ballot election without any need to acquire a new voting system.

---

[5] Mark Niesse, *Work begins to replace Georgia's digital voting system*, The Atlanta Journal-Constitution (June 13, 2018), https://politics.myajc.com/news/state--regional-govt--politics/work-begins-replace-georgia-all-digital-voting-system/7BPZH2rMOntOt1kOqGTtUI/.

Defendants' proposed schedule puts Georgia voters and the integrity of the upcoming mid-term election in Georgia at risk.[6]  That Defendants would seek to delay these proceedings rather than promptly take the very measure they acknowledge is needed to ensure the integrity and legitimacy of the election demonstrates the critical need for this Court to move this case forward as expeditiously as possible, before the November election.  It is simply unthinkable that Georgia would conduct yet another election—with over four months remaining to prepare for it—with the very same DRE voting machines that all parties agree must be replaced for the sake of election integrity.

---

[6] According to the Department of Homeland Security, Russia attempted to hack into the voting systems in 21 states in 2016.  Director of National Intelligence Dan Coats, former CIA Director Mike Pompeo, FBI Director Chris Wray, NSA Director Adm. Michael Rogers, Defense Intelligence Agency Director Lt. Gen. Robert Ashley, and National Geospatial Intelligence Agency Director Robert Cardillo all recently reported to the U.S. Senate Intelligence Committee their unanimous conclusion that the November election will be the target of improper interference by Russia.  Jeremy Herb, *US intel chiefs unanimous that Russia is targeting 2018 elections*, CNN (Feb. 13, 2018), https://www.cnn.com/2018/02/13/politics/intelligence-chiefs-russia-2018-elections-target/index.html.

A.    **Defendants' Claim that Plaintiffs' Proposed Schedule Is Infeasible Is Unsupported and Inconsistent with Real World Experience**

The schedule all Plaintiffs propose below allows this Court to address the inherent vulnerabilities with DREs before their use injects doubt and uncertainty regarding the results of the 2018 mid-terms elections.  Plaintiffs' proposed schedule is not only entirely feasible, it is far less expedited than the schedules in other cases seeking preliminary injunctions to enforce voters' rights in advance of upcoming elections, including in Georgia.  For example:

- In a case against the State of Georgia and Secretary Kemp, the court gave the parties only ***six days*** between the filing of the action and its hearing on a preliminary injunction.  *United States v. Georgia*, 892 F. Supp. 2d 1367, 1371 (N.D. Ga. 2012).[7]  This court issued a preliminary injunction only two days after the hearing, ordering detailed relief with respect to the administration of the election that was to be held only one and a half months later, including pre-election notice, outgoing express ballot return and notice, electronic and express ballot return and notice, training of county election officials, and data reporting.  *Id.* at 1378-81.

- In a case against the Secretary of the Commonwealth of Pennsylvania, the plaintiff advocacy groups filed an action merely ***twelve days prior to the general election***.  *Nat'l Ass'n for the Advancement of Colored People State Conference of Pa. ("NAACP-SCP") v. Cortes*, 591 F. Supp. 2d 757, 758 (E.D. Pa. 2008).   To address the high likelihood that DRE machines would malfunction and fail on election day, the

---

[7] The United States had sought to enforce the rights of absent military and overseas voters to vote by absentee ballot in six congressional districts.  892 F.Supp.2d at 1369.

plaintiffs sought an injunction requiring the state defendants[8] to promulgate, adopt, and enforce a directive requiring local election officials to distribute emergency paper ballots to eligible voters at any precinct whenever 50% or more of the precinct's DRE machines were inoperable. *Id.* at 758. The court held an evidentiary hearing ***five days*** later, and issued a ruling granting the motion for preliminary injunction the following day—merely six days before the general election. *Id.* at 758-59.

In both of these cases, the state defendants argued—just like Defendants here—that overhauling election procedures so close to voting day was infeasible because it would be unduly burdensome and cause confusion at polling places. *Georgia*, 892 F. Supp. 2d at 1376-77; *NAACP-SCP*, 591 F. Supp. 2d at 765-67. The courts disagreed. Even in *NAACP-SCP*, in which plaintiffs filed the action "at the eleventh hour"—less than two weeks before the election—the court found there was "still time" to provide the necessary relief. *NAACP-SCP*, 591 F. Supp. 2d at 766-67. Here, there is significantly more time—***over four months***—to provide voters critical relief before the November 2018 election. Such a solution relies upon nothing more than the use of a paper ballot voting system that is already in use in every county in Georgia. Any further delay would be of Defendants' own making.

