

April 16, 2018

**By Email**

Roy E. Barnes
John F. Salter
Barnes Law Group, LLC
31 Atlanta Street
Marietta, GA 30060

Re: *Curling, et al. v. Kemp, et al.,* No. 17-CV-02989-AT (N.D. Ga.)

Dear Governor Barnes and Mr. Salter:

Together with Robert McGuire, Cary Ichter and William Ney, I represent the Coalition for Good Governance, Laura Digges, William Digges III, Ricardo Davis and Megan Missett ("the Coalition Plaintiffs") in the above-styled litigation. The purpose of this letter is to make another urgent demand upon your clients Brian P. Kemp, the Secretary of State of Georgia, and Georgia State Election Board Members David J. Worley, Rebecca N. Sullivan, Ralph F. Simpson, and Seth Harp (the "State Election Board"). Specifically, the Coalition Plaintiffs demand that Secretary Kemp and the Election Board exercise their power, authority and responsibilities under Georgia law and the United States Constitution to conduct the upcoming 2018 elections involving federal and state offices, specifically the May 22, 2018 primary election, any resulting July 24, 2018 runoff elections, and the November 6, 2018 elections, and any special elections, using hand-marked paper ballots in lieu of the Direct Recording Electronic ("DRE") machines.

The unreliability, unverifiability and vulnerability of Georgia's DRE systems is the subject of daily local and national news reports and continuing warnings from federal agencies, such as the Department of Homeland Security, the Election Assistance Commission, and the Federal Bureau of Investigation. As recently as last month, the U.S. Senate Select Committee on Intelligence renewed its warnings concerning the unacceptable risks of paperless electronic voting systems of the type Georgia uses. We need not repeat here the many warnings from the authorities and private sector experts concerning the urgent need to decommission Georgia's DRE machines in favor of paper ballots.

As the Coalition Plaintiffs have explained in detail in their Proposed Third Amended Complaint, filed on April 4, 2018, because Georgia's DRE touchscreen voting machines are insecure, lack a voter verified paper audit capacity, fail to meet minimum statutory requirements, and deprive in-person voters of the ability to cast a secret ballot

Roy E. Barnes
John F. Salter
April 16, 2018
Page 2 of 8

as guaranteed by Ga. Const. Art. II, § 1, ¶ 1, requiring in-person voters to use those machines violates the voters' constitutional rights to have their votes recorded in a fair, precise, verifiable, and anonymous manner, and to have their votes counted and reported in an accurate, auditable, legal, and transparent process.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The secret ballot—"the hard-won right to vote one's conscience without fear of retaliation"—is a cornerstone of this right to freely vote for one's electoral choices. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995).

In their Proposed Third Amended Complaint, the Coalition Plaintiffs have explained in detail the factual and legal basis for their claims for injunctive relief. The Coalition Plaintiffs again urge the Secretary and the State Election Board to take immediate remedial action to protect the 2018 elections by requiring the statewide use of hand-marked paper ballots. As explained below, the Secretary and the State Election Board have the statutory authority to take this remedial action, and have feasible, economic and practical means for replacing DREs machines with paper-ballot voting immediately.

The Coalition and its supporters have made these or similar demands repeatedly over the past eleven months, and they are made again here with renewed urgency.

### A. Statutory Authority

The Secretary stated in his Brief Supporting the State's Motion to Dismiss that he has the "discretionary authority to choose voting equipment for counties." (Doc. 83-1 at 20, 21). Indeed, the Secretary and the State Board have selected, and the State has provided, both DRE voting machines and paper ballot optical scanners for every county in Georgia.

