**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, et al.,** ) | |
| ) | |
| Plaintiffs,  ) | CA No. 1:17cv02989-AT |
| ) | |
| v.  ) | |
| ) | |
| **BRIAN KEMP, et al.,**  ) | |
| ) | |
| Defendants.  ) | |

**BRIEF IN SUPPORT OF DEKALB DEFENDANTS' RESPONSE
IN OPPOSITION TO COALITION PLAINTIFFS' MOTION FOR
ISSUANCE OF SUBPOENA**

The Coalition for Good Governance, Laura Digges, Williams Digges III, Megan Missett, and Ricardo Davis ("Coalition Plaintiffs") have moved this Court for the issuance of a subpoena duces tecum to a non-party under Rule 45 of the FRCP, Doc. No. [230], making the false allegation that the "DeKalb Board, reportedly knowingly used and altered the electronic records in the DRE memory" of two sequestered DRE machines by using those machines to "conduct a recount of the Senate District Recount District 41 May 22, 2018 primary election." Doc. No. [230-1], p. 2. The DeKalb Defendants have absolutely not altered the memory of the two sequestered DRE machines and have instead gone out of their way to

preserve the machines while still meeting their legal obligation to count the votes cast on those machines.

Based on these false allegations, the Coalition Plaintiffs have requested that the Court order the DeKalb Defendants to turn over certain electronic records, other documents, and voting equipment so Plaintiffs can conduct "immediately required discovery." Doc. No. [230-1], p. 1. Alternatively, the Coalition Plaintiffs seek to have the DeKalb Defendants turn over the requested materials to a third-party "for safe keeping until further order of the court." Doc. No. [230-1], p. 2.

The DeKalb Defendants are aware that there was an erroneous electronic ballot issued to an individual who is not a party to this lawsuit on May 4, 2018 at the South DeKalb Advance Voting Precinct. However, the error was corrected while the voter was still on site, allowing him to successfully cast his ballot, and the evidence gathered by DeKalb County and the Secretary of State show that the most likely cause of the ballot error was not a defect with the voting equipment, but rather the result of incorrect data entry by the poll-worker creating the ballot. Further, the accusations leveled in the Coalition Plaintiffs' motion regarding spoliation of evidence - which are only supported by double hearsay statements in a letter written by Coalition Plaintiffs' attorney – are wholly unsupported by the facts as

demonstrated in the Declarations of Erica Hamilton and Chris Harvey, attached hereto as Exhibits "A" and "B" respectively.

The Coalition Plaintiffs' Motion for Issuance of Subpoena should be denied because the allegations of spoliation supporting the motion are demonstrably false. Additionally, the facts demonstrate that the evidence sought for production is being preserved and can be secured until such time as this Court rules upon the defendants' motions to dismiss or otherwise permits discovery to begin. Given the security concerns with releasing electronic voting machines to parties who are not authorized to access those machines, the Court should deny Plaintiffs' motion and allow the machines to be preserved at their current secure location.

## I. FACTUAL BACKGROUND

On May 5, 2018, counsel for the Coalition Plaintiffs, Cary Ichter, contacted counsel for the DeKalb Defendants, requesting by email that DeKalb remove and secure two specific DRE Machines as well as the ExpressPoll electronic voter poll books and scanners used at the South DeKalb Advance Voting Precinct. *See*, Declaration of Erica Hamilton, Exhibit "A" ("Hamilton Declaration"), ¶ 3. Counsel based his requests upon the allegations of a Georgia Tech professor named Robert Kadel ("Kadel"), who alleged that when he attempted to vote at the South DeKalb

Advance Voting site on the previous day, the electronic ballot contained choices for races in districts where he did not reside.

After receiving this information from Plaintiffs' counsel, Erica Hamilton, the Director of the DeKalb County Board of Registrations and Elections contacted Chris Harvey, Elections Director for the Georgia Secretary of State's Office, and arranged to meet him at the South DeKalb Advance Voting Precinct at 2:00 p.m. (Hamilton Declaration, ¶ 5.)  Once they arrived, they gathered information about the alleged ballot error reported by Kadel.  Hamilton summarized the information gathered as follows:

> "…a male individual entered the South DeKalb Advance Voting site on Friday, May 4, 2018 to cast his ballot for the May 22, 2018 Primary Election.  The staff member who served the voter checked his registration status and reviewed his precinct/combo information via ENET, the Georgia Voter Registration System, and then a Voter Access Card was created for him on ExpressPoll using the drop-down menu system employed for advance voting.
>
> 9.
>
> The voter took his Voter Access Card to a DRE machine, but prior to casting his ballot, he notified the staff that the ballot on the screen did not match his sample ballot because he was seeing candidates for the 5th District Congressional Democratic Primary instead of the Democratic Primary for the 6th District where he lives.

