**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action** |
| **v.** ) | **No. 1:17-cv-02989-AT** |
| ) | |
| **BRIAN KEMP, ET AL.** ) | |
| ) | |
| **Defendants.** ) | |

**COALITION PLAINTIFFS' RESPONSE OPPOSING STATE**
**DEFENDANTS' MOTION TO DISMISS COALITION PLAINTIFFS'**
**<u>THIRD AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION. ...................................................................................1

II.     THE MOTION VIOLATES THE RULES. ...................................................4

III.    THIS COURT HAS SUBJECT-MATTER JURISDICTION........................5

        A.      Rule 12(b)(1)—Legal Standard.................................................5

        B.      This Court Has Subject-Matter Jurisdiction.............................7

        C.      The Motion's Jurisdictional Arguments Are Meritless........................9

                1.      Standing Is Sufficiently Pled. ....................................9

                        a)      Injury-In-Fact.................................................9

                        b)      Causation. .....................................................12

                        c)      Redressability. ...............................................13

                        d)      The "Self-Inflicted Harm" Argument............................14

                        e)      Coalition Has Organizational And Associational Standing. ..........................................................14

                2.      The Eleventh Amendment Does Not Bar Federal Claims For Prospective Injunctive Relief Against State Officers.........16

                3.      No Exceptions to *Ex Parte Young* Apply. ................................17

IV.     BOTH CLAIMS RAISED BY THE THIRD AMENDED COMPLAINT STATE VALID CLAIMS FOR RELIEF.....................................................18

        A.      Rule 12(b)(6)—Legal Standard.................................................18

        B.      Count I—Fundamental Right to Vote. .............................................18

                1.      Elements—Fundamental Right To Vote.................................18

                2.      Count I Sufficiently Pleads A Valid Claim. ...........................19

3.      Defendants' Arguments Against Count I Are Meritless...........19

C.      Count II—Equal Protection...................................................21

1.      Elements—Equal Protection...................................................21

2.      Count II Sufficiently Pleads A Valid Claim. ..........................22

3.      Defendants' Arguments Against Count II Are Meritless. ........23

D.      The State Board Members Are Properly Named As Defendants. ......25

V.      CONCLUSION................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Civil Liberties Union of Florida, Inc. v. Miami-Dade Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009) ....................................................................9, 14

*Arcia v. Florida Secretary of State*,
  772 F.3d 1335 (11th Cir. 2014) ..................................................................11, 15

*Campbell v. Rainbow City*,
  434 F.3d 1306 (11th Cir. 2006) ........................................................................22

*Carmichael v. Kellogg, Brown & Root Servs.*,
  572 F.3d 1271 (11th Cir. 2009) .....................................................................5, 6

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
  408 F.3d 1349 (11th Cir. 2005) ........................................................................11

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)...........................................................................................21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..............................................................................10, 14, 15

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ......................................................11, 15, 18, 25

*Crawford v. Marion County Election Bd.*,
  553 U.S. 181 (2008)...............................................................................18, 19, 25

*Crystal Dunes Owners Ass'n v. City of Destin*,
  476 Fed. Appx. 180 (11th Cir. 2012)................................................................21

*E & T Realty v. Strickland*,
  830 F.2d 1107 (11th Cir. 1987) ........................................................................24

*Edelman v. Jordan*,
  415 U.S. 651 (1974)...........................................................................................16

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) .........................................................................12

*FCC v. Schreiber*,
    381 U.S. 279 (1965)............................................................................................13

*Florida State Conference of N.A.A.C.P. v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) .........................................................................15

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) .........................................................................13

*Johnson v. Girl Scouts of the United States*,
    596 Fed. Appx. 797 (11th Cir. 2015)............................................................3, 21

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ...........................................................................6

*Lynch v. Baxley*,
    744 F.2d 1452 (11th Cir. 1984) .........................................................................12

*Massachusetts v. Missouri*,
    308 U.S. 1 (1939)...............................................................................................16

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)...........................................................................................17

*Randall v. Scott*,
    610 F.3d 701 (11th Cir. 2010) .............................................................................6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)...........................................................................3, 7, 10

*Stillwell v. Allstate Ins. Co.*,
    663 F.3d 1329 (11th Cir. 2011) .........................................................................18

*Summit Med. Assocs., P.C. v. Pryor*,
    180 F.3d 1326 (11th Cir. 1999) .........................................................................17

*U.S. v. Netyshenko*,
    No. 18-cr-00215-ABJ (D.D.C. filed Jul. 13, 2018).............................................7

*Weiland v. Palm Beach Cnty. Sheriff's Office,*
   792 F.3d 1313 (11th Cir. 2015) ........................................................23

*Williams v. Vermont,*
   472 U.S. 14 (1985)..........................................................................24

*Ex Parte Young,*
   209 U.S. 123 (1908)...................................................................16, 17

**State Cases**

*Favorito v. Handel,*
   285 Ga. 795 (2009) .............................................................3, 19, 21

*Lathrop v. Deal,*
   301 Ga. 408 (2017) ........................................................................16

**Federal Statutes**

42 U.S.C. § 1983 ...............................................................16, 19, 22, 23

52 U.S.C. § 21081(a)(2)(B)(i)..................................................................2

Help America Vote Act..............................................................2, 3, 21

**State Statutes**

O.C.G.A. § 21–2–366 ...............................................................................2

O.C.G.A. § 21–2–379.3 ............................................................................2

O.C.G.A. § 21–2–383(b).............................................................2, 16, 17, 25

