*Curling, et al.  v. Kemp, et al.*

Civil Action File No: 1:17-CV-02989-AT

# DECLARATION OF REBECCA SULLIVAN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, et al.,

Plaintiffs,

v.

BRIAN KEMP, et al.,

Defendants.

CIVIL ACTION FILE

NO. 1:17-CV-02989-AT

## DECLARATION OF REBECCA N. SULLIVAN

Pursuant to 28 U.S.C. § 1746, REBECCA N. SULLIVAN, declares as follows:

1.  I make this Declaration in support of a response by Secretary Kemp, the State Election Board, and the members of the State Election Board ("S.E.B.") to motions for preliminary injunction filed in the above-styled matter *of Donna Curling, et al., v. Brian Kemp, et al*, (Civil Action No. 1:17-cv-2989-AT).

2.  Since my appointment in 2013, I have served on the State Election Board as a member and, since 2017, Vice-Chair. I am familiar with the requirements that govern rulemaking by the S.E.B.

3.  I write this affidavit to discuss some practical points concerning S.E.B. rulemaking. The statutory duty of the S.E.B. is to promulgate rules and

- 1 -

regulations so that the practices and procedures used in Georgia's elections are uniform and conducive to the fair, legal and orderly coordination of elections at every relevant level of Georgia government. Our rules and regulations are published and furnished to election officials.

4. Since 2002, our rules and regulations have been calibrated to govern a uniform election system built around the use of DRE machines as the workhorse of election-day voting. The integration of DRE machines within the statutory and regulatory framework of Georgia's elections system make it hard to imagine how that framework could be adjusted based upon unilateral rulemaking by the S.E.B. in time to ensure a safe and secure election for November 6, 2018, especially as to early voting that, by law, must begin on October 15.

5. Assuming the S.E.B. were ordered to "come up with a plan" and promulgate rules for an election without DRE machines, there is little institutional memory in Georgia to serve as a guide to the best practices for how to secure such an election. None of the current members on the S.E.B. served in that capacity the last time Georgia conducted a statewide election in 2000 using primarily paper ballots.

6. Moving to paper ballots in such an abbreviated time frame could potentially damage Georgia's election security. We have many years of experience of protecting the current system, but have not dealt with the security surrounding

an entirely paper-ballot environment. While it is certainly possible to make rules for a system to adequately protect a paper ballot environment, properly doing so requires time for planning, input, and consultation.

7. There is also a question as to the capacity of the S.E.B. to create rules in time to be of aid to Georgia's elections officials. The S.E.B.'s rulemaking process is governed by Georgia's Administrative Procedure Act, where rulemaking is a deliberative and publically-transparent process generally requiring (1) public proposal of a rule, (2) public inspection, (3) notice to interested parties with a reasonable opportunity to submit data, views, or arguments, (4) deliberation before enactment, and (5) delayed effectiveness of the rule.

8. Under the APA generally, no S.E.B. rule would be valid or effective unless it has been made available for public inspection. *See, e.g.*, O.C.G.A. § 50-13-4.

9. The S.E.B. gives 30-days notice of its intended action to the public, including an exact copy of the proposed rule as well as a synopsis.

10. The S.E.B. is required by law to afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing and is required to consider all submissions.

11. The S.E.B. must transmit notice to legislative counsel 30-days prior, who must furnish the presiding officers of each house of the General Assembly with a copy and assign to the chairpersons of the appropriate standing committee for

review. The General Assembly may file an objection the proposed rule, which the S.E.B. must consider.

12. By law, an S.E.B. rule would not become effective until 20 days after it were passed and filed with the Secretary of State.

13. Section 50-13-4(b) of the APA provides government agencies generally with emergency rulemaking procedures that may be invoked upon the finding of "imminent peril to the public health, safety, or welfare, including but not limited to, summary processes such as quarantines, contrabands, seizures, and the like," but whether such an exception would apply to a situation like this presents a controversy without clear precedent and could conceivably create questions as to the legal legitimacy of the election that, if they arose, could undermine public confidence in the election results.

14. There are practical and prudential concerns with making such a significant change in Georgia's elections procedures without adequate time to give notice to, and receive critical input and consultation from, elections officials at every level of Georgia's elections system. Disorder and confusion are the enemies of Georgia's elections officials. An immediate conversion to a substantially different mechanism of conducting elections in Georgia would require the re-design of Georgia's elections system under circumstances that would not be anything less than disorderly.

15. With pollworker training already beginning in some counties, were the S.E.B. ordered to conduct the Nov. 6, 2018 election without DRE machines, I can foresee a situation where the legal duty of the S.E.B.—to "obtain uniformity" of regulations as required by Georgia law may conflict with the practical imperative of wanting to our officials to be prepared to confront the logistical challenges that an election without DREs would pose for every level of the elections infrastructure (state, county and polling precinct).

16. With only weeks until the November 6 general election, if the S.E.B. were ordered to make rules in anticipation of an as-yet un-designed elections architecture, it should not be presumed that the S.E.B. could, through legislation alone, ensure the safety and security of the upcoming election within such a limited timeframe.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability.

Executed this 13th day of September, 2018.

*(signature)*

REBECCA N. SULLIVAN
*Vice-Chair, Georgia State Election Board*