Civil Action File No: 1:17-CV-02989-AT

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

---

DONNA CURLING, et al.,
*Plaintiffs,*

v.

BRIAN KEMP, et al.,
*Defendants.*

---

## MEMORANDUM IN SUPPORT OF MOTION TO STAY

---

**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan,*
*Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Banfield v. Cortes*,
  922 A.2d 36 (Pa. Commw. Ct. 2007) ............................................................- 11 -

*Blinco v. Green Tree Servicing, LLC*,
  366 F.3d 1249 ..............................................................................................- 2 -

*Bouchard Transp. Co. v. Florida Dept. of Environmental Protection*,
  91 F.3d 1445 (11th Cir. 1996) .......................................................................- 6 -

*Brown v. Crawford County, Ga.*,
  960 F.2d 1482 (11th Cir. 1991) ......................................................................- 4 -

*Bryant v. Jones*,
  No. 1:04-cv-2462-WSD, 2007 WL 113959 (N.D. Ga. Jan. 10, 2007)..............- 2 -

*Chudasama v. Mazda Motor Corp.*,
  123 F.3d 1353 (11th Cir. 1997) ......................................................................- 9 -

*Citizen Center v. Gessler*,
  770 F.3d 900 (10th Cir. 2014) ......................................................................- 11 -

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ........... - 10 -, - 11 -, - 13 -

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)........................................................................................- 1 -

i

*Collins v. School Bd. of Dade County*,
   981 F.2d 1203 (11th Cir. 1993) ........................................................- 6 -

*Consumers Union v. Supreme Court of Virginia*,
   446 U.S. 719 (1980)..........................................................................- 22 -

*Cory v. White*,
   457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ......................- 14 -

*Cty. Ct. of Ulster Cty., N.Y. v. Allen*,
   442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) ........................- 9 -

*Dillard v. Chilton Cty. Com'n*,
   495 F.3d 1324 (11th Cir. 2007) ........................................................- 12 -

*Dimaio v. Democratic Nat'l Comm.*,
   520 F.3d 1299 (11th Cir. 2008) ............................................- 12 -, - 14 -

*Elend v. Basham*,
   471 F.3d 1199 (11th Cir. 2006) ........................................................- 14 -

*Ex parte Young*,
   209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)....................- 5 -, - 18 -, - 19 -

*Favorito v. Handel*,
   285 Ga. 795 (2009) ...........................................................................- 23 -

*Fedorov v. Board of Regents for University of Georgia*,
   194 F.Supp.2d 1378 (S.D. Ga. 2002) ..............................................- 20 -

*Georgia Republican Party v. Sec. & Exch. Comm'n*,
   888 F.3d 1198 (11th Cir. 2018) ........................................................- 10 -

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ...................... - 1 -, - 2 -, - 5 -

*Holcombe v. Ga. Milk Producers Confederation*,
188 Ga. 358 (1939) .......................................................- 17 -

*Howe v. City of Enterprise*,
861 F.3d 1300 (11th Cir. 2017) .....................................- 22 -

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997).......................................................- 21 -

*In re Burke*,
146 F.3d 1313 (11th Cir. 1998) ......................................- 4 -

*K.M. v. Alabama Dept. of Youth Servs.*,
209 F.R.D. 493 (M.D. Ala. 2002).....................................- 2 -

*Keller v. Potomac Electric Power Co.*,
261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731 (1923)...........................................- 8 -

*Lathrop v. Deal*,
301 Ga. 408 (2017) .......................................................- 17 -

*Luckey v. Harris*,
860 F.2d 1012 (11th Cir. 1988) .....................................- 15 -

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .................................- 12 -

*Mitchell v. Forsyth*,
472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)......................................- 5 -

*Papasan v. Allain*,
    478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)....- 13 -, - 14 -, - 18 -, - 21 -

*Royalty Network, Inc. v. Harris*,
    756 F.3d 1351 (11th Cir. 2014) ........................................................- 1 -

*Scott v. Taylor*,
    405 F.3d 1251 (11th Cir. 2005) ............................................. - 22 -, - 23 -

*Seminole Tribe of Fla. v. Fla. Dep't of Revenue*,
    750 F.3d 1238 (11th Cir. 2014) .....................................................- 20 -

*Sherman v. Community Consol. School Dist. 21*,
    980 F.2d 437 (7th Cir. 1992) ........................................................- 19 -

*Stein v. Cortes*,
    223 F.Supp.3d 423 (E.D. Pa. 2016)................................................- 11 -

*Stewart v. Blackwell*,
    444 F.3d 843 (6th Cir. 2006) ........................................................- 10 -

