## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRIAN KEMP, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CURLING PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STATE DEFENDANTS' MOTION TO STAY

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  BACKGROUND ................................................................................2

III. ARGUMENT ....................................................................................3

   A.  This Court retains jurisdiction notwithstanding State Defendants' appeal ...........4

     *i.*   *Frivolous appeals do not divest a district court of jurisdiction* ........................4

     *ii.*  Ex parte Young *applies* ....................................................................5

     *iii. Defendants' legislative immunity defense is baseless* .......................12

     *iv. Standing is not immediately appealable, and Curling Plaintiffs have standing in any event* ...................................................................15

   B.  The equities strongly disfavor a stay ...............................................21

     *i.   State Defendants will not suffer irreparable injury absent a stay* ...................22

     *ii.  The balance of the equities as well as the public interest strongly disfavor any further delays* ...........................................................23

IV. CONCLUSION ...............................................................................24

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Holden*,
  66 F.3d 62 (4th Cir. 1995) ...................................................................12

*Behrens v. Pelletier*,
  516 U.S. 299 (1996) ............................................................................4

*Black v. Wigington*,
  811 F.3d 1259 (11th Cir. 2016) ..........................................................16

*Blinco v. Green Tree Servicing, LLC*,
  366 F.3d 1249 (11th Cir. 2004) ............................................................4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................21

*Common Cause/Ga. v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ..........................................................20

*Crymes v. DeKalb Cty., Ga.*,
  923 F.2d 1482 (11th Cir. 1991) ..........................................................12

*Dominion Transmission, Inc. v. Summers*,
  723 F.3d 238 (D.C. Cir. 2013) ..............................................................6

*Epps v. Watson*,
  No. 3:05-CV-68CDL,
  2008 WL 4937031 (M.D. Ga. Nov. 17, 2008) ......................................5

*Ex parte Young*,
  209 U.S. 123 (1908) ..................................................................... passim

*Fedorov v. Bd. of Regents for Univ. of Ga.*,
  194 F. Supp. 2d 1378 (S.D. Ga. 2002) ...............................................10

*Freeman v. Cavazos*,
  923 F.2d 1434 (11th Cir. 1991) ..........................................................22

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982) ................................................................21

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ...............................................................11

*In re MDL-1824 Tri-State Water Rights Litig.*,
    644 F.3d 1160 (11th Cir. 2011) ..............................................16

*Lewis v. New Mexico Dep't of Health*,
    261 F.3d 970 (10th Cir. 2001) ...................................................7

*Milliken v. Bradley*,
    433 U.S. 267 (1977) .................................................................6

*Moniz v. City of Fort Lauderdale*,
    145 F.3d 1278 (11th Cir. 1998) ..............................................17

*One Wis. Inst., Inc. v. Thomsen*,
    198 F. Supp. 3d 896 (W.D. Wis. 2016)....................................20

*Papasan v. Allain*,
    478 U.S. 265 (1986) ...............................................................10

*Parents for Quality Educ. with Integration, Inc. v. State of Ind.*,
    977 F.2d 1207 (7th Cir. 1992),
    as modified, 986 F.2d 206 (7th Cir. 1993) .................................7

*Rateree v. Rockett*,
    852 F.2d 946 (7th Cir. 1988) ...................................................13

*Rigdon v. Georgia Bd. of Regents*,
    No. CV406-240,
    2008 WL 2986389 (S.D. Ga. Aug. 4, 2008) ...............................4

*Sampson v. Murray*,
    415 U.S. 61 (1974) .................................................................22

*Scott v. Taylor*,
    405 F.3d 1251 (11th Cir. 2005)....................................... 12, 14, 15, 17

*Snook v. Tr. Co. of Georgia Bank of Savannah*,
  909 F.2d 480 (11th Cir. 1990) ...............................................................22

*Summit Med. Assocs., P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999) ..................................................... passim

*Supreme Court of Virginia v. Consumers Union*,
  446 U.S. 719 (1980) ...............................................................................12

*Swint v. Chambers County Comm'n*,
  514 U.S. 35 (1995) ..................................................................................16

*Trevino By and Through Cruz v. Gates*,
  23 F.3d 1480 (9th Cir. 1994) ..................................................................13

*United States v. Maduno*,
  40 F.3d 1212 (11th Cir. 1994) ...................................................................4

*Va. Office for Prot. & Advocacy v. Stewart*,
  563 U.S. 247 (2011) ......................................................................... 11, 12

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
  535 U.S. 635 (2002) ...............................................................................10

