IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, ET AL.,
Plaintiffs,

v.

BRIAN KEMP, ET AL.,
Defendants.

Civil Action No. 1:17-CV-2989-AT

CURLING PLAINTIFFS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SEVERANCE

Plaintiffs Donna Curling, Donna Price, and Jeffrey Schoenberg (the "Curling Plaintiffs") respectfully move the Court to sever their claims in the Second Amended Complaint (Dkt. No. 70, as modified by their withdrawal and voluntary dismissal of certain claims pursuant to the Curling Plaintiffs' Notice (Dkt. No. 222) and Stipulation of Dismissal (Dkt. No. 223)) ("SAC") from those claims asserted by Plaintiffs Coalition for Good Governance ("CGG"), Laura Digges, William Digges III, Ricardo Davis, and Megan Missett (the "Coalition Plaintiffs") in the Third Amended Complaint (Dkt. No. 226) ("TAC") in order to avoid further prejudice to the Curling Plaintiffs and to maximize efficiency and judicial economy in the administration of their case and the pursuit of critical relief for themselves and all Georgia voters. This Court has emphasized "the great amount

of public interest in this" case. (September 12, 2018 Hearing Transcript at 8-9.) The public interest is not served by undue delays and strategic choices that impede the "just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1. Both the State Defendants and the Coalition Plaintiffs previously expressed support for severance.

Absent severance of the Plaintiffs' respective claims, the Curling Plaintiffs will continue to suffer from the harmful delays and waste of resources that have resulted from being tied to the Coalition Plaintiffs. As the Court itself has noted, time is critically important in this case. Time and again, the Coalition Plaintiffs have thwarted the Court's and the Curling Plaintiffs' efforts to expedite this case, disrupting efficient case management and justice. Indeed, the basis for this Court's recent denial of Plaintiffs' motions for preliminary injunctions was the amount of time remaining before the November 2018 election—and those motions were delayed due to strategic choices made by the Coalition Plaintiffs, particularly CGG, that needlessly slowed this case.

The Curling Plaintiffs' only objective in this litigation is to obtain relief needed to ensure secure elections for all voters across the great state of Georgia as soon as possible. They are not in this for notoriety, attention, or any other self-aggrandizing goals, nor are their counsel in this for money. Indeed, all their

current counsel are engaged *pro bono*.  The Curling Plaintiffs hope to resolve this litigation in a way that achieves their singular objective as quickly and efficiently as possible.  The Curling Plaintiffs are prepared to proceed directly into discovery expeditiously and to quickly obtain the relief they seek for future elections in Georgia.  They cannot do this as long as they are hindered by the strategic decisions and delays of the Coalition Plaintiffs.  The Curling Plaintiffs respectfully request that this Court grant this motion as soon as possible so they can proceed with their claims in an efficient, expeditious, and orderly manner, without further undue delay and prejudice.

## **BACKGROUND**

On July 3, 2017, the Original Plaintiffs[1] filed suit in Fulton County Superior Court.  (Dkt. No. 1-2.)  After removal by the then-Defendants[2] in the case, the

---

[1] The original Plaintiffs in this case were Donna Curling, Coalition for Good Governance, Donna Price, Jeffrey Schoenberg, Laura Digges, William Digges III, and Ricardo Davis.

[2] The original Defendants in this case were Brian P. Kemp (individually and in his official capacity as Secretary of State of Georgia and Chair of the State Election Board); David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, and Seth Harp (individually and in their official capacities as members of the State Election Board); the State Election Board; Richard Barron (individually and in his official capacity as Director of the Fulton County Board of Registration and Election); Mary Carole Cooney, Vernetta Nuriddin, David J. Burge, Stan Matarazzo, and Aaron Johnson (individually and in their official capacities as members of the Fulton County Board of Registration and Elections); the Fulton County Board of Registration and Elections.  Defendant Mark Wingate

3

Original Plaintiffs[3] filed the SAC on September 15, 2017, which dropped claims contesting the results of the Ossoff-Handel Election.  (Dkt. No. 70.)  The parties completed briefing on the motions to dismiss the SAC as of October 31, 2017. (Dkt. No. 100.)

