# EXHIBIT 1

**Subject:** Fwd: Your county board's duty to protect the November election

Sent from my iPad

Begin forwarded message:

> **From:** Marilyn Marks and Coalition for Good Governance <marilyn@uscgg.org>
> **Date:** October 8, 2018 at 2:49:42 PM EDT
> **To:**
> **Subject: Your county board's duty to protect the November election**
> **Reply-To:** marilyn@uscgg.org

October 8, 2018

County Commissioners and Members of County Boards of Elections:

Your decision is urgently needed to adopt paper ballots for November 6 to protect the constitutional rights of your county's voters. Providing paper ballots at the polls on Election Day is both feasible and necessary.

As a county board, you have the--
--statutory authority to do so;
--duty to obey the Constitution to do so;
--responsibility to follow the advice of the federal court and the nation's political leaders and scientists;
--tools to make a smooth transition to paper ballots for Election Day; and
--obligation to avoid inviting post-election lawsuits from voters and/or losing candidates.

In the vast majority of Georgia counties, this means that both early voting and Election Day voting should be conducted with paper ballots to protect voters' **constitutional rights** and election security. It is certainly not too late to do so. If early voting cannot be changed by next week to require paper ballots, at a minimum, Election Day should be conducted with all paper ballots.

I trust that your board has studied Judge Totenberg's September 17 Order finding that DRE voting has "shown the threat of real harms" to voters' **constitutional interests**, but that "an instant grant of the paper ballot relief requested could just as readily jeopardize the upcoming elections, voter turnout, and the orderly administration of the election." Fulton and a few other large counties created a tension between two sets of constitutional voting rights

1

when they argued that paper ballot management in early voting centers would be so complex that their officials would shut down most early voting centers, claiming that poll workers could not be trained quickly enough to accurately issue paper ballots instead of voter access cards. Fulton's inability to manage a large number of ballot styles for paper ballots in **early voting** is simply **not applicable to the vast majority of counties** with limited ballot styles and early voting locations. In short, in the wake of the Court's findings and admonitions, **virtually every county should be promptly adopting paper ballots on Election Day, and most should be doing so for early voting.**

Judge Totenberg went on to say, "the Court advises the Defendants that further delay is not tolerable in their confronting and tackling the challenges before the State's election balloting system. The State's posture in this litigation – and some of the testimony and evidence presented – indicated that the Defendants and State election officials had buried their heads in the sand," and further "A wound or reasonably threatened wound to the integrity of a state's election system carries **grave consequences** beyond the results in any specific election, as it pierces citizens' confidence in the electoral system and the value of voting." It is the responsibility of the county boards to avoid these coming "grave consequences."

The Court ruled that Secretary Kemp had misinterpreted the law when he claimed that DREs are required in Georgia. The Order stated, "But O.C.G.A. § 21-2-383(b) does not *require* the use of DREs as Defendants claim it does." As we have noted in our prior correspondence to you, county boards (County Commissioners and/or Board of Elections) have the authority to adopt paper ballots for their counties. Secretary Kemp's misinformation is no longer a barrier to doing so. In fact, given the Court's view of the constitutional requirements, it is the local officials' duty to adopt paper ballots to protect voters' constitutional rights. The counties should simply incur the administrative inconvenience, if any, to honor voters' rights.

On September 6, the National Academy of Sciences issued its report on election security stating "***Every effort*** should be made to use human-readable paper ballots in the **2018 federal election**." The NAS committee, which included many of the nation's leading experts in voting systems, worked on this report for approximately two years. They fully understand the inherent weaknesses in the Diebold DRE system that cannot be remedied and simply can no longer be tolerated. The committee also made the point that paper ballot elections counted by optical scanners should be audited. County election officials simply do not have the technical expertise or resources to substitute their judgment for that of nationally respected voting system computer scientists and experts. Despite what you may have been told, there are no mitigating controls possible to make Georgia's DREs secure.

Secretary Kemp and the State Election Board abandoned any serious attempt to defend the DRE voting system as secure in the lawsuit and merely fought

against near-term changes for securing the election. Secretary Kemp has repeatedly agreed that a verifiable paper trail is needed.

