Civil Action File No: 1:17-CV-02989-AT

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

---

DONNA CURLING, et al.,
*Plaintiffs,*

v.

BRIAN KEMP, et al.,
*Defendants.*

---

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY

---

**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan,*
*Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

## <u>CASES</u>

*Baker v. Carr,*
    369 U.S. 186 (1962)......................................................................- 3 -

*Boglin v. Board of Trustees of Alabama Agricultural & Mechanical University,*
    290 F.Supp.3d 1257 (N.D. Ala. 2018).............................................- 9 -

*Bonas v. Town of N. Smithfield,*
    265 F.3d 69 (1st Cir. 2001)...........................................................- 3 -

*Cassady v. Hall,*
    892 F.3d 1150 (11th Cir. 2018) ....................................................- 8 -

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).....................................................................- 2 -

*Dillard v. Baldwin County Comm'rs,*
    *(Baldwin III),* 225 F.3d 1271 (11th Cir.2000) .................................- 5 -

*Dillard v. Chilton Cty. Com'n,*
    495 F.3d 1324 (11th Cir. 2007) .............................................- 5 -, - 6 -

*Duncan v. Poythress,*
    657 F.2d 691 (5th Cir. 1981) ........................................................- 4 -

*Fed. Election Comm'n v. Akins,*
    524 U.S. 11 (1998)...............................................................- 4 -, - 5 -

*Georgia Republican Party v. Sec. & Exch. Comm'n,*
    888 F.3d 1198 (11th Cir. 2018) ....................................................- 2 -

*Griffin v. Burns*,
  570 F.2d 1065 (1st Cir. 1978)............................................................- 3 -

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)..........................................................................- 6 -

*Laird v. Tatum*,
  408 U.S. 1 (1972)..............................................................................- 4 -

*Lance v. Coffman*,
  549 U.S. 437, 127 S.Ct. 1194 (2007).......................................- 4 -, - 5 -

*Lujan v. Defenders of Wildlife*,
  504 U.S 555, 573–74 (1992)..............................................................- 4 -

*Miccosukee Tribe of Indians of Florida v. Florida Athletic Com'n*,
  226 F.3d 1226 (11th Cir. 2000) .........................................................- 12 -

*Papasan v. Allain*,
  478 U.S. 265 (1986)..........................................................................- 14 -

*Scott v. Taylor*,
  405 F.3d 1251 (11th Cir. 2005) ...............................................- 6 -, - 8 -

*Stein v. Cortes*,
  223 F.Supp.3d 423 (E.D. Pa. 2016).................................................- 2 -

*Summit Medical Assocs., P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999) .................................... - 1 -, - 8 -, - 9 -

*U.S. v. Hays*,
  515 U.S. 737 (1995)..........................................................................- 3 -

*United States v. Saylor*,
  322 U.S. 385 (1944)..........................................................................- 4 -

*Weber v. Shelley*,

   347 F.3d 1101 (9th Cir. 2003) .......................................................- 7 -

*Wexler v. Anderson*,

   452 F.3d 1226 (11th Cir. 2006) ...................................................- 14 -

*Whitmore v. Arkansas*,

   495 U.S. 149 (1990)......................................................................- 12 -

*Women's Emergency Network v. Bush*,

   323 F.3d 937 (11th Cir. 2003) .......................................................- 9 -

*Woods v. Gamel*,

   132 F.3d 1417 (11th Cir. 1998) .............................................. - 1 -, - 7 -

## **STATUTES**

O.C.G.A. § 21-2-300............................................................ - 11 -, - 12 -

## ARGUMENT AND CITATION OF AUTHORITY

The parties agree non-frivolous immunities under the Eleventh Amendment and legislative immunity are directly appealable as of right and warrant a stay. *Woods v. Gamel*, 132 F.3d 1417 (11th Cir. 1998) (legislative immunity) *Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999) (Eleventh Amendment immunity). Where the parties diverge is whether the State Defendants' appeal presents colorable issues of standing, immunity under the Eleventh Amendment, and absolute legislative immunity.    There is also disagreement on whether the prerequisites of constitutional standing are so enmeshed with either (or both) of the two immunity doctrines that pendent appellate jurisdiction would be within the appellate court's discretionary purview. For the reasons argued in the State Defendants' opening memo and expounded below, Plaintiffs' arguments that a stay must be denied because these appellate issues are entirely frivolous is riddled with holes.  A stay is proper and justified.

