[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13951

_____

D.C. Docket No. 1:17-cv-02989-AT

DONNA CURLING,
an individual,
COALITION FOR GOOD GOVERNANCE,
a non-profit corporation organized and
existing under Colorado Law,
DONNA PRICE,
an individual,
JEFFREY SCHOENBERG,
an individual,
LAURA DIGGES,
an individual,
et al.,

                                                            Plaintiffs - Appellees,

versus

SECRETARY OF STATE OF GEORGIA AND
CHAIR OF THE STATE ELECTION BOARD,
DAVID J. WORLEY,
REBECCA N. SULLIVAN,
RALPH F. (RUSTY) SIMPSON,
SETH HARP,
in their individual capacities and their official

capacities as members of the
State Election Board,

                                          Defendants - Appellants,

THE STATE ELECTION BOARD,
et al.,

                                          Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 7, 2019)

Before WILLIAM PRYOR and ROSENBAUM, Circuit Judges, and MOORE,[*] District Judge.

PER CURIAM:

In this case, Plaintiff-Appellees challenged a host of Georgia state election officials' (the "State Defendants")[1] facilitation of Georgia law requiring the use of Direct Record Electronic voting machines in elections. The State Defendants moved

---

[*] Honorable K. Michael Moore, United States District Chief Judge for the Southern District of Florida, sitting by designation.

[1] The State Defendants include Brian Kemp in his official capacity as the Secretary of State of Georgia and members of the State Election Board: David J. Worley, Rebecca N. Sullivan, Ralph F. Simpson, and Seth Harp (each of whom is sued in their official capacities). One set of Plaintiffs also sued the State Election Board itself, but the State Defendants did not include it on the Notice of Appeal. At oral argument, that set of Plaintiffs conceded that it could not sue the State Election Board. Oral Argument at 12:41–46. Additionally, since the filing of this appeal, the current Secretary of State of Georgia has been substituted for ex-Secretary Kemp. Plaintiffs, who are split between two different groups, also sued several county election officials, but those county officials are not parties to this appeal.

to dismiss Plaintiff-Appellees' claims on various bases, including Eleventh Amendment and legislative immunity defenses. The district court rejected those defenses, and the State Defendants now appeal that interlocutory order. They also argue that we have jurisdiction to decide whether the Plaintiffs have standing. After careful consideration and with the benefit of oral argument, we affirm the district court's determinations that the State Defendants are not entitled to Eleventh Amendment immunity or legislative immunity. And we conclude that we lack jurisdiction to hear the State Defendants' standing arguments.

**I.**[2]

Plaintiffs are Georgia voters and a coalition group focused on secure elections. Essentially, Plaintiffs complained that Georgia's election system creates an unacceptable risk that voters' ballots will not be counted because hackers will intercept or modify them. More specifically, the State Election Board administers its Election Rule 183–1–12–.01, which requires voters to use electronic voting machines when casting ballots in person. In accordance with that rule, Georgia employs approximately 27,000 Direct Record Electronic ("DRE") machines every

---

[2] Since the State Defendants challenge the district court's denial of their motion to dismiss, we accept as true for purposes of our review the allegations in the operative complaints and construe them in the light most favorable to Plaintiffs. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016).

Election Day. By contrast, the Georgia Election Code permits those who vote by mail to do so by paper ballot.

Plaintiffs alleged that some experts have warned that DRE machines have "critical" vulnerabilities that make them more susceptible to hacking than other voting systems. One of those alleged vulnerabilities is that DRE machines do not produce a paper trail, which makes detecting hacking difficult. Additionally, Plaintiffs asserted that officials exacerbated security risks by leaving unsecured aspects of the state's election infrastructure, such as a server that housed voter data.

## II.

Based upon those allegations, Plaintiffs brought state claims and two federal claims: (1) a claim under 42 U.S.C. § 1983 that Defendants violated Plaintiffs' Fourteenth Amendment guarantee of due process by impinging on Plaintiffs' voting rights and (2) a claim under 42 U.S.C. § 1983 that Defendants violated the Fourteenth Amendment's guarantee of equal protection, based on the theory that Defendants treat those who vote in person differently than those who vote by mail because those who vote by mail can vote by paper ballot. Plaintiffs sought a court order declaring that Defendants violated the Fourteenth Amendment and an injunction prohibiting Defendants from using DREs.

The State Defendants moved to dismiss these federal claims, as well as to dismiss Plaintiffs' claims under state law, raising a multitude of arguments,

including, as relevant here, that they were entitled to Eleventh Amendment immunity and legislative immunity, and that Plaintiffs lacked Article III standing. Given the then-looming 2018 midterm elections, the district court cut to the quick and considered only the threshold jurisdictional questions raised by Defendants. In doing so, the district court found that the State Defendants were not entitled to Eleventh Amendment immunity or legislative immunity. Additionally, the district court ruled that Plaintiffs had standing to press their claims under Article III.

