# Exhibit 1



## OFFICE OF SECRETARY OF STATE

*I, Brad Raffensperger, Secretary of State of the State of Georgia, do hereby certify that*

the attached 38 pages are true and correct copies of Act No. 24, House Bill

No. 316, as approved and signed by the Governor on April 2, 2019; all

as the same appear on file and record in this office.



IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of my office, at the Capitol, in the City of Atlanta, this 2nd day of April, in the year of our Lord Two Thousand and Nineteen and of the Independence of the United States of America the Two Hundred and Forty-Third.

**Brad Raffensperger, Secretary of State**

**ENROLLMENT**

_March 29, 2019_

The Committee of the House on Information and Audits has examined the within and finds the same properly enrolled.

_Darlene K. Taylor_
Chairman

_[signature]_
Speaker of the House

_[signature]_
Clerk of the House

_[signature]_
President of the Senate

_[signature]_
Secretary of the Senate

Received _[signature]_
Secretary, Executive Department

This _29th_ day of _March_ 20 _19_

Approved _[signature]_
Governor

This _2nd_ day of _April_ 20 _19_

---

H.B. No. __316__   Act No. __24__

**General**   **Assembly**

**AN ACT**

To amend Chapter 2 of Title 21 of the O.C.G.A., relating to primaries and elections generally, so as to provide for definitions; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

**IN HOUSE**

| | |
|---|---|
| Read 1st time | 2-15-19 |
| Read 2nd time | 2-19-19 |
| Read 3rd time | 2-26-19 |
| And | Passed |
| Yeas 101 | Nays 72 |

Clerk of the House

**IN SENATE**

| | |
|---|---|
| Read 1st time | 2-27-19 |
| Read 2nd time | 3-08-19 |
| Read 3rd time | 3-13-19 |
| And | Passed |
| Yeas 35 | Nays 21 |

Passed Both Houses

_[signature]_
Secretary of the Senate

By: Reps. Fleming of the 121st, Jones of the 47th, Burns of the 159th, and others

## AN ACT

To amend Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to primaries and elections generally, so as to provide for definitions; to provide for uniform election equipment in this state; to provide for ballot marking devices and standards and procedures for such devices; to provide for the manner of qualifying presidential elector candidates for independent candidates for the offices of President and Vice President of the United States; to provide for the time for filing evidence of nomination by political body candidates; to clarify the age for voting; to provide for audits of election results and procedures therefor; to revise and clarify procedures for voter registration and list maintenance activities; to authorize the Secretary of State to become a member of a nongovernmental entity for purposes of maintaining electors lists under certain conditions; to provide for minimum requirements and form of information on electronic ballot markers; to provide for confidentiality of certain records and documents; to extend the time period allowing for public comment on precinct realignments; to place time limits on relocation of polling places; to provide for additional sites for a registrar's office or place of registration for absentee ballots; to provide for the delivery of absentee ballots to certain persons in custody; to provide for the manner of processing absentee ballot applications and absentee ballots; to provide a cure for an elector whose absentee ballot was rejected; to provide for the form of absentee ballot oath envelopes; to provide for the time for advance voting and manner and location of advance voting; to provide for assistance in voting; to provide for ease of reading ballots; to provide that a voter identification card is valid until an elector moves out of the county in which it was issued or is no longer eligible to vote; to provide for notification procedures for status of provisional ballots; to provide for the time for certifying elections; to provide for precertification audits; to provide for entitlement to and methods for recounts; to provide for conforming changes; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

### SECTION 1.

Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to primaries and elections generally, is amended by revising paragraphs (2), (4.1), and (18) of Code Section 21-2-2, relating to definitions, and adding new paragraphs to read as follows:

"(2) 'Ballot marking device' means a pen, pencil, or similar writing tool, or an electronic device designed for use in marking paper ballots in a manner that is detected as a vote so cast and then counted by ballot scanners.

(2.1) 'Ballot scanner' means an electronic recording device which receives an elector's ballot and tabulates the votes on the ballot by its own devices; also known as a 'tabulating machine.'"

"(4.1) 'Direct recording electronic' or 'DRE' voting equipment means a computer driven unit for casting and counting votes on which an elector touches a video screen or a button adjacent to a video screen to cast his or her vote.  Such term shall not encompass ballot marking devices or electronic ballot markers."

"(7.1)  'Electronic ballot marker' means an electronic device that does not compute or retain votes; may integrate components such as a ballot scanner, printer, touch screen monitor, audio output, and a navigational keypad; and uses electronic technology to independently and privately mark a paper ballot at the direction of an elector, interpret ballot selections, communicate such interpretation for elector verification, and print an elector verifiable paper ballot."

"(18) 'Official ballot' means a ballot, whether paper, mechanical, or electronic, which is furnished by the superintendent or governing authority in accordance with Code Section 21-2-280, including paper ballots that are read by ballot scanners."

"(19.1) 'Optical scanning voting system' means a system employing paper ballots on which electors cast votes with a ballot marking device or electronic ballot marker after which votes are counted by ballot scanners."

"(32.1)  'Scanning ballot' means a printed paper ballot designed to be marked by an elector with a ballot marking device or electronic ballot marker or a blank sheet of paper designed to be used in a ballot marking device or electronic ballot marker, which is then inserted for casting into a ballot scanner."

## SECTION 2.

Said chapter is further amended by revising paragraph (15) of subsection (a) of Code Section 21-2-50, relating to the powers and duties of the Secretary of State and prohibition against serving in a fiduciary capacity, as follows:

"(15)   To develop, program, build, and review ballots for use by counties and municipalities on voting systems in use in the state."

## SECTION 3.

Said chapter is further amended by adding a new Code section to read as follows:
"21-2-132.1.

(a)  An independent candidate for the office of President or Vice President of the United States shall file with the Secretary of State not later than the Friday before the opening of qualifying for such office as provided in subsection (d) of Code Section 21-2-132 a slate of candidates for the office of presidential elector which such independent candidate has certified as being the presidential electors for such independent candidate.

(b)  The candidates for presidential electors certified by an independent candidate for the office of President or Vice President of the United States shall then qualify for election to such office in accordance with Code Section 21-2-132.

(c)  An independent candidate for the office of President or Vice President of the United States may certify a number of candidates for the office of presidential elector that is equal to or less than the number of presidential electors who may be elected from the State of Georgia."

## SECTION 4.

Said chapter is further amended by revising paragraph (5) of subsection (c) of Code Section 21-2-172, relating to nomination of presidential electors and candidates of political bodies by convention, as follows:

"(5)  That a certified copy of the minutes of the convention, attested to by the chairperson and secretary of the convention, must be filed by the nominee with his or her nomination petition."

## SECTION 5.

Said chapter is further amended by revising subsections (a) and (c) of Code Section 21-2-216, relating to qualifications of electors generally, reregistration of electors purged from list, eligibility of nonresidents who vote in presidential elections, retention of qualification for standing as elector, evidence of citizenship, and check of convicted felons and deceased persons databases, as follows:

"(a)  No person shall vote in any primary or election held in this state unless such person shall be:

(1)  Registered as an elector in the manner prescribed by law;

(2)  A citizen of this state and of the United States;

(3)  At least 18 years of age on or before the date of the primary or election in which such person seeks to vote;

(4)  A resident of this state and of the county or municipality in which he or she seeks to vote; and

(5)  Possessed of all other qualifications prescribed by law."

"(c) Any person who possesses the qualifications of an elector except that concerning age shall be permitted to register to vote if such person will acquire such qualification within six months after the day of registration; provided, however, that such person shall not be permitted to vote in a primary or election unless such person shall be at least 18 years of age on or before the date of the primary or election in which such person seeks to vote."

## SECTION 6.

Said chapter is further amended by revising subsections (b), (c), and (d) of Code Section 21-2-220.1, relating to required documentation for voter registration, as follows:

"(b) In the event that the name, driver's license number, social security number, or date of birth provided by the person registering to vote on the voter registration form does not match information about the applicant on file at the Department of Driver Services or the federal Social Security Administration, the applicant shall nevertheless be registered to vote but shall be required to produce proof of his or her identity to a county registrar, a deputy county registrar, a poll manager, or a poll worker at or before the time that such applicant requests a ballot for the first time in any federal, state, or local election.

(c) Proof of the applicant's identity as set forth in subsection (b) of this Code section shall be the forms of identification listed in subsection (c) of Code Section 21-2-417."

## SECTION 7.

Said chapter is further amended by revising Code Section 21-2-225, relating to confidentiality of original registration applications, limitations on registration data available for public inspection, and data made available by Secretary of State, by adding a new subsection to read as follows:

"(d)(1) The Secretary of State may become a member of a nongovernmental entity whose purpose is to share and exchange information in order to improve the accuracy and efficiency of voter registration systems. The membership of the nongovernmental entity shall be composed solely of election officials of state and territorial governments of the United States, except that such membership may also include election officials of the District of Columbia.

(2) Notwithstanding any provision of law to the contrary, the Secretary of State may share confidential and exempt information after becoming a member of such nongovernmental entity as provided in paragraph (1) of this subsection.

(3) The Secretary of State may become a member of such nongovernmental entity only if such entity is controlled and operated by the participating jurisdictions. The entity shall not be operated or controlled by the federal government or any other entity acting on

behalf of the federal government.  The Secretary of State must be able to withdraw at any time from any such membership in such nongovernmental entity.

(4)  If the Secretary of State becomes a member of such nongovernmental entity, the Department of Driver Services shall, pursuant to an agreement with the Secretary of State, provide driver's license or identification card information related to voter eligibility to the Secretary of State for the purpose of sharing and exchanging voter registration information with such nongovernmental entity.

(5)  Notwithstanding any law to the contrary, upon the Secretary of State becoming a member of a nongovernmental entity as provided in this subsection, information received by the Secretary of State from the nongovernmental entity is exempt from disclosure under Article 4 of Chapter 18 of Title 50 and any other provision of law.  However, the Secretary of State may provide such information to the boards of registrars to conduct voter registration list maintenance activities."

## SECTION 8.

Said chapter is further amended by revising subsection (a) of Code Section 21-2-230, relating to challenge of persons on list of electors by other electors, procedure, hearing, and right of appeal, as follows:

"(a)  Any elector of the county or municipality may challenge the right of any other elector of the county or municipality, whose name appears on the list of electors, to vote in an election.  Such challenge shall be in writing and specify distinctly the grounds of such challenge.  Such challenge may be made at any time prior to the elector whose right to vote is being challenged voting at the elector's polling place or, if such elector cast an absentee ballot, prior to 5:00 P.M. on the day before the election; provided, however, that challenges to persons voting by absentee ballot in person at the office of the registrars or the absentee ballot clerk shall be made prior to such person's voting."

## SECTION 9.

Said chapter is further amended by revising subsection (c) of Code Section 21-2-231, relating to lists of persons convicted of felonies, persons identified as noncitizens, persons declared mentally incompetent, and deceased persons provided to Secretary of State and Council of Superior Court Clerks, removal of names from list of electors, obtain information about persons who died, timing, and list of inactive voters provided to Council of Superior Court Clerks, as follows:

"(c)(1)  Upon receipt of the lists described in subsections (a.1), and (b) of this Code section, the Secretary of State shall transmit the names of such persons whose names appear on the list of electors to the appropriate county board of registrars who shall

remove all such names from the list of electors and shall mail a notice of such action and the reason therefor to the last known address of such persons by first-class mail.

(2)  Upon receipt of the list described in subsection (a) of this Code section and the lists of persons convicted of felonies in federal courts received pursuant to 52 U.S.C. Section 20507(g), the Secretary of State shall transmit the names of such persons whose names appear on the lists of electors to the appropriate county board of registrars who shall mail a notice to the last known address of each such person by first-class mail, stating that the board of registrars has received information that such person has been convicted of a felony and will be removed from the list of electors 30 days after the date of the notice unless such person requests a hearing before the board of registrars on such removal."

## SECTION 10.

Said chapter is further amended by revising subsection (b) of Code Section 21-2-232, relating to removal of elector's name from list of electors, as follows:

"(b)(1)  When an elector of this state moves to another state and registers to vote and the registration officials in such state send a notice of cancellation reflecting the registration of the elector in the other state, which includes a copy of such elector's voter registration application bearing the elector's signature, the Secretary of State or the board of registrars, as the case may be, shall remove such elector's name from the list of electors. It shall not be necessary to send a confirmation notice to the elector in such circumstances.

(2)  When an elector of this state moves to another state and the registration officials in such other state or a nongovernmental entity as described in subsection (d) of Code Section 21-2-225 sends a notice of cancellation or other information indicating that the elector has moved to such state but such notice or information does not include a copy of such elector's voter registration application in such other state bearing the elector's signature, the Secretary of State or the board of registrars, as the case may be, shall send a confirmation notice to the elector as provided in Code Section 21-2-234."

## SECTION 11.

Said chapter is further amended by revising subsection (a) of Code Section 21-2-234, relating to electors who have failed to vote and with whom there has been no contact in three years, confirmation notice requirements and procedure, and time for completion of list maintenance activities, as follows:

"(a)(1)  As used in this Code section and Code Section 21-2-235, the term 'no contact' shall mean that the elector has not filed an updated voter registration card, has not filed

a change of name or address, has not signed a petition which is required by law to be verified by the election superintendent of a county or municipality or the Secretary of State, has not signed a voter's certificate, has not submitted an absentee ballot application or voted an absentee ballot, and has not confirmed the elector's continuation at the same address during the preceding five calendar years.

(2)  In the first six months of each odd-numbered year, the Secretary of State shall identify all electors whose names appear on the list of electors with whom there has been no contact during the preceding five calendar years and who were not identified as changing addresses under Code Section 21-2-233. The confirmation notice described in this Code section shall be sent to each such elector during each odd-numbered year. Such notices shall be sent by forwardable, first-class mail."

## SECTION 12.

Said chapter is further amended by revising subsection (b) of Code Section 21-2-235, relating to inactive list of electors, as follows:

"(b) An elector placed on the inactive list of electors shall remain on such list until the day after the second November general election held after the elector is placed on the inactive list of electors.  If the elector makes no contact, as defined in Code Section 21-2-234, during that period, the elector shall be removed from the inactive list of electors.  Not less than 30 nor more than 60 days prior to the date on which the elector is to be removed from the inactive list of electors, the board of registrars shall mail a notice to the address on the elector's registration record."

## SECTION 13.

Said chapter is further amended by revising subsection (c) of Code Section 21-2-262, relating to investigation as to division, redivision, alteration, formation, or consolidation of precincts and petition of electors or board of registrars, as follows:

"(c) Upon the presentation of any such petition by the board of registrars or upon the filing by the board of its report and recommendations as to any investigation presented under subsection (a) of this Code section, the superintendent may make such order for the division, redivision, alteration, formation, or consolidation of precincts as will, in the superintendent's opinion, promote the convenience of electors and the public interests; provided, however, that the superintendent shall not make any final order for the division, redivision, alteration, formation, or consolidation of precincts until at least 30 days after notice of such change shall have been advertised in the legal organ of the county.  A copy of such notice shall be immediately submitted to the Secretary of State.  Such notice shall state briefly the division, redivision, alteration, formation, or consolidation of precincts

recommended by the board of registrars and the date upon which the same will be considered by the superintendent and shall contain a warning that any person objecting thereto must file his or her objections with the superintendent prior to such date. Upon the making of any such final order by the superintendent, a copy thereof shall be certified by the superintendent to the board of registrars."

## SECTION 14.

Said chapter is further amended by revising Code Section 21-2-265, relating to duty of superintendent to select polling places, change, petition objecting to proposed change, space for political parties holding primaries, facilities for disabled voters, and selection of polling place outside precinct to better serve voters, by adding a new subsection to read as follows:

"(f)  A polling place shall not be changed on a day in which a primary, election, or runoff is held, or during the 60 day period prior to any general primary or general election or runoff from such primary or election, nor shall a polling place be changed in the 30 day period prior to any special primary or special election or runoff from such special primary or special election, except, in the discretion of the superintendent, when an emergency or event occurs during such time period which renders the polling place unavailable for use at such general primary, general election, special primary, special election, or runoff."

## SECTION 15.

Said chapter is further amended by revising subsection (a) of Code Section 21-2-267, relating to equipment, arrangement, and storage at polling places, as follows:

"(a)  The governing authority of each county and municipality shall provide and the superintendent shall cause all rooms used as polling places to be provided with suitable heat and light and, in precincts in which ballots are used, with a sufficient number of voting compartments or booths with proper supplies in which the electors may conveniently mark their ballots, with a curtain, screen, or door in the upper part of the front of each compartment or booth so that in the marking thereof they may be screened from the observation of others. A curtain, screen, or door shall not be required, however, for the self-contained units used as voting booths in which direct recording electronic (DRE) voting units or electronic ballot markers are located if such booths have been designed so as to ensure the privacy of the elector. When practicable, every polling place shall consist of a single room, every part of which is within the unobstructed view of those present therein and shall be furnished with a guardrail or barrier closing the inner portion of such room, which guardrail or barrier shall be so constructed and placed that only such persons as are inside such rail or barrier can approach within six feet of the ballot box and voting compartments, or booths, or voting machines, as the case may be. The ballot box and

voting compartments or booths shall be so arranged in the voting room within the enclosed space as to be in full view of those persons in the room outside the guardrail or barrier. The voting machine or machines shall be placed in the voting rooms within the enclosed space so that, unless its construction shall otherwise require, the ballot labels on the face of the machine can be plainly seen by the poll officers when the machine is not occupied by an elector.  In the case of direct recording electronic (DRE) voting units or electronic ballot markers, the devices shall be arranged in such a manner as to ensure the privacy of the elector while voting on such devices, to allow monitoring of the devices by the poll officers while the polls are open, and to permit the public to observe the voting without affecting the privacy of the electors as they vote."

## SECTION 16.

Said chapter is further amended in subsection (b) of Code Section 21-2-286, relating to printing specifications, numbering, and binding of ballots, by adding a new paragraph to read as follows:

"(3)  Ballots printed by an electronic ballot marker shall be designed as prescribed by the Secretary of State to ensure ease of reading by electors."

## SECTION 17.

Said chapter is further amended by revising Code Section 21-2-293, relating to correction of mistakes and omissions on ballots, as follows:

"21-2-293.

(a)  If the election superintendent discovers that a mistake or omission has occurred in the printing of official ballots or in the programming of the display of the official ballot on DRE voting equipment or electronic ballot markers for any primary or election, the superintendent is authorized on his or her own motion to take such steps as necessary to correct such mistake or omission if the superintendent determines that such correction is feasible and practicable under the circumstances; provided, however, that the superintendent gives at least 24 hours' notice to the Secretary of State and any affected candidates of the mistake or omission prior to making such correction.

(b)  When it is shown by affidavit that a mistake or omission has occurred in the printing of official ballots or in the programming of the display of the official ballot on DRE voting equipment or electronic ballot markers for any primary or election, the superior court of the proper county may, upon the application of any elector of the county or municipality, require the superintendent to correct the mistake or omission or to show cause why he or she should not do so."

## SECTION 18.

Said chapter is further amended by revising subsection (a) of Code Section 21-2-300, relating to provision of new voting equipment by state, contingent upon appropriations, county responsibilities, education, and county and municipal contracts for equipment, as follows:

"(a)(1)  The equipment used for casting and counting votes in county, state, and federal elections shall be the same in each county in this state and shall be provided to each county by the state, as determined by the Secretary of State.

(2)  As soon as possible, once such equipment is certified by the Secretary of State as safe and practicable for use, all federal, state, and county general primaries and general elections as well as special primaries and special elections in the State of Georgia shall be conducted with the use of scanning ballots marked by electronic ballot markers and tabulated by using ballot scanners for voting at the polls and for absentee ballots cast in person, unless otherwise authorized by law; provided, however, that such electronic ballot markers shall produce paper ballots which are marked with the elector's choices in a format readable by the elector.

(3)  The state shall furnish a uniform system of electronic ballot markers and ballot scanners for use in each county as soon as possible.  Such equipment shall be certified by the United States Election Assistance Commission prior to purchase, lease, or acquisition. At its own expense, the governing authority of a county may purchase, lease, or otherwise acquire additional electronic ballot markers and ballot scanners of the type furnished by the state, if the governing authority so desires.  Additionally, at its own expense, the governing authority of a municipality may choose to acquire its own electronic ballot markers and ballot scanners by purchase, lease, or other procurement process.

(4)  Notwithstanding any provision of law to the contrary, the Secretary of State is authorized to conduct pilot programs to test and evaluate the use of electronic ballot markers and ballot scanners in primaries and elections in this state."

## SECTION 19.

Said chapter is further amended by revising paragraph (5) of Code Section 21-2-365, relating to requirements for use of optical scanning voting systems, as follows:

"(5)  A ballot scanner shall preclude the counting of votes for any candidate or upon any question for whom or upon which an elector is not entitled to vote; shall preclude the counting of votes for more persons for any office than he or she is entitled to vote for; and shall preclude the counting of votes for any candidate for the same office or upon any question more than once;".

## SECTION 20.

Said chapter is further amended by revising Code Section 21-2-367, relating to installation of systems, number of systems, and good working order, as follows:

"21-2-367.

(a)  When the use of optical scanning voting systems has been authorized in the manner prescribed in this part, such optical scanning voting systems shall be installed, either simultaneously or gradually, within the county or municipality.

(b)  In each precinct in which optical scanning voting systems are used, the county or municipal governing authority, as appropriate, shall provide at least one voting booth or enclosure for each 250 electors therein, or fraction thereof.

(c)  Reserved.

(d)  The county or municipal governing authority, as appropriate, shall provide optical scanning voting systems in good working order and of sufficient capacity to accommodate the names of a reasonable number of candidates for all party offices and nominations and public offices which, under the provisions of existing laws and party rules, are likely to be voted for at any future primary or election."

## SECTION 21.

Said chapter is further amended by revising subsection (a) of Code Section 21-2-369, relating to printing of ballots and arrangement, as follows:

"(a)  The ballots shall be printed in black ink upon clear, white, or colored material, of such size and arrangement as will suit the construction of the ballot scanner, and in plain, clear type so as to be easily readable by persons with normal vision; provided, however, that red material shall not be used except that all ovals appearing on the ballot to indicate where a voter should mark to cast a vote may be printed in red ink."

## SECTION 22.

Said chapter is further amended by revising Code Section 21-2-372, relating to ballot description, as follows:

"21-2-372.

Ballots shall be of suitable design, size, and stock to permit processing by a ballot scanner and shall be printed in black ink on clear, white, or colored material. "

## SECTION 23.

Said chapter is further amended by revising subsections (a) and (b) of Code Section 21-2-374, relating to proper programming, proper order, testing, and supplies, as follows:

"21-2-374.

(a) The superintendent of each county or municipality shall order the proper programming to be placed in each ballot scanner used in any precinct or central tabulating location.

(b) On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the superintendent shall have the ballot scanners tested to ascertain that they will correctly count the votes cast for all offices and on all questions. Public notice of the time and place of the test shall be made at least five days prior thereto; provided, however, that, in the case of a runoff, the public notice shall be made at least three days prior thereto. Representatives of political parties and bodies, candidates, news media, and the public shall be permitted to observe such tests. The test shall be conducted by processing a preaudited group of ballots so marked as to record a predetermined number of valid votes for each candidate and on each question and shall include for each office one or more ballots which are improperly marked and one or more ballots which have votes in excess of the number allowed by law in order to test the ability of the ballot scanner to reject such votes. The ballot scanner shall not be approved unless it produces an errorless count. If any error is detected, the cause therefor shall be ascertained and corrected; and an errorless count shall be made before the ballot scanner is approved. The superintendent shall cause the pretested ballot scanners to be placed at the various polling places to be used in the primary or election. The superintendent shall require that each ballot scanner be thoroughly tested and inspected prior to each primary and election in which it is used and shall keep such tested material as certification of an errorless count on each ballot scanner. In counties using central count ballot scanners, the same test shall be repeated immediately before the start of the official count of the ballots and at the conclusion of such count. Precinct ballot scanners shall produce a zero tape prior to any ballots being inserted on the day of any primary or election."

## SECTION 24.

Said chapter is further amended by revising Code Section 21-2-375, relating to delivery of equipment to polling places, protection for equipment, and required accessories, as follows:

"21-2-375.

(a) In counties using precinct count ballot scanners, the superintendent shall deliver the proper ballot scanner to the polling places at least one hour before the time set for opening of the polls at each primary or election and shall cause each to be set up in the proper manner for use in voting.

(b) The superintendent shall provide ample protection against molestation of and injury to the ballot scanner and, for that purpose, shall call upon any law enforcement officer to

furnish such assistance as may be necessary; and it shall be the duty of the law enforcement officer to furnish such assistance when so requested by the superintendent.

(c)  The superintendent shall at least one hour before the opening of the polls:

(1)  Provide sufficient lighting to enable electors, while in the voting booth, to read the ballot, which lighting shall be suitable for the use of poll officers in examining the booth; and such lighting shall be in good working order before the opening of the polls;

(2)  Prominently post directions for voting within the voting booth and post within the enclosed space signs reminding electors to verify their ballot choices prior to inserting the scanning ballot into the ballot scanner and stating that sample ballots are available for review upon request; at least two sample ballots in use for the primary or election shall be posted prominently outside the enclosed space within the polling place and additional sample ballots shall be available upon request;

(3)  Ensure that the precinct count ballot scanner shall have a seal securing the memory pack in use throughout the election day; such seal shall not be broken unless the ballot scanner is replaced due to malfunction; and

(4)  Provide such other materials and supplies as may be necessary or as may be required by law."

## SECTION 25.

Said chapter is further amended by revising Code Section 21-2-377, relating to custody and storage when not in use, as follows:

"21-2-377.

(a)  The superintendent shall designate a person or persons who shall have custody of the ballot scanners of the county or municipality when they are not in use at a primary or election and shall provide for his or her compensation and for the safe storage and care of the ballot scanners.

(b)  All ballot scanners, when not in use, shall be properly covered and stored in a suitable place or places."

## SECTION 26.

Said chapter is further amended in Article 9, relating to voting machines and vote recorders generally, by adding a new part to read as follows:

"Part 6

21-2-379.21.

Each polling place in this state utilizing optical scanning voting systems shall be equipped with at least one electronic ballot marker that meets the requirements as set forth in this part that is accessible to individuals with disabilities.

21-2-379.22.

No electronic ballot marker shall be adopted or used in primaries or elections in this state unless it shall, at the time, satisfy the following requirements:

(1) Provide facilities for marking ballots for all candidates and for all referendums or questions for which the elector shall be entitled to vote in a primary or election;

(2) Permit each elector, in one operation, to mark a vote for presidential electors for all the candidates of one party or body for the office of presidential elector;

(3) Permit each elector to mark votes, at any election, for any person and for any office for whom and for which he or she is lawfully entitled to vote, whether or not the name of such person or persons appears as a candidate for election; to mark votes for as many persons for an office as he or she is entitled to vote for; and to mark votes for or against any question upon which he or she is entitled to vote;

(4) Preclude the marking of votes for any candidate or upon any question for whom or upon which an elector is not entitled to vote; preclude the marking of votes for more persons for any office than the elector is entitled to vote for; and preclude the marking of votes for any candidate for the same office or upon any question more than once;

(5) Permit voting in absolute secrecy so that no person can see or know any other elector's votes, except when he or she has assisted the elector in voting, as prescribed by law;

(6) Produce a paper ballot which is marked with the elector's choices in a format readable by the elector;

(7) Be constructed of good quality material in a neat and workmanlike manner;

(8) When properly operated, mark correctly and accurately every vote cast;

(9) Be so constructed that an elector may readily learn the method of operating it; and

(10) Be safely transportable.

21-2-379.23.

(a) The ballot display information and appearance on an electronic ballot marker shall conform as nearly as practicable to Code Sections 21-2-379.4 and 21-2-379.5.

(b) The form and arrangement of ballots marked and printed by an electronic ballot marker shall be prescribed by the Secretary of State.

(c) Notwithstanding any other law to the contrary, ballots marked and printed by an electronic ballot marker shall, at a minimum, contain:

(1) The words 'OFFICIAL BALLOT';

(2) The name and date of the election;

(3) The titles of the respective offices for which the elector is eligible to vote;

(4) Words identifying the proposed constitutional amendments or other questions for which the elector is eligible to vote;

(5) The name of the candidate and, for partisan offices, indication of the candidate's political party or political body affiliation, or the answer to the proposed constitutional amendment or other question for which the elector intends to vote; and

(6) Clear indication that the elector has not marked a vote for any particular office, constitutional amendment, or other question.

(d) The paper ballot marked and printed by the electronic ballot marker shall constitute the official ballot and shall be used for, and govern the result in, any recount conducted pursuant to Code Section 21-2-495 and any audit conducted pursuant to Code Section 21-2-498.

21-2-379.24.

(a) Any person or organization owning, manufacturing, or selling, or being interested in the manufacture or sale of, any electronic ballot marker may request that the Secretary of State examine the device. Any ten or more electors of this state may, at any time, request that the Secretary of State reexamine any such device previously examined and approved by him or her. Before any such examination or reexamination, the person, persons, or organization requesting such examination or reexamination shall pay to the Secretary of State the reasonable expenses of such examination or reexamination. The Secretary of State shall publish and maintain on his or her website the cost of such examination or reexamination. The Secretary of State may, at any time, in his or her discretion, reexamine any such device.

(b) The Secretary of State shall thereupon examine or reexamine such device and shall make and file in his or her office a report, attested by his or her signature and the seal of his or her office, stating whether, in his or her opinion, the kind of device so examined can be safely and accurately used by electors at primaries and elections as provided in this chapter. If this report states that the device can be so used, the device shall be deemed approved, and devices of its kind may be adopted for use at primaries and elections as provided in this chapter.

(c)  Any device that is not so approved shall not be used at any primary or election and if, upon reexamination, a previously approved device appears to be no longer safe or accurate for use by electors at primaries or elections as provided in this chapter because of an inability to accurately record votes, the approval of the same shall immediately be revoked by the Secretary of State, and no such device shall thereafter be used or purchased for use in this state.

(d)  Any vendor who completes a sale of an electronic ballot marker that has not been certified by the Secretary of State to a governmental body in this state shall be subject to a penalty of $100,000.00, payable to the State of Georgia, plus reimbursement of all costs and expenses incurred by the governmental body in connection with the sale.  The State Election Board shall have the authority to impose such penalty upon a finding that such a sale has occurred.

(e)  When a device has been so approved, no improvement or change that does not impair its accuracy, efficiency, or capacity shall render necessary a reexamination or reapproval of such device, or of its kind.

(f)  Neither the Secretary of State, nor any custodian, nor the governing authority of any county or municipality or a member of such governing authority nor any other person involved in the examination process shall have any pecuniary interest in any device or in the manufacture or sale thereof.

(g)  Documents or information that, if made public, would endanger the security of any voting system used or being considered for use in this state, or any component thereof, including, but not limited to, electronic ballot markers, DREs, ballot scanners, pollbooks, and software or databases used for voter registration, shall not be open for public inspection except upon order of a court of competent jurisdiction.


21-2-379.25.

(a)  The superintendent of each county or municipality shall cause the proper ballot design and style to be programmed for each electronic ballot marker which is to be used in any precinct within such county or municipality, shall cause each such device to be placed in proper order for voting, and shall examine each device before it is sent to a polling place for use in a primary or election, to verify that each device is properly recording votes and producing proper ballots.

(b)  The superintendent may appoint, with the approval of the county or municipal governing authority, as appropriate, a custodian of the electronic ballot markers, and deputy custodians as may be necessary, whose duty shall be to prepare the devices to be used in the county or municipality at the primaries and elections to be held therein.  Each custodian and deputy custodian shall receive from the county or municipality such compensation as

shall be fixed by the governing authority of such county or municipality. Such custodian shall, under the direction of the superintendent, have charge of and represent the superintendent during the preparation of the devices as required by this chapter. The custodian and deputy custodians shall serve at the pleasure of the superintendent and each shall take an oath of office prepared by the Secretary of State before each primary or election, which shall be filed with the superintendent.

(c) On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the superintendent shall have each electronic ballot marker tested to ascertain that it will correctly record the votes cast for all offices and on all questions and produce a ballot reflecting such choices of the elector in a manner that the State Election Board shall prescribe by rule or regulation. Public notice of the time and place of the test shall be made at least five days prior thereto; provided, however, that, in the case of a runoff, the public notice shall be made at least three days prior thereto. Representatives of political parties and bodies, news media, and the public shall be permitted to observe such tests.

21-2-379.26.

(a) All electronic ballot markers and related equipment, when not in use, shall be properly stored and secured under conditions as shall be specified by the Secretary of State.

(b) The superintendent shall store the devices and related equipment under his or her supervision or shall designate another person or entity to provide secure storage of such devices and related equipment when it is not in use at a primary or election. The superintendent shall provide compensation for the safe storage and care of such devices and related equipment if the devices and related equipment are stored by another person or entity."

### SECTION 27.

Said chapter is further amended by revising subparagraph (a)(1)(D) and subsection (b) of Code Section 21-2-381, relating to making of application for absentee ballot, determination of eligibility by ballot clerk, furnishing of applications to colleges and universities, and persons entitled to make application, as follows:

"(D)  Except in the case of physically disabled electors residing in the county or municipality or electors in custody in a jail or other detention facility in the county or municipality, no absentee ballot shall be mailed to an address other than the permanent mailing address of the elector as recorded on the elector's voter registration record or a temporary out-of-county or out-of-municipality address."

"(b)(1)  Upon receipt of a timely application for an absentee ballot, a registrar or absentee ballot clerk shall enter thereon the date received.  The registrar or absentee ballot clerk shall determine, in accordance with the provisions of this chapter, if the applicant is eligible to vote in the primary or election involved.  In order to be found eligible to vote an absentee ballot by mail, the registrar or absentee ballot clerk shall compare the identifying information on the application with the information on file in the registrar's office and, if the application is signed by the elector, compare the signature or mark of the elector on the application with the signature or mark of the elector on the elector's voter registration card.  In order to be found eligible to vote an absentee ballot in person at the registrar's office or absentee ballot clerk's office, such person shall show one of the forms of identification listed in Code Section 21-2-417 and the registrar or absentee ballot clerk shall compare the identifying information on the application with the information on file in the registrar's office.

(2)  If found eligible, the registrar or absentee ballot clerk shall certify by signing in the proper place on the application and then:

(A)  Shall mail the ballot as provided in this Code section;

(B)  If the application is made in person, shall issue the ballot to the elector within the confines of the registrar's or absentee ballot clerk's office as required by Code Section 21-2-383 if the ballot is issued during the advance voting period established pursuant to subsection (d) of Code Section 21-2-385; or

(C)  May deliver the ballot in person to the elector if such elector is confined to a hospital.

(3)  If found ineligible, the clerk or the board of registrars shall deny the application by writing the reason for rejection in the proper space on the application and shall promptly notify the applicant in writing of the ground of ineligibility, a copy of which notification should be retained on file in the office of the board of registrars or absentee ballot clerk for at least one year.  However, an absentee ballot application shall not be rejected due to an apparent mismatch between the signature of the elector on the application and the signature of the elector on file with the board of registrars.  In such cases, the board of registrars or absentee ballot clerk shall send the elector a provisional absentee ballot with the designation 'Provisional Ballot' on the outer oath envelope and information prepared by the Secretary of State as to the process to be followed to cure the signature discrepancy.  If such ballot is returned to the board of registrars or absentee ballot clerk prior to the closing of the polls on the day of the primary or election, the elector may cure the signature discrepancy by submitting an affidavit to the board of registrars or absentee ballot clerk along with a copy of one of the forms of identification enumerated in subsection (c) of Code Section 21-2-417 before the close of the period for verifying

provisional ballots contained in subsection (c) of Code Section 21-2-419. If the board of registrars or absentee ballot clerk finds the affidavit and identification to be sufficient, the absentee ballot shall be counted as other absentee ballots. If the board of registrars or absentee ballot clerk finds the affidavit and identification to be insufficient, then the procedure contained in Code Section 21-2-386 shall be followed for rejected absentee ballots.

(4) If the registrar or clerk is unable to determine the identity of the elector from information given on the application, the registrar or clerk should promptly write to request additional information.

(5) In the case of an unregistered applicant who is eligible to register to vote, the clerk or the board shall immediately mail a blank registration card as provided by Code Section 21-2-223, and such applicant, if otherwise qualified, shall be deemed eligible to vote by absentee ballot in such primary or election, if the registration card, properly completed, is returned to the clerk or the board on or before the last day for registering to vote in such primary or election. If the closing date for registration in the primary or election concerned has not passed, the clerk or registrar shall also mail a ballot to the applicant, as soon as it is prepared and available; and the ballot shall be cast in such primary or election if returned to the clerk or board not later than the close of the polls on the day of the primary or election concerned."

## SECTION 28.

Said chapter is further amended by revising subsection (a) of Code Section 21-2-382, relating to additional sites as additional registrar's office or place of registration for absentee ballots, as follows:

"(a) Any other provisions of this chapter to the contrary notwithstanding, the board of registrars may establish additional sites as additional registrar's offices or places of registration for the purpose of receiving absentee ballots under Code Section 21-2-381 and for the purpose of voting absentee ballots under Code Section 21-2-385, provided that any such site is a branch of the county courthouse, a courthouse annex, a government service center providing general government services, another government building generally accessible to the public, or a location that is used as an election day polling place, notwithstanding that such location is not a government building."

## SECTION 29.

Said chapter is further amended in Code Section 21-2-383, relating to preparation and delivery of ballots, form of ballots, and casting ballot in person using DRE unit, by adding a subsection to read as follows:

"(c)   Notwithstanding any other provision of this Code section to the contrary, in jurisdictions in which electronic ballot markers are used in the polling places on election day, such electronic ballot markers shall be used for casting absentee ballots in person at a registrar's or absentee ballot clerk's office or in accordance with Code Section 21-2-382, providing for additional sites."

## SECTION 30.

Said chapter is further amended by revising subsections (b) and (e) and paragraph (1) of subsection (c) of Code Section 21-2-384, relating to preparation and delivery of supplies, mailing of ballots, oath of absentee electors and persons assisting absentee electors, master list of ballots sent, challenges, and electronic transmission of ballots, as follows:

"(b)  Except for ballots voted within the confines of the registrar's or absentee ballot clerk's office, in addition to the mailing envelope addressed to the elector, the superintendent, board of registrars, or absentee ballot clerk shall provide two envelopes for each official absentee ballot, of such size and shape as shall be determined by the Secretary of State, in order to permit the placing of one within the other and both within the mailing envelope. On the smaller of the two envelopes to be enclosed in the mailing envelope shall be printed the words 'Official Absentee Ballot' and nothing else.  On the back of the larger of the two envelopes to be enclosed within the mailing envelope shall be printed the form of oath of the elector and the oath for persons assisting electors, as provided for in Code Section 21-2-409, and the penalties provided for in Code Sections 21-2-568, 21-2-573, 21-2-579, and 21-2-599 for violations of oaths; and on the face of such envelope shall be printed the name and address of the board of registrars or absentee ballot clerk.  The larger of the two envelopes shall also display the elector's name and voter registration number. The mailing envelope addressed to the elector shall contain the two envelopes, the official absentee ballot, the uniform instructions for the manner of preparing and returning the ballot, in form and substance as provided by the Secretary of State, provisional absentee ballot information, if necessary, and a notice in the form provided by the Secretary of State of all withdrawn, deceased, and disqualified candidates and any substitute candidates pursuant to Code Sections 21-2-134 and 21-2-155 and nothing else.  The uniform instructions shall include information specific to the voting system used for absentee voting concerning the effect of overvoting or voting for more candidates than one is authorized to vote for a particular office and information concerning how the elector may correct

errors in voting the ballot before it is cast including information on how to obtain a replacement ballot if the elector is unable to change the ballot or correct the error.

(c)(1)  The oaths referred to in subsection (b) of this Code section shall be in substantially the following form:

I, the undersigned, do swear (or affirm) that I am a citizen of the United States and of the State of Georgia; that I possess the qualifications of an elector required by the laws of the State of Georgia; that I am entitled to vote in the precinct containing my residence in the primary or election in which this ballot is to be cast; that I am eligible to vote by absentee ballot; that I have not marked or mailed any other absentee ballot, nor will I mark or mail another absentee ballot for voting in such primary or election; nor shall I vote therein in person; and that I have read and understand the instructions accompanying this ballot; and that I have carefully complied with such instructions in completing this ballot.  I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law.

_____
Signature or Mark of Elector

_____
Printed Name of Elector

Oath of Person Assisting Elector (if any):

I, the undersigned, do swear (or affirm) that I assisted the above-named elector in marking such elector's absentee ballot as such elector personally communicated such elector's preference to me; and that such elector is entitled to receive assistance in voting under provisions of subsection (a) of Code Section 21-2-409.

This, the _____ day of _____, _____.

_____
Signature of Person Assisting
Elector

_____
Printed Name of Person
Assisting Elector

H. B. 316
- 21 -

Reason for assistance (Check appropriate square):

☐ Elector is unable to read the English language.

☐ Elector requires assistance due to physical disability.

The forms upon which such oaths are printed shall contain the following information: Georgia law provides that any person who knowingly falsifies information so as to vote illegally by absentee ballot or who illegally gives or receives assistance in voting, as specified in Code Section 21-2-568 or 21-2-573, shall be guilty of a felony."

"(e) The State Election Board shall by rule or regulation establish procedures for the transmission of blank absentee ballots by mail and by electronic transmission for all electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20302, et seq., as amended, and by which such electors may designate whether the elector prefers the transmission of such ballots by mail or electronically, for use in county, state, and federal primaries, elections, and runoffs in this state and, if the Secretary of State finds it to be feasible, for use in municipal primaries, elections, and runoffs. If no preference is stated, the ballot shall be transmitted by mail. The State Election Board shall by rule or regulation establish procedures to ensure to the extent practicable that the procedures for transmitting such ballots shall protect the security and integrity of such ballots and shall ensure that the privacy of the identity and other personal data of such electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20302, et seq., as amended, to whom a blank absentee ballot is transmitted under this Code section is protected throughout the process of such transmission."

## SECTION 31.

Said chapter is further amended by revising Code Section 21-2-385, relating to procedure for voting by absentee ballot and advance voting, as follows:

"21-2-385.

(a) At any time after receiving an official absentee ballot, but before the day of the primary or election, except electors who are confined to a hospital on the day of the primary or election, the elector shall vote his or her absentee ballot, then fold the ballot and enclose and securely seal the same in the envelope on which is printed 'Official Absentee Ballot.' This envelope shall then be placed in the second one, on which is printed the form of the oath of the elector; the name and oath of the person assisting, if any; and other required identifying information. The elector shall then fill out, subscribe, and swear to the oath printed on such envelope. Such envelope shall then be securely sealed and the elector shall then personally mail or personally deliver same to the board of registrars or absentee ballot

clerk, provided that mailing or delivery may be made by the elector's mother, father, grandparent, aunt, uncle, brother, sister, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, sister-in-law, or an individual residing in the household of such elector.  The absentee ballot of a disabled elector may be mailed or delivered by the caregiver of such disabled elector, regardless of whether such caregiver resides in such disabled elector's household.  The absentee ballot of an elector who is in custody in a jail or other detention facility may be mailed or delivered by any employee of such jail or facility having custody of such elector.  An elector who is confined to a hospital on a primary or election day to whom an absentee ballot is delivered by the registrar or absentee ballot clerk shall then and there vote the ballot, seal it properly, and return it to the registrar or absentee ballot clerk.  If the elector registered to vote for the first time in this state by mail and has not previously provided the identification required by Code Section 21-2-220 and votes for the first time by absentee ballot and fails to provide the identification required by Code Section 21-2-220 with such absentee ballot, such absentee ballot shall be treated as a provisional ballot and shall be counted only if the registrars are able to verify the identification and registration of the elector during the time provided pursuant to Code Section 21-2-419.

(b) A physically disabled or illiterate elector may receive assistance in preparing his or her ballot from any person of the elector's choice other than such elector's employer or the agent of such employer or an officer or agent of such elector's union; provided, however, that no person whose name appears on the ballot as a candidate at a particular primary, election, or runoff nor the mother, father, grandparent, aunt, uncle, sister, brother, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, or sister-in-law of such candidate shall offer assistance during such primary, election, or runoff under the provisions of this Code section to any elector who is not related to such candidate.  For the purposes of this subsection, the term 'related to such candidate' shall mean such candidate's mother, father, grandparent, aunt, uncle, sister, brother, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, or sister-in-law. The person rendering assistance to the elector in preparing the ballot shall sign the oath printed on the same envelope as the oath to be signed by the elector.  Any person who willfully violates this subsection shall be guilty of a felony and, upon conviction thereof, shall be sentenced to imprisonment for not less than one nor more than ten years or to pay a fine not to exceed $100,000.00, or both, for each such violation.

(c) When an elector applies in person for an absentee ballot, after the absentee ballots have been printed, the absentee ballot may be issued to the elector at the time of the application therefor within the confines of the registrar's or absentee ballot clerk's office if such

application is made during the advance voting period as provided in subsection (d) of this Code section or may be mailed to the elector, depending upon the elector's request. If the ballot is issued to the elector at the time of application, the elector shall then and there within the confines of the registrar's or absentee ballot clerk's office vote and return the absentee ballot as provided in subsections (a) and (b) of this Code section. In the case of persons voting in accordance with subsection (d) of this Code section, the board of registrars or absentee ballot clerk shall furnish accommodations to the elector to ensure the privacy of the elector while voting his or her absentee ballot.

(d)(1)  There shall be a period of advance voting that shall commence:

(A)  On the fourth Monday immediately prior to each primary or election;

(B)  On the fourth Monday immediately prior to a runoff from a general primary;

(C)  On the fourth Monday immediately prior to a runoff from a general election in which there are candidates for a federal office on the ballot in the runoff; and

(D)  As soon as possible prior to a runoff from any other general election in which there are only state or county candidates on the ballot in the runoff but no later than the second Monday immediately prior to such runoff

and shall end on the Friday immediately prior to each primary, election, or runoff. Voting shall be conducted during normal business hours on weekdays during such period and shall be conducted on the second Saturday prior to a primary or election during the hours of 9:00 A.M. through 4:00 P.M.; provided, however, that in primaries and elections in which there are no federal or state candidates on the ballot, no Saturday voting hours shall be required; and provided, further, that, if such second Saturday is a public and legal holiday pursuant to Code Section 1-4-1, if such second Saturday follows a public and legal holiday occurring on the Thursday or Friday immediately preceding such second Saturday, or if such second Saturday immediately precedes a public and legal holiday occurring on the following Sunday or Monday, such advance voting shall not be held on such second Saturday but shall be held on the third Saturday prior to such primary or election. Except as otherwise provided in this paragraph, counties and municipalities may extend the hours for voting beyond regular business hours and may provide for additional voting locations pursuant to Code Section 21-2-382 to suit the needs of the electors of the jurisdiction at their option.

(2) The registrars or absentee ballot clerk, as appropriate, shall provide reasonable notice to the electors of their jurisdiction of the availability of advance voting as well as the times, dates, and locations at which advance voting will be conducted. In addition, the registrars or absentee ballot clerk shall notify the Secretary of State in the manner prescribed by the Secretary of State of the times, dates, and locations at which advance voting will be conducted."

# SECTION 32.

Said chapter is further amended by revising subparagraphs (a)(1)(C) and (a)(1)(D) of Code Section 21-2-386, relating to safekeeping, certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to manager, duties of managers, precinct returns, and notification of challenged elector, as follows:

"(C)  If the elector has failed to sign the oath, or if the signature does not appear to be valid, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise found disqualified to vote, the registrar or clerk shall write across the face of the envelope 'Rejected,' giving the reason therefor.  The board of registrars or absentee ballot clerk shall promptly notify the elector of such rejection, a copy of which notification shall be retained in the files of the board of registrars or absentee ballot clerk for at least two years.  Such elector shall have until the end of the period for verifying provisional ballots contained in subsection (c) of Code Section 21-2-419 to cure the problem resulting in the rejection of the ballot.  The elector may cure a failure to sign the oath, an invalid signature, or missing information by submitting an affidavit to the board of registrars or absentee ballot clerk along with a copy of one of the forms of identification enumerated in subsection (c) of Code Section 21-2-417 before the close of such period.  The affidavit shall affirm that the ballot was submitted by the elector, is the elector's ballot, and that the elector is registered and qualified to vote in the primary, election, or runoff in question.  If the board of registrars or absentee ballot clerk finds the affidavit and identification to be sufficient, the absentee ballot shall be counted.

(D)  An elector who registered to vote by mail, but did not comply with subsection (c) of Code Section 21-2-220, and who votes for the first time in this state by absentee ballot shall include with his or her application for an absentee ballot or in the outer oath envelope of his or her absentee ballot either one of the forms of identification listed in subsection (a) of Code Section 21-2-417 or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of such elector.  If such elector does not provide any of the forms of identification listed in this subparagraph with his or her application for an absentee ballot or with the absentee ballot, such absentee ballot shall be deemed to be a provisional ballot and such ballot shall only be counted if the registrars are able to verify current and valid identification of the elector as provided in this subparagraph within the time period for verifying provisional ballots pursuant to Code Section 21-2-419.  The board of registrars or absentee ballot clerk shall promptly notify the elector that such ballot is deemed a provisional ballot and shall provide information

H. B. 316
- 25 -

on the types of identification needed and how and when such identification is to be submitted to the board of registrars or absentee ballot clerk to verify the ballot."

## SECTION 33.

Said chapter is further amended by revising Code Section 21-2-388, relating to cancellation of absentee ballots of electors who are present in election precinct during primaries and elections, as follows:

"21-2-388.

When an absentee ballot which has been voted shall be returned to and received by the board of registrars, it shall be deemed to have been voted then and there; and no other ballot shall be issued to the same elector. If an elector has requested to vote by absentee ballot and has not received such absentee ballot, has such ballot in his or her possession, has not yet returned such ballot, or has returned such ballot but the registrars have not received such ballot, such elector may have the absentee ballot canceled and vote in person on the day of the primary, election, or runoff in one of the following ways:

(1) If the elector is in possession of the ballot, by surrendering the absentee ballot to the poll manager of the precinct in which the elector's name appears on the electors list and then being permitted to vote the regular ballot. The poll manager shall mark 'Canceled' and the date and time across the face of the absentee ballot and shall initial same. The poll manager shall also make appropriate notations beside the name of the elector on the electors list. All such canceled absentee ballots shall be returned with other ballots to the superintendent; or

(2) If the elector has not received the ballot, has not yet returned the ballot, or if the elector has returned the ballot but the registrars have not received the ballot, by appearing in person before the managers of the elector's precinct, the registrars, or the absentee ballot clerk and requesting in writing that the envelope containing the elector's absentee ballot be marked 'Canceled.' After having satisfied themselves as to the identity of such elector and confirming that the elector's absentee ballot has not yet been received by the board of registrars, the registrars or the absentee ballot clerk shall grant the request and shall notify the managers of the elector's precinct as to such action so as to permit the elector to vote in person in that precinct. If the absentee ballot is in the mail, has not yet been returned, or its exact location is unknown, the registrar or the absentee ballot clerk shall write 'Canceled' beside the elector's name on the master list of absentee voters and shall cancel the ballot itself as soon as it is received. If the location of the requested absentee ballot is known to the elector and it has not been surrendered to the poll manager, the elector shall destroy the absentee ballot after casting his or her vote in person. Canceled absentee ballots shall be disposed of in the same manner as provided

in subsection (a) of Code Section 21-2-386 for absentee ballots returned too late to be cast."

## SECTION 34.

Said chapter is further amended by revising subsection (b) of Code Section 21-2-409, relating to assisting electors who cannot read English or who have disabilities, as follows:

"(b) Any elector who is entitled to receive assistance in voting under this Code section shall be permitted by the managers to select any person of the elector's choice except such elector's employer or agent of that employer or officer or agent of such elector's union to enter the voting compartment or booth with him or her to assist in voting, such assistance to be rendered inside the voting compartment or booth. No person whose name appears on the ballot as a candidate at a particular election nor the mother, father, grandparent, aunt, uncle, sister, brother, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, or sister-in-law of that candidate shall offer assistance during that particular election under the provisions of this Code section to any voter who is not related to such candidate. For the purposes of this paragraph, 'related to such candidate' shall mean the candidate's mother, father, grandparent, aunt, uncle, sister, brother, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, or sister-in-law. Notice of the availability of such assistance shall be prominently posted at each polling place."

## SECTION 35.

Said chapter is further amended by revising subsection (e) of Code Section 21-2-413, relating to conduct of voters, campaigners, and others at polling places generally, as follows:

"(e) No person shall use photographic or other electronic monitoring or recording devices, cameras, or cellular telephones while such person is in a polling place while voting is taking place; provided, however, that a poll manager, in his or her discretion, may allow the use of photographic devices in the polling place under such conditions and limitations as the election superintendent finds appropriate, and provided, further, that no photography shall be allowed of a ballot or the face of a voting machine or DRE unit or electronic ballot marker while an elector is voting such ballot or machine or DRE unit or using such electronic ballot marker, and no photography shall be allowed of an electors list, electronic electors list, or the use of an electors list or electronic electors list. This subsection shall not prohibit the use of photographic or other electronic monitoring or recording devices, cameras, or cellular telephones by poll officials for official purposes."

## SECTION 36.

Said chapter is further amended by revising subsection (f) of Code Section 21-2-417.1, relating to voter identification cards, as follows:

"(f)  A Georgia voter identification card shall remain valid so long as a person resides in the same county and remains qualified to vote.  It shall be the duty of a person who moves his or her residence within the State of Georgia outside of the county in which it was issued to surrender his or her card to the board of registrars of the county of his or her new residence; and such person may after such surrender apply for and receive a new card if such person is otherwise eligible under this Code section.  It shall be the duty of a person who moves his or her residence outside the State of Georgia or who ceases to be qualified to vote to surrender his or her card to the board of registrars by which it was issued."

## SECTION 37.

Said chapter is further amended by revising subsection (e) of Code Section 21-2-418, relating to provisional ballots, as follows:

"(e)  The registrars shall establish a free access system, such as a toll-free telephone number or internet website, by which any elector who casts a provisional ballot in a primary or election, or runoff of either, in which federal candidates are on the ballot may ascertain whether such ballot was counted and, if such ballot was not counted, the reason why such ballot was not counted.  The registrars shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by such free access system.  Access to such information about an individual provisional ballot shall be restricted to the elector who cast such ballot. At the earliest time possible after the casting of a provisional ballot, the election superintendent shall notify the Secretary of State that an elector cast a provisional ballot, whether such ballot was counted, and, if such ballot was not counted, the reason why such ballot was not counted."

## SECTION 38.

Said chapter is further amended by revising Code Section 21-2-419, relating to validation of provisional ballots and reporting to Secretary of State, as follows:

"21-2-419.

(a)  A person shall cast a provisional ballot on the same type of ballot that is utilized by the county or municipality.  Such provisional ballot shall be sealed in double envelopes as provided in Code Section 21-2-384 and shall be deposited by the person casting such ballot in a secure, sealed ballot box.

(b)  At the earliest time possible after the casting of a provisional ballot, but no later than the day after the primary or election in which such provisional ballot was cast, the board of registrars of the county or municipality, as the case may be, shall be notified by the election superintendent that provisional ballots were cast in the primary or election and the registrars shall be provided with the documents completed by the person casting the provisional ballot as provided in Code Section 21-2-418.  Provisional ballots shall be securely maintained by the election superintendent until a determination has been made concerning their status.  The board of registrars shall immediately examine the information contained on such documents and make a good faith effort to determine whether the person casting the provisional ballot was entitled to vote in the primary or election.  Such good faith effort shall include a review of all available voter registration documentation, including registration information made available by the electors themselves and documentation of modifications or alterations of registration data showing changes to an elector's registration status.  Additional sources of information may include, but are not limited to, information from the Department of Driver Services, Department of Family and Children Services, Department of Natural Resources, public libraries, or any other agency of government including, but not limited to, other county election and registration offices.

(c)(1)  If the registrars determine after the polls close, but not later than three days following the primary or election, that the person casting the provisional ballot timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall notify the election superintendent and the provisional ballot shall be counted and included in the county's or municipality's certified election results.

(2)  If the registrars determine after the polls close, but not later than three days following the primary or election, that the person voting the provisional ballot timely registered and was eligible and entitled to vote in the primary or election but voted in the wrong precinct, then the board of registrars shall notify the election superintendent.  The superintendent shall count such person's votes which were cast for candidates in those races for which the person was entitled to vote but shall not count the votes cast for candidates in those races in which such person was not entitled to vote.  The superintendent shall order the proper election official at the tabulating center or precinct to prepare an accurate duplicate ballot containing only those votes cast by such person in those races in which such person was entitled to vote for processing at the tabulating center or precinct, which shall be verified in the presence of a witness.  Such duplicate ballot shall be clearly labeled with the word 'Duplicate,' shall bear the designation of the polling place, and shall be given the same serial number as the original ballot.  The original ballot shall be retained.

(3)  If the registrars determine that the person casting the provisional ballot did not timely register to vote or was not eligible or entitled to vote in such primary or election or shall be unable to determine within three days following such primary or election whether such person timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall so notify the election superintendent and such ballot shall not be counted.  The election superintendent shall mark or otherwise document that such ballot was not counted and shall deliver and store such ballots with all other ballots and election materials as provided in Code Section 21-2-500.

(d)(1)  At the earliest time possible after a determination is made regarding a provisional ballot, the board of registrars shall notify in writing those persons whose provisional ballots were not counted that their ballots were not counted because of the inability of the registrars to verify that the persons timely registered to vote or other proper reason.  The registrars shall process the official voter registration form completed by such persons pursuant to Code Section 21-2-418 and shall add such persons to the electors list if found qualified.

(2)  At the earliest time possible after a determination is made regarding a provisional ballot, the board of registrars shall notify in writing those electors who voted in the wrong precinct and whose votes were partially counted of their correct precinct.

(e)  The board of registrars shall complete a report in a form designated by the Secretary of State indicating the number of provisional ballots cast and counted in the primary or election."


## SECTION 39.

Said chapter is further amended by revising Code Section 21-2-482, relating to absentee ballots for precincts using optical scanning voting equipment, as follows:

"21-2-482.

Ballots in a precinct using optical scanning voting equipment for voting by absentee electors shall be prepared sufficiently in advance by the superintendent and shall be delivered to the board of registrars as provided in Code Section 21-2-384.  Such ballots shall be marked 'Official Absentee Ballot' and shall be in substantially the form for ballots required by Article 8 of this chapter, except that in counties or municipalities using voting machines, direct recording electronic (DRE) units, or ballot scanners, the ballots may be in substantially the form for the ballot labels required by Article 9 of this chapter or in such form as will allow the ballot to be machine tabulated.  Every such ballot shall have printed on the face thereof the following:

'I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law.'

The form for either ballot shall be determined and prescribed by the Secretary of State."

## SECTION 40.

Said chapter is further amended by revising subsection (k) of Code Section 21-2-493, relating to computation, canvassing, and tabulation of returns, investigation of discrepancies in vote counts, recount procedure, certification of returns, and change in returns, as follows:

"(k)  As the returns from each precinct are read, computed, and found to be correct or corrected as aforesaid, they shall be recorded on the blanks prepared for the purpose until all the returns from the various precincts which are entitled to be counted shall have been duly recorded; then they shall be added together, announced, and attested by the assistants who made and computed the entries respectively and shall be signed by the superintendent. The consolidated returns shall then be certified by the superintendent in the manner required by this chapter.  Such returns shall be certified by the superintendent not later than 5:00 P.M. on the second Friday following the date on which such election was held and such returns shall be immediately transmitted to the Secretary of State; provided, however, that such certification date may be extended by the Secretary of State in his or her discretion if necessary to complete a precertification audit as provided in Code Section 21-2-498."

## SECTION 41.

Said chapter is further amended by revising subsections (a) and (c) of Code Section 21-2-495, relating to procedure for recount or recanvass of votes and losing candidate's right to a recount, and adding new subsections to read as follows:

"(a) In precincts where paper ballots or scanning ballots have been used, the superintendent may, either of his or her own motion or upon petition of any candidate or political party, order the recount of all the ballots for a particular precinct or precincts for one or more offices in which it shall appear that a discrepancy or error, although not apparent on the face of the returns, has been made.  Such recount may be held at any time prior to the certification of the consolidated returns by the superintendent and shall be conducted under the direction of the superintendent.  Before making such recount, the superintendent shall give notice in writing to each candidate and to the county or municipal chairperson of each party or body affected by the recount.  Each such candidate may be present in person or by representative, and each such party or body may send two representatives to be present at such recount.  If upon such recount, it shall appear that the original count by the poll

officers was incorrect, such returns and all papers being prepared by the superintendent shall be corrected accordingly."

"(c)(1)  Whenever the difference between the number of votes received by a candidate who has been declared nominated for an office in a primary election or who has been declared elected to an office in an election or who has been declared eligible for a run-off primary or election and the number of votes received by any other candidate or candidates not declared so nominated or elected or eligible for a runoff shall be not more than one-half of 1 percent of the total votes which were cast for such office therein, any such candidate or candidates receiving a sufficient number of votes so that the difference between his or her vote and that of a candidate declared nominated, elected, or eligible for a runoff is not more than one-half of 1 percent of the total votes cast, within a period of two business days following the certification of the election results, shall have the right to a recount of the votes cast, if such request is made in writing by the losing candidate. If the office sought is a federal or state office voted upon by the electors of more than one county, the request shall be made to the Secretary of State who shall direct that the recount be performed in all counties in which electors voted for such office and notify the superintendents of the several counties involved of the request.  In all other cases, the request shall be made to the superintendent.  The superintendent or superintendents shall order a recount of such votes to be made immediately.  If, upon such recount, it is determined that the original count was incorrect, the returns and all papers prepared by the superintendent, the superintendents, or the Secretary of State shall be corrected accordingly and the results recertified.

(2)  Whenever the difference between the number of votes for approval or rejection of a constitutional amendment or binding referendum question shall be not more than one-half of 1 percent of the total votes which were cast on such amendment or question therein, within a period of two business days following the certification of the election results, the Constitutional Amendments Publication Board shall be authorized in its discretion to call for a recount of the votes cast with regard to such amendment or question.  In the case of a constitutional amendment or state-wide referendum question or a question voted upon by the electors of more than one county, the board shall direct the Secretary of State to cause a recount to be performed with regard to such amendment or question in all counties involved and notify the superintendents of the recount.  In the case of questions voted upon by the electors of only one county or municipality, the board shall direct the Secretary of State to cause a recount to be conducted by the county or municipality involved and the Secretary of State shall notify the superintendent involved of the recount.  Upon notification, the superintendent or superintendents shall order a recount of such votes to be made immediately.  If, upon such recount, it is determined that the

original count was incorrect, the returns and all papers prepared by the superintendent, the superintendents, or the Secretary of State shall be corrected accordingly and the results recertified."

"(e)  The State Election Board shall be authorized to promulgate rules, regulations, and procedures to implement and administer the provisions of this Code section."

## SECTION 42.

Said chapter is further amended by revising Code Section 21-2-498, which was previously reserved, as follows:

"21-2-498.

(a)  As used in this Code section, the term:

  (1)  'Incorrect outcome' is when the winner of a contest or the answer to a proposed constitutional amendment or question would be different from the results found in a manual recount of paper official ballots.

  (2)  'Risk limit' means the largest statistical probability that an incorrect outcome is not detected or corrected in a risk-limiting audit.

  (3)  'Risk-limiting audit' means an audit protocol that makes use of statistical methods and is designed to limit to acceptable levels the risk of certifying a preliminary election outcome that constitutes an incorrect outcome.

(b)  As soon as possible, but no later than the November, 2020, general election, the local election superintendents shall conduct precertification tabulation audits for any federal or state general election in accordance with requirements set forth by rule or regulation of the State Election Board.  Audits performed under this Code section shall be conducted by manual inspection of random samples of the paper official ballots.

(c)  In conducting each audit, the local election superintendents shall:

  (1)  Complete the audit prior to final certification of the contest;

  (2)  Ensure that all types of ballots are included in the audit, whether cast in person, by absentee ballot, advance voting, provisional ballot, or otherwise;

  (3)  Provide a report of the unofficial final tabulated vote results for the contest to the public prior to conducting the audit;

  (4)  Complete the audit in public view; and

  (5)  Provide details of the audit to the public within 48 hours of completion.

(d)  The State Election Board shall be authorized to promulgate rules, regulations, and procedures to implement and administer the provisions of this Code section.   The procedures prescribed by the State Election Board shall include security procedures to ensure that collection of validly cast ballots is complete, accurate, and trustworthy throughout the audit.

(e) The Secretary of State shall conduct a risk-limiting audit pilot program with a risk limit of not greater than 10 percent in one or more counties by December 31, 2021. The Secretary of State shall review the results of the pilot program and, within 90 days following the election in which such pilot program is used, shall provide the members of the General Assembly with a comprehensive report, including a plan on how to implement risk-limiting audits state wide. If such risk-limiting audit is successful in achieving the specified confidence level within five business days following the election for which it was conducted, then all audits performed pursuant to this Code section shall be similarly conducted, beginning not later than November 1, 2024."

### SECTION 43.

Said chapter is further amended by revising subsection (b) of Code Section 21-2-499, relating to duty of Secretary of State as to tabulation, computation, and canvassing of votes for state and federal officers and certification of presidential electors by Governor, as follows:

"(b) The Secretary of State shall also, upon receiving the certified returns for presidential electors, proceed to tabulate, compute, and canvass the votes cast for each slate of presidential electors and shall immediately lay them before the Governor. Not later than 5:00 P.M. on the seventeenth day following the date on which such election was conducted, the Secretary of State shall certify the votes cast for all candidates described in subparagraph (a)(4)(A) of Code Section 21-2-497 and upon all questions voted for by the electors of more than one county and shall no later than that same time lay the returns for presidential electors before the Governor. The Governor shall enumerate and ascertain the number of votes for each person so voted and shall certify the slates of presidential electors receiving the highest number of votes. The Governor shall certify the slates of presidential electors no later than 5:00 P.M. on the eighteenth day following the date on which such election was conducted. Notwithstanding the deadlines specified in this Code section, such times may be altered for just cause by an order of a judge of superior court of this state."

### SECTION 44.

Said chapter is further amended by revising paragraph (8) of Code Section 21-2-566, relating to interference with primaries and elections generally, as follows:

"(8) Willfully tampers with any electors list, voter's certificate, numbered list of voters, ballot box, voting machine, direct recording electronic (DRE) equipment, electronic ballot marker, or tabulating machine."

## SECTION 45.

Said chapter is further amended by revising paragraph (3) of Code Section 21-2-579, relating to fraudulently allowing ballot or voting machine to be seen, casting unofficial ballot, and receiving unauthorized assistance in voting, as follows:

"(3)  Without having made the affirmation under oath or declaration required by Code Section 21-2-409, or when the disability which he or she declared at the time of registration no longer exists, permits another to accompany him or her into the voting compartment or voting machine booth or to mark his or her ballot or to register his or her vote on the voting machine or direct recording electronic (DRE) equipment or use an electronic ballot marker; or"

## SECTION 46.

Said chapter is further amended by revising Code Section 21-2-580, relating to tampering with, damaging, improper preparation of, or prevention of proper operation of voting machines, as follows:

"21-2-580.

Any person who:

(1)  Unlawfully opens, tampers with, or damages any voting machine or electronic ballot marker or tabulating machine to be used or being used at any primary or election;

(2)  Willfully prepares a voting machine or an electronic ballot marker or tabulating machine for use in a primary or election in improper order for voting; or

(3)  Prevents or attempts to prevent the correct operation of such electronic ballot marker or tabulating machine or voting machine

shall be guilty of a felony."

## SECTION 47.

Said chapter is further amended by revising Code Section 21-2-582, relating to tampering with, damaging, or preventing of proper operation of direct recording electronic equipment or tabulating device, as follows:

"21-2-582.

Any person who tampers with or damages any direct recording electronic (DRE) equipment or electronic ballot marker or tabulating machine or device to be used or being used at or in connection with any primary or election or who prevents or attempts to prevent the correct operation of any direct recording electronic (DRE) equipment or electronic ballot marker or tabulating machine or device shall be guilty of a felony."

## SECTION 48.

Said chapter is further amended by revising Code Section 21-2-582.1, relating to penalty for voting equipment modification, as follows:

"21-2-582.1.

(a)  For the purposes of this Code section, the term 'voting equipment' shall mean a voting machine, tabulating machine, optical scanning voting system, direct recording electronic voting system, or electronic ballot marker.

(b)  Any person or entity, including, but not limited to, a manufacturer or seller of voting equipment, who alters, modifies, or changes any aspect of such voting equipment without prior approval of the Secretary of State is guilty of a felony."

## SECTION 49.

Said chapter is further amended by revising Code Section 21-2-587, relating to frauds by poll workers, as follows:

"21-2-587.

Any poll officer who willfully:

(1)  Makes a false return of the votes cast at any primary or election;

(2)  Deposits fraudulent ballots in the ballot box or certifies as correct a false return of ballots;

(3)  Registers fraudulent votes upon any voting machine or certifies as correct a return of fraudulent votes cast upon any voting machine;

(4)  Makes any false entries in the electors list;

(5)  Destroys or alters any ballot, voter's certificate, or electors list;

(6)  Tampers with any voting machine, direct recording electronic (DRE) equipment, electronic ballot marker, or tabulating machine or device;

(7)  Prepares or files any false voter's certificate not prepared by or for an elector actually voting at such primary or election; or

(8)  Fails to return to the officials prescribed by this chapter, following any primary or election, any keys of a voting machine; ballot box; general or duplicate return sheet; tally paper; oaths of poll officers; affidavits of electors and others; record of assisted voters; numbered list of voters; electors list; voter's certificate; spoiled and canceled ballots; ballots deposited, written, or affixed in or upon a voting machine; DRE, electronic ballot marker, or tabulating machine memory cards; or any certificate or any other paper or record required to be returned under this chapter

shall be guilty of a felony and, upon conviction thereof, shall be sentenced to imprisonment for not less than one nor more than ten years or to pay a fine not to exceed $100,000.00, or both."

## SECTION 50.

This Act shall become effective upon its approval by the Governor or upon its becoming law without such approval.

## SECTION 51.

All laws and parts of laws in conflict with this Act are repealed.