IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONNA CURLING, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO:  1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' STATUS REPORT

Defendants Secretary of State Brad Raffensperger, State Election Board, and State Election Board Members (Collectively, "State Defendants") submit this response to the Coalition Plaintiffs' ("Coalition" or "Plaintiffs") Status Report [Doc. 351] to respond to Plaintiffs' arguments and provide the Court with State Defendants' assessment of the current status of the case and upcoming elections that may be relevant to the Court's consideration of this case.

## INTRODUCTION

The procedural history of this case is tortured and confusing: four different Complaints and more than 350 documents have been filed over two years, and the State Defendants have still not answered a single Complaint.  In the light of this

situation, and to achieve some normalcy, the State Defendants urge the Court to require all parties to proceed in accordance with the Federal Rules of Civil Procedure.

Unless and until Plaintiffs amend their Complaints, they must be held to the actual claims pleaded as this case proceeds into discovery. In addition, it appears that Plaintiffs concede any challenge to Georgia's yet-to-be procured ballot marking devices ("BMDs") is not ripe. They are correct. The State has issued a request for proposal for the BMDs, but nothing has been awarded and no BMDs are in the field. Given the claims in Plaintiffs' Complaints and the current status of a new statewide voting system, the dispute in this case is now focused on the use of to-be-replaced AccuVote DRE machines ("DRE") in 2019 elections.

As both a demonstration of good faith, and to demonstrate that delay is not the aim, State Defendants will not file a motion to dismiss for mootness, although Plaintiffs' claims will continue to fade while the new voting system is implemented "as soon as possible," which the law requires. *See* [Doc. 357-2, lines 372–83]. State Defendants will answer the current Complaints as soon as this Court rules on the remaining issues in the pending motions to dismiss. The relief now requested by Plaintiffs—outside of their Complaints—does, however, raise concern regarding the Court's ability to grant effective relief prior to

implementation of the new voting system and the unintended consequences such relief could impose. Finally, State Defendants see no reason for expedited discovery—a regular four-month discovery track focused on the only surviving issue will meet Plaintiffs' discovery needs before the November 2019 elections.

1. **Plaintiffs' claims are limited to those raised in the Complaints - the use of DREs in Georgia elections.**

    A.  *Plaintiffs' Complaints only allege harm stemming from the use of DREs.*

    The only remaining Counts in the Curling Plaintiffs' Second Amended Complaint [Doc. 70] and the Coalition Plaintiffs' Third Amended Complaint [Doc. 226] are Plaintiffs' fundamental-right-to-vote and mandamus claims grounded in an identical theory: that Plaintiffs will be harmed as a result of the State's use of DREs in elections.[1] [Doc. 226, ¶¶ 170, 177-79; Doc. 70, ¶¶ 61, 69-71]. The allegations in both Complaints focus specifically on Georgia's use of DREs in elections, particularly the lack of a paper audit capacity. *Id.* at ¶ 2. And the only relief Plaintiffs seek is to stop the state from using DREs in elections and mandate the use of a new paper ballot system. *See, e.g.*, *id.* at pp. 67-68.

---

[1] The Coalition Plaintiffs limit the "Relevant Upcoming Elections" about which they seek relief to elections conducted in 2018 and make no claims about subsequent elections. [Doc. 226, ¶ 4]. The Curling Plaintiffs include elections beyond those conducted in 2018. [Doc. 70, ¶ 11].

Despite Plaintiffs' Status Report including a lengthy discussion of BMDs, Plaintiffs conceded at the status conference on Tuesday that any claims about BMDs are not ripe. The State's procurement process and claims about new machines are beyond the scope of Plaintiffs' Complaints and this case. If Plaintiffs do not file an amended complaint—and they indicated at the status conference that they do not plan to do so—the only issues in this case are those raised in both Complaints: the State's use of DREs in the "Relevant Upcoming Elections" as defined by Plaintiffs.

### B. BMDs are not addressed in either Complaint and are not at issue in this case.

As Plaintiffs correctly note in their Status Report, HB316 was signed into law on April 2, 2019 and mandates the replacement of DREs, the election management system, and the electronic poll books with a new voting system using BMDs. The legislation requires the new system to be put into place "as soon as possible," [Doc. 357-2, lines 372–83], and State Defendants are implementing the legislation at that speed. Indeed, the specific timeline is set by the Request for Proposals: potential vendors must be able to initiate a ten county pilot by August 2019, provide representative equipment for training to local jurisdictions by December 2019, and fully deliver the entire statewide system no later than the first quarter of 2020. [Doc. 357-4 at 7].

Plaintiffs' Complaints, however, state no claims about BMDs and do not even mention them. Plaintiffs' reliance on general allegations in the Complaint is hardly sufficient to place any future voting system at issue in this case, and Plaintiffs' multiple letters to counsel for the State do not amount to a Complaint placing the new devices at issue either. In any event, as discussed at the hearing, any claims about BMDs are not ripe because the State's procurement of BMDs has only just begun, initial proposals are due from vendors April 23, 2019. [Doc. 357-3]. If Plaintiffs wish to challenge BMDs, without regard to whether such challenge is now ripe, they must file amended complaints. Until then, BMDs have no place in this case.

C. *State Defendants will not file a motion to dismiss for mootness.*

State Defendants have serious concerns about the mootness of the claims because the signing of HB 316 and the procurement process are events that make it "impossible for a court to grant any effectual relief whatever." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277, 2287 (2012); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000). The duty of the Court "is to decide actual controversies by a judgment which can be carried into effect." *Mills v. Green*, 159 U.S. 651, 653 (1895) (emphasis added). The inability to grant any meaningful relief is a jurisdictional

issue for federal courts, because there is no longer a case or controversy under Article III of the Constitution.  *Nyaga v. Ashcroft*, 323 F.3d 906, 916 (11th Cir. 2003); *see also Lemon v. Geren*, 514 F.3d 1312, 1315-16 (D.C. Cir. 2008); *Burlington N. R.R. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996).

Given the implementation schedule for replacing a significant portion of Georgia's election system—including the current election management system and DREs—State Defendants do not believe this Court could order any meaningful relief at this point beyond the action already taken by the legislature and Secretary of State.  In other words, the legislature has ordered the State Defendants to replace DREs "as soon as possible," [Doc. 357-2, lines 372–83], and the State cannot move more quickly than it is moving to update its election systems, recognizing the issues this Court explained in its Order.[2]  [Doc. 309].  In addition, Plaintiffs

---

[2] As this Court also recognized, ceasing use of DREs and moving to an all-paper-ballot election system is not a simple proposition. [Doc. 309 at 41-42]. Georgia's current scanners and infrastructure are not equipped to conduct a 100% paper-ballot election and, as Plaintiffs recognize, the state would still have to procure devices to allow disabled voters to vote as required by federal law if it was unable to use DREs. *See* [Doc. 351 at 8 n. 7]; *see also* SAFE Commission Report, p. 10, http://sos.ga.gov/admin/uploads/SAFE_Commission_Report_FINAL_(1-10-18).pdf. Moving to an intermediate system for the 2019 elections would thus require the procurement of additional equipment and divert resources from efforts to implement the new voting system, interfering with the State's ability to quickly move away from DREs.

have not pleaded in any Complaint that they are residents of cities that will be holding elections in 2019.

Despite these concerns that go to this Court's jurisdiction, State Defendants will not now file a motion to dismiss on the basis of mootness so that this case can proceed in an orderly manner.

**2.     Posture of the case and further proceedings.**

As all parties and the Court acknowledged at the status conference, the docket in this case is long and complex and counsel for both Plaintiffs and Defendants have rotated out at various points. As such, Defendants identify the following the issues that need to be resolved as this case moves forward and provide a proposed schedule.

> A.     *Motions to dismiss remain pending and the time to file an Answer has not yet been triggered.*

As indicated in the Minute Entry for the September 12, 2018 proceedings, the Court deferred ruling on the issues of res judicata and collateral estoppel. [Doc. 298]. Subsequently, in its order on the motions to dismiss and for preliminary injunction, the Court specifically noted it would address all issues in the motions, other than the jurisdictional questions, in a separate, subsequent order. [Doc. 309 at 2 n.1]. The Court later granted the State Defendants' Motion to Stay pending resolution of their appeal. [Doc. 336 at 4]. As a result, the motions to dismiss of

the State Defendants and Defendant Fulton County Board of Registration and Elections ("Fulton Board") with respect to Plaintiffs' failure to state a claim, res judicata, and collateral estoppel are still before this Court.[3]

Because Defendants' motions to dismiss remain pending before the Court, the time to file an answer has not yet occurred. The Local Rules and this Court's stay of discovery [Doc. 56] also prevent the discovery period from beginning. State Defendants are prepared to answer the Complaints within 14 days if the Court denies the remaining grounds to dismiss. Fed. R. Civ. P. 12(a)(4). Discovery can then begin in accordance with the Local Rules.

> B. *Discovery must be limited to jurisdictions where 2019 elections will be held using DREs and should proceed as in any other similar civil case.*

If the Court denies the remaining grounds in the pending motions to dismiss, the discovery process can begin after answers are filed.[4] Despite Plaintiffs' claims

---

[3] Plaintiffs' "Motion for Additional Injunctive Relief" [Doc. 327] also remains pending before this Court because it was filed between the Court's September 17 Order and the Court's Order staying all pending motions. Given the entry of the stay, Defendants have not yet responded to that motion. Plaintiffs also now state they intend to "supplement" this motion. [Doc. 351 at 8]. State Defendants suggest that the Court should deny Plaintiffs' current motion without prejudice [Doc. 327] and allow Plaintiffs to file a new motion for preliminary injunction to which State Defendants can then respond in the normal course under the procedural rules.
[4] State Defendants maintain their prior objections related to disclosure of sensitive information about GEMS and DREs, including objecting to destructive testing and

about discovery in their Status Report, Defendants respond by identifying three issues the Court will need to address related to discovery.

First, because this case is focused solely on the potential use of DREs in elections prior to the implementation of a new voting system by March 31, 2020, discovery should be limited to those jurisdictions using DREs in 2019 elections. There are currently no pending or expected statewide elections which will use DREs.[5] State Defendants previously notified Plaintiffs that they reasonably anticipate that 115 counties may utilize DREs in elections in 2019, based on the average of prior odd-numbered-year elections. Following the status conference, Defendants obtained information from the Georgia Municipal Association on the number of municipalities which will hold elections in 2019. That association identified 324 municipalities with a potential election in 2019.[6] Discovery should be limited to these jurisdictions.

---

forensic imaging of the voting system, and will not waive those objections in discovery.

[5] As discussed at the status conference, the Secretary of State has not yet set the date for the 2020 Presidential Preference Primary.

[6] Special Elections and various local referenda or SPLOSTs may also be scheduled in 2019. State Defendants also anticipate that at least one special election will be held to replace Representative Andy Welch, who is resigning. State Defendants will promptly notify the Court and opposing counsel when they learn of any called special election or receive notice of any SPLOST or referendum.

Second, discovery in this case should proceed on the four-month track outlined by the Local Rules with no need for an expedited schedule. A four-month track provides enough time for Plaintiffs and Defendants to discover information relevant to their claims and defenses before the State fully implements a new system. Given the focused nature of the claims that remain active in this case, there is no need to expedite discovery.

Third, since almost all elections held in 2019 are municipal elections, the Court should give the affected municipalities an opportunity to be heard because they will be required to implement (and pay for) any relief granted by this Court prior to implementation of a new statewide voting system. Unlike counties, cities have leeway in how to conduct their elections. While most cities contract with their counties to conduct city elections, they are not required to do so. O.C.G.A. § 21-2-300(e). As a result, municipalities throughout the state will bear the burden and expenses associated with those elections. If counties are unable to use their existing election system to conduct municipal elections, they may choose not to enter into contractual agreements with the affected municipalities, leaving the municipalities with limited time to implement and fund an interim election system. State Defendants anticipate that municipal officials will seek to be heard by the

Court on any potential injunctive relief for 2019 and should be heard because of their interest in this case.

C.   *State Defendants' proposed schedule.*

State Defendants recommend the following schedule for the next steps in this case, assuming this Court can rule on the remaining issues in the motions to dismiss by April 30.  All dates can be adjusted if that ruling takes place sooner:

| Date | Action |
| --- | --- |
| By April 30, 2019 | Ruling on remaining elements of the motion to dismiss |
| May 14, 2019 | Defendants file answers |
| May 14, 2019 | Discovery begins |
| September 13, 2019 | Discovery ends |
| September 27, 2019 | Dispositive motions due |
| October 11, 2019 | Responses to dispositive motions due |
| October 18, 2019 | Replies to dispositive motions due |

D.   *What is publicly available regarding bidder identity.*

While no part of the bidding or procurement process to obtain the new election system is before this Court, the Court requested additional information regarding what is public during the bidding process.  Under Georgia law related to procurement, the identity of bidders only becomes public when the Notice of Intent to Award is issued.  A mandatory Bidder/Suppliers' Conference was, however, publicly held on March 28, 2019.  For the convenience of the Court, the

presentation and sign-in sheet for that Conference is attached to this status report as Defendants' Exhibit 6.

## **CONCLUSION**

At the end of the day, Plaintiffs' Complaints are subject to the Federal Rules of Civil Procedure. They should be treated as such and limited to the claims pleaded in the controlling complaints.

This 11th day of April, 2019.

                                          ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC

                                          */s/ Josh Belinfante*
Josh Belinfante
GA Bar No. 047399
Vincent R. Russo
GA Bar No. 242648
Brian E. Lake
GA Bar No. 575966
Carey A. Miller
GA Bar No. 976420
500 14th Street NW
Atlanta, GA 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250
jbelinfante@robbinsfirm.com
vrusso@robbinsfirm.com
blake@robbinsfirm.com
cmiller@robbinsfirm.com

-13-

TAYLOR ENGLISH DUMA LLP
Bryan P. Tyson
GA Bar No. 515411
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678.336.7249
btyson@taylorenglish.com

*Attorneys for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' STATUS REPORT** has been prepared in Times New Roman 14-point, a font and type selection approved by the Court in L.R. 5.1(B).

> */s/ Josh Belinfante*
> Josh Belinfante
> GA Bar No. 047399

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' STATUS REPORT** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 11th day of April, 2019.

*/s/ Josh Belinfante*
Josh Belinfante
GA Bar No. 047399