# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | FILE NO: 1:17-cv-2989-AT |
| BRIAN KEMP, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS SECRETARY OF STATE BRAD RAFFENSPERGER, STATE ELECTION BOARD, AND STATE ELECTION BOARD MEMBERS' RESPONSE TO ORDER DATED APRIL 16, 2019**

COME NOW Defendants Secretary of State Brad Raffensperger, State Election Board, and State Election Board Members (collectively, "State Defendants") and respond to this Court's Order issued on April 16, 2019 [Doc. No. 365], which requests clarification and information regarding Georgia county and municipal elections to be conducted in 2019 (the "Order"). The Order seeks specific information regarding state, county, and municipal elections scheduled for the 2019 election cycle, as well as any known referenda.

## OVERVIEW

State Defendants play a limited role in local elections. *See* O.C.G.A. § 21-2-31 (enumerating the Board's duties related to elections); O.C.G.A. § 21-2-50(11)

(the Secretary of State provides training to county registrars and superintendents). In contrast, local superintendents administer and conduct elections in Georgia, including county and municipal elections. *See* O.C.G.A. §§ 21-2-70 (requiring each county or municipal superintendent to conduct the elections in their respective county or municipality); 21-2-70.1 (identifying the municipal election superintendent as the person responsible for all municipal elections); 21-2-493 (computation and certification of returns by superintendent). A "superintendent" in the Election Code is specifically limited to county and municipal officials, and does not include the Secretary of State or any State Defendants. *See* O.C.G.A. § 21-2-2(35).

As part of their election responsibilities, municipalities and counties have authority to determine, among other things, the timing of local elections subject to limited statutory requirements, and for municipalities, the method of said elections and whether to contract with the county to conduct its municipal elections. *See* O.C.G.A. §§ 21-2-33 (establishing that a municipality must pay for all costs related to voting machines); 21-2-45(c) (permitting a municipality to contract with a county to conduct its elections); 21-2-70.1 (noting a municipal superintendent shall conduct all municipal elections); 21-2-334 (authorizing use of paper ballots when the use of voting machines is not possible or practicable); 21-2-366 (authorizing a

municipality to use optical scanning voting systems for local elections). Of particular note, while counties are still required to use DREs in county elections and for county ballot questions, municipalities are not subject to the requirement to use DREs and are not subject to the uniform statewide voting equipment requirement, although counties are authorized to contract with municipalities for the use of such voting equipment in municipal elections. *See* Ga. Comp. R. & Regs. r. 183-1-12-.01; *see also* O.C.G.A. § 21-2-300 (the equipment used for casting and counting votes in county, state, and federal elections shall be the same in each county in this state). While the Secretary of State must maintain the official list of registered voters, O.C.G.A. § 21-2-50(a)(14), local registrars enter the information into the voter registration system, and local superintendents perform all other functions related to the local election. O.C.G.A. § 21-2-70.

## THE ORDER

The Order seeks four types of information:

*(1)   Information regarding upcoming county and municipal elections in 2019: county or municipal name, the contested office/position, whether or not said seat is partisan, the nature of each SPLOST (if known) and anticipated election date.*

For counties and municipalities holding 2019 elections, this Court seeks the county or municipal name, the contested office/position, whether or not said seat is partisan, the nature of each SPLOST (if known) and anticipated election date.

Unlike state elections, counties can hold special elections to present questions to voters or fill vacancies in county offices on statutorily set dates in odd-numbered years. Specifically, in odd-numbered years, a special election for a county to present a question to voters, such as a SPLOST, can only be held on the third Tuesday in March or on the Tuesday after the first Monday in November (i.e. the November general election date). O.C.G.A. § 21-2-540(c)(2)(A). A special election in an odd-numbered year to fill a vacancy in a county office can be held on the following: i) the third Tuesday in March; (ii) the third Tuesday in June; (iii) the third Tuesday in September; or (iv) the Tuesday after the first Monday in November. O.C.G.A. § 21-2-540(c)(1)(A).

All general municipal elections to fill municipal offices are required to be held in odd-numbered years on the Tuesday next following the first Monday in November of such year. O.C.G.A. § 21-2-9(c). Public notices for general municipal elections are required to be published by the governing authority of the municipality at least 30 days prior to the elections, with a copy to the Secretary of State's Office. *Id*; *see also* O.C.G.A. § 21-2-45.1(b) (municipal bond elections shall be no less than 30 days after the call of such bond election). Additionally, special elections to fill a vacancy in a municipal office may be held on the same

dates as county special elections to fill vacancies in offices. *See* O.C.G.A. § 21-2-540(c)(1).[1]

While State Defendants do not administer municipal and county elections, the Secretary of State's Office has gathered historical data that may provide the Court with some insight about the number of potential elections this year.[2] Based on available information, Exhibit B contains the name of the county and/or municipality, the contested seat, and whether or not the county requested a GEMS database. The attached exhibit of historical data also indicates whether the county conducted the election for the municipality, where such information was readily available.

In addition to those anticipated elections listed in Exhibits A and B, a special election will also be held to fill a vacancy on the Atlanta Board of Education created by Byron Amos qualifying for the Atlanta City Council District 3 special election, which was held on March 19, 2019. That special election is not currently

---

[1] Attached as **Exhibit A** is a list of those counties and municipalities that have already provided notice pursuant to O.C.G.A. § 21-2-9(c) along with the information this Court requested to the extent available.

[2] Attached as **Exhibit B** is a list of those counties and municipalities which held elections in 2015. State Defendants provide the 2015 historical data as that election cycle is a better comparator to the upcoming 2019 elections. Municipal officers generally have terms of office of four (4) years unless otherwise provided by local law.

scheduled, but it has been reported that the special election will take place in September 2019 and is nonpartisan.  *See* McCray, Vanessa, *APS Board Seat to be vacant 7 months; September Election likely*, Atlanta Journal Constitution, available at https://www.ajc.com/news/local-education/aps-board-seat-vacant-months-september-election-likely/l2dTJ4qyYQpLQx6HwvlCrJ/ (last accessed Apr. 19, 2019).

*(2)   Information regarding any state office election that may be held in 2019: each of the districts and positions involved, whether the contest is a partisan one, the date of the elections, and the counties within each identified legislative district.*

At this time, the Secretary of State is aware that Representative Andy Welch announced his intention to resign in 2019.  Representative Welch represents House District 110, which includes portions of Butts, Henry, and Newton counties.  Under Georgia law, the timing of a special election for a member of the General Assembly depends on when the vacancy in office occurs.  *See* O.C.G.A. § 21-2-544.  If the vacancy occurs in 2019, the special election must be held with 30-60 days of the Governor's issuance of a writ of election to hold the special election.  O.C.G.A. §§ 21-2-544(2), 21-2-544(3).

Until Representative Welch formally resigns and Governor Kemp accepts the resignation, a writ of election to hold the special election cannot be issued by the Governor.  Thus, State Defendants do not know the date for this anticipated

special election, although it may occur on the same date as the November 2019 general election.  *See* Adgie, Joe, *Andy Welch Resigning from Georgia House of Representatives*, Henry Herald, available at https://www.henryherald.com/news/andy-welch-resigning-from-georgia-house-of-representatives/article_b7d89460-5729-11e9-a9f5-0bb867bc0287.html (last accessed Apr. 19, 2019). This special election would be for a partisan office, but candidates would be listed alphabetically and may choose to designate their party affiliation or leave a party affiliation blank. *See* O.C.G.A. § 21-2-540(e).

*(3)   Confirmation whether the Secretary of State is responsible for working with counties to coordinate voter information, information of the ballot, etc. for both county and municipal elections.*

For county elections and municipal elections administered by counties pursuant to a contractual arrangement, the Secretary of State performs the following normal services for the 2019 election cycle:

- Prepare a GEMS database containing the contests and candidates for the scheduled election that is proofed and approved by the county prior to be finalized and released to the county via encrypted CD;

- Prepare ballot images that are forwarded to the county's selected ballot printer for printing of mail-in absentee and provisional ballots;

- Prepare sample ballot images that are posted to the Secretary of State's MVP website for voter educational purposes;

- Prepare ExpressPoll Logic and Accuracy test data sets, used to during pre-election logic and accuracy testing;

- Prepare ExpressPoll Absentee Use data sets, used to create voter access cards during advance voting;

- Prepare ExpressPoll Election Day data sets, used on Election Day within the polling place;

- Provide election technical support to counties when testing or using their voting equipment; and

- Generate and post to county PDF Numbered List of Voters for each Election Day polling place based on data collected from the ExpressPoll transaction logs returned to the Secretary of State after the conclusion of the election.

Counties perform all remaining election services for county elections and municipal elections where a municipality has contracted with a county to conduct the election.

If a municipality conducts its own election (i.e. without county involvement), the State Defendant's involvement is limited and will depend on the municipality. If a municipality owns or leases its DREs, the county provides a list of registered voters culled from the official voter registration list as well as a GEMS database to run on the DRE, if requested. If a municipality does not run its election on a DRE, the only State involvement is maintaining the voter registration system. Municipalities receive a list of their voters from their respective counties.

*(4)   Clarification on whether municipalities – not the counties – are responsible for provision of voting equipment for municipal elections and preparation for elections, vote count, and interface with the Secretary of State's office regarding election operations and vote counts.*

As indicated above, municipalities are solely responsible for conducting their own elections. O.C.G.A. § 21-2-70.1. Municipalities are responsible for paying all costs related to voting machines. O.C.G.A. § 21-2-33. The only time a county may be involved in a municipal election is when the municipality decides to contract with the county to conduct its city elections. O.C.G.A. § 21-2-45(c).

This 22nd day of April, 2019.

    ROBBINS ROSS ALLOY BELINFANTE
    LITTLEFIELD LLC

    */s/ Vincent R. Russo*
    Josh Belinfante
    GA Bar No. 047399
    Vincent R. Russo
    GA Bar No. 242628
    Kimberly Anderson
    Ga. Bar No. 602807
    Brian E. Lake
    GA Bar No. 575966
    Carey A. Miller
    GA Bar No. 976240
    500 14th Street NW
    Atlanta, GA 30318
    Telephone:  (678) 701-9381
    Facsimile:   (404) 856-3250
    jbelinfante@robbinsfirm.com

vrusso@robbinsfirm.com
kanderson@robbinsfirm.com
blake@robbinsfirm.com
cmiller@robbinsfirm.com


TAYLOR ENGLISH DUMA LLP
Bryan P. Tyson
GA Bar No. 515411
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678.336.7249
btyson@taylorenglish.com

*Attorneys for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **DEFENDANTS SECRETARY OF STATE BRAD RAFFENSPERGER, STATE ELECTION BOARD, AND STATE ELECTION BOARD MEMBERS' RESPONSE TO ORDER DATED APRIL 16, 2019** has been prepared in Times New Roman 14-point, a font and type selection approved by the Court in L.R. 5.1(B).

>  */s/ Vincent R. Russo*
>  Vincent R. Russo
>  GA Bar No. 242628

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **DEFENDANTS SECRETARY OF STATE BRAD RAFFENSPERGER, STATE ELECTION BOARD, AND STATE ELECTION BOARD MEMBERS' RESPONSE TO ORDER DATED APRIL 16, 2019** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 22nd day of April, 2019.

*/s/ Vincent R. Russo*
Vincent R. Russo
GA Bar No. 242628