**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DONNA CURLING, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO:  1:17-cv-2989-AT |
| BRIAN KEMP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## STATE DEFENDANTS' MOTION TO QUASH NON-PARTY SUBPOENA AND REQUEST FOR RELIEF AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COME NOW Defendants Secretary of State Brad Raffensperger, State Election Board, and State Election Board Members (collectively, "State Defendants") and file this Motion to Quash and Request for Relief in response to Coalition Plaintiffs' April 15, 2019 subpoena of the Morgan County Board of Elections and Registration. The subpoena is premature under the Court's Order staying discovery, Eleventh Circuit precedent, and the Federal Rules of Civil Procedure and Local Rules of this Court. Even if the subpoena is not premature, it was improperly served and noticed, seeks irrelevant information, and seeks information protected by state law. *See* FED. R. CIV. P. 26 and 45(d)(3)(A)(iii). Accordingly, State Defendants move this Court to Quash the subpoena and issue

an order affirming its Stay of Discovery or otherwise an order pursuant to FED. R. CIV. P. 26(d) to hold the issuance of subpoenas and other discovery mechanisms in abeyance until the proper time. State Defendants assert the following as a basis for this Motion.

## I. Introduction

On April 9, 2019, the Court held an in-person scheduling conference "regarding the scope of this case in light of the recent legislation regarding the selection of new voting machines." Order (by docket entry only) March 18, 2019. Hours before the Court's ordered conference, Plaintiffs filed a status report [Doc. 351], to which Defendants Secretary of State Brad Raffensperger and Members of the State Election Board (collectively "State Defendants") responded. [Doc. 362]. In their response, State Defendants indicated that despite significant questions regarding mootness in light of House Bill 316, they would not file a motion to dismiss for mootness at this time. *Id.*  State Defendants also noted that questions regarding the scope of discovery exist and that the discovery period has not yet commenced due to pending motions to dismiss. *Id.* State Defendants further proposed a schedule for this case to move forward and asked that Plaintiffs simply be held to the Federal Rules of Civil Procedure and the Local Rules of this Court. *Id.*  Plaintiffs have now demonstrated that necessity.

At 3:32 p.m. on April 15, 2019, a subpoena issued pursuant to FED. R. CIV. P. 45 ("the Subpoena")[1] and directed to Jennifer Doran, Elections Supervisor of the Morgan County Board of Elections and Registration, was sent via electronic mail to Mr. Christian Henry of Hall, Booth, Smith, P.C., County Attorney for Morgan County.[2] Subsequently, at 6:04 p.m., counsel for State Defendants received email notice and a copy of the Subpoena.[3] The Subpoena contained an attachment which listed twenty-one categories of items to be produced by April 30, 2019 to the Atlanta office of counsel for Plaintiff Coalition for Good Governance, Bruce Brown. *See* Exhibit 1.

The Subpoena is premature and inconsistent with the posture of this case. Furthermore, the Subpoena was improperly served on the subject thereof and improperly noticed to opposing counsel. Notwithstanding these irregularities, the Subpoena requests documents that are irrelevant to the issues in the instant case, and a considerable number of the requests seek documents which are protected by

---

[1] The Subpoena is attached hereto as Exhibit 1.

[2] In the email sending the subpoena to Mr. Henry counsel for Plaintiff Coalition for Good Governance requested that Ms. Doran accept service by email. State Defendants are unaware if Ms. Doran consented to this request.

[3] Email from Coalition Plaintiffs' counsel, Bruce Brown, forwarding his correspondence with Mr. Henry is attached hereto as Exhibit 2.

state law. For these reasons, State Defendants request the Court appropriately

quash or modify the subpoena pursuant to Federal Rule of Civil Procedure

45(d)(3). State Defendants also request the Court issue an order affirming its stay

of discovery or otherwise preventing the future issuance of similar subpoenas until

the Court issues an order on pending motions to dismiss and direction regarding

the appropriate scope and commencement of discovery, if necessary.[4]

## II. Argument and Citation of Authority

A. <u>The Subpoena should be quashed since it is premature and the Court should issue an order preventing such subpoenas until discovery issues can be appropriately addressed.</u>

The Subpoena must be quashed since it is inconsistent with the Court's

Order Staying Discovery [Doc. 56] and is premature according to Eleventh Circuit

precedent, the Federal Rules of Civil Procedure, and the Local Rules of this Court.

State Defendants further request this Court issue an order re-affirming its stay or

---

[4] State Defendants are cognizant of this Court's Standing Order regarding discovery disputes. [Doc. 11]. However, since this case is not currently in the discovery period and Coalition plaintiffs did not seek leave to file the Subpoena while discovery is stayed [Doc. 56], State Defendants had no opportunity to respond before this Court and file this Motion out of an abundance of caution to bring the issues presented herein before the Court and avoid waiving objections. Given that the Subpoena is directed at a non-party, concerns regarding its propriety are further heightened.

otherwise preventing the issuance of future subpoenas to avoid undue burden and expense of the parties and subjects thereof.

    i.  *The Subpoena is premature.*

Coalition Plaintiffs' Subpoena is procedurally premature and should be quashed for that reason alone. First, this Court has issued an Order staying all discovery until the pending Motions to Dismiss have been disposed of. [Doc. 56]. Second, even if that Order had not been entered, discovery is improper at this point and, in any event, has not yet begun pursuant to Eleventh Circuit precedent, the Local Rules of this Court, and the Federal Rules of Civil Procedure.

Defendants previously moved this Court to stay discovery based, generally, on their motion to dismiss for failure to state a claim and because 11th Amendment Immunity and Qualified Immunity remained at issue. [Doc. 55]. In doing so, Defendants sought to avoid requiring the parties "to exert time, effort, and resources on discovery until [Defendants'] motion to dismiss is ruled upon." *See Id.* at 7 (citing *Patterson v. United States Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990) and *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)). This Court subsequently granted that motion and stayed discovery. [Doc. 56].

The Court reiterated its stay of discovery when it denied the Coalition Plaintiffs' subsequent Motion for Issuance of a Subpoena "until the Court rules on the pending motions to dismiss and addresses the stay on discovery." [Doc. 251]. The Court has not yet addressed that stay and, as noted in State Defendants' Response to Coalition Plaintiffs' status report, Defendants understand that the Court's stay of discovery remains in effect. [Doc. 362 at 8]. Because the Subpoena was issued while discovery remains stayed and Coalition Plaintiffs did not move for (as they previously did), nor obtain, leave to issue the Subpoena, it must be quashed.

The Court's Stay of Discovery in this case remains appropriate and comports with Eleventh Circuit precedent and, regardless, discovery is not yet proper under this Circuit's precedent and the Local Rules of this Court. As the Eleventh Circuit noted in *Chudasama*, "facial challenges to the legal sufficiency of the claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should be resolved before discovery begins." 123 F.3d at 1367. This is for good reason, if a party proceeds with discovery prior to the Court's ruling on pending motions to dismiss it can encourage abusive discovery, waste scarce judicial resources, and impose unnecessary costs. *Id.* at 1367–68. Indeed, "neither the

parties nor the court have any need for discovery before the court rules on the [pending motion to dismiss]." *Id.*

The Local Rules of this Court also reflect *Chudasama's* procedural considerations and this Circuit's precedent and similarly bar discovery at this point. Local Rule 26.2 provides that "the discovery period shall commence thirty days after the appearance of the first defendant by answer." The answer date is, of course, delayed by the filing of a motion to dismiss, FED. R. CIV. P. 12(a)(4), and thus, in this case, the discovery period has not yet begun. [5]

Moreover, pursuant to FED. R. CIV. P. 26(d), Rule 45 subpoenas are generally available only after the FED. R. CIV. P. 26(f) discovery conference unless otherwise ordered by the Court: "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." FED. R. CIV. P. 26(d). In this case, no 26(f) Conference has yet occurred, nor has a joint discovery plan been proposed. Indeed, if one had occurred, initial disclosures and other basic discovery mechanisms would be long past due. Permitting the issuance of subpoenas at this point would, to put it simply, place the cart ahead of the horse.

---

[5] Non-party Thomas John Ossoff did file a "Response/Answer" in this case on August 23rd, 2017, requesting he receive notices regarding the case through his legal counsel. [Doc. 38]. As Mr. Ossoff made clear in his filing, and Plaintiffs have not refuted, he was not a defendant in this case. *Id.*

In sum, the Subpoena is premature given that the Court's stay of discovery remains in effect and the discovery period has not yet begun under the default procedural rules. As the State Defendants have noted, it is unclear what Plaintiffs' remaining claims are about but that, in any event, State Defendants remain ready to file an answer and — at the appropriate time — enter into relevant discovery, if necessary. *See generally* [Doc. 362]. The Court held an in-person status conference with the parties regarding this process and State Defendants have since submitted two filings to answer questions of this Court as it considers the appropriate course for this case going forward.  That Plaintiffs are now ignoring the Court's stay of discovery, established precedent, and procedural rules by issuing the Subpoena is problematic and only further impedes the efficient disposition of this case.

ii. *The Court should issue an order affirming its Stay of Discovery or otherwise preventing imprudent discovery tactics.*

State Defendants request the Court re-affirm that its Stay of Discovery remains in effect until the Court rules on the pending motions to dismiss or otherwise issue a new order pursuant to FED. R. CIV. P. 26(d) holding discovery mechanisms in abeyance. An order of this nature could be properly limited to prevent the issuance of subpoenas, and discovery requests generally, prior to the Court's decision on the pending motions to dismiss and a future order on the

proceedings of this case. At that point in time, the parties will have further clarity on the claims which are still at issue in this case and the Court will be in a better posture to receive broader discovery arguments as to scope which can govern proceedings moving forward — avoiding an unnecessary waste of judicial resources in the interim.

Rule 26(d) provides the Court with authority to alter the sequence of discovery "for the convenience of the parties . . . and in the interests of justice." FED. R. CIV. P. 26(d); *see also Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1558-59 (11th Cir. 1985) (noting the court has "broad discretion to stay discovery until the district court rules on a pending dispositive motion"). Without action from the Court regarding this initial period, State Defendants fear they may very well have to respond to one hundred fifty-eight (158) other subpoenas sent to the other counties of Georgia, not to mention subpoenas that may also be served during this period on the municipalities that State Defendants identified at the request of the Court. [Doc. 367]. With an order in place, the parties can turn their focus to the appropriate issues at this stage: delineating the claims that remain in Plaintiffs' Complaints and for which discovery may, at the proper time, be appropriate.

By this request, State Defendants are not seeking an order which will govern *all* discovery for the remainder of this suit's pendency. Rather, State Defendants seek to maintain the status quo until this Court clarifies the claims going forward, if any. Without an order of that nature, State Defendants will continue to incur undue burden and expense responding to subpoenas that undoubtedly will be issued in the interim. FED. R. CIV. P. 26(c). For the convenience of the Court, State Defendants attach to this Motion a Proposed Order to this effect labeled as Exhibit 3.

    B. <u>Even if this Court determines the Subpoena is not premature, the Court must still quash or, at least modify, the Subpoena since it is procedurally defective, seeks irrelevant information, and requests documents which are protected.</u>

Even if it is unwilling to place the issuance of additional subpoenas in abeyance, the Court must still quash or modify the Subpoena for three reasons. First, the Subpoena itself was procedurally defective and must be quashed for that reason alone. Second, to the extent the Subpoena is otherwise valid, it seeks information which is not "relevant to any party's claim or defense" and, in any event, can likely be obtained from State Defendants by "more convenient, less burdensome" means. FED. R. CIV. P. 26(b)(1), 26(b)(2). Finally, the Subpoena

"must" be quashed or modified since it seeks information which is protected under state law. FED. R. CIV. P. 45(d)(3)(A)(iii).

    i.  *The Subpoena was improperly served and noticed.*

Counsel for Coalition Plaintiffs apparently sent a copy of the Subpoena by electronic mail to the Morgan County Attorney asking the County Attorney to accept this delivery as service. There is no indication that the Subpoena was actually provided to the party from whom compliance was sought, nor any indication that the Subpoena complied with basic requirements of service. For that reason alone, the Subpoena is invalid. In the event this email does constitute proper service, the Federal Rules of Civil Procedure are clear: "If the subpoena commands the production of documents . . . then *before it is served on the person to whom it is directed*, a notice and a copy of the subpoena must be served on each party." Fed R. Civ. P. 45(a)(4) (emphasis added). In this instance, notice was provided to the other parties by a subsequent email and, therefore, the Subpoena is invalid and must be quashed.

First, effective service has not occurred since a copy of the subpoena has not, to State Defendants' knowledge, been delivered to Ms. Doran. While service on a party represented by counsel will generally suffice for service under FED. R. CIV. P. 5, "Rule 45, which governs subpoenas does not expressly incorporate the

service provisions of Rule 5, but rather requires that service of subpoenas 'be made by delivering a copy thereof to such person.'" *Klockner Namasco Holdings Corp. v. Daily Access.com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002).[6] Indeed, authority in this Circuit suggests that service on counsel for the person subject to the subpoena, rather than the person named therein, is insufficient. *See Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (holding that a subpoena served on a party's counsel as opposed to the party himself was "not served in conformity with the rule").[7] This Court has also followed the rule in *Harrison*, requiring service on the person named in the subpoena. *See, e.g. Klockner*, 211 F.R.D. 685, 687 (citing *Harrison*, 404 F.2d at 273); *see also Tidwell-Williams v. Northwest Georgia Health System, Inc.*, 1998 WL 1674745 *7 (N.D. Ga. Nov. 19, 1998) (citing *Harrison*, 404 F.2d at 273) (stating that Rule 45 requires personal service). This Subpoena was only emailed to Counsel for Morgan County, not Ms. Doran — the person who was named. Moreover, in *Harrison*, the subject of the subpoena was a party to the case, 404 F.2d at 273, the rationale behind the personal service

---

[6] (quoting the pre-2013 version of FED. R. CIV. P 45(b)(1)). This requirement remains, but in a slightly different form: "Serving a subpoena requires delivering a copy to the named person." FED. R. CIV. P. 45(b)(1).

[7] "Cases decided by the Court of Appeals for the Fifth Circuit before 1981 are binding precedent in the Eleventh Circuit today." *Hope v. Pelzer*, 536 U.S. 730, 742 (2002) (citing *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981)).

requirement for Rule 45 is even stronger for a non-party who must be given sufficient notice of the power of this Court being exercised against her. Because of this improper service, the "subpoena was not served in conformity with the rule" and must be quashed. *Harrison*, 404 F.2d at 273.

Even if service on counsel were sufficient, which it is not, service by email is also inappropriate. Indeed, this Court has noted that service of a Rule 45 subpoena by non-personal means is insufficient. *See CSX Transp., Inc. v. B&L Financial, Inc*, 2013 WL 12238925 at *2 (N.D. Ga. Jan. 22, 2013) (citing *Harrison*, 404 F.2d at 273) (service by leaving at place of business insufficient); *see also Swanson v. Universal Protection Service, LLC*, 2017 WL 10087887 at *4 (N.D. Ga. June 5, 2017) (email improper absent acquiescence in writing to such service). The Eleventh Circuit has not yet ruled on whether email service of a subpoena is sufficient, and circuits are split on the issue, but service by regular mail is "almost always rejected as an effective means of serving subpoenas and courts will quash a subpoena on that basis alone." *Florida Media, Inc. v. World Publications, LLC*, 236 F.R.D. 693, 695 (M.D. Fl. 2006) (citing *Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir.2000)). This is for good reason, particularly where, as here, the subject of the Subpoena is a non-party, in that case "the method of service needs to

be one that ensures the subpoena is placed in the actual possession or control of the person to be served." *City of St. Louis*, 220 F.3d at 903. Just as fax and regular mail do not provide such assurance, *Id.*, email does not as well. The Subpoena should thus be quashed for improper service by email, in addition to improper service to the wrong person.

Finally, even if the Subpoena was not otherwise defective, Coalition Plaintiffs failed to send prior notice to the other parties in this case. The plain language of Rule 45 requires notice of a subpoena for the production of documents be served on each party "before it is served on the person to whom it is directed." FED. R. CIV. P. 45(a)(4). While, again, the Eleventh Circuit has not yet ruled on this issue, this Court has previously noted "the plain language of the rule, which expressly provides that notice must be served on the other parties 'before [the subpoena] is served on the person to whom it is directed.'" *Kemper v. Equity Ins. Co.*, 2016 WL 7428215 at *6 (N.D. Ga. Apr. 29, 2016) (quoting *Id.*). The Advisory Committee Note to the 2007 Amendment to Rule 45 also confirms this interpretation. *See Burch v. P.J. Cheese, Inc.*, 2010 WL 9081738 at *2 (N.D. Al. Aug. 20, 2000) ("given the plain language of Rule 45(b)(1), and the Advisory Committee Note to the 2007 Amendment, the court agrees that before serving the subpoena" notice to the other party was required).

-14-

Assuming, *arguendo*, that email service on counsel was sufficient, the facts show that notice was only provided to the State Defendants *after* the subpoena had been served. "The entire process of statutory interpretation is premised on the principle that statutory words have meaning," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 763 (11th Cir. 2010), requiring prior notice here does just that. Accordingly, the Subpoena must be quashed as deficient for lack of prior notice. *Burch*, 2010 WL 9081738 at *2.

ii.  *The Subpoena requests irrelevant information and is therefore not permitted by Federal Rule of Civil Procedure 26.*

While a party may seek discovery from non-parties by issuing a Rule 45 subpoena, "[t]he standards governing scope of discovery under Rule 26(b) apply to Rule 45 as well." *Agilysis, Inc. v. Hall*, 2018 WL 1229990 at *4. In the Subpoena, Coalition Plaintiffs seek a number of documents which are wholly irrelevant to their claims. Again, Plaintiffs' only remaining Counts in their Complaints are limited to their fundamental-right-to-vote and mandamus claims grounded in an identical theory: that Plaintiffs will be harmed as a result of the State's use of AccuVote DRE Machines ("DRE") in elections. [Doc. 226 ¶¶ 170, 177-79; Doc. 70 ¶¶ 61, 69–71]; *see also* Defs' Resp. to Coalition Pls' Status Report [Doc. 362 at 3]. Moreover, Coalition Plaintiffs—the issuer of this Subpoena—limit their relief

to the "Relevant Upcoming Elections," defined as those conducted in 2018. [Doc. 226 ¶ 4]. And the only relief Plaintiffs seek is to stop the state from using DREs in elections and mandate the use of a new paper ballot system. *See, e.g.* [Doc. 70 at 67–68]. As such, a number of Plaintiffs' requests cannot be said to be "relevant to any party's claim or defense and proportional to the needs of the case," FED. R. CIV. P. 26(b)(1), when they are wholly unrelated to the claims actually pleaded. For this reason, the Court should prevent the disclosure of irrelevant records and quash or modify the Subpoena pursuant to FED. R. CIV. P. 26. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fl. 2005).

State Defendants object generally to all requests in the Subpoena to the extent those requests are not related to the claims which have actually been pleaded: DRE machines and the use thereof. Incorporating this general relevance objection and without waiving other objections to the requests, including but not limited to those related to privileged or protected information, State Defendants assert specific objections to the following requests as irrelevant to the claims or defenses of the parties:

Requests 1, 2, 3, 7, and 17 seek information related to the Global Election Management System ("GEMS") Database. Specifically, these requests seek: an electronic copy of the GEMS database for the November 6, 2018 election and any

passwords; a copy of the completed GEMS database transmitted to the Secretary of State at the close of the November 6, 2018 election; an electronic copy of the backup of the GEMS database created closest in time to 11:59 PM November 6, 2018; an electronic copy of the audit log for the GEMS server; and all communications between the county elections office and the Secretary of State's office related to or regarding the GEMS database for the November 6, 2018 election. The GEMS database is noticeably absent from the entirety of the Curling Plaintiffs' Second Amended Complaint, *see generally* [Doc. 70], and does not form the basis of any of the Coalition Plaintiffs' claims. *See* [Doc. 226 at 62–68]. Thus, Requests 1, 2, 3, 7, and 17 seek information that is not relevant to the claims or defenses of the parties and must be quashed.

Requests 12 and 13 seek all post-election audit reports and all analysis generated by the Morgan County Board of Elections and Registration. Unless these requests are limited to the use of DREs and audit or analysis of votes recorded thereon, the requests seek information that is not relevant to the claims or defenses of the parties.

Request 15 seeks voter complaints related to difficulty voting in the Lt. Governor's contest. Unless this request is limited to complaints of difficulty voting

on DREs, the request seeks information that is not relevant to the claims or defenses of the parties.

Request 16 seeks all documents reflecting communications subsequent to July 1, 2018 with any person concerning the following: A) A new voting system for Georgia; B) A pilot program for the new voting system; C) November 2018 election undervotes in the Lt. Governor's race; D) Legislation that became House Bill 316; and E) Voting system irregularities, operational problems, [and] computer-related malfunctions. Requests 16 A, B, and D are wholly irrelevant to the claims pleaded in this case. The Second Amended Complaint is devoid of any allegations related to Georgia's expected new voting system, and any such claims, if they had been asserted, would fail for lack of ripeness at this juncture. Indeed, State Defendants agreed not to file a motion to dismiss for mootness as a show of good faith. [Doc. 362 at 2]. Coalition Plaintiffs now seek this information on a system that is not yet even procured. Requests C and E are similarly relevant only to the extent they relate to the use of DREs.

iii. *Even if the Subpoena requests were relevant, many documents requested are otherwise protected.*

The Subpoena seeks information that is protected under state law and could jeopardize the security of upcoming elections in Georgia. The security of elections

systems is essential to ensure the right to vote and have that vote counted, other rights are "illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Elections officials in Georgia and across the country operate in a universe where the security of their systems is of paramount concern. Recognizing the fundamental importance of elections security, the United States Department of Homeland Security designated elections infrastructure as "Critical Infrastructure,"[8] a designation given to "systems and assets . . . so vital to the United States that [their] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 519(c)(e). Federal courts have also recognized the security concerns pertinent to elections infrastructure. *See, e.g. Heindel v. Andino*, 2019 WL 498388 *5 (D.S.C. February 8, 2019) (Noting various FBI and Department of Homeland Security reports about potential election hacking).

Pertinent to the Subpoena, not only could the disclosure of items requested jeopardize elections security, they are also protected under state law. Indeed, the

---

[8] U.S. Dep't of Homeland Security, Statement by Secretary Jeh Johnson on the Designation of Election Infrastructure as a Critical Infrastructure Subsector (Jan. 6, 2017), *available at* https://www.dhs.gov/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical.

Georgia Court of Appeals has noted the State's interest in the security of elections systems and the extensive statutory, regulatory, and procedural scheme executed by the Secretary to secure elections systems and information. *See Smith v. DeKalb Cnty.*, 288 Ga. App. 574, 577-78 (2007) (discussing State's interest in Open Records context). Moreover, disclosure of these documents through subpoena at this early stage, without a protective order of any kind limiting disclosure, could result in dire consequences for security of the state's voting systems.

As such, State Defendants object generally to all requests of the Subpoena to the extent that the information sought is protected under state law. FED. R. CIV. P. 45(d)(3)(A)(iii). For that reason, the Subpoena must be quashed or modified. *Id.* Alternatively, this Court has broad discretion to protect a party for good cause by limiting the scope of inquiry into certain matters and should do so here, if it is unwilling to continue its stay of discovery, to protect the security of elections in Georgia. FED. R. CIV. P. 26(c)(1)(D). Incorporating this general objection to all requests and without waiving other objections to the requests, State Defendants assert specific objections to the following requests:

Requests 1, 2, 3, and 17 seek information related to the Global Election Management System ("GEMS") Database. Specifically, these requests seek: an electronic copy of the GEMS database for the November 6, 2018 election and any

passwords; a copy of the completed GEMS database transmitted to the Secretary of State at the close of the November 6, 2018 election; an electronic copy of the backup of the GEMS database created closest in time to 11:59 PM November 6, 2018; an electronic copy of the audit log for the GEMS server; and all communications between the county elections office and the Secretary of State's office related to or regarding the GEMS database for the November 6, 2018 election. The GEMS server and database are carefully guarded as provided by state law and regulation. *See* O.C.G.A. § 21-2-500 (GEMS CD-ROM kept under seal until destroyed after 24 months), Ga. Comp. R. & Reg. rr. 183-1-12(2)(e), 183-1-12(6) (GEMS CD sealed and servers kept in secure storage). This is for good reason, disclosure of the items could facilitate hacking or other malfeasance. In fact, the only possible way for Coalition Plaintiffs to make use of the GEMS documents and CD-ROM requested would be for them or their experts to *hack into the programming* since they do not have the encryption codes. *See Smith*, 288 Ga. App. at 576 n.6 (noting that requester did not have software to access system and would need to break the encryption codes by other means). As such, this request must be quashed or modified to prevent disclosure of protected information.

Requests 18 and 19 seek DRE memory cards from certain polling places and all DRE memory cards last used during the November 6, 2018 election. These

items are similarly highly sensitive and protected under Georgia law. *See* O.C.G.A.

§ 21-2-500 (Computer chips and electronic records of voting programs kept under

seal), Ga. Comp. R. & Reg. r. 183-1-12(6) (memory cards kept under seal). For the

same reasons stated regarding the GEMS database, and incorporating the general

objections, disclosure of DRE memory cards, particularly at this stage without a

protective order, would jeopardize the security of elections in Georgia. This

request must be quashed or modified.

Requests 20 and 21 seek cast vote records for the first five and last five votes

cast at the early voting center and Northeast Morgan Precinct. A cast vote record is

otherwise known as a ballot image — a direct image of the vote cast by a person in

the November 6, 2018 election. Disclosure of this ballot image would be in direct

contradiction with the Constitution of Georgia which requires votes be cast by

"secret ballot." Ga. Const. art. 2, § 1, para. I. The United States Supreme Court has

also recognized the necessity of the secret ballot to prevent electoral abuses and its

prevalence in all 50 states. *Burson v. Freeman*, 504 U.S. 191, 206–07 (1992).

Indeed, "[s]ociety has a strong interest in encouraging all individuals, even the

most timid, to vote." *In re Dinnan*, 661 F.2d 426, 432 (5th Cir. Unit B 1981). State

Defendants therefore object to this request and move the Court to quash the

requests for protected information on the basis that disclosure of cast vote images

would destroy the secrecy of the ballot mandated by the Constitution of Georgia and recognized by the Supreme Court.

## III.    Conclusion

Plaintiffs in this case are subject to the Federal Rules of Civil Procedure and the Orders of this Court. Accordingly, Coalition Plaintiffs' Subpoena must be quashed and State Defendants request this Court enter an appropriate order regarding discovery at this early juncture.

Respectfully submitted this 29th day of April, 2019.

ROBBINS ROSS ALLOY BELINFANTE
LITTLEFIELD LLC

*/s/ Vincent R. Russo*
Vincent R. Russo
GA Bar No. 242628
Josh Belinfante
GA Bar No. 047399
Carey A. Miller
GA Bar No. 976240
Kimberly Anderson
Ga. Bar No. 602807
Brian E. Lake
GA Bar No. 575966
500 14th Street NW
Atlanta, GA 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250
vrusso@robbinsfirm.com

jbelinfante@robbinsfirm.com
cmiller@robbinsfirm.com
kanderson@robbinsfirm.com
blake@robbinsfirm.com


TAYLOR ENGLISH DUMA LLP
Bryan P. Tyson
GA Bar No. 515411
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678.336.7249
btyson@taylorenglish.com

*Attorneys for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' MOTION TO QUASH NON-PARTY SUBPOENA AND REQUEST FOR RELIEF AND MEMORANDUM OF LAW IN SUPPORT THEREOF** has been prepared in Times New Roman 14-point, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Vincent R. Russo*
Vincent R. Russo
GA Bar No. 242628

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **STATE DEFENDANTS' MOTION TO QUASH NON-PARTY SUBPOENA AND REQUEST FOR RELIEF AND MEMORANDUM OF LAW IN SUPPORT THEREOF** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 29th day of April, 2019.

*/s/ Vincent R. Russo*
Vincent R. Russo
GA Bar No. 242628