```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,            :
                                       :
 5          PLAINTIFFS,                :
     vs.                               :   DOCKET NUMBER
 6                                     :   1:17-CV-2989-AT
     BRAD RAFFENSPERGER, ET AL.,       :
 7                                     :
            DEFENDANTS.                :
 8

 9
```

 10         **TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

 11            **BEFORE THE HONORABLE AMY TOTENBERG**

 12               **UNITED STATES DISTRICT JUDGE**

 13                      **MAY 24, 2019**

 14                      **10:30 A.M.**

 15

 16

 17

 18

 19

 20

 21    *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

 22                  *TRANSCRIPT PRODUCED BY:*

 23

 24   *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
                                        *2394 UNITED STATES COURTHOUSE*
 25                                     *75 TED TURNER DRIVE, SOUTHWEST*
                                        *ATLANTA, GEORGIA  30303*
                                        *(404) 215-1383*

**A P P E A R A N C E S   O F   C O U N S E L**

**FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY SCHOENBERG:**

    DAVID D. CROSS
    CATHERINE L. CHAPPLE
    ROBERT W. MANOSO
    MORRISON & FOERSTER, LLP

    HALSEY G. KNAPP, JR.
    ADAM SPARKS
    KREVOLIN & HORST, LLC

**FOR THE PLAINTIFF COALITION FOR GOOD GOVERNANCE:**

    BRUCE P. BROWN
    BRUCE P. BROWN LAW

**FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES, WILLIAM DIGGES, III, AND RICARDO DAVIS:**

    CARY ICHTER
    ICHTER DAVIS, LLC

    ROBERT ALEXANDER McGUIRE III
    ROBERT McGUIRE LAW FIRM

**FOR THE STATE OF GEORGIA DEFENDANTS:**

    VINCENT ROBERT RUSSO, JR.
    JOSHUA B. BELINFANTE
    CAREY A. MILLER
    KIMBERLY ANDERSON
    ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

    BRYAN P. TYSON
    BRYAN JACOUTOT
    TAYLOR ENGLISH DUMA

(...CONT'D....)

```
 1    (...CONT'D....)

 2

 3    FOR THE FULTON COUNTY DEFENDANTS:

 4

 5         KAYE WOODARD BURWELL
         CHERYL RINGER
         DAVID R. LOWMAN
 6         OFFICE OF THE FULTON COUNTY ATTORNEY

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2    (Atlanta, Fulton County, Georgia; May 24, 2019.)

 3              COURTROOM DEPUTY CLERK:  Morning, everyone.  We're

 4    here for the telephone conference in the case of Curling vs.

 5    Raffensperger, Civil Action Number 17-CV-2989.

 6              Beginning with plaintiffs, would you please make your

 7    appearance for the record.

 8              MR. BROWN:  This is Bruce Brown for plaintiff

 9    Coalition for Good Governance.

10              COURTROOM DEPUTY CLERK:  Thank you.

11              MR. ICHTER:  This is Cary Ichter for Coalition and

12    certain individual voters.

13              MR. McGUIRE:  Robert McGuire, as well, for the

14    Coalition.

15              COURTROOM DEPUTY CLERK:  Okay.  Curling plaintiffs?

16    Are the Curling plaintiffs on?

17              MR. MANOSO:  This is Rob Manoso from Morrison

18    Foerster on behalf of the Curling plaintiffs.  I will be joined

19    by my colleagues, David Cross and Catherine Chapple,

20    momentarily.

21              COURTROOM DEPUTY CLERK:  Thank you.

22              State of Georgia?

23              MR. RUSSO:  Yes.  This is Vincent Russo, along with

24    Carey Miller, State of Georgia.  We have others on the phone

25    too.
```

1              MR. TYSON:  This is Bryan Tyson and Bryan Jacoutot

2 also on behalf of the State of Georgia.

3              MS. RINGER:  For Fulton County, this is Cheryl

4 Ringer, Kaye Burwell, and David Lowman.

5              MR. BELINFANTE:  This is also Josh Belinfante on

6 behalf of the State of Georgia.

7              COURTROOM DEPUTY CLERK:  Thank you.

8              Did anybody else show up for Curling plaintiffs?

9              MR. RUSSO:  This is the state defendants.  We also

10 have Kimberly Anderson who is joining us.

11             COURTROOM DEPUTY CLERK:  Okay.  Thank you.

12             MR. KNAPP:  Halsey Knapp also on behalf of the

13 Curling plaintiffs.

14             MR. SPARKS:  Adam Sparks also on behalf of the

15 Curling plaintiffs.

16             MS. CHAPPLE:  We also have Catherine Chapple, David

17 Cross, and Rob Manoso on behalf of the Curling plaintiffs.

18             MR. KNAPP:  I'm in an airport.  So I'm going to put

19 it on mute.

20             THE COURT:  Who is that?

21             COURTROOM DEPUTY CLERK:  Who just spoke?

22             MR. KNAPP:  Halsey Knapp.

23             COURTROOM DEPUTY CLERK:  Okay.  Thank you.

24             Ms. Ringer for Fulton County, we're having a

25 difficult time hearing you.  So if you would, speak clearly and

```
1    into the microphone, please, because we are taking this down

2    with a court reporter.  So everybody please identify yourself

3    by name prior to speaking.

4            Judge?

5            THE COURT:  Morning.  I know it was ambitious to

6    think I was going to be able to speak with all of you on the

7    phone rather than have you in person.  I'm not saying we won't

8    have to talk in person because of the volume of people.  But I

9    just thought I might as well get the ball rolling.

10           Have you-all talked about a schedule together?  I see

11   the notice of plaintiffs' proposed schedule.  But have y'all

12   actually spoken together?

13           MR. BROWN:  This is Bruce Brown, Your Honor.  We have

14   not spoken about the schedule.

15           THE COURT:  All right.  Well, that makes things a

16   little tougher.

17           MR. RUSSO:  Your Honor, this is Vincent Russo for the

18   state defendants.  We have also just sent an email with a

19   proposed schedule.

20           THE COURT:  All right.  Let me just have Ms. Cole --

21   did you send -- did you file it, or did you --

22           MR. RUSSO:  We emailed it to --

23           THE COURT:  Mr. Martin?

24           MR. RUSSO:  -- Mr. Martin, yes, ma'am, and to

25   counsel.
```

```
 1              THE COURT:  Let me get Mr. Martin to go print it
 2    right now so that I can see it.  All right?
 3              MR. RUSSO:  Yes, ma'am.
 4              THE COURT:  Let me ask a few other questions while
 5    I'm waiting to see that.  Right now plaintiffs are
 6    anticipating, according to your filing, filing a motion for
 7    preliminary injunction by next Friday, May 31st; is that right?
 8              MR. BROWN:  This is Bruce Brown.  Yes, Your Honor.
 9              THE COURT:  Is that so also for the Curling
10    plaintiffs or not?
11              MS. CHAPPLE:  Yes, Your Honor.  This is Catherine
12    Chapple.
13              THE COURT:  Well, let me ask you a few questions
14    about what you are seeking potentially.  And, you know, this --
15    the question of the proper parties before the Court has arisen
16    here mostly in the context and originally in the context of the
17    preliminary -- the motion for preliminary injunctive relief in
18    the first -- let's say the first part of this case.
19              It wasn't an issue in the actual motion to dismiss.
20    But -- and I don't believe the plaintiffs have in any way
21    addressed for me what -- sort of the filing essentially that
22    was done by the defendants as to what the scope of the election
23    was, who was going to be in front of me, all of which, of
24    course, may have modified -- been modified some at this
25    juncture.
```

1          But there were -- you know, these were -- a lot of

2     municipal elections in November, a number of them being

3     nonpartisan.  Almost all of them with just a few exceptions

4     being very small municipal elections.  It is not clear to me at

5     this juncture what -- how the votes were going to be counted,

6     whether the cities were going to be using counting equipment,

7     whether they were going to be using county -- well, state

8     voting rolls, who was going to be -- whether the state was

9     going to be creating the ballot for them, any of these issues.

10          So I'm trying to understand how I'm going to be

11     properly presented with the issues in front of me in that light

12     and whether, in fact -- you know, it also -- the size of the

13     municipality or the county does matter in our just sort of

14     doing this and also whether you -- not having -- whether there

15     is an issue about having at least some representative number of

16     them in front of me so that I can actually have a better sense

17     of how this all plays down.

18          Let me interrupt that for one second.  No email has

19     arrived in Mr. Martin's email box yet.  Could somebody on

20     behalf of the defendants check to see that it has actually been

21     sent.

22          MR. RUSSO:  Yes, ma'am, we will.  We are

23     double-checking that right now.

24          MR. MILLER:  Your Honor, Carey Miller.

25     Harry_Martin@gand.uscourts.gov?

```
 1              COURTROOM DEPUTY CLERK:  That is correct.

 2              MR. MILLER:  I'll resend just to be sure.

 3              THE COURT:  You probably have an email from him at

 4    some point I would think.  But if not, you can also send it

 5    to -- you could include Ms. Cole.  Do you have her email?

 6              MR. MILLER:  Yes, Your Honor.  I believe we do.

 7              THE COURT:  Well, just include her in it.  All right.

 8              And I will say that some of that is information, of

 9    course, I'm going to ask the defendants more about today.  But

10    my point is that this has not -- is not something you've really

11    even addressed.

12              I think it is one thing to address it in the context

13    of a state election, national election where we understood

14    precisely -- or I thought I understood, even though, you know,

15    I realize that this was a defense raised by the state

16    defendants, but this is still potentially a different context.

17    And I don't -- I haven't heard a word from you about that.  And

18    I'm a little worried about just plunging into your schedule,

19    not that you don't have the right to file whatever you want to

20    file, but without having a sense of this because it is

21    worrisome to me.

22              It just got here.  I've got the state defendants'

23    proposed schedule now.  All right.

24              MR. BROWN:  Your Honor, this is Bruce Brown for the

25    Coalition plaintiffs.  First, in terms of the motion for
```

1    preliminary injunction, I want to let you know that the

2    plaintiffs will be filing a single motion for the identical

3    relief and that we will -- for efficiency and to not overburden

4    the Court, we will be filing complementary briefs, two

5    different briefs.  But they won't be duplicative, particularly

6    in light of the orders and the prior motions that have been

7    filed.

8            Second, with respect to your particular question

9    about the entities conducting the elections, yes, I think the

10   Secretary of State and the defendants have more information

11   about that.  And also you're obviously correct in that the

12   previous motions had targeted statewide elections that had to

13   have the Secretary of State being so obviously in a prominent

14   role in terms of the execution of it.  And we will address that

15   in our motions in terms of explaining how the relief that we're

16   seeking may be effected by the Court through the parties that

17   we have sued and joined and recognizing that the Secretary of

18   State, although it may not be at the same responsibilities with

19   municipal elections, does have substantial control over how

20   those elections are conducted.  And the municipalities actually

21   contract with the Secretary of State to conduct those.

22           In addition, it is not only municipal elections that

23   will be coming up.  There will be county elections throughout

24   Georgia.  In fact, there are elections throughout the year in

25   counties.  We don't always know them in advance because they

1    are for openings.  Somebody retires, that kind of thing.  So

2    there will be other countywide elections coming up.

3             Thank you.

4             THE COURT:  Well --

5             MR. TYSON:  Bryan Tyson for the Secretary of State.

6    I think as you have correctly identified while there are some

7    municipalities that will contract with a county to conduct an

8    election, those municipalities have complete control of how

9    they want to conduct that election.  So they are free to

10   conduct the election using whatever method they so choose.

11            And there would obviously be -- if this Court were to

12   enjoin the use of electronic voting machines or something by

13   the state, that would have a significant impact on cities that

14   had already contracted towards that end.  So I think having

15   those cities available would be necessary for you to get a

16   picture of what the order would look like, especially given the

17   autonomy that cities have regarding how they are going to

18   conduct their elections.

19            So I think your question is well placed, and I think

20   there does need to be some analysis of that point.

21            THE COURT:  Has the Secretary of State's office

22   gotten an update since it filed its -- gave its filing on

23   April 22nd, 2019, Document 367, as to the cities and counties

24   having elections?  Because I appreciated your provision of

25   Exhibit B to that that indicated basically what happened the

last comparable off-year election, which was a much longer list

than what was at this point that you filed the April 22nd

submission -- what you were aware of at that point.

Do you have any idea --

MR. RUSSO:  Your Honor --

THE COURT:  Go ahead.

MR. RUSSO:  Your Honor, this is Vincent Russo.  We do

have an updated list as of yesterday that we can submit to the

Court.  And in short though, there are four additional county

commission elections, two in Carroll County, one in Coffee

County, one in Fulton County, and a city of Talbotton, city

council in Talbot County, and clerk of superior court race in

Webster County.  So total that is four different counties that

would have additional anticipated elections.

From what I understand, all but the Fulton race --

the anticipated election dates for those races except Fulton is

June 18.  Fulton can maybe shed some light on the anticipated

election date for that county commission district six seat.  My

understanding though is that it is -- the election date is

set -- anticipated date would be September 17.

MS. RINGER:  (Unintelligible).

COURT REPORTER:  I cannot hear Fulton County.

THE COURT:  Is that Ms. Ringer?

MS. RINGER:  Yes.  I'm moving (unintelligible).

THE COURT:  Can you pick up the phone?

1          MS. RINGER:  Can you hear me better now?

2          THE COURT:  A little.  Are you on the phone now?

3          MS. RINGER:  Yes.

4          THE COURT:  Say what you were stating again.

5          MS. RINGER:  So we did have a commissioner that

6  passed away.  So we're having a special election.  So the date

7  that Mr. Russo said is correct.  That is our commission

8  district six.

9          THE COURT:  So that is September 17?

10          MS. RINGER:  Yes.

11          THE COURT:  All right.  And all of the others are

12  June, Mr. Russo?

13          MR. RUSSO:  Yes, ma'am.  All the others would be

14  June 18.  All of the new ones that we were just made aware of.

15          THE COURT:  Well, can -- Mr. Tyson or Mr. Russo, are

16  you in the position to elaborate any further about how many --

17  the scope of your knowledge as to how many of the entities have

18  contracts with either the county -- with the counties for the

19  provision of voting machines and also for use of -- for access

20  to the state voting database?

21          MR. RUSSO:  Your Honor, this is Vincent Russo.  I

22  believe in the submission that we made with the Court in April

23  it indicates -- there is the column for county conducted.  So

24  if it is county conducted, then that means the county would

25  have contracted with the city if it is a municipal race.  All

1   of the new -- all of the races that I mentioned on this call,

2   the new ones, those are all county conducted also.

3          THE COURT:  All right.  So when we have a blank like

4   for the -- I mean -- I'm assuming some of the times it may be a

5   mistake.  So we have a city in Gordon County, which is still

6   very tiny, I know -- the city council post two, it indicates

7   yes.  So it is county run, but then the other positions in --

8   there are two more in Fairmount, which are blank.

9          MR. RUSSO:  Yeah.  I think those are all municipal,

10  and I believe that those should all be yes.  I'll have to

11  double-check the city of Plainville.  There appears to be a

12  mayor and two city council races in Gordon County there that we

13  had blank.  I believe those -- I will double-check.  But I

14  believe -- okay.  So we'll double-check that.

15         THE COURT:  All right.  If you will just double-check

16  them because there were some inconsistencies like this.  But

17  let's just, for instance, talk about -- and obviously different

18  cities in the county can decide to do different things.  But

19  for the city of Clarkesville, which has two positions, post two

20  and three, and a number of these other cities and towns in

21  Habersham, what is your -- what happens in a place like this

22  where they indicate -- well, you've indicated that they don't

23  use the resources of the county.

24         MR. RUSSO:  Your Honor, this is Vincent Russo again.

25  Where the city doesn't contract with the county to use the

1    county's voting equipment, then the city has its own.  They can

2    use -- they may have procured their own equipment, DREs.  They

3    may have used the optical scan ballots.  They can really use --

4    it is a wide range of what they might have.

5         THE COURT:  Well, how do they determine who is a

6    registered voter?

7         MR. RUSSO:  They still operate off of the state's

8    voter registration list.  So the voter registration list is

9    separate and apart from the election equipment that they are

10   using and the actual running of the election.

11        THE COURT:  So they use ExpressPoll to be able to log

12   in to the state's computer system to be able to -- and

13   registration system?  Is that how it works?

14        MR. RUSSO:  No, ma'am.  I mean, I'm not saying they

15   necessarily use ExpressPoll.  They might get the printout of

16   all the registered voters similar to what precincts get in

17   state elections as their backups.  So they could have a binder

18   with everybody in it and check it off.  But they -- they

19   ultimately get the information.  It still comes out of eNet

20   though, which is the voter registration system.

21        THE COURT:  And is eNet -- I'm sorry for the

22   confusion.  But is eNet generated through the state

23   registration -- voter registration system?

24        MR. RUSSO:  Yes, ma'am.

25        THE COURT:  All right.  And so they are tapping into

1    that then in some way?

2          MR. RUSSO:  Well, it might be that the county

3    provides the list of registered voters in the city.  But yes,

4    everybody when they -- when the various combos of information

5    get put into the state's voter registration system to indicate

6    where someone lives, what municipality, what county, which

7    district, so on and so forth -- that all still comes out of the

8    state's voter registration system.

9          So when individuals go to vote in a municipal

10    election, they -- even if a municipality is running it, they

11    are looking at whether the individual is registered to vote

12    through information obtained from the state.  Now, they may

13    still use different election equipment to run elections.  But

14    voter registration is run through the state.  Because the state

15    has a statewide voter registration system.

16          THE COURT:  Right.

17          MR. RUSSO:  Your Honor --

18          THE COURT:  Yes.

19          MR. RUSSO:  Sorry.  I was going to point you to

20    Document 367.  It is the state's response to the April 16,

21    2019, order.  And in that document on Page-- on Page 7 and 8 is

22    an explanation around this.

23          THE COURT:  Well, I'm just trying to understand.  In

24    performing these functions, are you typically working with the

25    county or the municipality or both?

```
 1            MR. RUSSO:  I mean, the state is -- if you are
 2    referring to the voter registration system --
 3            THE COURT:  Well, I'm referring to the functions that
 4    are in the bullets on Pages 7 and 8 of Document 367.
 5            MR. RUSSO:  Okay.  So if the municipality is
 6    contracting with the county through the contractual
 7    arrangement, the county will prepare the ballots and prepare
 8    the GEMS database and, you know, the election day operations,
 9    the ExpressPoll testing of the machines, and essentially the
10    election day activities that most voters interact with.
11            The voter registration system is simply just the
12    county -- even if the county is conducting the election or not,
13    the county is still preparing the list of voters that is used
14    in a municipal election.  In a scenario where the municipality
15    is running its own election, then the municipality handles all
16    of the election, the voting activities where, you know,
17    whatever kind of equipment they use -- you know, if they use
18    their own DREs, they prepare those DREs.  They handle the back
19    end of running the election.  But they would still -- the
20    municipality would still get its voter registration list from
21    the county.
22            THE COURT:  All right.
23            MR. RUSSO:  Does that help explain?
24            THE COURT:  Yes, it does.  And do you know whether
25    any of the municipalities do hand voting already?  Basically a
```

1   written ballot?

2            MR. RUSSO:  Sure.  I'm not aware of any counties that

3   currently have just an all paper ballot system.  But that is

4   not to say there aren't counties -- excuse me.  I didn't mean

5   counties.  I meant municipalities.  But that doesn't

6   necessarily mean there aren't any.

7            There are some very small municipalities where they

8   may have everybody come in and vote on a paper ballot that they

9   print out.  It is very possible.

10           THE COURT:  All right.  I'm just looking at the state

11   defendants' schedule at this time.

12               **(There was a brief pause in the proceedings.)**

13           THE COURT:  Why is it important to the plaintiffs to

14   have an answer filed by next Wednesday?

15           MS. CHAPPLE:  Your Honor, this is Catherine Chapple

16   for Curling plaintiffs.  We would like to get this going as

17   quickly as possible.  The defendants have had our filing since

18   last year.  We just don't believe that there is a need for them

19   to have until June 4.  We think they should be able to respond

20   earlier than that.  So we would like it next week.

21           And, Your Honor, this is Catherine Chapple again.  As

22   long as it doesn't slow down discovery, if Your Honor would

23   prefer to have the answers June 4, we are fine with that.  But

24   we just don't want it to be slowing down discovery at all.

25           THE COURT:  I have already ordered that discovery

1   would commence.  So I don't know that -- how it would delay

2   anything.

3           MS. CHAPPLE:  Yes, Your Honor.

4           THE COURT:  So the difference in your positions about

5   the fact discovery is that the close of fact discovery for the

6   plaintiffs would end November 22nd and for the state defendants

7   October 11 and then expert discovery --

8           MR. CROSS:  Your Honor, this is David Cross for

9   Curling plaintiffs, if I could help.

10          THE COURT:  Yes.

11          MR. CROSS:  The reason for the difference in the end

12  of fact discovery -- I mean, in an ideal world, we would

13  actually have fact discovery ending closer to their time or

14  even their time.  But the challenge is almost my entire team,

15  including myself, have a trial in Utah that is going to run

16  about a month, at least three weeks beginning September 13.

17          And so that is unfortunately what had us pushing out

18  fact discovery a little while because we just won't have the

19  resources to be working in that final month of fact discovery

20  if it closes right when our trial ends.

21          I imagine there will be depositions and things going

22  on at that time.  As I told Bruce, I don't think Bruce wants to

23  be handling those alone.  So if we could push that out a month

24  that at least ensures that we are free for that final critical

25  month.

1          The only other issue that I have with their

2    schedule -- the expert period, I think, is fine as long as

3    again it builds off when the fact discovery ends.  It looks

4    like we're kind of in the same range.  The only issue I have

5    beyond the fact discovery issue is the dispositive motions.

6    This is a bench trial.  This is an injunction.  There is no

7    need for dispositive motions here.  It is just forcing the

8    Court to litigate the same issues twice.  And there is no

9    reasonable jury standard here.  I'm not even sure what their

10   dispositive motions would look like.

11         They are asking you to pre-decide how you are going

12   to ultimately decide or how you might ultimately decide the

13   merits issues in the case without a whole robust, fulsome

14   evidentiary presentation.

15         So we didn't have that built in because it just makes

16   no sense in my view to have Your Honor do that on an injunctive

17   relief case where you're the one who is the ultimate fact

18   finder.  We should just move directly to that.

19         MR. BROWN:  Your Honor, this is Bruce Brown for the

20   Coalition plaintiffs.  And we agree with what Mr. Cross said.

21         In addition, the later date that the plaintiffs have

22   proposed is more realistic in light of the fact that we're also

23   going to be challenging the state's new system, should it be

24   purchased.  And we will need to have access to those -- to

25   discovery to that new system.  And so if that was all available

1    now, it might be different.  But as it is likely to come in in

2    the fall or late summer or fall at the earliest that the

3    November -- the end of November, November 22nd date, just I

4    think embraces a more realistic scenario in light of the

5    anticipated access to that equipment.

6              MR. TYSON:  Your Honor, this is Bryan Tyson for the

7    Secretary of State.  During our April 9 conference in front of

8    you, I thought we all established that this case was about DREs

9    and that this was not about any potential new system, that this

10   case was about DREs, and was going to involve that.  And we

11   have prepared a discovery schedule and a schedule for motions

12   that fits on the claims in the plaintiffs' complaint.

13             The plaintiffs have not filed an amended complaint.

14   They have said they don't want to file an amended complaint.

15   And so this is the first I'm hearing and Mr. Brown saying that

16   now we're also -- they are also planning to challenge the new

17   system when they specifically said they were not raising those

18   issues in the conference before you last month.

19             MR. BROWN:  Your Honor, we were at a different

20   hearing because we presented very detailed reasons I think in

21   writing as well as to why we were challenging both the DREs now

22   and the BMDs later and that we also showed in response to

23   questions how our challenge to the BMDs was comfortably

24   embraced by the allegations in our current complaint.

25             And so yes, we do -- in terms of looking ahead, the

```
 1    first focus and intense focus will be on the DREs.  And we will
 2    have a lot of discovery then before the state, if it does,
 3    purchases the new equipment.  But the new equipment is in the
 4    case and will be the subject of our discovery efforts.
 5              THE COURT:  Well, let me just say I thought I heard
 6    something different from both of you.  And all of this is
 7    making me very anxious.
 8              MR. CROSS:  Your Honor, David Cross, if I might be
 9    able to help.  I wonder if we can just park the issue of the
10    BMDs.  I think it would behoove the parties to have an
11    opportunity to talk through that and see where both sides are
12    on it.
13              We still haven't -- they are still in the process of
14    rolling out whatever it is they are going to roll out.  They
15    are still in the process of figuring out the pilot testing of
16    that.  So I think as that crystallizes both sides can get a
17    better sense of what is within the scope of this case and what
18    kind of discovery the plaintiffs might look for, what positions
19    the defendants might take.
20              For the sake of today's call, I would suggest that is
21    not something that needs to get resolved because I don't think
22    it drives the schedule.  I understand Mr. Brown's point.  And
23    I'm not disagreeing with him that it could ultimately have an
24    impact on the schedule.
25              As I said earlier, I'm a little bit selfish about
```

1   this.  I apologize, but we do have that trial.  So that pushes

2   the schedule out regardless for us to make sure the fact

3   discovery works and that everyone on our side of the case has

4   the resources.

5           So it doesn't seem we're that far apart on the

6   schedule as long as the defendants are willing to work with us

7   on the fact that my team has this trial.  I think we can

8   probably get to where we need to be.  The only issue is the

9   dispositive motions, and I'm not sure Your Honor has to decide

10  that now either.  We could work out a schedule that gets this

11  trial ready.  But I do just think that should be an obvious

12  nonstarter in a case where they are asking Your Honor to

13  basically do the same thing twice, once on a truncated written

14  record and then another trial.  It just doesn't make sense.

15          MR. BROWN:  Your Honor --

16          THE COURT:  I suggest that everyone needs to look

17  over the transcript again.  I mean, maybe what -- everyone just

18  maybe peaceably went their own way in construing what was said

19  there.  But -- and I will look at it too.

20          But I'm -- I think, Mr. Cross, there is something

21  that you said that is correct, that there's some things that

22  don't have to be resolved now.  But the structure as a whole

23  that is in front of us seems important because, for instance,

24  let's say -- let's say there is an amended complaint even and

25  that there is -- that challenges something else and it is

1  allowed here or let's say it is a related case because it is

2  associated with this case.  You know, there are a variety of

3  possibilities.  Or, of course, you could have Mr. Brown's

4  possibility that it is all -- in his view everything is

5  embraced within it.

6          I'm going to go back now since we've had such very

7  different views about what happened at the hearing.  I'm going

8  to read the transcript myself.  But I think that affects

9  obviously what is going to happen down the line.  And I -- as

10  it is, I'm very concerned about what the plaintiffs are about

11  to file right now.

12          And yes, you could address all of the issues that

13  I've raised right now in what you are filing.  But it sounds to

14  me like -- my concern is it doesn't sound to me from anything

15  that the plaintiffs have told me that you're at this point

16  prepared to address that.

17          And, you know, I've given a lot of careful thought to

18  this case.  But I don't really understand what you're preparing

19  at this point to throw us into.  And I will tell you I am not

20  available in the first three weeks of July.  So I am kind of --

21  you know, maybe I don't read the press clippings enough.  I did

22  see that you indicated today in some announcement that this was

23  your plan.

24          But I am somewhat trying to understand what would it

25  even mean to have a -- whether a trial on the merits or a full

1    preliminary injunction motion with all of these different

2    entities if you don't have that much information about what

3    they are actually doing.

4            MR. BROWN:  Your Honor, this is Bruce Brown.  We have

5    tried to be -- tried unsuccessfully to be clear about how we

6    view the litigation going forward.  The way we view it is that

7    first the DREs need to be enjoined.  Their use needs to be

8    enjoined statewide.  And that would be parallel to additional

9    fact discovery for the DREs and then, if they ever get

10   purchased, for the BMDs.

11           And then as we will explain in our motion papers, the

12   benefit of enjoining the use of the DREs now is that it

13   provides the state the opportunity to get a backup plan in

14   place in case the eventual installation of the new system gets

15   delayed when we're in the chief of the 2020 elections.

16           In terms of how that all plays out with Your Honor's

17   schedule, we anticipate also moving to enjoin the use of the

18   the BMDs.  That is down the road.  They haven't been purchased

19   yet.  So we -- based upon what we know of their options, we

20   think they are -- they should be enjoined and that when we move

21   for that injunction the state will be using hand paper --

22   hand-marked paper ballots.

23           And so we seek moving to enjoin the DREs

24   preliminarily and then permanently and then also seeking to

25   enjoin either preliminarily or permanently or both or in

1    sequence the BMDs.  And so that is what we intend -- intend to

2    file.  And the facts change, as has been recognized, with the

3    state's actual implementation still being uncertain.  But that

4    is what -- the way we see it working.  And, anyway, that is

5    what we see working.

6              MR. CROSS:  Your Honor, this is David Cross for the

7    Curling plaintiffs.  That's generally right.  The motion that

8    we anticipate filing next week, the preliminary injunction,

9    will focus only on the DREs.  That is the system as Your Honor

10   may recall at the last hearing we talked about.  That is the

11   system that is in place.  That's the system that will be used

12   in at least some, if not all, of the elections that are coming

13   up this year.  And that's the system that we believe we have

14   shown already and certainly will show in a new filing that

15   voters in Georgia need relief from, including in the counties

16   that are before you.  We just heard that Fulton County itself

17   has an election coming up.

18             THE COURT:  Yeah.  But they are going to have the

19   election -- all right -- one seat.  And some of these other

20   elections are in June.  I'm just -- you can keep on going.  You

21   can complete your thought.

22             MR. CROSS:  If your point is that these are small

23   elections, that is true in terms of the scope and probably the

24   voter turnout.  But that actually is why we think this is the

25   perfect time to do this.  As we read Your Honor's decision from

1    September, what really had us lose that was just the timing,

2    the scope, the complexity, and the magnitude of the midterm

3    elections.  And we completely understood Your Honor's concerns

4    about that.

5            We're now in a position where all of the same

6    vulnerabilities are still in place.  All the same concerns that

7    Your Honor seemed to validate at least in some respects in that

8    order are still in place for each of the elections going

9    forward using that system, those machines.  And now we don't

10   have any of the feasibility concerns that were raised before.

11           These are much smaller elections.  They are more

12   focused.  It is much easier to roll out paper ballots and to

13   show that this is a system that can get in place.  And if we

14   can get that relief in place now, then by the time we're before

15   you on a permanent injunction -- you know, it is sort of like

16   what they are doing with the BMDs.  Right.  They want to roll

17   it out.  They want to test it.  They want to pilot it and show

18   that it can be done.

19           This is the same for us.  We want to show that this

20   can be done.  This is the time to do it.  It has the benefit of

21   getting protections in place that are needed for any election.

22   No matter how small an election is it still matters.  We want

23   to know that the results are what the voters intended.  And it

24   lets us get -- you know, to show that this can be done.

25           So by the time we're looking at primaries next year

1    and by the time we're looking at the presidential election and

2    statewide elections next year, we're in the place to be able to

3    do that across the state.

4          The BMDs point, again, for me that is down the road.

5    We'll see what it is they are going to do.  We'll take a hard

6    look at that, and we'll figure out what concerns, if any, we

7    have with that.  We anticipate having significant

8    constitutional concerns just based on what we have seen.

9          But the focus right now is the system that is in

10   place.  And we have a system with upcoming elections where the

11   voters walk away, as we have shown before, without confidence

12   that what they voted is what is actually coming out as

13   certified results.

14         There's no feasibility issues because these elections

15   are pretty small.  In fact, I mean, even on the counting, a lot

16   of these probably can be hand counted.  We don't even need to

17   get to the issue of scanners because of the voter turnout

18   you're talking about.  But, of course, they have the right to

19   count them with scanners if they want to.  And we have shown

20   they have sufficient scanners to do that.

21         So the timing is perfect to do this on a preliminary

22   injunction basis, and we still think it is as critical now as

23   it was last fall.

24         MR. RUSSO:  Your Honor, this is Vincent Russo.  You

25   know, we will respond to the preliminary injunction motion

1    whenever they file it.  However, you know, I will point out

2    that the public policy behind your decision last year is the

3    same then as it is now, except now we will be putting all the

4    cost and burden on the municipalities if they were enjoined

5    preliminarily from using the DREs and contracting with the

6    counties.  And, of course, there is a proper party issue that

7    you raised.

8            One other point I just wanted to make regarding the

9    scheduling and our schedule.  We tried to work off of the prior

10   schedule that defendants -- excuse me -- that plaintiffs

11   submitted in April -- on April 15 in Document 364.  I mean, we

12   all have trials and other things going on this year and into

13   next year.  But our schedule that we proposed, we were working

14   off of that trial readiness date in December that was

15   originally proposed by the plaintiffs and the timing of the

16   expert reports and close of discovery.

17           THE COURT:  Okay.  I'm going back to look at their

18   original schedule.

19           MR. RUSSO:  It is Document 364 for your reference.

20           THE COURT:  Thank you.

21           MR. BROWN:  Your Honor, what Mr. Russo said is

22   partially correct except that that proposed schedule is dated.

23   And that was submitted, you know, a month ago.  And so our

24   proposed schedule anticipates the same duration.  And

25   Mr. Russo's proposed schedule anticipates a month shorter

1    duration.

2           MR. RUSSO:  I mean, you know -- Your Honor, this is

3    Vincent Russo.  We are on a four-month discovery track as far

4    as we know.  And the plaintiffs have wanted to move this case

5    forward.  We are -- defendants are trying to get this case to

6    move forward and trying to get it on track so that we have a

7    process that it can follow just like regular litigation.

8           And the plan that plaintiffs are now proposing pushes

9    this into 2020, and it is still unclear to us what is going to

10   happen with the ballot marking devices, and that will be an

11   issue that sounds like it is going to have to come up.

12          THE COURT:  All right.  Well, you know, I think it is

13   very hard for me to know without knowing the shape of the case

14   at this juncture, candidly.  So -- but, you know, I do think

15   that you-all need to start picking up the phone with each other

16   more.  I mean, in terms of, for instance, just even the

17   question of having a Rule 26 conference, putting that off to

18   the week of June 10 seems late under the circumstances.

19          MR. RUSSO:  Your Honor, this is Vincent Russo.  We

20   dropped off the call right after I finished speaking a minute

21   ago.

22          THE COURT:  That's fine.  I'm sorry.  So what I was

23   saying was I do think that you-all need to pick up the phone

24   more and talk because -- and I think that delaying having a

25   Rule 26 conference to the week of the 10th and initial

1   disclosures until the week of the 24th -- I mean, you are

2   obviously in kind of it seems to me -- it seemed late for

3   purposes of these proceedings and making sure we can actually

4   get -- get moving.

5           I'm going to look at both of the schedules again.

6   Tell me what your schedule is come Wednesday, Thursday, and

7   Friday.  Because I'm not sure I don't need to see you-all in

8   person.  So you don't have to tell me all individually now.

9   But please email Mr. Martin immediately after this phone

10  conference so that I know whether -- I mean, obviously the

11  people representing Fulton County and the state defendants are

12  here.  But that doesn't mean that you're always available

13  either.

14          So I would not make anyone think about traveling on

15  Tuesday.  But I would like to know your availability for an

16  in-person conference on Wednesday, Thursday, or Friday.

17          MR. RUSSO:  Yes, ma'am.  This is Vincent Russo.  We

18  will do that.  We think a 26 conference would be helpful for

19  the parties to start working through discovery issues.  We are

20  happy to push it forward and have it earlier.  Frankly, that

21  was just my selfishness because I'm having a child on June 5th.

22          THE COURT:  That's not selfish if you are having --

23  you are positive of that date?

24          MR. RUSSO:  Well, that is the date it is scheduled.

25  We'll see.

1        THE COURT:  I just had one of my law clerks have a
2   baby -- his wife had a baby.  He didn't do it.  But nothing
3   went, of course, exactly as the plan.  That is the only thing.
4   But sometimes they do.  So that's a big deal.  And
5   congratulations.
6        MR. RUSSO:  Well, thank you.  I appreciate it.  We'll
7   make it work out with whatever works with you, Your Honor.
8        THE COURT:  All right.  Well, let me know.  Ms. Cole
9   indicates that she's not here on Wednesday.  So I would -- let
10  me just know about Thursday and Friday because I would prefer
11  to do this while she is here.
12       MR. RUSSO:  We will do that.
13       THE COURT:  And I know that the plaintiffs want to be
14  filing their motion then.  But I am -- it is not that I think
15  that every municipality has to be here.  But -- but I'm
16  concerned about this.  And I haven't heard anything that --
17  about kind of the posture of the case.  And I will just throw
18  one other thing out because, you know, what I have done is rule
19  on a motion to dismiss just now, and I have also ruled, of
20  course, on a record last September.
21       Now, I don't think the DREs are going to change their
22  face in the sense of the outdated software or some of these
23  issues.  On the other hand, we are dealing with very small --
24  and I understand the reasons what plaintiffs are arguing.  But
25  I will say that, you know, I don't know what anything else has

1    been done in terms of shoring up the system.  I don't know that

2    it can transform the problems with the DREs.

3            But, you know, there were many different things that

4    I considered in making my determination last year.  So it is a

5    little more complicated than plaintiffs say.

6            And did somebody drop off again?

7            MR. RUSSO:  Not the state defendants this time.  The

8    state defendants are here.

9            MR. BROWN:  Plaintiffs are here.

10            THE COURT:  And, you know, I know you don't want --

11    on one hand, it sounds like plaintiffs aren't worried about

12    this, and you are just basically pushing ahead.  But everything

13    takes time.  And, you know, whether this -- whether this

14    schedule really makes sense in terms of what the plaintiffs

15    believe the case is about or my availability or your

16    availability or being able to do this properly is a -- is a

17    real question in my mind and it is -- whether we should be

18    moving faster on some things or slower on others, these are --

19    everyone has, it sounds like, a very complicated schedule in

20    the next period of time.  And this does involve a public

21    interest.

22            So I'm just leery of getting myself into a --

23    basically framing myself into a box that doesn't work.  And so

24    I want to think a little more about what you've presented and

25    what you've explained.  And I think that the plaintiffs ought

1    to think about some of the things that have been spoken about

2    also at this hearing today by phone, and I'll look at your

3    schedules and then decide how we're going to proceed.  If you

4    could let us know by 1:00 what your schedules are.

5              MR. CROSS:  Your Honor, this is David Cross.  The

6    only day next week that works for us -- for the Curling

7    plaintiffs is Friday.  If that works for others, we should just

8    go ahead and schedule something.  Because unfortunately I'm

9    traveling Thursday and Wednesday with a client.

10             THE COURT:  Well, why doesn't everyone let me know

11   whether Friday works, and I'll look at our schedule.  I'm not

12   going to do this by phone.

13             MR. CROSS:  Your Honor, one other issue we just

14   wanted to float for Your Honor to consider is:  Just based on

15   the dealings we've had with the other side to date, we

16   anticipate there's probably going to be significant discovery

17   fights.  We wanted to raise whether Your Honor thought it might

18   be useful to the Court to bring in a magistrate or

19   alternatively a special master but someone who could take some

20   of that off your plate and move things quickly, particularly

21   given Your Honor said you are going to be out of pocket for a

22   few weeks over the summer.  So an idea to float for your

23   consideration.

24             THE COURT:  All right.  Well, I will certainly

25   consider it.  It is a little hard to consider in the abstract

```
 1   without your delineating for me what you think the discovery
 2   might be.
 3           MR. CROSS:  Understood.  We'll lay that out.
 4           THE COURT:  When?
 5           MR. CROSS:  Well, we could do it -- well, whenever
 6   the hearing is we can do it.  Or do you want us to file
 7   something in advance?  How would you like us to do that, Your
 8   Honor?
 9           THE COURT:  I think if you would -- I'm not asking
10   you to file the discovery.  But I think you should at least
11   delineate the nature of the discovery, the scope of the
12   discovery you're seeking so that we have something concrete
13   we're talking about.
14           MR. CROSS:  Absolutely.  We can do that.
15           THE COURT:  If you could do that by Wednesday
16   morning.  Can you do that?
17           MR. CROSS:  Yes, Your Honor.
18           THE COURT:  All right.  Is there anyone on the
19   defendants' side who knows -- that is critical that knows that
20   Friday is just not going to work?
21           MR. RUSSO:  This is Vincent Russo.  I think -- I'll
22   defer to Mr. Tyson on whether he is available.  I think we are
23   available then.
24           THE COURT:  All right.
25           MR. TYSON:  Your Honor, this is Bryan Tyson.  We are
```

```
 1    available.  Me and Mr. Jacoutot are available on Friday as
 2    well.
 3            THE COURT:  All right.  Well, Harry, what is Friday?
 4            COURTROOM DEPUTY CLERK:  I'll have to look.
 5            THE COURT:  All right.  Well, anyway, why don't we
 6    just hold Friday for now, and we'll be in touch with you.  I
 7    still would like you-all to confirm that you have no problems
 8    with Friday by writing.
 9            COURTROOM DEPUTY CLERK:  We have a 10:30 revocation.
10    We can do it in the afternoon.
11            THE COURT:  So it looks like we'll probably be able
12    to do it in the afternoon.  So hold Friday afternoon.  And we
13    will -- but everyone should just confirm their availability
14    meanwhile and write Mr. Martin as soon as you can.  In any
15    event, no later than 1:00 P.M.
16            MR. CROSS:  Yes, Your Honor.
17            MR. RUSSO:  Yes, ma'am.
18            THE COURT:  Thank you very much.
19            MR. RUSSO:  Thank you, Your Honor.
20            MR. CROSS:  Thank you.
21            MR. TYSON:  Thank you, Judge.
22                    (The proceedings were thereby concluded at
23                    11:29 A.M.)
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   36 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   28th day of May, 2019.

14

15

16

17                         _____
                           SHANNON R. WELCH, RMR, CRR
18                         OFFICIAL COURT REPORTER
                           UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```