**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DONNA CURLING, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO:  1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' ANTICIPATED DISCOVERY REQUESTS**

Defendants Secretary of State Brad Raffensperger, State Election Board, and

State Election Board Members (collectively, "State Defendants") respond to

Plaintiffs' Anticipated Discovery Requests [Docs. 380, 382] in order to assist the

Court in crafting an appropriate discovery and scheduling order. As discussed by

the parties and the Court on May 24, 2019, determining the proper scope of this

case is key to setting a reasonable schedule going forward. [Doc. 381, pp. 21-22].

**I. State Defendants' position regarding the scope of discovery.**

Fed. R. Civ. P. 26(b)(1) explains the proper scope of discovery in a federal

action: "Parties may obtain discovery regarding any nonprivileged matter that is

relevant to **any party's claim** or defense **and proportional to the needs of the**

**case**." (emphasis added). Courts properly limit the scope of discovery when the documents or information sought goes beyond the allegations raised in a complaint. *See, e.g., Lurensky v. Wellinghoff*, 271 F.R.D. 345, 348 (D.D.C. 2010) (limiting discovery requests to allegations actually raised in complaint).

All Plaintiffs made clear at the hearing on April 9, 2019 that they will not file amended complaints and will proceed on their existing complaints at this point. [Doc. 363 at 30:2-19; 39:17-23]. This Court recognized then that the scope of the existing complaints was at odds with what Plaintiffs raised as the scope of discovery at that hearing:

> But I can't agree with the plaintiffs that you're not going to actually have to amend ultimately your complaint here. I understand why you say it is all connected and it is the same -- it should be within the context of whatever the civil action number here is, 17-CV-2989.
>
> But **we need to have the actual specific allegations here**. I mean, that is -- we moved to a system -- at least the current status of American law is that we have more -- we rely on more specific allegations. We don't have just generic notice pleading. And I just can't conceive of your not needing to amend the complaint ultimately.

[Doc. 363 at 56:24-57:9] (emphasis added). As discussed below, this Court should properly limit discovery to the claims on the existing complaints.

A. *Claims remaining on Curling Plaintiffs' Second Amended Complaint.*

The Curling Plaintiffs dismissed all of their state-law claims except Count IX in June of 2018. [Doc. 375, p. 29 n.23]; *see also* [Doc. 222, p. 5] (dismissing

Counts III, IV, V, VI, VII, VIII, X, and XI against all defendants). This Court then dismissed Count IX as improper. [Doc. 375, pp. 59-61]. As a result, the only remaining claims from the Curling Plaintiffs' Second Amended Complaint are Counts I and II. [Doc. 222, p. 5].

Count I alleges only that Plaintiffs' fundamental right to vote was violated by "deploying a DRE voting equipment system." [Doc. 70, ¶ 61]. The entirety of Count I focuses on the "DRE System" [Doc. 70, ¶¶ 63, 64] and seeks to enjoin the use of "Georgia's DRE System for future elections" [Doc. 70, ¶ 65(b)]. Count II likewise focuses only on the use of the "DRE System" [Doc. 70, ¶ 69(a)] and the use of the DREs themselves [Doc. 70, ¶¶ 71-73, 75-78]. Like Count I, it also seeks to enjoin the use of the "DRE System." [Doc. 70, ¶ 80(a)].

The Curling Plaintiffs define "DRE System" for purposes of their Complaint as the "voting system" that relies on "the use of DRE voting computers." [Doc. 70, ¶ 38]. They also define a "voting system" as the DREs themselves. [Doc. 70, ¶ 3]. Curling Plaintiffs' remaining relevant prayers for relief are also limited to DREs. [Doc. 70, ¶ 165].

The Curling Plaintiffs do not raise any remaining claims about the use of the state's voter registration system or the other components of the state's election-administration infrastructure—they focus exclusively on the DREs as a single

component of that system.[1] Curling Plaintiffs do not challenge the entire voting system in their Second Amended Complaint, but focus only on DREs.

*B. Claims remaining on Coalition Plaintiffs' Third Amended Complaint.*

Like the Curling Plaintiffs' Complaint, the Coalition Plaintiffs focus exclusively on the use of DREs in Georgia elections in their Third Amended Complaint. In Count I, they allege a constitutional violation because the state requires individuals "to vote using AccuVote DREs." [Doc. 226, ¶ 170]. They seek only to enjoin defendants from "requiring voters to vote using DREs." [Doc. 226, ¶ 175]. In Count II, the claimed injury is that individuals are required to "vote using AccuVote DREs," resulting in different treatment for those who vote by DRE [Doc. 226, ¶¶ 177-179]. The same relief is sought in both Counts: that voters not be required to vote on DREs. [Doc. 226, ¶ 183]. This focus on DREs is carried through the prayer for relief, with the sought injunctive relief limited to prohibiting the use of DREs. [Doc. 226, pp. 71]. Like the Curling Plaintiffs, the Coalition

---

[1] For comparison purposes with other cases pending in this Court, the plaintiffs in *Common Cause v. Raffensperger*, Case No. 1:18-cv-05102, focused exclusively on the voter registration database, another portion of the election-management system, without raising claims about DREs. *See Common Cause*, [Doc. 1, ¶¶ 41-44]. Likewise, the plaintiffs in another case challenged multiple components of the election-management system, including the DREs, unlike plaintiffs here. *Fair Fight Action v. Raffensperger*, Case No. 1:18-cv-05391, [Doc. 41, ¶ 163].

Plaintiffs do not challenge the entire voting system in their Third Amended Complaint.

C. *Proper scope of discovery.*

Because all Plaintiffs' claims are limited to the use of DREs, this Court should properly limit discovery to the claims actually raised. Fed. R. Civ. P. 26(b)(1). As discussed in the specific items below, discovery sought about the entirety of the operations of the election-management system is beyond the scope of both Complaints. If Plaintiffs wish to amend their complaints to challenge other parts of the voting system (like the plaintiffs in other cases before this Court), they can seek this Court's leave to do so. But on the existing complaints, they are limited to the claims they have actually brought at this point in the litigation.[2]

State Defendants submit that the proper question in this case, and thus the proper scope of discovery, is whether the DREs were actually compromised. Alleged vulnerabilities in one component of the entire voting system alone do not tell this Court whether Plaintiffs' constitutional rights were violated. All other issues raised by Plaintiffs in their existing complaints are legal questions that do

---

[2] While Plaintiffs believe that "whenever you put a computer in between the voter and the permanent record of that voter's choice, you have an unconstitutional election system," [Doc. 363 at 31:7-9], that formulation of their potential claims is not found in any version of their complaints.

not require discovery—such as Plaintiffs' claims that the lack of capacity for a paper audit is unconstitutional.

As a result, unless Plaintiffs wish to seek leave of this Court to amend their complaints, this Court should properly limit discovery to the existing DRE units.

## II. Plaintiffs' proposed scope of discovery will require protective orders and protocols.

Bringing a lawsuit does not automatically entitle a plaintiff to receive any sensitive information held by a defendant. *See, e.g., Zoltek Corp. v. United States*, 61 Fed. Cl. 12, 15-16 (2004) (plaintiff could not access classified information about B-2 Bomber even though relevant to claims). Several of the items sought by Plaintiffs in their proposed scopes of discovery involve extremely sensitive election systems that have been designated as "critical infrastructure" by the U.S. Department of Homeland Security, as this Court has recognized. [Doc. 375, p. 9]. The Georgia Court of Appeals has previously found that releasing parts of the election system publicly, specifically the GEMS server, "would compromise election security." *Smith v. DeKalb County*, 288 Ga. App. 574, 577 (2007).

While State Defendants will work cooperatively with Plaintiffs, the release of any information in discovery that would compromise election security will require a protective order, at minimum. Ultimately, State Defendants will insist on discovery that implicates the lowest risk to critical infrastructure. Similarly, State

Defendants note now that any data which can be obtained from a system without access to the system architecture, should be obtained through those more secure means. This Court's order in *Common Cause*[3] provides a roadmap for a workable protective order governing the disclosure of any secured election systems.

## III.   Plaintiffs' Anticipated Discovery

Because Plaintiffs' claims in the operative complaints are limited to the use of DREs, many of Plaintiffs' anticipated discovery requests are either not specific to the claims in this case or are so vague that State Defendants cannot determine whether the requests are within the scope of discovery.  State Defendants request that this Court establish clear parameters regarding the scope of discovery at issue in this case, which would allow the parties to address any concerns regarding scope pursuant to the process outlined in this Court's Standing Order.  [Doc. 11 at 20.]

### A. *Requests for Production of Documents.*

According to the Discovery Notices, the Curling Plaintiffs and the Coalition Plaintiffs have identified various broad topics and document requests that they anticipate serving on State Defendants.  Plaintiffs anticipate, among other things, document requests related to the following:

---

[3] *Common Cause v. Raffensperger*, Case No. 1:18-cv-05102-AT, [Doc. 105].

- Procurement, piloting, and testing of "election and voting system equipment";

- "Georgia's election-related software";

- "Georgia's voting system software";

- Data contained in "Georgia's voting system";

- Protections of voter privacy;

- Investigations of anomalies reported in recent elections;

- Policies and procedures related to public observation of elections.[4]

- Studies, investigations, evaluations, or assessments regarding Georgia's "voting system equipment," including "other election-related servers" and "election management software";

- Security breaches or vulnerabilities related to Georgia's "election infrastructure," including voter registration systems;

- "Any mitigation efforts for any security breaches or identified voting system vulnerabilities;"

- Data contained in "election equipment" and "election management systems";

---

[4] This apparently relates to a claim abandoned by Plaintiffs. [Doc. 375 at 40, n. 32].

- Handling of voter complaints related to election security, reliability, accessibility, or transparency; and

- Efforts to comply with Open Records Requests.

*See* [Doc. 380 at 1-2; Doc. 382 at 1-2.]

These anticipated requests contain broad, undefined terms and many appear to be unrelated to the claims in the Second Amended Complaint and Third Amended Complaint. Thus, they are inconsistent with the scope of allowable discovery under Fed. R. Civ. P. 26 and this Court's Standing Order [Doc. 11]. Moreover, Plaintiffs' filing contains a catch-all provision indicating their intent to further expand discovery outside the specific allegations in the Second and Third Amended Complaints:

> …Plaintiffs reserve all rights to seek additional categories of discovery from Defendants and/or third parties as the litigation develops, **particularly in conjunction with the State's plans to acquire new voting systems**…

[Doc. 380 at 6; Doc. 382 at 4] (emphasis added). As this Court made clear, any alleged concerns Plaintiffs may have with the new voting system to be procured by Georgia have **not** been alleged in the Complaints, and thus fall outside the scope of discovery. [Doc. 363 at 56:24-57:9]; *see also* Fed. R. Civ. P. 26(b).

In addition, Plaintiffs' use of broad, undefined terms in their anticipated topics, when combined with Plaintiffs' catchall provision, make it difficult to determine the ultimate scope of documents and information Plaintiffs intend to obtain. The terms "election and voting system equipment," "election-related software," "voting system software," "other election-related servers," "election management software," "election infrastructure," and "election management systems" are all undefined and likely fall outside the normal scope of discovery under Rule 26(b).

As discussed above, Plaintiffs' Second and Third Amended Complaints fail to assert any allegations regarding Georgia's new voting system and do not challenge any other voting equipment or system in Georgia outside the DRE voting systems. *See* [Doc. 70, ¶ 3] (defining "voting system" as the DREs). Plaintiffs' anticipated requests indicate that Plaintiffs want to redefine "voting systems" more broadly than the Complaints, seeking documents related to optical scanners, GEMS databases, "other election-related servers," poll books, voter registration systems, and memory cards.[5] These broad requests, in conjunction with Plaintiffs'

---

[5] As discussed above, State Defendants do not object to Plaintiffs seeking discovery related to DREs, including inspection of an existing DRE with appropriate protocols. State Defendants are amenable to the process outlined in Judge Grubbs' Order on Pending Motions in *Coalition for Good Governance v.*

intent to seek discovery on Georgia's new voting system, make it difficult for State Defendants to determine the full scope of Plaintiffs' anticipated discovery.

Plaintiffs also seek information related to claims that either are not pleaded or no longer are at issue. First, Plaintiffs' proposed discovery categories include documents relating to "voter registration systems," investigations into anomalies in recent elections, and efforts to comply with Open Records Requests; all of which fall outside Plaintiffs' claims regarding the security of the DRE voting system. Second, Plaintiffs' proposed requests for documents on the handling of voter complaints and policies and procedures related to public observation of elections relate only to a claim that no longer exists. [Doc. No. 375 at n. 31 (noting Plaintiffs abandoned their procedural due process claims regarding DRE re-examination), n. 32 (noting Plaintiffs abandoned their public observance claim).]

B. *Depositions*

Plaintiffs' proposal to limit the number of depositions in this matter to no more than ten (10) deposition for each side is unrealistic given the number of parties in this case. There are currently seven individual plaintiffs plus one entity, which would leave all Defendants with only two remaining depositions after

---

*Crittenden*, Civil Action File No. 2018cv313418 at 6. A copy of which is attached as **Exhibit 1** for the Court's reference.

deposing each of the Plaintiffs.  In their Complaints, Plaintiffs reference other individuals as potentially having knowledge regarding their allegations (e.g., Logan Lamb, Chris Grayson, Merle King) and have relied on testimony and affidavits of several other individuals, including Alex Halderman, Richard DeMillo, and Wenke Lee, among others.  Plaintiffs' proposal would limit Defendants' ability to respond to Plaintiffs' basic allegations.  Additionally, Plaintiffs admit in their proposal that they intend to depose more than ten (10) individuals or entities—listing at least eleven (11) potential deponents in their filings. [Doc. 380 at 4; Doc. 382 at 2–3]. State Defendants will work with Plaintiffs to propose a reasonable number of individual depositions, but given the number of Plaintiffs involved and numerous factual allegations, State Defendants cannot agree to Plaintiffs' proposed number.

### C. Interrogatories and Requests for Admissions

State Defendants do not object to Plaintiffs' proposal regarding interrogatories which repeats the limit under Rule 33.  At this time, State Defendants cannot agree to Plaintiffs' proposal of 50 requests for admissions (excluding admissions for the purpose of establishing admissibility) but are willing to meet and confer with Plaintiffs regarding such requests and come to a reasonable agreement.

### D. Third-Party Discovery

State Defendants request that this Court place limitations on Plaintiffs' proposed third-party discovery. Plaintiffs' third-party discovery proposal makes clear that Plaintiffs intend to ignore the Federal Rules of Civil Procedure. The combined proposed deponents listed in both Plaintiffs' proposal totals at least eleven (11) potential deponents.[6] Moreover, Plaintiffs indicate they intend to conduct third-party discovery (which includes potential deposition subpoenas) on "additional key counties and/or municipalities," which may vary between Plaintiffs. *See* [Doc. No. 382] at 3 (noting "Coalition Plaintiffs may choose to depose different non-party counties than those identified by Curling Plaintiffs"). There are 159 counties and over 500 municipalities in Georgia. Of those municipalities, at least 148 conduct their own elections without county assistance. *See* infra Section IV. Plaintiffs' proposed parameters on third-party discovery has the potential to be overly burdensome on State Defendants as well as the targeted third parties, and State Defendants request that this Court place specific parameters on third-party discovery on Georgia counties and municipalities. Indeed, Defendants have already been subject to this burden. Plaintiffs have now issued a

---

[6] This total assumes "election services vendor" listed in the Coalition Plaintiffs' proposal is the same Curling Plaintiffs' "Election equipment vendors."

third version of a subpoena to Morgan and Rockdale Counties, which seeks information well outside the relevant scope of discovery discussed above. State Defendants request that these subpoenas be withdrawn at this time and for no additional subpoenas to be issued prior to an Order or agreement on the basic scope of discovery.

### E. Expert Discovery

Similar to Plaintiffs' other anticipated discovery requests, Plaintiffs' proposed topics for expert discovery are also vague. Without further clarity on certain topics, State Defendants are unable to fully respond at this time.

## III. The Parties' Proposed Discovery Schedules

As stated in the teleconference on May 24, 2019, State Defendants have concerns regarding the schedule proposed by Plaintiffs as it extends discovery beyond the normal four-month discovery track period under the Local Rules for no reason other than obtaining discovery on machines that are not addressed in any Complaint.[7] *See* N.D. Ga. Local Rules at App. F (Civil Rights/Voting actions).

---

[7] While Mr. Cross said his September trial was the reason for the schedule [Doc. 381, 19:11-25], Mr. Brown explained that the real reason was to have access to the new system—which is not addressed in any of the existing Complaints. *Id.* at 20:19-21:5. Plaintiffs have apparently confirmed this line of reasoning with their joint proposed schedule, insisting that their proposed close of discovery is conditioned on availability of BMDs for discovery. [Doc. 385, n. 2].

Additionally, Plaintiffs ask this court to shorten the response time for any discovery request to 14 calendar days,[8] which would place an undue burden on State Defendants (and taxpayer funds) given Plaintiffs' proposed scope of discovery and is unnecessary given the ability to handle all discovery within a normal, four-month track.  Finally, Plaintiffs seek "simultaneous expert reports," which deviates from the normal course of expert discovery.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (noting if solely providing rebuttal report, such disclosure must be made 30 days after initial expert report).  Without more information about what Plaintiffs' experts will be testifying to, State Defendants will be unable to respond effectively.  State Defendants' proposed schedule more closely follows the normal Federal Rules of Civil Procedure, which apply to this case:

| Date | Action |
|------|--------|
| May 21, 2019 | Ruling on remaining elements of the motion to dismiss/ Discovery Begins |
| June 4, 2019 | Defendants file answers |
| Week of June 10 | 26(f) Conference |
| Week of June 24 | Discovery Plan submitted to court and Initial Disclosures Deadline to Amend Complaints |
| October 11, 2019 | Fact Discovery ends |
| October–November, 2019 | Expert Discovery |

[8] Plaintiffs have also asked this Court to impose a five-day response time for discovery items served on Defendants prior to the discovery period, [Doc. 374], State Defendants object to this request and again suggest that discovery proceed consistent with the applicable rules, like any other case.

| November 22, 2019 | Dispositive motions due |

## IV. The Unique Nature of Municipal Elections

As State Defendants have previously noted, the role of the State Defendants in elections generally is limited by statute, with local authorities shouldering the bulk of responsibility for conducting the election. This delineation is more acute with regard to municipal elections. *See generally* [Doc. 367]. Yesterday, the Coalition Plaintiffs filed a brief suggesting that an "injunction prohibiting [use of] DREs" in "upcoming local and municipal elections" without any municipalities as a party in this case would pose no problem and impose no harm on those local governments. [Doc. 379 at 1]. State Defendants will address the propriety of this hypothetical relief if and when a preliminary-injunction motion is filed. However, State Defendants have voluntarily provided a significant amount of information, to the best of State Defendants' knowledge, regarding municipal elections as requested by the Court and the parties. To avoid any confusion that may result from Coalition Plaintiffs' filing, State Defendants reiterate certain basic tenets of those filings and municipal elections in Georgia.[9]

_____

[9] Coalition Plaintiffs make note of a change in law that struck the term "Direct Recording Electronic (DRE)" from the Secretary's powers under O.C.G.A. § 21-2-0(a)(15) and suggest that this change could allow an injunction against the Secretary to effectively apply to any municipalities. While avoiding significant briefing on a preliminary injunction that has not been filed, State Defendants

The information State Defendants have at their disposal or otherwise maintain is limited due to the nature of State Defendants' limited role in municipal elections. State Defendants have sought additional information from the Georgia Municipal Association regarding ownership and use of voting equipment and identification of municipalities that the association knows conduct their own elections.  The variation in elections practices among Georgia's 538 municipalities is significant, but several examples from this information may assist the Court.

As the Court and parties are aware, municipalities are solely responsible for conducting their own elections, O.C.G.A. § 21-2-70.1, they may purchase their own voting equipment, O.C.G.A. § 21-2-33, and/or may contract with the county to conduct elections.  O.C.G.A. § 21-2-45(c), *see also, generally* [Doc. 367].  State Defendants are aware of 148 municipalities that conduct their own elections, 141 when removing seven consolidated city-county governments.[10]  With respect to municipalities that conduct their own elections, the Georgia Municipal Association identified municipalities that use their own DREs, lease DREs from the county but

---

believe this assertion is incorrect. *See, e.g.* O.C.G.A. § 21-2-280 (local elections officials provide ballots).

[10] Because this information is provided voluntarily by member municipalities to the Georgia Municipal Association, there may be some cities who do conduct their own elections that are not contained in this list, which is attached as **Exhibit 2.**

still conduct the elections, use paper ballots, or use other voting machines such as lever machines.

The remaining cities—those who do not conduct their own elections, but instead contract with the counties—all use DREs.  For those elections, the Secretary of State performs the services identified in its response to the Court's April 16, 2019 Order for the counties that are conducted those elections by contract.  [Doc. 367 at 7–8].  If the state (and the counties) were unable to assist with DRE elections, municipalities would simply be left to figure their own way to conduct elections. [11]

Respectfully submitted this 30th day of May, 2019.

ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC

*/s/ Vincent R. Russo*
Vincent R. Russo
GA Bar No. 242628
Josh Belinfante
GA Bar No. 047399
Carey A. Miller

---

[11] State Defendants also note that Coalition Plaintiffs' hypothetical injunctive relief would still require use of DREs for the state's most vulnerable population—disabled individuals. [Doc. 379 at 4, n.3].  Practically speaking, this means that local governments must be prepared to operate a new, yet-to-be-determined, alternative method of voting *in addition to* use of DREs.  State Defendants will not comment on the irony of this desired result when Plaintiffs' claims are based in part on the Equal Protection Clause of the 14th Amendment.

-18-

GA Bar No. 976240
Kimberly Anderson
Ga. Bar No. 602807
Alec Denton
GA Bar No. 660632
Brian E. Lake
GA Bar No. 575966
500 14th Street NW
Atlanta, GA 30318
Telephone:   (678) 701-9381
Facsimile:    (404) 856-3250
vrusso@robbinsfirm.com
jbelinfante@robbinsfirm.com
cmiller@robbinsfirm.com
kanderson@robbinsfirm.com
adenton@robbinsfirm.com
blake@robbinsfirm.com


TAYLOR ENGLISH DUMA LLP
Bryan P. Tyson
GA Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 770.434.6868

*Attorneys for State Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing

**STATE DEFENDANTS' MOTION TO QUASH NON-PARTY SUBPOENA**

**AND REQUEST FOR RELIEF AND MEMORANDUM OF LAW IN**

**SUPPORT THEREOF** has been prepared in Times New Roman 14-point, a font

and type selection approved by the Court in L.R. 5.1(B).


*/s/ Vincent R. Russo*
Vincent R. Russo
GA Bar No. 242628

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing **STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' ANTICIPATED DISCOVERY REQUESTS** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 30th day of May, 2019.

/s/ Vincent R. Russo
Vincent R. Russo
GA Bar No. 242628