Fulton County Superior Court
***EFILED***MH
Date: 1/30/2019 3:55 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

              **Plaintiffs,**

    v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

              **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## AMENDED NOTICE OF APPEAL

On January 24, 2019, Plaintiffs gave timely notice of appeal ("the Notice of Appeal") of Plaintiffs' appeal to the Supreme Court of Georgia from the Superior Court of Fulton County's January 18, 2019 Order Dismissing Plaintiffs' Petition to Contest Election Result, a copy of which was attached to the Notice of Appeal, and another copy of which is attached to this Amended Notice of Appeal.

Pursuant to notice from the Office of the Clerk of the Superior Court of Fulton County dated January 24, 2019, received on January 28, 2019, Plaintiffs file this Amended Notice of Appeal.

1

The Notice of Appeal was filed on January 24, 2019, within thirty days of the January 18, 2019 Order of the Superior Court being appealed. *See* O.C.G.A. § 5-6-38(a).

The clerk will please omit nothing from the record on appeal, and please note:

1. Please transmit the transcript of the following hearings in this case: (a) Hearing held on December 5, 2018; (b) Hearing held on January 9, 2019; and (c) Hearing held on January 17 and January 18, 2019.

2. Please also include in the record Plaintiffs' January 23, 2019 Motion to Supplement the Record, as well as the trial court's January 30, 2019 Order Granting said Motion to Supplement the Record.

The Supreme Court, rather than the Court of Appeals, has jurisdiction of this case on appeal for the reason that Article 6, Section 6, Paragraph II of the Georgia Constitution states that the "Supreme Court shall be a court of review and shall exercise exclusive appellate jurisdiction" over "[a]ll cases of election contest."

DATED: January 30, 2019.

/s/Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700
*Attorney for Plaintiffs*

2

## <u>CERTIFICATE OF SERVICE</u>

I have this day served a copy of the foregoing via the Court's e-filing system, and separately via direct email, to the following counsel of record for defendants/appellees:

Kaye Woodard Burwell
Office of the Fulton County Attorney
141 Pryor Street, NW
Suite 4038
Atlanta, Georgia 30303
Kaye.burwell@fultoncountyga.gov

*Counsel for Defendant Fulton County
Board of Registrations and Elections*

Josh Belinfante
Robbins Ross Alloy Belinfante
Littlefield LLC
500 Fourteenth St. NW
Atlanta, Georgia 30318
Josh.Belinfante@robbinsfirm.com

*Counsel for Defendant
Secretary of State*

This 30th day of January, 2019.

Bryan P. Tyson
Strickland Brockingham Lewis LLC
Midtown Proscenium Suite 2200
1170 Peachtree St. NE
Atlanta, Georgia 30309
bpt@sbllaw.net

*Counsel for Defendant Gwinnett
County Board of Registrations and
Elections*

Edward H. Lindsey, Jr.
Dentons
303 Peachtree St. NE
Suite 5300
Atlanta, Georgia 30308
edward.lindsey@dentons.com

*Counsel for Defendant Geoff Duncan*

/s/Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

3



EXHIBIT

A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Rhonda Martin, Smythe Duval,　　　　*
Jeanne Dufort　　　　　　　　　　　*　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　*　　　FILE NO.: 2018CV313418
　　　　Plaintiffs,　　　　　　　　*
vs.　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
Geoff Duncan.　　　　　　　　　　　*
Fulton County Board of Registration　*
　and Elections,　　　　　　　　　　*
Gwinnett county Board of Registration *
And Elections　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendants.　　　　　　　　*
　　　　　　　　　　　　　　　　　*

## ORDER DISMISSING PLAINTIFFS' PETITION

The above and forgoing case having come on regularly to be heard

with all parties represented by counsel and,

Plaintiffs having made Motions for Jury trial, see Fuller v. Thomas

284 Ga. 397 (2008), Continuance and to Compel Discovery and the

Court having denied the same, and,

Plaintiffs having presented evidence and rested their case, and,

The Defendants having made a Motion for Involuntary Dismissal

Pursuant to O.C.G.A. § 9-11-41(b),

It is hereby ordered as follows:

1

1.

O.C.G.A. § 9-11-41(b) states in material part –

"After the plaintiff, in an action tried by the court without a jury, has
completed the presentation of his evidence, the defendant, without waiving
his right to offer evidence in the event the motion is not granted, may move
for dismissal on the ground that upon the fasts and the law the plaintiff has
shown no right to relief."

2.

In this case the Plaintiffs contest the result of the election for Lieutenant
Governor held November 6th, 2018, and request that the result be set aside
and that a new election be held on paper ballots.

3.

The Plaintiffs have not shown any evidence that illegal votes
have been received or legal votes rejected at the polls sufficient to change or
place in doubt the result in the race for Lieutenant Governor held on
November 6, 2018. O.C.G.A. §21-2-522.

4.

The Plaintiffs did presented evidence that the DRE system of voting used in
Georgia has many problems and irregularities and is regarded as an outdated
and inaccurate system of conducting a vote.

2

5.

In the particular race for Lieutenant Governor at issue here, the Plaintiffs showed that there were five instances of problems with voting at two precincts, that, of the 8 voting machines at the Winterville precinct in Clark County Georgia, 7 went decidedly Democratic and 1 went decidedly Republican and that there was a 4.5% undervote in the Lieutenant Governor race. There was no evidence of misconduct, fraud, or irregularity by any primary or election official or officials.

6.

"It is presumed that election results are valid, and the party contesting the Election has the burden of showing an irregularity or illegality sufficient to change place in doubt the result of the election" Hunt v. Crawford 270 GA.7 (1998). That case goes on to say "the setting aside of an election in which the people have chosen their representative is a drastic remedy that should not be undertaken lightly, but, instead should be reserved for cases in which the person challenging the election has clearly established a violation of election procedures and has demonstrated that the violation has placed the result of the election in doubt."

7.

In the Lieutenant Governor's race Geoff Duncan received 1,951,738 votes

3

and Sarah Amico received 1,828,566 votes, a difference of 123,172 votes. In the Lieutenant Governor's race there were 4.5% fewer voters than in the Governor's race. The numbers also show that Sarah Amico, a Democrat, also received more votes than those cast for the Democrat in the State-wide races for Commissioner of Agriculture, Commissioner of Insurance, State School Superintendent, and Commissioner of Labor. These number do not show any irregularity or illegality in themselves.

<div align="center">8.</div>

"Where the focus is on improperly cast ballots or irregularities in the conduct of the election, the number of illegal of irregular ballots necessary to cast doubt on an election is derived by taking the difference between the total votes cast in the election and the race at issue, and adding the margin of victory in the race at issue" Fuller v. Thomas 284 Ga. 397 (2008)

<div align="center">9.</div>

In the present case the most votes that the Plaintiff has shown that could be

<div align="center">4</div>

in any way arguably considered irregular or illegal is approximately 32,000

votes. That assumes that all such votes would have been cast for Sarah

Amico.

<div align="center">10.</div>

Therefore, Plaintiffs Petition is hereby dismissed.

**SO ORDERED** this 18th day of January, **2019**

_____
**JUDGE ADELE P. GRUBBS**
Senior Judge, State of Georgia

<div align="center">**CERTIFICATE OF SERVICE is attached.**</div>

Fulton County Superior Court
***EFILED***EM
Date: 1/24/2019 11:40 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,**

        **Plaintiffs,**

        **v.**

**ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,**

        **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

### NOTICE OF APPEAL

Notice is hereby given that Plaintiffs, pursuant to O.C.G.A. § 5-6-34(a)(1) and O.C.G.A. § 51-2-526, hereby appeal to the Supreme Court of Georgia from the trial court's January 18, 2019 Order Dismissing Plaintiffs' Petition to Contest Election Result. A copy of the Order is attached hereto as Exhibit A.

The clerk will please omit nothing from the record on appeal; provided, however, that Plaintiffs may subsequently request that certain portions of the record and certain transcripts be omitted.

The Supreme Court, rather than the Court of Appeals, has jurisdiction of this case on appeal for the reason that Article 6, Section 6, Paragraph II of the Georgia

1

Constitution states that the "Supreme Court shall be a court of review and shall exercise exclusive appellate jurisdiction" over "[a]ll cases of election contest."

DATED: January 23, 2019.


/s/Bruce P. Brown
Bruce P. Brown
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

2

## <u>CERTIFICATE OF SERVICE</u>

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 23rd day of January, 2019.

<div align="right">

/s/Bruce P. Brown
Bruce P. Brown

</div>

3

E
X
H
I
B
I
T

A

IN THE SUPERIOR COURT OF FULTON  COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Rhonda Martin, Smythe Duval,<br>Jeanne Dufort | * | |
| | * | CIVIL ACTION |
| Plaintiffs, | * | FILE NO.: 2018CV313418 |
| vs. | * | |
| | * | |
| Geoff Duncan. | * | |
| Fulton County Board of Registration<br> and Elections, | * | |
| Gwinnett county Board of Registration<br>And Elections | * | |
| | * | |
| Defendants. | * | |
| | * | |

## ORDER DISMISSING PLAINTIFFS' PETITION

The above and forgoing case having come on regularly to be heard

with all parties represented by counsel and,

Plaintiffs having made Motions for Jury trial, see Fuller v. Thomas

284 Ga. 397 (2008), Continuance and to Compel Discovery and the

Court having denied the same, and,

Plaintiffs having presented evidence and rested their case, and,

The Defendants having made a Motion for Involuntary Dismissal

Pursuant to O.C.G.A. § 9-11-41(b),

It is hereby ordered as follows:

1

1.

O.C.G.A. § 9-11-41(b) states in material part –

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the fasts and the law the plaintiff has shown no right to relief."

2.

In this case the Plaintiffs contest the result of the election for Lieutenant Governor held November 6th, 2018, and request that the result be set aside and that a new election be held on paper ballots.

3.

The Plaintiffs have not shown any evidence that illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result in the race for Lieutenant Governor held on November 6, 2018. O.C.G.A. §21-2-522.

4.

The Plaintiffs did presented evidence that the DRE system of voting used in Georgia has many problems and irregularities and is regarded as an outdated and inaccurate system of conducting a vote.

2

5.

In the particular race for Lieutenant Governor at issue here, the Plaintiffs

showed that there were five instances of problems with voting at two

precincts, that, of the 8 voting machines at the Winterville precinct in Clark

County Georgia, 7 went decidedly Democratic and 1 went decidedly

Republican and that there was a 4.5% undervote in the Lieutenant Governor

race. There was no evidence of misconduct, fraud, or irregularity by any

primary or election official or officials.

6.

"It is presumed that election results are valid, and the party contesting the

Election has the burden of showing an irregularity or illegality sufficient to

change place in doubt the result of the election" Hunt v. Crawford 270 GA.7

(1998). That case goes on to say "the setting aside of an election in which

the people have chosen their representative is a drastic remedy that should

not be undertaken lightly, but, instead should be reserved for cases in which

the person challenging the election has clearly established a violation of

election procedures and has demonstrated that the violation has placed the

result of the election in doubt."

7.

In the Lieutenant Governor's race Geoff Duncan received 1,951,738 votes

3

and Sarah Amico received 1,828,566 votes, a difference of 123,172 votes.

In the Lieutenant Governor's race there were 4.5% fewer voters than in the

Governor's race. The numbers also show that Sarah Amico, a Democrat,

also received more votes than those cast for the Democrat in the State-wide

races for Commissioner of Agriculture, Commissioner of Insurance, State

School Superintendent, and Commissioner of Labor. These number do not

show any irregularity or illegality in themselves.

<div align="center">8.</div>

"Where the focus is on improperly cast ballots or irregularities in the

conduct of the election, the number of illegal of irregular ballots necessary

to cast doubt on an election is derived by taking the difference between the

total votes cast in the election and the race at issue, and adding the margin of

victory in the race at issue" Fuller v. Thomas 284 Ga. 397 (2008)

<div align="center">9.</div>

In the present case the most votes that the Plaintiff has shown that could be

<div align="center">4</div>

in any way arguably considered irregular or illegal is approximately 32,000

votes. That assumes that all such votes would have been cast for Sarah

Amico.

<div align="center">10.</div>

Therefore, Plaintiffs Petition is hereby dismissed.

*SO ORDERED* this 18th day of January, **2019**

JUDGE ADELE P. GRUBBS
Senior Judge, State of Georgia

<div align="center">**CERTIFICATE OF SERVICE is attached.**</div>

Fulton County Superior Court
***EFILED***QW
Date: 11/23/2018 8:28 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, <br><br>         **Plaintiffs,** <br>   v. <br><br><br> ROBYN A. CRITTENDEN, **Secretary of State of Georgia,** **FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN,** <br><br>         **Defendants.** | **CIVIL ACTION FILE NO.** 2018CV313418 |

### PETITION TO CONTEST ELECTION RESULT

Plaintiffs bring this Petition to Contest the result of the November 6, 2018 general election for Lieutenant Governor for the State of Georgia ("the Contested Election") pursuant to O.C.G.A. § 21-2-520 *et seq.*

Page 1

## INTRODUCTION AND SUMMARY

1.

The conduct of the November 6, 2018 general election for Lieutenant Governor for the State of Georgia ("the Contested Election") was so defective and marred by material irregularities "as to place in doubt the result" of the election under Georgia law.  O.C.G.A. § 21-2-527(d).  This Court should therefore declare the Contested Election invalid and set the date a second election between the same candidates (Geoff Duncan and Sarah Riggs Amico).

2.

The is substantial evidence that the conduct of the Contested Election was so defective as to place the result in doubt.  As detailed below, going into the elections, the entire national intelligence and computer science communities were warning the State of Georgia that its Direct Electronic Recording ("DRE") voting system was profoundly vulnerable to malicious attack and programming glitches and irregularities.  As the experts predicted and repeatedly and formally warned the Defendant Election Officials (as hereafter identified), Georgia's November 2018 General Election was marred by multiple unexplained failures of the DRE voting system: incorrect electronic ballots being displayed to voters; touch screens

Page 2

malfunctioning causing incorrect votes to be cast and recorded; precincts with more votes than voters; unauthorized and improper changes made to eligible voters' voter registration records causing confusion and disenfranchisement; failures of the smart cards for activating voting machines, and "glitches" in electronic pollbooks creating long lines and disenfranchising voters.

3.

The malfunctioning of the DRE machines themselves had a direct impact on the race for Lieutenant Governor – the Contested Election that is the subject matter of this case. Failures in other parts of the voting system, such as the electronic pollbooks and inaccurate voter registration records, had an impact on all candidates on the ballot. The election for Lieutenant Governor received far fewer votes than all other state-wide races, even races that were further "down ballot," such as Attorney General, and lesser known races of Commissioner of Agriculture, Commissioner of Labor, and Public Service Commissioner. This is an unprecedented pattern of election results lacks any reasonably plausible innocent explanation. Worse, this aberrant pattern appears only in votes reported cast on the DRE machines. Votes on paper ballots conformed to the expected pattern, with the

Page 3

election for Lieutenant Governor receiving slightly fewer paper ballot votes than Governor, and slightly more paper ballots votes than Secretary of State.

4.

The only reasonable explanation for such an anomalous vote discrepancy in the DRE votes cast in the Contested Election—and only in the Contested Election—is that a malfunctioning, erroneous programming, or malicious manipulation of the DRE machines caused a material number of votes in the Lieutenant Governor's race to not be recorded.  This malfunctioning, erroneous programming, or malicious manipulation places in doubt the result of the Contested Election under O.C.G.A. §§ 21-2-521(1) and 21-2-521(3), and requires a declaration that the Contested Election is invalid and an order setting a second election between the same two candidates.

## **PARTIES**

5.

Plaintiff Coalition for Good Governance is a non-profit corporation organized and existing under the laws of the State of Colorado.  Coalition is a membership organization, with a membership that consists of eligible voters residing in Georgia and across the United States. Numerous Georgia members

Page 4

voted in the November 6, 2018 election.  Individuals become members of
Coalition by providing their contact information and indicating a desire to
associate with the organization. Members donate money, contribute time, and share
information and intelligence with the organization to the extent they are able and
wish to do so. Members receive informational communications from Coalition and
can benefit from Coalition's facilitation of members' individual participation in
civic activities that are germane to the organization's purpose, such as poll
watching, auditing election results, and publishing opinion pieces.   Members
utilize Coalition as a resource to answer a wide range of questions about voting
rights, voting processes, open meetings law, public records law, recalls, petition
processes, election legislation, and how to challenge election issues they encounter.

<div align="center">6.</div>

Coalition's purpose is to preserve and advance the constitutional liberties
and individual rights of citizens, with an emphasis on preserving and protecting
those private rights of its members that are exercised through public elections.
Coalition serves its purpose in multiple ways, including by providing information
and education to its members; by serving as a non-partisan educational and
informational resource for the public, press, campaigns, candidates, and political

<div align="center">Page 5</div>

parties; by monitoring nationwide developments in election law and technology; by providing speakers for events at educational institutions; by providing commentary from its leadership on election issues; by collaborating in voting rights and election integrity initiatives with other nonpartisan nonprofits and academics; by developing and sharing research and investigation of reported election problems with the press, public and other members of the election-integrity community; and by facilitating the engagement of members and prospective members as non-partisan participants in the electoral process through poll watching, attendance at public meetings, and other civic activities. Coalition has been forced to divert resources away from its other planned activities in order to assist its members who voted in the Contested Election to ascertain whether their right to vote was violated and to educate them about how to obtain relief.

<div style="text-align:center">7.</div>

Coalition, acting on its own behalf, has organizational standing to bring each of the claims for prospective relief stated herein. Coalition, acting on behalf of its members, also has associational standing to bring the claims for prospective relief stated herein.

<div style="text-align:center">Page 6</div>

8.

Plaintiff Rhonda J. Martin ("Martin") is a registered elector of the State of Georgia and a resident of Fulton County and was entitled to vote for Geoff Duncan or Sarah R. Amico in the Contested Election. Martin voted in the November 6, 2018 election and is an aggrieved elector.

9.

Jeanne Dufort is a registered elector of the State of Georgia and a resident of Morgan County and was entitled to vote for Geoff Duncan or Sarah R. Amico in the Contested Election. Dufort voted in the November 6, 2018 election and is an aggrieved elector.

10.

Plaintiff Smythe DuVal ("DuVal") is a registered elector of the State of Georgia and a resident of Cobb County and was entitled to vote for Geoff Duncan or Sarah R. Amico in the Contested Election. DuVal voted in the November 6, 2018 election. DuVal was also a candidate of the Libertarian Party for Secretary of State of Georgia.

Page 7

11.

Plaintiffs Dufort, DuVal and Martin are "contestants" as defined in

O.C.G.A. § 21-2-520(1) who are entitled to bring an election contest under

O.C.G.A. § 21-2-521.

12.

Defendant Robyn A. Crittenden, the Secretary of State of Georgia ("the

Secretary"), is a state official who, along with county boards and superintendents,

conducted the Contested Election.  The Secretary is a de facto election

superintendent with respect to the design of electronic and paper ballots, the

programming of the DRE voting machines and the GEMS tabulation server and the

management of the Election Night Reporting System and reporting of the official

precinct and county level results.  The Secretary is responsible for electronic ballot

design, the form of ballots, electronic tabulation formulas and protocols, testing

software, machine, system and ballot security.

13.

Defendant Fulton County Board of Registration and Elections ("the Fulton

Board"), is the Superintendent of Fulton County elections. The Fulton Board along

Page 8

with the Secretary and other counties' election superintendents, conducted the Contested Election.

<div align="center">14.</div>

Defendant Gwinnett County Board of Registrations and Elections ("the Gwinnett Board") is the superintendent of Gwinnett County elections, and  along with the Secretary and other counties' superintendents, conducted the Contested Election.

<div align="center">15.</div>

Defendant DeKalb County Board of Registrations and Elections ("the DeKalb Board") is the superintendent of DeKalb County elections, and along with the Secretary and other counties' superintendents, conducted the Contested Election.

<div align="center">16.</div>

The Secretary, the Fulton Board, the Gwinnett Board, and the DeKalb Board will be collectively referred to as "the Defendant Election Officials."

<div align="center">Page 9</div>

17.

Defendant Geoff Duncan ("Duncan") is the Republican candidate for Lieutenant Governor who is reported by the Secretary of State to have received the most votes in the Contested Election and whose election is hereby contested.

## JURISDICTION and VENUE

18.

Jurisdiction and venue is proper in this Court pursuant to O.C.G.A. § 21-2-523(a) as the county where Defendants Crittenden and the Fulton Board reside.

19.

This Petition was timely filed with this Court pursuant to O.C.G.A. § 21-2-524 and § 21-2-14.  The Secretary certified the results of the Contested Election on Saturday, November 17, 2018.

20.

Pursuant to O.C.G.A. § 21-2-524(b), the State Election Board has been served with a copy of this Petition by service by certified or registered mail or statutory overnight mail upon Secretary Crittenden, the chairperson of the State Election Board, and a certificate of such service is attached hereto.

Page 10

Affidavits executed by Plaintiffs verifying this Petition are attached hereto as Exhibit A.

## FACTUAL BACKGROUND

### Georgia's DRE Electronic Voting System

21.

The voting system used in Georgia during the Contested Election consists of the Diebold Global Election Systems ("Diebold")  AccuVote DRE touchscreen voting units ("DREs"),  the Diebold optical scanners for tabulating paper ballots, and the Diebold General Election Management Software ("GEMS") for tabulation and reporting of data generated by DRE and Diebold optical scanners, as well as the electronic pollbook components and electronic accessories that interface with the DRE vote recording system.

22.

DREs are configured for an election by inserting a memory card into a slot on the side of the machine.  Before the election, the file system on the memory card stores the election definition, sound files, interpreted code that is used to print reports, and other configuration information.  When operating properly, DREs use software to translate the voter's physical act of touching a particular place on the

Page 11

touchscreen into a vote for the corresponding candidate or issue, which vote is then recorded on both the DRE's removable memory card and internal flash memory. Both records of the votes are unreadable to humans. Crucially, Georgia's DREs do not create or retain any verifiable or auditable non-electronic record of the voter's selections. Hence, programming errors or malicious manipulation of the software is likely to be undetected.

<div align="center">23.</div>

Each DRE internally contains much of the same hardware that might typically be found in a very low-end general-purpose personal desktop computer in use in the early 2000s. Georgia's DREs run a Diebold-modified version of Microsoft's Windows CE operating system, the most recent version run in Georgia is Windows CE 4.1—which Microsoft stopped supporting in early January 2013. As a consequence, Microsoft is no longer issuing updates or security patches for that software. As the operating system is over twenty years old, it lags behind the two decades of computer security research and is extremely vulnerable to a wide variety of attacks that Diebold's software, regardless of version, cannot defend against.

<div align="center">Page 12</div>

24.

The unreliability and vulnerability of electronic voting systems like the one used by the State of Georgia has attracted widespread and uniform alarm at all levels of government.  On July 26, 2018, House Intelligence Committee Chairman Devin Nunes joined many federal officials and agencies concerned with national security to call for a complete ban on electronic voting.[1]  In May, the Senate Select Committee on Intelligence concluded that paperless DREs "are at highest risk of security flaws," and stated that "[s]tates should rapidly replace outdated and vulnerable voting systems" with machines that "[a]t a minimum . . . have a voter-verified paper trail."[2]  Similarly, in March, DHS Secretary Nielsen labeled electronic voting systems "a national security concern."

25.

In January 2018, the Congressional Task Force on Election Security issued a Final Report addressing the insecurity of the country's voting infrastructure:

---

[1] http://thehill.com/hilltv/rising/398949-house-intel-chair-calls-for-ban-on-electronic-voting-systems.

[2] Senate Select Committee on Intelligence, Russian Targeting of Election Infrastructure During the 2016 Election: Summary of Initial Findings and Recommendations (May 8, 2018) ("SSCI Report"), at https://www.burr.senate.gov/imo/media/doc/RussRptInstlmt1-%20ElecSec%20Findings,Recs2.pdf.

Page 13

> Given the breadth of security risks facing voting machines, it is
> especially problematic that approximately 20% of voters are casting
> their ballots on machines that do not have any paper backup. *These
> voters are using paperless Direct Recording Electronic (DRE)
> machines that have been shown over and again to be highly
> vulnerable to attack.* Because these machines record votes on the
> internal memory of the machine, and do not leave any paper backup, it
> is near impossible to detect whether results have been tampered with.[3]
>                                     26.

These recent alarms from the federal government amplify years of warnings

from computer scientists, who have uniformly concluded that paperless balloting is

unreliable, unquestionably insecure, and unverifiable.   California's 2007 "Top-to-

Bottom Review" ("TTBR")[4] found that DREs were "inadequate to ensure accuracy

and integrity of the election results…"; that the system contained "serious design

flaws that have led directly to specific vulnerabilities, which attackers could

exploit to affect election outcomes…"; and that "attacks could be carried out in a

manner that is not subject to detection by audit, including review of software

---

[3] Congressional Task Force of Election Security, *Final Report*, https://democrats-
homeland.house.gov/sites/democrats.homeland.house.gov/files/documents/TFESReport.pdf (Feb. 14,
2018), at 24 (emphasis added).

[4] See Joseph A. Calandrino, et al., Source Code Review of the Diebold Voting System,
http://votingsystems.cdn.sos.ca.gov/oversight/ttbr/diebold-source-public-jul29.pdf (Jul. 20, 2007).

Page 14

logs."[5] Citing these vulnerabilities of the Diebold's AccuVote DREs, California

Secretary of State Debra Bowen decertified California's voting system.[6] Ohio's

2007 "Evaluation and Validation of Election-Related Equipment, Standards and

Testing ("EVEREST")[7] concluded that Ohio's AccuVote "system lacks the

technical protections necessary to guarantee a trustworthy election under

operational conditions." [8] Any number of published studies are in accord.[9]

<div align="center">27.</div>

On September 6, 2018, the National Academy of Sciences, Engineering, and

Medicine and the associated National Research Council (NAS) issued a consensus

report entitled "Securing the Vote: Protecting American Democracy."  A

consensus report of the NAS represents the highest authority that the U.S.

---

[5] See California Secretary of State, *Withdrawal Of Approval*,
http://votingsystems.cdn.sos.ca.gov/vendors/premier/premier-11824-revision-1209.pdf (Dec. 31, 2009 rev.), at 2, 3.

[6] See Withdrawal Of Approval, supra note 5, at 5.

[7] Pennsylvania State Univ., et al., *EVEREST: Evaluation and Validation of Election-Related Equipment, Standards and Testing*, https://www.eac.gov/assets/1/28/EVEREST.pdf (Dec. 7, 2007).

[8] See *EVEREST*, *supra* note 7, at 103.

[9] *See also* Feldman, et al., "Security Analysis of the Diebold AccuVote-TS Voting Machine," *Proc. 2007 USENIX/ACCURATE Electronic Voting Technology Workshop*, 1 (Aug. 2007).

<div align="center">Page 15</div>

Government can rely upon when it seeks to be advised on matters of science, technology and engineering.

<p style="text-align:center">28.</p>

The NAS report makes the following recommendation for removing DREs of the kind used in Georgia's elections from service: "Elections should be conducted with human-readable paper ballots." The NAS report continues: "Voting machines that do not provide the capacity for independent auditing (e.g., machines that do not produce a voter-verifiable paper audit trail) should be removed from service as soon as possible." NAS Report, page 6. The NAS report concludes: "Every effort should be made to use human-readable paper ballots  in the 2018 federal election." NAS Report, page 7.

<p style="text-align:center">29.</p>

The vulnerabilities identified by all of these governmental authorities and computer experts apply specifically to the DREs with no paper trail used by the Defendant Election Officials and other election official across the State of Georgia in the Contested Election.

<p style="text-align:center">30.</p>

The already unacceptable extreme vulnerability of Georgia's system was

<p style="text-align:center">Page 16</p>

greatly increased by Secretary Kemp's failure to secure the State's central election server before and after the 2016 elections. That server contained voter registration files used for creating the electronic pollbooks used in the polling places as well as programs and data for most components in Georgia's voting system. From at least 2002 until at least December 31, 2017, Georgia's Secretaries of State have contracted with Kennesaw State University ("KSU"), for the creation of the Center for Election Services ("CES") at KSU to assist the Secretary in the fulfillment of the office's statutory duties to manage Georgia's DRE system. CES now operates out of the Secretary's office rather than at KSU. Between at least August 2016 and March 2017, and likely for a much longer time, this server and its highly sensitive contents were fully accessible to any computer user with Internet access, causing all 50,000+ components in the DRE voting system statewide to be vulnerable to malicious attack.

<div align="center">31.</div>

In late August 2016, cybersecurity researcher Logan Lamb accessed files hosted on the "elections.kennesaw.edu" server on the public internet, including the voter histories and personal information of *all* Georgia voters, tabulation and memory card programming databases for past and future elections, instructions and

<div align="center">Page 17</div>

passwords for voting equipment administration, and executable programs

controlling essential election resources.  On August 28, 2016, Lamb contacted CES

to warn that CES should assume that the sensitive documents hosted on the

"elections.kennesaw.edu" server had already been downloaded by unauthorized

persons and that all sensitive files should be considered compromised. Yet for

reasons that have never been explained, the KSU server was not secured until

March, 2017.  After Lamb notified CES in August 2016 in the runoff to the

presidential election, CES staff and the Information Technology Staff at KSU

conferred numerous times and reporting that the server driving the voting system

was "compromised," had "critical vulnerabilities" and was accessible by

anonymous malicious users. Yet, CES did not secure the server or remove its

election system contents from public access until they were contacted again in

March 2017 by Lamb's colleague after Lamb and his colleague again found the

system and all sensitive voter registration data open to anyone with internet access.

CES Director Michael Barnes further acknowledged in sworn testimony that he

had not studied the provided sworn testimony of Lamb or other experts as to the

details of the vulnerabilities discovered.

Page 18

32.

Secretary Kemp's agents at KSU did not conduct or order a forensic examination to determine whether the server had been altered or manipulated. Neither Secretary Kemp's agents at KSU, nor his internal staff at the Secretary of State's office, has ever properly verified the integrity of software, passwords, databases or encryption keys that were hosted on the compromised "elections.kennesaw.edu" server.  As a consequence, the compromised software, passwords, and encryption keys were used on the equipment employed in the Contested Election.

33.

Because of the design defects in Georgia's paperless DRE voting system, and the increased vulnerability of the system caused by Secretary Kemp's neglect, Georgia's DRE system is particularly vulnerable to what is called "undetectable manipulation" – alterations to programming that cannot be detected, or that cannot be detected without very sophisticated, expensive and impractical time-consuming forensic examination.  Undetected manipulation is the most common, widely recognized, and serious threat facing computer systems, including election systems.  Because of the high risk of undetected manipulations, it is impossible for

Page 19

Georgians to have any reasonable degree of confidence in the integrity of the election results produced by Georgia's DRE voting system.

34.

Two months prior to the November 6, 2018 election, the District Court in *Curling v. Kemp,* N.D. Ga., No. 17-cv-02989, made the following findings in the Court's September 17, 2018 Order denying injunctive relief relating to the 2018 Elections: "Plaintiffs have so far shown that the DRE system, as implemented, poses a concrete risk of alteration of ballot counts that would impact their own votes. Their evidence relates directly to the manner in which Defendants' alleged mode of implementation of the DRE voting system deprives them or puts them at imminent risk of deprivation of their fundamental right to case an effective vote (i.e., a vote that is accurately counted)." Order at 39.

35.

Ignoring the recommendations and warnings of officials at the highest levels of the Federal Government and the entire computer science community, Defendants Election Officials deployed the DRE election system in the 2018 General Election with predictable results, as explained below. The Defendant

Page 20

Election Officials took this reckless action even though they had and have the statutory authority and means to conduct verifiable and safe paper-ballot elections.

### Irregularities in the 2018 Election

36.

As could have been predicted by the warnings by the entire national intelligence, election integrity, and computer science communities, Georgia voters in the 2018 General Election experienced every kind of election irregularities that alone but especially in combination place the vote results in serious doubt.

37.

The State's voter registration system was plagued with errors. As is detailed in the Federal District Court's Opinion in *Common Cause v. Kemp,* N.D. Ga., No. 18-cv-5012, comparing the 2018 election and the last non-presidential election in 2014, there has been a statistically significant increase in the proportion of voters required to vote on provisional ballots relative to the total vote, largely because of repeated inaccuracies in the State's voter registration system. In granting injunctive relief to the Plaintiffs in *Common Cause,* the District Court held: "Plaintiff has shown a substantial likelihood of proving that the Secretary's failure to properly maintain a reliable and secure voter registration system has and will

Page 21

continue to result in the infringement of the rights of the voters to cast their votes and have their votes counted." Order, November 12, 2018, at 42.

<div align="center">38.</div>

Voters reported thousands of problems during the November 6, 2018 election, including of DRE malfunctions, voting problems, improper disenfranchisement of eligible voters, electronic pollbook malfunctions, improper absentee ballot application and ballot rejections, and voter registration record errors resulting in incorrect polling place assignments or total disenfranchisement of eligible voters. Specific reports by polling place, voters' names, and dates will be provided in detail in an anticipated prompt amended complaint after details are verified and properly summarized.

<div align="center">39.</div>

What follows here are illustrative examples of these irregularities out of the thousands of complaints and inquiries that have been logged with campaigns, non-profit voter protection groups, and the press.

<div align="center">40.</div>

A voter attempted to vote for Amico at the Henry County Voting Registration office in McDonough. When she saw her summary screen on the

<div align="center">Page 22</div>

touchscreen machine before casting her ballot, despite her original choice for Amico, no candidate choice was listed for Lieutenant Governor, and her "YES/NO" vote on one of the ballot questions had been changed, reflecting the opposite of her choice. Upon expressing her concern to a poll worker, the poll worker dismissed her concern.

41.

On November 6, at Allen Temple AME church polling place in Fulton County a senior voter asked the manager for assistance voting. However, at the end screen when the voter and manager were verifying the vote review page, they saw that the lieutenant governor and one other race were unvoted on the summary screen. The manager asked the voter if she had intended to vote for those and had mistakenly skipped them. The voter said that she wanted to vote for lieutenant governor. The voter touched on the screen where it said lieutenant governor so that she could vote on that race. The machine did not respond properly, but instead jumped and displayed the message that her ballot had been cast. The manager witnessed that the voter did *not* press cast ballot, which was far away from where the voter touched. The manager reportedly took the machine offline right away. The polling place manager noted that the voter did not get to vote for lieutenant

Page 23

governor.

42.

Allgood Elementary School in DeKalb County is in the 4th U.S.

Congressional District. A voter on Election Day at the Allgood Elementary School

in DeKalb County reported to a pollwatcher that her screen ballot featured Karen

Handel as the Democratic candidate; there was no Republican candidate. Handel,

of course, was the Republican candidate in the race for the 6th U.S. Congressional

District.

43.

At a polling place in Lithonia, a voter checked in and was given a yellow

card to use in the machine. On page one of the electronic ballot, only the

governor's race appeared on the ballot; the Lieutenant Governor's race was not

displayed. Amico's name appeared for the first and only time when the summary

page was viewed.

44.

Marilyn Marks, Executive Director of Coalition for Good Governance and

Logan Lamb, cybersecurity researcher, observed early voting on November 1, at

the Ponce de Leon Library in Atlanta. In only 30 minutes of time at the polling

Page 24

place, they observed 3 DRE voting machines malfunction causing the voters' ballots to be cancelled. The malfunctions created confusion and very long wait times and long lines at the polling place.

<div align="center">45.</div>

At the Red Rock Community Center in Worthy County, a voter reported being given one voter access card to vote for the governor etc., and an entirely separate card to vote for solely for "the commissioner." The second ballot/card (that reportedly had only "the commissioner") did not list the candidates' parties - simply the candidate's names. The voter is certain that the second card she was given and associated ballot had only one race, a "commissioner."  Additionally, the machine flipped her vote for Sarah Riggs Amico to the Republican candidate for Lieutenant Governor multiple times, forcing her to click several times to make the cursor stay on Amico's name.

<div align="center">46.</div>

At Grady High School polling place in Atlanta, Election Night DRE machine results tapes show anomalies that suggest DRE programming problems. Although the polling place and associated precincts are squarely within Congressional District 5, the tapes showed available choices as having included

<div align="center">Page 25</div>

Congressional District 6, 11 and 13. The Secretary's official results website shows these three available Congressional District choices in the Grady High School polling place although no votes for those choices were reported. Additionally, two machine results tapes show a total of 123 less votes cast than the public counter of ballots cast reported for the machine.

<div align="center">47.</div>

There were hundreds of reports of DRE machines "flipping" votes from one candidate to the opposite candidate. Voters reported being instructed to "fix" the flip in many different ways, and sometimes required trial and error and multiple attempts to press various parts of the screen. Voters presumably assumed that machines are properly recording their final vote, but there is no way to confirm that the vote is recorded as intended and as displayed on the screen.

<div align="center">48.</div>

Another apparent anomaly exists in the Dekalb County precinct Midvale Elementary in the Lieutenant Governor's race, with official results from the Secretary of State's Office showing the candidates receiving a collective 796 votes on Election Day, while the precinct's poll tapes show them receiving a collective 698 votes.

<div align="center">Page 26</div>

**Anomalous Undervote in the Lieutenant Governor's Election**

49.

The malfunctioning of the DRE voting system caused the anomalous and illegal rejection of a large number of legitimate votes validly cast in the Lieutenant Governor's race – the Contested Election.

50.

The Lieutenant Governor is the state's second highest ranking official and the office holds the particularly coveted position as President of the State Senate. As such, it is a hotly contested race that is of keen interest to most voters.

51.

In the 2018 General Election, however, the reported totals show that voters purportedly "skipped" the election for Lieutenant Governor more than any other state-wide election, causing the DRE to record an "under-vote," which means no vote was cast on that race despite other votes being cast by the same voter for other races on the same ballot.

Page 27

52.

According to the Secretary's reports, only 95.71% of voters recorded votes

for Lieutenant Governor candidates, while the participation rates in all other state-

wide contests on the same ballot range from 97.46% for Commissioner of Labor to

99.73% for Governor, as shown by the following chart:



Page 28

53.

The conclusion that a malfunctioning or malicious manipulation of the DRE voting system is responsible for the illegal rejection of votes for the Lieutenant Governor's race is further reinforced by comparing the reported results of votes on DRE touchscreen machines to votes on paper ballots (mailed ballots and provisional ballots).   The reported votes on paper ballots *do not show* any pattern of aberrant "under-voting" on the race for Lieutenant Governor that corresponds to the pattern of under-voting reflected in the DRE totals; instead, almost the same number of voters who voted on paper for Governor voted on paper for Lieutenant Governor.  This consistency is exactly what would be expected in a high-profile race for the state's second highest ranking officer.

54.

Curiously, the drop off in votes for Lieutenant Governor on the malfunctioning DRE machines appears to have a much greater negative impact upon Democratic Candidate Sara R. Amico than upon Defendant Duncan.  On the DRE machines, Amico received only 94.8% of Democratic gubernatorial candidate Stacey Abrams' total, while Defendant Duncan received 98.5% of Republican gubernatorial candidate Brian Kemp's total.  This shows a causal connection

Page 29

between the DRE use and lower *reported* participation rate among Democratic voters for Lieutenant Governor.

<div align="center">55.</div>

On November 12, 2018, Amico sent a letter to Secretary Crittenden informing the Secretary of Amico's review of the results of the Contested Election. A true and correct copy of Amico's letter is attached hereto as Exhibit B. Amico's letter details the statistical analysis of the unusually high rate of "residual votes" in the election for Lieutenant Governor and the aberrant pattern of residual votes among the various races. ("Residual votes" is the term used to describe votes that were either invalid, not recorded, or were never cast in the first place.) Amico's letter is supported by the analysis of Michael C. Herron, a professor at Dartmouth College and a recognized expert in statistical analysis and election administration. Amico's letter states: "Your office can and should take immediate steps to review the anomalous residual vote rate in the Lieutenant Governor's race and determine why it happened."

<div align="center">56.</div>

In her November 17, 2018 response to Amico's letter, attached hereto as Exhibit C, Secretary Crittenden declined to review the anomalous residual vote

<div align="center">Page 30</div>

rate, stating only that "residual votes are not uncommon in an election" because voters "are not obligated to cast a vote in each contest." Secretary Crittenden does not address the aberrant pattern of residual votes between the various races (with down ballot races showing lower residual vote rates and substantially higher vote totals), does not address the fact that the high residual vote rates correlates to the use of DRE machines on Election Day, not paper ballots, and does not address the fact that high Lieutenant Governor residual votes rates impact Democratic-leaning counties more heavily than Republican-leaning counties.

<div align="center">57.</div>

The anomalous voting pattern and totals described above, together with the known compromise of the vulnerable DRE system used in the election, are sufficient to make the election so defective as to the race for Lieutenant Governor as to place in doubt the result of the Contested Election.

<div align="center">**COUNT I: ELECTION CONTEST**</div>

<div align="center">58.</div>

Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint.

<div align="center">Page 31</div>

59.

Using the defective, legally non-compliant, and malfunctioning DRE
machines to conduct the Contested Election constituted "misconduct" and
"irregularity" sufficient to change or place in doubt the result of the Contested
Election, entitling Plaintiffs to relief pursuant O.C.G.A. § 21-2-522(1).

60.

Defendant Election Officials had prior knowledge of the non-compliant and
defective nature of the DRE voting system prior to deploying it for use in the
November 6 election.

61.

The malfunctioning DRE machines rejected legal votes or received illegal
votes sufficient to change or place in doubt the result of the Contested Election,
entitling Plaintiffs to relief pursuant O.C.G.A. § 21-2-522(3).

62.

Georgia's computerized voter registration system is flawed and does not
accurately reflect records of eligible voters, causing a significant number of
eligible electors to be rejected at the polls, or being required to cast a provisional
ballot which may not have been properly counted. The number of eligible electors

Page 32

improperly rejected adds materially to the misconduct and irregularities in the

election in a number sufficient to change the result and further place the result in

doubt.

<div align="center">63.</div>

The Fulton Board, the Gwinnett Board, and the DeKalb Board knowingly

chose to conduct the Contested Election using the defective, non-compliant, and

compromised DRE-voting system, although they have the statutory authority under

O.C.G.A §21-2-281 to choose verifiable paper ballot elections under circumstances

in which the use of voting equipment is impossible or impracticable.

<div align="center">64.</div>

Pursuant to O.C.G.A. § 21-2-527, Plaintiffs are entitled to a declaration that

the Contested Election was invalid.  Plaintiffs are further entitled to an order

calling for a second election for Lieutenant Governor between the same candidates,

Sara Riggs Amico and Geoff Duncan, and setting a date for such second election.

<div align="center">65.</div>

Given that the invalidity of the Contested Election was caused by the

malfunctioning or manipulated DRE voting and voter registration system and

electronic pollbooks, the order invaliding the Contested Election and setting the

<div align="center">Page 33</div>

second election should further enjoin the Defendants from using the DRE system

in the second election. The Order should further enjoin the Secretary to make all

necessary corrections to the voter registration files electronic pollbooks (if used)

before the second election.

## COUNT II
## FUNDAMENTAL RIGHT TO VOTE
## 42 U.S.C. § 1983

### Infringement of the Fundamental Right to Vote
### in Violation of the Fourteenth Amendment
### (Against Defendant Election Officials)

66.

Plaintiffs incorporate and reallege each of the foregoing paragraphs.

67.

The right of all eligible citizens to vote in public elections is a fundamental

right of individuals that is protected by the United States Constitution and

incorporated against the States by the Due Process Clause of the Fourteenth

Amendment.

Page 34

68.

Inherent in individuals' fundamental right to vote is the right to have one's vote counted and reported correctly and to be just as effective as the votes cast by other voters in the same election.

69.

By using defective DRE machines and a flawed and inaccurate voter registration and electronic pollbook system in the Contested Election, Defendants have knowingly and severely burdened and infringed upon the fundamental right to vote of the individual Plaintiffs and other, similarly-situated voters.

70.

These burdens and infringements on the fundamental right to vote caused by Defendants' conduct were not outweighed or justified by, and were not necessary to promote, any substantial or compelling state interest that could not be accomplished by other, less restrictive means, such as conducting the election by paper ballot.

71.

The foregoing violations occurred as a consequence of Defendants acting under color of state law. If the certified results of the Contested Election are

Page 35

allowed to stand, the individual Plaintiffs will be permanently and irreparably

deprived of their fundamental right to vote.  Accordingly, to prevent this

imminently threatened irreparable injury, Plaintiffs are now entitled to prospective

declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983

in the form of an order enjoining the Defendant to permit the individual Plaintiffs

to exercise their right to vote in a new election for Lieutenant Governor conducted

by means other than DRE voting machines and free from the foregoing violations.

72.

Plaintiffs prays that the infringement of their constitutional right to vote for

the race of Lieutenant Governor for the State of Georgia be remedied by the

holding of a new election for Lieutenant Governor, which election is conducted

using accurate voting rolls and pollbooks, and using paper ballots counted by the

counties' optical scanners and not the malfunctioning DRE machines.

## COUNT III:  EQUAL PROTECTION
## 42 U.S.C. § 1983

### Infringement of the Fourteenth Amendment's
### Guarantee of Equal Protection
### (Against Defendant Election Officials)

73.

Plaintiffs incorporate and reallege each of the foregoing Paragraphs.

Page 36

74.

Defendants knowingly treated electors who voted by DRE, including the individual Plaintiffs, differently than other, similarly situated electors voting in the same election and jurisdiction who voted by mail absentee ballot. Because of the well-known design flaws of the DRE system and the proven compromised nature of the State's DRE system, voters' recorded electronic ballots may not accurately reflect voter intent and thus voters who voted using DREs have cast a less effective ballot than voters who voted in the same election using paper ballots. Hand-marked paper ballots cast by mail ballot voters and provisional ballot voters provide clear and determinable records of voter intent. If the Contested Election had been conducted with paper ballots, recorded voter intent would not be in question, and an accurate ballot count could have been determined.

75.

The foregoing violations occurred as a consequence of Defendants acting under color of state law. If the certified results of the Contested Election are allowed to stand, the individual Plaintiffs will be permanently and irreparably deprived of their constitutional right to equal protection of the law. Accordingly, to prevent this imminently threatened irreparable injury, Plaintiffs are now entitled

Page 37

to prospective declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983 in the form of an order enjoining the Defendant to permit the individual Plaintiffs to exercise their right to vote in a new election for Lieutenant Governor conducted by means other than DRE voting machines and free from the foregoing violations.

<div align="center">76.</div>

Plaintiffs pray that the infringement of their constitutional right to vote for the race of Lieutenant Governor for the State of Georgia be remedied by the holding of a new election for Lieutenant Governor, which election is conducted using accurate voting rolls and pollbooks, and using paper ballots counted by the counties' optical scanners and not the malfunctioning DRE machines.

<div align="center">**PRAYER FOR RELIEF**</div>

**WHEREFORE,** Plaintiffs respectfully request the following relief:

1. That the Court declare the Contested Election invalid;

2. That the Court enter an order setting the date for the second election between Geoff Duncan and Sarah Riggs Amico for the office of Lieutenant Governor of the State of Georgia;

<div align="center">Page 38</div>

3. That the Court prohibit Defendant Election Officials from using the DRE voting system in the second election;

4. That the Court enjoin the Secretary to correct inaccuracies in the voter registration files, including restoring improperly removed voters, and ensure that electronic pollbooks, if used, reflect all corrections in the voter registration files to avoid disenfranchising eligible electors;

5. That the Court enjoin the Secretary to direct all county superintendents to Officer Defendants to promptly notify all mail ballot applicants of rejected mail ballot applications, and rejected mail ballots, and make records supporting the rejection reasonably available for public inspection  permitting campaigns and volunteers to assist eligible voters in curing rejected ballots and applications;

6. That the Court award Plaintiffs attorney's fees as authorized by law; and

7.  That the Court grant such other and further relief as required by law and equity.

Page 39

Respectfully submitted this 23rd day of November, 2018.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700
*Attorney for Plaintiffs*

Page 40

**CERTIFICATE OF SERVICE FOR STATE ELECTION BOARD**

This is to certify that on this date, pursuant to O.C.G.A. § 21-2-254(b), this Petition was served on the Chairperson of the State Election Board, Robyn A. Crittenden, by Statutory Overnight Mail.

This 23rd day of November, 2018.

/s/Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306

Attorney for Plaintiffs

EXHIBIT

A

## AFFIDAVIT OF MARILYN MARKS

BEFORE ME, the undersigned person who is authorized by law to administer oaths, personally appeared MARILYN MARKS, who, upon being first duly sworn, deposes and states:

1.

I am competent to give this Affidavit. The facts stated herein are based on my personal knowledge.

2.

I am Executive Director of Coalition for Good Governance, a Plaintiff in this action.

2.

I believe the facts alleged in the foregoing Petition to Contest are true, that according to the best of my knowledge and belief the contested result of the 2018 election for Lieutenant Governor for the State of Georgia is illegal and the return thereof incorrect, and that the Petition to Contest that election is made in good faith.

FURTHER AFFIANT SAYETH NOT

_____
Marilyn Marks

Sworn to and subscribed before me:

On this **23** day of _Novenber_ 2018

_____
Notary Public, State of Georgia
My Commission Expires: _June 12, 2020_

## AFFIDAVIT OF RHONDA J. MARTIN

BEFORE ME, the undersigned person who is authorized by law to administer oaths, personally appeared Rhonda J. Martin, who, upon being first duly sworn, deposes and states:

1.

I am competent to give this Affidavit. The facts stated herein are based on my personal knowledge.

2.

I believe the facts alleged in the foregoing Petition to Contest are true, that according to the best of my knowledge and belief the contested result of the 2018 election for Lieutenant Governor for the State of Georgia is illegal and the return thereof incorrect, and that the Petition to Contest that election is made in good faith.

FURTHER AFFIANT SAYETH NOT.

Rhonda J. Martin

Sworn to and subscribed before me:

On this 23 day of November 2018

Notary Public, State of Colorado
My Commission Expires: 5/16/2022

JOSEPH O'LEARY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184020229
MY COMMISSION EXPIRES 05/16/2022

## AFFIDAVIT OF SMYTHE DUVAL

BEFORE ME, the undersigned person who is authorized by law to administer oaths, personally appeared Smythe DuVal, who, upon being first duly sworn, deposes and states:

1.

I am competent to give this Affidavit. The facts stated herein are based on my personal knowledge.

2.

I believe the facts alleged in the foregoing Petition to Contest are true, that according to the best of my knowledge and belief the contested result of the 2018 election for Lieutenant Governor for the State of Georgia is illegal and the return thereof incorrect, and that the Petition to Contest that election is made in good faith.

FURTHER AFFIANT SAYETH NOT

_____
Smythe DuVal

Sworn to and subscribed before me:

On this 23rd day of November, 2018

_____
Notary Public, State of Georgia
My Commission Expires: ___06/14/2022___

## AFFIDAVIT OF JEANNE DUFORT

BEFORE ME, the undersigned person who is authorized by law to administer oaths, personally appeared Jeanne Dufort, who, upon being first duly sworn, deposes and states:

1.

I am competent to give this Affidavit.  The facts stated herein are based on my personal knowledge.

2.

I believe the facts alleged in the foregoing Petition to Contest are true, that according to the best of my knowledge and belief the contested result of the 2018 election for Lieutenant Governor for the State of Georgia is illegal and the return thereof incorrect, and that the Petition to Contest that election is made in good faith.

FURTHER AFFIANT SAYETH NOT

_____
Jeanne Dufort

Sworn to and subscribed before me:

On this 23 day of November , 2018

_____
Notary Public, State of ~~Georgia~~ Kentucky
My Commission Expires: _____9/4/20_____



EXHIBIT

B

.



# SARAH RIGGS AMICO
## FOR GEORGIA LT. GOVERNOR

November 12, 2018

Robyn A. Crittenden
Georgia Secretary of State
214 State Capitol
Atlanta, GA 30334

**Re:** *Discrepancy and/or Error in Returns Recorded for Voting Machines, Anomalous Residual Votes in 2018 Lieutenant Governor Returns*

Dear Secretary Crittenden:

I write today regarding the voting machine returns recorded in Georgia and request your immediate attention to discrepancies and/or errors in the recorded votes.

As the results of the November 6, 2018 General Election have been publicly reported, my campaign has closely reviewed them. During the course of that review, it has become apparent that significant anomalies exist in the reported vote totals for the Lieutenant Governor's race. Specifically, this race has an unusually high rate of residual votes, i.e., votes that either were invalid, not recorded, or were never cast in the first place.

As of Sunday, November 11, the residual vote rate for the Lieutenant Governor's race was approximately 4.3 percent. The existence of a residual vote in the Lieutenant Governor race is not, by itself, remarkable. Voters will commonly vote at higher rates for the most visible races, and in steadily lower rates for less visible ones. However, the publicly released data show an aberrant pattern of residual votes in the Lieutenant Governor's race that cannot be explained by normal voting patterns:

- The Lieutenant Governor's race shows elevated residual vote rates, relative to all of the statewide races on the ballot. The residual vote rate in the Governor's race, which *preceded* the Lieutenant Governor contest, was approximately 0.26 percent. The residual vote rate in the Secretary of State race, a race that *followed* the Lieutenant Governor race, was approximately 1.7 percent. This is not normal. As mentioned above, residual vote rates normally increase as one moves down the ballot. In last week's election, however, the residual vote rate in the Lieutenant Governor race was surrounded by races with significantly lower residual vote rates.

---

sarah@sarahforgeorgia.com    3600 Dallas Highway Suite 230-172, Marietta, GA 30064    770-291-8990 ext.1

1



**SARAH RIGGS AMICO**

FOR GEORGIA LT. GOVERNOR

This anomalous pattern continues as one moves down the ballot. The Lieutenant Governor race not only had a higher residual vote rate than the rates for Governor and Secretary of State. It had a higher rate than the rates for Attorney General, Commissioner of Agriculture, and Commissioner of Labor. Indeed, there were eight statewide races at the top of the November 6 ballot, and the Lieutenant Governor race had the highest residual vote rate of them all, even though the Lieutenant Governor race was second in the list of eight. *See* Attachment A for details.

- The residual vote rate for Lieutenant Governor is anomalous not only when compared to other races in the 2018 General Election, but to previous elections in Georgia as well. In 2014, the residual rate for the Lieutenant Governor's race was 2.61 percent. This rate is consistent with the normal pattern: in 2014 residual rates increased as one moved further down the ballot. This normal pattern did not happen in 2018. *See* Attachment A.

- The residual vote rate for the Lieutenant Governor race is anomalous demographically. An analysis reveals that, on average, relatively high Lieutenant Governor residual vote rates appear to impact Democratic-leaning counties more heavily than Republican-leaning counties. *See* Attachment B. Indeed, counties across Georgia were disparately impacted by the residual vote rate anomaly described here, with at least ten counties, whose supervisors are cc'd on this letter, demonstrating a residual rate for Lieutenant Governor well over 10 percent. *See* Attachment C. According to Dr. Michael Herron - a professor at Dartmouth College and a recognized expert in statistical analysis and election administration who performed this analysis - this simply does not happen in a typical election in the United States.

- Finally, the publicly available data indicate that the anomalously high Lieutenant Governor residual vote rate correlates to the use of Georgia's Direct Recording Electronic (DRE) voting machines on Election Day. A comparison of returns from votes cast on Election Day using DRE machines to returns from mail-in absentee votes, i.e., paper ballots, reveals that the residual vote for all votes cast on paper was approximately 1 percent as compared to the approximate 7 percent for votes cast electronically. In addition, the residual vote rate for Lieutenant Governor for votes cast on paper is in line with the residual vote rates for other down-ballot candidates. *See* Attachment D. The figures in this paragraph are still preliminary as it appears that absentee ballot records for last week's election are not yet complete. Still, even when so qualified, the residual vote rate gap for the Lieutenant Governor race between DRE and absentee votes cast on paper is clearly anomalous.

These stark anomalies indicate serious inadequacies in the administration of the 2018 General Election. In particular, they indicate still more problems in the performance of the DRE machines. A federal court judge recently recognized the potential for such problems, who explained that there were "serious security flaws and vulnerabilities in the state's DRE system —

sarah@sarahforgeorgia.com   3600 Dallas Highway Suite 230-172, Marietta, GA 30064   770-291-8990 ext.1

2

# ⬛ **SARAH** RIGGS **AMĭCO**
## F O R   G E O R G I A   L T .   G O V E R N O R

including unverifiable election results, outdated software susceptible to malware and viruses and a central server that was already hacked multiple times." *Curling v. Kemp*, No. 1:17-CV-2989-AT, 2018 WL 4625653, at *13 (N.D. Ga. Sept. 17, 2018).

If these were not the results from an election, but the laboratory results from an annual physical, such anomalous, elevated results would trigger an immediate phone call from the doctor's office, and a battery of additional tests. Your office can and should take immediate steps to review the anomalous residual vote rate in the Lieutenant Governor's race and determine why it happened. The Secretary of State has the authority to ensure that these machines are fully audited and tested and that the votes cast on them are recanvassed. *See* Georgia Election Code § 21-2-495 (d). Your office should exercise that authority immediately.

While the number of residual votes in the Lieutenant Governor's race is unlikely to affect the outcome of my race, more needs to be understood about the functioning of the DRE machines used on Election Day in 2018 to assure the voters of Georgia that their votes were not only duly cast, but fully counted. Runoff elections using these same machines are mere weeks away. Accordingly, I request that you and the supervisors copied on this letter, whose counties showed the most striking anomalies, initiate the audits, tests and other steps necessary to make sure that Georgia voters can fully exercise their fundamental right to vote on December 4, 2018 and in future elections.

Sincerely,

Sarah Riggs Amico
2018 Democratic Candidate for Lieutenant Governor

CC.
Atkinson County Supervisor of Elections Lorraine White
Ben Hill County Supervisor of Elections and Chief Registrar Cindi Dunlap
Clay County Supervisor of Elections Melessa Shivers
Coffee County Supervisor of Elections Misty Hampton
Hancock County Supervisor of Elections John Reid
Jefferson County Elections Superintendent Susan Gray
Quitman County Supervisor of Elections Julia Floyd
Randolph County Supervisor of Elections Todd Black
Taliaferro County Supervisor of Elections Clarris Stephens
Twiggs County Elections Superintendent Debra Stephens

sarah@sarahforgeorgia.com   3600 Dallas Highway Suite 230-172, Marietta, GA 30064   770-291-8990 ext.1

3

# Attachment A



**Residual vote rates in 2014 and 2018 General Elections, top statewide races**

Note: based on 2,596,947 ballots from 2014 and 3,940,255 ballots from 2018.
Data current as of 2:00pm EST on November 11, 2018.

# Attachment B



**Lt. Governor / Sec'y of State residual vote rate difference and 2016 Clinton percent**

Note: county dot sizes proportional to total turnout.
Data current as of 2:00pm EST on November 11, 2018.
Labeled counties have at least 50,000 votes.

# Attachment C

**Election day residual vote rates**

**\*\* ED ballot numbers are preliminary due to apparent ongoing absentee ballot counting \*\***

Potentially large relative losses in Lt Governor votes

Potentially smaller relative losses in Lt Governor votes

| County | ED ballots | Lt-Gov rvr | SOS rvr | Difference | Clinton 2016 | County | ED ballots | Lt-Gov rvr | SOS rvr | Difference | Clinton 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Quitman | 438 | 13.470 | 5.936 | 7.534 | 44.157 | Bartow | 19865 | 2.950 | 3.237 | -0.287 | 20.892 |
| Hancock | 1664 | 18.389 | 11.418 | 6.971 | 75.447 | Jeff Davis | 1963 | 7.081 | 6.877 | 0.204 | 17.698 |
| Jefferson | 3486 | 12.392 | 6.139 | 6.254 | 54.947 | Montgomery | 1945 | 5.810 | 4.884 | 0.925 | 23.779 |
| Atkinson | 1175 | 12.511 | 6.298 | 6.213 | 26.705 | Treutlen | 830 | 7.711 | 6.627 | 1.084 | 31.890 |
| Ben Hill | 1663 | 10.944 | 4.991 | 5.953 | 35.424 | White | 5571 | 3.931 | 2.477 | 1.454 | 14.207 |
| Clay | 490 | 13.265 | 7.347 | 5.918 | 54.839 | Forsyth | 37158 | 5.054 | 3.520 | 1.534 | 24.087 |
| Taliaferro | 346 | 20.520 | 14.740 | 5.780 | 60.758 | Oconee | 8303 | 5.179 | 3.637 | 1.542 | 28.002 |
| Twiggs | 2035 | 11.450 | 5.700 | 5.749 | 48.595 | Dade | 2789 | 5.522 | 3.980 | 1.542 | 15.460 |
| Randolph | 1274 | 11.303 | 5.651 | 5.651 | 55.161 | Stephens | 2474 | 7.316 | 5.618 | 1.698 | 18.810 |
| Coffee | 4682 | 10.914 | 5.297 | 5.617 | 29.421 | Banks | 3884 | 3.888 | 2.188 | 1.699 | 9.842 |

# Attachment D



**2018 Election Day and Absentee residual vote rates**

Note: only considers counties with non-negative absentee residual vote rates.
Results are preliminary due to apparent incomplete absentee ballot counts.
Dots are proportional to ballots cast, and data current as of 2:00pm EST on November 11, 2018.

E
X
H
I
B
I
T

C



# The Office of Secretary of State

*Robyn A. Crittenden*
SECRETARY OF STATE

November 17, 2018

**VIA ELECTRONIC MAIL**

Sarah Riggs Amico
3600 Dallas Highway, Suite 230-172
Marietta, Georgia 30064
sarah@sarahforgeorgia.com

Dear Mrs. Riggs Amico,

I am writing to address your petition for a recount or recanvass of votes cast in the Lieutenant Governor's race for the November 6, 2018 election. In accordance with O.C.G.A. § 21-2-495 (d), I have reviewed the petition and the accompanying information, and I have determined that such petition does not set forth verifiable evidence of discrepancies or errors not apparent on the face of the returns. Therefore, I hereby decline to order such action.

O.C.G.A. § 21-2-495 (d) states, in pertinent part, "[t]he petition pursuant to this Code section shall be in writing and signed by the person or persons requesting the recount or recanvass," and "[a] petition shall set forth the discrepancies or errors and any evidence in support of the petitioner's request for a recount or recanvass and shall be verified." Notably, the Secretary of State's authority to grant a request for a recount or recanvass is discretionary under this section.

In declining to exercise this discretionary authority, I find that your petition fails to allege any verifiable discrepancies or errors to support the underlying request. As you know, residual votes are not uncommon in an election. Voters are not obligated to cast a vote in each contest appearing on their ballots. You also readily acknowledge that the rate of residual votes in your race is unlikely to affect the ultimate outcome.

However, I can commit to you that we will continue to review the functionality of our voting equipment as we prepare for future elections in Georgia. In fact, it is standard practice for counties to conduct testing of their voting equipment prior to its use in any election, and I expect counties to continue these processes for each component of the election system in compliance with state law and rules.

The Secretary of State's office works closely with county elections and registration offices to ensure the integrity of Georgia's election system. Together, we work tirelessly to fulfill our duties under the law and rules, and we do not take these duties lightly.

Page 2 of 2

Before each election, primary, or run-off, state law and rules require county election officials to conduct public logic and accuracy testing of all voting equipment, including Direct Recording Electronic (DRE) voting equipment. This testing utilizes diagnostic measures to confirm that all components are fully operational and involves comparison of a test deck of ballots to known results. These results must match the contents of the test deck to pass, and the testing confirms that the voting equipment functions properly before use. If any unit fails testing, it cannot be used until it is repaired and tested for compliance.

Importantly, in November 2017, the Secretary of State's office conducted a thorough re-examination of DRE voting equipment and found it to be accurate and secure. On every Election Day, the Secretary of State's office also conducts parallel testing using county ballot databases to program voting equipment, cast ballots throughout the day, and compare the results to the voter's selections. This test has always shown 100% accuracy.

In the event of any run-off elections on December 4, 2018, we will utilize a ballot database from at least one of the counties specifically mentioned in your letter to conduct parallel testing on Election Day. In the meantime, I would welcome an opportunity to meet with you to discuss your concerns about the election system. Please reach out to my Executive Assistant, Robin Herron, at rherron@sos.ga.gov or (404) 657-4596 so that we can try to schedule a meeting. I look forward to our continued discussion on this matter. As always, I am at your service.

Sincerely,

Robyn A. Crittenden
Georgia Secretary of State

Fulton County Superior Court
***EFILED***AC
Date: 11/28/2018 9:39 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE  ∗ | **Civil Action No. 2018CV313418** |
| RHONDA J. MARTIN  ∗ | |
| SMYTHE DUVAL  ∗ | |
| JEANNE DUFORT  ∗ | |
|     Plaintiff(s)  ∗ | |
|         v.  ∗ | |
| ∗ | |

ROBYN A. CRITTENDEN, Secretary of State
of Georgia
FULTON COUNTY BOARD OF REGISTRATION
AND ELECTIONS
GWINNETT COUNTY BOARD OF
REGISTRATIONS AND ELECTIONS
DEKALB COUNTY BOARD OF
REGISTRATIONS AND ELECTIONS
GEOFF DUNCAN

---

### NOTICE OF CASE ASSIGNMENT

Please be advised that your case has been assigned to the Honorable Constance C. Russell. Scheduled matters will be heard in Courtroom 8-F, Justice Center Tower, 185 Central Avenue, Atlanta, Georgia 30303. If you are the filing party please submit a copy of this notice to the opposing party.

Unless a waiver or exemption has been obtained, to ensure receipt of notices of hearings and court filings all parties or their counsel must sign up for E-filing and attach themselves as notice recipients to the specific case. Questions regarding E-filing should be addressed to the Superior Court Clerk's Office or E-File Georgia.

Originals of proposed orders and other documents requiring the Court's review and signature are to be submitted to chambers via U.S. mail or courier. Such documents are not to be E-filed.

E-filed motions and pleadings requiring a response from the opposing party shall be treated as having been mailed for purposes of calculating response due dates.

For noticed hearings, conferences, trials or other court mandated appearances, E-filing, E-mailing, faxing or mailing a letter or notice of conflict does not constitute permission not to appear. No continuances will be granted unless good cause is shown.

Requests for continuance or reset and notices of conflict must be filed and a courtesy copy submitted to Judge Russell's chambers not less than 5 business days prior to the scheduled event. Unripe or untimely pleadings, filings or requests generally will not be considered prior to the date of the calendar. Requests, pleadings or filings submitted to chambers less than five business days prior to any hearing date will be treated as late filed and/or untimely, unless later filing is authorized by statute. Copies of filed notices of leaves of absence must be submitted to the Court as required by Uniform Superior Court Rule 16.1.

Correspondence and pleadings directed to Judge Russell or her staff are to be submitted via regular mail or courier, unless you are given express permission to do otherwise. Unsolicited and/or unauthorized filings or correspondence submitted via e-mail or fax will not be accepted or considered.

_Moore_

From the Chambers of
Judge Constance C. Russell
Fulton County Superior Court
Atlanta Judicial Circuit

Bruce P. Brown Esq.
BRUCE P. BROWN LAW, LLC
1123 Zonolite Rd, N.E., Suite 6
Atlanta, GA 30306

Fulton County Superior Court
***EFILED***AC
Date: 11/28/2018 9:39 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| COALITION FOR GOOD GOVERNANCE | * | **Civil Action No. 2018CV313418** |
| RHONDA J. MARTIN | * | |
| SMYTHE DUVAL | * | |
| JEANNE DUFORT | * | |
| Plaintiff(s) | * | |
| v. | * | |
| | * | |

ROBYN A. CRITTENDEN, Secretary of State
of Georgia
FULTON COUNTY BOARD OF REGISTRATION
AND ELECTIONS
GWINNETT COUNTY BOARD OF
REGISTRATIONS AND ELECTIONS
DEKALB COUNTY BOARD OF
REGISTRATIONS AND ELECTIONS
GEOFF DUNCAN

### NOTICE OF CASE ASSIGNMENT

Please be advised that your case has been assigned to the Honorable Constance C. Russell. Scheduled matters will be heard in Courtroom 8-F, Justice Center Tower, 185 Central Avenue, Atlanta, Georgia 30303. If you are the filing party please submit a copy of this notice to the opposing party.

Unless a waiver or exemption has been obtained, to ensure receipt of notices of hearings and court filings all parties or their counsel must sign up for E-filing and attach themselves as notice recipients to the specific case. Questions regarding E-filing should be addressed to the Superior Court Clerk's Office or E-File Georgia.

Originals of proposed orders and other documents requiring the Court's review and signature are to be submitted to chambers via U.S. mail or courier. Such documents are not to be E-filed.

E-filed motions and pleadings requiring a response from the opposing party shall be treated as having been mailed for purposes of calculating response due dates.

For noticed hearings, conferences, trials or other court mandated appearances, E-filing, E-mailing, faxing or mailing a letter or notice of conflict does not constitute permission not to appear. No continuances will be granted unless good cause is shown.

Requests for continuance or reset and notices of conflict must be filed and a courtesy copy submitted to Judge Russell's chambers not less than 5 business days prior to the scheduled event. Unripe or untimely pleadings, filings or requests generally will not be considered prior to the date of the calendar. Requests, pleadings or filings submitted to chambers less than five business days prior to any hearing date will be treated as late filed and/or untimely, unless later filing is authorized by statute. Copies of filed notices of leaves of absence must be submitted to the Court as required by Uniform Superior Court Rule 16.1.

Correspondence and pleadings directed to Judge Russell or her staff are to be submitted via regular mail or courier, unless you are given express permission to do otherwise. Unsolicited and/or unauthorized filings or correspondence submitted via e-mail or fax will not be accepted or considered.

_Moore_

From the Chambers of
Judge Constance C. Russell
Fulton County Superior Court
Atlanta Judicial Circuit

Bruce P. Brown Esq.
BRUCE P. BROWN LAW, LLC
1123 Zonolite Rd, N.E., Suite 6
Atlanta, GA 30306

Fulton County Superior Court
***EFILED***AC
Date: 11/28/2018 10:02 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,**

          **Plaintiffs,**

       **v.**

**ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,**

          **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## PLAINTIFFS' MOTION FOR CLARIFICATION AND
## TO REQUEST SETTING OF TRIAL DATE

Plaintiffs file this motion seeking clarification of the scope of the

proceedings currently scheduled for next Thursday, December 6, 2018, at 1pm, and

to request that the Court set a date for the taking of testimony and other evidence

as contemplated by the Election Contest statute, including O.C.G.A. § 21-2-525.

This clarification and scheduling is necessary so that the parties may subpoena

witnesses, examine essential electronic evidence, and make travel and other

Page I

arrangements for experts and counsel, and otherwise prepare and plan for trial on the merits.

Pursuant to Order entered earlier today, the Court has directed the Clerk to issue summons to the defendants and candidates for them to answer and appear on December 6, 2018, at 1 p.m. This is, of course, consistent with O.C.G.A. § 21-2-524(f), which states that the Court shall issue notice requiring defendants "to appear and answer such petition, on a day to be fixed in such notice, not more than ten days nor less than five days after the service of such notice."

The actual trial of the matter, however, is governed by O.C.G.A. § 21-2-525(a), which states: "Within 20 days after the return day fixed in the notice as provided in subsection (a) of Code Section 21-2-524 to the defendant" [that is, the day fixed for the defendant to "to appear and answer"] "the presiding judge shall fix a place and time for the hearing of the contest proceeding." O.C.G.A. § 21-2-526 then states that all issues of a contest "shall be fully tried and determined by the court" without a jury, unless a jury is demanded by a party before the call of the case.

The Election Contest statute does not prohibit the scheduling of the trial for the same day as the answer, provided the defendants have adequate notice. Each

of the defendants have been on actual notice of the Petition since November 24, 2018, and should be served with formal process shortly.

However, it is not clear if the December 6th date is the "appear and answer" date under O.C.G.A. § 21-2-524(f), or the answer date *and* the date for the evidentiary hearing and trial of the matter under O.C.G.A. § 21-2-526 necessary for the Court to "fully" try and determine the issues raised in this contest. O.C.G.A. § 21-2-527 (a).

Plaintiffs would respectfully request that the trial date be set for a date no earlier than the week of December 10, 2018, and Plaintiffs anticipate the trial to last at least two days.  Plaintiffs note that a recent election contest (Gasaway v Ellison 2018cv249 in Banks County  Superior Court) for a State House primary election lasted one and one-half days,[1] and it is reasonable to anticpate this case lasting as long, as this case involves multiple and complex irregularities created by a technologically flawed electronic voting system.  Plaintiffs anticipate calling a number of voters, pollworkers  and pollwatchers who were eye-witnesses to alarming machine irregularities (such as the ballot not including the Lt. Governor's

---

[1] The  May 22, 2018 Republican Primary for House District 28 was contested on June 7, 2018 and involved multiple counties. Pleadings and exchanges of information occurred over the course of the summer, culminating in a trial on September 18 and 19, 2018, approximately 4 months after the contested election.  The Court's order for a new election set for December 4, 2018 was issued on September 20, 2018.

Page 3

race, and repetitive "vote flipping"), and expert election statisticians to testify that there is no plausible explanation for the vast differences between machine and paper votes other than some kind of machine malfunction or programming error. In addition, Plaintiffs will be filing a motion to inspect a sample population of the suspect electronic voting equipment to determine whether there is an extant electronic evidence of the causes of the election machine malfunctions.

Based on the foregoing, Plaintiffs request a clarification as to the schedule and respectfully suggest the following:

1. That the Court hold a preliminary hearing or status conference at the time specified, 1 pm on December 6, to address preliminarily issues related to the trial of the matter, including stipulations, evidence, discovery, necessary parties,  etc., as well as any special issues raised under the election contest laws.

2. That the Court fix a date for the trial itself, for two days no earlier than the week of December 10, 2018, and taking into consideration realistic dates for necessary forensic examination and submission of pre-trial briefing.  Though Plaintiffs believe that the uncontroverted evidence will establish that the election was "so defective" as to "place in doubt the

result," 21-2-526(d), Plaintiffs would recommend that two days be

reserved for the trial of the case.

Respectfully submitted this 28th day of November, 2018.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

Page 5

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 28th day of November, 2018.

/s/Bruce P. Brown
Bruce P. Brown

Fulton County Superior Court
***EFILED***LS
Date: 11/28/2018 10:14 AM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE , <br> RHONDA J. MARTIN , <br> SMYTHE DUVAL , <br> JEANNE DUFORT <br>   Plaintiff(s) <br>      v. | **Civil Action No. : 2018CV313418** |

ROBYN A. CRITTENDEN, Secretary of State of Georgia ,
 FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS ,
 GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS ,
 DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS ,
 GEOFF DUNCAN

## ORDER TO ISSUE NOTICE OF SPECIAL PROCESS

In accordance with OCGA 21-2-524(f) each Defendant and Candidate named in the above styled action shall be summoned to appear and answer Plaintiffs' Petition to Contest Election Result filed on November 23, 2018. The parties shall answer and appear before the Court on December 6, 2018 at 1:00 p.m. in Courtroom 8F of the Superior Court of Fulton County.

The Clerk of Court shall, as required by the statute, issue a notice of special process to the Sheriff of Fulton County. The Sheriff of Fulton County and/or Plaintiff shall ensure that personal service of the Notice of Process and Petition on all parties is accomplished not less than five days prior to December 6, 2018.

So Ordered this ___ Day of _____

JUDGE CONSTANCE C. RUSSELL
FULTON COUNTY SUPERIOR COURT
ATLANTA JUDICIAL CIRCUIT

Fulton County Superior Court
***EFILED***LW
Date: 11/28/2018 3:21 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, JEANNE DUFORT <br><br> Plaintiffs, <br><br> v. <br><br> ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, GEOFF DUNCAN <br><br> Defendants. | )))))))))))))))))))))) <br><br> CIVIL ACTION FILE NO.: 2018-CV-313418 |

### NOTICE OF APPEARANCE

COMES NOW BRYAN P. TYSON, and, pursuant to Rule 4.2 of the Uniform Superior Court Rules, hereby enters his appearance as counsel for Defendant Gwinnett County Board of Registrations and Elections. Copies of all further pleadings, orders, and notices should be sent to:

Bryan P. Tyson
bpt@sbllaw.net
Strickland Brockington Lewis LLP
1170 Peachtree Street NE
Suite 2200
Atlanta, Georgia 30309
Phone: (678) 347-2200
Facsimile: (678) 347-2210

1

Respectfully submitted this 28th day of November, 2018.

STRICKLAND BROCKINGTON LEWIS LLP

/s/ Bryan P. Tyson
Bryan P. Tyson
Georgia Bar No. 515411
bpt@sbllaw.net
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, Georgia 30309
(678) 347-2200 (telephone)
(678) 347-2210 (facsimile)

*Attorney for Defendant Gwinnett County Board of Registrations and Elections*

2

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE,<br>RHONDA J. MARTIN,<br>SMYTHE DUVAL,<br>JEANNE DUFORT<br><br>    Plaintiffs,<br><br>v.<br><br>ROBYN A. CRITTENDEN,<br>Secretary of State of Georgia,<br>FULTON COUNTY BOARD OF<br>REGISTRATION AND ELECTIONS,<br>GWINNETT COUNTY BOARD OF<br>REGISTRATIONS AND ELECTIONS,<br>DEKALB COUNTY BOARD OF<br>REGISTRATIONS AND ELECTIONS,<br>GEOFF DUNCAN<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION FILE NO.:<br>)  2018-CV-313418<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **NOTICE OF APPEARANCE** with the Clerk of Court using the *Odyssey* eFileGA electronic filing system, which will send electronic notification of such filing to all counsel of record.

This 28th day of November, 2018.

/s/ Bryan P. Tyson
Bryan P. Tyson
Georgia Bar No. 515411

3

Fulton County Superior Court
***EFILED***MH
Date: 11/29/2018 10:48 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,**<br><br>        **Plaintiffs,**<br>v.<br><br>**ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,**<br><br>        **Defendants.** | **CIVIL ACTION FILE NO. 2018CV31348** |

## SPECIAL PROCESS SUMMONS
## FOR PETITION TO CONTEST ELECTION RESULT

To the following Defendants:

1. Robyn A. Crittenden, Secretary of State of Georgia
2. The Fulton County Board of Registration and Elections
3. The DeKalb County Board of Registrations and Elections
4. The Gwinnett County Board of Elections and Registration
5. Geoff Duncan

And to the following Candidates who participated in the Election for Lieutenant Governor, held November 6, 2018:

1. Sarah R. Amico
2. Geoff Duncan

1

In accordance with O.C.G.A. § 21-2-524(f), each Defendant and Candidate listed above is hereby summoned and required to appear before the **SUPERIOR COURT OF FULTON COUNTY** to answer Plaintiff's **Petition to Contest Election Result** (the "Petition"), timely filed on November 23, 2018, and assigned case number 2018CV313418. A copy of the Petition is attached hereto.

You shall answer and appear before the Court **ON DECEMBER 6, 2018 AT 1:00 p.m., in COURTROOM 8F of the SUPERIOR COURT OF FULTON COUNTY.**

This 29 day of November, 2018.

<div style="margin-left:40%">

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By:

_____
Deputy Clerk

</div>

To the Defendant / Candidate upon whom this petition is served:

This copy of the Summons and Petition was served upon you this _____ day of _____ 2018.

<div style="margin-left:40%">

_____
Deputy Sheriff

</div>

2

Fulton County Superior Court
***EFILED***DG
Date: 11/29/2018 5:31 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,**<br><br>**Plaintiffs,**<br>v.<br><br>**ROBYN A. CRITTENDEN,**<br>**Secretary of State of Georgia,**<br>**et al.,**<br><br>**Defendants.** | **CIVIL ACTION FILE**<br>**NO. 2018CV31348** |

### PLAINTIFFS' EMERGENCY MOTION FOR INSPECTION OF ELECTRONIC ELECTION EQUIPMENT AND PRODUCTION OF DOCUMENTS

Pursuant to O.C.G.A. § 9-11-34(a)(1), Plaintiffs file this Emergency Motion for Inspection of Electronic Voting Equipment and Production of Documents, and show the Court the following:

### I.    Summary

There is substantial evidence that the electronic voting equipment used in the 2018 general election was "so defective" "as to place in doubt the result" of the

election for Lieutenant Governor, including scores of voters' and eye-witness reports of malfunctioning Direct Electronic Recording ("DRE") touchscreen machines and an aberrant pattern of votes from DRE machines that does not appear in the 230,000+ votes cast on paper ballots. *See* O.C.G.A. § 21-2-527(d). *See Taggart v. Phillips*, 242 Ga. 454, 455 (1978) ("doubt may be cast on an election by showing improper maintenance of the voting machines resulting in votes being miscast"). Additionally, there are material and verifiable reports of machine malfunctions including "vote flipping," the premature casting of ballots without voter review, and irregularities of vote counts appearing on the DRE voting machine poll tapes.

Vital to the determination of the causes of these irregularities is an expert forensic examination of the electronic equipment itself, equipment that is currently in the possession of Defendants and third-parties but which may be made available for immediate inspection without disruption of ongoing election activity. This examination must occur immediately because of an imminent trial and because the Supreme Court of Georgia has repeatedly instructed that "litigants should make every effort to dispose of election disputes with dispatch." *Payne v. Chatman,* 267 Ga. 873, 876 (1997). The requested examination is expressly authorized by O.C.G.A. § 9-11-34(a)(1), which allows the inspection, sampling and testing of

"any tangible things" that are relevant to the subject matter of the litigation.

Additionally, some of the voting machines to which some of the irregularities can

be traced are improperly being prepared for use in the December 4, runoff election

in violation of preservation requirements in the Election Code.  Others of the

machines are not properly secured to protect the electronic evidence on those

machines.

In addition, the immediate production of a well-defined set of documents

relating to complaints that the Defendants received from voters about the

equipment is appropriate.

## II.    Motion

Plaintiffs accordingly move the Court to enter an order granting the

following relief.  A proposed order is filed herewith.

1. Allowing Plaintiffs to serve each of the Defendants with requests under

O.C.G.A. § 9-11-34 for the inspection, sampling and copying of the electronic

election equipment and related election records in the particular Defendants'

possession identified on the attached Exhibit A and Exhibit B.  For example,

Gwinnett County Board would be responsible for making available the equipment

identified on the attached Exhibits A and B used in Gwinnett County, etc.  The

Secretary would be responsible for making available the DRE equipment which is

owned by the state that is currently located in other counties which are not Defendant counties.

2. The inspection, sampling and copy shall proceed during the week of December 3, 2018, at a place and dates to be agreed upon by the parties. If the parties do not reach an agreement within forty-eight hours, Plaintiffs' counsel will notify the Court and the Court will decide on a place and time for the inspection, sampling and copying.

3. Representative of the Defendants may be present throughout any such inspection, sampling or copying.

4. Plaintiffs' representatives shall be permitted to make copies of any of the electronic files associated with the electronic equipment that is being inspected.

5. Given that one purpose of the inspection is to ascertain the nature of the malfunctions and operations of the electronic voting equipment in an election, Defendants shall make available to Plaintiffs' representatives additional equipment, information or programming necessary to make the electronic equipment operative, such as a/c power, internet connections, voter cards, supervisor cards, passwords, etc.

6. Defendants shall also produce responsive documents or make such documents available for inspection and, if necessary, copying.

### III. Discussion

#### A.   O.C.G.A. § 9-11-34

O.C.G.A. § 9-11-34, is titled "Production of documents and things and entry upon land for inspection and other purposes."   The rule gives a party the right to inspect, sample and copy any electronic machinery, electronic programming and electronically stored information.   *See* Comments to the 1970 Amendment to Rule 34 of the Federal Rules of Civil Procedure ("Comments").   *Norfolk S. Ry. Co. v. Hartry,* 316 Ga. App. 532, 534 (2012) (discussing O.C.G.A. § 9-11-34, noting that "the Georgia discovery rules are based on the 1970 amendments to the Federal Rules of Civil Procedure").   This broad right of discovery encompasses the right to inspect and investigate the operation of equipment or machines in the other party's possession. *Comments, supra.*

#### B.   Relevance of Requested Discovery

Without doubt, the operation of the electronic voting equipment and related electronic and paper records in Defendants' possession is highly relevant to this case.   There is substantial credible evidence that the equipment malfunctioned or was misprogrammed.   Though some malicious computer viruses are designed to wreak havoc and then destroy themselves, leaving no trace, evidence of "mere" programming errors, maintenance problems, less sophisticated malicious viruses,

or other causes of these malfunctions may still exist on this equipment and related electronic records.  To potentially determine the causes of these malfunctions, Plaintiffs are entitled to inspect a fair sample of the equipment and related electronic records.

In addition, as to the production of documents, Defendant Secretary maintained a "hot-line" for voters to use when experiencing voting difficulty. Documents reflecting these complaints may be relevant to the issues before the Court.

## C.   Reasonableness of Request

The Election Code contemplates the preservation and inspection of the DRE voting computer information for purposes of an election contest as indicated in Georgia Election Rule 1-183-12-.02(6)(d), which states:

> *The election results, ballot styles, ballot images, and other information for each election **stored in the internal memory storage of each DRE unit** shall be maintained for a minimum of one month following each election after which time the results may be erased **provided that there are no election contests pending concerning such election.***

There is a compelling need for this Rule to be followed and enforced: DRE voting units have no auditable or verifiable paper trail that can be used in an election contest to determine the actual electronic votes as intended by voters; therefore, forensic review after an election may be required to determine the

Page 6

presence or source of programming errors, machine malfunction, malicious manipulation, or viruses. Such critical electronic information regarding the irregularity may be available *only* in the internal memory of the DRE machine. Rule 1-183-12-.02(6)(d) contemplates that the internal memory may need to be accessed in an election contest such as this case and orders the preservation of machines used in the election in controversy.

Such electronic records of the presence and introduction of unauthorized or irregular programs or data are most likely to be located through forensic examination of unaltered internal memory data, not merely selected files of ballot images, ballot programming or tallies. Forensic examination of the machines that voters have identified as having problems should be conducted using those specific machines in the unaltered condition in which they were used in the polling place with their unaltered memory cards. Replicating problems that the voters experienced will be made more difficult and impossible if the DRE machines are re-programmed or subjected to risk of insecure conditions such as polling places.

Given the compelling need for an inspection of the malfunctioning electronic election equipment, the requested relief is reasonable and appropriate. Defendants can make this equipment available for inspection and copying without material impact upon its provisioning of equipment for the ongoing elections. For

the December 4, 2018 run off, the State does not need and is not planning to use all the voting machines used in the November 6, 2018 election. The turn-out for the run-off elections, and the State's resulting need for the equipment, is far less than for the general election. The short ballot, with only two races, reduces voting time, also reducing the number of voting machines required, and early voting locations are significantly fewer for the December runoff. The locations for early voting in the metro area, for example, has been slashed from 31 to 15 in Fulton County, 10 to 3 in DeKalb County, and 8 to 1 in Gwinnett County.  In addition, the requested equipment is a small fraction of the State's inventory, which consists of over 27,000 DRE machines and associated gear.

Supporting and related electronic equipment and paper records are also required in order for voting system computer experts and forensic scientists to identify the sources of the problems causing the irregularities.

Respectfully submitted this 29th day of November, 2018.

> */s/ Bruce P. Brown*
> Bruce P. Brown
> Georgia Bar No. 064460
> bbrown@brucepbrownlaw.com
> Bruce P. Brown Law LLC
> 1123 Zonolite Rd. NE, Suite 6
> Atlanta, Georgia 30306
> (404) 881-0700
>
> *Attorney for Plaintiffs*

Page 8

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 29th day of November, 2018.

/s/Bruce P. Brown
Bruce P. Brown

EXHIBIT

A

## DRE Machines Required for Inspection

All DRE machines used in the November 6, 2018 election that fit the following descriptions of DRE voting machines:

1. All machines taken out of service, temporarily or permanently.
2. All machines for which voter complaints were received regarding "vote flipping" or "slipping" –where voter's vote was recorded for a different choice than voter indicated on the touch screen.
3. All machines reported as not permitting the voter to review the summary screen and press the final review/cast vote target area before the machine cast the ballot. (There have been numerous reports of summary screen displaying for a short time before automatically casting ballot without voter touching the screen.)
4. All machines reported as not displaying the Lieutenant Governor's race on the initial voting screen.
5. All machines reporting one or more blank ballots.
6. All machines for which the public counter number on the machine tape is different than the total ballots cast on the machine tape.

EXHIBIT

B

| COUNTY Bleckley | PRECINCT(S) Early voting | POLLING LOCATION(S) County Courthouse | Specific DREs and associated memory cards | Other equipment and electronic records | Other related records |
|---|---|---|---|---|---|
| Chatham | 2-07c | Christ Community Church at Morningside | 0 (SN Unknown) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Clarke | 240 | Re-Terstation 7 | 3 (SN 158023) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Clarke | 10 | Winterville Train Depot | 2 (SN 121031) 3 (SN 123483) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Clarke | 80 | Thomas N Lay Park. | 3 (SN 135990) 4 (SN 135991) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Clayton | 760 | Lovejoy High | | SN:123984 | Precinct recap sheet;  copy of DRE machine poll tapes |
| Clayton | 2J/314 | Kemp Elementary | all including 3 (SN 114416) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Cobb | Early voting | N Cobb Senior Center | 4 (SN unknown)=EARLY VOTING Cobb GEMS programming CD | | Final GEMS results report certified by BoE |
| Cobb | Early voting | East Cobb Government Center | SN 122966 | | |
| Cobb | 2150 | Marietta 7A | 2 (SN 111475) and 3 (SN 137969) | | Copy of DRE machine tapes ; Precinct recap sheet |
| Cobb | 1330 | Dickerson 01 | all machines including 1 (SN 138013) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Columbia | Early voting | Ronald Morgan Building | Machine 16 (SN unknown)=EARLY VOTING | | Precinct recap sheet;  copy of DRE machine poll tapes |
| DeKalb | 1260 | Oakcliff Elementary School | all  DeKalb GEMS programming CD | | Precinct recap sheet;  copy of DRE machine poll tapes |
| DeKalb | 1070 | Midvale Elem | All | | Precinct recap sheet;  copy of DRE machine poll tapes |
| DeKalb | 750 | Decatur First Christian Church | All -Election Day programming CD, GEMS | ExpressPoll units including voter list data card; GEMS | Precinct recap sheet;  copy of DRE machine poll tapes |
| DeKalb | 880 | Hawthorne Elem | all machines DeKalb GEMS programming CD | | Precinct recap sheet;  copy of DRE machine poll tapes |
| DeKalb | 1770 | Lakeside High | all machines | | Precinct recap sheet;  copy of DRE machine poll tapes |
| DeKalb | | Tucker Library | all machines | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Douglas | | Mirror Lake Elementary | All -Election Day programming CD | ExpressPoll units including voter list data card; GEMS | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fannin | 40 | Hompown | 1 (SN 208952) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Forsyth | 27 | 27 Concord | All including [SN 149722] 12 (SN 146030) 15 (SN 130272) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | 02J, 02K, 06G | Grady High School | All  including 2 (SN 124301) and 3 (SN 136081) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | 2710 | Esther Jackson Elem | All including 1 (SN 126005) and SN 125547 | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | 2560 | River Eves Elem | | SN:121736 | Final GEMS results report certified by BoE |
| Fulton | 020, 05J, 06F | Butler Street Baptist Church. | 0 (SN 149323), 1 (SN 144439), 2 (SN 111091), 16 (SN 122653) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | 06B, 08L, 06I | Inman Middle School | 3 (SN 122892) | SN:122634 | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | SS1BA, SS1BB, SS31 | Sandy Springs Christian Church | SN 144220 and SN 107088 | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | 5503 | Lake Forest Elementary | | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | Early voting | Either M. Annex or Central office. | SN 297220--EARLY VOTING Card/Fulton GEMS programming CD | Express Poll units at this location including voter list data | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | | New Life Presbyterian Church | 3, 4, 7 (SN unknown) Express Poll units including voter list data card | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | Early voting | Ponce de Leon library | Express Poll units including voter list data card | | Final GEMS results report certified by BoE |
| Fulton | 01D, 01E | Georgia Hill | all including 7 (SN 139762) and 2 (SN 117516) Express PoIl units including voter list data card 4 (SN 121631) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Fulton | 2570 | Elkins Pointe | | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Greene | 8 | Lakeside Church | 3, 4 (SN unknown) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Gwinnett | 960 | D56 Duluth G | 1 (SN 273806) Gwinnett programming CD | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Gwinnett | 1500 | 150 Duluth K Shorty Howell | 1 (SN 297280) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Gwinnett | Early voting | Gwinnett County BoE | All including Last machine in back corner of room*=EARLY VOTING | | All precinct recap sheets, copy of all DRE machine tapes |
| Hall | 23 | Gainsville 1st Church of Nazarene. | 2 (SN unknown) | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Morgan | 30 | Beth/Springfield | 1 (SN 143704), 0 (SN 120925) | Express Poll units including voter list data card; | Precinct recap sheet;  copy of DRE machine poll tapes |
| Morgan | 10 | Northeast | all including 2 (SN 127715) programming CD | | Precinct recap sheet;  copy of DRE machine poll tapes |
| Muscogee | early voting | Citizen Service Center | All  programming CD | Express Poll units including voter list data card; | Precinct recap sheet;  copy of DRE machine poll tapes |

| | | | Programming CD for GEMS | Precinct recap sheet; copy of DRE machine poll tapes |
|---|---|---|---|---|
| Randolph | All | All locations-election day | | |
| Spalding | 16 | Gary Reid Fire Station | Express Poll units including voter list data card; All including SN 133123 programming CD | Precinct recap sheet; copy of DRE machine poll tapes |
| Union | 50 | Owltown | | Precinct recap sheet; copy of DRE machine poll tapes |
| Walker | 30 | Rock Spring | Express Poll units including voter list data card; all including 2 (SN 128303) and 3 (SN 129424) programming CD 7 (SN 2I8I261) and 8 (SN 221353) | Precinct recap sheet; copy of DRE machine poll tapes Precinct recap sheet; copy of DRE machine poll tapes |

EXHIBIT

A

## DRE Machines Required for Inspection

All DRE machines used in the November 6, 2018 election that fit the following descriptions of DRE voting machines:

1. All machines taken out of service, temporarily or permanently.
2. All machines for which voter complaints were received regarding "vote flipping" or "slipping" –where voter's vote was recorded for a different choice than voter indicated on the touch screen.
3. All machines reported as not permitting the voter to review the summary screen and press the final review/cast vote target area before the machine cast the ballot. (There have been numerous reports of summary screen displaying for a short time before automatically casting ballot without voter touching the screen.)
4. All machines reported as not displaying the Lieutenant Governor's race on the initial voting screen.
5. All machines reporting one or more blank ballots.
6. All machines for which the public counter number on the machine tape is different than the total ballots cast on the machine tape.

EXHIBIT

B

| COUNTY | PRECINCT(S) | POLLING LOCATION(S) | Specific DREs and associated memory cards | Other equipment and electronic records | Other related records |
|---|---|---|---|---|---|
| Bleckley | Early voting | County Courthouse | 2 (SN unknown)--EARLY VOTING | | |
| Chatham | 2-07c | Christ Community Church at Morningside | 0 (SN Unknown) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Clarke | 240 | 8c Firestation 7 | 3 (SN 158013) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Clarke | 10 | Winterville Train Depot | 2 (SN 121031) 3 (SN 121481) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Clarke | 80 | Thomas N Lay Park. | 3 (SN 135990) 4 (SN 135991) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Clayton | 260 | Lovejoy High | SN:123994 | | Precinct recap sheet; copy of DRE machine poll tapes |
| Clayton | 21/114 | Kemp Elementary | all inclduing 3 (SN 114416) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Cobb | Early voiing | N Cobb Senior Center | 4 (SN unknown)--EARLY VOTING | Cobb GEMS programming CD | Final GEMS results report certified by BoE |
| Cobb | Early voiing | East Cobb Government Center | SN 122966 | | |
| Cobb | 2150 | Marietta 7A | 2 (SN 111475) and 3 (SN 137969) | | Copy of DRE machine tapes ; Precinct recap sheet |
| Cobb | 1330 | Dickerson 01 | all machines including 1 (SN 138013) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Columbia | Early voiing | Ronald Reagan Building | Machine 16 (SN unknown)--EARLY VOTING | | Precinct recap sheet; copy of DRE machine poll tapes |
| DeKalb | 1260 | Oakcliff Elementary School | all | DeKalb GEMS programming CD | Precinct recap sheet; copy of DRE machine poll tapes |
| DeKalb | 1070 | Midvale Elem | All | | Precinct recap sheet; copy of DRE machine poll tapes |
| | | | | ExpressPoll units incuding voter list data card; GEMS | |
| DeKalb | | Decatur First Christian Church | All --Election Day programming CD, | | Precinct recap sheet; copy of DRE machine poll tapes |
| DeKalb | 750 | Hawthorne Elem | all machines | DeKalb GEMS programming CD | Precinct recap sheet; copy of DRE machine poll tapes |
| DeKalb | 880 | Lakeside High | all machines | | Precinct recap sheet; copy of DRE machine poll tapes |
| DeKalb | 1770 | Tucker Library | all machines | | Precinct recap sheet; copy of DRE machine poll tapes |
| | | | | ExpressPoll units including voter list data card; GEMS | |
| Douglas | | Mirror Lake Elementary | All --Election Day programming CD | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fannin | 40 | Hemptown | 1 (SN 208952) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Forsyth | 27 | 27 Concord | All including  [SN 149722] 12 (SN 146030) 15 (SN 130272) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | 02J, 02K, 06G | Grady High School | All  including 2 (SN 124301) and 3 (SN 136081) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | 2710 | Esther Jackson Elem | All including 1 (SN 126005) and SN 125547 | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | 2560 | River Eves Elem | SN:121736 | | Final GEMS results report certified by BoE |
| Fulton | 02D, 05J, 06F | Butler Street Baptist Church. | 0 (SN 149323), 1 (SN 144439), 2 (SN 111091), 16 (SN 122853) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | 06B, 06J | Inman Middle School | ALL | | |
| Fulton | SS18A, SS18B, SS31 | Sandy Springs Christian Church | 3 (SN 124392) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | SS03 | Lake Forest Elementary | SN 144220 and SN 107088 | | Precinct recap sheet; copy of DRE machine poll tapes |
| | | | | Express Poll units at this location including voter list data | |
| Fulton | Early voting | Either N. Annex or Central office. | SN 297220--EARLY VOTING card; Fulton GEMS programming CD | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | | New Life Presbyterian Church | 3, 4, 7 (SN unknown) Express Poll units including voter list data card | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | Early voting | Ponce de Leon library | All machines Express Poll units including voter list data card | | Final GEMS results report certified by BoE |
| Fulton | 01D, 01E | Georgia Hill | all including 7 (SN 139762) and 2 (SN 117516) Express Poll units including voter list data card | | Precinct recap sheet; copy of DRE machine poll tapes |
| Fulton | 2570 | Elkins Pointe | 4 (SN 121631) | | |
| Greene | 8 | Lakeside Church | 3, 4 (SN unknown) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Gwinnett | 960 | 096 Duluth G | 1 (SN 273306) | Gwinnett programming CD | Precinct recap sheet; copy of DRE machine poll tapes |
| Gwinnett | 1500 | 150 Duluth K Shorty Howell | 1 (SN 297780) | | |
| Gwinnett | Early voting | Gwinnett County BoE | All including Last machine in back corner of room*--EARLY VOTING | | All precinct recap sheets, copy of all DRE machine tapes |
| Hall | 23 | Gainsville 1st Church of Nazarene | 2 (SN unknown) | | |
| Morgan | 30 | Beth/Springfield | 1 (SN 143704), 0 (SN 120925) | | Precinct recap sheet; copy of DRE machine poll tapes |
| Morgan | | | | Express Poll units including voter list data card; | |
| | 10 | Northeast | all including 2 (SN 127715) programming CD | | Precinct recap sheet; copy of DRE machine poll tapes |
| | | | | Express Poll units including voter list data card; | |
| Muscogee | early voting | Citizen Service Center | All  programming CD | | Precinct recap sheet; copy of DRE machine poll tapes |

| Randolph | All | All locations-election day | | Programming CD for GEMS | Precinct recap sheet; copy of DRE machine poll tapes |
|---|---|---|---|---|---|
| Spalding | 16 | Gary Reid Fire Station | All including SN 133123 | Express Poll units including voter list data card; programming CD | Precinct recap sheet; copy of DRE machine poll tapes |
| Union | 50 | Owltown | all including 2 (SN 128303) and 3 (SN 129424) | Express Poll units including voter list data card; programming CD | Precinct recap sheet; copy of DRE machine poll tapes |
| Walker | 30 | Rock Spring | 7 (SN 288261) and 8 (SN 221353) | | Precinct recap sheet; copy of DRE machine poll tapes
Precinct recap sheet; copy of DRE machine poll tapes |

.

Fulton County Superior Court
***EFILED***QW
Date: 11/29/2018 4:14 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE *et al.*, Petitioners | |
| | CIVIL ACTION 2018CV313418 |
| v. | |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, *et al.*, Respondents | |

## ORDER RE-ASSIGNING CASE TO
## SEVENTH JUDICIAL ADMINISTRATIVE DISTRICT

Petitioners contest the result of the 6 November 2018 general election for Lieutenant Governor for the State of Georgia and have filed a legal challenge to that election here in Fulton County pursuant to O.C.G.A. § 21-2-520 *et seq.* The Clerk of Court for the Superior Court of Fulton County, per standing Court policy for civil actions, randomly assigned this matter to the Honorable Constance C. Russell. However, O.C.G.A. § 21-2-520 electoral challenges must be assigned in a specific manner as provided for in O.C.G.A. § 21-2-523. That provision directs the Administrative Judge of the Judicial Administrative District in which the case was filed to make the assignment -- unless the case was filed in the Administrative Judge's Judicial Circuit. O.C.G.A. § 21-2-523(c). When, as here, the case is brought in the Administrative Judge's Circuit, the Administrative Judge must transfer the case to an adjoining Judicial Administrative District, where that District's Administrative Judge shall then assign the case to "a superior court judge from that District ... or a senior judge who is not a resident of the Circuit wherein the proceeding was filed." O.C.G.A. § 21-2-523(d).

What all that means, in plain English, is that the undersigned hereby selects the Honorable Ralph Van Pelt, Jr., Administrative Judge of the adjoining Seventh Judicial Administrative District, to determine, pursuant to O.C.G.A. § 21-2-523(d), which Superior Court judge, active or senior, shall hear this case. The matter is no longer assigned to the Honorable Constance C. Russell, this Circuit, or this District.

SO ORDERED this 29th day of November 2018.

Chief Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit
Fifth Judicial Administrative District

*Filed and served electronically via eFileGA*

Copies to:

The Honorable Ralph Van Pelt, Jr.
The Honorable Constance C. Russell
Yolanda Lewis, District Court Administrator, 5th JAD
Jody Overcash, District Court Administrator, 7th JAD

Page 2 of 2

Fulton County Superior Court
***EFILED***BR
Date: 11/30/2018 1:18 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

|  |  |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,** | **CIVIL ACTION NO.** |
| Petitioners | **2018-CV-313418** |
| **V.** |  |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,** |  |
| Respondents |  |

## ORDER OF APPOINTMENT

There being the need for the temporary services of an additional Superior Court Judge in the Atlanta Judicial Circuit; and

WHEREAS, The Honorable Adele Grubbs, Senior Judge, Superior Court, State of Georgia, has agreed to assist the court in said assignment;

It is HEREBY ORDERED that Honorable Adele Grubbs, Senior Judge, Superior Court, State of Georgia, is hereby appointed to preside in this action, said appointment becoming effective contemporaneously with the filing of this Order and continuing until such time thereafter as is reasonably necessary to dispose of said case.

The Honorable Adele Grubbs is hereby authorized and empowered to preside and discharge all the duties, power and authority of a Judge of the Superior Courts of the Atlanta Judicial Circuit in Fulton Superior Court.

This assignment is made because the judges of the Atlanta Judicial Circuit have voluntarily recused themselves from participation in the aforementioned matter.

Let this Order, or a copy hereof, be filed with the Clerk of the Superior Court of Fulton County, Georgia, and with the office of the Seventh Judicial Administrative District.

This, the 30 day of November, 2018

Ralph Van Pelt, Jr., ADMINISTRATIVE JUDGE
SEVENTH JUDICIAL ADMINISTRATIVE DISTRICT

cc. The Honorable Adele Grubbs

Fulton County Superior Court
***EFILED***RM
Date: 11/30/2018 12:18 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,** | * | **CIVIL ACTION NO.** |
| Petitioners | * | **2018-CV-313418** |
| **V.** | * | |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,** | * | |
| Respondents | * | |

## ORDER OF APPOINTMENT

There being the need for the temporary services of an additional Superior Court Judge in the Atlanta Judicial Circuit; and

WHEREAS, The Honorable Adele Grubbs, Senior Judge, Superior Court, State of Georgia, has agreed to assist the court in said assignment;

It is HEREBY ORDERED that Honorable Adele Grubbs, Senior Judge, Superior Court, State of Georgia, is hereby appointed to preside in this action, said appointment becoming effective contemporaneously with the filing of this Order and continuing until such time thereafter as is reasonably necessary to dispose of said case.

The Honorable Adele Grubbs is hereby authorized and empowered to preside and discharge all the duties, power and authority of a Judge of the Superior Courts of the Atlanta Judicial Circuit in Fulton Superior Court.

This assignment is made because the judges of the Atlanta Judicial Circuit have voluntarily recused themselves from participation in the aforementioned matter.

Let this Order, or a copy hereof, be filed with the Clerk of the Superior Court of Fulton County, Georgia, and with the office of the Seventh Judicial Administrative District.

This, the ____30____ day of November, 2018

_____

Ralph Van Pelt, Jr., ADMINISTRATIVE JUDGE
SEVENTH JUDICIAL ADMINISTRATIVE DISTRICT

cc.  The Honorable Adele Grubbs

Fulton County Superior Court
***EFILED***LW
Date: 11/30/2018 5:06 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, and JEANNE DUFORT,** | |
| **Plaintiffs,** | **Civil Action No.: 2018CV313418** |
| **v.** | |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN,** | |
| **Defendants.** | |

## NOTICE OF APPEARANCE OF COUNSEL

COME NOW Edward H. Lindsey Jr. Georgia Bar No. 453075 and Samuel S. Olens, Georgia Bar No. 551540, of Dentons US LLP, 303 Peachtree Street, NE, Suite 5300, Atlanta, Georgia 30308, 404-527-4000, and pursuant to Uniform Rules for the Superior Court, Section 4.2, hereby notify this Court and counsel of record of their entry of appearance as counsel on behalf of Geoff Duncan, in this case.

This 30th day of November 2018.

DENTONS US LLP

*/s/ Edward H. Lindsey Jr*
Edward H. Lindsey Jr.
Georgia Bar No. 453075
Edward.lindsey@dentons.com
Samuel S. Olens
Georgia Bar No. 551540
Samuel.olens@dentons.com

DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 3038
(404) 527-4000
(404) 527-4198 (facsimile)

*Attorneys for Geoff Duncan*

Page **2** of **4**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **NOTICE OF APPEARANCE OF COUNSEL** has been served upon all interested parties via U.S. Mail, postage prepaid to:

Bruce P. Brown
Bruce P. Brown Law
1123 Zonolite Road, N.E.
Suite #6
Atlanta, Georgia 30306

Cristina Correia
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia  30334

Bryan P. Tyson
Strickland Brockington Lewis LLP
1170 Peachtree St NE
Suite 2200
Atlanta, GA 30309

Patrise Perkins-Hooker
Fulton County Government
141 Pryor Street
Atlanta, Georgia 30303

R. David Ware
Hall Booth Smith, P.C.
191 Peachtree Tower
191 Peachtree Street
Atlanta, Georgia 30303

Viviane Ernstes
DeKalb County GA
1300 Commerce Drive
Decatur, Georgia 30030

Josh Belinfante
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, Georgia 30318

This 30th day of November, 2018.

*/s/ Edward H. Lindsey Jr.*

I09740025\V-1

Fulton County Superior Court
***EFILED***LW
Date: 11/30/2018 3:41 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,<br><br>     Plaintiffs,<br><br>v.<br><br>ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN,<br><br>     Defendants. | CIVIL ACTION<br><br>FILE NO:  2018CV313418 |

## NOTICE OF APPEARANCE

Pursuant to Uniform Superior Court Rule 4.2, Attorney General Christopher

M. Carr, Deputy Attorney General Annette M. Cowart, Senior Assistant Attorney

General Russell D. Willard, and Special Assistant Attorneys General Josh

Belinfante, Vincent R. Russo, Brian E. Lake, and Alexander Denton hereby enter

their appearance in the above-captioned proceeding as counsel for Defendant

Robyn A. Crittenden, Secretary of State of Georgia.

Attorney bar numbers, current office address, telephone number, fax number, and email addresses are provided below.

This 30th day of November, 2018.

Christopher M. Carr
Attorney General
Georgia Bar No.  112505
Annette M. Cowart
Deputy Attorney General
Georgia Bar No.  191199
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No.  760280
State Law Department
40 Capitol Square, S.W.
Atlanta, GA  30334
Telephone:   (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No:  047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Brian E. Lake
Georgia Bar No.  575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Special Assistant Attorneys General
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250

-2-

*Attorneys for Defendant Robyn A. Crittenden,*
*Secretary of State of Georgia*

-3-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the within and foregoing

**NOTICE OF APPEARANCE** on all parties by electronically filing it with the

Clerk of the Court using the Odyssey eFileGA system, which will automatically

send an email notification of such filing to counsel for the parties.

This 30th day of November, 2018.


*/s/ Josh Belinfante*
Josh Belinfante

-4-

Fulton County Superior Court
***EFILED***QW
Date: 11/30/2018 12:41 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,**<br><br>**Defendants.** | **CIVIL ACTION FILE NO. 2018CV31348** |

## [PROPOSED] ORDER
## GRANTING PLAINTIFFS' EMERGENCY MOTION FOR INSPECTION OF ELECTRONIC ELECTION EQUIPMENT AND PRODUCTION OF DOCUMENTS

Before the Court is the Plaintiffs' Emergency Motion for Inspection of Electronic Voting Equipment and Production of Documents. Based upon the Motion, and the other filings of record, the Court finds that the Motion should be GRANTED and orders the following:

Page 1

1. Plaintiffs may serve each of the Defendants with requests under O.C.G.A. § 9-11-34 for the inspection, sampling and copying of the electronic election equipment and related election records in the particular Defendants' possession identified on the attached Exhibit A and Exhibit B.  The Secretary is responsible for making available the DRE equipment which is owned by the state that is currently located in other counties which are not Defendant counties.

2. The inspection, sampling and copy shall proceed during the week of December 3, 2018, at a place and dates to be agreed upon by the parties.  If the parties do not reach an agreement within forty-eight hours, Plaintiffs' counsel will notify the Court and the Court will decide on a place and time for the inspection, sampling and copying.

3. Representative of the Defendants may be present throughout any such inspection, sampling or copying.

4. Plaintiffs' representatives shall be permitted to make copies of any of the electronic files associated with the electronic equipment that is being inspected.

5. Given that one purpose of the inspection is to ascertain the nature of the malfunctions and operations of the electronic voting equipment in an election, Defendants shall make available to Plaintiffs' representatives additional equipment, information or programming necessary to make the electronic

equipment operative, such as a/c power, internet connections, voter cards,

supervisor cards, passwords, etc.

    6. Defendants shall also produce responsive documents identified on Exhibit

B or make such documents available for inspection and, if necessary, copying.

    IT IS SO ORDERED this ___ day of _____, 2018.

                                                 _____
                                                Superior Court Judge,
                                                State of Georgia

Prepared by:
/s/Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 30th day of November, 2018.

/s/Bruce P. Brown
Bruce P. Brown

Fulton County Superior Court
***EFILED***QW
Date: 12/3/2018 10:52 AM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| COALITION FOR GOOD GOVERNANCE, et. al. | * | CIVIL ACTION FILE NUMBER |
| Petitioners, | * | |
| | * | 2018-CV-313418 |
| | * | |
| VS. | * | |
| | * | |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, et. al. | * | |
| Respondents. | | |

## ORDER

It is hereby ordered that each of the parties be and appear before Senior Judge Adele P. Grubbs of the State of Georgia on the **5th day of December 2018, 9:30 a.m. in Courtroom M202, 2nd Floor,** Cobb Magistrate Court, for hearing on all matters ripe to be heard in the above-styled case.

SO ORDERED this 1st day of December, 2018.

ADELE P. GRUBBS
SENIOR JUDGE, STATE OF GEORGIA
ASSISTING PER ORDER OF APPOINTMENT

Fulton County Superior Court
***EFILED***LW
Date: 12/4/2018 1:10 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, and JEANNE DUFORT, <br><br> Plaintiffs, <br><br> v. <br><br> ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, <br><br> Defendants. | CIVIL ACTION FILE NO. 2018CV313418 |

**NOTICE OF APPEARANCE OF COUNSEL**

COMES NOW Richard A. Carothers of the law firm Carothers & Mitchell, LLC, 1809 Buford Highway, Buford, Georgia 30518, and hereby enters his appearance as additional counsel for Defendant Gwinnett County Board of Registrations and Elections and requests that he be added to the docket as additional counsel for this defendant. All pleadings and other notices should be sent to him at the address below.

1

This 4th day of December, 2018.

Respectfully submitted,

CAROTHERS & MITCHELL, LLC

*/s/ Richard A. Carothers*
RICHARD A. CAROTHERS
Georgia Bar No. 111075
Attorneys for Defendant Gwinnett County Board
of Registrations and Elections

1809 Buford Highway
Buford, GA 30518
Phone:  770-932-3552
Fax:  770-932-6348
richard.carothers@carmitch.com

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date served all counsel in the foregoing action with a

true and correct copy of the **NOTICE OF APPEARANCE OF COUNSEL** with the Clerk of the

Court using the Odyssey (EfileGa) system to the following:

Bruce P. Brown
**Bruce P. Brown Law**
1123 Zonolite Road NE, Suite 6
Atlanta, GA 30306
bbrown@brucepbrownlaw.com

Christopher M. Carr
Annette M. Cowart
Russell David Willard
**Attorney General of Georgia**
40 Capitol Square SW
Atlanta, GA 30334
ccar@law.ga.gov
acowart@law.ga.gov
rwillard@law.ga.gov

Joshua Barrett Belinfante
Alexander Fraser Denton
Vincent Robert Russo
Brian Lake
**Robbins Ross Alloy Belinfante Littlefield, LLC**
500 14th St. NW
Atlanta, GA 30318
jbelinfante@robbinsfirm.com
adenton@robbinsfirm.com
vrusso@robbinsfirm.com
blake@robbinsfirm.com

Edward H. Lindsey, Jr.
**Dentons US LLP**
303 Peachtree St. NE, Suite 5300
Atlanta, GA 30308
edward.lindsey@dentons.com

3

Bryan Paul Tyson
**Strickland Brockington Lewis LLP**
1170 Peachtree St. NE, Suite 2200
Atlanta, GA 30309
bpt@sbllaw.net

This 4th day of December, 2018.

CAROTHERS & MITCHELL, LLC

*/s/ Richard A. Carothers*
RICHARD A. CAROTHERS
Georgia Bar No. 111075

1809 Buford Highway
Buford, GA 30518
Phone: 770-932-3552
Fax: 770-932-6348
richard.carothers@carmitch.com

4

Fulton County Superior Court
***EFILED***DG
Date: 12/4/2018 9:10 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, and JEANNE DUFORT,** | * * * * * |
| **Plaintiffs,** | * * |
| **v.** | **Civil Action No.: 2018CV313418** * * |
| **ROBIN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS and ELECTIONS, AND GEOFF DUNCAN,** | * * * * * * * * * |
| **Defendants.** | * |

### CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT ON BEHALF OF DEFENDANT ROBIN A. CRITTENDEN

COMES NOW, Robin A. Crittenden, Secretary of State of the State of Georgia ("Secretary Crittenden" or "Defendant"), by and through her counsel, Christopher M. Carr, the Attorney General of the State of Georgia, and specially appears to file this Motion to Dismiss the Petition to Contest Election Results. Secretary Crittenden specially files this motion since she has not been served in this lawsuit, and she does not waive any affirmative defenses or her right to answer in the event she is served. More specifically, since Secretary Crittenden has not been properly served in this lawsuit, she does not waive her right to raise lack of proper service of process at a later date – Secretary Crittenden does not waive service. The Petition should be dismissed pursuant to O.C.G.A. § 9-11-12(b)(1), (6), and (7).

## INTRODUCTION

Plaintiffs filed this action to contest the November 6, 2018 General Election for Lieutenant Governor of the State of Georgia (the "Election") pursuant to Article 13, O.C.G.A. § 21-2-520, *et seq.*, of the Georgia Election Code.  The Petition must be dismissed both as to Secretary Crittenden and in its entirety.  First, Secretary Crittenden is not a proper party to this election challenge, and, therefore, the claims against her are barred by sovereign immunity.  Second, Plaintiffs have failed to state valid claims for relief. Finally, the Petition fails to name all the necessary parties for an election contest.

## STATEMENT OF FACTS

Plaintiffs are a Colorado-based organization and three individuals who claim to be aggrieved electors who were entitled to vote in the Election.  Petition at ¶¶ 5-10.  The results of the Election were certified on November 17, 2018, and the Republican candidate Geoff Duncan received the most votes.  *Id.* at ¶ 17, 19.

## ARGUMENT AND CITATION OF AUTHORITIES

**I.      Claims under O.C.G.A. § 21-2-520, *et seq.* Against Secretary Crittenden Are Barred By Sovereign Immunity.**

O.C.G.A. § 21-2-520(2) lists four categories of possible defendants in contested election lawsuits, none of which include the Secretary of State.  As such, Secretary Crittenden is not a proper party to this election challenge, and Plaintiffs' claims against her are barred by sovereign immunity.  As discussed fully below, these claims must be dismissed for lack of jurisdiction because there is no waiver of sovereign immunity to authorize a lawsuit under Article 13 of the Election Code against a state agency or state officials acting in their official capacity.

2

**A.      Plaintiffs Cannot Demonstrate the Existence of a Clear, Unequivocal Waiver of Sovereign Immunity.**

The "sweep of sovereign immunity" under the Georgia Constitution is "broad." *Olvera v. Univ. Sys. of Ga.'s Bd. of Regents*, 298 Ga. 425, 426 (2016). The 1991 amendment to the Georgia Constitution gave the legislature the "exclusive power to waive sovereign immunity":

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can *only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.*

Ga. Const. Art. I, Sec. II, Par. IX (e) (emphasis added). "Where the sovereign has sovereign immunity from a cause of action, and has not waived that immunity, the immunity rises to a constitutional right and cannot be abrogated by any court." *Ga. Dep't of County Health v. Neal*, 334 Ga. App. 851, 854 (2015); *see Georgia Dep't of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593 (2014) ("The history of sovereign immunity in our State shows that the 1991 amendment intended to expressly reserve the power to waive sovereign immunity exclusively to the legislature.").

Georgia courts have also made clear that it is the Plaintiffs' burden to demonstrate the existence of an explicit waiver of sovereign immunity to authorize the suit. *See, e.g., Neal*, 334 Ga. App. at 855 ("It is axiomatic that the party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver."). Thus, in order to survive this Motion, Plaintiffs must show the existence of a statute that specifically waives sovereign immunity by authorizing suits against the State in election contests under Article 13 of the Election Code. As discussed below, Plaintiffs cannot make such a showing here because the Election Code does not contain a waiver of sovereign immunity against the State and instead contains an explicit

3

legislative directive in O.C.G.A. § 21-2-520(2) that the Secretary of State is *not* subject to suit in an election contest.[1]

**B.      Secretary Crittenden is not Subject to Suit in an Election Contest.**

In O.C.G.A. § 21-2-520(2), the General Assembly delineated only four categories of persons subject to suit in an election contest under Article 13 of the Election Code, and Secretary Crittenden does not fit within any of those four categories that are relevant to this case.  While Plaintiffs state that Secretary Crittenden is a "de facto election superintendent" (Petition at ¶12), "election superintendent" is an explicitly defined term in the Election Code that does not include the Secretary of State.

Any argument that Secretary Crittenden is an "election superintendent" under O.C.G.A. § 21-2-520(2)(C) must fail because at no point in the Election Code is the Secretary of State described as an "election superintendent."  In fact, definition of "superintendent" in the Election Code expressly excludes the Secretary of State.  In O.C.G.A. § 21-2-2(35), the General Assembly defined "superintendent" for purposes of the Election Code.  With the exception of municipal elections, a "superintendent" is defined as follows:

(35) "Superintendent" means:

> (A) Either *the judge of the probate court* of a county or *the county board of elections, the county board of elections and registration*, the *joint city-county board of elections*, or the *joint city-county board of elections and registrations*, if a county has such.

O.C.G.A. § 21-2-2(35)(A) (emphasis added).  The Code defines "superintendent" as one of five possible *city* or *county* officials/entities: 1) the judge of the probate court of a county; 2) the county board of elections; 3) the county board of elections and registrations; 4) the joint city-

---

[1] The Georgia Supreme Court has repeatedly stated that sovereign immunity applies to public officials sued in their official capacities because these "are in reality suits against the state."  *See, e.g., Sustainable Coast*, 294 Ga. at 599, n. 4 (citing *Cameron v. Lang*, 274 Ga. 122, 126 (2001)).

4

county board of elections; and 5) the joint city-county board of elections and registration. None of these five entities are state agencies or officials of any kind. Thus, the Secretary of State is not a "superintendent" for purposes of the Election Code and is not subject to suit in an election contest under O.C.G.A. § 21-2-520(2)(C).

It is a cardinal principle of statutory construction that courts must "presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (2013). "If the statutory text is clear and unambiguous [courts] attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Id.* at 173. Here, the definition of "superintendent" in the Election Code is clear and unambiguous, and it plainly does not include any state agencies or officials, including the Secretary of State.

While no further legal analysis is necessary when, as in this case, the statutory language is plain on its face, other well-established rules of statutory construction further demonstrate that the Secretary of State is not an election "superintendent" under O.C.G.A. § 21-2-520(2)(C). For example, courts often note that words in statutes must not be "interpreted in isolation; instead, courts must construe a statute to give sensible and intelligent effect to all of its provisions and must consider the statute in relation to other statutes of which it is part. *United States Bank Nat'l Assn v. Gordon*, 289 Ga. 12, 14–15 (2011) (internal quotations and citations omitted). "In particular, statutes 'in pari materia,' i.e., statutes relating to the same subject matter, must be construed together. *Id.* at 15. A related corollary to this rule is that courts should "avoid a construction that makes some language mere surplusage." *Cherokee Funding LLC v. Ruth*, 342 Ga. App. 404, 407 (2017).

Application of these rules to the provisions of the Election Code demonstrates that the General Assembly defined "superintendent" and the "Secretary of State" to be distinct and

5

separate offices and entities from each other and that the Secretary of State cannot be considered

an election "superintendent." Article 2 of the Election Code, entitled "Supervisory Boards and

Officers," for example, contains *separate* Parts for the State Election Board (the "SEB"), the

Secretary of State, and superintendents. Statutory provisions governing the SEB are contained in

Part 1 of Article 2 and can be found at O.C.G.A. §§ 21-2-30 through 21-2-34. Provisions

governing the Secretary of State are found in Part 2 at O.C.G.A. §§ 21-2-50 through 21-2-52.

Lastly, provisions governing superintendents are found in Part 3 at O.C.G.A. §§ 21-2-70 through

21-2-77. In each of these separate Parts, there are distinct statutes setting forth the distinct

powers and duties of each of these different offices and entities. *See* O.C.G.A. § 21-2-31 (listing

"[d]uties" of SEB); O.C.G.A. § 21-2-50 (listing "[p]owers and duties" of Secretary of State); and

O.C.G.A. § 21-2-70 (listing "[p]owers and duties" of the superintendents).

The Election Code is replete with statutes that refer to a "superintendent" in the exact

same statute as the Secretary of State, all of which would be rendered unintelligible if

"superintendent" was defined as interchangeable with the Secretary of State. To cite a few

examples, O.C.G.A. § 21-2-101(a) provides that "election superintendents" shall become

certified by completing a certification program approved by the Secretary of State . . . ." This

provision makes clear that the election superintendent is different than the Secretary of State. It

would be nonsensical if the Secretary of State were deemed to be a superintendent because in

that event the Secretary of State would be a candidate for certification and at the same time in

charge of the certification program. *See also* O.C.G.A. § 21-2-100(a) ("The election

superintendent . . . shall attend a minimum of 12 hours' training biennially as may be selected by

the Secretary of State").

6

The statutory provisions governing recount and recanvass procedures also demonstrate that the Secretary of State is *not* a superintendent:

Procedure for recount or recanvass of votes; losing candidate's right to a recount

* * * *

(c)(1) . . . . If the office sought is a federal or state office voted upon by the electors of more than one county, the request shall be made to *the Secretary of State who shall direct that the recount be performed in all counties in which electors voted for such office and notify the superintendents of the several counties involved of the request. In all other cases, the request shall be made to the superintendent. The superintendent or superintendents shall order a recount of such votes to be made immediately.* If, upon such recount, it is determined that the original count was incorrect, *the returns and all papers prepared by the superintendent, the superintendents, or the Secretary of State* shall be corrected accordingly and the results re-certified.

O.C.G.A. § 21-2-495(c)(1) (emphasis added).[2] The emphasized language makes clear that the Secretary of State is *not* the election superintendent: In multi-county elections, notice of a recount request must be made *to the Secretary of State* who then *notifies* the superintendents of the relevant counties. Interpreting the Secretary of State to be a "superintendent" renders the statute unintelligible and ignores the use of the disjunctive "or" in the statute ("the superintendents or the Secretary of State").[3]

---

[2] Similarly, O.C.G.A. § 21-2-495(d) also refers to the Secretary of State directing the election superintendents to conduct any recount or recanvass if a candidate for federal or state office so petitions.
[3] A statute involving DRE voting machines also makes clear that the Secretary of State is not a "superintendent." O.C.G.A. § 21-2-379.8(a) provides that the *"Secretary of State shall advise the superintendents* on recommended methods of demonstrating [DRE] units so as to properly educate electors in the use thereof . . . ." If the Secretary of State were a superintendent, she would be in effect advising herself, which obviously makes no sense. There are numerous other provisions throughout the Election Code where the Secretary of State and the "superintendent(s)" are referred to as separate entities within the same statute. *See e.g.*, O.C.G.A. § 21-4-5(j) ("[R]ecall petition forms shall be printed by the office of the Secretary of State and distributed to election superintendents"); O.C.G.A. § 21-2-499 ("Upon receiving the certified returns of any election from the various superintendents, the Secretary of State shall immediately proceed to tabulate, compute, and canvass the votes cast . . . ."); O.C.G.A. § 21-2-99 ("[T]he superintendent

7

The plain language of the Election Code thus makes clear that the Secretary of State is not a "superintendent" under O.C.G.A. § 21-2-520(2)(C). Because no state agency or state official falls within any of the four categories of parties that may be sued in an election contest under O.C.G.A. § 21-2-520(2)(A)–(D), the General Assembly has not waived sovereign immunity to authorize election contest claims to be brought against State agencies or State officials acting in their official capacity. The claims against Secretary Crittenden are, therefore, barred by sovereign immunity and must be dismissed pursuant to O.C.G.A. § 9-11-12(b)(1) for lack of subject matter jurisdiction.

## II.   Plaintiff Coalition For Good Governance Lacks Standing To Bring An Election Contest Claim.

The Georgia Election Code grants two specific types of individuals the ability to bring an election contest claim: (1) a candidate in an election or (2) an elector who was entitled to vote in an election. O.C.G.A. § 21-2-521. The Coalition for Good Governance asserts that it has both organizational and associational standing to bring an election contest claim. Petition at ¶ 7. The Coalition plainly does not have organizational standing on its own behalf to bring an election contest claim because it is neither a candidate nor an elector. *See* O.C.G.A. § 21-2-521.

The Coalition also does not have associational standing on behalf of its members. "Generally, 'an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to

---

shall notify the Secretary of State on forms provided by the Secretary of State" that poll workers received required training); O.C.G.A. § 21-2-497(b) ("Each county and municipal superintendent shall, upon certification, furnish to the Secretary of State in a manner determined by the Secretary of State a final copy of each ballot used for such election); O.C.G.A. § 21-2-400(a) ("Prior to each primary and election, the superintendent shall obtain from the Secretary of State a sufficient number of cards of instructions for guidance of electors"); O.C.G.A. § 21-2-132(d) (qualifying fees paid to Secretary of State *or* superintendent depending upon type of election); O.C.G.A. § 21-2-293(a) (superintendent must give at least 24 hours' notice to the Secretary of State and affected candidates of mistakes or omissions on ballots).

protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Georgiacarry.org, Inc. v. Allen,* 299 Ga. 716, 718 (2016) (quoting *Atlanta Taxicab Comp. Owners Assoc., Inc. v. City of Atlanta,* 281 Ga. 342, 344 (2006)). Here, Plaintiffs' election contest claim requires the participation of individual members, because the election contest provisions only contemplate that candidates in an election or electors who were entitled to vote in an election can bring an election contest claim. O.C.G.A. § 21-2-521.

III.   **Plaintiffs' Election Contest Claim Fails On The Merits.**

Even if Plaintiffs' election contest claim against the Secretary was not barred by sovereign immunity, Plaintiffs have not alleged any misconduct or irregularity in the Election that could satisfy their burden of showing that the election results were changed or should be placed in doubt under O.C.G.A. § 21-2-522(1). Further, they have not identified a sufficient number of rejected legal votes or illegal votes received to change or place the election in doubt under O.C.G.A. § 21-2-522(3). Instead, Plaintiffs make a series of conclusory allegations through which they claim that alleged vulnerabilities in Georgia's electronic voting infrastructure created a "high risk of undetected manipulations" that should cast doubt on the election. *See* Petition at ¶¶ 30-33. Critically, Plaintiffs do not allege that any manipulation of Georgia's electronic voting infrastructure *actually* occurred. To succeed on their claims, Plaintiffs would require the Court to *assume* that the election was changed or should be placed in doubt. Without such an assumption, there is no basis for the Court to conclude that there was misconduct, irregularities, rejected legal votes, or received illegal votes sufficient to change the result or to place it in doubt. Because of these deficiencies, Plaintiffs have failed to state a valid claim for relief under either O.C.G.A. § 21-2-522(1) or (3).

9

A court considering a motion to dismiss for failure to state a claim must construe the facts of a complaint in the light most favorable to the plaintiff. *Stendahl v. Cobb County*, 284 Ga. 525, 525 (2008). If "the movant establishes that the [petitioner] could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought," a court should dismiss the complaint. *Scouten v. Amerisave Mortgage Corp.*, 283 Ga. 72, 73 (2008); *see also* O.C.G.A. § 9-11-12(b)(6).

In election contests, courts "must presume that the results of an election contest are valid, *Middleton v. Smith*, 273 Ga. 202, 203 (2000), and they "should be extremely hesitant to interfere with the electoral process," *Mead v. Sheffield*, 278 Ga. 268, 273 (2004). "Thus, an election will not be invalidated unless the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result." *Middleton*, 273 Ga. at 203; *see also Mead*, 278 Ga. at 270. To succeed on a ballot irregularity claim under O.C.G.A. § 21-2-522(1), a plaintiff must "show that there were enough irregular ballots to place in doubt the result." *Mead*, 278 Ga. at 271 (quoting *Howell v. Fears*, 275 Ga. 627, 628 (2002)).

Likewise, to succeed on a vote legality claim under O.C.G.A. § 21-2-522(3), a plaintiff must demonstrate that the pool of legal votes discarded or illegal votes cast exceeded the margin of victory. *Id.* "It is not sufficient to show irregularities which simply erode confidence in the outcome of the election." *Middleton*, 273 Ga. at 203. "Elections cannot be overturned on the basis of mere speculation or an appearance of impropriety in the election procedures. *Id.* (citing *Hunt v. Crawford*, 270 Ga. 7, 9 (1998)). Thus, for both types of contest claims, the Court must focus on whether the allegations specifically show that enough votes were affected to change or place the result of the election in doubt.

10

Here, Plaintiffs fail to make such a showing for either type of contest claim. As stated above, Plaintiffs' primary allegations are a series of complaints about alleged vulnerabilities in Georgia's electronic voting infrastructure. *See* Petition at ¶¶ 21-35. They do not allege that any intentional or unintentional manipulations of Georgia's electronic voting infrastructure *actually* occurred.[4] In fact, the only allegation they make that any part of Georgia's election infrastructure was even *accessed* (much less manipulated) from the outside is an allegation that over two years before the election in question, a cybersecurity researcher accessed one state election server that was then housed at Kennesaw State University. *Id.* at ¶ 31. Plaintiffs attempt to bolster their allegations of irregularities in Georgia's election systems by citing a recent federal trial court order in *Curling v. Kemp*, Civil Action No. 17-cv-0289 (N.D. Ga. Sep. 17, 2018). In that order, however, not only did the *Curling* court refuse to grant relief against the State, but it made no finding that any manipulation of Georgia's election systems has occurred.

Next, Plaintiffs have provided nine anecdotal allegations of irregularities in the November 6, 2018 election that they claim require this Court to order a new election. Petition at ¶¶ 40-48. Of the nine examples, only five even purport to involve the election for Lieutenant Governor at issue here. *Id.* at ¶¶ 40, 41, 43, 45, and 48. Thus, only the five allegations concerning the election for Lieutenant Governor are relevant to this Court's consideration of Plaintiffs' contest claim. The remaining four allegations are too speculative concerning their potential effect on that race to merit consideration. *See Middleton*, 273 Ga. at 203.

---

[4] Plaintiffs do allege that there is a "known compromise of the vulnerable DRE system," but nowhere do they actually identify this alleged "compromise." *See* Petition at ¶ 57. To the extent that Plaintiffs here are referring to the *access* of the election server at Kennesaw State University in 2016, they do not allege that that server was a DRE server or that any improper manipulation of or change to any State election system ever occurred.

11

Even for the five allegations concerning the election for Lieutenant Governor, Plaintiffs have alleged, at most, irregularities concerning a total 102 votes or ballots—one each from the allegations in Paragraphs 40, 41, 43, and 45 concerning individual voters and 98 from the allegations in Paragraph 48 concerning a vote-total discrepancy between the official results from a precinct and the precinct's poll tapes. Plaintiffs do not allege the total number of votes cast for the candidates in the Election and do not allege the margin of victory. Thus, from the face of Petition, the Court cannot make the required determination of whether there were enough irregular ballots, rejected legal ballots, or received illegal ballots that exceeded the margin of victory and thus placed the election result in doubt. *See Mead*, 278 Ga. at 271 (quoting *Howell*, 275 Ga. at 628). Even if Plaintiffs had alleged the vote totals from the election, they would need to allege that the 102 examples of ballot or voter issues are sufficient to place the election result in doubt. *See id.*

This same problem arises when analyzing Plaintiffs' remaining allegations concerning discrepancies in participation rates by voters in the various races that were on the ballot on November 6, 2018. Petition at ¶¶ 49-57. Plaintiffs make no allegations that – even if these discrepancies are the product of irregular ballots, rejected legal ballots, or received illegal ballots – the margin of victory would be exceeded such that the result of the election would be placed in doubt. Based on the allegations in the Petition, Plaintiffs could only succeed if the Court *assumes* first that these discrepancies are the product of impropriety and second that the number of votes affected by the discrepancies could change the election.

As Secretary Crittenden has already stated, the participation discrepancies Plaintiffs have identified can easily be explained by the fact that voters are not obligated to cast a vote in each contest appearing on their ballots. *See* Petition Exhibit C at 1. Furthermore, the Democratic

12

Candidate for Lieutenant Governor who lost the election has *herself* admitted that the discrepancies that Plaintiffs allege likely did not affect the outcome of the race. *See* Petition Exhibit B at 3.

Plaintiffs' speculative allegations do not rise to the level of the instances of specific and identifiable ballot or voter irregularities that the Supreme Court of Georgia has recognized constitute a viable election contest claim. *See, e.g., Mead*, 278 Ga. at 272 (describing allegations that 481 irregular ballots exceeded the 395-vote margin in the election at issue); *Howell*, 275 Ga. at 627 (describing allegations that 43 irregular ballots were cast in an election decided by a margin of 34 votes). In fact, even when presented with the type of concrete numbers missing here, the Supreme Court has rejected an election contest when the impropriety alleged is merely speculative. *See Middleton*, 273 Ga. at 202-03 (describing allegations that 506 illegal ballots exceeded the margin of victory in two races decided by margins of 117 and 20 votes, while ultimately deciding that the illegality alleged was only speculative). Plaintiffs' conclusory and speculative claims cannot form a valid election contest claim, and this claim must be dismissed.

**IV.    The Contest Claim Should Be Dismissed For Failure To Add Necessary Parties.**

Plaintiffs' election contest claim must also be dismissed because Plaintiffs failed to name the county election superintendents from any of the ten counties that appear, in Plaintiffs' eyes, to be the primary source of the "residual vote" question at issue in this lawsuit. These are the ten counties identified by the Democratic Candidate Sara R. Amico in her letter to Secretary Crittenden, which is attached to the Petition at Exhibit B, Attachment C. An action may be dismissed where the plaintiff has failed to join a necessary party. O.C.G.A. § 9-11-12(b)(7). A party is "necessary" to an action if, "[i]n [its] absence[,] complete relief cannot be afforded among those who are already parties." O.C.G.A. § 9-11-19(a)(1).

13

Instead of naming the election superintendents from any of the ten counties referenced in Amico's letter, Plaintiffs have instead inexplicably named Fulton, Gwinnett, and DeKalb Counties. Because Plaintiffs' allegations concerning improper "residual votes" appear to be primarily tied to how the election was conducted in the ten counties referenced in Amico's letter, any relief that Plaintiffs could receive would require some action on the part of these ten counties to fix any problems that led to the allegedly improper "residual votes." If these ten counties' election superintendents are not parties to this action, the county election officials would also be prejudiced because such officials would be obliged to hold a new election without having had the opportunity to challenge this suit in court. Likewise, the remedy of a new election would require relief from a respondent not named in this suit. Finally, O.C.G.A. § 21-2-520(2)(C) specifically contemplates that multiple election superintendents are the proper defendants in an election challenge when, as here, more than one election superintendent conducted an election.[5] Thus, the Petition should be dismissed for failure to join necessary parties under O.C.G.A. § 9-11-12(b)(7).

---

[5] Because the Lieutenant Governor's race is a state-wide election conducted by all 159 counties in the State, all 159 county election superintendents may, in fact, be necessary parties. Each election superintendent conducted the November 6, 2018 election for Lieutenant Governor and will be required to conduct a new election if the Court orders one. Thus, it may be necessary for Plaintiffs to name all 159 election superintendents to bring this challenge to a state-wide election. *See* O.C.G.A. § 21-2-520(2)(C) (listing "[t]she election superintendent or superintendents who *conducted* the *contested* primary or election" as the proper government official defendants in a candidate challenge (emphasis added)).

14

## V.    The Eleventh Amendment Bars Plaintiffs' Federal Claims.

Plaintiffs' federal claims are asserted against Secretary of State Robyn A. Crittenden.

*See* Petition Counts II and III.  These claims against Secretary Crittenden in her official capacity

are barred by the Eleventh Amendment.[6]

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  By its own terms, the

amendment affords States immunity from suits, both legal and equitable.  *Id.*  "[D]espite the

limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a

citizen against his own State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98

(1984).  Because claims against public officials in their official capacities are merely another

way of pleading an action against the entity of which the officer is an agent, "official capacity"

claims against a state officer are included in the Eleventh Amendment's bar.  *Kentucky v.*

---

[6] Although the Petition is silent as to the capacity in which Defendant Secretary is sued, Plaintiffs' prayer for relief includes only injunctive relief and such relief is not available from Defendant in her individual capacity.  Claims for injunctive relief may be brought against government officials only in their official capacity. *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 n. 9 (11th Cir. 1995) (explaining that "claims for injunctive or declaratory relief . . . are considered to be official capacity claims against the relevant governmental entity"); *see also Santhuff v. Seitz*, 385 Fed. App'x. 939, 642 n. 3 (11th Cir. 2010) (affirming dismissal of claims for injunctive relief where Defendant was only sued in his individual capacity); *Common Cause v. Kemp*, 243 F. Supp. 3d 1315, 1318 (N.D. Ga. 2017), *vacated and remanded on other grounds*, 714 Fed. App'x. 990 (11th Cir. 2018); *Calhoun v. Lockette*, 2018 U.S. Dist. LEXIS 37509, * 6 (M.D. Ga. 2018) (failure to state a claim for injunctive relief against state official when sued in her individual capacity).

*Graham*, 473 U.S. 159, 165 (1985).[7]  Eleventh Amendment immunity applies to federal claims brought both in federal and state court. *See e.g., Alden v. Maine*, 527 U.S. 706, 754 (1999).

While an exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), it is limited to suits against state officers for *prospective* injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997).  "A federal court cannot award *retrospective* relief, designed to remedy past violations of federal law." *Idaho v. Coeur d' Alene Tribe*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring) (emphasis added).

Here, Plaintiffs' challenge is to the allegedly unconstitutional manner in which the November 6, 2018 general election *was* held.  Plaintiffs seek a new election to remedy the past allegedly infirm election.  Such relief is retrospective and therefore not within the *Ex Parte Young* exception.  Accordingly, Plaintiffs' federal claims are barred by the Eleventh Amendment.

## VI.  Plaintiffs Have Failed To Sufficiently Allege A Due Process Claim.

Plaintiffs assert a federal due process claim stemming from the use of allegedly defective DRE machines in the November 6, 2018 general election.  Petition at ¶¶ 69-72. The Supreme Court has long recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a State's

---

[7] There is no question that Plaintiffs' constitutional claims, necessarily brought pursuant to 42 U.S.C. § 1983, do *not* abrogate the Eleventh Amendment.  The Supreme Court has repeatedly held that "§ 1983 does not override a State's Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Kentucky*, 473 U.S. at 169 n.17.

16

'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

The Georgia Supreme Court has previously held that the use of DRE voting machines does not violate voters' state or federal constitutional rights, including substantive due process rights. *Favorito*, 285 Ga. at 797-798 (explaining that voters do not have a right to a particular ballot system and that "it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems."). Similarly, the Eleventh Circuit has rejected due process and equal protection challenges to manual recount procedures premised on the lack of a paper trail for counties that used the touchscreen machines. *Wexler v. Anderson*, 452 F.3d 1226, 1233 (11th Cir. 2006), *cert. denied*, 549 U.S. 1111 (2007).

> [I]f voters in touchscreen counties are burdened at all, that burden is the mere possibility that should they cast residual ballots, those ballots will receive a different, and allegedly inferior, type of review in the event of a manual recount. Such a burden, borne of a reasonable, nondiscriminatory regulation, is not so substantial that strict scrutiny is appropriate.

452 F.3d at 1232-1233. Other courts have also held that the use of a DRE ballot system does not, without more, state a due process claim. *Stein v. Cortés*, 223 F. Supp. 3d 423, 438 (E.D. Penn. 2016) (explaining that "decisions that sustain due process challenges to elections involve documented instances of improperly cast ballots, wholesale refusal to count properly cast ballots, direct infringements of the right to cast ballots, or a total failure to conduct the election").

Nor is a state's decision to use DRE machines generally subject to strict scrutiny. *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003) ("Under *Burdick*, the use of touchscreen voting systems is not subject to strict scrutiny simply because this particular balloting system may make the possibility of some kinds of fraud more difficult to detect."). The *Weber* court recognized

17

that "it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems. So long as their choice is reasonable and neutral, it is free from judicial second-guessing." *Weber*, 347 F.3d at 1107; *Favorito*, 285 Ga. at 797 (same, quoting *Weber*). Relying in part on *Weber*, the Pennsylvania Supreme Court has also recently held that "DREs that register votes electronically without a voter-verified ballot do not severely restrict the right to vote." *Banfield v. Cortés*, 631 Pa. 229, 265 (Pa. 2015). Similarly, in recognizing the benefits of DRE machines, the Texas Supreme Court has held that:

> DREs are not perfect. No voting system is. We cannot say that DREs impose severe restrictions on voters, particularly in light of the significant benefits such machines offer. . . . DREs can reduce uncounted votes and virtually eliminate the racial gap that tends to exist with other types of equipment, have the potential to expand access for people with disabilities and for voters with limited English proficiency, and tend to considerably reduce the number of uncounted votes.

*Andrade v. NAACP of Austin*, 345 S.W. 3d 1, (Tex. 2011) (internal quotations and citations omitted).

Here, Plaintiffs simply allege that the race for Lieutenant Governor garnered fewer votes than other statewide offices and ask this Court to assume a causal relationship between the number of votes for the Lieutenant Governor race and the use of DRE machines. These allegations are insufficient to state a due process claim under the Fourteenth Amendment.

## VII.   Plaintiffs Fail to Sufficiently Allege an Equal Protection Claim.

Plaintiffs' equal protection claim is premised on allegations that the use of a DRE machine to cast a ballot in the November 6, 2018 general election was less favorable than voting by absentee ballot. Petition at ¶¶ 74-76. Plaintiffs have not made out an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially

18

a direction that all persons *similarly situated* should be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (emphasis added). An equal protection claim requires a showing that a plaintiff has been the victim of intentional discrimination. *Batson v. Kentucky*, 476 U.S. 79 (1986). The requisite discriminatory purpose must be "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted). The plaintiff may prove intent with direct or circumstantial evidence. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999).

The first step in any equal protection claim is to establish that a recognizable distinct class is singled out for different treatment under the laws as written or as applied. *Castaneda v. Partida*, 430 U.S. 482, 494 (1977). Here, Plaintiffs fail this first step. Plaintiffs' Petition is not that similarly situated voters were treated differently, it is that voters that chose to vote by absentee paper ballot were allegedly treated more favorably than voters that chose to vote on a DRE. Doc. 1 ¶¶ 74-76. In other words, the two classes of voters, after choosing to cast their ballots using *different* methods, are no longer *similarly situated*. "To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, [courts] are obliged to apply the 'similarly situated' requirement with rigor. *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *Id.* (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)).

As the Georgia Supreme Court recognized in an earlier challenge to Georgia's use of DRE machines, all Georgia voters "have the option of casting an absentee ballot or using the

19

touch screen electronic voting machines on election day." *Favorito v. Handel,* 285 Ga. 795, 798

(2009) (rejecting state and federal due process and equal protection constitutional challenges to

the use of DRE machines). As the *Favorito* Court recognized, "absentee voters 'have not been

treated differently from the polling place voters, except in a manner permissible under the

election statutes' and as a result of their own choice." 285 Ga. at 798. Plaintiffs' allegations fail

to sufficiently allege a claim for violation of the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Petition.

This 4th day of December, 2018.

> Christopher M. Carr
> Attorney General
> Georgia Bar No. 112505
> Annette M. Cowart
> Deputy Attorney General
> Georgia Bar No. 191199
> Russell D. Willard
> Senior Assistant Attorney General
> Georgia Bar No. 760280
> State Law Department
> 40 Capitol Square, S.W.
> Atlanta, GA 30334
> Telephone: (404) 656-3357
>
> */s/ Josh Belinfante*
> Josh Belinfante
> Georgia Bar No: 047399
> jbelinfante@robbinsfirm.com
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Brian E. Lake
> Georgia Bar No. 575966
> blake@robbinsfirm.com
> Alexander Denton
> Georgia Bar No. 660632
> adenton@robbinsfirm.com
> Special Assistant Attorneys General

20

Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:     (678) 701-9381
Facsimile:     (404) 856-3250

*Attorneys for Defendant Robyn A. Crittenden,*
*Secretary of State of Georgia*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the within and foregoing **CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT ON BEHALF OF DEFENDANT ROBIN A. CRITTENDEN** on all parties by electronically filing it with the Clerk of the Court using the Odyssey eFileGA system, which will automatically send an email notification of such filing to counsel for the parties.

This 4th day of December, 2018.

*/s/ Alexander Denton*
Alexander Denton

Fulton County Superior Court
***EFILED***LW
Date: 12/4/2018 1:50 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,** | |
| **Plaintiffs,** | **CIVIL ACTION FILE** |
| **v.** | **NO. 2018CV313418** |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,** | |
| **Defendants.** | |

## PLAINTIFFS' STATUS REPORT

This Status Report[1] is submitted in light of the reassignment of this case from Judge Russell to Senior Judge Grubbs and provides a brief overview of the pleadings submitted thus far and efforts undertaken to serve the Defendants with process, schedule the answer date, and schedule the trial of the matter. In addition, this Status Report will describe Plaintiffs' Emergency Motion for Inspection, filed on Thursday, November 29, 2018.

---

[1] This is a refiling of the original December 3, 2018 Status Report, which was circulated to the parties via email on December 3, 2018. No changes have been made, except to correct the Case File Number.

Page 1

## A.   Overview of Filings and Service of Summons

This petition to contest the Lieutenant Governor election was filed on
November 23, 2018, the day after Thanksgiving, within five days of the
certification of the election on Saturday, November 17, 2018.  The Petition alleges
massive irregularities in the conduct of the election, so significant that the true
election outcome cannot be determined.

Secretary of State Crittenden, as chair of the State Elections Board, a week
ago (on November 26, 2018) acknowledged service of the petition pursuant
to  O.C.G.A. § 21-2-524(b).   Defendants' counsel, and Defendant Duncan's office,
were sent copies of the petition via email on Saturday November 24.  Plaintiffs
asked each of the defendants to waive formal service of the summons; all have
refused. Defendants have filed no pleadings or other papers.

As described in Plaintiffs' Motion for Clarification and to Request a Setting
of Trial Date, filed on November 28, 2018, the Election Contest statute contains
special provisions for the service of summons and the setting of the answer date.
Specifically, the statute directs the Clerk (not the plaintiff), to issue notice
"requiring the defendant and any other person named in such petition as a
candidate for such nomination or office, to answer and appear such petition, a day
to be fixed in such notice, not more than ten days nor less than five days after the
service of the notice."  Pursuant to this statute, Plaintiffs drafted a "special

summons" and provided it to Judge Russell and the Clerk's office (Mr. Al Clark), and Judge Russell fixed the answer date (at December 8, 2018), but the case was reassigned to Judge Grubbs before the Clerk could initiate the service of summons.

The actual trial of the matter is governed by O.C.G.A. § 21-2-525(a), which states: "Within 20 days after the return day fixed in the notice as provided in subsection (a) of Code Section 21-2-254 to the defendant" [that is, the day fixed for the defendant to "appear and answer"] "the presiding judge shall fix a place and time for the hearing of the contest proceedings." O.C.G.A. § 21-2-526 then states that all issues of a contest "shall be fully tried and determined by the court" without a jury, *unless* a jury is demanded by a party before the call of the case.

## B.    Inspection and Discovery

Of immediate concern is the need to preserve and inspect the electronic equipment and electronic records that the State used to conduct this election. There is substantial evidence that the electronic voting equipment and underlying electronic records and election processes used in the 2018 general election was "so defective" "as to place in doubt the result"[2] of the election for Lieutenant Governor, including scores of voters' and eye-witness reports of malfunctioning

---

[2] To demonstrate entitlement to a finding that the election was invalid, Plaintiffs need not prove that the irregularity was sufficient to change the result; instead, what is required is a showing that the irregularity, or illegal votes, were sufficient to "place in doubt the result." *See* O.C.G.A. § 21-2-522(1) and (3); § 21-2-527(d).

Page 3

Direct Electronic Recording ("DRE") touchscreen machines and an aberrant pattern of votes from DRE machines that does not appear *at all* in the 230,000+ votes cast on paper ballots. *See* O.C.G.A. § 21-2-522(1) and (3); § 21-2-527(d). *See Taggart v. Phillips,* 242 Ga. 454, 455 (1978) ("doubt may be cast on an election by showing improper maintenance of the voting machines resulting in votes being miscast"). Additionally, there are material and verifiable reports of electronic pollbook errors and malfunctions and DRE machine malfunctions including "vote flipping," the premature casting of ballots without voter review, and irregularities of vote counts appearing on the DRE voting machine poll tapes.

Vital to the determination of the causes of these irregularities is an expert forensic examination of the electronic equipment and related records ,equipment that is currently in the possession of Election Official Defendants and third-parties but which may be made available for immediate inspection without disruption of ongoing election activity.   The requested examination is expressly authorized by O.C.G.A. § 9-11-34(a)(1), which allows the inspection, sampling and testing of "any tangible things" that are relevant to the subject matter of the litigation.  It is manifestly in the public interest for full inspection of these electronic registration and voting systems to be conducted immediately, *before* the equipment and electronic records involved are  "mothballed" or  altered in any way in preparation for the next election or maintenance.

Plaintiffs accordingly on November 27, 2018, filed an Emergency Motion for Inspection.  Although Defendants have not been formally served, each has had notice of this action for over a week and is under a duty to preserve evidence in any event, a duty that Defendants have continued to violate.  In addition, this Court has the authority to order the inspection and discovery prior to Defendants' answer, "in the interests of justice" under O.C.G.A. § 9-11-26(d), or pursuant to petition under O.C.G.A. § 9-11-27.   Plaintiffs request that the Emergency Motion to be granted.

## C.    Timing of Discovery and Trial

Appropriately thorough discovery of the causes of the irregularities should be allowed prior to trial.  Unlike pre-election contests, this case will *not* be mooted upon the Lieutenant Governor's taking of office.[3]  O.C.G.A. § 21-2-503(c) provides:

> Upon the certification of the results of the election, a person elected to a federal, state, or county office may be sworn into office notwithstanding that the election of such person may be contested in the manner provided by this chapter. Upon the final judgment of the proper tribunal having jurisdiction of a contested election which orders a second election or declares that another person was legally elected to the office, the person sworn into such office shall cease to hold the office and shall cease to exercise the powers, duties, and privileges of the office immediately.

---

[3] *See City of Greenville v. Bray*, 284 Ga. 641, 642 (2008) (distinguishing between pre-election contests and post-election contests).

Plaintiffs welcome a status conference to address discovery and other trial matters.

Respectfully submitted this 3rd day of December, 2018.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

Page 6

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 3rd day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown

Fulton County Superior Court
***EFILED***LW
Date: 12/4/2018 1:08 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, and JEANNE DUFORT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 2018CV313418 |
| v. | ) ) | |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF APPEARANCE OF COUNSEL

COMES NOW Brian R. Dempsey of the law firm Carothers & Mitchell, LLC, 1809 Buford

Highway, Buford, Georgia 30518, and hereby enters his appearance as additional counsel for

Defendant Gwinnett County Board of Registrations and Elections and requests that he be added to

the docket as additional counsel for this defendant. All pleadings and other notices should be sent

to him at the address below.

1

This 4th day of December, 2018.

<div style="margin-left: 40%;">

Respectfully submitted,

CAROTHERS & MITCHELL, LLC

*/s/ Brian R. Dempsey*
BRIAN R. DEMPSEY
Georgia Bar No. 217596
Attorneys for Defendant Gwinnett County Board
of Registrations and Elections

</div>

1809 Buford Highway
Buford, GA 30518
Phone:  770-932-3552
Fax:  770-932-6348
brian.dempsey@carmitch.com

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date served all counsel in the foregoing action with a

true and correct copy of the **NOTICE OF APPEARANCE OF COUNSEL** with the Clerk of the

Court using the Odyssey (EfileGa) system to the following:

Bruce P. Brown
**Bruce P. Brown Law**
1123 Zonolite Road NE, Suite 6
Atlanta, GA 30306
bbrown@brucepbrownlaw.com

Christopher M. Carr
Annette M. Cowart
Russell David Willard
**Attorney General of Georgia**
40 Capitol Square SW
Atlanta, GA 30334
ccar@law.ga.gov
acowart@law.ga.gov
rwillard@law.ga.gov

Joshua Barrett Belinfante
Alexander Fraser Denton
Vincent Robert Russo
Brian Lake
**Robbins Ross Alloy Belinfante Littlefield, LLC**
500 14th St. NW
Atlanta, GA 30318
jbelinfante@robbinsfirm.com
adenton@robbinsfirm.com
vrusso@robbinsfirm.com
blake@robbinsfirm.com

Edward H. Lindsey, Jr.
**Dentons US LLP**
303 Peachtree St. NE, Suite 5300
Atlanta, GA 30308
edward.lindsey@dentons.com

3

Bryan Paul Tyson
**Strickland Brockington Lewis LLP**
1170 Peachtree St. NE, Suite 2200
Atlanta, GA 30309
bpt@sbllaw.net

This 4th day of December, 2018.

CAROTHERS & MITCHELL, LLC

*/s/ Brian R. Dempsey*
BRIAN R. DEMPSEY
Georgia Bar No. 217596

1809 Buford Highway
Buford, GA 30518
Phone:  770-932-3552
Fax:  770-932-6348
brian.dempsey@carmitch.com

4

Fulton County Superior Court
***EFILED***QW
Date: 12/5/2018 2:39 PM
Cathelene Robinson, Clerk

### IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD<br>GOVERNANCE, RHONDA J. MARTIN,<br>SMYTH DUVAL, and JEANNE DUFORT,<br>    Plaintiffs,<br><br>v.<br><br>ROBYN A. CRITTENDEN,<br>Secretary of State of Georgia, et. al.<br>    Defendants. | Civil Action File No.<br><u>2018CV313418</u> |

### ORDER

The above and foregoing case having come for hearing and service not having

been performed,

It is hereby ordered and adjudged as follows:

1.

All Motions in this case shall be filed by 5:00 p.m. on December 20th, 2018.

2.

All filed Motions are set for hearing at 9:00 a.m. January 9, 2019 in Courtroom

2000, Superior Court of Cobb County.

3.

The case is set for Final Hearing on January 17th, 2019 at 9:00 a.m. in Courtroom

2000, Superior Court of Cobb County.

SO ORDERED this 5th day of December, 2018.

_____
The Honorable Adele P. Grubbs
Senior Judge, State of Georgia
Assisting per Order of Appointment

Distribution List:

adele.grubbs@gmail.com

al.clark@fultoncountyga.gov

richard.carothers@carmitch.com

sue@carmitch.com

brian.dempsey@carmitch.com

bpt@sbllaw.net

edward.lindsey@dentons.com

Thomas.Davis@cobbcounty.org

vernstes@dekalbcountyga.gov

Patrise.Perkins-Hooker@fultoncountyga.gov

DWare@hallboothsmith.com

Cheryl.Ringer@fultoncountyga.gov

bdbryan@dekalbcountyga.gov

JOvercash@7Jad.com

csims@7Jad.com

chall@lmjc.net

Josh.Belinfante@robbinsfirm.com

vrusso@robbinsfirm.com

adenton@robbinsfirm.com

Brian.Lake@robbinsfirm.com

laila.tehrani@sbllaw.net

ccorreia@law.ga.gov

bbrown@brucepbrownlaw.com

Fulton County Superior Court
***EFILED***AC
Date: 12/6/2018 2:47 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,**<br><br>    **Plaintiffs,**<br><br>  v.<br><br>**ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,**<br><br>    **Defendants.** | **CIVIL ACTION FILE NO. 2018CV313418** |

### SPECIAL PROCESS SUMMONS
### FOR PETITION TO CONTEST ELECTION RESULT

To the following Defendants:

1. Robyn A. Crittenden, Secretary of State of Georgia
2. The Fulton County Board of Registration and Elections
3. The DeKalb County Board of Registrations and Elections
4. The Gwinnett County Board of Elections and Registration
5. Geoff Duncan

And to the following Candidates who participated in the Election for Lieutenant Governor, held November 6, 2018:

1. Sarah R. Amico
2. Geoff Duncan

1

In accordance with O.C.G.A. § 21-2-524(f), each Defendant and Candidate listed above is hereby summoned and required to appear before the **SUPERIOR COURT OF FULTON COUNTY** to answer Plaintiff's **Petition to Contest Election Result** (the "Petition"), filed on November 23, 2018, and assigned case number 2018CV313418. A copy of the Petition is attached hereto.

You have 10 days after service of this Summons and the Petition upon you to appear and answer this petition before the Fulton County Superior Court, exclusive of the day of service.

This 6th day of December, 2018.

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By:

_____
Deputy Clerk

To the Defendant / Candidate upon whom this petition is served:

This copy of the Summons and Petition was served upon you this _____ day of _____ 2018.

_____
Deputy Sheriff

2

Fulton County Superior Court
***EFILED***AC
Date: 12/7/2018 11:17 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,**

        **Plaintiffs,**

    **v.**

**ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,**

        **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## PRESERVATION ORDER

The Parties shall preserve evidence that may be relevant to this case as far as is possible in order to preserve the status quo. Evidence that may be relevant to claims and defenses include, *but are not limited to,* the following:

1. The Direct Electronic Recording ("DRE") touchscreen voting units, DRE internal memory and related memory cards, ExpressPoll units and associated electronic data, ExpressPoll memory cards, the General Election Management ("GEMS") servers and associated electronic data,

optical scanner electronic data and memory cards, machine results tapes,

voter access cards, supervisor cards, administrative access cards, media

devices transferring data from the GEMS server to other systems and

applications, ENet system records, and all iterations of voter registration

files ("the Voting System Evidence");

2. Any documents relating to the maintenance, programming, testing,

security and operations of the Voting System Evidence; and

3. Any documents relating to the November 6, 2018 and December 4, 2018

runoff elections, including all ballots, ballot programming, tabulations,

machine results tapes, polling place recap sheets, audit data and records,

provisional ballot and mail ballot records, communications, training

materials, maintenance records, voter complaint records, system logs, and

troubleshooting reports.

At this time all Motions in this case are set for hearing on January 9th

2019. Should there be any election due to be conducted prior to that date

the parties shall notify the Court and the Court will entertain appropriate

motions in reguard there to.

Failure to obey this Order in good faith by any party or entity may result in the imposition of sanctions pursuant to O.C.G.A. § 9-11-37 or contempt proceedings.


IT IS SO ORDERED this ___ day of _____ 2018.

<div style="text-align:right">

_____
Adele P. Grubbs
Senior Judge,
State of Georgia

</div>

Fulton County Superior Court
***EFILED***MH
Date: 12/13/2018 11:53 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, | |
| **Plaintiffs,** | |
| v. | CIVIL ACTION FILE NO. 2018CV313418 |
| ROBYN A. CRITTENDEN, **Secretary of State of Georgia, et al.,** | |
| **Defendants.** | |

## WAIVER OF SERVICE OF SUMMONS AND SPECIAL SUMMONS

To: Bruce P. Brown, Counsel for Plaintiffs

Pursuant to O.C.G.A. § 9-11-4(d), on behalf of Defendant Geoff Duncan ("Mr. Duncan"), I acknowledge a copy of the Petition to Contest Election Result, filed in this action on November 23, 2018, and a copy of the Special Process Summons for Petition to Contest Election Result ("the Summons"), filed in this action on December 6, 2018, and waive Mr. Duncan's right to be served personally with the Petition to Contest Election Result and the Summons pursuant to O.C.G.A. § 9-11-4. I further certify that I have the authority to acknowledge such service on behalf of Mr. Duncan.

1

Mr. Duncan will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

Executed this 12ᵗʰ day of December, 2018.

_____
Edward H. Lindsey, Jr.
Dentons US LLP
303 Peachtree St. NE
Suite 5300
Atlanta, GA 30308

*Attorney for Geoff Duncan*

2

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing Waiver via the Court's e-filing system to the attorneys of record who have made appearances.

This 13th day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Road NE Ste 6
Atlanta, Georgia 30306
(404) 881-0700
Attorney for Plaintiffs

Fulton County Superior Court
***EFILED***QW
Date: 12/19/2018 11:00 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,**<br><br>Plaintiffs,<br>v.<br><br>**ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,**<br><br>Defendants. | **CIVIL ACTION FILE NO. 2018CV313418** |

### PLAINTIFFS' MOTION TO DROP DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS AS PARTY DEFENDANT

Pursuant to O.C.G.A. § 9-11-21, Plaintiffs move to drop DeKalb County

Board of Registrations and Elections ("the DeKalb Board") as a party defendant.

O.C.G.A. § 9-11-21 provides in relevant part: "Parties may be dropped or added by

order of the court on motion of any party or of is own initiate at any state of the

action and on such terms as are just."  Plaintiffs show that the DeKalb Board has

not filed an answer in this case and has no objection to being dropped as a party

Page 1

defendant.  Accordingly, granting of this motion, and dropping the DeKalb Board, is in the interests of justice.

A proposed order is attached.

Respectfully submitted this 19th day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 19th day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown

Page 3

Fulton County Superior Court
***EFILED***QW
Date: 12/19/2018 3:46 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,**<br><br>                    **Plaintiffs,**<br>        **v.**<br><br>**ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,**<br><br>                    **Defendants.** | **CIVIL ACTION FILE NO. 2018CV313418** |

## [PROPOSED] ORDER GRANTING MOTION TO DROP DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS AS PARTY DEFENDANT

Upon motion of Plaintiffs, and pursuant to O.C.G.A. § 9-11-21, Defendant

DeKalb County Board of Registrations and Elections is dropped from this action

and is no longer a party to this case.

SO ORDERED this __ day of December, 2018.

_____
Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
            Bruce P. Brown
            Counsel for Plaintiffs

Page 1

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 19TH day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown

Page 2

Fulton County Superior Court
***EFILED***LW
Date: 12/20/2018 6:01 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, and JEANNE DUFORT, **Plaintiffs,** v. ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, **Defendants.** | Civil Action No.: 2018CV313418 |

## MOTION TO DISMISS BY SPECIAL APPEARANCE OF DEFENDANT GEOFF DUNCAN AND JOINDER IN PART WITH THE PREVIOUSLY FILED MOTIONS TO DISMISS BY ROBYN A. CRITTENDEN, SECRETARY OF STATE OF GEORGIA AND GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS

NOW COMES the Defendant, Geoff Duncan, and by Special Appearance, without waiving any affirmative defenses or the right to answer, timely files this Motion to Dismiss Plaintiffs' Petition to Contest Election Result ("Petition") and joins in part the Motions to Dismiss previous filed by Co-Defendants Robyn A. Crittenden, Secretary of State of Georgia, and the Gwinnett County Board of Registrations and Elections by showing the following:

1.    On December 4, 2018,  Robyn A. Crittenden, Secretary of State of Georgia filed a CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT with the Court.

2.    On December 20, 2018, the Gwinnett County Board of Registrations and Elections filed a CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT with the Court.

3.    The Defendant Geoff Duncan is the Lt. Governor-Elect of Georgia having received in excess of 123,000 move votes than his opponent in the November 6, 2018 General Election and the results of the election having been certified by the Georgia Secretary of State.

4.    The Defendant Geoff Duncan moves to dismiss the Plaintiff's Petition by showing to the Court the following:

     a. The Coalition for Good Governance does not have standing to file an election contest;

     b. This Court lacks jurisdiction because Plaintiffs failed to join necessary parties;

     c. Plaintiffs have failed to state a claim upon which relief can be granted;

     d. The Eleventh Amendment Bars Plaintiffs' Federal Claims; and

     e. Plaintiffs Have Failed To Sufficiently Allege A Due Process Claim.

5.    In support of his Motion to Dismiss, the Defendant Geoff Duncan joins and adopts herein by reference Grounds II, III, IV, V, VI, and VII of Robyn A. Crittenden's  CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT.

6.    In support of his Motion to Dismiss, the Defendant Geoff Duncan joins and adopts herein by reference Grounds I, II, and III of the Gwinnett County Board of Registrations and Elections' CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT.

     WHEREFORE, the Defendant Geoff Duncan prays its Motion to Dismiss be granted and that the Plaintiffs' Petition be dismissed with all cost to the Plaintiffs.

DENTONS US LLP

Edward H. Lindsey Jr.
Georgia Bar No. 453075

Samuel S. Olens
Georgia Bar No. 551540

Page 2 of 4

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION TO DISMISS BY SPECIAL APPEARANCE OF DEFENDANT GEOFF DUNCAN AND JOINDER IN PART WITH THE PREVIOUSLY FILED MOTIONS TO DISMISS BY ROBYN A. CRITTENDEN, SECRETARY OF STATE OF GEORGIA AND GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS has been served on all parties by electronically filing and with the Clerk of the Court using Odyssey eFileGA System, which will automatically send an email notification of such filing to counsel for the parties:

Bruce P. Brown
Bruce P. Brown Law
1123 Zonolite Road, N.E.
Suite #6
Atlanta, Georgia 30306

Cristina Correia
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia  30334

Bryan P. Tyson
Strickland Brockington Lewis LLP
1170 Peachtree St NE
Suite 2200
Atlanta, GA 30309

Patrise Perkins-Hooker
Fulton County Government
141 Pryor Street
Atlanta, Georgia 30303

R. David Ware
Hall Booth Smith, P.C.
191 Peachtree Tower

191 Peachtree Street
Atlanta, Georgia 30303

Viviane Ernstes
DeKalb County GA
1300 Commerce Drive
Decatur, Georgia 30030

Josh Belinfante
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, Georgia 30318

This 26 day of December, 2018.

Edward H. Lindsey Jr.

Fulton County Superior Court
***EFILED***AC
Date: 12/20/2018 8:24 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

      Plaintiffs,

v.

ROBYN A. CRITTENDEN, Secretary of
State of Georgia, *et al.*,

      Defendants.

Civil Action No. 2018CV313418

## CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT ON BEHALF OF DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS

Defendant Gwinnett County Board of Registrations and Elections (Gwinnett BORE) specially appears in this matter to file this Motion to Dismiss Petition to Contest Election Result. Defendant Gwinnett BORE has not been served with this lawsuit, does not waive any affirmative defenses or the right to answer when it is served, and does not waive service of process in this matter.

Defendant Gwinnett BORE moves to dismiss Plaintiffs' Petition to Contest Election Result because:

(1) The Coalition for Good Governance does not have standing to file an election contest;

(2) This Court lacks jurisdiction because Plaintiffs failed to join necessary parties; and

(3) Plaintiffs have failed to state a claim upon which relief can be granted.

- 1 -

Defendant Gwinnett BORE fully joins the Consolidated Motion to Dismiss by Special Appearance and Brief in Support on Behalf of Defendant Robyn Crittenden filed with this Court on December 4, 2018, incorporates the entirety of that brief by reference, and will not repeat the arguments raised in the Secretary's Brief. In the interest of bringing several additional points that amplify, but do not repeat, the Secretary of State's Motion, Defendant Gwinnett BORE offers the following additional arguments for the Court's consideration.

## INTRODUCTION

Plaintiffs filed this action seeking two different types of relief: (1) overturning the Lieutenant Governor's race in the 2018 general election through the election contest procedures outlined in statute; and (2) requiring an all-paper-ballot new election through several constitutional claims. While Plaintiffs clearly dislike DRE voting machines, this Court should not allow Plaintiffs to use election contest procedures to accelerate their unrelated claims and force a return to paper ballots—especially when the same parties and counsel have similar claims pending in federal court against the State and without any county parties.

This Court should, at the very least, dismiss the election contest portion of Plaintiffs' case and then dismiss Defendant Gwinnett BORE. While county election superintendents are necessary parties for election contests, Plaintiffs have not sued all 159 superintendents as the statute requires and cannot now add those additional counties.

Without the election contest portion of the Petition, the remaining constitutional claims can either be dismissed to the extent they apply only to a proposed new election or can be heard without a senior judge in the normal course of litigation. And those remaining

- 2 -

claims can be heard without the necessity of burdening county election officials with responding to claims that are properly brought against the State.

## ARGUMENT AND CITATION OF AUTHORITY

As outlined in the Secretary's Brief, Plaintiffs have failed to place their election contest properly before this Court under the statutes governing election contests. While the rules related to election contests may seem harsh, the Supreme Court recognizes the critical interest in avoiding "election uncertainty and the confusion and prejudice that can come in its wake." *Broughton v. Douglas Cty. Bd. of Elections*, 286 Ga. 528, 529 (2010). Applying the technical rules related to contests is a prerequisite for jurisdiction—even to the point of dismissing petitions filed just one day late. *See Head v. Williams*, 269 Ga. 894, 895, 506 S.E.2d 863, 865 (1998) (decided under identical contest provisions of Municipal Election Code).

### I. The Coalition for Good Governance does not have standing to file an election contest.

O.C.G.A. § 21-2-521 limits the types of persons who can file an election contest to a candidate election. The only possible contestants are the candidate or a voter who was entitled to vote in the election. *Id.* A corporation cannot vote in an election and is not entitled to file a contest. While the Coalition for Good Governance might have standing to bring the constitutional claims outlined later in the Petition, it does not have standing to challenge election results through the statutory contest procedures.

### II. Plaintiffs failed to join necessary parties and cannot now add them because the statute of limitations has expired.

Election contests require prompt action by petitioners, getting the right individuals and entities before the correct court to have the contest decided. *Swain v. Thompson*, 281 Ga.

- 3 -

30, 31 (2006). Petitioners must sue the election superintendents who would have to hold a new election—meaning that a statewide contest requires naming all of the 159 election superintendents that would hold the new election. O.C.G.A. § 21-2-520(2)(C). Even assuming Plaintiffs have stated a claim, their Petition only put three counties on notice of the action, because they sued only the Boards of Election for DeKalb, Fulton, and Gwinnett Counties and now seek to dismiss DeKalb as a party.

The one case interpreting the petition-amendment procedures for an election contest only allowed petitioners to correct an error in suing the correct entity when the county officials were already on notice of the litigation within the short statute of limitations. *See Brodie v. Champion*, 281 Ga. 105 (2006) (allowing amendment to add election board when correct director of elections had been sued). In this case, none of the other 156 counties that would have to conduct the new election Plaintiffs seek have been notified of this case.

Even if Plaintiffs now attempted to add additional parties, they will be joining those parties after the expiration of the five-day statute of limitations. This failure to join a necessary and indispensable party outside the statute of limitations is yet another reason this Court should dismiss the Petition. There is no doubt that "complete relief cannot be afforded," O.C.G.A. § 9-11-19(a)(1), in the absence of all of the Boards of Election that would have to conduct the new election if Petitioner were to be successful. Plaintiffs did not even sue the top ten counties where they believed there were problems (as referenced in Ms. Amico's letter).

Adding additional election superintendents after the statute of limitations has expired should not be allowed to relate back to the original filing date. O.C.G.A. § 9-11-15(c) outlines the requirements for a filing to relate back when the statute of limitations has

- 4 -

expired. In this case, the failure to name the election superintendents for 156 counties was not the result of a mistake of identity. Plaintiffs knew the race was statewide and had all the necessary facts to name the correct parties prior to the expiration of the statute of limitations. As a result, they cannot be allowed to correct the defect in their original filing by adding the additional election superintendents. *See Steed v. Wellington HealthCare Servs., LLC*, 285 Ga. App. 446, 448 (2007) (upholding denial of motion to amend when plaintiff had all information to name correct party before expiration of statute of limitations).

### III. Plaintiffs have failed to state a claim upon which relief can be granted.

Even if Plaintiffs had sued the correct entities, election contests require specific proof: that the results of the election would be placed in doubt. O.C.G.A. § 21-2-522. That is because the Court must presume that the results of an election are valid. *Middleton v. Smith*, 273 Ga. 202, 203 (2000). Irregularities that "simply erode confidence in the outcome of an election" are not sufficient to overturn an election, because elections "cannot be overturned on the basis of mere speculation." *Id.*

Plaintiffs must show to a mathematical certainty that the outcome would be placed in doubt. *Mead v. Sheffield*, 278 Ga. 268, 271 (2004); *Howell v. Fears*, 275 Ga. 627, 628 (2002). The publicly reported totals for the Lieutenant Governor's race[1] show Geoff Duncan receiving 1,951,738 votes and Sarah Riggs Amico receiving 1,828,566, for a difference of 123,172 votes. Plaintiffs claim various scattered alleged irregularities in their Petition—very few with any specific identifying information—but they have not alleged any number of disputed votes even close to the massive burden they carry. Ms. Amico has even admitted

---

[1] Available at https://results.enr.clarityelections.com/GA/91639/Web02-state.221451/#/cid/21000

that even if all the irregularities alleged were true, they would not change the results of her election. Petition, Exhibit C at page 1.

Plaintiffs repeatedly claim that there is no explanation other than a hack of the DRE units to explain the differential in the vote for Lieutenant Governor and other statewide races. But there are any number of plausible scenarios: (1) voters chose not to cast ballots when there was no Libertarian in the race; (2) voters thought the Governor and Lieutenant Governor ran on a ticket, so a second vote was unnecessary; (3) the ballot design and layout on the DRE units led voters to skip over the Lieutenant Governor election; or (4) some supporters of Democratic candidates disliked Ms. Amico or her positions on issues and chose not to vote for her.

Plaintiffs' repeated speculations about untraceable hacks of voting systems is just that—speculation. And the Supreme Court is clear that an election cannot be overturned because of "mere speculation." *Middleton*, 273 Ga. at 203. Because Plaintiffs have not alleged irregularities totaling anywhere close to the margin of victory, their Petition should be dismissed for failure to state a claim.

### IV. The Gwinnett BORE is not a necessary party for Plaintiffs' claims that are unrelated to the statutory election contest.

Plaintiffs obviously believe there are problems with Georgia's DRE machines. But the claims in Counts II and III apparently focus on the administration of a new election. If those claims somehow continue after dismissal of the election contest, Defendant Gwinnett BORE is no longer a necessary party and those claims can be addressed between Plaintiffs and the State.

- 6 -

## CONCLUSION

As outlined in the Secretary's Brief and this Brief, this Court lacks jurisdiction because Plaintiffs did not sue the necessary parties within the timeline provided by statute. Plaintiffs cannot now add those necessary parties outside the statute of limitations. And even if Plaintiffs could correct those fatal defects, they have not stated a claim under the statute governing election contests. This Court should dismiss Plaintiffs' Petition completely, or at the very least, dismiss the election contest claim and then dismiss Defendant Gwinnett BORE from its constitutional claims.

This 20th day of December, 2018.

<div align="right">

/s/ Bryan P. Tyson
Frank B. Strickland
Georgia Bar No. 687600
fbs@sbllaw.net
Bryan P. Tyson
Georgia Bar No. 515411
bpt@sbllaw.net
Anne W. Lewis
Georgia Bar No. 737490
awl@sbllaw.net
STRICKLAND BROCKINGTON
  LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
(678) 347-2200

Richard A. Carothers
Georgia Bar No. 111075
richard.carothers@carmitch.com
Brian R. Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA 30518

</div>

- 7 -

(770) 932-3552

*Attorneys for the Gwinnett County Board of
Registrations and Elections*

- 8 -

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

    Plaintiffs,

v.

ROBYN A. CRITTENDEN, Secretary of
State of Georgia, *et al.*,

    Defendants.

Civil Action No. 2018CV313418

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing

CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF

IN SUPPORT ON BEHALF OF DEFENDANT GWINNETT COUNTY BOARD OF

REGISTRATIONS AND ELECTIONS with the Clerk of Court using the Odyssey E-Filing

system which will provide automatic notification of such filing to all counsel of record.

This 20th day of December, 2018.

                /s/ Bryan P. Tyson
                Bryan P. Tyson
                Georgia Bar No. 515411

- 9 -

Fulton County Superior Court
***EFILED***LS
Date: 12/20/2018 4:33 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al*<br><br>Plaintiff,<br><br>v.<br><br>ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al*<br><br>Defendant | )<br>)<br>) Civil Action File No. 2018CV313418<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FULTON COUNTY BOARD OF REGISTRATIONS AND ELECTIONS SPECIAL APPEARANCE CONSOLIDATED MOTION TO DISMISS AND BRIEF IN SUPPORT

COMES NOW, Fulton County Board of Registrations and Elections ("Fulton County BRE"), by special appearance and without submitting to the jurisdiction of this court and without waiving any rights or defenses, for the limited purpose of filing a Motion to Dismiss pursuant to OCGA §§9-11-12(b)(2), (4), (5), (6) and (7) and filing this brief in support of the motion. Fulton County BRE has not been served and has not waived service of process.

### I.    Background

This case began long before this Petition was filed on November 23, 2018.  On May 25, 2017, The Coalition for Good Governance, then operating under the name Rocky Mountain Foundation, filed suit against the Director of the Fulton County BRE in Fulton County Superior Court.  As in this case, the allegation was made that the Direct Recording Electronic ("DRE") voting equipment used in Georgia elections is unsafe and inaccurate and a court order directing the use of paper ballots in future elections was sought.  That action was dismissed by Judge

1

Kimberly Esmond Adams on June 6, 2017.[1].   On July 3, 2017, The Coalition for Good

Governance filed a second action, this time an election contest, to which the Fulton County BRE

was a defendant.  The second action again complained about the vulnerability and unreliability

of Georgia's DRE voting system, asserted the same 42 U.S.C. 1983 claims for infringement of

the fundamental right to vote and infringement of the guarantee of equal protection that are

asserted in the instant Petition, and again sought the use of paper ballots.[2]   That case was

removed to federal court where it is currently pending.[3].

On November 6, 2018, a state-wide general election was held.  One of the races was for

Lieutenant Governor for the State of Georgia. (Petition p. 1).  The two candidates were Geoff

Duncan and Sarah Riggs Amico. (Petition ¶ 1).  Geoff Duncan received the most votes in the

Contested Election. (Petition ¶17). On November 17, 2018, the Secretary of State certified the

election results. (Petition ¶ 19). On November 23, 2018, Petitioners filed suit in Fulton County

Superior Court under the Georgia election contest statute, OCGA § 21-2-520 *et seq.*, alleging

that the unreliability and vulnerability of the electronic voting system used by the State of

Georgia places doubt on the results of the Lieutenant Governor's race.  The current Petition, as

the petitions before it, asserts 42 U.S.C. §1983 claims for infringement on the right to vote and

equal protection, seeks to void the Lieutenant Governor race and prohibit "Defendant Election

---

[1] "[A t]rial court may take judicial cognizance of records on file in its own court" *Petkas v. Grizzard*, 252 Ga. 104, 312 S.E.2d 107 (1984).  Civil Action File No. 2017cv290630. *Donna Curling, Donna Price, Rocky Mountain Foundation, Inc. v. Richard Barron, in his Official Capacity as Director of the Fulton County Board of Elections and Registration, et al.*
[2] Civil Action File No. 2017cv292233. *Donna Curling, Coalition For Good Governance, Donna Price, Jeffrey Schoenberg, Laura Digges, William Digges III, Ricardo Davis v. Richard Barron, in his individual capacity and his official capacity as Director of the Fulton County Board Of Registration And Elections, Mary Carole Cooney, Vernetta Nuriddin, David J. Burge, Stan Matarazzo and Aaron Johnson  in their individual capacities and official capacities as members of the Fulton County Board of Registration and Elections, The Fulton County Board Of Registration And Election, et al.*
[3] Civil Action File No. 1:17-cv-02989-AT.

2

Officials" from using the DRE voting system during the requested re-election.

First, As Petitioners are well aware, the Fulton County BRE cannot provide Petitioners with the relief they seek. The Fulton County BRE does not have the authority to determine the voting system used in Georgia. That responsibility lies with the Secretary of State. OCGA §§ 21-2-50, -50.2, -300, -379.3, -499; Ga. Comp. R. & Regs. R. 183-1-12-.01. The Fulton County BRE, like every other election superintendent in the state, is constrained by state law to use the voting system approved by the Secretary of State. OCGA §§ 21-2-300 and -379.3.

Second, the Petition fails to state a claim for relief. In support of the claim of irregularity, Petitioners rely, in part, on Exhibit B to the Petition, an unsigned letter dated November 12, 2018 purportedly from Sarah Riggs Amico to the Secretary of State raising concerns about the aberrant pattern of residual votes in the Lieutenant Governor race; Petitioners have parroted these claims in their Petition.[4] Exhibit B, at page 3, concedes that "the number of residual votes in the Lieutenant Governor's race is unlikely to affect the outcome of [the] race." Thus, notwithstanding Petitioners' allegations to the contrary, the Petition fails to state a claim supporting an election contest because Exhibit B to the Petition refutes Petitioners claim that the outcome of the election is doubtful. *See Mead v. Sheffield*, 278 Ga. 268, 271 (2004). An exhibit to a petition takes precedence over hypothetical factual allegations. *See Lord v. Lowe*, 318 Ga. 780. 781 (1974)(if there is any discrepancy between the allegations in the complaint and the attached exhibits, the exhibits control).

On November 27, 2018, Petitioners' Counsel requested that a special summons be issued by Fulton County Superior Court Judge Constance Russell--which special summons was issued

---

[4]The counties at issue were Atkinson, Ben Hill, Clay, Coffee, Hancock, Jefferson, Quitman, Randolph, Taliaferro and Twiggs. These counties are not named as defendants in this action and thus parties indispensable to the just adjudication of this matter are not before the court. See OCGA §9-11-19. Exhibit B raises no concerns regarding residual votes in Fulton County.

3

but not served. On November 29, 2018, Chief Judge Robert McBurney entered the "Order Re-assigning Case to Seventh Judicial Administrative District" requesting the Honorable Ralph Van Pelt, Administrative Judge of the Seventh Judicial Administrative Circuit, to determine what judge shall hear this case. On November 30, 2018, Judge Van Pelt appointed the Honorable Adele Grubbs to preside in this action to serve and hear the contest of the election.

On December 5, 2018, this court held a status conference during which Petitioners were put on notice that the Fulton County BRE had not been served. To date, the Fulton County BRE has not been served with the Election Contest Petition and the "notice, in the form of special process" issued by the Superior Court Clerk as required by OCGA §21-2-524. During the time between Plaintiffs' November 23, 2018, Petition and this December 20, 2018 Motion to Dismiss, Petitioners have not ensured that defendant was served by special process with a copy of the Petition, as required under the Election Contest Statute.

## II.   ARGUMENT AND CITATIONS TO AUTHORITY

### A. Petitioners' Claims Against Defendant are Barred For Lack Of Personal Jurisdiction and for Insufficient Service of Process.

A Georgia court cannot maintain proper jurisdiction over a civil claim, including an election contest, unless service of process has been properly perfected. A court does not have jurisdiction over a defendant until after service of process, and accordingly, while a legal action commences when the complaint is filed, it is not a pending suit between the parties until after service of process. *Wilkinson v. Udinsky*, 242 Ga. App. 464 (2000)(holding that improper service leads to a lack of jurisdiction); *Hilton v. Maddox*, 125 Ga. App. 423 (1972). If service is never perfected and is not waived, the court does not acquire jurisdiction of the defendant and the suit is void. *Anthony Hill Grading, Inc. v. SBS Investments, LLC*, 297 Ga. App. 728 (2009);

4

OCGA §9-11-12(b)(2).   When service is not timely made, the plaintiff bears the burden of showing lack of fault. *Patterson v. Lopez*, 279 Ga. App. 840 (2006).

Insufficient service of process is an affirmative defense that justifies dismissal of a Petitioners election contest.  See, O.C.G.A.§9-11-12(b)(5).   Thus, a motion to dismiss is the proper vehicle to seek resolution of the issue of lack of service or insufficiency of service of process. *Terrell v. Porter*, 189 Ga. App. 778 (1989).

### B. The Petition Should be Dismissed For Failure to Timely Comply with Procedural Mandates of the Election Contest Statute Designed to Ensure Swift Resolution of Election Disputes.

The Petition should be dismissed because Petitioners have failed to timely comply with the procedural service mandates of the Georgia Election Contest Statute.  OCGA § 21-2-520 *et seq.*; *Broughton v. Douglas County Bd. Of Elections*, 286 Ga. 528 (2010).  Petitioners' failure to exercise care, dispatch and diligence in timely complying with the procedural mandates of the Georgia Election Contest Statute violates the Georgia Supreme Court's steadfast pronouncement that "the party seeking review of an election has the obligation to exercise the mechanisms available to produce a timely result." *Allen v. Yost*, 282 Ga. 865 (2008).

The Election Contest Statute sets forth very precise and detailed procedural mechanisms affording Superior Courts with jurisdiction to review election disputes. *Id*. These carefully crafted statutory protocols "reflect the legislature's strong desire to avoid election uncertainty and the confusion and prejudice which can come in its wake." *Broughton*, 286 at 528-29. Compliance with these statutory protocols is also mandatory to ensure swift and quick resolution of election disputes. *Id*. There is no doubt under Georgia law that "swift resolution of election contests is vital for the smooth operation of government." *Id*.

Petitioners have clearly failed to exercise diligence and dispatch to ensure swift and

<div align="center">5</div>

timely review of this election dispute. Petitioners have failed to have the statutorily mandated special process served upon the BRE which would afford this court jurisdiction over the Fulton County BRE. Absent service, this court has no jurisdiction over the Fulton County BRE. The Election Contest Statute requires that service be effected "in the form of special process [issued by the Superior Court Clerk]" expressly requiring the named defendants to answer the petition "not more than ten days nor less than five days after the service of such notice." OCGA §21-2-524. Here, Plaintiffs did not ensure issuance of such special process.[5] Although the Court Clerk is tasked with issuing the process, Petitioners have the responsibility to ensure that such process issue in a timely fashion. *Swain v. Thompson*, 281 Ga. 30, 31 (2006). In *Swain*, the Georgia Supreme Court rejected the argument that the trial court clerk should have ensured that the required special process timely issue in that election contest. The Supreme Court reasoned that "[g]iven the public policy in favor of swift resolution of election contests, recognition of the clerk's duty to issue proper process must be balanced against the traditional placement on plaintiffs of the duty to ensure proper and timely service." *Id.* at 31. The Court thus explained that where service occurs "after the period of limitation for filing the action...the plaintiff has the burden of showing that due diligence was exercised." *Id.*

In *Swain*, the petitioner was placed on notice in the defendant's special appearance and answer that service was insufficient. The Court noted that "receipt of [defendant's] answer asserting insufficiency of service put [plaintiff] on notice and should have inspired him to exercise the greatest possible diligence to ensure proper and timely service." *Id.* The Court

---

[5] OCGA §9-11-4(a) is instructive because it also requires the clerk to issue a summons and deliver it for service. Lack of service of an election contest within the five-day safe harbor provision of O.C.G.A. § 9-11-4(c) is neither reasonable nor diligent and thus dismissal as to the Fulton County BRE is warranted. *See Day v. Savage*, 213 Ga. App. 792 (1994).

6

explained that "[o]nce the plaintiff becomes aware of a problem with service...his duty is elevated to an even higher duty of the greatest possible diligence to ensure proper and timely service." *Id.* at 32. In affirming the trial court's dismissal of the plaintiff's petition, the Court concluded that the "question of whether [the petitioner] exercised proper diligence after being put on notice of deficiencies in service of process was one for the trial court's discretion, which will not be disturbed absent abuse." *Id.*

Here, this court should exercise its discretion to dismiss the Fulton County BRE because Petitioners' failure to exercise diligence is even more inexcusable than the petitioner in *Swain,* in that Petitioners' Counsel, a serial filer of complaints railing against Georgia's voting system, was on notice on the date of the Petition's filing that the Election Contest Statute requires service be issued "in the form of special process." Certainly, having requested and received at least one special process from Judge Russell, service on the Fulton County BRE was "elevated to an even higher duty of the greatest possible diligence to ensure proper and timely service." *Swain*, 281 Ga. at 32. However, instead of ensuring or requesting that proper service be issued, the matter has simply sat before the trial court from the date of the Petition's filing on November 23, 2018. Now, almost one month later, petitioners have yet to actually serve Defendant with the Special Summons and Complaint. Moreover, there is no indication that Petitioners acted with the greatest due diligence to assure proper service was obtained. Petitioners have had more than enough time to act diligently and serve Defendant. Because Petitioners have not, the Petition, against the Fulton County BRE, should be dismissed for lack of personal jurisdiction and insufficiency of service of process.

7

### C. Petitioners do not have a Colorable Claim under 42 U.S.C. § 1983 and thus Fail to State a Claim Upon Which Relief can be Granted.

The law governing the invocation of section 1983 for alleged "malfunctions" of the electoral process is well settled. The [federal] Constitution is not an election fraud statute: protection is extended to the right of all qualified citizens to vote in state and federal election. *Bodine v. Elkhart County Election Bd.*, 788 F.2d 1270 (1986) *citing Reynolds v. Sims,* 377 U.S. 533, 554, 84 S. Ct. 1362, 1377-78, 12 L.Ed.2d 506 (1964). "It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983." *Hennings v. Grafton,* 523 F.2d 861, 864 (7th Cir.1975). The court in *Hennings* held that section 1983 is implicated only when there is "*willful* conduct which undermines the organic processes by which candidates are elected." 523 F.2d at 864 (emphasis added); *see also Shannon v. Jacobowitz,* 394 F.3d 90, 97 (2d Cir.2005) ("Because no conduct is alleged that would indicate an intentional deprivation of the right to vote, we find no cognizable federal due process claim.") Because Plaintiffs have failed to show willful intent, they have failed to state a constitutional violation of the Fourteenth Amendment. Every election irregularity will not rise to a constitutional violation. *Pettengill v. Putnam County R-1 Sch. Dist.*, 472 F.2d 121, 121-22 (8th Cir. 1973). The Constitution does not mandate flawless or perfect elections. *Bodine* 788 F.2d at 1272 (7th Cir. 1986). Absent invidious discrimination or "fraudulent interference with a free election by stuffing the ballot box," voter irregularities do not amount to constitutional violations. *Pettengill*, 472 F.2d 121, 122 (8th Cir. 1973). As stated in *Gamza v. Aguirre*, 619 F.2d 449, 453 9 (5th Cir. 1980), "[i]f every state election irregularity were considered a federal constitutional deprivation... the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss." Consequently, Petitioners' Section 1983

8

claims must be dismissed for failure to state a claim for the denial or deprivation of constitutional rights.

### D.  The Petition Must be Dismissed Pursuant to OCGA §9-11-12(b)(6) and (7)

Petitioners have failed to raise valid claims for relief and have failed to name all necessary parties to this election contest.  See OCGA §9-11-19.  The Lieutenant Governor race was a state-wide election.  Thus, the relief requested by Petitioners, requires the addition of all election superintendents for all 159 Georgia counties. See OCGA §21-2-520(2)(C).     Further, the Coalition for Good Governance lacks standing to bring an election contest and the claim for election contest fails on the merits.  Lastly, Petitioners fail to sufficiently allege either a due process claim or an equal protection claim.

The Fulton County BRE joins in, and incorporates by reference as if set forth verbatim herein, the facts, arguments and citations of authority set forth in the December 4, 2018 Consolidated Motion to Dismiss by Special Appearance and Brief in Support on Behalf of Defendant Robin A. Crittenden and in the Motions to Dismiss filed by Gwinnett County Board of Registrations and Elections and Lieutenant Governor-elect Geoff Duncan.

### CONCLUSION

It is clear that plaintiff has failed to perfect service upon defendant and failed to exercise the greatest possible diligence to ensure service; that the Fulton County BRE cannot provide Petitioners with the relief they seek because it does not have the authority to determine the voting system used in Georgia; and that Exhibit B to the Petition reveals that the number of votes at issue are insufficient to alter the results of the Lieutenant Governor's race.  Thus, the Petition should be dismissed in its entirety.

Respectfully submitted this 20th day of December, 2018.

9

**OFFICE OF THE FULTON COUNTY ATTORNEY**
Patrise Perkins-Hooker
County Attorney
Georgia Bar No. 572358
Patrise.perkins-hooker@fultoncountyga.gov


/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.burwell@fultoncountyga.gov
Cheryl Melissa Ann Ringer
Georgia Bar No. 557420
Cheryl.ringer@fultoncountyga.gov
David Lowman
Georgia Bar No. 460298
David.lowman@fultoncountyga.gov
Attorneys for Defendant Fulton County BRE

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
Office: (404) 612-0246
Fax:   (404)730-6540

10

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) ) ) Civil Action File No. 2018CV313418 |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) ) ) |
| Defendant | ) ) ) |

## CERTIFICATE OF SERVICE

This is to certify that on this day, I have caused to be electronically filed the foregoing

FULTON  COUNTY  BOARD  OF  REGISTRATIONS  AND  ELECTIONS  SPECIAL

APPEARANCE CONSOLIDATED MOTION TO DISMISS AND BRIEF IN SUPPORT with

the Fulton County Superior Court using the Odyssey efile GA system which will provide

automatic notification of this filing to all counsel of record.

This 20th day of December, 2018.


/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775050

.

11

Fulton County Superior Court
***EFILED***DG
Date: 12/20/2018 5:32 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CIVIL ACTION

FILE NO. 2018CV313418

### DEFENDANT ROBIN A. CRITTENDEN'S JOINDER IN CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT ON BEHALF OF DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS

Robyn A. Crittenden, in her official capacity as Secretary of State of the State of Georgia ("Defendant" or "Crittenden"), hereby joins Defendant Gwinnett County Board of Registrations and Elections' ("Gwinnett") Consolidated Motion to Dismiss by Special Appearance and Brief in Support ("Motion") as to Parts I-III because she agrees with Gwinnett that Plaintiffs' election challenge is subject to

dismissal.  Defendant maintains that the Court should dismiss Plaintiffs' Petition to

Contest Election Result ("Petition") in its entirety for the reasons set forth in

Defendant's own Consolidated Motion to Dismiss by Special Appearance and

Brief in Support, filed December 4, 2018 and the identified portions of Gwinnett's

Motion.

Respectfully submitted this 20th day of December, 2018.

> Christopher M. Carr
> Attorney General
> Georgia Bar No. 112505
> Annette M. Cowart
> Deputy Attorney General
> Georgia Bar No. 191199
> Russell D. Willard
> Senior Assistant Attorney General
> Georgia Bar No. 760280
> State Law Department
> 40 Capitol Square, S.W.
> Atlanta, GA  30334
> Telephone: (404) 656-3357
>
> */s/ Alexander Denton*
> Josh Belinfante
> Georgia Bar No: 047399
> jbelinfante@robbinsfirm.com
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Brian E. Lake
> Georgia Bar No. 575966
> blake@robbinsfirm.com
> Alexander Denton
> Georgia Bar No. 660632
> adenton@robbinsfirm.com
> Special Assistant Attorneys General

-2-

Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:   (678) 701-9381
Facsimile:   (404) 856-3250

*Attorneys for Defendant Robyn A. Crittenden,*
*Secretary of State of Georgia*

-3-

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing **DEFENDANT ROBIN A. CRITTENDEN'S JOINDER IN CONSOLIDATED MOTION TO DISMISS BY SPECIAL APPEARANCE AND BRIEF IN SUPPORT ON BEHALF OF DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS** on all parties by electronically filing it with the Clerk of the Court using the Odyssey eFileGA system, which will automatically send an email notification of such filing to counsel for the parties.

This 20th day of December, 2018.

*/s/ Alexander Denton*
Alexander Denton

Fax Return to 404·612·2659
Attn: Sgt. Sneed

SHERIFF'S ENTRY OF SERVICE

Civil Action No. 2018 CV 313418

Date Filed 11/23/18     Fulton County Superior Court

Record Id Stamp  91094

Attorney's Address

Bruce P. Brown
1123 Zonolite Rd. St. 6
Atlanta, GA 30306

***EFILED***DG
Date: 12/21/2018 11:13 AM
Cathelene Robinson, Clerk

Name and Address of Party to be Served

Gwinnett County Board of Registration &
C/o William Linkous          Elections
75 Langley Dr. Lawrenceville GA 30046
450 Grayson Highway   Lawrenceville, GA 300 46
455

SUPERIOR COURT

GEORGIA, FULTON COUNTY

Coalition for Good
Governance, et al
_____ Plaintiff

VS.

Robyn Crittenden
_____ Defendant

SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy
of the within action and summons.

_____

I have this day served the defendant _____ by leaving a copy
of the action and summons at this most place notorious place of abode in this county.

**NOTORIOUS** ☐

Delivered same into hands of _____ described as follows
age, about ____ years; weight, about ____ pounds; height about ___ feet and ___ inches, domiciled at the residence of the
defendant.

**CORPORATION** ☒

Served the defendant Gwinnett County Board of Registration + Elections a corporation
by leaving a copy of the with in action and summons with Lynn Ledford
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the
door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of the same
in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said
summons, with adequate postage affixed thereon continuing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____
not to be found in the jurisdiction of this court.

This ____13____ day of ___Dec_____ 20 18 .

_____ So 300
DEPUTY

SHERIFF DOCKET _____ PAGE _____

WHITE - CLERK; CANARY - PLAINTIFF; PINK - DEFENDANT

Page 214

Fulton County Superior Court
***EFILED***AC
Date: 12/21/2018 12:44 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

      Plaintiffs,

v.

ROBYN A. CRITTENDEN, Secretary of
State of Georgia, *et al.*,

      Defendants.

Civil Action No. 2018CV313418

## VERIFIED ANSWER AND DEFENSES OF DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS

### FIRST DEFENSE

The Petition fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Petition fails to name a necessary and indispensable party.

### THIRD DEFENSE

There were not sufficient illegal votes cast or legal votes rejected to cause the election

results to be placed in doubt or to change the outcome.

### FOURTH DEFENSE/ANSWER

Respondent Gwinnett County Board of Registrations and Elections ("Gwinnett

BORE") answers and responds to the allegations set forth in the numbered paragraphs of

the Petition as follows:

- 1 -

*Unnumbered Introduction*

The unnumbered Introduction to the Petition contains legal argument and a summary of Plaintiffs' claims and does not require a response. To the extent that any response is required, Defendant Gwinnett BORE denies that Plaintiffs are entitled to any relief.

1.

Defendant Gwinnett BORE admits that the general election for Lieutenant Governor for the State of Georgia was held on November 6, 2018, but denies the remaining allegations contained in Paragraph 1.

2.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 2 and further states that it was not "repeatedly and formally warned" of any of the issues outlined in Paragraph 2.

3.

Defendant Gwinnett BORE admits that the race for Lieutenant Governor received fewer votes than other races that were farther down the ballot, but denies the remaining allegations contained in Paragraph 3.

4.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 4 and further states that a number of reasonable explanations exist for the vote discrepancy in the Lieutenant Governor's race.

5.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 5, and for this reason, the allegations contained in Paragraph 5 are denied.

6.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 6, and for this reason, the allegations contained in Paragraph 6 are denied.

7.

Defendant Gwinnett BORE denies the allegations of Paragraph 7 and further states that the Coalition is not a proper party defendant under O.C.G.A. § 21-2-521.

8.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 8, and for this reason, the allegations contained in Paragraph 8 are denied.

9.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 9, and for this reason, the allegations contained in Paragraph 9 are denied.

10.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 10, and for this reason, the allegations contained in Paragraph 10 are denied.

- 3 -

11.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 11, and for this reason, the allegations contained in Paragraph 11 are denied.

12.

Defendant Gwinnett BORE admits that Robyn A. Crittenden is the Secretary of State of Georgia, that the Secretary's office operates the GEMS tabulation server and Election Night Reporting System, that the Secretary certifies election results, and that the Secretary is involved with the design and preparation of electronic ballots. Defendant Gwinnett BORE denies the remaining allegations of Paragraph 12.

13.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 13, and for this reason, the allegations contained in Paragraph 13 are denied.

14.

Defendant Gwinnett BORE admits that it is the election superintendent for Gwinnett County elections; that it conducted the November 6, 2018 general election, including the Lieutenant Governor's election, in Gwinnett County; and that other counties' election superintendents conducted the same election. Defendant Gwinnett BORE denies the remaining allegations of Paragraph 14.

- 4 -

15.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 15, and for this reason, the allegations contained in Paragraph 15 are denied.

16.

Paragraph 16 does not require a response, but to the extent a response is required, Defendant Gwinnett BORE states that the paragraph speaks for itself.

17.

Defendant Gwinnett BORE admits the allegations contained in Paragraph 17.

18.

Paragraph 18 contains legal argument that does not require a response. To the extent a response is required, Defendant Gwinnett BORE denies that jurisdiction and venue is proper in this Court because it is where Defendant Crittenden resides, because Defendant Crittenden is not a proper party to an election contest. Defendant Gwinnett BORE admits that Fulton County is an allowable venue for a statewide election contest under the statute, but denies that jurisdiction is proper in this Court and further denies that it is a proper party for the non-election-contest counts of Plaintiffs' Petition. Defendant Gwinnett BORE denies the remaining allegations of Paragraph 18.

19.

Paragraph 19 contains legal argument that does not require a response. To the extent a response is required, Defendant Gwinnett BORE admits that the case was filed within the five-day limitation period provided by statute and that the Secretary of State certified the statewide results on November 17, 2018. Defendant Gwinnett BORE denies that the

- 5 -

Petition was timely filed because it did not name all required parties within the statute of limitations and denies any remaining allegations contained in Paragraph 19.

20.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 20, and for this reason, the allegations contained in Paragraph 20 are denied.

21.

Defendant Gwinnett BORE admits that it used the Diebold AccuVote DRE touchscreen units for in-person voting, Diebold optical scan-machines for absentee and provisional ballots, and GEMS software for tabulation and reporting of results for the November 6, 2018 election. Defendant Gwinnett BORE denies that the electronic poll book components "interface" with the DRE machines but admits that it used ExpressPoll units for poll book functions. Defendant Gwinnett BORE denies the remaining allegations of Paragraph 21.

22.

Defendant Gwinnett BORE admits that the DREs use memory cards and store information regarding voters' actions to memory cards and internal memory. Defendant Gwinnett BORE denies the remaining allegations of Paragraph 22.

23.

Defendant Gwinnett BORE admits that the DREs run a version of Microsoft Windows CE, but is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 23, and for this reason, the allegations contained in Paragraph 23 are denied.

- 6 -

24.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 24 and footnotes 1 and 2, and for this reason, the allegations contained in Paragraph 24 and footnotes 1 and 2 are denied.

25.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 25 and footnote 3, and for this reason, the allegations contained in Paragraph 25 and footnote 3 are denied.

26.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 26 and footnotes 4-9, and for this reason, the allegations contained in Paragraph 26 and footnotes 4-9 are denied.

27.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 27, and for this reason, the allegations contained in Paragraph 27 are denied.

28.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 28, and for this reason, the allegations contained in Paragraph 28 are denied.

- 7 -

29.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 29, and for this reason, the allegations contained in Paragraph 29 are denied.

30.

Defendant Gwinnett BORE admits that the Secretary of State contracted with Kennesaw State University for a period of time and that the functions previously carried out by KSU are now housed in the Secretary's office. Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 30, and for this reason, the remaining allegations contained in Paragraph 30 are denied.

31.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 31, and for this reason, the allegations contained in Paragraph 31 are denied.

32.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 32, and for this reason, the allegations contained in Paragraph 32 are denied.

33.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 33, and for this reason, the allegations contained in Paragraph 33 are denied.

34.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 34, and for this reason, the allegations contained in Paragraph 34 are denied. Defendant Gwinnett BORE further states that the quoted order speaks for itself.

35.

Defendant Gwinnett BORE denies that it acted recklessly in using the DRE election system in the 2018 general election. Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 35, and for this reason, the remaining allegations contained in Paragraph 35 are denied.

36.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 36, and for this reason, the allegations contained in Paragraph 36 are denied.

37.

In response to Paragraph 37, Defendant Gwinnett BORE states that the quoted order speaks for itself. Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 37, and for this reason, the remaining allegations contained in Paragraph 37 are denied.

38.

Defendant Gwinnett BORE admits that voters reported problems during the November 6, 2018 election but denies that those problems resulted in voter

- 9 -

disenfranchisement. Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 38, and for this reason, the remaining allegations contained in Paragraph 38 are denied.

<div align="center">39.</div>

Paragraph 39 is introductory language that does not require a response. To the extent a response is required, Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 39, including what "campaigns, non-profit voter protection groups, and the press" that it covers, and for this reason, the allegations contained in Paragraph 39 are denied. Defendant Gwinnett BORE further states that none of the alleged irregularities in the following paragraphs occurred in Gwinnett County.

<div align="center">40.</div>

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 40, and for this reason, the allegations contained in Paragraph 40 are denied.

<div align="center">41.</div>

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 41, and for this reason, the allegations contained in Paragraph 41 are denied.

<div align="center">42.</div>

Defendant Gwinnett BORE admits that Karen Handel was the Republican candidate in Congressional District 6 in the November 6, 2018 general election. Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations

<div align="center">- 10 -</div>

contained in Paragraph 42, and for this reason, the allegations contained in Paragraph 42 are denied.

43.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 43, and for this reason, the allegations contained in Paragraph 43 are denied.

44.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 44, and for this reason, the allegations contained in Paragraph 44 are denied.

45.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 45, and for this reason, the allegations contained in Paragraph 45 are denied.

46.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 46, and for this reason, the allegations contained in Paragraph 46 are denied.

47.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 47, and for this reason, the allegations contained in Paragraph 47 are denied.

48.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 48, and for this reason, the allegations contained in Paragraph 48 are denied.

49.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the allegations contained in Paragraph 49, and for this reason, the allegations contained in Paragraph 49 are denied. Defendant Gwinnett BORE further states that there are a number of possible explanations for the lower vote total in the Lieutenant Governor's race.

50.

Defendant Gwinnett BORE admits that the Lieutenant Governor is the second-highest state official and that the Lieutenant Governor is also the President of the State Senate. Defendant Gwinnett BORE is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 50, and for this reason, the allegations contained in Paragraph 50 are denied.

51.

Defendant Gwinnett BORE admits that the reported vote totals show that there were less total votes cast for Lieutenant Governor than for other statewide races, but is without knowledge or information sufficient to form a response to the remaining allegations contained in Paragraph 51, and for this reason, the remaining allegations contained in Paragraph 51 are denied.

- 12 -

52.

Defendant Gwinnett BORE admits that the reported vote totals show there were less

total votes cast for Lieutenant Governor than for other statewide races, but is without

knowledge or information sufficient to form a response to the percentages and remaining

allegations contained in Paragraph 52, and for this reason, the remaining allegations

contained in Paragraph 52 are denied.

53.

Defendant Gwinnett BORE admits that the reported vote totals show there were less

total votes cast for Lieutenant Governor than for other statewide races, but is without

knowledge or information sufficient to form a response to the remaining allegations

contained in Paragraph 53, and for this reason, the allegations contained in Paragraph 53

are denied. Defendant Gwinnett BORE further states that there are a number of possible

explanations for the lower vote total in the Lieutenant Governor's race.

54.

Defendant Gwinnett BORE is without knowledge or information sufficient to form a

response to the allegations contained in Paragraph 54, and for this reason, the allegations

contained in Paragraph 54 are denied. Defendant Gwinnett BORE further states that there

are a number of possible explanations for the lower vote total in the Lieutenant Governor's

race.

55.

In response to Paragraph 55, Defendant Gwinnett BORE states that the letter from

Ms. Amico to Secretary Crittenden speaks for itself. Defendant Gwinnett BORE is without

knowledge or information sufficient to form a response to the remaining allegations

- 13 -

contained in Paragraph 55, and for this reason, the remaining allegations contained in

Paragraph 55 are denied. Defendant Gwinnett BORE further states that there are a number

of possible explanations for the lower vote total in the Lieutenant Governor's race.

56.

In response to Paragraph 56, Defendant Gwinnett BORE states that the letter from

Secretary Crittenden to Ms. Amico speaks for itself. Defendant Gwinnett BORE is without

knowledge or information sufficient to form a response to the remaining allegations

contained in Paragraph 55, and for this reason, the remaining allegations contained in

Paragraph 55 are denied. Defendant Gwinnett BORE further states that there are a number

of possible explanations for the lower vote total in the Lieutenant Governor's race.

57.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 57.

58.

Paragraph 58 contains legal conclusions that do not require a response.

59.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 59.

60.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 60.

61.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 61.

62.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 62.

63.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 63.

64.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 64.

65.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 65.

66.

Paragraph 66 contains legal conclusions that do not require a response.

67.

Paragraph 67 contains legal argument that does not require a response. Defendant Gwinnett BORE states that the right to vote is a fundamental right of all citizens.

68.

Paragraph 68 contains legal argument that does not require a response. Defendant Gwinnett BORE states that accurately counting votes is a critical part of democracy.

69.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 69.

70.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 70.

71.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 71.

72.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 72.

- 15 -

73.

Paragraph 73 contains legal conclusions that do not require a response.

74.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 74. Defendant Gwinnett BORE further states that hand-marked ballots do not necessarily provide clear and determinable records of voter intent.

75.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 75.

76.

Defendant Gwinnett BORE denies the allegations contained in Paragraph 76.

*Response to Prayer for Relief*

Defendant Gwinnett BORE denies each numbered paragraph of the Prayer for Relief and denies that Plaintiffs are entitled to any relief.

All other allegations contained in the Petition that are not specifically responded to in this document are denied.

WHEREFORE, Defendant Gwinnett BORE requests:

(a) That the Petition be dismissed entirely or that Defendant Gwinnett BORE be dismissed as a party;

(b) That all relief sought by Plaintiffs be denied;

(c) That judgment be issued in Defendant Gwinnett BORE's favor;

(d) That attorneys' fees and costs be assessed against Plaintiffs;

(e) That the Petition be dismissed for lack of jurisdiction; and

(f) Any other further relief as this Court deems just and proper.

- 16 -

This 21st day of December, 2018.

/s/ Bryan P. Tyson
Frank B. Strickland
Georgia Bar No. 687600
fbs@sbllaw.net
Bryan P. Tyson
Georgia Bar No. 515411
bpt@sbllaw.net
Anne W. Lewis
Georgia Bar No. 737490
awl@sbllaw.net
STRICKLAND BROCKINGTON
   LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
(678) 347-2200

Richard A. Carothers
Georgia Bar No. 111075
richard.carothers@carmitch.com
Brian R. Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA 30518
(770) 932-3552

*Attorneys for the Gwinnett County Board of
Registrations and Elections*

- 17 -

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

     Plaintiffs,

v.

ROBYN A. CRITTENDEN, Secretary of
State of Georgia, *et al.*,

     Defendants.

Civil Action No. 2018CV313418

## VERIFICATION

Personally appeared before the undersigned officer duly authorized to administer

oaths, LYNN LEDFORD, who having first been duly sworn, deposes and says that the

VERIFIED ANSWER AND DEFENSES OF DEFENDANT GWINNETT COUNTY

BOARD OF REGISTRATIONS AND ELECTIONS, filed in the Superior Court of Fulton

County, was prepared with the assistance and advice of counsel, and that the facts

contained therein are true and correct to the best of my knowledge, information, and belief.

This 21st day of December, 2018.

                                                  LYNN LEDFORD

Sworn to and subscribed
before me this 21ˢᵗ day of December, 2018.

NOTARY PUBLIC
My commission expires

Page 232

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

     Plaintiffs,

v.

ROBYN A. CRITTENDEN, Secretary of
State of Georgia, *et al.*,

     Defendants.

Civil Action No. 2018CV313418

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing VERIFIED

ANSWER AND DEFENSES OF DEFENDANT GWINNETT COUNTY BOARD OF

REGISTRATIONS AND ELECTIONS with the Clerk of Court using the Odyssey E-Filing

system which will provide automatic notification of such filing to all counsel of record.

This 21st day of December, 2018.

                         /s/ Bryan P. Tyson
                         Bryan P. Tyson
                         Georgia Bar No. 515411

- 19 -

Fulton County Superior Court
***EFILED***LW
Date: 12/21/2018 4:09 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, and JEANNE DUFORT, **Plaintiffs,** v. ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, **Defendants.** | Civil Action No.: 2018CV313418 |

## ANSWER OF DEFENDANT GEOFF DUNCAN TO PETITION TO CONTEST ELECTION RESULT

NOW COMES the Defendant, Geoff Duncan, in response to Plaintiffs' Petition to Contest Election Result by showing the following:

### First Defense

The Plaintiffs' Petition fails to state a claim upon which relief may be granted against this Defendant.

### Second Defense

The Plaintiffs' Petition should be dismissed for failure to join necessary parties.

<u>Third Defense</u>

The Plaintiffs' Petition should be dismissed because of their failure to timely file suit against all necessary parties as required under Georgia law.

<u>Fourth Defense</u>

The Plaintiffs' Petition should be dismissed because of Plaintiffs' Coalition for Good Governance ("Coalition") lack of standing to bring this action under Georgia law.

<u>Fifth Defense</u>

The Plaintiffs' Petition should be dismissed because Plaintiffs have failed To sufficiently allege a due process claim.

<u>Sixth Defense</u>

The Plaintiffs' Petition should be dismissed because the Eleventh Amendment bars Plaintiffs' federal claims.

<u>Seventh Defense</u>

The Plaintiffs' Petition should be dismissed because Plaintiffs Have Failed To Sufficiently allege a due process claim.

<u>Eighth Defense</u>

This Defendant now responds to the specific allegations contained in Plaintiffs' Petition by showing the following:

## INTRODUCTION AND SUMMARY

### 1 - 4.

This Defendant denies the allegations contained in paragraphs 1, 2, 3, and 4 of Plaintiffs' Petition.

## PARTIES

### 5.

In response to paragraph 5 of Plaintiffs' Petition, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 5 of Plaintiffs' Petition regarding the status of the Plaintiffs' Coalition for Good Governance and the Membership of said Plaintiffs. Moreover, this Defendant affirmatively denies that the Coalition is a proper party to this action.

### 6.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 6 of Plaintiffs' Petition regarding the purpose of the Coalition. This Defendant affirmatively denies that the Coalition is a proper party to this action.

### 7.

This Defendant denies the allegation contained in paragraph 7 of Plaintiffs' Petition.

### 8 - 11.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraphs 8, 9, 10, and 11 of Plaintiffs' Petition.

### 12.

In response to paragraph 12 of Plaintiffs' Petition, this Defendant admits that the Defendant, Robyn A. Crittenden, is the Secretary of State of Georgia. This

Defendant is without knowledge of information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 12 of Plaintiffs' Petition.

<div align="center">13 - 15.</div>

In response to paragraphs 13, 14, and 15 of Plaintiffs' Petition, Fulton, Gwinnett and DeKalb County Boards of Registration and Elections are the Superintendent of for the respective contested county elections. This Defendant is without knowledge of information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 13, 14, and 15.

<div align="center">16.</div>

Paragraph 16 does not require a response from this Defendant.

<div align="center">17.</div>

In response to paragraph 17 of Plaintiffs' Petition, this Defendant admits that his rightful election as Lieutenant Governor of the State of Georgia has been certified by the Georgia Secretary of State after having received over 123,000 votes more than his opponent in the General Election on November 6, 2018. The Plaintiffs' Petition is intended to contest this election but this Defendant denies there is a legal or factual basis for such a contest.

<div align="center">**JURISDICTION and VENUE**</div>

<div align="center">18.</div>

This Defendant admits the allegation contained in paragraph 18 of Plaintiffs' Petition regarding the allegation that the Fulton Superior Court has venue to hear this action. However, this Defendant affirmatively denies that Plaintiffs have standing to bring this action due to the Coalition not being a proper party to bring

this action and the Plaintiffs' failure to add all necessary parties within the time period required under Georgia law.  Therefore, the Court lacks jurisdiction to hear this case as a matter of law.

19.

This Defendant denies the allegation contained in paragraph 19 of Plaintiffs' Petition because Plaintiffs failed to join all necessary parties within the time period prescribed by Georgia law.

20.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraphs 20 of Plaintiffs' Petition.

## FACTUAL BACKGROUND

### Georgia's DRE Electronic Voting System

21 - 35.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraphs 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 of Plaintiffs' Petition.  However, this Defendant affirmatively denies any and all allegations that any alleged defects in the Georgia Voting System were sufficient to place in doubt the result of the election in question under Georgia law.

### Irregularities in the 2018 Election

36 - 48.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraphs 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, and 48 of Plaintiffs' Petition. However, this Defendant affirmatively denies that any alleged irregularities were sufficient to place into doubt the result of the election in question under Georgia law.

### Anomalous Undervote in the Lieutenant Governor's Election

49.

This Defendant denies the allegation contained in paragraph 49 of Plaintiffs' Petition.

50.

In response to paragraph 50 of Plaintiffs' Petition, this Defendants admits that the Lieutenant Governor is the 2nd highest ranking official in Georgia and that he or she holds the particular coveted position as President of the State Senate. This Defendant further admits that the election in question was hotly contested. Furthermore, while this Defendant believes that this election was of keen interest to many Georgia voters, this Defendant is without knowledge of information sufficient to form a belief as to why a particular individual voter chose to either skip voting in this or any other election contest or chose to cast an unrecorded write-in vote; however, such actions do occur on a regular basis in American elections in general and in Georgia elections in particular. Therefore, the mere existence of alleged "undervotes" in an election does not create a presumption of election irregularities, misconduct by any party, or malfunction by any devices used to record or count votes.

51.

This Defendant denies the allegation contained in paragraph 51 of Plaintiffs' Petition as stated.  Voters in Georgia may either choose to vote for candidates for particular races on a ballot, choose to vote instead for an unrecorded write-in candidate, or choose to not vote in one or more races on a ballot.  Therefore, the mere existence of alleged "undervotes" in an election does not create a presumption of election irregularities, misconduct by any party, or malfunction by any devices used to record or count votes.

52.

In response to paragraph 52 of Plaintiffs' Petition, this Defendant admits that fewer votes were cast for the two listed candidates on the ballot in the race for Lieutenant Governor than in the race for Governor but, in so doing so, denies any inference that such alleged "undervotes" were the result of negligent or nefarious activities. Therefore, the mere existence of alleged "undervotes" in an election does not create a presumption of election irregularities, misconduct by any party, or malfunction by any devices used to record or count votes.

53.

In response to paragraph 53 of Plaintiffs' Petition, this Defendant admits that fewer votes were cast for the two listed candidates on the ballot in the race for Lieutenant Governor than in the race for Governor but, in so doing so, denies any inference that such alleged "undervotes" were the result of negligent or nefarious activities. Therefore, the mere existence of alleged "undervotes" in an election does

not create a presumption of election irregularities, misconduct by any party, or malfunction by any devices used to record or count votes.

### 54.

In response to paragraph 54 of Plaintiffs' Petition, this Defendant admits that fewer votes were cast for the two listed candidates on the ballot in the race for Lieutenant Governor than in the race for Governor but, in so doing so, denies any inference that such alleged "undervotes" were the result of negligent or nefarious activities. Therefore, the mere existence of alleged "undervotes" in an election does not create a presumption of election irregularities, misconduct by any party, or malfunction by any devices used to record or count votes.

### 55.

In response to paragraph 55 of Plaintiffs' Petition, this Defendant is without knowledge of information sufficient to form a belief as to the truth of the averments contained in Ms. Amico's letter to the Georgia Secretary of State except for the following admission by Ms. Amico: "The number of residual votes in the Lieutenant Governor's race is unlikely to affect the outcome of my race ..."

### 56.

In response to paragraph 56 of Plaintiffs' Petition, this Defendant states that the letter of Secretary Crittenden speaks for itself.

### 57.

This Defendant denies the allegation contained in paragraph 57 of Plaintiffs' Petition.

## COUNT I: ELECTION CONTEST

### 58.

This Defendant incorporates herein by reference his previous response to paragraphs 1 through 57 of Plaintiffs' Petition.

### 59 - 65.

This Defendant denies that the allegations contained in paragraphs 59, 60, 61, 62, 63, 64, and 65 of Plaintiffs' Petition.

## COUNT II:
## FUNDAMENTAL RIGHT TO VOTE
## 42 U.S.C. § 1983

### 66.

This Defendant incorporates herein by reference this previous response to paragraphs 1 through 65 of Plaintiffs' Petition.

### 67 and 68.

This Defendant admits the allegation contained in paragraphs 67 and 68 of Plaintiffs' Petition.

### 69 - 72.

The Defendant denies the allegations contained in paragraphs 69, 70, 71, and 72 of Plaintiffs' Petition. This Defendant further affirmatively states that no alleged irregularities in the election were sufficient to place into doubt result of the election in question under Georgia law.

## COUNT III:  EQUAL PROTECTION
### 42 U.S.C. § 1983

### 73.

Defendant incorporates herein by reference his previous responses in paragraphs 1 through 72 of Plaintiffs' Petition.

### 74 - 76.

This Defendant denies the allegation contained in paragraphs 74, 75, and 76 of Plaintiffs' Petition.  This Defendant further affirmatively states that no alleged irregularities in the election in question were sufficient to place into doubt the result of the election in question under Georgia law.

### Ninth Defense

Any and all allegations contained in Plaintiffs' Petition which are not specifically responded to herein are hereby denied.

### RESPONSE TO PLAINTIFFS PRAYER FOR RELIEF

This Defendant denies any and all allegations contained in Plaintiffs' Prayer for Relief.

### COUNTERCLAIM OF DEFENDANT GEOFF DUNCAN FOR COST, ATTORNEYS FEES,  AND EXPENSES AGAINST THE PLAINTIFFS

NOW COMES the Defendant, Geoff Duncan, and asserts the following Counterclaim as permitted under Georgia law:

<div align="center">1.</div>

The Court has jurisdiction and venue over Defendant Geoff Duncan's Counterclaim by virtue of the Petition filed by the Plaintiffs in this matter.

<div align="center">2.</div>

Defendant Geoff Duncan is entitled to cost against the Plaintiffs under O.C.G.A. § 21-2-529 due to the lack of merit of Plaintiffs' Petition.

<div align="center">3.</div>

Defendant Geoff Duncan is entitled to the award of attorneys' fees and expenses against the Plaintiffs under O.C.G.A. § 9-15-14 due to the complete absence in this case of any justiciable issue of law or fact, so that it could not be reasonably believed that a court would accept the asserted claims of the Plaintiffs.

WHEREFORE, the Defendant Geoff Duncan prays that the Plaintiffs' Petition be dismissed and that his Counterclaim for cost and reasonable attorneys' fees and expenses be granted by the Court.

DENTONS US LLP

Edward H. Lindsey Jr.
Georgia Bar No. 453075
Samuel S. Olens
Georgia Bar No. 551540

<div align="center">Page 11 of 12</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing ANSWER OF DEFENDANT GEOFF DUNCAN

TO PETITION TO CONTEST ELECTION RESULT has been served upon all

interested parties by electronically filing with the Clerk of the Court using the

Odyssey eFileGA System, which will automatically send an e mail notification of

such filing to counsel for the parties.

This 21st day of December, 2018.

Fulton County Superior Court
***EFILED***AC
Date: 12/21/2018 2:37 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

                    **Plaintiffs,**

      **v.**

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

                  **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV31348**

### PLAINTIFFS' MOTION FOR PRESERVATION OF SPECIFIC
### ELECTRONIC ELECTION RECORDS
### IN GORDON AND MURRAY COUNTIES

Pursuant to the Court's Preservation Order entered December 7, 2018, Plaintiffs hereby move the Court to order that specific electronic records be preserved intact and that certain DRE units not be used in the upcoming January 8, 2019 special election in Gordon and Murray counties to fill the vacancy in House District 5.   Specifically, Plaintiffs move the Court to Order the Secretary to *not use* any DRE machines which are Voting System Evidence, as that term is defined in the Preservation Order, in the upcoming January 8, 2019 special election or any other upcoming election until further Order of the Court.

1

## DISCUSSION

In the Court's December 7, 2018 Preservation Order, the Court first directed all parties to preserve the "Voting System Evidence," which was broadly defined to include all Direct Electronic Recording ("DRE") touchscreen voting units, DRE internal memory, memory cards and a number of other categories and types of electronic equipment.   At the conclusion of the Preservation Order, the Court stated:

> At this time all Motions in this case are set for hearing on January 9th 2019.  Should there be any election due to be conducted prior to that date the parties shall notify the Court and the Court will entertain appropriate motions in regard there to.

Preservation Order, December 7, 2018, page 2.

Later on December 7, 2018, counsel for the Secretary of State informed the Court and the parties that there would be a special election on December 18, 2018 in Bartow and Floyd counties, and another on January 8, 2019 in Gordon and Murray Counties.  (See December 7, 2018 Email from V. Russo, attached as Exhibit 1).  The Secretary did not file a Motion seeking an exception to the Preservation Order to use protected Voting System Evidence. Instead the Secretary instructed the counties to update the DRE machines with new election programming.   It is the Secretary's position that updating and reprogramming the DREs and repeatedly

2

modifying the Voting System Evidence does not alter the electronic evidence.

Plaintiffs file this Motion because the Secretary's position – that updating, reprogramming, and re-using the Voting System Evidence in new elections does not alter any evidence – is manifestly incorrect, and her actions are leading to alteration of material evidence.   Plaintiffs refer again to the Declaration of Richard A. DeMillo, the Charlotte B. and Roger C. Warren Chair of Computer Science at Georgia Tech and former Chief Technology Officer for Hewlett-Packard, attached hereto as Exhibit 2.  In Paragraphs 22 and  23 of his Declaration, Professor DeMillo explains why the DRE equipment must be taken out of service so that the internal memory in the equipment can be preserved, and how using the equipment in a new election threatens to alter the electronic data.

Plaintiffs have repeatedly made the Secretary aware of Professor DeMillo's analysis.  The Secretary has not refuted Professor DeMillo's analysis, provided contrary expert analysis, or even explained the technical basis for her opinion.  Plaintiffs also suggested that the parties conduct a joint test to resolve this dispute by having experts compare the internal memory of a unit that had been used in the November 2018 general election *and* the December 2018 run off election with a unit that had been last used in

3

the November 2018 general election. The Secretary did not respond to this offer.

The Secretary has forced Plaintiffs to file this Motion.  The Secretary has failed to preserve material evidence as the Preservation Order requires. The Secretary insists on continuing to use and alter Voting System Evidence, even though the Secretary does not need to use those DRE machines to conduct these relatively small elections, and refuses either to substantiate her claim that she is not spoliating evidence or submit her position to an objective test.

Plaintiffs understand and appreciate that this Court will be hearing Plaintiffs' Emergency Motion for Inspection at the hearing on January 9, 2019, but the upcoming election will be held the day before, on January 8. Programming of such equipment is likely occurring now.

Given the compelling need for an inspection of the malfunctioning or mis-programmed electronic election equipment, and the numerous alternatives for conducting upcoming elections without requiring such DRE machines, the requested relief is reasonable and appropriate.

However, at a bare minimum, the Secretary should be ordered to not use the DRE machines that were used in the following precincts in Gordon and Murray Counties that have reported anomalous results and therefore should be subjected to forensic analysis before they are used again.  By suggesting this alternative,

4

Plaintiffs do not waive their position that the use of other machines in other precincts constitutes the destruction of evidence in violation of this Court's Preservation Order.   The precincts are the following:

Murray County:

Southwest
McDonald
Shuck Pen
North

Gordon County:

Sugar Valley
Plainville
Gordon Country Office
Oostanaula

Respectfully submitted this 21st day of December, 2018

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

5

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 21st day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown

6

EXHIBIT

1

| **Subject:** | RE: Proposed Preservation Order; Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 [IWOV-imanage.FID780744] |
|---|---|
| **Date:** | Friday, December 7, 2018 at 3:11:26 PM Eastern Standard Time |
| **From:** | Vincent Russo |
| **To:** | Adele Grubbs, DWare@hallboothsmith.com |
| **CC:** | Bruce Brown, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, edward.lindsey@dentons.com, vernstes@dekalbcountyga.gov, Patrise.Perkins-Hooker@fultoncountyga.gov, Cheryl.Ringer@fultoncountyga.gov, bdbryan@dekalbcountyga.gov, chall@lmjc.net, Alexander Denton, Josh Belinfante, Brian Lake, ccorreia@law.ga.gov, RBritt@hallboothsmith.com, PCunningham@hallboothsmith.com, lkjohnson@dekalbcountyga.gov |
| **Attachments:** | image001.jpg, Call for HD14 Special Republican Primary Election.pdf, Call for Special Election (HD5).pdf |

Judge Grubbs:

On behalf of Secretary Crittenden, and in accordance with your Preservation Order entered earlier today, I want to notify you of two special elections scheduled prior to the January 9, 2018 hearing.  None of the election superintendents responsible for administering these special elections is a party to Plaintiffs' election contest.

First, a special election is set for December 18, 2018 in Bartow and Floyd counties to fill the vacancy in House District 14 due to Rep. Christian Coomer's appointment to the Georgia Court of Appeals.

Second, a special election is set for January 8, 2019 in Gordon and Murray counties to fill the vacancy in House District 5 due to the passing of Representative John Meadows.

I have attached the calls for the upcoming special elections for your reference.

Sincerely,

Vincent Russo

# ROBBINS
Vincent R. Russo
Member
**ROBBINS ♦ ROSS ♦ ALLOY ♦ BELINFANTE ♦ LITTLEFIELD LLC**
500 14th Street, NW
Atlanta, GA 30318
404.856.3260 (Direct)
678.701.9381 (Main)
404.856.3250 (Fax)

www.robbinsfirm.com

**From:** Adele Grubbs [mailto:adele.grubbs@gmail.com]
**Sent:** Friday, December 07, 2018 11:32 AM

**Page 1 of 6**

EXHIBIT

2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br><br>  Plaintiffs, v.<br><br>BRIAN KEMP, ET AL.,<br><br>  Defendants. | Civil Action No.<br><br>1:17-CV-2989-AT |

## DECLARATION OF RICHARD A. DeMILLO

RICHARD A. DeMILLO ("Declarant") hereby declares as follows:

1. I am a registered voter in Fulton County Georgia. I am deeply interested in the proper functioning of the Georgia's voting system from both a personal and professional perspective.

2. I am not a retained expert by any party to this action, but in the desire to aid the Court in the evaluation of technical assertions, I wish to voluntarily offer my opinion on the particular topic of the essential requirements of preservation of electronic records of the DRE voting system including the electronic pollbooks.

1

3. I am currently the Charlotte B. and Roger C. Warren Chair of Computer Science at Georgia Tech. I have served as Dean of the College of Computing at Georgia Tech and Director of the Georgia Tech Center for Information Security. I have also served as the Chief Technology Officer for Hewlett-Packard, Vice President and General Manager of Computing and Information Research at Bell Communications Research, Director of the Computer and Communications Research Division at the National Science Foundation, and Director of the Software Test and Evaluation Project for the U.S. Department of Defense.

4. In all these appointments, my primary technology focus has been information, communication, cyber security, and computer system testing. I have taught both graduate and undergraduate courses in cyber security, supervised PhD dissertations and conducted peer-reviewed research leading to books, journal articles, patents, and invited addresses, all related to the topic of cyber threats to computer systems. I have served on editorial boards for major journals, chaired program committees for cybersecurity symposia and conferences, and served on government advisory boards and panels. I have been an officer, director, and board member for various public and private corporations in the cyber security industry.

2

5. I have conducted research and taught courses related to voting system and election security since 2002. I have served as an official observer of foreign electronic voting systems for the Carter Center and participated in the writing of Carter Center guidelines for using electronic voting machines. I serve on the advisory boards of Verified Voting and the Open Software Election Technology Institute.

6. My qualifications and experience are described further in my August 20, 2018 Declaration in this case, Doc. 277 at 52 et seq.

7. I have reviewed the Court's order in this case, as well as the Court's Order in Common Cause Georgia v. Kemp (18-cv-5102).

8. I am familiar with Georgia's Diebold DRE voting system, its design, the body of academic literature compiled on the system in the last ten years, and its operation as it is deployed in the polling places in Georgia.

9. I own both Diebold TSx and TS voting machines which I have examined and used to conduct certain experiments related to DRE system security.

10. I have observed the operation of Diebold DRE systems in polling places in multiple Georgia counties over the course of multiple elections and in county election offices where the system was being programmed and tested. I have observed the testing procedures conducted prior to machine deployment to the polling places.

3

11. I observed the operation of the ExpressPollbooks (electronic pollbooks) as well as the DRE machines in my role as a statewide pollwatcher during the November 6, 2018 election.

12. During my pollwatching activities, I had occasion to speak with voters, election workers, and cybersecurity experts, and to consult various reports. Credible information thus obtained was consistent with the existence of failures and malfunctions of both Diebold ExpressPollbooks operations and DRE voting machines during the November 6, 2018 election.

13. Also, during my pollwatching activities on November 6, 2018, I became aware that certain sites in Gwinnett County were experiencing significant delays in voting and that those delays may have been attributable to malfunctioning Diebold ExpressPollbooks.

14. On the afternoon of November 6, I conferred with nationally recognized Diebold voting systems expert Harri Hursti and cyber security researcher Logan Lamb. This conversation took place a few minutes after Hursti and Lamb completed a review of technical information on site in Anistown Precinct in Gwinnett County, where four-hour voting delays were being attributed to malfunctioning ExpressPollbooks. I visited the Anistown Precinct a few hours after the malfunction had reportedly occurred and

4

observed the operations at the polling place before visiting other polling locations.

15. I am aware of Election Rule 183-1-12-.02 (6)(d) stating that:

> *"The election results, ballot styles, ballot images, and other information for each election stored in the internal memory storage of each DRE unit shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election."*

16. One purpose for the requirement for maintaining the information described in Rule (183-1-12-.02(6)(d)) is to make possible forensic analysis in the event of election tampering, system compromise, or system malfunction. This is particularly significant in Georgia because Georgia elections do not create or maintain paper audit trail that can be reviewed as a record of voter intent. Lacking an independent way to judge voter intent, experts need access to the detailed digital records known as footprints (citation: https://www.nytimes.com/2000/03/09/technology/computer-forensics-teams-learn-to-follow-digital-footprints.html )

5

17. The information thus required is not merely a copy of the cast vote records on the machine or ballot images or audit logs, all of which are subject to accidental or malicious corruption, manipulation or destruction during a cyber-attack, system compromise, or system failure, but for all electronic information stored in internal memory. (citation: S. Garfinkel et al, "Practical Unix and Internet Security, 3rd Edition," O'Reilley Publishing, 2003, pp 677+).

18. Furthermore, merely saving the related memory cards is an inadequate response to this requirement since the very act of copying information from internal memories to memory cards is carried out by software that must be presumed to be untrustworthy in the event of system failure or compromise. (citation: https://www.ncsc.gov.uk/content/files/protected_files/guidance_files/comm on_cyber_attacks_ncsc.pdf ) (citation: National Institute of Standards and Technology, Guidelines on PDA Forensics, Special Publication 800-72, November 2004) Additionally, memory cards contain only selected data intended for reporting, not all the operating information on in the DRE internal memory needed for forensic review.

19. Preserving the electronic data in the internal memory of the DRE requires that no new election data be written onto the hard drive of DRE machines,

6

no further use after the close of the election, including recounts, and that the DRE machines thus preserved be strictly physically secured and not deployed to polling places (see Paragraphs 22 and 23 below).

20. The Election Rule appears to recognize that it is critical that the electronic data in the internal memory of the DRE be preserved for a substantial time in order to permit time for systemic and isolated problems to surface.

21. Therefore, a consequence of Paragraph 19 and the one-month preservation rule is the required availability and use of either alternative DRE machines or paper ballots for elections falling shortly after an election.

22. Preservation of machines identified for analysis is required for this analysis, and therefore all such machines should be removed from service and placed in a secure storage facility, where adequate access and physical safeguards can be implemented to deter tampering. Defendants have represented in prior public statements that election officers already implement secure physical custody. I disagree with this assessment based on well-documented instances in which unattended DREs are easily accessible by persons without authorization or supervision. Defendants have also represented in prior public statements that tamper-evident seals prevent unauthorized access. I disagree with this assessment based on well-known and widely distributed videos that demonstrate how to undetectably defeat

7

such seals. I have personally observed persons with little or no prior training using shims cut from soft drink cans to defeat the tamper evident seals used in Georgia's elections.

23. Defendants have represented in prior public statements that removal from service is not necessary since data from prior elections cannot be erased, overwritten, or otherwise lost when a new election is carried out. I am unaware of any technical means that would support such a claim. The Windows CE operating system, on which the Diebold Ballot Station software runs, contains only rudimentary memory management and is prone to a phenomenon called memory fragmentation wherein memory locations are not allocated in contiguous blocks but rather are allocated in blocks that are dispersed throughout physical memory. Because Windows CE has no built-in features for signaling to an application that a candidate block of storage has previously been allocated, application software that needs to maintain intact memory from prior elections must carry out the necessary checks. Because Diebold BallotStation software is proprietary and held as a trade secret, it is unavailable for third party evaluation. I have examined various public disclosures that describe the design and coding of BallotStation software. I have not found evidence of such software safeguards in the Diebold BallotStation software.

8

24. Selection of machines for forensic review during discovery will be done by an algorithm for which section parameters are not yet known and cannot be known until a preliminary analysis has been carried out. For example, one such parameter might be: machines where the polling place manual recap sheet of ballots cast shows a different number than the DRE reported total of ballots cast.

25. All DRE machine electronic data must be preserved. Random sampling of DRE machines for preservation is not sufficient for safe-guarding of electronic evidence required to be used in discovery. Deliberate and time-consuming analysis must first be conducted to determine which DRE machines have exhibited attributes that indicate potential malfunction or have been exposed to greater risk of compromise than others. Randomly sampling the DREs is not a mathematically acceptable way of conducting this analysis. Random sampling assumes an underlying probability distribution for the attributes being tested. A random sample for example might be constructed assuming that defects are uniformly distributed among the DREs. That assumption is untenable since the machines of interest may be associated with certain races, ballots choices, racial distribution, root cause of failure/compromise, geography, population density, number of ballots cast on a machine, voter complaints, anomalous results, or other

9

attributes that are not uniformly distributed throughout the voting population.

26. Therefore, no statistically valid conclusion can be drawn from a random sample. In addition, statistical tools which might be used to approximate sampling distributions are not applicable in this case, either because the attributes of interest are not statistically independent, or because the software is able to modify its own behavior when it is being tested (as was demonstrated in the Volkswagen emissions testing scandal of 2015 when the US Environmental Protection Agency discovered that on-board software had been programed to sense with an automobile was being tested and deliver results that did not reflect emissions control impact on vehicle performance. (citation: EPA Notice of Violation September 15, 2015)).

27. Individual imaging of DRE internal memory is technically possible and has been publicly suggested as a way of avoiding preservation. This procedure, however, requires intrusive access to each DRE which makes it an infeasible solution. In the first place, I do not believe there are enough sufficiently trained technicians to accomplish the task. In the second place, it takes anywhere from 3 to 10 hours to obtain an acceptable image of the internal memory of a DRE.

10

28. The electronic data residing on the components of Georgia's electronic voting systems ("the Required Electronic Data") essential for preservation for the purpose of determining the causes of irregularities and the performance of those systems in the November 6, 2018 General Election follows below in Paragraph 29.

29. The Required Data includes:

   a.   all electronic data residing in the internal memory of the DRE machines prepared for use in the November 6, 2018 election, including DRE machines used for uploading memory cards in election offices;

   b.   all electronic data on DRE memory cards from all polling places and election offices used in early voting and Election Day voting related to the November 6, 2018 election;

   c.   all electronic data residing on the GEMS servers, including logging records and audit logs related to the November 6, 2018 election;

   d.   all electronic data residing on external media devices used to upload results to the Election Night Reporting system related to the November 6, 2018 election;

   e.   all electronic data residing on Electronic Media Processors related to the November 6, 2018 elections.

11

  f. all electronic data on ExpressPollbooks memory cards used in the November 6, 2018 election.

  g. all electronic data in the internal memory of the ExpressPollbooks used in the November 6, 2018 election.

  h. all electronic data including logging records (including the E-Net systems and vendors' records) used in the upload or download of voter registration records and the electronic pollbooks.

30. As recently as November 17 and 18, I have been made aware of possible anomalies from the November 6 election, and I am aware of various public disclosures of other anomalies. Anomalies such as these would be subject to investigation under the one-month DRE internal memory preservation rule. Investigation of these anomalies would be jeopardized without preservation of the affected DREs.


  Pursuant to 28 U.S.C. § 1746, I declare and verify under penalty of perjury that the foregoing is true and correct.

  Executed on this date, November __21_____, 2018.

12

Richard A. DeMillo

13

Fulton County Superior Court
***EFILED***AC
Date: 12/21/2018 2:37 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, et al.,

        **Plaintiffs,**

v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

        **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## [PROPOSED] ORDER GRANTING MOTION FOR PRESERVATION OF ELECTRONIC ELECTION RECORDS IN GORDON AND MURRAY COUNITES

For good cause shown, Plaintiffs' Motion for Preservation of Electronic

Election Records in Gordon and Murray Counties is GRANTED and Defendant

Secretary of State of Georgia is hereby ORDERED to instruct appropriate officials

in Gordon and Murray Counties to not use any Direct Recoding Electronic

("DRE") voting machines in the upcoming January 8, 2019 election that were used

in the November 2018 general election, and, with respect to any subsequent

election, to issue the same instructions to the appropriate county officials, until

further order of this Court.

Page 1

SO ORDERED this __ day of December, 2018.

                                          _____

Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
                  Bruce P. Brown
                  Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 21st day of December, 2018.

<div align="right">

/s/Bruce P. Brown
Bruce P. Brown

</div>

Fulton County Superior Court
***EFILED***MH
Date: 12/26/2018 6:16 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, et al.,** | **CIVIL ACTION** |
| **Plaintiffs,** | **FILE NO. 2018 CV 313418** |
| **v.** | |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, et al.,** | |
| **Defendants.** | |

### AFFIDAVIT OF SERVICE

COMES NOW AMY FERRERO, before the undersigned officer duly authorized to administer oaths and, after being duly sworn on oath deposes and states that she has been permanently appointed by this Court for service of process per Order attached, she is a citizen of the United States, over the age of eighteen (18), and is a party having no interest in the above styled case, states that on December 26, 2018 at 2:33 PM, she served the ROBYN A. CRITTENDEN, Secretary of State of Georgia, by personally serving ROBIN HERRON, Executive Assistant, authorized to accept, at her business located at 214 State Capitol, Atlanta, Georgia 30334, with SUMMONS and PETITION TO CONTEST ELECTION RESULT.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of December, 2018

Legal Ease Attorney Services, Inc.
645 Waldo Street
Atlanta, GA 30312
404-849-1240

Sworn to and subscribed before me
this 26 day of December 2018

_____
Notary Public

My commission expires:

# Page(S)

# Intentionally

# Left Blank



OFFICE
JAN 0 2 2018
DEP. CLERK SUPERIOR COURT
FULTON COUNTY, GA

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

Administrative Order No. 2018 EK 000003

## ORDER FOR APPOINTMENT FOR PROCESS SERVICE

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court, it is hereby

ORDERED and ADJUDGED that the following:

| | | | |
|---|---|---|---|
| Adams Jr., John | Dressman, Douglas | Huston, Baldruch | Nichols, Latham |
| Allen, Laketta | Durden, Deborah | Hudson, Kyle | Nolen, Milton |
| Anderson, William | Echols, Eric | Humphrey, Jevleen | Nowik, Dennis |
| Andrews, Gene | Estesis, Patricia | James, Frank | O'Brien, Christina |
| Armstrong, Christopher | Edwards, Dominic | Johnson, Christina | O'Leary, Christopher |
| Bailey, Anna | Elliott, Maurice | Johnson, Earl | Owens III, Michael |
| Baker, Wanda | Evans, Alonzo | Jones, Alicia | Perkins, Karen |
| Banks, Randy | Faulkner, Dene | Kalum, Hafie | Pennino, Richard |
| Berney, Steven | Fenves, Amy | Kennedy, Richard | Pyla, Robert |
| Berry, Paul | Fisher, Dawn | Kidd, Elizabeth | Riancz, Joyce |
| Basham, James | Fitzgerald, Florette | Kim, Leonard | Redmella, Kevin |
| Bass, Susan | Folds, Catherine | King, Amos | Reddick, Derek |
| Benito, Richard | Ford, Ronnie | Kohler, Michael | Reid, Cletis |
| Benito, Robert | Fox, Joshua | Lair, Aaron | Rhodes, Kathryn |
| Benson, James | Franklin, Anthony | Lane, Madeline | Rice, Robert |
| Botting, Katharine | Frenzy, Jessica | Lansman, Marsha | Richardson, Leroy |
| Brannon, Craig | Fuller, Thomas | Lette, William | Riven, Michael |
| Briley, Donnie | Galin, Elizabeth | Levis, Kevin | Robertson, Brad |
| Brown, Reginald | Gayle, Earl | Lohln, Jerome | Robertson, Marlann |
| Busch, Kim | George, Randel | Ludwick, William | Robinson, Jerry |
| Byns, Edmond | Gibbs III, Thomas | Meggard Jr., Andrew | Rurdock, Leopold |
| Cardinez, Gregory | Greenway, Kimberly | Maggard J., Daniel | Rurdock, Margaret |
| Carney, Adrian | Grimshaw, Shane | Mallas, Nicholas | Sadler Jr., John |
| Chastain, Michael | Gruhn, Tennrie | McClellan, Rodney | Saxon, Jasmine |
| Clark, Earl | Handley, Wiley | McGehee, Larry | Saxon, Rachael |
| Clemmons, Joyce | Herda, Constance | Michael, Kevin | Saxon, Robin |
| Cline, Travis | Hintz, Parks | Morgan, Todd | Saxon, Virginia |
| Croxx, Charles | Hasan, Miriam S. | Morrison, Zari | Seelceis, Christian |
| Cunningham, Sally | Helmerich, Richard | Mott, Cynthia | Self, Abegail |
| Daniels, Alyssa | Highsmith, Amos | Murphy Jr., Gregory | Self, Calvin |
| Daniels, Sonia | Hightower, Authonio | Murphy, Herbert | Sexton, Traici |
| Davenport, Altarick | Hill, Hollis | Marrisa, Francisco | Shadir, Jimmy |
| Davidson, Danny | Hinkman, Charrod | Nealey, Jonathan | Shepherd, Elizabeth |
| Day, Donna | Hinton, Christopher | Nealey, Cedric | Sibbald, John |
| DeVaughn, Carl | Howard, Ricky | Nichols, Jen | Singleton, Wesley |
| Doliittie, Jeffrey | | | Smith, Delonte |

| | | | |
|---|---|---|---|
| Smith, Ronald | Stinyard, Kelvin | Underwood, Robert | Wolfe, Lisa |
| Smith, Virginia | Stone, Rodney | Velasquez, Julius | Wright, Christopher |
| Smith Jr., Bruce | Swindle, Frank | Walker, Reginald | Yeats, John |
| Snellings, Sharon | Tamaroff, Paul | Washington, Sabrina | Zayas, Roberto |
| Spears, Joye | Tassew, Barbane | Webber, Melina | |
| Stanton, Christopher | Thompson, Vanessa | Weeks, Frances | |
| Starks, Marc | Thrash, Nancy | West, Eric | |
| Steidl, David | Tori, Henry | Williams, Lavern | |
| Stevenson, Noeiba | Trumble, Garfield | Wingo, Michael | |
| Stewart, Ronnie | Tucker, Paul | Winkleman, Nan | |

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2018, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this __2nd__ day of January, 2018.

Gail S. Tusan, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

2 of 2

Fulton County Superior Court
***EFILED***MH
Date: 12/26/2018 6:21 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, et al.,** | **CIVIL ACTION FILE NO. 2018 CV 313418** |
| **Plaintiffs,** | |
| **v.** | |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, et al.,** | |
| **Defendants.** | |

## AFFIDAVIT OF SERVICE

COMES NOW AMY FERRERO, before the undersigned officer duly authorized to administer oaths and, after being duly sworn on oath deposes and states that she has been permanently appointed by this Court for service of process per Order attached, she is a citizen of the United States, over the age of eighteen (18), and is a party having no interest in the above styled case, states that on December 26, 2018 at 2:22 PM, she served the FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, by personally serving RICK BARRON. Director of Registration and Election, at his business located at 130 Peachtree Street. SW, Suite 2186, Atlanta, Georgia 30303, with SUMMONS and PETITION TO CONTEST ELECTION RESULT.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of December, 2018

Legal Ease Attorney Services, Inc.
645 Waldo Street
Atlanta, GA 30312
404-849-1240

Sworn to and subscribed before me
this 26 day of December 2018

_____
Notary Public

My commission expires:

# Page(S)
# Intentionally
# Left Blank



# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

Administrative Order No. _2018 EK 000003_

## ORDER FOR APPOINTMENT FOR PROCESS SERVICE

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court, it is hereby

ORDERED and ADJUDGED that the following:

| | | | |
|---|---|---|---|
| Adams Jr., John | Dressman, Douglas | Hudson, Hakimah | Nichols, Latham |
| Allen, Laketha | Dupshm, Deborah | Hudson, Kyle | Nolan, Milton |
| Anderson, William | Echols, Eric | Humphrey, Joviera | Nowik, Dennis |
| Andrews, Gene | Echols, Patricia | James, Frank | O'Brien, Christopher |
| Armstrong, Christopher | Edwards, Donnis | Johnson, Christine | O'Leary, Christine |
| Bailey, Anna | Elliott, Maurice | Johnson, Earl | Owens III, Michael |
| Baker, Wanda | Evans, Alonzo | Jonas, Alicia | Perkins, Karen |
| Banks, Randy | Emdliner, Dean | Kahan, Hale | Pontoise, Richard |
| Barnsley, Steven | Ferraro, Amy | Kennedy, Richard | Pyle, Robert |
| Barry, Paul | Fisher, Dawn | Kidd, Elizabeth | Ranzer, Jayne |
| Basham, James | Fitzgerald, Floretta | Kim, Leonard | Recinella, Kevin |
| Bass, Susan | Folds, Catherine | King, Amos | Reddick, Derek |
| Benita, Richard | Folds, George | Kofler, Michael | Reid, Clints |
| Benito, Robert | Ford, Ronnie | Laz, Aaron | Rhodes, Kathryn |
| Benson, James | Fox, Juhani | Lenz, Madeline | Rice, Robert |
| Bolling, Katherine | Franklin, Anthony | Lesman, Marsha | Richardson, Leroy |
| Brennan, Craig | Freeze, Jessica | Lets, William | Rivers, Michael |
| Briley, Donnie | Foller, Theresa | Lewis, Kevin | Robertson, Brad |
| Brown, Reginald | Gallo, Elizabeth | Lohin, Jerome | Robertson, Marleen |
| Bunch, Kim | Gayla, Earl | Lozwecki, William | Robinson, Jerry |
| Byan, Edmond | George, Randal | Meggerd Jr., Andrew | Ruddock, Leopold |
| Carithers, Gregory | Gibbs III, Thomas | Meggerd III, Andrew | Ruddock, Margaret |
| Carney, Adrian | Greenway, Kimberly | Mallen, J. Daniel | Sadler Jr., John |
| Cheshin, Michael | Grimshaw, Shane | Mallen, Nicholas | Sexon, Jennifer |
| Clark, Rasil | Gruba, Tommie | McClellan, Rodney | Sexon, Rashed |
| Clemmons, Joyce | Handley, Wiley | McGahen, Larry | Saxon, Robin |
| Cline, Travis | Harris, Constance | Mitchell, Kevin | Saxon, Virginia |
| Cross, Charles | Harris, Parise | Morgan, Todd | Selvicki, Christian |
| Cunningham, Sally | Hasten, Mabeth S. | Morrison, Zuri | Self, Abegail |
| Daniels, Alysa | Heimerich, Richard | Mott, Cynthia | Self, Curvin |
| Daniels, Sonia | Highsmith, Amos | Murphy Jr., Gregory | Sexton, Tnaici |
| Davenport, Atherick | Highfower, Anthonio | Murphy, Herbert | Shantz, Jimmy |
| Davidson, Danny | Hill, Hollis | Manriots, Francisco | Shepherd, Elizabeth |
| Day, Duane | Hinkmann, Chenod | Nestler, Jonathan | Shbbald, John |
| DeVaughn, Carl | Hosting, Christopher | Neeley, Cedric | Singleton, Wesley |
| Dolltier, Jeffrey | Howard, Ricky | Nichols, Jean | Smith, Delacie |

| | | | |
|---|---|---|---|
| Smith, Ronald | Stinyard, Kelvin | Underwood, Robert | Wolfe, Lisa |
| Smith, Virginia | Stone, Rodney | Velasquez, Julius | Wright, Christopher |
| Smith Jr., Bruce | Swindle, Frank | Walker, Reginald | Yeata, John |
| Snellings, Sharon | Tomcavoff, Paul | Washington, Sabrina | Zayas, Roberto |
| Spears, Joye | Tassaw, Berhane | Webber, Melina | |
| Stanton, Christopher | Thompson, Vanessa | Weeks, Frances | |
| Starks, Marc | Thrash, Nancy | West, Eric | |
| Steidl, David | Tort, Henry | Williams, Lavern | |
| Stevenson, Nosiba | Trumble, Garfield | Wingo, Michael | |
| Stewart, Ronnie | Tucker, Paul | Winkleman, Nan | |

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2018, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this 2nd day of January, 2018.

Gail S. Tusan, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

**2 of 2**

Fulton County Superior Court
***EFILED***QW
Date: 12/19/2018 3:46 PM
Cathelene Robinson, Clerk

Fulton County Superior Court
***EFILED***AC
Date: 12/27/2018 2:10 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, et al.,

          Plaintiffs,

v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

          Defendants.

CIVIL ACTION FILE
NO. 2018CV313418

## [PROPOSED] ORDER GRANTING MOTION TO DROP DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS AS PARTY DEFENDANT

Upon motion of Plaintiffs, and pursuant to O.C.G.A. § 9-11-21, Defendant

DeKalb County Board of Registrations and Elections is dropped from this action

and is no longer a party to this case.

SO ORDERED this 26 day of December, 2018.

Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
          Bruce P. Brown
          Counsel for Plaintiffs

Page 1

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 19TH day of December, 2018.

/s/Bruce P. Brown
Bruce P. Brown

 Gmail

Adele Grubbs <adele.grubbs@gmail.com>

---

**Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 [IWOV-imanage.FID780744]**
2 messages

---

**David Ware** <DWare@hallboothsmith.com>                     Thu, Dec 20, 2018 at 9:32 AM
To: "adele.grubbs@gmail.com" <adele.grubbs@gmail.com>
Cc: Bruce Brown <bbrown@brucepbrownlaw.com>, Viviane Ernstes <vernstes@co.dekalb.ga.us>, "Laura K. Johnson" <lkjohnson@dekalbcountyga.gov>, "Bryan, Bennett D" <benbryan@dekalbcountyga.gov>, Russell Britt <RBritt@hallboothsmith.com>, Pearson Cunningham <PCunningham@hallboothsmith.com>

Judge Grubbs: we represent the DeKalb County Board of Registration and Elections. We have not entered an appearance in the case since the Board not yet been served. However, we appeared at the initial hearing before your Honor and announced our representation. As you are aware from the docket, Plaintiff has filed a Motion to Dismiss the DeKalb County Board of Registration and Elections and, of course, the motion is unopposed. Plaintiff's counsel also provided the court with a proposed Order to effectuate the dismissal. In light of this development, we will not file a Motion to Dismiss or other pleadings. Since the Court orally directed that any motions in this matter be filed by today, I wanted to alert you to our situation in the event you have not yet received the Plaintiff's filing. If the court still wants us to appear at the January 9, 2019 hearing, please let me know.


Thank you for your time and consideration.


Respectfully submitted,



**R. David Ware**

**Partner**

**Hall Booth Smith, P.C., Attorneys at Law**

191 Peachtree Street

Suite 2900

Atlanta, GA. 30303

dware@hallboothsmith.com

(404) 586-6619

(404) 402-0204 (cell)

www.hallboothsmith.com

Notice of Confidentiality:

This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication, and any attachments thereto, contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, viewing, copying, distribution or use of any of the information contained in or attached to this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.

---

**Adele Grubbs** <adele.grubbs@gmail.com>                          Thu, Dec 20, 2018 at 10:14 AM
To: David Ware <DWare@hallboothsmith.com>
Cc: Bruce Brown <bbrown@brucepbrownlaw.com>, Viviane Ernstes <vernstes@co.dekalb.ga.us>, "Laura K. Johnson" <lkjohnson@dekalbcountyga.gov>, "Bryan, Bennett D" <benbryan@dekalbcountyga.gov>, Russell Britt <RBritt@hallboothsmith.com>, Pearson Cunningham <PCunningham@hallboothsmith.com>

Counsel,

I have not received a Motion to Dismiss form the Plaintiff yet.

adele Grubbs
[Quoted text hidden]

Fulton County Superior Court
***EFILED***LW
Date: 12/28/2018 3:47 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| | ) | FILE NO. 2018CV313418 |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>RESPONSE TO PETITION TO CONTEST ELECTION RESULT</u>

COMES NOW, Robyn A. Crittenden, in her official capacity as Secretary of

State of the State of Georgia ("Defendant" or "Crittenden"), by and through

counsel, and respectfully appears specially and responds to Plaintiffs Coalition for

Good Governance's ("Coalition"), Rhonda J. Martin's ("Martin"), Smythe Duval's

("Duval"), and Jeanne Dufort's ("Dufort") (collectively, "Plaintiffs") Petition to

Contest Election Result ("Petition") involving the November 6, 2018 general

election for Lieutenant Governor for the State of Georgia (the "Contested

Election"), stating as follows:

## **INTRODUCTION**

Plaintiffs filed this action to contest the Contested Election pursuant to

Article 13, O.C.G.A. § 21-2-520, *et seq.*, of the Georgia Election Code.  On

December 4, 2018, Defendant appeared specially to file her Consolidated Motion

to Dismiss By Special Appearance and Brief In Support ("Motion"), in which she

asked the Court to dismiss Plaintiffs' Petition both as to Secretary Crittenden and

in its entirety.[1]  As explained in that Motion, Secretary Crittenden is not a proper

party to this election contest and, therefore, the claims against her are barred by

sovereign immunity; Plaintiffs have failed to state valid claims for relief; and the

Petition fails to name all the necessary parties for an election contest.

Further, Plaintiffs appear to bring a res ipsa loquitur theory from tort law and

attempt to apply it to election challenges.  See Sheats v. Kroger Co., 336 Ga. App.

307, 312 (2016) (listing elements of res ipsa loquitur and holding that it applies

only in "extreme" cases).  Georgia courts have long held that election returns are

presumed to be valid, and a party contesting an election has the burden of showing

an irregularity or illegality sufficient to change or place in doubt the result of the

---

[1] Defendant appeared specially to file the Motion because Plaintiffs had not yet served her with
the Petition.

election. See Hunt v. Crawford, 270 Ga. 7, 8 (1998) ("The setting aside of an election in which the people have chosen their representative is a drastic remedy that should not be undertaken lightly, but instead should be reserved for cases in which a person challenging an election has clearly established a violation of election procedures and has demonstrated that the violation has placed the result of the election in doubt."). Theoretical and unfounded conspiratorial hypotheses do not overcome the challenging party's burden. Middleton v. Smith, 273 Ga. 202, 203 (2000) ("It is not sufficient to show irregularities which simply erode confidence in the outcome of the election. Elections cannot be overturned on the basis of mere speculation or an appearance of impropriety in the election procedures.") (citations omitted).

On December 18, 2018, Plaintiffs served Defendant with a summons and copy of the Petition. The Summons directed Defendant to answer the Petition within ten days of service. Defendant believes her Motion constitutes an adequate—and, indeed, dispositive—responsive pleading with respect to the Petition; nevertheless, she appears specially and files this Response in an abundance of caution in order to answer directly the enumerated allegations contained in the Petition.[2]

---

[2] Defendant hereby incorporates her Motion into this Response as if fully sets forth herein.

-3-

## FIRST AFFIRMATIVE DEFENSE

The allegations in Plaintiffs' Petition fail to state a claim against Secretary Crittenden upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims against Secretary Crittenden are barred by sovereign immunity.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred for failure to name necessary and indispensable parties.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs have not alleged, nor can Plaintiffs prove, any error, misconduct, fraud, or irregularity sufficient to change or place in doubt the result of the election at issue in this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff Coalition for Good Governance, Inc. lacks standing to bring this action.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' federal claims against Secretary Crittenden are barred by the Eleventh Amendment to the United States Constitution.

-4-

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs failed to plead their election contest claim with specificity in compliance with the statutory requirements in O.C.G.A. § 21-2-524.

## EIGHTH AFFIRMATIVE DEFENSE

Defendant reserves the right to amend her defenses and to add additional ones.

Defendant answers the specific paragraphs of Plaintiffs' Petition as follows:

## INTRODUCTION AND SUMMARY

### 1.

Defendant denies the allegations contained in Paragraph 1 of Plaintiffs' Petition.

### 2.

Defendant denies the allegations contained in Paragraph 2 of Plaintiffs' Petition.

### 3.

Defendant denies the allegations contained in Paragraph 3 of Plaintiffs' Petition.

### 4.

Defendant denies the allegations contained in Paragraph 4 of Plaintiffs' Petition as pled.

-5-

## **PARTIES**

### 5.

The allegations in Paragraph 5 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

### 6.

The allegations in Paragraph 6 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

### 7.

Defendant denies the allegations contained in Paragraph 7 of Plaintiffs' Petition.

### 8.

Defendant admits the allegations in Paragraph 8 of Plaintiffs' Petition that Plaintiff Martin is a registered voter in the State of Georgia who was entitled to vote in the Contested Election and voted in the November 6, 2018 General Election, but denies that Plaintiff Martin is an aggrieved elector.

### 9.

Defendant admits the allegations in Paragraph 9 of Plaintiffs' Petition that Plaintiff Dufort is a registered voter in the State of Georgia who was entitled to vote in the Contested Election and voted in the November 6, 2018 General Election, but denies that Plaintiff Dufort is an aggrieved elector.

-6-

10.

Defendant admits the allegations in Paragraph 10 of Plaintiffs' Petition that

Plaintiff DuVal is a registered voter in the State of Georgia who was entitled to

vote in the Contested Election and voted in the November 6, 2018 General

Election, but denies that Plaintiff DuVal is an aggrieved elector.  Defendant also

admits the allegation in Paragraph 10 of Plaintiffs' Petition that Plaintiff DuVal

was a candidate of the Libertarian Party for Secretary of State of Georgia.

11.

Paragraph 11 of Plaintiffs' Petition contains a legal conclusion that does not

require a response.  Defendant denies that election irregularities alleged by

Plaintiffs were sufficient to place in doubt the outcome of the Contested Election

and that Plaintiffs are entitled to any relief in their election contest.

12.

Defendant admits that she serves as the Secretary of State for the State of

Georgia.  Defendant denies any of Plaintiffs' characterizations of the duties and

responsibilities of her position, as such are defined by Georgia law and the law

speaks for itself.  Defendant denies all other allegations stated or implied in this

paragraph.

13.

Defendant admits that the Fulton County Board of Registration and

-7-

Elections (the "Fulton Board") is the election superintendent for Fulton County; that the Fulton Board conducted the Contested Election in Fulton County; and that other counties' election superintendents conducted the November 6, 2018 General Election in their respective counties. Defendant denies the allegation that she conducted the Contested Election contained in Paragraph 13 of Plaintiffs' Petition.

14.

Defendant admits that the Gwinnett County Board of Registration and Elections (the "Gwinnett Board") is the election superintendent for Gwinnett County; that the Gwinnett Board conducted the Contested Election in Gwinnett County; and that other counties' election superintendents conducted the November 6, 2018 General Election in their respective counties. Defendant denies the allegation that she conducted the Contested Election contained in Paragraph 14 of Plaintiffs' Petition.

15.

Defendant admits that the DeKalb County Board of Registration and Elections (the "DeKalb Board") is the election superintendent for DeKalb County; that the DeKalb Board conducted the Contested Election in DeKalb County; and that other counties' election superintendents conducted the November 6, 2018 General Election in their respective counties. Defendant denies the allegation that she conducted the Contested Election contained in Paragraph 15 of Plaintiffs'

-8-

Petition.  Defendant further states that the Court has granted Plaintiffs' motion to drop the DeKalb Board from Plaintiffs' election contest due to misjoinder

16.

Paragraph 16 of Plaintiffs' Petition purports to collectively refer to Defendants Secretary, Fulton County Board of Registration and Elections, Gwinnett County Board of Registrations and Elections, and DeKalb County Board of Registrations and Elections as "the Defendant Election Officials" for the purpose of Plaintiffs' Petition, and does not require a response.  To the extent that a response is required, Defendant denies any remaining allegations stated or implied in Paragraph 16 of Plaintiffs' Petition.

17.

Defendant admits that Defendant Duncan was the Republican nominee for Lieutenant Governor; Defendant certified him as the winner of the election; that he is the Lieutenant Governor Elect; and that Plaintiffs filed a meritless challenge to his election.  Except as thus stated, Defendant denies the allegations stated or implied in Paragraph 17 of Plaintiffs' Petition.

**JURISDICTION and VENUE**

18.

Defendant denies this Court has subject matter jurisdiction as to Secretary Crittenden.  Defendant, appearing specially, does not contest that venue is proper

-9-

in this Court.  Defendant denies any remaining allegations stated or implied in

Paragraph 18 of Plaintiffs' Petition.

<div align="center">19.</div>

Paragraph 19 of Plaintiffs' Petition contains a legal conclusion that does not

require a response.  To the extent a response is required, Defendant admits that

certification of the November 6, 2018 General Election occurred on Saturday,

November 17, 2018 and that Plaintiffs' Petition was filed on November 23, 2018.

Defendant denies that Plaintiffs named all necessary parties for their election

contest and any remaining allegations stated or implied in Paragraph 19 of

Plaintiffs' Petition.

<div align="center">20.</div>

Defendant admits that the Georgia State Election Board was served with a

copy of Plaintiffs' Petition through Secretary Crittenden as chairperson of the

Georgia State Election Board.  All other allegations stated or implied in Paragraph

20 of Plaintiffs' Petition are denied.

<div align="center">21.</div>

Defendant admits that Paragraph 21 of Plaintiffs' Petition that contains a

description of certain equipment used in Georgia elections, but denies that the

components listed in Paragraph 21 consist of the entirety of the voting system in

Georgia.

<div align="center">-10-</div>

22.

Defendant denies the allegations contained in Paragraph 22 of Plaintiffs'

Petition as pled.

23.

Defendant denies the allegations contained in Paragraph 23 of Plaintiffs'

Petition as pled.

24.

The allegations in Paragraph 24 of Plaintiffs' Petition refer to documents,

and such documents speak for themselves. Defendant denies any of Plaintiffs'

characterizations of the documents. All other allegations stated or implied in this

paragraph are denied.

25.

The allegations in Paragraph 25 of Plaintiffs' Petition refer to a document,

and such document speaks for itself. Defendant denies any of Plaintiffs'

characterizations of the document. All other allegations stated or implied in this

paragraph are denied.

26.

The allegations in Paragraph 26 of Plaintiffs' Petition refer to documents,

and such documents speak for themselves. Defendant denies any of Plaintiffs'

characterizations of the documents. All other allegations stated or implied in this

-11-

paragraph are denied.

### 27.

The allegations in Paragraph 27 of Plaintiffs' Petition refer to a document, and such document speaks for itself. Defendant denies any of Plaintiffs' characterizations of the document. All other allegations stated or implied in this paragraph are denied.

### 28.

The allegations in Paragraph 28 of Plaintiffs' Petition refer to a document, and such document speaks for itself. Defendant denies any of Plaintiffs' characterizations of the document. All other allegations stated or implied in this paragraph are denied.

### 29.

Defendant denies the allegations contained in Paragraph 29 of Plaintiffs' Petition as pled.

### 30.

Defendant denies the allegations contained in Paragraph 30 of Plaintiffs' Petition.

### 31.

With regard to the allegations containing alleged quotations by KSU/CSE employees, the Paragraph does not indicate the source of those quoted remarks;

-12-

however, to the extent that these quotations are taken from KSU or CSE

documents, the Secretary states that such documents speak for themselves. With

regard to the allegation in the last sentence regarding CES Director Michael

Barnes' "sworn testimony," the content of any such sworn testimony speaks for

itself. The remaining allegations in Paragraph 31 are denied as pled.

32.

Defendant denies the allegations contained in Paragraph 32 of Plaintiffs'

Petition as pled.

33.

Defendant denies the allegations contained in Paragraph 33 of Plaintiffs'

Petition.

34.

The allegations in Paragraph 34 of Plaintiffs' Petition refer to a court order,

and such order speaks for itself. Defendant denies any of Plaintiffs'

characterizations of the order. All other allegations stated or implied in this

paragraph are denied.

35.

Defendant denies the allegations contained in Paragraph 35 of Plaintiffs'

Petition as pled.

-13-

**Irregularities in the 2018 Election**

36.

Defendant denies the allegations contained in Paragraph 36 of Plaintiffs' Petition.

37.

The allegations in Paragraph 37 of Plaintiffs' Petition refer to a document, and such document speaks for itself. Defendant denies any of Plaintiffs' characterizations of the document. All other allegations stated or implied in this paragraph are denied.

38.

Defendant admits that the Secretary of State's Office received complaints from voters during the November 6, 2018 election, but denies that she received thousands of complaints during the November 6, 2018 election, including DRE machines and poll books malfunctioning. Defendant is without knowledge or information of reports of voting problems received by Plaintiffs or other third parties, and therefore denies any allegations on that basis. Defendant further denies that the purported election irregularities alleged by Plaintiffs resulted in disenfranchisement of eligible voters. All other allegations stated or implied in this paragraph are denied.

-14-

39.

The allegations in Paragraph 39 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.  Defendant further denies that the purported election irregularities alleged by Plaintiffs were sufficient to place in doubt the outcome of the election for Lieutenant Governor. All other allegations stated or implied in this paragraph are denied.

40.

The allegations in Paragraph 40 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

41.

The allegations in Paragraph 41 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

42.

Defendant admits that Allgood Elementary School in DeKalb County is physically located in Georgia's Congressional District 4 and that Karen Handel was the Republican candidate in Congressional District 6 in the November 6, 2018 General Election.  The remaining allegations in Paragraph 42 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.  Defendant further denies that the purported election irregularity alleged in Paragraph 42 of Plaintiffs' Petition changed or placed in doubt the outcome of the

-15-

election for Lieutenant Governor.

43.

The allegations in Paragraph 43 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

44.

The allegations in Paragraph 44 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

45.

The allegations in Paragraph 45 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

46.

Defendant admits that 123 ballots were mailed in to Fulton County by certain electors permitted by law to vote in only Federal elections and that for building the GEMS database, Grady High School was the precinct selected in Fulton County where the Federal-only ballots were placed. Defendant also admits that the Grady High School precinct in Fulton County is located in Congressional District 5 and that Congressional Districts 5, 6, 11, and 13 each cover portions of Fulton County. Defendant denies the allegations in Paragraph 46 of Plaintiffs' Petition that election returns from the Grady High School precinct show anomalies that suggest DRE programming problems or other election irregularities. Except

-16-

as thus stated, Defendant denies any remaining allegations in Paragraph 46 of Plaintiffs' Petition.

<div align="center">47.</div>

Defendant admits that the Secretary of State's Office has received complaints of "vote flipping," but denies that the Secretary of State's Office received hundreds of complaints of "vote flipping" during the November 6, 2018 election. Defendant is without knowledge or information of reports of "vote flipping" received by Plaintiffs or other third parties, and therefore denies any allegations on that basis. Defendant further denies that the alleged irregularity in Paragraph 47 of Plaintiffs' Petition changed or placed in doubt the outcome of the election for Lieutenant Governor.

<div align="center">48.</div>

The allegations in Paragraph 48 of Plaintiffs' Petition are outside the scope of Defendant's knowledge and are therefore denied on that basis.

**Alleged Anomalous Undervote in the Lieutenant Governor's Election**

<div align="center">49.</div>

Defendant denies the allegations contained in Paragraph 49 of Plaintiffs' Petition.

<div align="center">50.</div>

Defendant answers Paragraph 50 of Plaintiffs' Petition by stating that the

<div align="center">-17-</div>

certified election returns speak for themselves. Except as thus stated, Defendant denies the allegations in Paragraph 50 of Plaintiffs' Petition.

51.

Defendant answers Paragraph 51 of Plaintiffs' Petition by stating that the certified election returns speak for themselves. Except as thus stated, Defendant denies the allegations in Paragraph 51 of Plaintiffs' Petition.

52.

Defendant answers Paragraph 52 of Plaintiffs' Petition by stating that the certified election returns speak for themselves. Except as thus stated, Defendant denies the allegations in Paragraph 52 of Plaintiffs' Petition.

53.

Defendant denies the allegations contained in Paragraph 53 of Plaintiffs' Petition as pled.

54.

Defendant answers Paragraph 54 of Plaintiffs' Petition by stating that the certified election returns speak for themselves. Except as thus stated, Defendant denies all other allegations stated or implied in Paragraph 54 of Plaintiffs' Petition.

55.

The allegations in Paragraph 55 of Plaintiffs' Petition refer to a document, and such document speaks for itself. Defendant denies any of Plaintiffs'

-18-

characterizations of the document.  All other allegations stated or implied in this paragraph are denied.

<div align="center">56.</div>

The allegations in Paragraph 56 of Plaintiffs' Petition refer to a document, and such document speaks for itself.  Defendant denies any of Plaintiffs' characterizations of the document.  All other allegations stated or implied in this paragraph are denied.

<div align="center">57.</div>

Defendant denies the allegations contained in Paragraph 57 of Plaintiffs' Petition.

<div align="center">**COUNT I: ELECTION CONTEST**</div>

<div align="center">58.</div>

Defendant incorporates by reference and realleges its responses to Plaintiffs' preceding allegations as if fully restated herein.

<div align="center">59.</div>

Defendant denies the allegations contained in Paragraph 59 of Plaintiffs' Petition.

<div align="center">60.</div>

Defendant denies the allegations contained in Paragraph 60 of Plaintiffs' Petition.

<div align="center">-19-</div>

61.

Defendant denies the allegations contained in Paragraph 61 of Plaintiffs'

Petition.

62.

Defendant denies the allegations contained in Paragraph 62 of Plaintiffs'

Petition.

63.

Defendant denies the allegations contained in Paragraph 63 of Plaintiffs'

Petition.

64.

Defendant denies the allegations contained in Paragraph 64 of Plaintiffs'

Petition.

65.

Defendant denies the allegations contained in Paragraph 65 of Plaintiffs'

Petition.

## COUNT II
## FUNDAMENTAL RIGHT TO VOTE
## 42 U.S.C. § 1983

### Infringement of the Fundamental Right to Vote
### in Violation of the Fourteenth Amendment
### (Against Defendant Election Officials)

-20-

66.

Defendant incorporates by reference and realleges its responses to Plaintiffs' preceding allegations as if fully restated herein.

67.

The allegations contained in Paragraph 67 of Plaintiffs' Petition are statements of the law. The law speaks for itself and these allegations do not require a response. Defendant denies any of Plaintiffs' characterizations of the law, and all other allegations stated or implied in this paragraph are denied.

68.

The allegations contained in Paragraph 68 of Plaintiffs' Petition are statements of the law. The law speaks for itself and these allegations do not require a response. Defendant denies any of Plaintiffs' characterizations of the law, and all other allegations stated or implied in this paragraph are denied.

69.

Defendant denies the allegations contained in Paragraph 69 of Plaintiffs' Petition.

70.

Defendant denies the allegations contained in Paragraph 70 of Plaintiffs' Petition.

-21-

71.

Defendant denies the allegations contained in Paragraph 71 of Plaintiffs'

Petition.

72.

Defendant denies the allegations contained in Paragraph 72 of Plaintiffs'

Petition.

## COUNT II: EQUAL PROTECTION
## 42 U.S.C. § 1983

### Infringement of the Fourteenth Amendment's
### Guarantee of Equal Protection
### (Against Defendant Election Officials)

73.

Defendant incorporates by reference and realleges its responses to Plaintiffs'

preceding allegations as if fully restated herein.

74.

Defendant denies the allegations contained in Paragraph 74 of Plaintiffs'

Petition.

75.

Defendant denies the allegations contained in Paragraph 75 of Plaintiffs'

Petition.

-22-

76.

Defendant denies the allegations contained in Paragraph 76 of Plaintiffs'

Petition.

## PRAYER FOR RELIEF

Defendant denies that Plaintiffs are entitled to any relief they seek.

Defendant denies every allegation not specifically admitted herein.

Respectfully submitted this 28th day of December, 2018.

<div style="margin-left:40%">

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Annette M. Cowart
Deputy Attorney General
Georgia Bar No. 191199
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
State Law Department
40 Capitol Square, S.W.
Atlanta, GA 30334
Telephone: (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No: 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632

</div>

-23-

adenton@robbinsfirm.com
Special Assistant Attorneys General
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:   (678) 701-9381
Facsimile:    (404) 856-3250

*Attorneys for Defendant Robyn A. Crittenden,
Secretary of State of Georgia*

-24-

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the within and foregoing **RESPONSE TO PETITION TO CONTEST ELECTION RESULT** on all parties by electronically filing it with the Clerk of the Court using the Odyssey eFileGA system, which will automatically send an email notification of such filing to counsel for the parties.

This 28th day of December, 2018.


_/s/ Josh Belinfante_
Josh Belinfante

.