Fulton County Superior Court
***EFILED***LS
Date: 1/8/2019 4:42 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) ) ) Civil Action File No. 2018CV313418 |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) ) ) |
| Defendant | ) ) ) |

## DEFENDANT FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' OBJECTION TO PLAINTIFFS' NOTICE OF PROFFER OF EVIDENCE

**COMES NOW**, Defendant Fulton County Board of Registration and Elections ("FCBRE"), by and through its undersigned counsel of record, and respectfully files its Objection to Plaintiffs' Proffer of Evidence.

1.

On December 5, 2018, the Court entered an Order setting the following schedule for this litigation:

a)     All Motions in this case shall be filed by 5:00 p.m. on December 20, 2018;

b)     All filed Motions are set for hearing at 9:00 a.m. January 9, 2019;

c)     The case is set for final hearing from January 17, 2019.

1

2.

Defendants FCRE, Gwinnett County Board of Registration and Elections Secretary State of Georgia Robyn A. Crittenden and Geoff Duncan have each filed Motions to Dismiss as directed by the Court's December 5, 2018 Order.

3.

On January 8, 2019, Plaintiffs filed Plaintiffs' Notice of Proffer of Evidence.

4.

Pursuant to OCGA §§ 9-11-12(b) and 9-11-56, evidence outside the pleadings converts these motions to dismiss to motions for summary judgment and consequently, Defendants are entitled to 30 day' notice. *See Cox Enterprises, Inc. v. Nix*, 273 Ga. 152, 153 (2000). Accordingly, Defendant FCBRE objects to Plaintiffs' Notice of Proffer of Evidence and asserts that this proffer should not be considered at the motions hearing of January 9, 2019.

Respectfully submitted this 8th day of January, 2019.

**OFFICE OF THE FULTON COUNTY ATTORNEY**
Patrise Perkins-Hooker
County Attorney
Georgia Bar No. 572358
Patrise.perkins-hooker@fultoncountyga.gov

/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.burwell@fultoncountyga.gov
Cheryl Melissa Ann Ringer
Georgia Bar No. 557420
Cheryl.ringer@fultoncountyga.gov

2

David Lowman
Georgia Bar No. 460298
David.lowman@fultoncountyga.gov
Attorneys for Defendant Fulton County BRE

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
Office: (404) 612-0246
Fax:    (404)730-6540

3

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) <br> ) <br> ) Civil Action File No. 2018CV313418 |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) <br> ) <br> ) |
| Defendant | ) <br> ) <br> ) |

## CERTIFICATE OF SERVICE

This is to certify that on this day, I have caused to be electronically filed the foregoing **DEFENDANT FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' OBJECTION TO PLAINTIFFS' NOTICE OF PROFFER OF EVIDENCE** with the Fulton County Superior Court using the Odyssey efile GA system which will provide automatic notification of this filing to all counsel of record.

This 8[h] day of January, 2019.

/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775050

4

# Page(S)

# Intentionally

# Left Blank

Fulton County Superior Court
***EFILED***MH
Date: 1/9/2019 11:44 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION ) FILE NO. 2018CV313418 ) |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANT ROBYN A. CRITTENDEN'S
## NOTICE OF LIMITED PROFFER OF EVIDENCE

COMES NOW, Robyn A. Crittenden, in her official capacity as Secretary of

State of the State of Georgia ("Defendant" or "Crittenden"), by and through

counsel, and respectfully appears specially to proffer a transcript of the testimony

of Richard A. DeMillo provided at an evidentiary hearing on September 12, 2018

in *Curling, et al. v. Kemp, et al.*, a case in the United States District Court for the

Northern District of Georgia (No. 1:17-CV-2989-AT) in which one of the

Plaintiffs here, Coalition for Good Governance, also was a plaintiff and was represented by the same attorney representing it in this case.  (A copy of the transcript is attached as **Exhibit A**.)

Respectfully submitted this 9th day of January, 2019.

Christopher M. Carr
Attorney General
Georgia Bar No.  112505
Annette M. Cowart
Deputy Attorney General
Georgia Bar No.  191199
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No.  760280
State Law Department
40 Capitol Square, S.W.
Atlanta, GA  30334
Telephone:  (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No:  047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Brian E. Lake
Georgia Bar No.  575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Special Assistant Attorneys General
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:  (678) 701-9381

Facsimile:   (404) 856-3250

*Attorneys for Defendant Robyn A. Crittenden,*
*Secretary of State of Georgia*

# EXHIBIT A

```
1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
2                       ATLANTA DIVISION

3

4    DONNA CURLING, ET AL.,            :
                                       :
5            PLAINTIFFS,               :
     VS.                               :   DOCKET NUMBER
6                                      :   1:17-CV-2989-AT
     BRIAN P. KEMP, ET AL.,            :
7                                      :
             DEFENDANTS.               :
8

9

10        TRANSCRIPT OF EVIDENTIARY HEARING PROCEEDINGS

11          BEFORE THE HONORABLE AMY TOTENBERG

12             UNITED STATES DISTRICT JUDGE

13                 SEPTEMBER 12, 2018

14                    10:16 A.M.

15

16

17

18

19

20

21    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22              TRANSCRIPT PRODUCED BY:

23
     OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR
24                                   2394 UNITED STATES COURTHOUSE
                                     75 TED TURNER DRIVE, SOUTHWEST
25                                   ATLANTA, GEORGIA  30303
                                     (404) 215-1383
```

2

```
 1            A P P E A R A N C E S   O F   C O U N S E L

 2

 3    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
      SCHOENBERG:
 4

 5        DAVID D. CROSS
          CATHERINE L. CHAPPLE
 6        JANE P. BENTROTT
          ROBERT W. MANOSO
 7        MORRISON & FOERSTER, LLP

 8        HALSEY G. KNAPP, JR.
          KREVOLIN & HORST, LLC
 9

10    FOR THE PLAINTIFF COALITION FOR GOOD GOVERNANCE:

11
          ROBERT ALEXANDER McGUIRE, III
12        ROBERT McGUIRE LAW FIRM

13        BRUCE P. BROWN
          BRUCE P. BROWN LAW
14

15    FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
      WILLIAM DIGGES, III, AND RICARDO DAVIS:
16

17        CARY ICHTER
          ICHTER DAVIS, LLC
18

19    FOR THE STATE OF GEORGIA DEFENDANTS:

20
          JOHN FRANK SALTER, JR.
21        ROY E. BARNES
          THE BARNES LAW GROUP, LLC
22

23

24

25                                         (...CONT'D...)
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1    (...CONT'D....)

2

3    FOR THE FULTON COUNTY DEFENDANTS:

4

5         KAYE WOODARD BURWELL
          CHERYL RINGER
          DAVID R. LOWMAN
6         OFFICE OF THE FULTON COUNTY ATTORNEY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

4

```
 1            I N D E X   T O   P R O C E E D I N G S

 2     ELEVENTH AMENDMENT ISSUES REGARDING IMMUNITY AND STANDING

 3                                                    PAGE

 4    ARGUMENT

 5         by Mr. McGuire                             16
           by Ms. Bentrott                            20
 6         by Mr. Salter                              22
           by Mr. McGuire                             31
 7
      RULING
 8
           by The Court                               32
 9

10          HEARING ON MOTION FOR PRELIMINARY INJUNCTION

11

12    OPENING STATEMENT

           by Mr. Cross                               35
13         by Mr. Manuso                              40
           by Mr. Brown                               44
14         by Mr. Salter                              48
           by Ms. Burwell                             62
15         by Mr. Cross                               66
           by Mr. Brown                               70
16
           WITNESS                                    PAGE
17
      J. ALEX HALDERMAN, Ph.D.
18
           Direct Examination
19           by Ms. Chapple                           73
           Cross-Examination
20           by Mr. Barnes                            96
           Cross-Examination
21           by Ms. Burwell                          118

22    RICHARD DeMILLO, Ph.D.

23         Direct Examination
             by Mr. McGuire                          130
24         Direct Examination
             by Mr. Cross                            143
25
                                        (...cont'd...)
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

5

(...cont'd...)

**WITNESS**                                          **PAGE**

   Cross-Examination
     by Mr. Salter                              148
   Redirect Examination
     by Mr. Cross                               160

CHRIS HARVEY

   Cross-Examination
     by Mr. Cross                               163
   Cross-Examination
     by Mr. McGuire                             176
   Direct Examination
     by Mr. Salter                              185
   Recross-Examination
     by Mr. Cross                               195
   Recross-Examination
     by Mr. McGuire                             200

MICHAEL BARNES

   Direct Examination
     by Mr. Salter                              205
   Cross-Examination
     by Mr. Brown                               217
   Cross-Examination
     by Mr. Cross                               225
   Redirect Examination
     by Mr. Salter                              234

CECILIA HOUSTON-TORRENCE

   Direct Examination
     by Ms. Burwell                             236
   Cross-Examination
     by Mr. Brown                               241

RICHARD BARRON

   Direct Examination
     by Ms. Burwell                             243
   Cross-Examination
     by Mr. Cross                               265
   Cross-Examination
     by Mr. McGuire                             271

(...cont'd...)

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

6

```
1    (...cont'd...)

2      WITNESS                                    PAGE

3        Redirect Examination
           by Ms. Burwell                          272
4

5    CATHY COX

6        Direct Examination
           by Mr. Salter                           275
7        Cross-Examination
           by Mr. Cross                            296
8        Cross-Examination
           by Mr. McGuire                          305
9                              * * *

10

11   CERTIFICATE                                   323

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

130

```
1              MR. SALTER:  Yes, Your Honor.

2              THE COURT:  Call your next witness.

3              MR. McGUIRE:  Your Honor, we would call Richard A.

4    DeMillo.

5              COURTROOM DEPUTY CLERK:  Good afternoon, sir.  Please

6    raise your right hand.

7                   (Witness sworn)

8              COURTROOM DEPUTY CLERK:  Thank you.  Please be

9    seated.  Please pull up close to the microphone.  You can

10   adjust the microphone if you need.  It is very important that

11   we all be able to hear you.

12             I'm going to ask you to state your first and last

13   name again for the record, and then please spell those names

14   for the record.

15             THE WITNESS:  Richard DeMillo.  R-I-C-H-A-R-D.  My

16   last name is spelled D-E, capital, M-I-L-L-O.

17        Whereupon,

18                   RICHARD DEMILLO, PH.D.,

19        after having been first duly sworn, testified as follows:

20                   DIRECT EXAMINATION

21   BY MR. MCGUIRE:

22   Q.   Mr. DeMillo, I'm Robert McGuire, counsel for Coalition for

23   Good Governance.  You submitted two affidavits in this case;

24   yes?

25   A.   Yes.
```

1   Q.   They were Documents 277 and 285.  You said that your

2   primary focus and your experience there was information,

3   communication, cybersecurity, and computer system testing?

4   A.   That is my background, yes.

5   Q.   I'm going to ask you some questions in that area of

6   expertise.  Mr. DeMillo, do you have an opinion as to

7   whether --

8          THE COURT:  And you are a professor at Georgia Tech?

9          THE WITNESS:  I'm a professor at Georgia Tech.

10  Q.   **(BY MR. McGUIRE)**  You have also worked for other places as

11  well; yes?

12  A.   I have, yes.

13       Would you like to know some of them?

14  Q.   Have you worked at Hewlett-Packard?

15  A.   I have worked at Hewlett-Packard.  I was the chief

16  technology officer at Hewlett-Packard.

17  Q.   Have you worked for the Department of Defense?

18  A.   I have worked for the Department of Defense.  I ran a

19  project called the software test and evaluation project for the

20  Department of Defense.

21  Q.   And in those positions, were you dealing with

22  cybersecurity and computer system testing?

23  A.   Frequently, yes.

24  Q.   Mr. DeMillo, I'm going to ask you if you have an

25  opinion -- have you formed an opinion on the question of

132

1   whether Georgia's DRE system can be trusted to accurately

2   deliver election results?

3   A.    Yes, I have.

4   Q.    What is your opinion?

5   A.    My opinion is it is not a trustworthy system.

6   Q.    Okay.  Why do you have that opinion?

7   A.    Well, cybersecurity depends on three pillars of trust:

8   Protection, detection, and containment.  And I think in all

9   three of those areas, there are unanswered questions that

10  experts who have looked at these systems, experts who know

11  about cybersecurity have about Georgia's system, the

12  vulnerabilities we heard about this morning.  There needs to be

13  a rather full explanation of what protections are in place in

14  order to address those vulnerabilities.  We heard the

15  nonexistence of paper ballots.  That makes it difficult,

16  impossible to detect the vulnerability breaches when they

17  occur.

18       And we have yet to hear anything about containment.  So in

19  the event of a catastrophic breach, how do you go forward?  How

20  do you conduct the election?

21  Q.    So I want to take that conceptual framework, and I want to

22  put what happened in this case -- the allegations in this case

23  in the context of that framework.

24       So talk about protection.  To your knowledge, based on

25  your understanding of the allegations in this case, has that

1  pillar been satisfied?

2  **A.** So you hear about vulnerabilities in computer systems.

3  And these voting machines, like this one, are just computers.

4  And the way that you protect against intrusions is to

5  understand those vulnerabilities and build in safeguards.

6  But you have to go through the vulnerabilities one-by-one,

7  and you have to explain how about that vulnerability is going

8  to be addressed.

9  I can give you just a couple of examples of that if you

10  would like.

11  **Q.** Real briefly.

12  **A.** So you want physical security. You want to know that the

13  equipment has been secured, that someone can't come in and

14  tamper with it. But in the case of Georgia, we have no such

15  assurance. We really don't know very much about the physical

16  security of the systems.

17  You have to be able to have logical security. These

18  systems, particularly the DREs, are built on top of 25-year-old

19  computer technology that really didn't have security

20  subsystems. There is nothing like an AV system, an antivirus

21  system, that sits on this computer.

22  And so all of the things that you would do in the normal

23  course of events with modern computers to say, well, here is

24  how I address this vulnerability is lacking.

25  **Q.** So rather than go through the other pillars, I'm just

134

```
1    going to jump into something specific.  So this machine -- you
2    see this machine in front of you?
3    A.   Yes.
4    Q.   Now, you saw Professor Halderman hack this machine?
5    A.   Yes.
6    Q.   So we know this machine is compromised; yes?
7    A.   Yes.
8    Q.   If the State of Georgia came to you and said, Mr. DeMillo,
9    we want to find out if this machine is compromised, could you
10   figure that out?
11   A.   You could conceivably figure it out, yes.
12   Q.   What would you have to do for this machine to figure that
13   out?
14   A.   So what I would probably do is open the machine up, attach
15   some probes to terminals in the back of the machine, and read
16   the memory of the machine just like you would read a disc on a
17   PC.  I would compare that image to the latest software that we
18   had from Diebold to see if it was a match or not.
19   Q.   If you did that, how long do you think it would take to do
20   this machine?
21   A.   I'm guessing, but I would guess about a half hour per
22   machine.
23   Q.   Now, if Georgia has 27,000 of these machines, how long
24   would it take to do that?
25   A.   It would take -- it would take 14,000 hours to do that.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

135

1  Q.   And then if you did that, the system would be good; yes?

2  A.   No.   Because the infection was spread by a contaminated

3  memory card.   So as soon as you insert that memory card back

4  into the machine, the machine is contaminated again.

5  Q.   So you have to check memory cards also?

6  A.   You have to check all the memory cards.

7  Q.   Same process?

8  A.   Basically, the memory card readers are commodity devices.

9  You insert the memory card and check to see what is there.

10 Q.   We have heard about other components of the system like

11 the GEMS server, the optical scan units, e-poll books.

12      Would those have to be checked also?

13 A.   Yes.   But very different processes for those.

14 Q.   Shorter?   Quicker?

15 A.   Well, in the case of GEMS servers, it is really a

16 difficult problem because we're talking about software that

17 hides in the deep recesses of the operating system.   Sometimes

18 in the software that loads as the machine is starting -- it is

19 there to not be detected.   So it is in many cases impossible to

20 find it.

21 Q.   Let's say you can check every single component that

22 Georgia uses in its election system.   You did that, and you had

23 enough time, and you took care of that.

24      Would the system then be trustworthy to accurately deliver

25 election results?

136

```
1   A.    No.

2   Q.    And why not?

3   A.    Because the second pillar isn't in place.  You have to be

4   able to detect.  And without a written record of voter intent

5   to conduct an audit against, you have no way of determining

6   whether or not the votes have been changed.

7   Q.    So when you say written record, what do you mean?

8   A.    A paper ballot.  Hand-marked paper ballot.

9   Q.    So do machines like this ever have any kind of written

10  record?

11  A.    No.                                          ,

12  Q.    Does Georgia's DRE system have the capability to produce

13  an independent and paper audit trail of every ballot cast?

14  A.    No.

15  Q.    How do you know that?

16  A.    Because I know the architecture of the machines.  When I

17  was at Hewlett-Packard, I used to manufacture machines very

18  similar to this.  If the machine is compromised, all the memory

19  in the machine is compromised.  It doesn't matter how often you

20  print it it is going to come out to be whatever the malware

21  wants it to be.

22  Q.    Are you familiar with Georgia's machines in particular?

23  A.    Am I familiar with Georgia -- so I don't think that there

24  is a Georgia machine.  I think these machines are manufactured

25  by companies like Hewlett-Packard, like Diebold for mass
```

1   market.   They are commodity electronics.

2        They have components that come from all over the world.

3   Sometimes those get packaged into machines that are delivered

4   to Georgia, sometimes to California.  And so, you know, the

5   idea of a Georgia machine from the point of cybersecurity

6   doesn't really make a lot of sense.

7   Q.   So you heard the cross-examination of Professor Halderman;

8   yes?

9   A.   Yes.

10  Q.   Do you put any significance in the fact that he's looked

11  at versions 4.3, 4.4, and 4.6 but not 4.5?

12  A.   No, not really.  If you -- even if you assumed that the

13  ballot station software were perfect, they were clean, they

14  weren't contaminated, you have to understand that the hardware

15  and software that runs on these machines is commodity

16  electronics.

17       It is a Windows CE operating system that is notoriously

18  insecure.  It doesn't have a security subsystem, for example.

19  And that is what you would compromise.

20       If I were going to approach this machine, I probably

21  wouldn't start with the ballot station software.  I would start

22  with known compromises for Windows CE.

23  Q.   Are you familiar with the National Academy of Sciences

24  report?

25  A.   I am.

```
 1   Q.    Did that address a system that has been compromised by
 2   being available to the internet for six months, or did it
 3   address -- what did it address?
 4   A.    Well, it addressed the vulnerabilities of the system.
 5          MR. SALTER:  Your Honor, one objection for the record
 6   if I may.  It assumes facts not in evidence.  But go ahead.
 7          THE COURT:  All right.  So noted.
 8   Q.    (BY MR. McGUIRE)  Let me ask you the question again.  Your
 9   second affidavit attached the National Academy of Sciences
10   report?
11   A.    Yes.
12   Q.    Yes?
13   A.    Yes.
14   Q.    So did that report look at DREs in their pristine state or
15   DREs in a compromised state?
16   A.    So the National Academy report looked at the inherent
17   vulnerabilities of DREs, in particular paperless DREs, and said
18   that they are so dangerous that they shouldn't be used in any
19   further elections.
20   Q.    So if you start with DREs that have been evaluated that
21   way and you make them accessible to anyone in the world over
22   the internet for six months, does that make them in your
23   opinion more or less safe?
24   A.    Well, it certainly doesn't help.  It makes them more
25   vulnerable, I think.
```

139

```
 1    Q.    Now, the defendants have represented in their opening
 2    statements that they do testing.
 3    A.    Uh-huh (affirmative).
 4    Q.    Have you observed any of that?
 5    A.    I have observed logic inaccuracy testing.
 6    Q.    Does that set your mind at ease as far as the security of
 7    these systems?
 8    A.    No.  It really doesn't tell you anything at all about the
 9    accuracy of the system as they are used in elections.  And in
10    particular, it doesn't tell you anything about the accuracy of
11    the systems when they are under attack.
12    Q.    Mr. Salter's opening also represented that DREs can be
13    audited.  Are you aware of that?
14    A.    No.
15    Q.    How would you audit a DRE?
16    A.    Well, the very idea of an audit requires two independent
17    sources of information or two independent transactions to
18    compare against each other.  And the idea of auditing a single
19    machine is sort of circular reasoning.
20          If the machine is compromised, you have to assume that
21    everything in the machine is compromised.  Therefore anything
22    the machine tells you about its internal state is unreliable.
23    Q.    What about the safeguard of being able to run a recount?
24    A.    Same thing.  Same thing.  You are just adding the numbers
25    up again and expecting to get the same result.
```

1   Q.   We have heard some testimony or some questioning about the

2   accuracy of paper ballots in recording voter intent versus

3   optical scanners -- read by optical scanners --

4   A.   Yes.

5   Q.   -- versus DREs?

6   A.   Right.

7   Q.   The implication, as I understood it, was that DREs are

8   more accurate.  Do you have a view on that?

9   A.   Well, so let me say at the beginning of my answer that

10   recording human choices is an inherently error prong process.

11   So any way of doing that is going to be subject to error.

12        I'm not aware of any studies that say that DREs are any

13   inherently -- any more inherently reliable at recording human

14   choices than paper ballots.

15   Q.   How can DRE be inaccurate in recording your choice?

16   A.   Well, a lot of things happen.  So one thing that happens

17   is that when a machine is compromised what gets compromised are

18   the relationship between the touches that a voter makes on the

19   screen and the names of candidates that are supposed to be

20   voted for when the screen is touched.  And that would destroy

21   the accuracy of the vote.

22        Even if the machine wasn't compromised by malicious

23   software, these are old machines.  And they require constant

24   calibration.  Now, in fact, the machines -- the contemporaries

25   of these machines, the little small handheld devices that we

1    used to sell, when you started the machines up would first ask

2    you to calibrate the screen.  And that was because they can't

3    really tell when you touch the screen have you touched exactly

4    the mark that you intend to touch.

5    Q.    So relying on what you know of cybersecurity and computer

6    system testing, what would your solution be to make the

7    security of this system better?

8    A.    Well, as I said, I think these are designed to be unsafe.

9    It is not clear that you can design in security to the system

10   that we have in front of us here.  I think introducing a

11   voter-verified paper trail would help a lot.  I think replacing

12   these machines with hand-marked paper ballots would

13   dramatically improve the system.

14   Q.    Now, the defendants have accused the plaintiffs of being

15   Luddites.  Do you know what a Luddite is?

16   A.    I do know what a Luddite is.

17   Q.    What is a Luddite?

18   A.    A Luddite is a person who doesn't like technology and is

19   prone to go out and smash them whenever he finds them.

20   Q.    Do you consider yourself a Luddite?

21   A.    This is a strange career for a Luddite.

22   Q.    And would paper -- going to paper ballots be a Luddite

23   solution to this problem?

24   A.    No.  I think every -- every cybersecurity expert, every

25   computer scientist that I know of who has weighed in on this

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

142

```
 1    matter thinks that paper is the safest way to conduct
 2    elections.
 3         The weaknesses in paper are well-known.  But you don't
 4    have the unknown weaknesses of cybersecurity to worry about.
 5    Q.   And are you aware of how many Americans vote using paper
 6    ballots?
 7    A.   I'm not.
 8              MR. McGUIRE:  All right.  I'm going to stop there and
 9    turn it over to Mr. Cross.  Thank you.
10              THE COURT:  I just want to ask you to clarify what
11    you said about the cards.  I just couldn't catch what -- I
12    missed something in terms of how to detect whether a card has
13    been infected.
14              THE WITNESS:  So you would read the card.  There are
15    card readers.  The old-fashioned computers used to have these
16    slots that you would fit these big fat cards into.  You would
17    read it just like you would read a disc.
18              Then there are programs that pull the information off
19    those cards.  And you can use it to compare it to other files.
20    And if those files match, then you would know that the card
21    wasn't in its original -- or was in its original state.
22              THE COURT:  All right.  Do you know whether that is
23    being done or not?
24              THE WITNESS:  I don't know.
25              THE COURT:  All right.
```

143

```
1              MR. CROSS:  Very briefly, permission to approach the
2    witness with an exhibit.
3              THE COURT:  All right.
4                        DIRECT EXAMINATION
5    BY MR. CROSS:
6    Q.   Mr. DeMillo, I hand you what has been marked as
7    Plaintiffs' Exhibit 5.
8         Let me ask you a couple of foundational questions if I
9    may.  Are you familiar with something called the SAFE
10   Commission in Georgia?
11   A.   I am, yes.
12   Q.   And what do you understand that to be?
13   A.   I understand it to be the commission that the Secretary of
14   State formed to make recommendations for acquiring the next
15   generation of voting systems.
16   Q.   Is there a member of that SAFE Commission selected by
17   Secretary Kemp who is an information technology and
18   cybersecurity expert?
19   A.   Yes.
20   Q.   What is his name?
21   A.   His name is Professor Wenke Lee.
22   Q.   Do you know him personally?
23   A.   I do.  He is a colleague.
24   Q.   At Georgia Tech?
25   A.   Yes.
```

1   Q.   And did you attend a meeting of the SAFE Commission just

2   last week?

3   A.   I did.

4   Q.   And did Mr. -- did Professor Lee put up a presentation at

5   the meeting?

6   A.   He did, yes.

7   Q.   And was that meeting in sort of a private lunch session of

8   the committee as opposed to the public forum?

9   A.   It was a smaller room.  But the public was invited in to

10  view the session.

11  Q.   And did you observe Professor Lee's presentation?

12  A.   I did.

13  Q.   And did that -- what did that presentation concern just

14  very generally and briefly?

15  A.   It was --

16        MR. SALTER:  We're getting into hearsay.  I just want

17  to make an objection.  I would move to strike.

18        THE COURT:  He is talking about the subject matter of

19  the presentation.  You may proceed.  Objection overruled.

20        But if there is going to be hearsay --

21        MR. CROSS:  Let me do this.  I'm going to move in

22  Exhibit 5 once he takes a look at it and authenticates it.

23        But the argument on hearsay, I will say, Your Honor,

24  is the SAFE Commission is organized by Secretary Kemp.  He runs

25  it.  He picked the people.  So this would fall under a party

```
 1    opponent admission we would submit, Your Honor, because this
 2    is, in fact -- it is funny they laugh.  It is almost offensive.
 3    But this is the only thing they pointed to in all their
 4    briefing that the Secretary of State has done to secure the
 5    election.  This is it.  They say it is his initiative.  And
 6    this is the man he handpicked to be his cybersecurity expert.
 7              MR. BARNES:  Bring him in here.
 8              THE COURT:  All right.
 9              MR. CROSS:  Please do.  Sorry, Your Honor.
10              THE COURT:  All right.  Enough.  Find out what the
11    subject matter is.  And if there is a presentation, then he can
12    present -- provide a copy of the presentation.
13              MR. CROSS:  Thank you, Your Honor.
14    A.    It was a tutorial to the commission members on the basics
15    of cybersecurity.
16    Q.    (BY MR. CROSS)  Take a look at Exhibit 5 you have in front
17    of you, and let me know if that looks to be a fair and accurate
18    copy of the presentation that Professor Lee made at the SAFE
19    Commission meeting just last week.
20    A.    Yes, it looks like the same presentation.
21              MR. CROSS:  Your Honor, we move Exhibit 5 into
22    evidence.
23              MR. SALTER:  Objection, Your Honor.
24              THE COURT:  What?
25              MR. SALTER:  Objection.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1              THE COURT:  You have an objection?
2              MR. SALTER:  I have a hearsay objection.
3              THE COURT:  All right.  Well --
4              MR. CROSS:  Your Honor, the additional argument I'll
5    make just briefly, one, it is not hearsay for the reason I
6    said.  The additional argument I will make is we don't frankly
7    have to put it in for the truth because it directly contradicts
8    their position.  And so even just to get it in front of the
9    Court to show that the statements were made by their own
10   cybersecurity expert --
11             THE COURT:  Well, let me see a copy of it.
12             MR. SALTER:  I didn't mean to interrupt.
13             THE COURT:  You made your objection.  We're going
14   to -- I can always in the end determine it is hearsay.  But
15   we're going to proceed for now.
16             MR. CROSS:  Thank you, Your Honor.  I'll also just
17   note for the record, if I may, the rules of evidence don't
18   strictly apply in a preliminary injunction hearing.  And Your
19   Honor is entitled to hear hearsay as well.
20             That was all I had, Your Honor.  Thank you.
21             THE COURT:  Could I see the exhibit?
22             MR. CROSS:  Yes, please.  I handed him the marked
23   copy, Your Honor.
24             THE COURT:  That is all right.
25             So just when we say AV industry in 1998 or in 2000,
```

1    AV refers to?

2                THE WITNESS:  Antivirus.

3                THE COURT:  Antivirus.  All right.

4                Are you through?

5                MR. CROSS:  I just didn't know if you had any

6    questions.

7                THE COURT:  No.

8                MR. CROSS:  Thank you, Your Honor.

9                MR. SALTER:  Can I ask for a ruling from the Court?

10   I'm not sure where my bounds are as to this exhibit that was

11   just tendered by Brother Cross.

12               Is the Court going to admit it or simply just allow

13   some testimony in as kind of a treatise?

14               THE COURT:  Well, this is the presentation that was

15   given?

16               THE WITNESS:  Yes.

17               THE COURT:  I mean, I don't have to accept it for the

18   truth of the matter.  But I'm going to allow it for what was --

19   it was presented, and certainly it seems to me one of the

20   points that the state has is that you are moving forward.  So I

21   think, you know, it is relevant in that regard.  I don't have

22   to accept it all for the truth of the matter asserted in here

23   though.  But for the high points, that is something else.

24               MR. SALTER:  May I examine from it then, Your Honor,

25   subject to our objection that it is --

```
1              THE COURT:  You haven't been given a copy?
2              MR. SALTER:  I have a copy, Your Honor.  Counsel
3     provided me with a copy.
4                         CROSS-EXAMINATION
5     BY MR. SALTER:
6     Q.   Mr. DeMillo -- is it DeMillo or DeMillo?
7     A.   DeMillo.
8     Q.   I'm John Salter.  Good to meet you, sir.  I'll try to move
9     along as quickly as I can.
10         You have performed a study of the overall security system
11    at the state before?  You participated in one through Georgia
12    Tech?
13    A.   I supervised one.
14    Q.   You supervised.  Was this back in 2007 for Karen Handel,
15    Secretary of State at the time?
16    A.   Yes.
17    Q.   Okay.  I will try to --
18             MR. SALTER:  May I approach the witness, Your Honor?
19             THE COURT:  What?
20             MR. SALTER:  May I approach the witness?
21             THE COURT:  Yes.
22             MR. SALTER:  I apologize.  I don't have enough copies
23    for the Mongol horde of lawyers here on the other side of me.
24    Your Honor, if y'all want one.
25             I don't know if we'll tender this or not.  But I
```

1   wanted to have it present if the witness wanted to read it.

2   Q.   (BY MR. SALTER)   Can you identify the title page of that

3   document, Professor?

4   A.   Security Study of the Processes and Procedures Surrounding

5   Electronic Voting in Georgia.

6   Q.   And I'm going to stick and move.  If I confuse you, let me

7   know.  But I'm going to try to move along because I promised

8   five minutes, and that was the representation.

9        So when was this study done?

10  A.   It was delivered -- well, you see on the front page it was

11  delivered May 2008.  So it was done in the seven months leading

12  up to that.

13  Q.   And was this -- was the final report actually made to the

14  Secretary of State at the time?

15  A.   Yes.

16  Q.   And did this assume -- did this study basically assume the

17  similar kind of software vulnerabilities that you have

18  testified today --

19  A.   Well, this was --

20  Q.   -- as a potential problem?

21  A.   This was 2007.  So 2007 we knew much, much less about the

22  vulnerabilities than we do today.

23  Q.   Well, it did assume that -- you didn't perform a software

24  audit of e-voting machines because you accepted the findings of

25  previous software security studies; correct?

150

```
 1   A.    I'm not an author of the report.

 2            MR. CROSS:  Your Honor, by Mr. Salter's own

 3   objection, this would appear to be hearsay.  Nor does this

 4   witness appear on this document.  Could we --

 5            MR. SALTER:  It is actually a Government report.

 6            MR. CROSS:  I'm sorry.  Could we just maybe have some

 7   context of what it is and what we are doing.

 8            MR. SALTER:  I'm not tendering it yet.  I am using it

 9   as a learning treatise.  He actually participated in the study.

10   It was actually funded.  It is a Georgia Tech -- if you want to

11   call it a public document, Government report, it could come in

12   under Rule 4, the exception to the hearsay rule.

13            I'm just using it to examine this witness as a

14   proffered expert on cybersecurity, including the systems in

15   action in Georgia.

16            THE COURT:  All right.  Well, you can ask him

17   questions about it, and I'm not sure where you are going

18   though.

19            To the extent you know -- because I know you

20   participated in the review.  I'm not sure you participated in

21   the writing of the study.

22            THE WITNESS:  So these authors worked for me.  So --

23   and I am familiar with the methodology they used.  I'm not an

24   author of this report.

25            THE COURT:  All right.
```

151

1   Q.   (BY MR. SALTER)   But you directed some of the study?

2   A.   I supervised the study.

3   Q.   Supervised some of the study.  Are you familiar with some

4   of the findings that were made and furnished to the Secretary

5   of State?

6   A.   Some of them, yes.  It has been a while since I have

7   looked at it.

8        COURT REPORTER:  Y'all were talking at the same time.

9   I cannot get you.

10  Q.   (BY MR. SALTER)  She's going to get on to us.  Okay.  Are

11  you with me?

12       Were you familiar with the findings that were presented to

13  the Secretary of State back in 2007 or '8?

14  A.   Yes.

15  Q.   And was some of the findings -- I want to ask you if this

16  sounds familiar.  Was some of the findings a concern that a

17  single trusted person could install malicious software on a DRE

18  machine?  Was that a finding?

19  A.   I don't recall.

20  Q.   Okay.  So if you turn to Page 4 of the executive

21  summary -- I'll try not to take you through the whole entire

22  report because we don't have time.

23       MR. SALTER:  And if I could, Amy, if you would light

24  up the ELMO here.

25  Q.   (BY MR. SALTER)  Do you see where it says election

152

```
 1    officials would likely be able to detect certain technical
 2    attacks by voters discovered in previous studies provided that
 3    they are trained to recognize suspicious voter behavior?
 4         Did I read that right?
 5    A.   Yes.
 6    Q.   All right.  And in terms of what that is referencing, it
 7    is talking about the fact that we know even in 2007 and 2008
 8    when this was actually published -- we knew that you could
 9    install if you had free access to it -- if you assume that,
10    that you could install a memory card with a malicious virus on
11    a DRE machine?  We knew that back then, didn't we?
12    A.   We did, yes.
13              MR. CROSS:  Your Honor, again, is this coming in for
14    the truth?  What are we doing here?  This is clearly hearsay.
15              MR. SALTER:  Your Honor, their only theory on why all
16    the other case law doesn't matter is because they told the
17    Court, well, there is a new threat.  This isn't a new threat.
18    It is new that it is Russian and coordinated.
19              THE COURT:  No.  That is not true.  The cases you
20    bring in this court often are based on new technology and new
21    efforts.  They are not necessarily based on Russia in terms of
22    data breach and hacking.
23              So, you know, you can do this.  I think you can
24    examine it.  But I don't know that it obliterates everything
25    else.  And I really think that we would spend a lot better time
```

```
1   if we could also deal with what has happened since that time.
2           But you are welcome to do it.  You can spend all your
3   time on 2008 if you want, ten years ago.
4   A.   Can I respond to your question?
5   Q.   (BY MR. SALTER)  Yeah.  Was it known in 2008 that you
6   could install -- if you had access to a memory card to install
7   malicious virus malware on a DRE machine?
8   A.   The question is:  Who do you mean by you?  So in 2007, we
9   didn't know about the kind of threat called the advanced
10  persistent threat.  This is a kind of threat that is mounted by
11  organized crime, by nation states using advanced techniques.
12          The cartoon that the Judge noted in Wenke Lee's
13  presentation makes a humorous point about that.  But it
14  nevertheless is the point that what has happened since 2008 is
15  that these people have much more capabilities than they had
16  in -- you know, in this time frame.
17          And so the things that we could do back then can now be
18  done over a long period of time using very complicated tools,
19  using advanced capabilities.
20          THE COURT:  Things that we can do back then, what do
21  you mean?
22          THE WITNESS:  So what it would take to install
23  malware on a single voting machine in 2007 has now been
24  automated to the point where an advanced persistent threat can
25  make a process of it.  They can just like manufacture malware
```

154

1   to send out to these machines without even -- without even

2   contacting someone that is internal to the system.

3   Q.   (BY MR. SALTER)  My question -- if I can direct you back

4   to my question, I don't want to be here all day.  In terms of

5   the demonstration that was made this morning with Mr. Halderman

6   -- Professor Halderman -- do you recall that? -- where he

7   inserted a memory card.  He had a programmed virus on it, and

8   you insert that in -- that was something that has been known

9   for more than a decade as a potential vulnerability with DRE

10  machines; is that fair?

11  A.   Yes.

12  Q.   Okay.  And one of the things in terms of going in with a

13  memory card and you unlock the key -- remember how he had to

14  unlock the key?  You had to have a key; right?

15  A.   (Witness nods head affirmatively.)

16  Q.   Can you answer?

17  A.   Yes.  But that misstates what the demonstration was.

18  Q.   No.  He had a key; correct?

19  A.   But he was playing the role of a poll worker.  He wasn't

20  playing the role of an attacker.

21  Q.   I'm not arguing with you.  But he had a key?

22  A.   Yes.

23  Q.   He had the memory card?

24  A.   Yes.

25  Q.   And so in terms of a poll worker doing that, using the

```
 1   key, putting the memory card in there, is that the kind of
 2   thing that in terms of y'all's studying back in 2008 that you
 3   referenced that kind of thing if observed by another poll
 4   worker would be a suspicious activity and likely to be
 5   discovered; fair?
 6   A.   No.
 7   Q.   Okay.
 8   A.   No.
 9   Q.   Let's talk about this.  This is Page 4 where it says, even
10   if you were a poll worker, a single trusted person choosing to
11   act against the state may find an opportunity to alter the
12   software on a machine.  That is basically what we heard about
13   this morning; fair?
14   A.   Right.
15   Q.   Okay.  By limiting an individual's access to the voting
16   equipment, reliance on each individual's trust can be reduced;
17   correct?  Did I read that correctly?
18   A.   Yes.
19   Q.   Do you know whether or not this recommendation was acted
20   on and that there was a reg implemented to increase and train
21   poll workers regarding watching not only voters inserting
22   something but also other poll workers potentially tampering
23   with the machine?
24   A.   Do I know that?
25   Q.   Yes.
```

```
1    A.    No, I do not know that.
2    Q.    Fair enough.  In terms of -- I want to flip to this.
3    Well, let me ask one other thing.
4         Are you aware -- let me say this.  Is it reasonable to
5    expect any software program to be error-free?
6    A.    No.
7    Q.    Absolutely not?  Knowing that, isn't it reasonable for
8    people to design a system that has enhanced consistently
9    implemented physical security measures regarding the software
10   components and the chain of custody involved that is implicated
11   by that; fair?
12   A.    Physical security of software components?
13   Q.    Locking up the actual software devices that make the
14   memory cards; fair?  You would lock that machine up?
15   A.    Those are connected to the internet.
16   Q.    Are you -- hold on.  Is it your testimony that your
17   opinions are based on the idea that the computers that form --
18   that populate the ballots that make the memory cards -- is it
19   your testimony that that is connected to the internet?
20   A.    The GEMS servers are from time to time connected to the
21   internet, yes.
22   Q.    That is the basis of your opinions here today?
23   A.    I'm reading the training manuals that Diebold distributes
24   with its machines.
25   Q.    So that -- so yes, the basis of your opinions today is
```

```
 1   that the critical GEMS servers that populate the ballots for
 2   the state and create the memory cards -- that that is sometimes
 3   connected to the internet?  That is your opinion?
 4   A.   Yes.
 5   Q.   One of the things you have testified that you are talking
 6   about here in this presentation or whatever it was last week --
 7   do you have a complete and reasonable understanding of the data
 8   encryption that is used by the Secretary of State in the
 9   Secretary of State's IT department?
10   A.   No.
11   Q.   Do you have a -- same question as to the blocking
12   parameters that are used in the Secretary of State's IT
13   department in relation to election security.
14   A.   I don't know what blocking parameters means.
15   Q.   In terms of how -- do you have personal direct knowledge
16   regarding how updated the security patches are on the critical
17   infrastructure technology equipment used by the Secretary of
18   State's IT department?
19   A.   No.
20   Q.   Do you have personal, direct knowledge regarding the
21   penetration testing and the methodology that is used?
22            THE COURT:  All right.  Listen, if you want to enter
23   into a stipulation as to all of those questions, since I know
24   none of it has been provided to me and it was very -- and might
25   have all been relevant, could have been under seal -- but there
```

```
 1   is no indication that any -- because of the affidavits given
 2   here that these individuals have been provided that access.
 3             MR. SALTER:  They haven't.  Absolutely not.  That is
 4   my next question.
 5             THE COURT:  So then why don't you stipulate?  We
 6   don't have a jury here.  Let's save time.  Stipulate and just
 7   move on.
 8             MR. SALTER:  Do y'all stipulate that the plaintiffs
 9   have no knowledge regarding penetration technology
10   (unintelligible) --
11             COURT REPORTER:  I'm sorry, Mr. Salter.  I just need
12   you to slow down, please.
13             MR. SALTER:  Yes, ma'am.  I'm sorry.
14             COURT REPORTER:  I got about four words.
15             MR. BROWN:  We will stipulate that there is no
16   evidence in the record describing what he is talking about and
17   that we're unaware of whether Professor DeMillo in his capacity
18   at Georgia Tech or otherwise has knowledge of that.
19             And Mr. Salter is way over his time and eating into
20   Fulton County's time and eating into our time later today.
21             MR. SALTER:  Fair enough.
22   Q.   (BY MR. SALTER)  But do you have any personal knowledge to
23   that in terms of basing your opinions regarding how we use
24   penetration testing?
25   A.   I'm not aware that you use penetration testing.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

159

```
1           MR. SALTER:  I will roll through this and wind up and
2    then let --
3           THE COURT:  Well, I'm going to -- unless Fulton
4    County wants to -- I'm going to let Fulton County's counsel
5    appear at this point unless --
6           MS. BURWELL:  I will concede my time.
7    Q.   (BY MR. SALTER)  Mr. DeMillo, can you testify from your
8    personal knowledge regarding a single instance in which a flash
9    drive or some other medium-type device was inserted -- has been
10   inserted into the server used at the Secretary of State's IT
11   department that led to a vote being changed on the DRE machine?
12   A.   I'm not -- ask the question again.  I'm not sure what you
13   are asking.
14   Q.   Are you aware of a single instance in which a corrupted
15   flash drive or other medium was inserted into the server at the
16   Secretary of State's office, the one that is kept behind -- I
17   will represent to you is kept behind a locked door -- that
18   somehow resulted in a malicious virus that changed a vote in
19   Georgia?
20   A.   I don't know how I would be aware of that.
21   Q.   Do you have -- can you testify to an instance in which
22   that has happened anywhere in the country under election -- in
23   a real election anywhere in the country?
24   A.   Ask me again what you are saying.
25   Q.   I was removing it out of the Georgia Secretary of State's
```

1    server that populates the ballots that creates the memory

2    cards.

3        Are you aware of a single instance anywhere in the country

4    where a virus was propagated down through the server that

5    creates the ballot format, through the memory card, on to a DRE

6    machine?

7    A.    I don't think so, no.

8            MR. SALTER:  I'm over my time, Judge, and I know it,

9    and I'll hush, but I think that establishes where we are.

10           THE COURT:  All right.  And I trust then that you are

11   going to present some actual affirmative evidence from the

12   Secretary of State's office.

13           MR. SALTER:  Could I ask one more question?

14           THE COURT:  No.  No, you cannot.

15           Is this witness excused?

16           MR. McGUIRE:  Yes, Your Honor.

17           MR. CROSS:  Your Honor, just one question if I may.

18           THE COURT:  Yes.

19                    REDIRECT EXAMINATION

20   BY MR. CROSS:

21   Q.    Professor DeMillo, do you have Professor Lee's

22   presentation in front of you?

23   A.    Yes, I do.

24   Q.    So Mr. Salter turned you to the last page, operation and

25   maintenance and some best practices there.  Do you see that?

161

```
1   A.    The last page?
2   Q.    Yes.
3   A.    Yes.
4   Q.    That is the one he put up?
5   A.    Yes.
6   Q.    Just very briefly, do you see the one on the page a few
7   pages before, same heading, with the subheading specification
8   and design and it says paper ballots done right?
9   A.    Uh-huh (affirmative).
10  Q.    Do I read this correctly that even with the best practices
11  that Mr. Salter put up the only specification and design for an
12  election system that Professor Lee offered in this presentation
13  that has the characteristics of verifiably cast as intended,
14  verifiably collected as cast, and verifiably counted as
15  collected, and cannot by completely controlled -- or be
16  completely controlled or manipulated by any cyber component --
17  the only specification design are paper ballots done right with
18  auditing?
19  A.    Yes.
20          MR. CROSS:  Thank you.
21          THE COURT:  Do you want your -- what were you
22  planning to do, Mr. Salter?
23          MR. SALTER:  Could we tender that, Judge.  We'll
24  offer that as D-1.
25          MR. McGUIRE:  We have nothing else for the professor.
```

162

```
 1              THE COURT:  Do you have any objection to the exhibit
 2    being offered by Mr. Salter?
 3              MR. SALTER:  Let me identify it.  I think it is the
 4    2008 report by Georgia Tech in which Mr. -- is it Professor
 5    DeMillo?
 6              THE WITNESS:  Professor, Dr. DeMillo.
 7              MR. SALTER:  -- that Dr. DeMillo had some role in
 8    supervising the report.
 9              Any objection?
10              MR. CROSS:  Your Honor, our position would be that
11    they should be received the same way.  So we have no objection
12    if he withdraws his objection to ours.  If he is going to stand
13    on his objection, then we're forced to make a hearsay
14    objection.  I say just let it all come in and let Your Honor
15    figure out the facts.
16              THE COURT:  They are both basically presented to the
17    Government as part of the Government process.  They are both
18    admitted.
19              MR. CROSS:  Thank you, Your Honor.
20              THE COURT:  Thank you.
21              Who is your next witness?
22              MR. CROSS:  Your Honor, the plaintiffs call to the
23    stand Chris Harvey.
24              THE COURT:  How long do you anticipate?
25              MR. CROSS:  I'm going to try to stick to 15 minutes,
```

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing **DEFENDANT ROBYN A. CRITTENDEN'S NOTICE OF LIMITED PROFFER OF EVIDENCE** on all parties by electronically filing it with the Clerk of the Court using the Odyssey eFileGA system, which will automatically send an email notification of such filing to counsel for the parties.

This 9th day of January, 2019.


/s/ Josh Belinfante
Josh Belinfante

Fulton County Superior Court
***EFILED***QW
Date: 1/9/2019 4:14 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD               )
GOVERNANCE, RHONDA J. MARTIN,    )
SMYTH DUVAL, and JEANNE DUFORT,  )
    Plaintiffs,                  )
                                 )
v.                               )      Civil Action File No.
                                 )      <u>2018CV313418</u>
ROBYN A. CRITTENDEN,             )
Secretary of State of Georgia, et. al.  )
    Defendants.                  )
_____)

## <u>ORDER ON DEFENDANTS' MOTION TO DISMISS COUNT 2 AND COUNT 3</u>

## <u>OF PLAINTIFFS' PETITION</u>

The Court having heard oral argument on Defendants' Motion To Dismiss Count

2 and Count 3 of Plaintiffs' Petition and Defendants and Plaintiffs having been heard, and

the Plaintiffs' Petition having been read and considered,

It is hereby ordered and adjudged as follows:

1.

"Under O.C.G.A. § 9-11-12(b)(6) a motion to dismiss for failure to state a claim

upon which relief can be granted should not be sustained unless 1) the allegations of the

complaint disclose with certainty that the claimant would not be entitled to relief under

any state of provable facts asserted in support thereof; and (2) the movant establishes that

the claimant could not possibly introduce evidence within the framework of the

complaint sufficient to warrant a grant of the relief. Nevertheless, where the face of the

complaint demonstrates that the plaintiff can prove no set of facts to support an essential

element of a claim, dismissal of that claim is appropriate. Even when a complaint is

liberally construed, there still must be some legal basis for recovery." Lord v. Lowe 318

2

Ga. App. 222 (2012)

2.

As to Plaintiff's allegations in Count 2 and Count 3 the Court finds there is no basis for recovery even if all allegations are deemed correct.

3.

Count 2 alleges that the individual Plaintiff's fundamental right to vote have been infringed in violation of the 14th Amendment.

4.

In Favorito v. Handel 285 Ga. 795 (2009) the Supreme Court of Georgia ruled that the establishment of uniform DRE voting system did not violate equal protection.

5.

The Plaintiffs have not alleged that their right to vote was denied or infringed.

6.

In Count 3 the Plaintiffs' allege that they were denied equal protection under the 14th Amendment because voting on DRE is less effective than those voters who used paper ballots.

7.

In Favorito v. Handel 285 Ga. 795 (2009) the Court held

"We cannot see how Georgia has violated the Equal Protection Clause of the 14[th] Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other." Jenness v. Fortson 403 U.S. 431, 440-441. (1971)

8.

The Plaintiffs have not alleged whether they voted on DRE by paper ballot.

9.

Applying all the applicable law to the Plaintiffs allegations in Count 2 and Count 3 the Plaintiffs have failed to state a claim upon which relief can be granted.

Therefore Count 2 and Count 3 of Plaintiffs' Complaint are dismissed.

SO ORDERED this 9th day of January, 2019.

_____
The Honorable Adele P. Grubbs
Senior Judge, State of Georgia
Assisting per Order of Appointment

Fulton County Superior Court
***EFILED***LS
Date: 1/11/2019 1:51 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, et al.,

              **Plaintiffs,**

      v.

ROBYN A. CRITTENDEN,
**Secretary of State of Georgia,**
et al.,

              **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## ORDER ON PENDING MOTIONS

This case came before the Court for a non-evidentiary hearing on the following pending motions: (a) the motions to dismiss filed by each of the defendants: Defendant Robyn A Crittenden ("the Secretary), Defendant Geoff Duncan ("Duncan"), Defendant Fulton County Board of Registration and Elections ("Fulton County Board"), and Defendant Gwinnett County Board of Registration and Elections ("the Gwinnett Board") (collectively "the Motions to Dismiss"); (b) Plaintiffs' Emergency Motion for Inspection of Electronic Election Equipment and Production of Documents ("Plaintiffs' Motion for Inspection"); and (c) Plaintiffs'

Motion for Perservation of Specific Electronic Election Records in Gordon and Murray Counties.   After considering the briefs and responses, and arguments of consel, the Court rules as follows:

### A.   Motions to Dismiss

The Motions to Dismiss raised several distinct issues, ruled upon below:

### 1.   Secretary as Proper Defendant

The Secretary moved to dismiss Count I of the Petition (the Election Contest Claim) as to the Secretary, arguing that she is not a proper "Defendant" for purposes of Plaintiffs' Election Contest Claim.  The Court agrees.  O.C.G.A. § 21-2-520(2) defines "Defendant" as "(C) the election superintendent or superintendents who conducted the contested primary or election."  O.C.G.A. § 21-2-2(35) in term defines "superintendent" as follows:

> Either the judge of the probate court of a county or the county board of elections, the county board of elections and registration, the joint city-county board of election, or the joint city-county board of elections and registrations, if a county has such.

The Secretary does not fall within any of the definitions of "superintendent."

Plaintiffs argue, among other things, that the definition of "election superintendent" found in Chapter 4 of Title 21 should control.  O.C.G.A. § 21-4-3(A) defines "election superintendent": "In the case of any elected state officers, the Secretary of State."  This definition, however, is found in Chapter 4, not

Page 2

Chapter 2, and this election contest concerns Chapter 2. The Court disagrees, and holds that the definition of "superintendent" in the election contest chapter controls and, since the Secretary does not fall within that definition, the Secretary is not a proper party defendant to Count I and should be dismissed from that Count.

### 2.   Whether 159 Counties are Necessary Parties

Fulton County Board and Gwinnett County Board argue that the other 157 election superintendents must be joined in the state-wide election contest because all 159 election superintendents "conducted the contested…election." O.C.G.A. § 21-2-520(2)(C). That section would allow other counties to be joined to this action, but does not require such joinder. In addition, O.C.G.A. § 21-2-525(b) gives the Court "plenary power, throughout the area in which the contested primary or election was conducted, to make, issue, and enforce all necessary orders, rules, processes, and decrees for a full and proper understanding and final determination and enforcement of the decision of every such case." The joinder of the other 157 counties, therefore, is not necessary at this time, and the motions to this extent are denied.

### 3.   *Service of Process*

In their briefs, Defendants argued that the Petition should be dismissed because service had not been perfected on the Defendants.  Plaintiffs have now served Defendants so the motions to this extent are denied.

### 4.   *Coalition as Party to Count I*

Defendants contend that Plaintiff Coalition for Good Governance is not a proper plaintiff to Count I, the election contest.  Coalition does not disagree and has stipulated that it is not a party to Count I.  Defendants' motion to this extent is granted as unopposed.

### 5.   *Failure to State a Claim*

Defendants argue that the Petition fails to state a claim upon which relief may be granted.  The Court disagrees in part.  Defendants have failed to carry their burden of showing that Plaintiffs "would not be entitled to relief under any state of provable facts asserted" in the complaint or that Plaintiffs "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought" as to Count 1 of the Petition.  *Scouten v. Amerisave Mortg. Corp.*, 283 Ga. 72, 73 (2008) (citations omitted).  The motions for failure to state a claim, therefore, are denied as to Count 1.

Notwithstanding the foregoing, by separate Order dated January 9, 2019, the Court granted the motions in part, dismissing Counts 2 and 3 of the Petition, which sought relief under the Fourteenth Amendment for violations of due process and equal protection, respectively, for failure to state a claim.

**B.      Plaintiffs' Motion for Inspection**

Plaintiffs' Motion for Inspection is granted in part, as follows:

1. Plaintiffs (i.e., only Rhonda J. Martin, Smythe Duval, and Jeanne Dufort) are entitled to inspect the "GEMS" reports or complete electronic copies thereof for the November 2018 elections that are maintained by the Gwinnett County Board and the Fulton County Board.  Specifically, Plaintiffs are entitled to the following GEMS reports maintained by the Gwinnett County and Fulton County Boards:

   a. Base Precincts With Races Report

   b. Ballot Image Report

   c. Vote Center With Cards Report

   d. Statement of Votes Cast Report

   e. Summary Report

Reports shall be produced electronically or in hard copy.  Only personnel of the Secretary of State or Fulton or Gwinnett Counties may access the GEMS servers

directly in connection with this inspection. The Plaintiffs shal be provided with copies of the information on CDs upon paying for the

2. Plaintiffs (i.e., only Rhonda J. Martin, Smythe Duval, and Jeanne Dufort) are entitled to inspect the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition, paragraphs 40,41, 44, 45, and 46. Plaintiffs may also examine the Internal memory storage of each such DRE unit. Plaintiffs are ordered not to in any way damage the DRE machines or the information contained therein, nor may Plaintiffs copy, image, save, or retain the DRE machines or the information contained therein.  Plaintiffs may not upload or introduce any information into the DRE machines.  Destructive testing shall not be permitted.

3. Defendants and Plaintiffs shall enter into an appropriate protective order preserving the confidentiality of confidential information, if any, obtained in this discovery prior to the commencement of any inspection authorized under this Order.

**C.    Plaintiffs' Motion Relating to Gordon and Murray Counties**

This motion, which concerned the January 8, 2019 elections in Gordon and Murray, is denied as moot.

SO ORDERED this \\ day of January, 2019.

Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: Counsel for Defendants

Page 7

Page 880

Fulton County Superior Court
***EFILED***QW
Date: 1/14/2019 10:54 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

               Plaintiffs,

               v.

ROBYN A. CRITTENDEN, Secretary
of State of Georgia, et al.,

               Defendants.

Civil Action No. 2018CV313418

## PLAINTIFFS' MOTION FOR CONTINUANCE

Plaintiffs move for a continuance of the upcoming trial of this matter, which is currently set for Thursday, January 17, 2019, because (A) Defendants continue to delay in making the electronic election records and voting equipment available for examination; and (B) even if Defendants immediately begin to cooperate, it is not physically possible to complete even a small portion of the essential examination of the sample of DRE machines selected by the Court prior to trial on Thursday. As of the filing of this Motion, just two days before trial of this case, Plaintiffs have still not been granted access to the electronic voting equipment and related electronic records, access that Plaintiffs first sought six weeks ago by Emergency Motion on November 29, 2018. This alone warrants the granting of a continuance. In addition, Plaintiffs have not been afforded any opportunity to

conduct discovery, and Plaintiffs are entitled to discovery under the Election Contest Statute and the Civil Practice Act.

The Election Contest Statute contemplates that this Court will support the discovery efforts of voters who are challenging the legitimacy of a Georgia election by compelling production of evidence "in like manner and to the same extent as in other civil cases litigated before [the] court." O.C.G.A. § 21-2-525(b). That right to discovery will be frustrated here if Plaintiffs are required to proceed in the constrained timeframe established by the current trial date. This Court certainly has authority to "proceed without delay to the hearing and determination of [this] contest, postponing for the purpose, if necessary, all other business," *id.*, but expedition at the expense of discovery is not required by the statute, for the Election Code expressly contemplates that a contest may be resolved after the office-holder has been sworn in. *See* O.C.G.A. § 21-2-503(c).

What is paramount is the legitimacy of the election. This election contest should not be expedited at the expense of permitting Plaintiffs to ascertain and prove, and the true extent of, the massive irregularities experienced almost statewide in the 2018 election and the resulting unprecedented abnormalities in the voting patterns that "place in doubt the result" of the election. O.C.G.A. § 21-2-527(d).

The sobering allegations in the Petition (¶ 31-33) regarding Georgia's compromised voting system must be reflected in the scope of the discovery

2

process, because the voting system, which was exposed to the public internet for at least six months during 2016-2017, has still not been examined for malware or repaired. The KSU server exposure had the potential to expose every voting machine in the state to malicious code or attack. Because of the unknown depth of issues that could stem from this massive compromise of the system, forensic examiners may encounter far more than routine programming errors, and their work cannot be given short shrift, given the serious implications of the entire system compromise.

The current schedule and scope of electronic records review will not provide Plaintiffs with a fair opportunity to prove the allegations and, crucially, will not provide the Court with the "full and proper understanding" of the case as the Election Contest Statute requires.  O.C.G.A. § 21-2-525(b).   Plaintiffs have done everything possible to accelerate this process thus far (having moved for an examination of priority of essential records more than six weeks ago) and will do everything in their power to complete the examination as soon as possible.  But it is critically important that the Plaintiffs be permitted to choose the discovery necessary to prove their case—choices that will be informed by Plaintiffs' experts who know how DREs and the election system as a whole work and thus know where evidence necessary to prove the contest claim resides.

Crucially, Defendants and the Secretary of State do not contend, and have never contended, that the Plaintiffs' efforts at examination and forensic

3

investigation are not necessary to determine whether misprogramming, viruses, or malfunction caused the aberrant voting patterns or the alleged statewide machine malfunctions, or the impact of such problems.

Plaintiffs accordingly move for a modest continuance of this matter, to no earlier than three weeks after the date when the Defendants make available for inspection and examination all the electronic election records and equipment, and further move for an order requiring Defendants to make all such equipment and records available for examination by January 17, 2019, the original trial date.[1]

A.     Facts

1.     Plaintiffs' November 29, 2018 Emergency Motion

After promptly filing suit, Plaintiffs on November 29, 2018, filed an Emergency Motion for Inspection of a limited number of certain priority electronic and paper records and voting machines, to be supplemented or re-prioritized as discovery proceeded.  On December 5, 2018, this Court stated that it would

---

[1] Plaintiffs anticipate filing a separate Motion Relating to the Inspection and Related Discovery Issues ("the Motion Relating to Inspection"). The Motion Relating to Inspection is not being filed this evening because this is a "moving target" and, as of the time of filing, Plaintiffs' expert is still working with Fulton County's technical staff in an effort to determine how best to copy the internal memory and to secure Fulton County's agreement to do so.  Another issue presented is whether and to what extent the counties have altered probative evidence of the November 2018 election by using these DRE machines and associated memory cards in the December runoff election, use that can alter or destroy the memory and evidence of mis-programming.

In addition, in the Motion Relating to Inspection, Plaintiffs will be moving for access to the GEMS Microsoft Access databases from Fulton and Gwinnett County.  Plaintiffs **will not** be seeking source code or an examination of the GEMS servers themselves, only the Access databases.  As explained by Plaintiffs' expert, the GEMS documents that the Court ordered the Defendants to produce is not useful in the forensic examination. *See* Affidavit of M. Bernhard, submitted on January 10, 2019 (notarized copy attached hereto as Exhibit B).  Access to the GEMS databases is crucially important in uncovering misprogramming or malfunction, and a more sophisticated forensic review will be impossible without it. *Id.*  The Motion Relating to Inspection will also seek, to the extent necessary, expedited discovery on related issues.

4

address the Emergency Motion on January 9, 2018.   Defendants did not file any

papers in response to the Emergency Motion, thus conceding it.

### 2.   Hearing on Emergency Motion and Order

The Court held a hearing on January 9, 2018, and, on January 11, 2018,

entered an Order on Pending Motions that required Defendants to produce certain

reports from the GEMS database and to permit Plaintiffs to inspect the internal

memory of the DRE machines in five locations — three polling locations in Fulton

County, one in Worth County, and one in Henry County.  (Plaintiffs had

referenced these polling locations in their Petition as illustrative examples of the

alleged statewide problems with the voting equipment, but not as a comprehensive

listing of election irregularities.)

The Court's Order on Pending Motions requires the counties to allow

Plaintiffs to inspect the internal memory of selected DRE machines, and further

states that the machines and contents shall not be damaged.  Importantly, the only

way the internal memory of the DRE machines may be examined without

damaging and altering the internal memory is to make a complete image or copy of

the internal memory, and then to examine that copy.  The Court's Order does not

permit the copying needed for an internal memory examination to be performed by

Plaintiff (and it is Plaintiffs' preference to not be the party copying the memory).

Thus, the requirements of the Order can be satisfied if the *counties* make a full

copy of the internal memory, and then permit the Plaintiffs' experts to examine

5

that copy on county computers on site at the county location.  This is what

Plaintiffs proposed to Defendants on January 10, 2019, in an email between

counsel.  (*See* January 10, 2019 email from Plaintiffs' counsel to counsel for

Fulton County, attached as Exhibit B to Affidavit of Matthew D. Bernhard,

attached hereto as Exhibit B (and originally submitted to the Court on January 10,

2019)).

### 3.    Defendants Still Have Not Made Election Records and Equipment Available for Inspection

On Wednesday, January 9, 2019, immediately after the motions hearing,

Plaintiffs requested that the Defendants make their equipment and electronic

records available on Friday, January 11, 2019.  After some back-and-forth,

Defendants indicated that the equipment and records could not be made available

on Friday the 11th.  Plaintiffs then requested that the equipment be made available

on Saturday, January 12, 2019.  No machines were made available on Saturday the

12th.

Meanwhile, in anticipation of conducting the inspection ordered by this

Court, Plaintiffs on January 10 and January 13 sent counsel for Fulton County

emails describing, step-by-step, how the investigation would need to proceed given

the need to preserve the electronic evidence while also complying with the Court's

Order. Plaintiffs flew their voting system computer science expert to Atlanta over

the weekend to prepare for the inspection

6

It was not until today, Monday, January 14, 2019, that Fulton County assembled its DREs in the English Street location for potential examination by Plaintiffs' expert, beginning at 9 a.m. *See generally* Exhibit A (January 14, 2019 email from Plaintiffs' Expert Matt Bernhard to Plaintiffs' Counsel).[2] Plaintiff Rhonda Martin and Plaintiffs' expert, Matt Bernhard, arrived at the English Street location, but were unable to conduct any examination or investigation of the DRE machines or their internal memory. As noted above, Plaintiffs had explained to Fulton County last week (on January 10) that the only way for the parties to conduct the equipment examinations while complying with the Order on Pending Motions, and without altering the evidence, is for Fulton County to make a complete and accurate electronic copy of the memory. This morning, however, Fulton County had made no copy of the internal memory and was not prepared to allow Plaintiffs to instruct County personnel on how to make the copy. This prevented any examination of the DREs' internal memory, as the Court's Order on Pending Motions requires. The Fulton County officials told Plaintiffs' expert that they were unaware of the Court's order to permit examination of the internal memory, and further stated that they were unaware of a method to copy the internal memory. Plaintiffs' expert told Fulton's technical staff how internal memory can be copied without damage to the files or machine, based on his experience of

---

[2] Plaintiffs are filing this email without proper authentication in the interest of time. Plaintiffs will supplement the record with a proper affidavit authenticating the email.

frequently making such copies.  The Fulton County officials then stated that they

would need to consult with their colleagues, and the proceedings halted; Plaintiffs'

expert left the premises without having been able to examine the internal memory

of the DRE machines, which review has to precede any other examination of the

DREs.

Plaintiffs are continuing to work with Fulton County's technical staff to

educate staff on ways to securely make copies of the internal memory, and late this

evening sent an additional email with alternative instructions that might enable

faster work.  Still, it is not certain whether Fulton County will agree to do what is

necessary to allow for a proper examination of the DRE memory or when that

examination can be expected to begin, let alone finish.

**B.      Need for Additional Time**

In order for Plaintiffs to be able to prove the extent of the impact of

misprogramming, viruses, or malfunction affecting the Lieutenant Governor's race,

more time is required.   Even if Fulton County were immediately to comply with

the Court's Order on Pending Motions and start copying the selected DRE

machines' memory onto laptops, it will physically take days before the copying is

complete and it will require several weeks before the memory can be analyzed to

produce evidence that can be presented meaningfully in court.  According to

Plaintiffs' experts, the time it takes to copy the internal memory of a DRE onto

another computer can be quite variable, depending on the age and condition of the

machine and the size of the files. (*See* Exhibit A hereto). The copying can take from one hour per machine to several hours per machine. Though Plaintiffs will only be inspecting a few dozen DRE machines (a small fraction of the 27,000 machines used in the election), it will still take days to complete the copying and a substantial amount of time to forensically review the copies. *Id.* There is not enough time in the current case schedule for Plaintiffs to conduct these required activities.

It must be emphasized that there is no argument by the Defendants that this discovery is not relevant. They *know* it goes to the heart of the matter. Nor is there is any contention by the Defendants that this discovery can be completed prior to the trial of the case this Thursday, January 17, 2019.

## Discussion

The Election Contest Statute gives this Court plenary power over discovery and scheduling so that the Court can gain a "full and proper understanding" of the case. O.C.G.A. § 21-2-525(b). Contrary to repeated statements by the Defendants, there is *nothing* in the Election Contest Statute that anticipates that the trial will be conducted in haste or that requires the Court to deny Plaintiffs a fair opportunity at discovery. The Election Contest Statute states that the contest is to be decided "promptly," but gives no deadline or arbitrary time limit on the proceedings. O.C.G.A. § 21-2-525(a). The Election Contest Statute states that the case is supposed to proceed "according to the course of practice in other civil

9

cases," and conducted "in like manner and to the same extent as in other civil cases litigated before such court." O.C.G.A. § 21-2-525(b). This is a reference to the Civil Practice Act, of course, which applies to "[a]ll civil cases." O.C.G.A. § 9-11-40. The Civil Practice Act states: "All civil cases, including divorce and other domestic relations cases, shall be triable any time after the last day upon which defensive pleadings were required to be filed therein; provided, *however, that the court shall in all cases afford to the parties reasonable time for discovery procedures, subsequent to the date that defensive pleadings were required to be filed*." O.C.G.A. § 9-11-40 (emphasis added).

The law governing this Motion for Continuance, therefore, is clear: the Election Contest Statute does not mandate accelerated proceedings or set arbitrary deadlines, but instead contemplates that the trial court use its plenary power to gain a "full and proper understanding" of the matter. O.C.G.A. § 21-2-525(b). The Election Contest Statute further states that the case is to proceed "in like manner and to the same extent as in other civil cases." *Id.* The Civil Practice Act in turn states that "the court shall in *all* cases afford to the parties reasonable time for discovery." O.C.G.A. § 9-11-40 (emphasis added).

The application of this law to the facts also cannot reasonably be disputed: three days to a week is not a "reasonable time for discovery" in any case, much less a state-wide election contest involving an investigation of why complex electronic voting machines malfunctioned. Here, there is no argument—by either

10

side—that two or three days is a sufficient, much less a "reasonable," amount of time in which to conduct meaningful discovery. Trying this case this week will also not allow the Court to gain a "full and proper understanding" of the case, as the Election Contest Statute contemplates.

There are a number of cases, many cited in the footnote,[3] which emphasize that time is of the essence in election contest cases. But none of these cases hold that "reasonable" discovery may be denied or even curtailed. Moreover, in each of the reported cases, the plaintiffs appear to have been given full discovery, whether that involved an opportunity to find and count every misspelled absentee ballot, *Mead v. Sheffield,* 278 Ga. 268 (2004), or to investigate allegedly mis-calibrated voting machines, *Taggart v. Phillips*, 242 Ga. 454, 455 (1978). Crucially, in no case found by Plaintiffs has *any* court compromised the full and proper

---

[3] *E.g., Broughton v. Douglas Cty. Bd. of Elections*, 286 Ga. 528, 528–29 (2010) (swift resolution of election contests is vital for the smooth operation of government); *McCreary v. Martin*, 281 Ga. 668, 670 (2007) ("Statutes providing for election contests are premised on the recognition that election-related appeals must be timely considered. *Jordan v. Cook,* 277 Ga. 155, 156, 587 S.E.2d 52 (2003)."); *Swain v. Thompson*, 281 Ga. 30, 32 (2006) ("While Swain's status as a *pro se* litigant and his initial efforts to correct the deficiencies in service of process evoke sympathy for him, the public policy favoring swift resolution of election contests and the high regard in which appellate courts hold the exercise of discretion by trial courts dictate that we uphold the trial court's determination that the failure to effect timely service of appropriate process in this case requires dismissal of Swain's election contest petition."); *Plyman v. Glynn Cty.*, 276 Ga. 426, 427 (2003) ("Our legislature put a very short fuse on election contest cases. OCGA § 21-2-524 requires cases contesting election results to be brought within five days of certification of the returns. This short time period reflects the legislature's strong desire to avoid election uncertainty and the confusion and prejudice which can come in its wake. Certainly, the swift resolution of election contests is vital for the smooth operation of government.")

11

adjudication of the issues in order to obtain a faster decision. *E.g., McIntosh Cty. Bd. of Elections v. Deverger*, 282 Ga. 566, 566 (2007) (four months after the general election, the trial court ordered a new election; the Supreme Court affirmed); *Taggart v. Phillips*, 242 Ga. 454, 455 (1978) (two months after election, the Supreme Court reversed the trial court's dismissal of contest petition and remanded for further proceedings).

Plaintiffs are not seeking extended delay. Far from it. Plaintiffs only ask for three weeks beyond the production of necessary records and equipment. -This is a small fraction of the discovery that would be allowed and considered "reasonable" in any other civil case of this complexity, particularly involving forensic examination of electronic records stored on old equipment using out-of-date software technology. The short amount of extra time (three weeks) that Plaintiffs request is the bare minimum that is required for a forensic examination of the DREs. This schedule presumes that Plaintiffs' forensics experts will have very little time to write their reports and that Defendants do not themselves need time to study the findings of Plaintiffs' experts before trial. A forensic examination of this electronic equipment is absolutely essential so that the Court can gain a full and proper understanding of the causes and extent of the misprogramming, irregularities, and malfunctions that plagued the November 2018 Lieutenant Governor's election—and that caused the election to be so defective as "to place in doubt the result." O.C.G.A. § 21-2-527(d).

12

Plaintiffs' instant Motion, which seeks only a three-week continuance, should therefore be granted. Plaintiffs further request that this three-week period begin to run when the counties have certified to the Court that the counties have fully complied with the Court's orders relating to discovery. Plaintiffs assume Defendants are acting in good faith, but one problem with the current fixed trial date is that Defendants have a powerful disincentive to achieve full and timely compliance with their discovery obligations. Scheduling the trial with reference to the date that Defendants comply is fair to all parties, and will ensure the speedy and just resolution of this matter.

A proposed order is attached.

Respectfully submitted this 14th day of January, 2019.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 14th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

E

X

H

I

B

I

T

A

**Subject:** FW: Confidential Notes about today
**Date:**    Monday, January 14, 2019 at 8:53:10 PM Eastern Standard Time
**From:**    Bruce Brown
**To:**      Bruce Brown


**From:** Matt Bernhard <mdb92nc@gmail.com>
**Sent:** Monday, January 14, 2019 8:48 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>
**Subject:** CONFIDENTIAL Notes about today

Hi Bruce,

I just wanted to recap what happened at English Street this morning as well as discuss steps moving forward.

The gist is that the state say that they didn't interpret "internal memory" accurately, and were unwilling to create copies to allow us to perform the inspection of the internal memory without first consulting with counsel.

Below is a detailed description of our time at English Street:

After we signed the confidentiality agreements, we went into the warehouse with Michael Barnes, Ryan Germany, Cheryl Ringer, Kevin Rayburn, Rick Barron, Derek Gilstrap. Ronnie Martin inquired as to why the SoS people were there now that they are no longer party to the lawsuit, and Ms. Ringer informed us that the SoS owns all the equipment and is therefore entitled to be there.

We then discussed how they were accommodating our request to inspect the internal machine memory, and Mr. Barnes (from the SOS office) said they intended to create a copy of the election archive for the November on each machine. I informed them that that is not an accurate interpretation of "examination of the internal memory."

Mr. Barnes said that he did not know how to give us access to the internal memory without ripping out the flash chips. I informed him about the JTAG process I have used in the past on TSx machines, and informed him, the SoS lawyers, and Ms. Ringer that I would be happy to provide them with all commands that I would run ahead of time. Someone (I think Mr. Rayburn) inquired as to whether using JTAG created a security vulnerability, and I told him that it can, but we would be happy for the state or Fulton county to provide the adapter and the laptop on which the copies would be made, and to let an independent inspector observe the process. Obviously, if the state or the county performs these processes as intended then there are fewer security risks, and I strongly prefer that outcome.

Then we went over to the GEMS server and Mr. Gilstrap started copying the reports in the court order to CD. We got all reports except the Ballot Image Report. Mr. Barnes explained that to generate the Ballot Image Report, Mr. Gilstrap would have to manually create over 2,000 reports, as the GEMS software does not support doing this in batches. Essentially, it stores a mapping of precinct->memory card->ballots, and reports can only be generated by selecting each memory card, of which there are 2,084 (I believe). We obtained two ballot image reports and said we'd discuss this with you prior to proceeding. Mr. Gilstrap burned me a CD with four standard reports, which I read and sent over to you later today. Obtaining the GEMS database would be equivalent to all of the above steps, and far more elegant, as it wouldn't require the county to

**Page 1 of 2**

spend countless hours generating Ballot Image Reports for every voting machine in the county.

Then we went over to inspect the machines. All machines that were selected for inspection were TS machines. All but one were still sealed (apparently the seal broke off of one of the Grady High School machines, but I did not record its serial number). The County said that all of the machines were used in the December election, which will impair the value of forensic information we can obtain from them. I decided to contact you about the memory inspection prior to doing the physical inspection, as I didn't feel it made sense to unseal each machine, physically examine it, reseal it, and then do it all again tomorrow after they make copies of the memory. I also did not want to power on the machines, further altering the evidence, until we were sure that the county had made copies of each machine.

I should note that even if we solve the internal memory copying problem with the county, I don't currently have an estimate of how long it would take to copy the memory from each machine. My best estimate is that it will take several hours per machine, and it is not possible to  copy more than one at a time unless there are multiple people and multiple laptops, adapters, and so forth for conducting the process. After copying, the other experts and I will need to analyze what has been copied, and that will take possibly weeks to do a thorough analysis of them all. Obviously, even if we start copying the internal memory tomorrow, there is no way we will have any meaningful results prior to the trial scheduled for Thursday.

If you have further questions please let me know.

-Matt

EXHIBIT

B

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,<br><br>    **Plaintiffs,**<br>    v.<br><br>ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,<br><br>    **Defendants.** | **CIVIL ACTION FILE NO. 2018CV31348** |

## <u>AFFIDAVIT OF MATTHEW BERNHARD</u>

Appeared before me, the undersigned officer duly authorized to administered oaths, MATTHEW BERNHARD who, after being sworn, states as follows:

1.      I am Ph.D. candidate at the University of Michigan in Computer Science with a focus on computer security. I received my Bachelor's degree from Rice University, and my Master's in Computer Science from the University of Michigan.

Page 1

2.      I have focused in the field of computer science, including

cyber-security in voting systems since 2012, including specific work on new,

secure voting technology (the STAR-Vote system from Austin, Texas), and better

exploring the current landscape of voting technology and vulnerabilities. I have

worked with the Verified Voting Foundation on gathering data about currently

deployed voting systems. I consulted with the Jill Stein recount campaign in 2016

to assess threat models and incident reports in Michigan, Wisconsin, and

Pennsylvania. I have also worked with other experts in the field to provide a

theoretical survey of properties of election security.

3.      During the last year, I have conducted focused research on Diebold

AccuVote voting system, of the type used by Georgia, with a specific emphasis on

TS and TSX machines. That research has included in-lab testing at the University

of Michigan on machines acquired through eBay, during which we performed an

in-depth technical analysis of the systems and found significant vulnerabilities. I

have also on several occasions observed AccuVote units in the field in Georgia,

both at the Fulton County Election Preparation Center on multiple occasions and at

the Grady High School precinct during an election. As with lab testing, I observed

Page 2

a significant number of operational vulnerabilities that make Georgia's election infrastructure fundamentally unsafe and untrustworthy.

4.      I have  published and spoken extensively about the cybersecurity and other risks of electronic voting systems and have assisted in preparation of other experts for Congressional testimony concerning these topics.

5.      A copy of my curriculum vitae is attached as Exhibit A.

6.      I am a consulting expert in the area of Georgia's Diebold Voting Systems for Plaintiffs in the voting system security case Curling v Kemp, pending in federal court in the Northern District of Georgia.

7.      I am also a consulting expert on the topic of the Diebold Voting System for plaintiffs in this case.  I have been asked to address the nature of the testing required for the DRE machines and GEMS database.

8.      I have reviewed the proposed order submitted to the Court by the Defendants, particularly paragraphs B(1) and B(2) relating to discovery of the DRE machines and the GEMS database.   In summary:  as for the DREs: the "inspection" proposed by Defendants of the DREs would be entirely inadequate and of no value.  A review of the internal memory is required to assess and identify

Page 3

any potential programming errors or other malfunctions.  As for the GEMS:

defendants' proposal, limited to the production of documents that the GEMS

system generates, also is no value whatsoever; if there are errors in the GEMS

database that has been used to program the election, reports generated by GEMS

will only verify what is in the database already.

9.      If either the DREs or the GEMS database has been corrupted or

incorrectly programmed in any way, relying solely on the reports generated by

those pieces of software would be akin to relying solely on the testimony of a

potential bank robber to determine his guilt. If we suspect the bank may have been

robbed, but don't know exactly how much money may have been stolen, the only

way to rule out that hypothesis is a holistic evaluation of all evidence supporting or

refuting that hypothesis. The same is true for elections; to determine if any election

results are incorrect, we cannot simply ask the voting machines to count the votes

again. We must examine how they count the votes, and we do this through

thorough forensic software examination (the memory on the DREs internal

memory) as well as examining the data with which they were initially programmed

(i.e. the GEMS database).

**DREs**

10.     When reviewing an election conducted on Georgia's paperless DRE

system, the only method to answer questions regarding anomalous results, or

possible incorrect programming, is to review key electronic files and programs that

were used in conducting the election. All of these files reside on the internal DRE

memory and the memory cards. Such essential electronic records include, but are

not limited to:

   --Ballot programming and layout files,

   --Vote tabulation instructions,

   --Programs for reporting tallies and writing reports,

   --System operation logs,

   --Error messages generated by the system and DRE machines, and

   --Votes recorded in internal memory of the DRE machine.

9. The DRE internal memory contains records that are not located anywhere

on the system.  My understanding is that, for this reason, Georgia law requires the

internal memories of the DRE machines to be preserved in the event of an election

contest such as this one.

10. Conversely, in a review of a DRE election, the only way to determine the extent and number of votes potentially impacted by programming errors or malfunctions is to review the electronic programming and operating files used during the election. No standard report that is printed by the Diebold system would expose a programming error, in particular because the programming that generates such reports may itself be faulty. Only a review of the electronic files containing the programming would detect errors.

11. Forensic review tools are available to review the internal memory and other electronic files in the voting system to determine if there may have been incorrect programming, tampering, viruses or malfunctions of the machines and related components. Such tools are commonly available and widely used in industry practice, and would in no way damage or otherwise alter the voting machines (or any election equipment) in question.

12. It is crucial to examine the DRE internal memory of electronic records for the first data created on the machine when the voter casts his or her ballot. The examiner will attempt to determine whether that vote was faithfully recorded and tallied as it was written to memory cards and passed through the chain of tallying and reporting functions. There is no way to make such a determination by

Page 6

reviewing standard system reports, as again such reports may also be faulty if the program that produces them is faulty.

13.  Such testing should be conducted on an exact electronic copy of the internal flash chips of the DRE machine. Testing a copy avoids any possibility of damaging the DRE machines or components. Standard protocols for such testing are generally agreed on by computer scientists and subject to little controversy for conducting the types of rather simple tests involved here. Moreover, such tests can be conducted in a transparent way to provide any interested parties sufficient evidence as to their results, as well as entirely preserving the machines being examined.

14.  The inspection described by Plaintiffs in the attached email from Plaintiffs' counsel to Fulton County's counsel, will be efficient and useful, will not involve any disruptive testing, and is standard procedure for conducting a forensic examination of this kind. Such testing can be conducted in an expedient manner so as to not impact the administration of elections in the jurisdictions in question.

15. Additionally, only after the copy of the internal memory is created for testing, the DRE machine must be tested in election mode using the same program that was used on Election Day with the goal of determining if the reported anomaly

can be replicated. For example, examiners should select machines for which voters reported that the Lt. Governor was not on their electronic ballot, and determine whether that condition will occur during repeated attempts to vote on the machine. If the electronic ballot fails to display the Lt. Governor race, the expert will obtain clues on what electronic files in the internal memory to check first for a virus or programming error.

16. The same is true for the repeated reports of machines that reportedly cast votes before the voter had a chance to see the review screen to correct any errors. The examiner must be able to attempt to replicate the malfunctioning condition on machines where this malfunction was reported. This cannot be done in post-election mode which is the limitation that Fulton County has set.

**GEMS**

17. The Defendants' proposed "inspection" relating to the GEMS server and database also is completely inadequate. The documents offered by the Defendants from the GEMS server (Base Precincts With Races Report, Ballot Image Report, Vote Center With Cards Report, Statement of Votes Cast Report, and Summary Report) may be useful to review, but are public records and standard reports that

do not in any way provide an opportunity to detect a programming flaw, a virus, or a malfunction of the machines.

18. The GEMS Database is an unencrypted set of data for programming and tabulating the election that is built by the election official for each election using a generic off-the-shelf Microsoft Access database. Anyone with a Microsoft subscription to Microsoft Access can open and read all files.

19. An examination of the GEMS database to review for anomalies, programming errors, misconfiguration, or other irregularities should generally take about 2 days per county, assuming that no material irregularities were detected.

20. There is no proprietary software or programming in the GEMS database. The database has data related to the election, and it should contain only data that is public record.

21. The information contained in the GEMS server can be shared without risk to election security.

22. The review of the GEMS database can be accomplished without access to the GEMS server, by requiring either the Secretary of State or the County to merely copy their GEMS database CD and deliver to Plaintiffs' experts on a CD.

23. The GEMS database should be reviewed at two stages, at the start of the election programming and after the close of the election. The Secretary maintains a CD copy of the original programming prior to votes being entered into the system. A copy can be made in a matter of minutes and given to the Plaintiff's expert for review. The examiner should compare that database to the post-election database for the possibility of unauthorized changes to instructions coded into the database.

24. It is only with access to the full electronic GEMS database that a basic analysis of the programming of the election can take place.

Further Affiant sayeth not.

Matthew Bernhard

Sworn to and subscribed before me:
On this _11_ day of _Jun_ , 2019

Notary Public, State of _Texas_
My Commission Expires: _12 - 10 - 2020_

SEAL



ADEWOLE JONATHAN ALITONOU
Notary Public, State of Texas
Comm. Expires 12-20-2020
Notary ID 129144120

Page 10

# Exhibit A

## Matthew D. Bernhard
*matber@umich.edu*

2260 Hayward Street
Ann Arbor, MI 48109
Main/Cell: 281-725-8544

### EDUCATION

**University of Michigan, Ann Arbor, MI (2015 – present)**
PhD Candidate Student, Computer Science and Engineering
Advisor: J. Alex Halderman
**University of Michigan, Ann Arbor, MI (2015 – 2018)**
Master of Science in Computer Science and Engineering
**Rice University, Houston, TX (2012 – 2015)**
Bachelor of the Arts, Computer Science
Advisor: Dan Wallach

### EXPERIENCE

**Expert Witness,** *Curling v. Kemp* - 2018 - present
  – Examined Georgia's voting system and provided consultation and testimony that the voting machines are insecure and unfit for use.

**Verified Voting** – 2018 - present
***Data Science Consultant,*** Ann Arbor, MI
  – Collected, organized, and wrote up technical information about new voting machines being acquired by localities

**Cloudflare** – San Francisco, CA
***Cryptography Intern,*** *Summer 2017*
  – Developed Certificate Transparency monitoring features. Also built an SSL detector to determine what SSL settings customer sites can support.

**Computer Security Lab** – Rice University, Houston TX
***Lead Software Developer,*** Fall 2012 - Spring 2015
  – Lead a team in upgrading and maintaining STAR-Vote, a pedagogical voting system
  – Performed usability study on ballot preparation tool
  – Explored leveraging utilities provided by the Chromium project to process sandbox and enforce tighter systems controls
  – Examined secure data structures such as authenticated dictionaries for implementing a secure web bulletin board

**Microsoft Research** – Microsoft, Redmond WA
***Research Intern,*** *Summer 2015,* Advised by Josh Benaloh
  – Investigated trusted computing features in the Windows operating system
  – Designed ASKVote, the Auditably Secure Voting scheme to provide software assurance and election evidence
  – Designed voting client for conference demonstration hall survey

**TEACHING**

**Election Cybersecurity** - University of Michigan
*Graduate Student Instructor,* Fall, 2018
— Designed course content, lectured, led discussion section, graded, and provided course support.

**Introduction to Computer Security** – University of Michigan
*Graduate Student Instructor,* Winter, 2018
— Lectured, led discussion section, graded, and provided course support.

**Securing Digital Democracy** – University of Michigan, Coursera
*Course Operations Liaison,* 2014 – 2018
— Compiled and maintained course resources and facilitated student discussion in message boards for course introducing the field of voting technology in the context of computer security

**Fundamentals of Parallel Programming** – COMP 322, Rice University
*Teaching Assistant,* Spring 2015
— Shaped curriculum and led lab discussions for an introductory course on parallel programming featuring Java parallelism and Apache Spark

**Introduction to Program Design** – COMP 215, Rice University
*Teaching Assistant,* Fall 2014
— Led lab discussions and wrote and reviewed assignments and exams for an introductory course on Java and Object Oriented Programming

**PEER-REVIEWED PUBLICATIONS**

**On the Usability of HTTPS Deployment**
Matthew Bernhard, Jonathan Sharman, Claudia Ziegler Acemyan, Philip Kortum, Dan S. Wallach, and J. Alex Halderman
To appear in *Proc. of CHI Conference on Human Factors in Computing Systems Proceedings* (CHI 2019), May 2019.

**Bernoulli Ballot-Polling: A Manifest Improvement for Risk-Limiting Audits**
Kellie Ottoboni, Matthew Bernhard, J. Alex Halderman, Ron Rivest, and Philip Stark
To appear in *Proc. 4th Workshop on Advances in Secure Electronic Voting* (Voting '19), February 2019

**403 Forbidden: A Global View of Geoblocking**
Allison McDonald, Matthew Bernhard, Benjamin VanderSloot, Will Scott, J. Alex Halderman, Roya Ensafi
Proc. of the ACM Internet Measurement Conference 2018 (IMC '18), Boston, Massachussetts. November 2018.

**Voting Technologies, Recount Methods and Votes in Wisconsin and Michigan in 2016**
Walter R. Mebane, Jr. and Matthew Bernhard
Proc. of the 3rd Workshop on Advances in Secure Electronic Voting (Voting '18). Nieuwpoort, Curaçao. March 2, 2018.

**Public Evidence from Secret Ballots**
Matthew Bernhard, Josh Benaloh, J. Alex Halderman, Ronald L. Rivest, Peter Y. A. Ryan, Philip
B. Stark, Vanessa Teague, Poorvi L. Vora, Dan S. Wallach
Proc. of the Second Annual Joint Conference on Electronic Voting (E-Vote-ID '17). Bregenz,
Austria. October 24 - 27, 2017.

**Understanding the Mirai Botnet**
Manos Antonakakis, Tim April, Michael Bailey, Matthew Bernhard, Elie Bursztein, Jaime
Cochran, Zakir Durumeric, J. Alex Halderman, Luca Invernizzi, Michalis Kallitsis, Deepak
Kumar, Chaz Lever,Zane Ma, Joshua Mason, Damian Menscher, Chad Seaman, Nick Sullivan,
Kurt Thomas, Yi Zhou
Proc. of the 26th USENIX Security Symposium (USENIX Security '17). Vancouver, BC, Canada.
August 16 - 18, 2017.
**Towards a Complete View of the Certificate Ecosystem**
Benjamin VanderSloot, Johanna Amann, Matthew Bernhard, Zakir Durumeric, Michael Bailey,
and J. Alex Halderman
Proc. 16th ACM Internet Measurement Conference (IMC '16), Santa Monica, California.
November 2016

**Implementing Attestable Kiosks**
Matthew Bernhard, Gabe Stocco, and J. Alex Halderman
Proc. 14th Annual Conference on Privacy, Security, and Trust (PST '16), Auckland, New Zealand.
December 2016

## SELECTED OTHER PUBLICATIONS

**What Might Go Wrong in the 2016 Election**
Matthew Bernhard and J. Alex Halderman
Security at Michigan (a Medium publication), November 7th, 2016
**The Security Challenges of Online Voting Have Not Gone Away**
Robert Cunningham, Matthew Bernhard, and J. Alex Halderman
IEEE Spectrum, November 3rd, 2016

## TALKS

**Do We Want to Recount or Not? Presidential Election 2016**
Matthew Bernhard and Kimball Brace
Election Verification Network (EVN) Symposium 2017, March 15, 2017

**Recount 2016: An Uninvited Audit of the U.S. Presidential Election**
Matthew Bernhard and J. Alex Halderman
Roadsec 2017, São Paulo, Brazil, November 11th, 2017
Roadsec Pro 2017, São Paulo, Brazil, November 10th, 2017
Electoral Technology Workshop, SBSeg 2017, Brasília, Brazil, November 6th, 2017
33rd Chaos Communication Congress (33c3), December 28th, 2016

## MEDIA APPEARANCES

NPR, Reuters, BBC News, The Guardian, Le Monde, Motherboard, Forbes, The New Republic,
Gothamist, The New Political, The Outline, and Voice of America News and others

**Subject:** Re: GEMS Voting Machines 2 Counties.mov
**Date:**    Thursday, January 10, 2019 at 10:38:15 AM Eastern Standard Time
**From:**    Bruce Brown
**To:**      Ringer, Cheryl, Burwell, Kaye, Lowman, David
**CC:**      Bryan Tyson, Vincent Russo, Josh Belinfante, Lindsey, Jr., Edward H.,
             richard.carothers@carmitch.com

Cheryl, Kaye and David,

In our discussion yesterday evening about the inspection of Fulton machines, we had decided that it
would be best for me to set out in writing our proposed protocol for the inspections.  I had asked Vince
Russo for a draft confidentiality order, but if you have one that Fulton would like to use, that might be
best (since the Secretary is out of the case and, I believe, Vince is in meetings all day).  We are flying in
experts for the work, so please let us know as soon as possible when the machines would be made
available (or what machines would be made available at what times).  Here is our proposed protocol:

Inspection of Fulton County DRE Machines:

Location: Fulton County English Street location

Time and Date:  11 am through 5pm  Friday, January 11, 2019, and continuing on Saturday,  and until
work is completed.

Machines and their related memory cards for inspection:

Early voting machines for Ponce de Leon Library
All election day machines for Grady High School
Election Day machines for Allen Temple AME Church

Fulton County to identify by machine serial number which machines were used in the December 4
runoff or otherwise used, operated or put through maintenance or testing after the November 6, 2018
election.

Complete recap sheets from all polling places should accompany the machines.

Machines should not be turned on, operated, re-programmed or otherwise altered in any way until
Plaintiff's experts are on site.

Fulton County to make a full image of the contents of the internal flash chips of the all machines (or
possibly a selected subset of machines to be determined after inspection begins) for forensic
examination. These copies will be made under the observation of Plaintiff's experts.

After copies are made, plaintiff's experts will select 1 to 2 machines from each polling place location to
have staff put into election  mode (operating in exact same manner as the machines were in the
polling places on when during the 11/6/18 election.)

Plaintiff's representatives will test votes on the machines, and conduct other tests in pre-election

**Page 1 of 3**

mode, election-mode and post-election mode.

We appreciate Fulton County's prompt cooperation given the expedited schedule.

Many thanks,

Bruce

---

**From:** Cheryl Ringer <Cheryl.ringer@fultoncountyga.gov>
**Date:** Wednesday, January 9, 2019 at 9:47 PM
**To:** Bryan Tyson <bpt@sbllaw.net>, "bbrown@brucepbrownlaw.com"
<bbrown@brucepbrownlaw.com>, Vincent Russo <vrusso@robbinsfirm.com>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>
**Cc:** "Burwell, Kaye" <Kaye.Burwell@fultoncountyga.gov>, "Lowman, David"
<David.Lowman@fultoncountyga.gov>
**Subject:** Re: GEMS Voting Machines 2 Counties.mov

And I am adding Kaye Burwell and David Lowman for Fulton.


Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: Bryan Tyson <bpt@sbllaw.net>
Date: 1/9/19 8:06 PM (GMT-05:00)
To: Bruce Brown <bbrown@brucepbrownlaw.com>, Vincent Russo <vrusso@robbinsfirm.com>, Josh
Belinfante <Josh.Belinfante@robbinsfirm.com>, "Ringer, Cheryl" <Cheryl.Ringer@fultoncountyga.gov>,
"Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, richard.carothers@carmitch.com
Subject: RE: GEMS Voting Machines 2 Counties.mov

Thanks for sending this. I'm adding Dick Carothers for Gwinnett to this email chain as well.

Thanks,

Bryan

Bryan P. Tyson
Strickland Brockington Lewis LLP
678.347.2203 (direct)
bpt@sbllaw.net

-----Original Message-----
From: Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
Sent: Wednesday, January 09, 2019 7:53 PM
To: Vincent Russo; Josh Belinfante; Cheryl Ringer; Lindsey, Jr., Edward H.; Bryan Tyson
Subject: FW: GEMS Voting Machines 2 Counties.mov

On 1/9/19, 5:18 PM, "Bruce Brown" <bbrown@brucepbrownlaw.com> wrote:

https://urldefense.proofpoint.com/v2/url?u=https-3A__www.dropbox.com_s_e3z30u2zqd44dqd_GEMS-2520Voting-2520Machines-25202-2520Counties.mov-3Fdl-3D0&d=DwIGaQ&c=HPJvcKF4Kk5Wqru1T_u_fOsw8NVQVa3gp0ReMdlciXw&r=y8ep_8HDwKhdpPvTap-X2A7Mfy5KKxC8wOuT4JMy-p8&m=60rdPa6Tc56n5EZ_18HvFPM7CJyCesLASInKmGSTByY&s=w7w6mu-54_TgwFcC3tC0PY14Qo_oyo09bLfqVFWrh4w&e=

Fulton County Superior Court
***EFILED***QW
Date: 1/14/2019 10:54 PM
Cathelene Robinson, Clerk

### IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,** | |
| **Plaintiffs,** | **CIVIL ACTION FILE** |
| **v.** | **NO. 2018CV313418** |
| **ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,** | |
| **Defendants.** | |

### [PROPOSED] ORDER GRANTING MOTION FOR CONTINUANCE

Plaintiffs have filed a Motion for Continuance.  Good cause having been shown, this Court, pursuant to O.C.G.A. § 21-2-525(a), GRANTS the Motion, and the evidentiary hearing on this matter is continued until no earlier than three weeks after the Defendants have given Plaintiffs full access to the equipment and records described in this Court's January 11, 2019 Order on Pending Motions.

SO ORDERED this ___ day of January, 2019.

_____
Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
    Bruce P. Brown
    Counsel for Plaintiffs

Page 1

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 14th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

Page 2

Fulton County Superior Court
***EFILED***AC
Date: 1/14/2019 4:09 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF *Fulton* COUNTY

*Coalition For Good Governance* STATE OF GEORGIA

v.

*Robyn A. Crittenden, et al.*

CASE NO. *2018 CV 313418*

## REQUEST TO USE A RECORDING DEVICE PURSUANT TO RULE 22 ON RECORDING OF JUDICIAL PROCEEDINGS.

Pursuant to Rule 22 of the Uniform Rules for Superior Court regarding Use of Electronic Devices in Courtrooms and Recording of Judicial Proceedings, the undersigned hereby requests permission to use a recording device in Courtroom *2000* in order to record images and/or sound during (all) (the following portions) of the proceedings in the above captioned case/calendar.

Consistent with the provisions of the rule, the undersigned desires to use the following described recording device(s): *Video + Audio Recorders*. The proceedings that the undersigned desires to record commence on (date). Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to use this device in the courtroom on (date). The personnel who will be responsible for the use of this recording device are: (identify appropriate personnel).

The undersigned hereby certifies that the device to be used and the locations and operation of such device will be in conformity with Rule 22 and any guidelines issued by the court.

The undersigned understands and acknowledges that a violation of Rule 22 and any guidelines issued by the court may be grounds for removal or exclusion from the courtroom and a willful violation may subject the undersigned to penalties for contempt of court.

This *8th* day of *January* 20 *19*.

*George Ballman*
(Individual Signature)

*Me*
(Representing/Firm)

*Concerned Citizen*
(Position)

APPROVED: _____


_____

Sara Judge, Superior Court

_____ Judicial Circuit

Fulton County Superior Court
***EFILED***LW
Date: 1/15/2019 4:52 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO. 2018CV313418 |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONTINUANCE

COMES NOW, Brad Raffensperger, in his official capacity as Secretary of State of the State of Georgia ("Defendant" or "Raffensperger"), by and through counsel, and respectfully responds to Plaintiffs Coalition for Good Governance's ("Coalition"), Rhonda J. Martin's ("Martin"), Smythe Duval's ("Duval"), and

Jeanne Dufort's ("Dufort") (collectively, "Plaintiffs") Motion for Continuance

(Plaintiffs' Motion), stating as follows[1]:

## INTRODUCTION

Plaintiffs filed this action to contest the Contested Election pursuant to

Article 13, O.C.G.A. § 21-2-520, *et seq.*, of the Georgia Election Code.

The election for Lieutenant Governor was on November 6, 2018. It is now

over two months since the election and the new Lieutenant Governor, Geoff

Duncan, has already been sworn into office. The Georgia State Senate, the

legislative body over which Lt. Governor Duncan presides, has already been sworn

and is conducting business. While these facts do not moot this lawsuit yet, they

currently demonstrate why this Court should rule promptly to allow the Georgia

government to conduct legislative business. Under Plaintiffs' proposal (and as

shown below, under the standard of proof they have created for themselves), this

lawsuit could go on for months, if not years. And, that is before any appeal that

may be filed. This is not what election challenges are for, nor is it permitted by the

Election Code.

## FACTS

On January 9, 2019, all parties appeared before the Court. The Court issued

---

[1] On January 14, 2019 Secretary Raffensperger was sworn into office as the
successor to Secretary Crittenden.

-2-

an Order related to pending motions on January 11, 2019 (the "Order"). The Order

sets out three specific requirements for the parties to follow related to discovery.

(Order at 5.)

      As relevant here, Plaintiffs are entitled to "inspect the DRE machines in

post-election mode, using post-election memory cards that were used in the voting

locations identified by Plaintiffs in the Petition, paragraphs 40, 41, 44, 45, and

46." (Order at 6.) Further, "Plaintiffs may also examine the Internal memory

storage of each such DRE unit." (Order at 6.) But Plaintiffs cannot "in any way

damage the DRE machines or information contained therein . . . [or] copy, image,

save, or retain the DRE machines or the information contained therein . . . [or]

upload or introduce any information into the DRE machines." (Order at

6.) "Destructive testing shall not be permitted." (Order at 6.) The Court also ruled

that the parties must enter into a protective order.

      This Court also decided, via an electronic mail sent to all counsel, that no

continuances would be granted in this matter as the case should be expedited given

that it is an election case. (Email from Judge Adele Grubbs to Counsel, Jan. 11,

2019 ("Jan. 11, 2019 Email").) The Court went on to state that any discovery

issues should be brought to the Court's attention via email or conference call. (Id.)

      In response to the Order and after consulting with Plaintiff's Counsel,

Defendant Fulton County Board of Registration and Elections ("Fulton County")

and non-party Henry County Board of Registrations and Elections ("Henry County") made the DRE units for the voting locations identified in paragraphs 40, 41, 44, and 46 of Plaintiffs' Petition available on January 14 and January 15, respectively. This required Fulton County and Henry County to not only locate and setup the DRE units, but also locate the sealed memory cards for each machine before the inspection could commence. The Secretary is not aware of any attempt by Plaintiffs to arrange for the inspection of the DRE machines in Worth County referenced in paragraph 45 of the Petition, but the Secretary has notified the county attorney for Worth County of this Court's Order.

In conjunction with the counties, the Secretary proposed a protocol for examination of the internal memory storage on the DRE units (which units are property of the State of Georgia). To access the election result file stored in the internal memory of a DRE, a new memory card containing (1) the election ID and (2) blank ballot information for the election corresponding to the election results being recovered from the internal memory must be inserted into a DRE unit. This allows the DRE unit to locate the specific archive file in its internal memory storage. The archive file is then extracted from the internal memory and saved to the inserted memory card. Thus, the inserted memory card would contain the election information extracted from the DRE's internal memory storage. The internal memory for the election can then be viewed through the DRE. This

-4-

protocol tracks the normal process for recovering election data stored on the

internal memory of a DRE unit, and it does not damage the DRE machines or

otherwise require imaging or the introduction of any information into the DRE

machines.

On January 14, 2019, Plaintiffs' counsel proposed a vastly different protocol

for examining the DRE machines.[2]  Specifically, Plaintiffs rely on the statement of

Matt Bernhard, a proffered expert for the Coalition for Good Governance, a non-

party.  Bernhard demanded that the counties remove the outside case on the DRE

machines and to insert outside computer chips or adapters into the machines before

imaging the machines.  (See Ex. 3.)  Thus, Plaintiffs would not only extract but

they would alter, even temporarily, the DRE machines hardware.  Indeed,

Plaintiffs' protocol requires altering the motherboard on certain models of DRE

units (TS models), installing new computer chips (EEPROM chips) on those DRE

units, and then imaging the DRE units.  (Id.)  For other models of DRE machines

in circulation (TSx models), Plaintiffs' protocol requires an outside adapter (JTAG

adapter) to be connected to the DRE unit, a "flash probe" run on the DRE unit, and

then an image of the internal memory copied to a laptop.  (Id.)  These procedures

are not confined to an examination of the internal memory for the November 6,

---

[2] A copy of the January 14, 2019 email from Plaintiffs' counsel is attached as
Exhibit 1.

2018 election, but instead copy everything on the DRE unit, including information

for past elections and critical files related to the architecture of the machines.  (Id.)[3]

        When Fulton and Henry Counties offered to allow Plaintiffs to inspect the

DRE machines as the Secretary suggested, Plaintiffs refused.  Thus, Plaintiffs have

not inspected any DRE machines, despite the fact that Fulton and Henry County

made them available.  Instead, Plaintiff filed their Motion for Continuance with

this Court.

## ARGUMENT AND CITATION TO AUTHORITY

**I.      Plaintiffs' Failed to Follow the Court's Order and Email Instructions.**

        As an initial matter, Plaintiff's Motion for Continuance is improper and in

direct contradiction of the Court's instructions.  The Court made clear that no

continuances would be granted.  (Jan. 11, 2019 Email.)  Therefore, Plaintiffs'

attempt at the last minute is fruitless and is another chance to delay this Court's

final decision.  Moreover, the Court added that any discovery issues should be

brought to the Court's attention by email or conference call, not by motion.  (Jan.

11, 2019 Email.)  The Court should deny Plaintiffs' motion for failure to properly

submit this issue to the Court.

---

[3] The Order says that Plaintiffs may not "copy, image, save or retain the DRE
machines or the information contained therein."  (Order at 6.)

## II.   <u>Election Challenges Must Move Promptly.</u>

The Election Code provides that this Court must "decide the contest promptly." O.C.G.A. § 21-2-525(a).  While Plaintiffs are correct that the statute does not provide a specific timeline for the Court to issue a final order, there is no doubt that a timely decision must be made.  Plaintiffs respond by wrongly comparing the discovery in this case to normal civil discovery and complain that Plaintiffs are not being treated like a normal civil party.  (Plaintiffs' Motion for Continuance at 12.)

First, Plaintiffs had argued that the Civil Practice Act does not apply in election contests to the extent that its provisions conflicted with the specific requirements of the Election Code.  (Petrs.' Joint Consol. Resp. to Mots. To Dismiss at 15-16.)  The conflict here is apparent:  O.C.G.A. 21-2-525(a) specifically requires Courts "to decide the contest promptly."  There is no equivalent provision in the Civil Practice Act.  Therefore, there is no doubt that Plaintiffs should not receive six months of discovery that is usually allotted to parties to conduct ordinary civil discovery.

In addition, Plaintiffs complain that there is insufficient time for them to make copies of the internal memory of the DRE machines.  (Plaintiffs' Motion for Continuance at 8-9.)  But, this Court made clear that Plaintiffs cannot "copy,

image, save, or retain the DRE machines or the information contained therein."
(Order at 6.)

Next, the Secretary has offered a protocol that is consistent with the Order.
Plaintiffs would have access to each identified voting machine's archive file from
the internal memory storage. They could also view the election information on
each machine. This should allow Plaintiffs the ability to test their claims, without
damaging or altering the DRE machines. It certainly is more consistent with the
Order than Plaintiffs' proposal, which expressly calls for prohibited copying and
alters the DRE machine hardware.

Finally, Plaintiffs' request for a three-week extension forecloses a prompt
decision – this would cause the decision to be made in February at the earliest and
in the middle of the legislative session. An appeal could extend the resolution out
even longer. Plaintiffs currently have all of the necessary information and have
been given an opportunity to receive anything else this Court's Order allowed.

III.   **Additional Discovery Will Not Satisfy Plaintiffs' Burden.**

Critically, even if the Plaintiffs were permitted to expand the scope of the
Order in the manner they seek, the exercise would be one in futility. Plaintiffs'
main problem is that they have created a mouse trap from which they cannot
escape. Specifically, at the time that Plaintiffs filed the election challenge, they
acknowledged that the alleged "programming errors" and "manipulations" they

-8-

sought to find would require a "very sophisticated, expensive and **impractical time consuming forensic examination.**" (Pet. ¶¶ 22, 33 (emphasis added)). Now they seek to do just that.

In addition, Plaintiffs' own expert alleged that a sample audit – the very kind Plaintiffs seek here – "is not sufficient for safeguarding of the electronic evidence required to be used in discovery." (Decl. of Richard A DeMillo, attached to Petrs.' Emergency Mot. for Inspection of Electronic Election Equipment and Production of Documents ¶ 25.) The same proffered expert testified in the federal lawsuit regarding the Voting Machines. See Curling v. Kemp, Civil Act. No. 1:17-CV-2989-AT (N.D.Ga. 2017). There, DeMillo said that if he wanted to determine whether a machine was compromised, he would have to "open the machine up, attach some probes to terminals in the back of the machine, and read the memory of the machine just like you would read a disc on a PC. [He] would compare the image to the latest software that [he] had from Diebold to see if it was a match or not." (Curling v. Kemp, Tr. of hearing on September 12, 2018 at 134; entered into evidence in this case with the Secretary's Limited Response to Petitioners' Proffer of Evidence). DeMillo estimated that to do this across the state – as he claimed would be necessary – would take approximately "14,000 hours" or 583 days or 1.6 years. (Id.) Recognizing how unreasonable DeMillo's request is, Plaintiffs now offer something different. They are presumably exchanging (what their experts

deem to be) sufficiency for expediency. This trade-off, however, is inconsistent with the Order and cannot, by Plaintiffs' own terms, prove or disprove their case. It should not, therefore, be permitted to extend it.

The bottom line is that the Plaintiffs have created a universe where the DRE machines are subject to such secret and hidden manipulation that no one could find it this year or perhaps even next year. Thus, no amount of reasonable discovery will satisfy Plaintiffs or allow them to meet the burden of proof they have imposed on themselves. This weighs heavily in favor of denying Plaintiffs' most recent attempt to delay and extend the resolution of this dispute.

## CONCLUSION

Plaintiffs' discovery needs were known to them when they filed this action. They have been offered access to the information they seek, but they are unsatisfied with it and this Court's order. Their disappointment provides no basis for continued delay, and their Motion for Continuance should be denied.

This 15th day of January, 2019.

> Christopher M. Carr
> Attorney General
> Georgia Bar No. 112505
> Annette M. Cowart
> Deputy Attorney General
> Georgia Bar No. 191199
> Russell D. Willard
> Senior Assistant Attorney General
> Georgia Bar No. 760280
> State Law Department

-10-

40 Capitol Square, S.W.
Atlanta, GA  30334
Telephone:  (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No:  047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Brian E. Lake
Georgia Bar No.  575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Special Assistant Attorneys General
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250

*Attorneys for Defendant Robyn A. Crittenden,*
*Secretary of State of Georgia*

-11-

# EXHIBIT 1

| | |
|---|---|
| **From:** | Vincent Russo |
| **To:** | Bruce Brown |
| **Cc:** | Patrick Jaugstetter; rgermany@sos.ga.gov; mbarnes@sos.ga.gov; gdavis@co.henry.ga.us; Josh Belinfante; Alexander Denton |
| **Subject:** | Re: DRE and DRE Internal Memory Examination |
| **Date:** | Monday, January 14, 2019 8:13:55 PM |

Bruce,

The protocol has not changed from today, and we do not expect Henry County to say anything different than Fulton County. The process includes extracting the internal memory of the DREs from the November 2018 election onto memory cards and examining the contents through the DREs.

Vincent

Sent from my iPhone

On Jan 14, 2019, at 5:54 PM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:

Patrick - we have a few questions with respect to the machines for Henry County early voting in November, covered by the court order:

1. Has Henry County preserved the memory cards as they existed after the November election, or have they reprogrammed them for the December election?

2. Has Henry County preserved the DRE machines intact from the November election or did they use them again for the December election?

3. Are Henry County's machines for the early voting site covered by the Court order, Model TS or Model TSX, or a combination of both?

Fulton County did not know how to make copies of the internal memory today, but our expert explained the process to Fulton County and the SOS representative, so we anticipate not having those problems tomorrow.

Attending tomorrow from the Plaintiffs will be our expert Matt Bernhard and my consultant Marilyn Marks.

Thanks,

Bruce

---

**From:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>
**Date:** Monday, January 14, 2019 at 4:22 PM
**To:** Patrick Jaugstetter <patrick@powerjaug.com>
**Cc:** "VRusso@robbinsfirm.com" <VRusso@robbinsfirm.com>, "rgermany@sos.ga.gov" <rgermany@sos.ga.gov>, "mbarnes@sos.ga.gov" <mbarnes@sos.ga.gov>, "gdavis@co.henry.ga.us" <gdavis@co.henry.ga.us>
**Subject:** Re: Court Order in Election Recall Case

Yes. Longer email to follow.

On Jan 14, 2019, at 1:01 PM, Patrick Jaugstetter <patrick@powerjaug.com> wrote:

Bruce:

Are we confirmed for 9am tomorrow?

Patrick D. Jaugstetter



Power•Jaugstetter
P.O. Box 70
108 Atlanta Street
McDonough, GA 30253
770-957-1765 x 305 (office)
678-233-8383 (cell)
770-957-1065 (fax)

Sent from my iPhone

On Jan 11, 2019, at 5:07 PM, Patrick Jaugstetter <patrick@powerjaug.com> wrote:

> I serve as County Attorney in Henry County - in that capacity, I represent the Henry County Board of Elections and Registration ("Henry County"). Your email (below) has been forwarded to me.
>
> I have reviewed your email, the accompanying pleadings and the proposed instructions you have provided to Henry County. Please know that the Henry County **will** allow you to inspect the voting machines as required by the Court's Order. The protocol you proposed, however, is **not** acceptable and not compliant with the Court's Order.
>
> To comply with the Court's Order, Henry County will make available all of the voting machines put into use at the Elections Office during the November 6 Election - Henry County will likewise have available the post-election memory card (the "Card"). Henry County will insert the Card into a machine or machines of your choice (the machines will be placed into post-election mode) and you will be allowed to direct County staff to navigate to such screen(s) as you may elect. Henry County will not copy or make images of any data included on any machine or memory card. Likewise, Henry County will not permit the copying, imaging, saving or retention of any data on any machine or memory card.
>
> Of course, preservation of the confidentiality of these records is of utmost importance - please send me any protective order contemplated in the Court's Order so that I may assure the County that there are provisions in place to preserve the confidentiality of the information your clients will be inspecting.
>
> Compliance with this Order will take some effort and require some time on the part of the County. Accordingly, the inspection may proceed on **Tuesday, January 15, beginning at 9am.**
>
> Finally, I have invited representatives of the Secretary of State to join us on Tuesday

morning.

PLEASE NOTE MY NEW EMAIL ADDRESS:  patrick@powerjaug.com

Patrick Jaugstetter

Power-Jaugstetter, PC
P.O. Box 70
108 Atlanta Street
McDonough, GA 30253
770-957-1765 x 305 (office)
678-233-8383 (cell)
770-957-1065 (fax)

http://www.powerjaug.com

CONFIDENTIAL
The information contained in this electronic message is legally privileged and
confidential intended only for the use of the individual or entity named above. If
the reader of this message is not the intended recipient, you are hereby notified
that any dissemination, distribution or copying of this electronic message is
strictly prohibited. If you have received this electronic message in error, please
notify me immediately by telephone and delete the original message.

On Jan 11, 2019, at 3:36 PM, Grayson Davis <gdavis@co.henry.ga.us> wrote:

> Hey Patrick,
>
> We just received this. Tina is at the Hospital and knows about it but
> can't do anything about it.
>
> Grayson Davis
>
> Henry County Elections & Voter Registration
> 40 Atlanta St.
> McDonough, GA 30253
> Office: 770-288-6462
> Cell: 404-989-3050
> Fax: 770-288-6468
>
>> From: Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
>> Sent: Friday, January 11, 2019 3:24 PM
>> To: Tina Lunsford; Grayson Davis
>> Subject: Court Order in Election Recall Case
>>
>> Ms. Lunsford and Mr. Davis,
>>
>> I represent the Plaintiffs in the Coalition for Good Governance
>> vs. Crittenden election contest case involving the Lt.
>> Governor's election. (2018CV313418).   The case is set for trial

this next Thursday, January 17, 2019, and this email concerns discovery concerning Henry County that the Judge has ordered to be completed in advance of the trial.

In the attached ruling just issued, the Honorable Judge Adele Grubbs ordered that Plaintiffs' experts may conduct forensic examination of the DRE voting machines (and their internal memory data) used in the Henry County Election Office early voting location for the November 6, 2018 election. I have attached Judge Grubb's order. In Part B of the her Order, Judge Grubbs references paragraph 40 of the Petition, which also is attached; Henry County is referenced in the Petition at paragraph 40. We apologize for the short notice. The order was just entered, and the Court has also just denied our request for a continuance.

We would like to arrange for the logistics for this examination, and I have summarized our proposal for that examination below:

Examination  of Henry County DRE Machines:

Location: Henry County Elections Office

Time and Date:  9 am through 5pm,  Monday January 14, 2019 and continuing  until completion

Machines and their related memory cards for inspection:

Voting machines used in the Henry County Election Office during early voting for the November 6, 2018 election.

Henry County to identify by machine serial number which machines were used in the December 4 runoff or otherwise used, operated or put through maintenance or testing after the November 6, 2018 election.

Machines to be inspected should not be turned on, operated, re-programmed or otherwise altered in any way until Plaintiff's experts are on site.

Henry County will need to make a full image of the contents of the internal flash chips of the all machines for our experts' forensic examination to avoid any damage to the DREs as our experts examine the internal memory of the DREs . These copies should be made under the observation of Plaintiff's experts on site who will review the files on site, presumably on a county laptop. We anticipate that this effort may require a further discussion of protocols and security, as well as confidentiality agreements as anticipated by the Court.

Plaintiff's experts will then select machines from the group to have the experts examine in the "post-election mode" of the November 6, 2018 election.

We appreciate Henry County's prompt cooperation given the expedited schedule.

Please forward this message to your county attorney representing the Election Office. I searched on the Henry County website and did not find  contact information for the county attorney's office.

Thanks and again and please give me a call if you have any questions.

Bruce Brown
(404) 881-0700

<20190111 Lt Gov Order on Pending Motions .pdf>
<20181123 LtGov Case Complaint Stamp Filed Final.pdf>

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR**

**CONTINUANCE** on all parties by electronically filing it with the Clerk of the

Court using the Odyssey eFileGA system, which will automatically send an email

notification of such filing to counsel for the parties.

This 15th day of January, 2019.


*/s/ Josh Belinfante*
Josh Belinfante

Fulton County Superior Court
***EFILED***LS
Date: 1/15/2019 5:44 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) ) ) ) Civil Action File No. 2018CV313418 |
| Petitioner, | ) ) |
| v. | ) ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) ) ) |
| Defendant | ) ) ) |

**FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' RESPONSE IN
OPPOSITION TO PETITIONERS' MOTION FOR CONTINUANCE**

The intention of the election laws is that election contests should be determined as speedily as possible.  OCGA § 21-2-525 (a) provides:

> Within 20 days after the return day fixed in the notice as provided in subsection (a) of Code Section 21-2-524 to the defendant, the presiding judge shall fix a place and time for the hearing of the contest proceeding. Such judge may fix additional hearings at such other times and places as are necessary to decide the contest promptly.

Short time periods reflect the legislature's strong desire to avoid the confusion and prejudice which can come in the wake of election uncertainty.  Plyman v. Glynn County, 276 Ga. 426, 578 S.E.2d 124 (2003).

On November 23, 2018, Petitioners filed a 40-page verified petition, excluding exhibits, that set forth the grounds on which they based their election contest.  Petitioners' affidavits, attached to the Petition, allege that the "the contested result of the 2018 election for Lieutenant Governor for the State of Georgia is illegal and the return thereof incorrect."  Petitioners now

1

appear to concede that contrary to the affidavits they executed, they do not have sufficient evidence to sustain that Petition. The hearing date has been set since December 5, 2018. Petitioners have had 41 days since the trial date was scheduled to prepare for the hearing. That is more than sufficient notice to prepare for the hearing.

In Head v. Williams, 269 Ga. 894 (1998), the Petitioner sought a continuance of the hearing date on the grounds that he needed time to hire an attorney, develop support for his complaint, and subpoena witnesses. The trial court denied the motion for a continuance. The Georgia Supreme Court upheld the denial of the continuance because

> Head knew that he had the burden of presenting evidence to support his allegations of illegal voting and tampering with absentee ballots. He had six days' notice that a hearing date was being set and three days' notice of the actual date of the hearing. Since he was the petitioner in the election contest, this notice was reasonable. Therefore, the trial court did not abuse its discretion in denying the petitioner's motion for a continuance.

Id. at 895.

In the present case, the Petition was filed on November 23, 2018. In addition to the allegations within the Petition, Petitioners have identified multiple experts. On January 8, 2019, Petitioners also submitted, as a proffer of evidence, the affidavits of two of their experts. Petitioners have obtained documents and information pursuant to Open Records Requests. Petitioners have known since December 5, 2018 that the hearing was scheduled for January 17, 2019. As in Head, Petitioners have had sufficient notice of the hearing date and sufficient opportunity to mount their evidence.

Further, Petitioners seek a continuance of the hearing date in order to obtain "discovery". However, contrary to Petitioners' assertions, OCGA §21-2-525 does not provide for discovery. What it does provide for is process by which testimony at the hearing can be compelled:

> The court shall have authority to subpoena and to compel the attendance of any officer of the primary or election complained of and of any person capable of testifying concerning

2

the same; to compel the production of evidence **which may be required at such hearing**, in the like manner and to the same extent as in other civil cases litigated before such court...

There is no common law right to an election contest so Petitioners are constrained by the statutory procedures set forth in the statute. The Georgia Election Code makes no provision for discovery. That more far reaching discovery is available to a litigant under the Civil Practice Act is irrelevant in the instant matter. Election contests are governed by the Georgia Election Code, which differs from the Civil Practice Act in several respects[1].

Although Petitioners filed an Emergency Motion for Inspection on November 29, 2018, Petitioners waited until January 9, 2019 to advance this request. Nevertheless, on January 11, 2019, this Court entered an Order providing Petitioners with certain access. Petitioners are not satisfied with the breadth and depth of that access and now seek a continuance because they are not satisfied with the access granted. Lastly, Petitioners' request for far-reaching discovery has already been denied. Petitioners are unhappy that the production and inspection of the DRE machines that was begun on January 14, 2019 was under the oversight of Michael Barnes, Director of the Center for Election Systems in the Secretary of State's Office[2]. On January 10, 2019, Petitioners' counsel proposed a protocol that was abandoned once the Court entered its January 11, 2019 Order—which Order denied much of what Petitioners' proposed protocol

---

[1] Georgia Election Code (O.C.G.A. § 21-2-524(g)) does not allow amendments that add party defendants while the Civil Practice Act (OCGA §9-11-15) does. The Election Code (O.C.G.A. § 21-2-524(f)) requires special process and an answer date no longer than ten days while the Civil Practice Act (OCGA §§9-11-4, 9-11-12) allow a summons or waiver and a thirty or sixty day answer date.

[2] The Secretary of State is the chief election official in Georgia. Mr. Barnes, an employee of the Secretary of State, provided an affidavit concerning the scope of Petitioners' requested inspection on January 11, 2019. Mr. Barnes was the appropriate person to oversee the inspection because the contest asserts "multiple and complex irregularities created by a technologically flawed electronic voting system" [November 29, 2018 Motion for Clarification at p. 3] and "machine malfunctions and irregularities from all corners of the state" [January 11, 2019 Brief in Support of Proposed Order Regarding Inspection of Equipment at p. 6]. Fulton County utilizes the voting machines dictated by the Election Code.

3

sought to include.   Fulton County BRE has made it abundantly clear that it is constrained to follow state election law.   Therefore, it has, and will continue to, defer to the Secretary of State – Georgia's chief election official -- regarding the technicalities and confidentiality of Georgia's state-mandated voting system.   Thus, Petitioners were advised that given the sensitivity of the election material sought that the inspection would take place under the supervision of Michael Barnes beginning at 9:00 a.m. on Monday, January 14, 2019.   Mr. Barnes was present at that time and access to the applicable DRE machines, in accordance with the January 11, 2019 Order, was granted to Petitioners.

The interests of finality in elections require that challenges to elections be resolved in an expeditious manner. As is abundantly clear in the Election Code, a contest is not treated as an ordinary civil action. The procedure is designed for expeditious and timely resolution of election issues.   Thus, the election contest statute does not provide for discovery.   It does, however, provide for the prompt resolution of a contest—within 20 days of answer. OCGA §21-2-525(a). The hearing date of January 17, 2019 complies with OCGA §21-2-525(a).

Petitioners received sufficient notice of the hearing date as contemplated by OCGA § 21-2-525 (a).   In furtherance of the Election Code's preference for finality and certainty in election results, and for the swift resolution of contests, Petitioners' Motion for Continuance should be denied.

Respectfully submitted this 15th day of January, 2019.

**OFFICE OF THE FULTON COUNTY ATTORNEY**
Patrise Perkins-Hooker
Georgia Bar No. 572358

/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.burwell@fultoncountyga.gov

4

Cheryl Melissa Ann Ringer
Georgia Bar No. 557420
Cheryl.ringer@fultoncountyga.gov
David Lowman
Georgia Bar No. 460298
David.lowman@fultoncountyga.gov
Attorneys for Defendant Fulton County BRE

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
Office: (404) 612-0246
Fax:   (404)730-6540

5

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) |
| | ) |
| | ) Civil Action File No. 2018CV313418 |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) |
| | ) |
| | ) |
| Defendant | ) |
| | ) |

## CERTIFICATE OF SERVICE

This is to certify that on this day, I have caused to be electronically filed the foregoing

**FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' RESPONSE IN**

**OPPOSITION TO PETITIONERS' MOTION FOR CONTINUANCE** with the Fulton

County Superior Court using the Odyssey efile GA system which will provide automatic

notification of this filing to all counsel of record.

This 15th day of January, 2019.


/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775050

6

Fulton County Superior Court
***EFILED***MH
Date: 1/15/2019 9:06 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

RHONDA J. MARTIN, *et al.*,

     Plaintiffs,

v.

BRAD RAFFENSPERGER, Secretary of
State of Georgia, *et al.*,

     Defendants.

Civil Action No. 2018CV313418

### DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS' RESPONSE IN OPPOSITION TO MOTION FOR CONTINUANCE

Defendant Gwinnett County Board of Registrations and Elections (Gwinnett BORE) opposes Plaintiffs' Motion for Continuance and fully joins and incorporates the responses of the Secretary of State, Fulton County, and Geoff Duncan by reference. The Gwinnett BORE offers several additional arguments for the Court's consideration.

The Georgia Supreme Court recognizes the critical state interest in avoiding "election uncertainty and the confusion and prejudice that can come in its wake." *Broughton v. Douglas Cty. Bd. of Elections*, 286 Ga. 528, 529 (2010). This is why election contests must move far faster than normal litigation—because that uncertainty must be ended quickly. *Id.*

As explained by the other defendants, Plaintiffs are now facing the same problem they faced at the motion-to-dismiss stage: there are not enough votes in question for Plaintiffs to carry their burden. The reported totals for the Lieutenant Governor's race[1] show

---

[1] Available at https://results.enr.clarityelections.com/GA/91639/Web02-state.221451/#/cid/21000

- 1 -

Geoff Duncan receiving 1,951,738 votes and Sarah Riggs Amico receiving 1,828,566, for a difference of 123,172 votes.

Plaintiffs must show with mathematical precision that the outcome of the Lt. Governor's race would be placed in doubt by their evidence. *Mead v. Sheffield*, 278 Ga. 268, 271 (2004); *Howell v. Fears*, 275 Ga. 627, 628 (2002). Speculation, conjecture, and theories are simply not enough. *Id.*

Plaintiffs' own allegations led to the review of a handful of precincts they have the opportunity to inspect. Despite this limitation, Plaintiffs apparently have not even attended the proposed review of voting machines in several counties. Plaintiffs have never shown this Court how their intrusive—and perhaps destructive—proposed additional inspections would lead to any evidence whatsoever of an additional 123,172 votes in dispute. Without this showing, they cannot carry their burden.

Defendant Gwinnett BORE has spent and will continue to expend staff resources responding to the GEMS server information Plaintiffs were allowed to receive by this Court's Order. Defendant Gwinnett BORE urges the Court to deny the request for a continuance so that the unnecessary expenditure of taxpayer funds required by this case can end.

## CONCLUSION

Plaintiffs lack any evidence of a hack of voting machines to affect the Lt. Governor's race. As a result, they now seek more time to engage in a fishing expedition. This Court should deny Plaintiffs' motion and proceed with the hearing on January 17, 2019.

- 2 -

This 15th day of January, 2019.

/s/ Bryan P. Tyson
Frank B. Strickland
Georgia Bar No. 687600
fbs@sbllaw.net
Bryan P. Tyson
Georgia Bar No. 515411
bpt@sbllaw.net
Anne W. Lewis
Georgia Bar No. 737490
awl@sbllaw.net
STRICKLAND BROCKINGTON
   LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
(678) 347-2200

Richard A. Carothers
Georgia Bar No. 111075
richard.carothers@carmitch.com
Brian R. Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA 30518
(770) 932-3552

*Attorneys for the Gwinnett County Board of
Registrations and Elections*

- 3 -

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

RHONDA J. MARTIN, *et al.*,

      Plaintiffs,

v.

BRAD RAFFENSPERGER, Secretary of
State of Georgia, *et al.*,

      Defendants.

Civil Action No. 2018CV313418

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day electronically filed the foregoing DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS' RESPONSE IN OPPOSITION TO MOTION FOR CONTINUANCE with the Clerk of Court using the Odyssey E-Filing system which will provide automatic notification of such filing to all counsel of record.

      This 15th day of January, 2019.

                      /s/ Bryan P. Tyson
                      Bryan P. Tyson
                      Georgia Bar No. 515411

- 4 -

Fulton County Superior Court
***EFILED***MH
Date: 1/15/2019 5:12 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE,
RHONDA J. MARTIN, SMYTHE
DUVAL, and JEANNE DUFORT,

                  Plaintiffs,

v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
FULTON COUNTY BOARD OF
REGISTRATION AND ELECTIONS,
GWINNETT COUNTY BOARD OF
REGISTRATIONS AND ELECTIONS,
DEKALB COUNTY BOARD OF
REGISTRATIONS AND ELECTIONS,
and GEOFF DUNCAN,

                  Defendants.

Civil Action No.: 2018CV313418

**RESPONSE OF DEFENDANT GEOFF DUNCAN TO PLAINTIFFS' RENEWED**

**DISCOVERY DEMANDS AND MOTION FOR CONTINUANCE AND**

**DEFENDANT DUNCAN'S MOTION TO RECONSIDER HIS PREVIOUS MOTION TO**

**DISMISS**

      NOW COMES the Defendant Geoff Duncan, in response to Plaintiffs' Renewed Discovery

Demands and Motion for Continuance, showing the following:

<u>Response to Plaintiffs' Renewed Discovery Argument</u>

      Defendant Duncan incorporates herein by reference the response by the Georgia Secretary

of State regarding the Plaintiffs' renewed argument regarding the examination of Secretary of State

records and county electronic voting machines.  This issue has already been litigated before the

court and the position and actions of the County Defendants and the Secretary of State is consistent

with the Court's previous ruling.

### Response to Plaintiffs' Motion for Continuance

The Court set out the schedule for resolving this dispute at its preliminary scheduling conference on December 5, 2018. No objection was raised by any party at that time as to the expedited calendar. The Secretary of State and the local county election boards have provided the Plaintiffs with the discovery documents and equipment access consistent with the Court's ruling of January 11, 2019. Therefore, the are no reasonable grounds for the Plaintiffs' request for a continuance at this time.

### Defendant Duncan's Motion to Reconsider his Previous Motion to Dismiss

Defendant Duncan is aware that a Motion to Reconsider ("Motion") is an extraordinary motion and rarely granted. However, the Plaintiffs' attempt to delay final adjudication of this important matter merits the Court's reexamination of its ruling denying our Motion to Dismiss which the court acknowledged was a "close call" in the hearing of January 9, 2019.

In support of our renewed Motion, this Defendant incorporates herein by reference Defendant Duncan's Supplemental Brief in Support of Geoff Duncan's Motion to Dismiss, filed January 8, 2019, which demonstrated that even when the Court accepts the Plaintiffs' factual allegations as true, the simple math does not place the outcome of the race in question in doubt given Lt. Governor Duncan's margin of victory of 123,172 votes. Exhibit A, 2018 Georgia General Election Returns.

The Parties stipulated the admissibility of public election returns maintained by the Secretary of State  at the January 9, 2019 hearing. Courts may rely upon stipulated facts in considering a Motion to Dismiss. *See Lee v. Green, 222 Ga 141 (1966)*. The Court may also take judicial notice of public records. *See also Johnson V. Allied*, 323 Ga App. 427 (2013))

Therefore, Defendant Duncan further shows the court the following:

"The setting aside of an election in which the people have chosen their representative is a drastic remedy that should not be undertaken lightly, but instead should be reserved for cases in which the person challenging an election has clearly established that the violation  has placed the result of the election in doubt." *Hart v. Crawford*, 270 Ga. 7, 10 (1998)

The Plaintiffs entire argument that a violation of some kind has occurred is their circumstantial factual argument that the total vote count in the Lt. Governor's race was lower than in other statewide races. However, a review of recent electoral history in Georgia demonstrates several valid reasons for the lower voter participation in the race at issue unrelated to any kind of nefarious or negligent activities:

1. *The Impact of Third Party Candidates.*  All things being equal, voter participation can be substantially lower in down ballot General Elections were a third party candidate is not on the ballot. This was demonstrated most clearly in 2014, when two Public Service Commission seats were on the ballot. Both races had an incumbent seeking reelection. Both races were decided by a statewide vote.  In the race for District 4, there was a Republican incumbent and both a Democratic and Libertarian challenger.  The total vote count was 2,512,425 votes.  In the District 4 race, there was also a Republican incumbent but only a Democratic challenger.  The vote count in that race was only 2,243,060 -- a drop in voter participation of 269,365 votes.  Exhibit B, 2014 Georgia General Election Returns.

2. *The Impact of Incumbents.*  The Lt. Governor's race in 2016 not only did not have a third party candidate in the race, but it was also the only race in which there was not only no third party but also no incumbent, for whom a voter may be either more or less favorable to his or her record drawing a voter to be either more likely to vote for or against the incumbent.  Exhibit A, 2018 Georgia General Election Returns.

3. *Voter Down ballot Drop Off Voting in High Turnout Years.*  According to the Secretary of State's public records, 2018 saw a dramatic and unprecedented increase in voter registration in Georgia of 1,237,399 voters between 2014 and 2018. (5,191,182 in 2014 and 6,428,581 in 2018.) Voter turnout also increased from 50.03% in 2014 to 61.44% in 2018. Exhibits A & B, 2014 and 2018 Georgia General Election Returns. This means there were a substantially large number of new or occasional voters casting ballots in the 2018 General Election. In elections in which you have high turnout of such voters there is often a severe drop off from the top ballot races to even high profile down ballot races. For instance, in the 2016 General Election, there was a 76.53% voter turnout. However, there was a drop off in voter participation between the race for President and U.S. Senate of 194,581 votes. The drop off between the Presidential race and the race for Public Service Commission (in which unlike the race for President and U.S. Senate races there was also no third party option) was even more severe -- 501,461 votes. Exhibit C, 2016 Georgia General Election Returns. Therefore, when combined with previously cited factors, the drop off in the race at issue is not out of the ordinary in an election year such as 2018.

**Conclusion**

As the public record demonstrates, the simple mathematical flaws in the Plaintiffs' Petition is why the Democratic Candidate for Lt. Governor Ms. Sarah Riggs Amico herself in a letter attached to the Petition admitted: "The number of residual votes in the Lieutenant Governor's race is unlikely to affect the outcome of my race ..."

Therefore, the Plaintiffs' Petition seeking a new election should be dismissed as a matter of law.

This 15th day of January, 2019.

DENTONS US LLP

Edward H. Lindsey Jr.

Page 4 of 5

Georgia Bar No. 453075

Samuel S. Olens
Georgia Bar No. 551540

Dentons US LLP
303 Peachtree Street, N.E.
Suite 5300
Atlanta, GA 30308
Telephone: 404-527-4000
Facsimile: 404-527-4198

Attorneys for Defendant, Geoff Duncan

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **RESPONSE OF DEFENDANT GEOFF DUNCAN TO PLAINTIFFS' DISCOVERY DEMANDS AND MOTION FOR CONTINUANCE AND DEFENDANT DUNCAN'S MOTION TO RECONSIDER HIS PREVIOUS MOTION TO DISMISS** has been served upon all interested parties by electronically filing with the Clerk of the Court using the Odyssey eFileGA System, which will automatically send an e mail notification of such filing to counsel for the parties.

This 15th day of January, 2019.

# Exhibit A

# GEORGIA SECRETARY OF STATE ROBYN A. CRITTENDEN

GENERAL ELECTION

## Official Results

## ▾ STATE OFFICES

## ▾ STATEWIDE OFFICES

### Governor

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| BRIAN KEMP (REP) | 50.22% | 1,978,408 |
| STACEY ABRAMS (DEM) | 48.83% | 1,923,685 |
| TED METZ (LIB) | 0.95% | 37,235 |
| | | **3,939,328** |

### Lieutenant Governor

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| GEOFF DUNCAN (REP) | 51.63% | 1,951,738 |
| SARAH RIGGS AMICO (DEM) | 48.37% | 1,828,566 |
| | | **3,780,304** |

### Secretary Of State

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| BRAD RAFFENSPERGER (REP) | 49.09% | 1,906,588 |
| JOHN BARROW (DEM) | 48.67% | 1,890,310 |
| SMYTHE DUVAL (LIB) | 2.23% | 86,696 |
| | | **3,883,594** |

GA - Election Night Reporting

## Attorney General

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| CHRIS CARR (I) (REP) | 51.30% | 1,981,563 |
| CHARLIE BAILEY (DEM) | 48.70% | 1,880,807 |
| | | **3,862,370** |

## Commissioner Of Agriculture

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| GARY BLACK (I) (REP) | 53.08% | 2,040,097 |
| FRED SWANN (DEM) | 46.92% | 1,803,383 |
| | | **3,843,480** |

## Commissioner Of Insurance

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| JIM BECK (REP) | 50.37% | 1,944,963 |
| JANICE LAWS (DEM) | 46.99% | 1,814,499 |
| DONNIE FOSTER (LIB) | 2.65% | 102,163 |
| | | **3,861,625** |

## State School Superintendent

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| RICHARD WOODS (I) (REP) | 53.02% | 2,048,003 |
| OTHA E. THORNTON, JR (DEM) | 46.98% | 1,814,461 |
| | | **3,862,464** |

## Commissioner Of Labor

| Counties/Precincts Reporting: 100 % | Percentage | Votes |
|---|---|---|
| MARK BUTLER (I) (REP) | 52.46% | 2,019,389 |
| RICHARD KEATLEY (DEM) | 47.54% | 1,830,061 |
| | | **3,849,450** |

## Public Service Commission, District 3 - Metro-Atlanta

| Counties/Precincts Reporting: **100 %** | Percentage | Votes |
|---|---|---|
| CHUCK EATON (I) (REP) | 49.70% | 1,917,656 |
| LINDY MILLER (DEM) | 47.63% | 1,838,020 |
| RYAN GRAHAM (LIB) | 2.67% | 102,878 |
| | | **3,858,554** |

## Public Service Commission, District 5 - Western

| Counties/Precincts Reporting: **100 %** | Percentage | Votes |
|---|---|---|
| TRICIA PRIDEMORE (I) (REP) | 50.25% | 1,937,599 |
| DAWN A. RANDOLPH (DEM) | 47.23% | 1,820,868 |
| JOHN TURPISH (LIB) | 2.52% | 97,203 |
| | | **3,855,670** |

## Counties/Precincts Reporting

▨ Completely Reported        ☐ Not Reporting

☐ Partially Reported



100%

COUNTIES COMPLETE .......................................................................................................... **159**/159

PRECINCTS COMPLETE ....................................................................................................... **2634**/2634

# GEORGIA SECRETARY OF STATE ROBYN A. CRITTENDEN

GENERAL ELECTION

## Official Results

# TURNOUT

🗓 11/17/2018 4:27:59 PM EST



| | |
|---|---|
| ☐ | 0% - 10% |
| ☐ | 10% - 20% |
| ☐ | 20% - 30% |
| ☐ | 30% - 40% |
| ☐ | 40% - 50% |
| ☐ | 50% - 60% |
| ☐ | 60% - 70% |
| ☐ | 70% - 80% |
| ☐ | 80% - 90% |
| ☐ | 90% - 100% |
| ☐ | Greater than 100% |
| ☐ | Not Reporting |
| ☐ | Not Participating |

Google

(https://maps.google.com/maps?ll=32.893044&z=6&t=m&hl=en&gl=US&mapclient=apiv3)

| General Turnout | 3,949,905 |
|---|---|
| | **61.44%** |

## OUNTIES TURNOUT

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|---|---|---|---|---|---|
| Appling | 9 | 9 | 6,827 | 10,613 | 64.33% |
| Atkinson | 4 | 4 | 2,527 | 4,252 | 59.43% |
| Bacon | 1 | 1 | 3,836 | 6,010 | 63.83% |
| Baker | 5 | 5 | 1,297 | 2,232 | 58.11% |
| Baldwin | 14 | 14 | 15,690 | 23,399 | 67.05% |
| Banks | 13 | 13 | 6,867 | 10,807 | 63.54% |
| Barrow | 16 | 16 | 27,459 | 47,514 | 57.79% |
| Bartow | 16 | 16 | 37,441 | 64,074 | 58.43% |
| Ben Hill | 2 | 2 | 5,565 | 9,258 | 60.11% |
| Berrien | 5 | 5 | 6,265 | 10,247 | 61.14% |
| Bibb | 31 | 31 | 60,867 | 99,934 | 60.91% |
| Bleckley | 1 | 1 | 4,872 | 6,944 | 70.16% |
| Brantley | 3 | 3 | 5,711 | 9,984 | 57.20% |
| Brooks | 7 | 7 | 5,749 | 9,911 | 58.01% |
| Bryan | 10 | 10 | 15,019 | 25,712 | 58.41% |
| Bulloch | 16 | 16 | 23,746 | 39,983 | 59.39% |
| Burke | 16 | 16 | 8,758 | 14,449 | 60.61% |
| Butts | 1 | 1 | 8,892 | 15,280 | 58.19% |

|  |  |  | 3,949,905 | 6,428,581 | 61.44% |



GA – Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|--------|--------------------|-----------------------|--------------|-------------------|---------------|
| Calhoun | 5 | 5 | 1,912 | 2,982 | 64.12% |
| Camden | 14 | 14 | 17,119 | 31,632 | 54.12% |
| Candler | 2 | 2 | 3,549 | 5,572 | 63.69% |
| Carroll | 28 | 28 | 41,959 | 72,908 | 57.55% |
| Catoosa | 11 | 11 | 23,836 | 40,513 | 58.84% |
| Charlton | 8 | 8 | 3,391 | 6,072 | 55.85% |
| Chatham | 90 | 90 | 103,841 | 188,315 | 55.14% |
| Chattahoochee | 1 | 1 | 1,107 | 3,132 | 35.34% |
| Chattooga | 13 | 13 | 7,464 | 11,099 | 67.25% |
| Cherokee | 42 | 42 | 106,632 | 165,612 | 64.39% |
| Clarke | 24 | 24 | 43,450 | 70,597 | 61.55% |
| Clay | 5 | 5 | 1,191 | 1,856 | 64.17% |
| Clayton | 58 | 58 | 92,403 | 169,574 | 54.49% |
| Clinch | 5 | 5 | 2,268 | 3,884 | 58.39% |
| Cobb | 141 | 141 | 312,488 | 486,696 | 64.21% |
| Coffee | 6 | 6 | 12,669 | 21,900 | 57.85% |
| Colquitt | 19 | 19 | 13,001 | 21,948 | 59.24% |
| Columbia | 46 | 46 | 61,779 | 95,779 | 64.50% |
| Cook | 8 | 8 | 5,816 | 9,423 | 61.72% |
| Coweta | 27 | 27 | 58,194 | 91,585 | 63.54% |
| | | | 3,949,905 | 6,428,581 | 61.44% |



1/12/2019                                    GA - Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|---|---|---|---|---|---|
| Crawford | 6 | 6 | 4,953 | 7,459 | 66.40% |
| Crisp | 5 | 5 | 7,082 | 11,674 | 60.66% |
| Dade | 7 | 7 | 5,478 | 10,496 | 52.19% |
| Dawson | 3 | 3 | 11,606 | 18,278 | 63.50% |
| Decatur | 9 | 9 | 9,172 | 15,201 | 60.34% |
| DeKalb | 193 | 193 | 313,552 | 494,731 | 63.38% |
| Dodge | 16 | 16 | 7,079 | 11,055 | 64.03% |
| Dooly | 5 | 5 | 3,811 | 5,669 | 67.23% |
| Dougherty | 28 | 28 | 31,537 | 57,817 | 54.55% |
| Douglas | 25 | 25 | 55,358 | 89,305 | 61.99% |
| Early | 5 | 5 | 4,159 | 6,992 | 59.48% |
| Echols | 1 | 1 | 1,146 | 1,929 | 59.41% |
| Effingham | 17 | 17 | 23,426 | 38,132 | 61.43% |
| Elbert | 11 | 11 | 7,418 | 11,123 | 66.69% |
| Emanuel | 11 | 11 | 7,751 | 12,343 | 62.80% |
| Evans | 1 | 1 | 3,461 | 5,569 | 62.15% |
| Fannin | 12 | 12 | 11,250 | 17,200 | 65.41% |
| Fayette | 36 | 36 | 58,118 | 83,763 | 69.38% |
| Floyd | 25 | 25 | 30,440 | 52,469 | 58.02% |
| Forsyth | 16 | 16 | 93,526 | 143,680 | 65.09% |

|  |  |  | **3,949,905** | **6,428,581** | **61.44 %** |

GA - Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|---|---|---|---|---|---|
| Franklin | 7 | 7 | 8,171 | 13,069 | 62.52% |
| Fulton | 373 | 373 | 425,139 | 703,177 | 60.46% |
| Gilmer | 13 | 13 | 12,554 | 19,069 | 65.83% |
| Glascock | 4 | 4 | 1,304 | 1,837 | 70.99% |
| Glynn | 20 | 20 | 32,767 | 54,274 | 60.37% |
| Gordon | 12 | 12 | 17,858 | 30,086 | 59.36% |
| Grady | 13 | 13 | 8,398 | 13,546 | 62.00% |
| Greene | 5 | 5 | 9,025 | 12,081 | 74.70% |
| Gwinnett | 157 | 157 | 315,815 | 525,568 | 60.09% |
| Habersham | 7 | 7 | 15,540 | 24,707 | 62.90% |
| Hall | 31 | 31 | 67,582 | 114,817 | 58.86% |
| Hancock | 10 | 10 | 3,554 | 5,601 | 63.45% |
| Haralson | 12 | 12 | 10,612 | 17,923 | 59.21% |
| Harris | 12 | 12 | 16,019 | 22,877 | 70.02% |
| Hart | 7 | 7 | 9,666 | 14,706 | 65.73% |
| Heard | 6 | 6 | 4,065 | 6,678 | 60.87% |
| Henry | 37 | 37 | 98,743 | 154,376 | 63.96% |
| Houston | 16 | 16 | 59,370 | 93,924 | 63.21% |
| Irwin | 3 | 3 | 3,569 | 5,277 | 67.63% |
| Jackson | 4 | 4 | 26,950 | 42,272 | 63.75% |
| | | | 3,949,905 | 6,428,581 | 61.44 % |

1/12/2019                                        GA - Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|--------|-------------------|------------------------|--------------|-------------------|---------------|
| Jasper | 3 | 3 | 5,949 | 9,030 | 65.88% |
| Jeff Davis | 9 | 9 | 4,830 | 7,556 | 63.92% |
| Jefferson | 8 | 8 | 6,789 | 10,349 | 65.60% |
| Jenkins | 5 | 5 | 2,889 | 4,677 | 61.77% |
| Johnson | 4 | 4 | 3,489 | 5,060 | 68.95% |
| Jones | 10 | 10 | 12,469 | 18,194 | 68.53% |
| Lamar | 6 | 6 | 7,373 | 11,288 | 65.32% |
| Lanier | 1 | 1 | 2,689 | 5,034 | 53.42% |
| Laurens | 16 | 16 | 18,998 | 28,805 | 65.95% |
| Lee | 10 | 10 | 13,571 | 21,012 | 64.59% |
| Liberty | 13 | 13 | 15,404 | 31,051 | 49.61% |
| Lincoln | 7 | 7 | 3,983 | 5,748 | 69.29% |
| Long | 7 | 7 | 4,007 | 7,606 | 52.68% |
| Lowndes | 9 | 9 | 35,817 | 67,459 | 53.09% |
| Lumpkin | 1 | 1 | 11,587 | 19,567 | 59.22% |
| Macon | 5 | 5 | 4,244 | 6,569 | 64.61% |
| Madison | 12 | 12 | 11,724 | 18,018 | 65.07% |
| Marion | 5 | 5 | 2,935 | 4,468 | 65.69% |
| McDuffie | 9 | 9 | 8,819 | 13,587 | 64.91% |
| McIntosh | 6 | 6 | 5,425 | 8,962 | 60.53% |
| | | | 3,949,905 | 6,428,581 | 61.44 % |

1/12/2019                                        GA - Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|---|---|---|---|---|---|
| Meriwether | 14 | 14 | 8,678 | 13,710 | 63.30% |
| Miller | 1 | 1 | 2,322 | 3,814 | 60.88% |
| Mitchell | 11 | 11 | 7,470 | 13,324 | 56.06% |
| Monroe | 14 | 14 | 12,987 | 18,724 | 69.36% |
| Montgomery | 7 | 7 | 3,535 | 5,145 | 68.71% |
| Morgan | 7 | 7 | 9,580 | 13,100 | 73.13% |
| Murray | 7 | 7 | 11,114 | 19,170 | 57.98% |
| Muscogee | 25 | 25 | 63,451 | 112,540 | 56.38% |
| Newton | 22 | 22 | 43,213 | 69,805 | 61.91% |
| Oconee | 13 | 13 | 20,796 | 27,538 | 75.52% |
| Oglethorpe | 3 | 3 | 6,500 | 9,473 | 68.62% |
| Paulding | 12 | 12 | 61,399 | 98,948 | 62.05% |
| Peach | 7 | 7 | 10,472 | 16,632 | 62.96% |
| Pickens | 12 | 12 | 13,394 | 21,151 | 63.33% |
| Pierce | 8 | 8 | 6,897 | 10,855 | 63.54% |
| Pike | 8 | 8 | 8,561 | 12,212 | 70.10% |
| Polk | 7 | 7 | 12,901 | 20,970 | 61.52% |
| Pulaski | 1 | 1 | 3,635 | 5,293 | 68.68% |
| Putnam | 5 | 5 | 9,363 | 13,578 | 68.96% |
| Quitman | 2 | 2 | 951 | 1,519 | 62.61% |

|  |  |  | **3,949,905** | **6,428,581** | **61.44 %** |



1/12/2019                                    GA – Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|--------|-------------------|------------------------|--------------|-------------------|---------------|
| Rabun | 1 | 1 | 7,605 | 11,513 | 66.06% |
| Randolph | 9 | 9 | 2,805 | 4,154 | 67.53% |
| Richmond | 68 | 68 | 70,360 | 122,747 | 57.32% |
| Rockdale | 16 | 16 | 36,731 | 58,299 | 63.00% |
| Schley | 1 | 1 | 1,937 | 2,645 | 73.23% |
| Screven | 12 | 12 | 5,438 | 8,594 | 63.28% |
| Seminole | 5 | 5 | 3,248 | 5,341 | 60.81% |
| Spalding | 18 | 18 | 24,471 | 41,325 | 59.22% |
| Stephens | 1 | 1 | 9,118 | 17,058 | 53.45% |
| Stewart | 4 | 4 | 1,829 | 2,917 | 62.70% |
| Sumter | 11 | 11 | 10,594 | 16,395 | 64.62% |
| Talbot | 7 | 7 | 2,962 | 4,334 | 68.34% |
| Taliaferro | 2 | 2 | 938 | 1,211 | 77.46% |
| Tattnall | 8 | 8 | 6,663 | 11,036 | 60.38% |
| Taylor | 3 | 3 | 3,301 | 5,068 | 65.13% |
| Telfair | 6 | 6 | 3,650 | 5,525 | 66.06% |
| Terrell | 6 | 6 | 3,951 | 6,366 | 62.06% |
| Thomas | 20 | 20 | 17,297 | 27,686 | 62.48% |
| Tift | 12 | 12 | 13,702 | 22,064 | 62.10% |
| Toombs | 5 | 5 | 8,887 | 15,700 | 56.61% |

|  |  |  | **3,949,905** | **6,428,581** | **61.44 %** |

1/12/2019                                    GA - Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|---|---|---|---|---|---|
| Towns | 4 | 4 | 6,167 | 9,386 | 65.70% |
| Treutlen | 2 | 2 | 2,621 | 4,025 | 65.12% |
| Troup | 15 | 15 | 23,977 | 38,876 | 61.68% |
| Turner | 3 | 3 | 3,285 | 5,126 | 64.09% |
| Twiggs | 5 | 5 | 3,807 | 5,849 | 65.09% |
| Union | 11 | 11 | 11,912 | 17,800 | 66.92% |
| Upson | 4 | 4 | 10,602 | 15,930 | 66.55% |
| Walker | 11 | 11 | 21,574 | 38,613 | 55.87% |
| Walton | 21 | 21 | 38,771 | 61,655 | 62.88% |
| Ware | 12 | 12 | 11,064 | 18,506 | 59.79% |
| Warren | 1 | 1 | 2,273 | 3,519 | 64.59% |
| Washington | 8 | 8 | 8,200 | 11,988 | 68.40% |
| Wayne | 12 | 12 | 10,158 | 15,675 | 64.80% |
| Webster | 1 | 1 | 1,102 | 1,493 | 73.81% |
| Wheeler | 2 | 2 | 1,942 | 2,751 | 70.59% |
| White | 11 | 11 | 11,479 | 18,137 | 63.29% |
| Whitfield | 23 | 23 | 27,432 | 46,058 | 59.56% |
| Wilcox | 6 | 6 | 2,824 | 4,237 | 66.65% |
| Wilkes | 7 | 7 | 4,394 | 6,345 | 69.25% |
| Wilkinson | 9 | 9 | 4,276 | 6,016 | 71.08% |

|  |  |  | 3,949,905 | 6,428,581 | 61.44 % |



1/12/2019                                    GA - Election Night Reporting

| County | Precincts Reported | Precincts Participating | Ballots Cast | Registered Voters | Voter Turnout |
|--------|----|----|----|----|----|
| Worth | 15 | 15 | 7,867 | 12,645 | 62.21% |
| | | | **3,949,905** | **6,428,581** | **61.44 %** |

## Counties/Precincts Reporting

■ Completely Reported              ☐ Not Reporting

☐ Partially Reported



100%

COUNTIES COMPLETE .................................................................159/159

PRECINCTS COMPLETE ..............................................................2634/2634

## Voter Turnout

| TOTAL | **61.44%** |
|-------|-----------|
| Ballots Cast | 3,949,905 |
| Registered Voters | 6,428,581 |

Copyright 2018 - www.scytl.com

# Exhibit B

1/12/2019                                     GA - Election Results



**GEORGIA ELECTION RESULTS**
A public service of
Secretary of State Brian P. Kemp

| Statewide Results | Results by County | |
|---|---|---|
| **General Election** | Registered Voters: 5,191,182 | **Counties Partially Reported:** 0 of 159 |
| **November 4, 2014** | Ballots Cast: 2,596,947 | **Counties Completely Reported:** 159 of 159 |
| Website last updated 11/10/2014 6:56:24 PM EST | Voter Turnout: 50.03 % | **Counties Percent Reported:** 100.00 % |
| | **OFFICIAL RESULTS** | |
| | Provisional ballots included | |

Customize My Search
(272 of 272)

Go To Page [1 ▼] Display [ ▼]

---

**United States Senator, Chambliss**

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| DAVID A. PERDUE (R) | 52.89% | 1,358,088 |
| M. MICHELLE NUNN (D) | 45.21% | 1,160,811 |
| AMANDA C. SWAFFORD (L) | 1.90% | 48,862 |
| | | 2,567,761 |

**Governor**

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| J. NATHAN DEAL (I)R | 52.75% | 1,345,237 |
| JASON J. CARTER (D) | 44.89% | 1,144,794 |
| ANDREW T. HUNT (L) | 2.36% | 60,185 |
| | | 2,550,216 |

**Lieutenant Governor**

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| L. S. 'CASEY' CAGLE (I)R | 57.99% | 1,466,505 |
| CONNIE J. STOKES (D) | 42.01% | 1,062,557 |
| | | 2,529,062 |

**Secretary Of State**

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| BRIAN P. KEMP (I)R | 57.47% | 1,452,554 |
| DOREEN CARTER (D) | 42.53% | 1,075,101 |
| | | 2,527,655 |

http://results.enr.clarityelections.com/GA/54042/149045/en/summary.html

1/38

## Secretary Of State

### Attorney General

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| SAMUEL S. OLENS (I)R | 56.93% | 1,436,987 |
| GREGORY K. 'GREG' HECHT(D) | 43.07% | 1,087,268 |
| | | 2,524,255 |

### Commissioner Of Agriculture

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| GARY W. BLACK (I)R | 58.26% | 1,462,039 |
| CHRISTOPHER JAMES IRVIN(D) | 41.74% | 1,047,339 |
| | | 2,509,378 |

### Commissioner Of Insurance

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| RALPH T. HUDGENS(I)R | 54.87% | 1,382,551 |
| ELIZABETH N. 'LIZ' JOHNSON(D) | 41.70% | 1,050,883 |
| EDWARD T. 'TED' METZ (L) | 3.43% | 86,427 |
| | | 2,519,861 |

### State School Superintendent

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| RICHARD L. WOODS(R) | 55.11% | 1,391,005 |
| VALARIE D. WILSON(D) | 44.89% | 1,132,886 |
| | | 2,523,891 |

### Commissioner Of Labor

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| J. MARK BUTLER (I)R | 56.93% | 1,427,662 |
| ROBBIN K. SHIPP(D) | 43.07% | 1,079,898 |
| | | 2,507,560 |

### Public Service Commission, District 1 - Southern

159 of 159 Counties Reporting

| | Percent | Votes |
|---|---|---|
| HERMAN D. 'DOUG' EVERETT (I)R | 68.33% | 1,532,652 |
| JOHN H. MONDS (L) | 31.67% | 710,408 |
| | | 2,243,060 |

### Public Service Commission, District 4 - Northern

159 of 159 Counties Reporting

1/12/2019                                    GA - Election Results

**Public Service Commission, District 4 - Northern**

|  |  | Percent | Votes |
|---|---|---|---|
| LAUREN W. 'BUBBA' MCDONALD (I)R |  | 53.38% | 1,341,182 |
| DANIEL A. BLACKMAN (D) |  | 41.75% | 1,048,917 |
| ROBIN AARON GILMER (L) |  | 4.87% | 122,326 |
|  |  |  | 2,512,425 |

**U.S. Representative, District 1**

17 of 17 Counties Reporting

|  |  | Percent | Votes |
|---|---|---|---|
| E. L. 'BUDDY' CARTER(R) |  | 60.91% | 95,337 |
| BRIAN CORWIN REESE (D) |  | 39.09% | 61,175 |
|  |  |  | 156,512 |

**U.S. Representative, District 2**

29 of 29 Counties Reporting

|  |  | Percent | Votes |
|---|---|---|---|
| GREGORY P. 'GREG' DUKE(R) |  | 40.85% | 66,537 |
| SANFORD D. BISHOP (I)D |  | 59.15% | 96,363 |
|  |  |  | 162,900 |

**U.S. Representative, District 3**

13 of 13 Counties Reporting

|  |  | Percent | Votes |
|---|---|---|---|
| LYNN A. WESTMORELAND (I)R |  | 100.00% | 156,277 |
|  |  |  | 156,277 |

**U.S. Representative, District 4**

4 of 4 Counties Reporting

|  |  | Percent | Votes |
|---|---|---|---|
| HENRY C. 'HANK' JOHNSON JR. (I)D |  | 100.00% | 161,211 |
|  |  |  | 161,211 |

**U.S. Representative, District 5**

3 of 3 Counties Reporting

|  |  | Percent | Votes |
|---|---|---|---|
| JOHN R. LEWIS (I) D |  | 100.00% | 170,326 |
|  |  |  | 170,326 |

**U.S. Representative, District 6**

3 of 3 Counties Reporting

|  |  | Percent | Votes |
|---|---|---|---|
| T. E. 'TOM' PRICE (I)R |  | 66.04% | 139,018 |
| ROBERT G.MONTIGEL (D) |  | 33.96% | 71,486 |
|  |  |  | 210,504 |

**U.S. Representative, District 7**

# Exhibit C

1/12/2019                                    GA - Election Results



**GEORGIA ELECTION RESULTS**
A public service of
Secretary of State Brian P. Kemp

Statewide Results                    Results by County
**General Election**          Registered Voters:  5,443,046        Counties Partially Reported:    0 of 159
**November 8, 2016**          Ballots Cast:       4,165,405        Counties Completely Reported:  159 of 159
Website last updated 12/1/2016 2:06:22 PM EST    Voter Turnout:      76.53 %
                                     **OFFICIAL RESULTS**
                              Provisional ballots are included

Customize My Search
(299 of 299)

Go To Page [1 ▼] Display [      ▼]

---

**President of the United States**

159 of 159 Counties Reporting

|  | Percent | Votes |
|---|---|---|
| DONALD J. TRUMP (REP) | 51.05% | 2,089,104 |
| HILLARY CLINTON (DEM) | 45.89% | 1,877,963 |
| GARY JOHNSON (LIB) | 3.06% | 125,306 |
|  |  | 4,092,373 |

---

**United States Senator, Isakson**

159 of 159 Counties Reporting

|  | Percent | Votes |
|---|---|---|
| JOHNNY ISAKSON (I) (REP) | 54.80% | 2,135,806 |
| JIM BARKSDALE (DEM) | 41.04% | 1,599,726 |
| ALLEN BUCKLEY (LIB) | 4.16% | 162,260 |
|  |  | 3,897,792 |

---

**Public Service Commission, District 2 - Eastern**

159 of 159 Counties Reporting

|  | Percent | Votes |
|---|---|---|
| TIM ECHOLS (I) (REP) | 66.58% | 2,390,836 |
| ERIC HOSKINS (LIB) | 33.42% | 1,200,076 |
|  |  | 3,590,912 |

---

**U.S. Representative, District 1**

17 of 17 Counties Reporting

|  | Percent | Votes |
|---|---|---|
| EARL "BUDDY" CARTER (I) (REP) | 100.00% | 210,243 |
|  |  | 210,243 |

---

http://results.enr.clarityelections.com/GA/63991/184321/en/summary.html                    1/41

Fulton County Superior Court
***EFILED***MH
Date: 1/15/2019 6:22 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

                Plaintiffs,

           v.

ROBYN A. CRITTENDEN, Secretary
of State of Georgia, et al.,

                Defendants.

Civil Action No. 2018CV313418

---

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CONTINUANCE

Plaintiffs file this Reply to the briefs filed by non-party Secretary of State and Defendant Duncan.

On his predecessor's own motion, the Secretary became a non-party to this case and accordingly should not be filing briefs or interfering in discovery, and his brief should be stricken. If he wants to participate in this case, he may file a motion to intervene for the Court's consideration.

Plaintiffs' primary objection to the Secretary's Brief, however, is not that he filed it, but what he says. Defendant Duncan simply reargues his rejected motion to dismiss.

1

**A.    Facts**

On the facts: the Court ordered the Defendants to allow Plaintiffs to examine the internal memory of the DRE machines. *There is no dispute that Fulton County has not done so.* Fulton County did not even make its machines available until yesterday, three days before trial, and when it did so it was technically unable to give Plaintiffs access to the internal memory. *This is undisputed.* The essential fact remains that Plaintiffs, now 36 hours from trial, have not been granted the limited discovery that this Court ordered – and that Plaintiffs originally sought six weeks ago. *This is not disputed.*

What also is not in dispute is that Fulton County (and now Gwinnett) have no plans to figure out how to make the internal memory available. In the "no good deed goes unpunished" category, the Secretary now blames Plaintiffs' expert for proposing ways that Fulton County can do what the Order requires without damaging the internal memory, by using a special erasable programable read only memory (EPROM) chip. Fulton County does not have to use the EPROM method, but it does have to comply with the Court's Order and, it if does not like the EPROM method, it can do so with the technology of its own selection. What it cannot do is refuse to comply with the Court's Order and "run out the clock."

The Secretary's Brief does *not* disclose Plaintiffs' proposed protocol - a glaring, inexcusable omission. Plaintiffs proposed last week that Fulton County copy the internal memory and allow Plaintiffs to examine the copy – examining a

copy is the only way to conduct a forensic examination without potentially altering the memory and destroying evidence.   This protocol was originally explained in an email on January 10, and then explained in greater detailed in Plaintiffs' expert's January 11, 2019 affidavit, another copy of which was filed yesterday with the Motion for Continuance.

Most important, neither the Secretary nor Defendant Duncan disagree that, as a factual matter, it is impossible for Plaintiffs to conduct reasonable discovery in this time frame.

### B.   Law

Neither Defendant Duncan nor the Secretary have any response to Plaintiffs' legal argument for continuance. But the law is clear: the Election Contest Statute does not mandate accelerated proceedings or set arbitrary deadlines, but instead contemplates that the trial court use its plenary power to gain a "full and proper understanding" of the matter.   O.C.G.A. § 21-2-525(b).   The Election Contest Statute further states that the case is to proceed "in like manner and to the same extent as in other civil cases." *Id.* The Civil Practice Act in turn states that "the court shall in *all* cases afford to the parties reasonable time for discovery." O.C.G.A. § 9-11-40 (emphasis added).

And the Secretary and Defendant Duncan do not attempt to apply this law to the undisputed facts, for that too cannot reasonably be disputed:  three days to a week is not a "reasonable time for discovery" in any case, much less a state-wide

3

election contest involving an investigation of why complex electronic voting machines malfunctioned.

The Secretary and Defendant Duncan also to not counter Plaintiffs' argument citing a number of Supreme Court cases, in each of which the plaintiffs appear to have been given full discovery, whether that involved an opportunity to find and count every misspelled absentee ballot, *Mead v. Sheffield,* 278 Ga. 268 (2004), or to investigate allegedly mis-calibrated voting machines, *Taggart v. Phillips*, 242 Ga. 454, 455 (1978).   And, they do not disagree that in no case found by Plaintiffs has *any* court compromised the full and proper adjudication of the issues in order to obtain a faster decision.  *E.g., McIntosh Cty. Bd. of Elections v. Deverger*, 282 Ga. 566, 566 (2007) (four months after the general election, the trial court ordered a new election; the Supreme Court affirmed); *Taggart v. Phillips*, 242 Ga. 454, 455 (1978) (two months after election, the Supreme Court reversed the trial court's dismissal of contest petition and remanded for further proceedings).

Defendant Duncan's brief is in effect a motion for reconsideration of the denial of his motion to dismiss.  Though improper, Plaintiffs will respond briefly. As to the facts relating to the drop-off, none of what Defendant Duncan says explains why the unprecedented drop in votes for the Lt. Governor's race appeared only with the votes on electronic machines, and not on the votes cast on paper ballots.  If the drop-off was because of not having a third-party candidate, for

4

example, why didn't this drop off appear in votes on paper ballots for the same race?  (And why didn't that drop off appear on other races, like the race for attorney general, that also did not have a third-party candidate?) What, other than system malfunction, could explain such a difference?  Defendant Duncan does not, cannot, answer that question.

This case needs to be tried, and a continuance is necessary for the trial to be fair and to comply with the law.

Respectfully submitted this 15th day of January, 2019.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

5

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 15th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

6

Fulton County Superior Court
***EFILED***QW
Date: 1/16/2019 9:19 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

                Plaintiffs,

        v.

ROBYN A. CRITTENDEN, Secretary
of State of Georgia, et al.,

              Defendants.

Civil Action No. 2018CV313418

## PLAINTIFFS' MOTION TO COMPEL AND FOR ADDITIONAL DISCOVERY

Plaintiffs move to compel Defendants to comply with the Court's January 11, 2019, Order on Pending Motions and, in addition, seek the immediate production of the Defendants' GEMs databases. In the Order on Pending Motions, the Court stated: "Plaintiffs may also examine the internal memory storage of each such DRE unit," referring to the DREs from five polling locations (three in Fulton County, one in Henry County, and one in Worth County). Defendant Fulton County and Henry County, following the explicit instructions of non-party Secretary of State, have refused to permit Plaintiffs to examine the internal memory of any DRE unit. This is undisputed, and sufficient to warrant the granting of this Motion to Compel.

1

Defendants may claim that they do not understand what the Court meant by "internal memory" (though that term is well understood) or that they do not know how to allow Plaintiffs to examine the internal memory (though Plaintffs' experts have given Defendants' various options). More likely, Defendants simply disagree with the Court's Order, and believe the Court should have limited Plaintiffs' access to just a portion of the internal memory or reports generated by specific applications (conveniently) of Defendants' choice.

Whatever the reason or excuse, it is bedrock law that a party must obey a court order, even if it disagrees with it or believes that it is wrong. "[I]f the court has jurisdiction to make the order, it must be obeyed however wrong it may be." *Pearson v. George*, 211 Ga. 18, 18 (1954). In addition, if Defendants did not understand the Order, or understand how they could comply with the Order, the burden was on Defendants to obtain clarification, and to do so immediately. The one thing Defendants may not do is simply refuse to comply:

> "The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed ... until it is reversed by orderly and proper proceedings.... Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the [court proceedings] with issues collateral to the central questions in [the case]."

*Britt v. State*, 282 Ga. 746, 750 (2007) (quoting *Maness v. Meyers*, 419 U.S. 449, 458-459 (1975).

The Court should grant this Motion to Compel and order Defendants, *again,* to allow Plaintiffs to examine the internal memory of each DRE machine identified in the Court's order, and that they must do so immediately.  The Court should also order the Gwinnett County and Fulton County to produce their GEMS' database for the 2018 general election, as explained further below.

## DISCUSSION

### A.      DRE Internal Memory

In its January 11, 2019 Order on Pending Motions, this Court stated as follows:

> Plaintiffs (i.e., only Rhonda J. Martin, Smythe Duval, and Jeanne Dufort) are entitled to inspect the DRE machines in post-election mode, using post-election memory cards that were used in the voting machines idenetified by Plaintiffs in the Petition, paragraph 40, 41, 44, 45 and 46.  Plaintiffs may also examine the internal memory storage of each such DRE unit. Plaintiffs are ordered not to in any way damage the DRE machines or the information contained therein, nor may Plaintiffs copy, image, save or retain the DRE machines or the information contained therein.  Plaintiffs may not upload or introduce any information into the DRE machines.  Destructive testify shall not be permitted.

The key language in the Order is the statement that the Plaintiffs "may also examine the internal memory storage of each such DRE unit."  Instead of allowing Plaintiffs to examine the internal memory, Defendants on Monday, January 14, 2019, offered to allow Plaintiffs to examine a report generated by one file in the

3

internal memory, the "Election Archive."[1]  (Exhibit A to Bernhard Affidavit,

which is attached as Exhibit 1).   As concisely explained by Plaintiffs' expert

Matthew Bernhard in his affidavit, what Defendants have offered is only an on-

screen human readable report and interpretation of a small portion of the internal

memory.  As Mr. Bernhard explains:  a "forensic examination of the data in the

Election Archive would be incomplete and almost meaningless."  (Bernhard Aff. ¶

17).

      Mr. Bernhard explains the significant difference between internal memory

and the election archive on screen report in his affidavit, at paragraphs 3 through 8.

They are not remotely the same thing.  Separately, what Defendants are offering is

just on-screen reports, not the program itself, and a review of on-screen reports

related to the results of the prior elections cannot substitute for a review of the

programs running on the DRE computer, when searching for the malware or error

that caused the Lt. Governnor race issues.

      As Mr. Bernhard explains, malicious software can put itself *anywhere* in

internal memory, and frequently it will be hidden in the "bootloader" or the

operating system, parts of internal memory that the user never sees.  (Bernhard

Aff. ¶ 9).  In fact, published research into the AccuVote systems has demonstrated

that malware that can steal votes can be hidden in the bootloader, the operating

---

[1] Plaintiffs did not take part in any machine demonstrations or review of on-screen reports of election archives prior to a copy of the internal memory being made so to preserve all evidence on the machine. Defendants, following the Secretary's orders, refused to make copies of the internal memory to preserve the machine's electronic evidence.

4

system, or the BallotStation application itself. (Bernhard Aff. ¶ 10).   This is why it is critical to examine all of the internal memory during a forensic examination. No on screen report of past election archives will permit detection of a progamming flaw.

Defendants, therefore, have failed to comply with this Court's Order. Defendants should be compelled to do so immediately.

Defendants may offer up an excuse as to how it is difficult to allow an examination of the internal memory.  It is time-consuming, but the internal memory can be copied by the counties using the protocols supplied by Plaintiffs' expert[2] without damage to the internal memory.  This issue and need to copy the internal memory, before using it again, is not new to Defendants or the Secretary. Plaintiffs' counsel warned Secretary's counsel in mid-November not to use DREs in the December runoff election without copying the memory, a warning which was ignored. And indeed, Plaintiffs exchanged many emails and had conversations starting the evening of the Janaury 9 hearing in which Plaintiffs made it clear that copying the memory (by the counties) would be necessary for both preservation

---

[2] In the course of a conversation at the English Street warehouse where the DREs were assembled, Secretary of State official Barnes told Plaintiffs' expert that he did not know how to copy the internal memory without "ripping out of the chip." (Bernhard Aff., Exhibit 1).  That evening Mr. Bernhard drafted a protocol (a) involving an EPROM chip that could be employed to safely copy the memory for the older TS models and (b) another protocol for the TSx model that did not require replacing the EPROM chip. Plaintiffs' counsel forwarded those protocols to counsel for Fulton County and counsel for Henry County. (Bernhard Aff., Exhibits B and C).  Fulton County has not responded.  There is an alternative method as well that Defendants may find more convenient that Plaintiffs' experts can make available to Defendants if they cannot accomplish it independently.

and examination. Defendants now act as if the need to preserve and review memory is a new topic, when it has been under discussion for months.

If the counties prefer a method other than Plaintiffs' recommended method, they are free to do so. But what they cannot do is fail to comply with this Court's Order. Defendants clearly are trying to avoid the embarrassment of the exposure of the cause of the massive number of missing votes in the contested election. The Defendants should therefore be ordered *again* to allow Plaintiffs to "examine the internal memory storage of each such DRE unit." In addition, Defendants failure to comply with this Court's Order is further grounds for the granting of a continuance in this case.

## B.    GEMS Database

A far easier issue is the production of the GEMS database. *See generally* Bernhard Affidavit, paragraphs 20-31. Unlike the DRE internal memory, it will take the counties just minutes to produce the GEMS database on a CD,  and the GEMS database is the first and simplest place experts will look to attempt to detect the cause of the undervote irregularity seen in the Lieutenant Governor's election. In fact, given the widespread nature of that particular problem, it may take only a few hours to pinpoint the cause once experts are given access to the tables in the GEMS database, although there is no assurance that this will be the case.

The county election data is simply loaded into a generic Microsoft Access database to create the GEMS database, which contains no proprietary source code

6

or highly sensitive information. Unlike the print-outs that the Defendants would produce, the GEMS database likely holds important clues as to where mis-programming, viruses, malfunctions or hacks occurred, and the number of machines and votes affected.

The contents of the GEMS database are simply election data that belongs to the counties and statem (and their voters), and not the vendor, and contains no source code. Various out-of-state jurisdiction's GEMS databases have been posted on line and can be reviewed to confirm that no proprietary source code or private voter data resides on the GEMS database.

## Conclusion

There are roughly 127,000 missing votes in the statewide Lieutenant Govenor's race. It is a matter of utmost public importance that the cause of these missing votes be isolated. There is a reasonable possibility that the matter may be easily solved by an immediate examination of the GEMS databases or a review of the internal memory of a sample of DRE machines. There is a compelling public interest to take the short time necessary to access the readily available data to determine the cause of the massive irregularities casting serious doubt upon the result in the Lieutenant Governor's race.  This Motion should be granted.

A proposed order is attached.

7

Case 1:17-cv-02989-AT   Document 449-6   Filed 07/03/19   Page 165 of 341

Respectfully submitted this 16th day of January, 2019.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

8

Page 986

# Page(S)

# Intentionally

# Left Blank

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 16th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

10

E

X

H

I

B

I

T

1

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

               **Plaintiffs,**

      v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

               **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV31348**

## AFFIDAVIT OF MATTHEW BERNHARD

Appeared before me, the undersigned officer duly authorized to administered oaths, MATTHEW BERNHARD who, after being sworn, states as follows:

1.     I am a consulting expert on the topic of the Diebold Voting System for plaintiffs in this case. I have been asked to address what "internal memory" means and the relative utility of examining internal memory, as I understand the Court's January 11, 2019 Order on Motions requires, compared to examining the

"election archive," which is the limit of what the Defendants are willing to allow.  I have also been asked to explain the necessity of reviewing the GEMS database.

2.      My qualifications are set forth in detail in my January 10, 2019 affidavit of record in this case.

**Internal Memory v. Election Archive**

3.      All computers rely on som permanent form of storage. In most consumer computers, this storage is a "hard drive," which is made out of spinning platters, or solid-state drives, which rely on flash memory for storage. Computers like the AccuVote voting machines (which are more similar to smart phones and PDAs), rely instead on "internal memory" for their primary storage, which is comprised of read-only flash memory (ROM). Here we are solely concerned with computers relying on internal memory as their primary storage mechanism. These computers use internal to store all the files they use, which on a normal computer might include things like Word documents, PDFs, music, movies, etc. However, there is a lot of other data stored in internal memory, much of which the user never sees.

4.      When computers first get powered on, the computer runs a program that sets up all the other components connected to the computer, such as keyboards, screens, USB ports, etc., as well as the rest of the software that runs on

the computer. The program that does this is normally called a "bootloader," and is normally stored in a predesignated location in internal memory (these locations are called partitions).

5.      Once the bootloader has been executed, the computer is still running at a fairly low level of functionality, so the next program that gets loaded is typically an operating system (like Windows on a PC, or OSX Mojave on a MacBook). Operating systems provide a much more usable interface to the computer, and they are what most users have experience with when interacting with a computer. The operating system is also stored in internal memory, in a different partition from the bootloader.

6.      Once the operating system is running, users can run different programs (called applications) within the operating system. Typically this consists of applications like web browsers (like Internet Explorer) or text editors (like Microsoft Word). On voting machines, this will include applications that allow voters to vote and that can count votes.  Georgia's voting machines use BallotStation, a Diebold/Premier application.

7.      The operating system gives each application its own piece of internal memory, where it can store data for later use. BallotStation uses its piece of internal memory to store election data as well as to archive past elections.

8.      Below is a diagram showing what internal memory looks like:

| Bootloader | Operating System | Application Files | Application Files | Free Space |
|---|---|---|---|---|

9.     It is important to note that malicious software can put itself *anywhere* in internal memory, and frequently will try to "hide" by infecting the bootloader or operating system, parts of internal memory that users never see (shown pictorially below, with the malware program infecting the bootloader). This is why it is absolutely crucial to examine *all* of internal memory during a forensic examination to determine the source of malfunctions or incorrect programming.



10.     In fact, earlier research into the AccuVote TS and TSx systems has demonstrated that malware that can steal votes can be hidden in the bootloader, the operating system, or the BallotStation application itself.[1234]

---

[1] Feldman, Ariel J., J. Alex Halderman, and Edward W. Felten. "Security analysis of the Diebold AccuVote-TS voting machine." (2006).

[2] Hursti, Harri. "Critical security issues with Diebold TSx." *Black Box Voting, May* (2006).

[3] McDaniel, Patrick, M. Blaze, and G. Vigna. "EVEREST: Evaluation and validation of election-related equipment, standards and testing." *Ohio Secretary of State's EVEREST Project Report* (2007).

[4] Bowen, D. *Top-to-Bottom Review of voting machines certified for use in California*. Technical report, California Secretary of State, 2007.

11.   Below is depicted how the AccuVote machines store election archives, where the boxes labeled "A" represent the data corresponding to each archived election:

| Bootloader | Operating System | BallotStation | A | A | A | A | A | | Free Space |
|---|---|---|---|---|---|---|---|---|---|

12.   Plaintiff's forensic experts must review the entire internal memory to determine the source or existence of malware or programming errors, or machine malfunction.

13.   In contrast, The Defendants are proposing that Plaintiff's experts' examination of each voting machine be limited to an on screen human readable report (not the code itself) of one "election archive" corresponding to the November 2018 election, shown below outlined in red:



14.   If the malware is in the bootloader, as in the above diagram, then there's no way that looking at an election archive will detect it. The same is true if the malware has infected the operating system, or even BallotStation itself. Since the election archive is generated by BallotStation, if BallotStation is corrupted, the archive will reflect whatever the malicious code tells it to.

15.     Further, merely reading the information presented on the screen is not remotely equivalent to examining what underlying code is executing on the device and what such code contains, and can be misleading. Programming accidents and malware alike can be notoriously difficult to encounter in normal use of the device, either because the error only affects one small piece of functionality (that may still result in inaccurate election results being report) or because the malware has gone out of its way to avoid detection (this is common, especially in sophisticated malware of the type produced by nation-states who have been actively probing U.S. election infrastructure).[5]

16.     A visual representation can illustrate the difference between what Defendants are offering to provide as a review of internal memory and what the Plaintiffs' experts must access to undertake a reasonable and professional review. Below is a pictorial representation of the type of screen information that is available on a DRE machine screen while accessing the ballot archive reports.

---

[5] Joint Statement from the ODNI, DOJ, FBI and DHS: Combating Foreign Influence in U.S. Elections, 19 October 2018 https://www.dni.gov/index.php/newsroom/press-releases/item/1915-joint-statement-from-the-odni-doj-fbi-and-dhs-combating-foreign-influence-in-u-s-elections



17.   This may be contrasted with the first several lines of a print out of a TSx machine internal memory (a hexadecimal encoding of the first 4,464 raw bytes of the internal memory):

```
0000000 fe 03 00 ea 00 00 00 00 00 00 00 00 00 00 00 00
0000010 00 00 00 00 00 00 00 00 00 00 00 00 00 00 00 00
*
0000040 45 43 45 43 c4 b1 09 84 00 00 00 00 00 00 00 00
0000050 00 00 00 00 00 00 00 00 00 00 00 00 00 00 00 00
*
0001000 ae 00 00 ea 05 00 00 ea 20 00 00 ea 3a 00 00 ea
0001010 55 00 00 ea 00 00 a0 e1 6e 00 00 ea 88 00 00 ea
0001020 48 00 9f e5 08 10 a0 e3 00 10 80 e5 48 20 Bf e2
0001030 3c 10 9f e5 3c 30 9f e5 08 30 93 e5 04 00 13 e3
0001040 09 00 00 1a 00 30 d2 e5 00 00 53 e3 06 00 00 0a
0001050 14 30 91 e5 40 30 13 e2 fc ff ff 0a 00 30 d2 e5
0001060 00 30 c1 e5 01 20 82 e2 f5 ff ff ea fe ff ff ea
0001070 24 00 e0 bc 00 00 20 bc 00 00 e0 bc 55 6e 64 65
0001080 66 69 6e 65 64 20 48 61 6e 64 6c 65 72 0d 0a 00
0001090 48 00 9f e5 08 10 a0 e3 00 10 80 e5 48 20 8f e2
00010a0 3c 10 9f e5 3c 30 9f e5 08 30 93 e5 04 00 13 e3
00010b0 09 00 00 1a 00 30 d2 e5 00 00 53 e3 06 00 00 0a
00010c0 14 30 91 e5 40 30 13 e2 fc ff ff 0a 00 30 d2 e5
00010d0 00 30 c1 e5 01 20 82 e2 f5 ff ff ea fe ff ff ea
00010e0 24 00 e0 bc 00 00 20 bc 00 00 e0 bc 53 57 49 20
00010f0 48 61 6e 64 6c 65 72 0d 0a 00 00 00 48 00 9f e5
0001100 08 10 a0 e3 00 10 80 e5 48 20 8f e2 3c 10 9f e5
0001110 3c 30 9f e5 08 30 93 e5 04 00 13 e3 09 00 00 1a
0001120 00 30 d2 e5 00 00 53 e3 06 00 00 0a 14 30 91 e5
0001130 40 30 13 e2 fc ff ff 0a 00 30 d2 e5 00 30 c1 e5
0001140 01 20 82 e2 f5 ff ff ea fe ff ff ea 24 00 e0 bc
0001150 00 00 20 bc 00 00 e0 bc 50 72 65 66 65 74 63 68
0001160 20 48 61 6e 64 6c 65 72 0d 0a 00 00 48 00 9f e5
```

18.   It is important to stress that the term of art "internal memory" cannot be interpreted to mean one particular application or file that might be contained in the internal memory, but instead refers to all memory internally used in the voting machine.  In addition, examining only the election archive is not nearly sufficient to determine if malware or incorrect programming resides in other places in the internal memory.

19.   A forensic examination of the data in the Election Archive would be incomplete and almost meaningless, and certainly inconclusive, although even that

is not what is being offered by the Defendants, who want Plaintiffs' experts to merely review an on screen interpretation or report of certain selected Election Archive data, not the full contents of the Election Archive itself.

**GEMS**

20.  The documents that the Defendants have been ordered to produce from the GEMS server (Base Precincts With Races Report, Ballot Image Report, Vote Center With Cards Report, Statement of Votes Cast Report, and Summary Report) may be useful to review, but are public records and standard reports that do not in any way provide an opportunity to detect a programming flaw, a virus, or a malfunction of the machines, such as is suspected in the Lieutenant Governor's race.

21. What is needed is the GEMS Database, which is an unencrypted set of data for programming and tabulating the election that is built by the election official for each election using a generic off-the-shelf Microsoft Access database. Anyone with a Microsoft subscription to Microsoft Access can open and read all files.

22. The video recording of the January 9, 2019 hearing reveals that the Secretary's attorney represented that the GEMS Database includes source code for the Diebold system. This is not correct. There is no source code in the GEMS

database. The GEMS database only contains data related to the election, not any programming.

23.   In fact, roughly 1500 jurisdictions across the country, county staff members and sometimes third-party contractors and part time workers use the GEMS database to set up their local elections.   I am not aware any need for confidentiality agreements or special clearance to work with the Microsoft Access Database that is called the "GEMS Database," which is a clear indication that there is no proprietary source code in a GEMS Database.

24. I have recently reviewed the Microsoft Access Database from Marin County, California posted online.[6] Attached at Exhibit A are examples of screenshots from miscellaneous pages, demonstrating that the contents are not proprietary source code as claimed by the Secretary.

25. An examination of the GEMS database to review for anomalies, programming errors, misconfiguration, or other irregularities should generally take about 2 days per county, assuming that no material irregularities were detected.

_____

[6] http://blackboxvoting.org/docs/diebold/june10-primaryFINAL.zip

26.  The information contained in the GEMS server can be shared with the public without risk to election security.

27. The review of the GEMS database can be accomplished without access to the GEMS server, by requiring either the Secretary of State or the County to merely copy their GEMS database CD and deliver to Plaintiffs' experts on a CD or by email.

28. The GEMS database should be reviewed at two stages, at the start of the election programming and after the close of the election.

29.  The Secretary maintains a CD copy of the original programming prior to votes being entered into the system. A copy can be made in a matter of minutes and given to the Plaintiff's expert for review. The examiner should compare that database to the post-election database for the possibility of unauthorized changes to instructions coded into the database.

30. It is only with access to the full electronic GEMS database that a basic analysis of the programming of the election can take place, and that the existence of errors can be detected.

31. The errors reported during the November 2018 election, particularly in the Lieutenant Governor's race, are consistent with a pattern of either malicious tampering, software error, or incorrect programming of the election.

32. A forensic analysis is the only method to determine which of these occurred at this point. The only way to faithfully execute a forensic analysis is with access to a full copy of the internal memory of the voting machines in question, and a full copy of the GEMS database.

33.  Attached hereto as Exhibit B is a true and correct copy of an email that I sent to Bruce Brown, counsel for Plaintiffs, on January 14, 2019.  The statements in that email are true, and provide a fair account of the events at the English Street warehouse that day.

Attached hereto as Exhibit C is an email by Bruce Brown that forwards recommendations that I drafted relating to the copying of the internal memory on the AccuVote TS and TSx machines.

Further Affiant sayeth not.

_Matthew Bernhard_

Matthew Bernhard

Sworn to and subscribed before me:
On this 15 day of January , 2019
Timothy McMullen
Notary Public, State of Georgia
My Commission Expires: Sept 6 2020

SEAL

E
X
H
I
B
I
T

A



All Access Objects

Exhibit A

ReportunitRaceVReg

| ReportunitId | RaceId | TotalVoters |
|---|---|---|
|  | 2 | 743 |
| 4 | 3 | 135 |
| 4 | 4 | 18 |
| 4 | 5 | 16 |
| 4 | 6 | 3 |
| 4 | 7 | 743 |
| 4 | 8 | 743 |
| 4 | 9 | 135 |
| 4 | 10 | 18 |
| 4 | 11 | 16 |
| 4 | 12 | 3 |
| 4 | 13 | 3 |
| 4 | 14 | 743 |
| 4 | 15 | 135 |
| 4 | 16 | 18 |
| 4 | 17 | 16 |
| 4 | 18 | 3 |
| 4 | 19 | 3 |
| 4 | 20 | 743 |
| 4 | 21 | 135 |
| 4 | 22 | 18 |
| 4 | 23 | 16 |
| 4 | 24 | 3 |
| 4 | 25 | 3 |
| 4 | 26 | 743 |
| 4 | 27 | 135 |
| 4 | 28 | 18 |
| 4 | 29 | 16 |
| 4 | 30 | 3 |
| 4 | 31 | 3 |
| 4 | 32 | 743 |
| 4 | 33 | 135 |
| 4 | 34 | 18 |
| 4 | 35 | 16 |
| 4 | 36 | 3 |
| 4 | 37 | 3 |
| 4 | 38 | 743 |

Record: 1 of 14954



| RaceSortSec | RaceId | RaceLabel | RaceVGroup | RaceRotatio | ReportunitS | Reportunit | BaseunitSor | BaseunitId | BaseunitLab | TotalVoters |
|---|---|---|---|---|---|---|---|---|---|---|
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4017 | 183 | 10 | 8702 | 0004803 | 0 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4018 | 184 | 10 | 8703 | 0004502A | 5 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4018 | 184 | 20 | 8704 | 0004901 | 140 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4018 | 184 | 30 | 8705 | 0004902 | 101 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4018 | 184 | 40 | 8706 | 0004501A | 0 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4101 | 120 | 10 | 8607 | 0004101 | 574 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4103 | 121 | 10 | 8608 | 0004103 | 599 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4200 | 122 | 10 | 8609 | 0004200 | 436 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4300 | 123 | 10 | 8610 | 0004300 | 753 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4302 | 124 | 10 | 8611 | 0004302 | 583 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4305 | 125 | 10 | 8612 | 0004305 | 493 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4400 | 126 | 10 | 8613 | 0004400 | 757 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4401 | 127 | 10 | 8614 | 0004401 | 741 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4503 | 128 | 10 | 8615 | 0004503 | 672 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4600 | 129 | 10 | 8616 | 0004600 | 744 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4601 | 130 | 10 | 8617 | 0004601 | 938 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4707 | 131 | 10 | 8618 | 0004707 | 1014 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4708 | 132 | 10 | 8619 | 0004708 | 653 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4709 | 133 | 10 | 8620 | 0004709 | 895 |
| 2006 | 71 | SUPERIOR COURT JUDGE, OFFICE 3 | NP | 1 | 4806 | 134 | 10 | 8621 | 0004806 | 424 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1001 | 168 | 10 | 8665 | 0001100A | 4 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1002 | 4 | 10 | 8402 | 0001100B | 679 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1002 | 4 | 20 | 8401 | 0001101 | 514 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1003 | 5 | 10 | 8404 | 0001104 | 545 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1003 | 5 | 20 | 8405 | 0001105 | 395 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1004 | 6 | 10 | 8406 | 0001108 | 464 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1004 | 6 | 20 | 8407 | 0001116 | 492 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1005 | 7 | 10 | 8408 | 0001109 | 373 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1005 | 7 | 20 | 8409 | 0001115 | 630 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1006 | 8 | 10 | 8410 | 0001119 | 220 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1006 | 8 | 30 | 8412 | 0001120 | 308 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1007 | 9 | 10 | 8413 | 0001112 | 541 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1007 | 9 | 20 | 8414 | 0001126 | 466 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1008 | 10 | 10 | 8415 | 0001114 | 701 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1008 | 10 | 20 | 8416 | 0001125 | 658 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1009 | 11 | 10 | 8417 | 0001117 | 524 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1009 | 11 | 20 | 8418 | 0001118 | 452 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1010 | 12 | 10 | 8419 | 0001122 | 351 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1010 | 12 | 20 | 8420 | 0001123 | 697 |
| 4011 | 76 | ASSESSOR-RECORDER-COUNTY CLERK | NP | 0 | 1011 | 13 | 10 | 8421 | 0001201 | 361 |

Record: 1 of 1320

File | Home | Create | External Data | Database Tools | Help | Fields | Table | ♀ Tell me what you want to do

All Access Objects

Tables
- Artwork
- AuditLog
- Ballot
- BallotBox
- BallotRot
- BallotRotCardRotPlateRot
- BallotRotRaceRot
- BaserotBallotRot
- BaserotDistrict
- BaserotVReg
- Candidate
- CandidateCounter
- CandVGroup
- Card
- CardRot
- CardRotCounter
- ChallengeVoter
- CounterBatch
- CounterGroup
- CounterGroupControl
- District
- ExportFmt
- Header
- KeyTable
- Language
- MonitorScript
- Operator
- Plate
- PlateHeader
- PlateRace
- PlateRot
- Preference
- Race

**AuditLog**

| KeyId | LogTime | LogLevel | UserId | Entry |
|---|---|---|---|---|
| | 1188898053 | 1 | | User admin: Created Election |
| 1 | 1188898053 | 1 | | User admin: Open Election: UDEL Template (UDEL Template) admin Host |
| 2 | 1188898102 | 1 | | User admin: Election title changed |
| 3 | 1188898137 | 1 | | User admin: Created Vote Center Category (1): Id 20, Label Absentee Vote Center |
| 4 | 1188898137 | 1 | | User admin: Created CounterGroup (-1): Id 20, Label Absentee |
| 5 | 1188898235 | 1 | | User admin: Changed CounterGroup (-1): Id 20, Label Absentee |
| 6 | 1188898315 | 1 | | User admin: Created Header (1): Id 10, Label OFFICIAL |
| 7 | 1188898359 | 1 | | User admin: Created Header (2): Id 20, Label MEASURE |
| 8 | 1188898355 | 1 | | User admin: Created Header (3): Id 30, Label SCHOOL |
| 9 | 1188898417 | 1 | | User admin: Changed Race options |
| 10 | 1188898432 | 1 | | User admin: Changed Header (3): Id 30, Label SCHOOL |
| 11 | 1188898459 | 1 | | User admin: Created Header (4): Id 40, Label MUNICIPAL |
| 12 | 1188898474 | 1 | | User admin: Created Header (5): Id 50, Label DISTRICT |
| 13 | 1188898507 | 1 | | User admin: Created Header (6): Id 60, Label MEASURE - SCHOOL |
| 14 | 1188898531 | 1 | | User admin: Created Header (7): Id 70, Label MEASURE - DISTRICT |
| 15 | 1188898571 | 1 | | User admin: Created Header (8): Id 80, Label END |
| 16 | 1188898712 | 1 | | User admin: Created VoteCenter (3): Id 1150, Label Provisional, Cat. 0, NumOSMemCards 0, NumTSMemCards 0, CountMethod 2 |
| 17 | 1188898741 | 1 | | User admin: Created VoteCenter (4): Id 1160, Label Mail Ballots, Cat. 0, NumOSMemCards 0, NumTSMemCards 0, CountMethod 2 |
| 18 | 1188898765 | 1 | | User admin: Changed VoteCenter (2): Id 1170, Label Absentee Vote Center <Default VC>, Cat. 1, NumOSMemCards 0, NumTSMemCards 0, CountMethod 2 |
| 19 | 1188898781 | 1 | | User admin: Created VoteCenter (4): Id 1180, Label Absentee, Cat. 1, NumOSMemCards 0, NumTSMemCards 0, CountMethod 2 |
| 20 | 1188898800 | 1 | | User admin: Deleted Vote Center (3): Id 1150 Label Provisional |
| 21 | 1188898802 | 1 | | User admin: Deleted Vote Center (4): Id 1160 Label Mail Ballots |
| 22 | 1188898807 | 1 | | User admin: Deleted Vote Center (5): Id 1180 Label Absentee |
| 23 | 1188898855 | 1 | | User admin: Changed Race options |
| 24 | 1188898900 | 1 | | User admin: Changed Ballot Style options |
| 25 | 1188898917 | 1 | | User admin: Changed Ballot Style options |
| 26 | 1188898936 | 1 | | User admin: Changed AcuVote-OS parameters |
| 27 | 1188898985 | 1 | | User admin: Changed AcuVote-OS parameters |
| 28 | 1188899005 | 1 | | User admin: Backed up election to C:\Program Files\GEMS\Backup\Template\Udel Template.gbf |
| 29 | 1188899035 | 1 | | User admin: Delete Vote Center Category (1): Id 20, Label Absentee Vote Center |
| 30 | 1188899035 | 1 | | User admin: Changed CounterGroup (0): Id 10, Label Polling |
| 31 | 1188899035 | 1 | | User admin: Delete CounterGroup (1): Id 20, Label Absentee |
| 32 | 1188899087 | 1 | | User admin: Backed up election to C:\Program Files\GEMS\Backup\Template\Udel Template.gbf |
| 33 | 1188899117 | 1 | | User admin: Election title changed |
| 34 | 1188899133 | 1 | | User admin: Backed up election to C:\Program Files\GEMS\Backup\Template\Udel Template.gbf |
| 34 | 1068266695 | 1 | | User admin: Changed AcuVote-OS parameters |
| 35 | 1168266526 | 1 | | User admin: Loaded Election |

Record: I◄ ◄ 1 of 4736 ► ►I ►* No Filter Search

Datasheet View

Num Lock

E
X
H
I
B
I
T

B

 Gmail

# Exhibit B

Matt Bernhard <mdb92nc@gmail.com>

---

### CONFIDENTIAL Revised notes about today
1 message

---

**Matt Bernhard <mdb92nc@gmail.com>**                                 Mon, Jan 14, 2019 at 8:48 PM
To: Bruce Brown <bbrown@brucebrownlaw.com>

Hi Bruce,

I just wanted to recap what happened at English Street this morning as well as discuss steps moving forward.

The gist is that the state say that they didn't interpret "internal memory" accurately, and were unwilling to create copies to allow us to perform the inspection of the internal memory without first consulting with counsel.

Below is a detailed description of our time at English Street:

After we signed the confidentiality agreements, we went into the warehouse with Michael Barnes, Ryan Germany, Cheryl Ringer, Kevin Rayburn, Rick Barron, Derek Gilstrap. Ronnie Martin inquired as to why the SoS people were there now that they are no longer party to the lawsuit, and Ms. Ringer informed us that the SoS owns all the equipment and is therefore entitled to be there.

We then discussed how they were accommodating our request to inspect the internal machine memory, and Mr. Barnes (from the SOS office) said they intended to create a copy of the election archive for the November on each machine. I informed them that that is not an accurate interpretation of "examination of the internal memory."

Mr. Barnes said that he did not know how to give us access to the internal memory without ripping out the flash chips. I informed him about the JTAG process I have used in the past on TSx machines, and informed him, the SoS lawyers, and Ms. Ringer that I would be happy to provide them with all commands that I would run ahead of time. Someone (I think Mr. Rayburn) inquired as to whether using JTAG created a security vulnerability, and I told him that it can, but we would be happy for the state or Fulton county to provide the adapter and the laptop on which the copies would be made, and to let an independent inspector observe the process. Obviously, if the state or the county performs these processes as intended then there are fewer security risks, and I strongly prefer that outcome.

Then we went over to the GEMS server and Mr. Gilstrap started copying the reports in the court order to CD. We got all reports except the Ballot Image Report. Mr. Barnes explained that to generate the Ballot Image Report, Mr. Gilstrap would have to manually create over 2,000 reports, as the GEMS software does not support doing this in batches. Essentially, it stores a mapping of precinct->memory card->ballots, and reports can only be generated by selecting each memory card, of which there are 2,084 (I believe). We obtained two ballot image reports and said we'd discuss this with you prior to proceeding. Mr. Gilstrap burned me a CD with four standard reports, which I read and sent over to you later today. Obtaining the GEMS database would be equivalent to all of the above steps, and far more elegant, as it wouldn't require the county to spend countless hours generating Ballot Image Reports for every voting machine in the county.

Then we went over to inspect the machines. All machines that were selected for inspection were TS machines. All but one were still sealed (apparently the seal broke off of one of the Grady High School machines, but I did not record its serial number). The County said that all of the machines were used in the December election, which will impair the value of forensic information we can obtain from them. I decided to contact you about the memory inspection prior to doing the physical inspection, as I didn't feel it made sense to unseal each machine, physically examine it, reseal it, and then do it all again tomorrow after they make copies of the memory. I also did not want to power on the machines, further altering the evidence, until we were sure that the county had made copies of each machine.

I should note that even if we solve the internal memory copying problem with the county, I don't currently have an estimate of how long it would take to copy the memory from each machine. My best estimate is that it will take several hours per machine, and it is not possible to copy more than one at a time unless there are multiple people and multiple laptops, adapters, and so forth for conducting the process. After copying, the other experts and I will need to analyze what has been copied, and that will take possibly weeks to do a thorough analysis of them all. Obviously, even if we start copying the internal memory tomorrow, there is no way we will have any meaningful results prior to the trial scheduled for Thursday.

If you have further questions please let me know.

-Matt

E

X

H

I

B

I

T

C

 Gmail

# Exhibit C

Matt Bernhard <mdb92nc@gmail.com>

---

## CONFIDENTIAL Protocol for examining internal memory

---

Matt Bernhard <mdb92nc@gmail.com>                                      Mon, Jan 14, 2019 at 6:44 PM
To: Bruce Brown <bbrown@brucepbrownlaw.com>, Marilyn Marks <marilyn@aspenoffice.com>

Bruce and Marilyn,

Below is a summary of the materials and procedures needed to non-destructively examine the internal memory of both the TS and the TSx.

### Materials

For the TS, we will need an EEPROM chip with a program that will instruct the machine to copy its flash contents to a compac flash card (of the same kind used to program and store election data). I can provide the chips by tomorrow evening, or the defendants can provide their own.

For the TSX, a JTAG adapter and a copy of OpenOCD will be needed. Again I can provide both, or the defendants can supply their own.

### Procedures

For the TS, after removing the case from the machine to get access to the motherboard, we will remove the existing EEPROM a chip and replace it with our own. We will then set jumpers 2 and 8 to "on" and switch 2 to "1" and switch 4 to "2", all on the motherboard. Booting the machine in this configuration will run the program on our EEPROM chip and copy data to an installed CF card. Once the copy is complete, we will reset the jumpers and switches and put the original EEPROM chip back. This process will likely take about an hour per machine, but I will test it tomorrow once I have materials and verify.

For the TSX, we will remove the case and attach our JTAG adapter. We will then power on the machine and issue a "reset and halt" command in OpenOCD through the connected laptop. Then we will run the "flash probe" command to ensure the state of the machines memory, and then the "read image" command to copy the internal memory to a file on the laptop. We will then unplug the JTAG adapter and reboot the machine. This process will likely take an hour and a half per machine.

-Matt

Fulton County Superior Court
***EFILED***LW
Date: 1/16/2019 2:11 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

              Plaintiffs,

              v.

ROBYN A. CRITTENDEN, Secretary
of State of Georgia, et al.,

              Defendants.

Civil Action No. 2018CV313418

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Pursuant to O.C.G.A. § 21-2-526, Plaintiffs demand a trial by jury.

Respectfully submitted this 15th day of January, 2019.

        */s/ Bruce P. Brown*
        Bruce P. Brown
        Georgia Bar No. 064460
        bbrown@brucepbrownlaw.com
        Bruce P. Brown Law LLC
        1123 Zonolite Rd. NE, Suite 6
        Atlanta, Georgia 30306
        (404) 881-0700

        *Attorney for Plaintiffs*

1

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 16th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

2

Fulton County Superior Court
***EFILED***LS
Date: 1/16/2019 10:48 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

      Plaintiffs,

v.

BRAD RAFFENSPERGER, Secretary of
State of Georgia, *et al.*,

      Defendants.

Civil Action No. 2018CV313418

### DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND
### ELECTIONS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL

Defendant Gwinnett County Board of Registrations and Elections (Gwinnett BORE)
opposes Plaintiffs' Motion to Compel for all the reasons previously stated in its opposition
to Plaintiffs' prior motions seeking a continuance. In addition, while Defendant Gwinnett
BORE does not have any DREs to inspect under the Court's Order, the Court should deny
Plaintiffs' Motion to Compel regarding the GEMS database because is not a motion to
compel—it is a motion for a reconsideration of the Court's prior order regarding discovery.
The Court specified that only five reports from the GEMS database should be provided,
recognizing the confidentiality of the GEMS database, as explained by the Court of Appeals
in *Smith v. DeKalb County*, 288 Ga. App. 574 (2007). Plaintiffs now again seek the entire
GEMS database in their purported motion to compel.

This Court has already resolved what information Plaintiffs are entitled to receive
from the GEMS database. Titling their motion a "motion to compel" does not change the

- 1 -

fact that Plaintiffs are requesting a reconsideration of the Court's prior order. This Court should deny Plaintiffs' Motion and this case should proceed to trial.

This 16th day of January, 2019.

/s/ Bryan P. Tyson
Frank B. Strickland
Georgia Bar No. 687600
fbs@sbllaw.net
Bryan P. Tyson
Georgia Bar No. 515411
bpt@sbllaw.net
Anne W. Lewis
Georgia Bar No. 737490
awl@sbllaw.net
STRICKLAND BROCKINGTON
   LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
(678) 347-2200

Richard A. Carothers
Georgia Bar No. 111075
richard.carothers@carmitch.com
Brian R. Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA 30518
(770) 932-3552

*Attorneys for the Gwinnett County Board of Registrations and Elections*

- 2 -

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, *et al.*,

      Plaintiffs,

v.

BRAD RAFFENSPERGER, Secretary of
State of Georgia, *et al.*,

      Defendants.

Civil Action No. 2018CV313418

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing DEFENDANT GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL with the Clerk of Court using the Odyssey E-Filing system which will provide automatic notification of such filing to all counsel of record.

This 16th day of January, 2019.

/s/ Bryan P. Tyson
Bryan P. Tyson
Georgia Bar No. 515411

- 3 -

Fulton County Superior Court
***EFILED***LS
Date: 1/16/2019 4:58 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) <br> ) <br> ) Civil Action File No. 2018CV313418 |
| Petitioner, | ) <br> ) |
| v. | ) <br> ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) <br> ) <br> ) |
| Defendant | ) <br> ) |

## FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' RESPONSE IN OPPOSITION TO PETITIONERS' DEMAND FOR JURY TRIAL

COMES NOW, Fulton County Board of Registrations and Elections ("FCBRE"), and hereby responds to Petitioners' Demand for Jury Trial, showing as follows:

On December 5, 2018, the Court entered an Order setting the final hearing in this case for January 17, 2019.  O.C.GA. § 21-2-525(a) provides that within 20 days after the return date, the Court set a date for trial of the matter and that the case be decided promptly and expeditiously.

After refusing to participate in discovery, as directed in the Court's Order of January 11, 2019, Petitioners filed a Motion for Continuance on January 14, 2019.  After being notified that the continuance would be denied, Petitioners filed a Motion to Compel and for Additional Discovery.  In its Order of January 16, 2018, the Court notified the parties that the Motion to Compel would not continue the case and the trial would proceed as ordered on January 17, 2019.

1

Petitioners are now attempting to continue this case by filing their jury demand at the eleventh hour. Petitioners demand recites in its entirety: "Pursuant to O.C.GA. § 21-2-526, Plaintiffs demand a trial by jury."

O.C.GA. § 21-2-526 (a) provides:

All issues of a contest shall be fully tried and determined by the court without the aid and intervention of a jury, unless a litigant to the contest shall demand a trial by jury at any time prior to the call of the case; and *the court shall determine that it is an issue which under other laws of this state the litigant is entitled to have tried by a jury*. Upon such determination, a jury shall be impaneled and the cause shall proceed according to the practice and procedure of the court in jury cases. (Emphasis added).

Pursuant to provision, Petitioner must demonstrate there is an issue for a jury to determine. In this instance, Petitioner has made no such assertion or showing. It is in the Court's discretion to deny a jury trial in an election contest when there is no issue which entitles a litigant to a jury. *See Taggart v. Phillips*, 242 Ga. 454 (1978).

"[U]nlike other situations where demand alone is sufficient, here there are two requirements: 1) demand, and 2) a determination that there are issues which under other laws of this State the litigant is entitled to have tried by a jury."

*Henderson v. County Bd. of Registration and Elections*, 126 Ga. App. 280 (1972). Because Petitioners have made no such showing, Petitioners are not entitled to a jury trial.

Further, if there were to be a jury trial of the statewide election contest involved in this case, which is based on alleged "machine malfunctions and irregularities from all corners of the state" [January 11, 2019 Brief in Support of Proposed Order Regarding Inspection of Equipment at p. 6]. There would presumably be the need for juries to be impaneled from multiple if not all 159 counties of the State of Georgia.

2

O.C.GA. § 21-2-52. (b) provides:

(b) In a case contesting the result of a primary or election held in two or more counties, *each issue to be tried by a jury shall be tried by a jury impaneled in the county where such issue or a part thereof arose.* Such jury shall be impaneled by the superior court of the county in which the jury trial is to be conducted; such trial shall be presided over by the judge as described in Code Section 21-2-523; and such trial shall proceed, insofar as practicable, as though it were being conducted in the county of the superior court having jurisdiction of the contest. (Emphasis added).

Petitioner has made numerous assertions regarding alleged irregularities in counties other than those who are parties to this case.  Consequently, multiple juries would need to be impaneled to try any jury issues, if any exist.  The interests of finality in elections require that challenges to elections be resolved in an expeditious manner.  As is abundantly clear in the Election Code, a contest is not treated as an ordinary civil action. The procedure is designed for expeditious and timely resolution of election issues.  Petitioner's demand for jury is unsupported by evidence or argument that there exists an issue that entitles it to a jury trial; thus, because the interests of justice require an expedient resolution, the Court should deny Petitioners' jury demand.

Accordingly, the Court should deny Plaintiffs' Demand for Jury Trial and this case should proceed to final hearing on January 17, 2019 as ordered.

Respectfully submitted this 16th day of January, 2019.

OFFICE OF THE FULTON COUNTY ATTORNEY
Patrise Perkins-Hooker
Georgia Bar No. 572358

/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.burwell@fultoncountyga.gov

3

Cheryl Melissa Ann Ringer
Georgia Bar No. 557420
Cheryl.ringer@fultoncountyga.gov
David Lowman
Georgia Bar No. 460298
David.lowman@fultoncountyga.gov
Attorneys for Defendant Fulton County BRE

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
Office: (404) 612-0246
Fax:    (404)730-6540

4

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) |
| | ) |
| | ) Civil Action File No. 2018CV313418 |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) |
| | ) |
| | ) . |
| Defendant | ) |
| | ) . |

## CERTIFICATE OF SERVICE

This is to certify that on this day, I have caused to be electronically filed the foregoing

**FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' RESPONSE IN**

**OPPOSITION TO PETITIONERS' DEMAND FIOR JURY TRIAL** with the Fulton County

Superior Court using the Odyssey efile GA system which will provide automatic notification of

this filing to all counsel of record.

This 16th day of January, 2019.


/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775050

5

Fulton County Superior Court
***EFILED***LS
Date: 1/16/2019 3:36 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) ) ) |
| | ) Civil Action File No. 2018CV313418 |
| Petitioner, | ) ) |
| v. | ) ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) ) ) |
| Defendant | ) ) ) |

## FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' RESPONSE IN OPPOSITION TO PETITIONERS' MOTION TO COMPEL

COMES NOW, Fulton County Board of Registrations and Elections ("FCBRE"), and hereby responds to Petitioner's Motion to Compel and for Additional Discovery, showing as follows:

### FACTS

Petitioners filed an Emergency Motion for Inspection on November 29, 2018, Petitioners waited until January 9, 2019 to advance this request. On January 10, 2019, Petitioners' counsel proposed a protocol for inspection that was abandoned once the Court entered its January 11, 2019 Order, which denied much of what Petitioners' proposed protocol sought to include. On January 11, 2019, this Court entered an Order providing Petitioners with certain access. Petitioners are not satisfied with the breadth and depth of that access. The Order sets out three specific requirements for the parties to follow related to this discovery. (Order at 5).

1

Per the Order, Defendants are to provide Plaintiffs with GEMS reports maintained by Defendants (Order at 5.) Plaintiffs are also entitled to "inspect the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition, paragraphs 40, 41, 44, 45, and 46." (Order at 6.)  Further, "Plaintiffs may also examine the internal memory storage of each such DRE unit." (Order at 6.)  But Plaintiffs cannot "in any way damage the DRE machines or information contained therein ... [or] copy, image, save, or retain the DRE machines or the information contained therein ... [ or] upload or introduce any information into the DRE machines." (Order at 6.)  "Destructive testing shall not be permitted." (Order at 6.)  The Court also ruled that the parties must enter into a protective order.[1]

In response to the Order and after consulting with Plaintiff's Counsel, Defendant Fulton County Board of Registration and Elections ("Fulton County") made the DRE units for the voting locations identified in paragraphs 41, 44, and 46 of Plaintiffs' Petition available on January 14, 2019.  This required FCBRE staff to not only locate and retrieve the DRE units, but also locate the sealed memory cards for each machine before the inspection could commence.

In conjunction with the Secretary of State, FCBRE proposed a protocol for examination of the internal memory storage on the DRE units (the majority of such units are property of the State of Georgia).  To access the election result file stored in the internal memory of a DRE, a new memory card containing (1) the election ID and (2) blank ballot information for the election corresponding to the election results being recovered from the internal memory must be inserted into a DRE unit. This allows the DRE unit to locate the specific archive file in its internal

---

[1] This Court also decided, via an electronic mail sent to all counsel that any discovery issues should be brought to the Court's attention via email or conference call. (Email from Judge Adele Grubbs to Counsel, Jan. 11, 2019 ("Jan. 11, 2019 Email").)

2

memory storage. The archive file is then extracted from the internal memory and saved to the inserted memory card. Thus, the inserted memory card would contain the election information extracted from the DRE's internal memory storage. The internal memory for the election can then be viewed through the DRE. This protocol tracks the normal process for recovering election data stored on the internal memory of a DRE unit, and it does not damage the DRE machines or otherwise require imaging or the introduction of any information into the DRE machines.

On January 14, 2019, Plaintiffs' representative proposed a vastly different protocol for examining the DRE machines. Specifically, Plaintiffs rely on the statement of Matt Bernhard, a proffered expert for the Coalition for Good Governance, a nonparty. Bernhard demanded that the counties remove the outside case on the DRE machines and to insert outside computer chips or adapters into the machines before imaging the machines. Thus, Plaintiffs would not only extract but they would alter, even temporarily, the DRE machines hardware. In fact, Plaintiffs' protocol requires altering the motherboard on certain models of DRE units (TS models), installing new computer chips (EEPROM chips) on those DRE units, and then imaging the DRE units. (Id.) For other models of DRE machines in circulation (TSx models), Plaintiffs' protocol requires an outside adapter (JTAG adapter) to be connected to the DRE unit, a "flash probe" run on the DRE unit, and then an image of the internal memory copied to a laptop. (Id.) These procedures are not confined to an examination of the internal memory for the November 6, 2018 election, but instead copy everything on the DRE unit, including information for past elections and critical files related to the architecture of the machines. (Id.)[2]

---

[2] The Order says that Plaintiffs may not "copy, image, save or retain the DRE machines or the information contained therein." (Order at 6.).

When Defendant FCBRE offered to allow Plaintiffs to inspect the DRE machines as the Secretary of State suggested, Plaintiffs refused. Thus, Plaintiffs have not inspected any DRE machines, despite the fact that Defendant FCBRE made them available. Instead, Plaintiffs filed a Motion for Continuance with this Court, and have now filed a Motion to Compel and for Additional Discovery.

Because Plaintiffs seek to obtain information and use methods specifically prohibited by the Court's Order, their Motion to Compel should be denied.

## ARGUMENT AND CITATION OF AUTHORITY

As an initial matter, Plaintiffs Motion for Continuance is improper and in direct contradiction of the Court's instructions. The Court stated that any discovery issues should be brought to the Court's attention by email or conference call, not by motion. (Jan. 11, 2019 Email.) The Court should deny Plaintiffs' motion for failure to properly submit this issue to the Court.

The interests of finality in elections require that challenges to elections be resolved in an expeditious manner. As is abundantly clear in the Election Code, a contest is not treated as an ordinary civil action. The procedure is designed for expeditious and timely resolution of election issues. Thus, the election contest statute does not provide for discovery. It does, however, provide for the prompt resolution of a contest—within 20 days of answer. O.C.G.A. §21-2-525(a). The hearing date of January 17, 2019 complies with O.C.G.A. §21-2-525(a). Petitioners moved for a continuance of this case, and when the Court did not grant it, they have now moved to compel discovery that is outside the scope of the Court's Order and move for additional discovery. This motion should be denied as Defendant FCBRE, at all times, complied with the

4

Order in providing the GEMS Reports and allowing access to the identified machines as directed by the Court's Order.

The Secretary of State has offered and FCBRE has been willing to follow a protocol that is consistent with the Order.   Plaintiffs would have access to each identified voting machine's archive file from the internal memory storage. They could also view the election information on each machine. This should allow Plaintiffs the ability to test their claims, without damaging or altering the DRE machines. It certainly is more consistent with the Order than Plaintiffs' proposal, which expressly calls for prohibited copying and alters the DRE machine hardware.

Finally, FCBRE joins Defendant Gwinnett County Board of Registration and Elections argument that the Court should deny Plaintiffs' Motion to Compel regarding the GEMS database because it is not a motion to compel—it is a motion for a reconsideration of the Court's prior order regarding discovery.  The Court specified that only five reports from the GEMS database should be provided, recognizing the confidentiality of the GEMS database, as explained by the Court of Appeals in *Smith v. DeKalb County*, 288 Ga. App. 574 (2007). Plaintiffs now again seek the entire GEMS database in their purported motion to compel. This Court has already resolved what information Plaintiffs are entitled to receive from the GEMS database. Titling their motion a "motion to compel" does not change the fact that Plaintiffs are requesting a reconsideration of the Court's prior order. This Court should deny Plaintiffs' Motion and this case should proceed to trial.


Respectfully submitted this 16th day of January, 2019.


5

**OFFICE OF THE FULTON COUNTY ATTORNEY**
Patrise Perkins-Hooker
Georgia Bar No. 572358

/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.burwell@fultoncountyga.gov
Cheryl Melissa Ann Ringer
Georgia Bar No. 557420
Cheryl.ringer@fultoncountyga.gov
David Lowman
Georgia Bar No. 460298
David.lowman@fultoncountyga.gov
Attorneys for Defendant Fulton County BRE

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
Office: (404) 612-0246
Fax:    (404)730-6540

6

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al* | ) ) |
| | ) Civil Action File No. 2018CV313418 |
| Petitioner, | ) ) |
| v. | ) ) |
| ROBYN A CRITTENDEN, Secretary of State of Georgia, *et al* | ) ) ) |
| Defendant | ) ) |
| | ) |

### CERTIFICATE OF SERVICE

This is to certify that on this day, I have caused to be electronically filed the foregoing **FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS' RESPONSE IN OPPOSITION TO PETITIONERS' MOTION TO COMPEL** with the Fulton County Superior Court using the Odyssey efile GA system which will provide automatic notification of this filing to all counsel of record.

This 16th day of January, 2019.

/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775050

7

Fulton County Superior Court
***EFILED***QW
Date: 1/16/2019 9:19 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, et al.,

                **Plaintiffs,**

v.

ROBYN A. CRITTENDEN,
et al.,

                **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL AND ORDERING PRODUCTION OF GEMS DATABASE

Plaintiffs have moved to compel Defendants to comply with this Court's January 11, 2019 Order on Pending Motions by allowing Plaintiffs to examine the internal memory of the subject DRE units.  Good cause having been shown, the Motion is GRANTED, and Defendants are ordered to immediately comply with this Court's Order by allowing this access.

Plaintiffs has also moved for an order compelling Defendants to produce their county's GEMS database.  Good causing having been shown, this motion also

Page 1

is GRANTED, and Defendants are ordered to produce, immediately, their county's

GEMS database.

SO ORDERED this __ day of January, 2019.

_____
Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
Bruce P. Brown
Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 15th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

Coalition for Good Governance

Fulton County Superior Court
***EFILED***QW
Date: 1/16/2019 11:58 AM
Cathelene Robinson, Clerk

v.

Robyn C. Hayden, et. al.

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

CASE NO. 2018CV313418

## REQUEST TO USE A RECORDING DEVICE PURSUANT TO RULE 22 ON RECORDING OF JUDICIAL PROCEEDINGS.

Pursuant to Rule 22 of the Uniform Rules for Superior Court regarding Use of Electronic Devices in Courtrooms and Recording of Judicial Proceedings, the undersigned hereby requests permission to use a recording device in Courtroom 2000 in order to record images and/or sound during (all) (the following portions) of the proceedings in the above captioned case/calendar.

Consistent with the provisions of the rule, the undersigned desires to use the following described recording device(s): _iPhone_. The proceedings that the undersigned desires to record commence on (1/17/19). Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to use this device in the courtroom on (1/17/19). The personnel who will be responsible for the use of this recording device are: ( Jordan Wilkie ).

The undersigned hereby certifies that the device to be used and the locations and operation of such device will be in conformity with Rule 22 and any guidelines issued by the court.

The undersigned understands and acknowledges that a violation of Rule 22 and any guidelines issued by the court may be grounds for removal or exclusion from the courtroom and a willful violation may subject the undersigned to penalties for contempt of court.

This _15_ day of _January_, 20 _19_.

_Jordan Wilkie_
(Individual Signature)

_____
(Representing/Firm)

Journalist
(Position)

APPROVED: _____

_____
Senior Judge, Superior Court

_____ Judicial Circuit

Fulton County Superior Court
***EFILED***QW
Date: 1/16/2019 10:30 AM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Rhonda Martin, Smythe Duval, Jeanne Dufort | * | |
| | * | CIVIL ACTION |
| Plaintiffs, | * | FILE NO.: 2018CV313418 |
| vs. | * | |
| | * | |
| Geoff Duncan. | * | |
| Fulton County Board of Registration and Elections, | * | |
| Gwinnett county Board of Registration And Elections | * | |
| | * | |
| Defendants. | * | |
| | * | |

## ORDER DENYING PLAINTIFFS'MOTION TO CONTINUE

The Plaintiffs having filed a Motion to Continue the above styled case, and

the Defendants having individually responded:

It is hereby ordered as follows:

1.

This is an election contest case in which the Plaintiffs filed suit contesting

the result of the 2018 election for Lieutenant Governor for the State of

Georgia as being illegal and therefore incorrect. The Petition was filed on

November 23, 2018.

2.

At the hearing on December 5, 2018 the Court set the scheduling order for

the case, including Motions for January 9th 2019 and trial for January 17th

2019.  O.C.G..A. Section 21-2-525(a) provides that within 20days after the
return date the Court set a date for trial of the matter and that the case be

decided promptly and expeditiously.

3.

The Plaintiffs have the burden of going forward. The notice of trial is

reasonable. The Plaintiffs' Motion to continue the case is denied.

4

At the hearing on January 9th, 2019 the Court orally pronounced its ruling as

to discovery. The order was entered on January 11th, 2019. The Court said

that it would handle discovery disputes by e mail or conference call. None

were made.

5

The Court notified the parties that the case would not be continued two

hours ago. Since that notification the Plaintiffs have filed a  Motion to

compel and sought additional grounds for a continuance. That Motion does

not continue this case.

6.

The trial of this case will go forward on January 17th, 2019 at 9:00 a.m.as

was ordered on December 5th, 2018.

.

SO ORDERED this ___16___ day of _____January_____ 2019

_____
**JUDGE ADELE P. GRUBBS**
Senior Judge , State of Georgia

.

**CERTIFICATE OF SERVICE is attached.**

I will enter an Order denying the Motion to Continue today. The case remains on for trial tomorrow as scheduled. I wanted to give all of you notice of my decision as early as possible.

Adele Grubbs

Senior Judge
[Quoted text hidden]

---

**Adele Grubbs** <adele.grubbs@gmail.com>                        Wed, Jan 16, 2019 at 10:16 AM
To: Bryan Tyson <bpt@sbllaw.net>
Cc: "Burwell, Kaye" <Kaye.Burwell@fultoncountyga.gov>, Bruce Brown <bbrown@brucepbrownlaw.com>, Alexander Denton <Alexander.Denton@robbinsfirm.com>, Laila Tehrani <laila.tehrani@sbllaw.com>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, Vincent Russo <VRusso@robbinsfirm.com>, Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "Perkins-Hooker, Patrise" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, "Ringer, Cheryl" <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>, "csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>

Counsel,

Attached please find the order denying the continuance I have signed today.

Adele Grubbs
Senior Judge
[Quoted text hidden]

---

**Adele Grubbs** <adele.grubbs@gmail.com>                        Wed, Jan 16, 2019 at 10:16 AM
To: Bryan Tyson <bpt@sbllaw.net>
Cc: "Burwell, Kaye" <Kaye.Burwell@fultoncountyga.gov>, Bruce Brown <bbrown@brucepbrownlaw.com>, Alexander Denton <Alexander.Denton@robbinsfirm.com>, Laila Tehrani <laila.tehrani@sbllaw.com>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, Vincent Russo <VRusso@robbinsfirm.com>, Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "Perkins-Hooker, Patrise" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, "Ringer, Cheryl" <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>, "csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>

See Attached
[Quoted text hidden]

📄 **20190116101338.pdf**
44K

Coalition for Good Governance
v.

Robyn Crittenden, et. al.

Fulton County Superior Court
***EFILED***QW
Date: 1/16/2019 11:58 AM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

(STYLE OF CASE/CALENDAR)          CASE NO. 2018CV313418

## REQUEST TO USE A RECORDING DEVICE PURSUANT TO RULE 22 ON RECORDING OF JUDICIAL PROCEEDINGS.

Pursuant to Rule 22 of the Uniform Rules for Superior Court regarding Use of Electronic Devices in Courtrooms and Recording of Judicial Proceedings, the undersigned hereby requests permission to use a recording device in Courtroom 2000 in order to record images and/or sound during (all) (the following portions) of the proceedings in the above captioned case/calendar.

Consistent with the provisions of the rule, the undersigned desires to use the following described recording device(s): Video + Audio recorders. The proceedings that the undersigned desires to record commence on (date). Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to use this device in the courtroom on (date). The personnel who will be responsible for the use of this recording device are: (identify appropriate personnel).

The undersigned hereby certifies that the device to be used and the locations and operation of such device will be in conformity with Rule 22 and any guidelines issued by the court.

The undersigned understands and acknowledges that a violation of Rule 22 and any guidelines issued by the court may be grounds for removal or exclusion from the courtroom and a willful violation may subject the undersigned to penalties for contempt of court.

This 17th day of January 2019.

George Balloon
(Individual Signature)
Me
(Representing/Firm)
Concerned Citizen
(Position)

APPROVED: _____

_____
Judge, Superior Court

_____ Judicial Circuit

Fulton County Superior Court
***EFILED***LW
Date: 1/17/2019 9:27 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,          ) ) ) ) ) | |
| Plaintiffs,          ) ) | CIVIL ACTION |
| v.          ) ) | FILE NO. 2018CV313418 |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, DEKALB COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, and GEOFF DUNCAN,          ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants.          ) | |

### DEFENDANTS GEOFF DUNCAN AND FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS AND AMICUS CURIAE SECRETARY OF STATE BRAD RAFFENSPERGER'S RESPONSE IN OPPOSITION TO PLAINTIFFS' JURY DEMAND

COMES NOW, Defendants Geoff Duncan ("Duncan") and Gwinnett County

Board of Registration and Elections ("Gwinnett BRE"), and amicus curiae Brad

Raffensperger, in his official capacity as Secretary of State of the State of Georgia

("Secretary") (collectively "Government Entities"), by and through counsel, and

respectfully responds to Plaintiffs' Demand for a Jury Trial.

The Government Entities join the Fulton County Board of Registrations and Elections' ("Fulton County BRE") Opposition to Plaintiffs' Demand for a Jury Trial. The Government Entities write separately only to add that, yet again, Plaintiffs have failed to meet their statutory burden.

As the Fulton County BRE points out, there is no right to a jury trial in election cases. Henderson v. Cty. Bd. of Registration & Elections, 126 Ga. App. 280, 284 (1972). The burden is on the party demanding a jury to demonstrate that there are issues for which a jury is necessary, and this Court is empowered with discretion to decide the issue. See id. at 286-87; O.C.G.A. § 21-2-526(a).

Plaintiffs have failed to even attempt to make the requisite showing. Instead, Plaintiffs filed a one-page demand for a jury trial without any argument or proffered facts. This falls well short of their burden, and this Court should deny Plaintiffs' jury demand as the courts did in Henderson and Fuller v. Thomas, 284 Ga. 397 (2008). In both of those cases, the Supreme Court affirmed the superior courts' decisions.

## CONCLUSION

Plaintiffs' attempts to delay this proceeding by re-arguing discovery motions and, at the eleventh hour, seeking a jury trial should be rejected by this Court. Plaintiffs have sat on their hands and failed to litigate this case with the diligence that a prompt decision requires. For these reasons, the reasons outlined in the

-2-

Fulton County BRE response, and as set forth above, the Government Entities

request that this Court DENY Plaintiffs' Demand for a Jury Trial.

This 17th day of January, 2019.

/s/ Edward H. Lindsey, Jr. (w/ express permission)
Edward H. Lindsey, Jr.
Georgia Bar No. 453075
Samuel S. Olens
Georgia Bar No. 551540

Dentons US LLP
333 Peachtree Street, N.E.
Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
Attorneys for Lieutenant Governor Geoff Duncan

/s/ Bryan P. Tyson (w/ express permission)
Frank B. Strickland
Georgia Bar No. 687600
Bryan P. Tyson
Georgia Bar No. 515411
Anne W. Lewis
Georgia Bar No. 737490

STRICKLAND BROCKINGTON
LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (678) 347-2200

Richard A. Carothers
Georgia Bar No. 111075
Brian R. Dempsey
Georgia Bar No. 217596

-3-

CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, Georgia 30518
Telephone: (770) 932-3552
*Attorneys for the Gwinnett County Board of
    Registrations and Elections*

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Annette M. Cowart
Deputy Attorney General
Georgia Bar No. 191199
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280

State Law Department
40 Capitol Square, S.W.
Atlanta, GA 30334
Telephone: (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No: 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
*Special Assistant Attorneys General*

-4-

ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD
   LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250

*Attorneys for Defendant Brad Raffensperger,*
*Secretary of State of Georgia*

-5-

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing **DEFENDANTS GEOFF DUNCAN AND FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS AND AMICUS CURIAE SECRETARY OF STATE BRAD RAFFENSPERGER'S IN OPPOSITION TO PLAINTIFFS' JURY DEMAND** by electronically filing it with the Clerk of the Court using the Odyssey eFileGA system, which will automatically send an email notification of such filing to counsel for the parties.

This 17th day of January, 2019.


/s/ Josh Belinfante
Josh Belinfante

Coalition for Good Governance

v.

Robyn Crittenden

2018 CV 313418

Fulton County Superior Court
***EFILED***QW
Date: 1/17/2019 1:57 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON
COUNTY STATE OF GEORGIA

**Coalition for Good Governance et al v. Crittenden**
**2018CV313418**

## REQUEST TO USE A RECORDING DEVICE PURSUANT TO RULE 22 ON RECORDING OF JUDICIAL PROCEEDINGS.

Pursuant to Rule 22 of the Uniform Rules for Superior Court regarding Use of Electronic Devices in Courtrooms and Recording of Judicial Proceedings, the undersigned hereby requests permission to bring into **the courtroom of Senior Superior Court Judge Adele Grubbs and use the following devices** during all of the proceedings in the above captioned case.

Consistent with the provisions of the rule, the undersigned desires to use the following described recording device(s): **a personal laptop and a personal cell phone**. The proceedings that the undersigned desires to record commence on **Jan. 17**. Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to use this device in the courtroom on **Jan. 17 and Jan. 18 forward if the trial lasts longer than a day**. The personnel who will be responsible for the use of these recording devices **is R. Robin McDonald, staff writer, The Daily Report, Atlanta**.

The undersigned hereby certifies that the device to be used and the locations and operation of such device will be in conformity with Rule 22 and any guidelines issued by the court.

The undersigned understands and acknowledges that a violation of Rule 22 and any guidelines issued by the court may be grounds for removal or exclusion from the

courtroom and a willful violation may subject the undersigned to penalties for contempt of court.

This **14th  day of January, 2019**.

**R. Robin McDonald**

**Staff Writer**

**The Daily Report (404-358-2103: cell phone)**
APPROVED: _____✓_____

_____
Judge, Superior Court

_____ Judicial Circuit

*Coalition For Good Government*

v.

*Robyn C. Hecden*

Fulton County Superior Court
***EFILED***QW
Date: 1/17/2019 1:57 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF *Fulton* COUNTY
STATE OF GEORGIA

CASE NO. *2018 cv 313418*

## REQUEST TO USE A RECORDING DEVICE PURSUANT TO RULE 22 ON RECORDING OF JUDICIAL PROCEEDINGS.

Pursuant to Rule 22 of the Uniform Rules for Superior Court regarding Use of Electronic Devices in Courtrooms and Recording of Judicial Proceedings, the undersigned hereby requests permission to use a recording device in Courtroom _____ in order to record images and/or sound during (all) (the following portions) of the proceedings in the above captioned case/calendar.

Consistent with the provisions of the rule, the undersigned desires to use the following described recording device(s): *laptop / smartphone*. The proceedings that the undersigned desires to record commence on (date). Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to use this device in the courtroom on (date). The personnel who will be responsible for the use of this recording device are: (identify appropriate personnel).

The undersigned hereby certifies that the device to be used and the locations and operation of such device will be in conformity with Rule 22 and any guidelines issued by the court.

The undersigned understands and acknowledges that a violation of Rule 22 and any guidelines issued by the court may be grounds for removal or exclusion from the courtroom and a willful violation may subject the undersigned to penalties for contempt of court.

This _17_ day of _Jan_, 20_19_.

_Maya Prabhu_
(Individual Signature)
_The Atlanta Journal-Constitution_
(Representing/Firm)
_Reporter_
(Position)
_Maya T. Prabhu_

APPROVED: _____

_____
Judge, Superior Court

_____ Judicial Circuit

Fulton County Superior Court
***EFILED***LW
Date: 1/18/2019 3:34 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT,**<br><br>          **Plaintiffs,**<br>     **v.**<br><br>**ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al.,**<br><br>          **Defendants.** | **CIVIL ACTION FILE NO. 2018CV313418** |

### AFFIDAVIT OF BRUCE P. BROWN

Appeared before me, the undersigned officer duly authorized to administered oaths, Bruce P. Brown who, after being sworn, states as follows:

1.      I represent the Plaintiffs in this action.  I am qualified to give this affidavit, which is based on my personal knowledge.

2.      Attached hereto are true and correct copies of emails and pleadings in this case:

A. Email from Bruce P. Brown to Judge Grubbs dated January 10, 2019, with attached Plaintiffs' Proposed Order;

B. Plaintiffs' Brief in Support of Proposed Order Regarding Inspection of Certain Equipment dated June 11, 2019.

C. Email from Bruce P. Brown to Judge Grubbs dated June 11, 2019.

D. Email from Judge Grubbs to Counsel dated June 11, 2019.

E. Email from Bruce P. Brown to Kay Burwell dated January 13, 2019.

F. Email from Bruce P. Brown to Kaye Burwell and Cheryl Ringer dated January 14, 2019.

G. Email from Patrick Jaugstetter to Bruce P. Brown dated January 15, 2019.

H. Email from Ryan Germany to Patrick Jaugstetter dated January 14, 2019, received from Secretary's counsel on January 15, 2019.

Further Affiant sayeth not.

Bruce P. Brown

Sworn to and subscribed before me:
On this 18 day of Jan, 2019
Notary Public, State of Georgia
My Commission Expires: 5/16/22

SEAL



E

X

H

I

B

I

T


A

**Subject:**     Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418
**Date:**        Thursday, January 10, 2019 at 12:12:36 PM Eastern Standard Time
**From:**        Bruce Brown
**To:**          Adele Grubbs
**CC:**          laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com,
                 brian.dempsey@carmitch.com, bpt@sbllaw.net, Lindsey, Jr., Edward H.,
                 Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov,
                 DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com,
                 csims@7Jad.com, chall@lmjc.net, Josh Belinfante, Vincent Russo, Brian Lake,
                 ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov, Alexander Denton
**Attachments:** 20190110 Lt Gov Proposed Order On Motions.docx

Dear Judge Grubbs:
I have attached Plaintiffs' proposed order on the motions heard by Your Honor yesterday. I circulated a draft
of this proposed order yesterday afternoon to defendants' counsel, and again this morning, and have not
received a response as to what changes they would recommend to it. Given the expedited nature of these
proceedings, I thought it best to go ahead and submit Plaintiffs' proposed order without further delay.
We did have a conference call with defendants' counsel on discovery yesterday evening, both with respect to
the terms of the proposed order and logistics. The parties did **not** agree on language for the proposed order
with respect to discovery, but we did make progress on logistics, and Fulton County is readying machines for
inspection.
I note that Part B(2) of the attached, which address the discovery of the DRE machines, references the
paragraphs of the complaint that allege specific instances of machine malfunctions, except for paragraphs 42
and 43, which concerned locations in DeKalb County.
Many thanks,
Bruce Brown
Attorney for Plaintiffs

**Page 1 of 1**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, et al.,

             **Plaintiffs,**
    v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

             **Defendants.**

**CIVIL ACTION FILE
NO. 2018CV313418**

## [PROPOSED] ORDER ON PENDING MOTIONS

This case came before the Court for a non-evidentiary hearing on the following pending motions: (a) the motions to dismiss filed by each of the defendants: Defendant Robyn A Crittenden ("the Secretary), Defendant Geoff Duncan ("Duncan"), Defendant Fulton County Board of Registration and Elections ("Fulton County Board"), and Defendant Gwinnett County Board of Registration and Elections ("the Gwinnett Board") (collectively "the Motions to Dismiss"); (b) Plaintiffs' Emergency Motion for Inspection of Electronic Election Equipment and Production of Documents ("Plaintiffs' Motion for Inspection"); and (c) Plaintiffs'

Motion for Perservation of Specific Electronic Election Records in Gordon and Murray Counties. After considering the briefs and responses, and arguments of consel, the Court rules as follows:

## A. Motions to Dismiss

The Motions to Dismiss raised several distinct issues, ruled upon below:

### 1. Secretary as Proper Defendant

The Secretary moved to dismiss the Secretary as a party to Count I of the Petition (the Election Contest Claim), arguing that it is not a proper "Defendant" as that term is used in the Election Statute, O.C.G.A. § 21-2-520(2). The Court agrees. O.C.G.A. § 21-2-520(2) defines Defendant as "(C) the election superintendent or superintendents who conducted the contested primary or election." O.C.G.A. § 21-2-2(35) in term defines "superintendent" as follows:

> Either the judge of the probate court of a county or the county board of elections, the county board of elections and registration, the joint city-county board of election, or the joint city-county board of elections and registrations, if a county has such.

The Secretary does not fall within any of the definitions of "superintendent."

Plaintiffs argue, among other things, that the definition of "election superintendent" found in Chapter 4 of Title 21 should control. O.C.G.A. § 21-4-3(A) defines "election superintendent": "In the case of any elected state officers, the Secretary of State." This definition, however, is found in Chapter 4, not

Page 2

Chapter 2, and this election contest concerns Chapter 2. The Court disagrees, and holds that the definition of "superintendent" in the election contest chapter controls and, since the Secretary does not fall within that definition, the Secretary is not a proper party defendant to Count I and should be dismissed from that Count.

2.    *Whether 159 Counties are Necessary Parties*

Fulton County Board and Gwinnett County Board concede that they are proper defendants, but argue that the other 157 counties must be joined in the state-wide election contest. In support of this argument, Gwinnett County Board cites O.C.G.A. § 21-2-520(2)(C). That section, however, would allow other counties to be joined to this action, but does not require such joinder. In addition, O.C.G.A. § 21-2-525(b) gives the Court "plenary power, throughout the area in which the contested primary or election was conducted, to make, issue, and enforce all necessary orders, rules, processes, and decrees for a full and proper understanding and final determination and enforcement of the decision of every such case." The joinder of the other 157 counties, therefore, is not necessary and the motions to this extent are denied.

3.    *Service of Process*

In their briefs, Defendants argued that the Petition should be dismissed because service had not been perfected on the Defendants. Defendants now

concede that they have been properly served, and the motions to this extent are denied.

### 4.    Coalition as Party to Count I

Defendants contend that Plaintiff Coalition for Good Governance is not a proper plaintiff to Count I, the election contest. Coalition does not disagree and has stipulated that it is not a party to Count I. Defendants' motion to this extent is granted as unopposed.

### 5.    Failure to State a Claim

Defendants argue that the Petition fails to state a claim upon which relief may be granted. The Court disagrees. Defendants have failed to carry their burden of showing that Plaintiffs "would not be entitled to relief under any state of provable facts asserted" in the complaint or that Plaintiffs "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Scouten v. Amerisave Mortg. Corp.,* 283 Ga. 72, 73 (2008) (citations omitted). The motions for failure to state a claim, therefore, are denied.

### B.    Plaintiffs' Motion for Inspection

Plaintiffs' Motion for Inspection is denied. The Court, however, will allow the following inspections and discovery:

1. Plaintiffs are entitled to inspect the "GEMS" servers and GEMS databases or complete electronic copies thereof for the November 2018 elections that are maintained by the Gwinnett County Board and the Fulton County Board.

2. Plaintiffs are entitled to conduct a forensic inspection of the DRE machines, including the internal memories of those machines, that were used in the voting locations identified by Plaintiffs in the Petition, paragraphs 40 and 41, and paragraphs 44 – 48. Plaintiffs are ordered to conduct the inspection and copying so as to not in any way damage the DRE machines.

3. Defendants and Plaintiff shall enter into an appropriate protective order preserving the confidentiality of confidential information, if any, obtained in this discovery.

## C.     Plaintiffs' Motion Relating to Gordon and Murray Counties

This  motion, which concerned the January 8, 2019 elections in Gordon and Murray, is denied as moot.

SO ORDERED this __ day of January, 2018.

                                                  _____
Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
                  Bruce P. Brown
                  Counsel for Plaintiffs

E
X
H
I
B
I
T

B

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, RHONDA J. MARTIN, SMYTHE DUVAL, AND JEANNE DUFORT, | |
| Plaintiffs, | |
| v. | Civil Action No. 2018CV313418 |
| ROBYN A. CRITTENDEN, Secretary of State of Georgia, et al., | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF PROPOSED ORDER REGARDING INSPECTION OF CERTAIN EQUIPMENT**

This brief addresses the two key differences between the parties' proposed orders on inspection and discovery of electronic election equipment: the GEMS database and the DRE machines.

**A.        GEMS Database**

Defendants contend that discovery of the GEMS database should be limited to the output of the databases that is publicly available under the Open Records Act.  As explained by Plaintiffs' expert Matt Bernhard in his affidavit, this information is virtually useless in determining the causes, quantification, and impact of programming errors or other machine malfunctions.

Plaintiffs' proposed order, on the other hand, would simply require Fulton and Gwinnett Counties to provide the GEMS database, an unencrypted and non-

confidential electronic database that can be reviewed efficiently when an expert is provided with an electronic copy. Such copies can be created in a matter of minutes by the Defendant counties. The GEMS database contains routine election data and no proprietary software or trade secrets. The county election data is simply loaded into a generic Microsoft Access database to create the GEMS database, which contains no proprietary source code or highly sensitive information. Unlike the print-outs that the Defendants would produce, the GEMS database may hold important clues as to where mis-programming, viruses, malfunctions or hacks occurred, and the number of machines and votes potentially affected.

The GEMS database would be the first, most efficient, and easiest place an expert would look for the cause and to quantify the impact of the irregularities. Both the County and the Secretary of State keep copies of the pre-election and post-election GEMS databases. Either office could produce and transmit an electronic copy within minutes, as Fulton County was asked to do on Wednesday, January 9.

As noted in the Affidavit of Matthew Bernhard, the GEMS database is merely a commercially available Microsoft database product (MSAccess), and can be read by anyone with a subscription to the Microsoft program. It contains election data, and no proprietary or sensitive information. All information in the database should be public record under Georgia's open record laws. There is no

reasonable way to compromise the security of future elections by reviewing the

GEMS database files.  To illustrate the non-proprietary nature of the information in

a GEMS database, Plaintiffs will promptly provide the Court and parties with a

link to the GEMS database from Marin County, California and illustrative

screenshots of example contents, in a supplemental exhibit not available at the time

of this filing.

Defendants may contend that the GEMS database contains proprietary,

sensitive or confidential information.  This is simply not the case, as illustrated by

the decision of other states' to makes their GEMS' databases a public record.  But

even if there were some truth to Defendants' assertions, that concern is addressed

by the execution of an appropriate confidentiality order.  Defendants cannot avoid

liability simply by claiming that evidence is confidential – not in an election

contest and not in any other case.

**B.        DRE Machines**

There are two basic disagreements between the parties concerning the DRE

machines: the scope of what may be examined on each DRE, and which DREs

may be examined.

**1.        Scope of Investigation**

As to the scope, Defendants would limit the "inspection" to a running of the

machines in "post-election" mode, again, a virtually useless exercise that is

unlikely to yield any meaningful information.  Plaintiffs instead propose what was

discussed at the January 9, 2019 hearing: a normal forensic examination that would include review of the internal memory of the machines.

As to the internal memory of the DRE machines, Georgia's Election Code Rule contemplates that the internal memory of the DRE machines would be an available record for review by parties in an election contest involving DRE machines. Georgia State Election Board Rule 183-1-12-.02 (6)(d) provides:

> *The election results, ballot styles, ballot images, and other information for each election **stored in the internal memory storage of each DRE unit** shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election.*

As Mr. Bernhard explains in his affidavit, inspection of the internal memory is vitally necessary to determine the causes and impact of any programming errors. The internal memory includes the programming and operating information, both of which must be reviewed for malfunction, viruses, tampering or mis-programming.

## 2.    DRE Machines to Inspect

Plaintiffs' proposed order is based on its understanding of what the Court ruled at the hearing.  At the hearing, the Court referenced the specific location that were identified in the Petition, noting specifically that the locations in DeKalb County were not included.  This is why Plaintiffs have referenced the non-DeKalb locations identified in the Petition, which are

paragraphs 40 and 41, and paragraphs 44 – 48, which include Henry County,
Fulton County and Worthy County.

*Note on Current Status*

Just four business days before trial, neither the Defendants nor the Secretary
of State (who owns the equipment and has copies of the GEMS databases) have
not made any records or equipment available for inspection, and have not given
Plaintiffs any indication of when this will be done.  This is despite repeated
requests from Plaintiffs for this information.  Plaintiffs assume Defendants are
acting in good faith, but nevertheless the effect of their actions is to "run out the
clock" and prevent any meaningful investigation of the equipment prior to trial.

Plaintiffs have been diligent in prosecuting this case and seeking this
discovery.  Plaintiffs' motion for this inspection was filed six weeks ago, on
November 29, 2018, and Plaintiffs have been doing everything possible to expedite
this process, including obtaining relevant documents through a cumbersome and
expensive process of public records requests to attempt to build a database of
election records for quick reference when analyzing records that cannot be
reasonably obtained except through the discovery process.

Plaintiffs recognize the impossibility of conducting examinations and
preparing meaningful expert's reports for the Court prior to the scheduled trial on
January 17, 2019.  The election contest statute gives this Court plenary power over
discovery and scheduling so that the Court can gain a "full and proper

understanding" of the case.  O.C.G.A. § 21-2-525(b).   Although time is of the essence in an election contest case, the election contest statute makes it clear that sufficient time should be taken to fully explore the facts and issues involved.  The statute gives the Court the power to fix multiple hearing dates, to issue decrees, to issue subpoenas, and to compel and take testimony.  Election contest cases are unusual is some respects, of course, but the election contest statute repeatedly states that the case is supposed to proceed "according to the course of practice in other civil cases," and conducted "in like manner and to the same extent as in other civil cases litigated before such court," all for the purpose of allowing the Court to gain a "full and proper understanding" of the matter.  *Id.*

A proper forensic examination of this electronic equipment is absolutely essential so that the Court can gain an understanding of the causes and extent of malfunctions that plagued the November 2018 election.  This is not a fishing expedition: Plaintiffs have already obtained hard evidence and eye-witness accounts of machine malfunctions and irregularities from all corners of the state, as well as apparent tabulation errors, and have presented and opinions from two leading experts who have concluded that the only plausible explanation for the aberrant election result pattern is system malfunction.  Deliberate and exacting expert review of electronic records stored in the Defendant's equipment and files are essential for this Court's understanding of the impact of the malfunctions on the election results.

Plaintiffs respectfully request that the Court order Defendants to immediately produce the specific electronic records and machines as contemplated in the Court's order of January 9, 2019. Undertaking this effort immediately may provide an established path for additional discovery, including certain paper records, such as poll tapes, that will be required and promptly requested by Plaintiffs.

Respectfully submitted this 11th day of January, 2019.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 11th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

E
X
H
I
B
I
T

C

**Subject:** Appointment of Special Master and Continuance: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

**Date:** Friday, January 11, 2019 at 12:45:36 PM Eastern Standard Time

**From:** Bruce Brown

**To:** Adele Grubbs

**CC:** Vincent Russo, Alexander Denton, laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Josh Belinfante, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov

Judge Grubbs:

In light of the technical issues involved in the discovery and inspection, and the time constraints involved, Plaintiffs anticipate filing this afternoon a Motion for the Appointment of a Special Master under Uniform Superior Court Rule 46(A)(1)(C) and for a continuance of the trial.  Before doing so, however, Plaintiffs will speak with counsel for Defendants to see if such a motion may be filed jointly, or whether Defendants would agree to all or part of such relief.

Many thanks,

Bruce Brown

**Page 1 of 1**

E

X

H

I

B

I

T


D

| Subject: | Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
|---|---|
| Date: | Friday, January 11, 2019 at 1:29:39 PM Eastern Standard Time |
| From: | Adele Grubbs |
| To: | Vincent Russo |
| CC: | Bruce Brown, Alexander Denton, laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Josh Belinfante, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov |

Attachments: image003.jpg, 20190111132600.pdf

Counsel,

Attached is the Order entered in this case. There will b no continuance or Special Master. This is an election contest only case that must be expedited.

If there are issue as the Plaintiffs conduct of discovery I will take them up by e mail or conference call if necessary.

Adele Grubbs
Senior Judge

On Fri, Jan 11, 2019 at 1:01 PM Vincent Russo <vrusso@robbinsfirm.com> wrote:
> Judge Grubbs,
>
> Please note that the affidavit of Michael Barnes was signed and notarized. I had a typo in my email below referring to it as unsigned.
>
> Apologies for any confusion.
>
> Thanks,
>
> Vincent
>
> Sent from my iPhone
>
> On Jan 11, 2019, at 12:00 PM, Vincent Russo <vrusso@robbinsfirm.com> wrote:
>
> Judge Grubbs:
>
>
> The inspection that Plaintiffs' are now seeking would not only damage the voting machines, but it would expose highly confidential information about Georgia's voting system that would leave it vulnerable to attack. The Georgia Court of Appeals has already stated that the GEMS database should not be released due to the sensitivity of the information on it. Smith v. DeKalb County, 288 Ga. App. 574 (2007) (copy attached). Conversely, the scope of inspection proposed by Defendants would give Plaintiffs access to information sufficient to determine whether the irregularities alleged in the Petition existed while continuing to protect Georgia's voting system. Attached is an unsigned affidavit of Michael Barnes, Director of the Center for Election Systems in the Secretary of State's Office, further discussing these issues.

**Page 1 of 8**

In regard to the GEMS inspection, Mr. Barnes states that the GEMS reports that Defendants have proposed to generate from GEMS show how races in the database are related to political districts within the county and how those races are then related to the ballots generated. Accordingly, if there was a programming failure (i.e., failure to relate a race to a given district which results in it not be present on the ballot), it would appear in those reports according to Mr. Barnes.

Additionally, the ballot images report generated from GEMS shows which voter selections were collected by race within each ballot recorded by the DRE. The image report contains all races and associated candidates contained on the ballot, the candidate who was selected, and which candidates were not selected. Defendants' proposed reports from GEMS also show which individual races were present on each ballot style configured by GEMS, which also goes to the alleged irregularity regarding missing races and candidates. Finally, the Secretary of State's Office can perform a HASH verification of the GEMS program installed on the county computer, which would confirm whether the program has been altered. As indicated in Mr. Barnes' affidavit, if there were irregularities or failures with respect to programming, vote recordation, the appearance of candidates on a ballot in a given election, they would appear in these reports.

Next, in regard to the DRE machines, the inspection that we have proposed relates directly to the DRE irregularities alleged by Plaintiffs. Plaintiffs have alleged that candidate names were missing from ballots on DRE machines (Pet. at ¶ 41), issues with calibration of DRE touchscreens (Pet. at ¶ 41, 47), cancelled ballots on machines (Pet. at ¶ 44), and discrepancies in the vote counts on precinct poll tapes (Pet. at ¶ 46). As indicated in the attached affidavit of Michael Barnes, inspecting the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition would allow Plaintiffs to discover whether any of these alleged irregularities actually existed, to the extent there were any.

In contrast, the DRE inspection proposed by Plaintiffs would require removing the memory chip from the motherboard on each machine, which damages the machines and prevents elections officials from using them ever again. Like the GEMS access proposed by Plaintiffs, Mr. Barnes has also stated that Defendants' proposed DRE inspection would expose sensitive information that would give a roadmap for hacking the system. The Ballot Station program on the DRE only opens files that reside in a specifically named folder and then only opens files in that folder that have specific file extensions. According to Mr. Barnes' affidavit, the data is copied directly from a memory card, someone would know how files are organized and named on the memory card. If a computer researcher wanted to "hack" the system, that person would want to know what file folders and file extensions Ballot Station recognizes.

Defendants' proposed inspection for the DRE machines includes the post-election memory cards. According to Mr. Barnes, if one has the memory card used in an Election, one has a copy of what is on the machine's internal Memory already

Defendants' have proposed a scope of discovery that is in line with our understanding of your intent at the hearing on Wednesday. Plaintiffs proposed inspection would not only damage voting machines, but it would also provide a roadmap or schematic of the system that someone would need in order to create virus or show how one could be created. Plaintiffs' proposed Order would sanction a fishing expedition that is beyond the factual allegations in the Petition, so we urge the Court to adopt Defendants' Proposed Order.

**Page 2 of 8**

Kind regards,

Vincent Russo

**Vincent R. Russo** |*404.856.3260* | <image002.jpg>

From: Adele Grubbs [mailto:adele.grubbs@gmail.com]
Sent: Friday, January 11, 2019 7:09 AM
To: Bruce Brown <bbrown@brucepbrownlaw.com>
Cc: Alexander Denton <Alexander.Denton@robbinsfirm.com>; laila.tehrani@sbllaw.net;
richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Josh
Belinfante <Josh.Belinfante@robbinsfirm.com>; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>;
Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com;
Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo
<vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov;
kaye.burwell@fultoncountyga.gov
Subject: Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Please have ALL arguments about this order to me by Noon today so I can enter the order today.

Thank you.

Adele Grubbs

Senior Judge

Sent from my iPhone

On Jan 11, 2019, at 12:48 AM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:

> Judge Grubbs:

> Further to my email below on Defendants' proposed order (attached to

**Page 3 of 8**

Mr. Denton's 4:59 PM email), Plaintiffs have no objections to the changes Defendants propose to Parts A, but would urge the Court to adopt Plaintiffs' Part B, for the reasons set forth in the Affidavit of Plaintiffs' expert Matt Bernhard, attached.  I have attached to this email a Proposed Order that does just this: takes the Defendants' version of Part A, but Plaintiffs' prior version of Part B, the discovery provisions for the specific records and equipment included in the Court's ruling at the January 9, 2017 hearing.   Plaintiffs have included in Part B the sentence proposed by Defendants – "Destructive testing shall not be permitted." (I note that no notary public was available tonight to notarize Mr. Bernhard's affidavit (he is out-of-state), but we will submit a notarized affidavit when it becomes available).

Mr. Bernhard explains in his affidavit that the inspection proposed by Defendants would be virtually useless, and how that the inspection that Plaintiffs proposes is the only way to discover system malfunctions and mis-programming.

Mr. Bernhard also references a Georgia law relating to the internal memory that is right on point.   Georgia State Election Board Rule 183-1-12-.02 (6)(d) states:

> The election results, ballot styles, ballot images, and other information for each election **stored in the internal memory storage of each DRE unit** shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election.

This Rule requires the counties to preserve the internal memory of the DRE machines for the specific purposes of having that memory available for inspection and review in an election contest. Fulton County's position that this information should not be made available in this election contest, therefore, is inconsistent with this rule and, for the additional reasons explained in Mr. Bernhard's affidavit, completely without merit.

**Page 4 of 8**

As to the GEMS database, Mr. Bernhard explains that this can easily be produced on a CD to Plaintiffs' experts; it is not proprietary information and is crucially necessary for the examination.

Many thanks,

Bruce Brown

---

**From:** "bbrown@brucebrownlaw.com" <bbrown@brucebrownlaw.com>
**Date:** Thursday, January 10, 2019 at 6:07 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>,
"laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>,
"sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com"
<brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H."
<edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org"
<Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov"
<Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com"
<DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>,
"JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com"
<csims@7Jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo
<vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>,
"ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov"
<kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Dear Judge Grubbs:

With respect to Defendants' proposed order, relating specifically to  discovery and inspection,
Plaintiffs will be submitting later this evening a statement from one of our experts (a computer
scientist specializing in voting systems) which will explain how the limitations that defendants would
impose will render the inspection useless for the purposes of detecting the causes of any

**Page 5 of 8**

malfunction, or misprogramming, either in the GEMS database or DRE machines, and is not a forensic examination that may detect programming errors (which is what we understand the Court instructed).  We urge the Court to withhold considering the proposed order until the Court has the opportunity to consider that submission.


Respectfully,


Bruce Brown

---

**From:** Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Date:** Thursday, January 10, 2019 at 4:59 PM
**To:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>,
"bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>, Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>,
"sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com"
<brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org"
<Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov"
<Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com"
<DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>,
"JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com"
<csims@7Jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo
<vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>,
"ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov"
<kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418


Judge Grubbs,


The Defendants have collaborated to prepare the attached proposed order for your consideration. It tracks the one Plaintiffs' counsel provided earlier today except as to those specific portions where they are not in agreement.


Thank you.

Alexander Denton | *404.856.3276* | R̲O̲B̲B̲I̲N̲S̲

---

**From:** Josh Belinfante
**Sent:** Thursday, January 10, 2019 12:59 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>; Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com;
brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H.
<edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-
Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov;
JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo <vrusso@robbinsfirm.com>;
Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov;
Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418


Judge Grubbs:

Good afternoon.  We have substantial agreement with portions of the proposed order but are
drafting an alternative for your consideration.  We are working to submit it as soon as possible today.

Thank you and best regards,

JB


**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Thursday, January 10, 2019 12:13 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com;
brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H.
<edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-
Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov;
JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>; Vincent Russo <vrusso@robbinsfirm.com>; Brian Lake
<Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov; Alexander
Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418


Dear Judge Grubbs:

I have attached Plaintiffs' proposed order on the motions heard by Your Honor yesterday.  I circulated
a draft of this proposed order yesterday afternoon to defendants' counsel, and again this morning,
and have not received a response as to what changes they would recommend to it.  Given the

**Page 7 of 8**

expedited nature of these proceedings, I thought it best to go ahead and submit Plaintiffs' proposed order without further delay.

We did have a conference call with defendants' counsel on discovery yesterday evening, both with respect to the terms of the proposed order and logistics.  The parties did **not** agree on language for the proposed order with respect to discovery, but we did make progress on logistics, and Fulton County is readying machines for inspection.

I note that Part B(2) of the attached, which address the discovery of the DRE machines, references the paragraphs of the complaint that allege specific instances of machine malfunctions, except for paragraphs 42 and 43, which concerned locations in DeKalb County.

Many thanks,

Bruce Brown

Attorney for Plaintiffs

<20190111 Plaintiffs' Proposed Order.docx>

<20180111 Lt Gov Bernhard Affidavit Final Signed.pdf>

<Smith v. DeKalb County_ 288 Ga. App. 574.pdf>
<Michael Barnes Affidavit re discovery protocol pdf.pdf>

**Page 8 of 8**

E

X

H

I

B

I

T

E

**Subject:** RE: Protective Order
**Date:** Sunday, January 13, 2019 at 9:37:08 PM Eastern Standard Time
**From:** Bruce Brown
**To:** Burwell, Kaye
**CC:** Bryan Tyson (bpt@sbllaw.net), josh.belinfante@robbinsfirm.com, Vincent Russo, Ringer, Cheryl, Lowman, David, Lindsey, Jr., Edward H. (edward.lindsey@dentons.com)

Kaye,

The need to copy the internal memory was explained in my June 10 email to you, which email was also attached to our June 11 brief.  The need to copy the internal memory also was explained in detail in Matt Berhard's affidavit, which also was attached to our June 11 brief.  Finally, there is no way to examine the DRE internal memory consistent with  Georgia State Election Board Rule 183-1-12-.02 (6) (d) (requiring the preservation of internal memory) without copying it first.

Thanks,
Bruce

**From:** Burwell, Kaye <Kaye.Burwell@fultoncountyga.gov>
**Sent:** Sunday, January 13, 2019 5:09 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>
**Cc:** Bryan Tyson (bpt@sbllaw.net) <bpt@sbllaw.net>; josh.belinfante@robbinsfirm.com; Vincent Russo <vrusso@robbinsfirm.com>; Ringer, Cheryl <Cheryl.Ringer@fultoncountyga.gov>; Lowman, David <David.Lowman@fultoncountyga.gov>; Lindsey, Jr., Edward H. (edward.lindsey@dentons.com) <edward.lindsey@dentons.com>
**Subject:** FW: Protective Order

This is the first I am hearing about copying the internal memory and having laptops available.  I will defer to the SOS on this issue.  The inspection will only proceed with Mr. Barnes present unless he has someone else that can attend during his absence.  I will review your proposed changes to the protective order and return to you shortly.  Thanks.

**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Sunday, January 13, 2019 4:52 PM
**To:** Burwell, Kaye
**Cc:** Bryan Tyson (bpt@sbllaw.net)
**Subject:** RE: Protective Order

Kaye:

First, the Plaintiffs' expert(s) will be at the English Street location at 9 am.  The inspection needs to go forward with or without the presence of a representative of non-party Secretary of State.  At this time, we do not object to his presence, but Plaintiffs' examination must proceed even if he has to leave for a bit because of another appointment.

Second, I wanted to review the protocol for the examination of the DRE's themselves (see January 10 email).  The first crucial step is to preserve the evidence and ensure that no further alteration to the internal memory of the DRE machines occurs to both obey the Court's order and to preserve the evidence for forensic examination.  Your staff making a County copy of the DRE internal memory before any examination of the DRE machines begins is therefore essential.  So that the inspection may proceed without having any impact

**Page 1 of 2**

on the existing DRE internal memory, as the Order requires, Plaintiffs' expert will observe the copying of the DRE internal memory onto a laptop that we assume will be provided by you (but we can bring our own, if you don't have one).  The laptop will need to have certain utilities required for the examination downloaded from the internet, or we can bring a preloaded jump drive and install the utilities that way, whichever is your preference.   You are likely to need multiple laptops so that our expert(s) can be simultaneously reviewing the internal memory on one while your staff is copying the next. We will be selecting the sequence of the machines examined, in the interest of time.   To avoid any further alteration of the DRE internal memory, we will not examine the DRE machines themselves until their memory has been copied and checked for completeness.

Third, as I mentioned yesterday (and in prior days), please email or Dropbox the GEMS reports; these are all public records and therefore not subject to the confidentiality order.  (See, for example, the GEMS reports that other counties have produced or that are available on public website).

Finally, we are fine with confidentiality agreement that you drafted, with one minor change.  The GEMS documents that you are currently producing are public records, not confidential material, so those should not be subject to the agreement.  If you would add some language indicating that they are not covered by the confidentiality agreement, we will sign.

Thanks,

Bruce


**From:** Burwell, Kaye <Kaye.Burwell@fultoncountyga.gov>
**Sent:** Sunday, January 13, 2019 2:40 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>
**Cc:** Bryan Tyson (bpt@sbllaw.net) <bpt@sbllaw.net>
**Subject:** Protective Order

Bruce, If you have no edits, please execute the protective order, have your experts execute the certification and bring the executed protective order with you in the morning -- if you intend to move forward with the inspection.  The Order provides that the commencement of the inspection is subject to the parties entering into a protective order.  Thanks.

*Kaye Woodard Burwell*
*Deputy County Attorney*
*Office of the Fulton County Attorney*
*141 Pryor Street*
*Suite 4038*
*Atlanta, Georgia 30303*
*(404) 612-0251*

E
X
H
I
B
I
T

F

**Subject:** Internal Memory Examination
**Date:**     Monday, January 14, 2019 at 5:46:12 PM Eastern Standard Time
**From:**     Bruce Brown
**To:**       Burwell, Kaye, Cheryl Ringer

Cheryl and Kaye,

In attempting to confer with experts to consider a possible solutions for the access to the memory of the TS machines set for inspection at Fulton this morning, I have the following questions—

1. Please let us know whether your staff has instructions on how to access the memories of both the TS and TSx machines, or whether our experts need to provide more detailed explanations, or supply the parts necessary to comply with the court's order for examination of the internal memory.

2. Are the original memory cards for the machines on the list for inspection today still preserved just as they were after the November election? Please confirm that they were not programmed for the December runoff.

3. Please let us know what Fulton County voting locations (early and election day) used TS machines and which used TSx machines in the November election. (It may be that staff can more easily retrieve TSx internal memory.)

Thanks,

Bruce Brown

.

**Page 1 of 1**

E
X
H
I
B
I
T

G

**Subject:** Re: Safe Copying of DRE Internal Memory
**Date:**    Tuesday, January 15, 2019 at 7:30:34 AM Eastern Standard Time
**From:**    Patrick Jaugstetter
**To:**      Bruce Brown
**CC:**      Ringer, Cheryl, VRusso@robbinsfirm.com, Alexander.Denton@robbinsfirm.com,
             richard.carothers@carmitch.com, bpt@sbllaw.net, Josh.Belinfante@robbinsfirm.com,
             edward.lindsey@dentons.com, Perkins-Hooker, Patrise, Burwell, Kaye, Lowman, David,
             rgermany@sos.ga.gov, Ruthie Snell

Bruce:

Henry County will be permitting inspection pursuant to the procedure referenced in Ryan Germany's e-mail last
night.

Patrick D. Jaugstetter



Power•Jaugstetter
P.O. Box 70
108 Atlanta Street
McDonough, GA 30253
770-957-1765 x 305 (office)
678-233-8383 (cell)
770-957-1065 (fax)

Sent from my iPhone

On Jan 14, 2019, at 10:03 PM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:

> Counsel,
>
> Matt Bernhard, Plaintiffs' expert, has documented his recommendations for safely
> copying DRE's internal memory for both the TS and TSx model units. Please see
> his email below. Feel free to contact me or Marilyn if you have questions on the
> procedure.
>
> Bruce
>
>
> **From:** Matt Bernhard <mdb92nc@gmail.com>
> **Date:** Monday, January 14, 2019 at 7:44 PM
> **To:** Marilyn Marks <marilyn@aspenoffice.com>
> **Cc:** Bruce Brown <bbrown@brucepbrownlaw.com>
> **Subject:** Re: CONFIDENTIAL Protocol for examining internal memory
>
> Bruce and Marilyn,
>
> Below is a summary of the materials and procedures needed to non-destructively examine the
> internal memory of both the TS and the TSx.

**Page 1 of 2**

## Materials

For the TS, the county will need an EEPROM chip with a program that will instruct the machine to copy its flash contents to a compact flash card (of the same kind used to program and store election data). I can provide the chips by tomorrow evening, if the defendants do not have ready access to them.

For the TSX, a JTAG adapter and a copy of OpenOCD will be needed. Again I can loan my equipment to them if helpful.

## Procedures

For the TS, after removing the case from the machine to get access to the motherboard, the county staff should remove the existing EEPROM a chip and replace it with the new chip. They should then set jumpers 2 and 8 to "on" and switch 2 to "1" and switch 4 to "2", all on the motherboard. Booting the machine in this configuration will run the program on the new EEPROM chip chip and copy data to an installed CF card. Once the copy is complete, they should reset the jumpers and switches and put the original EEPROM chip back. This process will in no way alter the machine, as once the new EEPROM chip does nothing to alter the state of the machine. Once the old EEPROM chip is reinstalled, the machine will function as if nothing happened. This process will likely take about an hour per machine after a few run throughs; I will test it tomorrow once I have materials and verify. Obviously I'm assuming the best conditions possible for this type of work, so the time may be highly variable depending on the condition of the equipment, as well as unexpected conditions that may crop up and how the county handles them.

For the TSx, the county should remove the case and attach a JTAG adapter. they should then power on the machine and issue a "reset and halt" command in OpenOCD through the connected laptop. Then they should run the "flash probe" command to ensure the state of the machines memory, and then the "read image" command to copy the internal memory to a file on the laptop. They should then unplug the JTAG adapter and reboot the machine. This process will likely take an hour and a half per machine, again assuming ideal conditions.

I would like to be present when copies are being made, to both verify the process as well as to assist in whatever way I can. There are several other experts we can call on for additional support via phone call or skype as necessary.

-Matt

E

X

H

I

B

I

T


H

**Germany, Ryan**

| | |
|---|---|
| **From:** | Germany, Ryan |
| **Sent:** | Monday, January 14, 2019 12:48 PM |
| **To:** | 'Patrick Jaugstetter'; 'rpowell@wilmotpowell.com' |
| **Cc:** | 'Josh Belinfante'; Vincent Russo; Rayburn, Kevin; Barnes, Michael |
| **Subject:** | discovery update |

Patrick and Ralph,

Wanted to give you guys an update on the inspection in Fulton this morning. The plaintiffs did not think that our protocol for how to examine the DRE internal memory was sufficient. They want to attach a computer directly to the motherboard of the DRE (the voting machine) and extract the memory using a special program. That is not something we can allow, and it is not something that we think the judge's order allows. (The order says the Plaintiffs may not copy, image, save, or retain the information from the DREs or upload or introduce any information).

Allowing a third-party device to connect directly to the motherboard would require us to take the machines out of service. It's something we have never done. The plaintiffs are supposedly going to go to the judge today to try to get her to order us to accept their protocol. Will keep you posted.

Also, just a heads up that they had media present at Fulton County today. Fulton County did not allow the media person into the inspection.

Thanks,
Ryan

--
C. Ryan Germany
General Counsel
Assistant Commissioner of Securities & Charities
Office of Georgia Secretary of State Robyn A. Crittenden
Office: (404) 657-7778 | Cell: (678) 672-9230 | rgermany@sos.ga.gov

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

1

Fulton County Superior Court
***EFILED***LS
Date: 1/18/2019 5:09 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| Rhonda Martin, Smythe Duval, Jeanne Dufort | * | |
| | * | CIVIL ACTION |
| Plaintiffs, | * | FILE NO.: 2018CV313418 |
| vs. | * | |
| | * | |
| Geoff Duncan. | * | |
| Fulton County Board of Registration and Elections, | * | |
| | * | |
| Gwinnett county Board of Registration And Elections | * | |
| | * | |
| Defendants. | * | |
| | * | |

## ORDER DISMISSING PLAINTIFFS' PETITION

The above and forgoing case having come on regularly to be heard

with all parties represented by counsel and,

Plaintiffs having made Motions for Jury trial, see Fuller v. Thomas

284 Ga. 397 (2008), Continuance and to Compel Discovery and the

Court having denied the same, and,

Plaintiffs having presented evidence and rested their case, and,

The Defendants having made a Motion for Involuntary Dismissal

Pursuant to O.C.G.A. § 9-11-41(b),

It is hereby ordered as follows:

1

1.

O.C.G.A. § 9-11-41(b) states in material part –

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the fasts and the law the plaintiff has shown no right to relief."

2.

In this case the Plaintiffs contest the result of the election for Lieutenant Governor held November 6th, 2018, and request that the result be set aside and that a new election be held on paper ballots.

3.

The Plaintiffs have not shown any evidence that illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result in the race for Lieutenant Governor held on November 6, 2018. O.C.G.A. §21-2-522.

4.

The Plaintiffs did presented evidence that the DRE system of voting used in Georgia has many problems and irregularities and is regarded as an outdated and inaccurate system of conducting a vote.

2

5.

In the particular race for Lieutenant Governor at issue here, the Plaintiffs

showed that there were five instances of problems with voting at two

precincts, that, of the 8 voting machines at the Winterville precinct in Clark

County Georgia, 7 went decidedly Democratic and 1 went decidedly

Republican and that there was a 4.5% undervote in the Lieutenant Governor

race. There was no evidence of misconduct, fraud, or irregularity by any

primary or election official or officials.

6.

"It is presumed that election results are valid, and the party contesting the

Election has the burden of showing an irregularity or illegality sufficient to

change place in doubt the result of the election" Hunt v. Crawford 270 GA.7

(1998). That case goes on to say "the setting aside of an election in which

the people have chosen their representative is a drastic remedy that should

not be undertaken lightly, but, instead should be reserved for cases in which

the person challenging the election has clearly established a violation of

election procedures and has demonstrated that the violation has placed the

result of the election in doubt."

7.

In the Lieutenant Governor's race Geoff Duncan received 1,951,738 votes

3

and Sarah Amico received 1,828,566 votes, a difference of 123,172 votes.

In the Lieutenant Governor's race there were 4.5% fewer voters than in the

Governor's race. The numbers also show that Sarah Amico, a Democrat,

also received more votes than those cast for the Democrat in the State-wide

races for Commissioner of Agriculture, Commissioner of Insurance, State

School Superintendent, and Commissioner of Labor. These number do not

show any irregularity or illegality in themselves.

8.

"Where the focus is on improperly cast ballots or irregularities in the

conduct of the election, the number of illegal of irregular ballots necessary

to cast doubt on an election is derived by taking the difference between the

total votes cast in the election and the race at issue, and adding the margin of

victory in the race at issue" Fuller v. Thomas 284 Ga. 397 (2008)

9.

In the present case the most votes that the Plaintiff has shown that could be

4

in any way arguably considered irregular or illegal is approximately 32,000

votes. That assumes that all such votes would have been cast for Sarah

Amico.

10.

Therefore, Plaintiffs Petition is hereby dismissed.

**SO ORDERED** this 18th day of January, **2019**

**JUDGE ADELE P. GRUBBS**
Senior Judge, State of Georgia

**CERTIFICATE OF SERVICE is attached.**

 Gmail

Adele Grubbs <adele.grubbs@gmail.com>

---

**Plaintiffs' Demand for Jury Trial: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418**

---

**Adele Grubbs** <adele.grubbs@gmail.com>                                Fri, Jan 18, 2019 at 3:12 PM
To: Bruce Brown <bbrown@brucepbrownlaw.com>
Cc: "Burwell, Kaye" <Kaye.Burwell@fultoncountyga.gov>, Alexander Denton
<Alexander.Denton@robbinsfirm.com>, Laila Tehrani <laila.tehrani@sbllaw.com>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com"
<sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "Lindsey, Jr.,
Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org"
<Thomas.Davis@cobbcounty.org>, Vincent Russo <VRusso@robbinsfirm.com>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, "Perkins-Hooker, Patrise" <Patrise.Perkins-
Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, "Ringer, Cheryl"
<Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com"
<csims@7jad.com>,."chall@lmjc.net" <chall@lmjc.net>, Brian Lake <Brian.Lake@robbinsfirm.com>,
"ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, Bryan Tyson <bpt@sbllaw.net>

Attached please find the Order dismissing Plaintiff's Petition.

Adele Grubbs
Senior Judge
[Quoted text hidden]

---

📄 **20190118151003.pdf**
88K

Fulton County Superior Court
***EFILED***DG
Date: 1/23/2019 12:28 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

                Plaintiffs,

                v.

ROBYN A. CRITTENDEN, Secretary
of State of Georgia, et al.,

                Defendants.

Civil Action No. 2018CV313418

## PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD

Plaintiffs move to supplement the record in this case with email communications between the Court and counsel, true and correct copies of which are attached hereto as Exhibit 1. A proposed order is attached hereto as Exhibit 2.

Respectfully submitted this 23rd day of January, 2019.

                */s/ Bruce P. Brown*
                Bruce P. Brown
                Georgia Bar No. 064460
                bbrown@brucepbrownlaw.com
                Bruce P. Brown Law LLC
                1123 Zonolite Rd. NE, Suite 6
                Atlanta, Georgia 30306
                (404) 881-0700

                *Attorney for Plaintiffs*

1

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to all counsel of record.

This 23rd day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

E
X
H
I
B
I
T

1

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

          **Plaintiffs,**

        v.

ROBYN A. CRITTENDEN,
Secretary of State of Georgia,
et al.,

          **Defendants.**

CIVIL ACTION FILE
NO. 2018CV31348

## AFFIDAVIT OF BRUCE P. BROWN

Appeared before me, the undersigned officer duly authorized to administered oaths, Bruce P. Brown who, after being sworn, states as follows:

1.     I represent the Plaintiffs in this action.  I am qualified to give this affidavit, which is based on my personal knowledge.

2.     Attached hereto are true and correct copies of emails between the Superior Court and counsel in this case:

        A. Email from Judge Grubbs to Counsel dated December 7, 2018;

B. Email from Bruce P. Brown to Judge Grubbs dated January 10, 2019, with attached Plaintiffs' Proposed Order;

C. Email from Bruce P. Brown to Judge Grubbs dated January 11, 2019 (12:04 p.m.), with attached Plaintiffs' Brief in Support of Proposed Order Regarding Inspection of Certain Equipment dated January 11, 2019;

D. Email from Bruce P. Brown to Judge Grubbs dated January 11, 2019 (12:45 p.m.);

E. Email from Judge Grubbs to Counsel dated January 11, 2019 (1:29 p.m.);

F. Email from Bruce P. Brown to Judge Grubbs dated January 14, 2019 (11:05 p.m.);

G. Email from Bruce P. Brown to Judge Grubbs dated January 15, 2019 (6:18 p.m.);

H. Email from Bruce P. Brown to Judge Grubbs dated January 15, 2019 (5:23 p.m.);

I. Email from Bruce P. Brown to Judge Grubbs dated January 16, 2019 (2:06 p.m.);

J. Email from Bruce P. Brown to Judge Grubbs dated January 11, 2019 (9:30 a.m.).

Further Affiant sayeth not.

Bruce P. Brown

Sworn to and subscribed before me:
On this 2 3 day of January , 2019

Notary Public, State of Georgia
My Commission Expires:   My Commission Expires      SEAL
February 16, 2020

E
X
H
I
B
I
T

A

| | |
|---|---|
| **Subject:** | Re: Proposed Preservation Order; Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 [IWOV-imanage.FID780744] |
| **Date:** | Friday, December 7, 2018 at 11:31:36 AM Eastern Standard Time |
| **From:** | Adele Grubbs |
| **To:** | DWare@hallboothsmith.com |
| **CC:** | Bruce Brown, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, edward.lindsey@dentons.com, vernstes@dekalbcountyga.gov, Patrise.Perkins-Hooker@fultoncountyga.gov, Cheryl.Ringer@fultoncountyga.gov, bdbryan@dekalbcountyga.gov, chall@lmjc.net, Alexander.Denton@robbinsfirm.com, Josh.Belinfante@robbinsfirm.com, Brian.Lake@robbinsfirm.com, ccorreia@law.ga.gov, RBritt@hallboothsmith.com, PCunningham@hallboothsmith.com, lkjohnson@dekalbcountyga.gov, vrusso@robbinsfirm.com |

**Attachments:** image001.jpg, image001.jpg

Counsel,

The Plaintiff's Motion for expedited discovery will be heard on January 9th 2019 along with all the other Motions. If it is deemed necessary to move the trial date at that time the Court will consider it.

Adele Grubbs
Senior Judge

On Fri, Dec 7, 2018 at 10:40 AM David Ware <DWare@hallboothsmith.com> wrote:

> Judge Grubbs: good morning Your Honor.
>
>
> On behalf of the DeKalb County Board of Registration and Elections (DBRE), we just wanted to make the court aware that once served DBRE intends to move to dismiss the complaint as to it. Moreover, DeKalb County opposes the proffered "Emergency" Request for Inspection and believe it to lack merit. Once served, DBRE plans to file a response in opposition.
>
>
> Thank you for your time and consideration.
>
>
>
> R. David Ware
>
> Partner
>
> Hall Booth Smith, P.C., Attorneys at Law

**Page 1 of 6**

191 Peachtree Street

Suite 2900

Atlanta, GA. 30303

dware@hallboothsmith.com

(404) 586-6619

(404) 402-0204 (cell)

www.hallboothsmith.com

Notice of Confidentiality:

This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication, and any attachments thereto, contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, viewing, copying, distribution or use of any of the information contained in or attached to this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.

**From:** Vincent Russo <vrusso@robbinsfirm.com>
**Sent:** Friday, December 07, 2018 8:34 AM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Bruce Brown <bbrown@brucebrownlaw.com>; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; David Ware <DWare@hallboothsmith.com>; vernstes@dekalbcountyga.gov; Patrise.Perkins-Hooker@fultoncountyga.gov; Cheryl.Ringer@fultoncountyga.gov; bdbryan@dekalbcountyga.gov; chall@lmjc.net; Alexander Denton <Alexander.Denton@robbinsfirm.com>; Josh Belinfante <Josh.Belinfante@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; Russell Britt <RBritt@hallboothsmith.com>; Pearson Cunningham <PCunningham@hallboothsmith.com>; Laura K. Johnson <lkjohnson@dekalbcountyga.gov>
**Subject:** Re: Proposed Preservation Order; Coalition for Good Governance, et al. v. Crittenden, et al. – Civil Action No. 2018CV313418 [IWOV-imanage.FID780744]

Judge Grubbs:

If Plaintiffs' counsel would like to argue the discovery and preservation issues, we can be available today for a hearing. Fundamental problems with Plaintiffs' preservation and purported emergency discovery request were noted at the hearing. The runoff election has already occurred and special elections are forthcoming. More importantly, Defendant Crittenden has a pending Motion to Dismiss, which speaks to several threshold issues warranting dismissal of Plaintiffs' specious election contest. To date, Plaintiffs have not filed a response to our

**Page 2 of 6**

motion, and instead continue requesting unnecessary discovery.

Defendants' Proposed Preservation Order makes clear that evidence relevant to the claims should be preserved, but it also takes a reasonable and practical approach to the preservation process.  Please let us know how you would like us to proceed.

Kind regards,

Vincent Russo

Sent from my iPhone

On Dec 7, 2018, at 7:56 AM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:

Judge Grubbs,

Further to the issue of the proposed preservation orders, I have attached a document that compares Plaintiffs' Proposed Preservation Order and Defendants' Proposed Preservation Order.  I note several things:

1.  The parties agree on the description of the electronic and other evidence that is to be covered in the indented paragraphs 1, 2 and  3.

2.  The long paragraphs added by the Defendants beneath the indented paragraphs concern the issue that I mentioned at the hearing Wednesday about how the continued use of the machines in election after election wipes the memory clean, according to our experts, and thus destroys potential evidence explaining why these machines have been malfunctioning.  We therefore strongly object to an order that would give the State carte blanche to continue the destruction this evidence by overwriting the memory and changing the programming.  Particularly inappropriate, Plaintiffs' believe, is the sentence added by Defendants stating: "Toward that end, this Order does not prohibit or otherwise limit the Defendants' use of any voting or election system equipment referenced herein, or alter any obligations of Defendants under Georgia law with respect to storage or preservation of election materials."  This sentence renders the entire Preservation Order ineffective, and would allow the State to erase the evidence explaining the causes and extent of the systems' malfunctions.

   In Plaintiffs' view, the Court's instructions Wednesday at the hearing reasonably accommodates any legitimate concern that Defendants may have.  The Court twice instructed the undersigned to draft the Order to say: "defendants shall preserve evidence as far as possible."  That is what Plaintiffs' Proposed

Order provides.

3. However the preservation issue is resolved, Plaintiffs agree that it is imperative that discovery proceed immediately so that this evidence can be fully examined before there is any need (or temptation) to use this equipment (and wipe or overwrite the evidence) in upcoming elections.

Plaintiffs therefore request that the Court consider Plaintiffs' Emergency Motion for Inspection, filed on Thursday, November 29 (copy attached, with proposed order attached to it).   Since defendants are not using the equipment now for elections, this is an ideal time to perform the inspections necessary to determine the causes of the system's malfunctioning.  A proper inspection of the equipment may take some time, and the trial in January will be upon us quickly.   Such an inspection will also be in the public interest and can be undertaken without prejudice to Defendants' opportunity to file and argue motions closer to trial.

Respectfully submitted,

Bruce Brown

Attorney for Plaintiffs

---

**From:** Vincent Russo <vrusso@robbinsfirm.com>
**Date:** Thursday, December 6, 2018 at 7:21 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** "bbrown@brucebrownlaw.com" <bbrown@brucebrownlaw.com>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>,
"bpt@sbllaw.net" <bpt@sbllaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>,
David Ware <DWare@hallboothsmith.com>, "vernstes@dekalbcountyga.gov"
<vernstes@dekalbcountyga.gov>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>,
"bdbryan@dekalbcountyga.gov" <bdbryan@dekalbcountyga.gov>, "chall@lmjc.net"
<chall@lmjc.net>, Alexander Denton <Alexander.Denton@robbinsfirm.com>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>,

"ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, Russell Britt <RBritt@hallboothsmith.com>, Pearson
Cunningham <PCunningham@hallboothsmith.com>, "Laura K. Johnson"
<lkjohnson@dekalbcountyga.gov>
**Subject:** RE: Proposed Preservation Order; Coalition for Good Governance, et al. v. Crittenden, et al. -
Civil Action No. 2018CV313418 [IWOV-imanage.FID780744]

Judge Grubbs:

The attached Proposed Preservation Order is submitted on behalf of all Defendants, with the express permission of
their counsel. Despite a good faith effort, the parties were unable to reach an agreement on reasonable terms for
a joint Proposed Preservation Order. Accordingly, Defendants respectfully submit the attached Proposed
Preservation Order for your consideration.

Kind regards,

Vincent Russo



Vincent R. Russo

Member
**Robbins ♦ Ross ♦ Alloy ♦ Belinfante ♦ Littlefield LLC**
500 14th Street, NW
Atlanta, GA 30318
404.856.3260 (Direct)
678.701.9381 (Main)
404.856.3250 (Fax)

www.robbinsfirm.com

—   ———————  ——  —— ———————  ——— —  ————

**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Thursday, December 06, 2018 6:06 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>·
**Cc:** Vincent Russo <vrusso@robbinsfirm.com>; richard.carothers@carmitch.com; sue@carmitch.com;
brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; David
Ware <DWare@hallboothsmith.com>; vernstes@dekalbcountyga.gov; Patrise.Perkins-

**Page 5 of 6**

Hooker@fultoncountyga.gov; Cheryl.Ringer@fultoncountyga.gov; bdbryan@dekalbcountyga.gov; chall@lmjc.net;
Alexander Denton <Alexander.Denton@robbinsfirm.com>; Josh Belinfante <Josh.Belinfante@robbinsfirm.com>;
Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; Russell Britt <RBritt@hallboothsmith.com>;
Pearson Cunningham <PCunningham@hallboothsmith.com>; Laura K. Johnson <lkjohnson@dekalbcountyga.gov>
**Subject:** Proposed Preservation Order; Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418 [IWOV-imanage.FID780744]

Judge Grubbs:

I have attached Plaintiffs' Proposed Preservation Order.  Defendants reviewed a prior draft and suggested
significant changes; Plaintiffs agreed to some edits, but the parties were unfortunately unable to reach an
agreement on the terms.  Defendants will accordingly be submitting their own proposal to your Honor.

Respectfully submitted,

Bruce Brown

Attorney for Plaintiffs

<Comparison of Proposed Orders.docx>

<20181129 LtGov Final Stamped Rule 34 Motion with Exhibits (4).pdf>

**Page 6 of 6**

.

E
X
H
I
B
I
T

B

| | |
|---|---|
| **Subject:** | Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| **Date:** | Thursday, January 10, 2019 at 12:12:36 PM Eastern Standard Time |
| **From:** | Bruce Brown |
| **To:** | Adele Grubbs |
| **CC:** | laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Josh Belinfante, Vincent Russo, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov, Alexander Denton |

**Attachments:** 20190110 Lt Gov Proposed Order On Motions.docx

Dear Judge Grubbs:

I have attached Plaintiffs' proposed order on the motions heard by Your Honor yesterday. I circulated a draft of this proposed order yesterday afternoon to defendants' counsel, and again this morning, and have not received a response as to what changes they would recommend to it. Given the expedited nature of these proceedings, I thought it best to go ahead and submit Plaintiffs' proposed order without further delay.

We did have a conference call with defendants' counsel on discovery yesterday evening, both with respect to the terms of the proposed order and logistics. The parties did **not** agree on language for the proposed order with respect to discovery, but we did make progress on logistics, and Fulton County is readying machines for inspection.

I note that Part B(2) of the attached, which address the discovery of the DRE machines, references the paragraphs of the complaint that allege specific instances of machine malfunctions, except for paragraphs 42 and 43, which concerned locations in DeKalb County.

Many thanks,

Bruce Brown

Attorney for Plaintiffs

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,** | |
| **Plaintiffs,** | **CIVIL ACTION FILE** |
| v. | **NO. 2018CV313418** |
| **ROBYN A. CRITTENDEN,** Secretary of State of Georgia, et al., | |
| **Defendants.** | |

## [PROPOSED] ORDER ON PENDING MOTIONS

This case came before the Court for a non-evidentiary hearing on the following pending motions: (a) the motions to dismiss filed by each of the defendants: Defendant Robyn A Crittenden ("the Secretary), Defendant Geoff Duncan ("Duncan"), Defendant Fulton County Board of Registration and Elections ("Fulton County Board"), and Defendant Gwinnett County Board of Registration and Elections ("the Gwinnett Board") (collectively "the Motions to Dismiss"); (b) Plaintiffs' Emergency Motion for Inspection of Electronic Election Equipment and Production of Documents ("Plaintiffs' Motion for Inspection"); and (c) Plaintiffs'

Motion for Perservation of Specific Electronic Election Records in Gordon and

Murray Counties.   After considering the briefs and responses, and arguments of

consel, the Court rules as follows:

### A.   Motions to Dismiss

The Motions to Dismiss raised several distinct issues, ruled upon below:

#### 1.   *Secretary as Proper Defendant*

The Secretary moved to dismiss the Secretary as a party to Count I of the

Petition (the Election Contest Claim), arguing that it is not a proper "Defendant" as

that term is used in the Election Statute, O.C.G.A. § 21-2-520(2).  The Court

agrees.  O.C.G.A. § 21-2-520(2) defines Defendant as "(C) the election

superintendent or superintendents who conducted the contested primary or

election."  O.C.G.A. § 21-2-2(35) in term defines "superintendent" as follows:

> Either the judge of the probate court of a county or the county board
> of elections, the county board of elections and registration, the joint
> city-county board of election, or the joint city-county board of
> elections and registrations, if a county has such.

The Secretary does not fall within any of the definitions of "superintendent."

Plaintiffs argue, among other things, that the definition of "election

superintendent" found in Chapter 4 of Title 21 should control.  O.C.G.A. § 21-4-

3(A) defines "election superintendent": "In the case of any elected state officers,

the Secretary of State."  This definition, however, is found in Chapter 4, not

Page 2

Chapter 2, and this election contest concerns Chapter 2.  The Court disagrees, and holds that the definition of "superintendent" in the election contest chapter controls and, since the Secretary does not fall within that definition, the Secretary is not a proper party defendant to Count I and should be dismissed from that Count.

### 2.      *Whether 159 Counties are Necessary Parties*

Fulton County Board and Gwinnett County Board concede that they are proper defendants, but argue that the other 157 counties must be joined in the state-wide election contest.  In support of this argument, Gwinnett County Board cites O.C.G.A. § 21-2-520(2)(C).  That section, however, would allow other counties to be joined to this action, but does not require such joinder.  In addition, O.C.G.A. § 21-2-525(b) gives the Court "plenary power, throughout the area in which the contested primary or election was conducted, to make, issue, and enforce all necessary orders, rules, processes, and decrees for a full and proper understanding and final determination and enforcement of the decision of every such case."  The joinder of the other 157 counties, therefore, is not necessary and the motions to this extent are denied.

### 3.      *Service of Process*

In their briefs, Defendants argued that the Petition should be dismissed because service had not been perfected on the Defendants.  Defendants now

concede that they have been properly served, and the motions to this extent are denied.

### 4.    *Coalition as Party to Count I*

Defendants contend that Plaintiff Coalition for Good Governance is not a proper plaintiff to Count I, the election contest. Coalition does not disagree and has stipulated that it is not a party to Count I. Defendants' motion to this extent is granted as unopposed.

### 5.    *Failure to State a Claim*

Defendants argue that the Petition fails to state a claim upon which relief may be granted. The Court disagrees. Defendants have failed to carry their burden of showing that Plaintiffs "would not be entitled to relief under any state of provable facts asserted" in the complaint or that Plaintiffs "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Scouten v. Amerisave Mortg. Corp.,* 283 Ga. 72, 73 (2008) (citations omitted). The motions for failure to state a claim, therefore, are denied.

### B.    **Plaintiffs' Motion for Inspection**

Plaintiffs' Motion for Inspection is denied. The Court, however, will allow the following inspections and discovery:

Page 4

1. Plaintiffs are entitled to inspect the "GEMS" servers and GEMS databases or complete electronic copies thereof for the November 2018 elections that are maintained by the Gwinnett County Board and the Fulton County Board.

2. Plaintiffs are entitled to conduct a forensic inspection of the DRE machines, including the internal memories of those machines, that were used in the voting locations identified by Plaintiffs in the Petition, paragraphs 40 and 41, and paragraphs 44 – 48. Plaintiffs are ordered to conduct the inspection and copying so as to not in any way damage the DRE machines.

3. Defendants and Plaintiff shall enter into an appropriate protective order preserving the confidentiality of confidential information, if any, obtained in this discovery.

**C.     Plaintiffs' Motion Relating to Gordon and Murray Counties**

This  motion, which concerned the January 8, 2019 elections in Gordon and Murray, is denied as moot.

SO ORDERED this ___ day of January, 2018.

_____
Honorable Adele P. Grubbs
Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
            Bruce P. Brown
            Counsel for Plaintiffs

Page 5

EXHIBIT C

| Subject: | Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
|---|---|
| Date: | Friday, January 11, 2019 at 12:04:59 PM Eastern Standard Time |
| From: | Bruce Brown |
| To: | Adele Grubbs |
| CC: | Vincent Russo, Alexander Denton, laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Josh Belinfante, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov |

**Attachments:** 20190111 Lt Gov Plaintiffs' Brief ISO propsed order.pdf, image001.jpg, image002.jpg

Judge,
Please see the attached brief.
Many thanks,
Bruce Brown

**From:** Vincent Russo <vrusso@robbinsfirm.com>
**Date:** Friday, January 11, 2019 at 12:01 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>, "bbrown@brucepbrownlaw.com"
<bbrown@brucepbrownlaw.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net"
<laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>,
"sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com"
<brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>,
"Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-
Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>,
"DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer
<Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7Jad.com>,
"csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Brian Lake
<Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>,
"kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action
No. 2018CV313418

Judge Grubbs:

The inspection that Plaintiffs' are now seeking would not only damage the voting machines, but it would expose highly confidential information about Georgia's voting system that would leave it vulnerable to attack. The Georgia Court of Appeals has already stated that the GEMS database should not be released due to the sensitivity of the information on it. Smith v. DeKalb County, 288 Ga. App. 574 (2007) (copy attached). Conversely, the scope of inspection proposed by Defendants would give Plaintiffs access to information sufficient to determine whether the irregularities alleged in the Petition existed while continuing to protect Georgia's voting system. Attached is an unsigned affidavit of Michael Barnes, Director of the Center for Election Systems in the Secretary of State's Office, further discussing these issues.

**Page 1 of 7**

In regard to the GEMS inspection, Mr. Barnes states that the GEMS reports that Defendants have proposed to generate from GEMS show how races in the database are related to political districts within the county and how those races are then related to the ballots generated. Accordingly, if there was a programming failure (i.e., failure to relate a race to a given district which results in it not being present on the ballot), it would appear in those reports according to Mr. Barnes.

Additionally, the ballot images report generated from GEMS shows which voter selections were collected by race within each ballot recorded by the DRE. The image report contains all races and associated candidates contained on the ballot, the candidate who was selected, and which candidates were not selected. Defendants' proposed reports from GEMS also show which individual races were present on each ballot style configured by GEMS, which also goes to the alleged irregularity regarding missing races and candidates. Finally, the Secretary of State's Office can perform a HASH verification of the GEMS program installed on the county computer, which would confirm whether the program has been altered. As indicated in Mr. Barnes' affidavit, if there were irregularities or failures with respect to programming, vote recordation, the appearance of candidates on a ballot in a given election, they would appear in these reports.

Next, in regard to the DRE machines, the inspection that we have proposed relates directly to the DRE irregularities alleged by Plaintiffs. Plaintiffs have alleged that candidate names were missing from ballots on DRE machines (Pet. at ¶ 41), issues with calibration of DRE touchscreens (Pet. at ¶ 41, 47), cancelled ballots on machines (Pet. at ¶ 44), and discrepancies in the vote counts on precinct poll tapes (Pet. at ¶ 46). As indicated in the attached affidavit of Michael Barnes, inspecting the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition would allow Plaintiffs to discover whether any of these alleged irregularities actually existed, to the extent there were any.

In contrast, the DRE inspection proposed by Plaintiffs would require removing the memory chip from the motherboard on each machine, which damages the machines and prevents elections officials from using them ever again. Like the GEMS access proposed by Plaintiffs, Mr. Barnes has also stated that Defendants' proposed DRE inspection would expose sensitive information that would give a roadmap for hacking the system. The Ballot Station program on the DRE only opens files that reside in a specifically named folder and then only opens files in that folder that have specific file extensions. According to Mr. Barnes' affidavit, the data is copied directly from a memory card, someone would know how files are organized and named on the memory card. If a computer researcher wanted to "hack" the system, that person would want to know what file folders and file extensions Ballot Station recognizes.

Defendants' proposed inspection for the DRE machines includes the post-election memory cards. According to Mr. Barnes, if one has the memory card used in an Election, one has a copy of what is on the machine's internal Memory already

Defendants' have proposed a scope of discovery that is in line with our understanding of your intent at the hearing on Wednesday. Plaintiffs proposed inspection would not only damage voting machines, but it would also provide a roadmap or schematic of the system that someone would need in order to create virus or show how one could be created. Plaintiffs' proposed Order would sanction a fishing expedition that is beyond the factual allegations in the Petition, so we urge the Court to adopt Defendants' Proposed Order.

Kind regards,

Vincent Russo

Vincent R. Russo |404.856.3260 | ROBBINS

**From:** Adele Grubbs [mailto:adele.grubbs@gmail.com]
**Sent:** Friday, January 11, 2019 7:09 AM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>; laila.tehrani@sbllaw.net;
richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Josh
Belinfante <Josh.Belinfante@robbinsfirm.com>; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>;
Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com;
Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo
<vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov;
kaye.burwell@fultoncountyga.gov
**Subject:** Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Please have ALL arguments about this order to me by Noon today so I can enter the order today.
Thank you.

Adele Grubbs
Senior Judge

Sent from my iPhone

On Jan 11, 2019, at 12:48 AM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:

> Judge Grubbs:
>
> Further to my email below on Defendants' proposed order (attached to Mr.
> Denton's 4:59 PM email), Plaintiffs have no objections to the changes
> Defendants propose to Parts A, but would urge the Court to adopt Plaintiffs'
> Part B, for the reasons set forth in the Affidavit of Plaintiffs' expert Matt
> Bernhard, attached.  I have attached to this email a Proposed Order that
> does just this: takes the Defendants' version of Part A, but Plaintiffs' prior
> version of Part B, the discovery provisions for the specific records and
> equipment included in the Court's ruling at the January 9, 2017 hearing.
> Plaintiffs have included in Part B the sentence proposed by Defendants --
> "Destructive testing shall not be permitted." (I note that no notary public
> was available tonight to notarize Mr. Bernhard's affidavit (he is out-of-state),
> but we will submit a notarized affidavit when it becomes available).
>
> Mr. Bernhard explains in his affidavit that the inspection proposed by
> Defendants would be virtually useless, and how that the inspection that

**Page 3 of 7**

Plaintiffs proposes is the only way to discover system malfunctions and mis-programming.

Mr. Bernhard also references a Georgia law relating to the internal memory that is right on point.   Georgia State Election Board Rule 183-1-12-.02 (6)(d) states:

> The election results, ballot styles, ballot images, and other information for each election **stored in the internal memory storage of each DRE unit** shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election.

This Rule requires the counties to preserve the internal memory of the DRE machines for the specific purposes of having that memory available for inspection and review in an election contest.  Fulton County's position that this information should not be made available in this election contest, therefore, is inconsistent with this rule and, for the additional reasons explained in Mr. Bernhard's affidavit, completely without merit.

As to the GEMS database, Mr. Bernhard explains that this can easily be produced on a CD to Plaintiffs' experts; it is not proprietary information and is crucially necessary for the examination.

Many thanks,

Bruce Brown

---

**From:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>
**Date:** Thursday, January 10, 2019 at 6:07 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>,

**Page 4 of 7**

"JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com" <csims@7Jad.com>,
"chall@lmjc.net" <chall@lmjc.net>, Vincent Russo <vrusso@robbinsfirm.com>, Brian Lake
<Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>,
"kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Dear Judge Grubbs:

With respect to Defendants' proposed order, relating specifically to  discovery and inspection,
Plaintiffs will be submitting later this evening a statement from one of our experts (a computer
scientist specializing in voting systems) which will explain how the limitations that defendants
would impose will render the inspection useless for the purposes of detecting the causes of any
malfunction, or misprogramming, either in the GEMS database or DRE machines, and is not a
forensic examination that may detect programming errors (which is what we understand the
Court instructed).  We urge the Court to withhold considering the proposed order until the
Court has the opportunity to consider that submission.

Respectfully,

Bruce Brown

---

**From:** Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Date:** Thursday, January 10, 2019 at 4:59 PM
**To:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>,
"bbrown@brucebrownlaw.com" <bbrown@brucebrownlaw.com>, Adele Grubbs
<adele.grubbs@gmail.com>
**Cc:** "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>,
"sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com"
<brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, "Lindsey, Jr.,
Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org"
<Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov"
<Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com"
<DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>,
"JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com" <csims@7Jad.com>,
"chall@lmjc.net" <chall@lmjc.net>, Vincent Russo <vrusso@robbinsfirm.com>, Brian Lake
<Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>,
"kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Judge Grubbs,

The Defendants have collaborated to prepare the attached proposed order for your
consideration. It tracks the one Plaintiffs' counsel provided earlier today except as to those
specific portions where they are not in agreement.

Thank you.

**Alexander Denton** |*404.856.3276* | R̲O̲B̲B̲I̲N̲S̲

**From:** Josh Belinfante
**Sent:** Thursday, January 10, 2019 12:59 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>; Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com;
brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H.
<edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-
Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov;
JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo
<vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov;
kaye.burwell@fultoncountyga.gov; Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Judge Grubbs:

Good afternoon. We have substantial agreement with portions of the proposed order but are
drafting an alternative for your consideration. We are working to submit it as soon as possible
today.

Thank you and best regards,
JB

―――――――― ―― ――― ―――――――― ―――――――― ―― ――― ――――――― ―――

**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Thursday, January 10, 2019 12:13 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com;
brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H.
<edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-
Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov;
JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>; Vincent Russo <vrusso@robbinsfirm.com>; Brian Lake
<Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov;
Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Dear Judge Grubbs:
I have attached Plaintiffs' proposed order on the motions heard by Your Honor yesterday. I
circulated a draft of this proposed order yesterday afternoon to defendants' counsel, and again
this morning, and have not received a response as to what changes they would recommend to
it. Given the expedited nature of these proceedings, I thought it best to go ahead and submit
Plaintiffs' proposed order without further delay.
We did have a conference call with defendants' counsel on discovery yesterday evening, both
with respect to the terms of the proposed order and logistics. The parties did **not** agree on
language for the proposed order with respect to discovery, but we did make progress on

Page 6 of 7

logistics, and Fulton County is readying machines for inspection.
I note that Part B(2) of the attached, which address the discovery of the DRE machines, references the paragraphs of the complaint that allege specific instances of machine malfunctions, except for paragraphs 42 and 43, which concerned locations in DeKalb County.
Many thanks,
Bruce Brown
Attorney for Plaintiffs


<20190111 Plaintiffs' Proposed Order.docx>
<20180111 Lt Gov Bernhard Affidavit Final Signed.pdf>

.

.

.

**Page 7 of 7**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, RHONDA J.
MARTIN, SMYTHE DUVAL, AND
JEANNE DUFORT,

             Plaintiffs,

             v.

ROBYN A. CRITTENDEN, Secretary
of State of Georgia, et al.,

             Defendants.

Civil Action No. 2018CV313418

## PLAINTIFFS' BRIEF IN SUPPORT OF PROPOSED ORDER REGARDING INSPECTION OF CERTAIN EQUIPMENT

This brief addresses the two key differences between the parties' proposed orders on inspection and discovery of electronic election equipment: the GEMS database and the DRE machines.

### A.       GEMS Database

Defendants contend that discovery of the GEMS database should be limited to the output of the databases that is publicly available under the Open Records Act. As explained by Plaintiffs' expert Matt Bernhard in his affidavit, this information is virtually useless in determining the causes, quantification, and impact of programming errors or other machine malfunctions.

Plaintiffs' proposed order, on the other hand, would simply require Fulton and Gwinnett Counties to provide the GEMS database, an unencrypted and non-

confidential electronic database that can be reviewed efficiently when an expert is provided with an electronic copy. Such copies can be created in a matter of minutes by the Defendant counties. The GEMS database contains routine election data and no proprietary software or trade secrets. The county election data is simply loaded into a generic Microsoft Access database to create the GEMS database, which contains no proprietary source code or highly sensitive information. Unlike the print-outs that the Defendants would produce, the GEMS database may hold important clues as to where mis-programming, viruses, malfunctions or hacks occurred, and the number of machines and votes potentially affected.

The GEMS database would be the first, most efficient, and easiest place an expert would look for the cause and to quantify the impact of the irregularities. Both the County and the Secretary of State keep copies of the pre-election and post-election GEMS databases. Either office could produce and transmit an electronic copy within minutes, as Fulton County was asked to do on Wednesday, January 9.

As noted in the Affidavit of Matthew Bernhard, the GEMS database is merely a commercially available Microsoft database product (MSAccess), and can be read by anyone with a subscription to the Microsoft program. It contains election data, and no proprietary or sensitive information. All information in the database should be public record under Georgia's open record laws. There is no

reasonable way to compromise the security of future elections by reviewing the GEMS database files. To illustrate the non-proprietary nature of the information in a GEMS database, Plaintiffs will promptly provide the Court and parties with a link to the GEMS database from Marin County, California and illustrative screenshots of example contents, in a supplemental exhibit not available at the time of this filing.

Defendants may contend that the GEMS database contains proprietary, sensitive or confidential information. This is simply not the case, as illustrated by the decision of other states' to makes their GEMS' databases a public record. But even if there were some truth to Defendants' assertions, that concern is addressed by the execution of an appropriate confidentiality order. Defendants cannot avoid liability simply by claiming that evidence is confidential – not in an election contest and not in any other case.

**B.      DRE Machines**

There are two basic disagreements between the parties concerning the DRE machines: the scope of what may be examined on each DRE, and which DREs may be examined.

**1.      Scope of Investigation**

As to the scope, Defendants would limit the "inspection" to a running of the machines in "post-election" mode, again, a virtually useless exercise that is unlikely to yield any meaningful information. Plaintiffs instead propose what was

discussed at the January 9, 2019 hearing: a normal forensic examination that would include review of the internal memory of the machines.

As to the internal memory of the DRE machines, Georgia's Election Code Rule contemplates that the internal memory of the DRE machines would be an available record for review by parties in an election contest involving DRE machines. Georgia State Election Board Rule 183-1-12-.02 (6)(d) provides:

> *The election results, ballot styles, ballot images, and other information for each election* ***stored in the internal memory storage of each DRE unit*** *shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election.*

As Mr. Bernhard explains in his affidavit, inspection of the internal memory is vitally necessary to determine the causes and impact of any programming errors. The internal memory includes the programming and operating information, both of which must be reviewed for malfunction, viruses, tampering or mis-programming.

## 2.    DRE Machines to Inspect

Plaintiffs' proposed order is based on its understanding of what the Court ruled at the hearing.  At the hearing, the Court referenced the specific location that were identified in the Petition, noting specifically that the locations in DeKalb County were not included.  This is why Plaintiffs have referenced the non-DeKalb locations identified in the Petition, which are

paragraphs 40 and 41, and paragraphs 44 – 48, which include Henry County, Fulton County and Worthy County.

*Note on Current Status*

Just four business days before trial, neither the Defendants nor the Secretary of State (who owns the equipment and has copies of the GEMS databases) have not made any records or equipment available for inspection, and have not given Plaintiffs any indication of when this will be done. This is despite repeated requests from Plaintiffs for this information. Plaintiffs assume Defendants are acting in good faith, but nevertheless the effect of their actions is to "run out the clock" and prevent any meaningful investigation of the equipment prior to trial.

Plaintiffs have been diligent in prosecuting this case and seeking this discovery. Plaintiffs' motion for this inspection was filed six weeks ago, on November 29, 2018, and Plaintiffs have been doing everything possible to expedite this process, including obtaining relevant documents through a cumbersome and expensive process of public records requests to attempt to build a database of election records for quick reference when analyzing records that cannot be reasonably obtained except through the discovery process.

Plaintiffs recognize the impossibility of conducting examinations and preparing meaningful expert's reports for the Court prior to the scheduled trial on January 17, 2019. The election contest statute gives this Court plenary power over discovery and scheduling so that the Court can gain a "full and proper

understanding" of the case. O.C.G.A. § 21-2-525(b).   Although time is of the essence in an election contest case, the election contest statute makes it clear that sufficient time should be taken to fully explore the facts and issues involved.  The statute gives the Court the power to fix multiple hearing dates, to issue decrees, to issue subpoenas, and to compel and take testimony.  Election contest cases are unusual is some respects, of course, but the election contest statute repeatedly states that the case is supposed to proceed "according to the course of practice in other civil cases," and conducted "in like manner and to the same extent as in other civil cases litigated before such court," all for the purpose of allowing the Court to gain a "full and proper understanding" of the matter.  *Id.*

A proper forensic examination of this electronic equipment is absolutely essential so that the Court can gain an understanding of the causes and extent of malfunctions that plagued the November 2018 election.  This is not a fishing expedition: Plaintiffs have already obtained hard evidence and eye-witness accounts of machine malfunctions and irregularities from all corners of the state, as well as apparent tabulation errors, and have presented and opinions from two leading experts who have concluded that the only plausible explanation for the aberrant election result pattern is system malfunction.  Deliberate and exacting expert review of electronic records stored in the Defendant's equipment and files are essential for this Court's understanding of the impact of the malfunctions on the election results.

Plaintiffs respectfully request that the Court order Defendants to immediately produce the specific electronic records and machines as contemplated in the Court's order of January 9, 2019. Undertaking this effort immediately may provide an established path for additional discovery, including certain paper records, such as poll tapes, that will be required and promptly requested by Plaintiffs.

Respectfully submitted this 11th day of January, 2019.

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I have this day served a copy of the foregoing via the Court's e-filing system to the attorneys of record who have made appearances.

This 11th day of January, 2019.

/s/Bruce P. Brown
Bruce P. Brown

E
X
H
I
B
I
T

D

**Subject:** Appointment of Special Master and Continuance: Coalition for Good Governance, et al. v. Crittenden, et al. – Civil Action No. 2018CV313418

**Date:** Friday, January 11, 2019 at 12:45:36 PM Eastern Standard Time

**From:** Bruce Brown

**To:** Adele Grubbs

**CC:** Vincent Russo, Alexander Denton, laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Josh Belinfante, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov

Judge Grubbs:

In light of the technical issues involved in the discovery and inspection, and the time constraints involved, Plaintiffs anticipate filing this afternoon a Motion for the Appointment of a Special Master under Uniform Superior Court Rule 46(A)(1)(C) and for a continuance of the trial.  Before doing so, however, Plaintiffs will speak with counsel for Defendants to see if such a motion may be filed jointly, or whether Defendants would agree to all or part of such relief.

Many thanks,

Bruce Brown

**Page 1 of 1**

.

E
X
H
I
B
I
T

E

| | |
|---|---|
| **Subject:** | Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| **Date:** | Friday, January 11, 2019 at 1:29:39 PM Eastern Standard Time |
| **From:** | Adele Grubbs |
| **To:** | Vincent Russo |
| **CC:** | Bruce Brown, Alexander Denton, laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Josh Belinfante, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov |

**Attachments:** image003.jpg, 20190111132600.pdf

Counsel,

Attached is the Order entered in this case. There will b no continuance or Special Master. This is an election contest only case that must be expedited.

If there are issue as the Plaintiffs conduct of discovery I will take them up by e mail or conference call if necessary.

Adele Grubbs
Senior Judge

On Fri, Jan 11, 2019 at 1:01 PM Vincent Russo <vrusso@robbinsfirm.com> wrote:

> Judge Grubbs,
>
> Please note that the affidavit of Michael Barnes was signed and notarized.  I had a typo in my email below referring to it as unsigned.
>
> Apologies for any confusion.
>
> Thanks,
>
> Vincent
>
> Sent from my iPhone
>
> On Jan 11, 2019, at 12:00 PM, Vincent Russo <vrusso@robbinsfirm.com> wrote:
>
> Judge Grubbs:
>
>
> The inspection that Plaintiffs' are now seeking would not only damage the voting machines, but it would expose highly confidential information about Georgia's voting system that would leave it vulnerable to attack.  The Georgia Court of Appeals has already stated that the GEMS database should not be released due to the sensitivity of the information on it. Smith v. DeKalb County, 288 Ga. App. 574 (2007) (copy attached).  Conversely, the scope of inspection proposed by Defendants would give Plaintiffs access to information sufficient to determine whether the irregularities alleged in the Petition existed while continuing to protect Georgia's voting system.  Attached is an unsigned affidavit of Michael Barnes, Director of the Center for Election Systems in the Secretary of State's Office, further discussing these issues.

**Page 1 of 8**

In regard to the GEMS inspection, Mr. Barnes states that the GEMS reports that Defendants have proposed to generate from GEMS show how races in the database are related to political districts within the county and how those races are then related to the ballots generated. Accordingly, if there was a programming failure (i.e., failure to relate a race to a given district which results in it not be present on the ballot), it would appear in those reports according to Mr. Barnes.

Additionally, the ballot images report generated from GEMS shows which voter selections were collected by race within each ballot recorded by the DRE. The image report contains all races and associated candidates contained on the ballot, the candidate who was selected, and which candidates were not selected. Defendants' proposed reports from GEMS also show which individual races were present on each ballot style configured by GEMS, which also goes to the alleged irregularity regarding missing races and candidates. Finally, the Secretary of State's Office can perform a HASH verification of the GEMS program installed on the county computer, which would confirm whether the program has been altered. As indicated in Mr. Barnes' affidavit, if there were irregularities or failures with respect to programming, vote recordation, the appearance of candidates on a ballot in a given election, they would appear in these reports.

Next, in regard to the DRE machines, the inspection that we have proposed relates directly to the DRE irregularities alleged by Plaintiffs. Plaintiffs have alleged that candidate names were missing from ballots on DRE machines (Pet. at ¶ 41), issues with calibration of DRE touchscreens (Pet. at ¶ 41, 47), cancelled ballots on machines (Pet. at ¶ 44), and discrepancies in the vote counts on precinct poll tapes (Pet. at ¶ 46). As indicated in the attached affidavit of Michael Barnes, inspecting the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition would allow Plaintiffs to discover whether any of these alleged irregularities actually existed, to the extent there were any.

In contrast, the DRE inspection proposed by Plaintiffs would require removing the memory chip from the motherboard on each machine, which damages the machines and prevents elections officials from using them ever again. Like the GEMS access proposed by Plaintiffs, Mr. Barnes has also stated that Defendants' proposed DRE inspection would expose sensitive information that would give a roadmap for hacking the system. The Ballot Station program on the DRE only opens files that reside in a specifically named folder and then only opens files in that folder that have specific file extensions. According to Mr. Barnes' affidavit, the data is copied directly from a memory card, someone would know how files are organized and named on the memory card. If a computer researcher wanted to "hack" the system, that person would want to know what file folders and file extensions Ballot Station recognizes.

Defendants' proposed inspection for the DRE machines includes the post-election memory cards. According to Mr. Barnes, if one has the memory card used in an Election, one has a copy of what is on the machine's internal Memory already

Defendants' have proposed a scope of discovery that is in line with our understanding of your intent at the hearing on Wednesday. Plaintiffs proposed inspection would not only damage voting machines, but it would also provide a roadmap or schematic of the system that someone would need in order to create virus or show how one could be created. Plaintiffs' proposed Order would sanction a fishing expedition that is beyond the factual allegations in the Petition, so we urge the Court to adopt Defendants' Proposed Order.

**Page 2 of 8**

Kind regards,


Vincent Russo


**Vincent R. Russo** |*404.856.3260* | <image002.jpg>






     -   -   -                      -

**From:** Adele Grubbs [mailto:adele.grubbs@gmail.com]
**Sent:** Friday, January 11, 2019 7:09 AM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>; laila.tehrani@sbllaw.net;
richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Josh
Belinfante <Josh.Belinfante@robbinsfirm.com>; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>;
Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com;
Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo
<vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov;
kaye.burwell@fultoncountyga.gov
**Subject:** Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418


Please have ALL arguments about this order to me by Noon today so I can enter the order today.

Thank you.


Adele Grubbs

Senior Judge

Sent from my iPhone


On Jan 11, 2019, at 12:48 AM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:


      Judge Grubbs:


      Further to my email below on Defendants' proposed order (attached to

Mr. Denton's 4:59 PM email), Plaintiffs have no objections to the changes
Defendants propose to Parts A, but would urge the Court to adopt
Plaintiffs' Part B, for the reasons set forth in the Affidavit of Plaintiffs'
expert Matt Bernhard, attached.  I have attached to this email a Proposed
Order that does just this: takes the Defendants' version of Part A, but
Plaintiffs' prior version of Part B, the discovery provisions for the specific
records and equipment included in the Court's ruling at the January 9,
2017 hearing.   Plaintiffs have included in Part B the sentence proposed by
Defendants – "Destructive testing shall not be permitted." (I note that no
notary public was available tonight to notarize Mr. Bernhard's affidavit (he
is out-of-state), but we will submit a notarized affidavit when it becomes
available).

Mr. Bernhard explains in his affidavit that the inspection proposed by
Defendants would be virtually useless, and how that the inspection that
Plaintiffs proposes is the only way to discover system malfunctions and
mis-programming.

Mr. Bernhard also references a Georgia law relating to the internal
memory that is right on point.   Georgia State Election Board Rule 183-1-
12-.02 (6)(d) states:

> The election results, ballot styles, ballot images, and other
> information for each election **stored in the internal memory**
> **storage of each DRE unit** shall be maintained for a minimum
> of one month following each election after which time the
> results may be erased provided that there are no election
> contests pending concerning such election.

This Rule requires the counties to preserve the internal memory of the
DRE machines for the specific purposes of having that memory available
for inspection and review in an election contest.  Fulton County's position
that this information should not be made available in this election contest,
therefore, is inconsistent with this rule and, for the additional reasons
explained in Mr. Bernhard's affidavit, completely without merit.

As to the GEMS database, Mr. Bernhard explains that this can easily be produced on a CD to Plaintiffs' experts; it is not proprietary information and is crucially necessary for the examination.


Many thanks,


Bruce Brown

---

**From:** "bbrown@brucebrownlaw.com" <bbrown@brucebrownlaw.com>
**Date:** Thursday, January 10, 2019 at 6:07 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>,
"laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>,
"richard.carothers@carmitch.com" <richard.carothers@carmitch.com>,
"sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com"
<brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H."
<edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org"
<Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov"
<Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com"
<DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>,
"JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com"
<csims@7Jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo
<vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>,
"ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov"
<kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418


Dear Judge Grubbs:


With respect to Defendants' proposed order, relating specifically to  discovery and inspection, Plaintiffs will be submitting later this evening a statement from one of our experts (a computer scientist specializing in voting systems) which will explain how the limitations that defendants would impose will render the inspection useless for the purposes of detecting the causes of any

malfunction, or misprogramming, either in the GEMS database or DRE machines, and is not a forensic examination that may detect programming errors (which is what we understand the Court instructed). We urge the Court to withhold considering the proposed order until the Court has the opportunity to consider that submission.

Respectfully,

Bruce Brown

---

**From:** Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Date:** Thursday, January 10, 2019 at 4:59 PM
**To:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>, Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com" <csims@7Jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo <vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs,

The Defendants have collaborated to prepare the attached proposed order for your consideration. It tracks the one Plaintiffs' counsel provided earlier today except as to those specific portions where they are not in agreement.

Thank you.

**Page 6 of 8**

Alexander Denton |*404.856.3276* | ROBBINS

---

**From:** Josh Belinfante
**Sent:** Thursday, January 10, 2019 12:59 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>; Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo <vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov; Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs:

Good afternoon. We have substantial agreement with portions of the proposed order but are drafting an alternative for your consideration. We are working to submit it as soon as possible today.

Thank you and best regards,

JB

---

**From:** Bruce Brown [mailto:bbrown@brucebrownlaw.com]
**Sent:** Thursday, January 10, 2019 12:13 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Josh Belinfante <Josh.Belinfante@robbinsfirm.com>; Vincent Russo <vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov; Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Dear Judge Grubbs:

I have attached Plaintiffs' proposed order on the motions heard by Your Honor yesterday. I circulated a draft of this proposed order yesterday afternoon to defendants' counsel, and again this morning, and have not received a response as to what changes they would recommend to it. Given the

Page 7 of 8

expedited nature of these proceedings, I thought it best to go ahead and submit Plaintiffs' proposed order without further delay.

We did have a conference call with defendants' counsel on discovery yesterday evening, both with respect to the terms of the proposed order and logistics.  The parties did **not** agree on language for the proposed order with respect to discovery, but we did make progress on logistics, and Fulton County is readying machines for inspection.

I note that Part B(2) of the attached, which address the discovery of the DRE machines, references the paragraphs of the complaint that allege specific instances of machine malfunctions, except for paragraphs 42 and 43, which concerned locations in DeKalb County.

Many thanks,

Bruce Brown

Attorney for Plaintiffs


<20190111 Plaintiffs' Proposed Order.docx>

<20180111 Lt Gov Bernhard Affidavit Final Signed.pdf>

<Smith v. DeKalb County_ 288 Ga. App. 574.pdf>
<Michael Barnes Affidavit re discovery protocol pdf.pdf>

.

.

**Page 8 of 8**

EXHIBIT

F

| From: | Bruce Brown |
|---|---|
| To: | Adele Grubbs |
| Cc: | Alexander Denton; laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Josh Belinfante; Lindsey, Jr., Edward H.; Thomas.Davis@cobbcounty.org; Vincent Russo; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmic.net; Brian Lake; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov |
| Subject: | Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| Date: | Monday, January 14, 2019 11:05:18 PM |
| Attachments: | 20190114 Lt Gov Plaintiffs" Motion for Continuance Final with Exhibits A and B.pdf |
| | 20190114 Lt Gov Proposed Order Granting Motion for Continuance Final.pdf |

Judge Grubbs:

I have attached a Motion for Continuance that I e-filed this evening, and a proposed order. If the attachments do not transmit, the filings may also be accessed via this DropBox link: https://www.dropbox.com/sh/60rnzdp55n2ui6h/AADyKzh4VXGX8VDx86VBkdR-a?dl=0

Many thanks for your consideration of this Motion.

Respectfully submitted,

Bruce Brown
Counsel for Plaintiffs

.

E

X

H

I

B

I

T


G

| From: | Bruce Brown |
|-------|-------------|
| To: | Adele Grubbs |
| Cc: | Alexander Denton; laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H.; Thomas.Davis@cobbcounty.org; Vincent Russo; Josh Belinfante; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Brian Lake; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov |
| Subject: | Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| Date: | Tuesday, January 15, 2019 6:18:17 PM |
| Attachments: | 20190115 Lt Gov Plaintiffs" Reply in Support of Motion for Continuance Final.pdf |

Judge Grubbs,
Please find attached a Reply Brief in Support of Motion for Continuance. I will be e-filing it shortly.
Many thanks,
Bruce Brown

---

**From:** "bbrown@brucebrownlaw.com" <bbrown@brucebrownlaw.com>
**Date:** Tuesday, January 15, 2019 at 5:23 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net"
<laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com"
<richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>,
"brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net"
<bpt@sbllaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>,
"Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, Vincent Russo
<VRusso@robbinsfirm.com>, Josh Belinfante <Josh.Belinfante@robbinsfirm.com>,
"Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>,
"DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer
<Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>,
"csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Brian Lake
<Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>,
"kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Judge Grubbs:

I will be filing a Reply to the Briefs filed by non-party Secretary of State and Defendant Duncan
before 6 PM. As these briefs (particularly the Secretary's) contains materially incorrect statements
of fact, Plaintiffs urge you to withhold ruling on the Motion until you receive our Reply.
Many thanks,
Bruce Brown

---

**From:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>

**Date:** Tuesday, January 15, 2019 at 4:54 PM
**To:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>, Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, Vincent Russo <vrusso@robbinsfirm.com>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>, "csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs:

Please find the Secretary's response to the Motion for Continuance.

Best regards,
JB

**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Monday, January 14, 2019 11:05 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>; laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Josh Belinfante <Josh.Belinfante@robbinsfirm.com>; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Vincent Russo <vrusso@robbinsfirm.com>; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov
**Subject:** Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs:

I have attached a Motion for Continuance that I e-filed this evening, and a proposed order. If the attachments do not transmit, the filings may also be accessed via this DropBox link:

https://www.dropbox.com/sh/60rnzdp55n2ui6h/AADyKzh4VXGX8VDx86VBkdR-a?dl=0

Many thanks for your consideration of this Motion.

Respectfully submitted,

Bruce Brown
Counsel for Plaintiffs

.

E
X
H
I
B
I
T

H

| From: | Bruce Brown |
| To: | Adele Grubbs |
| Cc: | Alexander Denton; laila.tehrani@sblIaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sblIaw.net; Lindsey, Jr., Edward H.; Thomas.Davis@cobbcounty.org; Vincent Russo; Josh Belinfante; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Brian Lake; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov |
| Subject: | Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| Date: | Tuesday, January 15, 2019 5:23:24 PM |

Judge Grubbs:

I will be filing a Reply to the Briefs filed by non-party Secretary of State and Defendant Duncan before 6 PM. As these briefs (particularly the Secretary's) contains materially incorrect statements of fact, Plaintiffs urge you to withhold ruling on the Motion until you receive our Reply.
Many thanks,
Bruce Brown

---

**From:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>
**Date:** Tuesday, January 15, 2019 at 4:54 PM
**To:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>, Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sblIaw.net" <laila.tehrani@sblIaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sblIaw.net" <bpt@sblIaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, Vincent Russo <vrusso@robbinsfirm.com>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>, "csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs:

Please find the Secretary's response to the Motion for Continuance.

Best regards,
JB

**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Monday, January 14, 2019 11:05 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>; laila.tehrani@sbllaw.net;
richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com;
bpt@sbllaw.net; Josh Belinfante <Josh.Belinfante@robbinsfirm.com>; Lindsey, Jr., Edward H.
<edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Vincent Russo
<vrusso@robbinsfirm.com>; Patrise.Perkins-Hooker@fultoncountyga.gov;
DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com;
csims@7Jad.com; chall@lmjc.net; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov;
kaye.burwell@fultoncountyga.gov
**Subject:** Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs:

I have attached a Motion for Continuance that I e-filed this evening, and a proposed order. If the
attachments do not transmit, the filings may also be accessed via this DropBox link:
https://www.dropbox.com/sh/60rnzdp55n2ui6h/AADyKzh4VXGX8VDx86VBkdR-a?dl=0

Many thanks for your consideration of this Motion.

Respectfully submitted,

Bruce Brown
Counsel for Plaintiffs

EXHIBIT

I

| | |
|---|---|
| **From:** | Bruce Brown |
| **To:** | Adele Grubbs |
| **Cc:** | Burwell, Kaye; Alexander Denton; Laila Tehrani; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; Lindsey, Jr., Edward H.; Thomas.Davis@cobbcounty.org; Vincent Russo; Josh Belinfante; Perkins-Hooker, Patrise; DWare@hallboothsmith.com; Ringer, Cheryl; JOvercash@7Jad.com; csims@7Jad.com; chall@lmic.net; Brian Lake; ccorrela@law.ga.gov; Bryan Tyson |
| **Subject:** | Plaintiffs" Demand for Jury Trial: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| **Date:** | Wednesday, January 16, 2019 2:06:07 PM |
| **Attachments:** | 20190116 Lt Gov Plaintiffs" Jury Demand.pdf |

Judge,

We are filing today a demand for trial by jury pursuant to O.C.G.A. 21-2-526, copy attached.

Respectfully,

Bruce Brown

E
X
H
I
B
I
T

J

| Subject: | Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418 |
| --- | --- |
| Date: | Friday, January 11, 2019 at 9:30:22 AM Eastern Standard Time |
| From: | Bruce Brown |
| To: | Adele Grubbs |
| CC: | Alexander Denton, laila.tehrani@sbllaw.net, richard.carothers@carmitch.com, sue@carmitch.com, brian.dempsey@carmitch.com, bpt@sbllaw.net, Josh Belinfante, Lindsey, Jr., Edward H., Thomas.Davis@cobbcounty.org, Patrise.Perkins-Hooker@fultoncountyga.gov, DWare@hallboothsmith.com, Cheryl.Ringer@fultoncountyga.gov, JOvercash@7Jad.com, csims@7Jad.com, chall@lmjc.net, Vincent Russo, Brian Lake, ccorreia@law.ga.gov, kaye.burwell@fultoncountyga.gov |

**Attachments:** image001.jpg

Judge,
You may also be able to access the two files using this link:
https://www.dropbox.com/sh/7moph297xw9gdy8/AAA6L0CXAHvN_6WHvjcbnI3Oa?dl=0.
Thanks,
Bruce Brown

---

**From:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>
**Date:** Friday, January 11, 2019 at 9:20 AM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>, "csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo <vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge,
I am sorry but do not know what the technical issue is. The two attachments appear on the "Sent" version of my email to you late last night, early this morning. I am attaching them again, and please let me know if you did not receive them. (In addition, if any counsel do not receive the attachments, please let me know). Many thanks and very sorry for the inconvenience.
Bruce Brown

---

**From:** Adele Grubbs <adele.grubbs@gmail.com>
**Date:** Friday, January 11, 2019 at 9:04 AM

**To:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net"
<laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>,
"sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com"
<brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante
<Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>,
"Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-
Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>,
"DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer
<Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7jad.com>,
"csims@7Jad.com" <csims@7jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo
<vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov"
<ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Proposed Order: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action
No. 2018CV313418

Nor do I have the new proposed order of the Plaintiffs.There are no attachments to today's e mail from the
Plaintiffs.

Adele Grubbs

On Fri, Jan 11, 2019 at 9:01 AM Adele Grubbs <adele.grubbs@gmail.com> wrote:

> I am in receipt of various emails. However I have not received an affidavit of Mr. Bernhart.
>
> Adele Grubbs
>
> On Fri, Jan 11, 2019 at 7:09 AM Adele Grubbs <adele.grubbs@gmail.com> wrote:
>
>> Please have ALL arguments about this order to me by Noon today so I can enter the order today.
>> Thank you.
>>
>> Adele Grubbs
>> Senior Judge
>>
>> Sent from my iPhone
>>
>> On Jan 11, 2019, at 12:48 AM, Bruce Brown <bbrown@brucepbrownlaw.com> wrote:

**Page 2 of 6**

Judge Grubbs:

Further to my email below on Defendants' proposed order (attached to Mr. Denton's 4:59 PM email), Plaintiffs have no objections to the changes Defendants propose to Parts A, but would urge the Court to adopt Plaintiffs' Part B, for the reasons set forth in the Affidavit of Plaintiffs' expert Matt Bernhard, attached.  I have attached to this email a Proposed Order that does just this: takes the Defendants' version of Part A, but Plaintiffs' prior version of Part B, the discovery provisions for the specific records and equipment included in the Court's ruling at the January 9, 2017 hearing.   Plaintiffs have included in Part B the sentence proposed by Defendants – "Destructive testing shall not be permitted." (I note that no notary public was available tonight to notarize Mr. Bernhard's affidavit (he is out-of-state), but we will submit a notarized affidavit when it becomes available).

Mr. Bernhard explains in his affidavit that the inspection proposed by Defendants would be virtually useless, and how that the inspection that Plaintiffs proposes is the only way to discover system malfunctions and mis-programming.

Mr. Bernhard also references a Georgia law relating to the internal memory that is right on point.   Georgia State Election Board Rule 183-1-12-.02 (6)(d) states:

> *The election results, ballot styles, ballot images, and other information for each election **stored in the internal memory storage of each DRE unit** shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election.*

This Rule requires the counties to preserve the internal memory of the

DRE machines for the specific purposes of having that memory available for inspection and review in an election contest.  Fulton County's position that this information should not be made available in this election contest, therefore, is inconsistent with this rule and, for the additional reasons explained in Mr. Bernhard's affidavit, completely without merit.

As to the GEMS database, Mr. Bernhard explains that this can easily be produced on a CD to Plaintiffs' experts; it is not proprietary information and is crucially necessary for the examination.

Many thanks,

Bruce Brown

---

**From:** "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>
**Date:** Thursday, January 10, 2019 at 6:07 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** Alexander Denton <Alexander.Denton@robbinsfirm.com>, "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com" <csims@7Jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo <vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** Re: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Dear Judge Grubbs:

With respect to Defendants' proposed order, relating specifically to discovery and inspection, Plaintiffs will be submitting later this evening a statement from one of our experts (a computer scientist specializing in voting systems) which will explain how the limitations that defendants would impose will render the inspection useless for the purposes of detecting the causes of any malfunction, or misprogramming, either in the GEMS database or DRE machines, and is not a forensic examination that may detect programming errors (which is what we understand the Court instructed). We urge the Court to withhold considering the proposed order until the Court has the opportunity to consider that submission.

Respectfully,

Bruce Brown

---

**From:** Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Date:** Thursday, January 10, 2019 at 4:59 PM
**To:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, "bbrown@brucepbrownlaw.com" <bbrown@brucepbrownlaw.com>, Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** "laila.tehrani@sbllaw.net" <laila.tehrani@sbllaw.net>, "richard.carothers@carmitch.com" <richard.carothers@carmitch.com>, "sue@carmitch.com" <sue@carmitch.com>, "brian.dempsey@carmitch.com" <brian.dempsey@carmitch.com>, "bpt@sbllaw.net" <bpt@sbllaw.net>, "Lindsey, Jr., Edward H." <edward.lindsey@dentons.com>, "Thomas.Davis@cobbcounty.org" <Thomas.Davis@cobbcounty.org>, "Patrise.Perkins-Hooker@fultoncountyga.gov" <Patrise.Perkins-Hooker@fultoncountyga.gov>, "DWare@hallboothsmith.com" <DWare@hallboothsmith.com>, Cheryl Ringer <Cheryl.Ringer@fultoncountyga.gov>, "JOvercash@7Jad.com" <JOvercash@7Jad.com>, "csims@7Jad.com" <csims@7Jad.com>, "chall@lmjc.net" <chall@lmjc.net>, Vincent Russo <vrusso@robbinsfirm.com>, Brian Lake <Brian.Lake@robbinsfirm.com>, "ccorreia@law.ga.gov" <ccorreia@law.ga.gov>, "kaye.burwell@fultoncountyga.gov" <kaye.burwell@fultoncountyga.gov>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs,

The Defendants have collaborated to prepare the attached proposed order for your consideration. It tracks the one Plaintiffs' counsel provided earlier today except as to those specific portions where they are not in agreement.

Thank you.

**Alexander Denton** |*404.856.3276* | R̲O̲B̲B̲I̲N̲S̲

---

**From:** Josh Belinfante
**Sent:** Thursday, January 10, 2019 12:59 PM
**To:** Bruce Brown <bbrown@brucepbrownlaw.com>; Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com; Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com; chall@lmjc.net; Vincent Russo <vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>; ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov; Alexander Denton <Alexander.Denton@robbinsfirm.com>
**Subject:** RE: Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No. 2018CV313418

Judge Grubbs:

Good afternoon.  We have substantial agreement with portions of the proposed order but are drafting an alternative for your consideration.  We are working to submit it as soon as possible today.

Thank you and best regards,
JB

---

**From:** Bruce Brown [mailto:bbrown@brucepbrownlaw.com]
**Sent:** Thursday, January 10, 2019 12:13 PM
**To:** Adele Grubbs <adele.grubbs@gmail.com>
**Cc:** laila.tehrani@sbllaw.net; richard.carothers@carmitch.com; sue@carmitch.com; brian.dempsey@carmitch.com; bpt@sbllaw.net; Lindsey, Jr., Edward H. <edward.lindsey@dentons.com>; Thomas.Davis@cobbcounty.org; Patrise.Perkins-Hooker@fultoncountyga.gov; DWare@hallboothsmith.com;

**Page 6 of 6**

Cheryl.Ringer@fultoncountyga.gov; JOvercash@7Jad.com; csims@7Jad.com;
chall@lmjc.net; Josh Belinfante <Josh.Belinfante@robbinsfirm.com>; Vincent Russo
<vrusso@robbinsfirm.com>; Brian Lake <Brian.Lake@robbinsfirm.com>;
ccorreia@law.ga.gov; kaye.burwell@fultoncountyga.gov; Alexander Denton
<Alexander.Denton@robbinsfirm.com>
**Subject:** Coalition for Good Governance, et al. v. Crittenden, et al. - Civil Action No.
2018CV313418

Dear Judge Grubbs:
I have attached Plaintiffs' proposed order on the motions heard by Your Honor yesterday.  I
circulated a draft of this proposed order yesterday afternoon to defendants' counsel, and
again this morning, and have not received a response as to what changes they would
recommend to it.  Given the expedited nature of these proceedings, I thought it best to go
ahead and submit Plaintiffs' proposed order without further delay.
We did have a conference call with defendants' counsel on discovery yesterday evening,
both with respect to the terms of the proposed order and logistics.  The parties did **not**
agree on language for the proposed order with respect to discovery, but we did make
progress on logistics, and Fulton County is readying machines for inspection.
I note that Part B(2) of the attached, which address the discovery of the DRE machines,
references the paragraphs of the complaint that allege specific instances of machine
malfunctions, except for paragraphs 42 and 43, which concerned locations in DeKalb
County.
Many thanks,
Bruce Brown
Attorney for Plaintiffs


<20190111 Plaintiffs' Proposed Order.docx>

<20180111 Lt Gov Bernhard Affidavit Final Signed.pdf>

**Page 7 of 6**

E
X
H
I
B
I
T

2

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

COALITION FOR GOOD
GOVERNANCE, et al.,

              **Plaintiffs,**

v.

ROBYN A. CRITTENDEN,
et al.,

              **Defendants.**

CIVIL ACTION FILE
NO. 2018CV313418

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO SUPPLEMENT THE RECOFD

Plaintiffs' Motion to Supplement the Record, having been considered and with good cause shown, is GRANTED.

SO ORDERED this __ day of January, 2019.

                            _____
                            Honorable Adele P. Grubbs
                            Senior Judge, State of Georgia

Prepared by: /s/Bruce P. Brown
               Bruce P. Brown
               Counsel for Plaintiffs

Page 1