IN THE SUPERIOR COURT OF FULTON COUNTY
FULTON JUDICIAL CIRCUIT
STATE OF GEORGIA


FULTON COUNTY COALITION FOR     )
                                )
GOOD GOVERNANCE, ET AL          )
                                )
            Plaintiffs          )     **Case Number**
                                )
Versus                          )     **2018-CV-313418**
                                )
ROBYN CRITTENDEN, ET AL         )
                                )
            Defendants          )



### STATUS HEARING


A transcript of the proceedings before the **HONORABLE ADELE P. GRUBBS,** on December 5, 2018, at the Cobb County Courthouse, Marietta, Cobb County, Georgia.


- 1 -

**APPEARANCE OF COUNSEL:**

**FOR PLAINTIFFS:**                        **BRUCE P. BROWN**
                                           Attorney at Law
                                           1123 Zonolite Rd., Ste. 6
                                           Atlanta, Ga. 30306   404-881-0700


**FOR DEFENDANT CRITTENDEN:**              **JOSH BELINFANTE, VINCENT R. RUSSO**
                                           **and ALEX DENTON**
                                           Attorneys at Law
                                           500 14th St. NW
                                           Atlanta, Ga. 30318   678-701-9381

**FOR DEFENDANT FULTON COUNTY**            **CHERYL RINGER & KAYE BURWELL**
   **BOARD OF REGISTRATION**               Attorneys at Law
   **AND ELECTIONS:**                      141 Pryor St. SW, Ste. 4038
                                           Atlanta, Ga. 30303   404-612-0263


**FOR DEFENDANT GWINNETT COUNTY**          **BRYAN P. TYSON & DICK CAROTHERS**
   **BOARD OF REGISTRATION**               Attorney at Law
   **AND ELECTIONS:**                      P.O. Box 73053
                                           Marietta, Ga. 30007   404-219-3160


**FOR DEFENDANT DEKALB COUNTY**            **DAVID WARE, PEARSON CUNNINGHAM,**
   **BOARD OF REGISTRATION**               **RUSSELL BRITT, MR. BRYAN**
   **AND ELECTIONS:**                      Attorneys at Law
                                           191 Peachtree St. NE, Ste. 2900
                                           Atlanta, Ga. 30303   678-539-1611


**FOR DEFENDANT GEOFF DUNCAN:**            **EDWARD LINDSEY**
                                           Attorney at Law
                                           303 Peachtree St., Ste 5300
                                           Atlanta, Ga. 30308   404-527-4720




Paul D. Crowder, CCR, CVR
264 Mountain View Dr.
Woodstock, Ga. 30188 404-457-9289

- 2 -

```
1                        P R O C E E D I N G S

2                            *  *  *  *  *

3        THE COURT:  Fulton County Coalition for Good

4   Governance versus Robyn Crittenden.  With due respect to

5   y'all, I need to kind of know who is who and who

6   represents who and so on and so forth.  There's one face I

7   recognize.  The rest of you I've never seen before.  Good

8   morning Mr. Lindsey.  Go ahead.

9        MR. BROWN:  Judge, my name is Bruce Brown.  I

10  represent the Plaintiffs.

11       THE COURT:  Okay.  And are all the Plaintiffs here?

12       MR. BROWN:  No, Your Honor.  Two of the Plaintiffs

13  are here, Rhonda Martin and Jeanne Dufort.

14       THE COURT:  Okay.

15       MR. BROWN:  And Marilyn Morris, who is the executive

16  director of The Coalition is here at counsel's table.  So

17  three of the Plaintiffs are here.

18       THE COURT:  Okay.  Then let me ask about on the

19  Defense side.

20       MR. BELINFANTE:  Good morning, Judge, Special

21  Assistant Attorney General representing Secretary of State

22  Robyn Crittenden.  I'm joined by my partner Vincent Russo

23  and Alex Denton.

24       THE COURT:  Okay.  So just take a seat.  Have you

25  made an appearance of counsel?  I don't have everything, I
```

- 3 -

1    don't think.  I know this is really a Fulton County case

2    and we probably need to be doing this in Fulton County

3    from now on.  This is more of a status, where are we,

4    where are we headed type hearing this morning, so I'll get

5    your names properly at some point.  If I call you wrong,

6    please excuse me.

7            MR. LINDSEY:  Good morning, Your Honor.

8            THE COURT:  Good morning.

9            MR. LINDSEY:  My name is Edward Lindsey.  I represent

10   Lieutenant Governor Elect Geoff Duncan.

11           THE COURT:  Who?

12           MR. LINDSEY:  Geoff Duncan who's the Lieutenant

13   Governor Elect.

14           THE COURT:  Okay.  Yes, sir.

15           MR. TYSON:  Good morning, Your Honor.  I'm Bryan

16   Tyson, joined by Dick Carothers.  We represent the

17   Gwinnett County Board of Registrations and Elections.

18           THE COURT:  Yes.

19           MR. WARE:  Good morning, Judge Grubbs.  David Ware

20   for DeKalb County Board of Registration and Elections,

21   along with Pearson Cunningham, Russell Britt, and Mr.

22   Bryan.

23           THE COURT:  All y'all four together?

24           MR. WARE:  Yes, we're all together for DeKalb County.

25           THE COURT:  Yes, ma'am.

- 4 -

1          MS. BURWELL:  Kaye Burwell with Cheryl Ringer on

2     behalf of Fulton County.

3          THE COURT:  Okay.  So each county is represented, and

4     one of the candidates is represented.  Okay, let me ask

5     you, Mr. Brown.  I know there's been some confusion

6     because this was a recusal and I was told to take it.  Is

7     there service on everybody?

8          MR. BROWN:  No, Your Honor.  Should I stand at the

9     podium?

10         THE COURT:  Whichever makes you more comfortable.

11    You will find that I'm a fairly -- Despite my reputation,

12    I'm a fairly easy going kind of person as long as you're

13    doing what you're supposed to do.

14         MR. BROWN:  Thank you, Your Honor.  The Plaintiffs

15    have made every effort to effect service in accordance

16    with the special provisions of the election contest

17    statute.  And what those provisions contemplate is that

18    actually the clerk and the assigned Judge perfect the

19    service.

20         THE COURT:  Right.

21         MR. BROWN:  And the necessary steps to that --

22         THE COURT:  They sign the service.

23         MR. BROWN:  Right.  And so we tried it in Fulton

24    County.

25         THE COURT:  Fulton didn't work.

1        MR. BROWN:  It didn't work.  And this is in the

2   record but I alerted the clerk when I filed the petition

3   that there were special provisions, both for the

4   assignment of the Judge and for the special summons.

5        THE COURT:  Right.

6        MR. BROWN:  That didn't make it through the court

7   system down there until finally the chief Judge took

8   control of it and assigned -- and made arrangements for

9   your assignment.  And so one of the first things that I

10  would ask is that the Court direct the clerk in Fulton

11  County to issue the summons and to perfect service of the

12  summons upon the Defendants.  We have drafted -- With

13  corrections from Judge Russell we have drafted the special

14  statutory summons and so I would be able to transmit to

15  your clerk or to your staff a Word copy of the summons

16  that could be modified to include what Your Honor would

17  specify as the answer date.

18       THE COURT:  Okay.

19       MR. BROWN:  One of the things that this law says is

20  that it's not 30 days.  It's what you say their answer

21  date is.

22       THE COURT:  I have a book.

23       MR. BROWN:  So that would be one of the first things

24  that you did.

25       THE COURT:  I knew I wouldn't have a computer so I

- 6 -

1    brought the book.

2         MR. BROWN:  That would be one of the first things on

3    my list of things that would need to be covered would be

4    making sure that Your Honor has the paperwork necessary to

5    set this.

6         THE COURT:  And you think it's necessary to process

7    it through my clerk or do I process it through Fulton

8    County?

9         MR. BROWN:  Through Fulton County.

10        THE COURT:  Okay.

11        MR. BROWN:  So that would be the first thing we'd ask

12   for and we'd be happy to --

13        THE COURT:  And you've got that paperwork with you.

14        MR. BROWN:  I don't have it with me.  It is with -- I

15   can have it tendered to you immediately.

16        THE COURT:  You can email it to me.

17        MR. BROWN:  Yes, ma'am.

18        THE COURT:  Any response to all that about the

19   service, from anybody?  Has anybody actually been served?

20        MR. RUSSO:  The Secretary of State has not been

21   served.

22        THE COURT:  But y'all got here.

23        MR. BELINFANTE:  We're here special, Judge.

24        THE COURT:  Okay.  So I'm going to do that.  If

25   you'll get that to me.  I'll give you a card.  I'll find

1     one before we get through.

2          MR. BROWN:  Thank you, Your Honor.

3          THE COURT:  I'll get you an address to go to.  What

4     is next on your side, Mr. Brown?

5          MR. BROWN:  Your Honor, the next thing on the agenda

6     would be several things.  First would be, if Your Honor is

7     prepared to do so, to maybe anticipate a trial date.

8     Second would be to discuss the necessary parties.  And the

9     third would be our request for emergency discovery so that

10    the evidence, which could be vanishing now that the

11    elections are done, is preserved and inspected for

12    purposes of determining the causes of action.

13         THE COURT:  Let me handle that backwards.  Let me ask

14    everybody else, okay.  Do you have any objection to an

15    order to preserve the evidence?  I'm not -- I didn't say

16    anything about inspect.  I just said preserve.

17         MR. BELINFANTE:  Your Honor, Josh Belinfante again,

18    for Secretary Crittenden.  And I should say -- I should

19    have said in the beginning, we are appearing specially

20    given the service issue.

21         THE COURT:  I'm assuming everybody is appearing

22    specially because there's no service.

23         MR. BELINFANTE:  Yes, Your Honor.  In terms of

24    preserving the evidence, I think the problem here is that

25    the allegations seem to indicate or seem to question

- 8 -

1    whether that's even possible.  And so the position of the

2    Secretary of State's Office is that there will be no

3    destruction or willful destruction of the evidence.  But I

4    don't know that the Plaintiffs take the position that

5    that's even feasible.

6         THE COURT:  Let me rephrase it.  That you will

7    preserve the evidence as far as is possible.

8         MR. BELINFANTE:  Yes, Your Honor.

9         THE COURT:  I mean, I don't know -- I've read the

10    pleadings.  I don't know about all the technicalities and

11    what's what.

12        MR. BELINFANTE:  Right.

13        THE COURT:  And we're all lawyers and not tech

14    people.  So I would think, Mr. Brown, an order that they

15    preserve the evidence as far as is possible would be

16    appropriate at this minute.  I'm not inclined to go

17    further than that, because there's been no service and I

18    haven't seen any answers and they haven't had a right to

19    challenge anything.

20        MR. BROWN:  Yes, Your Honor.

21        THE COURT:  Let me hear from each one in turn.

22        MR. TYSON:  Yes, Your Honor.  For Gwinnett, also, we

23    wouldn't have a problem with that as far as possible.

24    Obviously we have to use the machines.  We had to use them

25    yesterday.

1          THE COURT:  As far as possible.  There's to be no

2     destruction, deliberate destruction.  What the machine

3     does to itself, who knows.

4          MR. TYSON:  Right.  So we have no objection, Your

5     Honor.

6          THE COURT:  Okay.

7          MR. WARE:  On behalf of DeKalb, Your Honor, we will

8     follow Your Honor's direction.

9          THE COURT:  No problem with DeKalb.  Fulton?

10         MS. RINGER:  We, as well, will follow the order.

11         THE COURT:  Okay.  Mr. Lindsey doesn't really have

12    any.

13         MR. LINDSEY:  Given the fact, Your Honor, that we're

14    not in possession of any of the documents.

15         THE COURT:  You're not in possession of anything.

16         MR. LINDSEY:  We simply want everyone to behave.

17         THE COURT:  I gotcha.  Anybody I left out?

18         (No response.)

19         THE COURT:  Okay.  So if you'll do an order for me,

20    Mr. Brown.  Like I say, I'm going to give everybody my

21    card when we're done.  Unfortunately, Senior Judges are

22    movable people that wander all over the world.  Well, I

23    don't go below McDonough but I've been to Ringgold.  So

24    finding us sometimes is an issue and I give you my

25    personal email so that you can find me whenever you need

- 10 -

1      me.  So just get it to me.

2           MR. BROWN:  Your Honor, one point of clarification in

3      terms of as much as possible.

4           THE COURT:  Right.

5           MR. BROWN:  It is the Plaintiff's position that if

6      these machines are reused in subsequent elections, that

7      that will wipe the memory.

8           THE COURT:  Okay.  We're going to move as fast as we

9      can move on this case.  As I'm looking at it, somebody has

10     a MARTA election in March.  I don't know which -- I don't

11     know whether that involves anybody in this case.

12          MR. TYSON:  Yes, that's Gwinnett County.

13          THE COURT:  That's Gwinnett.  Okay.  We'll have

14     handled this before we get to March.

15          MR. BROWN:  Thank you.

16          THE COURT:  Okay.  So right now there isn't anything

17     else that I know of.  There aren't any other elections.

18     If something comes up, let me know.

19          MR. RUSSO:  I think the City of Atlanta has one --

20          THE COURT:  Huh?

21          MR. RUSSO:  I think the City of Atlanta has one also

22     and I believe they use Fulton County's.

23          THE COURT:  When is it, do you know?

24          MR. BELINFANTE:  City Councilman Ivory Young.

25          THE COURT:  Oh, yes, that's right.  Okay.  We'll move

1    as fast as we can move.

2         MR. BROWN:  Thank you, Your Honor.  If it's okay with

3    Your Honor, what we will put in the draft preservation

4    order is that the Defendants will use other machines for

5    these smaller elections.

6         THE COURT:  No, I didn't say that.

7         MR. BROWN:  Okay.

8         THE COURT:  That's not what I said.

9         MR. BROWN:  I understand, Your Honor.

10        THE COURT:  I mean, you're asking me something.  At

11   this point I have no idea about the case.

12        MR. BROWN:  I understand.

13        THE COURT:  All I'm trying to do is maintain the

14   status quo as well as I can while everybody gets served.

15   Everybody has a right to file answers, motions, whatever

16   may be coming at you.  That's all I'm trying to do is

17   preserve the status quo.

18        MR. BROWN:  Thank you, Your Honor.

19        THE COURT:  Okay.  Now you mentioned something about

20   parties?

21        MR. BROWN:  Yes, Your Honor.  The Secretary of State

22   filed a Motion to Dismiss late last night, and the

23   Secretary of State is taking the position that the

24   Secretary of State is not a proper party to this.

25        THE COURT:  Well I'm not going to rule on that.  See,

-12-

1   that's one of the things I'm concerned about.  I don't

2   know what kind of motions are coming.  I'm assuming --

3   With due respect -- I don't know how many lawyers we have

4   in this courtroom -- but they're not going to just roll

5   over and play dead.  They're going to be responsive.  Is

6   that a good word?  Responsive, okay.  So I want to give

7   them the proper time to do that, and I'm not going to deal

8   with anything -- Now if there's a -- I haven't seen it.

9   If it came I'm -- My office is supposed to be served with

10  it up here.  As I say, I'll give everybody a card so you

11  can -- You can send me copies direct of everything you've

12  got.  So if I'm somewhere else, I can still get copies of

13  them and I can still print them and know what I'm looking

14  at and line them up.  But no, I'm not dealing with any of

15  that.

16          MR. BROWN:  Thank you, Your Honor.

17          THE COURT:  Now, trial date.  Having said there is a

18  motion pending -- And we've got to have service.  If you

19  get me that order and I think I am required -- It's five

20  to ten days after service as I understand what the code

21  section says.  So they have to do that.  So you've got to

22  get me the order.  We're probably looking at after

23  Christmas and it would seem to me that we could set it for

24  what I would term motion hearings or whatever else they

25  may file.  And, of course, you may want to respond to some

1       of them, too.  I understand all that.  I think we just set

2       it for a date.  Getting y'all together, though you've done

3       good today, can be somewhat difficult.

4            My suggestion would be either the 7th or the 9th of

5       January.  Would you look and see if somebody has something

6       that would require -- I'm thinking one of those two days

7       just to hear whatever may be filed.  And at that point

8       then we can set it down for trial.  And we're looking at

9       probably the first week in February for trial is what

10      we're looking at.  Let me give y'all a chance to talk

11      about that and see where you are on those dates.  Y'all

12      take your time.

13           (Brief pause.)

14           MR. LINDSEY:  Sorry about that, Your Honor.

15           THE COURT:  No, no.  I want to --

16           MR. LINDSEY:  It's actually fairly --

17           THE COURT:  It's just, is that enough time?  What's

18      y'all's position?

19           MR. BELINFANTE:  The Defendants' collective position,

20      Your Honor, is that, you know, there are statutory

21      deadlines set in there and so once service is done that

22      triggers one and triggers another.  As long as we're not

23      waiving any defenses based on those statutory timelines,

24      we think that having motions due to the Court on or before

25      December 20 would be appropriate.  And then if the Court

-14-

1    wants to have a hearing on the 7th or the 9th, all parties

2    -- at least all Defendants are available to do so.  But we

3    would want to have a hearing on the merits presuming the

4    Court even chooses to do that or get that far, as soon as

5    possible thereafter.

6         THE COURT:  I understand that and I was looking at

7    that.  Say we did February the 7th for motions.

8         MR. BELINFANTE:  January 7th, Your Honor?

9         THE COURT:  January 7th for motions.  We could do

10   trial the 17th and 18th.

11        MR. BELINFANTE:  Of?

12        THE COURT:  January.  So motions due by December

13   20th, January the 7th will be motion hearings, and then

14   trial will be -- And we can do it all in one order,

15   because I think I'm required to do that.  What did I say,

16   17th and 18th of February?  I've got to find -- Well we'll

17   talk about that in a minute.  Not February, of January.

18   Trial would be January 17th.  So motions hearings on the

19   7th and trial on the 17th.  Any problem with that, Mr.

20   Brown?

21        MR. BROWN:  No, Your Honor.  If it's an open day for

22   the Court and for the Defendants, for the Plaintiffs the

23   9th would be marginally better for the initial hearing

24   rather than the 7th; however, we will be here whenever

25   we're ordered to do so, Your Honor.

- 15 -

1          THE COURT:  Any issue with the 7th or the 9th?

2          MR. BELINFANTE:  It does not appear to be, Your

3     Honor.

4          THE COURT:  Everybody all right?  Okay.  We'll say

5     the motions are on the 9th.  I've got to rule on them.

6     That gives me time.  Motions on the 9th, trial on the 17th

7     and 18th.  And I can do that order.  I'll do that order.

8          MR. BELINFANTE:  The only issue, Your Honor, I'm

9     truly not trying to be difficult, but I just want to --

10          THE COURT:  No, no.

11          MR. BELINFANTE:  I don't want the Court to think that

12     at some point we surprised it or anything of that nature.

13     Depending on when service happens.  The statute appears to

14     indicate that there's about 20 days between the appearance

15     that is filed and then the actual trial date.  This may,

16     again, depending on service, fall outside that.  I just

17     want to make clear for the record that we're not waiving

18     any defenses based on those dates.

19          THE COURT:  Right.  And we're doing these days -- and

20     I'll do an order on the days, just to protect on the

21     different rules and regulations.  We can move them.  It

22     doesn't say we can't move them.  And we can move them.

23     And if service doesn't get done -- He'll give me the

24     service papers.  We'll send them to the clerk.  The clerk

25     will send them to the sheriff.  It's Christmas.  I don't

- 16 -

1       know.  But we'll just see where it goes.  And I trust

2       we'll have a return of service on each one so that we will

3       not.

4               MR. BELINFANTE:  Great.  All right.  Thank you,

5       Judge.

6               THE COURT:  Okay.  The issue is this, and let me say

7       this -- As I said, I go to Ringgold, so I go wherever I

8       need to go.  Do you want to hear it in Cobb or do you need

9       to hear it in Fulton?  Whatever is easier for y'all.

10              MR. BELINFANTE:  On behalf of the secretary, we're

11      indifferent.  Whatever is easiest for the Court is easiest

12      for us.

13              THE COURT:  With due respect, when you come to Cobb

14      in the morning you're going the opposite way with the

15      traffic.  I was trying to work out how to phrase that.

16      And so it may be just that we can keep doing this in Cobb.

17      If someone objects, I'll try and move it to Fulton.

18              MR. BROWN:  No objection, Your Honor.

19              THE COURT:  No objection.  Nobody's objecting right

20      now.

21              MR. LINDSEY:  No objection, Your Honor.

22              THE COURT:  No objection.  So we'll do it in Cobb.  I

23      will try -- I will go right now and see which courtroom I

24      can get to do it in.  How many lawyers do we have?  We

25      have 16 lawyers.  So we ought to get the big courtroom.

-17-

1    Let's see what I can do.  And then, Madam Clerk, would you

2    put these out?  I hope there's enough.  That's one for

3    everybody.  That's my contact information.  It has my --

4    That's for everybody.  It has my cell phone number on it.

5    It has everything that you need, because, as I say, we

6    move around a lot.  Anything else we need to do this

7    morning?

8         (No response.)

9         THE COURT:  We're done.  If you get that service to

10   me as fast as possible, I'll get it filed and done.  I do

11   have a law clerk.  He's not here yet.  And we'll get it

12   done.

13        MR. BELINFANTE:  Judge, just so I'm clear, whenever

14   we filed something is it your preference that we also

15   email you a copy of what we file?

16        THE COURT:  Yes.  Just email me a copy so I've got it

17   and I can start looking at it and see where we are.

18        MR. BROWN:  Thank you, Your Honor.

19        THE COURT:  Thank you.  Thank you, gentlemen.

20        (End of Proceedings).

21

22

23

24

25

- 18 -

1                  **C E R T I F I C A T E**

2

3    STATE OF GEORGIA )

4    COUNTY OF COBB )

5

6         I hereby certify that the foregoing transcript was taken

7    down, as stated in the caption, and the questions and answers

8    thereto were reduced to type-written form by me personally;

9    that the foregoing pages 01 through 18 represent a true,

10   correct and complete transcript of the evidence given upon said

11   hearing; and I further certify that I am not of kin or counsel

12   to the parties in the case, am not in the regular employ of

13   counsel for any of the said parties, nor am I anywise

14   interested in the result of said case.

15        This the 23rd day of January, 2019.

16        The above certification is expressly withdrawn and denied

17   upon the alteration, disassembly or photocopying of foregoing

18   transcript, including exhibits, unless said alteration,

19   disassembly or photocopying is done under the auspices of Paul

20   D. Crowder, C.C.R., C.V.R., and the original signature and

21   original seal is attached thereto.

22

23

24   Paul D. Crowder, C.C.R., C.V.R.

25   Certified Court Reporter, B-1579

Case 1:17-cv-02989-AT   Document 449-10   Filed 07/03/19   Page 20 of 154

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
**Transcript of Hearing Proceedings on 01/09/2019**

```
 1              IN THE SUPERIOR COURT OF FULTON COUNTY

 2                      STATE OF GEORGIA

 3

 4  COALITION FOR GOOD      .  CIVIL ACTION
    GOVERNANCE, RHONDA J.   .  FILE NO.:  2018-CV-313418
 5

 6  MARTIN, SMYTH DUVAL, and  .
    JEANNE DUFORT,          .  Taken at:
 7

 8      Plaintiffs,         .  Superior Court of Cobb County

 9  vs.                     .  70 Haynes Street

10  ROBYN A. CRITTENDEN,    .  Courtroom 2000

11  Secretary of State of   .  Marietta, Georgia 30090
    Georgia, et al.         .
12

13      Defendants.         .
      . . . . . . . . . . . . . .
14

15

16                  TRANSCRIPT OF HEARING PROCEEDINGS

17                      WEDNESDAY, JANUARY 9, 2019

18                      8:59 a.m. to 11:04 a.m.

19

20          STATE OF GEORGIA SENIOR JUDGE ADELE P. GRUBBS

21

22

    REPORTED BY:
23

24  PRISCILLA GARCIA, COURT REPORTER

25  NOTARY PUBLIC, STATE OF GEORGIA
```

Fulton County Superior Court
***EFILED***TAW
Date: 2/19/2019 12:00 AM
Cathelene Robinson, Clerk

```
 1   APPEARANCES:

 2
          Plaintiff's Counsel:    Bruce P. Brown, Esquire
 3

 4                                Bruce P. Brown Law
                                  Floataway Business Complex
 5

 6                                1123 Zonolite Road N.E.
                                  Suite 6
 7

 8                                Atlanta, Georgia 30306

 9                                404-881-0700

10                                bbrown@brucepbrownlaw.com

11
          Defendant's Counsel:    John Belinfante, Esquire
12

13                                Robbins, Ross, Alloy, Belinfante
                                  & Littlefield, LLC
14

15                                500 14th Street N.W.
                                  Atlanta, Georgia 30318
16

17                                404-856-3262

18                                jbelinfante@robbinsfirm.com

19

20

21

22

23

24

25
```

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 21

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
**Transcript of Hearing Proceedings on 01/09/2019                         Page 3**

```
 1   CONTINUATION OF APPEARANCES:

 2
          Defendant's Counsel:    Vincent R. Russo, Esquire
 3
                                  Robbins, Ross, Alloy, Belinfante
 4                                & Littlefield, LLC

 5
                                  999 Peachtree Street N.E.
 6                                Suite 1120

 7
                                  Atlanta, Georgia 30309
 8
                                  404-856-3260
 9
                                  vrusso@robbinsfirm.com
10

11        Defendant's Associate Counsel:

12
                                  Alexander F. Denton, Esquire
13                                Robbins, Ross, Allot, Belinfante

14
                                  & Littlefield, LLC
15                                500 14th Street N.W.

16
                                  Atlanta, Georgia 30318
17
                                  404-856-3276
18                                adenton@robbinsfirm.com

19

20

21

22

23

24

25
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 22

```
 1   CONTINUATION OF APPEARANCES:

 2
             Defendant's Counsel:    Edward H. Lindsey, Esquire
 3

 4                                   Dentons US, LLP
                                     303 Peachtree Street N.E.
 5

 6                                   Suite 5300
                                     Atlanta, Georgia 30308
 7

 8                                   404-527-4580

 9                                   edward.lindsey@dentons.com

10

11       Defendant's Counsel:    Kaye Woodard Burwell, Esquire
                                     Office of the County Attorney
12

13                                   141 Pryor Street S.W.
                                     Suite 4038
14

15                                   Atlanta, Georgia 30303
                                     404-612-0251
16

17                                   kaye.burwell@fultoncountyga.gov

18
             Defendant's Counsel:    Bryan P. Tyson, Esquire
19

20                                   Strickland, Brockington & Lewis,
                                     LLP
21

22                                   1170 Peachtree Street N.E.
                                     Atlanta, Georgia 30309
23

24                                   404-219-3160

25                                   bryan.tyson@sbllaw.com
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 23

```
 1                          I-N-D-E-X

 2   EXHIBITS:              DESCRIPTION                    PAGE
       NONE
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          COBB COUNTY, GEORGIA

 2          WEDNESDAY, January 9, 2018 - 8:59 p.m.

 3

 4                    * * * * * * *

 5

 6     THE COURT:  On this case we have a request on Rule 22
    who is opposed to make -- that request.  Is anybody --
 7

 8     MS. BURWELL:  (inaudible)

 9     THE COURT:  This is on the case.  This is on the

10  Coalition case.

11     MS. BURWELL:  Right.
        THE COURT:  Does anyone have any objection to the
12

13  Rule 22?  -- the cameraman wants to record the
    proceedings.
14

15     MR. BELINFANTE:  No, Your Honor.
        MR. BROWN:  No, Your Honor.
16

17     THE COURT:  Everyone's saying no.

18     MR. RUSSO:  No, Your Honor.
        THE COURT:  Okay.  Then I will grant it.  I find that
19

20  it is covered under Section -- Rule 22.  I have an order
    confirming.
21

22     THE VIDEOGRAPHER:  Thank you.
        THE COURT:  I've got the order in front of me.  I've
23

24  got it.

25     THE VIDEOGRAPHER:  Will they know downstairs?
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 25

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                        Page 7

1          THE COURT:  I'm sorry.

2          THE VIDEOGRAPHER:  Will they know downstairs?  If I
   don't have it signed, they won't let me go through

3

4  security.  If I don't have a signed --
           THE COURT:  I just signed it.

5

6          THE VIDEOGRAPHER:  Oh, okay.
           THE COURT:  Pinpoint the rules though.  I need to

7

8  explain to you what the rules are.  You can only record

9  when I'm in courtroom.

10         THE VIDEOGRAPHER:  Okay.

11         THE COURT:  Okay.  You cannot record anything from
   counsel's table.

12

13         THE VIDEOGRAPHER:  Okay.
           THE COURT:  Okay.  Or any conversation they may have.

14

15  I don't think there are any witnesses.  It's not that kind
    of hearing today, but we'll see.  It's not -- yet and

16

17  we'll see.  Don't record anything that they've got

18  privilege and all those kinds of things.  So be very
    careful on that.

19

20         The rules say no bench conferences.  I can't imagine
    me trying to hold a bench conference with these people.

21

22  But we'll -- all I'm doing -- okay.  So, I will sign the
    order.  When you say downstairs, what do you mean?

23

24         THE VIDEOGRAPHER:  To get through security I have to

25  have a signed form to get through.

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 26

```
 1          THE COURT:  Okay.

 2          THE BAILIFF:  I'll take care of that, Judge.
            THE COURT:  Okay.
 3

 4          THE VIDEOGRAPHER:  Thank you.
            THE COURT:  There you go.  I don't -- I've got a
 5

 6   couple of them, okay.  Jim, I'll let him handle it, okay.
        Okay.  So, we have a good record, this is the Coalition
 7

 8   for Good Governance and various individuals versus Robyn

 9   Crittenden, Fulton County, and Gwinnett County.

10          Can you each, Counsel, introduce yourselves for the

11   record so I have a record of who's here?  Yes, sir.
            MR. BROWN:  Your Honor, Bruce Brown for the
12

13   plaintiffs.  With me at counsel table is Marilyn Marks,
        the executive director of plaintiff Coalition for Good
14

15   Governance.
            THE COURT:  I will allow that right now.  We'll see
16

17   where we go.  Yes, sir.

18          MR. RUSSO:  Good morning, Your Honor.  Vincent Russo
        for the Georgia Secretary of State.
19

20          MR. BELINFANTE:  Josh Belinfante also for the
        Secretary of State, Your Honor.
21

22          THE COURT:  Okay.
            MR. TYSON:  Good morning, Your Honor.  Bryan Tyson
23

24   and with me is Dick Carruthers.  We represent the Gwinnett

25   Board of Registrations and Elections.
```

 1        THE COURT:  Okay.

 2        MR. LINDSEY:  Good morning, Your Honor.  Edward
    Lindsey on behalf of Lieutenant Governor-elect Geoff
 3
    Duncan.
 4
          THE COURT:  Okay.
 5

 6        MS. BURWELL:  Kaye Burwell here on behalf of Fulton
    County.
 7

 8        THE COURT:  How did you get stuck with this?

 9        MS. BURWELL:  There too many lawyers there this

10   morning, Your Honor.

11        THE COURT:  We're trying to pretend you're not here.
    I gotcha.  I got it.  I know how that works, okay.  That's
12
    it.  As I understand it, DeKalb County has been dismissed?
13
          MR. BROWN:  That's correct, Your Honor.
14

15        THE COURT:  In looking at -- we're here -- let me be
    clear on this.  We're here on motions today.  This is not
16
    evidentiary.  Understand the statute of evidence has been
17
    supposedly filed, the report's picked it up.  That's not
18   relevant today.  It's got nothing to do with today.
19
          That's not what we're here about, okay.  We're here
20   for the four corners of the petition; that's all we're
21
    here about.  So I need to be clear about that.  I
22   understand though, Mr. Brown, is that you have agreed that
23
    the Coalition is not a proper party as to the election
24
    contest; is that correct?
25

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 10

1          MR. BROWN:  That is correct, Your Honor.  The

2     Coalition is a party to the Federal 1983 claims, and the
       individual plaintiffs are the contestants in the election

3

4     contest.
            THE COURT:  Okay.  And then with that covered, in

5

6     count 2 and count 3 are federal claims; is that correct?
            MR. BROWN:  That's correct, Your Honor.

7

8          THE COURT:  Okay.  Are those not being contested in

9     federal court right now?

10         MR. BROWN:  No, Your Honor.  They're -- similar

11    claims have been raised in federal court, but these are --
       these claims are also raised in this case.

12

13         THE COURT:  Well, how many times can you raise the
       same claim?  I mean, if this is a federal -- I'm going to

14

15    hear from everybody.  If this is a federal issue, then why
       don't I just stay it and let the federals decide what it

16

17    is?

18         MR. BROWN:  Your Honor, the plaintiff's claims are
       right to be asserted here, and it may be that they -- that

19

20    those --
            THE COURT:  You can't keep asserting them in all

21

22    different kinds of -- of courtrooms.
            MR. BROWN:  That's correct, Your Honor.  But had --

23

24    had the plaintiffs not asserted them, they could have

25    waived their right to the relief, if that relief were

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 29

1    deemed right before the other ones matured.  The federal

2    court --
           THE COURT:  Let me hear from here from the -- from

3

4    the defendants on that issue.  Don't mean to -- if I'm
      making any sense this morning.

5

6          MR. RUSSO:  Good morning, Your Honor.  Vincent Russo
      for the Secretary of State.  This -- these are claims that

7

8    are pending and the case before Judge Totenberg in a

9    criminal matter.  We don't have any objection to you also

10   considering those claims.  We will do as you determine.

11         THE COURT:  Okay.
           MR. DENTON:  And Your Honor, for Gwinnett, we're kind

12

13   of in the same position as Secretary of State.
           THE COURT:  Okay.

14

15         MR. DENTON:  We're in the same position as the
      Secretary of State's Office, and we don't have necessarily

16

17   an objection.  We don't think we're really proper to be

18   part of the federal constitutional claims --
           THE COURT:  (inaudible)

19

20         MR. DENTON:  -- so we can deal with that later.  Yes.
           THE COURT:  We'll take one step at a time.

21

22         MR. DENTON:  Yes.
           THE COURT:  I'm trying to take -- this is today,

23

24   okay.  I'm trying to take it one step at a time, okay.

25   I'm fairly simplistic about -- I'm a math major, okay.

```
 1   Explain life to me.  You know, we're going to do it like

 2   that.  I do better if I keep my brain in one spot at a
     time.  Fulton County, what do you say?
 3

 4       MS. BURWELL:  Your Honor, on behalf of Fulton County,
     we take the position that the federal claims are pending
 5

 6   in federal court, and this is just another opportunity for
      these same plaintiffs to bring the same claim again, and
 7

 8   we agree with the Court that you want to stay the federal

 9   issues, the constitutional issues they claim that they're

10   raising.

11       THE COURT:  Mr. Lindsey.
         MR. LINDSEY:  Your Honor, I don't believe that Geoff
12

13   Duncan is really a party to the second and third count.
      They're simply a party in regard to the first count,
14

15   seeking a new election.
         THE COURT:  Is it -- I'm sorry?
16

17       MR. LINDSEY:  We're simply a party in regard to the

18   first count, seeking a new election.
         THE COURT:  Right.  But you're not really involved
19

20   in --
         MR. LINDSEY:  It certainly does, however, make sense
21

22   for you to stay.
         THE COURT:  You're right.
23

24       MR. LINDSEY:  That'll do it.

25       THE COURT:  Okay.  Then I will hear the motions this
```

1   morning on that, but I'm still not convinced I'm going to

2   stay, okay.  Because it's pending somewhere else.  With
    that said, then let's go -- let me see.  I'll hear -- let

3

4   me hear the Secretary of State's motions first, okay.
        Let -- what we're going to do -- a lot of them -- a

5

6   lot of them are the same.  A lot of the motions are the
    same, so I'm going to -- I'm going to let you go first,

7

8   and then we'll go from there, okay.

9       MR. BROWN:  Thank you, Your Honor.  And the

10  defendant's counsel, we did try to split up kind of all

11  arguments so that you aren't hearing --
        THE COURT:  Whatever you want to do, Mr. Brown.

12

13      MR. RUSSO:  We're here on Secretary of State's motion
    to dismiss, along with the motions to dismiss filed by our

14

15  co-defendants.  As you're aware, plaintiffs filed a
    petition contesting the results of the November 6, 2018,

16

17  general election and the race for lieutenant governor for

18  the State of Georgia.
        In that election the margin of victory was 123,172

19

20  votes.  The plaintiffs in this case claim that the only
    explanations for the difference in the number of votes in

21

22  the lieutenant governor's race and other statewide races
    is that there were malfunctioning or erroneously

23

24  programmed voting machines or malicious manipulation of

25  the voting machines.

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
**Transcript of Hearing Proceedings on 01/09/2019**       **Page 14**

```
 1        That that -- that those issues place in doubt the

 2   results of the election.  Now plaintiff's, of course,
      completely disregard other reasonable explanations for the
 3

 4   differences in the votes, such as the fact that there were
      third-party candidates in the other races and incumbents,
 5

 6   but that's for another day.
          The Supreme Court has repeatedly stated that Georgia
 7

 8   law prohibits a contestant from merely speculating or

 9   guessing as to the cause of an election contest.  Here we

10   have -- the plaintiffs have asserted grounds under 2125 --

11   excuse me, 2102 520, under multiple different sections of
      the election page, excuse me.
12

13        And the motion to dismiss, their response to the
      motion to dismiss has them discuss -- the plaintiffs have
14

15   expanded the grounds for their contest to -- to additional
      ones.  So, there are threshold issues that pertain to our
16

17   client, which I'll address first.

18        My partner, Josh Belinfante, will address the federal
      constitutional claims, and as I mentioned the other
19

20   parties will address those claims.  Your Honor, has
      already taken and confirmed the first step here that the
21

22   Coalition for Good Governance lacks standing to file an
      election contest claim, so we're going to move past --
23

24   past that.

25        As Your Honor knows, election contests are authorized
```

www.huseby.com      **Huseby, Inc. Regional Centers**      **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 33

1  and governed by the Georgia Election Code, which is in

2  Chapter 2 of Title 21.  Pursuant to OCGA212520, there are
   only certain individuals who can be a defendant in an

3

4  election contest and none of those individuals in -- in
   this context would be the Secretary of State, which is the

5

6  first reason for dismissing the Secretary of State in the
   election contest.

7

8      THE COURT:  Okay.  I didn't -- Josh, I didn't realize

9  you had to go back to the courtroom.

10     THE VIDEOGRAPHER:  Yes.

11     THE COURT:  Okay.
       THE VIDEOGRAPHER:  (inaudible)

12

13     THE COURT:  I didn't realize that they wouldn't let
    you go through.  Let me give you a chance to get set up

14

15 because that was not -- I didn't realize that.
       THE VIDEOGRAPHER:  I'm good.

16

17     THE COURT:  It gets confusing because everybody has a

18 right to be heard, and I didn't realize they wouldn't let
    you bring it in, okay.  But the fact that she -- that your

19

20 allegation is the Secretary of State should not be a
    defendant, let me hear that.  That doesn't apply to

21

22 anybody else.  Let me hear that one first.
       MR. RUSSO:  Yes, ma'am.

23

24     THE COURT:  I understand it's a motion to dismiss,

25 but it's an issue that's out in front.  Go ahead.

1        MR. RUSSO:  Of course.  Under OCGA212520,

2    subsection 2, a defendant is defined as -- as four
     different specific classes.  A defendant could be either

3

4    the person whose nomination election is contested such as
     the lieutenant governor elect in this case, the person

5

6    whose eligibility to seek any nomination or office in a
     runoff primary or election is contested, the election

7

8    superintendent or superintendents who conducted the

9    contested primary or election, or the public officer who

10   formally declared the number of votes for and against a

11   ballot question submitted to the electors at an election.
              Under the Georgia Election Code, the Secretary of

12

13   State is not an election superintendent.  Secretary of
      State does not conduct elections.  Elections are conducted

14

15   in the State of Georgia by -- at the county level, by the
     county superintendents.

16

17        Under the definitions, the general definitions that

18   are applicable to the Georgia Election Code, a
     superintendent is specifically defined in 2122, 2,

19

20   subsection 35, as either a judge of the probate court of a
      county or the County Board of Elections, the County Board

21

22   of Elections and Registration, the joint City and County
      Board of Elections, or the joint City Board of Elections

23

24   and Registrations, if a county has one.

25        And there are -- there are three other categories,

1    which apply to municipal elections.  None of those are

2    applicable here.  As Your -- as Your Honor can tell here,
     you know, the plain language in the definition does not

3

4    include the Secretary of State, and -- and -- and that
     really goes to the fact that the Secretary of State,

5

6    again, doesn't conduct elections.
          Where the Secretary of State -- the Secretary of

7

8    State is obviously involved in voter registration and must

9    maintain a statewide voter registration database, but that

10   doesn't make the Secretary of State a superintendent.  The

11   county -- the -- the plaintiffs have alleged that or have
     argued that, you know, since it's a statewide election

12

13   involving a lieutenant governor, that the Secretary of
     State must -- must be a proper -- must be a superintendent

14

15   and must be a proper party.
          The defendant -- or excuse me, the plaintiffs rely on

16

17   the case Mead vs. Sheffield, which involved a court of

18   appeals election contest, and in that case the -- in that
     case, it was a 2004 election contest in which one of the

19

20   -- the contestant missed the runoff by about 380 votes,
     because he had -- there was the wrong -- and there was a

21

22   wrong name on the ballot.
          We do not know why the Secretary of State in that

23

24   case was a party.  The plaintiffs claim that since she was

25   a party in that case, she -- the -- current Secretary of

1    State must, you know, must be a party in this case.

2         Of course, there's -- there's no precedent --
     precedential value in that case on that precise point.
3

4    That said, what the Mead vs. Sheffield case does highlight
     is that even in an election contest involving a statewide
5

6    race, election contest is filed against the county
     superintendents, which it was Laurens County in that case,
7

8    where there alleged irregularities that occurred in that

9    particular county.

10        And that, you know, indicates where there is an

11   alleged irregularity involving an -- an illegal ballot as
     opposed to an illegal vote, the contestant must show that
12

13   the number of illegal ballots cast exceeds the margin of
     victory in order to prevail.
14

15        Again, this is -- the -- the reason the case was
     filed in Laurens County -- against Laurens County was
16

17   because that's where the irregularities occurred.  I know

18   my colleagues at the -- that represent the other
     defendants, the county defendants will probably be
19

20   speaking to this issue, but Mead vs. Sheffield is clearly
     inapplicable here.
21

22        Plaintiffs also argue that the definition of election
     superintendent in the Recall Act of 1989, which is
23

24   Chapter 4 of Title 21, must apply to the Election Code.

25        Your Honor, I mean, it's a fundamental rule of

 1    statutory construction that it's -- it's presumed that the

 2    legislature acts intentionally and purposefully when it
       includes particular language in one section of a statute

 3

 4    but omits it from another.  And that's Tolson v. Sistrunk,
       332-Georgia at 324 from 2015.

 5

 6         Now in this rule of statutory construction is applied
       to the present case, it's clear that the word

 7

 8    "superintendent" as used for purposes of election contest

 9    is -- is -- is referring to County Boards of Elections and

10    Registration or county probate judges, and that's for

11    counties that don't have, of course, a Board of
       Registrations and Elections.

12

13         Finally, Your Honor, the plaintiffs have made an
       argument about -- that -- that a public officer who --

14

15    that -- that the fourth subsection to the definition of
       "defendant" that discusses, you know, that a defendant can

16

17    be a public officer who declares the number of votes for

18    and against a question, submitted to -- submitted to the
       electors in an election that that somehow must wrap in the

19

20    Secretary of State also, but, Your Honor, of course, a
       question -- the question is defined to be, you know,

21

22    constitutional amendments or propositions, ballot
       referendum items that -- that voters vote on this, that

23

24    has nothing to do with election contests involving

25    candidates for public office.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 38

1        And we would say that there's -- there's no basis for

2    making that -- that leap that the plaintiffs are -- are
      asking the Court to make.  As Your Honor knows, election

3

4    laws that are in variegation to common law must be
      strictly construed here.

5

6        There's -- there's no basis for expanding the
      definition of "superintendent" to somehow wrap the

7

8    Secretary of State up into this election contest.  The

9    proper defendants would be the counties, the county

10   superintendents in each county where the plaintiffs are

11   aware of election irregularities.
              Now that moves to the next -- the next issue, and as

12

13   Your Honor pointed -- stated --
              THE COURT:  (inaudible)

14

15       MR. RUSSO:  Well, within the four corners of -- of
      the complaint or the -- the petition.

16

17       THE COURT:  Let me take the one issue, okay.  Are you

18   arguing the motion to dismiss now?
              MR. RUSSO:  I'm still arguing the motion to dismiss,

19

20   just moving past whether --
              THE COURT:  That's not relevant here.

21

22       MR. RUSSO:  Oh, I'm sorry.  I apologize.
              THE COURT:  No, -- go ahead.

23

24       MR. RUSSO:  Okay.  The plaintiff's election contest

25   is also subject to dismissal for failing to meet the --

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 39

```
 1   the pleading requirements.

 2       THE COURT:  Okay.  That I'd like to take separately.
         MR. RUSSO:  Okay.
 3

 4       THE COURT:  Let's take each step.  That's what I said
     in the beginning.
 5

 6       MR. RUSSO:  Okay.
         THE COURT:  Let's take each step.  You'll get to
 7

 8   argue that.

 9       MR. RUSSO:  No, I understand.  I -- I thought you

10   meant each step -- I got you.

11       THE COURT:  Let's -- the first issue before me is, is
     the Secretary of State a proper -- okay.
12

13       MR. RUSSO:  Sure.
         THE COURT:  All right.  Anybody else on the defense
14

15   might want to bring a -- how about you, Mr. Brown?
         MR. BROWN:  Thank you, Judge.  Bruce Brown for the
16

17   plaintiffs.  The issue of whether the Secretary of State

18   is a proper defendant is actually -- it touches upon two
      arguments that they make that are virtually the same.  The
19

20   first is whether the Secretary is a proper defendant and
      second whether the Secretary has sovereign immunity.
21

22       If the Secretary of State is a proper defendant, then
      the sovereign immunity has been waived.  The -- the
23

24   plaintiff's argument with respect to both issues is that

25   the election statute says defendant means election
```

```
 1   superintendent.  That is OCGA212250.  The code then

 2   defines election superintendent.
          THE COURT:  Are you saying 212250?  520.
 3

 4       MR. BROWN:  I'm -- I'm sorry.  520.
          THE COURT:  520.  So y'all know, I have the book.  I
 5

 6   don't necessarily have access to this particular computer,
      and so I -- bring this book down with me.
 7

 8       MR. BROWN:  I apologize, Your Honor.

 9       THE COURT:  It's 220?

10       MR. BROWN:  220.  I keep transposing those numbers.

11       THE COURT:  Yeah.  Don't confuse them.
          MR. BROWN:  And then the phrase "election
12

13   superintendent" means in a statewide election the
      Secretary of State.  That is defined in OCGA2143.  Now, it
14

15   is correct that that definition of "election
      superintendent" as the Secretary of State is in a
16

17   different chapter of the code.

18       However, there's no reason to believe that the
      legislature, in using the term election superintendent in
19

20   the contest chapter, meant anything different and, in
      fact, commonsense would require that in a statewide
21

22   election that the proper defendant who is conducting the
      election is the Secretary of State.
23

24       Particularly when the irregularity that is alleged is

25   an irregularity that is statewide in every single case.
```

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 23

```
 1          Now the defendants, the Secretary of State option for

 2    Your Honor, is to rule that in the statewide election
      contest that the plaintiff must join 159 counties, and
 3

 4    so --
            THE COURT:  Well, we haven't gotten to that yet,
 5

 6    either.
            MR. BROWN:  But this is -- but, Your Honor, it's the
 7

 8    same -- I would -- it's the same argument in that -- the

 9    -- they're saying that they are not proper, but instead

10    the proper defendants are the 159 counties.

11          And we -- we think that's absurd and that's not what
      the legislator -- legislature intended.  And it's not what
12

13    the legislature said.
            Moreover, Your Honor, there has been, as far as we
14

15    know, only one statewide election contest on record, and
      that is the Mead vs. Sheffield case, which Mr. Russo
16

17    discussed.  And in fact, in the Mead vs. Sheffield case

18    the attorney general defended and did not raise the
      sovereign immunity argument at all, and it's a
19

20    jurisdictional argument and it made it to the Supreme
      Court.
21

22          And it was clear to the Secretary of State and the
      attorney general at the time, Your Honor, that our reading
23

24    of the statute and commonsense meant, of course, that the

25    Secretary of State who is in charge of the elections is
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 42

1  the proper defendant in the statewide election contest.

2       Now, Mr. Russo said something to the effect, well,
   that was several years ago.  I'm not sure why the

3

4  Secretary -- Secretary of State did it then, or why the
   former Secretary of State and former attorney general took

5

6  that position.  I would like -- if I may approach, I found
   a case yesterday, Your Honor, which I believe is

7

8  instructed.  But I'd like to approach the bench with a

9  copy of some of the papers, if I might.

10      THE COURT:  All right.  If you want to -- we don't

11 have a clerk because this is a Fulton County case.  Thank
   you.  So, it's just a brief?

12

13      MR. BROWN:  It's a brief and then the case is
   attached to it, Your Honor.

14

15      THE COURT:  I'm not going to -- I'm not going to take
   somebody else's brief.  You want to argue it, fine, but

16

17 I'm not going to -- somebody else's brief and somebody

18 else's case is not -- and has got nothing to do with that.
        MR. BROWN:  Fair enough.  If the -- the case, which

19

20 follows the copy of the brief, is a case called Dawkins-
   Haigler vs. Anderson.  It's reported at 301-Georgia-27.

21

22 In that case, the Secretary of State was sued.  And I
   quote, it's "Brian Kemp in his official capacity as state

23

24 election supervisor."  That was the capacity in which he

25 was sued.

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019                    Page 25

```
 1        The -- the case was defended by Chris Carr, attorney

 2   general, Dennis Dunn, Willard Chris Corea, the same
      attorney general law department lawyers who were defending
 3

 4   this case along with outside counsel from the Robbins
      firm.  This is a case that was -- was tried last year,
 5

 6   Your Honor, and in that case the Secretary of State was --
           THE COURT:  Has there been an appellate decision on
 7

 8   the case?

 9        MR. BROWN:  Yes.

10        THE COURT:  Okay.

11        MR. BROWN:  It is 301-Georgia-27, and in that case
      the Secretary of State was sued quote "in its official
12

13   capacity as state election supervisor," and that styling
      of the Secretary of State appears in his own brief, which
14

15   is what I had shown to you, but the important thing is the
      reported decision, and in that case also the Secretary of
16

17   State stood up and defended the case on the merits.

18        THE COURT:  Okay.  If you want to give me -- but you
      know, if you've got a decision, let me have the final
19

20   decision, but what somebody else may have said and it's on
      the report, it's not relevant --
21

22        MR. BROWN:  Your Honor the -- what the law department
      -- the position the law department said it is not binding
23

24   either on the law department or anybody else.  They can

25   change their mind, of course, and not binding on Your
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 44

 1  Honor.

 2      However, it is reflective of what the law is, and the
    law says that defendant means election superintendent and

 3

 4  the law says "election superintendent" in a statewide race
     means the Secretary of State.  So, our argument is that

 5

 6  the statute is clear.
             There is no case in the history in the State of

 7

 8  Georgia holding that the Secretary of State has sovereign

 9  immunity in an elections case.  No case at all.  They are

10  asking Your Honor to make a precedent setting, a brand-new

11  decision.  It will be the first ever that ever granted
     this -- this relief.

12

13      THE COURT:  If that's meant to intimidate me, it
    doesn't.

14

15      MR. BROWN:  I don't think it should -- should
    intimidate you, Your Honor.

16

17      THE COURT:  Well, you -- I've read a lot of what

18  you've provided me.  I have not read the proffer of
     evidence because it's not relevant today --

19

20      MR. BROWN:  I understand.
         THE COURT:  -- and I understand where you're coming

21

22  from.
         MR. BROWN:  Okay.  Thank you, Your Honor.  That's our

23

24  argument on the sovereign immunity and the Secretary of

25  State being a proper defendant.

 1        THE COURT:  Okay.  Any responses on that issue?

 2        MR. RUSSO:  Briefly, Your Honor.  As you rightly
    noted these cases, this -- this brief and the cases cited

 3

 4  by plaintiff's counsel have no precedential value and
    basically stand for nothing on this -- on this point.

 5

 6        Plaintiff's counsel stated that the law says that in
    a statewide case, the superintendent is the Secretary of

 7

 8  State.  Your Honor, I can't find anything on the books or

 9  in the code that -- that says such.

10        Even Chapter 4, even the Recall Act that plaintiff's

11  counsel has referred to multiple times, states that in any
    case of elected state officers the Secretary of State --

12

13  and in short, you know, if somebody wants to challenge --
    if there's a group that wants to recall a public officer

14

15  or state officer, they have to go get a petition signed.
            And that petition then goes to the Secretary of

16

17  State.  It's similar to a third-party candidate or an

18  independent candidate trying to get on the ballot in a
    statewide race.  None of this -- the Recall Act, of

19

20  course, has nothing to do with election contests, similar
    to independent candidates trying to file in a petition to

21

22  get on the ballot has nothing to do with election
    contests.

23

24        Your Honor, again, we don't know why or -- or if this

25  issue has -- was raised in -- in the 2004 case.  However,

1   you know, the Secretary of State is not a statewide

2   election superintendent.  Georgia law has long held that
     elections are -- are conducted at the county level and if

3

4   a contest is going to be filed, then it should be filed
     against the counties where those irregularities occurred.

5

6        And so again, we would ask you to dismiss the
     election contest on -- on that basis.

7

8        THE COURT:  Okay.  This goes to count 1 as I

9   understand it, and 2125 -- this is Section 2 of 21, which

10  is the election contest, okay, it -- it states that the

11  election superintendent was superintendent to conduct a
     contested -- or election, okay.  What it says, in 2- --

12

13  again, this is within the same code, 212235 defines who
     those are.

14

15       It defines who the superintendents are, and it does
    not include Secretary of State.  That's the law, and

16

17  definitions applicable to Section 2, okay.  Now there may

18  be in the recall, which is Section 4, that that may be
     different, but it's under a different code section.  It's

19

20  under a different section of the code.  So as far as the
     election contest goes, count 1, I find the Secretary of

21

22  State is not a proper party, okay.  And so, I'll grant
     your motion.  -- I'll put my, you know, -- as to count 1,

23

24  okay.

25       MR. RUSSO:  Yes, ma'am.  Thank you,

1       THE COURT:  Okay.  What's the next question?

2       MR. RUSSO:  I think some of my other motions are
    mooted at this point, so do you want to --
3

4       MR. BROWN:  Your Honor, it would be best at this
    point for Gwinnett County to make its proper party
5

6    argument or would you rather hear from the Secretary of
    State on the constitutional claims, counts 2 and 3?
7

8       THE COURT:  Well, you've got a motion to dismiss on

9    -- what, just on the general --

10      MR. RUSSO:  Well, we have one every --

11      THE COURT:  You just got a routine motion to dismiss
    on the four corners of the petition.
12

13      MR. RUSSO: That's right.  We just had -- had other
    reasons why it should be dismissed.
14

15      THE COURT:  I guess, Mr. Brown -- I guess I'd hear
    from Gwinnett first as to whether they should be a party
16

17   and then Fulton whether they should be a party.  And then

18   we'll go into the -- if that's all right with you.
            MR. BROWN:  Thank you, Your Honor.
19

20      THE COURT:  Okay.  Okay --
            MR. TYSON:  Thank you, Your Honor.  Good morning.
21

22   Bryan Tyson for Gwinnett County Board of Registrations and
    Elections.
23

24      For our motion to dismiss, Your Honor, I think if we

25   determined now, if we've determined that the Secretary of

1   State is not a proper party to an election contest, I

2   think the logical questions is, well, who then is a proper
    party?

3

4        For -- for us as Gwinnett County, there is no
    question that the Gwinnett Board is an election

5

6   superintendent who conducted the contested election.  So,
    there's no issue there.  The challenge in this scenario is

7

8   that the plaintiffs have not sued all the parties that are

9   required to afford them full relief and Mr. Russo

10  referenced the Mead case where the case was filed against

11  the county's where the problem was alleged in a statewide
    election contest.

12

13       And if you look at and kind of do a comparison
    between 520 and 522, I think it helps explain a little bit

14

15  about how there's a connection between the grounds of the
    contest and who the defendant is in those cases.  So,

16

17  under the -- under 520-2A and B, you have a candidate

18  who's the defendant -- the person who was nominated, the
    person whose eligibility is challenged.

19

20       That lines up to 522-2 where the allegation in the
    election contest is that the defendant, the candidate is

21

22  not eligible to hold the office.  And so, in those cases
    where you're challenging eligibility, the other candidate

23

24  is obviously a logical defendant.

25       For 3, the election superintendent in 520 who

1    conducted the contested primary, that's where you have the

2    allegations on the grounds related to misconduct, related
      to illegal votes being cast or legal votes being rejected

3

4    or errors in counting.
             And in this case the plaintiffs have made a number of

5

6    allegations about the various problems across the state,
      but they've only sued now Fulton and Gwinnett counties, as

7

8    is evidenced by other motions they filed, they want to

9    preserve evidence in Murray and Gordon counties.

10          There are allegations regarding DeKalb, regarding

11   Worth County, regarding a variety of other Georgia
      counties that are not parties to this case.  And the

12

13   challenge in this situation is they have the evidence that
      Your Honor needs to be able to figure out is this a valid

14

15   contest or not.
             If this is not a scenario where you can just pick a

16

17   county and then make allegations regarding and number of

18   other counties when they're not parties to the case and
      can't get -- get in front of the court.

19

20          The -- in addition, there is a lack of allegations
      regarding Gwinnett County as to some of the specifics.  A

21

22   lot of the specific allegations involve other counties,
      many of whom are not parties.  The other counties are the

23

24   ones that have the evidence.

25          So, for our position as Gwinnett, we believe this is

1  the basis for dismissal, because not only did plaintiffs

2  fail to name the proper parties to start with, but it's
   now too late for them to amend.

3

4      And while the election contest procedures clearly
   allow amendment of the petition, there's a difference when

5

6  you're amending to add additional parties.  And the only
   the Supreme Court case en pointe here is Brody vs.

7

8  Champion.  And in that case the -- the contestant had

9  filed the case against the director of elections for

10 DeKalb County, but had not sued the Board of Elections.

11     And the Supreme Court said, yes, you can modify, they
   were on notice within the statute; that's not a problem.

12

13 The Hanson case that the plaintiffs have cited involved a
   different procedure under a municipal election code that

14

15 involve a direct appeal or an independent lawsuit.
          It's not really relevant here.  What is relevant is

16

17 we are now beyond the five-day statute or well beyond

18 that.  And the relation back under 9/11/15, there's
   nothing that the plaintiffs needed to know at the time

19

20 they filed their lawsuit where they couldn't have named
   the counties that are going to have evidence that they

21

22 claim they need.
          In their petition they identify.  These are the same

23

24 counties are the worst -- have the worst questions about

25 these percentages.  They had anecdotes from counties that

1  were not included as parties in the case.  So now because

2  we're too late to be able to do an amendment and add --
   and have that relate back to the original filling date,

3

4  the statute has run as to those counties.
        It is our position that those are necessary parties

5

6  in order to give full relief in this case.  And because
   those parties were not joined, that's a basis for a

7

8  dismissal of the entirety of the election contest, as to

9  those allegations that have been made by the plaintiffs.

10      THE COURT:  Anybody else on the defendants' side that

11  want to support that position?  And pardon me -- argument
    at the same time.

12

13      MS. BURWELL:  Kaye Burwell on behalf of Fulton
    County.  We join in that argument, Your Honor, and we

14

15  would add that when the Court looks at the complaint in
    Paragraph 38, it references that there were thousands of

16

17  problems they alleged with the DRE machines where clearly

18  Gwinnett and Fulton County aren't in a position to speak
    to those thousands of problems.

19

20      The only issues we could speak to would be any issues
    they alleged on our particular counties.  And since this

21

22  is a statewide issue, they're alleging the only way they
    would be able to bring information to the Court and the

23

24  only way the Court would be able to have a full and fair

25  hearing is if all those other counties that they're

1    complaining about, where they allege all these issues

2    occurred, were to be able to come in.
            And as we noted on our motion to dismiss, Your Honor,
3

4    the Fulton County Board of Registrations and Elections
      can't provide the petitioners with the relief they seek
5

6    because the DRE is constrained to follow state law.  And
      they have to use the DRE machines because that's what
7

8    state law requires.

9         And the only response the plaintiffs provided to

10   that, Your Honor, was that absentee ballots could be used,

11   but clearly the DRE doesn't have the ability to force
      every Fulton County voter to use an absentee ballot.  The
12

13   voters get to decide how they choose to vote.
            THE COURT:  You're off the -- you're off the --
14

15   you're off the field.  So right now, so they join all the
      counties, or shouldn't they?
16

17        MS. BURWELL:  They should have joined all of the

18   counties, Your Honor.
            THE COURT:  That's the issue we're figuring with them
19

20   on this motion.
            MS. BURWELL:  Okay.
21

22        THE COURT:  I'm trying -- I'm trying to do as clean a
      record as I can.
23

24        MS. BURWELL:  Okay.

25        THE COURT:  Okay.  So, you'll be heard on that.

1    Everybody's going to get heard on everything, okay.

2         MS. BURWELL:  Okay.
          THE COURT:  I don't want to make you -- I'm just
3

4    trying to make a nice, clean record of the -- of the case.
          MS. BURWELL:  Yes.
5

6         THE COURT:  Okay.  So, you -- you -- you agree that
     they have joined -- they should have seen everybody.
7

8         MS. BURWELL:  Yes.

9         THE COURT:  Okay?  Every county, okay.  Anybody else?

10   No?  Okay.  Then you can, because you didn't find the

11   word --
          MR. BROWN:  (inaudible)
12

13        THE COURT:  (inaudible)
          MR. BROWN:  Thank you, Your Honor.  The Fulton
14

15   County's argument points to sort of the overall issue of
     how the plaintiffs are getting whip shot here.  Fulton
16

17   says, we can't defend this because the Secretary of State

18   does everything.
          THE COURT:  No.  Don't go there.  The issue we're
19

20   dealing with, the only issue I'm trying to read right this
     minute is, should you have joined 159 counties or not?
21

22        MR. BROWN:  No, Your Honor, and here's why.
          THE COURT:  Okay.  That -- that's the issue.
23

24        MR. BROWN:  We -- we have -- first, we have alleged

25   causes of action against Gwinnett and Fulton.  Our

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 54

1   allegations cover -- they are proper defendants as they --

2   I think, believe as they have conceded, that they've --
    they conducted the election.

3

4        And we have alleged that the irregularities occurred
    in their counties, and they occurred in every county.  And

5

6   so, Fulton and Gwinnett are proper defendants, and so they
    stay.  The question then is, should the other -- should

7

8   157 other counties have been joined?

9        That comes down into two separate questions, okay.

10  First is, what might we need discovery from 157 other

11  counties and from a non-party Secretary of State.  The
    answer is, yes.  We will need discovery from the Secretary

12

13  of State, and we'll need discovery from -- from other
    counties, maybe.

14

15       We don't believe actually that substantial discovery
    will be required from every county.  And the reason for

16

17  that is that the Secretary of State, not as a party, Your

18  Honor, I'm not arguing that piece, but as the repository
    of the information.

19

20       The Secretary programs the ballots, programs all the
    machines, programs the poll books, tabulates the results,

21

22  announces the results, all of those things.  And so, the -
    - so the Secretary is here within the jurisdiction of this

23

24  court -- to court -- to respond to discovery.

25       In addition, Your Honor, has plenary power, plenary

 1    power in the statutes that we have cited, to grant the

 2    relief that we're seeking.  There's no requirement that we
       file suit against every county.  Instead, the counties

 3

 4    that we have sued are proper.
            And whether we can prove that is up to the next

 5

 6    hearing, it's not up to today.  But we believe we can
       prove that through discovery.  And that the 157 counties

 7

 8    are not necessary to be joined.  If they are necessary to

 9    join them, then we'll join them and that's a separate

10    issue.  Thank you, Your Honor.

11         THE COURT:  Anything further?  Anything further?
            MR. BROWN:  I have nothing further, Your Honor.

12

13         THE COURT:  We have to do these cases as fast as we
        can do them, and I respect that, and I'm trying to do this

14

15    as fast as I can.  But given the status of what is
       actually before me, not all this 180 pages of evidence and

16

17    all this stuff I've been dumped on, and which -- anyway.

18    I won't go there.  It's very hard for me to be able to
       download some of that stuff.

19

20         But I've done them.  I've taken them off.  But in
        that status, I'm going to deny your motion.  Whether it

21

22    will become relevant at the end of the hearing, I don't
       know.  But at this point, both those motions as to adding

23

24    the parties and as to them being improper parties --

25         MR. BROWN:  Thank you, Your Honor.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 56

1       THE COURT:  Does Gwinnett have any other motions

2   applicable just to Gwinnett?
            MR. RUSSO:  No, Your Honor, I don't believe we do.

3

4   We obviously join the other motions regarding kind of the
     -- claim.

5

6       THE COURT:  (inaudible)
            MR. RUSSO:  There is a complaint, I think that's it,

7

8   so.

9       THE COURT:  Okay.  Fulton, you've got it.  Anything

10  else that you wanted to say?  Come around, if you will.

11  I'm sorry to address you by county, but I have a cheat
     sheet here with everybody's name, and I think I've lost

12

13  it.
            MS. BURWELL:  The -- the point I was making on

14

15  whether or not Fulton County was a proper party was that
     the Fulton County Board of Registrations and Elections

16

17  isn't capable of providing the petitioners with the relief

18  that they're seeking, which in essence is changing out DRE
     machines.

19

20      They don't want Georgia citizens to use the DRE
     voting system.  Well, Fulton County, like every other

21

22  county in the state, is constrained by state law to comply
     with state law, which requires us to use the DRE machines.

23

24      Now, the response that plaintiffs had to our motion

25  to dismiss was merely, number one, that the Board of

```
 1   Registrations and Elections could require citizens to vote

 2   via absentee, and that's clearly not the case.  Citizens
      get to decide how they vote, not the Board of
 3

 4   Registrations and Elections.
           The only other issue they raised was OCGA21-2-366 and
 5

 6   they raised that for the proposition of saying that
     "Fulton County in fact could decide what kind of voting
 7

 8   system is in use" and that's just not the case.  What the

 9   Court looks at 21-2-366, it only provides that the

10   governing authority of a county, which is not the Board of

11   Registrations and Elections, it's the Board of
      Commissioners -- can authorize the use of optical scanning
12

13   voting systems.
           Well, the Board of Commissioners is not a party to
14

15   this action; the Board of Registrations and Elections is.
      And so, the -- our position is that the county's position
16

17   with respect to whether or not it is a proper defendant is

18   unrefuted by the plaintiffs.
           And then the only other issue we had raised, Your
19

20   Honor, was the lack of service.  At the time we filed our
      motion to dismiss, they had not served.
21

22         THE COURT:  They had not served?
                                                            th
           MS. BURWELL:  Yes, they served us on December 26 .
23

24         THE COURT:  All right.

25         MR. BROWN:  Your Honor, I believe Your Honor's
```

 1    already ruled that Fulton and Gwinnett are proper parties.

 2    And I'm not sure I understand Fulton's argument that
       they're incapable of -- of conducting the elections.   I
 3

 4    think that's an issue that may come later in terms of what
       sort of remedy that you offer, Your Honor.
 5

 6         Our position is that, number one, when you have the
       trial, the -- we will be able to show that a new election
 7

 8    should be ordered; that's the first argument.  The second

 9    argument is, if you do order a new election, on what

10    machines or what is -- what type of election should that

11    be?  Should that be machines, or should that be paper?
            And that's what Fulton County is talking about is
12

13    really two or three issues; two steps away from where we
       are today.  Our position will be that Fulton County is
14

15    capable of -- of conducting a paper ballot election
       without using these flawed machines.
16

17         And that that's authorized under the code provisions

18    that -- that we have cited.  And that they don't need a
       Secretary of State's approval to do that, but certainly
19

20    Your Honor could order them to do so, if you've felt that
       was necessary, but again I think that's --
21

22         THE COURT:  Asking further from Fulton County?
            MS. BURWELL:  No.
23

24         THE COURT:  Okay.  I'm going to deny that, again at

25    this point when you all stop talking, arguing the

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 41

```
 1   evidence, then the motion to dismiss this is doing a lot,

 2   okay.  Does that mean -- after we have a -- have a hearing
      on the matter, I don't know.  But I'm happy to try it.
 3

 4       But right at this point, I'm bound by what the rules
      say.  That's if a slight -- allegations are -- I have to
 5

 6   follow.  Okay, so we haven't generalized the motion to
      dismiss, did you need to be heard on that as well.
 7

 8       MR. RUSSO:  No, not on that issue.

 9       THE COURT:  I didn't think so.  This is generalized.

10   Everybody seems to have generalized motions dismissed on

11   the pleadings.  Let me hear that.
         MR. RUSSO:  Would you like to hear from --
12

13       THE COURT:  On count one.
         MR. RUSSO:  Sure.  Would you still like to hear from
14

15   us or --
         THE COURT:  Whatever order you want to do it.
16

17       MR. BELINFANTE:  I mean, I'm happy to make our

18   argument.  I'm happy to make our arguments on it.
         MR. LINDSEY:  Your Honor, Edward Lindsey once again,
19

20   attorney on behalf of Lieutenant Governor-elect Geoff
      Duncan.  As was previously stated, Mr. Duncan won his race
21

22   by over 123,000 votes.  I'm going to go through some
      numbers, Your Honor, and I'm going to ask you to simply
23

24   take judicial notice, which I believe you're entitled to.

25   As a matter of public records; in terms of public records.
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 60

1        The case I'll cite for taking judicial notice would

2   be Johnson vs. Adams 323-Georgia-PO427 and that particular
     case that was taking judicial notice of a separate lawsuit

3

4   of a -- separate case in bankruptcy court, but
     nevertheless, the rule is that the courts in a motion to

5

6   dismiss, I believe, courts can take judicial notice of
     such matters.

7

8        And the only thing that I'm going to be talking about

9   are the official numbers from the Georgia Secretary of

10  State's office, certified numbers.  Court, in such cases

11  such as ours needs to remember that the setting aside of
     an election in which the people have chosen their

12

13  representative, is a drastic remedy that should not be
     undertaken lightly, but instead should be reserved for

14

15  cases in which a person challenging an election has
     clearly established a violation of elections procedures.

16

17       And has demonstrated that the violations have placed

18  the result of the election in doubt; that's not our
     assertion, Your Honor.  That's a big court decision.  In

19

20  the case of Hunt vs. Crawford 270-Georgia-7, a 1998
     decision in my brief we filed yesterday, Your Honor, we

21

22  sort of outlined that that's -- what's clearly required is
     that the plaintiffs --

23

24       And at this point, Your Honor, that the pleadings

25  must show that the plaintiffs are asserting that as result

1    of the defects that they are alleging, that it places the

2    -- the outcome of the election in doubt.  And the courts
     have established somewhat of a mathematical test.

3

4         And I'm glad to hear that you said you were a math
     major, so I'm going to simply talk about a little math

5

6    here.  The -- the plaintiffs, you know, or the petitioners
     have alleged several things.  On number one they say, that

7

8    "as a result of these nefarious defects, the -- the total

9    number of votes cast in the lieutenant governor's race was

10   dramatically below those of other down-ballot statewide

11   races."

12            Well, if you look at our particular case, like I

13   said, 123,000 votes, 123,172 votes; that's the certified
     result number.  If you look at the -- the -- the highest

14

15   number of votes that were cast in any of the down-ballot
     races -- that would be the Secretary of State's race.  And

16

17   in that race, there were 3,883,594 votes total cast.

18        In the lieutenant governor's race, that's 3,780,304.
     So even if we were to accept -- and the Court is required

19

20   to do here -- the petitioner's allegations that there was
     something nefarious or -- or negligent in terms of the

21

22   counts, votes that were counted.
            The difference between what took place in the

23

24   lieutenant governor's race total votes and the Secretary

25   of State's total votes is only 103,290 votes.  That's

www.huseby.com              Huseby, Inc.  Regional Centers              800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 44

1    19,882 votes short of the margin of victory that Mr.

2    Duncan enjoyed.
           The next thing that the -- that the petitioner

3

4    asserts in its allegation is that there was a drop-in vote
      between those -- in -- in terms of the drop-offs, which

5

6    are the number of people who voted in one race but didn't
      vote in the another.  They assert that there's a dramatic

7

8    difference between the drop-off between the governor and

9    the lieutenant governor's race, and between the paper

10   ballots versus the electronic voting.

11         And they assert essentially that in the paper ballots
      there was a drop-off of only 98.9%, but in the other case

12

13   there was a dramatic drop-off below that number.  If you
      were to accept their assertion that there should have been

14

15   the same drop-off between the governor's race and the
      lieutenant governor's race, the numbers still come up

16

17   short as a matter of math.

18         In this particular case, Your Honor, if we were to
      accept the petitioner's allegations that there's -- that

19

20   the drop-off between the governor's race and the
      lieutenant governor's race should have been the same

21

22   between the write-in, between the paper ballots and
      electronic ballots that would have raised the number of

23

24   votes cast in the lieutenant governor's race to 3,895,955.

25         That's still, Your Honor, would have only increased

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 63

1   the number of votes cast to be 115,691 votes, which is

2   still below 123,000-plus votes cast.  The third allegation
    that the petitioner asserts in their petition is that

3

4   there was in terms of the drop-off between -- in the
    electronic voting between those who voted in the

5

6   governor's race and the lieutenant governor's race had a
    particularly negative impact on the democratic candidate

7

8   Ms. Miko.

9       If you were to take that as truth and simply allow

10  for the same percentage of votes for Ms. Miko that Mr.

11  Duncan enjoyed in terms of -- of the -- the percentage of
    votes that they received versus the gubernatorial race,

12

13  you still end up 53,902 votes short of what the -- of the
    number that is needed that would have closed the gap at

14

15  53,902, so in other words you're still short of 123,000
    votes.

16

17      And -- and that's the key -- and that's the key.  In

18  all cases, in the Supreme Court cases, is you've got to
    have a show that the number of votes that were either

19

20  miscounted or not counted properly would have wiped away
    the margin of victory that the winner enjoyed.

21

22      And we've cited several cases as have everyone else
    that demonstrates that's the rule of thumb.  By the -- in

23

24  terms of petitioner's allegations -- each of their

25  allegations, Your Honor, I want you to take judicial

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
**Transcript of Hearing Proceedings on 01/09/2019**                     Page 46

```
 1    notice of certified results from the Secretary of State.

 2    They fall short of that golden number, by any number
       between 8,000 to 80,000 votes short, depending on the --
 3

 4    their various allegations.
            I would point out, Your Honor, that the petitioners'
 5

 6    themselves in their exhibit to their petition included an
       exhibit from a letter from Ms. Amico who said in the
 7

 8    letter, "the number of residual votes in the lieutenant

 9    governor makes it unlikely to affect the outcome of my

10    race." She's right, Your Honor, because she also

11    understands the math.
            So, Your Honor, we would simply ask for a motion to
12

13    dismiss based on the petitioner's petition when you take
       judicial notice of the public record regarding the
14

15    certified results from the election from all the races.
            Thank you, Your Honor.  Does the Court have any
16

17    questions?

18         THE COURT:  No.  Anybody else --
           MR. TYSON:  Yes, Your Honor.  Thank you, Your Honor.
19

20    Again, Bryan Tyson for Gwinnett County.
            I think the thing to keep in mind is that when we're
21

22    in this posture after a certified result from an election,
       the election is presumed valid.  And if you were in a
23

24    scenario where, let's say you have 100-vote margin.

25         And you allege, you put in your petition that 99
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 65

Case 1:17-cv-02989-AT   Document 449-10   Filed 07/03/19   Page 66 of 154

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 47

 1   either illegal votes were cast or legal votes were

 2   rejected, that petition would be properly subject for
     dismissal for failure -- failure to state a claim, because

 4   you have to allege a sufficient number of votes that would
     have placed the result in doubt or would have been

 6   sufficient to change the result of the election.
           And in this case, the plaintiffs have not made any

 8   such allegation in their petition. In addition, the --

 9   there is conflicting causes of action referenced in the

10   motions to dismiss.  In the petition the plaintiffs that

11   they say that they're proceeding under 521-1 and 3.
           In their response to the motion to dismiss, they're

13   relying on 1, 3, 4, and 5, but I think the most important
     thing for the Court to remember in terms of looking at the

15   petition itself, is what it stated, is that the
     irregularities that the plaintiffs have alleged only

17   involve a 100 or so votes here and there across the state.

18       They also involve claims of machine malfunction in
     DeKalb County in paragraph 42 of the complaint.  Of

20   course, the plaintiffs have dismissed DeKalb County from
     this lawsuit.  And the -- the collection of information

22   that's in the petition is a bunch of kind of one-off
     programming errors.

24       Most of them are unverified and anonymous, and

25   significantly they don't get anywhere close to the

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 66

1   123,000-vote threshold that they would -- that the

2   plaintiffs had to plead in order to state a claim here
    because of the way the Supreme Court precedent works.

3

4        I'm in Ellis vs. Johnson 2623-Georgia-514, the
    Supreme Court is very clear that speculation alone is not

5

6   enough.  There has to be -- has to be a specificity in
    terms of the mathematical certainty of what happened.  And

7

8   we see that over in Mead, in Howell, and in just a number

9   of Supreme Court cases, that it is proper for the court to

10  look at motion to dismiss, first of all, because those

11  cases were decided based on motions to dismiss.
            But second that it's proper to look at the

12

13  allegations and see have the plaintiffs alleged this
    123,000-vote margin that would be sufficient to place the

14

15  result in doubt.  And we would submit that they have not
    done that in the four corners of their petition.  On that

16

17  basis it should be dismissed for failure to state a claim.

18       THE COURT:  Does Fulton want to be heard on that?
         MS. BURWELL:  We join in, all the others.

19

20       THE COURT:  You just joining them now?
         MS. BURWELL:  Yes.  Thank you, Your Honor.

21

22       THE COURT:  (inaudible)
         MR. BROWN:  Thank you, Your Honor.  The -- the

23

24  defendants have pointed to one of the most egregious

25  pieces of evidence showing the total system failure of --

```
 1        THE COURT:  But -- but -- but that's not -- this is

 2  -- that's a wonderful opening statement.  This is not that
    day, okay?
 3

 4        MR. BROWN:  Okay.
          THE COURT:  Just respond, if you will, to what --
 5

 6        MR. BROWN:  Sure.  The --
          THE COURT:  I don't do well with --
 7

 8        MR. BROWN:  Okay.  The --

 9        THE COURT:  -- inflammatory -- just stay within what

10  we're -- what --

11        MR. BROWN:  Sure.  The undervote is an illustration
    of the system problems that we allege in the complaint.
12

13  Allegations that, as Your Honor has already mentioned,
    must be accepted as true.
14

15        THE COURT:  All right.
          MR. BROWN:  The -- the numbers that Mr. Lindsey was
16

17  giving, Your Honor, are not our entire case.  Instead what

18  we have alleged is that the system malfunctioned as
    reflected by the undervote, which is unexplained in -- in
19

20  ways that happened statewide.
          The defendants interpret -- we have a different
21

22  interpretation of the legal requirements here.  First in
    terms of what's subjectively required, and then second,
23

24  the procedural policy.

25        First, Your Honor, in the Supreme Court in the cases
```

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 50

1    in which the nature of the voting problem is not

2    quantifiable, the plaintiff is not required to count up
      the votes and show the difference.  For example, in the

3

4    Stiles case, 252-Georgia-260, the Supreme Court found that
      there were irregularities and misconduct and ordered a new

5

6    election despite no proof of the numbers involved.
              Similarly, in the Hunt case, although the contestants

7

8    lost the Hunt case, this is 270-Georgia-7 -- one of the

9    reasons why the plaintiffs lost is that the Court found

10   quote "moreover, there was no evidence introduced at trial

11   from which it can be inferred that the misconduct was more
      widespread than the record indicates."

12

13       The Supreme Court is -- is signaling that if there is
      evidence introduced at trial from which it can be inferred

14

15   that there was a widespread problem, that the case may be
      made.

16

17       And so the -- the cases that they cite we have no

18   quarrel with, Your Honor, but those are cases in which the
      impact of a mistake is easily quantifiable because you

19

20   have the illegal ballots sitting there physically in front
      of the Court, and you're able to count them up and to

21

22   determine whether or not it's enough to make a difference.
              And certainly, if you have seven illegal ballots in

23

24   front of you and the margin and difference is eight, then

25   you know that that's insufficient.  But in those cases

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 69

```
 1   where the mistake is not quantifiable, then that is not

 2   the approach that the Court has taken, and that, again, is
      the Stiles case.
 3

 4        And -- but this leads, Your Honor, back to the
      procedural posture of the case.  In all of these cases --
 5

 6   and I will just read these to you.  What the -- what the
      courts are saying about the evidence is after a trial, for
 7

 8   example -- these are not examples.  This is what I found

 9   in -- in review of all of the cases they have cited.

10        In Banker vs. Kohl, 378-Georgia-532, what the Court

11   said, quote "Evidence presented at the trial court," and
      then went on to explain.  In Dawkins-Haigler 30177, the
12

13   Supreme Court says, "after a lengthy hearing the trial
      court concluded..."
14

15        And then in Fuller 284-Georgia-397, the Court
      explained that the case proceeded to trial.  In Hunt vs.
16

17   Crawford, 270-Georgia-7, the Supreme Court said, at trial,

18   "Hunt admitted making telephone calls," and then went into
      the evidence of misconduct.
19

20        In Mead vs. Sheffield, the case that's discussed by
      both parties, the Court notes, "it was established at the
21

22   evidentiary hearing," and then went in to show how it was
      established, that in fact the case had been made for a new
23

24   trial.

25        Scoggins, again, 288-Georgia-26, the Supreme Court
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 70

1   said, "after hearing on the merits," and then explained

2   how in fact the plaintiff prevailed after hearing on the
    merits.  Your Honor, there is one case in which the trial

3

4   court did grant a motion to dismiss for failure to state a
    claim, and only one.

5

6       And that is the trial court in the Taggart case, 242-
    Georgia-454.  The trial court, without an evidentiary

7

8   hearing, dismissed the petition for failure to state a

9   claim on similar grounds the defendants urge in this case.

10  So, the trial court decision in that case would be the

11  sole precedent that I can find to support the defendant's
    position in that case.

12

13      However, on appeal that holding was reversed by the
    Supreme Court.  And the Supreme Court held, quote "A

14

15  petition should not be dismissed for failure to state a
    claim unless it discloses with certainty that the

16

17  plaintiff would not be entitled to relieve under any set

18  of facts."
        Interestingly, the Taggart case also involved the

19

20  type of situation -- it involved actually two different
    kinds of challenges, two different problems in the

21

22  election.  One problem had to do with quantifiable ballot
    issues where you could count them up and you could

23

24  determine whether or not it was enough to make a

25  difference.

1        But the other part was the -- the contestant alleged

2    that the machines were -- were operating improperly.  More
      like our -- more analogous to our case here.  And in

3

4    Taggart, the Supreme Court held, quote "Similarly, doubt
      may be cast on an election by showing improper maintenance

5

6    of the voting machines resulting in votes being miscast."
              And then in their ruling reversing the trial court

7

8    for dismissing the case, the Court notes, "All this is a

9    matter of proof."  Now in the Taggart case it came back on

10   appeal and the plaintiff failed to prove it and lost.  But

11   it is a matter of proof.
              If the plaintiff can prove that improper maintenance

12

13   of the voting machines resulted in votes being miscast,
      which is what we allege, Your Honor, then we're entitled

14

15   to victory and entitled to relief, and if we're not, if we
      can't prove it, then we're not entitled to relief.  And

16

17   that's -- that's clear from the cases.

18        Now in terms of -- of -- I want to return to the
      allegations that we make and the -- the breadth of it.

19

20   First, we allege that the state's system is fundamentally
      flawed from the start and that we note that the persuasive

21

22   opinion by Judge Totenberg in which she describes the
      system as being --

23

24        THE COURT:  I'm not bound by it to her at all.

25        MR. BROWN:  You're not bound by her ruling at all.

1          THE COURT:  You can try to hand it to me, but I'm not

2   bound by it.
           MR. BROWN:  No.  It's -- we think it's persuasive

3

4   but, of course, you're not bound by it.  But she did find
     that the -- that the same system is profoundly vulnerable.

5

6          THE COURT:  Okay.  I -- I don't care what you've
     found.  It's got nothing to do with the burden of proof.

7

8   The burden of proof will be on you to get that far.

9          MR. BROWN:  Right.

10         THE COURT:  The burden of proof is on you.

11         MR. BROWN:  Right.
            THE COURT:  But you can't prove it by -- the judge.

12

13         MR. BROWN:  That's -- yes, Your Honor.  But it will
     be proven with the evidence that persuaded Judge

14

15   Totenberg, we would -- we would suggest.  And if -- Your
      Honor, it could very well be that at trial we're not

16

17   persuasive.

18         But we do have the opportunity to prove that and as
      of -- one of the things that -- what motions to dismiss

19

20   law is, Your Honor, is that -- what the law says is that
      there's no reasonable possibility that the plaintiffs can

21

22   prove their case, then they lose.
            And what we're suggesting is, having already proven

23

24   some of these things, that it's -- it's important to

25   consider that and projecting what we'll be able to win in

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019                    Page 55

```
 1   this case.

 2        THE COURT:  Yeah, but I don't -- in this courtroom --
          MR. BROWN:  That is correct, Your Honor, but --
 3

 4        THE COURT:  -- has proven that.
          MR. BROWN:  That's correct.  But in considering the
 5

 6   motion to dismiss one of the issues is, will they be able
      to prove it, and we believe we will.
 7

 8        Now, what we have alleged, Your Honor, which must be

 9   accepted as true, regardless of Judge Totenberg's

10   decision, it must be accepted as true that these systems

11   are fundamentally unreliable, period.  That has to be
      accepted as a fact for right now.
12

13        Number two, we have given illustrations and alleged
      of particular instances in which these machines have,
14

15   throughout the state, malfunctioned.
          Three, we have shown the results of these
16

17   malfunctions in an unexplainable pattern of voting in

18   which we will present expert testimony saying that this
      cannot be explained except in terms of machine
19

20   malfunction, a statewide systemic machine malfunction.
          And it is not just simply the under-vote that Mr. Lindsey
21

22   tries to calculate.  It's that the entire voting system
      was flawed.    And so, the votes for Mr. Duncan, the votes
23

24   for Ms. Amico, that entire election was flawed.  And

25   that's what we allege, and we're entitled to be able to
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 74

 1    prove it.  And so, under those facts, we believe that

 2    we're entitled.  We have -- there -- we have alleged
       evidence, Your Honor, of the -- this particular race not

 3

 4    being on the electronic screen, of the screen flipping
       between one and the other.

 5

 6         THE COURT:  Is that your petition?
            MR. BROWN:  It is.  And instance after instance of

 7

 8    this that we have alleged, and we're entitled to prove

 9    that, and we believe we will.  And so, we have the -- we

10    have alleged a fundamental unreliability of these

11    machines.  We have alleged specific incidences that can
       only be explained by a malfunctioning system that was

12

13    statewide that can -- and from that, to borrow the
       language from the Supreme Court in the Taggart case, from

14

15    which we believe, Your Honor may infer, you don't have to
       but we believe we will be persuasive that you can infer a

16

17    much broader problem.

18         And we also believe that as one illustration of the
       problem is the under-vote, the totally unexplained

19

20    difference between the electronic vote totals and the
       paper vote totals.

21

22         The defendant's offer -- this is not an evidentiary
       hearing, but they have not offered any plausible

23

24    explanation for why simply by the mode of electing, there

25    would ever be such a dramatic difference in the drop-off

 1  rate.

 2       And the -- what that shows are not that that
    particular margin is wrong, but that the entire race is

 3

 4  wrong.  It's like -- there's that old phrase is the clock
    that struck 13, Your Honor.  And when a clock strikes 13,

 5

 6  not only do you know it's not 13 o'clock, but you doubt
    every single chime that has come before it because the

 7

 8  clock isn't working.

 9       And the under-vote is the clock that struck 13.  And

10  we would -- we would say that for all those reasons we

11  state a claim for relief, and that in -- in no case held
    has a motion to dismiss for failure to state a claim in

12

13  election case been sustained and it certainly should not
    be the case in this case.  Thank you, Your Honor.

14

15       MR. LINDSEY:  If I may, Your Honor, please.
         THE COURT:  (inaudible)

16

17       MR. LINDSEY:  The issue in this case is not an

18  allegation of misconduct by anyone advocating for or
    against a particular candidate.  The allegation in this

19

20  case is that votes were not -- people were not able to
    cast votes, and votes were not properly counted.  The case

21

22  in which Mr. Brown relies upon and cited to you repeatedly
    with the Stiles vs. Earnest -- Earnest who was the

23

24  election superintendent, 252-Georgia-260.

25       That particular case, Your Honor, had nothing to do

1    with whether or not votes were properly counted, or the

2    machines were operating properly.  Instead, it had to do
      with allegations of misconduct by advocates for a

3

4    referendum.  Totally different situation.
              In our situation, Your Honor, in which we are dealing

5

6    with whether or not votes were properly counted.  The
      cases that we have cited to you and I'll cite to you once

7

8    again, the Fuller vs. Thomas case, a Georgia Supreme Court

9    case, 284-Georgia-397, in which the Court held, when the

10   focus is on improperly cast ballots or irregularities in

11   the conduct of the election, the number of legal or
      irregular ballots necessary to cast doubt on an election

12

13   is derived by taking the difference between the total
      votes cast in the election and erase that issue and adding

14

15   the margin of victory in the race issue.
              In other words, you've got to show -- to begin with,

16

17   you have to allege that any irregularities in terms of the

18   machines or anyone counting the votes would have an impact
      on the margin of victory in which case -- in this case,

19

20   like I stated earlier, with over 123,000 votes.
              The fact of the matter is within the four corners of

21

22   the plaintiff's petition, nowhere, nowhere do they allege
      that these irregularities closed -- were -- resulted in

23

24   the number of votes that were improperly cast or not

25   properly counted were greater than 123,000 votes.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 77

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019                    Page 59

1        That's kind of the fundamental first step that they

2   must allege in order to have a case move forward.  When
     you then add to that the public records that I've asked

3

4   you to take judicial notice of, that Mr. Brown has not
     disputed and I walked through so tediously, it

5

6   demonstrates that even in the worst-case scenario that
     were alleged in the Petition, he falls -- the votes fall

7

8   short of the margin of victory.

9        And for that reason, in this particular case we ask

10  for you to grant our motion to dismiss.  Thank you.

11        THE COURT:  (inaudible)
          MR. RUSSO:  Very brief, Your Honor.  Just cover three

12

13  quick points quickly, Your Honor.  First of all, the
     allegations here regarding the -- the only -- I should

14

15  say, the only type of election contest where you're not
     required to put forward specific evidence or pleading

16

17  regarding a number is in 524(c) when the error of counting

18  the votes is alleged as a ground of contest.
          There's a specific provision that says you're not

19

20  required to show evidence to substantiate the allegation.
     You -- you're not required in that one type of contest.

21

22  That is not this type of contest.
          Mr. Brown has, secondly, has alluded to the idea that

23

24  the lieutenant governor's race did not appear on some

25  ballots.  If you look at both Mead and Howell, you'll see

www.huseby.com              Huseby, Inc.  Regional Centers              800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 78

1    cases where you had to plead and show the number of

2    ballots where the name of the candidate did not appear.
         That's one of the allegations that the plaintiffs

3

4    have not pled that it did not appear on at least 123,000
      voting machines along the way.  Mr. Brown also continues

5

6    to insist that there's no other valid explanation when any
      number of ballot explanations may exist.

7

8         And as we discussed before, the -- Mr. Brown and the

9    plaintiffs may not rely on mere speculation.  They have to

10   plead with specificity in their petition that the outcome

11   would have changed or that the irregularities were
      sufficient to place the result in doubt.  Thank you.

12

13        THE COURT:  This is so close.  You know, it was
      presumed, I'm waiting for -- is that the election returned

14

15   the bath.  Okay?  Now, the part of your job is above the -
      - Your job, Counsel, -- of placing doubt on the results of

16

17   the election.

18        And that's done usually by numbers, through math.
      And the math is against you.  You have chosen not to

19

20   allege any math in your petition, okay.  You have alleged
      -- I had it somewhere in front of me, but anyway, you have

21

22   alleged that the result would be different or is in
      substantial doubt.  But I haven't found it.

23

24        MR. BELINFANTE:  Yes, Your Honor.

25        THE COURT:  I forgot the exact language.  I had it,

```
 1   but I've lost it.  All right, yeah.  The -- the -- to

 2   place in doubt the result of the entire election, okay.
     The numbers aren't weighty, okay.  But you've got some
 3

 4   generalized arguments about the systemic failure of the
      whole system that might -- that might cast -- which makes
 5

 6   the math an issue.
             It's a huge burden for you to carry, but the
 7

 8   petition, it's sufficient to have a try.  I -- I hate to

 9   do that, but it's -- it's -- if we have to take the four

10   corners of the petition, it really doesn't matter if it's

11   badly pled.  I'm not saying it's badly pled.  You didn't
      plead numbers.
12

13        But the cover clearly says, "under F of -- of 524,
      that the form -- form of process is not material.  It's --
14

15   it's -- the election contests are interesting.  There was
      kind of different than we've seen on things.  It's a very
16

17   close question, sir.

18        It is a very close question, and -- and -- and you
      need to be aware I don't do well with inflammatory stuff.
19

20   I don't get inflamed by attention -- and -- and what other
      judges do is not -- okay.  So, understand you've got two
21

22   rules.
             I am going to deny the motion to dismiss.  I -- I --
23

24   it's extremely close, but on the kind of pleadings, I'm

25   looking for originals in that cover section about, you
```

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                  Page 62

1    know, don't worry about form and so on and so forth. I'm

2    going to let it go forward, but the plain numbers are
     against you.  So, you -- you've got some -- an uphill
3

4    battle.
            MR. BELINFANTE:  Okay then.  Thank you, Your Honor.
5

6        THE COURT:  Can you take a moment, drop a line -- and
     -- and --
7

8        MR. BELINFANTE:  Yes, Your Honor.

9        THE COURT:  You all know where I am because you've

10   been emailing me, so send it to me, okay.  I can't

11   download a pack.  Don't ask me why.  I am supposed to be
     retired next year.
12

13       MR. RUSSO:  Your Honor, would you like us to submit a
     joint motion?
14

15       THE COURT:  What?
             MR. RUSSO:  Would you like us to submit one motion --
16

17   I mean, one order, one proposed order?

18       THE COURT:  You could even do one proposed order, or
     if you can agree on it or you can do them separately about
19

20   that.
             MR. BELINFANTE:  I think we'll probably --
21

22       THE COURT:  I'm fixing to go into two full weeks of
     work, so you'll be able to get -- okay.  What else do we
23

24   have from the defendant?

25       MR. BELINFANTE:  Your Honor, we have -- we have two

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 81

1   motions that are --

2        THE COURT:  Well, no, I know what -- what you have.
         MR. BELINFANTE:  Oh, I'm sorry.
3

4        THE COURT:  I don't think I read all this stuff,
    okay?  Okay?
5

6        MR. RUSSO:  Your Honor, for the Secretary of State,
    this is joined by the other defendants, I believe.
7

8        THE COURT:  Is this on the two constitution --

9        MR. BELINFANTE:  On the two constitutional --

10        THE COURT:  We have two constitutional claims and

11   then we'll do your motions.  And I've got those too; don't
     worry about it.  All right.  Go ahead.
12

13        MR. BELINFANTE:  Okay.  Thank you, Your Honor.  I'm
     going to address just the two counts.  The one for due
14

15   process and the right being identified there is the right
     to vote.  The second is the Equal Protection Clause.
16

17        Now there's -- we'll rest largely on the briefs in

18   terms of sovereign immunity, but the point to take from it
     is that the Equal Protection Clause and the due process
19

20   clause are completely contingent upon what Your Honor
     rules on the underlying election challenge, count one.
21

22        Their briefs make that plain.  The relief they seek,
     it's in paragraph 71 and 75, is the right to vote in a new
23

24   election for lieutenant governor, not any other future

25   one.  And in 72 and 76, it says that it would be remedied

1   by holding a new election.

2        So, if the Court at the conclusion of the evidence,
    or at least at the conclusion of the plaintiff's case,

3

4   decides that there is no basis to go forward, the
    constitutional claims equally fail.  They -- they rise and

5

6   fall together.
             So, the question before you on the motion to dismiss

7

8   is have they alleged sufficient facts to state a claim for

9   due process and for equal protection, and Your Honor, the

10  answer is simply no, based on the Favorito decision from

11  the Supreme Court of Georgia in 2009.  I have a copy of
    it, if the Court would like, and provide one to opposing

12

13  counsel as well.
             MR. BROWN:  Thank you, sir.

14

15       MR. BELINFANTE:  And I'll be referring to Favorito
    throughout the argument.  The question on the due process

16

17  claim is what is the standard of review.  Is it strict

18  scrutiny, is it rational basis?
             And Favorito answers that question in the latter.  It

19

20  is a rational basis test.  It says on page 796, quoting a
    decision from the 11th Circuit, Wexler vs. Anderson, that

21

22  when a state election law provision imposes only
    reasonable non-discriminatory restrictions upon the 1st

23

24  and 14th Amendment rights of voters, the state's important

25  regulatory interests are generally sufficient.

1       Using the word "reasonable" the Supreme Court noted

2   and applied a rational basis test.  And, in fact, it goes
     on to say that there is a rational reason to use DRE

3

4   machines on the same page.
             It says, "it is the job of democratically-elected

5

6   representatives to weigh the pros and cons of the various
     balloting systems.  So long as their choice is reasonable

7

8   and neutral, it is free from judicial second guessing,"

9   once again confirming that we're in a rational basis test

10  review.

11      And now using -- applying that standard, looking at
     the due process claim, which is paragraph 62 to 72, count

12

13  two, in the complaint.  The defendants do not disagree
     that the right to vote is fundamental.  The disagreement

14

15  is that they have not alleged a burden for which there is
     not a rational basis to use the DRE machines.

16

17      And to look -- to see that you need only look at

18  paragraph 69 of the complaint.  There the plaintiffs or
     the petitioners allege that using defective DRE machines

19

20  in a flawed and inaccurate voter registration and
     electronic poll book system, defendants have knowingly and

21

22  severely burdened and infringed upon the fundamental right
     to vote.

23

24      Now you compare that to what the Supreme Court

25  described as the cause of action in Favorito.  This is at

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 84

1   page 795 and 796 of that case in the Georgia reports.

2   There the Supreme Court described the petitioner's claims
    as -- in three counts of their complaint, appellants

3

4   allege that this state's use of the DRE equipment denies
    them equal protection under the federal and state

5

6   constitutions, and the fundamental right to vote under the
    due process clause of the 14th Amendment.

7

8       Their claims are virtually identical.  And so, then

9   applying the rational basis test that Favorito did, the

10  law is clear.  There is a rational basis to use the DRE

11  machines.  And in the case, it's important that the Court
    citing the Weber vs. Shelley decision from the 9th Circuit

12

13  in 2003, acknowledged all the risks that are contained in
    the petitioners' claims now.

14

15      The court said in Favorito, again citing Weber, page
    797, "no balloting system is perfect."  Traditional paper

16

17  ballots, as became evident during the 2000 presidential

18  election, are prone to over-votes, under-votes, hanging
    chads, and other mechanical and human errors that may

19

20  thwart voter intent.
            Meanwhile, touchscreen voting systems remedy a number

21

22  of these problems, albeit at the hypothetical price of
    vulnerability to certain types of fraud.  And it's the job

23

24  the Court continued to say of the legislature to decide

25  which of those two risks it is going to use.

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019                    Page 67

1          In fact, the Court says expressly, it's the job of

2     democratically-elected representatives to weigh the pros
       and cons.  And so long as their choice is reasonable and

3

4     neutral, it's free from second guessing.
               And then it goes on to really put the nail in the

5

6     coffin here, "in this instance Georgia made a reasonable
       politically neutral and nondiscriminatory choice to

7

8     certify touchscreen systems as an alternative to paper

9     ballots."  Nothing in the Constitution prohibits this

10    choice.

11         That forecloses the due-process argument, because
       despite however it can be dressed up, it is an attack on

12

13    the DRE machines themselves.  The DRE machines were
       attacked in 2006, and by the time they got to the Supreme

14

15    Court in 2009, the Court said it is insufficient.
               The legislature is entitled to choose the DRE

16

17    machines understanding and knowing all of the risks that

18    they claim, it is still insufficient to state a claim
       under due process.  If you then look to equal protection,

19

20    Favorito blocks the claims again.
               Once again, the allegations are identical from what

21

22    the plaintiffs allege or the petitioners here and what
       they alleged in Favorito.  Paragraph 74 of this complaint

23

24    says, "defendants knowingly treated electors who voted by

25    DRE differently than others similarly situated electors

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 86

1    voting in the same election in a jurisdiction who voted by

2    absentee ballot."
             In other words, if you vote absentee you can do it

3

4    with a piece of paper.  If you vote in person you use a
      DRE machine and that is the distinction that they claim

5

6    sets up the Equal Protection Clause.  They make that clear
      on pages 43 and 44 of their response to the motion to

7

8    dismiss.

9         A state election regulation, which they go on to

10   cite, which discriminates on its face between two classes

11   of people, namely voters who vote in person and voters who
      vote by absentee mail.

12

13        Now you then look at the Favorito and the court's
      description of the argument there and it was the

14

15   appellants argued that electronic voters are treated
      differently from voters who cast absentee ballots on paper

16

17   and the procedure for an accuracy of any recount would

18   differ.  The claims are simply identical.
             And so, the holding of Favorito is absolutely

19

20   dispositive.  And this is at page 798.  What the court
      effectively says is, a voter can choose.  You can vote by

21

22   absentee.  We have absentee for any reason in this state,
      and if you have a concern that the DRE machine is flawed,

23

24   then by all means, vote absentee.

25        It is not a distinction that the state mandates,

1    which is what is required under equal protection claim.

2    The Court specifically says in Favorito, that "as the
     trial court found, Georgia voters have an option."

3

4         And then it continues, if the trial court correctly
     concluded that quote "since every Georgia citizen could

5

6    vote either by absentee ballot or by utilizing touchscreen
     voting systems," appellants contention that there is some

7

8    state-based classification between voters is false.

9         And it continues then to say, "we cannot see how

10   Georgia has violated the Equal Protection Clause of the

11   14th Amendment by making these two available pacts.  The
     allegations are the same.  The case is directly en pointe

12

13   and Equal Protection and Due-Process Clause should be
     dismissed.  Thank you.

14

15        THE COURT:  Anybody else for the defendant on that
     issue?

16

17        MR. TYSON:  We'll just join the Secretary of State's

18   argument on that point.
          THE COURT:  Okay.

19

20        MS. BURWELL:  We join in their argument as well, Your
     Honor.  Thank you.

21

22        MR. TYSON:  Thank you, Your Honor.
          MR. BROWN:  In their motion to dismiss the federal

23

24   constitutional claims, first Mr. Belinfante's description

25   of how this claim will interact with the other's claims is

 1    substantially correct, and that is, what we are -- what

 2    the plaintiffs are alleging is that with any new election
       going forward prospectively should be conducted on -- not

 3

 4    on these machines, because doing so would be a violation
       of due process and equal protection.

 5

 6         So that's the -- sort of the procedural posture of
       how this claim is seeking prospective relief.  Second, the

 7

 8    defendants rely exclusively on the Favorito and Wexler

 9    decisions.  The Favorito and Wexler decisions are

10    fundamentally distinguishable because Favorito dealt with

11    a 2006-era DRE system.
                What's -- what has happened and what we allege in our

12

13    complaint all are real events in real life that have
       changed the system, that make it fundamentally different

14

15    than the system that was being reviewed by the courts in
       the -- the -- the -- the Favorito case.

16

17         And as we allege, Your Honor, since the Favorito

18    case, every single government agency that is responsible
       for national security has told the State of Georgia that

19

20    the current DRE system is fundamentally insecure.
                The House Select Committee, the Senate Select

21

22    Committee, the Department of Homeland Protection.  In
       addition, every known computer scientist on record has

23

24    said exactly the same thing and has said to Georgia, these

25    are unreliable.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 89

1        They can't be trusted to count votes correctly.  That

2    comes from every single source and there is no evidence
     contrary, Your Honor.  And this comes from slews of

3

4    scientists, and it culminated in a report by the National
     Academy of Sciences that came out just this September, and

5

6    this is called a Consensus Report, which means that it's a
     unanimous of the scientists at the National Academy of

7

8    Sciences have collected to consider this exact issue.

9        And that is, are these -- is the system that Georgia

10   is now using secure enough to be relied upon from -- from

11   attack domestic and foreign.  And the National Academy of
     Sciences in September said, don't use these machines

12

13   anymore.  Don't even use them for the November election,
     which Georgia did anyway.

14

15       And so, the -- the environment is different, Your
     Honor.  The national security concerns are different.  In

16

17   2006, the -- the internet system was not getting bombarded

18   daily by nation states.  The -- the system hasn't -- the
     -- the -- the malware environment is totally different.

19

20       We do not allege that the system right out of the box
     is flawed, although it's flawed in that it doesn't have a

21

22   paper backup, but that's not the nature of it.  The nature
     of it is is that the way Georgia has not maintained the

23

24   system, coupled with the external threat, make it a system

25   -- and if you use it, you're violating the constitutional

1   rights of voters because it is fundamentally unreliable.

2       And the right to vote is nothing if their votes are
    not counted correctly.  And in this system, you never know

3

4   if your votes are being collected, counted correctly or
    not.  We will never know, because once a voter makes that

5

6   transient decision as to who to vote for, that record is
    lost forever.

7

8       We will never know, and this is why the courts who

9   have recently looked at it have concluded that using those

10  machines is substantially likely to violate due process

11  rights and equal production rights of Georgia voters.
        And there's no case to the contrary, Your Honor, is

12

13  that the cases now hold our way on those issues.  And what
     the defendants do not address -- they -- they address a

14

15  sort of hypothetical complaint that was maybe filed 15
     years ago.

16

17      They do not address these allegations.  They don't

18  address the fundamental problems.  They also don't address
     an entirely separate issue and that is that, as we alleged

19

20  in the complaint, the State of Georgia left this system --
     we like to say, left this system out in the rain for six

21

22  months.
        The Secretary of State, we allege, left the system

23

24  open to the internet, to the public internet, from before

25  the 2016 election until well after, even though it was

1   informed that the system was open.  And when it did so, it

2   -- it left itself open to be infected by any virus, by any
    hacker whether it's someone on their sofa in New Jersey or

3

4   in Peenya or in Russia.
            That's what we also allege.  And so, we have a system

5

6   that according to the National Academy of Sciences, even
    without it being left in the rain, is a violation, is so

7

8   fundamentally flawed and vulnerable, it's a violation of

9   constitutional rights.

10          And then to make matters worse, the Secretary of

11  State, even though it knew this was happening, left it
    exposed to the public internet to be abused and has not

12

13  undertaken any sort of forensic examination to determine
    whether or not it's been actually infected with malware as

14

15  the results of this recent election would suggest that it
    has.

16

17          And so, we have established that -- that we have

18  alleged the allegations necessary.
            THE COURT:  -- it's a question of what you allege.

19

20      MR. BROWN:  That's exactly right, Your Honor.  I
    misspoke.  We have alleged --

21

22      THE COURT:  -- what you have alleged.
            MR. BROWN:  We have alleged all the elements of the

23

24  claim, and therefore that motion should be dismissed, or

25  it could be revisited in a motion for summary judgment or

1    further motions after the election contest issue is

2    resolved.  Thank you, Your Honor.
          MR. BELINFANTE:  Thank you, Your Honor.  I'll be

3

4    brief.
          On the subsident due process claim, everything,

5

6    everything that Mr. Brown just talked about was raised in
      the Favorito decision and cited.  And in the long footnote

7

8    that cites to the Weber case, the court adopts that no

9    balloting system is perfect.

10        And in specifically again talking about touchscreen

11   voting systems, it says that the DRE machines do not leave
      Georgia voters without protection from fraud or any means

12

13   of verifying a vote or a way to audit the recount.  The
      unfortunate reality is that the possibility of electoral

14

15   fraud can never be completely eliminated, no matter which
      type of ballot is used.

16

17        Even assuming that none of the advantages of the

18   touchscreen systems over traditional methods would be
      sacrificed if voter-verified paper ballots were added to

19

20   the touchscreen system.  And it talks about the choice
      that the legislature makes and makes very clear nothing in

21

22   the constitution prohibits this choice.
          The legislature is presumed to be aware of all of the

23

24   things that Mr. Brown talks about, and I'll get to that in

25   a second.  And yet that choice cannot be second guessed by

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 93

 1   the judiciary under the guides of a due process claim.

 2       Now let's talk specifically about what the complaint
     alleges, because that's what we're here to discuss.
 3

 4   Nowhere does the complaint that I found cite to any
      specific inherent flaw with the machines.  What it says,
 5

 6   over and over and over again, is that there are
      "vulnerabilities," potential vulnerabilities.
 7

 8       The National Academy of Sciences cites

 9   vulnerabilities. It's the Homeland Security, cites

10   vulnerabilities.  It's paragraphs 25 through 33, you'll

11   see a litany of that.
         That is exactly the type of decision and the risk-
12

13   weighing that the general assembly is entitled to do, and
      the due process clause does not prevent them from doing.
14

15       Secondly, Mr. Brown tries to distinguish the Favorito
     case based on statements that are frankly not in the
16

17   record regarding the types of machines.  If you look at

18   the complaint, the complaint talks about -- in paragraphs
      21 to 23 is where it describes the machines and how
19

20   they're used and so on -- it doesn't say that they've been
      changed since 2006.
21

22       What he's talking about is that people now have
      additional concerns about them, but that just brings you
23

24   back to the holding of Favorito, which is that those

25   concerns are properly waived by the legislative branch,

1    not the judicial branch.

2         That also speaks to -- and I don't know that there
     was a specific response to the equal protection, but

3

4    certainly Favorito would say and hold here regardless of
     how it views the machines.  As long as voters have a

5

6    choice; it is not a state-imposed distinction and no
     equal-protection claim can lie.

7

8         Thank you, Judge.

9         THE COURT:  Okay.  I'm going to have to take that,

10   and I'm going to rule on it, and I'm going to do it this

11   morning.  I'll send an email.  I want to relook at the
     petition.  I am ruled -- ruled by what that petition says

12

13   this morning on -- on that issue, and I -- I want to look
     at it again.  I've got the issues in my mind about it, and

14

15   I will look at it, okay.
          MR. BELINFANTE:  Thank you.

16

17        THE COURT:  Anything else for the defendant?

18        MR. RUSSO:  No, Your Honor.
          THE COURT:  Okay, then.  Plaintiff has some other

19

20   motion.
          MR. BROWN:  Thank you, Your Honor.  Yes, we have --

21

22   the -- the main motion that we had, Your Honor, is your
     November 29 emergency motion for inspection of electronic

23

24   election equipment and production of documents.  To get to

25   the bottom of the causes for the machine malfunctions, we

1   need some discovery, and that's why in November we moved

2   for a right to inspect the equipment under Rule 34 and
    91134, which is the --

3

4       THE COURT:  What do -- I -- I seek -- don't propose
    more of which I'm not going to sign, which is way beyond

5

6   anything I think that I'm required to do or should be
    doing.  Good many other things, obviously.  Tell me a

7

8   little bit more specifically what it is you want.  What do

9   you want done?

10      MR. BROWN:  Well, we -- the plaintiffs would like

11  discovery of DRE machines to inspect the --
        THE COURT:  Which ones?  Where?  When?  How?  What?

12

13      MR. BROWN:  Your Honor, we would like to inspect the
    machines that are identified in Exhibit B to our motion.

14

15  And we would be amenable to meeting with the defendants to
    determine a reasonable time and space -- place for that

16

17  inspection.  And --

18      THE COURT:  It's on the three --
        MR. BROWN:  It's the last two pages of the -- the

19

20  motion and the last two pages of the proposed order.
        THE COURT:  Yes.  I have it now.

21

22      MR. BROWN:  And we've identified by -- in -- in many
    instances by serial number the machines that we would like

23

24  to inspect.  And certainly, by precinct, and as I

25  mentioned would be amenable to sitting down with the

 1   defense counsel and coming up with a -- a protocol for the

 2   inspection of this equipment that would be -- be orderly
      and helpful.  And --
 3

 4       THE COURT:  And when you -- when you mean inspection,
      what do you mean, to look at them?  Oh, there's a machine.
 5

 6   Or do you want to do anything to the machine?
         MR. BROWN:  A full forensic examination to determine
 7

 8   what's causing these -- these mistakes to happened, Your

 9   Honor.

10       THE COURT:  What do you mean by a full forensic

11   examination?
         MR. BROWN:  That would be with computer experts to
12

13   look at the internal memory and programming to see -- to
      compare the machines to see what possible defects are
14

15   causing these systems to malfunction.
         And they would involve comparing, for example -- one
16

17   -- in addition we would like machines that were not used

18   in the -- in the -- in the December 4th runoff elections
      because the difficulty is if you keep on using these
19

20   machines, they may overwrite the underlying memory.  Our
      -- this case is about the November election, not the
21

22   December election, so we would like to look at November
      machines that were not used.
23

24       Now some of the ones, some of the hottest and -- and

25   most troublesome machines may have been involved in both;

 1   they may have continued to use them.  And we may have lost

 2   some evidence there; we don't know, but we've identified
      by serial number and by precinct in Exhibit B the evidence

 3

 4   that we -- we would like to -- to collect.
            And like I said it's -- some logistics are involved.

 5

 6   We would need the systems to be set up so that they
      actually run, they can work, so we need -- would need

 7

 8   internet connection and an AC tower to boot those up.

 9   But, again, we would be happy to sit down with the

10   defendants and -- and quickly set up a protocol for doing

11   that.
            THE COURT:  Have you sent documents, what you -- did

12

13   you --
            MR. BROWN:  And then in addition, of the documents

14

15   that -- that we were seeking, I mean, we would like, you
      know, general discovery of documentary evidence relating

16

17   to the programming of the machines and so that the -- the

18   computer scientists can better understand exactly what's
      going on.

19

20       And we believe that's -- that's reasonable and can be
      done expeditiously and -- and may answer many important

21

22   questions that are -- that Your Honor has indicated are of
      interest.  And the defendants have not responded to our

23

24   motion.  I'm not sure what their position is on it.

25       THE COURT:  Well, I just got it a couple days ago.

```
 1        MR. RUSSO:  Thank you, Your Honor.  I'm Vince Russo

 2   for the Secretary of State.
              The plaintiffs are essentially asking for unfettered
 3

 4   access to voting equipment here in the state of Georgia.
          The -- we -- the Secretary of State objects to the motion
 5

 6   that the plaintiffs have filed in the request.  The
           plaintiffs, for starters, have not alleged irregularities
 7

 8   in each of those precincts where the voting machines they

 9   would like to inspect are located.  So, the machines in

10   those precincts are completely unrelated, as far as we can

11   tell, to their claims, based on the pleadings at least.
              Additionally, Your Honor, Mr. -- plaintiffs, one of
12

13   plaintiff's experts, I suppose, Mr. Demila (phonetic),
          even testified -- he even included in his affidavit that's
14

15   attached to the second motion that the plaintiffs are --
          are going to be arguing, but he -- he stated in his
16

17   affidavit that there's no statistically valid conclusion

18   that can be drawn from a random sample of -- of machines.
              Your Honor, at the end of the day here, as my
19

20   colleagues have pointed out repeatedly, the plaintiffs
           have to show that there are enough votes in question, over
21

22   123,000 votes that -- that call in doubt the result of the
          election for valid election contest.  The machines that
23

24   they want to look at are not going to -- they're not going

25   to have the -- they do not have the votes as far as -- as
```

www.huseby.com              Huseby, Inc.  Regional Centers              800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 99

 1   far as we can tell and -- and plaintiffs' counsel hasn't

 2   indicated that there were enough votes on those machines
      to call in doubt the result of the election.

 3

 4        And as such, Your Honor, we think giving them
      unfettered access to highly sensitive information about

 5

 6   the state voting machines when irregularities alleged by
      the plaintiffs would not change the result of the election

 7

 8   is unnecessary.

 9        Additionally, Your Honor, in the filing that the

10   plaintiffs made to -- excuse me, that the Secretary of

11   State made this morning, which was regarding the proffer
      of evidence, Mr. Demila testified in the -- in the

12

13   Totenberg case and the Kerling (phonetic) case that it
      would take 14,000 hours to examine all of the machines and

14

15   that alone still wouldn't be enough.
             And for reference, Your Honor, 14,000 hours is more

16

17   than a year and a half.  While the plaintiffs have -- have

18   obviously cut down the scope of the -- of the number of
      machines they would like to inspect, Your Honor, there's

19

20   -- there's still no -- there's still no facts pled that
      indicate that the -- the precincts and the machines that

21

22   they want to -- that the plaintiffs want to inspect, would
      have any effect on the outcome of the election or that

23

24   there are any irregularities in those precincts.  So, we

25   would ask that you deny this motion.  Thank you.

```
 1        Oh, I'm sorry.  We have not -- we will be filing this

 2   today.
               THE COURT:  You are.
 3

 4        MR. RUSSO:  I notice proffer of evidence by Secretary
     of State, which includes the transcript that I just
 5

 6   referenced from the testimony of their expert in the -- in
      the federal case.
 7

 8        And I don't know if my colleagues have anything else.

 9        MR. TYSON:  Your Honor, just briefly on behalf of

10   Gwinnett County.  For Gwinnett, we will do obviously

11   whatever the Court directs us to do in terms of making
      machines available.
12

13        Our only concern is from a practical perspective.
      Obviously, this is voting equipment that is kept in a very
14

15   sensitive -- and lock and key.  We keep these machines
      under seal with numbered seals and audit trail to
16

17   determine we know who has access to the machines.

18        And we would just want to be absolutely certain that
      whatever access is occurring is done in a way in
19

20   coordination with the Secretary of State's office and
      others who are involved with this to make sure that
21

22   nothing is altered with the machines themselves.
               Gwinnett owns a mix.  We have a mix of machines
23

24   partially owned by the State and partially owned by the

25   county, and we will work to determine the specific serial
```

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 83

 1    numbers and who owns those machines.  But that -- we are

 2    ready to do whatever the Court directs us to do, but we
       just have those security concerns to be sure that nothing
 3

 4    with the machines themselves is being altered and that
       there's enough security regarding the -- this inspection
 5

 6    that the plaintiffs are proposing.
              MR. LINDSEY:  Your Honor, if I may be heard briefly.
 7

 8            THE COURT:  -- is this the original?

 9            MR. TYSON:  Your Honor, we're going to electronically

10    file it for --

11            THE COURT:  I don't have one given to me.  So, this
       is mine?
12

13            MR. TYSON:  That's your copy.
              MR. BELINFANTE:  Which I have provided one to
14

15    opposing counsel and --
              THE COURT:  Okay.  Right here.
16

17            MR. LINDSEY:  Your Honor, if I may be heard very

18    briefly.
              THE COURT:  Sure.
19

20            MR. LINDSEY:  The petitioner's request, I believe, is
       irrelevant to the outcome of this case as you -- based on
21

22    your ruling regarding our motion to dismiss in which you
       made very clear that the -- ultimately, the plaintiffs
23

24    must show that there were enough irregularities, neither

25    the votes counted improperly or votes not counted to

www.huseby.com          **Huseby, Inc.  Regional Centers**          **800-333-2082**
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**

Page 102

1    amount to 123,000 votes.  The petitioner is seeking how

2    many -- how many exact number of -- number of machines?
         MR. BROWN:  You'd have to ask them.
3

4        MR. LINDSEY:  A dozen or so machines?  Your Honor,
     that's not going to amount to 123,000.  Their -- their
5

6    comeback to our specific numbers that we raise was --
     well, we raised a general allegation that system wide
7

8    there were failures that resulted in the whole election

9    being cast in doubt.

10       If that's their allegation, Your Honor, merely

11   inspecting a dozen or so machines are not going to prove
     or disprove that.  And so, for that reason, Your Honor, we
12

13   would oppose their motion.
         THE COURT:  (inaudible)
14

15       MS. BURWELL:  On behalf of Fulton County, Your Honor,
     their list attached to their motion included counties
16

17   obviously outside of Fulton County.  We don't take a

18   position with respect to those others.
         With respect to Fulton County, we would point out to
19

20   the Court that the complaint only addresses two precincts
     in Fulton County where they're alleging there were any
21

22   irregularities, yet their request for the review of
     machines seeks far more than just those two precincts.
23

24       And so given the limited amount of time, we would

25   request that the Court is going to allow them some leeway

1    in doing some of this discovery that it not be as far-

2    reaching as they were requesting and instead that the
     Court be very tailored in terms of what they have actually

3

4    alleged in getting to the allegations rather than just a
     fishing expedition.

5

6         THE COURT:   (inaudible)
          MR. BROWN:   Thank you, Your Honor.  First, Your

7

8    Honor, we have -- we have alleged irregularities in every

9    precinct, not just Grady, not just some other.

10        We've -- our allegations cover a systemic statewide

11   problem with these electronic voting machine, and we've
     only used as illustration some evidence that we have found

12

13   in particular precincts here and there, but those are just
     illustrations.  Our allegations cover every single one.

14

15        Second, as to the suggestion that this discovery is
     unlikely to come up with anything that will allow us to

16

17   carry our burden of proof.  That's just fundamentally

18   incorrect.  We are also seeking discovery of the GEMS
     databases.

19

20        THE COURT:   The who?
          MR. BROWN:   The GEMS is called -- it's an acronym,

21

22   GEMS, which is an acronym for the -- for the servers that
     collect the data, and so if there is a flaw in that it's

23

24   going to cover more than just the actual machines.

25        THE COURT:   -- but that's not what you told me

1  before.

2      MR. BROWN:  Yes.  My -- the way I was --
       THE COURT:  That wasn't what you said when I came.
3

4      MR. BROWN:  Well, the exhibit that I was referencing
   covers DRE machines and also covers the GEMS databases
5

6  that are county specific and these databases cover more --
   I mean, they are not just one by one.  In addition, Your
7

8  Honor, but really much more fundamentally is that if there

9  is a programming --

10     THE COURT:  Get back to the GEMS, because I'm not

11  understanding what you're saying.
       MR. BROWN:  The GEMS database is -- each county has a
12

13  GEMS --
       THE COURT:  Each county has an individual one.
14

15     MR. BROWN:  Individual one.
       THE COURT:  Okay.
16

17     MR. BROWN:  And then the Secretary of State has a

18  system that tabulates all of those.  And so there could be
    a programming flaw anywhere in the system.  One of the
19

20  things that the data -- and this is the public information
    that's available that Mr. Lindsey referred to, is that the
21

22  pattern oddly was found in every single county under votes
    for the lieutenant governor's race, which no one had ever
23

24  seen before historically ever, and it comes up in every

25  single county.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 105

1        And so that it is possible, I won't say likely, but

2   possible that there is a single or several programming
    mistakes, which have identified, will indicate that
3

4   there's the system wide failure.
             But actually, more fundamentally, Your Honor, we'll
5

6   understand this quickly is that what the defendants are
     sort of analogizing this too is if we're hunting for
7

8   illegal paper ballots, like these cases.  As if we're

9   looking for ballots in which Amico's name was misspelled,

10  like the Mead case.  Or another case in which there's

11  something wrong with a hard copy of a ballot.  And we can
     get that ballot and we can count them up and we can count
12

13  it up to 124,000 and therefore possibly win.
             That's not this case.  Because those ballots are gone
14

15  and because of the way the State has chosen to conduct
     these elections, that record is lost forever.
16

17       Instead what we have is the electronic memory and the

18  programming that drove the way these votes were counted,
     we think they were counted wrong.  And so, we're entitled
19

20  to discovery, we believe, and we think it will be helpful
     and not necessarily that burdensome.
21

22       It's interesting that they now cite to the federal
     case for the declaration of Dr. Demila.  Indeed, he said
23

24  if you had to look at every single machine and do a

25  forensic examination of every single machine it would have

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                    Page 88

```
 1   took -- it would take a long time.

 2        They haven't done it.  We do not plan to do that.
     There's not time or resources to do that.  Instead, this
 3

 4   will be a targeted examination to see if evidence of a
     systemic programming error either in the DRE machines
 5

 6   themselves or the databases have caused these problems.
     Thank you, Your Honor.
 7

 8        THE COURT:  I have problems with words like "there

 9   could be a flaw" or "there's a possible programming

10   mistake."  And what you're really asking for in this

11   discovery and fishing expedition, and I'm not going to
     give it to you till - left, okay.  I am going to -- I am
12

13   going to the GEMS are for each county?
          MR. TYSON:  Yes, Your Honor.
14

15        THE COURT:  Okay.
          MR. RUSSO:  Your Honor, the date of the GEMS is
16

17   public -- is public record --

18        THE COURT:  Even if it -- were it --
          MR. RUSSO:  Is highly confidential and the means
19

20   accessing --
          THE COURT:  Pardon.
21

22        MR. RUSSO:  I said the source code and the means of
     accessing the GEMS, of course, is highly confidential, but
23

24   the data from the GEMS is public record.

25        THE COURT:  I am going to allow you to look at the
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 107

1   GEMS in Fulton and in Gwinnett, okay.  So -- will have to

2   access it.  He's not to get the confidential access.  And
    then he can look at.  If it's public record, and you can

4   show him where the public record is, of course you can
    look at it, but record and you can show him where the

6   public record is.
            Of course, you can look at all of them, okay.  And it

8   that's up to you all to work out with and I'm going to let

9   him do it for those two counties because those are the two

10  counties that are a part of this.

11       He's got -- the only allegation he's got -- he's got
    an allegation in McDonough, he's -- DeKalb and what

13  county?  Because DeKalb's not here.  He's got one in Worth
    County.  He's got Grady High School, -- Library, and then

15  Allen Temple A.M.E. are the ones that he's alleging were
    errors.

17       And I'm going to let him look at those, okay.  It's

18  got to be supervised by somebody, okay.  In the sense of
    -- somebody has to watch whatever he supposedly does so

20  there's no fundamental damage to the system in any way.
    Needs to be really clear.  Got it?

22       MR. RUSSO:  Your Honor, I mean, we would need to have
    some kind of confidentiality order for agreement,

24  obviously.  There's -- when -- when his folks have access

25  to the machines, we don't -- I mean we can watch what

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 108

1   they're doing.  We don't know what they're actually doing

2   and with the data in the -- the -- the computer
    technology.

3

4       THE COURT:  -- any sense.  You're not -- you're not
    going to do it yourself --

5

6       MR. RUSSO:  What?
        THE COURT:  Like I said, if anything on those few

7

8   machines, anything is done to damage them in any way,

9   there will be some absolutely serious ramifications.

10      MR. RUSSO:  Okay.

11      THE COURT:  And that needs to be fully understood.
        MR. RUSSO:  Your -- Your Honor, I guess would -- we

12

13  would also want just clarification around what it is
    exactly -- we've mentioned that there's data machines that

14

15  we can pull --
        THE COURT:  (inaudible)

16

17      MR. RUSSO:  We can pull the data from the GEMS

18  machines to give to them.  If that's the extent of it,
    that's one thing.

19

20      THE COURT:  What is it that you want to do on the
    individual machines?

21

22      MR. BROWN:  We want to examine the internal memory,
    Your Honor, to determine how the program --

23

24      THE COURT:  How do you examine the internal memory?

25      MR. BROWN:  You do -- I -- our -- our experts will be

```
 1    examining the internal memory to see if there are

 2    programming flaws in the DRE machines that are causing
       these problems.
 3

 4        THE COURT:  I got you.  For programming flaws only?
          MR. BROWN:  Pardon me.
 5

 6        THE COURT:  For programming flaws.
          MR. BROWN:  For programming flaws, yes, Your Honor.
 7

 8        THE COURT:  See if they were programmed wrong, okay.

 9    Simple language, okay.

10        MR. RUSSO:  Okay.  Not entirely sure what it means

11    when they get access to what they're looking at.
          THE COURT:  (inaudible)
12

13        MR. BROWN:  I understand.
          THE COURT:  That these cases are supposed to be
14

15    disposed of fast, and I'm not going to give continuances.
       If -- if you would like to work together to do that, if
16

17    you run up on a stumbling block, you can always do it by

18    emails to me and I will email you back.
          MR. RUSSO:  As you said it would be confidential or
19

20    not be subject to --
          THE COURT:  (inaudible)
21

22        MR. RUSSO:  -- because disclosure that's obviously
       important for our --
23

24        THE COURT:  Once again your people would have to set

25    it up, where he can look at it.  If he's just looking at
```

```
 1   the results of it then, if you know how to show him

 2   online, he can get it all in the mistakes, okay.
            MR. RUSSO:  Yeah, we'll be happy to let him see the
 3

 4   results of the election.
            THE COURT:  Let him see the results of the state, but
 5

 6   at that time --
            MR. RUSSO:  Yes.
 7

 8        THE COURT:  -- all the counties involved and these

 9   five places that he has indicated.

10        MR. RUSSO:  Okay.

11        THE COURT:  Okay.
            MR. RUSSO:  Thank you.
12

13        THE COURT:  I'll let you submit me the order if you
     can agree on that.  If you can't, let me know.  Like I
14
                                        th
15   said, I'm -- the hearing is on the 17 ?
            MR. BROWN:  Yes.
16

17        MR. RUSSO:  I think, Your Honor.

18        THE COURT:  I'm -- I'm here but I sleep occasionally,
     but apart from that time --
19

20        MR. BROWN:  Your Honor, let me -- I want to recap
     what, Your Honor, has suggested just so we're very clear
21

22   on -- on this --
            THE COURT:  You want to do it so that you can expand
23

24   what I just said.  Come on, I know that.  Is this what you

25   said, Judge?  Yeah.  I know that but go ahead.
```

```
 1        MR. BROWN:  Didn't you say you favored widespread and

 2   far-reaching discovery?  No, I'm joking, but --
             THE COURT:  Okay.
 3

 4        MR. BROWN:  Two counties -- limited to two counties?
             THE COURT:  Two counties.  Gwinnett -- go ahead.
 5

 6        MR. BROWN:  Gwinnett and Fulton.  In the five.
             THE COURT:  In the five -- Henry County and
 7

 8   McDonough.  It doesn't say specifically that one was.

 9   Fulton, Allen County AME -- and Grady High School.

10        MR. BROWN:  Okay.  Yes, Your Honor.

11        THE COURT:  That's what's alleged on the petition.
             MR. BROWN:  And that would be examination of the
12

13   machines under the conditions that you've described.  In
      addition, the county servers -- that the county GEMS
14

15   servers under the instructions that you gave.
             THE COURT:  -- and if there's a way to get that
16

17   information if it is public record, then you can get it in

18   public record.
             MR. BROWN:  Thank you, Your Honor.  At present the
19

20   trial is scheduled -- for the trial -- not at present.
                                        th
      The trial is scheduled for the 17  --
21

22        THE COURT:  Correct.
             MR. BROWN:  -- of -- would it make sense to postpone
23

24   that --

25        THE COURT:  No, nothing postponed.
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 112

1        MR. BROWN:  Thank you, Your Honor.

2        THE COURT:  The rules are -- in fact I'm getting some
   pressure as to why this isn't going through faster than
3

4   it's been.  It needs to be done; it needs to be completed;
   it needs to be over.  I'm not going to move it.
5

6        MR. BROWN:  Thank you, Your Honor.
         THE COURT:  And what I've allowed you to do on those
7

8   things can be done before that date.

9        MR. BROWN:  Thank you, Your Honor.

10       THE COURT:  If -- if you put your mind to it.  Okay?

11       MR. BROWN:  Thank you, Judge.
         THE COURT:  Okay, anything else?  You had a motion
12

13   about -- but I guess that's moot.
         MR. BROWN:  That's moot.
14

15       THE COURT:  Okay, anything else?
         MR. RUSSO:  No, Your Honor.
16

17       THE COURT:  Okay.

18       MR. LINDSEY:  Just to move the case along quickly and
   I'm going to stipulate to plaintiff's counsel be in
19

20   agreement -- just taking judicial notice so we don't have
   to bring somebody in to show the certified election
21

22   results of all the statewide elections.
         THE COURT:  Do you have an objection to --
23

24       MR. RUSSO:  I assume we don't have any objections?

25   Just to the numbers.  Do you have an objection?  No,

```
 1   Judge.

 2       THE COURT:  The numbers that he gave me are the
     numbers in the register.  Do they have an objection?
 3

 4       MR. BROWN:  No, Your Honor.
         MR. RUSSO:  I just want to make that that's clear.
 5

 6       THE COURT:  Okay.  You can put those in without
     having to --
 7

 8       MR. RUSSO:  No, Your Honor.

 9       MR. BELINFANTE:  We will be doing the same -- we will

10   be using the same numbers here on, Your Honor.

11       THE COURT:  Okay.  That's it.
         MR. RUSSO:  Okay.
12

13       THE COURT:  Anything else?  Thank you, gentleman.
         MR. RUSSO:  Thank you.
14

15       MR. BELINFANTE:  Thank you, Your Honor.
         MR. TYSON:  Thank you, Judge.
16

17

18   (Whereupon, the hearing was concluded at 10:34 a.m.)

19

20

21

22

23

24

25
```

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019                     Page 96

```
 1                         CERTIFICATE

 2
      STATE OF GEORGIA   )
 3

 4                       ) SS.
      COUNTY OF DOUGLAS  )
 5

 6
              I, PRISCILLA GARCIA, A COURT REPORTER IN THE STATE OF
 7

 8      GEORGIA, DO HEREBY STATE THAT THE FOREGOING IS A TRUE AND

 9      ACCURATE TRANSCRIPT AS TRANSCRIBED BY ME AT THE TIME,

10      PLACE, AND THE DATE HEREINBEFORE SET FORTH.

11           I DO FURTHER STATE THAT I AM NEITHER A RELATIVE NOR
        EMPLOYEE NOR ATTORNEY NOR COUNSEL OF ANY OF THE PARTIES TO
12

13      THIS ACTION, AND THAT I AM NEITHER A RELATIVE NOR EMPLOYEE
        OF SUCH ATTORNEY OR COUNSEL, AND THAT I AM NOT FINANCIALLY
14

15      INTERESTED IN THIS ACTION.
              WITNESS MY HAND IN THE CITY OF DOUGLASVILLE, COUNTY
16

17      OF DOUGLAS, STATE OF GEORGIA, ON THIS 18th DAY OF JANUARY

18      2019.
                  BY: _____
19

20              PRISCILLA GARCIA, COURT REPORTER
                NOTARY PUBLIC, STATE OF GEORGIA
21

22              COMMISSION NO.: W-00379933
                COMMISSION EXPIRES: 08/14/2022
23

24              CERTFICATION NO.: 5503-2677-8304-9216

25              LICENSE EXPIRES:  04/01/2019
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 115

**1**

**1**  28:8,20,
22 47:13

**100**  47:17

**100-vote**
46:24

**103,290**
43:25

**115,691**  45:1

**11th**  64:20

**123,000**
41:22
43:13
45:15
58:20,25
60:4 80:22
84:1,4

**123,000-plus**
45:2

**123,000-vote**
48:1

**123,172**
13:18
43:13

**124,000**
87:13

**13**  57:4,6,9

**14,000**
81:13,15

**14th**  64:24
66:6 69:11

**15**  72:15

**157**  36:8,10
37:6

**159**  23:2,10
35:20

**17**  92:15
93:20

**180**  37:15

**19,882**  44:1

**1983**  10:2

**1989**  18:22

**1998**  42:20

**1st**  64:22

**2**

**2**  10:6 15:2
16:2,18
28:9,17
29:6

**2-**  28:11

**2000**  66:17

**2003**  66:13

**2004**  17:18
27:25

**2006**  67:13
71:17
75:20

**2006-era**
70:11

**2009**  64:11
67:15

**2015**  19:4

**2016**  72:25

**2018**  6:2
13:15

**21**  15:2
18:24 28:9

**21-2-366**
39:9

**2102**  14:11

**2122**  16:18

**212235**  28:13

**212250**  22:2

**2125**  14:10
28:9

**22**  6:6,13,
20

**220**  22:9,10

**23**  75:18

**242-**  52:6

**25**  75:10

**252-georgia-
260**  50:4
57:24

**26**  39:22

**2623-georgia-
514**  48:4

**270-georgia-7**
42:20 50:8
51:17

**284-georgia-
397**  51:15
58:9

**288-georgia-26**
51:25

**29**  76:22

**3**

**3**  10:6 29:6
30:25
47:11,13

**3,780,304**
43:18

**3,883,594**
43:17

**3,895,955**
44:24

**301-georgia-27**
24:20
25:11

**30177**  51:11

**323-georgia-
po427**  42:2

**324**  19:4

**33**  75:10

**34**  77:2

**35**  16:20

**378-georgia-
532**  51:10

**38**  33:15

**380**  17:20

**4**

**4**  18:24

27:10
28:18
47:13
78:18

**42**   47:18

**43**   68:6

**44**   68:6

---

**5**

**5**   47:13

**520**   14:11
22:2,4
30:13,25

**520-2A**   30:17

**521-1**   47:11

**522**   30:13

**522-2**   30:20

**524**   61:13

**524(c)**   59:17

**53,902**
45:13,15

---

**6**

**6**   13:15

**62**   65:11

**69**   65:18

---

**7**

**71**   63:22

**72**   63:25

65:11

**74**   67:22

**75**   63:22

**76**   63:25

**795**   66:1

**796**   64:20
66:1

**798**   68:20

---

**8**

**8,000**   46:2

**80,000**   46:2

**8:59**   6:2

---

**9**

**9**   6:2

**9/11/15**
32:18

**98.9%**   44:11

**99**   46:25

**9th**   66:11

---

**A**

**A.M.E.**   89:15

**ability**
34:11

**absentee**
34:10,11
39:2 68:2,
11,15,22,

24 69:6

**absolutely**
68:18
82:18 90:9

**absurd**   23:11

**abused**   73:11

**AC**   79:8

**Academy**
71:4,6,11
73:6 75:8

**accept**   43:18
44:13,18

**accepted**
49:13
55:9,10,11

**access**   22:6
80:4 81:4
82:17,18
89:2,24
91:11

**accessing**
88:20,22

**accuracy**
68:17

**acknowledged**
66:13

**acronym**
85:20,22

**Act**   18:22
27:10,18

**action**   35:25
39:15 47:9
65:25

**acts**   19:2

**actual**   85:24

**Adams**   42:2

**add**   32:6
33:2,15
59:2

**added**   74:18

**adding**   37:22
58:13

**addition**
31:20
36:25 47:8
70:22
78:17
79:13 86:6
93:13

**additional**
14:15 32:6
75:22

**Additionally**
80:11 81:9

**address**
14:17,18,
20 38:11
63:13
72:13,17,
18

**addresses**
84:20

**admitted**
51:18

**adopts**   74:8

**advantages**

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 117

74:17

**advocates**
58:2

**advocating**
57:18

**affect**   46:9

**affidavit**
80:13,17

**afford**   30:9

**agency**   70:18

**agree**   12:8
35:6  62:18
92:13

**agreed**   9:22

**agreement**
89:22
94:20

**ahead**   15:25
20:22
63:11
92:25  93:4

**albeit**   66:22

**allegation**
15:20
30:20  44:4
45:2  47:8
57:18
59:20
84:6,10
89:11

**allegations**
31:2,6,10,
17,20,22

33:9  36:1
41:4  43:20
44:18
45:24,25
46:4  48:13
49:13
53:18  58:2
59:13  60:2
67:20
69:11
72:17
73:18
85:4,10,13

**allege**   34:1
46:25  47:4
49:11
53:13,20
55:25
58:17,22
59:2  60:20
65:18  66:4
67:22
70:11,17
71:20
72:22
73:4,18

**alleged**
17:11
18:8,11
22:24
30:11
33:17,20
35:24  36:4
43:6  47:15
48:13
49:18  53:1
55:8,13

56:2,8,10,
11  59:6,18
60:20,22
64:8  65:15
67:22
72:18
73:18,20,
22  80:6
81:6  85:4,
8  93:11

**alleges**   75:2

**alleging**
33:22  43:1
70:2  84:20
89:15

**Allen**   89:15
93:9

**allowed**   94:6

**alluded**
59:22

**altered**
82:22  83:4

**alternative**
67:8

**AME**   93:9

**amenable**
77:15,25

**amend**   32:2

**amending**
32:6

**amendment**
32:4  33:2
64:24  66:6
69:11

**amendments**
19:22

**Amico**   46:6
55:24

**Amico's**   87:9

**amount**   84:1,
4,24

**analogizing**
87:6

**analogous**
53:2

**Anderson**
24:20
64:20

**anecdotes**
32:25

**announces**
36:22

**anonymous**
47:24

**answers**
64:18

**anymore**
71:13

**apologize**
20:22  22:8

**appeal**   32:15
52:13
53:10

**appeals**
17:18

**appears**
25:13

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 118

**appellants**
66:2 68:15
69:6

**appellate**
25:6

**applicable**
16:18 17:2
28:17 38:2

**applied**  19:6
65:2

**apply**  15:20
17:1 18:24

**applying**
65:11 66:9

**approach**
24:6,8
51:2

**approval**
40:18

**aren't**  13:11

**argue**  18:22
21:8 24:15

**argued**  17:11
68:15

**arguing**
20:18
36:18
40:25
80:15

**argument**
19:13
21:24
23:8,18,20
26:4,24

29:6
33:11,13
35:15
40:2,8,9
41:18
64:15
67:11
68:13
69:18,20

**arguments**
13:11
21:18
41:18 61:4

**assembly**
75:13

**assert**  44:6,
11

**asserted**
10:18,24
14:10

**asserting**
10:20
42:25

**assertion**
42:18
44:13

**asserts**  44:4
45:2

**assume**  94:24

**assuming**
74:17

**attached**
24:13
80:15

84:15

**attack**  67:11
71:11

**attacked**
67:13

**attention**
61:20

**attorney**
23:18,22
24:4 25:1,
2 41:20

**audit**  74:13
82:15

**authority**
39:10

**authorize**
39:11

**authorized**
14:25
40:17

**aware**  13:15
20:11
61:18
74:22

_____

_____

**B**

**back**  15:9
32:18 33:2
51:4 53:9
75:24
86:10
91:18

**backup**  71:22

**badly**  61:11

**BAILIFF**  8:2

**ballot**  16:11
17:22
18:11
19:22
27:18,22
34:11
40:15
52:22 60:6
68:2 69:6
74:15
87:11

**balloting**
65:6 66:15
74:9

**ballots**
18:13
34:10
36:20
44:10,11,
22 50:20,
22 58:10,
11 59:25
60:2 66:17
67:9 68:15
74:18
87:8,9,13

**Banker**  51:10

**bankruptcy**
42:4

**based**  46:13
48:11
64:10
75:15
80:11

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 119

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019  Index: basically..burden

83:20

**basically**
27:4

**basis**  20:1,6
28:6 32:1
33:6 48:17
64:4,18,20
65:2,9,15
66:9,10

**bath**  60:15

**battle**  62:4

**begin**  58:15

**beginning**
21:4

**behalf**  9:2,6
12:4 33:13
41:20 82:9
84:15

**Belinfante**
6:15 8:20
14:18
41:17
60:24
62:4,8,20,
25 63:2,9,
13 64:15
74:2 76:15
83:13

**Belinfante's**
69:24

**bench**  7:20
24:8

**big**  42:18

**binding**
25:22,25

**bit**  30:13
77:8

**block**  91:17

**blocks**  67:20

**Board**  8:25
16:20,22
19:11
29:22 30:4
32:10 34:4
38:15,25
39:2,10,
11,13,15

**Boards**  19:9

**bombarded**
71:17

**book**  22:4,6
65:20

**books**  27:8
36:20

**boot**  79:8

**borrow**  56:13

**bottom**  76:25

**bound**  41:4
53:24,25
54:2,4

**box**  71:20

**brain**  12:2

**branch**  75:25
76:1

**brand-new**

26:10

**breadth**
53:18

**Brian**  24:22

**briefly**  27:2
82:9 83:6,
18

**briefs**
63:17,22

**bring**  12:6
15:18
21:15 22:6
33:22
94:20

**brings**  75:22

**broader**
56:17

**Brody**  32:6

**Brown**  6:15
8:11 9:13,
22 10:1,6,
10,18,22
13:9,11
21:15
22:4,8,10,
11 23:6
24:13,18
25:9,11,22
26:15,20,
22 29:4,
15,18
35:11,13,
22,24
37:11,25
39:25

48:22
49:4,6,8,
11,15
53:25
54:2,9,11,
13 55:2,4
56:6 57:22
59:4,22
60:4,8
64:13
69:22
73:20,22
74:6,24
75:15
76:20
77:10,13,
18,22
78:6,11
79:13 84:2
85:6,20
86:2,4,11,
15,17
90:22,25
91:4,6,13
92:15,20
93:1,4,6,
10,11,18,
22 94:1,6,
9,11,13

**Bruce**  8:11
21:15

**Bryan**  8:22
29:22
46:20

**bunch**  47:22

**burden**  54:6,
8,10 61:6

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 120

65:15
85:17

**burdened**
65:22

**burdensome**
87:20

**Burwell**  6:8,
11 9:6,9
12:4 33:13
34:17,20,
24 35:2,4,
8 38:13
39:22
40:22
48:18,20
69:20
84:15

---

C

---

**calculate**
55:22

**call**  80:22
81:2

**called**  24:20
71:6 85:20

**calls**  51:18

**cameraman**
6:13

**candidate**
27:17,18
30:17,20,
22 45:6
57:18 60:2

**candidates**

14:4 19:25
27:20

**can't**  7:20
10:20 27:8
31:18 34:4
35:17

**capable**
38:17
40:15

**capacity**
24:22,24
25:13

**care**  8:2
54:6

**careful**  7:18

**Carr**  25:1

**Carruthers**
8:24

**carry**  61:6
85:17

**case**  6:6,9,
10 10:11
11:8 13:20
16:4
17:17,18,
24,25
18:1,2,4,
6,15 19:6
22:25
23:15,17
24:6,11,
13,18,20,
22 25:1,4,
6,8,11,15,
17 26:6,9

27:6,11,25
30:10
31:4,11,18
32:6,8,9,
13 33:1,6
35:4 39:2,
8 42:1,2,
4,20 43:11
44:11,18
47:6 49:17
50:4,6,8,
15 51:2,4,
15,20,22
52:2,6,9,
10,11,18
53:2,8,9
54:22 55:1
56:13
57:11,13,
17,20,25
58:8,9,18
59:2,9
64:2 66:1,
11 69:11
70:15,18
72:11 74:8
75:15
78:20
81:13 82:6
83:20
87:10,13,
22 94:18

**cases**  27:2
30:15,22
37:13
42:10,15
45:18,22
48:9,11

49:25
50:17,18,
25 51:4,9
53:17 58:6
60:1 72:13
87:8 91:13

**cast**  18:13
31:2 43:9,
15,17
44:24
45:1,2
47:1 53:4
57:20
58:10,11,
13,24 61:4
68:15 84:9

**categories**
16:25

**caused**  88:6

**causing**
78:8,15
91:2

**certainty**
48:6 52:15

**certified**
42:10
43:13
46:1,15,22
94:20

**certify**  67:8

**chads**  66:18

**challenge**
27:13 30:6
31:13
63:20

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 121

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019 Index: challenged..coffin

challenged
30:18

challenges
52:20

challenging
30:22
42:15

Champion
32:8

chance  15:13

change  25:25
47:6 81:6

changed
60:11
70:13
75:20

changing
38:18

chapter  15:2
18:24
22:17,20
27:10

charge  23:25

cheat  38:11

chime  57:6

choice  65:6
67:2,6,10
74:20,22,
25 76:6

choose  34:13
67:15
68:20

chosen  42:11

60:18
87:15

Chris  25:1,2

Circuit
64:20
66:11

cite  42:1
50:17 58:6
68:10 75:4
87:22

cited  27:2
32:13 37:1
40:18
45:22 51:9
57:22 58:6
74:6

cites  74:8
75:8,9

citing
66:11,15

citizen  69:4

citizens
38:20
39:1,2

City  16:22

claim  10:13
12:6,9
13:20
14:22
17:24
32:22 38:4
47:2 48:2,
17 52:4,9,
15 57:11

64:8,17
65:11
67:18 68:4
69:1,25
70:6 73:24
74:4 75:1
76:6

claims  10:2,
6,11,18
11:6,10,18
12:4
14:18,20
29:6 47:18
63:10 64:4
66:2,8,13
67:20
68:18
69:24,25
80:11

clarification
90:13

classes  16:2
68:10

classification
69:8

clause
63:15,18,
20 66:6
68:6
69:10,13
75:13

clean  34:22
35:4

clear  9:15,
22 19:6

23:22 26:6
48:4 53:17
66:10 68:6
74:20
83:22
89:20
92:20

clerk  24:11

client  14:17

clock  57:4,
8,9

close  47:25
60:13
61:17,18,
24

closed  45:13
58:22

co-defendants
13:15

Coalition
6:10 8:6,
13 9:24
10:2 14:22

COBB  6:1

code  15:1
16:11,18
18:24
22:1,17
27:9
28:13,18,
20 32:13
40:17
88:22

coffin  67:6

www.huseby.com    Huseby, Inc.  Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 122

colleagues
 18:18
 80:20 82:8

collect   79:4
 85:22

collected
 71:8 72:4

collection
 47:20

comeback
 84:6

Commissioners
 39:11,13

Committee
 70:20,22

common   20:4

commonsense
 22:20
 23:24

compare
 65:24
 78:13

comparing
 78:15

comparison
 30:13

complaining
 34:1

complaint
 20:15
 33:15 38:6
 47:18
 49:11

65:13,18
66:2 67:22
70:13
72:15,20
75:2,4,18
84:20

completed
 94:4

completely
 14:2 63:20
 74:15
 80:10

comply   38:22

computer
 22:6 70:22
 78:11
 79:18 90:2

conceded
 36:2

concern
 68:22
 82:13

concerns
 71:15
 75:22,25
 83:2

concluded
 51:13 69:4
 72:9

conclusion
 64:2 80:17

conditions
 93:13

conduct

16:13 17:6
28:11
58:11
87:15

conducted
 16:8,13
 28:2 30:6
 31:1 36:2
 70:2

conducting
 22:22
 40:2,15

conference
 7:20

conferences
 7:20

confidential
 88:18,22
 89:2 91:18

confidentialit
y   89:22

confirmed
 14:20

confirming
 6:20 65:9

conflicting
 47:9

confuse
 22:11

confusing
 15:17

connection
 30:15 79:8

cons   65:6
 67:2

Consensus
 71:6

constitution
 63:8 67:9
 74:22

constitutional
 11:18 12:9
 14:18
 19:22 29:6
 63:9,10
 64:4 69:24
 71:25 73:9

constitutions
 66:6

constrained
 34:6 38:22

construction
 19:1,6

construed
 20:4

contained
 66:13

contention
 69:6

contest   9:25
 10:4 14:9,
 15,22
 15:4,6
 17:18
 18:4,6
 19:8 20:8,
 24 22:20

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019Index: contestant..county

23:2,15
24:1 28:4,
6,10,20
30:1,11,
15,20
31:15 32:4
33:8
59:15,18,
20,22 74:1
80:22

**contestant**
14:8 17:20
18:11 32:8
53:1

**contestants**
10:2 50:6

**contested**
10:8 16:4,
6,9 28:11
30:6 31:1

**contesting**
13:15

**contests**
14:25
19:24
27:20,22
61:15

**context** 15:4

**contingent**
63:20

**continuances**
91:15

**continued**
66:24 79:1

**continues**
60:4 69:4,
9

**contrary**
71:2 72:11

**conversation**
7:13

**convinced**
13:1

**coordination**
82:20

**copy** 24:9,
20 64:11
83:13
87:11

**Corea** 25:2

**corners** 9:20
20:15
29:11
48:15
58:20
61:10

**correct**
9:13,25
10:1,6,22
22:15
55:2,4
70:1 93:22

**correctly**
69:4 71:1
72:2,4

**couldn't**
32:20

**counsel**

8:10,13
13:10 25:4
27:4,6,11
60:15
64:13 78:1
81:1 83:15
94:18

**counsel's**
7:11

**count** 10:6
12:13,18
28:8,20,22
41:13
50:2,20
52:22
63:20
65:11 71:1
87:11

**counted**
43:22
45:20
57:20
58:1,6,25
72:2,4
83:25
87:18

**counties**
19:11 20:9
23:2,10
28:4 31:6,
9,11,18,22
32:20,24,
25 33:4,
20,25
34:15,18
35:20
36:4,8,11,

13 37:2,6
84:15
89:9,10
92:8 93:4

**counting**
31:4 58:18
59:17

**counts** 29:6
43:22
63:13 66:2

**county** 6:1
8:9 9:6,13
12:2,4
16:15,20,
22,24
17:11
18:6,9,15,
18 19:9,10
20:9,10
24:11 28:2
29:4,22
30:4
31:11,17,
20 32:10
33:13,18
34:4,11
35:9 36:4,
15 37:2
38:11,15,
20,22
39:6,10
40:11,13,
22 46:20
47:18,20
82:10,25
84:15,17,
18,20

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 124

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019 Index: county's..criminal

86:6,11,
13,22,25
88:13
89:13
93:6,9,13

**county's**
30:11
35:15

**county's**
39:15

**couple** 8:6
79:25

**coupled**
71:24

**court** 6:6,9,
11,17,18,
22 7:1,4,
6,11,13
8:1,2,4,
15,22 9:1,
4,8,11,15
10:4,8,9,
11,13,20
11:2,11,
13,18,20,
22 12:6,8,
11,15,18,
22,25
13:11 14:6
15:8,11,
13,17,24
16:20
17:17
20:2,13,
17,20,22
21:2,4,6,

11,13
22:2,4,9,
11 23:4,20
24:10,15
25:6,10,18
26:13,17,
20 27:1
28:8 29:1,
8,11,15,20
31:18
32:6,11
33:10,15,
22,24
34:13,18,
22,25
35:2,6,9,
13,18,22
36:24
37:11,13
38:1,6,9
39:9,22,24
40:22,24
41:9,13,15
42:4,10,18
43:18
45:18
46:15,18
47:13
48:2,4,9,
18,20,22
49:1,4,6,
9,15,25
50:4,9,13,
20 51:2,
10,11,13,
15,17,20,
25 52:4,6,
10,13

53:4,6,8,
24 54:1,6,
10,11
55:2,4
56:6,13
57:15
58:8,9
59:11
60:13,25
62:6,9,15,
18,22
63:2,4,8,
10 64:2,11
65:1,24
66:2,11,
15,24
67:1,15
68:20
69:2,4,15,
18 73:18,
22 74:8
76:9,17,18
77:4,11,
18,20
78:4,10
79:11,25
82:2,11
83:2,8,11,
15,18
84:13,20,
25 85:2,6,
20,25
86:2,10,
13,15
88:8,15,
18,20,25
90:4,6,11,
15,20,24

91:4,6,8,
11,13,20,
24 92:4,8,
11,13,18,
22 93:2,4,
6,11,15,
22,25
94:2,6,10,
11,15,17,
22

**court's**
68:13

**courtroom**
7:9 15:9
55:2

**courtrooms**
10:22

**courts** 42:4,
6 43:2
51:6 70:15
72:8

**cover** 36:1
59:11
61:13,25
85:10,13,
24 86:6

**covered** 6:20
10:4

**covers** 86:4

**Crawford**
42:20
51:17

**criminal**
11:9

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 125

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019   Index: Crittenden..Demila

Crittenden
  8:9

culminated
  71:4

current
  17:25
  70:20

cut  81:18

_____

        D

daily  71:18

damage  89:20
  90:8

data  85:22
  86:20
  88:24
  90:2,13,17

database
  17:9 86:11

databases
  85:18
  86:4,6
  88:6

date  33:2
  88:15 94:8

Dawkins-
  24:20

Dawkins-
haigler
  51:11

day  14:6
  49:2 80:18

days  79:25

deal  11:20

dealing
  35:20 58:4

dealt  70:10

December
  39:22
  78:18,22

decide  10:15
  34:13
  39:2,6
  66:24

decided
  48:11

decides  64:4

decision
  25:6,15,
  18,20
  26:11
  42:18,20
  52:10
  55:10
  64:10,20
  66:11 72:6
  74:6 75:11

decisions
  70:9

declaration
  87:22

declared
  16:10

declares
  19:17

deemed  11:1

defective
  65:18

defects
  43:1,8
  78:13

defend  35:17

defendant
  15:2,20
  16:2 17:15
  19:15
  21:18,20,
  22,25
  22:22 24:1
  26:2,25
  30:15,18,
  20,24
  39:17
  62:24
  69:15
  76:17

defendant's
  52:11
  56:22

defendants
  11:4 18:18
  20:9 23:1,
  10 36:1,6
  48:24
  49:20 52:9
  63:6
  65:13,20
  67:24 70:8
  72:13
  77:15
  79:10,22
  87:6

defendants'
  33:10

defendant's
  13:10

defended
  23:18
  25:1,17

defending
  25:2

defense
  21:13 78:1

defined
  16:2,18
  19:20
  22:13

defines  22:2
  28:13,15

definition
  17:2 18:22
  19:15 20:6
  22:15

definitions
  16:17
  28:17

Dekalb  9:13
  31:10
  32:10
  47:18,20
  89:11

Dekalb's
  89:13

Demila  80:13
  81:11
  87:22

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 126

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019    Index: democratic..distinction

democratic
  45:6

democratically
-elected
  65:4 67:2

demonstrated
  42:17

demonstrates
  45:22 59:6

denies   66:4

Dennis   25:2

DENTON
  11:11,15,
  20,22

deny   37:20
  40:24
  61:22
  81:25

department
  25:2,22,24
  70:22

depending
  46:2

derived
  58:13

describes
  53:22
  75:18

description
  68:13
  69:24

determine
  11:10

50:22
52:24
73:13
77:15 78:6
82:17,25
90:22

determined
  29:25

Dick   8:24

didn't   15:8,
  13,18 41:9
  44:6 93:1

differ   68:18

difference
  13:20 32:4
  43:22 44:8
  50:2,22,24
  52:25
  56:20,25
  58:13

differences
  14:4

differently
  67:25
  68:15

difficulty
  78:18

direct   32:15

directly
  69:11

director
  8:13 32:9

directs
  82:11 83:2

disagree
  65:13

disagreement
  65:13

discloses
  52:15

disclosure
  91:22

discovery
  36:10,11,
  13,15,24
  37:6 77:1,
  11 79:15
  85:1,15,18
  87:20
  88:11 93:2

discriminates
  68:10

discuss
  14:13 75:2

discussed
  23:17
  51:20 60:8

discusses
  19:15

dismiss
  13:13
  14:13
  15:24
  20:18 28:6
  29:8,11,24
  34:2 38:25
  39:20
  41:1,6
  42:6 46:13

47:10,11
48:10,11
52:4 54:18
55:6 57:11
59:10
61:22 64:6
68:8 69:22
83:22

dismissal
  20:25 32:1
  33:8 47:2

dismissed
  9:13 29:13
  41:10
  47:20
  48:17
  52:8,15
  69:13
  73:24

dismissing
  15:6 53:8

disposed
  91:15

dispositive
  68:20

disprove
  84:11

disputed
  59:4

disregard
  14:2

distinction
  68:4,25
  76:6

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 127

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019   Index: distinguish..election

**distinguish**
  75:15

**distinguishable**   70:10

**documentary**
  79:15

**documents**
  76:24
  79:11,13

**doesn't**
  34:11
  75:20

**domestic**
  71:11

**don't**   7:2,4,
  17  10:15
  11:9,15,17
  12:11
  19:11
  22:11
  26:15
  27:24
  36:15
  37:22
  38:2,20
  40:18  41:2
  47:25  49:6
  79:2  89:25
  90:1  94:20

**doubt**   14:1
  42:18  43:2
  47:4  48:15
  53:4  57:6
  58:11
  60:11,15,
  22  61:2

80:22  81:2
84:9

**down-ballot**
  43:10,15

**download**
  37:18
  62:11

**downstairs**
  6:25  7:2,
  22

**dozen**   84:4,
  11

**dramatic**
  44:6,13
  56:25

**dramatically**
  43:10

**drastic**
  42:13

**drawn**   80:18

**DRE**   33:17
  34:6,11
  38:18,20,
  22  65:2,
  15,18
  66:4,10
  67:13,15,
  25  68:4,22
  70:11,20
  74:11
  77:11  86:4
  88:4  91:2

**dressed**
  67:11

**drop**   62:6

**drop-in**   44:4

**drop-off**
  44:8,11,
  13,15,20
  45:4  56:25

**drop-offs**
  44:4

**drove**   87:18

**due**   63:13,
  18  64:9,15
  65:11  66:6
  67:18  70:4
  72:10  74:4
  75:1,13

**due-process**
  67:11
  69:13

**dumped**   37:17

**Duncan**   9:4
  12:13
  41:20  44:2
  45:11
  55:22

**Dunn**   25:2

_____

_____

**E**

**earlier**
  58:20

**Earnest**
  57:22

**easily**   50:18

**Edward**   9:2

41:18

**effect**   24:2
  81:22

**effectively**
  68:20

**egregious**
  48:24

**elect**   16:4

**elected**
  27:11

**electing**
  56:24

**election**
  9:24  10:2
  12:15,18
  13:17,18
  14:2,9,11,
  22,25
  15:1,4,6
  16:4,6,9,
  11,13,18
  17:11,18
  18:4,6,22,
  24  19:8,
  18,24
  20:2,8,11,
  24  21:25
  22:2,11,
  13,15,18,
  22  23:2,15
  24:1,24
  25:13
  26:2,4
  27:20,22
  28:2,6,10,

www.huseby.com                 Huseby, Inc.  Regional Centers                 800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 128

11,20
30:1,4,6,
11,20,25
32:4,13
33:8 36:2
40:6,9,10,
15 42:11,
15,18 43:2
46:15,22
47:6 50:6
52:22 53:4
55:24
57:13,24
58:11,13
59:15
60:13,17
61:2,15
63:20,24
64:1,22
66:18
68:1,9
70:2 71:13
72:25
73:15 74:1
76:24
78:20,22
80:22
81:2,6,22
84:8 92:4
94:20

**elections**
8:25
16:13,20,
22 17:1,6
19:9,11
23:25 26:9
28:2 29:22
32:9,10

34:4 38:15
39:1,4,11,
15 40:2
42:15
78:18
87:15
94:22

**electoral**
74:13

**electors**
16:11
19:18
67:24,25

**electronic**
44:10,22
45:4 56:4,
20 65:20
68:15
76:22
85:11
87:17

**electronically**
83:9

**elements**
73:22

**eligibility**
16:6
30:18,22

**eligible**
30:22

**eliminated**
74:15

**Ellis**   48:4

**else's**   24:18

**else's**
24:15,17

**email**   76:11
91:18

**emailing**
62:10

**emails**   91:18

**emergency**
76:22

**en**   32:6
69:11

**end**   37:22
45:13
80:18

**enjoyed**   44:2
45:11,20

**entire**   49:17
55:22,24
57:2 61:2

**entirety**
33:8

**entitled**
41:24
52:17
53:13,15
55:25
56:2,8
67:15
75:13
87:18

**environment**
71:15,18

**equal**   63:15,
18 64:9

66:4 67:18
68:6 69:1,
10,13 70:4
72:11 76:2

**equal-
protection**
76:6

**equally**   64:4

**equipment**
66:4 76:24
77:2 78:2
80:4 82:13

**erase**   58:13

**erroneously**
13:22

**error**   59:17
88:4

**errors**   31:4
47:22
66:18
89:15

**essence**
38:18

**essentially**
44:11 80:2

**established**
42:15 43:2
51:20,22
73:17

**events**   70:13

**everybody's**
35:1 38:11

**Everyone's**

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 129

6:17

**evidence**
9:17 26:18
31:9,13,24
32:20
37:15 41:1
48:25
50:10,13
51:6,11,18
54:13 56:2
59:15,20
64:2 71:2
79:2,15
81:11 82:4
85:11 88:4

**evidenced**
31:8

**evident**
66:17

**evidentiary**
9:17 51:22
52:6 56:22

**exact** 60:25
71:8 84:2

**examination**
73:13
78:6,11
87:25 88:4
93:11

**examine**
81:13
90:22,24

**examining**
91:1

**examples**

51:8

**exceeds**
18:13

**exclusively**
70:8

**excuse** 14:11
17:15
81:10

**executive**
8:13

**exhibit** 46:6
77:13 79:2
86:4

**exist** 60:6

**expand** 92:22

**expanded**
14:15

**expanding**
20:6

**expedition**
85:4 88:11

**expeditiously**
79:20

**expert** 55:18
82:6

**experts**
78:11
80:13
90:25

**explain** 7:8
12:1 30:13
51:11

**explained**
51:15 52:1
55:18
56:11

**explanation**
56:24 60:6

**explanations**
13:20 14:2
60:6

**exposed**
73:11

**expressly**
67:1

**extent** 90:18

**external**
71:24

**extremely**
61:24

───────────

**F**
───────────

**face** 68:10

**fact** 14:4
15:18 17:4
22:20
23:17 39:6
51:22 52:2
55:11
58:20 65:2
67:1 94:2

**facts** 52:18
56:1 64:8
81:20

**fail** 32:2
64:4

**failed** 53:10

**failing**
20:25

**failure** 47:2
48:17,25
52:4,8,15
57:11 61:4
87:4

**failures**
84:8

**fair** 24:18
33:24

**fairly** 11:25

**fall** 46:2
59:6 64:6

**falls** 59:6

**false** 69:8

**far-** 85:1

**far-reaching**
93:2

**fast** 37:13,
15 91:15

**faster** 94:2

**favored** 93:1

**Favorito**
64:10,15,
18 65:25
66:9,15
67:20,22
68:13,18
69:2 70:8,
9,10,15,17
74:6

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 130

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019 Index: federal..fundamentally

| | | | |
|---|---|---|---|
| 75:15,24 | **find** 6:18 | **foreign** | 60:20 |
| 76:4 | 27:8 28:20 | 71:11 | **full** 30:9 |
| **federal** | 35:10 | **forensic** | 33:6,24 |
| 10:2,6,9, | 52:11 54:4 | 73:13 | 62:22 |
| 11,13,15 | **fine** 24:15 | 78:6,10 | 78:6,10 |
| 11:1,18 | **firm** 25:4 | 87:25 | **Fuller** 51:15 |
| 12:4,6,8 | **fishing** 85:4 | **forever** 72:6 | 58:8 |
| 14:18 66:4 | 88:11 | 87:15 | **fully** 90:11 |
| 69:22 82:6 | **five-day** | **forgot** 60:25 | **Fulton** 8:9 |
| 87:22 | 32:17 | **form** 7:25 | 9:6 12:2,4 |
| **federals** | **fixing** 62:22 | 61:13 62:1 | 24:11 |
| 10:15 | **flaw** 75:4 | **formally** | 29:17 31:6 |
| **felt** 40:20 | 85:22 | 16:10 | 33:13,18 |
| **field** 34:15 | 86:18 88:9 | **forward** | 34:4,11 |
| **figure** 31:13 | **flawed** 40:15 | 59:2,15 | 35:13,15, |
| **figuring** | 53:20 | 62:2 64:4 | 25 36:6 |
| 34:18 | 55:22,24 | 70:2 | 38:9,15,20 |
| **file** 14:22 | 65:20 | **found** 24:6 | 39:6 40:1, |
| 27:20 37:2 | 68:22 | 50:4,9 | 11,13,22 |
| 83:10 | 71:20 73:8 | 51:8 54:6 | 48:18 |
| **filed** 9:18 | **flaws** 91:2, | 60:22 69:2 | 84:15,17, |
| 13:13,15 | 4,6 | 75:4 85:11 | 18,20 89:1 |
| 18:6,15 | **flipping** | 86:22 | 93:6,9 |
| 28:4 30:10 | 56:4 | **fourth** 19:15 | **Fulton's** |
| 31:8 32:9, | **focus** 58:10 | **frankly** | 40:2 |
| 20 39:20 | **folks** 89:24 | 75:15 | **fundamental** |
| 42:20 | **follow** 34:6 | **fraud** 66:22 | 18:25 |
| 72:15 80:6 | 41:6 | 74:11,15 | 56:10 59:1 |
| **filing** 81:9 | **footnote** | **free** 65:8 | 65:13,22 |
| 82:1 | 74:6 | 67:4 | 66:6 72:18 |
| **filling** 33:2 | **force** 34:11 | **front** 6:22 | 89:20 |
| **final** 25:18 | **forecloses** | 15:25 | **fundamentally** |
| **Finally** | 67:11 | 31:18 | 53:20 |
| 19:13 | | 50:20,24 | 55:11 |
| | | | 70:10,13, |
| | | | 20 72:1 |

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 131

73:8 85:17
86:8 87:4

**future**   63:24

---

**G**

---

**gap**   45:13

**gave**   93:15

**GEMS**   85:18,
20,22
86:4,10,
11,13
88:13,15,
22,24 89:1
90:17
93:13

**general**
13:17
16:17
23:18,22
24:4 25:2
29:9 75:13
79:15 84:6

**generalized**
41:6,9,10
61:4

**generally**
64:25

**Geoff**   9:2
12:11
41:20

**Georgia**   6:1
8:18 13:18
14:6 15:1
16:11,15,

18 26:8
28:2 31:11
38:20 42:9
58:8 64:11
66:1 67:6
69:2,4,10
70:18,24
71:9,13,22
72:11,20
74:11 80:4

**Georgia-454**
52:6

**give**   15:13
25:18 33:6
88:11
90:18
91:15

**giving**   49:17
81:4

**glad**   43:4

**golden**   46:2

**good**   8:6,8,
13,18,22
9:2 11:6
14:22
15:15
29:20 77:6

**Gordon**   31:9

**gotcha**   9:11

**Governance**
8:8,15
14:22

**governed**
15:1

**governing**
39:10

**government**
70:18

**governor**
13:17 16:4
17:13 44:8
46:9 63:24

**governor's**
59:24
86:22

**Governor-elect**
9:2 41:20

**governor's**
13:22
43:9,18,24
44:9,15,
20,24 45:6

**Grady**   85:9
89:13 93:9

**grant**   6:18
28:22 37:1
52:4 59:10

**granted**
26:11

**greater**
58:25

**ground**   59:18

**grounds**
14:10,15
30:15 31:2
52:9

**group**   27:13

**gubernatorial**
45:11

**guess**   29:15
90:11
94:13

**guessed**
74:25

**guessing**
14:9 65:8
67:4

**guides**   75:1

**Gwinnett**
8:9,24
11:11
29:4,15,22
30:4 31:6,
20,25
33:18
35:25 36:6
38:1,2
40:1 46:20
82:10,22
89:1 93:4,
6

---

**H**

---

**hacker**   73:2

**Haigler**
24:20

**half**   81:17

**hand**   54:1

**handle**   8:6

**hanging**
66:18

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 132

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019  Index: Hanson..Honor's

**Hanson**  32:13

**happened**
  48:6 49:20
  70:11 78:8

**happening**
  73:11

**happy**  41:2,
  17,18 79:9
  92:2

**hard**  37:18
  87:11

**hate**  61:8

**haven't**  41:6

**hear**  10:15
  11:2 12:25
  13:2,4
  15:20,22
  29:6,15
  41:11,13
  43:4

**heard**  15:18
  34:25 35:1
  41:6 48:18
  83:6,17

**hearing**  7:15
  13:11
  33:25
  37:6,22
  41:2
  51:13,22
  52:1,2,8
  56:22
  92:15

**held**  28:2

52:13 53:4
57:11 58:9

**helpful**  78:2
  87:20

**helps**  30:13

**Henry**  93:6

**here's**  35:22

**he's**  75:22
  89:11,13,
  15 91:25

**High**  89:13
  93:9

**highest**
  43:13

**highlight**
  18:4

**highly**  81:4
  88:18,22

**historically**
  86:24

**history**  26:6

**hold**  7:20
  30:22
  72:13 76:4

**holding**  26:8
  52:13 64:1
  68:18
  75:24

**Homeland**
  70:22 75:9

**Honor**  6:15,
  18 8:11,
  18,20,22

9:2,10,13
10:1,6,10,
18,22
11:6,11
12:4,11
13:9
14:20,25
17:2 18:25
19:13,20
20:2,13
22:8 23:2,
6,13,22
24:6,13
25:6,22
26:1,10,
15,22
27:2,8,24
29:4,18,
20,24
31:13
33:13
34:2,10,18
35:13,22
36:18,25
37:10,11,
25 38:2
39:20,25
40:4,20
41:18,22
42:18,20,
24 44:18,
25 45:25
46:4,10,
11,15,18
48:20,22
49:13,17,
25 50:18
51:4 52:2

53:13
54:13,15,
20 55:2,8
56:2,15
57:4,13,
15,25 58:4
59:11,13
60:24
62:4,8,13,
25 63:6,
13,20 64:9
69:20,22
70:17
71:2,15
72:11
73:20 74:2
76:18,20,
22 77:13
78:9 79:22
80:1,11,18
81:4,9,15,
18 82:9
83:6,9,17
84:4,10,
11,15
85:6,8
86:8 87:4
88:6,13,15
89:22
90:11,22
91:6
92:17,20
93:10,18
94:1,6,9,
15

**Honor's**
39:25

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 133

hottest
 78:24

hours   81:13,
 15

House   70:20

Howell   48:8
 59:25

huge   61:6

human   66:18

Hunt   42:20
 50:6,8
 51:15,18

hunting   87:6

hypothetical
 66:22
 72:15

---

**I**

idea   59:22

identical
 66:8  67:20
 68:18

identified
 63:15
 77:13,22
 79:2  87:2

identify
 32:22

illegal
 18:11,13
 31:2  47:1
 50:20,22
 87:8

illustration
 49:11
 56:18
 85:11

illustrations
 55:13
 85:13

imagine   7:20

immunity
 21:20,22
 23:18
 26:9,24
 63:18

impact   45:6
 50:18
 58:18

important
 25:15
 47:13
 54:24
 64:24
 66:11
 79:20
 91:22

imposes
 64:22

improper
 37:24
 53:4,11

improperly
 53:2
 58:10,24
 83:25

inaccurate
 65:20

inapplicable
 18:20

inaudible
 6:8  11:18
 15:11
 20:13
 35:11,13
 38:6  48:22
 57:15
 59:11
 84:13  85:6
 90:15
 91:11,20

incapable
 40:2

incidences
 56:11

include   17:4
 28:15

included
 33:1  46:6
 80:13
 84:15

includes
 19:2  82:4

incorrect
 85:18

increased
 44:25

incumbents
 14:4

independent
 27:18,20
 32:15

individual
 10:2
 86:13,15
 90:20

individuals
 8:8  15:2,4

infected
 73:2,13

infer   56:15

inferred
 50:11,13

inflamed
 61:20

inflammatory
 49:9  61:18

information
 33:22
 36:18
 47:20  81:4
 86:20
 93:17

informed
 73:1

infringed
 65:22

inherent
 75:4

insecure
 70:20

insist   60:6

inspect
 77:2,11,
 13,24  80:9

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019    Index: inspecting..I'm

81:18,22

**inspecting**
84:11

**inspection**
76:22
77:17
78:2,4
83:4

**instance**
56:6 67:6

**instances**
55:13
77:22

**instructed**
24:8

**instructions**
93:15

**insufficient**
50:25
67:15,18

**intended**
23:11

**intent**  66:20

**intentionally**
19:2

**interact**
69:25

**interest**
79:22

**interesting**
61:15
87:22

**Interestingly**

52:18

**interests**
64:25

**internal**
78:13
90:22,24
91:1

**internet**
71:17
72:24
73:11 79:8

**interpret**
49:20

**interpretation**
49:22

**intimidate**
26:13,15

**introduce**
8:10

**introduced**
50:10,13

**involve**
31:22
32:15
47:17,18
78:15

**involved**
12:18
17:8,17
32:13 50:6
52:18,20
78:25 79:4
82:20 92:8

**involving**

17:13
18:4,11
19:24

**irregular**
58:11

**irregularities**
18:8,17
20:11 28:4
36:4 47:15
50:4
58:10,17,
22 60:11
80:6 81:6,
24 83:24
84:22 85:8

**irregularity**
18:11
22:24,25

**irrelevant**
83:20

**isn't**  38:17

**issue**  10:15
11:4 15:25
18:20
20:11,17
21:11,17
27:1,25
30:6 33:22
34:18
35:15,18,
20,22
37:10
39:4,18
40:4 41:8
57:17
58:13,15

61:6 69:15
71:8 72:18
74:1 76:13

**issues**  12:9
14:1,15
21:24
33:20 34:1
40:13
52:22 55:6
72:13
76:13

**items**  19:22

**it's**  13:2
17:11
18:25
19:1,6
23:6,8,11,
18 24:11,
13 27:17
28:18 32:2
37:6 39:11
48:11
75:9,10
77:18 79:4

**I'd**  21:2
24:8

**I'll**  8:2
13:2 14:17
28:22 42:1
74:24

**I'm**  7:1,9,
22 10:13
11:22,24,
25 13:1,6
20:18 22:4
24:2,15

www.huseby.com     Huseby, Inc.  Regional Centers     800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 135

36:18
38:11 40:2
41:17,18,
22 42:8
43:4 76:9,
10 88:11
89:8,17
91:15
92:15,18
93:2 94:2,
18

**I've** 6:22
8:4

---

**J**

**January** 6:2

**Jersey** 73:2

**Jim** 8:6

**job** 60:15
65:4 66:22
67:1

**Johnson** 42:2
48:4

**join** 23:2
33:13
34:15 37:9
38:4 48:18
69:17,20

**joined** 33:6
34:17
35:6,20
36:8 37:8
63:6

**joining**

48:20

**joint** 16:22
62:13

**joking** 93:2

**Josh** 8:20
14:18 15:8

**judge** 8:2
11:8 16:20
21:15
53:22
54:11,13
55:9 76:8
92:25
94:11

**judges** 19:10
61:20

**judgment**
73:25

**judicial**
41:24
42:1,2,6
45:25
46:13 59:4
65:8 76:1
94:20

**judiciary**
75:1

**jurisdiction**
36:22 68:1

**jurisdictional**
23:20

---

**K**

**Kaye** 9:6

33:13

**Kemp** 24:22

**Kerling**
81:13

**key** 45:17
82:15

**kind** 7:15
11:11
13:10
30:13 38:4
39:6 47:22
59:1
61:15,24
89:22

**kinds** 7:18
10:22
52:20

**knew** 73:11

**knowing**
67:17

**knowingly**
65:20
67:24

**Kohl** 51:10

---

**L**

**lack** 31:20
39:20

**lacks** 14:22

**language**
17:2 19:2
56:13
60:25 91:9

**largely**
63:17

**late** 32:2
33:2

**Laurens**
18:6,15

**law** 14:8
20:4 25:2,
22,24
26:2,4
27:6 28:2,
15 34:6,8
38:22
54:20
64:22
66:10

**laws** 20:4

**lawsuit**
32:15,20
42:2 47:20

**lawyers** 9:9
25:2

**leads** 51:4

**leap** 20:2

**leave** 74:11

**leeway** 84:25

**left** 72:20,
22 73:2,6,
11 88:11

**legal** 31:2
47:1 49:22
58:11

**legislative**

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 136

COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.
Transcript of Hearing Proceedings on 01/09/2019 Index: legislator..make

75:25

legislator
  23:11

legislature
  19:2 22:18
  23:11,13
  66:24
  67:15
  74:20,22

lengthy
  51:13

letter   46:6,
  8

let's   13:2
  21:4 46:24
  75:2

level   16:15
  28:2

Library
  89:13

lie   76:6

lieutenant
  9:2 13:17,
  22 16:4
  17:13
  41:20
  43:9,18,24
  44:9,15,
  20,24 45:6
  46:8 59:24
  63:24
  86:22

life   12:1
  70:13

lightly
  42:13

limited
  84:24 93:4

Lindsey   9:2
  12:11,17,
  20,24
  41:18
  49:15
  55:20
  57:15,17
  83:6,17,20
  84:4 86:20
  94:18

lines   30:20

list   84:15

litany   75:11

located   80:9

lock   82:15

logical
  30:2,24

logistics
  79:4

long   28:2
  65:6 67:2
  74:6 76:4
  88:1

looked   72:9

lose   54:22

lost   38:11
  50:8,9
  53:10 61:1
  72:6 79:1

87:15

lot   13:4,6
  26:17
  31:22 41:1

——————————

M

——————————

machine
  47:18
  55:18,20
  68:4,22
  76:25
  78:4,6
  85:11
  87:24,25

machines
  13:24,25
  33:17 34:6
  36:20
  38:18,22
  40:10,11,
  15 53:2,6,
  13 55:13
  56:11
  58:2,18
  60:4 65:4,
  15,18
  66:11
  67:13,17
  70:4 71:11
  72:10
  74:11
  75:4,17,18
  76:4
  77:11,13,
  22 78:13,
  17,20,22,

25 79:17
  80:8,9,18,
  22 81:2,6,
  13,18,20
  82:11,15,
  17,22
  83:1,4
  84:2,4,11,
  22 85:24
  86:4 88:4
  89:25
  90:8,13,
  18,20 91:2
  93:13

made   19:13
  23:20 31:4
  33:9 47:6
  50:15
  51:22 67:6
  81:10,11
  83:22

mail   68:11

main   76:22

maintain
  17:9

maintained
  71:22

maintenance
  53:4,11

major   11:25
  43:4

make   6:6
  12:20
  17:10 20:2
  21:18

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 137

26:10 29:4
31:17
35:2,4
41:17,18
50:22
52:24
53:18
63:22 68:6
70:13
71:24
73:10
82:20
93:22

makes  46:9
61:4 72:4
74:20

making  11:4
20:2 38:13
51:18
69:11
82:11

malfunction
47:18
55:20
78:15

malfunctioned
49:18
55:15

malfunctioning
13:22
56:11

malfunctions
55:17
76:25

malicious

13:24

malware
71:18
73:13

mandates
68:25

manipulation
13:24

margin  13:18
18:13 44:1
45:20
46:24
48:13
50:24 57:2
58:15,18
59:8

Marilyn  8:13

Marks  8:13

material
61:13

math  11:25
43:4 44:17
46:11
60:18,20
61:6

mathematical
43:2 48:6

matter  11:9
41:2,25
44:17
53:9,11
58:20
61:10
74:15

matters  42:6
73:10

matured  11:1

ma'am  15:22
28:25

Mcdonough
89:11 93:8

Mead  17:17
18:4,20
23:15,17
30:10 48:8
51:20
59:25
87:10

means  21:25
22:13
26:2,4
68:24 71:6
74:11
88:18,22
91:10

meant  21:10
22:20
23:24
26:13

mechanical
66:18

meet  20:25

meeting
77:15

memory
78:13,20
87:17
90:22,24

91:1

mentioned
14:18
49:13
77:25
90:13

mere  60:9

merits  25:17
52:1,2

methods
74:18

Miko  45:8,
10

mind  25:25
46:20
76:13
94:10

mine  83:11

minute  35:20

miscast
53:6,13

misconduct
31:2 50:4,
11 51:18
57:18 58:2

miscounted
45:20

missed  17:20

misspelled
87:9

misspoke
73:20

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 138

mistake
  50:18 51:1
  88:10

mistakes
  78:8 87:2
  92:2

mix  82:22

mode  56:24

modify  32:11

moment  62:6

months  72:22

moot  94:13

mooted  29:2

morning
  8:18,22
  9:2,10
  11:4,6
  13:1 29:20
  76:11,13
  81:11

motion  13:13
  14:13
  15:24
  20:18
  28:22
  29:8,11,24
  34:2,20
  37:20
  38:24
  39:20
  41:1,6
  42:4 46:11
  47:11
  48:10 52:4

  55:6 57:11
  59:10
  61:22
  62:13,15
  64:6 68:6
  69:22
  73:24,25
  76:20,22
  77:13,20
  79:24
  80:4,15
  81:25
  83:22
  84:13,15
  94:11

motions  9:15
  12:25
  13:4,6,13
  29:2 31:8
  37:22
  38:1,4
  41:10
  47:10
  48:11
  54:18
  63:1,11
  74:1

move  14:22
  59:2 94:4,
  18

moved  77:1

moves  20:11

moving  20:20

multiple
  14:11
  27:11

municipal
  17:1 32:13

Murray  31:9

_____

_____

**N**

nail  67:4

named  32:20

nation  71:18

national
  70:18
  71:4,6,11,
  15 73:6
  75:8

nature  50:1
  71:22

necessarily
  11:15 22:6
  87:20

needed  32:18
  45:13

nefarious
  43:8,20

negative
  45:6

negligent
  43:20

neutral  65:8
  67:4,6

nice  35:4

nominated
  30:18

nomination

  16:4,6

non-
discriminatory
  64:22

non-party
  36:11

nondiscriminat
ory  67:6

note  53:20

noted  27:2
  34:2 65:1

notes  51:20
  53:8

notice  32:11
  41:24
  42:1,2,6
  46:1,13
  59:4 82:4
  94:20

November
  13:15
  71:13
  76:22 77:1
  78:20,22

number  13:20
  16:10
  18:13
  19:17
  31:4,17
  38:25 40:6
  43:6,9,13,
  15 44:6,
  13,22
  45:1,13,18
  46:2,8

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 139

47:4 48:8
55:13
58:11,24
59:17
60:1,6
66:20
77:22 79:2
81:18 84:2

**numbered**
82:15

**numbers**
22:10
41:22
42:9,10
44:15
49:15 50:6
60:18
61:2,11
62:2 83:1
84:6 94:25

---

**O**

**objection**
6:11 11:9,
17 94:22,
25

**objections**
94:24

**objects**  80:4

**occasionally**
92:18

**occurred**
18:8,17
28:4 34:2
36:4

**occurring**
82:18

**OCGA21-2-366**
39:4

**OCGA212250**
22:1

**OCGA212520**
15:2 16:1

**OCGA2143**
22:13

**oddly**  86:22

**offer**  40:4
56:22

**offered**
56:22

**office**  11:15
16:6 19:25
30:22
42:10
82:20

**officer**  16:9
19:13,17
27:13,15

**officers**
27:11

**official**
24:22
25:11 42:9

**omits**  19:4

**one-off**
47:22

**online**  92:2

**open**  72:24
73:1,2

**opening**  49:2

**operating**
53:2 58:2

**opinion**
53:22

**opportunity**
12:6 54:18

**oppose**  84:13

**opposed**  6:6
18:11

**opposing**
64:11
83:15

**optical**
39:11

**option**  23:1
69:2

**order**  6:20,
22 7:22
18:13 33:6
40:9,20
41:15 48:2
59:2
62:17,18
77:20
89:22
92:13

**ordered**  40:8
50:4

**orderly**  78:2

**original**

33:2 83:8

**originals**
61:25

**other's**
69:25

**outcome**  43:2
46:9 60:10
81:22
83:20

**outlined**
42:22

**over-votes**
66:18

**overwrite**
78:20

**owned**  82:24

**owns**  82:22
83:1

---

**P**

**p.m.**  6:2

**pack**  62:11

**pacts**  69:11

**pages**  37:15
68:6
77:18,20

**paper**  40:11,
15 44:9,
11,22
56:20
66:15 67:8
68:4,15
71:22

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 140

74:18 87:8

**papers** 24:9

**paragraph**
33:15
47:18
63:22
65:11,18
67:22

**paragraphs**
75:10,18

**pardon** 33:11
88:20 91:4

**part** 11:18
53:1 60:15
89:10

**partially**
82:24

**parties**
14:20 30:8
31:11,18,
22 32:2,6
33:1,4,6
37:24 40:1
51:20

**partner**
14:18

**party** 9:24
10:2
12:13,17
17:15,24,
25 18:1
28:22
29:4,15,17
30:1,2
36:17

38:15
39:13

**past** 14:22,
24 20:20

**pattern**
55:17
86:22

**Peenya** 73:4

**pending** 11:8
12:4 13:2

**people** 7:20
42:11 44:6
57:20
68:11
75:22
91:24

**percentage**
45:10,11

**percentages**
32:25

**perfect**
66:15 74:9

**period** 55:11

**person** 16:4
30:18
42:15
68:4,11

**perspective**
82:13

**persuaded**
54:13

**persuasive**
53:20

54:2,17
56:15

**pertain**
14:15

**petition**
9:20 13:15
20:15
27:15,20
29:11
32:4,22
45:2 46:6,
13,25
47:2,8,10,
15,22
48:15
52:8,15
56:6 58:22
59:6
60:10,20
61:8,10
76:11
93:11

**petitioner**
44:2 45:2
84:1

**petitioner's**
66:2 83:20

**petitioners**
34:4 38:17
43:6 65:18
67:22

**petitioners'**
46:4 66:13

**petitioner's**
43:20
44:18

45:24
46:13

**phonetic**
80:13
81:13

**phrase** 22:11
57:4

**physically**
50:20

**pick** 31:15

**picked** 9:18

**piece** 36:18
68:4

**pieces** 48:25

**Pinpoint** 7:6

**place** 14:1
43:22
48:13
60:11 61:2
77:15

**places** 43:1
92:9

**placing**
60:15

**plain** 17:2
62:2 63:22

**plaintiff**
8:13 23:2
50:2 52:2,
17 53:10,
11 76:18

**plaintiff's**
58:22 64:2

www.huseby.com   Huseby, Inc. Regional Centers   800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 141

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019 Index: plaintiffs..prevail

80:13

**plaintiffs**
8:13 10:2,
24 12:6
13:15,20
14:10,13
17:11,15,
24 18:22
19:13
20:2,10
21:17 30:8
31:4 32:1,
13,18 33:9
34:9 35:15
38:24
39:18
42:22,25
43:6 47:6,
10,15,20
48:2,13
50:9 54:20
60:2,9
65:18
67:22 70:2
77:10
80:2,6,11,
15,20
81:6,10,
17,22
83:6,22

**plaintiffs'**
81:1

**plaintiff's**
10:18 14:2
20:24
21:24
27:4,6,10

94:18

**plan** 88:2

**plausible**
56:22

**plead** 48:2
60:1,10
61:11

**pleading**
21:1 59:15

**pleadings**
41:11
42:24
61:24
80:11

**pled** 60:4
61:11
81:20

**plenary**
36:25

**point** 18:2
27:4 29:2,
4 37:22
38:13
40:25 41:4
42:24 46:4
63:18
69:18
84:18

**pointe** 32:6
69:11

**pointed**
20:13
48:24
80:20

**points** 35:15
59:13

**policy** 49:24

**politically**
67:6

**poll** 36:20
65:20

**position**
11:13,15
12:4 24:6
25:22
31:25
33:4,11,18
39:15
40:6,13
52:11
79:24
84:18

**possibility**
54:20
74:13

**possibly**
87:13

**postpone**
93:22

**postponed**
93:25

**posture**
46:22 51:4
70:6

**potential**
75:6

**power** 36:25
37:1

**practical**
82:13

**precedent**
18:2 26:10
48:2 52:11

**precedential**
18:2 27:4

**precinct**
77:24 79:2
85:9

**precincts**
80:8,10
81:20,24
84:20,22
85:13

**precise** 18:2

**present** 19:6
55:18
93:18,20

**presented**
51:11

**preserve**
31:9

**presidential**
66:17

**pressure**
94:2

**presumed**
19:1 46:22
60:13
74:22

**pretend** 9:11

**prevail**

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 142

18:13

**prevailed**
52:2

**prevent**
75:13

**previously**
41:20

**price**   66:22

**primary**
16:6,9
31:1

**privilege**
7:18

**probate**
16:20
19:10

**problem**
30:11
32:11
50:1,15
52:22
56:17,18
85:11

**problems**
31:6
33:17,18
49:11
52:20
66:22
72:18
88:6,8
91:2

**procedural**
49:24 51:4

70:6

**procedure**
32:13
68:17

**procedures**
32:4 42:15

**proceeded**
51:15

**proceeding**
47:11

**proceedings**
6:13

**process**
61:13
63:15,18
64:9,15
65:11 66:6
67:18 70:4
72:10 74:4
75:1,13

**production**
72:11
76:24

**proffer**
26:18
81:11 82:4

**profoundly**
54:4

**program**
90:22

**programmed**
13:24 91:8

**programming**
47:22

78:13
79:17
86:9,18
87:2,18
88:4,9
91:2,4,6

**programs**
36:20

**prohibits**
14:8 67:9
74:22

**projecting**
54:25

**prone**   66:18

**proof**   50:6
53:9,11
54:6,8,10
85:17

**proper**   9:24
11:17
17:13,15
20:9
21:11,18,
20,22
22:22
23:9,10
24:1 26:25
28:22 29:4
30:1,2
32:2 36:1,
6 37:4
38:15
39:17 40:1
48:9,11

**properly**

45:20 47:2
57:20
58:1,2,6,
25 75:25

**propose**   77:4

**proposed**
62:17,18
77:20

**proposing**
83:6

**proposition**
39:6

**propositions**
19:22

**pros**   65:6
67:2

**prospective**
70:6

**prospectively**
70:2

**protection**
63:15,18
64:9 66:4
67:18 68:6
69:1,10,13
70:4,22
74:11 76:2

**protocol**
78:1 79:10

**prove**   37:4,6
53:10,11,
15 54:11,
18,22 55:6
56:1,8

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 143

84:11

**proven**
54:13,22
55:4

**provide**   34:4
64:11

**provided**
26:18 34:9
83:13

**providing**
38:17

**provision**
59:18
64:22

**provisions**
40:17

**public**   16:9
19:13,17,
25 27:13
41:25
46:13 59:2
72:24
73:11
86:20
88:17,24
89:2,4,6
93:17,18

**pull**   90:15,
17

**purposefully**
19:2

**purposes**
19:8

**Pursuant**

15:2

**put**   28:22
46:25
59:15 67:4
94:10

——————

**Q**

——————

**quantifiable**
50:2,18
51:1 52:22

**quarrel**
50:18

**question**
16:11
19:18,20
29:1 30:4
36:6
61:17,18
64:6,15,18
73:18
80:20

**questions**
30:2 32:24
36:9 46:17
79:22

**quick**   59:13

**quickly**
59:13
79:10 87:6
94:18

**quote**   24:22
25:11
50:10
51:11
52:13 53:4

69:4

**quoting**
64:20

——————

**R**

——————

**race**   13:17,
22 18:6
26:4 27:18
41:20
43:9,15,
17,18,24
44:6,9,15,
20,24
45:6,11
46:10 56:2
57:2 58:15
59:24
86:22

**races**   13:22
14:4
43:11,15
46:15

**rain**   72:20
73:6

**raise**   10:13
23:18 84:6

**raised**   10:11
27:25
39:4,6,18
44:22 74:6
84:6

**raising**
12:10

**ramifications**
90:9

**random**   80:18

**rate**   57:1

**rational**
64:18,20
65:2,9,15
66:9,10

**reaching**
85:2

**read**   26:17,
18 35:20
51:6 63:4

**reading**
23:22

**ready**   83:2

**real**   70:13

**reality**
74:13

**realize**
15:8,13,
15,18

**reason**   15:6
18:15
22:18
36:15 59:9
65:2 68:22
84:11

**reasonable**
14:2 54:20
64:22
65:1,6
67:2,6
77:15
79:20

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 144

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019 Index: reasons..required

reasons
   29:13  50:9
   57:10

recall   18:22
   27:10,13,
   18  28:18

recap   92:20

received
   45:11

recent   73:15

recently
   72:9

record   6:13
   7:8,11,17
   8:6,11
   23:15
   34:22  35:4
   46:13
   50:11
   70:22  72:6
   75:17
   87:15
   88:17,24
   89:2,4,6
   93:17,18

records
   41:25  59:2

recount
   68:17
   74:13

reference
   81:15

referenced
   30:10  47:9

82:6

references
   33:15

referencing
   86:4

referendum
   19:22  58:4

referred
   27:11
   86:20

referring
   19:9  64:15

reflected
   49:18

reflective
   26:2

regard
   12:13,17

registration
   16:22
   17:8,9
   19:10
   65:20

Registrations
   8:25  16:24
   19:11
   29:22  34:4
   38:15
   39:1,4,11,
   15

regulation
   68:9

regulatory
   64:25

rejected
   31:2  47:2

relate   33:2

related   31:2

relating
   79:15

relation
   32:18

relevant
   9:18  20:20
   25:20
   26:18
   32:15
   37:22

relied   71:10

relief   10:25
   26:11  30:9
   33:6  34:4
   37:2  38:17
   53:15
   57:11
   63:22  70:6

relies   57:22

relieve
   52:17

relook   76:11

rely   17:15
   60:9  70:8

relying
   47:13

remedied
   63:25

remedy   40:4

42:13
   66:20

remember
   42:11
   47:13

repeatedly
   14:6  57:22
   80:20

report   25:20
   71:4,6

report's
   9:18

reported
   24:20
   25:15

reports   66:1

repository
   36:18

represent
   8:24  18:18

representative
   42:13

representative
s  65:6  67:2

request   6:6
   80:6  83:20
   84:22,25

requesting
   85:2

require
   22:20  39:1

required
   30:9  36:15

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
*Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco*

Page 145

42:22
43:18
49:22 50:2
59:15,20
69:1 77:6

**requirement**
37:2

**requirements**
21:1 49:22

**requires**
34:8 38:22

**reserved**
42:13

**residual**
46:8

**resolved**
74:2

**resources**
88:2

**respect**
21:24
37:13
39:17
84:18

**respond**
36:24 49:4

**responded**
79:22

**response**
14:13 34:9
38:24
47:11 68:6
76:2

**responses**
27:1

**responsible**
70:18

**rest**  63:17

**restrictions**
64:22

**result**
42:18,25
43:8,13
46:22
47:4,6
48:15
60:11,22
61:2 80:22
81:2,6

**resulted**
53:13
58:22 84:8

**resulting**
53:6

**results**
13:15 14:2
36:20,22
46:1,15
55:15
60:15
73:15
92:1,4
94:22

**retired**
62:11

**return**  53:18

**returned**

60:13

**reversed**
52:13

**reversing**
53:6

**review**  51:9
64:17
65:10
84:22

**reviewed**
70:15

**revisited**
73:25

**rightly**  27:2

**rights**  64:24
72:1,11
73:9

**rise**  64:4

**risk-**  75:11

**risks**  66:13,
25 67:17

**Robbins**  25:4

**Robyn**  8:8

**routine**
29:11

**rule**  6:6,
13,20
18:25 19:6
23:2 42:4
45:22
76:10 77:2

**ruled**  40:1
76:11

**rules**  7:6,8,
20 41:4
61:22
63:20 94:2

**ruling**  53:6,
25 83:22

**run**  33:4
79:6 91:17

**runoff**  16:6
17:20
78:18

**Russia**  73:4

**Russo**  6:18
8:18 11:6
13:13
15:22 16:1
20:15,18,
22,24
21:2,6,9,
13 23:15
24:2 27:2
28:25
29:2,10,13
30:9 38:2,
6 41:8,11,
13 59:11
62:13,15
63:6 76:18
80:1 82:4
88:15,18,
22 89:22
90:6,10,
11,17
91:10,18,
22 92:2,6,
10,11,17

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 146

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019   Index: sacrificed..short

94:15,24

**S**

**sacrificed**
74:18

**sample** 80:18

**scanning**
39:11

**scenario**
30:6 31:15
46:24 59:6

**scheduled**
93:20

**School** 89:13
93:9

**Sciences**
71:4,8,11
73:6 75:8

**scientist**
70:22

**scientists**
71:4,6
79:18

**Scoggins**
51:25

**scope** 81:18

**screen** 56:4

**scrutiny**
64:18

**seal** 82:15

**seals** 82:15

**Secretary**
8:18,20
11:6,13,15
13:4,13
15:4,6,20
16:11,13
17:4,6,10,
13,22,25
19:20 20:8
21:11,17,
20,22
22:13,15,
22 23:1,
22,25
24:4,22
25:6,11,
13,15
26:4,8,24
27:6,11,15
28:1,15,20
29:6,25
35:17
36:11,17,
20,22
40:18 42:9
43:15,24
46:1 63:6
69:17
72:22
73:10
80:2,4
81:10
82:4,20
86:17

**section** 6:20
19:2 28:9,
17,18,20
61:25

**sections**
14:11

**secure** 71:10

**security**
7:4,24
70:18
71:15 75:9
83:2,4

**seek** 16:6
34:4 63:22
77:4

**seeking**
12:15,18
37:2 38:18
70:6 79:15
84:1 85:18

**seeks** 84:22

**Select** 70:20

**Senate** 70:20

**send** 62:10
76:11

**sense** 11:4
12:20
89:18 90:4
93:22

**sensitive**
81:4 82:15

**separate**
36:9 37:9
42:2,4
72:18

**separately**
21:2 62:18

**September**
71:4,11

**serial** 77:22
79:2 82:25

**served**
39:20,22

**servers**
85:22
93:13,15

**service**
39:20

**set** 15:13
52:17
79:6,10
91:24

**sets** 68:6

**setting**
26:10
42:11

**severely**
65:22

**sheet** 38:11

**Sheffield**
17:17
18:4,20
23:15,17
51:20

**Shelley**
66:11

**She's** 46:10

**short** 27:13
44:1,17
45:13,15

www.huseby.com    Huseby, Inc.  Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 147

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019      Index: shot..state

```
      46:2 59:8          simplistic         sole   52:11         speculating
                         11:25                                   14:8
shot   35:15                                sort   35:15
                         simply               40:4 42:22        speculation
show   18:11             12:13,17             70:6 72:15          48:4 60:9
   40:6 42:25           41:22 43:4           73:13 87:6
   45:18 50:2           45:9 46:11                              split   13:10
   51:22                55:20               source   71:2
   58:15                56:24                88:22              spot   12:2
   59:20 60:1           64:10
   80:20                68:18               sovereign          stand   27:4
   83:24 89:4                                21:20,22
   92:1 94:20           single   22:25       23:18             standard
                        57:6 70:18           26:8,24            64:17
showing                 71:2 85:13           63:18             65:11
   48:25 53:4           86:22,25
                        87:2,24,25          space   77:15      standing
shown   25:15                                                  14:22
   55:15                sir   8:11,17       speak   33:18,
                        61:17               20                 start   32:2
shows   57:2            64:13                                  53:20
                                            speaking
side   33:10            Sistrunk            18:20              starters
                        19:4                                   80:6
sign   7:22                                 speaks   76:2
   77:4                 sit   79:9                             state   8:18,
                                            specific            20 11:6,13
signaling               sitting             16:2 31:22         13:18
   50:13                50:20               56:11              15:4,6,20
                        77:25               59:15,18          16:13,15
signed   7:2,                              75:4 76:2          17:4,6,8,
   4,25 27:15           situated           82:25 84:6          10,13,22
                        67:25              86:6               18:1 19:20
significantly                                                 20:8
   47:25                situation           specifically      21:11,17,
                        31:13               16:18 69:2         22 22:13,
similar                 52:20 58:4          74:10 75:2         15,22
   10:10                                    77:8 93:8         23:1,22,25
   27:17,20             sleep   92:18                          24:4,22
   52:9                                     specificity       25:6,11,
                        slews   71:2        48:6 60:10        13,17
similarly                                                     26:4,6,8,
   50:6 53:4            slight   41:4       specifics          25 27:8,
   67:25                                    31:20              11,15,17
                        sofa   73:2
Simple   91:9
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 148

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019 Index: state's..sufficient

28:1,15,22
29:6 30:1
31:6 34:6,
8 35:17
36:11,13,
17 38:22
46:1 47:2,
17 48:2,17
52:4,8,15
55:15
57:11 63:6
64:8,22
66:4 67:18
68:9,22,25
70:18
72:20,22
73:11
80:2,4
81:6,11
82:4,24
86:17
87:15 92:4

**state's**
13:4,13
40:18
42:10
53:20
64:24 66:4
69:17
82:20

**state-based**
69:8

**state-imposed**
76:6

**stated** 14:6
20:13 27:6
41:20

47:15
58:20
80:15

**statement**
49:2

**statements**
75:15

**states** 27:11
28:10
71:18

**statewide**
13:22
17:9,11
18:4
22:13,20,
25 23:2,15
24:1 26:4
27:6,18
28:1 30:11
33:22
43:10
49:20
55:20
56:13
85:10
94:22

**State's**
11:15
43:15,25

**statistically**
80:17

**status**
37:15,20

**statute** 9:17
19:2 21:25

23:24 26:6
32:11,17
33:4

**statutes**
37:1

**statutory**
19:1,6

**stay** 10:15
12:8,22
13:2 36:6
49:9

**step** 11:20,
24 14:20
21:4,6,10
59:1

**steps** 40:13

**Stiles** 50:4
51:2 57:22

**stipulate**
94:18

**stood** 25:17

**stop** 40:25

**strict** 64:17

**strictly**
20:4

**strikes** 57:4

**struck** 57:4,
9

**stuck** 9:8

**stuff** 37:17,
18 61:18
63:4

**stumbling**
91:17

**styling**
25:13

**subject**
20:25 47:2
91:20

**subjectively**
49:22

**submit** 48:15
62:13,15
92:13

**submitted**
16:11
19:18

**subsection**
16:2,20
19:15

**subsident**
74:4

**substantial**
36:15
60:22

**substantially**
70:1 72:10

**substantiate**
59:20

**sued** 24:22,
25 25:11
30:8 31:6
32:10 37:4

**sufficient**
47:4,6
48:13

www.huseby.com      Huseby, Inc.  Regional Centers      800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 149

**COALITION FOR GOOD GOVERNANCE, ET AL. vs ROBYN A. CRITTENDEN, ET AL.**
Transcript of Hearing Proceedings on 01/09/2019 Index: suggest..testified

60:11 61:8
64:8,25

**suggest**
54:15
73:15

**suggested**
92:20

**suggesting**
54:22

**suggestion**
85:15

**suit** 37:2

**summary**
73:25

**superintendent**
16:8,13,18
17:10,13
18:22 19:8
20:6 22:1,
2,13,15,18
26:2,4
27:6 28:2,
11 30:6,25
57:24

**superintendent
s** 16:8,15
18:6 20:10
28:15

**supervised**
89:18

**supervisor**
24:24
25:13

**support**

33:11
52:11

**suppose**
80:13

**supposed**
62:11
91:13

**supposedly**
9:18 89:18

**Supreme** 14:6
23:20
32:6,11
45:18
48:2,4,9
49:25
50:4,13
51:13,17,
25 52:13
53:4 56:13
58:8 64:11
65:1,24
66:2 67:13

**sustained**
57:13

**system** 38:20
39:8 48:25
49:11,18
53:20,22
54:4 55:22
56:11 61:4
65:20
66:15
70:11,13,
15,20
71:9,17,
18,20,24

72:2,20,22
73:1,4
74:9,20
84:6 86:18
87:4 89:20

**systemic**
55:20 61:4
85:10 88:4

**systems**
39:13
55:10 65:6
66:20 67:8
69:6
74:11,18
78:15 79:6

---
**T**
---

**table** 7:11
8:13

**tabulates**
36:20
86:18

**Taggart**
52:6,18
53:4,9
56:13

**tailored**
85:2

**taking** 42:1,
2 58:13
94:20

**talk** 43:4
75:2

**talked** 74:6

**talking**
40:11,25
42:8 74:10
75:22

**talks** 74:20,
24 75:18

**targeted**
88:4

**technology**
90:2

**tediously**
59:4

**telephone**
51:18

**Temple** 89:15

**term** 22:18

**terms** 40:4
41:25
43:20 44:4
45:4,11,24
47:13 48:6
49:22
53:18
55:18
58:17
63:18
82:11 85:2

**test** 43:2
64:20
65:2,9
66:9

**testified**
80:13
81:11

www.huseby.com    Huseby, Inc.  Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 150

**testimony**
  55:18 82:6

**That'll**
  12:24

**that's**  9:11,
  13,18,20
  10:6,22
  18:17 19:4
  23:11
  26:22
  28:15
  29:13
  32:11 33:6
  34:6 37:9
  39:2,8
  40:4,8,11,
  17,20
  42:18,22
  43:13,25
  44:25
  45:17,22
  49:1 75:2
  77:1 89:8
  90:18
  91:22

**there's**
  20:1,6
  22:18
  27:13
  32:4,18
  37:2 44:6
  78:4 88:9
  89:24
  90:13
  93:15

**they're**
  10:10

31:18
38:18 40:2
47:11
75:20 90:1
91:11

**they've**  31:6
  75:20

**thing**  25:15
  42:8 44:2
  46:20
  47:13
  70:24
  90:18

**things**  7:18
  36:22 43:6
  54:18,24
  61:15
  74:24 77:6
  86:20 94:8

**third-party**
  14:4 27:17

**Thomas**  58:8

**thought**  21:9

**thousands**
  33:15,18

**threat**  71:24

**threshold**
  14:15 48:1

**thumb**  45:22

**thwart**  66:20

**till**  88:11

**time**  11:20,
  24 12:2

23:22
32:18
33:11
39:20
67:13
77:15
84:24
88:1,2
92:6,18

**times**  10:13
  27:11

**Title**  15:2
  18:24

**today**  7:15
  9:15,18
  11:22
  26:18 37:6
  40:13 82:2

**told**  70:18
  85:25

**Tolson**  19:4

**total**  43:8,
  17,24,25
  48:25
  58:13

**totally**
  56:18 58:4
  71:18

**totals**  56:20

**Totenberg**
  11:8 53:22
  54:15
  81:13

**Totenberg's**

55:9

**touches**
  21:18

**touchscreen**
  66:20 67:8
  69:6
  74:10,18,
  20

**tower**  79:8

**traditional**
  66:15
  74:18

**trail**  82:15

**transcript**
  82:4

**transient**
  72:6

**transposing**
  22:10

**treated**
  67:24
  68:15

**trial**  40:6
  50:10,13
  51:6,11,
  13,15,17,
  24 52:2,6,
  10 53:6
  54:15
  69:2,4
  93:20

**troublesome**
  78:25

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 151

**true** 49:13
55:9,10

**trusted** 71:1

**truth** 45:9

**type** 40:10
52:20
59:15,20,
22 74:15
75:11

**types** 66:22
75:17

**Tyson** 8:22
29:20,22
46:18,20
69:17,22
82:9 83:9,
13 88:13

**U**

**ultimately**
83:22

**unanimous**
71:6

**under-vote**
55:20
56:18 57:9

**under-votes**
66:18

**underlying**
63:20
78:20

**understand**
9:13,17,22
15:24 21:9

26:20 28:9
40:2 61:20
79:18 87:6
91:13

**understanding**
67:17
86:11

**understands**
46:11

**understood**
90:11

**undertaken**
42:13
73:13

**undervote**
49:11,18

**unexplainable**
55:17

**unexplained**
49:18
56:18

**unfettered**
80:2 81:4

**unfortunate**
74:13

**unnecessary**
81:8

**unrefuted**
39:18

**unrelated**
80:10

**unreliability**
56:10

**unreliable**
55:11
70:25 72:1

**unverified**
47:24

**uphill** 62:2

**urge** 52:9

**utilizing**
69:6

**V**

**valid** 31:13
46:22 60:6
80:17,22

**variegation**
20:4

**variety**
31:11

**verifying**
74:13

**versus** 8:8
44:10
45:11

**victory**
13:18
18:13 44:1
45:20
53:15
58:15,18
59:8

**views** 76:4

**Vince** 80:1

**Vincent** 8:18

11:6

**violate**
72:10

**violated**
69:10

**violating**
71:25

**violation**
42:15 70:4
73:6,8

**violations**
42:17

**virtually**
21:18 66:8

**virus** 73:2

**vote** 18:11
19:22
34:13
39:1,2
44:4,6
56:20
63:15,22
65:13,22
66:6 68:2,
4,11,20,24
69:6 72:2,
6 74:13

**voted** 44:6
45:4 67:24
68:1

**voter** 17:8,9
34:11
65:20
66:20

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 152

68:20 72:4

**voter-verified**
74:18

**voters**  19:22
34:13
64:24
68:11,15
69:2,8
72:1,11
74:11 76:4

**votes**  13:20
14:4 16:10
17:20
19:17 31:2
41:22
43:9,13,
15,17,22,
24,25
44:1,24
45:1,2,10,
11,13,15,
18 46:2,8
47:1,4,17
50:2 53:6,
13 55:22
57:20
58:1,6,13,
18,20,24,
25 59:6,18
71:1 72:2,
4 80:20,
22,25 81:2
83:25 84:1
86:22
87:18

**voting**
13:24,25

38:20
39:6,13
44:10 45:4
50:1 53:6,
13 55:17,
22 60:4
66:20 68:1
69:6 74:11
80:4,8
81:6 82:13
85:11

**vulnerabilitie
s**  75:6,9,10

**vulnerability**
66:22

**vulnerable**
54:4 73:8

_____

**W**

**waiting**
60:13

**waived**  10:25
21:22
75:25

**walked**  59:4

**wanted**  38:10

**watch**  89:18,
25

**ways**  49:20

**Weber**  66:11,
15 74:8

**WEDNESDAY**
6:2

**weeks**  62:22

**weigh**  65:6
67:2

**weighing**
75:13

**weighty**  61:2

**Wexler**  64:20
70:8,9

**we'll**  7:15
11:20 13:8
36:13 92:2

**we're**  9:11,
15,20
12:17
13:13 33:2
37:2 46:20
92:20

**we've**  45:22
77:22 79:2
90:13

**what's**  42:22
78:8

**whip**  35:15

**who's**  8:11

**wide**  84:6
87:4

**widespread**
50:11,15
93:1

**Willard**  25:2

**win**  54:25
87:13

**winner**  45:20

**wiped**  45:20

**witnesses**
7:15

**won**  41:20

**wonderful**
49:2

**won't**  7:2

**word**  19:6
35:11 65:1

**words**  45:15
58:15 68:2
88:8

**work**  62:22
79:6 82:25
89:8 91:15

**working**  57:8

**works**  9:11
48:2

**worry**  62:1
63:11

**worse**  73:10

**worst**  32:24

**worst-case**
59:6

**Worth**  31:11
89:13

**wouldn't**
15:13

**wrap**  19:18
20:6

www.huseby.com      Huseby, Inc.  Regional Centers      800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Page 153

**write-in**
  44:22

**wrong**  17:20,
  22 57:2,4
  87:11,18
  91:8

--------

         **Y**

**y'all**  22:4

**year**  25:4
  62:11
  81:17

**years**  24:2
  72:15

**yesterday**
  24:6 42:20

**you'll**  75:10

**you're**  26:20
  30:22 32:6
  34:13
  41:24
  45:15
  88:10

**you've**  29:8
  40:20
  45:18
  93:13