# IN THE SUPREME COURT
## STATE OF GEORGIA

## CASE NO. S19A0769

_____

COALITION FOR GOOD GOVERNANCE,
RHONDA J. MARTIN, SMYTHE DUVAL AND JEANNE DUFORT,

Plaintiffs-Appellants,

v.

BRAD RAFFENSBERGER, Secretary of State, FULTON COUNTY BOARD OF
REGISTRATION AND ELECTIONS, GWINNETT COUNTY BOARD OF
REGISTRATION AND ELECTIONS, AND GEOFF DUNCAN,

Defendants-Appellees.

_____

On Appeal from the Superior Court of Fulton County, Case Number
2018CV313418 Hon. Adele P. Grubbs

_____

**BRIEF OF APPELLEE FULTON COUNTY BOARD OF REGISTRATION
AND ELECTIONS**

_____

PATRISE PERKINS-HOOKER, County Attorney
KAYE W. BURWELL, Deputy County Attorney
CHERYL RINGER, Senior Assistant County Attorney
DAVID R. LOWMAN, Assistant County Attorney

OFFICE OF THE FULTON COUNTY ATTORNEY
141 Pryor St., S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246
david.lowman@fultoncountyga.gov
Attorneys for Appellee Fulton County Board of Registration and Elections

## **TABLE OF CONTENTS**

 **Page**

I.     STATEMENT OF JURISDICTION    6

II.    STATEMENT OF THE CASE    6

III.   STATEMENT OF FACTS    7

IV.   ARGUMENT AND CITATION OF AUTHORITY    9

  A. Standard of Review    9

  B. Enumeration of Error    10

    1. The trial allowed reasonable time for the parties
      to conduct discovery.    10

    2. The trial court correctly ruled in denying Plaintiffs' Motion for
      Continuance.    13

    3. The trial court correctly ruled in disallowing Plaintiffs to discover
      Certain evidence of the programming of the election system.    15

    4. The trial court correctly denied Plaintiffs' Motion to Compel.    17

    5. The trial court's factual finding that "the most votes
      that the Plaintiff has shown that could be in any way
      arguably considered irregular or illegal is approximately
      32,000 votes" is not clearly erroneous.    18

    6. The trial court applied the correct legal standards in rejecting
      Plaintiffs' claim that systemic irregularities in the State of Georgia's
      electronic voting system rendered the system so defective as to cast
      doubt on the result of the election.    20

    7. The trial court correctly ruled in rejecting Plaintiffs' demand for jury
      trial. .    22

IV.   CONCLUSION.    25

# TABLE OF AUTHORITIES

## Cases

*Curling v. Kemp,*                                                    20
334 F. Supp. 3d 1303 (N.D. Ga. 2018)

*Smith v. Northside Hospital, Inc.*,                                  10
347 Ga.App.700, 703 (2018)

*N. Druid Dev., LLC v. Post, Buckley, Schuh & Jernigan, Inc.*,       13
330 Ga. App. 432, 434-435 (2014)

*Jackson v. State,*                                                   14
294 Ga. 431, 434 (2014)

*Meade v. Williamson*, 293 Ga. 142 (2013)                            20

*Reed v. Reed*,                                                       14
289 Ga. 193, 193 (2011)

*Regents of the Univ. Sys. of Ga. v. Ambati*,                     17, 18
299 Ga.App. 804, 812 (2009)

*Brown v. Fokes Properties2002, Inc.*,                                7
283 Ga. 231, 232 (2008).

*Smith v. DeKalb County*,                                            16
288 Ga.App. 574 (2007)

*McIntosh County Board of Elections et al. v. Deverger*,              9
282 Ga. 566 (2007)

*Banker v. Cole,*                                                     20
278 Ga. 532 (2004)

*Middleton et al v. Smith,*                                           10
273 Ga. 202 (2000).

*Brown v. Brewer*,
237 Ga.App. 145, 148 (1999)                                           17

*Hunt v. Crawford*,                                               9, 18, 19
270 Ga. 7 (1998)

*Head v. Williams*,                                                      14
269 Ga. 844 (1998)

*City of Arcade v. Emmons*,                                              19
268 Ga. 230 (1997)

*Streeter v. Paschal*,                                                 9, 14
267 Ga. 2907(1996)

*Stiles v. Earnest,*                                                     20
252 Ga. 260 (1984)

*Taggart v. Phillips et al.*,                                     11, 21, 23
242 Ga. 454 (1978)

*Henderson v. County Bd. of Registration and Elections*,                22
126 Ga. App. 280 (1972)

**Statutes**

| | |
|---|---:|
| O.C.G.A. § 5-6-34 | 6 |
| O.C.G.A. § 9-10-167 (a) | 14 |
| O.C.G.A. § 9-11-41(b) | 7, 9, 23 |
| O.C.G.A. § 9-11-52(a) | 9 |
| O.C.G.A. § 21-2-70 | 8 |
| O.C.G.A § 21-2-520 | 5 |
| O.C.G.A § 21-2-522 | 18 |
| O.C.G.A. § 21-2-523 | 22 |
| O.C.G.A. §21-2-525 | 13 |
| O.C.G.A. §21-2-526 | 21, 22 |
| O.C.G.A § 21-2-528 | 6 |

# I.    STATEMENT OF JURISDICTION

FCBRE concurs that this Court has jurisdiction of this appeal of a final order, pursuant to Article VI, Section 6, Paragraph II of the Georgia Constitution and O.C.G.A. §§ 5-6-34 and 21-2-528.

# II.    STATEMENT OF THE CASE

On November 23, 2018, Plaintiffs filed suit in Fulton County Superior Court under the Georgia election contest statute, OCGA § 21-2-520 *et seq*., alleging that the unreliability and vulnerability of the electronic voting system used by the State of Georgia places doubt on the results of the Lieutenant Governor's race.  Plaintiffs named DeKalb County Board of Registration and Elections, Fulton County Board of Registration and Elections ("FCBRE"), Gwinnett County Board of Registration and Elections and the Secretary of States as Defendants.  Plaintiffs subsequently dismissed the DeKalb County Board of Registration and Elections (R- 181).

The case was assigned to the Honorable Adele P. Grubbs.  On December 5, 2018, Judge Grubbs scheduled a hearing on motions to dismiss for January 9, 2019 and set the trial of the case for January 17, 2019 (R- 171).

Plaintiffs filed a Motion for Continuance on January 14, 2019 (R- 881). After being notified that the continuance would be denied, Plaintiffs subsequently filed a Motion to Compel and for Additional Discovery (R- 979).  In her Order of January 16, 2018, Judge Grubbs notified the parties that the Motion to Compel

would not continue the case and the trial would proceed as scheduled on January 17, 2019 (R- 1034). Plaintiffs then filed a jury demand on January 16, 2019 (R-1012). Judge Grubbs denied the jury demand on January 17, 2019 (T-170:5). On January 18, 2019, after Plaintiffs rested their case, the trial court granted Defendants' Motion for Involuntary Dismissal pursuant to O.C.G.A. § 9-11-41(b) (R- 14).

## III.   STATEMENT OF FACTS

The court cannot consider factual representations in a brief which do not appear on record. Arguments and representations made in court briefs do not constitute record evidence. *Brown v. Fokes Properties2002, Inc.*, 283 Ga. 231, 232 (2008). To the extent that Plaintiffs Statement of Facts contains mere argument and not facts set forth in the record of the case, Defendants object thereto.

*By way of clarification and background, Appellee provides the following additional facts:*

On November 6, 2018, a state-wide general election was held. One of the races was for Lieutenant Governor for the State of Georgia. (Petition p. 1) (R-19). The two candidates were Geoff Duncan and Sarah Riggs Amico. (Petition ¶ 1) (R-20). Geoff Duncan received the most votes in the Contested Election. (Petition ¶17) (R- 28). On November 17, 2018, the Secretary of State certified the election results. (Petition ¶ 19) (R- 28).

The State of Georgia has a uniform voting system that requires all counties to use the State-mandated DRE-based voting system. (T- 578:24 – 579:7). Defendant FCBRE has 3,108 DRE voting machines (T- 575:22). 70% to 80% of these machines are purchased by the State of Georgia and the remaining 20% to 30% are purchased by the County (T- 579:7-12). The State of Georgia owns the State voter registration system and maintains the GEMS database (T- 562:25-563:2) and (T- 572:25-573:3). Pursuant to O.C.G.A. § 21-2-70, as the Superintendent of Elections in Fulton County, the FCBRE conducts elections and verifies elections results for Fulton County. Mr. Richard Barron, as Director of Registration and elections performed these duties on behalf of FCBRE for the contested election (T- 561-562).

In its Order of January 11, 2019, the trial court provided that before the trial of January 17, 2019, Defendants were to provide Plaintiffs with GEMS reports maintained by Defendants (Order at 5.) (R- 878). Plaintiffs are also entitled to "inspect the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition, paragraphs 40, 41, 44, 45, and 46." (Order at 6.) (R- 879). Further, "Plaintiffs may also examine the internal memory storage of each such DRE unit." (Order at 6.) (R- 879). But Plaintiffs cannot "in any way damage the DRE machines or information contained therein ... [or] copy, image, save, or retain the DRE

machines or the information contained therein ... [ or] upload or introduce any information into the DRE machines." (Order at 6.) (R- 879). "Destructive testing shall not be permitted." (Order at 6.) (R- 879).

When Appellee FCBRE offered to allow Plaintiffs to inspect the DRE machines, Plaintiffs refused. Thus, Plaintiffs did not inspect any DRE machines, despite the fact that Defendant FCBRE made them available. (R- 1009). Instead, of participating in this discovery, Plaintiffs filed a Motion for Continuance, and a subsequent Motion to Compel and for Additional Discovery, which were both denied by the trial court. (R- 1034) (T-18:14-21). On January 18, 2019, the second day of trial, the trial court granted Defendants' Motion for Involuntary Dismissal pursuant to O.C.G.A. § 9-11-41(b) (R- 14).

## IV. ARGUMENT AND CITATIONS TO AUTHORITY

### A. Standard of Review

A trial court's findings in an election contest is not to be disturbed unless "clearly erroneous." *McIntosh County Board of Elections et al. v. Deverger*, 282 Ga. 566, 567 (2007) (citing Streeter *v. Paschal*, 267 Ga. 207, 208 (1996)). In all non-jury trials, "[f]indings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." O.C.G.A. § 9-11-52(a).

In *Hunt v. Crawford,* 270 Ga. 7 (1998), this Court established the proper role

of the trial court when resolving an election contest: "[t]here is a sanctity to elections under our system of self-government, wherein the will of the people is the supreme law. The setting aside of an election in which people have chosen their representative is a drastic remedy that should not be undertaken lightly, but instead should be reserved for cases in which a person challenging an election has clearly established a violation of election procedures and has demonstrated that the violation has placed the results of the election in doubt." The trial court correctly found that the appellant failed to meet its burden of proving that the results of the Lt. Governor's race do not reflect the will of the people. "It is not sufficient to show irregularities which simply erode confidence in the outcome of the election. Elections cannot be overturned on the basis of mere speculation or an appearance of impropriety in the election process." *Middleton et al v. Smith,* 273 Ga. 202 (2000).

### Enumeration of Error

1.  **The trial court allowed reasonable time for the parties to conduct discovery.**

A trial court has broad discretion to control all discovery matters. *Smith v. Northside Hospital, Inc.*, 347 Ga.App.700, 703 (2018). "A trial court will only abuse its discretion when its ruling is 'unsupported by any evidence of record or [when] that ruling misstates or misapplies the relevant law.'" *Id.*

Under Georgia law, an election contest is not treated as an ordinary civil

action. The Election Code does not provide for discovery. It is in the trial court's discretion to allow discovery in such a contest. *See Taggart v. Phillips et al.*, 242 Ga. 454, 455 (1978). In the present case, contrary to Plaintiffs' assertions, in its discretion, the trial court did grant the parties discovery, just not of the scope and type Plaintiffs wanted.

In its Order of January 11, 2019, the trial court provided that before the trial of January 17, 2019, Defendants were to provide Plaintiffs with GEMS reports maintained by Defendants (Order at 5.) (R- 878). These reports were provided. Plaintiffs were also entitled to "inspect the DRE machines in post-election mode, using post-election memory cards that were used in the voting locations identified by Plaintiffs in the Petition, paragraphs 40, 41, 44, 45, and 46." (Order at 6.) (R- 879). Further, "Plaintiffs may also examine the internal memory storage of each such DRE unit." (Order at 6.) (R- 879). But Plaintiffs cannot "in any way damage the DRE machines or information contained therein ... [or] copy, image, save, or retain the DRE machines or the information contained therein ... [ or] upload or introduce any information into the DRE machines." (Order at 6.) (R- 879). "Destructive testing shall not be permitted." (Order at 6.) (R- 879).

It should be noted that the court provided that the Plaintiffs were to inspect the DRE machines in "post-election mode." (R- 879). Plaintiffs chose not to complete such inspection (R- 896). When Appellee FCBRE offered to allow

Plaintiffs to inspect the DRE machines pursuant to the protocol that the Secretary of State suggested, Plaintiffs refused (R- 1009). Thus, Plaintiffs did not inspect any DRE machines, despite the fact that Defendant FCBRE made them available.

If Plaintiffs chose to follow the trial court's direction they could have gathered all of the information they have argued they were denied through discovery. At trial, Michael Barnes, Director of Elections for the Secretary of State's Office, testified that post-election parallel testing would provide the information Plaintiffs sought through their discovery requests and would have validated the election results and discovered any irregularities and/or malware in the system. (T-267:11 – 269:25). This is unrefuted testimony and the only evidence in the record on this issue.

Plaintiffs filed an Emergency Motion for Inspection on November 29, 2018 (R- 96), Plaintiffs waited 41 days until January 9, 2019 to advance this request (Supp. T- 95:21-24). On January 10, 2019, Plaintiffs' counsel proposed a protocol for inspection that was abandoned once the Court entered its January 11, 2019 Order, which denied much of what Plaintiffs' proposed protocol sought to include (R- 874). On January 11, 2019, the trial court entered an Order providing Plaintiffs with certain access (R- 874). Plaintiffs were simply not satisfied with the breadth and depth of that access.

Instead, of participating in this discovery, Plaintiffs filed a Motion for Continuance, and a subsequent Motion to Compel and for Additional Discovery. While the Election Code dos not provide for discovery, the trial court rightfully used its discretion in allowing discovery of the type it ordered and in properly denying the Plaintiffs' Motion to Compel and for Additional Discovery.

The trial court's ruling should be upheld as, the Court of Appeals has held, "[c]ourts are afforded broad discretion to control discovery . . ." and that the Court, will not reverse a trial court's ruling on such matters absent an abuse of discretion." *N. Druid Dev., LLC v. Post, Buckley, Schuh & Jernigan, Inc.*, 330 Ga.App. 432, 434-435 (2014).

### 2. The trial court correctly ruled in denying Plaintiffs' Motion for Continuance.

Under Georgia law, the interests of finality in elections require that challenges to elections be resolved in an expeditious manner. As is abundantly clear in the Election Code, a contest is not treated as an ordinary civil action. The procedure is designed for expeditious and timely resolution of election issues. The election contest statute provides for the prompt resolution of a contest—within 20 days of answer. O.C.G.A. §21-2-525(a). The hearing date of January 17, 2019 complied with O.C.G.A. §21-2-525(a). This hearing was set on December 5, 2018, (R- 171), giving the parties 43 days in which to prepare for the final hearing.

"All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require." O.C.G.A. § 9-10-167 (a).

The "[d]enial of a motion for continuance is in the sound discretion of the trial court, and [an appellate Court] will not interfere unless there was a clear abuse of discretion." *Jackson v. State*, 294 Ga. 431, 434 (2014); *Head v. Williams*, 269 Ga. 844 (1998) (since petitioner received adequate notice of election challenge hearing date, the trial court did not abuse its discretion in denying motion for continuance). "[A]nd where there is any evidence to support the trial court's finding, [an appellate Court] will not find there was an abuse of discretion." *Reed v. Reed*, 289 Ga. 193, 193 (2011).

In its discretion, in compliance with the election Code and in furthering the interests of justice and the need for finality of elections, the trial court denied Plaintiffs' motion for continuance. "A trial court's findings in an election contest will not be disturbed unless clearly erroneous." *Streeter v. Paschal,* 267 Ga. 207, 208 (1996). Thus, the trial courts' determination that the parties had ample time to proceed should stand.

**3.      The trial court correctly ruled in disallowing Plaintiffs to discover certain evidence of the programming of the election system.**

In conjunction with the Secretary of State, FCBRE proposed a protocol for examination of the internal memory storage on the DRE units (the majority of such units are property of the State of Georgia) (R- 919).  To access the election result file stored in the internal memory of a DRE, a new memory card containing (1) the election ID and (2) blank ballot information for the election corresponding to the election results being recovered from the internal memory must be inserted into a DRE unit (R- 1134).  This allows the DRE unit to locate the specific archive file in its internal memory storage(R- 1134).  The archive file is then extracted from the internal memory and saved to the inserted memory card (R- 1134).  Thus, the inserted memory card would contain the election information extracted from the DRE's internal memory storage (R- 1134).  The internal memory for the election can then be viewed through the DRE. This protocol tracks the normal process for recovering election data stored on the internal memory of a DRE unit, and it does not damage the DRE machines or otherwise require imaging or the introduction of any information into the DRE machines (R- 1134).

The trial court considered and agreed to this protocol and, as discussed above, ordered an inspection setting out three specific requirements for the parties to follow related to this discovery. (Order at 5) (R- 878).  The Court specified that

only five reports from the GEMS database should be provided (R- 878), recognizing the confidentiality of the GEMS database, as explained by the Court of Appeals in *Smith v. DeKalb County*, 288 Ga. App. 574 (2007).

On January 14, 2019, Plaintiffs' representative proposed a vastly different protocol for examining the DRE machines, demanding that the counties remove the outside case on the DRE machines and insert outside computer chips or adapters into the machines before imaging the machines (R- 1010). Thus, Plaintiffs would not only extract but they would alter, even temporarily, the DRE machines hardware (R- 1010). In fact, Plaintiffs' proposed protocol would require altering the motherboard on certain models of DRE units (TS models), installing new computer chips (EEPROM chips) on those DRE units, and then imaging the DRE units (R- 881, 899). For other models of DRE machines in circulation (TSx models), Plaintiffs' protocol requires an outside adapter (JTAG adapter) to be connected to the DRE unit, a "flash probe" run on the DRE unit, and then an image of the internal memory copied to a laptop (R- 1010). These procedures are not confined to an examination of the internal memory for the November 6, 2018 election, but instead copy everything on the DRE unit, including information for past elections and critical files related to the architecture of the machines (R- R- 1010).[1]

---

[1] The Order says that Plaintiffs may not "copy, image, save or retain the DRE

Consequently, the procedure which Plaintiffs desired to undertake would open up the DRE machines and the voting system of the State to future mischief and vulnerability. (R- 1071). Thus, the trial court did not abuse its discretion by adhering to the protocol created by the Secretary of State and limiting Plaintiffs' access and modification of the DRE machines (R- 874).

### 4. The trial court correctly denied Plaintiffs' Motion to Compel.

On January 16, 2019, after the court denied Plaintiffs' motion for continuance. Plaintiffs then filed a motion to compel seeking discovery that was outside the scope of the court's order and moved for additional discovery (R- 979). The trial court denied that motion (T-18:14-21).

In upholding a trial court's denial of a motion to compel, the Georgia Court of Appeals has held, "[a] trial court's decision on a discovery matter will not be disturbed unless a clear abuse of discretion is shown. Also, to prevail, on appeal, [movant] must show that the alleged error was harmful." *Regents of the Univ. Sys. of Ga. v. Ambati*, 299 Ga.App. 804, 812 (2009) (citing *Brown v. Brewer*, 237 Ga.App. 145, 148 (1999).

The trial court did not abuse its discretion in allowing discovery of the type it ordered and in properly denying the Plaintiffs' Motion to Compel and for

---

machines or the information contained therein." (Order at 6.) (R- 879).

Additional Discovery (T-172:14-21). Further, per the holding in *Ambati*, Plaintiffs cannot show any harm caused by this denial, as had they participated in the court's ordered course of discovery, they could have gathered all of the information they have argued they were denied through discovery.

**5.** **The trial court's factual finding that "the most votes that the Plaintiff has shown that could be in any way arguably considered irregular or illegal is approximately 32,000 votes" is not clearly erroneous.**

"It is presumed that **election** returns are valid, and the party contesting the **election** has the burden of showing an **irregularity** or illegality sufficient to change or place in doubt the result of the **election**." *Banker v. Cole,* 278 Ga. 532, 535(4), 604 S.E.2d 165 (2004) (citations and punctuation omitted). On the other hand, "a trial court's findings in an **election** contest will not be disturbed unless clearly erroneous." Id. at 533(1), 604 S.E.2d 165.

Plaintiffs' recall of what they proved below is quite disingenuous. None of Plaintiffs' witnesses were able to provide credible admissible evidence showing that illegal votes were received or legal votes were rejected at the polls sufficient to change or place in doubt the contested election as required by O.C.G.A § 21-2-522.

Plaintiffs put forth a witness, Christopher Brill, whose testimony was only accepted for purposes of statistical analysis. The Court did not allow Mr. Brill to testify as to the alleged rationale behind the under-vote, as he had no background in said subject (T - 246:17 - 22). Plaintiffs did not have Philip Stark present to

testify and thus he provided no evidence of any alleged irregularity or illegal votes (T - 286:18 - 288:2).

Lastly, Matthew Bernhard's testimony as to alleged machine irregularities was not admitted by the Court below once the Court learned that Mr. Bernhard had based his conclusions on Philip Stark's analysis (T - 346:2-6; T - 356:25-357:2). Consequently, Plaintiffs did not present any evidence of irregularity or fraud in the challenged election.

"It is presumed that election returns are valid, and the party contesting the election has the burden of showing an irregularity or illegality sufficient to change or place in doubt the result of the election." *Hunt v. Crawford*, 270 Ga. 7 (1998). Plaintiffs only pointed out a change in the predicted percentage of under-vote, which is not evidence of any alleged irregularity or illegal votes. (T- 256:6 - 257:3). As such, the under-vote is not sufficient to upend the entire election.

"The setting aside of an election in which the people have chosen their representative is a drastic remedy that should not be undertaken lightly, but instead should be reserved for cases in which a person challenging an election has clearly established a violation of election procedures and has demonstrated that the violation has placed the result of the election in doubt." *Hunt* at 10 (citing *City of Arcade v. Emmons*, 268 Ga. 230, 233-234 (1997)).

The trial court's factual finding as to the number of votes that Plaintiffs demonstrated to be at issue by credible evidence is not clearly erroneous and must be upheld.

**6.      The trial court applied the correct legal standards in rejecting Plaintiffs' claim that systemic irregularities in the State of Georgia's electronic voting system rendered the system so defective as to cast doubt on the result of the election.**

"It is presumed that election returns are valid, and the party contesting the election has the burden of showing an irregularity or illegality sufficient to change or place in doubt the result of the election." *Banker v. Cole,* 278 Ga. 532, 535 (2004); *Meade v. Williamson*, 293 Ga. 142, 143 (2013). Further, "a trial court's findings in an election contest will not be disturbed unless clearly erroneous." *Banker* at 533; *Meade* at 143.

The Georgia Supreme Court has also recognized that the result of an election may be voided where systemic irregularities in the process of the election are sufficiently egregious to cast doubt on the result. *Meade* at 14; see also *Stiles v. Earnest,* 252 Ga. 260 (1984). In *Meade*, this court found that the evidence presented at trial failed to establish a sufficient number of specific irregular or illegal ballots that would change or place in doubt the results of the election. In Meade, the supposed evidence of alleged systemic issues was largely speculative and insufficient to support the trial court's conclusion that irregularities in the election process were shown to cast doubt upon the

results. A similar conclusion should be reached here. Plaintiffs have produced little or no evidence of machine malfunction and are seeking to rely on speculation.

Plaintiffs' general arguments regarding the alleged irregularities of the Georgia voting system are not relevant in the present case. These arguments are allegations made in the *Curling* case[2], and are not at issue in the present case, which is an election contest and not about the efficacy of the voting system of Georgia.

Further, Plaintiffs failed to put forth evidence of alleged systematic irregularities. Plaintiffs allegations were not supported by evidence and were rebutted by the testimony of Richard Barron with respect to the alleged "cancelled ballots" (T - 584:20 – 585:20). Further, Plaintiffs overestimate the weight of their claim with respect to the alleged irregularities. Plaintiffs put forth a claim that system irregularity played a role in the election at issue. However, Plaintiff failed to support that claim with credible evidence. Plaintiffs asked that the Court allow telephonic testimony from what was apparently a key expert to their case. Plaintiffs failed to follow the Superior Court Rules for provision of electronic witness testimony and were therefore not allowed to present a witness via telephone (T - 286:18 - 288:2). As such, Plaintiffs failed to produce a recognized

---

[2] *Curling v. Kemp*, 334 F. Supp. 3d 1303 (N.D. Ga. 2018).

expert or other evidence that could support their claims with respect to the voting system.  It was Plaintiff's failure in prosecuting their case, not the Court's application of an incorrect legal standard that resulted in the Plaintiff's lack of evidence and the dismissal of their case below.

Because Plaintiffs have failed to show systemic irregularities in the election that were sufficiently egregious to cast doubt on the result the trial court's findings below should not be disturbed.

**7.    The trial court correctly ruled in rejecting Plaintiffs' demand for jury trial.**

On January 16, 2019 on the eve of trial, Plaintiffs filed a jury demand (R 1012).  Plaintiffs' demand read in its entirety: "Pursuant to O.C.GA. § 21-2-526, Plaintiffs demand a trial by jury." (R-1012).

O.C.GA. § 21-2-526 (a) provides:

All issues of a contest shall be fully tried and determined by the court without the aid and intervention of a jury, unless a litigant to the contest shall demand a trial by jury at any time prior to the call of the case; and *the court shall determine that it is an issue which under other laws of this state the litigant is entitled to have tried by a jury*. Upon such determination, a jury shall be impaneled and the cause shall proceed according to the practice and procedure of the court in jury cases. (Emphasis added).

Pursuant to provision, Plaintiff must demonstrate there is an issue for a jury to determine. In this instance, Plaintiff made no such assertion or showing. It is in the Court's discretion to deny a jury trial in an election contest when there is no issue which entitles a litigant to a jury. *See Taggart v. Phillips*, 242 Ga. 454 (1978).

> "[U]nlike other situations where demand alone is sufficient, here there are two requirements: 1) demand, and 2) a determination that there are issues which under other laws of this State the litigant is entitled to have tried by a jury." *Henderson v. County Bd. of Registration and Elections*, 126 Ga. App. 280 (1972).

Because Plaintiffs made no such showing, they were not entitled to a jury trial. Further, if there were to be a jury trial of the statewide election contest involved in this case, which is based on alleged "massive irregularities experienced almost statewide in the 2018 election" (R- 882, there would presumably be the need for juries to be impaneled from multiple if not all 159 counties of the State of Georgia.

O.C.GA. § 21-2-526 (b) provides:

(b) In a case contesting the result of a primary or election held in two or more counties, ***each issue to be tried by a jury shall be tried by a jury impaneled in the county where such issue or a part thereof arose***. Such jury shall be impaneled by the superior court of the

> county in which the jury trial is to be conducted; such trial shall be
> presided over by the judge as described in Code Section 21-2-523;
> and such trial shall proceed, insofar as practicable, as though it were
> being conducted in the county of the superior court having jurisdiction
> of the contest. (Emphasis added).

Plaintiffs made numerous assertions regarding alleged irregularities in counties other than those who are parties to this case.[3] Consequently, multiple juries would have needed to have been impaneled to try any jury issues, if any existed. The interests of finality in elections require that challenges to elections be resolved in an expeditious manner. As is abundantly clear in the Election Code, a contest is not treated as an ordinary civil action. The procedure is designed for expeditious and timely resolution of election issues. Plaintiffs demand for jury was unsupported by evidence or argument that there exists an issue that entitles it to a jury trial; thus, the trial court properly denied Plaintiffs' jury demand. As the standard is an *abuse of discretion* when determining whether a trial court erred in denying a jury trial in an election contest case. *Taggart* at 455, the trial court's denial should stand.

    Appellee FCBRE hereby adopts the arguments made in Co-Appellees' briefs

---

[3] In Exhibit B, Attachment C to their Petition, Plaintiffs list 10 additional counties: Quitman, Hancock, Jefferson, Atkinson, Ben Hill, Clay, Taliaferro, Twiggs, Randolph and Coffee (R. 74).

## CONCLUSION

Appellants had the burden of showing that an irregularity called into question the result of the election. Appellants did not carry this burden. The trial court correctly granted Defendants' Motion for Involuntary Dismissal under O.C.G.A. § 9-11-41 (b), after Appellants rested, concluding that Appellants failed to prove a sufficient number of irregular or illegal votes in this election contest to place in doubt the result. For the reasons stated herein above. The trial court's decision should be affirmed.

Respectfully submitted this 27th day of March, 2019.

**OFFICE OF THE FULTON COUNTY ATTORNEY**
Patrise Perkins-Hooker
County Attorney
Georgia Bar No. 572358
Patrise.perkins-hooker@fultoncountyga.gov


/s/ Kaye Woodard Burwell
Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.burwell@fultoncountyga.gov
Cheryl Melissa Ann Ringer
Georgia Bar No. 557420
Cheryl.ringer@fultoncountyga.gov
David Lowman
Georgia Bar No. 460298
David.lowman@fultoncountyga.gov
Attorneys for Defendant Fulton County BRE

141 Pryor Street, S.W.

Suite 4038
Atlanta, Georgia 30303
Office: (404) 612-0246
Fax:    (404)730-6540

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing Brief of

Appellee Fulton County Board of Registration and Elections upon all counsel of

record be email addressed to: this filing to all counsel of record.

Bruce P Brown
Bruce P. Brown Law, LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
bbrown@brucebrownlaw.com
*Counsel for Appellants*

Josh Belinfante
Robbins Ross Alloy Belinfante
Littlefield LLC
500 Fourteenth St. NW
Atlanta, Georgia 30318
.Josh.Belinfante@robbinsfirm.com
*Counsel for Appellee Secretary of*
*State*

Bryan P. Tyson
Strickland Brockingham Lewis LLC
Midtown Proscenium Suite 2200
1170 Peachtree St. NE
Atlanta, Georgia 30309
bpt@sbllaw.net
*Counsel for Appellee Gwinnett*
*County Board of Registrations and*
*Elections*

Edward H. Lindsey, Jr.
Dentons
303 Peachtree St. NE
Suite 5300

Atlanta, Georgia 30308
edward.lindsey@dentons.com
*Counsel for Appellee Geoff Duncan*

  This 27th day of March, 2019.


       /s/ Kaye Woodard Burwell
       Kaye Woodard Burwell
       Georgia Bar No. 775050