No. S19A0769

In the

# Supreme Court of Georgia

Coalition for Good Governance, et al.,

*Appellants,*

v.

Fulton County Board of Registration and Elections, et al.,

*Appellees.*

On Appeal from the Superior Court of Fulton County
Superior Court Case No. 2018CV313418

## BRIEF OF AMICUS CURIAE SECRETARY OF STATE BRAD RAFFENSPERGER

| | | | |
|---|---|---|---|
| Josh Belinfante | 047399 | Christopher M. Carr | 112505 |
| Vincent R. Russo | 242628 | *Attorney General* | |
| Carey Miller | 976240 | Andrew A. Pinson | 584719 |
| Alexander Denton | 660632 | *Solicitor General* | |
| *Special Assistant* | | Annette M. Cowart | 191199 |
| *Attorneys General* | | *Deputy Attorney General* | |
| | | Russell D. Willard | 760280 |
| | | *Senior Assistant Attorney General* | |

Robbins Ross Alloy Belinfante
Littlefield LLC
500 14th Street N.W.
Atlanta, Georgia 30318
(678) 701-9381
jbelinfante@robbinsfirm.com

Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3357

*Counsel for Secretary of State Brad Raffensperger*

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................iii

Interest of Amicus Curiae ....................................................... 1

Statement ............................................................................ 2

    A. After Lieutenant Governor Duncan is elected, Appellants file an election contest petition.......................................... 2

    B. The Pre-Trial Hearings and Decisions........................... 3

        1. The Substantive Motions........................................ 4

        2. Appellants' Discovery Motions. .............................. 5

    C. Appellants choose not to participate in the superior court's ordered discovery. ........................................ 6

    D. The superior court denies Appellants' discovery and continuance motions, conducts the trial, and dismisses the petition............................................................... 8

Summary of Argument ........................................................ 10

Argument........................................................................... 13

    I. The superior court permitted a reasonable amount of time for discovery of relevant information. .............................. 13

    II. The scope of discovery the superior court permitted was reasonable in light of bona fide security concerns and the statutory mandate for the efficient disposition of election contest petitions. ...................................................... 17

    III. The superior court did not abuse its discretion by denying Appellants' motion for a continuance. ......................... 21

Conclusion ......................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Atlanta Journal-Constitution v. Jewell*,
  251 Ga. App. 808, 812 (2001). ............................................... 12, 20–21

*Austin v. Clark*,
  294 Ga. 773 (2014). ............................................................ 17

*Felix v. State*,
  271 Ga. 534 (1999). ..............................................................1

*Ford Motor Co. v. Gibson*,
  283 Ga. 398 (2008). ............................................................ 13

*Francis v. Reynolds*,
  215 Ga. App. 418 (1994). ................................................... 15

*General Motors Corp. v. Blake*,
  237 Ga. App. 426 (1999). ........................................... 23–24

*Head v. Williams*,
  269 Ga. 894 (1998). ............................................................ 23

*Heindel v. Andino*,
  2019 WL 498388 at *5 (D.S.C. February 8, 2019). .................... 11, 18

*Jurden v. H.S.B.C. Mortg. Corp.*,
  330 Ga. App. 179 (2014). ............................................. 11, 15

*Masonry Specialists of Ga., Inc. v. U.S. Fidelity & Guar. Co.*,
  273 Ga. App. 774 (2005). ..................................... 12–13, 23

*Payne v. Chatman*,
  267 Ga. 873 (1997). ............................................................ 16

*Plyman v. Glynn Cnty.*,
  276 Ga. 426 (2003). ........................................... 12, 16, 22

*Resurgens, P.C. v. Elliott*,
    301 Ga. 589, 598 (2017). ....................................................... 10, 13, 16

*Simmons v. Simmons*,
    265 Ga. 183 (1995). ................................................................... 21

*Smith v. Dekalb Cnty.*,
    288 Ga. App. 574 (2007). ...................................................... 12, 19

*Smith v. Glass*,
    273 Ga. App. 327 (2005). ........................................................... 13

*Swain v. Thompson*,
    281 Ga. 30 (2006). ................................................................ 16, 22

*Tenet Healthcare Corp. v. Louisiana Forum Corp.*,
    273 Ga. 206 (2000). .............................................................. 11, 17

*Wallace v. State*,
    303 Ga. 34 (2018). .......................................................................1

*Wesberry v. Sanders*,
    376 U.S. 1 (1964). ...................................................................... 18

*Whittington v. Mathis*,
    253 Ga. 653 (1985). .................................................................... 17

*Zywiciel v. Historic Westside Village Partners, LLC*,
    313 Ga. App. 397 (2011). ...................................................... 12, 23

**Statutes**

42 U.S.C. § 5195c ....................................................................... 18

O.C.G.A. § 9-10-166 ............................................................. 12, 23

O.C.G.A. § 9-10-167 ..................................................................... 21

O.C.G.A. § 9-11-12 ............................................................... 11, 15

O.C.G.A. § 9-11-26 ................................................................. 11, 17

O.C.G.A. § 9-11-40 ................................................................. 11, 14

O.C.G.A. § 21-2-520, *et seq.* ...........................................*passim*

O.C.G.A. § 21-2-524 ..................................................... 11, 14–16

O.C.G.A. § 21-2-525 ..................................................... 11, 16, 21

O.C.G.A. § 21-2-528 ...................................................................... 16

## Other Authorities

Act 24, 155th Ga. Gen. Assemb. (2019) ......................................3

U.S. Dep't of Homeland Security, Statement by Secretary Jeh
    Johnson on the Designation of Election Infrastructure as a
    Critical Infrastructure Subsector (Jan. 6, 2017)............................ 18

# INTEREST OF AMICUS CURIAE

Secretary of State Brad Raffensperger (the "Secretary") is not a party to this appeal. After the 2018 general election, Appellants challenged the results of Lieutenant Governor Geoff Duncan's election by filing an election contest petition, which also contained two constitutional claims in the superior court. Although Appellants named the Secretary as a defendant in this case — along with three local Boards of Registration and Elections and Lieutenant Governor Geoff Duncan in his personal capacity — the superior court dismissed all claims against the Secretary, and Appellants have not challenged any of those grounds for dismissal on appeal.[1]

Still, the Secretary has an interest in certain issues Appellants have raised on appeal — specifically, those issues having to do with Appellants' requested broad discovery of the State's elections infrastructure. First, the Secretary will be required to assist local

---

[1] That Appellants have identified the Secretary as an "Appellee" in their caption and certificate of service has no effect on the Secretary's status. The enumeration of errors controls which errors this Court may review on appeal, *Felix v. State*, 271 Ga. 534, 539 (1999), and Appellants' enumeration of errors does not identify as error either (1) the superior court's dismissal of the Secretary as an improper party to their election contest petition; or (2) the superior court's dismissal of the constitutional claims against the Secretary (and the other defendants). Nor could a generous reading of Appellants' brief bring any error as to those claims before this Court: "an appealing party may not use its brief to expand its enumeration of errors." *Wallace v. State*, 303 Ga. 34, 37-38 (2018) (quoting *Felix*, 271 Ga. at 539 n. 6).

1

boards of election in the unlikely event that a new election be ordered pursuant to state statute. Second, because the state owns the voting machines and servers Appellants seek to examine, the Secretary will be involved in any potential discovery that may result from this Court's decision. Finally, Appellants' discovery requests raise significant election-security concerns. For these reasons, the Secretary files this brief as amicus curiae for the Court's consideration.

## STATEMENT

### A.  After Lieutenant Governor Duncan is elected, Appellants file an election contest petition.

Georgia saw record turnout in the 2018 general election with 3,949,905 votes cast in the state, a 61.44% turnout of registered voters.[2] As is typical, voters who cast a ballot had a high participation rate with respect to the Governor's race at the top of the ticket, with drop-off in the participation rate for down-ballot races. T-256:11. In the 2018 election, the race for Lieutenant Governor received fewer votes than the other state-wide races, most of which had either an incumbent on the ballot or, in the case of the race for Secretary of State, a former Congressman who served five terms in that office.

---

[2] As Appellants note, Appellants' Br. at 3, n.2, the parties stipulated to admissibility of the election results posted by the Secretary of State. Election numbers referenced throughout are from that tally. *Available at* https://results.enr.clarityelections.com/GA/91639/Web02-state.221451/#/.

2

Seeking to overturn the election of the Lieutenant Governor only, Appellants filed their election contest petition in the Superior Court of Fulton County on November 23, 2018. R-19–59. Count One brought an election challenge pursuant to O.C.G.A. § 21-2-520, *et seq.*, and sought a new election for Lieutenant Governor. Counts Two and Three raised dependent federal constitutional claims — alleging violations of substantive due process and equal protection — and demanded that any new election be conducted on paper ballots or something other than the state's current voting equipment. *Id.*

Appellants' complaint relied on the theory that votes were cast in the Lieutenant Governor's election that were not counted by Georgia's outgoing voting equipment, either for technological reasons or because of unspecified hacking or other infiltration. Appellants' Br. at 3.[3]

### B.   The Pre-Trial Hearings and Decisions.

On December 5, 2018, the superior court held an initial status hearing regarding Appellants' election contest petition. *See generally* T-1–19. Noting that the named defendants had not yet been served and thus had not yet "had a right to challenge anything," the court deferred ruling on Appellants' discovery motions until a motions hearing set for January 9, 2019. T-9:13–19; R-1102. At the initial

---

[3] Governor Kemp signed House Bill 316, which requires the State to use new voting equipment "as soon as possible." Act 24, 155th Ga. Gen. Assemb. (2019).

status hearing, the court also agreed to enter an order to preserve
evidence, set a pre-trial motions deadline and hearing date, and
scheduled trial for January 17 and 18, 2019. [4] T-16:4–9. Appellants
did not object to the dates set for motions and trial. T-15:12–25. The
Secretary filed a motion to dismiss Appellants' petition on several
grounds, including (1) that the Secretary is not a proper party to an
election dispute; and (2) that the constitutional claims fail as a matter
of law. R-138, R-210. On January 9, 2019, the superior court
conducted a two-hour hearing on the Secretary's and the other
Appellees' various motions to dismiss and Appellants' discovery
motions. *See generally* T-20–154.

　　　1.　*The Substantive Motions.*

At the hearing, the superior court announced that it was granting
the Secretary's Motion to Dismiss the Secretary from the election
contest petition because the Secretary is not a proper party. T-47:8–24.
The superior court denied the Fulton and Gwinnett County Boards of
Registration and Elections' (hereinafter "Fulton Board" and "Gwinnett
Board") motions to dismiss for failure to join other counties. T-56. The
superior court also denied other motions to dismiss the election contest
for failure to state a claim. T-80–81. The superior court memorialized

---

[4] The superior court memorialized these rulings in its December 7,
2018 "Preservation Order." R-175.

its ruling dismissing the Secretary as a party in a written order entered on January 11, 2019.  R-875–76.

The superior court also heard argument on the Secretary's motion to dismiss Appellants' constitutional claims.  After the hearing, in a written order, the superior court granted the Secretary's motion.  R-871, 873.  Thus, the only claim pending during discovery and at trial was the election contest authorized by Georgia's Election Code, against only the Lieutenant Governor and the Fulton and Gwinnett Boards.

### 2.  *Appellants' Discovery Motions.*

At the January 9 hearing, the superior court also heard argument on Appellants' various discovery motions. Specifically, Appellants had filed an "Emergency Motion for Inspection of Electronic Equipment" and other discovery requests.  R-96–114.  Through the emergency motion, Appellants sought immediate inspection, sampling, and copying of myriad election equipment and information including Direct Recording Electronic ("DRE") voting machines, memory cards, Global Election Management Servers ("GEMS") database programming CDs, and other items from all corners of the state.  *Id.*

From the bench, the superior court partially granted Appellants' discovery motion and memorialized its decision in the January 11 order.  R-878.[5]  The January 11 order specified that Appellants were

---

[5] Notably, the superior court also dismissed Plaintiff Coalition for Good Governance in this Order, without objection. (R-877.)

entitled to: (1) certain GEMS reports (but that only staff from the Fulton and Gwinnett Boards could access those reports); and (2) the ability to inspect specified DRE machines in "post-election mode, using post-election memory cards." R-878–79. The permitted inspection of DRE machines was limited in four ways. First, the machines or information contained therein could not be damaged or altered in any way. Second, Appellants were prohibited the from copying, imaging, saving, or retaining information contained on the machines. Third, Appellants could not upload or introduce any information to the machines. Finally, destructive testing was not permitted. *Id.*

The superior court also ordered that any future discovery disputes be addressed with the court first informally, by email or a request for a conference call. R-924.

## C. Appellants choose not to participate in the superior court's ordered discovery.

With only its election contest petition claim remaining, Appellants set out to show that the DREs and/or the GEMS database had malfunctioned or had otherwise been hacked or infiltrated with malware. R-881, 892. Pursuant to the January 11 order, the remaining parties agreed that, on January 14, 2019, Appellants would be provided with access to the DREs used by Fulton County voters in the 2018 general election. R-1023. The Fulton Board, in conjunction with the Secretary (because most DRE units are property of the State), proposed a protocol for examination consistent with the superior court's

6

order. The protocol would have permitted Appellants to examine the internal memory of the specified DREs without damaging, imaging or copying the machines. R-1023–24.

Specifically, the Fulton Board's proposed protocol consisted of inserting a memory card which allows the DRE to retrieve the relevant archive file in its internal memory storage and display the internal memory of the 2018 general election on its screen. *Id.* Such discovery, according to Michael Barnes,[6] whom Appellants proffered as a trial witness, T-364:10, would have been sufficient to show any alleged GEMS programming failure; whether any programming of the server had been altered; and, with respect to DREs, whether any names were missing from ballots, whether calibration issues occurred, whether ballots were cancelled, and whether any vote count discrepancies occurred on precinct poll tapes. R-1117.

Once at Fulton County, however, Appellants' representative, Matthew Bernhard,[7] proposed a radically different protocol requiring, among other things, removal of the outside case of the DRE machines, insertion of computer chips and adapters, temporary alteration of the DREs' hardware — even altering the motherboard of some DRE models — and copying or imaging of the unit including information for past

---

[6] Barnes is the Director for the Center for Election Systems, Office of the Secretary of State. T-365:2–3.

[7] Matthew Bernhard was proffered as an expert for Plaintiff Coalition for Good Governance. T-291–363.

7

elections and critical files related to the system architecture of the units. R-1023–24. The Fulton Board refused to allow such an inspection on the grounds that Appellants' demand was inconsistent with the January 11 order and raised significant security concerns. *Id.* Non-party Henry County Board of Elections and Registration made available DRE units used there in a similar manner, Appellants again insisted on their broader protocol. R-921–22, 931–35.

Rather than inspecting the machines or notifying the court of a discovery issue by email or conference call as the court requested, Appellants moved for a continuance. R-1025, R-881. They then filed a "Motion to Compel and For Additional Discovery," as well as a demand for a jury trial, less than 24 hours before the trial date. R-979; R-1012.

**D. The superior court denies Appellants' discovery and continuance motions, conducts the trial, and dismisses the petition.**

The superior court denied Appellants' motion for a continuance on January 16, 2019, concluding that the Appellants had failed to make the court aware of any discovery issue as it had requested, and finding that the notice of trial, set over a month prior (on December 5, 2018), was reasonable. R-1035. The superior court also denied Appellants' last-minute jury trial demand and Appellant's motion to compel and for additional discovery. T-172:5, T-172–173.

The superior court conducted the trial as scheduled. Appellants presented witnesses testifying to alleged irregularities with the DREs,

the vote undercount, the hypothetical possibility of malware, and other voting issues.  T-185–445; T-552–601.  Particularly relevant to the discovery issues on appeal, one of Appellants' own expert witnesses testified at trial that it would be "impossible to tell" if a vote on a DRE machine had not been counted, critically undermining Appellants' apparent discovery strategy.  T-203:10–18.

After Appellants rested, the superior court concluded that the Appellants did not show evidence that illegal votes had been received or rejected sufficient to change or place in doubt the election, and the court dismissed their Complaint under O.C.G.A. § 9-11-41(b).  R-1089–93.

Appellants filed a notice of appeal from the superior court's involuntary dismissal under O.C.G.A. § 9-11-41.  R-1.  In their opening brief, Appellants enumerated as error the following:

1. The trial court erred in not affording Plaintiffs reasonable time for discovery.

2. The trial court erred in denying Plaintiffs' Motion for Continuance.

3. The trial court erred by refusing to allow Plaintiffs to discover relevant evidence of misprogramming of the election system.

4. The trial court erred by denying Plaintiffs' Motion to Compel when Defendants did not permit Plaintiffs to examine the internal memory of the electronic voting machines, as the trial court's order required.

5. The trial court's factual finding that "the most votes that the Plaintiff has shown that could be in any way arguably

considered irregular or illegal is approximately 32,000 votes" is clearly erroneous.

6. The trial court applied the incorrect legal standards in rejecting Plaintiffs' claim that systemic irregularities in the State of Georgia's electronic voting system rendered the system so defective as to cast doubt on the result of the election.

7. The trial court erred in rejecting Plaintiffs' demand for a jury trial.

Appellants' Br. at 10–11.

## SUMMARY OF ARGUMENT

In the course of this case, the superior court permitted ample time for discovery and a reasonable scope of discovery, and prudently denied Appellants' motion for continuance. Accounting for the statutory framework applicable to Appellants' petition, bona fide security concerns regarding Appellants' discovery requests, and Appellants' refusal to engage in the discovery offered, the superior court's decisions on these matters did not constitute a "clear abuse of discretion." *Resurgens, P.C. v. Elliott*, 301 Ga. 589, 598 (2017). This Court should therefore affirm those orders.

First, the superior court did not abuse its discretion by refusing to grant Appellants' "Emergency Motion" regarding discovery or by otherwise not permitting discovery prior to the filing of defensive pleadings. Appellants' Br. at 19. Georgia law requires a "reasonable time for discovery procedures," but this requirement is applicable to a discovery period "subsequent to the date that defensive pleadings were

10

required to be filed." O.C.G.A. § 9-11-40(a). Defensive pleadings here were not yet required at the time Appellants sought their "Emergency Motion." *See* O.C.G.A. § 21-2-524(f). Moreover, even once answers were due, discovery is generally further stayed by statute when a party files a motion to dismiss, O.C.G.A. § 9-11-12(j), and adherence to this general rule — even when not directly applicable — is not an abuse of discretion. *See Jurden v. H.S.B.C. Mortg. Corp.*, 330 Ga. App. 179, 181 (2014). Nor does the reasonable but not prolonged period of discovery the court permitted constitute an abuse of discretion given that the election code requires a "prompt" disposition of election contests. O.C.G.A. § 21-2-525(a).

Second, the superior court did not abuse its discretion by permitting a reasonable scope of discovery in light of the bona fide security concerns implicated by Appellants' requests, Appellants' refusal to engage in permitted discovery, and the apparent futility of the discovery demanded. Trial judges are empowered to control discovery and dictate its scope, consistent with statutory requirements. *See* O.C.G.A. § 9-11-26(b); *see also Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 210 (2000). Acting pursuant to this authority, the superior court's January 11 order permitted discovery of a wide range of information related to the GEMS database and DRE machines. The range of discovery permitted by the court is consistent with elections security concerns recognized by federal and state courts. *See, e.g.*, *Heindel v. Andino*, 2019 WL 498388 at *5 (D.S.C. February 8,

11

2019); *Smith v. Dekalb Cnty.*, 288 Ga. App. 574, 577–78 (2007). Nor did the superior court err by refusing Appellants' last-minute request to broaden the scope of discovery. Appellants cannot show "specific need" for the sensitive information requested as opposed to the permitted discovery, which was sufficient to uncover if any serious errors existed. *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 812 (2001). Appellants are forced to rely on speculation to show otherwise because they refused to participate in discovery. Moreover, the futility of Appellants' discovery requests supports the superior court's decision — even if their discovery requests were granted, they still would find nothing beneficial to their case.

Finally, the superior court did not abuse its discretion by denying Appellants' motion for continuance. The General Assembly "put a very short fuse on election contest cases." *Plyman v. Glynn Cnty.*, 276 Ga. 426, 427 (2003). The superior court indicated its concern regarding this statutory mandate early in the litigation, but Appellants waited until three days before trial to move for a continuance based on discovery requests that would be unhelpful and take weeks to analyze. Denying a continuance under these facts is not an abuse of discretion. *Zywiciel v. Historic Westside Village Partners, LLC*, 313 Ga. App. 397, 404 (2011). Finally, due diligence is required of a movant for a continuance, O.C.G.A. § 9-10-166, and Appellants did not satisfy that requirement when they refused to engage in available discovery. *Masonry*

12

*Specialists of Ga., Inc. v. U.S. Fidelity & Guar. Co.*, 273 Ga. App. 774, 779 (2005).

## ARGUMENT

This brief addresses Appellants' first, second, third, and fourth enumerations of error concerning the superior court's discovery rulings. Appellants' Br. at 10, 16–23. This Court should affirm those rulings because Appellants have not shown that the court's decisions as to permitted time and scope of discovery or the subsequent discovery and continuance orders constituted a "clear abuse of discretion." *Resurgens, P.C. v. Elliott*, 301 Ga. 589, 598 (2017) (quoting *Ford Motor Co. v. Gibson*, 283 Ga. 398, 401 (2008) and *Smith v. Glass*, 273 Ga. App. 327, 328 (2005)) (citation and punctuation omitted in original); *see also Masonry Specialists of Ga., Inc. v. U.S. Fidelity & Guar. Co.*, 273 Ga. App. 774, 779 (2005) (holding that the exercise of a trial judge's discretion regarding a motion for continuance "will not be disturbed unless that discretion is manifestly abused").

## I. The superior court permitted a reasonable amount of time for discovery of relevant information.

Appellants initially filed their election contest petition on November 23, 2018. R-19–59. Shortly thereafter Appellants filed an "Emergency Motion" for various discovery requests on November 29, 2018. R-96–114. At its initial hearing, and without apparent objection, the superior court deferred ruling on this discovery motion until January 9, 2019. T-16:4–7. Permitted discovery was then allowed to

13

proceed after the January 9 hearing and January 11 order with a week available prior to the January 17 trial date.  Appellants now contend that the superior court should have permitted discovery upon filing of their "Emergency Motion for Inspection of Electronic Equipment" on November 29, 2018.  R-96; Appellants' Br. at 19.  However, in light of the statutory framework applicable to Appellants' petition, the superior court did not abuse its discretion by refusing to permit early discovery, prior to the filing of defensive pleadings and disposition of motions to dismiss.

To support their claim of error, Appellants note that O.C.G.A. § 9-11-40(a) requires a "reasonable time for discovery procedures," but they ignore that the same sentence of that statute provides for a discovery period only "subsequent to the date that defensive pleadings were required to be filed."  Appellants' Br. at 17 (citing *Id.*).  Appellants filed their Petition on November 23, 2018.  By the time of the December 5, 2018, hearing, Appellants had not effected service on any defendant.  T-5–7.  Consequently, no answer was due and, per the Election Code, the superior court had not yet ordered a date to file responsive pleadings.  O.C.G.A. § 21-2-524(f).  Thus, Appellants' citation to Code Section 9-11-40(a) does not show error, as, at the time of the December hearing, there was not yet a period "subsequent to the date that defensive pleadings were required to be filed."  Indeed, as the superior court noted at the hearing, the named defendants had not yet been able to answer or "challenge anything."  T-9:13–19.  Put simply, the statutory

14

framework upon which the Appellants rely is unavailable to them, and consequently, the superior court could not have abused its discretion by denying immediate and premature discovery.

Even if only the Civil Practice Act applied, without the intervening effect of O.C.G.A. § 21-2-524(f), the superior court did not err, because discovery is generally stayed by statute when a party files a motion to dismiss before or at the time for filing an answer. O.C.G.A. § 9-11-12(j). Here, Appellees and the Secretary filed their motions to dismiss on December 20, 2018, prior to filing answers. R-186–213. The trial court, with the apparent acquiescence of *all* parties, agreed it would rule on those motions by January 9, 2019. T-16:4–7. As such, O.C.G.A. § 9-11-12(j) applied by operation of law to stay Appellants' broad discovery on issues to be presented at trial absent an order otherwise.[8] Thus, the superior court did not abuse its discretion by "acting pursuant to statutory authority and its inherent [authority] to control the disposition of the causes on its docket." *Jurden*, 330 Ga. App. at 180–81 (quoting *Francis v. Reynolds*, 215 Ga. App. 418 (1994)).

Finally, the time the superior court granted for discovery does not constitute a "clear abuse of discretion" because it is consistent with the

---

[8] Common law provides no different result that could apply in election cases. Code Section 9-11-12(j), even when not directly applicable, "demonstrates that the law contemplates the propriety of a stay of discovery when a motion to dismiss is filed." *Jurden*, 330 Ga. App. 179, 181 (2014) (not applying O.C.G.A. § 9-11-12(j) but upholding the trial court's stay when a motion to dismiss was filed after an answer).

statutory mandate for an expedient resolution of election contests.
*Elliott*, 301 Ga. at 598. Georgia law is clear that judges in election
contest cases must "decide the contest promptly." O.C.G.A. § 21-2-
525(a); *see also, e.g.*, *id.* (requiring a hearing within twenty days of
notice); O.C.G.A. § 21-2-524(f) (mandating an answer on a truncated
timeline compared to other civil cases); O.C.G.A. § 21-2-524(a)
(providing only five days to file a petition); O.C.G.A. § 21-2-528
(permitting only ten days to file a notice of appeal of election contest
decision). This statutory scheme reflects the General Assembly's
understanding that election contest petitions are not typical civil cases
— they call into question the outcome of an election of the people and
frustrate the smooth operation of government — they therefore should
be disposed of efficiently. *Cf. Swain v. Thompson*, 281 Ga. 30, 31 (2006)
(discussing the "public policy in favor of swift resolution of election
contests"), *Plyman v. Glynn Cnty.*, 276 Ga. 426, 427 (2003) (holding
that the five-day period for filing a petition reflects the legislature's
"strong desire to avoid election uncertainty" and that the "swift
resolution of election contests is vital for the smooth operation of
government"), *Payne v. Chatman*, 267 Ga. 873, 876 (1997) (noting that
"[t]here are many important policy considerations which compel" quick
resolution of election contests). The superior court's reasonable
discovery period is consistent with this statutory mandate to decide
election contests promptly and enabled the court to "reach the ultimate
decision with all possible deliberate speed" as the General Assembly

16

contemplated. *Whittington v. Mathis*, 253 Ga. 653, 654 (1985). For this reason too, the permitted time for discovery was not an abuse of discretion.

## II. The scope of discovery the superior court permitted was reasonable in light of bona fide security concerns and the statutory mandate for the efficient disposition of election contest petitions.

Georgia trial judges are empowered with broad discretion to control discovery and dictate its scope and extent. *See* 9-11-26(b) (providing that a trial court may generally limit the scope of discovery); *see also Austin v. Clark*, 294 Ga. 773, 776–77 (2014) (Nahmias, J. concurring) (describing broad ability of trial court to enter protective orders, control sequence and timing of discovery, and focus the scope of discovery), *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 210 (2000) ("It is within the trial court's sound legal discretion to determine the permissible extent of discovery[.]") (citation omitted).

The superior court appropriately exercised this discretion to set reasonable bounds on discovery by permitting on a limited basis the discovery of relevant evidence related to the GEMS database and the internal memory of the DRE machines. *See* January 11 Order, R-878 (partially granting Appellants' motion for inspection). Specifically, Appellants were granted access to GEMS reports that were to be pulled by the Fulton and Gwinnett Boards. *Id.* Appellants were also permitted to inspect certain DRE machines, with restrictions: they

17

would not be permitted to copy, image, or engage in destructive testing of the machines. *Id.*

The superior court's discovery order reflected due regard for ensuring the security of Georgia's elections. Security of elections systems is essential to ensure the right to vote and have that vote counted, and "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Indeed, the United States Department of Homeland Security designated elections infrastructure as "Critical Infrastructure,"[9] a designation given to "systems and assets . . . so vital to the United States that [their] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e). Federal courts have also recognized the security concerns pertinent to elections infrastructure, *see, e.g. Heindel v. Andino*, 2019 WL 498388 at *5 (D.S.C. February 8, 2019) (Noting various FBI and Department of Homeland Security reports about potential election hacking), and the Georgia Court of Appeals has noted the State's interest in the security of elections systems and the extensive

---

[9] U.S. Dep't of Homeland Security, Statement by Secretary Jeh Johnson on the Designation of Election Infrastructure as a Critical Infrastructure Subsector (Jan. 6, 2017), *available at* https://www.dhs.gov/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical.

statutory, regulatory, and procedural scheme executed by the Secretary to secure elections systems and information. *Smith v. DeKalb Cnty.*, 288 Ga. App. 574, 577-78 (2007) (Ellington, J.) (discussing State's interest in Open Records context).

Appellants' proposed discovery plan directly implicated these critical security concerns. The Secretary explained to the superior court that Appellants' proposed discovery would expose sensitive information and provide a "roadmap or schematic of the [GEMS servers and DREs]" which could be used to create a virus for those systems. R-1117. To avoid that serious threat, Appellees, in consultation with the Secretary, proposed a discovery protocol and offered reports consistent with the superior court's order that would avoid risking the security of future elections. R-922–23. The protocol offered by the Appellees was sufficient to reveal any irregularities or failures with respect to GEMS programming, vote recordation, or appearance of candidates on the ballot, as well as whether candidate names were missing from ballots, whether issues with DRE calibration occurred, and whether vote count discrepancies were present. R-1134–35, T-364:10. The protocol limited Appellants' ability to alter, move, or change DRE equipment and software to reduce the risk to election security while maintaining consistency with the superior court's January 11 order. R-1134–35. Staff of the Fulton Board and the Secretary made available DRE machines for inspection in post-election mode, consistent with this protocol. R-1023–24

Considering the security concerns at issue and the sufficient protocol Appellees offered, the superior court's discovery order was a proper exercise of its discretion. When a party seeks access to materials that are unprivileged but sensitive for public policy reasons, a trial court must balance "the party's specific need for the material against the harm that would result by its disclosure." *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 812 (2001). In adopting the Appellees' discovery protocol, the superior court found that balance.

Given these undisputed facts, Appellants cannot show that the superior court's ordered discovery was insufficient. To the contrary, Appellants are forced to guess what the discovery under the January 11 order would have revealed because rather than engage in the discovery they *were* permitted, Appellants refused to participate. Instead, Appellants — eschewing the court's preferred method for handling discovery disputes — insisted at the last-minute on far broader discovery that would create the very security risks the Secretary had warned about. R-1023–24. Thus, Appellants can only speculate as to what their preferred, security-compromising method — removing the casing of DRE machines, inserting computer chips and adapters into voting machines, temporarily altering the hardware of the DREs, and copying or imaging the units — would have shown that the available information did not. *Id.* Either way, there is nothing in the record to show that what the superior court permitted would have been insufficient.

20

Finally, the testimony of the Appellants' own expert supports the superior court's decision. That expert, Matthew Bernhard, was asked whether he was "aware of any actual election" where a vote cast on a DRE machine was not counted. T-203. He answered: "No. But again, that's because of the way the [DRE] machine is built, *it's impossible to tell. You cannot know.*" *Id.* (emphasis added). The upshot of this testimony should not be missed: It means that even if Appellants were granted the discovery they sought, they still could not prove their case. This evidence makes clear that Appellants cannot show "specific need" for their security-compromising discovery requests. *Jewell*, 251 Ga. App. at 812. In short, the superior court did not abuse its discretion by denying Appellants' broad and potentially dangerous discovery requests.

## III. The superior court did not abuse its discretion by denying Appellants' motion for a continuance.

"[A]pplications for continuances are addressed in the sound legal discretion of the court," O.C.G.A. § 9-10-167, and the trial court's "exercise of that discretion will not be disturbed . . . unless the discretion is manifestly abused." *Simmons v. Simmons*, 265 Ga. 183, 184 (1995). The superior court did not abuse its discretion by denying Appellants' motion for continuance for two reasons. First, granting a continuance to allow for additional extensive discovery in this election contest runs counter to the statutory mandate to decide the dispute "prompt[ly]." *See* O.C.G.A. § 21-2-525(a). Second, even absent the

21

unique context of an election contest petition, Appellants failed to exercise due diligence when they refused to engage in the discovery permitted by the superior court.

The superior court did not abuse its discretion by declining to grant a continuance in this case on the eve of trial to allow for extensive discovery. The General Assembly "put a very short fuse on election contest cases," *Plyman*, 276 Ga. at 428, and a continuance in this case would have only heightened the "election uncertainty and the confusion and prejudice" the General Assembly sought to avoid by requiring prompt resolution of election contests. *Swain*, 281 Ga. at 31. The superior court's decision to deny a continuance reflected due concern for avoiding those problems.[10] Appellants themselves suggest that the discovery they would have sought upon grant of a continuance could have taken several weeks to complete and analyze, thus precluding prompt disposition of this election contest. R-888–89. And Appellants exacerbated the potential delay by waiting until January 14th to file a motion for continuance, despite having had notice of the motions date and trial date since the December 5th hearing. *Id.*; R-881–914. In sum,

---

[10] The court indicated its unwillingness to unduly prolong this contest by granting continuances for extensive discovery as early as January 9, when Appellants first raised the prospect of a continuance prior to their refusal to engage in the discovery ordered by the court. T-110:13–18. And the superior court again acknowledged that concern in its written order denying Appellants' motion to continue. R-1055 ¶ 2.

the superior court did not abuse its discretion by properly acknowledging the statutory restrictions placed on election contest petitions and the ample notice Appellants had of the trial date. *See Head v. Williams*, 269 Ga. 894, 895 (1998) (holding that the trial court did not abuse its discretion in denying continuance of an election contest petition when petitioner had three days' notice of the hearing date).

The apparent futility of the discovery Appellants sought bolsters this conclusion. Denying a motion for continuance is especially appropriate "when the movant fails to show how further discovery would produce evidence material to" their claims. *Zywiciel v. Historic Westside Village Partners, LLC.*, 313 Ga. App. 397, 404 (2011). Appellants' continuance was premised on expansive discovery that Appellants ultimately conceded would not show any definitive evidence of undercounting DRE votes, an unproven fact central to their remaining claims. *See supra*, p. 21.

Finally, the court properly declined to grant a continuance because Appellants failed to demonstrate due diligence. The party moving for a continuance must exercise due diligence, O.C.G.A. § 9-10-166, and that requirement is not met where movants fail to engage in available discovery. *See, e.g.*, *Masonry Specialists*, 273 Ga. App. at 779 (noting that movant failed to file interrogatories, attempt additional depositions, or request additional documents); *see also, e.g.*, *General Motors Corp. v. Blake*, 237 Ga. App. 426, 430 (1999) ("[The movant] had

23

every opportunity to examine" the item at issue and central to the claims.). Here, Appellants had significant operational details of the DREs made available to them but made a tactical decision not to conduct the permitted investigation of the machines. *See supra*, p. 20. This lack of diligence demonstrates that the superior court did not err in refusing to grant a continuance to remedy that failure. *Id.* at 430 ("[Movant] should not be permitted to avoid learning the facts by lack of thoroughness[.]").

## CONCLUSION

For the reasons set out above, this Court should affirm the judgment of the superior court.

Respectfully submitted this 2nd day of May, 2019.

/s/ *Josh Belinfante*

| | | | |
|---|---|---|---|
| Josh Belinfante | 047399 | Christopher M. Carr | 112505 |
| Vincent R. Russo | 242628 | *Attorney General* | |
| Carey Miller | 976240 | Andrew A. Pinson | 584719 |
| Alexander Denton | 660632 | *Solicitor General* | |
| *Special Assistant* | | Annette M. Cowart | 191199 |
| *Attorneys General* | | *Deputy Attorney General* | |
| | | Russell D. Willard | 760280 |
| | | *Senior Assistant Attorney General* | |

Robbins Ross Alloy Belinfante
Littlefield LLC
500 14th Street N.W.
Atlanta, Georgia 30318
(678) 701-9381
jbelinfante@robbinsfirm.com

Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3357

*Counsel for Secretary of State Brad Raffensperger*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2019, I served this Brief of Amicus Curiae Secretary of State Brad Raffensperger by delivering a copy via electronic mail, addressed as follows:

| | |
|---|---|
| Kaye Woodard Burwell<br>Office of Fulton County Attorney<br>141 Pryor St., N.W.<br>Suite 4038<br>Atlanta, GA 30303<br>Kaye.burwell@fultoncountyga.gov<br><br>*Counsel for Appellee Fulton County*<br>*Board of Registrations and Election*<br><br>Bruce P. Brown<br>Bruce P. Brown Law LLC<br>1123 Zonolite Road, Suite 6<br>Atlanta, GA 30306<br>bbrown@brucebrownlaw.com<br><br>*Counsel for Appellants* | Bryan P. Tyson<br>Taylor English Duma LLP<br>1600 Parkwood Circle<br>Suite 200<br>Atlanta, GA 30339<br>btyson@taylorenglish.com<br><br>*Counsel for Appellee Gwinnett County Board of Registrations and Elections*<br><br>Edward H. Lindsey, Jr.<br>Dentons<br>303 Peachtree St., N.E.<br>Suite 5300<br>Atlanta, GA 30308<br>Edward.lindsey@dentons.com<br><br>*Counsel for Appellee Geoff Duncan* |

/s/ *Josh Belinfante*
Josh Belinfante