IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | FILE NO. 1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' RESPONSES TO DOCKET ENTRY ORDERS

Plaintiffs file this Response to the Docket Entry Order issued by the Court at 11 a.m. on July 8, 2019 (the "State Facilities Order") and the Docket Entry Order issued by the Court at 4 p.m. on July 8, 2019 ("the Phase I Production Order").

### A.     Response to State Facilities Order

Per the Court's July 7, 2019 Minute Order, Plaintiffs contacted State Defendants regarding the conditions they described in Document 456. Those conditions confirm the unworkability of State Defendants' proposal for the critical analysis and review Plaintiffs need to conduct regarding the GEMS databases for this case. The substantial relevance of those databases is undisputed.

*First*, Defendants confirmed that Plaintiffs' attorneys and experts will have access to the facility only between the hours of 8 am and 5 pm, only for five days, and only on "business days," which apparently are limited to weekdays. Defendants have not identified any specific dates for their proposal, but regardless, it is unworkable for the reasons Plaintiffs previously described, including in yesterday's filing (Dkt. No. 455). The parties are in the midst of intense discovery involving a number of depositions, document discovery, and written discovery, as well as briefing on the pending preliminary injunction motions and preparing for a two-day hearing on those motions. Even if Plaintiffs' attorneys and experts were available in the near term to be in Atlanta for five full days—which they are not due to other commitments in this case and others—they cannot possibly disappear into a Georgia state facility for five straight days to perform the review and analysis needed on the GEMS databases in the time remaining before the July 25-26 hearing, much less before Plaintiffs' Reply is due on July 17.

Rather, Plaintiffs' attorneys and experts need to be able to conduct that critical analysis during windows of time they have available, as with any obligations, which means doing it, for example, at night after depositions, during pockets of time on weekends, and for a few hours between obligations some days with longer days (much more than the nine hours Defendants propose for a single

day) devoted to this other times. Defendants' proposal would force Plaintiffs' attorneys and experts to choose between conducting as much analysis as they can in the window Defendants provide—whenever that will be—and forgoing other important discovery and preparation efforts for the July 25-26 hearing, or forgoing important analysis of the GEMS databases. This would be highly prejudicial and is wholly unnecessary and unreasonable.

*Second*, even now Defendants cannot articulate what would be required of Plaintiffs' attorneys and experts to access the facility whenever they are able during the window Defendants have proposed. All Defendants could say is that Plaintiffs' attorneys and experts "will either be given access by SOS personnel" or Defendants "would work out a temporary card-key system." Relying on "SOS personnel" for access each time Plaintiffs need access to the facility undoubtedly would be problematic and impede the analysis needed. Moreover, if Plaintiffs' attorneys and experts can be trusted to have their own "temporary card-key" to access the facility, surely they can be trusted to maintain the GEMS databases securely at their own respective facilities as proposed in great detail. Defendants still have not identified a single vulnerability or specific risk with any aspect of the security measures Plaintiffs have proposed.

*Third*, Defendants confirmed that "Secretary of State IT personnel would be in the room" while Plaintiffs' attorneys and experts conduct the review and analysis needed for the GEMS databases.  This not only is wholly unnecessary and unreasonable, it violates the fundamental work product privilege that applies to that review and analysis—and it would cripple that analysis.  Plaintiffs' attorneys and experts could not discuss the GEMS databases in the room where they could reference specific data and fields with employees of State Defendants overhearing those discussions.  The work Plaintiffs' attorneys and experts would be performing would be visible to employees of State Defendants—exactly as State Defendants intend.

In short, Plaintiffs' attorneys and experts would be required to share with State Defendants in real time privileged analysis, communications, legal strategy, and more, all of which is beyond the bounds of discovery.  Thus, Plaintiffs' attorneys and experts would have yet another unfair choice to make—either suffer the extreme prejudice that inevitably will result from such disclosure to State Defendants or forgo any discussion in the room where the GEMS databases and data will be and curtail the review and analysis that could be performed in the room.  Again, this is not necessary, reasonable, or consistent with Rule 26.

Plaintiffs have identified specific protocols to enable critical review and analysis of the GEMS databases under secure conditions. Defendants have not identified even one flaw or specific risk with any of those proposed conditions. Rather, they merely reflexively reject any proposal beyond their own, insisting on any review and analysis occurring at their facility, during their normal working hours, under the watch of their employees. They have cited no authority to support such extraordinary and unprecedented conditions. Plaintiffs' attorneys and experts have managed to keep secure malware that can be used to alter election results in Georgia using the DREs they still use for elections—that malware is exponentially more sensitive than the GEMS databases or the data within them. Surely Plaintiffs' attorneys and experts can be trusted to secure the GEMS databases and any truly confidential data within them. Defendants have fallen far short of *their burden* to prove otherwise.

### B.   Response to Phase I Production Order

Plaintiffs' counsel and Plaintiffs' experts Alex Halderman and Matthew Bernhard conferred by telephone with counsel for the State Defendants on July 9, 2019. The State Defendants did not include their own expert or any employee of the Secretary of the State on the call, and their counsel unfortunately admitted they

have very limited information about the GEMS databases and the purported security concerns.

The State Defendants are unwilling at this time to produce any Phase I data, even after Plaintiffs suggested excluding two fields from the production (24 and 27).[1] The State Defendants do not contend that all the other fields Plaintiffs identified contain confidential information.[2] Rather, they object that even the narrow production proposed in Phase I would disclose the "relationships" between certain information in the databases. The State Defendants maintain that these relationships are sensitive because they are unique to Georgia, but they could not identify even one specific relationship that is unique to Georgia or why their disclosure would cause harm. In fact, they could not identify even one aspect of the GEMS databases that is actually unique to Georgia. They admitted they have not even reviewed the public version of a GEMS database from Cobb County in Georgia that Plaintiffs have directed them to multiple times to determine whether there is any aspect of the GEMS databases Plaintiffs seek that is actually unique to

---

[1] Upon further reflection, Plaintiffs' experts believe that field 24 may be needed for the analysis they are doing and see no confidentiality issue with that field—nor did State Defendants articulate any specific confidentiality concern on the teleconference.

[2] State Defendants vaguely raised a confidentiality concern with field 51, but Plaintiffs' experts explained the need for this field.

Georgia or confidential at all. In short, the teleconference confirmed that State Defendants have no factual basis for their unsubstantiated allegations that GEMS databases in Georgia are unique and so sensitive as to require the draconian restrictions they propose for critical review and analysis by Plaintiffs' attorneys and experts.

The GEMS database is composed of a collection of tables, each of which is structured like a spreadsheet, consisting of rows of data under several named columns. A row in one table can contain a numeric value referencing a row in another table. To illustrate these relations, Plaintiffs have attached hereto as Exhibit A three screen shots prepared by Dr. Halderman from Cobb County's GEMS database for the 2002 election, which is *publicly available* on line. The first screen shows the table "CandVGroup" and shows that Candidate number 458 is associated with Race 158. The next screen shot shows the table "Race", which indicates that Race 158 is the Governor's race. The next screen shot shows the table "Candidate", which shows that Candidate 458 is Roy Barnes. In reviewing the information from the database, it is obviously essential to have the relationship between these pieces of information. A list of candidates, or a list of races, without the data describing the relationship between these lists is not useful.

Plaintiffs' experts confirmed on the teleconference with State Defendants that these sorts of relationships would have to be disclosed for the production to be useful. State Defendants refused, and yet could not offer any reason why such relationships are so sensitive as to require their proposed restrictions on the necessary review and analysis.

The State Defendants have had this discovery since March 27, 2019, and remain unable to explain how or why any of the information that they are being asked to produce is confidential. The State Defendants should be directed to produce the Phase I data without restriction immediately, with the exception of field 27 (and 24, if the Court determines that is necessary).

Respectfully submitted this 9th day of July, 2019.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC

3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

*/s/ David Brody*
David Brody
John Powers
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
202-662-8300
dbrody@lawerscommittee.org
jpowers@lawyerscommittee.org

*Counsel for Coalition Plaintiffs*

| | |
|---|---|
| */s/ David D. Cross* | */s/ Halsey G. Knapp, Jr.* |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| John P. Carlin (*pro hac vice*) | GA Bar No. 425320 |
| Jane P. Bentrott (*pro hac vice*) | Adam M. Sparks |
| Catherine L. Chapple (*pro hac vice*) | GA Bar No. 341578 |
| Robert W. Manoso (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2000 Pennsylvania Avenue, NW | Suite 3250 |
| Suite 6000 | Atlanta, GA 30309 |
| Washington, DC 20006 | HKnapp@khlawfirm.com |
| Telephone: (202) 887-1500 | Sparks@khlawfirm.com |
| DCross@mofo.com | |
| JCarlin@mofo.com | |
| RManoso@mofo.com | |
| CChapple@mofo.com | |
| JBentrott@mofo.com | |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

9

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day caused the foregoing to be served upon all other parties in this action by via electronic delivery using the PACER-ECF system.

This 9th day of July, 2019.

>	*/s/ Bruce P. Brown*
>	Bruce P. Brown

EXHIBIT A

CandVGroup Table Shows Candidate 458 is part of Race 158



The Race Table Shows that Race 158 is the Governor's Race

| KeyId | Label | SortSeq | RaceType | RotationType | RotationFlag | DistrictId | RotDistrictId |
|---|---|---|---|---|---|---|---|
| 0 | <NO PREFEREN | -1 | 0 | 0 | 0 | -1 | |
| 1 | <NO ENDORSEM | 0 | 0 | 0 | 0 | -1 | |
| 157 | US SENATE | 10 | 1 | 0 | 0 | 66 | |
| 158 | GOVERNOR | 20 | 1 | 0 | 0 | 66 | |
| 159 | LT GOVERNOR | 30 | 1 | 0 | 0 | 66 | |
| 160 | SECRETARY OF | 40 | 1 | 0 | 0 | 66 | |
| 161 | ATTORNEY GEN | 50 | 1 | 0 | 0 | 66 | |
| 162 | COMMISSIONE | 60 | 1 | 0 | 0 | 66 | |
| 163 | COMMISSIONE | 70 | 1 | 0 | 0 | 66 | |
| 164 | STATE SCHOOL | 80 | 1 | 0 | 0 | 66 | |
| 165 | COMMISSIONE | 90 | 1 | 0 | 0 | 66 | |
| 166 | PUBLIC SERVICE | 100 | 1 | 0 | 0 | 66 | |
| 167 | PUBLIC SERVICE | 110 | 1 | 0 | 0 | 66 | |
| 168 | US REP 5TH DIS | 120 | 1 | 0 | 0 | 1073741980 | |
| 169 | US REP 6TH DIS | 130 | 1 | 0 | 0 | 3 | |
| 170 | US REP 11TH DI | 140 | 1 | 0 | 0 | 4 | |
| 171 | STATE SENATE | 150 | 1 | 0 | 0 | 1073741983 | |
| 172 | STATE SENATE | 160 | 1 | 0 | 0 | 6 | |
| 173 | STATE SENATE | 170 | 1 | 0 | 0 | 7 | |
| 174 | STATE SENATE | 180 | 1 | 0 | 0 | 8 | |
| 175 | STATE SENATE | 190 | 1 | 0 | 0 | 9 | |
| 176 | STATE SENATE | 200 | 1 | 0 | 0 | 10 | |
| 177 | STATE REP 17TH | 210 | 1 | 0 | 0 | 1073741984 | |
| 178 | STATE REP 26TH | 220 | 1 | 0 | 0 | 1073741985 | |
| 179 | STATE REP 28TH | 230 | 1 | 0 | 0 | 1073741986 | |
| 180 | STATE REP 29TH | 240 | 1 | 0 | 0 | 12 | |

The Candidate Table shows Roy Barnes is Candidate 458

