# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DONNA CURLING, ET AL., | |
| Plaintiffs, | CIVIL ACTION |
| v. | FILE NO. 1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, ET AL, | |
| Defendants. | |

**DECLARATION OF MICHAEL SHAMOS, PH.D., J.D.**

# TABLE OF CONTENTS

I.     BACKGROUND ....................................................................................................1

II.    PRELIMINARIES ...............................................................................................4

       A.     Relief Sought ...........................................................................................4

       B.     DRE History.............................................................................................6

       C.     Paper Ballot Risks...................................................................................7

       D.     Scanner Vulnerabilities.........................................................................13

       E.     Ballot Privacy ........................................................................................15

III.   HALDERMAN I.................................................................................................15

       A.     Russia......................................................................................................16

       B.     Vulnerabilities........................................................................................17

       C.     Georgia Vulnerabilities.........................................................................24

       D.     Procedural Safeguards ..........................................................................26

       E.     The "Only Practical Way" .....................................................................28

IV.    DE MILLO I .......................................................................................................30

V.     DEMILLO II......................................................................................................33

VI.    HEARING............................................................................................................34

VII.   HALDERMAN II ...............................................................................................36

VIII.  CONCLUSIONS..................................................................................................39

I, Michael Ian Shamos, Ph.D., do hereby declare as follows under penalty of perjury under the laws of the United States that the following is true and correct.

## I.     BACKGROUND

1.     My name is Michael Ian Shamos.

2.     I have been retained by Robbins Ross Alloy Belinfante Littlefield LLC and Taylor English Duma LLP on behalf of the Georgia Secretary of State and the State Election Board.  I have been asked to offer opinions regarding the "Declaration of J. Alex Halderman in Support of Motion for Preliminary Injunction," dated August 7, 2018 ("Halderman I"), "Declaration of Richard A. DeMillo," dated August 20, 2018 (DeMillo I"), "Declaration of Richard A. DeMillo," dated September 9, 2018 (DeMillo II"), the testimony presented at the Hearing on Motion for Preliminary Injunction held September 12, 2018 ("Hearing Tr.") and the "Declaration of J. Alex Halderman in Support of Motion for Preliminary Injunction," dated May 27, 2019 ("Halderman II").

3.     My background, qualifications and professional affiliations are set forth in my curriculum vitae, which is attached as Exhibit A.  As can be seen from my curriculum vitae, I have over 50 years of experience in the field of computers generally, and 39 years of experience in examining computerized voting systems.

4.     I hold the title of Distinguished Career Professor in the School of Computer Science at Carnegie Mellon University in Pittsburgh, Pennsylvania.  I am a member of two departments in that School, the Institute for Software Research and the Language Technologies Institute.  I was a founder and Co-Director of the Institute for eCommerce at Carnegie Mellon from 1998-2004 and from 2004-2018 have been Director of the eBusiness Technology graduate program in the Carnegie Mellon University School of Computer Science.  Since 2018, I have been Director of the

M.S. in Artificial Intelligence and Innovation degree program at Carnegie Mellon.

5.     I received an A.B. (1968) from Princeton University in Physics; an M.A. (1970) from Vassar College in Physics; an M.S. (1972) from American University in Technology of Management, a field that covers quantitative tools used in managing organizations, such as statistics, operations research and cost-benefit analysis; an M.S. (1973), and M.Phil. (1974) and a Ph.D. from Yale University in Computer Science; and a J.D. (1981) from Duquesne University.

6.     I have taught graduate courses at Carnegie Mellon in Electronic Commerce, including eCommerce Technology, Electronic Payment Systems, Electronic Voting, Internet of Things, Electronic Payment Systems and eCommerce Law and Regulation, as well as Analysis of Algorithms.  Since 2007, I have taught an annual course in Law of Computer Technology.  I currently also teach Artificial Intelligence and Future Markets.

7.     I am also the Director of Carnegie Mellon's graduate degree program in eBusiness Technology and a faculty member in the Privacy Engineering degree program at Carnegie Mellon. My course on Law of Computer Technology is required for all students in that program and in the M.S. in Artificial Intelligence and Innovation.

8.     Since 2001 I have been a Visiting Professor at the University of Hong Kong, where I teach an annual course on Electronic Payment Systems.

9.     From 1979-1987 I was the founder and president of two computer software development companies in Pittsburgh, Pennsylvania, Unilogic, Ltd. and Lexeme Corporation.

10.    From 1980 through 1996 I was a statutory examiner of computerized voting systems for the Commonwealth of Pennsylvania.   During that period, I participated in every electronic voting system certification examination conducted in Pennsylvania.

11.    From 2004-2017 I served as consultant to the Secretary of the Commonwealth of

Pennsylvania on electronic voting matters.

12.     From 1987-2000 I served as statutory designee of the Attorney General of Texas for examination of voting systems pursuant to the Texas Election Code.  During that period, I participated in every electronic voting system certification examination conducted in Texas.

13.     I have examined voting systems for the duly constituted authorities in Massachusetts (2006), Delaware (1989), Nevada (1995) and West Virginia (1982).  To date, I have performed over 120 electronic voting system certification examinations.

14.     I have been invited to speak on electronic voting at conferences and panels by the League of Women Voters, the County Commissioners Association of Pennsylvania, the Election Center, John Marshall Law School, Ohio State Moritz School of Law, University of Maryland, Pace University, University of Hong Kong, International Workshop on Mathematics and Democracy, Rutgers University, National Institute of Standards and Technology, American Association for the Advancement of Science, Congressional Black Caucus, Election Assistance Commission, American Enterprise Institute and the U.S. Commission on Civil Rights.

15.     I testified four times before committees of the U.S House of Representatives on electronic voting and once before the U.S. Senate Committee on Rules and Administration.

16.     I have testified on electronic voting before the legislatures of Maryland, Pennsylvania, and Texas and the State Board of Elections of Virginia.

17.     I have served as an expert witness in over 260 cases involving computer technology, including 13 cases concerning electronic voting systems.

18.     I was appointed by the Florida Secretary of State to serve on a committee to conduct a forensic review of the voting machine firmware used in Sarasota County, which experienced unprecedented undervoting in the 2006 election.  The 8-member committee found no malware and

unanimously concluded that the problem stemmed from poor ballot layout.

19.     I am the author of six papers on electronic voting.  I was a guest editor of the Sep/Oct 2012 issue of the journal IEEE Security and Privacy, which was devoted entirely to electronic voting security.

20.     I am the author of a book manuscript entitled "A Glossary of Electronic Voting," which contains over 1000 definitions of terms relating to that subject.

21.     I am an attorney admitted to practice in Pennsylvania and have been admitted to the Bar of the U.S. Patent and Trademark Office since 1981.  I have not been asked to offer any opinions of law in this declaration.

22.     I am a named co-inventor on the following five issued patents relating to electronic commerce: U.S. Patent Nos. 7,330,839, 7,421,278, 7,747,465, 8,195,197 and 8,280,773.  I have served as an expert witness in over 260 cases, the majority of which have been patent cases involving computer software.

23.     I am being compensated at my usual consulting rate of $600 per hour for my work related to this matter.  My compensation does not depend on the contents of this declaration, any testimony I may provide, or the ultimate outcome of this matter.  I do not have any financial interest in any of the parties.  I have no financial interest in, and have never been paid by, Diebold Election Systems, Premier Election Solutions or Dominion Voting Systems, Inc.  In fact, I have been adverse to Dominion Voting Systems, Inc. in the case *Election Systems & Software, LLC v. Dominion Voting Systems, Inc.*, 1:17-cv-01172-CJB (D. Del.).

## II.     PRELIMINARIES

### A.     Relief Sought

24.     I understand that two groups of Plaintiffs have sought mandatory preliminary

4

injunctions.  One is referred to as the "Curling Plaintiffs"; the other is referred to as the "Coalition Plaintiffs."

25.     While the relief sought by the two groups of Plaintiffs is similar, the Curling Plaintiffs seek the following relief:

26.     Ballot secrecy.  To command the Defendants within five days to "take all necessary action to ensure that there is no information recorded on any electronic ballot that, alone or in combination with other records or information, may be used to identify the individual who cast that ballot.  PI Motion at 1.

27.     Paper ballots.  To command the Secretary to "direct all Superintendents to conduct every election after October 1, 2019 using hand-marked paper ballots, which shall be counted by hand or by optical scanners using the Diebold state-certified voting system components."  PI Motion at 2.

28.     Post-election audits.  To command the State Election Board within 14 days to confer with Plaintiffs and file "proposed plans for auditing results (in the case of paper ballot elections) and auditable elements (in the case of DRE elections.)."  PI Motion at 2.

29.     Electronic Pollbook Corrections and Security.  To command the Secretary to "immediately undertake a review of the pollbook software to determine the source of the defect or malware and promptly undertake remedial action."  PI Motion at 3.

30.     Voting System Security Evaluation and Remediation.  To command the Secretary within 10 days to confer with Plaintiffs, and, within 14 days "shall file a plan with this Court" to address certain security topics.  PI Motion at 4.

31.     1 have not been asked to address the questions of ballot secrecy, post-election audits, electronic pollbook corrections and secrecy or voting system security evaluation and

remediation. I do not oppose evaluations of voting system security, but believe paper ballot systems deserve scrutiny at least to the level as that of DREs.

32.     The deadlines sought by Plaintiffs are clearly unreasonable under the circumstances (e.g., four days to develop a plan after conferring with Plaintiffs). While I do not oppose audits or security remediation, the requirement to use paper ballots statewide is ill-timed, unwarranted and unwise.

**B.     DRE History**

33.     DRE machines have been in extensive use in the U.S. since the early 1980s – a span of at least 35 years. During that time, and despite the supposed risks enumerated by Plaintiffs, there has never been a verified incident of tampering with an electronic voting machine in an election. DRE machines have been used in Georgia since 2002 – 17 years. During the lifetime of paper ballots, however, thousands of people around the U.S. have been convicted of election fraud in paper ballot elections and sent to prison[1]. Further, numerous elections have been overturned because of such fraud and had to be held anew[2].

34.     If it is true, as Plaintiffs suggest, that hacking voting machines is easy because of their vulnerabilities, why has it never been done in an election and why is there no evidence it has ever been attempted? On the other hand, Plaintiffs ask the Court to order Defendants to procure and use a system that is demonstrably less safe, as shown below.

---

[1] See, e.g., "Election Fraud Cases," available at https://www.heritage.org/voterfraud. Of 1,037 criminal convictions for electronic fraud tallied on that website since 1979, not a single instance involved even an attempt to tamper with a DRE. Twenty convictions were obtained in Georgia during that period, half of them for "fraudulent use of absentee ballots." Minnesota had the most convictions – 125.

[2] *Id*.

6

**C.     Paper Ballot Risks**

35.     While Plaintiffs complain of the supposed vulnerabilities of DRE systems, which I discuss in detail below, they do not discuss of acknowledge the far greater vulnerabilities of paper ballot systems.  If paper ballot systems were actually safer than DREs, I would be hard-pressed to oppose them.  They are not safer, but present vulnerabilities that are much easier to exploit.  I treated this issue in a 2004 IEEE paper, "Paper v. Electronic Records – An Assessment."[3]  Little has changed since that time in optical scan systems.

36.     There are several severe drawbacks to paper ballots.  The first is that the paper ballot is the only record of the voter's choices.  If anything happens to that ballot, there is no hope of recovering the intended vote.  The spectrum of misfortunes that can befall a paper ballot are legion. Anytime a human touches the ballot, it can be modified.  Paper ballots are easy to overvote (hence canceling a legitimate vote) by the simple expedient of holding a pencil lead under one's thumbnail.  This can even be done during a recount.  Even if no one touches an actual ballot, ballot boxes can be "lost" or substituted on their journey to the tabulation center.

37.     By contrast, DRE systems maintain multiple copies of each ballot.  Indeed, this presumes that the choices have been captured accurately in the first place.  Much is made of the potential scenario in which memory cards are tampered with on their way to the tabulation center. However, such a manipulation does not change the redundant records that are retained on each individual voting machine, and does not change the paper tabulations that are produced at the close of polls in each individual polling place and signed by election judges.  Any discrepancy between the memory card results and the signed tabulations would be investigated, and the redundant records on the machines consulted, thus revealing the tampering and allowing correction.

---

[3] Available at http://euro.ecom.cmu.edu/people/faculty/mshamos/paper.htm

38.     No such reconciliation is possible with paper ballots.  If there is a discrepancy between optical scan totals and hand-counting, the hand-counted totals are always used in the naïve belief that they are more reliable than machine counts because the actual votes cast by voters are being counted.

39.     In every election cycle in the United States, ballot boxes are found weeks after the election in places (such as lakes and rivers) making it clear that they were never counted.[4] [5] [6] [7] [8] [9] [10]  Unlike the hypothetical DRE scenarios proposed by Plaintiffs, these paper ballot manipulations are real and documented.

40.     Since it began publication in 1851, up through 2006 the *New York Times* published over 4700 news articles on manipulation of paper ballots.  That's an average of one every 12 days

---

[4] See, e.g., "Teacher says she discovered ballot box left behind at Florida polling site," available at https://thehill.com/blogs/blog-briefing-room/news/415837-teacher-says-she-discovered-ballot-box-left-behind-at-florida.

[5] See, e.g., "Uncounted Ballots, Overvoted Ballots: Why Is the Governor Claiming Fraud in Florida's Election?," available at https://www.nytimes.com/2018/11/11/us/florida-recount-elections-scott-nelson-desantis-gillum.html.

[6] See, e.g., "Records: Too many votes in 37% of Detroit's precincts," available at https://www.detroitnews.com/story/news/politics/2016/12/12/records-many-votes-detroits-precincts/95363314/

[7] See, e.g., "Klamath Falls ballot drop box vandalized, ballots found in dumpster," available at https://ktvl.com/news/local/klamath-falls-ballot-drop-box-vandalized-ballots-found-in-dumpster.

[8] See, e.g., "Arizona primary ballot box stuffing caught on tape," available at https://arizonadailyindependent.com/2014/10/16/arizona-primary-ballot-box-stuffing-caught-on-tape/.

[9] See, e.g., "Broward recount shenanigans: 46,000 Democrat votes "found" after election day, with more to come," available at http://thecapitolist.com/broward-recount-shenanigans-over-38000-democrat-votes-found-since-election-day-with-more-to-come/.

[10] See, e.g., "What The Heck Is Happening In That North Carolina House Race?," available at https://fivethirtyeight.com/features/what-the-heck-is-happening-in-that-north-carolina-house-race/.

over a 155-year period.  Rampant paper ballot fraud was the very reason voting machines were invented in the first place.  The developer of the first mechanical (lever) voting machine declared in 1892 that his invention would "protect mechanically the voter from rascaldom."  And indeed it did.  Once the votes were counted on mechanical wheels, there was very little that could be done to change the totals.  Little, but not nothing.  Various ways were known to rig lever machines to suppress counts for certain candidates, and there was no way after the election to recover the lost votes.  In many jurisdictions, lever machines were not eliminated until after the year 2000.

41.     In a recent case in North Carolina, paper absentee ballots were tampered with, resulting in the dissolution of the State Election Board and the appointment of a new one, which ordered an entire new election to be held in the Ninth Congressional District[11].

42.     One might expect that in the modern era, security procedures would have evolved to prevent such activity, but they have not.  There are no manuals or best-practices handbooks specifying how paper ballots are to be handled from the moment the polls close up through any recount or the expiration of the 22-month federally-mandated ballot retention period[12].

43.     Ballot handling in large jurisdictions with many polling places can be quite complex.  Below is a flowchart produced by Los Angeles County.  It only covers ballot transport on election day, and does not deal with storage or retention, yet it occupies a full page:

---

[11] See Doug Bock Clark, "The Tearful Drama of North Carolina's Election-Fraud Hearings." New Yorker, Feb, 24, 2019, available at https://www.newyorker.com/news/dispatch/the-tearful-drama-of-north-carolinas-election-fraud-hearings

[12] 52 U.S.C. § 20701.



44.     It is apparent that ballot boxes are completely out of view of the public or poll watchers for a substantial period of time, certainly long enough to engage in a variety of mischief. Here is a feasible scenario.  A political operative bribes an insider to stop off while transporting ballot boxes to a tabulation center.  The operative learns from a poll watcher how many ballots were cast in a particular precinct.  The operative then selects that number of pre-prepared ballots marked to favor his party's candidates.  When the insider stops off with the ballot box, the seal is removed, the ballots replaced and the box resealed.  Sure enough, the totals at the tabulation center or in a recount will not match those of the precinct ballot scanners.  But so what?  In any recount, the actual paper ballots will govern the count and the discrepancy will be ascribed to malfunctioning scanners.  Such tampering does not even require a high school diploma.

45.     The reason that so much tampering with paper ballots occurs is simple.  It takes no sophistication at all to manipulate paper ballots, while the degree of expertise required to tamper

10

with an electronic election is so high that there is no evidence it has ever been done.

46.     Paper ballots are lauded supposedly because they can always be counted by hand during a recount, a supposed stop-gap in the event everything else fails.  That is only true if the ballots that are recounted are actually the same ones cast by voters.  This presumes that the ballot boxes have not be stuffed or substituted at any point during the weeks that elapse before a recount is begun.   There is no practical way to ensure that this has not happened, particularly if insider manipulation is considered.

47.     Furthermore, counting hand-marked ballots, either by hand or by machine, is a difficult chore, much akin to interpreting hanging chads in 2000 that led to the outlawing of punched-card ballots.  The problem was partially addressed by the Help America Vote Act in 2002. 52 U.S.C. § 21081(a)(6) reads: "Each State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State."  In consequence, the Georgia Election Code was amended to provide that the State Election Board has the duty "To promulgate rules and regulations to define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as a vote for each category of voting system used in this state."  Ga Code § 21-2-31(7).

48.     The Georgia definitions of what constitutes a vote are found in Rule 183-1-15-.02, "Definition of Vote."  The specification basically says that a voter makes an opscan choice by either "[f]illing in the oval or completing the arrow adjacent to the name of the candidate or answer to a question for which the voter desires to vote," or, for a write-in, "[f]illing in the oval or completing the arrow adjacent to the appropriate write-in space and writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot."  Unfortunately, the specification does not deal with the wide variety of marks that

11

voters often make on ballots.  Some of the marks will be counted by a scanned and some will not.

For example, drawing a circle around an oval clearly indicates an intention to cast a vote, but such

a mark will not be counted either by a scan or a human reviewer because the voter did not "fill in

the oval."

49.     The act of "filling in the arrow" is itself confusing to voters.  The diagram below

shows first a blank arrow voting position.  The second is a properly voted arrow.  On the right is

what many voter think "fill in the arrow" means.  That vote would not be counted by a scanner or

by a review board.



UNVOTED                    PROPERLY VOTED            ARROW "FILLED IN"

50.     Georgia is not a voter intent state with respect to opscan ballots, except for

overvoted ballots.  Georgia Rule 183-1-15-.02(3)(d) reads (emphasis added):

> *If, in reviewing an optical scan ballot which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), a voter marks his or her ballot in a manner other than that specified by law and this rule, **the votes shall be counted if**, in the opinion of the vote review panel as provided in O.C.G.A. § 21-2-483(g)(2)(B), **the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote**.*

That is, if a voter makes a mark other than filling in the oval or completing the arrow, if the machine

does not recognize the mark then the vote will not be counted even during a hand recount unless

the ballot is overvoted.  Except in such a case, voter intent is ignored.

51.     Other states have been more explicit in defining what constitutes an opscan vote.

For example, the New Mexico Administrative Code § 1.10.23.12[13] devotes 15 pages to defining

valid hand-marked opscan votes.  Most of the variations would not be tabulated correctly by a

---

[13] Available at http://164.64.110.134/parts/title01/01.010.0023.pdf.

scanner. The diagram below show 15 examples of hand-marked votes (not from the New Mexico Administrative Code). Of the 15, only 1 would be counted correctly by a scanner.




52. The lesson to be learned from this is that voters should not be put in the position of marking ballots by hand. They often are confused by the instructions, or do not follow them. The problem is solved through the use of ballot marking devices (BMDs), which Plaintiffs oppose. A BMD never makes a mark that would not constitute a vote.

**D.      Scanner Vulnerabilities**

53. Plaintiffs seem to be unaware of, and fail to address, opscan manipulations, some of which do not even require installation of malware.

54. The idea that an opscan election can still be counted properly even if scanners are altered, because a hand recount can always be performed, is illusory. It is only true if (1) the voted

13

ballots have not been altered or substituted between the time they are voted and any later recount; and (2) it can be determined whether the votes conform to the definition of what constitutes a vote under Georgia Rule 183-1-15-.02.  In general, this is not possible.  If a voter fills in half an oval, the vote would be counted by a machine but would probably not be counted in a hand recount because the voter did not "fill in the oval."

55.     Many optical scanners use infrared light to read ballots.  Dark marks absorb infrared, while white paper does not.  However, white inks exist that absorb infrared.  It is possible to print ballots that look blank but have already been pre-voted by using such ink in voting ovals.  Any race in which the voter votes for the preselected candidate will count (because the voter made a mark over the prevoted position), while any other selection will result in an overvote.  This maneuver would only be detected in a hand (not machine) recount.

56.     The sensitivity of each optical scan sensor (and there is one for each column of the ballot) can be adjusted manually inside the machine without resorting to any software.  Suppose, for example, it is desired to suppress voting in a precinct known to favor a particular party.  If the sensitivity of the sensor is set very low, it will only recognize extremely dark marks, and will not record other marks as votes.  Similarly, if the sensitivity is set very high, then even variations in paper reflectivity will be counted as votes, resulting in a large number of overvoted ballots.  The correct choices would only be counted if (1) a hand recount is performed and the votes can be properly interpreted according to Rule 183-1-15-.02; or (2) the ballots are recounted on a different machine.

57.     These two manipulations would be negated to a large degree by manual recount.  However, the following modes of tampering can never produce the true result of the election:

- Ballot stuffing or ballot substitution.

14

- Destruction or concealment of ballot boxes.

- Tampering with ballots after they have been voted.

- Discarding absentee ballots.

58.     None of these possibilities has been addressed by Plaintiffs, who appear to assume that paper elections are inherently safe.

### E.     Ballot Privacy

59.     Plaintiffs suggest that they are concerned about ballot privacy, as it is the first form of relief they request.  If they were really concerned about this issue, they would not favor optical scan paper ballot systems.  When voters insert their ballots into an optical scanner, the scanned ballot falls into a bin.  The first ballot voted lands at the bottom of the bin; the last ballot voted lands on top, and in general all the ballots fall in the order in which they were voted.  Whoever opens the bin sees the ballot on top and knows how the last voter voted.  Thus such systems could violate the Georgia Constitution, Art. II, § I, §1: "Elections by the people shall be by secret ballot and shall be conducted in accordance with procedures provided by law."

## III.     HALDERMAN I

60.     In this section, I address the arguments made in Halderman I to support his erroneous conclusion in Paragraph 57 that "The only practical way to safeguard Georgia's upcoming election is to discontinue the use of Georgia's DREs, require the use of optical scan paper ballots throughout Georgia, and mandate auditing of the results to ensure that the optical scanners were not attacked with malware to infect the automated counting of the ballots."  First, this is not a practical way to safeguard Georgia's elections.  It is not even a "way."  Second, it would not safeguard Georgia's upcoming election, as it would not prevent easy tampering with paper ballots, a form of tampering that is much simpler than attacking DRE machines.

15

### A.      Russia

61.      Paragraphs 8-13 of Halderman I deal with Russia's attacks on the voting process in 2016.  The attacks were indeed unprecedented, as Dr. Halderman characterizes them, but they did not result in any alteration of votes.  Instead, attempts were made to intrude into voter registration systems.  Had those attacks been successful, all forms of voting - DRE, opscan, hand-counted paper, or show of hands - would have been affected.  Removing a voter from the registration rolls would certainly undermine confidence in the electoral process, but it would not affect the ultimate outcome of any election.  Any disenfranchised voter could vote a provisional ballot, which would eventually be counted.  Surely this would disrupt the entire process, but its effect would not be confined to DRE machines.

62.      Paragraph 9 of Halderman I discusses a Russian infiltration of Ukraine's vote tabulation system in 2014.  That indicates a willingness on Russia's part to interfere with vote tabulation.  However, the Ukrainian system was Internet-facing, which is what made the attack possible.  Georgia's is not.

63.      Paragraph 10 cites findings of the Senate Select Committee on Intelligence, including the statement that "voting systems across the United States are outdated, and many do not have a paper record of votes as a backup counting system that can be reliably audited, should there be allegations of machine manipulation.  It goes on to decry the "Paperless Direct Recording Electronic (DRE) voting machines" used in Georgia as "at highest risk for security flaws."  There are actually no paperless DREs used in Georgia, or anywhere else in the United States.  All certified DREs have the capability of producing a paper printout of each ballot cast, and can continue to do so until they are reset for the next election.  It is true that jurisdictions rarely avail themselves of the printout.  It is also true that the printout would not reveal whether any software had been tampered with.  But "paperless" is a misnomer.

16

64. Paragraph 11 is a mere scare tactic. Whether Russia has a goal of interfering in Georgia municipal elections is debatable, but it has no capability of doing so except through the Internet, and neither GEMS nor Georgia's DREs are accessible through the Internet.

65. Paragraph 12 is simply untrue. Dr. Halderman says that "They [foreign governments] could sabotage the machines to prevent them from functioning on Election Day, or cause them to produce obviously incorrect result when votes are counted." However, Dr. Halderman presents no conceivable scenario by which foreign governments could do that, and evidently is trying to frighten the Court into granting relief which is even less safe (paper ballots).

66. Dr. Halderman refers on several occasions to his "demonstration malicious software," which is just that – a demonstration. Any computer can be hacked if the hacker is given unfettered access to it. Plaintiffs do not propose any feasible scenarios by which thousands of voting machines could be infiltrated without such access.

**B.     Vulnerabilities**

67. Paragraphs 13-28 of Halderman I deal with supposed vulnerabilities of DREs. All systems of any kind have vulnerabilities, and the vulnerabilities of paper ballot systems, which Plaintiffs do not address or even acknowledge, are manifest. The issue is not whether a system is vulnerable in isolation, but whether it is vulnerable in actual use, considering that representatives of the political parties are watching with sharp eyes, and the administrators of elections (who are also being watched) are interested in clean elections.

68. Things get off to a bad start in ¶ 13, where Dr. Halderman declares as fact that paper "provides permanent evidence of their intent in the event of a post-election audit or recount." That is only true if (1) the voter's intent is actually recorded on the ballot, which is problematical, as I have shown, with hand-marked ballots; and (2) the ballots marked by the voters have not been altered, lost, modified or augmented by the time of a recount. Nothing Plaintiffs have come

17

forward with guarantees either (1) or (2).  It is false that Georgia uses "direct-recording electronic (DRE) computer voting machines that do not create a paper record of each vote."  In fact, Plaintiffs complain that that very paper record can be used to comprise ballot secrecy.  They cannot have it both ways.

69.     Paragraph 14 is an exaggeration.  Dr. Halderman shows that "Paperless DRE voting machines have been repeatedly shown to be vulnerable to cyberattacks that can change or erase votes, cast extra votes, or cause the machines to fail to operate on election day."  That is only true in a vacuum.  Various researchers, including Dr. Halderman, have demonstrated the trivial proposition that someone who has access to a voting machine can replace its software.  There is nothing profound in that.  What Dr. Halderman (and his colleagues) have not shown, is that any such exploit would be practical under actual election conditions, in which thousands of machines are used in large cities such as Atlanta, not a single machine which a hacker is allowed to penetrate at will in a laboratory.  No one has shown an attack that would "cause the machines to fail to operate on election day."  Further, even Dr. Halderman would acknowledge that if such attacks were possible, they could also infect optical scanners.

70.     Paragraph 15 points out various security flaws in AccuVote machines.  Those certainly exist.  However, Plaintiffs utterly fail to address the security flaws in paper ballot systems, particularly the ease with which substitution and alteration can occur.  Further, the issue is not whether vulnerabilities exist, but whether there is any rational possibility of exploiting them in a system that involves tens of thousands of non-networked machines distributed among Georgia's 159 counties, all of which conduct elections independently.  Dr. Halderman says that "every DRE in use in Georgia is vulnerable to cyberattacks."  That is only true if a hacker is given unlimited access to each machine of a populations of tens of thousands.  On the other hand, paper ballots can

be tampered with by attacking a much smaller number of ballot boxes.  It is at least as true that "every ballot box proposed to be used in Georgia is vulnerable to physical attacks."  That scares me more than the possibility of DRE attacks.

71.     In ¶ 16, Dr. Halderman makes the obvious point that "voting machines are computers with reprogrammable software."  That is true of almost all computers.  However, to reprogram them requires access to them.  DREs are not left on the street, but are stored in secure warehouses with video surveillance and measures to keep intruders out.  That is not true in Dr. Halderman's laboratory, where he is free to tinker with a voting machine to his heart's content.

72.     Now to the point.  In ¶ 16, Dr. Halderman says that "in just a few seconds, anyone can install vote-stealing malware on these voting machines that will silently alter all records of every vote," citing his own video supposedly demonstrating the proposition.  I reiterate that anyone who has access to a computer (and is able to unlock it) can install whatever software he wants on it.  That is not the point.  First, Dr. Halderman offers no explanation how a hacker would obtain unmolested access to thousands of voting machines in a warehouse.  Even if it only took one minute (and there's no possibility it could be done it one minute in a real warehouse) to break into a machine, install malware, re-seal the machine and escape video detection, it would take 2000 minutes to modify the 2000 machines used in just Fulton County.  This would require more than 33 hours.  I understand that Georgia warehouses 27,000 DREs statewide[14].  It is doubtful that anyone could enter a warehouse and play with its machines for that long without being detected.  Further, once installed, the malware is detectable because it differs from the legitimate software.  Simply by dumping the contents of a machine's memory one could detect the difference during an audit.

_____

[14] Hearing Tr. 198:8-10.

73.     Paragraphs 17-19 report various studies in which DRE vulnerabilities were uncovered.   There is no evidence that such vulnerabilities could actually be exploited under election conditions.   Further, Plaintiffs point to no studies whatsoever dealing with the vulnerabilities of paper ballot systems, or any side-by-side comparison of the security of DREs versus opscan systems.

74.     Dr. Halderman uses the word "silently" in ¶¶ 16 and 20 to describe the operation of malware.  This is to frighten the Court into believing that the malware is somehow more stealthy than ordinary software because it does not make noise and does not announce what it is doing.  This is disingenuous.  Software does not make noise when it operates unless it is programmed to do so.  When ordinary vote-counting software runs, it is also silent.  Silence is not a property of malware any more than it is of legitimate software.

75.     In ¶ 18, Dr. Halderman reports a vulnerability found by Harri Hursti that was remediated a long time ago.  I was an examiner for Pennsylvania in 2006, when the exploit was discovered.  When I learned of it, I persuaded the Pennsylvania Secretary of the Commonwealth to threaten Diebold with decertification unless the vulnerability was remediated before the next election.  Diebold did so, and demonstrated the repair to the satisfaction of the Secretary.

76.     In ¶ 19, Dr. Halderman described an experiment he performed to infect AccuVote machines (of a different model than those used in Georgia) with malware that would modify votes and alter various records "so that even a careful forensic examination of the files would find nothing amiss."  He omits an important point.  While examination of certain files would not reveal the malware, the malware was resident on the machine and for that reason alone could be detected if one were motivated to look.  Further, his manipulation would never succeed in a real election.  He says that the "malware was programmed to inspect each ballot as it was cast and modify the

minimum number of votes necessary to ensure that the attacker's favored candidate always had at least a certain percentage of the vote total." This cannot work because the expected vote percentages vary greatly by precinct, and any effort to turn a sure loser into a winner in such a place would stick out like a sore thumb. Further, the exploit requires access to each individual voting machine to be affected.

77.     The scenario in ¶¶ 20-21 deserves more serious consideration. While exploits that require individual tampering with each voting machine are impractical, an exploit that propagates itself via memory cards that are routinely inserted into machines is of a different nature. However, such an infected memory card is easily detected because the contents of the infected card differ from those of the legitimate ones. It is therefore important to verify the integrity of a memory card before inserting into a machine. An authorized copy of the memory card for the election in each precinct can be maintained at the county and a hash value computed. The individual precincts, prior to installing the memory card, would plug it into a PC to compute its hash value, which would then be compared with the true value.

78.     In ¶ 22-23, Dr. Halderman discusses the California TTBR and Everest Reports, which found "vulnerabilities" in the AccuVote TSX. All software has vulnerabilities. The relevant question is whether there is any realistic exploit that could be performed under real election conditions. At several junctures, Dr. Halderman refers to buffer-overflow vulnerabilities. It is important to understand exactly what that term means. A "buffer" is an area of computer memory allocated to receive data. All buffers are of finite size. If the software receives more data than the buffer can hold, the excess characters will overwrite memory location extending beyond the limit of the buffer. If those locations contain executable code, it is possible to modify such executable code by causing a buffer overflow.

79.     Following is an explanation of "buffer overflow" from Wikipedia, which I agree is

correct:

> *In information security and programming, a buffer overflow, or buffer overrun, is*
> *an anomaly where a program, while writing data to a buffer, overruns the buffer's*
> *boundary and overwrites adjacent memory locations.*
>
> *Buffers are areas of memory set aside to hold data, often while moving it from one*
> *section of a program to another, or between programs. Buffer overflows can often*
> *be triggered by malformed inputs; if one assumes all inputs will be smaller than a*
> *certain size and the buffer is created to be that size, then an anomalous transaction*
> *that produces more data could cause it to write past the end of the buffer. If this*
> *overwrites adjacent data or executable code, this may result in erratic program*
> *behavior, including memory access errors, incorrect results, and crashes.*
>
> *Exploiting the behavior of a buffer overflow is a well-known security exploit. On*
> *many systems, the memory layout of a program, or the system as a whole, is well*
> *defined. By sending in data designed to cause a buffer overflow, it is possible to*
> *write into areas known to hold executable code and replace it with malicious code,*
> *or to selectively overwrite data pertaining to the program's state, therefore causing*
> *behavior that was not intended by the original programmer.*

80.     The simplest buffer overflow example, which hardly ever arises in practice, occurs

when executable code immediately follows the buffer, as in the diagram below.

**COMPUTER MEMORY**

| BUFFER (50 BYTES) | EXECUTABLE CODE (9950 BYTES) |
|---|---|

0                        49 50                                              9999

81.     Suppose in the above diagram the buffer is 50 bytes long (locations 0-49) and

intended to receive at most 50 bytes of input, such as the name of a write-in candidate.   The

executable code starts at location 50 and extends through location 9999.  The attacker prepares a

sort of input that the software is not expecting – one consisting of 50 bytes of candidate name

followed by 9950 bytes of executable code.  If the software does not check the length of the input

data, 9950 bytes of executable code will be overwritten and the attacker may take command of the

software.

22

82.     Buffer overflow vulnerabilities present serious security risks in situations which allow entry of arbitrary-length input into a system.  No such avenue is available on a DRE.  Even assuming one could create a buffer overflow from the touchscreen of the TSX, the voter has no opportunity to enter any characters into the machine other than alphanumeric characters that appear on the machine's virtual keyboard, and even if it were possible to enter the correct characters, it would take excessively long to enter any significant number of them.  Human entry of overflows is impractical.

83.     That raises the question of other points of entry for such overflows, possibly coming from machine-readable media.  The only practical intrusion point would be a memory card, and no one has shown that the AccuVote software that reads memory cards is susceptible to buffer overflows.  Even so, the expedient described above, that of comparing the hash of a memory card to the hash of a legitimate one, would eliminate this exploit.

84.     In ¶ 26, Dr. Halderman describes his demonstration for the *New York Times* of "vote-stealing malware."  While amusing and theatrical, the accompanying video proves nothing other than that on which we all agree – a hacker who gains arbitrary access to a voting machine in advance can get it to do anything – he can even turn it into a video game, as Dr. Halderman demonstrated.  However he modified the machines in advance and brought them into a room for students to vote on.  He did not demonstrate how that could be done in a real election, how his machines would survive forensic testing or how he could evade the sort of parallel testing used in Georgia (discussed below).

85.     In ¶ 28, Dr. Halderman states correctly that after the TTBR, California decertified the TSX.  He fails to mention that the then-Secretary of State of California (an elected position) ran on a platform that she would decertify DREs.  It is ironic to mention that she was elected using

23

the very same DREs which she then decertified, so apparently she had no reason to question her own election.

86.    How did decertifying DREs in California work out?   Since AccuVote was decertified in 2007, California has obtained 25 convictions of people charged with voter fraud in the ensuing paper elections[15].   By contrast, no one was ever convicted of tampering with a DRE machine.

### C.    Georgia Vulnerabilities

87.    Paragraphs 29-34 are devoted to the hypothesis that vulnerabilities in Georgia's machines could be used to attack elections on a wide scale.   His theories are fanciful and not grounded in reality.

88.    He says in ¶ 29 that it is irrelevant whether voting machines are connected to the Internet.   It is not at all irrelevant, because a cyberattack requires some insertion vector to succeed. The Internet is an easy one because hackers playing in Albania could hypothetically access any machine connected to it.   Dr. Halderman raises the example of the Stuxnet virus, which infiltrated Iran's uranium centrifuges, which at no point in their lives had ever been connected to the Internet. He cites Kim Zetter's *Wired* article.   He fails to inform the Court, however, that her 433-page book on Stuxnet, *Countdown to Zero Day: Stuxnet and the Launch of the First Digital Weapon*, explains that the Stuxnet insertion vector was an inside employee at Siemens, the manufacturer of the programmed logic controllers (PLCs) that controlled the centrifuges.

89.    However, there is no examination or certification process for PLCs, as opposed to voting machines.   The analogy in voting would be for a worm to be (1) introduced during the manufacture of the machines or (2) introduced on memory cards; or (3) introduced through GEMS.

---

[15] See, e.g., "Election Fraud Cases," *op. cit.*

The first possibility is not feasible because the machines were manufactured a long time ago, and when they were manufactured it would have been impossible to tell which specific jurisdictions they were destined for.   Further, the machines' software is tested by independent testing authorities, unlike with PLCs.  The second exploit, memory cards, was discussed above.  The third exploit, GEMS, does not work because the only connection between GEMS and the DREs themselves is through memory cards.  Thus a Stuxnet-style attack would not succeed in Georgia.

90.      Paragraphs 30-31 simply repeats the memory card attack, already shown to be subject to defense.

91.      Paragraph 32 attempts to foment a scare through an unspecified "remote access" attack.  Dr. Halderman does not even begin to explain how the supposed "remote access" mechanism, which has not even been shown to be present on Georgia's machines, could be exploited.

92.      Paragraph 33, though brief, is loaded with mischaracterizations.  First, Dr. Halderman admits that the attack would be limited to an "attacker with physical access to the machines."  That means that each machine would have to be infected individually.  It is just not true that "the machines would have to be perfectly safeguarded at all times, beginning from the time they are manufactured."  A forensic comparison of the machine's programming with the authorized programming would reveal if even a single bit had been changed.

93.      In paragraph 34, Dr. Halderman offers no explanation how an EMS attack, even if possible, would "spread malware into voting machines in parts or all of the state."  First, he assumes, incorrectly, that the state's EMS are accessible over the Internet.  The paragraph concludes with the meaningless assertion that "[o]ne would expect a skilled attacker's work to leave no visible signs."  I cannot imagine what "visible signs" this might refer to.  One cannot

determine by visually inspecting the exterior of a computer whether it has been infected with malware. However, inspections are not limited to visual means. An infected computer differs from an uninfected one, and the two can be compared to determine whether to detect any difference.

### D.    Procedural Safeguards

94.    Paragraphs 35-48 are devoted to the supposed futility of imposing "procedural safeguards," by which Dr. Halderman appears to mean physical processes rather than software protections.

95.    Paragraph 36 deals with tamper-evident seals. Dr. Halderman says that they "do not protect against remote electronic attackers." Yes, they do. If the seal has to be broken in order to obtain access, such as sealing up a data port or the means of changing a memory card, they do. I do not place much faith in tamper-evident seals because it is relatively easy to break and then replace them. However, it takes time to do so, particularly to replicate the serial numbers of the seals. And time is a luxury the hacker does not have because he cannot be alone with a voting machine (as Dr. Halderman is in his laboratory) for any length of time. A seal is similar to the lock on a front door. It can be bypassed with the right tools, but requires both time and the right tools.

96.    Paragraphs 37-38 disparage logic and accuracy tests. The function of L&A, as Dr. Halderman seems to recognize, is not to detect malware, but to verify the correctness of election setup, i.e., whether all candidates are present on the ballot, whether they are identified with the correct party, whether the correct number of voting positions have been allocated to vote-for-many offices, etc. L&A is designed to detect human configuration errors. I completely agree that clever malware could detect whether L&A was being performed and would then operate on its best behavior.

97.     Paragraphs 39-42 disparage parallel testing.  Here Dr. Halderman wanders into the land of fantasy.  I was the inventor of parallel testing in 2004 when California was reviewing its DREs and one of California's experts hypothesized the potential for software that would somehow be able to detect it was under test and would operate properly but later sense that it was actually being used in an election and would manipulate votes, then erase itself at the close of the election. I do not deny that such software can be created.  However, parallel testing ensures that it would be discovered.

98.     In proper parallel testing, officials select a precinct at random and designate a machine to be voted on, but its votes will not be counted in the election.  The officials then cast a predetermined set of ballots (generated at random based on the political demographic of the precinct) while the election is in progress.  If malware is present that alters votes, the reported totals will not correspond to the predetermined ones, and the machine will be revealed as having been altered.

99.     In ¶ 40, Dr. Halderman says that parallel testing "can be defeated if malware can detect that testing is taking place."  That is true, but he provides no indication how such a thing would be possible.  He says that the workers who cast scripted votes are "likely to behave differently from real voters."  Maybe they would, but there is no study analyzing what such differences might be.  In any case, the argument is easily defeated.  We simply ask the workers to observe real voters from a distance (to not violate their privacy) and vote at the same pace they do.

100.    In ¶ 41, Dr. Halderman points out that parallel testing is "too late to prevent attackers from sabotaging the election."  This is correct, any the remedy may have to be ordering a new election.  This happens far more often than is commonly realized.  My assessment is that the chance of someone introducing stealthy malware into an election (and there is no evidence it

has ever been done) is so low that the risk of requiring a new election is negligible.

101.    In ¶ 42, Dr. Halderman argues that "the most that parallel testing can establish is that the specific machines that were tested counted correctly during the test." This is true as far as it goes, which is not very far. I don't suggest that the only safeguard to be used is parallel testing. It is also possible to open machines for voting, then upload their software for comparison with the authorized software. If the comparison passes, then voters are allowed to use the machine. Otherwise, the machine is impounded.

102.    In ¶ 43, Dr. Halderman discusses the futility of detecting fraud by looking for statistical anomalies or outliers. I agree with him on this point, but possibly he does not realizes that he has just thrown one of Plaintiff's other declarants, Christopher Brill, under the bus. Mr. Brill, in a declaration filed as Dkt. 421, opined that statistical anomalies in the 2018 election "cast doubt on the final vote total of the Lt. Governor election." I don't know what to make of the conflicting opinions of Dr. Halderman and Mr. Brill, but one thing is certain – they're not both right.

103.    In ¶ 45, Dr. Halderman discusses the futility of detecting after the election malware that has erased itself when the polls close. He is right on this point, which merely means that forensic investigation should be performed before or during the election (e.g. as part of parallel testing).

104.    Paragraph 46 repeats the argument that detecting malware after the election would foreclose the possibility of recovering the true votes. However, exactly the same is true of tampering with paper ballots, so on this score DREs are no worse.

E.    The "Only Practical Way"

105.    In ¶¶ 49-56, Dr. Halderman offers the entirely unscientific opinion that the "only way" to safeguard elections in Georgia is to adopt paper ballots and post-election audits. This is

an astounding statement from someone who has not addressed, and appears not even to have considered, the risks of paper ballots.  Not only is his proposal not the "only practical way" to safeguard elections, it is not even a "way" to safeguard them at all.

106.    All systems of any kind impose risks, and the same is true of voting systems. Deciding which system to adopt requires a dispassionate engineering process of evaluating the risks of all the alternatives, not just DREs.  Plaintiffs here are not dispassionate, but are religiously committed to banishing DREs.  I might even agree with them if they had analyzed the security of paper ballot systems with the same zeal they have applied to inventing DRE penetration scenarios. If the Russians want to skew Georgia's elections, it would be much easier for them to do so by bribing insiders to tamper with paper ballots, particularly absentee ballots, than to mount sophisticated cyberattacks for which there is no realistic penetration vector.

107.    In ¶ 50, Dr. Halderman makes the fantastic and unjustified statement, under penalty of perjury, that optical-scan paper ballots "are the most secure technology available for casting votes."  He offers no evidence or proof of that statement, or even any external reference to support it.  He has conducted no security testing on paper ballot systems (apparently in his entire career), and cites to no testing by others that would support his statement, which he presents as fact rather than opinion.  He is so convinced of his position that he has not bothered to characterize any of the assertions he makes in Halderman I as "opinion," a word that does not ever appear in his declaration.

108.    Therefore, his statement (not presented as opinion) in ¶ 57 that the "only practical way to safeguard Georgia's upcoming election is to discontinue the use of Georgia's DREs, require the use of optical scan paper ballots throughout Georgia, and mandate auditing of the results to ensure that the optical scanners were not attacked with malware to infect the automated counting"

is without support or justification.  Even if everything else in his declaration is correct (a hypothesis with which I do not agree), because he has not conducted, or even referenced, any security studies of paper voting system, his conclusion does not follow.

## IV.   DE MILLO I

109.    In this section I address the arguments made in DeMillo I to support his erroneous conclusion in ¶ 20 that "it will be impossible for Georgians to have any reasonable degree of confidence in the integrity of the election results produced by Georgia's DRE voting system."  If Georgians lack confidence in their election system, it is largely because of the statements made by Drs. Halderman and DeMillo.

110.    As with Halderman I, Dr. DeMillo offers no analysis of the vulnerabilities of paper balloting, but simply repeats the fact that that DRE systems, as do all computer systems, exhibit vulnerabilities.

111.    In ¶ 7, Dr. DeMillo says that he has observed "Diebold DRE voting machines being hacked in demonstrations."  This is no surprise at all, nor is it a concern.  As I have repeatedly pointed out, any computer can be hacked under demonstration conditions.

112.    In ¶¶ 9-11, Dr. DeMillo, without justification, disparages the intelligence of Defendants and their (unnamed) experts.  If he has a point to make, he ought to have been able to make it without such disparagement.  Unfortunately, he resorts to the same sort of scare tactics as Dr. Halderman without having performed any scientific comparison between DREs and paper ballot systems.

113.    In ¶¶ 11, he states that undetectable manipulation "is the most common, widely recognized, and serious threat facing computer systems, including election systems," citing no authority for that assertion.  He makes reference to "cyber warfighting," but fails to draw any

30

parallel between that activity and isolated DRE machines.

114.    In ¶¶ 12-18, Dr. DeMillo discusses Advanced Persistent Threats (APTs), but fails to establish any connection between them and risks to DREs.  The NIST definition of "APT," cited by Dr. DeMillo but not quoted in full, states that "An adversary with sophisticated levels of expertise and significant resources, allowing it through the use of multiple different attack vectors (e.g., cyber, physical, and deception), to generate opportunities to achieve its objectives which are typically to establish and extend its presence within the information technology infrastructure of organizations for purposes of continually exfiltrating information and/or to undermine or impede critical aspects of a mission, program, or organization, or place itself in a position to do so in the future."  No doubt state actors are constantly trying to infiltrate public-facing servers in Georgia, but Dr. DeMillo fails to explain how such activity would affect a standalone DRE machine.

115.    In ¶ 13, Dr. DeMillo says that there is ample reason to believe that US election systems have been subject to APT attacks.  I agree with that, but Dr. DeMillo fails to distinguish between voter registration systems and vote counting systems.  There is no reason to believe that APT attacks have infiltrated Georgia's vote counting systems.  In any case, if they have done so, we could determine that by forensic examination, because the code on those systems, if it has been altered, would no longer match the hash codes of the authorized software.

116.    In ¶ 14, Dr. DeMillo discusses zero-day attacks (without naming them).  These are attacks which, in the NIST definition exploit "a previously unknown hardware, firmware, or software vulnerability."  Dr. DeMillo offers no clue how an attacker who has no access to any DRE machine could conceivably mount such an attack against one, and does not specify any possible attack vector.  Furthermore, unlike administrative systems that are in continuous operation, such as credit rating agencies (frequently the subject of attack), election systems are

31

only in use occasionally, and, even if one were attacked the consequences could be determined before any disaster occurred unless the attack occurred shortly before an election.

117.    In ¶ 15, Dr. DeMillo discusses rootkits, which are very real and cause alteration of operating system code before deleting themselves.  Dr. DeMillo offers no scenario by which such a rootkit could enter a DRE, but simply raises the specter that such rootkits might be lurking about. Even if they were, they would not evade parallel testing.

118.    In ¶ 16, Dr. DeMillo refers to "polymorphic viruses."  Those, too, are very real, but he offers not even a hint of a plan by which one might enter a DRE.

119.    In ¶ 17, Dr. DeMillo enumerates various "backdoor" intrusions, again without explaining how they might affect a DRE.  He says that unnamed experts are "alarmed by unauditable bar codes in ballot marking devices" because they can embed "special input sequences."  BMD barcodes are not unauditable.  The software that creates them is subject to certification by the Secretary of State, and the codes themselves can be read by a barcode reader. Further, not all BMDs employ barcodes, and there is no evidence that the ones that do treat them as anything but data.

120.    In ¶ 18, Dr. DeMillo points out that APT attackers "cover their tracks."  Indeed they try, but even the state actors behind the Stuxnet virus were ultimately unable to do so.  And again, Dr. DeMillo does not explain how any APT attack could be mounted against a DRE.

121.    In ¶ 19, Dr. DeMillo claims, without a shred of support, that "every computerized system in the Georgia Election System are susceptible to the attack described above."  He doesn't say which attack, and he does not explain how such an attack could be mounted.

122.    The statement in ¶ 20 that the State is unable to "determine with any certainty whether the software presently being utilized by Georgia's DRE voting system has been

maliciously altered at any point in the past" is pure nonsense.  The firmware of any voting machine in the state can be uploaded and its hash value compared with the known hash value of the legitimate voting software, from which it would be simple to determine if malware is present.  If has values are not deemed to be sufficient, then a bitwise comparison of the firmware could be performed.

123.    In ¶ 20, he says that Georgians will not have "any reasonable degree of confidence in the integrity of the election results."  That may be true, not because of any demonstrated flaws in the election system, but if they listen to Dr. DeMillo's unsupported allegations.

124.    Thus DeMillo I amounts to no more than a catalog of fears.  He also never once discusses any vulnerabilities in paper ballot systems, except to say that opscan counters can be targeted.  As I have shown above, it is hardly necessary to mount a cyberattack on a scanner to get it to produce erroneous results.

125.    I note that Dr. DeMillo, like Dr. Halderman, at no point characterizes any of his statements as opinion, but instead as facts averred under penalty of perjury.

## V.    DEMILLO II

126.    Dr. DeMillo submitted DeMillo II because the National Academy of Sciences' (NAS) report "Securing the Vote," had not been released in time for DeMillo I.  Essentially DeMillo II is an endorsement of the NAS Report.

127.    The NAS Report contains many fine recommendations.  However, the drafting committee performed no security analysis of paper ballot systems, but summarized their risks in a single paragraph on p. 43 out of a 181-page report:

> Paper ballots are not immune to fraud. Fraud may occur through ballot theft, destruction, or substitution, by ballot-box stuffing, or by the addition of marks to ballots after a voter finishes voting.

128.    Hardly a thorough analysis.  It even omits manipulations I described above in the section on "Paper Ballot Risks."  Yet without any such analysis, the committee drew the conclusion that (p. 6, emphasis added):

> *4.11 Elections should be conducted with human-readable paper ballots.  These may be marked by hand or by machine (using a ballot-marking device); they may be counted by hand or by machine (using an optical scanner).  Recounts and audits should be conducted by human inspection of the human-readable portion of the paper ballots. Voting machines that do not provide the capacity for independent auditing (e.g., machines that do not produce a voter-verifiable paper audit trail) should be removed from service as soon as possible.*

> *Every effort should be made to use human-readable paper ballots in the 2018 federal election.* ***All local, state, and federal elections should be conducted using human-readable paper ballots by the 2020 presidential election.***

129.    That is a remarkable recommendation from a group of scientists who did not evaluate the security risks of paper balloting.  But there it is, and even the NAS report does not mandate the adoption of paper before 2020.  The question facing the Court is whether to allow one more municipal election to proceed in Georgia in 2019 prior to Georgia's switch in 2020 to following the NAS recommendation.

## VI.    HEARING

130.    At the evidentiary hearing on September 18, 2018, testimony was heard from Drs. Halderman and DeMillo.

131.    Dr. Halderman's testimony was substantially a rehash of the material in his declaration, except that he made a demonstration to the Court of how malware be transmitted to an AccuVote DRE by means of a memory card containing ballot setup information.  He inserted the card and performed a normal pre-election logic and accuracy test.  The test revealed nothing amiss.  He then opened the machine for normal Election Day voting.  While George Washington received three actual votes, the totals reported by the machine showed only one vote for George

Washington and two votes for Benedict Arnold, a notorious traitor.  Dr. Halderman would have the Court believe his exploit was undetectable.  That is incorrect.

132.    First, parallel testing would reveal it.  The mode of attack would infect all the DREs in the polling place, so whichever machine was chosen for parallel test would exhibit the flaw. The argument has been made that parallel testing comes too late to protect the sanctity of the election.  So be it.    All we have to do is select one machine and open it for actual voting immediately after the logic and accuracy test.  Then the exploit would be revealed just as it was to the Court, only weeks before the election.  The objection may be raised that clever malware would interrogate the DRE's onboard electronic clock, so it would "know" that it wasn't really Election Day, so it would behave.  Fine.  The countermeasure to that is to download the contents of the memory card immediately before it is inserted in the DRE and compare its hash with that of a legitimate memory card.

133.    That may meet the objection that the memory card was produced by a computer that had already been infected with malware, so we would be unable to detect any difference between the flawed memory card and a "legitimate" one, as they would all be the same.  That is also easily addressed.  Before we write any memory cards, we compare the software on the administrative computer to the manufacturer's hash stored at NIST.  Thus Dr. Halderman's hack would not work during a real election but might otherwise seem impressive.

134.    At Hearing Tr. 92:1, Dr. Halderman testified erroneously that "it is possible to create an algorithm that detects the machine is under parallel testing and not cheat during parallel testing."  No one know how to create any such algorithm, even if one might exist, and no one has ever described any such algorithm.  Dr. Halderman doesn't know whether it is possible or not.  Dr. Halderman says at 92:6 that the test voters "are not going to behave identically to real voters."

35

That may be true, but no one has ever described how "real voters" behave, and no one knows how to tell the difference between "real voters" and test voters. Furthermore, steps can be taken, as I described earlier, to ensure that test voters vote at the same speed as "real voters." Plaintiffs raise the "VW emissions test" as an example of code that evaded detection while under test, but there is an extreme difference between systems that have a "test mode," and thus announce to the malware that they are under test, and systems that have no test node. Voting systems have a test mode (logic and accuracy test), but they are not in that mode during a real election.

135.    At Hearing Tr. 134:8-18, Dr. DeMillo, after discussing "undetectable manipulation" multiple times in DeMillo I, testified to the contrary in the hearing that one indeed could determine if a DRE machine had been compromised. That is, the manipulation was detectable, which is in flat contradiction to the statements in his declaration.

136.    At Hearing Tr. 135:5-9, Dr. DeMillo admitted that contamination of a memory card was detectable. No "undetectable manipulation" there, either.

137.    At Hearing Tr. 160:3:7, Dr. DeMillo confirmed that he was not aware of a single instance of a virus being propagated through a server that creates the ballot format, through a memory card, to a DRE. Yet that is the one of the very scenarios Dr. Halderman proposes as a reason that Georgia cannot possibly ensure a secret election in 2019.

## VII.   HALDERMAN II

138.    Paragraph 7 of Halderman II reiterates that Dr. Halderman conducted an AccuVote review in 2006 and found what he characterizes as "dozens of serious security vulnerabilities in the AccuVote hardware and software." It is curious, however, that, despite the existence of so many vulnerabilities, no one has exploited them in an election in the ensuing 13 years. Further, whether a vulnerability is "serious" depends on the ability of an attacker to exploit it under actual

election conditions.  The mere existence of a vulnerability does not present risk of an intruder cannot access it.

139.    In ¶ 8, Dr. Halderman asserts that no events have occurred since Halderman I (August 7, 2018) that would cause him to alter his conclusions.  I point out, however, that changes have indeed occurred.  Kennesaw State University is no longer responsible for election systems in Georgia.  Dr. Halderman warned in August 2018 that the Russians would attack Georgia's voting system, yet this did not happen.

140.    In ¶ 9, Dr. Halderman claims that "new information has further confirmed the vulnerability of Georgia's election system."  He refers to unspecified "proven risks posed by state actors."  I accept that Russia wants to interfere in U.S. elections, but that in no way "confirms" any vulnerability in Georgia.   Dr. Halderman then mentions "unexplained risks posed by unidentified actors."   That is so nebulous a charge it is difficult to address.  He then cites the Mueller Report as concluding that foreign actors "sought access to state and local computer networks by exploiting known software vulnerabilities on websites of state and local governmental entities."  Yes, they did.  But Georgia's voting system is not, and was not, on any website.  The attacks were mounted against voter registration systems.  As I have already pointed out, an attack on a registration system would not be defended by using paper ballots.

141.    In ¶ 10, Dr. Halderman argues against himself by pointing to undervotes in the Georgia Lt. Governor race in 2018.  He says that it "suggests the potential for widespread malfunctions among the DREs, as well as potential malfeasance."  However, in ¶ 43 of Halderman I, Dr. Halderman emphasized the futility of identifying malware through statistical analysis of election results.  A similar allegation was made in the 2006 election in Sarasota County, Florida, and a committee appointed by the Secretary of State, on which I served, conducted a thorough

37

forensic examination and found no malware.  If fact, no examination of any voting system used in a DRE election has revealed the presence of malware.    If Dr. Halderman believes that malware was present on any machines, surely that malware is still present on some machines that were not actually used in the election, and Dr. DeMillo confirmed that a forensic examination would find it.  If Dr. Halderman believes that there were "widespread malfunctions" of the DRE machines he needs to explain why this would affect only the Lt. Governor race and why it would occur in 159 counties, all of which had different ballot layouts.  He cites a *Politico* article by Kim Zetter, who reported that lawsuits were brought to invalidate the outcome of the Lt. Governor race, but these were dismissed.

142.    Halderman II contains no analysis whatsoever of the risk of paper ballot system. Nevertheless, in ¶ 11, he restates his opinion (which he presents as fact) that "the only practical way to safeguard Georgia's upcoming elections is to discontinue the use of Georgia's DREs, require the use of optical scan paper ballots throughout Georgia, and mandate auditing of the results to ensure that the optical scanners are not attacked with malware to infect the automated counting of the ballots."  This conclusion does not follow from any of the evidence.  When evaluating the relative risks of the frying pan and the fire, Plaintiffs have only chosen to complain about the frying pan (DREs), while ignoring the risks of the fire (paper ballots).

143.    In ¶ 12, Dr. Halderman takes the opportunity to disparage BMDs.  His observations are misplaced.  I have already shown that the marks people make on hand-marked ballots cannot be read reliably, and often cannot even be interpreted properly by a review board.  By contrast, marks made by BMDs are always unambiguous and readable.  Dr. Halderman opines (but presents as fact) that "BMDs will not remedy the existing vulnerabilities inherent to DREs and would continue to pose unacceptable risks to Georgia's election security."  This is false and he naturally

cites no authority or evidence to support his view.  Unlike voting machines, which cannot be tested while in actual use by voters, BMDs can be tested at will during the election because it is easy to print a ballot that will be discarded and not counted.  A protocol can be imposed to test the BMDs as often as one wishes during the election.  Furthermore, the entire purpose of a BMD is to produce a ballot that can be verified by the voter before it is cast.  Dr. Halderman speculates, without any evidence, that voters won't look at their own ballots.

144.    It is not true that all BMD systems rely on bar codes for tabulation.  The BMD produces a ballot that is fully readable by a standard optical scanner.  However, I point out that, as Dr. Halderman recognizes, optical scanners can be infected with malware that will cause them to count votes that have not been cast.  One remedy for this risk, for both scanners and BMDs, it to conduct risk-limiting audits.  Another is simply to audit the machines' software.

145.    In ¶ 13, Dr. Halderman states that BMDs "are a new and untested technology." They are neither new nor untested, and, once again, Dr. Halderman cites no authority for his statement.  HAVA in 2002 required states to offer assistive voting technology.  In 2004, the Populex[16] BMD system were introduced to the market to satisfy this requirement.  The AutoMARK followed in 2005[17].  By 2016, AutoMARK was used statewide in 10 states and widely used in an additional 19 states[18].  Yet Dr. Halderman refers to BMDs as "new and untested."

## VIII.  CONCLUSIONS

146.    Plaintiffs' position, and that of its experts Drs. Halderman and DeMillo, are sadly

---

[16] "Electronic/Paper-Ballot Hybrid Provides Unique Approach to Meet New Federal Requirements," Dec. 16, 2004, available at http://www.votersunite.org/article.asp?id=4303

[17] "Election Systems and Software (ES&S) AutoMARK," available at https://www.verifiedvoting.org/resources/voting-equipment/ess/automark/

[18] *Id*.

unscientific.  Plaintiffs propose that, because DREs exhibit vulnerabilities, they should not be used in elections, but should be replaced by paper ballot systems.  That is a conclusion that can only be drawn after a comparison of the relative risks of the two types of systems.  None of Plaintiffs' witnesses has performed such a study or cited to any.  Since 1979, hundreds of people have gone to prison for paper ballot fraud, yet no one has ever been charged for tampering with a DRE machine.  To this day, more than 35 years after the introduction of DREs, there has never been a verified incident of an intrusion into a DRE used in an election.

147.    Plaintiffs ask the Court to compel Georgia to use, and pay for three different voting systems in the space of 18 months.  Voters in this year's special elections used AccuVote.  Voters in the 2020 election, as recommended by the National Academies of Science, will use BMD-marked optical scan ballots.  Plaintiffs now ask for a third, as yet unprocured, paper ballot system to be used in municipal elections in 2019.  Why?  Because of the threat that the Russians may try by unknown means to affect the composition of Georgia's city councils?

Executed July 10, 2019 at Pittsburgh, Pennsylvania.

Michael Ian Shamos, Ph.D.

40

# EXHIBIT A

# Resume of Michael Ian Shamos

Current to July 1, 2019

## Education

**A.B.** (1968) Princeton University (Physics).   Thesis: "Gravitational Radiation Reaction."  Advisor: John A. Wheeler.

**M.A.** (1970) Vassar College (Physics).   Thesis: "An Absorber Theory of Acoustical Radiation."  Advisor: Morton A. Tavel.

**M.S.** (1972) American University (Technology of Management).

**M.S.**  (1973) Yale University (Computer Science).

**M.Phil.** (1974) Yale University (Computer Science).

**Ph.D.** (1978) Yale University (Computer Science).  Thesis: "Computational Geometry".  Thesis committee: David Dobkin, Martin H. Schultz, Stanley C. Eisenstat.

**J.D.** (1981) Duquesne University, *cum laude*.

## Foreign Languages

French, Russian (good reading and technical translation skills, fair conversational ability).

## Academic Experience

Distinguished Career Professor, Institute for Software Research and Language Technologies Institute, School of Computer Science, Carnegie Mellon University (2001- )
Principal Systems Scientist (1998-2001)
Principal Lecturer (2002-2003).  Teaching Professor (2003- )
Faculty, Tepper School of Business, Carnegie Mellon University (1999-2004).
Co-Director, Carnegie Mellon Institute for eCommerce (1998-2004 )
Vice-Chair, University Research Council (2000-2002)
Director, eBusiness Technology degree program, Carnegie Mellon (2003-2018)
Director, M.S. in Artificial Intelligence and Innovation, Carmegie Mellon (2018-)
Core faculty, Privacy Engineering degree program (2013-)
Director, Universal Library, Carnegie Mellon University (1998-)
Visiting Professor, Faculty of Engineering, The University of Hong Kong (2001- )
Adjunct Faculty, Carnegie Mellon University, Department of Computer Science (1981-1998)
Assistant Professor, Carnegie Mellon University, Departments of Computer Science and Mathematics (1975-81), Dept. of Statistics (1978-81).

**Courses taught (Carnegie Mellon):**
Algorithm Design and Analysis 15-451 (Comp. Sci.)
Intellectual Capital and its Protection 45-886 (MBA)
Ecommerce Technology 20-751 (MSEC program)
Electronic Payment Systems 20-753 (MSEC program), 96-774 (MSIT program)
Ecommerce Law and Regulation 46-840 (MSEC program)
Electronic Voting 17-803
Ubiquitous Computing, 96-761 (MSIT Program)
Electronic Payment Systems (MSIT Program)
Law of Computer Technology, 17-762/17-662/17-562 (2007-)
Artificial Intelligence and Future Markets, 11-561 (2018-)

## Honors and Awards

Fellow, Society of the Sigma Xi (1974-83).

IBM Fellowship, Yale University (1974–75).

SIAM National Lecturer (1977–78).

Distinguished Lecturer (computer science), University of Rochester (1978); McGill University (1979).

Duquesne University Law Review (1980–81).

Black & White Scotch Achiever's Award (first annual, 1991, for contributions to bagpipe musicography).

Industry Service Award of the Billiard and Bowling Institute of America, 1996 (for contributions to billiard history).

Billiard Worldcup Association official referee (2001-)

## Editorships

Editor-in-Chief, Journal of Privacy Technology (2003- 2006).

Member of Editorial Board, *Electronic Commerce Research Journal* (2000- ).

Member of Editorial Board, *Pittsburgh Journal of Technology Law and Policy* (1999-2003).

Dr. Shamos has reviewed scientific papers for *Communications of the ACM*, *Mathematical Reviews*, *IEEE Computer*, *IEEE Transactions on Computers*, *Information Processing Letters*, *Journal of the ACM* and the *Journal of Computational Physics*.

Contributing Editor, *Billiards Digest* magazine (1990- ).

## Patents

Co-inventor with K. Srinivasan, U.S. Patent 7,330,839, "Method and System for Dynamic Pricing," issued February 12, 2008.

Co-inventor with K. Srinivasan, U.S. Patent 7,421,278, "Method and Apparatus for Time-Aware and Location-Aware Marketing," issued September 2, 2008.

Co-inventor with K. Srinivasan, U.S. Patent 7,747,465, "Determining the Effectiveness of Internet Advertising," issued June 29, 2010.

Co-inventor with K. Srinivasan, U.S. Patent 8,195,197, "Method and Apparatus for Time-Aware and Location-Aware Marketing," issued June 5, 2012.

Co-inventor with K. Srinivasan, U.S. Patent 8,280,773, "Method and Apparatus for Internet Customer Retention," issued October 2, 2012.

## Legal Experience

Special Counsel, Reed Smith LLP (2000-2003), electronic commerce law.

Shareholder, The Webb Law Firm (1996-2000), intellectual property law. Associate (1990-95).

Private practice of law (1987-90), intellectual property

Associate, law firm of Buchanan, Ingersoll, P. C. (1985-87)(now Buchanan Ingersoll & Rooney, PC), Emerging Companies Department.

General Counsel, Carnegie Group, Inc. (1983-85), artificial intelligence company.

Private practice of law (1981-83), computer law.

## Bar Admissions

Supreme Court of Pennsylvania (1981– ).

United States District Court for the Western District of Pennsylvania (1981– ).

United States Patent and Trademark Office (1981– ).

United States Tax Court (1982– ).

United States Court of Appeals for the Armed Forces (1982– ).

United States Court of Appeals for the Third Circuit (1982– ).

United States Supreme Court (1985– ).

United States Court of Appeals for the Federal Circuit (1985– ).

## Expert Witness

Dr. Shamos has served as an expert witness in multiple computer software and electronic voting cases.  He has participated in the cases listed below.  "D" indicates deposition testimony; "R" indicates report, declaration or affidavit; "T" indicates trial testimony.

Total: 267 cases: 206 patent, 14 electronic voting, 13 trade secret, 11 copyright, 33 other.
Affidavits, reports or declarations submitted in 188 cases.
Deposed 121 times.
Testified at trial or hearing in 43 cases.
Participated in 3 reexams, 3 PGRs, 56 IPRs and 23 CBMs

1. *C.W. Communications, Inc. v. International Research Service, Inc.*, Civil Action No. 84-890, (W.D. Pa. 1984), aff'd.  Case No. 88-3331 (3d Cir., Oct. 31, 1988).  Served as an expert for plaintiff publisher as to the fame of its "Computerworld" trademark.  Result: permanent injunction entered against defendant.  Judge McCune's Memorandum and Order states. "We accept the conclusion drawn by Dr. Shamos."  Firm: Webb, Burden Robinson & Webb (now the Webb Law Firm). (D,T)

2. *E.F. Hutton, Inc. v. Gipson* (W.D. Pa. 1985).  Served as an expert for defendant-counterclaimant physician as to fraud in the inducement by a computer hardware supplier.  Plaintiff had provided capital financing for the purchase.  Result: defendant was awarded compensatory damages + $250,000 punitive damages.  (D,T)

3. *In re Comprehensive Business Systems,* 119 B.R. 573 (S.D. Ohio 1990).  Served as an expert for a secured creditor in a bankruptcy case in which the creditor sought to obtain software still in development for which it had advanced over $2 million in funding.  Dr. Shamos opined as to the value of the incomplete software.  Result: the creditor was able to purchase the software from the Trustee for $67,500.  The Court referred in its opinion to "the testimony of the eminent and impressive Dr. Shamos."  (D,R,T)

4. *Levinson Steel Co. v. American Software, Inc. et al*., Civil Action No. 96-282, W.D. Pa. (1996).  Served as an expert for plaintiff in a case involving bad faith estimates of computer processing capacity resulting in delivery of an inadequate system.  Result: settlement in favor of

plaintiff in an undisclosed amount.  Contact: <u>Reed Smith LLP</u>, 225 Fifth Ave., Pittsburgh, PA 15222.  (D,R)

5. *ASE Limited v. INCO Alloys International, Inc.*, Civil Action No. 98-1266, (W.D. Pa. 1998).  Served as an expert for defendant concerning breach of computer services contract by declaratory judgment plaintiff.  Result: determination that defendant was free to seek services from a different vendor. Firm: <u>Reed Smith LLP</u>, 225 Sixth Ave., Pittsburgh, PA 15222.  Attorney: Anthony Basinski, Esq. (D,T)

6. *Twentieth Century Fox Film Corp. v. iCraveTV.*, 53 U.S.P.Q. 2d 1831 (W.D. Pa. 2000).  Served as an expert for Plaintiffs concerning Internet technology used to stream video from U.S. TV stations through web sites in Canada.  Result: TRO and preliminary injunction issued against defendants prohibiting continued infringement in the U.S.  Firm: <u>Reed Smith LLP</u>. Attorney: Gregory Jordan, Esq.  (T)

7. Invited testimony before the British House of Lords, Subcommittee B of the European Union Committee, April 20, 2000.  Subject: European regulation of eCommerce.  View <u>testimony</u>.

8. *Universal Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y. 2000), aff'd 273 F.3d 429 (2d Cir. 2001).  Served as an expert for plaintiff movie studios concerning accused software for decrypting DVDs in the first case interpreting the Digital Millennium Copyright Act.  Result: permanent injunction issued in favor of plaintiffs on August 17, 2000.  Contact: <u>William Hart, Esq.</u>, <u>Proskauer Rose LLP</u>.  View <u>testimony</u>. View <u>opinion</u>. View <u>appellate opinion</u>. (D,T)

9. *MercExchange, L.L.C. v. eBay, Inc. et al.*, Case No. 2:01-CV-736 (E.D. Va. 2001).  Served as an expert for defendant <u>eBay</u> in an infringement case concerning U.S. Patent <u>6,202,051</u> for Internet auctions.  Following Dr. Shamos' reports, Defendants obtained a summary judgment of noninfringement of the subject patent.  On the other patents, the case went to the U.S. Supreme Court, which ruled that injunctions are not automatic in patent cases.  Contact: <u>Tim Teter, Esq.</u>, <u>Cooley LLP.</u>  (D,R)

10. *Powerquest Corp. v. Quarterdeck Corp. et al.*, Case No. 2:97-CV-0783 (D. Utah 1997).  Served as an expert for plaintiff <u>PowerQuest</u> in an infringement case concerning U. S. Patents <u>5,675,769</u> and <u>5,706,472</u> for a method of resizing hard disk partitions.  Dr. Shamos testified at the Markman hearing.  Case settled when one of the defendants acquired plaintiff.  Attorney: <u>Gregg I. Anderson</u>, Esq., formerly at Merchant & Gould, now an Administrative Patent Judge at the Patent Trial and Appeal Board.  (R,T)

11. *Sightsound.Com Inc. v. N2K Inc. et al.*, C.A. 98-118 (W.D. Pa. 1998).  Served as an expert for defendants, including a subsidiary of Bertelsmann AG, concerning validity of U.S. Patents <u>5,191,573</u> and <u>5,966,440</u> for distribution of digital audio via telecommunications lines.  Case settled.  Firm: Parcher, Hayes & Snyder, (no longer in existence).  Contact: <u>Steven M. Hayes, Esq.</u>, <u>Simmons Hanley Conroy, LLC</u>, 112 Madison Ave., New York, NY 10016.  (D,R)

12. *Freemarkets, Inc. v. B2eMarkets, Inc.*, C.A. 02-162-SLR (D. Del. 2002).  Served as an expert witness for plaintiff concerning infringement of U.S. patents <u>6,216,114</u> and <u>6,223,167</u>,

concerning methods of conducting electronic auctions.  Case settled two weeks after expert attended a demonstration of the accused product.  Contact: <u>D. Michael Underhill, Esq.</u>, <u>Boies, Schiller & Flexner, LLP</u>, Washington, DC.

13. *Lifecast.com, Inc. v. ClubCorp, Inc.*, AAA Case No. 71Y1170076301 (Dallas, TX).  Served as an expert witness for respondent in a case alleging copyright infringement of Internet websites.  Testified at arbitration.  Result: Complainant's claims denied; award for respondent on counterclaims and for attorney's fees.  Contact: <u>Bill Whitehill, Esq.</u>, <u>Gardere Wynne Sewell LLP</u>, 1601 Elm St., Dallas, TX 75201.  (T)

14. *IP Innovation LLC v. Thomson Learning, Inc. et al.*, Case H-02-2031 (S.D. Tex. 2002).  Served as a expert for defendant The Princeton Review, Inc. concerning alleged infringement of U.S. Patent <u>4,877,404</u> relating to online delivery of educational courses.  Summary judgment of non-infringement obtained for defendant after favorable Markman proceeding.  Contact: <u>Peter Vogel, Esq.</u>, <u>Gardere Wynne Sewell LLP</u>, 1601 Elm St., Dallas, TX 75201. (R)

15. *Starpay.com LLC et al. v. Visa International Service Association et al.*, Case 3-03-CV-976-L (N.D. Tex. 2003).  Served as an expert for defendant Visa concerning alleged infringement of U.S. Patent <u>5,903,878</u> relating to online authentication of credit card customers.  Dr. Shamos provided the court with a Markman tutorial in 2004 and a non-infringement and invalidity declaration in 2008.  Case settled in February 2008.  Contact: <u>Stanley Young, Esq.</u>, <u>Covington & Burling LLP</u>, 333 Twin Dolphin Drive, Suite 700, Redwood Shores, CA 94065.  (D,R,T)

16. *Safeclick LLC v. Visa International Service Association et al.*, Case C-03-5865 (N.D. Cal. 2003).  Served as an expert for defendant Visa concerning alleged infringement of U.S. Patent <u>5,793,028</u> relating to online authentication of credit card customers.  Summary judgment of noninfringement granted for Visa based on expert reports, affirmed after appeal to the Federal Circuit.  Contact: <u>Stanley Young, Esq.</u>, <u>Covington & Burling LLP</u>, 333 Twin Dolphin Drive, Suite 700, Redwood Shores, CA 94065.  (D,R)

17. *Wells Fargo Bank Minnesota, NA et al. v. UBS Warburg Real Estate Securities, Inc.*, Case 02-2849 (192d Judicial District, Dallas Cty., Tex, 2002) and *LaSalle Bank, NA et al. v. UBS Warburg Real Estate Securities, Inc.*, Case 02-2899-G (134th Judicial District, Dallas Cty., Tex, 2002).  Served as an expert for defendant UBS Warburg in an electronic discovery matter involving a case of first impression regarding Texas Discovery Rule 196.4 allocating costs of discovery of electronic records.  Firm: <u>Gardere Wynne Sewell LLP</u>, 1601 Elm St., Dallas, TX 75201.  Contact: <u>Dawn Estes, Esq.</u>, <u>Taber, Estes Okon Thorne & Carr PLLC</u>, 3811 Turtle Creek Blvd., Suite 2000, Dallas, TX 75219. (D, R)

18. *American Association of People with Disabilities et al. v. Shelley et al.*, Case No. CV04-1526 FMC (PJWx) (C. D. Calif., 2004).  Served as an expert for plaintiff AAPD, which has brought a claim against the California Secretary of State that requiring DRE voting machines to be equipped with audit trails violates the rights of disabled persons.  Plaintiffs' application for TRO

and preliminary injunction denied. Firm: Howrey LLP, (no longer in existence). Attorney John E. McDermott is now a Magistrate Judge in the Central District of California. (R)

19. *Paul Ware v. Target Corp.*, CA 4:03-CV-0243-HLM (N.D. Ga., 2003). Served as an expert for defendant Target Corp., a large retailer, in a case involving U.S. patent 4,707,592, claiming a method of conducting credit card sales. Case settled during Markman preparations. Contact: Thomas P. Burke, Esq., Ropes & Gray LLP, 1211 Ave. of the Americas, New York, NY 10036.

20. *Viad Corp., v. C. Alan Cordial et al.,* No. 03-1408 (W.D. Pa., filed 2003). Served as an expert for defendants in an action alleging misappropriation of trade secrets relating to software for automating certain aspects of the exhibit booth and trade show industries. Status: case settled immediately before trial, after plaintiff's unsuccessful Daubert challenge of Dr. Shamos. Contact: Barbara Scheib, Esq., Cohen & Grigsby, P.C., 11 Stanwix Street, Pittsburgh, PA 15222. (D,R,T)

21. *Schade et al. v. Maryland State Bd. of Elections et al.*, Case No. C0497297 (Cir. Ct. Anne Arundel Cty. Md., 2004). Served as an expert for defendants in a case challenging the decision of the Board of Elections not to decertify Diebold AccuVote system. Result: Plaintiff's motion for preliminary injunction denied, upheld on appeal. Judge Manck's opinion cites Dr. Shamos' testimony as follows: "the court finds Dr. Shamos, Defendants' expert, to be the true voice of reason and the most credible expert in this matter." The denial of preliminary injunction was upheld by the Maryland Court of Appeals, which commented extensively on Dr. Shamos' testimony in its opinion. Contact: Michael Berman, Esq., (formerly Maryland Deputy Attorney General), Rifkin, Weiner, Livingston, Levitan & Silver, LLC. (R,T)

22. *Wexler et al. v. Lepore et al.*, Case No. 04-80216 (CIV-COHN) (S.D. Fla. 2004) . Served as an expert for defendants, various Florida election supervisors against claim by U.S. Congressman Robert Wexler that use of DRE voting machines without paper audit trails violates the equal protection clause of the U.S. Constitution. Dr. Shamos testified on Oct. 19, 2004. The trial judge rendered judgment in favor of defendants on Oct. 25. Contact: Jason Vail, Esq., then Assistant Attorney General, Department of Legal Affairs, The Capitol, Tallahassee, FL, now at Allen Norton & Blue, PA. Opinion. (T)

23. *Siemens Information and Communication Networks, Inc. v. Inter-Commercial Business Systems, Inc.*, Civil Action 3-03CV2171-L (N.D. Tex. 2004). Served as an expert for defendant against claim of copyright infringement based on reverse-engineered firmware resident in telephone switching systems. Status: case settled shortly after the submission of Dr. Shamos's rebuttal report on non-infringement. Contact: Bill Whitehill, Esq., Gardere Wynne Sewell LLP, 1601 Elm St., Dallas, TX 75201. (R)

24. *Soverain Software LLC v. Amazon.com, Inc.*, C.A. No. 6:04-CV-14 (E.D. Tex. 2004). Served as an expert for plaintiff regarding asserted patents 5,708,780, 5,715,314 and 5,909,492, relating to the shopping cart paradigm of electronic commerce. Status: settled in Sept. 2005 with Amazon paying $40 million to Soverain and taking a license under the patents in suit. Contact: Ognian Shentov, Esq., Jones Day, 222 E. 41st St., New York, NY 10017. (D,R)

25. *CollegeNET, Inc. v. The Princeton Review, Inc.*, Case '051205KI (D. Ore. 2005).  Served as an expert for defendant The Princeton Review, Inc. concerning alleged infringement of U.S. Patent 6,460,042 relating to online delivery of educational courses.  Case settled in December 2007.  Contact: Peter Vogel, Esq., Gardere Wynne Sewell LLP, 1601 Elm St., Dallas, TX 75201.  (R)

26. *CombineNet, Inc. v. Verticalnet. Inc.*, GD 05-018911 (Ct. Common Pleas, Allegheny Cty., PA).  Served as an expert for plaintiff in an action for trade secret misappropriation relating to a system for conducting electronic auctions.  Plaintiff won in arbitration.  Contact: Mark Knedeisen. Esq., K&L Gates LLP, 210 Sixth Avenue, Pittsburgh, PA 15222-2613.  (T)

27. *RealSource, Inc. v. Best Buy Co., Inc. et al.*, No. A04-CA-771-LY (W.D. Tex.).  Served as an expert for defendant Lowe's Companies, Inc., against a claim of infringement of U.S. patent 5,732,136 relating to validation of point-of-sale debit card transactions.   Provided a tutorial to the Court during Markman proceedings concerning debit card technology.  Defendants won summary judgment of non-infringement, affirmed by the Federal Circuit.  Defendants Lowe's settled and was not involved in the appeal.  Contact: Michael S. Connor, Esq., Alston & Bird LLP, Bank of America Plaza, 101 South Tryon St, Suite 4000, Charlotte, NC 28280-4000.  (R,T)

28. *DE Technologies, Inc. v. Dell, Inc. et al.*, No. 7:04-CV-00628 (W.D. Va.).  Served as an expert for plaintiff DE Technologies, Inc., asserting a claim of infringement of U.S. patents 6,460,020 and 6,845,364,  relating to a system for implementing international sales transactions.  Case settled after and adverse summary judgment.  However, the Court used Dr. Shamos' testimony in its opinion.  Contact: David Marder, Esq., Robins Kaplan Miller & Ciresi LLP, 800 Boylston Street, 25th Floor, Boston, MA 02199.   (D,R,T)

29. *Eaton Power Quality Corp. v. J.T. Packard & Associates*, No. 05 C 3545 (N.D. Ill. 2005).  Served as expert for plaintiff in a claim of software copyright infringement involving a system for configuring industrial uninterruptible power supplies.  Case settled in early 2007.  Firm: Dewey & LeBoeuf.  Contact: Keith P. Schoeneberger, Esq., Pasulka & Associates PC.  (D,R)

30. *Taylor et al. v. Onorato et al.*, CA 06-481 (W.D. Pa 2006).  Served as an expert for Commonwealth of Pennsylvania defendants in an action seeking to enjoin the use of electronic voting machines in Allegheny County, PA.  Dr. Shamos testified at length in a preliminary injunction hearing held April 25-27, 2006 before Judge Lancaster.  The injunction was denied on April 28.  Suit was subsequently dropped by plaintiffs.  Contact: Mark Aronchick, Esq., Hangley Aronchick Segal Pudlin & Schiller, One Logan Square, 18th & Cherry Streets, 27th Floor, Philadelphia, PA 19103.  (T)

31. *FedEx Ground Package System, Inc. v. Applications International Corp.*, CA No. 03-1512 (W.D. Pa.).  Served as an expert for defendant counterclaiming for copyright infringement and trade secret misappropriation relating to software for maintaining occupational health and safety records.  Dr. Shamos's testimony was excluded because he was unable to perform a side-

by-side comparison of the original and accused works. Case has settled.  Contact: Ronald Hicks, Esq., Meyer, Unkovic & Scott LLP, 1300 Oliver Bldg., Pittsburgh, PA 15222. (D,R)

32. *NetMoneyIN, Inc. v. Verisign, Inc. et al.*, Cv-01-441-TUC-RCC (D. Ariz.). Served as an expert for defendants Bank of America Merchant Services, Inc. and Wells Fargo Bank, N.A., who are accused of infringing claim 23 of U.S. patent 5,822,737, relating to an electronic payment system. Wells Fargo and Bank of America have settled. Contact: K&L Gates LLP, State Street Financial Center, One Lincoln Street, Boston, Massachusetts 02111-2950. (D,R)

33. *Contois Music Technology, LLC v. Apple Computer, Inc.*, 2:05-CV-163 (D. Vermont, filed Feb. 13, 2006). Served as an expert for plaintiff in an action alleging that the Apple iTunes software infringed U.S. patent 5,864,868, relating to a method for selecting music from an electronic catalog. Case settled after a favorable Markman order. Contact: John Rabena, Esq., Sughrue Mion PLLC, 2100 Pennsylvania Avenue, NW, Suite 800, Washington, DC 20037-3213.

34. *Banfield et al. v. Cortés*, 442 MD 2006 (PA Cmwlth. Ct.). Served as an expert for defendant Secretary of the Commonwealth of Pennsylvania in an action to compel the decertification of all electronic voting machines in Pennsylvania. In February 2008 Defendant successfully repelled an emergency motion for preliminary injunction. In August 2012, the Court denied Petitioners' motion for summary judgment, citing Dr. Shamos's expert report extensively. In October 2013, the Commonwealth Court granted summary judgment for the Secretary. The Pennsylvania Supreme Court affirmed on February 18, 2015. Contact: Steven E. Bizar, Esq., Buchanan Ingersoll & Rooney PC, Two Liberty Place, 50 S. 16th St., Philadelphia, PA 19102-2555. (D,R)

35. *Remote Inventory Systems, Inc. v. WESCO Distribution, Inc.*, AAA Case No. 55 171 00493 05 (Pittsburgh, PA). Served as an expert for respondent in a case alleging misappropriation of trade secrets in a computerized inventory system.  Contact: Kirsten Rydstrom, Esq., Reed Smith LLP, 225 Fifth Ave., Pittsburgh, PA 15222. (D,R)

36. *SyncSort, Inc. v. Innovative Routines International, Inc.*, Civil Action No.  04-3623 (WHW) (D. New Jersey). Served as an expert witness for defendant in an action alleging misappropriation of trade secrets embodied in plaintiff's Unix sorting software. Dr. Shamos testified at a bench trial in January 2011. Case settled after an appeal to the Third Circuit was filed. Contact: David R. Fine, Esq., K&L Gates LLP, 17 N. Second Street, 18th Floor, Harrisburg, PA 17101-1507. (D,R,T)

37. *Digital Impact, Inc. v. Bigfoot Interactive, Inc.*, Civil Action C05 00636 (CW) (N.D. Cal.). Served as an expert witness for defendant in an action alleging infringement of U.S. Patent 6,449,634, relating to determining which file formats can be processed by an email client. Result: defendant obtained summary judgment of non-infringement, upheld by the Federal Circuit. Contact: Arthur Dresner, Esq., Duane Morris LLP, 1540 Broadway, New York, NY 10036. (D,R)

38. *Prism Technologies LLC v. Verisign, Inc. et al.*, CA 05-214-JJF (D. Del.). Served as an expert for plaintiff in an action alleging infringement of U.S. Patent 6,516,416, relating to use of a hardware key for authentication over networks. Defendants prevailed on summary judgment

of non-infringement, which was upheld on appeal.  Firm: Robins Kaplan Miller & Ciresi LLP.  Contact: Dirk D. Thomas. Esq., McKool Smith, 1999 K Street, N.W., Suite 600, Washington, DC 20006.  (R)

39. *AdvanceMe, Inc. v. Rapidpay LLC et al.*, Civil Action 6:05-cv-424 LED (E.D. Tex., Tyler Division).  Served as an expert witness for plaintiff in an action alleging infringement of U.S. Patent 6,941,281, relating to an automated payment system for dividing credit card proceeds between a merchant and another party.  Testified at a bench trial in July 2007 before Judge Davis, who held the patent infringed but invalid for obviousness.  Firm: Paul, Hastings LLP, Five Palo Alto Sq., Palo Alto, CA 94306.  Contact: Ronald S. Lemieux, Esq., Singularity LLP, 275 Shoreline Drive, Redwood Shores, CA 94065. (D,R,T)

40. *IBM Corp. v. Amazon.com, Inc.*, CA 9:06-CV-242-RHC (E.D. Tex., Lufkin Div.) and *IBM Corp. v. Amazon.com, Inc.*, CA 6:06-CV-452-LED (E.D. Tex., Marshall Div.).  Served as an expert for IBM in related actions alleging infringement of U.S. Patents 5,319,542, 5,442,771, 5,446,891, 5,796,967 and 7,072,849, all concerning methods of conducting electronic transactions, and a counterclaim for infringement of U.S. Patent 5,826,258, concerning a method for querying semistructured data.  Case settled early in discovery when the parties cross-licensed each other's patents.  Contact: Mark J. Ziegelbein, Esq., Dentons US LLP, 2000 McKinney Ave., Suite 1900, Dallas, TX 75201-1858.

41. *The MathWorks, Inc. v. COMSOL AB et al.*, CA 6:06-CV-334 (E.D. Tex., Tyler Division).  Served as an expert for plaintiff The MathWorks, providers of the mathematical software system MATLAB, in an action alleging copyright infringement and infringement of U.S. Patents 7,051,338 and 7,181,745 concerning methods for invoking object methods from external environments.  After trial, the case settled with defendant admitting infringement, paying $12,000,000 in damages and waiving appeal rights.  Contact: Krista Schwartz, Esq., Jones Day, 77 W. Wacker Dr., Chicago, IL 60601-1692.

42. *Avante Int'l. Technology Corp. v. Diebold Election Systems et al.,* Case 4:06-CV-0978 TCM (E.D. Mo., Eastern Division).  Served as an expert for defendants Sequoia Voting Systems and Premier Election Systems in an action alleging infringement of U.S. Patents 6,892,944, 7,036,730 and 7,077,313 concerning electronic voting technology.  Dr. Shamos testified at a 5-day trial in February 2009.  Result: The jury found Plaintiff's asserted claims invalid as anticipated and obvious.  Contact: Peter T. Ewald, Esq., Oliff & Berridge, PLC, 277 South Washington Street, Suite 500, Alexandria, VA 22314.  (D,R,T)

43. *Netcraft Corp. v. eBay, Inc. and PayPal, Inc.*, Case 3:07-cv-00254-bbc (W.D. Wisc. 2007).  Served as an expert for defendants in an action alleging infringement of U.S. Patents 6,351,739 and 6,976,008 concerning methods of billing for ecommerce transactions over the Internet.  Defendants were granted summary judgment of non-infringement on Dec, 10, 2007, upheld on appeal.  Firm: Irell & Manella LLP, 180 Avenue of the Stars, Los Angeles, CA 90067.  Contact: Kenneth Weatherwax, Esq., Goldberg, Lowenstein & Weatherwax LLP, 1925 Century Park East, Suite 2120, Los Angeles, CA 90067.

44. *ACLU of Ohio et al. v. Brunner et al.*, Case 1:09 CV 0145 (N.D. Ohio 2008).  Served as an expert witness in an action alleging that the use of central count optical scan voting should not be permitted in Cuyahoga County, as had been ordered by the county board of elections.  A preliminary injunction was denied in February 2008.  The case became moot and was dismissed in May 2008 when the Ohio Legislature granted by statute the relief requested by plaintiff, prohibiting the use of central count opscan in Cuyahoga County.  Contact: Meredith Bell-Platts, Esq., ACLU Voting Rights Project, 2600 Marquis One Tower, Atlanta, GA 30303.  (R)

45. *Ariba, Inc. v. Emptoris, Inc.*, Civil Action 9:07-CV-90-RHC (E.D. Tex. 2007).  Served as an expert for Ariba in an action alleging infringement of U.S. Patents 6,216,114 and 6,499,018, relating to the conduct of electronic auctions.  Dr. Shamos testified in a jury trial on infringement and validity.  Result: verdict finding all asserted claims valid and willfully infringed.  Contact: Robert Fram, Esq., Covington & Burling LLP, One Front St., San Francisco, CA 94111.  (D,R,T)

46. *EpicRealm Licensing, LP v. Autoflex Leasing Inc. et al.*, CA 5:07-CV-125 (E.D. Tex. 2005).  Served as an expert for defendant Herbalife International of America, Inc. in an action alleging infringement of U.S. patents 5,894,554 and 6,415,335, relating to a system for managing generation of dynamic Internet web pages.  All original defendants settled.  See also the Oracle case below.  Contact: Ognian Shentov, Esq., Jones Day, 222 E. 41st St., New York, NY 10017.  Also served as an expert for defendant FriendFinder in a separate trial in this action.  After a jury trial before Judge Folsom, the patents were found valid and infringed, but the jury awarded only $1.1M, the smallest amount testified to by defendant's damages expert.  Contact: Michael J. Sacksteder, Esq., Fenwick & West LLP, 555 California St., San Francisco, CA 94104.  (D,R,T)

47. *Oracle Corporation v. EpicRealm Licensing, LP,* CA 2-06-414 (D. Del. 2006), later *Oracle Corporation v. Parallel Networks, LLC.*  Served as an expert for Oracle in a declaratory judgment alleging invalidity of U.S. patents 5,894,554 and 6,415,335, relating to a system for managing generation of dynamic Internet web pages.  The patents are the same as those in the EpicRealm case, above.  Oracle obtained summary judgment of non-infringement, reversed on appeal to the Federal Circuit.  Case settled in May 2011 on the eve of trial.  Firm: Kilpatrick Townsend & Stockton, LLP, 379 Lytton Ave., Palo Alto. CA 94301.  Contact: Theodore T. Herhold, Singularity LLP, 275 Shoreline Drive, Redwood Shores, CA 94065. (D,R)

48. *Saulic v. Symantec Corporation et al.*, Case No. SA CV 07-610 AHS (C.D. Cal., Santa Ana Division, 2007).  Served as an expert for defendant Symantec in a removal action alleging violation of California Civil Code §1747.8, relating to the collection of personal identification information in connection with credit card transactions.  Case settled.  Original firm: Heller Ehrman.  Contact: Chad R. Fuller, Esq., Troutman Sanders LLP, 11682 El Camino Real, Suite 400, San Diego, CA 92121.  (R)

49. *Gusciora et al. v. McGreevey et al.* (now *Gusciora v. Christie*), Docket No. MER-L-2691-04 (N.J. Super., Mercer County).  Served as an expert for defendants, including the Governor and Attorney General of New Jersey, in a case alleging that the state's AVC Advantage voting machines are unconstitutionally insecure.  A bench trial was held from January-May, 2009

before Judge Linda Feinberg.  The Court's opinion adopts Dr. Shamos' testimony and comments on it extensively.  Affirmed on appeal in October 2013.  Contact: Leslie Gore, Esq., Asst. Atty. Gen'l., 25 Market Street, P.O. Box 112, Trenton, NJ 08625.  (D,R,T)

50. *R.R. Donnelley & Sons Company v. Quark, Inc. et al.*, C.A. No. 06-00032-JJF (D. Del.).  Served as an expert for plaintiff R.R. Donnelley in a case alleging infringement of U.S. Patents 6,205,452, 6,327,599, 6,844,940 and 6,952,801, relating to book assembly, imposition of graphics and control of electronic presses.  Case has settled.  Contact: Stuart W. Yothers, Esq., Ropes & Gray LLP, 1251 Avenue of the Americas, New York, NY 10020.

51. *MOAEC, Inc. v. Pandora Media, Inc. et al.*, Case No. 07-cv-654-bbc (W.D. Wisc.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 5,969,283, 6,232,539, 6,953,886 and 7,205,471, relating to systems for organizing and retrieving digital music.  Two defendants obtained summary judgment of noninfringement; the remaining defendant settled.  Contact: Joshua Krumholz, Esq., Holland & Knight, LLP, 10 St. James Avenue, 11th Floor, Boston, MA 02116.  (D,R)

52. *Web.com, Inc. v. The Go Daddy Group, Inc.*, Case No. CV07-01552-PHX-MHM (D. Ariz.).  Served as an expert for defendant in a case alleging infringement of U.S. Patents 6,654,804, 6,789,103, 6,842,769 and 6,868,444, relating to methods for managing configuration of web servers and provision of Internet services.  Case has settled.  Firm: Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, CA 94304.  Contact: Richard G. Frenkel, Esq., Latham & Watkins LLP, 140 Scott Drive, Menlo Park, CA 94025.

53. *Hummel et al. v. Dynacraft BSC, Inc. et al.*, Case No. CV 052214 (Cal. Super. Marin Cty.).  Served as an expert for defendants in an action alleging breach of contract for web hosting services.  Dr. Shamos provided four hours of trial testimony.   Result: verdict for the defense.  Contact: Joe B. Harrison, Esq., Gardere Wynne Sewell LLP, 1601 Elm St., Suite 3000, Dallas, TX 75201.  (T)

54. *Tegg Corp. v. Beckstrom Electric Co. et al.*, Civil Action No. 2:08-CV-00435-NBF (W.D. Pa.).  Served as an expert for defendants in a case alleging infringement of copyright in computer software for administering field maintenance of electrical equipment.  Case has settled.  Original firm: Reed Smith LLP.  Contact: Richard D.Kelley, Esq., Bean Kinney & Korman, 2300 Wilson Blvd., Suite 700, Arlington, VA 22220.

55. *Cordance Corporation v. Amazon.com, Inc.*, Civil Action No. 06-491-MPT (D. Del.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 5,862,525, 6,088,717 and 6,757,710, relating to an infrastructure for conducting online transactions.  In August 2009 a jury found the '717 patent valid but not infringed and the '710 patent infringed but invalid.  The finding of invalidity of the '710 patent was vacated by the Court on judgment as a matter of law.  The Federal Circuit reversed and reinstated the jury's finding.  Contact: Robert M. Abrahamsen, Esq., Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, MA 02210.  (D,R, T)

56. *Anthurium Solutions, Inc. v. MedQuist, Inc. et al.*, Case No. 2:07-vcv-484 (DF/CE) (E.D. Tex.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patent 7,031,998, relating to a distributed workflow system.  Case settled ten days after responsive expert reports were served.  Contact: Joshua Krumholz, Esq., Holland & Knight, LLP, 10 St. James Avenue, 11th Floor, Boston, MA 02116.  (R)

57. *Performance Pricing, Inc. v. Google, Inc. et al.*, Case No. 2:07-cv-432(LED) (E.D. Tex.).  Served as an expert for defendant Yahoo! in a case alleging infringement of U.S. Patent 6,978,253, relating to determining prices for items sold online.  Case has settled as to defendant Yahoo!.  Contact: Michael A. Jacobs. Esq., Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105.  Also served as an expert for remaining defendants Google and AOL.   In March 2010 the Court granted defendants' motion for summary judgment of noninfringement, affirmed by the Federal Ciruit.  Contact: David A. Perlson. Esq., Quinn Emanuel Urquhart & Sullivan, LLP, 50 California Street, San Francisco, CA 94111.  (D,R)

58. *Nationwide Power Solutions, Inc. et al., v. Eaton Electrical Inc.*, Case No. CV-8:07-0883-JVS (C.D. Cal.).  Served as an expert for defendant/counterclaimant Eaton in a case alleging antitrust violations by Eaton arising out of proprietary servicing software in its uninterruptible power supplies.  Case has settled.  Contact: James L. Day, Esq., Latham & Watkins LLP, 505 Montgomery Street, Suite 2000 San Francisco, CA 94111.

59. *CBS Interactive, Inc. v. Etilize, Inc.*, Case No. C -6-05378 (MHP) (N.D. Cal.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 6,714,933 and 7,082,426, relating to web crawling technology to aggregate product information.  Defendant consented to an injunction against further infringement and the case settled.  Firm: Winston & Strawn, LLP, 101 California Street, San Francisco, CA 94111.  Contact: Glenn E. Westreich, Esq., Hayes and Boone, LLP, 2033 Gateway Place, San Jose, CA 95110.

60. *Geographic Services, Inc. v. Anthony Collelo*, Case 2008-9961 (Fairfax Cty., Va.)Served as an expert for plaintiff in a case alleging misappropriation of trade secrets involving determining and proofing geographic names as applied to maps and satellite imagery.  Case was dismissed by Judge Ney on technical legal grounds at the close of Plaintiff's case.  The Virgina Supreme Court reversed and remanded the case for further proceedings.  Case has settled.  Contact: Mark W. Wasserman, Esq., Reed Smith LLP, 3110 Fairview Park Drive, Suite 1400, Falls Church, VA 22042.  (D,R,T)

61. *ODS Technologies, LP v. Magna Entertainment Corp, et al.*, CV 07-03265 DDP (D. Del.).  Served as an expert for defendants in a case alleging infringement of U.S. Patents 5,830,068, 6,004,211, 6,089,981, 6,554,709 and 7,229,354, relating to off-track wagering systems and methods for restricting wagering based on location.  Dr. Shamos submitted a declaration in support of summary judgment.  Case settled before expert reports were due.  Contact: Virginia DeMarchi, Esq., Fenwick & West, LLP, 801 California Street, Mountain View, CA 94041.  (R)

62. *Gannett Satellite Information Network, Inc. v. Office Media Network, Inc.*, C.A. No. 08-96-GMS (D.Del.).  Served as an expert for defendant in a case alleging infringement of U.S. Patents

6,288,688, 6,622,826, 6,981,576 and 7,270,219, relating to display of advertising information on screens in elevators.  Case settled shortly after Dr. Shamos's deposition.  Contact: Steven R. Trybus, Esq., Jenner & Block LLP, 353 N. Clark St., Chicago, IL 60654.  (D,R)

63. *Avante Int'l. Technology Corp. v. Premier Election Solutions et al.,* Case 4:06-CV-091367-ERW (E.D. Mo., Eastern Division).  Served as an expert for defendants Sequoia Voting Systems and Premier Election Systems in an action alleging infringement of U.S. Patents 7,422,150, and 7,431,209 concerning electronic voting technology.  Case settled in December 2009.  Contact: Peter T. Ewald, Esq., Oliff & Berridge, PLC, 277 South Washington Street, Suite 500, Alexandria, VA 22314.  (R)

64. *Accenture Global Services GmbH et al. v. Guidewire Software, Inc.*, Civ. No. 07-826-SLR (D. Del.).  Served as an expert for Accenture in a case alleging misappropriation of trade secrets and infringement of U.S. Patents 7,013,284 and 7,017,111, relating to automated insurance claim handling.  The District Court found the asserted system claims invalid under 35 U.S.C. §101, affirmed by the Federal Circuit at 2011-1486.  Case settled in Oct. 2011. Original firm: Morrison & Foerster, LLP.  Contact: L. Scott Oliver, Esq., K&L Gates LLP, 630 Hansen Way, Palo Alto, CA 94304.  (D,R)

65. *Alexsam, Inc. v. Evolution Benefits, Inc. et al.,* Case No. 2:07cv288-TJW (E.D. Tex.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patent 6,000,608, relating to multifunction epayment cards.  Case settled four weeks after Dr. Shamos's deposition.  Original firm: Wolf, Greenfield & Sacks, P.C.  Contact: James Foster, Esq., Hayes Messina Gilman Hayes LLC, 200 State St., 6th Floor, Boson, MA 02109.  (D,R)

66. *Motivation Innovations, LLC v. DSW Inc. et al.*, C.A. No. 08-334-SLR (D. Del.).  Served as an expert for defendant DSW, Inc. in a case alleging infringement of U.S. Patent 5,612,527, relating to a system for redeeming discount offers at point of sale.  Case has settled.  Contact: Drew Blatt, Ph.D., Esq., Wood, Heron & Evans LLP, 2700 Carew Tower 441 Vine Street Cincinnati, Ohio 45202.

67. *Discovery Communications, Inc. v, Amazon.com, Inc.*, C.A. No. 09-178-ER (D. Del.).  Served as an expert for plaintiff Discovery Communications in a case alleging infringement of plaintiff's U.S. Patents 5,986,690, 6,657,173, 7,298,851, 7,299,501, 7,336,788 and 7,401,286, relating to electronic book viewers and electronic book selection and delivery systems, and defendant-counterclaimant's U.S. Patents 6,029,141 and 7,337,133, relating to Internet-based customer referral systems.  Case has settled.  Contact: Brent P. Lorimer, Esq., Workman | Nydegger, 1000 Eagle Gate Tower, 60 East South Temple Salt Lake City, UT 84111.

68. *Amazon.com v. Discovery Communications, Inc.*, No. 2:09-cv-0681-RSL (W.D. Wash.).  Served as an expert for defendant Discovery Communications in a case alleging infringement of U.S. Patents 6,006,225, 6,169,986, relating to refinement of online search queries, and U.S. Patents 6,266,649 and 6,317,722., relating to generation of online recommendations.  Case has settled.  Contact: Brent P. Lorimer, Esq., Workman | Nydegger, 1000 Eagle Gate Tower, 60 East South Temple Salt Lake City, UT 84111.

69. *IMX, Inc. v. E-Loan, Inc. and Banco Popular North America, Inc.*, No. 09-cv-20965 (S.D. Fla.). Served as an expert for defendants in a case alleging infringement of U.S. Patent 5,995,947, relating to an interactive loan processing and mortgage trading system. Case was stayed pending reexamination. On appeal after reexamination, all but four of the asserted claims were cancelled. In CBM2015-00012, all asserted claims were found unpatentable under §101. Case has settled. Contact: Samuel A. Lewis, Esq., Feldman Gale, PA, One Biscayne Tower, 30th Floor, 2 South Biscayne Blvd., Miami, FL 33131. (D,R)

70. *Soverain Software LLC v. CDW Corp. et al.*, C.A. No. 6:07-CV-511 (E.D. Tex.). Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 5,715,314, 5,909,492, and 7,272,639, relating to methods of conducting electronic commerce. All defendants settled except Newegg, Inc. Dr. Shamos testified on validity at a jury trial in April 2010. Result: all claims valid; the '314 and '492 claims infringed, with a running royalty assessed against Newegg. After trial, the Court found the '639 patent infringed as a matter of law. In January 2013 the Federal Circuit found the asserted claims obvious as a matter of law, The Supreme Court declined review. Contact: Ognian Shentov, Esq., Jones Day, 222 E. 41st St., New York, NY 10017. (D,R,T)

71. *Netcraft Corp. v. AT&T Mobility LLC et al.*, C.A. No. 07-651-GMS (D. Del.). Served as an expert for defendants in a case alleging infringement of U.S. Patents 5,974,221, 6,351,738 and 6,411,940, relating to electronic commerce billing methods. Case settled two months after Dr. Shamos's deposition. Contact: H. Jonathan Redway, Esq., Dickinson Wright PLLC, 1875 Eye St., Washington, DC 20006. (D,R)

72. *ValueClick, Inc. v. Tacoda, Inc., AOL, LLC and Platform-A, Inc.*, Case No. 2:08-cv-04619 DSF (JCx) (C.D. Cal.). Served as an expert for defendants in a case alleging infringement of U.S. Patents 5,848,396 and 5,991,735, relating to software and methods for creating psychographic profiles of network users. Case settled in May 2010. Original firm: Orrick, Herrington & Sutliffe, LLP. Contact: Paul R. Gupta, Esq., DLA Piper, 1251 Avenue of the Americas, New York, NY 10020.

73. *SP Technologies, Inc. v. Garmin Limited et al.*, Civil Action No. 08-CV-3248 (N.D. Ill.). Served as an expert for defendant TomTom, Inc. in a case alleging infringement of U.S. Patent 6,784,873, relating to graphical keyboards on touchscreens. Defendants prevailed on summary judgment of invalidity. Contact: Brian Pandya, Esq., Wiley Rein LLP, 1776 K Street NW, Washington DC 20006. (D,R)

74. *ePlus, Inc. v. Lawson Software, Inc.,* Civil Action No. 3:09-cv-620 (E.D. Va.). Served as an expert for defendant in a case alleging infringement of U.S. Patents 6,023,683, 6,055,516 and 6,505,172, relating to electronic procurement systems. Dr. Shamos testified at a jury trial in Richmond in January 2011. Result: No infringement as to most accused configurations; infringement as to others. Past damages were precluded by the Court. On appeal. the Federal Circuit found the system claims invalid as indefinite. Contact: Daniel McDonald, Esq., Merchant & Gould PC, 3200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402. (D,R,T)

75. *Bed Bath & Beyond, Inc. v. Sears Brands*, LLC, Civil Action 08 CV 5839-SDW-MCA (D. N.J.).  Served as an expert for plaintiff in a declaratory judgment action regarding alleged infringement of U.S. Patent 5,970,474, relating to retail gift registry systems.  Case has settled.  Contact: William Mentlik, Esq., Lerner David Littenberg, Krumholz & Mentlik LLP, 600 South Avenue West, Westfield, NJ 07090. (D,R)

76. *Transauction, LLC v. eBay, Inc.*, Case No. 3:09-cv-3705-SJ (N.D. Cal.).  Served as an expert for defendant in a case alleging infringement of U.S. Patent 7,343,339, relating to guarantees in online auctions.  Case settled after expert reports were submitted.  Firm: Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067.  Contact: Peter E. Gratzinger, Esq., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071.  (R)

77. *SDG Corporation v. Patrizzi & Co. Auctioneers SA et al.*, ICDR Case No. 50 117 T 00313 09 (Int'l. Centre for Dispute Resolution).  Served as an expert for claimant in an arbitration alleging breach of contract to produce software for operating online auctions.  Dr. Shamos testified at arbitration in October 2010.  Award for SDG on all claims and denial of all of Patrizzi's counterclaims.  Contact: Bruce Fox, Esq., Obermayer Rebmann Maxwell & Hippel LLP, One Mellon Center, Suite 5240, Pittsburgh, PA 15219. (D,R,T)

78. *Walker Digital, LLC v. Capital One Services, LLC et al.*, Civil Action 1:10cv212 (JFA) (E.D. Va.).  Served as an expert for defendants in a case alleging infringement of U.S. Patents 5,970,478 and 6,374,230, relating to customizing and pricing credit card accounts.  Defendants prevailed on summary judgment of non-infringement supported by a declaration from Dr. Shamos. Affirmed by the Federal Circuit on July 28, 2011.  Contact: Charles S. Barquist, Esq., Morrison & Foerster LLP, 555 West Fifth Street, Suite 3500, Los Angeles, CA 90013.  (R)

79. *Voter Verified, Inc. v. Premier Election Solutions, Inc. et al.*, Case No. 6:09-cv-1968-19KRS (M.D. Fla.).  Served as an expert for defendants, manufacturers of voting equipment, in a case alleging infringement of U.S. Patents 6,769,613 and RE40,449, relating to paper trail verification of ballots.  The Court denied a Daubert motion to exclude testimony by Dr. Shamos.  Summary judgment of non-infringement granted July 28, 2011, affirmed by the Federal Circuit on November 5, 2012.  All claims of the '449 patent were found non-statutory by the Federal Circuit in 2018. Contact: Robert M. Evans, Jr., Esq., Stinson LLP, 7700 Forsyth Blvd. Suite 1100, St. Louis, MO 63105.  (R)

80. *Elder et al. v. National Conference of Bar Examiners*, No. C 11-00199 SI (N.D. Cal.).  Served as an expert for disabled plaintiffs in a case seeking an injunction to permit them to take the bar examination in electronic format.  Preliminary injunction granted Feb. 16, 2011.  Plaintiff took the bar exam, passed and was awarded $224,000 in attorney's fees.  Contact: Daniel F. Goldstein, Esq., Brown, Goldstein & Levy. LLP, 120 E. Baltimore St., Suit 1700, Baltimore, MD 21202. (R)

81. *Ameranth, Inc. v. Menusoft Systems Corp., et al.*, Civil Action 2-07-CV-271 TJW/CE (E.D. Tex.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 6,384,850, 6,871,325 and 6,982,733, relating to synchronous updating of restaurant menus on wireless devices.  After trial, the jury found the patents not infringed. Case settled while an

appeal to the Federal Circuit was pending.  Contact: John W. Osborne, Esq., Osborne Law LLC, 33 Habitat Lane, Cortlandt Manor, NY 10567. (D,R,T)

82. *BuyFigure.com, Inc. v. Autotrader.com et al.*, Case No. 06391 (Ct. of Common Pleas of Philadelphia County, PA, 2010).  Served as an expert for defendants in a case alleging misappropriation of trade secrets concerning a method of selling automobiles over the Internet.  Summary judgment was granted in Defendants' favor in August 2012.  Contact: Howard D. Scher, Esq., Buchanan Ingersoll & Rooney, P.C., Two Liberty Place, 50 S. 16th Street, Philadelphia, PA 19102.  (R)

83. *Soverain Software LLC v. J.C. Penney Corp., Inc. et al.*, C.A. No. 6:09-CV-274 (E.D. Tex.).  Served as an expert for plaintiff on validity issues in a case alleging infringement of U.S. Patents 5,715,314, 5,909,492, and 7,272,639, relating to methods of conducting electronic commerce.  The '639 patent was dropped before trial and all defendants settled except Avon Products and Victoria's Secret.  After trial, the jury found all claims valid and infringed, and awarded damages of $9.2 million against Victoria's Secret and $8.7 million against Avon.  Contact: Robert B. Wilson, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010. (D,R,T)

84. *AOL, LLC, et al. v. Yahoo! Inc. et al.*, No. 09 Civ. 3774 (WHP) (S.D.N.Y).  Served as an expert for declaratory judgment plaintiff AOL in a case alleging infringement of U.S. Patents 6,078,866, 6,269,361, 6,546,386, 6,907,566, 7,043,483, 7,107,264, 7,373,599, and 7,702,541, relating to online advertising placement and targeted e-commerce.  Case settled in Feb. 2011. Original firm: Orrick, Herrington & Sutliffe LLP.  Contact: William B. Tabler II, Esq., Flextronics, 6201 America Center Drive, San Jose, CA 95002.

85. *Accenture Global Services GmbH et al. v. Guidewire Software, Inc.*, Civ. No. 09-848-SLR (D. Del.).  Served as an expert for Accenture in a case alleging infringement of U.S. Patent 7,617,240, relating to automated insurance claim handling.  Case settled in Oct. 2011.  Original firm: Morrison & Foerster, LLP.  Contact: L. Scott Oliver, Esq., K&L Gates LLP, 630 Hansen Way, Palo Alto, CA 94304. (D,R)

86. *Amdocs (Israel) Limited v. Openet Telecom, Inc. et al.*, Case 1:10-cv-00910-LMB-TRJ (D. Del.).  Served as an expert for Defendant Openet in a case alleging infringement of U.S. Patents 6,836,797 and 7,631,065, relating to aggregated billing for network services.  Summary judgment of non-infringement granted in favor of Defendants in Sept. 2012.  The Court's opinion cites Dr. Shamos' testimony.  Judgment reversed on appeal in 2014, but on remand, all claims were invalidated as claiming non-statutory subject matter.   After a second appeal, the §101 ruling was reversed. Case settled during trial in 2018. Contact: Brian Pandya, Esq., Wiley Rein LLP, 1776 K Street NW, Washington DC 20006.  (D,R)

87. *Cross-Atlantic Capital Partners, Inc. v. Facebook, Inc. et al.*, Case 07-CV-2768 JP (E.D. Pa.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patent 6,519,629, relating to establishment of online communities.  Asserted claims were cancelled upon reexamination.  Case has been dismissed.  Original firm: McShea/Tecce PC.  Contact: Frederick

Tecce, Esq., Panitch Schwarze Belisario & Nadel LLP, One Commerce Square, 2005 Market Street, Suite 2200, Philadelphia, PA 19103.  (R)

88. *Chavez et al. v. Bennett et al.*, CV 2006-007000 (Ariz. Super., Maricopa Cty.).  Served as an expert for defendant Secretary of State of Arizona and county defendants in a case alleging that the electronic voting systems used in Arizona violated the rights of voters.  Case was voluntarily dismissed by plaintiffs in May 2011.  Contact: Laurence G. Tinsley, Jr., Esq, Senior General Counsel, Maricopa County Office of General Litigation Services, 301 W. Jefferson St., Phoenix, AZ 85003.

89. *Bonnette v. District of Columbia Court of Appeals and National Conference of Bar Examiners*, No. 11-cv-01053-CKK (D. D.C.).  Served as an expert for a disabled plaintiff in a case seeking a preliminary injunction permitting her to take the bar examination in electronic format.  Injunction granted.  Case subsequently settled with Plaintiff receiving $141,000 in attorneys' fees and costs.  Contact: Daniel F. Goldstein, Esq., Brown, Goldstein & Levy, LLP, 120 E. Baltimore St., Suit 1700, Baltimore, MD 21202.

90. *Jones v. National Conference of Bar Examiners et  al.*, No. 5:11-cv-00174-cr (D. Vermont).  Served as an expert for a disabled plaintiff in a case seeking an injunction permitting to take the bar examination using assistive technology.  The preliminary injunction was granted.  Plaintiff was awarded $275,000 in attorneys' fees and costs.  Contact: Daniel F. Goldstein, Esq., Brown, Goldstein & Levy, LLP, 120 E. Baltimore St., Suit 1700, Baltimore, MD 21202.  (R)

91. *AlmondNet, Inc. v. Microsoft Corporation*, Case 10-CV-298 (W.D. Wisc.).  Served as an expert for plaintiff and counterclaim defendant AlmondNet in a case alleging infringement of U.S. Patents 6,973,436, 7,072,853, 7,454,364 and 7,822,637 by Microsoft, relating to bidding for Internet ad placement, and infringement of U.S. Patent 6,632,248 by AlmondNet, relating to customization of network documents via a unique user identifier.  Microsoft obtained summary judgment of non-infringement.  Contact: Meredith Zinanni, Esq., Kirkland & Ellis LLP, 300 N. LaSalle, Chicago, IL 60604.

92. *Kelora Systems, LLC. v. Target Corporation et al.*, Case 10-CV-683 (W.D. Wisc.).  Served as an expert for defendant Mason Companies, Inc. in a case alleging infringement of U.S. Patent 6,275,821, relating to guided parametric searching in online catalogs.  Case settled as to this defendant in July 2011.  The Court granted summary judgment of invalidity and non-infringement as to the other defendants, affirmed by the Federal Circuit.  Contact: Shane A. Brunner, Esq., Merchant & Gould, 10 East Doty St., Suite 600, Madison, WI 53703.

93. *TNS Media Research, LLC et al. v. TRA Global, Inc.*, Case 1:2011-CV-4039 (SAS) (S.D. N.Y.).  Served as an expert for declaratory judgment plaintiffs in case alleging infringement of U.S. Patent 7,729,940, relating to anonymous matching of program viewing data from television set-top boxes with purchase data from other sources.  Patentee's motion for preliminary injunction was denied on Sept. 23, 2011.  Plaintiffs' motion for summary judgment of non-infringement was granted on October 3, 2013.  Reversed and remanded by the Federal

Circuit.  Contact: <u>Michael Albert, Esq.</u>, <u>Wolf, Greenfield & Sacks, P.C.</u>, 600 Atlantic Avenue, Boston, MA 02210.  (R)

94. *Accenture Global Services GmbH et al. v. Guidewire Software, Inc.*, Case 3:11-03563-JSW (N.D. Cal.); *Guidewire Software, Inc. v. Accenture PLC et al.*, Case 4:11-cv-04686-LB (N.D. Cal.).  Served as an expert for Accenture in related cases alleging infringement by Guidewire of U.S. Patents <u>6,574,636</u>, <u>7,409,355</u> and <u>7,979,382</u>, relating to systems for insurance claim handling and alleging infringement by Accenture of U.S. Patents <u>5,630,069</u>, <u>5,734,837</u>, <u>6,058,413</u> and <u>6,073,109</u>, relating to workflow management systems.  Cases settled in Oct. 2011.  Contact: <u>Colleen Garlington, Esq.</u>, <u>Kirkland & Ellis LLP</u>, 300 N. LaSalle St., Chicago, IL 60604.

95. *XPRT Ventures, LLC v. eBay, Inc. et al.*, C.A. 1:2010-cv-595 (SLR) (D. Del.).  Served as an expert for Defendants eBay and PayPal in a case alleging infringement of U.S. Patents <u>7,483,856</u>, <u>7,512,563</u>, <u>7,567,937</u>, <u>7,599,881</u>, <u>7,610,244</u>, <u>7,627,528</u>, relating to methods of paying for items purchased through electronic auctions.  Case has settled.  Contact: <u>Adrian Percer, Esq.</u>, <u>Weil, Gotshal & Manges, LLP</u>, 201 Redwood Shores Parkway, Redwood Shores, CA 94065. (D,R)

96. *Rich Media Club, LLC et al. v. Nikolai Mentchoukov et al.*, Civil No. 2:11-cv-01202-SA (D. Utah).  Served as an expert for Plaintiffs in a case alleging breach of an employment contract, unfair competition concerning systems for placing advertisements on web pages and infringement of U.S. Patent <u>7,313,590</u>, relating to communication between client and server computers without requiring a browser.  Contact: <u>Jared Richards, Esq.</u>, <u>Bennett Tueller Johnson & Deere, LLC</u>, 3165 East Millrock Drive, Suite 500, Salt Lake City, Utah  84121.  (R)

97. *Franklin Inventions LLC v. Election Systems & Software, Inc.*, Case No: 2:09-cv-377 (E.D. Tex.).  Served as an expert for Defendants in a case alleging infringement of U.S. Patents <u>6,986,999</u>, <u>7,243,846</u> and <u>7,575,164</u>, relating to voter-verifiable voting systems.  Case settled after a declaration concerning invalidity was submitted by Dr. Shamos.  Contact: <u>Robert M. Evans, Jr., Esq.</u>, <u>Stinson LLP</u>, 7700 Forsyth Blvd. Suite 1100, St. Louis, MO 63105.  (R)

98. *Illinois Computer Research, LLC v. HarperCollins Publishers, LLC, et al.*, Case No.: 10-cv-9124 (S.D.N.Y).  Served as an expert for Defendants in a case alleging infringement of U.S. Patent <u>7,111,252</u>, relating to limiting access to electronic books.  Case settled after Markman.  Contact: <u>Brian S. Rosenbloom. Esq.</u>, <u>Rothwell, Figg, Ernst & Manbeck, P.C.</u>, 607 14th Street, N.W., Suite 800, Washington, DC 20005.  (R)

99. *Realtime Data, LLC d/b/a IXO v. Morgan Stanley et al.*, Case No.: 11 Civ. 6696 (RJH), *Realtime Data, LLC d/b/a IXO v. CME Group Inc. et al.*, Case No.: 11 Civ. 6701 (RJH), *Realtime Data, LLC d/b/a IXO v. Thompson Reuters, et al.*, Case No.: 1:2011-cv-06704 (RJH) (S.D.N.Y).  Served as an expert for Plaintiff in three consolidated cases alleging infringement of U.S. Patents <u>7,417,568</u>, <u>7,714,747</u>, and <u>7,777,651</u>, relating to compression and decompression of financial data streams.  Summary judgment granted for defendants, upheld by the Federal

Circuit.  Contact: <u>Dirk D. Thomas. Esq.</u>, <u>McKool Smith</u>, 1999 K Street, N.W., Suite 600, Washington, DC 20006. (D,R,T)

100. *Mulhern Belting, Inc. v. Tele-Data Solutions, Inc.*, Civil Action L-2258-10 (Sup. Ct. Bergen Cty. NJ).  Served as an expert for defendant Vertical Communications, Inc. in a case alleging breach of contract and fraud in connection with the installation of an integrated voice-over-IP (VoIP) telecommunications system.  Case has settled.  Contact: <u>John J. Abromitis. Esq.</u>, <u>Courter, Kobert & Cohen P.C.</u>, 1001 Route 517, Hackettstown, NJ 07840.  (R)

101. *Decision Support, LLC v. Election Systems & Software, Inc.*, Case No: 3:10cv90 (W.D. N.C.).  Served as an expert for Defendants in a case alleging infringement of U.S. Patent <u>7,497,377</u>, relating to electronic voter registration and pollbook systems.  Case has settled. Contact: <u>Robert M. Evans, Jr., Esq.</u>, <u>Stinson LLP</u>, 7700 Forsyth Blvd. Suite 1100, St. Louis, MO 63105.  (R)

102. *Rovi Corporation et al. v. Amazon.com, Inc. et al.*, Case No. 11-cv-00003-RGA (D. Del.). Served as an expert for Plaintiffs in a case alleging infringement of U.S. Patents <u>5,988,078</u>, <u>6,275,268</u>, <u>6,769,128</u>, <u>7,493,643</u> and <u>7,603,690</u>, relating to customized on-screen television guides. The parties stipulated to entry of judgment of noninfringement.  Contact: <u>Ragesh L. Tangri, Esq.</u>, <u>Durie Tangri LLP.</u> 217 Leidesdorff Street, San Francisco, CA 94111.

103. *Certain Products Containing Interactive Program Guide and Parental Control Technology*, USITC Inv. No. 337-TA-820.  Served as an expert for Complainants Rovi Corporation et al. and against Vizio, Inc. et al. in an International Trade Commission proceeding involving alleged infringement of U.S. Patents <u>6,701,523</u>, <u>7,047,547</u>, <u>7,493,643</u> and <u>RE41,993</u>, relating to v-chips and electronic TV program guides.  Case has settled.  Contact: <u>Hong S. Lin, Esq.</u>, <u>Paul Hastings LLP</u>, 1117 S. California Avenue, Palo Alto, CA 94304.  (R)

104. *Rovi Corporation et al. v. Roku, Inc.*, Case No. 12-cv-2185 EJD (N.D. Cal.). Served as an expert for Plaintiffs in a case alleging infringement of U.S. Patent <u>6,898,762</u>, relating to a client/server electronic television program guide.  Voluntarily dismissed by plaintiff without prejudice.  Contact: <u>Hong S. Lin, Esq.</u>, <u>Paul Hastings LLP</u>, 1117 S. California Avenue, Palo Alto, CA 94304. , 275 Middlefield Road Suite 100, Menlo Park, CA 94025.

105. *Rovi Corporation et al. v. LG Electronics, Inc. et al.*, Case No. 12-cv-00545-SLR (D. Del.). Served as an expert for Plaintiffs in a case alleging infringement of U.S. Patents <u>6,898,762</u>, <u>7,065,709</u>, <u>7,225,455</u>, <u>7,493,643</u> and <u>8,112,776</u>, relating to electronic television program guides.  Case has settled.  Contact: <u>Hong S. Lin, Esq.</u>, <u>Paul Hastings LLP</u>, 1117 S. California Avenue, Palo Alto, CA 94304. .

106. *Rovi Corporation et al. v. Vizio, Inc.*, Case No. 12-cv-00546-SLR (D. Del.). Served as an expert for Plaintiffs in a case alleging infringement of U.S. Patents <u>6,898,762</u>, <u>7,065,709</u>, <u>7,103,996</u> and <u>8,112,776</u>, relating to electronic television program guides. Case has settled.  Contact: <u>Hong S. Lin, Esq.</u>, <u>Paul Hastings LLP</u>, 1117 S. California Avenue, Palo Alto, CA 94304.

107. *Rovi Corporation et al. v. Mitsubishi Electric Corp. et al.*, Case No. 12-cv-00547-SLR (D. Del.). Served as an expert for Plaintiffs in a case alleging infringement of U.S. Patents 6,701,523, 7,225,455 and 7,493,643, relating to electronic television program guides. Case has settled. Contact: Hong S. Lin, Esq., Paul Hastings LLP, 1117 S. California Avenue, Palo Alto, CA 94304. .

108. *Netflix, Inc. v. Rovi Corporation et al.*, Case No. 11-cv-06591-PJH (N.D. Cal.). Served as an expert for Defendants in a declaratory judgment case seeking a declaration of non-infringement of U.S. Patents 6,305,016, 6,898,762, 7,100,185, 7,103,906 and 7,945,929, relating to electronic television program guides. Summary judgment was granted declaring all asserted claims invalid under 35 U.S.C. §101, affirmed by the Federal Circuit. Contact: Hong S. Lin, Esq., Paul Hastings LLP, 1117 S. California Avenue, Palo Alto, CA 94304. (R)

109. *Certain Products Containing Interactive Program Guide and Parental Control Technology*, USITC Inv. No. 337-TA-845. Served as an expert for Complainants Rovi Corporation et al. and against Netflix, Inc. et al. in an International Trade Commission proceeding involving alleged infringement of U.S. Patents 6,701,523, 6,898,762, 7,065,709, 7,103,906, 7,225,455, 7,493,643 and 8,112,776, relating to v-chips and electronic TV program guides. On Initial Determination, all claims Dr. Shamos testified about were found valid. The import requirement was found not satisfied and no infringement was found. Contact: Hong S. Lin, Esq., Paul Hastings LLP, 1117 S. California Avenue, Palo Alto, CA 94304. (D,R,T)

110. *Yardi Systems, Inc. v. Realpage, Inc. et al.*, Case No. 2:11-cv-0090-ODW-JEM (C.D. Cal.). Served as an expert for Defendants in an action alleging misappropriation of trade secrets, unfair competition, violation of the Computer Fraud and Abuse Act, the Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code §502) and the Digital Millennium Copyright Act, arising out of provision of cloud-based property management systems. Case has settled. Contact: Susan van Keulen, Esq., O'Melveny & Myers LLP, 2765 Sand Hill Road, Menlo Park, CA 94025.

111. *Long Range Systems, LLC v. HME Wireless, Inc.*, Civil Action 3:12-cv-03659-P (N.D. Tex.). Served as an expert for plaintiff in a case alleging infringement of U.S. Patent 6,712,278, relating to a wireless system for locating a customer's table in a restaurant. Case was dismissed by plaintiff. Contact: David Cabello, Esq., Wong, Cabello, Lutsch, Rutherford & Brucculeri, LLP, 20333 SH 249, Suite 600, Houston, Texas 77070. (R)

112. *EdiSync Systems, LLC v. Centra Software, Inc. et al.*, Civil Action 03-cv-01587-WYD-MEH (D. Colo.). Served as an expert for Defendant Saba Software Inc. in a case alleging infringement of U.S. Patent 5,799,320, relating to multi-author document editing systems. Case has settled. Contact: Robert M. Abrahamsen, Esq., Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, MA 02210. (D,R)

113. *TecSec, Inc. v. IBM et al.*, Case No. 1:10-cv-115-LMB/TCB (E.D. Va.). Served as an expert for Defendant SAS Institute, Inc. in a case alleging infringement of U.S. Patents 5,369,702, 5,680,452, 5,717,755 and 5,898,781, relating to the Distributed Cryptographic Object Method, allowing embedding of encrypted objects within other objects. The Court entered judgment of non-infringement after Markman. Affirmed by the Federal Circuit at 2011-1303. Contact:

<u>Thomas R. Goots, Esq.</u>, <u>Jones Day</u>, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114-1190.

114. *Integrated Technological Systems, Inc. v. Green Dot Corporation*, Civ. Action No. 2:11-cv-01626-GMN-(GWF) (D. Nev.).  Served as an expert for Defendant in a case alleging infringement of U.S. Patent <u>7,912,786</u>, relating to an electronic payment system for transferring money between debit card accounts.  Case has settled.  Contact: <u>Benjamin J. Sodey, Esq.</u>, <u>Bryan Cave LLP</u>, One Metropolitan Square (211 North Broadway), Suite 3600, St. Louis, MO 63102-2750.

115. *Hausen et al. v. PS Illinois Trust*, Case No. 11-cv-06888 (N.D. Ill.).  Served as an expert for Plaintiff in a case concerning the reasonableness of credit card and email notification practices employed by a public storage facility prior to selling customers' stored goods.  Case has settled.  Contact: <u>Jeffrey S. Becker, Esq.</u>, <u>Swanson, Martin & Bell, LLP</u>, 330 N. Wabash, Suite 3300, Chicago, IL 60611. (D,R)

116. *Linksmart Wireless Technology, LLC v. T-Mobile, USA, Inc. et al.*, Case 2:08-cv-264-DF-CE (E.D. Texas).  Served as an expert for Defendant Choice Hotels International, Inc. in a case alleging infringement of U.S. Patent <u>6,778,118</u>, relating to rule-based redirection of Internet service requests based on a user ID.  Case has settled.  Contact: <u>Gregory R. Lyons, Esq.</u>, <u>Wiley Rein LLP</u>, 1776 K Street NW, Washington DC 20006.

117. *SAP America, Inc. v. Purple Leaf, LLC et al.*, Case No. 4:11-cv-04601-PJH (N.D. Cal.).  Served as an expert for declaratory judgment plaintiff SAP in a case alleging infringement of U.S. Patents <u>7,603,311</u> and <u>8,027,913</u>, relating to methods for conducting payment transactions over the Internet.  Case has settled.  Original firm: Simpson Thatcher & Bartless LLP.  Contact: <u>Brian McCloskey, Esq.</u>, <u>Greenberg Traurig, LLP</u>, MetLife Building, 200 Park Ave., New York, NY 10166.

118. *Ameranth, Inc. v. PAR Technology Corp., et al.*, Civil Action 2-10-CV-294 JRG-RSP (E.D. Tex.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents <u>6,384,850</u> and <u>6,871,325</u>, relating to synchronous updating of hospitality applications and data on wireless devices.  Case settled after expert reports were served.  Contact: John W. Osborne, Esq., Osborne Law LLC, 33 Habitat Lane, Cortlandt Manor, NY 10567.  (R)

119. *Digital-Vending Services International, LLC, v. The University of Phoenix, Inc. et al.*, Civil Action 2:09-cv-555-AWA-TEM (E.D. Va.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents <u>6,170,014</u>, <u>6,282,573</u> and <u>6,606,664</u>, relating to content delivery methods particularly applicable to online courseware.  Summary judgment of non-infringement granted October 4, 2013.  Contact: <u>Andrew G. DiNovo, Esq.</u>, <u>DiNovo Price Ellwanger & Hardy LLP</u>, 7000 N. MoPac Expressway, Suite 350, Austin, TX 78731. (D,R)

120. *Analytical Mechanics Associates, Inc. v. Rhythm Engineering, LLC et al.*, Case No. 4:12-cv-00008 (E.D. Va.).  Served as an expert for defendants in a case alleging breach of a contract relating to development of an image processing system to detect vehicles at intersections and

control traffic signals.  Case was resolved by binding arbitration.  Contact: <u>John K. Power, Esq.,</u> <u>Husch Blackwell LLP</u>, 4801 Main Street, Suite 1000, Kansas City, MO 64112.  (D,R,T)

121. *Protegrity Corporation v. Voltage Security, Inc.*, Case No. 3:10-CV-755 (RNC) (D. Conn.).  Served as an expert for defendant in a case alleging infringement of U.S. Patents <u>6,321,201</u>, <u>6,963,980</u> and <u>7,325,129</u>, relating to methods of encrypting databases.  Case settled during trial.  Contact: <u>Edward G. Poplawski, Esq.</u>, <u>Wilson Sonsini Goodrich & Rosati</u> <u>Professional Corporation</u>, 650 Page Mill Road, Palo Alto, CA 94304-1050. (D,R,T)

122. *Progressive Casualty Insurance Company v. Allstate Insurance Company et al.,* Case No. 1:11-cv-00082-BYP.  Served as an expert for defendant Allstate in a case alleging infringement of U.S. Patent <u>6,064,970</u>, relating to determining the cost of automobile insurance by monitoring the location and activity of a vehicle, and U.S. Patent <u>7,124,088</u>, relating to online modification and quoting of insurance policies.  Case has settled as to Allstate.  Contact: <u>James</u> <u>Medek, Esq.</u>, <u>Kirkland & Ellis LLP</u>, 300 North LaSalle Chicago, IL 60654.

123. *Symantec Corporation v. Acronis, Inc. et al.*, Case No. 3:11-cv-05310 EMC (N.D. Cal.).  Served as an expert for plaintiff and infringement counterclaim defendant Symantec in a case alleging infringement of U.S. Patents <u>6,615,365</u>, <u>7,047,380</u>, <u>7,246,211</u> and <u>7,266,655</u>, relating to online disk backup, imaging and recovery systems, U.S. Patent <u>7,093,086</u>, relating to backup of virtual machines, U.S. Patent <u>7,322,010</u>, relating to graphic views of computer configurations and U.S. Patent <u>7,565,517</u>, relating to retargeting hardware configuration images to new hardware.  Case has settled.  Contact: <u>Jennifer Kash, Esq.</u>, <u>Quinn Emanuel Urquhart &</u> <u>Sullivan LLP,</u> 50 California Street, 22nd Floor, San Francisco, California 94111. (D,R)

124. *Secure Axcess, LLC v. Bank of America Corp. et al.*, Civil Action No. 6:10-cv-670-LED (E.D. Tex.).  Served as an expert for defendants Zions First National Bank and Amegy Bank N.A. in a case alleging infringement of U.S. Patent <u>7,631,191</u>, relating to authenticating web pages.  Case has settled as to those defendants.  Contact: <u>Brian Pandya, Esq.</u>, <u>Wiley Rein LLP</u>, 1776 K Street NW, Washington DC 20006.

125. *The MoneySuite Company v. Insurance Answer Center, LLC et al.,* Case No. SACV 11-1847-AG (C.D. Cal.).  Served as an expert for defendants, including The Allstate Corporation, in a case alleging infringement of U.S. Patent <u>6,684,189</u>, relating to online quoting of insurance policy rates.  Case has settled.  Contact: <u>Garret A. Leach, Esq.</u>, <u>Kirkland & Ellis LLP</u>, 300 N. LaSalle, Chicago. IL 60654. (D,R)

126. *e-LYNXX Corporation v. Innerworkings, Inc. et al.*, CA 1:10-cv-02535-CCC (M.D. Pa.).  Served as an expert for defendants, including R.R. Donnelley & Sons Company, in a case alleging infringement of U.S. Patents <u>7,451,106</u> and <u>7,788,143</u>, relating to electronic procurement of customized goods and services.  The Court granted summary judgment of non-infringement in July 2013.  Contact: <u>James R. Nuttall, Esq.</u>, <u>Steptoe & Johnson</u>, LLP, 115 South LaSalle Street, Suite 3100, Chicago, IL 60603.  (R)

127. *Vasudevan Software, Inc. v. Microstrategy, Inc.*, Case No. 3:11-cv-06637-RS-PSG (N.D. Cal.).  Served as an expert for defendant in a case alleging infringement of U.S. Patents

6,877,006, 7,167,864, 7,720,861 and 8,082,268, relating to methods of online analytical processing (OLAP). The patents were found invalid on summary judgment. On appeal, the Federal Circuit upheld the Court's claim constructions and judgment of non-infringement. Declaratory judgment counterclaims voluntarily dismissed. Contact: Kevin A. Smith, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, 50 California Street, San Francisco, CA 94111. (R)

128. *Digonex Technologies, Inc. v. Qcue, Inc.*, Case No. 1:12-cv-00801-SS (W.D. Texas). Served as an expert for plaintiff in a case alleging infringement of U.S Patents 8,095,424 and 8,112,303, relating to computerized methods for dynamic pricing. In a Markman order, the Court found the claims indefinite. Contact: David D. Schumann, Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA 94104. (D,R,T)

129. *Peter Mayer Publishers, Inc. v. Daria Shilovskaya et al.*, Case No. 12-CV-8867-PG (S.D. N.Y.). Served as an expert for declaratory judgment defendants in a case of first impression to determine whether a reliance party under 17 U.S.C. §104A(d)(3)(B) may issue an ebook version of a work to which copyright has been restored. The Court ruled that ebooks are not transformative and hence not derivative works. Contact: Timothy O'Donnell, Esq., 40 Exchange Place, 19th Fl., New York, NY 10005. (R)

130. *SIPCO, LLC v. Control4 Corporation et al.*, CA 1:11-cv-00612-JEC (N.D. Georgia). Served as an expert for defendants Schneider Electric Buildings Americas, Inc. and Schneider Electric USA, Inc. in a case alleging infringement of U.S. Patents 7,103,511, 7,468,661 and 7,697,492, relating to systems for monitoring remote sensors and controlling remote devices. Case has settled. Contact: Benjamin Bradford, Esq., Jenner & Block LLP, 353 N. Clark St., Chicago, IL 60654-3456.

131. *Unified Messaging Solutions LLC v. Google, Inc. et al.*, Case 1:12-cv-06286 (N.D. Ill.). Served as an expert for defendant eBay, Inc. in a case alleging infringement of U.S. Patents 6,857,074, 7,836,141, 7,895,306, 7,895,313, and 7,934,148, relating to message storage and delivery systems. Case has settled as to defendant eBay, Inc. Contact: Yar R. Chaikovsky, Esq., McDermott Will & Emery LLP, 275 Middlefield Road, Suite 100, Menlo Park, CA 94025.

132. *Credit Card Fraud Control Corporation v. PayPal, Inc.*, Case No. 9:12-CV-81143 (S.D. Fla.). Served as an expert for defendant PayPal in a case alleging infringement of U.S. Patent 8,229,844, relating to reduction of fraud in online transactions. Plaintiff dismissed the case with prejudice based on prior art located by PayPal. Contact: Adrian Percer, Esq., Weil, Gotshal & Manges, LLP, 201 Redwood Shores Parkway, Redwood Shores, CA 94065.

133. *Comscore, Inc. v. Integral Ad Science, Inc.*, Civil Action 2:12-cv-00351-HCM-DEM (E.D. Va.). Served as an expert for defendant Integral in a case alleging infringement of U.S. Patents 6,108,637, 6,115,680, 6,327,619, 6,418,470, 7,386,473, 7,613,635, 7,716,326 and 7,756,974, relating to determining whether a portion of a displayed page is visible to a user. Case has settled as to defendant Integral. Contact: Robert M. Abrahamsen, Esq., Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, MA 02210.

134. *Ariba, Inc. v. Coupa Software, Inc.*, Case No. 3:12-cv-01484 JST (N.D. Cal.).  Served as an expert for plaintiff Ariba in a case alleging infringement of U.S. Patent 7,117,165, relating to electronic methods for approving requisitions and generating purchase orders.  Case has settled.  Contact: Amy Van Zant, Esq., Covington & Burling LLP, 333 Twin Dolphin Drive, Redwood Shores, CA 94605-1418.  (D,R)

135. *Lowe v. National Board for Respiratory Care, Inc. et al.*, Docket 1:12-cv-00345-DBH (D. Maine).  Served as an expert for disabled plaintiff in a case seeking an injunction permitting to take a professional qualification examination using assistive computer technology.  Case settled shortly after Dr. Shamos's declaration in support of preliminary injunction was filed.  Contact: Kristin Aiello, Esq., Managing Attorney, Disability Rights Center, 24 Stone St., Augusta, ME 04338.  (R)

136. *Checkfree Corporation et al. v. Metavante Corporation et al.*, Case No. 3:12-cv-15-J-34JBT (M.D. Fla.)  Served as an expert for defendant Metavante in a case alleging infringement of U.S. Patents 7,383,223, 7,792,749, 7,853,524 and 7,966,311, relating to transferring funds in electronic payment networks.  Defendants have counterclaimed, alleging infringement of U.S. Patents. 7,370,014, 7,734,543 and 7,958,049, relating to electronic invoice presentment.  All claims of all four patents asserted by Plaintiff have been found invalid by the Patent Office.  Case was stayed pending appeal, followed by voluntary dismissal by Plaintiff. Contact: Jeffrey A. Berkowitz, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Two Freedom Square, 11955 Freedom Drive, Reston, VA 20190-5675. (D,R)

137. *PPS Data, LLC v. Passport Health Communications, Inc.*, Case No. 2:12-cv-00438-DN (C.D. Utah).  Served as an expert for defendant Passport in a case alleging infringement of U.S. Patents 6,341,265 and 7,194,416, relating to preparing and correcting health insurance claim forms.  Case settled shortly after Dr. Shamos's claim construction report was served.  Contact: Edward J. Pardon, Esq., Merchant & Gould, 10 East Doty Street, Suite 600, Madison, WI 53703.  (R)

138. *Lodsys, LLC v. Combay, Inc. et al.*, Civil Action 2:11-cv-272 (E.D. Texas).  Served as an expert for defendant Symantec Corporation in a case alleging infringement of U.S. Patents 7,222,078 and 7,620,565, relating to gathering feedback from products through a user interface.  Case settled two weeks after Dr. Shamos's deposition.  Contact: David D. Schumann, Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA 94104. (D,R)

139. *Long Range Systems, LLC v. HME Wireless, Inc.*, Civil Action 3:12-cv-04162M (N.D. Tex.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 6,542,751 and 7,062,281, relating to methods of paging customers at a restaurant.  Case was dismissed by plaintiff after a tentative Markman ruling. Contact: David Cabello, Esq., Wong, Cabello, Lutsch, Rutherford & Brucculeri, LLP, 20333 SH 249, Suite 600, Houston, Texas 77070.  (R)

140. *Symantec Corporation v. Veeam Software Corporation*, Case No. 3:12-cv-0700-SI (N.D. Cal.).  Served as an expert for plaintiff Symantec in a case alleging infringement of U.S. Patents 6,931,558, relating to methods for restoring network devices after failure, 7,024,527, relating to methods of backing up disk while applications are active, 7,093,086, relating to methods for

backing up virtual machines, 7,254,682, relating to snapshot disk backup, 7,480,822, relating to restoring running states of computing systems, 7,831,861, relating to restoring application data and 8,117,168, relating to virtual disk backups.  Case is stayed pending PTAB review.  All asserted claims have been found unpatentable. On appeal to the Federal Circuit, the PTAB's claim construction and obviousness determinations were upheld, case remanded to allow amendment of claims.  Case subsequently settled. Contact: Jennifer Kash, Esq., Quinn Emanuel Urquhart & Sullivan LLP, 50 California Street, 22nd Floor, San Francisco, California 94111.  (R)

141. *EMG Technology, LLC v. Green Mountain Coffee Roasters and Keurig*, Inc., Case No. 6:13-cv-144 (E.D. Texas) (Lead case: 6:13-cv-134).  Served as an expert for Defendants in a case alleging infringement of U.S. Patent 7,441,196, relating to a method of navigating a Web page linked to a sister web site.  Case has settled.  Contact: Michael A. Albert, Esq., Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, MA 02210.

142. *eDirect Publishing, Inc. v. Live Career, Ltd., et al.*, Case No. 12-CV-1123-JAH-JMA (S.D. Cal.).  Served as an expert for plaintiff eDirect in a case alleging infringement of U.S. Patents 6,363,376 and 6,757,674, relating to automatic submission of information to career websites.  Case has settled.  Contact: Ryan Baker, Esq., Baker Marquart LLP, 10990 Wilshire Blvd., Los Angeles, CA 90024. (D,R)

143. *Motivation Innovations, LLC v. Ulta Salon Cosmetics and Fragrance, Inc. et al.*, C.A. No. 11-615-SLR-MPT (D. Del.).  Served as an expert for defendant Ulta in a case alleging infringement of U.S. Patent 5,612,527, relating to a system for redeeming discount offers at point of sale.  The Court granted summary judgment of noninfringement.  Contact: Julie Heaney, Esq., Morris, Nichols, Arsht & Tunnell, LLP, 1201 North Market Street, Wilmington, DE 19899-1347. (D,R)

144. *Computer Software Protection, LLC v. Autodesk, Inc.*, C.A. No. 12-452-SLR (D. Del.).  Served as an expert for Defendant Autodesk in a case alleging infringement of U.S. Patent 6,460,140, relating to unlocking the use of software remotely using validation number, a registration key and a license key.  Case has settled.  Contact: Cheryl T. Burgess, Esq., Knobbe, Martens, Olson & Bear, L.L.P., 2040 Main Street, 14th Floor Irvine, CA 92614.  (R)

145. *Voltage Security, Inc.* v. *Protegrity Corporation*, CBM2014-0024, Patent Trial and Appeal Board.  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent 8,402,281, relating to methods of encrypting databases.  Matter has settled.  Contact: Matthew Argenti, Esq., Wilson Sonsini Goodrich & Rosati Professional Corporation, 650 Page Mill Road, Palo Alto, CA 94304-1050.  (R)

146. *United Video Properties, Inc. et al. v. Haier Group Corp. et al.*, C.A. No. 11-1140-KAJ (D.Del.).  Served as an expert for Plaintiffs in a case alleging infringement of U.S. Patents 6,701,523 and 7,047,547, relating to television parental control technology.  Case has settled.  Contact: Hong S. Lin, Esq., Paul Hastings LLP, 1117 S. California Avenue, Palo Alto, CA 94304. (D,R)

147. *Droplets, Inc. v. E\*TRADE Financial Corporation et al.*, Case No.: 1:12-CV-02326-CM (S.D.N.Y.).  Served as an expert for defendants in an action alleging infringement of U.S. Patents 6,687,745 and 7,502,838, and 8,402,115, relating to delivering interactive links for presenting applications on a client computer.  Defendants prevailed on a summary judgment of non-infringement on the '745 Patent.  All claims of the '115 and '838 Patents were found invalid after IPRs, affirmed by the Federal Circuit in 2016-2504 and 2016-2602.  Contact: Michael Levin, Esq., Wilson Sonsini Goodrich & Rosati Professional Corporation, 650 Page Mill Road, Palo Alto, CA 94304-1050.  (D,R,T)

148. *Symantec Corporation v. Acronis, Inc. et al.*, Case No. 3:11-cv-05331 JST (N.D. Cal.).  Served as an expert for plaintiff and infringement counterclaim defendant Symantec in a case alleging infringement by Symantec of U.S. Patents  7,366,859 and 7,831,789, relating to incremental disk backup, and infringement by Acronis of U.S. Patent 7,024,527, and 7,996,708, relating to disk backup and restore, U.S. Patent 7,454,592, and U.S. Patent 7,941,459, relating to single instance disk storage, and U.S. Patent 7,680,957, relating to modifiable representations of computer configurations.  Case has settled.  Contact: Jennifer Kash, Esq., Quinn Emanuel Urquhart & Sullivan LLP, 50 California Street, 22nd Floor, San Francisco, California 94111. (D,R)

149. *Jazz Pharmaceuticals, Inc. v. Roxane Laboratories, Inc.*, CA 2:10-cv-06108-ES-MCA (D. N.J.).  Served as an expert for defendant in a case alleging infringement of U.S. Patents 7,668,730, 7,765,106, 7,765,107, 7,797,171 and 7,895,059, relating to methods of controlling the distribution of sensitive drugs.  Case has settled.  Contact: Alan B. Clement. Esq., Locke Lord LLP, Brookfield Place, 200 Vesey Street, 20th Floor, New York, NY 10281-2101. (R)

150. *TuitionFund, LLC v. SunTrust Banks, Inc. et al.*, CA 3:11-cv-00069 (M.D. Tenn.).  Served as an expert for defendants Cardlytics, Inc., Regions Financial Corp., and Regions Bank in a case alleging infringement of U.S. Patents 7,499,872, 7,653,572 and 7,899,704, relating to methods for awarding rebates for credit and debit card purchases.  Case settled.  Contact: Michael S. Connor, Esq., Alston & Bird LLP, Bank of America Plaza, 101 South Tryon Street, Suite 4000, Charlotte, NC 28280-4000. (D,R)

151. *Pollin Patent Licensing, LLC et al. v. AT&T Corporation et al.*, Case No. 1:11-cv-07855 (N.D. Ill.).  Served as an expert for defendants in a case alleging infringement of U.S. Patent 7,117,171, relating to verifying financial institution identification in electronic payment systems.  Case has settled.  Contact: James L. Howard, Esq., Kilpatrick Townsend & Stockton LLP, 1001 West Fourth Street Winston-Salem, NC, 27101.

152.  *PPS Data, LLC v. Bluepoint Solutions, Inc.*, Case 2:13-cv-01351 (D. Nev.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 7,181,430, 7,216,106, 7,440,924, 7,624,071 and 8,126,809, relating to methods for processing check images in electronic payment systems.  Case has settled. Contact: Anthony H. Son, Esq., Maddox Edwards, PLLC, 1900 K Street NW, Suite 725, Washington, DC 20006.  (Original firm: Wiley Rein).

153. *e-LYNXX Corporation v. Ariba, Inc.*, CA 1:12-cv-01771-CCC (M.D. Pa.). Served as an expert for defendant Ariba, in a case alleging infringement of U.S. Patents 7,451,106, 7,788,143 and 8,209,227, relating to electronic procurement of customized goods and services. Case has settled. Contact: Amy Van Zant, Esq., Covington & Burling LLP, 333 Twin Dolphin Drive, Redwood Shores, CA 94605-1418.

154. *EMG Technology, LLC v. AutoZone, Inc.*, C.A. 6:13-cv-134 (E.D. Tex.) (Lead case: 6:12-cv-543). Served as an expert for defendant AutoZone in a case alleging infringement of U.S. Patent 7,441,196, relating to transcoding web sites into mobile sites. Defendant obtained summary judgment of non-infringement. Contact: Terry L. Clark, Esq., Bass, Berry & Sims PLC, 1201 Pennsylvania Ave. N.W., Washington, D.C. 20004. (R)

155. *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.). Served as an expert for litigants BP Exploration & Production Inc. et al. on an issue relating to identification of an anonymous person through Internet searching. Contact: Mark. J. Nomellini, Esq., Kirkland & Ellis LLP, 300 N. LaSalle, Chicago, IL 60654. (R)

156. *EC Data Systems, Inc., v. J2 Global, Inc. et al.*, CV 12-07544 (C.D. Cal.). Served as an expert for declaratory judgment plaintiff EC Data Systems in a case alleging infringement of U.S. Patents 6,208,638 and 6,350,066, 6,597,688 and 7,020,132, relating to electronic distribution of faxes through email. Case has settled. Contact: Matthew Spohn, Esq. Norton Rose Fulbright LLP., Tabor Center, 1200 17th Street, Suite 1000, Denver, Colorado 80202.

157. *MoneyCat, Ltd. v. PayPal, Inc.*, CA 1:13-cv-01358-RGA (D. Del.), now 3:14-cv-02490-PSG (N.D. Cal.). Served as an expert for defendant PayPal in a case alleging infringement of U.S. Patents 7,590,602, 8,195,578 and 8,051,011, relating to issuance and transfer of electronic currency. On CBM review, the PTAB found all asserted claims of all three patents invalid, affirmed by the Federal Circuit. Case was subsequently dismissed. Contact: Adrian Percer, Esq., Weil, Gotshal & Manges, LLP, 201 Redwood Shores Parkway, Redwood Shores, CA 94065. (D,R)

158. *GSI Commerce Solutions, Inc.* v. *Clear With Computers, Inc.*, Patent Trial and Appeal Board Case CBM2013-00055. Served as an expert for petitioner, an eBay company, in a covered business method review of U.S. Patent 8,266,015, relating to methods of presenting lists of product customization options. Review was instituted but the CBM was terminated by settlement. Contact: Scott McKeown, Esq., Ropes & Gray, L.L.P., 2099 Pennsylvania Avenue, Washington, DC 20006-6807. (D,R)

159. *Fidelity National Information Services, Inc. v. Cashedge, Inc. and Checkfree Corporation*, Patent Trial and Appeal Board Cases CBM2013-00028, 30, 31 and 32. Served as an expert for petitioner in covered business method reviews of of U.S. Patents 7,383,223, 7,792,749, 7,853,524 and 7,966,311, relating to transferring funds in electronic payment networks. Reviews have been instituted. All claims of the four patents were invalidated by the PTAB in December 2014. Appeal was taken to the Federal Circuit but terminated by agreement.

Contact: Jeffrey A. Berkowitz, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Two Freedom Square, 11955 Freedom Drive, Reston, VA 20190-5675. (D,R)

160. *Boku, Inc. v. Xilidev, Inc.*, Patent Trial and Appeal Board Cases CBM2014-00140 and CBM2014-00148. Served as an expert for petitioner in two covered business method reviews of U.S. Patent 7,273,168, relating to authorizing payments via handheld devices. Result: claims 1-18 and 20-23 found invalid. Claim 19 cancelled. Contact: Frank Pietrantonio, Esq., Cooley LLP, One Freedom Square, 11951 Freedom Drive, Reston, VA 20190. (R)

161. *Protegrity Corporation v. Phoenix Payment Systems, Inc. d/b/a Electronic Payment Exchange*, Case No. 3:13-CV-1386-VKB (D. Conn.). Served as an expert for defendant in a case alleging infringement of U.S. Patents 6,321,201 and 8,402,281, relating to methods of encrypting databases. Case has settled. Contact: David J. Wolfsohn, Esq., Duane Morris LLP, 20 South 17th Street, Philadelphia, PA 19103. (R)

162. *Ameranth, Inc. v. Genesis Gaming Solutions, Inc. et al.*, Case No. SACV 8:11-0189-AG (C.D. Cal.). Served as an expert for Ameranth in a case alleging infringement of U.S. Patents 7,431,650, 7,878,909 and 8,393,969, relating to systems for managing casino operations, particularly in poker rooms. Case has settled. Contact: John W. Osborne, Esq., Osborne Law LLC, 33 Habitat Lane, Cortlandt Manor, NY 10567. (D,R)

163. *Telebuyer, LLC v. Amazon.com, Inc.*, Case No. 2:13-cv-01677-BJR (W.D.Wash.). Served as an expert for Telebuyer in a case alleging infringement by Amazon.com of U.S. Patents 6,323,894, 7,835,508, 7,835,509, 7,839,984, 8,059,796, 8,098,272, and 8,315,364, relating to systems for interfacing buyers and sellers via communication networks. Summary judgment was entered declaring all asserted claims invalid under 35 U.S. §101. Contact: Brian Berliner, Esq., O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071. (D,R)

164. *GlobeRanger Corporation v. Software AG, et al.*, Civil Action No. 3:11-CV-403-B (N.D. Texas). Served as an expert for GlobeRanger in a case alleging misappropriation of trade secrets and civil conspiracy involving radio-frequency identification (RFID) software and business processes. Result: jury verdict of $15 million in favor of GlobeRanger, upheld on appeal to the Fifth Circuit. Contact: Ophelia Camiña, Esq., Susman Godfrey, L.L.P., 901 Main St., Suite 5100, Dallas, TX 75202-3775. (D,R)

165. *In re: ProvideRx of Grapevine, LLC and CERx Pharmacy Partners, LP v. Provider Meds, LP, et al.*, Adv. Proc. No. 13-03015-BJH (Bankr. N.D. Tex). Served as an expert for creditor CERx in a Chapter 7 bankruptcy case involving security interests in software for remote dispensing pharmacies and whether certain licenses constitute encumbrances under Texas law. Case has settled. Contact: Bill Whitehill, Esq., Gardere Wynne Sewell LLP, 1601 Elm St., Dallas, TX 75201. (R)

166. *Square, Inc. v. Protegrity Corporation*, CBM2014-00182, Patent Trial and Appeal Board (2014). Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent 8,402,281, relating to methods of encrypting databases. Result: all claims invalid

under §101.  Contact: Matthew Argenti, Esq., Wilson Sonsini Goodrich & Rosati Professional Corporation, 650 Page Mill Road, Palo Alto, CA 94304-1050.  (D,R)

167. *VigLink, Inc.  v. Linkgine, Inc.*,  Patent Trial and Appeal Board (2014).  Served as an expert for petitioner in covered business method petitions 2014-00184 and 2014-00185 seeking review of U.S. Patents 7,818,214 and 8,027,883, relating to modifying affiliate links on webpages. Result: all challenged claims found invalid.  Affirmed by the Federal Circuit at 2016-2087, 2016-2088. Contact: Robert C. Hilton, Esq., McGuireWoods LLP, 2000 McKinney Ave., Suite 1400, Dallas, TX 75201.  (R)

168. *Juhline et al. v. Ben Bridge Jewelers Inc. et al.*, Case 11-cv-2096-GPC-NLS (S.D. Cal.).  Served as an expert for defendant Ben Bridge in a class action alleging violation of California Civil Code §1747.8, relating to the collection of personal identification information in connection with credit card transactions.  Case has settled.  Contact: Rosemarie T. Ring. Esq., Munger, Tolles & Olson LLP, 560 Mission St., 27th Fl., San Francisco, CA 94105.

169. *Catch Curve, Inc. v. Integrated Global Concepts, Inc. v. j2 Global Communications, Inc. et al.*, Case 1:06-CV-02199 (N.D. Ga.).  Served as an expert for defendant and counterclaim plaintiff Integrated Global Concepts in a case alleging infringement of U.S. Patents 4,994,926, 5,291,302, 5,459,584, 6,643,034, 6,785,021, 7,365,884 and 7,525,691, relating to store-and-forward fax systems.  Infringement claims were dropped.  The issue at bar is whether j2 Global had an objective basis to believe that Integrated Global was infringing.  Case has settled.  Contact: James Heiser, Esq., Chapman and Cutler, LLP, 111 West Monroe St., Chicago, IL 60603.  (D,R)

170. *Phoenix Payment Systems, Inc.  v. Protegrity Corporation*,  CBM2014-00121, Patent Trial and Appeal Board (2014).  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent 8,402,281, relating to methods of encrypting databases. Underlying litigation settled before CBM could be instituted.  Contact: Contact: David J. Wolfsohn, Esq., Duane Morris LLP, 20 South 17th Street, Philadelphia, PA 19103.  (R)

171. *Informatica Corporation v. Protegrity Corporation*,  CBM2015-00010, CBM2015-00021, Patent Trial and Appeal Board (2014).  Served as an expert for petitioner in two covered business method petitions seeking review of U.S. Patents 8,402,281 and 6,321,201, relating to methods of encrypting databases.  Result: all claims found invalid under 35 U.S.C. §101.  The Board's opinions in the '201 case and the '281 case comment favorably on Dr. Shamos's testimony. Contact: Mark S. Kaufman, Esq., Reed Smith LLP, 1301 K Street N.W., Washington, DC 20005.  (D,R)

172. *Qualtrics, LLC  v. OpinionLab, Inc.*,  IPR2014-00314, IPR2014-00356, IPR2014-00366, IPR2014-00406, IPR2014-00420, and IPR2014-00421, Patent Trial and Appeal Board (2014).  Served as an expert for patent owner OpinionLab, Inc. in *inter partes* reviews of U.S. Patents 6,421,724, 6,606,581, 8,041,805, 7,085,820, 7,370,285 and 8,024,668, relating to methods of soliciting page-specific feedback regarding web pages.  All challenged claims have

been found invalid except as to the '805 patent.  '724 was not instituted. Contact: Chris Kennerly, Esq., Paul Hastings LLP, 1117 S. California Ave., Palo Alto, CA 94304.  (D,R)

173. *Callwave Communications, LLC v. AT&T Mobility, LLC et al.*, Case 1:12-cv-01788-RGA (D. Del.).  Served as an expert for defendant Research In Motion, Corp. in a case alleging infringement of U.S. Patent 7,907,933, relating to methods of billing for purchases by placing a call to a pay-per-call service.  Plaintiff stipulated to non-infringement for appeal purposes, but the Federal Circuit upheld on January 10, 2017.  Contact: John V. Gorman, Esq., Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, PA 19103.

174. *SoftVault Systems, Inc. v. Dassault Systèmes Solidworks Corporation*, Case 5:14-cv-03221-LHK (N.D. Cal.).  Served as an expert for defendant Solidworks. in a case alleging infringement of U.S. Patents 6,249,868 and 6,594,765 relating to embedded agents for protecting computer systems against theft.  Case has settled.  Contact: Cheryl T. Burgess, Esq., Knobbe, Martens, Olson & Bear, L.L.P., 2040 Main Street, 14th Floor Irvine, CA 92614.

175.  *PPS Data, LLC v. TransCentra, Inc.*, Case 13-359-LPS (D. Del.).  Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 7,181,430, 7,440,924, 7,624,071 and 8,126,809, relating to methods for processing check images in electronic payment systems.  Case has settled.  Contact: Anthony H. Son, Esq., Maddox Edwards, PLLC, 1900 K Street NW, Suite 725, Washington, DC 20006.  (Original firm: Wiley Rein).

176. *Clear With Computers, Inc. v. Spanx, Inc.*, C.A. 6:12-cv-950-LED (E.D. Texas).  Served as an expert for defendant, an eBay company, in a case alleging infringement of U.S. Patent 8,266,015, relating to methods of presenting lists of product customization options.  Judgment on the pleadings was granted, invalidating the asserted claims under 35 U.S.C. §101.  Case was appealed to the Federal Circuit, but the appeal with withdrawn. Case has settled.  Contact: Scott McKeown, Esq., Oblon, Spivak, McClelland, Maier & Neustadt, L.L.P., 1940 Duke Street Underpass, Alexandria, VA 22314.

177. *Integrated Global Concepts, Inc. v. Advanced Messaging Technologies, Inc.*,  IPR2014-01027 and IPR2014-01028 Patent Trial and Appeal Board (2014).  Served as an expert for petitioner seeking *inter partes* review of U.S. Patents 6,020,980, relating to delivering faxes through electronic mail.  The PTAB declined to institute review.  Contact: Robert J. Schneider, Esq., Taft Stettinius & Hollister LLP, 111 East Wacker, Suite 2800, Chicago, IL 60601.  (R)

178. *athenahealth, Inc. v. AdvancedMD Software, Inc.*, Civil Action 1:11-cv-11260-GAO (D. Mass.).  Served as an expert for plaintiff athenahealth, Inc. in a case alleging infringement of U.S. Patents 7,617,116 and 7,720,701, relating to detecting errors in medical insurance claim submissions and automated configuration of medical practice management systems.  Case has settled.  Contact: Robert M. Abrahamsen, Esq., Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, MA 02210.

179. *CEATS, Inc. v. Orbitz Worldwide, Inc.*, Civil Action 2:13-cv-01385-MMD-PAL (D. Nev.).  Served as an expert for plaintiff  in a case alleging infringement of U.S. Patents 7,548,667, 7,640,178, 7,660,727, 8,219,448, 8,229,774 and 8,244,561, relating to systems and

methods for managing airline seat reservations.  Case has settled.  Contact: <u>Jared Bunker, Esq.</u>, <u>Knobbe, Martens, Olson & Bear, L.L.P.</u>, 2040 Main Street, 14th Floor Irvine, CA 92614.

180. *Audatex North America, Inc. v. Mitchell International, Inc.*, Civil Action 3:13-cv-01523-BEN (BLM) (S.D. Cal.).  Served as an expert for plaintiff  in a case alleging infringement of U.S. Patents <u>7,912,740</u>, <u>8,200,513</u> and <u>8,468,038</u>, relating to systems and methods for determining the valuation of a damaged vehicle for insurance purposes.  Claims found invalid after CBM review, affirmed by the Federal Circuit.  Contact: <u>David McPhie, Esq.</u>, <u>Irell & Manella LLP</u>,  840 Newport Center Dr., Newport Beach, CA 29660. (R)

181. *Skimlinks, Inc.  et al. v. Linkgine, Inc.*,  Patent Trial and Appeal Board (2015).  Served as an expert for petitioners in covered business method petitions 2015-00086 and 2015-00087 seeking review of U.S. Patents <u>7,818,214</u> and <u>8,027,883</u>, relating to modifying affiliate links on webpages.  Result: all claims found invalid, affirmed by the Federal Circuit. Contact: <u>Richard F. Martinelli. Esq.</u>, <u>Orrick, Herrington & Sutcliffe LLP</u>, 51 West 52nd St., New York, NY 10019.  (R)

182. *Advanced Auctions, LLC. v. eBay, Inc.*, Case 12-cv-1612-BEN (JLB) (S.D. Cal.).  Served as an expert for defendant eBay in case alleging infringement of U.S. Patent <u>8,266,000</u>, relating to methods of conducting Internet auctions.  Defendant obtained judgment of invalidity on the pleadings under 35 U.S.C. §101.  Contact: <u>Adrian Percer, Esq.</u>, <u>Weil, Gotshal & Manges, LLP</u>, 201 Redwood Shores Parkway, Redwood Shores, CA 94065.

183. *MaxMind, Inc. et al. v. Fraud Control Systems.com Corporation*,  CBM2015-00094, Patent Trial and Appeal Board (2014).  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent <u>8,630,942</u>, relating to methods of determining whether a payment transaction may be fraudulent based on IP addresses.  Review was instituted on §101 grounds and Patent Owner requested adverse judgment. Contact: <u>Anthony H. Son, Esq.</u>, <u>Maddox Edwards, PLLC</u>, 1900 K Street NW, Suite 725, Washington, DC 20006.  (R)

184. *Square, Inc.  v. Unwired Planet, LLC*,  CBM2014-00156, Patent Trial and Appeal Board (2014).  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent <u>7,711,100</u>, relating to conducting point-of-sale transactions based on the location of a wireless device.  Challenged claims found invalid. Contact: <u>Sasha G. Rao, Esq.</u>, <u>Maynard Cooper and Gale PC</u>, 275 Battery St., San Francisco, CA 94111 (D,R)

185. *Unified Patents, Inc.  v. Finnavations LLC*,  IPR2015-01209, Patent Trial and Appeal Board (2015).  Served as an expert for petitioner in an inter partes review of U.S. Patent <u>8,132,720</u>, relating to verifying online transaction data through a graphical user interface.  Status: not instituted. Contact: <u>Paul C. Haughey, Esq.</u>, <u>Kilpatrick Townsend & Stockton LLP</u>, Eighth Floor, Two Embarcadero Center San Francisco, CA 94111 (R)

186. *Hoskin Hogan et al. v. BP West Coast Products LLC et al.*, Case BC 460880 (Super. Ct. Los Angeles Cty. CA, 2011).  Served as an expert for defendant Retalix Ltd., alleging negligence in the development and testing of software for processing point-of-sale transactions.  Summary

judgment granted in favor of Retalix.  Contact: <u>Richard H. Zelichov, Esq.</u>, <u>Katten Muchin Rosenman LLP</u>, 2029 Century Park East, Suite 2600, Los Angeles, CA 90067-3012. (D,R)

187. *In re U.S. Patent Application 12/912,726* (USPTO).  Served as an expert for applicant AlmondNet, Inc. in an application for a patent relating to distributing digital advertising based on a recipient profile. PTAB affirmed the Examiner's § 101 rejection. Contact: <u>Louis J. Hoffman, Esq.</u>, <u>Hoffman Patent Firm</u>.  (R)

188. *Wickfire, LLC v. TriMax Media, Inc. et al.*, C.A. 1:14-CV-34 (W.D. Tex).  Served as an expert for defendants in a case alleging click fraud in Internet advertising.  Jury verdict for Plaintiff, now on appeal to the Fifth Circuit. Contact: <u>Barry M. Golden, Esq.</u>, <u>Miller, Egan, Molter & Nelson LLP</u>, 2911 Turtle Creek Blvd., Suite 1100 Dallas, TX 75219. (D,R,T)

189. *Square, Inc.  v. Unwired Planet, LLC*,  CBM2015-00148, Patent Trial and Appeal Board.  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent <u>7,711,100</u>, relating to conducting point-of-sale transactions based on the location of a wireless device.  Not instituted because claims were found invalid under § 101 in CBM2014-00156. Contact: <u>Sasha G. Rao, Esq.</u>, <u>Maynard Cooper and Gale PC</u>, 275 Battery St., San Francisco, CA 94111. (D,R)

190. *Datatrak International Inc. v. Medidata Solutions, Inc.*, C.A. 1:11-cv-00458-PAG (N.D. Ohio).  Served as an expert for defendant in a case alleging infringement of U.S. Patent <u>7,464,087</u>, relating to federated database queries.  Defendant obtained summary judgment of invalidity under 35 U.S.C. §101. Contact: <u>Duane-David Hough, Esq.</u>, <u>Mayer Brown LLP</u>, 1675 Broadway, New York, NY 10019. (R)

191. *SNMP Research, Inc. et al. v. Avaya, Inc.*, C.A. 1:12-cv-00191-RGA-MPT (D. Del.).  Served as an expert for Avaya in an action alleging breach of contract, trade secret misappropriation and copyright infringement involving software implementing the Simple Network Management Protocol (SNMP).  Case has settled. Contact: <u>Joshua Krumholz, Esq.</u>, <u>Holland & Knight, LLP</u>, 10 St. James Avenue, 11th Floor, Boston, MA 02116. (D,R)

192. *Certain Automated Teller Machines and Point of Sale Devices and Associated Software Therefor*, USITC Inv. No. 337-TA-958.  Served as an expert for Respondents NRT Technology Corp. et al. in an International Trade Commission proceeding brought by Complainant Global Cash Access Inc. involving alleged infringement of U.S. Patent <u>6,081,792</u>, relating to structuring ATM and POS transactions with respect to withdrawal limits.   Result: all claims found invalid as indefinite. In <u>affirming</u> this determination, the Commission wrote: "should the extrinsic evidence be considered, the Commission finds NRT's expert testimony credible, see Rebuttal Expert Report of Michael Shamos Regarding Claim Construction ¶¶ 52-58, and that Everi's expert's testimony is not credible." Contact: <u>Colby B. Springer, Esq.</u>, <u>Polsinelli LLP</u> (formerly at Lewis Roca Rothgerber LLP), Three Embarcadero Center, Suite 1350, San Francisco, CA 94111.  (D,R)

193. *Better Mouse Company, L.L.C. v. SteelSeries ApS, Inc. et al.*, C.A. 2:14-cv-198-JRG (E.D. Texas). Served as an expert for defendant in a case alleging infringement of U.S. Patent

7,532,200, relating to computer mouse whose resolution can be set without external software. Dr. Shamos testified at trial on non-infringement. The jury found for defendant on non-infringement. Contact: Joshua M. Masur, Esq., Turner Boyd LLP, 702 Marshall Street, Suite 640, Redwood City, California 94063. (R,T)

194. *Vesta Corporation v. Amdocs Management Limited et al.*, No. 3:14-cv-01142-HZ (D. Ore.). Served as an expert for defendants in a case alleging misappropriation of trade secrets relating to billing in the prepaid mobile phone payment processing market. Case has settled. Contact: Yonaton M. Rosenzweig, Esq., Katten Muchin Rosenman LLP, 2029 Century Park East, Suite 2600, Los Angeles, CA 90067-3012. (D,R)

195. *Benefit Funding Systems, LLC et al. v. U.S. Bancorp*, CA 1:12-cv-00803-LPS (D.Del.). Served as an expert for defendant U.S. Bancorp in an action alleging infringement of U.S Patent 6,625,582, relating to a method of establishing a financial account based on the present value of future retirement payments. All asserted claims were found invalid under 35 U.S.C. §101, a decision affirmed by the Federal Circuit. Contact: Contact: Anthony H. Son, Esq., Maddox Edwards, PLLC, 1900 K Street NW, Suite 725, Washington, DC 20006.  (Original firm: Wiley Rein).

196. *Telesign Corporation v. Twilio, Inc.*, C.A. 3:18-cv-03279-VC (N.D. Cal.). Served as an expert for defendant Twilio in an action alleging infringement of U.S. Patent 7,945,034, relating to verification of telephone users based on characteristics of the telephone number, such as carrier and geographic location. Defendant successfully resisted issuance of a preliminary injunction. Case is stayed pending PTAB review. After PTAB review, Twilio's motion for judgment on the pleadings was granted. Contact: Thomas J. Friel, Jr., Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. (R)

197. *Cronos Technologies, LLC v. Expedia, Inc.*, C.A. 13-1538-LPS (D. Del.), *Cronos Technologies, LLC v. Priceline.com, Inc.*, C.A. 13-1541-LPS (D. Del.) and *Cronos Technologies, LLC v. Travelocity.com L.P.*, C.A. 13-1544-LPS (D. Del.). Served as an expert for defendants in three cases, consolidated for some purposes, in actions alleging infringement of U.S. Patent 5,664,110, relating to a remote ordering system enabling a user to build lists of products to be ordered. The Court found non-infringement on summary judgment, affirmed unanimously by the Federal Circuit. Contact: Matthew C. Acosta, Esq., JacksonWalker LLP, KPMG Plaza at Hall Arts, 2323 Ross Avenue, Suite 600, Dallas, TX 75201. (D,R)

198. *Ex Parte Reexamination of U.S. Patent 7,333,430*, Control No. 90/013,532. Served as an expert for patent owner Fortinet, Inc. in a reexamination of U.S. Patent 7,333,430, drawn to distributing network packets for intermediate security processing based on the ultimate destination of the packet. Result: all challenged claims and newly presented claims patentable. Contact: Michael A. DeSanctis, Hamilton DeSanctis & Cha LLP, Financial Plaza at Union Square, 225 Union Boulevard, Ste. 150, Lakewood, CO 80228. (R)

199. *Inter Partes Review of U.S. Patent 7,027,411*. Case IPR2015-00717. Served as an expert for patent owner Hewlett-Packard Company in an inter partes review of U.S. Patent 7,027,411, drawn to efficient determination of changes in network topology. Status: settled. Contact:

Monica Grewal, Esq., Wilmer Cutler Pickering Hall and Dorr LLP, 60 State Street, Boston, MA 02109. (D,R)

200. *Intellectual Ventures I LLC v. Nextel Operations, Inc. and Sprint Spectrum L.P.*, C.A. No. 13-1634 (D.Del) and related cases 13-1635; *Intellectual Ventures I LLC v. T-Mobile USA, Inc. et al.*, C.A. No. 13-1632; 13-1633; *Intellectual Ventures I LLC v. United States Cellular Corporation*, C.A. No. 13-1636 and related case 13-1637, all D. Del. Served as an expert for defendants Sprint, T-Mobile and U.S. Cellular in related cases alleging infringement of U.S. Patent 6,115,737, drawn to use of an Internet gateway for processing customer service requests to a web server. The Court invalidated the '737 patent on §101 grounds. Contact: Jason W. Cook, Esq., McGuireWoods LLP, 2000 McKinney Ave., Suite 1400, Dallas, TX 75201.  (D,R)

201. *Ex Parte Reexamination of U.S. Patent 7,968,744*, Control No. 90/013,533. Served as an expert for patent owner Fortinet, Inc. in a reexamination of U.S. Patent 7,968,744, drawn to systems and methods for allowing execution of authorized computer code and for protecting computer systems and networks from unauthorized code execution. Result: challenged claim and 14 new claims determined patentable. Contact: Michael A. DeSanctis, Hamilton DeSanctis & Cha LLP, Financial Plaza at Union Square, 225 Union Boulevard, Ste. 150, Lakewood, CO 80228. (R)

202. *Ex Parte Reexamination of U.S. Patent 7,376,125*, Control No. 90/013,531. Served as an expert for patent owner Fortinet, Inc. in a reexamination of U.S. Patent 7,376,125, drawn to a virtual routing engine for software-based packet routing. Result: newly presented claims patentable. Contact: Michael A. DeSanctis, Hamilton DeSanctis & Cha LLP, Financial Plaza at Union Square, 225 Union Boulevard, Ste. 150, Lakewood, CO 80228. (R)

203. *Inter Partes Review of U.S. Patent 7,945,034*, Case IPR2016-00360. Served as an expert for requester Twilio in an *inter partes* review of U.S. Patent 7,945,034, relating to verification of telephone users based on characteristics of the telephone number, such as carrier and geographic location. Challenged claims confirmed. Contact: Thomas J. Friel, Jr., Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. (D,R)

204. *Twilio, Inc. v. Telesign Corporation*,  IPR2016-00450, Patent Trial and Appeal Board (2016).  Served as an expert for petitioner in an *inter partes* review of U.S. Patent 8,462,920, relating to verification of telephone users based on characteristics of the telephone number, such as carrier and geographic location.  Trial was not instituted. Contact: Contact: Carrie J. Richie, Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. (R)

205. *Smart Systems Innovations, LLC v. Chicago Transit Authority, et al.*, C.A. 14-cv-08053 (N.D. Ill.). Served as an expert for defendants in an action alleging infringement of U.S. Patent 5,828,044, relating to a radio-frequency ID (RFID) credit card system. Defendant successfully resisted issuance of a preliminary injunction. All claims invalidated as non-statutory under 35 U.S.C. §101. Affirmed by the Federal Circuit in October 2017. Contact: Jeffrey M. Connor., Esq., formerly at Kilpatrick Townsend & Stockton LLP, now IP counsel at Honeywell. (D,R)

206. *Unwired Planet LLC v. Google, LLC*, C.A. 3:12-cv-00504-MMD-VPC (D. Nevada). Served as an expert for Google in an action alleging infringement of U.S. Patents 6,292,657, 6,654,786, 6,662,016, 6,684,087, 6,895,240, 6,944,760, 7,024,205, 7,035,647, 7,203,752 and 7,463,151, relating to provision of wireless services. All asserted claims of the '151, '205 and '751 patents have been found invalid by the Patent Trial and Appeal Board. After appeal to the Federal Circuit, the case continued with respect to certain claims of the '752 Patent but these were dismissed by stipulation. Contact: Peter E. Gratzinger, Esq., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071.

207. *Xilidev, Inc. v. Boku, Inc. et al.*, C.A. 3:13-cv-02793 (S.D. Cal.). Served as an expert for defendants in an action alleging infringement of U.S. Patent 7,273,168, relating to point-of-sale billing on handheld devices. Claims 1-18 and 20-23 of the '168 patent have been found invalid by the Patent Trial and Appeal Board. Plaintiff agreed to a voluntary dismissal with prejudice. Contact: Frank Pietrantonio, Esq., Cooley LLP, One Freedom Square, 11951 Freedom Drive, Reston, VA 20190.

208. *Intellectual Ventures II LLC v. Commerce Bancshares, Inc. et al.*, C.A. 2:13-CV-04160 (W.D. Mo.). Served as an expert for defendants in an action alleging infringement of U.S. Patents 5,745,574, relating to security in electronic transactions, 6,314,409 and 6,826,694, relating to controlling access to digital property, 6,715,084, relating to intrusion detection, and 7,634,666, relating to a cryptographic engine. All asserted claims have been declared invalid by the Patent Trial and Appeal Board. Decision affirmed by the Federal Circuit in December 2016. Contact: Mark Vander Tuig, Esq., Senniger Powers LLP, 100 North Broadway, 17th Floor, St. Louis, MO 63102.

209. *Hy-Vee, Inc. v. Inmar Digital Promotions Network, Inc.*, C.A. 4:15-cv-00275 (S.D. Iowa). Served as an expert for defendant in an action seeking indemnity for infringement of U.S. Patents 8,219,445, 8,370,199 and 8,538,805, relating to point-of-sale processing of promotions, such as coupons. Hy-Vee had been sued for infringing these patents in *Advanced Marketing Systems, LLC v. Hy-Vee, Inc.*, C.A. 3:15-cv-00103 (W.D. Wisc.). Both cases have settled. Contact: Richard J. Keshian, Esq., Kilpatrick Townsend & Stockton LLP, 1001 West Fourth Street Winston-Salem, NC, 27101. (R)

210. *Motivation Innovations, LLC v. PetSmart, Inc.*, C.A. 1:13-cv-00957 (D.Del.). Served as an expert for defendant in an action alleging infringement of U.S. Patent 5,612,527, relating to a system for redeeming discount offers at point of sale. On motion for judgment on the pleadings, all asserted claims were found invalid under 35 U.S.C. §101. Contact: Kevin A. Zeck, Esq., Perkins Coie, LLP, 1201 Third Avenue, Suite 4900, Seattle, WA 98101-3099.

211. *PPS Data, LLC v. VSoft Corporation et al.*, Case 1:15-cv-00084 (N.D. Ga.). Served as an expert for plaintiff in a case alleging infringement of U.S. Patents 7,181,430, 7,216,106, 7,440,924, 7,624,071 and 8,660,956, relating to methods for processing check images in electronic payment systems. Case has settled. Contact: Anthony H. Son, Esq., Maddox Edwards, PLLC, 1900 K Street NW, Suite 725, Washington, DC 20006 (original firm Andrews Kurth).

212. *Sally Beauty Holdings et al.  v. Intellectual Ventures I LLC*,  CBM2016-00029, Patent Trial and Appeal Board.  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent 5,969,324, relating to accounting methods utilizing a non-predictable bar code. Trial was instituted, the PTAB writing in its decision: "We credit the testimony of Dr. Michael Shamos." Case has settled. Contact: Derek Swanson, Esq., McGuireWoods LLP, Gateway Plaza, 800 East Canal Street, Richmond, VA 23219.  (R)

213. *Square, Inc. v. Protegrity Corporation*,  CBM2015-00014, Patent Trial and Appeal Board (2016).  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent 6,321,201, relating to methods of encrypting databases.  Result: all challenged claims found invalid under 35 U.S. §§101 and 103. Contact: Matthew Argenti, Esq., Wilson Sonsini Goodrich & Rosati Professional Corporation, 650 Page Mill Road, Palo Alto, CA 94304-1050.  (R)

214. *T-Mobile US, Inc.  v. Intellectual Ventures II LLC*,  CBM2016-00083, Patent Trial and Appeal Board.  Served as an expert for petitioner in a covered business method petition seeking review of U.S. Patent 6,115,737, relating to use of an Internet gateway for processing customer service requests to a web server.  The PTAB determined that the patent did not claim a covered business method. Contact: Alison R. Watkins, Esq., Gibson, Dunn & Crutcher LLP, 1881 Page Mill Road, Palo Alto, CA 94304-1211. (R)

215. *Twin Peaks Software, Inc. v. IBM Corporation*, Case 3:14-cv-03933-JST (N.D. Cal.). Served as an expert witness for defendant IBM in an action alleging infringement of U.S. Patent 7,418,439, relating to a system for storing and sharing networked files. All asserted claims found invalid during claim construction. Contact: Andrew Bramhall, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, CA 94065-2139.

216. *Live Face on Web, LLC v. The Control Group Media Company, Inc. et al.*, Case 2:15-cv-01306 (E.D. Pa.). Served as an expert witness for defendants in an action alleging breach of contact and infringement of copyrights relating to web media players and video productions in which recorded actors promote products for websites. Case has settled. Contact: Damon W.D. Wright, Esq., Venable LLP, 575 Seventh St. N.W., Washington, DC 20004.

217. *Nomadix, Inc. v. Hospitality Core Services, LLC*, Case 2:14-cv-08256-DDP (C.D. Cal.) Served as an expert witness for defendant in a case alleging infringement of U.S. Patents 6,636,894 and 6,868,399, relating to network gateways, U.S. Patent 7,698,432, relating to bandwidth management, U.S. Patent 7,953,857, relating to dynamic data transfer over networks, U.S. Patent 8,266,266, relating to dynamic network authorization, and U.S. Patents 8,156,246, 8,266,269, 8,364,806, 8,725,888 and 8,788,690, relating to providing network content. Case has settled. Contact: Michael J. Mehrman, Merhman Law Office, P.C., 150 Spalding Creek Court, Sandy Springs, GA 30350.

218. *Certain Digital Video Receivers and Hardware and Software Components Thereof*, USITC Inv. No. 337-TA-1001.  Served as an expert for Complainants Rovi Corporation et al. against Comcast Corporation et al. in an International Trade Commission proceeding involving alleged infringement of U.S. Patents 8,006,263 , 8,046,801 and 8,578,413, relating to remote

and local electronic TV program guides.  On FinalDetermination, a violation was found with respect to the '263 and '413 patents. Contact: Richard A. Kamprath, Esq., McKool Smith, 300 Crescent Court, Suite 1500, Dallas, TX 75201.  (D,R,T)

219. *ZKey Investments, LLC v. Facebook, Inc.,* Case 2:16-cv-00782-RSWL-KS (C.D. Cal.).  Served as an expert for defendant in a case alleging infringement of U.S. Patent 6,820,204, relating to providing granular control over access to data.  Result: all claims found invalid under §101. Affirmed by the Federal Circuit on Jan. 10, 2018. Contact: Andrew C. Mace, Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304.  (R)

220. *In re: The Matter of the 2016 Presidential Election,* 659 MD 2016 (Pa. Cmwlth. Ct., 2016). Served as an expert for intervenors opposing an action brought seeking a recount of votes in Pennsylvania on the grounds that the state's voting systems are unsecure and vulnerable to hacking by foreign actors. Petitioners discontinued the suit before hearing, refusing to post the required bond. Contact: Lawrence J. Tabas, Esq., Obermayer Rebmann Maxwell & Hippel LLP, One Penn Center, 19th Floor, 1617 John F. Kennedy Blvd., Philadelphia, PA 19103.

221. *Stein v. Cortés,* Case 2:16-cv-06287-PD (E.D. Pa.).  Served as an expert for defendant Secretary of the Commonwealth of Pennsylvania in an action for a mandatory injunction to compel a recount and forensic examination of voting systems.  Result: injunction denied. The Court's memorandum comments favorably on Dr. Shamos's qualification and testimony. Most claims have been dismissed on summary judgment. Case has settled. Contact: Timothy Gates, Esq., Chief Counsel, PA Department of State, 3306 North ffice Bldg., Harrisburg, PA 17120.  (R,T)

222. *Free Stream Media Corp. (d.b.a. Samba) v. Alphonso Inc.*, Case No. 3:17-cv-02107 (N.D. Cal., transferred from E.D. Tex.). Served as an expert for defendant Alphonso in an action alleging infringement of U.S. Patents 9,026,668 and 9,386,356, relating to a system for targeting data, such as advertising, to a device, such as a tablet, based on content that is identified as playing on a different device, such as a television. Alphonso won summary judgment of non-infirngement. Contact: Neel Chatterjee, Esq., Goodwin Procter LLP, 601 Marshall Street, Redwood City, CA 94063. (D,R)

223. *Copart, Inc. v. Sparta Consulting, Inc.*, Case 2:14-cv-00046-KJM-CKD (E.D. Cal.). Served as an expert for defendant Sparta in an action alleging misappropriation of trade secrets relating to imaging batches of items to be offered at auction. Misappropriation counts were dropped during trial. Contact: Frederick Brown, Esq., Gibson, Dunn & Crutcher LLP, 555 Mission Street, Suite 3000, San Francisco, CA 94105. (D,R)

224. *Apple Inc. v. Masa LLC.*, IPR2016-00748, Patent Trial and Appeal Board (2016).  Served as an expert for patent owner in an *inter partes* review of U.S. Patent 8,519,834, relating to a wearable device to alert a user to an incoming cellphone call.  All challenged claims found invalid. Affirmed by the Federal Circuit. Contact: Robert M. Evans, Jr., Esq., Stinson LLP, 7700 Forsyth Blvd. Suite 1100, St. Louis, MO 63105.  (R)

225. *Tele-Publishing, LLC v. Facebook, Inc. et al.,* Case 1:09-cv-11686-DPW (D. Mass.).  Served as an expert for defendants in a case alleging infringement of U.S. Patent 6,253,216, relating to controlling access to information on personal web pages.  Result: all claims found invalid under §101; judgment for defendants. Case settled during appeal to the Federal Circuit. Contact: Reuben Chen, Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304.  (R)

226. *Groupon, Inc. v. International Business Machines Corporation,* Case 1:16-cv-5064 (N.D. Ill.).  Served as an expert for Groupon in a case alleging infringement of U.S. Patent 7,856,360, relating to gathering information from attendees at a venue. Case has settled. Contact: Saina Shamilov, Esq., Fenwick & West LLP, 801 California Street, Mountain View, CA 94041. (R)

227. *Stingray Digital Group Inc. v. Music Choice*, Patent Trial and Appeal Board. Serving as an expert for petitioner in five *inter partes* reviews of U.S. Patents 7,320,025 (IPR2017-00888) and 9,351,045 (IPR2017-01191), relating to providing supplementing a broadcast media service with an on-demand, personalized media service and U.S. Patents 8,769,602 (IPR2017-01192), 9,357,245 (IPR2017-1193, IPR 2018-0114), relating to providing a visual complement to an audio program, and 9,414,121 (IPR 2017-1450), relating to systems and methods for providing on-demand entertainment. Trial has been instituted in '025, '045, '121 and '602. Patent owner requested adverse judgment in IPR2017-1193. Two claims survived in IPR2018-00114. Contact: Heath Briggs, Esq., Greenberg Traurig, LLP, 1200 17th St., Suite 2400, Denver, CO 80202. (D,R)

228. *Music Choice v. Stingray Digital Group Inc. et al.,* C.A. No. 2:16-CV-0586-JRG-RSP (E.D. Texas). Serving as an expert for defendants in a case alleging infringement U.S. Patents 7,320,025 and 9,351,045, relating to providing supplementing a broadcast media service with an on-demand, personalized media service, U.S. Patents 8,769,602 and 9,357,245, relating to providing a visual complement to an audio program, and U.S. Patent 9,414,121, relating to systems and methods for providing on-demand entertainment. Case is stayed pending PTAB proceedings. Contact: Joshua Raskin, Esq., Greenberg Traurig, LLP, MetLife Bldg., 200 Park Avenue, New York, NY 10166. (R)

229. *LivePerson, Inc. v. 24[7] Customer, Inc.*, IPR2017-00609, Patent Trial and Appeal Board. Served as an expert for patent owner in an *inter partes* review of U.S. Patent 6,970,553, relating to converting a voice call into a chat session. Four of six challenged claims were not found unpatentable. Contact: Bill Trac, Esq., O'Melveny & Myers LLP, Two Embarcadero Center, 28th Floor, San Francisco, CA 94111. (R)

230. *Blackberry Limited v. Blu Products, Inc.*, Case 1:16-cv-23535-FAM (S.D. Fla.). Served as an expert for defendants in a case alleging infringement of 15 patents, including U.S. Patent 6,271,605, relating to a battery disconnect system, U.S. Patent 8,169,449, relating to a multilayer graphics controller, and U.S. Patent 8,411,845, relating to the display of call logs on mobile phones. Case has settled. Contact: Victor Castellucci, Esq., Cozen O'Connor, 2 South Biscayne Blvd., 30th Floor, Miami, FL 33131. (R)

231. *Twitter, Inc. v. YouToo Technologies, LLC.*, Patent Trial and Appeal Board. Served as an expert for patent owner in two *inter partes* reviews of U.S. Patent 9,083,997 (IPR2017-00829,

IRP2017-00830), relating to publishing content on social media sites. Trial has been instituted. Contact: <u>Samuel E. Joyner, Esq.</u>, <u>Carrington, Coleman, Sloman & Blumenthal, LLP</u>, 901 Main Street, Suite 5500, Dallas, TX 75202. (R)

232. *IPDEV Co. v. Ameranth, Inc.*, Case No. 3:14-cv-01303-GPC-JLB (S.D. Cal.).  Served as an expert for defendant in an action to determine priority of invention among interfering patents involving U.S. Patents <u>6,384,850</u> and <u>6,871,325,</u> assigned to Ameranth and relating to synchronous updating of restaurant menus on wireless devices, and U.S. Patents <u>5,991,739</u> and <u>8,738,449</u>, relating to Internet ordering methods.  Consolidated with Case 233, below. On summary judgment, the Court awarded priority to Ameranth. Contact: John W. Osborne, Esq., Osborne Law LLC, 33 Habitat Lane, Cortlandt Manor, NY 10567. (D,R)

233. *In re: Ameranth Patent Litigation*, Case No. 3:11-cv-01810-DMS-WSG (S.D. Cal.).  Serving as an expert for Ameranth in an action against numerous defendants alleging infringement of U.S. Patents <u>8,146,077,</u> relating to synchronous updating of restaurant menus on wireless devices.  All asserted claims were found invalid under 35 U.S.C. § 101. Now on appeal to the Federal Circuit. Contact: John W. Osborne, Esq., Osborne Law LLC, 33 Habitat Lane, Cortlandt Manor, NY 10567. (D,R)

234. *Google Inc. v. Spring Ventures, Ltd.*, IPR2017-01652 and 01653, Patent Trial and Appeal Board. Served as an expert for petitioner in *inter partes* reviews of U.S. Patent <u>8,661,094</u>, relating to WWW addressing. Trial instituted in 2017-01653, denied in 2017-01652. Result: all claims of the '094 patent were determined to be unpatentable. Contact: <u>Scott McKeown, Esq.</u>, <u>Ropes & Gray, L.L.P.</u>, 2099 Pennsylvania Avenue, Washington, DC 20006-6807. (D,R)

235. *Rovi Guides, Inc. et al. v. Comcast Corporation et al.*, Case No. 1:16-cv-09278-JPO (S.D.N.Y.). Serving as an expert for plaintiffs in an action alleging infringement of U.S. Patent <u>8,713,595</u>, relating to electronic TV program guides and <u>9,172,987</u>, relating to the use of markup language to alter the functionality of set-top boxes.  Case is stayed pending IPR. Contact: <u>Richard A. Kamprath, Esq.</u>, <u>McKool Smith</u>, 300 Crescent Court, Suite 1500, Dallas, TX 75201.  (D,R)

236. *StrikeForce Technologies, Inc. v. Entrust, Inc. et al.*, Case No. 1:17-cv-00309-LMB-TCB (E.D. Va.). Served as an expert for plaintiff in an action alleging infringement of U.S. Patents <u>8,484,698</u>, and <u>8,713,701</u>, relating to out-of-band authentication using mobile devices.  Case has settled. Contact: <u>Josef Schenker, Esq.</u>, <u>Ropes & Gray LLP</u>, 1211 Avenue of the Americas, New York, NY 10036.  (R)

237. *Level One Technologies, Inc. v. Penske Truck Leasing Co, Inc. and Penske Logistics, LLC*, Case No. 4:14-cv-1305-RWS (E.D. Mo.). Served as an expert for defendant in an action alleging trade secret misappropriation and contractual breach of confidentiality relating to a computer system for invoicing and rendering electronic payments in the trucking industry.  Case has settled. Contact: <u>Douglas Y. Christian, Esq.</u>, <u>Ballard Spahr LLP</u>, 1735 Market Street, 51st Floor, Philadelphia, PA 19103.  (D,R)

238. *Uniloc USA Inc. et al. v. Netsuite Inc.*, Case No. 2:16-cv-00862-RWS (E.D. Texas) and *Uniloc USA Inc. et al. v. Nutanix Inc.*, Case No. 2:16-cv-01193-RWS (E.D. Texas). Served as an expert for plaintiff on claim construction issues in an action alleging infringement of U.S. Patent 6,324,578, relating to management of configurable application programs on network. Later, the asserted claims were found invalid under 35 U.S.C. § 101. Contact: James J. Foster, Esq., Prince Lobel Tye LLP, One International Place, Suite 3700, Boston, MA 02110. (R)

239. *Muransky v. The Cheesecake Factory, Inc. et al.*, Case 2:17-cv-07569-CJC-RAO (C.D. Cal). Serving as an expert for defendants in a case involving alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") arising from display of more than five digits of a credit card number on customer receipts. Contact: John L. McManus, Esq., Greenberg Traurig, P.A., 401 E. Los Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301. (R)

240. *Twilio, Inc. v. Telesign Corporation*,  IPR2016-00451, Patent Trial and Appeal Board (2016).  Served as an expert for petitioner in an *inter partes* review of U.S. Patent 8,687,038, relating to verifying an online registration via an out-of-band telephone connection.  Trial was not instituted. Contact: Contact: Carrie J. Richie, Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. (R)

241. *Twilio, Inc. v. Telesign Corporation*,  IPR2016-01688, Patent Trial and Appeal Board (2016).  Served as an expert for petitioner in an *inter partes* review of U.S. Patent 9,300,792, relating to verification of telephone users based on characteristics of the telephone number, such as carrier and geographic location.  All challenged claims found unpatentable. Contact: Contact: Carrie J. Richie, Esq., Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. (R)

242. *EdiSync Systems, LLC v. Adobe Systems, Inc.*, Civil Action 12-cv-02231-MSK-MEH (D. Colo.).  Served as an expert for Defendant Adobe in a case alleging infringement of U.S. Patent 5,799,320, relating to multi-author document editing systems.  Case has settled. Contact: David Sipiora, Esq., Kirkpatrick Townsend & Stockton LLP, Suite 600, 1400 Wewatta Street, Denver, CO 80202.

243. *Ford Motor Company v. Versata Software, Inc. et al.*, Case No. 2:15-cv-10628-MFL-EAS (E.D. Mich.).  Serving as an expert for defendant/counterplaintiff Versata in a declaratory jugment action relating to alleged infringement of U.S. Patents 5,825,651, 6,405,308 and 6,675,294, relating to product configuration through a graphical user interface; U.S. Patent 7,882,057, relating to complex product configuration using submodels; U.S. Patents 7,200,582 and 7,464,064, relating to checking the consistency of a product configuration model using set equations; and U.S. Patent 8,805,825, relating to product configuration in which attributes are prioritized.  Contact: Steve Mitby, Esq., Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C., 1221 McKinney, Suite 2500, Houston, TX 77010. (D,R)

244. *Improved Search LLC v. Microsoft Corporation*, C.A. No. 16-cv-650-JFB-SRF (D.Del.). Serving as an expert for plaintiff in an action alleging infringement of U.S. Patents 6,604,101 and 7,516,154, relating to methods and systems for translingual searching. Contact: Robert Yorio, Esq., Carr & Ferrell LLP, 120 Constitution Drive, Menlo Park, CA 94025. (D,R)

245. *Comcast Cable Communications, LLC v. Rovi Guides, Inc.*, IPR2017-00866, IPR2017-00867, Patent Trial and Appeal Board. Served as an expert for patent owner in *inter partes* reviews of U.S. Patent 8,713,595, relating to electronic television program guides. All challenged claims found unpatentable. Contact: Josef B. Schenker, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036. (D,R)

246. *Comcast Cable Communications, LLC v. Rovi Guides, Inc.*, IPR2017-00950, IPR2017-00951, IPR2017-00952, Patent Trial and Appeal Board. Served as an expert for patent owner in *inter partes* reviews of U.S. Patent 8,006,263, relating to electronic television program guides. All challenged claims found unpatentable. Contact: Josef B. Schenker, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036. (D,R)

247. *Unified Patents, Inc. v. Anuwave LLC.*, IPR2018-00223, Patent Trial and Appeal Board. Served as an expert for petitioner in *inter partes* reviews of U.S. Patent 8,295,862, relating to enabling short message system (SMS) communication without using IP services. Terminated by settlement. Contact: Robert High, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 271 17th St. N.W., Suite 1400, Atlanta, GA 30363-6209. (R)

248. *Comcast Cable Communications, LLC v. Rovi Guides, Inc.*, IPR2017-01048, IPR2017-01049, IPR2017-01050, Patent Trial and Appeal Board. Served as an expert for patent owner in *inter partes* reviews of U.S. Patent 8,578,413, relating to electronic television program guides. All challenged claims found unpatentable. Contact: Josef B. Schenker, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036. (D,R)

249. *Comcast Cable Communications, LLC v. Rovi Guides, Inc.*, IPR2017-01065, IPR2017-01066, IPR2017-01143, Patent Trial and Appeal Board. Served as an expert for patent owner in *inter partes* review of U.S. Patent 8,046,801, relating to electronic television program guides. All challenged claims found unpatentable. Contact: Josef B. Schenker, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036. (D,R)

250. *DevFactory FZ-LLC v. Magnitude Software, Inc.*, Arbitration WIPOA300617. Served as an expert for Claimant DevFactory in an arbitration relating to a claim of breach of a software Technology Services Agreement. Arbitration has terminated. Contact: Steve Mitby, Esq., Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C., 1221 McKinney, Suite 2500, Houston, TX 77010.

251. *BookIT Oy Ajanvarauspalvelu v. Bank of America Corporation et al.*, 3:17-cv-02577-K (N.D. Texas). Serving as an expert for BookIT in an action alleging infringement of U.S. Patents 8,589,194 and 9,177,268, relating to mediating communications betwen a service provider and a user in a telecommunications network. Contact: Richard A. Kamprath, Esq., McKool Smith, 300 Crescent Court, Suite 1500, Dallas, TX 75201. (D,R)

252. *Promptu Systems Corporation v. Comcast Corporation et al.*, 2:16-cv-06516-JS (E.D. Pa.). Serving as an expert for plaintiff in an action alleging infringement of U.S. Patents 7,047, 196, 7,260,538 and RE44,326, relating to voice control of television set-top boxes. Case is stayed

pending PTAB review. Contact: Robert Yorio, Esq., Carr & Ferrell LLP, 120 Constitution Drive, Menlo Park, CA 94025. (D,R)

253. *Snap Inc. v. Vaporstream, Inc.*, IPR2018-00200, IPR2018-00312, IPR2018-00369, IPR2018-00397, IPR2018-00404, IPR2018-00408, IPR2018-00416, IPR2018-00439, IPR2018-00455, IPR20018-00458, Patent Trial and Appeal Board. Serving as an expert for patent owner in *inter partes* reviews of U.S. Patents 8,886,739, 8,935,351, 9,306,885, 9,306,886, 9,313,155, 9,313,156, 9,313,157, 9,338,111 and 9,413,711, relating to reducing traceability of electronic messages. Trial has been instituted. Contact: Douglas R. Wilson, Esq., Heim, Payne & Chorush, LLP, Heritage Plaza, 111 Bagby, Suite 2100, Houston, TX 77002. (R)

254. *Shopify, Inc. v. DDR Holdings, LLC*, IPR2018-01008, IPR2018-01009, IPR2018-01010, IPR2018-01011, IPR2018-01012, IPR2018-01014, Patent Trial and Appeal Board. Serving as an expert for petitioner in *inter partes* reviews of U.S. Patents 8,515,825, 9,043,228, and 9,639,876, relating to online affiliate marketing. rial has been instituted in all cases. Contact: Jinnie L. Reed, Esq., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston. MA 02111. (D,R)

255. *Election Systems & Software, LLC v. Dominion Voting Systems, Inc.*, 1:17-cv-01172-CJB (D. Del.). Served as an expert for plaintiff in a case alleging infringement of U.S. Patent 8,991,701, relating to an accessible voting system. Case has settled. Contact: Robert M. Evans, Jr., Esq., Stinson LLP, 7700 Forsyth Blvd. Suite 1100, St. Louis, MO 63105.

256. *General Motors LLC et al. v. Dorman Products, Inc. et al*, 2:15-cv-129170-VAR-EAS (E.D. Mich.). Served as an expert for plaintiff in a case alleging copyright infringement and violation of the anti-circumvention provisions of the Digital Millennium Copyright Act relating to offloading of transmission control software from autombles. Case has settled. Contact: Aaron A. Barlow, Esq., Jenner & Block LLP, 353 North Clark Street, Chicago, IL 60654-3456.

257. *PPS Data, LLC v. Jack Henry & Associates, Inc.*, Case 2:18-cv-00007-JRG (E.D. Texas). Serving as an expert for plaintiff in a case alleging infringement of U.S. Patents 7,181,430, 7,216,106, 7,440,924, 7,624,071 and 8,126,809, relating to methods for processing check images in electronic payment systems. Contact: Anthony H. Son, Esq., Maddox Edwards, PLLC, 1900 K Street NW, Suite 725, Washington, DC 20006. (D,R)

258. *NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, Case 1:17-cv-08829 (N.D. Illinois). Serving as an expert for defendant in a case alleging misappropriation of trade secrets relating to a system for managing energy rebate appointments and inspections. Contact: Anthony Fuga, Esq., Holland & Knight LLP, 131 S. Dearborn Street, 30th Floor, Chicago, IL 60603. (R)

259. *Certain Digital Video Receivers and Related Hardware and Software Components*, USITC Inv. No. 337-TA-1103. Serving as an expert for Complainants Rovi Corporation et al. against Comcast Corporation et al. in an International Trade Commission proceeding involving alleged infringement of U.S. Patents 9,294,799, relating to resumption on a second device of video paused on a first device, and 9,578,363, relating to providing video in a format suitable for

a particular device.  Those patents were subsequently dropped. Dr. Shamos testified about his observation of user focus groups. Contact: <u>Richard A. Kamprath, Esq.</u>, <u>McKool Smith</u>, 300 Crescent Court, Suite 1500, Dallas, TX 75201.  (D,R,T)

260. *ARM Ltd. et al. v. Complex Memory, LLC*, IPR2019-00053, IPR2019-00058, Patent Trial and Appeal Board. Served as an expert for petitioners in *inter partes* reviews of U.S. Patent <u>5,890,195</u>, relating to cache memory (SRAM) integrated with main memory (DRAM) and U.S. Patent <u>6,658,576</u>, relating to an energy-conserving computer operating system. Outcome: both IPRs terminated by settlement. Contact: <u>Kevin Anderson, Esq.</u>, <u>Duane Morris LLP</u>, 505 9th Street, NW, Suite 1000, Washington, DC 20004-2166. (R)

261. *Supercell Oy v. Gree, Inc.*, PGR2018-00070, PGR2018-00071, Patent Trial and Appeal Board. Served as an expert for patent owner in post-grant reviews of U.S. Patents <u>9,770,656</u> and <u>9,770,664</u>, relating to user interfaces for multiplayer online games. Institution denied in both PGRs. Contact: <u>Scott McKeown, Esq.</u>, <u>Ropes & Gray, L.L.P.</u>, 2099 Pennsylvania Avenue, Washington, DC 20006-6807. (R)

262. *Amazon Services, LLC v. South Carolina Dept. of Revenue*, Docket No. 17-ALJ-0238-CC. Serving as an expert for South Carolina in a tax dispute relating to online sales through Amazon's Merchant Fulfillment Network. Contact: <u>John Hoefer, Esq.</u>, <u>Willoughby & Hoefer, P.A.</u>, 940 Richland St., P.O. Box 8416, Columbia, SC 29202-8416. (D)

263. *Supercell Oy v. Gree, Inc.*, PGR2019-00018, Patent Trial and Appeal Board. Serving as an expert for patent owner in a post-grant review of U.S. Patent <u>9,891,799</u>, relating to a method for moving a plurality of objects in a computer game. Contact: <u>Scott McKeown, Esq.</u>, <u>Ropes & Gray, L.L.P.</u>, 2099 Pennsylvania Avenue, Washington, DC 20006-6807. (R)

264. *Beal v. Outfield Brew House, LLC.,* Case 2:18-cv-4028 (W.D. Missouri).  Serving as an expert for plaintiff, representative of a putative class, in a case alleging violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, specifically on the issue whether certain dialing systems constitute an "Automatic Telephone Dialing System" under the statute.  Contact: <u>Bill Kenney, Esq.</u>, <u>Bill Kenney Law Firm, LLC.</u>, 1100 Main St. Suite 1800, Kansas City, MO 64105. (D,R)

265. *Smartmatic USA Corporation v. Election Systems & Software, LLC,* IPR2019-00531, Patent Trial and Appeal Board. Serving as an expert for patent owner in an inter partes review of U.S. Patent <u>8,096,471</u>, relating to a ballot marking device having an attached ballot box. Contact: <u>Robert M. Evans, Jr., Esq.</u>, <u>Stinson LLP</u>, 7700 Forsyth Blvd. Suite 1100, St. Louis, MO 63105. (R)

266. *Curling et al. v. Raffensperger et al.,* Case 1:17-CV-2989AT (N.D. Georgia).  Serving as an expert for defendants Secretary of State and State Election Board in a case in which plaintiffs seek an injunction of forbid use of DRE voting machines in Georgia. Contact: <u>Vincent Russo, Esq.</u>, <u>Robbins Ross Alloy Belinfante Littlefield LLC</u>, 500 14th Street N.W., Atlanta, GA 30318.

267. *Smith v. Truman Road Development, LLC d/b/a No OtherPub,* Case 4:18-cv-670-NKL (W.D. Missouri).  Serving as an expert for plaintiff, representative of a putative class, in a case alleging violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, specifically on the issue whether certain dialing systems constitute an "Automatic Telephone Dialing System" under the statute.  Contact: Bill Kenney, Esq., Bill Kenney Law Firm, LLC., 1100 Main St. Suite 1800, Kansas City, MO 64105. (R)

268. *J. T. Hand et al. v. Beach Entertainment, LLC d/b/a Shark Bar,* Case 4:18-cv-668-NKL (W.D. Missouri).  Serving as an expert for plaintiff, representative of a putative class, in a case alleging violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, specifically on the issue whether certain dialing systems constitute an "Automatic Telephone Dialing System" under the statute.  Contact: Bill Kenney, Esq., Bill Kenney Law Firm, LLC., 1100 Main St. Suite 1800, Kansas City, MO 64105. (R)

## Legislative Testimony

Testimony before the Texas Legislature concerning electronic voting, Austin, Texas, 1987.  Result: passage of the Texas Electronic Voting Law.

Invited testimony before the British House of Lords, Subcommittee B of the European Union Committee, April 20, 2000.   Subject: European regulation of eCommerce.

Testimony before the Pennsylvania Legislature State Government Committee concerning electronic voting, Philadelphia, March 10, 2004.

Testimony before the United States Commission on Civil Rights concerning electronic voting, Washington, DC, April 9, 2004.

Testimony before the U.S. House of Representatives Committee on Science concerning voting system certification, Washington, DC, June 24, 2004.

Testimony before the U.S. House of Representatives Committee on House Administration concerning voting system security, Washington, DC, July 7, 2004.

Testimony before the U.S. House of Representatives Committee on Government Reform concerning electronic voting technology, Washington, DC, July 20, 2004.

Testimony on DREs and paper trails before the Virginia Legislature Study Commission on Voting System Certification and Security, Richmond, VA, August 16, 2004.

Testimony before the Election Assistance Commission, Technical Guidelines Development Committee, Subcommittee on Computer Security and Transparency, Gaithersburg, MD, Sept. 20, 2004.

Testimony before the House Ways and Means Committee of the Maryland General Assembly on voting machine paper trails, Annapolis, MD, December 7, 2004.

Testimony before the U.S. House of Representatives Committee on House Administration concerning paper trails, Washington, DC, September 28, 2006.

Testimony before the U.S. Election Assistance Commission concerning the Voting System Testing and Certification Program, Washington, DC, October 26, 2006.

Testimony before the Georgia State Board of Elections, Powder Springs, GA, December 21, 2007.

Testimony before the Maryland House of Delegates Ways and Means Committee, Annapolis, MD, January 18, 2007.

Testimony before the U.S. Senate Committee on Rules and Administration on the Ballot Integrity Act of 2007, Washington, DC, July 25, 2007.

## Arbitration

Dr. Shamos has served as an arbitrator in computer-related disputes for the American Arbitration Association.

## Electronic Voting

Dr. Shamos has served as an examiner of electronic voting systems and consultant on electronic voting.

Member, Sarasota Source Code Audit Task Force, Florida Secretary of State (2007-2008)

Consultant to the Pennsylvania Secretary of the Commonwealth (2004- ).

Consultant to the Massachusetts Secretary of the Commonwealth (2006).

Project SERVE Security Peer Review Group (2003).

Attorney General's Designee for electronic voting examinations, State of Texas (1987-2000).

Statutory Examiner for electronic voting, Commonwealth of Pennsylvania (1980-1996).

Consultant to Montgomery County, Pennsylvania (1996).

Consultant to the Secretary of State of Nevada (1996).

Consultant to the Delaware Legislature (1989).

Consultant to the Secretary of State of West Virginia (1984).

**Business Experience**

President, Expert Engagements LLC, expert witness firm (2003-present).

President, Unus, Inc., database publishing software (formerly Unilogic, Ltd.) (1990-1992)

President, Notifax Corporation (1989-1994). Automated notification by facsimile.

President, Lexeme Corporation (1984-87), software language translation products.

Managing Partner, Shamos and Tchen (1978-82), computer consulting firm.

Supervisory Programmer, National Cancer Institute (1970-72), while a commissioned officer in the United States Public Health Service (O-3).

Associate Engineer, IBM Corporation (1968-70) (Components Division), design of manufacturing information systems.

**Consulting**

Morgan Stanley Dean Witter (2000-2002 ) (now Morgan Stanley).

McKinsey & Co. (1999-2001).

Bell Atlantic Corporation (1999-2008) (now Verizon).

LG-CNS, South Korea (2002-). Project to automate the Korean court system.

**Directorships**

Unilogic, Ltd. (1979–87) (later Unus, Inc. d/b/a Cygnet Publishing Technologies, 1987-2013). Database publishing software.

The Billiard Archive (1983– ). Historical nonprofit foundation.

Lexeme Corporation (1984-1987). Computer source language translation.

Notifax Corporation (1989-1994)

Insurance Technology Corporation (1992–1995). IT consulting for the insurance industry.

**Personal Data**

Date of birth: April 21, 1947.

Married to Julie Shamos (formerly Julie Van Allen), August 12, 1973.

Children: Josselyn (born May 20, 1982), Alexander (born August 3, 1984).

Grandchildren: Harlow Elizabeth Crane (born April 9, 2010), Bishop Moses Crane (born July 13, 2012)

Military Status: Veteran (Commissioned Officer, U.S. Public Health Service, 1970-72).

## Contact Information

Contact should be by email.  Letters and packages should be sent to the Home Address:

Home Address:
   605 Devonshire Street
   Pittsburgh, PA  15213-2904
     Home Telephone:  412-681-8398
     Home Fax: 412-681-8916

Office Address:
   6707 Gates Hillman Complex
   5000 Forbes Avenue
   Carnegie Mellon University
   Pittsburgh, PA  15213
     Office Telephone:  412-268-8193
     Office Fax: 412-268-6298
     Email: shamos@cs.cmu.edu

## Publications

Google Scholar citations.

### SCIENCE

Books

1. *Computational Geometry: An Introduction*, with F. P. Preparata.  Springer-Verlag (1985, revised ed., 1991), 390 pp.  ISBN 0387961313.  According to CiteSeer in 2012, this is the 93rd most cited work in the field of computer science.

2. *Вычислительная геометрия: введение*.  Russian translation of "Computational Geometry: An Introduction." Moscow: Mir Publishers (1989).  ISBN 5030010416.

3. _Keisan kikagaku nyumon_.  Japanese translated by T. Asano and T. Asano of _Computational Geometry: An Introduction_, with F. P. Preparata.  Soken Shuppan (Jul. 1992).  ISBN 4795263213.

4. _Handbook of Academic Titles_.  193 pp. (Jan. 2011).  An encyclopedia of various academic designations used at over 1000 colleges and universities in the United States.

5. _Geometria obliczeniowa.  Wprowadzenie_. Polish translation of "Computational Geometry: An Introduction."  Warsaw: Helion (2003) 392 pp.  ISBN 83-7361-098-7.

6. _Shamos's Catalog of the Real Numbers_.  A list, patterned after Sloane & Plouffe, The Encyclopedia of Integer Sequences, Academic Press (1995).  Over 10,000 interesting real numbers arranging in lexical order by decimal expansion, with accompanying formulas.

Book Chapters

1. "Privacy and Public Records." Chapter 16 in _Personal Information Management_, Jones & Teevan, eds., Univ. of Washington Press (2007), ISBN978-0-295-98737-8.

Articles

1. "On the Piezoelectric Effect in Bone," with M. H. Shamos and L. S. Lavine.  _Nature_ **197**:81 (1963).

2. "An Absorber Theory of Acoustical Radiation," with M. A. Tavel. _Journal of the Acoustical Society of America_ **54**:46–49 (1973).

3. "Problems in Computational Geometry." Unpublished book manuscript (1974, revised 1977). Distributed in photocopy.

4. "Geometric Complexity." _Proceedings of the Seventh Annual ACM Symposium on Automata and Theory of Computation_ (May 1975) 224–233.

5. "Closest-point Problems," with D. J. Hoey. _Proceedings of the Sixteenth IEEE Symposium on Foundations of Computer Science_ (Oct. 1975) 151–162.

6. "Divide and Conquer in Multidimensional Space," with J. L. Bentley. _Proceedings of the Eighth Annual ACM Symposium on Automata and Theory of Computing_ (May 1976) 220–230.

7. "Geometric Intersection Problems," with D. J. Hoey. _Proceedings of the Seventeenth Annual IEEE Symposium on Foundations of Computer Science_ (Oct. 1976) 208–215.

8. "Lower Bounds from Complex Function Theory," with G. Yuval. _Proceedings of the Seventeenth Annual IEEE Symposium on Foundations of Computer Science_ (Oct. 1976) 268–273.

9. "Geometry and Statistics: Problems at the Interface." In _Algorithms and Complexity: New Directions and Recent Results_, J. F. Traub, ed., Academic Press (1976) 251–280.

10. "Divide and Conquer for Linear Expected Time," with J. L. Bentley. *Information Processing Letters* 7 (1977) 87–91.

11. "A Problem in Multivariate Statistics: Algorithm, Data Structure, and Applications," with J. L. Bentley. *Proceedings of the Fifteenth Allerton Conference on Communications, Control and Computers* (Sep. 1977) 193–201.

12. "Optimal Algorithms for Structuring Geographic Data," with J. L. Bentley. *Proceedings of the Harvard Conference on Topological Data Structures for Geographic Information Systems* (Oct. 1977) 43–51.

13. "Computational Geometry." Ph.D. Thesis, Yale University (1978).  University Microfilms, Ann Arbor, MI.

14. "Time and Space," with A. R. Meyer. In *Perspectives on Computer Science*, A. K. Jones, ed. Academic Press (1978).

15. *Combinatorics on Graphs I: Graph Polynomials*. Unpublished book manuscript (1978).

16. "Robust Picture Processing Operators and Their Implementation as Circuits." *Proceedings of the Fall 1978 Workshop on Image Processing*, Carnegie Mellon University (1978).

17. "A practical system for source language translation," with T. R. Kueny and P. L. Lehman. *Proceedings of the National Conf. on Software Reuseability and Maintainability*, pp. B-1 – B-12, Washington, DC (Sep. 1986).

18. "The Early Years of Computational Geometry – A Personal Memoir." *Advances in Discrete and Computational Geometry* (B. Chazelle, J. E. Goodman, and R. Pollack, eds.), *Contemporary Mathematics*, Amer. Math. Soc., Providence (1998).

19. "A Multiparty Computation for Randomly Ordering Players and Making Random Selections," with Latanya Sweeney.  Carnegie Mellon Univeristy School of Computer Science Technical Report CMU-ISRI-04-126 (July 2004)

20. *Overcounting Functions*.   A systematic method of transforming certain multiple summations into single summations, with new number-theoretic results.

21. *Property Enumerators and a Partial Sum Theorem*.   A new result allowing rapid symbolic evaluation of certain types of double summations.

## DIGITAL LIBRARIES

Articles

1. "Machines as readers: a solution to the copyright problem." J. Zhejiang Univ. Science 6A, 11, pp. 1179-1187 (Nov. 2005).

Book Chapters

1. "The Universal Digital Library: Intelligent Agents and Information on Demand," with Raj Reddy.   Chapter 6 in Emerging Communication Technologies and the Society, by N. Balakrishnan, Indian National Science Academy (2000).  ISBN 81-7319-341-X.

Reports

1. "Japanese Digital Information Policy, Intellectual Property and Economics," in Digital Information Organization in Japan," International Technology Research Institute (1999).

**ELECTRONIC VOTING**

Books

1. "Glossary of Electronic Voting."

Articles

2. "Voting System Certification — An Examiner's View." Invited paper presented at the Election Center Conference, Reno, Nevada (Sep. 1989).

3. "Electronic Voting — Evaluating the Threat." Proc. Third ACM Conf. on Computers, Freedom & Privacy,  San Francisco, CA (Mar. 1993).

4. "Paper v. Electronic Voting Records — An Assessment."  Proc. 14th ACM Conf. on Computers, Freedom & Privacy, Berkeley, CA (Apr. 2004).

5. "Evaluation of Voting Systems," with P.L. Vora, B. Adida, R. Bucholz, D. Chaum, D. Dill, D. Jefferson, D. Jones, W. Lattin, A. Rubin and M. Young, Commun. ACM 47(11):144 (2004).

6. "Voting as an Engineering Problem." *The Bridge* (publication of the National Academy of Engineering), Summer 2007, pp. 35-39.

7. "Realities of E-Voting Security," with A. Yasinsac.  IEEE Security and Privacy 10:5 (Sep/Oct 2012), pp. 16-17.  Also guest editor of that issue, devoted to E-voting Security.

8. "Why our voting systems are safe." Op-ed in the Pittsburgh Post-Gazette, Dec. 31, 2016.

Published Reports

9. "Software and Security Analysis of the ES&S iVotronic 8.0.1.2 Voting Machine Firmware," with Yasinsac et al., February 23, 2007.  Review commissioned by the Secretary of State of Florida to investigate irregularities in the Florida Congressional District 13 election of 2006.

**BILLIARDS**

Books

1. _Pool_.   New York: Mallard Press division of Bantam-Doubleday-Dell Promotional Book Company (Aug. 1991). 128 pp.  ISBN 0-7924-5310-7.

2. _Le billard et le billard américain_.  Paris: Minerva, 1992, reprinted 1997.  128 pp. Translation by Jean-Yves Prate of the author's American book, _Pool_. ISBN 2–8307–0160–7 (1992), 2-8814-3135-6 (1997).

3. _The Illustrated Encyclopedia of Billiards_.  New York: Lyons & Burford (1993).   310 pp. ISBN 1-55821-219-1.

4. _Pool Snooker Carambola_.  Padua: Facto Edizioni (1993). 128 pp. Italian translation of _Pool_. Translated by Elisabetta Bezzon. ISBN 88-85860-20-6.  The first English-language billiard book ever published in Italian.

5. _Pool_.   New York: Friedman/Fairfax (Jun. 1994). 128 pp.  ISBN 1-56799-061-4.   Paperback edition of the author's 1991 _Pool_.

6. _Shooting Pool: The People, the Passion, the Pulse of the Game_, with photographs by George Bennett.  New York: Artisan (Jun. 1998).  144 pp.  ISBN 1-885183-95-X.   A photographic survey of pool in the U.S. in 1997.  A Book-of-the-Month Club bonus selection (Fall, 1998).

7. _Setting the Stage for Fifty Years_. Coralville, IA: Billiard Congress of America (Jun. 1998). 88 pp.   A history of the Billiard Congress of America.

8. _The New Illustrated Encyclopedia of Billiards_.  New York: Lyons Press (1999).  320 pp.  ISBN 1-55821-797-5.  An expanded and revised edition of _The Illustrated Encyclopedia of Billiards_.

9. _The Complete Book of Billiards_.  New York: Gramercy Books (2000).  306 pp.  ISBN 0-517-20869-5. Reissue of author's 1993 _The Illustrated Encyclopedia of Billiards_.

## In Preparation

**SCIENCE**

Articles

1. _A Graph-Theoretic Model of Electronic Payment Systems_.

**LAW**

Books

1. _A Dictionary of American Intellectual Property_.

## Invited Talks

### ELECTRONIC COMMERCE

"The Future of eCommerce."  Address to the Association for Corporate Growth, Pittsburgh, PA (Dec. 2001).

"The U.S., Korea and the Internet Bubble."  Korea International Trade Association (Seoul, July 2003).

"Electronic Judiciary Services in the United States."  Address at the Supreme Court of Korea (Dec. 2004).

"eGovernment in the United States."  Public address at the University of Hong Kong (Feb. 2005).

"Global SCM as a Cross-Border eCommerce Model," Korea International Trade Association, Seoul, Korea (Mar. 2007).

"Innovate or Die."  Invited talk at the Verizon Leadership Meeting, Morristown, NJ (Jun. 2007).

"A Formula for Innovation."  Public address at the University of Hong Kong (Feb. 2008).

"Ask My Robot: How Computers Answer Questions."  University of Hong Kong (Feb. 2013).

"How Bitcoin Works: A Non-Technical Introduction."  University of Hong Kong (Mar. 2014).

"What's a Bitcoin? A Non-Technical Introduction."  Carnegie Mellon University (Oct. 2014).

### COMPUTER SCIENCE

"Surprises in Experimental Mathematics."  Carnegie Mellon University Mathematics Seminar (Feb. 2002).

"Learning by Doing or Learning by Listening?"  University of Hong Kong (Feb. 2007).

"Discoveries in Experimental Mathematics."  University of Hong Kong (Feb. 2009).

"How Did It (Computational Geometry) Start?"  Keynote address at the 20th Canadian Conference on Computational Geometry, Montreal, Canada (Aug. 2008).

"The Internet of Everything."  University of Hong Kong (Mar. 2015).

"How Do Driverless Cars Work?"  University of Hong Kong (Mar. 2017).

"How Machines Learn (Without Being Taught)"  University of Hong Kong (Mar. 2018).

"What is Quantum Computing All About?"  University of Hong Kong (Mar. 2019).

### SCIENCE AND LAW

"Digital Property in the 21st Century."  Keynote address for the Spring Meeting of the American Intellectual Property Law Association, Pittsburgh, PA (May 2000).  View <u>slides</u>.

"Who Owns This Algorithm?" Carnegie Mellon University (Nov 1991); Microelectronics and Computer Corporation (Jan. 1992); Univ. of Texas at Austin (Jan. 1992); UCLA (Feb. 1992).

"New Computer Technology and Its Application to Worker's Compensation." Forum IV, Newport Beach, CA (Feb. 1992).

"The Office of the Future, If There Is One." 1994 IAIABC Conf., Pittsburgh, PA (Sep. 1994).

"The Fringes of Infringement." University of Texas, Austin, TX (Sep. 1995).

"The Arts and the Internet." Allegheny County Bar Association Continuing Legal Education course (June 26, 1996).

"The Universal Information Resource." Inventing the Future, Symposium in Honor of Raj Reddy's 60th Birthday, Carnegie Mellon University, Pittsburgh, PA (May 1998).

"The Universal Library."   University of Texas at Austin (Sep. 1998)

"The Universal Library and Its Role in Scientific Information."  Keynote address to the RNA Society symposium on Emerging Sources of RNA Information, Arlington, VA (Dec. 8, 1998).

"Digital Property in the 21st Century."  Luncheon address to the American Intellectual Property Law Association, Pittsburgh, PA (May. 2000).

"Copyright Protection and Distance Learning."  Hong Kong Intellectual Property Office (Feb. 2002).

"The Universal Dictionary." Address at International Institute of Information Technologies (IIIT), Hyderabad, India (Jan. 2003).

"The Million Book Projects."  Public address at the University of Hong Kong (Jan. 2003).

"Mathematics and the Privacy Laws."  ALADDIN Workshop on Privacy in D.A.T.A., Pittsburgh, PA (Mar. 2003).

"Machines as readers: a solution to the copyright problem."  1st Int'l Conf. on Universal Digital Library, Hangzhou, China (Nov. 2005).

"Your Books Might Cost More Now: The Role of the Expert in Software Patent Litigation."  University of Hong Kong (Feb. 2006).

"University Technology Transfer: How to Fix It." Asia Conference on Technology Transfer (ACTT) 2006, Seoul, S. Korea (Mar. 2006).

"How Big a Problem is Copyright"?  USAIN Conference, Cornell University, Ithaca, NY (Oct. 2006).

"Digital Ownership."  2d Intl. Conf. on Universal Digital Library, Alexandria, Egypt (Nov. 2006).

"Google and the Death of Books."  University of Hong Kong (Feb. 2010).

"FaceWars."  (About the lawsuit between Facebook and the Winkelvoss twins).  University of Hong Kong (Feb. 2011).

"Swiping the iPhone: Billions Lost With the Stroke of a Pen."  University of Hong Kong (Feb. 2012).

"Global Phone Wars: Apple v. Samsung."  University of Hong Kong (Mar. 2016).

### ELECTRONIC VOTING

"Voting System Certification — An Examiner's View."  Election Center Conference, Reno, Nevada (Sep. 1989).

"Electronic Voting — Evaluating the Threat." Third Conf. on Computers, Freedom and Privacy, San Francisco, CA (Mar. 1993).

"What's Happing in Florida?" Carnegie Mellon University (Nov. 2001)."

"Electronic Voting: The Technology of Democracy." Hong Kong University (Feb. 2004).

"Theory v. Practice in Electronic Voting."  DIMACS (Rutgers Univ., May 2004).

"HAVA: Are We Ready?"  Panel at the League of Women Voters National Convention, Washington, DC (Jun. 2004).

"Testing Voting Machines."  Panel at the American Enterprise Institute, Washington, DC (Jun. 2004).

"Electronic Voting: Promise and Peril."  Talk at the Moritz College of Law, Ohio State University (Sep. 2004).

"Is e-voting ready for prime time: Legal and technical issues regarding the upcoming Presidential election."  Panel at John Marshall Law School (Chicago, IL, Oct.  2004).

"Is Electronic Voting Reliable?"  Talk to the Kiwanis Club of Dubuque, Iowa (Feb. 2005).

"The Top Ten Problems in Practical Electronic Voting."  Int'l Workshop on Mathematics and Democracy, Ettore Majorana Centre, Erice, Sicily (Sept. 2005).

"Why Don't We Have Paper Trails in Pennsylvania?"  Carnegie Mellon Univ. CyLab Seminar, Pittsburgh, PA (Jan 2006).

"Paper Trails and the Pennsylvania Certification Process."  County Commissioners Association of Pennsylvania 2006 Spring Conference, Harrisburg, PA (Mar. 2006).

"The 2006 Elections: Are We Ready?"  Panel at the American Enterprise Institute, Washington, DC (Sept. 2006).

"What's Right with Electronic Voting?"  University Lecture Series, Carnegie Mellon University (Oct. 12, 2006).

"What Happened in Yesterday's Election?"  Center for Research on Computation and Society, Harvard University (Nov. 8, 2006).

"What Happened in Sarasota County"?  Council on Government Ethics Laws, New Orleans, LA (Dec. 6, 2006).

"What Happened to 18,000 Votes? Results of the Sarasota Source Code Audit." Carnegie Mellon University (Apr. 16, 2007).

"Opscan Voting: The Good, the Bad and the Ugly."  Florida State Association of Supervisors of Elections, Destin, Florida (May 24, 2007).

"Voting Machine Fraud."  University of Pittsburgh (Nov. 11, 2008)