IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>*Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:17-cv-2989-AT |

### STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF FILING

**I.     Procedural background of discovery dispute.**

This discovery dispute began with a request "to produce the GEMS Databases." [Doc. 416, p. 1]. Coalition Plaintiffs suggested that a protective order would be sufficient with production. [Doc. 416, p. 3]. Curling Plaintiffs joined, seeking all files (an image) of the GEMS Servers. [Doc. 420, p. 1].

This Court held a conference on June 28, 2019 to address the discovery dispute about the production of the GEMS Databases. [Doc. 436]. The first question the Court asked was, "Why is it that the plaintiffs need the entire GEMS database?" [Transcript, 6/28/2019 Hearing at 5:23-24]. After discussion, Plaintiffs offered to adhere to "similar security protocols that the state has in place for each

of the 159 counties." *Id*. at 20:17-21. Dr. Halderman explained that the risks State Defendants were concerned about could be addressed by maintaining the GEMS Databases in a "physically separated facility and a completely disconnected system." *Id*. at 37:9-13. The Court then suggested a work station in a facility under the State's control as a possible alternative and Dr. Halderman agreed the analysis could be performed under those conditions. *Id*. at 40:15-41:9. The entire focus of the initial proposal related to the GEMS Databases, not the entire server (which may be raised later). *Id*. at 43:15-44:1. The Court then requested that State Defendants consider having the analysis done in a state facility with a limited number of individuals participating in the review. *Id*. at 48:6-49:1.

In response to the Court's request, State Defendants proposed a discovery protocol in the State's own environment. [Doc. 440]. This Court then instructed Plaintiffs to respond with their objections [Doc. 446] and Plaintiffs instead proposed their own discovery protocol [Doc. 451]. In response, State Defendants attempted to respond to some of Plaintiffs' concerns, [Doc. 453], and, in response, Plaintiffs proposed additional items related to their security protocol. [Doc. 455].

In that document [Doc. 455], for the first time, Plaintiffs proposed a two-step process that would (1) require State Defendants to extract data from the GEMS Databases, then (2) follow their security protocol for the entirety of the information

in the GEMS Databases. [Doc. 455, p. 11]. This Court then asked for more specifics on the number of computers and space, to which State Defendants responded, attempting to accommodate some of Plaintiffs' concerns [Doc. 456]. This Court asked Plaintiffs to confer with State Defendants regarding the Phase I proposal, which they did on July 9, 2019. [Doc. 460]. The Court then requested a more specific response about some of the Phase I components, but before the time for State Defendants to respond, issued an order requiring disclosure of the entirety of the GEMS Databases to Plaintiffs in two locations with security parameters [Doc. 463].

State Defendants understood this order to moot further consideration of production parameters because it resolved the discovery dispute over the request "to produce the GEMS Databases." [Doc. 416, p. 1]; *see also* [Doc. 420, p. 1]. Given that the "Phase I" and "Phase II" proposals emerged from the back-and-forth over how to resolve the original discovery dispute, State Defendants did not see any further need for this Court to be involved in resolving that dispute—because it was resolved.

Plaintiffs now expand the scope of their discovery dispute, insisting that State Defendants should produce all of the components of the GEMS Database

(allowing Plaintiffs to reassemble the databases, as discussed below) without any protections. [Doc. 455, pp. 1-2].

## II. GEMS Databases are critical infrastructure.

Shifting from their prior positions, Plaintiffs now seek the *public* disclosure of the tables and relationships from within the GEMS Databases without any protective order or protective protocols. While Plaintiffs attempt to recast this as the State's burden, they have requested databases that actually operate the state's election systems, which are critical infrastructure under federal law. Dr. Halderman agreed that the GEMS Server is "essentially the nexus of the whole election system." [Tr. 6/28/19 at 9:13-18].

Earlier in this case, Plaintiffs argued that the alleged downloading of GEMS Databases (*not* GEMS Server information) from a website was a security threat that created the ability of someone to compromise an entire election. [Doc. 260-1, pp. 10-11] (discussion of Logan Lamb allegedly downloading GEMS Databases from KSU Server). And yet Plaintiffs now argue that the very information that they said was a *security threat* should be made public.

The distinction Plaintiffs attempt to draw between the *databases* and *data* is not relevant to their current request. On the call between Plaintiffs and Defendants regarding the Phase I request, Plaintiffs' experts explained that the extracted table

information they propose to receive without any protective order under Phase I must include the relationships between tables. Plaintiffs continue to insist that they must have the relational information from the database. [Doc. 460, pp. 7-8], which is information they will already have pursuant to the Court's order that the State produce the GEMS Databases. But having the tables with the relational information would essentially allow Plaintiffs to *reconstruct the database* after receiving all of the information, effectively circumventing the protections this Court specified for the entire database structure.

State Defendants did not design or create the GEMS Databases at issue. But based on advice regarding security, it keeps the databases on secure, air-gapped servers. Since the call with Plaintiffs, State Defendants have conducted a further review and many of the names specified by Plaintiffs in their Exhibit B do not match the names of tables in Georgia's GEMS Databases. In addition, items 50 and 51 on Plaintiffs' Phase I list are *not* tables or fields in the Georgia GEMS Database files. Both of these facts reinforce the position of State Defendants that the version of GEMS designed for the State of Georgia is unique and its disclosure publicly would provide information to would-be hackers that they do not currently have.

Plaintiffs also provide a moving target in terms of what they believe should be public or not. When Defendants' counsel asked why Plaintiffs proposed State

Defendants turn over tables titled "Operator (Admin & password data)" and "Key Table" (which provides information about the relationships between the tables) [Doc. 455, p. 27], Plaintiffs then advised they did not need those particular tables.[1] Plaintiffs experts also said they needed No. 51, which is not a table, but rather a dataset to generate ballot image reports.[2]

### III. Plaintiffs seek to make as much information about Georgia's election system public as possible.

State Defendants have grave concerns about continuing to release information the State spends a great deal of effort to keep confidential into the public domain, especially given the ability of Plaintiffs to reverse-engineer the databases using the table information and circumvent the security protocols of this Court. As an illustration of this concern, Ms. Marks, the director of the Coalition for Good Governance began tweeting out discovery documents from the State almost as soon as they were produced. *See*, Ex. A, Tweet of Marilyn Marks from 7:06 p.m. on July 4, 2019. The documents she posted at the link are clearly labeled

---

[1] They then changed their perspective about Table 24 [Doc. 460, p. 6].

[2] State Defendants previously offered ballot image reports to Plaintiffs as one of the proposed report productions and they refused.

with the Bates numbers of State Defendants. Ex. B, documents from coalitionforgoodgovernance.sharefile.com link.

Plaintiffs seek to release extensive relational data that is not currently available in the public domain to non-experts and non-attorneys.[3] This Court has authorized the release of the GEMS Database in a secure environment and, if Plaintiffs wish to release information to non-experts from that database after their review, they should be required to give State Defendants an opportunity to review and object to the tables being released. But that is not an issue that needs to be resolved at this point.

## IV. Production burden of extraction.

One remaining issue with Plaintiffs' proposed process is the time and effort required to extract 51 individual tables from 159 pre-election and 159 post-election databases. Plaintiffs propose only four calendar days for this task, which may require getting information from counties as State Defendants advised [Doc. 453, p. 6 n.6]. While Plaintiffs' experts believe this process can be automated, State Defendants will have to devote significant staff time to the effort to prepare the

---

[3] In sharp contrast, as will be addressed separately later today, Plaintiffs refuse to copy the memory card Dr. Halderman used in his presentation to this Court, even under security protocols outlined by this Court for the GEMS Database information, instead insisting that State Defendants may only review the malware in Dr. Halderman's own secured environment.

files for Plaintiffs if this Court orders a production along the lines outlined by Plaintiffs. The State does not have these resources. Every State resource devoted to this case takes resources away from other significant priorities, including finalizing the new voting system that the State is attempting to move to prior to the 2020 elections.

## V.     Answers to Court's questions.

To the extent it has not been previously answered in this document, State Defendants address the specific issues related to the GEMS Databases requested by the Court in light of Plaintiffs' belief that this issue is not moot:

1. The basis for the confidentiality concerns about the GEMS Database as a whole is that the GEMS Databases form part of the critical election infrastructure. State Defendants have always been advised to maintain the security of the GEMS Database as a security measure to make it more difficult for those wishing to attempt a compromise to do so. If someone seeking to design malware does not know the relationships and field names within the database, it makes it more difficult to design a software attack. The fact that the names given by Plaintiffs in their exhibit *do not match* to names of Georgia GEMS Database tables demonstrates that the Georgia structure is different enough to merit protection.

2. The basis for State Defendants' confidentiality objections is the exposure of the relationships between the tables within the database. Extracting tables that still contain that relational information allows Plaintiffs' experts to reconstruct the database without a protective order. Plaintiffs should not be allowed to carry that identifying information into a public sector with no protections, as Plaintiffs propose in their Phase I process. This 11th day of July, 2019.

>Vincent R. Russo
>GA Bar No. 242628
>Josh Belinfante
>GA Bar No. 047399
>Carey A. Miller
>GA Bar No. 976240
>Kimberly Anderson
>GA Bar No. 602807
>Alexander Denton
>GA Bar No. 660632
>Brian E. Lake
>GA Bar No. 575966
>ROBBINS ROSS ALLOY
>BELINFANTE LITTLEFIELD LLC
>500 14th Street NW
>Atlanta, GA 30318
>Telephone: (678) 701-9381
>Facsimile: (404) 856-3250
>vrusso@robbinsfirm.com
>jbelinfante@robbinsfirm.com
>cmiller@robbinsfirm.com
>kanderson@robbinsfirm.com
>adenton@robbinsfirm.com

blake@robbinsfirm.com

*/s/Bryan P. Tyson*
Bryan P. Tyson
GA Bar No. 515411
Bryan F. Jacoutot
Georgia Bar No. 668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678)336-7249
btyson@taylorenglish.com
bjacoutot@taylorenglish.com

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF FILING has been prepared in Times New Roman 14-point, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Bryan P. Tyson*
Bryan P. Tyson
GA Bar No. 515411

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing STATE STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF FILING with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 11th day of July, 2019.

*/s/Bryan P. Tyson*
Bryan P. Tyson
GA Bar No. 515411