# AGREEMENT
## FOR THE CONDUCT OF ELECTIONS
BETWEEN
THE BARTOW COUNTY BOARD OF ELECTIONS AND REGISTRATION,
BARTOW COUNTY, GEORGIA,
and
THE CITY OF KINGSTON.

THIS AGREEMENT is made and entered into by and between the **Bartow County Board of Elections and Registration**, a Board created by Local Act 466 (Ga.L. 1993, p. 5309) to perform the functions of election superintendent for Bartow County (sometimes hereinafter referred to as "**Board**"), **Bartow County, Georgia**, a political subdivision of the State of Georgia ("**County**"), and the **City of Kingston, Georgia**, a municipal corporation chartered under the laws of the State of Georgia (sometimes hereinafter referred to as "**City**"), and is effective as of the date specified herein.

WHEREAS, the Board and the City desire to enter into an Agreement for the Board and its employees to conduct municipal elections for the City; and

WHEREAS, the County and the City desire to enter into an Intergovernmental Agreement relating to the conduct of elections; and

WHEREAS, the Board, County and City have reached a mutual agreement regarding the proposal; and

WHEREAS, the Board's enabling act requires approval of the County for any expenditure of funds; and

WHEREAS, O.C.G.A. § 21-2-45(c) authorizes the City to contract with the Board so that the Board may perform all duties of election superintendent as set forth in Chapter 2 of Title 21, with the exception of qualification of candidates and other statutory duties set forth herein; and

WHEREAS, the Board has reviewed this Agreement and did, at a regular meeting of the Board, authorize its Chairman to execute this Agreement; and

WHEREAS, the Mayor and City Council of Kingston has reviewed this Agreement and did, at a regular meeting of the City Council, authorize its Mayor to execute this Agreement; and

WHEREAS, the Commissioner of Bartow County and did, at a regular meeting of the City Council, authorize the Commissioner to execute this Agreement;

NOW, THEREFORE, for and in consideration of the mutual benefits flowing from one party to the other, the adequacy and sufficiency of which is acknowledged, it is hereby agreed as follows:

1. **Intent/Scope**

   Due to the level of knowledge and expertise required to successfully conduct modern elections, the City has asked to enter into an intergovernmental agreement with the Board to enable the Board to assume the majority of the City's statutory election responsibilities.  It is the intention of the Board to assume all tasks associated with conducting the City's elections starting at the end of the qualifying period and ending with the submission of the results and records to the appropriate entities after the results are canvassed and certified, except as set forth below.

2. **Personnel Policies**

   All staff used to conduct any election for the City will be hired, trained, and managed by Board using their existing personnel policies.  It should be noted that as a general rule, the Board will choose not to hire or appoint existing employees of the City, except under the most dire circumstances, or in the case that the employee in question is on leave from his or her normal duties for the City.

3. **Payment for Services**

   The City will be expected to reimburse the County for the costs that the County incurs while performing the City's statutory obligations, or directly pay such costs to the appropriate entity in place of the Board paying them.  Payments shall be made to the County at the address set forth under Notices, below.  The estimated costs that the City should expect to pay are itemized throughout the document, and summarized in paragraph 14.   Of course, these estimates are for one election, without the inculcation of costs which may be potentially incurred by the City in the case of a Runoff Election, Special Election, Primary (were one to be held) or in the event of judicial action.  The City will be expected to process all timesheets submitted by the Board under the terms of this agreement within thirty days, and will receive an itemized invoice for services rendered as well as other costs incurred by the Board within thirty days of the results of the election being certified which they will also be expected to pay within thirty days.  In the event that the City is unable to pay the full amount of the invoice within thirty days, the Board will be willing to set up a payment schedule with the City.

4. **Statutory Duties Retained by the City**

   The City will retain responsibility for the following duties:

   a. **Qualifying** – Although the Board's staff will be on hand to assist in the Qualifying process by confirming that the potential candidates meet all qualifications relating to Voter Registration, the City will be responsible for the

entire qualifying process for all partisan, non-partisan, as well as write-in candidates as is described in Article 4 of Title 21 of the Official Code of Georgia.

b. **Voter Registration Responsibilities** – Nothing in this agreement removes any of the City's duties as they relate to Voter Registration. The City will still be required to register voters and maintain their Official List of Registered Voters (for example by challenging voters under O.C.G.A. §21-2-228).

c. **Appointment of the Vote Review Panel** – The City will be expected to appoint and coordinate a Vote Review Panel as is described in O.C.G.A. § 21-2-386(a)(6) and O.C.G.A. § 21-2-483(g)(2)(B). This Vote Review Panel will be required to appear in person at the Board's Tabulation Center on Election Night at a time to be determined by the Elections Supervisor and will be expected to remain at the Tabulation Center until released by the Elections Supervisor, or his or her designee.

d. **Changes Covered under Section 5 of the Voting Rights Act of 1965** – The City will retain all responsibility for any changes to locations or practices which are covered by the Voting Rights Act of 1965, including submission of such changes to the United States Department of Justice (DOJ) as required by the Voting Rights Act of 1965. However, the Board will be responsible for submitting the terms of this agreement, as well as any subsequent changes to DOJ for preclearance.

5. **Advertising**
The Board will advertise all of the statutory responsibilities that they are assigned by the City in accordance with the appropriate laws, rules, and judicial rulings as well as their own policies. The actual cost incurred by the Board for any advertising that is deemed necessary by the Board will be included in the final invoice to the City.

6. **Public / Media Inquiries**
The Board will interact with the public as well as the media on all matters relating to the duties that are assigned to the Board as part of this agreement. This includes instances in which the Board initiates such contact out of the belief that public education or outreach on matters relating to elections or voter registration is in the best interest of the City's registered voters.

7. **Preparation Tasks** – The Board will assume for all tasks relating to the preparation for the Election including but not limited to: testing equipment and ballots, training poll workers, packing supplies, etc.

8. **Supplies** – The Board's staff will procure all necessary supplies for the operation of the City's elections. The will be responsible for the actual cost of ballots and postage, as well as a $75 fee for miscellaneous supplies which will be used during the election cycle.

9. **Hold Harmless Board and County** - The City agrees to hold the County and Board harmless for any problems or inconsistencies in the conduct of any election for any reason other than gross negligence on the part of the Board or the Elections Supervisor.

10. **Legal Expenses** – The City will agree to pay any and all legal expenses resulting from any election, primary, runoff or special election conducted by the Board for the City, except in the case of gross negligence on the part of the Board or the Elections Supervisor. Included would be legal expenses for responding to challenges, suits and State Board of Elections reviews.

11. **Equipment** – The equipment to be used in the conduct of City elections will be provided by the Board. It will include components of the voting system which has been approved by the Board, as well as the Georgia Secretary of State's Office to conduct County, State, and Federal Elections, as well as Laptop Computers, and will be allocated at the discretion of the Board's Election Supervisor.

12. **Location of Election Services**
    a. Address of each Facility to be Used
        a. Main Office of the Bartow County Board of Elections and Voter Registration (Board's Office) – 105 N Bartow Street, Cartersville, GA 30120
        b. Bartow County Board of Elections and Voter Registration Voting Machine Storage Building (Old Church) – 10 Elizabeth Street, Cartersville, GA 30120
        c. Cartersville Civic Center (Civic Center) – 435 West Main Street, Cartersville GA 30120
        d. Kingston City Hall (City Hall) – 30 West Main Street, Kingston, GA 30145

    b. **Absentee by Mail**
        a. *Definition* - Absentee by mail is a subset of Absentee Voting in which the elector requests that a ballot be sent to them through the United States Postal Service (USPS) in writing. The signature on the application, as well as the information contained in the application is verified against the information maintained by the Board. If everything matches, and the elector is entitled to vote in the City's Election, he or she will be issued a ballot in accordance with law, rule, and policy. The voted ballot may be returned in person or by other means, and will then be accepted or rejected as is described in O.C.G.A. § 21-2-386 and stored in a secure manner until election night.
        b. *The following locations will be used for this purpose:*

Agreement for Conduct of Elections [4]

      i. The Board's Office will function as the primary location that paper absentee ballots will be requested or issued from, and where they should subsequently be returned to.

      ii. Employees of the Board located at the Civic Center, or City Hall will be unable to accept voted paper absentee ballots except under the circumstances described in O.C.G.A. 21-2-388(1), in which case the ballot will be cancelled and the elector will be allowed to vote in person.

      iii. With any new change in responsibility, there will be those who are confused and make the simple mistake of submitting documentation to the wrong location. The employees of the City who work at City Hall are asked to make every effort to transmit such documentation to the Board's Office in a timely manner. The Election Supervisor will specify how such documentation shall be submitted. In the unfortunate event that the Board is unable to accept the documentation submitted by the City, it shall be the Board's responsibility to contact the applicant or elector in a manner consistent with law, rule, policy, and past practice.

      iv. The Old Church will not be used in this process.

**c. Absentee in Person**

    a. *Definition* – Absentee in Person (now termed Advanced Voting in law) is the procedure set out in O.C.G.A. § 21-2-385(d)(1) by which a qualified elector may cast his or her ballot prior to Election Day. Electors who choose this option must complete both the Application for an Absentee Ballot, as well as the Oath of Absentee Elector. An employee of the Board will then verify the elector's eligibility and issue him or her a Voter Access Card. Such an elector must cast his or her ballot on a DRE Voting Machine and it should be noted that his or her right to vote in the current election cannot be challenged after his or her ballot is cast on the DRE Unit, nor can the ballot be retrieved.

    b. *The following locations will be used for this purpose*:

      i. The Board's Office will begin receiving elector's with the intention of casting absentee ballots in person for the entire "Period of Advanced Voting" described in O.C.G.A. § 21-2-385(d)(1). Electors from any municipality which has entered into an intergovernmental agreement with the Board to conduct their elections will be able to cast an absentee ballot in person at this location.

      ii. City Hall will begin receiving electors with the intention of casting absentee ballots in person beginning the second Monday immediately preceding the election and continue during City Hall's normally

scheduled business hours through the close of business on the following Friday. Only ballots from electors who are entitled to vote in the City's Election will be accepted at this location.

    iii. The Old Church and Civic Center will not be used for this purpose.

**d. Election Day**

    a. *Definition* - Election Day is the day prescribed by the Official Code of Georgia as the Primary, General, Special, or Runoff Election Day. Electors wishing to cast a ballot on this day must go to his or her Election Day Polling Place as the law does not allow ballots to be cast at any other location.

    b. *The following location will be used for this purpose*:

        i. City Hall will be open from 7:00 AM to 7:00 PM (or later) as is prescribed by law.

        ii. The Board's Office will be staffed by the Board's permanent staff for the purpose of supporting the Election.

        iii. The Old Church and Civic Center will not be used for this purpose.

**e. Election Night**

    a. *Definition* – For the purposes of this document, Election Night begins at the closing of the polls on the day prescribed by the Official Code of Georgia as the Primary, General, Special, or Runoff Election Day. It encompasses, but is not limited to, the following activities:

        i. Closing the Polls

        ii. Posting the appropriate documentation at the Poll for public examination

        iii. Returning the required materials to the Old Church. Which materials are required will be determined by the Elections Supervisor.

        iv. Tabulating the Absentee Ballots.

        v. Tabulating the Unofficial and Incomplete Election Results.

        vi. Reporting the Results to the public and media.

        vii. Responding to any Election Day/Night inquiries as is appropriate.

    b. *The following locations will be used for this purpose*:

        i. The Old Church will be the main tabulation center for all results and will contain the Absentee Polling Place. Most employees of the Board will be stationed at this facility. All required materials shall be returned to this location.

        ii. The Board's Office will be staffed by a skeleton crew (the size of which will be determined by the Election Supervisor) and will facilitate Election Night communication.

        iii. City Hall will be staffed by the same employees of the Board as during Election Day. These employees will be responsible for closing the

poll, reporting the Precinct Totals to the public, and returning the required materials to the Old Church in a timely manner.

**f. Canvassing, Computation, and Certification of Returns**

    a. *Definition* – Canvassing begins the morning immediately following Election Day and is the process by which the Board audits all applicable records including, but in no way limited to:

        i. All documentation completed by the employees of the Board whose duties included issuing or accepting ballots or the handling of secure equipment.  For example, this would include all oaths administered and signed for the election.

        ii. Any recapitulation sheets.

        iii. Electronic records of the DRE Units, Express Polls and GEMS Election Server.

        iv. Any documentation completed by an elector while attempting to cast his or her vote.

        v. Any and all other applicable documentation.

If any discrepancy is located during this process, the Election Supervisor is empowered to make an immediate and complete investigation of the circumstances surrounding the discrepancy and shall report his or her findings to the Board at their Certification Meeting.   The Board shall be responsible for taking appropriate action based on the Election Supervisor's findings.

The Certification Meeting will take place in the Old Church at a time to be determined by the Election Supervisor, with the advice of the Board, on the Friday immediately following Election Day.  The Board will then forward all records of the Election to the appropriate parties.

    b. *The following location will be used for this purpose*:

        i. The Old Church will be the sole location for any activity described in this section and will be open to the public while such activity is in progress.

        ii. The Board's Office, Civic Center, and City Hall will not be used for this purpose.

## 13. Staffing and Payroll by Location and Task

**a. Payroll for Board and their Permanent Employees**

During the time that the Board and their permanent employees are preparing for and conducting an Election on behalf of the City, they will be paid through the customary payroll process through the Bartow County Department of Human Resources.  Due to the inherent difficulties of separating the time spent on

different Election tasks between different entities, the City will be expected to reimburse the County for the Board's as well as their permanent employee's time and expertise in the form of a set fee (County Fee).

**b. Board's Office**
  *i. Election Preparation*
    1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
    2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.
  *ii. Absentee By Mail*
    1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
    2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.
  *iii. Absentee In Person*
    1. Staff – A staff of three temporary employees will be hired by the Board to issue and receive absentee ballots in person at this location.
    2. Payroll – As these employees will be shared between all municipalities who have agreements with the Board to conduct their elections, the Board will pay these employees initially and each of the municipalities will be expected to reimburse the Board for their part of this cost. The cost that each municipality will be expected to pay will be determined using the formula
    $$Individual\ Municipal\ Cost =$$
    $$Total\ Personel\ Cost \left( \frac{Number\ of\ Ballots\ Cast\ for\ Municipality}{Total\ \#\ of\ Ballots\ Cast} \right).$$
    Please note that this formula will be used to compute the cost to the municipality of only the staff at this location.
  *iv. Election Day*
    1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
    2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

   v. *Election Night*
   1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
   2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.
   vi. *Computation, Canvassing, and Certification*
   1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
   2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

c. **The Old Church**
   i. *Election Preparation*
   1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
   2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.
   ii. *Election Night*
   1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
   2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.
   iii. *Computation, Canvassing, and Certification*
   1. Staff – Only permanent employees of the Board will be assigned to this process. No temporary staff will be hired to assist with this process.
   2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

d. **City Hall**
   i. *Election Day-Election Night*
   1. Staff – A staff of one Poll Manager earning $200, two Assistant Managers earning $150, and one clerk earning $8.50 per hour.
   2. Payroll – As these employees are working on solely working on behalf of the City, their timesheets will be submitted by the Board to the City for processing and payment.

**14. Cost Estimate Worksheet**

The worksheet below sets forth an estimate of the costs of a single election. Such costs are variable and this is not a maximum price. Such costs would also be incurred for any runoff, special election or primary. The City agrees to pay actual costs of conducting regular elections, primaries, runoffs and special elections on the basis set forth above in the preceding paragraphs.

| Personnel | Amount | Comments |
|---|---|---|
| Absentee in Person (Cartersville) | $300 | |
| Election Day | $619 | |
| Absentee Poll Crew | $50 | |
| Training | $100 | Each worker receives $10 for training |
| **Supplies** | | |
| Postage | $25 | |
| Miscellaneous Supplies | $75 | |
| Ballots | $150 | |
| **County Fee** | $1,000 | |
| **Estimated Total per Election or Runoff** | $2,319 | |

**15. Notices.**

Official notices, payments and correspondence to the County shall be delivered in person or transmitted via U. S. Mail, postage prepaid addressed to the County Administrator of Bartow County at Suite 251, 135 West Cherokee Avenue, Cartersville, Georgia 30120. Official notices and correspondence to the Board shall be delivered in person or transmitted via U. S. Mail, postage prepaid addressed to the Elections Supervisor at Suite 106, 135 West Cherokee Avenue, Cartersville, Georgia 30120. Official notices and correspondence to Kingston shall be delivered in person or transmitted via U.S. Mail postage prepaid, addressed to the City Clerk of Kingston, at P.O. Box 309, Kingston, Georgia 30145.

**16. Effective Date; Term**

*DLB*

This Agreement shall be effective September 9, 2016 or upon the date of the last signature by either party, whichever is later. This Agreement shall expire annually on December 31 of each year and be automatically renewed, for a maximum of ten (10) years. Either party may terminate the agreement at any time, with ninety days written notice.

Agreement for Conduct of Elections [10]

**17. Entire Agreement.**

This Agreement contains all the terms and conditions and represents the entire Agreement between the parties and supersedes any pre-existing Agreement related to the Facility.  Any alteration of this Agreement shall be invalid unless made by an amendment in writing, duly executed by the parties.  There are no understandings, representations, or agreements, written or oral other than those contained in this Agreement.

IN WITNESS WHEREOF, the Board, County and City have caused this Agreement to be duly executed by their proper officers and attested with their corporate seals affixed hereto as set forth in duplicate originals.

Attest:

 

Joseph Kirk, Elections Supervisor

Date: 9/14/16

**BARTOW COUNTY BOARD OF ELECTIONS AND REGISTRATION**

 

Neil Hopper, Chairman

Attest:

 

Kathy Gill, County Clerk

Date: 9/14/2016

**BARTOW COUNTY, GEORGIA**

 

Steve Taylor, Commissioner

Attest:

 

Kelly L. Ensley, City Clerk

Date: Sept 9, 2016

**CITY OF KINGSTON, GA**

 

Michael Abernathy, Mayor Pro Tem

VL/RS unanimous

# AGREEMENT
## FOR THE CONDUCT OF ELECTIONS
BETWEEN
THE BARTOW COUNTY BOARD OF ELECTIONS AND REGISTRATION,
BARTOW COUNTY, GEORGIA,
and
THE CITY OF TAYLORSVILLE.

THIS AGREEMENT is made and entered into by and between the **Bartow County Board of Elections and Registration**, a Board created by Local Act 466 (Ga.L. 1993, p. 5309) to perform the functions of election superintendent for Bartow County (sometimes hereinafter referred to as "Board"), **Bartow County, Georgia**, a political subdivision of the State of Georgia ("**County**"), and the **City of Taylorsville, Georgia**, a municipal corporation chartered under the laws of the State of Georgia (sometimes hereinafter referred to as "**City**"), and is effective as of the date herein specified herein.

WHEREAS, the Board and the City desire to enter into an Agreement for the Board and its employees to conduct municipal elections for the City; and

WHEREAS, the County and the City desire to enter into an Intergovernmental Agreement relating to the conduct of elections; and

WHEREAS, the Board, County and City have reached a mutual agreement regarding the proposal; and

WHEREAS, the Board's enabling act requires approval of the County for any expenditure of funds; and

WHEREAS, O.C.G.A. § 21-2-45(c) authorizes the City to contract with the Board so that the Board may perform all duties of election superintendent as set forth in Chapter 2 of Title 21, with the exception of qualification of candidates and other statutory duties set forth herein; and

WHEREAS, the Board has reviewed this Agreement and did, at a regular meeting of the Board, authorize its Chairman to execute this Agreement; and

WHEREAS, the Mayor and City Council of Taylorsville has reviewed this Agreement and did, at a regular meeting of the City Council, authorize its Mayor to execute this Agreement; and

WHEREAS, the Commissioner of Bartow County and did, at a regular meeting, authorize the Commissioner to execute this Agreement;

NOW, THEREFORE, for and in consideration of the mutual benefits flowing from one party to the other, the adequacy and sufficiency of which is acknowledged, it is hereby agreed as follows:

entire qualifying process for all partisan, non-partisan, as well as write-in candidates as is described in Article 4 of Title 21 of the Official Code of Georgia.

b. **Voter Registration Responsibilities** – Nothing in this agreement removes any of the City's duties as they relate to Voter Registration. The City will still be required to register voters and maintain their Official List of Registered Voters (for example by challenging voters under O.C.G.A. §21-2-228).

c. **Appointment of the Vote Review Panel** – The City will be expected to appoint and coordinate a Vote Review Panel as is described in O.C.G.A. § 21-2-386(a)(6) and O.C.G.A. § 21-2-483(g)(2)(B). This Vote Review Panel will be required to appear in person at the Board's Tabulation Center on Election Night at a time to be determined by the Elections Supervisor and will be expected to remain at the Tabulation Center until released by the Elections Supervisor, or his or her designee.

d. **Changes Covered under Section 5 of the Voting Rights Act of 1965** – The City will retain all responsibility for any changes to locations or practices which are covered by the Voting Rights Act of 1965, including submission of such changes to the United States Department of Justice (DOJ) as required by the Voting Rights Act of 1965. However, the Board will be responsible for submitting the terms of this agreement, as well as any subsequent changes to DOJ for preclearance.

**5. Advertising**

The Board will advertise all of the statutory responsibilities that they are assigned by the City in accordance with the appropriate laws, rules, and judicial rulings as well as their own policies. The actual cost incurred by the Board for any advertising that is deemed necessary by the Board will be included in the final invoice to the City.

**6. Public / Media Inquiries**

The Board will interact with the public as well as the media on all matters relating to the duties that are assigned to the Board as part of this agreement. This includes instances in which the Board initiates such contact out of the belief that public education or outreach on matters relating to elections or voter registration is in the best interest of the City's registered voters.

**7. Preparation Tasks** – The Board will assume for all tasks relating to the preparation for the Election including but not limited to: testing equipment and ballots, training poll workers, packing supplies, etc.

**8. Supplies** – The Board's staff will procure all necessary supplies for the operation of the City's elections. The will be responsible for the actual cost of ballots and postage, as well as a $75 fee for miscellaneous supplies which will be used during the election cycle.

ii.   Employees of the Board located at City Hall will be unable to accept voted paper absentee ballots except under the circumstances described in O.C.G.A. 21-2-388(1), in which case the ballot will be cancelled and the elector will be allowed to vote in person.

iii.  Employees of the Board located at the Civic Center will be unable to accept voted paper ballots.

iv.   With any new change in responsibility, there will be those who are confused and make the simple mistake of submitting documentation to the wrong location.  The employees of the City who work at City Hall are asked to make every effort to transmit such documentation to the Board's Office in a timely manner.  The Election Supervisor will specify how such documentation shall be submitted.  In the unfortunate event that the Board is unable to accept the documentation submitted by the City, it shall be the Board's responsibility to contact the applicant or elector in a manner consistent with law, rule, policy, and past practice.

**c.  Absentee in Person**

a.   *Definition* – Absentee in Person (now termed Advanced Voting in law) is the procedure set out in O.C.G.A. § 21-2-385(d)(1) by which a qualified elector may cast his or her ballot prior to Election Day.  Electors who choose this option must complete both the Application for an Absentee Ballot, as well as the Oath of Absentee Elector.  An employee of the Board will then verify the elector's eligibility and issue him or her a Voter Access Card.  Such an elector must cast his or her ballot on a DRE Voting Machine and it should be noted that his or her right to vote in the current election cannot be challenged after his or her ballot is cast on the DRE Unit, nor can the ballot be retrieved.

b.   *The following locations will be used for this purpose*:

i.   The Board's Office will begin receiving elector's with the intention of casting absentee ballots in person for the entire "Period of Advanced Voting" described in O.C.G.A. § 21-2-385(d)(1).  Electors from any municipality which has entered into an intergovernmental agreement with the Board to conduct their elections will be able to cast an absentee ballot in person at this location.

ii.  The Civic Center and City Hall will not be used for this purpose.

**d.  Election Day**

a.   *Definition* - Election Day is the day prescribed by the Official Code of Georgia as the Primary, General, Special, or Runoff Election Day.  Electors wishing to cast a ballot on this day must go to his or her Election Day Polling Place as the law does not allow ballots to be cast at any other location.

b.   *The following location will be used for this purpose*:

1. **Intent/Scope**
   Due to the level of knowledge and expertise required to successfully conduct modern elections, the City has asked to enter into an intergovernmental agreement with the Board to enable the Board to assume the majority of the City's statutory election responsibilities. It is the intention of the Board to assume all tasks associated with conducting the City's elections starting at the end of the qualifying period and ending with the submission of the results and records to the appropriate entities after the results are canvassed and certified, except as set forth below.

2. **Personnel Policies**
   All staff used to conduct any election for the City will be hired, trained, and managed by Board using their existing personnel policies. It should be noted that as a general rule, the Board will choose not to hire or appoint existing employees of the City, except under the most dire circumstances, or in the case that the employee in question is on leave from his or her normal duties for the City.

3. **Payment for Services**
   The City will be expected to reimburse the County for the costs that the County incurs while performing the City's statutory obligations, or directly pay such costs to the appropriate entity in place of the Board paying them. Payments shall be made to the County at the address set forth under Notices, below. The estimated costs that the City should expect to pay are itemized throughout the document, and summarized in paragraph 14. Of course, these estimates are for one election, without the inculcation of costs which may be potentially incurred by the City in the case of a Runoff Election, Special Election, Primary (were one to be held) or in the event of judicial action. The City will be expected to process all timesheets submitted by the Board under the terms of this agreement within thirty days, and will receive an itemized invoice for services rendered as well as other costs incurred by the Board within thirty days of the results of the election being certified which they will also be expected to pay within thirty days. In the event that the City is unable to pay the full amount of the invoice within thirty days, the Board will be willing to set up a payment schedule with the City.

4. **Statutory Duties Retained by the City**
   The City will retain responsibility for the following duties:
   a. **Qualifying** – Although the Board's staff will be on hand to assist in the Qualifying process by confirming that the potential candidates meet all qualifications relating to Voter Registration, the City will be responsible for the

      iii.  Electronic records of the DRE Units, Express Polls and GEMS Election Server.

      iv.  Any documentation completed by an elector while attempting to cast his or her vote.

      v.  Any and all other applicable documentation.

If any discrepancy is located during this process, the Election Supervisor is empowered to make an immediate and complete investigation of the circumstances surrounding the discrepancy and shall report his or her findings to the Board at their Certification Meeting.   The Board shall be responsible for taking appropriate action based on the Election Supervisor's findings.

The Certification Meeting will take place in the Board's Office at a time to be determined by the Election Supervisor, with the advice of the Board, on the Friday immediately following Election Day.  The Board will then forward all records of the Election to the appropriate parties.

b.  *The following location will be used for this purpose*:

      i.  The Board's Office will be the sole location for any activity described in this section and will be open to the public while such activity is in progress.

      ii.  The Civic Center and City Hall will not be used for this purpose.

## 13. Staffing and Payroll by Location and Task

  **a.  Payroll for Board and their Permanent Employees**

During the time that the Board and their permanent employees are preparing for and conducting an Election on behalf of the City, they will be paid through the customary payroll process through the Bartow County Department of Human Resources.  Due to the inherent difficulties of separating the time spent on different Election tasks between different entities, the City will be expected to reimburse the County for the Board's as well as their permanent employee's time and expertise in the form of a set fee (County Fee).

  **b.  Board's Office**

      i.  *Election Preparation*

          1.  Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.

          2.  Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

      ii.  *Absentee By Mail*

          1.  Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.

9. **Hold Harmless Board and County** - The City agrees to hold the County and Board harmless for any problems or inconsistencies in the conduct of any election for any reason other than gross negligence on the part of the Board or the Elections Supervisor.

10. **Legal Expenses** – The City will agree to pay any and all legal expenses resulting from any election, primary, runoff or special election conducted by the Board for the City, except in the case of gross negligence on the part of the Board or the Elections Supervisor. Included would be legal expenses for responding to challenges, suits and State Board of Elections reviews.

11. **Equipment** – The equipment to be used in the conduct of City elections will be provided by the Board. It will include components of the voting system which has been approved by the Board, as well as the Georgia Secretary of State's Office to conduct County, State, and Federal Elections, as well as Laptop Computers, and will be allocated at the discretion of the Board's Election Supervisor.

12. **Location of Election Services**
   a. Address of each Facility to be Used
      a. Main Office of the Bartow County Board of Elections and Voter Registration (Board's Office) – 1300 Joe Frank Harris Pkwy, Cartersville, GA 30120
      b. Cartersville Civic Center (Civic Center) – 435 West Main Street, Cartersville GA 30120
      c. Taylorsville City Hall (City Hall) – 11 Euharlee St., Taylorsville, GA 30178

   b. **Absentee by Mail**
      a. *Definition* - Absentee by mail is a subset of Absentee Voting in which the elector requests that a ballot be sent to them through the United States Postal Service (USPS) in writing. The signature on the application, as well as the information contained in the application is verified against the information maintained by the Board. If everything matches, and the elector is entitled to vote in the City's Election, he or she will be issued a ballot in accordance with law, rule, and policy. The voted ballot may be returned in person or by other means, and will then be accepted or rejected as is described in O.C.G.A. § 21-2-386 and stored in a secure manner until election night.
      b. *The following locations will be used for this purpose*:
         i. The Board's Office will function as the primary location that paper absentee ballots will be requested or issued from, and where they should subsequently be returned to.

The worksheet below sets forth an estimate of the costs of a single election. Such costs are variable and this is not a maximum price. Such costs would also be incurred for any runoff, special election or primary. The City agrees to pay actual costs of conducting regular elections, primaries, runoffs and special elections on the basis set forth above in the preceding paragraphs.

| Personnel | Amount | Comments |
|---|---|---|
| Absentee in Person | $300 | Estimated using 5% as the percentage |
| Election Day | $619 | |
| Absentee Poll Crew | $50 | |
| Training | $70 | Each worker receives $10 for training |
| | | |
| **Supplies** | | |
| Postage | $25 | |
| Miscellaneous Supplies | $75 | |
| Ballots | $50 | |
| | | |
| **County Fee** | $1,000 | |
| | | |
| **Estimated Total per Election or Runoff** | $2,189 | |

**15. Notices.**
Official notices, payments and correspondence to the County shall be delivered in person or transmitted via U. S. Mail, postage prepaid addressed to the County Administrator of Bartow County at Suite 251, 135 West Cherokee Avenue, Cartersville, Georgia 30120. Official notices and correspondence to the Board shall be delivered in person or transmitted via U. S. Mail, postage prepaid addressed to the Elections Supervisor at Suite 106, 135 West Cherokee Avenue, Cartersville, Georgia 30120. Official notices and correspondence to Taylorsville shall be delivered in person or transmitted via U.S. Mail postage prepaid, addressed to the Mayor of Taylorsville, at P.O. Box 20, Taylorsville, GA 30178.

**16. Effective Date; Term**
This Agreement shall be effective September 1, 2015 or upon the date of the last signature by either party, whichever is later. This Agreement shall expire annually on December 31 of each year and be automatically renewed, for a maximum of six (6) years. Either party may terminate the agreement at any time, with ninety days written notice.

**17. Entire Agreement.**

      i. City Hall will be open from 7:00 AM to 7:00 PM (or later) as is prescribed by law.

      ii. The Board's Office will be staffed by the Board's permanent staff for the purpose of supporting the Election.

      iii. The Civic Center will not be used for this purpose.

**e. Election Night**

  a. *Definition* – For the purposes of this document, Election Night begins at the closing of the polls on the day prescribed by the Official Code of Georgia as the Primary, General, Special, or Runoff Election Day. It encompasses, but is not limited to, the following activities:

      i. Closing the Polls

      ii. Posting the appropriate documentation at the Poll for public examination

      iii. Returning the required materials to the Board's Office. Which materials are required will be determined by the Elections Supervisor.

      iv. Tabulating the Absentee Ballots.

      v. Tabulating the Unofficial and Incomplete Election Results.

      vi. Reporting the Results to the public and media.

      vii. Responding to any Election Day/Night inquiries as is appropriate.

  b. *The following locations will be used for this purpose*:

      i. The Board's Office will be the main tabulation center for all results and will contain the Absentee Polling Place. Most employees of the Board will be stationed at this facility. All required materials shall be returned to this location.

      ii. City Hall will be staffed by the same employees of the Board as during Election Day. These employees will be responsible for closing the poll, reporting the Precinct Totals to the public, and returning the required materials to the Board's Office in a timely manner.

**f. Canvassing, Computation, and Certification of Returns**

  a. *Definition* – Canvassing begins the morning immediately following Election Day and is the process by which the Board audits all applicable records including, but in no way limited to:

      i. All documentation completed by the employees of the Board whose duties included issuing or accepting ballots or the handling of secure equipment. For example, this would include all oaths administered and signed for the election.

      ii. Any recapitulation sheets.

This Agreement contains all the terms and conditions and represents the entire Agreement between the parties and supersedes any pre-existing Agreement related to the Facility. Any alteration of this Agreement shall be invalid unless made by an amendment in writing, duly executed by the parties. There are no understandings, representations, or agreements, written or oral other than those contained in this Agreement.

IN WITNESS WHEREOF, the Board, County and City have caused this Agreement to be duly executed by their proper officers and attested with their corporate seals affixed hereto as set forth in duplicate originals.

**Attest:**

**BARTOW COUNTY BOARD OF ELECTIONS AND REGISTRATION**

Joseph Kirk, Secretary

Neil Hopper, Chairman

Date: July 9, 2015

**Attest:**

**BARTOW COUNTY, GEORGIA**

Kathy Gill, County Clerk

Steve Taylor, Commissioner

Date: 7-24-2015

**Attest:**

**CITY OF TAYLORSVILLE, GA**

City Clerk

Mayor

Date: July 6, 2015

Agreement for Conduct of Elections [10]

    2.   Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

  iii.  *Absentee In Person*

    1.   Staff – A staff of three temporary employees will be hired by the Board to issue and receive absentee ballots in person at the Board's Office.

    2.   Payroll – As these employees will be shared between all municipalities who have agreements with the Board to conduct their elections, the Board will pay these employees initially and each of the municipalities will be expected to reimburse the Board for their part of this cost.  The cost that each municipality will be expected to pay will be determined using the formula:

$$Individual\ Municipal\ Cost =$$
$$Total\ Personel\ Cost \left( \frac{Number\ of\ Ballots\ Cast\ for\ Municipality}{Total\ \#\ of\ Ballots\ Cast} \right).$$

Please note that this formula will be used to compute the cost to the City of only the staff at Board's Office.

  iv.  *Election Day*

    1.   Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.

    2.   Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

  v.  *Election Night*

    1.   Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.

    2.   Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

  vi.  *Computation, Canvassing, and Certification*

    1.   Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.

    2.   Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

**c.  City Hall**

  i.  *Election Day-Election Night*

    1.   Staff – A staff of one Poll Manager earning $200, two Assistant Managers earning $150, and one clerk earning $8.50 per hour.

    2.   Payroll – As these employees are working solely on behalf of the City, their timesheets will be submitted by the Board to the City for processing and payment.

**14. Cost Estimate Worksheet**

**AGREEMENT**
**FOR THE CONDUCT OF ELECTIONS**
BETWEEN
THE BARTOW COUNTY BOARD OF ELECTIONS AND REGISTRATION,
BARTOW COUNTY, GEORGIA,
and
THE CITY OF WHITE.

THIS AGREEMENT is made and entered into by and between the **Bartow County Board of Elections and Registration**, a Board created by Local Act 466 (Ga.L. 1993, p. 5309) to perform the functions of election superintendent for Bartow County (sometimes hereinafter referred to as "Board"), **Bartow County, Georgia**, a political subdivision of the State of Georgia ("County"), and the **City of White, Georgia**, a municipal corporation chartered under the laws of the State of Georgia (sometimes hereinafter referred to as "**City**"), and is effective as of the date specified herein.

WHEREAS, the Board and the City desire to enter into an Agreement for the Board and its employees to conduct municipal elections for the City; and

WHEREAS, the County and the City desire to enter into an Intergovernmental Agreement relating to the conduct of elections; and

WHEREAS, the Board, County and City have reached a mutual agreement regarding the proposal; and

WHEREAS, the Board's enabling act requires approval of the County for any expenditure of funds; and

WHEREAS, O.C.G.A. § 21-2-45(c) authorizes the City to contract with the Board so that the Board may perform all duties of election superintendent as set forth in Chapter 2 of Title 21, with the exception of qualification of candidates and other statutory duties set forth herein; and

WHEREAS, the Board has reviewed this Agreement and did, at a regular meeting of the Board, authorize its Chairman to execute this Agreement; and

WHEREAS, the Mayor and City Council of White has reviewed this Agreement and did, at a regular meeting of the City Council, authorize its Mayor to execute this Agreement; and

WHEREAS, the Commissioner of Bartow County and did, at a regular meeting, authorize the Commissioner to execute this Agreement;

NOW, THEREFORE, for and in consideration of the mutual benefits flowing from one party to the other, the adequacy and sufficiency of which is acknowledged, it is hereby agreed as follows:

1. **Intent/Scope**

   Due to the level of knowledge and expertise required to successfully conduct modern elections, the City has asked to enter into an intergovernmental agreement with the Board to enable the Board to assume the majority of the City's statutory election responsibilities. It is the intention of the Board to assume all tasks associated with conducting the City's elections starting at the end of the qualifying period and ending with the submission of the results and records to the appropriate entities after the results are canvassed and certified, except as set forth below.

2. **Personnel Policies**

   All staff used to conduct any election for the City will be hired, trained, and managed by Board using their existing personnel policies. It should be noted that as a general rule, the Board will choose not to hire or appoint existing employees of the City, except under the most dire circumstances, or in the case that the employee in question is on leave from his or her normal duties for the City.

3. **Payment for Services**

   The City will be expected to reimburse the County for the costs that the County incurs while performing the City's statutory obligations, or directly pay such costs to the appropriate entity in place of the Board paying them. Payments shall be made to the County at the address set forth under Notices, below. The estimated costs that the City should expect to pay are itemized throughout the document, and summarized in paragraph 14. Of course, these estimates are for one election, without the inculcation of costs which may be potentially incurred by the City in the case of a Runoff Election, Special Election, Primary (were one to be held) or in the event of judicial action. The City will receive an itemized invoice for services rendered as well as other costs incurred by the Board within thirty days of the results of the election being certified which they will also be expected to pay within thirty days. In the event that the City is unable to pay the full amount of the invoice within thirty days, the Board will be willing to set up a payment schedule with the City.

4. **Statutory Duties Retained by the City**

   The City will retain responsibility for the following duties:

   a. **Qualifying** – Although the Board's staff will be on hand to assist in the Qualifying process by confirming that the potential candidates meet all qualifications relating to Voter Registration, the City will be responsible for the entire qualifying process for all partisan, non-partisan, as well as write-in candidates as is described in Article 4 of Title 21 of the Official Code of Georgia.

   Agreement for Conduct of Elections [2]

b. **Voter Registration Responsibilities** – Nothing in this agreement removes any of the City's duties as they relate to Voter Registration. The City will still be required to register voters and maintain their Official List of Registered Voters (for example by challenging voters under O.C.G.A. §21-2-228).

c. **Appointment of the Vote Review Panel** – The City will be expected to appoint and coordinate a Vote Review Panel as is described in O.C.G.A. § 21-2-386(a)(6) and O.C.G.A. § 21-2-483(g)(2)(B). This Vote Review Panel will be required to appear in person at the Board's Tabulation Center on Election Night at a time to be determined by the Elections Supervisor and will be expected to remain at the Tabulation Center until released by the Elections Supervisor, or his or her designee.

d. **Changes Covered under Section 5 of the Voting Rights Act of 1965** – The City will retain all responsibility for any changes to locations or practices which are covered by the Voting Rights Act of 1965, including submission of such changes to the United States Department of Justice (DOJ) as required by the Voting Rights Act of 1965. However, the Board will be responsible for submitting the terms of this agreement, as well as any subsequent changes to DOJ for preclearance.

5. **Advertising**

The Board will advertise all of the statutory responsibilities that they are assigned by the City in accordance with the appropriate laws, rules, and judicial rulings as well as their own policies. The actual cost incurred by the Board for any advertising that is deemed necessary by the Board will be included in the final invoice to the City.

6. **Public / Media Inquiries**

The Board will interact with the public as well as the media on all matters relating to the duties that are assigned to the Board as part of this agreement. This includes instances in which the Board initiates such contact out of the belief that public education or outreach on matters relating to elections or voter registration is in the best interest of the City's registered voters.

7. **Preparation Tasks** – The Board will assume for all tasks relating to the preparation for the Election including but not limited to: testing equipment and ballots, training poll workers, packing supplies, etc.

8. **Supplies** – The Board's staff will procure all necessary supplies for the operation of the City's elections. The will be responsible for the actual cost of ballots and postage, as well as a $75 fee for miscellaneous supplies which will be used during the election cycle.

9. **Hold Harmless Board and County** - The City agrees to hold the County and Board harmless for any problems or inconsistencies in the conduct of any election for any reason other than gross negligence on the part of the Board or the Elections Supervisor.

10. **Legal Expenses** – The City will agree to pay any and all legal expenses resulting from any election, primary, runoff or special election conducted by the Board for the City, except in the case of gross negligence on the part of the Board or the Elections Supervisor.  Included would be legal expenses for responding to challenges, suits and State Board of Elections reviews.

11. **Equipment** – The equipment to be used in the conduct of City elections will be provided by the Board.  It will include components of the voting system which has been approved by the Board, as well as the Georgia Secretary of State's Office to conduct County, State, and Federal Elections, as well as Laptop Computers, and will be allocated at the discretion of the Board's Election Supervisor.

12. **Location of Election Services**
    a. Address of each Facility to be Used
        a. Main Office of the Bartow County Board of Elections and Voter Registration (Board's Office) – 1300 Joe Frank Harris Pkwy, Cartersville, GA 30120
        b. Cartersville Civic Center  (Civic Center) –  435 West Main Street, Cartersville GA 30120
        c. White City Hall (City Hall) – 29 West Rocky St., White, GA 30184

    b. **Absentee by Mail**
        a. *Definition* - Absentee by mail is a subset of Absentee Voting in which the elector requests that a ballot be sent to them through the United States Postal Service (USPS) in writing.  The signature on the application, as well as the information contained in the application is verified against the information maintained by the Board.  If everything matches, and the elector is entitled to vote in the City's Election, he or she will be issued a ballot in accordance with law, rule, and policy.  The voted ballot may be returned in person or by other means, and will then be accepted or rejected as is described in O.C.G.A. § 21-2-386 and stored in a secure manner until election night.
        b. *The following locations will be used for this purpose:*
            i. The Board's Office will function as the primary location that paper absentee ballots will be requested or issued from, and where they should subsequently be returned to.
            ii. Employees of the Board located at City Hall will be unable to accept voted paper absentee ballots except under the circumstances described

Agreement for Conduct of Elections [4]

in O.C.G.A. 21-2-388(1), in which case the ballot will be cancelled and the elector will be allowed to vote in person.

   iii.  Employees of the Board located at the Civic Center will be unable to accept voted paper ballots.

   iv.  With any new change in responsibility, there will be those who are confused and make the simple mistake of submitting documentation to the wrong location. The employees of the City who work at City Hall are asked to make every effort to transmit such documentation to the Board's Office in a timely manner. The Election Supervisor will specify how such documentation shall be submitted. In the unfortunate event that the Board is unable to accept the documentation submitted by the City, it shall be the Board's responsibility to contact the applicant or elector in a manner consistent with law, rule, policy, and past practice.

**c.  Absentee in Person**

   a.  *Definition* – Absentee in Person (now termed Advanced Voting in law) is the procedure set out in O.C.G.A. § 21-2-385(d)(1) by which a qualified elector may cast his or her ballot prior to Election Day. Electors who choose this option must complete both the Application for an Absentee Ballot, as well as the Oath of Absentee Elector. An employee of the Board will then verify the elector's eligibility and issue him or her a Voter Access Card. Such an elector must cast his or her ballot on a DRE Voting Machine and it should be noted that his or her right to vote in the current election cannot be challenged after his or her ballot is cast on the DRE Unit, nor can the ballot be retrieved.

   b.  *The following locations will be used for this purpose:*

      i.  The Board's Office will begin receiving elector's with the intention of casting absentee ballots in person for the entire "Period of Advanced Voting" described in O.C.G.A. § 21-2-385(d)(1). Electors from any municipality which has entered into an intergovernmental agreement with the Board to conduct their elections will be able to cast an absentee ballot in person at this location.

     ii.  City Hall will begin receiving electors with the intention of casting absentee ballots in person beginning the Tuesday immediately preceding the election and continuing during City Hall's normally scheduled business hours through the close of business on the following Friday. Only ballots from electors who are entitled to vote in the City's Election will be accepted at this location.

    iii.  The Civic Center will not be used for this purpose.

**d.  Election Day**

Agreement for Conduct of Elections [5]

    a. *Definition* - Election Day is the day prescribed by the Official Code of Georgia as the Primary, General, Special, or Runoff Election Day. Electors wishing to cast a ballot on this day must go to his or her Election Day Polling Place as the law does not allow ballots to be cast at any other location.

    b. *The following location will be used for this purpose*:

        i. City Hall will be open from 7:00 AM to 7:00 PM (or later) as is prescribed by law.

        ii. The Board's Office will be staffed by the Board's permanent staff for the purpose of supporting the Election.

        iii. The Civic Center will not be used for this purpose.

**e. Election Night**

    a. *Definition* – For the purposes of this document, Election Night begins at the closing of the polls on the day prescribed by the Official Code of Georgia as the Primary, General, Special, or Runoff Election Day. It encompasses, but is not limited to, the following activities:

        i. Closing the Polls

        ii. Posting the appropriate documentation at the Poll for public examination

        iii. Returning the required materials to the Board's Office. Which materials are required will be determined by the Elections Supervisor.

        iv. Tabulating the Absentee Ballots.

        v. Tabulating the Unofficial and Incomplete Election Results.

        vi. Reporting the Results to the public and media.

        vii. Responding to any Election Day/Night inquiries as is appropriate.

    b. *The following locations will be used for this purpose*:

        i. The Board's Office will be the main tabulation center for all results and will contain the Absentee Polling Place. Most employees of the Board will be stationed at this facility. All required materials shall be returned to this location.

        ii. City Hall will be staffed by the same employees of the Board as during Election Day. These employees will be responsible for closing the poll, reporting the Precinct Totals to the public, and returning the required materials to the Board's Office in a timely manner.

**f. Canvassing, Computation, and Certification of Returns**

    a. *Definition* – Canvassing begins the morning immediately following Election Day and is the process by which the Board audits all applicable records including, but in no way limited to:

    i. All documentation completed by the employees of the Board whose duties included issuing or accepting ballots or the handling of secure equipment. For example, this would include all oaths administered and signed for the election.

    ii. Any recapitulation sheets.

    iii. Electronic records of the DRE Units, Express Polls and GEMS Election Server.

    iv. Any documentation completed by an elector while attempting to cast his or her vote.

    v. Any and all other applicable documentation.

If any discrepancy is located during this process, the Election Supervisor is empowered to make an immediate and complete investigation of the circumstances surrounding the discrepancy and shall report his or her findings to the Board at their Certification Meeting. The Board shall be responsible for taking appropriate action based on the Election Supervisor's findings.

The Certification Meeting will take place in the Board's Office at a time to be determined by the Election Supervisor, with the advice of the Board, on the Friday immediately following Election Day. The Board will then forward all records of the Election to the appropriate parties.

  b. *The following location will be used for this purpose*:

    i. The Board's Office will be the sole location for any activity described in this section and will be open to the public while such activity is in progress.

    ii. The Civic Center and City Hall will not be used for this purpose.

## 13. Staffing and Payroll by Location and Task

  **a. Payroll for Board and their Permanent Employees**

During the time that the Board and their permanent employees are preparing for and conducting an Election on behalf of the City, they will be paid through the customary payroll process through the Bartow County Department of Human Resources. Due to the inherent difficulties of separating the time spent on different Election tasks between different entities, the City will be expected to reimburse the County for the Board's as well as their permanent employee's time and expertise in the form of a set fee (County Fee).

  **b. Board's Office**

    *i. Election Preparation*

1. Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.
2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

ii. *Absentee By Mail*

1. Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.
2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

iii. *Absentee In Person*

1. Staff – A staff of temporary employees will be hired by the Board to issue and receive absentee ballots in person at the Board's Office.
2. Payroll – As these employees will be shared between all municipalities who have agreements with the Board to conduct their elections, the Board will pay these employees initially and each of the municipalities will be expected to reimburse the Board for their part of this cost. The cost that each municipality will be expected to pay will be determined using the formula:

$$Individual\ Municipal\ Cost =$$
$$Total\ Personel\ Cost \left(\frac{Number\ of\ Ballots\ Cast\ for\ Municipality}{Total\ \#\ of\ Ballots\ Cast}\right).$$

Please note that this formula will be used to compute the cost to the City of only the staff at Board's Office.

iv. *Election Day*

1. Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.
2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

v. *Election Night*

1. Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.
2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

vi. *Computation, Canvassing, and Certification*

1. Staff –Permanent and temporary employees of the Board will be assigned to this process at the Election Supervisor's discretion.
2. Payroll – The City will reimburse the Board for time spent on this process through the County Fee.

c. **City Hall**

i. *Absentee In Person*

1. Staff – A staff of one Poll Manager earning $150 per day, two Assistant Managers earning $120 per day, and one clerk earning $12.00 per hour with an upper limit of 40 hours.
2. Payroll – The City will reimburse the Board for actual cost of these employees.

ii. *Election Day-Election Night*
1. Staff – A staff of one Poll Manager earning $250, two Assistant Managers earning $200, and one clerk earning $12.00 per hour.
2. Payroll – The City will reimburse the Board for actual cost of these employees.

## 14. Cost Estimate Worksheet

The worksheet below sets forth an estimate of the costs of a single election. Such costs are variable and this is not a maximum price. Such costs would also be incurred for any runoff, special election or primary. The City agrees to pay actual costs of conducting regular elections, primaries, runoffs and special elections on the basis set forth above in the preceding paragraphs.

| Personnel | Amount | Comments |
|---|---|---|
| Absentee in Person (Board's Office) | $300 | Estimated using 5% as the percentage |
| Absentee in Person (White) | $2,430 | |
| Election Day | $818 | |
| Absentee Poll Crew | $50 | |
| Training | $300 | Each worker receives approximately $30 for training |
| **Supplies** | | |
| Postage | $15 | |
| Miscellaneous Supplies | $75 | |
| Ballots | $50 | |
| **County Fee** | $1,000 | |
| **Estimated Total per Election or Runoff** | $5,038 | |

## 15. Notices.

Official notices, payments and correspondence to the County shall be delivered in person or transmitted via U. S. Mail, postage prepaid addressed to the County Administrator of Bartow County at Suite 251, 135 West Cherokee Avenue, Cartersville, Georgia 30120. Official notices and correspondence to the Board shall be delivered in person or

transmitted via U. S. Mail, postage prepaid addressed to the Elections Supervisor at Suite 106, 135 West Cherokee Avenue, Cartersville, Georgia 30120. Official notices and correspondence to White shall be delivered in person or transmitted via U.S. Mail postage prepaid, addressed to the City Manager of the City of White, at P.O. Box 116, White, GA 30184.

**16. Effective Date; Term**

This Agreement shall be effective September 13, 2017 or upon the date of the last signature by either party, whichever is later.  This Agreement shall expire annually on December 31 of each year and be automatically renewed, for a maximum of six (6) years. Either party may terminate the agreement at any time, with ninety days written notice.

**17. Entire Agreement.**

This Agreement contains all the terms and conditions and represents the entire Agreement between the parties and supersedes any pre-existing Agreement related to the Facility.  Any alteration of this Agreement shall be invalid unless made by an amendment in writing, duly executed by the parties.  There are no understandings, representations, or agreements, written or oral other than those contained in this Agreement.

IN WITNESS WHEREOF, the Board, County and City have caused this Agreement to be duly executed by their proper officers and attested with their corporate seals affixed hereto as set forth in duplicate originals.

Attest:

Joseph Kirk, Secretary

Date: 5/18/17

**BARTOW COUNTY BOARD OF ELECTIONS AND REGISTRATION**

Neil Hopper, Chairman

Attest:

Kathy Gill, County Clerk

Date: 9/13/2017

**BARTOW COUNTY, GEORGIA**

Steve Taylor, Commissioner

Agreement for Conduct of Elections [10]

Attest:

CITY OF WHITE, GA

City Clerk

Mayor

Date: 9-5-19

Agreement for Conduct of Elections [11]