**MORRISON | FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

July 23, 2019

Writer's Direct Contact
+1 (202) 887.8795
DCross@mofo.com

**VIA CM/ECF FILING**

Hon. Amy Totenberg
2388 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

Re:   *Curling v. Raffensperger*, No. 1:17-cv-02989-AT

Dear Judge Totenberg:

We write in response to your July 22, 2019 Order directing Curling Plaintiffs to clarify whether their requested injunction would apply to direct-recording electronic voting machines (DREs) to be used in the September 2019 Fulton County/Atlanta Public School Board elections. Curling Plaintiffs seek to have their requested relief apply to all upcoming elections, including the September 2019 Fulton County/Atlanta Public School elections.

Curling Plaintiffs seek to have DREs enjoined from use in any future election for any purpose. Curling Plaintiffs further ask that the Court order State Defendants to implement a hand-marked paper ballot system for any future election. To be abundantly clear, Curling Plaintiffs contend—and have long maintained, consistent with the virtually unanimous consensus among election security and integrity experts (State Defendants' expert, Dr. Michael Shamos, being the only identified exception)—that hand-marked paper ballots are the only reliable means of voting given the ongoing threats to elections in Georgia and across the country and given reliability concerns with DREs even apart from infiltration vulnerabilities. Curling Plaintiffs propose the option of appropriate ballot-marking devices (BMDs) for disabled voters who cannot hand-mark paper ballots, also for all future elections; but any such BMDs must comply with all applicable laws, including the United States constitution. This prohibits, just by way of example, BMDs that include a bar code, QR code, or other text that is not readily readable by voters, because—just as Dr. Shamos agreed during his recent deposition—such voting equipment and corresponding ballots are not reliable.

Curling Plaintiffs contend that BMDs—of any type—are no substitute for hand-marked paper ballots, except potentially for those voters whose disabilities prevent them from hand-marking paper ballots. Curling Plaintiffs submit that this request is feasible, particularly because the relief leverages specific—but certainly not all—of the State of Georgia's legally-mandated and promised implementation of a statewide election system that uses paper ballots. Specifically, Curling Plaintiffs' requested relief leverages the use of in-precinct scanners, paper ballots, an election management system that replaces GEMS and works with paper ballots (specifically, hand-marked paper ballots), as well as appropriate BMDs for those voters

**MORRISON | FOERSTER**

(Addressees) clerk of court
July 23, 2019
Page Two

with disabilities who require such an option. Curling Plaintiffs' position and requested relief should not be mistaken as any broad or general endorsement of State Defendants' forthcoming "paper ballot based election system" or of inappropriate, unreliable BMDs or other equipment.

Curling Plaintiffs' requested relief is also easier to implement than the system the State is rolling out, because it would not require the use of BMDs for all voters—and in fact would expressly prohibit that as unlawful. Instead, the State need only procure enough BMDs to meet the requirements of the Help America Vote Act (i.e., at least one accessible voting system for persons with disabilities in each polling place). Finally, because the September 2019 Fulton County/Atlanta Public School elections would involve only one county (albeit a significant one), it would require implementation of Curling Plaintiffs' requested relief on a limited scale in advance of a full implementation across the counties and municipalities that will have elections in November.

Curling Plaintiffs note that they moved for a preliminary injunction in May 2019, and the upcoming hearing on that motion was scheduled at the end of July, in part, to satisfy scheduling concerns of other parties. During a May 31, 2019 scheduling conference, the Court expressed some concern with the feasibility of addressing the September elections. Therefore, Curling Plaintiffs' Reply brief focused on the upcoming November elections and all subsequent elections as critically important for the relief sought. Nonetheless, Curling Plaintiffs maintain that the requested relief is feasible for any elections to be held in September and later.

Respectfully,

*/s/ David D. Cross*

David D. Cross

cc: All Counsel of Record (via CM/ECF filing)