**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> FILE NO. 1:17-cv-2989-AT |

**DECLARATION OF JAMES E. ELLIOTT, JR.**

Pursuant to 28 U.S.C. § 1746, I, James E. Elliott, Jr., make the following declaration:

1.

My name is James E. Elliott, Jr., I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. This declaration is based on my personal knowledge.

2.

I obtained a Juris Doctor from the Mercer University School of Law in 1982 and hold a Bachelor of Science degree in Industrial Management from the Georgia Institute of Technology.

3.

In May of 2019, I announced my retirement as City Attorney for Warner Robins, Georgia after over 34 years of service in that role. I am continuing to advise the City until a permanent replacement is named. As City Attorney, I advise the City Officials on all legal matters as General Counsel, including zoning, licensing, and elections issues. I previously served as a Board Member for the Georgia Municipal Association from 1994-2008.

4.

I am also an adjunct faculty member at the Mercer University School of Law, a position I have held since 2005. In that role, I teach courses on local government law.

5.

Municipalities have significant flexibility in determining a manner to conduct elections under Georgia law. While the separate Municipal Elections Code was repealed January 1, 1999, many aspects of that Code remain in effect. First, all municipal general elections are held in odd-numbered years. O.C.G.A. § 21-2-9(c). Second, municipalities can conduct their own elections or contract with counties to conduct their elections. *See* O.C.G.A. § 21-2-70.1; O.C.G.A. § 21-2-45(c). For those that conduct their own elections, cities are authorized to use a variety of

voting methods including paper ballots (both hand-counted and scanned), lever machines, and DREs that are owned by the cities. This is different from when a county conducts an election or when a county conducts an election for a municipality, in such instances the County must use DREs. O.C.G.A. § 21-2-300.

6.

In Warner Robins, for example, the City conducts its own elections. We utilize DREs to conduct municipal elections for our approximately 40,000 registered voters. Warner Robins contracts with the Houston County Board of Elections for the use of the DREs and further contracts with Election Systems & Software for purposes technical support. Warner Robins currently has municipal elections scheduled for November 5, 2019.

7.

When conducting their own elections, Georgia municipalities are generally responsible for all aspects of an election, other than voter registration, including the call of an election, qualifying of candidates, early and absentee voting, election day voting, and tabulation and certification of results.

8.

Under Georgia law, a municipality must provide public notice of a municipal election, and notify the Secretary of State of the election, at least thirty

days prior to the election. O.C.G.A. § 21-2-9(c). Qualifying for municipal offices is also subject to different requirements, the qualifying period for election to both partisan nonpartisan municipal offices is statutorily required to last between three and five days beginning no earlier than the third Monday in August immediately preceding the election and ending no later than the following Friday and is conducted by the municipal elections superintendent. O.C.G.A. § 21-2-132(c)(3)(A) (nonpartisan); O.C.G.A. § 21-2-132(d)(4) (partisan). This is different than the statutorily mandated qualifying period for candidates for U.S. Senate, House of Representatives, and state or county office which must be held from 9:00 A.M. Monday through 12:00 Noon Friday of the thirty-fifth week preceding the election. O.C.G.A. § 21-2-132(d)(2), (3).

9.

Municipalities are subject to the general time periods for mail-in and early absentee voting. Municipalities are, however, authorized to appoint an absentee ballot clerk that may be the County Registrar—regardless of if the County is conducting the election—or any other official. O.C.G.A. § 21-2-380.1. A voter may request a mail-in absentee ballot applications beginning 180 days prior to an election, O.C.G.A. § 21-2-381, and early in-person absentee voting begins the fourth Monday prior to any election. O.C.G.A. § 21-2-385(d). For any 2019

elections, early in-person voting would begin October 14, 2019, as would the mailing of absentee ballots. O.C.G.A. § 21-2-385(d)(1); O.C.G.A. § 21-2-384. For any jurisdiction (including municipalities) using DRE voting machines on election day, DREs must also be utilized for early voting. O.C.G.A. § 21-2-383.

10.

On election day, the municipalities who run their own elections are responsible for the entire conduct of elections. They are also responsible for hiring and training workers to assist in their election day duties. O.C.G.A. § 21-2-99. Similarly, the City Clerk is separately required to maintain documentation or electronic media related to any municipal election. O.C.G.A. § 21-2-500. Finally, the municipal superintendent is responsible for consolidating returns of a municipal election conducted by that municipality. The Municipal Superintendent certifies the consolidated results and then files the returns with the Secretary of State. O.C.G.A. § 21-2-497.

11.

In sum, municipal elections are unique compared to other elections in the Georgia Election Code and municipalities retain a significant degree of freedom in how they conduct those elections. Based on the framework of the law surrounding municipal elections, it is unclear how various municipalities may be affected by the

relief requested by Plaintiffs in this case. Counties that conduct municipal elections may void or otherwise exit their agreements with cities, leaving municipalities to scramble to conduct their own elections. On the other hand, municipalities who utilize hand-counted paper ballots, optical scanning equipment that may not conform with the relief requested, or that conduct their own elections on DREs would also have to figure out a way to adopt the proposed replacement or continue to conduct elections as they have in the past.

12.

In light of the statutory responsibilities of municipal election superintendents, relief of this magnitude could cause significant confusion among superintendents and the public with about two months left to prepare for early voting. And, regardless of the potential confusion, the legal framework of municipal elections makes it unclear how to properly craft the relief requested by Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of July, 2019.

_____
James E. Elliott, Jr.