IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

**PLAINTIFFS' OBJECTION TO
REMOTE TESTIMONY BY DR. MICHAEL SHAMOS**

State Defendants once again are attempting to renege on an agreement, this time one that was reached at their insistence regarding the testimony of their expert, Dr. Michael Shamos. Because they refused to produce him for examination at the July 25-26 hearing, Plaintiffs agreed—on July 11—to a *de bene esse* deposition in Atlanta on July 19 so the Court would have video-recorded testimony to evaluate him as a critical witness in these proceedings. State Defendants themselves confirmed that "the purpose of the deposition would be to preserve his testimony" for the hearing. (Exhibit A.) They should be held to that agreement.

State Defendants also cannot satisfy their very high burden under Rule 43 to establish "good cause in compelling circumstances and with appropriate safeguards" for remote testimony for such an important witness as their own computer science

expert. Not only did they engage Dr. Shamos (the timing of which they obscured in their initial disclosures) as their testifying expert regarding the preliminary injunction motions knowing he was unavailable to testify at the hearing on those motions, but they had a full and fair opportunity to preserve any examination for the Court at his deposition, as they agreed was the purpose. Now, they seek to exploit that compromise by having the benefit of preparing his direct testimony *after* he has been cross examined. And remote means would impede further cross examination, especially using exhibits—meaning, State Defendants could mold a direct examination with the benefit of cross examination and leave Plaintiffs with little meaningful opportunity to effectively examine him based on that direct examination.

The Court should hold State Defendants to their agreement and restrict Dr. Shamos testimony in court to his video-recorded deposition.

## ARGUMENT

### I. State Defendants Agreed to a *De Bene Esse* Deposition of Dr. Shamos "to Preserve His Testimony" for the Hearing

On June 24, 2019, State Defendants filed initial disclosures in which they represented: "State Defendants have not engaged any expert witnesses for this litigation to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence at this time." (Dkt. No. 427 at 6 (State Defendants' Initial Disclosures).) But that *very same day*, they executed a new engagement letter with Dr. Shamos

2

specifically to serve as their testifying expert in this case.[1]  (Ex. B, STATE-DEFENDANTS-00004440 (State Defendants June 24 Executed Retention Letter with Dr. Michael Shamos).)  Moreover, State Defendants already had engaged Dr. Shamos nearly two years ago, on December 23, 2017.  (Ex. C, STATE-DEFENDANTS-00004446.)  Thus, there appears to be no good faith basis for their representation to the Court and Plaintiffs in their initial disclosures that they did not yet have a testifying expert for this case.

When State Defendants finally did disclose him in supplemental initial disclosures, they explicitly stated that he "may be called to testify at the hearing on Plaintiffs' motions for preliminary injunction or *alternatively to offer video deposition testimony if a scheduling conflict is not resolved*."  (Dkt. No. 433 at 6 (State Defendants' Supplemental Initial Disclosures).)  Thus, even from the start,

---

[1] Dr. Shamos' June 24, 2019 engagement letter also includes a July 9 date in the header, but this is because of the improper way State Defendants produced documents in this case.  The date by his signature is June 24, and he acknowledged that the he was re-engaged in June. (Ex. D, Shamos Tr. at 202:4-22.)  July 9 was apparently the date State Defendants processed the June 24 engagement letter in discovery.  Apparently, State Defendants did not take usual and necessary steps during collection and production of documents to avoid altering the substance with things like auto-updating date fields.  Unfortunately, State Defendants' document productions—paltry as they are, totaling fewer than 150 documents since the requests were served on June 3, 2019 and excluding important categories of documents, such as any internal emails—have been a mess and have involved considerable wasted time and money to address.

State Defendants' own position was that he would testify for purposes of the preliminary injunction motions either live in court or by video deposition—not by telephone or Skype or otherwise remotely. (*Id.* at 6.) State Defendants did not even raise—much less preserve—the latter possibility, even though they knew he was unavailable for the already-scheduled hearing.

When Plaintiffs initially considered taking a discovery deposition of Dr. Shamos, they requested his availability for that. State Defendants initially claimed that Dr. Shamos would not travel for depositions, though, and insisted he be deposed in Pittsburgh, Pennsylvania. They subsequently reported that Dr. Shamos would not appear to testify at the preliminary injunction hearing because he had a previously-scheduled vacation—which they knew about when they decided to rely on his testimony for the motions to be heard in that hearing. Plaintiffs informed State Defendants they did not intend to take a discovery deposition of Dr. Shamos before the hearing and instead would simply cross examine him at the hearing itself. State Defendants suggested postponing the hearing or extending it to allow Dr. Shamos to testify live in the courtroom—Plaintiffs objected given the time sensitivity of the proceedings and the upcoming elections this year.

The parties ultimately compromised, agreeing on a *de bene esse* deposition in lieu of live testimony (remote or otherwise). The purpose of that deposition is

beyond dispute. State Defendants' counsel, on July 11, expressly confirmed that "'"the purpose of the deposition would be to preserve his testimony" for the hearing. (Exhibit A.) They even indicated they would serve their own notice for the deposition given its express purpose and the need for both sides to notice the deposition since both intended to examine him in the deposition. (*Id.*) State Defendants again confirmed at the beginning of Dr. Shamos' deposition, on the record, that "[t]he deposition was noticed as a de bene esse deposition." (Ex. D, Shamos Tr. at 7:13-22.) They cannot now abandon that agreement and present his testimony live at the hearing by remote means.

State Defendants, for reasons never explained, decided to reverse course and *not* notice Dr. Shamos' deposition as originally indicated. Likewise, they decided not to conduct any direct examination of him in the deposition. Instead, they decided to rely solely on his written declaration (Dkt. No. 472-1) as his direct testimony for the hearing. They explicitly confirmed this at the start of his deposition: "So to the extent that the deposition is outside the scope of *Dr. Shamos' declaration, which is his direct testimony for purposes of this*, we do object to that." (Ex. D, Shamos Tr. at 7:13-22.) Curling Plaintiffs proceeded with their cross examination specifically regarding his declaration, forgoing the sort of searching examination that they would have conducted in a discovery deposition to prepare for cross examination at the

5

hearing. Just as State Defendants expressly acknowledged at the start of Dr. Shamos' *de bene esse* deposition, his direct testimony resides in his declaration and his cross examination, along with State Defendants' redirect examination, resides in his video-recorded and transcribed deposition. Per the parties' unambiguous agreement, that is the sum total of his testimony for purposes of the pending preliminary injunction motions.

On July 23, State Defendants provided the Court's clerk, Ms. Cole, with a July 18 email that they characterized as "the last email exchange we have on July 18 between counsel (the day before Dr. Shamos' video deposition) where counsel for State Defendants specifically indicated there was not a waiver of the Skype or phone options for Dr. Shamos to testify." (Exhibits E, F) This was, at best, misleading. What they omitted is *why* the parties were deposing Dr. Shamos the *very next day* in Atlanta and the critical July 11 email from a full week earlier where they expressly agreed "that the purpose of the deposition would be to preserve his testimony" for the hearing, since he was unavailable to testify live. State Defendants' attempted reversal the afternoon before his deposition in a self-serving email stating that they were not waiving a right to present his testimony remotely at the hearing ignores the agreement a week earlier to a *de bene esse* deposition that was explicitly intended to resolve the dispute over remote testimony by affording both sides an opportunity "to

preserve his testimony" for the hearing in a form that would enable the Court to evaluate him as a witness. Plaintiffs' counsel and expert, Dr. Alex Halderman, relied on that agreement to travel to Atlanta at considerable inconvenience and expense during a very busy time in this case.

State Defendants should be held to their agreement. That agreement cannot unilaterally be undone by a self-serving email sent a week later, the afternoon before the agreed-upon *de bene esse* deposition, when Plaintiffs' counsel already was en route to Atlanta for that very purpose. *See Eslava v. Gulf Tel. Co.*, No. 04-00297-KD-B, 2007 WL 9717308, at *3 (S.D. Ala. July 12, 2007) (noting that the parties had reached a discovery agreement and enforcing the agreement).

**II.   State Defendants Cannot Meet Their Very High Burden under Rule 43**

State Defendants face a very high burden to establish "good cause in compelling circumstances and with appropriate safeguards" to ensure effective examination by both sides during the hearing. Fed. R. Civ. P. 43(a). They have made no effort to satisfy this burden, despite Plaintiffs' repeated objections to remote testimony. In fact, they cannot meet this burden for a variety of reasons.

First, mere inconvenience is not enough to satisfy Rule 43. Plaintiffs are sympathetic with Dr. Shamos' family vacation, but he agreed to provide expert testimony on one of the most critical issues in this case: "security of Georgia's

voting system." (Dkt. No. 433 at 6.) Many witnesses have been required to postpone or forgo vacations over the years to testify live at a hearing or trial. And this Court has emphasized the important public interest in this particular case. The inconvenience of postponing or forgoing a single day (or even all) of a family vacation does not satisfy the very high threshold under Rule 43(a). In *Flame S.A. v. Industrial Carriers, Inc.*, No. 2:13-cv-658, 2014 WL 4181958 (E.D. Va. Aug. 21, 2014), for example, the court denied a request for remote testimony from Odessa, Ukraine, on far more compelling grounds, namely that the witness was "a junior lieutenant in the Ukrainian military, [] subject to a draft notice which obligates him to report for duty within twelve (12) hours of receiving notice of his conscription." *Id.* at *1. In denying the request, the court emphasized the importance of in-court testimony:

> The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

*Id.* (quoting Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment). State Defendants have claimed nothing more than inconvenience, falling short of their high burden.

8

Second, State Defendants knew when they engaged Dr. Shamos to provide testimony for the preliminary injunction motions that he was not available to defend his declaration or otherwise testify live in Court. This alone disposes of their request under Rule 43(a). As the court explained in *Flame S.A.*:

> The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness…. A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances.

*Id.* *1-2 (quoting Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment). The reason State Defendants offer was far from unexpected or unforeseeable—it was entirely known to them from the start. Dr. Shamos could have declined the engagement for the hearing in light of his conflict, or State Defendants themselves could have found an available expert. Instead, they both decided to submit his testimony in a declaration knowing he would not be available to defend it at the already-scheduled hearing.

Third, State Defendants offer no reason why the previously-agreed-upon and already-completed video-recorded deposition of Dr. Shamos is not sufficient for the very purpose they agreed to conduct it: "to preserve his testimony" for the hearing. In fact, it is a far superior means of presenting his testimony in court than remote examination by phone or Skype. In *Flame S.A.*, the court emphasized this:

9

> Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses.  Deposition procedures ensure the opportunity of all parties to be represented while the witness is testifying.

*Id.* at *1 (quoting Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment).  State Defendants cannot now reasonably claim the video-recorded deposition is inadequate not only because they agreed to it, but they themselves offered that same means for his hearing testimony in their Supplemental Initial Disclosures, conceding its adequacy and propriety. (Dkt. No. 433 at 6.)  Moreover, they had a full and fair opportunity to do as much redirect during the deposition as they deemed necessary.  That they apparently wish they had asked additional questions does not satisfy Rule 43(a)—especially since it would compound the prejudice to Plaintiffs.  Neither side gets a second bite at the apple on examining witnesses once they are off the stand—we live with the decisions made and the questions asked in the moment, as with any trial or evidentiary hearing.  Allowing State Defendants to ask questions they now wish they had asked in the *de bene esse* deposition when they had the same opportunity as Plaintiffs would be highly unfair and put Dr. Shamos in a position unlike any other witness.

Fourth, State Defendants similarly offer no reason why Dr. Shamos' declaration is inadequate for his direct testimony. They explicitly acknowledged the opposite at the start of his *de bene esse* deposition. (Ex. D, Shamos Tr. at 7:13-22.)

Fifth, Dr. Shamos is not a marginal witness here. He is a very important witness given he addresses the key issue of the "security of Georgia's voting system." This too disposes of State Defendants' request. *Flame S.A.*, 2014 WL 4181958, at *2 (finding the witness's "central role is all the more reason to have him testify in court before 'the presence of the factfinder [which] may exert [its] force for truthtelling'" and that "[t]his exerted force is particularly important given the allegations here and the seemingly critical role" the witness had).

Finally, allowing State Defendants to renege on their agreement and present direct testimony now would be highly prejudicial and run afoul of Rule 43(a)'s requirement of "appropriate safeguards" for effective examination by both sides and reliable testimony from Dr. Shamos. In *Flame S.A.*, the court was "not convinced that the appropriate safeguards would be in place to ensure that any testimony given was unfiltered or otherwise uninfluenced." *Id.* at *3. The court "want[ed] to ensure complete and accurate testimony is made before it so that the Court can perform its judicial duty." *Id.* Here, State Defendants expressly indicated that they also would notice Dr. Shamos' deposition since the purpose "was to preserve his testimony" for

the hearing. They then decided to abandon that and forgo any live direct examination, instead relying solely on his declaration—as they expressly confirmed at the start of his deposition. Plaintiffs cross examined him without the benefit of what he might say in live direct testimony. State Defendants now seek to exploit the parties' compromise by offering live direct testimony by remote means *after* the benefit of seeing Plaintiffs' cross examination and thus being able to prepare his testimony accordingly. This is even worse than the concern the court expressed in *Flame S.A.* about influencing the witness's testimony because there no cross examination had occurred yet. State Defendants should not be allowed to exploit a situation they knowingly created from the start by abandoning an agreement and influencing his testimony with the benefit of Plaintiffs' cross examination.

## CONCLUSION

The parties reached an unambiguous agreement, consistent with what State Defendants themselves offered in their initial disclosures as the "alternative" to in-court testimony for Dr. Shamos: a video-recorded deposition. Plaintiffs adhered to that agreement at considerable cost and inconvenience, including traveling to Atlanta with their expert, at an otherwise very busy time in this case. That State Defendants subsequently reversed course and decided to forgo live direct—instead offering his declaration for that purpose—and now seek to reverse course yet again

with live direct at the hearing by phone or Skype does not release them from the agreement the parties reach and effectuated.  Nor does a self-serving email sent the afternoon before the deposition claiming no waiver of a "right" involving a dispute the agreement reached a *week earlier* was intended to—and did—resolve.

And that the only expert State Defendants could find for their defense is someone they knew would be unavailable for the hearing says everything about the weakness of their positions in this case.  As does the fact that the Court did not hear from Dr. Shamos for last year's preliminary injunction motions, even though he was first retained in 2017.

The Court should hold State Defendants to the agreement and avoid further prejudice to Plaintiffs by the unreasonable request they have made.

Respectfully submitted this 24th day of July, 2019.

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| John P. Carlin (*pro hac vice*) | GA Bar No. 425320 |
| Jane P. Bentrott (*pro hac vice*) | Adam M. Sparks |
| Catherine L. Chapple (*pro hac vice*) | GA Bar No. 341578 |
| Robert W. Manoso (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2000 Pennsylvania Avenue, NW | Suite 3250 |
| Suite 6000 | Atlanta, GA 30309 |
| Washington, DC 20006 | (404) 888-9700 |
| (202) 887-1500 | |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

<div style="display: flex;">

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III
Admitted Pro Hac Vice
  (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

</div>

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

*/s/ David Brody*
David Brody
John Powers
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

*Counsel for Coalition Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                            */s/ David D. Cross*
                                            David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2019, a copy of the foregoing Curling Plaintiffs' Objection to Remote Testimony by Dr. Michael Shamos was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record

                                            */s/ David D. Cross*
                                            David D. Cross