IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*<br><br>    *Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:17-cv-2989-AT |

## STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO REMOTE TESTIMONY BY DR. MICHAEL SHAMOS

State Defendants' position on the need for Dr. Shamos's live testimony has remained consistent and is reflected in multiple communications and conferences with the Court. The question before the Court is a simple one and should not be clouded by opposing counsel's repeated and false personal attacks against State Defendants and their counsel. At the end of the day, Dr. Shamos remains available for testimony, and State Defendants prefer to call him for live testimony. This will not prejudice Plaintiffs in the slightest. Unlike State Defendants, Plaintiffs had sufficient documents and opportunity to spend hours deposing an expert witness. There is zero harm in allowing them to do so again in a manner that affords the Court an opportunity to make judicial inquiries as well. Recognizing this, Plaintiffs claim an agreement was reached to preclude Dr. Shamos from testifying.

As demonstrated by Plaintiffs' own evidence, this is false. Lacking any prejudice or evidence of an agreement, this Court should permit Dr. Shamos to testify for the benefit of the Court, particularly given the extreme relief that Plaintiffs seek to impose on non-party municipalities and counties.

**I.       State Defendants Repeatedly Indicated Their Preference Was For Dr. Shamos to Testify by Video or Telephone at the Preliminary Injunction Hearing.**

In their Objection, Plaintiffs repeatedly assert that State Defendants were "refus[ing] to produce" Dr. Shamos for examination and never intended to call Dr. Shamos by telephone or video. [Doc. 482]. This is contrary to the explanation by State Defendants' counsel to the Court on July 11, 2018 discussing having Dr. Shamos available by telephone or video conference:

> One suggestion would be a video deposition, although the deposition would be prior to many additional supplemental declarations of plaintiffs' experts **and then – if you have questions, then have him available by phone for additional questions or video conference so that way we can kind of cut down on some of the time**.

[Doc. 482 at T-32:20-25] (emphasis added).

Plaintiffs further point to State Defendants' identification of Dr. Shamos as an expert even though State Defendants knew of his unavailability as additional grounds to prevent State Defendants from using alternative, regularly-used

-2-

courtroom technology to provide rebuttal testimony.[1]  As this Court recognized, the type of expertise needed to provide testimony (i.e., expertise in election security) in this case is a highly-specialized field with a limited number of experts.[2] [Doc. 482 at T-34:1-5.]  Moreover, the upcoming hearing is not trial, but a hearing on Plaintiffs' **second** attempt to obtain a preliminary injunction.  Given the expedited timeline inherent in any preliminary injunction and the limited experts in election security, State Defendants had little choice but to offer this Court alternative methods to consider their expert's testimony and repeatedly made clear that they intended to have Dr. Shamos available to testify by telephone or video conference during the upcoming hearing.

---

[1] Plaintiffs take issue with State Defendants' Supplemental Initial Disclosures listing Dr. Shamos as an expert, claiming he should have been disclosed earlier and citing an engagement letter from prior counsel.  Plaintiffs ignore that the engagement with prior counsel was **for consulting purposes only under Fed. R. Civ. P. 26(a)(2)(B)**.  State Defendants were under no obligation to disclose Dr. Shamos until he was later retained for testimony purposes as indicated by State Defendants' supplemental disclosures. [Doc. 433.] Plaintiffs conveniently omit the fact that Curling Plaintiffs failed to disclose additional experts until the day of their reply brief (leaving State Defendants no opportunity to respond) [Doc. 504] and Coalition Plaintiffs filed initial disclosures on July 3, 2019—nine (9) days late [Doc. 448].

[2] Plaintiffs' experts know Dr. Shamos very well from past litigation.  And, it makes no sense that State Defendants would hire an expert because he was unavailable— as Plaintiffs note, Dr. Shamos is a key witness to the defenses offered by State Defendants.

## II. State Defendants Offered a Video Deposition of Dr. Shamos's Testimony But Did Not Waive Their Request That He Be Permitted to Testify Remotely.

Plaintiffs make much of an email between counsel regarding the deposition testimony which Plaintiffs allege exhibits that "State Defendants' counsel, on July 11, expressly confirmed that 'the purpose of the deposition would be to preserve his testimony' for the hearing." [Doc. 514 at 2]. The truth is that "for the hearing"— which does not appear in the email— is doing a lot of work for their argument. That exchange between counsel was actually regarding the notice of deposition once a date was confirmed, which State Defendants offered to file.[3] Nowhere in the July 11 email exchange did State Defendants ever insist that such a deposition would be *in lieu* of alternative live testimony. Indeed, such a stance would run contrary to the conversation with the Court *that very same day*.

On July 11, the Court held a conference call with counsel on various discovery issues including Dr. Halderman's memory card and a Protective Order. During that call, State Defendants raised the issue of Dr. Shamos's availability for the scheduled hearing. [Doc. 482, T-31–34]. State Defendants specifically made the Court aware that Dr. Shamos would be unavailable on July 25–26 due to a

---

[3] Instead, Curling Plaintiffs filed their own Notice of Deposition, choosing to so Notice as *de bene esse*. Notice of Deposition of Dr. Shamos, Attached as **Exhibit A**.

scheduled vacation with his grandchildren and noted their intention to seek his testimony by video deposition, by phone, or by live testimony the following Monday. [*Id.* at T-31:4–32:2].

At that time, Plaintiffs simply stated that this was not an issue the Court needed to resolve today. [*Id.* at T-32:4–11; T-33:22–25]. Curling Plaintiffs further objected to an extension of the hearing by one working day. [*Id.* at T-33:16–18] ("The *only* point I want to make is that we oppose any extension for altering the schedule of the hearing") (emphasis added). To state that an email that same day somehow misled Plaintiffs into believing that State Defendants were no longer seeking any form of live testimony is absurd on its face.

Instead, as the email clearly indicates State Defendants sought to **preserve** Dr. Shamos's testimony. In fact, State Defendants were following the Court's own suggestion in doing so, noting that "obviously if someone's taking his deposition . . . it would be better to have it on video." [Doc. 482 at T-32:13–14.] No one forced Plaintiffs to notice Dr. Shamos's deposition *de bene esse*: Plaintiffs chose to do so on their own. And in an effort not to burden the Court with more discovery disputes, State Defendants were agreeable to conducting Dr. Shamos's deposition for only cross, re-direct, and re-cross. Plaintiffs' unilateral choice to notice Dr.

Shamos's deposition in this manner does not imply any agreement with State Defendants.

In an effort to make clear that State Defendants were not waiving their request of the Court that Dr. Shamos be permitted to testify remotely, State Defendants stated in an email to counsel that "we are not waiving the Skype or phone proposal." Jul. 18 email to Counsel, attached as **Exhibit B**. Neither Curling nor Coalition Plaintiffs offered any objection. *Id*. That Plaintiffs traveled to Atlanta "at considerable inconvenience and expense" has no bearing on this matter either.

The reality is clear, State Defendants have made every effort to appease Plaintiffs with respect to the issue of Dr. Shamos's availability —quite unlike Plaintiffs' treatment of requests to depose Dr. Halderman and their late disclosure of expert witnesses. *See, e.g.*, [Doc. 525 at 4].[4] Now, rather than asking the Court

---

[4] Wholly irrelevant to the issue at hand, Plaintiffs also take issue with State Defendants' document production in this case. To be clear, State Defendants have produced over 14,000 pages of documents in this case. State Defendants have also repeatedly requested to confer with Plaintiffs regarding many of their overly broad requests and requested the Plaintiffs provide search terms to narrow such requests. State Defendants' repeated attempts to confer with Plaintiffs have been met with silence. As for the formatting of State Defendants' document production, even though the parties were supposed to agree to an ESI protocol, Curling Plaintiffs demanded that State Defendants comply with the protocol set out in their initial document requests; State Defendants provided Curling Plaintiffs' protocol to their vendor which continues to produce documents in the requested format. Again, State Defendants proposed a phone conference with the vendors to resolve any issues; Plaintiffs failed to respond to that offer.

to decide the issue of his testimony based on the legal framework that allows such testimony, Plaintiffs insist that State Defendants waived their right to make this request, despite all evidence to the contrary.

### III. Presentation of Dr. Shamos's Testimony by Video Teleconference Is Legally Permissible And Reasonable In Light Of His Practical Unavailability And Because It Would Be Given at the Preliminary Injunction Stage.

There is no Federal law or rule requiring Dr. Shamos to provide testimony live and in-person during the hearing. To the contrary, the Federal Rules of Civil Procedure specifically allow that, for good cause shown and with adequate safeguards, "the court may permit testimony in open court by contemporaneous transmission [i.e., by video or similar means] from a different location." Fed. R. Civ. P. 43(a). The requirements of Rule 43(a) are easily satisfied here.

As contemplated by the Rule, "good cause" exists where, as here, an out-of-state witness's appearance in person would be substantially inconvenient or burdensome. *See, e.g., Barrera–Quintero v. Holder*, 699 F.3d 1239, 1248–49 (10th Cir. 2012) (upholding the use of telephonic testimony in a removal proceeding where witness was located hundreds of miles away); *Scott Timber, Inc. v. United States,* 93 Fed. Cl. 498, 500 (2010) ("The significant geographical distance between Oregon and Washington, D.C., represents a 'compelling circumstance' justifying the use of contemporaneous transmission."); *Fed. Trade Comm'n v.*

*Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000); ("[G]ood cause is . . . shown by the serious inconvenience that will arise in requiring Mr. Cross, a resident of Oklahoma, to appear as a witness in the hearing in Washington, D.C.").

Here, as the Court is aware, Dr. Shamos—who resides in Pittsburgh, Pennsylvania—is currently on a pre-scheduled trip with his grandchildren. In addition, and as discussed below, Dr. Shamos's video testimony will be limited to only rebuttal of Plaintiffs' experts' testimony and answering any questions the Court may have. It is neither reasonable nor necessary to require Dr. Shamos to travel hundreds of miles, at great cost and disruption to his family plans, to present in person what is likely to be a short period of time.  As such, good cause exists to permit Dr. Shamos to testify by video conference on Friday.

There are "adequate safeguards" in place for the Rule 43(a) purposes where, as here, there are no alleged concerns of potential undue influence on the witness or confrontation-clause issues of the type that may be raised in a criminal proceeding. In this context, it is sufficient that the Court has simply the "ability . . . to see and hear the witness;" that "the testimony [i]s made in open court, under oath;" and that 'the opportunity for cross examination [i]s available." *Scott Timber, Inc. v. United States*, 93 Fed. Cl. 498, 501 (2010); *F.T.C. v. Swedish*

*Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000). Plaintiffs do not – and cannot – contend that Dr. Shamos's video testimony will not satisfy these requirements.

Finally, the question of whether to allow Dr. Shamos's video testimony arises at the preliminary-injunction stage, not at trial. This distinguishes this case from *Flame S.A. v. Indus. Carriers, Inc.*, 2014 WL 4181958 (E.D. Va. Aug. 21, 2014) – the case on which Plaintiffs chiefly rely. At the preliminary-injunction stage, the standard for what testimony and how testimony is presented is considerably more lenient than at the trial stage, and within the sound discretion of the Court. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is "appropriate given the character and objectives of the injunctive proceeding."); *see also Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996) ("[Fed. R. Civ. P. 43] invests the district court with considerable discretion to tailor the proceedings to the practical realities surrounding the particular motion."). Such discretion includes, as courts within this Circuit have held, permitting parties to provide testimony that is not live during a hearing. *See, e.g., Fed. Trade Comm'n v. Premier Precious Metals, Inc.*, 2012 WL 12872509, at *1 (S.D. Fla. Mar. 30, 2012) ("Since the Court can consider affidavit

-9-

testimony [at the preliminary injunction stage], it naturally follows that telephonic testimony, which is something more than a mere piece of paper even if still less than in-person testimony, is permissible.").

## IV.   State Defendants Intend to Limit Dr. Shamos's Video Testimony.

Allowing Dr. Shamos to testify by video will allow this Court to fully weigh the evidence before it. State Defendants do not plan to conduct direct testimony of Dr. Shamos via video on Friday morning.[5] Instead, Dr. Shamos would have an opportunity to provide rebuttal testimony to testimony offered by Dr. Halderman (or any other named or unnamed expert witness Plaintiffs intend to present regarding election security). This will also provide the Court with the opportunity to ask any questions. [Doc. 482 at T-32:15-16 ("It doesn't mean I wouldn't have questions, though, that's the only issue")].

Additionally, State Defendants offer Dr. Shamos as an expert in electronic voting and election security. On an earlier call, the Court asked about Dr. Shamos' qualifications. Plaintiffs did not ask any questions of Dr. Shamos regarding his

---

[5] Even though the preliminary-injunction hearing will begin in less than 24 hours, Plaintiffs have not yet provided any designations of the testimony they plan to use from Dr. Shamos' deposition. As a result, State Defendants cannot yet determine any counter-designations of the testimony they intend to offer to the Court. In order to resolve the issues before the Court without delay, having Dr. Shamos appear by live video allows for the ease of responding to the portions of the deposition used by Plaintiffs during their presentation of evidence, and any additional re-cross-examination by Plaintiffs can occur in Court as well.

qualifications in the July 19 deposition. Dr. Shamos has qualified as an expert in election security in 13 cases concerning electronic voting systems. [Doc. 472-1 at ¶ 17.] However, if Plaintiffs raise challenges to Dr. Shamos' qualifications as an expert, Dr. Shamos would be able to respond and quickly provide the Court with all the information it needs to resolve any disputes regarding Dr. Shamos' qualifications.

Respectfully submitted this 24th day of July 2019.

/s/ Vincent R. Russo
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Kimberly Anderson
Georgia Bar No. 602807
kanderson@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

-12-

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Telephone: (678)336-7249

*Counsel for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO REMOTE TESTIMONY BY DR. MICHAEL SHAMOS** has been prepared in Times New Roman, 14 pt., a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Vincent R. Russo*
Vincent R. Russo
Georgia Bar No. 242628

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing **STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO REMOTE TESTIMONY BY DR. MICHAEL SHAMOS** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing:

This 24th day of July, 2019

/s/ *Vincent R. Russo*
Vincent R. Russo