IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' HEARING BRIEF ON EVIDENTIARY PRESUMPTION ARISING FROM SPOLIATION OF EVIDENCE

Coalition Plaintiffs filed their "Hearing Brief on Evidentiary Presumption Arising from Spoliation of Evidence" [Doc. 548] ("Brief") in a desperate attempt to distract the Court and the public from the complete lack of evidence of an actual compromise of Georgia's election system. Faced with this lack of evidence, Coalition Plaintiffs apparently decided that the only way forward was to try and tar State Defendants with a frivolous argument that they destroyed evidence.

Let's be absolutely clear: State Defendants have not destroyed or spoliated any evidence that is relevant to this case. Every item identified in Coalition Plaintiffs' Brief remains available for their review in the normal course of discovery.

That Coalition Plaintiffs accuse State Defendants of destroying evidence is disingenuous on its face. Coalition Plaintiffs have been on notice from *before this litigation was filed* of repurposing plans for the webserver (and its backup)[1] at the Center for Election Services ("CES")—they even attached documents related to the repurposing to their original complaints. They did not raise any claims related to any election in which the CES webserver was in use until well after the webserver and its backup were repurposed by non-party Kennesaw State University ("KSU"). KSU IT never informed the Secretary of State or the Attorney General's office that they were going to repurpose the webserver or its backup.

Further, Coalition Plaintiffs have known for years that DREs and memory cards retain information about elections. State Defendants have done nothing to remove election information from DREs or memory cards and Coalition Plaintiffs again ignored this Court's order to confer on preservation obligations before raising issues to the Court. [Doc. 122].

---

[1] There were three different servers in use when CES was at Kennesaw State University: (1) a ballot-building GEMS Server that was separate and used only for building ballots; (2) an EPIC server that generated information used in ExpressPolls check-in machines; and (3) a webserver (with its backup) that was used for occasionally transmitting information to counties. Deposition of Michael Barnes [Doc. 472-10] ("Barnes Dep.") at 9:25-11:1. The only category of servers Coalition Plaintiffs discuss in their Brief is the webserver and its accompanying backup—not the other servers.

As discussed below, there is absolutely no basis for this Court to sanction State Defendants nor is there any basis for the claims made by Coalition Plaintiffs.[2] This Court should not condone the gamesmanship engaged in by Coalition Plaintiffs.

## I.   BACKGROUND.

Fed. R. Civ. P. 7(b)(1) requires requests for court orders to be made by motion. After the evidentiary hearing was underway in this case, Coalition Plaintiffs filed what they styled as a "Hearing Brief" but which sought action by the Court, because it ultimately requests a presumption regarding the use of evidence in the preliminary-injunction motions before the Court. [Doc. 548, p. 20]. Coalition Plaintiffs did not file a motion to compel or seek to enforce this presumption by a motion or otherwise request an expedited briefing schedule, nor had they ever raised any issue in their Brief as a discovery dispute prior to its filing.

Coalition Plaintiffs' purposes are clear: they had apparently shared their Brief with reporters ahead of time, because a reporter contacted the Secretary of State's office almost immediately after filing seeking comment and outlining the

---

[2] The complete lack of any basis in law or fact and the obvious use of the Brief for media and fundraising purposes raise significant questions about whether the Brief complies with Fed. R. Civ. P. 11.

contents of the Brief. *See* Email on July 25, 2019, attached as Ex. A. Once a reporter posted an article about the contents of the Brief (while counsel for State Defendants were in the preliminary-injunction hearing), Coalition Plaintiffs began using the article as a means of further fundraising for their organization. *See* Tweets from Marilyn Marks, attached as Ex. B.

Coalition Plaintiffs never raised or further discussed their Brief for the remainder of the evidentiary hearing (which also tends to indicate that it was designed for the media and for fundraising, not serious consideration). This Court directed State Defendants to respond by July 30, 2019.

## II. ARGUMENT AND CITATION OF AUTHORITY.

Coalition Plaintiffs bear the burden of proof on spoliation. *Eli Lilly & Co. v. Air Express Int'l USA, Inc*., 615 F.3d 1305, 1318 (11th Cir. 2010). Plaintiffs must prove three elements to establish spoliation: (1) that the missing evidence existed at one time; (2) State Defendants had a duty to preserve the evidence; and (3) the evidence was crucial to Plaintiffs being able to prove their prima facie case. *In re Delta/Airtran Baggage Fee Antitrust Litig*., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). But "[e]ven if all three elements are met, 'a party's failure to preserve evidence rises to the level of sanctionable spoliation "only when the absence of that evidence is predicated on bad faith," such as where a party purposely loses or

destroys relevant evidence.'" *Id*. Only if spoliation occurred does a Court then use the four factors outlined in *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005), to determine the propriety of spoliation sanctions. *Delta*, 770 F. Supp. 2d at 1305.

In this case, there is no question that the evidence existed—in fact, it continues to exist and this question alone should be dispositive on allegations of spoliation. The only possible basis for Coalition Plaintiffs to argue that spoliation occurred would be that State Defendants violated a duty to preserve evidence. And a duty to preserve only arises when litigation is reasonably anticipated. *Walker v. United States*, No. 4:07-CV-0102-HLM, 2009 U.S. Dist. LEXIS 40097, at *2 (N.D. Ga. Feb. 26, 2009).

As discussed below, Plaintiffs' original claims had nothing to do with any election that occurred while the CES webserver was in use and State Defendants could not have reasonably anticipated that the webserver and its backup would need to be preserved. Despite knowing the existence of the webserver, Plaintiffs also apparently did not believe they were relevant to the original claims in this case because they did not name the webserver in their July 2017 litigation hold letter. All other election information remains available for review. There is no basis on which this Court could find spoliation occurred or that sanctions are appropriate.

> A. *There is no prejudice to Coalition Plaintiffs because all information referenced in their Brief remains available to them.*

Coalition Plaintiffs identify four pieces of evidence they claim State Defendants have destroyed. [Doc. 548]. Items 1 and 2 are the webserver and its backup that hosted information when CES was located at KSU. Item 3 is every memory card used in a DRE in the entire state of Georgia and Item 4 is the internal memory of every DRE in the state of Georgia. *Id*.

Not only have State Defendants preserved the information on each of these items, each of these items remains available for Coalition Plaintiffs' review in the normal course of discovery. State Defendants notified Coalition Plaintiffs on July 8, 2019 that the FBI maintained possession of the webserver image, that State Defendants had requested a copy of that image, and that State Defendants would provide a copy to Plaintiffs in response to Plaintiffs' discovery requests. *See* Emails from J. Belinfante to C. Ichter and D. Cross on July 8, 2019, attached as Ex. C.

Memory cards and the internal memory of the DREs are not rewritten by subsequent use in an election—all election information remains stored on both devices. Declaration of Michael Barnes, attached as Ex. D ("Barnes Dec.") at ¶¶ 6-7. This should not shock Coalition Plaintiffs, because the same issues were raised and discussed in the superior-court proceeding where the Secretary took the same

- 6 -

position when facing a similar argument from the same counsel. *See, e.g.*, Transcript of December 5, 2018 Status Conference [Doc. 449-10] at 8-9.

The fact that the evidence sought by Coalition Plaintiffs still exists means it is not "missing" and Coalition Plaintiffs cannot establish the first element of spoliation. *Delta*, 770 F. Supp. 2d at 1305. Coalition Plaintiffs further have put forward no evidence that the webserver or any other information was "crucial" to their ability to prove their case. *Id*. But even if these elements were somehow met, there is absolutely no basis to find that Coalition Plaintiffs have suffered any prejudice related to the evidence. *Flury*, 427 F.3d at 945, and this answer precludes sanctions.

The Coalition Plaintiffs' reliance on Fed. R. Civ. P. 37(e) as a vehicle to obtain sanctions is similarly misplaced. The Notes of the Advisory Committee on the 2015 Amendment clearly state this rule is only applicable where the sought after electronically stored information is *actually* lost: "The new rule applies only to electronically stored information . . . It applies *only* when such information is lost." Fed. R. Civ. P. 37(e) advisory committee's note (emphasis added). Moreover, even if it were lost—which it is not—the "initial focus should be on whether the lost information can be restored or replaced," which Coalition Plaintiffs have not even addressed. Wright & Miller, *Federal Practice and*

*Procedure* § 2284.22015, quoting Fed. R. Civ. P. 37(e). In any event, this Court may only order sanctions under the Rules if there was prejudice to Coalition Plaintiffs or if State Defendants acted intentionally to deprive Coalition Plaintiffs of the requested information. Fed. R. Civ. P. 37. The fact that the evidence about which Plaintiffs complain is still available, combined with the complete lack of any evidence of intentional conduct, precludes any sanctions against State Defendants. *Id*. Coalition Plaintiffs cannot show any causal link between their ability to prevail and the allegedly lost evidence—because the evidence still exists. *Delta*, 770 F. Supp. 2d at 1305; *see also Sharpnack v. Hoffinger Ind., Inc*., 231 Ga. App. 829, 831 (1998).

But in spite of knowing the facts that undermined any claim that State Defendants destroyed documents, Coalition Plaintiffs go further in their Brief— they rewrite the history of this case in ways that have no basis in reality to accuse State Defendants of bad faith. While this effort takes significant imagination, it is not grounded in the facts of this case. This brief will evaluate each item of evidence Coalition Plaintiffs claim was destroyed.

B.   *State Defendants were under no duty to preserve the KSU webservers.*

There was one webserver[3] in use at the Center for Election Services: a Dell PowerEdge R610. *See* Declaration of C. Correia, attached as Exhibit E ("Correia Dec."), Ex. 10, p. 7 (April 26, 2017 email); Barnes Dep. at 9:25-11:1. The webserver backed up to a Unicoi server, which was a Dell PowerEdge 1950. *Id*. The webserver was removed from CES on March 3, 2017 and turned over to the FBI. Correia Dec. at ¶¶ 18-19. It was never returned to CES, although it was returned to KSU IT on March 17, 2017 after the FBI took an image of the server. *Id*. The backup Unicoi server was removed from CES in March 2017 and stored with KSU IT. *Id*. Contrary to Plaintiffs' reimagining of the facts, the webserver hosted the website and included a partition that allowed counties to access some information after entering a username and password. Barnes Dec. at ¶ 3; Barnes Dep. at 155:16-157:6. It did not serve any other functions in the administration of elections.

The webserver and its backup were completely irrelevant to any claims in the initial Complaint, filed on July 3, 2017 [Doc. 1], or the First Amended Complaint, filed on August 18, 2017 [Doc. 15]. Both of these complaints focus *exclusively* on the April 2017 and June 2017 special election and runoff for the

---

[3] As explained above, the webserver at CES was separate from the ballot-building server and separate from the EPIC server. Barnes Dep. at 9:25-11:1.

Sixth Congressional District. *Id*.; Correia Dec. at ¶ 6. None of the claims related to these 2017 elections could have had anything to do with the CES webserver or its backup because those servers were taken out of service in *March 2017*, as Coalition Plaintiffs admit [Doc. 548, p. 8]. Correia Dec. at ¶ 10.

But even if there was some claim that could be related to the first two complaints, Coalition Plaintiffs had full knowledge of the plans for the servers. They even *attached as an exhibit* to both of their initial Complaints an April 18, 2017 memorandum from KSU IT that recommends repurposing the CES webserver and designating the Unicoi backup webserver as surplus. *See* [Doc. 1-2, pp. 98-102]; [Doc. 15-1, pp. 18-22]; Correia Dec. at ¶¶ 7-11. Coalition Plaintiffs also received, in response to an Open Records Act request,[4] (1) an April 26, 2017 email indicating the plan to "Format and reinstall" the webserver and surplus the backup server, Correia Dec., Ex. 10, p. 7; and (2) a June 27, 2017 email summarizing a KSU IT staff meeting to implement the plan for CES that instructed one of its staff members to "Wipe R610"—the webserver, Correia Dec., Ex. 10, pp. 9-10. The allegation that State Defendants knowingly destroyed evidence that was not even in their possession prior to this lawsuit being filed is disproved by the emails *already possessed* by Coalition Plaintiffs. State Defendants have not

---

[4] Jeff Milsteen, the former KSU Chief Legal Affairs Officer, provided the documents to Marilyn Marks by email on October 20, 2017. Correia Dec. at ¶ 28.

destroyed any evidence in this case nor supervised the destruction of any evidence, Correia Dec. at ¶ 5, and Coalition Plaintiffs have offered no evidence to the contrary.

Coalition Plaintiffs also must have agreed the servers were not relevant to their initial complaints because, despite knowing of the plans to repurpose the servers, they *never identified the webserver or its backup as relevant* in their July 10, 2017 litigation hold email [Doc. 548, pp. 33-34]. Correia Dec. at ¶ 9, Ex. 1. That message focused exclusively on items used in the April 18, 2017 and June 20, 2017 elections.[5] *Id*. By that point, the webserver had already been repurposed by the KSU IT Department. [Doc. 309, p. 9]. The backup server was repurposed on August 9, 2017. *Id.*; Correia Dec. at ¶ 20.

In a September 1, 2017 call with the Court, Plaintiffs indicated a plan to again amend their complaint and the Court directed a meet-and-confer regarding the litigation hold (particularly focused on the CES ballot-building server[6]), while

---

[5] While State Defendants have an obligation to preserve anything relevant to the claims beyond what is specifically listed, Plaintiffs' failure to list the server while knowing about the plans for it confirms State Defendants' reasonable view in 2017 that the original complaints had nothing to do with any election for which the webserver and backup server had been in use.

[6] The scope of the case up to this point was still exclusively about 2017 elections during which the CES webserver had not been in use. Discovery related to the

also trying to balance concerns about operating upcoming elections. Transcript of September 1, 2017 Conference [Doc. 60 at 19-20]. Plaintiffs then sent a litigation hold letter dated September 12, 2017 [Doc. 548, pp. 36-39], that, *for the first time*, raised items in use during the November 2016 elections as possibly relevant to the anticipated *new* claims. But this letter was not received by then-counsel for State Defendants until September 29, 2017. Correia Dec. at ¶¶ 13-17.

When Coalition Plaintiffs filed their Second Amended Complaint on September 15, 2017 [Doc. 70] they—for the first time—raised a claim about the November 2016 elections in this case. Correia Dec. at ¶ 12. That was also the first time that anything related to the CES webserver could have been even arguably relevant to this case due to its use during the November 2016 elections. While Mr. Lamb's ability to access data on the webserver is mentioned in all three versions of the complaint, Plaintiffs' claims were not premised on Mr. Lamb's access to the webserver or anything related to the November 2016 elections until the filing of the Second Amended Complaint—after the servers had already been repurposed by the KSU IT Department.

But this story grows even stranger. State Defendants' then-counsel advised Coalition Plaintiffs on October 6, 2017 that the servers had been wiped and

---

GEMS ballot-building server was relevant to those claims. Discovery of a webserver that had not been in use during those elections was not.

repurposed but that the FBI was maintaining a copy of the image it took at the State's request. Correia Dec. at ¶ 18. State Defendants' counsel further kept Plaintiffs' counsel updated about the status of the servers. Correia Dec. at ¶¶ 20-22. On November 17, 2017, an email from conflict counsel[7] put Plaintiffs' counsel on notice that no subpoena had been issued to the FBI and provided Plaintiffs' counsel with the contact information for the FBI agent with knowledge. Correia Dec. at ¶ 27. Despite knowing these facts, Plaintiffs' counsel now contend—without any evidence—that State Defendants' counsel's filing of the Notice of Intent to serve a subpoena was a "head feint," and suggest State Defendants and counsel "hop[ed] the FBI would destroy it." [Doc. 548 at 13].

Finally, after receiving an inquiry from Coalition Plaintiffs earlier this month about the status of the webserver image, State Defendants notified Coalition Plaintiffs on July 8, 2019 that the FBI image still existed and that they had requested a copy from the FBI. *See* Ex. C. At no time did the State Defendants or their counsel receive a copy of the image of the server from the FBI. The server itself was returned to KSU. Correia Dec. at ¶¶ 18-19. Again, despite knowing these facts, Plaintiffs' counsel accuse State Defendants, and State Defendants' counsel,

---

[7] On or about October 27, 2017, the Office of the Attorney General determined it could not continue to represent the State Defendants in this action and sought appointment of conflict counsel. Correia Dec. at ¶ 24.

of "retriev[ing] the server[ ] from the FBI and promptly and brazenly destroy[ing] it, . . . under the supervision of, if not by, government lawyers." [Doc. 548 at 19].

Coalition Plaintiffs cannot be prejudiced when their claims did not even implicate the webserver until after it had already been repurposed in the normal course of business by a non-party to this case—and State Defendants had no duty to preserve the webserver until some claim raised by Plaintiffs implicated it. Coalition Plaintiffs further will still have the opportunity to review the webserver when it is produced in the normal course of discovery. To claim that State Defendants' conduct screams "bad faith," [Doc. 548, p. 6], ignores the history of this case and Plaintiffs' own conduct. *Delta*, 770 F. Supp. 2d at 1313-14 (finding of bad faith is a prerequisite to spoliation sanctions).

> C. *Memory cards and internal memory of DREs are preserved and Coalition Plaintiffs have never sought to confer with State Defendants on their preservation.*

The parties conferred a number of times at the outset of this litigation about how to balance the preservation requests of Plaintiffs with the needs of various defendants to conduct elections. *See, e.g.*, Transcript of September 20, 2017 Teleconference [Doc. 80, pp. 13-18]. That process ultimately culminated in an order that recognized the need to operate elections in the State of Georgia. [Doc. 122]. The order required any dispute about compliance with preservation

obligations to first be addressed through a conference with the parties before notifying the Court (if needed) to seek a resolution. *Id.* at 2; [Doc. 548, p. 12] (Coalition Plaintiffs' Brief recognizing this process).

State Defendants have taken the consistent position that past election data on memory cards and the internal memory of DREs is not erased by subsequent usage because each election is stored in separate folders on the various systems. Barnes Dec. at ¶¶ 5-7. As a result, there was no need to stop using existing memory cards or DREs because all past information remained available for continued examination.[8] *Id.* Taking the approach Coalition Plaintiffs say is required to preserve evidence would have prevented State Defendants from using a single DRE during the pendency of this lawsuit—essentially granting them the relief they seek from this Court. [Doc. 548, p. 17].

Coalition Plaintiffs have known of this position for years. At the very least at the December 2018 hearing in the Lieutenant Governor election-contest case, Coalition Plaintiffs knew the position taken by State Defendants about the continued use of memory cards and DREs. *See, e.g.*, Transcript of December 5, 2018 Status Conference [Doc. 449-10 at 8-9].

---

[8] This is also why Coalition Plaintiffs' position that State Defendants are violating their own regulations governing elections makes no sense—information about each election is maintained on each DRE for years after each election. Barnes Dec. at ¶¶ 4-6.

Despite Coalition Plaintiffs' knowledge and this Court's order requiring a conference about any disputes over preservation obligations, Coalition Plaintiffs instead raised these issues *for the first time* while the preliminary-injunction hearing was already underway. And, in any event, the evidence sought by Coalition Plaintiffs remains available to them and has not been destroyed. Coalition Plaintiffs have also put forward no evidence that the memory cards or information in the internal memory is necessary to prove their case.

### III.   CONCLUSION.

State Defendants have complied with their obligations to preserve evidence and have not destroyed or spoliated any relevant information. This Court should deny Coalition Plaintiffs' last-ditch attempt to cover for their lack of evidence in support of their preliminary-injunction motion.

Respectfully submitted this 30th day of July, 2019.

> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Carey A. Miller
> Georgia Bar No. 976240
> cmiller@robbinsfirm.com
> Kimberly Anderson

Georgia Bar No. 602807
kanderson@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678)336-7249

*Counsel for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' HEARING BRIEF ON EVIDENTIARY PRESUMPTION ARISING FROM SPOLIATION OF EVIDENCE** has been prepared in Times New Roman, 14 pt., a font and type selection approved by the Court in L.R. 5.1(B).

>  */s/ Bryan P. Tyson*
>  Bryan P. Tyson
>  Georgia Bar No. 515411

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' HEARING BRIEF ON EVIDENTIARY PRESUMPTION ARISING FROM SPOLIATION OF EVIDENCE** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing:

This 30th day of July, 2019

>  */s/ Bryan P. Tyson*
>  Bryan P. Tyson
>  Georgia Bar No. 515411