# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## DECLARATION OF MICHAEL BARNES

Pursuant to 28 U.S.C. § 1746, I, Michael Barnes, make the following declaration:

1.

My name is Michael Barnes. I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

2.

I currently am the Director of the Center for Election Systems, Office of Secretary of State–Brad Raffensperger ("CES"). I was formerly Director of the Center for Election Systems at Kennesaw State University ("KSU"), which was an

1

outside contractor with the Office of the Secretary of State, from 2002 until December 31, 2017. Beginning on January 1, 2018, all elections functions that were previously performed at KSU were moved to an internal department in the Office of the Secretary of State. I first began working at CES KSU in 2005. Prior to that time, I was the Assistant Director of Elections for the Georgia Secretary of State, and in that position I directed the State of Georgia's transfer to a uniform system of voting, *i.e.*, direct-recording electronic voting machines ("DREs").

3.

I am familiar with the server at CES that was accessed by Logan Lamb in 2016. That server was not a "central server" at CES because it did not contain any files used in the regular course of building ballots. It was a separate webserver where files were sometimes located to allow election officials to download files for use in elections. In my deposition, I discussed the types of files that were supposed to remain on the server.

4.

Georgia's DREs use both internal memory hardware and removal external memory cards. During an election, data files are saved to both the internal memory and the removable external memory cards. These files contain the data collected and operations performed during the DRE's use in an election. For example, when

a voter hits the "Cast Ballot" button on a DRE, the audit log records an entry with a timestamp and the words "Ballot Cast." The information about who the voter was or what selections he or she made are not recorded in the audit log. The elector's voter selections are recorded in both the internal memory and the removable external memory card.

5.

Once the external memory card is inserted into the DRE and the DRE is powered on, the DRE begins to store identical copies of data on both the external memory card and the DRE's internal memory. As voters and election officials interact with the DRE, both the external memory card and internal memory are updated in tandem. When the election is ended on the DRE by a poll manager on election night, the external memory card that is removed contains a copy of the data collected and operations performed. The DRE's internal memory keeps its identical copy of the same data in a folder specific to that election.

6.

Adding a new election to a Georgia DREs does not automatically overwrite any prior election information maintained on the internal memory of the DRE unless the internal memory is already full. Each election is maintained in a separate folder on the internal memory of the unit and does not take up a large amount of

space. When the machines reach capacity, a manual process can be used to remove past election information. That manual process has not been used in Georgia since at least 2011, when BallotStation version 4.5.2! was installed on all Georgia DREs.

7.

Similarly, adding a new election to a memory card does not automatically overwrite prior election information maintained on the memory card. Each prior election is maintained in a separate folder on the memory card.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of July, 2019.

MICHAEL BARNES

4