# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## COALITION PLAINTIFFS' SPECIAL MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to 42 U.S.C. § 1988 and Local Rule 54.2, Coalition Plaintiffs move the Court for an order awarding them their reasonable attorneys' fees and expenses as prevailing parties in this action.

### I.    INTRODUCTION

This case has vindicated and protected the rights of seven million Georgians to vote and to have their vote counted.  In the face of daily warnings from the nation's top intelligence and cyber-security officials, the State of Georgia refused to recognize or address the profound vulnerability of its voting systems.  The evidence – from the State's willful failure to address the impact of the exposure at CES/KSU to the State's courtroom admission that the GEMS databases are built by contractors in their homes – confirmed that the State would be a prime target for

disruption or undetectable malicious manipulation.  But for this litigation and the granting of injunctive relief, Georgia would still be using the DRE system in elections in 2020 and would have no constitutional alternative to fall back upon in the event the State's new BMD system cannot be deployed for 2020 elections. Without the injunctive relief that has been obtained by the Plaintiffs, the risk of catastrophe for the voters of Georgia was real and substantial. The Court has provided for fail-safe alternatives to protect 2020 elections from the extreme risks of using paperless DREs by requiring the use of hand-marked paper ballot in pilot elections and in the event the BMD system cannot be implemented on time or is itself found to be constitutionally defective.

Though much work needs to be done by the State of Georgia before it deploys a safe, constitutional voting system, the granting of injunctive relief at this stage already constitutes success on the merits entitling the Coalition Plaintiffs to an award of reasonable attorneys' fees and expenses.

## II.     REASONABLE ESTIMATE

Coalition Plaintiffs' reasonable estimate of the amount of their attorneys' fees and expenses incurred to date in this matter is $1,411,070 and $191,860,

respectively.[1]  Within thirty days, Coalition Plaintiffs will be filing a detailed

specification and itemization of the requested award, with appropriate affidavits

and other supporting documentation, as required by Local Rule 54.2.

### III.   BASIS FOR THE ENTITLEMENT TO THE AWARD

Pursuant to Local Rule 54.2, the Coalition Plaintiffs "specify the judgment

and the statute or other grounds on the basis of which entitlement to the award is

claimed."  Coalition Plaintiffs seek award as prevailing parties under 42 U.S.C. §

1988 based on this Court's August 15, 2019 Order ("the Preliminary Injunction,"

Doc. 579) granting in part Coalition Plaintiffs' Motion for Preliminary Injunction

(Doc. 419). The basis of Coalition Plaintiffs' entitlement to an award is explained

in further detail below.

### A. The Preliminary Injunction is a Material Alteration of the Legal Relationship of the Parties Entitling Plaintiffs to Fees

It is well established that "a preliminary injunction is a 'material alteration

of the legal relationship of the parties'" entitling the plaintiff to an award of fees

and expenses as the prevailing party under Section 1988.  *Common Cause/Georgia*

*v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009).  *See also Williams v. City of*

*Atlanta,* No. 1:17-CV-1943-AT, 2018 WL 2284374, at *3 (N.D. Ga. Mar. 30,

---

[1] Coalition Plaintiff may also move for an award of additional attorneys' fees and expenses incurred in connection with the prosecution of this motion and the enforcement of the Court's preliminary injunction.

2018) (*"More recently, the Supreme Court reiterated its repeated holding that, 'an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party test].' Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (finding the plaintiff to be a prevailing party when he obtained an injunction to terminate a continuing threat of potential criminal sanctions for engaging in public protest activity.")). In the Preliminary Injunction, this Court materially altered the legal relationship of the parties by ordering immediate, wide-spread injunctive relief relating to multiple aspects of the State's election system.

In *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), the Supreme Court held:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

Moreover, fee awards to prevailing plaintiffs in a § 1983 civil rights action are not limited to those actions where damages are either sought or obtained. *Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.").

As explained in greater detail in Part B and Part C, the Coalition Plaintiffs obtained "excellent results" and their attorneys should be fully compensated for

4

"all time reasonably expended on the litigation." *Popham v. City of Kennesaw*, 820

F.2d 1570, 1578 (11th Cir. 1987).

**B. Coalition Plaintiffs Obtained "Excellent Results" Overall**

The Preliminary Injunction granted the Coalition Plaintiffs substantial relief

– an "excellent result" - on the merits.  In this litigation, Plaintiffs claimed a First

and Fourteenth Amendment right to cast a vote that is properly counted.  *See*

*generally Curling v. Kemp,* 334 F. Supp. 3d 1303 (N.D. Ga. 2018); (Preliminary

Injunction, Doc. 579 at 3).  In the complaint and in the amended complaints, the

Plaintiffs alleged that the State Defendants were infringing on their right to cast a

vote that is properly counted by continuing to use the profoundly vulnerable DRE

system, and, in similar counts under the Equal Protection and Due Process Clauses

of the U.S. Constitution, sought to enjoin the State Defendants from using the

DREs in future Georgia elections and for other related relief.

Over course of this litigation, the Plaintiffs amassed mountains of evidence

and expert testimony proving the defective operation of the DRE voting system

and the inadequacy and security risks  it posed, cataloguing the "pervasive voting

problems arising in the 2017-2018 election period," (Doc. 579 at 5), and

supporting the equities of granting injunctive relief.  The evidentiary record

Plaintiffs have established will not be restated in this pleading; it is detailed in the

Court's exhaustive 46-page September 17, 2018 Order, which found Plaintiffs'

"are substantially likely to succeed on the merits of one or more of their

constitutional claims," (Doc. 309), in the Court's 61-page May 21, 2019 Order,

which denied Defendants' motion to dismiss as to each of the Coalition Plaintiffs'

claims,[2] (Doc. 375), and most recently in the Court's 153-page August 15, 2019

Order.  (Doc. 579).

Through the course of this litigation, Coalition Plaintiffs also defeated *each*

of the numerous defenses raised by the Defendants, including the alleged absence

of concrete injury in fact (addressed at Doc. 309 pages 17-22), lack of causation

(*id.* at 22), lack of redressability (*id.* at 25-26), alleged "manufactured standing"

(*id.* at 27), lack of organizational standing (*id.* at 27), lack of standing due to

residency of named plaintiffs (*id.* at 28-29), "meritless" Eleventh Amendment

immunity defenses (*id.* at 29 – 30), application of res judicata and collateral

estoppel (Doc. 375 at 14-34), failure to state a viable claim for due process and

equal protection violations (*id.* at 34 – 53), supposed improper joinder of the

Members of the State Board of Elections (*id.* at 53 – 54), and the alleged need to

---

[2] In the May 21, 2019 Order, the Court denied in its entirety the Defendants' motions to dismiss the Coalition Plaintiffs' complaint.  (Doc. 375 at 61).

join as parties defendant the municipalities conducting November 2019 election (Doc. 579 at 12-21).

In the Preliminary Injunction, the Court agreed that the "record in this case is substantial," (Doc. 579 at 5), that Plaintiffs had carried their burden of establishing a likelihood of success on the merits, and that the equities compelled the granting of wide-ranging injunctive relief, including the ban on DREs after 2019.  (Doc. 579 at 129 -153).  By any measure, Coalition Plaintiffs have obtained an "excellent result," and should be fully compensated for "all time reasonably expended on the litigation." *Popham,* 820 F.2d at 1578.

## C. Excellence of Result Further Confirmed by Specific Relief Granted

Because the Coalition Plaintiffs achieved "excellent results" on the objectives of the litigation, it is not necessary for the purposes of determining entitlement to fees (or the amount of the fee award) to examine each particular claim or theory to determine whether or to what extent the claim or theory was considered by the Court or was the basis for relief.  "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435.  In addition, the fact that Coalition Plaintiffs advanced alternative legal grounds for relief obtained has no impact on the fee.  "Litigants in good faith may raise alternative

legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*

Nevertheless, the broad-ranging and comprehensive nature of the injunctive relief ordered by this Court underscores Coalition Plaintiffs' entitlement to 100% of its reasonable fees and expenses, as outlined below:

**1. Ban on DREs After 2019**

As discussed above, in their 2018 Motion for Preliminary Injunction (Doc. 258), and in their 2019 Motion for Preliminary Injunction (Doc. 419), Coalition Plaintiffs sought to enjoin Defendants from using DRE machines in upcoming Georgia elections.  (Doc. 258 at 1; Doc. 419 at 2).  The Court granted this relief is substantial part: In the Preliminary Injunction, this Court directed the State Defendants to "refrain from the use of the GEMS/DRE system in conducting elections after 2019."  (Doc. 579 at 148).

**2. Providing a Constitutional Alternative to BMDs for 2020 Elections**

In support of their 2019 Motion for Preliminary Injunction, Coalition Plaintiffs argued that "granting injunctive relief now" by replacing DREs with hand-marked paper ballots "will provide a safe, sensible, constitutional alternative to, and contingency for, the State's planned deployment of the BMD system in

8

2020." (Doc. 419-1 at 9).  Coalition Plaintiffs argued that unless the State Defendants were required to replace DREs with an auditable system using hand-marked paper ballots and optical ballot scanners, if deployment of the new BMD system were delayed, inadequate  or derailed, Georgia voters would have no constitutional voting alternative in numerous elections in the 2020 Presidential election cycle.  (Doc. 419-1 at 4).  Both in their briefs and in their submissions from experts, the Coalition Plaintiffs urged the Court to require the State Defendants to start using hand-marked paper ballots beginning October 1, 2019 so that the State would have a default plan in the event BMD deployment failed. (*E.g.,* Doc. 419-1 at 4, 9, 49; Doc. 413 at 220, 254, 282).

The Court granted this relief, requiring the State Defendants to begin using hand-marked paper ballots in pilot elections in 2019 and in the 2020 elections prior to the deployment of the new BMD system.  Thus, in the Preliminary Injunction, this Court directed the State Defendants "to develop a default plan" using "hand-marked paper ballots" in the event "the new BMD system enacted by the State Legislature may not be completely rolled out and ready in time for operation in time for the March 2020 Presidential Primary elections."  (Doc. 579 at 148).  The Court directed the State Defendants, as a part of this default plan, to "identify a select number of counties or jurisdictions that agree to implement a pilot election

9

in November 2019 using hand-marked paper ballots along with optical ballot scanners and voter-verifiable, auditable ballot records." (Doc. 579 at 148).

### 3. Audits

The Coalition Plaintiffs moved to Court to require the State Election Board to develop and file with the Court a pre-certification audits plans. The Court granted the following relief: the Court directed the State Defendants to "promptly file with the Court all proposed and final audit requirements that the State Election Board and Secretary of State's Office considers or approves in connection with elections to be held in 2020 or thereafter." (Doc. 579 at 152; *see also id.* at 148-49).

### 4. Electronic pollbooks and Related Injunctive Relief

Coalition Plaintiffs moved the Court for multi-faceted relief relating to the reliability of the voter registration database and the ExpressPoll electronic pollbooks. Coalition Plaintiffs moved the Court to direct the Secretary to file a plan with the Court addressing:

> the procedures to be undertaken by election officials to address errors and discrepancies in the electronic pollbooks or voter registration database that my cause eligible voters to (i) not appear as eligible voters in electronic pollbooks, (ii) receive the wrong ballot, (iii) be assigned to the wrong precinct in the electronic pollbook, or (iv) be prevented from casting a regular ballot in their properly assigned precinct.

(Doc. 419 at 4).  The Court directed the State Defendants:

> to develop a plan for implementation by **NO LATER THAN JANUARY 3, 2020,** that addresses the procedures to be undertaken by election officials to address errors and discrepancies in the voter registration database that may cause eligible voters to (i) not appear as eligible voters in the electronic pollbooks; (ii) receive the wrong ballot; (iii) be assigned to the wrong precinct in the electronic pollbooks; or (iv) be prevented from casting a regular ballot in their properly assigned precinct. A copy of the plan shall be provided to Plaintiffs' counsel.

(Doc. 579 at 150) (emphasis by the Court).

The Coalition Plaintiffs further moved the Court to direct the Secretary to file a plan with the Court for county election officials and poll workers "to provide for use of an updated paper back-up of the pollbook in the polling places for adjudicating voter eligibility and precinct assignment problems."  (Doc. 419 at 4). The Court, recognizing the imperative nature of accurate pollbooks in the polling place   ordered the State Defendants to "require all County Election Offices to furnish each precinct location with at least one print-out of the voter registration list for that precinct."  (Doc. 579 at 150).

The Coalition Plaintiffs moved the Court to direct the State Defendants "to immediately instruct every Superintendent in all elections to ensure that every person attempting to vote but who is denied a ballot is immediately informed by

poll officials that they are entitled to case a provisional ballot."  (Doc. 419 at 4).

The Court granted this relief, directing the State Defendants to:

> provide clear pre-election guidance to all Count Election Officials regarding all polling officials' mandatory duty under the law to provide voters the option of completing provisional ballots, including those who do not appear on the electronic voter registration database at a specific precinct or at all.

(Doc. 579 at 150).  The Court further directed the State Defendants to:

> continue in future elections to prominently post information concerning the casting of provisional ballots and voters' submission of additional information, including their registration status, and voters' capacity to check the status of their provisional ballot on the SOS website throughout the course of any state or federal election.

(*Id.*)

Coalition Plaintiffs moved the Court to direct the State Defendants to "undertake a review of the pollbook software to determine the source of the defect or malware and promptly undertake remedial action,"  (Doc. 419 at 3), and to submit a plan with the Court that addresses "a security evaluation" of voting system components, "including electronic pollbooks" to "detect malware or other significant security vulnerabilities."  (Doc. 419 at 4).  The Court ordered the Secretary of State's Office to

> work with its consulting cybersecurity firm to conduct an in-depth review and formal assessment of the issues relating to exposure and accuracy of the voter registration database discussed here as well as those related issues that

will migrate over to the State's database or its new vendor's handling of the EPoll voter database and function.

(Doc. 579 at 150).

### D. Clarification, Additional Relief and Implementation

As the Court suggested in the August 27, 2019 Conference Call, there are detailed aspects of the exhaustive injunctive relief granted that will require the Parties to work together to fashion appropriate relief given changing circumstances. In addition, the Coalition Plaintiffs will be conferring with the Parties with respect to particular clarifications relating to errors and discrepancies in electronic pollbooks and its software, the need for updated paper back-ups of the electronic pollbooks in the polling places, the implementation of robust post-election audit procedures, the use of GEMS for election management software in 2020, and other issues. These issues may require additional directions from the Court. The Coalition Plaintiffs will supplement their request for fees and expenses to include reasonable efforts to clarify and implement the injunctive relief.

### IV.    CONCLUSION

Whether evaluated in terms of achieving the overall objective of the litigation, or the particulars of the specific relief granted, the Coalition Plaintiffs obtained an "excellent result" entitling the Coalition Plaintiffs to an award of 100%

of their fees and expenses.  For the foregoing reasons, which will be substantiated

and elaborated upon in the forthcoming submission required within 30 days by

Local Rule 54.2, Coalition Plaintiffs' should be awarded their attorneys' fees and

expenses incurred to date in amounts estimated to be $1,411,070 and $191,860,

respectively.

Respectfully submitted this 29th day of August, 2019.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600


*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*



*/s/ John Powers*

Ezra D. Rosenberg
John Powers
David Brody
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

*Counsel for Coalition Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been

prepared in accordance with the font type and margin requirements of LR 5.1, using

font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2019, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown