IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

**CURLING PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
LEAVE TO FILE A THIRD AMENDED COMPLAINT**

Defendants once again prove that their singular objective in this litigation is endless delay, to deprive Curling Plaintiffs and all other Georgia voters of the opportunity to enforce their constitutional rights before elections proceed next year on new voting equipment that Defendants' own election security experts rejected. Defendants' Opposition to Curling Plaintiffs' Motion is nothing short of farcical, claiming that Curling Plaintiffs missed a non-existent deadline to amend (or supplement) their complaint based on events that admittedly occurred after that supposed deadline.[1]

---

[1] Curling Plaintiffs' Motion could properly be construed as seeking leave to supplement the complaint given that the underlying events giving rise to the Third Amended Complaint arose after the Second Amended Complaint was filed. *See McGrotha v. Fed Ex Ground Package System*, No. 5:05-CV-391 (CAR), 2007 WL

Defendants omit facts confirming that their Opposition lacks good faith. They failed to mention (i) that they offered not to oppose Plaintiffs' Motions if Plaintiffs would agree to four conditions and (ii) that Plaintiffs agreed to all but one of those conditions. (*See* Exhibit 1.) The sole condition Plaintiffs rejected was a stay of all discovery during the pendency of yet another round of frivolous motions to dismiss. Not only does that one condition have no bearing at all on the standard applicable to Plaintiffs' Motions (whether under Rule 15 or Rule 16), it betrays Defendants' true intention behind their meritless Opposition: to further delay this litigation in the hope of again running out the clock on relief for the elections at issue. Defendants' "alternative" relief likewise would inject months of delay.

The Court should grant this Motion to ensure critical relief involving new voting equipment they only recently adopted, over their own experts' objections.

## I.    ARGUMENT

### A.    The "Freely Given" Standard Applies and Is Easily Met

Defendants' argument that Rule 16's "good cause" standard applies is premised on a mischaracterization of this Court's Scheduling Order. They claim that, "whether Plaintiffs acknowledge it or not, Plaintiffs seek not only leave to

---

640457, at *2 (M.D. Ga. Feb. 24, 2007). The applicable standard is the same and therefore so is the result. *See id*.

Case 1:17-cv-02989-AT   Document 615   Filed 09/23/19   Page 3 of 14

amend or file a supplemental pleading under Rule 15 but also modification of the Court's Scheduling Order." Defendants are mistaken. (Opp. 3-4.) Contrary to Defendants' claim, the Court's Scheduling Order does *not* contain any deadline for motions to amend the pleadings. (Dkt. No. 418.) This makes perfect sense given the parties and the Court long anticipated the possibility of the very amendment Curling Plaintiffs now seek, but neither Curling Plaintiffs nor the Court knew whether or when such an amendment would be needed. That was entirely within Defendants' control, which they now seek to exploit.

In light of this context, the only logical and fair construction of any purportedly agreed-upon deadline is one that gives it narrow effect. Curling Plaintiffs' Motion falls into the traditional formal limits of a motion to supplement under Federal Rule of Civil Procedure 15(d), because it seeks to add claims arising after the filing of the Second Amended Complaint. *See McGrotha*, 2007 WL 640457, at *2 (describing the formal distinction between amendment and supplementation). Therefore, it should be unaffected by any alleged deadline that does not address motions to supplement.

Lacking any deadline for amendments to the pleadings in the Scheduling Order, Defendants resort to arguing that discovery deadlines would have to change. But this is empty speculation. They offer no facts to support this claim, nor is it

3

grounded in reality. The fact is that Defendants' own election security experts—*both* Dr. Michael Shamos and Dr. Wenke Lee—advised against the new barcode voting equipment Defendants plan to implement next year. (Dkt. No. 554, Shamos Dep. at 56:13-57:2, 57:13-21; Exhibit 2, Wenke Lee, *Basic Security Requirements for Voting Systems*," Secure, Accessible & Fair Elections (SAFE) Comm'n (Oct. 8, 2018); Exhibit 3, Wenke Lee, *Addendum to Basic Security Requirements for Voting Systems*," Secure, Accessible & Fair Elections (SAFE) Comm'n (Jan. 3, 2019).) There is no dispute about the equipment Defendants plan to use, including ballot-marking devices that rely on bar codes to record votes—just as Defendants' own election security experts advised against. Those facts alone require an injunction prohibiting Defendants from using the intended BMDs as currently planned. Defendants have not identified any expansive discovery they contend could not be completed under the current schedule.

In sum, because Curling Plaintiffs' Motion does not require a change to the Scheduling Order, Rule 15's "freely given" standard (and not Rule 16's "good cause" standard) applies to the Motion. And the Motion easily meets that standard.

### B. Any Missed Deadline Is Entirely Defendants' Doing

Even if the Court had adopted a deadline for amendments to pleadings that passed before this Motion was filed—as Defendants wrongly claim—that would

not preclude the amendment (or supplementation) Curling Plaintiffs seek. Indeed, to find otherwise would impose manifest injustice on Curling Plaintiffs under the facts here.

Defendants cite a July 17, 2019 deadline for amendments to pleadings in the parties' Joint Preliminary Report and Discovery Plan—a date omitted from the Court's Scheduling Order. (Opp. 3-4.) Defendants conveniently gloss over the fact that the Secretary of State issued the Notice of Intent to Award *12 days after that date passed*, on July 29, 2019. (Dkt. No. 575 at 1.) The Award was not final until nearly two weeks later, on August 9, 2019. (*See id.* at 1-2 (describing ten-day protest period under Georgia state procurement law and Secretary of State certification process).) Therefore, even if Curling Plaintiffs were found to have missed the deadline Defendants allege, they merely would be victims—yet again—of Defendants' own chronic "schedule slippage" in the time it took them to adopt the new voting equipment that is the subject of the amendment (or supplementation) Curling Plaintiffs seek. (Dkt. No. 579 at 143 n.96.) Any such missed deadline should be excused and the Motion should be granted.

### C. Good Cause Is Well Established

Even if the "good cause" standard were to apply, Curling Plaintiffs would

easily meet that too.² Again, there is no dispute that the events giving rise to, and underlying, the amendment (or supplementation) Curling Plaintiffs seek occurred long after the filing of the current complaint and after any purported deadline to amend that complaint. This alone disposes of Defendants' frivolous Opposition. *See U.S. ex rel. Bibby v. Mortg. Inv'rs Corp.*, No. 1:12-cv-4020-AT, 2015 WL 13696345, at *1 (N.D. Ga. Aug. 7, 2015) (holding good cause existed where key facts for new claims were not in movants' possession until approximately one year after the deadline for amending pleadings); *Georgia Power Co. v. Sure Flow Equip., Inc.*, No. 1:13-cv-1375-AT, 2014 WL 4977799, at *3 (N.D. Ga. July 22, 2014) ("no matter how much more diligent [movant] had been, it would not have had this information by the deadline set in the scheduling order."); *cf. Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (good cause did not exist where the key facts for amending were available long before the relevant deadline and even before the plaintiff filed suit).³

---

² If the Court were to find that Rule 16 applies here, the Court should construe this Motion as one to amend the Scheduling Order, as courts routinely do in such circumstances. *See, e.g.*, *U.S. ex rel. Bibby*, 2015 WL 13696345, at *1.

³ *See also Clemons v. Delta Air Lines, Inc.*, No 1:13-cv-00048-RLV-AJB, 2013 WL 11328333, at *11 (N.D. Ga. Oct. 7, 2013) (Baverman, M.J.) (quoted in Opp. at 2-3) (presuming plaintiff was "reasonably diligent in . . . seeking to amend his complaint [within] five weeks" of learning key facts).

To prop up meritless arguments, Defendants resort to mischaracterizing their own authority. They quote *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992), but omit critical language that directly undermines their Opposition. (Opp. 5.) In that case, the Ninth Circuit emphasized that "*[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification*." 975 F.2d at 609 (emphasis added). Defendants misleadingly omitted the italicized portions of the Ninth Circuit's language, which eviscerates their Opposition given the reasons for Curling Plaintiffs' amendment (or supplementation) arose from recent events that were entirely within Defendants' own control. Defendants do not even contend that Curling Plaintiffs' reasons for their Motion are improper. Nor could they.

**D.    The Curling Plaintiffs' Third Amended Complaint Seeks the Same Fundamental Relief as Prior Complaints**

Regardless of the standard the Court applies, the Curling Plaintiffs' Third Amended Complaint ("TAC") is entirely appropriate because it seeks the same fundamental relief as Curling Plaintiffs' prior complaints—namely, an election system that complies with the constitutionally-guaranteed right to vote. In fact, the Curling Plaintiffs' TAC heavily overlaps with the underlying facts and issues already before this Court, which have been the subject of discovery and multiple

7

proceedings. For example, Defendants recently admitted they plan to continue to use components of the current GEMS-based system with the new BMD-based system anticipated for next year. (*See* Dkt. No. 590 at 34:2-4 ("the state is going to continue to use eNet, which is PCC's software, for the voter registration database going forward."); *see also* Dkt. No. 579-1 p. 2, Halderman Decl. ¶¶ 2-3 (naming at least six "critical pieces" of the election system that will be carried forward and will affect the vulnerability of the new system).) Those components and the new BMD equipment must be considered together in order to efficiently resolve the ultimate issue of whether Georgia's forthcoming voting system satisfies and protects the constitutional right to vote. The parties already conducted discovery regarding those components, and this Court is well acquainted with much of that discovery and the corresponding factual and legal issues. It would be highly inefficient and prejudicial for the parties to start from scratch with entirely new complaints in an entirely new case before a new judge. That would only cause the extreme delay Defendants intend.

At bottom, this case has always been about—and its efficient resolution requires the Court to consider—the reliability of Georgia's voting system. (*See* Dkt. No. 1-2 at 4 ("This is a case about the insecurity of Georgia's voting system, and those who are responsible for ensuring its security.").) The Court itself has

recognized this.  (*See* Dkt. No. 579 at 89 (summarizing deficiencies across the voting system); Dkt. No. 391 at 11 ("I don't think the plaintiffs' complaints have been quite as narrow as the state has construed them at least in [Defendants' discovery filing.]").)  The Court rightly has considered the effects of many points of failure across the election system:  mishandling of the CES/KSU servers, (Dkt. No. 579 at 62-72), insecurity of the Secretary of State's IT infrastructure and voter registration database, (*id*. at 75-90), and defects in electronic pollbook software (*id*. at 82-83).  These points of failure will persist with the BMDs, and thus will need to be addressed alongside any failures with the BMDs themselves.[4]

Defendants do not identify any actual prejudice, instead resorting to empty rhetoric.  And their cases miss the mark.  In *Perez v. Town of North Providence*, 256 F. Supp. 3d 139 (D.R.I. 2017), the court granted the motion to amend, and the party opposing the motion had not raised the issue of prejudice at all.  In *Albrecht v. Long Island Railroad*, 134 F.R.D. 40 (E.D.N.Y. 1991), prejudice arose from the

---

[4] Just days ago, a county in Georgia again allowed the voter data of every voter in the state to fall into unauthorized hands.  *See* Mark Niesse & Arielle Kass, "*Check-in computers stolen in Atlanta hold statewide voter data*," Atlanta Journal-Constitution (Sept. 17, 2019), www.ajc.com/news/state--regional-govt--politics/check-computers-stolen-atlanta-hold-statewide-voter-data/0W40RoNQQ3maPRUt3KPYnL/ ("This isn't the first time express poll units have been stolen in the state.  In 2017, a Cobb County machine was stolen from a precinct manager's car.").  The persistent inability to secure Georgia elections is mindboggling and deeply disturbing.

risk that the trier of fact would be confused by unrelated testimony concerning two accidents at two different train stations. Here, the BMD-based voting equipment anticipated for next year will be integrated with components of the existing system; thus, these are not distinct things as in *Albrecht*. Further, this Court is fully capable of understanding any material distinctions between the current system and the forthcoming equipment that will be used with components of the current system.

Defendants' desired outcome—a whole new lawsuit on substantially the same claims and heavily overlapping facts and legal issues—would needlessly strain and waste judicial and party resources. (Opp. 6-8.) And it would serve no purpose other than the very delay Defendants once again seek in this litigation.

E. **Defendants' Alternative Relief Betrays Their True Goal: Delay**

Defendants ask, in the alternative, that the Court alter the Scheduling Order so that it basically adopts the timelines of a brand new case—one that has not already involved discovery on many of the underlying fact issues, extensive briefing and rulings by the Court on the underlying fact and legal issues, and even a frivolous appeal to the Eleventh Circuit. (Opp. 8-10.) What Defendants seek would be highly inefficient, highly prejudicial, and nonsensical. All it would do is delay this litigation for months, just as Defendants intend, again.

Defendants' request for alternative relief is also procedurally defective. It has no bearing on the standard applicable to Curling Plaintiffs' Motion, but rather is a free-floating request made apparently for Defendants' convenience. Defendants, if they wish to seek such relief, are required to do so on their own motion, which they have not done. Nor have they even bothered to confer with Plaintiffs on the issues underlying their alternative relief after Plaintiffs agreed to do exactly that. (*See* Exhibit 1.)

In contrast, Curling Plaintiffs offer an efficient and fair path forward that complies with Rule 1 of the Federal Rules of Civil Procedure. Plaintiffs informed Defendants on September 12, 2019, that they were willing to reasonably revise the Joint Preliminary Report and Discovery Plan, revisit its deadlines, and allow Defendants to file motions to dismiss (notwithstanding that any such motions would be frivolous) based on new allegations in the amended/supplemented complaints. (*See* Exhibit 1.) In fact, Plaintiffs agreed to all Defendants' requests except one: that discovery be stayed during the pendency of any meritless motions to dismiss. (*Id.*) Plaintiffs explained the inefficiency and prejudice of that one condition, and the fact that it has no bearing on the applicable standard for this Motion under Rule 15 (or the "good cause" standard under Rule 16, for that matter). (*Id.*) Defendants never responded, instead proceeding with their

Opposition for the obvious purpose of delaying these proceedings, in willful violation of Rule 1.

## II.  CONCLUSION

Defendants long maintained that Curling Plaintiffs would need to amend their complaint to address the forthcoming BMD-based system.  Now that they seek to do that, Defendants seek to delay this litigation as they have from the start.  No good reason exists to deny this Motion, and doing so would be highly inefficient and prejudicial.  The Court should grant this Motion.

Respectfully submitted this 23rd day of September, 2019.

| | |
|---|---|
| */s/ David D. Cross* | */s/ Halsey G. Knapp, Jr.* |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| John P. Carlin (*pro hac vice*) | GA Bar No. 425320 |
| Jane P. Bentrott (*pro hac vice*) | Adam M. Sparks |
| Robert W. Manoso (*pro hac vice*) | GA Bar No. 341578 |
| MORRISON & FOERSTER LLP | KREVOLIN & HORST, LLC |
| 2000 Pennsylvania Avenue, NW | 1201 West Peachtree Street, NW |
| Suite 6000 | Suite 3250 |
| Washington, DC 20006 | Atlanta, GA 30309 |
| (202) 887-1500 | (404) 888-9700 |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                                                                          */s/ David D. Cross*
                                                                                           David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2019, a copy of the foregoing **CURLING PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

                                              */s/ David D. Cross*
                                              David D. Cross

14