# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-cv-2989-AT |

**DECLARATION OF CHRIS HARVEY**

Pursuant to 28 U.S.C. § 1746, I, CHRIS HARVEY, make the following declaration:

1.

My name is Chris Harvey. I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

2.

I currently am the Director of Elections for the State of Georgia. I have held that position since July 2015. From August 2007 to July 2015, I was the Chief Investigator and Deputy Inspector General for the Secretary of State's office, investigating, among other things, potential violations of state election

law. For more than a decade, I have acquired firsthand knowledge of Georgia's election processes at both the state and county level. My office trains election superintendents and supervisors across the state of Georgia.

3.

Election officials across the state are working diligently to implement many significant updates to the election system that have been underway since last year, including the new Dominion BMD system pursuant to the July 29, 2019 contract entered by the Secretary of State.

4.

The process of running elections is an area of government activity that requires prudent decision-making and a rational approach when making changes to procedures or systems.

5.

No state has implemented risk-limiting audits without conducting a pilot program of those audits first. It is a best practice to review the best way to implement audits, because there is not a "one-size-fits-all" approach.

6.

The new BMD system combines superior features of paper ballots (efficient audit trails, multiple copies through precinct scanning) with the

best features of electronic voting (disability access, clear voter intent, avoiding overvotes).

7.

While there is no perfect election system, according to Verified Voting, BMDs were used in 41 states in 2018 and will be used in 44 states in 2020. *See* https://www.verifiedvoting.org/verifier/#year/2018/ and Georgia policymakers determined a paper-ballot system marked by BMDs provided the best option for Georgia's voters.

8.

We are making significant progress in our efforts to implement the new BMD system and remain on track to conduct the March 24, 2020 Presidential Preference Primary with the new system.

9.

Ballot-marking devices (BMDs), new optical scanners, new central computers, and secure ballot boxes for all of the pilot election counties have been delivered to those counties. County and state election officials have begun and are continuing to assess processes and procedures for handling the new components.

10.

Details for the processes and procedures in using BMDs are as small as whether to use carts or bags to transport components, how to handle sealing the components, and other items that require testing. The pilot program will help further refine the final decisions on these details

11.

Within the next 10 days, the next priority on the delivery schedule should be complete, which is delivering a BMD system (BMD with printer, optical scanner, and ballot box) to every county with a demonstration election loaded. That deployment to all 159 counties will provide local election officials the chance to begin training voters, poll workers, and others on the new system. Disrupting the delivery and training schedule to add additional pilot counties when early voting begins on October 14 (18 days from today) is simply not possible at this point because the deployment was designed around the existing pilot program's scope.

12.

As the BMDs are deployed, DREs and the existing GEMS components will be removed from counties and preserved by the state because most counties do not have the space to store both DREs and BMDs. The existing DREs and GEMS components will be stored by a state vendor after their

removal from each county, but the two systems will not exist side-by-side in any county. It is not practical to continue programming and using the existing GEMS/DRE system in a county once the rollout of the BMDs system is complete in that county.

13.

The six pilot counties are prepared to begin early voting on BMDs on October 14. The same system used for the early voting and election-day voting in November will also be used in any runoffs. The State has always intended to use the same system for runoffs as is used for the November elections. It would not make sense to bring back software and hardware that are obsolete in light of the Dominion contract.

14.

The State is also implementing the Court's order on the hand-marked-paper-ballot pilot program. We selected Cobb County as the jurisdiction in which to operate the Court's required pilot program.

15.

Each of the four municipalities that have elections in November 2019 in Cobb County have a significant number of voters, totaling more than 80,934 registered voters—more than the number of active registered voters in 139 Georgia counties.

5

16.

Austell has 5,288 registered voters, Kennesaw has 22,943 registered voters, Powder Springs has 12,235 registered voters, and Smyrna has 40,468 registered voters.

17.

It is also likely that some runoffs will occur in the Cobb elections, providing further data for the Court's required pilot program. For example, the Smyrna mayor's race has five candidates and the Austell mayor's race has four candidates.

18.

The State already planned to develop an emergency backup plan in case the BMDs were not available, such as in the case of a power outage. The data from the Cobb elections and large number of registered voters (80,000) will be helpful in drafting this emergency backup plan.

19.

State officials will be conducting a pilot risk-limiting audit or hybrid-risk-limiting audit for the City of Cartersville elections in Bartow County held in November 2019 (which is one of the pilot counties for the Dominion system). The State will then use the data from the pilot audit to develop the audit processes required by H.B. 316.

20.

The likelihood of elections in January, February, or March 2020 before the full implementation of the BMD system are remote. For vacancies in county and municipal offices, any special election in 2020 would have to be held on the date of the Presidential Preference Primary on March 24, 2020 or later by statute under O.C.G.A. § 21-2-541(c)(1)(B). For vacancies in the General Assembly, there is discretion for setting an election date. Because of this date window, any vacancy occurring on the second day of the session (Jan. 14, 2020) or thereafter will allow for a special election to be held on the March 2020 Presidential Preference Primary. December 1, 2019 is the last day that a writ could be issued for a special election to be held in 2019 and only a vacancy occurring between December 2, 2019 and January 14, 2020 would require a special election to be held prior to the Presidential Preference primary in 2020.

21.

Given the current statutory structure, the only way that any election would be held between January 1, 2020 and the March 2020 Presidential Preference Primary is if a vacancy occurs in the General Assembly between December 2, 2019 and January 14, 2020. The remoteness of the possibility that a vacancy occurs in the General Assembly in a county that does not have

7

at least the new Dominion scanners does not warrant adding additional hand-marked paper-ballot pilot elections using AccuVote optical scanners and the GEMS system or additional orders from this Court.

22.

The State is replacing the current ExpressPoll check-in units with new Poll Pads as part of the implementation of the BMD system. It would not be reasonable to require elections officials to change the software on systems (like the ExpressPolls) that will not be used after the 2019 elections, regardless of whether it is even possible.

23.

Under existing state law, the State provides the files to print paper voter-registration lists for each precinct and instructs counties to ensure that each precinct has a paper voter-registration list.

24.

If a voter believes he or she should be registered but does not appear on the electors' list, the proper remedy is to vote a provisional ballot and allow election officials to determine eligibility after the election. Election officials should then conduct a full search of all records beyond just the voter-registration database when determining eligibility of a provisional-ballot voter. The paper voter list is generated from the ENET voter-registration

database, which is the same database used to create the information in the ExpressPolls. There is no reason to have a paper copy of a county's entire elector list at each precinct because the voter would still be required by law to vote a provisional ballot and the county officials are better equipped to resolve questions of eligibility with the complete information available at a central elections office and greater transparency after the election.

25.

While there was an increase in total provisional ballots in 2018, there was almost no change in number of voters voting a provisional ballot between 2016 and 2018 because they did not appear on the elector list at a precinct. Almost all of the 4,861-ballot increase in provisional ballots over the 2016 election was due to voters voting provisional ballots out of their precinct (4,793 of the increase were out-of-precinct provisionals).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of September, 2019.

_____
CHRIS HARVEY

9