## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## PLAINTIFFS' JOINT MOTION FOR SANCTIONS

Pursuant to Rule 26(g)(3) and 37(a)(3) of the Federal Rules of Civil Procedure, 28 U.S.C. section 1927, and the inherent authority of the Court, Plaintiffs hereby jointly move for sanctions against State Defendants and fees and costs in Plaintiffs' favor against State Defendants, in the amounts detailed herein and in the declarations filed along with this motion.

## PRELIMINARY STATEMENT

For months, State Defendants obstructed and delayed discovery of the highly relevant GEMS databases.  That delay—and the corresponding protracted litigation—was premised on a falsehood: that the GEMS databases in Georgia are unique, confidential, and so sensitive that even Plaintiffs' highly-regarded election security experts could not be entrusted with copies of them under highly-secure

conditions.   After Georgia's GEMS databases were finally produced, Plaintiffs'

experts quickly discovered that those database are exactly like publicly-available

GEMS databases from other jurisdictions, and contain virtually no confidential

information.  They also are exactly like the GEMS databases left open on the CES

webserver at Kennesaw (Dkt. No. 258-1 at 129) for anyone to download for

months after Mr. Barnes, CES, and State Defendants were warned that those

databases were exposed.  (Dkt. No. 579 at 64-65 (citing *Curling v. Kemp*, 334 F.

Supp. 3d 1303, 1310 (N.D. Ga. 2018).)

State Defendants forced Plaintiffs and the Court to devote considerable time

and resources to litigating discovery of the GEMS databases.  They doubled down

on their misrepresentations to this Court even after Plaintiffs identified publicly-

available versions of GEMS databases, including from Cobb County, Georgia;

Pima County, Arizona; Marin County, California; and Pitkin County, Colorado.

(Dkt. No. 441 at 7-8, 199; Dkt. No. 487-3, Halderman Decl. at ¶ 16.)  As a result,

Plaintiffs wasted hundreds of hours of attorney time and staff time, incurred

substantial expert fees and unnecessary equipment costs, and were significantly

prejudiced by this time-consuming distraction leading up to the preliminary

injunction hearing.  Plaintiffs are entitled to all their fees and costs associated with

this unnecessary dispute, and sanctions are warranted to punish and deter such egregious misconduct by State Defendants.

## BACKGROUND

On March 27, 2019, Coalition Plaintiffs served the Secretary of State with Requests for Production seeking the GEMS databases prepared both before and after the November 6, 2018 election.  (Dkt. No. 416-1.)  On June 3, 2019, Curling Plaintiffs served State Defendants with Requests for Production, seeking, in relevant part, "[a]ll voting data, configuration data, and log files . . . [from the] GEMS servers."  (Dkt. No. 582-1 at Request No. 15.)  As Dr. Halderman explained, the GEMS server "is essentially the nexus of the whole election system."  (Dkt. No. 438 at 9:13-15.)  It is "a place from which ballot programming is [] produced and distributed down through the counties to the voting machines throughout the state.  So that positioning makes it an ideal point for an attacker to begin an infection that they would try to spread to voting machines in the field." (*Id.* at 9:15-21.)

Curling Plaintiffs originally sought "to be able to perform forensics on the GEMS *server* to see if there is evidence that such an infection did occur," (*id.* at 9:21-23) (emphasis added), but tabled that request—in light of State Defendants' obstruction—to narrow the then-pending dispute before the Court to just the

GEMS databases as an initial step in analyzing the election system (Dkt. No. 455 at 2).

State Defendants' initial response to the discovery of the GEMS databases (as distinct from the GEMS servers where such GEMS databases are created) was to claim that every part of the GEMS databases were beyond the scope of discovery because they contained "sensitive and secure information which could jeopardize election system security if disclosed."  (Dkt. No. 416-2 at 4-5, Defendants' June 5, 2019 Objections and Responses to Coalition Plaintiffs' First Request for Production of Documents; *see also* Dkt. No. 420-1 at 18, State Defendants' June 18, 2019 Objections and Responses to Curling Plaintiffs' First Request for Production of Documents).  After Coalition Plaintiffs reminded State Defendants that the Secretary in other litigation had acknowledged that "the *data* from the GEMS is public record," (*see* Dkt. No. 416 at 2 (emphasis added)), State Defendants shifted their position, claiming that while the data might not be confidential, the "structure" or "architecture" of the GEMS databases was confidential.  When confronted with evidence showing that the "structure" and "architecture" of other states' GEMS databases was a matter of public record (with GEMS databases from other states having been posted on the internet), State Defendants claimed that the structure of *Georgia's* GEMS databases was unique:

4

"The GEMS Databases are protected and carefully guarded under state law and *are unique to the state of Georgia—which runs a version not used in any other state*." (Dkt. No. 416 at 4 (emphasis added).)

Plaintiffs then confronted State Defendants with sworn testimony of Merle King, the former Executive Director of Georgia's CES, who testified in the Pima County, Arizona case that the "structure of the [GEMS] database is consistent through all jurisdictions that use GEMS.'" (Dkt. No. 441 at 6). Plaintiffs explained that Mr. King's testimony "directly contradicted" "the Secretary of State's current position." (*Id.*) Still, State Defendants' misrepresentations continued.

State Defendants repeated these false claims over the weeks of negotiations, teleconferences, briefing, and Court conferences that followed. On June 28, 2018, State Defendants' counsel represented to this Court: "Georgia has a slightly different version of a GEMS database than other states." (Dkt. No. 438 at 16:12-13.) State Defendants' counsel even claimed that "the whole point of keeping that information out of the public realm is so that nobody has the roadmap so they easily write or more easily write malware that could infect the system." (*Id.* at 36:22-37:1.) During a July 11, 2019 conference with the Court, Merritt Beaver, Georgia Secretary of State's Chief Information Officer, represented to this Court

that "the Georgia database has unique elements." (Dkt. No. 482 at 9:22-25.) He went on to state (referring to the publicly available 2002 Cobb County GEMS database that Coalition Plaintiffs' expert Matt Bernhard had found was identical to others states' GEMS databases): "*[F]rom what I can tell whatever they have from 2002* was never an actual GEMS database that was used in Georgia." (*Id.* at 11:9-11 (emphasis added).) Each and every one of these representations was false. Indeed, Mr. Beaver was forced to admit this under cross examination at the preliminary injunction hearing, conceding that Georgia's GEMS databases match the publicly-available 2002 Cobb County database. (Dkt. No. 570 at 29:2-15.)

State Defendants' many misrepresentations are especially egregious because Plaintiffs repeatedly provided them with the means to confirm that those representations were false—yet State Defendants persisted time and time again. Several GEMS databases were publicly available on the internet for years, including the 2002 Cobb County database and a 2010 Marin County database. (Dkt. No. 487-3, Halderman Decl. at ¶¶ 13-16.) Not only could State Defendants easily have accessed and compared these databases themselves, but Plaintiffs made this even easier for State Defendants by providing them with screen shots of the publicly-available 2002 Cobb County database. (Dkt. No. 455 at 29-77, Ex. B.) Indeed, when specifically asked by this Court if he had looked at the exhibit

6

provided by Plaintiffs—which, again, included screen shots from the publicly-available 2002 Cobb County database—Mr. Beaver stated that based on his comparison with Georgia's GEMS database structure, "only a handful of tables are common . . . out of 49, there's probably less than 10." (Dkt. No. 482 at 11:2-5.) Again, Mr. Beaver finally admitted on the stand that this was untrue.[1] (Dkt. No. 570 at 26:4-29:15.)

Following weeks of obstruction and time-consuming litigation over this issue, as well as constructing and maintaining a secure facility within counsel's offices and at the University of Michigan, Plaintiffs' experts were able to quickly

---

[1] Mr. Beaver testified that he never actually compared the 2002 Cobb County database to Georgia's GEMS databases, contrary to what he had represented to this Court. (Dkt. No. 570 at 27:12-17.) Given Mr. Beaver's many false and misleading statements in this case, including under oath (and including his August 13, 2018 sworn declaration, Dkt. No. 265-1), it is unclear whether this testimony was true. His unreliability as a witness leaves open the possibility that he actually did review the 2002 Cobb County database screen shots Plaintiffs had provided before representing to the Court that it was fundamentally different from the current GEMS databases in Georgia. Regardless, either scenario warrants severe sanctions. He has shown himself to be unconcerned with the candor and truthfulness his oath requires and to be willing to deliberately mislead this Court about critically-important facts, including not just the GEMS databases but the security of the Georgia election system that is at the core of this case. (Dkt. No. 265-1, Beaver Decl. ¶ 5 ("We . . . conduct[] regular cyber assessments with penetration testing . . . .").) And he is not some low-level employee—he is the highest ranking officer at the Secretary of State's Office responsible for its IT systems, including its election networks and data.

7

confirm that State Defendants' representations regarding the confidentiality and uniqueness of the Georgia GEMS databases were remarkably false. (*See* Halderman Decl. 487-3 at ¶¶ 13-18.) As Dr. Halderman testified, "contrary to the expressed position of the state that there was something unique to Georgia about these databases . . . there is actually nothing whatsoever unique about the structure of the Georgia GEMS databases. It is identical to the structure of databases in several other states, including databases that are public on the internet." (Dkt. No. 571 at 89:15-23.)

Thus, it is now beyond dispute that State Defendants repeatedly misrepresented to this Court critical facts regarding Georgia's GEMS databases—including after receiving information confirming the falsity of those claims—as part of a sustained campaign to obstruct highly relevant discovery, distract and delay Plaintiffs and their experts from other important discovery and preparations for a two-day evidentiary hearing, and further mislead this Court and the public about the true nature of the extraordinary vulnerabilities of the Georgia election system. Ironically, what State Defendants ultimately achieved with this campaign—other than wasting time and resources—was conceding the merits of Plaintiffs' claims: that "the roadmap" that enables hackers to "easily write or more easily write malware that could infect the system" has been publicly available for

years.  (Dkt. No. 438 at 36:22-37:1.)  Thus, by State Defendants' own admission, Georgia voters can have little, if any, confidence that any vote they cast in that system—in use now and *at least* until March 24, 2020[2]—actually counts as intended.

State Defendants' typical casual treatment of Georgia's GEMS databases further confirms the bad faith behind their repeated misrepresentations to this Court.  CES Director, Michael Barnes, disclosed at the preliminary injunction hearing that these same 2018 GEMS databases were created by three offsite contractors in their homes without verifiably-secured conditions or confidentiality agreements to safeguard the purportedly highly confidential information.  (Dkt. No. 570 at 84:6-87:9).  Thus, except when fighting Plaintiffs' legitimate attempts to discover this highly relevant evidence, State Defendants displayed little concern about the security of the GEMS databases.

---

[2] The Court has already expressed concern over whether Defendants will be able to fully roll out a new statewide voting system by the March 24, 2020 presidential primary date.  (Dkt. No. 579 at 137-39.)

## ARGUMENT

## I.   STATE DEFENDANTS' EGREGIOUS AND PERSISTENT MISCONDUCT WARRANTS SANCTIONS.

State Defendants' misconduct warrants sanctions under at least four separate standards.

### A.   Rule 37(a)(5) Mandates an Award of Plaintiffs' Fees and Costs

Federal Rule of Civil Procedure 37(a)(5) provides that where a motion to compel discovery is granted—or if the disclosure or requested discovery is provided after such motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  The Eleventh Circuit reached the "inescapable conclusion," in construing the predecessor version of Rule 37(a)(5), that "sanctions under Rule 37(a)(4) are mandatory unless the court finds a substantial justification for discovery delays."  *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993).  "Where the producing party's actions necessitate the motion to compel, or where the objections and failure to respond are not substantially justified, an award of sanctions is appropriate." *Murphy v. Cooper Tire & Rubber Co.*, No. 5:08cv40/RS/EMT, 2008 WL 5273548,

at *6 (N.D. Fla. Dec. 18, 2008). That State Defendants' objection to producing the GEMS databases was *not* substantially justified is beyond dispute.

As detailed above, State Defendants initially objected to Plaintiffs' request to produce the GEMS databases, citing confidentiality concerns, prompting the Coalition Plaintiffs to initiate the discovery dispute process under this Court's Standing Order.[3] The parties met and conferred on June 10 and 19, 2019, regarding this request, but State Defendants refused to provide the requested discovery. During both conferences, State Defendants premised their objection upon the false assertions that the GEMS databases were confidential and unique. Indeed, as stated in their response to Coalition Plaintiffs' June 21, 2019 discovery motion, "[t]he GEMS Databases . . . are unique to the state of Georgia—which runs a version not used in any other state." (Dkt. No. 416 at 4.) This was demonstrably false, and even a cursory review of the publicly-available information identified by Plaintiffs would have confirmed this.

State Defendant's objection not only necessitated the filing of Coalition Plaintiffs' June 21 discovery motion, but a lengthy teleconference with the Court on June 28, 2019, and additional briefing filed on July 1, July 3, and July 8, and

---

[3] Dkt. No. 416. Curling Plaintiffs joined in Coalition Plaintiffs' request by notice dated June 21, 2019. (Dkt. No. 420.)

July 9, 2019.  Following this extensive briefing, on July 9, 2019, the Court ordered State Defendants to produce the GEMS databases to the Plaintiffs.  (Dkt. No. 463.) That is, the Court granted Plaintiffs' discovery motion and the requested discovery was provided, but only after Plaintiffs had agreed to elaborate security protocols for the databases that were (and remain) unnecessary.  Moreover, the Court's involvement should never have been required.

Because the Court granted Plaintiffs' discovery motion, Rule 37 mandates an award of fees and costs unless State Defendants can demonstrate that their conduct was "substantially justified."  Fed. R. Civ. P. 37(a)(5)(ii).  They cannot. The Supreme Court has instructed that "'[s]ubstantially justified' means that reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (internal quotation marks added). State Defendants cannot proffer the necessary substantial justification for their objection premised upon admittedly-false representations because a simple comparison of the GEMS databases to publicly available databases would have revealed—and ultimately did reveal—their falsity.  Thus, even if the Court were to give State Defendants the benefit of the doubt and assume that they did not *knowingly* misrepresent facts to the Court (which would reveal a shocking and deeply disturbing ignorance about the admitted ability of a hacker to "easily write

12

malware that could infect the system"), their conduct still would be wholly unreasonable and thus unjustifiable. *At best*, they made repeated, persistent representations to this Court based on their objection to highly relevant discovery without taking the simple and obviously necessary step of comparing the State of Georgia's GEMS databases to the publicly-available information Plaintiffs had identified on repeated occasions even months before the dispute.[4]

This district has previously found no substantial justification where a defendant and their counsel failed to take such rudimentary steps to confirm their representations. In *Go Medical Industries Pty, Ltd. v. Inmed Corp.*, during the course of discovery, the defendants represented that the tip of their allegedly infringing catheter device did not measure 1.5 centimeters. 300 F. Supp. 2d 1297, 1307-08 (N.D. Ga. 2003), *aff'd sub nom.* 471 F.3d 1264 (Fed. Cir. 2006). They did so without taking the simple step of measuring the device. *Id.* at 1308. The court found that "Defendants' apparent failure to take the obvious step of measuring the length of their catheter's insertion tip is not substantial justification

---

[4] At worst, State Defendants knowingly made those repeated misrepresentations (even if State Defendants' counsel did not know the falsity of their own representations because they disregarded their duty to assess and confirm those representations, it seems likely that those familiar with the GEMS databases at the Secretary of State's Office knew the representations were false).

for failing to comply with the requirements of the discovery process." *Id.*

Likewise, here, assuming State Defendants failed to compare their purportedly

unique and confidential GEMS databases to publicly-available databases *that*

*Plaintiffs identified for them*, that would offer no justification for their

misrepresentations and obstruction of highly relevant discovery, which led to

hundreds of hours of attorney time and substantial expert fees and other costs.

Given the lack of substantial justification for their conduct, Rule 37 mandates an

award of Plaintiffs' fees and costs.

### B.      Rule 26(g) Mandates Sanctions

Federal Rule of Civil Procedure 26(g)(3) imposes sanctions for failing to

conduct a reasonable inquiry prior to signing a discovery response or objection.

Rule 26(g) was "designed to curb discovery abuse by explicitly encouraging the

imposition of sanctions." Fed. R. Civ. P. 26(g) advisory committee's note to 1983

amendment.  It requires an attorney to sign "every discovery request, response or

objection." Fed. R. Civ. P. 26(g)(1).  The signature, in relevant part, "certifies that

to the best of the person's knowledge, information, and belief formed after

a reasonable inquiry . . . " the request, response, or objection "is  . . . not interposed

for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation." *Id.*  If a certification is made in violation of

Rule 26(g), "the court . . . *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction *may* include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  *Id.* (emphasis added).  That is, sanctions are "mandatory" where a certification violates Rule 26(g).  *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993).

State Defendants' counsel signed multiple objections and responses in which they certified, subject to Rule 26(g), that Georgia's GEMS databases were unique and highly confidential.  For example, on June 5, 2019, in objections to Coalition Plaintiffs' discovery requests, State Defendants' counsel represented that confidentiality and security concerns prevented the disclosure of the GEMS databases.  (Dkt. No. 416-2 at 2-6.)  On June 21, 2019, State Defendants responded to Plaintiffs' discovery motion by representing that "[t]he GEMS Databases are . . . unique to the state of Georgia—which runs a version not used in any other state." (Dkt. No. 416 at 4.)  On June 28, 2019, in objections to Curling Plaintiffs' discovery requests, State Defendants' counsel represented that the GEMS databases contain "confidential information and/or sensitive election security information, the disclosure of which would put the security of Georgia's elections and elections system at risk."  (Dkt. No. 420-1 at 18.)  As noted above, each of

these representations was false—and even a cursory review of readily-available information, including that provided by Plaintiffs, would have immediately confirmed the falsity of these claims.  These false representations necessitated weeks of litigation, thereby unnecessarily delaying and increasing the cost of this litigation.

Courts in this district and circuit have imposed sanctions under Rule 26(g) under similar circumstances, where counsel failed to corroborate representations by their clients (which assumes State Defendants' counsel did not know their representations were false).  For example, in *In re Delta/AirTran Baggage Fee Antitrust Litigation*, the court sanctioned Delta's counsel for failing to confirm that certain hard drives were searched and for failing to independently confirm discovery representations made by their client.  846 F. Supp. 2d 1335, 1350-51 (N.D. Ga. 2012).  The *Delta* court particularly noted that given "extensive questioning" raised as to the evidence in question, Delta's counsel should have conducted further inquiry.  *Id.*  Moreover, the *Delta* court found sanctions particularly warranted given counsel's "repeated" and "unequivocal" false representations, as well as the fact that counsel "did not promptly correct its factual misrepresentations to the Court."  *Id.* at 1351; *see also Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1334 (S.D. Fla. 2007) (finding Rule 26(g)

16

violated where attorney relied on client's assurances in drafting

discovery responses without confirming assurances by reviewing underlying

financial records).

Here, State Defendants' counsel would have been alerted to the falsity of

their representations (assuming they did not already know of that falsity) had they

taken the simple step of comparing the current GEMS databases to publicly-

available databases, including those Plaintiffs identified.  State Defendants'

counsel should have taken this simple step prior to claiming confidentiality and

uniqueness on June 5, 2019.  That failure alone warrants sanctions under Rule

26(g).  But their persistence with their false representations, on June 18, June 21

and June 28 for example—even after the extensive questions raised by Plaintiffs

*and this Court* regarding the GEMS databases and even after Plaintiffs provided

them information readily debunking their claims—demands sanctions under Rule

26(g).[5]  To date, State Defendants' counsel still have not corrected their repeated

misrepresentations to the Court—their filings remain on the Court's docket exactly

as originally filed, as do their written discovery responses.  They even refused to

---

[5] When Plaintiffs asked Mr. Beaver and State Defendants' counsel during meet and
confers whether they had reviewed the 2002 Cobb County database, they refused
to answer.

withdraw their utterly frivolous and highly inappropriate motion to seal screen

shots of the GEMS databases.  (Dkt. No. 573 at 2.)  Rule 26(g) mandates sanctions

for this persistent misconduct.

### C.    Sanctions Are Warranted under 28 U.S.C. § 1927

Section 1927 authorizes the court to sanction an attorney "who so multiplies

the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  It

permits a district court to "assess attorney's fees against litigants, counsel, and law

firms who willfully abuse the judicial process by conduct tantamount to bad

faith."  *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).  This analysis is an

objective one.  Therefore, "the district court . . . must compare the attorney's

conduct against the conduct of a 'reasonable' attorney and make a judgment about

whether the conduct was acceptable according to some objective standard."

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239-42 (11th Cir. 2007).

Notably, "a district court may impose sanctions for egregious conduct by an

attorney even if the attorney acted without the specific purpose or intent to

multiply the proceedings."  *Id.* at 1241.  Instead, "objectively reckless conduct is

enough to warrant sanctions even if the attorney does not act knowingly and

malevolently."  *Id.*  State Defendants' counsel's repeated misrepresentations—

which they still have not corrected—were, *at best*, objectively reckless and warrant

sanctions.

Even if State Defendants' counsel's initial claims that Georgia's GEMS

databases are unique and confidential were merely negligent, that they repeated

those falsehoods for weeks (in email correspondence and teleconferences with

Plaintiffs' counsel and filings and teleconferences with the Court), including after

Plaintiffs challenged those claims and even identified publicly-available

information debunking them, would be—at best—reckless and thus sanctionable.

The moment Plaintiffs challenged State Defendants' claims, their counsel was

obliged to take reasonable and necessary steps to evaluate the truthfulness of the

claims they themselves were making on their clients' behalf.  At the very least,

they bore a duty compare the current GEMS databases in Georgia to the publicly-

available GEMS databases Plaintiffs identified.  This would have taken mere

minutes given Plaintiffs provided them screenshots for that comparison.  Any

reasonable attorney interested in the truth rather than delay and obstruction would

have taken that basic step.  But State Defendants' counsel either did *not* do that and

persisted with their false claims anyway, or worse, they did the comparison and

knowingly misrepresented the facts.  Either explanation is "tantamount to bad

faith."  *Avirgan*, 932 F.2d at 1582.

State Defendants willfully persisted with their repeated misrepresentations without regard to the substantial cost to Plaintiffs and the significant prejudice from protracted and distracting discovery litigation in the final weeks leading up to the preliminary injunction hearing.  They did so also without regard to the substantial cost and burden for the Court, knowing full well the Court's own limited availability due to travel obligations at the time.  Their obstinacy was, at best, objectively reckless and, more precisely, actual bad faith.  Sanctions are warranted to punish and deter such egregious misconduct.  *See Bernal*, 479 F. Supp. 2d at 1332 (finding the requisite bad faith under Section 1927 where an attorney "relied solely on the word of his client before filing the affidavit.")

### D.    The Court Also Has Inherent Authority to Impose Sanctions

The Court also possesses inherent power to sanction parties or attorneys appearing before it.  "[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.'" *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985) (citation omitted).  A court may appropriately sanction a party or attorney who "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978).

20

"The key to unlocking the court's inherent power is a finding of bad faith," and a party may "demonstrate[] bad faith by delaying or disrupting litigation." *In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1304 (11th Cir. 2006).

"Courts have held that requests for sanctions under § 1927 and the Court's inherent authority are similarly analyzed." *Mack v. Delta Air Lines, Inc.*, No. 1:13-CV-1162-SCJ-AJB, 2014 WL 12628620, at *8 (N.D. Ga. Aug. 11, 2014), *report and recommendation adopted*, No. 1:13-CV-1162-SCJ-AJB, 2014 WL 12629941 (N.D. Ga. Sept. 24, 2014), and *aff'd,* 639 F. App'x 582 (11th Cir. 2016). Thus, sanctions are warranted under the Court's inherent authority for the same reasons as under Section 1927. State Defendants' persistent false assertions regarding the purported uniqueness and confidentiality of the GEMS databases— which either were knowingly false or lacked a reasonable inquiry, despite having ready access to materials that debunked those claims—were bad faith or at least tantamount to bad faith. Thus, sanctions are warranted.

## II.   THE SANCTIONS PLAINTIFFS SEEK ARE REASONABLE AND JUSTIFIED

Given State Defendants' repeated misrepresentations—which were either knowingly false or reckless—Plaintiffs seek their reasonable attorneys' fees and costs incurred in litigating the production of the GEMS databases and in litigating this motion. Again, Rules 26(g) and 37(a)(5) mandate an award of such fees and

costs under the circumstances here.  Although sanctions under Section 1927 and the Court's inherent authority are discretionary, such sanctions are warranted here for the reasons described above.

Curling Plaintiffs request reimbursement of fees and costs in the amount of **$162,780.74**, to be supplemented at a later time to include additional amounts incurred litigating this motion.

As set forth in the Declaration of David Cross, which is attached as **Exhibit 1** ($120,338.75), and in the Declaration of Halsey Knapp, which is attached as **Exhibit 2** ($1,460), the current request for attorneys' fees and costs are reasonable and include the many hours Curling Plaintiffs' counsel spent communicating with their expert, Coalition Plaintiffs, and State Defendants' counsel about this issue; drafting discovery filings; and engaging in teleconferences with State Defendants' counsel and the Court, all resulting from State Defendants' persistent false representations regarding the GEMS databases.

Non-local rates are appropriate in the particular circumstances of this case. As the Court recognized in its July 9, 2019 Order on the GEMS Dispute, the Curling Plaintiffs' success hinged upon their "strong showing of an institutional capacity to maintain the highest level of confidential protective measures."  (Dkt. No. 463 at 14).  The Court noted Morrison & Foerster's "reliabil[ity]" and "well

established institutional expertise" "in Washington, D.C." and under the

supervision of specific counsel based in Washington, D.C.  (*Id.*)  Further, Curling

Plaintiffs made reasonable efforts to find counsel located in the Atlanta area

willing to represent them in this case, and were unable to find any.  (Cross Decl. ¶

25.)

As set forth in the Declaration of Dr. J. Alex Halderman, which is attached

as **Exhibit 3** ($40,981.99), Curling Plaintiffs also seek reimbursement of the

expenses and substantial time their expert Dr. Halderman was required to spend on

this issue, including drafting declarations, assisting with Court filings, participating

in teleconferences with State Defendants' counsel and the Court, and comparing

the GEMS databases to publicly-available GEMS databases.  Curling Plaintiffs do

not seek the fees and costs associated with the substantive analyses of the GEMS

databases once finally produced, since that work was always intended.

Coalition Plaintiffs request reimbursement of fees and costs in the amount of

**$134,587.75**.   As set forth in the Declaration of Bruce P. Brown, which is attached

as **Exhibit 4**, the fees and costs are reasonable and include the many hours

Coalition Plaintiffs' counsel spent litigating the discovery of the GEMS databases,

including communicating with State Defendants' counsel,  drafting discovery

filings, engaging in teleconferences with State Defendants' counsel and the Court,

23

and conferring with Coalition Plaintiffs' experts.  Coalition Plaintiffs also seek

reimbursement of the cost incurred for the time their expert Matt Bernhard was

required to spend on this issue, including actually discovering the similarity of

Georgia's GEMS database to other publicly-available databases, drafting

declarations; assisting with Court filings; and participating in teleconferences with

State Defendants' counsel and the Court.  Coalition Plaintiffs also seek

reimbursement of the costs incurred by expert Ritchie Wilson, who assisted Mr.

Bernhard and Dr. Halderman at the University of Michigan.  Mr. Wilson's

engagement was necessitated because of the unnecessary restrictions of working in

a secure Ann Arbor laboratory.

Unfortunately, nothing can remedy the significant prejudice Plaintiffs

suffered from this wholly-unnecessary and colossal waste of time and resources

that distracted their counsel, experts, and others from critical preparations for the

July 25-26 preliminary injunction hearing.  This highlights the reasonableness of

the fees and costs Plaintiffs seek, since they constitute only a portion of the harm

State Defendants caused Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant

this motion and award Plaintiffs' the fees and costs sought here, needlessly and

inappropriately caused by State Defendants' repeated false representations to

Plaintiffs and this Court regarding the GEMS databases.

Respectfully submitted this 11th day of October, 2019.


 /s/ David D. Cross                     /s/ Halsey G. Knapp, Jr.
David D. Cross (*pro hac vice*)         Halsey G. Knapp, Jr.
John P. Carlin (*pro hac vice*)         GA Bar No. 425320
Jane P. Bentrott (*pro hac vice*)       Adam M. Sparks
Robert W. Manoso (*pro hac vice*)       GA Bar No. 341578
MORRISON & FOERSTER LLP                 KREVOLIN & HORST, LLC
2000 Pennsylvania Avenue, NW            1201 West Peachtree Street, NW
Suite 6000                              Suite 3250
Washington, DC 20006                    Atlanta, GA 30309
(202) 887-1500                          (404) 888-9700

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*


/s/ Bruce P. Brown                      /s/ Robert A. McGuire, III
Bruce P. Brown                          Robert A. McGuire, III
Georgia Bar No. 064460                  Admitted Pro Hac Vice
BRUCE P. BROWN LAW LLC                    (ECF No. 125)
1123 Zonolite Rd. NE                    ROBERT MCGUIRE LAW FIRM
Suite 6                                 113 Cherry St. #86685
Atlanta, Georgia 30306                  Seattle, Washington 98104-2205
(404) 881-0700                          (253) 267-8530

*Counsel for Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC

3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

*/s/ David Brody*
David Brody
John Powers
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

*Counsel for Coalition Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER , ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, a copy of the foregoing **PLAINTIFFS' JOINT MOTION FOR SANCTIONS** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross

28