# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br><br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## COALITION PLAINTIFFS' CORRECTED DETAILED SPECIFICATION IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

*I.*   *INTRODUCTION* ........................................................................ *3*

*II.*   *COALITION PLAINTIFFS ARE PREVAILING PARTIES* ..................... *5*

  **A.**   **Preliminary Injunction Entitles Plaintiffs to An Award of Fees** ......... **5**

  **B.**   **Plaintiffs Obtained an Excellent Result** ............................................ **6**

  **C.**   **Excellence of Result Further Confirmed by Specific Relief Granted** ...... **9**
    1.   Ban on DREs After 2019 ..................................................................... 9
    2.   Providing a Constitutional Alternative to BMDs for 2020 Elections ............. 10
    3.   Audits .................................................................................................. 11
    4.   Electronic pollbooks and Related Injunctive Relief ............................... 12

  **D.**   **No "Special Circumstances" Warranting Reduction in Fees** ............ **15**
    1.   Passage of HB 316 Does Not Impact Award .......................................... 15
    2.   Two Sets of Plaintiffs Does not Warrant Reduction ............................... 23

*III.*   *LEGAL STANDARD* ................................................................... *25*

*IV.*   *REASONABLENESS OF TIME* ..................................................... *26*

*V.*   *REASONABLENESS OF THE AMOUNT OF TIME SPENT* .............. *28*

  **A.**   **Overall Size and Complexity of the Case** ...................................... **28**

  **B.**   **Narrative Description of the Work** ................................................. **28**
    1.   Phase I: 2017 to February 28, 2018: Case Initiation through Steptoe & Johnson Withdrawal ..................................................................................... 29
    2.   Phase II: March 1, 2018 to June 30, 2018: Third Amended Complaint and Motions to Dismiss ................................................................................. 31
    3.   Phase III: July 1, 2018 to September 19, 2018 - 2018 Motion for Preliminary Injunction ............................................................................................... 32
    4.   Phase IV: September 20, 2018 to October 2, 2018 – Motion to Stay, Motion for Additional Injunctive Relief, Appeal ...................................................... 34
    5.   Phase V: October 3, 2018 to February 8, 2019: Stay, 2018 Election, Appeal ... 34
    6.   Phase VI: February 9, 2019 to August 15, 2019: 2019 Motion for Preliminary Injunction ............................................................................................... 36
    7.   Phase VII: August 16, 2019 to Present: Post-Injunction Enforcement and Fees 48

*VI.*   *REASONABLENESS OF RATES* ................................................. *50*

*VII.*   *REASONABLENESS OF EXPENSES AND CGG TIME* ................... *55*

*VIII.*   *SUMMARY* .............................................................................. *58*

Having timely filed a Special Motion for Award of Attorneys' Fees and Costs (Doc. 595)("the Special Motion"), the Coalition Plaintiffs now submit this Detailed Specification of those fees pursuant to Local Rule 54.2A(2).

## I.    INTRODUCTION

This case has vindicated and protected the rights of seven million Georgians to vote and to have their vote counted.  In the face of daily warnings from the nation's top intelligence and cyber-security officials, the State of Georgia refused to recognize or address the profound vulnerability of its DRE voting system.  The evidence – from the State's willful failure to address the impact of the exposure at CES/KSU to the State's courtroom admission that the GEMS databases are built by contractors in their homes – confirmed that the State would be a prime target for disruption or undetectable malicious manipulation.

But for this litigation and the granting of injunctive relief, Georgia would still be using the DRE system, and its faulty electronic pollbooks, in elections in 2020 and would have no constitutional alternative to fall back upon in the event the State's new BMD system cannot be deployed for 2020 elections.  Without the injunctive relief that has been obtained by the Plaintiffs, the risk of catastrophe for the voters of Georgia was real and substantial. The Court has provided for fail-safe alternatives to protect 2020 elections from the extreme risks of using paperless

DREs by requiring the use of hand-marked paper ballot in pilot elections and in the event the BMD system cannot be implemented on time or is itself found to be constitutionally defective.  The Court also directed the State to address the defects in the electronic pollbooks that are part of the DRE voting system.

Though much work needs to be done by the State of Georgia before it deploys a safe, constitutional voting system, the granting of injunctive relief at this stage already constitutes success on the merits entitling the Coalition Plaintiffs to an award of reasonable attorneys' fees and expenses.

Coalition Plaintiffs should be awarded their attorneys' fees and expenses incurred to date of $1,408,558 and $415,984, respectively, as prevailing parties under 42 U.S.C. § 1988 based on this Court's August 15, 2019 Order ("the Preliminary Injunction," Doc. 579) granting in part Coalition Plaintiffs' Motion for Preliminary Injunction (Doc. 419).  Pursuant to Local Rule 54.2, this Brief and the attachments hereto contain a "detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation." In Part II, this Brief restates and supplements the basis of which entitlement to the award is claimed as originally set forth in the Special Motion (Doc. 595).  Part III of this Brief summarizes the familiar legal standards.  Part IV addresses the reasonableness of the amount of time spent on the case, providing a detailed

narrative description of the work.  Part V addresses the reasonableness of the rates, Part VI addresses the reasonableness of the expenses, and Part VII provides a summary of the amounts sought.

## II.     COALITION PLAINTIFFS ARE PREVAILING PARTIES[1]

### A.     Preliminary Injunction Entitles Plaintiffs to An Award of Fees

It is well established that "a preliminary injunction is a 'material alteration of the legal relationship of the parties'" entitling the plaintiff to an award of fees and expenses as the prevailing party under Section 1988.  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009).  *See also Williams a/k/a Occasional Superstar v. City of Atlanta,* No. 1:17-CV-1943-AT, 2018 WL 2284374, at *3 (N.D. Ga. Mar. 30, 2018) ("*Occasional Superstar*") (*"*More recently, the Supreme Court reiterated its repeated holding that, 'an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party test].' *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (finding the plaintiff to be

---

[1] Parts II(A), (B) and (C) of this Brief are substantially the same as the discussion in the Coalition Plaintiffs' Special Motion (Doc. 595), and have been restated herein for the Court's convenience.

a prevailing party when he obtained an injunction to terminate a continuing threat of potential criminal sanctions for engaging in public protest activity.")).[2]

In the Preliminary Injunction, this Court materially altered the legal relationship of the parties by ordering immediate, wide-spread injunctive relief relating to multiple aspects of the State's election system, as explained in greater detail below.

### B.        Plaintiffs Obtained an Excellent Result

The Preliminary Injunction granted the Coalition Plaintiffs substantial relief – an "excellent result" – on the merits.  In this litigation, the Plaintiffs claimed a First and Fourteenth Amendment right to cast a vote that is properly counted.  *See generally Curling v. Kemp,* 334 F. Supp. 3d 1303 (N.D. Ga. Sept.17, 2018); (Preliminary Injunction, Doc. 579 at 3).  In the Complaint and in the Amended Complaints, the Plaintiffs alleged that the State Defendants were infringing on their right to cast a vote that is properly counted by continuing to use the

---

[2] Fee awards to prevailing plaintiffs in a § 1983 civil rights action are not limited to those actions where damages are either sought or obtained.  *Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.").

profoundly vulnerable DRE system, and, in similar counts under the Equal

Protection and Due Process Clauses of the U.S. Constitution, sought to enjoin the

State Defendants from using the DREs in future Georgia elections and to address

the defects in the electronic pollbooks, and for other relief.

Over the course of this litigation, the Plaintiffs amassed mountains of

evidence and expert testimony proving the defective operation of the DRE voting

system and the security risks it posed, cataloguing the "pervasive voting problems

arising in the 2017-2018 election period," (Doc. 579 at 5), and supporting the

equities of granting injunctive relief.  The evidentiary record Plaintiffs established

is detailed in the Court's exhaustive 46-page September 17, 2018 Order, which

found Plaintiffs' "are substantially likely to succeed on the merits of one or more

of their constitutional claims," (Doc. 309), in the Court's 61-page May 21, 2019

Order, which denied Defendants' motion to dismiss as to each of the Coalition

Plaintiffs' claims,[3] (Doc. 375), and most recently in the Court's 153-page August

15, 2019 Order.  (Doc. 579).

Coalition Plaintiffs also defeated *each* of the numerous defenses raised by

the Defendants, including the alleged absence of concrete injury in fact (addressed

---

[3] In the May 21, 2019 Order, the Court denied in its entirety the Defendants' motions to dismiss the Coalition Plaintiffs' Complaint.  (Doc. 375 at 61).

at Doc. 309 pages 17-22), lack of causation (*id.* at 22), lack of redressability (*id.* at 25-26), alleged "manufactured standing" (*id.* at 27), lack of organizational standing (*id.* at 27), lack of standing due to residency of named plaintiffs (*id.* at 28-29), "meritless" Eleventh Amendment immunity defenses (*id.* at 29 – 30), application of res judicata and collateral estoppel (Doc. 375 at 14-34), failure to state a viable claim for due process and equal protection violations (*id.* at 34 – 53), supposed improper joinder of the Members of the State Board of Elections (*id.* at 53 – 54), and the alleged need to join as parties defendant the municipalities conducting November 2019 election (Doc. 579 at 12-21).

In the Preliminary Injunction, the Court agreed that the "record in this case is substantial," (Doc. 579 at 5), that the Plaintiffs had carried their burden of establishing a likelihood of success on the merits, and that the equities compelled the granting of wide-ranging injunctive relief.   (Doc. 579 at 129 -153).  By any measure, Coalition Plaintiffs have obtained an "excellent result" and should be fully compensated for "all time reasonably expended on the litigation." *Popham,* 820 F.2d at 1578.

### C.    Excellence of Result Further Confirmed by Specific Relief Granted

Because the Coalition Plaintiffs achieved "excellent results" on the objectives of the litigation, it is not necessary for the purposes of determining entitlement to fees (or the amount of the fee award) to examine each particular claim or theory to determine whether or to what extent the claim or theory was considered by the Court or was the basis for relief.  "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435.  In addition, the fact that Coalition Plaintiffs advanced alternative legal grounds for relief obtained has no impact on the fee.  "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*

Nevertheless, the broad-ranging and comprehensive nature of the injunctive relief ordered by this Court underscores Coalition Plaintiffs' entitlement to 100% of its reasonable fees and expenses, as outlined below:

*1.  Ban on DREs After 2019*

As discussed above, in their 2018 Motion for Preliminary Injunction (Doc. 258) and in their 2019 Motion for Preliminary Injunction (Doc. 419), Coalition

Plaintiffs sought to enjoin Defendants from using DRE machines in upcoming Georgia elections.  (Doc. 258 at 1; Doc. 419 at 2).  The Court granted this relief in substantial part: In the Preliminary Injunction, this Court directed the State Defendants to "refrain from the use of the GEMS/DRE system in conducting elections after 2019."  (Doc. 579 at 148).

### 2.  Providing a Constitutional Alternative to BMDs for 2020 Elections

In support of their 2019 Motion for Preliminary Injunction, Coalition Plaintiffs built upon the record previously adduced and argued that "granting injunctive relief now" by replacing DREs with hand-marked paper ballots "will provide a safe, sensible, constitutional alternative to, and contingency for, the State's planned deployment of the BMD system in 2020."  (Doc. 419-1 at 9). Coalition Plaintiffs argued that, unless the State Defendants were required to replace DREs with an auditable system using hand-marked paper ballots and optical ballot scanners, if deployment of the new BMD system were delayed, inadequate or derailed, Georgia voters would have no constitutional voting alternative in numerous elections in the 2020 Presidential election cycle.  (Doc. 419-1 at 4).  Both in their briefs and in their submissions from experts, the Coalition Plaintiffs urged the Court to require the State Defendants to start using hand-marked paper ballots beginning October 1, 2019, so that the State would have

a default plan in the event BMD deployment failed.  (*E.g.,* Doc. 419-1 at 4, 9, 49;

Doc. 413 at 220, 254, 282).

The Court granted this relief, requiring the State Defendants to begin using

hand-marked paper ballots in pilot elections in 2019 and in the 2020 elections prior

to the deployment of the new BMD system.  Thus, in the Preliminary Injunction,

this Court directed the State Defendants "to develop a default plan" using "hand-

marked paper ballots" in the event "the new BMD system enacted by the State

Legislature may not be completely rolled out and ready in time for operation in

time for the March 2020 Presidential Primary elections."  (Doc. 579 at 148).  The

Court directed the State Defendants, as a part of this default plan, to "identify a

select number of counties or jurisdictions that agree to implement a pilot election

in November 2019 using hand-marked paper ballots along with optical ballot

scanners and voter-verifiable, auditable ballot records."  (Doc. 579 at 148).

*3. Audits*

The Coalition Plaintiffs moved this Court to require the State Election Board

to develop and file pre-certification audits plans. The Court directed the State

Defendants to "promptly file with the Court all proposed and final audit

requirements that the State Election Board and Secretary of State's Office

considers or approves in connection with elections to be held in 2020 or thereafter." (Doc. 579 at 152; *see also id.* at 148-49).

### 4. *Electronic pollbooks and Related Injunctive Relief*

Coalition Plaintiffs moved the Court for multi-faceted relief relating to the reliability of the voter registration database and the ExpressPoll electronic pollbooks. In particular, Coalition Plaintiffs moved the Court to direct the Secretary to file a plan with the Court addressing:

> the procedures to be undertaken by election officials to address errors and discrepancies in the electronic pollbooks or voter registration database that my cause eligible voters to (i) not appear as eligible voters in electronic pollbooks, (ii) receive the wrong ballot, (iii) be assigned to the wrong precinct in the electronic pollbook, or (iv) be prevented from casting a regular ballot in their properly assigned precinct.

(Doc. 419 at 4). The Court directed the State Defendants:

> to develop a plan for implementation by **NO LATER THAN JANUARY 3, 2020,** that addresses the procedures to be undertaken by election officials to address errors and discrepancies in the voter registration database that may cause eligible voters to (i) not appear as eligible voters in the electronic pollbooks; (ii) receive the wrong ballot; (iii) be assigned to the wrong precinct in the electronic pollbooks; or (iv) be prevented from casting a regular ballot in their properly assigned precinct. A copy of the plan shall be provided to Plaintiffs' counsel.

(Doc. 579 at 150) (emphasis by the Court).

The Coalition Plaintiffs further moved the Court to direct the Secretary to file a plan with the Court for county election officials and poll workers "to provide for use of an updated paper back-up of the pollbook in the polling places for adjudicating voter eligibility and precinct assignment problems." (Doc. 419 at 4). The Court, recognizing that accurate pollbooks in the polling place are imperative, ordered the State Defendants to "require all County Election Offices to furnish each precinct location with at least one print-out of the voter registration list for that precinct." (Doc. 579 at 150).

The Coalition Plaintiffs moved the Court to direct the State Defendants "to immediately instruct every Superintendent in all elections to ensure that every person attempting to vote but who is denied a ballot is immediately informed by poll officials that they are entitled to cast a provisional ballot." (Doc. 419 at 4). The Court granted this relief, directing the State Defendants to:

> provide clear pre-election guidance to all Count Election Officials regarding all polling officials' mandatory duty under the law to provide voters the option of completing provisional ballots, including those who do not appear on the electronic voter registration database at a specific precinct or at all.

(Doc. 579 at 150). The Court further directed the State Defendants to:

> continue in future elections to prominently post information concerning the casting of provisional ballots and voters' submission of additional information, including their registration status, and voters' capacity to check the status of their provisional ballot on the

13

SOS website throughout the course of any state or federal election.

(*Id.*)

Coalition Plaintiffs moved the Court to direct the State Defendants to "undertake a review of the pollbook software to determine the source of the defect or malware and promptly undertake remedial action" (Doc. 419 at 3) and to submit a plan with the Court that addresses "a security evaluation" of voting system components, "including electronic pollbooks" to "detect malware or other significant security vulnerabilities." (Doc. 419 at 4). The Court ordered the Secretary of State's Office to

> work with its consulting cybersecurity firm to conduct an in-depth review and formal assessment of the issues relating to exposure and accuracy of the voter registration database discussed here as well as those related issues that will migrate over to the State's database or its new vendor's handling of the EPoll voter database and function.

(Doc. 579 at 150).

The successful character of the Coalition Plaintiffs' litigation efforts is plainly evident from each of the foregoing rulings. This Court has granted significant and substantial relief that altered the pre-litigation status quo between the parties. This Court did so in answer to the claims of constitutional violations raised by the Coalition Plaintiffs. This outcome is, measured by any standard, an excellent result.

14

**D.     No "Special Circumstances" Warranting Reduction in Fees**

There is no reason for the Court not to award 100% of the reasonable time and expenses incurred.  Two arguments that Defendants may raise are addressed below.

### 1.     Passage of HB 316 Does Not Impact Award

The Defendants may contend that the Plaintiffs are not entitled to fees because the Defendants would have taken the same actions even without a Court order, pursuant to HB 316.  This argument should be rejected for a number of reasons.

First, the test for determining whether a plaintiff is entitled to attorneys' fees under Section 1988 is not whether the defendant would have acted differently without the granting of injunctive relief.  Instead, the test is whether the injunction constitutes a "material alteration of the legal relationship of the parties." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009).  Here, the Court's Order materially altered the legal relationship of the parties by ordering the State Defendants to take all the actions described therein.

Second, the relief ordered by the Court goes far beyond anything the State would otherwise have done pursuant to HB 316.  HB 316 mandates no particular time frame for the conversion to a new system.   HB 316 does not ban DREs

15

effective January 1, 2020, does not require the State to develop a backup plan using hand-marked paper ballots, and does not require the State to remediate the electronic pollbooks or ensure that paper copies of registration information are placed in the precincts.

Third, even if the only thing the Court's Order accomplished was to ban DREs effective January 1, 2020—and to be clear, the Order does much more than that—any suggestion that the State would have acted on its own initiative to replace the unconstitutional DREs without this litigation is both irrelevant and completely contrary to the evidentiary record.  The State Defendants *and* Fulton County have consistently resisted the outcome produced by this Court's Order since the start of this litigation.  On April 16, 2018, the Coalition Plaintiffs followed up on numerous prior communications by making a formal demand upon counsel for the State Defendants that the DREs be replaced with hand-marked paper ballots.  (Doc. 258-1 at 93 and *id.* at 98 n.3 (listing numerous prior demands)). Counsel for the State Defendants did not respond.  In a July 26, 2018, letter from Coalition Plaintiffs' counsel to counsel for the State Defendants, counsel described the urgent warnings from House Intelligence Committee Chairman Devin Nunes and DHS Secretary Nielsen to ban electronic voting and again demanded that the DREs be replaced by hand-marked paper ballots.  (Doc.

16

258-1 at 91). Again, counsel for the State Defendants did not respond. In an August 1, 2018, Official Election Bulletin to county elections officials, State Elections Director Chris Harvey stated: "To this day, there is no credible evidence that our election process is anything except secure and accurate." (Doc. 258-1 at 104). Based on the State Defendants' failure to take any action in response to Plaintiffs' demands or in response to the warnings from federal officials, the Coalition Plaintiffs filed their 2018 Motion for Preliminary Injunction.[4]

In response to the 2018 Motion, the State Defendants gave no indication that they intended to replace the DREs or even that they took the matter seriously. Instead, they cast aspersions on Plaintiffs' concerns, saying, "Luddite prejudices against software technology are insufficient justification to override a statutory regime promulgated by duly-elected legislators, sustained against prior constitutional challenges, and overseen by state officials acting pursuant to their respective duties within that legislative framework." (Doc. 265 at 28).

---

[4] On April 13, 2018, then Secretary of State Kemp announced the formation of the Secure, Accessible & Fair Elections (SAFE) Commission. (Doc. 260-1 n. 18). But the SAFE Commission met only once and took no action before Coalition Plaintiffs' filed the Motion for Preliminary Injunction on August 3, 2018 (Doc. 258; *see also* Doc. 260-1, n 21).

The State Defendants called the concept of "undetectable manipulation" "oxymoronic," a position decimated by Coalition Plaintiffs' authoritative expert testimony.   (DeMillo Decl., Doc. 277 at 55 ("Undetectable manipulation is the most common, widely recognized, and serious threat facing computer systems, including election systems.")  *See also Curling,* 324 F. Supp. 3d at 1328 ("Advanced persistent threats in this data-driven world and ordinary hacking are unfortunately here to stay.  Defendants will fail to address that reality if they demean as paranoia the research-based findings of national cybersecurity engineers and experts in the field of elections.")

Even without any experts of their own, the State Defendants belittled the expertise arrayed against them, saying: "Plaintiffs' so-called experts are Ph.D. candidates, a hacker, and lower-level functionaries from other states." (Doc. 265 at 11-12).  This dismissiveness was utterly unwarranted.  Mr. Bernhard is a Ph.D. "candidate," but he distinguished himself as an expert in direct and on cross-examination in hearings in 2019 – testimony which the State Defendants have never even attempted to impeach or contradict.  Logan Lamb is not a "hacker," but a civic-minded individual who in absolute good faith reported the outrageous vulnerability of the State's compromised elections server to KSU officials as soon as he discovered it.  The "lower-level functionaries" were in fact outstanding

18

expert witnesses whom the Court had the opportunity to observe in person in the 2019 hearings, Amber McReynolds and Virginia Martin.  The State Defendants apparently could find no critical epithets for the Coalition Plaintiffs' other experts—Dr. Richard DeMillo, the Charlotte B. and Roger C. Warren Chair of Computer Science at Georgia Tech, or Dr. Philip Stark who, among other accomplishments, invented the risk limiting audit—so the State prudently says nothing at all.  (Doc. 296 at 8.)

At the hearing, the State's counsel asked Professor Halderman if he knew anything about Georgia and how many times he had been to Georgia before concluding, in grand-finale fashion, "Do you know where the Big Chicken is?" (Doc. 307 at 102–03).  Fulton County, for its part, likewise engaged no experts of its own and instead argued only that Dr. Halderman's demonstration was irrelevant because he was using Ballot Station Version 4.3, 4.4 and 4.6, but not Version 4.5, which is the one used in Georgia.  (Doc. 307 at 118).  There is no indication Fulton County actually believed that this distinction made any difference; yet they made the argument anyway.  And, in response to questioning by the Court, Dr. Halderman explained that the version of Ballot Station that he was able to compromise in his demonstration was actually a *more secure* version that the version used by Georgia.  (Doc. 307 at 120).

The State Defendants also took the position that the results of elections on DREs could be audited.  "What I'm trying to point out is the representation of my friends on the other side that these things cannot be audited is untrue. . . . You can audit these things."  (Doc. 307 at 58).  Fulton County and the State Defendants took the position that if individual voters were concerned about their votes being counted on the DREs, they could always vote by absentee ballot.  (Doc. 307at 63; Doc. 265 at 28).

The State's position in 2018 was that the State's voting system was secure enough and would be no more secure if the State switched to hand-marked paper ballots.  In opposing the 2018 Motion for Preliminary Injunction, the State Defendants relied heavily on the testimony offered in the declaration of Secretary of State Chief Information Officer Merritt Beaver, who stated:  "Moving to paper ballots for the voting mechanism would not add one iota of protection to the state's voter registration database, air-gapped ballot building network, or other online tools such as election night reporting."  (Doc. 265-1 at 5).  In cross-examination a year later, however, Michael Barnes revealed for the first time that the "air-gapped ballot building network" that Mr. Beaver touted in 2018 was in fact three independent contractors programming each of the State's 159 election databases

20

from their homes and then transmitting the databases to the Secretary of State's *public facing* internet server via thumb drive.

In this litigation, the Defendants forced the Plaintiffs to spend the time and the money to defeat each of these factual and legal positions. Such conduct directly contradicts the State's present claim that it would be preparing to abandon DREs even in the absence of the Coalition Plaintiffs' litigation efforts and this Court's resulting judicial mandate. Moreover, if the State Defendants intended to replace the DREs as a matter of course, they would not have wasted taxpayer money by pursuing an interlocutory appeal of this Court's 2018 Order on frivolous grounds of jurisdiction and standing. The State's position resembles the position of Fulton County in *Webster Greenthumb Co. v. Fulton County,* 112 F. Supp. 2d 1339, 1347–48 (N.D. Ga. 2000). In *Webster Greenthumb,* Judge Thrash granted the plaintiffs' motion for fees under Section 1988, rejecting the County's argument that it would have dismantled a challenged program without the litigation:

> Indeed, if Fulton County really had planned to dismantle the MFBE program on its own accord within the three months immediately following issuance of the injunction, there would have been little reason for the County to request, as it did, a stay of the injunction until after the Eleventh Circuit decided the case on appeal. Certainly, if the County did not intend to renew the MFBE program, it would not have wasted the taxpayers' money appealing the Order abolishing it.

21

So too here.  It was only after this Court held that the Plaintiffs had a likelihood of success on the merits that the State passed HB 316—which it did simultaneously appealing this Court's jurisdiction. In the first status conference after the Eleventh Circuit affirmed this Court's denial of the State Defendants' immunity defenses, the State Defendants' counsel acknowledged that the State's legislative action was in direct response to this litigation:

> Your Honor, as you are aware, you issued an order at the end of last year telling the state to get moving, so-to-speak . . . and that, you know, as time continue forward, if the state wasn't moving – wasn't moving along that their arguments regarding lack of resources and difficulties changing to an all paper ballot system would weaken.  The state took that to heart.  And as you are aware, House Bill 316, which is now Act 24, has been signed into law.

(Doc. 363 at 4-5).

The passage of HB 316 did not make the retirement of the DREs, and does not make the implementation of new Dominion BMD system, inevitable. Throughout this case, the State Defendants have repeatedly emphasized the difficulty of replacing the DRE system.  (Doc. 307 at 53 (State Defendants' counsel explaining that Maryland's conversion took 8 years)).  Had this Court not enjoined the State Defendants, then when and if the State encountered delays or budgetary shortfalls, the State Defendants would have been free simply to reverse

course and continue using the unconstitutional DREs for the 2020 Presidential elections.

In sum, Defendants have never conceded anything, and instead have forced the Coalition Plaintiffs to expend an enormous amount of time and money to prosecute this lawsuit to its successful completion. Defendants cannot now claim that this lawsuit was unnecessary and that this Court's injunction orders have not produced a change in the legal relationship between the parties.

2.    *Two Sets of Plaintiffs Does not Warrant Reduction*

Defendants may contend that the fact that there are two sets of Plaintiffs should reduce Plaintiffs' recovery under Section 1988. This is incorrect.

First, the Coalition Plaintiffs and the Curling Plaintiffs cannot have the same lawyers because they have firmly held, conflicting positions on important issues in the case. For example, in 2018, the Curling Plaintiffs sought an order banning DREs and requiring the Secretary to mail absentee ballots to each registered voter, a proposal that the Coalition Plaintiffs (more keenly aware of the Secretary's abysmal record on absentee balloting) opposed. The Curling Plaintiffs dropped the proposal before the 2018 hearing, but the two sets of plaintiffs obviously needed, and were entitled to, separate representation.

23

Second, the time spent by the Coalition Plaintiffs and the Curling Plaintiffs has been complementary, not overlapping.  Throughout the litigation, the Curling Plaintiffs have focused upon, and invested heavily in, the cyber-security threats to Georgia's system, with the engagement of Dr. Halderman and the establishment of laboratories for the review of the GEMS databases and servers in Washington, D.C. and Ann Arbor, Michigan.  The Coalition Plaintiffs, on the other hand, have focused on the vulnerability of the system at the local level,  the feasibility of transitioning to hand-marked paper ballots, the evidence of vulnerability in the Lieutenant Governor's race, the gathering of substantial evidence from voters with actual experience in the 2018 elections, the myriad problems with electronic pollbooks, and the evidentiary impact of the State's destruction of the KSU/CES server.  In addition, where feasible and efficient, the two sets of Plaintiffs have joined efforts.

Third, as a matter of law, even if the efforts of the Curling Plaintiffs were duplicative of the efforts of the Coalition Plaintiffs, that would still properly have no impact on Plaintiffs' fee recovery.  *Dowdell v. Apopka,* 698 F.2d 1181, 1188 (11th Cir. 1983) (rejecting argument that similar or overlapping work should not be compensated, holding: "All attorneys who contribute their services to a case may be awarded reasonable attorneys' fees."); *Tasby v. Estes,* 651 F.2d 287 (5th Cir.

1981) (authorizing the award of two fees even when work is partially duplicative); *Webster Greenthumb*, 112 F. Supp. at 1350 ( "Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work.").

## III.   LEGAL STANDARD

When assessing an award of attorneys' fees, a district court must first calculate the lodestar amount – the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley,* 461 U.S. at 433.  The lodestar "yields a fee that is presumptively sufficient."  *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010). After calculating the lodestar, the Court may adjust the amount based on a number of factors, such as the quality of the results obtained and the legal representation provided.  *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996).

Pursuant to this well-established precedent, Coalitions Plaintiffs in Part IV show the reasonableness of the hours expended and, in Part V, demonstrate the reasonableness of the rates.  Part VI address reasonableness of the expenses.

## IV.    REASONABLENESS OF TIME

Table I divides the litigation into seven periods of time, or phases, and shows the total number of hours spent by each firm or lawyer during each phase. Though particular activities predominated in each phase of the case, many activities (e.g., investigative fact-gathering, formal discovery, efforts aimed at preservation of evidence, expert witness preparation, conferral discussions) occurred in every phase.

| Table I - Coalition Plaintiffs' Hours by Phase | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Phase | Dates | Major Activities in the Phase | McGuire | Ichter | Brown | The LC | Ney | Total |
| I | 2017 to February 28, 2018 | Case Initiation, State Court Complaint; Second Amended Complaint | 153 | 10 | | | 70 | 233 |
| II | March 1, 2018 – June 30, 2018 | Third Amended Complaint; Motion to Dismiss | 148 | 74 | 69.7 | | 49 | 340.7 |
| III | July 1, 2018 – September 19, 2018 | 2018 Motion for Preliminary Injunction | 186 | 25 | 166 | | 11 | 388 |
| IV | September 20, 2018 to October 2, 2018 | Motion to Stay, Motion for Additional Injunctive Relief | 10 | 15 | 44 | | | 69 |
| V | October 3, 2018 to February 8, 2019 | Stay, 2018 Election, Appeal[5] | 5 | 16 | 29 | | | 50 |
| VI | February 9, 2019 to August 15, 2019 | 2019 Motion for Preliminary Injunction | 9 | 148 | 503 | 754 | | 1414 |
| VII | August 16, 2019 to Present | Enforcement and Fee Application | 44.3 | 7 | 145.7 | 7 | | 204 |
| **Totals** | | | **554.21** | **294.6** | **954.5** | **761** | **129** | **2693** |

[5] Note that, although the appeal occurred during this time period, the appeal is only referenced here to provide context. The Coalition Plaintiffs are not seeking an award in this fee request for any attorney time that was spent on the Eleventh Circuit appeal, with the sole exception of time spent on settlement discussions that occurred in the appellate mediation context. In addition, the difference in the total number of hours here (2693) and in Table II (2692) is a result of rounding.

## V.     REASONABLENESS OF THE AMOUNT OF TIME SPENT

### A.     Overall Size and Complexity of the Case

Twenty-seven hundred hours is an objectively reasonable amount of attorney time to spend successfully prosecuting a case of this magnitude.  As the Court is well aware, the docket is now has over six hundred entries.  The case is important and complex enough for the State's Law Department to require three outside law firms: the Barnes Law Group until early 2019, and the Robbins Firm and Taylor English in 2019.  The Robbins Firm used at least six lawyers throughout the case, and Taylor English at least two more.  The State adopted such lawyer-intensive staffing even though it is the Plaintiffs, not the State Defendants, who must marshal evidence and satisfy a burden of proof.  Fulton County has at least three lawyers on the case.

As the Court stated in its 2018 Order, the "subject matter in this suit is complex."  *Curling,* 334 F. Supp. 2d at 1321.  The comprehensive orders entered by this Court reflect the complexity and difficulty of the case.

### B.     Narrative Description of the Work

Coalition Plaintiffs have filed detailed time records from each attorney describing the work performed in minute detail.  To give the Court a better overall

28

description of the work and why it was reasonable and necessary, the Coalition Plaintiffs provide below a narrative description of the major case events that occurred during each phase of the case.  As noted above, the phases are time periods only and, though particular activities predominated in each phase of the case, many activities (e.g., discovery, fact-gathering, expert witness preparation) occurred in every phase.

   1.   *Phase I: 2017 to February 28, 2018: Case Initiation through Steptoe & Johnson Withdrawal*

This litigation commenced on July 3, 2017, with the filing of a civil complaint in Fulton County Superior Court.   Defendants timely removed the case to this Court on August 8, 2017.  An amended complaint was docketed on August 18, 2017.  (Doc. 14, 15.)  Defendants filed motions to dismiss the amended complaint based in part on immunity defenses.  (Doc. 49, 50.)  On September 5, 2017, this Court stayed all discovery pending resolution of those immunity issues.  (Doc. 56.)  Plaintiffs filed a Second Amended Complaint (the "SAC") on September 15, 2017, (Doc. 70), prompting renewed motions to dismiss, (Doc. 79, 82, 83, 84).

All plaintiffs up to this point had been jointly represented by common counsel—Steptoe & Johnson as lead counsel, and Holcomb & Ward as local

counsel.  The preparation of the SAC, however, laid bare conflicting interests among the plaintiffs, and so on November 3, 2017, Steptoe sought leave to withdraw as counsel for the Coalition for Good Governance ("Coalition").  (Doc. 104.)  The plaintiff groups subsequently split into the groups that are before the Court today—the Curling Plaintiffs and the Coalition Plaintiffs—and a period of transition followed when Steptoe and Holcomb & Ward departed the case entirely.[6]

New counsel for both plaintiff groups subsequently appeared.  For the Coalition Plaintiffs, William Ney appeared as transition counsel in November 2017, Robert McGuire appeared for Coalition in December 2017, followed by Bruce Brown as counsel for Coalition and Cary Ichter as counsel for the Coalition and for the individual Coalition Plaintiffs.  For the Curling Plaintiffs, Morrison &

---

[6] In this fee petition, the Coalition does not seek to recover fees for the work performed by Steptoe & Johnson because (1) Steptoe participated in this case on a pro bono basis and (2) Steptoe ultimately chose, in the face of a conflict of interest among plaintiffs, not to represent the Coalition.  Coalition is thus not the proper party to claim for Steptoe's time.  Coalition does, however, seek reimbursement for the full amount of legal fees that the Coalition was charged for services performed by Holcomb & Ward, which Coalition paid.  For purposes of its own fee petition, the Coalition limits its claim in respect of Holcomb & Ward's time to the amount of fees that Holcomb & Ward was actually paid by Coalition.

Foerster appeared as lead counsel and Krevolin & Horst LLC appeared as local

counsel in March 2018.

### 2. Phase II: March 1, 2018 to June 30, 2018: Third Amended Complaint and Motions to Dismiss

By early April 2018, all plaintiffs had new counsel.  On April 4, 2018, the

Coalition Plaintiffs filed their motion for leave (Doc. 160) to file their own Third

Amended Complaint (the "TAC").  The TAC was addressed by the parties and the

Court in a May 1, 2018 Status Conference (Doc. 186, 189), which prompted

further briefing (Doc. 209).  The Court granted Coalition Plaintiffs leave to file the

TAC on June 13, 2018 (Doc. 225), and it was docketed as Document 226.  The

entirety of the TAC survived an interlocutory appeal on issues of jurisdiction and

standing (Doc. 338), as well as two motions to dismiss (Doc. 375).  The Coalition

Plaintiffs' TAC is the operative complaint under which this Court granted the

Coalition Plaintiffs injunctive relief against the State's continued use of DREs and

defective epollbooks.  (Doc. 579.)

Also during this "Phase II," Coalition Plaintiffs renewed efforts to settle the

case, sending substantial and detailed correspondence in April 16, 2018 to then-

counsel for the Defendants, Roy Barnes and John Salter.  (Doc. 258-1 at 92).  This

period also saw continued efforts to determine how Defendants were to preserve

31

evidence in light of upcoming elections, including in-person conferences with the Court on May 1 and May 10, and a telephone conference with the Court on May 18, 2018. (Doc. 186, 189, 204, 205, 217).  Though formal discovery remained stayed because of Defendants' pending motions to dismiss, Coalition Plaintiffs continued informal gathering of case facts through Open Records Act requests, monitoring of primary and other elections, and by other means.

       3.     *Phase III: July 1, 2018 to September 19, 2018 - 2018 Motion for Preliminary Injunction*

After the Defendants did not respond to repeated demands from the Coalition Plaintiffs to switch to hand-marked paper ballots[7] or to the escalating warnings from national intelligence and security officials,[8] Coalition Plaintiffs filed a Motion for Preliminary Injunction on August 3, 2018.  (Doc. 258).

The Coalition Plaintiffs amassed a substantial evidentiary record in support of the 2018 Motion, evidence that would later form the foundation for the successful 2019 Motion.   In support of the 2018 Motion, the Coalition Plaintiffs submitted evidence establishing the general vulnerability of DREs and electronic pollbooks, the heightened vulnerability of DREs in Georgia, the experience of

---

[7] Doc. 258-1 at 93 and *id.* at 98 n.3 (listing numerour prior demands).

[8] Doc. 258-1 at 91.

Georgia voters in the 2018 mid-term elections, and the feasibility of injunctive relief.  Coalition Plaintiffs submitted declarations from Logan Lamb (Doc. 258-1 at 125), voters Jeanne DuFort (Doc. 296 at 177), Dana Bowers (*id.* at 61and Doc. 277 at 45), Jasmine Clark (Doc. 258-1 at 105 and Doc. 296 at 173), Rob Kadel (Doc. 258-1 at 61), Carri Luse (*id.* at 257), and Laurie Mitchell (*id.* at 286).

In support of the 2018 Motion for Preliminary Injunction, Coalition Plaintiffs submitted nine declarations from six experts:  Richard A. DeMillo (Doc. 277 at 52 and Doc. 285-1 at 1 (enclosing National Academies of Sciences Report "Securing the Vote")), Philip Stark (Doc. 296 at 6); Matthew Bernhard (258-1 at 33; and Doc. 277 at 37), Rebecca Wilson (Doc. 258-1 at 296), Virginia Martin (Doc. 277 at 77 and Doc. 296 at 188), and Amber McReynolds (Doc. 277 at 93).

Coalition Plaintiffs lead counsel Robert McGuire and counsel Bruce Brown presented argument and examined witnesses at the September 12, 2018 hearing. (Doc. 307 (Transcript)).  After the submission of post-hearing closing statements (*e.g.,* Doc. 302), the Court entered an Order on September 17, 2019, denying Defendants' Motions to Dismiss and Denying Plaintiffs' Motions for Preliminary Injunction.  (Doc. 309).  Importantly, however, the 2018 hearing led this Court to find a probability that the Plaintiffs would prevail on the merits and created the

evidentiary foundation that the 2019 injunction motion would ultimately incorporate and build upon.

### 4. Phase IV: September 20, 2018 to October 2, 2018 – Motion to Stay, Motion for Additional Injunctive Relief, Appeal

The State Defendants immediately filed a Notice of Appeal of this Court's denial of their motions to dismiss (Doc. 310) and moved to stay the case pending appeal. (Doc. 320).  While the motion to stay was pending, Coalition Plaintiffs filed a Motion for Additional Injunctive Relief to address the vulnerability and corruption of electronic pollbooks, to enjoin Defendants from conducting elections on DREs after the November 2018 mid-term elections and to require audits of the tabulation of the anticipated large number of absentee ballots in the November election.  (Doc. 372).  Before the Coalition Plaintiffs' Motion for Additional Injunctive Relief was heard, the Court on October 26, 2018, granted the Defendants' Motion to Stay and administratively closed the case.  (Doc. 337).

### 5. Phase V: October 3, 2018 to February 8, 2019: Stay, 2018 Election, Appeal

With the litigation administratively closed, efforts turned to developing a factual record based on the actual performance of the DREs and Electronic Pollbooks in the 2018 Elections.  On November 3, 2018, just several days before

34

the election, Coalition Counsel received information from a third party that the

State's "my voter page" system was vulnerable to an attack and promptly notified

John Salter and Roy Barnes, counsel for the State Defendants.  (Curling Counsel

David Cross did the same).  In response, the Secretary of State's spokesperson

blamed the Georgia Democrat Party for hacking into the system and accused party

officials of criminal conduct.  Worse, with the election just days away, the

Secretary posted a statement on the Secretary of State's official web page – for

every voter to see - stating that he was investigating Georgia Democrats after an

alleged hacking attack, when there no hacking attack and there was never an

investigation by the Secretary of State.

Meanwhile, the State Defendants lost their meritless appeal to the Eleventh

Circuit on 11th Amendment immunity on February 7, 2019.  *Curling v. Kemp,* 334

F. App'x 927 (11th Cir. 2019) (finding Defendants' arguments counter to "settled

precedents").  Coalition Plaintiffs are not seeking fees for work on the appeal in

this motion, since appellate attorney fees may only be awarded by the Court of

Appeals.  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356–57 (11th Cir.

2009); 11th Cir. R. 39-2.

6.    *Phase VI: February 9, 2019 to August 15, 2019: 2019 Motion for Preliminary Injunction*

After the Eleventh Circuit affirmed this Court's exercise of jurisdiction in spite of the State's frivolous interlocutory immunity and standing objections (Doc. 338), this Court by docket entry on March 18, 2019 directed the parties to meet and confer about the scope of the case in light of the passage of HB 316 and to address the scope of discovery.  The Court also scheduled a status conference for April 9, 2019.  At the status conference, the State Defendants' counsel stated that that the State, in direct response to this Court's 2018 Order, was addressing the critical vulnerabilities in the election system by purchasing a new system for implementation before the Presidential Primaries in 2020.  Defendants initially took the position that Plaintiffs' claims with respect to the DREs were moot in light of the passage of HB 316 and that Plaintiffs' claims with respect to the BMDs were not yet ripe.  After the Court gave the Defendants a specific briefing schedule on the mootness issue (Doc. 356), the Defendants on April 11, 2019, announced that they would not file a motion to dismiss on mootness.  (Doc. 362 at 2).

In April and May, 2019, Defendants refused to participate in discovery themselves and sought to quash Plaintiffs' non-party subpoenas on grounds that the Court had not yet formally reopened the discovery period and had not rendered  a decision addressing the remaining issues raised in Defendants' 2018 motions to

dismiss.  (Doc. 369).  On May 16, 2019, Plaintiffs filed a Motion to Open

Discovery (Doc. 374).  On May 21, 2019, this Court entered an order denying the

remaining issues raised in the 2018 motions to dismiss and ordering that discovery

was to begin immediately.  (Doc. 375).

The Court found in its 2018 Order that Plaintiffs had established a likelihood

of success on their constitutional claims, *Curling,* 334 F. Supp. 3d at 1324, and that

Plaintiffs were likely to suffer irreparable injury without court intervention.  The

Court also stated, however, that the case "would benefit from some discovery and a

full evidentiary hearing."  334 F. Supp.3d at 1322.

Anticipating a heavier workload in a compressed period of time than their

existing team of small-firm and solo lawyers might be able to handle in the face of

conflicting commitments in other cases, the Coalition Plaintiffs in May, 2019,

expanded their legal representation to include Ezra Rosenberg, John Powers, and

the team of several additional lawyers from the Lawyers' Committee for Civil

Rights Under Law.

The briefing and fact gathering to support the Coalition Plaintiffs' renewed

Motion for Preliminary Injunction required scores of hours by Coalition Plaintiffs'

lawyers and support staff.  Coalition Plaintiffs, primarily through the work of the

Lawyers' Committee, devoted substantial efforts to discovery and hearing

37

preparations relating to the feasibility of transitioning the State of Georgia to hand-marked paper ballots.  The Coalition Plaintiffs engaged three experts to provide opinions on feasibility: Virginia Martin, Candice Hoke, and Amber McReynolds.  Ms. Martin and Ms. McReynolds testified at the 2019 hearing, and the Court cited this testimony repeatedly in its Order granting relief.

In addition, Coalition Plaintiffs directed discovery at several Georgia counties to amass evidence showing the feasibility of transitioning to hand-marked paper ballots.  Coalition Plaintiffs took depositions of officials from Gwinnett, Morgan, and Bartow Counties and served document subpoenas on those counties and Hancock County.  Coalition Plaintiffs also took depositions of Defendants' expert Dr. Shamos and Michael Barnes.

The scale and scope of the foregoing efforts alone are sufficient to justify the amount of time that the Coalition Plaintiffs' lawyers spent on this Phase of the case.  In addition, there were a number of other issues that required substantial attention during this time frame.  Seven of those issues are addressed below:

a. GEMS Database and Server Discovery[9]

As soon as this Court denied the two motions to dismiss the Coalition

Plaintiffs' TAC (and denied the motions in part with respect to the Curling second

amended complaint), the Court ordered discovery to "begin immediately." (Doc

375, at 61.) Despite this Order, Plaintiffs were immediately met with Defendants'

absolute refusal to allow any discovery of the GEMS databases or the GEMS

servers. Litigation over the scope and mechanics of the GEMS discovery

consumed a substantial amount of time in June, July, and early August, 2019.  The

work was tedious and difficult due in large part to logistical protections adopted by

the Court to accommodate the State Defendants' misrepresentation that the

structure of Georgia's GEMS databases was unique and therefore confidential.

On June 5, 2019, the State Defendants objected to GEMS database discovery

in its entirety because of the alleged uniqueness of Georgia's GEMS database.

(*See* Doc. 416 at 1).  This led to a June 10, 2019 "meet and confer" at State

Defendants' counsel's offices, a June 19, 2019, telephone conference among

counsel, and the June 21, 2019 filing of the "Consolidated/Joint Discovery

---

[9] The fees and expenses claimed by the Coalition Plaintiffs in Plaintiffs' recently filed Motion for Sanctions (Doc. 623) for the work on  GEMS database and server discovery are included in the fees and expenses claimed in the Coalition Plaintiffs' motion under Section 1988.  Coalition Plaintiffs submit that each motion must stand on there own and any reconciliation of awards thereunder may be undertaken at the appropriate time.

Statement Regarding Coalition Plaintiffs' First Request for Production" (Doc. 416).  (The Curling Plaintiffs joined the dispute in Doc. 420).   The GEMS dispute was also closely related to a separate dispute concerning the protective order, which addressed how confidential and "attorneys-eyes-only" materials would be handled.  The dispute over the terms of the protective order was presented to the Court in the June 25, 2019,  "Consolidated/Joint Discovery Statement on the Need for a Protective Order" (Doc. 429).

The Court addressed both of the GEMS discovery dispute and the related protective order issues in a June 28, 2019, telephone conference (Doc. 438), which led to additional briefing (Doc. 440, 441) and the Court's Order of July 2, 2019 (Doc. 446).  That order directed the parties to meet and confer concerning the State's proposed protocols for the production of the GEMS databases, which, in turn, led to additional briefing and submission of expert testimony concerning protocols, including Plaintiffs' July 3, 2019, "Proposal Regarding Security Protocols for Review of GEMS Database," (Doc. 451), with declarations from Matt Bernhard (Doc. 451-3) and Alex Halderman (Doc. 451-2).

 These filings led to the Court's Order (by docket entry only) on July 8, 2019, directing the State Defendants to provide information about how the State could host the discovery of the GEMS databases.  This prompted further briefing

the same day by Plaintiffs (Doc. 455) and the State Defendants (Doc. 456) and another Minute Order by the Court.  More briefing ensued the next day by Plaintiffs (Doc. 460), and an Order on GEMS Database Discovery by the Court. (Doc. 463).  Further briefing ensued on the State Defendants' position that Phase I GEMS discovery was moot (Doc. 470), which led to another telephone hearing on July 11, 2019.  (Doc. 482).

Again, all of this litigation activity was based on the State Defendants' misrepresentation that the structure of Georgia's GEMS database was unique.  On July 12, 2019, the databases were finally delivered to Plaintiffs' experts in Ann Arbor, just two weeks prior to the hearing on the motion for preliminary injunction.  Plaintiffs' expert quickly discovered that there was nothing confidential or unique about Georgia's GEMS databases – they were exactly the same as public GEMS databases from other jurisdictions.  (GEMS Screenshots, Doc. 489).

On July 15, 2019, counsel for Coalition Plaintiffs and Curling Plaintiffs conferred with counsel for the State Defendants about the State Defendants' misrepresentations.  Counsel for the State Defendants would not respond to questions about the misrepresentation and did not respond to follow up emails. Counsel for Plaintiffs informed counsel for the State Defendants that Plaintiffs

would seek relief from the Court at the appropriate time.  Plaintiffs filed a Joint

Motion for Sanctions on October 11, 2019, which is currently pending.  (Doc.

623).

### b.  2018 Election Discovery

Lawyers and staff for the Coalition Plaintiffs devoted a substantial amount

of time obtaining evidence from voters on their actual experiences attempting to

vote in the 2018 elections.  Of the hundreds of declarations obtained and reviewed,

the Coalition Plaintiffs selected the most relevant and filed those in two large

volumes of evidence on June 19, 2019 (Doc. 412 and 413).  This evidence showed

that in the 2018 elections Georgia voters experienced a multitude of problems in

their attempts to vote using DREs: candidates did not appear on the electronic

ballot until the summary screen, voters received ballots from the wrong

congressional district, DREs would "self-cast" ballot before the voter finished

making selections, DREs flipped votes from Stacey Abrams to Brian Kemp, DREs

randomly generated error messages, malfunctioning DREs were not replaced by

pollworkers, and so on.

Scores of declarations filed by the Coalition Plaintiffs also described a host

of problems with electronic pollbooks encountered by voters and pollwatchers.

(Doc. 412 at 108 to 323).  This evidence supplemented a number of declarations

that Coalition Plaintiffs submitted in 2018 describing similar problems that were

encountered with the electronic pollbooks in the 2018 primaries.  (*See* Doc. 258-1).

Problems with the electronic pollbooks lead directly to massive voter

disenfranchisement.

The Court discussed this evidence in detail in its Order.  (Doc. 579 at 90 to

111).

Coalition researchers also reviewed hundreds of polling place records

including poll tapes locating numerous discrepancies and indications of machine

defects and unreconciled differences in ballots cast and ballots counted.

### c.  Role of Municipalities

During the May 24, 2019 telephone conference, the Court raised the issue of

how a preliminary injunction prohibiting DREs to be used as voting devices would

affect the administration of local and municipal elections, given that the Secretary,

the State Board and the Fulton Board were the only parties to the action.  In a May

29, 2019 Brief, Coalition Plaintiffs explained that an injunction prohibiting the

Secretary from using DREs would, in effect, prohibit their use statewide because

the Secretary is solely responsible for programming the DREs.  (Doc. 379).  In

addition, as to the burden on non-party municipalities, Coalition Plaintiffs

explained that Georgia law obligated the Secretary and the State Board to support

local jurisdictions in their use of any voting system, which included hand-market paper ballots.  (Doc. 379 at 6 - 7).

The Court discussed this issue in detail in its Order.  (Doc. 579 at 12 to 21).

### d.  Lieutenant Governor Election Evidence

The Coalition was an original plaintiff in *Martin v. Raffensperger,* a state-court election contest now pending before the Supreme Court of Georgia.  The evidence obtained in that case, which the Court directed the State Defendants to file in this case (Doc. 418), showed that the unusually high undervote in the Lieutenant Governor's race occurred only in votes cast on the DRE voting machines.  (Doc. 419-1 at 24-28).  This evidence was relevant to this case because, as Dr. Philip Stark opined, the "disparity in undervote rates by voting technology strongly suggests that malfunction, misconfiguration, bugs, hacking, or other error or malfeasance caused some DREs not to record votes in the Lt. Governor's contest."  (*Id.*).  Precinct-level analysis of the reported votes also revealed that the drop-off in voter participation was much greater in precincts with a high percentage of African American voters.  (*Id.*).

The Coalition Plaintiffs do not seek reimbursement for the actual cost of developing this evidence in the *Martin* litigation.   It was reasonable and efficient

for the Coalition Plaintiffs to address this evidence in detail in its briefing.  (Doc. 419-1 at 24-28; Doc. 507 at 13-17).

e.  State Defendants Subpoena Churches

On June 28, 2019, the State Defendants issued subpoenas to Ebenezer Baptist Church and 11 other local churches and organizations.  The only reason this discovery was served was to harass these Churches and support the Secretary of State's media message.  In response, the Coalition Plaintiffs filed a Motion to Quash explaining the many reasons this discovery should not go forward.  The Motion was stricken because it did not follow the Court's discovery dispute resolution protocols, and Coalition Plaintiffs are not seeking reimbursement for the work on the Motion to Quash.   (*See* Ex. E, E. Rosenberg Decl. at ¶ 46).  The State Defendants eventually withdrew the discovery.

f.  Ballot Secrecy Claim

Discovery has yet been permitted that would reveal conclusively whether DREs *do* retain information which links an individual voter to his or her cast ballot (something the State Defendants argues when resisting discovery (Doc. 369 at 22-23)), or whether DREs *cannot* retain such information (the contrary argument that the State Defendants made when resisting Plaintiffs' Motion for Preliminary

Injunction, (Doc. 472 at 55)).   The State Defendants have never addressed, much less reconciled, their conflicting positions.

The Court did not address ballot secrecy in its injunction order.  (Doc. 579.) In light of the Defendants' argument made in discovery that inspection of the DREs could indeed violate ballot secrecy, however, the Coalition Plaintiffs' efforts to pursue the issue were certainly reasonable, and the fact that the relief granted was not ultimately based on ballot secrecy violations is immaterial to the fee petition. *Hensley,* 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.")

### g.  KSU Server Destruction of Evidence

Finally, Defendants' destruction of evidence warranted the commitment of additional resources in the preparation and filing of the Coalition Plaintiffs' Hearing Brief on Evidentiary Presumption Arising from Spoliation of Evidence. (Doc. 548).  That Brief detailed how the State Defendants, almost immediately upon receiving notice of the pendency of this suit and allegations of the insecurity of electronic voting in the State, destroyed the evidence that was "ground zero" for establishing hacking, unauthorized access, and potential manipulation of election

results. The Brief further described how less than a day of the removal of this case to this Court, the State and its agents destroyed a second server and all of its resident data.  And the Brief complained of the ongoing spoliation of evidence by the State Defendants, who, despite repeated preservation demands, continued over and over again to delete and overwrite data previously preserved in the DRE's memories and on memory cards used in relevant elections.

As the Brief noted, the servers destroyed by the State Defendants and the memory cards overwritten or deleted by the State Defendants were the repository of records that go to the most critical issues in this case: logging records that would reflect unauthorized access of the election servers; deleted files or manipulated data; implanted malware that, as this Court has seen, can actually change an elector's vote and thereby actually change an election result.

In response, the State Defendants insisted that the servers were not destroyed but instead were "repurposed,"  (Doc. 558 at 2), and accused Coalition Plaintiffs' counsel of sharing their brief with reporters before it was filed. (*Id.* at 3-4.)  The State Defendants also took the position that some of the evidence had not been lost entirely because the FBI has an image of the "repurposed" CES server.  Yet the State Defendants now are refusing to allow Plaintiffs to conduct forensic discovery on the FBI's image of the now-destroyed CES server, taking the position that the

Court's Order (which they are coy about whether they will appeal) moots the issue. The State Defendants refusal to permit this discovery – which would only cost them if they have something to hide – has forced yet another discovery dispute that is currently before the Court.  (Doc. 589).

These disputes illustrate why the Coalition Plaintiffs were required to spend the time that they did during Phase VI.  At every stage of this litigation, the State Defendants have put the Plaintiffs in the position of having to overcome a scorched-earth defense and frivolous arguments on everything from *Ex parte Young* to discovery of the GEMS databases.  Now that they are faced with the financial consequences of their own litigation tactics, the State Defendants should not be permitted to second guess the time that the Plaintiffs have had to spend to overcome so much meritless opposition.

7.     *Phase VII: August 16, 2019 to Present: Post-Injunction Enforcement and Fees*

The last chronological phase brings us to the present time.  Phase VII encompasses both the Plaintiffs' ongoing supervision of this Court's injunction Order and the present claim for attorney fees and expenses.  Under Section 1988, successful plaintiffs may recover attorneys' fees for efforts undertaken to enforce the judgment.  *United States v. Conces,* 507 F.3d 1028, 1039 (6th Cir. 2007).

Coalition Plaintiffs accordingly seek reimbursement for efforts undertaken to ensure that Defendants are complying with the injunction and that the injunction is explicit enough to ensure meaningful efforts by the State Defendants to develop a backup plan for the 2020 elections and to address the persistent problems with electronic pollbooks.  These efforts included meeting and conferring with the State Defendants on issues relating to compliance as well as the filing of Coalition's Rule 59(e) Motion to Alter or Amend the Judgment (Doc. 605, 621).

Successful Plaintiffs also may recover for time spent in connection with preparing a fee petition.  *Johnson v. University College,* 706 F.2d 1205, 1207 (1983).  Coalition Plaintiffs' counsel seek to recover for less than 150[10] hours spent in connection with preparing the petition, which is reasonable in light of the size of the case and the requested award.  *Compare Occasional Superstar,* No. 1:17-CV-1943-AT, 2018 WL 2284374 (after adjustment, finding 25 hours of time on fee award of $46,213 was reasonable and appropriate).

---

[10] This is an estimate.  The number of hours spent in Phase VII is 204 to date, but that period included substantial work on Coalition Plaintiffs' Rule 69(e) Motion and ongoing discovery disputes.

## VI.   REASONABLENESS OF RATES

"A reasonable hourly rate is the prevailing market rate in the relevant community for similar services by lawyers of reasonably comparable skills, experience, and reputation," *Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988), "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson,* 465 U.S. 886, 895 (1984).  "Civil rights litigants may not be charged with selecting the nearest and cheapest attorney." *Dowdell,* 698 F.2d at 1192.

Coalition Plaintiffs are requesting the following hourly rates.  The qualifications of each of the lawyers is discussed in greater detail in the attached declarations.

Robert McGuire: $615.  Mr. McGuire graduated from Princeton in 1994 and Yale Law School in 1999, where he served as a Senior Editor of the Yale Law Journal.   After law school, Mr. McGuire clerked for Judge James B. Loken of the U.S. Court of Appeals for the Eighth Circuit.  Prior to starting his own firm in 2009, Mr. McGuire worked in the capital markets group of Allen & Overy LLP in London, U.K., where his hourly rate ranged between $725 and $1,000.  Since 2009, Mr. McGuire's law practice through his own firm has focused on federal and state elections laws and litigation.  Mr. McGuire's practice is split between Seattle,

Washington, and Denver, Colorado, and he has represented clients in election and other cases all over the country.

Bruce Brown: $625.  Mr. Brown graduated from Davidson College in 1979 and University of Georgia School of Law in 1984.  After law school, Mr. Brown clerked for Judge Edward A. Tamm of the U.S. Court of Appeals for the District of Columbia Circuit and Chief Justice of the United States Warren E. Burger.  Mr. Brown practiced with Long, Aldridge & Norman (and its successor, McKenna, Long & Aldridge) from 1986 to 2012, when he started his own practice.  When he left McKenna, Mr. Brown's hourly rate was $605.  Mr. Brown has specialized in complex commercial, regulatory and constitutional cases throughout his career.

Cary Ichter: $625.  Mr. Ichter is the managing partner of Ichter Davis, LLC, and has practiced in Atlanta since graduating *magna cum laude* from the University of Georgia School of Law in 1984.  Mr. Ichter began his legal career working for Powell, Goldstein, Frazer & Murphy, where he worked until 1992.  In 1992, Mr. Ichter co-founded the firm Meadows, Ichter & Trigg.  Mr. Ichter is known by reputation as a "highly skilled litigator."  (Remar Decl., ¶ 10). Additional information about Mr. Ichter's practice and experience may be found in his declaration (Ex. D), and his firm web site, ichterdavis.com.

William Ney: $450.00.  Mr. Ney is a 1999 graduate of Emory Law School and has practiced in Atlanta since 2001.  Mr. Ney was a founding member of Ney Hoffecker Peacock & Hayle, LLC, where he practiced until 2018, when he started his own solo practice.  Mr. Ney has handled a wide range of civil cases throughout his career, with a specialty in professional liability cases.  Mr. Ney frequently serves as an expert witness on lawyers' standard of care and reasonableness of fees.  (Ex. F, Ney Decl.).

Lawyers' Committee Lawyers.  The two primary lawyers from the Lawyers' Committee engaged in this case are Ezra Rosenberg and John Powers.  Mr. Rosenberg ($650) is the Co-Director of the Voting Rights Project at the Lawyers' Committee.  (*See generally,* Ex. E, E. Rosenberg Decl., ¶¶ 8-11). A 1974 graduate of New York University School of Law, Mr. Rosenberg practiced with Dechert for many years before leaving to join the Lawyers' Committee in 2014.  Mr. Rosenberg has substantial experience at Dechert and the Lawyers' Committee on voting rights cases, representing plaintiffs in high profile cases throughout the country.  Mr. Rosenberg many honors and other information on his background may be found in his declaration.

John Powers ($400) is a Counsel in the Voting Rights Project of the Lawyers' Committee, which he joined in 2015.  A 2013 graduate of Georgetown

University Law Center, Mr. Powers worked for eight year in the Voting Rights Section at the Department of Justice.  Since joining the Lawyers' Committee, Mr. Powers has played significant roles in numerous voting rights cases in federal courts in Georgia.  (Ex. E, E. Rosenberg Decl., ¶ 22).

Other lawyers from the Lawyers Committee representing the Coalition Plaintiffs in this case included Jon Greenbaum ($650), Chief Counsel of the Lawyers' Committee (J.D., UCLA, 1993), David Brody ($400) (J.D., Harvard, 2012), Jacob Conarck ($250) (J.D., Antonin Scalia Law School at George Mason University, 2018), and Ryan Snow ($250) (J.D., University of Virginia, 2018).

In support of the reasonableness of the rates of the six lawyers with the most time on the case (McGuire, Brown, Ichter, Ney, Rosenberg and Powers), the Coalition Plaintiffs have filed the Declaration of Robert B. Remar (Ex. A).  Mr. Remar, a partner at Rogers & Hardin, has practiced in Atlanta since 1974.  Mr. Remar is Vice President and Treasurer of the American Civil Liberties Untion, a Fellow of the American College of Trial Lawyers, and the 2018 Recipient of the ACLU of Georgia's Lifetime Achievement Award.  (Ex. A, Remar Delc. Ex. A). Mr. Remar has substantial experience in complex commercial, constitutional and public interest litigation and is personally familiar with hourly billing rates of lawyers who practice in Atlanta.  Mr. Remar also has personal knowledge of the

skill and experience of Mr. Brown and Mr. Ichter and the work of the Lawyers'

Committee, particularly its voting rights work.  (Remar Decl. ¶ 10).

Mr. Remar reviewed the curriculum vitae of the lawyers, this Court's Order

(Doc. 579), the Coalition Plaintiffs' Special Motion (Doc. 595), fee applications in

several recent class action cases, and the online billing rate database of the *Fulton

County Daily Report.*   Mr. Remar concludes:

> Based upon my experience and my review of the above-referenced
> sources it is my professional opinion that the hourly rates sought by
> Plaintiffs' counsel in this litigation are well within the reasonable
> range of rates charged by attorneys of comparable skills and
> experiences practicing in the Atlanta metropolitan area, including the
> United States District Court for the Northern Distinct of Georgia.

(Ex. A, R. Remar Decl., ¶ 9).

The reasonableness of the rates of the other lawyers and professionals

representing the Coalition Plaintiffs from the Lawyers' Committee is addressed in

the Mr. Rosenberg's Declaration.  (Ex. E, E. Rosenberg Decl. ¶¶ 28-35, 49-51).

Mr. Rosenberg's Declaration also cites a number of reported cases in which rates

far in excess of what the Coalition Plaintiffs is seeking were deemed reasonable in

the Atlanta market.  (*Id.* at 51).

## VII.  REASONABLENESS OF EXPENSES AND CGG TIME

It is well settled that prevailing parties are entitled to be reimbursed fully for the expense the litigation.  "Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply."  *Dowdell,* 698 F.2d at 1188–89.  The purpose of Section 1988 "is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations."  *Id.* at 1189.  Which expenses are covered under Section 1988 is not "settled by reference to any pre-determined list of items."  *Id.* "Because civil rights litigants are often poor, and judicial remedies are often non-monetary, the Act shifts the costs of litigation from civil rights victim to civil rights violator."  *Id.*

> The Act's [i.e., Section 1988's] legislative history of Section 1988 states two justifications for cost-shifting.  First, it "is designed to give victims of civil rights violations effective access to the judicial process." H. Rep. No. 1558 at 1, 94th Cong., 2d Sess. (1976). . . . Second, it provides an incentive to individuals to act as "private attorneys general," playing a significant role in the enforcement of important congressional policies. . . . Because the Act is designed to translate policy into fact, the standard of reasonableness is governed by the economic realities of civil rights litigation.

*Dowdell,* 698 F.2d at 1189.  "Both justifications for cost-shifting indicate that all reasonable expenses should be fully recoverable."  *Id.* at 1190.

"With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999) (quoting *Dowdell*, 698 F.2d at 1192). "As is true in other applications of section 1988, the standard of reasonableness is to be given a liberal interpretation." *Dowdell*, 698 F.2d at 1192.)

"We reject any interpretation of 'reasonable costs' which would penalize attorneys for undertaking civil rights litigation. 'No one expects a policeman, or an office holder, to pay for the privilege of enforcing the law. It should be no different for a private citizen. . . .'' … Certainly it should be no different for the civil rights attorney." *Dowdell*, 698 F.2d at 1191.

The basis for and reasonableness of the expenses incurred by the lawyers and law firms is set forth in the attached declarations.

Finally, the Coalition Plaintiffs are claiming as additional expenses the time that was necessarily and reasonably spent by Marilyn Marks, Executive Director of Coalition for Good Governance, and her staff of paid interns. Each of these individuals performed work, in the nature of paralegal or law clerk tasks. They did so at the direction and under the supervision of counsel. The work they performed

would have needed to be done by attorneys of record, had these individuals not been utilized.  By leveraging these non-lawyer individuals in this manner, the Coalition Plaintiffs' counsel were able to significantly reduce the amount of attorney time that had to be spent on fact-gathering, investigation, discovery review, exhibit preparation, and case logistics.  Counsel's utilization of these non-lawyer individuals  to assist in this case permits the Coalition Plaintiffs now to request reimbursement at substantially lower hourly rates than would be required had attorneys done this work instead.   (Ex. G, Marks Decl., *passim*).

The Eleventh Circuit agrees that such economizing through the use of non-lawyers is appropriately compensable:

> "[P]aralegal time is recoverable as 'part of a prevailing party's award for attorney's fees and expenses, [but] *only to the extent that the paralegal performs work traditionally done by an attorney*." … The same analysis applies here. To hold otherwise would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost."

*Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (emphasis in original); *see also Webster Greenthumb,* 112 Supp. 2d at 1366–67 ("While it is true that time for secretaries, office managers, and other administrative personnel is deemed to be subsumed into an attorney's market rate, the same is not true for paralegals, law

clerks, and other legal assistants to the extent they perform work traditionally performed by an attorney.")

Other expenses incurred by the Coalition, and each of the lawyers and law firms, is set out in the attached declarations and summarized below.

## VIII.  SUMMARY

For the foregoing reasons, the Coalition Plaintiffs are entitled to an award of $1,408,558 in fees and $415,984 in expenses, as shown by the following Table II:

### Table II: Summary of Fees and Expenses[11]

| | Hours | Top Lawyer Rate | | Total Fees | | Expenses[12] | | Total |
|---|---|---|---|---|---|---|---|---|
| McGuire | 554.21 | $ | 615.00 | $ | 340,839 | $ | 4,808 | $ | 345,647 |
| Brown | 954.5 | $ | 625.00 | $ | 596,563 | $ | 469 | $ | 597,032 |
| Ichter | 294 | $ | 625.00 | $ | 155,912 | $ | 1,772 | $ | 157,684 |
| LC | 760.5 | $ | 650.00 | $ | 266,730 | $ | 13,155 | $ | 279,885 |
| Ney | 129 | $ | 450.00 | $ | 48,514 | $ | - | $ | 48,514 |
| CGG | | $ | - | $ | - | $ | 395,780 | $ | 395,780 |
| Totals | 2692 | | | $ | 1,408,558 | $ | 415,984 | $ | 1,824,542 |

---

[11] Mr. McGuire and Mr. Brown have solo practices and their total fees are the product of their hours times their rate.  The other organizations have more than one timekeeper, so the total fees sought will be less than the product of the top hourly rate times the number of hours.  Details of these figures may be found in the declarations for each lawyer or law firm.

[12] Included in the category of CGG expenses is amounts sought for Ms. Marks' time.

Respectfully submitted this 17th day of October, 2019.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

/s/ Robert A. McGuire, III
Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*Counsel for Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

/s/ Ezra D. Rosenberg
Ezra D. Rosenberg
John Powers
David Brody
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

*Counsel for Coalition Plaintiffs*

59

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

---

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

---

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has

been prepared in accordance with the font type and margin requirements of LR 5.1,

using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

60

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER , ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2019, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**DONNA CURLING, ET AL.,**

**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**

**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## COALITION PLAINTIFFS' DETAILED
## SPECIFICATION IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

## INDEX OF EXHIBITS

Exhibit A          Declaration of Robert B. Remar
Exhibit B          Declaration of Robert A. McGuire
Exhibit C          Declaration of Bruce P. Brown
Exhibit D          Declaration of Cary Ichter
Exhibit E          Declaration of Ezra D. Rosenberg
Exhibit F          Declaration of William B. Ney
Exhibit G          Declaration of Marilyn Marks

EXHIBIT

A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br><br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br><br>    Defendants. | Civil Action File No.<br>1:17-CV-2989-AT |

## DECLARATION OF ROBERT B. REMAR

1.     My name is Robert B. Remar.  I make this declaration pursuant to 28 U.S.C. § 1746 in support of the hourly rates requested by the Coalition Plaintiffs' counsel in Coalition Plaintiffs' Motion For An Award Of Attorney's Fees And Costs in the above-captioned matter.

2.     I am a 1974 graduate of Boston College Law School and a member in good standing of the State Bar of Georgia since 1974.  I am admitted to practice in the Supreme Court of the United States, the United States Courts of Appeals for the Eleventh and Fifth Circuits, and the United States District Courts for the

Northern, Middle and Southern District of Georgia and the Northern District of New York.  I am also an inactive member of the Bar of the Commonwealth of Massachusetts.

3.      I began my law practice in 1974 with the Georgia Legal Services Program.  In 1983 I left Georgia Legal Services Program and practiced in a number of small firms doing a substantial amount of civil rights, constitutional law and plaintiff's employment litigation.  In 1996 I joined the law firm of Rogers & Hardin LLP.  I am currently a partner at Rogers & Hardin representing both plaintiffs and defendants in complex commercial litigation matters.  I also handle pro bono civil rights cases from time to time.  A complete copy of my biography as found on the Rogers & Hardin website is attached hereto as Exhibit "A".

4.      I have been asked by Coalition Plaintiffs' counsel to review the reasonableness of the  hourly rates they are seeking in Plaintiffs' motion for attorneys' fees and expenses and to offer an opinion as to the reasonableness of those hourly rates.  The lawyers, their year of law school graduation and their requested rates are as follows:

   a.  Bruce Brown, 1984:  $625.00

   b.  Gary Ichter, 1984: $625.00

   c.  Robert McGuire, 1999:  $615.00

2

d. William Ney, 1999: $450.00

e. Ezra Rosenberg of the Lawyer's Committee for Civil Rights Under Law, 1974: $650.00

f. John Powers of the Lawyer's Committee for Civil Rights Under Law, 2013: $400.00

5.      Based upon my experience and my knowledge of the billing rates of my firm and other law firms, I am personally familiar with hourly billing rates of lawyers who practice in the metropolitan Atlanta area, including in the United States District Court for the Northern District of Georgia.

6.      In connection with my review of the hourly rates sought by Plaintiffs' counsel in this matter I reviewed the biographies/curriculum vitae of Messrs. Brown, Ichter, McGuire, Ney, Rosenberg and Powers.  I also reviewed Coalition Plaintiffs' Special Motion For Award Of Attorneys' Fees And Expenses (ECF 595) and the Court's August 15, 2019 Order in *Curling v. Raffensberger* (ECF 579).

7.      In addition to my general familiarity with billing rates for lawyers who practice in the Northern District of Georgia, I reviewed declarations and motions for attorney's fees in two recent class actions filed in the Northern District of Georgia where I represented the Defendants.  In *Arby's Restaurant Group, Inc. Data Security Litigation Consolidated Consumer Case*, Case No. 1:17-CV-1035-

3

WMR, Plaintiffs' counsel sought to recover fees based upon a percentage of the common fund.  In support of their fees motion Plaintiffs' counsel submitted declarations setting forth their standard hourly rates.  The Barnes Law Group hourly rates for partners were from $550.00 to $750.00 per hour and $350.00 per hour for an associate.  The hourly rate for the partners at Morgan & Morgan were $864.00 to $950.00, and for Evangelista Worley, $775.00 per hour for partner time.  In *T. S. Kao, Inc. d/b/a Lucky Seven v. North American Bancard, LLC, et al.*, Civil Action No. 1:16-CV-04219-SCJ, Plaintiffs' counsel also sought a percentage of the common fund for their fee award.  In support of that fee request Kenneth Canfield of Doffermyre, Shields, Canfield & Knowles, LLC stated that his hourly rate was $1,000.00.  The Chicago firm of Dicello, Levitt and Gutzler reported hourly rates for partners from $750.00 to $985.00 with associate and senior counsel rates from $500.00 to $680.00 per hour.  While the *Arby's* and *T.S. Kao* cases were consumer/merchant class actions, the *Curling v. Raffensberger* case was certainly of equal complexity and importance.  This is in contrast to the Court's Order in *Georgia State Conference of the NAACP, et al. v. Kemp, et al.*; Civil Action No. 1:78-CV-1397-TCB (ECF 52) where the Court accepted the requested hourly rates but adjusted the loadstar because the National Voter Registration Act claims were not particularly complex.

4

8.      In connection with my review of the reasonableness of Plaintiffs'

counsels' hourly rates I also reviewed hourly rate information from the online

billing rate database of the *Fulton County Daily Report*.  That data shows hourly

billing rates from 2006 through 2014.  I also reviewed the February 24, 2014

edition of *The Fulton County Daily Report* that listed 2013 hourly rates for Atlanta

lawyers.  That list was compiled from cases filed in the Bankruptcy Court for the

Northern District of Georgia and other federal courts.  I am familiar with a number

of the lawyers listed whose practice area includes complex litigation.  That data

confirms that the rates sought by Plaintiffs' counsel here are within the range of

rates charged for comparable work in the Atlanta metropolitan area.

9.      Based upon my experience and my review of the above-referenced

sources it is my professional opinion that the hourly rates sought by Plaintiffs'

counsel in this litigation are well within the reasonable range of rates charged by

attorneys of comparable skills and experiences practicing in the Atlanta

metropolitan area, including in the United States District Court for the Northern

District of Georgia.

10.      My opinion is further supported by my personal knowledge of Mr.

Brown and his legal skills.  In particular, Mr. Brown and I worked together in

defending a challenge to the award of the Georgia statewide health benefit plan,

litigation that involved tens of millions of dollars.  I also know Mr. Ichter by reputation as a highly skilled litigator.  My firm has also litigated against Mr. Ichter.  As the Vice President and Treasurer of the American Civil Liberties Union I am familiar with the work of the Lawyer's Committee for Civil Rights Under Law, particularly its voting rights work.

11.     Pursuant to 28 U.S.C.  § 1746 I declare under the pains and penalties of perjury that the foregoing is true and correct.

This _4th_ day of October, 2019.

Robert B. Remar

6

EXHIBIT

A



# ROGERS & HARDIN

Keyword

Advanced Search

| ATTORNEYS | PRACTICES | NEWS AND INSIGHTS | ABOUT US | CAREERS |

## Robert B. Remar
**Partner**
T: 404.420.4631
F: 404.230.0966

rremar@rh-law.com
v-Card





## OVERVIEW

Robert B. Remar is a partner with Rogers & Hardin LLP. In his more than 44 years of practice he has handled numerous complex, high profile litigation matters. He has tried scores of cases to juries in both state and federal courts. His practice focuses on complex commercial and business disputes, employment, administrative law, health care, class actions and civil rights/constitutional law.  He also acts as an arbitrator and mediator. He is a Fellow of the American College of Trial Lawyers.

Mr. Remar is selected by *Best Lawyers in America* as the 2018 Atlanta "Lawyer of the Year" in Administrative/Regulatory law.  He was also selected as the 2015 Atlanta "Lawyer of the Year" in Administrative/Regulatory law and, in 2014, as Atlanta "Lawyer of the Year" in First Amendment law.

For 12 years Mr. Remar was an Adjunct Professor teaching litigation at Georgia State University College of Law and for 13 years his practice included serving as the Hearing Officer for the Georgia Public Service Commission. He has been on the National Board of Directors of the American Civil Liberties Union for 31 years and currently serves as Vice-President, Treasurer, and Secretary.

## REPRESENTATIVE EXPERIENCE

– Mr. Remar and a team of Rogers & Hardin attorneys represent SouthStar Energy Services, Georgia's largest natural gas marketer with operations in ten states, in all aspects of its business, including litigation, contract and regulatory matters

– Part of the Rogers & Hardin team defending nationwide class actions involving credit card processing fees.

– Has represented one of the country's largest insurers in numerous complex matters, including commercial disputes and coverage issues

– Part of the Rogers & Hardin defense team that represented one of the country's largest manufacturers of building products in product liability claims. Won motions to dismiss state-wide class actions in Florida and North Carolina.

– Lead a Rogers & Hardin team in filing amicus briefs in the Supreme Court and the Eleventh Circuit in the Georgia-Florida "water wars" cases.

– Co-counsel in the defense of financial institutions and consumer consolidated class actions involving a card payment data breach

– Successfully represented the majority owners in a three week trial regarding ownership of the Atlanta Hawks, Atlanta Thrashers and the rights to the Philips Arena

– Defended a former director in a multi-party Delaware Chancery Court derivative action seeking over $120 million for alleged breach of fiduciary duty

– Represents health care professionals in licensing board complaints

– Defended county and county officials in highly contentious and publicized federal court jury trials involving civil rights and employment claims

– Successfully defended a county Board of Elections in a challenge to the election of the County Commission Chair and successfully defended another county Board of Elections in the District Court and Court of Appeals in a redistricting challenge

– Along with a team of Rogers & Hardin attorneys successfully represented then Georgia Attorney General Thurbert Baker in a suit brought by the Governor seeking to compel the Attorney General to dismiss an appeal pending in the United States Supreme Court

– Successfully represented in-town Atlanta neighborhoods in the contentious Presidential Parkway litigation

– Co-counsel in the successful defense of "yield spread premium" class actions against Bank of America and Chase Manhattan Mortgage Corporation

– Co-lead counsel to the plaintiff class in the ground-breaking "prime rate" case *Kleiner v. First National Bank of Atlanta*

– Represented the plaintiff class in a four-week §1983 "anti-slapp" jury trial, one of the first in the country to be tried

### Practices
Class Actions
Complex Business Litigation
  Contract Disputes
  Business Torts and RICO
Civil Rights and Constitutional Law
Energy Law
Insurance-Related Litigation
Restrictive Covenants, Trade Secrets and Proprietary Information
Intellectual Property
  Protection of Trade Secrets and Proprietary Information
Professional Liability and Disciplinary Proceedings
  Legal Malpractice Defense
  Mental Health Professionals
Administrative Law
Health Care Litigation
Appellate
Employment Law
  Employment Discrimination Litigation

### Assistant
Susan Mathis
Direct  404.954.7526
smathis@rh-law.com

### Education
J.D., Boston College, 1974
B.A., University of Massachusetts, 1970

### Bar Admissions
Georgia, 1974
Massachusetts, 1975, Inactive
United States Supreme Court, 1981
United States Court of Appeals for the Fifth Circuit, 1978
United States Court of Appeals for the Eleventh Circuit, 1981
United States Court of Appeals for the Second Circuit, 1995
United States District Court Northern District of Georgia, 1979

– Represented a nationwide class of women and children recipients of federal supplemental food benefits and three members of Congress challenging the Reagan administration's "impoundment" of federal funds. The D.C. District Court issued an injunction directing release of the funds

– Represented the plaintiff class in a constitutional challenge to Georgia's civil commitment procedures for persons found not guilty by reason of insanity

– Represented the plaintiff class in a constitutional challenge to the fee system for the compensation of small claims court judges

United States District Court Middle District of Georgia, 1982

United States District Court Southern District of Georgia, 1974

United States District Court Northern District of New York, 1992

## PROFESSIONAL & COMMUNITY ACTIVITIES

– Fellow, American College of Trial Lawyers

– Member, Atlanta International Arbitration Society

– Hearing Officer (Administrative Law Judge), Georgia Public Service Commission 1984-1997

– Adjunct Professor (Litigation), Georgia State University College of Law 1984-1996

– Member, Bar Council, U.S. District Court, Northern District of Georgia 1996-1999

– Board of Directors, Federal Defender Program, U.S. District Court, Northern District of Georgia 2002-2007 (Chair 2006-2007)

– Special Assistant Attorney General, State of Georgia 1987-1997, 2003-2005

– Vice-President, Treasurer, and Secretary, National Board of Directors, American Civil Liberties Union (Board Member since 1986)

– President, American Civil Liberties Union of Georgia 1985-1987

– Board of Experts (in civil rights), *Lawyers Weekly*, Lawyers Weekly Publications (Boston, Mass.) 1985-1993

– Board of Directors (Former Chair), Georgia Appellate Practice and Educational Resource Center, Inc. 1987-

– President, Georgia Consumer Center, Inc. 1988-1991

– Board of Directors and President, Georgia Center For Law In The Public Interest 1992-1995 (now Greenlaw)

– Georgia Consumer Advisory Board (By Appointment of the Governor) 1982-1983

– Georgia Energy Regulatory Reform Commission (By Appointment of the Governor) 1980-1982

– Chair, Access to Civil Justice Committee, American Bar Association Individual Rights and Responsibilities Section 1983-1997

– State Bar of Georgia Special Committee on Post-Conviction Proceedings 1985- 2014 (Chair 1991- 2014)

– State Bar of Georgia Indigent Defense Committee 1999-

– Chair, Individual Rights Section, State Bar of Georgia 1981-1983

– Co-Chair, Consumer Rights and Remedies Committee, State Bar of Georgia 1979-1983

– State Bar of Georgia Special State Tort Claims Act Committee 1991-1992

– Board of Trustees, The Institute of Continuing Legal Education in Georgia 1981-1982

– Member, State Bar of Georgia Advisory Committee On Legislation 1995-1996

– Member, City of Atlanta Board of Ethics 2002-2005

– Board of Advisors, American Constitution Society, Atlanta Chapter

– Master of the Bench, Lamar Inn of Court, American Inns of Court

– American Bar Association

– Atlanta Bar Association

– Federal Bar Association

– Lawyers Club of Atlanta

## SPEECHES & PRESENTATIONS

– Chair and Presenter, "Ethics For In-House Counsel," Georgia Chapter, Association of Corporate Counsel (2014)

– Panelist, "Practicing Psychiatry: A Moral Adventure," Georgia Psychiatric Physicians Association 2014 Winter Meeting

– "Pretrial and Trial Conduct Dilemmas", Lamar Inn of Court (2014)

– Issues of Special Importance To Mental Health Professionals, Fundamentals of Health Care Law, Institute of Continuing Legal Education In Georgia (2008- 2018)

– "Courts and Secrecy", Lamar Inn of Court (2011)

– Issues of Legal Privilege And Psychologist Ethics, DeKalb Bar Association Family Law Section (2017)

– Panelist, Genesis and Persistence in Advocacy for Peace, Muted Voices Symposium, National World War I Museum and Memorial (2017).

– Co-Author, Law and Mental Health Professionals: Georgia (APA Press 1996)

## PROFESSIONAL RECOGNITION

– Recipient of ACLU of Georgia 2018 Lifetime Achievement Award

– Recipient of Justice Robert Benham Award For Community Service presented by the State Bar of Georgia, 2018

– Fellow, American College of Trial Lawyers

– Vice-President, Treasurer, and Secretary, American Civil Liberties Union

– *The Best Lawyers In America®:* 2018 Atlanta "Lawyer of the Year" in Administrative/Regulatory Law, 2015 Atlanta "Lawyer of the Year" in Administrative/Regulatory Law, 2014 Atlanta "Lawyer of the Year" in First Amendment Law.  Also recognized in Bet-the-Company Litigation, Commercial Litigation, Litigation - Labor & Employment, Litigation - Regulatory Enforcement (SEC, Telecom, Energy)

– Legal Leader *Chambers USA*: General Commercial Litigation

– *Georgia Super Lawyers 2017:* General Litigation, Business Litigation, and Administrative Law

– *Benchmark Litigation*: Listed as Local Litigation Star in Georgia

– *Who's Who In America*

– *Who's Who In American Law*

– *Georgia Best Lawyers 2016:* Administrative/Regulatory Law, Bet-the-Company Litigation, First Amendment Law, Labor and Employment

## RECOGNITIONS                                                                                View All

August 2019
The Best Lawyers in America® Recognizes 14 Rogers & Hardin Attorneys

April 2019
Rogers & Hardin Recognized in 2019 Chambers USA Guide

February 2019
12 Rogers & Hardin Partners Recognized by Super Lawyers in 2019

November 2018
U.S. News - Best Lawyers® "Best Law Firms" Recognizes Rogers & Hardin

October 2018
Rogers & Hardin Receives 2019 Benchmark Litigation Highly Recommended Ranking

Copyright 2019 Rogers & Hardin LLP. All Rights Reserved.

Home      Attorneys      Practices      News and Insights      About Us      Careers                              Search      Contact Us      Site Map      Disclaimer      Privacy Policy      Remote Access
2700 International Tower  229 Peachtree Street NE  Atlanta, GA 30303  T: 404.522.4700

POWERED BY ⬤ CONTENT PILOT.

E
X
H
I
B
I
T


B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## DECLARATION OF ROBERT A. MCGUIRE, III

1.      My name is Robert A. McGuire, III.  I am over the age of 21 and competent to testify.  I have personal knowledge of the facts stated in this Declaration, which I offer in support of the Coalition Plaintiffs' Special Motion for Award of Attorneys' Fees and Costs (Doc. 595).  If called as a witness,  I would testify under oath to these facts.

2.      On January 9, 2018, I entered my appearance *pro hac vice* in this case on behalf of the Coalition for Good Governance ("Coalition"). (Doc. 129.)  Since my appearance, I have at different times served variously as lead counsel and as co-lead counsel for Coalition.

3.      The portion of the Coalition Plaintiffs' request for an award that is attributable to my work is **$345,647.17**.  This amount consists of (1) $340,839.15 for attorney fees, which I have calculated by the lodestar method on the basis of

554.21 hours of attorney work performed at a market rate of $615.00 per hour; and (2) $4,808.02 in out-of-pocket litigation-related expenses that I advanced on behalf of Coalition.

4.      This Declaration attests to facts that support the reasonableness of using $615 per hour as a market rate to value my professional time, the reasonableness and necessity of my spending at least 554.21 hours on the work I have performed in this litigation, and the reasonableness and necessity of the $4,808.02 of litigation expenses I have incurred on behalf of the Coalition.

## EDUCATION AND PROFESSIONAL BACKGROUND

5.      In June 1999, I received my J.D. from Yale Law School, where I served as an Editor and a Senior Editor of the Yale Law Journal.

6.      I received my Bachelor of Arts with honors from Princeton University, where I majored in the Woodrow Wilson School of Public & International Affairs and minored with distinction in Russian Studies.

7.      I am a member of the bars of the States of New York, Colorado, and Washington.

8.      I am presently sole shareholder of the Robert McGuire Law Firm, through which I have practiced law for more than ten years.  Before forming my

own litigation firm in mid-2009, I was a U.S. Senior Associate in the London office of Allen & Overy LLP—one of the largest law firms in the world.

*Non-Practice Experience*

9.     Between college and law school, I worked as a Business Analyst with McKinsey & Company, Inc., in Atlanta, Georgia.  Following law school, I served as a law clerk to the Honorable James B. Loken on the United States Court of Appeals for the Eighth Circuit.

10.     Since law school, I have worked for periods in non-legal capacities as (1) founder and executive of a seed-stage legal-services Internet startup company; (2) Senior Policy Advisor covering a portfolio of issues in the Governor of Colorado's Office of Policy & Initiatives; and (3) campaign manager and in other senior campaign roles with several gubernatorial, state senate, and statewide initiative campaigns in the State of Colorado.

11.     I have engaged in teaching, speaking, and publishing activities including as (1) an adjunct professor of election law courses at the University of Denver's Sturm College of Law; (2) co-author of a major article published in the Duke Law Journal;[1] (3) speaker on legal topics at the Institute for Law and

---

[1] See Ian Ayres & Robert McGuire, *Using the False Claims Act to Remedy Tax-Expenditure Fraud*, 66 DUKE L.J. 535 (2016).

Economic Policy's 22nd Annual Symposium on Vindicating Virtuous Claims and most recently at Def Con 27's Voting Machine Hacking Village.

*Legal Practice Experience*

12.     Since my graduation from law school in 1999, I have practiced law both with the U.S. Law Group of London-based global law firm Allen & Overy LLP, and with my own firm.

13.     At Allen & Overy, I served as both an associate (during 2001–03) and a senior associate (during 2007–09) in the Derivatives and Structured Finance section of the firm's International Capital Markets Group.  By the conclusion of my tenure with A&O, my hourly billable rates as a U.S. Senior Associate ranged from $725 per hour to more than $1000 per hour, depending upon the exchange rate between the U.S. Dollar and the British Pound. These hourly rates were routinely charged for my time and paid by Allen & Overy's clients, which included some of the largest businesses and financial institutions in the world, all of whom were sophisticated and prolific consumers of legal services.

14.     In 2009, I left A&O to return to the United States to start my own practice, which I now conduct through the Robert McGuire Law Firm.  Since starting my own firm, my practice has focused on federal and state election laws and regulations (particularly relating to certified voting systems and voting system

4

security), related open records and open meetings actions, and related constitutional claims. My practice in these areas has allowed me to appear before federal, state, and administrative law courts as lead counsel on behalf of clients in numerous appellate and original matters.

15.     In addition to formal appearances, I have also advised clients outside the courtroom on election law and voting system matters in a number of jurisdictions, including North Carolina, South Carolina, Georgia, Colorado, and Washington State.

16.     In addition to being admitted to practice before the state courts of New York, Colorado, and Washington, I am currently admitted to the bars of the Supreme Court of the United States; the U.S. Court of Appeals for the Tenth Circuit; the U.S. Court of Appeals for the Ninth Circuit; the U.S. District Court for the District of Colorado; and the U.S. District Court for the Western District of Washington.  I have been admitted *pro hac vice* in actions in Maryland, California, Florida, and Georgia state courts.

17.     In my practice with my own law firm since 2009, I have represented, among others, (1) The President-elect of the United States, his campaign committee, and the Chairman of the Republican National Committee in litigation involving the Electoral College in the State of Washington; (2) a coalition of public

bodies and office holders challenging the proposed decennial reapportionment of
Colorado's General Assembly; (3) a West African energy company engaged in
fraud litigation against a Wall Street bank; (4) various candidates, office holders,
and voters in a variety of election contest actions in Colorado and elsewhere; and
(5) multiple private *qui tam* relators in cases brought to remedy fraud against the
government under the federal False Claims Act.

## MY ENGAGEMENT IN THIS MATTER

18.     I have a long-standing professional relationship under which I have
represented the Coalition for Good Governance (including its predecessor The
Rocky Mountain Foundation) and its Executive Director, Marilyn Marks, in her
personal capacity, in multiple voting and election-law matters, in both federal and
state courts, in different jurisdictions.

19.     In May–June 2017, I served as lead counsel in the state court case
*Curling v. Kemp*, No. 2017CV290630 (Fulton Cnty. Sup. Ct. filed May 25, 2017),
where I represented The Rocky Mountain Foundation and its co-plaintiffs in that
action (Donna Curling and Donna Price, who are now part of the Curling Plaintiffs
group in this case).

20.     Because of my history with the state court case, my practice focus,
and my past work done on various litigation matters for Coalition's Executive

Director, Coalition initially sought to engage me to litigate this matter.  Due to an impending trial that I had scheduled in another matter for late 2017, I was unable to commit to bringing this case as lead counsel.  The Plaintiffs in this matter thus initially moved forward with Steptoe & Johnson and Holcomb & Ward.

21.     When conflicts of interest began to appear among the plaintiffs after this case was initiated, Coalition engaged me to provide independent advice relating to the ongoing litigation of the case.

22.     Between July 10 and November 14, 2017, I spent at least **23.7 hours** providing advice to Coalition on case strategy, assisting with evidentiary preservation matters, independently evaluating defense arguments for dismissal, and reviewing the drafting of amended claims in what would become the Second Amended Complaint.

23.     In early November 2017, Steptoe & Johnson concluded that it was too conflicted to continue representing Coalition and the other plaintiffs and apparently chose among the plaintiffs by seeking permission to withdraw from representing Coalition.  (Doc. 104.)

24.     At this point, facing the loss of representation and unable to proceed without counsel, Coalition urgently renewed its request for me to step into this case as its lead counsel.  I agreed to do so and promptly applied for *pro hac vice*

admission on December 12, 2017.  I thereafter formally appeared on January 9, 2018 (Doc. 129).

25.     In conjunction with my agreement to serve as lead counsel, I requested, and Coalition agreed, to expand the legal team to include experienced Georgia counsel who were willing and able to share the workload as necessary and eventually operate as co-lead counsel on satisfactory payment terms, including on a contingent-fee basis.

26.     This attorney-client agreement to litigate this case on a team basis was necessary because the magnitude of the case, my firm's limited size and resources, and my distance from the court all combined to ensure both that (1) my firm would not be able to afford to litigate this case on a fully contingent basis; and (2) Coalition would not be able to afford to engage my firm on a fully paid basis.

27.     The foregoing division of workload was initially implemented by the engagement of my firm in December 2017, sponsored by Coalition's then local counsel, William Ney.  William and I were joined by Bruce Brown and Cary Ichter, who appeared in March 2017.  More recently, in 2019, lawyers from the Lawyers Committee for Civil Rights Under Law have also appeared to assist.

28.     This team-oriented approach, which has permitted sharing of and transitions in the lead counsel role over time, has required me and others to spend

8

significant time on communications and strategy, as well as on conferrals both with the team and with Coalition's Executive Director.  This team approach has proven to be a very effective arrangement, and I credit it for making possible Coalition's unbroken string of successes in defeating motions to dismiss, winning an interlocutory appeal, and now obtaining a preliminary injunction against DREs.

## MY WORK IN THIS CASE

29.     My role in this case, through the 2019 injunction order, has involved the following major categories of work:

(1) providing independent advice prior to my formal appearance;

(2) setting Coalition's independent litigation strategy at the outset of 2018 and then drafting and defending the Coalition's Third Amended Complaint accordingly;

(3) co-preparing and litigating the 2018 injunction motion, which caused this Court to find the Coalition Plaintiffs had a likelihood of success on the merits and which established a substantial portion of the evidentiary record that underlay the 2019 injunction order;

(4) successfully opposing the State Defendants' interlocutory appeal of jurisdiction and standing on behalf of the Coalition Plaintiffs;

(5) providing ongoing strategic and discovery planning;

(6) assisting in work done to amend and enforce the 2019 injunction order;

(7) assisting to prepare the Coalition Plaintiffs' present fee application;

(8) preparing a supplemental complaint addressing ballot marking devices and accompanying motion for leave to file; and

(9) contributing to provide all other necessary litigation work on projects that do not warrant being listed in a separately broken out category.

30.    In this fee application, I am claiming for all of my time spent in the foregoing categories, *excluding* (1) my time spent on the interlocutory appeal, since only the Court of Appeals may make awards for appellate attorney fees;[2] (2) my time spent on Coalition's supplemental complaint against BMDs, since the BMDs only became part of this case after the injunction against DREs was granted; and (3) my hours of recorded time that I have determined to exclude from Coalition's fee claim in the exercise of my "billing judgment."

---

[2] Note that two time entries (2.69 hours total on January 8–9, 2019) are included for time spent in mediation conducted while this case was before the Eleventh Circuit.  Settlement discussions are not forum-dependent and thus time spent on mediation during the interlocutory appeal is properly awardable by this Court.

## IDENTIFICATION OF MY TIME SPENT

31.     In my timekeeping records for this case, I have recorded a grand total of **602.11 hours** for all of non-appellate and non-BMD work.

32.     As a routine practice, I record all my time in timekeeping software as I spend it on client work.  This means that I create my time records in real time as work is done, continually, throughout the day, every day with only rare exceptions.

## EXERCISE OF BILLING JUDGMENT

33.     In preparing this declaration, I reviewed all of my recorded non-appellate and non-BMD time entries to determine how much of this 602.11 hours should properly be claimed in Coalition's present fee petition.

34.     Out of my total 602.11 non-appellate and non-BMD hours recorded, I exercised "billing judgment" to exclude from Coalition's claim a total of **47.9 hours** (or **8.0%** of my total non-appellate and non-BMD time).  The excluded time breaks down as follows:

- 18.29 hours (3.0% of my total non-appellate and non-BMD time) spent on travel from Seattle to Atlanta for two hearings.  This amounts to cutting my total recorded travel time by half.  Although travel of out-of-town attorneys is fully compensable under Section 1988 in the Eleventh Circuit, clients frequently seek discounts for travel time, so I

preemptively reduced the hours of travel included in this claim by half
to ensure that the claim better corresponds to what a client would
typically pay.

- 21.75 hours (3.6% of my total non-appellate and non-BMD time)
  spent on tasks that either appeared unnecessarily redundant or that
  could not be substantiated by my contemporaneous time records
  without necessarily revealing privileged or work product matters.

- 7.86 hours (1.3% of my total non-appellate and non-BMD time) spent
  on tasks performed at the client's behest but that do not directly
  advance a litigation goal.  Examples of such time include responding
  to reporters, reviewing client press releases, being interviewed for an
  HBO documentary, and the like.

### REASONABLENESS OF REMAINING TIME CLAIMED

35.    After exercising my billing judgment to exclude 47.9 hours of my
recorded time from Coalition's claim, the remaining amount of non-appellate and
non-BMD time that I am claiming for totals **554.21 hours**.

36.    Attached as **Exhibit A** is a report showing 418 time entries describing
in dates and detail of the work that I performed during the claimed 554.21 hours.

The entries shown on Exhibit A are true and correct copies of the information recorded in my timekeeping software.[3]

37.     When the 554.21 hours are broken out into the date periods discussed in the Coalition Plaintiffs' supplemental memorandum filed herewith, the hours fall into the time periods as shown in the following table:

| Phase | Dates | Major Activities in the Phase | McGuire Hours | Pct. Time |
|---|---|---|---|---|
| Phase I | Through Feb. 28, 2018 | Case Initiation, State Court Complaint; Second Amended Complaint | 152.69 | 27.5% |
| Phase II | Mar. 1, 2018 – June 30, 2018 | Third Amended Complaint; Motions to Dismiss | 147.93 | 26.7% |
| Phase III | July 1 to Sept. 19, 2018 | 2018 Motion for Preliminary Injunction | 185.62 | 33.5% |
| Phase IV | Sept. 20 to Oct. 2, 2018 | Consideration of Motion for Reconsideration and Motion for Additional Injunctive Relief | 10.12 | 1.8% |
| Phase V | Oct. 3, 2018 to Feb. 8, 2019 | Stay, 2018 Election, Appeal | 4.98 | 0.9% |
| Phase VI | Feb. 9 to Aug. 15, 2019 | 2019 Motion for Preliminary Injunction | 8.59 | 1.5% |
| Phase VII | Aug. 16, 2019 to Present | Enforcement and Fee Application (BPB Hours only through August; will update) | 44.28 | 8.0% |
| | | **Total:** | **554.21** | **100%** |

---

[3] I modified a small number of these entries to correct spellings and to paraphrase text in a way that will avoid disclosing privileged and work product matters In every case when such modifications are made, I have denoted the modification by using brackets to surround the modified language (i.e., "[" and "]").

38.   A different way to break down the 554.21 hours is by category of work, rather than time period.  When the 554.21 hours are broken out into the categories of work that I have discussed above in Paragraph 29, the hours fall into the work categories as shown in the following table:

| Category | Work Description | McGuire Hours | Pct. Time |
|:---:|:---|:---:|:---:|
| 1 | Providing independent advice prior to my formal appearance | 23.70 | 4.3% |
| 2 | Setting Coalition's independent litigation strategy at the outset of 2018 and then drafting and defending the Coalition's Third Amended Complaint accordingly | 212.33 | 38.3% |
| 3 | Preparing and litigating the 2018 injunction motion | 163.32 | 29.5% |
| 4 | Opposing the State Defendants' interlocutory appeal of jurisdiction and standing | - | -% |
| 5 | Providing ongoing strategic and discovery planning | 59.64 | 10.8% |
| 6 | Obtaining and enforcing the 2019 injunction | 14.10 | 2.5% |
| 7 | Preparing this fee application | 35.09 | 6.3% |
| 8 | Preparing a supplemental complaint addressing ballot marking devices and accompanying motion for leave to file | - | -% |
| 9 | All other necessary litigation work | 46.03 | 8.3% |
| | **Total:** | **554.21** | **100%** |

39.     Based on my personal knowledge of the work memorialized in my timekeeping records, and based on my professional experience of litigating voting and election-law matters, the 554.21 hours that are being claimed for my work in this case were all both reasonable and necessarily performed for the successful prosecution of the Coalition Plaintiffs' claims.

## CLAIMED HOURLY RATE

40.     I am claiming an hourly rate of **$615.00 per hour** for my work performed in this case.

41.     Based on my personal knowledge of legal markets and my professional experience of litigating voting and election-law matters, the claimed rate is reasonable for an attorney of my background and experience to charge for litigating this case.

## BILLING PRACTICES

42.     As of 2019, my billable rates vary by client, jurisdiction, and type of fee arrangement.

43.     When a client is able and agrees to pay for my services at my standard billable rate on a monthly basis as and when work is performed, I consider that client's work to be a "low-risk" engagement.  I am able to accept low-risk engagements without including a risk premium in the hourly pricing of my

services.  Clients whose engagements are low-risk typically include large and well-funded organizations with significant and regular cash flows, government bodies with taxing authority, and individuals with personal access to substantial financial resources.

44.     Clients that are less well-funded, such as less well-off individuals, small businesses, and smaller public-interest organizations, are generally unable to pay me at my standard hourly rates for any extended period of engagement. These clients usually request alternative payment arrangements such as contingent-fee, partially-contingent, or a fixed fee-for-service billing arrangements.  Clients seeking these kinds of alternative payment arrangements can usually afford to pay something during the course of litigation, but they do not expect to be able to pay in full for my legal fees until and unless they are able to either (1) recover damages; or (2) obtain statutory fee-shifting.  When I serve clients under such alternative arrangements, I consider their engagements to be "high-risk" because I know from the outset that my services will only be fully paid in the event that the client ultimately prevails.

45.     Because clients in high-risk engagements do not always win, and because receiving a full fee recovery can take years even when clients do win their high-risk engagements (due to the slow pace of litigation), the hourly rates that I

16

charge to clients with high-risk engagements must necessarily be significantly higher than the rates I charge for comparable work in low-risk engagements. The difference between these rates can be considered a "risk premium."

46.    Without the assurance of being paid a risk premium, I would be unable to serve clients with high-risk engagements. This is true because any time that I commit to spend on high-risk work may never be compensated, yet that commitment to high-risk work is guaranteed to reduce my availability, hour-for-hour, to accept other, low-risk work at my usual rates during the same time period.

47.    If I assume that my clients will prevail only 50% of the time, I would have to charge a risk premium of 100% for fully contingent work in order for my high-risk engagements to be economically equivalent to my low-risk engagements. In the absence of a sufficient risk premium, I simply cannot afford to take on high-risk engagements due to the opportunity cost to my firm that inevitably results from my available time being limited.

48.    For clients with low-risk engagements, my current standard rates for new clients are $495 per hour in the Denver market and $525 in the Seattle market.

49.    In this case, Coalition's fee arrangement with me does not provide for Coalition to make full payment to me for my time at standard rates as work is performed, but rather provides for my firm's full compensation ultimately to be

17

made by Coalition out of any fee that this Court may award to Coalition for my time.  Under these circumstances, a risk premium on top of my standard rates is warranted.  Moreover I would not have been able to take this case unless I was able to anticipate that my firm would ultimately be paid at an hourly rate that included an appropriate risk premium.  The $615 per hour rate requested here provides an appropriate premium.

50.    In my professional estimation, and in view of the prevailing Atlanta legal fee rates discussed by fee expert Rob Remar, a rate of $615 per hour is a reasonable market rate in the Atlanta market for an attorney with my background and experience.

51.    The reasonableness of my requested hourly rate is substantiated by the fact that a rate of $615 per hour implies a risk premium of only $120 above my lowest standard rate of $495 per hour.  This amounts to a risk premium of less than 25%, which is a very conservative risk premium (and thus likely appears more reasonable from the perspective of the Defendants).  A 25% risk premium  is especially conservative considering that this case involves uncertain, high-stakes litigation against several well-funded and well-represented defendants in a complex matter without direct precedential authority that addresses the subject matter.

18

52.     Based on all of these considerations, as well as on my personal knowledge of legal markets and my professional experience of litigating voting and election-law matters, the requested rate of $615 per hour is safely below the highest reasonable rate that could properly be awarded for my work under the circumstances of this case.

## EXPENSES

53.     The entries shown on **Exhibit B** are true and correct copies of the information recorded in my timekeeping software for the expenses I incurred in this case.

54.     Based on my personal knowledge of the expenses shown on Exhibit B, and based on my professional experience of litigating voting and election-law matters as well as other civil cases, the expenses on Exhibit B were all reasonably and necessarily incurred and contributed to Coalition's success in obtaining the 2019 preliminary injunction order.

## CONCLUSION

For my part in producing the successful order granting a preliminary injunction in this case, the Coalition for Good Governance should be awarded a total of **$345,647.17**, calculated as follows:

19

- First, using the lodestar method, the time I reasonably and necessarily spent (554.21 hours, as shown in Exhibit A), valued at a reasonable hourly rate of $615 per hour, produces a total for attorney fees of $340,839.15.

- Second, the expenses that I reasonably and necessarily incurred on behalf of Coalition, as shown in Exhibit B, total $4,808.02.  The sum of these amounts is $345,647.15.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 15th day of October, 2019.

Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*Counsel for Coalition for Good Governance*

20

# EXHIBIT A

# Robert McGuire Law Firm - Time Entry

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 1 | 07/10/2017 | Call with MRM to get up to speed on status of contest action and role required. | 0.50 |
| 2 | 07/15/2017 | Review materials provided by MRM and proposed amended complaint. | 2.00 |
| 3 | 07/17/2017 | Call w MRM re contest complaint revisions and structuring. | 1.08 |
| 4 | 07/20/2017 | Review EAC email regarding FBI security document. | 0.10 |
| 5 | 07/23/2017 | Call with MRM regarding evaluation of drafting of amended contest and 1983 complaint by local counsel Ward Holcomb. | 0.28 |
| 6 | 07/24/2017 | Review draft of amended contest and 1983 complaint focusing only on sufficiency of counts. | 3.00 |
| 7 | 07/25/2017 | Review cases and attend call with MRM regarding same and regarding drafting process for amended contest complaint. | 0.50 |
| 8 | 07/26/2017 | Call with MRM regarding case strategy, amendment or dismissal of contest, and next steps. | 0.43 |
| 9 | 07/27/2017 | Calls to MRM regarding case status developments. | 0.41 |
| 10 | 08/09/2017 | Call with MRM regarding removal and strategy for federal court. | 0.66 |
| 11 | 08/13/2017 | Call with MRM regarding strategy for removed federal case, esp. preliminary injunction issues. | 0.61 |
| 12 | 08/19/2017 | Call with MR regarding preliminary injunction strategy and amendment of complaint. | 0.50 |
| 13 | 08/23/2017 | Call with Marilyn regarding role going forward and status update. | 0.41 |
| 14 | 09/05/2017 | Call with MRM regarding equal protection issues and forensic discovery efforts. | 0.75 |
| 15 | 09/15/2017 | Call with MRM regarding Steptoe draft of amended complaint. | 0.58 |
| 16 | 09/17/2017 | Review Steptoe amended complaint.  Calls with MRM with comments. | 3.00 |
| 17 | 09/18/2017 | Call with MRM regarding options following CGG withdrawal from Georgia contest claim. | 0.58 |
| 18 | 09/26/2017 | Call with MRM regarding evidentiary preservation issues during transition of counsel. | 0.30 |
| 19 | 09/29/2017 | Call with MRM regarding evidentiary spoliation. | 1.00 |
| 20 | 10/01/2017 | Call with MRM regarding strategy with respect to transition of counsel away from Steptoe. | 1.08 |
| 21 | 10/03/2017 | Review State's motion to dismiss SAC. | 1.75 |
| 22 | 10/03/2017 | Call MRM to discuss strength of State's motion to dismiss SAC. | 1.33 |
| 23 | 10/12/2017 | Review MRM emailed summary of status and draft open records request to Milsteen, per MRM request. | 0.20 |
| 24 | 10/12/2017 | Call with MRM regarding litigation hold issues, counsel substitution. | 1.33 |
| 25 | 10/13/2017 | Call with MRM re draft response to MTDs. | 0.08 |
| 26 | 11/01/2017 | Call with MRM regarding spoliation, third-party preservation letter, and import of Georgia AG's withdrawal as counsel for defendants. | 0.16 |
| 27 | 10/29/2017 | Call from MRM regarding spoliation letter and to receive case update. | 0.33 |
| 28 | 11/14/2017 | Review and comment on CGG draft status report.  Call w MRM re same. | 0.75 |
| 29 | 12/09/2017 | Discussion w MRM  regarding status, strategy, potential appearance. | 0.58 |
| 30 | 12/12/2017 | Review emails from MRM, William Ney about limited appearance and records preservation. | 0.33 |
| 31 | 12/12/2017 | Call with MRM regarding evidentiary preservation and limited appearance. | 0.71 |
| 32 | 12/12/2017 | Email to Steptoe regarding participation on conferral call about data and equipment transfer. | 0.25 |
| 33 | 12/12/2017 | Call with MRM and email to Highsmith regarding conferral call about KSU equipment and data transfer | 0.33 |
| 34 | 12/12/2017 | Participate in court-mandated conferral call regarding transfer of data and equipment from KSU to Georgia SOS. | 0.41 |
| 35 | 12/12/2017 | Prepare pro hac vice application, email William Ney re same. | 0.50 |
| 36 | 12/12/2017 | Prepare email to Schnell and Highsmith regarding information on transfer. | 0.25 |
| 37 | 12/13/2017 | Call with MRM and revisions to proposed preservation order.  Revise proposed order and send to opposing counsel Schnell and Highsmith. | 0.75 |
| 38 | 12/13/2017 | Call with Ney regarding joint report and limited scope appearance. | 0.16 |
| 39 | 12/13/2017 | Drafting joint report regarding preservation order.  Call with MRM regarding revisions to same. Circulate to opposing counsel. | 2.25 |
| 40 | 12/14/2017 | Revise joint statement and circulate to opposing counsel, William Ney. | 1.00 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 41 | 12/13/2017 | Call with Marilyn regarding strategy for team litigation of case. | 1.28 |
| 42 | 12/15/2017 | Call with MRM to discuss strategy and team plan. | 0.70 |
| 43 | 12/15/2017 | Second call with MRM to discuss strategy and team plan. | 1.36 |
| 44 | 12/18/2017 | Call with MRM, Candice Hoke re strategy. | 2.00 |
| 45 | 12/18/2017 | Review claims in SAC and proposed TAC, per tables prepared by MRM. | 0.50 |
| 46 | 12/18/2017 | Review Hoke article. | 0.23 |
| 47 | 12/18/2017 | Research, consider, and revise table of new claims for Third Amended Complaint. | 3.38 |
| 48 | 12/19/2017 | Respond to MRM comments on draft table of claims. | 0.25 |
| 49 | 12/19/2017 | Emails w MRM re proposed claims in Third Amended Complaint. | 0.10 |
| 50 | 12/19/2017 | Call with MRM regarding strategy update for co-counsel. | 0.66 |
| 51 | 12/19/2017 | Call with prospective co-counsel, MRM regarding strategy for Third Amended Complaint. | 1.50 |
| 52 | 12/19/2017 | Attention to file; organizing documents received from client in preparation for drafting of third amended complaint. | 1.00 |
| 53 | 12/19/2017 | Review Hoke article. | 1.25 |
| 54 | 12/20/2017 | Review and comment on evidentiary preservation letter for Fulton County. | 0.41 |
| 55 | 12/29/2017 | Call with MRM regarding drafting of third amended complaint. | 0.46 |
| 56 | 12/31/2017 | Review MRM draft of third amended complaint.  Begin revisions. | 2.00 |
| 57 | 01/02/2018 | Call with MRM regarding next steps and strategy for moving case forward with narrowed parties and streamlined claims. | 1.91 |
| 58 | 01/02/2018 | Review ex parte docket entry #117 in connection with amendment of complaint. | 0.40 |
| 59 | 01/04/2018 | Review and revise [per comments by MRM] draft of third amended complaint. | 7.75 |
| 60 | 01/05/2018 | Call with MRM regarding court's order. | 0.33 |
| 61 | 01/05/2018 | Drafting Third Amended Complaint. | 5.30 |
| 62 | 01/05/2018 | Review draft entry of appearance and email local counsel William Ney re same. | 0.16 |
| 63 | 01/06/2018 | Drafting third amended complaints and claims. | 10.00 |
| 64 | 01/07/2018 | Email to MRM regarding claims to bring and claims not to bring, and which plaintiffs to include in third amended complaint. | 0.75 |
| 65 | 01/08/2018 | Correspond with MRM and William Ney re service issues and revised scope of Ney appearance. | 0.50 |
| 66 | 01/09/2018 | Speak with Court clerk's office regarding entry of appearance and CM/ECF login. | 0.25 |
| 67 | 01/12/2018 | Called MRM for strategy discussion re Steptoe withdrawal, motion to amend complaint, substance of complaint, plaintiffs, associational standing, Article III injury, background facts of case. | 2.16 |
| 68 | 01/16/2018 | Review plaintiffs' responses to Steptoe WDL motion.  Email with co-counsel Ney and call w MRM re same. | 0.33 |
| 69 | 01/16/2018 | Review Totenberg court rules; draft and file required certificate of compliance and letter requesting leave of absence for February, April. | 0.75 |
| 70 | 01/16/2018 | Call with MRM regarding strategy w/r/t Steptoe withdrawal; injury theories; use of UC Irvine clinic; Candice Hoke consulting expert role and associate[d] privilege issues. | 1.58 |
| 71 | 01/16/2018 | Research standing in 11th Circuit | 2.33 |
| 72 | 01/17/2018 | Drafting injury and standing section of Third Amended Complaint. | 5.83 |
| 73 | 01/18/2018 | Drafting and revising Third Amended Complaint allegations re standing, injury, and claims. | 2.60 |
| 74 | 01/18/2018 | Call with MRM regarding order granting Steptoe withdrawal and resulting case timeline. | 0.56 |
| 75 | 01/19/2018 | Review Ney email to MRM re substitution of counsel. | 0.10 |
| 76 | 01/19/2018 | Call with MRM regarding timing of TAC. | 0.33 |
| 77 | 01/22/2018 | Drafting standing allegations and claims. | 9.33 |
| 78 | 01/24/2018 | Drafting third amended complaint. | 7.00 |
| 79 | 01/24/2018 | Call with MRM regarding [claims and relief sought]. | 2.33 |
| 80 | 01/29/2018 | Drafting v3 of Third Amended Complaint. | 4.00 |
| 81 | 01/29/2018 | Call with MRM regarding Open Records Request to Henry County and opposing counsel correspondence re same. | 0.21 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 82 | 01/29/2018 | Review and comment on MRM draft letter to Salter re Henry County open records request. | 0.28 |
| 83 | 01/30/2018 | Review Jaugsetter letter to MRM re Henry County ORA inspection; review and comment on MRM draft response. | 0.08 |
| 84 | 01/30/2018 | Call with MRM to discuss v3 draft of proposed Third Amended Complaint. | 0.50 |
| 85 | 01/31/2018 | Call with MRM re ORA requests and plan for call with UC Irvine Law School Intellectual Property, Arts and Technology Clinic. | 0.33 |
| 86 | 02/02/2018 | Review portion of Kemp interview by Erick Erickson regarding KSU errors. | 0.10 |
| 87 | 02/02/2018 | Review and respond to Cary Ichter email regarding rationale for naming KSU as party. | 0.33 |
| 88 | 02/05/2018 | Revising third amended complaint per MRM comments. | 4.83 |
| 89 | 02/07/2018 | Revisions and drafting to draft Third Amended Complaint. | 5.75 |
| 90 | 02/10/2018 | Finalizing revisions and drafting on circulation draft of third amended complaint. | 4.00 |
| 91 | 02/11/2018 | Finalizing revisions and drafting on circulation draft of third amended complaint. | 2.33 |
| 92 | 02/12/2018 | Finalizing revisions and drafting on circulation draft of third amended complaint. | 6.99 |
| 93 | 02/13/2018 | Call with MRM re TAC draft, plan, timing, and next steps. | 0.23 |
| 94 | 02/14/2018 | Review MRM comments and call with MRM re draft Third Amended Complaint. | 4.00 |
| 95 | 02/17/2018 | Drafting and finalizing circulation v.1 of Third Amended Complaint draft. | 3.83 |
| 96 | 02/19/2018 | Call with MRM to discus final pre-circulation revisions to TAC and how individual plaintiffs should be represented | 1.50 |
| 97 | 02/19/2018 | Review docket to ensure compliance with local rule 3.3.  Draft initial Rule 3.3 certificate of compliance. | 0.41 |
| 98 | 02/25/2018 | Attention to filings by pro se plaintiffs. | 0.20 |
| 99 | 02/26/2018 | Call with MRM regarding status. | 1.16 |
| 100 | 02/28/2018 | Call with MRM re Cary, Bruce, and William as local counsel additions to team. | 0.75 |
| 101 | 03/01/2018 | Call with Bruce Brown re draft TAC substance and comments. | 0.70 |
| 102 | 03/06/2018 | Call with MRM, Cary, William re draft third amended complaint and co - counseling possibilities. | 0.75 |
| 103 | 03/16/2018 | Attention to docketing ECF Nos. 145.  Correspondence with MRM re call. | 0.10 |
| 104 | 03/20/2018 | Call with MRM regarding strategy for going forward. | 1.00 |
| 105 | 03/23/2018 | Attention to docketed filings. | 0.10 |
| 106 | 03/24/2018 | Consider roles and responsibilities and prepare chart.  Email to MRM re same. | 1.25 |
| 107 | 03/27/2018 | Revise doc with attorney roles and responsibilities and email co-counsel Brown, Ichter, Ney plus MRM re allocation of roles and scheduling discussion. | 0.25 |
| 108 | 03/27/2018 | Strategy call with MRM. | 0.58 |
| 109 | 03/27/2018 | Preparatory call with MRM and call with new local counsel for Curling, Price, Schoenberg - Halsey Knapp, Adam Sparks. | 0.63 |
| 110 | 03/27/2018 | Sent email to legal team regarding roles and responsibilities; sent email to Ney regarding him appearing for individual plaintiffs. | 0.25 |
| 111 | 03/29/2018 | Emails w MRM and Ney re representation [arrangements for individual Coalition Plaintiffs]. | 0.20 |
| 112 | 03/30/2018 | Call with co-counsel Ichter, Ney, Brown and MRM re moving forward when case reactivates next week.  Debriefing call with MRM. | 1.50 |
| 113 | 03/30/2018 | Call with MRM regarding relief to be included in Third Amended Complaint. | 0.30 |
| 114 | 03/30/2018 | Review Ney draft entry of appearance and related emails w MRM.  Email re same. | 0.10 |
| 115 | 03/31/2018 | Revise draft Third Amended Complaint for circulation to client and legal team, per comments from [co-counsel]. | 1.33 |
| 116 | 04/01/2018 | Review and respond to emails between MRM, local counsel re appearances and absences. | 0.25 |
| 117 | 04/01/2018 | Revise draft third amended complaint with new introductory para from MRM, Ichter. | 1.75 |
| 118 | 04/02/2018 | Attention to docketing of ECF Nos. 155, 156, 157. | 0.10 |
| 119 | 04/02/2018 | Review Ichter, MRM revisions to intro paragraphs. | 0.16 |
| 120 | 04/02/2018 | Call w MRM re TAC and required conferrals. | 0.41 |
| 121 | 04/02/2018 | Call w MRM re additional TAC questions and revisions. | 0.25 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 122 | 04/02/2018 | Revise Third amended Complaint draft per comments from Brown and MRM. Call with MRM re same.  Prepare and send conferral email to counsel for Price, Curling, Schoenberg. | 3.33 |
| 123 | 04/03/2018 | Call w MRM regarding UC Irvine, conferral w adverse plaintiffs re TAC, conferral with defendants re TAC[.] | 0.50 |
| 124 | 04/03/2018 | Draft and send email to counsel David Cross re conferral w adverse plaintiffs re TAC. | 0.50 |
| 125 | 04/03/2018 | Organize and draft conferral emails to Defendants re leave to file TAC. | 1.95 |
| 126 | 04/03/2018 | Call MRM re conferrals with Defendants re TAC. | 0.61 |
| 127 | 04/03/2018 | Prepare motion for leave to file Third Amended Complaint, proposed order, and finalize TAC for filing. | 2.66 |
| 128 | 04/04/2018 | Review Brown comments on motion for leave and proposed order. Finalize TAC draft per comments from UC Irvine clinic and MRM. | 2.46 |
| 129 | 04/04/2018 | Final review and revisions to proposed TAC. | 0.83 |
| 130 | 04/05/2018 | Draft and circulate request for status conference. | 0.78 |
| 131 | 04/05/2018 | Calls with MRM re strategy to move forward. | 0.20 |
| 132 | 04/05/2018 | Prepare change of address, notice of absence, update service certificates, and revise request for status conference.  Confer with MRM and Bruce Brown re same. | 1.58 |
| 133 | 04/06/2018 | Call with MRM re strategy on spoliation preliminary injunction, discovery. | 0.58 |
| 134 | 04/06/2018 | Review Halderman video on hacking DREs. | 0.10 |
| 135 | 04/06/2018 | Review MRM spoliation memo. | 0.75 |
| 136 | 04/09/2018 | Call w MRM, BB, CI re preliminary injunction and expedited discovery; plus need for demand letter; plus conferrals with co-plaintiffs Curling, Schoenberg, Price. Summary email to team with next steps. | 1.41 |
| 137 | 04/09/2018 | Call w opp. counsel for Cobb defendants re third amended complaint and evidentiary preservation. | 0.16 |
| 138 | 04/09/2018 | Review Def Kemp's opposition to motion for leave to amend; review Aguilar case from 5th Cir. | 0.25 |
| 139 | 04/10/2018 | Review and respond to emails with MRM and co-counsel BB and CI. | 0.75 |
| 140 | 04/11/2018 | Review ECF 169, Fulton Defs' response to request for status conference. Email to MRM & team re accuracy of factual assertions. | 0.10 |
| 141 | 04/11/2018 | Review MRM rough outline of expedited discovery needed for preliminary injunction. | 0.33 |
| 142 | 04/12/2018 | Review MRM draft demand letter. | 0.25 |
| 143 | 04/13/2018 | Call with Bruce Brown, MRM re co-plaintiffs' request for extension of time to respond to our motion for leave to amend, issue of severance, requirements for spoliation motion.  Email to co-plaintiffs' counsel David Cross to respond to his conferral on MEXT response. | 1.00 |
| 144 | 04/23/2018 | Call with Bruce Brown prior to conferral with Cross. | 0.25 |
| 145 | 04/23/2018 | Conferral call with David Cross, Jane Bentrott, Bruce Brown re third amended complaint. | 0.68 |
| 146 | 04/23/2018 | Call with Bruce to assess conferral. | 0.35 |
| 147 | 04/23/2018 | Call with MRM to discuss conferral call, severance, preservation issues. | 1.13 |
| 148 | 04/23/2018 | Review MRM emails re mandamus counts, draft and send email to David Cross re our position on keeping [those] claims. | 0.75 |
| 149 | 04/24/2018 | Draft response to Curling/Price/Schoenberg counsel re preservation and sampling. | 0.50 |
| 150 | 04/24/2018 | Call with MRM regarding severance, amendment, preservation, status conference on 4/30 and 5/1.   Emails with court clerk re scheduling status conference. | 0.91 |
| 151 | 04/25/2018 | Research and respond to Jan Bentrott conferral re stipulation of dismissal. | 0.75 |
| 152 | 04/25/2018 | Call with MRM re scheduling following court setting of status conference for 5/1. | 0.28 |
| 153 | 04/25/2018 | Draft response to Jane Bentrott conferral email regarding [stipulated] dismissal of matters in Second Amended complaint. | 1.00 |
| 154 | 04/25/2018 | Email to MRM re development of discovery plan for team meeting scheduled for 4/30. | 0.75 |
| 155 | 04/26/2018 | Emails with MRM and William Ney about letter to [Fulton] County re evidentiary preservation. | 0.25 |
| 156 | 04/26/2018 | Review and consider Curling plaintiffs' response to motion to amend. | 0.50 |
| 157 | 04/28/2018 | Organize files and documents in preparation for 4/30 planning meeting and 5/1 status conference. | 2.00 |
| 158 | 04/28/2018 | Draft reply supporting motion for leave to file third amended complaint. | 7.50 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 159 | 04/29/2018 | Draft reply supporting motion for leave to file third amended complaint. Revise and circulate per comments. | 4.07 |
| 160 | 04/29/2018 | 9.5 hours of travel time from Gig Harbor, Washington, to hotel in Atlanta, Georgia. [] | 4.75 |
| 161 | 04/30/2018 | Team meeting.  (8:30a E-6:30p) | 10.00 |
| 162 | 04/30/2018 | Correspond with Cross and Grant Schnell re stipulation. | 0.33 |
| 163 | 05/01/2018 | Travel to and attend status conference. | 2.25 |
| 164 | 05/01/2018 | Prepare arguments for status conference. | 2.25 |
| 165 | 05/01/2018 | Meeting with co-counsel Bruce Brown and co-pls' counsel David Cross regarding strategy and next steps following status conference. | 2.25 |
| 166 | 05/01/2018 | Meet with MRM to discuss DRE sampling. | 1.40 |
| 167 | 05/01/2018 | Case strategy planning over lunch with MRM. | 1.08 |
| 168 | 05/02/2018 | 9.5 hours of attorney travel time from hotel in Atlanta, Georgia, to Gig Harbor, Washington. | 4.75 |
| 169 | 05/02/2018 | Call with MRM and Cary Ichter (CI) regarding plan for statistical sampling of DREs. | 0.40 |
| 170 | 05/02/2018 | Call with MRM regarding DRE sampling plan to be conducted by co-plaintiffs and resulting impact on our discovery and case strategy. | 1.00 |
| 171 | 05/03/2018 | Call with MRM and Cary Ichter in advance of conferral with counties and state. | 0.50 |
| 172 | 05/03/2018 | Conferral call with county defendants and state defendants. | 1.13 |
| 173 | 05/03/2018 | Follow-up call with Cary Ichter, MRM after conferral regarding spoliation and/or contempt motion and additional steps to take to preserve.  Subsequent follow-up call with MRM re same. | 0.52 |
| 174 | 05/04/2018 | Call w MRM and Cary Ichter regarding preservation and spoliation issues re Fulton, SOS, and other counties. | 0.83 |
| 175 | 05/06/2018 | Draft notice of material differences in allegations between second and proposed third amended complaints. Revise same per comments from MRM and co-counsel BPB. | 6.83 |
| 176 | 05/08/2018 | Email to team regarding court requirement to propose sampling plan by today. | 0.50 |
| 177 | 05/09/2018 | Correspond via email with opposing counsel in advance of court call. | 1.83 |
| 178 | 05/09/2018 | Call with MRM, CI, BPB regarding Rule 34 observation, DRE preservation, and amendment. | 1.33 |
| 179 | 05/09/2018 | Conference call with Court. | 1.00 |
| 180 | 05/09/2018 | Post-hearing team call. | 0.38 |
| 181 | 05/10/2018 | Team conference call in advance of court-mandated meeting with opposing counsel. | 1.30 |
| 182 | 05/10/2018 | Call with MRM to debrief following 5/10 hearing conducted by Ichter and Brown. | 0.86 |
| 183 | 05/14/2018 | Exchange text messages with MRM and emails with co-counsel BPB regarding next steps. | 0.60 |
| 184 | 05/14/2018 | Revise and send Coalition Plaintiffs' response to defendants' inquiry about preservation of optical scanners. | 1.10 |
| 185 | 05/16/2018 | Correspondence with Salter and all counsel regarding "joint proposed schedule" to be filed 5/17 and re questions about DRE evidence.  Confer with client executive director MRM re same. | 1.00 |
| 186 | 05/17/2018 | Prepare and file Notice of Compliance with Order (Doc 205.) | 0.50 |
| 187 | 05/17/2018 | Revise Curling Plaintiffs' draft of joint proposed schedule; correspond with Catherine Chapple re same; correspondence and call with MRM re same. | 1.75 |
| 188 | 05/21/2018 | Strategy call with MRM, BPB, WN. | 1.66 |
| 189 | 05/21/2018 | Communicate with David Cross about potential way to spur action on MTDs and motion for leave to amend. | 0.90 |
| 190 | 05/23/2018 | Review and respond to emails w team re Rule 27 discovery. | 0.50 |
| 191 | 05/24/2018 | Email to team re trial strategy. | 0.25 |
| 192 | 05/25/2018 | Review order at Doc 215; call with MRM to discuss appropriate strategy. | 0.83 |
| 193 | 05/29/2018 | Review and respond to MRM emails w Cary Ichter and legal team re potential Rule 27 preservation motion. | 0.75 |
| 194 | 05/29/2018 | Draft proposed schedule, circulate in email to team. | 0.75 |
| 195 | 05/29/2018 | Email correspondence with MRM regarding preservation issues, discovery, and trial strategy. | 1.50 |

| Entry | Date | Description | Total Time |
|-------|------|-------------|------------|
| 196 | 05/31/2018 | Review drafts of stipulation by Curling Pls.  Provide footnote to preserve objection. | 0.33 |
| 197 | 05/31/2018 | Review Curling Pls.' proposed joint notice. Email to Curling counsel with feedback. | 0.50 |
| 198 | 06/01/2018 | Prepare for and participate in team call re severance, sovereign immunity, PI hearing timing, special master request, other strategy questions. | 2.11 |
| 199 | 06/05/2018 | Call with MRM re PI/MTD amicus brief offer by Matthew Murray and timing going forward. | 0.41 |
| 200 | 06/05/2018 | Review order (Doc 220) and MRM email re same and re proposing a schedule. Review case cited by Order, review MRM texts re expediting motion for early discovery and respond to same. | 0.50 |
| 201 | 06/06/2018 | Prepare for and attend call with MRM and voting machine experts - Matt Bernard, Duncan Buell, Logan Lamb re potential for voting machine demonstration. | 1.00 |
| 202 | 06/06/2018 | Prepare and circulate internally schedule of MTD briefings, discovery, and MPI. Revise and circulate to Curling pls.' counsel.  Correspond w David Cross re same. | 1.10 |
| 203 | 06/06/2018 | Email to MRM and BPB regarding planning for proof of facts. | 0.33 |
| 204 | 06/07/2018 | Review and comment on Curling Pls.' draft TAC. | 0.50 |
| 205 | 06/08/2018 | Review cross-emails between David Cross and John Salter re MTDs and immunity briefings.  Emails w MRM and team re same. | 0.50 |
| 206 | 06/08/2018 | Review MRM letter to voting commission.  Email to MRM re same. | 0.16 |
| 207 | 06/08/2018 | Email to team re Monday call for scheduling and proof discussions. | 0.10 |
| 208 | 06/11/2018 | Review MRM's 6/6/18 emailed materials and prepare for call with MRM and BPB regarding scheduling, proof strategy. | 1.00 |
| 209 | 06/11/2018 | Call with MRM and BPB regarding proof strategy and scheduling. | 2.08 |
| 210 | 06/11/2018 | Revise proposed case schedule (v4) and prepare and send email to David Cross explaining revisions (v4) and conferring. | 0.45 |
| 211 | 06/11/2018 | Call with MRM and Matthew Murray regarding potential subjects of amicus briefing. | 0.80 |
| 212 | 06/11/2018 | Call w MRM regarding HAVA and MPI strategy. | 0.41 |
| 213 | 06/12/2018 | Email correspondence with MRM regarding Curling Pls.' filing of renewed notice of dismissal and related strategy questions. | 0.10 |
| 214 | 06/12/2018 | Review notice and dismissal filed by Curling Pls.' on 6/11/18. | 0.25 |
| 215 | 06/12/2018 | Respond to DeKalb counsel re recap sheets and additional info required to release DREs. | 0.41 |
| 216 | 06/12/2018 | Review and rspond to Daniel White email re recap sheets. | 0.50 |
| 217 | 06/13/2018 | Emails with MRM re schedule to propose. | 0.40 |
| 218 | 06/13/2018 | Correspond with David Cross re schedule; revise schedule per comments; draft and send email to Defs' counsel with proposed schedule. | 0.75 |
| 219 | 06/13/2018 | Call with David Cross regarding legislative immunity argument from State Board members. | 0.16 |
| 220 | 06/14/2018 | Review 14 emails from MRM, Cary Ichter, Matt Murray - variously on amicus brief and potential to subpoena DREs from nonparty.  Respond on DRE issue. | 0.28 |
| 221 | 06/15/2018 | Call with MRM regarding subpoenas, evidence for merits hearing, schedule. | 1.40 |
| 222 | 06/15/2018 | Emails to David Cross and Daniel White re relief requested in lawsuit. | 0.33 |
| 223 | 06/18/2018 | Email to MRM and team about scheduling. | 0.10 |
| 224 | 06/18/2018 | Email Salter re DRE info requirements for releasing DREs from litigation hold. | 0.25 |
| 225 | 06/18/2018 | Email follow up with Fulton County regarding proposed joint schedule. | 0.25 |
| 226 | 06/18/2018 | Draft notice of proposed joint schedule.  Circulate to co-plaintiffs counsel.  Revise same per comments. | 1.42 |
| 227 | 06/19/2018 | Team and client emails re work division on motion for subpoena, strategy in the face of immunity defenses. | 1.25 |
| 228 | 06/19/2018 | Revise and circulate to David Cross alternate proposed joint schedule. | 0.25 |
| 229 | 06/19/2018 | Revise proposed schedule and exhibits 1 and 2.  Circulate to David Cross. | 2.20 |
| 230 | 06/19/2018 | Review and revise CI draft of motion for leave to serve subpoena. Draft proposed order.  Email to CI re same. | 0.66 |
| 231 | 06/20/2018 | Review team emails regarding subpoena motion. Revise and finalize notice of proposed schedule.  Communicate with client and David Cross re same. | 2.08 |
| 232 | 06/20/2018 | Organize information from DREs provided by Defs pursuant to Doc 210. | 1.25 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 233 | 06/21/2018 | Planning email to team re Rule 34 inspection for July election. | 0.41 |
| 234 | 06/21/2018 | Revise MRM draft email re DRE preservation for counties' counsel. Emails with MRM re same. | 1.66 |
| 235 | 06/21/2018 | Strategy call with MRM re larger case strategy, planning for MPI schedule, and potential for early discovery. | 1.16 |
| 236 | 06/22/2018 | Emails with Daniel White (DeKalb counsel) re his 6/22/18 communications to Court. | 0.75 |
| 237 | 06/27/2018 | Respond to MRM emails.  Revise exhibit of preservation criteria and send to counties per MRM. | 1.00 |
| 238 | 06/29/2018 | Email to BPB and CI re Hall County preservation letter to Salter. | 0.33 |
| 239 | 06/29/2018 | Email to John Salter re 6/18 email requesting GEMS server report. | 0.10 |
| 240 | 06/29/2018 | Respond to Daniel White 6/28 email. | 1.00 |
| 241 | 06/29/2018 | Call with MRM re Fulton LAT testing; rule 27 options; contempt motion; scheduling of MPI hearing. | 0.68 |
| 242 | 07/02/2018 | Email exchanges with David Cross, MRM regarding spoliation and contempt alternatives. | 0.20 |
| 243 | 07/02/2018 | Exchange emails with MRM re case strategy. | 0.75 |
| 244 | 07/03/2018 | Revise draft and send email to Fulton County re LAT testing. | 0.50 |
| 245 | 07/03/2018 | Email to Daniel White re nonresponsiveness. | 0.10 |
| 246 | 07/03/2018 | Email exchanges with MRM re potential Hall county subpoena motion. | 0.75 |
| 247 | 07/03/2018 | Review DeKalb's response (Doc 232) and attachments. | 0.11 |
| 248 | 07/05/2018 | Research tolling effect of motion to dismiss directed at amended complaint under Rules 12 and 15; research issues related to converting Rule 12 motion to Rule 56 motion; consider research and draft email to MRM with advice. | 1.50 |
| 249 | 07/09/2018 | Review and respond re MRM emails to counsel team received from 7/7 and 7/9 about fact gathering and MTD response plans.  Emails with Cary Ichter regarding Fulton County preservation issues. | 0.80 |
| 250 | 07/09/2018 | Review and consider State's MTD TAC. | 0.75 |
| 251 | 07/10/2018 | Call with MRM re Hall County evidence. | 0.43 |
| 252 | 07/10/2018 | Read MRM comments on State's MTD TAC. | 1.00 |
| 253 | 07/11/2018 | Drafting response to MTD TAC. | 2.00 |
| 254 | 07/09/2018 | Draft response to MTD TAC. | 1.50 |
| 255 | 07/11/2018 | Email to Cheryl Ringer.  Emails to co-counsel re same. Email to CI and MRM re next steps. | 0.25 |
| 256 | 07/12/2018 | Drafting response to MTD TAC. | 2.16 |
| 257 | 07/12/2018 | Call with Matt Murray and David Cross re amicus brief. | 0.25 |
| 258 | 07/13/2018 | Drafting response to MTD TAC. | 10.83 |
| 259 | 07/14/2018 | Drafting response to MTD TAC. | 10.00 |
| 260 | 07/15/2018 | Drafting response to MTD TAC. | 9.88 |
| 261 | 07/16/2018 | Drafting response to MTD TAC. | 9.75 |
| 262 | 07/17/2018 | Revise and finalize response to MTD TAC. | 5.16 |
| 263 | 07/18/2018 | Emails w David Cross re Fulton DRE production. | 0.75 |
| 264 | 07/18/2018 | Call with co-counsel re strategy for MPI. | 1.05 |
| 265 | 07/18/2018 | Attention to file - managing court filings and emails. | 1.00 |
| 266 | 07/18/2018 | Call with MRM to continue discussion of strategy toward MPI. | 0.70 |
| 267 | 07/19/2018 | Call with lawyers BPB, CI and client MRM re strategy (Continued from yesterday). | 0.80 |
| 268 | 07/23/2018 | Call with MRM and BPB regarding MPI strategy matters. | 1.16 |
| 269 | 07/24/2018 | Emails with Bruce Brown, MRM re MPI plan. | 0.20 |
| 270 | 07/26/2018 | Call with MRM re discussions between BPB and Salter. | 0.20 |
| 271 | 07/27/2018 | Call with MRM to get updated on status and plan for MPI merits hearing. | 1.51 |
| 272 | 07/30/2018 | Call with MRM re background on Secretary Kemp. | 0.75 |
| 273 | 07/30/2018 | Call with MRM and BPB re MPI. | 1.75 |
| 274 | 07/30/2018 | Prepare and file ECF No. 254 request for leave of absence. | 0.33 |
| 275 | 07/31/2018 | Revise and comment on BPB drafts of MPI and proposed order. | 0.50 |
| 276 | 07/31/2018 | Research and draft three points for MPI brief.  Email BPB re same. | 2.16 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 277 | 08/01/2018 | Draft paragraph for MPI related to malfunctions and discrepancies. | 0.93 |
| 278 | 08/01/2018 | Zoom call with BPB and MRM re MPI logistics and content. | 0.50 |
| 279 | 08/01/2018 | Call with MRM regarding strategy for MPI. | 0.53 |
| 280 | 08/02/2018 | Zoom call with MRM, BPB re MPI filing and conferral with Curling Pls. | 0.50 |
| 281 | 08/02/2018 | Call with MRM re proposed order for MPI. | 0.33 |
| 282 | 08/02/2018 | Review SOS letter to GA counties; email to MRM and co-counsel re same. | 0.33 |
| 283 | 08/02/2018 | Review and comment on Lamb declaration. | 0.50 |
| 284 | 08/03/2018 | Review and comment on BPB draft of motion for preliminary injunction. | 2.33 |
| 285 | 08/03/2018 | Revise MPI and proposed PI order.  Correspond w BPB, MRM re substance. | 0.80 |
| 286 | 08/03/2018 | Conferral communications re MPI with Curling Pls.' and amicus counsel. | 0.10 |
| 287 | 08/03/2018 | Call w MRM regarding strategy for MPI hearing and supplementation of declarations. | 0.41 |
| 288 | 08/06/2018 | Watch livestream of experts, MRM regarding DRE security system and case facts. | 1.33 |
| 289 | 08/07/2018 | Two calls with MRM and BPB regarding court order [Doc 259] and strategy for addressing MPI issues raised. | 0.50 |
| 290 | 08/07/2018 | Call w MRM re DHS role. | 0.13 |
| 291 | 08/07/2018 | Call with David Cross and BPB regarding Curling Pls.' MPI. | 0.68 |
| 292 | 08/07/2018 | Call with MRM and BPB regarding approach to MPI hearing after call with Curling Pls.' counsel. | 0.90 |
| 293 | 08/07/2018 | Call with MRM regarding DHS critical infrastructure designation background. | 0.41 |
| 294 | 08/07/2018 | Review Curling Pls. MPI. | 1.00 |
| 295 | 08/08/2018 | Call w BPB re standing declarations and Curling Pls.' conferral re schedule. | 0.20 |
| 296 | 08/08/2018 | Prepare verifications of TAC's standing allegations to support MPI. | 1.01 |
| 297 | 08/08/2018 | [Interview] Susan Greenhalgh regarding DHS designation of election systems as critical infrastructure. | 0.20 |
| 298 | 08/08/2018 | Call with MRM regarding strategy and open records requests for MPI. | 1.08 |
| 299 | 08/09/2018 | Call with MRM re declarations for standing for MPI. | 0.30 |
| 300 | 08/10/2018 | Call w MRM re feasibility and MPI solutions. | 0.13 |
| 301 | 08/13/2018 | Call on Zoom with MRM and BPB re MPI feasibility evidence. | 0.80 |
| 302 | 08/16/2018 | Call with MRM re MPI reply approach, logistics of factual support, strategy. | 0.63 |
| 303 | 08/16/2018 | Call with BPB re MPI reply and request for hearing - strategy and substance. | 0.41 |
| 304 | 08/17/2018 | Review and comment on BPB draft request for hearing. | 0.25 |
| 305 | 08/17/2018 | Review State's Response to MPI. | 1.00 |
| 306 | 08/17/2018 | Call with MRM and BPB to plan reply supporting MPI. | 1.66 |
| 307 | 08/19/2018 | Draft MPI Reply Brief inserts for BPB.  Review MRM emails and materials for inclusion in reply.  Correspond with MRM and BPB re same. | 6.50 |
| 308 | 08/19/2018 | Review draft reply brief. | 0.41 |
| 309 | 08/19/2018 | Review and comment on Bernhard declaration. | 0.75 |
| 310 | 08/20/2018 | Review Curling amended MPI and proposed order. | 0.16 |
| 311 | 08/20/2018 | Call w MRM to discuss plan for getting MPI reply filed with supporting materials. | 0.41 |
| 312 | 08/20/2018 | Draft motion for excess pages for MPI reply, and proposed order. | 0.33 |
| 313 | 08/20/2018 | Finalize and file motion for excess pages. | 0.25 |
| 314 | 08/20/2018 | Review and comment on draft Virginia Martin declaration. | 0.26 |
| 315 | 08/20/2018 | Call w MRM and BPB re MPI reply. | 0.58 |
| 316 | 08/20/2018 | Review and comment on BPB draft of MPI reply. | 1.50 |
| 317 | 08/20/2018 | Revise and comment on declarations of Bernhard, DeMillo, Martin, and McReynolds. | 1.00 |
| 318 | 08/29/2018 | Call with MRM re planning for hearing ordered by Doc. 279 (MPI hearing Order). | 0.53 |
| 319 | 08/29/2018 | Call with MRM and BPB regarding MPI hearing planning. | 1.00 |
| 320 | 08/30/2018 | Call with MRM about approaching David Cross re modifying Curlings' relief requested. | 0.21 |
| 321 | 08/31/2018 | Respond to Cross email re all-mail issues. | 0.33 |
| 322 | 08/31/2018 | Letter to David Cross re problems with proposing an all-mail election as a substitute for DRE voting. | 1.66 |

| Entry | Date | Description | Total Time |
|---|---|---|---|
| 323 | 09/01/2018 | Prepare and send email to David Cross re Coalition Pls.' requested relief. | 0.25 |
| 324 | 09/04/2018 | Review and consider court order re hearing (Doc. 280).  Email to team re same. | 0.50 |
| 325 | 09/04/2018 | Prepare for and join call with MRM regarding MPI hearing set for 9/12. | 2.16 |
| 326 | 09/05/2018 | Call w BPB and MRM re MPI hearing preparation. | 1.71 |
| 327 | 09/05/2018 | Correspond with David Cross, BPB re relief sought by Curling Pls. and MRM's criticism of [Curling] Pls.' relief. | 1.00 |
| 328 | 09/05/2018 | Conferral call with Curling Pls.' counsel and BPB re MPI hearing. | 0.85 |
| 329 | 09/05/2018 | Call w BPB re conferral call. | 0.16 |
| 330 | 09/05/2018 | Call with MRM re MPI strategy and witnesses. | 1.53 |
| 331 | 09/06/2018 | Email to David Cross re subpoenas and witnesses. | 1.00 |
| 332 | 09/06/2018 | Call w MRM re [Curling's] subpoena of Kemp. | 0.33 |
| 333 | 09/06/2018 | Conferral call with all counsel per Doc. 280. | 0.50 |
| 334 | 09/06/2018 | Planning for MPI hearing with BPB and MRM. | 0.33 |
| 335 | 09/06/2018 | Second conferral [call] with Cross, BPB, and MoFo team. | 0.50 |
| 336 | 09/06/2018 | Consider examination times, then draft and circulate joint notice. | 2.00 |
| 337 | 09/07/2018 | Draft joint submission of Pls. for extra time. | 0.91 |
| 338 | 09/07/2018 | Call with MRM & BPB re preparations for 9/12 hearing. | 0.28 |
| 339 | 09/07/2018 | Call with MRM re preparations for 9/12 hearing. | 1.00 |
| 340 | 09/09/2018 | Travel to SEA and flight time SEA to PHX to ATL.  (11.5 hours less 1.5 hours of airport calls and 2.16 working on SEA-PHX plane.) | 3.92 |
| 341 | 09/09/2018 | Dinner and planning session with MRM. | 2.25 |
| 342 | 09/09/2018 | Review documents during travel. | 2.16 |
| 343 | 09/09/2018 | Calls with MRM regarding hearing preparations. | 1.50 |
| 344 | 09/09/2018 | Emails with MRM and with D. Cross regarding hearing preparations. | 0.83 |
| 345 | 09/09/2018 | Finalize and file DeMillo second declaration. | 0.75 |
| 346 | 09/17/2018 | Call with MRM re strategy in event of various outcomes on MPI. | 0.55 |
| 347 | 09/10/2018 | Review documents in advance of MPI hearing. | 1.50 |
| 348 | 09/10/2018 | Plan witnesses and arguments for MPI hearing with BPB and MRM. | 9.00 |
| 349 | 09/10/2018 | Planning with BPB and MRM. | 2.75 |
| 350 | 09/11/2018 | Preparing witness examinations for MPI hearing. | 2.75 |
| 351 | 09/11/2018 | Planning for MPI hearing with MRM and BPB. | 9.00 |
| 352 | 09/12/2018 | Prepare preclusion arguments. | 2.00 |
| 353 | 09/12/2018 | Travel to and attend preliminary injunction hearing. | 10.66 |
| 354 | 09/13/2018 | Strategy call with MRM regarding closing statements. | 0.30 |
| 355 | 09/13/2018 | Strategy call with MRM and BPB regarding closing statements and response to Defs.' suppl. witness declaration; drafting of same. | 2.00 |
| 356 | 09/13/2018 | Drafting and revision of closing statement. | 1.50 |
| 357 | 09/13/2018 | Air travel from ATL to PHX to SEA.  Ground transportation from airport home. | 4.88 |
| 358 | 09/17/2018 | Review order on MPI. | 1.50 |
| 359 | 09/17/2018 | Strategy call w MRM re MPI next steps. | 1.33 |
| 360 | 09/18/2018 | Call with MRM and BPB re post-MPI ruling strategy. | 1.56 |
| 361 | 09/19/2018 | Call with BPB and MRM re strategy for discovery and post-MPI ruling motion. | 0.31 |
| 362 | 09/19/2018 | MRM strategy call. | 0.33 |
| 363 | 09/20/2018 | Review correspondence re reconsideration strategy and proposal for expedited discovery schedule. | 0.33 |
| 364 | 09/20/2018 | Strategy email to team. | 0.33 |
| 365 | 09/20/2018 | Call with MRM, BPB re strategy for moving to merits. | 1.43 |
| 366 | 09/20/2018 | Call with BPB, MRM regarding expedited schedule negotiations with Curling Pls.' counsel.  Emails with David Cross re same. | 0.16 |
| 367 | 09/21/2018 | Emails with MRM, BPB, David Cross re schedule proposal.  Revise Curling drafts and send to DC. | 1.25 |
| 368 | 09/28/2018 | Review draft motion and attend call w BPB, MRM re motion for additional relief. | 1.50 |

| Entry | Date | Description | Total Time |
|-------|------|-------------|-----------|
| 369 | 09/29/2018 | Draft and send email to CI re points for response to motion to stay. | 0.76 |
| 370 | 09/30/2018 | Review and comment on BPB & MRM draft of new motion for PI. | 2.83 |
| 371 | 09/29/2018 | Review UCI clinic memo on voluntary cessation and stays pending interlocutory appeals of immunity determinations.  Email to CI re same. | 0.16 |
| 372 | 09/30/2018 | Review and comment on CI draft of response to M Stay. | 0.33 |
| 373 | 10/01/2018 | Review draft Section II.B of new MPI. | 0.16 |
| 374 | 10/02/2018 | Review and comment on draft DRE-audit language in proposed order.  Email correspondence with BPB and MRM re same. | 0.88 |
| 375 | 10/11/2018 | Emails w MRM, BPB re reply supporting request for status conference. | 0.25 |
| 376 | 10/12/2018 | Attention to file - organizing PACER filings and email MRM re same. | 0.41 |
| 377 | 11/15/2018 | Call w BPB, MRM regarding triage strategy, Rule 27 motion for Rule 34 discovery pending appeal. | 0.58 |
| 378 | 11/16/2018 | Draft narrative for Rule 27 motion. | 0.75 |
| 379 | 11/20/2018 | Call w BPB regarding preservation strategy pending appeal. | 0.30 |
| 380 | 01/08/2019 | Strategy call w MRM, CI in advance of 11th Circuit mediation. | 0.51 |
| 381 | 01/09/2019 | Prepare for and attend 11th Circuit mediation by teleconference. | 2.18 |
| 382 | 02/15/2019 | Call with Catherine Chapple at MoFo re motion to lift stay. | 0.10 |
| 383 | 02/15/2019 | Call with MRM and BPB regarding strategy following appeal. | 0.50 |
| 384 | 04/11/2019 | Attention to file -- accumulated emails, correspondence, CM/ECF filings. | 1.50 |
| 385 | 05/24/2019 | Participate in telephone status conference. | 1.08 |
| 386 | 05/24/2019 | Strategy call with BB, MRM, CI regarding MPI, case schedule following status conference. | 0.25 |
| 387 | 06/13/2019 | Review and comment on draft discovery plan.  Email to BPB re same. | 0.25 |
| 388 | 06/15/2019 | Review and comment on BPB brief excerpt pertaining to secret ballot violations. | 0.50 |
| 389 | 06/17/2019 | Review and comment on BPB brief excerpt pertaining to secret ballot violations. Email to BPB re same. | 1.50 |
| 390 | 06/17/2019 | Call w MRM regarding potential MPI on barcode ballot machines. | 0.33 |
| 391 | 06/21/2019 | Review and comment on secret-ballot section of MPI.  Emails to MRM and co-counsel re same. | 1.25 |
| 392 | 06/29/2019 | Call with MRM regarding strategy on stopping BMDs and mootness. | 1.33 |
| 393 | 08/21/2019 | Review Doc 584, State's Motion for Clarification of Order on MPI. | 0.20 |
| 394 | 08/21/2019 | [FEE CLAIM] Prepare summary of hours and expenses for case and interlocutory appeal fro period running from inception of involvement through July 31, 2019. | 1.00 |
| 395 | 08/24/2019 | [FEE CLAIM] Comment on BPB draft motion for attorney fees. | 1.16 |
| 396 | 08/27/2019 | [FEE CLAIM] Comment on revised draft motion for attorney fees. | 0.83 |
| 397 | 08/28/2019 | [FEE CLAIM] Research expenses awardable under 1988 in 11th Cir.  Advise all co-counsel and client re findings. | 0.60 |
| 398 | 08/28/2019 | [FEE CLAIM] Research availabiltiy of appellate fee award by trial court for prevailing on interlocutory appeal. | 1.61 |
| 399 | 08/29/2019 | [FEE CLAIM] Assemble hours from July 2017 to JUly 2019 for fee claim. | 6.50 |
| 400 | 09/05/2019 | Review internal emails regarding conferral w Defs re use of GEMS or Dominion scanners in pre-March 2020 elections. | 0.33 |
| 401 | 09/05/2019 | Fact-gathering and planning call w MRM and BPB re motion for clarification of PI order w/r/t Q1-2020 elections. | 0.28 |
| 402 | 09/09/2019 | Planning and strategy call w MRM and BPB regarding substance and preparation of Motion re Implementation of PI Order. | 1.18 |
| 403 | 09/09/2019 | Planning and strategy call with MRM, BPB regarding law applicable to rule 59 motion. | 0.56 |
| 404 | 09/11/2019 | Review and comment on draft Rule 59 motion and brief directed at PI order. | 3.00 |
| 405 | 09/17/2019 | Correspond with MRM, opposing counsel to eliminate duplicative cost claims. Email to BPB, MRM regarding expedited briefing of Rule 59 motion. | 0.75 |
| 406 | 09/18/2019 | Correspond w. co-Pls.' counsel DC and co-parties co-counsel regarding timeliness of costs claim; research issue. | 1.16 |
| 407 | 09/26/2019 | Review State's response to Rule 59 motion.  Debrief with MRM and BPB by email. | 0.66 |
| 408 | 09/27/2019 | Team call w MRM, BPB to consider State and Curling responses and plan reply in support of Rule 59 motion. | 0.30 |
| 409 | 09/27/2019 | [FEE CLAIM] Drafted declaration supporting fee claim. | 1.08 |

| Entry | Date | Description | Total Time |
|-------|------|-------------|------------|
| 410 | 09/28/2019 | Team call w MRM, BPB to consider State and Curling responses and plan reply in support of Rule 59 motion. | 1.35 |
| 411 | 09/30/2019 | [FEE CLAIM] Drafting declaration regarding hourly rate. | 1.58 |
| 412 | 10/01/2019 | [FEE CLAIM] Drafting declaration in support of fee award claim. | 2.33 |
| 413 | 10/02/2019 | Review and comment on draft reply iso Rule 59 motion. | 0.75 |
| 414 | 10/03/2019 | Continued review and comment on draft reply iso Rule 59 motion. | 0.58 |
| 415 | 10/07/2019 | [FEE CLAIM] Call w MRM and BPB to eliminate duplicative fees from claim. | 0.83 |
| 416 | 10/07/2019 | [FEE CLAIM] Drafting paragraphs relating early case history for inclusion in fee detail submission. | 1.66 |
| 417 | 10/14/2019 | [FEE CLAIM] Continue revision of declaration in support of fee claim.  Revise main brief in support of combined fees and expenses detail. | 10.00 |
| 418 | 10/15/2019 | [FEE CLAIM] Finalize fee declaration and fee detail records for Oct 15 submission. | 4.00 |

# EXHIBIT B

# Robert McGuire Law Firm - Expense Report

| Entry | Expense Date | Description | Cost |
|---|---|---|---|
| *May 1st, 2018 In-Person Status Conference (per Minute Docket Entry April 25, 2018)* | | | |
| 1 | 04/09/2018 | Alaska Airlines [] - flight SEA to ATL roundtrip for team meeting on April 27. | $515.41 |
| 2 | 04/09/2018 | Alaska Airlines changed [] - changed flights from SEA to ATL roundtrip 4-29 to 5-2 for April 30  team meeting and court hearing on May 1. | $580.99 |
| 3 | 04/29/2018 | Uber from ATL Hartsfield to hotel. | $51.29 |
| 4 | 04/29/2018 | Airline baggage charge. | $25.00 |
| 5 | 04/29/2018 | Toll bridge - travel to airport. | $7.00 |
| 6 | 04/29/2018 | Meal out of town. | $38.44 |
| 7 | 05/01/2018 | (Fedex) Printing of second amended complaint to prepare filing responsive to court order. | $7.93 |
| 8 | 05/01/2018 | Printing of materials for hearing. | $20.80 |
| 9 | 05/02/2018 | Lodging at Residence Inn Marriott Atlanta Midtown, April 29 to May 2, for status conference and team meetings. | $678.46 |
| 10 | 05/02/2018 | Alaska Airlines baggage fee. | $25.00 |
| 11 | 05/02/2018 | Seattle airport parking, April 29 to May 2. | $136.00 |
| 12 | 05/02/2018 | Uber from hotel to Atlanta airport. | $42.25 |
| *September 2018 preliminary injunction hearing* | | | |
| 13 | 09/06/2018 | American Airlines [] SEA to ATL roundtrip for MPI hearing - 9/9 to 9/13/2018. | $1,176.41 |
| 14 | 09/09/2018 | Bridge toll to airport. | $7.00 |
| 15 | 09/09/2018 | Meal during travel. | $20.82 |
| 16 | 09/09/2018 | In-flight Internet connectivity (SEA to PHX). | $12.00 |
| 17 | 09/09/2018 | Uber from Atlanta airport to hotel. | $68.09 |
| 18 | 09/12/2018 | Uber from hotel to courthouse with MRM and expert RAD. | $75.24 |
| 19 | 09/13/2018 | Lodging at Grand Hyatt Atlanta Buckhead, September 9 to 13, for preliminary injunction hearing and team meetings, including in-room meals. | $1,051.74 |
| 20 | 09/13/2018 | Uber from hotel to airport. | $67.15 |
| 21 | 09/13/2018 | In-flight Internet connectivity (ATL to PHX). | $16.00 |
| 22 | 09/13/2018 | SEA airport parking - Sept 9-13, 2018. | $185.00 |
| | | **Grand Total** | **$4,808.02** |

EXHIBIT

C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **BRAD RAFFENSPERGER,** | ) |
| **ET AL.,** | ) |
| | ) |
| **Defendants.** | ) |

**CIVIL ACTION**

**FILE NO. 1:17-cv-2989-AT**

## <u>DECLARATION OF BRUCE P. BROWN</u>

1.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

2.      My name is Bruce P. Brown.  I am over the age of 18 and competent to testify.  I have personal knowledge of the facts stated in this declaration.

3.       I represent the Coalition Plaintiffs in this case.  The purpose of this declaration is to provide evidence relating to Coalition Plaintiffs' Motion for Fees under 42 U.S.C. § 1988.

4.      A reasonable rate for my time is $625 per hour.  I graduated *summa cum laude* from University of Georgia School of Law in 1984.  After graduation, I clerked for Judge Edward A. Tamm of the United States Court of Appeals for the

District of Columbia Circuit and for Chief Justice of the United States Supreme Court Warren E. Burger.  I joined Long, Aldridge and Norman (now Dentons) in 1986 and made partner in 1992.  I started my own solo practice in 2012. Throughout my career, I have specialized in complex commercial, regulatory, and constitutional cases in state and federal court.  When I left McKenna, Long & Aldridge in 2012, my hourly rate was $605.

5.      I have substantial experience litigating Section 1983 cases in federal court, for plaintiffs and defendants.  In addition to voting cases, I currently represent the plaintiff in *Dean v. Olens,* No. 18-cv-0442-TCB, a Section 1983 and 1985(3) case involving a Kennesaw State University Cheerleader who "took a knee" during the National Anthem.  I am co-counsel for the defendant City of Atlanta in *Calhoun v. Pennington,* 09-cv-3286-TCB, a case involving a complex consent decree which resolved a Section 1983 action against the Police Department.  In addition, I was appointed Special Master by the District Court in *In re Airline Antitrust Litigation,* 1:09-MD-02089-TCB, and for twelve years was co-lead counsel for the State of Georgia in the "water wars" cases in the several District Courts, Courts of Appeal, and the United States Supreme Court.

6.      In this case, co-counsel and I have relied heavily on the support that we have received from our client, Coalition for Good Governance.  I have

reviewed the declaration of Marilyn Marks, filed herewith, and her observations about her contributions, and the contributions of her organization, are completely accurate.  But for the support of the Coalition, we would have needed another team of lawyers and paralegals to represent the Coalition Plaintiffs in this case.

7.      Attached as Exhibit 1 is a true and correct record of my time on this case.  I record my time regularly, and it is my practice to record my time regularly, for the Coalition and for my other clients.  I use billing software called "CLIO," and the spreadsheet that is attached as Exhibit 1 is generated by the CLIO program.

8.      When I record my time, I do not include time that I spend on administrative or secretarial tasks that would in a larger firm be undertaken by employees who do not charge clients by the hour.  In addition, after I record my time, I will use my judgment to reduce the amount of time recorded to reflect inefficiencies or other circumstances.  In this case, I have reduced my time on a number of days so that I can be certain that the amount that I am charging is appropriate.  In most instances in which I reduce my time after it is recorded, I will so indicate in the billing entry.

9.      In the spreadsheet attached as Exhibit 1, I have added rows that identify the "Phase" of the case and, in the column to the right of the last row of a particular phase, I have subtotaled the number of hours for the particular phase.

These phases correspond to the phases identified in the Coalition Plaintiffs' Detailed Specification.

    10.    Exhibit 2 is a spreadsheet, also generated by my CLIO billing software, of the expenses I have incurred in this case.

    This 15th day of October, 2019.

Bruce P. Brown

E
X
H
I
B
I
T

1

| Client | Date | User | Description of Work | Hours | Rate | Total | Phase Hours |
|--------|------|------|---------------------|-------|------|-------|-------------|
| | | | **PHASE II** | | | | |
| CGG Curling | 3/30/18 | Bruce Brown | Review file; review proposed third amended complaint; review memo from R. McGuire; extensive telephone call with C. Ichter; telephone call with M. Marks and team; draft engagement letter; review C. Icther draft; further work on matter. | 5 | $625.00 | $3,125.00 | |
| CGG Curling | 4/1/18 | Bruce Brown | Review local rules and Judge Totenberg's Standing Order; draft notice of appearance; draft certificate of compliance; emails to C. Ichter about pleadings. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 4/2/18 | Bruce Brown | Review and editing of draft Third Amended Complaint and transmit comments to R. Maguire; emails with client and R. Maguire about filings and strategy. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 4/3/18 | Bruce Brown | Further work on draft third amended complaint; legal research on official capacity immunity; email to R. McGuire and M. Marks about the other plaintiffs. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 4/4/18 | Bruce Brown | Review motion for leave to amend; revise motion for leave to amend; legal research into standards for granting such motions and edit motion to include same; review pleadings relating to Steptoe's withdrawal; legal research as to applicability of Rule 41(a) dismissal; review and revise proposed order; circulated revised drafts of pleadings; further edits to same; legal research confirming viability of injunctive relief against state officials sued in their official capacity for injunctive relief; facilitate filing of pleadings; numerous email to R. McGuire and M. Marks; emails to J. Salter. | 5.9 | $625.00 | $3,687.50 | |
| CGG Curling | 4/5/18 | Bruce Brown | Review and edit request for status conference and emails regarding same; finalize, file and serve same; telephone conference with J. Salter and email R. McGuire regarding same; emails with team about meeting to plan strategy. | 1.8 | $625.00 | $1,125.00 | |
| CGG Curling | 4/6/18 | Bruce Brown | Substantive email to team about need to make a formal demand on Secretary Kemp about the feasibility and legality of his using Coalition Plaintiffs' proposed solution; further emails about next steps. | 1 | $625.00 | $625.00 | |
| CGG Curling | 4/6/18 | Bruce Brown | Email to team about Judge Totenberg's decision in Williams v. City of Atlanta and implications about making clear demand to Secretary Kemp and Section 1988 recovery. | 0.5 | $625.00 | $312.50 | |
| CGG Curling | 4/9/18 | Bruce Brown | Review status conference request and information about spoliation to prepare for conference call; conference call with team to discuss making a demand on Secretary Kemp, scope of injunctive relief, and coordinating efforts (if possible) with other plaintiffs; brief review of Kemp's response in opposition to motion for leave and emails regarding same. | 2.4 | $625.00 | $1,500.00 | |
| CGG Curling | 4/12/18 | Bruce Brown | Extensive work drafting and revising lengthy demand letter to Gov. Barnes and J. Salter; numerous emails and telephone discussions with M. Marks and team regarding same; | 4.8 | $625.00 | $3,000.00 | |
| CGG Curling | 4/13/18 | Bruce Brown | Consider response to Curling Plaintiffs for an extension of time to respond to motion to amend and emails regarding same (.8); extensive conference call with M. Marks and R. McGuire concerning other plaintiffs' position and whether to oppose, and consideration of motion to sever (.5 plus); research spoliation cases by Judge Totenberg and Judge Batten and email to team regarding same (.5); email responding to attorney Cross (.1). | 1.9 | $625.00 | $1,187.50 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 4/14/18 | Bruce Brown | Further work on demand letter to Gov. Barnes and J. Salter. | 2 | $625.00 | $1,250.00 | |
| CGG Curling | 4/16/18 | Bruce Brown | Revise and finalize letter to Gov. Barnes and J. Salter (1.9); exchange emails with J. Salter about Secretary Kemp's position (.3). | 2.2 | $625.00 | $1,375.00 | |
| CGG Curling | 4/17/18 | Bruce Brown | Telephone conference with M. Marks; review draft press release for the Coalition (.5, not billed); further work on matter. | 1.3 | $625.00 | $812.50 | |
| CGG Curling | 4/18/18 | Bruce Brown | Draft email to D. Cross concerning potential joint motion to sever; emails with M. Marks and team regarding same; | 1 | $625.00 | $625.00 | |
| CGG Curling | 4/19/18 | Bruce Brown | Substantive email to D. Cross; numerous emails about replies to briefs in opposition to motion to amend; further work on matter. | 1.2 | $625.00 | $750.00 | |
| CGG Curling | 4/23/18 | Bruce Brown | Telephone conference with R. McGuire, and then R. McGuire and D. Cross; telephone conference with M. Marks; consider approach toward Curling plaintiffs joinder and emails to team regarding same. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 5/1/18 | Bruce Brown | Prepare for and attend court hearing; conference with R. McGuire and M. Marks thereafter. | 4.5 | $625.00 | $2,812.50 | |
| CGG Curling | 5/2/18 | Bruce Brown | Follow up on court hearing; telephone call with C. Ichter about statistics experts and call with co-plaintiffs. | 2.2 | $625.00 | $1,375.00 | |
| CGG Curling | 5/3/18 | Bruce Brown | Work on Rule 34 application; legal research on whether videotaping processes is allowed under Rule 34; emails to client regarding same. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 5/4/18 | Bruce Brown | Work with M. Marks on email about preservation of evidence. | 0.2 | $625.00 | $125.00 | |
| CGG Curling | 5/6/18 | Bruce Brown | Review numerous emails about matter from opposing counsel and others; work on Rule 34 pleading and emails regarding same. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 5/7/18 | Bruce Brown | Communications with client and opposing counsel about Rule 34 request; draft email to J. Salter about difference between state law and what Rule 34 request would allow; further work on matter. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 5/8/18 | Bruce Brown | Work on Rule 34 notice issues; emails to team and J. Salter regarding same. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 5/9/18 | Bruce Brown | Prepare for and telephone calls about conference call with the Court; prepare "pocket brief" on duty to preserve evidence;  emails to J. Salter; further work on matter. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 5/10/18 | Bruce Brown | Prepare for and attend meeting with counsel and then hearing with Court and follow up discussions and emails thereafter. | 4.5 | $625.00 | $2,812.50 | |
| CGG Curling | 5/11/18 | Bruce Brown | Multiple emails and telephone calls regarding matter, including emails on advisability of filing a spoliation motion. | 3.2 | $625.00 | $2,000.00 | |
| CGG Curling | 5/14/18 | Bruce Brown | Extensive email about reactions to Court agreement on preservation. | 0.5 | $625.00 | $312.50 | |
| CGG Curling | 6/1/18 | Bruce Brown | Extensive conference call with team on strategy going forward. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 6/11/18 | Bruce Brown | Extensive conference call regarding matter with M. Marks and team (2 hours, only 1 billed) | 1 | $625.00 | $625.00 | 1 |
| CGG Curling | 6/13/18 | Bruce Brown | Revise and finalize draft letter to DeKalb and Kemp counsel; emails regarding same. | 1 | $625.00 | $625.00 | |
| CGG Curling | 6/15/18 | Bruce Brown | Legal research on whether Rule 45 subpoena may be served prior to Rule 26 conference and emails regarding same. | 0.5 | $625.00 | $312.50 | |
| CGG Curling | 6/20/18 | Bruce Brown | Extensive work drafting, revising and finalizing motion for issuance of subpoena and associated exhibits; emails to counsel; emails to D. Cross; multiple emails to M. Marks regarding same. | 3.1 | $625.00 | $1,937.50 | 69.70 |

PHASE III

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 7/17/18 | Bruce Brown | Review and analysis of motion to dismiss; review draft response and transmit edits and comments to R. McGuire; review file on motion for affidavit; emails with M. Marks regarding same; draft, review, revise and file reply. | 3.4 | $625.00 | $2,125.00 |
| CGG Curling | 7/18/18 | Bruce Brown | Review recent filings; review amicus brief; Prepare for and call with M. Mark, R. McGuire and C. Icther about whether to enjoin DRE machine use in December election. | 1.2 | $625.00 | $750.00 |
| CGG Curling | 7/19/18 | Bruce Brown | Consider next steps in the litigation and email memo to M. Marks regarding same. | 1.2 | $625.00 | $750.00 |
| CGG Curling | 7/19/18 | Bruce Brown | Prepare for and telephone conference with M. Marks and co-counsel on timing of PI motion; review Defendant Kemp's press statements about security of election system. | 1 | $625.00 | $625.00 |
| CGG Curling | 7/23/18 | Bruce Brown | Extensive telephone conferences with M. Marks, and then M. Marks and R. McGuire, about strategy in the case, specifics of remedy, whether to file a motion for a preliminary injunction; legal research on equitable relief; draft preliminary outline of motion. | 5.9 | $625.00 | $3,687.50 |
| CGG Curling | 7/24/18 | Bruce Brown | Review Amicus Brief and study authorities for use in motion for a preliminary injunction; further work on motion; emails to M. Marks and R. Maguire about framing of requested relief and form of submission to the Court; further work on motion papers. | 4.1 | $625.00 | $2,562.50 |
| CGG Curling | 7/25/18 | Bruce Brown | Work on motion papers; study South Carolina action; email to M. Manor; emails and telephone conversations with M. Marks about news reports and action to take in Georgia; emails about settlement possibilities with Sec. Kemp. | 3.2 | $625.00 | $2,000.00 |
| CGG Curling | 7/26/18 | Bruce Brown | Telephone call with C. Ichter and J. Salter (Salter aborted call); further work on ideas to settle the matter with C. Ichter and M. Marks; extensive work on motion papers. | 3.5 | $625.00 | $2,187.50 |
| CGG Curling | 7/27/18 | Bruce Brown | Work on motion papers; conference with M. Marks and C. Ichter; further extensive work on motion papers. | 6.5 | $625.00 | $4,062.50 |
| CGG Curling | 7/28/18 | Bruce Brown | Further work on brief in support of motion for preliminary injunction; email memo to team regarding same; circulate draft brief. | 4 | $625.00 | $2,500.00 |
| CGG Curling | 7/29/18 | Bruce Brown | Extensive work on motion for preliminary injunction, including substantive conference call with M. Marks about motion, brief and evidence; review brief; review draft affidavits; consider Rule 65, Local Rules, and Court's Standing Order; draft motion itself; draft proposed order; legal research into argument about dollar cost to defendant of injunctive relief. | 5.5 | $625.00 | $3,437.50 |
| CGG Curling | 7/31/18 | Bruce Brown | Review law on injunctive relief; extensive telephone conference with M. Marks and R. McGuire; further work on motion papers. | 5 | $625.00 | $3,125.00 |
| CGG Curling | 7/31/18 | Bruce Brown | Work on declarations and further work on brief; numerous emails and phone calls about motion for preliminary injunction; further legal research on irreparable harm. | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 8/1/18 | Bruce Brown | Further work on preliminary injunction papers, including editing M. Bernhard declaration; reviewing R. Wilson declaration and email to her regarding same; review and edit D. Bower's declaration; prepare press statement; continued editing of motion papers. | 4.8 | $625.00 | $3,000.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 8/2/18 Bruce Brown | Further work on major declarations (Lamb, Bernhard, and others); further drafting of brief; additional legal research on irreparable harm; additional legal research on balancing of the equities and impact of cost upon defendants' equities; numerous telephone calls and emails with R. McGuire and M. Marks.  (Actual time 12 plus hours). | 8 | $625.00 | $5,000.00 | 4 |
| CGG Curling | 8/3/18 Bruce Brown | Further substantial work revising and finalizing motion papers, including all declarations and exhibits thereto, brief, motion, and proposed order; numerous emails and telephone calls with R. McGuire and M. Marks regarding same; further editing, finalizing and filing papers. | 7.8 | $625.00 | $4,875.00 | |
| CGG Curling | 8/5/18 Bruce Brown | Work on Open Records Act requests to defendants and others. | 1 | $625.00 | $625.00 | |
| CGG Curling | 8/6/18 Bruce Brown | Work following up to filing; work with clerk preparing submission to Judge Totenberg; work on Open Records Act requests; telephone calls with media; research Secretary Kemp's testimony before Congress blaming federal government for interference; further work on matter. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 8/7/18 Bruce Brown | Review Judge Totenberg's order and telephone calls and emails relating thereto to co-counsel and client; research about and email to Athens-Clarke County election officials; further extensive work on Open Records Act requests. | 4.9 | $625.00 | $3,062.50 | |
| CGG Curling | 8/8/18 Bruce Brown | Work on declarations (.5); review Curling brief (.4); extensive work on Open Records requests and fact-gathering (2.4); telephone calls with media about case (.5) | 3.8 | $625.00 | $2,375.00 | |
| CGG Curling | 8/9/18 Bruce Brown | Work on KSU and DOAS Open Records Act requests. | 0.9 | $625.00 | $562.50 | |
| CGG Curling | 8/13/18 Bruce Brown | Follow up emails on Open Records Act; telephone conference with R. Maguire and M. Marks. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 8/14/18 Bruce Brown | Review and analysis of defendants' papers and circulate memorandum to team regarding same; email to SOS regarding Open Records Act request. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 8/15/18 Bruce Brown | Draft and revise introduction to Reply Brief; further work on legal research for Reply; numerous telephone calls and emails about strategy and Open Records Act requests; email to J. Salter; legal research on five day rule for Attorney General and injunctive relief. | 4.5 | $625.00 | $2,812.50 | |
| CGG Curling | 8/16/18 Bruce Brown | Extensive work on Reply Brief; numerous telephone calls and emails about brief, Open Records requests, request for a hearing, and related matters. | 5.2 | $625.00 | $3,250.00 | |
| CGG Curling | 8/17/18 Bruce Brown | Continued work on reply; telephone call with D. Cross; draft motion for hearing; extensive additional work on reply brief. | 3.5 | $625.00 | $2,187.50 | |
| CGG Curling | 8/18/18 Bruce Brown | Drafting reply brief. | 4 | $625.00 | $2,500.00 | |
| CGG Curling | 8/19/18 Bruce Brown | Drafting reply brief; circulate first draft; re-write of "spoliation" section; emails regarding declarations. | 3.6 | $625.00 | $2,250.00 | |
| CGG Curling | 8/20/18 Bruce Brown | Extensive work on Reply Brief, including extensive revisions; review and revisions of declarations; numerous telephone conferences; substantial work on finalization and filing of papers (actual time 14 plus hours). | 12.5 | $625.00 | $7,812.50 | 2.5 |
| CGG Curling | 8/21/18 Bruce Brown | Email to R. Maguire about laches and other arguments; emails and telephone calls regarding strategy going forward. | 1.2 | $625.00 | $750.00 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 9/4/18 | Bruce Brown | Emails with R. McGuire and M. Marks about ROIA or notice to produce; review of court order about scheduling. | 0.2 | $625.00 | $125.00 | |
| CGG Curling | 9/5/18 | Bruce Brown | Work on plan for evidence submission at the hearing; multiple emails and telephone call about difference in relief between Curling Plaintiffs and Coalition Plaintiffs; conference call with D. Cross and team regarding same; emails with J. Salter about hearing;  consider whether to call Secretary Kemp as a witness. | 3.2 | $625.00 | $2,000.00 | |
| CGG Curling | 9/6/18 | Bruce Brown | Multiple telephone conferences with co-counsel and Curling counsel about what witnesses to call and subpoena and schedule for examination; extensive consideration of whether to call Secretary Kemp and review documents relating to Secretary Kemp's opposition to federal funding of election equipment improvement and his charge that DHS was hacking Georgia. | 3.8 | $625.00 | $2,375.00 | |
| CGG Curling | 9/7/18 | Bruce Brown | Emails to co-counsel and defendants' counsel about joint notice; revise, finalize and file joint notice; emails concerning and finalize subpoena; conference call with R. Maguire and M. Marks about trial planning; telephone conference with M. Marks about evidence and testimony. | 3 | $625.00 | $1,875.00 | |
| CGG Curling | 9/9/18 | Bruce Brown | Conference call with M. Marks and continue preparation for the hearing; legal research on several issues; consider filing motion for appointment of special master; prepare cross-examination; email Dr. Stark and review and revise his declaration. | 3.5 | $625.00 | $2,187.50 | |
| CGG Curling | 9/10/18 | Bruce Brown | Further preparation for hearing; review and edit declarations; meet with R. Maguire and M. Marks; email with C. Ichter about special master brief; draft and revise timeline (actual time 9 plus hours). | 7 | $625.00 | $4,375.00 | 2 |
| CGG Curling | 9/11/18 | Bruce Brown | Finalize and file declarations; intensive preparation for hearing; meet with expert C. DeMillo and assist in the preparation of his testimony; meet with M. Marks and R. Maguire; telephone conference with D. Cross; review W. Lee slides; prepare exhibits for hearing; prepare opening statement; legal research on various issues. | 9.3 | $625.00 | $5,812.50 | |
| CGG Curling | 9/11/18 | Bruce Brown | Additional substantial preparation for hearing; work on opening statement; attend hearing (actual time 9.5 plus) | 8 | $625.00 | $5,000.00 | 1.5 |
| CGG Curling | 9/13/18 | Bruce Brown | With R. Maguire, draft, revise and file post-hearing brief and response to declaration of R. Sullivan. | 2.8 | $625.00 | $1,750.00 | |
| CGG Curling | 9/18/18 | Bruce Brown | Review court order; draft and circulate strategy memo; numerous emails and telephone calls about order and next steps (2.4); meet with HBO film crew (not billed to client). | 2.4 | $625.00 | $1,500.00 | |
| CGG Curling | 9/19/18 | Bruce Brown | Draft initial motion for reconsideration; multiple conversations about appeal and next steps; emails with D. Cross about appeal and about discovery; review C. Hoke material; consider grounds for additional relief. | 3.3 | $625.00 | $2,062.50 | 166.00 |

**PHASE IV**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 9/20/18 | Bruce Brown | Extensive work on strategy and whether to file additional request for relief; telephone calls with R. Maguire, M. Marks; emails to D. Cross; emails and legal research about dangers of mootness. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 9/21/18 | Bruce Brown | Multiple emails and telephone communications about request for status conference and strategy. | 1 | $625.00 | $625.00 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 9/24/18 | Bruce Brown | Further study on strategy and next steps; telephone call with C. Hoke and M. Marks; substantial additional communications on importance of considering mootnesss. | 2.8 | $625.00 | $1,750.00 | |
| CGG Curling | 9/25/18 | Bruce Brown | Extensive call with M. Marks about staffing and additional litigation (not billed); numerous calls and emails about whether and how to move for additional injunctive relief; emails to amici about whether to seek injunction of paper ballot audit; outine grounds for injunctive relief and circulate. | 2.4 | $625.00 | $1,500.00 | |
| CGG Curling | 9/26/18 | Bruce Brown | Extensive work on motion for additional injunctive relief; emails with amici; additional legal research; outline possible claims; work on requests for relief relating to audits. | 4.5 | $625.00 | $2,812.50 | |
| CGG Curling | 9/27/18 | Bruce Brown | Further extensive work drafting brief. | 4 | $625.00 | $2,500.00 | |
| CGG Curling | 9/28/18 | Bruce Brown | Continue drafting brief for circulation to team; emails with team about election results and turn-out metrics; consider email from Ms. Burgess and draft response; conference call with team; further drafting of motion. | 5.1 | $625.00 | $3,187.50 | |
| CGG Curling | 9/29/18 | Bruce Brown | Revise draft and circulate; call with M. Marks. | 2.6 | $625.00 | $1,625.00 | |
| CGG Curling | 9/30/18 | Bruce Brown | Extensive work on motion. | 6 | $625.00 | $3,750.00 | |
| CGG Curling | 10/1/18 | Bruce Brown | Substantial work on motion for additional relief; drafting brief and reviewing supporting documentation; numerous emails and phone calls with R. McGuire and M. Marks. | 5.4 | $625.00 | $3,375.00 | |
| CGG Curling | 10/2/18 | Bruce Brown | Draft and finalize motion papers; numerous emails and conference calls with M. Marks, R. McGuire, amici; further drafting and revision and finalization (actual time 10.5 plus). | 8 | $625.00 | $5,000.00 | 44.30 | 2.5 |

**PHASE V**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 10/10/18 | Bruce Brown | Emails and conferences relating to Court's minute order (.6), consider Defendant's motion to sever (.3). | 0.9 | $625.00 | $562.50 | 1.2 |
| CGG Curling | 10/11/18 | Bruce Brown | Emails to D. Cross about severance; multiple emails about strategy and status conference. | 1.3 | $625.00 | $812.50 | |
| CGG Curling | 11/3/18 | Bruce Brown | Substantial work relating to cyber-vulnerability of State's election system, including telephone discussion with M. Marks and R. DeMillo; draft email to J. Salter. | 1 | $625.00 | $625.00 | |
| CGG Curling | 11/4/18 | Bruce Brown | Multiple emails and telephone conversations with press (NY Times, WaPo, and NPR),  client, D. Cross, R. Barnes about notification of vulnerability of the system | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 11/5/18 | Bruce Brown | Multiple emails and telephone conversations about Secretary's patently false claim that Democrats hacked the DRE system with NY Times, Washington Post, NPR, Roy Barnes, | 2.2 | $625.00 | $1,375.00 | |
| CGG Curling | 11/7/18 | Bruce Brown | Numerous telephone calls and emails about defendants' preservation duties after the election; emails and telephone calls with R. Shahar, pollwatcher, about election irregularities. | 1.8 | $625.00 | $1,125.00 | |
| CGG Curling | 11/14/18 | Bruce Brown | Conference with M. Marks regarding next steps (1.5, only .5 billed); work on CA11 appeal (2.2 not billed). | 0.5 | $625.00 | $312.50 | 3.2 |
| CGG Curling | 11/15/18 | Bruce Brown | Telephone conference with M. Marks and R. McGuire about next steps to preserve evidence; email to M. Marks about R. DeMillo's declaration. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 11/16/18 | Bruce Brown | Review R. DeMillo declaration and extensive email to team regarding same; extensive telephone call with M. Marks about next steps; work on motion to preserve evidence. | 3.8 | $625.00 | $2,375.00 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 11/19/18 | Bruce Brown | Further work considering continued spoliation of DRE machines and preventative action; draft brief to this effect; consider whether Court likely to grant same; discuss alternatives with M. Marks; further work on brief and consider whether "sampling" alternative should be entire "ask". | 3.5 | $625.00 | $2,187.50 | |
| CGG Curling | 11/19/18 | Bruce Brown | Reconsider additional motion; discussions with M. Marks about Court Order regarding discovery and preservation; review and revise M. Marks' draft notification to J. Salter et al. regarding preservation and numerous discussions regarding same; finalize same. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 11/20/18 | Bruce Brown | Additional work on preservation and spoliation issue; consider alternatives with M. Marks; multiple emails to J. Salter about State Rule requiring 30 day hold on DREs. | 1.8 | $625.00 | $1,125.00 | |
| CGG Curling | 11/30/18 | Bruce Brown | Telephone conferences with R, McGuire about whether to brief legislative immunity and respond to D. Cross emails regarding same. | 0.8 | $625.00 | $500.00 | |
| CGG Curling | 12/12/18 | Bruce Brown | Telephone conference with L. Bryan and J. Chandler about Fire Fight litigation and the Curling case, including assistance in gather evidence of DRE and epollbook problems. | 0.4 | $625.00 | $250.00 | |
| CGG Curling | 1/30/19 | Bruce Brown | Review briefs relating to CA11 appeal and attend oral argument (1.8, not billed); conference with M. Marks and R. McGuire after hearing to consider necessity of filing motion to preserve evidence or to initiate discovery (.5). | 0.5 | $625.00 | $312.50 | 1.8 |
| CGG Curling | 1/31/19 | Bruce Brown | Conference with M. Marks and R. McGuire about strategy for discovery and further study of race-targeted malware. | 0.4 | $625.00 | $250.00 | |
| CGG Curling | 2/8/19 | Bruce Brown | Review and analysis of Court of Appeals' decision; review Judge's orders regarding when case stops being stayed. | 0.8 | $625.00 | $500.00 | 26.20 |

**PHASE VI**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 2/11/19 | Bruce Brown | Work on discovery; prepare interrogatories and document requests; telephone calls and emails about scope of discovery and other procedural issues. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 2/12/19 | Bruce Brown | Extensive telephone call with J. Chanlder about strategy; legal research on "mandate"; telephone conference with M. Marks about whether to initiate dicovery before "mandate", preservation issues, status of old motion for additional injunctive relief. | 2.8 | $625.00 | $1,750.00 | |
| CGG Curling | 2/13/19 | Bruce Brown | Conference with M. Marks on discovery. | 0.5 | $625.00 | $312.50 | |
| CGG Curling | 2/15/19 | Bruce Brown | Telephone conference with M. Marks and R. McGuire about strategy, including timing of discovery launch. | 0.3 | $625.00 | $187.50 | |
| CGG Curling | 2/17/19 | Bruce Brown | Review and revise letter to V. Russo and B. Tyson regarding BMDs. | 0.7 | $625.00 | $437.50 | |
| CGG Curling | 2/18/19 | Bruce Brown | Review and revise letter to V. Russo and B. Tyson regarding BMDs. | 1.4 | $625.00 | $875.00 | |
| CGG Curling | 3/20/19 | Bruce Brown | Consider expedited discovery in advance of mandate, legal research about discovery timing, emails regarding same (1.5); outline and draft strategy memo for litigation and transmit to R. McGuire. | 2.3 | $625.00 | $1,437.50 | |
| CGG Curling | 3/21/19 | Bruce Brown | Multiple emails and telephone calls about planning and scheduling the "meet and confer" with defendants' counsel (1.2); consider drafting demand letter outlining claims (.5). | 1.7 | $625.00 | $1,062.50 | |
| CGG Curling | 3/22/19 | Bruce Brown | Emails with opposing counsel about meet and confer (.2); work on demand letter and emails with team regarding same (.8). | 1 | $625.00 | $625.00 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 3/23/19 | Bruce Brown | Further work on demand letter; multiple communications with M. Marks about new legislation, BMDs, auditability and mechanics. | 3.5 | $625.00 | $2,187.50 |
| CGG Curling | 3/24/19 | Bruce Brown | Finalize demand letter to Russo and others. | 1.8 | $625.00 | $1,125.00 |
| CGG Curling | 3/25/19 | Bruce Brown | Emails about discovery. | 0.2 | $625.00 | $125.00 |
| CGG Curling | 3/26/19 | Bruce Brown | Draft Request for Production of Documents to Secretary Raffensperger (for GEMS database) and circulate to R. McGuire and M. Marks; emails to V. Russo about upcoming elections schedule. | 2.4 | $625.00 | $1,500.00 |
| CGG Curling | 3/27/19 | Bruce Brown | Finalize and circulate discovery; telephone calls about discovery with B. Tyson and, separately, K. Burwell. | 1.1 | $625.00 | $687.50 |
| CGG Curling | 3/28/19 | Bruce Brown | Telephone conferences with M. Marks about, and then telephone conference with D. Cross and C. Chappel. | 2.3 | $625.00 | $1,437.50 |
| CGG Curling | 3/29/19 | Bruce Brown | Review rules on third-party discovery; draft notice of third-party discovery; emails to M. Marks regarding same. | 1.5 | $625.00 | $937.50 |
| CGG Curling | 4/1/19 | Bruce Brown | Draft, revise and finalize substantive letter to V. Russo concerning fundamental problems with the BMDs (1.5); prepare for "meet and confer" conference with Defendants' counsel, and communications with C. Chappel regarding same (1.0); conference call with opposing counsel and follow-up thereto (.6). | 3.1 | $625.00 | $1,937.50 |
| CGG Curling | 4/2/19 | Bruce Brown | Work drafting Status Report for the Court; email to V. Russo about election schedule; email about expert opinions on BMDs; further work on status report. | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 4/4/19 | Bruce Brown | Prepare for hearing; draft memo on BMDs; review file; telephone call with D. Cross and C. Chapple; draft discovery. | 5.5 | $625.00 | $3,437.50 |
| CGG Curling | 4/6/19 | Bruce Brown | Work on status report (1.9); extensive telephone conference with M. Marks about status report and litigation plan (1.0). | 2.9 | $625.00 | $1,812.50 |
| CGG Curling | 4/7/19 | Bruce Brown | Work on status report, schedule and preparation for hearing. | 2.5 | $625.00 | $1,562.50 |
| CGG Curling | 4/8/19 | Bruce Brown | Additional work on status report. | 1.1 | $625.00 | $687.50 |
| CGG Curling | 4/9/19 | Bruce Brown | Substantial revisions to status report (2.5); emails and telephone calls with Curling team regarding Status Report and planned schedule (.5); further preparation for hearing and conference with M. Marks (.5); revise and file Status Report (1.5); travel to and from hearing, attend hearing and conference after hearing (2.5). | 7.5 | $625.00 | $4,687.50 |
| CGG Curling | 4/12/19 | Bruce Brown | Review defendants' response to status report; telephone call with M. Marks regarding same; telephone call with D. Cross about response and proposing our own schedule; review and revise draft schedule. | 2.5 | $625.00 | $1,562.50 |
| CGG Curling | 4/15/19 | Bruce Brown | Finalize third-party discovery to Morgan County; telephone call to C. Henry (outside counsel to Morgan County) regarding same; review 30b6 topic list; meet with M. Marks about discovery.i | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 4/17/19 | Bruce Brown | Email to Morrison Foerster about timing of filing of preliminary injunction and communications with client regarding same. | 0.2 | $625.00 | $125.00 |
| CGG Curling | 4/18/19 | Bruce Brown | Work on amended motion for preliminary injunction; draft and revise outline with M. Marks; email to D. Cross about single brief; emails about scope of relief. | 2.4 | $625.00 | $1,500.00 |
| CGG Curling | 4/22/19 | Bruce Brown | Review Professor Appel paper on audits (cost split with election contest case). | 0.3 | $625.00 | $187.50 |
| CGG Curling | 4/24/19 | Bruce Brown | Review, analysis and revision of affidavit of A. McReynolds and transmit comments with extensive email to M. Marks; email to D. Cross regarding same. | 1.6 | $625.00 | $1,000.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 5/2/19 | Bruce Brown | Review Curling brief; multiple emails with team about next steps; consider State Defendants' motion to quash and response to it; conference with M. Marks. | 2.4 | $625.00 | $1,500.00 |
| CGG Curling | 5/13/19 | Bruce Brown | Review draft brief in support of MPI from MoFo ; draft extensive email to D. Cross about differences in relief sought; further work on matter. | 1.5 | $625.00 | $937.50 |
| CGG Curling | 5/14/19 | Bruce Brown | Draft and file brief in response to motion to quash; extensive work on proposed relief; numerous communications with M. Marks and D. Cross. | 3.5 | $625.00 | $2,187.50 |
| CGG Curling | 5/15/19 | Bruce Brown | Draft, revise and circulate motion to open discovery and proposed order. | 2 | $625.00 | $1,250.00 |
| CGG Curling | 5/15/19 | Bruce Brown | Further work on motion to open discovery; numerous emails and telephone calls with M. Marks and D. Cross regarding same; finalize motion and file. | 3.5 | $625.00 | $2,187.50 |
| CGG Curling | 5/16/19 | Bruce Brown | Substantial work on proposed remedy and emails with team about Curling's approach regarding scanners. | 1.5 | $625.00 | $937.50 |
| CGG Curling | 5/18/19 | Bruce Brown | Work on proposed relief; emails with D. Cross and M. Marks. | 1 | $625.00 | $625.00 |
| CGG Curling | 5/19/19 | Bruce Brown | Work on proposed remedy; draft extensive email to D. Cross explaining need to specify scanner; follow up emails. | 1.5 | $625.00 | $937.50 |
| CGG Curling | 5/20/19 | Bruce Brown | Review and edit affidavits; emails with D. Cross about proposed relief; continued work on brief. | 4.2 | $625.00 | $2,625.00 |
| CGG Curling | 5/21/19 | Bruce Brown | Substantial email to MoFo on CGG's briefing, including summary of new sections and recommendation that CGG file separate brief; review Judge Totenberg's Order; further substantial work on subpoenas and discovery. | 2.5 | $625.00 | $1,562.50 |
| CGG Curling | 5/22/19 | Bruce Brown | Draft new subpoena for Morgan County and subpoena for Rockdale County and work with T. Greenwald regarding service; telephone conference with D. Cross and C. Chapple; telephone calls and emails regarding conference with the court. | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 5/23/19 | Bruce Brown | Prepare for and meet with The Lawyers' Committee about strategy and planning for the case; review discovery needs and staffing. | 5.5 | $625.00 | $3,437.50 |
| CGG Curling | 5/24/19 | Bruce Brown | Prepare for and participate in telephone conference with Judge Totenberg (1.0); extensive follow up discussions with co-counsel (.5); emails and telephone discussion with M. Marks about next steps and substance of follow up brief on necessary parties (1.9); work on brief (1.0). | 4.4 | $625.00 | $2,750.00 |
| CGG Curling | 5/25/19 | Bruce Brown | Work on analysis of proper party defendants. | 1 | $625.00 | $625.00 |
| CGG Curling | 5/26/19 | Bruce Brown | Work on brief in support of motion for preliminary injunction (1.5); work on issue of proper parties, including numerous emails with M. Marks about her knowledge of Georgia procedure and election rules. | 3 | $625.00 | $1,875.00 |
| CGG Curling | 5/27/19 | Bruce Brown | Further work on outline of brief in support for motion for preliminary injunction and communications with M. Marks regarding same; work on discovery plan; extensive work on "proper parties" brief. | 3.8 | $625.00 | $2,375.00 |
| CGG Curling | 5/28/19 | Bruce Brown | Further work preliminary injunction brief, particularly ballot secrecy issue (3.5); substantial work completing, revising, editing, and finalizing brief regarding proper parties, including review of J. Powers' edits and comments (3.0). | 6.5 | $625.00 | $4,062.50 |
| CGG Curling | 5/29/19 | Bruce Brown | Finalize and file brief on proper parties (.5); extensive work on planning for conference with Judge Totenberg, including additional filings and scheduling changes; emails to MoFo about schedule change. | 2.5 | $625.00 | $1,562.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 5/30/19 | Bruce Brown | Email to team about lawyers-only meeting with the Court and how to address CGG's changes to the schedule with MoFo and the Court (.8); draft email to M. Marks regarding same (.3); draft email to D. Cross regarding same (.2); review cases on ballot secrecy (.5). | 1.8 | $625.00 | $1,125.00 |
| CGG Curling | 5/31/19 | Bruce Brown | Work with team to prepare for conference with Judge Totenberg (.5); work on ballot secrecy issues (.8); review Curling MPI and extensive analysis of same and memo to team regarding same (1.5). | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 6/1/19 | Bruce Brown | Communications with M. Marks and team about conference with Judge Totenberg (.8); legal research on anonymous ballot (2.5); finalize memo (section of brief) addressing ballot secrecy (.8). | 4.1 | $625.00 | $2,562.50 |
| CGG Curling | 6/4/19 | Bruce Brown | Review substantial number of emails from Mr. Martin, Deputy Clerk, State Defendants, M. Marks, D. Cross, C. Ichter, E. Rozenberg on: service of document requests; 30b6 depositions; scheduling of the preliminary injunction hearing; and further work on the motion for preliminary injunction; email exchange with D. Cross; email to Mr. Martin. | 4 | $625.00 | $2,500.00 |
| CGG Curling | 6/5/19 | Bruce Brown | Prepare for telephone call with team on discovery; review Judge Totenberg's standing order on protective orders and discovery disputes; review outline of brief; emails with R. McGuire about ballot secrecy section; participate in conference call with J. Powers and team on discovery. | 2.2 | $625.00 | $1,375.00 |
| CGG Curling | 6/6/19 | Bruce Brown | Review discovery plan and emails with team regarding same. | 0.8 | $625.00 | $500.00 |
| CGG Curling | 6/7/19 | Bruce Brown | Work on motion for preliminary injunction brief outline (.8); work on discovery to defendants on unique identifiers (.4); review and edit A. McReynolds declaration (.5); review and edit C. Hoke declaration and email to C. Hoke (.6); emails regarding discovery conference and M. Marks attendance (.3). | 2.6 | $625.00 | $1,625.00 |
| CGG Curling | 6/8/19 | Bruce Brown | Review and revise interrogatories to Defendants on undervotes and unique identifiers (.8); emails about discovery conference and strategy (.7). | 1.5 | $625.00 | $937.50 |
| CGG Curling | 6/9/19 | Bruce Brown | Review transcript of Judge Totenberg's hearing on discovery and email to client regarding implication of same on scope of relief and presentation (.7); work on order of proof (1.3); work on V. Martin declaration and emails regarding same (.6). | 2.6 | $625.00 | $1,625.00 |
| CGG Curling | 6/10/19 | Bruce Brown | Prepare discovery plan and further work on order of proof (4.1); email about protective order (.2); work on discovery of GEMS database and unique identifiers and prepare for Rule 26 conference (3.8); attend Rule 26 conference and follow-up work relating thereto (1.5). | 9.6 | $625.00 | $6,000.00 |
| CGG Curling | 6/11/19 | Bruce Brown | Continual work on the case including emails with K. Anderson about protective order; email about M. Barnes deposition scheduling; work drafting, editing and finalizing RPDs to the State Defenandants; draft and edit Bartow County subpoena; work on race-based claims with the Lawyers' Committee; emails to V. Russo about new system implementation; further work on discovery (actual time over 9 hours). | 8 | $625.00 | $5,000.00 |

1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 6/11/19 | Bruce Brown | Emails about and extensive telephone conference with M. Marks about spoliation claim and related discovery (2.5); draft and revise discovery relating thereto; extensive work on potential amendments; further work on matter. | 4.4 | $625.00 | $2,750.00 | |
| CGG Curling | 6/12/19 | Bruce Brown | Further continuing work on all aspects of case, including outlining brief in support of motion (2.9); work on protective order (.4); emails about discovery to Bartow and Rockdale counties (.4); draft and revise subpoena to counties (.2); emails about Barnes and Barron depositions and related issues (.8); revise requests to admit (.5); multiple communications about State's refusal to disclose information on new system implementation (1.0). | 6.2 | $625.00 | $3,875.00 | |
| CGG Curling | 6/13/19 | Bruce Brown | Work on joint discovery plan (1.5); extensive communications with client about protective order terms (1.3); communications about Barron and Barnes depositions (.5); continue work on declarations in support of brief and brief (3.1). | 6.4 | $625.00 | $4,000.00 | |
| CGG Curling | 6/14/19 | Bruce Brown | Substantial work on brief; work on proposed discovery plan; work on discovery to counties; emails to V. Russo about depositions; review draft discovery dispute statement (actual time 9 plus). | 8.5 | $625.00 | $5,312.50 | 0.5 |
| CGG Curling | 6/15/19 | Bruce Brown | Further work on brief; work on C. Hoke declaration and emails regarding same; draft introductory paragraph. | 5.8 | $625.00 | $3,625.00 | |
| CGG Curling | 6/16/19 | Bruce Brown | Work on brief; further work on declarations; extensive work on argument relating to undervote in African American precincts; draft discovery plan and circulate to the Lawyers' Committee team and to M. Marks; further work on matter. | 4.2 | $625.00 | $2,625.00 | |
| CGG Curling | 6/17/19 | Bruce Brown | Continual work on motion for preliminary injunction, including working on Lt. Governor section of the brief; considering pre-filing evidence; work with C. Hoke on declaration; email to Fulton County counsel; work on secret ballot section of the brief; further work on discovery plan; email to C. Miller for GEMS database production (actual time 9 plus). | 7 | $625.00 | $4,375.00 | 2 |
| CGG Curling | 6/18/19 | Bruce Brown | Further work on all matters in the case, including protective order, GEMS discovery dispute, declaration of C. Hoke, drafting electronic pollbooks section of the brief; numerous communications with opposing counsel and clients; prepare substantial pre-filing of evidence. | 8.6 | $625.00 | $5,375.00 | |
| CGG Curling | 6/19/19 | Bruce Brown | Finalize pre-filing of evidence; continue working on brief; review submission on discovery dispute and emails to D. Brody and M. Marks regarding same; conference call with Defendants' counsel on GEMS database; further work on brief. | 6.4 | $625.00 | $4,000.00 | |
| CGG Curling | 6/20/19 | Bruce Brown | Substantial work on brief, including drafting major sections and editing others, and multiple communications with Lawyers' Committee, M. Marks; further major revisions (actual time 10 plus). | 6 | $625.00 | $3,750.00 | 4 |
| CGG Curling | 6/21/19 | Bruce Brown | Substantial work finalizing and filing brief; draft and revise proposed order and motion; substantial discussion wit E. Rosenberg and team about ballot secrecy issue; finalize and file brief (actual tie 12.5 plus). | 10.8 | $625.00 | $6,750.00 | 1.7 |
| CGG Curling | 6/22/19 | Bruce Brown | Outline topics for Ledford and Barnes deposition; numerous emails with team to plan discovery. | 1.2 | $625.00 | $750.00 | |

| | | | | | |
|---|---|---|---|---|---|
| CGG Curling | 6/23/19 Bruce Brown | Draft and circulate emails on upcoming discovery; emails to Curling team regarding depositions; email to D. Brody about protective order status. | 1.2 | $625.00 | $750.00 |
| CGG Curling | 6/24/19 Bruce Brown | Draft and circulate email to B. Tyson about L. Ledford deposition; email to D. Brody and then Curling about protective order; conference call with Defendants' counsel regarding protective order; conference with M. Marks to plan discovery and hearing preparation; email to J. Powers about initial disclosures. | 5.5 | $625.00 | $3,437.50 |
| CGG Curling | 6/25/19 Bruce Brown | Draft and revise substantive email to C. Correia about FBI's image of elections.kennesaw.edu server; substantial preparation for Barnes deposition; work on discovery disputes. | 3.8 | $625.00 | $2,375.00 |
| CGG Curling | 6/26/19 Bruce Brown | Letter to Judge Totenberg; prepare for Barnes deposition; substantial work relating to subpoenas to counties. | 4.5 | $625.00 | $2,812.50 |
| CGG Curling | 6/27/19 Bruce Brown | Prepare for and take M. Barnes deposition; prepare for J. Doran deposition. | 9 | $625.00 | $5,625.00 |
| CGG Curling | 6/28/19 Bruce Brown | Prepare for J. Doran deposition; travel to Athens; take J. Doran deposition; conference call hearing with Judge Totenberg about GEMS discovery; travel to Atlanta (actual time 9 plus). | 8 | $625.00 | $5,000.00 |
| CGG Curling | 6/29/19 Bruce Brown | Work on GEMS discovery brief; emails with D. Cross and M. Marilyn about server and database issues; address issue of why clients, not just experts, need to see database; emails with D. Brody about brief; conference call with A. Halderman and M. Bernhard about GEMS database issues. | 4.8 | $625.00 | $3,000.00 |
| CGG Curling | 6/30/19 Bruce Brown | Work on GEMS database discovery brief. | 2 | $625.00 | $1,250.00 |
| CGG Curling | 7/1/19 Bruce Brown | Work on GEMS brief; edit D. Brody draft and transmit to D. Cross; review D. Cross and A. Halderman edits (4.8); emails to J. Power and M. Marks about pending discovery issues (.9); email to C. Ichter about spoliation (.5); email to team and D. Cross about M. Beaver deposition and other discover issues (.5). | 6.7 | $625.00 | $4,187.50 |
| CGG Curling | 7/2/19 Bruce Brown | Review Judge Jones' opinion in Fair Fight case and email to team, and D. Cross, regarding same; telephone discussion with J. Powers about initial disclosures; conference call with Fair Fight about common interests; telephone calls with counsel representing third party churches; review Judge Totenberg's decision on discovery and multiple discussions over email and telephone about how to respond with clients, Curling and experts. | 6.5 | $625.00 | $4,062.50 |
| CGG Curling | 7/3/19 Bruce Brown | Work on Plaintiffs' Proposal Regarding Security Protocols for Review of GEMS Database, including drafting with Curling team, multiple discussions with experts and clients. | 3.5 | $625.00 | $2,187.50 |
| CGG Curling | 7/4/19 Bruce Brown | Work on supplemental pleading on W. Digges; numerous communications about protective order with M. Marks and D. Brody; numerous emails with M. Marks about protective order terms; emails about ES&S contract and contractors. | 5.5 | $625.00 | $3,437.50 |
| CGG Curling | 7/5/19 Bruce Brown | Work on GEMS discovery dispute, including emails and telephone calls with defendants, D. Cross and M. Marks; prepare, revise and serve subpoena to ES&S and emails to defendants regarding same; emails and telephone calls regarding A. Halderman deposition; telphone call with defendant laywers; prepare filing regarding Digges. | 5.8 | $625.00 | $3,625.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 7/6/19 | Bruce Brown | Substantial work on GEMS discovery issues; planning for Bartow County deposition, including possibility of witness bringing a DRE machine; emails with J. Belinfante about discovery to third-party churches. | 3.8 | $625.00 | $2,375.00 |
| CGG Curling | 7/7/19 | Bruce Brown | Work on discovery of Bartow County (.2); substantial work on reply brief relating to GEMS discovery, including multiple conferences with M. Marks and D. Cross and team; draft and revise brief; email to C. Ichter about spoliation brief and theory; draft proposed order on GEMS and transmit to D. Cross. | 5.8 | $625.00 | $3,625.00 |
| CGG Curling | 7/8/19 | Bruce Brown | Substantial work on GEMS discovery, including Phase I document discovery, including drafting briefs, emails, proposed orders, and planning conference calls; emails with D. Cross on Shamos and Halderman discovery; substantial work on discovery to third party churches. | 8.8 | $625.00 | $5,500.00 |
| CGG Curling | 7/9/19 | Bruce Brown | Continued work on GEMS discovery, including preparation for call with defense counsel, preparation of brief for filing on Phase I documents, numerous telephone conversations with D. Cross, M. Marks, M. Bernhard and A. Halderman (4.5); work on responses to third party subpoenas, including calls to Fair Fight and Common Cause lawyers and consideration of filing a motion to quash (1.5); further work on discovery to third parties (1.6); review Judge's order on GEMS discovery and emails and telephone calls about how to execute (1.1. | 8.7 | $625.00 | $5,437.50 |
| CGG Curling | 7/10/19 | Bruce Brown | Draft, revise and circulate substantive email to defendants on terms of the proposed protective order, including First Amendment objection to retroactivity provision (1.2); emails about M. Bernhard deposition (.3); multiple emails and calls about plans for DB review and clarification of the Court's order, and non-confidential data extraction (2.5); review State's "mootness" brief (Doc. 466) and multiple emails and telephone conversations about planned response, including working with C. Chapple and D . Cross to draft, revise and file Doc. 470, Plaintiffs' Response to Minute Order (2.8); review Defendants' response brief and substantive email to team about the reply (1.5);  draft response to V. Russo's suggestion that hearing needs to be delayed so that Dr. Shamos can be ready for his deposition (.1). | 8.4 | $625.00 | $5,250.00 |
| CGG Curling | 7/11/19 | Bruce Brown | Review Defendants' Brief in Response to Motion for Preliminary Injunction and start work on reply; email regarding elections at issue; email to J. Belinfante regarding spoliation; prepare for and teleconference with Judge Totenberg on Phase I GEMS data dispute; email to D. Cross about expert review at Ann Arbor; multiple calls with A. Halderman, M. Marks, D. Cross etc. about document extraction; draft, revise and submit operative command language to Ms. Cole; participate in conference call and follow up thereto; extensive work with Curling team on protocol for GEMS database review and extraction; detailed email to M. Bernhard and R. Wilson regarding protocols (actual time 9 plus; 8.2 billed); review and edit motion to quash subpoena to third party churches (1.2). | 9.4 | $625.00 | $5,875.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 7/12/19 | Bruce Brown | Work on reply brief, including telephone calls with all counsel and M. Marks; circulate list of tasks; begin drafting section on municipal elections and what's at stake; emails with A. McReynolds about her testimony; emails with C. Ichter about spoliation; emails with L. Bryan about witnesses on voting problems. | 8.5 | $625.00 | $5,312.50 | |
| CGG Curling | 7/13/19 | Bruce Brown | Communications with M. Bernhard and D. Cross about Defendants' misrepresentations as to how unique the Georgia GEMS database is (.7); work on reply brief (4.9). | 5.6 | $625.00 | $3,500.00 | |
| CGG Curling | 7/14/19 | Bruce Brown | Extensive work on GEMS extraction protocols, including numerous telephone calls and emails with D. Cross, A. Halderman, M. Bernhard and M. Marks, and emails to Defendants' counsel about issues to be resolved per Court's instructions on July 15 or submitted to the Court for determination (4.1); emails and telephone calls about Barnes deposition (.8); emails about Curling and Coalition remedies (1.5); work on reply brief, including ADA section, spoliation section, impact on municipalities, implementation section, and other sections of the brief (3.8 billed, actual time 5 plus). | 10.2 | $625.00 | $6,375.00 | 1.2 |
| CGG Curling | 7/15/19 | Bruce Brown | Draft response to document requests and start responses to interrogatories (1.1); prepare for and participate in call with defense counsel on GEMS discovery and follow up conversation with Curling lawyers regarding same (1.5); work on reply, including ballot secrecy, implementation, and all other sections (6.0 billed, actual time 8.5 plus). | 8.6 | $625.00 | $5,375.00 | 2.5 |
| CGG Curling | 7/16/19 | Bruce Brown | Further work on reply brief (actual time 12 plus). | 11 | $625.00 | $6,875.00 | 1 |
| CGG Curling | 7/17/19 | Bruce Brown | Work on witness list and time of testimony with M. Marks and D. Cross (2.1); work on response to document requests and interrogatories (1.5); work on corrective notice of filing (.5, actual time 1.3); work on reply brief (7.5, actual time 9.5). | 11.6 | $625.00 | $7,250.00 | 2 |
| CGG Curling | 7/18/19 | Bruce Brown | Draft major sections of Reply Brief; review and edit entire draft; finalize and file (6.4); further work on case, including letter to Judge Totentberg, telephone calls about witnesses and Dr. Shamos, work on interrogatory responses; prepare for hearing (3.3). | 9.7 | $625.00 | $6,062.50 | |
| CGG Curling | 7/19/19 | Bruce Brown | Email to J. Belinfante about defendants' discovery requests to Ebenezer church and others; review joint discovery statement on third party discovery; review and analysis of Curling reply brief; consider plaintiffs' remedies and email to D. Cross regarding issues and remedies; work planning the hearing and outlining testimony. | 5.5 | $625.00 | $3,437.50 | |
| CGG Curling | 7/20/19 | Bruce Brown | Prepare for hearing, including telephone conference with J. Power and M. Marks about witnesses; numerous emails with J. Belinfante about production of RFP documents; numerous communications with D. Cross about how to approach remedies (3.8); mutliple emails and telephone calls about public media attacks on State's position (not billed). | 3.8 | $625.00 | $2,375.00 | |
| CGG Curling | 7/22/19 | Bruce Brown | Prepare for hearing. | 11.8 | $625.00 | $7,375.00 | |
| CGG Curling | 7/23/19 | Bruce Brown | Prepare for hearing (actual time 13 plus). | 11 | $625.00 | $6,875.00 | 2 |
| CGG Curling | 7/24/19 | Bruce Brown | Prepare for hearing (actual time 13 plus). | 11 | $625.00 | $6,875.00 | 2 |
| CGG Curling | 7/25/19 | Bruce Brown | Prepare for first day of preliminary injunction hearing; attend hearing; prepare for second day of preliminary injunction hearing (actual time 14 plus). | 12 | $625.00 | $7,500.00 | 2 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 7/26/19 | Bruce Brown | Prepare for day two of injunction hearing; attend injunction hearing (actual time 15.5). | 14 | $625.00 | $8,750.00 | 1.5 |
| CGG Curling | 7/29/19 | Bruce Brown | Review State's announcement on new contract; multiple communications about potential response; draft response brief and emails about content; draft section on why these BMDs violate Georgia law; draft section on why Coalition's remedy is the only feasible and constitutional alternative. | 4.6 | $625.00 | $2,875.00 | |
| CGG Curling | 7/30/19 | Bruce Brown | Revise and finalize brief in response to State's announcement (3.2); telephone calls and emails about State's misleading video (.5); review State's response on spoliation and emails regarding our reply (1.5). | 5.2 | $625.00 | $3,250.00 | |
| CGG Curling | 7/31/19 | Bruce Brown | Work on spoliation reply brief with C. Ichter; review record for determination of status of non-confidential document extraction and emails to D. Cross regarding same. | 2.2 | $625.00 | $1,375.00 | |
| CGG Curling | 8/1/19 | Bruce Brown | Work on spoliation reply brief, including editing C. Ichter draft and emails regarding same; factual research relating to M. Barnes' statements; further work on draft. | 2.9 | $625.00 | $1,812.50 | |
| CGG Curling | 8/2/19 | Bruce Brown | Emails about transcript distribution; work on protocol for GEMS database extraction to non-experts; circulate draft protocol; emails to M. Marks regarding same; transmit to D. Cross and then to B. Tyson. | 2.3 | $625.00 | $1,437.50 | |
| CGG Curling | 8/3/19 | Bruce Brown | Emails to Defendants about extraction protocol. | 0.1 | $625.00 | $62.50 | |
| CGG Curling | 8/7/19 | Bruce Brown | Emails regarding extraction protocol for GEMS databases (.8); extended conference with team about next steps on GEMS, BMDs, certification, discovery, etc. (1.5); follow up on third-party discovery to KSU and ES&S with the LC (.7). | 3 | $625.00 | $1,875.00 | |
| CGG Curling | 8/7/19 | Bruce Brown | Review and edit Curling objection to Secretary's attempt to keep GEMS data under seal (.5); review email from Judge Totenberg, via H. Cole and, with M. Marks, review record and transcript for proper response, draft and revise email to H. Cole (.8). | 1.3 | $625.00 | $812.50 | |
| CGG Curling | 8/8/19 | Bruce Brown | Numerous communications concerning FBI's delivery of image of wiped KSU server. | 0.8 | $625.00 | $500.00 | |
| CGG Curling | 8/11/19 | Bruce Brown | Emails to M. Marks about AEO material, protective order, and GEMS database discovery. | 0.9 | $625.00 | $562.50 | |
| CGG Curling | 8/13/19 | Bruce Brown | Telephone conference with M. Marks and R. Maguire about confidential matters relating to FBI server.; review emails; further work on matter. | 1.5 | $625.00 | $937.50 | |
| CGG Curling | 8/15/19 | Bruce Brown | Review Judge Totenberg's Order granting motion for preliminary injunction in part; numerous telephone calls about decision and next steps; further review of order; review emails about sanctions. | 3 | $625.00 | $1,875.00 | 502.60 |

**PHASE VII**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 8/17/19 | Bruce Brown | Fee application: review authorities; review Judge Totenberg's decision on fees in the Mural Case; review Supreme Court cases on enhancement; draft extensive memo to team on preparing fee application; review Local Rule provisions on two-phased motions; further work on fee application issues. | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 8/18/19 | Bruce Brown | Review de-certification petition; emails with D. Cross about discovery motion; emails about whether to submit de-certification petition to the Court. | 1.5 | $625.00 | $937.50 | |

| | | | | | |
|---|---|---|---|---|---|
| CGG Curling | 8/21/19 Bruce Brown | Work on fee petition, including emails to other counsel and legal research (1.5); consider motion for clarification or status conference regarding implementation issues (.8). | 2.3 | $625.00 | $1,437.50 |
| CGG Curling | 8/22/19 Bruce Brown | Work on motion for fees, including legal research on entitlement. | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 8/23/19 Bruce Brown | Motion for fees: further legal research and drafting of motion; extensive telephone discussion with M. Marks on fees; email to counsel about fees; email to counsel about enhancement (3.5); work on discovery, FBI server, and other issues, including motion for clarification (.9). | 4.4 | $625.00 | $2,750.00 |
| CGG Curling | 8/26/19 Bruce Brown | Draft, revise and circulate draft status report; review edits, revise, and file; substantial revisions to Joint Discovery statement on FBI Server and then revise same and circulate. | 4.7 | $625.00 | $2,937.50 |
| CGG Curling | 8/27/19 Bruce Brown | Revise and circulate Motion for Fees (2.5); prepare for and participate in conference call with Judge Totenberg and follow up thereto (2.0); emails to team and to D. Cross about motion for fees (.5); draft reply brief on issue of discovery of FBI Image (.2). | 5.2 | $625.00 | $3,250.00 |
| CGG Curling | 8/28/19 Bruce Brown | Further work on initial ("Special") Motion for Fees, including consideration of enhancement and fees for successful defense of appeal; telephone call with M. Marks and team on expenses, rates and fees; review and circulate brief (3.7). | 3.7 | $625.00 | $2,312.50 |
| CGG Curling | 8/29/19 Bruce Brown | Edit and finalize fee petition, including collecting rates and hours from each firm, assessing resonble expenses, and tabulating and circulating for review total figures; revise, circulate, edit and file brief (3.5); other work on matter, including review of numbeous email on discovery and pending motions (.8); telephone conference with M. Marks about strategy and next steps (.5). | 4.8 | $625.00 | $3,000.00 |
| CGG Curling | 8/30/19 Bruce Brown | Work on fee substantiation and documentation, including emails regarding selection of expert witness (.5); extensive work on joint brief about server discovery, including review and revision of brief and R. Wilson declaration, and multiple emails or telephone calls with R. Wilson, A. Halderman, M. Marks, D. Cross and A. Uhler (3.1). | 3.6 | $625.00 | $2,250.00 |
| CGG Curling | 9/1/19 Bruce Brown | Draft and revise memorandum on unconstitutionality of presumption of validity of election results and circulate to R. McGuire and M. Marks. | 1.5 | $625.00 | $937.50 |
| CGG Curling | 9/2/19 Bruce Brown | Extensive discussion with M. Marks about North Carolina situation (.5 not billed); review strategy and priorities in Curling, including how and when to advance clarification or reconsideration of injunctive relief (.7); work on priorities and review emails about sanctions and other issues (.4). | 1.1 | $625.00 | $687.50 |
| CGG Curling | 9/4/19 Bruce Brown | Multiple communications following up on proposed changes to Judge Totenberg's Order to address First Quarter 2020 elections, use of GEMS, and epollbook changes, including emails and calls to B. Tyson, M. Marks, V. Russo, D. Cross, and revise proposed proposed order (2.3); review and revise motion for sanctions (1.5). | 3.8 | $625.00 | $2,375.00 |

118.6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CGG Curling | 9/5/19 | Bruce Brown | Multiple communications about whether and how to clarify order to ensure Defendants' compliance with objective of developing a real backup plan; prepare for conference with defendants; telephone "meet and confer" with Defendants' counsel; emails with D. Cross and CGG team regarding same; extended telephone calls with CGG team about next steps and shape of motion to reconsider (actual time 4.4, reduced to 2.0) | 2 | $625.00 | $1,250.00 | 2.4 |
| CGG Curling | 9/6/19 | Bruce Brown | Substantial work on the supplemental complaint, including reviewing drafts, emails with M. Marks and R. McGuire, revisions to supplemental complaint, researching document evidence; review and revise motion for leave; further work on all papers, finalize and file (8; actual time 9 plus, not billed); emails about Defendants' filings under seal (.2). | 0.2 | $625.00 | $125.00 | 8 |
| CGG Curling | 9/7/19 | Bruce Brown | Review and analysis of State's Response Brief on GEMS discovery; forward same to M. Marks; email to counsel about unsealing the brief (.6); extensive conference with M. Marks about implementation of injunctive relief, problems with pilot, issues with certification and other obstacles that the State will face, and to ensure State complies with the Order (2.0); conference with M. Marks on Supplemental Complaint, BMDs, Martin fees and the LC, and related issues (1.0, not billed). | 2.6 | $625.00 | $1,625.00 | |
| CGG Curling | 9/8/19 | Bruce Brown | Further work on motion for sanctions; review M. Marks' edits and further revisions; transmit to D. Cross (1.8); work on fee application, including legal research and emails about fee experts (.8). | 4.6 | $625.00 | $2,875.00 | |
| CGG Curling | 9/9/19 | Bruce Brown | Draft outline of motion for reconsideration/regarding implementation; telephone calls and research regarding Rule 59(e) option (2.3); telephone calls and emails regarding potential fee experts (.2). | 2.5 | $625.00 | $1,562.50 | |
| CGG Curling | 9/10/19 | Bruce Brown | Work on Rule 59(e) motion and brief, including drafting the motion, legal research on types of relief appropriate under Rule 59(e), plaintiffs' right to monitor, and Rule 59(e) standards; start drafting brief (3.4); legal research on fees motion, including review of Kennedy v. Crittenden and other cases where fees were enhanced because of undesirability of the case (.5). | 3.9 | $625.00 | $2,437.50 | |
| CGG Curling | 9/11/19 | Bruce Brown | Revise Rule 59(e) motion and brief in support of motion and circulate to R. McGuire and MRM; email to B. Tyson about what system State planned to use for runoffs of pilots; draft and revise tactical incompetence section; extensive discussion and communications about the State's failure to plan on First Quarter 2020 elections and what to do about it in the Rule 59 motion; review brief and further discussions on framing of requested relief; emails about whether to include relief relating to failure of state to obtain state certification and legal research as to whether abstention doctrines apply (4.5); emails about rates for fee application and briefing schedule for responses to Special Motion (.4). | 4.6 | $625.00 | $2,875.00 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 9/12/19 Bruce Brown | Continue drafting and revising Rule 59(e) motion and brief, including generating and circulating new draft for review;transmit to E. Rosenberg;  considering comments from team; review S. Harvey memo; review M. Marks declaration; continued revision and finalization of motion papers (4.5 (actual time 6 plus)); emails about supplemental complaint, discovery, and K. Anderson proposal (.3, not billed). | 4.5 | $625.00 | $2,812.50 | 0.3 |
| CGG Curling | 9/15/19 Bruce Brown | Further discussions about Rule 59(e) motion; legal research regarind same (actual time 4 plus). | 3.5 | $625.00 | $2,187.50 | 1.5 |
| CGG Curling | 9/16/19 Bruce Brown | Draft status report for M. Marks and R. McGuire; review law on bill of costs. | 1 | $625.00 | $625.00 | |
| CGG Curling | 9/17/19 Bruce Brown | Extensive work on fee petition, including multiple emails about Holcomb & Ward; emails about potential expert on fees (R. Remar); legal research on fee petition (2.5); email to K. Burwell on duty to preserve election electronics (.2). | 2.7 | $625.00 | $1,687.50 | |
| CGG Curling | 9/18/19 Bruce Brown | Further work on fee petition, including emails and telephone calls about R. Remar; telephone conference with M. Marks about fee petition; numerous emails about extension request (2.2); work on motion for sanctions and transmit same to Lawyers' Committee (.4). | 2.6 | $625.00 | $1,625.00 | |
| CGG Curling | 9/19/19 Bruce Brown | Review response to motion for leave to amend and emails to M. Marks and R. McGuire regarding reply (.5); on fee application, email to R. Remar, draft, revise and file motion for extension (.5); emails regarding Curling's bill of costs (.2). | 1.2 | $625.00 | $750.00 | |
| CGG Curling | 9/20/19 Bruce Brown | Continue work on fees application. | 3 | $625.00 | $1,875.00 | |
| CGG Curling | 9/21/19 Bruce Brown | check time; perrin was here; not sure what happened | 0.1 | $625.00 | $62.50 | |
| CGG Curling | 9/24/19 Bruce Brown | Work with M. Marks and R. McGuire to finalize and file reply in support of motion for leave to file supplemental complaint (1.0 not billed) | 0 | $625.00 | $0.00 | |
| CGG Curling | 9/25/19 Bruce Brown | Work on fee application, including emails to team and R. Remar; further work on matter. | 1 | $625.00 | $625.00 | |
| CGG Curling | 9/26/19 Bruce Brown | Continued work on fee application, including preparation of material for R. Remar, conference all with R. Remar, email to team; legal research on recoverability of and range of expenses (2.6); review State's response to Rule 59(e) motion (.7). | 3.3 | $625.00 | $2,062.50 | |
| CGG Curling | 9/27/19 Bruce Brown | Work on fee application, including emails to R. Remar, B. Custer, C. Ichter, R. McGuire, W. Ney, Mr. Marks, and review file (1.5); emails with L. Bryan (.1); transmit brief to R. Wilson (.1). | 1.7 | $625.00 | $1,062.50 | |
| CGG Curling | 9/28/19 Bruce Brown | Initial draft of reply brief in support of Rule 59(e) motion; conference call with R. McGuire and M. Marks about same; email to B. Tyson about State's plans for piloted run-offs. | 3.5 | $625.00 | $2,187.50 | |
| CGG Curling | 9/29/19 Bruce Brown | Continued work on fee application, including work on phasing the case and reviewing work for reasonableness and email to R, McGuire and M. Marks regarding same (1.8); work on motion for sanctions recovery information for motion for sanctions (.5). | 2.3 | $625.00 | $1,437.50 | |
| CGG Curling | 9/30/19 Bruce Brown | Work on narrative for motion for sanctions and draft same into declaration; emails to D. Brody and M. Marks about their costs. | 2.5 | $625.00 | $1,562.50 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| CGG Curling | 10/1/19 | Bruce Brown | Work on reply in support of Rule 59(e) motion, including telephone conference with M. Marks and further drafting of brief (2.5); legal research and emails about Rule 65(c)(2) (.5); work on fee application, including work on evidence of rates and associated communications with E. Rosenberg and R. Remar; email to team about documentation for fee application (2). | 5 | $625.00 | $3,125.00 |
| CGG Curling | 10/2/19 | Bruce Brown | Revise draft of Reply Brief in support of Motion for Rule 59(e) Relief and circulate to M. Marks and R. McGuire (2.4); further work on fee petition, including emails about rates (.5); further work on declaration in support of motion for sanctions (1.5); work with M. Marks on revisions to Reply Brief (2.) (Time reduced 1.0). | 3.6 | $625.00 | $2,250.00 |
| CGG Curling | 10/3/19 | Bruce Brown | Further work on Rule 59(e) reply brief, including telephone discussions about epollbooks and voter registration darabases (1.5); further work on fee application, including telephone conversation with R. Remar and review of his draft declaration (.9). | 2.4 | $625.00 | $1,500.00 |
| CGG Curling | 10/4/19 | Bruce Brown | Revise Rule 69 reply brief. | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 10/5/19 | Bruce Brown | Review Curling motion for preliminary injunction (.5, not billed); further work on motion for sanctions, including revising declaration to correct fee amounts and transmit to D. Cross (.3); work on Rule 59(e) reply and draft, revise and file motion for additional pages (2.6) | 2.9 | $625.00 | $1,812.50 |
| CGG Curling | 10/6/19 | Bruce Brown | Work on Supplemental Brief in Support of Fee Application, including review of early pleadings, consider rand research record of State's positions on various issues; outline brief. | 3.5 | $625.00 | $2,187.50 |
| CGG Curling | 10/7/19 | Bruce Brown | For fee application, review time records from W. Ney and email to him; review time records from the LC and email to E. Rosenberg regarding issues; review submission from R. McGuire (2.3); on Rule 59(e) reply, telephone conversation with M. Marks and further work on draft (.5). | 2.8 | $625.00 | $1,750.00 |
| CGG Curling | 10/8/19 | Bruce Brown | Further work on Rule 59(e) reply; finalize same and file. | 1.3 | $625.00 | $812.50 |
| CGG Curling | 10/9/19 | Bruce Brown | Work on fee application brief (2.0) (time on new MPI not included here). | 2 | $625.00 | $1,250.00 |
| CGG Curling | 10/11/19 | Bruce Brown | Work on fee application; review and organization all declarations; compile time. | 3 | $625.00 | $1,875.00 |
| CGG Curling | 10/12/19 | Bruce Brown | Work on fee application; draft description of work on each phase. | 6.3 | $625.00 | $3,937.50 |
| CGG Curling | 10/13/19 | Bruce Brown | Further work on fee petition; complete description of work in phases; draft and revise section anticipating defendants' response; extensive work on revisions; work on tables of hours; further work on draft (actual time 12.5). | 11 | $625.00 | $6,875.00 |
| CGG Curling | 10/14/19 | Bruce Brown | Edit brief in support of motion for fees; review changes by C. Ichter, E. Rosenberg, R. McGuire and M. Marks. | 3.9 | $625.00 | $2,437.50 | 145.70 |
| | | | TOTAL | 954.5 | | $596,562.50 | 954.50 |

EXHIBIT

2

| Type | Date | Description | Amount |
|------|------|-------------|--------|
| ExpenseEntry | 9/3/18 | Hand Deliveries to Court House and Cobb County | 78.25 |
| ExpenseEntry | 8/4/19 | Georgia Messenger Service three trips in June and July to (a) US Courthouse; (b) Willingham to Mayfair (c) US Courthouse. | 122.81 |
| ExpenseEntry | 8/4/19 | Legal Ease - Morgan County service, Jennifer Doran, Paid BPB Check 1235 | 248 |
| ExpenseEntry | 9/27/19 | Georgia Messenger Service Delivery to Judge Totenberg | 19.95 |
| | | **Total** | 469.01 |

EXHIBIT

D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>DECLARATION OF CARY ICHTER</u>

Pursuant to 28 U.S.C. §174, I certify under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      My name is Cary Ichter.  I am a managing member of Ichter Davis, LLC (the "Firm") and a member in good standing with the State Bar of Georgia.  I offer this Declaration on my personal knowledge to provide the Court in this matter with information concerning services provided, costs advanced, and the value of the service provided to Laura Digges., William Digges, Richardo Davis and Megan Missett (collectively, the "Individual Coalition Plaintiffs") in the above-captioned action.

2.      I graduated *magna cum laude* from the University of Georgia School of law in 1984.  I was admitted to the State Bar of Georgia the same year.  I have practiced law in Georgia full-time and continuously since then.

3.     Attached hereto as Exhibit "1" is a listing of certain tasks performed by myself and other timekeepers in the Firm as well as the date on which the work was done, the time it took to perform each task, and the billing rate of each timekeeper.   The tasks performed by others in the Firm were performed at my direction and under my supervision.

4.     Exhibit "1" shows the Individual Coalition Plaintiffs have incurred $155,912.50 in attorneys' fees through October 4, 2019.

5.     For the work performed in this action, the Firm charged the Individual Coalition Plaintiffs $625, $350, $350, and $195 per hour for work performed by myself, Mr. Davis, Ms. Berland, and Ms. LeMieux, respectively.

6.     In my opinion, these hourly rates are well within the range charged by civil litigation firms for similar work by persons of similar experience and ability. This opinion is based on my experience as a litigator and managing partner of multiple civil litigation firms.  My opinion is also based on my knowledge of wat friends and colleagues in the market charge and the Fulton County *Daily Report*'s most recent billing rate report, a copy of which is attached hereto as Exhibit "B."

7.     I have reviewed Exhibit "1" for the tasks I performed, as well as the tasks performed by Mr. Davis, Ms. Berland and Ms. LeMieux under my supervision. Based on that review and my personal knowledge of the case, the total number of

hours devoted to the various tasks performed and reported in the attached Exhibit "1" were reasonable, necessary and required.  In particular, I exercised billing judgment by omitting time entries from Exhibit "1" that I did not deem reasonable, necessary and/or required.

8.      Attached hereto as Exhibit "2" is a listing of certain expenses incurred by the Individual Coalition Plaintiffs in connection with the above-captioned action. The total of these expenses is $1,772.00 through the end of September 2019.

9.      I am one of the Firm's business records custodians.

10.     Exhibit "1" and Exhibit "2" consist of information (A) made at or near the time fo the described acts or events; (B) made by, or from information transmitted by, persons with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to compile that information.

11.     Based on my review of the Firm's billing records and my knowledge of the case, the total amount of fees and expenses ($157,684.50) incurred by the Individual Coalition Plaintiffs in connection with the above-captioned action were reasonable, necessary, and required.

I certify under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Dated: October 9, 2019.

_____
Cary Ichter

EXHIBIT

1

Ichter Davis Time

| Date | Timekeeper | Time | Reference | Rate | Total | Phase Totals Dollars | Phase Totals Hours |
|------|-----------|------|-----------|------|-------|-----------------------|---------------------|
| **PHASE I** | | | | | | | |
| 11/22/17 | Cary Ichter (CI) - lead attorney | 0.8 | Conference with Ms. Marks. | $625.00 | $500.00 | | |
| 11/23/17 | CI | 1.5 | Review complaint; prepare email to Ms. Marks. | $625.00 | $937.50 | | |
| 11/24/17 | CI | 0.5 | Various communications with Ms. Marks. | $625.00 | $312.50 | | |
| 11/26/17 | CI | 1.3 | Review and revise brief to disqualify Steptoe. | $625.00 | $812.50 | | |
| 12/15/17 | CI | 1.5 | Review exchange of emais; email to Mr. Brown; email to Ms. Marks; email to Mr. Grant; meeting with Mr. Brown regarding involvement; telephone call to Ms. Marks; review order regarding KSU duties transfer to Secretary of | $625.00 | $937.50 | | |
| 12/19/17 | CI | 1.8 | Conference call regarding amending complaint and initial strategy; review analysis of claims by co-counsel; exchange emails with Mr. Brown. | $625.00 | $1,125.00 | | |
| 1/18/18 | CI | 2.3 | Review materials from Ms. Marks regarding problems with DRE voting machines and various cases. | $625.00 | $1,437.50 | | |
| 2/8/18 | William Daniel Davis (WDD) - attorney | 0.6 | Attention to Open Records Act requests. | $350.00 | $210.00 | $6,272.50 | |
| | | | | | | | 10.3 |
| **PHASE II** | | | | | | | |
| 3/6/18 | CI | 4 | Review and revise third amended complaint; conference call with co-counsel and Ms. Marks. | $625.00 | $2,500.00 | | |
| 3/27/18 | CI | 0.3 | Review email from Mr. McGuire; respond to same. | $625.00 | $187.50 | | |
| 3/30/18 | CI | 2 | Conference call with Ms. Marks, and Messrs. Brown, McGuire and Nay regarding status and strategy; conference separately with Mr. Brown regarding same; prepare entry of appearance. | $625.00 | $1,250.00 | | |
| 4/2/18 | CI | 2.3 | Various email communications with Ms. Marks and Mr. Brown; review and revise Ms. Marks' introduction to third amended complaint; exchange emails regarding same and finalize. | $625.00 | $1,437.50 | | |
| 4/2/18 | JL | 0.6 | Revise Entry of Appearance on behalf of Coalition, Digges, and Davis; file and serve same. | $195.00 | $117.00 | | |
| 4/3/18 | CI | 0.8 | Review various emails exchanged among counsel; review various emails from Ms. Marks. | $625.00 | $500.00 | | |
| 4/4/18 | CI | 0.5 | Exchange various emails with Ms. Marks and team. | $625.00 | $312.50 | | |
| 4/4/18 | Janis Lemieux (JL) - paralegal | 0.5 | Download and update electronic case files with recent court-filed pleadings. | $195.00 | $97.50 | | |
| 4/5/18 | CI | 1 | Exchange various emails with Ms. Marks and team; review motion to amend. | $625.00 | $625.00 | | |
| 4/5/18 | JL | 0.3 | Update electronic case files with Coalition Plaintiffs' Motion for Leave to File Third Amended Complaint; calendar response deadline. | $195.00 | $58.50 | | |
| 4/6/18 | CI | 0.3 | Exchange various emails with Ms. Marks and team. | $625.00 | $187.50 | | |
| 4/9/18 | CI | 1.5 | Prepare for conference call; conference call with team and Ms. Marks -- discussion of status, strategy, tactics and schedule. | $625.00 | $937.50 | | |
| 4/10/18 | CI | 0.5 | Exchange emails regarding team meeting and regarding severance and details of demand letter. | $625.00 | $312.50 | | |
| 4/11/18 | CI | 0.3 | Review Fulton County request for status conference; exchange emails regarding same. | $625.00 | $187.50 | | |
| 4/12/18 | JL | 0.1 | Update electronic case files with Response in Support of Motion for Status Conference Hearing. | $195.00 | $19.50 | | |
| 4/14/18 | CI | 0.8 | Review Judge Totenberg's court rules. | $625.00 | $500.00 | | |
| 4/16/18 | CI | 1 | Review spoliation emails from client (Ms. Marks); review demand letter; exchange emails regarding Fulton County's non-compliance with Open Records requests. | $625.00 | $625.00 | | |
| 4/16/18 | JL | 0.2 | Update electronic case files with Response to Motion for Extension of Time; examine correspondence to R. Barnes and update electronic case files with same. | $195.00 | $39.00 | | |

Ichter Davis Time

| 4/17/18 | CI | 0.3 | Review email regarding demonstration of hacking voting machine; exchange emails regarding same. | $625.00 | $187.50 |
|---|---|---|---|---|---|
| 4/20/18 | JL | 0.1 | Retrieve and update electronic case files with Response to Motion to Amend Complaint; update electronic case files with Order. | $195.00 | $19.50 |
| 4/24/18 | CI | 0.5 | Exchange various emails with court regarding scheduling status conference; exchange emails with team regarding status conference and team meeting. | $625.00 | $312.50 |
| 4/25/18 | CI | 0.5 | Review email exchanges among team regarding responsibilities and preparation for status conference. | $625.00 | $312.50 |
| 4/29/18 | CI | 0.3 | Review consolidated reply regarding third amended complaint; exchange emails with team. | $625.00 | $187.50 |
| 4/30/18 | CI | 0.5 | Conference call with individual clients to review status of case and discuss upcoming status conference. | $625.00 | $312.50 |
| 5/1/18 | CI | 3 | Travel to courthouse; attend and participate in status conference; return travel to office. | $625.00 | $1,875.00 |
| 5/2/18 | CI | 3 | Meeting with Ms. marks regarding document preservation issues; conference call with motion lawyers and proposed experts; exchange emails with Cobb County lawyer; send email to Fulton and DeKalb County lawyers. | $625.00 | $1,875.00 |
| 5/2/18 | JL | 0.3 | Update electronic case files with recent motions and orders. | $195.00 | $58.50 |
| 5/3/18 | CI | 4.3 | Conference calls with Ms. Marks and Mr. White; Ms. Marks and Mr. Bryan; Ms. Marks and Mr. Maguire; all counsel regarding preservation issues. | $625.00 | $2,687.50 |
| 5/4/18 | CI | 3.8 | Review and revise letter to Ms. Ringer; review email from Mr. Brown to Mr. Salter; review Mr. Salter's response; prepare reply to Mr. Salter; various email communications with Ms. Marks and Mr. Maguire regarding status and regarding Ringer letter and related topics; conference call with Ms. Marks and Mr. Maguire; telephone call from Mr. White - Cobb County. | $625.00 | $2,375.00 |
| 5/5/18 | CI | 2.3 | Prepare emails to Fulton, DeKalb and Cobb counsel regarding dealing with with release of DREs; review email from Ms. Marks regarding issue in DeKalb County; prepare email to Mr. Salter and Mr. Bennett; various communications with Ms. Marks regarding DeKalb issue and spoliation. | $625.00 | $1,437.50 |
| 5/7/18 | CI | 1.5 | Prepare emails to Cobb County regarding release of DREs; exchange various emails with Ms. Marks and team regarding spoliation issues and upcoming status conference; prepare email from Mr. Salter regarding requests for information; prepare Mr. Smith's response. | $625.00 | $937.50 |
| 5/8/18 | CI | 1 | Exchange emails regarding preservation issues; review and revise email to all counsel regarding same. | $625.00 | $625.00 |
| 5/9/18 | CI | 4.8 | Prepare for conference call with court on various preservation issues; conference cal with team regarding preservation issues and Rule 34 request; conference call with court regarding same; follow-up call with team regarding same. | $625.00 | $3,000.00 |
| 5/10/18 | CI | 4.5 | Review various emails from Mr. Salter, Ms. Marks, Mr. Brown and Mr. Cross; conference with Ms. Marks; review email from court; conference call regarding position regarding preservation of DREs and memory cards; additional emails from DeKalb, Ms. Marks, Mr. Salter, court; travel to courthouse; attend meeting of all parties. | $625.00 | $2,812.50 |
| 5/11/18 | CI | 0.5 | Review various emails. | $625.00 | $312.50 |
| 5/14/18 | CI | 0.4 | Update electronic case files with recent court-stamped pleadings. | $625.00 | $250.00 |

Ichter Davis Time

| 5/14/18 | JL | 0.1 | Update electronic case files with Order; calendar deadline to respond to Court's inquiry re hold on electronic scanning machines. | $195.00 | $19.50 |
|---------|----|-----|------|---------|--------|
| 5/15/18 | CI | 0.5 | Exchange emails with Ms. marks regarding organizational matters and special master issue. | $625.00 | $312.50 |
| 5/16/18 | CI | 0.8 | Review various emails between team and Mr. Salter and Curling plaintiffs' counsel regarding plans for identifying DREs and questions to be presented; exchange emails with team regarding special master idea. | $625.00 | $500.00 |
| 5/17/18 | CI | 0.5 | Exchange various emails regarding status, strategy and special master idea. | $625.00 | $312.50 |
| 5/17/18 | JL | 0.1 | Update electronic case files with Notice of Compliance. | $195.00 | $19.50 |
| 5/20/18 | CI | 1.3 | Various communications with Ms. Marks; prepare email to Mr. Cross; prepare email to Mr. White; prepare email to Ms. Ringer and Mr. Salter. | $625.00 | $812.50 |
| 5/21/18 | CI | 1 | Various communications with Ms. Marks and team regarding weekend events, election upcoming and special master idea. | $625.00 | $625.00 |
| 5/23/18 | CI | 1 | Various communications regarding discovery, spoliation issues and special master issue; telephone call to Mr. Fellows; prepare email to Mr. Cross regarding special master issue; exchange text messages with Ms. Marks regarding testing of DREs; review emails exchanged by team the day before. | $625.00 | $625.00 |
| 5/24/18 | CI | 0.5 | Exchange emails with Mr. Maguire and Ms. Marks. | $625.00 | $312.50 |
| 5/24/18 | JL | 0.1 | Update electronic case files. | $195.00 | $19.50 |
| 5/26/18 | CI | 1 | Review various emails from Ms. Marks and Mr. Maguire regarding status and strategy -- access to functioning DRE; expert testimony -- what is needed and what testing must be done, etc. | $625.00 | $625.00 |
| 5/28/18 | CI | 3 | Research regarding use of special masters; prepare motion to appoint special master; exchange emails with Ms. Marks. | $625.00 | $1,875.00 |
| 5/29/18 | CI | 2 | Review and revise motion to appoint special master; exchange emails with Ms. Marks regarding commencement of discovery; review emails from Mr. Maguire regarding status and strategy; review Howe case; review Monsanto case. | $625.00 | $1,250.00 |
| 6/1/18 | CI | 1.5 | Review various emails regarding stipulation to be filed; review various emails regarding request for special master; conference call with CGG team. | $625.00 | $937.50 |
| 6/5/18 | CI | 0.5 | Review order on Curling amendment; exchange emails regarding same. | $625.00 | $312.50 |
| 6/5/18 | JL | 0.1 | Update electronic case files with recent court-stamped pleadings. | $195.00 | $19.50 |
| 6/8/18 | CI | 0.3 | Exchange various emails regarding Curling plaintiffs' amendment and related matters. | $625.00 | $187.50 |
| 6/9/18 | CI | 0.8 | Prepare email to Mr. Evans regarding newly-filed case against the Secretary of State; exchange with Ms. Marks regarding same. | $625.00 | $500.00 |
| 6/11/18 | CI | 0.3 | Exchange emails regarding use of sequestered DREs in recount. | $625.00 | $187.50 |
| 6/12/18 | CI | 0.5 | Review emails from opposing counsel with recap sheets; review exchange of emails regarding same. | $625.00 | $312.50 |
| 6/12/18 | JL | 0.6 | Upload Fulton DRE precinct reports. | $195.00 | $117.00 |
| 6/12/18 | JL | 1 | Update electronic case files with recent pleadings; upload Cobb County precinct reports. | $195.00 | $195.00 |
| 6/13/18 | JL | 0.1 | Update electronic case files with recent pleadings. | $195.00 | $19.50 |

Ichter Davis Time

| Date | Initials | Hours | Description | Rate | Amount | |
|---|---|---|---|---|---|---|
| 6/13/18 | JL | 0.5 | Upload additional Fulton County precinct reports | $195.00 | $97.50 | |
| 6/13/18 | JL | 0.5 | Upload DeKalb precinct reports. | $195.00 | $97.50 | |
| 6/14/18 | CI | 0.5 | Various email exchanges with Ms. Marks regarding subpoena to DelKalb regarding use of sequestered DREs; exchange emails with team regarding same; exchange of emails with Ms. Marks regarding recently filed voting rights case. | $625.00 | $312.50 | |
| 6/14/18 | JL | 0.2 | Update electronic case files with recent court-filed pleadings. | $195.00 | $39.00 | |
| 6/17/18 | CI | 0.5 | Review various emails regarding issues related to use of sequestered DREs in DeKalb recount. | $625.00 | $312.50 | |
| 6/18/18 | CI | 0.5 | Various email exchanges regarding schedule and subpoenas. | $625.00 | $312.50 | |
| 6/19/18 | CI | 2.8 | Exchange various emails with Mr. McGuire and Ms. Marks; prepare motion to permit issuance of subpoena. | $625.00 | $1,750.00 | |
| 6/20/18 | JL | 0.2 | Update electronic case files with recent pleadings | $195.00 | $39.00 | |
| 6/21/18 | JL | 0.3 | Update electronic case files; examine Fulton DropBox for additional precinct reports. | $195.00 | $58.50 | |
| 6/22/18 | CI | 0.5 | Review exchange of emails regarding release of DREs from sequester and failure of defendants to provide necessary information. | $625.00 | $312.50 | |
| 6/27/18 | CI | 0.3 | Exchange emails regarding missing recap sheets. | $625.00 | $187.50 | |
| 6/30/18 | CI | 1.3 | Prepare letter to all counsel regarding discrepancies regarding Hall and Habersham Counties; conference with Ms. Marks regarding same. | $625.00 | $812.50 | $43,900.50 |
| **PHRASE III** | | | | | | 74.3 |
| 7/5/18 | JL | 0.2 | Update electronic case files with State Defendants' Motion to Dismiss 3rd Amended Complaint; Update electronic case files with DeKalb Defendants' Response in Opposition to Coalition Plaintiffs' Motion for Subpoena. | $195.00 | $39.00 | |
| 7/13/18 | CI | 0.7 | Review recently exchanged emails from Ms. Marks and Mr. Maguire regarding spoliation issues; prepare email to team regarding same; telephone call to Ms. Marks. | $625.00 | $437.50 | |
| 7/16/18 | CI | 1 | Various communications with Ms. Marks; review and revise notice to court regarding preservation order; finalize same and forward to Ms. LeMieux. | $625.00 | $625.00 | |
| 7/16/18 | JL | 0.6 | Finalize, file, and serve Notice of Requested Call. | $195.00 | $117.00 | |
| 7/18/18 | CI | 1 | Exchange emails with team; conference call regarding possible motions and Fulton's default. | $625.00 | $625.00 | |
| 7/18/18 | JL | 0.6 | Update electronic case files with court-stamped Notice of Requested Call (DE 235); update electronic case files with court-stamped docket entries 236-247. | $195.00 | $117.00 | |
| 7/25/18 | CI | 0.5 | Meeting with Ms. Marks and tech guys; exchange emails with Mr. Brown and Mr. Salter regarding phone call. | $625.00 | $312.50 | |
| 7/26/18 | CI | 0.5 | Conference with Mr. Brown regarding conference call with Mr. Salter; conference with Ms. Marks regarding same; prepare memo on feasibility of paper ballot system. | $625.00 | $312.50 | |
| 7/27/18 | CI | 2 | Meeting with Ms. Marks and Mr. Brown regarding media coverage issues; settlement issues; motion for preliminary injunction; conference call with Mr. Kent and Ms. Marks. | $625.00 | $1,250.00 | |
| 8/2/18 | CI | 0.8 | Review motion for preliminary injunction and related emails. | $625.00 | $500.00 | |
| 8/3/18 | CI | 0.3 | Exchange various emails regarding motion for preliminary injunction. | $625.00 | $187.50 | |
| 8/7/18 | JL | 0.2 | Update electronic files with DE 259 Order; calendar deadlines in same. | $195.00 | $39.00 | |
| 8/13/18 | CI | 0.3 | Review various emails from Ms. Marks; review media reports regarding DRE issue. | $625.00 | $187.50 | |

Ichter Davis Time

| 8/15/18 | JL | 0.1 | Update electronic case files with Fulton Defendants' response to motion for preliminary injunction. | $195.00 | $19.50 | | |
| 8/16/18 | JL | 0.1 | Update electronic case files with Request for Oral Argument. | $195.00 | $19.50 | | |
| 8/18/18 | CI | 0.3 | Exchange emails with Ms. Marks regarding writing column. | $625.00 | $187.50 | | |
| 8/21/18 | JL | 0.1 | Update electronic case files. | $195.00 | $19.50 | | |
| 9/4/18 | JL | 0.2 | Update electronic case files with Order rescheduling oral argument on motions; calendar all pre-hearing deadlines. | $195.00 | $39.00 | | |
| 9/6/18 | CI | 0.8 | Conference with Mr. Brown; telephone call to Mr. Hill; prepare email to Mr. Brown regarding special master motion. | $625.00 | $500.00 | | |
| 9/6/18 | JL | 0.1 | Update electronic case file with Notice of Revised Proposed Relief. | $195.00 | $19.50 | | |
| 9/7/18 | JL | 0.1 | Update electronic case files with Notice (DE 282) and Plaintiffs' Joint Submission (DE 283). | $195.00 | $19.50 | | |
| 9/9/18 | CI | 1.5 | Prepare first draft of special master motion; circulate same to team. | $625.00 | $937.50 | | |
| 9/10/18 | JL | 0.5 | Update electronic case files with Notice of Declaration of Demillo; prepare documents for attorney review and preparation for hearing. | $195.00 | $97.50 | | |
| 9/11/18 | CI | 1.5 | Continued work on special master documents; research regarding other cases where special masters have been appointed to monitor implementation of court orders; prepare email to team regarding same. | $625.00 | $937.50 | | |
| 9/11/18 | JL | 0.1 | Update electronic case files with Notices of Declarations. | $195.00 | $19.50 | | |
| 9/12/18 | CI | 10 | Exchange email with Mr. Brown regarding special master issue; all day hearing on motion for preliminary injunction; meeting with all counsel. | $625.00 | $6,250.00 | | |
| 9/13/18 | CI | 0.3 | Review various filing by parties. | $625.00 | $187.50 | | |
| 9/17/18 | JL | 0.1 | Update electronic case files with hearing transcript. | $195.00 | $19.50 | $14,022.50 | 24.5 |
| **PHASE IV** | | | | | | | |
| 9/20/18 | CI | 0.5 | Exchange of emails regarding status and strategy. | $625.00 | $312.50 | | |
| 9/24/18 | CI | 1 | Exchange emails with Ms. Marks; conference call with Ms. Marks, Mr. Brown and amicus lawyers. | $625.00 | $625.00 | | |
| 9/24/18 | JL | 0.1 | Update electronic case files with Motion to Stay. | $195.00 | $19.50 | | |
| 9/25/18 | CI | 0.5 | Review exchange of emails between counsel and Ms. Marks; respond to same. | $625.00 | $312.50 | | |
| 9/27/18 | WDD | 1.1 | At Mr. Ichter's request, review motion to stay pending appeal and begin research for opposition brief. | $350.00 | $385.00 | | |
| 9/27/18 | JL | 0.1 | Update electronic case files with recent pleadings. | $195.00 | $19.50 | | |
| 9/28/18 | CI | 1 | Participate in conference call regarding response to Motion to Stay and following injunction motions; review exchange of email regarding motion to stay. | $625.00 | $625.00 | | |
| 9/28/18 | JL | 0.5 | Update electronic case files with Notice from 11th Circuit. Calendar appeal deadlines. | $195.00 | $97.50 | | |
| 9/30/18 | CI | 7 | Review Third Amended Complaint; review preliminary injunction order; review motion to stay pending appeal; review Curling response to motion to stay; prepare Coalition Plaintiffs' response to motion to stay. | $625.00 | $4,375.00 | | |
| 9/30/18 | JL | 1 | Proof, format, prepare Certificate of Service, and finalize Memorandum in Opposition to Motion to Stay. Email exchange regarding same. | $195.00 | $195.00 | | |
| 10/1/18 | CI | 1.3 | Finalize and file response to motion to stay; exchange email with Mr. Cross; exchange email with Ms. Marks and Mr. Brown; prepare email regarding filing response. | $625.00 | $812.50 | | |
| 10/1/18 | JL | 0.6 | Revise, finalize, file, and serve Memorandum in Opposition to Motion to Stay. | $195.00 | $117.00 | | |

Ichter Davis Time

| 10/2/18 | CI | 0.5 | Exchange of email with Ms. Marks regarding various issues related to new motion; review exchange of email between plaintiffs' counsel regarding same. | $625.00 | $312.50 | $8,208.50 | 15.2 |
|---------|-----|-----|---|---------|---------|-----------|------|

**PHASE V**

| 10/9/18 | JL | 0.3 | Finalize, file, and serve 11th Circuit Appearance of Counsel Form; update electronic case files with NDGA filings. | $195.00 | $58.50 | | |
| 10/12/18 | JL | 0.2 | Update electronic case files with Motion in Support of Stay and Order and with 11th Circuit filings. | $195.00 | $39.00 | | |
| 10/16/18 | JL | 0.1 | Update electronic case files with 11th Circuit filings. | $195.00 | $19.50 | | |
| 10/26/18 | CI | 1 | Prepare email regarding preservation of defective machines; exchange various emails with Ms. Marks and Mr. Salter. | $625.00 | $625.00 | | |
| 10/30/18 | JL | 0.1 | Update electronic case files with recent pleadings. | $195.00 | $19.50 | | |
| 11/14/18 | JL | 1.5 | Upload all 11th Circuit Appendices; research and confirm 11th Circuit Rules and communicate same to counsel. | $195.00 | $292.50 | | |
| 11/15/18 | CI | 0.3 | Exchange various emails regarding oral argument, scheduling and mediation. | $625.00 | $187.50 | | |
| 11/15/18 | JL | 0.1 | Update electronic case files with 11th Circuit Order. | $195.00 | $19.50 | | |
| 11/15/18 | JL | 0.2 | Update electronic case files with Notice; update calendar regarding same. | $195.00 | $39.00 | | |
| 11/20/18 | CI | 0.8 | Review various communications among team and with Mr. Saxter regarding preservation issues. | $625.00 | $500.00 | | |
| 11/26/18 | CI | 0.8 | Conference call regarding appeals, brief and strategy with all plaintiff's counsel; exchange email among CGG team. | $625.00 | $500.00 | | |
| 11/29/18 | JL | 0.3 | Update electronic case file with Entry of Appearance for Curling Plaintiffs in 11th Circuit; review 11th circuit rules regarding briefing. | $195.00 | $58.50 | | |
| 11/30/18 | JL | 4.5 | Proof, finalize Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service of Coalition Plaintiffs/Appellees' Brief. | $195.00 | $877.50 | | |
| 12/3/18 | JL | 2.1 | Edit, confirm all page numbers after edits, revise Table of Contents and Table of Authorities, arrange binding and courier for filing hard copies with Clerk. | $195.00 | $409.50 | | |
| 12/4/18 | JL | 0.5 | Telephone call with 11th Circuit Clerk regarding closure of court on 12/3/18 due to water outage; telephone calls to and from Document Pros confirming delivery of hard copies to Clerk on 12/4/18; email exchange regarding same. | $195.00 | $97.50 | | |
| 12/18/18 | JL | 0.1 | Update electronic case file with Appellants' Reply Brief. | $195.00 | $19.50 | | |
| 1/3/19 | CI | 0.5 | Multiple email exchange regarding scheduling of mediation and attendance of same. | $625.00 | $312.50 | | |
| 1/4/19 | CI | 0.3 | Exchange various emails with team regarding mediation. | $625.00 | $187.50 | | |
| 1/7/19 | CI | 1 | Exchange various emails regarding scheduling; review appellate brief to prepare for mediation. | $625.00 | $625.00 | | |
| 1/7/19 | JL | 0.1 | Update electronic case file and calendar conference call regarding mediation. | $195.00 | $19.50 | | |
| 1/8/19 | CI | 0.5 | Conference call with Ms. Marks and Mr. Maguire regarding mediation planning. | $625.00 | $312.50 | | |
| 1/9/19 | CI | 0.3 | Travel to, participate in mediation; return travel to office; email to team; conference with Mr. Brown. | $625.00 | $187.50 | | |
| 1/14/19 | JL | 0.1 | Update electronic case files with Plaintiff's Reply. | $195.00 | $19.50 | | |
| 2/7/19 | JL | 0.1 | Update electronic case file with Opinion issued by 11th Cir. Court of Appeals. | $195.00 | $19.50 | $5,446.00 | 15.8 |

**PHASE VI**

| 3/8/19 | JL | 0.1 | Update electronic case files with 11th Circuit bill of costs. | $195.00 | $19.50 | | |
| 3/15/19 | JL | 0.2 | Update electronic case files with Notices of Appeal. | $195.00 | $39.00 | | |
| 3/18/19 | JL | 0.1 | Calendar scheduling conference. | $195.00 | $19.50 | | |
| 4/4/19 | JL | 0.1 | Update electronic case files with Motion for Use of Electronic Equipment. | $195.00 | $19.50 | | |
| 4/5/19 | JL | 0.1 | Update electronic case files with pleadings. | $195.00 | $19.50 | | |

Ichter Davis Time

| Date | Initials | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 4/9/19 | CI | 3.3 | Exchange emails with Mr. Brown; review email from Mr. Cross regarding status report idea; review status report; attend status report conference. | $625.00 | $2,062.50 |
| 4/10/19 | JL | 0.5 | Update electronic case files with Defendants' Notice of Filing Exhibits; update electronic case files with Order setting briefing schedule; calendar same. | $195.00 | $97.50 |
| 4/16/19 | JL | 0.2 | Update electronic case files with recent pleadings. | $195.00 | $39.00 |
| 4/22/19 | JL | 0.2 | Update electronic case files with information regarding BMDs. | $195.00 | $39.00 |
| 4/24/19 | JL | 0.1 | Update electronic case files with recent pleadings. | $195.00 | $19.50 |
| 4/30/19 | JL | 0.1 | Update electronic case files with State Defendants' Motion to Quash Subpoena and exhibits to same. | $195.00 | $19.50 |
| 5/9/19 | JL | 0.1 | Update electronic case files with Notice of Appearance. | $195.00 | $19.50 |
| 5/14/19 | JL | 0.1 | Update electronic case files with Coalition Plaintiffs' Response to Defendants' Motion to Quash. | $195.00 | $19.50 |
| 5/16/19 | JL | 0.1 | Update electronic case file with recent pleadings. | $195.00 | $19.50 |
| 5/21/19 | CI | 0.5 | Exchange emails with Ms. Marks regarding special master concept; review exchange of emails on order on motion to dismiss. | $625.00 | $312.50 |
| 5/23/19 | CI | 2.5 | Meeting of team to discuss status, strategy, schedule and special master. | $625.00 | $1,562.50 |
| 5/24/19 | CI | 2.3 | Prepare for, attend and participate in conference call with court regarding scheduling team conference call; conference with Ms. Marks; exchange various emails with team and court. | $625.00 | $1,437.50 |
| 5/24/19 | JL | 0.5 | Update electronic case files with Notice of Plaintiff's Proposed Schedule; calendar proposed deadlines. | $195.00 | $97.50 |
| 5/24/19 | JL | 0.2 | Update electronic case files with Minute Entry regarding 5/24/19 telephonic hearing; update calendar with revised deadlines. | $195.00 | $39.00 |
| 5/25/19 | CI | 0.3 | Review various emails from Ms. Marks and Mr. Brown. | $625.00 | $187.50 |
| 5/26/19 | CI | 0.3 | Review emails from Ms. Marks. | $625.00 | $187.50 |
| 5/27/19 | CI | 1.3 | Review summary of discovery proposed by plaintiffs; exchange emails with Ms. Marks; review and revise redlined version of summary of discovery; prepare email to Mr. | $625.00 | $812.50 |
| 5/28/19 | CI | 1 | Exchange various emails with Ms. Marks, Mr. Brown and Mr.Cross regarding motions and conference with the court. | $625.00 | $625.00 |
| 5/28/19 | JL | 0.4 | Update electronic case files with sample Requests for Admission; finalize, file, and serve Motion for Leave to Bring Electronics Into Court. | $195.00 | $78.00 |
| 5/29/19 | CI | 4 | Review revisions to Curling discovery notice; exchange multiple emails with team regarding Coalition notice; review, revise and file Coalition notice; review brief regarding joinder of municipalities; review order denying motion to dismiss; review motion to permit client representatives to attend hearing; prepare email to court; prepare email to all counsel regarding conference call before Friday meeting with court. | $625.00 | $2,500.00 |
| 5/29/19 | JL | 1 | Revise Requests for Admission to Secretary of State and to Fulton Board; prepare Certificates of Service for both, confirming all current counsel of record with court docket. | $195.00 | $195.00 |
| 5/29/19 | JL | 0.1 | Update electronic case files with recent pleadings. | $195.00 | $19.50 |
| 5/29/19 | JL | 0.3 | Finalize and file Coalition Plaintiff's Notice Regarding Discovery. | $195.00 | $58.50 |

Ichter Davis Time

Ichter Davis Time

| Date | Initials | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 5/30/19 | CI | 7 | Exchange multiple emails with Ms. Marks and team regarding upcoming hearing; prepare various emails to Mr. Cross and his team regarding schedule change; review materials from SAFE Commission; review state defendant's motion to quash Morgan Co. subpoena; prepare for hearing; review plaintiffs' brief related to municipal elections; review Smith v. DeKalb decision; review Fair Fight decision; travel to dinner meeting with team. | $625.00 | $4,375.00 |
| 5/30/19 | JL | 0.5 | Prepare and file Rule 5.4 Certificate regarding Coalition Plaintiffs' Requests for Admission to Secretary of State and Requests for Admission to Fulton Board. | $195.00 | $97.50 |
| 5/31/19 | CI | 5.5 | Prepare for hearing; review defendant's response to notice of discovery; prepare argument in response; travel to courthouse; meeting of all counsel; meeting with Judge Totenberg and all counsel; conference with Mr. Powers; conference with Ms. Marks; exchange emails with team. | $625.00 | $3,437.50 |
| 5/31/19 | WDD | 0.4 | Review, revise, and file Coalition Plaintiffs' notice of amended proposed schedule. | $350.00 | $140.00 |
| 6/2/19 | CI | 0.8 | Exchange emails with team regarding status, strategy and schedule. | $625.00 | $500.00 |
| 6/3/19 | JL | 0.7 | Finalize and file Brody Application for Pro Hac Vice admission; update electronic case files with Defendants' Response to Plaintiffs' Anticipated Discovery Questions; update electronic case files with Curling Plaintiffs' Motion for Injunction and with Minute Entry for 5/31/19 Hearing. | $195.00 | $136.50 |
| 6/4/19 | CI | 1.5 | Review exchange of emails from Ms. Marks, Mr. Brown, Mr. Russo, Mr. Cross, Mr. Rosenberg, Mr. Martin and Mr. Maguire regarding status and schedule; prepare email regarding strategy related to reply brief. | $625.00 | $937.50 |
| 6/4/19 | JL | 0.5 | Email exchange regarding Brody pro hac vice application; update electronic case files with Fulton Answer to Curling Second Amended Complaint and with Fulton Answer to Coalition Plaintiffs' Third Amended Complaint. | $195.00 | $97.50 |
| 6/4/19 | JL | 0.1 | Update electronic case files with Curling Plaintiff's 5.4 Certificate. | $195.00 | $19.50 |
| 6/5/19 | CI | 0.8 | Review email exchange regarding schedule; assessment of Curling discovery and possible conference call; review scheduling order for brief. | $625.00 | $500.00 |
| 6/5/19 | CI | 1.5 | Exchange emails regarding proposed discovery order and 26(f) conference; participate in conference call regarding 26(f) conference and issues related to filing preliminary injunction brief; prepare email to Fulton County and Secretary of State's counsel regarding RFPs and RFAs. | $625.00 | $937.50 |
| 6/5/19 | JL | 0.1 | Update electronic case files with Answer of Secretary of State. | $195.00 | $19.50 |
| 6/6/19 | CI | 0.8 | Exchange emails regarding consent schedule and protective order; review emails from team regarding schedule. | $625.00 | $500.00 |
| 6/6/19 | CI | 1 | Exchange emails with Ms. Marks and Mr. Brown; review various emails regarding filings and discovery schedule. | $625.00 | $625.00 |
| 6/7/19 | JL | 0.1 | Update electronic case files with Fulton Defendant 5.4 Certificate and Discovery Responses. | $195.00 | $19.50 |
| 6/8/19 | CI | 0.8 | Review various emails regarding finalizing and serving discovery requests; review discovery requests; conference with Ms. LeMieux regarding service. | $625.00 | $500.00 |
| 6/10/19 | JL | 0.1 | Update electronic case files with 5.4 Certificate. | $195.00 | $19.50 |
| 6/11/19 | JL | 0.1 | Email exchange regarding D. Brody regarding pro hac vice fees. | $195.00 | $19.50 |

Ichter Davis Time

Ichter Davis Time

| Date | Initials | Hours | Description | Rate | Amount |
|------|----------|-------|-------------|------|--------|
| 6/12/19 | CI | 0.5 | Exchange various emails with team regarding co-counsel agreement, upcoming depositions, and defendants' position regarding mootness. | $625.00 | $312.50 |
| 6/12/19 | JL | 0.1 | Update electronic case files with Fulton Defendant's 5.4 Certificate. | $195.00 | $19.50 |
| 6/13/19 | CI | 0.5 | Review co-counsel agreement; exchange various emails with counsel. | $625.00 | $312.50 |
| 6/14/19 | JL | 0.1 | Update electronic case files with deposition notice. | $195.00 | $19.50 |
| 6/17/19 | JL | 0.1 | Update electronic case files with Secretary of State Defendant's Response to Requests for Admission. | $195.00 | $19.50 |
| 6/17/19 | JL | 0.2 | Update electronic case files with 5.4 Certificate and with Notice of Deposition of Duran; calendar same. | $195.00 | $39.00 |
| 6/18/19 | JL | 0.2 | Update electronic case files with Joint Discovery Plan and Motion to Exceed Page Limitations. | $195.00 | $39.00 |
| 6/24/19 | CI | 0.3 | Review exchange of various emails. | $625.00 | $187.50 |
| 6/25/19 | JL | 0.1 | Update electronic case files with Certificate of Service. | $195.00 | $19.50 |
| 6/25/19 | JL | 0.5 | Update electronic case files with Scheduling Order; calendar deadlines. | $195.00 | $97.50 |
| 6/26/19 | JL | 0.6 | Examine and scan documents produced by Bartow County in response to subpoena. | $195.00 | $117.00 |
| 6/27/19 | JL | 0.5 | Update electronic case files with Coalition Plaintiffs' Motion for Preliminary Injunction and Brief in Support and with Curling Plaintiffs' Notice of Joinder; update electronic case files with Fulton Defendant's 5.4 Certificate; update electronic case files with Secretary of State defendant's pleadings. | $195.00 | $97.50 |
| 6/27/19 | JL | 0.1 | Update electronic case files with Notice of Filing. | $195.00 | $19.50 |
| 6/27/19 | JL | 0.2 | Email exchange forwarding Bartow County document production in response to subpoena. | $195.00 | $39.00 |
| 7/1/19 | JL | 0.5 | Update electronic case files with Supplemental Initial Disclosures, State Defendants' Certificate of Service of Discovery, Minute Sheet, and Amicus Brief. | $195.00 | $97.50 |
| 7/2/19 | CI | 0.5 | Exchange various emails with Mr. Belanfante and team. | $625.00 | $312.50 |
| 7/2/19 | Audrey Berland (AB) - attorney | 0.6 | Numerous email communications with the team regarding strategy call to discuss spoliation and other outstanding issues. | $350.00 | $210.00 |
| 7/2/19 | JL | 0.2 | Update electronic case files with Fulton Defendant's Certificate of Discovery and with deposition notices; calendar same. | $195.00 | $39.00 |
| 7/3/19 | CI | 1 | Review emails exchanged between counsel; conference call with Mr. Marks, Mr. Brown and Mr. McGuire regarding spoliation issue; exchange emails with Mr. Brown regarding same. | $625.00 | $625.00 |
| 7/3/19 | AB | 1.3 | Participate in conference call with the team regarding motion regarding spoliation and other outstanding issues; begin legal research regarding issues raised during the call. | $350.00 | $455.00 |
| 7/3/19 | JL | 0.7 | Update electronic case files with recent docket entries 232 through 234 with exhibits. | $195.00 | $136.50 |
| 7/5/19 | AB | 0.4 | Several email communications with the team regarding management of depositions. | $350.00 | $140.00 |
| 7/6/19 | CI | 0.3 | Exchange various emails with Ms. Marks regarding defending deposition and spoliation issues. | $625.00 | $187.50 |
| 7/8/19 | AB | 4.7 | Prepare Plaintiffs' Second Set of Interrogatories to Defendant Secretary of State; prepare Plaintiffs' Second Requests for Admission to Defendant Secretary of State and the exhibits thereto; prepare Plaintiffs' 5.4 Certificate of Service of Discovery. | $350.00 | $1,645.00 |

Ichter Davis Time

Ichter Davis Time

| Date | Atty | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 7/9/19 | AB | 2.1 | Prepare Notice of Filing Subpoena; begin drafting Subpoena; several email communications regarding the same; email communications regarding the spoliation issues and back-up documentation. | $350.00 | $735.00 |
| 7/11/19 | CI | 0.5 | Review exchange of emails between counsel. | $625.00 | $312.50 |
| 7/12/19 | CI | 3 | Review spoliation materials; begin work on brief -- outline and argument. | $625.00 | $1,875.00 |
| 7/12/19 | AB | 0.8 | Begin legal research regarding spoliation law for the brief. | $350.00 | $280.00 |
| 7/13/19 | CI | 2 | Review spoliation materials; review spoliation caselaw; exchange emails with team. | $625.00 | $1,250.00 |
| 7/13/19 | AB | 4.3 | Continue legal research regarding whether state or federal law applies with regard to assessing a claim of spoliation; prepare short memorandum of law regarding the same; numerous email communications with counsel regarding the spoliation brief and other issues. | $350.00 | $1,505.00 |
| 7/14/19 | CI | 7 | Attention to spoliation portions of brief; various emails with Ms. Marks, Mr. Brown and Mr. Maguire; review all spoliation emails and other communications. | $625.00 | $4,375.00 |
| 7/14/19 | AB | 6.4 | Continue legal research regarding whether state or federal law applies with regard to assessing a claim of spoliation; research for case law supporting the proposition that lawyers representing the government are held to a higher standard of conduct than those representing private parties; prepare memorandum; numerous email and telephone communications with counsel regarding status of briefing. | $350.00 | $2,240.00 |
| 7/15/19 | CI | 1.3 | Continued work on spoliation brief; conference with Ms. Berland regarding same. | $625.00 | $812.50 |
| 7/15/19 | AB | 0.7 | Review and revise briefing regarding plaintiffs' spoliation claim. | $350.00 | $245.00 |
| 7/16/19 | CI | 1 | Exchange emails with team regarding spoliation brief; review Ms. Marks' revisions to brief; prepare email message to team. | $625.00 | $625.00 |
| 7/16/19 | JL | 1.8 | Update electronic case files with State Defendants' Response to Plaintiffs' Proposal re GEMS Database, Defendant Certificate of Discovery, Plaintiffs' Certificate of Discovery, deposition transcripts, Fulton Defendants' Consolidated Response in Opposition to Plaintiffs' Motions for Preliminary Injunction, and Minute Sheet. Download and update electronic case files with deposition transcripts and exhibits. | $195.00 | $351.00 |
| 7/17/19 | CI | 0.8 | Exchange emails with Mr. Brown and Ms. Marks; exchange emails with Mr. Brown; monitor exchange of emails. | $625.00 | $500.00 |
| 7/17/19 | AB | 0.2 | Revise portion of brief regarding spoliation. | $350.00 | $70.00 |
| 7/17/19 | JL | 0.1 | Update electronic case files with Curling pleadings and Order. | $195.00 | $19.50 |
| 7/17/19 | JL | 0.5 | Create online application form; file Pro Hac Vice application for Ezra Rosenberg. | $195.00 | $97.50 |
| 7/18/19 | JL | 1 | Update electronic case files with transcripts and exhibits and pleadings. | $195.00 | $195.00 |
| 7/19/19 | JL | 0.5 | Update electronic case files with recent pleadings. | $195.00 | $97.50 |
| 7/21/19 | CI | 0.5 | Exchange various emails regarding spoliation issue. | $625.00 | $312.50 |
| 7/22/19 | CI | 1 | Conference call with Mr. Brown and Ms. Marks regarding spoliation brief; review and revise spoliation brief. | $625.00 | $625.00 |
| 7/22/19 | JL | 1 | Update electronic case files with recent pleadings; finalize, file and serve pro hac vice application for J. Conarck. | $195.00 | $195.00 |
| 7/23/19 | CI | 1.8 | Continued work on spoliation brief; email to team. | $625.00 | $1,125.00 |

Ichter Davis Time

| | | | | | |
|---|---|---|---|---|---|
| 7/23/19 | JL | 2 | Work on hearing brief; prepare exhibits; update electronic case files with recent pleadings. | $195.00 | $390.00 |
| 7/24/19 | CI | 1.5 | Various modifications to spoliation brief; exchange emails regarding content of brief and plan for filing; review exchange of emails among counsel. | $625.00 | $937.50 |
| 7/24/19 | JL | 2.5 | Prepare all exhibits to hearing brief on spoliation; assist final editing, finalize and prepare service copies of hearing brief; update electronic case files with court-stamped pleadings. | $195.00 | $487.50 |
| 7/25/19 | CI | 3.7 | Travel to and attend preliminary hearing; conference regarding filing of spoliation brief. | $625.00 | $2,312.50 |
| 7/25/19 | JL | 0.5 | Finalize and file hearing brief on spoliation. | $195.00 | $97.50 |
| 7/26/19 | JL | 0.1 | Update electronic case files with court-stamped pleadings. | $195.00 | $19.50 |
| 7/29/19 | CI | 2.3 | Exchange various emails with Ms. Marks and team members regarding barcode system selected by State; review and revise brief in response to State's supplement. | $625.00 | $1,437.50 |
| 7/29/19 | JL | 0.5 | Update electronic case files with court-stamped pleadings and with Shamos transcript. | $195.00 | $97.50 |
| 7/30/19 | CI | 7.5 | Review exchange of emails regarding award for barcoding system; exchange emails with team regarding same; conference with Ms. Marks regarding sanctions motion; conference call with Mr. Brown and Ms. Marks; review defendants' response to spoliation brief; begin work on reply; various communications with Ms. Marks and Mr. Brown regarding same; prepare email to Mr. Rosenberg. | $625.00 | $4,687.50 |
| 7/31/19 | WDD | 1 | Assist Mr. Ichter with research for reply brief on spoliation motion. | $350.00 | $350.00 |
| 7/31/19 | CI | 7 | Continued work on spoliation reply; meeting with Ms. Marks regarding same; transmit circulation copy to team. | $625.00 | $4,375.00 |
| 7/31/19 | JL | 0.5 | Compile documents for preparation of reply to State Defendants' response to spoliation brief. | $195.00 | $97.50 |
| 8/1/19 | JL | 3 | Update electronic case files with court-stamped pleadings; work on Coalition Plaintiffs' Reply Brief on Evidentiary Presumption Arising from Spoliation of Evidence; finalize, file, and serve same. | $195.00 | $585.00 |
| 8/1/19 | CI | 2 | Review and revise spoliation reply based upon comments of all team members; conference with Mr. Brown; conference with Ms. LeMieux regarding logistics of filing. | $625.00 | $1,250.00 |
| 8/2/19 | CI | 0.5 | Exchange emails with Mr. Brown and Ms. Marks. | $625.00 | $312.50 |
| 8/3/19 | CI | 1.5 | Review materials on BMDs and prepare memo regarding same. | $625.00 | $937.50 |
| 8/5/19 | CI | 1.5 | Work on spoliation issue; prepare memo regarding same; prepare email to Mr. Belinfante regarding contacting FBI. | $625.00 | $937.50 |
| 8/6/19 | CI | 3.3 | Review exchange of emails regarding next steps -- certification, implementation and resources for barcode system; conference call with team; exchange emails with Mr. Belinfante regarding FBI; prepare email to Agent Green; prepare email to Mr. Cross; begin to review sanctions materials regarding GEMS. | $625.00 | $2,062.50 |
| 8/7/19 | JL | 0.2 | Update electronic case files with Plaintiffs' Joint Objections to State Defendants' Redactions and Motion to Seal. | $195.00 | $39.00 |

| Date | Atty | Hours | Description | Rate | Amount | | |
|---|---|---|---|---|---|---|---|
| 8/7/19 | CI | 3.5 | Many emails with Mr. Belinfante, Agent Green, Ms. Marks, Mr. Cross, Mr. Draper and Mr. Barlow regarding obtaining FBI image of server; review joint statement. | $625.00 | $2,187.50 | | |
| 8/8/19 | JL | 0.1 | Update electronic case files with Objection to Filing Under Seal. | $195.00 | $19.50 | | |
| 8/8/19 | CI | 1.5 | Various communications with Ms. marks, Mr. Belinfante and Agent Green, as well as forensic techs with Relevant Data. | $625.00 | $937.50 | | |
| 8/9/19 | JL | 0.1 | Update electronic case files with Notice by State Defendants. | $195.00 | $19.50 | | |
| 8/9/19 | CI | 1 | Various attempted communications with Mr. Belinfante and Agent Green; various communications with Ms. Marks regarding image of KSU server; exchange emails with | $625.00 | $625.00 | | |
| 8/10/19 | CI | 0.5 | Review reply brief on GEMS database discovery. | $625.00 | $312.50 | | |
| 8/11/19 | CI | 1 | Prepare email to Ms. Marks regarding sanctions brief; prepare email to Mr. Belinfante and Agent Green regarding KSU server; complete review of GEMS discovery brief; exchange various emails with Ms. Marks regarding server image and sanctions brief. | $625.00 | $625.00 | | |
| 8/12/19 | JL | 0.3 | Identify and print specific pleadings for attorney use in preparation of briefing. | $195.00 | $58.50 | | |
| 8/12/19 | CI | 2 | Telephone call to Mr. Belinfante; various communications with Mr. Brown, Ms. Marks and Mr. Cross; review and revise motion to tax costs (sanctions); prepare email to Agent Green and Mr. Belinfante; review email from Mr. Belinfante; prepare emails to Relevant Data technicians regarding extracting data from FBI drive. | $625.00 | $1,250.00 | | |
| 8/13/19 | CI | 1 | Various emails to and from Ms. Marks, Mr. Belinfante and Relevant Data; review additional changes to sanctions brief; prepare email to Mr. Cross; exchange emails regarding status of image of server; review and revise email to Mr. Belinfante. | $625.00 | $625.00 | | |
| 8/14/19 | CI | 0.3 | Exchange emails with Ms. Marks regarding FBI image issue. | $625.00 | $187.50 | | |
| 8/15/19 | CI | 0.5 | Review court's order on preliminary injunction; exchange emails with team | $625.00 | $312.50 | $75,050.00 | 147.7 |
| **PHASE VII** | | | | | | | |
| 8/21/19 | WDD | 0.3 | Attention to billing records for fee application. | $350.00 | $105.00 | | |
| 8/22/19 | WDD | 2.7 | Continued attention to billing records for fee application. | $350.00 | $945.00 | | |
| 8/28/19 | WDD | 0.1 | Continued attention to billing records in support of fee application. | $350.00 | $35.00 | | |
| 10/4/19 | WDD | 1.4 | Finalize billing records in support of fee declaration. | $350.00 | $490.00 | | |
| 10/8/19 | CI | 2.3 | Prepare fees declaration; review summary of tasks and billings; prepare summary justifying spoliation brief filed in support of preliminary injunction motion. | $625.00 | $1,437.50 | $3,012.50 | 6.8 |
| | | | **TOTAL** | | **$155,912.50** | **$ 155,912.50** | 294.6 |

EXHIBIT

2

Ichter Davis Costs

| Date | Description | Unit Price | Total |
|---|---|---|---|
| April-18 | Copies | $0.15 | $45.00 |
| May-18 | Parking | | $18.00 |
| May-18 | Copies | $0.15 | $56.25 |
| June-18 | Copies | $0.15 | $3.75 |
| July-18 | Westlaw | | $26.14 |
| August-18 | Copies | $0.15 | $31.95 |
| September-18 | Copies | $0.15 | $76.80 |
| October-18 | Westlaw | | $64.08 |
| November-18 | Copies | $0.15 | $237.45 |
| December-18 | Postage | | $2.68 |
| December-18 | Copies/Delivery | | $178.86 |
| December-18 | Copies | $0.15 | $49.95 |
| January-19 | Parking | | $15.00 |
| April-19 | Parking | | $18.00 |
| April-19 | Copies | $0.15 | $10.95 |
| May-19 | Copies | $0.15 | $21.90 |
| June-19 | Postage | $2.20 | $17.60 |
| June-19 | Parking | | $20.00 |
| June-19 | Parking | | $18.00 |
| June-19 | Copies | $0.15 | $141.90 |
| July-19 | Copies | $0.15 | $212.25 |
| August-19 | Westlaw | | $15.46 |
| August-19 | PHV fee | | $150.00 |
| August-19 | PHV fee | | $150.00 |
| August-19 | Filing Fee | | $190.03 |
| | **TOTAL** | | **$1,772.00** |

E
X
H
I
B
I
T

E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DONNA CURLING, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **CA No. 1:17-cv-2989-AT** |
| **v.** | * | |
| | * | |
| **BRAD RAFFENSPERGER, et al.,** | * | |
| | * | |
| **Defendants.** | * | |

## DECLARATION OF EZRA D. ROSENBERG

1. My name is Ezra D. Rosenberg.  I am over the age of twenty-one (21) years of age and am fully competent to execute this Declaration.  I have knowledge of the facts recited here, which are true and correct, and are based on my personal knowledge and my review of the records of the Lawyers' Committee for Civil Rights Under Law (hereinafter, "Lawyers' Committee").

2. I make this Declaration in support of the Special Motion for Attorneys' Fees and Expenses filed by Plaintiffs in this action.

3. The Lawyers' Committee is a nonpartisan, nonprofit organization, formed in 1963 at the request of President John F. Kennedy to enlist the private bar's leadership and resources in combating racial discrimination and the resulting inequality of opportunity. The principal mission of the Lawyers' Committee is to

secure equal justice for all through the rule of law, targeting in particular the inequities confronting African Americans and other racial and ethnic minorities, including, but not limited to, in the field of voting rights.

4. I am the Co-Director of the Voting Rights Project at the Lawyers' Committee and have managed the Lawyers' Committee's attorneys' work on behalf of the plaintiffs in this action.

5. As Co-Director of the Voting Rights Project at the Lawyers' Committee, I am responsible for supervising the handling of this matter by the Lawyers' Committee attorneys and staff, formulating and directing the case strategy, and implementing the strategy for all aspects of the case.

6. I have personal knowledge of the work of the Lawyers' Committees' attorneys and support staff for Plaintiffs on this lawsuit.

## Legal Background and Experience

7. I joined the Lawyers' Committee in November 2014 as Special Senior Counsel in the Legal Mobilization Project before being named Co-Director of the Voting Rights Project in July 2015.

8. Prior to joining the Lawyers' Committee, I was a partner at Dechert LLP, where I served several terms on the firm's Policy Committee, as a Deputy Chair of the firm, and as co-chair of Dechert's Product Liability and Mass Torts Group. I

have been recognized for my litigation work in New Jersey and nationwide by numerous publications, including *Chambers*, *The Legal 500 United States*, *Benchmark Litigation,* and, in 2014, was named as one of the top 500 lawyers in the nation by *Lawdragon*.

9. At Dechert, I was actively involved in *pro bono* representations, including several significant cases with the Lawyers' Committee.  I served as one of the lead counsel challenging Texas's photo ID voting law, served as co-lead trial and lead coordinating counsel in both the Section 2 and Section 5 cases (tried in 2014 and 2012 respectively); served as co-lead trial counsel in a school desegregation case tried in Pitt County, North Carolina in 2013; and supervised the advantageous settlements of a minority profiling case in New Jersey and of a prison conditions case in Passaic County, New Jersey.  In 2014, I successfully argued an appeal on behalf of the NJ-ACLU before the New Jersey Supreme Court, dealing with the admissibility of a defendant's rap lyrics in his attempted murder trial, helping to persuade the court to adopt stringent standards before admitting such evidence.  In 2014, I was named to *The National Law Journal*'s "Pro Bono Hot List" for my role in significant public interest cases of national importance.

10. I began my career with the New Jersey Department of the Public Advocate, focusing on "special project" criminal appeals, arguing several times

3

before the New Jersey Supreme Court, including a landmark case that set the

standard for judicial review of prosecutorial denials of pretrial intervention, and a

series of cases which established protections against discovery by the prosecution

of investigative and expert reports criminal defendants did not intend to use at

trial.  I joined the Lands & Natural Resources Division of the United States

Department of Justice in 1979, where, as a Senior Trial Attorney, I handled a

variety of cases relating to the nation's lands, including the defense of surface

mining regulations and a pre-*Chadha* "one House veto" case under the Wilderness

Act.

     11. I graduated from the University of Pennsylvania, B.A., *Cum laude*, in

1971 and from New York University School of Law, J.D., 1974, *Cum laude*, where

I received the Founders Day Award and was admitted to the Order of the Coif.

I am a past President of the Mercer County, NJ, Bar Association and have received

numerous awards during my career, including the Department of Justice Award for

Meritorious Service in 1982, the New Jersey Commission on Professionalism

"Professional Lawyer of the Year Award" in 1997, the American Jewish Congress'

"Learned Hand Award" in 2011, the Mercer County Bar Association's "Michael J.

Nizolek Award for  Service to the Bar"  in 2014, the Lawyers' Committee's

"Brooke R. Burdette Award for Best New Board Member" in 2014, the ACLU of

NJ's "Legal Leadership Award" in 2015, and a Joint Resolution of the New Jersey Legislature in 2015, honoring my *pro bono* service.

12. I am familiar with the legal work that the Lawyers' Committee staff performed on behalf of Plaintiffs in connection with all aspects of this litigation. Based on my experience and knowledge of that representation, I believe that the work performed was reasonable and appropriate.

13. The work I personally performed in connection with the litigation included developing litigation strategy and oversight, supervising the Lawyers' Committee's attorneys and other staff working on the matter, and reviewing and revising pleadings and other key documents during the course of the litigation. I also attended the preliminary injunction hearing, and worked with Mr. Brown and Mr. Powers prior to and throughout the hearing, deciding on trial strategy and helping in the preparation of witnesses.

14. Due to the complexity of the case, the staffing of this litigation by the Lawyers' Committee included myself, Chief Counsel and Senior Deputy Director Jon Greenbaum, two Counsels, John Powers and David Brody, two legal fellows, Jacob Conarck and Ryan Snow, and two legal interns, Allison Walter and Cheryl

Wilson.[1]  I am familiar with the background and experience of the Lawyers'

Committee staff members who worked on this litigation.

## Timekeepers, Their Experience, and Their Roles

15. Jon Greenbaum is Chief Counsel and Senior Deputy Director of the

Lawyers' Committee. Mr. Greenbaum was promoted to Chief Counsel in

November 2010 after being promoted to Legal Director in March 2009. Mr.

Greenbaum served as the director of the Lawyers' Committee's Voting Rights

Project, where he led its program to achieve equality and protect advances in

voting rights for racial and ethnic minorities and other traditionally disfranchised

groups.

16. Mr. Greenbaum has successfully litigated numerous cases in the federal

courts and has argued before the United States Circuit Court of Appeals.  Notable

cases in which he has played a major role include *Shelby County v. Holder*

(defense of the constitutionality of the Voting Rights Act*), Coalition for Equity*

*and Excellence in Maryland Higher Education, Inc., et al. v. Maryland Higher*

*Education Commission et al.* (desegregation challenge to Maryland's higher

---

[1] I also oversaw work performed on this litigation by one senior attorney, Julie
Houk. As part of their discretionary exercise of billing judgment, Plaintiffs are not
seeking fees for the work of Ms. Houk in this case.  See Exhibit 1, *infra*.

education system); *Arizona v. ITCA* (challenge to Arizona's documentation of citizenship requirement for voter registration applicants); *League of Women Voters v. Brunner* (constitutional challenge to Ohio's administration of elections); and *United States v. Charleston County* (vote dilution challenge to at-large method of elections). In addition, he has testified before Congress, state legislatures and the U.S. Commission on Civil Rights. He has also presented to numerous law schools and governmental, civic and bar associations. In addition, he has regularly appeared on television and radio interviews and in print media.

17. Mr. Greenbaum is co-chair of the Voting Rights Task Force of the Leadership Conference on Civil Rights, the national umbrella organization of American civil rights groups. He served as an adjunct professor at the Georgetown University Law Center and has authored or co-authored several major publications including Toward a More Just Justice System: How Open are the Courts to Social Justice Litigation (2016); "Shelby County v. Holder: When the Rational Becomes Irrational," 57 Howard L.J. 811 (Spring 2014); "Government-Issued Photo Identification and Proof of Citizenship Requirements for Voters," in America Votes! A Guide to Modern Election Law and Voting Rights, American Bar Association (March 2008); and Report: Voting Rights in Alabama: 1982-2006," 17 S. Cal. Rev. L. & Social Justice 249 (Spring 2008).

7

18. Prior to joining the Lawyers' Committee in 2003, Mr. Greenbaum served as senior trial attorney in the Voting Section of the Civil Rights Division at the U.S. Department of Justice from 1997-2003.  While at the Department of Justice, he instituted Voting Rights Act lawsuits on behalf of minority voters nationwide and educated government officials and community members on federal voting protections.  From 1993-1996, he was a litigation associate in the Los Angeles office of Dewey Ballantine LLP.

19. Mr. Greenbaum received his law degree from the University of California at Los Angeles in 1993 and his undergraduate degree from the University of California at Berkeley in 1989.

20. Mr. Greenbaum assisted in developing litigation strategy and oversight, including assisting with the drafting of a protective order and communication and correspondence regarding the issuance of third-party subpoenas.

21. John Powers is a Counsel in the Voting Rights Project of the Lawyers' Committee for Civil Rights Under Law, which he joined in September of 2015. He was admitted to practice law in Maryland in 2013 and in the District of Columbia in 2015, and is admitted to practice before the United States District Court for the District of Columbia.

22. Since joining the Lawyers' Committee, Mr. Powers has led investigations and played a significant role in important voting rights litigation in federal courts in Georgia.  Those cases include *Ga. State Conf. of the NAACP v. Kemp*, No. 2:16-cv-219-WCO (N.D. Ga.) ("exact match" registration verification), *Ga. Coalition for the Peoples' Agenda v. Kemp*, No. 1:18-cv-4727-ELR (N.D. Ga.) (citizenship verification), *Ga. State Conf. of NAACP v. State of Georgia*, No. 1:17-cv-1397-TCB (N.D. Ga.) (registration deadline for federal runoff elections), *Ga. Coalition for the Peoples' Agenda v. Deal*, No. CV416-269 (S.D. Ga.) (registration deadline extension after Hurricane Matthew), *Ga. State Conf. of the NAACP v. Hancock Cty. Bd. of Elecs. & Registration*, No. 5:15-cv-414 (M.D. Ga.) (voter purges), *Ga. State Conf. of NAACP v. Kemp*, No. 1:17-CV-1427-TCB-MLB-BBM (N.D. Ga.) (Georgia State House redistricting plan), and *Ga. State Conf. of NAACP v. Gwinnett County, Ga*., No. 1:16-cv-02852-AT (N.D. Ga.) (Gwinnett County Board of Commissioners and Board of Education redistricting plans).

23. Mr. Powers has spoken and presented on the subject of voting rights at the Georgia NAACP annual convention, at many civic engagement events in Georgia, and other events around the country.  Mr. Powers has also drafted and assisted in the drafting of *amicus* briefs filed by the Lawyers' Committee in the Supreme Court on important voting rights issues.

9

24. Before joining the Lawyers' Committee, he worked for eight years in the Voting Section at the Department of Justice.  Prior to the *Shelby County* decision, Mr. Powers reviewed submissions for preclearance under Section 5 of the Voting Rights Act.  More recently, he was part of DOJ litigation teams challenging the Texas voter ID and North Carolina omnibus election laws in federal district court. While at DOJ, Mr. Powers received the AAG Distinguished Service Award and other awards for his work.

25. Mr. Powers obtained his J.D. from the Georgetown University Law Center in 2013.  He served as Executive Articles Editor for the Georgetown Journal of Law and Modern Critical Race Perspectives.  He has been published in that journal, as well as The Georgetown Law Journal and the Harvard Journal on Racial and Ethnic Justice.  Mr. Powers earned his B.A. in History from Haverford College, and attended Mansfield College at Oxford University for a year.

26. Mr. Powers was the lead attorney assigned to this matter shortly after the Lawyers' Committee was contacted by local partners in May of 2019.  Mr. Powers reviewed the pleadings and drafted a memorandum for approval of the Lawyers' Committee joining the case as counsel.

27. Mr. Powers continued to work on all aspects of the case throughout its duration, including extensive work in overall case strategy and development.  Mr.

10

Powers was the primary contact for the organizational Plaintiff, Georgia Coalition for the Peoples' Agenda, and spent considerable time developing the facts of the case, identifying witnesses, and obtaining relevant documents and material from the clients, witnesses, and other sources. Mr. Powers also communicated with the Defendants' counsel; drafted and revised pleadings; and appeared at telephone conferences with the litigation team and with opposing counsel. Mr. Powers also prepared for and appeared at the July 25-26, 2019 hearing of the Plaintiffs' successful motion for a preliminary injunction.

28. David Brody is Counsel & Senior Fellow for Privacy and Technology at the Lawyers' Committee for Civil Rights Under Law. He joined the Lawyers' Committee in 2017. Previously, he was an Attorney Advisor at the Federal Communications Commission, a law clerk for the Honorable Stephen Glickman of the District of Columbia Court of Appeals, a law clerk for the Honorable Frederick Weisberg of the Superior Court of the District of Columbia, and a legal fellow at the Electronic Privacy Information Center. He is a 2012 graduate of Harvard Law School.

29. Because of his specific experience in electronic privacy issues, Mr. Brody focused, among other things, on research relating to ballot secrecy issues, and drafted and revised the protective order and joint discovery statement,

11

corresponded with co-counsel and opposing counsel to resolve discovery disputes. He also participated in the hearing on the preliminary injunction on July 25-26, 2019, putting a witness on the stand on direct.

30. Jacob Conarck joined the Lawyers' Committee in January 2018 as a Legal Intern in the Voting Rights Project and in September 2018, rejoined the Lawyers' Committee as a Legal Fellow.  Before joining the Lawyers' Committee, he worked for six months as a Legal Intern with Project Vote, and he worked for six months as a Legal Intern with the Fair Elections Legal Network (now known as the Fair Elections Center).  He was admitted to practice law in the District of Columbia in 2019.

31. Mr. Conarck obtained his J.D. from the Antonin Scalia Law School at George Mason University in 2018.  Mr. Conarck earned his B.A. in Political Science from Stony Brook University in 2010.

32. Mr. Conarck conducted legal research; assisted in the drafting of the motion for a preliminary injunction; helped prepare witnesses at the hearing on the motion for a preliminary injunction; and continued to work on the matter during the course of the litigation.

33. Ryan Snow joined the Lawyers' Committee in September 2018 as a Legal Fellow in the Voting Rights Project.  Before joining the Lawyers'

Committee, he worked as a Volunteer Legal Intern in the Voting Section of the

Civil Rights Division of the United States Department of Justice during the

Summer of 2017; as a Legal Intern at the Campaign Legal Center during the

Summer of 2016; and as a Legal Intern at the NAACP Legal Defense and

Educational Fund in January of 2016.  He was admitted to practice law in the

District of Columbia in 2019.

34. Mr. Snow obtained his J.D. from the University of Virginia School of

Law in 2018.  He served as Executive Editor for the Journal of Law & Politics; as

a Teaching Fellow for the Legal Research and Writing Program; and as a Student

Clinician in the Civil Rights Litigation Pro Bono Clinic at the Legal Aid Justice

Center.  He has been published in the University of Pennsylvania Law Review

Online.  Mr. Snow earned a B.A. in Politics and a B.M. in Jazz Studies from

Oberlin College and Conservatory of Music in 2005.

35. Mr. Snow conducted legal research; assisted in the drafting of a motion

to quash; and continued to work on the matter during the course of the litigation.

36. Allison Walter is a law student at Washington University in St. Louis.

She is an executive board member of the school's chapter of the American

Constitution Society and is an active member of the Public Service Advisory

Board and the Women's Law Caucus.

13

37. Ms. Walter earned her undergraduate degree from Saint Louis University where she studied communication and theology. She has also been a regular contributor to the National Catholic Reporter.

38. Ms. Walter assisted in preparation for a deposition, legal research, and editing briefs for the Court.

39. Cheryl Wilson is a law student at UCLA Law School, pursuing a specialization in public interest law. Before attending law school, Ms. Wilson worked at the Leadership Conference for Civil and Human Rights as the assistant to the Executive Director and served in the Department of Justice's Civil Rights Division.

40. Ms. Wilson is a graduate of the University of California, Santa Barbara with a B.A. in History and a specialization in Professional Writing and Editing.

41. Ms. Wilson conducted extensive legal research, assisted in preparation for depositions, and helped draft briefs for the Court.

### The Lawyers' Committee's Representation of Plaintiffs and How the Work for Plaintiffs Was Recorded, Edited and Summarized

42. The Lawyers' Committee was engaged to represent the individual and organizational plaintiffs on a *pro bono* basis, with the understanding that it would

retain the right to petition the court for recovery of its fees and costs in the event the plaintiffs prevailed in their claims.

43. In connection with its representation of the plaintiffs, the Lawyers' Committee agreed that its staff would keep contemporaneous records of the time spent on the matter, which would include sufficient specificity to identify the date, amount of time spent, and the work accomplished by each timekeeper on this matter.

44. Thus, in accordance with these agreements, and as part of the Lawyers' Committee's normal business practice, the assigned attorneys tracked the time they worked on this matter.  As is normal and customary for Lawyers' Committee staff, the attorneys working on this matter entered their time into a computer program designed to track the time that staff devoted to the case.

45. A chart compiling the time incurred by each Lawyers' Committee staff member on this action for which we are seeking payment is attached and incorporated herein by reference as Exhibit 1.  The chart is a summary based upon the electronic time keeping records of the Lawyers' Committee's personnel, which were prepared in the regular and ordinary course of business.  It is the practice of the Lawyers' Committee staff to prepare and keep such records; the records were

15

made and kept by individuals with personal knowledge of the entries; and the entries were made at or about the date reflected in the chart.

46. I have personally reviewed the entries.  In the reasonable exercise of billing judgment, the Lawyers' Committee is not seeking payment for certain billing entries—denoted in Exhibit 1 by "N/C", meaning "No Charge"—for time spent on certain tasks which may have been excessive, duplicative, redundant, inefficient, not directly related to the case, not sufficiently detailed, or for which, in the exercise of my reasonable billing judgment, the Lawyers' Committee has agreed not to seek recovery for one reason or another.  For example, this includes 51.3 hours not charged for most of the work on preparation of a motion to quash that was not properly filed with court. Some of the time expended in connection with the subpoenas (including some research time) is charged, because that work would have been undertaken whether or not a motion was ultimately filed.

47. As shown in the chart attached at Exhibit 1, the Lawyers' Committee seeks reimbursement for the time of its attorneys and staff spent working on this case at the following hourly rates: (1) Ezra Rosenberg, Managing Counsel, $650; (2) Jon Greenbaum, Chief Counsel, $650; (3) John Powers, Counsel, $400; (4) David Brody, Counsel, $400; (5) Jacob Conarck, Legal Fellow, $250; (6) Ryan

16

Snow, Legal Fellow, $250; (7) Allison Walter, Legal Intern, $150; (8) Cheryl Wilson, Legal Intern, $150.

48. Attached hereto as Exhibit 2 is a chart itemizing each of the expenses incurred and paid by the Lawyers' Committee in connection with, and in furtherance of, this litigation and the backup records related to said expenses.  This chart is a summary based upon both the electronic records maintained by the Lawyers' Committee to keep track of expenses for its clients.  The electronic records were prepared in the regular and ordinary course of business; it is the practice of the Lawyers' Committee to prepare and keep such records; the records were made and kept by individuals with personal knowledge of the entries; and the entries were made at or about the date reflected in the chart.

### Hourly Rates Charged by the Lawyers' Committee Compared to Market Rates

49. In connection with this submission, I reviewed hourly rate information available from the online billing rates database of the Fulton County Daily Report, http://data.dailyreportonline.com/GoingRate.asp.  The data available included rates for certain attorneys from mid-size to larger firms from 2006 through 2014.  In some instances, rates were available for attorneys up to 2012, or earlier.  The data

that I reviewed indicated hourly billing rates ranging between $300-$950 for law firm partners and $285-$470 for associates.

50. I also reviewed a number of cases in the United States District Court for the Northern District of Georgia, Atlanta Division, in which Courts have made attorneys' fee awards in recent years.  These cases included: *Andrews v. Autliv Japan Ltd.*, Civ. No. 1:14-CV-3432-WSD (N.D. Ga. July 28, 2017) (finding that hourly rates of $715 and $575 for a senior partner and associate, respectively, at Atlanta's Alston and Bird were reasonable in the Atlanta market for legal services); *Griffin v. General Mills*, 157 F.Supp.3d (N.D. Ga. 2016) (finding that hourly rates of $650 for a senior partner and $455 for a senior associate in an ERISA case were reasonable rates in the Atlanta market); *Newpoint Media Group, LLC v. Mitchell Media Group, LLC*, 2017 WL 5303522 (N.D. Ga. April 14, 2017) (finding senior associate and associate hourly rates of $545, $345, and $325 were reasonable rates in the Atlanta market).

51. Based on my education, experience, and review of the Northern District of Georgia case law and Fulton County Daily Report rate survey, it is my opinion that the hourly rates assigned to the Lawyers' Committee's staff in Exhibit 1 are reasonable and appropriate under the circumstances, particularly in light of the

significant voluntary reductions the Lawyers' Committee has agreed to apply in the exercise of billing judgment.

## The Lawyers' Committee's Attorneys' Fees

52. The total value of attorneys' fees for work performed by the Lawyers' Committee's staff in this matter from May 8, 2019 through October 8, 2019, less the aforementioned line item ("N/C") reductions in the exercise of billing judgment, is in the amount of $266,730.  This encompasses 760.5 hours of work performed in this matter through October 8, 2019.

53. The total number of hours billed and fees requested by the Lawyers' Committee attorneys can be generally broken down by tasks and phases of litigation as follows:

| Phase of Case | Description | Number of Hours Billed | Amount of Fees |
|---|---|---|---|
| LCCRUL investigation and client engagement | Pre-suit factual investigation, initial legal research and client engagement<br><br>(May 8 to May 30, 2019) | 66.7 | $26,755 |
| Phase 1 | Preparation for and participation in discovery, initial disclosures, drafting protective order, preparing for and conducting depositions<br><br>(May 31 to July 11, 2019) | 337.0 | $108,670 |
| Phase 2 | PI hearing preparation, hearing briefing and strategy, participation in PI hearing<br><br>(July 12 to July 26, 2019) | 338.0 | $121,635 |
| Phase 3 | Post-hearing monitoring, protective order issues and drafting fees motion<br><br>(July 27 to October 8, 2019) | 18.8 | $8,045 |
| **Totals** | | **760.5** | **$266,730** |

54. Based upon my education and experience, it is my professional opinion that the work performed and the amount of attorneys' fees sought by the Lawyers' Committee in this application are reasonable in light of the issues presented in this case, the complexity of the case, including that it was a case of first impression in Georgia, the defendants' refusal to resolve the case before the filing of the motion for preliminary relief, and the successful results achieved under the circumstances.

20

55. The Lawyers' Committee's staff worked in a manner in which responsibilities were divided according to the respective skill sets of the lawyers involved.  As Co-Director of the Voting Rights Project at the Lawyers' Committee, my role is similar to that of a senior partner in a private firm.  I am responsible for developing and implementing strategy, assigning and supervising staff and reviewing pleadings and evidence.  As Chief Counsel and Senior Deputy Director, Mr. Greenbaum has a role similar to that of a managing partner in a private law firm and is responsible for guiding the strategic mission of the Lawyers' Committee and supervising the overall strategy of litigation. As Counsel in the Voting Rights Project, Mr. Powers and Mr. Brody have a role similar to that of a 5th-year associate in a private firm.  As Legal Fellows in the Voting Rights Project, Mr. Conarck and Mr. Snow have roles similar to those of junior associates in a private firm.  As Legal Interns in the Voting Rights Project, Allison Walter and Cheryl Wilson have roles similar to those of legal interns in a private firm. Based on these respective roles, the tasks and time spent on the litigation were divided in a manner so as to maximize efficiency while providing competent counsel, prevent unnecessary duplication of work, and ensure that the matter proceeded in an expeditious but orderly fashion.  This division of labor is reflected

21

in the work hours billed and in the dollar amount of the fees being claimed by the Lawyers' Committee attorneys.

## The Lawyers' Committee's Litigation Expenses

56.  In addition to its attorneys' fees, the Lawyers' Committee seeks to recover its expenses of litigation incurred and paid in this matter, in the amount of $13,155.30.

57. These litigation expenses include fees for travel, lodging, and litigation fees through PACER and Westlaw totaling in the amount of $511.53.

58. It is the Lawyers' Committee's standard practice to account for these types of expenses separate from the hourly rates recorded for the legal work performed its attorneys.  Based on my experience, this practice is consistent with the typical practice in all Georgia markets including the United States District Court for the Northern District of Georgia.

## Total Amount Sought for Attorneys' Fees and Related Litigation Expenses
## Incurred Through October 8, 2019

59. The total amount of attorneys' fees and litigation expenses sought by the Lawyers' Committee in this matter for work performed, and expenses incurred, through October 8, 2019, is $279,885.30.  This amount is comprised of $266,730.00 in attorneys' fees and $13,155.30 in litigation expenses.

60. Based on my experience with other litigation matters and my personal knowledge of the facts and circumstances of this litigation, the total amount requested is reasonable and appropriate under the circumstances.

61. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury on this day of October 9, 2019 that the foregoing is true and correct.


_____
Ezra D. Rosenberg, Esq.
Lawyers' Committee for Civil Rights Under Law

23

# EXHIBIT 1

*Lawyers' Committee Hours Worked in Curling v. Raffensperger*

| TIMEKEEPER | DATE | HOURS BILLED | NOTES |
|---|---|---|---|
| Powers | 5/8/2019 | 0.6 | Spoke with M. Marks and B. Brown about the possibility of the Lawyers' Committee representing the Coalition plaintiffs (0.3); separate conversation with E. Rosenberg re: prospect of LC participating this litigation (0.3); begin compiling information for purposes of drafting the litigation approval memorandum (No charge 0.2) |
| Powers | 5/10/2019 | 1.4 | Reviewed pleadings - both sets of Plaintiffs' complaints, motion for PI, Court's order on the PI motion, 11th Circuit opinion on Ds' appeal of the MTD, etc. (1.4); review docket and assemble history of the litigation for purposes of including in a litigation approval memo (No charge 0.8); drafted litigation approval memorandum, reviewed, edited, and sent to E. Rosenberg by email (No charge 2.5); conversation with J. Houk regarding litigation (No charge 0.4); |
| Powers | 5/11/2019 | 0 | Reviewed litigation approval memo in light of E. Rosenberg's feedback, made edits, finalized, and sent to J. Greenbaum for approval (No charge 0.5) |
| Powers | 5/14/2019 | 0.5 | Discussed potential litigation with E. Rosenberg and J. Greenbaum (0.5); make minor changes to approval memo and send email to upper management seeking approval to join litigation along with separate cover memo highlighting important considerations (No charge 0.4); exchange emails with K. Clarke in which I provide answers to her questions (No charge 0.3); email exchange with E. Rosenberg and J. Greenbaum re: possibility of bringing on a law firm as additional support (No charge 0.2) |
| Powers | 5/15/2019 | 0.4 | Prepare, complete, and review pro hac vice application and send to B. Brown |
| Greenbaum | 5/16/2019 | 0 | Discussion w/ E. Rosenberg regarding potential conflict issues (No charge 0.4) |
| Powers | 5/21/2019 | 2.1 | Call with J Greenbaum, E. Rosenberg, M Marks and B Brown in preparation of entry into case (1); read subpoena to be sent to Morgan County Elections Supervisor, make edits in a redline version, and send a cover memo recommending changes to the document request accompanying the subpoena first to J. Greenbaum, J. Houk, and E. Rosenberg, then, upon receiving approval, to M. Marks, B. Brown (1.1) |
| Greenbaum | 5/21/2019 | 0.8 | Call w/co-counsel to discuss next steps and follow up call w/LC attorneys re:same |
| Rosenberg | 5/21/2019 | 1 | Call with J Greenbaum, J Powers, M Marks and B Brown in preparation of entry into case |
| Powers | 5/22/2019 | 1.9 | Travel to Atlanta for meeting with M Marks, B Brown and clients (4.3 - NC); review Plaintiffs' recent status update and recent MTQ from Ds in preparation for meeting (0.4); review subpoenas to Morgan and Rockdale Counties (0.3); phone call with M. Marks re: subpoena-related issues, the upcoming meeting (0.7), exchange emails with M. Marks, B. Brown, others re: logistics for in-person meeting the next day and potential follow-up items/ research projects (0.5) |
| Brody | 5/22/2019 | 0 | Travel to Atlanta for meeting on 5/23 (No Charge - 4) |
| Brody | 5/22/2019 | 3.5 | Reading case materials |
| Rosenberg | 5/22/2019 | 4 | Travel to Atlanta for meeting with M Marks, B Brown and clients; review material in preparation for meeting. |
| Powers | 5/23/2019 | 3.4 | Participate in meeting with M Marks, B Brown, and clients re strategy and next steps (2.4); review recent filings in the case and discuss with M. Marks, B. Brown, etc. (1); prepare initial draft of co-counsel agreement and circulate with B. Brown, C. Ichter, and other co-counsel (No charge 0.7); prepare initial draft of Coalition for Good Governance retainer agreement and send to E. Rosenberg and J. Houk for their review along with cover email (No charge 0.9) |
| Brody | 5/23/2019 | 5 | Meeting with co-counsel and plaintiffs |

| | | | |
|---|---|---|---|
| Brody | 5/23/2019 | 0 | Return travel to Washington (No Charge - 4) |
| Rosenberg | 5/23/2019 | 5 | Participate in meeting with M Marks, B Brown, and clients re strategy and next steps |
| Powers | 5/24/2019 | 0.8 | Travel from Atlanta (NC - 4.5); conversation with M. Marks re: today's status conference and suggesting that I attend the hearing on behalf of Ps (0.5); subsequent email exchange with E. Rosenberg re: same (0.3); |
| Rosenberg | 5/24/2019 | 6 | Travel from Atlanta |
| Brody | 5/27/2019 | 3.5 | Legal analysis of order on motion to dismiss |
| Powers | 5/28/2019 | 1.6 | Reviewed early draft of brief addressing the role of SOS in municipal elections (0.5); conducted research on Westlaw and found relevant additional cases (0.6); drafted new section on proper standard for joining necessary parties (0.4); edited draft of brief and circulated with the team; sent email with additional suggestions of potential case law/evidence in support of our position (0.3) |
| Wilson | 5/28/2019 | 4 | Legal research on Georgia and federal case law relating to the right to a secret ballot |
| Powers | 5/29/2019 | 0.6 | Edited RFAs to State Ds and drafted additional RFAs and circulated to the group for their consideration |
| Brody | 5/29/2019 | 2.7 | Reading case materials; emailing co-counsel re same |
| Wilson | 5/29/2019 | 7.5 | 4 hours: research Georgia and federal case law on the right to ballot secrecy 3.5 hours: draft memo relating to research findings on ballot secrecy |
| Powers | 5/30/2019 | 2.1 | Review and respond to multi-emails to and from M Marks, Cary Ichter, E. Rosenberg, Rob McGuire, and B Brown re: strategy preparation on scheduling/discovery and other issues (0.4); meet with C. Ichter and M. Marks to prepare for/discuss strategy re: scheduling conference with Judge Totenberg scheduled for the next day (1); email team with Judge Jones' ruling in the Fair Fight case and the impact on State Ds' arguments in this case re: SOS role in municipal elections (0.2); review some research on secret ballot issues and exchange emails re: next steps (0.5) |
| Brody | 5/30/2019 | 0.1 | Drafting pro hac application & emailing co-counsel re same |
| Brody | 5/30/2019 | 1.2 | Researching ballot secrecy issues |
| Rosenberg | 5/30/2019 | 1 | Review and respond to multi-emails to and from M Marks, Cary, John Powers, Rob McGuire, and B Brown in preparation for court hearing |
| Wilson | 5/30/2019 | 6 | Finish drafting memo on Georgia and federal case law relating to the right to secret ballot; cite check and transmit to David and John |
| Powers | 5/31/2019 | 3.7 | Preparation for and participation in scheduling/discovery conference with Defendants and then scheduling conference proceedings with the parties and Judge Totenberg (2.6); conversation with M. Marks re: discovery needed, secret ballot issues, and strategy/next steps (0.4); email D. Cross re: list of potential deponents (0.2); drafted memo summarizing major events from hearing, proposing strategy and suggsted next steps, and circulated them with C. Ichter, M. Marks, B. Brown, R. McGuire, E. Rosenberg (0.5) |
| Brody | 5/31/2019 | 3.5 | Researching ballot secrecy issues |
| Wilson | 5/31/2019 | 4.5 | .5 hours: Meeting with David re GA Secret Ballot case 2.5 hours: Research cases related to EPIC ballot privacy and Internet voting case law 1.5 hours: review pleadings in cases Marilyn sent; summarize for David |
| Powers | 6/1/2019 | 0.7 | Exchange multiple emails with team answering questions/ summarizing the events of yesterday's hearings and discussing strategy re: ballot secrecy, deponents, potential briefing schedule, discovery issues |
| Powers | 6/3/2019 | 1.1 | Receipt, review and respond to multi-emails from M Marks and co-counsel re discovery, scheduling and preliminary injunction issues (0.4); review research and exchange emails with D. Brody and C. Wilson re: secret ballot follow-up research (0.4); exchange emails with M. Marks and E. Rosenberg re: declaration of Morgan County elections officials (0.3) |

| Brody | 6/3/2019 | 1.5 | Revising draft protective order |
|---|---|---|---|
| Brody | 6/3/2019 | 0.6 | Phone call with client MRM re: protective order |
| Brody | 6/3/2019 | 1.3 | Researching ballot secrecy issues |
| Rosenberg | 6/3/2019 | 0.6 | Receipt, review and respond to multi-emails from M Marks and co-counsel re discovery, scheduling and preliminary injunction issues |
| Wilson | 6/3/2019 | 7 | Research cases cited in EPIC report and write summary memorandum for David |
| Powers | 6/4/2019 | 0.5 | Receipt, review and respond to multi-emails from M Marks and co-counsel re discovery, scheduling and preliminary injunction issues |
| Rosenberg | 6/4/2019 | 0.5 | Receipt, review and respond to multi-emails from M Marks and co-counsel re discovery, scheduling and preliminary injunction issues |
| Powers | 6/5/2019 | 2.1 | Review proposed schedule for discovery and entire case drafted by Defendants, make edits to the proposed schedule and circulate redline with my revisions, along with a memo providing a rationale for the suggested changes (0.8); review and respond to multi-emails from M Marks and co-counsel re discovery, scheduling and preliminary injunction and protective order issues (0.4); participate in conference call with co-counsel re: schedule and next steps (0.9); |
| Brody | 6/5/2019 | 0.9 | Call with co-counsel re: discovery |
| Rosenberg | 6/5/2019 | 1.6 | Receipt, review and respond to multi-emails from M Marks and co-counsel re discovery, scheduling and preliminary injunction and protective order issues; participate in conference call with co-counsel re next steps |
| Wilson | 6/5/2019 | 2 | Research on Fourth Amendment case law and potential Fourth Amendment ballot privacy claims |
| Brody | 6/6/2019 | 0.8 | Revising draft protective order |
| Wilson | 6/6/2019 | 3 | Research related to Fourth Amendment case law and potential Fourth Amendment ballot secrecy claim |
| Powers | 6/7/2019 | 1.4 | Make edits to the co-counsel agreement and CGG retainer in response to feedback from M. Marks and co-counsel (No charge 0.6); conversation with E. Rosenberg re: M. Marks' questions re: same (No charge 0.2); draft lengthy email explaining reasons to particular changes to each (No charge 0.3); exchange emails re: Rule 26(f) conference (0.3); prepare notes/talking points for Rule 26(f) conference for co-counsel (0.5); exchange emails re: Coalition edits to proposed joint schedule, and clean version of proposed stipulated protective order (0.3); exchange emails re: anticipated response time to subpoena of third-party counties, proposed schedule (0.3) |
| Brody | 6/7/2019 | 2.8 | Drafting discovery requests and emailing co-counsel |
| Wilson | 6/7/2019 | 2.5 | Follow up research on Fourth Amendment case law per David's additional questions |
| Brody | 6/8/2019 | 1.3 | Discovery requests |
| Powers | 6/10/2019 | 1.8 | Exchange emails with B. Brown and M. Marks re: discovery dispute procedure and upcoming fights over ballot image reports and GEMS database (0.3); phone call with M. Marks, B. Brown re: same, Rule 26 meeting, and other issues (0.4); review State Ds' answer to Coalition Ps' complaint; participate in Rule 26(f) conference (1.1) |
| Brody | 6/10/2019 | 0.8 | Reviewing and summarizing Ds Answers |
| Powers | 6/11/2019 | 0.9 | Exchange emails with D. Brody and E. Rosenberg re: rough outline of ballot secrecy claims (0.2); review outline of ballot secrecy claims (0.4); exchange multiple emails with M. Marks, B. Brown, etc. re: need to obtain GEMS database from the State and appropriate dispute resolution process and other next steps (0.3) |
| Brody | 6/11/2019 | 0.5 | Call with MRM and EPIC re: amicus |
| Wilson | 6/11/2019 | 3 | Procedural Due Process Research for GA Ballot Privacy Case |

| Powers | 6/12/2019 | 2.4 | Phone call with M. Marks re: CGG client retainer agreement (No charge 0.3); make edits to CGG client retainer, finalize, and send to M. Marks (No charge 0.5); revise co-counsel agreement and circulate with co-counsel accompanied by memo summarizing contents and changes made (No charge 0.6); review Defendants' draft of joint protective order to identify significant changes they made and send memo identifying problematic places whewre we need to push back (0.6); conversation with Kellie Ottoboni and M. Marks re: research she did into LG undervote during the 2018 election (0.5); email exchange with Kellie Ottoboni and M. Marks re: same (0.3); email exchange with M .Marks re: doc request subpoena to Gwinnett County (0.2); email MoFo co-counsel re: deposition of Lynn Ledford (0.2); Email Gwinnett County counsel Van Stephens re: accepting service of Gwinnett County subpoena (0.3); exchange emails with M. Marks, B. Brown re: priorities and next steps, e.g., Fulton County ROGs, possibility of provding racial impact and bringing a claim under Section 2 of the Voting Rights Act (0.3); |
| Brody | 6/12/2019 | 0.5 | Call w/ Ezra, John re: ballot secrecy claims |
| Brody | 6/12/2019 | 4.2 | Research and drafting discovery dispute materials |
| Wilson | 6/12/2019 | 2.5 | .5 hours: Call with internal team re GA voting machines/ballot secrecy case 2 hours: Research following up from call on state secret ballot claims and potential procedural due process claim |
| Powers | 6/13/2019 | 2.6 | Phone call with M. Marks re: CGG client retainer agreement,  Gwinnett County subpoena, and other discovery issues (0.3); email exchanges with E. Rosenberg and M. Marks re: thereto (0.3); exchange of emails with Chris Brill re: declarations filed to date and possibility of future declaration (0.4); start drafting Gwinnett County subpoena and attachment re: documents requested (1.3); exchange multiple emails with D. Brody, M. Marks re: discovery dispute resolution on GEMS database and issue re: password misunderstanding (0.3) |
| Wilson | 6/13/2019 | 5.5 | Research on potential procedural due process claim |
| Powers | 6/14/2019 | 5.6 | Call with B. Brown, M. Marks, D. Brody re: discovery (0.7); conversation with M. Marks re: Fulton County dropping out of the pilot program for the new machines, discovery issues, strategy issues (0.3); continue drafting, editing, revising document subpoena for Gwinnett County and circulate with the team for feedback (0.7); review feedback given and make edits to the Gwinnett County document subpoena (0.3); send and read emails to M. Marks, R. McGuire, B. Brown, C. Ichter, etc. re: co-counsel agreement and executed retainer agreement (0.3); draft deposition notices for Rick Barron and Lynn Ledford and circulate with co-counsel (0.4); review, edit, finalize edits to joint JPRDP and circulate with all counsel (0.9); review and finalize Ps' edits to the draft stipulated protective order and circulate with all counsel (0.5); conversation with Chris Brill re: work done to date in case and discussion of potential next steps (0.6); conferencce call with M. Marks, B. Brown, D. Brody, and E. Rosenberg re: draft joint discovery plan (0.4); begin drafting Fulton County discovery (0.5) |
| Brody | 6/14/2019 | 4.6 | Researching and drafting discovery documents; corresponding with co-counsel re: same |
| Brody | 6/14/2019 | 1.9 | Call with Bruce, MRM, John re: discovery; drafting joint discovery statement |
| Wilson | 6/14/2019 | 3 | Research re procedural due process issues and write email to David outlining research findings |
| Powers | 6/15/2019 | 3.9 | Continue to draft Second RPDs to Fulton County, edit, and revise document, and circulate same to team for feedback (1.9); exchange emails with M. Marks and B. Brown re: Second RPDs to Fulton County (0.4); review, finalize, and serve Gwinnett County (Ledford) subpoena on counsel (0.7); continue to exchange emails with Gwinnett County counsel Van Stephens re: accepting service of subpoena (0.2); exchange emails with M. Marks re: Bartow County deposition, joint discovery statement on GEMS, and other discovery issues (0.3) |

| Powers | 6/16/2019 | 5.6 | Follow up emails regarding the Fulton County RPDs (0.4); edit, revise, and complete Second RPDs to Fulton County; finalize and serve Second RPDs to Fulton County (0.9); exchange emails with B. Brown, M. Marks, E. Rosenberg re: undervote in the 2018 LG race (0.4); phone call with M. Marks re: undervote in the 2018 LG race (0.6); emails with D. Brody and E. Rosenberg re: KSU-CES GORA request; email E. Rosenberg re: latest draft of the co-counsel agreement for the Curling case and make edits (0.6); review and exchange emails re: CGG efforts to speak with municipalities re: 2019 elections and strategy re: presentation to court (0.4); reviewed factual information, e.g., Dr. Phillip Stark and Chris Brill's expert materials, as well as GA's criticisms in the state election challenge case, then draft a memo re: proposed supplemental declaration from Dr. Stark to prove LG undervote (2.3) |
|---|---|---|---|
| Brody | 6/17/2019 | 3.5 | Researching and drafting discovery documents; corresponding with co-counsel re: same |
| Wilson | 6/17/2019 | 2 | Research on associational standing issues and case law from Common Cause case |
| Wilson | 6/18/2019 | 8 | Legislative history research for Marilyn Marks on HB 540; compose email and memo related to research findings |
| Powers | 6/19/2019 | 1.5 | Calls with M. Marks, B. Brown, J. Conarck, and opposing counsel re: discovery disputes, protective order, etc. (0.5); exchange emails with D. Brody re: deposition of Joseph Kirk (0.2); exchange emails with C. Wilson, M. Marks, B. Brown, etc. re: legislative research on HB 540 (2010), which impacted DRE ballot privacy issue, and review the legislative research (0.8) |
| Brody | 6/19/2019 | 1.5 | Calls with MRM, Bruce, John, Jacob and opposing counsel re discovery disputes, protective order |
| Brody | 6/19/2019 | 0.8 | Revising draft protective order |
| Powers | 6/20/2019 | 1.7 | Draft portion of section of brief related to the undervote in the 2018 LG race and circulate preliminary version with M. Marks, B. Brown, E. Rosenberg by email for purposes of seeking preliminary feedback (1.2); exchange emails with Chris Brill regarding filing a supplemental declaration to accompany the PI motion; draft declaration of Avery Jackson at the request of M. Marks and circulate by email (0.5) |
| Brody | 6/20/2019 | 0.2 | Revising draft protective order and emailing co-counsel re same |
| Brody | 6/20/2019 | 4.5 | Revising joint discovery statement, emailing co-counsel and opposing counsel re same |
| Brody | 6/20/2019 | 1.4 | Revising joint discovery statement and emailing co-counsel re same |
| Wilson | 6/20/2019 | 3 | Research related to procedural due process issues and Due Process Clause original intent |
| Powers | 6/21/2019 | 8.1 | Review draft brief in support of preliminary injunction; edit and comment on brief (2.3); collect edits from D. Brody and J. Conarck and merge with my own edits into a single redline in which I add comments explaining reasoning for changes (0.3); continue drafting/editing and review of the section of the brief addressing the 2018 undervote in Lt. Gov. race and make substantial edits (1.2); review data re: undervote rates in 2018 LG race in the individual Fulton and Lowndes County precincts and exchange emails with M. Marks and B. Brown thereto (0.6); phone call with M. Marks re: undervote and other brief-related issues (0.5); multi-emails to and from D Brody, E. Rosenberg, R. McGuire, and B Brown re ballot secrecy point (0.4); draft, edit, revise declaration of Chris Brill (1.9); exhcange emails with him re: final edits and adding his signature (0.4); finalize and file Brill declaration (0.3); exchange emails re: feasibility-related issues and potential sources of additional evidence (0.2) |
| Brody | 6/21/2019 | 1.1 | Finalizing and filing joint discovery statement |
| Brody | 6/21/2019 | 3.7 | Revising PI motion |

| Conarck | 6/21/2019 | 4.1 | Editing and research for the Lt. Gov section of the BISO PI (1.3); Line editing and cite checking Sections I, II, and IV of BISO PI (2.8) |
|---|---|---|---|
| Rosenberg | 6/21/2019 | 4 | Receipt and review of draft brief in support of preliminary injunction; edit and comment on same; multi-emails to and from D Brody, J Powers, R McNeill and B Browne re ballot secrecy point; re-write ballot-secrecy point; multi-emails to and from J Greenb aum re thereto |
| Powers | 6/22/2019 | 7.9 | Brainstorm session with M. Marks re: drafting list of deposition topics and drafting questions for the deposition of Lynn Ledford (3.5); revise, edit, and refine questions and add additional/follow-up questions after brainstorm session while continuing to draft Ledford deposition outline (2.7); review documents that could potentially be used as exhibits for the Ledford deposition (1.1); talk with M. Marks/other preparation for Ledford deposition (0.6) |
| Powers | 6/23/2019 | 8.3 | Continue drafting, revise, and complete deposition outline for the deposition of Lynn Ledford (4); finalize exhibits for the Ledford deposition for printing (1); review, organize, sort, and tab exhibitts for the Ledford deposition (1.1); review and mark up exhibits for the Ledford deposition (1.7); other preparation for Ledford deposition; conference call re: GEMS database with Tom, M. Marks (0.5) |
| Powers | 6/24/2019 | 9.2 | Prepare for deposition of Lynn Ledford by reviewing and marking up exhibits (0.5); take/participate in the deposition of Lynn Ledford (7); review letters from Bryan Tyson and Gwinnett County attorney Van Stephens objecting to requests for production of certain documents (0.3); exchange emails with M. Marks & Brown re: response to their objections (0.2); review documents produced by Gwinnett County at deposition (0.5); exchange emails re: CGG initial disclosures (0.2); call with M. Marks and B. Brown discussing the deposition of Lynn Ledford (0.5); travel from Gwinnett County to Washington DC (NC - 5.7) |
| Brody | 6/24/2019 | 5.1 | Revising protective order, drafting Joint Disc Stmt, and emailing counsel |
| Brody | 6/24/2019 | 2.9 | Conference call with Ps and Ds re protective order |
| Conarck | 6/24/2019 | 0.6 | Drafting subpoena and notice of deposition for Bartow County Election Supervisor Joseph Kirk |
| Powers | 6/25/2019 | 3.9 | Exchange additional emails re: CGG initial disclosures (0.3); review initial disclosures from the State Ds and Curling Ps (0.3); conversation with M. Marks re: thereto (0.3); phone call with Marion Warren re: voting machine related issues in Hancock County, GA (0.6); draft, edit, revise, and circulate subpoena for Robert Ingram (0.7); email M. Marks, B. Brown, etc. re: thereto (0.2); exchange emails with M. Marks, B. Brown re: deposition of Joseph Kirk (0.2); conversation with M. Marks, B. Brown, E. Rosenberg, D. Brody re; deposition of Joseph Kirk, recap of deposition with Lynn Ledford, subpoenas, additional discovery, next steps (0.6); continue to review documents produced by Gwinnett County at deposition (1) |
| Brody | 6/25/2019 | 5.2 | Conference call with co-counsel; revising and filing PO joint stmt |
| Conarck | 6/25/2019 | 2.6 | Conference call with client and co-counsel (0.5); Drafting initial disclosures (2.1) |
| Powers | 6/26/2019 | 4.3 | Review joint discovery statement re: Halderman deposition (0.4); email to Defendants' counsel Jayson Phillips re: subpoena for Joseph Kirk to see if he will accept service on Kirk's behalf (0.3); draft deposition notices for depositions of Joseph Kirk and Robert Ingram (0.5); review Joseph Kirk subpoena and make notes for potential questions (0.3); emails re: service of the Robert Ingram subpoena (0.3); exchange emails with M. Marks, E. Rosenberg re: case law on duty to notify when organization is sued and a litigation hold is required (0.2); review courtesy letter to Judge Totenberg accompanying binder and email back with feedback (0.3); draft memo based on review exhibits from the Ledford deposition and circulate with the team (1.3); review rough draft of Lynn Ledford deposition transcript (0.8); conversation with M. Marks re: discovery, depositions, strategy (0.4) |
| Brody | 6/26/2019 | 1.5 | Travel to Atlanta for deposition (No Charge - 4); reviewing documents |
| Conarck | 6/26/2019 | 0.3 | Editing and finalizing Kirk subpoena and deposition notice |

| | | | |
|---|---|---|---|
| Wilson | 6/26/2019 | 5.5 | Research question related to litigation holds by government entities or large organizations; type up findings and relay them to the team |
| Powers | 6/27/2019 | 1.4 | Email to Andrea Grant re: deposition of Robert Ingram (0.2);  exchange emails with M. Marks, E. Rosenberg, and B. Brown re: discovery served on M. Marks and subpoenas served on various third parties (0.4); exchange emails with M. Marks re: depositions of Joseph Kirk and Rick Barron (0.3); review documents re: recap sheet details (0.5) |
| Brody | 6/27/2019 | 12 | Barnes deposition and return travel to DC |
| Brody | 6/29/2019 | 5.3 | Corresponding re 6/28 Order and drafting brief in response |
| Brody | 6/30/2019 | 7 | drafting brief in response to 6/28 order, corresponding re same |
| Powers | 7/1/2019 | 0.9 | Exchange emails with D. Brody and E. Rosenberg re: Touhy request to get law enforcement records from the FBI (0.2); review and finalize deposition notices (0.3); exchange emails re: proof of service from Hancock County subpoena and the Bartow County subpoena and court reporter (0.4) |
| Brody | 7/1/2019 | 2.6 | corresponding re brief, editing, preparing to file |
| Powers | 7/2/2019 | 5 | Drafting, editing, reviewing, revising draft of initial disclosures and circulate with the team (1.8); conversation with M. Marks re: initial disclosures (0.4); read, review, and emails re: final transcript of the deposition of Lynn Ledford (0.3); review order on GEMS database and other discovery issues (446) (0.3); exchange emails with court reporter re: depositions of Rick Barron, Joseph Kirk, and Robert Ingram (0.3); draft and send lengthy email to J. Greenbaum, J. Houk, E. Rosenberg re: State Ds' subpoenas to CC GA, ACLU GA, FF GA, GA Dem Party, and the Abrams/Amico campaigns flagging the issue and suggesting next steps, and exchange subsequent emails re: thereto (0.6); draft and send lengthy email and exchange emails with M. Marks, B. Brown, etc. re: upcoming depositions and proposed discovery to obtain and other strategy (0.4); exchange emails with Bartow County attorney Jayson Phillips re: deposition of Joseph Kirk (0.2); exchange emails with Andrea Grant re: deposition of Robert Ingram (0.2); exchange multiple emails with M. Marks and B. Brown re: adding Bates labels to documents and sending documents from the Gwinnett County deposition to be labeled (0.3); email C. Wilson re: discovery requests and initial disclosures (0.2) |
| Wilson | 7/2/2019 | 4 | 1 hour: read background discovery materials and emails<br>.5 hours: Call with Marilyn re Initial Disclosures and other discovery filing priorities<br>2.5 hours: edit Initial Disclosures; read through expert declarations and summarize potential testimony for In itial Disclosures |
| Powers | 7/3/2019 | 2.1 | Exchange email with Bartow County counsel re: missing page from incident report discussed in Bartow County subpoena response and review incident report after it was produced by Bartow County and discuss with M. Marks (0.4); review, finalize, and file initial disclosures (1.2); exchange multiple emails with M. Marks re: witnesses to be added and/or deleted from the initial disclosures (0.3); exchange emails with B. Brown re: edits to initial disclosures (0.2) |
| Greenbaum | 7/3/2019 | 1.2 | Communication w/team regarding third party subpoenas. |
| Wilson | 7/3/2019 | 5.5 | .5 hours: compile finals edits for Initial Disclosures<br>3.5 hours: read first two requests for production of documents; reconcile Marilyn's desired list with past requests for redundancies; draft Third Request for Production of Documents to State Defendan ts<br>.5 hours: search for and gather exhibits from online sources<br>1 hour: reconcile edits and field additional requests from Marilyn |
| Greenbaum | 7/5/2019 | 0.4 | Correspondence w/ team regarding third party subpoenas |
| Wilson | 7/5/2019 | 2 | Finish drafting Third Request for Production of Documents to State Defendants; compile edits from Marilyn; finalize exhibit attachments |

| Powers | 7/7/2019 | 2.7 | Begin drafting outline for the deposition of Joseph Kirk; review subpoena requests to Bartow County and Bartow County responses to subpoena; review Philip Stark and Chris Brill data re: African-American correlation analysis with vote drop-off in the 2018 LG race; call with M. Marks re: African-American correlation analysis with vote drop-off in the 2018 LG race |
|--------|----------|-----|---------------------------------------------------------------------------------------------------------------------|
| Powers | 7/8/2019 | 6.3 | Send lengthy email with M. Marks, E. Brown, C. Wilson, A. Walter, J. Conarck re: instructions for exhibits for the Joseph Kirk deposition (0.4); reviewing documents and begin preparing list of exhibits/outline for Kirk deposition (2.4); conversation with J. Greenbaum and D. Brody re: State Ds' subpoenas on ACLU, Common Cause, Ebenezer Baptist Church, Virginia Highland Church, Baconton Missionary Baptist Church, Fair Fight, Care in Action, etc. (0.3); locate subpoenas and send to J. Greenbaum and D. Brody (0.3); exchange emails with B. Brown and M. Marks re: strategy in how to respond to the subpoenas and filing a motion to quash and communications with groups who had been served with subpoenas (0.5); prepare lengthy email with a list of questions sent to B. Brown and M. Marks re: depositions, Morgan County GORA request, CGG responses to discovery requests, and third party subpoenas, pre-hearing preparation (1); conversation with Sean Young of the Georgia ACLU re: ACLU's planned response to the subpoena that had been served upon them and exchange subsequent emails with E. Rosenberg, J. Houk thereto (0.6); exchange emails with Bruce and team re: assignments that LC would be handling re: drafting reply in support of our PI motion (0.4); exchange emails with M. Marks re: African-American correlation analysis with vote drop-off in the 2018 LG race (0.4); |
| Brody | 7/8/2019 | 0 | drafting motion to quash third party subpoenas, corresponding w/ co-counsel re same (No charge 11.4) |
| Greenbaum | 7/8/2019 | 2.2 | Meeting w/ Lawyers Committee team re: subpoenas and preliminary injunction |
| Wilson | 7/8/2019 | 6 | .5 hours: read and review non-party subpoenas<br>5.5 hours: research First Amendment associational privilege w/r/t non-party subpoenas; type up findings and send to David and John |
| Powers | 7/9/2019 | 7.4 | Continue to draft outline for the deposition of Joseph Kirk; review Bartow County subpoena response in detail for the purpose of identifying deposition exhibits (2.5); review Ledford deposition exhibits and potential exhibits I didn't use with Ledford to ascertain what to use for the Kirk deposition; review news articles quoting Joseph Kirk for deposition prep and potential use as exhibits (0.4); exchange multiple emails with M. Marks, E. Brown, C. Wilson, A. Walter, J. Conarck re: identifying and printing some exhibits for the Joseph Kirk deposition (0.3); email M. Marks, B. Brown, others re: particular article of interest quoting Kirk (0.2); exchange emails with court reporter Marsi re: logistics for the deposition of Joseph Kirk (0.2); sent emails to J. Conarck, D. Brody, A. Walter, and other re: motion to compel the deposition of Robert Ingram; pulled Ingram deposition notice, second deposition notice, and CGG subpoena of Ingram and sent to J. Conarck (0.2); review initial draft of motion to compel prepared by J. Conarck and offer substantial edits (0.8); exchanged emails and spoke with J. Greenbaum regarding response to Andrea Grant's email re: Robert Ingram (0.4); exchanged emails with Andrea Grant re: Hancock County's opposition to the deposition of Robert Ingram (0.3); discussion with J. Greenbaum regarding CGG's response to Ds' discovery requests (0.2); locate State Ds' RPDs to Coalition Ps and sent to J. Greenbaum (0.2); draft memo to C. Wilson, A. Walter, R. Snow, and J. Conarck re: Ledford and Doran depositions highlighting best admissions (0.5); exchange emails with D. Brody and J. Greenbaum re: pushing ahead with ADR process in addition to preparing motion to quash re: third party subpoenas to ACLU, CC, churches, FF, etc. (0.3); speak with Colin McRae from Chatham County re: possibility of filing a declaration re: impact on Chatham County (0.4); draft declaration for Colin McRae and email to him for review (0.5) |

| | | | |
|---|---|---|---|
| Brody | 7/9/2019 | 0 | drafting motion to quash third party subpoenas, corresponding w/ co-counsel re same (No charge 8.8) |
| Conarck | 7/9/2019 | 0 | Research and drafting Unduly Burdensome section of motion to quash (No charge 2.3); Research and drafting Attorney/Client and Work Privilege section of motion to quash (No charge 2.8) |
| Greenbaum | 7/9/2019 | 0 | Review and revise Houk declaration (No charge ,6) review and revise motion for protective order (No charge .8); communications w/co-counsel regarding various issues; participate in meet and center re: subpoenas (No charge .3) |
| Walter | 7/9/2019 | 7 | Preparing/printing/organizing 33 exhibits for deposition - 7 hours |
| Wilson | 7/9/2019 | 8 | 2.5 hours: research question regarding standing to move to quash a third party subpoena and whether a party can seek a protective order to provide the same relief; compile findings and email to team<br>.5 hour: narrow research question on 11th circuit prece dent related to proportionality/relevance standard for subpoenas<br>5 hours: identify exhibits, compile PDFs, print all exhibits, organize into folders and red wells |
| Powers | 7/10/2019 | 6 | Drafting deposition outline, reviewing documents and emails from Bartow County subpoena response, printing, labeling, and organizing exhibits, and otherwise preparing for the deposition of Joseph Kirk (3.9); send and review multiple emails to and from J Greenbaum, J Houk and E. Rosenberg re motion to quash (No charge 0.4); review and comment on draft brief (No charge 0.5); review emails re p.i. reply brief (0.3); multiple emails, phone call with Andrea Grant re: deposition of Robert Ingram (0.5); review, work on, edit, revise motion to compel the deposition of Robert Ingram (0.9); internal discussions with J. Greenbaum, J. Houk, J. Conarck, and M. Marks re: filing motion to compel the deposition of Robert Ingram (0.4); travel from Washington DC to Cartersville, GA (No Charge - 6.5) |
| Brody | 7/10/2019 | 0 | drafting motion to quash third party subpoenas, corresponding w/ co-counsel re same (No charge 4.5) |
| Greenbaum | 7/10/2019 | 1.2 | call w/common case re: subpoena.(.3); review and revise motion for protective order (No charge 2.2); call w/Ezra Rosenberg re : various case issues (.4) communications w/co-counsel re: Hancock County deposition (.5) |
| Rosenberg | 7/10/2019 | 0 | Multi-emails to and from J Greenbaum, J Houk and J Powers re motion to quash; review and comment on draft brief; review emails re p.i. reply brief (No charge 2.5) |
| Snow | 7/10/2019 | 0 | Combined versions and edited Motion to Quash/for PO on 3rd party subpoenas (No charge/ 4.5) |
| Walter | 7/10/2019 | 4 | Research + drafting response to deposition argument about Rule 30 vs. Rule 45 - 4 hours |
| Wilson | 7/10/2019 | 7 | 4 hours: common interest privilege research; compile findings and email to team<br>1 hour: Prep for Doran deposition project; communicate with Marilyn re things to look for in deposition<br>.5 hours: research local rules, various questions for filings<br>1.5 hour s: review docket and read pleadings to identify whether judge previously ruled on potential consolidation with the Fair Fight case; identify claims made in Fair Fight complaint |
| Powers | 7/11/2019 | 9.1 | Review and mark up exhibits and outline in preparation for the deposition of Joseph Kirk (1.2); taking the deposition of Joseph Kirk (7.1); review redraft of motion to quash (No charge 0.7); send and revise multiple emails to and from D Cross, M Marks and B Brown re thereto (0.3); send and review multi-emails re p.i. response brief (0.3); exchange emails with David Cross and Andrea Grant re: Hancock BOER subpoena (0.2); travel from Bartow County to Washington DC (5.9 - NC); |
| Brody | 7/11/2019 | 0 | drafting motion to quash third party subpoenas, corresponding w/ co-counsel re same (No charge 6.4) |

| Conarck | 7/11/2019 | 4.6 | Meeting to discuss database analysis (0.5); Reading Defendants' response briefs and drafting summaries (4.1) |
|---|---|---|---|
| Greenbaum | 7/11/2019 | 1 | Review and revise motion for protective order (No charge 1.4); meeting re: various case issues (1) |
| Rosenberg | 7/11/2019 | 0 | Comprehensive redraft of motion to quash; multi- emails to and from D Cross, M Marks and B Browne re thereto; confer at length with J Greenbaum re thereto; multi-emails re p.i. response brief; confer with J Greenbaum and D Brody re thereto;  meet with J  Greenbaum, D Brody, J Cornack, R Snow and legal interns re thereto (No charge 3.5) |
| Snow | 7/11/2019 | 1.5 | Finalized Motion to Quash/PO (No charge 1.5). Met with team to discuss action items (2.5). |
| Walter | 7/11/2019 | 7 | Meeting about database review - 1 hour<br>Editing and finalizing exhibits - 4 hours<br>Compiling exhibits A-D.1 - 2 hours<br>Cite checking motion to quash - (No charge) 1 hours |
| Wilson | 7/11/2019 | 7 | 2 hours: cite check final motion and documents<br>4 hours: reconcile edits for all exhibits; finalize all exhibits<br>1 hour: meeting re GEMS database analysis and staffing |
| Powers | 7/12/2019 | 5.9 | Call with B Brown, E. Rosenberg, and M Marks re p.i. reply and allocation of assignments (0.6); allocate assignments for pieces of the reply brief and exchange emails with various team members re: thereto (0.4); comprehensive review of Defendants' brief and supporting declarations such as the Bridges declaration and email R. Snow, J. Conarck, and D. Brody re thereto (0.8); spoke with Colin McRae from Chatham County (0.3); sent email to Colin McRae (0.2); drafted memo outlining challenges/goals for the feasibility section and circulated them with the team (0.5); began drafting the feasibility section of the reply brief (0.9); spoke with Marion Warren from Hancock County re: declaration related to feasibility of implementing hand-marked paper ballots (0.6); draft declarations for Marion Warren and Aretha Hill (1.1); exchange emails with J. Greenbaum, D. Brody, E. Rosenberg re: strategy and response to third party subpoenas (0.2); exchange emails with M. Marks, court reporter, R. Manoso, Curling Ps' counsel re: plans for deposition of Rick Barron (0.3) |
| Brody | 7/12/2019 | 8 | drafting/revising PI reply brief |
| Rosenberg | 7/12/2019 | 4.8 | Further discussions with D Brody re reply on p.i. motion; confer with J Cornack re thereto; call with B Brown, J Powers, and M Marks re p.i. reply and allocation of assignments; review allocation of assignments and discuss with team; comprehensive review  of defendants' brief and email to team re thereto |
| Snow | 7/12/2019 | 1.5 | Researched and drafted Joint Discovery Statement (1.5). |
| Walter | 7/12/2019 | 4 | Researching incomplete/imperfect preliminary relief - 4 hours |
| Wilson | 7/12/2019 | 4 | Research Martinez case and mandatory injunction cases within the 11th Circuit; write brief section on mandatory injunctions |
| Powers | 7/13/2019 | 6.9 | Extensive drafting of section on feasibility (2.8); research into factual counter-arguments to Ds' feasibility claims (0.8); legal research related to feasibility issue in past voting cases (0.9); reviewed Doran and Ledford deposition transcripts and inserted their testimony into the feasibility section (0.8); spoke twice with Marion Warren (0.5); continued drafting and revising declarations of Marion Warren and Aretha Hill and circulated them with B. Brown, M. Marks, E. Rosenberg, etc. (0.8); emailed revised declarations to Aretha Hill and Marion Warren (0.2); emailed court reporter re: Kirk transcript (0.1) |

| Powers | 7/14/2019 | 6.1 | Continue drafting of section on feasibility of the reply brief in support of the preliminary injunction (3.1); review, revise, edit, and circulate feasibility section of brief with internal counsel (1); review Virginia Martin, Amber McReynolds declarations (0.4); insert relevant portions testimony into the feasibility section of the reply brief (0.7); prepare memo on Barron deposition merits and exchange multiple emails with B. Brown, M. Marks, E. Rosenberg re: Barron deposition (0.7); conversation with M. Marks re: Barron deposition (0.2). |
|---|---|---|---|
| Conarck | 7/14/2019 | 3.3 | Legal research and drafting section of PI reply brief relating to broad and flexible authority to grant PIs |
| Snow | 7/14/2019 | 3 | Researched and wrote Reply Brief Ballot Secrecy section |
| Powers | 7/15/2019 | 5.7 | Review feedback to the feasibility section offered by M. Marks and B. Brown (0.5); make extensive edits to the feasibility section in light of feedback (2.1); review and comment on other sections of brief being drafted by LC people (0.7); confer with E. Rosenberg and D Brody in preparation for next steps; confer with J Conarck and interns re next steps; exchange emails with E. Rosenberg re: logistics and strategy for the PI hearing (0.2); speak with Marion Warren re: declaration (0.3); make final edits to Marion Warren and Aretha Hill declarations and email to them (0.3); conversation with M. Marks re: GEMS/discovery disputes, State Ds' discovery requests to CGG, and proposing extension (0.4); speak and exchange emails with E. Rosenberg re: CGG's response to discovery requests (0.2); start drafting section of reply brief addressing evidence concerning an undervote in the LG race in the Nov. 2018 election (1) |
| Brody | 7/15/2019 | 4.9 | drafting/revising PI reply brief |
| Conarck | 7/15/2019 | 4.2 | Legal research and drafting section of PI reply brief relating to how much to weigh cost of granting PI |
| Rosenberg | 7/15/2019 | 2.8 | Review and comment on various sections of brief being drafted by LC people; confer with J Powers and D Brody in preparation for next steps; confer with J Conarck and interns re next steps |
| Snow | 7/15/2019 | 5.5 | Researched, wrote, and edited Reply Brief Ballot Secrecy section |
| Powers | 7/16/2019 | 6.1 | Participate in call with E. Rosenberg and B Brown and D Brody and M Marks re briefing issues (0.8); continue review of brief sections; draft section of the reply brief re: undervote in the 2018 LG race and circulate with M. Marks, B. Brown, and other co-counsel by email (1.9); draft parts of and review section of reply brief discussing constitutional harms inflicted by using DRE machines in the November 2018 election (e.g., long lines in Gwinnett and other examples of voter confusion/disenfranchisement) and circulate with M. Marks, B. Brown, and other co-counsel by email (0.9); review section on reliability of paper ballots, add content and continue drafting, revise, edit, and circulate to team, review M. Marks' edits, then make further edits and re-circulate (1.2); exchange emails with court reporter re: transcript of Kirk deposition (0.2); exchange emails with M. Marks, B. Brown, E. Rosenberg, and conversation with E. Rosenberg re: covering the deposition of Dr. Shamos (0.3); research GA SOS website to pull data re: cities holding contested municipal elections in 2009, 2005, 2003, and 2001, conduct analysis, and write up in memo (0.8); |
| Brody | 7/16/2019 | 3.3 | drafting/revising PI reply brief |
| Conarck | 7/16/2019 | 5.8 | Legal research and drafting section of PI reply brief relating to security of paper ballots (4.5); Legal research and drafting section of PI reply brief relating to undervote in 2018 Lt. Gov. race (1.3) |
| Rosenberg | 7/16/2019 | 2.7 | Participate in call with J Powers and B Brown and D Brody and M Marks re briefing issues; continue review of brief sections |
| Snow | 7/16/2019 | 1.7 | Researched ADA non-compliance in Georgia |
| Walter | 7/16/2019 | 6 | Research + drafting constitutional harm section - 6 hours |
| Wilson | 7/16/2019 | 5 | 5 hours: research on bad faith and credibility at preliminary injunction phase |

| Powers | 7/17/2019 | 7.5 | Comprehensive review and editing of draft of reply brief (2.3); continue editing and revising portions of the reply brief, e.g. on undervote in the LG's race and inserts to Joseph Kirk depo transcript (0.7); complete LC's review of reply brief by merging edits from multiple reviewers at the Lawyers' Committee, resolving differences, and circulating with B. Brown, M. Marks, etc. (0.6); inserting proposed Kirk depo cites into the reply (0.4); exchange emails with A. Walter, C. Wilson, J. Conarck, and D. Brody re: edits to the reply brief (e.g., re: the inserts re: the number of elections in 2019 and re: physical security of paper ballots) (0.4); confer with E. Rosenberg re thereto (0.2); emails to B Brown and M Marks re thereto (0.3); multi emails from M Marks re briefing issues (0.3); phone call with Candice Hoke regarding Dr. Shamos' expert report and past track record (0.6); emails with M. Marks and Candice Hoke in preparation for phone call (0.2); review Joseph Kirk deposition transcript (0.3); reviewed Dr. Shamos' testimony from a past PA case (0.4); draft Shamos deposition questions (0.5); exchange emails with M. Marks re: Dr. Shamos' testimony (0.2); exchange multiple emails with E. Rosenberg, J. Lemieux re: E. Rosenberg's PHV application (0.1) |
| Brody | 7/17/2019 | 4.5 | drafting/revising PI reply brief |
| Conarck | 7/17/2019 | 5.6 | Legal research and drafting section of PI reply brief relating to security of paper ballots (1.3); Line editing and formatting PI reply brief (4.3) |
| Rosenberg | 7/17/2019 | 3 | Comprehensive review and editing of draft of brief; confer with J Powers re thereto; emails to B Brown and M Marks re thereto; multi emails from M Marks re briefing issues |
| Walter | 7/17/2019 | 8 | researching academic articles about ADA and ballot security - 1 hour<br>compiling number of elections data - 3 hours<br>cite-checking/editing reply brief - 4 hours |
| Wilson | 7/17/2019 | 8 | 1 hour: researching articles on disability community and voting machines; email team and present findings<br>3.5 hours: compiling election data; revising number of elections section; compiling citations; call with Marilyn's intern re background info and spr eadsheet<br>3.5 hours: entering Kirk depo cites; cite checking and editing |
| Powers | 7/18/2019 | 8.7 | Draft depo outline, prepare exhibits, and prepare for deposition of Dr. Shamos (3.9); review Matt Bernhard's notes on Dr. Shamos' report (0.5); phone call with M. Marks and M. Bernhard (0.6); phone call with M. Marks and B. Brown (0.5); review and mark up Dr. Shamos' report (1.1); exchange emails with B. Brown, D. Cross, Carey Miller, C. Chapple, and M. Marks re: Shamos deposition (0.4); continue to review, edit, and circulate revisions to reply brief (1.3); travel from Washington DC to Atlanta (4.5 - NC); exchange multiple emails with C. Wilson, J. Conarck, M. Marks, and B. Brown re: reply brief (0.4) |
| Brody | 7/18/2019 | 2.5 | drafting joint discovery statement on third party subpoenas |
| Conarck | 7/18/2019 | 4.3 | Cite checking editing PI reply brief |
| Walter | 7/18/2019 | 4.5 | Work on reply brief |
| Wilson | 7/18/2019 | 4.5 | 4.5 hours: completing missing cites, cite-checking, compiling edits |
| Powers | 7/19/2019 | 6.8 | Review and mark up deposition outline and exhibits in preparation for the deposition of Dr. Shamos (1.8); participation in the deposition of Dr. Shamos (4.5); discussion with M. Marks re: strategy, PI hearing prep, assignments, other next steps (0.5); travel from Atlanta to Washington DC (No Charge - 4.6) |
| Conarck | 7/19/2019 | 3.6 | Reading through Shamos declaration to prepare for cross examination |
| Powers | 7/20/2019 | 0.6 | Phone call with B. Brown and M. Marks to discuss GEMS database and other discovery issues, download regarding Shamos deposition, witness list, initial disclosures, assignments for the PI hearing (0.3); review witness list and initial disclosures in preparation for call and draft notes for feedback (0.3) |

| Powers | 7/21/2019 | 2.4 | Review and send multiple emails to and from M. Marks, B. Brown, and D. Brody regarding assignment of witnesses, including Teri Adams, Kathy Polattie, Jasmine Clark, and Columbia County election administrator Virginia Martin (0.4); arrange phone conversations with V. Martin, K. Polattie and J. Clark through emails with M. Marks (0.4); emails with C. Wilson, J. Conarck, and R. Snow re: aggregating and consolidating testimony of various witnesses in a single location (0.2); begin drafting direct exam of voter witness Jasmine Clark (0.6); review article and send emails to M. Marks, B. Brown, etc. re: Fulton County cutting services because running the Nov 2019 elections on DRE is so expensive (0.3); multiple emails with court reporter re: obtaining transcript of Dr. Shamos' deposition (0.2); review Curling reply brief (0.3) |
|---|---|---|---|
| Powers | 7/22/2019 | 8.3 | Review material - including all p.i. submissions - in preparation for trial (0.9); travel from Washington DC to Atlanta (No Charge - 4.3); phone call with Jasmine Clark and M. Marks to discuss direct testimony and cross exam (0.9); continue to draft direct exam outline for Jasmine Clark, review, edit, and circulate with the team (0.9); phone call with Kathy Polattie to discuss direct testimony and cross exam (0.9); begin drafting direct exam outline for Kathy Polattie (0.6); review exhibits from the deposition of Dr. Shamos (0.3); exchange emails with E. Rosenberg and D. Brody regarding witness list for the PI hearing (0.3); legal research into the qualifications necessary to be an expert witness re: Virginia Martin, send memo to the team on the subject (1.2); review three declarations previously authored by Virginia Martin in the case (0.5); draft lengthy email to J. Greenbaum and E. Rosenberg re: testimony of Amber McReynolds and Virginia Martin and voir dire/qualification-related issues (0.4); review, edit, and file motion to bring electronic equipment into the courtroom (0.5); review draft declaration of Gary Wilcher prepared by Justin Berger, prepare redline, and send edits to J. Berger and M. Marks (0.4); emails re: transcript of the deposition of Dr. Shamos (0.2); review transcript of Shamos deposition (0.3) |
| Brody | 7/22/2019 | 0.3 | emailing with all counsel re third party subpoenas |
| Conarck | 7/22/2019 | 5.3 | Drafting pro hac vice application (0.1); Interviews with fact witnesses to prep for hearing (2.0); editing declaration for Gary Wilcher (0.2); drafting motion and proposed order for authorization for electronic equipment in courtroom (0.8); research relating to FRE 701/703 and the admission of expert testimony (2.2) |
| Rosenberg | 7/22/2019 | 2 | Review material - including all p.i. submissions - in preparation for trial |
| Wilson | 7/22/2019 | 6 | searching for all affidavits, declarations, and testimony and cutting PDFs to size; organize in folders for hearing; speak with Marilyn re missing items |
| Powers | 7/23/2019 | 8.6 | Continue to review material in preparation for trial, including all briefing and exhibits (0.7); complete drafting, reviewing, and editing Polattie direct exam and circulate it with the team (0.7); phone call with Virginia Martin to discuss declarations, key testimony to emphasize at trial, do's and don'ts of testifying, and prepare for direct exam (1.2); begin drafting direct exam of Virginia Martin (2.6); status call with M. Marks, B. Brown, and E. Rosenberg re: preparation for hearing, cross exam assignments, etc. (0.7); email exchange re: assignments for cross examinations (0.4); review and edit memo from J. Conarck regarding sufficient qualifications for expert witnesses and the proper scope of expert testimony and discuss with J. Conarck and E. Rosenberg in the context of Virginia Martin's testimony, and subsequent conversation with J. Conarck and E. Rosenberg re: thereto (1.2); review of Georgia House Bill 392 (2019) (0.6); review, mark up, and offer feedback on witness list to be filed with the Court and email edits to B. Brown (0.5); |
| Brody | 7/23/2019 | 0 | travel to Atlanta for PI hearing (No Charge - 4 |
| Conarck | 7/23/2019 | 2.8 | Interview with expert witness to prep for hearing (1.0); research relating to FRE 701/703 and the admission of expert testimony (1.8) |
| Rosenberg | 7/23/2019 | 6 | Non-working travel to Atlanta (1.5); continue review material in preparation for trial, including all briefing and exhibits 4.5 hours |

| Wilson | 7/23/2019 | 5 | 1 hour: Twitter check of witness for hearing; pull flags and give to attorney<br>1 hour: finalize affidavits etc. with EFC numbers<br>2 hours: Ledford deposition excerpt project<br>1 hour: discrete assignments searching for information in depositions and affidavits |
| --- | --- | --- | --- |
| Powers | 7/24/2019 | 9.7 | Continue review of materials in preparation for trial (No Charge - 0.9); meet with trial team in preparation for trial and discuss witnesses (1); review proposed direct examinations (0.5); phone call with Virginia Martin and J. Conarck to practice direct exam and cross examination (2.1); circulate draft Virginia Martin direct with M. Marks, E. Rosenberg, B. Brown along with cover email (0.3); exchange emails with E. Rosenberg re: status of Virginia Martin as an expert and whether we should seek to have her admitted as an expert (0.4); continue drafting and revising Virginia Martin direct exam; review edits to the Virginia Martin direct from E. Rosenberg and make further changes (1.7); follow up phone call with voter witness Kathy Polattie to go over her direct exam and prepare for cross (0.7); exchange multiple emails with Bruce Brown, Bea Brown and M. Marks regarding what documents and exhibits needed in the courtroom, the number of copies, etc. (0.4); review brief prepared by Curling plaintiffs opposing Ds' attempt to allow Dr. Shamos to testify remotely, make edits, exchange emails re: thereto with E. Rosenberg, B. Brown, and M. Marks, and email proposed edits to C. Chapple, D. Cross, etc. (1.5); exchange emails with C. Wilson, J. Conarck, E. Rosenberg, D. Brody re: Bridges declaration and preparation of cross exam (0.5); follow up phone call with Jasmine Clark to discuss direct testimony and cross exam (0.6) |
| Brody | 7/24/2019 | 8 | prep for PI hearing |
| Conarck | 7/24/2019 | 1.5 | Preparation for cross examination of Russel Bridges |
| Rosenberg | 7/24/2019 | 7.5 | Continue review of materials in preparation for trial; meet with trial team in preparation for trial and discuss witnesses; review proposed direct examinations |
| Wilson | 7/24/2019 | 7 | 3 hours: read Bridges declaration and other pleadings; prepare proposed cross examination for hearing<br>3.75 hours: pull excerpts from Ledford depo for John for quick reference during hearing; read Ledford depo and identify potential Q&A for Ledford cross examination at hearing<br>.25 hours: pull contact information for other attorneys on Totenberg's docket |
| Powers | 7/25/2019 | 10.5 | Participate in trial, review proposed directs, directs of Kathy Polattie, Jasmine Clark (3.5); meet with Polattie and prepare her for direct exam and for cross (0.5); meet with Jasmine Clark before the hearing and prepare her for direct exam and for cross (0.5); meet with co-counsel and confer re: various matters (0.9); attend hearing; prepare cross exams for Russell Bridges (1) and for Lynn Ledford (0.7); email Bridges cross exam to team and exchange emails re: specific questions to ask Bridges; meet with Virginia Martin to prepare her for cross (1); continue working on Virginia Martin direct exam (1.5); exchange emails with Bea Brown and M. Marks regarding documents and exhibits needed in the courtroom (0.4); review proposed cross-examinations (0.5) |
| Brody | 7/25/2019 | 12 | PI hearing |
| Conarck | 7/25/2019 | 9.5 | PI hearing (6.0); expert witness preparation for Dr. Martin (1.5); fact witness preparation for Mrs. Polattie (1.5); fact witness preparation for Ms. Clark (0.5) |
| Rosenberg | 7/25/2019 | 9 | Participate in trial; review proposed directs; meet with Virginia in preparation for trial; review proposed cross-examinations |
| Wilson | 7/25/2019 | 2 | Complete Ledford deposition project for John: pull excerpts from Ledford depo from Defendants' and Coalition Plaintiffs' briefs; identify relevant Q&A from deposition for potential cross examination at hearing |

| Powers | 7/26/2019 | 10.8 | Participate in trial, cross Russell Bridges, Direct of Virginia Martin (6.6 hours); meet with Virginia Martin to go over direct testimony and prepare for cross (1.2); meetings with co-counsel to discuss strategy (1); continue to edit and revise cross of Ledford and Bridges (1.5); draft summary of events for clients and co-counsel (0.5) |
|---|---|---|---|
| Brody | 7/26/2019 | 12 | PI hearing |
| Conarck | 7/26/2019 | 7.5 | PI hearing (6.0); preparation for cross examination of Russel Bridges (1.5) |
| Rosenberg | 7/26/2019 | 11 | Participate in trial (6.0 hours); non-working travel time (5.0 hours) |
| Powers | 7/27/2019 | 0 | Travel from Atlanta to Washington DC (No Charge) |
| Brody | 7/27/2019 | 0 | travel back to DC from PI hearing (No Charge - 4) |
| Powers | 7/29/2019 | 2 | Multi emails to and from M Marks, B Browne, C Ichter, L. Patino, and E. Rosenberg re hearing and three contractors from Barnes deposition, most recent filings from the State (Dkt. 552), the need to email pleadings to M. Marks, state certification issues, issues relating to new machines, and further proceedings post-hearing (1.2); spoke with Andrea Grant re: withdrawing the subpoena of Robert Ingram (0.2); draft notice of withdrawal of the Robert Ingram subpoena and circulate it with the team by email (0.6) |
| Rosenberg | 7/29/2019 | 2 | Multi emails to and from M Marks, B Browne, C Ichter and J Powers re issues relating to new machines, and further proceedings post-hearing |
| Powers | 7/31/2019 | 1 | Multi emails to and from co-counsel re spoliation reply brief and other issues post-hearing; review and comment on spoliation reply brief (0.8); finalize and file notice of withdrawal of subpoena of Robert Ingram (0.2) |
| Rosenberg | 7/31/2019 | 1 | Multi emails to and from co-counsel re spoliation reply brief and other issues post-hearing; review and comment on spoliation reply brief |
| Powers | 8/6/2019 | 1 | Multi emails to and from co-counsel re new machine issues; participate in conference call with co-counsel and client re thereto |
| Rosenberg | 8/6/2019 | 1 | Multi emails to and from co-counsel re new machine issues; participate in conference call with co-counsel and client re thereto |
| Powers | 8/11/2019 | 0.6 | Review multi-emails to and from E. Rosenberg, M. Marks, and B Brown re: protective order issues |
| Rosenberg | 8/11/2019 | 0.6 | Review multi-emails to and from client and B Browne re protective order issues |
| Powers | 8/13/2019 | 1 | Phone call with M. Marks, B. Brown, and E. Rosenberg re: attorney eyes only designation and GEMS database issues, strategy, research assignment, other next steps (0.7); exchange multiple emails to rrange phone call (0.1); email with E. Rosenberg re: AEO issues and potential research into GA APA (0.2) |
| Rosenberg | 8/13/2019 | 1 | |
| Powers | 8/15/2019 | 0.5 | multi- emails to and from E. Rosenberg, M. Marks, and B. Brown re miscellaneous matters relating to BMDs |
| Rosenberg | 8/15/2019 | 0.5 | multi- emails to and from client and co-counsel re miscellaneous matters relating to BMD's |
| Powers | 8/27/2019 | 2.3 | Review motion for attorney's fees and offer feedback to co-counsel (0.7); prepare spreadsheet containing all LC staff's hours incurred in the case so far (1.6) |
| Powers | 8/28/2019 | 1.8 | Collect all information related to expenses incurred in the case to date, summarize, calculate totals and prepare receipts in case documentation is required |
| Rosenberg | 10/8/2019 | 2.5 | Preparation and revision of declaration; review of time sheets; reviewing and responding to B Brown re fee application |

# EXHIBIT 2

**TOTAL COSTS AND EXPENSES INCURRED *CURLING V. RAFFENSPERGER* (N.D. GA)**

| Date incurred | Description | Amount |
|---|---|---|
| 6/19 - 8/19 | Westlaw expense - Powers | 219.39 |
| 6/19 - 8/19 | Westlaw expense - Brody | 244.37 |
| 7//19 | Westlaw expense - Rosenberg | 9.67 |
| 6//19 | PACER fees | 38.10 |
| | | |
| | **Total Research Fees** | 511.53 |
| | | |
| 5/22/2019 | Airfare - Rosenberg | 9.95 |
| 5/22/2019 | Airfare - Rosenberg | 30.00 |
| 5/22/2019 | Airfare - Rosenberg | 794.60 |
| 5/22/2019 | Dinner - Rosenberg | 35.00 |
| 5/22/2019 | Taxi - Rosenberg | 20.22 |
| 5/22/2019 | Taxi - Rosenberg | 39.10 |
| 5/23/2019 | Breakfast - Rosenberg | 22.64 |
| 5/23/2019 | Dinner - Rosenberg | 66.26 |
| 5/23/2019 | Taxi - Rosenberg | 9.09 |
| 5/23/2019 | Taxi - Rosenberg | 9.10 |
| 5/23/2019 | Taxi - Rosenberg | 9.60 |
| 5/24/2019 | Airfare - Rosenberg | 30.00 |
| 5/24/2019 | Breakfast - Rosenberg | 22.64 |
| 5/24/2019 | Lodging - Rosenberg | 498.64 |
| 5/24/2019 | Lunch - Rosenberg | 29.84 |
| 5/24/2019 | Taxi - Rosenberg | 12.94 |
| 5/24/2019 | Taxi - Rosenberg | 21.40 |
| 5/24/2019 | Train - Rosenberg | 11.45 |
| 7/19/2019 | Airfare & Lodging - Conarck | 1,216.34 |
| 7/20/2019 | Airfare - Brody | 555.61 |
| 7/23/2019 | Airfare - Rosenberg | 586.56 |
| 7/23/2019 | Dinner - Rosenberg | 20.90 |
| 7/23/2019 | Subway - Rosenberg | 2.00 |
| 7/23/2019 | Taxi - Rosenberg | 25.54 |
| 7/24/2019 | Dinner - Rosenberg | 126.63 |
| 7/24/2019 | Lunch - Rosenberg | 31.52 |
| 7/25/2019 | Lunch - Rosenberg | 9.76 |
| 7/26/2019 | Lodging - Rosenberg | 5.00 |
| 7/26/2019 | Lodging - Rosenberg | 665.24 |
| 7/26/2019 | Lunch - Rosenberg | 12.59 |
| 7/26/2019 | Subway - Rosenberg | 3.50 |
| 7/26/2019 | Taxi - Rosenberg | 174.41 |
| 5/21/2019 - 7/26/2019 | Travel and Meals - Powers (See Exhibit 3) | 7,535.70 |
| | | |
| | **Total Travel and Meals Fees** | **12,643.77** |
| | | |
| | **Grand Total** | **13,155.30** |

# EXHIBIT 3

 Gmail

John Powers <jmppowers@gmail.com>

---

**Trip itinerary and receipt: B4FE-5979**
1 message

---

**Upside Travel** <navigators@upside.com>                    Wed, May 15, 2019 at 9:48 AM
To: jmppowers@gmail.com
Cc: receipts@expensify.com



## Trip itinerary and receipt

### Flight to Atlanta, GA
**Wednesday**, May 22

Your Booking Number:

**B4FE-5979**    View itinerary details

## Questions? Contact our Navigators
(855) 252-2151
navigators@upside.com

## Flights

John Powers's Confirmation: **HBKUWP**                         1 round trip ticket

Wed. 05/22/19
American Airlines 1730

| 6:40 pm | 9:08 pm |
| PHL | ATL |
| Philadelphia | Atlanta |

Seat:        22D Contact Airline to change seat
Class:       Economy
Equipment:   320

**Manage your trip anywhere**

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers
jmppowers@gmail.com
5853556194

| | |
|---|---|
| **Trip Price** | **$211.30** |
| Taxes and Fees | $28.04 |

To download an itemized receipt, log in to your account and view this trip.

## Ticket Information

eTicket: #0017360859788 (J. Powers)

## Transaction History

| Date | Transaction | Amount |
|---|---|---|
| May 15, 2019 | CC Charge (MasterCard X-497) | $211.30 |

View purchase details for complete booking information or itemized receipt.

Import your trip calendar (Beta) to connect your Upside trip itineraries with your calendar.



**MARRIOTT**

ATLANTA MARRIOTT MARQUIS

**GUEST FOLIO**

| 3809 | POWERS/JOHN | | 149.00 | 05/24/19 | 08:00 | | 52183 |
|------|-------------|--|--------|----------|-------|--|-------|
| ROOM | NAME | | RATE | DEPART | TIME | | ACCT# |
| GD | 1648 FLORIDA AVE NW | | | 05/22/19 | 20:13 | | |
| TYPE | WASHINGTON  DC  20009 | | | ARRIVE | TIME | | |
| 235 | | | PASSPORT: | | | | |
| ROOM | | | VSXXXXXXXXXXXXX8177 | | | | MBV#:    XXXXX5526 |
| CLERK | ADDRESS | | PAYMENT | | | | |

| DATE | REFERENCES | | CHARGES | CREDITS | BALANCES DUE |
|------|------------|--|---------|---------|--------------|
| 05/22 | ROOM TR | 3809, 1 | 182.00 | | |
| 05/22 | STATE TX | 3809, 1 | 16.20 | | |
| 05/22 | CITY TAX | 3809, 1 | 14.56 | | |
| 05/22 | GA RMFEE | 3809, 1 | 5.00 | | |
| 05/23 | ROOM TR | 3809, 1 | 149.00 | | |
| 05/23 | STATE TX | 3809, 1 | 13.26 | | |
| 05/23 | CITY TAX | 3809, 1 | 11.92 | | |
| 05/23 | GA RMFEE | 3809, 1 | 5.00 | | |
| 05/24 | CCARD-VS | | | 396.94 | |
| | PAYMENT RECEIVED BY  VISA | | XXXXXXXXXXXX8177 | | |
| | | | | | .00 |

See our "Privacy & Cookie Statement" on Marriott.com



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA  30303

Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X

 **Gmail**                                                    John Powers <jmppowers@gmail.com>

---

**Trip itinerary and receipt: 03A4-16C8**
1 message

---

**Upside Travel** <navigators@upside.com>                          Wed, May 15, 2019 at 9:52 AM
To: jmppowers@gmail.com
Cc: receipts@expensify.com



# Trip itinerary and receipt

## Flight to New York, NY

**Friday, May 24**

Your Booking Number:

**03A4-16C8**    View itinerary details

## Questions? Contact our Navigators

(855) 252-2151

navigators@upside.com

## Flights

John Powers's Confirmation: **CIZJLV**                                      1 round trip ticket

Fri. 05/24/19
✈ American Airlines 4527

| 9:39 am | 12:00 pm |
|---------|----------|
| ATL | LGA |
| Atlanta | New York |

Operated by REPUBLIC AIRLINES AS AMERICAN EAGLE

Seat:      13C Contact Airline to change seat
Class:     Economy

Equipment: E75

## Manage your trip anywhere

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers

jmppowers@gmail.com

5853556194

| | |
|---|---|
| **Trip Price** | **$259.30** |
| Taxes and Fees | $31.39 |

To download an itemized receipt, log in to your account and view this trip.

## Ticket Information

eTicket: #0017360859789 (J. Powers)

## Transaction History

| Date | Transaction | Amount |
|---|---|---|
| May 15, 2019 | CC Charge (MasterCard X-497) | $259.30 |

View purchase details for complete booking information or itemized receipt.

Import your trip calendar (Beta) to connect your Upside trip itineraries with your calendar.

```
***********************
RECEIPT
NOT VALID FOR TRAVEL
***********************

RTA
achtree Center
M30116
i 24 May 19 08:07AM

ayment Type: MASTERCARI
urchase:          One Way

ount:              $  3.50


eeze Ticket #:
** **** **** **** 3048

edit Card #:
   **** **** **** 0497
th #:             09407Z
f #:        914408727581
  ction #:0000344023
```

```
***********************
RECEIPT               *
NOT VALID FOR TRAVEL  *
***********************

RTA
rport
M20710
d 22 May 19 09:13PM

yment Type: MASTERCARD
rchase:          One Way

ount:              $  3.50


eeze Ticket #:
** **** **** **** 3762

dit Card #:
   **** **** **** 0497
h #:              09295Z
  #:        914221705808
  ction #:0001770906
```

```
***********************
ECEIPT                *
OT VALID FOR TRAVEL
***********************

iTA
achtree Center
M30112
u 23 May 19 09:03AM

yment Type: MASTERCARI
irchase:        Round Tri

nount:             $  6.00


reeze Ticket #:
**** **** **** **** 0480

Credit Card #:
   **** **** **** 0497
Auth #:           00573Z
Ref #:      914309711438
Transaction #:0000026889
```

```
ITA NYC TRANSIT
148-TIMES SQ 42 ST
EW YORK CITY NY

VM #: 1447(B148  0700)

i 24 May 19 11:4

ans: Sale OK
vment Mode: Credit
ount:            $   9.00
d Value:         $   9.00
 Card Fee:       $   1.00
al Paid:         $  10.00

TERCARD
1 #:
  cssa**  ** 0497
   #  0 2502
  #: 058057571058

   l #:2986843308
   000
FULL FARE
```

```
        & & & 410 & & &
     ATLANTA MARRIOTT MARQUIS
        **** PULSE ****
4 Chris

  <  8543              GST  1
          POWERS CC
       22 May'19 10:19 PM

PEN FOOD                   4.00
I E CAESAR
I  IONI                    9.00

ubtotal:             $23.00
ax:                   $2.05
:51 PM
  TOTAL  DUE:  $25.05


PLEASE COMPLETE FOR ROOM CHARGES

UITY      5.00

 L       30.05        _____

M NUMBER_____

IT LAST NAME_____

IATURE_____
```

 Gmail                                    John Powers <jmppowers@gmail.com>

---

**Trip itinerary and receipt: A33E-D03E**
1 message

---

**Upside Travel** <navigators@upside.com>                    Fri, May 24, 2019 at 9:52 PM
To: jmppowers@gmail.com
Cc: receipts@expensify.com



# Trip itinerary and receipt

## Flight to Atlanta, GA
**Thursday, May 30–Friday, May 31**

Your Booking Number:

**A33E-D03E**    View itinerary details

## Questions? Contact our Navigators
(855) 252-2151
navigators@upside.com

## Flights

John Powers's Confirmation: **LKLKTL**                        1 round trip ticket

Thu. 05/30/19
✈ American Airlines 4525

4:59 pm                    6:59 pm
DCA                        ATL
Washington                 Atlanta

Operated by REPUBLIC AIRLINES AS AMERICAN EAGLE

Seat:    Pending Contact Airline to change seat
Class:   Economy

Equipment: E75

Fri. 05/31/19
American Airlines 309

| 4:55 pm | 7:00 pm |
|---------|---------|
| ATL | DCA |
| Atlanta | Washington |

Seat:     Pending Contact Airline to change seat
Class:    Economy
Equipment: E90

**Manage your trip anywhere**

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers
jmppowers@gmail.com
5853556194

**Trip Price**                                **$578.60**

To download an itemized receipt, log in to your account and view this trip.

## Transaction History

| Date | Transaction | Amount |
|------|-------------|--------|
| May 25, 2019 | CC Charge (MasterCard X-497) | $578.60 |



**Residence** INN
BY MARRIOTT

**Residence Inn® Atlanta Downtown**
134 Peachtree Street NW, Atlanta, GA 30303 **P** 404.522.0950
**Marriott.com/ATLDT**

| John Powers | | | Room: 2006 | |
| Lawers Committe | | | Room Type: ONBR | |
| | | | Number of Guests: 1 | |
| | | | Rate: $134.00 | Clerk: CAL |
| Arrive: 30May19 | Time: 10:42PM | Depart: 31May19 | Time: 09:06AM | Folio Number: 70121 |

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 30May19 | Room Charge | 134.00 | |
| 30May19 | State Sales Tax | 11.93 | |
| 30May19 | City Tax | 10.72 | |
| 30May19 | Sales Tax Other Room Tax | 5.00 | |
| 31May19 | Visa | | 161.65 |

*Card #: VIXXXXXXXXXXXX8177/XXXX*
*Amount: 161.65 Auth: 06454C Signature on File*
*This card was electronically swiped on 30May19*

**BALANCE:** **0.00**

**Marriott Bonvoy Account # XXXXX5526.** Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy account statement or your online statement for updated activity.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

To plan your next stay, visit ResidenceInn.com.

# FIVE GUYS

STORE # VA-0106
Reagan National Airport
Washington, DC 20001
Phone (703) 417-1990

5/30/2019                           4:03:59 PM
Order Id: AAAJRHPUAEJE
85 - FIVE GUYS
Employee: M.D. A

---

## 85

---

| | |
|---|---|
| 1 Bacon Cheeseburger | $10.44 |
| Bacon | $0.00 |
| Grilled Onions | $0.00 |
| Jalapeno Peppers | $0.00 |
| Lettuce | $0.00 |
| Grilled Mushrooms | $0.00 |
| 1 Regular Cajun Fry | $5.05 |
| 1 Bottled Water | $2.79 |

Sub Total                              $18.8

Sales Tax                               $1.33
Order Total                            $20.11

MasterCard                             $20.11
  Card#: ************0497
  Authorization: 00539Z

---

# FedEx Office..

FedEx Office is your destination
for printing and shipping.

100 Peachtree St NW
Atlanta, GA 30303-1906
Tel: (404) 221-0000

5/31/2019                    9:14:02 AM EST
Team Member: Davone B.

### SALE

| | | |
|---|---|---|
| BW 1S on 24# Wht | 84 @ | 0.1700 T |
| 000330 Reg. Price | 0.17 | |

| | |
|---|---|
| Regular Total | 14.28 |
| Discounts | 0.00 |

**Total**                              **14.28**

| | |
|---|---|
| Sub-Total | 14.28 |
| Tax | 1.27 |
| Deposit | 0.00 |

**Total**                              **15.55**

*************** PURCHASE ***************
APPROVED
Total:                                $15.55
Card Type:     VISA
Card Entry:    CHIP
Acct #:        ************8177
Approval Code: 02632C
************ EMV PURCHASE *************
App Label:                        VISA CREDIT
Mode:                                  Issuer
AID: A0000000031010
TVR: 0000008000

Welcome to Chick-fil-A
CNN Center (#01306)
Atlanta, GA
(404) 659-4449
Operator: Jonathan Hollis
CUSTOMER COPY
**** DUPLICATE RECEIPT ****
5/31/2019 2:16:05 PM
CARRY OUT
Order Number:   5849036

| | | |
|---|---|---|
| 1 | GRL Sand | 5.35 |
| 1 | Spcy Sand | 4.09 |
| 1 | BTL Water | 1.75 |

Sub. Total:          $11.19
Tax:                  $0.93
Total:               $12.12

                      $0.00
Change               $12.12
Visa:
Register:4      Tran Seq No. 5849036
Cashier:Takisha
It was our pleasure ser ing you!
Have a wonderf  day.
one.chick-fil-a.com/forgot?scan

```
*************************
*  RECEIPT              *
*  NOT VALID FOR TRAVEL *
*************************
```

MARTA
Airport
TVM20702
Thu 30 May 19 07:21PM

Payment Type: MASTERCARD
Purchase:    Round Trip

Amount:        $  6.00

Breeze Ticket #:
**** **** **** **** 6967

Credit Card #:
     **** **** **** 0497
Auth #:            04029Z
Ref #:      915019834109
Transaction #:0000181458

# Trip itinerary and receipt

## Flight to Atlanta, GA

**Thursday, Jun 20–Monday, Jun 24**

Your Booking Number:

**8B0D-14BF**   View itinerary details

## Questions? Contact our Navigators

(855) 252-2151

navigators@upside.com

## Flights

John Powers's Confirmation: **UFOXZK**                                    1 round trip ticket

Thu. 06/20/19
American Airlines 5607

| 1:36 pm | 3:09 pm |
|---------|---------|
| BUF | DCA |
| Buffalo | Washington |

Seat:       04C Contact Airline to change seat
Class:      Economy
Equipment:  CRJ

Thu. 06/20/19
American Airlines 4525

| 4:57 pm | 6:57 pm |
|---------|---------|
| DCA | ATL |
| Washington | Atlanta |

Seat:       13C Contact Airline to change seat
Class:      Economy
Equipment:  E75

Mon. 06/24/19
American Airlines 4525

| 7:27 pm | 9:29 pm |
|---|---|
| ATL | DCA |
| Atlanta | Washington |

Seat:        14C Contact Airline to change seat
Class:       Economy
Equipment:   E75

## Manage your trip anywhere

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers
jmppowers@gmail.com
5853556194

| **Trip Price** | **$1,013.29** |
|---|---|
| Taxes and Fees | $72.30 |

To download an itemized receipt, log in to your account and view this trip.

## Ticket Information

eTicket: #0017352943308 (J. Powers),eTicket: #0017360859802 (J. Powers),eTicket: #0017369437978 (J. Powers)

## Transaction History

| Date | Transaction | Amount |
|---|---|---|
| Apr 24, 2019 | CC Charge (MasterCard X-497) | $318.59 |
| May 15, 2019 | CC Charge (MasterCard X-497) | $405.05 |
| Jun 13, 2019 | CC Charge (MasterCard X-497) | $289.65 |

[Quoted text hidden]



**Courtyard by Marriott®** Atlanta Suwanee Www.marriott.com/Atlsu Book It
310 Celebration Dr, Suwanee Ga 30024 **P** 770.831.7473
**Marriott.com/ATLSU**

| | |
|---|---|
| John Powers | Room: 328 |
| Leisure | Room Type: GENR |
| | Number of Guests: 1 |
| | Rate: $129.60  Clerk: PMG |

| Arrive: 23Jun19 | Time: 09:04PM | Depart: 24Jun19 | Time: 02:22PM | Folio Number: 82223 |

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 23Jun19 | Room Charge | 129.60 | |
| 23Jun19 | Room Tax | 7.78 | |
| 23Jun19 | Tourism Tax | 9.07 | |
| 23Jun19 | City Fee | 5.00 | |
| 24Jun19 | Visa | | 151.45 |

*Card #: VIXXXXXXXXXXXX8177/XXXX*
*Amount: 151.45 Auth: 03457C Signature on File*

**BALANCE:** **0.00**

**Marriott Bonvoy Account # XXXXX5526.** Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy account statement or your online statement for updated activity.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

Bring the Courtyard sleep experience home with you. Visit ShopCourtyard.com.



**MARRIOTT**

**ATLANTA MARRIOTT MARQUIS**

**GUEST FOLIO**

| 4201 | POWERS/J | | 170.00 | 06/23/19 | 11:00 | | 24478 |
| ROOM | NAME | | RATE | DEPART | TIME | | ACCT# |
| CK | | | | 06/21/19 | 13:17 | | |
| TYPE | | | | ARRIVE | TIME | | |
| 316 | | | | | | | |

| ROOM CLERK | ADDRESS | | PAYMENT | | | MBV#: | XXXXX5526 |

| DATE | REFERENCES | | | CHARGES | CREDITS | BALANCES DUE |
|---|---|---|---|---|---|---|
| 06/21 | ROOM TR | 4201, 1 | | 170.00 | | |
| 06/21 | STATE TX | 4201, 1 | | 15.13 | | |
| 06/21 | CITY TAX | 4201, 1 | | 13.60 | | |
| 06/21 | GA RMFEE | 4201, 1 | | 5.00 | | |
| 06/22 | ROOM TR | 4201, 1 | | 170.00 | | |
| 06/22 | STATE TX | 4201, 1 | | 15.13 | | |
| 06/22 | CITY TAX | 4201, 1 | | 13.60 | | |
| 06/22 | GA RMFEE | 4201, 1 | | 5.00 | | |
| 06/23 | VS CARD | | | | $407.46 | |

TO BE SETTLED TO:   VISA          CURRENT BALANCE  .00

THANK YOU FOR CHOOSING THE ATLANTA MARRIOTT MARQUIS!

See our "Privacy & Cookie Statement" on Marriott.com

**Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy Account Statement for updated activity. See members.marriott.com for new Marriott Bonvoy benefits.**



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA  30303

**Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.**

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X

 **Gmail**                                    John Powers <jmppowers@gmail.com>

---

## Your ride with Kenyatta on June 21
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>                    Fri, Jun 21, 2019 at 7:14 PM
To: jmppowers@gmail.com





## Thanks for riding with Kenyatta!
June 21, 2019 at 6:56 PM

### Ride Details

| | |
|---|---|
| Lyft fare (1.90mi, 17m 19s) | $9.11 |
| Tip | $2.00 |


MasterCard *0497                                    **$11.11**





● Pickup       6:56 PM
   261 Peachtree Center Ave NE, Atlanta, GA

● Drop-off    7:13 PM
   725 Lake Ave NE, Atlanta, GA



# This and every ride is carbon neutral

Learn more

## Refer a Driver

⊕        Tip driver

🔍        Find lost item

 Gmail

John Powers <jmppowers@gmail.com>

## Your ride with Alexxa on June 21
1 message

**Lyft Ride Receipt** <no-reply@lyftmail.com>
To: jmppowers@gmail.com

Sat, Jun 22, 2019 at 11:04 PM





## Thanks for riding with Alexxa!

June 21, 2019 at 10:50 PM

### Ride Details

| Lyft fare (2.16mi, 13m 6s) | $8.25 |
|---|---|


MasterCard *0497                                     **$8.25**





● Pickup      10:50 PM
   111 Krog St NE, Atlanta, GA

● Drop-off    11:03 PM
   255 Peachtree Center Ave NE, Atlanta, GA



This and every ride is
carbon neutral

Learn more

Refer a Driver

⊕        Tip driver

Q        Find lost item

 Gmail

John Powers <jmppowers@gmail.com>

---

**Your ride with Kenneth on June 20**
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>                    Fri, Jun 21, 2019 at 6:54 PM
To: jmppowers@gmail.com





# Thanks for riding with Kenneth!

June 20, 2019 at 7:48 PM

### Ride Details

| | |
|---|---|
| Lyft fare (2.60mi, 9m 13s) | $14.70 |
| Tip | $2.00 |


MasterCard *0497                                    **$16.70**





- ● Pickup       7:48 PM
  Airport Blvd, College Park, GA

- ● Drop-off    7:57 PM
  2076 Sullivan Rd, College Park, GA



## Refer a Driver

⊕        Tip driver

🔍       Find lost item

```
06/22/19              22:23
          SALES DRAFT

     Trader Vic's
            Address
      City, State Zip Code
         Phone Number

MERCH ID:
CASHIER:  Milenko
TERMINAL: 30

         Visa

NAME:     POWERS/JOHN
NUMBER:   XXXXXXXXXXXX8177
EXPIRE:   XX/XX
AUTH:     00534C
AMOUNT:   47.37

CHECK:    302674
TABLE:

TOTAL:    47.37

GRATUITY:       _____

TOTAL:          ___ _____

I agree to pay above total
amount according to my card
issuer agreement.

X_____
 SIGNATURE

      Customer Copy
```



**Watchman's Seafood & Spirits**
99 Krog St. Suite Y
Atlanta, Ga
United States, 30307
Tel: 4042540141
Printed June 21, 2019 at 9:28 PM

————REPRINT————

Table 5, 1 guest

Order #: 25897
Bl #: 33202
Srver: Reid

Sales Tax #:
Excise #:

————REPRINT————

| | |
|---|---|
| Grouper | $28.00 |
| Pork Belly | $13.00 |

Split Items

| | |
|---|---|
| Sub Total | $41.00 |
| Sales Tax | $3.65 |
| Excise | $0.00 |
| **Total** | **$44.65** |

VISA *8177 (Auth#: 01646C)          $44.65

Thank You

REPRINT

Panera Bread
Cafe #: 601719
1080 Peachtree St. NE
Atlanta, GA 30309
Phone: 404-817-0415

Accuracy Matters.
Your order should be correct every time.
If it's not, we'll fix it right away, and
give you a free treat for your trouble.
Just let an associate know.

06/22/2019 2:30:05 PM
Check Number: 100814   Cashier  JaQuayvia

| | |
|---|---|
| 1 BLT Rst Tky Avc Sdw | 9.89 |
| 1 No Drink | |
| 1 Chips | |
| 1 Bwl Bistro Ons Soup | 5.79 |
| 1 Bottled Water | 1.99 |
| 1 No Meal Upgrade | |
| 1 French Baguette | |

| | |
|---|---|
| Subtotal | 17.67 |
| Tax | 1.57 |
| Gratuity | 0.00 |
| Total | 19.24 |
| Master Card | 19.24 |

Acct: ************0497
AuthCode: 00053Z
Trans#: 00000043

View your Account at: www.mypanera.com
MyPanera Member: ************04838
MyPanera Offers Earned:
Visits To Next Reward: None

www.panerabread.com

To Go
Your Order Number is: 100814
Customer / Pager:  John  0

*** Customer Copy ***

```
*************************
* RECEIPT                *
* NOT VALID FOR TRAVEL   *
*************************

MARTA
Airport
TVM20718
Fri 21 Jun 19 03:49PM

Payment Type: MASTERCARD
Purchase:      Round Trip

Quantity:                  4

Amount:          $ 24.00


Breeze Ticket #:
**** **** **** **** 9603

**** **** **** **** 1848

**** **** **** **** 8724

**** **** **** **** 0967

Credit Card #:
      **** **** **** 0497
Auth #:             04743Z
Ref #:        917215197249
Transaction #:0000033109
```

```
*************************
* RECEIPT                *
* NOT VALID FOR TRAVEL   *
*************************

MARTA
Peachtree Center
TVM30116
Sat 22 Jun 19 10:22AM

Payment Type: MASTERCARD
Purchase:      Round Trip

Amount:           $  6.00


Breeze Ticket #:
**** **** **** **** 1127

Credit Card #:
      **** **** **** 0497
Auth #:             064552
Ref #:        917310207295
Transaction #:0000346457
```

**Watchman's Seafood & Spirits**
99 Krog St. Suite Y
Atlanta, Ga
United States, 30307
Tel: 4042540141
Printed June 21, 2019 at 9:27 PM

**Order ID: 25897**
Type: Authorize
Date/Time: 6/21/19 9:27 PM
Server: Reid

Card Number: XXXXXXXXXXXX8177
Account Type: VISA
Auth #: 01646C
Ref #:

APPROVED - THANK YOU

**Subtotal: $44.65**

Tip:_____

Total:_____

Important - retain this copy for your records

*** CUSTOMER COPY ***

 Gmail

John Powers <jmppowers@gmail.com>

**Trip itinerary and receipt: F994-0DA9**
1 message

**Upside Travel** <navigators@upside.com>                                      Thu, Jul 11, 2019 at 9:48 PM
To: jmppowers@gmail.com
Cc: receipts@expensify.com



# Trip itinerary and receipt

## Flight to Atlanta, GA
Wednesday, Jul 10–Friday, Jul 12

Your Booking Number:

**F994-0DA9**    View itinerary details

Questions? Contact our Navigators

(855) 252-2151

navigators@upside.com

## Flights

John Powers's Confirmation: **AZOHZT**                              1 round trip ticket

Wed. 07/10/19
American Airlines 309

| 2:10 pm | 4:11 pm |
|---------|---------|
| DCA | ATL |
| Washington | Atlanta |

Seat:      05D Contact Airline to change seat
Class:     Economy
Equipment: E90

Fri. 07/12/19
American Airlines 4702

| 9:04 am | 11:00 am |
|---------|----------|
| ATL | DCA |
| Atlanta | Washington |

Seat:        Pending **View or Change Seat**
Class:       Economy
Equipment:   E75

## Manage your trip anywhere

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers
jmppowers@gmail.com
5853556194

| **Trip Price** | $746.22 |
|----------------|---------|
| Taxes and Fees | $63.28 |

To download an itemized receipt, log in to your account and view this trip.

## Ticket Information

eTicket: #0017372036741 (J. Powers),eTicket: #0017378537336 (J. Powers)

## Transaction History

| Date | Transaction | Amount |
|------|-------------|--------|
| Jun 26, 2019 | CC Charge (MasterCard X-497) | $440.60 |
| Jul 12, 2019 | CC Charge (MasterCard X-497) | $305.62 |

View purchase details for complete booking information or itemized receipt.

Import your trip calendar (Beta) to connect your Upside trip itineraries with your calendar.

## CANCELLATION POLICY AND DETAILS

Once confirmed, airline change penalties and restrictions apply.

Most tickets are non-refundable. See your airline's full fare rules for additional details.

Check your airline's baggage fees and restrictions before your trip.

Airline tickets are non-transferrable. Name changes or adjustments are not allowed once purchased.

Airfare and flight availability are not guaranteed until purchased.

**Domestic / International Flights**

Domestic: You will be issued electronic tickets. Remember to bring a valid government-issued photo ID with you to check-in.

International: You will be issued electronic tickets. All travelers will need a valid passport and you may also need to show additional documentation at your destination and/or in connecting countries.

Purchaser must be over 18 years of age.

If you need to change or cancel your reservations, contact our Navigators who can help you with your trip at (855) 252-2151 or (202) 753-9604.

Customer Service

(855) 252-2151



**Fairfield by Marriott® Cartersville**
20 Canyon Parkway, Cartersville,ga 30120 **P** 770.387.0400
**Fairfield.Marriott.com**

| John Powers | | | Room: 411 | |
| Leisure | | | Room Type: EXQS | |
| | | | Number of Guests: 1 | |
| | | | Rate: $219.00 | Clerk: ZJS |
| Arrive: 10Jul19 | Time: 09:06PM | Depart: 11Jul19 | Time: 01:13PM | Folio Number: 74374 |

| DATE | DESCRIPTION | | CHARGES | CREDITS |
|------|-------------|--|---------|---------|
| 10Jul19 | Room Charge | | 219.00 | |
| 10Jul19 | Occupancy Sales Tax | | 17.52 | |
| 10Jul19 | State Occupancy Tax | | 15.33 | |
| 10Jul19 | State Hotel Motel Fee | | 5.00 | |
| 11Jul19 | Visa | | | 256.85 |

*Card #: VIXXXXXXXXXXXX8177/XXXX*
*Amount: 256.85 Auth: 06462C Signature on File*

**BALANCE:** **0.00**

**Marriott Bonvoy Account # XXXXX5526.** Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy account statement or your online statement for updated activity.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

Take the comfort of the Fairfield sleep experience home. Visit Fairfield's official retail store FairfieldStore.com.

GREAT HARVEST
N. EAST MAIN STREET
CARTERSVILLE, GA 30121
770-607-0067

Merchant ID: 5000
Term #: 1011                    Store #: 5000
                                Ref #: 0011
Sever ID: 1

        Sale

NUTRITIONS?
07/14/19                Entry Method: Chip

Amount: $              23.01
Tip:

Total:

07/11/19                    12:19:55
Inv #: 000045          Appr Code: 060022
Transaction ID: 0711MCHEMK0BH
Apprvd: Online            Batch#: 060000

MASTERCARD
Sale: xxxxxxxxx01010
TST: x000
FDL: 00xxxxxxxx

        Customer (YES)
        User (NO)

---

836719402

# Hertz                #01 MR   RR 836980583
                                RES J0862046805
## JOHN POWERS                             CC

INITIAL CHARGES
RENT RT $  67.34  / DAY    @ 2   / DAYS           $    134.68
SUBTOTAL                                        T $    134.68

CHARGES ADDED DURING RENTAL
LDW              DECLINED
LIS              DECLINED
PAI, PEC         DECLINED
PREM RD SVC DECLINED
* ADDITIONAL CHARGES
SERVICE CHARGES/TAXES
CONCESSION FEE RECOVERY            11.11%   T $     15.39
CUSTOMER FAC                               T $     10.00
ENERGY SURCHARGE                           T $      1.49
VEHICLE LICENSE COST RECOVERY              T $      2.34
TAX      10.750% ON TAXABLE TTL OF $  163.90  $    17.62
VOUCHER - 1                                $-   181.52
TOTAL AMOUNT DUE
PAID BY VOUCHER

Gold Plus Rewards Points Earned This Rental:   135

FOR EXPLANATION OF THE ABOVE CHARGES,
PLEASE ASK A REPRESENTATIVE OR GO TO
WWW.HERTZ.COM/CHARGEEXPLAINED

VEHICLE: 02297 / 6594360       19 SENTRA 1.8  N
LICENSE: NE WDK214
FUEL:    FULL      8 /8 OUT   8 /8 IN
MILEAGE IN:      6840      TR-X MILES:
MILEAGE OUT:     6729      MILES ALLOWED:
MILES DRIVEN:     111      MILES CHARGED:
CDPX xxxxxx

RENTED:     ATLANTA-HARTSFIELD INTL
RENTAL:     07/10/19 16.30
RETURN:     07/12/19 08.45
RETURNED: ATLANTA-HARTSFIELD INTL
COMPLETED BY:  2589/GAATL11

PLAN IN     VCPD2      RATE CLASS  B
PLAN OUT    VCPD2

---



**THE HERTZ CORPORATION**
Phone:      1-800-654-4173
Fax:        405-290-2899
E-mail:     CUSTOMERBILLING@HERTZ.COM



| Rental Agreement No: | 836980583 |
|---|---|
| Date: | 07/12/2019 |
| Document: | 929003539165 |

**Direct All Inquiries To:**
THE HERTZ CORPORATION
PO BOX 26120
OKLAHOMA CITY, OK 73126-0120

**CHARGE DETAIL**

| Renter: | JOHN POWERS |
|---|---|
| Account No.: | |
| CDP No.: | 1392782 |
| CDP Name: | HERTZ MEMBER PROGRAM |

**MR JOHN MICHAEL POWERS**
**1648 FLORIDA AVE NW**
**WASHINGTON, DC 20009**

### RENTAL REFERENCE

| Rental Agreement No: | 836980583 |
|---|---|
| Reservation ID: | J0862046805 |
| I.T. No.: | VCPUSPP |
| Voucher: | 0000695089 |

### MISCELLANEOUS INFORMATION

### Gold Plus Rewards Points
Earned this rental:   135

### RENTAL DETAILS

| Rate Plan: | IN: VCPD2   OUT: VCPD2 |
|---|---|
| Rented On: | 07/10/2019 16:30  LOC# 145011 |
| | ATLANTA AP, GA |
| Returned On: | 07/12/2019 08:45  LOC# 145011 |
| | ATLANTA AP, GA |
| Car Description: | SENTRA 1.8 WDK214 |
| Veh. No.: | 6594360 |

| CAR CLASS | Charged: | B | MILEAGE | In: 6,840 |
|---|---|---|---|---|
| | Rented: | C | | Out: 6,729 |
| | Reserved: | B | | Driven:   111 |

### RENTAL CHARGES

| DAYS | 2 @ | 67.34 | 134.68 |
|---|---|---|---|
| SUBTOTAL | | | 134.68 |
| | | | |
| CONCESSION FEE RECOVERY | | | 15.39 |
| VEHICLE LICENSE FEE | | | 2.34 |
| CUSTOMER FACILITY CHARGE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -181.52 |
| TAX | | 10.75% | 17.62 |

| TOTAL CHARGES | | 0.00 USD |
|---|---|---|

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM HERTZ**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Direct All Inquiries To:**
THE HERTZ CORPORATION
PO BOX 26120
OKLAHOMA CITY, OK 73126-0120
UNITED STATES

| Rental Agreement No: | 836980583 |
|---|---|
| Date: | 07/12/2019 |
| Document: | 929003539165 |

| Renter: | JOHN POWERS |
|---|---|
| Account No.: | |

Phone:      1-800-654-4173
Fax:        405-290-2899
E-mail:     CUSTOMERBILLING@HERTZ.COM
GCM1A4      0090 CA

| TOTAL CHARGES | 0.00 USD |
|---|---|



### Delaware North

EINSTEIN BROS. BAGELS
Store # 9001
Terminal D
POS 1-1

| Tbl:0 | Ref:1075725 |
| | Chk:1075768 |
| Harold | 7/12/2019 11:03 am |

| Turk-Sausg Egg Chdr | 6.29 |
| Fresh OJ - Reg | 3.07 |
| | |
| SubTotal | 9.36 |
| State Tax | 0.75 |
| | ---------- |
| Total | 10.11 |
| VISA ***********8177 | 10.11 |
| | ---------- |
| Amount Paid | 10.11 |

Tell us about your experience by visiting
DelawareNorthListens.com

---

Cleveland Ave Chevron
757 Cleveland Ave.
Atlanta, Ga 30315

Cleveland Ave Chevro
00302521
757/B Cleveland Ave
Atlanta, GA
07/12/2019  609914912
08:34:30 AM

XXXXXXXXXXXX0497
MASTERCARD
INVOICE E/2160058
AUTH 69434Z

PUMP# 4
UNLEAD REG        4.139G
PRICE/GAL        $2.899

FUEL TOTAL   $   12.00

CREDIT       $   12.00

Swiped

Get rewarded on
every fill-up at
Chevron with a
Techron Advantage
card. See app
for details.

Thank You For Shopping With Us!!!!!!

---

** NO WORRIES - EVERYTHING'S OK **
08  a  Table  90  #Party 1
LEEGA r    SvrCk: 2  18:21 07/11/19
MAIN  2/T10
Separate checks: 1-of-3

1 F.G.T. APP
1 CHICKEN POT PIE
1 WATER
1 BERRY COBBLER

Sub Total:
Tax:
29.

/ /11

** PLEASE PAY CASH **

OPEN ALL D.
TRY OUR
TAKE-AWAY STORE
To Live Is to Serve.
To Serve Is to Live.

000000 008716



July 10, 2019 17:33                              Page: 1
Receipt #: 1518525034
Stored Value Card #: 1576001402554076207
2019/07/10 14:50

| Qty | Description | Amount |
|-----|-------------|--------|
| 4 | PC Basic Station Time/Minute | 1.56 |

|  | SubTotal | 1.56 |
|  | Taxes | 0.14 |
|  | Total | 1.70 |

Current Value on Card: $0.59

FedEx Office Print & Ship Centers

3401 Northside Pkwy.
Atlanta,GA 30327
(404) 262-9393
www.FedExOffice.com

Tell us how we're doing and receive
$5 off your next $30 print order
at fedex.com/welisten or 1-800-398-0242
Offer Code:_____ Offer expires 12/31/19

Get your message out in a big way with
everything from full-color banners to
photo-quality posters, yard signs,
auto magnets and more.

Please Recycle This Receipt



July 10, 2019 17:44
Receipt #: 1518525040
MasterCard #: XXXXXXXXXXXX0497
2019/07/10 17:33

Page: 1

| Qty | Description | Amount |
|-----|-------------|--------|
| 12 | PNG B&W S/S 8.5x11 & 8.5x14 | 1.56 |
| 2 | PNG B&W S/S 8.5x11 & 8.5x14 | 0.26 |
| 8 | PNG B&W S/S 8.5x11 & 8.5x14 | 1.04 |

| | | |
|---|---|---|
| SubTotal | | 2.86 |
| Taxes | | 0.25 |
| Total | | 3.11 |

The Cardholder agrees to pay the Issuer of the charge card
in accordance with the agreement between the Issuer and
the Cardholder.

FedEx Office Print & Ship Centers

3401 Northside Pwky.
Atlanta,GA 30327
(404) 262-9393
www.FedExOffice.com

Tell us how we're doing and receive
$5 off your next $30 print order
at fedex.com/welisten or 1-800-398-0242
Offer Code:_____ Offer expires 12/31/19

Get your message out in a big way with
everything from full-color banners to
photo-quality posters, yard signs,
auto magnets and more.

Please Recycle This Receipt

 Gmail                                    John Powers <jmppowers@gmail.com>

---

**Trip itinerary and receipt: 8704-69C3**
1 message

---

**Upside Travel** <navigators@upside.com>                    Fri, Jul 19, 2019 at 4:14 PM
To: jmppowers@gmail.com
Cc: receipts@expensify.com



# Trip itinerary and receipt

## Flight to Atlanta, GA

**Thursday, Jul 18–Friday, Jul 19**

Your Booking Number:

**8704-69C3**    View itinerary details

## Questions? Contact our Navigators

(855) 252-2151

navigators@upside.com

## Flights

John Powers's Confirmation: **ZJCMYS**                    1 round trip ticket

Thu. 07/18/19
American Airlines 4702

6:30 am                         8:22 am
DCA                             ATL
Washington                      Atlanta

Seat:        08D Contact Airline to change seat
Class:       Economy
Equipment:   E75

Fri. 07/19/19

American Airlines 4525

| 7:27 pm | 9:29 pm |
|---------|---------|
| ATL | DCA |
| Atlanta | Washington |

| Seat: | 20D **View or Change Seat** |
|-------|------------------------------|
| Class: | Economy |
| Equipment: | E75 |

## Manage your trip anywhere

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers

jmppowers@gmail.com

5853556194

| **Trip Price** | **$688.61** |
|----------------|-------------|
| Taxes and Fees | $74.66 |

To download an itemized receipt, log in to your account and view this trip.

## Ticket Information

eTicket: #0017378537412 (J. Powers)

## Transaction History

| Date | Transaction | Amount |
|------|-------------|--------|
| Jul 16, 2019 | CC Charge (MasterCard X-497) | $688.61 |

View purchase details for complete booking information or itemized receipt.

Import your trip calendar (Beta) to connect your Upside trip itineraries with your calendar.

## CANCELLATION POLICY AND DETAILS

Once confirmed, airline change penalties and restrictions apply.

Most tickets are non-refundable. See your airline's **full fare rules for additional details.**

Check your airline's **baggage fees and restrictions** before your trip.

Airline tickets are non-transferrable. Name changes or adjustments are not allowed once purchased.

Airfare and flight availability are not guaranteed until purchased.

**Domestic / International Flights**

Domestic: You will be issued electronic tickets. Remember to bring **a valid government-issued photo ID** with you to check-in.

International: You will be issued electronic tickets. All travelers will need **a valid passport** and you may also need to show additional documentation at your destination and/or in connecting countries.

Purchaser must be over 18 years of age.

If you need to change or cancel your reservations, contact our Navigators who can help you with your trip at (855) 252-2151 or (202) 753-9604.

Customer Service

(855) 252-2151

navigators@upside.com



**ATLANTA MARRIOTT MARQUIS**                          **GUEST FOLIO**

| 4435 | POWERS/JOHN/MR | | 190.00 | 07/19/19 | 16:22 | 51638 |
| ROOM | NAME | | RATE | DEPART | TIME | ACCT# |
| CK | 401 HOLLAND LN APT 1 | | | 07/18/19 | 11:32 | |
| TYPE | ALEXANDRIA  VA  223143481 | | | ARRIVE | TIME | |
| 235 | | | PASSPORT: | | | |
| ROOM | | | VSXXXXXXXXXXXX8177 | | | MBV#:     XXXXX5526 |
| CLERK | ADDRESS | | PAYMENT | | | |

| DATE | REFERENCES | | | CHARGES | CREDITS | BALANCES DUE |
|---|---|---|---|---|---|---|
| 07/18 | ROOM TR | 4435, 1 | | 190.00 | | |
| 07/18 | STATE TX | 4435, 1 | | 16.91 | | |
| 07/18 | CITY TAX | 4435, 1 | | 15.20 | | |
| 07/18 | GA RMFEE | 4435, 1 | | 5.00 | | |
| 07/19 | CCARD-VS | | | | 227.11 | |
| | PAYMENT RECEIVED BY  VISA | | XXXXXXXXXXXX8177 | | | |
| | | | | | | .00 |

**See our "Privacy & Cookie Statement" on Marriott.com**

**Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy Account Statement for updated activity. See members.marriott.com for new Marriott Bonvoy benefits.**



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA  30303

**Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.**

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X

Six Feet Under
Grant Park
437 Memorial Drive SE
404-523-6664

Server: Selena                DOB: 07/19/2019
                                   07/19/2019
Table 34/1                         2/20052

SALE

SALE

MID:                 542929807143011
TID:                          101942

07/19.2019                    18:40:51
Entry Method:                     Chip
Seq #: 038549
Approval Code:                  015957

MASTERCARD
CARD #:           XXXXXXXXXXXX0497
AID:                 A0000000041010
TVR:                    0000008000
IAD:      0110A08003220000769200000000000
TSI: E800
                          ARC: 015957
TC:              53C193A386F0424A
APP:                        038549

   SubTotal            USD $   28.86

      Tip              USD $_____

      Total            USD $_____

         APPROVED BY ISSUER

Signature:_____
              JOHN POWERS

I agree to pay above total amount
according to card issuer agreement

---

Six Feet Under
Grant Park
437 Memorial Drive SE
404-523-6664

Server: Selena              07/19/2019
Table 34/1                     6:37 PM
Guests: 1                      20052
Reprint # 1

Shrimp & Grits Platter          18.50
Key Lime Pie                     8.00

Subtotal                        26.50
Tax                              2.36

Total                           28.86
Balance Due                     28.86

Suggested Gratuity:
   18% =  5.19
   20% =  5.77
   25% =  7.22
Visit us at:
   www.sixfeetunder.net
Photo ID is required for
all non-chip-enabled cards.
We apologize for
any inconvenience.

# FIVE GUYS

STORE # VA-0106
Reagan National Airport
Washington, DC 20001
Phone (703) 417-1990

7/18/2019                          5:38:19 AM
Order Id: AAATRHSWAEAR
25 - FIVE GUYS
Employee: Martha K

----------------------------------------

25

----------------------------------------

1 Bacon, Egg & Cheese Sandwich    $7.39
  Bacon                           $0.00
1 Orange Juice                    $2.99

Sub Total                        $10.38

Sales Tax                         $1.04
Order Total                      $11.42

Visa                             $11.42
  Card#: ***********8177
  Authorization: 04455C

        --> Order Closed <--

**********************************
   Don't throw away your receipt!!!

  Help Five Guys and you could win!
Log online to www.fiveguys.com/survey
     and fill out a brief survey!

      10 lucky people will win a
    Five Guys Gift Card each month
          worth $25 each!

     No purchase necessary
   Sweepstakes ends 12/31/2019.
  Must be at least 18 years old and
    submit survey within 30 days
    of the receipt date to enter.
Please visit www.fiveguys.com/survey
  for Official Rules and how to enter
    without making a purchase or
         completing a survey.
        Void where prohibited.

**********************************

Einsteins
1077 Juniper Street
Atlanta, GA 30309
404.876.7925

Server: Jarrett                  07/18/2019
4/8/2                              7:58 PM
Guests: 0                          60038

Unit 2
++++++++++++++++++++++++++++++++++++++++
Fried Green Tomatoes               9.00
Porchetta                         22.00
Peach Pound Cake                   7.00
        Subtotal                  38.00
        Tax                        3.38
        Total                     41.38

Complete Subtotal                 38.00

Subtotal                          38.00
Tax                                3.38

Total                             41.38

Balance Due                       41.38

    Save 10% off with same day
  Fox Theatre or SCADShow tickets.
     Join our cardless VIP Program
  150 points = $10 Automatically
  https://einstein.atlanta.com/

 Gmail                                    John Powers <jmppowers@gmail.com>

---

**Your ride with Isaiah on July 19**
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>                Fri, Jul 19, 2019 at 8:41 AM
To: jmppowers@gmail.com



JULY 19, 2019 AT 8:23 AM

# Thanks for riding with Isaiah!



| | |
|---|---|
| Lyft fare (2.83mi, 12m 23s) | $10.48 |
| Tip | $2.00 |

 MasterCard *0497                              **$12.48**





● **Pickup**  8:23 AM
259 Peachtree Center Ave NE, Atlanta, GA

● **Drop-off**  8:36 AM
500 14th St NW, Atlanta, GA



## This and every ride is carbon neutral

**LEARN MORE**

## Refer a Driver



# Receipt

1 Thomas Circle, 8th Floor Washington, DC 20005

| Trip Information | Upside Total | Upside Booking Number |
|---|---|---|
| **Your trip** | **$325.25** | **063D-BB64** |

Flight
Travelers: John Michael Powers
JOHN  POWERS

Jul 26, 2019
MasterCard ****0497

*Look for **Upside Travel 063D-BB64**
on your credit card statement.*

## Purchase Details

### American Airlines flight from Washington (DCA) to Atlanta (ATL)

| | |
|---|---|
| Base Price | $306.98 |
| 0017375141138 (John Powers), Economy | |
| Flight taxes | $37.32 |
| **Total paid** | **$325.25** |

By using Upside, you understand that your trip and personal information are subject to Upside's Terms and Conditions and Privacy Policy

Package base prices may reflect confidential Upside rates. In these cases, the amounts reflected here may be calculated from the proportions of the original retail price minus Upside savings and not the actual rates.

Need to change, cancel or add to your reservation? Download the app, or chat, email us at navigators@upside.com, or call (855) 252-2151



# Receipt

1 Thomas Circle, 8th Floor Washington, DC 20005

| Trip Information | Upside Total | Upside Booking Number |
|---|---|---|
| **Your trip** | **$389.61** | **063D-BB64** |
| Flight<br>Travelers: John Michael Powers<br>JOHN  POWERS | Jul 2, 2019<br>MasterCard ****0497<br><br>*Look for **Upside Travel 063D-BB64**<br>on your credit card statement* | |

## Purchase Details

### American Airlines flight from Washington (DCA) to Atlanta (ATL)

| | |
|---|---|
| Base Price<br>  0017375141138 (John Powers), Economy | $337.08 |
| Flight taxes | $52.53 |
| **Total paid** | **$389.61** |

By using Upside, you understand that your trip and personal information are subject to Upside's Terms and Conditions and Privacy Policy.

Package base prices may reflect confidential Upside rates. In these cases, the amounts reflected here may be calculated from the proportions of the original retail price minus Upside savings and not the actual rates.

Need to change, cancel or add to your reservation? Download the app, or chat, email us at navigators@upside.com, or call (855) 252-2151

THE UPSIDE TRAVEL COMPANY, LLC, 1 THOMAS CIRCLE NW, WASHINGTON, D.C. 20005

By using Upside, you understand that your trip and personal information are subject to
Upside's Terms and Conditions and Privacy Policy.

---

**Upside Travel** <navigators@upside.com>                                Tue, Jul 2, 2019 at 7:30 PM
To: jmppowers@gmail.com
Cc: receipts@expensify.com



# Trip itinerary and receipt

## Flight to Atlanta, GA
Monday, Jul 22–Friday, Jul 26

Your Booking Number:

**063D-BB64**    View itinerary details

## Questions? Contact our Navigators
(855) 252-2151
navigators@upside.com

[Quoted text hidden]

Mon. 07/22/19
American Airlines 4525

| 4:57 pm | 6:57 pm |
|---------|---------|
| DCA | ATL |
| Washington | Atlanta |

| Seat: | 13C **View or Change Seat** |
|-------|------------------------------|
| Class: | Economy |
| Equipment: | E75 |

Fri. 07/26/19
American Airlines 4525

| | |
|---|---|
| 7:27 pm | 9:29 pm |
| ATL | DCA |
| Atlanta | Washington |

| | |
|---|---|
| Seat: | 13C **View or Change Seat** |
| Class: | Economy |
| Equipment: | E75 |

## Manage your trip anywhere

Download the Upside app to get travel alerts, special offers, and 24x7 support on your upcoming work trip

 

## Traveler Information

John Michael Powers
jmppowers@gmail.com
5853556194

| | |
|---|---|
| **Trip Price** | **$389.61** |
| Taxes and Fees | $52.53 |

To download an itemized receipt, log in to your account and view this trip.

## Ticket Information

eTicket: #0017375141138 (J. Powers)

[Quoted text hidden]



**ATLANTA MARRIOTT MARQUIS**          **GUEST FOLIO**

| 3411 | POWERS/J | | 139.00 | 07/27/19 | 11:00 | 5479 |
| ROOM | NAME | | RATE | DEPART | TIME | ACCT# |
| CYD | | | | 07/26/19 | 08:03 | |
| TYPE | | | | ARRIVE | TIME | |
| 201 | | | | | | |

| ROOM CLERK | ADDRESS | | PAYMENT | | MBV#: | XXXXX5526 |

| DATE | REFERENCES | | CHARGES | CREDITS | BALANCES DUE |
|---|---|---|---|---|---|
| 07/26 | ROOM TR | 3411, 1 | 139.00 | | |
| 07/26 | STATE TX | 3411, 1 | 12.37 | | |
| 07/26 | CITY TAX | 3411, 1 | 11.12 | | |
| 07/26 | GA RMFEE | 3411, 1 | 5.00 | | |
| 07/27 | VS CARD | | | $167.49 | |

TO BE SETTLED TO: VISA     CURRENT BALANCE .00

THANK YOU FOR CHOOSING THE ATLANTA MARRIOTT MARQUIS!

See our "Privacy & Cookie Statement" on Marriott.com

Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy Account Statement for updated activity. See members.marriott.com for new Marriott Bonvoy benefits.



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA 30303

Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X



**MARRIOTT**

**ATLANTA MARRIOTT MARQUIS**                    **GUEST FOLIO**

| 3411 ROOM | POWERS/JOHN/MR | | 128.00 RATE | 07/26/19 DEPART | 08:04 TIME | 40262 ACCT# |
| CYD TYPE | 401 HOLLAND LN APT 1 | | | 07/25/19 | 08:42 | |
| 235 | ALEXANDRIA VA 223143481 | | | ARRIVE | TIME | |
| ROOM CLERK | ADDRESS | | PASSPORT: VSXXXXXXXXXXXX8177 PAYMENT | | | MBV#:     XXXXX5526 |

| DATE | REFERENCES | | CHARGES | CREDITS | BALANCES DUE |
|------|------------|--|---------|---------|--------------|
| 07/25 | ROOM TR | 3411, 1 | 128.00 | | |
| 07/25 | STATE TX | 3411, 1 | 11.39 | | |
| 07/25 | CITY TAX | 3411, 1 | 10.24 | | |
| 07/25 | GA RMFEE | 3411, 1 | 5.00 | | |
| 07/26 | CCARD-VS | | | 154.63 | |
| | PAYMENT RECEIVED BY  VISA | | XXXXXXXXXXXX8177 | | |
| | | | | | .00 |

See our "Privacy & Cookie Statement" on Marriott.com

Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy Account Statement for updated activity. See members.marriott.com for new Marriott Bonvoy benefits.



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA  30303

Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X



MARRIOTT                    **ATLANTA MARRIOTT MARQUIS**                    **GUEST FOLIO**

| 3411 ROOM | POWERS/JOHN/MR NAME | 174.00 RATE | 07/25/19 DEPART | 08:41 TIME | 40253 ACCT# |
| CYD TYPE | 401 HOLLAND LN APT 1 | | 07/22/19 ARRIVE | 19:58 TIME | |
| 255 ROOM CLERK | ALEXANDRIA VA 223143481 ADDRESS | PASSPORT: VSXXXXXXXXXXX8177 PAYMENT | | | MBV#:   XXXXX5526 |

| DATE | REFERENCES | | CHARGES | CREDITS | BALANCES DUE |
|------|-----------|---|---------|---------|--------------|
| 07/22 | ROOM TR | 3411, 1 | 166.00 | | |
| 07/22 | STATE TX | 3411, 1 | 14.77 | | |
| 07/22 | CITY TAX | 3411, 1 | 13.28 | | |
| 07/22 | GA RMFEE | 3411, 1 | 5.00 | | |
| 07/23 | ROOM TR | 3411, 1 | 191.00 | | |
| 07/23 | STATE TX | 3411, 1 | 17.00 | | |
| 07/23 | CITY TAX | 3411, 1 | 15.28 | | |
| 07/23 | GA RMFEE | 3411, 1 | 5.00 | | |
| 07/24 | ROOM TR | 3411, 1 | 174.00 | | |
| 07/24 | STATE TX | 3411, 1 | 15.49 | | |
| 07/24 | CITY TAX | 3411, 1 | 13.92 | | |
| 07/24 | GA RMFEE | 3411, 1 | 5.00 | | |
| 07/25 | CCARD-VS | | | 635.74 | |
| | PAYMENT RECEIVED BY VISA | XXXXXXXXXXXX8177 | | | |
| | | | | | .00 |

See our "Privacy & Cookie Statement" on Marriott.com

**Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy Account Statement for updated activity. See members.marriott.com for new Marriott Bonvoy benefits.**



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA 30303

**Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.**

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X

```
          & & & 410 & & &
       ATLANTA MARRIOTT MARQUIS
          **** PULSE ****
22513 ZLATAN
----------------------------------
CHK  5787                 GST  1
        25 Jul'1  8:32 PM
----------------------------------
 1 CRAB CHIPS              15.00
     TO GO
 1 BURGER MARRIOTT         16.00
     TO GO

  Subtotal:              ` 5.00
  Tax:                   $  .2
8:32 PM
     TOTAL  `   :  $38.12


  PLEASE COMPLETE F.. ROOM CHARGES

GRATUITY_____

TOTAL_____

 ROOM NUMBER_____

PRINT LAST NAME_____.

SIGNATURE_____
```

df

```
       Papi's Cuban & Caribbean Grill

Server: Isaiah              07/27 2019
Table 506/1                    1:42  M
Guests: 2                      40031

Vaca Frit                       15.29
Tostones                         3.99

Subtotal                        19.28
Tax                              1.54

Total                          20.82

Balance Due                 20.82

      Thanks for Coming!!!
```

 Gmail

John Powers <jmppowers@gmail.com>

---

**Your ride with Joel on July 26**
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>                    Sat, Jul 27, 2019 at 11:27 PM
To: jmppowers@gmail.com



JULY 26, 2019 AT 11:11 PM

# Thanks for riding with Joel!



| | |
|---|---|
| Lyft fare (8.97mi, 15m 32s) | $14.50 |
| Lyft Credits | -$1.45 |

| | |
|---|---|
| MasterCard *0497 | **$13.05** |





- **Pickup**  11:11 PM
  3354 Peachtree Rd, Atlanta, GA

- **Drop-off**  11:27 PM
  257 Peachtree Center Ave NE, Atlanta, GA



# This and every ride is carbon neutral

### LEARN MORE

## Refer a Driver



- **Pickup** 8:05 AM
  58 Harris St NE, Atlanta, GA

- **Drop-off** 8:12 AM
  254 Mitchell St SW, Atlanta, GA



## This and every ride is carbon neutral

**LEARN MORE**

# Refer a Driver

 **Gmail**

John Powers <jmppowers@gmail.com>

---

**Your ride with Wallace on July 26**
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>
To: jmppowers@gmail.com

Fri, Jul 26, 2019 at 8:27 AM



JULY 26, 2019 AT 8:05 AM

# Thanks for riding with Wallace!



| | |
|---|---|
| Lyft fare (1.23mi, 7m 12s) | $9.44 |
| Tip | $2.00 |
| Lyft Credits | -$0.94 |

MasterCard *0497       **$10.50**



 Gmail

John Powers <jmppowers@gmail.com>

---

**Your ride with Cheryl on July 25**
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>
To: jmppowers@gmail.com

Fri, Jul 26, 2019 at 8:04 AM



JULY 25, 2019 AT 8:50 AM

# Thanks for riding with Cheryl!



| | |
|---|---|
| Lyft fare (1.07mi, 8m 33s) | $7.85 |
| Tip | $2.00 |
|  Lyft Credits | -$0.78 |

MasterCard *0497 **$9.07**





● **Pickup**  8:50 AM
  10 Harris St NW, Atlanta, GA

● **Drop-off**  8:59 AM
  254 Mitchell St SW, Atlanta, GA



## This and every ride is carbon neutral

**LEARN MORE**

# Refer a Driver

# FIVE GUYS

STORE # VA-0106
Reagan National Airport
Washington, DC 20001
Phone (703) 417-1990

7/22/2019                          4:33:56 PM
Order Id: AAAJRHS6AEFC
33 - FIVE GUYS
Employee: Markiw T

---

## 33

---

| | |
|---|---|
| 1 Bacon Cheeseburger | $10.44 |
| Bacon | $0.00 |
| Lettuce | $0.00 |
| Tomatoes | $0.00 |
| Grilled Onions | $0.00 |
| Grilled Mushrooms | $0.00 |
| Jalapeno Peppers | $0.00 |
| 1 Regular Cajun Fry | $5.05 |
| 1 Bottled Water | $2.79 |

Sub Total                          $18.28

Sales Tax                          $1.83
Order Total                        $20.11

MasterCard                         $20.11
    Card#: ************0497
    Authorization: 004662

--> Order Closed <--

*************************************
Don't throw away your receipt!!!

Help Five Guys and you could win!
Log online to www.fiveguys.com/survey
and fill out a brief survey!

10 lucky people will win a
Five Guys Gift Card each month
worth $25 each!

No purchase necessary.
Sweepstakes ends 12/31/2019.
Must be at least 18 years old and
submit survey within 30 days
of the receipt date to enter.
Please visit www.fiveguys.com/survey
for Official Rules and how to enter
without making a purchase or
completing a survey.
Void where prohibited.

*************************************

EXHIBIT

F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DONNA CURLING, ET AL., | |
| Plaintiffs, | Civil Action File No. 1:17-CV-2989-AT |
| v. | |
| BRAD RAFFENSPERGER, ET AL., | |
| Defendants. | |

## DECLARATION OF WILLIAM BRENT NEY

1.     My name is William Brent Ney.  I make this declaration pursuant to
28 U.S.C. § 1746 in support of the fee request submitted by the Coalition Plaintiffs
in this case.

2.     I am a 1999 graduate of Emory Law School and a member in good
standing of the State Bar of Georgia since 1999.  A true and correct copy of my
curriculum vitae is attached hereto as Exhibit 1.

3.     In November, 2017, I was engaged to represent Coalition for Good
Governance in this case.

4.     I have attached as Exhibit 2 a true and correct copy of my firm's billing statement for this case.  This statement shows the tasks performed by myself and other timekeepers in my firm as well as the date on which the work was done and the time it took to perform each task.  All the work was done by myself or under my supervision.

5.     For the work performed in this engagement, a reasonable fee for my time is $450 per hour; for my law clerk is $145 per hour, and for my paralegal is $145 per hour.  At these rates, the reasonable cost for my time (99.4 hours) is $44,730; for my law clerk's time (13.6 hours) is $1,972; and for my paralegal's time (12.5 hours) is $1,812.50, for a total amount of $48,514.50.

6.     Based on my experience as a litigator in the Atlanta market, the rates set forth in the foregoing paragraph are reasonable and well within the rates charges for lawyers, law clerks, and paralegals of similar experience and skill.

7.     Pursuant to 28 U.S.C.  § 1746 I declare under the pains and penalties of perjury that the foregoing is true and correct.

This 15th day of October, 2019.

William B. Ney

2

EXHIBIT

1

# William Brent Ney

265 South Culver Street
Lawrenceville, Georgia 30044

**OVERVIEW**

William Brent Ney is the founding member of Ney Rhein, LLC, a law firm located in Atlanta, Georgia.  Mr. Ney's practice is currently focused upon the pursuit of Plaintiff's side legal malpractice cases and other disputes between Clients and their attorneys, including but not limited to fee disputes, sanctions issues and ethics complaints.  Mr. Ney is a 1995 graduate of The Ohio State University and a 1999 graduate of Emory Law School.  Following graduation from law school, Mr. Ney served as a litigation associate at Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A.  In 2001, Mr. Ney returned to Georgia to practice as an associate with Edwin J. Schklar, a prominent Atlanta litigator.  While working with Mr. Schklar, Mr. Ney handled a wide range of civil cases, including contract disputes, business torts, legal malpractice cases, derivative actions and other matters.  Mr. Ney opened his own practice in 2008.  From 2010-2018, Mr. Ney practiced as a member of Ney Hoffecker Peacock & Hayle, LLC (and its predecessor, Ney Hoffecker & Erck, LLC).  Mr. Ney has litigated dozens of legal malpractice cases and other cases involving claims against attorneys.  Mr. Ney is licensed in to practice in various state and federal trial and appellate courts in Georgia, Ohio and Colorado.  Additionally, Mr. Ney is admitted to practice in the United States Courts of Appeals for the Sixth and Eleventh Circuits and the United States Supreme Court.  Mr. Ney has been called upon to provide expert affidavits in several legal malpractice cases and has also provided testimony regarding standard of care and attorneys' fees issues at both deposition and trial.

**EDUCATION**

The Ohio State University
*Bachelor of Arts*, Political Science
1995

Emory Law School
*Juris Doctor*
1999

**PROFESSIONAL LICENSES**

Licensed to practice in all State trial and appellate courts in Georgia and Ohio; admitted to practice in the United States Supreme Court, the United States Courts of Appeals for the Sixth and Eleventh Circuit, and the United States District Courts for the Northern District of Ohio, the Southern District of Ohio, the Northern District of Georgia, the Middle District of Georgia and the District of Colorado.

**CAREER OVERVIEW**

**1999 -2001** *Sanborn, Brandon, Duvall & Bobbitt Co., LPA, Columbus Ohio*

Litigation associate in busy transportation and general civil practice. Handled all aspects of civil litigation matters, including but not limited to preparation of pleadings, taking and defending depositions, preparation of discovery, motions practice, trials and appellate argument. Primary practice areas included transportation litigation and regulatory defense and general civil litigation.

**2001-2008** *Schklar Ney & Heim, LLC Atlanta, Georgia*

Litigation associate in boutique Atlanta law firm with sophisticated commercial practice. Handled all aspects of civil litigation matters, including but not limited to preparation of pleadings, taking and defending depositions, preparation of discovery, motions practice, trials and appeals. Primary practice areas included complex civil litigation, legal and professional malpractice cases, high asset domestic matters and trust and estate litigation.

**2008-2018** *Ney Hoffecker Peacock & Hayle, LLC (formally, Ney Hoffecker & Erck, LLC), Atlanta, Georgia*

Managing partner in private civil litigation practice. Oversaw litigation team focused upon the representation of plaintiffs in legal malpractice action. Other practice areas included general civil litigation, domestic litigation, estate litigation and general business representation.

**2019-Present** *William Brent Ney, LLC, Lawrenceville, Georgia*

Managing partner in private civil litigation practice. Oversaw litigation team focused upon the representation of plaintiffs in legal malpractice action. Other practice areas included general civil litigation, domestic litigation, estate litigation and general business representation.


**REPRESENTATIVE LEGAL MALPRACTICE CASES AND CASES INVOLVING ATTORNEYS**

*Mellon Ventures II, L.P. et al. v. Alston & Bird, L.P. et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2006CV116281 (Legal malpractice case involving negligence representation in Venture Capital Deal)

*Philip Moore v. William Charles Moore, et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2007-CV-143501 (Appeal of sanctions award)

*Carolyn S. Pace v. Durance Lowendick and Cuzdey, Ehrmann, Wagner, Stine, Sansalone & Bobe LLC,* State Court of Fulton County, State of Georgia, Civil Action File No. 10EV010683-D (Legal malpractice case involving negligent medical malpractice representation)

*Janet Guzzardo v. James E. Patterson, et al.*, Superior Court of Butts County, State of Georgia, Civil Action File No. 2012V364(W) (Legal malpractice action involving negligent representation in disability case)

*David Berkman, et al. v. Christopher T. Graham, et al.,* State Court of Fulton County, State of Georgia, Civil Action File No. 13EV017175A (Legal malpractice action involving negligent asset protection planning)

*Billy K. Larkin v. Karen M. Earley, et al.*, Superior Court of Muscogee County, State of Georgia, Civil Action No. SU13CV3751-06 (Legal malpractice action involving improper deed preparation by closing attorney)

*Tyrone Bennett v. Andrew M. Magruder, et al.*, Superior Court of Richmond County, State of Georgia, Civil Action File No. 2014RCCV96 (Legal malpractice action Involving negligent representation in personal injury action)

*Glenn Daniel Morgan v. Richard R. Rafter, et al.*, Superior Court of Effingham County, State of Georgia, Civil Action File No. 2015000196T (Legal malpractice action involving improper drafting of promissory note and security instrument)

*James W. Penland v. Evelyn Bostwick, et al.*, State Court of DeKalb County, State of Georgia, Civil Action File No. 15-A-57449-E5 (Attorney Fee Dispute representation)

*Peter Greene v. Henry De Give, et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2015CV264025 (Legal malpractice action involving negligent personal injury representation)

*Mary Anne Hampton, et al. v. P. Justin Thrailkill,* Superior Court of Fayette County, State of Georgia, Civil Action File No. 2015V-0113 (Legal malpractice action involving trial error in commercial dispute)

*Leiba Middleton v. Nkosi John Bey, et al.*, State Court of Fulton County, State of Georgia, Civil Action File No. 15EV004153 (Legal malpractice action involving negligent personal injury representation)

*Offutt v. Schwartz, et al.*, Superior Court of DeKalb County, State of Georgia, Civil Action File No. 17CV5249 (Legal malpractice action involving negligent slip and fall claim representation)

*Joseph Zywics v. Roberts W. Lamb, et al,* Superior Court of Bartow County, State of Georgia, Civil Action File No. SUCV2017000621 (Legal malpractice action involving improper representation in property damage claim)

*Edward F. Culican, Jr. v. Marta Maria Noriega-Allen, et al.,* Superior Court of Fulton County State of Georgia, Civil Action File No. 2017CV290193 (Legal malpractice action involving mishandling of divorce issues)

*Krystal Moore v. Morris O. Little et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2017CV292107 (Legal malpractice action involving negligent representation in defamation action)

*Jerry Maki v. John Foy et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2017CV285055 (Legal malpractice case involving mishandling of personal injury claim)

*Janel Cheek v. L. Clayton Smith, Jr. et al.*, Superior Court of Dougherty County, State of Georgia, Civil Action File No. SUCV2018000359 (Legal malpractice action involving improper administration of estate)

*George Potter, et al v. Gary J. Markwell et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2017CV288866 (Legal malpractice action involving misdrafting of will and failure to properly administer estate)

*Dashawn Mayweather v. Sherri L. Washington et al.*, Superior Court of Rockdale County, State of Georgia, Civil Action File No. 2018-CV-1052 (Legal malpractice action involving failure to appear at divorce hearing)

*Jerry Gibby v. Andrea Tousignant*, Court of Appeals, State of Georgia, Appeal No.  Appeal No. A18A1202 (Appeal of attorneys' fee award)

*Brett D. McNeill et al. v. SD&D Greenbuilt, LLC*, Court of Appeals, State of Georgia, Appeal No. A18A1840 (Interlocutory appeal in legal malpractice action involving improper advice regarding redevelopment of commercial property)

*Birikiti Geberemedhen v. Richard Stephen et al.*, Superior Court of Gwinnett County, State of Georgia, Civil Action File No. 18A 00626-6 (Legal malpractice action involving theft of client funds)

 *Wendy Christian v. T. Joseph Boyd et al.*, Superior Court of Bibb County, State of Georgia, Civil Action File No. 2016-CV-065671 (Legal malpractice action involving missed statute of limitations and *ante litem* notice issue in a personal injury action)

*Lynn Roberta Roberts v. James D. McGuire et al.*, United States District Court for the Northern District of Georgia, Civil Action File No. 1:17-cv-01588-TWT (Legal malpractice action involving improper handling of divorce issues)

*Gabriela Da Silva v. Neil R. Flit et al.*, Superior Court of Cobb County, State of Georgia, Civil Action File No. 17109053 (Legal malpractice action involving mishandling of client funds)

*Samir Braich v. Neil Flit et al.*, Superior Court of Cobb County, State of Georgia, Civil Action File No. 18103330 (Legal malpractice action involving missed statute of limitation on personal injury action)

*Kris Reed v. Neil Flit et al.*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2017CV292114 (Legal malpractice action involving missed statute of limitation on personal injury action)

*Susan Hill v. Amy Burnett*, Court of Appeals, State of Georgia, Appeal No.  Appeal No. A18A1655 (Appeal of attorneys' fee award)

*Michael Pitts v. Neil R. Flit and Law Office Neil Flit and Associates LLC*, Superior Court of Cobb County, State of Georgia, Civil Action File No. 18105778 (Legal malpractice case involving missed statute of limitations)

*Sharon Redden v. Neil R. Flit and Law Office Neil Flit and Associates LLC*, Superior Court of Cobb County, State of Georgia, Civil Action File No. 18109085 (Legal malpractice case involving escrow accounting dispute)

## EXPERT CONSULTING AND TESTIMONY

*Baskin & Baskin, P.C. v. Linnette E. Dreisbach*, State Court of Cobb County, State of Georgia, Civil Action File No. 14-A-1629 (O.C.G.A. § 9-11-9.1 Affidavit and deposition testimony)

*R.D. Thomas Jr., and Mary Lynn Troia Willingham, et al. v. First Southern Bank f/k/a/ The Patterson Bank, et al.*, Superior Court of Pierce County, State of Georgia, Civil Action File No. SUCA2015000234 (O.C.G.A. § 9-11-9.1 Affidavit and deposition testimony)

*Tony E. Mathis v. Robert Kenner Jr and The Law Offices of Robert Kenner Jr.,* State Court of Henry County, State of Georgia.  Civil Action File No. 16SV486JTH (O.C.G.A. § 9-11-9.1 Affidavit, deposition testimony and trial testimony)

*The Maneley Law Firm, P.C. v. Quincy Sneed*, Superior Court of Fulton County, State of Georgia, Civil Action File No. 2016CV280985 (O.C.G.A. § 9-11-9.1 Affidavit and deposition testimony)

*Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, United States District Court for the Northern District of Georgia, Civil Action File No. 1:15-cv-01665-RWS (Expert consulting regarding reasonableness of attorneys' fees and other issues in dispute between law firm and former client)

*Alice H. Anderson v. Robert Michael Drose, et al.*, Court of Common Please for the Ninth Judicial Circuit, County of Charleston, State of South Carolina, Case No. 2018-CP-10-02963 (Standard of care affidavit in legal malpractice dispute)

*Ryan Froelich et al. v. Andrew Charles Matteson et al.*, Henning Arbitration (O.C.G.A. § 9-11-9.1 Affidavit regarding abandonment of breach of contract/business tort case by clients' former attorneys)

*Ramirez v. Merriwether & Tharpe, LLC*, *et al*., Superior Court of Fulton County, State of Georgia, Civil Action File No.2018-CV-311598 (O.C.G.A. § 9-11-9.1 Affidavit and testimony regarding standard of care issues in the context of family law case)

EXHIBIT

2

# WILLIAM BRENT NEY, LLC
ATTORNEY AT LAW

WILLIAM BRENT NEY
Direct Dial 404-842-7232
Fax 770-637-5057
william@neyrhein.com

265 SOUTH CULVER STREET
LAWRENCEVILLE, GEORGIA 30046

October 14, 2019

### STATEMENT OF ACCOUNT

Client:  Coalition for Good Governance
         Marilyn R. Marks
         7035 Marching Duck Drive E504
         Charlotte, North Carolina 28210

Matter:  CGG/Kemp

---

TIME CHARGES

|                    | Hours | Rate      | Amount      |
|--------------------|-------|-----------|-------------|
| William Brent Ney  | 99.4  | $450/hr.  | $44,730.00  |
| Law Clerk          | 13.6  | $145/hr.  | $1,972.00   |
| Paralegal          | 12.5  | $145/hr.  | $1,812.50   |
|                    |       | **Total:**| **$48,514.50** |

### DAILY DETAIL OF TIME CHARGES

William Brent Ney

| Date | Services Rendered | Hours |
|------|-------------------|-------|
| 11/17/2017 | Telephone conference with Marks; Two emails to Marks; Four emails from Marks; Review documentation provided by Marks | 0.8 |
| 11/18/2017 | Email from Marks | 0.1 |
| 11/19/2017 | Four emails from Marks; Two emails to Marks | 0.2 |
| 11/20/2017 | Four emails to Marks; Five emails from Marks | 0.2 |
| 11/21/2017 | Teleconference with Law Clerk; Seven emails from Marks; Two emails to Marks | 0.3 |
| 11/22/2017 | Three telephone conferences with Marks; Meet with Contract Attorney; Meet with Law Clerk; Eighteen emails from Marks; Three emails from Renigar; Three emails to Renigar; Email to Schwartz; Seven emails to Marks; Edit Entry of Limited Scope Appearance; Edit Response to Motion to Withdraw and Cross-Motion to Disqualify; Legal research regarding Disqualification issues; Review documents provided by Marks; | 4.5 |
| 11/23/2017 | Legal research regarding conflict issues, duties to former clients, and informed consent; Reviewed Motion to Withdraw; Review prior communications from between CGG and Steptoe; Review docket; Prepare | 3.9 |

|            | and edit Response to Motion to Withdraw and Cross-Motion to Disqualify; Three emails from Marks |     |
|------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----|
| 11/24/2017 | Edit and revise Entry of Limited Scope Appearance, Motion to Disqualify and related documentation; Edit and revise Motion to Stay and Brief in Support; Review Docket; Review documents and information provided by Marks; Telephone conference with Marks; Seventeen emails to Marks; Twenty-seven emails from Marks | 3.5 |
| 11/25/2017 | Edit and revise Entry of Limited Scope Appearance. Motion to Disqualify and Brief in Support; Edit and revise Motion to Stay and Brief in Support; Twenty emails from Marks; Fifteen emails to Marks | 3.2 |
| 11/26/2017 | Six emails to Marks; Nine emails from Marks; Three emails from Hoke; Review multiple revisions of Motion to Disqualify, Brief in Support and related documents | 1.1 |
| 11/27/2017 | Meet with Law Clerk; Review legal research regarding disqualification issues; Telephone conference with Marks; Conference call with Marks and Hoke; Edit Motion to Expand Time to File *Ex Parte* Response; Edit Notice of Appearance; Twenty-seven emails to Marks; Three emails to Hoke; Thirty-Five emails from Marks; Six emails from Hoke; Email from Renigar; Email from Court | 5.5 |
| 11/28/2017 | Edit Motion to Strike and related documents; Edit, print and assemble Response to Motion to Withdraw and related documents; Meet with Law Clerk; Twenty-eight emails from Marks; Two emails from Court; Review Order Extending Response Time; Email to McConochie; Email from McConochie; Email from Ward; Review letter from Ward; Email from Daniel; Review letter from Steptoe; Twenty-Four emails to Marks; Email to McConochie | 4.8 |
| 11/29/2017 | Meet with Law Clerk; Prepare and edit letter to Steptoe; Three telephone conferences with Marks; Telephone conference with Ward; Two emails from Curling; Email from Price; Edit Consent to Withdrawal; Sixteen emails from Marks; Email from Ward; Two emails from Court; Review Order Granting Withdrawal and Staying Case; Review Order Administratively Closing Case; Two emails from Hoke; Fifteen emails to Marks; Two emails to Ward; Text from Marks | 4.0 |
| 11/30/2017 | Telephone conference with Marks; Six emails from Marks; Review litigation overview; Email from Court; Review Amended Order Sealing Response; Five emails to Marks; Two emails from Court; Email from Ward | 1.0 |
| 11/17/2017 | Telephone conference with Marks; Two emails to Marks; Four emails from Marks; Review documentation provided by Marks | 0.8 |
| 12/01/2017 | Telephone conference with McConochie; Five emails from Marks; Email from Ward; Three mails to Marks; Email to Ward | 0.4 |
| 12/02/2017 | Telephone conference with Marks; Five emails to Marks; Five emails from Marks; Email from Hoke | 0.7 |
| 12/03/2017 | Two emails from Marks; Review two draft letters | 0.2 |
| 12/04/2017 | Two emails from Ward; Email from Marks | 0.1 |

| | | |
|---|---|---|
| 12/05/2017 | Two telephone conferences with Marks; Six emails from Marks; Email from Holcomb; Five emails from Ward; Five emails from Marks; Six emails to Marks; Email to Holcomb; Three emails to Ward | 1.0 |
| 12/06/2017 | Email from Ward; Email from Marks; Telephone conference with Marks; Email to Ward; Two emails to Marks | 0.4 |
| 12/07/2017 | Two emails from Marks | 0.1 |
| 12/08/2017 | Meet with Marks;Mmeet with Marks and Protect Democracy Attorneys; Three emails to Marks; Email from Schnell; Email from Marks; Review letter to Totenberg; Four emails from Marks; Email from Ward; Email from Curling; Review/Process several dozen emails from Holcomb | 1.2 |
| 12/09/2017 | Telephone conference with Marks; Three emails from Marks | 0.4 |
| 12/11/2017 | Email from Marks; Email from Highsmith; Email from Ward; Email from McConochie; Email to Ringer; Email to Highsmith | 0.3 |
| 12/12/2017 | Telephone conference with Marks; Edit letter to Renigar; Email from Court; Review Order; Meet with Law Clerk; Twenty-one emails from Marks; Fifteen emails from Ward; Email from Law Clerk; Six emails from McGuire; Five emails from Caldwell; Email from Salter; Email froM Highsmith; Email from Lewis; Email from Waldron; Email fromk Hoke; Email from White; Email from Ringer; Email from Bennett; Email from Schnell; Eighjt emails to Marks; Email to Law Clerk; Two emails to McGuire; Two emails to Ward; Email to Renigar; Email to Salter; Email to Hoke | 3.0 |
| 12/13/2017 | Meet with Law Clerk; Telephone conference with McGuire; Two emails from Schnell; Six emails ffrom McGuire; Email from Marks; Email from Court; Two emails from Salter; Edit Joint Report Regarding Document Preservation Issues; Email from Caldwell; Email to McGuire; Email to Law Clerk; Three emails to McGuire | 1.8 |
| 12/14/2017 | Telephone conference with Marks; Three emails from Schnell; Five emails from Marks; Five emails from McGuire; Email from Highsmith; Three emails from Salter; Email from Court; Email from Renigar; Three emails to McGuire; Email to Ward; Email to Salter; Email to Marks | 1.3 |
| 12/15/2017 | Five emails to Marks; Eleven emails from Marks; Six emails from Ward; Two emails from Court; Review Orders Regarding Preservation of Evidence | 0.7 |
| 12/16/2017 | Email from Holcomb; Email from Schoenburg; Email from Price; Email from Digges; Email from Marks | 0.1 |
| 12/17/2017 | Three emails to Marks; Two emails from Marks; Email from Ward; Email from Curling | 0.3 |
| 12/18/2017 | Two emails from Marks; Email from Holcomb; Email from Imdigges; Email from Bacon; Email to Marks | 0.2 |
| 12/19/2017 | Email from Terry; Email from Holcomb; Emails from Marks; Email from Davis | 0.1 |

| | | |
|---|---|---|
| 12/21/2017 | Six emails from Marks; Two emails from Ward; Email from Salter; Meet with Law Clerk; Edit letter to Fulton County Board of Elections; Two emails from Court; Email from Hoke; Email from Holcomb; Email from Renigar; Three emails to Marks; Email to Schwartz, *et al*.; Email to Law Clerk; Email to Ringer; Two emails to McGuire | 1.2 |
| 12/22/2017 | Two emails from Court; Review Order Granting Admission *Pro Hac Vice*; Review Certificate of Mailing; Two emails from Marks; Email from McGuire; Email to McGuire; Email to McGuire | 0.3 |
| 12/27/2017 | Email to McGuire; Email to Marks; Two emails from Marks | 0.1 |
| 12/30/2017 | Email to Marks | 0.1 |
| 12/31/2017 | Two emails from Marks | 0.1 |
| 01/01/2018 | Two emails to Marks; Two emails from Marks | 0.1 |
| 01/03/2018 | Two emails from Marks; Three emails to Marks | 0.2 |
| 01/04/2018 | Two emails from Marks; Email from Holcomb; Email from Hoke | 0.1 |
| 01/05/2018 | Email from Court; Review Order; Meet with Law Clerk; Edit Notice of Appearance; Telephone conference with Marks; Eleven emails from Marks; Eight emails from McGuire; Four emails to Marks; Six emails to McGuire; Two emails to Renigar | 1.5 |
| 01/06/2018 | Two emails from Marks; Email from Hoke | 0.1 |
| 01/07/2018 | Email from Marks | 0.1 |
| 01/08/2018 | Prepare and edit Notice of Intent Regarding Representation; Meet with Law Clerk; Thirteen emails from Marks; Three emails from McGuire; Two emails from Court; Email from Law Clerk; Email from Renigar; Review Status Report filed by Steptoe & Johnson, LLP; Seven emails to Marks; Two emails to McGuire | 1.6 |
| 01/09/2018 | Telephone conference with Marks; Email to Marks; Eight emails from Marks; Two emails from McGuire; Email from Court; Review Entry of Appearance; Email from McGuire | 0.5 |
| 01/10/2018 | Four emails from Marks; Email to McGuire | 0.1 |
| 01/11/2018 | Email from Court; Review Order; Email to Marks; Nine emails from Marks | 0.2 |
| 01/12/2018 | Email from McGuire; Email from Ward; Email from Court; Review Motion to Withdraw and related documents; Email to Marks; Email from Marks | 0.2 |
| 01/13/2018 | Two emails from Marks | 0.1 |
| 01/16/2018 | Three emails from Court; Review Objection to Request to Withdraw; Review Notice of Leave of Absence; Review Certificate of Compliance with Standing Order; Seven emails from Marks; Email from Ichter; Two emails from McGuire; Email from McConochie; Two email to McGuire; Email to Marks | 1.2 |

| | | |
|---|---|---|
| 01/17/2018 | Three emails from Marks | 0.1 |
| 01/18/2018 | Email from Court; Review Order Granting Motion to Withdraw; Three emails to Marks; Three emails from Marks; Email to McGuire | 0.2 |
| 01/19/2018 | Review documents relating to Substitution of Counsel; Three emails from Ichter; Two emails from McGuire; Email to Marks; Email from Marks | 0.3 |
| 01/21/2018 | Email from Marks | 0.1 |
| 01/23/2018 | Meet with Law Clerk | 0.1 |
| 01/25/2018 | Nine emails from Marks; Email from Ward; Email from Ichter; Review Consent to Withdraw; Email from McGuire; Email from Court; Three emails to Marks; Email to Ward | 0.3 |
| 01/26/2018 | Email from Salter; Email from Marks | 0.1 |
| 01/27/2018 | Email from Marks; Email to Marks | 0.1 |
| 01/28/2018 | Two emails from Marks; Email to Marks | 0.1 |
| 01/29/2018 | Five emails from Marks; Three emails from McGuire | 0.1 |
| 01/30/2018 | Email from Salter; Two emails from McGuire; Seven emails from Marks; Three emails to Marks | 0.2 |
| 02/02/2018 | Two emails from Marks; Two emails from Ichter; Two emails from McGuire | 0.2 |
| 02/03/2018 | Two emails from Marks; Email from McGuire; Email to McGuire | 0.1 |
| 02/06/2018 | Email from Ichter; Two emails from Court; Review Response to Order by Curling, Price and Schoenberg; Two emails from Marks; Review Response to Order by Digges; Email from McGuire | 0.2 |
| 02/07/2018 | Six emails from Marks; Email from Ichter; Two emails to Marks | 0.2 |
| 02/08/2018 | Two emails from Ichter; Four emails from Marks | 0.1 |
| 02/09/2018 | Email from McGuire; Email from Marks | 0.1 |
| 02/12/2018 | Email to Marks; Two emails from Marks | 0.1 |
| 02/16/2018 | Review Leave of Absence | 0.1 |
| 02/17/2018 | Email to Marks; Email from Marks | 0.1 |
| 02/21/2018 | Email from Marks; Email from Brown | 0.1 |
| 02/23/2018 | Three emails from Court; Review Digges' Response to Order; Review Curling/Price Response to Order; Review Davis Response to Order | 0.1 |
| 02/26/2018 | Three emails to Marks; Email from Marks; Email from McGuire | 0.1 |

| 02/27/2018 | Two emails from Marks; Two emails from Court; Review Order; Review Certificate of Mailing; Two emails from McGuire; Two emails from Ichter; Email to McGuire; Two emails to Marks; Two emails to Ichter | 0.3 |
|---|---|---|
| 02/28/2018 | Email from Brown; Three emails from Court; Review Order; Review Certificates of Mailing; Email from Marks; Email from McGuire; Email to Ichter, *et al.;* Two emails to Marks | 0.2 |
| 03/02/2018 | Two emails from McGuire; Email from Ichter; Email to Ichter*, et al.*; Email to McGuire, *et al.* | 0.1 |
| 03/05/2018 | Meet with Law Clerk | 0.1 |
| 03/06/2018 | Review Third Amended Complaint; Email to McGuire; Email to Marks; Four emails from Marks | 0.8 |
| 03/07/2018 | Conference call with Marks, McGuire, *et al.* | 0.3 |
| 03/08/2018 | Email from Ichter; Review article regarding voting issues | 0.1 |
| 03/13/2018 | Email from Court | 0.1 |
| 03/14/2018 | Three emails from Court; Review Order and Certificate of Mailing; Two emails to Marks; Email from Marks; Email from McGuire | 0.1 |
| 03/21/2018 | Telephone conference with Marks; Telephone conference with Clerk of Court; Four emails from Court; Review Order dismissing Mr. Terry's claims; Review Clerk's Entry of Judgment; Four emails from Marks; Review Clerk's Certificate of Mailing; Email from McGuire; Ten emails to Marks | 1.0 |
| 03/22/2018 | Two emails from Court; Review Docket Correction; Email to Marks; Email from Marks | 0.1 |
| 03/23/2018 | Email from Court; Review Certificate of Mailing; Email to Marks | 0.1 |
| 03/27/2018 | Four emails from McGuire; Email from Ichter; Review Case Roles document; Email from Marks | 0.2 |
| 03/28/2018 | Three emails from Marks; Two emails from McGuire; Two emails to Marks | 0.2 |
| 03/29/2018 | Three emails to McGuire; Email to Marks; Email from Ichter; Two emails from McGuire; Five emails from Marks | 0.3 |
| 03/30/2018 | Telephone conference with Marks; Conference call with McGuire*, et al.;* Meet with Paralegal; Edit Entry of Appearance; Seventeen emails from Marks; Email from Brown; Three emails from Ichter; Two emails from McGuire; Email from Davis; Six emails from Court; Email from Digges; Fifteen emails to Marks; Meet with Paralegal; Prepare and edit Agreements for Legal Services for new clients; Two emails to Digges | 4.4 |
| 03/31/2018 | Email to Davis | 0.1 |
| 04/01/2018 | Five emails from Marks; Three emails from McGuire; Four emails from Ichter; Email from Brown; Email to Marks | 0.2 |

| | | |
|---|---|---|
| 04/02/2018 | Six emails from Marks; Two emails from McGuire; Five emails from Ichter; Three emails from Court; Email from Brown; Review Notices of Appearance; Email to McGuire; Two emails to Law Clerk; Email to Ichter | 0.2 |
| 04/03/2018 | Three emails from Cross; Five emails from Marks; Email from Ichter Two emails from Court; Review Notice of Appearance; Ten emails from McGuire; Email from Salter; Two emails to Marks | 0.2 |
| 04/04/2018 | Ten emails from McGuire; Twenty-One emails from Marks; Three emails from Salter; Email from Corrira; Eight emails from Brown; Two emails from Ichter; Three emails from Cross; Email from White; Three emails from Court; Email from Bennett; Email to McGuire; Two emails to Ichter; Email to Marks; Email to Brown | 0.3 |
| 04/05/2018 | Nine emails from Ichter; Eight emails from McGuire; Thirteen emails from Marks; Six emails from Brown; Email from Court; Review Motion for Status Conference; Email from Digges; Email to McGuire | 0.1 |
| 04/06/2018 | Seven emails from Marks; Eight emails from McGuire; Three emails from Court; Review Notice of Change of Address; Email from McConochie; Six emails from Ichter; Two emails from Brown | 0.2 |
| 04/07/2018 | Two emails from Marks | 0.1 |
| 04/08/2018 | Three emails from Marks | 0.1 |
| 04/09/2018 | Seven emails from Marks; Ten emails from McGuire; Three emails from Ichter; Email from Brown; Two emails from Court; Review Response to Motion to Amend Complaint; Email to Marks | 0.2 |
| 04/10/2018 | Twenty-two emails from Marks; Eleven emails from Ichter; Five emails from Brown; Six emails from McGuire; Three emails to Marks; Email to Ichter | 0.3 |
| 04/11/2018 | Email from Ichter; Four emails from McGuire; Three emails from Marks; Email from Ichter; Review Response in Support of Motion for Status Conference | 0.2 |
| 04/12/2018 | Six emails from Marks; Two emails from Brown; Two emails from Ichter | 0.2 |
| 04/13/2018 | Fifteen emails from McGuire; Sixteen emails from Marks; Four emails from Cross; Nine emails from Brown; Three emails from Ichter; Email from Court; Review Motion for Extension | 0.3 |
| 04/14/2018 | Two emails from Brown; Six email from Marks | 0.1 |
| 04/15/2018 | Three emails from Marks; Two emails to Marks | 0.1 |
| 04/16/2018 | Telephone conference with Marks; Meet with Law Clerk; Edit Response in Opposition to Motion for Extension; Edit letter to Lowman; Edit letter to Lowman; Three emails from Brown; Two emails from McGuire; Nine emails from Marks; Three emails from Court; Two emails from Salter; Email from Ichter; Eight emails to Marks | 1.3 |
| 04/17/2018 | Four emails from Marks; Email from Court; Email from Ichter; Review | 0.2 |

Reply Brief

| Date | Description | Hours |
|------|-------------|-------|
| 04/18/2018 | Ten emails from Marks; Six emails from Brown; Email from Ichter; Five emails from Court; Review Responses to Motion to Amend; Review Order Granting Motion to Amend; Three emails to Marks | 0.2 |
| 04/19/2018 | Seven emails from Marks; Three emails from Cross; Four emails from Brown; Email from McGuire | 0.2 |
| 04/20/2018 | Email from Marks; Email from Cross | 0.1 |
| 04/21/2018 | Two emails from McGuire; Two emails from Brown; Email from Marks; Email from Ichter | 0.1 |
| 04/22/2018 | Email from Bentrott; Four emails from Marks; | 0.1 |
| 04/23/2018 | Email to Marks; Three emails from McGuire; Four emails from Marks; Two emails from Ichter | 0.2 |
| 04/24/2018 | Sixteen emails from McGuire; Fourteen emails from Marks; Three emails from McConochie; Five emails from Salter; Two emails from Bryan; Email from Highsmith; Two emails from Brown; Two emails from Cross; Ten emails from Ichter; Four emails from White; Email from Burwell; Email from Court; Email from Lamb; Email to Marks; Email to McGuire, *et al.* | 0.5 |
| 04/25/2018 | Meet with Paralegal; Eight emails from McGuire; Email from McConochie; Email from Court; Email from Bentrott; Two emails from Brown; Email from Ichter; Four emails from Marks; Email from Brown; Two emails to Marks | 0.3 |
| 04/26/2018 | Email to McGuire; Two emails to Marks; Five emails from Marks; Email from Ichter; Two emails from McGuire; Email from Court; Review Response in Opposition to Motion to Amend Complaint | 0.2 |
| 04/27/2018 | Six emails from Marks; Two emails from McGuire; Two emails from Ichter; Email to Marks | 0.2 |
| 04/28/2018 | Email from Ichter; Two emails from Marks; Email from McGuire; Email to Marks | 0.1 |
| 04/29/2018 | Nine emails from Marks; Email from Brown; Three emails from Ichter; Four emails from McGuire; Email from Eberle | 0.1 |
| 04/30/2018 | Meet with Marks, Brown, McGuire, *et al.;* Ten emails from Marks; Email from Brown; Review draft Motion Regarding Use of AV Equipment and proposed Order; Eight emails from Court; Review Reply to Motion to Amend Complaint; Meet with Law Clerk; Edit Notice for Inspection; Seven emails from Schnell; Five emails from Cross; Email from Davis; Email from Ichter; Six emails from McGuire; Two emails to Marks; Email to Law Clerk | 9.0 |
| 05/01/2018 | Meet with Marks, *et al.*; Sixteen emails from Marks; Thirteen emails from McGuire; Email from Ichter; Email from Manoso; Five emails from Cross; Three emails to Marks | 0.5 |
| 05/02/2018 | Fourteen emails from Marks; Five emails from Ringer; Three emails from | 0.2 |

|            | Cross; Three emails from Bennett; Email from Ichter; Four emails from McGuire; Email to Lowman; Two emails to Marks; Email to Cross |     |
|------------|---|-----|
| 05/03/2018 | Email to Marks; Five emails from Ichter; Two emails from Brown; Four emails from Marks; Three emails from Court; Two emails from Manoso; Two emails from McConochie; Three emails from Cross; Two emails from McGuire | 0.2 |
| 05/04/2018 | Eighteen emails from Marks; Eleven emails from Ichter; Email from Brown; Email from Salter; Email from Cross; Four emails from McGuire; Email from Stacy; Email from Court; Email to Marks; Email to Brown | 0.3 |
| 05/05/2018 | Twelve emails from Marks; Twelve emails from Ichter; Email from Bennett; Two emails from Cross; Two emails from McGuire | 0.2 |
| 05/06/2018 | Email to McGuire; Nine emails from Marks; Email from Bennett; Six emails from Ichter; Email from McGuire; Two emails from Brown; Email from Court; Review Notice Regarding Third Amended Complaint | 0.2 |
| 05/07/2018 | Three emails from McGuire; Twelve emails from Marks; Eleven emails from Ichter; Two emails from Salter; Email from Palermo; Two emails from Brown | 0.2 |
| 05/08/2018 | Thirteen emails from Marks; Email from Brown; Nine emails from Ichter; Email from Salter; Six emails from McGuire; Two emails from Court; Email from White; Review Defendants' Notice Regarding Immunity Issues; Review Notice of Appearance; Review Application for Admission; Email from Lowman; Email from Chapple | 0.2 |
| 05/09/2018 | Two emails from Salter; Email from Brown; Two emails from Schnell; Two emails from Ichter; Three emails from Cross; Twelve emails from McGuire; Seven emails from Marks; Email from White; Two emails from Chapple; Email from Ringer; Email from Ichter; Two emails from Court | 0.2 |
| 05/10/2018 | Email from McGuire; Four emails from Marks; Two emails from Salter; Three emails from Cross; Four emails from Court; Email from Burgess; Email from Brown; Two emails from Court; Three emails from McConochie; Email from Johnson; Email from Brown; Two emails from Court; Email to Marks | 0.2 |
| 05/11/2018 | Email from Marks; Two emails from Court; Email from McConochie; Two emails from Court | 0.1 |
| 05/12/2018 | Email from McGuire | 0.1 |
| 05/13/2018 | Five emails from Marks; Email from Ichter; Email from MCGuire | 0.1 |
| 05/14/2018 | Four emails from Ichter; Six emails from Marks; Four emails from Court; Email from Brown; Email from McGuire | 0.1 |
| 05/16/2018 | Five emails from Marks; Email from Salter; Email from McGuire; Meet with Law Clerk; Two emails to Marks | 0.2 |
| 05/17/2018 | Two emails from Salter; Seven emails from Chapple; Four emails from Marks; Seven emails from White; Two emails from Bryan; Nine emails from McGuire; Email from Court; Five emails from Manoso; Email from | 0.2 |

Lowman; Two emails from Ichter; Email from Brown; Email from Court

| Date | Description | Hours |
|------|-------------|-------|
| 05/18/2018 | Email to Ichter; Two emails from Court; Three emails from Marks; Email from Ichter; Email from White; Two emails from Court | 0.1 |
| 05/20/2018 | Six emails from Marks; Four emails from Ichter; Three emails from Cross; Email to Marks | 0.2 |
| 05/21/2018 | Conference call with Marks, *et al*.; Seventeen emails from Marks; Seven emails from Ichter; Email from Brown; Eleven emails from McGuire; Email from Court; Two emails from Chapple; Four emails from Cross; Email to Ichter; Email to McGuire | 1.7 |
| 05/22/2018 | Six emails from Marks; Four emails from McGuire; Two emails from Chapple; Email to McGuire; | 0.1 |
| 05/23/2018 | Email from Cross; Five emails from Marks; Three emails from Ichter; Two emails from White; Five emails from McGuire | 0.2 |
| 05/24/2018 | Eight emails from Marks; Four emails from McGuire; Two emails from Ichter; | 0.2 |
| 05/25/2018 | Email from Court; Review Order; Email from Brown; Email from Marks | 0.1 |
| 05/26/2018 | Four emails from Marks; Three emails from Ichter | 0.1 |
| 05/27/2018 | Four emails from Marks; Email from McGuire | 0.1 |
| 05/28/2018 | Two emails from McGuire; Two emails from Marks | 0.1 |
| 05/29/2018 | Eleven emails from Ichter; Fifteen emails from Marks; Nine emails from McGuire; Email from Brown; Two emails from Bentrott; Email to Marks; Email to Brown | 0.3 |
| 06/01/2018 | Telephone conference with Marks, Ichter, McGuire and Brown; Ten emails from Marks; Three emails from Salter; Seven emails from Ichter; Two emails from Brown; Two emails from White; Eleven emails from McGuire; Nine emails from Chapple; Two emails from Schnell; Seven emails from Cross; Email from Ringer; Email from Manoso; Email from Court; Email to Brown; Email to Ichter; Two emails to Marks; Email to McGuire | 1.8 |
| 06/05/2018 | Email from Court; Review Order; Two emails from Marks; Email from Brown; Two emails from McGuire | 0.2 |
| 06/06/2018 | Four emails from Marks; Seven emails from McGuire; Three emails from Cross | 0.2 |
| 06/07/2018 | Two emails from Marks; Email from Chapple; Email from Cross; Email from McGuire | 0.2 |
| 06/07/2018 | Email from Marks | 0.1 |
| 06/08/2018 | Email from Salter; Email from Schnell; Two emails from Cross; Four emails from Marks; Email from Court; Two emails from McGuire; Email from Ichter | 0.1 |

| | | |
|---|---|---|
| 06/11/2018 | Three emails from Marks; Two emails from Ichter; Two emails from McGuire | 0.1 |
| 06/12/2018 | Email from Marks; Email from McGuire | 0.1 |
| 06/13/2018 | Three emails from Court; Review Order; Email from Brown; Eight emails from McGuire; Email from Ichter; Three emails from Marks; Two emails from Cross | 0.2 |
| 06/14/2018 | Two emails from McGuire; Two emails from Marks; Email from Court; Review Amended Order; Six emails from Marks; Two emails from Ichter | 0.3 |
| 06/15/2018 | Two emails from Marks; Two emails from McGuire; Email from Cross | 0.1 |
| 06/18/2018 | Email from Salter; Two emails from McGuire; Four emails from Marks | 0.1 |
| 06/19/2018 | Six emails from Cross; Five emails from Ichter; Ten emails from Marks; Eight emails from McGuire; Email from Lowman; Email from Price; Email from Marks; Two emails from Salter; Email from Court; Email from Brown | 0.2 |
| 06/20/2018 | Three emails from Cross; Three emails from Ichter; Two emails from Brown; Nine emails from McGuire; Email from Court; Eight emails from Marks; Email from Court | 0.2 |
| 06/21/2018 | Two emails to Brown; Three emails from Marks; Three emails from McGuire | 0.1 |
| 06/22/2018 | Email to Marks; Thirteen emails from Marks; Three emails from Ichter; Email from Evans; Six emails from McGuire; Two emails from White | 0.2 |
| 06/23/2018 | Email from Marks | 0.1 |
| 06/24/2018 | Email from Marks | 0.1 |
| 06/25/2018 | Email from Marks | 0.1 |
| 06/27/2018 | Email from McConochie | 0.1 |
| 06/28/2018 | Seven emails from McGuire; Email from Marks; Two emails from Chapple; Email from Lowman | 0.2 |
| 06/29/2018 | Two emails from White: Email from Marks; Five emails from McGuire; Two emails from Cross; Two emails from Salter | 0.1 |
| 06/30/2018 | Two emails from Ichter; Three emails from Marks; Two emails from Chapple | 0.1 |
| 07/01/2018 | Email from Chapple | 0.1 |
| 07/02/2018 | Email from Salter; Email from Chapple; Two emails from McGuire; Email from Cross | 0.1 |
| 07/03/2018 | Email from Cross; Email from Knapp; Five emails from McGuire; Email from Ringer; Three emails from Court; Review Response in Opposition to Motion to Issue Subpoenas; Email from White; Email from Chapple; | 0.3 |

Review Motion for Leave to File Excess Pages; Review Motion to Dismiss for Failure to State a Claim; Two emails from Brown; Email from Marks

| Date | Description | Hours |
|---|---|---|
| 07/05/2018 | Email from Marks | 0.1 |
| 07/06/2018 | Email from White; Email from McGuire; Two emails from Marks | 0.1 |
| 07/07/2018 | Email from Marks | 0.1 |
| 07/09/2018 | Three emails from Marks; Three emails from McGuire; Email from Ichter | 0.1 |
| 07/10/2018 | Email from Marks | 0.1 |
| 07/11/2018 | Two emails from Marks; Two emails from McGuire | 0.1 |
| 07/12/2018 | Email from Lowman; Two emails from Marks; Two emails from Ichter | 0.1 |
| 07/13/2018 | Email from Ichter; Email from Marks | 0.1 |
| 07/16/2018 | Two emails from Lowman; Email from Chapman | 0.1 |
| 07/17/2018 | Three emails from McGuire; Five emails from Marks; Email from Chapple; Nine emails from Court; Email from Brown; Review Response in Opposition to Motion to Dismiss | 0.2 |
| 07/18/2018 | Four emails from Court; Twelve emails from Marks; Five emails from McGuire; Two emails from Brown; Four emails from Ichter | 0.3 |
| 07/19/2018 | Email from Marks; Five emails from Court; Two emails from Brown; Three emails from Marks; Email from McGuire; Email from Ichter | 0.2 |
| 07/20/2018 | Four emails from Marks; Six emails from McGuire; Email from Ichter; Two emails from Brown | 0.2 |
| 07/21/2018 | Email from Ichter; Three emails from Marks; Email from McGuire | 0.1 |
| 07/23/2018 | Two emails from Court | 0.1 |
| 07/24/2018 | Email from Court; Email from Marks; Email from Chapple | 0.1 |
| 07/25/2018 | Email from Court; Review Order Denying Issuance of Subpoena; Two emails from McGuire; Six emails from Marks; Email from Brown; Four emails from Ichter | 0.2 |
| 07/25/2018 | Email from Marks | 0.1 |
| 07/26/2018 | Two emails from Brown; Two emails from Ichter; Seven emails from Marks; Email from McGuire | 0.1 |
| 07/27/2018 | Two emails from Court; Email from Chapple; Two emails from McGuire; Email from Marks; Email from Brown | 0.1 |
| 07/28/2018 | Two emails from Marks; Two emails from Ichter; Email from Brown | 0.1 |
| 07/30/2018 | Email from Marks | 0.1 |

| | | |
|---|---|---|
| 08/01/2018 | Email from McGuire | 0.1 |
| 08/02/2018 | Three emails from McGuire; Six emails from Ichter; Five emails from Marks; Email from Manoso; Two emails from Salter; Three emails from Cross; Email from McConochie | 0.3 |
| 08/03/2018 | Nine emails from Marks; Five emails from Ichter; Nine emails from McGuire; Email from Cross; Three emails from Brown; Three emails from Murray; Email from Court; Review Motion for Preliminary Injunction and Brief in Support | 0.2 |
| 08/04/2018 | Five emails from Marks; Email from McGuire; Email from Icher; Email from Brown | 0.1 |
| 08/05/2018 | Email from McGuire | 0.1 |
| 08/06/2018 | Email from Ichter; Three emails from Marks; Two emails from Burgess; Two emails from Brown; Email from McGuire | 0.1 |
| 08/07/2018 | Five emails from Marks; Email from Court; Review Order; Four emails from Brown; Three emails from McGuire; Email from Ichter; Email to Marks; Email to Brown | 0.2 |
| 08/08/2018 | Two emails from Court; Review Motion for Preliminary Injunction and Brief in Support; Three emails from Cross; Email from Salter; Email from Ichter; Three emails from Marks; Email from McGuire; Email from Brown; Email from McConochie; Review Consent Motion for Scheduling Order | 0.3 |
| 08/09/2018 | Five emails from Marks; Two emails from Brown | 0.1 |
| 08/10/2018 | Three emails from Marks; Email from Court; Review evidence in Support of Motion for Preliminary Injunction | 0.2 |
| 08/11/2018 | Email from Marks | 0.1 |
| 08/13/2018 | Seven emails from Marks; Three emails from Brown; Email from Ichter | 0.1 |
| 08/14/2018 | Four emails from Court; Review Order; Two emails from Cross; Email from Court; Review Responses to Motion for Preliminary Injunction; Three emails from McConochie; Three emails from Brown; Email from Salter; Two emails from Marks; Email from Ichter | 0.3 |
| 08/15/2018 | Four emails from Marks; Two emails from Court; Two emails from McConochie; Email from Brown; Email from McGuire | 0.2 |
| 08/16/2018 | Three emails from Marks | 0.2 |
| 08/17/2018 | Email from Court | 0.1 |
| 08/20/2018 | Three emails from McConochie; Seven emails from Court; Email from Cross; Email from McGuire; Email from Marks; Email from Salter | 0.1 |
| 08/21/2018 | Email from Brown; Five emails from Marks; Three emails from McGuire; Email from Court | 0.1 |
| 08/22/2018 | Three emails from Marks; Three emails from Ichter; Three emails from | 0.1 |

McGuire; Two emails from Brown

| Date | Services Rendered | Hours |
|---|---|---|
| 08/24/2018 | Email from Marks | 0.1 |
| 08/27/2018 | Email from Marks; Email from Court | 0.1 |
| 08/29/2018 | Email from Court; Email from Barnes; Email from Cross; Email from McConochie | 0.1 |
| 08/30/2018 | Three emails from McConochie; Email from Ringer; Email from Salter; Email from Brown | 0.1 |
| **TOTAL** | | **99.4** |

Law Clerk

| Date | Services Rendered | Hours |
|---|---|---|
| 11/21/2017 | Telephone conference with Ney | 0.1 |
| 11/22/2017 | Meet with Ney; Prepare and edit Notice of Appearance; Prepare and edit Motion for Stay; Review docket; Legal research regarding stay issues | 1.8 |
| 11/24/2017 | Edit Response to Motion to Withdraw and Cross-Motion to Disqualify; Edit Motion to Stay; Edit Notice of Limited Scope Appearance | 1.5 |
| 11/27/2017 | Meet with Ney; Legal research regarding counsel's responsibility to turn over internal communications over to client; File and serve Motion to Expand Time to File *Ex Parte* Response; | 0.6 |
| 11/28/2017 | Meet with Ney; Edit Response to Motion to Withdraw and Cross-Motion to Disqualify; Edit Motion to Stay; Hand File Response to Motion to Withdraw and Cross-Motion to Disqualify; Edit and file Motion to Stay | 1.4 |
| 11/29/2017 | Meet with Ney; Prepare and edit letter to Steptoe | 0.3 |
| 12/11/2017 | Legal research regarding *Pro Hac Vice* Application in Northern District of Georgia | 0.4 |
| 12/12/2017 | Meet with Ney; Edit letter to Steptoe & Johnson | 0.4 |
| 12/13/2017 | Meet with Ney; File and serve *Pro Hac Vice* Application for McGuire; Prepare and edit Entry of Limited Scope Appearance of McGuire; Email from Ney | 1.0 |
| 12/14/2017 | Prepare and edit Joint Statement Concerning Preservation of Evidence; File and Serve Joint Statement Concerning Preservation of Evidence | 0.4 |
| 12/21/2017 | Meet with Ney; Email from Ney; Prepare and edit letter to Ringer | 1.2 |
| 01/05/2018 | Meet with Ney; Prepare and edit Notice of Appearance of McGuire | 0.4 |
| 01/08/2018 | Meet with Ney; Prepare and edit Notice Regarding Representation of William Brent Ney; File and serve Notice; Email to Ney | 0.9 |
| 01/23/2018 | Meet with Ney | 0.1 |

| 03/05/2018 | Meet with Ney | 0.1 |
| 03/30/2018 | Edit Notice of Entry of Appearance; File and serve Notice of Entry of Appearance | 0.3 |
| 04/16/2018 | Meet with Ney; Edit Response to Motion to Extend Time; Edit letter to Fulton County | 1.3 |
| 04/30/2018 | Meet with Ney; Email from Ney; Prepare and edit Notice of Inspection; Edit Motion to Allow Electronic Equipment; File and serve Motion to Allow Electronic Equipment; Edit Order Allowing Electronic Equipment | 1.4 |
| **TOTAL** | | **13.6** |

Paralegal

| Date | Services Rendered | Hours |
|------|-------------------|-------|
| 11/22/2017 | Initial file set-up | 1.0 |
| 11/29/2017 | Organize, file and index pleadings, documents, correspondence | 0.1 |
| 12/13/2017 | Organize, file and index pleadings, correspondence and documents. | 0.1 |
| 01/09/2018 | Organize, file and index pleadings, correspondence, documents | 0.4 |
| 01/31/2018 | Organize, file and index pleadings, correspondence, documents | 0.3 |
| 03/30/2018 | Prepare Entry of Appearance; Meet with Ney | 1.0 |
| 04/05/2018 | Organize, file and index pleadings, correspondence, documents | 0.2 |
| 04/25/2018 | Meet with Ney | 0.1 |
| 05/11/2018 | Download, organize, file and index all federal pleadings | 1.8 |
| 05/22/2018 | Download, organize, file and index all federal pleadings | 1.5 |
| 06/26/2018 | Organize, file and index pleadings, correspondence, documents | 2.0 |
| 07/03/2018 | Organize, file and index pleadings, correspondence, documents | 0.6 |
| 07/26/2018 | Organize, file and index pleadings, correspondence, documents | 1.5 |
| 08/31/2018 | Organize, file and index pleadings, correspondence, documents | 1.9 |
| **TOTAL** | | **12.5** |

EXHIBIT

G

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al. | ) |
| | ) |
| Plaintiff, | ) |
| | ) **CIVIL ACTION FILE NO.: 1:17-cv-** |
| vs. | ) **2989-AT** |
| | ) |
| BRIAN P. KEMP, et al. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>DECLARATION OF  MARILYN MARKS</u>

**MARILYN MARKS** hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2.  I am the Executive Director of Plaintiff Coalition for Good Governance ("CGG" or "Coalition").

3.  I have worked full time in the area of election integrity, transparency and security for over ten years, with primary focus on Colorado, Georgia and North Carolina elections. Most, but not all, of my election work since 2014 has been in my role of Executive Director of Coalition for Good Governance.

4. In the 10 years I have worked in the election integrity area, either as an individual or in my role as a director of a non-profit organizations, I have organized over 30 election-related lawsuits and brought many administrative actions and election protests in numerous jurisdictions.

5. The Curling case is one of four election-related lawsuits Coalition has organized in the State of Georgia against election officials since May 2017. I am therefore familiar with the varying complexity of the cases, the relative difficulty in recruiting counsel, and the differing economic risks assumed by counsel in these engagements.

6. In each case, I interviewed several Georgia and out-of-state firms as I attempted to expand the Coalition's legal team working on Georgia matters. I have current, personal and in-depth knowledge of the market for counsel able to try such cases on a practical basis.

**Engaging Counsel for This Case**

7. Much of the electrion-related litigation I have organized has, like this case, involved voting system technology and its impact on the constitutional rights of voters. This is a rarely litigated area of election controversies or civil rights. As a result there are very few attorneys in private practice with relevant experience or election technology subject

matter expertise. This results in great difficulty in recruiting appropriate legal counsel for cases such as this case.

8.  Coalition for Good Governance's counsel Robert A. McGuire has served as counsel for Coalition for Good Governance, me, or related parties in numerous such actions since 2009. It is my opinion that Mr. McGuire has litigated more voting systems-related cases than any attorney in private practice in the nation.

9.  Coalition for Good Governance receives frequent requests to assist in election technology controversies across the country. We decline involvement in the vast majority of the requests because of the almost impossible task of recruiting counsel with adequate subject matter expertise. The long learning curve required for counsel in voting systems litigation makes most such cases impractical to pursue.

10. Because of his subject matter expertise, Mr. McGuire's engagement on the case was an essential prerequisite in recruiting experienced litigators Bruce Brown and Cary Ichter as Atlanta-based co-counsel. Likewise, recruiting Atlanta-based litigators such as Bruce Brown and Cary Ichter with many years of complex litigation was also essential in order for Mr. McGuire to be able to accept the case.

11. When the case was initiated in July 2017, Mr. McGuire was unavailable because of prior case commitments until early December, 2017. Although I diligently searched for additional counsel for the early phase of this case, and interviewed dozens of attorneys, the difficulty of the case and the lack of attorneys with subject matter expertise made recruiting appropriate legal counsel extremely difficult.

12. During the first few months of the case (before current counsel's involvement), our then counsel, the large law firm of Steptoe & Johnson, contributed to the case.  Significant value was invested in the case by Steptoe senior attorneys in securing expert declarations, obtaining and organizing facts used as evidence later in the case, and working hard in an attempt to assure that Defendants would preserve their electronic records.  I understand that Steptoe made the decision to not seek fees from Coalition or to apply for fees itself under Section 1988.  Even a full recovery of the fees sought in Coalition's current application, therefore, will not pay for the real cost of this litigation.

13. Prior to successfully concluding weeks of discussions and negotiations with the team of Mr. McGuire, Mr. Brown and Mr. Ichter, I contacted dozens of attorneys in Georgia, North Carolina, Washington DC, New

York, and California, without finding suitable competent counsel willing to accept the unattractive risks of the case and serve as lead counsel.

14. Coalition for Good Governance is a small 501(c)(3) organization and operates in a very limited budget, requiring attorneys who agree to represent the organization to obtain most, if not all, of their compensation through a Section 1988 award. The risk of non-recovery and the possibility of prolonged, complex litigation both make the case too unattractive for many attorneys with relevant and adequate litigation expertise to agree to undertake.

15. Voting system technology cases like this one are complex. Most small litigation firms, as a business matter, cannot afford to take on a case like this one.

16. In attempting to recruit local (as well as lead) counsel for this case, I interviewed at least 10 Georgia-based firms that initially indicated interest, only to learn that those firms represented the State or various county governments in other matters and that their clients objected to their involvement in this case, which involved challenging the voting system and questioning election outcomes.

17. In the many election cases I have organized, a consistent difficulty in recruiting counsel (whether local or lead) has always been the reluctance

of attorneys to sue their own local or state public officials and suffer this indirect cost of taking the case. In this case in particular, the Coalition Plaintiffs' attorneys have had to endure unprofessional name-calling and disparagement in the press (and in court papers) by Defendants.

18. When undertaking to litigate an election-related case against the state or counties, attorneys must be prepared for the economic risk generated by the inefficient and wasteful manner in which election officials, in my experience, typically defend such cases. Unlike much commercial litigation, where parties have limits on the resources they are able to devote to litigation, it has been my experience, including in this case, that government defendants operate as though they are unconstrained by budgets and thus generally prolong discovery disputes, appeal rulings on unreasonable grounds, file unnecessary pleadings, issue overly broad discovery requests, and generally have little incentive for efficiency. In addition, these kinds of cases, by their nature, are difficult to settle. These factors force counsel like the Coalition Plaintiffs' present attorneys to invest additional resources at a significant risk of never being compensated, all of which makes cases like this one even more unattractive to potential counsel.

19. Coaltion for Good Governance was fortunate to put together its legal team of McGuire, Brown, and Ichter after Mr. McGuire completed his other commitments in early December 2017.  The legal team used their first four months to coordinate roles, gather evidence, and prepare for the litigation of the case while the case was administratively closed from November 27, 2017 until March 30, 2018, pending the appearance of new counsel on behalf of the Curling Plaintiffs.

20. After the November 2018 general election, which revealed the mounting evidence of widespread discrepancies and significant evidence of racially based vote suppression through the DRE system in the Lieutenant Governor's race, it became clear that Coalition Plaintiffs needed to expand its legal team further. We needed both experienced litigators accustomed to litigating against government entities and specialized civil rights litigation experience relating to racial discrimination. For that reason, I began repeated attempts to recruit Lawyer's Committee for Civil Rights Under the Law beginning in December 2018, with talks continuing until May 2019 when Coalition Plaintiffs were able to engage LC.

**<u>Attorney's Hourly Rates</u>**

21. I consider myself to be a sophisticated consumer of legal services, in view of the numerous public interest cases I have organized over the last ten years and also because of my background as a corporate executive prior to my retirement. I have attached as Exhibit 8 an affidavit filed in a Colorado case concerning my wide-ranging experience in engaging attorneys in complex legal matters.

22. Because of my many interviews with potential counsel for this case, I am aware of the Atlanta area market rates for attorneys, paralegals, and research assistants in complex litigation matters, as well as the rates used by Washington, D.C.-based public interest law firms.

23. Based on my experience in and knowledge of the Atlanta legal market, the rates charged and fee arrangements offered by the Coalition Plantiffs' counsel in this case are exceptionally fair, and likely are well below the relevant market rates even without considering the risk premium that is economically necessary to permit an attorney to commit to take a case where recovery of most of the fees is all or partly contingent.

## Coalition's Case Management Strategy

24. In the numerous election-related lawsuits I have organized, I have learned that, for a small organization like CGG, litigation like this is only affordable and feasible if CGG provides full-time support to its attorneys.

Assisted by interns paid at student rates, I personally conduct research, investigate facts, interview witnesses, consider strategy, and provide expertise on election administration and voting technology.  In doing these tasks, I perform a substantial amount of work generally done by attorneys in similar cases, and by so doing I help my attorneys minimize their own risk as well as minimizing the eventual amount of fees that may be shifted to losing public defendants.  I generally solicit my attorneys for ways I can be helpful, and I operate under their guidance by focusing on performing only those tasks that they tell me need to be done and will save them time.

25. The scope of my work ranges widely depending on the attorney's instructions and requirements. It ranges from outlining potential theories of the case and proposing legal arguments based on my knowledge of the facts and relevant expertise, at one extreme, to more mundane legal-assistant and paralegal tasks like proofing drafts, preparing exhibits, and checking citations in pleadings, at the other extreme.  One of my most important roles is always finding, interviewing, and engaging expert witnesses and assisting lawyers in their development of the expert testimony.

26. I have over 10 years experience in researching, interpreting, and applying various states' election laws, regulations, and practices, as well as extensive knowledge of federal laws such as the Help America Vote Act and other authorities like the EAC's Voluntary Voting System Guidelines.  With this deep background, I am able to assist counsel, who rely on me to present the first level of analysis of the statutory and regulatory regimes governing particular cases.

27. I have been made responsible by our counsel for recruiting and negotiating with all experts and consultants used in the case. I have also assisted the attorneys in organizing their efforts by providing background case materials for review and serving as a primary point of contact for the attorneys in their dealings with fact witnesses and experts. I am frequently asked to assist counsel with arranging expert declarations  and assisting with the proofing and citation checking of such declarations.

28. The attorneys rely on me to arrange for the acquisition of all transcripts and to conduct the first review of transcripts of court hearings to bring their attention to important issues that require follow up or fact checking.

29. At the direction of the attorneys, I make arrangements for depositions and help by arranging court reporters.  I also assist by proposing deposition topics, outlining recommended questions of  witnesses, and preparing

suggested exhibits for the depositions.  All of this work would have to be done by my attorneys if I did not assist, and I have noted that the associate labor involved in these tasks in other cases of comparable complexity is extremely costly but invariably regarded as a legitimate use of attorney time.

30. The attorneys in this case have frequently asked me to conduct the first review of the deposition transcripts and to highlight, locate, and note important parts of the testimony for the attorneys' later use in hearings or, alternately, for futher discovery follow up.

31. I have frequently been asked by the attorneys to write first drafts of discovery requests and document subpoenas for their review—typical paralegal or junior associate work.

32. I have been asked to assist the attorneys by conducting initial review of documents produced to us in discovery—excluding of course any that are designated as "Attorney's Eyes Only"—and to summarize key facts shown by those documents.

33. I have frequently been asked to be heavily involved in the fact checking, editing, cite checking, and proofing of all pleadings in the case.  I generally study and fact-check all pleadings filed by the Defendants, and I supply notes and feedback to Coalition Plaintiffs' attorneys.

34. I am frequently asked by the attorneys to provide case updates to the individual Coalition Plaintiffs.

35. I am also a resource for counsel on technical issues involved in these voting cases and frequently provide counsel with academic and scientific literature for their review relating to voting systems and cybersecurity.

36. I am responsible for alerting the attorneys to news releases, press articles and website postings by the Defendants or third parties for information related to the case, and organizing the materials if required in the evidence gathering process.

37. CGG organizes its litigation activities to be conducted at the lowest possible cost to make the most efficient use of attorney time. All activities that could be done by someone other than very experienced senior attorneys is done by CGG staff or volunteers. By leveraging our attorneys' time, I have dramatically reduced the number of attorneys that Coalition and the Coalition Plaintiffs have had to engage and minimized, to the extent possible, the number of hours that our attorneys have had to expend to vindicate the Coalition Plaintiffs' claims.

38. My time is valued at $200 per hour by CGG, and all of my compensation for the time I have spent is presently deferred until CGG has paid all

amounts due to third parties for this and all other litigation, and until

CGG's Board determines that cash reserves are adequate to pay me.

### **Coalition's Use of Interns to Support Litigation Activities**

39. To make discovery of election administration details feasible, Coalition

conducts research that would typically be conducted by research

contractors, paralegals, analysts, or experts engaged by the attorneys.

Because of my extensive background and full time dedication to

Coalition's election integrity efforts, we have trained and organized a

team of college-age interns to conduct much of the analysis and research.

40. Coalition interns' work in this case includes:

- preparation of public records requests to election officials and
  follow up to obtain and organize responses;

- analysis of information obtained from public records requests
  and reporting to me and to the attorneys;

- locate archived legislative history of relevant election law and
  policies;

- analysis for detection of discrepancies between polling place
  data and reported results;

- analysis of anomalies including undervote trends in specific
  precincts and DRE machines;

13

- fact gathering by observation of voting at the polling places and documentation of findings;

- pick up and delivery of discovery documents from county election offices for attorneys;

- organization of electronic research files for discovery;

- organization of voter affidavits;

- preparing transcripts of relevant public meetings, speeches, or broadcasts related to discovery topics for review by attorneys or preparing as evidence;

- organization and copying of documents for hearings; and

- attendance at hearings to provide administrative assistance to the attorneys.

41. CGG pays contracted interns at a standard rate of $17 per hour and reimburses mileage for required deliveries at standard IRS published rates. This provides an exceptionally inexpensive way to accomplish work normally provided to attorneys by paralegals, analysts, researchers, and messenger services. Typical rates charged by law firms and their vendors would be many times these hourly rates.

## **Coalition's Use of Volunteers to Support Attorneys' Litigation Activities**

42. CGG engages and I supervise a group of volunteers to support evidence collection, analysis, organization, and other case litigation functions typically performed by law firm's non-attorney staff or contractors.  The volunteers CGG and I have recruited for this case are generally of a high education level, with specialized skills in areas such as computer science, database management, supply chain management, professional editing, and cost analysis. By recruiting highly skilled volunteers to support the attorneys' litigation efforts (which would otherwise require third party specialist contracts), CGG has made the litigation support vastly more affordable than it otherwise would have been.

43. Under my direction in my capacity as Executive Director of CGG, our volunteers have reviewed hundreds of affidavits from voter witnesses to determine which had experiences related to our claims. They then conducted the initial outreach to scores of potential voter witnesses and conducted interviews with them to confirm facts and determine their availability for live testimony.  The price for a law firm to organize and perform this work would have been staggering.

44. Our volunteers worked with hearing witnesses on logistics, arranged interviews with attorneys, and provided our attorneys with notes of important facts related to the testimony.

45. A volunteer who was permitted to do so under the relevant protective order provided page-by-page labeled exhibits of the GEMS database for review by our experts and attorneys and for subsequent filing with the Court. This is typical of the litigation support provided by our volunteers—support that would typically have been provided by analysts, consultants, or paralegals.

46. Volunteers have provided documented cost analysis of voting system elements and administration for use by the attorneys in discovery and as support for our arguments regarding feasibility. This work would typically have been conducted by a contracted analyst or expert witnesses at much greater cost.

47. Volunteers also made travel arrangements for expert witnesses and provided for their local transportation.

48. In summary, the litigation support provided and managed by CGG was essential to our success thus far, yet cost a fraction of what would have been required if the same effort had been outsourced and managed in a traditional manner by a law firm.

49. This approach to economizing has permitted Coalition's attorneys to be efficient and generally only engage in activities requiring their technical and litigation expertise.  It has, however, not been without its price, for these efforts have diverted significant resources of the organization, in both time and money, away form other projects.

### Summary of Expenses Incurred by CGG

50. The spreadsheet that is attached as Exhibit 1 shows the direct litigation expenses that CGG has incurred in this case.  Exhibit 1 is subdivided into two categories of direct litigation expenses: professional fees and other out-of-pocket expenses.

51. The professional fee category on Exhibit 1 includes the expert witnesses engaged by CGG on the case (Stark, Barnhard, Wilson, McReynols, Martin, and Hoke) and analysts engaged by CGG (Ottoboni, W.Wilson, R.Wilson,  and Lee) who, at the request and direction of counsel, organized and analyzed election results data files for purposes of detecting the source of anomalous results.   Also included in professional fees are the amounts paid (at $17 an hour) to CGG's interns.

52. Also included as a professional fee is the cost of my time ($125,330).  As explained in detail above (paragraphs 24-38), I provided a wide

range of litigation support for the litigation, including the types of work described in paragraphs 24-38.  Exhibit 9 shows the detail for my time.

53. For purposes of billing my time, I show on Exhibit 9 only a small fraction of the time I actually have spent in direct litigation support.  I have  accounted for that time on the basis of discreet litigation projects in the various phases of the case.  In all cases, the work performed was work requested by the attorneys and that would have been typically performed by attorneys or experts.   On Exhibit 9, in most instances, I have included with each task a  reference by docket number to the particular document or event, and the "Phase" of the case, as that term is used in the brief.  I have provided two "sorts" of the same information.  The first sort shows the hours sorted by type of task and the second sort shows the hours sorted by phase of the case.

54. As for expenses listed on Exhibit 1, most are self-explanatory.  I note that CGG paid former counsel Holcomb & Ward $75,018.   The amount that CGG paid was a negotiated final payment at the time their withdrawal, and the firm's invoices are attached as Exhibit 11.  All the expenses listed on Exhibit 1 were for this litigation and were paid by CGG.

55. In summary, CGG has incurred expenses on this litigation in the amount of $395,779.82

56. I have attached as exhibits the following documents as support for the expenses incurred by CGG in this case.  Additional documentation will be made available upon request:

Exhibit 1          Spreadsheet Summarizing CGG Expenses

Exhibit 2          Expert Starks Invoice

Exhibit 3          Expert Bernhard Invoice

Exhibit 4          Expert Martin Invoice

Exhibit 5          Expert Ottonboni Time Record

Exhibit 6          Expert Hoke Billing Records

Exhibit 7          Expert Wilson Time Records

Exhibit 8          Marks Affidavit

Exhibit 9          Marks Time Records

Exhibit 10         Amber McReynolds Invoice

Exhibit 11         Holcomb & Ward Invoices

This 16th day of October, 2019.

_____

Marilyn Marks

EXHIBIT

1

| Category of Expenditure Professional time, expense | Description | Vendor | Amount | Exhibit |
|---|---|---|---|---|
| Legal fees not claimed elsewhere | Holcomb & Ward fees  intial phase of case | Holcomb & Ward | $75,018.00 | 11 |
| Expert consulting | Audit expert | Philip Stark | $39,450.00 | 2 |
| Expert consulting | Voting systems Expert | Matthew Bernhard | $20,856.47 | 3 |
| Expert consulting | Election Admin. Expert | Amber McReynolds | $13,703.15 | 10 |
| Expert consulting | Election Admin. Expert | Virginia Martin | $6,548.45 | 4 |
| Expert consulting | Statistical analysis of voting patterns, cleaning data, creating database | Kelly Ottoboni | $6,225.00 | 5 |
| Expert consulting |  Cybersecurity expert; legal support to Ney | Candice Hoke | $17,628.00 | 6 |
| Expert consulting | GEMS database analysis | Ritchie Wilson | $42,651.00 | 7 |
| Database analysis | Creating statewide vote database for analysis | Brandyn Lee | $690.00 | |
| Database analysis | Creating/analyzing anomalies in vote database | Wendell Wilson | $300.00 | |
| Litigation support--intern | Evidence gathering, analysis, organization, etc  (Nov. 2018 - July 25, 2019) | Taran Greenwald | $29,826.00 | |
| Litigation support--intern | Evidence gathering, analysis, organization, etc  (May 2019--July 2019) | Bea Brown | $3,392.00 | |
| Litigation support--intern | Evidence gathering, analysis, organization, etc (January 2019- July 2019) | Samantha Whitley | $4,225.00 | |
| Litigation support--intern | Evidence gathering, analysis, organization, etc (July 2019) | Harrison Thwaett | $790.53 | |

| | | | |
|---|---|---|---|
| Litigation support | See detailed time sheet | M. Marks | $125,330.00 |
| | **Total Professional time and expenses** | | **$386,633.60** |

## Expenses

| | | | |
|---|---|---|---|
| | Electronic file storage | Sharefile | $200.00 |
| | Parking Courthouse-interns | | $25.00 |
| | Process Server | Matt Hickman | $1,740.00 |
| Transcripts --Court | Transcript 9.20.17 | | $123.25 |
| | Transcript 11.7.17 | | $181.25 |
| | Transcript 5.1.18 | | $102.00 |
| | transcript  5.10.17 | | $152.25 |
| | transcript 9,12,18 | | $338.10 |
| | transcript  4 .19 | | $76.80 |
| | transcript 5.24.19 | | $43.20 |
| | transcript 5.31.19 | | $97.20 |
| | 6.28.19 | | $63.60 |
| | 7.17.19 | | $52.80 |
| | 7.25-26 | | $621.90 |
| | 8.27.19 | | $70.80 |
| | 5.19.18 | | $281.30 |
| Court Reporting | APG USA--depositions | | $3,628.35 |

| | | |
|---|---|---|
| Copies, Supplies for Hearing | Fed ex copies, supplies for July hearing | $19.82 |
| | Fed ex copies, supplies for July hearing | $77.30 |
| | office depot | $57.34 |
| | ups  copying, supplies for hearing | $239.98 |
| Computer | Computer required for Ann Arbor GEMS work | $953.98 |
| | **Total out of pocket direct expenses** | **$9,146.22** |
| | **Grand Total** | **$395,779.82** |

E
X
H
I
B
I
T

2

**Philip B. Stark | 1157 Cragmont Ave | Berkeley, CA 94708-1641**

**stark@risklaw.org · 510-282-1157 · EIN 94-323-4271**

**1 September 2019**

**Marilyn Marks**
**Coalition for Good Governance**

Litigation consulting *in re* Curling v. Kemp

| Invoice | Due Date | Total Due |
|---------|----------|-----------|
| CGG-20190901 | 9/1/2019 | $39,450 |

| Date | Description | Hours | Expenses |
|------|-------------|-------|----------|
| 9/7 | email | 0.2 | |
| 9/8 | call, writing | 4.8 | |
| 9/9 | writing, email | 0.9 | |
| 12/24 | call | 1.2 | |
| 12/25 | examine data | 0.3 | |
| 12/27 | programming, data analysis | 0.8 | |
| 1/2 | call, programming, data analysis | 2.1 | |
| 1/3 | programming, data analysis, calls | 1.2 | |
| 1/4 | data analysis, calls | 1.0 | |
| 1/5 | data analysis, calls | 4.5 | |
| 1/6 | data analysis, calls | 4.0 | |
| 1/16 | calls | 0.4 | |
| 1/31 | data analysis | 1.0 | |
| 2/4 | data analysis | 0.5 | |
| 2/5 | meeting, data analysis | 1.5 | |
| 2/6 | data analysis | 0.5 | |
| 2/15 | coding, writing | 0.8 | |
| 2/16 | coding, writing | 0.6 | |
| **Total** | **26.3h @ $1500/h** | **$39,450** | **$0** |

1

E
X
H
I
B
I
T

3

# Invoice

Invoice Number: 201907-01

## Matthew Bernhard

2260 Hayward Street
Ann Arbor, MI 48109
281-725-8544

August 4, 2019

## Invoice For

**Coalition for Good Governance**
7035 Marching Duck Dr. E504
Charlotte, NC 28210

## Subject

Expert consulting services for
Bruce Brown on
*Curling v. Raffensperger*

| Description | Date | Amount |
|---|---|---|
| Expert consulting services | 4-Aug | $19,200.00 |
| Deferred | | -$14,400.00 |

**Expenses**

| Description | Date | Amount |
|---|---|---|
| Hotel | 27-Jul | $682.07 |
| Local transportation | 27-Jul | $79.00 |
| Airport parking | 27-Jul | $56.00 |

Total  this invoice $ 20,017.07
12/18                       225.00
9/18 Travel              614.40
Total                     20,856.47

AMOUNT DUE                    **$5,617.07**

Payment due upon receipt

| Date | Reasoning | Hours | Total | | | |
|------|-----------|-------|-------|---|---|---|
| 7/1 | Database discovery declaration | 1 | $200.00 | | | |
| 7/2 | Database discovery declaration | 3 | $600.00 | | | |
| 7/3 | Database discovery response declaration | 3 | $600.00 | | Total Hours | 96 |
| 7/6 | GEMS database preparation work | 2 | $400.00 | | **Total** | $19,200.00 |
| 7/7 | GEMS database preparation work | 2 | $400.00 | | **w/ deferred** | $4,800.00 |
| 7/8 | GEMS database preparation work | 8 | $1,600.00 | | | |
| 7/9 | teleconference w/ defendants, document | 8 | $1,600.00 | | | |
| 7/10 | GEMS database preparation work | 8 | $1,600.00 | | | |
| 7/11 | GEMS database preparation work | 8 | $1,600.00 | | | |
| 7/12 | GEMS database review | 7 | $1,400.00 | | | |
| 7/13 | GEMS database review | 12 | $2,400.00 | | | |
| 7/14 | GEMS database review | 3 | $600.00 | | | |
| 7/15 | GEMS database review | 1 | $200.00 | | | |
| 7/16 | | 0 | $0.00 | | | |
| 7/17 | | 0 | $0.00 | | | |
| 7/18 | Review of Shamos testimony and prep fo | 4 | $800.00 | | | |
| 7/19 | | 1 | $200.00 | | | |
| 7/20 | | 0 | $0.00 | | | |
| 7/21 | | 0 | $0.00 | | | |
| 7/22 | | 0 | $0.00 | | | |
| 7/23 | Call for hearing prep | 1 | $200.00 | | | |
| 7/24 | Hearing prep | 4 | $800.00 | | | |
| 7/25 | Hearing | 9 | $1,800.00 | | | |
| 7/26 | Hearing | 11 | $2,200.00 | | | |
| 7/27 | | 0 | $0.00 | | | |
| 7/28 | | 0 | $0.00 | | | |
| 7/29 | | 0 | $0.00 | | | |
| 7/30 | | 0 | $0.00 | | | |
| 7/31 | | 0 | $0.00 | | | |



**ATLANTA MARRIOTT MARQUIS**

**GUEST FOLIO**

| 821 | BERNHARD/M | 132.00 | 07/27/19 | 11:00 | 55896 |
|---|---|---|---|---|---|
| ROOM | NAME | RATE | DEPART | TIME | ACCT# |
| GK | | | 07/24/19 | 15:22 | |
| TYPE | | | ARRIVE | TIME | |
| 201 | | | | | |
| ROOM | ADDRESS | PAYMENT | | | MBV#:   XXXXX5484 |
| CLERK | | | | | |

| DATE | REFERENCES | CHARGES | CREDITS | BALANCES DUE |
|---|---|---|---|---|
| 07/24 | RM SERV      2479 821 | 21.78 | | |
| 07/24 | ROOM TR      821, 1 | 210.00 | | |
| 07/24 | STATE TX     821, 1 | 18.69 | | |
| 07/24 | CITY TAX     821, 1 | 16.80 | | |
| 07/24 | GA RMFEE     821, 1 | 5.00 | | |
| 07/25 | ROOM TR      821, 1 | 210.00 | | |
| 07/25 | STATE TX     821, 1 | 18.69 | | |
| 07/25 | CITY TAX     821, 1 | 16.80 | | |
| 07/25 | GA RMFEE     821, 1 | 5.00 | | |
| 07/26 | ROOM TR      821, 1 | 132.00 | | |
| 07/26 | STATE TX     821, 1 | 11.75 | | |
| 07/26 | CITY TAX     821, 1 | 10.56 | | |
| 07/26 | GA RMFEE     821, 1 | 5.00 | | |
| 07/27 | VS CARD | | $682.07 | |

TO BE SETTLED TO:   VISA        CURRENT BALANCE  .00

THANK YOU FOR CHOOSING THE ATLANTA MARRIOTT MARQUIS!

**See our "Privacy & Cookie Statement" on Marriott.com**

**Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy Account Statement for updated activity. See members.marriott.com for new Marriott Bonvoy benefits.**



ATLANTA MARRIOTT MARQUIS
265 PEACHTREE CENTER
ATLANTA GA  30303

**Treat yourself to the comfort of Marriott Hotels in your home. Visit ShopMarriott.com.**

This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to you. The amounts shown in the credit column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The credit card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are direct billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per month (ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X

8 934
SOUTHLAND PRINTING
SHREVEPORT, LA.

RECEIPT

DETROIT METRO AIRPORT

3374-000115-03:00:30 07/27/19 11:51-000.00-$56.



 Gmail

**Matt Bernhard <mdb92nc@gmail.com>**

---

**Your ride with Cecil on July 25**
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>                    Fri, Jul 26, 2019 at 8:48 AM
To: mdb92nc@gmail.com

---



**JULY 25, 2019 AT 9:43 PM**

# Thanks for riding with Cecil!



| | |
|---|---|
| Lyft fare (2.96mi, 10m 0s) | $9.16 |
| Round Up & Donate - Girls Who Code | $0.84 |
| Tip | $2.00 |

 Pay    Apple Pay (Visa)                              **$12.00**



● **Pickup**  9:43 PM
   1304 W Peachtree St NW, Atlanta, GA

● **Drop-off**  9:53 PM
   60 Harris St NE, Atlanta, GA



# This and every ride is carbon neutral

**LEARN MORE**

 **Gmail**

**Matt Bernhard <mdb92nc@gmail.com>**

---

## Your ride with Ronald on July 24
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>
To: mdb92nc@gmail.com

Wed, Jul 24, 2019 at 3:22 PM





## Thanks for riding with Ronald!

July 24, 2019 at 2:47 PM

---

### Ride Details

| | |
|---|---|
| Lyft fare (10.71mi, 26m 52s) | $23.62 |
| Round Up & Donate - Girls Who Code | $0.84 |
| Tip | $3.54 |

 Pay
Apple Pay (Visa)                                    **$28.00**



● Pickup        2:47 PM
N Terminal Pkwy, College Park, GA

● Drop-off       3:13 PM
45 Harris St NE, Atlanta, GA



# This and every ride is carbon neutral

**Learn more**



 **Matt Bernhard <mdb92nc@gmail.com>**

---

## Your ride with Elliott on July 27
1 message

---

**Lyft Ride Receipt** <no-reply@lyftmail.com>                    Sat, Jul 27, 2019 at 8:36 AM
To: mdb92nc@gmail.com



**JULY 27, 2019 AT 7:55 AM**

# Thanks for riding with Elliott!



Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---:|
| Base fare | $1.05 |
| 40m 2s | $6.01 |
| 26.70 mi | $21.63 |
| Service fee | $3.40 |
| Round Up & Donate - Girls Who Code | $0.49 |
| Tip | $6.42 |

 Pay   Apple Pay (Visa)                                    **$39.00**



● **Pickup**  7:55 AM
253 Peachtree Center Ave NE, Atlanta, GA

● **Drop-off**  8:35 AM
1947 Piedmont Ave NE, Atlanta, GA



# This and every ride is carbon neutral

**LEARN MORE**

# Invoice

Invoice Number: 201809-02

## Matthew Bernhard

2260 Hayward Street
Ann Arbor, MI 48109

281-725-8544

September 19, 2018

## Invoice For

## Subject

**Coalition for Good Governance**
7035 Marching Duck Dr. E504
Charlotte, NC 28210

Expert consulting services

| Description | Date | Amount |
|---|---|---|
| Reimbursement for Flight | 11-Sept | $566.40 |
| Reimbursement for airport parking | 11-Sept | $48.00 |
| Reimbursement for travel to and from airport | 11-Sept | $40.00 |
| | AMOUNT DUE | **$614.40** |

Payment due upon receipt

# Invoice

Invoice Number: 201812-01

## Matthew Bernhard

2260 Hayward Street
Ann Arbor, MI 48109

281-725-8544

December 26 2018

## Invoice For

## Subject

**Coalition for Good Governance**
7035 Marching Duck Dr. E504
Charlotte, NC 28210

Expert consulting services

| Description | Date | Hours | Amount |
|---|---|---|---|
| Collecting GA Election result data ($45/hr) | 25-Dec | 5.00 | $225.00 |

| | |
|---|---|
| AMOUNT DUE | **$225.00** |

Payment due upon receipt

E

X

H

I

B

I

T

4

# **Virginia Martin**

724 Warren Street #2, Hudson, NY 12534
virginiamartin2010@gmail.com
518.755.1521

September 30, 2019

**Invoice**

Marilyn Marks, Esq.
Executive Director
Coalition for Good Governance
1520 Cress Court
Boulder, CO 80304

**Consulting services, Curling v. Kemp**
Research and consulting with other experts, including election officials and ballot
printers, to confirm facts. Drafting of declarations. Responding to attorney questions and
preparing with attorneys for hearing. Attendance at hearing.

| Date | Hours |
|------|-------|
| 8/12/18 | 1.00 |
| 8/18/18 | 3.00 |
| 8/20/18 | 2.00 |
| 9/4/18 | 1.50 |
| 9/6/18 | 0.50 |
| 9/9/18 | 2.00 |
| 9/10/18 | 0.50 |
| 2/7/19 | 1.00 |
| 5/16/19 | 0.50 |
| 5/18/19 | 1.50 |
| 5/20/19 | 1.00 |
| 5/22/19 | 0.50 |
| 6/17/19 | 2.00 |
| 6/17/19 | 2.00 |
| 6/18/19 | 2.00 |
| 7/23/19 | 2.00 |
| 7/25/19 | 9.00 |
| 7/26/19 | 11.00 |

43.00 @ $150.00                    $6,450.00

**Invoice, September 30, 2019, Coalition for Good Governance, re Curling v. Kemp**

**Out of pocket (receipts attached)**

| | | |
|---|---|---|
| 7/24/19 | 40.00 | taxi |
| | 10.90 | dining |
| 7/25/19 | 16.64 | dining |
| 7/27/19 | 9.91 | dining |
| | 21.00 | parking |

|  | | 98.45 |
|---|---|---|
| Total | | 6,548.45 |

Thank you.

EXHIBIT

5

Tuesday, October 15, 2019 at 7:06:25 PM Eastern Daylight Time

**Subject:** FW: bill for Kellie Ottoboni's time
**Date:**   Tuesday, October 15, 2019 at 7:05:53 PM Eastern Daylight Time
**From:**   Marilyn Marks

**From:** "Philip B. Stark" <stark@risklaw.org>
**Reply-To:** "stark@risklaw.org" <stark@risklaw.org>
**Date:** Monday, January 7, 2019 at 8:21 PM
**To:** Marilyn Marks <marilyn@aspenoffice.com>
**Subject:** bill for Kellie Ottoboni's time

Hi Marilyn--

I trust everything was filed. Fingers crossed.

Here's Kellie's time:

1/2: 2 hours
1/3: 3.5 hours
1/4: 4 hours
1/5: 6 hours
1/6: 1.5 hours
Total hours: 15 hours @ $150/h = $2250.

I'll send you a bill for my time in the next few days; we can discuss how to handle it.

Best,
Philip

--

Philip B. Stark | Associate Dean, Mathematical and Physical Sciences | Professor,  Department of Statistics | University of California
Berkeley, CA 94720-3860 | 510-394-5077 | statistics.berkeley.edu/~stark |
@philipbstark


--

Philip B. Stark | Associate Dean, Mathematical and Physical Sciences | Professor,  Department of Statistics | University of California
Berkeley, CA 94720-3860 | 510-394-5077 | statistics.berkeley.edu/~stark |
@philipbstark

---------- Forwarded message ---------
From: **Kellie Ottoboni** <kellieotto@berkeley.edu>
Date: Mon, Feb 11, 2019 at 6:57 PM
Subject: Hours for GA precinct-level work
To: Philip B. STARK <pbstark@berkeley.edu>


1/29: 1 hour parsing turnout data
2/1: 3.25 hours parsing precinct-level votes
2/2: 2 hours parsing precinct-level votes; merging votes and turnout
2/3: 3 hours merging votes and turnout
2/4: 3 hours merging votes and turnout
2/5: 4 hours merging votes and turnout; Fulton analysis
2/6: 1.25 hour Fulton analysis
Total: 17.5 hours


Best,
Kellie
--
Kellie Ottoboni
Ph.D. Statistics '19, University of California, Berkeley
Fellow at Berkeley Institute for Data Science

Mobile: (650) 520-5056
Website: www.kellieottoboni.com

On Thu, Jun 13, 2019 at 2:39 PM Kellie Ottoboni <kellieotto@berkeley.edu> wrote:

Thanks Marilyn! I will keep following along...

My mailing address has changed to the following:

1313 Martin Luther King Jr. Way
Apt #6
Berkeley, CA 94709


5/13: 2 hr 15 min fixing data merge
5/14: 2 hr 45 min data analysis for queries 2-4
5/15: 1 hr writing up queries 2-4
5/17: 2 hr data analysis for Bartow County
6/13: 1 hour on phone call + prepping dropbox folder
Total: 9 hr


Best,
Kellie

E
X
H
I
B
I
T

6

<table>
<tr><td colspan="4"><b>Hoke, Candice- Expert witness and legal services - Professional Time & Expenses<br>Matter: Curling v Kemp,  No. 17-cv-2989-AT</b></td></tr>
</table>

| Date | Description of services | Time spent - in hrs | Comments<br>EW = Expert witness<br>LS = Legal services |
|---|---|---|---|
| 08/27/17 | Review emails requesting expert witness services; review case docs | 1.1 | EW |
| 08/28/17 | research on scientific deficiencies Diebold GEMS VS; VS forensics; constitutional bases for & send research with overview analysis; draft Declaration | 4.3 | EW |
| 08/29/17 | Draft & edit Declaration; send signed final | 3.2 | EW |
| 09/02/17 | Disc with client re other EW services requested & my expertise as used in other cases | 0.8 | EW |
| 09/03/17 | analyze case issues; research; sent | 0.5 | EW |
| 10/02/17 | Review emails & initial MTD case docs re for obtaining litigation new counsel | 0.2 | LS |
| 10/07/17 | Analyze MTD case docs re for obtaining litigation new counsel | 0.5 | LS |
| 10/30/17 | Conf call re spoliation of evidence & new counsel effort | 0.5 | LS |
| 11/16/17 | Legal research and answ email | 0.2 | LS |
| 11/17/17 | Review corr re atty withdrw; review case docs | 0.2 | LS |
| 11/18/17 | Rev docs re atty misfeasance | 1.3 | LS |
| 11/25/17 | Corrsp re evid of atty misfeas; analyze case docs | 3.1 | |
| 11/26/17 | Corrsp w/ new Client atty re motion to withdraw and need for new counsel; analyze S+J case filings and motion to withdraw; research, draft, and edit legal arguments for client's cross motion for S+J disqualification | 14.4 | LS |
| 11/27/17 | Review draft jud filing w/ attory of record notes. Revise in light of S+J change of position; craft and organize exhibits; draft motion for access; edit all docs for filing | 15.8 | LS |
| 11/29/17 | Review corr re S+J withdrawal | 1.1 | LS |
| 12/12/17 | Review and write corresp re MTW | 0.2 | LS |
| 12/14/17 | Corresp re proteciton of tech evid | 0.5 | LS |
| 12/17/17 | Rev corresp and respond | 0.5 | LS |
| 12/18/17 | Rev corresp and respond; con call w/ new attys re tech aspects | 1.1 | LS |
| 12/19/17 | Case reorg discussion with new attys | 0.2 | LS |

| 01/12/18 | Review jud order on MTW and discuss | 0.2 | LS |
|----------|-------------------------------------|-----|-----|
| 01/18/18 | Review USDCt order | 0.1 | LS |
| 09/18/18 | Consult on operational security steps needed as part of relief request for Jud Order; read case docs | 1.4 | EW |
| 09/20/19 | Consult on need for addl Declar; read case docs | 1.7 | EW |
| 05/18/19 | Review Judicial decision & Order | 1.1 | EW |
| 05/22/19 | review case docs for Decl addition | 0.9 | EW |
| 05/28/19 | Review case docs for addl Declaration | 0.2 | EW |
| 06/16/19 | Draft & edit Declaration | 0.7 | EW |
| 06/17/19 | Edit & submit Declaration for filing | 4.5 | EW |
| 07/18/19 | Assist in prep for Shamos deposition | 4.8 | EW |
| 07/19/19 | Listen via concall to Shamos deposition; standby assistance for technical security refutation if needed | 2.5 | EW |
| | **Total Hours** | **67.8** | |

Hourly Rate for Election Consulting ---$400  x 67.8 hours =  $27,120

Discount---public interest lawsuit, 501(c)(3)                    (  9, 492)

Net billing @ $260 per hour                            = $17,628

E
X
H
I
B
I
T

7

# Ritchie Wilson

**813 East Ann Street, Apt 3**

**Ann Arbor, MI, 48104**

**Phone: 646-657-9545**

# INVOICE

| DATE |
|---|
| 8/27/2019 |

| BILL TO |
|---|
| Coalition for Good Governance |

| NOTE: |
|---|
| This work was billed at the agreed $200 per hour. However, in consideration of CGG's non-profit status and ongoing litigation, I agree to accept the reduced rate of $50 per hour now, and the defered $150 per hour to be payable when the CGG board determines it has secured sufficient funding for it other litigation expenses. |

| DESCRIPTION | HOURS/QTY | PRICE | AMOUNT | TMP REDUCED PRICE | TMP REDUCED AMOUNT |
|---|---|---|---|---|---|
| Investigating GEMS DBs - Week July 7 -13 | 16 | 200.00 | 3,200.00 | 50.00 | 800.00 |
| Investigating GEMS DBs - Week July 14-20 | 52.5 | 200.00 | 10,500.00 | 50.00 | 2,625.00 |
| Investigating GEMS DBs - Week July 21-27 | 32.5 | 200.00 | 6,500.00 | 50.00 | 1,625.00 |
| Investigating GEMS DBs - Week July 28 - Aug 3 | 31.5 | 200.00 | 6,300.00 | 50.00 | 1,575.00 |
| Investigating GEMS DBs - Week Aug 4-10 | 18.5 | 200.00 | 3,700.00 | 50.00 | 925.00 |
| Investigating GEMS DBs - Week Aug 11-17 | 25 | 200.00 | 5,000.00 | 50.00 | 1,250.00 |
| Investigating GEMS DBs - Week Aug 18-25 | 3 | 200.00 | 600.00 | 50.00 | 150.00 |
| | | | - | | |
| Flight July 12, Washington DC to Detroit | 1 | 277.29 | 277.29 | 277.29 | 277.29 |
| Microsoft Access License | 1 | 74.19 | 74.19 | 74.19 | 74.19 |
| TOTAL | | | $   36,151.48 | | $   9,301.48 |

# Ritchie Wilson

# INVOICE

**813 East Ann Street, Apt 3**

**Ann Arbor, MI, 48104**

**Phone: 646-657-9545**

| DATE |
|---|
| 9/3/2019 |

| BILL TO |
|---|
| Coalition for Good Governance |

| NOTE: |
|---|
| This work was billed at the agreed $200 per hour. However, in consideration of CGG's non-profit status and ongoing litigation, I agree to accept the reduced rate of $50 per hour now, and the defered $150 per hour to be payable when the CGG board determines it has secured sufficient funding for its other litigation expenses. |

| DESCRIPTION | HOURS/QTY | PRICE | AMOUNT | TMP REDUCED PRICE | TMP REDUCED AMOUNT |
|---|---|---|---|---|---|
| Writing Declaration - Week Aug 26 - Sept 1 | 32.5 | 200.00 | 6,500.00 | 50.00 | 1,625.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | **TOTAL** | | $   6,500.00 | | $   1,625.00 |

EXHIBIT

8

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>Court Address:<br>     100 Jefferson County Parkway<br>     Golden, Colorado 80401 | |
| IN RE: THE REQUEST OF MARILYN MARKS FOR CERTAIN RECORDS PURSUANT TO THE COLORADO OPEN RECORDS ACT, § 24-72-201, ET SEQ. | ▲ COURT USE ONLY ▲ |
| **Attorney for Respondent:**<br>Robert A. McGuire<br>ROBERT A. McGUIRE, ATTORNEY AT LAW, LLC<br>1624 Market Street, Suite 202<br>Denver, Colorado 80202<br>Phone Number:    303-734-7175<br>FAX Number:    303-734-7166<br>E-mail:    ram@lawram.com<br>Atty. Reg. #:    37134 | Case Numbers: 2011CV3576; 2011CV3828<br><br><br><br><br><br>Div.:  9    Ctrm.: |
| **AFFIDAVIT OF MARILYN R. MARKS SUPPORTING RESPONDENT'S CLAIMED AMOUNT OF REASONABLE ATTORNEY FEES** | |

City and County of Pitkin    )
                              )    ss.
State of Colorado          )

      **MARILYN R. MARKS** ("Affiant"), being of lawful age and first duly sworn upon oath, deposes and states as follows:

      1.     I am the Respondent in the above-captioned matter.

      2.     I have prepared and do hereby submit this affidavit pursuant to this Court's Final Order Re: Respondent's Requests for Data and Reports Pursuant to the Colorado Open Records Act at 11 (the "Order"), and as supporting documentation to evidence the reasonableness of the fees claimed, as required under C.R.C.P. 121(c) § 1-22 ¶ 2(b).

      3.     Through my corporate business experience, non-profit work and personal business requirements, I have more than 30 years of experience as a consumer of legal services, during which time I have either directly or through subordinates engaged, interviewed and (as representative of a party) been opposed by literally hundreds of lawyers from law firms across the United States and in some foreign countries.

      4.     Either directly or through subordinates, I have engaged and instructed specialist counsel for specific assignments in patent law; transportation law; U.S. State, and international

Case 1:17-cv-02989-AT   Document 632   Filed 10/17/19   Page 338 of 382

Marks Aff. Supp. Respondent's Claimed Amount of Reasonable Att'y Fees
Page 2

tax law; M&A transactions; commercial litigation; commercial real estate; labor law; employment law; anti-trust; securities compliance; securities litigation; white-collar crime; Uniform Commercial Code and secured transactions; chemical technology; bio-technology licensing; restructuring; bankruptcy; intellectual property; internet technology and e-commerce; international trade; investment management; ERISA; RICO; Foreign Corrupt Practices Act defense; lease financing; global policy; directors' and officers' liability; private equity; municipal law; election law; trusts and estates; debt financing; personal real estate transactions; and Colorado law on initiatives.

5.     My background as a sophisticated and prolific consumer of legal services has endowed me with a great depth of background and experience in assessing and evaluating the relative quality of legal services and the market price of attorney time among competing legal services providers practicing in various markets, including Colorado.

6.     I believe that my extensive knowledge of market prices for attorney time in competitive legal markets is far greater than the knowledge of such rates on the part of most attorneys actually practicing in such markets and unquestionably exceeds the knowledge of those rates that would typically inform the attorney selection process and legal services purchasing decisions of most individual and corporate consumers of legal services.  My experience has also given me substantial familiarity with the amount of legal work that is reasonably and necessarily required in order to achieve many of the objectives of litigation.

## <u>EXPERIENCE AS A CONSUMER OF LEGAL SERVICES</u>

7.     In 1982, I became a Vice-President of a Fortune 500 Corporation, The Dorsey Corporation.

8.     In my executive duties with The Dorsey Corporation, I worked closely with teams of attorneys in New York, Atlanta, and Chattanooga.

9.     My primary responsibilities with The Dorsey Corporation involved mergers and acquisitions, corporate development and strategic planning, the last of which involved almost daily interactions with attorneys of various specialties including M&A, tax, international business, patent law, intellectual property and securities law.

10.     As Vice-President  of The Dorsey Corporation, I was involved in engaging law firms for various assignments.  I made and assisted decisions about engaging legal counsel on the basis of counsel's areas and depth of legal expertise and the reasonableness of proposed counsel's fee arrangements.

11.     Law firms of note that I worked directly with at The Dorsey Corporation included:
- Wachtell, Lipton, Rosen & Katz
- Dechert LLP

Marks Aff. Supp. Respondent's Claimed Amount of Reasonable Att'y Fees
Page 3

- Alston & Bird LLP
- Miller & Martin PLLC (Chattanooga)
- Powell Goldstein LLP (Atlanta)

12.   Law firms of note that I worked directly opposite at The Dorsey Corporation included:

- Shearman & Sterling LLP
- Kirkland & Ellis LLP
- King & Spalding LLP

13.   Because it did business in dozens of States, The Dorsey Corporation also had numerous law firms serving as local counsel with whom I worked, including particularly local tax, litigation, labor and real estate counsel.

14.   In 1986, I was appointed to serve as Chief Executive Officer and Chairman of the Board of Directors of Dorsey Trailers, Inc. ("Dorsey Trailers"), a subsidiary of The Dorsey Corporation.  I held the position of Chairman of the Board for 15 years, from 1986 to 2000, and I was Chief Executive Officer for 14 of those years.

15.   Dorsey Trailers was a mid-size manufacturing company with factories in five States and customers in almost all of the fifty States and some foreign countries.

16.   By virtue of its need for local counsel as a result of its widely distributed operations, Dorsey Trailers engaged dozens of law firms under my direction and supervision to serve as local counsel in a variety of jurisdictions.  I retained what I would estimate to be more than 30 local law firms to serve as local counsel with various  areas of expertise in the States of Wisconsin, Georgia, South Carolina, Pennsylvania and Alabama, as well as in other States, as local litigation required.

17.   In 1987, I led a leveraged buy-out of Dorsey Trailers, in connection with which I interviewed numerous firms for the role of corporate counsel to the newly acquired company.

18.   I chose Alston & Bird LLP as corporate counsel for Dorsey Trailers based on that firm's expertise and willingness to negotiate various flexible fees.

19.   I also selected and engaged McGlinchey Stafford PLLC as labor counsel and Fisher & Phillips LLP as subsequent labor counsel.

20.   In 1994, I took Dorsey Trailers public, in the course of which I worked with  various New York and Baltimore law firms that served as underwriter's counsel.  Among these firms was Hunton & Williams LLP.

Marks Aff. Supp. Respondent's Claimed Amount of Reasonable Att'y Fees
Page 4

21.     In 1994, I also began to serve as a director on the Boards of Directors of two Fortune 500 companies, Dana Corporation and Eastman Chemical.

22.     Each of these public companies engaged hundreds of law firms in various locales and specialties. As a director, my interface with attorneys in those firms varied depending on the events that occurred in active major cases.

23.     Each of these public companies also maintained in-house legal staffs totaling about 25 lawyers. I worked with in-house counsel closely as a member of each company's board. I also approved compensation for both companies' in-house legal department staff through my work on the compensation committees of the boards on which I served.

24.     As a member of the audit, finance and corporate governance committees of the Boards of Directors for each of these two companies, I worked with numerous law firms and helped to engage law firms for special assignments related to the work of those committees.

25.     Law firms of note that I worked with as a director of Dana Corporation and Eastman Chemical included:
- Skadden, Arps, Slate, Meagher & Flom LLP
- Jones Day
- Wachtell, Lipton, Rosen & Katz
- Alston & Bird LLP

26.     I also personally/individually engaged a specialist attorney at McKenna, Long & Aldridge LLP to advise me on my corporate board responsibilities at Dana Corporation and potential personal legal liabilities inherent in that role.

## PARTICULAR KNOWLEDGE OF THE COLORADO LEGAL MARKET

27.     Over the last 8 years I have paid (directly or through corporate involvement) rates from $135 per hour to in excess of $1200 per hour for legal services. The variation between these rates is explained by disparities in expertise and by the specific geographic markets and availability of the attorney to undertake new work.

28.     As a resident of Aspen, Colorado, I have engaged the following local counsel during this period for a variety of personal matters, primarily consisting of real estate transactions:
- Neal D. Karbank, P.C.
- Millard Zimet
- Krabacher & Sanders PC

29.     In 2007, I engaged Holland & Hart LLP to advise a nonprofit group seeking to overturn local ordinances in the City of Aspen.

Marks Aff. Supp. Respondent's Claimed Amount of Reasonable Att'y Fees
Page 5

30.      As part of this effort, I found only one attorney in the Roaring Fork Valley (Aspen, Basalt, Glenwood Springs) who was able to advise the group on municipal law, property rights and elections.

31.      I therefore interviewed every Denver-based firm with offices in the Roaring Fork Valley before ultimately selecting Holland & Hart LLP and engaging that firm on behalf of the nonprofit group.

32.      In 2009, I ran for mayor of the City of Aspen.  Further to my campaign, I engaged Denver counsel at the law firm now known as Hale Westfall LLP, to advise me on election law and regulations.  As I had found two years previously, there were no law firms in the Roaring Fork Valley and, indeed, no law firms that I was aware of anywhere else in western Colorado that practiced heavily in the area of election law.  Thus my requirement for legal expertise in the area of election law compelled me to obtain qualified legal counsel by turning to practitioners principally located and practicing within the Denver metropolitan area.

33.      In late 2009, I initiated a Colorado Open Records Act ("CORA") case in Pitkin County, designated Marks v. Koch (Pitkin County District Court, 11CV694).  In the course of searching for qualified counsel to represent me in that CORA matter, I interviewed a number of Denver-based firms, after finding again that there was no attorney with the appropriate expertise and availability in the Roaring Fork Valley.

35.      In the Fall of 2011, I helped local Roaring Fork Valley citizens interview and consider firms to potentially file an action under the Colorado Open Meetings Law ("COML").  I interviewed three firms with Aspen-area offices, and approximately four Denver-based firms.  Billing rates ranged for the attorneys I interviewed ranged from $355 per hour to $525 per hour, depending on the relevant attorney's workload, experience and skill set.

36.      In February 2012, I interviewed a Denver firm with expertise in COML and CORA, with billing rates of $355 per hour, but discussions on that particular matter halted due to potential conflict of interest.

37.      In my experience, there are very few law firms and attorneys outside of the Denver metropolitan area with a practice in election law, in CORA litigation or in the area of regulation relating to voting systems, and no firm or attorney outside Denver to my knowledge has a practice that involves all three areas.

38.      To represent me in the present case, there were basically two attorneys that I identified as having appropriate expertise and experience to deal with my CORA case in Jefferson County, which required familiarity with election laws, voting systems and Colorado's open records laws.  My present counsel, Mr. McGuire, is one of those two attorneys.  The other attorney's regular market rate is $480 per hour.

Marks Aff. Supp. Respondent's Claimed Amount of Reasonable Att'y Fees
Page 6

39.     I have reviewed Mr. McGuire's affidavit of today's date, which is submitted contemporaneously herewith, and I am personally familiar both with it and with the legal services that Mr. McGuire has performed on my behalf throughout this case.

## CONCLUSIONS

40.     My case would have been delayed, more costly and potentially handled with less skill and efficiency of focus if I had selected an attorney other than Mr. McGuire.

41.     Based upon my personal knowledge derived from my background of experience as a sophisticated and prolific consumer of legal services, as described in the foregoing discussion, it is my opinion that the number of hours that are itemized in Mr. McGuire's affidavit is not only a reasonable number of hours for the work that Mr. McGuire has performed on my behalf in this case to date, but is in fact at the low end of the range of hours that I would expect a highly-qualified attorney with practice-area expertise to reasonably spend completing the same work.

42.     Based upon my same knowledge, it is also my opinion that a fee of $385 per hour for the legal services that Mr. McGuire has performed to date on my behalf in this case not only is a reasonable hourly rate, but in fact constitutes a substantial discount from the actual hourly value of Mr. McGuire's services in this legal market.

43.     Based upon my same knowledge, it is also my opinion that the lodestar amount that is set out in Mr. McGuire's affidavit is a minimum reasonable aggregate attorney fee for the legal work that Mr. McGuire has performed on my behalf through May 7, 2012, in connection with this case.

44.     The statements made in this Affidavit are not intended to waive and should not be construed as waiving any right or privilege.

45.     Further Affiant sayeth not.

Marilyn R. Marks

Subscribed and sworn to before me this 7th day of May, 2012, by Marilyn R. Marks. Witness my hand and official seal.

My commission expires: 11/12/2013

Notary Public

[SEAL]

NOTARY PUBLIC
WESLEY C. SULEK
STATE OF COLORADO

Marks Aff. Supp. Respondent's Claimed Amount of Reasonable Att'y Fees
Page 7

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May, 2012, I served a true and correct copy of the **AFFIDAVIT OF MARILYN R. MARKS SUPPORTING RESPONDENT'S CLAIMED AMOUNT OF REASONABLE ATTORNEY FEES** and all attachments by the method indicated below to each of the following:

| Attorney | Firm And/Or Address: | Method |
|---|---|---|
| Ellen G. Wakeman, #12290 | Jefferson County Attorney's Office | LexisNexis |
| Writer Mott, #33148 | 100 Jefferson County Parkway, #5500 | File & Serve |
| David R. Wunderlich, #39365 | Golden, Colorado 80419-5500 | |

Robert A. McGuire

E
X
H
I
B
I
T

9

Exhibit 9

**MARILYN MARKS TIME BILLED**

| Phase of Case | Document | Doc Number | work done | Hours |
|---|---|---|---|---|
| I | Original Petition | 1--exh 2 | assist H&W with fact gathering, research law, gathering affidavits, researching supporting documents, coordinating in witness affidavits, editing, proofing, outlining goals, interviewing witnesses | 45 |
| I | Amended complaint | | helped correct errors, fact check , editing, research for attorneys | 14 |
| I | Original Petition --service of process | | identifying and resolving service issues | 10 |
| II | Demand Letter 4.16.18 | 351 | outline, rough drafting, editing, citation checks, research organizing facts for attorneys | 5 |
| II | Demand Letter 4.16.18 | 351 | rough drafting, editing, citation checks, research organizing facts for attorneys | 1 |
| II | Third Amended Complaint | 160 | outline facts for attorneys | 5.25 |
| II | Third Amended Complaint | 160 | contrast with SAC for unwanted claims | 1 |
| II | Third Amended Complaint | 160 | preparing facts for attorneys | 1.5 |
| II | Third Amended Complaint | 160 | edits, suggestions, fact checking, citation checking, | 3.5 |
| II | Third Amended Complaint | 160 | consulting with experts | 3 |
| II | Defendants  MTD to TAC | 234 | analyze, provide facts, comments to attorneys | 3 |
| II | D's MTD to TAC | 234 | Provide suggestions to attorneys for response. | 2 |
| II | Transcripts 5.8. 2018 | 204 | Review and annotate for attorneys | 1.5 |
| II | status conf 5/1/2018 | | gather materials for attorneys, prep for stauts conf. | 3 |
| II | status conf 5/8/2018 | | prepare materials for attorneys re preservation | 4 |

| | | | | |
|---|---|---|---|---|
| III | Virginia Martin 1 | 277 p77 | assisting Martin in organizing declaration information | 1.5 |
| III | Virginia Martin 1 | 277 p77 | assisting Martin in organizing declaration information, providing research materials and contacts | 0.5 |
| III | Virginia Martin 1 | 277 p77 | proof reading, formatting, cross reference, | 0.75 |
| III | Amber McReynolds 1 | 277 p93 | requesting declaration, covering subject matter, communications re: goals and case statuts | 1.5 |
| III | Amber McReynolds 1 | 277 p93 | assisting McReynolds in organizing information , sending revelant case files, explaining GA procedures, | 0.75 |
| III | Amber McReynolds 1 | 277 p93 | proof reading, formatting, cross reference, | 1.25 |
| III | Richard DeMillo 8.20.18 | 277 p 52 | requesting dclaration, communication re: theory of case, and subject matter of declaration. | 1.5 |
| III | Richard DeMillo 1 | 277 p 52 | providing case materials, providing other experts' reports. | 0.75 |
| III | Richard DeMillo 1 | 277 p 52 | proofreading, formatting | 0.75 |
| III | Jeanne Dufort 1 | 296 p177 | making request, supply subject matter details, | 0.5 |
| III | Jeanne Dufort 1 | 296 p177 | proof reading, corrections, formatting | 0.5 |
| III | Matt Bernhard 1 | 258-1 p32 | outlining need | 0.75 |
| III | Matt Bernhard 1 | 258-1 p32 | providing background docs. | 1.5 |
| III | Matt Bernhard 1 | 258-1 p32 | formatting, proof reading, check references, | 0.5 |
| III | 2018  P.I. Injunction Brief | 258 | outlinging goals, drafting proposed sections, preparing facts, research | 10 |
| III | 2018  P.I. Injunction Brief | 248 | revisions | 5 |
| III | 2018  P.I. Injunction Brief | 258 | facts, working with experts | 3 |
| III | 2018 D's Response | 265 | reivew to provide comments to attorneys, fact checking | 5 |
| III | 2018 D's Response | 265 | annotations and write up of comments to attorneys | 4 |
| III | | | | |
| III | 2018 PI injunction Reply | 277 | assist in drafting, fact checking, reference checking | 5 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| III | 2018 PI Inj Brief Oct | | 327 outline goals and initial drafting of ideas | 3 |
| III | 2018 PI Inj Brief Oct | | 327 review and edit drafts and review relief | 3 |
| III | 2018 PI Inj Brief Oct | | 327 work with experts on audit requirements | 5 |
| III | Transcripts 2018 PI hearing | | 307 Review and annotate for attorneys | 4.5 |
| III | Philip Stark Declaration | 296 p6 | requesting dclaration, communication re: theory of case, and subject matter of declaration. | 0.8 |
| III | Philip Stark Declaration | 296 p6 | providing case materials to Stark | 1.5 |
| III | Philip Stark Declaration | 296 p6 | answering questions from Stark re: GA policies and practicies | 0.5 |
| III | Philip Stark Declaration | 296 p6 | providing research materials to Stark | 0.5 |
| III | Philip Stark Declaration | 296 p6 | proofreading | 0.5 |
| IV | L Digges | 327-1 | outline, make request, proofread. | 1.5 |
| IV | W Digges | 327-1 | outline, make request, proofread. | 1 |
| IV | Davis | 327-1 | outline, make request, proofread. | 1 |
| VI | Demand Letter 2.18.19 | | 351 outline, rough drafting, editing, citation checks, research organizing facts for attorneys | 2 |
| VI | Demand Letter 2.18.19 | | 351 rough drafting, editing, citation checks, research organizing facts for attorneys | 1 |
| VI | Demand Letter April 1 2019 | | 351 outline, rough drafting, editing, citation checks, research organizing facts for attorneys | 4.5 |
| VI | Demand Letter April 1 2019 | | 351 rough drafting, editing, citation checks, research organizing facts for attorneys | 1 |
| VI | Demand letter March 2019 | | 351 research, drafting, fact checking, | 5 |
| VI | Voter affidavits | 412, 413 | obtaining affidavits, communications with voter contacts | 7.5 |
| VI | Voter affidavits | 412, 413 | reading, evaluating affidavits for inclusion in brief | 6.75 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | voter affidavits | 412, 413 | evaluating affidavits for inclusion in brief | 3 |
| VI | Deposition -- Barnes | | provide Brown with documents for deposition | 2 |
| VI | voter affidavits | 412, 413 | Organizing affidavits for inclusoins in brief | 2.75 |
| VI | voter affidavits | 412, 413 | superiving interns for affidavit organization | 2.5 |
| VI | voter affidavits | 412, 413 | superiving interns for affidavit organization | 1.75 |
| VI | Virginia Martin 2 | 413 p 270 | assisting Martin in organizing declaration information | 1.5 |
| VI | Virginia Martin 2 | 413 p 270 | assisting Martin in organizing declaration information, providing research materials and contacts | 0.35 |
| VI | Virginia Martin 2 | 413 p 270 | proof reading, formatting, cross reference, | 0.5 |
| VI | Amber McReynolds 2 | 413  p219 | assisting McReynolds in organizing information , sending revelant case files, explaining GA procedures, | 2 |
| VI | Amber McReynolds 2 | 413  p219 | requesting declaration, covering subject matter, communications re: goals and case statuts | 1.5 |
| VI | Deposition -- Barnes | | review transcript for attorneys, annotate for hearing prep for attorneys, | 2 |
| VI | Amber McReynolds 2 | 413  p219 | proof reading, formatting, cross reference, | 0.5 |
| VI | Richard DeMillo 2 | 548 74 | inqiuring, make request, supply subject matter details | 1 |
| VI | deposition--Doran | | Refine questions, materials for Brown | 2 |
| VI | Richard DeMillo 2 | 548 74 | proofreading, formatting | 1.5 |
| VI | Megan Missett | 413 p 303 | making request, supply subject matter details, | 0.5 |
| VI | Megan Missett | 413 p 303 | proof reading, corrections, formatting | 0.5 |
| VI | Megan Missett | 413 p 303 | call to Missett | 0.25 |
| VI | Megan Missett | 413 p 303 | proof reading, corrections, formatting | 0.5 |
| VI | Jeanne Dufort 2 | 413 p197 | making request, supply subject matter details, | 0.5 |
| VI | Jeanne Dufort 2 | 413 p 197 | formatting, proofreading, | 0.5 |
| VI | Matt Bernhard 2 | 277 p37 | formatting, proof reading, check references, | 0.5 |
| VI | Matt Bernhard  GEMS | 451-3 | formatting, proof reading, check references, | 0.75 |
| VI | Ronnie Martin | 413 p215 | expaining request, providing documents | 1 |
| VI | Ronnie Martin | 413 p215 | proofreading, formatting, | 0.5 |
| VI | Garland Favorito | 413  289 | explaining request, providing documents | 1 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | Garland Favorito | 413 289 | communicate re: excess length | 0.25 |
| VI | Garland Favorito | 413 289 | summarizing content for attorneys | 0.75 |
| VI | Garland Favorito | 413 289 | locating proofing transcipts, | 0.75 |
| VI | Garland Favorito | 413 289 | proofreading, formatting | 1 |
| VI | Pride Forney | 413 p308 | request declaration, | 0.25 |
| VI | Pride Forney | 413 p308 | proofreading, formatting | 0.5 |
| VI | Taran Greenwald | MPI June 2019 | assisting with outline, formatting, proofreading | 1.5 |
| VI | Deposition--Kirk | 503 | review transcript for P I hearing, prepare info for attorneys | 2 |
| VI | Sarah LeClerc | 7/19 PI hearing | preparing outlines, suggesting questions, considering cross examination, | 1 |
| VI | Matt Bernhard | 7/19 PI hearing | preparing outlines, suggesting questions, considering cross examination, | 0.5 |
| VI | Municipal elections | 507 | design research and worksheet | 1.5 |
| VI | Municipal elections | 507 | explain to attorneys, explain to interns | 0.75 |
| VI | Municipal elections | 507 | review data and supervise interns | 5 |
| VI | April 2019 Status Report | 351 | researching HB316, outlining, assiting in drafting, editing, citation checking, proofing, | 10 |
| VI | 2019 P.I.Injunction Brief | 419 | outline goals, outline sections draft proposed order | 5 |
| VI | 2019 P.I.Injunction Brief | 419 | rough drafting sections of Mpi | 10 |
| VI | 2019 P.I.Injunction Brief | 419 | preparation of evidence | 35 |
| VI | 2019 P.I.Injunction Brief | 419 | review, editing | 10 |
| VI | 2019 D response | 472 | review and fact check for attorneys | 3 |
| VI | 2019 D response | 472 | provide comments to attorneys for reply brief consideration | 2.5 |
| VI | 2019 P.I. Inj Reply Brief | 507 | provide facts, reseach, suggesting for reply | 2.5 |
| VI | 2019 P.I. Inj Reply Brief | 507 | help with drafting, edits, fact check, citations | 10 |
| VI | Spoliation Brief | 548 | outline brief and goals for Ichter | 1.5 |
| VI | Spoliation Brief | 548 | provide factual background to Ichter | 2.5 |
| VI | Spoliation Brief | 548 | draft portion of brief | 2.5 |
| VII | Fee Claim | | review, suggest edits brief | 2 |

| | | | | |
|---|---|---|---|---|
| VI | Spoliation Brief | | 548 proofreading, fact check, | 2.5 |
| VI | spoliation Brief response | | 558 fact checking --summary to attorneys | 1.5 |
| VI | spoliation Brief reply | | 564 fact checking editing, outlining goals | 3 |
| VI | RFA -Fulton | 5.29.19 | drafting, reviewing with attorneys | 1.5 |
| VI | RFA-State | July 8.2019 | drafting, reviewing with attorneys | 2.5 |
| VI | public records requests SOS | various | preparing, follow up on public reccords requests for evidence | 7.5 |
| VI | public records requests Fulton | various | preparing, follow up on public reccords requests for evidence | 4 |
| VI | KSU FOIA | 10/2017 through 7/2019 | 187 page KSU server doc. Review for technical analysis and details. Includes request, followup, analysis, inquiring with experts, summary memos to attorneys, fact checking, incorporating into discovery requests, organizing pages for attorneys. | 17 |
| VI | Interrogatories-fulton | 6.8.2019 | draft, edit, communicate with attorneys | 3 |
| VI | Interrogatories-state | 6.8.2019 | draft, edit, communicate with attorneys | 4 |
| VI | Request for documents--SOS | 6.16.19 | draft, edit, discuss with attorneys | 4 |
| VI | Request for document--SOS | 6.16.19 | review. Comment, analyze Curling Doc request | 3 |
| VI | Document discovery response | various | prepare correspondence with election officials | 10 |
| VI | document discovery response | various | supervise interns re document preparation | 2.5 |
| VI | Deposition -- Barnes | | outline goals, prepare list of topics, questions | 2.5 |
| VI | Richard DeMillo 2 | 548 74 | providing case materials, providing other experts' reports. | 2 |
| VI | Deposition -- Barnes | | refine questions and prep with Brown | 3 |
| VI | Deposition -- Barnes | | attend deposition, refine questions, supply documents, | 7 |
| VI | Spoliation Brief | | 548 editing brief, providing references, | 2 |
| VI | | | | |
| VI | Deposition--Kirk | | outline goals, prepare topic list, prepare questions | 2.5 |
| VI | Deposition--Kirk | | refine questions, provide gather supporting documents | 1.5 |
| VI | Deposition--Kirk | | refine questions, provide supporting documents | 1 |
| VI | Deposition--Kirk | | attend deposition, provide questions, review documents produced, fact check, assist Powers | 5 |
| VI | Subpeona Morgan County docs | | Apr-19 Draft subpeona, review with Brown | 2 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | Deposition--Ledford | | outline goals. Prepare questions, topics | 3 |
| VI | Deposition--Ledford | | locate relevant documents | 3 |
| VI | Deposition--Ledford | | prep session with Powers | 3 |
| VI | Deposition--Ledford | | attend deposition and assist Powers | 6 |
| VI | | | | |
| VI | Deposition-Shamos | | Help prepare Powers for background technology | 5 |
| VI | Deposition-Shamos | | Prep with Powers for questions. Organize documents | 4 |
| VI | Deposition-Shamos | | gather technical materials for Powers | 2.5 |
| VI | Deposition-Shamos | | Attend deposition, assist Powers with questions, followup, and organizing results for PI hearing | 5 |
| VI | | | | |
| VI | Deposition--Doran | | Prepare questions , supporting materials for Brown | 5 |
| VI | Subpeona- Bartow county doce | 13-Jun-19 | draft subpeona, review with Brown | 2 |
| VI | Deposition--Doran | | Attend deposition, assiist Brown, provide questions and following questions, review documents produced. | 4 |
| VI | Subpeona- Rockdale county docs | 5.22.19 | draft subpeona, review with Brown | 2 |
| II | Transcript 5.1.2018 | 185 | Review and annotate for attorneys | 2 |
| VI | V Martin | 7/19 PI hearing | preparing outlines, suggesting questions, considering cross examination, | 2 |
| VI | Transcript 4.9.2019 conf | 363 | Review and annotate for attorneys, prepare notes for followup | 3 |
| VI | Transcripts | 391 | Review and annotate for attorneys, prepare notes for followup | 2.25 |
| VI | Transcript July PI hearing | 570,  571 | Review and annotate for attorneys | 4 |
| VI | Direct--Barnes July 2019 | | prepare questions and materials for attorneys | 3.5 |
| VI | Direct--Beaver July 2019 | | prepare questions and materials for attorneys | 3 |
| VI | Barron- July 2019 | | prepare questions and materials for attorneys | 4 |
| VI | Documents for 7.25.19 Hearing | various | Gathering,, supervise interns for printing, organizing | 4.5 |
| VI | Documents for 7.25.19 Hearing | various | reviewing, supplementing, reviewing with attorneys | 3 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | GEMS database controversy | | details in sanctions motion. Developing facts, investigating public databases, recruting experts, training experts, arranging logistics, attending conf calls with attorneys and court, assisting in declaratoins | 68.5 |
| VI | preservation FBI image | | consulting with Ichter, preparing background materials | 2.5 |
| VI | preservation FBI image | | advising data recovery experts on contents, procedures logistics | 6 |
| VI | preservation FBI image | | discussions with foresnsics experts on recovery | 5 |
| | | | | |
| VII | Q 1 elections history | 621 | prepare outline of reseach, worksheets, supervise intern. Analyze type of eleactoins | 5 |
| VII | Fee Claim | | organize CGG expenses , professional fees, | 12 |
| VII | Fee Claim | | prepare declaration | 3 |
| VI | voter affidavits | 412, 413 | organizing affidavits for inclusoins in brief | 2 |
| VII | Monitoring 8.15.19 order | 10/1 -10/10 | recruting volunteers for monitoring pilot elections | 3 |
| VII | Monitoring 8.15.19 order | 11-Oct | organizing , training, documenting discovery needed for pilot | 3.5 |
| VII | monitoring 8.15.19 order | 14-Oct | obtain, organize feedback from observers | 2.5 |
| VII | monitoring 8.15.19 order | 14-Oct | draft memo re: observation to D counsel | 1.5 |

|  |  |
|---|---|
| Total hours | 626.65 |
| | $200 |
| **Total fees** | 125330 |

Exhibit 9

| Phase of Case | Document | Doc Number or Date | work done | Hours |
|---|---|---|---|---|
| II | Demand Letter 4.16.18 | 351 | outline, rough drafting, editing, citation checks, research organizing facts for attorneys | 5 |
| II | Demand Letter 4.16.18 | 351 | rough drafting, editing, citation checks, research organizing facts for attorneys | 1 |
| VI | Amber McReynolds 2 | 413  p219 | assisting McReynolds in organizing information , sending revelant case files, explaining GA procedures, | 2 |
| VI | Demand Letter 2.18.19 | 351 | rough drafting, editing, citation checks, research organizing facts for attorneys | 1 |
| VI | Demand Letter April 1 2019 | 351 | outline, rough drafting, editing, citation checks, research organizing facts for attorneys | 4.5 |
| VI | Demand Letter April 1 2019 | | rough drafting, editing, citation checks, research organizing facts for attorneys | 1 |
| VI | Demand letter March 2019 | 351 | research, drafting, fact checking, | 5 |

| | Declarations and Affidavits | | | |
|---|---|---|---|---|
| VI | Voter affidavits | 412, 413 | obtaining affidavits, communications with voter contacts | 7.5 |
| VI | Voter affidavits | 412, 413 | reading, evaluating affidavits for inclusion in brief | 6.75 |
| VI | voter affidavits | 412, 413 | evaluating affidavits for inclusion in brief | 3 |
| II | D's MTD to TAC | 234 | Provide suggestions to attorneys for response. | 2 |
| VI | voter affidavits | 412, 413 | Organizing affidavits for inclusoins in brief | 2.75 |
| VI | voter affidavits | 412, 413 | superiving interns for affidavit organization | 2.5 |
| VI | voter affidavits | 412, 413 | superiving interns for affidavit organization | 1.75 |
| III | Virginia Martin 1 | 277 p77 | assisting Martin in organizing declaration information | 1.5 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| III | Virginia Martin 1 | 277 p77 | assisting Martin in organizing declaration information, providing research materials and contacts | 0.5 |
| III | Virginia Martin 1 | 277 p77 | proof reading, formatting, cross reference, | 0.75 |
| VI | Virginia Martin 2 | 413 p 270 | assisting Martin in organizing declaration information | 1.5 |
| VI | Virginia Martin 2 | 413 p 270 | assisting Martin in organizing declaration information, providing research materials and contacts | 0.35 |
| VI | Virginia Martin 2 | 413 p 270 | proof reading, formatting, cross reference, | 0.5 |
| | | | | |
| III | Amber McReynolds 1 | 277 p93 | requesting declaration, covering subject matter, communications re: goals and case statuts | 1.5 |
| III | Amber McReynolds 1 | 277 p93 | assisting McReynolds in organizing information , sending revelant case files, explaining GA procedures, | 0.75 |
| III | Amber McReynolds 1 | 277 p93 | proof reading, formatting, cross reference, | 1.25 |
| VI | Amber McReynolds 2 | 413  p219 | requesting declaration, covering subject matter, communications re: goals and case statuts | 1.5 |
| VI | Demand Letter 2.18.19 | 351 | outline, rough drafting, editing, citation checks, research organizing facts for attorneys | 2 |
| VI | Amber McReynolds 2 | 413  p219 | proof reading, formatting, cross reference, | 0.5 |
| | | | | |
| IV | Philip Stark Declaration | 296 p6 | requesting dclaration, communication re: theory of case, and subject matter of declaration. | 0.8 |
| IV | Philip Stark Declaration | 296 p6 | providing case materials to Stark | 1.5 |
| IV | Philip Stark Declaration | 296 p6 | answering questions from Stark re: GA policies and practicies | 0.5 |
| IV | Philip Stark Declaration | 296 p6 | providing research materials to Stark | 0.5 |
| IV | Philip Stark Declaration | 296 p6 | proofreading | 0.5 |
| | | | | |
| III | Richard DeMillo 8.20.18 | 277 p 52 | requesting dclaration, communication re: theory of case, and subject matter of declaration. | 1.5 |
| III | Richard DeMillo 1 | 277 p 52 | providing case materials, providing other experts' reports. | 0.75 |
| III | Richard DeMillo 1 | 277 p 52 | proofreading, formatting | 0.75 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | Richard DeMillo 2 | 548 74 | inqiuring, make request, supply subject matter details | 1 |
| VI | Deposition -- Barnes | | provide Brown with documents for deposition | 2 |
| VI | Richard DeMillo 2 | 548 74 | proofreading, formatting | 1.5 |
| VI | Megan Missett | 413 p 303 | making request, supply subject matter details, | 0.5 |
| VI | Megan Missett | 413 p 303 | proof reading, corrections, formatting | 0.5 |
| VI | Megan Missett | 413 p 303 | call to Missett | 0.25 |
| VI | Megan Missett | 413 p 303 | proof reading, corrections, formatting | 0.5 |
| III | Jeanne Dufort 1 | 296 p177 | making request, supply subject matter details, | 0.5 |
| III | Jeanne Dufort 1 | 296 p177 | proof reading, corrections, formatting | 0.5 |
| VI | Jeanne Dufort 2 | 413 p197 | making request, supply subject matter details, | 0.5 |
| VI | Jeanne Dufort 2 | 413 p 197 | formatting, proofreading, | 0.5 |
| III | Matt Bernhard 1 | 258-1 p32 | outlining need | 0.75 |
| III | Matt Bernhard 1 | 258-1 p32 | providing background docs. | 1.5 |
| III | Matt Bernhard 1 | 258-1 p32 | formatting, proof reading, check references, | 0.5 |
| VI | Matt Bernhard 2 | 277 p37 | formatting, proof reading, check references, | 0.5 |
| VI | Matt Bernhard  GEMS | 451-3 | formatting, proof reading, check references, | 0.75 |
| VI | Ronnie Martin | 413 p215 | expaining request, providing documents | 1 |
| VI | Ronnie Martin | 413 p215 | proofreading, formatting, | 0.5 |

| | | | | |
|---|---|---|---|---|
| VI | Garland Favorito | 413 289 | explaining request, providing documents | 1 |
| VI | Garland Favorito | 413 289 | communicate re: excess length | 0.25 |
| VI | Garland Favorito | 413 289 | summarizing content for attorneys | 0.75 |
| VI | Garland Favorito | 413 289 | locating proofing transcipts, | 0.75 |
| VI | Garland Favorito | 413 289 | proofreading, formatting | 1 |
| VI | Pride Forney | 413 p308 | request declaration, | 0.25 |
| VI | Pride Forney | 413 p308 | proofreading, formatting | 0.5 |
| VI | Taran Greenwald | MPI June 2019 | assisting with outline, formatting, proofreading | 1.5 |
| III | L Digges | 317-1 | outline, make request, proofread. | 1.5 |
| III | W Digges | 317-1 | outline, make request, proofread. | 1 |
| III | Davis | 317-1 | outline, make request, proofread. | 1 |

**Assistiing Attorneys Witness Prep**

| | | | | |
|---|---|---|---|---|
| VI | Deposition -- Barnes | | review transcript for attorneys, annotate for hearing prep for attorneys, | 2 |
| VI | Sarah LeClerc | 7/19 PI hearing | preparing outlines, suggesting questions, considering cross examination, | 1 |
| VI | Matt Bernhard | 7/19 PI hearing | preparing outlines, suggesting questions, considering cross examination, | 0.5 |

**Analysis for MPI relief**

| | | | | |
|---|---|---|---|---|
| VI | Municipal elections | 507 | design research and worksheet | 1.5 |
| VI | Municipal elections | 507 | explain to attorneys, explain to interns | 0.75 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | Municipal elections | 507 | review data and supervise interns | 5 |
| | First Quarter elections analysis | | | |
| VII | Q 1 elections history | 621 | prepare outline of reseach, worksheets, supervise intern. Analyze type of eleactoins | 5 |

**Complaints, Motions, etc**

| | | | | |
|---|---|---|---|---|
| I | Original Petition | 1--exh 2 | assist H&W with fact gathering, research law, gathering affidavits, researching supporting documents, coordinating in witness affidavits, editing, proofing, outlining goals, interviewing witnesses | 45 |
| I | Amended complaint | | helped correct errors, fact check , editing, research for attorneys | 14 |
| I | Original Petition --service of process | | identifying and resolving service issues | 10 |
| II | Third Amended Complaint | 160 | outline facts for attorneys | 5.25 |
| II | Third Amended Complaint | 160 | contrast with SAC for unwanted claims | 1 |
| II | Third Amended Complaint | 160 | preparing facts for attorneys | 1.5 |
| II | Third Amended Complaint | 160 | edits, suggestions, fact checking, citation checking, | 3.5 |
| II | Third Amended Complaint | 160 | consulting with experts | 3 |
| II | Defendants  MTD to TAC | 234 | analyze, provide facts, comments to attorneys | 3 |
| VI | deposition--Doran | | Refine questions, materials for Brown | 2 |
| III | 2018  P.I. Injunction Brief | 258 | outlinging goals, drafting proposed sections, preparing facts, research | 10 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| III | 2018  P.I. Injunction Brief | 248 | revisions | 5 |
| III | 2018  P.I. Injunction Brief | 258 | facts, working with experts | 3 |
| | | | | |
| III | 2018 D's Response | 265 | reievw to provide comments to attorneys, fact checking | 5 |
| III | 2018 D's Response | 265 | annotations and write up of comments to attorneys | 4 |
| III | | | | |
| III | 2018 PI injunction Reply | 277 | assist in drafting, fact checking, reference checking | 5 |
| | | | | |
| III | 2018 PI Inj Brief Oct | 327 | outline goals and initial drafting of ideas | 3 |
| III | 2018 PI Inj Brief Oct | 327 | review and edit drafts and review relief | 3 |
| III | 2018 PI Inj Brief Oct | 327 | work with experts on audit requirements | 5 |
| | | | researching HB316, outlining, assiting in drafting, editing, | |
| VI | April  2019 Status Report | 351 | citation checking, proofing, | 10 |
| VI | 2019 P.I.Injunction Brief | 419 | outline goals, outline sections  draft proposed order | 5 |
| VI | 2019 P.I.Injunction Brief | 419 | rough drafting sections of Mpi | 10 |
| VI | 2019 P.I.Injunction Brief | 419 | preparation of evidence | 35 |
| VI | 2019 P.I.Injunction Brief | 419 | review, editing | 10 |
| | | | | |
| VI | 2019 D response | 472 | review and fact check for attorneys | 3 |
| VI | 2019 D response | 472 | provide comments to attorneys for reply brief consideration | 2.5 |
| | | | | |
| VI | 2019 P.I. Inj Reply Brief | 507 | provide facts, reseach, suggesting for reply | 2.5 |
| VI | 2019 P.I. Inj Reply Brief | 507 | help with drafting, edits, fact check, citations | 10 |
| | | | | |
| VI | Spoliation Brief | 548 | outline brief and goals for Ichter | 1.5 |
| VI | Spoliation Brief | 548 | provide factual background to Ichter | 2.5 |
| VI | Spoliation Brief | 548 | draft portion of brief | 2.5 |
| VI | Deposition--Kirk | 503 | review transcript for P I hearing, prepare info for attorneys | 2 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | Spoliation Brief | 548 | proofreading, fact check, | 2.5 |
| VI | spoliation Brief response | 558 | fact checking --summary to attorneys | 1.5 |
| VI | spoliation Brief reply | 564 | fact checking editing, outlining goals | 3 |
| VII | Fee Claim | | organize CGG expenses , professional fees, | 12 |
| VII | Fee Claim | | prepare declaration | 3 |
| VII | Fee Claim | | review, suggest edits brief | 2 |

**Discovery**

| | | | | |
|---|---|---|---|---|
| VI | RFA -Fulton | 5.29.19 | drafting, reviewing with attorneys | 1.5 |
| VI | RFA-State | July 8.2019 | drafting, reviewing with attorneys | 2.5 |
| VI | public records requests SOS | various | preparing, follow up on public reccords requests for evidence | 7.5 |
| VI | public records requests Fulton | various | preparing, follow up on public reccords requests for evidence | 4 |
| VI | KSU FOIA | 10/2017 through 7/2019 | 187 page KSU server doc. Review for technical analysis and details. Includes request, followup, analysis, inquiring with experts, summary memos to attorneys, fact checking, incorporating into discovery requests, organizing pages for attorneys. | 17 |
| VI | Interrogatories-fulton | 6.8.2019 | draft, edit, communicate with attorneys | 3 |
| VI | Interrogatories-state | 6.8.2019 | draft, edit, communicate with attorneys | 4 |

Exhibit 9

Request for documents:

| | | | | |
|---|---|---|---|---|
| VI | Request for documents--SOS | 6.16.19 | draft, edit, discuss with attorneys | 4 |
| VI | Request for document--SOS | 6.16.19 | review. Comment, analyze Curling Doc request | 3 |
| | | | | |
| VI | Document discovery response | various | prepare correspondence with election officials | 10 |
| VI | document discovery response | various | supervise interns re document preparation | 2.5 |
| | | | | |
| VI | Deposition -- Barnes | | outline goals, prepare list of topics, questions | 2.5 |
| VI | Richard DeMillo 2 | 548 74 | providing case materials, providing other experts' reports. | 2 |
| VI | Deposition -- Barnes | | refine questions and prep with Brown | 3 |
| VI | Deposition -- Barnes | | attend deposition, refine questions, supply documents, | 7 |
| VI | Spoliation Brief | 548 | editing brief, providing references, | 2 |
| VI | | | | |
| VI | Deposition--Kirk | | outline goals, prepare topic list, prepare questions | 2.5 |
| VI | Deposition--Kirk | | refine questions, provide gather supporting documents | 1.5 |
| VI | Deposition--Kirk | | refine questions, provide supporting documents | 1 |
| VI | Deposition--Kirk | | attend deposition, provide questions, review documents produced, fact check, assist Powers | 5 |
| VI | Subpeona Morgan County docs | Apr-19 | Draft subpeona, review with Brown | 2 |
| | | | | |
| VI | Deposition--Ledford | | outline goals. Prepare questions, topics | 3 |
| VI | Deposition--Ledford | | locate relevant documents | 3 |
| VI | Deposition--Ledford | | prep session with Powers | 3 |
| VI | Deposition--Ledford | | attend deposition and assist Powers | 6 |
| VI | | | | |
| VI | Deposition-Shamos | | Help prepare Powers for background technology | 5 |
| VI | Deposition-Shamos | | Prep with Powers for questions. Organize documents | 4 |
| VI | Deposition-Shamos | | gather technical materials for Powers | 2.5 |

Exhibit 9

| | | | | |
|---|---|---|---|---|
| VI | Deposition-Shamos | | Attend deposition, assist Powers with questions, followup, and organizing results for PI hearing | 5 |
| VI | | | | |
| VI | Deposition--Doran | | Prepare questions , supporting materials for Brown | 5 |
| VI | Subpeona- Bartow county doce | 13-Jun-19 | draft subpeona, review with Brown | 2 |
| VI | Deposition--Doran | | Attend deposition, assiist Brown, provide questions and following questions, review documents produced. | 4 |
| VI | Subpeona- Rockdale county docs | 5.22.19 | draft subpeona, review with Brown | 2 |
| II | Transcript 5.1.2018 | 185 | Review and annotate for attorneys | 2 |
| VI | V Martin | 7/19 PI hearing | preparing outlines, suggesting questions, considering cross examination, | 2 |
| VII | Monitoring 8.15.19 order | 10/1 -10/10 | recruting volunteers for monitoring pilot elections | 3 |
| VII | Monitoring 8.15.19 order | 11-Oct | organizing , training, documenting discovery needed for pilot | 3.5 |
| VII | monitoring 8.15.19 order | 14-Oct | obtain, organize feedback from observers | 2.5 |
| VII | monitoring 8.15.19 order | 14-Oct | draft memo re: observation to D counsel | 1.5 |

| | | | | |
|---|---|---|---|---|
| | **Review Transcripts** | | | |
| VI | voter affidavits | 412, 413 | organizing affidavits for inclusoins in brief | 2 |
| II | Transcripts 5.8. 2018 | 204 | Review and annotate for attorneys | 1.5 |
| III | Transcripts 2018 PI hearing | 307 | Review and annotate for attorneys | 4.5 |
| VI | Transcript 4.9.2019 conf | 363 | Review and annotate for attorneys, prepare notes for followup | 3 |
| VI | Transcripts | 391 | Review and annotate for attorneys, prepare notes for followup | 2.25 |
| VI | Transcript July PI hearing | 570,  571 | Review and annotate for attorneys | 4 |

Exhibit 9

**Hearing Prep**

| | | | |
|---|---|---|---|
| II | status conf 5/1/2018 | gather materials for attorneys, prep for stauts conf. | 3 |
| II | status conf 5/8/2018 | prepare materials for attorneys re preservation | 4 |
| VI | Direct--Barnes July 2019 | prepare questions and materials for attorneys | 3.5 |
| VI | Direct--Beaver July 2019 | prepare questions and materials for attorneys | 3 |
| VI | Barron- July 2019 | prepare questions and materials for attorneys | 4 |
| VI | Documents for 7.25.19 Hearing  various | Gathering,, supervise interns for printing, organizing | 4.5 |
| VI | Documents for 7.25.19 Hearing  various | reviewing, supplementing, reviewing with attorneys | 3 |
| VI | GEMS database controversy | details in sanctions motion. Developing facts, investigating public databases, recruting experts, training experts, arranging logistics, attending conf calls with attorneys and court, assisting in declaratoins | 68.5 |

**Preservation issues**

| | | | |
|---|---|---|---|
| VI | preservation FBI image | consulting with Ichter, preparing background materials | 2.5 |
| VI | preservation FBI image | advising data recovery experts on contents, procedures logistics | 6 |
| VI | preservation FBI image | discussions with foresnsics experts on recovery | 5 |

Total hours   626.65

Exhibit 9

$200

**Total fees**                                                      125330

E
X
H
I
B
I
T

10

Exhibit 10

| INVOICE FOR TESTIMONY 2018-2019 |
|---|

**Date: 8/1/2019**

**Amber McReynolds**
**1000 Speer Blvd Apt 1311, Denver, CO 80204**

| | | |
|---|---|---|
| 01 – Appear in Court | 07 – General Practice | 14 – Prepare Pleadings |
| 02 – Appear Before Agency | 08 – Interviewing | 15 – Pretrial Conference |
| 03 – Conference | 09 – Investigation | 16 – Research |
| 04 – Correspondence | 10 – Prepare for Court | 17 – Review |
| 05 – Discovery | 11 – Prepare for Meeting | 18 – Telephone Conference |
| 06 – Drafting | 12 – Prepare for Hearing | 19 – Travel Time |
| | 13 – Prepare Documents | |

| DATE | HOURS | CODE | DESCRIPTION |
|---|---|---|---|
| 8/17/18 | 1 | 18 | Phone call to discuss experience as an expert, discuss questions |
| 8/17/18 | 1 | 17 | Review Documents provided |
| 8/18/18 | 1 | 17 | Review Documents |
| 8/18/18 | 2 | 18 | Phone calls to other officials with questions about systems |
| 8/18/18 | 2 | 16 | Research |
| 8/18/18 | 3 | 06 | Drafting Affidavit |
| 8/19/18 | 2 | 06 | Drafting Affidavit |
| 8/20/18 | .5 | 17 | Review emails and correspondence |
| 9/16/18 | 1.5 | 17 | Review hearing docs |
| 10/18/18 | 2 | 17 | Reviewing Georgia envelopes, mail ballot packet info, screenshots |
| 10/18/18 | 3 | 06 | Drafting Affidavit |
| 10/19/18 | 2 | 06 | Editing and Finalizing Affidavit |
| 10/22/18 | .5 | 13 | Reviewing data for rejection rates in other counties |
| 10/29/18 | 2.5 | 06 | Affidavit drafting and submittal |
| 4/20/19 | 2.5 | 17 | Review documents and research and data on Georgia |
| 5/29/19 | 1 | 17 | Review stats from MIT |
| 6/14/19 | 1.5 | 06 | Prepare affidavit |
| 6/15/19 | 2.5 | 06 | Drafting Affidavit |
| 6/16/19 | 2.5 | 06 | Drafting and finalizing affidavit |
| 6/17/19 | 2 | 06 | Finalize and submit affidavit |
| 7/22/19 | 3 | 12 | Prepare for hearing and testimony |
| 7/24/19 | 8 | 19 | Travel to and from Georgia (reduced 50% from 16 hrs) |
| 7/25/19 | 5 | 01 | Testimony and time in court |

| | |
|---|---|
| **TOTAL HOURS:** | 52 |
| **TOTAL @ $250/HR:** | 13,000 |
| **Expenses:** | |
| TRAVEL (hotel & flight) | 703.00 |
| **AMOUNT DUE:** | 13,703 |

EXHIBIT

11

Exhbit 11

**Total paid by CGG= $75,018**



**INVOICE**

Invoice # 355
Date: 07/06/2017
Due On: 08/05/2017

## Holcomb + Ward, LLP

3399 Peachtree Rd NE, Suite 400
Atlanta, GA 30326
Phone: (404) 601-2803
www.holcombward.com

Coalition for Good Governance

## 00111-Coalition for Good Governance.Election

## Election

| Attorney | Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|---|
| ML | Service | 06/25/2017 | Call with M. Marks, D. Curling, and D. Price regarding case. | 1.17 | $215.00 | $251.55 |
| ML | Service | 06/26/2017 | Research in preparation for meeting with M. Marks and D. Price (topics include filing of supplemental filing to original case, Article I Elections Clause, procedural hurdles, etc.). | 4.84 | $215.00 | $1,040.60 |
| SH | Service | 06/27/2017 | Meeting with M. Marks and D. Curling. Follow-up research and attention to the case. | 8.00 | $325.00 | $2,600.00 |
| ML | Service | 06/27/2017 | Meet with M. Marks and D. Price regarding complaint; begin writing complaint. | 7.25 | $215.00 | $1,558.75 |
| ML | Service | 06/28/2017 | Research and write complaint. | 8.00 | $215.00 | $1,720.00 |
| ML | Service | 06/29/2017 | Research and write complaint. | 8.00 | $215.00 | $1,720.00 |
| AW | Service | 06/29/2017 | Review case documents and get familiar with case, begin case research. | 2.10 | $225.00 | $472.50 |
| AW | Service | 06/29/2017 | Draft, research, and revise introduction to case. | 6.40 | $225.00 | $1,440.00 |
| SH | Service | 06/30/2017 | Drafting and revising the pleadings. Calls with M. Marks. | 8.00 | $325.00 | $2,600.00 |
| ML | Service | 06/30/2017 | Write complaint; submit complaint at 11:59PM. | 13.00 | $215.00 | $2,795.00 |
| BW | Service | 06/30/2017 | Review and revise complaint; coordinate with S. Holcomb regarding same. | 1.20 | $325.00 | $390.00 |



PAID ✓ 1096  8/5/17
Rocky Mtn Fdtn.

1/16

Exhbit 11

Invoice # 355 - 07/06/2017

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| Scott Holcomb | Partner | 16.0 | $325.00 | $5,200.00 |
| Marvin Lim | Associate | 42.26 | $215.00 | $9,085.90 |
| Bryan Ward | Partner | 1.2 | $325.00 | $390.00 |
| Aaron Wright | Associate | 8.5 | $225.00 | $1,912.50 |
| | | | Subtotal | $16,588.40 |
| | | | Invoice Discount | $7,588.40 |
| | | | Total | $9,000.00 |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 355 | 08/05/2017 | $9,000.00 | $0.00 | $9,000.00 |
| | | | Outstanding Balance | $9,000.00 |
| | | | Total Amount Outstanding | $9,000.00 |

Thank you for you business. Please make all amounts payable to: Holcomb + Ward, LLP and mail payment to:
**Holcomb + Ward, LLP, 3399 Peachtree Road NE, Suite 400, Atlanta, GA, 30326.**

Please pay within 30 days.

2/16

Invoice # 390 · 09/05/2017
Exhibit 11

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| Scott Holcomb | Partner | 8.0 | $325.00 | $2,600.00 |
| Marvin Lim | Associate | 46.62 | $215.00 | $10,023.30 |
| Bryan Ward | Partner | 112.94 | $325.00 | $36,705.50 |
| Aaron Wright | Associate | 17.33 | $225.00 | $3,899.25 |

|  |  | Subtotal | $53,228.05 |
|---|---|---|---|
|  |  | Invoice Discount | 30.0% |

*Discount per call with Donna Curling*

|  |  | Total | $37,259.63 |
|---|---|---|---|

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 390 | 10/05/2017 | $37,259.63 | $0.00 | $37,259.63 |
|  |  |  | Outstanding Balance | $37,259.63 |
|  |  |  | Total Amount Outstanding | $37,259.63 |

*40,018.35*

Thank you for you business. Please make all amounts payable to: Holcomb + Ward, LLP and mail payment to:
**Holcomb + Ward, LLP, 3399 Peachtree Road NE, Suite 400, Atlanta, GA, 30326.**

Please pay within 30 days.

*PAID CK# 1097
9/8/17
Rocky Mtn. Foundation LLC*

3/16

Exhbit 11



# INVOICE

Invoice # 390
Date: 09/05/2017
Due On: 10/05/2017

## Holcomb + Ward, LLP

3399 Peachtree Rd NE, Suite 400
Atlanta, GA 30326
United States
Phone: (404) 601-2803
www.holcombward.com

Coalition for Good Governance

## 00111-Coalition for Good Governance.Election

## Election

| Attorney | Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|---|
| BW | Service | 07/02/2017 | Coordinate with S. Holcomb regarding complaint | 0.30 | $325.00 | $97.50 |
| AW | Service | 07/02/2017 | Revise and edit complaint, correct exhibits, compile and combine various redline versions of the complaint. | 9.40 | $225.00 | $2,115.00 |
| BW | Service | 07/03/2017 | Read complaint and materials in case; coordinate with S. Holcomb regarding filing of same. | 0.90 | $325.00 | $292.50 |
| AW | Service | 07/03/2017 | Revise and update complaint, assist with filing complaint. | 5.40 | $225.00 | $1,215.00 |
| SH | Service | 07/03/2017 | Revise and re-file complaint. Multiple calls and emails with clients. | 8.00 | $325.00 | $2,600.00 |
| ML | Service | 07/03/2017 | Revised exhibits and Complaint, for refiling. | 4.17 | $215.00 | $896.55 |
| BW | Service | 07/04/2017 | Read complaint, materials in case, and articles regarding matter; coordinate with S. Holcomb regarding press coverage of same. | 1.19 | $325.00 | $386.75 |
| BW | Service | 07/05/2017 | Review materials in case; research legal issues for same; coordinate with others regarding service of complaint; coordinate with S. Holcomb regarding strategy for matter; speak with M. Marks regarding press conference. | 4.79 | $325.00 | $1,556.75 |

4/16

Invoice # 390 09/05/2017
Exhibit 11

| AW | Service | 07/05/2017 | Research O.C.G.A. § 21-2-529 | 0.16 | $225.00 | $36.00 |
|---|---|---|---|---|---|---|
| BW | Service | 07/06/2017 | Research issues for service and potential waiver of service issues for individual defendants and relationship to discovery; prepare for and attend press conference; coordinate with others regarding service issues, notice of related case, and litigation hold. | 6.09 | $325.00 | $1,979.25 |
| BW | Service | 07/07/2017 | Compose draft document preservation demand; coordinate with M. Marks and others regarding same; coordinate with others regarding notice of related case; attend conference call with M. Marks and others regarding strategy on document preservation, potential amendment to complaint, and handling of related case; review and revise notice of related case; coordinate with M. Hickman regarding service issues. | 2.40 | $325.00 | $780.00 |
| BW | Service | 07/10/2017 | Coordinate with others regarding issues on discovery, potential amendment to add mandamus claims, and strategy for developing factual story; compose and send evidence preservation email to counsel. | 3.69 | $325.00 | $1,199.25 |
| BW | Service | 07/11/2017 | Research legal issues involved with filing and amending complaint; coordinate with M. Lim regarding same; coordinate with M. Marks regarding meeting with plaintiffs; read materials for case. | 1.99 | $325.00 | $646.75 |
| ML | Service | 07/11/2017 | Analyzed potential edits and additions for possible Amended Complaint. | 1.75 | $215.00 | $376.25 |
| BW | Service | 07/12/2017 | Coordinate with others regarding requests for information, interrogatories, and requests for admission; coordinate drafting of amended complaint; coordinate with others on service of same; speak with M. Marks regarding amended complaint; speak with plaintiffs regarding status and strategy for case. | 3.95 | $325.00 | $1,283.75 |
| AW | Service | 07/12/2017 | Research GA law and statutory definition of the voting system. | 0.80 | $225.00 | $180.00 |
| ML | Service | 07/12/2017 | Analyzed potential edits and additions for possible Amended Complaint. | 2.92 | $215.00 | $627.80 |
| BW | Service | 07/13/2017 | Coordinate drafting of amended complaint and legal issues related to same; speak with M. Marks regarding amended complaint. | 2.57 | $325.00 | $835.25 |

5/16

| ML | Service | 07/13/2017 | Revised Amended Complaint. | 5.42 | $215.00 | $1,165.30 |
|---|---|---|---|---|---|---|
| BW | Service | 07/14/2017 | Coordinate with M. Marks and others regarding amended complaint and discovery issues; research items for same. | 1.04 | $325.00 | $338.00 |
| ML | Service | 07/14/2017 | Revised Amended Complaint. | 4.17 | $215.00 | $896.55 |
| BW | Service | 07/15/2017 | Coordinate with M. Marks and others regarding amended complaint; research items for same. | 0.69 | $325.00 | $224.25 |
| ML | Service | 07/15/2017 | Revised Amended Complaint. | 1.25 | $215.00 | $268.75 |
| AW | Service | 07/17/2017 | | 1.57 | $225.00 | $353.25 |
| BW | Service | 07/17/2017 | Coordinate with others regarding notice of election contest; speak with clerk of court regarding same; coordinate with others regarding amended complaint, revisions to same, and strategy and defenses for potential claims; correspond with others regarding affidavits for amended complaint, timing issues, and strategy for matter. | 4.79 | $325.00 | $1,556.75 |
| BW | Service | 07/18/2017 | Coordinate with others regarding amended complaint and revise same; review materials for same; coordinate on service issues. | 5.35 | $325.00 | $1,738.75 |
| ML | Service | 07/18/2017 | Planned with legal team in preparation for call with Marilyn Marks and Donna Curling; conducted call with Marilyn Marks and Donna Curling. | 4.50 | $215.00 | $967.50 |
| BW | Service | 07/19/2017 | Coordinate with others regarding amended complaint and revise same; review materials for same; coordinate on service issues. | 3.57 | $325.00 | $1,160.25 |
| ML | Service | 07/19/2017 | Analyzed Section 1983 claim and standing; created chart of counts, plaintiffs, and defendants; revised Amended Complaint. | 2.50 | $215.00 | $537.50 |
| BW | Service | 07/20/2017 | Coordinate with others regarding amended complaint and revise same; review materials for same; coordinate on service issues and various legal issues. | 4.95 | $325.00 | $1,608.75 |
| ML | Service | 07/20/2017 | Revised Amended Complaint. | 7.25 | $215.00 | $1,558.75 |
| BW | Service | 07/21/2017 | Coordinate with others regarding legal issues in matter, amended complaint, and strategy; revise draft amended complaint. | 4.82 | $325.00 | $1,566.50 |
| ML | Service | 07/21/2017 | Revised Amended Complaint. | 5.00 | $215.00 | $1,075.00 |

| BW | Service | 07/22/2017 | Coordinate with others regarding legal issues in matter, amended complaint, and strategy; revise draft amended complaint. | 6.97 | $325.00 | $2,265.25 |
|----|---------|------------|---|------|---------|-----------|
| BW | Service | 07/23/2017 | Coordinate with others regarding legal issues in matter, amended complaint, and strategy; revise draft amended complaint. | 3.72 | $325.00 | $1,209.00 |
| BW | Service | 07/24/2017 | Coordinate with others regarding legal issues in matter, amended complaint, and strategy; revise draft amended complaint. | 9.07 | $325.00 | $2,947.75 |
| ML | Service | 07/24/2017 | Revised Amended Complaint to add attorneys fees and damages. | 1.00 | $215.00 | $215.00 |
| BW | Service | 07/25/2017 | Revise draft amended complaint and coordinate with others regarding same and exhibits for same; coordinate affidavits for same; meet with clerk of court regarding service of complaint; draft special process for same. | 6.50 | $325.00 | $2,112.50 |
| ML | Service | 07/25/2017 | Revised Amended Complaint. | 0.34 | $215.00 | $73.10 |
| BW | Service | 07/26/2017 | Revise draft amended complaint and coordinate with others regarding same and exhibits for same; meet with clerk of court regarding service of complaint; revise and file special process for same. | 8.20 | $325.00 | $2,665.00 |
| ML | Service | 07/26/2017 | Reviewed and revised Amended Complaint. | 2.09 | $215.00 | $449.35 |
| BW | Service | 07/27/2017 | Revise draft amended complaint and coordinate with others regarding same and exhibits for same; deliver and file special process in DeKalb and Cobb counties (2:57 hours -- DEDUCTED FROM BILL). | 4.95 | $325.00 | $1,608.75 |
| BW | Service | 07/28/2017 | Review and revise amended complaint; research issues for same; coordinate with others regarding same. | 9.97 | $325.00 | $3,240.25 |
| ML | Service | 07/28/2017 | Revised Amended Complaint for Optical Scanning claims; created revised comparison chart of claims, plaintiffs, and defendants. | 3.92 | $215.00 | $842.80 |
| BW | Service | 07/29/2017 | Review and revise amended complaint; coordinate with others regarding same. | 7.04 | $325.00 | $2,288.00 |
| BW | Service | 07/31/2017 | Review and revise amended complaint; correspond with others regarding legal and factual issues for same. | 3.44 | $325.00 | $1,118.00 |
| ML | Service | 07/31/2017 | Analyzed potential Equal Protection argument. | 0.34 | $215.00 | $73.10 |

Exhbit 11



# Holcomb + Ward, LLP

**INVOICE**

Invoice # 383
Date: 08/31/2017
Due On: 09/30/2017

3399 Peachtree Rd NE, Suite 400
Atlanta, GA 30326
United States
Phone: (404) 601-2803
www.holcombward.com

Coalition for Good Governance

## 00117-Coalition for Good Governance.Expenses

## Expenses

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Expense | 07/03/2017 | E112 Court fees: Court filing fee. | 1.00 | $510.06 | $510.06 |
| Expense | 07/05/2017 | E107 Delivery services/messengers: FedEx to Secretary Kemp. | 1.00 | $22.19 | $22.19 |
| Expense | 07/06/2017 | E101 Copying: Staples receipt for service copies. | 1.00 | $275.77 | $275.77 |
| Expense | 07/07/2017 | E108 Postage: Overnight shipping of complaints to Muscogee and Fulton Sheriffs' office for service of summon and complaint | 1.00 | $83.78 | $83.78 |
| Expense | 07/07/2017 | E124 Other: Money orders for service. | 1.00 | $101.78 | $101.78 |
| Expense | 07/26/2017 | E101 Copying: Kwik Kopy Business Center printing fees for complaints to serve. | 1.00 | $131.39 | $131.39 |
| Expense | 07/26/2017 | E112 Court fees: Fulton Clerk of Superior Court Service Fees. | 1.00 | $150.00 | $150.00 |
| Expense | 07/27/2017 | E112 Court fees: DeKalb County Service Fees. | 1.00 | $100.00 | $100.00 |
| Expense | 07/27/2017 | E112 Court fees: Cobb County Service Fees. | 1.00 | $50.00 | $50.00 |
| Expense | 08/03/2017 | E124 Other: Money orders for service. | 1.00 | $101.78 | $101.78 |
| Expense | 08/04/2017 | E101 Copying: Kwick Kopy Business Center printing expenses for service copies of motion for leave to amend and amended complaint. | 1.00 | $814.54 | $814.54 |
| Expense | 08/04/2017 | E112 Court fees: Filing fees. | 1.00 | $15.49 | $15.49 |

8/16

Invoice # 383 08/31/2017
Exhbit 11

| | | | | | | |
|---|---|---|---|---|---|---|
| Expense | 08/04/2017 | E108 Postage: Postage for Motion for Leave to Amend. | 1.00 | $273.79 | $273.79 |
| Expense | 08/08/2017 | E101 Copying: Printing for service copies of motion for leave to serve by process server. | 1.00 | $26.10 | $26.10 |
| Expense | 08/08/2017 | E124 Other: Money order for service. | 1.00 | $50.89 | $50.89 |
| Expense | 08/12/2017 | E108 Postage: Postage for service copies of expedited motion for early and expedited discovery. | 1.00 | $22.96 | $22.96 |
| Expense | 08/12/2017 | E101 Copying: Service copies of expedited motion for early and expedited discovery at $0.05 per page. | 1.00 | $28.20 | $28.20 |

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| | | | Total | $2,758.72 |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 383 | 09/30/2017 | $2,758.72 | $0.00 | $2,758.72 |
| | | | Outstanding Balance | $2,758.72 |
| | | | Total Amount Outstanding | $2,758.72 |

Thank you for you business. Please make all amounts payable to: Holcomb + Ward, LLP and mail payment to: **Holcomb + Ward, LLP, 3399 Peachtree Road NE, Suite 400, Atlanta, GA, 30326.**

Please pay within 30 days.

9/16

Exhbit 11



# INVOICE

Invoice # 399
Date: 09/07/2017
Due On: 10/07/2017

## Holcomb + Ward, LLP

3399 Peachtree Rd NE, Suite 400
Atlanta, GA 30326
United States
Phone: (404) 601-2803
www.holcombward.com

Coalition for Good Governance

## 00111-Coalition for Good Governance.Election

## Election

| Attorney | Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|---|
| BW | Service | 08/01/2017 | Revise draft amended complaint; correspond with others regarding same; research service issues and coordinate with others regarding same; revise and research motion for leave to amend. | 6.74 | $325.00 | $2,190.50 |
| ML | Service | 08/01/2017 | Revised Amended Complaint to add new count for mandamus towards Board/County Defendants. | 1.00 | $215.00 | $215.00 |
| AW | Service | 08/01/2017 | Edit and revise Amended Complaint. | 1.40 | $225.00 | $315.00 |
| BW | Service | 08/02/2017 | Revise draft amended complaint; correspond with others regarding same and research issues for same; coordinate with others regarding service issues; revise motion for leave to amend. | 12.02 | $325.00 | $3,906.50 |
| AW | Service | 08/02/2017 | Revise and edit amended complaint. | 10.68 | $225.00 | $2,403.00 |
| ML | Service | 08/02/2017 | Filed Proof of Service. | 0.17 | $215.00 | $36.55 |
| AW | Service | 08/03/2017 | Revise and edit amended complaint. Conference call re: same. | 6.82 | $225.00 | $1,534.50 |
| SH | Service | 08/03/2017 | Read and revised amended complaint. | 2.00 | $325.00 | $650.00 |
| BW | Service | 08/03/2017 | Revise draft amended complaint; correspond with others regarding same and research issues for same; coordinate with | 15.14 | $325.00 | $4,920.50 |

10/16

Exhbit 11

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | others regarding service issues; revise motion for leave to amend. | | | |
| SH | Service | 08/04/2017 | Filed Amended complaint. | 0.20 | $325.00 | $65.00 |
| BW | Service | 08/04/2017 | Revise draft amended complaint; correspond with others regarding same; coordinate with others regarding service issues; revise motion for leave to amend; coordinate filing and service of same; correspond with defense counsel regarding motion for leave to file amended complaint. | 7.49 | $325.00 | $2,434.25 |
| BW | Service | 08/05/2017 | Correspond with others regarding service of process issues and status. | 0.65 | $325.00 | $211.25 |
| AW | Service | 08/06/2017 | Work on request for discovery. | 1.34 | $225.00 | $301.50 |
| BW | Service | 08/06/2017 | Correspond and speak with others regarding service of process issues and status. | 3.34 | $325.00 | $1,085.50 |
| BW | Service | 08/07/2017 | Coordinate with others on service of process; compose memorandum on service issues and timeline; speak with staff attorney regarding proposed order; coordinate with M. Lim and others regarding same; revise and file same; revise and file motion for leave to serve defendants through process server; coordinate with others regarding same; coordinate with others regarding discovery issues. | 9.70 | $325.00 | $3,152.50 |
| ML | Service | 08/07/2017 | File additional proofs of service; drafted proposed Order Granting Motion for Leave to Amend; draft Motion for Leave to Accept Substitute Service. | 3.17 | $215.00 | $681.55 |
| BW | Service | 08/08/2017 | Coordinate with others on service of motion for leave to serve by certified process server; coordinate with M. Hickman regarding service on defendants; attend conference with M. Marks, D. Curling and S. Holcomb regarding strategy for matter; review notice of removal of action; research same; attend conference call regarding strategy for same. | 6.20 | $325.00 | $2,015.00 |
| AW | Service | 08/08/2017 | Call with clients and begin work on discovery issues. | 4.60 | $225.00 | $1,035.00 |
| AW | Service | 08/09/2017 | Draft motion for expedited discovery. | 2.34 | $225.00 | $526.50 |
| BW | Service | 08/09/2017 | Research various issues related to removal to federal court and potential motions and remand of claims; coordinate with others | 6.17 | $325.00 | $2,005.25 |

11/16

Exhbit 11

Invoice # 399 - 09/07/2017

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | regarding same and service issues; speak with M. Marks and D. Curling regarding same; correspond with plaintiffs regarding status. | | | |
| AW | Service | 08/10/2017 | Resolve issues with draft motion and work through potential discovery issues. | 5.85 | $225.00 | $1,316.25 |
| BW | Service | 08/10/2017 | Research and coordinate with others on expedited motion for expedited discovery; coordinate with others regarding discovery wanted, procedures in federal court, election contest procedures potentially in federal court, potential preliminary injunction, and strategy regarding same. | 4.14 | $325.00 | $1,345.50 |
| ML | Service | 08/10/2017 | Draft memorandum of law in support of Motion for Leave to Amend. | 2.75 | $215.00 | $591.25 |
| BW | Service | 08/11/2017 | Review and revise expedited motion for expedited discovery to support election contest and motion for preliminary injunction and supporting memorandum; coordinate with others regarding same; research same. | 9.45 | $325.00 | $3,071.25 |
| AW | Service | 08/11/2017 | Finalize draft discovery motion. | 2.32 | $225.00 | $522.00 |
| ML | Service | 08/11/2017 | Continue drafting Memorandum of Law in support of Motion for Leave to Amend. | 3.00 | $215.00 | $645.00 |
| BW | Service | 08/12/2017 | Review and revise expedited motion for expedited discovery to support election contest and motion for preliminary injunction and supporting memorandum; revise discovery requests; coordinate with others regarding same; file and serve same and coordinate on issues regarding same and notice of appearance of S. Holcomb (1:41 hours - NOT BILLED); coordinate with others regarding motion for preliminary injunction. | 5.07 | $325.00 | $1,647.75 |
| AW | Service | 08/12/2017 | Rework motion on discovery and review sample PI motion and cases cited in it. | 2.67 | $225.00 | $600.75 |
| BW | Service | 08/13/2017 | Coordinate with M. Marks regarding motion for expedited discovery and service of same; coordinate with M. Hickman regarding various service and filing issues; research and compose portions of motion for preliminary injunction; correspond with M. Hickman on service issues. | 1.99 | $325.00 | $646.75 |
| BW | Service | 08/14/2017 | Research and compose portions of motion for preliminary injunction; correspond with M. Hickman on service issues; coordinate | 3.69 | $325.00 | $1,199.25 |

12/16

Exhbit 11

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | with M. Lim regarding preliminary injunction issues and motion for leave to amend complaint; review order on expedited motion for expedited discovery; correspond with various defense counsel regarding same. | | | |
| BW | Service | 08/15/2017 | Revise and file memorandum in support of motion for leave to amend; coordinate with others regarding same; research and compose portions of motion for preliminary injunction; correspond with M. Hickman on service issues; coordinate with M. Lim regarding preliminary injunction issues and motion for leave to amend complaint; correspond with various defense counsel regarding discovery and service issues; speak and correspond with counsel for state defendants regarding motion to dismiss. | 7.94 | $325.00 | $2,580.50 |
| ML | Service | 08/15/2017 | Finaliz Memorandum of Law in support of Motion for Leave to Amend; finalized proposed Order Granting Motion for Leave to Amend; drafted Certificate of Service. | 3.00 | $215.00 | $645.00 |
| BW | Service | 08/16/2017 | Review state defendants' motion to dismiss and compose analysis of same; correspond with others regarding same; prepare for and attend conference call with defense counsel on discovery issues and motion for leave to amend; coordinate with others regarding drafting of motion for preliminary injunction; coordinate with others on service issues; prepare outline of motion for preliminary injunction; correspond with M. Marks on various legal issues; revise notice to court regarding parties inability to agree on plaintiffs' motion for expedited discovery; correspond with defense counsel and M. Marks regarding same. | 8.87 | $325.00 | $2,882.75 |
| ML | Service | 08/16/2017 | Research on sovereign immunity after removal to federal court. | 0.75 | $215.00 | $161.25 |
| AW | Service | 08/16/2017 | Call to confer on discovery and notes on same. | 0.50 | $225.00 | $112.50 |
| BW | Service | 08/17/2017 | Speak with M. Marks on various issues in case; correspond with various defense counsel regarding service issues and preservation of evidence; revise waivers of service for J. Brooks and M. Wingate and distribute same to defense counsel; coordinate with others regarding drafting of motion for preliminary injunction and compose outline for same; coordinate with | 7.10 | $325.00 | $2,307.50 |

Exhbit 11

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  | others on service issues and revise chart on status of same; revise notice to court regarding parties inability to agree on plaintiffs' motion for expedited discovery; correspond with defense counsel and M. Marks regarding same. |  |  |  |
| ML | Service | 08/17/2017 | Research and begin to draft Motion for Preliminary Injunction (law section). | 8.00 | $215.00 | $1,720.00 |
| BW | Service | 08/18/2017 | Compose and forward outline on motion for preliminary injunction; coordinate with others regarding research and drafting of same; review and forward order accepting amended complaint and addressing other issues; coordinate with others regarding documents and filings directed by the court; coordinate with internal and outside counsel regarding service issues; revise outline for motion for preliminary injunction; speak with M. Marks regarding same and fact issues in case. | 7.75 | $325.00 | $2,518.75 |
| SH | Service | 08/18/2017 | File Notice to the Cour; File Proof of Service for Cobb; correspond with CGG. | 1.00 | $325.00 | $325.00 |
| ML | Service | 08/18/2017 | Continue to draft Motion for Preliminary Injunction. | 6.00 | $215.00 | $1,290.00 |
| AW | Service | 08/18/2017 | Draft one page summary of related case, per court order. | 0.75 | $225.00 | $168.75 |
| AW | Service | 08/18/2017 | Begin drafting notice of appreance and template for case. | 0.75 | $225.00 | $168.75 |
| SH | Service | 08/19/2017 | Research and answer question from CGG; call with CGG re preliminary injunction. | 1.00 | $325.00 | $325.00 |
| SH | Service | 08/20/2017 | Reply to texts from M. Marks; reply to questions from M. Marks re removal of election contest. | 0.17 | $325.00 | $55.25 |
| ML | Service | 08/20/2017 | Continue to draft Motion for Preliminary Injunction. | 2.00 | $215.00 | $430.00 |
| AW | Service | 08/20/2017 | Finalize template and notice of appearance. | 0.90 | $225.00 | $202.50 |
| AW | Service | 08/21/2017 | Research PI; work on draft PI. | 4.93 | $225.00 | $1,109.25 |
| SH | Service | 08/21/2017 | Update service chart; file affidavits with the court; coordinate with counsel re waivers of service; receive and read response to motion for expedited discovery; emails with CGG and D. Curling. | 0.50 | $325.00 | $162.50 |
| AW | Service | 08/22/2017 | Attend call with court on case and compose notes on same; outline PI in response to call; generate timeline based on call. | 2.13 | $225.00 | $479.25 |

Exhbit 11

| SH | Service | 08/22/2017 | Attention to the case; service, motion for preliminary injunction; transition. | 3.00 | $325.00 | $975.00 |
|----|---------|------------|---------------------------------------------------------------------------------|------|---------|---------|
| BW | Service | 08/22/2017 | Prepare for and attend conference call with judge and defense counsel on scheduling, discovery, and other issues; attend conference calls before and after same regarding strategy; speak and correspond with counsel for K. Handel regarding service and response to complaint; revise and send service chart to court; coordinate with Steptoe attorneys regarding matter. | 7.10 | $325.00 | $2,307.50 |
| BW | Service | 08/23/2017 | Revise motion for preliminary injunction and forward same to Steptoe counsel and M. Marks; coordinate with M. Hickman on service issues and updated service chart; coordinate with others regarding pro hac vice applications; correspond with Fulton County counsel regarding discovery issues; compile and send list of pending items for Steptoe counsel; coordinate transcript of hearing. | 3.22 | $325.00 | $1,046.50 |
| BW | Service | 08/24/2017 | Upload files to Steptoe and correspond with Steptoe counsel regarding same; forward minute entry and other pleadings; correspond with counsel for K. Handel regarding acknowledgement of service. | 0.82 | $325.00 | $266.50 |
| BW | Service | 08/25/2017 | Correspond with defense counsel regarding discovery issues; forward filings in matter. | 0.20 | $325.00 | $65.00 |
| BW | Service | 08/28/2017 | Forward materials to Steptoe counsel; correspond with others regarding meeting with Fulton County counsel on discovery issues; speak with counsel for K. Handel regarding acknowledgement of service; correspond with Fulton County attorneys regarding meeting to discuss DRE machines. | 0.72 | $325.00 | $234.00 |
| BW | Service | 08/29/2017 | Correspond with Fulton County defendants regarding DRE machines; leave voicemail and correspond with counsel for K. Handel regarding service in matter; correspond with others regarding potential counsel for L. Lamb; review and forward pleadings. | 1.09 | $325.00 | $354.25 |
| BW | Service | 08/30/2017 | Review and forward pleadings; correspond with counsel for K. Handel regarding service; coordinate with counsel regarding discovery of DRE machines. | 0.84 | $325.00 | $273.00 |
| BW | Service | 08/31/2017 | Coordinate with others in preparation for conference call with court on motion to change scheduling order; correspond with | 3.52 | $325.00 | $1,144.00 |

Exhbit 11
Invoice # 399 - 09/07/2017

court regarding same; attend same; revise, finalize and file letter to court regarding bases for motion for preliminary injunction; coordinate with attorneys regarding motion for leave to file amended complaint; correspond with counsel for K. Handel regarding service of process.

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| Scott Holcomb | Partner | 7.87 | $325.00 | $2,557.75 |
| Marvin Lim | Associate | 29.84 | $215.00 | $6,415.60 |
| Bryan Ward | Partner | 140.96 | $325.00 | $45,812.00 |
| Aaron Wright | Associate | 47.98 | $225.00 | $10,795.50 |
| | | | **Total** | **$65,580.85** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 390 | 10/05/2017 | $37,259.63 | $0.00 | $37,259.63 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 399 | 10/07/2017 | $65,580.85 | $0.00 | $65,580.85 |
| | | | **Outstanding Balance** | **$102,840.48** |
| | | | **Total Amount Outstanding** | **$102,840.48** |

Thank you for you business. Please make all amounts payable to: Holcomb + Ward, LLP and mail payment to: **Holcomb + Ward, LLP, 3399 Peachtree Road NE, Suite 400, Atlanta, GA, 30326.**

Please pay within 30 days.