## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, ET AL.,
Plaintiffs,

v.

BRAD RAFFENSPERGER, ET AL.,
Defendants.

Civil Action No. 1:17-CV-2989-AT

## COALITION PLAINTIFFS' RESPONSE TO THE STATE DEFENDANTS' MOTION TO DISMISS THE FIRST SUPPLEMENTAL COMPLAINT

Coalition Plaintiffs[1] respond as follows to the joint motion by the State Defendants[2] (Doc. 645, the "Motion") to dismiss the Coalition Plaintiffs' First Supplemental Complaint (Doc. 628, the "FSC").

## INTRODUCTION

This Court held on September 17, 2018, that the U.S. Constitution requires "transparent, fair, accurate, and verifiable election processes that guarantee each citizen's fundamental right to cast an accountable vote." *Curling v. Kemp*, 334 F. Supp. 3d 1303, *aff'd in part, appeal dismissed in part*, No. 18-13951, 2019 WL

---

[1] Plaintiffs Coalition for Good Governance, Laura Digges, William Digges, Ricardo Davis, and Megan Missett (together, the "Coalition Plaintiffs").
[2] Defendants Brad Raffensperger, David J. Worley, Rebecca N. Sullivan, Anh Le, and Seth Harp (together, the "State Defendants" or "the State").

480034 (11th Cir. Feb. 7, 2019) (Doc. 309, at 46.)[3]  The State of Georgia believes it can call its selection of voting systems a "policy choice," a "policy position," or a "policy decision" and thereby excuse itself from having to respect "each citizen's fundamental right to cast an accountable vote."  (Doc. 645-1, at 1, 2, 3, 15, 19.)  The State is wrong.  "Policies" that violate constitutional rights are illegal.

## BACKGROUND

The only facts that matter for deciding this Motion are the ones alleged by the Coalition Plaintiffs in their FSC.  Those facts are simple and straightforward.

On April 2, 2019, Governor Kemp signed 2019 HB 316, or Act 24 ("HB 316") into law. HB 316 mandates the implementation of a new uniform statewide BMD voting system to be used in all federal, state, and county elections in Georgia as the voting method "for voting at the polls and for absentee ballots cast in person." O.C.G.A. § 21–2–300(a)(2); *see also* O.C.G.A. § 21–2–383(c).  The State Defendants and the Fulton County Defendants intend to enforce O.C.G.A. § 21–2–300(a)(2) and  § 21–2–383(c), which will require all in-person voters to vote using the particular certified voting system chosen by the Secretary to replace the

---

[3] Pin citations to particular pages of PACER-docketed documents refer to the blue PACER pagination, not the docketed document's internal page numbering.

unconstitutional DRE devices, hereinafter referred to as the "Dominion BMD System."

The FSC (Doc. 628) alleges facts that, taken as true, show why requiring Plaintiffs to vote using the Dominion BMD System is unconstitutional. The system fails to satisfy <u>any</u> of the requirements that this Court has held to be essential to a constitutional, accountable voting process. In particular, the FSC alleges facts that, taken as true, show the Dominion BMD System:

- does not meet Georgia's legal requirements for a lawful voting system;

- shares the same kinds of security flaws as Georgia's existing unconstitutional DRE voting system;

- has not been properly tested by the Secretary;

- was improperly certified and thus is illegal to use in Georgia;

- even if operated as designed, fails to produce verifiable, accountable, and auditable vote totals and election results;

- if used to conduct Georgia elections, will severely and unequally burden the constitutional rights of Georgia voters;

- if used to conduct Georgia elections, will deprive Georgia voters of their state constitutional right to a secret ballot; and

- cannot, in any event, practically be implemented within the time frame required to replace the constitutionally deficient DRE voting system, which this Court has ordered the State to discontinue using after the end of 2019.

(Doc. 628, at 3, ¶ 6.)

The Coalition Plaintiffs seek prospective injunctive relief against the State Defendants in their official capacities through the FSC (Doc 628) and the pending motion for preliminary injunction (Doc. 640).  The requested relief includes an injunction against the imminent violations of the Coalition Plaintiffs' rights that will be caused by the Defendants' threatened employment of the new Dominion BMD System and intended enforcement of O.C.G.A. § 21–2–300(a)(2) and § 21–2–383(c) against the Plaintiffs and others.  Because the FSC states valid claims for injunctive relief as explained herein, the Motion should be denied.

## STANDARD OF REVIEW

Rule 12(b)(1)

In a facial attack on subject-matter jurisdiction under Rule 12(b)(1), the Court assumes the complaint's jurisdictional allegations are true and evaluates their sufficiency to plead jurisdictional elements.  In a factual attack, the Court is asked to evaluate whether the allegations are actually true based on evidence and

facts extrinsic to the complaint. *Carmichael v. Kellogg, Brown & Root Servs*., 572 F.3d 1271, 1279 (11th Cir. 2009).

The Motion's jurisdictional arguments focus on the sufficiency of the FSC's allegations, so the Motion appears to be a facial attack on jurisdiction.[4]  "Facial attacks on the complaint require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction[.]" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted). "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true," *Carmichael*, 572 F.3d at 1279, and "draw all reasonable inferences in plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

Rule 12(b)(6)

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[4] If in the Court's view the jurisdictional arguments do amount to a potentially meritorious factual attack, then the Coalition Plaintiffs respectfully request that they be given a "reasonable opportunity," consistent with the procedures provided by Rules 12(d) and 56(d)(2), to adduce additional extrinsic jurisdictional facts for the Court to consider before it rules on the 12(b)(1) ground of the Motion.

544, 570 (2007)). The court shall accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." *Twombly*, 550 U.S. at 557 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Id*. at 556.  Rule 12(b)(6) does not permit dismissal of a complaint "simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

I.    **The Standard Governing Review of the Motion to Dismiss Precludes Consideration of Defendants' Nine Pages of Extraneous "Facts"**

Because, as explained above, the only facts that matter in the context of a motion to dismiss on facial grounds under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) are the facts alleged by the complaint itself, the State's "Statement of Facts" is improper.  (Doc. 645-1, at 3–12.)  "A court's review on a

motion to dismiss is 'limited to the four corners of the complaint.' A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). The State's Statement of Facts should be ignored.

## II. The Defendants' Argument That DRE Claims Are Moot Has No Bearing On the Coalition Plaintiffs' First Supplemental Complaint

The State's argument that the Plaintiffs' challenges to DREs are moot (Doc. 645-1, at 12–15) is completely misplaced.  The FSC only challenges the State's intended enforcement of <u>new</u> laws that require the Plaintiffs to use the State's <u>new</u> voting system. All of the Coalition Plaintiffs' claims against DREs are confined to their Third Amended Complaint (Doc. 226), which is not even mentioned by the State Defendants in their Motion.  Mootness provides no grounds at all for dismissing the FSC.

If, on the other hand, the Motion is somehow construed to encompass a mootness attack on the Coalition Plaintiffs' still-operative Third Amended Complaint (Doc. 226), then the State's mootness argument must be rejected for two reasons.  First, this Court already dispensed with the mootness argument on

April 9, 2019.  This Court held then: "As long as the State is proceeding to use DREs in all remaining 2019 elections, it is the Court's view at this juncture that Defendants' mootness argument is not meritorious."  (Doc. 356, at 1.)  This Court has since enjoined the State from using DREs at all after 2019, but some 2019 elections remain and the State has yet to reveal whether it intends to appeal this Court's injunction order.  "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief."  *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992).  As long as an appeal of this Court's injunction can be pursued—and until the DRE voting system is actually retired—Plaintiffs' ongoing challenges to DREs cannot be considered moot.

Second, the State's mootness argument is untimely because the State already had—and abandoned—the opportunity to seek dismissal of the DRE claims on grounds of mootness.  In its April 9 order, this Court set a briefing schedule to be used "if Defendants intend to proceed as planned and file a motion to dismiss on mootness." (Doc. 356, at 1.)  This Court provided that, "No extensions of these deadlines shall be granted."  (*Id.*)  The Court then instructed the State Defendants to advise whether they did, in fact, intend to bring a motion to dismiss on mootness grounds. (*Id.* at 2.)  The State Defendants responded by telling this Court two days later that, "The State Defendants will not file a motion to dismiss for mootness."

(Doc. 362, at 5–7.)  The State Defendants offer no explanation why they should be permitted to resurrect the mootness issue at this time, given that this Court was prepared to entertain a motion within fixed deadlines seven months ago, but the Defendants themselves chose to abandon the issue then.

## III.   Defendants' Substantive Objections Are Devoid of Merit

In Argument Section II.A–.C of their brief, the State Defendants challenge the "new Complaints" on substantive grounds that also lack merit. This brief addresses those arguments in turn.

### A.   Eleventh Amendment Immunity

The State Defendants claim that the Eleventh Amendment bars the claims raised in the FSC.  The Defendants recycle the very same argument that previously failed before this Court and the Eleventh Circuit—namely, the argument that the Coalition Plaintiffs' request for certain injunctive relief "implicates special sovereignty interests of the State" that are outside the scope of the exception to Eleventh Amendment immunity that was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908).

The State's present Eleventh Amendment argument is just as frivolous now as it was when the State made the same argument previously.  State officials have long been subject to official-capacity suits in federal court under 42 U.S.C. § 1983

for prospective injunctive relief from federal constitutional violations. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974).  The doctrine that allows such suits was established 110 years ago in *Ex Parte Young*, 209 U.S. at 123.

As was true when this Court and the Eleventh Circuit rejected the State's previous Eleventh Amendment argument for dismissal, the primary relief that the Coalition Plaintiffs now seek is to be spared from the Defendants' enforcement of two laws—O.C.G.A. § 21–2–300(a)(2) and  § 21–2–383(c)—that will compel the Plaintiffs to suffer constitutional injuries from having to vote on an insecure and unaccountable voting system.  To dispose of the Defendants' arguments, it is only necessary to re-read the relevant portions of the Eleventh Circuit's ruling, which concluded:

> Plaintiffs do not seek a court order directing the precise way in which Georgia should conduct voting. Instead, Plaintiffs seek only injunctive and declaratory relief against a system that they decry as unconstitutionally unsecure. Accordingly, there is nothing so unusual at stake that warrants applying Coeur d'Alene Tribe's narrow exception.

*Curling v. Worley*, 761 Fed. App'x. 927, 934 (11th Cir. 2019) (unpublished).

The same reasoning applies here.  While the Coalition Plaintiffs do propose specific items of injunctive relief (for example, the employment of "a properly certified voting system using hand-marked paper ballots as the standard method of

10

voting", (Doc. 628, at 75)), the presence of such requests for relief cannot possibly rise to the level of "extinguishing" the State's "sovereignty" to regulate the conduct of elections.[5]  Instead, the injunctive measures sought by the Coalition Plaintiffs' Prayer for Relief in the FSC merely piggyback on the State's own regulations by asking this Court to prevent the constitutional violations by requiring the State of Georgia to utilize a voting system that complies with Georgia's existing voting system certification laws and regulations.  Requiring the State to follow its own laws can hardly be portrayed honestly as an infringement upon Georgia's sovereignty.

   In any event, the FSC may not be dismissed simply because the Coalition Plaintiffs have identified the particulars of the relief that they would like to see awarded.  Injunctive relief is a matter of equitable discretion.  This Court has "broad discretion" to fashion appropriate equitable relief that targets an existing wrong.  *LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993).  This Court will ultimately determine the precise relief that the Coalition Plaintiffs are entitled to—

---

[5]  The State means for this Court to accept that Georgia's <u>authority</u> to regulate the conduct of elections, *see* U.S. Const. Art. I, § 4, cl.1, is properly analogized to the tribal <u>sovereignty</u> over land, which was the issue in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997). The self-evident mismatch between authority and sovereignty in the State's faulty analogy is yet another reason why the *Coeur d'Alene Tribe* carve-out from *Ex Parte Young*'s exception to Eleventh Amendment immunity does not apply here.

regardless of what the Coalition Plaintiffs have requested—and the relief that the

Coalition Plaintiffs have requested is safely within the scope of this Court's broad

discretion to grant, in any event:

> [F]ederal-court decrees exceed appropriate limits if they
> are aimed at eliminating a condition that does not violate
> the Constitution or does not flow from such a violation,
> or if they are imposed upon governmental units that were
> neither involved in nor affected by the constitutional
> violation…. But where, as here, a constitutional violation
> has been found, the remedy does not 'exceed' the
> violation if the remedy is tailored to cure the
> 'condition that offends the Constitution.'

*Milliken v. Bradley*, 433 U.S. 267, 282 (1977) (citations omitted).  Under this

authority, the relief that the Coalition Plaintiffs have requested is plainly within

this Court's power to grant.  The State Defendants' argument that the requested

relief is barred by sovereign immunity because it is not within the exception

recognized by *Ex Parte Young* is wrong.  The State Defendants' Eleventh

Amendment objection does not justify dismissing the Coalition Plaintiffs' FSC.

**B.    Procedural Due Process Claim's Failure to State a Claim**

The State next claims that the FSC's procedural due process claim

(Doc. 628, at 65–66 (Count III)) is deficient under Rule 12(b)(6) because,

supposedly, (1) it is a shotgun pleading; (2) it fails to allege a constitutionally

protected liberty or property interest; and (3) it fails to allege the lack of adequate

process in the form of a state remedy.

First, Count III cannot be mistaken for a "shotgun pleading," which is a term

that is well defined in Eleventh Circuit case law.

> [W]e have identified four rough types or categories
> of shotgun pleadings. The most common type—by a long
> shot—is a complaint containing multiple counts where
> each count adopts the allegations of all preceding counts,
> causing each successive count to carry all that came
> before and the last count to be a combination of the entire
> complaint.
>
> The next most common type, at least as far as our
> published opinions on the subject reflect, is a complaint
> that does not commit the mortal sin of re-alleging all
> preceding counts but is guilty of the venial sin of being
> replete with conclusory, vague, and immaterial facts not
> obviously connected to any particular cause of action.
>
> The third type of shotgun pleading is one that commits
> the sin of not separating into a different count each cause
> of action or claim for relief.
>
> Fourth, and finally, there is the relatively rare sin of
> asserting multiple claims against multiple defendants
> without specifying which of the defendants are
> responsible for which acts or omissions, or which of the
> defendants the claim is brought against. The unifying
> characteristic of all types of shotgun pleadings is that
> they fail to one degree or another, and in one way or
> another, to give the defendants adequate notice of the
> claims against them and the grounds upon which each
> claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir.

2015) (footnotes to citations omitted) (summarizing 11th Circuit case law after examining "more than sixty published decisions" issued since 1985).

Of the four categories described in *Weiland*, the only one that might even arguably apply to Count III of the FSC is the first.  Paragraph 238 of the FSC incorporates Paragraphs 1–220 into Count III, the due process claim.  Counts I and II also incorporate Paragraphs 1–220 into their respectively stated claims. Pleading in this manner was the exact situation presented in *Weiland*, and the Eleventh Circuit held unequivocally that, "Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading.  But it is not." *Id.* at 1324.  *Weiland* clarified that the first category only prohibits rolling the "allegations of each count" "into every successive count on down the line," not the inclusion of common factual allegations in multiple counts. *Id.*  Count III of the FSC does not roll Count I or Count II into its own allegations.  Thus Count III is not described by the first category of shotgun pleadings.

Nor does Count III of the FSC fit into any of the other categories.  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

*Weiland*, 792 F.3d at 1323. This characteristic does not fit Count III (or any other counts of the FSC). The State plainly understands that Count III asserts a procedural due process claim. The ban on shotgun pleadings offers no basis to dismiss that claim.

Second, the State is simply wrong that Count III of the FSC does not sufficiently allege the deprivation of a constitutionally protected liberty or property interest. In Paragraph 240, Count III expressly lists five "state-created liberty and property interests" that are at risk of deprivation without proper notice as a result of Defendants' threatened conduct. (Doc. 628, at 73, ¶ 240.)

One example from this list of state-created interests—the "state statutory and constitutional rights of voters to vote by secret ballot" (Id. (fifth bullet))—suffices to show that Count III adequately pleads the State's threatened violation of procedural due process. To begin with, Paragraph 238 incorporates allegations that the Georgia Constitution requires elections to be by secret ballot, (Doc. 628, at 18, ¶ 47); that HB 316 requires BMD voting systems to permit "voting in absolute secrecy," (id. at 17, ¶ 46); and that the Dominion BMD System, when operated as designed, arbitrarily deprives in-person voters of these substantive state constitutional and statutory protections, (id. at 39–40, ¶¶ 121–25, ¶ 126.) Paragraph 240 reiterates that requiring in-person voters to use the Dominion BMD

System threatens those voters with deprivations of their state-created right to secrecy in voting "arbitrarily and capriciously" and "without proper notice." (Id. at 73, ¶ 240.) Paragraph 245 alleges that "there is no adequate legal remedy" for these threatened deprivations. (Id. at 74, ¶ 245.) These allegations together are plainly sufficient to plead all required elements of a procedural due process claim.

"To assert a state-created entitlement to a liberty interest, a party must show that the state placed 'substantive limitations on official discretion.'" *Barfield v. Brierton*, 883 F.2d 923, 935 (11th Cir. 1989). The Georgia constitution and statutes limit official discretion, which satisfies *Barfield*'s requirement and refutes the State's contention that the FSC has not sufficiently alleged the first element of a procedural due process claim—namely, deprivation of a protected liberty interest.

The State's alternative argument—that "the State's no-excuse absentee voting system" allows Plaintiffs to avoid the alleged denial of procedural due process (Doc. 645-1, at 21)—was already considered and soundly rejected by this Court when the State made the exact same argument previously in support of its motion to dismiss the challenges to DREs (Doc. 234-1, at 54). On May 21, 2019, this Court rejected this argument that machine voters' rights are not burdened if voters can simply choose to vote by absentee paper ballot. (Doc. 375, at 46–48.)

The State's recycled argument for dismissal has not been rendered meritorious just because the voting machines in question are now BMDs instead of DREs.

Third, the State is wrong that the FSC fails to allege the lack of an adequate state remedy.  As noted above, this exact allegation is expressly made in FSC Paragraph 245.  (Id. at 74, ¶ 245 (alleging "there is no adequate legal remedy" for the threatened deprivations).)  The inclusion of this allegation in Count III refutes the State's third proffered reason why the Coalition Plaintiffs' procedural due process claim in the FSC is supposedly insufficiently pled.

In passing, the State suggests (in a single sentence at the top of page 22 in Doc. 645-1) that Georgia citizens' ability to request a reexamination of the Dominion BMD System under O.C.G.A. § 21–2–379.24(a) somehow amounts to an adequate state remedy that precludes a procedural due process claim.  The State forgets that the "absence of an adequate legal remedy" is established in most cases where the plaintiff "will suffer irreparable harm if the court does not intervene." *United Steelworkers of Am., AFL-CIO-CLC v. USX Corp.*, 966 F.2d 1394, 1404 (11th Cir. 1992).  Such is the case here.  The threat of irreparable injuries is expressly alleged in the procedural due process claim. (Doc. 628, at 74, ¶ 245.) More importantly, the inadequacy of the reexamination process as any kind of "remedy" is apparent from the FSC's factual allegations.  The FSC alleges that the

Secretary has already prejudged that any reexamination—and the Secretary still has not initiated the requested reexamination after nearly three months—will merely be a rubber stamp of the original certification decision that will not even slow the rollout of the Dominion BMD System. (Doc. 628, at 31–32, ¶¶ 94–96.)

The State previously pointed to the Secretary's reexamination of DREs as an adequate state remedy that precluded the Plaintiffs' procedural due process claim, and other claims for injunctive relief, against DREs.  This Court was unpersuaded by the State's argument then that the Secretary's token reexamination process with respect to DREs afforded any sort of meaningful remedy, much less an "adequate" remedy, capable of divesting the Plaintiffs of their claims.  (Doc. 375, at 39 n.31.) That same reasoning dictates rejection of the State's identical argument here.

## C.    "Smuggled" State-Law Claims

The State Defendants next argue that the FSC seeks adjudication of numerous state law violations without any federal right of action and thus fails to state a claim.  (Doc. 645-1, at 22–23.)  With respect to the FSC, the State Defendants appear to focus only on the Coalition Plaintiffs' allegations (at Doc. 628, at 16–17, ¶¶ 41–45) that show how the State failed to follow Georgia law when it certified the Dominion BMD System.

The State is wrong that allegations about its serious failures to comply with

18

Georgia law are intended to serve as the basis for "smuggled" state-law claims. None of the three causes of action that are pled in Counts I through III of the FSC actually invoke state-law causes of action, so there are literally no "smuggled" claims. Instead, the State's failures to follow state-law requirements with respect to certification are alleged because these failures contribute factual support for the <u>federal</u> constitutional violations that have been pled in Counts I through III.

For example, the procedural due process claim in Count III asserts that Georgia voters have a state-created interest in casting votes "using a voting system that has been properly certified as safe for use." (Doc. 628, at 73, ¶ 240, third bullet.) This interest is created by Georgia's statutory requirements that a voting system must be certified "as safe and practicable for use," O.C.G.A. § 21–2–300(a)(2), and as capable of being "safely and accurately used by electors," O.C.G.A. § 21–2–379.24(b)–(d), before the voting system can lawfully be used in Georgia elections. (Doc. 628, at 13–14, ¶¶ 27–28). These statutory certification requirements—as well as accompanying regulations, such as the Certification Rule, (Doc. 628, at 14, ¶ 29)—place "substantive limitations on official discretion." *Barfield*, 883 F.2d at 935. State-law limits on official discretion establish "a state-created entitlement to a liberty interest" that is protected by the U.S. Constitution's guarantee of procedural due process. *Id*. Allegations that the

State has violated its own laws and regulations about voting system certification in an arbitrary and capricious manner contribute factual support for Count III's assertion of a federal procedural due process claim.

The State's argument that any portion of the FSC warrants dismissal because state law violations are alleged as underlying facts must be rejected.  The State's various failures to follow Georgia law all support inferences that are favorable to the three federal causes of action that the Coalition Plaintiffs have asserted.

## IV.   Lack of Standing for Purposes of Subject-Matter Jurisdiction

The State Defendants next argue that standing is lacking because the change from challenging DREs to challenging the Dominion BMD System "completely changes any potential injuries alleged by Plaintiffs." (Doc. 645-1, at 24.)  In particular, Defendants focus on (1) whether the new allegations of threatened injury suffice for standing purposes and (2) whether these threatened injuries will be caused by the Defendants' conduct or be avoided if the relief that Plaintiffs request against the Defendants is granted.

Unless these objections are aimed solely at the Curling amended complaint, they are frankly mystifying.  The FSC contains twenty-one paragraphs of allegations that explicitly address the elements of standing.  (Doc. 628, at 61–67, ¶¶ 200–220.)  Because the FSC is a supplemental complaint, and thus is

completely independent of the Coalition Plaintiffs' Third Amended Complaint, which is directed at DREs (Doc. 226), <u>none</u> of the FSC's twenty-one standing paragraphs rely upon injuries related to DREs.  All of the FSC's standing allegations pertain only to injuries arising from the State's new requirements that voters must vote using BMDs.

### A.     Concrete and Particularized Injury-in-Fact

The FSC's allegations show a concrete and particularized threatened injury-in-fact.  "A plaintiff need not have the franchise wholly denied to suffer injury.  Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351–52 (11th  Cir. 2009).  "The Supreme Court has rejected the argument that an injury must be 'significant'; a small injury, 'an identifiable trifle,' is sufficient to confer standing." *Id*.  Even a mere inconvenience is enough.  *See Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (being wrongly identified as non-citizen sufficed as an injury); *Common Cause/Georgia*, 554 F.3d at 1351 (having "to make a special trip to the county registrar's office that is not required of voters who have driver's licenses or passports" sufficed); *Charles H. Wesley Educ. Found., Inc. v. Cox,* 408 F.3d 1349, 1352 (11th Cir. 2005) (injury of being unable to vote in home precinct sufficed).

Under these authorities, the standing of the individual Coalition Member Plaintiffs is established by the allegations in Paragraphs 202 through 208 of the FSC. (Doc. 628, at 62–64.) The standing of the Coalition for Good Governance is established by allegations in Paragraphs 209 through 220. (Id. at 64–67.) All of these allegations show imminently threatened injuries to individuals that will be suffered as a specific result of those individuals being required to vote using BMDs (or as a result of voting absentee to avoid using BMDs.) Coalition itself alleges facts demonstrating each of the elements of associational and organizational standing in addition to injuries threatened to its Georgia members. (Id. at 64–67.)

**B.      Causation and Redressability**

The injuries alleged by the Coalition Plaintiffs easily satisfy the standing doctrine's requirements to plead causation and redressability. The State Defendants deliberately focus only on allegations about security vulnerabilities and the potential for hacking, which they claim only implicates injuries that will be legally caused by third parties, instead of by the State. But the State ignores the FSC's <u>other</u> allegations, which allege that even the operation of the Dominion BMD System <u>as</u> <u>designed</u> will injure voters by depriving them of their fundamental right to cast a vote that matches their preferences and have that vote counted (Doc. 628, at 33–39, ¶¶ 99–120); their right to vote using a secret ballot,

(id. at 39–41, ¶¶ 121–28); and their right to be treated equally with similarly situated absentee voters, (id. at 41, ¶ 129).  The State's intended enforcement of O.C.G.A. § 21–2–300(a)(2) and  § 21–2–383(c), not the conduct of third parties, will cause these injuries.  The FSC thus sufficiently alleges causation of injuries by the State.

As for redressability, this Court previously rejected the State's identical arguments that any injunction prohibiting the State from requiring voters to use DREs would not redress the alleged injuries threatened by DREs.  This Court recognized then that, "[T]he Coalition Plaintiffs have sufficiently alleged that the State Defendants play a significant role in the continued use and security of DREs, and therefore the requested injunction would help redress some of the Coalition Plaintiffs' injury." (Doc. 309, at 25.) The Court concluded: "The State Defendants here are … in a position to redress the Plaintiffs' alleged injury." (Id. at 26.)  The same conclusion necessarily holds with respect to BMDs, for the same reasons.

The Coalition Plaintiffs' allegations are more than sufficient to establish standing to bring the claims asserted by the FSC at the motion-to-dismiss stage. "When standing is questioned at the pleading stage, as it is here, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace  those specific

facts that are necessary to support the claim.'" *Elend v. Basham*, 471 F.3d 1199,

1208 (11th Cir. 2006).  Moreover, only one plaintiff need demonstrate standing for

each claim.  *See American Civil Liberties Union of Florida, Inc. v. Miami-Dade

Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009).  Because injury, causation, and

redressability are all amply demonstrated by the allegations of the FSC, the State's

objection on grounds of standing and subject-matter jurisdiction should be rejected.

## V.      State Sovereign Immunity

The State Defendants next argue that state sovereign immunity bars the

plaintiffs from pursuing declaratory judgment claims against Georgia in federal

court.  While the State's substantive legal position is wrong, it is immaterial to the

FSC because the FSC asserts no cause of action for declaratory judgment that

requires any defense.

## VI.     Whether the Requested Relief Will Violate Federal Laws

Finally, the State Defendants argue that, by granting the relief sought by the

Plaintiffs, the Court will somehow violate the Americans with Disabilities Act

("ADA"), the Rehabilitation Act, and a provision of the Help America Vote Act of

2002.  As a threshold matter, the State's argument is tantamount to asserting the

affirmative defense of "illegality" by motion.  Rule 8(c) requires that "illegality"

must be affirmatively pled.  Under Rule 12(b), "illegality" may not be asserted in a

motion.  This Court should ignore the State's argument and require the State to plead illegality as an affirmative defense when it files an Answer.

The need for the relief ultimately granted by this Court to be consistent with federal antidiscrimination laws is (at most) a constraint on potential remedies—not a pleading deficiency that could warrant dismissal.  It is the State's responsibility to meet constitutional and statutory standards for allowing every eligible person to exercise her or his right to vote, including those with disabilities and those without. Georgia law offers disabled voters a variety of ways to vote.  People with disabilities may vote absentee, O.C.G.A. § 21–2–384(c), and in person, O.C.G.A. § 21–2–265(d); unlike other voters, they may vote in person using a paper ballot instead of by machine, if they prefer, O.C.G.A. § 21–2–452(h); and they have the right, with few exceptions, to receive assistance in voting from any person the voter selects, whether voting in person or absentee, O.C.G.A. § 21–2–409(b).  If compelled use of the Dominion BMD System is found to be unconstitutional, this Court can fashion an appropriate equitable remedy, including appropriate provisions for those with disabilities, when it renders judgment.

## CONCLUSION

The State Defendants' motion to dismiss (Doc. 645) should be denied as to the Coalition Plaintiffs' First Supplemental Complaint (Doc. 628).

Respectfully submitted this 4th day of November, 2019.

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com

Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III
Pro Hac Vice (ECF No. 125)

ROBERT MCGUIRE LAW FIRM
113 Cherry Street PMB 86685
Seattle, WA  98104-2205
Tel.: (253) 267-8530

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
cichter@IchterDavis.com

Ichter Davis, LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, GA 30326
(404) 869-7600

*/s/ John Powers*
John Powers
Pro Hac Vice (5/17/19 text-only order)

Ezra D. Rosenberg
Pro Hac Vice (ECF No. 497)

Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

*Counsel for William Digges III,*
*Laura Digges, Ricardo Davis*
*& Megan Missett*

*Counsel for Coalition Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been

prepared in accordance with the font type and margin requirements of LR 5.1, using

font type of Times New Roman and a point size of 14.

*/s/ Robert McGuire*
Robert McGuire

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2019, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Robert McGuire*
Robert McGuire