# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CURLING PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' RENEWED MOTION TO DISMISS CURLING PLAINTIFFS' THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................... 1

ARGUMENT ............................................... 2

I.   State Defendants Fail to Defend the Actual Proposed Election System to Be Implemented in Georgia .................................... 4

II.  State Defendants Ignore the Rule 12 Standard ................................. 6

III. This Court and the Eleventh Circuit Already Rejected State Defendants' Frivolous Jurisdictional Arguments .................................... 8

   A.   Curling Plaintiffs' DRE Claims Are Not Barred by the Eleventh Amendment ......................................... 8

   B.   Curling Plaintiffs Have Standing to Challenge BMDs, as with DREs ....... 12

      1.   *Injury in Fact* ......................................... 13

      2.   *Causation* ............................................ 17

      3.   *Redressability* ....................................... 18

IV.  State Defendants' Other Arguments Are Meritless ........................... 19

   A.   Curling Plaintiffs' Claims Regarding DREs Are Not Moot ...................... 19

   B.   State Defendants' Arguments Regarding Proper Relief Miss the Mark ...... 22

   C.   Curling Plaintiffs Do Not Oppose Dismissal of Count V ..................... 23

   D.   Curling Plaintiffs Do Not Assert a Procedural Due Process Claim ........... 24

CONCLUSION ............................................ 25

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 6

*Atheists of Fla., Inc. v. City of Lakeland, Fla.*,
  713 F.3d 577 (11th Cir. 2013) ..........................................................19

*Banfield v. Cortes*,
  922 A.2d 36 (Pa. Commw. Ct. 2007)..................................................14

*Barber v. Rubin Lublin, LLC*,
  No. 1:13-CV-975-TWT, 2013 WL 6795158 (N.D. Ga. Dec. 20, 2013) ............. 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 6

*Curling v. Kemp*,
  334 F. Supp. 3d 1303 (N.D. Ga. 2018) ............................................ 12, 14, 17, 18

*Curling v. Sec'y of Ga.*,
  761 F. App'x 927 (11th Cir. 2019) ..............................................8, 9, 10

*Ex parte Young,*
  209 U.S. 123 (1908) ...............................................................9, 10, 12

*Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health &
  Rehab. Servs.*,
  225 F.3d 1208 (11th Cir. 2000) ............................................11, 12, 19

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
  344 F.3d 1263 (11th Cir. 2003) ........................................................17

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*,
  320 F.3d 1205 (11th Cir. 2003) ........................................................21

*Green v. Mansour*,
  474 U.S. 64 (1985) ..........................................................................11

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984) ........................................................ 6

*Horton v. City of St. Augustine, Fla.,*
  272 F.3d 1318 (11th Cir. 2001) ..................................... 21

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ..................................................... 13

*McKinney v. Pate,*
  20 F.3d 1550 (11th Cir. 1994) ....................................... 24

*Morrison v. Amway Corp.,*
  323 F.3d 920 (11th Cir. 2003) ........................................ 7

*Palko v. Connecticut,*
  302 U.S. 319 (1937) ..................................................... 24

*Prop. Mgmt. & Invs., Inc. v. Lewis,*
  752 F.2d 599 (11th Cir. 1985) ........................................ 7

*Randall v. Scott,*
  610 F.3d 701 (11th Cir. 2010) ........................................ 6

*SFM Holdings, Ltd. v. Banc of Am. Secs., LLC,*
  600 F.3d 1334 (11th Cir. 2010) ...................................... 7

*Stewart v. Blackwell,*
  444 F.3d 843 (6th Cir. 2006), *vacated* (July 21, 2006), *superseded*, 473
  F.3d 692 (6th Cir. 2007) .............................................. 14

*United States v. Georgia,*
  778 F.3d 1202 (11th Cir. 2004) ..................................... 20

*United States v. Hays,*
  515 U.S. 737 (1995) ..................................................... 12

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
  535 U.S. 635 (2002) ..................................................... 10

*Wexler v. Anderson*,
   452 F.3d 1226 (11th Cir. 2006) ........................................................................24

**Statutes**

O.C.G.A § 21-2-300(a)(2)...............................................................................3, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................passim

Fed. R. Civ. P. 56 ..................................................................................... 6

## **INTRODUCTION**

State Defendants' Motion to Dismiss implicitly confirms Curling Plaintiffs'
right to pursue their claims regarding the forthcoming BMDs: not only do State
Defendants ignore this Court's direction to "focus their arguments entirely on the
new claims related to the BMDs" (Dkt. No. 638), they make no effort to defend the
***barcode***-based BMDs they intend to implement. Tellingly, they make only a
single, passing reference to barcodes in their Motion, despite barcodes being a key
focus of the constitutional claims asserted in Curling Plaintiffs' Third Amended
Complaint (Dkt. No. 627) ("TAC"), and despite State Defendants' own election
security expert denouncing barcodes. Curling Plaintiffs are entitled to an
opportunity to prove that State Defendants' barcode-based BMDs are
unconstitutional, just as State Defendants implicitly concede through their silence
and their own expert has effectively acknowledged in rejecting those devices.

Unable to defend the election system they have actually adopted, State
Defendants do what they frequently have done when confronted with their own
indefensible positions: they misrepresent the facts. Specifically, they repeatedly
claim that the ***barcode***-based BMDs "use optical scanners to count votes in the
same manner" as with hand-marked paper ballots. (Dkt. No. 645-1 at 2
("Motion").) Not only does this contradict the TAC's allegations, which must be

1

accepted as true for the purpose of State Defendants' Motion, but this claim is obviously false.  State Defendants seek to scan barcodes that voters cannot verify or even read, rather than the actual text of the voter's selection.  State Defendants' inability to confront this fact confirms Curling Plaintiffs' right to litigate it and its legal implications for their right to vote.

Lacking any meaningful arguments on Curling Plaintiffs' new claims, State Defendants largely recycle arguments this Court and the Eleventh Circuit already rejected as meritless (and even frivolous); devote significant attention to Curling Plaintiffs' DRE-based claims, which they wrongly argue are moot; and repeatedly challenge the TAC's allegations with their own factual claims in violation of Rule 12.  The TAC readily asserts sufficient facts that, taken as true, raise plausible constitutional claims that Georgia's Proposed Election System (and its DRE Voting System) violates Curling Plaintiffs' constitutional right to vote.

## ARGUMENT

This Court has prohibited Defendants from continuing to use the unconstitutional DRE Voting System after 2019.  (Dkt. No. 579 at 148.)  But State Defendants have not adopted a secure, reliable election system in its place. Instead, they inexplicably decided to adopt a voting system that their own expert has advised against (a fact they conveniently ignore in their Motion) and that does

2

not meet the constitutional requirements that the state legislature explicitly recognized in Act 24.   State Defendants accuse Curling Plaintiffs of seeking to "impose their preferred policy choice . . . over the considered policy decision of the Georgia General Assembly."  (Mot. at 3.)  Not so.  State Defendants willfully disregarded the direction of the Georgia General Assembly—and their own election security expert—by adopting an election system that does not allow voters to verify that the votes counted are the actual votes they intended.  *See* Act 24, *amending* O.C.G.A § 21-2-300(a)(2) ("As soon as possible . . . all federal, state, and county general primaries and general elections as well as special primaries and special elections in the State of Georgia shall be conducted with the use of scanning ballots marked by electronic ballot markers . . . provided, however, that such electronic ballot markers shall produce paper ballots which are marked with the elector's choices ***in a format readable by the elector***.") (emphasis added).  It is undisputed—and must be taken as true at this stage in any event—that voters cannot read barcodes on ballots and thus cannot verify that what gets scanned and recorded as their votes is accurate.  In short, State Defendants inexplicably seek to replace one unconstitutional election system with another.

## I.   STATE DEFENDANTS FAIL TO DEFEND THE ACTUAL PROPOSED ELECTION SYSTEM TO BE IMPLEMENTED IN GEORGIA

State Defendants' Motion makes a single mention of barcodes.  (Mot. at 28.)

They do not even attempt to defend this critical flaw with the Proposed Election

System at the crux of Curling Plaintiffs' claims.  The Proposed Election System

described in Georgia's contract with Dominion consists of: 1) BMDs that generate

both 2D barcodes and a text summary of voters' candidate selections; and 2) in-

precinct scanners that "tabulate votes from each ballot based on the 2D barcode

generated by the BMD and not based on the written text summary of a voter's

selections."  (TAC at ¶ 71.)  "The 2D barcode produced by the BMD is not

readable by a voter, but is relied upon by the precinct scanner to tabulate votes in

each precinct," as opposed to the summary of a voter's selected candidates.  (*Id*. at

¶ 73.)  In other words, "the voter is only able to audit the written text summary and

not the actual barcode on the ballot used to tabulate votes."  (*Id*. at ¶ 74.)

State Defendants attempt to obscure this fact by asserting that, "[b]ecause

Georgia's new voting system produces paper ballots that clearly indicate voters'

selections, they can be audited to verify results."  (Mot. at 6.)  Not only is the Court

required to disregard this allegation under Rule 12, but it is obviously false in any

event.  Voters are, in fact, unable to verify the portion of the BMD-marked ballot that is used to tabulate votes:  the 2D barcode.  (TAC at ¶¶ 73-75.)

State Defendants similarly ignore that the Proposed Election System runs counter to the recommendations of their own expert.  Dr. Michael Shamos, State Defendants' retained election security expert, advises against the BMDs that State Defendants seek to use.  (*Id*. at ¶ 88.)  State Defendants attempt to obscure these fatal admissions by claiming that "[e]xperts recognize BMDs as a safe and secure voting system."  (Mot. at 9.)  Not only is the Court required to disregard this allegation under Rule 12, but it is misleading.  It glosses over the critical distinction between the types of BMD-based systems that some experts have supported versus the Proposed Election System that State Defendants are in the process of implementing using unverifiable barcodes.  Moreover, State Defendants' own cited sources (which are not properly before this Court under Rule 12) confirm that election experts support "human-readable paper ballots," *id*. at 10 n.12 (citing National Academy of Sciences, Engineering, and Medicine, et al., Securing the Vote: Protecting American Democracy 80 (2018))), that create "a voter-verified paper trail"—but voters cannot verify barcodes.  (*Id*. at 10 (citing U.S. Senate Intelligence Committee Report at 59).)  Curling Plaintiffs have adequately alleged that Georgia's Proposed Election System does not meet the

criteria of the election expert community, including State Defendants' own expert, for secure, reliable elections.  State Defendants' Motion fails.

## II.   STATE DEFENDANTS IGNORE THE RULE 12 STANDARD

Unable to confront the facts pled, State Defendants rely heavily on numerous factual claims that appear nowhere in the TAC, which sets the factual boundaries for this Court's Rule 12 analysis, and that contradict the TAC's allegations.  As the Court knows, under Rule 12(b)(6), Curling Plaintiffs need only provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is black letter law that the TAC's allegations and permissible inferences must be taken as true and construed in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  The Court may not consider information beyond the pleadings without converting this motion into one for summary judgment.[1]  *Morrison v. Amway Corp.*, 323 F.3d 920, 924

---

[1] If the Court opted to convert State Defendants' motion to dismiss to a motion for summary judgment and consider materials beyond the pleading, summary judgment in State Defendants' favor would be improper as material facts remain hotly disputed and State Defendants have not demonstrated that they are entitled to judgment as a matter of law on any—much less all—of Curling Plaintiffs' claims in the TAC.  *See* Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

(11th Cir. 2003); *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).[2]

Here, the TAC contains detailed allegations regarding the ways in which many of the same established security vulnerabilities that infest Georgia's DRE Voting System are present in the Proposed Election System. (*See* TAC at ¶¶ 76-82.) State Defendants dispute these allegations, claiming that the "new BMD system is completely separate from the old DRE/GEMs systems." (Mot. at 10.) Moreover, State Defendants would like this Court to assume that Georgia will implement a robust, state-wide election audit process (based on the mere say-so of a declaration it submitted in connection with a previously-filed brief (Mot. at 6 (citing Dkt. No. 616-1 at ¶ 19)); that BMDs offer advantages and accessible features to all voters (Mot. at 2, 4); and that poll workers will encounter

---

movant is entitled to judgment as a matter of law."). Curling Plaintiffs also would need an opportunity to respond to the Motion under the Rule 56 standard.

[2] Only in exceptional circumstances can courts in this Circuit consider additional materials and still avoid converting the motion to summary judgment. *See, e.g., SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."); *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007) (allowing consideration of documents referenced by plaintiff in complaint that are central to claim if contents not in dispute and defendant attaches document to motion to dismiss). These are not the circumstances here.

administrative difficulties under the requested relief (*id.* at 8).  These, and other,

factual claims are not contained in the TAC and are disputed, and thus the Court

may not consider them under Rule 12.[3]  Rule 12 requires the Court to take the

TAC's allegations as true and to disregard State Defendants' self-serving

allegations.[4]

## III.   THIS COURT AND THE ELEVENTH CIRCUIT ALREADY REJECTED STATE DEFENDANTS' FRIVOLOUS JURISDICTIONAL ARGUMENTS

### A.   Curling Plaintiffs' DRE Claims Are Not Barred by the Eleventh Amendment

The Eleventh Circuit affirmed this Court's prior decision that Curling

Plaintiffs' claims seeking to enforce the constitutional right to vote through secure,

reliable elections are not barred by the Eleventh Amendment.  *See Curling v. Sec'y*

*of Ga.*, 761 F. App'x 927, 929 (11th Cir. 2019).  State Defendants recycle the same

arguments the Eleventh Circuit characterized as frivolous.  *See id.* at 932.  State

Defendants' claim that the TAC "raise[s] different Eleventh Amendment questions

---

[3] State Defendants cannot rely on judicial notice, which courts exercise only when the facts at issue are undisputed and generally indisputable.  *Barber v. Rubin Lublin, LLC*, No. 1:13-CV-975-TWT, 2013 WL 6795158, at \*4 (N.D. Ga. Dec. 20, 2013) (a court may take judicial notice of undisputed matters of public record, but not "of disputed facts stated in public records" (citations omitted)).

[4] This is particularly true where, as here, the Court has previously recognized Defendants' lack of candor with the Court.  (Dkt. No. 579 at 6.)

than those the Court previously addressed" is wrong.  (Mot. at 15.)  First, Curling Plaintiffs did not amend the DRE claims in the TAC.  So this Court's and the Eleventh Circuit's rulings rejecting State Defendants' Eleventh Amendment arguments as to those claims hold.  Second, State Defendants' argument directly violates the Court's Order limiting their Motion to Curling Plaintiffs' claims related to BMDs.  As warned in its Order, the Court should "not entertain" this repeat argument regarding the DRE claims.  (Dkt. No. 638 at 1.)  Third, State Defendants repeat their already-rejected argument that Curling Plaintiffs seek retrospective relief.  (Mot. at 16.)  As the Eleventh Circuit emphasized, this argument "can be disposed of without much ado because [it] run[s] counter to the [complaint's] allegations and settled precedent."  *Curling*, 761 F. App'x at 932.

Curling Plaintiffs' DRE claims continue to "squarely fall within *Ex parte Young* because they seek only injunctive and declaratory relief for alleged ongoing violations of federal law against the State Defendants in their official capacities." *Id*. at 931.  As they did previously, Curling Plaintiffs in the TAC: (1) have alleged that the State Defendants continue to enforce the use of the non-compliant DRE system and "that enforcement has the prospect of violating Plaintiffs' federal rights;" (2) "seek only declaratory relief and an injunction against enforcing this election system in future elections;" and (3) "allege those rules will violate their

constitutional rights in the future." *Id*. at 932.  Thus, as they did previously,

Curling Plaintiffs "have satisfied *Ex parte Young*'s exception." *Id*.  "The test for

determining whether a suit fits within *Ex parte Young*'s exception is typically

'straightforward,' asking only whether the 'complaint alleges an ongoing violation

of federal law and seeks relief properly characterized as prospective.'" *Id*. at 931

(quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645

(2002)).  "As long as the plaintiff alleges ongoing violations of federal law and

seeks injunctive or declaratory relief, or both, against state officials in their official

capacity, plaintiffs usually face no hurdles in clearing *Ex parte Young*." *Id*.

State Defendants argue that "the State's statutory changes have eliminated

any alleged ongoing violation of constitutional rights based on the DRE system"

and that Curling Plaintiffs' DRE claims are thus moot.  (Mot. at 16.)  This

misstates the facts and the law, and ignores the TAC's allegations that "Defendants

still intend to utilize their flawed DRE Voting System in upcoming elections

during Fall 2019."  (TAC at ¶¶ 11, 96.)  Although the Court previously declined to

bar DRE-based elections this year in Georgia, that was only on a ***preliminary***

injunction motion.  Nothing prevents Curling Plaintiffs from seeking permanent

relief for their DRE-related claims going forward.  In fact, State Defendants argue

themselves that no final judgment has been entered on those claims.  (Mot. at 16.)

State Defendants' cited authority does not support its effort to resurrect this jurisdictional issue.  In *Green v. Mansour*, 474 U.S. 64 (1985), the petitioners had brought two suits against the Director of the Michigan Department of Social Services, claiming that his calculations of benefits under the federal Aid to Families With Dependent Children (AFDC) program violated certain provisions of that federal law.  While the case was pending, Congress amended the relevant statutory provisions.  It was undisputed that the respondent's calculations conformed with the current statutory provisions; nevertheless the petitioners sought "notice relief" and a declaration that the respondent's prior conduct violated the statute.  *Id*. at 65.  In other words, there was "no claimed continuing violation of federal law, and therefore no occasion to issue an injunction," and no "threat of state officials violating the repealed law in the future."  *Id*. at 73.  To the contrary, here Curling Plaintiffs allege an ongoing violation of their constitutional rights and seek a prospective, permanent injunction barring State Defendants from using the DRE Voting System in future elections.[5]  (TAC at ¶¶ 96, 98, 112.)

---

[5] *Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Department of Health & Rehabilitation Services*, 225 F.3d 1208 (11th Cir. 2000) is even more readily distinguishable.  There, the plaintiffs sued several Florida state officials seeking injunctive and declaratory relief for alleged violations of the Boren Amendment.  In 1991, the district court entered a preliminary injunction ordering the defendants to comply with the Boren Amendment.  In 1997, the Boren

## B.     Curling Plaintiffs Have Standing to Challenge BMDs, as with DREs

While Curling Plaintiffs' claims regarding the Proposed Election System arise from recent actions taken by State Defendants, they are legally identical to the DRE-related claims that this Court previously ruled Curling Plaintiffs have standing to pursue. *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1319-20 (N.D. Ga. 2018). No new facts materially alter the standing analysis here, which considers three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id*. at 1314 (quoting *United States v. Hays*, 515 U.S. 737, 742-43 (1995) (quoting

---

Amendment was repealed. The district court did not enter a final order until April 1999, at which time it held that defendants had violated the Boren Amendment and awarded both prospective and retrospective relief. *Id*. at 1210. The defendants appealed, arguing that much of the district court's relief was retrospective and potentially required the defendants to reimburse plaintiffs for past violations of the repealed statute. *Id*. at 1220. These facts bear no resemblance to the allegations in the TAC. Moreover, the Eleventh Circuit recognized that "Plaintiffs' suit originally fell within the *Ex parte Young* exception," because, like Curling Plaintiffs' DRE-related claims, the plaintiffs' were "directed against state officials in their official capacities and asked for prospective injunctive relief to halt continuing violations of federal law." *Id*. at 1220.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotation marks omitted).  Curling Plaintiffs sufficiently allege each of the three standing elements regarding BMDs just as they have with DREs.  That the voting devices are different has no material impact on the underlying legal principles or theory this Court already accepted for standing, including the lack of security, reliability, and transparency associated with the devices and the overall systems.

      *1.    Injury in Fact*

State Defendants contend that Curling Plaintiffs have not sufficiently alleged a concrete "injury in fact" because they "fail to allege that they are under threat of suffering a prospective injury that is '<u>real</u> and <u>immediate</u>' regarding Georgia's new BMD voting system."  (Mot. at 25 (emphasis in original).)  But State Defendants simply ignore the TAC's allegations and the facts of their own Proposed Election System.  Again, State Defendants pretend as if that system will not rely on the very barcodes their own election expert rejected—a characteristic that renders the new system as unreliable and unsecure as the DREs already found unconstitutional.  As the TAC alleges, Curling Plaintiffs will have no ability when voting on the intended barcode-based BMDs to verify that the votes tabulated for them are actually the votes they intended—just as with the DREs.  In short, State Defendants ignore a central premise in the TAC that the Proposed Election System

13

has "the same demonstrated security vulnerabilities as those that plague Georgia's DREs" (TAC at ¶ 76), and, thus, will continue to threaten Curling Plaintiffs' "fundamental right to participate in an election process that accurately and reliably records their votes and protects the privacy of their votes and personal information." *Curling*, 334 F. Supp. 3d at 1315.

As the Court previously determined, "courts have found that plaintiffs have standing to bring Due Process and Equal Protection claims where they alleged that their votes would likely be improperly counted based on the use of certain voting technology." *Id*. at 1316 (citing *Stewart v. Blackwell*, 444 F.3d 843, 855 (6th Cir. 2006), *vacated* (July 21, 2006), *superseded*, 473 F.3d 692 (6th Cir. 2007)); *Banfield v. Cortes*, 922 A.2d 36, 44 (Pa. Commw. Ct. 2007). Just as they did with DREs, Curling Plaintiffs now allege that their votes will "likely be improperly counted" under Georgia's Proposed Election System due to security vulnerabilities ***that have already been identified in the BMD-based system***, including:

- "The Proposed Election System will not be substantially safer than the current system because BMDs remain susceptible to manipulation, and the proposed system does not provide a meaningful way for a voter to audit their vote." (TAC at ¶ 72.)

- "[W]hile the Proposed Election System purports to provide a voter with an auditable voting record, the voter is only able to audit the written text summary and not the actual barcode on the ballot used to tabulate votes. In other words, despite the fact that cybersecurity experts and government officials recommended a voting system that included a voter-verified paper

14

trail, the Proposed Election System will rely on a non-voter-verified barcode as the elector's actual vote." (*Id.* at ¶¶ 74-75.)

- "In February 2019, Texas voting systems examiners refused to certify Dominion's election management system based upon several problems with the software. According to these examiners, 'several of the problems did not appear to have ready-made or simple solutions.' These problems included: (a) The ability of Dominion's hardware to be connected to the internet; (b) If the printer tray became ajar during the voting process the system would wipe out all selections and require a voter to start over, therefore requiring poll worker intervention and slowing down the voting process; (c) The audit trail stored voter selections in sequential order, which would permit the secrecy of the ballot box to be compromised; (d) Portions of the power cord connections are easily accessible and may be unplugged by anyone; (e) The paths for import of election data into the election management program revealed multiple opportunities for mistakes and during testing required three separate restarts of the adjudication process." (*Id.* at ¶ 80.)

- During the 2019 DEFCON Voting Village, Dominion's precinct scanners were made available to participating hackers. These hackers identified twenty vulnerabilities. One vulnerability was the ability of remote attackers to implement a DNS attack. Another vulnerability was the existence of an exposed flash card containing an .xml file that, if manipulated, would allow for scanned votes to be redirected to a different candidate. (*Id.* at ¶ 81.)

- "[T]he ImageCast X BMDs rely on software released in February 2015, which has not received security updates since March 2018." (*Id.* at ¶ 82.)

State Defendants' only response to the serious vulnerabilities with the

Proposed Election System outlined in the TAC is to dispute them—but Rule 12

prohibits this and the Court is required to disregard such arguments.  State

Defendants claim, for example, that "the use of paper ballots and required audits

completely changes any potential injuries alleged by Plaintiffs." (Mot. at 24.)  But

15

this merely raises fact disputes about BMDs and audits that must be tested in discovery and resolved on the merits, not a motion to dismiss. Further, "the use of paper ballots" does not change any potential injury in itself; as previously explained, the Proposed Election System will not create a ***voter-verified*** paper trail, instead relying on non-voter-verified barcodes to tabulate votes. (TAC at ¶¶ 72-75.) And again, there are no ***facts*** before the Court on this Motion regarding the audit procedures that State Defendants actually will implement or when—nor are State Defendants allowed to introduce any such facts. *See supra* at Section II.

State Defendants also contend that "Plaintiffs have complete control over whether *they* are 'injured' because they can review their selections on their BMD-marked paper ballot.'" (Mot. at 26 (emphasis in original).) This is, at best, a factual dispute that cannot be resolved on a motion to dismiss. More precisely, though, this claim is misleading. State Defendants again omit the fact of barcodes in making this claim, for example, and the corresponding fact that Curling Plaintiffs cannot review their selections as those will be tabulated by scanners based on unreadable barcodes.

Finally, State Defendants wrongly claim that Curling Plaintiffs attempt to "rely on their previous claims about DREs and simply 'bootstrap' their way to standing for their BMD allegations." (Mot. at 26.) By detailing the security

16

vulnerabilities that have already been discovered in the Proposed Election System and specifically alleging the resulting threat of future harm to their fundamental right to vote, Curling Plaintiffs adequately allege a concrete "injury in fact" in the TAC.

2.    *Causation*

Curling Plaintiffs sufficiently allege a causal connection between their injury and Defendants' challenged conduct.  As they previously did with respect to Plaintiffs' DRE claims, *see Curling*, 334 F. Supp. 3d at 1317, State Defendants argue that any injury to Curling Plaintiffs related to BMDs would be "the result of *third-party actions*, not the actions of State Defendants."  (Mot. at 27 (emphasis in original).)  This merely recycles the same argument this Court already rejected. Curling Plaintiffs have alleged that State Defendants are aware of the critical deficiencies with the Proposed Election System, yet nevertheless are choosing to implement it, and in doing so have "willfully and negligently abrogated their statutory duties and abused their discretion, subjecting voters to cast votes on an illegal and unreliable system—a system that must be presumed to be compromised and incapable of producing verifiable results."  (TAC at ¶¶ 116-17.)  Thus, as with DREs, Curling Plaintiffs allege that Defendants' challenged conduct "impacts the integrity of the voting system and their ability as citizens to rely upon it when

casting votes in this system.  At the motion to dismiss stage, these allegations plausibly show causal connection, even if indirectly, between Defendants' [implementation of the BMD-based Proposed Election System] and the injury to Plaintiffs' constitutional rights." *Curling*, 334 F. Supp. 3d at 1317 (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)).

### 3.    *Redressability*

State Defendants repeat the same arguments with respect to the third element, redressability, but with no more success.  Once again, State Defendants resort to the argument that no election system is perfect, but once again "this is not the standard for redressability."  *Curling*, 334 F. Supp. 3d at 1318.  As with DREs, "State Defendants here are similarly in a position to redress the Plaintiffs' alleged injury" caused by their implementation of the BMD-based Proposed Election System.  *Id.*

The Court should again conclude that "Plaintiffs have sufficiently alleged standing to bring their claims at this juncture."  *Id.* at 1320.

## IV.   STATE DEFENDANTS' OTHER ARGUMENTS ARE MERITLESS

### A.   Curling Plaintiffs' Claims Regarding DREs Are Not Moot

State Defendants' argument that Curling Plaintiffs' claims based on the DRE

Voting System are "moot" ignores the TAC's allegations and, instead, are based on

Defendants' injection of their own, self-serving narrative.  Because the Court can

still afford "meaningful relief" on Curling Plaintiffs' claims regarding the DRE

Voting System, those claims must be permitted to proceed.  *Fla. Ass'n of*

*Rehabilitation Facilities*, 225 F.3d at 1217.

The vast majority of Georgia voters will vote on the DRE Voting System in

the remaining 2019 elections.  (*See* TAC ¶¶ 11, 95, 96.)  While State Defendants

cite to Act 24 as "comprehensive election reform[]" that eliminates the DRE

Voting System at some point in the future (Mot. at 13), they ignore the fact that

Act 24 does not provide for any firm timeline for the implementation of a new

system and merely calls for the adoption of a new system "[a]s soon as possible."

Act 24, *amending* O.C.G.A § 21-2-300(a)(2).  This fact alone distinguishes this

case from those relied upon by State Defendants where either a statutory change

definitively ended the conduct at issue or the defendant had otherwise voluntarily

ended the challenged conduct.  *See Atheists of Fla., Inc. v. City of Lakeland, Fla.*,

713 F.3d 577, 595 (11th Cir. 2013) (First Amendment claim regarding speaker

selection practice moot where defendant had ceased challenged practice before complaint had been filed); *United States v. Georgia*, 778 F.3d 1202, 1204 (11th Cir. 2004) (finding that "as things stand now under codified Georgia law," the state's election calendar complied with federal law). Here, there has been no "voluntary cessation" of the use of the DRE Voting System by State Defendants. To the contrary, they insist on its use at least this year.

The same is true of State Defendants' passing reference to the Court's Order on Plaintiffs' preliminary injunction motions. The preliminary injunction issued by the Court does not prevent Defendants from using DREs in the remaining 2019 elections. Nor does it prevent Curling Plaintiffs from seeking permanent relief for the DRE Voting System, as State Defendants have conceded in arguing that no final judgment has been entered yet. (Mot. at 16.) More importantly, State Defendants have not yet complied with the preliminary injunction for next year's elections. Instead, they rely only on their own say-so that they will comply with the Court's Order. (*See id*. at 14.) This is not sufficient to dismiss Curling Plaintiffs' DRE-related claims, especially given the well-established unreliability of State Defendants' representations. And even if State Defendants were to show initial compliance with the preliminary injunction, this would not moot Curling Plaintiffs' DRE-related claims. *See Four Seasons Hotels & Resorts, B.V. v.*

20

*Consorcio Barr, S.A.*, 320 F.3d 1205, 1209 n.2 (11th Cir. 2003) ("[C]ompliance with the terms of an injunction does not moot a case where the action in question could be resumed or undone.").  Again, Curling Plaintiffs are entitled to seek permanent relief.

State Defendants fare no better with their self-serving claim that the State is "rapidly retiring" the DRE Voting System for 2020 elections.  (Mot. at 14.)  Once again, State Defendants disregard the requirements of Rule 12 by injecting unsupported factual allegations that appear nowhere in the TAC.  *See supra* at Section II.  State Defendants' tactic is improper and misleading.  Indeed, the Court already found "reason to doubt" that State Defendants would be able to implement the BMD system by the Presidential Primary, given: (1) the State's month-long delay in selecting a vendor; (2) the decrease from ten to six counties to pilot BMDs; and (3) the fact that the piloting counties do not include any of Georgia's most populous counties.  (Dkt. No. 579 at 143-45.)  Curling Plaintiffs' claims are not moot as long as some of the same evils associated with the DRE Voting System are left "substantially undisturbed" by State Defendants' move to the Proposed Election System, ***as the TAC alleges***.  *See Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1327 (11th Cir. 2001).

**B.      State Defendants' Arguments Regarding Proper Relief Miss the Mark**

State Defendants attack the relief sought in Curling Plaintiffs' ***Motion for Preliminary Injunction*** (Dkt. No. 619 at 2) ("MPI"), not the TAC.  Thus, State Defendants' arguments regarding the propriety of the relief Curling Plaintiffs seek in the MPI have no bearing on the sufficiency of the TAC under Rule 12.  The Court is obliged to disregard such arguments for purposes of State Defendants' Motion.

Nevertheless, State Defendants' claim that Curling Plaintiffs' relief sought in their MPI violates federal law hinges on a fundamental mischaracterization of Curling Plaintiffs' claims, namely that "Plaintiffs' legal theory is that any use of BMDs by the general public is unconstitutional and necessitates this Court's intervention."  (Mot. at 35.)  State Defendants are wrong—no such allegation appears in the TAC.  Curling Plaintiffs allege only that "***Georgia's Proposed*** Election System remains unconstitutional" and requires this Court's intervention. (TAC at 23 (emphasis added).)  Thus, Curling Plaintiffs challenge here only particular aspects of Georgia's Proposed Election System, not "any use of BMDs." As Curling Plaintiffs allege: "The Proposed Election System will not be substantially safer than the current system because BMDs remain susceptible to manipulation, ***and the proposed system does not provide a meaningful way for a***

22

***voter to audit their vote***" because of the use of barcodes, for example.  (*Id*. at ¶ 72 (emphasis added).)  In addition, Curling Plaintiffs allege that "Georgia's Proposed Election System is also susceptible to manipulation because Georgia has not committed to risk-limiting audits for its upcoming elections."  (*Id*. at ¶ 89.)  It is "[f]or these reasons" that "Georgia's Proposed Election System provides Georgia's voters with no greater guarantee than the current system that their votes will be accurately recorded and tabulated."  (*Id*. at ¶ 90.)

Moreover, in their MPI, Curling Plaintiffs do not request that disabled voters be forced to use the Proposed Election System as designed.  Rather, they request only that Defendants "make available at each polling place at least one electronic ***or mechanical*** BMD that is in compliance with the Americans with Disabilities Act and Help America Vote Act."  (Dkt. No. 619 at 2 (emphasis added).)  Curling Plaintiffs seek additional relief intended to protect the accuracy of all votes, including those cast on proper BMDs, such as a plan for "precertification, post-election, manual tabulation audits of the paper ballots to verify election results, in sufficient detail for the Court to evaluate its adequacy."  (*Id*.)

### C.     Curling Plaintiffs Do Not Oppose Dismissal of Count V

State Defendants argue that Curling Plaintiffs "seek adjudication of numerous state-law issues without stating a claim this Court can address," citing

Paragraph 142 of the TAC, which appears in the Prayer for Relief in the TAC. (Mot. at 22 (citing TAC at ¶ 142).)  State Defendants misstate that provision, which does not assert "numerous state-law issues."  Nevertheless, the request in Paragraph 142 arises only from Count V of the TAC, which is the only state law claim in the TAC.  Curling Plaintiffs do not oppose dismissal of Count V, which resolves State Defendants' state-law arguments.

### D.     Curling Plaintiffs Do Not Assert a Procedural Due Process Claim

State Defendants feign confusion over whether Curling Plaintiffs assert substantive or procedural due process claims.  It should be abundantly clear by now that Curling Plaintiffs assert only substantive due process claims based on Defendants' violation of their constitutional right to vote.  (TAC at ¶¶ 91-98, 113-19; *cf. McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) ("The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937))); *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006) ("The right to vote is fundamental, forming the bedrock of our democracy.").)

## CONCLUSION

Just as State Defendants sought to suppress Plaintiffs' claims regarding the DRE Voting System in 2017 and 2018, they now ask the Court to help them evade meaningful review of the Proposed Election System and its numerous vulnerabilities.  The Court should not acquiesce.  Curling Plaintiffs allege ample facts supporting their claims and should be permitted to move forward to discovery and resolution of such claims on the merits.

Dated:  November 4, 2019             Respectfully submitted,

                                        */s/ David D. Cross*

David D. Cross (*pro hac vice*)
John P. Carlin (*pro hac vice*)
Jane P. Bentrott (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
RManoso@mofo.com
JBentrott@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW

25

Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling,*
*Donna Price & Jeffrey Schoenberg*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

 _/s/ David D. Cross_____
David D. Cross

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2019, a copy of the foregoing **CURLING PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' RENEWED MOTION TO DISMISS CURLING PLAINTIFFS' THIRD AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

 */s/ David D. Cross*
David D. Cross