IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-cv-2989-AT |

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINTS**

**I.   The facts cited by State Defendants may all be properly considered by the Court.**

Curling and Coalition Plaintiffs urge this Court to completely disregard State Defendants' cited facts about Georgia's voting system. [Doc. 650, pp. 6-7], [Doc. 651, pp. 11-13]. But this Court is permitted to look to "matters outside the pleadings, such as testimony and affidavits," *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotations and citations omitted), when a motion to dismiss challenges the existence of subject-matter jurisdiction. The Fed. R. Civ. P. 12(b)(1) jurisdictional motion raised by State Defendants requires specific facts, just like in *Lawrence*. *Id.* State Defendants explained the distinctions in the new claims involving BMDs and the prior

-1-

claims involving DREs because those facts are necessary to determine if this Court has jurisdiction over Plaintiffs' new claims.

Further, the Eleventh Circuit has upheld the consideration of facts outside the complaint in a Fed. R. Civ. P. 12(b)(6) motion when they are public records—including records from a related case—without converting the motion into a summary-judgment motion. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). This is because public records can be judicially noticed at the motion-to-dismiss stage. *Davis v. Williams Communs., Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (citing *Bryant v. Acado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999)). This maxim is more acute where, as here, documents cited by State Defendants are **records in this case**. Plaintiffs themselves pointed to the extensive record in this case when seeking leave to amend, [Doc. 614, p. 8], [Doc. 581, pp. 3-4], and the Court similarly recognized efficiency and "ease of reference to the existing record in this case" when granting Plaintiffs' motions. [Doc. 626, p. 2]. Moreover, unlike the case cited by Curling Plaintiffs, citations outside of the record in this case, are not disputed facts in public records, but are the information required to determine whether Plaintiffs even have a federal claim to require a state to select their preferred paper-ballot system. *See McElmurray v. Consolidated Gov't of Augusta-Richmond Cnty.*, 501 F.2d 1244 (11th Cir.

2007) (noting the district court may dismiss for lack of subject matter jurisdiction on three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). State Defendants' citations to the record of this case and undisputed public documents are appropriate for this Court to consider.

More than two years into this case, Plaintiffs cannot now pretend that their new claims exist in a vacuum just because they do not like the facts about Georgia' new paper-ballot voting system. Nor should this Court allow Curling Plaintiffs' ad hominem attacks on opposing counsel to support their position. *See* [Doc. 651, p. 8 n.4]; *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1308 (11th Cir. 2002) ("We conclude that an attorney who submits documents to the district court that contain ad hominem attacks directed at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it.").[1]

---

[1] Such attacks are especially hypocritical when advanced in the same brief in which Curling Plaintiffs apparently acknowledge the impropriety of Count V in their Third Amended Complaint. [Doc. 651 at 23-24].

## II. Plaintiffs lack standing to challenge the BMD Voting System.

Plaintiffs cannot show (1) an injury in fact; (2) that is fairly traceable to the challenged conduct of defendants; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016). At the outset, Curling Plaintiffs blur their DRE-related and BMD-related injuries in order to overcome the standing threshold. *See* [Doc. 651 at 12] ("While Curling Plaintiffs' claims regarding the Proposed Election System arise from recent actions taken by State Defendants, they are legally identical to the DRE-related claims . . . [n]o new facts materially alter the standing analysis here."). At the same time, Coalition Plaintiffs provide little, if any, argument related to standing, content to merely rest on the allegations in their First Supplemental Complaint. *See* [Doc. 650 at 22] ("Under these authorities, the standing of the individual Coalition Member Plaintiffs is established by the allegations in Paragraph 202 through 208 of the First Supplemental Complaint."). Neither approach is helpful to the Court, and both convey disregard for what is the "fundamental, threshold question" in every federal case. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).

A. <u>Plaintiffs fail to demonstrate a concrete, particularized, and imminent injury.</u>

To establish an injury in fact, Plaintiffs must show their alleged injury is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

First, Curling and Coalition Plaintiffs have failed to allege a "concrete and particularized" injury, *Lujan*, 504 U.S. at 560-61, and instead seek to bootstrap BMD standing to their DRE claims. Although Curling and Coalition Plaintiffs allege a host of speculative problems with the BMDs (all of which are derivative of their past problems with DREs), they have not alleged any have occurred **in Georgia BMD elections**. *See Shelby Cnty. Advocates for Valid Elections v. Hargett*, Case No. 2:18-cv-02706-TLP-dkv, 2019 WL 4394754, at *7 (W.D. Tenn. 2019) (dismissing plaintiffs' claim for lack of standing where no evidence that upcoming elections will be compromised). Similarly, Curling and Coalition Plaintiffs' respective Complaints are devoid of any allegations that hacking, security-vulnerabilities, or other problems have been identified or exploited in Georgia's BMD voting system. Essentially, Curling and Coalition Plaintiffs' argument boils down to: (1) DREs have identified problems; (2) BMDs and

-5-

DREs are alike (disregarding the differences and clean break between the two); and, therefore (3) BMDs pose the same security risks and potential injuries as DREs. However, for standing purposes, more is required. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n. 8 ("It is the reality of the threat . . . not the plaintiff's subjective apprehensions . . . **the emotional consequences of a prior act simply are not a sufficient basis** for an injunction absent a real and immediate threat of future injury by the defendant.") (emphasis added). Moreover, Curling and Coalition Plaintiffs' contention that BMDs and DREs share the same flaws and vulnerabilities ignores the differences in the systems—differences apparent in the record that this Court must consider.

Nonetheless, taking Curling and Coalition Plaintiffs' allegations as stated, it remains "speculative whether hypothetical hackers—unidentified by Plaintiffs—will imminently target Plaintiffs' votes" in Georgia BMD elections. *Heindel v. Andino*, 359 F. Supp.3d 341, 356 (D. S.C. 2019). Just as in *Heindel*, Curling and Coalition Plaintiffs allege general problems with BMD systems and then assume these problems will occur in Georgia-conducted BMD elections. This type of projection is exactly the kind of "conjectural or hypothetical" claim that is insufficient to show injury-in-fact. *Lujan*, 504 U.S. at 560-61.

B. <u>Plaintiffs' claims are neither fairly traceable to State Defendants nor redressable by the Court.</u>

Further, Plaintiffs' alleged injuries cannot be traced to State Defendants. The traceability prong of standing requires "a causal connection between the injury and the conduct complained of[.]" *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). Curling and Coalition Plaintiffs speculative alleged injuries (election irregularities and illegal hacking concerns) are simply too attenuated to be causally connected to the complained-of conduct—use of the BMD system in Georgia elections. Indeed, using Plaintiffs' logic, any and all voter irregularities or problems would be the fault of the State, as those problems would not have arisen if the State had not implemented the "complained-of" election system.

Finally, Curling and Coalition Plaintiffs injury is not redressable. To show redressability, a plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. "Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010)

(alteration adopted and quotation marks omitted). Curling and Coalition Plaintiffs' alleged injuries would not be alleviated through their requested relief. No matter what election system Georgia employs, "the possibility of electoral fraud can never be completely eliminated . . . [.]" *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003). An immediate conversion to hand-marked paper ballots would only see the return of overvotes, undervotes, "hanging chads," and other mechanical and human errors that could negatively impact Curling and Coalition Plaintiffs' votes. *See generally Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). Indeed, redress to Plaintiffs' speculative future injury could only be had by this Court enjoining third-parties from "hacking" or "interfering" with a future election on any system—paper or otherwise.

### III. Plaintiffs' DRE Claims are now moot.

"It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. U.S*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Therefore, when an event occurs making a court's decision on an issue unnecessary, or makes the granting of effective relief impossible, the issue is moot and should not be addressed. *Id*.

Such is the case here and Plaintiffs' arguments that Defendants have waived mootness is unavailing.

First, the Court can, and in fact **must**, consider the issue of mootness. Indeed, "[i]f the court determines at *any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action." FED. R. CIV. P. 12(h)(3) (emphases added). That subject matter jurisdiction is not waivable and must be considered at any time is a fundamental maxim, because the Court loses subject matter jurisdiction over a claim if it becomes moot. *See, e.g.*, *Leedom Mgmt. Grp., Inc. v. Perlmutter*, 532 F. App'x 893, 894 (11th Cir. 2013) (dismissing claim as moot on appeal).

Plaintiffs argue that State Defendants' waived any mootness arguments because they did not move to dismiss the DRE claims based on mootness in April 2019. [Doc 650 at 8].[2] Plaintiffs' argument completely disregards what the concept of mootness is all about—timing. A claim becomes moot when "issues presented are *no longer* 'live,'" and this can

---

[2] Coalition Plaintiffs also assert that State Defendants have waived mootness arguments by not explicitly referencing Coalition Plaintiffs' Third Amended Complaint. [Doc. 650 at 7]. However, the portion of State Defendants' Motion regarding mootness references claims made in Plaintiffs' "Amended and Supplemental Complaints," generally, and references "Plaintiffs' DRE claims" generally, too. [Doc. 645-1 at 12, 15]. Regardless, the Court may consider mootness at any time and may even do so *sua sponte*. *Nat'l Adv. Co. v. City of Miami*, 402 F.3d 1329, 1331–32 (11th Cir. 2005).

happen at *any time* during the litigation. *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003) (emphasis added); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 45 (1997). By April 2019, Georgia law had been amended to require the BMD voting system, but the State had not completed the procurement. Just because State Defendants chose not to move to dismiss the DRE claims based on mootness in April, does not mean their claims cannot be dismissed now—when they are moot.

Finally, the Court is unable to grant effective relief to Plaintiffs as to their DRE claims at this juncture. The Eleventh Circuit has explained:

> Our jurisdiction is limited, by the Constitution, to 'cases' and 'controversies.'" . . . Thus, "a justiciable controversy 'must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of *specific relief through a decree of a conclusive character*, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'

*Leedom*, 532 F. App'x at 895 (emphasis added) (internal citations omitted). Here, the November 2019 Georgia elections have already passed and the only elections remaining to be conducted on DREs are a handful of run-off elections on December 3—prior to conclusion of briefing on Plaintiffs'

-10-

preliminary injunctions.[3] Thus, there is no effective relief that can now be granted for Plaintiffs' DRE claims, even on a preliminary basis.

### IV. Plaintiffs seek impermissible relief and Coalition Plaintiffs have failed to state a claim for violation of Procedural Due Process.

Curling and Coalition Plaintiffs both seek relief beyond the scope of *Ex Parte Young* and which would violate federal law. Moreover, Coalition Plaintiffs cite no authority for the proposition that a preferred method of voting is a liberty interest protected by Procedural Due Process, a claim which they have abandoned.

First, Curling Plaintiffs explicitly seek relief concerning use of the "DRE Voting System" in the "Relevant Previous Elections." *See* [Doc. 627 ¶¶ 98(a), 110, 112(a)]. Curling Plaintiffs, in their response, apparently assert that "notice relief" for past harm is available to them under *Green v. Mansour*, 474 U.S. 64 (1985). Simply put, "notice relief" for past conduct is not the type of remedy designed to prevent ongoing violations of federal law, as permitted by *Ex Parte Young*. *Id.* Since, as noted *supra*, Plaintiffs cannot obtain relief on DREs at this juncture, they are improperly seeking to

---

[3] Moreover, the possibility of a vacancy or special election conducted on DREs before 2020 is so remote and speculative that it calls into question Plaintiffs' standing to assert a DRE claim on this basis.

"adjudicate the legality of past conduct" in the Relevant **Previous** Elections. *Summit Medical Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999). This retrospective relief simply does not surpass the "minimum threshold for abrogating a state's constitutional immunity" and must be dismissed. *Id.* (quoting *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997)).

Second, in their Response, Coalition Plaintiffs ignore the exacting specificity of their requested relief. When they finally address it, Coalition Plaintiffs simply state that the Court is free to ignore their relief. [Doc. 650, pp. 10–11]. To be clear, Coalition Plaintiffs seek a mandatory injunction requiring State Defendants to: employ a certified hand-marked paper ballot system; "follow the law" regarding ballot secrecy; utilize QR-code "testing" and "fidelity"; expand a "pilot program" in "five different geographic areas of the state" using specified optical scanners; and implement audit programs of Plaintiffs' choosing. [Doc. 628, pp. 69–72]. This relief is drastically different from the relief that Plaintiffs previously sought—only enjoining an allegedly unconstitutional voting system. *See* [Doc. 226, pp. 67–68]. Instead, Coalition Plaintiffs now "seek a court order directing the precise way in which Georgia should conduct voting." *Curling v. Secretary of State of Georgia*, 761 F. App'x 927, 934 (2019). This Court must decline to become embroiled in such technical and administrative details. *Saxon v. Fielding*, 614 F.2d 78, 80 (5th

Cir. 1980); *see also Pettengill v. Putnam County R-1 Sch. Dist.*, 472 F.2d 121, 122 (8th Cir. 1973).

Third, both Plaintiffs employ the same strategy of ignorance with respect to the violation of disability protections they ask this court to impose. Again, Plaintiffs cannot dispute that under their theory of the facts and law, BMDs are unconstitutionally insecure for use by the general populace but permissible for disabled voters. In response to this predicament, Plaintiffs state the Court is free to ignore their relief in this instance as well, [Doc. 650, p. 25], or that audits make BMDs constitutionally acceptable. [Doc. 651, p. 23]. However, neither set of Plaintiffs address the reality that if an auditable BMD system is constitutionally permissible for disabled voters, the same must be true for all Georgia citizens.[4] Plaintiffs are seeking to move this Court from a realistic view of the circumstances to the position that *any* technology in voting is impermissible—but they cannot do so without attacking the right to vote of the State's most vulnerable citizens.

Finally, Coalition Plaintiffs' Response does not meaningfully rebut State Defendants' foundational arguments supporting dismissal of their

---

[4] In any event, the evidence this Court has already considered shows that Georgia is in fact one of only 5 states implementing a statewide auditing regime. Testimony of Dr. Halderman, July 26, 2019 [Tr. 166:23–167:7].

procedural due process allegations.[5] Coalition Plaintiffs still have not pointed the Court to any authority supporting the proposition that there exists a liberty or property interest in a preferred choice of voting system (here, between computer-tabulated paper ballots marked via BMDs and those marked by hand). Nor have Coalition Plaintiffs made any attempt to distinguish the Supreme Court of Georgia's decision in *Favorito v. Handel*, 285 Ga. 795, 684 S.E.2d 257 (Ga. 2009),[6] which runs directly counter to Coalition Plaintiffs' position.

## V. Curling Plaintiffs consent to dismissal of their state law declaratory judgment claim.

In response to State Defendants' Motion to Dismiss Curling Plaintiffs' improperly asserted Declaratory Judgment claim, Curling Plaintiffs state they "do not oppose dismissal of Count V[.]" [Doc. 651 at 24]. That the claim was presented and Plaintiffs readily consent to its dismissal in the face of its

---

[5] State Defendants further note that Coalition Plaintiffs have previously asserted and abandoned their Procedural Due Process and re-examination claims. [Doc. 375 at 39, n. 31].

[6] The Court previously observed that *Favorito* "is not controlling" because it addressed Georgia's DRE-based system "during the infancy of the use of DREs in Georgia." [Doc. 375 at 16, 41]. Because the Court now finds itself in the position of addressing Plaintiffs' BMD relief in the exact same posture, the Court must reconsider the application and persuasive reasoning of the Supreme Court of Georgia.

obvious legal impropriety raises questions of why it was asserted in the first instance.

Regardless, Curling Plaintiffs have now abandoned their declaratory judgment claim and the Court should readily dismiss Count V. *White v. Ga. Dept. of Motor Veh. Safety*, 2006 WL 1466254 at *1 (N.D. Ga. May 19, 2006) ("it is well-accepted in this district that the failure to respond to arguments relating to a claim constitutes abandonment of the claim"); *see also Brown v. J.P. Turner & Co.*, 2011 WL 1882522 (N.D. Ga. May 17, 2011) (Carnes, C.J.) (noting that failure to respond to legal arguments in a motion to dismiss is, in itself, grounds for the Court to rule in favor of the movant). Here, Curling Plaintiffs avoid addressing State Defendant's arguments at all—grounds for dismissal in itself—and instead summarily reveal that the claim is indeed a state law claim. [Doc. 651 at 24]. Accordingly, the claim is barred by immunity. *See* [Doc. 645-1, 28–33] (asserting the legal impropriety of Curling Plaintiffs' state law declaratory judgment claim).

Respectfully submitted this 11th day of November, 2019.

>*/s/ Vincent R. Russo*
>Vincent R. Russo
>Georgia Bar No. 242628
>vrusso@robbinsfirm.com
>Josh Belinfante
>Georgia Bar No. 047399
>jbelinfante@robbinsfirm.com

Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Kimberly Anderson
Georgia Bar No. 602807
kanderson@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250


Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678)336-7249

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINTS has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

This 11th day of November, 2019.

*/s/ Vincent R. Russo*
Vincent R. Russo

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINTS with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 11th day of November, 2019.

*/s/ Vincent Russo*
Vincent R. Russo