IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

PLAINTIFFS' REPLY IN SUPPORT OF
<u>JOINT MOTION FOR SANCTIONS</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................1

II.     ARGUMENT ...........................................................................................3

   A.   Defendants Admit They Repeatedly Misrepresented the Alleged Confidentiality
        and Uniqueness of the GEMS Databases—and Now Imply They Did So
        Deliberately ............................................................................................. 3

   B.   Defendants Continue to Repeatedly Misrepresent the Facts ................................. 4

      1.   Defendants Grossly Mischaracterize Each Side's Positions ....................... 4

      i.   Defendants Refused to Produce the GEMS Databases ................................ 5

      ii.  Plaintiffs Agreed to Robust Protections, More than Defendants Use in the
           Ordinary Course ..................................................................................... 7

      2.   Defendants' Falsehoods Generated Substantial Unnecessary Fees and Costs
           for Plaintiffs ......................................................................................... 9

      3.   Defendants Misrepresent the Significance of the GEMS Database Analysis
           and What It Yielded ............................................................................. 10

      4.   Defendants' New Claim That They Could Not Review Publicly-Available
           GEMS Databases Is False and Absurd .................................................... 12

      5.   Defendants Misrepresent the GEMS "Summary" Plaintiffs Provided *with
           Screenshots* ....................................................................................... 14

   C.   Sanctions are Necessary under the Governing Standards ................................. 17

      1.   Rule 37(a)(5) Mandates Sanctions ........................................................ 17

      2.   Rule 26(g) Mandates Sanctions ............................................................ 19

      3.   Sanctions Are Warranted under 28 U.S.C. § 1927 and the Court's Inherent
           Authority ............................................................................................ 20

      4.   Taxpayers Are Not a Proper Consideration—But They Need Not Pay the
           Sanctions in Any Event ....................................................................... 21

   D.   Plaintiffs' Fees and Costs Are Reasonable and Well-Supported ........................ 22

**1.   Plaintiffs' Counsel's Hourly Rates Are Reasonable**...................................................... 22

**2.   Plaintiffs' Counsel Expended Reasonable Hours**........................................................ 25

**3.   There Is No Basis for Aggregate Reductions** ............................................................ 28

**III.   CONCLUSION**.............................................................................................**29**

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ga. v. Barnes*,
  168 F.3d 423 (11th Cir. 1999) ............................................................................. 23

*Ali v. Pendergast & Assocs., P.C.*,
  No. 1:12-CV-02983-RWS-GGB, 2014 WL 12789644 (N.D. Ga.
  Feb. 25, 2014) ..................................................................................................... 21

*ANZ Advanced Techs., LLC v. Bush Hog, LLC*,
  No. CIV.A. 09-00228-KD-N, 2012 WL 715099 (S.D. Ala. Feb. 7,
  2012), *report and recommendation adopted*, No. CIV.A. 09-00228-
  KD-N, 2012 WL 695530 (S.D. Ala. Mar. 5, 2012) ............................................ 22

*Bartos v. Pennsylvania*,
  No. 1:08–CV–0366, 2010 WL 1816674 (M.D. Pa. May 5, 2010) ...................... 22

*Bates v. Michelin N. Am., Inc.*
  No 1:09-CV-3280-AT, 2012 WL 453233 (N.D. Ga. Jan. 13, 2012) ............ 12, 21

*Bernal v. All Am. Inv. Realty, Inc.*,
  479 F. Supp. 2d 1291 (S.D. Fla. 2007) ............................................................... 20

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................ 25

*Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
  259 F.R.D. 568 (M.D. Fla. 2009), *aff'd in relevant part per
  stipulation*, No. 6:07-cv-0222-Orl-35KRS, 2009 WL 5606058
  (M.D. Fla. Nov. 16, 2009) .................................................................................. 19

*Brooks v. Ga. State Bd. of Elections*,
  997 F.2d 857 (11th Cir. 1993) ............................................................................ 23

*Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*,
  476 F. App'x 198 (11th Cir. 2012) ..................................................................... 27

*Curling v. Kemp*,
   334 F. Supp. 3d 1303 (N.D. Ga. 2018) .................................................................17

*Dillard v. City of Greensboro*,
   213 F.3d 1347 (11th Cir. 2000) ..........................................................................25

*Draper v. Atlanta Indep. Sch. Sys.*,
   No. 1:06-CV-487-MHS, 2008 WL 11407320 (N.D. Ga. Apr. 14,
   2008) .................................................................................................................23

*Entrata, Inc. v. Yardi Systems, Inc.*,
   No. 2:15-cv-00102, 2019 WL 4059725 (D. Utah Aug. 28, 2019) .......... 25, 28, 29

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
   No. 1:09-md-2089-TCB, 2015 WL 4635729 (N.D. Ga. Aug. 3,
   2015) ............................................................................................................ 16, 28

*In re Grand Jury Investigation*,
   842 F.2d 1223 (11th Cir. 1987) ..........................................................................10

*Johnson v. Mississippi*,
   606 F.2d 635 (5th Cir. 1979) ..............................................................................21

*Lavin v. Husted*,
   764 F.3d 646 (6th Cir. 2014) ..............................................................................21

*Malautea v. Suzuki Motor Co., Ltd.*,
   987 F.2d 1536 (11th Cir. 1993) ..........................................................................22

*Norman v. Hous. Auth. of City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) ..........................................................................22

*Peer v. Lewis*,
   606 F.3d 1306 (11th Cir. 2010) ..........................................................................22

*Properties Int'l. Ltd. v. Turner*,
   706 F.2d 308 (11th Cir. 1983) ............................................................................17

*TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*,
   880 F. Supp. 1572 (N.D. Ga. 1995) ....................................................................18

*Unifi Export Sales, LLC v. Mekfir Int'l Corp.*,
  233 F.R.D. 443 (M.D.N.C. 2005)..........................................................................18

*Venator v. Interstate Res., Inc.*,
  No. CV415-086, 2016 WL 1574090 (S.D. Ga. Apr. 15, 2016) ...........................12

*Welch v. Metropolitan Life Insurance Co.*,
  480 F.3d 942 (9th Cir. 2007) ..............................................................................27

**Statutes**

28 U.S.C. § 1927 ............................................................................................ 20, 22

**Rules**

Fed. R. Civ. P. 26(g) .......................................................................... 12, 19, 20, 22

Fed. R. Civ. P. 37 .......................................................................... 17, 18, 19, 22

## I.    INTRODUCTION

Forced to admit they repeatedly misled the Court about the GEMS databases, Defendants now spin a tale of fiction that is nothing short of gaslighting given the Court lived this saga firsthand.  The actual facts of their persistent misconduct are straightforward and necessitate sanctions.

Defendants first contend that they never refused to produce the GEMS databases.  But this fabrication does not even survive their Opposition, which concedes that they insisted on producing "certain documents related to the GEMS database," not the ***databases*** themselves.  (Opp. 6 (citing Dkt. No. 416-2 at 7-8).)

Defendants then attempt to excuse their now-admitted misrepresentations to the Court that the databases were confidential and unique to Georgia by claiming that they did not want "to confirm that fact in a publicly available court document without an appropriate order from the court."  (Opp. 18.)  Not only did Defendants always have the option to—and did—***seal*** filings with the Court, but deliberately misleading the Court in an effort to maintain a public myth about the security of the Georgia election system obviously violates counsel's duties and necessitates sanctions.  Defendants also now say they did not bother to review screenshots Plaintiffs provided of publicly-available GEMS databases, which alone warrants sanctions.  They claim they relied on a "summary" Plaintiffs provided ***with the***

1

*screenshots*.  (Opp. 13.)  They falsely characterize the "summary" as inaccurate.

Defendants next misrepresent Plaintiffs' positions to try to shift blame to Plaintiffs for the extensive litigation over this dispute.  They falsely claim that Plaintiffs refused to allow their experts to speak with Mr. Beaver and that Plaintiffs insisted on public disclosure of the GEMS databases.  The record confirms that Defendants refused to allow Mr. Beaver to answer important questions from Dr. Halderman or Plaintiffs' counsel, (Dkt. Nos. 438 at 21:7-15; 570 at 24:12-25:1), and that Plaintiffs offered more robust security protocols than Defendants use in the ordinary course, which Defendants rejected.  (Dkt. Nos. 438 at 37:2-38:16; 570 at 86:15-87:2; *see also* Dkt. No. 583 at 2, Halderman Decl. ¶ 5.)  Defendants needlessly forced extensive motion practice on this Court and Plaintiffs.

Defendants then criticize Plaintiffs' fees and costs with massive, arbitrary reductions lacking any legal support as well as more misleading allegations.  For example, they complain about five hours billed to set up the (unnecessary) secure review facilities and omit the fact that much of that time was caused by their own counsel's (unnecessary) inspection of the (unnecessary) facilities.  (Opp. 33.)

Defendants' last defense is a plea for taxpayers, whom they contend must pay any sanctions.  (Opp. 22, 29-30.)  Not only does the law prohibit this as a consideration (for the obvious reason that it would allow government actors to

abuse discovery with impunity), but Defendants assume too much—the Court can require the individuals who engaged in the misconduct to pay the fees and costs.

That Defendants must misrepresent the facts to try to defend their misconduct—and are willing to do so even in the face of a sanctions motion—confirms the need for significant sanctions.  Defendants obviously still feel no compunction about misleading this Court.  That must finally come to an end, for the sake of this case and the integrity of the judicial process in all cases.

## II.   ARGUMENT

### A.   Defendants Admit They Repeatedly Misrepresented the Alleged Confidentiality and Uniqueness of the GEMS Databases—and Now Imply They Did So Deliberately

Defendants repeatedly claimed that the GEMS databases used in Georgia were unique and confidential.  (Dkt. Nos. 416 at 4;  438 at 16:12-13;  482 at 9:22-25.)  This was always untrue.  (Dkt. No. 487-3, Halderman Decl. ¶ 15 ("Every table and every field in the November 2018 databases produced by the State is also present in the 2002 Cobb County database."); *id.* ¶ 18 ("there is *nothing at all* unique to Georgia about the structure of the GEMS databases.").)  Mr. Beaver conceded this under cross-examination.  (Dkt. No. 570 at 29:2-15.)  Defendants finally do too.  (Opp. 3 ("that State Defendants misled the Court . . . was not the result of any bad faith.").)  In fact, they now imply that they deliberately

misrepresented—for "legitimate security concerns"—the fact that Georgia's

GEMS databases are not unique.  (Opp. 6.)  They brazenly claim that "declining to

confirm that *fact* in a publicly available court document" provided some sort of

unspecified "security value."  (Opp. 18 (emphasis added).)  Not only does this

ignore that the Court allowed Defendants to brief this dispute ***under seal***, no

"security concerns" can justify misleading this Court, deliberately or recklessly.

With the falsity of their claims now undisputed, sanctions are necessary.

### B.    Defendants Continue to Repeatedly Misrepresent the Facts

#### 1.    Defendants Grossly Mischaracterize Each Side's Positions

In an effort to gaslight this Court, Defendants blame Plaintiffs for the

needless, protracted litigation they forced upon the Court by misrepresenting the

parties' positions.  Faced with the admitted falsity of their repeated claims about

the GEMS databases, Defendants now retreat to this obviously false defense:

> The process in which the Court engaged was not an effort to *compel* the
> production but was instead the process to determine the reasonable
> security parameters—and those parameters were required whether the
> structure of the GEMS Databases was the same as any other database or
> not.

(Opp. 15 (emphasis in original).)  Defendants claim that "State Defendants *never*

refused to hand over the databases and Plaintiffs cannot point to anything in the

record to the contrary," (Opp. 4 (emphasis in original)), and that Plaintiffs

"insist[ed] from the outset that the GEMS Databases be publicly released," (Opp.

3). These allegations are stunningly untrue and readily debunked by the record.

And the argument that the Court and the parties would have engaged in the same

protracted litigation if Defendants had simply conceded the truth at the outset

about the structure of the GEMS databases is so absurd as to constitute bad faith.

i.  *Defendants Refused to Produce the GEMS Databases*

Defendants cite no evidence for their claim that they ***agreed*** from the start

(or at any point) to produce the GEMS ***databases***—nor could they since they

unequivocally opposed doing so repeatedly. (*See, e.g.*, Dkt. Nos. 369 at 20-21

(moving to quash subpoena to Morgan County seeking production of GEMS

databases); 416 at 4 (objecting to production of GEMS databases); 416-2

(Responses to Request Nos. 1 & 2); 420-1 at 18 (Response to Request No. 15). As

their Opposition admits, they agreed only to produce "certain documents related to

the GEMS database," not the databases themselves. (Opp. 6.) More specifically,

Defendants admit that they vaguely offered to produce some sort of "GEMS

report," not the databases or even all the data Plaintiffs needed. (Opp. 20 ("But

why wouldn't it [the ***GEMS report*** offered by Defendants] be sufficient from your

perspective?") (emphasis added); *see also* Dkt. Nos. 416 at 4-5 (describing

"alternatives to producing the GEMS database"); 416-2 (objecting to the disclosure

of the requested GEMS databases); 438 at 16:25-17:1 ("The first [alternative]

obviously was the reports."); 440 at 3 ("Defendants have already

offered . . . reports.").)  That Defendants resort to misstating their own prior

position confirms its indefensibility and the need for sanctions.

Moreover, Plaintiffs established that Defendants' vague proposal to produce

some sort of limited reports was inadequate for Plaintiffs' experts to detect

possible vulnerabilities in the databases themselves.  (Dkt. Nos. 438 at 11:12-19;

441 at 201-02, Bernhard Decl. ¶¶ 19-21; *id.* at 442, Halderman Decl. ¶ 6; *see also*

Dkt. No. 438 at 44:2-5 (regarding inadequacy of "macros").)  Defendants offered

no evidence to rebut Plaintiffs' experts.  In fact, Defendants' own counsel

acknowledged that the database structure itself was necessary for Plaintiffs'

experts' cybersecurity analysis, characterizing the structure as "the roadmap so [a

potential attacker] can easily write or more easily write malware that could infect

the system."  (Dkt. No. 438 at 36:23-37:1.)  And it was precisely that structure that

Defendants repeatedly misrepresented to Plaintiffs and the Court as confidential

and unique to Georgia.  Even now Defendants attempt to obscure this fact by

claiming that the limited GEMS-related discovery they proposed "would allow

reasonable discovery without compromising the structure of the entire database."

(Opp. 9.)  But again, "compromising the structure of the entire database" was

never a security risk since it was neither confidential nor unique.  (Dkt. Nos. 441 at

90 (deposition testimony of Mr. Merle King, the former Executive Director of

Georgia's Center for Election Systems); 487-3, Halderman Decl. ¶¶ 13-16

(providing the URL for the Cobb County database and also specifying where

Plaintiffs had previously filed screenshots of it).)

> ii.  *Plaintiffs Agreed to Robust Protections, More than*
> *Defendants Use in the Ordinary Course*

Defendants falsely claim that Plaintiffs insisted on public disclosure.  They

argue that they "were substantially justified in their reluctance to hand over crucial

election infrastructure without a required court order and without any protection."

(Opp. 17.)  They contend that it was "Plaintiffs' position that a piece of critical

infrastructure should be released without restriction." (*Id.*)  This is simply a further

effort to gaslight this Court and avoid appropriate sanctions.

Despite the apparent falsity of Defendants' repeated representations to this

Court that the GEMS databases were confidential and unique to Georgia, Plaintiffs

nonetheless proposed extensive security protections to try to resolve the dispute

and avoid the protracted, costly, distracting litigation Defendants forced on

Plaintiffs and the Court.  (Dkt. Nos. 451, 455, 460, 470.)  In fact, Plaintiffs

consistently proposed security measures ***more protective*** than those of all 159

Georgia counties.  (Dkt. Nos. 438 at 30:10-18; 451-2, Halderman Decl. ¶¶ 13-16.)

For example, Plaintiffs themselves proposed restrictions far more stringent than (a) the relaxed procedure Defendants have of relying on independent contractors to build election ballots in their own homes—a fact Defendants concealed from this Court for years, including throughout extensive briefing and Court conferences on this very dispute (Dkt. Nos. 570 at 85:2-11; 579 at 27-31; 583, Halderman Decl. at ¶ 5)—and (b) the overall Swiss-cheese like environment Defendants' own cybersecurity expert found with the Secretary of State's information technology network, including the election system (Dkt. Nos. 472-3, Payton Decl. ¶¶ 4-5; 570 at 214:2-21, 216:10-217:18 (cross-examination of Ms. Theresa Payton), 284:12-288:9 (examination by the Court); 565-01,-02, -03 (Fortalice Risk Assessments)). The full extent of the serious insecurity of that network remains unknown because Defendants, tellingly, refused to allow their own experts to examine the security of the GEMS servers.  (Dkt. Nos. 570 at 216:10-217:18, 293:7-11; 565-7 ¶¶ 27, 45 (excerpts of deposition of Dr. Michael Shamos).)  Mr. Barnes' testimony at the July 2019 hearing showed how little State Defendants actually care about securing the GEMS databases:  again, throughout 2018, the GEMS databases were programmed by independent contractors working out of their homes.

Further, Defendants' argument that Plaintiffs were unreasonable in proposing alternative security measures to those Defendants insisted on is

debunked by this Court's prior findings.  The Court found that "Defendants have

ultimately not provided practical or reasonable terms" for Plaintiffs' experts'

review of the GEMS databases.  (Dkt. No. 463 at 12-14.)  And that was even

before the Court learned that the very premise for those security terms—the

purported confidentiality and uniqueness of the GEMS databases—was false.

(Dkt. No. 571 at 89:20-21 (finding "actually nothing whatsoever unique about the

structure of the Georgia GEMS databases").)  Defendants' argument that the same

"parameters were required whether the structure of the GEMS databases was the

same as any other database or not" ignores the extraordinary time the Court and

Plaintiffs spent on those parameters due to Defendants' false claims.  (Opp. 15.)

### 2.    Defendants' Falsehoods Generated Substantial Unnecessary Fees and Costs for Plaintiffs

Defendants argue that unrelated disputes over a general protective order

somehow would have led to the same protracted litigation that their falsehoods

caused regarding the GEMS databases.  (Opp. at 1-2.)  This is nonsensical.  The

Court and the parties extensively briefed and discussed the parameters for

compelling production of the GEMS databases wholly apart from any other

disputes about the general protective order in the case.  (Dkt. Nos. 416, 420, 438,

440, 441, 446, 451, 453, July 8, 2019 Minute Order (No. 1), 455, July 8, 2019

Minute Order (No. 2), 456, 460, 463, July 9 Minute Order, 466, 470, 482, 489.)

9

Moreover, to the extent the general protective order disputes related to the GEMS databases discovery dispute, that was Defendants' doing.  For example, they insisted on defining Attorneys' Eyes Only material to include "database structure" based upon the same falsehood at the core of the GEMS databases discovery dispute.  (Dkt. No. 477 ¶ 3.)  One example illustrates the extraordinary time this wasted:  the discussion during the July 11, 2019 teleconference with the Court regarding whether Plaintiffs could split the review into two phases so that the supposedly "confidential structure" could be treated as Attorneys' Eyes Only and the data extracted from that structure could be treated as simply confidential.  (*See* Dkt. No. 482 at 4:23-5:14.)  This discussion—like the many others among the parties and the Court and the related briefing—would not have occurred had Defendants simply been candid from the start.  But recognizing that they bore the burden to support their objections to producing the GEMS databases, see *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987), Defendants resorted to misrepresentations to try to do so.  Sanctions are now necessary.

### 3.    Defendants Misrepresent the Significance of the GEMS Database Analysis and What It Yielded

Defendants claim that Plaintiffs "uncovered no malware or any other anomalies" in the GEMS databases.  (Opp. 4.)  This is false and misleading.

First, Plaintiffs did identify numerous anomalies in the GEMS databases,

including some 2,900 missing cast vote records for three counties.  (*See* Dkt. No. 597 at 3-5.)  Defendants dismissed these anomalies with self-serving declarations (Dkt. Nos. 599-2, 599-3, 599-4) that Plaintiffs have never had the opportunity to test in cross-examination.[1]  This Court is well-acquainted with how often cross-examination has yielded damaging information for Defendants, including contradicting sworn testimony.  (*See*, *e.g.*, Dkt. No. 579 at 26-31 (describing how Mr. Barnes' 2019 testimony regarding the ballot-building process was "entirely contrary" to his 2018 testimony).)  Nor were Plaintiffs given the opportunity to examine the companion GEMS databases held by the counties for fidelity, nor the memory cards and internal DRE memories to find the source of the discrepancies only partially reviewable in State Defendants' copies of the GEMS databases.

Second, Defendants are well aware that to detect malware, Plaintiffs' experts need to examine the GEMS ***servers***, not simply the databases.  (Dkt. No. 438 at 9:13-23, 11:12-12:1.)  Their own expert admits this.  (Dkt. No. 554 at 15:13-16:5.)  But Plaintiffs were forced to table discovery of the GEMS servers to first resolve the dispute over the GEMS databases, which Defendants' improperly dragged out

---

[1] One need not strain to imagine a line of questions for CES Director Mr. Michael Barnes about the source of the "misprogramming" of the Lowndes County GEMS database that went unnoticed until a voter complained.  (*See* Dkt. No. 599-3, Cox Decl. ¶ 5.)

with repeated misrepresentations.  (Dkt Nos. 441 at 2, 14-18; 446 at 2 n.2; 455 at 2.)  This deprived Plaintiffs of this critical discovery before the preliminary injunction hearing, and Defendants since have opposed any further discovery. (Dkt. No. 599.)  Defendants' refusal to allow even their own experts to examine the GEMS servers—as Dr. Shamos emphasized is necessary—has entirely thwarted this discovery and left Georgia voters with no confidence that votes cast in the current election system actually count.  (Dkt. Nos. 554 at 81:19-25; 582.)

Thus, Defendants' misconduct has been extremely prejudicial to Plaintiffs, and all other Georgia voters.  *See Bates v. Michelin N. Am., Inc.* No 1:09-CV-3280-AT, 2012 WL 453233, at *20 (N.D. Ga. Jan. 13, 2012) (finding prejudice and awarding sanctions where Defendant delayed the production of relevant documents and made repeated false representations to the Court).[2]

### 4.    Defendants' New Claim That They Could Not Review Publicly-Available GEMS Databases Is False and Absurd

Defendants have operated a GEMS-based election system for nearly 20 years.  And yet, they now claim that publicly-available GEMS databases— *identical to those they maintain*—are somehow too complicated for them to

---

[2] Sanctions still would be necessary absent prejudice because "prejudice plays no role in assessing whether a Rule 26(g) violation exists."  *Venator v. Interstate Res., Inc.*, No. CV415-086, 2016 WL 1574090, at *12 (S.D. Ga. Apr. 15, 2016).

review and compare to their own GEMS databases, including for the Chief

Information Officer of the Secretary of State, Merritt Beaver.  (Opp. 13-14.)

Defendants offer no evidence to support this claim, such as sworn testimony from

Mr. Beaver or Defendants' counsel.  It comes as no surprise that nobody was

willing to testify to this under oath given its absurdity and what it would mean—if

true—for the utter incompetence of Defendants' employees responsible for

securing Georgia elections.  The Court need not waste time with this contention.

Initially, if these databases were too complicated for Defendants even to

review, then it makes Defendants' affirmative representations to this Court and to

Plaintiffs about the alleged uniqueness of Georgia's database even more egregious.

Defendants are saying:  we had no means of determining the truth or falsity of our

representations to the Court, but we made those representations anyway.  Worse, if

understanding the structure of the databases was beyond Defendants' reach (an

alarming suggestion), then they should have accepted the sworn testimony of Mr.

King, the former CES director, who testified that the databases were not unique.

Defendants attempt to support this meritless defense by misrepresenting

Plaintiffs' counsel's statements.  They claim that "Plaintiffs readily conceded the

complexity and difficulty of the task to the Court."  (Opp. 14.)  But they then quote

Plaintiffs' counsel's remarks regarding reviewing the voluminous *data* in the

databases, not the database structure (e.g. table names).  (*Id.* (quoting Dkt. No. 482 at 13:8-12 ("we're talking about hundreds of databases with millions of lines of data")).)  As Defendants well know, confirming the public structure of the GEMS databases was a simple task.  (Suppl. Cross Decl. ¶¶ 14-16.)  This is neither "complex" nor "highly technical," as Defendants claim.  (Opp. 14.)  And Defendants never claimed it was before now.

### 5.   Defendants Misrepresent the GEMS "Summary" Plaintiffs Provided *with Screenshots*

Claiming they did not review the screenshots Plaintiffs provided of publicly-available GEMS databases before reasserting their misrepresentations, Defendants say that they relied on "a flawed summary list of table names" for a publicly-available GEMS database that Plaintiffs attached as *part* of Exhibit B to one of their filings.  (Dkt. No. 455 at 25.)  Defendants then claim:

> If Plaintiffs' summary list of table names had been prepared correctly, State Defendants would have been able to review the similarities between the publicly available GEMS Databases from Cobb County and those utilized by the State during elections.

(Opp. 13.)  Defendants again resort to an astonishingly false and absurd position.

First, the argument that Defendants would not have misrepresented the facts had the Plaintiffs "correctly" prepared the "summary" list of table names ignores the fact that, by the time Plaintiffs filed that list on July 8, 2019, (Dkt. No. 455),

Defendants had already repeatedly falsely claimed that Georgia's GEMS databases were unique.  (Dkt. Nos. 416 at 4 ("The GEMS Databases are . . . unique to the state of Georgia . . . a version not used in any other state."); 416-2 at 4-5 ("the GEMS database contains sensitive and secure information . . . ."); 438 at 16:12-13 ("Georgia has a slightly different version of a GEMS database.").)

Second, Defendants misrepresent the "summary" they now say they relied upon to the exclusion of the screenshots *included with that same document*.  That summary was not "incorrect," as Defendants claim.  (Opp. 13.)  Plaintiffs made abundantly clear that the "summary" did not contain the abbreviated table names verbatim from a publicly-available GEMS database.  Rather, Plaintiffs listed the full (not abbreviated) data field names, and explained that the "summary" was a list of "*categories* of public information contained in the GEMS databases," *to which Plaintiffs added* "[p]arenthetical note[s] regarding the purpose of the data field . . . based on . . . user manual . . . instructions."  (Dkt. No. 455 at 11, 26 n.1.)  Nothing in Exhibit B or the rest of Plaintiffs' filing characterized the list of "categories" that explicitly included explanatory "parenthetical notes" as a verbatim list of abbreviated table names as found on the tables for a one-to-one comparison to Georgia's current GEMS databases.

Moreover, Defendants gloss over the fact that *the same Exhibit B that*

contained that "summary" also included "specific screenshots that follow the list

[and] show how the data appear in the GEMS database . . . from . . . a public copy

of Cobb County's GEMS database from . . . 2002." (Dkt. No. 455 at 11, 26 n.1

(emphasis added).) Plaintiffs provided those screenshots—which Defendants

could have obtained themselves from the internet—for the very comparison they

now claim they never performed. Nothing about the list included in Exhibit B

prevented Defendants from performing *that* comparison.

Ultimately, however, even under Defendants' strained arguments, Plaintiffs

still are entitled to all the fees and costs they seek. Even if Defendants, as they

remarkably now claim, simply ignored the screenshots and other publicly-available

information that readily and unequivocally debunked the central premise for their

refusal to produce the GEMS databases and later insistence on draconian review

measures, they still would be responsible for the enormous fees and costs this

needlessly imposed on Plaintiffs, especially given Defendants' specific history of

deliberate delay, obfuscation, and lack of candor. *See In re Delta/Airtran Baggage*

*Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2015 WL 4635729, at *15-16 (N.D.

Ga. Aug. 3, 2015) (awarding monetary sanctions where defendant's discovery

practices were "ineffective, inefficient, and inept" and its "left hand ha[d] not

known what its right hand was doing."). Either this was just further delay from

Defendants, (*see*, *e.g.*, Dkt. Nos. 571 at 356:5-6 (THE COURT: "[Defendants] are responsible in their own way for their own delay."), *id.* at 377:9-14 (THE COURT: "I certainly wish the state had been more forthright with me a year ago. . . . it would have saved us time."); 579 at 152 ("Defendants have previously minimized, erased, or dodged the issues underlying this case."); *id.* at 6 (noting Defendants' pattern of "inconsistent candor with the Court about the CES/KSU hack and the security of the servers, as well as other germane subsequent voting system security issues"), or another instance of burying their heads in the sand to avoid the facts, (*Curling v. Kemp*, 334 F. Supp. 3d 1303, 1327 (N.D. Ga. 2018)).  Either scenario necessitates significant sanctions.  Plaintiffs should not be forced to bear the substantial expense of Defendants' now-admitted failings and falsehoods.

## C.    Sanctions are Necessary under the Governing Standards

### 1.    Rule 37(a)(5) Mandates Sanctions

Defendants argue that Rule 37(a)(5) sanctions are not available because Plaintiffs never moved to compel the databases and that their objections to the discovery were substantially justified.  (Opp. at 15-17.)  They are wrong.

First, "[t]here is no requirement that the opposing party move for [an] order [to compel]." *Properties Int'l. Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir. 1983); *see also Unifi Export Sales, LLC v. Mekfir Int'l Corp.*, 233 F.R.D. 443, 445-46

(M.D.N.C. 2005) ("Rule 37 does not require there to be a violation of a court order in order for the sanctions to be imposed.").

Second, awarding sanctions against Defendants here would fully serve the purposes of Rule 37.  *See TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*, 880 F. Supp. 1572, 1580 (N.D. Ga. 1995) (reciting the four purposes of compensation, compulsion of discovery, deterrence, and punishment).

Third, Defendants elevate form over substance and seek to abuse this Court's dispute resolution procedures aimed at efficiency.  Defendants forced Plaintiffs to ask this Court to ***compel*** production of the GEMS databases.  (*See supra* at Section II(B)(1).)  That Plaintiffs were required to use the Court's mandated discovery dispute process with truncated, joint briefing rather than traditional briefing on a motion to compel is immaterial.  Defendants cite no authority to the contrary.

Lastly, objections to discovery premised on an admittedly-false position that was readily debunked both by publicly-available information and materials filed with the Court are necessarily not substantially justified.  *See Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 259 F.R.D. 568, 587 (M.D. Fla. 2009) (finding no substantial justification for inadequate production and noting that "deliberate or reckless disregard of the truth can never provide substantial justification under

Rule 37."), *aff'd in relevant part per stipulation*, No. 6:07-cv-0222-Orl-35KRS, 2009 WL 5606058 (M.D. Fla. Nov. 16, 2009).  Defendants now admit that their objections were premised on false statements (in keeping with their history of unreliability in this case), and they do not dispute that objectively reckless conduct is sanctionable under Rule 37(a)(5).  Thus, even if their falsehoods were not willful, they still would not be substantially justified given Defendants claim they simply ignored information establishing their falsity.  Sanctions are mandated.

### 2.     Rule 26(g) Mandates Sanctions

Defendants attempt to escape responsibility under Rule 26(g) with the *non sequitur* that their counsel "lacked the ability to perform the comparison required." (Opp. at 20.)  Tellingly, not one counsel was willing to state this under oath or to explain why they purportedly could not perform such a simple comparison.  But that is beside the point in any event—it misapprehends their duties under Rule 26(g).  Even if they were justified in relying on Mr. Beaver's claims about the GEMS databases, they still would have a fatal problem:  they say they never provided him, or ensured he reviewed, the GEMS database screenshots that ***started on the very next page*** of Exhibit B after the "summary" in that same exhibit that he purportedly did review.  (Opp. 12-13.)  Even if Defendants were correct that they could rely on Mr. Beaver's claims for their arguments, they still would be

required to ensure he reviewed the relevant information filed with the Court (and otherwise publicly-available for that matter).  In *Bernal v. All American Investment Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007), the court sanctioned the attorney for, among other reasons, "fail[ing] properly to oversee his client's discovery efforts," as he "never knew what documents, if any, his client had reviewed in order to answer discovery requests."  *Id.* at 1295-96.  Defendants' claim that they failed to ensure Mr. Beaver reviewed information filed with the Court (for which they offer no explanation) is fatal to their defenses.  *See id.*  This was especially inappropriate given Plaintiffs made clear that the "summary" they say Mr. Beaver reviewed was ***not*** a verbatim list of abbreviated GEMS table names, but rather merely a tool intended to list the actual names of the data fields and explain the "categories" of information contained in the various GEMS tables—which were depicted in the immediately-following screenshots. Defendants do not dispute that sanctions for violating Rule 26(g) are mandatory.

### 3. Sanctions Are Warranted under 28 U.S.C. § 1927 and the Court's Inherent Authority

Grouping the last two legal standards together, Defendants rehash many of the same arguments already rebutted above and offer no new arguments.  (Opp. at 20-21.)  They do not dispute that objectively reckless conduct warrants sanctions under 28 U.S.C. § 1927 and the Court's inherent authority; instead, they again

argue that it was reasonable to "rel[y] on their expert" and on **part of** Plaintiffs'

filings.  (Opp. at 21.)  These arguments fail for the reasons already explained.  And

again, Defendants' long history of delay and inconsistent candor with the Court

provide ample support for concluding that Defendants' repeated misrepresentations

and obstruction regarding the GEMS databases were willful and in bad faith.  *See*

*Bates*, 2012 WL 453233, at *10 (rejecting the excuse of "innocent oversight" in

light of "inconsistent testimony" and "shifting representations made to the Court");

*id.* at *20-21 (finding bad faith where "delay and disruption . . . prejudiced

Plaintiffs" and "hampered [their] pursuit of a swift judicial process.").

### 4.    Taxpayers Are Not a Proper Consideration—But They Need Not Pay the Sanctions in Any Event

Defendants argue, citing no authority, that the Court should reduce

Plaintiffs' recovery to protect taxpayers.  (Opp. at 22, 29-30.)  "But consideration

of the taxpayers is an improper ground for denying or reducing an attorney's fee."

*Lavin v. Husted*, 764 F.3d 646, 651 (6th Cir. 2014) (citing *Johnson v. Mississippi*,

606 F.2d 635, 637 (5th Cir. 1979) (internal quotation marks and citations

omitted)).  In any event, the Court may award sanctions against Defendants'

attorneys so that taxpayers will not be affected.[3]  The Court's inherent authority

---

[3] *See Ali v. Pendergast & Assocs., P.C.*, No. 1:12-CV-02983-RWS-GGB, 2014 WL 12789644, at *10 (N.D. Ga. Feb. 25, 2014) (imposing sanctions on attorney

further allows it to impose sanctions on Mr. Beaver for his false and misleading testimony.[4]  Moreover, Defendants cannot invoke the taxpayers' interest after wasting tax dollars themselves with unnecessary litigation based on falsehoods.

### D.   Plaintiffs' Fees and Costs Are Reasonable and Well-Supported

#### 1.   Plaintiffs' Counsel's Hourly Rates Are Reasonable

Both Plaintiff groups filed extensive evidence showing the reasonableness of their counsel's hourly rates, based on counsel's expertise and professional experience, as well as the nature of this case.  (Dkt. Nos. 630 at 66, Remar Decl. ¶ 9; *id.* at 171-73, Rosenberg Decl. ¶¶ 49-51; 631 at 17, Cross Decl. ¶¶ 48-49.)[5]

---

under Rule 37(a)(5)); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993) (upholding sanctions jointly and severally imposed on defendants and their attorneys under Rule 26(g)); 28 U.S.C. § 1927 ("Any attorney . . . may be required by the court to satisfy **personally** the excess costs, expenses, and attorneys' fees." (emphasis added); *Peer v. Lewis*, 606 F.3d 1306, 1315-17 (11th Cir. 2010) (remanding for determination under court's inherent authority whether attorney's conduct warranted sanctions against him personally).

[4] *ANZ Advanced Techs., LLC v. Bush Hog, LLC*, No. CIV.A. 09-00228-KD-N, 2012 WL 715099, at *9 (S.D. Ala. Feb. 7, 2012) (imposing sanctions against non-party corporate officers of party), *report and recommendation adopted*, No. CIV.A. 09-00228-KD-N, 2012 WL 695530 (S.D. Ala. Mar. 5, 2012); *Bartos v. Pennsylvania*, No. 1:08–CV–0366, 2010 WL 1816674, at *4 (M.D. Pa. May 5, 2010) (imposing sanctions against non-party employees for false deposition testimony and holding that "the power of this Court to sanction misconduct by . . . non-party deponents in civil cases is beyond any serious dispute").

[5] That State Defendants' counsel receives $225 per hour on this case is "simply irrelevant" to Plaintiffs' counsel's reasonable hourly rates.  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Curling Plaintiffs also sufficiently support their request for non-local rates. Courts may award non-local rates based on testimony showing a lack of local attorneys willing and able to handle the case. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999); *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (affirming non-local rates based on affidavits). For example, in *Draper v. Atlanta Independent School System*, the plaintiff provided declarations showing that—like Plaintiffs here—he made "vigorous and multiple efforts . . . to secure and retain local counsel," but he faced hurdles because of certain attorneys' "earlier involvement in the case" and "the limited availability of lawyers who could take his case on a pro bono or contingent basis." No. 1:06-CV-487-MHS, 2008 WL 11407320, at *9, 13 (N.D. Ga. Apr. 14, 2008). Like Plaintiffs here, even well-connected attorneys were "unable" to find him local counsel. *Id.* at *13.

Curling Plaintiffs have similarly carried their burden to show a lack of local attorneys willing and able to handle this case. (Dkt. No. 631 at 445-46, Curling Decl. ¶¶ 7, 9-11 (describing vigorous efforts to secure local counsel); *id.* ¶¶ 4-6 (describing complications frustrating earlier representation by Holcomb + Ward, LLP and Steptoe & Johnson, LLP); *id.* ¶¶ 9, 12, 15 (describing limited availability of local counsel who could take a case of this size and complexity on a *pro bono*

basis); Suppl. Brown Decl. ¶¶ 12-14.)

Citing only a Google search, Defendants note that there are many Atlanta-based attorneys specializing in cyber and data security. (Opp. 26.) This argument is meritless. First, it ignores Curling Plaintiffs' extensive, diligent, but unsuccessful efforts to find willing and able attorneys in Atlanta. Curling Plaintiffs had to make these efforts after two firms previously representing them were unable to continue their representations. Second, there is no evidence that the attorneys in Defendants' Google results would have taken this case—let alone taken it *pro bono* as Curling Plaintiffs needed.[6] Third, Defendants do not contest that a large firm with substantial *pro bono* resources was essential. (Dkt. No. 631 at 445, 447, Curling Decl. ¶¶ 9, 15; Suppl. Brown Decl. ¶¶ 12-14.) Nor do they dispute the reasonableness of Morrison & Foerster rates relative to large peer firms, including prior counsel at Steptoe & Johnson.[7] Finally, Defendants' massive reductions to

---

[6] That Krevolin & Horst ("K&H") is an Atlanta firm specializing in data security litigation actually highlights why a large, non-local firm like Morrison & Foerster was Curling Plaintiffs' only real option. K&H only agreed to represent Curling Plaintiffs after receiving a commitment that Morrison & Foerster would handle the bulk of the case, which was expected to—and did—demand more work and cost than K&H could handle on their own. (Dkt. No. 631 at 447, Curling Decl. ¶ 15.)

[7] The National Law Journal Billing Report collects average published billing rates for hundreds of firms across the country. In 2017, it reported that King & Spalding LLP (a local, Atlanta-based firm comparable to Morrison & Foerster in terms of size and resources) charged $1,000 per hour for partners and $525 for associates, on average. (*See* **Exhibit C**, 2017 NLJ Billing Report.)

Curling Plaintiffs' **local counsel's** rates, (Opp. 26-27), confirm that this is really

about arbitrarily cutting Plaintiffs' recovery, not about non-local counsel rates.

Curling Plaintiffs' counsel seek the same rates they charge paying clients.

(Dkt. No. 631 at 17, Cross Decl. ¶ 48.)  What counsel "charges clients is powerful,

and perhaps the best, evidence of [their] market rate; that is most likely to be what

[they] are paid as 'determined by supply and demand.'"  *Dillard v. City of*

*Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (quoting *Blum v. Stenson*,

465 U.S. 886, 895 n.11 (1984)).  This is true even for venues where counsel does

not have an office.  *See Entrata, Inc. v. Yardi Systems, Inc.*, No. 2:15-cv-00102,

2019 WL 4059725, at *1-3 (D. Utah Aug. 28, 2019) (awarding over $2 million in

discovery sanctions in Salt Lake City at Morrison & Foerster's non-local rates).

### 2.    Plaintiffs' Counsel Expended Reasonable Hours

Defendants' attack on Plaintiffs' counsel's "billing judgment" backfires.

First, when Defendants characterize particular time entries or expenses as

"excessive," they prove Plaintiffs' point that Defendants were wrong from the

beginning to insist on review procedures that were unnecessary and draconian.  For

example, the "more than five hours spent setting up the secure facility" Defendants

object to, (Opp. 33), was in response to their demands for terms they knew were

unnecessary.  A major part of those hours was incurred due to Defendants'

counsel's unnecessary "inspection" in Washington D.C. of the facility's camera, lock, and computers.  (Dkt. No. 513 at 28:13-21.)  This was all wholly unnecessary given the now-admitted lack of confidentiality of the GEMS databases.

Second, Defendants misstate how long the GEMS dispute persisted.  (Opp. 30 (claiming it "began on June 21 . . . and effectively concluded . . . on July 9, 2019").)  Although the parties did not file a "joint discovery statement" until June 21, Defendants' sanctionable conduct began on April 29, 2019, when they first objected to producing the GEMS databases as confidential.  And Plaintiffs incurred significant fees and costs well after July 9 for various reasons, including (1) complying with the unnecessary restrictions imposed because of Defendants' false confidentiality representations, (2) creating the record that exposed Defendants' misrepresentations, and (3) litigating this Motion.

Third, Defendants propose sweeping, arbitrary reductions of Plaintiffs' counsel's rates with no supporting authority.  For example, they object that "block billing" can lead to a determination that the fee applicant failed to carry his or her burden.  (Opp. at 31.)  But Defendants exaggerate the instances of "block billing" and ignore the facts.  Had Plaintiffs' counsel known at the time that Defendants were misrepresenting the facts, they might have created a separate billing category for "time to recover later with sanctions motion."  In retrospect, the best that can be

done with "block billing" entries is to estimate the amount of time that Defendants'
misconduct wasted.  Plaintiffs did this with their Motion.  The cases Defendants
cite do not support any massive reduction for "block billing" here.

In the only case Defendants cite from the Eleventh Circuit, the result was a
mere 10% reduction in block-billed hours.  *Ceres Env't Servs., Inc. v. Colonel
McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012).  Defendants'
out-of-circuit case, *Welch v. Metropolitan Life Insurance Co.*, actually supports
Plaintiffs.  480 F.3d 942, 948 (9th Cir. 2007).  In that case, the Ninth Circuit
***vacated*** a 20% across-the-board reduction for block billing because only "barely
more than half of all hours submitted . . . were block billed.  Reducing the total
hours by 20 percent thereby effectively served as a 40 percent penalty . . . ."  *Id.*
Even a brief review of Curling Plaintiffs' time entries shows that attorneys did not
"block bill" in most entries.  For example, in one of the most hectic periods of the
GEMS dispute, the workweek from July 1 to 5, 2019, all of Morrison & Foerster's
entries involving the GEMS dispute itemize time separately for that specific
dispute, and most entries break down increments of time separately for separable
tasks.  (Dkt. No. 623-1 at 21-23.)  In fact, most of Defendants examples of "block
billing" are simply not that.  Moreover, the rationale against "block billing" that
courts have articulated in civil rights cases does not require the level of granularity

27

Defendants claim.  They cite no cases requiring that each task within each specific discovery dispute be separately itemized, nor would that be reasonable, especially where the discovery misconduct giving rise to sanctions emerges over time.

Finally, Defendants offer a string of baseless attacks on the time entries of various timekeepers.  (Opp. 32-38.)  They do nothing more than reaffirm their habitual failure to carefully read Plaintiffs' filings.  For completeness, each attack is rebutted in supplemental declarations attached hereto as **Exhibits A, B,** and **D**. (Suppl. Cross Decl. ¶¶ 3-13; Suppl. Brown Decl. ¶¶ 2-9; Marks Decl. ¶¶ 2-6.)[8]

### 3.    There Is No Basis for Aggregate Reductions

Courts have not hesitated to impose multi-million dollar sanctions for discovery abuses.  *See, e.g.*, *Delta/Airtran,* 2015 WL 4635729, at *28 (over $2.7 million); *Entrata*, 2019 WL 4059725, at *3 (over $2 million at non-local rates). The cases Defendants cite for their argument that a 90% reduction is appropriate are plainly distinguishable.  The court reduced the plaintiffs' hourly rates by 25% in *Ga. State Conf. of the NAACP v. Kemp* because it was a "relatively straightforward . . . single count statutory construction action."  Order on Fees,

---

[8] Defendants misleadingly claim that Plaintiffs have not reimbursed Defendants' travel expenses for delivering the GEMS databases to Plaintiffs' review facilities. (Opp. 12 n.1.)  Defendants omit that they have not provided any cost information for Plaintiffs to reimburse them (despite Plaintiffs' request for that information).

No. 1:17-cv-1397-TCB, Dkt. No. 52 at 7-8 (N.D. Ga. April 11, 2018).  Here, a

central theme of Defendants' Opposition is that the GEMS dispute was far from

straightforward.  They emphasize "the complex and highly technical nature of the

GEMS Databases and software" and the need for expert analyses in a "rapid"

timeframe.  (Opp. 14-15.)  *Martin v. Raffensperger* concerned a Section 1988 fee

award, and the court reduced the plaintiffs' total request by 75% because the court

did not even consider the lion's share of the requested relief.  Order on Fees, No.

1:18-cv-04776, Dkt. No. 101 at 10-11 (N.D. Ga. July 24, 2019).  Defendants do

not even try to connect the facts of those cases to this Motion, beyond a conclusory

statement that Plaintiffs are "similarly situated."  (Opp. 25.)  In short, Defendants'

efforts to eliminate nearly all the substantial fees and costs they improperly forced

on Plaintiffs with repeated falsehoods are meritless and exhibit the same lack of

good faith that precipitated this Motion.  *See Entrata*, 2019 WL 4059725, at *1-3

(emphasizing defendant's and its counsel's repeated misrepresentations regarding

prior misconduct in awarding over $2 million in sanctions for discovery abuses).

## III.   CONCLUSION

It is now undisputed that Defendants repeatedly misled this Court and

Plaintiffs about the nature of the GEMS databases through persistent false claims

of confidentiality and uniqueness.  Defendants now seek to shirk responsibility for

the substantial fees and costs those falsehoods generated for Plaintiffs through further misrepresentations that are nothing short of gaslighting.  This compounds the need for sanctions, as do Defendants' arguments—namely, that they did not know whether their repeated claims to the Court were true; that they could not determine that because GEMS databases are beyond their (including the Secretary of State's CIO, Mr. Beaver's) ability to review and understand; that in maintaining their misrepresentations they ignored screenshots filed with the Court of a publicly-available GEMS database from Cobb County readily showing their claims to be false; and that they declined to confirm that falsity for the Court once it was known because they wanted to maintain the public myth that Georgia's GEMS databases were unique.  These arguments serve only to confirm the egregious impropriety of Defendants' conduct and the need for significant sanctions.

In sum, Plaintiffs and their counsel should not be forced to absorb the substantial fees and costs Defendants' persistent falsehoods produced.  And an award of those fees and costs is needed to end Defendants' casual approach to the truth and to reinforce the critical importance of candor in proceedings such as this. Plaintiffs respectfully submit that any other result would reward Defendants' misconduct and incentivize such actions in this and other proceedings.  The Court, therefore, should grant Plaintiffs' Motion for Sanctions in full.

Respectfully submitted this 12th day of November, 2019.

| | |
|---|---|
| */s/ David D. Cross* | */s/ Halsey G. Knapp, Jr.* |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| John P. Carlin (*pro hac vice*) | GA Bar No. 425320 |
| Jane P. Bentrott (*pro hac vice*) | Adam M. Sparks |
| Robert W. Manoso (*pro hac vice*) | GA Bar No. 341578 |
| MORRISON & FOERSTER LLP | KREVOLIN & HORST, LLC |
| 2000 Pennsylvania Avenue, NW | 1201 West Peachtree Street, NW |
| Suite 6000 | Suite 3250 |
| Washington, DC 20006 | Atlanta, GA 30309 |
| (202) 887-1500 | (404) 888-9700 |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

31

_/s/ David Brody_
David Brody
John Powers
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

_Counsel for Coalition Plaintiffs_

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| |
|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** |

**Civil Action No. 1:17-CV-2989-AT**

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

_/s/ David D. Cross_
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | *Civil Action No. 1:17-CV-2989-AT* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2019, a copy of the foregoing

**PLAINTIFFS' REPLY IN SUPPORT OF JOINT MOTION FOR**

**SANCTIONS** was electronically filed with the Clerk of Court using the CM/ECF

system, which will automatically send notification of such filing to all attorneys of

record.

                                   */s/ David D. Cross*
                                    David D. Cross