# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| DONNA CURLING, *et al.,* | ) | |
| | ) | CIVIL ACTION FILE NO. |
| | ) | 1:17-CV-02989-AT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRAD RAFFENSPERGER, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MARY CAROLE COONEY, VERNETTA NURIDDIN, KATHLEEN D. RUTH, MARK WINGATE, AND AARON JOHNSON'S CORRECTED CONSOLIDATED RESPONSE TO PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES

Kaye Woodard Burwell
Georgia Bar No. 775060
Cheryl M. Ringer
Georgia Bar No. 557420
David R. Lowman
Georgia Bar No. 460298

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia  30303
(404) 612-0246
(404) 730-6324 (fax)

## <u>TABLE OF CONTENTS</u>

I.  Standard of Review ........................................................................1

II. Arguments and Citation to Authorities .............................................1

    A.  Plaintiffs Are Not Prevailing Parties Over the Fulton County
        Defendants..................................................................................2

    B.  Plaintiffs Are Not Prevailing Parties Because the Change in Use
        of DREs is a Planned Voluntary Choice.......................................3

    C.  Plaintiffs Are Not Entitled to Attorneys' Fees Against The Fulton
        County Defendants Because Plaintiffs Did Not Get Everything
        They Asked For...........................................................................5

    D.  The Fulton County Defendants Cannot Be Liable For Any Attorneys'
        Fees Because They Were Not Responsible For the Matters About
        Which Plaintiffs Complain...........................................................6

    E.  Plaintiffs' Detailed Fee and Expense Statements Are Untimely ...............10

    F.  Plaintiffs' Request for Attorneys' Fees Are Not Reasonable....................11

        1.  Plaintiffs Seek Attorneys' Fees for Excessive and Unnecessary
            Hours.................................................................................12

        2.  Plaintiffs' Requests for Fees From the Fulton County Defendants
            Are Unreasonable................................................................15

            a.  The Initial Preliminary Injunction Motion .......................16

            b.  The Appeal of the Initial Preliminary Injunction .............17

            c.  Marilyn Marks' Time ....................................................18

            d.  Redrafting and Supplementing the Complaint .................19

     e.  Discovery and Discovery Disputes...................................................20

G.  Calculating Reasonable Attorneys' Fees and Expenses Before
     Apportionment ..........................................................................................22

     1.  Reasonable Hourly Rates......................................................................22

     2.  Determining Reasonable Attorneys' Fees and Expenses .....................24

CONCLUSION .................................................................................................30

COME NOW the Members of the Fulton County Board of Registration and Elections, Mary Carole Cooney, Vernetta Nuriddin, Kathleen D. Ruth, Mark Wingate, and Aaron Johnson and respond to Plaintiffs' Motions for Attorneys' Fees and Costs by showing this Honorable Court the following:

## I.    STANDARD OF REVIEW

In an action brought under 42 U.S.C. § 1983, the court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Unless Plaintiffs fit within this definition, they are subject to the general rule in U.S. courts that requires each party in litigation to bear its own attorneys' fees and expenses. *See Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y*, 421 U.S. 240, 248, 95 S.Ct. 1612, 1616 (1975); *D'Aguanno v. Gallagher,* 50 F.3d 877, 882 (11th Cir. 1995).

## II.    ARGUMENTS AND CITATION TO AUTHORITIES

"To qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgement or settlement." *Walker v. City of Mesquite, TX*, 313 F.3d 246, 249 (5th Cir. 2002). As will be

discussed below, Plaintiffs are not prevailing parties against the members of the Fulton County BRE and, therefore, are not entitled to fees from them.

### A. Plaintiffs Are Not Prevailing Parties Over the Fulton County BRE Members.

To be a "prevailing party" as that term is contemplated in the civil rights fee shifting statute, 42 U.S.C. § 1988, one must directly benefit from the success attained in the lawsuit. *See Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566, 573 (1992) (stating that there must exist evidence that the court's judgment "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"); *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 2676 (1987) ("The real value of the judicial pronouncement – what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion – is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.") (emphasis in original); *Barnes v. Broward County Sheriff's Office*, 190 F.3d 1274, 1278 (11th Cir. 1999).

In this case, the Order on the Renewed Motion for Preliminary Injunction ("Order") did nothing to materially alter the behavior of the Fulton County BRE or their relationship with the other parties. Indeed, the Order <u>denied</u> the preliminary injunction with respect to elections taking place in 2019. Thus, the Fulton County BRE moved forward with the September 2019 and November 2019 elections as they

normally would – by using the DREs – and not the hand-marked paper ballots sought by Plaintiffs. Further, the Fulton County BRE is moving forward with their plans to not use the currently state-mandated DREs and to instead use the new state-instituted Ballot Marking Devices for elections taking place in 2020. Accordingly, it cannot be said that Plaintiffs were prevailing parties with respect to the manner in which the Fulton County BRE conducted elections after issuance of the Order. As such, as against these defendants, the Order **did not** modify the Fulton County BREs behavior or directly benefit Plaintiffs at the time the judgment was issued.

### B. Plaintiffs Are Not Prevailing Parties Because the Change in Use of DREs is a Planned Voluntary Choice.

It is well settled that a party is not the prevailing party when a change is brought about by voluntary action. In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, the U.S. Supreme Court rejected the "catalyst theory" as a basis of recovering fees and expenses. The Court held that a plaintiff who has achieved a desired outcome through a voluntary change in a defendant's conduct, is not a prevailing party entitled to recover attorneys' fees. 532 U.S. 598, 600, 121 S.Ct. 1835, 1838 (2001).

The State of Georgia undertook a lengthy process to determine what changes would be implemented statewide with respect to Georgia's voting machines. The process for moving to a new voting system began in the fall of 2017, and Chris

Harvey advised the Georgia General Assembly House of Representatives Science and Technology Committee that Georgia should aim to have a new voting system in place by the 2020 election cycle.[1] In April 2018, Secretary of State Brian Kemp established the Secure, Accessible & Fair Elections ("SAFE") Commission to study different options for Georgia's next voting system. Further, the January 10, 2019 SAFE Commission Report's first recommendation was that "Georgia should adopt a voting system with a verifiable paper vote record. Every effort should be made to implement this system statewide in time for the 2020 election." Further, the SAFE Commission Report also includes recommendations inclusive of the Order's requirements about audits, new pollbooks and paper backups of registered voter lists. *See SAFE Commission Report*, dated Jan. 10, 2019.

Hence, the record establishes that the State Defendants and the Fulton County BRE, by extension, were moving to replace DREs as early as fall 2017, and it cannot be said that Plaintiffs' lawsuit caused a corresponding alteration in the BREs actions or the legal relationship of the parties.

Further, courts have found that because of the preliminary nature of the relief that has been granted, and the requirement that the prevailing party must create a

---

[1] https://sos.ga.gov/admin/uploads/SAFE_Commission_Report_FINAL_(1-10-18).pdf

lasting change in the legal relationship between the parties, attorneys' fees are not always granted in the context of preliminary injunctions. *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010). In this case, the Order has no bearing on Fulton County's 2019 elections and only impacts the 2020 elections if the State fails to timely distribute the new election system in time for the 2020 presidential election. The Order is thusly <u>preliminary</u> and does not create a <u>lasting change</u>. Accordingly, an award of attorneys' fees to Plaintiffs' is not warranted.

### C. Plaintiffs Are Not Entitled to Attorneys' Fees Against The Members of the Fulton County BRE Because Plaintiffs Did Not Get Everything They Asked For.

Courts have found that attorneys' fees should be granted in the context of preliminary injunctions when the prevailing part receives everything that he or she asked for in the lawsuit such that the case is essentially mooted. *See Miller v. Davis*, 267 F.Supp.3d 961, 978 (E.D. Ky. 2017). But as noted above, Plaintiffs did not get everything that they asked for. Above all else, Plaintiffs requested that this Court require Defendants to cease using DREs and use paper ballots for all upcoming elections, but that is not what the Court ordered. In fact, Fulton County was allowed to use the DREs for the September 2019 and November 2019 elections. No elections are scheduled or anticipated in Fulton County before the 2020 statewide elections, which will be conducted on the new voting machines. Thus, Plaintiffs did not get all

that they asked for because they asked for hand-marked paper ballots for the 2019 elections but Fulton County BRE was permitted to continue using DREs until the end of 2019 and will likely not be required to conduct any elections using hand-marked paper ballots. Moreover, during the August 27, 2019 telephonic conference with the Court, Plaintiffs confirmed that they do not believe that the Order mooted the case. (Doc. 588).

**D. The Members of the Fulton County BRE Cannot Be Liable For Any Attorneys' Fees Because They Were Not Responsible For the Matters About Which Plaintiffs Complain.**

In *Council for Periodical Distributors Ass'ns v. Evans*, the Eleventh Circuit recognized that in certain cases an award of attorney's fees under 42 U.S.C. §1988 should not be imposed jointly and severally upon multiple defendants. 827 F.2d 1483, 1487-88 (11th Cir. 1987). "Fees can be divided according to relative culpability of the various defendants." *Id*. Here, the Court should not award any attorneys' fees against the Members of the Fulton County BRE because they have no authority over for the matters about which Plaintiffs have complained.

Plaintiffs own submissions show why no attorneys' fees should be awarded against the Fulton County BRE members. In arguing that they obtained an "excellent result", the Coalition Plaintiffs spend nine pages of their brief outlining what this Court directed the "State Defendants" to do. (Doc. 632, pp. 6-14). They extoll how

the "State Defendants were required to replace DREs", that the Court required "the State Defendants to begin using hand-marked paper ballots in pilot elections in 2019," that the "State Defendants" were directed to develop a default plan, that this Court directed the "State Defendants" to provide certain information, and directed the "State Defendants" to review certain software. *Id.* To support their claim for attorneys' fees, the Curling Plaintiffs refer to "Defendants' litigation conduct" and "Defendants' litigation tactics." (Doc. 629, pp. 6-7). But, they make no attempt to explain what unique relief they obtained from the Members of the Fulton County BRE that they could not obtain from the State Defendants.

Missing from Plaintiffs' recitations are any descriptions of unique relief obtained against the Fulton County BRE members and the need for such relief. Indeed, this Court has twice concluded that the relief Plaintiffs sought from the State Defendants would necessarily bind all counties in Georgia, whether or not any county officials were parties in this case. *Curling v. Kemp*, 334 F.Supp.3d 1303, 1318 (N.D. Ga. 2018); (Doc. 579, pp. 12-14). This Court noted an earlier decision by Judge Steve Jones in *Fair Fight Action, Inc. v. Raffensperger*, Civil Action No. 1:18-cv-5391-SCJ, in which he concluded that county election officials were not necessary parties because the Court could gain complete relief against state election officials. (Doc. 579, pp. 13-14). Plaintiffs could have obtained all of the relief they

now tout as a basis for awarding attorneys' fees without having the Members of the Fulton County BRE in this case.[2]

This Court previously recognized that Georgia law confers on the Georgia Secretary of State the primary responsibility to manage Georgia's electoral system. (Doc. 579, p.17, citing O.C.G.A. §21-2-50(b)). The Secretary of State has the statutory responsibility to "develop, program, build, and review ballots for use by counties and municipalities on voting systems in use in the state." O.C.G.A. §21-2-50(a)(15). In their Third Amended Complaint, the Coalition Plaintiffs point to actions taken by the Members of the Fulton County BRE "[w]ith the authorization of Defendants Kemp and the State Board." (Doc. 226 ¶¶135-138). This case was about State law and choices made by the State Defendants. Only from the State Defendants could Plaintiffs get the relief they now use as a basis for an award of attorneys' fees. The Fulton County BRE members were not necessary parties.

As a result, no portion of any attorneys' fees this Court may award should be imposed on the Fulton County BRE. The Members of the Fulton County BRE had no authority over the matters that were the subject of the relief granted by this Court.

---

[2] The Coalition Plaintiffs in their attorneys' fee application note their own prior filing in which they "explained that an injunction prohibiting the Secretary's use of DREs would, in effect, prohibit their statewide use because the Secretary is solely responsible for programing the DREs." (Doc. 632, p. 43).

Plaintiffs received complete relief from the State Defendants. See *Hendrickson v. Branstad*, 934 F.2d 158, 161, 164 (8th Cir. 1984) (when state policy primarily at issue, plaintiff's attorneys' fees properly allocated 90% against state defendants and 10% against county defendants); *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir. 1982) (attorneys' fee award should be allocated against state and local defendants based on relative culpability). The U.S. Supreme Court has noted that "[t]here is no cause of action against a defendant for fees absent that defendant's liability for relief on the merits." *Kentucky v. Graham*, 473 U.S. 159, 170, 105 S.Ct. 3099, 3107 (1985). Because the State Defendants had exclusive authority for the election procedures at issue, and Plaintiff could have obtained the relief at issue without the presence of the Fulton County BRE, this Court cannot reasonably assess any of the attorneys' fees at issue against the Members of the Fulton County BRE.

*Miller v. Davis*, 267 F.Supp.3d 961 (E.D. Ky. 2017), is instructive in this case. In *Miller*, a county clerk in Kentucky refused to issue marriage licenses to same-sex couples despite the holding of the U.S. Supreme Court in *Obergefell*. Litigation ensued against the county clerk, and the district court ultimately had to rule on a request for attorneys' fees by the plaintiffs. The district court assessed all of the attorneys' fees against the state defendants and none against the county defendants. *Id*. at 985-93. The district court concluded that, although the county clerk was a

9

locally-elected official, in issuing marriage licenses she exercised a power within the purview of the state government. Therefore, the district court held the state defendants solely responsible for paying those plaintiffs' attorneys' fees. *Id*. at 992-93.

Here, in conducting elections the Fulton County Defendants used voting devices and software mandated by the State Defendants and followed procedures in relevant part mandated by State law and regulation and by choices made by the State Defendants. Whatever attorneys' fees might be awarded in this case, none can reasonably be assessed against the Members of the Fulton County BRE.

### E. Plaintiffs' Detailed Fee and Expense Statements Are Untimely.

This Court allowed Plaintiffs until October 15, 2019 to files their detailed attorneys' fees and expense statements. *See* Docket Entry 629 on October 9, 2019 at 11:51p.m. But, the Coalition Plaintiffs initially filed their detailed statements on October 16 (Doc. 630) and refiled them on October 17. (Doc. 632). The Curling Plaintiffs filed their detailed statements on October 16. (Doc. 631).

The Fulton County BRE respectfully suggests that this Court should not consider Plaintiffs untimely submissions and, therefore, should reject Plaintiffs claims for attorneys' fees and expenses. This Court allowed Plaintiffs ample time. Plaintiffs make no effort to excuse their untimeliness. *See Palmyra Park Hospital,*

*Inc. v. Phoebe Putney Memorial Hospital, Inc.*, 688 F.Supp.2d 1356 (M.D. Ga. 2010) (request for attorneys' fees rejected as untimely when filed one (1) day after deadline set by rules).

### F. Plaintiffs' Requests for Attorneys' Fees Are Not Reasonable[3].

Applicants seeking an award of attorneys' fees bear the burden of substantiating the claimed fees. *ACLU of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999); *Johnson v. University College of the University of Alabama in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983); *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). An applicant cannot put on the trial court the burden of "ferreting out the relevant facts" to support an award of attorneys' fees. *Carr v. Blaser Financial Services, Inc. of Georgia*, 598 F.2d 1368, 1371 (11th Cir. 1979). A review of Plaintiffs' submissions shows that Plaintiffs have not established what would be a reasonable attorneys' fee taxable against the Members of the Fulton County BRE.

Large portions of Plaintiff's' claimed attorneys' fees cannot be fairly awarded against the Fulton County BRE. Some of those attorneys' fees were for pursuing matters exclusively involving the State Defendants. Some of the attorneys' fees at

---

[3] The members of the Fulton County BRE join in and adopt all arguments and legal authority cited by the State Defendants in their opposition brief regarding the infirmities in Plaintiffs' fee submissions.

issue relate to matters in which Plaintiffs did not succeed. Such attorneys' fees cannot be taxed against the members of the Fulton County BRE. But, Plaintiffs have given this Court no help to identify what attorneys' fees potentially are taxable against the Fulton County Defendants.

    1.  <u>Plaintiffs Seek Attorneys' Fees for Excessive and Unnecessary Hours.</u>

Without even examining the details of Plaintiffs' fee requests, it is clear that Plaintiffs are seeking fees for redundant and unnecessary hours of work. Plaintiffs determined that their case could not move forward with one Plaintiff party because of internal differences. As a result, the members of the Fulton County BRE have had to defend and respond to papers from each Plaintiff faction in this case. Thus, the nature of the parties in this case has resulted in additional, redundant and unnecessary attorney hours for Plaintiffs and Defendants. The Court will recall this case started with two attorneys, and then although there were two Plaintiff factions, we ended up with three groups of counsel, (1) counsel for the Curling Plaintiffs, (2) counsel for the Coalition Plaintiffs and (3) counsel for the individual Plaintiffs. Further, numerous attorneys have sought admission to this case via pro hac vice although the Plaintiffs were already ably and historically represented by competent counsel. It is understandable that the Court would admit any qualified counsel that Plaintiffs requested to assist in their representation. However, Plaintiffs combined

decision to "stack the deck" has resulted in a combined attorney fee request of over five million dollars. This case has a total of ten Plaintiffs' attorneys admitted pro hac vice[4] and six Georgia Plaintiffs' attorneys entered on the pleadings[5] and an additional seven attorneys for whom they seek to recover fees[6]. It is not reasonable that the Fulton County BRE should be penalized and burdened with an enormous attorneys' fee award because of the manner in which this case has been prosecuted.

Employing an excessive number of attorneys is grounds for reducing a claim for attorneys' fees. *Alexander S. v. Boyd*, 929 F.Supp. 925, 943 (D.S.C. 1995). An applicant seeking an award of attorneys' fees bears the "burden of showing that that time spent by those attorneys reflects the distinct contribution of each lawyer in the case and is the customary practice of multiple-lawyer litigation." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999). The Eleventh Circuit specifically noted that this burden "is not a make-believe burden." *Id*. On behalf of the Curling Plaintiffs, Morrison & Forrester used 13 separate time keepers, including 11

---

[4] David Cross, admitted 3/30/18; John Carlin, admitted 05/3/18; Jane Bentrott, admitted 3/30/18; Catherine Chapple, admitted 5/8/18; Robert Manoso, admitted 5/14/18; Marcie Brimer, admitted 7/29/19; Robert McQuire, admitted 12/13/17; John Powers, admitted 5/15/19; Ezra Rosenberg admitted 10/17/19; Jacob Conarck, admitted 7/22/19.

[5] Halsey Knapp, Adams Sparks, Bruce Brown, William Ney, Cary Ichter, David Brody.

[6] Jon Greenbaum, Ryan Snow, Joseph Palmore, Michael Qian, Arvind Miriyala, Cameron Tepfer and Austin Uhler.

attorneys. (Doc. 631, pp. 10-14). The Krevolin & Horst firm had four lawyers and multiple non-lawyers representing the Curling Plaintiffs. (Doc. 631, pp. 449-54). The Holcomb & Ward firm also representing the Curling Plaintiffs employed four attorneys. (Doc. 631, pp. 522-23).

The Coalition Plaintiffs seek a recovery for six primary lawyers and four supporting lawyers (Doc. 632, pp. 50-53), in addition to reimbursement for time spent by the executive director of the Coalition for Good Governance and her staff. (Doc. 632, pp. 56-57). This contrasts with the three attorneys used by the members of the Fulton County BRE. (Doc. 630, p. 27). Plaintiffs undertake no meaningful effort to explain the unique contributions of each timekeeper to Plaintiffs' claims against the Fulton County BRE members.  In fact, a review of the fee statements show duplicative entries and multiple attorneys attending hearings and depositions for the purpose of sitting and watching without contributing anything to the proceedings.

Plaintiffs attempt to minimize the fact that separate groups of Plaintiffs have litigated this case, side-by-side. If attorneys' fee awards are designed to insure that worthwhile claims are fully litigated, that policy is not advanced if multiple plaintiffs hire separate counsel to plough the same ground.

Plaintiffs undoubtedly will contend that they needed all those attorneys and

14

all of their claimed work to deal with their claims against the State Defendants. However, that merely highlights the gross inequity of seeking to impose a multi-million dollar fee award on the citizen members of the Fulton County BRE. The members of the Fulton County BRE should not be burdened with having to pay attorneys' fees incurred by Plaintiffs in litigating with the State Defendants.

2. <u>Plaintiffs' Requests for Fees From the Fulton County Defendants are Unreasonable</u>**.**

To the extent Plaintiffs are seeking attorneys' fees from the six members of the BRE, such a request is unreasonable and unfair. The Fulton County BRE members have continuously argued that the injunctive relief sought by Plaintiffs impacts all 159 county boards of registration and elections and election superintendents throughout the State of Georgia, and that they could not provide or implement all of the relief sought by Plaintiffs. Indeed most of the relief sought by the Coalition Plaintiffs was specifically requested of the Secretary of State. (Doc. 419, pp. 1-5). As such, it is unreasonable for Plaintiffs to seek attorneys' fees against the one exemplar County BRE that Plaintiffs kept in the case after dismissing the DeKalb County Defendants and the Cobb County Defendants. (Doc. 225).

Plaintiffs have made no attempt to identify attorneys' fees specifically taxable against the members of the Fulton County BRE. Their submissions refer to "Defendants" as an undifferentiated group, making no effort to distinguish the State

Defendants from the BRE members. They fail to carry the burden by dumping over 900 pages of billing statements into the record and leaving it to this Court and the Fulton County BRE to do Plaintiffs' work. Plaintiffs' submissions are inadequate to support any fee award against the Fulton County BRE members.

      a.  <u>The Initial Preliminary Injunction Motion</u>

The United States Supreme Court has held that "the most critical factor" in determining an award of attorneys' fees "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 236, 103 S.Ct. 1933, 1941 (1983). Plaintiffs' efforts were not an unalloyed success.

Plaintiffs' submissions note that a considerable amount of attorney time was spent on what Plaintiffs characterize as the "first preliminary injunction phase." The Coalition Plaintiffs assert that they spend 788 attorney hours on the first preliminary injunction. (Doc. 632, p. 27). The Morrison & Forrester lawyers representing the Curling Plaintiffs attribute 1920.75 hours to the "First PI Stage." (Doc. 631, p.4). However, this Court denied Plaintiffs' first motion for a preliminary injunction. (Doc. 309). "A computation of the hours reasonably expended should not include time spent on 'discrete and unsuccessful claims.'" *Yule v. Jones*, 766 F.Supp.2d 1333, 1342 (N.D. Ga 2010) (quoting *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir 1996)). Plaintiffs may sugarcoat that outcome by claiming that it laid a

foundation for their second motion for preliminary injunction. But, the fact is Plaintiffs lost. The members of the Fulton County BRE should not be made to pay for Plaintiffs' failures. *See Webster Greenthumb, Inc. v. Fulton County, Georgia,* 112 F.Supp.2d 1339, 1354-55 (N.D. Ga. 2000) (no attorneys' fees awarded to plaintiff for unsuccessful class certification motion).

In addition, the Coalition Plaintiffs filed a Motion for Additional Injunctive Relief (Doc. 327) that was mooted when the Court stayed the case pending the State Defendants' appeal. (Doc. 336). The Coalition Plaintiffs note this without making any reduction in their attorneys' fee claim for having filed a motion that resulted in no relief. (Doc. 632, p.34).

In rejecting Plaintiffs' first motion for preliminary injunction, this Court noted that "the parties [had] filed endless briefs on Defendants' multiple motions to dismiss and amended complaints, <u>largely due to Plaintiffs' changes in counsel</u>…." (Doc. 309, p. 32) (emphasis added). This Court has already noted a degree of wasted effort in this case. Plaintiffs do nothing to address it. The Curling Plaintiffs' fee request in the amount of $1,458,588.75 for the first preliminary injunction must therefore be denied. Similarly, the Coalition Plaintiffs' fee request includes time for preparation of the September 12, 2018 preliminary injunction hearing, all such fees must be denied as the Coalition Plaintiffs did not prevail on their motion.

b.  The Appeal of the Initial Preliminary Injunction

A part of Plaintiffs' attorneys' fee application dealt with the appeal to the United States Court of Appeals for the Eleventh Circuit. The Morrison & Forrester attorneys spent 831.25 hours on the appeal. (Doc. 631, p 6.). The Coalition Plaintiffs' attorneys also spent time on the appeal. (Doc. 632, p. 27). However, that appeal was undertaken by the State Defendants, not by the Fulton County Defendants. (Doc. 310). The attorneys' fees expended in the appeal cannot properly be charged against the Fulton County BRE. As such, the $647,370.00 in fees and $70,114.40 in expenses requested by the Curling Plaintiffs for that stage of the case are not recoverable against the Fulton County BRE. The Coalition Plaintiffs did not detail their fee request with respect to the appeal, but by extrapolation, all fees and expenses that the Coalition Plaintiffs amassed between September 13, 2018 and February 7, 2019, when the appellate court decision was issued, should be denied.

c.  Marilyn Marks' Time

The Coalition Plaintiffs' fee specification includes a request for $395,780 for "Ms. Marks' time." (Doc. 632 p. 58). Ms. Marks is neither a lawyer, nor a named expert in the case. She is merely an officer of a named Plaintiff. Coalition Plaintiffs argue that Ms. Marks and the Coalition for Good Governance should be allowed to recoup their reasonable expenses. However, in her declaration, Ms. Marks does not

provide sufficient information to determine the reasonableness of the alleged expenses. Ms. Marks fails to detail the type of work conducted by the staff members, the hourly rate paid to each staff member and the number of hours worked by each staff member. In addition, within her accounting, Ms. Marks attempts to recoup attorney's fees in the amount of $75,018.00 for attorneys Holcomb & Ward. That firm was involved in the case prior to the initial preliminary injunction. It cannot be said that the Coalition Plaintiffs prevailed from the work of these attorneys as the initial preliminary Injunction motion was denied and these attorneys withdrew long before that motion was heard. Therefore, these attorney's fees cannot be recouped as a result of the Court's ruling on the renewed Motion for Preliminary Injunction. Accordingly, Coalition Plaintiffs' request for repayment of "Ms. Marks' Time" is unsupported.

      d. Redrafting and Supplementing the Complaint

Both Plaintiff factions have on multiple occasions redrafted their Complaints in this case. Plaintiffs should not be able to recoup their fees from the Fulton County BRE because of their need to clarify or include additional allegations in their Complaint. Changes in attorneys, legal strategies and factual averments are not matters for which the Fulton County BRE should have to bear costs. To the extent that attorney hours were spent redrafting and re-honing the complaints, these are

hours which Plaintiffs' counsel should not be entitled to recoup from the Fulton County BRE. Before the Court allowed the separation of the Plaintiffs, the Complaint had already been amended twice. (Doc. 15, Doc 70). The Coalition Plaintiffs then amended the Complaint a third time (Doc. 226) and the Curling Plaintiffs amended the Complaint a third time as well. (Doc. 627). It is not reasonable that Plaintiffs should seek to saddle the members of the Fulton County BRE with costs associated with shifts in strategy and inadequate drafting.

Indeed, here, Plaintiffs admit that they spent time disagreeing amongst themselves regarding their efforts to amend. The Coalition Plaintiffs note that the attempt to prepare a Second Amended Complaint "laid bare conflicting interests among the plaintiffs." (Doc, 632, p. 30). In describing work done in the "First PI Stage", an attorney for the Curling Plaintiffs described it as including "[o]pposition to certain aspects of the Coalition's motion for leave to file Third Amended Complaint." (Doc. 631, p. 5). The Curling Plaintiffs opposed the Coalition Plaintiffs' motion to amend. (Doc. 179). The Fulton County BRE members should not be made to subsidize the Plaintiffs' fighting amongst themselves.

e. Discovery and Discovery Disputes

Plaintiffs identify time spent by their many attorneys on the "GEMS database discovery dispute" and the "Dr. Halderman malware and discovery dispute." (Doc.

631, p. 8); (Doc. 632, pp. 40-41). *See* (Docs. 451, 455). However, the Fulton County BRE members were not the propounder or the subject of that discovery or the cause of those disputes. Such attorneys' fees cannot be taxed against the Fulton County BRE.

Plaintiffs objected to certain third-party subpoenas issued by the State Defendants, and the Court struck Plaintiffs' motion to quash as not complying with the Court's rules. (Doc. 480). The Fulton County BRE was not a part of that.

More generally, the Coalition Plaintiffs highlight their discovery efforts as a basis for attorneys' fees. (Doc. 632, pp. 38-48). But, they do not argue that it was discovery needed to make out their claims against the Fulton County BRE.  Indeed, in the 11 pages of their brief describing the discovery matters for which they seek attorneys' fees, the Coalition Plaintiffs repeatedly mention the "State Defendants" and never mention the Fulton County BRE. The Curling Plaintiffs' submission refers to "depositions" and "production and review of documents" without any attempt to explain why the fees and expenses incurred in such efforts are taxable against the Fulton County Defendants. (Doc. 631, p. 8).  Not a single deposition taken by Plaintiffs' attorneys had anything to do with Fulton County.  Plaintiffs took the deposition of the Election Superintendents of Bartow, Morgan and Gwinnett counties, the State's Director for the Center for Election Systems and the State's

21

expert.  The Fulton County BRE should not be made to underwrite discovery and discovery disputes in which they had no role.

### G. Calculating Reasonable Attorneys' Fees and Expenses, Before Apportionment.

If the Court decides to apportion any part of the fees and expenses it awards against the members of the Fulton County BRE, it first must determine the amount of the reasonable attorneys' fees and expenses to be apportioned. Determining an award of attorneys' fees requires this Court to determine the number of hours reasonably expended and multiply that number of hours by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).

1.  <u>Reasonable Hourly Rates</u>.

The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988) (recognizing that satisfactory evidence that a requested hourly rate is in line with prevailing market rates necessarily must speak to rates actually billed and paid in similar lawsuits and that useful opinion evidence consists of evidence of rates historically commanded).  Plaintiffs have failed to provide evidence of rates **in similar** lawsuits

and have not even provided evidence of rates their lawyers have commanded in similar cases.[7]

Furthermore, the governing reasonable hourly rates generally are those for the jurisdiction where the case is filed. *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994). The Curling Plaintiffs chose to use a D.C. firm as their lead legal counsel. A review of the rates charged by the Morrison & Foerster attorneys compared to the rates of the Atlanta lawyers employed by the Coalition Plaintiffs shows that the Morrison & Foerster rates are approximately 40% higher than the rates of the Atlanta lawyers. *Compare* (Doc. 631, p. 18) *with* (Doc. 632, pp. 50-53). Plaintiffs have not made an adequate showing of why attorneys in the Atlanta area could not have litigated the case on their behalf. Indeed, they did find a number of local lawyers to assist them. The Coalition Plaintiffs used Atlanta counsel. *See ACLU of Georgia v. Barnes*, 168 F.3d 423, 436-38 (11th Cir. 1999) (rejecting use of New York rates as "reasonable"). Thousands of lawyers practice in Metropolitan Atlanta. That the Curling Plaintiffs approached a handful of Atlanta lawyers about representing them does not prove that Atlanta

---

[7] In *Ga. State Conf. of the NAACP v. Kemp*, Case No. 1:17-cv-1397 (N.D. Ga. April 11, 2018) Order on Fees reduced hourly rates by 25% and in *Martin v. Kemp*, Case N. 1:18-cv-04776 (N.D. Ga. July 24, 2019) Order on Fees reduced the fee application by 75%.

counsel was unavailable. (Doc. 631, pp. 445-46). Because the Curling Plaintiffs have not made an inadequate showing regarding why local representation was unavailable, the rates of the Morrison & Foerster attorneys should at a minimum be discounted by 40% so that they at least conform to the rates being sought by the Atlanta law firms.  It would be appropriate to reduce the hourly rates by an additional 24% in accordance with the fees awarded in similar election cases litigated in the Northern District of Georgia.

     2.  Determining Reasonable Attorneys' Fees and Expenses.

The submissions of Plaintiffs in support of their claim for attorneys' fees expenses are voluminous. The Eleventh Circuit previously has recognized that a district court need not pick through such a voluminous record and make an hour-by-hour analysis of such attorneys' fee requests. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). "When faced with a massive fee application, however, an hour-by-hour review is both impractical and a waste of judicial resources." *Id*. A district court can correct the problems it discovers with such voluminous submission by making across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure to calculate a reasonable attorneys' fees award. *Id*.   A reasonable hourly rate, allowed in similar cases, is 25% less than that sought by the Coalition Plaintiffs.

The Coalition Plaintiffs seek a total of $1,408,558 in fees and $415,984 in expenses. (Doc. 632, p. 58).  A rate, 25% less than that sought, is reasonable based upon similar election cases.  This reduces the Coalition Plaintiffs' fee claim to $1,056,418.50.  The Coalition Plaintiffs divide their attorney hours into different "phases" of the case. (Doc. 632, p. 27). Their attorneys spent 1,618 hours out to the total 2,693 hours in the second preliminary junction phase and the fee request submission, the only arguably "successful" phases of the case. Only 60 percent of their attorney hours were spent in those phases.

Counsel for the Coalition Plaintiffs recorded significant amounts of time for a single day without any explanation of how much time was devoted to specific tasks. *See* (Doc. 632, pp. 115-129, 141-53). The Eleventh Circuit has held that this form of "block billing" makes the time entries unreviewable. A district court cannot separate time spent on tasks where a recovery is allowed from time spent on tasks where recovery should not be allowed. Therefore "block billed" time entries can be adjusted by a percentage discount. *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 Fed. Appx. 198, 203-04 (11th Cir. 2012) (approving 10 percent reduction in attorneys' fees for block billing).  Using a reasonable discount of 10% due to block billing, the time of the Ichter Davis firm should be reduced by $15,591.20 and the time of Bruce Brown should be reduced by

25

$59,656.30. This reduces the Coalition Plaintiffs' fee claim to $981,171.  The Coalition Plaintiffs' attorneys' fees claim includes $48,514.00 for the time of Attorney William Ney. (Doc. 632, p. 58) and $340,839.15 for the time of Attorney Robert McGuire. But, a review of Mr. Ney's time records show that his time consisted almost exclusively of participating in telephone calls and reading and sending emails.  (Doc. 632, pp. 269-82)  A review of Mr. McGuire's time records show that 90% of his time was spent on telephone calls, conferences and emails. McGuire assisted in drafting the unsuccessful first motion for preliminary judgment and engaged in a few instances of reviewing the work of other seasoned counsel. Attorney McGuire's only substantive contribution was 72.23 hours spent in drafting and revising the Third Amended Complaint and 25.55 hours spend preparing the fee petition. (Doc. 632, pp.  96-106).   Duplicative, unsuccessful and non-substantive work is not recoverable.  Excluding Mr. Ney's time, and all but 97.78 hours of Mr. McGuire's time reduces the Coalition Plaintiffs' attorneys' fee claim to $809,504.10.

Discounting that amount by 40 percent reflects that only 60 percent of the Coalition Plaintiffs' attorney hours were spent on the "successful" phases of the case. This reduces the attorneys' fee request to $485,702.46. Because of the duplication between the Coalition Plaintiffs and the Curling Plaintiffs is apparent

from a comparison of their respective billing records, the claimed amount should be reduced by one half. This makes the reasonable attorneys' fee award to the Coalition Plaintiffs $242,851.23.

As to the expense request of the Coalition Plaintiffs, first, the Court should eliminate the "expense" reflecting the charges by the Coalition for Good Governance for the reasons discussed above. *Supra* pp. 18-19. (Doc. 632, p. 58). This reduces the expense amount to $20,204. Applying the same percentage reductions reflected above (reducing the claim to the percentage for the "successful" part of the case (60%) and then reducing that amount by one half to reflect duplication with the Curling Plaintiffs), the allowable expense amount is $6,062.21. Plaintiffs should not be able to recover the expenses of out of town lawyers flying to Atlanta to attend hearings and depositions, to sit and watch and not contribute anything of substance.

The Curling Plaintiffs were represented by three sets of lawyers, whose submissions must be reviewed separately.

Notwithstanding the Supreme Court's admonition in *Hensley* that fee applicants exercise billing judgment to cull hours that are excessive, redundant and unnecessary – such as when a case is overstaffed – as is the case here, Morrison & Foerster exercised no billing judgment with respect to the 14 timekeepers for whom they request that 100% of their time be counted even when that time was excessive,

duplicative or clerical in nature[8].  The Morrison & Foerster submission also divides their work into "phases." The fees claimed for the "successful" second preliminary injunction phase plus the time spent calculating the fee submission are $1,456,521.50. (Doc. 631, p. 9). As is discussed above, Morrison & Foerster hourly rates must be discounted first by 40% to bring them in line with the rates sought by Plaintiffs' Atlanta counsel, producing a fee claim of $873,912.90. A 25% reduction must be made to bring them in line with similar election cases litigated in the Northern District of Georgia.  A 10% discounting of that amount is appropriate due to the block billing practices. The submission includes entries of up to 19 hours in a single day with no breakdown of the time spent on individual tasks, making the submission impossible to review. *See* (Doc. 631, pp. 94, 119-20). A further 10% reduction is appropriate for the enormous number of timekeepers Morrison & Foerster devoted to the case, producing duplication. (Doc. 631, pp. 18-19).

---

[8] Included items that are not appropriate for compensation are items such as recruiting core team of attorneys and staff; set up database for document review; and data entry and analysis of DRE data (Doc. 631, pp. 3-4); coordinating with in-house IT to pull correspondence and load to database (p. 28); complete ECF registration (p. 36); reset ECF password  and log in (p. 39); press releases and other interactions with the press (pp. 30, 35, 55)

Applying those three discounts reduces the fee claimed to $530,902.09. Reducing that by one half to reflect duplication with the work of the Coalition Plaintiffs makes the reasonable fee award, to Morrison & Foerster, $265,451.05.

Morrison & Foerster submission claims $281,902.89 in expenses for the "successful" portion of the case. (Doc. 631, p. 9). Applying the same percentages as above (10% discount for internal duplication and a one half discount for duplication with the Coalition Plaintiffs) produces a reasonable expense request of $140,951.45. No supporting receipts were provided for meals.  Although receipts were provided for computers and a surveillance camera, there is no authority that would allow recovery for items that clearly should be covered by a law firms overhead.  (Doc. 631, pp. 291–293)   Nor should recovery be had for nights spent at luxury hotels such as the Ritz Carlton, Hay-Adams and Morrison Clark (Doc. 631, pp. 277, 294, 313).

For the services of Krevolin & Horst, LLC, the Curling Plaintiffs seek an award of $229,627.50 in attorneys' fees and $1,815.87 in expenses. However, their submission is unreviewable. Almost all detail has been redacted from the narratives of the time entries. (Doc. 631, pp. 458-77). A reader can see that something was "reviewed "or "analyzed" but the reader cannot tell what. A 50 percent reduction for such an impenetrable submission is appropriate. Reducing the fee claim by 50

percent and by a further 50 percent for duplication with the Coalition Plaintiffs, a reasonable fee is at most $57,406.88. The allowable expenses (also reduced one-half for duplication) are $907.94.

No fees should be allowed for the work of the Holcomb & Ward, LLP. Their work was all before the "successful" second preliminary injunction phase. (Doc. 631, p. 521).

## III.   CONCLUSION

Mary Carole Cooney, Vernetta Nuriddin, Kathleen D. Ruth, Mark Wingate, and Aaron Johnson, the Fulton County citizens who answered the call to serve on the Fulton County Board of Registrations and Elections,  respectfully request that the Court deny Plaintiffs' Motions for Attorneys' fees or, alternatively, deny the requests with respect to the BRE members.  If the court were to assess attorneys' fees against the members of the BRE, we request that the court apportion only 1/159 of the reasonable attorneys' fees and expenses against them since the order applies to all 159 boards of registration and elections in Georgia.

This 22nd day of November, 2019.

Respectfully submitted,

OFFICE OF THE FULTON COUNTY ATTORNEY

/s/ Cheryl M. Ringer
Cheryl M. Ringer
Georgia Bar No. 557420

David R. Lowman
Georgia Bar No. 460298

Kaye Woodard Burwell
Georgia Bar No. 775060

**OFFICE OF THE COUNTY ATTORNEY**
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia  30303
(404) 612-0246
(404) 730-6324 (fax)

## **CERTIFICATION**

The undersigned counsel hereby certifies that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B) (Times New Roman 14-point) and that the brief complies with the page length limitations in Local Rule 7.1(D).

/s/ Cheryl M. Ringer
Cheryl M. Ringer
Georgia Bar No. 557420

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing **FULTON COUNTY DEFENDANTS' CORRECTED CONSOLIDATED RESPONSE TO PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES** by means of the Court's CM/ECF system upon all counsel of record who have registered with that system.

This 22nd day of November, 2019.

/s/ Cheryl M. Ringer
Cheryl M. Ringer
Georgia Bar No. 557420

P:\CALitigation\Elections\Curling, Donna v. Kemp, Brian (Curling II) 1.17-CV-02989-AT- (DRL)\Pleadings\Drafts\11.22.19 FC Defendants
Corrected Response in Opposition to Requests for Attorney's Fees.docx