IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

**COALITION PLAINTIFFS' STATUS REPORT IN ADVANCE OF
<u>DECEMBER 6, 2019, STATUS CONFERENCE</u>**

The Coalition Plaintiffs[1] respectfully submit this Status Report stating their position on the following discussion topics noted in this Court's recent Order (Doc. 671) concerning the December 6, 2019, status conference:

**I.      ISSUES RAISED BY COALITION PLAINTIFFS**

   **1.      Implementation Issues**

The concerns and fears Coalition Plaintiffs have repeatedly expressed about the challenges facing the State in the implementation of the Dominion Voting System were borne out during the November 5, 2019, pilots in all seven counties. The Secretary's report on some of the Election Day problems describes selected

---

[1] The "Coalition Plaintiffs" are Plaintiffs Coalition for Good Governance ("Coalition"), Laura Digges, William Digges III, Megan Missett, and Ricardo Davis.

implementation issues, but fails to report on a myriad of problems occurring during the three weeks of early voting, or the seriousness of the implications for the 2020 elections. (The Secretary's Report is attached hereto as **Exhibit A**.)

Coalition Plaintiffs have collected significant evidence of problems through polling place observation and a review of available records.[2] The problems that Coalition Plaintiffs have become aware of are consistent with independent news reports of failures. (A collection of news reports is attached hereto as **Exhibit B**.) The pilots were run with considerably more resources (pollworkers, machines, managers, technicians) and far fewer voters than the upcoming, vastly larger March primary election. The experience of the pilots cannot be scaled to a statewide primary election.

Extensive contingency planning is necessary to avert voter disenfranchisement and chaotic and turnout-suppressing election experiences.

        a)       **The use of a paper pollbook backups at each precinct;**

The requested relief continues to be essential to prevent disenfranchisement of eligible voters.

---

[2] Because the Status Conference is not an evidentiary hearing, all factual assertions contained in this Status Report should be understood to be proffers of fact that Coalition Plaintiffs will be prepared to support with admissible evidence.

During the November 5, 2019, pilot BMD elections, some voters were turned away from the polling places when the electronic pollbooks were not working. Other voters were given the wrong polling place or wrongly identified as a duplicate voter because of a software problem similar to those experienced with the Diebold pollbooks. Without an updated paper pollbook back up for reference, voters' eligibility could not be determined. As requested in the Coalition Plaintiffs' Rule 59(e) Motion To Alter Or Amend The Judgment (Doc. 605) relief is required to avoid continuing disenfranchisement.

Further, Coalition Plaintiffs are collecting evidence showing that the State Defendants have not complied with the Court's Order requiring that voters be notified that they may vote a provisional ballot rather than being turned away at the polling place. (Doc. 579, at 150.)  Some voters—for one example, in the Mildred Hunter polling place in Lowndes County—were turned away without being informed of their right to vote a provisional ballot when the electronic pollbooks were not working.

> b) **The progress the State Defendants have made in developing a backup plan using hand-marked paper ballots, including the success or failure of the Cobb County pilot and the security and operational problems experienced in Cobb County with the new electronic pollbooks and scanners;**

As noted above, the Coalition Plaintiffs request a subsequent hearing to present evidence relating to what additional steps the State needs to take to ensure that it is in compliance with the Court's Order relating to the implementation of a robust back-up plan using paper ballots and an effective and safe pollbook system.

> c) **The success or failure of the six November 5, 2019 county pilot elections conducted using the new Dominion system, including the BMDs, the new electronic pollbooks, printers, scanners and other equipment and processes;**

As noted above, all the BMD equipment piloted, including in the Cobb County hand-marked paper ballot election pilot, was subject to failures, debugging issues, equipment malfunctions on a greater than anticipated scale.

Evidence should be presented to the Court in a hearing for the development of a contingency fail-safe plan and appropriate pre-election monitoring.

      **d)**     **In light of the experiences in the pilots of the pollbooks, scanners and BMDs, whether the State should be directed to have a contingency plan requiring a sufficient stock of hand-marked paper ballots and paper back up pollbooks available at every polling location for the March 2020 Presidential primaries;**

In light of the problems experienced in the recent election, the State should plan for printing of such ballots at its expense for all polling places and early voting locations, as well as the printing of updated pollbook to adjudicate electronic pollbook errors or defective operation in the polling place. Coalition Plaintiffs will request court-ordered monitoring of the implementation and contingency planning given the high risk of failure. Such plans should be developed and presented at a hearing conducted with consideration of timely implementation requirements.

      **e)**     **A more general issue relating to implementation and enforcement of the Preliminary Injunction is how these issues should be addressed (for example, through formal motion or rule nisi).**

Coalition Plaintiffs believe that after expedited discovery is complete the Court should conduct an implementation and contingency-plan hearing prior to the injunction hearing related to the BMD claims.

## II. ISSUES RAISED BY CURLING PLAINTIFFS[3]

    **1. Oral argument on the Plaintiffs' Joint Motion for Sanctions and the State Defendants' Motion to Dismiss the Plaintiffs' Amended/Supplemental Complaints;**

Coalition Plaintiffs acknowledge that the Court does not intend to address the sanctions motion and will not entertain oral argument over the motion to dismiss their First Supplemental Complaint. Coalition Plaintiffs will be prepared to respond to any questions the Court may have about the motion to dismiss.

    **2. A status conference to address the schedule for and scope of a hearing on the Plaintiffs' Motion for Preliminary Injunction targeting the BMDs and a schedule for expedited discovery on the BMD claims.**

Coalition Plaintiffs will be prepared to discuss the scheduling of a hearing on the two pending preliminary injunction motions targeting BMDs.

## III. ISSUES RAISED BY STATE DEFENDANTS

    **1. Modifications of the current Scheduling Order, entered on June 21, 2019;**

Coalition Plaintiffs agree that the Scheduling Order entered in June 2019 (Doc. 398) has been overtaken by events to some extent. However, it is Coalition Plaintiffs' position that discovery on the GEMS/DRE system is still necessary.

---

[3] The "Curling Plaintiffs" are Plaintiffs Donna Curling, Donna Price, and Jeffrey Schoenberg.

6

## 2.  Direction from the Court related to the preservation and decertification of the DRE/GEMS voting system.

No discovery has yet been conducted on the GEMS servers, the DRE machines, their memory cards, the optical scanners, or the Diebold electronic pollbooks. The security vulnerabilities of the Dominion BMD system, including the pollbooks, are very similar and in some cases identical to the GEMS system. Plaintiffs should be permitted to prove that their claims of undetected Diebold machine-related irregularities are not merely speculative, but are realistic, and are (by virtue of how they were manifested in the DRE system) fully capable of repetition in the Dominion Voting System.

For example, the anomalous 127,000 excess undervotes votes in the 2018 Lieutenant Governor's race is highly likely to be a result of defective programming or defective operations of DRE machines. The DRE-only undervote disproportionately impacted heavily African American precincts. Only a forensic analysis will be capable of providing admissible evidence showing the source of this problem—one which must be understood to determine whether the vulnerabilities in the Dominion Voting System can be mitigated to prevent recurrence.

As another example, the Diebold election pollbook "software glitch" that disenfranchised some voters by causing the pollbook to send them to the wrong

7

precincts in prior elections also occurred in the pilot program pollbooks during early voting, demonstrating again the need to determine the source of the recurring problems in order to prevent repetition. Defendants have stated that such problems could not be carried over to the new system, yet these issues are recurring.

Further, the Dominion servers, scanners and pollbooks are neither superior nor more functional than the Diebold system, and it doubtful that all components can be delivered, installed, and debugged prior to the January deadline, in any event. Destruction of the old equipment prior to repeated satisfactory use of the yet-to-be implemented Dominion system could end up undermining the relief that the Court has granted.

The following brief history of dealings between the parties about the preservation issue shows why this Court's emphatic reiteration of the Defendants' preservation obligations is urgently required:

On November 25, 2019, this Court issued an Order regarding, among other things, the State Defendants' continuing obligations to preserve DREs and DRE-related equipment and electronic records as the State converts from DREs to BMDs.  The Order contained the following language:

> State Defendants have represented that as the BMDs are deployed, DREs and the existing GEMS components will be removed from counties and preserved by the State and stored by a vendor. (Doc. 616 at 4.) Consistent with this

8

> representation, the Court **ORDERS** the State Defendants to preserve all GEMS servers, DREs, memory cards, AccuVote scanners, and Express Poll books until further order of the Court in the event a forensic examination is deemed necessary at some point for purposes of this litigation.

Although this is hardly the first time the Court (and various Plaintiffs) have admonished the State Defendants to mind their preservation obligations, the Coalition Plaintiffs were immediately and justifiably concerned with the State Defendants' apparent failure to comply once again. That concern arose in large part from a document produced to the Coalition by Morgan County pursuant to an Open Records Request. The document, captioned "Questions and Answers from Regions Call October 30, 2019," addresses the subject of what is to happen to DRE equipment after the installation of BMDs. Apparently, the State has been instructing the counties as follows:

| Can we keep equipment | Yes, but you will have to destroy them and pay for that on your own. We are willing to take the equipment and destroy it for free. |

Upon seeing this declaration that the State intended to destroy machines and authorized counties to do the same, on November 26, 2019, counsel for the Coalition sent an email message to counsel for the State Defendants and sought

9

information to assist in making a determination as to whether this matter needed to be brought to the attention of the Court. A true and correct copy of said email is attached hereto as **Exhibit C**. Specifically, the Coalition requested that the State Defendants provide it with the details of the arrangement between the State and its contractor, Premiere Surplus, an equipment recycler, the entity that would be collecting the DRE equipment. The Coalition also presented the following questions to the State Defendants so that the parties could discuss the matter:

1. What preservation instructions have been given to the contractor?
2. What preservation instructions have been given to County officials?
3. What electronic records relating to, and equipment used in the elections since July 3, 2017, have not been preserved?
4. What is the location of the contractor's storage of the equipment?
5. What records of the inventory of retired election equipment is being maintained, and who maintains it?
6. Has the contractor disposed of or destroyed any of the equipment or related electronic records, including internal memories of the DREs or hard drives of the servers?

In response, the State Defendants' counsel, Mr. Russo, wrote the following the same day:

> Thanks for your email and providing the Q&A document from October 30, 2019. To our knowledge, none of the old voting equipment has been destroyed. Additionally, while the particular Q&A that you referenced has limited context, there is no indication that any voting equipment has been destroyed. Regardless, we think the Court's involvement would be helpful and plan to raise it in State Defendants' response to Plaintiffs' Request for Status Conference. Please let us know if you would like to discuss this further.

Of course, Mr. Russo's response answers none of the questions posed by the Coalition Plaintiffs' counsel. Later that day, lead counsel for the Curling Plaintiffs, Mr. Cross, wrote to Mr. Russo:

> Can you please specifically identify who is encompassed within "our" in the phrase "to our knowledge" below? Is that, for example, just the outside counsel for your clients, does it include in-house counsel such as Mr. Germany, does it include non-lawyer employees of your clients such as Mr. Beaver and Mr. Harvey, etc? In other words, who's knowledge are you representing here? I ask because it's important to clarify whether you're saying that only the outside counsel are not aware of any destruction or if you're representing that your clients also are not aware and that you've confirmed this with them through your own due diligence with potentially knowledgeable employees and agents.

Mr. Ichter soon thereafter echoed Mr. Cross' questions. Although he closed his email with the feigned cordiality of inviting further discussion on the matter, Mr. Russo has utterly ignored the questions regarding whose knowledge he was reporting on and the scope of the representations he could make regarding the

11

destruction of equipment. Obviously, a representation that outside counsel is not personally aware of the state's destruction of evidence sheds little light on the situation.

As promised, however, the State Defendants did raise the subject of their preservation obligations in their Request for Status Conference. Attached to the Request was an Official Election Bulletin dated November 27, 2019, directed to all County Election Officials and County Registrars. A copy of said Bulletin has been docketed as Doc. 669-1 and is attached hereto for convenience as **Exhibit D**. The Bulletin confirms the Secretary of State's intention to take custody "of all components of the DRE voting system…." The Bulletin also identifies Premier as the contractor who will take custody of the equipment. The Bulletin confirms that inventory lists of the equipment are being prepared and submitted to the Secretary of State's office, which will, in turn, turn inventory lists over to the Department of Administrative Services and then to Premier.

Undeterred, upon receiving the Request and the Bulletin, the Coalition Plaintiffs asked that the State Defendants for the following:

> a list of any and all equipment and electronic records that have been modified, altered, or destroyed by the State's contractor, Premier Surplus, or any person. We also request a copy of the State's contract with Premier Surplus. We have seen many records that show the counties have been told they "can destroy" equipment

>and others that say the "contractor is destroying" equipment. So, we expect there are documents that reflect that activity.

The Coalition Plaintiffs asked that the requested materials be made available and that the State Defendants agree to produce the same ahead of the hearing set for December 6, 2019, "so that we can avoid having to ask the Court to compel compliance with these requests…."

For too long the State Defendants have hidden spoliation of evidence and other misconduct behind terse messages and discourteous evasions. The Coalition Plaintiffs request that the Court direct the State Defendants to respond to the questions posed in the November 26, 2019, email and produce the inventories and Premier contract that has been requested.

Respectfully submitted this 5th day of December, 2019.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

*/s/ John Powers*
John Powers
David Brody
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300

*Counsel for Coalition Plaintiffs*

14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** <br> **Plaintiffs,** <br><br> **v.** <br><br> **BRAD RAFFENSPERGER , ET AL.,** <br> **Defendants.** | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2019, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III

16