# EXHIBIT A

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD, CHAPTER 183-1-6-.02 (6) And 183-1-6-.02 (7) And *RULES OF STATE ELECTION BOARD* AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to post an SEB rule, Rule 183-1-6-.02 (6) and Rule 183-1-6-.02 (7) *Rules for Voter Registration by Private* Entities (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed new rule and a synopsis of the proposed rule, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list.  A copy of this notice, an exact copy of the proposed rule amendment, and a synopsis of the proposed rule amendment may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334.  These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board.  Copies may also be requested by contacting the Elections Division at 404-656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held on:
To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held on:

January 22, 2020
9:00 a.m.
2 Martin Luther King Jr. Dr. SE
18th Floor, West Tower
Room 1816
Atlanta, GA 30334

At the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing.  Oral statements should be concise and will be limited to 3 minutes per person. Additional comments should be presented in writing.  Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before January 13, 2020 to the address below.  Written comments must be received on or before January 13, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334or by email to jshannon@sos.ga.gov.

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on January 22, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

This notice is given in compliance with O.C.G.A. §50-13-4.

This 19th day of December, 2019.

Brad Raffensperger
Chairman, State Elections Board

Posted:  December 19, 2019

## SYNOPSIS OF THE PROPOSED RULE OF THE
## STATE ELECTIONS BOARD, CHAPTER 183-1-, *RULES OF STATE ELECTION BOARD*, RULE 183-1-6-.02 (6) And *183-1-6-.02 (7)*

Purpose:  Intent and Purpose. These rules are promulgated pursuant to the authority granted to the State Election Board by Georgia Laws 1984, p. 1430, (O.C.G.A. Section 21-2-215(f)) and by Georgia Laws 1968, p. 862, (O.C.G.A. Section 21-2-31)). It is the intent and purpose of the rule to establish reasonable, necessary, and uniform rules and regulations to carry out the responsibilities of the State of Georgia with respect to the registration of voters in Georgia.

Main Features:  The main features are to require third-party voter registration groups to inform applicants that they are required to list their Georgia driver's license or identification card number on their voter registration application if they have one and prohibit third-party voter registrations groups from telling applicants that they do not have to list their driver's license number if they have one, to instruct an applicant to contact their county board of registrars if they have not received notification of the disposition of the application within two weeks of submitting the application, and to limit the prohibition on voter registration activities in certain places.

## DIFFERENCES BETWEEN THE EXISTING RULE AND THE PROPOSED
## AMENDMENTS OF THE STATE ELECTION BOARD, *RULES OF STATE ELECTION BOARD*, RULE 183-1-6-.02 (6) And 183-1-6-.02 (7)

NOTE: Struck through text is proposed to be deleted. Underlined text is proposed to be added.

### RULE 183-1-6-.02 (6)—Required Activities

**(6) Required Activities.** While engaging in organized voter registration activity within this state, a private entity shall:

  (a)  Advise each applicant that such applicant has the option to return his or her voter registration application personally to the appropriate board of registrars or to the Secretary of State or to permit the private entity to return it on the applicant's behalf;

  (b)  Inform all applicants that they are not officially registered to vote until their eligibility has been determined by the appropriate board of registrars and that, if the applicant has not received notification of the disposition of the application within <u>two</u> ~~three to four~~ weeks of submitting the application, the applicant should contact the appropriate board of registrars to determine if such applicant's eligibility has been determined and the applicant's name entered on the official list of electors;

(c)   Inform all applicants that, if they are registering to vote for the first time in the jurisdiction by mail or through a private entity, they must present current and valid identification either when registering to vote by mail or through a private entity or when voting for the first time after registering to vote by mail or through a private entity;

(d)   Inform all applicants that they are required to:

   (1) List their Georgia driver's license of Georgia state issued ID number if one has been issue;
   (2) List the last four digits of their social security number if the applicants have not been issued a Georgia driver's license or Georgia state issued ID; and
   (3)  Indicate on the form that they do not have a Georgia driver's, Georgia state issued ID, or social security if none of the foregoing have been issued;

(d e) Inform all Georgia applicants of the availability of an online registration status check and polling place locator service on the Secretary of State's website and encourage all applicants to access it in advance of a primary or election day to verify their registration status and correct polling place; and

(e f) Inform all applicants of their right, under certain circumstances, to cast a provisional ballot in the event that their names do not appear on the official list of electors at the polls.

For purposes of compliance with the notice provisions provided in this paragraph, it shall be sufficient for the private entity either to post such notices in a conspicuous location at any fixed registration site or to provide such notices in written form to the applicant in a brochure, flyer, or other similar manner at the time of application. The Secretary of State may design and make available to private entities an appropriate model form that includes all required notices pursuant to this paragraph.


**RULE 183-1-6-.02 (7)—Prohibited Activities**


(7)   **Prohibited Activities.** While engaging in voter registration programs within Georgia, a private entity shall not:

   (a)   Represent to any person that the private entity is a representative of the Secretary of State or a board of registrars authorized by law to receive voter registration applications in person;

   (b)   Make any statement to an applicant or take any action that the private entity knows or reasonably should know would discourage a qualified applicant from registering to vote;

(c)  Refuse to accept and transmit a properly completed and contemporaneously dated voter registration application from any qualified individual;

(d)  Be inebriated or otherwise impaired by drugs, alcohol, or other substances;

(e)  Conduct voter registration activities at locations where the private entity knows that illegal or criminal activities are being conducted <u>near the voter registration activities;</u>

(f)  Accept a completed registration application from the applicant unless such application has been sealed by the application, without a signed acknowledgement from the applicant that the applicant willingly and knowingly provided the unsealed application to the private entity;

(g)  Copy a completed registration application without the express, written permission of the applicant;

(h)  Conduct voter registration activities in places where <u>the primary purpose of that place is the sale and consumption</u> alcoholic beverages are sold and consumed on the same premises; and;

   (i)  <u>Tell applicants that they did not have to their Georgia driver's license or identification card number on the voter registration application if the applicant has been issued a Georgia driver's license or identification card.</u>

Authority: O.C.G.A. § 21-2-31

## **COPY OF THE PROPOSED NEW RULE**

**RULE 183-1-6-.02 (6)—Required Activities**

**(6) Required Activities.** While engaging in organized voter registration activity within this state, a private entity shall:

(a)  Advise each applicant that such applicant has the option to return his or her voter registration application personally to the appropriate board of registrars or to the Secretary of State or to permit the private entity to return it on the applicant's behalf;

(b)  Inform all applicants that they are not officially registered to vote until their eligibility has been determined by the appropriate board of registrars and that, if the applicant has not received notification of the disposition of the application within two weeks of submitting the application, the applicant should contact the appropriate board of registrars to

determine if such applicant's eligibility has been determined and the applicant's name entered on the official list of electors;

(c)   Inform all applicants that, if they are registering to vote for the first time in the jurisdiction by mail or through a private entity, they must present current and valid identification either when registering to vote by mail or through a private entity or when voting for the first time after registering to vote by mail or through a private entity;

(d)   Inform all applicants that they are required to:

   (1)   List their Georgia driver's license of Georgia state issued ID number if one has been issue;
   (2)   List the last four digits of their social security number if the applicants have not been issued a Georgia driver's license or Georgia state issued ID; and
   (3)   Indicate on the form that they do not have a Georgia driver's, Georgia state issued ID, or social security if none of the foregoing have been issued;

(e) Inform all Georgia applicants of the availability of an online registration status check and polling place locator service on the Secretary of State's website and encourage all applicants to access it in advance of a primary or election day to verify their registration status and correct polling place; and

(f) Inform all applicants of their right, under certain circumstances, to cast a provisional ballot in the event that their names do not appear on the official list of electors at the polls.

For purposes of compliance with the notice provisions provided in this paragraph, it shall be sufficient for the private entity either to post such notices in a conspicuous location at any fixed registration site or to provide such notices in written form to the applicant in a brochure, flyer, or other similar manner at the time of application. The Secretary of State may design and make available to private entities an appropriate model form that includes all required notices pursuant to this paragraph.

## RULE 183-1-6-.02 (7)—Prohibited Activities

(7)   **Prohibited Activities.** While engaging in voter registration programs within Georgia, a private entity shall not:

   (a)   Represent to any person that the private entity is a representative of the Secretary of State or a board of registrars authorized by law to receive voter registration applications in person;

(b) Make any statement to an applicant or take any action that the private entity knows or reasonably should know would discourage a qualified applicant from registering to vote;

(c) Refuse to accept and transmit a properly completed and contemporaneously dated voter registration application from any qualified individual;

(d) Be inebriated or otherwise impaired by drugs, alcohol, or other substances;

(e) Conduct voter registration activities at locations where the private entity knows that illegal or criminal activities are being conducted near the voter registration activities;

(f) Accept a completed registration application from the applicant unless such application has been sealed by the application, without a signed acknowledgement from the applicant that the applicant willingly and knowingly provided the unsealed application to the private entity;

(g) Copy a completed registration application without the express, written permission of the applicant;

(h)  Conduct voter registration activities in places where the primary purpose of that place is the sale and consumption alcoholic beverages; and

(i)   Tell applicants that they did not have to their Georgia driver's license or identification card number on the voter registration application if the applicant has been issued a Georgia driver's license or identification card.

Authority: O.C.G.A. §21-2-31

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD, CHAPTER 183-1-12, *RULES OF STATE ELECTION BOARD*, RULE 183-1-12-.01 THROUGH 183-1-12-.19 *VOTING MACHINES – VOTE RECORDERS* AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to post SEB rule, Rule 183-1-12-.01 through 183-1-12-.19 *Voting Machines – Vote Recorders* (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed new rule and a synopsis of the proposed rule, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list.  A copy of this notice, an exact copy of the proposed rule amendment, and a synopsis of the proposed rule amendment may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334.  These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board.  Copies may also be requested by contacting the Elections Division at 404-656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held on:

January 22, 2020

9:00 a.m.

2 Martin Luther King Jr. Dr. SE

18th Floor, West Tower

Room 1816

Atlanta, GA 30334

At the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing.  Oral statements should be concise and will be limited to 3 minutes per person. Additional comments should be presented in writing.  Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before January 13, 2020 to the address below.  Written comments must be received on or before January 13, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334 or by email to jshannon@sos.ga.gov.

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on January 22, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

This notice is given in compliance with O.C.G.A. §50-13-4.

This 19th day of December, 2019.

Brad Raffensperger
Chairman, State Elections Board

Posted:  December 19, 2019

**SYNOPSIS OF THE PROPOSED RULE OF THE
STATE ELECTIONS BOARD, CHAPTER 183-1-12,** *RULES OF STATE
ELECTION BOARD***, RULE 183-1-12-.01 THROUGH 183-1-12-.19** *VOTING
MACHINES – VOTE RECORDERS*

Purpose:  The purpose of the revisions to rule is to clarify and define the procedures and requirements of maintaining, storing, transporting, testing, preparing, and handling the components of the voting systems before, during, and after Election Day.

Main Features:  The main feature of the revisions to this rule are updates to reflect changes in Georgia law and the move to a new voting system. The rule clarifies that voting in Georgia, beginning with the 2020 Presidential Preference Primary, will take place on paper ballots primarily marked by electronic ballot markers. The rule updates definitions, storage and security requirements, rules for transporting equipment and ballots to and from the polls, and the setup of polling places. The rule also updates provisional ballot and electronic poll book procedures.

**DIFFERENCES BETWEEN THE EXISTING RULE AND THE PROPOSED
AMENDMENTS OF THE STATE ELECTION BOARD, CHAPTER 183-1-12,**
*RULES OF STATE ELECTION BOARD***, RULE 183-1-12-.01 THROUGH 183-1-12-
.19** *VOTING MACHINES – VODTE RECORDERS*

NOTE: Struck through text is proposed to be deleted.  Underlined text is proposed to be added.

**CHAPTER 183-1-12**
~~**VOTING MACHINES – VOTE RECORDERS**~~
**PREPARATION FOR AND CONDUCT OF PRIMARIES AND ELECTIONS**

**Rule 183-1-12-.01 Conduct of Elections**

1. Beginning with the ~~November 2002 General Election~~ <u>2020 Presidential Preference Primary</u>, all federal, state, and county general primaries and elections, special primaries and elections, and referendums in the State of Georgia shall be conducted <u>via an Optical Scanning Voting System as defined by O.C.G.A. 21-2-1(19.1). Voting at the polls, including both Election Day and absentee-in-person voting shall be conducted via ballots marked by electronic ballot markers and tabulated by ballot scanners. The electronic ballot markers and ballot scanners shall be supplied by the Secretary of State or purchased by the counties with the authorization of the Secretary of State. Absentee-by-mail voting shall also be conducted through the use of an optical scanning voting system.</u>  ~~at the polls through the use of direct recording electronic (DRE) voting units supplied by the Secretary of State or purchased by the counties with the authorization of the Secretary of State. In addition, absentee balloting shall be conducted through the use of optical scan ballots which shall be tabulated on optical scan vote tabulation systems furnished by the Secretary of State or purchased by the counties with the authorization of the Secretary of State; provided, however, that the use of direct recording electronic (DRE)~~

~~voting units is authorized by the Secretary of State for persons desiring to vote by absentee~~
~~ballot in person.~~

2. The Superintendent shall cause every polling place and advance voting location to have a sufficient number of blank paper ballots that can be marked by pen available for use in the event of emergency. The election superintendent shall also be prepared to resupply polling places with emergency paper ballots in needed ballot styles in a timely manner while voting is occurring so that polling places do not run out of emergency paper ballots.

Authority: O.C.G.A. §§ 21-2-1, 21-2-31

**Rule 183-1-12-.02 Definitions ~~Direct Recording Electronic Voting Equipment~~**

(1) As used in this rule, the term:

(a) "Ballot" shall have the meaning set forth in O.C.G.A. § 21-2-2.

(b) "Ballot scanner" shall have the meaning set forth in O.C.G.A. § 21-2-2.

(c) "Ballot Style" shall mean the specific offices, candidates, and questions displayed on an electronic ballot marker or paper ballot for voters according to their assigned precinct.

(d) "Electronic ballot marker" shall have the meaning set forth in O.C.G.A. § 21-2-2.

(e) "Election management system" is an electronic system that contains databases for elections, allows for the creation of ballots, generates ballot scanner memory cards, and computes tabulated results, amongst performing other election functions.

(f) "Electronic poll book" shall mean an electronic device that contains a list registered voters with sufficient information to look up voter, check them in, and encode voter access cards that bring up the correct ballot on an electronic ballot marker.

(g) "Election superintendent" or "superintendent" means a county board of elections and registrations, a county board of elections, a judge of the probate court, or an elections supervisor or director so designated by a county board or judge of the probate court. For municipal elections, the term shall include the municipal counterparts set forth in O.C.G.A. § 21-2-2.

(h) "Enclosed space" shall mean that area within a polling place enclosed with a guardrail or barrier closing the inner portion of such area so that only such persons as are inside such guardrail or barrier can approach within six feet

of the ballot box, voting compartments, voting booths, voting machines, electronic ballot markers, or ballot scanners.

(i)  "Opening of the Polls" shall mean the commencement of voting in a particular primary, election, or runoff. Opening of the polls does not refer to the unlocking or opening of the doors of the polling place.  Similarly, the term "Closing of the Polls" shall mean the cessation of voting in a particular primary, election, or runoff and not the locking or closing of the doors of the polling place.

(j)  "Poll officer" shall have the meaning set forth in O.C.G.A.  § 21-2-2.

(k)  "Polling place" shall have the meaning set forth in O.C.G.A.  § 21-2-2.

(l)  "Precinct" shall have the meaning set forth in O.C.G.A.  § 21-2-2.

(m) "Voter Access Card" shall mean the electronic card issued to a voter which is inserted into an electronic ballot marker to bring up the voter's correct ballot.

(n) "Zero Tape" shall mean a tape printed out by a ballot scanner unit which shows that no votes have been tabulated by the scanner for that election.

(o) "Voting system" or "voting system components" shall include electronic ballot markers, printers, ballot scanners, election management systems, electronic poll books, and voter access cards.

Authority: O.C.G.A. §§ 21-2-2, 21-2-31


(1)    Definitions.
As used in this rule, the term:
(a)    "Assist", assisted","assisting", or "assistance" means the act of marking a voter registration application, application for absentee ballot, or ballot on behalf of a voter who is unable to read the English language or has a disability which renders him or her unable to see or mark the voter registration application, application for absentee ballot, or ballot or operate the voting equipment, or to enter the voting compartment or booth unaccompanied, in the manner personally requested and communicated by such voter. This definition will apply equally to Code Sections 21-2-322, 21-2-365, 21-2-379.1, 21-2-384, 21-2-385, 21-2-385.1, 21-2-400, 21-2-402, 21-2-409, 21-2-409.1, 21-2-413, 21-2-456, 21-2-500, 21-2-568, 21-2-579, 21-2-587, 21-2-590, 21-2-591, 21-2-592.
(b)    "Ballot" shall mean the offices, candidates, and questions to be submitted to the voters at a primary, election, or runoff for each county or municipality.
(c)    "Ballot Encoder Device" shall mean the electronic device by which the poll officers program the voter access card to authorize the voter to vote on the DRE units.

(d)      "Ballot Style" shall mean the presentation of the offices, candidates, and questions to be submitted to the voters at a primary, election, or runoff on a DRE unit that contains only the offices and questions for the voters of specified districts within the precinct.

(e)      "Counter" shall mean the registers on each DRE unit which increment by one each time a vote is cast on the unit. The "election counter" is the register which is reset for each election and records the number of ballots voted on a DRE unit in a particular election. The "system counter" is the register which cannot be reset and records the number of ballots voted on a DRE unit over the course of the life of the unit.

(f)      "DRE unit" shall mean a direct recording electronic voting device which is a computer driven unit for casting and counting votes on which a voter casts his or her votes through the use of a touch screen or VWD device. The term shall include both state supplied devices and devices purchased by counties.

(g)      "Early voting period" shall mean that period of time preceding a primary or election in which the board of registrars or absentee ballot clerk shall mail or issue official absentee ballots to all eligible applicants.

(h)      "Enclosed space" shall mean that area within a polling place enclosed with a guardrail or barrier closing the inner portion of such area so that only such persons as are inside such guardrail or barrier can approach within six feet of the ballot box, voting compartments, voting booths, or voting machines.

(i)      "Memory Card" shall mean the electronic card (PCMCIA card) on which the ballot styles for a particular precinct are electronically stored and which is inserted into the direct recording electronic voting unit (DRE) to program the DRE unit for voting and on which vote totals are recorded for the DRE unit during the voting process.

(j)      "Opening of the Polls" shall mean the commencement of voting in a particular primary, election, or runoff. Opening of the polls does not refer to the unlocking or opening of the doors of the polling place. Similarly, the term "Closing of the Polls" shall mean the cessation of voting in a particular primary, election, or runoff and not the locking or closing of the doors of the polling place.

(k)      "Supervisor's Card" shall mean the electronic card to be used by the poll manager which is inserted into the DRE unit in order to configure the DRE unit for voting, to test the DRE unit, to terminate or suspend voting on the DRE unit, or to access other utility functions on the DRE unit.

(l)      "Voter Access Card" shall mean the electronic card issued to a voter which is inserted into a DRE unit to authorize the voter to cast a ballot on the DRE unit.

(m)      "VWD Device" is a device for use by illiterate and/or visually impaired voters in voting on a DRE unit and consists of an audio headset and a keypad by which the ballot can be provided to the voter aurally and the voter can cast his or her vote by use of the keypad.

(n)      "Zero Tape" shall mean a tape printed out by the DRE unit which shows that all vote registers in the DRE unit for recording votes for candidates and questions are set to zero and that no votes are present on the unit.

(2)      Receipt, Maintenance, and Storage.

(a)      Acceptance tests. Upon the receipt of each new direct recording electronic voting unit (DRE), the election superintendent of the county is responsible to ensure that an acceptance test is performed on the device in accordance with standards issued by the

Secretary of State. No DRE unit shall be accepted by the county or placed into service until such time as the unit satisfactorily passes the prescribed acceptance tests.

(b)     Storage of DRE units.

1.     The election superintendent of the county shall maintain the DRE units in accordance with the requirements of this rule, the directives of the Secretary of State, and the specifications and requirements of the manufacturer.

2.     The DRE units shall be stored in a climate controlled space in which the temperature and humidity levels are maintained at acceptable levels year-round which shall not be lower than 5 degrees Celsius (41 degrees Fahrenheit) nor higher than 40 degrees Celsius (104 degrees Fahrenheit) and not lower than 35 percent relative humidity and not higher than 85 percent relative humidity such that no condensation forms on such units. The units shall not be stored in an area in which liquids or fluids stand, pool, or accumulate at any time or in areas that are subject to such standing, pooling, or accumulating liquids or fluids. The space in which the units are stored shall be secured and shall be accessible only to persons authorized by the election superintendent to have access to such units or such space. The DRE units may be stacked atop each other but no more than five units may be in a stack unless a rack system has been constructed for the storage of the units. The election superintendent shall ensure that the batteries in each unit are charged at least quarterly in accordance with the manufacturer's specifications.

3.     The storage areas for DRE units shall be equipped with one or more of the following forms of electronic surveillance and protection: keypads or electronic locks, motion detectors, video surveillance, or a security system that is connected to an outside monitoring source, such as the police department or fire department. In lieu of providing electronic surveillance and protection, the DRE units may be interlocked through the use of a cable or chain that is secured by a padlock or other type of locking system.

4.     The election superintendent shall maintain numbered seals on all DRE units in storage and all seal numbers shall be recorded and on file in the office of the election superintendent.

5.     Upon delivery to a polling place in preparation for a primary, election, or runoff, the DRE units shall be secured and protected from unauthorized access by storing the DRE units in a locked and secure room at the polling place, having the person taking possession of the units personally supervise the units at all times prior to the opening of the polls, or by interlocking the DRE units with a cable or chain that is secured by a padlock or other type of locking system.

6.     The expenses for the implementation of the storage and security requirements of this rule shall be the responsibility of the county or municipal governing authority, as applicable, unless such security features are provided by the state.

(c)     Software security. The software contained in each DRE unit, regardless of whether the unit is owned by the county or the state, and the software used to program the unit and to tabulate and consolidate election results shall not be modified, upgraded, or changed in any way without the specific approval of the Secretary of State. No other software shall be loaded onto or maintained or used on computers on which the GEMS software is located except as specifically authorized by the Secretary of State.

(d)     Maintenance of DRE units. After the end of the initial warranty period for state owned DRE units and computers for use in programming the DRE units and tabulating and

consolidating the vote totals, the county shall be responsible for the maintenance and upkeep of such devices, including the repair and/or replacement of any devices which are destroyed, damaged, or otherwise rendered incapable of use in elections.

(e)      Access to GEMS servers.

1.      The room in which the GEMS server is located shall be locked at all times when the server is not directly under the supervision of the election superintendent or the election superintendent's designee. Lock and key access to the room where the GEMS server is located shall be limited to the county election superintendent; members of the county board of elections; the election supervisor, if any; personnel of the county election superintendent's office designated by the county election superintendent; building maintenance personnel; and emergency personnel. Building maintenance personnel shall have access to the room in which the GEMS server is located only to the extent necessary to carry out their maintenance duties. The election superintendent shall maintain on file at all times in the office of the election superintendent a complete and up to date list of all maintenance personnel with access to the room in which the GEMS server is located. Emergency personnel shall have access to the room in which the GEMS server is located only as necessary in the event of an emergency and only for the duration of such emergency condition.

2.      The GEMS server shall remain locked at all times when not in use. The key or keys to the GEMS server shall remain in the possession of the election superintendent or the designee of the election superintendent at all times.

(f)      Security of DRE units and accessories. All DRE units, optical scanner devices, voter access cards, supervisor cards, memory cards, DRE unit keys, voting system software, and encoders shall be stored under lock and key at all times when not in use. Lock and key access to such items shall be limited to the county election superintendent; members of the county board of elections; the election supervisor, if any; personnel of the county election superintendent's office designated by the county election superintendent; building maintenance personnel; and emergency personnel. Building maintenance personnel shall have access to the area where such items are stored only to the extent necessary to carry out their maintenance duties. The election superintendent shall maintain on file at all times in the office of the election superintendent a complete and up to date list of all maintenance personnel with access to the area in which such items are stored. Emergency personnel shall have access to the area where such items are stored only as necessary in the event of an emergency and only for the duration of such emergency condition. Whenever maintenance or emergency personnel are required to enter the storage area, the election superintendent must be notified of that entry within 24 hours and the election superintendent must maintain a log of those persons who entered the storage area.

(g)      Voting system handling requirements.

1.      All personnel, with the exception of the permanent employees of the Office of the Secretary of State and permanent employees of the county or municipal election superintendent, who prepare voting equipment for use in a primary, election, or runoff shall complete an oath of custodian before each election. One copy of the oath shall be placed on file in the office of the election superintendent and an additional copy shall be filed with the records for the election filed with the clerk of superior court or the municipal clerk, as appropriate. The oath of custodian shall be in the following form:

STATE OF GEORGIA
COUNTY/MUNICIPALITY OF _____
OATH OF CUSTODIANS AND DEPUTY CUSTODIANS
OF DRE UNITS
I, _____, do swear (or affirm) that I will as a (deputy) custodian of the voting systems for the County/Municipality of _____, faithfully perform all of my duties in accordance with state law; that I will prepare in accordance with all applicable rules and regulations governing the use of the voting system all DRE units to be used in primaries, elections, and runoffs in this county/municipality; that I will use my best endeavors to prevent any fraud, deceit, or abuse in carrying out my duties while preparing the DRE units for use in primaries, elections, and runoffs; and that I am not disqualified by law to hold the position of (deputy) custodian.

_____
(Deputy) Custodian
Administered by, sworn to,
and subscribed before me,
this _____ day of _____, 200___.

_____
Superintendent
(Required by O.C.G.A. Section 21-2-379.6(b))
2.      All DRE units and accessories that are removed from storage for educational or training purposes must be signed in and out on an equipment log maintained by the election superintendent. The log shall contain, at a minimum, a description of the item being checked out, including any serial number or identifying number; the date and time when the item is checked out; the name of the person checking out the item; and the date and time when the item is returned to storage. The items checked out of storage shall remain in the custody and control of the person checking out the items at all times and the person checking out the items shall personally return such items. Each person who utilizes equipment for educational or training purposes must be adequately trained in the use of the equipment prior to the release of the equipment into such person's custody.
3.      The GEMS server shall not be moved or relocated for educational or training purposes. Should it become necessary to relocate the GEMS server or any of its components from one facility to another, the election superintendent shall notify the Secretary of State in writing of the reason for the relocation and the proposed new location. Under no circumstances shall the GEMS server or any of its components be relocated unless and until written authorization for the relocation is received from the Secretary of State except in the event of an emergency situation beyond the control of the election superintendent.
4.      The poll manager shall sign a receipt for all supervisor cards, encoders, voter access cards, memory cards, and DRE unit keys assigned to such poll manager's precinct. Upon returning election supplies to the election superintendent's office following the close of the polls, the poll manager shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

5.      All supervisor cards, encoders, voter access cards, memory cards, DRE unit keys, and other equipment assigned to designated county election technicians shall be accounted for on the night of a primary, election, or runoff and shall be returned to storage. Each technician shall sign a receipt for all such items issued to such technician and, upon returning such items to the election superintendent's office following the close of the polls, the technician shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

6.      The election superintendent shall notify the Secretary of State of any instances of unaccounted for DRE units, optical scanner devices, voter access cards, supervisor cards, memory cards, DRE unit keys, voting system software, and encoders at the completion of certification by delivering such notification to the Secretary of State when the certified election results are delivered to the Secretary of State.

(3)      Preparation for Elections.

(a)      Ballots.

1.      The election superintendent shall cause the memory cards (PCMCIA cards) to be used in each precinct to be prepared in accordance with law and applicable rules and regulations.

2.      Each memory card (PCMCIA card) shall be appropriately labeled with the name of the precinct for which it is programmed for use. The election superintendent shall ensure that each memory card (PCMCIA card) shall be programmed and tested to ensure that the proper ballot style or styles for the precinct for which it is programmed are included on the card and no other ballot styles.

3.      Each ballot and ballot style shall be proofread by the election superintendent or a person or persons under the direction of the superintendent to ensure that the ballot contains the proper offices, candidates, and questions to be submitted to the voters, that the offices and names are spelled and designated correctly, that political party or body affiliations and incumbency of candidates are correctly designated where applicable, and that the questions are presented in accordance with law and this rule and that the correct offices and questions are presented on each ballot style.

4.      For each office on the ballot, the ballot shall state the name of the office; the post, position, or person presently holding the office if necessary to identify the specific office subject to election; the number of candidates for which the voter may vote for such office; the names of the candidates; the residence address of the candidates if there has been a determination that the names are sufficiently similar to so require such information under O.C.G.A. § 21-2-379.5; in partisan elections, the name of the political party or body that nominated the candidate or a designation of the candidate as an independent candidate; and the designation of the incumbency of a candidate seeking reelection to the office which the candidate then holds.

5.      The offices, candidates, and questions shall be listed on the ballot in the order specified in O.C.G.A. §§ 21-2-379.4 and 21-2-379.5.

6.      The ballot shall be displayed in the following fonts:

(i)      The words "Official Ballot" shall be displayed in 16 point Arial Bold.

(ii)    All text beneath the words "Official Ballot" which designate the county or municipality conducting the election, precinct, type of election, and date of the election shall be displayed in 12 point Arial Bold.

(iii)    The words "I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." shall be displayed in 8 point Arial Narrow Italicized.

(iv)    The name of the office shall be displayed in 12 point Arial Bold.

(v)    Information on the designation of the office ("To succeed _____") and the number of candidates for which an elector may vote for each office shall be displayed in 10 point Arial.

(vi)    The names of candidates shall be displayed in 10 point Arial Narrow Bold in all capital letters.

(vii)    Incumbency designations shall be displayed in 8 point Arial Narrow Bold.

(viii)    Political party or body and independent designations shall be displayed in 9 point Arial Narrow.

(ix)    The text of questions to be submitted to the electors shall be displayed in 10 point Arial Narrow Bold.

(x)    The choices for voting on a question (i.e.,"YES" and "NO") shall be displayed in 10 point Arial Narrow Bold.

7.    The ballot shall be displayed in the following colors:

(i)    All text, designations, and names shall be displayed in black letters.

(ii)    The background colors shall be as follows:

(I)    The overall page shall be blue (Hue: 180, Sat: 240, Lum: 60, Red: 64, Green: 0, Blue: 128).

(II)    The general election header shall be yellow (Hue: 40, Sat: 240, Lum: 120, Red: 255, Green: 255, Blue: 0).

(III)    The Democratic Party Primary header shall be white (Hue: 160, Sat: 0, Lum: 240, Red: 255, Green: 255, Blue: 255).

(IV)    The Republican Party Primary header shall be light blue (Hue: 120, Sat: 240, Lum: 120, Red: 0, Green: 255, Blue: 255).

(V)    The nonpartisan election header shall be light green (Hue: 60, Sat: 240, Lum: 120, Red: 128, Green: 255, Blue: 0).

(VI)    The box containing the contest or question to be voted upon shall be burnt orange (Hue: 20, Sat: 240, Lum: 120, Red: 255, Green: 128, Blue: 0).

(VII)    The box containing the names of the candidates or the answers or responses to a referendum question for which an elector may vote shall be white (Hue: 160, Sat: 0, Lum: 240, Red: 255, Green: 255, Blue: 255).

8.    In addition to the displayed ballot, the election superintendent shall cause an audio ballot to be prepared for use with the VWD devices. The superintendent shall ensure that all matters are recorded correctly and that the names of the candidates are pronounced correctly in the audio recordings. The election superintendent shall also ensure that no candidate's name; political party, political body, or independent designation; incumbency;

or other such information nor any referendum question or answer or response thereto is emphasized, stressed, or otherwise inflected in any manner to distinguish a particular candidate, party or body, question, answer or response to a referendum question either negatively or positively or to suggest whether to vote for or against such candidates or questions in such audio recordings. The election superintendent shall also ensure that the audio recordings are presented at a rate not to exceed 130 words per minute or 2.2 words per second on average and at a volume which shall not be less than 75 decibels nor more than 85 decibels.

(b)      Setup and Testing.
1.       Primaries and Elections.
(i)      On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the election superintendent shall commence the preparation and testing of the DRE units for use on Election Day. On or before the third day preceding the early voting period, the election superintendent shall commence the preparation and testing of the DRE units for use during the early voting period. At least five days prior to the commencement of such preparation and testing, the election superintendent shall publish a notice in the legal organ of the county stating the date, time, and place or places where preparation and testing of the DRE units for use in the primary or election will commence and stating that such preparation shall continue from day to day until such preparation is complete and that such preparation and testing shall be open to the public and that members of the public are entitled to be present during the preparation and testing of the DRE units. The election superintendent shall cause such preparation and testing to begin on such date and time and at such place or places. Such preparation and testing shall be open to members of the public to observe; however, such members of the public shall not in any manner interfere with the preparation and testing of the DRE units. Any person found to be interfering with the preparation and testing process may be asked to leave the testing process and may be cited for interfering with an election official while in performance of election duties. Any questions and/or complaints from the general public regarding the preparation and testing process must be directed to the election superintendent and not to the individual personnel conducting the preparation and testing process. The election superintendent may make such reasonable rules and regulations concerning the conduct of such members of the public observing such preparation and testing as the election superintendent deems necessary and appropriate; provided, however, that such rules and regulations shall not prevent members of the public from fairly observing the preparation and testing of the DRE units.
In addition to any reasonable rules and regulations that the election superintendent may create for the public to observe the preparation and testing process, the election superintendent or designee thereof, shall:
During the first day of preparation and testing, at the beginning of the day or for the first hour of public observation be available to explain the preparation and testing process and to respond to questions and provide answers regarding the purpose and the process of preparation and testing;
(b)      maintain a presence at all times during the preparation and testing process if an outside source is conducting the preparation and testing process;

(c)    administer an oath of custodian prior to beginning the preparation and testing process to any county personnel (except permanent state, county, or municipal election staff) appointed by the election superintendent to conduct the preparation and testing process;

(d)    establish an area reasonable in proximity for the public to observe the preparation and testing process. Such area shall provide reasonable accommodations for the public insofar as space permits, but shall not be so established as to deny the general public the opportunity to view the process; however the area should not be of such a nature so as to allow the preparation and testing process to be interfered with by the general public;

(e)    allow only election office personnel or individuals assigned to conduct the preparation and testing to enter the testing area during the preparation and testing process;

(f)    prohibit any preparation and testing reports created for recording the seal numbers and/or serial numbers of the DRE unit from being photocopied for public disclosure;

(g)    prohibit the security seals and serial numbers of the DRE units from being photographed or copied for public disclosure;

(h)    prohibit photographic and audio equipment, of any kind, including cell phone cameras from being used to record the serial numbers of the DRE units or to record the security seal numbers used to secure the DRE units, provided that this rule shall not prohibit the news media from reporting on the preparation and testing process, so long as seal numbers and serial numbers on the DRE units are not recorded or displayed in any manner;


(ii)    During the public preparation and testing of the DRE units to be used in a particular primary or election, the election superintendent shall cause each DRE unit to be programmed with the memory card (PCMCIA card) for the precinct at which the DRE unit will be used. After placing the memory card (PCMCIA card) in the DRE unit, the DRE unit shall have such internal diagnostic tests performed as shall be directed by the Secretary of State or the election superintendent. Following the completion of the diagnostic tests, the DRE unit shall have an internal logic and accuracy test performed using the memory card (PCMCIA card) for the primary or election for which the unit is being prepared. If the DRE unit fails any of the diagnostic or logic and accuracy tests, the unit shall not be used in a primary or election until such unit is repaired and inspected and found capable of proper functioning and passes the diagnostic and logic and accuracy tests. Upon the successful completion of the logic and accuracy test, the DRE unit shall be cleared of any accumulated vote totals for the primary or election and a zero tape run to verify that the vote registers in the unit are set at zero. After verifying that the vote registers are set at zero, the tape shall be attached to the custodian's certification form to document the logic and accuracy testing and the unit shall be configured for voting. The unit shall then be securely closed in its case and a numbered seal placed on its case such that the case may not be opened until and unless the seal is broken.

(iii)    The election superintendent or the custodian responsible for preparing the DRE units, if one has been appointed by the election superintendent in accordance with O.C.G.A. § 21-2-379.6(b), shall make a certification stating for each DRE unit the serial number of the DRE unit, the number on the system counter of the DRE unit, the number on the seal with which the DRE unit is sealed, and that the election counter and each vote register on the unit was set at zero. The case shall be appropriately labeled with the name of the precinct in which the unit is to be used and the serial number of the DRE unit. The

custodian's certification shall be retained with the records for such primary runoff or election runoff and shall be stored with such records with the clerk of superior court or municipal clerk, as appropriate, for the same period of time as required by law for other election records.

(iv)     After being prepared for voting, each DRE unit shall be safely and securely stored until such time as the unit is transported to the precinct in which such unit is to be used.

2.     Primary Runoffs and Election Runoffs.

(i)     On or before the third day preceding a primary runoff or election runoff, including special primary runoffs and special election runoffs, the election superintendent shall commence the preparation and testing of the DRE units for use in the primary runoff or election runoff. At least 24 hours prior to the commencement of such preparation and testing, the election superintendent shall publish a notice in the legal organ of the county stating the date, time, and place or places where preparation and testing of the DRE units for use in the runoff will commence and stating that such preparation shall continue from day to day until such preparation is complete and that such preparation and testing shall be open to the public and that members of the public are entitled to be present during the preparation and testing of the DRE units. The election superintendent shall cause such preparation and testing to begin on such date and time and at such place or places. Such preparation and testing shall be open to members of the public to observe; however, such members of the public shall not in any manner interfere with the preparation and testing of the DRE units. Any person found to be interfering with the preparation and testing process may be asked to leave the preparation and testing process and may be cited for interfering with an election official while in performance of election duties. Any questions and/or complaints from the general public regarding the preparation and testing process must be directed to the election superintendent and not to the individual personnel conducting the preparation and testing process. The election superintendent may make such reasonable rules and regulations concerning the conduct of such members of the public observing such preparation and testing as the election superintendent deems necessary and appropriate; provided, however, that such rules and regulations shall not prevent members of the public from fairly observing the preparation and testing of the DRE units.

In addition to any reasonable rules and regulations that the election superintendent may create for the public to observe the preparation and testing process, the election superintendent or designee thereof, shall:

During the first day of preparation and testing, at the beginning of the day or for the first hour of public observation be available to explain the preparation and testing process and to respond to questions and provide answers regarding the purpose and the process of preparation and testing;

(b)     maintain a presence at all times during the preparation and testing process if an outside source is conducting the preparation and testing process;

(c)     administer an oath of custodian prior to beginning the preparation and testing process to any county personnel (except permanent state, county, or municipal election staff) appointed by the election superintendent to conduct the preparation and testing process;

(d)     establish an area reasonable in proximity for the public to observe the preparation and testing process. Such area shall provide reasonable accommodations for the public

insofar as space permits, but shall not be so established as to deny the general public the opportunity to view the process; however the area should not be of such a nature so as to allow the preparation and testing process to be interfered with by the general public;

(e)     allow only election office personnel or individuals assigned to conduct the preparation and testing to enter the preparation and testing area during the preparation and testing process;

(f)     prohibit any preparation and testing reports created for recording the seal numbers and/or serial numbers of the DRE units from being photocopied for public disclosure;

(g)     prohibit the security seals and serial numbers from being photographed or copied for public disclosure;

(h)     prohibit photographic and audio equipment, of any kind, including cell phone cameras from being used to record the serial numbers of the DRE units or to record the security seal numbers used to secure the DRE units, provided that this rule shall not prohibit the news media from reporting on the preparation and testing process, so long as seal numbers and serial numbers on the voting units are not recorded or displayed in any manner;

(ii)     During the public preparation and testing of the DRE units to be used in a particular primary runoff or election runoff, the election superintendent shall cause each DRE unit to be programmed with the memory card (PCMCIA card) for the precinct at which the DRE unit will be used. After placing the memory card (PCMCIA card) in the DRE unit, the DRE unit shall have such internal diagnostic tests performed as shall be directed by the Secretary of State and the election superintendent. Following the completion of the diagnostic tests, the superintendent shall cause a number of random DRE units as provided by law to undergo an internal logic and accuracy test using the memory card (PCMCIA card) for the primary runoff or election runoff for which the unit is being prepared. If a DRE unit fails any of the diagnostic or logic and accuracy tests, the unit shall not be used in any primary, election, or runoff until such unit is repaired and inspected and found capable of proper functioning and passes the diagnostic and logic and accuracy tests. Upon the successful completion of the logic and accuracy test, the DRE unit shall be cleared of any accumulated test vote totals for the primary runoff or election runoff and a zero tape run to verify that the vote registers in the unit are set at zero. After verifying that the vote registers are set at zero, the tape shall be attached to the custodian's certification form to document the logic and accuracy testing and the unit shall be configured for voting. The unit shall then be securely closed in its case and a numbered seal placed on its case such that the case may not be opened until and unless the seal is broken. The custodian's certification shall be retained with the records for such primary runoff or election runoff and shall be stored with such records with the clerk of superior court or municipal clerk, as appropriate, for the same period of time as required by law for other election records.

(iii)     All memory cards to be used in the runoff shall be tested.

(iv)     The election superintendent or the custodian responsible for preparing the DRE units, if one has been appointed by the election superintendent in accordance with O.C.G.A. § 21-2-379.6(b), shall make a certification stating for each DRE unit the serial number of the DRE unit, the number on the system counter of the DRE unit, the number on the seal with which the DRE unit is sealed, and that the election counter and each vote register on the unit was set at zero. The case shall be appropriately labeled with the name of the precinct in which the unit is to be used and the serial number of the DRE unit.

(v)      After being prepared for voting, each sealed DRE unit shall be safely and securely stored until such time as the unit is transported to the precinct in which such unit is to be used.

(c)      Transport to Polls.

1.      The election superintendent shall take all necessary measures to ensure that the DRE units are safely and securely transported to the polling places.

2.      The election superintendent shall cause the DRE units for each precinct to be delivered to the polling place for the precinct at least one hour before the time for the opening of the polls.

3.      If the DRE units are stored at a polling place after being configured for voting and sealed, the election superintendent shall ensure that the units are stored in a secure area with appropriate climate control.

4.      The election superintendent shall deliver the supervisor's card, a sufficient quantity of voter access cards, and the key to the DRE units to the chief manager not later than one hour before the time set for the opening of the polls and shall obtain a receipt for the cards and key. The supervisor's card shall be sealed in an envelope and shall not be opened until the polls are closed unless all of the ballot encoding devices at the precinct fail and it is necessary to use the supervisor's card to configure a DRE unit to encode the voter access cards at the precinct. In such cases, the use of the supervisor's card before the close of the polls shall be documented in the records for the election at that precinct. In addition, the superintendent shall deliver on the appropriate form a listing containing the serial number of each DRE unit, and the number of the seal placed on each such unit.

(d)      Before the Opening of the Polls.

1.      The poll officers shall set up the DRE units for voting prior to the opening of the polls. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the election superintendent may deem appropriate to protect the security of the DRE units and to prevent interference with the duties of the poll officers.

2.      The poll officers shall verify that the seal for each unit is intact and that there is no evidence or indication of any tampering with the seal or the unit. The poll officers shall verify that the number of the seal matches the number of the seal recorded for that unit when such unit was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering with the seal or unit, the election superintendent shall be immediately notified and such unit shall not be used until such matters are resolved by agreement of the election superintendent and the poll manager.

3.      Each DRE unit shall be set up and its power turned on and the privacy screens for the unit erected and its screen lifted into place.

4.      The poll manager shall run a zero tape on each DRE unit prior to the opening of the polls. The poll manager, along with the other assistant managers, shall, without removing the tape from the unit, verify that all vote registers shown on the zero tape are set to zero and that there are no votes showing on the unit and shall sign the tape in the space provided. If the zero tape does not show that all vote registers are set to zero and that there are votes on the unit, the election superintendent shall be immediately notified and such unit shall

not be used until the unit is cleared and the matter is resolved by agreement of the election superintendent and the poll manager.

5.      After verifying and signing the zero tape, the poll manager shall securely lock the tape compartment leaving the zero tape in place on the unit and shall configure the unit for voting. The poll manager shall verify that the election counter on each DRE unit is set at zero. If the election counter is not set to zero, the election superintendent shall be immediately notified and such unit shall not be used until the election counter is set to zero and the matter is resolved by agreement of the election superintendent and the poll manager.

6.      The poll officers shall verify that there is no unauthorized matter affixed to the DRE units or present in the cases or voting booths.

7.      The poll officers shall affix a card of instructions for voting within each voting booth and shall place at least two printed sample ballots and at least two voting instructions posters approved or provided by the Secretary of State outside the enclosed space at the polling place for the information of the voters. Prior to voters entering the enclosed space, the poll officers may also distribute to such voters a card of instructions for voting on the DRE unit that has been approved or provided by the Secretary of State.

(4)      Conducting Elections.

(a)      As each voter presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, each voter shall be offered instruction by a poll officer in the method of voting on the DRE units. In providing such instruction, the poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote any particular ticket or for any particular candidate or for or against any particular question.

(b)      When a person presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, the person shall complete a voter's certificate and submit it to the poll officers. The poll officers shall then verify the identity of the person and that the person is a registered voter of the precinct and, if so, shall approve the voter's certificate and enter an appropriate designation on the electors list for the precinct reflecting that the voter has voted in the primary, election, or runoff being conducted. The voter's name shall then be entered on the appropriate numbered list of voters. The poll manager or the poll officer who has been designated by the poll manager to issue voter access cards shall then use the ballot encoder device to encode and issue the voter an appropriate voter access card authorizing the voter to vote the correct ballot style in the DRE units at the polling place. Upon a DRE unit being available, the voter shall then enter the enclosed space in the polling place and insert the voter access card into an available DRE unit and proceed to vote his or her choices. Upon completion of voting, the voter shall press the "cast ballot" button, remove the voter access card from the DRE unit, and return the card to a poll officer.

Then the voter shall exit the enclosed area of the polling place.

(c)      At least once each hour during the time while the polls are open, the poll officers shall examine the face of each DRE unit and each voting booth to verify and ensure that no unauthorized matter has been affixed to the unit or placed in the voting booth and that the unit has not been tampered with in any manner.

(d) ~~The polling place shall be so arranged in such a manner as to ensure the privacy of the elector while voting on a DRE unit, to allow monitoring of each DRE unit by the poll officers while the polls are open, and to permit the public to observe the voting without affecting the privacy of the electors as they vote. In addition, at least one DRE unit shall be configured for voting by physically disabled voters in wheelchairs and provisions shall be made to ensure the privacy of such electors while voting.~~

(e) ~~It shall be permissible under O.C.G.A. § 21-2-410 and shall not constitute assistance in voting under O.C.G.A. § 21-2-409 for poll officers to assist a voter in inserting the voter card in the DRE unit and in explaining the operation of the unit to the voter; provided that the poll officer withdraws from the voting booth prior to the voter pressing the "start" button or beginning voting. The poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote any particular ticket or for any particular candidate or for or against any particular question.~~

(f) ~~Voters utilizing a VWD device to vote on the DRE units without the assistance of any other individual shall not be considered as receiving assistance in voting and shall not be required to complete the forms required for receiving assistance in voting pursuant to O.C.G.A. § 21-2-409.~~

(g) ~~The poll officers shall ensure that voters return the voter access cards to the poll officials prior to leaving the enclosed space in the polling place. The poll officers shall arrange and configure the polling place and provide staffing at such places at the polling place to ensure that a voter will not leave the polling place with a voter access card.~~

(h) ~~If a voter leaves a DRE unit prior to completing the process of voting and exits the polling place and does not return to the unit to complete the voting process, the poll officers shall cancel or void the vote on the DRE unit without attempting in any manner to see how the voter voted and shall make a notation of the incident in the election records for the precinct.~~

(i) ~~A voter may request information from the poll officers concerning how to vote on the DRE unit at any time during the voting process; provided, however, that the poll officers shall not observe or view the voter's ballot on the DRE unit or make any attempt to see how the voter has voted. However, once the voter casts his or her ballot, even if the ballot is blank with no votes cast, such voter shall be deemed to have voted and may not thereafter vote again in the same primary, election, or runoff on that election day.~~

(j) ~~If a voter discovers that the ballot presented on the DRE unit is not correct or is not the ballot that the voter desired to vote, the voter shall immediately notify a poll officer. The poll officer shall cancel or void the ballot on the DRE unit without attempting in any manner to see how the voter has voted and shall then take the necessary steps to provide the voter with the correct ballot by encoding and issuing a new voter access card to the voter and making any necessary corrections to the voter's certificate of the voter, the electors list, and the numbered list of voters. If the voter presses the "cast ballot" button prior to notifying the poll officials of the error in the ballot, the voter shall be deemed to have voted and shall not be permitted to cast another ballot in the same primary, election, or runoff on that election day.~~

(k) ~~If a DRE unit malfunctions during the day of a primary, election, or runoff, the poll manager shall immediately notify the election superintendent and shall not allow any voter to use the unit until and unless the malfunction is corrected. The election superintendent shall immediately arrange for the repair of the DRE unit or shall provide a replacement~~

DRE unit as soon as practicable to replace the malfunctioning unit. A replacement DRE unit shall not be used as a replacement unit unless it has been appropriately tested prior to its use.

(5)        Tabulating Results.

(a)        After the Polls Close.

1.        Immediately after the polls close and the last voter has voted, the poll manager shall open the envelope containing the supervisor's card and use the supervisor's card to close each of the DRE units in the precinct against further voting.

2.        The poll officers shall then compare the total number of persons voting as shown by the number of voters certificates, the number of persons marked on the electors list, the number of voters on the numbered list of voters, and the number of persons shown as voting on the election counters of the DRE units. If these numbers do not equal one another, the poll officers shall determine the reason for the inconsistency; correct the inconsistency, if possible; and fully document the inconsistency or problem along with any corrective measures taken before going further.

3.        After completing the comparison of the total number of persons voting as shown by the electors list, the voter's certificates, the numbered list of voters, and the election counters of the DRE units, the poll manager shall cause each DRE unit to print a minimum of two tapes showing the vote totals as cast on that DRE unit. The poll manager and at least one assistant manager shall also compare the number of ballots voted as shown on the tape with the number of ballots voted as shown on the election counter of the DRE unit. If these numbers are not identical, the poll manager shall document the discrepancy. The poll manager and the assistant managers shall sign each of the tapes or shall write on the tapes the reason why the poll manager or the assistant managers will not sign the tapes.

4.        If directed by the election superintendent, the poll manager shall designate one of the DRE units as the accumulator unit to accumulate the votes for the precinct. After printing all of the tapes for the individual DRE units, the poll manager shall accumulate the totals for the accumulator DRE unit and remove the memory card (PCMCIA card) from the accumulator DRE unit. The poll manager shall then collect and retain the two signed tapes (one of which shall include the zero tape) with the memory card (PCMCIA card) from each DRE unit and shall place the memory card (PCMCIA card) in the appropriate envelope provided by the election superintendent. The poll manager shall then begin removing the memory cards (PCMCIA cards) from the remaining DRE units one by one and inserting the memory cards (PCMCIA cards) into the accumulator DRE unit and accumulating the vote totals from the other DRE units into the accumulator DRE unit. Upon the vote totals for each memory card (PCMCIA card) being entered into the accumulator DRE unit, the memory card (PCMCIA card) shall be removed from the accumulator DRE unit and two signed tapes (one of which shall contain the zero tape) shall be collected and retained with the card. Each memory card (PCMCIA card) shall then be placed into the appropriate envelope provided by the election superintendent. After the results from the last memory card (PCMCIA card) are entered into the accumulator DRE unit and the last memory card (PCMCIA card) has been placed in the envelope, the envelope containing the memory cards (PCMCIA cards) and tapes shall be sealed and secured by the poll manager and at least one assistant manager in an envelope container provided by the election superintendent which shall be sealed and initialed by the poll

manager and the two assistant managers such that the envelope cannot be opened without breaking such seal.

5. After all of the results have been entered into the accumulator DRE unit, the poll manager shall cause a minimum of three tapes to be printed out by the DRE unit showing the total votes cast for the precinct. The poll manager and the assistant managers shall sign each of the tapes or shall write on the tapes the reason why the poll manager or the assistant managers will not sign the tapes. One tape shall be posted on the door of the polling place for the information of the public along with a copy of the provisional ballot recap sheet for the precinct. The other tapes shall be placed into the envelope provided by the election superintendent for that purpose and sealed and initialed by the poll manager and at least one assistant manager.

6. If the election superintendent does not direct that the results of the precinct be accumulated, then the poll manager shall cause each DRE unit to print an additional results tape which shall be verified and signed in the same manner as provided in paragraph 3 of this subparagraph. Such additional results tape for each DRE unit shall be posted on the door of the polling place for the information of the public along with a copy of the provisional ballot recap sheet for the precinct. The memory card (PCMCIA card) and two signed tapes from each DRE unit shall be placed in the appropriate envelope supplied by the election superintendent which shall be sealed and initialed by the poll manager and at least one assistant manager such that the envelope cannot be opened without breaking such seal.

7. After completing the printing of the results, the DRE units shall be turned off and secured in their cases and resealed. The number of each seal shall be entered on the appropriate form along with the serial number of the DRE unit case in which it is inserted. The DRE units shall then be placed in a secure area with appropriate climate control.

8. The memory cards (PCMCIA cards), results tapes, voter access cards, supervisor's card, ballot encoder devices, electors lists, numbered lists of voters, voter certificates, recap sheets, and other such paperwork shall be transported to the office of the election superintendent by the poll manager and at least one other poll officer. The election superintendent or his or her designee shall receive the materials and shall issue a receipt to the poll manager for the materials.

(b) Electronic Transmission of Precinct Results to Central Office.

1. After accumulating all of the vote totals for the precinct, if directed to do so by the election superintendent, the poll manager shall connect the accumulator DRE unit to an analog telephone line and electronically transmit the accumulated vote totals for the precinct to the central office. The DRE unit shall not be connected to a telephone line during the time while the polls are open.

2. Vote totals reported electronically from the precinct to the central office shall be unofficial and shall not be used in preparing the official returns for the primary, election, or runoff.

(c) Consolidation of Results.

1. All persons involved with the tabulation and consolidation of the election results and who will operate the computer programs or handle the memory cards (PCMCIA cards) shall be sworn before entering into their duties.

2.      No persons except those persons who are employed by the election superintendent and who have been duly sworn shall perform any duties in connection with the tabulation or consolidation of election results. No persons who are not employed by the election superintendent and have been duly sworn shall touch or be in contact with any container, returns, tapes, device, memory card (PCMCIA card), or any other such election materials. Only persons who are employed by the election superintendent and have been duly sworn shall be in the immediate area of the tabulating center designated by the superintendent for the officers to conduct the tabulation and consolidation of the election results.

3.      The tabulation and consolidation shall be performed in public. However, the election superintendent may make reasonable rules and regulations for conduct at the tabulating center to ensure the security of the results and the returns and to avoid interference with the tabulating center personnel.

4.      Upon the delivery of the memory cards (PCMCIA cards) from each precinct, the election superintendent or his or her designee shall provide a receipt to the poll manager for the memory cards (PCMCIA cards) and precinct election materials.

5.      Upon receiving the memory cards (PCMCIA cards), the election superintendent shall verify the signatures on the sealed envelopes and verify that the seals are intact, that the envelopes have not been opened, and that there is no evidence of tampering with the envelopes or their contents.

6.      In the case of elections for county, state, and federal office, after verifying that the envelopes are properly sealed and have not been opened or tampered with, the election superintendent shall break the seal and open each envelope and remove the memory card (PCMCIA card) and results tapes. The election superintendent or his or her designee shall then insert the memory card (PCMCIA card) into the election management system computer and transfer the vote totals from the memory card (PCMCIA card) into the election management system for official tabulation and consolidation.

7.      After transferring all of the vote totals from the memory cards (PCMCIA cards) to the election management system and consolidating such totals with the totals from the absentee ballot system and such votes from any provisional ballots which have been found by the registrars to be authorized pursuant to O.C.G.A. § 21-2-419, the election superintendent shall prepare the official consolidated returns for the primary, election, or runoff.

8.      The election superintendent shall not list and certify in the official consolidated returns for an election any results for write-in candidates who were not properly qualified under O.C.G.A. § 21-2-133.

9.      In the case of primaries, elections, and runoffs for county, state, and federal office, the county election superintendent shall transmit to the Secretary of State the election returns by precinct for the county in electronic format or by electronic means, as may be specified by the Secretary of State, within seven days following a primary, election, or runoff.

(d)      Electronic Transmission of Precinct Results to Central Office. The election superintendent shall transmit to the Secretary of State unofficial election results for all races for state offices in any primary, election, or runoff as soon as possible after the closing of the polls for such primary, election, or runoff. Such results shall be transmitted in a format prescribed by the Secretary of State. At a minimum, the results shall be transmitted upon

one third of the precincts reporting results, upon two thirds of the precincts reporting results, and upon all precincts reporting results, including absentee ballots within all precincts. Except upon notice to and consultation with the Secretary of State, no election superintendent shall conclude the tabulation of votes on election night in any primary, election, or runoff in which there are contested races for federal and state offices until and unless all such unofficial results, including absentee ballots, have been transmitted to the Secretary of State.

(6)     Storage of Returns.
(a)     After tabulating and consolidating the results, the election superintendent shall prepare a CD-ROM which shall contain a copy of the information contained on each memory card (PCMCIA card) which shall include all ballot images as well as vote totals and a copy of the consolidated returns from the election management system.
(b)     The CD-ROM shall be placed in a sealed envelope and shall become a part of the election materials which shall be deposited with the clerk of superior court or the municipal clerk, as appropriate, in accordance with O.C.G.A. § 21-2-500. In addition, the signed results tape from each DRE unit containing the signed zero tape shall also be deposited with the clerk of superior court.
(c)     The memory cards (PCMCIA cards) shall be sealed in an appropriate container and securely maintained by the election superintendent until the period for requesting a recount of the primary, election, or run-off results has expired. The election superintendent and at least one other sworn individual in the tabulating center shall seal the container and sign the seal such that the container cannot be opened without destroying or damaging the seal. Upon the expiration of the period for requesting a recount, the election superintendent may use the memory cards (PCMCIA cards) for programming DRE units for the next primary, election, or runoff.
(d)     The election results, ballot styles, ballot images, and other information for each election stored in the internal memory storage of each DRE unit shall be maintained for a minimum of one month following each election after which time the results may be erased provided that there are no election contests pending concerning such election.

(7)     Recounts and Recanvass.
(a)     The election superintendent shall, either of his or her own motion, or upon petition of any candidate or political party or three electors of the county or municipality, as may be the case, order a recanvass of all the memory cards (PCMCIA cards) for a particular precinct or precincts for one or more offices in which it shall appear that a discrepancy or error, although not apparent on the face of the returns, has been made. Such recanvass may be held at any time prior to the certification of the consolidated returns by the election superintendent and shall be conducted under the direction of the election superintendent. Before making such recanvass, the election superintendent shall give notice in writing to each candidate and to the county chairperson of each party or body affected by the recanvass. Each such candidate may be present in person or by representative and each such political party or body may send two representatives to be present at such recanvass. If upon such recanvass, it shall appear that the original vote count was incorrect, such returns and all papers being prepared by the election superintendent shall be corrected accordingly.

(b)      The election superintendent shall conduct the recanvass by breaking the seal, if the ballots cards have been sealed, on the container containing the memory cards (PCMCIA cards) and removing those memory cards (PCMCIA cards) for the precinct or precincts for which the recanvass is being conducted. The election superintendent shall then cause the vote totals on each of the memory cards (PCMCIA cards) to be transferred to either an accumulator DRE unit or to the election management system computer. After all of the vote totals from the memory cards (PCMCIA cards) for the precinct or precincts for which the recanvas is being conducted have been entered, the election superintendent shall cause a printout to be made of the results and shall compare the results to the results previously obtained. If an error is found, the election superintendent shall correct the error in the returns accordingly.

(c)      Recounts pursuant to O.C.G.A. § 21-2-495(c) shall be conducted in the same manner as other recounts under these rules.

(8)      Maintenance of Equipment.

(a)      Each county shall be responsible for maintaining the DRE units, computers, and software provided to such county by the Secretary of State or purchased by such county and shall either purchase a maintenance agreement for such equipment and software or shall self-insure such equipment and software.

(b)      In the event of any malfunction or problem with DRE units, the county election superintendent shall document the problem and its resolution and shall provide such information to the Secretary of State. The documentation shall include a detailed description of the malfunction or problem, the steps taken to correct the malfunction or problem, and the cause of such malfunction or problem if a cause can be determined.

(9)      Use of Equipment by Municipalities. The county election superintendent is authorized to permit any municipality within the county to conduct its election with the DRE equipment through a written intergovernmental agreement between the county and the municipality; provided that the municipality agrees to maintain and operate the equipment in accordance with law, these rules and regulations, and the manufacturer's guidelines and specifications and provided further that the municipality trains all of its election personnel and poll workers in the proper operation and conduct of elections utilizing such equipment through a training program conducted by or approved by the Secretary of State.

(10)     Sample Ballots. DRE units that are used for demonstration and education purposes shall not utilize or be programmed with the official ballot to be used in the primary or election for demonstrational or educational purposes. The units shall utilize or be programmed with a ballot containing the names of fictitious or historical persons whose names do not appear on the official ballot for such primary or election.

## Rule 183-1-12-.03 <u>Acceptance Testing</u> Tabulating Center Personnel, Trained and Certified

All tabulating center personnel must be trained in their respective duties and certified as required by O.C.G.A. Section 21-2-99 for poll officers. All programmers, operators, and

~~data center personnel shall be sworn as provided in O.C.G.A. Sections 21-2-94 and 21-2-95 for poll officers.~~

(1)   Acceptance tests. Upon the receipt of new, repaired, or upgraded components of the voting system, including electronic ballot markers (which consists of both a touchscreen and a printer), ballot scanners, electronic poll books, and election management systems, the election superintendent of the county is responsible to check that an acceptance test has been performed on the device in accordance with standards issued by the Secretary of State. No component of the voting system shall be placed into service until such time as the unit satisfactorily passes the prescribed acceptance tests.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.04 Storage, Maintenance, and Transport of Statewide Voting System Components.  ~~Certification of Program Instructions~~**

~~During the official computer certification, all program test decks, program instructions, and print out sheets become property of the superintendent. All program instructions must be certified by the programmers who programmed them, and such instructions shall be kept with the test decks and filed with the Clerk of the Superior Court following consolidation and certification of the election returns.~~

1.   The election superintendent of the county shall maintain all components of the voting system (including electronic ballot markers, ballot scanners, electronic poll books, and election management systems) in accordance with the requirements of this rule, the directives of the Secretary of State, and the specifications and requirements of the manufacturer.

2.   All electronic components of the voting system shall be stored in a climate controlled space in which the temperature and humidity levels are maintained at acceptable levels year-round which shall not be lower than O degrees Celsius (32 degrees Fahrenheit) nor higher than 40 degrees Celsius (104 degrees Fahrenheit) and not lower than 20 percent relative humidity and not higher than 85 percent relative humidity such that no condensation forms on such components. The components shall not be stored in an area in which liquids or fluids stand, pool, or accumulate at any time or in areas that are subject to such standing, pooling, or accumulating liquids or fluids. The space in which the components are stored shall be secured and shall be accessible only to persons authorized by the election superintendent to have access to such components or such space. The components shall be stored in their packaging boxes or carrying cases with foam inserts and shall not be stacked more than four units high. The back-up battery for the ballot scanner shall be charged at least every 9 months.

3.   The storage areas for the voting system components at the county election office or other designated county facility shall be equipped with one or more of the following forms of electronic surveillance and protection: keypads or electronic locks, motion

detectors, video surveillance, or a security system that is connected to an outside monitoring source, such as the police department or fire department.

4. The election Superintendent shall maintain numbered seals on all electronic ballot markers and ballot scanners in storage and all seal numbers shall be recorded and on file in the office of the election superintendent.

5. All components of the voting system shall be securely transported to polling places. Electronic ballot markers (including printers) and ballot scanners shall be transported in secure boxes or carrying cases that provide vibration and impact protection.

6. Upon delivery to a polling place in preparation for a primary, election, or runoff, all components of the voting system shall be secured and protected from unauthorized access. Upon delivery, the components shall either be stored in a locked, secure room at the polling place; in a locked, secure container that is reasonably affixed to the polling place; be under visual surveillance of an election official or their designee, law enforcement official, or licensed security guard; or, if the previously listed options are not feasible, in another manner, that in the reasonable judgement of the superintendent, secures and protects the voting system components from unauthorized access. Any electronic visual surveillance used for security when voting is not taking place shall not record, capture, or otherwise compromise the privacy of an elector's ballot.

7. The expenses for the implementation of the storage and security requirements of this rule shall be the responsibility of the county or municipal governing authority, as applicable, unless such security features are provided by the State.

8. Maintenance of Voting System Components. After the end of the initial warranty period for state owned voting system components, the county shall be responsible for maintaining an appropriate warranty or otherwise be responsible for maintenance and upkeep of such devices, including the repair and/or replacement of any devices which are destroyed, damaged, or otherwise rendered incapable of use in elections.

Authority: O.C.G.A. § 21-2-31

## Rule 183-1-12-.05 Security of Voting System Components at County Elections Office or Designated County Storage Area

1. Software security. The software contained in electronic ballot markers, ballot scanners, election managements systems, and electronic poll books, regardless of whether the unit is owned by the county or the State, shall not be modified, upgraded, or changed in any way without the specific prior approval of the Secretary of State.

2.  Electronic ballot markers, ballot scanners, and election management systems shall not be connected to the internet and no other software shall be loaded onto or maintained or used on computers on which the election management system software is located except as specifically authorized by the Secretary of State.

3.  The room in which the election management system is located shall be locked at all times when the system is not directly under the supervision of the election superintendent or his or her designee. Lock and key access to the room where the election management system is located shall be limited to the county election superintendent; the election supervisor, if any; personnel of the county election superintendent's office designated by the county election superintendent; building maintenance personnel; and emergency personnel. Building maintenance personnel shall have access to the room in which the election management system is located only to the extent necessary to carry out their maintenance duties. The election superintendent shall maintain on file at all times in the office of the election superintendent a complete and up to date list of all maintenance personnel with access to the room in which the election management system is located. Emergency personnel shall have access to the room in which the election management system is located only as necessary in the event of an emergency and only for the duration of such emergency condition.

4.  The election management system shall remain password-locked at all times when not muse.

5.  While in storage at the county elections office or designated county facility, all components of the voting system (including electronic ballot markers, ballot scanners, electronic poll books, ballot boxes, and election management systems) shall be stored under lock and key at all times when not in use. Lock and key access to such items shall be limited to the county election superintendent; members of the county board of elections; the election supervisor, if any; personnel of the county election superintendent's office designated by the county election superintendent; building maintenance personnel; and emergency personnel. Building maintenance personnel shall have access to the area where such items are stored only to the extent necessary to carry out their maintenance duties. The election superintendent shall maintain on file at all times in the office of the election superintendent a complete and up to date list of all maintenance personnel with access to the area in which such items are stored. Emergency personnel shall have access to the area where such items are stored only as necessary in the event of an emergency and only for the duration of such emergency condition.  Whenever maintenance or emergency personnel are required to enter the storage area, the election superintendent must be notified of that entry as soon as possible and the election superintendent must maintain a log of those persons who entered the storage area.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.06 Handling of Voting System.** ~~Provisional Ballots~~

1. All personnel, with the exception of the permanent employees of the Office of the Secretary of State and permanent employees of the county or municipal election superintendent, who prepare voting equipment for use in a primary, election, or runoff shall complete an oath of custodian before each election. One copy of the oath shall be placed on file in the office of the election superintendent and an additional copy shall be filed with the records for the election filed with the clerk of superior court or the municipal clerk, as appropriate. The oath of custodian shall be in the following form:

STATE OF GEORGIA

COUNTY/MUNICIPALITY OF _____

OATH OF CUSTODIANS AND DEPUTY CUSTODIANS OF GEORGIA VOTING SYSTEM

I, _____, do swear (or affirm) that I will as a (deputy) custodian of the voting systems for the County/Municipality of _____, faithfully perform all of my duties in accordance with state law; that I will prepare in accordance with all applicable rules and regulations governing the use of the voting system all components to be used in primaries, elections, and runoffs in this county/municipality; that I will use my best endeavors to prevent any fraud, deceit, or abuse in carrying out my duties while preparing the voting system for use in primaries, elections, and runoffs; and that I am not disqualified by law to hold the position of (deputy) custodian.

_____

(Deputy) Custodian

Administered by, sworn to,

and subscribed before me,

this _____ day of _____, 200_

Superintendent

(Required by O.C.G.A. Section 21-2-379.6(b))

2. Any electronic ballot markers, ballot scanners, electronic poll books, ballot boxes and accessories that are removed from storage for educational or training purposes must be signed in and out on an equipment log maintained by the election superintendent. The log shall contain, at a minimum, a description of the item being checked out, including any serial number or identifying number; the date and time

when the item is checked out; the name of the person checking out the item; and the date and time when the item is returned to storage.  The items checked out of storage shall remain in the custody and control of the person checking out the items at all times and the person checking out the items shall personally return such items. Each person who utilizes equipment for educational or training purposes must be adequately trained in the use of the equipment prior to the release of the equipment into such person's custody.

3.  The election management system computers shall not be moved or relocated for any purposes. Should it become necessary to relocate an election management system computer or any of its components from one facility to another, the election superintendent shall notify the Secretary of State in advance in writing of the reason for the relocation and the proposed new location.  The election management system shall not be relocated unless and until written authorization for the relocation is received from the Secretary of State except in the event of an emergency situation beyond the control of the election superintendent. If an emergency arises causing the election management system to be moved, the election superintendent is responsible to notify the Secretary of State as soon as possible of the move.

4.  The poll manager shall sign a receipt for components of the voting system assigned to such poll manager's precinct. Upon returning election supplies to the election superintendent's office following the close of the polls, the poll manager shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

5.  All voting system components and other equipment assigned to designated county election technicians shall be accounted for on the night of a primary, election, or runoff and shall be returned to storage. Each technician shall sign a receipt for all such items issued to such technician and, upon returning such items to the election superintendent's office following the close of the polls, the technician shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

6.  The election superintendent shall notify the Secretary of State of any instances of unaccounted for components of the voting system as soon as possible.

7.  The election superintendent shall perform an audit count of all voting system components housed and maintained by the jurisdiction on an annual basis.  The results of the audit shall be submitted to the Secretary of State.

Authority: O.C.G.A. §§ 21-2-31, 21-2-379.6

(1)    This rule shall govern the casting of provisional ballots by voters at primaries and elections in accordance with O.C.G.A. §§ 21-2-418 and 21-2-419.

(2)    In each polling place, there shall be established a location or station in the public area of the polling place for the purpose of issuing and receiving provisional ballots.

(3)    The election superintendent shall provide each polling place with an adequate supply of provisional ballots in each ballot style (district combination) for the precinct and an inner ballot envelope and an outer ballot envelope. The ballot envelopes shall be so designed that the ballot will fit within the inner ballot envelope and the inner ballot envelope will fit within the outer ballot envelope. The inner ballot envelope shall have printed on it the words "Official Provisional Ballot" and nothing else. The outer envelope shall have places for inserting the person's name, precinct, date and name of election, ballot style (district combination), and whether such ballot is a regular provisional ballot, a provisional ballot cast by a voter who registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. §§ 21-2-220 and 21-2-417, or a ballot cast during poll hours extended by a court order, or a combination thereof. Primaries and elections conducted by counties shall use optical scan ballots for provisional voting. Optical scan absentee ballots shall be acceptable for use as provisional ballots. Municipalities shall use the same type of ballots as the municipality uses for mail-in absentee voting. The election superintendent shall also provide a booth for voting provisional ballots in the enclosed space which will provide privacy for a person while voting a provisional ballot and a secure container in which the voted provisional ballots shall be placed.

(4)    Voters whose names do not appear on electors list.

(a)    When a person arrives at a polling place, completes a voter's certificate, and presents it to the poll workers but the person's name does not appear on the official electors list for the precinct, the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, if a master list of registered electors is available, the poll workers shall check the list to determine if the person is registered at a different precinct. If the person's name appears on the master list for a different precinct, the poll workers shall direct the person to the correct precinct.

(b)    If the person's name is not found on the official list of electors for the precinct or the master list, if available, the poll officers shall immediately contact the registrars and the person shall provide such information as the registrars may request to determine if the person is eligible to vote in the election. The registrars shall promptly review the information provided by the person and shall attempt to determine if the person timely and properly registered to vote.

(c)    If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election and should be assigned to the precinct at which the person is present, the registrars shall authorize the poll officers to add the person's name to the official electors list for the

~~precinct and shall permit the person to vote in the same manner as other voters in the precinct vote. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the precinct with a notation of the name of the registrar who authorized such addition. Upon presentation of a properly completed voter's certificate and the identification required by O.C.G.A. § 21-2-417, the person shall be permitted to vote in the same manner as other voters in the precinct.~~

~~(d)     If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election but should be assigned to a different precinct from the one at which the person is present, the registrars shall direct the poll officers to send the person to the appropriate other precinct and the registrars shall notify the officers of such other precinct to add the person's name to the official electors list for such other precinct. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers at such other precinct which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the other precinct by the poll officers of the other precinct with a notation of the name of the registrar who authorized such addition. Upon the completion of a voter's certificate and the submission of the identification required by O.C.G.A. § 21-2-417, the person shall be permitted to vote in the same manner as other persons in such other precinct. However, if, in the reasonable exercise of discretion by the registrars or the poll workers, there is insufficient time for such person to go to such other precinct before the polls close, the poll workers may allow such person to vote a provisional ballot at the precinct in which the person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2-419(c).~~

~~(e)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if properly registered, would be assigned to the precinct at which the person is present, the registrars shall authorize the poll officers to permit the person to cast a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person.~~

~~(f)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the~~

information presented by the person, the person, if registered, would be assigned to a different precinct from the precinct in the county or municipality at which the person is present, the registrars shall direct the poll officers to send the person to the appropriate precinct. The registrars shall notify the officers of such other precinct to permit the person to vote a provisional ballot when such person arrives at such precinct, completes an official voter registration form and a provisional ballot voter's certificate, and submits the appropriate identification required by O.C.G.A. § 21-2-417. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. However, if, in the reasonable exercise of discretion by the registrars or the poll workers, there is insufficient time for such person to go to such other precinct before the polls close, the poll workers may allow such person to vote a provisional ballot at the precinct at which such person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2-419(e).

(g)     If the person appears at a precinct in a county or municipality in which the person does not reside, the registrars shall instruct the poll officers to direct the person to contact the registrars in the county in which the person resides to determine in which precinct such person should vote.

(h)     If the poll officers cannot get in touch with the registrars after making a reasonable effort to do so, the poll officers shall be authorized to permit the person to vote a provisional ballot at the precinct without additional authorization from the registrars. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2-419(e).

(i)     Upon receiving authorization to vote a provisional ballot, the person shall complete a provisional ballot voter's certificate and an official voter registration form and submit such completed certificate and form to the poll officers along with the appropriate identification required by O.C.G.A. § 21-2-417. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an inner ballot envelope and an outer ballot envelope. Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to the provisional ballot voting booth and vote the ballot. Upon completing the

ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(j)    Upon receiving the sealed ballot envelope from a person casting a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person to place the ballot envelope into the secure container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public. The provisional ballot voter's certificate and voter registration form shall be attached together and shall be placed in a separate, distinctively marked envelope which shall be placed in a secure location in the polling place.

(5)    Voter who registered for first time by mail but did not provide required identification.

(a)    When a person arrives at a polling place, completes a voter's certificate, and presents it to the poll workers but does not have the identification required by O.C.G.A. § 21-2-417 and the person's name appears on the official electors list for the precinct with a designation that the person registered to vote for the first time in this state by mail but has not provided the required identification to the registrars as required by O.C.G.A. § 21-2-220, the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the person shall be permitted to cast a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the poll officers shall issue the appropriate ballot style (district combination) to the person as shown on the electors list. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an inner ballot envelope and an outer ballot envelope. Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to the provisional ballot voting booth and vote the ballot. Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(b)    Upon receiving the sealed ballot envelope from a person casting a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed

therein, and shall direct the person to place the ballot envelope into the secure container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)     The provisional ballot shall not be counted unless the voter provides the identification required by O.C.G.A. § 21-2-220 and 21-2-417 to the registrars before the end of the period set by law for the verification of provisional ballots. Such identification may be provided to the registrars in person or by facsimile transmission or, in the case of disabled voters, by delivery by a third party.

(6)     Voters voting during extended polling hours in an election in which federal candidates are on the ballot.

(a)     In the event that the polling hours for a polling place are extended by a court order beyond the normal closing time for a primary, election, or runoff in which federal candidates are on the ballot, all voters who vote after the normal closing time for the polling place shall vote by provisional ballot.

(b)     Voters whose names appear on the electors list and who have the appropriate identification required by O.C.G.A. § 21-2-417 shall complete a provisional voter's certificate and shall be issued a provisional ballot along with an inner ballot envelope and an outer ballot envelope. Such voters shall not be required to complete a voter registration form. It also shall not be necessary to obtain approval from the registrars to issue provisional ballots to such voters. The poll officers shall place the name of the person on the numbered list of provisional ballot voters. Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to a provisional ballot voting booth and vote the ballot. Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers. Upon receiving the sealed ballot envelope from a person casting a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box to designate that the ballot is an extended poll hours provisional ballot, and shall direct the person to place the ballot envelope into the secure container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)     If the voter's name is not on the electors list, the poll workers shall follow the provisions of this rule for regular provisional balloting under this rule and, if the voter is authorized by the registrars to vote a provisional ballot under the terms of this rule, shall also mark the appropriate box on the outer

ballot envelope to indicate that the ballot was issued during extended poll hours.

(d)     If the voter's name is on the electors list but registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. § 21-2-220, the poll officers shall permit the voter to vote in accordance with the provisions of this rule for first time voters who register for the first time in this state by mail without providing the required identification, and shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(e)     The poll officers shall provide each first time voter who registered for the first time in this state by mail without providing the required identification who casts a provisional ballot information on how the voter may provide the registrars with the appropriate identification in order that the voter's ballot may be counted.

(7)     Each voter casting a provisional ballot in a primary, election, or runoff in which federal candidates appear on the ballot shall be given written information explaining how such voter can ascertain if such ballot is counted and, if such ballot is not counted, the reason why such ballot was not counted.

(8)     The provisional ballot voter's certificates and voter registration cards may be picked up during the day by a registrar or deputy registrar for the purpose of beginning the process of determining the eligibility of the persons to cast provisional ballots. Before transferring the voter's certificates and registration cards to the registrars during the day, the poll officers shall note the number of certificates and cards being transferred to the registrars. If such voter's certificates and registration cards are not picked up by the registrars by the time that the polls close and the last voter has voted, the envelope in which the provisional ballot voter's certificates and voter registration cards have been deposited shall be securely sealed and shall be returned to the election superintendent with the other materials from the polling place.

(9)     After the close of the polls and the last voter has voted, the poll officers shall account for all voted provisional ballots, cancelled and spoiled provisional ballots, and unused provisional ballots. The ballot stubs and unused and spoiled ballots shall then be securely sealed in the container provided for them by the election superintendent. The poll officers shall then proceed to open the secure container in which the provisional ballots were deposited and count the number of voted provisional ballots contained therein. The poll officers shall then compare the total number of persons voting provisional ballots as shown on the numbered list of provisional ballot voters with the number of ballots issued and the number of ballots voted. If these numbers do not equal one another, the poll officers shall determine the reason for the inconsistency and shall correct the problem before going further. The poll officers shall seal the voted provisional ballots in a container for transfer to the election superintendent. The poll officers shall complete and sign a provisional ballot recap sheet and post one copy of the recap sheet on the door of the polling place with the election results from the precinct. The remaining copies of the provisional ballot recap

~~sheet along with the numbered list of provisional ballot voters shall be returned to the election superintendent with the other election materials from the precinct.~~

~~(10)   Upon receiving the election materials from the precincts, the election superintendent shall ensure that the envelope containing the provisional ballot voter's certificates and voter registration cards is promptly removed from the other materials and transferred to the registrars for processing. In any event, the voter's certificates and registration cards shall be transferred to the registrars no later than 9:00 a.m. on the day following the day of the primary, election, or runoff. The election superintendent shall also remove the container containing the voted provisional ballots and shall place such container in a secure location within the election superintendent's office.~~

~~(11)   (a)     Upon receiving the provisional ballot voter's certificates and voter registration cards from the election superintendent, the registrars shall promptly proceed to determine the eligibility of each person that voted a provisional ballot.~~

~~(b)     If the registrars determine that the person did timely register and is eligible and entitled to vote in such primary, election, or runoff, the registrars shall mark on the numbered list of provisional ballot voters that the ballot is accepted and shall notify the election superintendent of the proper ballot style (district combination) for the voter.~~

~~(c)     If the registrars determine that the person did not timely register to vote for the primary or election or is not eligible and entitled to vote in such primary or election or if the registrars cannot determine by the close of business on the third business day following the day of the primary, election, or runoff if the voter timely registered and was eligible and entitled to vote in such primary or election, the registrars shall mark on the numbered list of provisional ballot voters that the ballot is rejected.~~

~~(d)     Not later than the close of business on the third business day following the day of the primary, election, or runoff, the registrars shall return to the election superintendent the numbered list of provisional ballot voters reflecting the accepted and rejected provisional ballots.~~

~~(e)     The names of those persons whose names are accepted shall be added to the official electors list. The voter registration cards of those persons whose ballots are rejected on the numbered list of provisional ballot voters shall be processed by the registrars and, if found to be eligible and qualified, shall be added to the electors list for future elections.~~

~~(f)     The registrars shall maintain the provisional ballot voter's certificates for the same period of time and under the same conditions as the regular voter's certificates. Voter registration cards completed by provisional ballot electors shall be maintained for the same period of time and under the same conditions as other voter registration cards.~~

(12)   Upon receiving the numbered list of provisional ballot electors from the registrars, the election superintendent shall prepare to count the accepted provisional ballots. The election superintendent shall first compare the precinct designation and election district information with the style of ballot (district combination) cast by the provisional ballot voter.

(a)      If the ballot style (district combination) voted by the voter was correct, then the election superintendent shall open the outer envelope and place the inner envelope containing the ballot into a ballot box.

(b)      If the ballot style (district combination) voted by the voter was not correct, then the election superintendent shall open the outer envelope and note the correct ballot style (district combination) on the inner envelope. Each such inner envelope shall then be placed in a separate container until all of the outer envelopes have been opened. The outer envelopes shall then be stored in a location away from the inner envelopes in a manner such that the inner envelope and ballot of a voter cannot be identified as being the ballot of a particular voter. The superintendent shall then open each such inner envelope and remove the ballot and shall place a unique identifying number on the ballot along with the designation of the precinct in the nonreflective area at the top of the ballot. The election superintendent shall then prepare or cause to be prepared a duplicate ballot. The duplicate ballot shall be clearly labeled with the word "Duplicate" and shall bear the name of the precinct and the same unique identifying number as the original ballot in the nonreflective area at the top of the ballot. The election superintendent shall transfer or cause to be transferred to the duplicate ballot, in the presence of at least two other consolidation assistants and in public, only the votes cast by the provisional ballot voter in the races and on the questions to which such voter was eligible and entitled to vote. The votes entered on the duplicate ballot shall be verified by at least one consolidation assistant. The completed duplicate ballot shall be placed in the ballot box with the other provisional ballots to be counted. The original ballot shall be placed into an appropriate container and retained.

(c)      After opening all of the outer envelopes and making all necessary duplicate ballots, the election superintendent shall then open the inner envelopes of the ballots in the ballot box and proceed to count the votes in the same manner as absentee ballots are counted. Upon completing the count, the election superintendent shall add the provisional ballot votes to the other votes cast at the polls and by absentee ballot and shall consolidate and certify the results of the primary, election, or runoff. The provisional ballots and any duplicates shall be retained for the same time period and in the same manner as absentee ballots.

(d)      The rejected provisional ballots shall be marked on the outer envelope as "Not Counted" and shall not be opened. The ballots shall be maintained for the same time period and in the same manner as absentee ballots which were returned too late to be counted.

(e)      The election superintendent shall notify the registrars of the names of those persons who cast a provisional ballot in the wrong precinct or on an incorrect ballot style (district combination).

(13)   (a)      Upon identifying the rejected provisional ballot electors, the registrars shall proceed promptly to notify each such person by first-class mail at the address shown on the provisional ballot voter's certificate that his or her ballot was not counted because of the inability of the registrars to verify that the person timely registered to vote or such other proper reason. If the person's voter registration card was approved, the registrars shall also notify the person that his or her name will be added to the elector's list and the person will be eligible to vote in future primaries and elections and that a voter notification or precinct card will be mailed to the person to provide the voter with the correct precinct and election district information.

(b)      Upon receiving notification from the election superintendent of the names of persons who cast provisional ballots in the incorrect precinct or on the incorrect ballot style (district combination), the registrars shall notify such persons of their correct precinct and/or election district information. The sending of a voter notification or precinct card by first-class mail to the address shown on the voter registration card completed by such person when voting by provisional ballot shall be sufficient notice for such voters.

(c)      If the person's voter registration is rejected, the registrars shall notify the person of such rejection in accordance with O.C.G.A. § 21-2-226(d).

(d)      In addition, the registrars shall establish a free access system, such as a toll-free telephone number or an Internet website, by which voters who cast provisional ballots in a primary, election, or runoff in which federal candidates are on the ballot may ascertain whether their ballots were counted or, if the ballots were not counted, the reasons why such ballots were not counted. The registrars shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by such system. Access to information about an individual provisional ballot shall be restricted to the voter who cast such ballot.

### Rule 183-1-12-.07 Preparation for Elections. of the Electors List and Use of ExpressPoll

1.  The election superintendent shall review the electronic databases used to generate ballots for correctness and accuracy in generating paper ballots and touchscreen displays.

2.  Each ballot style and touchscreen display shall be proofread by the election superintendent or a person  or persons   under the direction   of the superintendent to check that the ballot contains the proper    offices, candidates,  and questions  to be submitted  to the voters, that the offices

and names are spelled and designated correctly, that political party or body affiliations and incumbency of candidates are correctly designated where applicable, and that the questions are presented in accordance with law and this rule and that the correct offices and questions are presented on each ballot style or touchscreen display.

3. For each office up for election, the paper ballot or touchscreen display shall state the name of the office; the post, position, or person presently holding the office if necessary to identify the specific office subject to election; the number of candidates for which the voter may vote for such office; the names of the candidates; the residence address of the candidates if there has been a determination that the names are sufficiently similar to so require such information under O.C.G.A. § 21-2-379.5. In partisan elections, the paper ballot and touchscreen display shall designate the political party or body that nominated the candidate or a designation of the candidate as an independent candidate; and the designation of the incumbency of a candidate seeking reelection to the office which the candidate then holds.

4. The offices, candidates, and questions shall be listed on the ballot in the order specified in O.C.G.A. §§ 21-2-379.4 and 21-2-379.5.

5. The election superintendent shall review the audio ballot prepared for use with the touchscreen display for voters with disabilities. The superintendent shall confirm that every section of the audio ballot is pronounced correctly. The election superintendent shall also confirm that no candidate's name; political party, political body, or independent designation; incumbency; or other such information nor any referendum question or answer or response thereto is emphasized, stressed, or otherwise inflected in any manner to distinguish a particular candidate, party or body, question, answer or response to a referendum question either negatively or positively or to suggest whether to vote for or against such candidates or questions in such audio recordings.

6. The Superintendent shall check that the memory cards used in the ballot scanner are formatted and contain no extraneous software or data prior to use in an election. The ballot scanner memory cards shall be named to indicate the polling place where they will be used. If more than one ballot scanner is to be used in a single polling place, the memory card name shall differentiate between the scanners.

Authority: O.C.G.A. §§ 21-2-31, 21-2-379.4, 21-2-379.5

(1)     Beginning July 1, 2006, counties shall use ExpressPoll units at precincts within the county during primaries, elections, and runoffs. The ExpressPoll

~~units shall be utilized in lieu of the printed electors list and ballot encoders in each precinct where in use.~~

~~(2) The county election superintendent shall maintain each ExpressPoll unit, and all components in a secure location under the same conditions as provided for DRE units under Rule 183-1-12-.02(2).~~

~~(3) Effective January 1, 2006, the registrars of each county shall utilize the absentee ballot subsystem of the statewide voter registration system for absentee balloting and advance voting.~~

~~(4) The registrars of each county shall complete the entry of new and updated voter registrations on a timely basis as required by the Secretary of State and shall notify the Secretary of State upon the completion of all such data entry after a registration deadline.~~

~~(5) Prior to each primary or election as specified by the Secretary of State, the county election superintendent shall provide to the Secretary of State or his or her designee a final copy of the GEMS database for the county.~~

~~(6) The county election superintendent and the registrars shall notify the Secretary of State or his or her designee of any changes to the voter registration file for the county or the GEMS database that occur after the process for creating ExpressPoll flash cards begins.~~

~~(7) During the period in which DRE units are tested and prepared prior to delivery to the precincts, the election superintendent shall cause each ExpressPoll unit to undergo logic and accuracy testing. Each ExpressPoll unit must pass such logic and accuracy test prior to being assigned to a precinct. The registrars shall verify the information contained on the ExpressPoll units when assigning the units to precincts.~~

~~(8) Prior to delivery to the precincts, the registrars shall ensure that all persons who have been issued or cast absentee ballots are marked accordingly on the ExpressPoll units.~~

~~(9) Upon the conclusion of each primary, election, or runoff, the poll officers shall return the ExpressPoll units with the other election materials from the precinct to the election superintendent. The registrars and election superintendent shall coordinate the return of the flash cards from the ExpressPoll units to the Secretary of State such that the cards are returned in the same time period as the official election returns.~~

~~(10) For electors whose names are added to the voter registration rolls after the deadline for preparing the flash cards for the ExpressPoll units, the registrars shall provide a printed supplemental list for use at the affected precincts.~~

## <u>Rule 183-1-12-.08 Logic and Accuracy Testing.</u>

1. <u>Primaries and Elections.</u>

   a. <u>On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the</u>

election superintendent shall commence the preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners for use on Election Day.

b. On or before the third day preceding the advance voting period, the election superintendent shall commence the preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners for use during the advance voting period. Voting system components that passed logic and accuracy testing for advance voting do not have to be re-tested for use on Election Day for the same election, unless there is a change in the programming or database used by the component.

c. At least five days prior to the commencement of such preparation and testing, the election superintendent  shall publish a notice in the legal organ of the county stating the date, time, and place or places where preparation and testing of the voting system components for use in the primary or election will commence and stating that such preparation shall continue from day to day until such preparation is complete and that such preparation and testing shall be open to the public and that members of the public are entitled to be present during the preparation and testing. Prior to a runoff election, the Superintendent shall prominently post notice of the date, time, and place of such testing at least 24 hours prior to its occurrence.

d. The election superintendent shall cause such preparation and testing to begin on such date and time and at such place or places. Such preparation and testing shall be open to members of the public to observe; however, such members of the public shall not in any manner interfere with the preparation and testing of the voting system components. Any person found to be interfering with the preparation and testing process may be asked to leave the testing process and may be cited for interfering with an election official while in performance of election duties. Any questions and/or complaints from the general public regarding the preparation and testing process must be directed to the election superintendent and not to the individual personnel conducting the preparation and testing process.   The election superintendent may make such reasonable rules and regulations concerning the conduct of such members of the public observing such preparation and testing as the election superintendent deems necessary and appropriate; provided, however, that such rules and regulations shall not prevent members of the public from fairly observing the preparation and testing of the voting system components.

2. In addition to any reasonable rules and regulations that the election superintendent may create for the public to observe the preparation and testing process, the election superintendent or designee thereof, shall:

a. Be available for the first hour of the first day of testing to explain the preparation and testing process and to respond to questions and provide answers regarding the purpose and the process of preparation and testing;

b. Maintain a presence at all times during the preparation and testing process;

c. Administer an oath of custodian prior to beginning the preparation and testing process to any county personnel (except permanent state, county, or municipal election staff) appointed by the election superintendent to conduct the preparation and testing process;

d. Establish an area reasonable in proximity for the public to observe the preparation and testing process.  Such area shall provide reasonable accommodations for the public insofar as space permits, but shall not be so established as to deny the general public the opportunity to view the process; however, the area should   be of such a nature so as to allow the preparation and testing process to proceed without interference with by the general public;

e. Allow only election office personnel or individuals assigned to conduct the preparation and testing to enter the testing area during the preparation and testing process;

f. Prohibit any preparation and testing reports created for recording the seal numbers of voting system components from being disclosed to the public;

g. Prohibit the security seal numbers or other security measures of any voting system components from being disclosed to the public; and

h. Prohibit photographic and audio equipment of any kind, including cell phone cameras, from being used to record the security seal numbers or other measures used to secure any voting system components, provided that this rule shall not prohibit the news media from reporting on the preparation and testing process, so long as seal numbers and other security measures on any voting system component are not recorded or displayed in any manner.

3. During the public preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners to be used in a particular primary or election, the election superintendent shall cause each electronic ballot marker and scanner to be programmed with the election

files for the precinct at which the electronic ballot marker and ballot scanner unit will be used.

The superintendent shall cause the accuracy of the components to be tested by causing the following tasks to be performed:

A. Check that the electronic poll books accurately look up and check-in voters via both the scanning function and manual lookup and create a voter card that pulls up the correct ballot on the electronic ballot marker for every applicable ballot style.

B. Check that the touchscreen on the electronic ballot marker accurately displays the correct selections and that the touchscreen accurately reflects the selected choices.

C. Check that the printer prints a paper ballot that accurately reflect the choices selected on the touchscreen and immediately mark all printed ballots as "test" ballots.

D. Check that the ballot scanner scans the paper ballot, including both ballots marked by electronic ballot markers and ballots marked with a pen, and that the ballot scanner scans ballots regardless of the orientation the ballot is entered into the scanner.

E. Check that the tabulation contained in the ballot scanner memory card can be accurately uploaded to the election management system, and that the tabulated results match the selections indicated on the paper ballot.

If any component fails any of the testing, the component shall not be used in a primary, election, or runoff until such unit is repaired and inspected and found capable of proper functioning and passes logic and accuracy tests. Upon the successful completion of the logic and accuracy test, the component shall be cleared of any vote totals collected during testing. A zero tape shall be run on the ballot scanner subsequent to successful testing, and the tape shall be attached to the custodian's certification form to document the logic and accuracy testing. The components shall then be sealed and securely stored for transfer to the polling place.

4. After the completion of Logic and Accuracy testing on any voting system component, each component shall be sealed and safely and securely stored until such time as the component is transported to the polling place in which such component is to be used. The zero tapes, results tapes, test ballots, and other paperwork shall be securely stored by the superintendent.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.09. Transport to Polls.**

1.  The election superintendent shall take all necessary measures to cause the voting system components to be safely and securely transported to the polling places.

2.  The election superintendent shall cause the voting system components for each polling place to be delivered to the polling place at least one hour before the time for the opening of the polls.  The election superintendent shall cause magnifying devices to be made available at each polling place to assist voters in reviewing their paper ballots.

3.  If the voting system voting system components are stored at a polling place prior to the arrival of the poll manager or their designee, the election superintendent shall cause the units are stored in a locked, secure manner with appropriate climate control as described in Rule 183-1-12-.04.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.10 ~~Use of Absentee Ballots When Voting Machines are Inaccessible~~ Before the Opening of the Polls.**

~~Absentee ballots may be used by the handicapped if voting machines are inaccessible.~~

1.   The poll officers shall set up and power on the voting system components for voting prior to the opening of the polls. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the election superintendent may deem appropriate to protect the security of the voting system components and to prevent interference with the duties of the poll officers.

2.   The poll officers shall verify that the seal for each voting system component is intact and that there is no evidence or indication of any tampering. The poll officers shall verify that the number of the seal matches the number of the seal recorded for that component when such component was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering, the election superintendent shall be immediately notified and such component shall not be used until such matters are resolved by agreement of the election superintendent and the poll manager.

3.   The poll manager shall check that the electronic poll books, electronic ballot markers, and ballot scanners all indicate zero counts prior to the opening of the polls.

4.   The poll manager shall cause each ballot scanner in the polling place to run a zero tape prior to the start of voting.   If the tape does not show zero votes prior to the start of voting, the election superintendent shall be immediately notified and such unit shall not be used until the unit is cleared and the matter is resolved by agreement of the election superintendent and the poll manager.

5.   The poll manager and two witnesses who have been sworn as poll officers pursuant to O.C.G.A.  §§ 21-2-94 and 21-2-95 shall sign the zero tape from the ballot scanner. The poll manager and those same two witnesses shall then confirm that the ballot box is empty. The Secretary of State shall develop a form to be signed by the poll manager and the two witnesses attesting that the ballot box was empty prior to the opening of the polls.  Such form shall include the date and time it was executed, shall be attached to the zero tape generated by the ballot scanner attached to that ballot box, and shall be returned to the election superintendent with the polling place recap forms at the close of the polls. The

ballot box shall then be securely locked and sealed. Once the ballot box is verified to have been empty and locked and sealed, no person shall access the inside of the ballot box while voting is occurring unless it is absolutely necessary to the functioning of elections. Any such access shall be by the poll manager and two witnesses who have been sworn as poll officers, and the poll manager and witnesses shall attest, on a form to be developed by the Secretary of State, to when and for what purpose the ballot box was accessed, and that no action was taken to affect the results of the election. That form shall also be returned to the election superintendent with the polling place recap form at the close of the polls.

6.    The poll officers shall verify that there is no unauthorized matter affixed to any of the voting system components or present in the voting booths.

7.    The poll officers shall affix a card of instructions for voting within each voting booth and shall place at least one printed sample ballot and at least one voting instructions poster approved or provided by the Secretary of State outside the enclosed space at the polling place for the information of the voters. At least one printed sample ballot and one voting instructions poster shall also be posted in the enclosed space. Prior to voters entering the enclosed space, the poll officers may also distribute to such voters a card of instructions for voting on the voting system that has been approved or provided by the Secretary of State. The poll officers shall also have a sufficient supply of sample ballots available should voters request to view them while voting or reviewing their ballot.

8.    As near as possible to exit of the enclosed space in every polling place in a manner that is visible to voters as they exit the enclosed space, the poll manager shall post a sign that informs voters that ballots shall not be removed from the enclosed space.

Authority: O.C.G.A. § 21-2-31


**Rule 183-1-12-.11 Conducting Elections.**

1.    As each voter presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, each voter shall be offered instruction by a poll officer in the method of voting on the voting system, including specific verbal instruction to review their printed ballot prior to scanning it and that sample ballots and magnifying devices are available upon request to assist them in reviewing their paper ballot. In providing such instruction, the poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote any particular candidate, political party, or political body, or for or against any particular question.

2.        (a) When a person presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, the person shall complete a voter's certificate and submit it to the poll officers. The voter certificate may be an electronic or paper record. The poll officers shall verify the identity of the person and that the person is a registered voter of the precinct and, if so, shall approve the voter's certificate and enter an appropriate designation on the electors list for the precinct reflecting that the voter has voted in the primary, election, or runoff being conducted. The voter's name shall then be entered on the appropriate numbered list of voters.

        (b) A poll officer shall then issue the voter an appropriate voter access card authorizing the voter to vote the correct ballot on the touchscreen or utilize the correct access code to manually bring up the correct ballot on the touchscreen. The voter shall then

enter the enclosed space in the polling place and proceed to vote his or her choices. Upon making his or her selections, the voter shall cause the paper ballot to print, remove his or her printed ballot from the printer, remove the voter access card from the touchscreen unit, review the selections on his or her printed ballot, scan his or her printed ballot into the scanner, and return the voter access card to a poll officer. Then the voter shall exit the enclosed area of the polling place.

(c) If an emergency situation makes utilizing the electronic ballot markers impossible or impracticable, as determined by the election superintendent, the poll officer shall issue the voter an emergency paper ballot that is to be filled out with a pen after verifying the identity of the voter and that the person is a registered voter of the precinct. Emergency paper ballots shall not be treated as provisional ballots, but instead shall be placed into the scanner in the same manner that printed ballots in the polling place are scanned. The election superintendent shall cause each polling place to have a sufficient amount of emergency paper ballots so that voting may continue uninterrupted if emergency circumstances render the electronic ballot markers or printers unusable. The poll manager shall store all emergency ballots in a secure manner and that all used and unused emergency ballots are accounted for. All unused emergency ballots shall be placed into a secure envelope and sealed such that the envelope cannot be opened without breaking such seal.

(d) If an emergency situation exists that makes voting on the electronic ballot markers impossible or impracticable, the poll manager shall alert the election superintendent as soon as possible. The existence of an emergency situation shall be in the discretion of the election supervisor. However, if a poll manager is unable to contact the election superintendent after diligent effort, the poll manager shall have the ability to declare that an emergency situation exists at the polling place. The poll manager shall continue diligent efforts to contact the election superintendent, and shall inform the superintendent as soon as possible of the situation at the polling place. The election superintendent, in his or her discretion, shall either overrule or concur with the declaration of emergency circumstances. While the determination of an emergency situation is in the discretion of the election superintendent, the types of events that may be considered emergencies are power outages, malfunctions causing a sufficient number of electronic ballot markers to be unavailable for use, or waiting times longer than 30 minutes

3.   At least once each hour during the time while the polls are open, the poll officers shall examine the enclosed space to verify that no unauthorized matter has been affixed to any voting system component or placed in the voting booth and that the voting system components have not been tampered with in any manner.  Poll officers shall also check that no unattended ballots are left in the printer or anywhere in the enclosed space other than the appropriate ballot box. Any unattended ballots found in the enclosed space that do not belong to a voter currently in the enclosed space shall not be counted, but shall be secured and labelled as unattended ballots.

4.   The polling place shall be arranged in such a manner as to provide for the privacy of the elector while voting and to allow monitoring of each voting system component by the poll officers while the polls are open. The electronic ballot markers and ballot scanners used in the polling place shall be set up in a manner to assure the privacy of the elector while casting his or her ballot while maintaining the security of such units against tampering, damage, or other improper conduct.  In addition, there shall be at least one electronic ballot marker configured for use by physically disabled electors at each advance

Page 45 of 93

voting location. In addition, at least one ballot marking device shall be configured for voting by physically disabled voters in wheelchairs and provisions shall be made to provide for the privacy of such electors while voting.

5.    It shall be permissible under O.C.G.A. § 21-2-410 and shall not constitute assistance in voting under O.C.G.A. § 21-2-409 for poll officers to assist a voter in inserting the voter card into the ballot marking device and in explaining the operation of the unit to the voter; provided that the poll officer shall withdraw from the voting booth prior to the voter making any selections.  The poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote for any particular candidate, political party, or political body, or for or against any particular question.

6.    Voters utilizing an audio tactile interface (ATI) device to vote on the ballot marking device without the assistance of any other individual shall not be considered as receiving assistance in voting and shall not be required to complete the forms required for receiving assistance in voting pursuant to O.C.G.A. § 21-2-409; however, if another person other than a poll officer is handling the printed ballot before it is inserted into the scanner, that person shall be considered as assisting.

7.    The poll officers shall confirm that voters deposit their ballots and return the voter access cards to the poll officers prior to leaving the enclosed space in the polling place. The poll officers shall arrange and configure the polling place and provide staffing at such places at the polling place to confirm that a voter will not leave the enclosed space with a ballot or voter access card.

8.    The election superintendent shall cause each polling place to be sufficiently staffed and a poll officer to be stationed at every ballot scanner in use in the polling place while voting is occurring.  The poll officer stationed at the ballot scanner shall offer instruction throughout the period while voting is occurring reminding voters to review their printed paper ballots, but shall take all reasonable precautions not to view the selections on an elector's ballot unless it is required due to assistance requested from the elector.

9.  A voter may request information from poll officers concerning how to use the electronic ballot marker or any other voting system component at any time during the voting process. However, once the voter scans his or her ballot into the ballot scanner, even if the ballot is blank with no votes cast, such voter shall be deemed to have voted and may not thereafter vote again. If a voter leaves the room encompassing the enclosed space with his or her paper ballot and does not place that ballot into the appropriate ballot scanner or ballot box, that voter shall be deemed to have voted and may not thereafter vote again. A sign shall be placed at the exit of the enclosed space that informs every voter that ballots may not be removed from the enclosed space. Any paper ballot that is removed from the room encompassing the enclosed space shall not be counted and shall be marked as spoiled by a poll officer.

10.    (a) If a voter discovers that the ballot presented on the electronic ballot marker is not correct or, for a partisan primary, is not the ballot that the voter desired to vote, the voter shall immediately notify a poll officer. The poll officer shall cancel or void the ballot on the electronic ballot marker without attempting in any manner to see how the voter has voted and shall then take the necessary steps to provide the voter with the correct ballot and make any necessary corrections to the voter's certificate of the voter, the electors list, and the numbered list of voters.

(b) If, while reviewing his or her printed ballot, the voter discovers that the printed ballot does not contain the proper ballot selections or that the voter was not issued the proper ballot, the voter shall immediately inform a poll officer. The poll officer shall spoil the paper ballot and take the necessary steps to allow the voter to make his or her selections again on the electronic ballot marker and cause the correct ballot to be issued.

(c) If the voter places his or her paper ballot into the ballot scanner or ballot box prior to notifying the poll officials of any errors in the ballot, the voter shall be deemed to have voted and shall not be permitted to cast another ballot.

11.   (a) If any voting system component malfunctions during the day of a primary, election, or runoff, the poll manager shall immediately notify the election superintendent and shall not allow any voter to use the unit until and unless the malfunction is corrected. The poll manager shall utilize appropriate backup procedures so that voting is not interrupted due to any equipment malfunctions. The election superintendent shall immediately arrange for the repair of the voting system component or shall provide a replacement component as soon as practicable. A replacement component shall not be used unless it has been appropriately tested prior to its use.

(b) In the event that a ballot scanner malfunctions, the voter shall place their voted ballot in the emergency bin connected to the ballot box. The ballots in the emergency bin shall be counted when the ballot scanner is properly functioning, by a replacement ballot scanner brought to the polling place, or, if neither are available, by another scanner at the county elections office. Poll officers may scan ballots placed into the emergency bin through the ballot scanner or a replacement ballot scanner when doing so will not interfere with voting. A voter placing his or her ballot into the emergency bin is considered to have voted that ballot and shall not be permitted to cast another ballot.

Authority: O.C.G.A. § 21-2-31

## Rule 183-1-12-.12 Tabulating Results.

(a)   After the Polls Close.

1.   Immediately after the polls close and the last voter has voted, the poll manager and two witnesses who have been previously sworn as poll officers as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 shall begin the closing procedure on each ballot scanner so that no further votes are cast and record the number of scanned ballots from every ballot scanner used in the polling place. The poll manager and the two witnesses shall record the number of scanned ballots from each scanner on a recap form to be developed by the Secretary of State. The poll manager and the two witnesses shall cause each ballot scanner to print three tapes of the tabulated results and shall sign each tape indicating that it is a true and correct copy of the tape produced by the ballot scanner. If the poll manager or the witnesses have reason to believe that printed tapes are not a true and correct tabulation of the ballots scanned by that ballot scanner, the poll manager or witness shall document the reasons and evidence for that belief and inform the election superintendent, who shall take appropriate action, in his or her discretion, so that the ballots in the ballot box associated with the ballot scanner are accurately tabulated.

2.   The poll manager shall cause the number of printed ballots from each ballot marking device to be recorded on the recap form. The poll manager shall further cause the number of spoiled ballots and ballots placed in the emergency bin of the scanner that were unable to be scanned to be recorded on the recap form. The poll manager shall cause the total number of voter check ins from the electronic poll book and/or paper voter list to be recorded on the recap form. If the numbers recorded on the recap form do not reconcile with each other, the poll manager shall immediately determine the reason for the inconsistency; correct the inconsistency, if possible; and fully document the inconsistency or problem along with any corrective measures taken.

3.   One of the three tapes of the tabulated results printed from the ballot scanner shall be affixed to the door of the polling place for the information of the public along with a copy of the provisional ballot recap form for the polling place. One tape shall be placed into an envelope (or reusable document storage container suitable for the same purposes) provided by the election superintendent, along with the "poll officer" memory card from the ballot scanner. The envelope shall be sealed by the poll manager and the same two witnesses who signed the tape such that the envelope cannot be opened without breaking such seal. The poll manager and the two witnesses shall initial the envelope indicating that it contains the correct tape and memory card from the indicated ballot scanner.  The envelope shall be labelled with the name of the polling place, the serial number of the ballot scanner, and the number assigned to the ballot scanner for that election.  The third tape shall be placed into another envelope with the polling place recap form.

4.   The poll manager and two witnesses who have been sworn as poll officers as provided in O.C.G.A.  §§ 21-2-94 and 21-2-95 shall unseal and open each ballot box, remove the paper ballots from each ballot box, and place the paper ballots into a durable, portable, secure and sealable container to be provided for transport to the office of the election superintendent. A separate container shall be used for the paper ballots from each ballot box and the container shall be labelled with the polling place, ballot scanner serial number, the number assigned to the ballot scanner for that election, the count of the ballots from the tabulation tape, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the poll manager and the same two witnesses such that it cannot be opened without breaking the seal. The poll manager and the two witnesses shall sign a label affixed to the container indicating that it contains all of the correct ballots from the indicated ballot box and no additional ballots.

5.   The poll manager and the same two witnesses who emptied the ballot box shall complete and sign a form indicating that the ballot box was properly emptied and the ballots were properly stored and secured.  Such form shall be delivered to the election superintendent with the completed polling place recap form. The ballot box shall be resealed and the new seal numbers shall be documented.

6.   The envelopes containing the tabulation tape and the memory card, the containers containing the paper ballots, the completed polling place recap forms, voter access cards, supervisor's cards, electors lists, numbered lists of voters, electronic poll books, and other such paperwork shall be delivered to the election superintendent by the poll manager and at least one other sworn poll officer or law

enforcement official.  The election superintendent or his or her designee shall receive the materials and shall issue a receipt to the poll manager for the materials. The poll manager and any poll officers who travelled with the materials shall sign a form indicating that no sealed documents were unsealed enroute and that the materials have not been tampered with. The election superintendent, in his or her discretion, may allow a designee of the poll manager to deliver the envelopes or containers containing the ballot scanner tabulation tapes and memory cards to be used for unofficial reporting of results prior to the delivery of the other polling place materials provided that the same procedures for transit and delivery set forth herein are followed.

7.   Before leaving the polling place, the poll manager shall power off, secure, and seal all electronic ballot markers, ballot boxes, and ballot scanners. The polling place shall be locked to prohibit unauthorized entry.

(b)   Consolidation of Results.

1.   All persons involved with the tabulation and consolidation of the election results and who will operate the computer programs or handle the memory cards shall be sworn in the same manner that custodians are sworn before entering into their duties.

2.   Only persons who are permanent employees of the election superintendent or have been duly sworn as poll officers or custodians shall touch or be in contact with any ballot, container, returns, tapes, device, memory card, or any other such election materials. Only persons who are employed by the election superintendent or have been duly sworn shall be in the immediate area of the tabulating center designated by the superintendent for the officers to conduct the tabulation and consolidation of the election results.

3.   The tabulation and consolidation shall be performed in public. However, the election superintendent may make reasonable rules and regulations for conduct at the tabulating center so that the security of the results and the returns and to avoid interference with the tabulating center personnel.

4.   Upon the delivery of any election materials from a polling place, the election superintendent or his or her designee shall provide a receipt that clearly states what election materials have been deliver.

5.   Upon receiving the paper ballots and the memory cards, the election superintendent shall verify the signatures on the sealed envelopes and containers, verify that the seals are intact, that the envelopes or containers have not been opened, and that there is no evidence of tampering with the envelopes, containers, or their contents.

6.   In the case of elections for county, state, and federal office, after verifying that the envelopes and containers are properly sealed and have not been opened or tampered with, the election superintendent shall break the seal and open each envelope and remove the memory card and results tape. The election superintendent or his or her designee shall then insert the memory card into the election management system computer and transfer the vote totals from the memory card into the election management system for official tabulation and consolidation.

7.   After transferring all of the vote totals from the memory cards to the election management system and consolidating such totals with the totals from the absentee

ballot system and such votes from any provisional ballots which have been found by the registrars to be authorized pursuant to O.C.G.A. § 21-2-419, the election superintendent shall prepare the official consolidated returns for the primary, election, or runoff.

8.   The election superintendent shall not list and certify in the official consolidated returns for an election any results for write in candidates who were not properly qualified under O.C.G.A. § 21-2-133.

9.   In the case of primaries, elections, and runoffs for county, state, and federal office, the county election superintendent shall transmit to the Secretary of State the election returns by precinct for the county in electronic format or by electronic means, as may be specified by the Secretary of State, within fourteen days following a primary, election, or runoff.

(c)   Election Night Reporting. The election superintendent shall transmit to the Secretary of State unofficial election results for all races for state offices in any primary, election, or runoff as soon as possible after the closing of the polls for such primary, election, or runoff. Such results shall be transmitted in a format prescribed by the Secretary of State. At a minimum, the results shall be transmitted upon one third of the precincts reporting results, upon two thirds of the precincts reporting results, and upon all precincts reporting results, including absentee ballots within all precincts. Except upon prior notice to and consultation with the Secretary of State, no election superintendent shall conclude the tabulation of votes on election night in any primary, election, or runoff in which there are contested races for federal and state offices until and unless all such unofficial results, including absentee ballots, have been transmitted to the Secretary of State.

Authority: O.C.G.A. § 21-2-31


**Rule 183-1-12-.13 Storage of Returns.**

(a)   After tabulating and consolidating the results, the election superintendent shall prepare an electronic file which shall contain a copy of the information contained on each memory card which shall include all ballot images as well as vote totals and a copy of the consolidated returns from the election management system.

(b)   The electronic file shall be stored on a secure medium which shall be placed in a sealed envelope or container and shall become a part of the election materials which shall be deposited with the clerk of superior court or the municipal clerk, as appropriate, in accordance with O.C.G.A. § 21-2-500. In addition, the signed results tape from each ballot scanner and the corresponding paper ballots shall also be deposited with the clerk of superior court.

(c)   The memory cards shall be sealed in an appropriate container and securely maintained by the election superintendent until the period for requesting a recount of the primary, election, or run off results has expired. The election superintendent and at least one other sworn individual in the tabulating center shall seal the container and sign the seal such that the container cannot be opened without destroying or damaging the seal. Upon the expiration of the period for requesting a recount, the election superintendent may use the memory cards for programming ballot scanners units for the next primary, election, or runoff.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.14 Maintenance of Equipment.**
(a)   Each county shall be responsible for maintaining all components of the voting system, including electronic ballot markers, printers, ballot scanners, electronic poll books, computers, and software provided to such county by the Secretary of State or purchased by such county and shall either purchase a warranty/maintenance agreement for such equipment and software or shall assume the responsibility for repair, maintenance, and upkeep of all system components.
(b)   In the event of any malfunction or problem with any voting system component, the county election superintendent shall document the problem and its resolution and shall provide such information to the Secretary of State. The documentation shall include a detailed description of the malfunction or problem, the steps taken to correct the malfunction or problem, and the cause of such malfunction or problem if a cause can be determined.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.15 Use of Equipment by Municipalities.**
(a)  The county election superintendent is authorized to permit any municipality within the county to conduct its election with electronic ballot markers, printers, ballot scanners, and other components of the statewide voting system through a written intergovernmental agreement between the county and the municipality; provided that the municipality agrees to maintain and operate the equipment in accordance with law, these rules and regulations, and the manufacturer's guidelines and specifications and provided further that the municipality trains all of its election personnel and poll officers in the proper operation and conduct of elections utilizing such equipment through an appropriate training program approved by the Secretary of State.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.16 Demonstrations of Voting Equipment**
(a)   When being used for demonstration and voter education purposes, electronic ballot markers and ballot scanners shall not utilize or be programmed with the official ballot to be used in the primary or election. The device shall utilize or be programmed with a ballot containing the names of fictitious or historical persons whose names do not appear on the official ballot for such primary or election.

**Rule 183-12-.17 Tabulating Center Personnel, Trained and Certified**
All tabulating center personnel must be trained in their respective duties and certified as required by O.C.G.A. § 21-2-99 for poll officers. All programmers, operators, and data center personnel shall be sworn as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 for poll officers.

Authority: O.C.G.A. § 21-2-31

**Rule 183-12-.18 Provisional Ballots**
(1)    This rule shall govern the casting of provisional ballots by voters at primaries and elections in accordance with O.C.G.A. §§ 21-2-418 and 21-2-419.
(2)   In each polling place, there shall be established a location or station in the public area of the polling place for the purpose of issuing and receiving provisional ballots.
(3)   The election superintendent shall provide each polling place with an adequate supply of provisional ballots in each ballot style (district combination) for the precinct and an inner ballot envelope and an outer ballot envelope. The election superintendent shall also be prepared to resupply polling places with provisional ballots in needed ballot styles in a timely manner while voting is occurring so that polling places do not run out of provisional ballots. The ballot envelopes shall be so designed that the ballot will fit within the inner ballot envelope and the inner ballot envelope will fit within the outer ballot envelope. The inner ballot envelope shall have printed on it the words "Official Provisional Ballot" and nothing else. The outer envelope shall have places for inserting the person's name, precinct, date and name of election, ballot style (district combination), and whether such ballot is a regular provisional ballot, a provisional ballot cast by a voter who registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. §§ 21-2-220 and 21-2-417, or a ballot cast during poll hours extended by a court order, or a combination thereof. Primaries and elections conducted by counties shall use optical scan ballots for provisional voting. The poll manager shall cause all voted provisional ballots to be deposited into the provisional ballot box and not be inserted into the polling place ballot scanner and kept separate and apart from non-provisional ballots case at the polling place. Municipalities shall use the same type of ballots as the municipality uses for mail-in absentee voting. The election superintendent shall also provide a booth for voting provisional ballots in the enclosed space which will provide privacy for a person while voting a provisional ballot and a secure container in which the voted provisional ballots shall be placed.
(4)   Voters whose names do not appear on electors list.
        (a)   When a person arrives at a polling place, completes a voter's certificate, and presents it to the poll workers but the person's name does not appear on the official electors list for the precinct, the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the polling place shall have an electronic poll book that includes a mastered list of registered voters in the state, and the poll workers shall check the list to determine if the person is assigned to a different polling place within the county or registered in a different county. If the person's name appears on the master list for a different precinct within the same county, the poll workers shall inform the person of his or her correct polling place. The person shall be instructed to go to his or her correct polling place if practicable, but that if it is not practicable for the person to get to his or her correct polling place before the close of polls, that the person may vote a provisional ballot in the polling place in which they are present.  If, after receiving that instruction, the person states that it is not practicable for him or her to get to their correct polling

place prior to the close of voting, the poll officer shall offer the person a provisional ballot. If the person is registered in a different county, the poll officer shall inform the person that he or she appears to be registered in a different county. If the person is still eligible to vote in the county in which they appear to be registered, the person may return to that county to vote. If the person states a good-faith belief that he or she timely registered to vote in the county in which he or she is present, he or she shall be offered a provisional ballot.

(b)   If the person's name is not found on the official list of electors for the precinct or the master list, if the poll officers shall immediately contact the registrars and the person shall provide such information as the registrars may request to determine if the person is eligible to vote in the election. The registrars shall promptly review the information provided by the person and shall attempt to determine if the person timely and properly registered to vote in the county in which he or she is present.

(c)   If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election and should be assigned to the precinct at which the person is present, the registrars shall authorize the poll officers to add the person's name to the official electors list for the precinct and shall permit the person to vote in the same manner as other voters in the precinct vote. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the precinct with a notation of the name of the registrar who authorized such addition. Upon presentation of a properly completed voter's certificate and the identification required by O.C.G.A. § 21-2-417, the person shall be permitted to vote in the same manner as other voters in the precinct.

d)   If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election but should be assigned to a different precinct within the same county where the person is present, the registrars shall direct the poll officers to inform the person of the appropriate other precinct and the registrars shall notify the officers of such other precinct to add the person's name to the official electors list for such other precinct. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers at such other precinct which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the other precinct by the poll officers of the other precinct with a notation of the name of the registrar who authorized such addition. Upon the completion of a voter's certificate and the submission of the identification required by O.C.G.A. § 21-2-417. the person shall be permitted to vote in the same manner as other persons in such other precinct. However, the poll officer shall also instruct the person that if it is not practicable for such person to go to such other precinct before the polls close and the person communicates that to the poll officers, the person shall be offered a provisional ballot at the precinct in which the person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21·2-419(c).

(e)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if properly registered, would be assigned to the precinct at which the person is present, the registrars shall inform the poll officers and the person shall be offered a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person.

(f)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if registered, would be assigned to a different precinct from the precinct in the county at which the person is present, the registrars shall direct the poll officers to inform the person of the appropriate precinct. The registrars shall notify the officers of such other precinct to permit the person to vote a provisional ballot when such person arrives at such precinct, completes an official voter registration form and a provisional ballot voter's certificate, and submits the appropriate identification required by O.C.G.A.   § 21-2-417. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. However, the poll officer shall also instruct the person that if it is not practicable for such person to go to such other precinct before the polls close and the person communicates that to the poll officers, the person shall be offered a provisional ballot at the precinct at which such person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2·419(c).

(g)     If the person appears at a precinct in a county or municipality in which the person does not reside, the registrars shall instruct the poll officers to direct the person to contact the registrars in the county in which the person resides to determine in which precinct such person should vote.

(h)     If the poll officers cannot get in touch with the registrars after making a reasonable effort to do so, the poll officers shall be authorized to permit the person to receive a provisional ballot at the precinct without additional authorization from the registrars. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2-419(c).

(i)     Upon accepting the opportunity to receive a provisional ballot, the person shall complete a provisional ballot voter's certificate and an official voter registration form and submit such completed certificate and form to the poll officers along with the appropriate identification required by O.C.G.A. § 21-2-417. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars

along with an Inner ballot envelope and an outer ballot envelope.  Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to the provisional ballot voting booth and mark the ballot with his or her intended selections.  Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(j)   Upon receiving the sealed ballot envelope from a person casting a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete,  shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person to place the ballot envelope into the secure container for provisional  ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public. The provisional ballot voter's certificate and voter registration form shall be attached together and shall be placed in a separate, distinctively  marked  envelope  or  reusable  document  container  which  shall  be placed in a secure location in the polling place.

(5)   Voter who registered for first time by mail but did not provide required identification.

(a)   When a person arrives at a polling place, completes a voter's certificate, and presents it to the poll workers but does not have the identification required by O.C.G.A. § 21-2-417 and the person's name appears on the official electors list for the precinct with a designation that the person registered to vote for the first time in this state by mail but has not provided the required identification to the registrars as required by O.C.G.A. § 21- 2-220. the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the person shall  be  permitted  to  cast  a  provisional  ballot  at  such  precinct.  When  there  are multiple ballot styles (district combinations) in use in the precinct, the poll officers shall issue the appropriate ballot style (district combination) to the person as shown on the electors list. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an inner ballot envelope and an outer ballot envelope.  Before issuing the outer ballot envelope to the person. the poll officers shall enter the person's name, the name of the precinct, the date and name  of  the  election,  and  the  ballot  style  (district  combination)  on  the  outer envelope. The person shall then retire to the provisional ballot voting booth and mark the ballot with his or her intended selections. Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(b)   Upon  receiving  the  sealed  ballot  envelope  from  a  person  completing  a provisional ballot, the poll officers  shall verify that the information requested on the outer ballot envelope  is complete, shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person

to place the ballot envelope into the secure container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)     The provisional ballot shall not be counted unless the voter provides the identification required by O.C.G.A. § 21-2-220 and 21-2-417 to the registrars before the end of the period set by law for the verification of provisional ballots. Such identification may be provided to the registrars in person, by email, by facsimile transmission or, in the case of disabled voters, by delivery by a third party.

(6)   Voters voting during extended polling hours in an election in which federal candidates are on the ballot.

(a)    In the event that the polling hours for a polling place are extended by a court order beyond the normal closing time for a primary, election, or runoff in which federal candidates are on the ballot, all voters who vote after the normal closing time for the polling place shall vote by provisional ballot.

(b)    Voters whose names appear on the electors list and who have the appropriate identification required by O.C.G.A. § 21-2-417 shall complete a provisional voter's certificate and shall be issued a provisional ballot along with an inner ballot envelope and an outer ballot envelope. Such voters shall not be required to complete a voter registration form. It also shall not be necessary to obtain approval from the registrars to issue provisional ballots to such voters. The poll officers shall place the name of the person on the numbered list of provisional ballot voters. Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to a provisional ballot voting booth and mark the ballot with his or her intended selections.  Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers. Upon receiving the sealed ballot envelope from a person completing a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box to designate that the ballot is an extended poll hours provisional ballot, and shall direct the person to place the ballot envelope into the secure container for provisional  ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)    If the voter's name is not on the electors list, the poll workers shall follow the provisions of this rule for regular provisional balloting under this rule and, if the voter is authorized by the registrars to vote a provisional ballot under the terms of this rule, shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(d)    If the voter's name is on the electors list but registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. § 21-2-220. the poll officers shall permit the voter to vote in accordance with the provisions of this rule for first time voters who register for the first time in this state

by mail without providing the required identification. and shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(e)   The poll officers shall provide each first time voter who registered for the first time in this state by mail without providing the required identification who casts a provisional ballot information on how the voter may provide the registrars with the appropriate identification in order that the voter's ballot may be counted.

(7)   Each voter casting a provisional ballot in a primary.  election, or runoff in which federal candidates appear on the ballot shall be given written information explaining how such voter can ascertain if such ballot is counted and, if such ballot is not counted, the reason why such ballot was not counted.

(8)   The provisional ballot voter's certificates and voter registration cards may be picked up during the day by a registrar or deputy registrar for the purpose of beginning the process of determining the eligibility of the persons to cast provisional ballots. Before transferring the voter's certificates and registration cards to the registrars during the day, the poll officers shall note the number of certificates and cards being transferred to the registrars. If such voter's certificates and registration cards are not picked up by the registrars by the time that the polls close and the last voter has voted, the envelope in which the provisional ballot voter's certificates and voter registration cards have been deposited shall be securely sealed and shall be returned to the election superintendent with the other materials from the polling place.

(9)   After the close of the polls and the last voter has voted, the poll officers shall account for all voted provisional ballots, cancelled and spoiled provisional ballots, and unused provisional ballots. The ballot stubs and unused and spoiled ballots shall then be securely sealed in the container provided for them by the election superintendent. The poll officer, along with two other witnesses sworn as poll officers, shall then proceed to open the secure container in which the provisional ballots were deposited and count the number of voted provisional ballots contained therein. The poll officer and witnesses shall then compare the total number of persons voting provisional ballots as shown on the numbered list of provisional ballot voters with the number of ballots issued and the number of ballots voted. If these numbers do not equal one another. the poll officers shall determine the reason for the inconsistency and shall correct the problem before going further. The poll officer and witnesses shall seal the voted provisional ballots in a container for transfer to the election superintendent. The poll officers shall complete and sign a provisional ballot recap sheet and post one copy of the recap sheet on the door of the polling place with the election results from the precinct. The remaining copies of the provisional ballot recap sheet along with the numbered list of provisional ballot voters shall be returned to the election superintendent with the other election materials from the precinct.

(10)   Upon receiving the election materials from the precincts, the election superintendent shall cause the envelope containing the provisional ballot voter's certificates and voter registration cards to be promptly removed from the other materials and, if applicable, transferred to the registrars for processing. If applicable, the voter's certificates and registration cards shall be transferred to the registrars no later than 9:00 a.m. on the day following the day of the primary, election, or runoff. The election superintendent shall also

remove the container containing the voted provisional ballots and shall place such container in a secure location within the election superintendent's office.

(11)

(a)   Upon receiving the provisional ballot voter's certificates and voter registration cards from the election superintendent, the registrars shall promptly proceed to determine the eligibility of each person that voted a provisional ballot.

(b)   If the registrars determine that the person did timely register and is eligible and entitled to vote in such primary, election, or runoff, the registrars shall mark on the numbered list of provisional ballot voters that the ballot is accepted and shall notify the election superintendent of the proper ballot style (district combination) for the voter.

(c)   If the registrars determine that the person did not timely register to vote for the primary or election or is not eligible and entitled to vote in such primary or election or if the registrars cannot determine by the close of business on the third business day following the day of the primary, election, or runoff if the voter timely registered and was eligible and entitled to vote in such primary or election, the registrars shall mark on the numbered list of provisional ballot voters that the ballot is rejected.

(d)   Not later than the close of business on the third business day following the day of the primary, election, or runoff, the registrars shall return to the election superintendent the numbered list of provisional ballot voters reflecting the accepted and rejected provisional ballots.

(e)   The names of those persons whose names are accepted shall be added to the official electors list. The voter registration cards of those persons whose ballots are rejected on the numbered list of provisional ballot voters shall be processed by the registrars and, if found to be eligible and qualified, shall be added to the electors list for future elections.

(f)   The registrars shall maintain the provisional ballot voter's certificates for the same period of time and under the same conditions as the regular voter's certificates. Voter registration cards completed by provisional ballot electors shall be maintained for the same period of time and under the same conditions as other voter registration cards.

(12)   Upon receiving the numbered list of provisional ballot electors from the registrars, the election superintendent shall prepare to count the accepted provisional ballots. The election superintendent shall first compare the precinct designation and election district information with the style of ballot (district combination) cast by the provisional ballot voter.

(a)   If the ballot style (district combination) voted by the voter was correct, then the election superintendent shall open the outer envelope and place the inner envelope containing the ballot into a ballot box.

(b)   If the ballot style (district combination) voted by the voter was not correct, then the election superintendent shall open the outer envelope and note the correct ballot style (district combination) on the inner envelope. Each such inner envelope shall then be placed in a separate container until all of the outer envelopes have been opened. The outer envelopes shall then be stored in a location away from the

inner envelopes in a manner such that the inner envelope and ballot of a voter cannot be identified as being the ballot of a particular voter. The superintendent shall then open each such inner envelope and remove the ballot and shall place a unique identifying number on the ballot along with the designation of the precinct at the top of the ballot. The election superintendent shall then prepare or cause to be prepared a duplicate ballot. The duplicate ballot shall be clearly labeled with the word "Duplicate" and shall bear the name of the precinct and the same unique identifying number as the original ballot at the top of the ballot. The election superintendent shall transfer or cause to be transferred to the duplicate ballot, in the presence of at least two other consolidation assistants and in public, only the votes cast by the provisional ballot voter in the races and on the questions to which such voter was eligible and entitled to vote. The votes entered on the duplicate ballot shall be verified by at least one consolidation assistant. The completed duplicate ballot shall be placed in the ballot box with the other provisional ballots to be counted. The original ballot shall be placed into an appropriate container and retained.

(c)   After opening all of the outer envelopes and making all necessary duplicate ballots, the election superintendent shall then open the inner envelopes of the ballots in the ballot box and proceed to count the votes in the same manner as absentee ballots are counted. Upon completing the count, the election superintendent shall add the provisional ballot votes to the other votes cast at the polls and by absentee ballot and shall consolidate and certify the results of the primary, election, or runoff. The provisional ballots and any duplicates shall be retained for the same time period and in the same manner as absentee ballots.

(d)   The rejected provisional ballots shall be marked on the outer envelope as "Not Counted" and shall not be opened. The ballots shall be maintained for the same time period and in the same manner as absentee ballots which were returned too late to be counted.

(e)   The election superintendent shall notify the registrars of the names of those persons who cast a provisional ballot in the wrong precinct or on an incorrect ballot style (district combination).

(13)

(a)   Upon identifying the rejected provisional ballot electors, the registrars shall proceed fil the earliest possible time to notify each such person by first-class mail at the address shown on the provisional ballot voter's certificate that his or her ballot was not counted because of the inability of the registrars to verify that the person timely registered to vote or such other proper reason. The registrars shall also attempt to notify the person by telephone or email if the provisional ballot voter certificate contains an email address or telephone number. If the person's voter registration card was approved, the registrars shall also notify the person that his or her name will be added to the elector's list and the person will be eligible to vote in future primaries and elections and that a voter notification or precinct card will be mailed to the person to provide the voter with the correct precinct and election district information.

(b)   Upon receiving notification from the election superintendent of the names of persons who cast provisional ballots in the incorrect precinct or on the incorrect

ballot style (district combination), the registrars shall notify such persons of their correct precinct and/or election district information. The sending of a voter notification or precinct card by first-class mail to the address shown on the voter registration card completed by such person when voting by provisional ballot shall be sufficient notice for such voters.

(c)     If the person's voter registration is rejected, the registrars shall notify the person of such rejection in accordance with O.C.G.A. § 21-2·226(d).

(d)     In addition, the registrars shall establish a free access system, such as a toll-free telephone number or an Internet website, by which voters who cast provisional ballots in a primary, election, or runoff in which federal candidates are on the ballot may ascertain whether their ballots were counted or, if the ballots were not counted, the reasons why such ballots were not counted. The registrars shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by such system. Access to information about an individual provisional ballot shall be restricted to the voter who cast such ballot.

Authority: O.C.G.A. § 21-2-31

### Rule 183-1-12-.19 Preparation of the Electors List and Use of Electronic Poll Book

(1)     Election superintendents shall cause each polling place to be equipped with an appropriate number of electronic poll books within the county during primaries, elections, and runoffs. Electronic poll books shall be the primary method for checking in voters and creating voter access cards, but the superintendent shall cause every polling place to be equipped with a paper backup list of every registered voter assigned to that polling place. The paper backup list shall be used in case the electronic poll books do not properly function. The superintendent shall cause poll workers to be adequately training checking in voters on both electronic poll books and paper backup list.

(2)     The county election superintendent shall maintain each electronic poll book device, and all components in a secure location as provided for in Rule .183·1-12-.04 and 183-1-12-.05.

(3)     Effective January 1, 2006, the registrars of each county shall utilize the absentee ballot subsystem of the statewide voter registration system for absentee balloting and advance voting.

(4)     The registrars of each county shall complete the entry of new and updated voter registrations on a timely basis as required by the Secretary of State and shall notify the Secretary of State upon the completion of all such data entry after a registration deadline.

(5)     Prior to each primary or election as specified by the Secretary of State, the county election superintendent shall provide to the Secretary of State or his or her designee a final copy of the Selection management system database for the county.

(6)     The county election superintendent and the registrars shall notify the Secretary of State or his or her designee of any changes to the voter registration file for the county or the

election management system database that occur after the process for programing the electronic poll books has begun.

(7)   During the period in which election system components are tested and prepared prior to delivery to polling places, the election superintendent shall cause each electronic poll book to undergo logic and accuracy testing. Each electronic poll book must pass such logic and accuracy test prior to being delivered to a polling place. The election superintendent or registrars shall verify the information contained on the electronic poll books prior to delivering the units to polling places.

(8)   Prior to delivery to a polling place, the election superintendent or registrars shall cause the electronic poll books to accurately mark all persons who have been issued or cast absentee ballots in the election.

(9)   Upon the conclusion of each primary, election, or runoff, the poll officers shall return the electronic poll books with the other election materials from the polling place to the election superintendent. The registrars and election superintendent shall inform the Secretary of State of all voters who cast ballots in each primary election or runoff in a format to be determined by the Secretary of State and in the same time period as the official election returns.

(10)      For electors whose names are added to the voter registration rolls after the preparation of the electronic poll books, the registrars shall provide a printed supplemental list for use at the affected polling places.

Authority: O.C.G.A. § 21-2-31


**Rule 183-1-12-.20 Use of Emergency Paper Absentee Ballots When Voting Machines are Inaccessible**

Emergency paper ballots shall be offered to and may be used by persons with disabilities in non-emergency situations if the electronic ballot marker are inaccessible.

Authority: O.C.G.A. § 21-2-31

## COPY OF THE PROPOSED NEW RULE

**RULE 183-1-12.01 Conduct of Elections**

1. Beginning with the 2020 Presidential Preference Primary, all federal, state, and county general primaries and elections, special primaries and elections, and referendums in the State of Georgia shall be conducted via an Optical Scanning Voting System as defined by O.C.G.A. 21-2-1(19.1). Voting at the polls, including both Election Day and absentee-in-person voting shall be conducted via ballots marked by electronic ballot markers and tabulated by ballot scanners. The electronic ballot markers and ballot scanners shall be supplied by the Secretary of State or purchased by the counties with the authorization of the Secretary of State. Absentee-by-mail voting shall also be conducted through the use of an optical scanning voting system.

2. The Superintendent shall cause every polling place and advance voting location to have a sufficient number of blank paper ballots that can be marked by pen available for use in the event of emergency.  The election superintendent shall also be prepared to resupply polling places with emergency paper ballots in needed ballot styles in a timely manner while voting is occurring so that polling places do not run out of emergency paper ballots.

Authority: O.C.G.A. §§ 21-2-1, 21-2-31

**RULE 183-1-12.02 Definitions**

(1) As used in this rule, the term:

    (a) "Ballot" shall have the meaning set forth in O.C.G.A. § 21-2-2.

    (b) "Ballot scanner" shall have the meaning set forth in O.C.G.A. § 21-2-2.

    (c) "Ballot Style" shall mean the specific offices, candidates, and questions displayed on an electronic ballot marker or paper ballot for voters according to their assigned precinct.

    (d) "Electronic ballot marker" shall have the meaning set forth in O.C.G.A. § 21-2-2.

    (e) "Election management system" is an electronic system that contains databases for elections, allows for the creation of ballots, generates ballot scanner memory cards, and computes tabulated results, amongst performing other election functions.

    (f) "Electronic poll book" shall mean an electronic device that contains a list registered voters with sufficient information to look up voter, check them

in, and encode voter access cards that bring up the correct ballot on an electronic ballot marker.

(g) "Election Superintendent" or "superintendent" means a county board of elections and registrations, a county board of elections, a judge of the probate court, or an elections supervisor or director so designated by a county board or judge of the probate court. For municipal elections, the term shall include the municipal counterparts set forth in O.C.G.A. § 21-2-2.

(h) "Enclosed space" shall mean that area within a polling place enclosed with a guardrail or barrier closing the inner portion of such area so that only such persons as are inside such guardrail or barrier can approach within six feet of the ballot box, voting compartments, voting booths, voting machines, electronic ballot markers, or ballot scanners.

(i) "Opening of the Polls" shall mean the commencement of voting in a particular primary, election, or runoff. Opening of the polls does not refer to the unlocking or opening of the doors of the polling place. Similarly, the term "Closing of the Polls" shall mean the cessation of voting in a particular primary, election, or runoff and not the locking or closing of the doors of the polling place.

(j) "Poll officer" shall have the meaning set forth in O.C.G.A. § 21-2-2.

(k) "Polling place" shall have the meaning set forth in O.C.G.A. § 21-2-2.

(l) "Precinct" shall have the meaning set forth in O.C.G.A. § 21-2-2.

(m) "Voter Access Card" shall mean the electronic card issued to a voter which is inserted into an electronic ballot marker to bring up the voter's correct ballot.

(n) "Zero Tape" shall mean a tape printed out by a ballot scanner unit which shows that no votes have been tabulated by the scanner for that election.

(o) "Voting system" or "voting system components" shall include electronic ballot markers, printers, ballot scanners, election management systems, electronic poll books, and voter access cards.

Authority: O.C.G.A. §§ 21-2-2, 21-2-31

## Rule 183-1-12-.03 Acceptance Testing

(1) Acceptance tests. Upon the receipt of new, repaired, or upgraded components of the voting system, including electronic ballot markers (which consists of both a touchscreen and a printer), ballot scanners, electronic poll books, and election management systems,

the election superintendent of the county is responsible to check that an acceptance test has been performed on the device in accordance with standards issued by the Secretary of State. No component of the voting system shall be placed into service until such time as the unit satisfactorily passes the prescribed acceptance tests.

Authority: O.C.G.A. § 21-2-31

### Rule 183-1-12-.04 Storage, Maintenance, and Transport of Statewide Voting System Components.

1. The election superintendent of the county shall maintain all components of the voting system (including electronic ballot markers, ballot scanners, electronic poll books, and election management systems) in accordance with the requirements of this rule, the directives of the Secretary of State, and the specifications and requirements of the manufacturer.

2. All electronic components of the voting system shall be stored in a climate controlled space in which the temperature and humidity levels are maintained at acceptable levels year-round which shall not be lower than 0 degrees Celsius (32 degrees Fahrenheit) nor higher than 40 degrees Celsius (104 degrees Fahrenheit) and not lower than 20 percent relative humidity and not higher than 85 percent relative humidity such that no condensation forms on such components. The components shall not be stored in an area in which liquids or fluids stand, pool, or accumulate at any time or in areas that are subject to such standing, pooling, or accumulating liquids or fluids. The space in which the components are stored shall be secured and shall be accessible only to persons authorized by the election superintendent to have access to such components or such space. The components shall be stored in their packaging boxes or carrying cases with foam inserts and shall not be stacked more than four units high. The back-up battery for the ballot scanner shall be charged at least every 9 months.

3. The storage areas for the voting system components at the county election office or other designated county facility shall be equipped with one or more of the following forms of electronic surveillance and protection: keypads or electronic locks, motion detectors, video surveillance, or a security system that is connected to an outside monitoring source, such as the police department or fire department.

4. The election Superintendent shall maintain numbered seals on all electronic ballot markers and ballot scanners in storage and all seal numbers shall be recorded and on file in the office of the election superintendent.

5. All components of the voting system shall be securely transported to polling places. Electronic ballot markers (including printers) and ballot scanners shall be transported in secure boxes or carrying cases that provide vibration and impact protection.

6. Upon delivery to a polling place in preparation for a primary, election, or runoff, all components of the voting system shall be secured and protected from unauthorized access. Upon delivery, the components shall either be stored in a locked, secure room at the polling place; in a locked, secure container that is reasonably affixed to the polling place; be under visual surveillance of an election official or their designee, law enforcement official, or licensed security guard; or, if the previously listed options are not feasible, in another manner, that in the reasonable judgement of the superintendent, secures and protects the voting system components from unauthorized access. Any electronic visual surveillance used for security when voting is not taking place shall not record, capture, or otherwise compromise the privacy of an elector's ballot.

7. The expenses for the implementation of the storage and security requirements of this rule shall be the responsibility of the county or municipal governing authority, as applicable, unless such security features are provided by the State.

8. Maintenance of Voting System Components. After the end of the initial warranty period for state owned voting system components, the county shall be responsible for maintaining an appropriate warranty or otherwise be responsible for maintenance and upkeep of such devices, including the repair and/or replacement of any devices which are destroyed, damaged, or otherwise rendered incapable of use in elections.

Authority: O.C.G.A. § 21-2-31

## Rule 183-1-12-.05 Security of Voting System Components at County Elections Office or Designated County Storage Area

1. Software security. The software contained in electronic ballot markers, ballot scanners, election managements systems, and electronic poll books, regardless of whether the unit is owned by the county or the State, shall not be modified, upgraded, or changed in any way without the specific prior approval of the Secretary of State.

2. Electronic ballot markers, ballot scanners, and election management systems shall not be connected to the internet and no other software shall be loaded onto or maintained or used on computers on which the election management system software is located except as specifically authorized by the Secretary of State.

3. The room in which the election management system is located shall be locked at all times when the system is not directly under the supervision of the election superintendent or his or her designee. Lock and key access to the room where the election management system is located shall be limited to the county election superintendent; the election supervisor, if any; personnel of the county election superintendent's office designated by the county election superintendent; building maintenance personnel; and emergency personnel. Building maintenance personnel

shall have access to the room in which the election management system is located only to the extent necessary to carry out their maintenance duties. The election superintendent shall maintain on file at all times in the office of the election superintendent a complete and up to date list of all maintenance personnel with access to the room in which the election management system is located. Emergency personnel shall have access to the room in which the election management system is located only as necessary in the event of an emergency and only for the duration of such emergency condition.

4. The election management system shall remain password-locked at all times when not in use.

5. While in storage at the county elections office or designated county facility, all components of the voting system (including electronic ballot markers, ballot scanners, electronic poll books, ballot boxes, and election management systems) shall be stored under lock and key at all times when not in use. Lock and key access to such items shall be limited to the county election superintendent; members of the county board of elections; the election supervisor, if any; personnel of the county election superintendent's office designated by the county election superintendent; building maintenance personnel; and emergency personnel. Building maintenance personnel shall have access to the area where such items are stored only to the extent necessary to carry out their maintenance duties. The election superintendent shall maintain on file at all times in the office of the election superintendent a complete and up to date list of all maintenance personnel with access to the area in which such items are stored. Emergency personnel shall have access to the area where such items are stored only as necessary in the event of an emergency and only for the duration of such emergency condition.  Whenever maintenance or emergency personnel are required to enter the storage area, the election superintendent must be notified of that entry as soon as possible and the election superintendent must maintain a log of those persons who entered the storage area.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.06 Handling of Voting System.**

1. All personnel, with the exception of the permanent employees of the Office of the Secretary of State and permanent employees of the county or municipal election superintendent, who prepare voting equipment for use in a primary, election, or runoff shall complete an oath of custodian before each election. One copy of the oath shall be placed on file in the office of the election superintendent and an additional copy shall be filed with the records for the election filed with the clerk of superior court or the municipal clerk, as appropriate. The oath of custodian shall be in the following form:

STATE OF GEORGIA

COUNTY/MUNICIPALITY OF _____

OATH OF CUSTODIANS AND DEPUTY CUSTODIANS OF GEORGIA VOTING SYSTEM

I, _____, do swear (or affirm) that I will as a (deputy) custodian of the voting systems for the County/Municipality of _____, faithfully perform all of my duties in accordance with state law; that I will prepare in accordance with all applicable rules and regulations governing the use of the voting system all components to be used in primaries, elections, and runoffs in this county/municipality; that I will use my best endeavors to prevent any fraud, deceit, or abuse in carrying out my duties while preparing the voting system for use in primaries, elections, and runoffs; and that I am not disqualified by law to hold the position of (deputy) custodian.

_____

(Deputy) Custodian

Administered by, sworn to,

and subscribed before me,

this _____ day of _____, 20__

Superintendent

(Required by O.C.G.A. Section 21-2-379.6(b))

2.  Any electronic ballot markers, ballot scanners, electronic poll books, ballot boxes and accessories that are removed from storage for educational or training purposes must be signed in and out on an equipment log maintained by the election superintendent. The log shall contain, at a minimum, a description of the item being checked out, including any serial number or identifying number; the date and time when the item is checked out; the name of the person checking out the item; and the date and time when the item is returned to storage. The items checked out of storage shall remain in the custody and control of the person checking out the items at all times and the person checking out the items shall personally return such items. Each person who utilizes equipment for educational or training purposes must be adequately trained in the use of the equipment prior to the release of the equipment into such person's custody.

3.  The election management system computers shall not be moved or relocated for any purposes. Should it become necessary to relocate an election management system computer or any of its components from one facility to another, the election superintendent shall notify the Secretary of State in advance in writing of the reason

for the relocation and the proposed new location.  The election management system shall not be relocated unless and until written authorization for the relocation is received from the Secretary of State except in the event of an emergency situation beyond the control of the election superintendent. If an emergency arises causing the election management system to be moved, the election superintendent is responsible to notify the Secretary of State as soon as possible of the move.

4. The poll manager shall sign a receipt for components of the voting system assigned to such poll manager's precinct. Upon returning election supplies to the election superintendent's office following the close of the polls, the poll manager shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

5. All voting system components and other equipment assigned to designated county election technicians shall be accounted for on the night of a primary, election, or runoff and shall be returned to storage. Each technician shall sign a receipt for all such items issued to such technician and, upon returning such items to the election superintendent's office following the close of the polls, the technician shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

6. The election superintendent shall notify the Secretary of State of any instances of unaccounted for components of the voting system as soon as possible.

7. The election superintendent shall perform an audit count of all voting system components housed and maintained by the jurisdiction on an annual basis.  The results of the audit shall be submitted to the Secretary of State.

Authority: O.C.G.A. §§ 21-2-31, 21-2-379.6

**Rule 183-1-12-.07 Preparation for Elections.**

1. The election superintendent shall review the electronic databases used to generate ballots for correctness and accuracy in generating paper ballots and touchscreen displays.

2. Each ballot style and touchscreen display  shall be proofread  by the election superintendent or a person  or persons  under the direction  of the superintendent to check that the ballot contains the proper  offices, candidates,  and questions  to be submitted  to the voters, that the offices and names are spelled and designated correctly,  that political  party or body affiliations and incumbency of candidates are correctly designated  where

applicable, and that the questions are presented in accordance with law and this rule and that the correct offices and questions are presented on each ballot style or touchscreen display.

3. For each office up for election, the paper ballot or touchscreen display shall state the name of the office; the post, position, or person presently holding the office if necessary to identify the specific office subject to election; the number of candidates for which the voter may vote for such office; the names of the candidates; the residence address of the candidates if there has been a determination that the names are sufficiently similar to so require such information under O.C.G.A. § 21-2-379.5. In partisan elections, the paper ballot and touchscreen display shall designate the political party or body that nominated the candidate or a designation of the candidate as an independent candidate; and the designation of the incumbency of a candidate seeking reelection to the office which the candidate then holds.

4. The offices, candidates, and questions shall be listed on the ballot in the order specified in O.C.G.A. §§ 21-2-379.4 and 21-2-379.5.

5. The election superintendent shall review the audio ballot prepared for use with the touchscreen display for voters with disabilities. The superintendent shall confirm that every section of the audio ballot is pronounced correctly. The election superintendent shall also confirm that no candidate's name; political party, political body, or independent designation; incumbency; or other such information nor any referendum question or answer or response thereto is emphasized, stressed, or otherwise inflected in any manner to distinguish a particular candidate, party or body, question, answer or response to a referendum question either negatively or positively or to suggest whether to vote for or against such candidates or questions in such audio recordings.

6. The Superintendent shall check that the memory cards used in the ballot scanner are formatted and contain no extraneous software or data prior to use in an election. The ballot scanner memory cards shall be named to indicate the polling place where they will be used. If more than one ballot scanner is to be used in a single polling place, the memory card name shall differentiate between the scanners.

Authority: O.C.G.A. §§ 21-2-31, 21-2-379.4, 21-2-379.5

## Rule 183-1-12-.08 Logic and Accuracy Testing.

1. Primaries and Elections.

   a. On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the

election superintendent shall commence the preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners for use on Election Day.

b. On or before the third day preceding the advance voting period, the election superintendent shall commence the preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners for use during the advance voting period. Voting system components that passed logic and accuracy testing for advance voting do not have to be re-tested for use on Election Day for the same election, unless there is a change in the programming or database used by the component.

c. At least five days prior to the commencement of such preparation and testing, the election superintendent  shall publish a notice in the legal organ of the county stating the date, time, and place or places where preparation and testing of the voting system components for use in the primary or election will commence, and stating that such preparation shall continue from day to day until such preparation is complete and that such preparation and testing shall be open to the public and that members of the public are entitled to be present during the preparation and testing. Prior to a runoff election, the Superintendent shall prominently post notice of the date, time, and place of such testing at least 24 hours prior to its occurrence.

d. The election superintendent shall cause such preparation and testing to begin on such date and time and at such place or places. Such preparation and testing shall be open to members of the public to observe; however, such members of the public shall not in any manner interfere with the preparation and testing of the voting system components. Any person found to be interfering with the preparation and testing process may be asked to leave the testing process and may be cited for interfering with an election official while in performance of election duties. Any questions and/or complaints from the general public regarding the preparation and testing process must be directed to the election superintendent and not to the individual personnel conducting the preparation and testing process.   The election superintendent may make such reasonable rules and regulations concerning the conduct of such members of the public observing such preparation and testing, as the election superintendent deems necessary and appropriate; provided, however, that such rules and regulations shall not prevent members of the public from fairly observing the preparation and testing of the voting system components.

2. In addition to any reasonable rules and regulations that the election superintendent may create for the public to observe the preparation and testing process, the election superintendent or designee thereof, shall:

    a.  Be available for the first hour of the first day of testing to explain the preparation and testing process and to respond to questions and provide answers regarding the purpose and the process of preparation and testing;

    b.  Maintain a presence at all times during the preparation and testing process;

    c.  Administer an oath of custodian prior to beginning the preparation and testing process to any county personnel (except permanent state, county, or municipal election staff) appointed by the election superintendent to conduct the preparation and testing process;

    d.  Establish an area reasonable in proximity for the public to observe the preparation and testing process. Such area shall provide reasonable accommodations for the public insofar as space permits, but shall not be so established as to deny the general public the opportunity to view the process; however, the area should be of such nature so as to allow the preparation and testing process to proceed without interference with by the general public;

    e.  Allow only election office personnel or individuals assigned to conduct the preparation and testing to enter the testing area during the preparation and testing process;

    f.  Prohibit any preparation and testing reports created for recording the seal numbers of voting system components from being disclosed to the public;

    g.  Prohibit the security seal numbers or other security measures of any voting system components from being disclosed to the public; and

    h.  Prohibit photographic and audio equipment of any kind, including cell phone cameras, from being used to record the security seal numbers or other measures used to secure any voting system components, provided that this rule shall not prohibit the news media from reporting on the preparation and testing process, so long as seal numbers and other security measures on any voting system component are not recorded or displayed in any manner.

3.  During the public preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners to be used in a particular primary or election, the election superintendent shall cause each electronic ballot marker and scanner to be programmed with the election

files for the precinct at which the electronic ballot marker and ballot scanner unit will be used.

The superintendent shall cause the accuracy of the components to be tested by causing the following tasks to be performed:

A. Check that the electronic poll books accurately look up and check-in voters via both the scanning function and manual lookup and create a voter card that pulls up the correct ballot on the electronic ballot marker for every applicable ballot style.

B. Check that the touchscreen on the electronic ballot marker accurately displays the correct selections and that the touchscreen accurately reflects the selected choices.

C. Check that the printer prints a paper ballot that accurately reflect the choices selected on the touchscreen and immediately mark all printed paper ballots as "test" ballots.

D. Check that the ballot scanner scans the paper ballot, including both ballots marked by electronic ballot markers and ballots marked with a pen, and that the ballot scanner scans ballots regardless of the orientation the ballot is entered into the scanner.

E. Check that the tabulation contained in the ballot scanner memory card can be accurately uploaded to the election management system, and that the tabulated results match the selections indicated on the paper ballot.

If any component fails any of the testing, the component shall not be used in a primary, election, or runoff until such unit is repaired and inspected and found capable of proper functioning and passes logic and accuracy tests. Upon the successful completion of the logic and accuracy test, the component shall be cleared of any vote totals collected during testing. A zero tape shall be run on the ballot scanner subsequent to successful testing, and the tape shall be attached to the custodian's certification form to document the logic and accuracy testing. The components shall then be sealed and securely stored for transfer to the polling place.

4. After the completion of Logic and Accuracy testing on any voting system component, each component shall be sealed and safely and securely stored until such time as the component is transported to the polling place in which such component is to be used. The zero tapes, results tapes, test ballots, and other paperwork shall be securely stored by the superintendent.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.09. Transport to Polls.**

1.   The election superintendent shall take all necessary measures to cause the voting system components to be safely and securely transported to the polling places.

2.   The election superintendent shall cause the voting system components for each polling place to be delivered to the polling place at least one hour before the time for the opening of the polls.   The election superintendent shall cause magnifying devices to be made available at each polling place to assist voters in reviewing their paper ballots.

3.   If the voting system components are stored at a polling place prior to the arrival of the poll manager or their designee, the election superintendent shall cause the components to remain stored in a locked, secure manner with appropriate climate control as described in Rule 183-1-12-.04.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.10 Before the Opening of the Polls.**

1.   The poll officers shall set up and power on the voting system components for voting prior to the opening of the polls. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the election superintendent may deem appropriate to protect the security of the voting system components and to prevent interference with the duties of the poll officers.

2.   The poll officers shall verify that the seal for each voting system component is intact and that there is no evidence or indication of any tampering. The poll officers shall verify that the number of the seal matches the number of the seal recorded for that component when such component was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering, the election superintendent shall be immediately notified and such component shall not be used until such matters are resolved by agreement of the election superintendent and the poll manager.

3.   The poll manager shall check that the electronic poll books, electronic ballot markers, and ballot scanners all indicate zero counts prior to the opening of the polls.

4.   The poll manager shall cause each ballot scanner in the polling place to run a zero tape prior to the start of voting.   If the tape does not show zero votes prior to the start of voting, the election superintendent shall be immediately notified and such unit shall not be used until the unit is cleared and the matter is resolved by agreement of the election superintendent and the poll manager.

5.   The poll manager and two witnesses who have been sworn as poll officers pursuant to O.C.G.A.   §§ 21-2-94 and 21-2-95 shall sign the zero tape from the ballot scanner. The

poll manager and those same two witnesses shall then confirm that the ballot box is empty. The Secretary of State shall develop a form to be signed by the poll manager and the two witnesses attesting that the ballot box was empty prior to the opening of the polls.  Such form shall include the date and time it was executed, shall be attached to the zero tape generated by the ballot scanner attached to that ballot box, and shall be returned to the election superintendent with the polling place recap forms at the close of the polls. The ballot box shall then be securely locked and sealed. Once the ballot box is verified to have been empty and locked and sealed, no person shall access the inside of the ballot box while voting is occurring unless it is absolutely necessary to the functioning of elections. Any such access shall be by the poll manager and two witnesses who have been sworn as poll officers, and the poll manager and witnesses shall attest, on a form to be developed by the Secretary of State, to when and for what purpose the ballot box was accessed, and that no action was taken to affect the results of the election. That form shall also be returned to the election superintendent with the polling place recap form at the close of the polls.

6.  The poll officers shall verify that there is no unauthorized matter affixed to any of the voting system components or present in the voting booths.

7.   The poll officers shall affix a card of instructions for voting within each voting booth and shall place at least one printed sample ballot and at least one voting instructions poster approved or provided by the Secretary of State outside the enclosed space at the polling place for the information of the voters. At least one printed sample ballot and one voting instructions poster shall also be posted in the enclosed space. Prior to voters entering the enclosed space, the poll officers may also distribute to such voters a card of instructions for voting on the voting system that has been approved or provided by the Secretary of State. The poll officers shall also have a sufficient supply of sample ballots available should voters request to view them while voting or reviewing their ballot.

8.  As near as possible to exit of the enclosed space in every polling place in a manner that is visible to voters as they exit the enclosed space, the poll manager shall post a sign that informs voters that ballots shall not be removed from the enclosed space.

Authority: O.C.G.A. § 21-2-31, 21-2-94, 21-2-95

**Rule 183-1-12-.11 Conducting Elections.**
1.   As each voter presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, each voter shall be offered instruction by a poll officer in the method of voting on the voting system, including specific verbal instruction to review their printed ballot prior to scanning it and that sample ballots and magnifying devices are available upon request to assist them in reviewing their paper ballot. In providing such instruction, the poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote any particular candidate, political party, or political body, or for or against any particular question.

2.  (a) When a person presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, the person shall complete

a voter's certificate and submit it to the poll officers. The voter certificate may be an electronic or paper record. The poll officers shall verify the identity of the person and that the person is a registered voter of the precinct and, if so, shall approve the voter's certificate and enter an appropriate designation on the electors list for the precinct reflecting that the voter has voted in the primary, election, or runoff being conducted. The voter's name shall then be entered on the appropriate numbered list of voters.

(b) A poll officer shall then issue the voter an appropriate voter access card authorizing the voter to vote the correct ballot on the touchscreen or utilize the correct access code to manually bring up the correct ballot on the touchscreen. The voter shall then enter the enclosed space in the polling place and proceed to vote his or her choices. Upon making his or her selections, the voter shall cause the paper ballot to print, remove his or her printed ballot from the printer, remove the voter access card from the touchscreen component, review the selections on his or her printed ballot, scan his or her printed ballot into the scanner, and return the voter access card to a poll officer. Then the voter shall exit the enclosed area of the polling place.

(c) If an emergency situation makes utilizing the electronic ballot markers impossible or impracticable, as determined by the election superintendent, the poll officer shall issue the voter an emergency paper ballot that is to be filled out with a pen after verifying the identity of the voter and that the person is a registered voter of the precinct. Emergency paper ballots shall not be treated as provisional ballots, but instead shall be placed into the scanner in the same manner that printed ballots in the polling place are scanned. The election superintendent shall cause each polling place to have a sufficient amount of emergency paper ballots so that voting may continue uninterrupted if emergency circumstances render the electronic ballot markers or printers unusable. The poll manager shall store all emergency ballots in a secure manner and that all used and unused emergency ballots are accounted for. All unused emergency ballots shall be placed into a secure envelope and sealed such that the envelope cannot be opened without breaking such seal.

(d) If an emergency situation exists that makes voting on the electronic ballot markers impossible or impracticable, the poll manager shall alert the election superintendent as soon as possible. The existence of an emergency situation shall be in the discretion of the election supervisor. However, if a poll manager is unable to contact the election superintendent after diligent effort, the poll manager shall have the ability to declare that an emergency situation exists at the polling place. The poll manager shall continue diligent efforts to contact the election superintendent, and shall inform the superintendent as soon as possible of the situation at the polling place. The election superintendent, in his or her discretion, shall either overrule or concur with the declaration of emergency circumstances.  While the determination of an emergency situation is in the discretion of the election superintendent, the types of events that may be considered emergencies are power outages, malfunctions causing a sufficient number of electronic ballot markers to be unavailable for use, or waiting times longer than 30 minutes.

3.   At least once each hour during the time while the polls are open, the poll officers shall examine the enclosed space to verify that no unauthorized matter has been affixed to any

voting system component or placed in the voting booth and that the voting system components have not been tampered with in any manner. Poll officers shall also check that no unattended ballots are left in the printer or anywhere in the enclosed space other than the appropriate ballot box. Any unattended ballots found in the enclosed space that do not belong to a voter currently in the enclosed space shall not be counted, but shall be secured and labelled as unattended ballots.

4.   The polling place shall be arranged in such a manner as to provide for the privacy of the elector while voting and to allow monitoring of each voting system component by the poll officers while the polls are open. The electronic ballot markers and ballot scanners used in the polling place shall be set up in a manner to assure the privacy of the elector while casting his or her ballot while maintaining the security of such units against tampering, damage, or other improper conduct.   In addition, there shall be at least one electronic ballot marker configured for use by physically disabled electors at each advance voting location. In addition, at least one ballot marking device shall be configured for voting by physically disabled voters in wheelchairs and provisions shall be made to provide for the privacy of such electors while voting.

5.   It shall be permissible under O.C.G.A.  § 21-2-410 and shall not constitute assistance in voting under O.C.G.A.  § 21-2-409 for poll officers to assist a voter in inserting the voter card into the ballot marking device and in explaining the operation of the unit to the voter; provided that the poll officer shall withdraw from the voting booth prior to the voter making any selections.  The poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote for any particular candidate, political party, or political body, or for or against any particular question.

6.   Voters utilizing an audio tactile interface (ATI) device to vote on the ballot marking device without the assistance of any other individual shall not be considered as receiving assistance in voting and shall not be required to complete the forms required for receiving assistance in voting pursuant to O.C.G.A.  § 21-2-409; however, if another person other than a poll officer is handling the printed ballot before it is inserted into the scanner, that person shall be considered as assisting.

7.   The poll officers shall confirm that voters deposit their ballots and return the voter access cards to the poll officers prior to leaving the enclosed space in the polling place. The poll officers shall arrange and configure the polling place and provide staffing at such places at the polling place to confirm that a voter will not leave the enclosed space with a ballot or voter access card.

8.   The election superintendent shall cause each polling place to be sufficiently staffed and a poll officer to be stationed at every ballot scanner in use in the polling place while voting is occurring.  The poll officer stationed at the ballot scanner shall offer instruction throughout the period while voting is occurring reminding voters to review their printed paper ballots, but shall take all reasonable precautions not to view the selections on an elector's ballots unless it is required due to assistance requested by the elector.

9.   A voter may request information from poll officers concerning how to use the electronic ballot marker or any other voting system component at any time during the voting process. However, once the voter scans his or her ballot into the ballot scanner, even if the ballot is blank with no votes cast, such voter shall be deemed to have voted and may not thereafter vote again. If a voter leaves the room encompassing the enclosed space with his or her paper ballot and does not place that ballot into the appropriate ballot scanner or ballot box, that voter shall be deemed to have voted and may not thereafter vote again. A sign shall be placed at the exit of the enclosed space that informs every voter that ballots may not be removed from the enclosed space. Any paper ballot that is removed from the room encompassing the enclosed space shall not be counted and shall be marked as spoiled by a poll officer.

10.      (a) If a voter discovers that the ballot presented on the electronic ballot marker is not correct or, for a partisan primary, is not the ballot that the voter desired to vote, the voter shall immediately notify a poll officer. The poll officer shall cancel or void the ballot on the electronic ballot marker without attempting in any manner to see how the voter has voted and shall then take the necessary steps to provide the voter with the correct ballot and make any necessary corrections to the voter's certificate of the voter, the electors list, and the numbered list of voters.

        (b) If, while reviewing his or her printed ballot, the voter discovers that the printed ballot does not contain the proper ballot selections or that the voter was not issued the proper ballot, the voter shall immediately inform a poll officer. The poll officer shall spoil the paper ballot and take the necessary steps to allow the voter to make his or her selections again on the electronic ballot marker and cause the correct ballot to be issued.

        (c) If the voter places his or her paper ballot into the ballot scanner or ballot box prior to notifying the poll officials of any errors in the ballot, the voter shall be deemed to have voted and shall not be permitted to cast another ballot.

11.      (a) If any voting system component malfunctions during the day of a primary, election, or runoff, the poll manager shall immediately notify the election superintendent and shall not allow any voter to use the component until and unless the malfunction is corrected. The poll manager shall utilize appropriate backup procedures so that voting is not interrupted due to any equipment malfunctions. The election superintendent shall immediately arrange for the repair of the voting system component or shall provide a replacement component as soon as practicable. A replacement component shall not be used unless it has been appropriately tested prior to its use.

        (b) In the event that a ballot scanner malfunctions, the voter shall place their voted ballot in the emergency bin connected to the ballot box. The ballots in the emergency bin shall be counted when the ballot scanner is properly functioning, by a replacement ballot scanner brought to the polling place, or, if neither are available, by another scanner at the county elections office. Poll officers may scan ballots placed into the emergency bin through the ballot scanner or a replacement ballot scanner when doing so will not interfere

with voting. A voter placing his or her ballot into the emergency bin is considered to have voted that ballot and shall not be permitted to cast another ballot.

Authority: O.C.G.A. §§ 21-2-31, 21-2-409, 21-2-410

**Rule 183-1-12-.12 Tabulating Results.**

(a)   After the Polls Close.

1.   Immediately after the polls close and the last voter has voted, the poll manager and two witnesses who have been previously sworn as poll officers as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 shall begin the closing procedure on each ballot scanner so that no further votes are cast and record the number of scanned ballots from every ballot scanner used in the polling place. The poll manager and the two witnesses shall record the number of scanned ballots from each scanner on a recap form to be developed by the Secretary of State. The poll manager and the two witnesses shall cause each ballot scanner to print three tapes of the tabulated results and shall sign each tape indicating that it is a true and correct copy of the tape produced by the ballot scanner. If the poll manager or the witnesses have reason to believe that printed tapes are not a true and correct tabulation of the ballots scanned by that ballot scanner, the poll manager or witness shall document the reasons and evidence for that belief and inform the election superintendent, who shall take appropriate action, in his or her discretion, so that the ballots in the ballot box associated with the ballot scanner are accurately tabulated.

2.   The poll manager shall cause the number of printed ballots from each ballot marking device to be recorded on the recap form. The poll manager shall further cause the number of spoiled ballots and ballots placed in the emergency bin of the scanner that were unable to be scanned to be recorded on the recap form. The poll manager shall cause the total number of voter check ins from the electronic poll book and/or paper voter list to be recorded on the recap form. If the numbers recorded on the recap form do not reconcile with each other, the poll manager shall immediately determine the reason for the inconsistency; correct the inconsistency, if possible; and fully document the inconsistency or problem along with any corrective measures taken.

3.   One of the three tapes of the tabulated results printed from the ballot scanner shall be affixed to the door of the polling place for the information of the public along with a copy of the provisional ballot recap form for the polling place. One tape shall be placed into an envelope (or reusable document storage container suitable for the same purposes) provided by the election superintendent, along with the "poll officer" memory card from the ballot scanner. The envelope shall be sealed by the poll manager and the same two witnesses who signed the tape such that the envelope cannot be opened without breaking such seal. The poll manager and the two witnesses shall initial the envelope indicating that it contains the correct tape and memory card from the indicated ballot scanner. The envelope shall be labelled with the name of the polling place, the serial number of the ballot scanner, and the

number assigned to the ballot scanner for that election.  The third tape shall be placed into another envelope with the polling place recap form.

4.   The poll manager and two witnesses who have been sworn as poll officers as provided in O.C.G.A.  §§ 21-2-94 and 21-2-95 shall unseal and open each ballot box, remove the paper ballots from each ballot box, and place the paper ballots into a durable, portable, secure and sealable container to be provided for transport to the office of the election superintendent. A separate container shall be used for the paper ballots from each ballot box and the container shall be labelled with the polling place, ballot scanner serial number, the number assigned to the ballot scanner for that election, the count of the ballots from the tabulation tape, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the poll manager and the same two witnesses such that it cannot be opened without breaking the seal. The poll manager and the two witnesses shall sign a label affixed to the container indicating that it contains all of the correct ballots from the indicated ballot box and no additional ballots.

5.   The poll manager and the same two witnesses who emptied the ballot box shall complete and sign a form indicating that the ballot box was properly emptied and the ballots were properly stored and secured.  Such form shall be delivered to the election superintendent with the completed polling place recap form. The ballot box shall be resealed and the new seal numbers shall be documented.

6.    The envelopes containing the tabulation tape and the memory card, the containers containing the paper ballots, the completed polling place recap forms, voter access cards, supervisor's cards, electors lists, numbered lists of voters, electronic poll books, and other such paperwork shall be delivered to the election superintendent by the poll manager and at least one other sworn poll officer or law enforcement official.   The election superintendent or his or her designee shall receive the materials and shall issue a receipt to the poll manager for the materials. The poll manager and any poll officers who travelled with the materials shall sign a form indicating that no sealed documents were unsealed enroute and that the materials have not been tampered with. The election superintendent, in his or her discretion, may allow a designee of the poll manager to deliver the envelopes or containers containing the ballot scanner tabulation tapes and memory cards to be used for unofficial reporting of results prior to the delivery of the other polling place materials provided that the same procedures for transit and delivery set forth herein are followed.

7.   Before leaving the polling place, the poll manager shall power off, secure, and seal all electronic ballot markers, ballot boxes, and ballot scanners. The polling place shall be locked to prohibit unauthorized entry.

(b)  Consolidation of Results.
1.  All persons involved with the tabulation and consolidation of the election results and who will operate the computer programs or handle the memory cards shall be

sworn in the same manner that custodians are sworn before entering into their duties.

2.   Only persons who are permanent employees of the election superintendent or have been duly sworn as poll officers or custodians shall touch or be in contact with any ballot, container, returns, tapes, device, memory card, or any other such election materials. Only persons who are employed by the election superintendent or have been duly sworn shall be in the immediate area of the tabulating center designated by the superintendent for the officers to conduct the tabulation and consolidation of the election results.

3.   The tabulation and consolidation shall be performed in public. However, the election superintendent may make reasonable rules and regulations for conduct at the tabulating center so that the security of the results and the returns and to avoid interference with the tabulating center personnel.

4.   Upon the delivery of any election materials from a polling place, the election superintendent or his or her designee shall provide a receipt that clearly states what election materials have been delivered.

5.   Upon receiving the paper ballots and the memory cards, the election superintendent shall verify the signatures on the sealed envelopes and containers, verify that the seals are intact, that the envelopes or containers have not been opened, and that there is no evidence of tampering with the envelopes, containers, or their contents.

6.   In the case of elections for county, state, and federal office, after verifying that the envelopes and containers are properly sealed and have not been opened or tampered with, the election superintendent shall break the seal and open each envelope and remove the memory card and results tape. The election superintendent or his or her designee shall then insert the memory card into the election management system computer and transfer the vote totals from the memory card into the election management system for official tabulation and consolidation.

7.   After transferring all of the vote totals from the memory cards to the election management system and consolidating such totals with the totals from the absentee ballot system and such votes from any provisional ballots which have been found by the registrars to be authorized pursuant to O.C.G.A. § 21-2-419, the election superintendent shall prepare the official consolidated returns for the primary, election, or runoff.

8.   The election superintendent shall not list and certify in the official consolidated returns for an election any results for write in candidates who were not properly qualified under O.C.G.A. § 21-2-133.

9. In the case of primaries, elections, and runoffs for county, state, and federal office, the county election superintendent shall transmit to the Secretary of State the election returns by precinct for the county in electronic format or by electronic means, as may be specified by the Secretary of State, within fourteen days following a primary, election, or runoff.

(c) Election Night Reporting. The election superintendent shall transmit to the Secretary of State unofficial election results for all races for state offices in any primary, election, or runoff as soon as possible after the closing of the polls for such primary, election, or runoff. Such results shall be transmitted in a format prescribed by the Secretary of State. At a minimum, the results shall be transmitted upon one third of the precincts reporting results, upon two thirds of the precincts reporting results, and upon all precincts reporting results, including absentee ballots within all precincts. Except upon prior notice to and consultation with the Secretary of State, no election superintendent shall conclude the tabulation of votes on election night in any primary, election, or runoff in which there are contested races for federal and state offices until and unless all such unofficial results, including absentee ballots, have been transmitted to the Secretary of State.

Authority: O.C.G.A. §§ 21-2-31, 21-2-94, 21-2-95


**Rule 183-1-12-.13 Storage of Returns.**
(a) After tabulating and consolidating the results, the election superintendent shall prepare an electronic file which shall contain a copy of the information contained on each memory card which shall include all ballot images as well as vote totals and a copy of the consolidated returns from the election management system.

(b) The electronic file shall be stored on a secure medium which shall be placed in a sealed envelope or container and shall become a part of the election materials which shall be deposited with the clerk of superior court or the municipal clerk, as appropriate, in accordance with O.C.G.A. § 21-2-500. In addition, the signed results tape from each ballot scanner and the corresponding paper ballots shall also be deposited with the clerk of superior court.

(c) The memory cards shall be sealed in an appropriate container and securely maintained by the election superintendent until the period for requesting a recount of the primary, election, or run off results has expired. The election superintendent and at least one other sworn individual in the tabulating center shall seal the container and sign the seal such that the container cannot be opened without destroying or damaging the seal. Upon the expiration of the period for requesting a recount, the election superintendent may use the memory cards for programming ballot scanners units for the next primary, election, or runoff.

Authority: O.C.G.A. §§ 21-2-31, 21-2-500

**Rule 183-1-12-.14 Maintenance of Equipment.**

(a)   Each county shall be responsible for maintaining all components of the voting system, including electronic ballot markers, printers, ballot scanners, electronic poll books, computers, and software provided to such county by the Secretary of State or purchased by such county and shall either purchase a warranty/maintenance agreement for such equipment and software or shall assume the responsibility for repair, maintenance, and upkeep of all system components.

(b)   In the event of any malfunction or problem with any voting system component, the county election superintendent shall document the problem and its resolution and shall provide such information to the Secretary of State. The documentation shall include a detailed description of the malfunction or problem, the steps taken to correct the malfunction or problem, and the cause of such malfunction or problem if a cause can be determined.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.15 Use of Equipment by Municipalities.**

The county election superintendent is authorized to permit any municipality within the county to conduct its election with electronic ballot markers, printers, ballot scanners, and other components of the statewide voting system through a written intergovernmental agreement between the county and the municipality; provided that the municipality agrees to maintain and operate the equipment in accordance with law, these rules and regulations, and the manufacturer's guidelines and specifications and provided further that the municipality trains all of its election personnel and poll officers in the proper operation and conduct of elections utilizing such equipment through an appropriate training program approved by the Secretary of State.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.16 Demonstrations of Voting Equipment**

When being used for demonstration and voter education purposes, electronic ballot markers and ballot scanners shall not utilize or be programmed with the official ballot to be used in the primary or election. The device shall utilize or be programmed with a ballot containing the names of fictitious or historical persons whose names do not appear on the official ballot for such primary or election.

Authority: O.C.G.A. § 21-2-31

**Rule 183-12-.17 Tabulating Center Personnel, Trained and Certified**

All tabulating center personnel must be trained in their respective duties and certified as required by O.C.G.A. § 21-2-99 for poll officers. All programmers, operators, and data center personnel shall be sworn as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 for poll officers.

Authority: O.C.G.A. §§  21-2-31, 21-2-94, 21-2-95, 21-2-99

**Rule 183-12-.18 Provisional Ballots**

(1)    This rule shall govern the casting of provisional ballots by voters at primaries and elections in accordance with O.C.G.A. §§ 21-2-418 and 21-2-419.

(2)    In each polling place, there shall be established a location or station in the public area of the polling place for the purpose of issuing and receiving provisional ballots.

(3)    The election superintendent shall provide each polling place with an adequate supply of provisional ballots in each ballot style (district combination) for the precinct and an inner ballot envelope and an outer ballot envelope. The election superintendent shall also be prepared to resupply polling places with provisional ballots in needed ballot styles in a timely manner while voting is occurring so that polling places do not run out of provisional ballots. The ballot envelopes shall be so designed that the ballot will fit within the inner ballot envelope and the inner ballot envelope will fit within the outer ballot envelope. The inner ballot envelope shall have printed on it the words "Official Provisional Ballot" and nothing else. The outer envelope shall have places for inserting the person's name, precinct, date and name of election, ballot style (district combination), and whether such ballot is a regular provisional ballot, a provisional ballot cast by a voter who registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. §§ 21-2-220 and 21-2-417, or a ballot cast during poll hours extended by a court order, or a combination thereof. Primaries and elections conducted by counties shall use optical scan ballots for provisional voting. The poll manager shall cause all voted provisional ballots to be deposited into the provisional ballot box and not be inserted into the polling place ballot scanner and kept separate and apart from non-provisional ballots case at the polling place. Municipalities shall use the same type of ballots as the municipality uses for mail-in absentee voting. The election superintendent shall also provide a booth for voting provisional ballots in the enclosed space which will provide privacy for a person while voting a provisional ballot and a secure container in which the voted provisional ballots shall be placed.

(4)    Voters whose names do not appear on electors list.
    (a)    When a person arrives at a polling place, completes a voter's certificate, and presents it to the poll workers but the person's name does not appear on the official electors list for the precinct, the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the polling place shall have an electronic poll book that includes a mastered list of registered voters in the state, and the poll workers shall check the list to determine if the person is assigned to a different polling place within the county or registered in a different county. If the person's name appears on the master list for a different precinct within the same county, the poll workers shall inform the person of his or her correct polling place. The person shall be instructed to go to his or her correct polling place if practicable, but that if it is not practicable for the person to get to his or her correct polling place before the close of polls, that the person may vote a provisional ballot in the polling place in which they are present.  If, after receiving that instruction,

the person states that it is not practicable for him or her to get to their correct polling place prior to the close of voting, the poll officer shall offer the person a provisional ballot. If the person is registered in a different county, the poll officer shall inform the person that he or she appears to be registered in a different county. If the person is still eligible to vote in the county in which they appear to be registered, the person may return to that county to vote.  If the person states a good-faith belief that he or she timely registered to vote in the county in which he or she is present, he or she shall be offered a provisional ballot.

(b)   If the person's name is not found on the official list of electors for the precinct or the master list, if the poll officers shall immediately contact the registrars and the person shall provide such information as the registrars may request to determine if the person is eligible to vote in the election. The registrars shall promptly review the information provided by the person and shall attempt to determine if the person timely and properly registered to vote in the county in which he or she is present.

(c)   If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election and should be assigned to the precinct at which the person is present, the registrars shall authorize the poll officers to add the person's name to the official electors list for the precinct and shall permit the person to vote in the same manner as other voters in the precinct vote. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the precinct with a notation of the name of the registrar who authorized such addition. Upon presentation of a properly completed voter's certificate and the identification required by O.C.G.A. § 21-2-417, the person shall be permitted to vote in the same manner as other voters in the precinct.

d)   If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election but should be assigned to a different precinct within the same county where the person is present, the registrars shall direct the poll officers to inform the person of the appropriate other precinct and the registrars shall notify the officers of such other precinct to add the person's name to the official electors list for such other precinct. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers at such other precinct which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the other precinct by the poll officers of the other precinct with a notation of the name of the registrar who authorized such addition. Upon the completion of a voter's certificate and the submission of the identification required by O.C.G.A. § 21-2-417. the person shall be permitted to vote in the same manner as other persons in such other precinct. However, the poll officer shall also instruct the person that if it is not practicable for such person to go to such other precinct before the polls close and the person communicates that to the poll officers, the person shall be offered a provisional ballot at the precinct in which the person

is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21·2-419(c).

(e)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if properly registered, would be assigned to the precinct at which the person is present, the registrars shall inform the poll officers and the person shall be offered a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person.

(f)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if registered, would be assigned to a different precinct from the precinct in the county at which the person is present, the registrars shall direct the poll officers to inform the person of the appropriate precinct. The registrars shall notify the officers of such other precinct to permit the person to vote a provisional ballot when such person arrives at such precinct, completes an official voter registration form and a provisional ballot voter's certificate, and submits the appropriate identification required by O.C.G.A. § 21-2-417. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. However, the poll officer shall also instruct the person that if it is not practicable for such person to go to such other precinct before the polls close and the person communicates that to the poll officers, the person shall be offered a provisional ballot at the precinct at which such person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2·419(c).

(g)     If the person appears at a precinct in a county or municipality in which the person does not reside, the registrars shall instruct the poll officers to direct the person to contact the registrars in the county in which the person resides to determine in which precinct such person should vote.

(h)     If the poll officers cannot get in touch with the registrars after making a reasonable effort to do so, the poll officers shall be authorized to permit the person to receive a provisional ballot at the precinct without additional authorization from the registrars. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2-419(c).

(i)   Upon accepting the opportunity to receive a provisional ballot, the person shall complete a provisional ballot voter's certificate and an official voter registration form and submit such completed certificate and form to the poll officers along with the appropriate identification required by O.C.G.A. § 21-2-417. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an Inner ballot envelope and an outer ballot envelope.  Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to the provisional ballot voting booth and mark the ballot with his or her intended selections.  Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(j)   Upon receiving the sealed ballot envelope from a person casting a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete,  shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person to place the ballot envelope into the secure container for provisional  ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public. The provisional ballot voter's certificate and voter registration form shall be attached together and shall be placed in a separate, distinctively marked envelope or reusable document container which shall be placed in a secure location in the polling place.

(5)   Voter who registered for first time by mail but did not provide required identification.

(a)   When a person arrives at a polling place, completes a voter's certificate, and presents it to the poll workers but does not have the identification required by O.C.G.A. § 21-2-417 and the person's name appears on the official electors list for the precinct with a designation that the person registered to vote for the first time in this state by mail but has not provided the required identification to the registrars as required by O.C.G.A. § 21- 2-220. the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the person shall be permitted to cast a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the poll officers shall issue the appropriate ballot style (district combination) to the person as shown on the electors list. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an inner ballot envelope and an outer ballot envelope.  Before issuing the outer ballot envelope to the person. the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer

envelope. The person shall then retire to the provisional ballot voting booth and mark the ballot with his or her intended selections. Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(b) Upon receiving the sealed ballot envelope from a person completing a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person to place the ballot envelope into the secure container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c) The provisional ballot shall not be counted unless the voter provides the identification required by O.C.G.A. § 21-2-220 and 21-2-417 to the registrars before the end of the period set by law for the verification of provisional ballots. Such identification may be provided to the registrars in person, by email, by facsimile transmission or, in the case of disabled voters, by delivery by a third party.

(6) Voters voting during extended polling hours in an election in which federal candidates are on the ballot.

(a) In the event that the polling hours for a polling place are extended by a court order beyond the normal closing time for a primary, election, or runoff in which federal candidates are on the ballot, all voters who vote after the normal closing time for the polling place shall vote by provisional ballot.

(b) Voters whose names appear on the electors list and who have the appropriate identification required by O.C.G.A. § 21-2-417 shall complete a provisional voter's certificate and shall be issued a provisional ballot along with an inner ballot envelope and an outer ballot envelope. Such voters shall not be required to complete a voter registration form. It also shall not be necessary to obtain approval from the registrars to issue provisional ballots to such voters. The poll officers shall place the name of the person on the numbered list of provisional ballot voters. Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to a provisional ballot voting booth and mark the ballot with his or her intended selections. Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers. Upon receiving the sealed ballot envelope from a person completing a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box to designate that the ballot is an extended poll hours provisional ballot, and shall direct the person to place the ballot envelope into the secure

container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)   If the voter's name is not on the electors list, the poll workers shall follow the provisions of this rule for regular provisional balloting under this rule and, if the voter is authorized by the registrars to vote a provisional ballot under the terms of this rule, shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(d)   If the voter's name is on the electors list but registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. § 21-2-220. the poll officers shall permit the voter to vote in accordance with the provisions of this rule for first time voters who register for the first time in this state by mail without providing the required identification, and shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(e)   The poll officers shall provide each first time voter who registered for the first time in this state by mail without providing the required identification who casts a provisional ballot information on how the voter may provide the registrars with the appropriate identification in order that the voter's ballot may be counted.

(7)   Each voter casting a provisional ballot in a primary, election, or runoff in which federal candidates appear on the ballot shall be given written information explaining how such voter can ascertain if such ballot is counted and, if such ballot is not counted, the reason why such ballot was not counted.

(8)   The provisional ballot voter's certificates and voter registration cards may be picked up during the day by a registrar or deputy registrar for the purpose of beginning the process of determining the eligibility of the persons to cast provisional ballots. Before transferring the voter's certificates and registration cards to the registrars during the day, the poll officers shall note the number of certificates and cards being transferred to the registrars. If such voter's certificates and registration cards are not picked up by the registrars by the time that the polls close and the last voter has voted, the envelope in which the provisional ballot voter's certificates and voter registration cards have been deposited shall be securely sealed and shall be returned to the election superintendent with the other materials from the polling place.

(9)   After the close of the polls and the last voter has voted, the poll officers shall account for all voted provisional ballots, cancelled and spoiled provisional ballots, and unused provisional ballots. The ballot stubs and unused and spoiled ballots shall then be securely sealed in the container provided for them by the election superintendent. The poll officer, along with two other witnesses sworn as poll officers, shall then proceed to open the secure container in which the provisional ballots were deposited and count the number of voted provisional ballots contained therein. The poll officer and witnesses shall then compare the

total number of persons voting provisional ballots as shown on the numbered list of provisional ballot voters with the number of ballots issued and the number of ballots voted. If these numbers do not equal one another. the poll officers shall determine the reason for the inconsistency and shall correct the problem before going further. The poll officer and witnesses shall seal the voted provisional ballots in a container for transfer to the election superintendent. The poll officers shall complete and sign a provisional ballot recap sheet and post one copy of the recap sheet on the door of the polling place with the election results from the precinct. The remaining copies of the provisional ballot recap sheet along with the numbered list of provisional ballot voters shall be returned to the election superintendent with the other election materials from the precinct.

(10)   Upon receiving the election materials from the precincts, the election superintendent shall cause the envelope containing the provisional ballot voter's certificates and voter registration cards to be promptly removed from the other materials and, if applicable, transferred to the registrars for processing. If applicable, the voter's certificates and registration cards shall be transferred to the registrars no later than 9:00 a.m. on the day following the day of the primary, election, or runoff. The election superintendent shall also remove the container containing the voted provisional ballots and shall place such container in a secure location within the election superintendent's office.

(11)   Upon receiving the provisional ballot voter's certificates and voter registration cards from the election superintendent, the registrars shall promptly proceed to determine the eligibility of each person that voted a provisional ballot.

(a)   If the registrars determine that the person did timely register and is eligible and entitled to vote in such primary, election, or runoff, the registrars shall mark on the numbered list of provisional ballot voters that the ballot is accepted and shall notify the election superintendent of the proper ballot style (district combination) for the voter.

(b)   If the registrars determine that the person did not timely register to vote for the primary or election or is not eligible and entitled to vote in such primary or election  or if the registrars cannot determine by the close of business on the third business day following the day of the primary, election, or runoff if the voter timely registered and was eligible and entitled to vote in such primary  or election, the registrars shall mark on the numbered list of provisional  ballot voters that the ballot is rejected.

(c)   Not later than the close of business on the third business day following the day of the primary, election, or runoff, the registrars shall return to the election superintendent the numbered list of provisional ballot voters reflecting the accepted and rejected provisional ballots.

(d)   The names of those persons whose names are accepted shall be added to the official electors list. The voter registration cards of those persons whose ballots are rejected on the numbered list of provisional ballot voters shall be processed by the

registrars and, if found to be eligible and qualified, shall be added to the electors list for future elections.

(e)   The registrars shall maintain the provisional ballot voter's certificates for the same period of time and under the same conditions as the regular voter's certificates. Voter registration cards completed by provisional ballot electors shall be maintained for the same period of time and under the same conditions as other voter registration cards.

(12)   Upon receiving the numbered list of provisional ballot electors from the registrars, the election superintendent shall prepare to count the accepted provisional ballots. The election superintendent shall first compare the precinct designation and election district information with the style of ballot (district combination) cast by the provisional ballot voter.

(a)   If the ballot style (district combination) voted by the voter was correct, then the election superintendent shall open the outer envelope and place the inner envelope containing the ballot into a ballot box.

(b)   If the ballot style (district combination) voted by the voter was not correct, then the election superintendent shall open the outer envelope and note the correct ballot style (district combination) on the inner envelope. Each such inner envelope shall then be placed in a separate container until all of the outer envelopes have been opened. The outer envelopes shall then be stored in a location away from the inner envelopes in a manner such that the inner envelope and ballot of a voter cannot be identified as being the ballot of a particular voter. The superintendent shall then open each such inner envelope and remove the ballot and shall place a unique identifying number on the ballot along with the designation of the precinct at the top of the ballot. The election superintendent shall then prepare or cause to be prepared a duplicate ballot. The duplicate ballot shall be clearly labeled with the word "Duplicate" and shall bear the name of the precinct and the same unique identifying number as the original ballot at the top of the ballot. The election superintendent shall transfer or cause to be transferred to the duplicate ballot, in the presence of at least two other consolidation assistants and in public, only the votes cast by the provisional ballot voter in the races and on the questions to which such voter was eligible and entitled to vote. The votes entered on the duplicate ballot shall be verified by at least one consolidation assistant. The completed duplicate ballot shall be placed in the ballot box with the other provisional ballots to be counted. The original ballot shall be placed into an appropriate container and retained.

(c)   After opening all of the outer envelopes and making all necessary duplicate ballots, the election superintendent shall then open the inner envelopes of the ballots in the ballot box and proceed to count the votes in the same manner as absentee ballots are counted. Upon completing the count, the election superintendent shall add the provisional ballot votes to the other votes cast at the polls and by absentee ballot and shall consolidate and certify the results of the primary, election, or runoff.

The provisional ballots and any duplicates shall be retained for the same time period and in the same manner as absentee ballots.

(d)   The rejected provisional ballots shall be marked on the outer envelope as "Not Counted" and shall not be opened. The ballots shall be maintained for the same time period and in the same manner as absentee ballots which were returned too late to be counted.

(e)   The election superintendent shall notify the registrars of the names of those persons who cast a provisional ballot in the wrong precinct or on an incorrect ballot style (district combination).

(13)  Upon identifying the rejected provisional ballot electors, the registrars shall proceed fil the earliest possible time to notify each such person by first-class mail at the address shown on the provisional ballot voter's certificate that his or her ballot was not counted because of the inability of the registrars to verify that the person timely registered to vote or such other proper reason. The registrars shall also attempt to notify the person by telephone or email if the provisional ballot voter certificate contains an email address or telephone number. If the person's voter registration card was approved, the registrars shall also notify the person that his or her name will be added to the elector's list and the person will be eligible to vote in future primaries and elections and that a voter notification or precinct card will be mailed to the person to provide the voter with the correct precinct and election district information.

(a)   Upon receiving notification from the election superintendent of the names of persons who cast provisional ballots in the incorrect precinct or on the incorrect ballot style (district combination), the registrars shall notify such persons of their correct precinct and/or election district information. The sending of a voter notification or precinct card by first-class mail to the address shown on the voter registration card completed by such person when voting by provisional ballot shall be sufficient notice for such voters.

(b)   If the person's voter registration is rejected, the registrars shall notify the person of such rejection in accordance with O.C.G.A. § 21-2·226(d).

(c)   In addition, the registrars shall establish a free access system, such as a toll-free telephone number or an Internet website, by which voters who cast provisional ballots in a primary, election, or runoff in which federal candidates are on the ballot may ascertain whether their ballots were counted or, if the ballots were not counted, the reasons why such ballots were not counted. The registrars shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by such system. Access to information about an individual provisional ballot shall be restricted to the voter who cast such ballot.

Authority: O.C.G.A. §§ 21-2-31, 21-2-,226, 21-2-417, 21-2-418, 21-2-419, 21-2-420

**Rule 183-1-12-.19 Preparation of the Electors List and Use of Electronic Poll Book**

(1)     Election superintendents shall cause each polling place to be equipped with an appropriate number of electronic poll books within the county during primaries, elections, and runoffs. Electronic poll books shall be the primary method for checking in voters and creating voter access cards, but the superintendent shall cause every polling place to be equipped with a paper backup list of every registered voter assigned to that polling place. The paper backup list shall be used in case the electronic poll books do not properly function. The superintendent shall cause poll workers to be adequately training checking in voters on both electronic poll books and paper backup list.

(2)    The county election superintendent shall maintain each electronic poll book device, and all components in a secure location as provided for in Rule .183·1-12-.04 and 183-1-12-.05.

(3)    Effective January 1, 2006, the registrars of each county shall utilize the absentee ballot subsystem of the statewide voter registration system for absentee balloting and advance voting.

(4)     The registrars of each county shall complete the entry of new and updated voter registrations on a timely basis as required by the Secretary of State and shall notify the Secretary of State upon the completion of all such data entry after a registration deadline.

(5)    Prior to each primary or election as specified by the Secretary of State, the county election superintendent shall provide to the Secretary of State or his or her designee a final copy of the Selection management system database for the county.

(6)    The county election superintendent and the registrars shall notify the Secretary of State or his or her designee of any changes to the voter registration file for the county or the election management system database that occur after the process for programing the electronic poll books has begun.

(7)    During the period in which election system components are tested and prepared prior to delivery to polling places, the election superintendent shall cause each electronic poll book to undergo logic and accuracy testing. Each electronic poll book must pass such logic and accuracy test prior to being delivered to a polling place. The election superintendent or registrars shall verify the information contained on the electronic poll books prior to delivering the units to polling places.

(8)    Prior to delivery to a polling place, the election superintendent or registrars shall cause the electronic poll books to accurately mark all persons who have been issued or cast absentee ballots in the election.

(9)    Upon the conclusion of each primary, election, or runoff, the poll officers shall return the electronic poll books with the other election materials from the polling place to the election superintendent. The registrars and election superintendent shall inform the

Secretary of State of all voters who cast ballots in each primary election or runoff in a format to be determined by the Secretary of State and in the same time period as the official election returns.

(10)     For electors whose names are added to the voter registration rolls after the preparation of the electronic poll books, the registrars shall provide a printed supplemental list for use at the affected polling places.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.20 Use of Emergency Paper Absentee Ballots When Voting Machines are Inaccessible**
Emergency paper ballots shall be offered to and may be used by persons with disabilities in non-emergency situations if the electronic ballot marker are inaccessible.

Authority: O.C.G.A. § 21-2-31

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD,
CHAPTER 183-1-13, *RULES OF STATE ELECTION BOARD*, RULE 183-1-13-.01
*MINIMUM NUMBER OF VOTING BOOTHS*
AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to post an SEB rule, Rule 183-1-13-.01 *Minimum Number of Voting Booths* (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed new rule and a synopsis of the proposed rule, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list.  A copy of this notice, an exact copy of the proposed rule amendment, and a synopsis of the proposed rule amendment may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334.  These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board.  Copies may also be requested by contacting the Elections Division at 404-656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held on:

January 22, 2020
9:00 a.m.
2 Martin Luther King Jr. Dr. SE
18th Floor, West Tower
Room 1816
Atlanta, GA 30334

At the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing.  Oral statements should be concise and will be limited to 3 minutes per person. Additional comments should be presented in writing. Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before January 13, 2020 to the address below for written comments. Written comments must be received on or before January 13, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334 or by email to jshannon@sos.ga.gov.

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on January 22, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on January 22, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

This notice is given in compliance with O.C.G.A. § 50-13-4.

This 19th day of December, 2019.

Brad Raffensperger
Chairman, State Elections Board

Posted:  December 19, 2019

**SYNOPSIS OF THE PROPOSED RULE OF THE
STATE ELECTIONS BOARD, CHAPTER 183-1-13, *RULES OF STATE
ELECTION BOARD*, RULE 183-1-13-.01 *MINIMUM NUMBER OF VOTING
BOOTHS***

Purpose:  The purpose of the rule is to clarify the minimum number of voting booths required to be available to electors of a precinct.

Main Features:  The main feature of the rule is to state that a county may consider the amount of voting booths available at a precinct on Election Day plus the amount of voting booths available to voters on the last day of the advance voting period.

**DIFFERENCES BETWEEN THE EXISTING RULE AND THE PROPOSED
AMENDMENTS OF THE STATE ELECTION BOARD, CHAPTER 183-1-13,
*RULES OF STATE ELECTION BOARD*, RULE 183-1-13-.01 *MINIMUM NUMBER
OF VOTING BOOTHS***

NOTE: Struck through text is proposed to be deleted.  Underlined text is proposed to be added.

**CHAPTER 183-1-13
~~PREPARATION FOR AND CONDUCT OF PRIMARIES AND ELECTIONS~~
VOTING BOOTHS AND POLL WATCHERS**

**RULE 183-1-13-.01 Minimum Number of Voting Booths**

When calculating the number of voting booths or enclosures required to be available to electors of a precinct pursuant to O.C.G.A. 21-2-367(b), the calculation shall take into account the number of voting booths or enclosures available for electors of a precinct on Election Day and on the last day of advance voting. Polling places with assigned voters from more than one precinct shall use the total numbers of voters assigned to the polling place when calculating the minimum number of voting booths.

Authority: O.C.G.A. §§ 21-2-31, 21-2-367

**COPY OF THE PROPOSED NEW RULE
VOTING BOOTHS AND POLL WATCHERS**

**RULE 183-1-13-.01 Minimum Number of Voting Booths**

When calculating the number of voting booths or enclosures required to be available to electors of a precinct pursuant to O.C.G.A. 21-2-367(b), the calculation shall take into account the number of voting booths or enclosures available for electors of a precinct on Election Day and on the last day of advance voting. Polling places with assigned voters from more than one precinct shall use the total numbers of voters assigned to the polling place when calculating the minimum number of voting booths.

Authority: O.C.G.A. §§ 21-2-31, 21-2-367

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD, CHAPTER 183-1-14, *RULES OF STATE ELECTION BOARD*, RULE 183-1-14-.02 *ADVANCE VOTING*, RULE 183-1-14-.11 *MAILING AND ISSUANCE OF BALLOTS*, RULE 183-1-14-.12 *ELIGIBILIGTY OF APPLICATION FOR ABSENTEE BALLOT*, 183-1-14-.13 *PROMPT NOTIFICATION OF ABSENTEE BALLOT REJECTION* AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to post an SEB rule, Rule 183-1-14-.02 *Advanced Voting, Rule 183-1-14-.11 Mailing and Issuance of Ballots*, Rule 183-1-14-.12 *Eligibility of Application for Absentee Ballot*, Rule 183-1-14-.13 *Prompt Notification of Absentee Ballot Rejection* (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed new rule and a synopsis of the proposed rule, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list.  A copy of this notice, an exact copy of the proposed rule amendment, and a synopsis of the proposed rule amendment may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334.  These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board.  Copies may also be requested by contacting the Elections Division at 404-656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held on:

January 22, 2020
9:00 a.m.
2 Martin Luther King Jr. Dr. SE
18th Floor, West Tower
Room 1816
Atlanta, GA 30334

At the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing.  Oral statements should be concise and will be limited to 3 minutes per person. Additional comments should be presented in writing. Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before January 13, 2020 to the below address for written comments. Written comments must be received on or before January 13, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334 or by email to jshannon@sos.ga.gov.

1

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on January 22, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

This notice is given in compliance with O.C.G.A. §50-13-4.

This 19th day of December, 2019.

Brad Raffensperger
Chairman, State Elections Board

Posted:  December 19, 2019

2

**SYNOPSIS OF THE PROPOSED RULE OF THE
STATE ELECTIONS BOARD, CHAPTER 183-1-14, *RULES OF STATE
ELECTION BOARD*, RULE 183-1-14-.02 *ADVANCE VOTING*, RULE 183-1-14-.11
*MAILING AND ISSUANCE OF BALLOTS*, RULE 183-1-14-.12 *ELGIBILIGTY OF
APPLICATION FOR ABSENTEE BALLOT*, 183-1-14-.13 *PROMPT
NOTIFICATION OF ABSENTEE BALLOT REJECTION***

Purpose:  The purpose of the rule is to revise the procedures for advance and absentee voting to be consistent with the requirements of the updated laws and new voting system.

Main Features:  The main feature of the rule is to update the procedures for absentee voting to comply with Georgia law and to conform to the new components of the voting system. Rule 183-1-14-.02 is being revised to instruct election officials on how to conduct advance voting using the new voting equipment. Rule 183-1-14.11 is being revised to clarify the processes for mailing and issuing absentee and provisional ballots. Rule 183-1-14-.12 is being revised to advise persons or entities on how to properly format and process absentee ballot applications. Rule 183-1-14-.13 is being created to ensure that election officials promptly notify electors when their absentee ballots have been rejected.

**DIFFERENCES BETWEEN THE EXISTING RULE AND THE PROPOSED AMENDMENTS OF THE STATE ELECTION BOARD, CHAPTER 183-1-14, *RULES OF STATE ELECTION BOARD*, RULE 183-1-14-.02 *ADVANCE VOTING*, RULE 183-1-14-.11 *MAILING AND ISSUANCE OF BALLOTS*, RULE 183-1-14-.12 *ELGIBILIGTY OF APPLICATION FOR ABSENTEE BALLOT*, RULE 183-1-14-.13 *PROMPT NOTIFICATION OF ABSENTEE BALLOT REJECTION***

NOTE: Struck through text is proposed to be deleted.  Underlined text is proposed to be added.

**RULE 183-1-14-.02 Advance Voting**

(1)      Counties and municipalities ~~are authorized to use DRE units~~ <u>shall use electronic markers and ballot scanners</u> for in-person absentee ~~balloting in accordance with the Georgia Election Code (O.C.G.A. Ch. 21-2) and these rules~~ <u>voting</u> during the advance voting period. As used in this rule, the term <u>"registrar" or</u> "registrars" ~~shall include~~ <u>means</u> a county board of registrars, a county board of elections and registration, a joint county-municipal board of elections and registration, a municipal absentee ballot clerk, a municipal registrar, ~~and~~ <u>or</u> the designee of ~~any~~ <u>a</u> board of registrars, board of elections and registration, or joint county-municipal board of elections and registration. ~~The election superintendent and registrars shall by agreement determine the type of election equipment to be used in such election for in-person absentee voting and for absentee voting by mail or other legally appropriate means in which the ballot is sent or delivered to a voter for voting away from the office of the registrars.~~

(2)      <u>The registrar shall publish the times, dates. and locations of the availability of advance voting in their jurisdiction on a publicly accessible website, or if the registrar does not have a website. in a newspaper of general circulation or by posting in a prominent location in the county, no later than 7 days prior to the beginning of the advance voting period.  Any additional advance voting locations added after that deadline shall be published as soon as possible. The registrar shall endeavor not to remove or alter any advance voting locations after they are published, but if emergency or unforeseen circumstances make such a change necessary, the registrar shall publish those changes as soon as possible.</u>

(~~2~~<u>3</u>)      ~~DRE units~~ <u>Electronic ballot markers and ballot scanners</u> shall be configured and tested in accordance with the provisions of Rule 183-1-12-.0~~2~~<u>8</u> prior to use in ~~absentee balloting~~ <u>advance voting</u>. Public notice of the time and place for such configuration and testing of the ~~DRE units~~ <u>electronic ballot markers and ballot scanners</u> to be used for ~~absentee balloting~~ <u>advance voting</u> shall be given in accordance with O.C.G.A. § 21-2-379~~.64~~<u>.24 and 21-2-379.25</u> and Rule 183-1-12-.0~~2~~<u>8</u> prior to such configuration and testing.

(~~3~~<u>4</u>)      The ~~DRE units~~ <u>electronic ballot markers and ballot scanners</u> to be used for ~~in-person absentee~~ <u>advance</u> voting shall be set up in a manner to assure the privacy of the

elector while casting his or her ballot while maintaining the security of such ~~units~~ components against tampering, damage, or other improper conduct. In addition, there shall be at least one ~~DRE unit~~ electronic ballot marker configured for use by physically disabled electors~~.~~ at each advance voting location.

(4~~5~~) Voter access cards for use in ~~DRE units~~ electronic ballot markers for ~~in-person absentee balloting~~ advance voting may be encoded by use of ~~ballot encoder devices, DRE units specifically and exclusively set up for that purpose, or by use of the VCProgrammer software on appropriate computers.~~ an electronic poll book or other device approved by the Secretary of State. The registrar may also utilize the correct access code to manually bring up the correct ballot on the touchscreen.

(5~~6~~) ~~Each DRE unit to be used for in-person absentee voting shall be programmed so as to permit the challenging of ballots in accordance with law and the removal of such ballots from the count if such challenges are sustained by the registrars.~~ Magnifying devices shall be available at advance voting locations to assist voters in reviewing their paper ballots.

(6~~7~~) On the first day of the ~~absentee~~ advance voting period, prior to any votes being cast on ~~the DRE units~~ ballot scanners, the registrars shall verify that the seal~~s~~ for each ~~DRE unit~~ electronic ballot marker, ballot scanner, and ballot box ~~is~~ are intact and that there is no evidence or indication of any tampering with the seal or the ~~unit~~ component. The registrars shall verify that the number of the seal matches the number of the seal recorded for that ~~unit~~ component when such ~~unit~~ component was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering with the seal or ~~unit~~ component, the ~~Secretary of State and the~~ election superintendent shall be immediately notified and such ~~unit~~ component shall not be used until such matters are resolved by agreement of the ~~Secretary of State, the~~ election superintendent~~,~~ and the registrars. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the registrars may deem appropriate to protect the security of the ~~DRE units~~ voting system components and to prevent interference with the duties of the registrars~~, except that the public view shall not be obstructed~~. The registrars and two witnesses sworn as poll officers as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 shall run a zero tape on each ~~DRE unit~~ ballot scanner prior to the beginning of ~~absentee~~ advance voting on ~~such units.~~ those scanners, and ~~T~~the registrars and the two witnesses shall sign the zero tape in the space provided. The registrars shall~~, without removing the tape from the unit,~~ verify that ~~all vote registers shown on~~ the electronic ballot markers and ballot scanners all indicate zero ~~counts prior to the opening of the polls.~~ tape are set to zero and that there are no votes showing on the unit and shall sign the tape in the space provided. If the ~~zero~~ tape does not show ~~that all~~ zero vote~~s~~ ~~registers are set to zero and that there are votes on the unit~~ prior to the start of voting, the election superintendent shall be immediately notified and such ~~unit~~ component shall not be used until the ~~unit~~ component is cleared and the matter is resolved by agreement of the election superintendent and the registrars. ~~After verifying and signing the zero tape, t~~The registrars and the same two sworn witnesses who signed ~~shall securely lock the tape~~

~~compartment leaving~~ the zero tape ~~in place on the unit and~~ shall inspect and confirm that the ballot associated with that scanner is empty and contains no ballots or other unauthorized matter, and ~~configure the unit for voting. The registrars~~ shall verify that ~~the election counter on each DRE unit is set at zero~~ fact in writing on a form to be developed by the Secretary of State. ~~If the election counter is not set to zero, the election superintendent shall be immediately notified and such unit shall not be used until the election counter is set to zero and the matter is resolved by agreement of the election superintendent and the registrars.~~ Such form shall include the date and time it was executed, shall be attached to the zero tape generated by the ballot scanner attached to that ballot box, and shall be returned to the election superintendent at the close of the advance voting period with the other paperwork from the voting location.  The registrars shall verify that there is no unauthorized matter affixed to the ~~DRE units or present in the cases~~ electronic ballot markers, ballot scanners, or voting booths. The registrars shall affix a card of instructions for voting within each voting booth. Prior to voters entering the voting booth, the registrars may also distribute to such voters a card of instructions for voting ~~on the DRE unit~~ that has been approved or provided by the Secretary of State. ~~Each DRE unit shall be clearly marked with a unique designation that is visible on the exterior of the unit.~~

(~~7~~8)    ~~If a DRE unit is to be used for the creation of voter access cards, such DRE unit shall be set up properly for such purpose and shall be used exclusively for such purpose and no other purpose during the absentee voting period. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the registrars may deem appropriate to protect the security of the DRE unit and to prevent interference with the duties of the registrars, except that the public view shall not be obstructed.~~ If at the close of voting on any day during the advance voting period, there are more than 1,500 ballots inside any ballot box, the registrar and two sworn witnesses shall unseal the ballot box, remove the paper ballots, and place the ballots in one or more durable, portable, secure, and sealable containers. The registrars shall ~~run a zero tape on the DRE unit prior to creating any voter access cards on such unit.~~ complete and affix to each container a form identifying the advance voting location, the advance voting dates that the ballots were cast, the ballot scanner serial number, the number assigned to that ballot scanner for that specific election, the count of the ballots from the ballot scanner, and the date and time that the ballot box was emptied. ~~The registrars shall, without removing the tape from the unit, verify that all vote registers shown on the zero tape are set to zero and that there are no votes showing on the unit and shall sign the tape in the space provided. If the zero tape does not show that all vote registers are set to zero and that there are votes on the unit, the election superintendent shall be immediately notified and such unit shall not be used until the unit is cleared and the matter is resolved by agreement of the election superintendent and the registrars. After verifying and signing the zero tape, the registrars shall securely lock the tape compartment leaving the zero tape in place on the unit and shall configure the unit for the creation of voter access cards. The registrars shall verify that the election counter on the unit is set at zero. If the election counter is not set to zero, the election superintendent shall be immediately notified and such unit shall not be used until the election counter is set to zero and the matter is resolved by agreement of the election superintendent and the registrars. The registrars~~

~~shall make a notation of the election counter reading on the daily recap sheet.~~ <u>The container shall be sealed and signed by the registrar and the two witnesses such that it cannot be opened without breaking the seal. The ballot box shall be resealed, and the new seal numbers shall be documented. The registrar and at least one sworn witness shall deliver the ballot container to the election superintendent for secured storage until time for the tabulation of votes, and the election superintendent shall complete a chain of custody form indicating the delivery of the secure container. The form shall be signed by the registrar and any witnesses who travelled with the registrar indicating that no sealed documents were unsealed enroute and have not been tampered with. In the discretion of the registrar, the same procedure for emptying the ballot box may be followed if there are less than 1,500 ballots in the ballot box at the end of any advance voting day, but the ballot box shall not be opened while voting is taking place except as authorized by Rule 183-1-12-.10(5).</u>

(<u>8</u>~~9~~)    At the close of ~~business~~ <u>voting</u> each day during the ~~absentee~~ <u>advance</u> voting period, the registrars shall document the election counter number <u>from the ballot scanner</u> on the daily recap sheet. ~~Each DRE unit used for in-person absentee voting shall then be turned off and closed.~~ The memory cards ~~(PCMCIA card)~~ shall remain in the ~~unit~~ <u>ballot scanner</u> at all times during the ~~absentee balloting~~ <u>advance voting</u> period until the polls close on the day of the primary, election, or runoff. Each ~~DRE unit~~ <u>electronic ballot marker, ballot scanner, ballot box, electronic poll book, paper backup poll book, and voter access cards</u> shall then be ~~sealed and the seal number and the time of sealing shall be recorded on the daily recap sheet. Each DRE unit shall then be~~ secured overnight. ~~In addition, all voter access cards shall be~~ secure<u>ly</u> ~~d~~ stored overnight. ~~and when not in use. If a DRE unit is used to program voter access cards, the registrars shall make a notation of the election counter number on the daily recap sheet. If such number is not zero, the registrars shall notify the Secretary of State immediately and shall ascertain the reason for the discrepancy and shall make a notation of such discrepancy and the reason for it on the daily recap sheet. Such DRE unit shall not be used for creation of voter access cards unless and until the unit is fully tested and reconfigured and the election counter reset at zero pursuant to procedures established by the Secretary of State. The DRE unit shall be turned off and secured for the night.~~ <u>If the room where advance voting is taking place cannot be locked and secured overnight in the reasonable judgment of the superintendent, the superintendent shall cause the voting system components to be stored in a locked, secure container that is reasonably affixed to the polling place; be under visual surveillance of an election official or their designee, a licensed security guard, or a law enforcement official; or if, if the previously listed options are not feasible, in another manner that in the reasonable judgment of the superintendent secures and protects the voting system components from unauthorized access. Any electronic visual surveillance used for security when voting is not taking place shall not record, capture, or otherwise compromise the privacy of an elector's ballot.</u>

(<u>9</u>~~10~~)   Each morning during the ~~absentee balloting~~ <u>advance voting</u> period <u>prior to voting beginning</u>, the registrars shall ~~publicly~~ verify the seal numbers on each ~~DRE unit~~ <u>electronic ballot marker and ballot scanner</u> to be used for ~~absentee~~ <u>advance</u> voting with the number of the seal recorded on the daily recap sheet from the previous day of

~~absentee~~ advance voting and shall verify that the seals ~~and DRE unit~~ do not show any signs of tampering. If the seal number corresponds to the entry on the daily recap sheet and there is no evidence of tampering, the ~~DRE unit~~ electronic ballot markers and ballot scanners shall be ~~opened and~~ turned on. If the numbers do not match or there is evidence of tampering, the ~~Secretary of State~~ election superintendent shall be notified immediately and the ~~unit~~ component shall not be used until such discrepancy is resolved to the satisfaction of ~~the Secretary of State,~~ the election superintendent~~,~~ and the registrars. After ~~opening and~~ turning on the ~~unit~~ ballot scanners, the registrars shall verify the election counter number with the number recorded on the daily recap sheet from the previous day of ~~absentee~~ advance voting. If the numbers do not match, the ~~Secretary of State~~ election superintendent shall be immediately notified and the ~~unit~~ component shall not be used until such discrepancy is resolved to the satisfaction of ~~the Secretary of State,~~ the election superintendent~~,~~ and the registrars. The election counter number shall then be entered onto the daily recap sheet for that day. ~~If a DRE unit is to be used for programming voter access cards, the registrars shall open and turn on the power for such unit. The registrars shall then verify that the election counter is set on zero. If the election counter is not set at zero, the Secretary of State shall be immediately notified and the unit shall not be used until such discrepancy is resolved to the satisfaction of the Secretary of State, the election superintendent, and the registrars. A notation shall be made on the daily recap sheet of the election counter number and the unit shall be configured to create voter access cards.~~

(11~~0~~)   Voters who vote absentee ballots in person ~~on the DRE units~~ shall first complete an absentee ballot application and sign an oath~~, document.~~ which may be on the same form and may be on paper or digital. After the registrars determine that the voter is eligible to vote ~~by absentee ballot~~, the registrars shall note the voter's registration number and ballot style on the absentee ballot application. Each voter shall be offered instruction by a registrar in the method of voting on the voting system, including specific instruction to review their printed ballot prior to scanning it. In providing such instruction, the registrar shall not in any manner request, suggest, or seek or persuade or induce any voter to vote any particular ticker or for any particular candidate, or for or against any particular question. The voter shall then be issued a voter access card programmed with the correct ballot style or the registrar shall use the correct access code to manually bring up the correct ballot on the electronic ballot marker. ~~The registrars shall record on the absentee voter log the voter's name, registration number, voter ID number, and designation of the DRE unit on which the voter shall vote.~~ The voter shall then ~~be permitted to vote on the designated DRE unit. After completing voting, the voter shall return the voter access card to the registrars.~~ enter the enclosed space in the advance voting location and proceed to vote his or her choices. Upon making his or her selections, the voter shall cause the paper ballot to print, remove his or her printed ballot from the printer, remove the voter access card from the touchscreen unit, review the selections on his or her printed ballot, scan his or her printed ballot into the scanner, and return the voter access card to a poll worker.

(12~~1~~)   ~~At the close of business on the day before the primary, election, or runoff at the end of the absentee balloting period, the registrars shall record the election counter number on the daily recap sheet.~~ The registrars shall ~~publicly configure the DRE units~~

~~used for absentee voting to end the election and prevent further voting on the units. The~~
~~units shall then be shut down and sealed. The registrars shall record the seal numbers on~~
~~the daily recap sheet. The units shall then be secured until time for the tabulation of votes.~~
~~For the DRE unit used for the creation of voter access cards, such unit shall be secured~~
~~and returned to the election superintendent. Two zero tapes shall be printed and signed by~~
~~the registrars confirming that all vote counters are set at zero. The memory card~~
~~(PCMCIA cards) from the units used for the creation of voter access cards shall be~~
~~removed from the units and placed along with the signed zero tapes in a sealed envelope~~
~~which shall be returned to the election superintendent.~~ <u>cause each advance voting</u>
<u>location to be sufficiently staffed and a poll worker is to be stationed at every ballot</u>
<u>scanner in use in the polling place while voting is occurring. The poll officer stationed at</u>
<u>the ballot scanner shall offer instruction throughout the period while voting is occurring</u>
<u>reminding voters to review their printed paper ballots, but shall take all reasonable</u>
<u>precautions not to view the selections on an elector's ballot unless it is required by</u>
<u>assistance requested from the elector.</u>

(13~~2~~)   At the ~~close of the polls on the day of the primary, election, or runoff,~~ <u>end of the</u>
<u>advance voting period,</u> the registra~~rs~~ shall <u>record the election counter number from each</u>
<u>ballot scanner on the daily recap sheet.</u> ~~deliver all of the DRE units used for in-person~~
~~absentee voting and all other absentee ballots received in accordance with the provisions~~
~~of the Georgia Election Code (O.C.G.A. Ch. 21-2) to the manager of the absentee ballot~~
~~precinct. The poll officers of the absentee ballot precinct shall count all of the absentee~~
~~ballots in accordance with the procedures required by law and the rules of the State~~
~~Election Board. The poll officers shall verify the seal number of each DRE unit with the~~
~~number recorded on the daily recap sheet form and shall inspect each seal and unit to~~
~~verify that there is no evidence of tampering with the unit. If the seal numbers are not~~
~~correct or there is evidence of tampering, the Secretary of State shall be notified~~
~~immediately and no further action shall be taken with regard to such unit until the reason~~
~~for the discrepancy has been determined to the satisfaction of the Secretary of State, the~~
~~election superintendent, and the manager of the absentee ballot precinct. After verifying~~
~~the seal number and the integrity of the seal on each unit, the poll managers shall open~~
~~each unit and turn on the power for the unit. The managers shall then compare the~~
~~numbers shown on the election counters of the unit with the numbered list of absentee~~
~~electors, the absentee voter log, and the absentee ballot precinct recap form to verify that~~
~~there are no discrepancies. If there is a discrepancy, the Secretary of State shall be~~
~~notified immediately and no further action shall be taken until the reason for the~~
~~discrepancy has been determined to the satisfaction of the Secretary of State, the election~~
~~superintendent, and the manager of the absentee ballot precinct. The managers of the~~
~~absentee ballot precinct shall accept or reject absentee ballots cast on DRE units as~~
~~directed by the registrars, using the procedures established by the Secretary of State.~~
~~After completion of the acceptance and rejection process for the absentee ballots cast on~~
~~the DRE units, the poll manager shall cause each DRE unit to print a minimum of three~~
~~tapes showing the vote totals as cast on that DRE unit. The poll manager and the assistant~~
~~managers shall sign each of the tapes or shall write on the tapes the reason why the poll~~
~~manager or the assistant managers will not sign the tapes. One copy of the results tape for~~
~~each DRE unit shall be posted on the door of the absentee ballot precinct for the~~

~~information of the public. The memory card (PCMCIA card) and two signed tapes from~~ ~~each DRE unit shall be placed in the appropriate envelope supplied by the election~~ ~~superintendent which shall be sealed and initialed by the poll manager and at least one~~ ~~assistant manager such that the envelope cannot be opened without breaking such seal.~~ ~~After completing the printing of the results, the DRE units shall be turned off and secured~~ ~~in their cases and resealed. The DRE units shall then be placed in a secure area with~~ ~~appropriate climate control. The memory cards (PCMCIA cards), results tapes, voter~~ ~~access cards, supervisor's card, ballot encoder devices, numbered lists of absentee voters,~~ ~~absentee ballot precinct recap forms, and other such paperwork shall be transported to the~~ ~~office of the election superintendent by the poll manager and at least one other poll~~ ~~officer. The election superintendent or his or her designee shall receive the materials and~~ ~~shall issue a receipt to the poll manager for the materials.~~ The ballot scanners shall be shut down and sealed. The registrars shall record the seal numbers on the daily recap sheet. The registrar and two sworn witnesses shall unseal the ballot box, remove the paper ballots, and place the ballots in one or more durable, portable, secure, and sealable containers.  The registrars shall complete and affix to each container a form identifying the advance voting location, the advance voting dates that the ballots were cast, ballot scanner serial number, the number assigned to that ballot scanner for that specific election, the count of the ballots from the ballot scanner, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the registrar and the two witnesses such that it cannot be opened without breaking the seal. The ballot box shall be resealed, and the new seal numbers shall be documented. The registrar and at least one sworn witness shall deliver the ballot container to the election superintendent for secured storage until time for the tabulation of votes, and the election superintendent shall complete a chain of custody form indicating the delivery of the secure container. The form shall be signed by the registrar and any witnesses who travelled with the registrar indicating that no sealed documents were unsealed enroute and have not been tampered with. The ballot scanners and ballot containers shall then be secured until time for the tabulation of votes.

(14~~3~~)  ~~Any notices to the Secretary of State about discrepancies in numbers or seals, zero~~ ~~tapes, or election counters shall also be forwarded to members of the State Election~~ ~~Board, but such information shall be considered confidential if the Secretary of State has~~ ~~initiated an investigation of the matter.~~ By the close of the polls on the day of the primary, election, or runoff, the registrars shall deliver all of the ballot scanners used for advance voting and all other absentee ballots received to the election superintendent or the tabulating center. The election superintendent or tabulating center personnel shall count all of the absentee ballots in accordance with the procedures required by law and the rules of the State Election Board. The election superintendent or tabulating center personnel shall verify the seal numbers of each ballot scanner with the numbers recorded on the daily recap sheet form and shall inspect each seal and unit to verify that there is no evidence of tampering with the unit.  If the seal numbers are not correct or there is evidence of tampering, the Secretary of State and the election superintendent shall be notified immediately and no further action shall be taken with regard to such unit until the reason for the discrepancy has been determined to the satisfaction of the election superintendent.

(15)     After verifying the seal number and the integrity of the seal on each ballot scanner, the election superintendent or tabulating center personnel shall open each ballot scanner and turn on the power. The election superintendent or tabulating center personnel shall then compare the numbers shown on the election counters of the ballot scanners with the numbered list of absentee electors and the absentee ballot recap form to verify that there are no discrepancies. If there is a discrepancy, no further action shall be taken until the reason for the discrepancy has been determined to the satisfaction of the election superintendent. The election superintendent or tabulating center personnel shall cause each ballot scanner to print a minimum of three tapes showing the vote totals as cast on that ballot scanner. Three witnesses shall sign each of the tapes or shall write on the tapes the reason why they will not sign the tapes. One copy of the results tape for each ballot scanner shall be made available for the information of the public. One tape shall be placed into an envelope (or reusable document storage container suitable for the same purpose), provided by the election superintendent along with "poll worker" memory cards from the ballot scanner. The envelope shall be sealed by the poll manager and the same two witnesses who signed the tape such that the envelope cannot be opened without breaking such seal. The envelope shall be initialed by the poll manager and the two witnesses indicating that it contains the correct tape and memory card from the indicated ballot scanner. The envelope shall be labelled with the name of the polling place, the serial number of the ballot scanner, and the number assigned to the ballot scanner for that election. The third tape shall be placed into another envelope with the absentee ballot recap form.

(16)     After completing the printing of the results, the ballot scanner shall be turned off, secured, and resealed. The ballot scanners shall then be placed in a secure area with appropriate climate control. The envelopes containing the memory cards and results tapes, voter access cards, poll worker cards, ballot encoder devices, numbered lists of absentee voters, absentee ballot recap forms, and other such paperwork shall be transported to the office of the election superintendent by the election superintendent or tabulating center personal, which transportation shall at all times involve at least two authorized individuals. The office of the election superintendent shall receive the materials and shall document delivery. The election superintendent or tabulating center personal who travelled with the materials shall sign a form indicating that no sealed documents were unsealed enroute and that the materials have not been tampered with.

(17)     Any notices to the Secretary of State about discrepancies in numbers or seals, zero tapes, or election counters shall also be forwarded to members of the State Election Board, but such information shall be considered confidential if the Secretary of State has initiated an investigation of the matter.

Authority: O.C.G.A. §§ 21-2-31, 21-2-385

**RULE 183-1-14-.11 Mailing and Issuance of Ballots**

During early voting, as additional applicants for absentee ballots are determined to be eligible, the board of registrars or absentee ballot clerk shall mail or issue official absentee ballots <u>or provisional absentee ballots, if appropriate,</u> to such additional applicants immediately upon determining their eligibility. The board or clerk shall make such determination and mail or issue official absentee ballots<u>; provisional absentee ballots, if appropriate, or notices of rejection of absentee ballot applications</u> to such additional ~~eligible~~ applicants within 3 business days after receiving the absentee ballot applications.

Authority: O.C.G.A. §§ 21-2-31, O.C.G.A § 21-2-384

**RULE 183-1-14-.12 Eligibility of Application for Absentee Ballot**

<u>(1)</u>      The application for an absentee ballot shall be in writing and shall contain sufficient information for proper identification of the elector. To be deemed sufficient, an application for an absentee ballot must contain the signature of the applicant.

     <u>(a</u>1)~~.~~    In the case of the elector making such application for an absentee ballot, the application shall contain the signature of such elector.

     <u>(b</u>2)~~.~~    In the case of a relative making an application on behalf of an elector pursuant to O.C.G.A. § 21-2-381(a)(1)(B), the application shall contain the signature of the elector's relative as well as the relationship of the relative to the elector.

<u>(2)      Any person or entity, except an election superintendent or registrar, that creates an application for absentee ballot form for an elector, other than the elector themselves, shall ensure that the absentee ballot form is substantially in the same form as the application for absentee ballot form made available by the Secretary of State. Such person or entity shall also clearly disclose on the face of the application for absentee ballot form that they created the application for absentee ballot form. Any nonconforming application for absentee ballot shall still be processed if it meets the legal requirements of O.C.G.A. § 21-2-381(a).</u>

Authority: O.C.G.A. §§ 21-2-31, O.C.G.A § 21-2-381

**RULE 183-1-14-.13 Prompt Notification of Absentee Ballot Rejection**

When a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk shall notify the elector by mailing written notice no later than the close of business on the third business day after receiving the absentee ballot.  However, for any timely submitted absentee ballot that is rejected after the close of the advance voting period, the board of registrars or absentee ballot clerk shall notify the elector by mailing written notice no later than 3:00 PM on the next business day. The board of registrars or absentee ballot clerk shall also attempt to notify the elector by email and telephone within the same time requirements if an email or telephone number is on the elector's voter registration record.

Authority: O.C.G.A. §§ 21-2-31, O.C.G.A § 21-2-386

**COPY OF THE PROPOSED NEW RULE**

**RULE 183-1-14-.02 Advance Voting**

(1)     Counties and municipalities shall use electronic markers and ballot scanners for in-person absentee voting during the advance voting period. As used in this rule, the term "registrar" or "registrars" means a county board of registrars, a county board of elections and registration, a joint county-municipal board of elections and registration, a municipal absentee ballot clerk, a municipal registrar, or the designee of a board of registrars, board of elections and registration, or joint county-municipal board of elections and registration.

(2)     The registrar shall publish the times, dates. and locations of the availability of advance voting in their jurisdiction on a publicly accessible website, or if the registrar does not have a website. in a newspaper of general circulation or by posting in a prominent location in the county, no later than 7 days prior to the beginning of the advance voting period.  Any additional advance voting locations added after that deadline shall be published as soon as possible. The registrar shall endeavor not to remove or alter any advance voting locations after they are published, but if emergency or unforeseen circumstances make such a change necessary, the registrar shall publish those changes as soon as possible.

(3)     Electronic ballot markers and ballot scanners shall be configured and tested in accordance with the provisions of Rule 183-1-12-.08 prior to use in advance voting. Public notice of the time and place for such configuration and testing of the electronic ballot markers and ballot scanners to be used for advance voting shall be given in accordance with O.C.G.A. § 21-2-374 and 21-2-379.25 and Rule 183-1-12-.08 prior to such configuration and testing.

(4)     The electronic ballot markers and ballot scanners to be used for advance voting shall be set up in a manner to assure the privacy of the elector while casting his or her ballot while maintaining the security of such components against tampering, damage, or other improper conduct. In addition, there shall be at least one electronic ballot marker configured for use by physically disabled electors. at each advance voting location.

(5)     Voter access cards for use in electronic ballot markers for advance voting may be encoded by use of an electronic poll book or other device approved by the Secretary of State. The registrar may also utilize the correct access code to manually bring up the correct ballot on the touchscreen.

(6)     Magnifying devices shall be available at advance voting locations to assist voters in reviewing their paper ballots.

(7)     On the first day of the advance voting period, prior to any votes being cast on ballot scanners, the registrars shall verify that the seals for each electronic ballot marker, ballot scanner, and ballot box are intact and that there is no evidence or indication of any

tampering with the seal or the component. The registrars shall verify that the number of the seal matches the number of the seal recorded for that component when such component was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering with the seal or component, the election superintendent shall be immediately notified and such component shall not be used until such matters are resolved by agreement of the election superintendent and the registrars. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the registrars may deem appropriate to protect the security of the voting system components and to prevent interference with the duties of the registrars. The registrars and two witnesses sworn as poll officers as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 shall run a zero tape on each ballot scanner prior to the beginning of advance voting on those scanners, and the registrar and the two witnesses shall sign the zero tape in the space provided. The registrars shall verify that the electronic ballot markers and ballot scanners all indicate zero counts prior to the opening of the polls. If the tape does not show zero votes prior to the start of voting, the election superintendent shall be immediately notified and such component shall not be used until the component is cleared and the matter is resolved by agreement of the election superintendent and the registrars. The registrar and the same two sworn witnesses who signed the zero tape shall inspect and confirm that the ballot box associated with that scanner is empty and contains no ballots or other unauthorized matter, and shall verify that fact in writing on a form to be developed by the Secretary of State. Such form shall include the date and time it was executed, shall be attached to the zero tape generated by the ballot scanner attached to that ballot box, and shall be returned to the election superintendent at the close of the advance voting period with the other paperwork from the voting location.  The registrars shall verify that there is no unauthorized matter affixed to the electronic ballot markers, ballot scanners, or voting booths. The registrars shall affix a card of instructions for voting within each voting booth. Prior to voters entering the voting booth, the registrars may also distribute to such voters a card of instructions for voting that has been approved or provided by the Secretary of State.

(8)     If at the close of voting on any day during the advance voting period, there are more than 1,500 ballots inside any ballot box, the registrar and two sworn witnesses shall unseal the ballot box, remove the paper ballots, and place the ballots in one or more durable, portable, secure, and sealable containers. The registrars shall complete and affix to each container a form identifying the advance voting location, the advance voting dates that the ballots were cast, the ballot scanner serial number, the number assigned to that ballot scanner for that specific election, the count of the ballots from the ballot scanner, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the registrar and the two witnesses such that it cannot be opened without breaking the seal. The ballot box shall be resealed, and the new seal numbers shall be documented. The registrar and at least one sworn witness shall deliver the ballot container to the election superintendent for secured storage until time for the tabulation of votes, and the election superintendent shall complete a chain of custody form indicating the delivery of the secure container. The form shall be signed by the registrar and any witnesses who travelled with the registrar indicating that no sealed documents were

2

unsealed enroute and have not been tampered with. In the discretion of the registrar, the same procedure for emptying the ballot box may be followed if there are less than 1,500 ballots in the ballot box at the end of any advance voting day, but the ballot box shall not be opened while voting is taking place except as authorized by Rule 183-1-12-.10(5).

(9)     At the close of voting each day during the advance voting period, the registrars shall document the election counter number from the ballot scanner on the daily recap sheet. The memory cards shall remain in the ballot scanner at all times during the advance voting period until the polls close on the day of the primary, election, or runoff. Each electronic ballot marker, ballot scanner, ballot box, electronic poll book, paper backup poll book, and voter access cards shall then be secured overnight. If the room where advance voting is taking place cannot be locked and secured overnight in the reasonable judgment of the superintendent, the superintendent shall cause the voting system components to be stored in a locked, secure container that is reasonably affixed to the polling place; be under visual surveillance of an election official or their designee, a licensed security guard, or a law enforcement official; or if, if the previously listed options are not feasible, in another manner that in the reasonable judgment of the superintendent secures and protects the voting system components from unauthorized access. Any electronic visual surveillance used for security when voting is not taking place shall not record, capture, or otherwise compromise the privacy of an elector's ballot.

(10)    Each morning during the advance voting period prior to voting beginning, the registrars shall verify the seal numbers on each electronic ballot marker and ballot scanner to be used for advance voting with the number of the seal recorded on the daily recap sheet from the previous day of advance voting and shall verify that the seals do not show any signs of tampering. If the seal number corresponds to the entry on the daily recap sheet and there is no evidence of tampering, the electronic ballot markers and ballot scanners shall be turned on. If the numbers do not match or there is evidence of tampering, the election superintendent shall be notified immediately and the component shall not be used until such discrepancy is resolved to the satisfaction of the election superintendent and the registrars. After turning on the ballot scanners, the registrars shall verify the election counter number with the number recorded on the daily recap sheet from the previous day of advance voting. If the numbers do not match, the election superintendent shall be immediately notified and the component shall not be used until such discrepancy is resolved to the satisfaction of the election superintendent and the registrars. The election counter number shall then be entered onto the daily recap sheet for that day.

(11)    Voters who vote absentee ballots in person shall first complete an absentee ballot application and sign an oath, which may be on the same form and may be on paper or digital. After the registrars determine that the voter is eligible to vote, the registrars shall note the voter's registration number and ballot style on the absentee ballot application. Each voter shall be offered instruction by a registrar in the method of voting on the voting system, including specific instruction to review their printed ballot prior to scanning it. In providing such instruction, the registrar shall not in any manner request, suggest, or seek

or persuade or induce any voter to vote any particular ticker or for any particular candidate, or for or against any particular question. The voter shall then be issued a voter access card programmed with the correct ballot style or the registrar shall use the correct access code to manually bring up the correct ballot on the electronic ballot marker. The voter shall then enter the enclosed space in the advance voting location and proceed to vote his or her choices. Upon making his or her selections, the voter shall cause the paper ballot to print, remove his or her printed ballot from the printer, remove the voter access card from the touchscreen unit, review the selections on his or her printed ballot, scan his or her printed ballot into the scanner, and return the voter access card to a poll worker.

(12)     The registrars shall cause each advance voting location to be sufficiently staffed and a poll worker is to be stationed at every ballot scanner in use in the polling place while voting is occurring. The poll officer stationed at the ballot scanner shall offer instruction throughout the period while voting is occurring reminding voters to review their printed paper ballots.

(13)     At the end of the advance voting period, the registrars shall record the election counter number from each ballot scanner on the daily recap sheet. The ballot scanners shall be shut down and sealed. The registrars shall record the seal numbers on the daily recap sheet. The registrar and two sworn witnesses shall unseal the ballot box, remove the paper ballots, and place the ballots in one or more durable, portable, secure, and sealable containers.  The registrars shall complete and affix to each container a form identifying the advance voting location, the advance voting dates that the ballots were cast, ballot scanner serial number, the number assigned to that ballot scanner for that specific election, the count of the ballots from the ballot scanner, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the registrar and the two witnesses such that it cannot be opened without breaking the seal. The ballot box shall be resealed, and the new seal numbers shall be documented. The registrar and at least one sworn witness shall deliver the ballot container to the election superintendent for secured storage until time for the tabulation of votes, and the election superintendent shall complete a chain of custody form indicating the delivery of the secure container. The form shall be signed by the registrar and any witnesses who travelled with the registrar indicating that no sealed documents were unsealed enroute and have not been tampered with. The ballot scanners and ballot containers shall then be secured until time for the tabulation of votes.

(14)     By the close of the polls on the day of the primary, election, or runoff, the registrars shall deliver all of the ballot scanners used for advance voting and all other absentee ballots received to the election superintendent or the tabulating center. The election superintendent or tabulating center personnel shall count all of the absentee ballots in accordance with the procedures required by law and the rules of the State Election Board. The election superintendent or tabulating center personnel shall verify the seal numbers of each ballot scanner with the numbers recorded on the daily recap sheet form and shall inspect each seal and unit to verify that there is no evidence of tampering with the unit.  If the seal numbers are not correct or there is evidence of tampering, the Secretary of State and the election superintendent shall be notified

4

immediately and no further action shall be taken with regard to such unit until the reason for the discrepancy has been determined to the satisfaction of the election superintendent.

(15)    After verifying the seal number and the integrity of the seal on each ballot scanner, the election superintendent or tabulating center personnel shall open each ballot scanner and turn on the power. The election superintendent or tabulating center personnel shall then compare the numbers shown on the election counters of the ballot scanners with the numbered list of absentee electors and the absentee ballot recap form to verify that there are no discrepancies. If there is a discrepancy, no further action shall be taken until the reason for the discrepancy has been determined to the satisfaction of the election superintendent. The election superintendent or tabulating center personnel shall cause each ballot scanner to print a minimum of three tapes showing the vote totals as cast on that ballot scanner. Three witnesses shall sign each of the tapes or shall write on the tapes the reason why they will not sign the tapes. One copy of the results tape for each ballot scanner shall be made available for the information of the public. One tape shall be placed into an envelope (or reusable document storage container suitable for the same purpose), provided by the election superintendent along with "poll worker" memory cards from the ballot scanner. The envelope shall be sealed by the poll manager and the same two witnesses who signed the tape such that the envelope cannot be opened without breaking such seal. The envelope shall be initialed by the poll manager and the two witnesses indicating that it contains the correct tape and memory card from the indicated ballot scanner. The envelope shall be labelled with the name of the polling place, the serial number of the ballot scanner, and the number assigned to the ballot scanner for that election. The third tape shall be placed into another envelope with the absentee ballot recap form.

(16)    After completing the printing of the results, the ballot scanner shall be turned off, secured, and resealed. The ballot scanners shall then be placed in a secure area with appropriate climate control. The envelopes containing the memory cards and results tapes, voter access cards, poll worker cards, ballot encoder devices, numbered lists of absentee voters, absentee ballot recap forms, and other such paperwork shall be transported to the office of the election superintendent by the election superintendent or tabulating center personal, which transportation shall at all times involve at least two authorized individuals. The office of the election superintendent shall receive the materials and shall document delivery. The election superintendent or tabulating center personal who travelled with the materials shall sign a form indicating that no sealed documents were unsealed enroute and that the materials have not been tampered with.

(17)    Any notices to the Secretary of State about discrepancies in numbers or seals, zero tapes, or election counters shall also be forwarded to members of the State Election Board, but such information shall be considered confidential if the Secretary of State has initiated an investigation of the matter.

Authority: O.C.G.A. §§ 21-2-31, 21-2-385

**RULE 183-1-14-.11 Mailing and Issuance of Ballots**

During early voting, as additional applicants for absentee ballots are determined to be eligible, the board of registrars or absentee ballot clerk shall mail or issue official absentee ballots or provisional absentee ballots, if appropriate, to such additional applicants immediately upon determining their eligibility. The board or clerk shall make such determination and mail or issue official absentee ballots; provisional absentee ballots, if appropriate, or notices of rejection of absentee ballot applications to such additional applicants within 3 business days after receiving the absentee ballot applications.

Authority: O.C.G.A. §§ 21-2-31, O.C.G.A § 21-2-384

**RULE 183-1-14-.12 Eligibility of Application for Absentee Ballot**

(1)     The application for an absentee ballot shall be in writing and shall contain sufficient information for proper identification of the elector. To be deemed sufficient, an application for an absentee ballot must contain the signature of the applicant.

    (a)     In the case of the elector making such application for an absentee ballot, the application shall contain the signature of such elector.

    (b)     In the case of a relative making an application on behalf of an elector pursuant to O.C.G.A. § 21-2-381(a)(1)(B), the application shall contain the signature of the elector's relative as well as the relationship of the relative to the elector.

(2)     Any person or entity, except an election superintendent or registrar, that creates an application for absentee ballot form for an elector, other than the elector themselves, shall ensure that the absentee ballot form is substantially in the same form as the application for absentee ballot form made available by the Secretary of State. Such person or entity shall also clearly disclose on the face of the application for absentee ballot form that they created the application for absentee ballot form. Any nonconforming application for absentee ballot shall still be processed if it meets the legal requirements of O.C.G.A. § 21-2-381(a).

Authority: O.C.G.A. §§ 21-2-31, 21-2-381

**RULE 183-1-14-.13 Prompt Notification of Absentee Ballot Rejection**

When a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk shall notify the elector by mailing written notice no later than the close of business on the third business day after receiving the absentee ballot.  However, for any timely submitted absentee ballot that is rejected after the close of the advance voting period, the board of registrars or absentee ballot clerk shall notify the elector by mailing written notice no later than 3:00 PM on the next business day. The board of registrars or absentee ballot clerk shall also attempt to notify the elector by email and telephone within the same time requirements if an email or telephone number is on the elector's voter registration record.

Authority: O.C.G.A. §§ 21-2-31, 21-2-386

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD, CHAPTER 183-1-15, *RULES OF STATE ELECTION BOARD*, RULE 183-1-15-.02 *DEFINITION OF VOTE* AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to post an SEB rule, Rule 183-1-15-.02 *Definition of Vote* (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed new rule and a synopsis of the proposed rule, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list.  A copy of this notice, an exact copy of the proposed rule amendment, and a synopsis of the proposed rule amendment may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334.  These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board.  Copies may also be requested by contacting the Elections Division at 404-656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held on:

January 22, 2020
9:00 a.m.
2 Martin Luther King Jr. Dr. SE
18th Floor, West Tower
Room 1816
Atlanta, GA 30334

At the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing.  Oral statements should be concise and will be limited to 3 minutes per person. Additional comments should be presented in writing.  Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before January 13, 2020 to the address below.  Written comments must be received on or before January 13, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334 or by email to jshannon@sos.ga.gov.

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on January 22, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

This notice is given in compliance with O.C.G.A. §50-13-4.

This 19th day of December, 2019.

Brad Raffensperger
Chairman, State Elections Board

Posted:  December 19, 2019

**SYNOPSIS OF THE PROPOSED RULE OF THE
STATE ELECTIONS BOARD, CHAPTER 183-1-15, *RULES OF STATE
ELECTION BOARD*, RULE 183-1-15-.02 *DEFINITION OF VOTE***

Purpose:  The purpose of the rule is to remove the definition of a vote on the old DRE voting system and add a definition for the new electronic ballot marker paper ballot system.

Main Features:  The main feature of the rule is to delete the definitions regarding a vote cast on a DRE machine and add a definition for a paper ballot marked by an electronic ballot marker.

**DIFFERENCES BETWEEN THE EXISTING RULE AND THE PROPOSED
AMENDMENTS OF THE STATE ELECTION BOARD, CHAPTER 183-1-15,
*RULES OF STATE ELECTION BOARD*, RULE 183-1-15-.02 *DEFINITION OF
VOTE***

NOTE: Struck through text is proposed to be deleted.  Underlined text is proposed to be added.

**RULE 183-1-15-.02 Definition of Vote**

(1) DRE Equipment.  A vote cast on a DRE unit shall be the choice made by a voter by:
    (a) Pressing the appropriate place on the DRE unit's touchscreen to cause an "X" or similar designation to display adjacent to the name of the candidate or answer to a question for which the voter desires to vote;

    (b) Typing on the touchscreen the name of a qualified write-in candidate in accordance with the instructions for voting on the DRE unit; or

    (c) Pressing the appropriate buttons on the keypad in the case of persons using the VWD device attached to the DRE unit.

(21) Lever-type Voting Machines. A vote cast on a lever-type voting machine shall be the choice made by a voter by either operating the lever adjacent to the name of the candidate or answer to a question for which the voter desires to vote or by writing of the name of a qualified write-in candidate on the machine in accordance with the instructions for voting on the voting machine and then recording such votes on the machine by the actuation of the main lever which casts such votes and returns the other levers to their original positions.

(32) Optical Scan Voting Systems.

    (a)     A vote cast on an optical scan voting system ballot marked by hand shall be the choice made by a voter by either:

        1.  Filling in the oval or completing the arrow adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

2. Filling in the oval ~~or completing the arrow~~ adjacent to the appropriate write-in space and writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

(b)   In reviewing an optical scan ballot <u>marked by hand</u> which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), if the voter filled in the oval ~~or completed the arrow~~ next to the name of a candidate whose name appears on the ballot and filled in the oval ~~or completed the arrow~~ adjacent to the write-in space and wrote the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(c)   If, in reviewing an optical scan ballot <u>marked by hand</u> which has been rejected as containing an overvote in accordance with O.C.G.A.§ 21-2-483(g)(2), it appears that there is a properly cast vote and what is clearly a stray mark which has caused the ~~tabulator~~ <u>ballot scanner</u> to read the vote for such office as an overvote, the properly cast vote shall be counted and the stray mark shall be ignored.

(d)   If, in reviewing an optical scan ballot <u>marked by hand</u> which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), a voter marks his or her ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the vote review panel as provided in O.C.G.A. § 21-2-483(g)(2)(B), the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

(e)   When an optical scan ballot <u>marked by hand</u> contains stray marks or marks which prevent the ~~tabulating machine~~ <u>ballot scanner</u> from properly recording valid votes as determined under this rule and by law, the ballot shall be duplicated in accordance with law to correct such problems and the duplicate shall then be tabulated.

(f)   <u>In lieu of manually duplicating a ballot pursuant to paragraph (e), the manual review of ballots with overvotes by vote review panels pursuant to O.C.G.A. § 21-2-483(g) may be done by reviewing a digital image of the ballot and electronically adjudicating the intent of the voter, if such determination is recorded on the digital image of the ballot.</u>

(f)   <u>When an optical scan ballot marked by an electronic ballot marker contains marks added, in addition to what was printed by the electronic ballot marker, the additional marks shall be ignored.</u>

Page **4** of 7

(4<u>3</u>) Paper Ballots.

 (a) A vote cast on a paper ballot <u>that is not counted by an optical scan system (i.e. in certain municipal elections)</u> shall be a choice made by a voter by either:

  1. Placing an "X", a check, or other similar mark in the square adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

  2. Writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

 (b) If a voter marks his or her paper ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the poll officers as provided in O.C.G.A. § 21-2-439, the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

 (c) If the voter marked the square next to the name of a candidate whose name appears on the ballot and wrote in the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(5) Write-in Votes.  In no event shall votes cast for write-in candidates who have not qualified in accordance with O.C.G.A. § 21-2-133 be counted or recorded.

<u>Authority: O.C.G.A. §§ 21-2-2, 21-2-31, 21-2-133, 21-2-439, 21-2-483</u>

## COPY OF THE PROPOSED NEW RULE

### RULE 183-1-15-.02 Definition of Vote

(1) Lever-type Voting Machines. A vote cast on a lever-type voting machine shall be the choice made by a voter by either operating the lever adjacent to the name of the candidate or answer to a question for which the voter desires to vote or by writing of the name of a qualified write-in candidate on the machine in accordance with the instructions for voting on the voting machine and then recording such votes on the machine by the actuation of the main lever which casts such votes and returns the other levers to their original positions.

(2) Optical Scan Voting Systems.

 (a) A vote cast on an optical scan ballot marked by hand shall be the choice made by a voter by either:

    1.   Filling in the oval adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

    2.   Filling in the oval adjacent to the appropriate write-in space and writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

(b)    In reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), if the voter filled in the oval next to the name of a candidate whose name appears on the ballot and filled in the oval adjacent to the write-in space and wrote the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(c)    If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A.§ 21-2-483(g)(2), it appears that there is a properly cast vote and what is clearly a stray mark which has caused the ballot scanner to read the vote for such office as an overvote, the properly cast vote shall be counted and the stray mark shall be ignored.

(d)    If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), a voter marks his or her ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the vote review panel as provided in O.C.G.A. § 21-2-483(g)(2)(B), the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

(e)    When an optical scan ballot marked by hand contains stray marks or marks which prevent the ballot scanner from properly recording valid votes as determined under this rule and by law, the ballot shall be duplicated in accordance with law to correct such problems and the duplicate shall then be tabulated.

(f)    In lieu of manually duplicating a ballot pursuant to paragraph (e), the manual review of ballots with overvotes by vote review panels pursuant to O.C.G.A. § 21-2-483(g) may be done by reviewing a digital image of the ballot and electronically adjudicating the intent of the voter, if such determination is recorded on the digital image of the ballot.

(g)    When an optical scan ballot marked by an electronic ballot marker contains marks added, in addition to what was printed by the electronic ballot marker, the additional marks shall be ignored.

(3) Paper Ballots.

    (a)     A vote cast on a paper ballot that is not counted by an optical scan system (i.e. in certain municipal elections) shall be a choice made by a voter by either:

           1.     Placing an "X", a check, or other similar mark in the square adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

           2.     Writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

    (b)     If a voter marks his or her paper ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the poll officers as provided in O.C.G.A. § 21-2-439, the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

    (c)     If the voter marked the square next to the name of a candidate whose name appears on the ballot and wrote in the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(4)   Write-in Votes.  In no event shall votes cast for write-in candidates who have not qualified in accordance with O.C.G.A. § 21-2-133 be counted or recorded.

Authority: O.C.G.A. §§ 21-2-2, 21-2-31, 21-2-133, 21-2-439, 21-2-483