IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BRAD RAFFENSPERGER, )<br>)<br>Defendants. ) | CA No. 1:17-cv-02989-AT |

## DECLARATION OF JANINE EVELER

Pursuant to 28 U.S.C. § 1746, I, JANINE EVELER, make the following declaration:

1.

My name is Janine Eveler. I am over the age of majority and am in all ways competent to give testimony. I am aware that this Declaration is being submitted in support of a motion to quash or, in the alternative, to modify a subpoena issued by the Coalition Plaintiffs in the above-captioned litigation.

2.

I am the Election Supervisor appointed by the Cobb County Board of Elections & Registration ("Cobb BOE") and have served in that capacity for over

1



EXHIBIT C

nine years. As Election Supervisor, I lead a staff of 26 full-time employees and seventeen part-time employees.

3.

On the morning of Thursday, December 26, 2019, I received an email from my assistant, Pam Burel, stating that she had just discovered a white envelope containing a subpoena in my mailbox and she did not know who had signed for it. I was still on annual leave for the holidays, so I asked her to investigate how we received the document. She responded a short time later with a follow-up email stating that on Monday late afternoon, a man came into the lobby and handed the envelope to Kili Dickey, instructing her to give it to me when I return to the office the following week. According to Pam's email, Kili Dickey did not know the man was serving a subpoena and she did not sign anything, although she gave her name verbally when the man asked. After he left, she placed the envelope in my mail folder.

4.

I have not authorized either our regular receptionist or Ms. Dickey to accept service of process on my behalf.

5.

I have reviewed the subpoena that was left with Ms. Dickey. It contains 23 individual requests and seeks a large volume of information on a wide array of subjects. Under the heading "Documents To Be Produced," it states that the subpoena "relates to the default backup plan as ordered in the Court's August 15, 2019 Order." I am interpreting this language to refer the Court's requirement in its August 2019 Order that the State select counties to implement a pilot election that used both hand-marked paper ballots and the new voting equipment (the new ballot marking devices ("BMDs"), optical scanners, and Poll Pads) as a contingency plan in the event that the new voting system was not ready for the March 2020 Presidential Primary elections. (*See* Doc. 579 at 148). It should be noted, however, that many of the requested documents seek information that goes far beyond the subject of the pilot election. For example, Requests Nos. 16-17 involve communications between Cobb BOE and the Secretary of State's office regarding voter registration lists and provisional ballots, respectively. Request Nos. 22-23 involve communications concerning preservation of the old DRE machines.

6.

Upon learning that the State would be seeking counties to implement a pilot election using hand-marked paper ballots, Cobb County BOE volunteered to be

one of those counties, and the November 2019 municipal elections in Cobb County were conducted primarily with hand-marked paper ballots. The new BMDs were also available and used by disabled voters who prefer to vote on an electronic screen. These are typically visually impaired voters or voters with tremors.

7.

Responding to this subpoena will be time-consuming, burdensome, and expensive for Cobb BOE. To give the Court some frame of reference, I did a search of my e-mails using the search terms "pilot," "hand-marked," and "HMPB," and that search alone generated 314 e-mails. I would need to review each of these 314 e-mails to determine if they contain confidential information and make any necessary redactions before producing them. And, of course, this is only *my* e-mail account. In order to comply with the subpoena, I would need to review communications by my staff too. I am often copied on staff e-mails, but this is not always the case, and, therefore, many different e-mail accounts and text messages would need to be searched and reviewed. I will need to coordinate with other staff members, such as my Fiscal Technician, my Preparations Center Manager, my Elections Manager, Training Supervisor, and my Registration Manager.

8.

Some of the requests are overly broad. For example, Request No. 1 asks for communications with "any election vendors." It is not clear to me what is meant by an "election vendor." We buy or rent numerous supplies to run an election – everything from writing utensils to seals to paper supplies. However, not all of these supplies are used solely for the election, nor are they specific to the pilot election in November 2019 that Plaintiffs are seeking information about.

9.

I estimate that it will take about 80 hours of work for me to comply with the requests in this subpoena. The subpoena seeks production by 10:00 a.m. on January 10, 2020. Since the subpoena was left late in the day on December 23, 2019, requiring compliance by January 10, 2020 resulted in my having only 10 business days to complete this production. (Cobb County Offices were closed on December 24-25 and January 1).

10.

While I do not believe that ten business days is a reasonable amount of time to comply with this subpoena given its large scope, I would have even less time than that to gather and review the responsive documents because I will be in the Office for only four (4) of those ten (10) business days. As noted above, I was on

vacation for the holidays when the subpoena was left at the reception desk, and I did not return to work until December 31, 2019. I will be out of the Office again beginning on January 6, 2020 and will not return to work until January 10, 2020 because of longstanding plans to take a prepaid trip outside of the country. Since the majority of the responsive communications are from my e-mail account, I need to be the primary person doing the work for the subpoena.

11.

I estimate that it will cost Cobb County approximately $ 4,686 to comply with this subpoena. That is based on a projected 80 hours of work based on my hourly wage of $58.50. If certain portions can be delegated to other people, the costs would be based on that person's hourly wage. Of course, this is an estimate, and it is possible that the costs could be higher. We cannot know the exact cost of a document production until the work is completed.

12.

Given my many other responsibilities and duties (discussed in more detail below), I would not be able to spend more than 2-3 hours gathering and reviewing responsive documents prior to my departure on January 6, 2020. Upon my return on January 10th, I would need to juggle competing priorities and could spend at most 5 to 10 hours per week on this document production. With large open

records requests, we often produce documents in stages, and I think that would be the best way to handle this document request. If it is necessary for me to comply with this subpoena, I think the following schedule would be reasonable: January 31 for producing responsive e-mails with the remainder of the production completed by February 28th.

13.

In evaluating the burdensomeness of this subpoena in view of Cobb BOE's other higher priority duties and responsibilities, I would like to briefly summarize some of the other work responsibilities that my staff and I will be handling at the same time that we would be tasked with searching and reviewing the documents requested by Plaintiffs in their subpoena. There is already a very short timeframe in which to prepare for the March 24, Presidential Primary, due to the implementation of the new voting system.

14.

In the month of January, we will be very busy finalizing our training curriculum on the new equipment because our training of poll workers begins on February 3, 2020. In addition, on February 4, 2020, we will start mailing out absentee ballots. Prior to that deadline, the Registration Manager and I have myriad responsibilities to produce paper ballots for mailing. We must coordinate

with the Center for Election Systems and Dominion Voting Systems to build the election database that contains all precincts, polling places, district combinations, races, and candidates for each party's ballot and defines the number of voting units to be provided at each location. In addition, we must be in constant contact with our print vendor once the database is proofed, so that ballots can be ordered and delivered on time. We need to carefully review and proofread each ballot and then confirm that they scan properly before we send them out.

15.

I will also be meeting with my area supervisors on February 13, 2020 who are primarily responsible for interviewing and hiring seasonal poll workers to work at the polls on Election Day. We have 25 area supervisor positions, seven of which are currently vacant and must be filled during the month of January, 2020. While that process will be handled primarily by the Elections Manager Brenda Jemison, I have an approval role with all new hires.

16.

Early voting begins on March 2, 2020, and we plan to have an increased number of early voting locations. Suitable facilities have been located, but coordinating final arrangements with facility managers and staffing each location

is extremely time-intensive. Training procedures for early voting workers must be completed and classes conducted prior to the voting start date.

17.

My Office receives many requests for documents under the Open Records Act. We received twenty-five (25) Open Records Requests in 2019, many of which were quite large and required considerable amounts of time to complete. While we currently have no ongoing Open Records requests, additional request(s) could be received any day, which would then require a further diversion of resources.

18.

In sum, it is very difficult for a county election board to have to expend precious resources in the critical months before an election responding to a subpoena in a case where it is not even a party. If the subpoena is not quashed or limited in scope, we will do our best to respond to it as expeditiously as possible, but I believe it would be simply not possible for me to be able to respond to these twenty-three (23) requests by the morning of January 10th.

19.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed this 3rd day of January, 2020.

                                          _____
                                          Janine Eveler
                                          Election Supervisor