---

[8] The state defendants included the Secretary of the Commonwealth of Pennsylvania and the Commissioner of Pennsylvania's Bureau of Commissions, Elections, and Legislation. *NAACP-SCP*, 591 F. Supp. 2d at 758.

Defendants offer absolutely no support for their conclusory, self-serving claim that Plaintiffs' proposed schedule is not feasible and would cause "inconvenience and/or disruption" for Defendants during the election cycle sufficient to warrant subjecting voters to another election with voting machines the State Defendants admit must be replaced.  (Doc. 228 at 3.)  Defendants do not identify any specific inconvenience or disruption to support their claim, nor do they even attempt to distinguish the cases where courts, including in Georgia, awarded injunctions to enforce voters' rights in advance of upcoming elections on far more expedited schedules than the one Plaintiffs propose here.

Virginia's own decertification of DRE machines demonstrates the reasonableness of Plaintiffs' proposed schedule and the emptiness of Defendants' claim of infeasibility.  In September 2017, less than two months before a statewide election for Governor, Virginia's State Board of Elections decertified the use of DRE machines in Virginia.  The 22 localities that were still using DREs were able to successfully shift to paper ballots and optical scanners within weeks.  It stands to reason that Georgia, has an even more easily implementable solution, given that it already owns and uses a paper ballot system for a portion of the ballots, and that system's use can be simply be expanded.   This solution is especially attractive

given the much longer lead time Georgia has between now and the upcoming

November 2018 election than Virginia did.[9]

### B.   Plaintiffs' Proposed Schedule Affords Sufficient Time to Remedy the Vulnerabilities in Georgia's Current Election System before the November Election

The Plaintiffs' proposed schedule, which is attached hereto as Exhibit 1,

accomplishes three things.  First, it provides deadlines for motions to dismiss

("MTDs") directed at the Coalition's Third Amended Complaint ("TAC") (Doc.

226) and related briefings.  Second, it provides for discovery to open immediately

and to be expedited.  Third, it provides for motion and briefing deadlines and a

hearing on both Plaintiffs groups' forthcoming motions for a preliminary

injunction in time to obtain relief for the November election.

---

[9] The impetus for the shift to optical scanning machines from DREs in Virginia was the Defcon hacking conference in July of 2017.  At this conference, hackers from all over the United States took part in a conference where Diebold and other voting machines were shown to be remarkably vulnerable.  Barb Darrow, *How Hackers Broke Into U.S. Voting Machines in Less Than 2 Hours*, Fortune (July 31, 2017), http://fortune.com/2017/07/31/defcon-hackers-us-voting-machines/. "Defcon's hackers breached every single voting machine…. Some in minutes; many in under an hour-and-a-half.  E-vote machines were popped by hackers without insider knowledge and by hackers who didn't even specialize in voting machines."  Violet Blue, *Voting-machine makers are already worried about Defcon*, Engadget (Jan. 26, 2018), https://www.engadget.com/2018/01/26/voting-machine-makers-are-already-worried-about-defcon/.

All Plaintiffs believe that there is an urgent necessity for this Court to set a schedule for motions for preliminary injunctive relief so that the Court will have time to grant relief necessary to secure the integrity and legitimacy of the upcoming November 2018 midterm elections.  The relief sought by the Plaintiffs requires only that the Court issue a ruling by mid-September, or roughly 30 days prior to the beginning of early voting, which takes place in a limited number of polling centers.  The relief sought—conducting the election using paper ballots that are optically scanned rather than DREs—calls for using the existing optical scanners already on hand that are used for processing of paper mail-in and provisional ballot tabulation in ordinary elections. This solution to the problem of DREs is already provided for by Georgia law and can easily be scaled within 30 days to include all ballots—without any new equipment, software, significant poll worker training, or additional funding.

### C.   Plaintiffs' Proposed Schedule Reflects the Reality that No Colorable Immunity Defenses Remain for Defendants

The Plaintiffs believe that discovery should now be opened, as their schedule proposes, because the current state of the pleadings has eliminated all grounds for any Defendant to make a non-frivolous assertion of sovereign immunity as a defense.   The TAC filed by the Coalition Plaintiffs seeks only prospective relief from enforcement activities of the official-capacity

Defendants—claims to which sovereign immunity is not a defense.  Similarly, the Curling Plaintiffs have withdrawn their opposition to Defendants' motions to dismiss those identified portions of the Second Amended Complaint that were potentially subject to dismissal on sovereign-immunity grounds.  (Doc. 222.) Thus, no immunity defenses remain for Defendants.  Indeed, Defendants themselves admitted as much in their motions to dismiss, acknowledging the following: "An exception to this immunity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), is limited to suits against state officers for prospective injunctive relief."  (Doc. 83-1 at 11.)  This is precisely what remains of all Plaintiffs' claims in this case.

In the absence of any remaining non-frivolous grounds for Defendants to persist in asserting sovereign immunity as a defense, the case law that this Court relied upon to stay discovery, (*see* Doc. 56, at 1)—*Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017)—no longer applies.  The parties should thus be permitted to commence discovery, and this case should proceed to the merits.  In addition, discovery should now be expedited, and a schedule should be set for a preliminary injunction hearing and its related briefings.

### D.   Defendants Do Not Need An Extended Briefing Schedule for Motions to Dismiss the Same Claims They Previously Briefed

Defendants' request for an extended briefing schedule for motions to dismiss the Coalition Plaintiffs' TAC is especially unreasonable.  They have had the TAC since April 4 (Doc. 160) and even already filed a 17-page brief expanding on—and effectively (and improperly) amending—their motions to dismiss the very same claims (Doc. 191).  They have known since May 25 that this Court was inclined to allow the TAC.  (Doc. 215).  And perhaps most importantly, the TAC adds no new substantive legal claims—it merely narrows the Coalition Plaintiffs' case to a small subset of the original claims (similar to what the Curling Plaintiffs have done by withdrawing their opposition to certain relief sought by Defendants in their pending motions to dismiss the Second Amended Complaint).  It strains credulity that Defendants would need two more weeks just to file motions to dismiss claims they previously briefed and until August 6 merely to file reply briefs.[10]

---

[10] Plaintiffs understand that one attorney representing the State Defendants, John Salter, has an 18-day vacation scheduled in July (Doc. 140) and Defendants' proposed schedule is intended to accommodate that.  Ordinarily Plaintiffs would agree to this accommodation as a professional courtesy.  But this is not the typical civil suit.  As described above, this suit seeks critical relief needed to secure one of the country's most fundamental institutions from improper interference in advance of the November election.  That Georgia voters must go through another election with a system that the State Defendants admit must be replaced in order to ensure the integrity of that system simply to accommodate the personal vacation of a

For the foregoing reasons, all Plaintiffs respectfully ask this Court to adopt forthwith the proposed schedule attached as Exhibit 1.

## II.    Supplemental Statement of the Coalition Plaintiffs

The Coalition Plaintiffs formally proposed the feasible plan to use currently owned optical scanners to Defendants in April, seven months prior to the November election, permitting more than adequate planning time for a simple conversion to hand marked paper ballots. (See Demand Letter from Bruce Brown to Roy Barnes and John Salter, attached as **Exhibit 2**.) Defendants should not now be advantaged for failing to implement a system that complies with the operating requirements of the Georgia DRE statutes and the federal law paper record requirements under HAVA. Ever since this case was initially filed as an election contest on July 3, 2017, the Defendants have been fully aware of operating failures and legal non-compliance failures and have had adequate time for simple remedies.

The urgency of the relief sought by Plaintiffs in this action cannot be overstated.  The use of Georgia's DRE voting system is ***currently*** causing material irregularities resulting in erroneous and unreliable election outcomes, including challenged elections.  Despite Defendants' ongoing assertions that Georgia's

---

single lawyer is not reasonable and illustrates how little priority Defendants attribute to this critically important issue.

voting system operates accurately and securely, recent election data tell a very different story.  Some voters are being presented with—and voting—the wrong ballots on DREs, although their voter registration records accurately reflect their eligibility to vote in the various districts in which they live.  These errors disenfranchise eligible voters in some contests, and wrongly enfranchise ineligible voters in others.  Numerous instances have been reported of inaccurate electronic ballot issuance in the May 22, 2018, primary election, which was conducted using Georgia's DRE voting system. An election contest is currently pending in Fulton County Superior Court that alleges the erroneous issuance of a number of electronic ballots in Habersham County that was sufficient to change the outcome of the primary election for Georgia House District 28.  *See Gasaway v. Kemp*, No. 2018-cv-306197 (Ga. Sup. Ct. Fulton Cnty. filed June 6, 2018) (attached as **Exhibit 3**).  The Coalition Plaintiffs understand that the contest complaint is being amended to allege that *hundreds* of DRE ballot-issuance errors occurred in Jackson, Banks, Stephens, and Franklin Counties, as well. Additionally, there is evidence that incorrect electronic ballot issuance in the DRE system also occurred in DeKalb County's May 22, 2018, election and in a number of Fulton County's recent elections.

These problems of incorrect ballot issuance—occurring in situations where voter registration records are themselves correct—are indicative that DRE voting system components are malfunctioning.  Errors with ballot issuance could stem from corrupted electronic pollbook data or programs, malfunctions in barcode scanning technology, malware on voter access cards, or DRE programming problems.  The DRE voting system's vulnerability to undetectable malicious manipulations or unintentional errors that are capable of producing precisely these kinds of effects lies at the heart of Plaintiffs' claims.  These problems can be avoided by the relief that Plaintiffs seek.  The requested relief is quite feasible, low cost, and low risk, and can be granted and implemented by election officials in time for the November mid-term elections—but only if a preliminary injunction briefing and hearing schedule is established by this Court.

The Defendants' suggestion that resolution of this case should be postponed because the Plaintiffs have somehow been responsible for delays until this point is utter gaslighting.  It is the ***Defendants*** who sought a stay of discovery right out of the gate and thereby halted this case in its tracks last September. (See Doc. Nos. 55, 56).  The Coalition for Good Governance has invested scores of thousands of dollars in pursuing this litigation since the case was filed in July 2017 and has constantly pushed both for evidence to be preserved and for this action to be

permitted to proceed as quickly as possible to discovery and a merits hearing.  The

Coalition substituted its lead counsel in early December 2017, and the Coalition

Plaintiffs have been fully prepared to move forward with the litigation for more

than six months. The Coalition Plaintiffs respectfully request that this case should

now urgently be allowed to proceed so that this Court may protect the voting and

equal-protection rights of the Plaintiffs and all Georgia voters in the upcoming

November mid-term elections.

## III.   Supplemental Statement of the Curling Plaintiffs

The Curling Defendants respectfully submit that, regardless of any briefing

schedule set for Defendants' forthcoming motions to dismiss the Coalition

Plaintiffs' TAC, the Curling Plaintiffs should not be required to await completion

of that briefing and resolution of those motions before proceeding with their own

claims.[11]  The Curling Plaintiffs are fully prepared to put in whatever effort is

---

[11] If this Court were to conclude that the Curling Plaintiffs need to amend the
Second Amended Complaint under Rule 15—which the Curling Plaintiffs
respectfully submit is unnecessary since this Court has the power to dismiss certain
claims against certain Defendants under Rule 12 in response to Defendants'
pending motions to dismiss—then the Curling Plaintiffs would request the same
briefing schedule on any motions to dismiss as that contained in Plaintiffs'
proposed schedule.

needed to obtain relief before the November election and have been ready to do so since their new counsel first appeared in March.

First, the Curling Plaintiffs have withdrawn their opposition to certain relief sought in Defendants' pending motions to dismiss. This Court, as a result, could decide those motions at its earliest opportunity, since they are fully briefed. Alternatively, the Court could immediately grant those motions *only as to the relief the Curling Plaintiffs have consented to* and reserve judgment on the remaining relief Defendants seek in the pending motions to decide those issues when it rules on the new motions to dismiss the Coalition Plaintiffs' TAC. Under either approach, discovery could—and should—proceed immediately at least as to the Curling Plaintiffs' claims since no colorable immunity defense would remain as to those claims and Defendants previously agreed that no further briefing regarding the remaining claims in the Second Amended Complaint is necessary or appropriate (Doc. 219, ¶ 4).

Second, Defendants often attribute the current posture of this case to all Plaintiffs. But this is neither accurate nor fair. The Curling Plaintiffs are not responsible for the unusual circumstances that arose last year that led to the delay in this case. A conflict evidently arose between another Plaintiff and prior counsel that led to the end of that counsel's representation of that Plaintiff. The Curling

Plaintiffs then lost their prior counsel—over their objections—because that conflict was argued as a basis to disqualify their prior counsel from this case entirely. This forced the Curling Plaintiffs to have to find new counsel with the time and resources to handle this important, complex case on an expedited and *pro bono* basis. It would greatly compound the prejudice the Curling Plaintiffs already suffered from these unusual circumstances to now require them to suffer further delay due to the Coalition Plaintiffs' decision to file an amended complaint, leading to new motions to dismiss. This also would extremely prejudice Georgia voters who need the relief sought in this case before another election.

In sum, the Curling Plaintiffs respectfully submit that the unfortunate and unusual circumstances involving a single Plaintiff in this case that led to the current posture should not lead to further delay and prejudice with respect to the Curling Plaintiffs' claims and the important relief they seek. The Curling Plaintiffs and their counsel will bring all the resources required for them and the Court to move this case forward expeditiously and to obtain relief in time for the November election.

## **CONCLUSION**

Plaintiffs respectfully request that the Court adopt the schedule they have proposed.

Dated: June 20, 2018.

Respectfully submitted,

*/s/ Robert A. McGuire, III*
**Robert A. McGuire, III**
Admitted Pro Hac Vice (ECF No. 125)

*Attorney for Plaintiff Coalition for Good Governance*

ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, WA  98104-2205
ram@lawram.com
(253) 267-8530

*/s/ William Brent Ney*
**William Brent Ney**
GA Bar Number 542519

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

NEY HOFFECKER PEACOCK & HAYLE, LLC
One Midtown Plaza, Suite 1010
1360 Peachtree Street NE
Atlanta, GA 30309
(404) 842-7232

**Bruce P. Brown**
Georgia Bar No. 064460

*Attorney for Plaintiff Coalition for Good Governance*

Bruce P. Brown Law LLC

1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
 (11th bbrown@brucepbrownlaw.com
(404) 881-0700

**Cary Ichter**
Georgia Bar No. 382515

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis*

Ichter Davis, LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, GA 30326
cichter@IchterDavis.com
Tel.: 404.869.5243
Fax: 404.869.7610

/s/ Adam M. Sparks
Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

David D. Cross (admitted *pro hac vice*)
Jane P. Bentrott (admitted *pro hac vice*)
John P. Carlin (admitted *pro hac vice*)
Catherine Chapple (*pro hac vice* pending)
Robert W. Manoso (*pro hac vice* pending)

MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JBentrott@mofo.com
JCarlin@mofo.com
CChapple@mofo.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

## **CERTIFICATE OF COMPLIANCE WITH LR 5.1C, NDGa**

I hereby certify pursuant to LR 7.1D, NDGa that the foregoing document has been prepared with one of the font and point selections approved by this Court in LR 5.1C, NDGa, using a 14-point Times New Roman font.

*/s/ Robert A. McGuire, III*
**Robert A. McGuire, III**
Admitted Pro Hac Vice (ECF No. 125)

*Attorney for Plaintiff Coalition for Good Governance*

ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, WA  98104-2205
ram@lawram.com
(253) 267-8530

*/s/ William Brent Ney*
**William Brent Ney**
GA Bar Number 542519

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

NEY HOFFECKER PEACOCK & HAYLE, LLC
One Midtown Plaza, Suite 1010
1360 Peachtree Street NE
Atlanta, GA 30309
(404) 842-7232

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2018, I electronically filed the foregoing JOINT NOTICE OF PLAINTIFFS PROPOSING A SCHEDULE with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, according to the Court's Electronic Mail Notice List.

/s/ Robert A. McGuire, III
**Robert A. McGuire, III**
Admitted Pro Hac Vice (ECF No. 125)

*Attorney for Plaintiff Coalition for Good Governance*

ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, WA  98104-2205
ram@lawram.com
(253) 267-8530

/s/ William Brent Ney
**William Brent Ney**
GA Bar Number 542519

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

NEY HOFFECKER PEACOCK & HAYLE, LLC
One Midtown Plaza, Suite 1010
1360 Peachtree Street NE
Atlanta, GA 30309
(404) 842-7232