Paper ballots have been an authorized form of voting under Georgia law continuously for over 240 years. (Article IX Georgia Constitution of 1777). Paperless mechanical lever voting machines were first permitted in approximately 1930 and optical scanners were authorized for the counting of paper ballots by 1981. (*See* O.C.G.A. §§ 21-2-280). DRE machines were first permitted in 2002. Ga. L. 2002, p. 598; Ga. L. 2003, p. 517. None of these laws authorizing mechanical or electronic voting systems, however, required their use or supplanted the authority to use hand-counted or electronically counted paper ballots.[1]

---

[1] Indeed, numerous Georgia statutes authorize, require or contemplate the use of paper ballots today. *See, e.g.*, O.C.G.A. § 21-2-280; § 21-2-281; § 21-2-366; and § 21-2-4-483.

Roy E. Barnes
John F. Salter
April 16, 2018
Page 3 of 8

O.C.G.A. § 21-2-379.3 permitted Georgia's first use of DRE voting systems in 2002 and required that the Secretary of State provide DRE equipment to all counties, after funds were appropriated by the General Assembly. The law, however, does not mandate their use. In fact, the State provided both DREs and optical scanning equipment for paper ballots. Further, counties retain the statutory authority to use optical scanning equipment to scan and count paper ballots, and absentee mail-in and provisional ballots.

In addition, under O.C.G.A. § 21-2-379.2, the Secretary has the authority to revoke his approval of a DRE voting system if he re-examines the system and determines that it "can no longer be safely or accurately used by electors at primaries or elections . . . because of any problem concerning its ability to accurately record or tabulate votes." An examination of the evidence and undisputed academic research would require such a finding and a wholesale revocation of Georgia's DREs. However, given the underlying statutory authority to use paper ballots (either hand-counted or counted by optical scan equipment), and the absence of any state law requiring use of DREs, the replacement of the DREs in lieu of paper ballots does not require the Secretary to invoke O.C.G.A. § 21-2-379.2.

It is true that on April 17, 2005, the State Election Board promulgated Rule 183-1-12-.01 which requires the use of DREs for in-person voting for county, state and federal elections. In doing so, the State Election Board clearly exceeded its authority under Georgia law, which does not require DREs to be used and explicitly allows the use of paper ballots. The General Assembly has charged the State Election Board to promulgate rules to ensure the "legality and purity in all primaries and elections." O.C.G.A. § 21-2-31. Given the overwhelming evidence that the DREs are not reliable or secure, and cannot comply with the operational and security requirements of O.C.G.A. § 21-2-379.1 *et seq.*,[2] the Election Board has the statutory duty to repeal Rule 183-1-12-.01 immediately, and can do so on an emergency basis. In any event, the Board's Rule provides no defense to the mandates of state and federal law.

In sum, the Secretary and the State Election Board have the clear statutory authority and duty to discontinue the DRE voting systems and to order the use of hand-marked paper ballots.

### B. Practical and Feasible Means for Using Paper Ballots

---

[2] *See* Second Amended Complaint ¶¶ 110-121 for details.

Roy E. Barnes
John F. Salter
April 16, 2018
Page 4 of 8

There are at least three feasible methods of conducting paper ballot elections in 2018. Each county board of elections should be permitted to choose the paper ballot system that best suits local needs for conducting a secure election in their jurisdiction.

1. <u>Precinct optical scanning of paper ballots</u>

    (i) Method: voters hand-mark paper ballots and insert the ballots into the Accu-Vote OS optical scanners of the type currently in use for paper ballots. Votes are tabulated by the optical scanners at the polling location after polls close, and the tabulated results are posted on the door of the polling place. Then, the tabulated results are securely transported from the polling location to the county election office by hand delivery of the memory cards and results tapes along with all balloting materials. Unofficial results can be immediately emailed from the polling place to the county election office using digital photos of the results tapes, while county officials await the election night hand delivery of the secured original records.

    (ii) Statutory authority: O.C.G.A. §21-2-483(a). This is the best overall solution, and is the method that Georgia used prior to the 2002 implementation of the DREs. Specific procedures are provided in Title 21, Chapter 2, Article 11 Part 5, and security requirements can be updated and strengthened by promulgation of Election Board Rules.

2. <u>Central count optical scanning of paper ballots</u>

    (i) Method: voters hand-mark paper ballots and cast them into traditional secured ballot boxes at the polling locations. After polls close, the locked boxes are securely transported to the county elections office for ballot counting and reporting using the currently-owned and state-approved Accu-Vote OS scanners. Vote totals for each precinct and the county would be consolidated by the county Elections Department and reported to the public and the Secretary of State using the current GEMS election management system. Although "precinct scan" (described in 1 above) is preferable from a security perspective, the central count method may be temporarily attractive to counties that are concerned about training enough precinct workers to use one scanner

      in each polling place.

   (ii) Statutory authority: O.C.G.A.§ 21-2-483(a). Specific procedures are provided in Title 21, Chapter 2, Article 11 Part 5, and security requirements can be updated and strengthened by promulgation of Election Board Rules

3. Traditional hand-counted paper ballots

   (i) Method: Voters hand-mark paper ballots, casting them in a traditional secured ballot box. The ballots are manually counted by teams of poll workers in the neighborhood precincts, typically within two hours of the closing of the polls. Unofficial results could be immediately transmitted by an emailed digital photo of the precinct tally sheets, to be immediately followed by Election Night hand delivery of the secured original tally sheets, ballots, and election records to the county Election Board. This is an easily implementable alternative, particularly for the May and July primaries in smaller population counties.

   (ii) Statutory authority: O.C.G.A.§21-2-280. Numerous Georgia municipalities employ hand counted paper ballots routinely for all municipal elections with detailed procedures are provided by Title 21, Chapter 2, Article 11, Part 2.

  In addition, in jurisdictions where optical scan equipment is used, and given the well-documented security risks associated with the Accu-Vote OS and GEMS election management system, it is imperative that, prior to programming for the 2018 elections, such components be thoroughly disinfected and determined to be free from any unauthorized software code. Trusted build copies of the approved software must be reinstalled on all machines after the machines have been fully examined or replaced. It is also imperative that robust post-election audits of the unofficial results be completed before the election results are certified.

  The State has the equipment, supplies, software licenses and know-how necessary for all of these three alternatives. The paper ballots needed for these methods are already required to be printed for each precinct for use as mail-in ballots and provisional ballots. The counties merely need to increase the number of paper ballots ordered. A larger paper ballot print order will be a minimal cost, particularly when

Roy E. Barnes
John F. Salter
April 16, 2018
Page 6 of 8

compared to the cost of moving, storing, securing and setting up and taking down the DRE equipment.

As for the scanning equipment: the state owns approximately 1,000 Accu-Vote OS optical scanners used for counting mail-in and provisional ballots. The number of additional scanners needed, if any, will depend on which of the three methods various counties select. If additional scanners are required, other states and vendors have hundreds of surplus Accu-Vote OS machines that can be borrowed or rented inexpensively. Georgia already licenses and uses the software necessary for deployment of either of the optical scan methods, and election personnel in the county offices are already trained on the necessary equipment.

### C. Sufficient Time Before Elections to Address the Problems

As you know, over the past eleven months, the Coalition Plaintiffs and other Coalition members have initiated numerous requests to Secretary Kemp and State Election Board Members to abandon the non-compliant DRE system and convert to paper ballots to ensure the security of Georgia's elections.[3]

Though these warnings and requests have not been heeded, there is still enough time to implement reasonable interim remedies. Virginia was faced with a similar election security issue in 2017. On September 8, 2017, Virginia's State Board of Elections decertified all DREs in the state because of concerns about the integrity of DRE voting systems.[4] Within two months, on November 7, 2017, twenty-two Virginia

---

[3] Prior notices and demands include the following: May, 2017 Change.org citizens petition to use paper ballots for the June 20, 2017 6th Congressional District runoff election (see emails directed to T. Fleming in Secretary of State' Office); May 10, 2017 Georgia voters' request that Secretary Kemp re-examine the DRE voting system under the provisions of O.C.G.A. § 21-2-379.2, with technical documentation supporting the necessity of halting the use of the DRE system (see May 10, 2017 email to T. Fleming and W. Harvey of SOS office); May 17, 2017 Georgia voters' follow up request for re-examination of DRE voting system with additional supporting technical documentation of inadequate system security (see May 17, 2017 email to T. Fleming); May 19 and June 2, 2017 Georgia voters' additional follow-up requests for response on DRE system re-examination prior to June 20, 2017 election (see emails to T. Fleming); May 25, 2017 complaint and motion for temporary restraining order to prohibit the use of the DRE voting system and to require use of paper ballots in the June 20, 2107 runoff election (Fulton County Superior Court, Case No. 2017CV290630); July 3, 2017 litigation to challenge the use of DRE voting systems in Georgia (N.D. Ga., Case No. 17-cv-02989).

[4] https://www.elections.virginia.gov/Files/Media/Agendas/2017/SBEResolutiondecertifyingDREs09-08-17.pdf

Roy E. Barnes
John F. Salter
April 16, 2018
Page 7 of 8

counties had immediately and successfully converted to hand-marked paper ballots. In the case of Georgia, Coalition's demands alone have been outstanding for eleven months, giving officials more than adequate time to prepare for hand-marked paper ballot elections. Additionally, officials in the Secretary of State's office have acknowledged the compromised nature of the voting system since its reporting of the August 24, 2016 breach at Center for Election Systems, and no material action has been taken to mitigate the impact of the security failures on voting system components.

Though the above methods cure the constitutional and statutory infirmities that plague the current system, and would greatly enhance voter confidence, the State should consider in due course the best long-term hand-marked paper ballot technology. Temporarily using the currently owned Accu-Vote OS paper ballot system, and hand counts for smaller counties, will permit a more deliberate and phased-in adoption and implementation of a new paper ballot voting system, without undue time pressures driven by the urgent need to decommission the DRE units.

### D. Audit of Voter Registration Database

It is undisputed that the State's entire voter registration database including Personally Identifiable Information ("PII") for over 6.5 million voters was unprotected and available on the Center for Election System server to anyone with an internet connection from at least August 24, 2016 until at least March 3, 2017. Additionally, on April 15, 2017, equipment and memory cards containing the entire state voter registration database, also including PII, was stolen and not recovered. Such exposure permitted almost unlimited opportunities for malicious actors to alter voters' registrations including eligibility for voting in certain contests. Voters whose data was disclosed have not been notified of this inappropriate disclosure despite the legal requirement to do so under O.C.G.A § 10-1-912.  *See* Second Amended Complaint ¶¶ 146-153.

Further, Fulton County officials have acknowledged that there are "glitches" in the voter registration database programs that can cause voters to be disenfranchised, such as Fulton voter Brian Blosser. *See* Proposed Third Amended Complaint ¶ 152.

The November 6, 2018 general election is the first statewide general election scheduled after the data breaches and data theft were reported. The voter registration database should be responsibly and independently audited in advance of the general election to attempt to detect any malicious manipulation of the database that may cause voter disenfranchisement or disruption during the election. Voters should be notified of the known security breaches and asked to verify their voter registration on line well in advance of the election dates.

Roy E. Barnes
John F. Salter
April 16, 2018
Page 8 of 8

In sum, if the remedial action described above is initiated immediately, the Secretary and the State Election Board have sufficient time and resources to ensure that Georgia citizens have a far more reliable and secure election system in the upcoming primaries and general elections, which will greatly enhance voter confidence. We look forward to your immediate response, and welcome any questions you may have.

Sincerely,

Bruce P. Brown

cc:   Cary Ichter
      Robert A. McGuire, III
      William Brent Ney
      Marilyn R. Marks
      Laura Digges
      William Digges, III
      Ricardo Davis
      Megan Missett
      David D. Cross
      Halsey G. Knapp, Jr.