The staff followed the procedures for cancelling the ballot and issuing another card with the correct districts at which time the voter was able to cast his ballot.

10.

After reviewing the information from staff on Saturday about the ballot error, it was determined that the most likely reason for the incorrect ballot was that the staff member who created the initial Voter Access Card for the voter inadvertently selected the incorrect precinct/combo selection from the ExpressPoll menu. The incorrect precinct/combo selected by the poll worker contained balloting information associated to the 5th Congressional District race and was located directly above the correct precinct/combo selection on the ExpressPoll menu, while the correct precinct/combo selection contained balloting information associated with the 6th Congressional District race."

(Hamilton Declaration ¶ 9-10).

Erica Hamilton's conclusion is further echoed and supported in the Declaration of Chris Harvey, where he summarized the differences between ballot creation on election day voting versus the manual ballot creation required at Advanced Voting locations and opined that:

"The most probable explanation of the ballot-configuration issue regarding the above-described male voter was that the second poll worker, in programming the first voter access card using the

- 5 -

>ExpressPoll device, inadvertently manually selected an incorrect field on the list of ballot combinations that were displayed directly above the proper field corresponding to the male voter's correct ballot, thus generating a ballot on the voter's first voter access card that presented a vote for the 5th Congressional District. Such an inadvertent manual-selection would have nothing to do with the functionality, accuracy or reliability of either the memory card or DRE machine themselves, but is attributable to touching the screen slightly above the intended target and a poll worker not confirming his or her selection."

(Harvey Declaration, ¶ 10(b)).

Even though the DeKalb Defendants' and the Secretary of State's representatives determined that the machines were functioning properly, out of an abundance of caution, they sealed and sequestered the two DRE machines, along with the ExpressPoll book in question, and the Voter Access Cards. The sequestration was observed and documented by Chris Harvey. (Hamilton Declaration, ¶¶ 12-13).

When it was time for election totals to be calculated on the night of May 22, 2018, the two sequestered DRE machines were brought to the tabulation area from their secure location at the office of the DeKalb Board of Registration and Elections. At that point, the machines were unsealed, the voter memory cards were removed, and the votes on each machine were tabulated by inserting the memory cards into

one of the 12 separate TSX (DRE) Machines dedicated to tabulating the vote totals. Once the tabulation was complete, the memory cards were returned to their corresponding machines, and the machines were resealed and placed back in their secure location. The entire process was witnessed by an investigator from the Secretary of State's Office. (Hamilton Declaration, ¶¶ 15-17).

After the official results of the election were certified, Sabrina McKenzie requested a recount of the Senate District 41 Democratic Primary. The recount took place on June 6, 2018 and was performed in the same manner as employed in the original tabulation including the process for unsealing the sequestered machines, tabulating the votes from the memory cards, and resealing the machines. The entire process was performed in the presence of Ms. McKenzie and other observers.

At no time since May 5, 2018 have any media been introduced to the sequestered machines, nor has their data been otherwise altered. The sequestered DRE machines and voting equipment are still stored in a secure location at the office of the DeKalb Board of Registration and Elections.

Further, no evidence has ever been provided to the DeKalb Board to demonstrate that the continued use of DRE machines and other voting equipment "wipes" or destroys data relevant to this case or other matters. Rather, according to communications with the technical staff of the Secretary of State, data from the DRE

machines used in all relevant elections at issue in the present litigation is still contained in the archival memory of the DRE machines and was not destroyed by use of the machines in subsequent elections, nor would it be destroyed by use of the machines in upcoming elections later this year. (Hamilton Declaration ¶ 30).

## II. ARGUMENT AND CITATION OF AUTHORITY

The DeKalb Defendants were voluntarily dismissed from this action while discovery was stayed pending the Court's determination of a motion to dismiss asserting immunity defenses. Thus, the Court should not grant Plaintiffs the authority to subpoena records absent a showing of bad faith. To permit anything else would allow Plaintiffs to disregard this Court's authority to determine whether DeKalb was immune from discovery in the first place. As outlined above, the factual basis underlying the Coalition Plaintiffs' motion is faulty, particularly the completely unsupported allegations regarding the supposed use of sequestered DRE machines to perform recounts. Therefore, the Plaintiffs have not shown bad faith or other good cause for allowing the requested subpoena of records, and the Court should deny Plaintiffs' motion.

Coalition Plaintiffs have moved this Court for an order permitting the issuance of a subpoena, claiming in their motion that Rule 45 allows a party to subpoena a non-party without reference to discovery timing, but noting that the DeKalb

Defendants have only recently been dismissed as a party. Doc. No. [230-1], p. 1. Importantly, this Court stayed discovery in its Order of September 5, 2017, noting that there were pending motions to dismiss raising immunity defenses. Doc. No. [56]. Indeed, DeKalb Defendants raised both sovereign immunity and qualified immunity in their motions to dismiss.

"The defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery." <u>Blinco v. Green Tree Servicing, LLC</u>, 366 F.3d 1249, 1252 (11th Cir. 2004)). While district courts are accorded "wide discretion in ruling upon discovery motions", a motion for discovery "requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." <u>Harbert Int'l v. James</u>, 157 F.3d 1271, 1280, (11th Cir. 1998),

"In qualified immunity cases, the…balancing is done with a thumb on the side of the scale weighing against discovery…[O]nce a defendant raises the defense, 'the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not

subjected to unnecessary and burdensome discovery or trial proceedings.'" <u>Harbert</u>, 157 F.3d 1280, *citing to*, <u>Crawford-El v. Britton</u>, 523 U.S. 574, (1998).[1]

DeKalb Defendants' motion to dismiss and immunity defenses were still pending at the time the Coalition Plaintiffs amended their Complaint and the Curling Plaintiffs voluntarily dismissed the DeKalb Defendants from this action. Therefore, because the DeKalb Defendants asserted immunity, and the Court's discovery stay was still in place at the time of their dismissal, the Coalition Plaintiffs should not be permitted to obtain discovery that they would have not otherwise been permitted to obtain.

DeKalb Defendants ask that the Court exercise its discretion so that they are "not subjected to unnecessary and burdensome discovery." <u>Id</u>. In this instance, the subpoena is particularly unnecessary because the allegations serving as the basis for the Plaintiffs' motion have been demonstrated as false by the facts set forth in the Declarations of Erica Hamilton and Chris Harvey. Plaintiffs' stated concerns about DeKalb's destruction and alteration of evidence were based upon misconstrued hearsay statements. But as the Declarations accompanying this motion demonstrate,

---

[1] The ruling in <u>Harbert</u> addresses discovery in the context of a Rule 56 motion for summary judgment, but the same rationale would apply in this instance where the Coalition Plaintiffs seek discovery from parties who were asserting immunity defenses at the time they were dismissed.

- 10 -

the DRE machines and other equipment from the South DeKalb Advance Voting Site have been protected and secured from the first day DeKalb learned of Plaintiffs' concerns, and they remain secured to this day. Plaintiffs have no reason to believe that DeKalb will do anything with those machines until the Court rules on the State Defendants' motions to dismiss. Therefore, the DeKalb Defendants request that the Court deny the Coalition Plaintiffs' motion as unnecessary.

### III. CONCLUSION

The Coalition Plaintiffs amended their complaint to dismiss the DeKalb Defendants while DeKalb's motion to dismiss was still pending. To permit the Coalition Plaintiffs to undertake discovery through the issuance of a subpoena would be an improper end-run around the discovery stay that was entered by this Court on September 5, 2017. Therefore, DeKalb Defendants request that the Court exercise its discretion against granting unnecessary discovery, particularly since the allegations in Plaintiff's motion are demonstrably unsupported by fact.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted this July 3, 2018.

/s/Daniel W. White
DANIEL W. WHITE
Georgia Bar No. 153033
SARAH G. HEGENER
Georgia Bar No. 534438
*Attorneys for DeKalb Defendants*

HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA 30060
dwhite@hlw-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2018 I electronically filed the foregoing BRIEF IN SUPPORT OF DEKALB COUNTY DEFENDANTS'S RESPONSE IN OPPOSITION TO COALITION PLAINTIFFS' MOTION FOR ISSUANCE OF SUBPOENA with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all attorneys of record.

/s/Daniel W. White
DANIEL W. WHITE
Georgia Bar No. 153033
*Attorney for DeKalb Defendants*

HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA 30060
dwhite@hlw-law.com