O.C.G.A. § 21-2-383................................................................................25

**Rules**

Fed. R. Civ. P. Rule 12(b)(1) ..............................................................5, 6

Fed. R. Civ. P. Rule 12(b)(6).............................................6, 18, 20, 23, 25

Fed. R. Civ. P. Rule 12(d)........................................................................6

Fed. R. Civ. P. Rule 15(a)(3) ................................................................4

Fed. R. Civ. P. Rule 56(d)(2) ...............................................................6

LR 7.1(D), NDGa................................................................................5

LR 7.1(F), NDGa .................................................................................5

**Regulations**

Ga. Comp. R. & Regs. r. 183–1–12–.01 .................................. 2, 8, 12, 13, 16, 24, 25

**Constitutional Provisions**

U.S. Const., Amend. XI .................................................................9, 16

U.S. Const., Amend, XIV, § 1 (Equal Protection Clause)....................21, 22, 23, 24

U.S. Const., Art. III............................................................................7

**Other Authorities**

U.S. Election Assistance Comm'n Advisory No. 2005–004....................................2

U.S. Election Assistance Comm'n Advisory No. 2005–005....................................2

U.S. H. Rep. Cte. on H. Admin.–Democrats, *Election Security Update: Top 18 Most Vulnerable States* (July 2018) .........................................20

Plaintiffs Coalition for Good Governance ("Coalition"), Laura Digges, William Digges III, Megan Missett, and Ricardo Davis (together, the "Coalition Plaintiffs"), oppose the *State Defendants' Motion to Dismiss Coalition Plaintiffs' Third Amended Complaint* (with its brief, the "Motion") (Doc. 234), as follows:

## I.   INTRODUCTION.

The Motion is premised on a number of prominently repeated misrepresentations about the Third Amended Complaint (the "TAC") and applicable law. These divert attention from the substantive weakness of the Motion but ultimately have nothing to do with the sufficiency of the TAC.

First, the Motion repeatedly asserts that the Coalition Plaintiffs seek to require Georgia to hand count its elections. This is untrue. The TAC seeks a prohibition on voters being required to vote using DREs. (Doc. 226, at 71, ¶ A.)[1] Georgia's DREs are error-prone, hackable ***and*** produce unverifiable election results because they generate no auditable paper trail. Georgia's DREs permit elections to be erroneously determined without any way to detect errors and reproduce the true result. Optical scanning solves this problem by combining auditable paper ballots with automated counting that can be done quickly and cheaply, using certified equipment that Georgia already owns. Georgia law already permits the use of optical scanners. Post-election audits can verify optical-scan results. (Id. at 72, ¶ C.) The TAC's explicit goal is to secure verifiable elections, not to require hand-counting.

---

[1] All citations to docketed documents use the PACER-supplied page numbers.

1

Second, the Motion incorrectly asserts that DREs are mandated by Georgia statute. When DREs were first introduced in Georgia, the Georgia Code required the Secretary to supply counties with the initial inventory of DREs, O.C.G.A. § 21–2–379.3, but the General Assembly expressly authorized counties to purchase and use Secretary of State-certified paper-ballot optical scanners as their voting system, O.C.G.A. § 21–2–366. The statute conditionally mandates the use of DREs for in-person early absentee voting *if* DREs are used in polling places on Election Day. O.C.G.A. § 21–2–383(b). Only State Election Board ("SEB") Rule 183–1–12–.01 requires that DREs must be used in polling places. In other words, it is the SEB, not the Coalition Plaintiffs, that ignores Georgia law—in this instance a state statute that permits counties to choose to use optical scan voting systems instead of DREs.

Third, the Motion asserts that the Help America Vote Act ("HAVA") requires the State to provide DREs "or other voting system equipped for individuals with disabilities." This is misleading because HAVA does not require that *all* voters must therefore use DREs. More importantly, the Motion fails to disclose that Georgia's paperless DREs are non-compliant with HAVA's mandate that all voting systems, including DREs, must produce "a permanent paper record" of each vote. 52 U.S.C. § 21081(a)(2)(B)(i). The United States Election Assistance Commission ("EAC") advises that merely producing a paper printout of vote tallies does not satisfy this requirement. *See* EAC Advisory Nos. 2005–004, 2005–005.[2] It is ironic that the

---

[2] *See* https://www.eac.gov/payments-and-grants/guidance-policies-advisories/ (last visited Jul. 15, 2018)..

Motion relies upon HAVA to defend Georgia's paperless DRE voting system when that system is itself ***illegal*** under HAVA.

Fourth, the Motion asserts repeatedly that the outdated case of *Favorito v. Handel*, 285 Ga. 795 (2009), is somehow dispositive or preclusive of the TAC's claims. But the Motion provides no analysis to show that any of the three elements of *res judicata* is satisfied. *See Johnson v. Girl Scouts of the United States*, 596 Fed. Appx. 797, 799 (11th Cir. 2015). Nor can it, for there is neither identity of the parties or their privies nor a previous adjudication on the merits pertinent to ***this*** case. *Favorito* dealt with an entirely different, outdated configuration of Georgia's 2006-era, now irrelevant DRE voting system.

Fifth, the Motion asserts that the TAC alleges only a "generalized grievance." But "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The same is true of the injury to constitutional rights alleged here.

Once the Motion's misrepresentations of the TAC and applicable law are stripped away, what remains is an unpersuasive effort by the State Defendants to evade this Court's unbiased assessment of the constitutional deficiencies inherent in requiring voters to use Georgia's insecure and unreliable DRE voting system. Notwithstanding the Motion's protestations, this case is not an attempt by the

*Plaintiffs* to "seize the reins of Georgia's election system," but rather an effort to prevent *others* from doing so. Georgia voters—and only Georgia voters—should be determining the outcome of Georgia elections. But as long as Georgia continues to use DREs that are vulnerable to malicious users and equipment errors, the rights of Georgia voters to vote equally in fair elections will be violated, and Georgia's elections will continue to be plagued by voter misgivings that the reported outcomes do not reflect the electorate's intent. The Motion must be denied.

## II.   THE MOTION VIOLATES THE RULES.

At the outset, Coalition Plaintiffs object to both the untimeliness of the Motion and the excessive length of its brief. Each flaw alone merits denial of the Motion.

First, the Motion was due June 27—14 days after the TAC was docketed, *see* Fed. R. Civ. P. 15(a)(3)—but it was filed almost a week late. The State Defendants requested a deadline of July 3, (Doc. 228, at 1), just as the Plaintiffs requested an earlier deadline of June 25, (Doc. 229-1, at 1), but no order was entered. Therefore Rule 15(a)(3)'s 14-day deadline governs. Yet the State Defendants unilaterally proceeded as though the absence of court direction granted their proposal *sub silentio*.[3] The Motion is untimely and should be rejected on this ground alone.

---

[3] Defendants adopt the same "better-to-ask-forgiveness" approach to spoliation. Despite this Court's *order* that parties confer and engage the Court in disagreements about preservation, (Doc. 122, at 2), Defendants have (1) ignored Coalition Plaintiffs' requests for information needed to release records from litigation hold and then (2) excused themselves from their preservation duties since the Coalition Plaintiffs are so "difficult." Between gaslighting on preservation and unilaterally granting themselves a filing extension for the Motion, Defendants operate as if this Court's rules and orders do not apply to them. Some consequence is warranted.

Second, the Motion's 48-page supporting brief significantly exceeds the 25-page maximum length that is permitted without "***prior*** permission of the court." LR 7.1(D) (emphasis added). This Court has ordered all parties "to ask for additional pages ***in advance*** of filing their motions[.]" (Doc. 92, at 1 (emphasis added).)  This almost double-length brief is excessively long and prejudices the Coalition Plaintiffs, who must now respond within 25 pages or obtain an extension themselves. Under LR 7.1(F), this Court has discretion to decline to consider the State Defendants' brief.  The Court should do so and should reject the Motion accordingly.

## III.   THIS COURT HAS SUBJECT-MATTER JURISDICTION.

The Motion first asserts that this Court lacks subject-matter jurisdiction due to want of standing and sovereign immunity.  These objections have no merit.

### A.   Rule 12(b)(1)—Legal Standard.

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In a facial attack, the Court assumes the complaint's jurisdictional allegations are true and evaluates their sufficiency to plead the elements of jurisdiction.  In a factual attack, the Court is asked to evaluate whether the allegations are actually true based on evidence and facts extrinsic to the complaint.  *Id.*  The Motion's jurisdictional arguments focus on the sufficiency of the TAC's allegations, so the Motion appears to be a facial attack on jurisdiction.

The Motion contains a few references to extrinsic matters.  For example: The Motion notes the Secretary conducted a "reexamination" of Georgia's voting system, (Doc. 234-1, at 25–26);  asserts the claims of individual Plaintiff Ricardo Davis are barred by *res judicata*, (Id. at 49, n.19); and references testimony by Coalition's executive director, given in a different lawsuit, as well as Coalition's website. (Id. at 31 & n.13.)  Each of these extrinsic facts either is irrelevant to standing or is aimed at just a single plaintiff. None is capable of defeating the Coalition Plaintiffs' collective standing on either claim.  The Motion is thus addressed as a facial attack despite its assertion of these extrinsic facts.[4]

"Facial attacks on the complaint require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction[.]" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted). "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true," *Carmichael*, 572 F.3d at 1279, and "draw all reasonable inferences in plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

---

[4] If in the Court's view the jurisdictional arguments do amount to a potentially meritorious factual attack, then the Coalition Plaintiffs respectfully request that they be given a "reasonable opportunity" to adduce additional extrinsic jurisdictional facts for the Court to consider before it rules on the 12(b)(1) ground of the Motion, consistent with the procedures provided by Rules 12(d) and 56(d)(2).

**B.     This Court Has Subject-Matter Jurisdiction.**

The TAC establishes Article III standing because the Coalition Plaintiffs sufficiently allege they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

The TAC alleges that Georgia's DREs are vulnerable to manipulation and have been exposed to unauthorized intruders. Specifically: The server hosting Georgia's DRE computer code was open to the world from at least August 2016 to March 2017. (Doc. 226, at 38, ¶¶ 94–95.) Secretary Kemp's own agents at KSU described the server as having "exploitable," "severe," and "40+ critical vulnerabilities." (Id. at 40–41, ¶¶ 101–02.) These vulnerabilities left the server at the mercy of "malicious users." (Id. at 35, ¶ 98.) During this extended period of vulnerability, the KSU server "hosted the election-specific software applications and data that are re-installed on every piece of voting and tabulation equipment used to conduct Georgia's elections in advance of each election[.]" (Id. at 43–44, ¶ 112.)

The vulnerable server was is known to have been accessed by unauthorized individuals. (Id. at 39–42, ¶¶ 96–107.) During this same time period, Russian military intelligence officers probed election websites *in Georgia* for vulnerabilities. *See* Indictment, at 26, ¶ 75, *U.S. v. Netyshenko*, No. 18-cr-00215-ABJ (D.D.C. filed Jul. 13, 2018).[5] All logs of access by other, potentially malicious unauthorized users were destroyed by the Secretary of State's agents after this case was filed.  (Id. at

---

[5] *See* https://www.justice.gov/file/1080281/download (last visited Jul. 15, 2018).

47, ¶¶ 122–24.) After the server was finally isolated from the public Internet, the State Defendants made no efforts to identify and remove any malware that may have compromised the data and software stored on the server during its period of vulnerability. (Doc. 226, at 43–44, ¶ 112.) The same databases and software remain in use. Against this backdrop, the State Defendants still intend during the Relevant Upcoming Elections to enforce SEB Rule 183–1–12–.01, which requires all in-person voters to vote using DREs that run software installed from KSU's compromised server, while allowing absentee voters to vote paper ballots by mail.

The Coalition Plaintiffs alleged a number of past and future harms they have suffered and will imminently suffer as a result of the enforcement of DRE voting by the State Defendants.  (Doc. 226, at 57–65, ¶¶ 145–165.) Some of these harms are injuries suffered in the attempt to avoid or minimize the risks of voting on DREs, such as expenditures, inconveniences, and deprivation of the right to information, while other harms include outright disenfranchisement due to unexplained "glitches" in voting system software, and still other harms have involved the violation of voters' rights to freely vote their consciences and to be treated equally with other, similarly situated voters. In addition, the Coalition has diverted personnel and resources away from its ordinary activities in order to counteract the enforcement of SEB Rule 183–1–12–.01's requirement that in-person voters must use DREs on Election Day.  (Doc. 226, at 14–15, ¶¶ 18–21; at 54–57, ¶¶ 139–44.) These allegations are sufficient to establish standing on the part of each Coalition Plaintiff.

### C.     The Motion's Jurisdictional Arguments Are Meritless.

The Motion argues that this Court lacks subject-matter jurisdiction because the TAC's allegations are insufficient to allege standing and the claims are barred by the Eleventh Amendment.  The arguments are unpersuasive.

### 1.     Standing Is Sufficiently Pled.

The Motion asserts there is no standing because the allegations of the TAC do not show an injury, causation, or redressability; because the alleged injuries amount to the individual Coalition Plaintiffs "manufacturing" standing by voluntarily exposing themselves to injury; and because Coalition as an entity lacks associational standing.  These arguments must all be rejected.  Only one plaintiff need demonstrate standing for each claim.  *See American Civil Liberties Union of Florida, Inc. v. Miami-Dade Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009).  Here, every single one of the Coalition Plaintiffs has alleged injury, causation, and redressability.

### a)     Injury-In-Fact.

The Motion argues that the TAC has not alleged a valid injury-in-fact because the injuries alleged amount to a "generalized grievance" that is not concrete or particularized and because the injuries are premised on malicious interference and thus are either speculative or not imminent.  These objections lack merit because the injuries alleged by the TAC satisfy all the requirements of an injury-in-fact for both Counts I and II.

First, it is important to understand the character of the various injuries that have been alleged.  The injury to a voter from having to vote on an unreliable and

untrustworthy DRE machine is not just the injury that occurs when and if the DRE is hacked and the voter's vote is corrupted or lost—a scenario that the State Defendants indefensibly trivialize as speculative. Instead, a voter suffers an injury when she must pay the postage and suffer the inconvenience of voting early by mailing a paper absentee ballot in order to avoid using untrustworthy DREs; or when she does vote on a DRE and is burdened in her free exercise of the right by misgivings about whether her vote will be properly recorded or will be identifiable afterward as hers; or when her digital DRE ballot is incapable of being audited or scrutinized for intent in a close recount—unlike the paper absentee ballots.

All of these kinds of injuries, and more, are alleged by the TAC—both as past injuries and as threatened future injuries.  These injuries are not hypothetical; they do not "rest on speculation about the decisions of independent actors."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Far from being a "generalized grievance," each of these injuries is personal to the individual voter who suffers it. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spoke*, 136 S. Ct. at 1548. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist. …. 'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1548–49.

Second, an alleged injury in a voting case need not be the total frustration of the right to vote. "A plaintiff need not have the franchise wholly denied to suffer injury.  Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351–52 (11th  Cir. 2009) (requiring a voter to produce photo identification to vote in person was an injury sufficient for standing).  "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* at 1351.

Nor must the injury even be significant to suffice for purposes of standing. "The Supreme Court has rejected the argument that an injury must be 'significant'; a small injury, 'an identifiable trifle,' is sufficient to confer standing." *Id*. Even a mere inconvenience is enough.  *See Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (being wrongly identified as non-citizen sufficed as an injury); *Common Cause/Georgia*, 554 F.3d at 1351 (having "to make a special trip to the county registrar's office that is not required of voters who have driver's licenses or passports" sufficed); *Charles H. Wesley Educ. Found., Inc. v. Cox,* 408 F.3d 1349, 1352 (11th Cir. 2005) (injury of being unable to vote in home precinct sufficed).

Third, in case for prospective relief like this one, "Where we have found a sufficient imminence of future harm based on a past injury, the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same

11

manner as the previous injury." *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006). "Past wrongs do constitute evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction." *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984).

Finally, "[w]hen standing is questioned at the pleading stage, as it is here, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Elend*, 471 F.3d at 1208.

As these authorities make plain, the harms alleged by the TAC are clearly sufficient under applicable case law to establish injury-in-fact for purposes of standing. Since every one of the Coalition Plaintiffs has alleged harms that count as injury, and because the other requirements of standing are also met, each of the Coalition Plaintiffs has standing for each claim.

<b>b)   Causation.</b>

The Motion argues there is no causal connection between SEB Rule 183–1–12–.01's requirement that in-person voters must use DREs and injury to the Coalition Plaintiffs. This argument misrepresents the nature of causation required to establish standing. "[N]o authority even remotely suggests that proximate causation applies to the doctrine of standing. .... Instead, even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action

12

for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (internal citations and quotation marks omitted). Under this standard, causation plainly exists between injuries that the TAC alleges and the SEB's requirement that in-person voters must vote on DREs, whose software resided on a server that was open to the world from August 2016 to March 2017 with "exploitable," "severe," and "40+ critical vulnerabilities" at the mercy of "malicious users." (Doc. 226, at 38, ¶¶ 94–95; 40–41, ¶¶ 101–02; 43–44, ¶ 112.)

### c) Redressability.

The Motion argues that prohibiting enforcement of SEB Rule 183–1–12–.01 will change nothing because counties will continue to deploy DREs. The argument that superintendents would continue requiring voters to use DREs after that requirement is deemed unconstitutional is untenable because it contravenes the presumption that the government will act lawfully. *See FCC v. Schreiber*, 381 U.S. 279, 296 (1965). In any event, Fulton County is named as a party alongside the State Defendants, so it will be subject to the very same judgment that they are. If the State Defendants are enjoined from enforcing SEB Rule 183–1–12–.01 against Fulton County, and if the County is likewise enjoined from enforcing the Rule against the voters, then the result will be that the each of the individual Coalition Plaintiffs and individual members of Coalition who are Fulton County voters will be spared from the injuries alleged in the TAC. The redressability requirement is thus satisfied.

### d)      The "Self-Inflicted Harm" Argument.

The Motion next objects that *Clapper*, 568 U.S. at 398, prohibits Coalition Plaintiffs from "manufacturing" standing by exposing themselves to harm voluntarily.  *Clapper* dealt with injuries in the form of expenditures made to evade surveillance that might not even have happened. This case involves injuries suffered by the individual Coalition Plaintiffs as a consequence of exercising their fundamental right to vote under a flawed DRE voting system known to be running software installed from a compromised server.  (Doc. 226, at 43, ¶ 112.)  The suggestion that the Coalition Plaintiffs have manufactured their own injury by ***voluntarily choosing to vote*** using a government-provided method is absurd.  If *Clapper* truly presented an obstacle to standing in the voting context, no voting rights cases could be adjudicated because all voters ***choose*** to vote.  The self-inflicted-harm argument must be rejected where the voluntary act is the act of voting.

### e)      Coalition Has Organizational And Associational Standing.

The Motion argues that Coalition has neither organizational nor associational standing.  (Doc. 234-1, at 30–32.)  These issues need not be decided because other Coalition Plaintiffs have sufficiently alleged individual standing.  *ACLU of Florida*, 557 F.3d at 1194 (only one plaintiff needs to show standing). In any event, Coalition has alleged facts that demonstrate both organizational and associational standing.

Coalition has organizational standing because it has diverted resources and personnel to counteract the unconstitutional enforcement of the SEB Rule requiring

that in-person voters must use DREs on Election Day.  (Doc. 226, at 14–15, ¶¶ 18–21; at 54–57, ¶¶ 139–44.)  *See Arcia*, 772 F.3d at 1340–42 ("Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response.").

This Court need not address whether Coalition has associational standing because it has shown organizational standing.  *See Common Cause/Georgia*, 554 F.3d at 1351. Nonetheless, Coalition has alleged sufficient facts to establish associational standing under *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) (stating elements of associational standing). (Doc. 226, at 14–15, ¶¶ 18–21; at 57–65, ¶¶ 145–66.)

The Motion tries to portray Coalition's memberships requirements—deduced from the barest of extrinsic evidence[6]—as insufficient for associational standing. (Doc. 234-1, at 31.) No case law supports this line of attack. The Motion also relies on *Clapper*, 568 U.S. at 416, to argue that the diversion of resources cannot confer organizational standing.  But *Clapper* did not involve a diversion-of-resources theory of organizational standing, so *Clapper* is inapposite and *Arcia* controls.  The TAC's allegations establish both organizational and associational standing for Coalition.

---

[6] For support, the Motion excerpts less than a sentence of testimony by Coalition's executive director, given in a different lawsuit before this lawsuit was even filed, and points to text of a tab on Coalition's website that says, "Join Email List." (Doc. 234-1, at 31 & n.13.)

### 2. The Eleventh Amendment Does Not Bar Federal Claims For Prospective Injunctive Relief Against State Officers.

The Motion argues that Eleventh-Amendment immunity bars the TAC's two federal claims. (Doc. 234-1, at 33–41.)  This argument is utterly frivolous.  State officials have long been subject to  official-capacity suits in federal court under 42 U.S.C. § 1983  for  prospective  injunctive  relief  from  federal  constitutional violations. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974).  The doctrine that allows such suits was established 110 years ago in *Ex Parte Young*, 209 U.S. 123 (1908). The Motion offers two vague arguments why immunity applies in spite of the doctrine of *Ex Parte Young*, but neither argument is persuasive.

First, the Motion cites *Lathrop v. Deal*, 301 Ga. 408 (2017), and other cases to argue that sovereign immunity prevents attempts to enforce state laws and direct the actions of state officials.  But the Coalition Plaintiffs do not seek to control discretionary decisions of the State on election matters.  They merely seek to be spared  enforcement  of  SEB  Rule  183–1–12–.01,  which  will  unconstitutionally burden their individual, federal rights.

Second, the Motion suggests that *Ex Parte Young* only applies where there is a facial challenge to an unconstitutional statute.  But the doctrine permits as-applied challenges, as well. *See Massachusetts v. Missouri*, 308 U.S. 1, 13 (1939). Here, the TAC does not seek to overturn any Georgia statute since the Georgia Code does not unconditionally  require  the  use  of  DREs.  O.C.G.A.  § 21–2–383(b).  Enjoining enforcement  of  SEB  Rule  183–1–12–.01  avoids  the  condition  that  causes  the

16

unconstitutional application of O.C.G.A. § 21–2–383(b).  *Ex Parte Young* permits suits that seek such relief.

### 3.   No Exceptions to *Ex Parte Young* Apply.

The Motion next offers three more arguments why *Ex Parte Young* does not apply. (Doc. 234-1, at 41–48.)  Each is unpersuasive and should be rejected.

First the Motion argues that the relief sought will not remedy a violation that is "ongoing" and "continuous."  This argument fails because, "where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999).

Second, the Motion argues that Plaintiffs seek to adjudicate the legality of past conduct, so the requested relief is not truly prospective. This argument is specious because "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

Third, the Motion argues that the requested relief implicates "special sovereignty interests." This argument is explicitly based on a false premise that the TAC seeks the statewide hand counting of paper ballots. In fact, as previously explained, the relief sought is simply protection from enforcement of the requirement that in-person voters must vote using DREs.  This relief can easily be implemented since Georgia already has a certified optical scanning voting system— one authorized by state law and employed in most elections.  Directing the State to

17

protect individual rights is not an assault on state sovereignty where existing state law provides a ready solution.

## IV. BOTH CLAIMS RAISED BY THE THIRD AMENDED COMPLAINT STATE VALID CLAIMS FOR RELIEF.

The Motion next asserts that Counts I and II of the TAC fail to state a valid claim for relief. Both Counts are sufficiently pled.

### A. Rule 12(b)(6)—Legal Standard.

"To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (internal quotation marks omitted). Both Counts I and II of the TAC satisfy this standard.

### B. Count I—Fundamental Right to Vote.

#### 1. Elements—Fundamental Right To Vote.

To state a fundamental-right-to-vote claim, the TAC need only allege that the challenged conduct burdens the right to vote. Then, "a court evaluating a constitutional challenge to an election regulation weigh[s] the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 190 (2008); *see also Common Cause/Georgia*, 554 F.3d at 1353–54 (applying *Crawford*). "However slight that burden may appear, … it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the

18

limitation.'" *Crawford*, 553 U.S. at 191. A private cause of action under 42 U.S.C. § 1983 exists if the violation will occur "under color of state law."

### 2.   Count I Sufficiently Pleads A Valid Claim.

The TAC alleges that the State Defendants, by enforcing the requirement for in-person voters to use DREs, (Doc. 226, at 47–48, ¶¶ 125–28), will subject the Coalition Plaintiffs to a number of burdens and injuries when they exercise their fundamental right to vote in upcoming elections. (Id.at 63–65, ¶¶ 159–65.) The TAC alleges that these burdens are not outweighed by any State's interest in requiring DRE voting that cannot be accomplished by other, less restrictive means.  (Id. at 67, ¶ 172.)  The TAC alleges that the Defendants will impose these burdens under color of state law.  (Id. at 67, ¶ 174.)  Supporting these allegations, Count I incorporates all the facts alleged in TAC ¶¶ 1–166.  Taken as true and viewed in the light most favorable to the Coalition Plaintiffs, Count I's allegations are plainly sufficient to state a *prima facie* fundamental-right-to-vote claim under § 1983.

### 3.   Defendants' Arguments Against Count I Are Meritless.

The Motion's objections to Count I lack merit.  They should be rejected.

First, the Motion cites *Favorito*'s holding that DREs do not violate the state constitutional right to vote by secret ballot. (Doc. 234-1, at 50, 54.) To the extent *Favorito* applied Georgia law, its conclusions are inapposite since Count I concerns federal rights. On the questions of federal law at issue in this case, the Georgia Supreme Court is not controlling authority for this Court.

Second, the Motion asserts that adequate remedies exist because the Secretary of State reexamined Georgia's DREs and concluded they were safe and accurate. (Doc. 234-1, at 50.)  But the Secretary's reexamination is no remedy.  The findings of this reexamination amount to nothing more than a restatement of the Secretary's own litigating position.  These findings (which were drawn after the onset of litigation) are subordinated to Rule 12(b)(6)'s mandate that the allegations of the complaint must be taken as true—including the allegations averring that Georgia's DRE system is not safe and reliable.  (Doc. 226, at 62, ¶ 157.)

Third, the Motion objects that the TAC does not allege DRE tabulations are inaccurate. (Id. at 51.)  Such allegations are unnecessary.  The TAC alleges that Georgia's DREs are vulnerable to undetectable manipulation[7] and run software that was exposed to intruders while hosted on the KSU server.  DREs can be modified to report whatever results an attacker wants—including correct results during testing and incorrect results on Election Day.  A DRE simply cannot be trusted to operate properly once its software has been exposed to undetectable manipulation.

---

[7] This allegation has repeatedly been reinforced by investigatory findings in the public record. *See, e.g.*, U.S. H. Rep. Cte. H. Admin.–Democrats, *Election Security Update: Top 18 Most Vulnerable States* at 1 (July 2018) (listing Georgia as a Tier 1 state, noting, "These states rely exclusively on electronic voting machines that do not have a paper record. It is nearly impossible to determine if paperless voting machines have been hacked and if vote tallies have been altered.") (available at https://democrats-cha.house.gov/sites/democrats.cha.house.gov/files/Election_Security_Update.pdf) (last visited Jul. 17, 2018).

Fourth, the Motion claims that HAVA requires Georgia to use DREs. This is false. Far from being required, Georgia's DREs are actually illegal under HAVA because they do not produce a voter-verified paper record of individual votes.

Fifth, the Motion asserts in a footnote that the individual claims of one Plaintiff, Ricardo Davis, are barred by *res judicata* as a result of Davis being a plaintiff in *Favorito*, 285 Ga. at 795. (Id. at 49, n.19.) This affirmative defense cannot be raised because "the existence of the defense can[not] be determined from the face of the complaint." *Johnson*, 596 Fed. Appx. at 798. Moreover, the Motion makes no showing of the necessary prerequisites for *res judicata*. *See id.* at 799 (identifying prerequisites). Davis's claims should not be barred.

Count I states a valid claim for relief.

### C.   Count II—Equal Protection.

#### 1.   Elements—Equal Protection.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a claim, the Coalition Plaintiffs "must establish that they are being treated differently than a similarly situated comparator." *Crystal Dunes Owners Ass'n v. City of Destin*, 476 Fed. Appx. 180, 185 (11th Cir. 2012). "[T]o be considered 'similarly situated,' comparators must be prima facie identical in all relevant

respects." *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006).  A cause of action exists if the violation will occur "under color of state law." 42 U.S.C. § 1983.

### 2.   Count II Sufficiently Pleads A Valid Claim.

The TAC's allegations in Count II are plainly sufficient to state a claim for violation of the Equal Protection Clause.  The TAC alleges that the threatened enforcement conduct of the State Defendants will require the Coalition Plaintiffs to vote under the DRE system in the Relevant Upcoming Elections, (Doc. 226, at 47–48, ¶¶ 125–28), which will subject the Coalition Plaintiffs to multiple burdens and injuries to fundamental rights, (Id.at 63, ¶¶ 160, 162.)   The TAC alleges that similarly situated voters—namely, those who vote in the same elections using mail-in paper ballots—will not be subjected to the same burdens and injuries.  (Id. at 69, ¶¶ 177–78.)   The TAC alleges that this disparate treatment will severely and unequally burden the Coalition Plaintiffs in their exercise of underlying substantive rights, such as the fundamental right to vote and freedoms of speech and association and thus will violate the Equal Protection Clause. (Id. at 69–70, ¶¶ 178–79.)   The TAC alleges that these burdens are not outweighed by the State's interests.  (Id. at 70, ¶ 180.)   Finally, the TAC alleges that these violations will occur due to the Defendants acting under color of state law.   (Id. at 70, ¶ 182.)

To support these allegations, Count II incorporates the supporting facts, common to both claims, that are alleged in TAC ¶¶ 1–166.  In addition, the TAC

alleges that no adequate remedy exists for the threatened irreparable injury of constitutional violations and that injunctive relief is thus warranted.  (Id. at 65, ¶ 166; id. at 71, ¶ 183.)   Taken as true and viewed in the light most favorable to the Plaintiffs, Count II's allegations clearly state a valid *prima facie* equal-protection claim under § 1983.  Count II is sufficiently pled under Rule 12(b)(6).[8]

### 3.    Defendants' Arguments Against Count II Are Meritless.

The Motion's objections to Count II lack merit.  They should be rejected.

First, the Motion argues that in-person, DRE voters are not "similarly situated" to mail-ballot voters because the former have chosen to vote in person. (Doc. 234-1, at 58.)   But voters do not cease to be "similarly situated" simply because they vote by the method that the government makes available to them. Voters in the same jurisdiction voting in the same election are prima facie identical in all ***relevant*** respects; it is merely the State's provision of different voting methods that creates a distinction between them.

> A State cannot deflect an equal protection challenge by observing that in light of the statutory classification all those within the burdened class are similarly situated. The classification must reflect pre-existing differences; it cannot create new ones that are supported by only their own bootstraps. "The Equal Protection Clause requires

---

[8] Despite the Motion's claim to the contrary, neither Count I nor Count II fits into any of the "four rough types or categories of shotgun pleadings."  *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 & n.10 (11th Cir. 2015).

> more of a state law than nondiscriminatory application
> within the class it establishes."

*Williams v. Vermont*, 472 U.S. 14, 27 (1985).  Voters do not sacrifice equal protection by choosing to vote in person instead of by mail.

Second, the Motion argues that the equal-protection claim requires a showing of intentional discrimination. (Doc. 234-1, at 58.)  But the TAC is ***not*** required to allege intentional discrimination where the equal-protection violation arises from a rule that "discriminates on its face."  *See E & T Realty v. Strickland*, 830 F.2d 1107, 1112–13 (11th Cir. 1987) (comparing the "three broad categories" of equal protection claims). Here, SEB Rule 183–1–12–.01 discriminates on its face between voters who vote in person (who are required to use DREs) and voters who vote absentee by mail (who are not required to use DREs). (Doc. 226, at 28, ¶ 58.) Purposeful discrimination must only be shown for equal-protection claims arising from facially neutral requirements that either have a disparate impact or are administered unequally.  *Id*.  This case does not involve that kind of claim, so an allegation of intentional discrimination is not necessary here.

Third, the Motion argues that Georgia's unequal treatment of DRE and mail-ballot voters in tabulations and recount processes is permissible because it involves no suspect class and the disparate treatment has a rational basis.  (Doc. 234-1, at 59.) But it is unnecessary—indeed improper—for this Court to attempt to resolve, at the pleading stage, the merits question of whether the unequal treatment alleged by the TAC is permissible or prohibited.  Under the "flexible standard" that courts use to

evaluate whether election regulations violate the Equal Protection Clause, "a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands." *Common Cause/Georgia*, 554 F.3d at 1352 (quoting *Crawford*, 553 U.S. at 190).  Applying this standard is a merits determination reserved for a later stage.  Count II suffices under Rule 12(b)(6).

### D.    The State Board Members Are Properly Named As Defendants.

The Motion argues that both Counts I and II should be dismissed against the State Board Members because they "have not, and will not be, the party 'enforcing' O.C.G.A. § 21-2-383[.]" (Doc. 234-1, at 59.)  This objection should be rejected because TAC ¶ 37 alleges that the State Board Members "collectively exercise the power vested in the State Board to enforce compliance with the Georgia Election Code and with the State Board's regulations." (Doc. 226, at 21, ¶ 37.)  The TAC also alleges the State Board Members actually intend to enforce O.C.G.A. § 21–2–383(b) and SEB Rule 183–1–12–.01 "and thus to require that all voters who cast ballots in person at the polls on Election Day must vote by DRE."  (Doc. 226, at 48, ¶¶ 127–28.)  The State Board Members are properly named as Defendants.

## V.    CONCLUSION

The *State Defendants'* Motion *to Dismiss Coalition Plaintiffs' Third Amended Complaint* (Doc. 234) should be denied.

Dated: July 17, 2018.

Respectfully submitted,

*/s/ Robert A. McGuire, III*
**Robert A. McGuire, III**
Admitted Pro Hac Vice (ECF No. 125)

*Attorney for Plaintiff Coalition for Good Governance*

ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, WA  98104-2205
ram@lawram.com
(253) 267-8530

*/s/ William Brent Ney*
**William Brent Ney**
GA Bar Number 542519

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

NEY HOFFECKER PEACOCK & HAYLE, LLC
One Midtown Plaza, Suite 1010
1360 Peachtree Street NE
Atlanta, GA 30309
(404) 842-7232

**Bruce P. Brown**
Georgia Bar No. 064460

*Attorney for Plaintiff Coalition for Good Governance*

Bruce P. Brown Law LLC

26

1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
 bbrown@brucepbrownlaw.com
(404) 881-0700

**Cary Ichter**
Georgia Bar No. 382515

*Attorney for Plaintiffs Coalition for Good*
*Governance, William Digges III, Laura*
*Digges, Ricardo Davis*

Ichter Davis, LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, GA 30326
cichter@IchterDavis.com
Tel.: 404.869.5243
Fax: 404.869.7610

## <u>CERTIFICATE OF COMPLIANCE WITH LR 5.1C, NDGa</u>

I hereby certify pursuant to LR 7.1D, NDGa that the foregoing document has been prepared with one of the font and point selections approved by this Court in LR 5.1C, NDGa, using a 14-point Times New Roman font.

*/s/ Robert A. McGuire, III*
**Robert A. McGuire, III**
Admitted Pro Hac Vice (ECF No. 125)

*Attorney for Plaintiff Coalition for Good Governance*

ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, WA  98104-2205
ram@lawram.com
(253) 267-8530

*/s/ William Brent Ney*
**William Brent Ney**
GA Bar Number 542519

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

NEY HOFFECKER PEACOCK & HAYLE, LLC
One Midtown Plaza, Suite 1010
1360 Peachtree Street NE
Atlanta, GA 30309
(404) 842-7232

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2018, I electronically filed the foregoing COALITION PLAINTIFFS' RESPONSE OPPOSING STATE DEFENDANTS' MOTION TO DISMISS COALITION PLAINTIFFS' THIRD AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, according to the Court's Electronic Mail Notice List.

*/s/ Robert A. McGuire, III*

**Robert A. McGuire, III**
Admitted Pro Hac Vice (ECF No. 125)

*Attorney for Plaintiff Coalition for Good Governance*

ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, WA  98104-2205
ram@lawram.com
(253) 267-8530

*/s/ William Brent Ney*

**William Brent Ney**
GA Bar Number 542519

*Attorney for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

NEY HOFFECKER PEACOCK & HAYLE, LLC
One Midtown Plaza, Suite 1010
1360 Peachtree Street NE
Atlanta, GA 30309
(404) 842-7232