*Summit Medical Assocs., P.C. v. Pryor*,
    180 F.3d 1326 (11th Cir. 1999) ..........................- 4 -, - 9 -, - 14 -, - 16 -

*Swint v. Chambers County Comm'n*,
    514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) .......................- 9 -

*U.S.* v. *Hays*,
    515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) .................- 12 -

*United States v. Lopez-Lukis*,
    102 F.3d 1164 (11th Cir. 1997) .....................................................- 9 -

*United States v. Richardson*,
   418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) ..................................- 13 -

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
   454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)...................................- 12 -

*Western Union Tel. Co. v. Andrews*,
   216 U.S. 165, 30 S.Ct. 286, 54 L.Ed. 430 (1910)...........................................- 19 -

*Woods v. Gamel*,
   132 F.3d 1417 (11th Cir. 1998) ......................................................................- 4 -

## STATUTES

42 U.S.C. § 1983 .............................................................................................- 19 -
O.C.G.A. § 21-2-50(15).............................................................- 7 -, - 18 -
O.C.G.A. § 21-2-379.2(b) ..........................................................- 7 -, - 8 -

## RULES

Federal Rule of Appellate Procedure 8(a)(1)(A) ...............................................- 25 -

## INTRODUCTION

The State Defendants move to stay these proceedings pending resolution of the appeal of the Court's September 17, 2018 Order (Doc. 309) denying in part the Motion(s) to Dismiss filed in this case.[1]  These appeals are taken as a matter of right pursuant to the "collateral order doctrine," first recognized in *Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541 (1949).[2]  Proceedings should be stayed in this case because once a non-frivolous appeal has been filed, the district court loses jurisdiction over the case to the extent it is implicated in the appeal. *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

## INTRODUCTION

The Supreme Court has explained that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.  The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district

---

[1] After conferral, neither of the Plaintiff factions (i.e. the Curling group and the Coalition group) consent to a stay.

[2] As formulated by the Eleventh Circuit, the collateral order doctrine allows an appeal of right when it concerns: (1) a disputed question that was conclusively determined; (2) the order being appealed would resolve an important issue completely separate from the merits of the action; and (3) the issue is effectively unreviewable on appeal from a final judgment. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1355 (11th Cir. 2014).

court of its control over those aspects of the case involved in the appeal." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 11th Cir. 2004), quoting *Griggs*, 459 U.S. at 58.  Although the collateral order doctrine does not absolutely prohibit forging ahead with a case, appeals from orders denying motions to dismiss on immunity grounds are a well-recognized exception.  The arguments below assume familiarity with the Order (Doc. 309), by which the District Court purported to deny (in part[3]) the State Defendants' motion(s) to dismiss as well as denying Plaintiffs' motions for preliminary injunction.

## ARGUMENT AND CITATION OF AUTHORITY

A.   SUMMARY OF THE ARGUMENT

So long as it is not frivolous, an appeal raising immunity warrants a stay in the district court because immunity's very purpose is to shield a particular defendant from the litigation process where it applies. *See, e.g., Bryant v. Jones*, No. 1:04-cv-2462-WSD, 2007 WL 113959, at 4 (N.D. Ga. Jan. 10, 2007) (granting motion to stay pending an appeal of an order denying qualified immunity); *K.M. v. Alabama*

---

[3] The State Defendants first moved the District Court to dismiss for, *inter alia*, lack of jurisdiction on August 15, 2017 (Doc. 8), then renewed that motion several times over the thirteen months since. *See* Docs. 49, 83, and 234.  The recent Order appears to be less than a complete ruling, promising to "more fully address . . . all other issues raised in Defendants' motions to dismiss in a separate, subsequent order." Doc. 309 at 3, n. 1.  This Motion to Stay, therefore, is not intended to interfere with the Court finishing its decisional process.

*Dept. of Youth Servs.*, 209 F.R.D. 493, 495 (M.D. Ala. 2002) ("Once a non-frivolous appeal of a denial of immunity has been filed, a stay of discovery is obviously appropriate until the appellate court resolves the immunity issue."); Charles Alan Wright et al., *Federal Practice & Procedure* Vol. 16A § 3949.1 (4th ed. 2014) ("[I]f further district court proceedings would violate the very right being asserted in the appeal taken under the collateral order doctrine—as is the case with claims of qualified immunity or double jeopardy—then the pendency of the appeal does oust the district court of authority to proceed, at least if the appeal is not patently frivolous.").

Among other issues, the Motion(s) to Dismiss filed by the State Defendants raised jurisdictional issues regarding (1) insufficient standing under Article III (e.g. absence of concrete harm, etc.); (2) Eleventh Amendment immunity; and (3) the doctrine of absolute legislative immunity.  Because the State Defendants have exercised their right of appeal, pre-trial and trial proceedings in this Court should be held in abeyance until the Court of Appeals has issued its mandate.

Regarding the actions of the State Elections Board (chaired by the Secretary of State), the State Defendants assert absolute legislative immunity because the injunctive relief sought by the complaints seek to control State policymaking and rules of general application.  This doctrine means immunity from suit, not simply

from damages. *Brown v. Crawford County, Ga.*, 960 F.2d 1482, 1484 (11th Cir. 1991). A denial of absolute legislative immunity is immediately appealable under the collateral order doctrine. *See Woods v. Gamel*, 132 F.3d 1417, 1419 n. 2 (11th Cir. 1998).

The State Defendants also assert Eleventh Amendment immunity. Like legislative immunity, "[a] district court's denial of a motion to dismiss on Eleventh Amendment immunity grounds is appealable immediately." *Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999), citing, inter alia, *In re Burke*, 146 F.3d 1313, 1316 (11th Cir. 1998).

While a district court's denial of a motion to dismiss on non-justiciability (i.e. lack of standing under Article III) is not appealable on its own under *Cohen* and its progeny, the Eleventh Circuit may review such issues under the doctrine of pendent appellate jurisdiction. Under this doctrine, a federal appellate court can address the State Defendants' arguments concerning (lack of) constitutional standing when they are "inextricably intertwined" with an appealable decision *or* if "review of the former decision is necessary to ensure meaningful review of the latter." *Summit Medical Assocs.*, 180 F.3d at 1335. Here, the individual Plaintiffs' lack of concrete *harm* and absence of other indicia of constitutional standing are "inextricably intertwined" with legislative immunity and why *Young*'s exception

- 4 -

does not remove immunity under the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).  Whether the Plaintiffs are proper plaintiffs to pursue this case implicates the entirety of the case, including all of the State Defendants' jurisdictional and immunity arguments.  Therefore the stay should be of the entirety of the case.

B. IMMUNITY MEANS AN ENTITLEMENT TO BE FREE FROM THE BURDENS OF LITIGATION.

Immunity is an entitlement to be free from the burdens of pretrial matters and the trial process itself. *See Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  It is "effectively lost" if a case erroneously proceeds onwards at the district-court level while an interlocutory appeal of a denial of immunity is pending. *Id*. at 526.  Thus, the rule that a notice of appeal divests a district court of jurisdiction (*see Griggs, supra,* at 58), applies with particular force in the immunity context.

Application of the "collateral order doctrine" is appropriate and properly grants the Eleventh Circuit jurisdiction to hear this appeal.  First, the Order denied the State Defendants' Motion to Dismiss on grounds of lack of justiciable standing and Eleventh Amendment immunity.  Because Eleventh Amendment immunity recognizes states retain certain attributes of sovereignty (and saves them the indignity of being dragged into federal court by private litigants), the purpose of

immunity "is not served when a ruling on Eleventh Amendment immunity is unnecessarily postponed." *Bouchard Transp. Co. v. Florida Dept. of Environmental Protection*, 91 F.3d 1445, 1448-49 (11th Cir. 1996) (district court abused its discretion by reserving a ruling on immunity and then ordering parties to mediate).[4]

C.     A STAY OF PROCEEDINGS PENDING APPEAL IS APPROPRIATE.

A stay of all pre-trial and trial proceedings is appropriate.  Here, the State Defendants' appeal will encompass issues of law that relate to, and should dispose of, the lawsuit in its entirety.   While the District Court may not have been persuaded, the arguments in the Motions to Dismiss (and that will be presented on appeal) are supported by law and precedent (controlling and persuasive), from courts like the Eleventh Circuit and the United States Supreme Court.  Resolution of these issues impact the ultimate disposition of this case.  The State Defendants will raise on appeal issues of standing, absolute legislative immunity and immunity under the Eleventh Amendment.  These arguments are not frivolous and this Court should, therefore, stay proceedings in this case pending resolution of its appeal.

---

[4] In the context of immunity, a "reserved ruling" pending the litigation moving forward towards trial "is not materially different from an outright denial" of the immunity. *See Collins v. School Bd. of Dade County*, 981 F.2d 1203, 1205 (11th Cir. 1993).

*1. This Case is Unlike Others Were a Cognizable Harm Overcame a State's Immunities.*

Georgia law requires the Secretary of State to administer a DRE system so that it can be used by Georgia counties. *See* O.C.G.A. § 21-2-50(15) (the Secretary "*shall* perform all the duties imposed by this chapter," including the duty "[t]o develop, program, build, and review ballots for use by counties and municipalities *on direct recording electronic (DRE) voting systems in use in the state*") (emphasis supplied). The question of whether an electronic system has "adequate" security measures against malicious tampering necessarily is a subjective determination. Georgia's legislature delegated a discretionary decision to the Secretary of State, who is Georgia's chief election official, to reexamine the DRE elections system and attest "in *his or her opinion*" that "the kind of system so examined can be safely and accurately used by electors." O.C.G.A. § 21-2-379.2(b) (emphasis supplied). The expression of such an opinion, without more, does not directly cause a concrete or constitutionally-cognizable harm to any of individual plaintiffs.

As this Court will recall, at the outset of this lawsuit Plaintiffs demanded the Secretary of State formally reexamine Georgia's voting system. Doc. 70, at ¶ 134 (former Count VIII, seeking writ of mandamus to compel Secretary "to conduct the

reexamination required by Georgia Code Sections 21-2-379.2(b)").[5]  The Secretary did so, exercising his discretion to "conduct a reexamination that is thorough, methodologically sound, and able to be accomplished in a reasonable period of time" at no cost to the requesting electors, thus rendering the mandamus claim moot.  *See* Doc. 49-6 (July 18, 2017 Letter from Germany to Marks).  Having received the remedy they sought, it is implausible for Plaintiffs to claim an "injury in fact" arose from receiving the exact remedy they requested.

"[T]here is a point beyond which mere advice to administrators on actions yet to be taken may violate established Article III ripeness or advisory-opinion principles." Charles Alan Wright et al., *Federal Practice and Procedure*, Vol. 13C § 3535 (3rd ed., 2005).  The Plaintiffs are goading the District Court to lay down new rules in order to guide future *legislative* action, this being the very definition of a legislative, as opposed to judicial, power.  *Keller v. Potomac Electric Power Co*., 261 U.S. 428, 440-41, 43 S.Ct. 445, 67 L.Ed. 731 (1923).  The sovereignty and comity concerns explicit in the exceptional doctrine of *Ex parte Young* and other immunities prevent federal courts from relegating state officials like the Secretary of State and State Election Board members to convenient stand-ins for

---

[5] Although Plaintiffs did not meet the statutory preconditions for a reexamination, the Secretary conducted one anyway. Doc. 191-1 at 3 (Examination Report, certified by Secretary Kemp on April 20, 2018).

purposes of conveying direction on future policy changes to the ears of state legislators.

An appeal of the issue of constitutional standing may be reviewed by the Eleventh Circuit because it is "inextricably intertwined" with a proper analysis of Eleventh Amendment immunity, legislative immunity and *Ex Parte Young*. *Summit Medical Assocs.*, 180 F.3d at 1335. Under the pendent appellate jurisdiction doctrine, the appellate court may exercise jurisdiction over standing if it and the other immunities are either inextricably intertwined or the determination of one is essential to the resolution of the other. *See, e.g.*, *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1365 (11th Cir. 1997) (reviewing nonappelable order compelling production with appealable sanctions order); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1167 n. 10 (11th Cir. 1997). Here, issues of standing are both "inextricably intertwined" with, and essential to the resolution of, the other immunity doctrines at issue.

> *2. The Standing Issues Present a Threshold Issue of Jurisdiction and a Non-Frivolous Argument on Appeal.*

"As a general rule, if there is no constitutional defect in the application of the statute *to a litigant*, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." *Cty. Ct. of*

*Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 155, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (citation omitted) (emphasis supplied).  Plaintiffs' Complaints never identify a single security breach of a DRE machine under real-world conditions in a Georgia election.    Plaintiffs assert that Georgia's DRE System is "*presumed* to be compromised." Doc. 226 ¶ 110 (emphasis supplied); *see also*, *id*. at ¶ 115 (DRE system "must be presumed to be compromised").   Thus, Plaintiffs' claims are premised entirely on the *possibility* that Georgia's election system *might be* subjected to malicious interference.

The Order fails to recognize the significance to standing analysis of the United State Supreme Court's seminal decision in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (rejecting "reasonable likelihood" of injury as sufficient to meet the injury in fact standard).  Plaintiffs' "presumptions" do not even approach the "reasonable likelihood" standard rejected in *Clapper*.   As the Eleventh Circuit has interpreted *Clapper*, "allegations of possible future injury" are not sufficient. *Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203 (11th Cir. 2018), quoting *Clapper,* 568 U.S. at 409.

The Order's reliance on antecedent case-law predating the Supreme Court's 2013 opinion in *Clapper*—cases like *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir.

2006) and *Banfield v. Cortes*, 922 A.2d 36 (Pa. Commw. Ct. 2007)—misses the point. *See* Doc. 309 at 21.  The only other federal constitutional challenge to DRE machines after *Clapper* relied expressly upon it in concluding the challengers failed to show standing. *Stein v. Cortes*, 223 F.Supp.3d 423, 432 (E.D. Pa. 2016) (failure to allege vote was inaccurately recorded by DRE meant plaintiffs lacked standing).  "Plaintiffs' allegations that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, *simply do not constitute injury-in-fact*." *Id*., citing *Clapper* (emphasis supplied).

*Clapper* disapproved another argument relied upon by the Order in finding standing, i.e., that standing may be shown indirectly through measures a plaintiff undertakes to avoid DRE machines.  "The Supreme Court has *never* upheld standing based solely on a governmental policy lacking compulsion, regulation, or constraints on individual action." *Citizen Center v. Gessler*, 770 F.3d 900, 912 (10th Cir. 2014) (emphasis supplied) (allegations of "chilling effect" on voting were too conjectural to establish injury in fact).  Such an analysis, the Supreme Court makes clear, "improperly waters down the fundamental requirements of Article III." *Clapper*, 568 U.S. at 416.

The Order dilutes the constitutional requirements for standing whenever it is alleged that the fundamental right to vote is at stake. Doc. 309 at 27 (distinguishing

*Clapper* because it did not involve "the right to vote"). But just because a case concerns voting rights does not enlarge the powers of a federal court to act in cases where standing does not clear the threshold of Article III. *See, e.g., Dimaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (allegations that Fourteenth Amendment right to vote "may" be impaired does not show injury in fact).

"For an injury to be [sufficiently] particularized, it must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *U.S. v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). The Supreme Court has made clear that "the assumption that if respondents have not standing to sue, no one would have standing, is not a reason to find standing." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 489, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). It is not enough merely to seek to protect "an asserted interest in being free of an allegedly illegal electoral system." *Dillard v. Chilton Cty. Com'n*, 495 F.3d 1324, 1333 (11th Cir. 2007).

3. *Lack of Concrete Harm and Other Standing Issues are Inextricably Intertwined with, and Essential to the Determination of, Appellate Review of the Other Immunities*.

"Relaxation of standing requirements is directly related to the expansion of judicial power." *Clapper*, *supra*, at 408, quoting *United States v. Richardson*, 418 U.S. 166, 188, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). Here, the Order's relaxation of standing augurs a muscular federal judicial power that would erode the sovereignty of state government in violation of the Eleventh Amendment.

As the Supreme Court explained in *Papasan*, "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  Nowhere in either of the Plaintiff-Factions' respective Complaints is there an identification of a single, relevant security breach of a DRE machine—or loss of one Plaintiffs' vote—in a Georgia election.  Also absent is a plausible allegation that raises beyond conjecture the imminence of a "malicious hack" that will change, dilute or negate a single one of the individual Plaintiffs' votes in an upcoming election.  Plaintiffs concede that, when working properly, DRE

machines record a vote in the same manner as it is cast.[6]   And while the Order goes to great lengths to extol the specificity of hearing-testimony from Plaintiffs' "experts" and deride that of witnesses for the State Defendants, this presents a colorable question on appeal as to whether the District Court is impermissibly allowing such testimony to "embellish[] a deficient allegation of injury." *Dimaio v. Democratic Nat'l Comm.*, 520 F.3d at 1301, quoting *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006).

The harm and redressability concerns raised in the Motion to Dismiss overlap with *Ex parte Young* in other ways.  For instance, the lack of concrete harm and standing are inexplicably intertwined with Plaintiffs' inability to show *harm* that is *continuous* and *ongoing* within the meaning of the *Ex parte Young* exception to Eleventh Amendment immunity.   Further, "*Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal." *Papsan*, 478 U.S. 265, citing *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

"[U]nless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Summit Medical*

---

[6] Plaintiffs admit that "[w]hen operating properly, AccuVote DRES use software installed on the unit to record the voter's choice on both the DRE's removable memory card and into the machine's internal flash memory." Doc. 226 at ¶ 71.

*Assocs.*, 180 F.3d at 1341 (holding that *Young* did not except from Eleventh Amendment immunity claims against Governor, Attorney General and District Attorney regarding civil enforcement provisions of partial-birth abortion statute). Neither the Secretary of State, nor the SEB "enforce" or threaten to use any statute alleged to be unconstitutional to cause harm to the individual Plaintiffs.  Certainly, this case is nowhere near the classic *Young* paradigm for an exception to immunity where a law enforcement official has already begun—or is poised to commence—a legal action or criminal prosecution against an individual using an unconstitutional law. *C.f. Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988).

It was the General Assembly of Georgia, not these Defendants, which enacted a comprehensive statutory scheme that, in 2001, was built around DRE machines as the workhorse of Georgia's elections system.  The Secretary of State's role is to (1) perform his statutory duty to maintain the DRE system for use by Georgia's counties and (2) under appropriate circumstances, re-examine and express his *opinion* as to whether DRE machines can be safely and securely used.  Neither of these roles harm the Plaintiffs personally or concretely.  Facilitating the use of a DRE system by Georgia's counties does not constitute an "enforcement proceeding" against the individual plaintiffs that would represent a "continuous and ongoing violation" of a federal law such that only *Young* can redeem the

- 15 -

supremacy of federal law. "Only if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer or his official or representative character and subject him to the individual consequences of his conduct." *Summit Medical Assocs.*, *supra* at 1341. To the extent the Order uses the Secretary of State and SEB Members as surrogates, or "targets of convenience," to influence the Georgia legislature to make broad changes in the name of election security, the same redressability concerns that prevent Plaintiffs from showing standing also preclude *Ex parte Young*'s exception from removing Eleventh Amendment immunity.

   4. *This Case Does Not Warrant Ex parte Young's Exception.*

Before addressing the three elements for application of *Young's* exception to Eleventh Amendment immunity, the State Defendants highlight the fundamental problem with applying *Young* to this case: Plaintiffs here are not complaining of any action against them by any of the State Defendants.  What we have here is not *action*, but an allegedly harmful *inaction*.  *Young* was never intended to apply to such a situation.

*Young* was intended to shield private citizens from the action of state officials, not their inaction.  This difference is substantive, not merely semantic. Plaintiffs' grievance is that State Defendants "ha[ve] *taken no action* to mandate the use of

paper ballots to protect Georgia's elections." Doc. 226 ¶ 15 (emphasis supplied). Plaintiffs' grievances on account of the State Defendants' *inaction* places *Young*'s exception to immunity out of reach. *See, e.g.*, Doc. 309 at 22 (Plaintiffs allege Defendants "*failed to take adequate steps* to address those breaches," "that Defendants have continued to *fail to take action* to remedy the DRE system's vulnerabilities," "that this *failure* . . . impacts the integrity of the voting system")
(emphasis supplied).  The unmistakable objective of this lawsuit is to "remedy" alleged inaction by the State Defendants with a federal judicial decree, so that the State of Georgia (and its elected representatives) will be goaded into action to renovate its election system to the satisfaction of the individual Plaintiffs.

It is beyond cavil that a federal court action "to *direct the exercise of any discretion committed to its officers*," infringes a State's sovereignty. *Lathrop v. Deal*, 301 Ga. 408, 417 (2017), quoting *Holcombe v. Ga. Milk Producers Confederation*, 188 Ga. 358, 363 (1939) (emphasis supplied).  *Young* weighs that infringement of state sovereignty directly against the interest of federal supremacy, essentially asking whether vindicating federal supremacy is worth straining the federal-state relationship.

In truth, the Plaintiffs do not seek to enjoin the enforcement of an allegedly unconstitutional statute.  Plaintiffs are not directly harmed by a statute like

O.C.G.A. § 21-2-50(15) that merely requires the Secretary of State to maintain DRE machines "for use by counties."  Nor is there harm *per se* to the individual Plaintiffs from a statute, like section 21-2-379.2, which permits the Secretary of State to re-examine the DRE system and attest to his or her opinion of its security. These Plaintiffs claim grievance on account of state officers' alleged failure to act, i.e. a failure to implement certain policies Plaintiffs believe are proper.  This turns *Young* inside out.

The Supreme Court has never read *Young* so expansively.  *Young* "was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity. . . ." *Papasan*, 478 U.S. at 276.  This "action" requirement is indispensable to understanding *Young*:

> If, because they were law officers of the state, a case could be made for . . . testing the constitutionality of the statute, by an injunction suit against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general. . . . That would be a very convenient way for obtaining a speedy judicial determination of . . . constitutional law . . . ., but it is a mode which cannot be applied to the states . . . consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons. . . .

*Young*, 209 U.S. at 157 (emphasis supplied).  This is why *Young*'s requirement of real or threatened *action* on the part of the state official exists and always requires a plausible allegation of threatened enforcement and/or the imminence of

- 18 -

proceedings against an individual plaintiff. *See, e.g., Western Union Tel. Co. v. Andrews*, 216 U.S. 165, 166, 30 S.Ct. 286, 54 L.Ed. 430 (1910) (holding that *Young* applies precisely when a statute charges prosecutors with enforcement and they threaten and are about to commence proceedings to enforce the statute).

Were this Court's Order the law, *Young* would extend far beyond what the Supreme Court intended.  State officials would be hauled into court for complaints about their failure to act as Plaintiffs wish.  Here, Plaintiffs "named the offices [of the Secretary of State and State Elections Board] in an effort to obtain a judgment binding the State . . . as an entity, a step that Congress did not authorize when enacting 42 U.S.C. § 1983 and that the Eleventh Amendment does not permit in the absence of such authorization." *Sherman v. Community Consol. School Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992) (citations omitted).  The Order overlooks the requirement that, for *Young*'s exception to work as intended, that the official threaten and be about to commence proceedings adverse to the particular individual plaintiff.

Additionally, applying *Ex parte Young* is problematic for three separate and independent reasons, any one of which requires reversal of the Order.

First, Plaintiffs' relief does not remedy a violation of federal law that is "ongoing" and "continuous."  Plaintiffs' differences of personal opinion with the

State Defendants—based on media reports and studies—as to the qualitative assessment of future vulnerability to criminal, third-party hacking does not convert their claims into a redressable violation of federal law that is "continuous" and "ongoing."   Further, and for the same reasons Plaintiffs lack standing, mere presumptions of vulnerability or future harm are not the equivalent to showing a "violation" within the meaning of *Young*'s balancing federal supremacy and state sovereignty.

Second, and notwithstanding Plaintiffs' disguising their claims as "only" for prospective relief, Plaintiffs still want "to adjudicate the legality of past conduct," meaning their relief is not purely prospective.  The gravamen of Plaintiffs' case is that alleged breaches occurred in the past and that the State Defendants "failed to take adequate steps to address those breaches." Doc. 309, at 22.   Plaintiffs' allegations remain "backward-looking" because they seek to remedy harm "resulting from a past breach of a legal duty on the part of the defendant state officials." *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014) (internal quotation omitted).[7]

---

[7] Simply because the remedy will occur in the future, does not transform it into "prospective" relief, especially where "the relevant events [to Plaintiffs' claims] have already occurred." *Fedorov v. Board of Regents for University of Georgia*, 194 F.Supp.2d 1378, 1387 (S.D. Ga. 2002).

Finally, because Plaintiffs' suit "implicates special sovereignty interests" for the reasons discussed *supra*, this suit cannot be exempted from immunity under *Ex parte Young*. In giving no discernable deference either to Georgia's statutory scheme or to the discretion delegated to the Secretary of State by Georgia's legislature, the Order raises profound questions of state sovereignty (an explicit consideration under *Ex parte Young*), as to the when an unelected federal judge may substitute his or her opinion (or the plaintiffs' opinions) for the opinion of a state official. This case's assault on a public officials' discretionary opinion and alleged "failures to act" contravene *Young*'s formulation to avoid "upset[ing] the balance of federal and state interests." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 277 (1997).

*Young*'s applicability "has been tailored to conform as precisely as possible" to those specific situations in which it is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Papasan, supra*, at 277-78. The Order's misreading of *Ex parte Young* upsets the delicate equilibrium between federal and state sovereigns that *Young* was written to preserve, not erase. For all of these reasons, an appeal of the various Eleventh Amendment immunity issues raised by the State Defendants presents a non-frivolous argument that merits a stay pending appeal.

*5. This Appeals Also Presents Non-Frivolous Arguments for Absolute Legislative Immunity.*

Although the Order does not mention absolute legislative immunity, an order nonetheless may be directly appealed if it "effectively denied [the] immunity." *See, e.g., Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017).  Plaintiffs allege only that State Election Board members are responsible for "promulgating rules and regulations to obtain uniformity in election practices" and that are "consistent with law" in addition to "investigat[ing] the administration of primary and election laws and frauds and irregularities in elections." Doc. 226, ¶ 36.

Legislative immunity insulates state officials "acting in their legislative capacity." *Consumers Union v. Supreme Court of Virginia*, 446 U.S. 719, 734 (1980).  To the extent Plaintiffs' suit is premised on the SEB's promulgation of rules and regulations, the claim is barred by legislative immunity, regardless of the relief sought.  *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (explaining that the immunity "applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief.").

The Order's facade of restraint—denying the lawsuit is "usurping the State's role in regulating elections" because "Plaintiffs are not asking the Court to direct how the State counts ballots" (Doc. 309, at 30)—is pierced two sentences later when the Court reveals that directing the State how to count ballots precisely one

- 22 -

of several infringements upon Georgia's sovereignty that is at stake. *Id*. (Plaintiffs "seek to require the State to implement a fully auditable ballot system to ensure the accuracy and reliability of the voting process."). This comes through in the Order's portentous final sentences: "If a new balloting system is to be launched in Georgia in an effective manner, it should address democracy's critical need for transparent, fair, accurate, and verifiable election processes that guarantee each citizen's fundamental right to cast an accountable vote." Doc. 309 at 46. In passing judgment on the "adequacy" of Georgia's elections system, the Court places itself opposite the Georgia Legislature that constructed a statutory regime around DRE machines in 2001, the executive and administrative branches of Georgia that maintain it for use by county governments, and the unanimous opinion of Georgia's highest judicial tribunal that upheld the constitutionality of this statutory system. *See Favorito v. Handel*, 285 Ga. 795 (2009).

D. THE BALANCING OF INTERESTS FAVOR A STAY AND WILL DO NO PREJUDICE TO THE PLAINTIFFS.

The State Defendants' appeal is not frivolous. The State Defendants raise multiple, often-overlapping threshold jurisdictional issues. Were the Eleventh Circuit to agree with any one of the arguments outlined above, it would prevent this case from going forward. Precedent from this Circuit and the United States Supreme Court make that probability far higher than the Plaintiffs' presumptions

of vulnerabilities that will lead to their votes vanishing because of malicious hackers.

From the very beginning of this case, the State Defendants have challenged the sufficiency of the Complaint(s), arguing that Plaintiffs lack standing, that Defendants enjoy immunity from suit and that constitutional thresholds for jurisdiction are not met.  Defendants asked that the Court rule upon their Motion(s) to Dismiss before charging into wasteful litigation.[8]  It would be a wasteful expenditure of judicial resources and the parties' resources to move this case through discovery only to have any result negated by a subsequent Court of Appeals decision.  As a practical matter, this waste would be especially unnecessary considering that the Secretary of State convened a bi-partisan commission with the charge to study and make recommendations regarding procurement of the kind of DRE machine with the voter-verified and auditable paper trail the Plaintiffs insist is preferable.

This Court should stay this case pending appeal including, but not limited to, scheduling, deadlines for pleading, engagement in discovery, and any continued efforts to enjoin future elections.  There is no part of this case that can proceed until the appeal is decided because the appeal pertains to the right of Plaintiffs to

---

[8] *See* Doc. 56 (order staying discovery).

maintain this action at all.  A stay of proceedings will save the parties from having to exert the time, effort and resources responding to a prolix filings that have already plagued this case, to say nothing of the fact this case involves two different Plaintiff factions employing sometimes different tactics and/or motions.   The practical efficiencies of a stay are further bolstered by the fact that, now that the Court has decided not to issue an injunction impacting the November 2018 elections, the State should be not be distracted from, or interfered with, doing the very thing Plaintiffs want the State to do: procure and implement a new elections system for the November 2020 elections. The most efficient use of the resources of the parties and the Court is to await a ruling on the appeal.

## CONCLUSION

For the foregoing reasons, the State Defendants respectfully request the Court to stay all pre-trial and trial proceedings in this matter pending issuance of a mandate from the Court of Appeals.  Alternatively, should this Court determine that it retains jurisdiction of the proceedings despite the State Defendants' filing of a non-frivolous appeal, the State Defendants respectfully request, for the reasons stated above, that a stay be granted under Federal Rule of Appellate Procedure 8(a)(1)(A).

Respectfully submitted, this 23rd day of September, 2018.

BARNES LAW GROUP, LLC

*/s/John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan,*
*Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I have read the Court's Standing Order in Cases Proceedings Before the Honorable Amy Totenberg and that I will comply with its provisions during the pendency of this litigation.

*/s/John F. Salter*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/John F. Salter*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF MOTION TO STAY** with the Clerk of

Court using the CM/ECF system, which will send email notification of such filing

to all attorneys of record.

This 23rd day of September, 2018.

**BARNES LAW GROUP, LLC**

*/s/John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan,*
*Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*