**Statutes**

28 U.S.C. § 1291 ........................................................................................15

**Other Authorities**

O.C.G.A. § 21-2-281 ..................................................................................14

O.C.G.A. § 21-2-334 ..................................................................................14

**Constitutional Provisions**

U.S. Const. amend. XI .......................................................................... passim

U.S. Const. amend. XIV ..................................................................... 2, 5, 7, 23

# I.     INTRODUCTION

The Court has recognized that this case is extraordinarily time-sensitive. "Plaintiffs have shown the threat of real harms to their constitutional interests," and the "2020 elections are around the corner."  (Order, Dkt. No. 309, at 41, 46.)  In fact, there will likely be elections even next year.  To expedite proceedings, Curling Plaintiffs[1] narrowed their claims to only those without colorable immunity defenses—quintessential claims against individual state officers in their official capacity for prospective relief.  The Court then correctly denied State Defendants' motion to dismiss those narrowed claims.

Despite the Court's admonition that "further delay is not tolerable" (Order 45), State Defendants now ask this Court to halt all proceedings pending their interlocutory appeal from the denial of the motion to dismiss.  That appeal asserts Eleventh Amendment and legislative immunity—the very defenses that Curling Plaintiffs narrowed their claims to resolve.  Defendants also attempt to appeal the Court's rejection of their standing arguments, even though the Eleventh Circuit has squarely held it lacks interlocutory appellate jurisdiction over standing issues.

The stay that State Defendants request while they pursue their wholly meritless appeal is not required by law and would severely prejudice Plaintiffs.

---

[1] The "Curling Plaintiffs" are Donna Curling, Donna Price, and Jeffrey Schoenberg.

The Court should deny the stay and continue to "insist on further proceedings moving on an expedited schedule." (Order 45-46.)

## II.   BACKGROUND

Given the Court's deep familiarity with this case, this description of the proceedings will be brief. Curling Plaintiffs' Second Amended Complaint alleges that Georgia's DRE voting system violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. After Defendants filed motions to dismiss, Curling Plaintiffs sought "to narrow the issues and proceed expeditiously toward resolution." (Curling Plaintiffs' Notice Regarding Second Amended Complaint ("Notice"), Dkt. No. 222, ¶¶ 4-5.) To that end, Curling Plaintiffs in June 2018 voluntarily dismissed all claims except those seeking prospective declaratory and injunctive relief against the State and Fulton Defendants in their official capacities. (*Id.*)

This Court denied the motions to dismiss. It rejected Defendants' contention that Plaintiffs lack standing, detailing record evidence showing that "harm has in fact occurred" and that there is a "threat of future harm" that Defendants caused and can redress. (Order 17-26.) The Court also rejected Defendants' contention that they are immune from suit. "Find[ing] that this is a classic *Ex parte Young* case," (Hr. Tr., Dkt. No. 307, at 33:17-18), the Court explained that "the *Ex parte*

2

*Young* exception to Eleventh Amendment immunity" applies to claims, like those asserted by the Curling Plaintiffs, "against state officers in their official capacities for prospective injunctive relief."  (Order 29.)  (Capitalization and italics altered.)

On the Curling Plaintiffs' motion for a preliminary injunction, the Court concluded that they "are substantially likely to succeed on the merits of one or more of their constitutional claims" and "have demonstrated a real risk of suffering irreparable injury without court intervention."  (Order 38, 40.)  The Court denied a preliminary injunction, however, because of the short time remaining before the 2018 elections.  (Order 41-44.)  At the same time, the Court noted that "the State Defendants have also stood by for far too long, given the mounting tide of evidence," and that arguments about time and resource constraints "only weaken the more that time passes and if Defendants continue to move in slow motion."  (Order 43-44.)

State Defendants then noticed an appeal from the denial of their motion to dismiss and now seek a stay pending that appeal.

## III.   ARGUMENT

Defendants contend (Dkt. No. 320-1 at 6-23) that their interlocutory appeal divests this Court of jurisdiction and that a stay is therefore required.  Defendants also contend (at 23-25) that the equities favor a stay.  Both contentions lack merit.

A.   **This Court retains jurisdiction notwithstanding State Defendants' appeal**

   *i. Frivolous appeals do not divest a district court of jurisdiction*

Although "[o]rdinarily, a defendant's notice of appeal divests the district court of jurisdiction, which is then transferred to the court of appeals," there are "exceptions to this general rule."  *United States v. Maduno*, 40 F.3d 1212, 1217 (11th Cir. 1994).  "One of the exceptions involves the appeal of a frivolous or dilatory" claim.  *Id.*  Allowing defendants to halt litigation with such an appeal would interfere with "the smooth and efficient functioning of the judicial process," *id.* at 1218, while permitting district courts to maintain jurisdiction in such situations "minimizes disruption of the ongoing proceedings," *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996).

That "concern about frivolous appeals" applies fully to interlocutory appeals "from the denial by a district court of entitlement of a government official to immunity."  *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004).  If "the appeal is frivolous," then "the district court may carry on with the case."  *Id.* at 1252.  Accordingly, courts have denied stays pending appeal when the immunity defenses are not "colorable."  *E.g.*, *Rigdon v. Georgia Bd. of Regents*, No. CV406-240, 2008 WL 2986389, at *1 (S.D. Ga. Aug. 4, 2008). Courts have also denied such stays when an interlocutory appeal seeks to raise

4

issues that are "not immediately appealable." *E.g.*, *Epps v. Watson*, No. 3:05-CV-68CDL, 2008 WL 4937031, at *3 (M.D. Ga. Nov. 17, 2008).

Defendants' appeal is not colorable under this standard and thus does not divest this Court of jurisdiction.

### ii. Ex parte Young *applies*

Defendants' contention that the Eleventh Amendment bars Plaintiffs' claims is not colorable. Plaintiffs narrowed their claims to seek only prospective relief (not damages) from state officials acting in their official capacity. In particular, they seek an injunction barring Defendants from engaging in unconstitutional actions—conducting elections that will violate Plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment—and a declaration that this conduct violates federal law. (Notice ¶ 5(c)-(d); *see also* Order at 15; Second Amended Complaint ("SAC"), Dkt. No. 70, ¶¶ 65(a)-(b), 80(a)-(b), 163, 165). The Eleventh Amendment does not shield Defendants here because the relief Plaintiffs seek is quintessentially available under *Ex parte Young*, 209 U.S. 123 (1908). *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (explaining that under *Ex parte Young*, the Eleventh Amendment "does not generally prohibit suits seeking only prospective injunctive or declaratory relief").

All of Defendants' efforts to avoid *Ex parte Young* lack merit.

Defendants first contend that Plaintiffs challenge only Defendants' failure to act and that such a claim "turns *Young* inside out."  Dkt. No. 320-1 at 18.  They are wrong about both Plaintiffs' claim and the law.  Plaintiffs challenge application of a specific regulation that Defendants continue to enforce:  SEB Rule 183.  (SAC ¶¶ 24, 38.)  SEB Rule 183-1-12 provides that "all federal, state, and county general primaries and elections, special primaries and elections, and referendums in the State of Georgia shall be conducted at the polls through the use of direct recording electronic (DRE) voting units supplied by the Secretary of State."  SEB Rule 183-1-12*.*  Plaintiffs contend that enforcement of this regulation in upcoming elections will result in constitutional injury to them and thus seek an injunction barring it.  (SAC ¶¶ 62, 74-75, 165.)  That is not an omissions claim.

In any event, omissions claims are not barred by *Ex parte Young*.  If a state officer's failure to act will result in constitutional harm to plaintiffs, the Eleventh Amendment does not bar an injunction requiring action.  *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 269 (1977) (upholding under *Ex parte Young* a "desegregation decree" requiring state officials to implement "compensatory or remedial educational programs"); *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 243 (D.C. Cir. 2013) (holding that a claim "easily satisfie[d]" *Ex*

*parte Young*'s requirements where it "allege[d] that the [state officer's] failure to act was 'contrary to law'"); *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970, 976 (10th Cir. 2001) (holding that *Ex parte Young* applies to claim that officials were "violating federal law in failing to provide waiver services to eligible individuals"); *Parents for Quality Educ. with Integration, Inc. v. State of Ind.*, 977 F.2d 1207, 1210 (7th Cir. 1992), as modified, 986 F.2d 206 (7th Cir. 1993) ("If, as the plaintiffs allege, the state has not taken affirmative steps to discharge its duty to dismantle the dual school system that its laws helped to create and maintain, that failure to act constitutes a continuing violation of the Fourteenth Amendment.").

Defendants also err by arguing that *Ex parte Young* requires that the defendant "threaten and be about to commence proceedings adverse to the particular individual plaintiff." (Dkt. 320-1 at 19.) The Eleventh Circuit has rejected that argument. In *Summit*, the defendants contended that "under *Ex parte Young,* a state officer's enforcement of an allegedly unconstitutional state law must be *imminent*, not merely threatened," but the Eleventh Circuit "decline[d] to adopt so limited a view." 180 F.3d at 1338. The court explained instead that "*Ex parte Young* recognized the very real reason a plaintiff may need a vehicle to challenge the constitutionality of a state law before enforcement is imminent," so "the *Ex*

*parte Young* doctrine does not demand that a plaintiff first risk the sanctions of imminent prosecution or enforcement in order to test the validity of a state law." *Id.*

Next, Defendants argue that *Ex parte Young* is inapplicable because Plaintiffs have not alleged an ongoing and continuing violation. (Dkt. No. 320-1 at 19-20.) Defendants' assertion is belied by Plaintiffs' allegations as well as Defendants' own statements. Plaintiffs seek injunctive relief that is designed to prevent prospective injury—namely injury that results from the Defendants' ongoing use of DREs in upcoming elections. (SAC ¶ 38 (alleging that "Georgia's Voting System relies primarily o[n] the use of DRE voting computers" that "provide no method through which voters can be assured that their vote has been accurately recorded"); *see also* SAC ¶¶ 8, 40, 43-44, 52, 165.) These allegations must be accepted as true for purposes of deciding the motion to dismiss, but Defendants have in fact confirmed them. They have stated repeatedly both publicly[2] and before this Court[3] that they intend to use the DREs in the upcoming election.

---

[2] "After the success of our pilot project last November using new voting equipment with a voter-verified paper trail, it is time for the state to move forward with phasing out our current voting equipment." Press Release, Secretary of State of Georgia, Kemp Creates Commission to Review New Voting System, (April 13, 2018), available at

Defendants also contend that Plaintiffs' requested "relief is not purely prospective" because Plaintiffs allege that "breaches occurred in the past." (Dkt. No. 320-1 at 20.)  That contention erroneously conflates two issues:  the kind of relief available under *Ex parte Young*, and the allegations Plaintiffs may put forward to support entitlement to such relief.  As to the former issue, Curling Plaintiffs' notice narrowing their complaint could not have been clearer in stating that they "do not seek retrospective relief."  (Notice ¶ 5.)  Curling Plaintiffs seek only prospective injunctive and declaratory relief, which falls squarely within *Ex parte Young*.  *See Summit*, 180 F.3d at 1337.  As to the latter issue, Plaintiffs have alleged that Georgia *currently* "relies primarily o[n] the use of DRE voting computers" that have "inherent problems."  (SAC ¶¶ 38, 40.)  Plaintiffs also alleged that the DREs currently have "added vulnerabilities" due to past mismanagement and that past breaches provide evidence of those problems.  (SAC ¶¶ 41, 42-52.)

Those allegations relating to past and current events help establish a likelihood of ongoing and future harm; their inclusion in the case does not mean Plaintiffs are seeking retrospective damages.  Nor does Plaintiffs' request for a

---

http://sos.ga.gov/index.php/general/kemp_creates_commission_to_review_new_voting_system.
[3] Hr. Tr. 61:7-11.

declaratory judgment transform the claim into one for retrospective relief.  *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 646 (2002) (holding that a "prayer for declaratory relief" that "does not impose *upon the State* a monetary loss" falls within *Ex parte Young* even if it "seeks a declaration of the *past*, as well as the *future*" (citation omitted)(emphasis in original)).  As Defendants' own cited case explains, an allegation of "past, present and future deprivations" is "precisely the type of continuing violation for which a remedy may permissibly be fashioned under *Young*," even if "the current disparity results directly from the same actions in the past."  *Papasan v. Allain*, 478 U.S. 265, 281-82 (1986).  (Dkt. No. 320-1 at 18, 21 (relying on *Papasan*).)  By contrast, the claim in *Fedorov v. Board of Regents for University of Georgia*, on which Defendants also rely, fell outside the scope of *Ex parte Young* because the plaintiff did "not run the risk of Defendants harming him in the future."  194 F. Supp. 2d 1378, 1387 (S.D. Ga. 2002).  That case, involving retrospective relief and no allegation of an ongoing violation, casts no colorable doubt on Curling Plaintiffs' claim for prospective relief based on an ongoing violation.

Finally, Defendants assert that *Ex parte Young* does not apply because the suit "implicates special state sovereignty interests." (Dkt. No. 320-1 at 21).  That objection has no legal basis.  Defendants cite no authority for their novel assertion

that "special state sovereignty interests" make *Ex parte Young* inapplicable when a case involves "public officials' discretionary opinion," "alleged 'failures to act,'" or elections.  (Dkt. No. 320-1 at 21.)  They cite only *Idaho v. Coeur d'Alene Tribe of Idaho*, which held in an "unusual" case that the claim was outside the scope of *Ex parte Young* because the suit was "the functional equivalent of a quiet title action which implicates special sovereignty interests."  521 U.S. 261, 281 (1997). A plaintiff "could not maintain" a quiet title action against the state directly (because the "Eleventh Amendment would bar it"), so the plaintiff could not circumvent that restriction by maintaining the functional equivalent using *Ex parte Young*.  *Id.* at 281-82.  That holding has no bearing on this case, which involves neither an attempt to acquire state lands nor the functional equivalent of a lawsuit barred by the Eleventh Amendment.[4]

Contrary to Defendants' suggestion, "not every offense to the dignity of a State constitutes a denial of sovereign immunity."  *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 258 (2011).  After all, every official-capacity suit against a state officer under *Ex parte Young* implicates state sovereignty. Rather, the "specific indignity against which sovereign immunity protects" (thus

_____

[4]  The portion of *Idaho* that Defendants cite (at 21) is a non-precedential opinion for two Justices only.  *See* 521 U.S. at 277 (opinion of Kennedy, J., joined by Rehnquist, C.J.).  And even that opinion contains no assertion that *Ex parte Young* should be inapplicable in circumstances like those here.

making *Ex parte Young* unavailable) occurs "when (for example) the object of the suit against a state officer is to reach funds in the state treasury or acquire state lands." *Id.* The object of Curling Plaintiffs' suit is entirely different. Curling Plaintiffs expressly "do not seek retrospective relief" and seek only to bar the enforcement of state laws in violation of the Constitution. (SAC 52; Notice ¶ 5.) Defendants' vague assertion of special sovereignty interests is a frivolous attempt to evade that quintessential application of *Ex parte Young*.

### iii. *Defendants' legislative immunity defense is baseless*

Defendants' appeal of the denial of their motion to dismiss on legislative immunity grounds is also not colorable and thus provides no basis for a stay. Under the doctrine of legislative immunity, "state legislators enjoy common law immunity from liability for their legislative acts." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (quoting *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 731 (1980)). In other words, the immunity applies only when a plaintiff sues "state legislators who acted in their legislative capacities." *Id.* at 1257. "[M]ere administrative application of existing policies" is not a "legislative" act. *Crymes v. DeKalb Cty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991); *see also, e.g.*, *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995) ("Executive and administrative actions are not protected."); *Trevino By and Through Cruz v. Gates*,

23 F.3d 1480, 1482 (9th Cir. 1994) (same); *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988) (same).

Legislative immunity is inapplicable here because Curling Plaintiffs have sued no legislators and challenge no legislative acts. State Defendants are executive officials who, by their own description, are merely "acting pursuant to their respective duties within th[e] legislative framework." (Dkt. No. 265 at 20.) More fundamentally, Curling Plaintiffs do not challenge the *enactment* of any law. Rather, Curling Plaintiffs allege that Defendants' *administration and enforcement* of existing state law violates the Constitution. *See* SEB Rule 183-1-12. (SAC ¶¶ 24, 38, 62, 74-75, 165.)

It is unclear, in fact, which of Curling Plaintiffs' claims—if any—Defendants believe are barred by legislative immunity. Defendants' motion says only that claims are barred "[t]o the extent Plaintiffs' suit is premised on the SEB's promulgation of rules and regulations." (Dkt. No. 320-1 at 22.) But no part of Curling Plaintiffs' suit is premised on any rulemaking; all claims are premised on only Defendants' enforcement of existing rules.

Defendants assert broadly that Plaintiffs seek to "direct[] the State how to count ballots." (Dkt. No. 320-1 at 22.) Plaintiffs do not, however, seek to enjoin the state legislature to enact any law. Moreover, Defendants' assertion addresses

only the requested remedy, not the acts challenged.  Regardless of how Defendants attempt to characterize the *remedy*, the alleged *violation* consists of administrative enforcement acts, not legislative acts.

Defendants also argue that Plaintiffs urge the Court to "pass[] judgment on" the "statutory regime" enacted by the Georgia Legislature.  (Dkt. No. 320-1 at 23.) That, of course, is the very purpose of an *Ex parte Young* claim alleging that enforcement of state law violates the federal Constitution.  Such a claim does not implicate legislative immunity, because the claim is not that legislators violated the Constitution by enacting the statutory regime.  Rather, Curling Plaintiffs have sued only those who enforce that regime.  Moreover, Curling Plaintiffs' requested relief is in fact consistent with the Georgia Legislature's judgment that elections should be conducted by paper ballot if using DREs is "impracticable."  O.C.G.A. §§ 21-2-281, -334.

If there were any doubt that Curling Plaintiffs' claims are exactly the kind of claims that raise no legislative immunity issues, Defendants' own cited authority puts it to rest.  In *Scott*, the court addressed a claim *against state legislators* for enacting an allegedly unlawful redistricting map.  405 F.3d at 1253.  (Dkt. No. 320-1 at 22 (relying on *Scott*).)  The court held that this challenge to the enactment of legislation was barred by legislative immunity, but it also explained that the

14

plaintiff was "free to maintain her suit against the Board of Elections." *Id.* at 1256. Against the Board, the court explained, the plaintiff could request "prospective relief seeking to enjoin the enforcement of the challenged voting district and a declaration as to its legality." *Id.* That is exactly the sort of relief that Curling Plaintiffs request here.

### iv. *Standing is not immediately appealable, and Curling Plaintiffs have standing in any event*

State Defendants' purported interlocutory appeal of the Court's denial of their motion to dismiss on standing grounds is not colorable for two independent reasons. First, there is no appellate jurisdiction over that portion of the appeal. Second, the Court's ruling was clearly correct in any event.

Generally, the courts of appeals have jurisdiction over only "final decisions." 28 U.S.C. § 1291. Under the "collateral order doctrine," however, certain interlocutory decisions—including the "denial of a motion to dismiss on Eleventh Amendment immunity grounds"—is appealable immediately. *Summit*, 180 F.3d at 1334. But the collateral order doctrine does not extend to appeal of "a district court's denial of a motion to dismiss on justiciability grounds"—including an Article III "standing determination." *Id.*

Defendants concede (Dkt. 320-1 at 4) that this Court's standing ruling is not independently appealable under either 28 U.S.C. § 1291 or the collateral order

doctrine.  They nonetheless contend that the court of appeals can review it now by exercising pendent appellate jurisdiction given that court's jurisdiction over the interlocutory immunity appeal.   Under the doctrine of pendent appellate jurisdiction, an appellate court "may address nonappealable orders if they are 'inextricably intertwined' with an appealable decision or if 'review of the former decision [is] necessary to ensure meaningful review of the latter.'"   *Summit*, 180 F.3d at 1335 (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995)).   "[T]he critical inquiry is whether the appealable issue can be resolved without reaching the merits of the nonappealable issues."   *In re MDL-1824 Tri-State Water Rights Litig.*, 644 F.3d 1160, 1179 (11th Cir. 2011).   The court of appeals "can exercise pendent appellate jurisdiction only under rare circumstances."   *Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016) (citation omitted).

This is not one of those "rare circumstances" where pendent appellate jurisdiction is present.  *Id.*  To the contrary, the Eleventh Circuit has squarely held that it lacks pendent appellate jurisdiction over standing arguments in situations exactly like those present here.  In *Summit*, the Court held there was no pendent appellate jurisdiction over a district court's decision not to dismiss for lack of standing even though there was interlocutory jurisdiction over non-dismissal on

16

Eleventh Amendment immunity grounds.  180 F.3d at 1335.  "These issues are neither 'inextricably intertwined' nor 'necessary to ensure meaningful review' of one another."  *Id.*  And in *Scott* the Court held that "an interlocutory appeal of the district court's denial of legislative immunity" does "not support pendant appellate jurisdiction on a standing issue."  405 F.3d at 1257 n.8; *see also, e.g.*, *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1282 n.3 (11th Cir. 1998) (holding that the Court "may resolve the qualified immunity issue in this case without reaching the merits of appellants' challenge to [plaintiff's] standing," so the standing issue "does not fall within our pendent appellate jurisdiction").  Although Defendants cite both *Summit* and *Scott* in their stay motion for other propositions, they make no attempt to reconcile those decisions with their pendent appellate jurisdiction arguments.

Even aside from their inconsistency with Eleventh Circuit precedent, Defendants' invocation of pendent jurisdiction fails.  Defendants assert (Dkt. 320-1 at 13-16) that the standing issues are inextricably intertwined with and necessary to ensure meaningful review of the appealable issues.  Defendants, however, do not even mention a link between standing and legislative immunity, much less establish it.  Defendants instead assert (Dkt. 320-1 at 13-14) a link between Article III's injury-in-fact requirement and *Ex parte Young*'s requirement of a continuous,

ongoing violation of federal law.  But *Ex parte Young* requires just that plaintiffs allege a "violation of federal law," *Summit*, 180 F.3d at 1338—not that the violation cause plaintiffs injury in fact (the focus of the entirely separate standing inquiry).  Applicability of *Ex parte Young* can thus "be resolved without reaching" standing.  *In re MDL-1824*, 644 F.3d at 1179.

Defendants also assert (Dkt. 320-1 at 14-16) a link between Article III's redressability requirement and *Ex parte Young*'s requirement that the state officer have minimal enforcement responsibility for the challenged law.  But again it is possible to decide the applicability of *Ex parte Young* without reaching redressability.  The likelihood that a favorable decision would redress an injury is not a required element under *Ex parte Young*.  Instead, a plaintiff must show only that "the state officer has some responsibility to enforce the statute or provision at issue."  *Summit*, 180 F.3d at 1341.

In any event, Defendants' standing argument would not be colorable even if the court of appeals had jurisdiction to address it.  Defendants wrongly contend that Plaintiffs have alleged only "possible future injury."  (Dkt. No. 320-1 at 10.)  But Plaintiffs have alleged that the DRE system was *actually* accessed multiple times already.  (SAC ¶¶ 42-48.)  Plaintiffs have also alleged that Defendants have failed to secure the DRE system from future attacks.  (SAC ¶¶ 40, 46, 61, 63.)

18

Plaintiffs thus have sufficiently alleged that "[t]he DRE system did not, and cannot ever" secure their constitutional right to have their votes counted without dilution. (SAC ¶ 52).

Indeed, this Court detailed the evidence introduced in the preliminary injunction proceeding showing that "the DRE voting system was *actually* accessed or hacked multiple times already," and that Defendants have failed to take "steps to secure the DRE system from such attacks" in the future.  (Order 17-21.) Confirming that the harm is real and ongoing, Defendants have admitted that they are implementing DREs for upcoming elections under unsafe conditions, including by leaving the election system open to external access through a modem and removable media.  (Dkt. No. 265 at 2; Hr. Tr. 226:22-228:25, 266:1-11.)  And these defects in the present system inflict ongoing injury to voters who cannot be confident in the integrity of elections—as Defendants' own cybersecurity specialist has explained.  (Presentation by Prof. Wenke Lee, Dkt. No. 313, Ex. 5 at 12, 15 (explaining that "[v]oter confidence" requires certain critical characteristics that DREs lack and only "[p]aper ballots done right" have); *see also* Order 45 (recognizing the "wound to the integrity" of Georgia's election system and to "citizens' confidence").)  As the Court recognized, this is sufficient to allege a

deprivation of "an election process that accurately and reliably records [Plaintiffs']
votes and protects the[ir] privacy."  (Order 18.)

Defendants (Dkt. 320-1 at 12) erroneously reduce Plaintiffs' claims to a
"generalized grievance," but Plaintiffs have alleged specific harm to themselves.
For example, Plaintiff Curling alleged that, due to her concerns about the
unreliability of the DRE system, she "persisted through considerable
inconvenience" in her attempt to cast a ballot using an absentee paper ballot—only
to be told by Defendants that her ballot was not counted.  (SAC ¶ 14; *see also*
Order 18.)

Forcing voters into the Hobson's choice between voting absentee and voting
on the unsecure DREs is sufficient to show injury-in-fact.  *See Common Cause/Ga.
v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009) ("Requiring a registered voter
either to produce photo identification to vote in person or to cast an absentee or
provisional ballot is an injury sufficient for standing."); *One Wis. Inst., Inc. v.
Thomsen*, 198 F. Supp. 3d 896, 909 (W.D. Wis. 2016) (having to present photo ID
to vote in-person sufficient injury for standing).  Defendants (Dkt. 320-1 at 10-11)
invoke *Clapper v. Amnesty Int'l USA*, but that case involved a theory of injury
based on "speculation" about possible future harm and "self-inflicted" costs
incurred to avoid a "fear" of possible surveillance.  568 U.S. 398, 410-14, 417-18

20

(2013).  Here, by contrast, Plaintiffs have alleged actual present deficiencies in

Georgia's voting system.  And depriving Plaintiffs of the ability to vote in person

with a secure ballot system is an actual deprivation inflicted by Defendants upon

Plaintiffs, not a "self-inflicted" cost.

The Court's analysis of causation and redressability are equally unassailable,

and Defendants do not challenge those conclusions in contending that their

standing appeal is not frivolous.  (Dkt. No. 320-1 at 9-12.)

*     *     *

Because Defendants' appeal presents no colorable issues, it does not divest

this Court of jurisdiction.[5]

## B.     The equities strongly disfavor a stay

Because the appeal does not divest this Court of jurisdiction, a stay would be

warranted only if the traditional factors for equitable relief were satisfied:  "(i) the

likelihood the moving party will prevail on the merits; (ii) the prospect of

irreparable injury to the moving party if relief is withheld; (iii) the possibility of

---

[5]  Even if Defendants had raised a non-frivolous appellate issue regarding some aspect of Curling Plaintiffs' claims, that would not require a stay of all proceedings.  The stay would extend only to the claim or aspect of the claim at issue.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (an appeal "divests the district court of its control over *those aspects of the case involved in the appeal*" (emphasis added)).  The rest of the litigation—on claims severable from those colorably appealed—should proceed.

harm to other parties if relief is granted; and (iv) the public interest." *Freeman v. Cavazos*, 923 F.2d 1434, 1437 (11th Cir. 1991). State Defendants are unlikely to succeed on the merits of their appeal for the reasons already discussed. The remaining three factors likewise disfavor a stay pending appeal.

### i. *State Defendants will not suffer irreparable injury absent a stay*

State Defendants argue that withholding a stay will result in the "expenditure of judicial resources and the parties' resources to move this case through discovery." (Dkt. No. 320-1 at 24.) That does not, however, represent irreparable injury warranting a stay. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to constitute irreparable injury." *Snook v. Tr. Co. of Georgia Bank of Savannah*, 909 F.2d 480, 487 (11th Cir. 1990) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) (alterations omitted).

Defendants also assert that without a stay, they will be "distracted from, or interfered with" in their purported effort to "procure and implement a new elections system for the November 2020 elections." (Dkt. No. 320-1 at 25.) Defendants fail to explain how that effort is incompatible with continuing to participate in this litigation—which, after all, seeks that very relief. Moreover, even with a stay, Defendants' own interlocutory appeal will still require them to

22

continue participating in litigation.  Having embraced that optional additional litigation, Defendants are in no position to claim that further litigation will cause them irreparable harm.

> ### ii.   *The balance of the equities as well as the public interest strongly disfavor any further delays*

Any injury State Defendants might suffer absent a stay is dwarfed by the harm to Plaintiffs and the public interest that would be caused by further delay. This Court has already explained the need to proceed quickly in this case and repeatedly noted the public interest at stake.  Already, time constraints have frustrated the Court's ability to provide a remedy for the 2018 elections despite "the serious security flaws and vulnerabilities in the State's DRE system."  (Order 34, 41-44.)  Additional delay will cause great harm to Curling Plaintiffs, who "have shown that their Fourteenth Amendment rights to Due Process and Equal Protection have been burdened" yet have been unable to obtain effective relief. (Order 33.)  The public interest will suffer as well, as delay will perpetuate the "wound to the integrity" of Georgia's election system that "pierces citizens' confidence in the electoral system and the value of voting."  (Order 45.)  That harm to Plaintiffs and the public is irreparable—a tainted election cannot be undone or redone.  (Hr. Tr. 304:22-305:12 (former Secretary of State explaining that there is

"no process for redoing an election," so to fix a vulnerability the State must "find a better way to do this before the next major election")).

Further tilting the balance of the equities away from State Defendants, this Court has already warned that "any timing issues [after November 2018] would appear to be exclusively of Defendants' own making." (Order 44.)  Indeed, Defendants' conduct to date has already resulted in the current crisis, as this Court has noted "grave[] concern about the State's pace in responding to the serious vulnerabilities of its voting system." (Order 43-44.)  The Court should not indulge Defendants' attempt to slow the pace further.

## IV.    CONCLUSION

Defendants provide no basis on which this Court should stay the proceedings before it.  With elections fast approaching both this year and next, there is little time for further delay in fixing a voting system that the Court has recognized is inherently unsecure.  This Court should reject Defendants' attempt to further delay these proceedings and deny Defendants' motion to stay.


Dated:  September 26, 2018                    Respectfully submitted,

                                               /s/ David D. Cross
                                              David D. Cross (*pro hac vice*)
                                              John P. Carlin (*pro hac vice*)
                                              Jane P. Bentrott (*pro hac vice*)

Catherine L. Chapple (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
RManoso@mofo.com
CChapple@mofo.com
JBentrott@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling,*
*Donna Price & Jeffrey Schoenberg*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRIAN KEMP, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

  /s/ David D. Cross     
David D. Cross

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,
Plaintiffs,**

**v.**

**BRIAN KEMP, ET AL.,
Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2018, a copy of the foregoing

CURLING PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STATE

DEFENDANTS' MOTION TO STAY was electronically filed with the Clerk of

Court using the CM/ECF system, which will automatically send notification of

such filing to all attorneys of record.

  /s/ David D. Cross
David D. Cross

27