Unfortunately, on November 3, 2017, then-counsel for all the Original Plaintiffs—Steptoe & Johnson LLP ("Steptoe")—moved for permission to withdraw its representation of a single Plaintiff, the Coalition for Good Governance.  (Dkt. No. 104.)  Steptoe explained to the Court that "CGG's litigation strategy and goals conflict significantly with those of other plaintiffs…." (*Id.* ¶ 5.)  Unfortunately, this has not changed in the year since that filing.

---

(individually and in his official capacity as a member of the Fulton County Board of Registration and Elections) joined the case with the filing of the First Amended Complaint (Dkt. No. 15).  The following parties have since been terminated from the case: Maxine Daniels (individually and in her official capacity as Director of Voter Registrations and Elections for DeKalb County); Michael P. Coveny, Anthony Lewis, Leona Perry, Samuel E. Tillman, and Baoky N. Vu (individually and in their official capacities as members of the Dekalb County Board of Registrations and Elections); the Dekalb County Board of Registrations and Elections; Janine Eveler (individually and in her official capacity as Director of the Cobb County Board of Elections and Registration); Phil Daniell, Fred Aiken, Joe Pettit, Jessica Brooks, and Darryl O. Wilson (individually and in their official capacities as members of the Cobb County Board of Elections and Registration); the Cobb County Board of Elections and Registration); Merle King (individually and in his official capacity as Executive Director of the Center for Election Systems at Kennesaw State University); and the Center for Election Systems at Kennesaw State University.

[3] Plaintiff Edward Curtis Terry joined the case with the filing of the SAC and was terminated by the Court on March 20, 2018. (Dkt. No. 147.)

Candidly, it is unclear exactly what CGG's litigation strategy and goals are in this case.  It is clear, however, in the Curling Plaintiffs' considered and experienced judgment, that CGG's strategy and goals are not fully aligned with those that best serve Georgia voters and the ultimate, paramount goal of obtaining secure, transparent, verifiable elections in Georgia as soon as possible.  This is evident in the strategic delays CGG injected into this litigation during the last year, which ultimately led this Court to conclude that too little time remained to provide the Curling Plaintiffs and all other Georgia voters critical relief for this year's midterm elections.

In response to Steptoe's motion to withdraw just as to a single Plaintiff, CGG filed multiple motions seeking extensions of time in which to respond to Steptoe's motion along with *a stay of all proceedings*.  (Dkt. Nos. 109, 113, 115.) In other words, CGG—an out-of-state organization—sought to stay this litigation *in its entirety* merely because it was unable to work cooperatively with prior counsel and other Plaintiffs, thereby delaying critical relief for Georgia voters simply to serve its own ends.

On November 30, 2017, the Court concluded that CGG's response to Steptoe's motion was "improper" and "wholly unresponsive."  (Dkt. No. 117 at 2.) The Court found that "CGG does not appear to object to Steptoe withdrawing from

its representation of CGG, but instead, CGG argues that Steptoe should withdraw from representation of all remaining Plaintiffs as well." (*Id.* at 1-2.)  In other words, CGG sought to ***deprive all other Plaintiffs of their chosen counsel***—which was working *pro bono* and had the resources to move this case forward quickly for all remaining Plaintiffs to the benefit of all Georgia voters—merely because CGG could not work cooperatively with that counsel.  The Court permitted Steptoe to withdraw as to CGG alone, and the Court stayed and administratively closed the case until CGG could find new counsel. (*Id.* at 2-3.)  Thus, CGG achieved the very delay of this case that it sought, forcing all other Plaintiffs, along with all other Georgia voters, to wait for CGG to find new counsel before they could pursue critically important relief needed for secure elections in Georgia.

CGG, unfortunately, was not satisfied with that Order.  Because CGG "repeatedly objected to Steptoe's continued representation of any plaintiff in the case and refused to grant a waiver consenting to Steptoe's ongoing representation" of the remaining Plaintiffs, "on November 27, 2017, Steptoe provided all plaintiffs notice … of its intent to withdraw from the representation of all plaintiffs in the case." (Dkt. No. 128 ¶¶ 3-4.)  In other words, even after this Court ordered that Steptoe could continue to represent all other Plaintiffs, ***CGG insisted that Steptoe***

***withdraw entirely from the case***, thereby forcing all other Plaintiffs to seek new counsel.

Forced out of the case by CGG, Steptoe filed a motion to withdraw entirely from the case on January 12, 2018. (Dkt. No. 131.) The Curling Plaintiffs immediately filed objections to Steptoe's motion to withdraw, hoping to keep their counsel after months of unnecessary delay and distraction injected into the case by a single, out-of-state Plaintiff, CGG. (Dkt. No. 132.) The Curling Plaintiffs stated that they did not believe Steptoe's continued representation raised a conflict of interest, that they had been pleased with Steptoe's work, and that they doubted their ability to find other representation given the need for counsel with similar resources willing to take on the case *pro bono* (due to the substantial expense of this sort of case and the limited means available to the Curling Plaintiffs). (*Id.*)

The District Court saw "no clear indication of a substantive, actual conflict of interest." But because "CGG has objected to Steptoe's continued representation," the Court granted Steptoe's motion to withdraw on January 18, 2018. (Dkt. No. 135 at 3.) The Court directed each of the individual Plaintiffs to file a notice by February 22, 2018, indicating whether they intended to proceed *pro se*, with new counsel, or to dismiss their claims altogether. (*Id.*)

On February 22, 2018, the Curling Plaintiffs notified the Court that they were in the process of obtaining new counsel and requested an additional two weeks to finalize the engagement. (Dkt. No. 143.) The Court granted the Curling Plaintiffs an extension. (Dkt. No. 144.) On March 30, 2018, the Curling Plaintiffs notified the Court that they had obtained new counsel and requested that the Court convene a status conference at its earliest convenience. (Dkt. No. 150.)

On April 4, 2018, without the consent of the Curling Plaintiffs, the Coalition Plaintiffs needlessly moved to file the TAC. (Dkt. No. 160 at 3-4.) The Coalition Plaintiffs claimed that "[t]he SAC does not reflect the goals of Coalition Plaintiffs in this litigation." *Id.* at 4. The Curling Plaintiffs (and the State and Fulton County Defendants) opposed the Coalition Plaintiffs' motion to amend. (*See* Dkt. Nos. 166, 175, 179.) The Curling Plaintiffs objected to the "highly inefficient" amendment at that "late date" because it would "spark yet another round of motions to dismiss and the extraordinary expense and delay that [it] would inject into this case." (Dkt. No. 179 at 1-2.) ***And that is precisely what happened.*** Rather than proceeding directly with preliminary injunction briefing well in advance of this year's midterm elections, the case became mired in procedural delays for months dealing with the Coalition Plaintiffs' unnecessary amendments to the SAC. As the Curling Plaintiffs anticipated, in early July of 2018, the State

Defendants moved to dismiss the Coalition Plaintiffs' TAC and further delay ensued.  (Dkt. No. 234.)

The unnecessary nature of the Coalition Plaintiffs' amendments to the SAC is evident in their papers, filed at the Court's direction (Dkt. No. 189), purporting to identify "material allegations of the TAC" for which "the SAC does not contain any sufficiently comparable allegations."   (Dkt. No. 190 at 2.)   Nothing the Coalition Plaintiffs identified as somehow missing in the SAC was needed for this case to survive dismissal and proceed through discovery and to trial expeditiously. In fact, the Coalition Plaintiffs expressly conceded this.  (*Id.* at 2 n.1 ("Neither this Notice nor the TAC are intended to imply that the allegations of the SAC fail to state a claim for relief or are insufficient as a matter of law.").)  Thus, the months of delay involving the Coalition Plaintiffs' TAC—and the corresponding substantial prejudice to the Curling Plaintiffs and all other Georgia voters—were unnecessary, avoidable, and the product of decisions by the Coalition Plaintiffs that were at odds with the strategic goals of the Curling Plaintiffs and the best interests of Georgia voters.

In August, the Coalition Plaintiffs and the Curling Plaintiffs filed separate motions for preliminary injunction, seeking relief that overlapped in some respects (*e.g.*, paper ballots at the polls and post-election auditing) and that differed in other

respects.  (Dkt. Nos. 258, 260, 271, 281.)   The Court held an evidentiary hearing on September 12 on the Plaintiffs' Motions for Preliminary Injunction; during the same hearing, the Court heard argument from the parties on the issues of immunity, standing, *res judicata*, and collateral estoppel.  (Dkt. No. 298.)   The Curling Plaintiffs were forced to proceed with briefing and the hearing on their preliminary injunction motion without the benefit of discovery because CGG's inexplicable insistence on restarting the case with a new complaint and new dismissal briefing deprived the Curling Plaintiffs of the opportunity for discovery before needing to file their preliminary injunction motion.

On September 17, 2018, the District Court entered an Order denying Plaintiffs' Motions for Preliminary Injunction based on the limited time remaining before the November 2018 general election, and denying in part Defendants' Motions to Dismiss with respect to standing and immunity.  (Dkt. No. 309.)   In other words, despite finding "a host of serious security vulnerabilities permitted by [the current election system's] outdated software and system operations," this Court concluded that too little time remained to provide Georgia voters the relief needed to secure the election system against interference.  (*Id*. at 43-45.)

The timing of the filing of Plaintiffs' preliminary injunction motions was the direct result of the nearly year-long delays CGG needlessly injected into this case.

Additionally, the lack of discovery—due to the delays caused by CGG—greatly disadvantaged the Curling Plaintiffs in prosecuting their preliminary injunction motion.  In particular, the Curling Plaintiffs believe that discovery would have established—contrary to Defendants' arguments—the ability of the State and counties to implement paper ballots in lieu of DREs for the midterm elections this year without "chaos" or otherwise undermining the elections.

But without even limited, targeted discovery regarding the efforts involved in implementing paper ballots—which is already authorized by existing Georgia law and, as former Secretary of State Cathy Cox conceded, is the "fail safe" intended by the legislature when DREs cannot reliably be used—the Curling Plaintiffs were deprived of valuable evidence needed to respond to Defendants' claims and that undoubtedly would have revealed that the many, hard-working election officials across the great state of Georgia are far more capable than Secretary of State Kemp and the other Defendants gave them credit for in the proceedings before this Court.  In sum, the CGG deprived the Curling Plaintiffs and all other Georgia voters of the relief they were—and are—entitled to and that is necessary to secure their constitutional right to vote because of its own strategic judgments and self-serving efforts that delayed this case for many months.

In its September 17 Order, this Court observed:

> The Court understands some of the reasons why Plaintiffs may
> have been unable to file a preliminary injunction motion before
> new counsel for the Coalition Plaintiffs filed a Third Amended
> Complaint in June 2018.  But the *August* filing of their motion
> for preliminary injunction effectively put the squeeze on their
> proposed remedial relief.

(Dkt. No. 309 at 43) (emphasis in original).  The Court seems to suggest that the Curling Plaintiffs could have filed their own motion for preliminary injunction after the Coalition Plaintiffs filed the TAC on June 13, 2018.  This highlights the need for severance and the prejudice to the Curling Plaintiffs from remaining in the same case as the Coalition Plaintiffs.

Since all Plaintiffs were—and still are—in the same case in June 2018, and the case moved into new dismissal briefing without the Court entering a new scheduling order or addressing the schedule jointly proposed by all Plaintiffs on June 20, 2018 (Dkt. No. 229), the Curling Plaintiffs were under the impression that they were required to coordinate with the Coalition Plaintiffs on filing any motion(s) for preliminary injunction, which would have to await the close of the new dismissal briefing and possibly even a decision on the pending motions to dismiss.  In fact, the Curling Plaintiffs attempted to do exactly that, only to be surprised by the Coalition Plaintiffs' unilateral filing on August 3, which the Curling Plaintiffs learned about just before the close of business that day and only shortly before it was filed—despite the Curling Plaintiffs' attempt to coordinate a

mutual motion or simultaneous motions. Had the Curling Plaintiffs been in their own distinct case already, they eagerly would have filed their preliminary injunction motion as soon as possible after their new counsel first appeared in the spring of this year (and ideally after limited, expedited discovery[4]), well in advance of this year's midterm elections. This is exactly the sort of confusion, prejudice, and unfairness that have arisen and will continue to arise if the Curling Plaintiffs' claims are not severed from those of the Coalition Plaintiffs.

Other examples of strategic disagreements between the Coalition Plaintiffs and the Curling Plaintiffs abound. For instance, the Coalition Plaintiffs have long objected to the agreement reached between the Curling Plaintiffs and Defendants regarding the parameters of Defendants' preservation obligations in this case. During a May 10, 2018 hearing following a meeting between all parties, Plaintiffs

---

[4] The prejudice from the loss of an opportunity for any discovery regarding the Curling Plaintiffs' motion for preliminary injunction—due to the delays caused by the Coalition Plaintiffs—cannot be overstated. Indeed, the Curling Plaintiffs did not file their motion before the first week of August in part because of the hope that this Court would deny the pending motions to dismiss and allow for targeted, expedited discovery in June or July, despite the delays caused by the Coalition Plaintiffs. When it became clear in late July that this was unlikely and time was running out, the Curling Plaintiffs recognized the need to move for a preliminary injunction on the information available to them, which they did on August 7. The Curling Plaintiffs believe, however, that limited discovery would have revealed that Defendants' objections to paper ballots for this year's midterm elections were without merit and that their underlying allegations were as unreliable as those they offered in defense of the security of the DRE-based system.

agreed to provide Fulton, Dekalb, and Cobb counties with lists of the DREs that could be released from the litigation hold. (Dkt. No. 204 at 15 (following a description of the agreement, counsel for Coalition Plaintiffs acknowledged that "[Coalition Plaintiffs] had worked together with the Curling Plaintiffs to arrive at this process.") Plaintiffs agreed to accept certain information from Defendants in order to come up with these lists.

Within days of the parties' agreement, the Coalition Plaintiffs began to contend that they needed more information from Defendants than previously agreed or they could not provide lists of DREs that can be released from preservation. To date, to the Curling Plaintiffs' knowledge, the Coalition Plaintiffs have not provided lists to any of the three counties regarding DREs that can be released. It is unclear how they plan to proceed if Defendants have released machines on the lists provided by the Curling Plaintiffs—and the Curling Plaintiffs should not be forced to spend time and resources dealing with any such disagreement between Defendants and the Coalition Plaintiffs and any corresponding motion practice.[5]

---

[5] The Curling Plaintiffs provided lists to Cobb County and Dekalb County regarding DREs that can be released, but they are to date unable to do so for Fulton County. Fulton County has not yet provided all information listed in 2(a)-(d) of the May 17, 2018 Joint Status Report (Dkt. No. 210). As a result, the Curling Plaintiffs have not been able to determine a representative sample of DREs for

Additionally, on July 20, 2018, the Coalition Plaintiffs filed a Motion for Issuance of Subpoena.  (Dkt. No. 230.)  The Curling Plaintiffs did not join in that motion.  And CGG's Executive Director, Marilyn Marks, has even criticized the Curling Plaintiffs and mischaracterized their objectives and intentions in this litigation in comments to the media and others (the Curling Plaintiffs have had to address this serious issue with CGG's counsel on multiple occasions).

Most recently, the Coalition Plaintiffs have filed a Motion for Additional Injunctive Relief, in which the Curling Plaintiffs have not joined and do not plan to join.[6]  (Dkt. No. 327.)  The Curling Plaintiffs believe they and all other Georgia voters are best served by, as this Court previously observed, moving forward with discovery expeditiously to a full and fair hearing on the merits of their claims as soon as possible, to ensure that unnecessary delays do not once again deprive Georgia voters of critical relief needed for secure elections.  The Curling Plaintiffs

---

Fulton County.  Therefore, the Curling Plaintiffs expect that Fulton County has continued to preserve all DREs subject to its preservation duties.

[6] The Curling Plaintiffs do not oppose the Coalition Plaintiffs' Motion for Additional Injunctive Relief and take no position on the relief requested at this time, other than to note their own different strategic judgment that Georgia voters are best served *at this time* by this case moving forward expeditiously through discovery to a full and fair hearing on the merits as soon as possible.  The Curling Plaintiffs, of course, fully support any relief that can meaningfully enhance the security, transparency, reliability, and verifiability of the current election system in Georgia for the upcoming elections, which may include at least some of the relief the Coalition Plaintiffs are seeking in their Motion for Additional Injunctive Relief.

are prepared to devote all necessary time and resources to that important effort, without further distraction or delay.  It has become abundantly—and painfully—clear that severance is the only means by which the Curling Plaintiffs can do that.

## **ARGUMENT**

In opposing the Coalition Plaintiffs' Motion to Amend (Dkt. No. 166), the State Defendants themselves emphasized that severing the parties' claims into two actions was the only way to "safeguard both the Plaintiffs' respective rights and to ensure Defendants' right to a fair trial" in the event that the Coalition Plaintiffs were permitted to file the Third Amended Complaint.  (Dkt. No. 166 at 9 (citing Fed. R. Civ. P. 21).)[7]  The Court has since accepted the TAC (*see* Dkt. No. 225) and largely denied Defendants' motions to dismiss (*see* Dkt. No. 309), but compelling reasons to sever the case remain, as the State Defendants rightly observed.

In light of persistent differences in strategy between the two groups of Plaintiffs and the significant prejudice to the Curling Plaintiffs from these differences and the corresponding actions taken by the Coalition Plaintiffs, the Curling Plaintiffs agree with the State Defendants that severance is the only

---

[7] Counsel for the State Defendants and counsel for the Coalition Plaintiffs similarly alluded to the possibility of severance during the parties' May 1, 2018 status hearing.  (*See* Dkt. No. 186 at 13:24-15:1, 47:15-48:12.)

practical way to preserve the parties' respective rights.  In particular, severance is necessary to avoid penalizing the Curling Plaintiffs with continued delays to opening discovery while the Coalition Plaintiffs' unilateral requests are adjudicated.  Additionally, because the Curling Plaintiffs must respond to protect their own interests, motions and other actions by the Coalition Plaintiffs (such as regarding preservation, discovery, and preliminary relief) result in the Curling Plaintiffs expending significant time and resources they would otherwise be able to devote to their claims and obtaining critical relief for Georgia voters.

Under Rule 21, "[a] district court 'may sever any claim against any party.'" *Schwartz v. Dex Media, Inc.*, No. 2:18-cv-105-FtM-38CM, 2018 WL 2094962, at *2 (M.D. Fla. May 7, 2018) (citing Fed. R. Civ. P. 21)).  Rule 21 gives a district court "broad discretion" in determining whether to sever claims, and the court "may consider factors such as judicial economy, case management, prejudice to parties, and fundamental fairness." *Id.* (quoting *Potts v. B & R, LLC*, No. 8:13-cv-2896-T-27TGW, 2014 WL 1612364, at *3 (M.D. Fla. Apr. 21, 2014)).

There is simply no good reason for the Curling Plaintiffs claims to remain in the same case as those of the Coalition Plaintiffs.  The two groups are now operating with distinct counsel under distinct and materially different complaints, with distinct filings reflecting overlapping yet divergent theories and strategies

17

about how best to secure the constitutional right to vote in Georgia elections. *See Essex Ins. Co. v. Kart Constr., Inc.*, No. 8:14-cv-356-T-23TGW, 2015 WL 628782, at *7 (M.D. Fla. Feb. 12, 2015) (severing crossclaim and counterclaim where proceeding with both in main case would "unnecessarily lengthen and complicate the litigation . . . subjecting Essex to unwarranted delay and expense"). It is unfair to require the Curling Plaintiffs to continue to deal with issues the Coalition Plaintiffs inject into the case that the Curling Plaintiffs would, in their own judgment, resolve quickly or avoid entirely, such as involving preservation, discovery, and the relief needed. This is especially true given the unusual difficulty of working with CGG, even for those who should be aligned.

Although both the Coalition Plaintiffs and the Curling Plaintiffs are pursuing similar claims, "severance is not precluded because the claims have facts in common." *Id.* at *6. The mere fact that both sets of Plaintiffs challenge the constitutionality of the use of DREs does not prevent this Court from severing the two complaints. *See id.* Aside from the common underlying issues, the parties' theories and specific allegations under the two complaints are substantially different in significant respects and allow for a natural division into separate cases. The Coalition Plaintiffs themselves underscored these differences in their filings related to the proposed TAC and the preliminary injunction proceedings.

18

In their Notice Identifying Paragraphs of Proposed Third Amended Complaint with Material Allegations (Dkt. No. 190), the Coalition Plaintiffs identified numerous allegations from the TAC that would not apply to the Curling Plaintiffs yet would require substantial discovery. For example, in Paragraphs 129 through 135, the Coalition Plaintiffs describe the purported actions of certain Fulton Board of Election members to block the Coalition's members from observing polling places. (*See* Dkt. No. 190 at 12.) These allegations have no relevance to the Curling Plaintiffs' claims and will require distinct discovery and briefing that will consume time and resources the Curling Plaintiffs otherwise would not need to spend.

The Curling Plaintiffs are eager to obtain relief for all Georgia voters as quickly as possible—and this potentially could involve settlement with Defendants whereby they agree to adopt a new, secure election system across the state along with reasonable measures needed to ensure that election results reflect the will of Georgia voters. To be clear, the Curling Plaintiffs would not settle for anything less than necessary measures that ensure security, transparency, reliability, and verifiability for voters across the great state of Georgia. But with the dispute over the timing of such relief no longer at the forefront of the litigation as it was regarding this year's midterm elections, perhaps agreement upon a resolution that

meets these requirements could be reached between reasonable decision-makers on both sides of this case. Any such settlement will be stymied, however, if the Curling Plaintiffs remain in the same case as the Coalition Plaintiffs, given the different objectives and strategies between the two groups and the unusual difficulty of dealing with CGG. And of course, if settlement proves impossible, the Curling Plaintiffs should not be prejudiced in their expeditious pursuit of relief by delays from the Coalition Plaintiffs, who are entitled to prosecute their own claims as they see fit (in their own case).

## CONCLUSION

Severing the two complaints into two cases will prevent undue prejudice to any party and will prevent further unnecessary delay and harm to the Curling Plaintiffs (and Georgia voters at large). Assuming the Court denies Defendants' request for a stay, the Curling Plaintiffs are prepared to begin discovery now and work toward the resolution of their claims against the remaining Defendants expeditiously. Meanwhile, the Coalition Plaintiffs can proceed under the TAC in a separate case, where they are free to file whatever motions and requests for relief they deem appropriate in their own judgment. In order to minimize duplication and any burden on Defendants, the Curling Plaintiffs will make reasonable efforts

to conduct mutual discovery with the Coalition Plaintiffs where feasible while moving forward with their own case quickly and efficiently.

For the reasons stated, the Curling Plaintiffs respectfully request that that the claims set forth in the SAC be severed from the claims set forth in the Coalition Plaintiffs' TAC and that the TAC be assigned as a new case.

Dated: October 8, 2018                    Respectfully submitted,

                                           /s/ David D. Cross
                                          David D. Cross (*pro hac vice*)
                                          John P. Carlin (*pro hac vice*)
                                          Catherine L. Chapple (*pro hac vice*)
                                          Jane P. Bentrott (*pro hac vice*)
                                          Robert W. Manoso (*pro hac vice*)
                                          MORRISON & FOERSTER LLP
                                          2000 Pennsylvania Avenue, NW
                                          Suite 6000
                                          Washington, DC 20006
                                          Telephone: (202) 887-1500
                                          DCross@mofo.com
                                          JCarlin@mofo.com
                                          CChapple@mofo.com
                                          JBentrott@mofo.com
                                          RManoso@mofo.com

                                          Halsey G. Knapp, Jr.
                                          GA Bar No. 425320
                                          Adam M. Sparks
                                          GA Bar No. 341578
                                          KREVOLIN & HORST, LLC
                                          1201 West Peachtree Street, NW
                                          Suite 3250
                                          Atlanta, GA 30309
                                          HKnapp@khlawfirm.com

21

Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling,*
*Donna Price & Jeffrey Schoenberg*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRIAN KEMP, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has

been prepared in accordance with the font type and margin requirements of LR 5.1,

using font type of Times New Roman and a point size of 14.

<u>  /s/ David D. Cross</u>
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRIAN KEMP, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2018, a copy of the foregoing CURLING

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR

SEVERANCE was electronically filed with the Clerk of Court using the CM/ECF

system, which will automatically send notification of such filing to all attorneys of

record.

　/s/ David D. Cross
David D. Cross