County Commissioners and Boards of Elections should consider the following facts as they evaluate this urgent and imperative decision to secure the November election:

1. The Court found that Georgia's DRE voting system poses a threat of real harm to voters' constitutional voting rights. Obviously, county boards must attempt to make **every effort** to avoid infringing on voters' constitutional rights and not wait to be forced by a court to do so.

2. Voters have been paying attention and understand that there is little reason to have confidence in the vulnerable DRE voting system that cannot be audited. Paper ballot adoption, well within your control, is the key to restoring voter confidence.

3. The risk of whether malicious actors have or will compromise your specific county's voting system or the state's system cannot be determined. The only safe and logical thing to do is to adopt paper ballots as soon as possible – for Election Day at a minimum.

4. The voters' constitutional rights impacted by voting on un-auditable DREs trump all other considerations of administrative inconvenience and any local officials' belief that their county is not at risk.

5. The candidates and their supporters now have vastly greater knowledge and warnings of the constitutional violations, the failures of the system, and the documented, yet unaddressed security breaches. Continuing to use DREs without "making every effort" to adopt paper ballots in your county invites post-election lawsuits by voters, campaigns, and losing candidates. How will the county election board answer post-election legal challenges that they did not take reasonable and necessary steps to protect their voters' constitutional rights and obtain a secure, verifiable election outcome?

6. A county's risk cannot be easily evaluated on a county-by-county basis. The DREs, optical scanners, and GEMS servers are programmed centrally at the SOS office, and any malware can be undetectably carried to and thus infect any county. If your county officials tell you that the county's system is secure, we urge you to confer with voting systems scientists. There are no experts we know of who would assert that a paperless DRE system can be secured.

7. It takes just a few seconds' access to only a single DRE in the polling places (or even in pre-election storage) to infect an entire county's tabulation system. No county can be assured that the machines are under strict control every minute.

8. Georgia's testing protocol used on the DREs cannot detect the most insidious and dangerous malware or certain types of programming errors or

mechanical failures. When your election officials tell you that their tests assure accuracy and they have not found problems, it is important to understand that the tests are not designed to detect hacking and sophisticated malware. Georgia does not have any magic tests or security as some would have you believe.

9. Our country's leaders including President Trump, President Carter, National Academy of Sciences, DHS, Senate Intelligence Committee, and numerous other congressional committees have stated that paperless **DREs should not be used.** Their warnings are being ignored to Georgia voters' detriment, although Georgia has a readily available alternative – paper ballots and current optical scanners.

10. There is still adequate time to print enough ballots for Election Day and at least most of early voting, although there will be some initial inconvenience to the officials. Inconvenience should not be a consideration in protecting **voters' constitutional rights.**

11. Compared to prior years, mail ballot voting is already increasing sharply. Because the technology and processing details are not foreign to county officials, paper ballots in the polling place are quite doable.

12. Mail ballots can cause their own set of problems but constitute the "least worst" alternative to voting on DREs. Suggesting mail ballots as the alternative for those who want an auditable ballot is wholly insufficient. Mail ballots are at risk of rejection for technicalities with no ability of the voter to cure the problem and have the ballot counted. In Georgia, mail ballots must be voted in advance and cannot be voted on Election Day nor in the neighborhood polling place. Further, using DREs at all compromises the quality of the election, so such use should obviously be minimized.

Last week, Coalition for Good Governance filed a <u>Motion for Additional Injunctive Relief</u> seeking a court order for certain security measures for November and future elections. We urge you to voluntarily undertake these basic steps immediately to improve election security without requiring the Court to intervene.

We are happy to answer any questions or put you in touch with nonprofit organizations that can help with election security procedures.

Thank you for your service to Georgia voters.

Marilyn Marks
Executive Director
Coalition for Good Governance
(704) 292 9802
Marilyn@USCGG.org
www.CoalitionForGoodGoverance.org

Coalition for Good Governance | 7035 Marching Duck Dr. E504, Charlotte, NC 28210

Unsubscribe mayor@berkeley-lake.com

Update Profile | About our service provider

Sent by marilyn@uscgg.org in collaboration with



Try it free today

5