A.    STANDING PROBLEMS SPILLOVER TO THE OTHER IMMUNITY DOCTRINES.

The contested standing issue is so important because Plaintiffs' inability to establish an injury in fact is intertwined with the absence of a "violation" of a federal law for purposes of *Young'*s exception.  On standing, the Plaintiffs' do not mention—much less distinguish—binding precedent that regards as insufficient

mere "allegations of possible future injury." *Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203 (11th Cir. 2018), following *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Plaintiffs' lamely try to distinguish the Supreme Court's seminal recent decision in *Clapper* by pretending as if their case is not exactly the same kind of case based on "speculation" about possible future harm. Doc. 323 at 25. But Plaintiffs cannot escape what is printed in their Complaints, the gravamen of which centers on "presumptions" of "vulnerability" causing fears that require "assurance."  Absent from this case is any plausible allegation of an uncounted vote that has actually happened anywhere in Georgia, much less to the Plaintiffs' personally.

Plaintiffs conspicuously avoid the only post-*Clapper* case regarding a constitutional challenge to DRE voting machines, where a federal court ruled that "allegations that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, *simply do not constitute injury-in-fact*." *Stein v. Cortes*, 223 F.Supp.3d 423, 432 (E.D. Pa. 2016) (emphasis supplied) (failure to allege vote was inaccurately recorded by DRE meant plaintiffs lacked standing).

Plaintiffs seem to presume federal courts have the authority to review legislative acts merely because they are allegedly unconstitutional. "A federal court cannot pronounce any statute, either of a State or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies." *Baker v. Carr,* 369 U.S. 186, 204 (1962) (internal marks omitted); *see also id.* at 206 (holding that only those "voters who allege facts showing disadvantage to themselves as individuals have standing to sue"). Courts are limited to considering the constitutionality of a legislative act only when it is said to result in or threaten a direct injury to the party challenging the act.

"Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." *Bonas v. Town of N. Smithfield,* 265 F.3d 69, 74 (1st Cir. 2001). Voters can challenge a state election procedure in federal court only in *limited circumstances*, such as when the complained of conduct discriminates against a discrete group of voters, *see, e.g., U.S. v. Hays,* 515 U.S. 737, 744–45 (1995); *Griffin v. Burns,* 570 F.2d 1065, 1074 (1st Cir. 1978) (absentee voters whose votes were not counted challenging post-election decision not to count absentee votes); when election officials refuse to hold an election though required by state law, resulting in a

complete disenfranchisement, *see Duncan v. Poythress,* 657 F.2d 691, 693 (5th Cir. 1981); or when the willful and illegal conduct of election officials results in fraudulently obtained or fundamentally unfair voting results, *see United States v. Saylor,* 322 U.S. 385, 388–89 (1944) (fraudulent ballot stuffing).

The Plaintiffs' apprehension that, sometime in the future, their vote might be lost to malicious hacking cannot elevate to justiciability their demand for "assurance" their votes actually will be counted.  Nor can this "substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972).  The Supreme Court has "'consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Lance v. Coffman,* 549 U.S. 437, 127 S.Ct. 1194, 1196 (2007), quoting *Lujan v. Defenders Wildlife,* 504 U.S. 55, at 573–74 (1992).  "[W]here large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance." *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 23 (1998).

In *Lance,* four Colorado voters sued in federal court, alleging that a provision of the Colorado Constitution permitting congressional redistricting only once per census violated their Elections Clause right to have their elected representatives set their congressional district boundaries.  The Supreme Court held that the voters lacked standing to challenge application of the Colorado Constitution because their only injury, "that the law—specifically the Elections Clause—ha[d] not been followed," alleged only a generalized grievance. *Id.* at 1198. The Court found the voters' claim to be "quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where [it had] found standing." *Id.*

Both Plaintiff-Factions ignore the Eleventh Circuit's holding that it simply is not enough for a plaintiff to claim "an asserted interest in being free of an allegedly illegal electoral system." *Dillard v. Chilton Cty. Com'n*, 495 F.3d 1324, 1333 (11th Cir. 2007).  *Dillard* matters here because the Eleventh Circuit recognized that *Lance* abrogated its prior precedent on voter standing. *Id.* at 1331 (discussing *Dillard v. Baldwin County Comm'rs (Baldwin III),* 225 F.3d 1271, 1277 (11th Cir.2000)). The Eleventh Circuit realized that *Lance* changed its analysis, requiring a differentiation between plaintiffs "who alleged concrete and personalized injuries in the form of denials of equal treatment or of vote dilution, and plaintiffs like

those in the instant case, ... who merely seek to protect an asserted interest in being free of an allegedly illegal electoral system." *Dillard,* 495 F.3d at 1333.

Here, Plaintiffs have deputized themselves not as protectors of their right to vote, but of a heretofore unrecognized constitutional right to be free from *fears* of inadequate election administration regarding cybersecurity. Correlatively, Plaintiffs' injunctive relief would no more directly or tangibly benefit them personally than it would the public at large. As the Supreme Court has repeatedly held, "such a 'generalized grievance'—no matter how sincere—is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013). Furthermore, as argued *infra*, the non-existence of a constitutional right to be free of fear of malicious hacking connects to why Plaintiffs' attempts to show an ongoing and continuous violation for *Young*'s exception are doomed.

Plaintiffs' standing problems bleed over into all aspects of the appeal. *See, e.g., Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, J., concurring) (analyzing injury in fact and redressability concerns for standing alongside legislative immunity). Judge Jordan's concurrence would have decided *Scott* first on standing grounds, thereby avoiding altogether the question of legislative immunity. *Scott*'s example illustrates how analysis of immunity can intersect, and becomes intertwined with, constitutional standing.

Here, the Secretary of State made a politically neutral, and non-discriminatory choice to reexamine and *re-certify* Georgia's DRE voting machines for use in elections.  The Secretary expressed his opinion at the instigation of the Plaintiffs, who formerly demanded reexamination as a remedy but have now shifted to calling it a "violation."  Discussing the certification of DREs in California, the Ninth Circuit pronounced that "[n]othing in the constitution forbids this choice." *Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003); *see also id.* ("it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems").  Plaintiffs' flailing attempts to prove cognizable harm sprawl across multiple legal and immunity doctrines, defying neat compartmentalization.

B.     LEGISLATIVE IMMUNITY.

Plaintiffs contend legislative immunity is irrelevant because they "have sued no legislators and challenge no legislative acts." Doc. 323 at 18.  But, as the Eleventh Circuit has made clear, legislative immunity looks not to titles, but to the capacity in which a state official is acting.  *Woods v. Gamel*, 132 F.3d at 1419 ("[i]t is the nature of the act, and not the position of the actor, which determines when absolute legislative immunity will apply.")

What the Plaintiffs want is a broad-scale investigation, conducted by themselves as private parties, to probe Georgia's elections system, with the district

court determining the extent to which Georgia's elections system is "adequate" to defend against cyber-intrusion.  Absent standing and/or a truly ongoing/continuous violation, this is not the role of the federal judiciary.   In terms of legislative immunity, ordering legislators to "fix it" by injunctive command requiring future votes and legislative rulemaking is forbidden. *Scott v. Taylor*, *supra*.

C.    ELEVENTH AMENDMENT IMMUNITY AND *YOUNG*'S EXCEPTION.

The Curling Plaintiffs insist that because they "narrowed their claims" (Doc. 323 at 10), to only prospective relief (not damages), any Eleventh Amendment immunity is foreclosed and, thus, frivolous.  But artful pleading is not conclusive. Eleventh Amendment immunity looks beyond "formalistic reading" and penetrates to "the essential nature and effect of the proceeding." *Cassady v. Hall*, 892 F.3d 1150, 1153 (11th Cir. 2018) (Eleventh Amendment barred suit).  It is the substance of a case that matters, not tinsel or wrapping used to disguise it.

By confusing "imminence" with "enforcement," the Coalition Plaintiffs exaggerate the Eleventh Circuit's opinion in *Summit* regarding the imminence of enforcement proceedings for purposes of *Young*'s exception. *Compare* Doc. 323 at 12 *with Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999). Admittedly, the Court rejected a strict "imminent" requirement because of reviewability concerns created by *Younger* abstention (180 F.3d at 1338), and

because it was "unable to understand how, as a practical matter, a potential plaintiff will ever be able to predict when prosecution is 'imminent.'" *Id*. at 1339. The *Summit* Court's decision on an "imminence" requirement, however, did not subtract from *Young*'s enforcement requirement, which was unquestionably palpable in that case. *See, id*. at 1339 ("Although Appellants have not yet initiated [criminal] prosecution, nor have they specifically threatened Appellees with prosecution, Appellants *do intend to prosecute violators of both statutes*. . . .") (emphasis supplied).  If the "enforcement" requirement did not remain vital after *Summit* in 1999, why would the Eleventh Circuit continue conditioning *Young*'s exception upon it? *See, e.g., Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) (refusing to apply *Young*'s exception to Eleventh Amendment immunity "[w]here the enforcement of a statute is the responsibility of parties other than" the defendant officer).  Plaintiffs mistakenly read *Summit* as throwing out the baby with the bath-water. *See also, e.g*., *Boglin v. Board of Trustees of Alabama Agricultural & Mechanical University*, 290 F.Supp.3d 1257, 1265 (N.D. Ala. 2018) (citing *Summit* as holding *Young* exception only applies where state officer in official capacity "has the authority to enforce an unconstitutional act").  This Court should not make the Plaintiffs' mistake.

Trying to untangle standing from various components of the *Young* exception and Eleventh Amendment immunity, Plaintiffs make an unpersuasive argument on pendent appellate jurisdiction.   In reality, overlapping conceptual problems spillover from standing into *Young*'s prerequisites.   The redressability problems infecting Plaintiffs' case—e.g. that the Secretary of State and State Election Board can be proxies for changing how elections are administered at the county level— relate to judicial consideration under *Young* as to whether the State Defendants are "enforcing" an unconstitutional statute against these particular Plaintiffs.

Because of the peculiar remedial theories in Plaintiffs' case, standing is enmeshed in legislative immunity.   Plaintiffs seek to use mandatory injunctions essentially to compel legislative reform of the state's cybersecurity practices.   This has little to do with statutes requiring uniform deployment of DREs as a matter of state policy and administrative cohesion.   Instead, Plaintiffs' theory leverages an retrospective and false narrative of what happened regarding a server at Kennesaw State University as a point of departure for a top-to-bottom uprooting of the statutory underpinnings of Georgia's elections system.

Plaintiffs insist that their case does not offend *Young*'s prohibition on retrospective relief.   But the errant posting of data to a public-facing server in 2017 is the cudgel Plaintiffs constantly use to distinguish their case from the ranks of

DRE challenge-lawsuits that have been uniformly unsuccessful across the country. The reality is this case is a fight over the truth of what really happened in the past at KSU, a historical fact that holds little current import because of administrative changes implemented since 2017. Plaintiffs' posturing that their declaratory relief is not backward looking is, therefore, borderline disingenuous.

The Coalition Plaintiffs frame SEB Rule 183-1-12 as being "enforced" against them by the State Defendants so as to trigger *Young*'s exception. This argument misfires for multiple reasons. First, the SEB Rule is not, and has not created, an enforcement action directed at any individual Plaintiff. Second, it affixes no penalties or sanction against any Plaintiff, none of whom can show a concrete or particularized harm to their personal rights on account of it.

Being addressed to county elections officials, the SEB's Rule reflects a statutory requirement of the General Assembly (contingent upon an appropriation that occurred in 2001), for uniformity of election equipment statewide. *See* O.C.G.A. § 21-2-300 ("Provided that the General Assembly specifically appropriates funding to the Secretary of State to implement this subsection, the equipment used for casting and counting votes in county, state, and federal elections shall, by the July, 2004, primary election and afterwards, ***be the same in each county in this state*** and shall be provided ***to each county*** by the state, as

determined by the Secretary of State).  Of course, Plaintiffs have no constitutional right to prevent counties (or the State) from favoring uniformly-deployed election equipment.  It strains the imagination to portray the SEB's Rule mirroring Section 21-2-300's codification of uniform election equipment as an "enforcement" against the Plaintiffs in violation of their personal constitutional rights.

Equally wrong is the Coalition Plaintiffs' argument it is frivolous to dispute whether they have alleged the "ongoing and continuing violation" required for *Young*'s exception.  This argument hinges on the dubious assertion Plaintiffs are constitutionally entitled to "assurance" that their vote has been accurately recorded (Doc. 323 at 13), even in a case where their Complaint concedes that, when operating correctly, DREs record voters' choices accurately. Doc. 226 at ¶ 71.

Nor is it permissible for Plaintiffs (or the Court) to use trumped up or erroneous characterizations of hearing testimony to circumvent threshold jurisdictional requirements.  "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient complaints of standing." *Miccosukee Tribe of Indians of Florida v. Florida Athletic Com'n*, 226 F.3d 1226, 1230 (11th Cir. 2000) citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  For the same reason that Plaintiffs' subjective fears of future harm cannot show constitutional

standing, their subjective demands for "assurances" of their fears of future harm cannot establish a "violation" for purposes of *Young*'s exception.

While well-pled allegations must be accepted as true, implausible ones can neither state a valid claim, nor defeat immunity under the Eleventh Amendment. For the same reason that Plaintiffs are forbidden from "presuming" a risk of future harm, Plaintiffs should not be allowed to presume their way past *Young*'s requirement of an "ongoing and continuous violation."   Nor is it persuasive to pretend the redressability concerns this case presents under Article III are irrelevant to issues of enforcement under *Young*.

Harm, injury, violation, and redressability can overlap conceptually.   The supposed "ongoing and continuous violation" that is inextricably intertwined with standing concerns Plaintiffs' generalized grievance that State Defendants "ha[ve] taken no action to mandate the use of paper ballots to protect Georgia's elections." Doc. 226 at ¶ 15 (emphasis supplied).   But this is where Plaintiffs' argument falls apart.   Plaintiffs concede that "fundamentally, Curling Plaintiffs do not challenge the *enactment* of any law." Doc. 323 at 18 (original emphasis retained); *see also* Doc. 323 at 19 ("the alleged *violation* consists of administrative enforcement acts, not legislative acts") (original emphasis retained).   Plaintiffs' concessions on this

point matter because they corroborate the State Defendants' argument that the useful "fiction" of *Young* is irrelevant to the novel theory of Plaintiffs' case.

"*Young* has been focused on cases in which a violation of federal law" because its primary rationale is rooted in "vindicat[ing] the federal interest in assuring the supremacy of that law." *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986); *Id*. at 277 ("*Young* applies *only where the underlying authorization* upon which the named official acts *is asserted to be illegal*.") (emphasis supplied) (citation omitted). Without a *bona fide* conflict between federal and state law, *Young*'s imperative to vindicate federal supremacy is null.

In truth, there is no federal requirement mandating the use of paper ballots. Were such a federal right in existence, at least an arguable case could be made for *Young*'s deployment so as to vindicate the superiority of a federal law.   But without such a federal mandate, Plaintiffs' circular reasoning confounds the bedrock principle—mentioned in almost every (uniformly unsuccessful) DRE challenge in the United States—that neutral and non-discriminatory regulation of elections is not only a state prerogative, but an *absolute necessity* in order for organized elections to occur. *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006) ("[S]tates are entitled to burden that right [to vote] to ensure that elections are fair, honest and efficient.").

Contrary to Plaintiffs' mischaracterization, the State Defendants are not suggesting "every offense to the dignity of a State constitutes a denial of sovereign immunity." Doc. 323 at 16.  Nonetheless, Plaintiffs are too dismissive of the injury to a State's sovereignty when a federal court presumes to control a State officer's discretion. *See* Doc. 320-1 at 23 (citing *Lathrop* and *Holcombe*).  *Young* has never been interpreted as an excuse for private litigants to superintend the administrative reins of state government whenever they—or a federal court—think the job performance of state officials is not "up to snuff."  Allowing private plaintiffs to use federal courts to override discretionary opinions not in direct violation of a federal law presents a meritorious legal question about state sovereignty and federalism.  Plaintiffs cannot wish away the State Defendants' arguments.  These issues have legal support and merit this Court entering a stay pending appeal.

Respectfully submitted, this 10th day of October, 2018.

**BARNES LAW GROUP, LLC**

*/s/John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

## CERTIFICATE OF COMPLIANCE

I hereby certify that I have read the Court's Standing Order in Cases Proceedings Before the Honorable Amy Totenberg and that I will comply with its provisions during the pendency of this litigation.

*/s/John F. Salter*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/John F. Salter*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have electronically filed the foregoing

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY** with the

Clerk of Court using the CM/ECF system, which will send email notification of

such filing to all attorneys of record.

This 10th day of October, 2018.

**BARNES LAW GROUP, LLC**

*/s/John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan,*
*Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

- 18 -