The State Defendants appeal those three interlocutory rulings. As set forth below, we affirm in part and dismiss in part because the State Defendants are neither entitled to Eleventh Amendment immunity nor legislative immunity and their standing arguments are not yet reviewable.

**III.**

We review *de novo* the denial of an immunity defense. *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). In addition, we *sua sponte* examine our appellate jurisdiction and review jurisdictional issues *de novo*. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1266 (11th Cir. 2015). For these reasons, we review *de novo* each of the three arguments State Defendants raise.

**IV.**

**A. The State Defendants are not entitled to Eleventh Amendment immunity because Plaintiffs comfortably satisfy *Ex parte Young*.**

We begin by briefly explaining our interlocutory jurisdiction here. Although the Supreme Court has held that the Eleventh Amendment is not jurisdictional in the sense that courts must address it *sua sponte*, *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 515 n.19 (1982), we have held that Eleventh Amendment immunity sounds in jurisdiction since it entitles the recipient to bypass the burdens of litigation. *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448–49 (11th Cir. 1996). Thus, like qualified immunity, Eleventh Amendment immunity is a threshold issue that should be decided early. *Id.* In accordance with putting immunity issues to bed sooner rather than later, defendants may immediately appeal a denial of Eleventh Amendment immunity under the collateral-order doctrine, rather than waiting, as generally required, until the entry of final judgment. *Behrens v. Pelletier*, 516 U.S. 299, 305–06 (1996); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999) (stating that a district court's denial of a "motion to dismiss on Eleventh Amendment immunity grounds is appealable immediately") (citations omitted).

Substantively, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As applied, the Eleventh Amendment generally bars actions for monetary relief "when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). But under *Ex parte Young*, 209 U.S. 123 (1908), plaintiffs may sue state officials in their official capacities when they seek "*prospective* equitable relief to end *continuing* violations of federal law." *Summit*, 180 F.3d at 1336 (emphasis in original). The Supreme Court has explained that *Ex parte Young* "gives life to the Supremacy Clause," *Green v. Mansour*, 474 U.S. 64, 68 (1985), and has armed plaintiffs with the "sword" of the "Civil War Amendments" to contest ongoing violations by the states, *see Edelman v. Jordan*, 415 U.S. 651, 664 (1974).

The test for determining whether a suit fits within *Ex parte Young*'s exception is typically "straightforward," asking only whether the "'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)). As long as the plaintiff alleges ongoing violations of federal law and seeks injunctive or declaratory

relief, or both, against state officials in their official capacity, plaintiffs usually face no hurdles in clearing *Ex parte Young*.

Here, even though Plaintiffs appear to squarely fall within *Ex parte Young* because they seek only injunctive and declaratory relief for alleged ongoing violations of federal law against the State Defendants in their official capacities, the State Defendants contend *Ex parte Young* is inapplicable for four reasons.  First, the State Defendants assert that all the relief Plaintiffs seek is not prospective; instead, the State Defendants argue, Plaintiffs seek to remedy harm caused by past elections.  Second, the State Defendants urge that Plaintiffs failed to allege Georgia's election system is continuously violating federal law since, in the State Defendants' view, the threat from hackers is nebulous, intermittent, and speculative.  Third, the State Defendants argue that *Ex parte Young* should not apply because according to the State Defendants, Plaintiffs challenge only inaction by the State Defendants and *Ex parte Young* requires state action.  Fourth, the State Defendants contend that Plaintiffs' suit is barred because Plaintiffs allegedly seek to impermissibly usurp Georgia's power in operating its election machinery as it sees fit.

Taking the first two arguments together, the Court addresses the State Defendants' four *Ex parte Young* arguments in turn below.

1. **Plaintiffs seek prospective injunctive relief, so they fit within *Ex parte Young*'s exception.**

These two arguments can be disposed of without much ado because they run counter to the complaints' allegations and settled precedent. Starting with the allegations of ongoing violations by state officials sued in their official capacity, Plaintiffs have alleged that the State Defendants continue to enforce Rule 183–1–12–.01 and that enforcement has the prospect of violating Plaintiffs' federal rights because that rule obligates the use of allegedly unsecure DRE machines. And Plaintiffs seek only declaratory relief and an injunction against enforcing this election system in future elections.

As for the law, any number of binding precedents demonstrate why it is irrefragable that these allegations satisfy *Ex parte Young*. To pick just one, in *Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011), the plaintiffs there challenged the constitutionality of a Georgia election law by seeking to enjoin the Secretary of State and members of the State Election Board from enforcing the law in upcoming elections the way they had in past elections, *id.* at 1317–18. The court held that because the plaintiffs sought "prospective injunctive relief" by seeking to enjoin the election, the suit fell within the *Ex parte Young* exception. *Id.* at 1319.

Here, there is no question that, like the plaintiffs in *Grizzle*, Plaintiffs seek only an injunction barring the State Defendants from enforcing election rules that

9

allegedly violate Plaintiffs' constitutional rights.[3] Since they allege those rules will violate their constitutional rights in the future, they have satisfied *Ex parte Young*'s exception.

Despite the clarity of this conclusion, the State Defendants nevertheless seek to avoid it on the grounds that Plaintiffs seek to succeed in showing the unreliability (and thus unconstitutionality) of the DRE machines in past elections. But Plaintiffs use these allegations only to show that past is prologue to their future injuries caused by the same election system. *See Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("Past wrongs do constitute evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction.").

As for the State Defendants' contention that Plaintiffs have failed to show that federal law requires a more secure election system and that the risk of harm is too nebulous to be cognizable, those arguments go to the merits and have no bearing on whether Plaintiffs satisfy *Ex parte Young*. *See Verizon*, 535 U.S. at 646 ("[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of

---

[3] The State Defendants argue that *Ex parte Young* is inapplicable here because state laws are "not being 'enforced' against Plaintiffs by the State Defendants" in any punitive or regulatory action. But the State Defendants cite no authority that supports their proposed distinction between "enforcing the law" (in the sense of administering it) and "enforcing the law" (in the sense of prosecuting someone). Both actions can cause harm if they are done in a manner that flouts federal law and, accordingly, in both cases, the official may be sued for prospective relief under *Ex parte Young* to prevent the injury.

the merits of the claim."); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017) ("[H]aving determined Air Evac's action satisfies the *Ex parte Young* exception, we need not consider . . . whether the requirements for temporary or permanent equitable relief are also satisfied. Doing so is beyond the threshold jurisdictional question posed *by Ex parte Young* . . . ."). Consequently, because this Court's review is circumscribed to the *Ex parte Young* inquiry, we do not address the merits of Plaintiffs' federal claims.

## 2. Plaintiffs challenge both inaction and action by the State Defendants, and *Ex parte Young* applies to both.

The State Defendants argue that Plaintiffs' suits are barred because *Ex parte Young* applies to only state action but Plaintiffs challenge only state inaction. Here too, however, the State Defendants' arguments defy not only the allegations in the complaints, but also settled precedent that allows *Ex parte Young* suits when state officials' inaction allegedly harms constitutional rights.

Starting with the facts as alleged, Plaintiffs challenge both the State Defendants' affirmative conduct and inaction. For example, Plaintiffs allege that the State Defendants supply the DRE machines and "plan to continue to use the non-compliant DRE System in" future elections. Plaintiffs contend that these actions will violate federal law, so they seek an injunction barring it. Thus, contrary to the State Defendants' contentions, Plaintiffs challenge more than mere inaction because

they allege that State Defendants provide the DRE machines and will employ them in the future.

But even if the complaints were premised solely on the State Defendants' inaction, that would be enough under *Ex parte Young*. For example, in *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011), the Supreme Court permitted the plaintiffs to sue under *Ex parte Young* where they argued that "respondents' refusal to produce medical records violated federal law," *id.* at 255–56. Similarly, in *Doe 1-13 v. Chiles*, we applied *Ex parte Young* to a suit alleging that state officials "were failing to furnish Medicaid assistance with 'reasonable promptness'" and "thus were violating a provision of the Medicaid Act." 136 F.3d 709, 711 (11th Cir. 1998). In affirming the district court's order "enjoin[ing] the officials from failing to provide the assistance within a 'reasonable' time period," *id.*, we held that the "lawsuit fits neatly within the *Ex parte Young* exception," *id.* at 720. Accordingly, even if all Plaintiffs alleged was that the State Defendants were neglecting to repair Georgia's voting system to bring it in line with federal law, Plaintiffs' suits would still fit within *Ex parte Young*.

### 3. Enjoining Georgia's use of DRE machines does not impermissibly violate Georgia's special sovereignty interests.

State Defendants contend that *Ex parte Young* cannot apply because this case "implicates special sovereignty interests," namely, it seeks to interfere with how Georgia operates its election machinery. Their argument is premised upon the

Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997). In that case, a federally recognized Native American tribe sought a declaratory judgment to establish the tribe's entitlement to the exclusive use of the submerged lands of Lake Coeur d'Alene. The Supreme Court held that the Eleventh Amendment barred the tribe's suit and that the *Ex parte Young* exception did not apply. *See id.* at 280.

The Court recognized that "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Id.* at 281. Nevertheless, the Court treated *Coeur d'Alene Tribe* as an unusual case that presented an exception to the *Ex parte Young* doctrine because ruling in the tribe's favor would "extinguish" the state's ownership over "a vast reach of lands and waters long deemed by the State to be an integral part of its territory." *Id.* at 282; *see also Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 912 (10th Cir. 2008) (opining that *Verizon*, 535 U.S. 635, limited the "reach" of *Coeur d'Alene Tribe*).

Here, though, there is nothing unusual about Plaintiffs' case that would necessitate summoning *Coeur d'Alene Tribe*'s exception. Undoubtedly, *Ex parte Young* suits are permitted when the plaintiff alleges that state election officials are conducting elections in a manner that does not comport with the Constitution. *See, e.g.*, *Grizzle*, 634 F.3d at 1316 (permitting the plaintiffs to challenge the

13

constitutionality of a Georgia election law). Moreover, Plaintiffs do not seek a court order directing the precise way in which Georgia should conduct voting. Instead, Plaintiffs seek only injunctive and declaratory relief against a system that they decry as unconstitutionally unsecure. Accordingly, there is nothing so unusual at stake that warrants applying *Coeur d'Alene Tribe*'s narrow exception.

**B. The State Defendants are not entitled to legislative immunity.**

The State Defendants argue that "[t]o the extent Plaintiffs' suit is premised on the [State Election Board's] promulgation of rules and regulations, the claim is barred by legislative immunity." The State Defendants also assert that the "Complaints represent an attack on legislative immunity" because the "Complaints position the Plaintiffs and the district court in policymaking roles opposite the Georgia Legislature . . . ."

Legislative immunity applies when a plaintiff challenges an official's act that is legislative. *Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1998). "[M]ere administrative application of existing policies" is not a "legislative" act. *Crymes v. DeKalb Cty.*, 923 F.2d 1482, 1485 (11th Cir. 1991). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).

Here, the State Defendants cannot claim legislative immunity because Plaintiffs did not challenge legislative acts. Instead, Plaintiffs challenged the State

14

Defendants' implementation and execution of a state law and policy. *See Crymes*, 923 F.2d at 1485 (finding that "mere administrative application of existing policies" are not "legislative" acts); *see also Scott v. Taylor*, 405 F.3d 1251, 1256 (11th Cir. 2005) (finding that members of the board of election were not entitled to legislative immunity because the plaintiff was seeking only "prospective relief seeking to enjoin the enforcement of the challenged voting district and a declaration as to its legality"). Moreover, Plaintiffs did not challenge the mere enactment of the law or election rules, they contended only that the State Defendants' enforcement of that law in the future will burden their right to vote. Accordingly, because Plaintiffs challenged only the execution of state law, the State Defendants cannot claim entitlement to legislative immunity.

### C. We lack jurisdiction to entertain the State Defendants' standing arguments.

The State Defendants argue that the district court erred in finding that Plaintiffs had standing. They acknowledge that, unlike with the question of Eleventh Amendment immunity, a district court's denial of a motion to dismiss on standing grounds is not immediately appealable. But they contend that we have jurisdiction to hear their standing arguments because they are "inextricably intertwined" with the question of whether the State Defendants are entitled to immunity.

To be sure, we have discretion to exercise jurisdiction over "otherwise nonappealable orders under the pendent appellate jurisdiction doctrine" if the non-

15

immediately appealable order is "inextricably intertwined" with the immediately appealable order. *Summit*, 180 F.3d at 1335. But we have previously declined to exercise our pendent appellate jurisdiction because standing and Eleventh Amendment immunity were "neither 'inextricably intertwined' nor 'necessary to ensure meaningful review' of one another" when we could "resolve the Eleventh Amendment immunity issue [presented] without reaching the merits of standing." *Id.* Applying *Summit*, we have also explained that "an interlocutory appeal of the district court's denial of legislative immunity . . . [does] not support pendant appellate jurisdiction on a standing issue." *Scott*, 405 F.3d at 1257 n.8. Because we can resolve the State Defendants' immunity defenses without reaching the merits of Plaintiffs' standing, these issues are not "inextricably intertwined" as required to invoke our pendent appellate jurisdiction. Because we lack jurisdiction to hear the State Defendants' standing challenge, we do not pass upon the merits of them now.

## V.

For the foregoing reasons, we affirm the district court's order and dismiss in part this appeal.

**AFFIRMED IN PART and DISMISSED IN PART.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 07, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 18-13951-DD
Case Style: Donna Curling, et al v. Secretary of State of Georgia, et al
District Court Docket No: 1:17-cv-02989-AT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carson Wynn, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs