# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**

**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## COALITION PLAINTIFFS'  REPLY BRIEF
## IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

## **TABLE OF CONTENTS**

I.   **INTRODUCTION** ............................................................... **1**

II.  **COALITION PLAINTIFFS ARE PREVAILING PARTIES** ..................... **1**

   A.  **Plaintiffs Achieved an Enforceable Judgment on the Merits that Altered the Legal Relationship of the Parties** ....................................... **1**

   B.  **The Passage of HB 316 Has No Effect on Prevailing Party Status** .......... **2**

   C.  **Prevailing Party Status Applies to the Entirety of the Litigation and to Unsuccessful Claims** .................................................... **4**

   D.  **Plaintiffs Achieved Excellent Results in the Litigation** ..................... **7**

   E.  **Coalition Plaintiffs Prevailed Against Fulton County** ..................... **9**

III. **REASONABLE HOURS** ..................................................... **10**

   A.  **General Objections and Considerations** ................................. **10**
      1.  Coalition's Advocacy Irrelevant .................................... 10
      2.  That Fee Award Will be Paid by Taxpayers is Irrelevant ........................ 10
      3.  Aggregate Number of Hours Are Neither "Staggering" nor "Excessive" 11
      4.  Communications with Marilyn Marks were Productive, Not Excessive .. 17
      5.  No Reduction Warranted Because of "Block Billing" ............................. 18

   B.  **Objections to Individual Lawyers' Time Without Merit** ..................... **20**
      1.  Bruce P. Brown .................................................... 20
      2.  Cary Ichter ....................................................... 23
      3.  Robert McGuire .................................................. 24
      4.  William Ney ...................................................... 27
      5.  The Lawyers' Committee for Civil Rights Under the Law ..................... 28

IV. **COALITION PLAINTIFFS' RATES ARE REASONABLE** .................. **31**

V.  **EXPENSES ARE REASONABLE** ........................................... **35**

   A.  **Meals** ................................................................ **35**

   B.  **Office Expenses** ...................................................... **35**

   C.  **Lawyers' Documentation of Expenses** ................................. **36**

   D.  **Coalition for Good Governance's Expenses are Reasonable** ................. **36**

VI. **CONCLUSION** ........................................................... **40**

The Coalition Plaintiffs file this Reply Brief in Support of their Special Motion for Award of Attorneys' Fees and Costs (Doc. 595), as further supported in their Detailed Specification (Doc. 632).

## I.   INTRODUCTION

An award of fees and expenses to the Coalition Plaintiffs will serve the "purpose of the Attorney's Fees Awards Act," which "is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations." *Dowdell v. Apopka*, 698 F.2d 1181, 1189 (11th Cir. 1983). In this Reply, the Coalition Plaintiffs will address each of the objections raised by the Defendants: In Part II, the Coalition Plaintiffs will show that they are the prevailing parties entitled to reasonable fees and expenses.  Part III addresses the reasonableness of the time spent on this litigation,  Part IV the reasonableness of the rates, and Part V the reasonableness of the expenses.

As itemized in the Appendix, Coalition Plaintiffs are entitled to $1,483,422 in fees and $415,959 in expenses, for a total award of $1,899,381.

## II.   COALITION PLAINTIFFS ARE PREVAILING PARTIES

### A.   Plaintiffs Achieved an Enforceable Judgment on the Merits that Altered the Legal Relationship of the Parties

The State Defendants argue that this Court's August 15, 2019 Order does not confer prevailing party status on Plaintiffs because it does "not grant the core relief sought." (Doc. 660 at 8).  Yet the Court granted the core relief sought by the

Coalition Plaintiffs by enjoining the use of DREs – exactly the relief that the Coalition Plaintiffs sought in their first two prayers for relief. (Doc. 160-1 at 71-72). By succeeding on this "significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal quotations omitted). Plaintiffs' successes far exceed what is necessary to be a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit"); *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001) (plaintiff is a prevailing party if the plaintiff obtains "some relief by the court"). Furthermore, "a preliminary injunction on the merits . . . entitles one to prevailing party status and an award of attorney's fees." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009). In this case, the Court's preliminary injunction plainly resulted in a "material alteration of the legal relationship of the parties" justifying an attorney's fee award. *Buckhannon,* 532 U.S. at 604.

### B.    The Passage of HB 316 Has No Effect on Prevailing Party Status

The passage of HB 316 does not affect Plaintiffs' prevailing party status. Most importantly, HB 316 did not direct the State Defendants to stop using DREs.

Instead, HB 316 authorized the purchase of a new system and left it to the Defendants to determine when the new system might be deemed "safe and practicable for use." O.C.G.A. § 21–2–300(a)(2).[1]  Further, the lengthy injunction entered by this Court goes far beyond anything HB 316 required by requiring a back-up plan using hand marked paper ballots and addressing a pilot program, electronic pollbooks, provisional ballots, audit procedures, and errors in the voter registration database. *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1410–11 (N.D. Ga. 2019).[2]

In a related argument, the State and Fulton County Defendants argue that Plaintiffs are not "prevailing parties" because Defendants *would have* voluntarily taken the remedial action even if the Court had not awarded it.  (Doc. 661 at 4; Doc. 660 at 2, 10; Doc. 632 at 15 to 23).   The legal test, however, is not whether the defendants might have acted differently without the granting of injunctive relief, but whether the injunction constitutes a "material alteration of the legal relationship between the parties." *Billups,* 554 F.3d at 1356.  Defendants do not

---

[1] Even if the passage of HB 316 had mooted the case, which Defendants do not contend, Plaintiffs would still be prevailing parties entitled to fees because the essential relief they sought—a prohibition of DREs—was ordered by this Court. *Thomas v. Bryant*, 614 F.3d 1288, 1294 (11th Cir. 2010); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 453 (1st Cir. 2009) ("in the mootness context, a 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties prior to the intervening act of mootness").

[2] All of this additional relief was specifically sought by the Coalition Plaintiffs, as explained in the Detailed Specification (Doc. 632 at 15–16).

cite any case in support of their argument that Plaintiffs are not entitled to fees because the Defendants *might have* acted differently without the injunction.

Morever, the suggestion that the Defendants would have taken some remedial action without the Court's intervention – irrelevant as a matter of law – is completely contrary to the evidentiary record.  As detailed in the Coalition Plaintiffs' initial brief – and not refuted by the Defendants – the State Defendants and Fulton County consistently and stubbornly resisted the outcome produced by this Court's Order from the start of this litigation, from ignoring warnings from federal officials, to actively defending DREs against what they characterized as "Luddite prejudices," to characterizing "undetectable manipulation" as "oxymoronic," to denigrating Plaintiffs' experts, to raising numerous defenses, every one of which was defeated by the Coalition Plaintiffs.

Ultimately, prevailing party status is established by a "judicially sanctioned change in the legal relationship of the parties," *Buckhannon*, 532 U.S. at 605, which "modif[ies] the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  All of the relief granted by this Court  meets this threshold.

### C.   Prevailing Party Status Applies to the Entirety of the Litigation and to Unsuccessful Claims

Defendants' unsupported contentions that "any award of fees must be limited only to those claims upon which Plaintiffs were successful," Doc. 660 at 6,

4

and that Plaintiffs' "unsuccessful claims," including on the first preliminary injunction motion, "should weigh heavily against the amount sought." (Doc. 660 at 6, 9-10).   This plainly is contrary to law.   Where plaintiffs have successfully obtained an order altering the legal relationship between the parties, attorneys are entitled to all fees reasonably expended in pursuit of that result even if some claims or motions are unsuccessful:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances *the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit* . . . The result is what matters.

*Hensley*, 461 U.S. at 435 (1983);  (emphasis added); *see also Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim-even though she may have suffered some adverse rulings.").

What this means is that the 2018 injunction motions should not be treated as separate from the 2019 motions.  Both sets of motions addressed the same threatened constitutional violations, and the 2018 motions established much of the evidentiary basis for the ultimate success obtained in 2019.  Indeed, this Court's 2019 Order cites the earlier 2018 injunction order at least eight times[3] and draws

---

[3] See Doc. 579, at 3, 6 & n.5, 7, 13, 65, 130, 135 n.94, 151.

upon the whole evidentiary record assembled during both proceedings.  All of

Plaintiffs' claims, and both preliminary injunction motions, are related to a

common legal theory and the same set of facts that ultimately led to the successful

order on the second preliminary injunction.  *See Hensley*, 461 U.S. at 440.[4]  *Nat'l*

*Rifle Ass'n v. Vill. of Oak Park*, 871 F. Supp. 2d 781, 792 (N.D. Ill. 2012) ("Courts

regularly award fees for lost battles fought in an ultimately successful war effort.").

Although Plaintiffs were unsuccessful in obtaining a preliminary injunction in

2018, the time spent on the 2018 motions laid the groundwork for the successful

second preliminary injunction effort and is plainly compensable.  *See Nader v.*

*Bennett*, 407 F. App'x 190, 191 (9th Cir. 2010) ("fees are awardable for work that

contributed to the ultimate success of the litigation, regardless of the reasons for

any temporary defeats"); *Hapner v. Tidwell*, No. 9:08-cv-00092-DWM, 2009 WL

10678819, at *3 (D. Mont. Mar. 31, 2009) (awarding fees for drafting unsuccessful

preliminary injunction papers where they "address[] many of the issues

subsequently raised" in later briefing); *1st Westco Corp. v. Sch. Dist. of*

---

[4] Defendants argue that Plaintiffs seek recovery under the "catalyst theory" rejected by the Supreme Court in *Buckhannon*.  (Doc. 660 at 35-36; Doc. 661 at 5).  *Buckhannon,* however, disallows an award of fees if the plaintiffs achieves success *without* judicial action.  If, as here, the plaintiff obtains "some relief by the court," 525 U.S. at 603, the plaintiff is entitled to fees as the prevailing party.  Plaintiffs do not contend that they are entitled to fees because the 2018 motion was a catalyst for change, but because the 2018 efforts contributed substantially to obtaining the eventual 2019 Order, which constitutes relief ordered by the Court.

*Philadelphia*, No. 91-2727, 1994 WL 18632, at *4 (E.D. Pa. Jan. 13, 1994)

(awarding fees where "both the factual and legal arguments propounded in the

preliminary injunction effort overlapped substantially with those of the underlying

claim, on which the plaintiffs ultimately prevailed"); *Richardson v. Civil Serv.*

*Comm'n of State of N.Y.*, 449 F. Supp. 10, 12 (S.D.N.Y. 1978) (awarding fees

incurred in litigating unsuccessful preliminary injunction in case that was

ultimately settled).

### D.  Plaintiffs Achieved Excellent Results in the Litigation

When determining the appropriate fee award, "the district court should focus

on the significance of the overall relief obtained by the plaintiff in relation to the

hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435.  The

Court's 2019 preliminary injunction was truly historic: it marks the first time a

federal court has enjoined the use of a state's entire voting system on the basis that

it violated the fundamental right to vote protected by the U.S. Constitution.

The Eleventh Circuit has upheld large awards where the relief granted was

much more modest than that sought here.  *See, e.g., McKenzie v. Cooper, Levins &*

*Pastko, Inc.*, 990 F.2d 1183, 1186 (11th Cir. 1993) (attorneys' fee award of

$102,911.55 for a $8,618.06 judgment in Title VII case).  Where constitutional

rights are vindicated, there is a public benefit courts must consider when assessing

attorneys' fees.  *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir.

1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988."); *see also City of Riverside v. Rivera*, 477 U.S. 561, 572 (1986) (counsel for plaintiffs "served the public interest by vindicating important constitutional rights").

A leading case in the Eleventh Circuit, which is cited repeatedly by the State Defendants[5] is *Duckworth v. Whisenut,* 97 F.3d 1393 (11th Cir. 1996).  In *Duckworth,* a Section 1983 excessive force case against DeKalb County, the District Court awarded plaintiff's counsel $162,209 in fees when plaintiff sought no injunctive relief and recovered only $500 in nominal damages.  The Eleventh Circuit affirmed, specifically rejecting the Defendants' argument that the amount of fees awarded was out of proportion to the ultimate recovery.  The Court explained that the "pursuit of the litigation" revealed both the unconstitutional actions of the police and the tacit condonation of such excessive force by DeKalb County.  "The acknowledgment of this pattern and practice can only inure to the benefit of those involved when redressing an officer's abuse of discretion which violates a person's constitutional rights."  97 F.3d at 1399.  Significantly, *Duckworth* recognizes that the benefit to the public of a lawsuit that vindicates

---

[5] *E.g.,* Doc. 660 at 5, 6, 23.

constitutional rights extends beyond the monetary *and even injunctive relief* granted.  Duckworth resulted in a public benefit to those citizens who encounter police use of force, a relatively modestly sized group, whereas this case has produced relief that will benefit millions of Georgia voters every time an election is held in this State from now on.

### E.    Coalition Plaintiffs Prevailed Against Fulton County

The Fulton County Defendants contend that the Plaintiffs were not prevailing parties against Fulton County because the Order did not modify their behavior (Doc. 661 at 6), is "preliminary," (*id.* at 8), and did not grant Plaintiffs "everything that they asked for," (*id.*).  Each of these arguments is thoroughly refuted above.  The Coalition Plaintiffs agree that fees "'can be divided according to the relative culpability of the various defendants,'" (*id.* at 6 (citation omitted)), but strongly disagree with any suggestion that Fulton County is not liable for a fair portion of the fees.  The Fulton County Defendants, like their State counterparts, never responded to overtures to settle the case and joined the positions taken by the State Defendants, without any apparent consideration of whether it was independently in Fulton County citizens' best interest to do so.  In addition, as detailed in other briefing, Director of Election Rick Barron gave wildly exaggerated testimony in the 2018 hearing about the impact of switching to hand-marked paper ballots upon early voting (Doc. 419-1 at 11), and then, in the press,

falsely blamed this Court for the County's shortcomings.   (*See* Doc. 387-1 at 7).

Meanwhile, the Fulton County Board took no action at all in response to this

Court's 2018 Order and never once addressed the Court's concerns.  (*See* Doc.

491-1 at 47-48).

## III.   REASONABLE HOURS

Defendants make several general objections to the reasonableness of the

hours claimed by Coalition Plaintiffs, which will be addressed in Part A, and

specific objections to the entries of particular lawyers and firms, which will be

addressed in Part B.

### A.   General Objections and Considerations

#### 1.   *Coalition's Advocacy Irrelevant*

The State Defendants' leading argument is that to award fees under Section

1988 would be to reward the Coalition for its "advocacy regarding elections."

(Doc. 661 at 3).  State Defendants cite no authority for the proposition that fees

may not be awarded to parties that exercise their First Amendment rights while

litigating. The State's argument would mean that donor-funded groups like the

ACLU and NAACP could not receive fee awards if they used litigation activities in

their fundraising appeals.  This is plainly wrong.

#### 2.   *That Fee Award Will be Paid by Taxpayers is Irrelevant*

In another baseless argument, the State Defendants, joined by Fulton County, argue that the "fact that any compensation awarded by this Court against the State Defendants [or the Fulton Defendants] will be paid by the taxpayers . . . is a critical consideration." (Doc. 661 at 5).  This concern applies to virtually every award under Section 1988 and it is addressed by the requirement that every fee award be reasonable; the provenance of a losing Defendant's funds is no basis for awarding a prevailing opponent less than a reasonable fee.  Moreover, neither Fulton County nor the State made any effort to settle the case to avoid the taxpayer expense of this litigation, despite the Coalition Plaintiffs' repeated good-faith invitations.  (*See* Doc. 632 at 31-32).

3.    *Aggregate Number of Hours Are Neither "Staggering" nor "Excessive"*

Defendants state repeatedly that the aggregate number of hours that Plaintiffs' counsel spent on the case is "staggering" and "excessive," but do not substantiate that charge with any analysis or discussion.  Defendants do not contend that Plaintiffs were unduly litigious  or (with limited exceptions discussed below) identify work that Plaintiffs were unreasonable to undertake.

As this Court has observed, a summary that groups time entries by the stage of the case serves as an aid to the Court "in its task of determining the reasonableness of the fees requested." *Williams v. City of Atlanta, Georgia*, No. 1:17-CV-1943-AT, 2018 WL 2284374, at *12 (N.D. Ga. Mar. 30, 2018).  *See also*

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.").  The Coalition Plaintiffs provided just such a lengthy summary in their Detailed Specification.  With limited exceptions discussed below, Defendants do not respond to the summary or contend that counsel's level of effort in any phase was unreasonable.[6]

      a.     *Phase I – Case Initiation – Second Amended Complaint – 231 Hours.*

The key feature of this phase of the work was that the Coalition Plaintiffs are *not* seeking reimbursement for the significant amount of time spent by Steptoe & Johnson, only for the relatively limited time of counsel McGuire (153 hours), Ichter (10), and Ney (68).  Virtually all of McGuire's and Ichter's work during this period was after December 2017, when work had already shifted to preparing the Third Amended Complaint.  Defendants nowhere contend that the overall amount of work necessary to draft the Third Amended Complaint was unreasonable.

      b.     *Phase II – Pleadings, Motions to Dismiss – 336 Hours*

Defendants complain that it was unnecessary for the Coalition Plaintiffs to file the Third Amended Complaint, yet Defendants had both filed lengthy motions

---

[6] Table 4 in the Appendix is a table of the fees by phase of the case, updated to reflect modifications discussed in this brief and to include additional time in Phase VII, Enforcement and Fee Application.

to dismiss the Second Amended Complaint. The Third Amended Complaint eliminated the weaknesses of the SAC, yet Defendants moved to dismiss it as well. Coalition Plaintiffs had to defend their amended claims in briefs and in the 2018 preliminary injunction hearing.   Then, Defendants appealed the denial of their motions to dismiss, taking positions that the Eleventh Circuit found to be completely without merit.  Now that the Coalition Plaintiffs have defeated *every* defense asserted by the Defendants in the District Court and the Court of Appeals, and won the case, it is easy for Defendants to say that the Coalition Plaintiffs should not have taken the effort to plead the case correctly and to ensure that their claims for relief were well-grounded in the law and facts.  By taking the time to ensure that their claims were well-plead, the Coalition Plaintiffs streamlined the issues that had to be litigated, which saved time in the long run and also greatly increased the chances that Plaintiffs' claims would be addressed (and would succeed) on the merits.

Phase II also saw substantial efforts that the Coalition Plaintiffs undertook to try to settle the case – efforts that are described in the Detailed Specification (Doc. 632 at 31-32).   Counsel and the Coalition team devoted a substantial amount of time to this effort, which resulted in a comprehensive statement of what the Defendants could do to resolve this litigation and protect Georgia citizens' right to

vote and to have their vote counted.  (*See* 258-1 at 92).[7]  Defendants do not

contend that settlement work should not have been undertaken.

Nor do (or could) Defendants complain about the substantial time devoted in

Phase II to preservation of evidence.  (*See* Doc. 186, 189, 204, 205, 217).

    c.     *Phase III – 2018 Motion for Preliminary Injunction – 380 Hours*

Defendants argue that Plaintiffs should not be compensated for the work on

the 2018 Motion for Preliminary Injunction in its entirety because the Court denied

the Motion, an argument that is wrong as a matter of law, as explained above.

Defendants make no attempt whatsoever to claim that the number of hours spent

on the 2018 injunction itself was unreasonable.  Indeed, given the complexity of

the subject matter, the length of the briefing, and the number of lay and expert

witnesses, the number of hours is clearly reasonable.  (*See* Doc. 632 at 33-34).

Even more importantly, the 2018 work contributed substantially to the 2019

result.  The parties and the Court all relied upon the facts and expert testimony

developed in the 2018 briefing during the litigation over the 2019 motion for

preliminary injunction.  This Court's 2019 order cited the 2018 order at least eight

times, (see supra note 3), and this Court found that the 2019 evidence "compounds

---

[7] Defendants in this case never responded to these settlement overtures.  The defendant in *Williams* sought a reduction in fees because the plaintiff did *not* take the time to try to settle the case.  This Court rejected that argument.

and expands the evidence established in the September 2018 preliminary injunction record." (Doc. 579, at 5; see also id. at 6–7.) This Court noted that "cumulatively" the Plaintiffs had "marshaled a large body of evidence to demonstrate the burdens to the voting process and to the casting of a secure, reliable, counted ballot" (Doc. 579, at 5), evidence that "already set forth at length in [the] 2018 Order and that the Court finds still applicable." (Doc. 579, at 5 n.3.) No portion of the 2018 injunction work can be disregarded as unreasonable or unnecessary to obtaining the 2019 relief.

       d.     *Phase IV – Motion to Stay, Motion for Additional Relief – 69 Hours*

The Coalition Plaintiffs' Motion for Additional Injunctive Relief was never ruled upon, but its filing was reasonable, as was the time spent.

       e.     *Phase V – Stay, 2018 Election,  and Appeal – 47 hours*

Defendants do not challenge the hours sought for Phase V, noting correctly that the Coalition Plaintiffs seek no award from this Court for the substantial time they spent successfully defending the interlocutory appeal.[8]

       f.     *Phase VI – 2019 Preliminary Injunction – 1,386 Hours*

Significantly, Defendants do not contend that it was unreasonable for the Coalition Plaintiffs to spend 1,386 hours in Phase VI, which covers work on the

---

[8] Coalition Plaintiffs continue to reserve their right to seek fees for winning the interlocutory appeal when and if the final judgment this case is ultimately appealed to the Eleventh Circuit.

2019 Motion for Preliminary Injunction.  In their Detailed Specification, the Coalition Plaintiffs explained the seven different complex matters that had to be litigated.  (Doc. 632, at 39-49).  All of this was in addition to deposing witnesses, obtaining documents through Open Records Act requests, drafting and filing lengthy briefs,  preparing and presenting testimony of lay and expert witnesses, cross-examination and opening and closing statements.  The Defendants do not object to the reasonableness of any of these efforts, nor do they claim that the aggregate amount of time spent on this phase was unreasonable.

      g.     *Phase VII – Enforcement and Fee Application – 384 Hours*

Defendants do not argue that any of the time spent in the final phase of the case was unreasonable.  It bears emphasis that the time records for this phase of the case exclude time spent on the supplemental claims challenging BMDs.

The Coalition Plaintiffs understand fully that Defendants, and the Court, are entitled to scrutinize not only the general level of effort in different phases of the case, but also the individual time entries, to determine if the amount sought is reasonable.  However, the foregoing demonstrates that the Defendants' unsupported charges that the aggregate number of hours spent on the case is "staggering," and "excessive amount of time for tasks performed by lawyers ostensibly with expertise in election cases" are simply without merit.

4.    *Communications with Marilyn Marks were Productive, Not Excessive*

The State Defendants complain that Coalition Plaintiffs' time should be reduced because of supposedly excessive and wasteful communications with Ms. Marks.  Counsel did indeed work closely with Ms. Marks throughout the case but, as explained in the Detailed Specification, Ms. Marks' extensive work and counsel's extensive communications with her, were highly productive and actually materially *decreased* the number of lawyers that would have been required to staff the case and the time they would be required to commit to the effort.  Coalition lawyers Brown and McGuire have solo practices and Mr. Ichter has a small firm. Rather than use teams of other, more junior lawyers to assist them, and rather than bill more time themselves, these lawyers were able to leverage Ms. Marks's expertise in voting systems litigation support, her substantial knowledge of the case and voting system technology and its interface with federal and state law, and her ability to engage and supervise paid interns, analysts and knowledgeable well-educated volunteers at a fraction of the cost of associates and paralegals in a large firm.

Coalition Plaintiffs have not adopted typical "big firm" staffing, but their approach resulted in a highly efficient overall effort.  The Coalition Plaintiffs refer the Court to Judge Batton's thoughtful discussion of an analogous issue in *In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. 1:09-MD-2089-TCB, 2015 WL

17

4635729 (N.D. Ga. Aug. 3, 2015).  In *In re Detla/Airtran,* the special master

reduced the plaintiffs' fee award because of partner-heavy billing.  Judge Batton

reversed this aspect of the special master's decision, finding that it failed "to

recognize the realities of staffing complex cases at small, Plaintiffs'-side law

firms." *Id.* at *24.  "'The court may not condition fees on plaintiffs' counsel's

conformance to the typical commercial law firm's pyramidal staffing structure.'"

*Id.* (citation omitted).  The demands of this complex case required the Coalition

Plaintiffs' legal team to use the resources available to them, and the lawyers' heavy

reliance on Ms. Marks, reflected in the time sheets, was the practical and efficient

alternative.  The benefit to the *Defendants* from the Coalition Plaintiffs' utilization

of Ms. Marks is clearly evident in the dramatically different number of hours spent

by the two Plaintiffs' groups in the course of obtaining relief through parallel

efforts.

5.   <em>No Reduction Warranted Because of "Block Billing"</em>

Defendants' object to what they describe as "block billing" by Coalition

Plaintiffs' lawyers. (Doc. 661 at 25-26; Doc. 660 at 21-25).  Citing *Ceres*

*Environmental Services, Inc. v. Colonel McCrary Trucking, LLC,* 476 Fed. Appx.

198, 203-04 (11th Cir. 2012), the Fulton County Defendants contend that block

billing should result in a 10% across the board reduction in the number of

compensable hours.   Making the same argument, and relying on the same case

18

(*Ceres,* which authorized a 10% reduction), the State Defendants argue for a 75% reduction.

Initially, the law does not prohibit "block billing" per se, but rather requires sufficient detail such "that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley,* 461 U.S. at 441 (Burger, C.J., concurring). "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n.12.

Block billing can be problematic when the Court is required to reduce the fee because of a lack of success on "severable" claims, the time for which is lumped together with work on severable successful claims. The fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437. In this case, however, there are no unsuccessful claims, much less severable unsuccessful claims. Indeed, work on unsuccessful claims in this case would still be compensable because they share a "common core of facts." *Id.,* at 435. *See also Duckworth,* 97 F.3d at 1397 (reasonable fee includes time spent on all claims arising from the same source of conduct and that share a common core of facts); *Wetherington v. Ameripath, Inc.,* No. 1:10-CV-1108-AT, 2013 WL 12097825, at *11 (N.D. Ga. Mar. 27, 2013).

Moreover, the vast majority of the Coalition Plaintiffs' time-entries are not block billed or, if they are, the various tasks are related and were performed in connection with the same end-product.  As the District Court explained in *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012):

> Turning to the time sheets of Yarusso and Melyon, the Court finds that the entries are sufficiently detailed to permit the Court to assess the reasonableness of the time expended. Although several entries combine discrete tasks without specifying the amount of time spent on each task, the combined tasks are related and were performed in connection with the same end-product. Thus, the Court will not reduce the hours of Yarusso or Melyon based on Defendants' "block billing" objection.

This Court should adopt a similar approach here and avoid arbitrarily penalizing the Coalition Plaintiffs where the reasonableness of the time claimed is readily apparent from the lawyers' individual time entries.

## B.     Objections to Individual Lawyers' Time Without Merit

### 1.     *Bruce P. Brown*

The Fulton County Defendants urge a 10% reduction in Brown's time; the State Defendants a 75% to 90% reduction.  The primary objections are to allegedly excessive client communications and "block billing," both addressed above.

As to specific time entries, out of the 1,010 hours of work recorded by Brown, Defendants highlight for criticism four entries leading up to the September 2018 hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 660 at 22).  In his entry for July 23, 2018, Brown records 5.9 hours of time devoted to a single,

but crucially important task: making the decision "whether to file a motion for preliminary injunction."  Involved in that decision obviously included "extensive telephone conferences" with his client, Ms. Marks, and co-counsel Robert McGuire, as well as "legal research on equitable relief" and drafting a "preliminary outline of motion."  All of these activities were appropriate and the total amount of time spent that day on such an important issue clearly was reasonable.  The State's "block billing" objection to this entry is without merit because "the entries are sufficiently detailed to permit the Court to assess the reasonableness of the time expended. Although several entries combine discrete tasks without specifying the amount of time spent on each task, the combined tasks are related and were performed in connection with the same end-product."  *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012) (rejecting "block billing" objection). The same is true for Brown's entry for July 27, 2018,[9] where he recorded 6.5 hours of time working on the preliminary injunction papers and a meeting with Mr. Ichter and Ms. Marks.  The meeting with co-counsel and client clearly was appropriate and reasonable.

---

[9] The State shows the date for this time as July 26, but the time is for the next day, July 27.  This error is understandable, however, as the rows in the printout of the original Excel spreadsheet of Brown's time are not clearly aligned.  To remedy this problem, Brown has attached to his declaration as Exhibit 1 this spreadsheet in a more readable format.

Similarly, in his entry for July 30, 2018, Brown recorded 5 hours working on the preliminary injunction papers, including a conference call with Mr. McGuire and Ms. Marks.  Again, the subject matter of the call was clear – the imminent filing of the motion for preliminary injunction –  and the time reasonable.

The State misstates Brown's entry for September 19, 2018, in two ways. First, the time was recorded for September 9, not September 19, and, more important, the State leaves out half of the detailed description of the 3.5 hours of work.[10]  All the work was related to a single task: preparing for the imminent hearing on the Coalition's Motion for Preliminary Injunction. This work is adequately described so that the Court may determine its reasonableness, and no adjustment is warranted.  *Gibson,*  873 F. Supp. 2d at 987.

Beyond these four examples, a review of Brown's time sheets more generally reveals reasonably described work, particularly since all of the work was for the same, successful, claims.  In addition, in those instances where client and co-counsel conferences were lengthy, Brown used his billing judgment to reduce the time.  *E.g.* June 11, 2018 ("Extensive conference call regarding matter with M. Marks and team (2 hours, only 1 hour billed); November 14, 2018 (.5 hour for

---

[10] The State leaves out the italicized portion: "Conference call with M. Marks and continue preparation for the hearing; legal research on several issues; consider filing motion for appointment of special master; *prepare cross-examination; email Dr. Stark and review and revise his declaration.*"

"Conference with M. Marks regarding next steps (1.5, only .5 billed); work on CA11 appeal (2.2 not billed)").[11]

Defendants' criticism of Brown's time fails to take into account the substantial adjustments that Brown made to his time in his original time records – a total of 35.1 hours were written off – either because conferences with clients and co-counsel were too lengthy or the work simply took too long.  (See Brown Decl., Ex. B, Ex. 1).  In addition to these initial write offs, after further review of these time records, and taking Defendants' block billing objections into account, Brown has written off another 16.65 hours, for a total of 51.75 hours written off on pre-October 2019 work.  Another 10.5 hours were written off after October, 2019.  Particularly in light of these substantial reductions already made in the exercise of billing judgment, there is no warrant for an additional adjustment in Brown's time.

2.    *Cary Ichter*

---

[11] The State Defendants also criticize Brown for using the phrase "next steps" to describe the content of communications with his client.  There is no basis for this objection; Brown uses the phrase frequently to describe necessary planning, but the descriptions involved are clear and detailed.  *E.g.,* November 15, 2018 (1.5 hours for "Telephone conference with M. Marks and R. McGuire about next steps to preserve evidence; email to M. Marks about R. DeMillo's declaration."); May 24, 2019 (4.4 hours for "Prepare for and participate in telephone conference with Judge Totenberg (1.0); extensive follow up discussions with co-counsel (.5); emails and telephone discussion with M. Marks about next steps and substance of follow up brief on necessary parties (1.9); work on brief (1.0).").

The State Defendants' suggestion that Mr. Ichter's time be eliminated for Phase 1, reduced by 95% for Phase 2, and reduced by 75% for the remaining phases has no justification.  The State Defendants criticize Mr. Ichter for communicating with his client – a task that is necessary, commendable, and clearly compensable.   The State Defendants give examples of what they call block billing (Doc. 660 at 24-25), but each entry shows tasks that were all related and were all compensable.  The closest the State Defendants come to offering a justification for writing off the vast majority of Mr. Ichter's time is, "as discussed below under Curling Plaintiffs' fees."  (Doc. 660 at 25).  But no such discussion relating to Mr. Ichter's time appears (and Mr. Ichter's time was a fraction of the time spent by the Curling Plaintiffs' lawyers).

Mr. Ichter's time records, overall, are very detailed and, particularly given his leadership role in the case throughout the litigation, the total number of hours claimed for him and his firm (294) is reasonable.

### 3.   *Robert McGuire*

The State devotes only 5 sentences to attacking Mr. McGuire's time. (Doc. 660, at 31.)  In that brief space, the State asserts that McGuire's hours should be cut by 75% overall and by 95% for the phase that encompasses the 2018 preliminary-injunction motion.  (*Id.*)  The State makes three conclusory arguments for essentially eliminating McGuire's entire contribution to the case.

First, the State's asserts, without providing any examples (which is telling), that McGuire "block-bills many of his entries." (Doc. 660, at 31.) But as the State notes, "'Block billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task.'" (*Id,* at 17 (quoting *Ceres,* 476 Fed. Appx. at 203)). Virtually none of McGuire's submitted time entries meets this definition of block billing. (Doc. 632, at 94–104.) The very few time entries that superficially appear to list multiple "tasks" do not in fact amount to block billing because they generally describe only a single litigation activity (such as "review and comment") but do so in a detailed manner that itemizes component steps in a single time entry. (See, e.g., Doc. 632, at 94 (item 16) (describing steps of review and comment), at 95 (item 56) (describing steps of review and revise).) Providing detail in this manner has the *opposite* effect of "block billing" because giving details makes it *easier*, not harder, to determine the reasonableness of the time recorded. No reduction for McGuire's work is warranted on grounds of block billing.

Second, the State argues that some of McGuire's time was spent "when this case was an election contest in superior court." (Doc. 660, at 31.) This objection is meritless because this case has involved Section 1983 claims from the outset, (Doc. 1-2, at 55–63), and McGuire's time entries recorded prior to removal show that these constitutional claims were the object of his involvement from the start.

(Doc. 632, at 96 (items 5–6).)  In any event, McGuire recorded only 8.3 hours (a mere 1.4% of his claimed 584.07 hours) prior to removal on August 9, 2018.  No reduction in McGuire's hours for pre-removal work is warranted, but if any is made, then it should be limited to the very small amount of time involved.

Third, the State argues that McGuire's fees should be reduced because he "appears to be functioning in a non-litigation advisory role."  (Doc. 660, at 31.)  This argument is wrong.  McGuire entered his formal appearance *pro hac vice* in this case more than two years ago.  He drafted the Coalition Plaintiffs' operative Third Amended Complaint, a pleading that survived two motions to dismiss and an interlocutory appeal on jurisdictional and immunity grounds. McGuire worked on opposing the motions to dismiss.  McGuire served as lead counsel for Coalition before and during the 2018 injunction motion hearing.  He has since continued to serve with Bruce Brown as Coalition's co-lead counsel. He has traveled to Georgia twice to appear at hearings and has substantively participated on the record in every hearing that he has attended.  McGuire's time spent "setting Coalition's independent litigation strategy" is fully compensable because that task is a core responsibility of lead counsel.  In sum, no reduction is warranted by the Defendants' mistaken understanding of McGuire's role in this litigation.

Fulton County asks this Court to credit McGuire with only 97.78 hours, and then to reduce the fees for those hours by a further 40% for "unsuccessful" phases.

(Doc. 661 at 29.)  Most of Fulton County's arguments are similar to those already addressed and should be rejected for the same reasons.  Fulton County makes a separate argument, however, that McGuire's work was duplicative and that McGuire made no distinctive contribution to the litigation.  This claim must be rejected.  Not only does Fulton give no examples of duplicative work, but a simple review of the Coalition Plaintiffs' claimed hours per phase shows that McGuire alone was responsible for more than half of the legal work done by the Coalition Plaintiffs during Phases I–III.  Devising strategy, drafting the Third Amended Complaint, and resisting dismissal were all major and distinctive contributions.

Neither the State Defendants nor Fulton County makes any particularized argument against the reasonableness of McGuire's well-documented time.  Their generalized objections cannot overcome McGuire's showing of reasonableness.  All of McGuire's claimed time—584.07 hours, including the time McGuire has spent since the initial fee application[12]—should thus be found reasonable.

### 4.  *William Ney*

The State Defendants claim that Mr. Ney's time should be reduced by 90 to 95% because his work focused primarily on communications with Ms. Marks, co-counsel and opposing counsel.  Initially, as explained in the declaration of Ms.

---

[12] McGuire's initial claim of 554.21 hours already includes a reduction of 8% (or 47.9 hours) for time that McGuire wrote off in the exercise of billing judgment.  (Doc. 632 at 85, ¶ 34.)

Marks, Mr. Ney's limited role in the case was to represent the Coalition during the transition from Steptoe & Johnson to its current team (McGuire, Brown, Ichter and The Lawyer's Committee).  In that capacity, Mr. Ney's work focused on the ethical and procedural issues involved in Steptoe & Johnson's withdrawal and the filing of appropriate pleadings relating thereto.  Mr. Ney – whose expertise is in the area of professional responsibility and legal ethics – recorded his time for this work carefully and in detail.  In addition, in a transitional role, Mr. Ney's primary duty was to communicate with the various parties, their counsel, and the Court, and to prepare and file pleadings such as document preservation communications, substitutions of counsel and applications to appear pro hac vice.  The claim for the work of Mr. Ney and his staff is particularly reasonable in light of their relatively low hourly rate ($450 for attorney Ney) and the fact that Coalition is seeking no compensation for the work performed by Steptoe & Johnson.[13]

5.   *The Lawyers' Committee for Civil Rights Under the Law*

Defendants unreasonably argue for across-the-board reductions of Lawyers' Committee's time entries.  *See* Doc. 660, at 25-29.  Each of their arguments is addressed below:

---

[13] The State Defendants also allege that there is a discrepancy in Mr. Ney's figures.  This is incorrect as explained in Note 3 in the Appendix.

*a. Travel Expenses Are Compensable Yet Waived as an Expression of Good-Faith Billing Judgment*

First, Defendants object to Messrs. Rosenberg and Brody charging their hourly rate for time spent traveling. *Id.* at 26. Travel expenses, generally, fall within the "reasonable expenses incurred in case preparation" that are recoverable under Section 1988. *Barnes*, 168 F.3d at 438. However, to avoid further dispute, the Lawyers' Committee has eliminated these hours. (*See* Powers Decl., Ex. D).

*b. Lawyers' Committee Should be Reimbursed for Time Spent During the Investigative Phase of the Litigation*

Defendants' argument that Lawyers' Committee staff should not be reimbursed for time spent on matters before they were retained, Doc. 660 at 26, ignores that there is frequently a phase of factual investigation prior to client retention in voting rights litigation. The 6.8 billable hours accrued between May 8, 2019 and May 21, 2019 include conversations with the plaintiffs relating to the representation, internal conversations between counsel, review of pleadings, and the preparation of *pro hac vice* applications. (Doc. 632 at 181). This work was necessary for the Lawyers' Committee's to gain a factual understanding of the litigation necessary and the legal strategy. These are the precise kinds of conversations and discussions that are compensable. *Barnes*, 168 F.3d at 436.

*c. Lawyers' Committee Avoided Redundancy*

29

Defendants further argue for a reduction in the Lawyers' Committee's billable hours citing specifically to "nearly 700 hours of attorney time in just under eight weeks of litigation" with 338 of those hours occurring in the two weeks between July 12, 2019 and July 26, 2019.  (Doc. 660 at 26). Defendants' argument omits several key factors for this accumulation of hours.  First, these hours were billed by five attorneys and two legal interns.  As Defendants concede, "there is nothing inherently unreasonable about a client having multiple attorneys." Doc. 660 at 27 (quoting *Norman v. Housing Auth. of City of Montgomery*, 836 F. 2d 1292, 1302 (11th Cir. 1988)).  A review of individual time entries confirm that their time was spent working on discrete tasks such as deposition and trial preparation.  Second, given that this time period was the critical two weeks leading up to and including the hearing on the preliminary injunction, a matter taking up either all or the vast majority of the time of these attorneys and legal interns, it is eminently reasonable. Third, 82.3 hours were accrued by the attorneys of record during the July 25, 2019 and July 26, 2019 hearings on the preliminary injunction alone, representing nearly 25% of the 338 hours in question.

Defendants also point to a two-day period on July 17, 2019 and July 18, 2019 when "four [billers][14] spent significant time apparently carrying out the same

---

[14] Defendants misidentify Ms. Walters and Ms. Wilson as attorneys but they are legal interns. *See* Doc. 632 at 177 (Ex. E at 21).

task." Doc. 660 at 27. However, Defendants' assertion of the redundancy of these tasks is misplaced.  These two dates represent the two days before the preliminary injunction reply brief, Doc. 507, was due.  Given the compressed time frame and the length of the brief, it was necessary to have two attorneys and two legal interns, *see* Doc. 632 at 177 (Ex. E at 21), researching, drafting, editing, revising, and cite checking distinct portions of a key dispositive motion in the days leading up to its filing.  The Lawyers' Committee submitted detailed time entries that even Defendants conceded were "generally not block billed," (Doc. 660 at 25) "showing they were entitled to recover for the hours of each of the attorneys employed on the task of drafting the briefs." *Barnes,* 168 F. 3d at 433.[15]

In sum, no reduction in the Lawyers' Committee time is warranted.

## IV.   COALITION PLAINTIFFS' RATES ARE REASONABLE

---

[15] In fact, the entries to which Defendants cite as an example of redundancy in billing sufficiently state in detail the distinct contributions each biller made to the preliminary injunction reply brief. Doc. 660 at 27-28.  Mr. Brody drafted the ballot secrecy and ADA portions of the reply brief. He tasked Mr. Conarck with the responsibility for drafting the section relating to security of paper ballots and reviewing the brief as a whole; Ms. Walter was tasked with researching academic articles about the ADA and ballot security, compiling data, as well as cite checking and editing; Ms. Wilson was tasked with researching articles on the disability community and use of voting machines, compiling data, entering deposition cites, and cite checking the brief. *Id*. This is a far cry from the mere "conclusory statement" provided through affidavit by an attorney in *Barnes* that his billed hours "represent a specific division of labor with co-counsel." 168 F. 3d at 433.  Also, rather than five attorneys block billing work on three separate briefs, these billable hours represent the work of one attorney, one junior associate, and two legal interns each working on discrete portions of a legal brief.  This time spent "reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id.* at 432.

Defendants argue that Coalition Plaintiffs' attorneys' rates should be reduced "by a minimum of 25% for all partners and by 50% for all associate-level work and lower" because (1) cases involving private parties allegedly are inapposite and (2) Coalition Plaintiff's rates must be brought "in line with their D.C. counterparts." Doc. 660 at 14. This second argument fails on its face because Coalition Plaintiffs' counsel, including D.C.-based counsel from the Lawyers' Committee,  are seeking Atlanta rates far below their Morrison & Foerster co-counsel – not the other way around.

Defendants offer no evidence rebutting the conclusions of longtime Rogers & Hardin partner Robert Remar, Plaintiffs' attorneys' fee expert, who determined that the hourly rates requested by Coalition Plaintiffs' counsel are reasonable based on his extensive review of the relevant literature and his 45 years of experience in the Atlanta legal market.[16]  (Doc. 632 at 64). Fee expert Remar identifies several recent "close cohorts," as required by the Eleventh Circuit. *Compare Norman,* 836 F.2d at 1299-1300, and observes that the *Curling* case is "of equal complexity and importance" to those two cases. (Doc. 632 at 67). [17]

---

[16] Because "statements and arguments of counsel are not evidence," *United States v. Valois*, 915 F.3d 717, 726 (11th Cir. 2019), this means that the only evidence available to the Court affirms that Brown, McGuire, and Ichter's claimed rates are reasonable.

[17] Bizarrely, none of Defendants' exhibits, including Exhibit F, Doc. 660-6, propose specific rate reductions for Lawyers' Committee staff members Ezra Rosenberg, Jon Greenbaum, David Brody, John Powers, and Jacob Conarck, although Defendants propose reductions to $375 per

Defendants' unsupported argument to the contrary notwithstanding, Atlanta-area decisions involving government clients support the rates sought by Coalition Plaintiffs' attorneys.  The rates proposed as reasonable for attorneys Rosenberg ($650), Greenbaum ($650), Brown ($625), Ichter ($625), McGuire ($615), and Ney ($450) in this case are consistent with the hourly rates approved by the Court in *Williams* for Gerry Weber ($525) and "junior" associate Greenamyre ($325), particularly given the substantially greater case size and difficulty — and thus the greater risk of non-recovery assumed by lawyers. 2018 WL 2284374, at *15.

The State implies that the prevailing market rate is demonstrated by the contract rates that its own lawyers have agreed to accept.  This anecdotal evidence is irrelevant because the issue is "the prevailing *market rate* in the relevant community for similar services by lawyers of reasonably comparable skills, experience, and reputation," *Norman,* 836 F.2d at 1299.   The State itself pays far more in cases that are of vital interest to the State, such as *Georgia v. Florida,* where the State pays counsel $900 per hour and legal assistants $300 per hour.[18]

---

hour for Bruce Brown, Cary Ichter, and Robert McGuire and $225 for William Ney.  *See* Doc. 660 at 2.  Such inconsistency undermines any rationale in favor of Defendants' preferred rates.

[18] Marks Decl., Exhibit E hereto, Exhibit 1.

Defendants' arguments demean the importance of civil rights litigation against government entities.  As the Eleventh Circuit explained in *Dowdell,* 698 F.2d at 1190–91 (internal quotation marks and citations omitted):

> Civil rights litigation performs a public service: vindicating fundamental constitutional rights, often obtaining judgments which benefit a large class of individuals, and enabling vigorous enforcement of modern civil rights legislation, while at the same time limiting the growth of the enforcement bureaucracy . . . . Attorneys' fees and expenses are awarded not only to make it possible for non-affluent litigants to obtain legal representation, but to *reward* attorneys whose service has benefited the public interest.

Finally, in proposing their alternate rates, the Defendants make no effort to account for the market reality that a risk premium even above ordinary market rates is necessary to make it economically feasible for lawyers (like Brown, McGuire, Ichter, and the Lawyers' Committee) to represent poorer individuals and non-profit organizations (like Coalition) that require partially or fully contingent fee arrangements in order to access justice.  *Dowdell,* 698 F.2d at 1189 ("Because the Act is designed to translate policy into fact, the standard of reasonableness is governed by the economic realities of civil rights litigation.")  The economic realities of contingent and partially contingent work is explained in detail in McGuire's initial declaration. (Doc. 632 at 87–91).  Considering that all of Coalition Plaintiffs' counsel's hourly rates are already lower than the hourly rates that some Georgia public entities pay to their lawyers for non-contingent work, it is

34

clear that the claimed rates must be deemed reasonable when they are used to value

the time of civil rights attorneys whose fee arrangements require them (at worst) to

suffer non-recovery of any fees in case of a loss and (at best) to weather years of

delay before receiving full payment.

## V.    EXPENSES ARE REASONABLE

### A.    Meals

Defendants argue that certain meal-related expenses are not "reimbursable or

reasonably tied to the litigation."  Doc. 660 at 40.  Long-standing Eleventh Circuit

precedent holds otherwise.  *See Dowdell,* 698 F.2d at 1191-92  (holding travel,

food, and lodging expenses are reasonable and "may be taxed as costs under

section 1988" where "the standard of reasonableness is to be given a liberal

interpretation"); *cf. Sklar v. Clough*, 2008 WL 5381961, at *5 (N.D. Ga. Dec. 23,

2008) (refusing to reduce meal reimbursement).  Even if this Court were to find

certain meal expenses unreasonable, that cannot warrant an across-the-board cut of

expenses by 50%, as Defendants argue.  While this Court should reward the

Lawyers' Committee its requested expenses, Mr. Powers reduces his request by

$25 to address the State's objection to desserts.

### B.    Office Expenses

Defendants incorrectly cite to *Barnes*, 168 F. 3d 438-39, to argue that

computerized legal research is "part of general law firm overhead expenses" and

non-recoverable.  (Doc. 660 at 40).  But the Eleventh Circuit has since clarified

that "expenses for mediation, legal research, postage and travel may be awarded as

attorneys' fees if the district court determines they were reasonably incurred in the

course of case preparation, settlement, or litigation." *Evans v. Books-A-Million*,

762 F.3d 1288, 1299 and *id.* n.8 (11th Cir. 2014).  Accordingly, this Court should

award Lawyers' Committee all expenses related to computerized legal research.

### C.    Lawyers' Documentation of Expenses

The State argues that Coalition should receive none of the $4,808.02 of

expenses incurred by McGuire and of the $469.01 incurred by Brown because they

did not submit receipts with the initial claim. (Doc. 660 at 39.)  No court rule

appears to require third-party receipts, so McGuire and Brown both submitted

contemporary billing records to prove these expenses.  (Doc. 632 at 106, 135.)  In

case their sworn declarations authenticating those records are in fact insufficient,

McGuire and Brown attach third-party receipts to their supplemental declarations.

### D.    Coalition for Good Governance's Expenses are Reasonable

This Reply to CGG's request for $395,779.82 in expenses is organized in the

sequence in which each expense is listed in CGG's summary. (Doc. 632 at 305).

*Holcomb & Ward.*  CGG seeks the amount it actually paid to Holcomb &

Ward ($75,108) for its work early in the case for both sets of Plaintiffs.  The State

Defendants' objection to this expense is that Holcomb & Ward "provided no

summaries of the time spent, stage of the case, timekeeper or category." (Doc. 660, at 17). This is incorrect. All of Holcomb & Ward's time was in Phase I and the timekeepers and hours are itemized in detail in their time sheets. (Doc. 632, at 367 to 382). The State Defendants' charge that Holcomb & Ward's already reasonable rates (partner at $325, *id.*) should be arbitrarily reduced by 25% (Doc. 660-4, at 2), is completely unsupported and is without merit.

*Phillip Stark* – Dr. Stark invented the Risk Limiting Audit and is the nation's leading expert on election audits. His reputation and experience allowed him to provide extremely valuable opinions in this case in a minimum amount of time, making his $1,500 standard litigation expert hourly rate reasonable, particularly when compared to the $600 rate the State pays its expert, Dr. Shamus, and the $900 rate the State pays to attorneys in the water case. Dr. Stark's work has been cited by this Court repeatedly.[19] His time records, (Doc. 632, at 309), show 5.9 hours for his authoritative declaration in this case in September 2018, (Doc. 296, at 6). The balance of Dr. Stark's work (20.4 hours) addressed the statistical anomalies in the 2018 election. All of this work directly supported the Coalition Plaintiffs' arguments in this case. (Doc. 632, at 309; see e.g., Doc. 507). Of the 20.4 hours relating to the 2018 election, 15.5 hours was for work that plaintiffs

---

[19] *See Curling v. Kemp*, 334 F. Supp. 2d at 1309 n. 6, 1311 n. 13; Doc. 375 at 5 n. 5 and 10 n. 12; and *Curling v. Raffensperger*, 403 F. Supp. 3d 1311, 1320 n.5 (N.D. Ga. 2019).

used both in this case and in the related State Court litigation before Judge Grubbs which terminated on January 18, 2019, and 4.9 hours was only for this case.[20]

*Other Experts.*  Defendants' only objection to the amount claimed for expert Matthew Bernhard (96 hours at $200, with expenses, totaling $20,856.47), (Doc. 632, at 312), is that only $45 per hour of the work was paid by the Coalition at the time, incurring debt for the deferred balance.  This objection is invalid as a matter of law.[21]

As for the other experts—Amber McReynolds (52 hours at $250, with expenses, totaling $13,703.15) (*id.* at 365); Virginia Martin (43 hours at $150, with expenses, totaling $6,548.45) (*id.* at 324); Kellie Ottoboni ($6,225, *see note* 22); Candice Hoke (67.8 hours at $400, less discount, totaling $17,628) (*id.* at 331); and Ritchie Wilson (211.5 hours at $200, with expenses, totaling $42,651) (*id.* at 334)—the State Defendants offer no reason for any reduction.  Each of these costs is supported by invoices and other records.

*Database analysts.*  CGG also claims reimbursement for the work of data

---

[20] For Dr. Stark's research assistant, Berkeley Ph.D. candidate Kellie Ottoboni: over her 41.5 hours total, 15 (at $150, totaling $2,250) were for both cases (from January 2 through January 6, 2019), and 26.5 hours (at $150, $3,975) were solely for this case.   (*See* Doc. 632 at 327 to 329).

[21] The State Defendants contend that Coalition Plaintiffs "are not entitled to fees under Section 1988 to fees they did not pay" (Doc. 660 at 42) is wrong. As the Supreme Court held in *Blum v. Stenson*, 465 U.S. 886, 895 (1984), under Section 1988, courts "'must avoid ... decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return.'" (citations omitted).

analysts (B. Lee and W. Wilson, totaling $990) and four interns (totaling

$38,233.53 which cost is supported by Ms. Marks' declaration (Doc. 632 at 305).

Coalition Plaintiffs have corrected the amount sought for intern and research

analyst Taran Greenwald to separate the amount reimbursed to him for his

expenses, which were substantial.  The reasonableness and necessity of his time,

and expenses, is explained in Ms. Marks' declaration, attached as Exhibit E.

Greenwald's hourly rate, and the rate of Coalition's other interns ($17), compares

most favorably to the what the State pays "legal assistants" ($300) in *Georgia v.*

*Florida.*   (Marks Decl., attached as Exhibit E, Exhibit 1).

*Ms. Marks' Time.*  The State Defendants contend that Ms. Marks' time

($125,300) should be disallowed because she is not an attorney or an expert

witness.  (Doc. 660 at 15, 19-20, 31-33; Doc. 661 at 18-19).[22]  This argument fails

because Ms. Marks's time is awardable not for those reasons, but on the same

grounds as the work of any paralegal, law clerk or legal assistant who performs the

work traditionally done by an attorney. *See Jean v. Nelson,* 863 F.2d 759, 778 (11th

Cir. 1988), and *Webster Greenthumb Co. v. Fulton County,* 112 F. Supp. 2d 1339,

1366-67 (N.D. Ga. 2000).  The State Defendants do cite or distinguish this case

---

[22]The Defendants' overt hostility to Ms. Marks (in her capacity as a party representative) has
been an unspoken subtext of these proceedings and may explain why this argument occupies a
greater share of their response than any other, even though it concerns less than 7% of the
Coalition Plaintiffs' total monetary claim.

law.  In the records attached to her declaration, Ms. Marks' itemizes by phase of the case and, where pertinent, the document number relating to her work.  (Doc. 632 at 345 to 363).  This substantive work traditionally would have been performed by attorneys at substantially higher rates and is accordingly compensable at the reasonable $200 rate.  Ms. Marks' contribution is a major reason the Coalition Plaintiffs' claim is substantially less than the claim of the Curling Plaintiffs.

*Out of pocket expenses.*  Defendants do not itemize any objections to the Coalitions' $9,146.22 in out-of-pocket expenses.

## VI.   CONCLUSION

For the foregoing reasons, the Coalition Plaintiffs should be awarded $1,483,422 in fees and $415,959 in expense, for a total of $1,899,381.

Respectfully submitted this 21st day of January, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

*/s/ John Powers*
Ezra D. Rosenberg
John Powers
David Brody
Lawyers' Committee for Civil Rights
Under Law
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8300
*Counsel for Coalition Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has

been prepared in accordance with the font type and margin requirements of LR 5.1,

using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

42

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**

**Defendants.**

Civil Action No. 1:17-CV-2989-AT

## COALITION PLAINTIFFS' REPLY BRIEF
## IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

### INDEX OF TABLES AND EXHIBITS

Table 1:  Total Fees by Attorney and Firm
Table 2:  Expenses by Attorney and Firm
Table 3:  Summary of Total Fees and Expenses
Table 4:  Number of Hours by Phase

Exhibit A        Declaration of Robert A. McGuire
Exhibit B        Declaration of Bruce P. Brown
Exhibit C        Declaration of Cary Ichter
Exhibit D        Declaration of John Powers
Exhibit E        Declaration of Marilyn Marks

| Table I – Total Fees | | | | |
|---|---|---|---|---|
| | Hours 10/15/2019 | Hours 1/17/2020 | Top Lawyer Rate[1] | **Total Fees** |
| **McGuire** | 554.21 | **584.07** | $615.00 | **$359,203** |
| **Brown** | 954.5 | **1010.3** | $625.00 | **$631,438** |
| **Ichter**[2] | 294 | **339.8** | $625.00 | **$178,852** |
| **LC** | 760.5 | **774.5** | $650.00 | **$265,415** |
| **Ney**[3] | 129 | **125.5** | $450.00 | **$48,514** |
| **Totals** | 2692 | **2834.17** | | **$1,483,422** |

---

[1] Mr. McGuire and Mr. Brown have solo practices, so their total fees are the product of the top lawyer rate times the number of hours.  The other firms have timekeepers at different rates, so their total fees do not equal the top rate times the number of hours.  Other differences are due to rounding.

[2] Mr. Ichter's Total Fee figure in this table is the sum of the amount claimed in the initial Detailed Specification ($155,912.50) (Doc. 632 at 153) plus the additional time since that filing ($22,940), as set forth in Mr. Ichter's Declaration, *infra*, Exhibit C.

[3] The State Defendants also allege that there is a discrepancy in the Detailed Specification (Doc. 632) between the amount of hours claimed for Mr. Ney and the other time keepers in his firm in Coalition Table II and the information in Mr. Ney's declaration.  The State Defendants misread Coalition's Table II, which explains in a footnote that the number of "Hours" includes non-lawyer time-keepers. (Doc. 632 at 58 n. 11).  The total amount of fees documented by Mr. Ney in his declaration for himself and the other timekeepers in his firm is $48,514 (Doc. 632 at 269); this is the exact amount that is sought in Coalition's Motion (Doc. 632 at 58), and in this most recent request.

In reviewing this claim, however, Coalition did discover an unrelated, and immaterial, mistake: Table II in the initial Detailed Specification (Doc. 632) shows that Mr. Ney's firm's total number of hours is 129 hours; the correct figure is 125.5.  The breakdown of the hours of Mr. Ney's time-keepers (totaling 125.5) is provided in his declaration.  (Doc. 632 at 269).  This mistake is corrected in this revised table and has no impact on the total amount claimed for Mr. Ney's firm's time ($48,514).

| Table 2 – Total Expenses | | |
|---|---|---|
| | 10/15/2019 | **1/17/2020** |
| **McGuire** | $4,808 | **$4,808** |
| **Brown** | $469 | **$469** |
| **Ichter** | $1,772 | **$1,772** |
| **LC** | $13,155 | **$13,130** |
| **Ney** | 0 | **0** |
| **CGG** | $395,780 | **$395,780** |
| **Totals** | $415,984 | **$415,959** |

| Table 3 – Grand Totals | | | |
|---|---|---|---|
| | Fees | Expenses | Total |
| **McGuire** | $359,203 | $4,808 | **$364,011** |
| **Brown** | $631,438 | $469 | **$631,907** |
| **Ichter** | $178,852 | $1,772 | **$180,624** |
| **LC** | $265,415 | $13,130 | **$278,545** |
| **Ney** | $48,514 | 0 | **$48,514** |
| **CGG** | | $395,780 | **$395,780** |
| **Totals** | **$1,483,422** | **$415,959** | **$1,899,381** |

| Table 4  - Coalition Plaintiffs' Hours by Phase – Revised January 17, 2020 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Phase | Dates | Major Activities in the Phase | McGuire | Ichter | Brown | The LC | Ney | Total |
| I | 2017 to February 28, 2018 | Case Initiation, State Court Complaint; Second Amended Complaint | 152.69 | 10 | | | 68.5 | 231.19 |
| II | March 1, 2018 – June 30, 2018 | Third Amended Complaint; Motion to Dismiss | 147.93 | 74 | 67.4 | | 47 | 336.33 |
| III | July 1, 2018 – September 19, 2018 | 2018 Motion for Preliminary Injunction | 185.62 | 25 | 159.05 | | 10 | 379.67 |
| IV | September 20, 2018 to October 2, 2018 | Motion to Stay, Motion for Additional Injunctive Relief | 10.12 | 15 | 44.3 | | | 69.42 |
| V | October 3, 2018 to February 8, 2019 | Stay, 2018 Election, Appeal | 4.98 | 16 | 26.2 | | | 47.18 |
| VI | February 9, 2019 to August 15, 2019 | 2019 Motion for Preliminary Injunction | 8.58 | 148 | 497.8 | 731.5 | | 1385.88 |
| VII | August 16, 2019 to Present | Enforcement and Fee Application | 74.14 | 51.8 | 215.55 | 43 | | 384.49 |
| **Totals** | | | **584.07** | **339.8** | **1010.3** | **774.5** | **125.5** | **2834.17** |

E
X
H
I
B
I
T


A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**SECOND DECLARATION OF ROBERT A. MCGUIRE, III
IN SUPPORT OF COALITION PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND EXPENSES**

1.     My name is Robert A. McGuire, III.  I am over the age of 21 and competent to testify.  I have personal knowledge of the facts stated in this Second Declaration, which I offer in further support of the Coalition Plaintiffs' Special Motion for Award of Attorneys' Fees and Costs (Doc. 595).  If called as a witness, I would testify under oath to these facts.

**Additional Awardable Hours Spent
After The Initial Fee Application**

2.     Since the filing of the detailed specification on October 16, 2019 (Doc. 630), I have spent additional time on awardable work in this matter.

3.      Attached hereto as **Exhibit A** is a report showing 23 time entries (numbered 419 through 441) that describe in detail the dates of my work and the nature of the tasks I performed.

4.      The entries shown on Exhibit A are true and correct copies of the information recorded in my timekeeping software.

5.      Exhibit A shows that I spent **13.13 hours** since October 16, 2019, on work necessary to verify Defendants' compliance with, and to enforce, the Court's 2019 preliminary injunction order.  Valued at my claimed rate of <u>$615 per hour</u>, the additional lodestar amount awardable for this time spent on enforcement is **$8,074.95**.

6.      Exhibit A also shows that I spent **16.73 hours** since October 16, 2019, on work necessary to pursue this fee claim.  Valued at my claimed rate of <u>$615 per hour</u>, the additional lodestar amount awardable for this time spent on the fee claim is **$10,288.95**.

7.      Based on my personal knowledge of the work memorialized by the time entries shown in Exhibit A, and based on my professional experience of litigating voting and election-law matters, the additional 29.86 hours that I spent on enforcement efforts and on this fee claim were necessary and the amount of time that I spent on the recorded tasks was reasonable.

8.    The table shown in Paragraph 37 of my initial Declaration (Doc. 630 at 85, ¶ 37), when updated to reflect the additional time claimed here, reads as follows:

| Phase/Dates | Major Activities in the Phase | Initial Hours | New Hours | New Pct. Time |
|---|---|---|---|---|
| Phase I to 2/28/18 | Case Initiation, State Court Complaint; Second Amended Complaint | 152.69 | n/a | 26.1% |
| Phase II 3/1–6/30/18 | Third Amended Complaint; Motions to Dismiss | 147.93 | n/a | 25.3% |
| Phase III 7/1–9/19/18 | 2018 Motion for Preliminary Injunction | 185.62 | n/a | 31.8% |
| Phase IV 9/20–10/2/18 | Consideration of Motion for Reconsideration and Motion for Additional Injunctive Relief | 10.12 | n/a | 1.7% |
| Phase V 10/3/18–2/8/19 | Stay, 2018 Election, Appeal | 4.98 | n/a | 0.9% |
| Phase VI 2/9–8/15/19 | 2019 Motion for Preliminary Injunction | 8.59 | n/a | 1.5% |
| Phase VII From 8/16/19 | Enforcement and Fee Application | 44.28 | 29.86 | 12.7% |
| | **Total:** | **584.07 hours** | | **100%** |

3

9.    The different breakdown shown by the table in Paragraph 38 of my

initial Declaration (Doc. 630 at 86, ¶ 38), when updated to reflect the additional

time claimed here, reads as follows:

| Category | Work Description | Initial Hours | New Hours | Pct. Time |
|---|---|---|---|---|
| 1 | Providing independent advice prior to my formal appearance | 23.70 | n/a | 4.1% |
| 2 | Setting Coalition's independent litigation strategy at the outset of 2018 and then drafting and defending the Coalition's Third Amended Complaint accordingly | 212.33 | n/a | 36.4% |
| 3 | Preparing and litigating the 2018 injunction motion | 163.32 | n/a | 28.0% |
| 4 | Opposing the State Defendants' interlocutory appeal of jurisdiction and standing | - | n/a | 0% |
| 5 | Providing ongoing strategic and discovery planning | 59.64 | n/a | 10.2% |
| 6 | Obtaining and enforcing the 2019 injunction | 14.10 | 13.13 | 4.7% |
| 7 | Preparing this fee application | 35.09 | 16.73 | 8.9% |
| 8 | Preparing a supplemental complaint addressing ballot marking devices and accompanying motion for leave to file | - | n/a | 0% |
| 9 | All other necessary litigation work | 46.03 | n/a | 7.9% |
| | **Total:** | **584.07 hours** | | **100%** |

**Third-Party Receipts For Expenses Claimed**

10.     Attached hereto as **Exhibit B** are true and correct copies of third-party receipts documenting all but $14 of the $4,808.02 of expenses that are claimed and itemized in the expense report that was attached to my initial Declaration (Doc. 630, at 105–06.).  The $14 is not evidenced by any receipts because it was the total amount I was charged for two $7 bridge tolls, and receipts are not available.

11.     Based on my personal knowledge of the expenses included in that total, and based on my professional experience of litigating voting and election-law matters as well as other civil cases in federal court, the **$4,808.02** of expenses claimed by Coalition for Good Governance were necessary and reasonably incurred and contributed to Coalition's success in obtaining the 2019 preliminary injunction order.

**Updated Total Of Attorney Fees And Expenses Claimed**

12.     After adding these new additional lodestar amounts ($8,074.95 and $10,288.95) to the initial lodestar amount sought for my work in the detailed specification ($340,839.15) (Doc. 630, at 20), the revised total of attorney fees claimed for my work equals: **$359,203.05**.

13.     Adding this amount ($359,203.05) to the litigation expenses already claimed ($4,808.02) produces a revised total amount that should be awarded for

my non-appellate and non-BMD efforts in this case through January 16, 2020, of:

**$364,011.07**.

## Conclusion

14.     This Court should award a grand  total of **$364,011.07** as attorney fees

and litigation expenses related to my non-appellate and non-BMD efforts in this

case through January 16, 2020.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

DATED this 20th day of January, 2020.

Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*Counsel for Coalition for Good*
*Governance*

# EXHIBIT A

# (Additional) Work on Enforcement of 2019 Injunction

| Cont. Entry | Date | Description | Total Time | | |
|---|---|---|---|---|---|
| 419 | 11/07/2019 | Call w MRM regarding motion to reconsider ruling on Rule 59 motion. Email to JP, BPB, MRM, ER re same. | 1.00 | | |
| 420 | 11/13/2019 | Review and comment on request for status conference. | 0.25 | | |
| 421 | 11/15/2019 | Review Cobb County Board of Elections segment about problems with BMD pilot project. | 0.23 | | |
| 422 | 12/18/2019 | Conference call with CI, BPB, MRM to consider necessary discovery to conduct re DRE issues, FBI drive, BMD discovery. | 1.15 | | |
| 423 | 12/19/2019 | Portion of call with MRM regarding Curling contempt issues - State not planning for HMPB. | 0.33 | | |
| 424 | 01/06/2020 | Conf. call w BPB, MRM, J Powers, RW regarding Defs.' request for status conference on DREs. | 1.66 | | |
| 425 | 01/06/2020 | Review and action MRM email re MoFo expert declarations; email to D. Cross. | 0.10 | | |
| 426 | 01/07/2020 | Draft response to State's request for status conference. | 0.50 | | |
| 427 | 01/07/2020 | Revise and file response to State's request for status conference. | 0.25 | | |
| 428 | 01/09/2020 | Call with CI, J Powers, RW, MRM to allocate responsibilities for preparation of status report. | 0.20 | | |
| 429 | 01/10/2020 | Review Curling response to State's request for status conference and consider best approach to raise March implementation issues and DRE preservation issues at 1/17 status conference. (0:60); participate on conference call with BPB, Brad ___, J. Powers, RW, MRM to confirm approach and assignments. (0:20). | 1.33 | | |
| 430 | 01/14/2020 | Prepare 12/6 hearing transcript annotation for attachment and draft email to opposing counsel requesting 12/17 SEB meeting transcript. | 0.30 | | |
| 431 | 01/15/2020 | Consider issue of sealing status report.  Review drafts prepared by B. Phillips, J. Powers, MRM. | 0.75 | | |
| 432 | 01/15/2020 | Revise status report and supplemental status report. | 2.18 | | |
| 433 | 01/16/2020 | Consolidate sealed and unsealed status reports into single document, review and finalize substance for filing. | 1.90 | | |
| 434 | 01/16/2020 | Prepare for status conference. | 1.00 | | |
| | | Total: | 13.13 | @$615/hr = | $    8,074.95 |

# (Additional) Work on Fees Claim

| Cont. Entry | Date | Description | Total Time | | |
|---|---|---|---|---|---|
| 435 | 11/18/2019 | Call with EP, BPB, J Powers, MRM, to plan drafting of reply supporting fee claim. | 1.00 | | |
| 436 | 01/08/2020 | Review oppositions to fee claim. | 0.85 | | |
| 437 | 01/09/2020 | Review oppositions of State and Fulton to fee claim. | 1.88 | | |
| 438 | 01/09/2020 | Draft reply sections pertaining to fees claimed for RAM work. | 0.75 | | |
| 439 | 01/10/2020 | Continue drafting drop-in sections defending RAM fees claimed. | 5.75 | | |
| 440 | 01/15/2020 | Edit reply brief iso fee claim. | 4.00 | | |
| 441 | 01/16/2020 | Prepare second declaration iso fee claim. | 2.50 | | |
| | | Total: | 16.73 | @$615/hr = | $   10,288.95 |
| | | | | | $   18,363.90 |

# EXHIBIT B

| From: | Alaska Airlines |
|---|---|
| To: | Robert McGuire |
| Subject: | Confirmation Letter - QWPRHU 04/26/18 - from Alaska Airlines |
| Date: | Monday, April 9, 2018 10:41:42 AM |

If you have trouble viewing this message, click here to request a plain text-only version of this email.



**Confirmation code:  QWPRHU**

You're all set. Thank you for booking with Alaska and we look forward to seeing you on board.

Manage your trip online and view full details about your flight reservation and fare. You can choose seats, make service requests, and make changes to your flight.

**MANAGE TRIP**

| Flight | Departs | Arrives | Class | Traveler(s) | Seat(s) |
|---|---|---|---|---|---|
| Alaska 746<br>Boeing 737-900 | Seattle (SEA)<br>Thu, Apr 26<br>6:59 am | Atlanta, GA (ATL)<br>Thu, Apr 26<br>2:52 pm | K<br>(Coach) | Robert Mcguire | 32D |
| Alaska 745<br>Boeing 737-900 | Atlanta, GA (ATL)<br>Sat, Apr 28<br>4:02 pm | Seattle (SEA)<br>Sat, Apr 28<br>6:30 pm | V<br>(Coach) | Robert Mcguire | 7F★ |

★Premium Class seat has been selected for this flight.

**Additional information**

**Prohibited hazardous materials**
The Federal Government has specific restrictions about hazardous materials in carry-on and checked baggage. Failure to declare hazardous materials may result in civil and criminal penalties. For more information, visit: the FAA website.

**Summary of airfare charges**
Robert Mcguire
*American Frequent Flyer # ***EBD4*
Ticket 0272168757640

| | |
|---|---|
| *Base Fare and Surcharges* | $407.45 |
| *Taxes and Other Fees* | $58.96 |
| *Per person total* | $466.41 |

**Total charges for air travel**   **USD $466.41**
View all taxes, fees and charges

**Summary of additional item charges**

Seat upgrade purchases

Robert Mcguire, 1 seat   $45.58

**Hotels and cars**

Low price guarantee
Powered by Expedia®

**Need a hotel?**
Use our hotel deal finder to book a hotel in Atlanta, GA.

**Need a ride?**
Use our car deal finder to rent a car in Atlanta, GA.

**Get the Visa Signature® card**

Apply now for the Alaska Airlines Visa Signature® card and earn 30,000 bonus miles after qualifying purchases.

**APPLY**

**Sign up for email deals**

| | |
|---|---|
| *Tax* | $3.42 |
| *Total for Robert Mcguire* | $49.00 |
| *Total charges for seat upgrades* | $49.00 |
| **Total charges for additional items** | **USD $49.00** |

**Total charges and credits**

Nonrefundable fare of $515.41 was charged to the Visa card with number ************7646  on 04/09/2018.

**Trip protection by Allianz Global Assistance**

Purchase trip protection benefits and travel assistance services for your trip from Allianz Global Assistance. Learn more

**Flight notifications**

Flight notifications are how we will contact you with important travel information. Get alerts about departures, arrivals, gate changes, cancelations and more.

SIGN UP

**Web Check-in**

When traveling on Alaska Airlines, save time by checking in online 1 to 24 hours prior to departure. You can also check in at one of our airport kiosks or at the ticket counter.

CHECK IN

For more information about minimum check-in times, required identification, international travel, and traveling with minors, please visit our website.

**Manage your flight reservation**

View full details about your flight reservation and fare. You can choose seats, make service requests, and make changes online.

Alaska Airlines reservations 1-800-ALASKAAIR (1-800-252-7522)

MANAGE

**Baggage**

**Carry-on baggage:** On Alaska Airlines flights, each traveler is limited to one carry-on bag that measures up to 10 x 17 x 24 inches, plus one personal item. See our carry-on baggage page for more information.

**Checked baggage:** Alaska Airlines rules and fees apply for this itinerary. The first and second checked bag fees are $25 each. See the checked baggage page for details and exceptions.

Our email deals features exclusive fare sales, discount codes and web specials tailored to your preferences, as well as Alaska Airlines Mileage Plan offers and news.

Sign up

**Service requests**

Alaska Airlines provides a meet and assist service for travelers who need assistance through the airport. Request this service online or over the phone.

View reservation

**InFlight service**

Many Alaska Airlines flights offer the option to purchase a meal. We've also equipped almost all of our fleet with InFlight WiFi so you can surf the web or stay productive inflight. For more info, please see our on board guide.

**For your security**

Do you have a redress number? If so, and you did not provide it when you made your reservation, please visit www.alaskaair.com or call reservations.

To learn more about redress numbers go to www.dhs.gov/trip.

**Destinations**

View information for:
Atlanta, GA
Seattle

**Contact us**

Share your thoughts with us, contact us.

**Alaska Airlines® baggage service guarantee**
Get your bags in 20 minutes guaranteed.

**Your rights**

Please review important information about your consumer rights and our limitations of liability.

You may also wish to review the contract of carriage applicable to your trip.

Please do not reply to this email. Need help? Contact us.
If you have an account with us and wish to unsubscribe from marketing email, visit the manage email page.
You may still receive transactional messages from Alaska Airlines. Privacy Notice

This email was sent to ram@lawram.com.
Reference number PL81592887. Requested at 04/09/2018 10:28 AM

**From:** Alaska Airlines
**To:** Robert McGuire
**Subject:** Confirmation Letter - QWPRHU 04/29/18 - from Alaska Airlines
**Date:** Wednesday, April 25, 2018 10:20:28 AM

If you have trouble viewing this message, click here to request a plain text-only version of this email.



**Confirmation code:  QWPRHU**

| ADD TO MY TRIPS |

You're all set. Thank you for booking with Alaska and we look forward to seeing you on board.

Manage your trip online and view full details about your flight reservation and fare. You can choose seats, make service requests, and make changes to your flight.

MANAGE TRIP

| Flight | Departs | Arrives | Class | Traveler(s) | Seat(s) |
|---|---|---|---|---|---|
| Alaska 746<br>Boeing 737-900 | Seattle (SEA)<br>Sun, Apr 29<br>6:59 am | Atlanta, GA (ATL)<br>Sun, Apr 29<br>2:52 pm | B<br>(Coach) | Robert Mcguire | 31D |
| Alaska 85<br>Boeing 737-900 | Atlanta, GA (ATL)<br>Wed, May 2<br>6:30 am | Seattle (SEA)<br>Wed, May 2<br>9:04 am | H<br>(Coach) | Robert Mcguire | 9D★ |

★Premium Class seat has been selected for this flight.

**Additional information**

**Prohibited hazardous materials**
The Federal Government has specific restrictions about hazardous materials in carry-on and checked baggage. Failure to declare hazardous materials may result in civil and criminal penalties. For more information, visit: the FAA website.

**Summary of airfare charges**

Robert Mcguire
*American Frequent Flyer # ***EBD4*
Ticket 027-2170279233

| | |
|---|---|
| *Change Fee* | $25.00 |
| *Per person total* | $580.99 |

New Ticket 0272170279231
(previous ticket 0272168757640)

| | |
|---|---|
| *New Ticket Value* | $1,022.40 |
| *Additional Amount Due* | $555.99 |
| *Per person total* | $580.99 |

**Total charges for air travel**      **USD $580.99**
View all taxes, fees and charges

**Hotels and cars**

Low price guarantee
Powered by Expedia®

**Need a hotel?**
Use our hotel deal finder to book a hotel in Atlanta, GA.

**Need a ride?**
Use our car deal finder to rent a car in Atlanta, GA.

**Get the Visa Signature® card**

Apply now for the Alaska Airlines Visa Signature® card and earn 30,000 bonus miles after qualifying purchases.

| APPLY |

**Sign up for email deals**

**Total charges and credits**

Nonrefundable fare of $580.99 was charged to the Visa card with number ************7646  held by Robert Mcguire on 04/25/2018.

**Trip protection by Allianz Global Assistance**

Purchase trip protection benefits and travel assistance services for your trip from Allianz Global Assistance. Learn more

**Flight notifications**

Flight notifications are how we will contact you with important travel information. Get alerts about departures, arrivals, gate changes, cancelations and more.

SIGN UP

**Web Check-in**

When traveling on Alaska Airlines, save time by checking in online 1 to 24 hours prior to departure. You can also check in at one of our airport kiosks or at the ticket counter.

CHECK IN

For more information about minimum check-in times, required identification, international travel, and traveling with minors, please visit our website.

**Manage your flight reservation**

View full details about your flight reservation and fare. You can choose seats, make service requests, and make changes online.

Alaska Airlines reservations 1-800-ALASKAAIR (1-800-252-7522)

MANAGE

**Baggage**

**Carry-on baggage:** On Alaska Airlines flights, each traveler is limited to one carry-on bag that measures up to 10 x 17 x 24 inches, plus one personal item. See our carry-on baggage page for more information.

**Checked baggage:** Alaska Airlines rules and fees apply for this itinerary. The first and second checked bag fees are $25 each. See the checked baggage page for details and exceptions.

**Alaska Airlines® baggage service guarantee**
Get your bags in 20 minutes guaranteed.

**Your rights**

Our email deals features exclusive fare sales, discount codes and web specials tailored to your preferences, as well as Alaska Airlines Mileage Plan offers and news.

Sign up

**Service requests**

Alaska Airlines provides a meet and assist service for travelers who need assistance through the airport. Request this service online or over the phone.

View reservation

**InFlight service**

Many Alaska Airlines flights offer the option to purchase a meal. We've also equipped almost all of our fleet with InFlight WiFi so you can surf the web or stay productive inflight. For more info, please see our on board guide.

**For your security**

Do you have a redress number? If so, and you did not provide it when you made your reservation, please visit www.alaskaair.com or call reservations.

To learn more about redress numbers go to www.dhs.gov/trip.

**Destinations**

**View information for:**
Atlanta, GA
Seattle

**Contact us**

Share your thoughts with us, contact us.

Please review important information about your consumer rights and our limitations of liability.

You may also wish to review the contract of carriage applicable to your trip.

Please do not reply to this email. Need help? Contact us.
If you have an account with us and wish to unsubscribe from marketing email, visit the manage email page.
You may still receive transactional messages from Alaska Airlines. Privacy Notice

This email was sent to ram@lawram.com.
Reference number PL82368977. Requested at 04/25/2018 09:53 AM

| | |
|---|---|
| **From:** | Uber Receipts |
| **To:** | Robert McGuire |
| **Subject:** | Your Sunday afternoon trip with Uber |
| **Date:** | Sunday, April 29, 2018 4:28:38 PM |
| **Attachments:** | map_809b82b2-ab51-4a80-a63e-1dc627000cf1 |



# $51.29

Thanks for choosing Uber, Robert

April 29, 2018 | Select

**04:00pm** | 4000, 6000 N Terminal Pkwy, Atlanta, GA

**04:28pm** | 1365 Peachtree St NW, Atlanta, GA

You rode with Dave

| 13.10 | 00:28:03 | Select |
|---|---|---|
| miles | Trip time | Car |



ADD A TIP

## Your Fare

Trip fare                                          $51.29

**Subtotal**                                       **$51.29**

CHARGED
Personal •••• 7646                             $51.29

Earn 4% back on dining, 3% back on hotel & airfare, 2% back on online
purchases, and more with the Uber Visa Card.
Learn more

Need help?

Tap Help in your app to **contact support** with questions about your trip.

Leave something behind? **Track it down.**



**May 01, 2018 08:50**                    **Page: 1**
**Receipt #: 1509496464**
**VISA #: XXXXXXXXXXXX7646**
**2018/05/01 08:43**

| Qty | Description | Amount |
|-----|-------------|--------|
| 4 | PNG B&W S/S 8.5x11 & 8.5x14 | 0.52 |
| 15 | PNG B&W S/S 8.5x11 & 8.5x14 | 1.95 |
| 35 | PNG B&W S/S 8.5x11 & 8.5x14 | 4.55 |
| 19 | PNG B&W S/S 8.5x11 & 8.5x14 | 2.47 |
| 74 | PNG B&W S/S 8.5x11 & 8.5x14 | 9.62 |

|  | SubTotal | 19.11 |
|--|----------|-------|
|  | Taxes | 1.69 |
|  | Total | 20.80 |

**The Cardholder agrees to pay the Issuer of the charge card**
**in accordance with the agreement between the Issuer and**
**the Cardholder.**

**FedEx Office Print & Ship Centers**

**1375 Peachtree Stree**
**Atlanta,GA 30309**
**(404) 876-4752**
**www.FedExOffice.com**

**Tell us how we're doing and receive**
**5% off your next print order**
**fedex.com/welisten or 1-800-398-0242**
**Offer Code:_____ Offer expires 06/30/2018**

**Get your message out in a big way with**
**everything from full-color banners to**
**photo-quality posters, yard signs,**
**auto magnets and more.**

**Please Recycle This Receipt**



**May 01, 2018 19:38**                          **Page: 1**
**Receipt #: 1509496496**
**VISA #: XXXXXXXXXXXX7646**
**2018/05/01 19:36**

| Qty | Description | Amount |
|-----|-------------|--------|
| 1   | PNG B&W S/S 8.5x11 & 8.5x14 | 0.13 |
| 55  | PNG B&W S/S 8.5x11 & 8.5x14 | 7.15 |

|     | SubTotal | 7.28 |
|-----|----------|------|
|     | Taxes    | 0.65 |
|     | Total    | 7.93 |

The Cardholder agrees to pay the Issuer of the charge card
in accordance with the agreement between the Issuer and
the Cardholder.

**FedEx Office Print & Ship Centers**

**1375 Peachtree Stree**
**Atlanta,GA 30309**
**(404) 876-4752**
**www.FedExOffice.com**

Tell us how we're doing and receive
5% off your next print order
fedex.com/welisten or 1-800-398-0242
Offer Code:_____ Offer expires 06/30/2018

Get your message out in a big way with
everything from full-color banners to
photo-quality posters, yard signs,
auto magnets and more.

**Please Recycle This Receipt**





**PANERA BREAD**
**CAFE 601719**
**1080 Peachtree St. NE Suite**
**14, Atlanta, GA 30309, USA**
**PHONE 404-817-0415**

Accuracy matters. If your order is
not right, please let a manager
know.

**ORDER 208109672** / Robert
McGuirr

# Robert

# McGuirr

| | |
|---|---|
| **DATE PLACED** | **SCHEDULED** |
| 04/29/18 5:56PM | 04/29/18 6:26PM |

**ADDRESS**        **COMMENT**

1365 Peachtree   Call and 1 will
Street           come to lobby
Northeast, Atlant  or just come
a, GA 30309       to the room
Apt/Suite: Room  and knock
514 - Addrs
Type: WORK -
Addrs name:
Marriott
Residence Inn

**PAYMENT INFORMATION:**

| | |
|---|---|
| Sub total: | $27.71 |
| Tax: | $2.73 |
| Delivery Fee: | $3.00 |
| Total (CREDIT): | $33.44 |
| Tip: | $ |
| Grand Total: | $  *33.44* |

**SIGNATURE:**

#5 cash
tip

www.panerabread.com

Interested in joining our baking or
management teams?
Apply in person or at
panerabread.jobs

MCGUIRE/Robert
ADDITIONAL FEES RECEIPT                                    ** PAID BAGS **

| Flight | | From | To | Date |
|--------|--|------|-----|------|
| 746 | B | Seattle | Atlanta | 29APR18 |

Ticket
Date:
29APR18

Record
Locator:
QWPRHU

Ticket No. 0272170633288
FOP: VIXXXXXXXXXXXX7646

Total Charged: $25.00 USD

**Port of Seattle®**

SEATTLE-TACOMA
INTERNATIONAL AIRPORT

# EXIT RECEIPT

```
Transaction #:  1903985
PIN #:          7877
Parker #:       None
Parker Group:   None
In Date/Time:   04/29/18 04:44AM
Out Date/Time:  05/02/18 08:53AM
Parking Type:   Terminal Direct
Rate:           - GENERAL RATE -
$120.83 X   1
Tax: Sales Tax            $12.08
Tax: SeaTac Tax            $3.09
Parking SubTotal:         120.83
Tax SubTotal:              15.17
Grand Total:              136.00

Visa        (7646)        136.00
```





# Residence
### Inn®
**Marriott.**

Residence Inn by Marriott
Atlanta Midtown
17th Street

1365 Peachtree Street
Atlanta, GA  30309
T 404.745.1000

| | | |
|---|---|---|
| Robert Mcguire | Room: 514 | |
| Ne 11111 | Room Type: STQT | |
| | Number of Guests: 1 | |
| Robert Mcguire Law Firm | Rate: $236.55 | Clerk: DKM |

| Arrive: 29Apr18 | Time: 03:31PM | Depart: 02May18 | Time: 03:01AM | Folio Number: 87091 |
|---|---|---|---|---|

| Date | Description | Charges | Credits |
|---|---|---|---|
| 29Apr18 | Room Charge | 146.00 | |
| 29Apr18 | Local Occupancy Tax 8% | 11.68 | |
| 29Apr18 | State Sales Tax 8% | 12.99 | |
| 29Apr18 | State Cost - Recovery Fee | 5.00 | |
| 30Apr18 | Room Charge | 185.00 | |
| 30Apr18 | Local Occupancy Tax 8% | 14.80 | |
| 30Apr18 | State Sales Tax 8% | 16.47 | |
| 30Apr18 | State Cost - Recovery Fee | 5.00 | |
| 01May18 | Room Charge | 236.55 | |
| 01May18 | Local Occupancy Tax 8% | 18.92 | |
| 01May18 | State Sales Tax 8% | 21.05 | |
| 01May18 | State Cost - Recovery Fee | 5.00 | |
| 02May18 | Visa | | 678.46 |
| | *Card #: VIXXXXXXXXXXXX7646/XXXX* | | |
| | *Amount:   678.46  Auth: 029273  Signature on File* | | |
| | *This card was electronically swiped on 29Apr18* | | |

**Balance:     0.00**

As a Rewards Member, you could have earned points toward your free dream vacation today. Start earning points and elite
status, plus enjoy exclusive member offers. Enroll today at the front desk.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

To plan your next stay, visit residenceinn.com

MCGUIRE/Robert
**ADDITIONAL FEES RECEIPT**                                    ** PAID BAGS **



| Flight | | From | To | Date |
|--------|---|------|-----|------|
| 85 | H | Atlanta | Seattle | 02MAY18 |

Ticket
Date:
02MAY18

Record
Locator:
QWPRHU

Ticket No. 0272170945536
FOP: VIXXXXXXXXXXXX7646

Total Charged: $25.00 USD

| | |
|---|---|
| **From:** | Uber Receipts |
| **To:** | Robert McGuire |
| **Subject:** | Your Wednesday morning trip with Uber |
| **Date:** | Wednesday, May 2, 2018 1:25:46 AM |
| **Attachments:** | map_1cdd6b92-e367-4a07-875c-e473df393ff9 |



# $42.25

Thanks for choosing Uber, Robert

May 2, 2018 | Select

04:09am | 1370 Peachtree St NE, Atlanta, GA

04:25am | College Park, GA

You rode with Kenneth

| 14.13 | 00:16:19 | Select |
|---|---|---|
| miles | Trip time | Car |



ADD A TIP

## Your Fare

Trip fare                                    $42.25

Subtotal                                     $42.25

CHARGED
Personal •••• 7646                    $42.25

Earn 4% back on dining, 3% back on hotel & airfare, 2% back on online
purchases, and more with the Uber Visa Card.
Learn more

Need help?

Tap Help in your app to **contact support** with questions about your trip.

Leave something behind? **Track it down.**

9/6/2018
Flight - Your trip confirmation | American Airlines
Case 1:17-cv-02989-AT    Document 705    Filed 01/21/20    Page 79 of 154

Thank you for making your reservation on AA.com!



**Your trip is booked**
Once the status of your trip is 'Ticketed,' you'll receive a confirmation email and can print your itinerary and receipt on aa.com (usually within 3 hours).

## Seattle to Atlanta

1 Adult

**Sunday** September 9, 2018 – **Thursday** September 13, 2018

| AA Record Locator | Reservation Name |
|---|---|
| **JTJTVE** | **SEA/ATL** |
| Your record locator is your reservation confirmation number and will be needed to retrieve or reference your reservation. | Status: **Ticket Pending** on Sep 06, 2018 |

Your Trip Price:

**$1,176.41 USD**

| Flight | Depart | Arrive |
|---|---|---|
| **American Airlines** **615** | **Seattle** (SEA) September 9, 2018 08:25 AM Travel Time : 2 h 56 m Class : Economy Seat : 7F | **Phoenix** (PHX) September 9, 2018 11:21 AM Booking Code : K Plane Type : 321 |
| Create Notification | | |
| **American Airlines** **1380** | **Phoenix** (PHX) September 9, 2018 12:18 PM Travel Time : 3 h 36 m Class : Economy Seat : 17C | **Atlanta** (ATL) September 9, 2018 06:54 PM Booking Code : K Plane Type : 738 |
| Create Notification | | |
| **American Airlines** **440** | **Atlanta** (ATL) September 13, 2018 06:04 PM Travel Time : 3 h 58 m Class : Economy Seat : 4B | **Phoenix** (PHX) September 13, 2018 07:02 PM Booking Code : L Plane Type : 320 |
| Create Notification | | |
| **American Airlines** **1681** | **Phoenix** (PHX) September 13, 2018 08:35 PM Travel Time : 3 h 5 m Class : Economy Seat : 5D | **Seattle** (SEA) September 13, 2018 11:40 PM Booking Code : L Plane Type : 321 |
| Create Notification | | |

**Fare Amount**

Adult
1 × $938.60 USD          $938.60 USD

**Trip Options**

Main Cabin Extra          $121.81 USD

**AAdvantage® Benefits**

Preferred Seats          $0.00 USD

Main Cabin Extra          $0.00 USD

Priority Access℠          $0.00 USD

Same-Day Standby          $0.00 USD

**Taxes & Carrier-Imposed Fees**

Taxes          $116.00 USD

Carrier-Imposed Fees          $0.00 USD

**Flight Subtotal**

**$1,176.41 USD**

## Hotel Offers



## Baggage Information

### Baggage Charges (per person)

Based on your travel, one airline is designated as the Most Significant Carrier, and that airline's baggage allowances and charges apply to your entire journey.

Other Baggage and Optional Charges ⧉

| Carry-On Baggage | | Cost (USD) | Size* | Additional Info |
|---|---|---|---|---|
| **American Airlines** Domestic | 🧳 1st Carry-On | **No Charge** | 36 din / 91 dcm | Includes: purse, briefcase, laptop bag or similar item that must fit under the seat in front of you. |
| | 🧳 2nd Carry-On | **No Charge** | 45 din / 114 dcm | Maximum dimensions not to exceed: 22" long x 14" wide x 9" tall (56 x 35 x 23 cm) |

| Checked Baggage | | Cost (USD) | Size* | Weight |
|---|---|---|---|---|
| **American Airlines** | 🧳 1st Bag | **No Charge** | 62 din / 158 dcm | Under 50 lbs/ 23 kgs |
| | 🧳 2nd Bag | **$35** | 62 din / 158 dcm | Under 50 lbs/ 23 kgs |

*Dimensional Size is calculated as follows: (Length + Width + Height)

## Passenger Summary

Save time at the airport! Add your travel information below to check-in online.

### ROBERT MCGUIRE     ✓ No Further information required to travel

#### Trip Contact Information

We may need to contact you in the event there is important information relevant to your trip. Please enter your cell phone number. This information will not be used for marketing purposes.

[ 1 ▼ ] [ Area Code and Number ]

#### Summary

All information required for online check-in has been provided.

Online check-in will be available 24 hours prior to your departure.

✓ Secure Flight Information

Frequent Flyer Number
356EBD4

## Upgrade reservation

If your upgrade request on your American Airlines flight cannot be confirmed prior to check-in, you will be added to the American Airlines airport standby list. In order to be added to the American Airlines airport standby list, please ensure you have the appropriate number of upgrades in your account prior to check-in.

| Flight | Flight Details | Upgrade Required | Request Upgrade? |
|--------|---------------|------------------|------------------|
| ✈ 615 | Depart: **Seattle** ( SEA )<br>Arrive: **Phoenix** ( PHX ) | 500-mile Upgrades<br>**3 (per person)**<br>1106 miles | Not Requested |
| ✈ 1380 | Depart: **Phoenix** ( PHX )<br>Arrive: **Atlanta** ( ATL ) | 500-mile Upgrades<br>**4 (per person)**<br>1587 miles | Not Requested |
| ✈ 440 | Depart: **Atlanta** ( ATL )<br>Arrive: **Phoenix** ( PHX ) | 500-mile Upgrades<br>**4 (per person)**<br>1587 miles | Not Requested |
| ✈ 1681 | Depart: **Phoenix** ( PHX )<br>Arrive: **Seattle** ( SEA ) | 500-mile Upgrades<br>**3 (per person)**<br>1106 miles | Not Requested |

View 500-mile upgrade rules ⧉

## Trip insurance

Allianz Global
**Assistance**

### Insurance Offer Declined

**It's not too late!** Trip Insurance from Allianz Global Assistance helps protect against expenses should you be required to cancel or interrupt your trip due to medical or other covered reasons affecting you or your family members. To purchase trip insurance or to learn more, visit Travel Insurance From Allianz Global Assistance or call Allianz Global Assistance directly at 1-800-628-5404.

Tamm e Coe Cakes
Phoen x Sky Harbor
International Airport
3400 East Sky Harbor Blvd
Phoenix, AZ 85034
(60:) 840-3644

CHK:110120
Darianna V  2018-C9-09 11:11:12   Gst:1

| | | |
|---|---|---|
| 1 | Fruit Cup | 5.49 |
| 1 | The Mediterranean | 9.89 |
| I | Gold Peak Unsweet Tea | 3.79 |

Subtotal: $19.17
PHX Sales Tax: $0.44
AZ Sales Tax: $1.21
Total: $20.82
VISA: $20.82
Change: $0.00
Balance: $0.00

Thank You!
Join Us on Facebook!
www.tammecoecakes.com

| | |
|---|---|
| **From:** | Gogo |
| **To:** | Robert McGuire |
| **Subject:** | Here"s Your Gogo Receipt - Check Out Your Purchase Details! - Order #321676762SPAA |
| **Date:** | Sunday, September 9, 2018 8:56:10 AM |

Purchase Details - Order #321676762SPAA
To ensure you receive emails from Gogo, add gogo@e.gogoair.com to your email address book.

Mobile device | Web browser                                    My Account | Contact Us



Gogo

# Thanks for your purchase!

You can view your purchase history at any time by visiting My Account.  For more information about Gogo, visit our Privacy Policy and Terms of Use.

### Receipt Info

Customer: Gogo Traveler Gogo Traveler
Email Address: ram@lawram.com
Order #: 321676762SPAA
Date: 9/9/2018 8:55 AM PDT

| Product | Quantity | Price |
|---|---|---|
| Flight Pass | 1 | $12.00 |

### Payment Info
Payment Type: VISA
Payment Info: 7646

**Tax :** $0.00

**Total:** $12.00

---

**How to get online, in air.**

 Turn on your Wifi enabled device

 Connect to the "GogoInflight" network

 Launch your browser and sign in to Gogo

---

**Connect with Gogo  >**           Facebook           Twitter           Pinterest

| My Account | Customer Service | Passes & Products | Find Gogo | Terms of Use | Privacy Policy |

This email was sent to ram@lawram.com because you have made a Gogo purchase.
If you would like to change your email preferences or unsubscribe, please click here.

©2018 Gogo LLC. All rights reserved. All trademarks are the property of their respective owners.
111 N Canal St  |  Chicago, IL 60606  |  USA

| | |
|---|---|
| **From:** | Uber Receipts |
| **To:** | Robert McGuire |
| **Subject:** | Thanks for tipping! We've updated your Sunday evening trip receipt |
| **Date:** | Sunday, September 9, 2018 5:00:02 PM |
| **Attachments:** | map_ba207846-3bbb-4f4a-b8b9-bdc121a876bd |

Updated receipt (Tip Added)



Map data ©2018 Google

# $68.09

Thanks for tipping, Robert

September 9, 2018 | Select

07:38pm | 4000, 6000 N Terminal Pkwy, Atlanta, GA

07:58pm | 3314 Peachtree Rd NE, Atlanta, GA

You rode with Mamadou B

| 18.96 | 00:20:27 | Select |
|---|---|---|
| miles | Trip time | Car |

| | |
|---|---|
| **From:** | Uber Receipts |
| **To:** | Robert McGuire |
| **Subject:** | Thanks for tipping! We've updated your Wednesday morning trip receipt |
| **Date:** | Wednesday, September 12, 2018 10:44:44 AM |
| **Attachments:** | map_148b1e3e-d9c2-498f-90ed-a352abb1cc84_wide |
| | map_148b1e3e-d9c2-498f-90ed-a352abb1cc84 |

Total: $75.24
Wed, Sep 12, 2018

# Thanks for tipping, Robert

Here's your updated Wednesday morning ride receipt.



# Total                                    $75.24

| | |
|---|---|
| Base Fare | $14.00 |
| Time | $21.28 |
| Distance | $34.96 |

| | |
|---|---|
| Subtotal | $70.24 |
| Tip | $5.00 |

### Amount Charged

| | |
|---|---|
| •••• 7646 \| Switch | $70.24 |
| •••• 7646 \| Switch | $5.00 |

Download PDF
Download link expires 10/12/18

You rode with Leonard



4.92 ☐ Rating

Top Driver Compliment

"Excellent Service"

Issued on behalf of Leonard Alawobu

**Black SUV**   8.61 mi | 42 min

08:12am

3300 Peachtree Rd NE,
Atlanta, GA

08:55am

Richard B. Russell Plaza SW,
Atlanta, GA

Invite your friends and family.

Get a free ride worth up to $5 when you refer a
friend to try Uber. Share code: robertm23396ue



REPORT LOST ITEM            CONTACT SUPPORT            MY TRIPS

FAQ

Forgot password

Uber Technologies
1455 Market St
San Francisco, CA 94103

Privacy

Terms

# Port of Seattle®

SEATTLE-TACOMA
INTERNATIONAL AIRPORT

# EXIT RECEIPT

---

```
Transaction #:  3499192
PIN #:          1580
Parker #:       None
Parker Group:   None
In Date/Time:   09/09/18 05:51AM
Out Date/Time:  09/13/18 11:51PM
Parking Type:   Terminal Direct
Rate:           - GENERAL RATE -
$165.37 X   1
Tax: Sales Tax              $16.54
Tax: SeaTac Tax              $3.09
Parking SubTotal:          165.37
Tax SubTotal:               19.63
Grand Total:               185.00

Visa        (7646)         185.00
```

---



| | |
|---|---|
| **From:** | Gogo |
| **To:** | Robert McGuire |
| **Subject:** | Here"s Your Gogo Receipt - Check Out Your Purchase Details! - Order #321987709SPAA |
| **Date:** | Thursday, September 13, 2018 4:13:15 PM |

Purchase Details - Order #321987709SPAA
To ensure you receive emails from Gogo, add gogo@e.gogoair.com to your email address book.

Mobile device | Web browser                                              My Account | Contact Us




# Thanks for your purchase!

You can view your purchase history at any time by visiting My Account.  For more information about Gogo, visit our Privacy Policy and Terms of Use.

### Receipt Info

Customer: Gogo Traveler Gogo Traveler
Email Address: ram@lawram.com
Order #: 321987709SPAA
Date: 9/13/2018 7:12 PM EDT

| Product | Quantity | Price |
|---|---|---|
| Flight Pass | 1 | $16.00 |

### Payment Info
Payment Type: VISA
Payment Info: 7646

**Tax :** $0.00

**Total:** $16.00

---

**How to get online, in air.**

 Turn on your Wifi enabled device

 Connect to the "GogoInflight" network

 Launch your browser and sign in to Gogo

---

**Connect with Gogo  >**          ▣ Facebook      ▣ Twitter      ▣ Pinterest

| My Account | Customer Service | Passes & Products | Find Gogo | Terms of Use | Privacy Policy |

This email was sent to ram@lawram.com because you have made a Gogo purchase.
If you would like to change your email preferences or unsubscribe, please click here.

©2018 Gogo LLC. All rights reserved. All trademarks are the property of their respective owners.
111 N Canal St  |  Chicago, IL 60606  |  USA

**GRAND|HYATT**

**Grand Hyatt Atlanta**
3300 Peachtree Road NE
Atlanta, GA 30305
Tel:  404-237-1234
Fax: 404-364-3887
www.grandhyattatlanta.com

INVOICE

| | |
|---|---|
| Robert Mcguire | |
| 113 Cherry St | |
| Seattle, WA 98104 | |
| United States | |

| | |
|---|---|
| Room No. | 2515 |
| Arrival | 2018-09-09 |
| Departure | 2018-09-13 |
| Page No. | 1 of 2 |
| Confirmation No.   1226467301 | Folio Window | 1 |
| Group Name | Folio No.   24780200 |

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| 09-09-2018 | Guest Room | | 185.58 | |
| 09-09-2018 | Sales Tax | | 16.52 | |
| 09-09-2018 | Occupancy Tax | | 14.85 | |
| 09-09-2018 | State Hotel-Motel Fee | | 5.00 | |
| 09-10-2018 | - In Room Dining Late Night Food | Room# 2515 : CHECK# 6637 | 55.63 | |
| 09-10-2018 | Guest Room | | 185.58 | |
| 09-10-2018 | Sales Tax | | 16.52 | |
| 09-10-2018 | Occupancy Tax | | 14.85 | |
| 09-10-2018 | State Hotel-Motel Fee | | 5.00 | |
| 09-11-2018 | - In Room Dining Breakfast Food | Room# 2515 : CHECK# 6706 | 42.34 | |
| 09-11-2018 | Guest Room | | 185.58 | |
| 09-11-2018 | Sales Tax | | 16.52 | |
| 09-11-2018 | Occupancy Tax | | 14.85 | |
| 09-11-2018 | State Hotel-Motel Fee | | 5.00 | |
| 09-12-2018 | - In Room Dining Late Night Food | Room# 2515 : CHECK# 6781 | 30.38 | |
| 09-12-2018 | Guest Room | | 190.05 | |
| 09-12-2018 | Sales Tax | | 16.91 | |
| 09-12-2018 | Occupancy Tax | | 15.20 | |
| 09-12-2018 | State Hotel-Motel Fee | | 5.00 | |
| 09-13-2018 | - In Room Dining Breakfast Food | Room# 2515 : CHECK# 6865 | 30.38 | |
| 09-13-2018 | Visa | XXXXXXXXXXXX7646 | | -1051.74 |

| | | |
|---|---|---|
| **Total** | 1051.74 | -1051.74 |

Guest Signature

| | |
|---|---|
| **Balance** | 0.00 |

I agree that my liability for this bill is not waived and I agree
to be held personally liable in the event that the indicated
person, company or association fails to pay for any part or
the full amount of these charges.

**World of Hyatt Summary**

| | |
|---|---|
| **From:** | Uber Receipts |
| **To:** | Robert McGuire |
| **Subject:** | Thanks for tipping! We've updated your Thursday afternoon trip receipt |
| **Date:** | Thursday, September 13, 2018 11:15:03 AM |
| **Attachments:** | map_46d98c9e-3770-4b60-9144-2881eb64c1de_wide |
| | map_46d98c9e-3770-4b60-9144-2881eb64c1de |

Total: $67.15
Thu, Sep 13, 2018

## Thanks for tipping, Robert

Here's your updated Thursday afternoon ride receipt.

## Total                                    $67.15

Trip fare                                   $61.05

Subtotal                                    $61.05

Tip                                         $6.10

Amount Charged

•••• 7646 | Switch                         $61.05

•••• 7646 | Switch                         $6.10

Download PDF
Download link expires 10/13/18



You rode with Ken

4.92 ☐ Rating
_____

Top Driver Compliment

"Excellent Service"

Issued on behalf of DSL Limo LLC

**Select**   19.84 mi | 33 min

01:40pm
Highland Dr NE, Atlanta, GA

02:13pm
4000, 6000 N Terminal Pkwy,
Atlanta, GA

**Invite your friends and family.**

Get a free ride worth up to $5 when you refer a
friend to try Uber. Share code: robertm23396ue

REPORT LOST ITEM      |      CONTACT SUPPORT      |      MY TRIPS

EXHIBIT

B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**              )
                                        )
            **Plaintiffs,**             )
                                        )       **CIVIL ACTION**
  **vs.**                               )
                                        )       **FILE NO. 1:17-cv-2989-AT**
**BRAD RAFFENSPERGER,**                 )
 **ET AL.,**                            )
                                        )
            **Defendants.**             )

<u>**DECLARATION OF BRUCE P. BROWN**</u>

1.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

2.      My name is Bruce P. Brown.  I am over the age of 18 and competent to testify.  I have personal knowledge of the facts stated in this declaration.

3.      I represent the Coalition Plaintiffs in this case.  The purpose of this declaration is to provide updated evidence relating to Coalition Plaintiffs' Motion for Fees under 42 U.S.C. § 1988.  This declaration supplements my October 15, 2019 declaration, filed on October 17, 2019 (Doc. 632 at 110).

4.      I have attached as Exhibit 1 a true and correct copy of my time records in this case through January 16, 2020.  Exhibit 1 adds additional time

through January 16, 2020, and makes additional changes to my prior time as described below.

5.      In my October 15, 2019 declaration, I explained that when I record my time, I do not include time that I spend on administrative or secretarial tasks that would in a larger firm be undertaken by employees who do not charge clients by the hour.  In addition, after I record my time, I will use my judgment to reduce the amount of time recorded to reflect inefficiencies or other circumstances.  In this case, I have reduced my time on a number of days so that I can be certain that the amount that I am recording is appropriate.  In most instances in which I reduce my time after it is recorded, I will so indicate in the billing entry.  In Exhibit 1, I show these initial write-offs in Column G, entitled "Initial Billing Judgment Write Off." For the period leading up to the initial Detailed Specification (Doc. 632) (called "Pre-October 15 Time"), the number of hours initially written off total 35.1 hours, and this figure is shown on Exhibit 1 at Row 268, Column G.  For the "Post-October 15 Time," the number of hours initially written off total 10.5 hours, and this figure is shown on Exhibit 1 at Row 322.  Thus, I wrote off a total number of 45.6 hours in my billing judgment.  I note that the hours written-off in my billing judgment are reflected in the totals in Column D.

6.      In addition to the write-offs that I made in the exercise of my billing judgment, with this submission, I have made addition reductions in my time, and these reductions are shown in Column E, which is entitled "January 2020 Adjustment."  Column F shows the adjusted total, by subtracting the reductions made in January 2020 from the figures in Column D. The number of additional hours written off total 16.65 hours.   Though the original time recorded was accurate to the best of my knowledge and fair, I have made these additional reductions to those entries which show substantial time for conferences with my client and co-counsel. These reductions are made only to the Pre-October 15, 2019 time; for the Post-October 15, 2019 time, all reductions have been made in the exercise of initial billing judgment.

7.      As adjusted by additional write-offs, my hours for the Pre-October 15, 2019 period total 937.85.

8.      Exhibit 1 also updates my time to bring it current, as shown in Rows 271 to 321.  I note that this additional time is only for work on enforcement of the 2019 Order and the preparation of the fee request.  This figure does not include any time on the litigation involving the Coalition Plaintiffs' Supplemental Complaint involving the BMDs.  The rows that say "Redacted" are for days in which the only time was for work on the Supplemental Complaint.  In addition, I note that I made

a single reduction of 8 hours (*see* Row 321) for time billed working on the Reply

Brief.  The number of hours for this period total 72.45, after all adjustments.

9.      The total amount of my hours claimed is 1010.3.  At $625 an hour,

my fees total $631,438.

10.     I have attached as Exhibit 2 a copy of a receipt from Legal Ease for a

$248 charge of service of papers in this case.  My other expenses were for

payments to Georgia Messenger Service, as itemized in my initial declaration.  I do

not have receipts for those charges, but they were paid with my check numbers

1076 (September 3, 2018), 1230 (August 4, 2019), and 1255 (September 27, 2019).

I am claiming a total of $469 in expenses.

11.     My fees and expenses total $631,907.

This 21st day of January, 2020.

Bruce P. Brown

EXHIBIT

1

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 3/30/2018 | Review file; review proposed third amended complaint; review memo from R. McGuire; extensive telephone call with C. Ichter; telephone call with M. Marks and team; draft engagement letter; review C. Icther draft; further work on matter. | 5 | | 5 | |
| CGG Curling - Bruce Brown | 4/1/2018 | Review local rules and Judge Totenberg's Standing Order; draft notice of appearance; draft certificate of compliance; emails to C. Ichter about pleadings. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 4/2/2018 | Review and editing of draft Third Amended Complaint and transmit comments to R. Maguire; emails with client and R. Maguire about filings and strategy. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 4/3/2018 | Further work on draft third amended complaint; legal research on official capacity immunity; email to R. McGuire and M. Marks about the other plaintiffs. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 4/4/2018 | Review motion for leave to amend; revise motion for leave to amend; legal research into standards for granting such motions and edit motion to include same; review pleadings relating to Steptoe's withdrawal; legal research as to applicability of Rule 41(a) dismissal; review and revise proposed order; circulated revised drafts of pleadings; further edits to same; legal research confirming viability of injunctive relief against state officials sued in their official capacity for injunctive relief; facilitate filing of pleadings; numerous email to R. McGuire and M. Marks; emails to J. Salter. | 5.9 | | 5.9 | |
| CGG Curling - Bruce Brown | 4/5/2018 | Review and edit request for status conference and emails regarding same; finalize, file and serve same; telephone conference with J. Salter and email R. McGuire regarding same; emails with team about meeting to plan strategy. | 1.8 | | 1.8 | |
| CGG Curling - Bruce Brown | 4/6/2018 | Substantive email to team about need to make a formal demand on Secretary Kemp about the feasibility and legality of his using Coalition Plaintiffs' proposed solution; further emails about next steps. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 4/6/2018 | Email to team about Judge Totenberg's decision in Williams v. City of Atlanta and implications about making clear demand to Secretary Kemp and Section 1988 recovery. | 0.5 | | 0.5 | |
| CGG Curling - Bruce Brown | 4/9/2018 | Review status conference request and information about spoliation to prepare for conference call; conference call with team to discuss making a demand on Secretary Kemp, scope of injunctive relief, and coordinating efforts (if possible) with other plaintiffs; brief review of Kemp's response in opposition to motion for leave and emails regarding same. | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 4/12/2018 | Extensive work drafting and revising lengthy demand letter to Gov. Barnes and J. Salter; numerous emails and telephone discussions with M. Marks and team regarding same; | 4.8 | | 4.8 | |
| CGG Curling - Bruce Brown | 4/13/2018 | Consider response to Curling Plaintiffs for an extension of time to respond to motion to amend and emails regarding same (.8); extensive conference call with M. Marks and R. McGuire concerning other plaintiffs' position and whether to oppose, consideration of motion to sever (.5 plus); research spoliation cases by Judge Totenberg and Judge Batten and email to team regarding same (.5); email responding to attorney Cross (.1). | 1.9 | | 1.9 | |
| CGG Curling - Bruce Brown | 4/14/2018 | Further work on demand letter to Gov. Barnes and J. Salter. | 2 | | 2 | |
| CGG Curling - Bruce Brown | 4/16/2018 | Revise and finalize letter to Gov. Barnes and J. Salter (1.9); exchange emails with J. Salter about Secretary Kemp's position (.3). | 2.2 | | 2.2 | |
| CGG Curling - Bruce Brown | 4/17/2018 | Telephone conference with M. Marks; review draft press release for the Coalition (.5, not billed); further work on matter. | 1.3 | -1.3 | 0 | |
| CGG Curling - Bruce Brown | 4/18/2018 | Draft email to D. Cross concerning potential joint motion to sever; emails with M. Marks and team regarding same; | 1 | | 1 | |
| CGG Curling - Bruce Brown | 4/19/2018 | Substantive email to D. Cross; numerous emails about replies to briefs in opposition to motion to amend; further work on matter. | 1.2 | | 1.2 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 4/23/2018 | Telephone conference with R. McGuire, and then R. McGuire and D. Cross; telephone conference with M. Marks; consider approach toward Curling plaintiffs joinder and emails to team regarding same. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/1/2018 | Prepare for and attend court hearing; conference with R. McGuire and M. Marks thereafter. | 4.5 | | 4.5 | |
| CGG Curling - Bruce Brown | 5/2/2018 | Follow up on court hearing; telephone call with C. Ichter about statistics experts and call with co-plaintiffs. | 2.2 | | 2.2 | |
| CGG Curling - Bruce Brown | 5/3/2018 | Work on Rule 34 application; legal research on whether videotaping processes is allowed under Rule 34; emails to client regarding same. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 5/4/2018 | Work with M. Marks on email about preservation of evidence. | 0.2 | | 0.2 | |
| CGG Curling - Bruce Brown | 5/6/2018 | Review numerous emails about matter from opposing counsel and others; work on Rule 34 pleading and emails regarding same. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/7/2018 | Communications with client and opposing counsel about Rule 34 request; draft email to J. Salter about difference between state law and what Rule 34 request would allow; further work on matter. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/8/2018 | Work on Rule 34 notices; emails to team and J. Salter regarding same. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/9/2018 | Prepare for and telephone calls about conference call with the Court; prepare "pocket brief" on duty to preserve evidence;  emails to J. Salter; further work on matter. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 5/10/2018 | Prepare for and attend meeting with counsel and then hearing with Court and follow up discussions and emails thereafter. | 4.5 | | 4.5 | |
| CGG Curling - Bruce Brown | 5/11/2018 | Multiple emails and telephone calls regarding matter, including emails on advisability of filing a spoliation motion. | 3.2 | | 3.2 | |
| CGG Curling - Bruce Brown | 5/14/2018 | Extensive email about reactions to Court agreement on preservation. | 0.5 | | 0.5 | |
| CGG Curling - Bruce Brown | 6/1/2018 | Extensive conference call with team on strategy going forward. | 1.5 | -1 | 0.5 | |
| CGG Curling - Bruce Brown | 6/11/2018 | Extensive conference call regarding matter with M. Marks and team (2 hours, only 1 hour billed) | 1 | | 1 | |
| CGG Curling - Bruce Brown | 6/13/2018 | Revise and finalize draft letter to DeKalb and Kemp counsel; emails regarding same. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 6/15/2018 | Legal research on whether Rule 45 subpoena may be served prior to Rule 26 conference and emails regarding same. | 0.5 | | 0.5 | |
| CGG Curling - Bruce Brown | 6/20/2018 | Extensive work drafting, revising and finalizing motion for issuance of subpoena and associated exhibits; emails to counsel; emails to D. Cross; multiple emails to M. Marks regarding same. | 3.1 | | 3.1 | |
| CGG Curling - Bruce Brown | 7/17/2018 | Review and analysis of motion to dismiss; review draft response and transmit edits and comments to R. McGuire; review file on motion for affidavit; work with M. Marks regarding same; draft, review, revise and file reply. | 3.4 | | 3.4 | |
| CGG Curling - Bruce Brown | 7/18/2018 | Review recent filings; review amicus brief; Prepare for and call with M. Marks, R. McGuire and C. Icther about whether to enjoin DRE machine use in December election. | 1.2 | | 1.2 | |
| CGG Curling - Bruce Brown | 7/19/2018 | Consider next steps in the litigation and email memo to M. Marks regarding same. | 1.2 | -1.2 | 0 | |
| CGG Curling - Bruce Brown | 7/19/2018 | Prepare for and telephone conference with M. Marks and co-counsel on timing of PI motion; review Defendant Kemp's press statements about security of election system. | 1 | | 1 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 7/23/2018 | Extensive telephone conferences with M. Marks, and then M. Marks and R. McGuire, about strategy in the case, specifics of remedy, whether to file a motion for a preliminary injunction; legal research on equitable relief; draft preliminary outline of motion. | 5.9 | | 5.9 | |
| CGG Curling - Bruce Brown | 7/24/2018 | Review Amicus Brief and study authorities for use in motion for a preliminary injunction; further work on motion; emails to M. Marks and R. Maguire about framing of requested relief and form of submission to the Court; further work on motion papers. | 4.1 | | 4.1 | |
| CGG Curling - Bruce Brown | 7/25/2018 | Work on motion papers; study South Carolina action; email to M. Manor; emails and telephone conversations with M. Marks about news reports and action to take in Georgia; emails about settlement possibilities with Sec. Kemp. | 3.2 | -1 | 2.2 | |
| CGG Curling - Bruce Brown | 7/26/2018 | Telephone call with C. Ichter and J. Salter (Salter aborted call); further work on ideas to settle the matter with C. Ichter and M. Marks; extensive work on motion papers. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 7/27/2018 | Work on motion papers; conference with M. Marks and C. Ichter; further extensive work on motion papers.  **January 2020 note: additional detail on conference with Marks and Ichter, which was no longer than 2 hours, is found in Ichter's time sheets at Doc. 632, page 145.** | 6.5 | -2 | 4.5 | |
| CGG Curling - Bruce Brown | 7/28/2018 | Further work on brief in support of motion for preliminary injunction; email memo to team regarding same; circulate draft brief | 4 | | 4 | |
| CGG Curling - Bruce Brown | 7/29/2018 | Extensive work on motion for preliminary injunction, including substantive conference call with M. Marks about motion, brief and evidence; review brief; review draft affidavits; consider Rule 65, Local Rules, and Court's Standing Order; draft motion itself; draft proposed order; legal research into argument about dollar cost to defendant of injunctive relief. | 5.5 | | 5.5 | |
| CGG Curling - Bruce Brown | 7/30/2018 | Review law on injunctive relief; extensive telephone conference with M. Marks and R. McGuire; further work on motion papers.  **Per R. McGuire entry: conference with M. Marks lasted 1.75 hours.** | 5 | -1.75 | 3.25 | |
| CGG Curling - Bruce Brown | 7/31/2018 | Work on declarations and further work on brief; numerous emails and phone calls about motion for preliminary injunction; further legal research on irreparable harm. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 8/1/2018 | Further work on preliminary injunction papers, including editing M. Bernhard declaration; reviewing R. Wilson declaration and email to her regarding same; review and edit D. Bower's declaration; prepare press statement (no more than .5 but 1 hour reduction); continued editing of motion papers. | 4.8 | -1 | 3.8 | |
| CGG Curling - Bruce Brown | 8/2/2018 | Further work on major declarations (Lamb, Bernhard, and others); further drafting of brief; additional legal research on irreparable harm; additional legal research on balancing of the equities and impact of cost upon defendants' equities; numerous telephone calls and emails with R. McGuire and M. Marks.  (Actual time 12 plus hours). | 8 | | 8 | 4 |
| CGG Curling - Bruce Brown | 8/3/2018 | Further substantial work revising and finalizing motion papers, including all declarations and exhibits thereto, brief, motion, and proposed order; numerous emails and telephone calls with R. McGuire and M. Marks regarding same; further editing, finalizing and filing papers. | 7.8 | | 7.8 | |
| CGG Curling - Bruce Brown | 8/5/2018 | Work on Open Records Act requests to defendants and others. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 8/6/2018 | Work following up to filing; work with clerk preparing submission to Judge Totenberg; work on Open Records Act requests; telephone calls with media; research Secretary Kemp's testimony before Congress blaming federal government for interference; further work on matter. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 8/7/2018 | Review Judge Totenberg's order and telephone calls and emails relating thereto to co-counsel and client; research about and email to Athens-Clarke County election officials; further extensive work on Open Records Act requests. | 4.9 | | 4.9 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 8/8/2018 | Work on declarations (.5); review Curling brief (.4); extensive work on Open Records requests and fact-gathering (2.4); telephone calls with media about case (.5) | 3.8 | | 3.8 | |
| CGG Curling - Bruce Brown | 8/9/2018 | Work on KSU and DOAS Open Records requests. | 0.9 | | 0.9 | |
| CGG Curling - Bruce Brown | 8/13/2018 | Follow up emails on Open Records Act; telephone conference with R. Maguire and M. Marks. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 8/14/2018 | Review and analysis of defendants' papers and circulate memorandum to team regarding same; email to SOS regarding Open Records Act request. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 8/15/2018 | Draft and revise introduction to Reply Brief; further work on legal research for Reply; numerous telephone calls and emails about strategy and Open Records Act requests; email to J. Salter; legal research on five day rule for Attorney General and injunctive relief. | 4.5 | | 4.5 | |
| CGG Curling - Bruce Brown | 8/16/2018 | Extensive work on Reply Brief; numerous telephone calls and emails about brief, Open Records requests, request for a hearing, and related matters. | 5.2 | | 5.2 | |
| CGG Curling - Bruce Brown | 8/17/2018 | Continued work on reply; telephone call with D. Cross; draft motion for hearing; extensive additional work on reply brief. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 8/18/2018 | Drafting reply brief. | 4 | | 4 | |
| CGG Curling - Bruce Brown | 8/19/2018 | Drafting reply brief; circulate first draft; re-write of "spoliation" section; emails regarding declarations. | 3.6 | | 3.6 | |
| CGG Curling - Bruce Brown | 8/20/2018 | Extensive work on Reply Brief, including extensive revisions; review and revisions of declarations; numerous telephone conferences; substantial work on finalization and filing of papers (actual time 14 plus hours). | 12.5 | | 12.5 | 1.5 |
| CGG Curling - Bruce Brown | 8/21/2018 | Email to R. Maguire about laches and other arguments; emails and telephone calls regarding strategy going forward. | 1.2 | | 1.2 | |
| CGG Curling - Bruce Brown | 9/4/2018 | Emails with R. McGuire and M. Marks about GOIA or notice to produce; review of court order about scheduling. | 0.2 | | 0.2 | |
| CGG Curling - Bruce Brown | 9/5/2018 | Work on plan for evidence submission at the hearing; multiple emails and telephone call about difference in relief between Curling Plaintiffs and Coalition Plaintiffs; conference call with D. Cross and team regarding same; emails with J. Salter about hearing;  consider whether to call Secretary Kemp as a witness. | 3.2 | | 3.2 | |
| CGG Curling - Bruce Brown | 9/6/2018 | Multiple telephone conferences with co-counsel and Curling counsel about what witnesses to call and subpoena and schedule for examination; extensive consideration of whether to call Secretary Kemp and review documents relating to Secretary Kemp's opposition to federal funding of election equipment improvement and his charge that DHS was hacking Georgia. | 3.8 | | 3.8 | |
| CGG Curling - Bruce Brown | 9/7/2018 | Emails to co-counsel and defendants' counsel about joint notice; revise, finalize and file joint notice; emails concerning and finalize subpoena;  conference call with R. Maguire and M. Marks about trial planning; telephone conference with M. Marks about evidence and testimony. | 3 | | 3 | |
| CGG Curling - Bruce Brown | 9/9/2018 | Conference call with M. Marks and continue preparation for the hearing; legal research on several issues; consider filing motion for appointment of special master; prepare cross-examination; email Dr. Stark and review and revise his declaration. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 9/10/2018 | Further preparation for hearing; review and edit declarations; meet with R. Maguire and M. Marks; email with C. Ichter about special master brief; draft and revise timeline (actual time 9 plus hours). | 7 | | 7 | 2 |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 9/11/2018 | Finalize and file declarations; intensive preparation for hearing; meet with expert C. DeMillo and assist in the preparation of his testimony; meet with M. Marks and R. Maguire; telephone conference with D. Cross; review W. Lee slides; prepare exhibits for hearing; prepare opening statement; legal research on various issues. | 9.3 | | 9.3 | |
| CGG Curling - Bruce Brown | 9/12/2018 | Additional substantial preparation for hearing; work on opening statement; attend hearing (date corrected). | 8 | | 8 | |
| CGG Curling - Bruce Brown | 9/13/2018 | With R. Maguire, draft, revise and file post-hearing brief and response to declaration of R. Sullivan. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 9/18/2018 | Review court order; draft and circulate strategy memo; numerous emails and telephone calls about order and next steps (2.4); meet with HBO film crew (not billed to client). | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 9/19/2018 | Draft initial motion for reconsideration; multiple conversations about appeal and next steps; emails with D. Cross about appeal and about discovery; review C. Hoke material; consider grounds for additional relief. | 3.3 | | 3.3 | |
| CGG Curling - Bruce Brown | 9/20/2018 | Extensive work on strategy and whether to file additional request for relief; telephone calls with R. Maguire, M. Marks; emails to D. Cross; emails and legal research about dangers of mootness. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 9/21/2018 | Multiple emails and telephone communications about request for status conference and strategy. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 9/24/2018 | Further study on strategy and next steps; telephone call with C. Hoke and M. Marks; substantial additional communications on importance of considering mootnesss. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 9/25/2018 | Extensive call with M. Marks about staffing and additional litigation (not billed); numerous calls and emails about whether and how to move for additional injunctive relief; emails to amici about whether to seek injunction of paper ballot audit; outine grounds for injunctive relief and circulate. | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 9/26/2018 | Extensive work on motion for additional injunctive relief; emails with amici; additional legal research; outline possible claims; work on requests for relief relating to audits. | 4.5 | | 4.5 | |
| CGG Curling - Bruce Brown | 9/27/2018 | Further extensive work drafting brief. | 4 | | 4 | |
| CGG Curling - Bruce Brown | 9/28/2018 | Continue drafting brief for circulation to team; emails with team about election results and turn-out metrics; consider email from Ms. Burgess and draft response; conference call with team; further drafting of motion. | 5.1 | | 5.1 | |
| CGG Curling - Bruce Brown | 9/29/2018 | Revise draft and circulate; call with M. Marks. | 2.6 | | 2.6 | |
| CGG Curling - Bruce Brown | 9/30/2018 | Extensive work on motion. | 6 | | 6 | |
| CGG Curling - Bruce Brown | 10/1/2018 | Substantial work on motion for additional relief; drafting brief and reviewing supporting documentation; numerous emails and phone calls with R. McGuire and M. Marks. | 5.4 | | 5.4 | |
| CGG Curling - Bruce Brown | 10/2/2018 | Draft and finalize motion papers; numerous emails and conference calls with M. Marks, R. McGuire, amici; further drafting and revision and finalization (actual time 10.5 plus). | 8 | | 8 | 2.5 |
| CGG Curling - Bruce Brown | 10/10/2018 | Emails and conferences relating to Court's minute order (.6); consider Defendants' motion to sever (.3). | 0.9 | | 0.9 | |
| CGG Curling - Bruce Brown | 10/11/2018 | Emails to D. Cross about severance; multiple emails about strategy and status conference. | 1.3 | | 1.3 | |
| CGG Curling - Bruce Brown | 11/3/2018 | Substantial work relating to cyber-vulnerability of State's election system, including telephone discussion with M. Marks and R. DeMillo; draft email to J. Salter. | 1 | | 1 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 11/4/2018 | Multiple emails and telephone conversations with press (NY Times, WaPo, and NPR),  client, D. Cross, R. Barnes about notification of vulnerability of the system | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 11/5/2018 | Multiple emails and telephone conversations about Secretary's claim that Democrats hacked the DRE system with NY Times, Washington Post, NPR, Roy Barnes, | 2.2 | | 2.2 | |
| CGG Curling - Bruce Brown | 11/7/2018 | Numerous telephone calls and emails about defendants' preservation duties after the election; emails and telephone calls with R. Shahar, pollwatcher, about election irregularies. | 1.8 | | 1.8 | |
| CGG Curling - Bruce Brown | 11/14/2018 | Conference with M. Marks regarding next steps (1.5, only .5 billed); work on CA11 appeal (2.2 not billed) | 0.5 | | 0.5 | |
| CGG Curling - Bruce Brown | 11/15/2018 | Telephone conference with M. Marks and R. McGuire about next steps to preserve evidence; email to M. Marks about R. DeMillo's declaration. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 11/16/2018 | Review R. DeMillo declaration and extensive email to team regarding same; extensive telephone call with M. Marks about next steps; work on motion to preserve evidence. | 3.8 | | 3.8 | |
| CGG Curling - Bruce Brown | 11/19/2018 | Further work considering continued spoliation of  DRE machines and preventative action; draft brief to this effect; consider whether Court likely to grant same; discuss alternatives with M. Marks; further work on brief and consider whether "sampling" alternative should be entire "ask". | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 11/19/2018 | Reconsider additional motion; discussions with M. Marks about Court Order regarding discovery and preservation; review and revise M. Marks' draft notification to J. Salter et al. regarding preservation and numerous discussions regarding same; finalize same. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 11/20/2018 | Additional work on preservation and spoliation issue; consider alternatives with M. Marks; multiple emails to J. Salter about State Rule requiring 30 day hold on DREs. | 1.8 | | 1.8 | |
| CGG Curling - Bruce Brown | 11/30/2018 | Telephone conferences with R, McGuire about whether to brief legislative immunity and respond to D. Cross emails regarding same. | 0.8 | | 0.8 | |
| CGG Curling - Bruce Brown | 12/12/2018 | Telephone conference with L. Bryan and J. Chandler about Fire Fight litigation and the Curling case. | 0.4 | | 0.4 | |
| CGG Curling - Bruce Brown | 1/30/2019 | Review briefs relating to CA11 appeal and attend oral argument (1.8 not billed); conference with M. Marks and R. McGuire after hearing to consider necessity of filing motion to preserve evidence or to initiate discovery. | 0.5 | | 0.5 | |
| CGG Curling - Bruce Brown | 1/31/2019 | Conference with M. Marks and R. McGuire about strategy for discovery and further study of race-targeted malware. | 0.4 | | 0.4 | |
| CGG Curling - Bruce Brown | 2/8/2019 | Review and analysis of Court of Appeals' decision; review Judge's orders regarding when case stops being stayed. | 0.8 | | 0.8 | |
| CGG Curling - Bruce Brown | 2/11/2019 | Work on discovery; prepare interrogatories and document requests; telephone calls and emails about scope of discovery and other procedural issues. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 2/12/2019 | Extensive telephone call with J. Chanlder about strategy; legal research on "mandate"; telephone conference with M. Marks about whether to initiate dicovery before "mandate", preservation issues, status of old motion for additional injunctive relief. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 2/13/2019 | Conference with M. Marks on discovery. | 0.5 | | 0.5 | |
| CGG Curling - Bruce Brown | 2/15/2019 | Telephone conference with M. Marks and R. McGuire about strategy, including possibility of mootness and timing of discovery launch. | 0.3 | | 0.3 | |
| CGG Curling - Bruce Brown | 2/17/2019 | Review and revise letter to V. Russo and B. Tyson regarding BMDs. | 0.7 | | 0.7 | |
| CGG Curling - Bruce Brown | 2/18/2019 | Review and revise letter to V. Russo and B. Tyson regarding BMDs. | 1.4 | | 1.4 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 3/20/2019 | Consider expedited discovery in advance of mandate, legal research about discovery timing, emails regarding same (1.5); outline and draft strategy memo for litigation and transmit to R. McGuire. | 2.3 | | 2.3 | |
| CGG Curling - Bruce Brown | 3/21/2019 | Multiple emails and telephone calls about planning and scheduling the "meet and confer" with defendants' counsel (1.2); consider drafting demand letter outlining claims (.5). | 1.7 | | 1.7 | |
| CGG Curling - Bruce Brown | 3/22/2019 | Emails with opposing counsel about meet and confer (.2); work on demand letter and emails with team regarding same (.8). | 1 | | 1 | |
| CGG Curling - Bruce Brown | 3/23/2019 | Further work on demand letter; multiple communications with M. Marks about new legislation, BMDs, auditability and mechanics. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 3/24/2019 | Finalize demand letter to Russo and others. | 1.8 | | 1.8 | |
| CGG Curling - Bruce Brown | 3/25/2019 | Emails about discovery. | 0.2 | | 0.2 | |
| CGG Curling - Bruce Brown | 3/26/2019 | Draft Request for Production of Documents to Secretary Raffensperger (for GEMS database) and circulate to R. McGuire and M. Marks; emails to V. Russo about upcoming elections schedule. | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 3/27/2019 | Finalize and circulate discovery; telephone calls about discovery with B. Tyson and, separately, K. Burwell. | 1.1 | | 1.1 | |
| CGG Curling - Bruce Brown | 3/28/2019 | Telephone conferences with M. Marks about, and then telephone conference with D. Cross and C. Chappel. | 2.3 | -2.3 | 0 | |
| CGG Curling - Bruce Brown | 3/29/2019 | Review rules on third-party discovery; draft notice of third-party discovery; emails to M. Marks regarding same. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 4/1/2019 | Draft, revise and finalize substantive letter to V. Russo concerning fundamental problems with the BMDs (1.5); prepare for "meet and confer" conference with Defendants' counsel, and communications with C. Chappel regarding same (1.0); conference call with opposing counsel and follow-up thereto (.6). | 3.1 | | 3.1 | |
| CGG Curling - Bruce Brown | 4/2/2019 | Work drafting Status Report for the Court; email to V. Russo about election schedule; email about expert opinions on BMDs; further work on status report. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 4/4/2019 | Prepare for hearing; draft memo on BMDs; review file; telephone call with D. Cross and C. Chapple; draft discovery. | 5.5 | | 5.5 | |
| CGG Curling - Bruce Brown | 4/6/2019 | Work on status report (1.9); extensive telephone conference with M. Marks about status report and litigation plan (1.0). | 2.9 | | 2.9 | |
| CGG Curling - Bruce Brown | 4/7/2019 | Work on status report, schedule and preparation for hearing. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 4/8/2019 | Additional work on status report. | 1.1 | | 1.1 | |
| CGG Curling - Bruce Brown | 4/9/2019 | Substantial revisions to status report (2.5); emails and telephone calls with Curling team regarding Status Report and planned schedule (.5); further preparation for hearing and conference with M. Marks (.5); revise and file Status Report (1.5); travel to and from hearing, attend hearing and conference after hearing (2.5). | 7.5 | | 7.5 | |
| CGG Curling - Bruce Brown | 4/12/2019 | Review defendants' response to status report; telephone call with M. Marks regarding same; telephone call with D. Cross about response and proposing our own schedule; review and revise draft schedule. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 4/15/2019 | Finalize third-party discovery to Morgan County; telephone call to C. Henry (outside counsel to Morgan County) regarding same; review 30b6 topic list; meet with M. Marks about discovery.i | 2.8 | | 2.8 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 4/17/2019 | Emaiil to Morrison Foerster about timing of filing of preliminary injunction and communications with client regarding same. | 0.2 | | 0.2 | |
| CGG Curling - Bruce Brown | 4/18/2019 | Work on amended motion for preliminary injunction; draft and revise outline with M. Marks; email to D. Cross about single brief; emails about scope of relief. | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 4/22/2019 | Review Appel paper (cost split with election contest case). | 0.3 | | 0.3 | |
| CGG Curling - Bruce Brown | 4/24/2019 | Review, analysis and revision of affidavit of A. McReynolds and transmit comments with extensive email to M. Marks; email to D. Cross regarding same. | 1.6 | | 1.6 | |
| CGG Curling - Bruce Brown | 5/2/2019 | Review Curling brief; multiple emails with team about next steps; consider State Defendants' motion to quash and response to it; conference with M. Marks. | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 5/13/2019 | Review draft brief in support of MPI from MoFo ; draft extensive email to D. Cross about differences in relief sought; further work on matter. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/14/2019 | Draft and file brief in response to motion to quash; extensive work on proposed brief; numerous communications with M. Marks and D. Cross. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 5/15/2019 | Draft, revise and circulate motion to open discovery and proposed order. | 2 | | 2 | |
| CGG Curling - Bruce Brown | 5/15/2019 | Further work on motion to open discovery; numerous emails and telephone calls with M. Marks and D. Cross regarding same; finalize motion and file. | 3.5 | -2.5 | 1 | |
| CGG Curling - Bruce Brown | 5/16/2019 | Substantial work on proposed remedy and emails with team about Curling's approach regarding scanners. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/18/2019 | Work on proposed relief; emails with D. Cross and M. Marks. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 5/19/2019 | Work on proposed remedy; draft extensive email to D. Cross explaining need to specify scanner; follow up emails. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 5/20/2019 | Review and edit affidavits; emails with D. Cross about proposed relief; continued work on brief. | 4.2 | | 4.2 | |
| CGG Curling - Bruce Brown | 5/21/2019 | Substantial email to MoFo on CGG's briefing, including summary of new sections and recommendation that CGG file separate brief; review Judge Totenberg's Order; further substantial work on subpoenas and discovery. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 5/22/2019 | Draft new subpoena for Morgan County and subpoena for Rockdale County and work with T. Greenwald regarding service; telephone conference with D. Cross and C. Chapple; telephone calls and emails regarding conference with the court. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 5/23/2019 | Prepare for and meet with The Lawyers' Committee about strategy and planning for the case. | 5.5 | | 5.5 | |
| CGG Curling - Bruce Brown | 5/24/2019 | Prepare for and participate in telephone conference with Judge Totenberg (1.0); extensive follow up discussions with co-counsel (.5); emails and telephone discussion with M. Marks about next steps and substance of follow up brief on necessary parties (1.9); work on brief (1.0). | 4.4 | | 4.4 | |
| CGG Curling - Bruce Brown | 5/25/2019 | Work on analysis of proper party defendants. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 5/26/2019 | Work on brief in support of motion for preliminary injunction (1.5); work on issue of proper parties, including numerous emails with M. Marks about her knowledge of Georgia procedure and election rules. | 3 | | 3 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 5/27/2019 | Further work on outline of brief in support for motion for preliminary injunction and communications with M. Marks regarding same; work on discovery plan; extensive work on "proper parties" brief. | 3.8 | | 3.8 | |
| CGG Curling - Bruce Brown | 5/28/2019 | Further work preliminary injunction brief, particularly ballot secrecy issue (3.5); substantial work completing, revising, editing, and finalizing brief regarding proper parties, including review of J. Powers' edits and comments (3.0). | 6.5 | | 6.5 | |
| CGG Curling - Bruce Brown | 5/29/2019 | Finalize and file brief on proper parties (.5); extensive work on planning for conference with Judge Totenberg, including additional filings and scheduling changes; emails to MoFo about schedule change. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 5/30/2019 | Email to team about lawyers-only meeting with the Court and how to address CGG's changes to the schedule with MoFo and the Court (.8); draft email to M. Marks regarding same (.3); draft email to D. Cross regarding same (.2); review cases on ballot secrecy (.5). | 1.8 | | 1.8 | |
| CGG Curling - Bruce Brown | 5/31/2019 | Work with team to prepare for conference with Judge Totenberg (.5); work on ballot secrecy issues (.8); review Curling MPI and extensive analysis of same and memo to team regarding same (1.5). | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 6/1/2019 | Communications with M. Marks and team about conference with Judge Totenberg (.8); legal research on anonymous ballot (2.5); finalize memo (section of brief) addressing ballot secrecy. | 4.1 | | 4.1 | |
| CGG Curling - Bruce Brown | 6/4/2019 | Review substantial number of emails from Mr. Martin, Deputy Clerk, State Defendants, M. Marks, D. Cross, C. Ichter, E. Rozenberg on: service of document requests; 30b6 depositions; scheduling of the preliminary injunction hearing; and further work on the motion for preliminary injunction; email exchange with D. Cross; email to Mr. Martin. | 4 | | 4 | |
| CGG Curling - Bruce Brown | 6/5/2019 | Prepare for telephone call with team on discovery; review Judge Totenberg's standing order on protective orders and discovery disputes; review outline of brief; emails with R. McGuire about ballot secrecy section; participate in conference call with J. Powers and team on discovery. | 2.2 | | 2.2 | |
| CGG Curling - Bruce Brown | 6/6/2019 | Review discovery plan and emails with team regarding same. | 0.8 | | 0.8 | |
| CGG Curling - Bruce Brown | 6/7/2019 | Work on motion for preliminary injunction brief outline (.8); work on discovery to defendants on unique identifiers (.4); review and edit A. McReynolds declaration (.5); review and edit C. Hoke declaration and email to C. Hoke (.6); emails regarding discovery conference and M. Marks attendance (.3). | 2.6 | | 2.6 | |
| CGG Curling - Bruce Brown | 6/8/2019 | Review and revise interrogatories to Defendants on undervotes and unique identifiers (.8); emails about discovery conference and strategy (.7). | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 6/9/2019 | Review transcript of Judge Totenberg's hearing on discovery and email to client regarding implication of same on scope of relief and presentation (.7); work on order of proof (1.3); work on V. Martin declaration and emails regarding same (.6). | 2.6 | | 2.6 | |
| CGG Curling - Bruce Brown | 6/10/2019 | Prepare discovery plan and further work on order of proof (4.1); email about protective order (.2); work on discovery of GEMS database and unique identifiers and prepare for Rule 26 conference (3.8); attend Rule 26 conference and follow-up work relating thereto (1.5). | 9.6 | | 9.6 | |
| CGG Curling - Bruce Brown | 6/11/2019 | Continual work on the case including emails with K. Anderson about protective order; email about M. Barnes deposition scheduling; work drafting, editing and finalizing RPDs to the State Defendants; draft and edit Bartow County subpoena; work on race-based claims with the Lawyers' Committee; emails to V. Russo about new system implementation; further work on discovery (actual time over 9 hours). | 8 | | 8 | 1 |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 6/11/2019 | Emails about and extensive telephone conference with M. Marks about spoliation claim and related discovery (2.5); draft and revise discovery relating thereto; extensive work on potential amendments; further work on matter. | 4.4 | | 4.4 | |
| CGG Curling - Bruce Brown | 6/12/2019 | Further continuing work on all aspects of case, including outlining brief in support of motion (2.9); work on protective order (.4); emails about discovery to Bartow and Rockdale counties (.4); draft and revise subpoena to counties (.2); emails about Barnes and Barron depositions and related issues (.8); revise requests to admit (.5); multiple communications about State's refusal to disclose information on new system implementation (1.0). | 6.2 | | 6.2 | |
| CGG Curling - Bruce Brown | 6/13/2019 | Work on joint discovery plan (1.5); extensive communications with client about protective order terms (1.3); communications about Barron and Barnes depositions (.5); continue work on declarations in support of brief and brief (3.1). | 6.4 | | 6.4 | |
| CGG Curling - Bruce Brown | 6/14/2019 | Substantial work on brief; work on proposed discovery plan; work on discovery to counties; emails to V. Russo about depositions; review draft discovery dispute statement (actual time 9 plus). | 8.5 | | 8.5 | 0.5 |
| CGG Curling - Bruce Brown | 6/15/2019 | Further work on brief; work on C. Hoke declaration and emails regarding same; draft introductory paragraph. | 5.8 | | 5.8 | |
| CGG Curling - Bruce Brown | 6/16/2019 | Work on brief; further work on declarations; extensive work on argument relating to undervote in African American precincts; draft discovery plan and circulate to the Lawyers' Committee team and to M. Marks; further work on matter. | 4.2 | | 4.2 | |
| CGG Curling - Bruce Brown | 6/17/2019 | Continual work on motion for preliminary injunction, including working on Lt. Governor section of the brief; considering pre-filing evidence; work with C. Hoke on declaration; email to Fulton County counsel; work on secret ballot section of the brief; further work on discovery plan; email to C. Miller for GEMS database production (actual time 9 plus). | 7 | | 7 | 2 |
| CGG Curling - Bruce Brown | 6/18/2019 | Further work on all matters in the case, including protective order, GEMS discovery dispute, declaration of C. Hoke, drafting electronic pollbooks  section of the brief; numerous communications with opposing counsel and clients; prepare substantial pre-filing evidence. | 8.6 | | 8.6 | |
| CGG Curling - Bruce Brown | 6/19/2019 | Finalize pre-filing of evidence; continue working on brief; review submission on discovery dispute and emails to D. Brody and M. Marks regarding same; conference call with Defendants' counsel on GEMS database; further work on brief. | 6.4 | | 6.4 | |
| CGG Curling - Bruce Brown | 6/20/2019 | Substantial work on brief, inclding drafting major sections and editing others, and multiple communications with Lawyers' Committee, M. Marks; further major revisions (actual time 10 plus). | 6 | | 6 | 4 |
| CGG Curling - Bruce Brown | 6/21/2019 | Substantial work finalizing and filing brief; draft and revise proposed order and motion; substantial discussion wit E. Rosenberg and team about ballot secrecy issue; finalize and file brief (actual tie 12.5 plus). | 10.8 | | 10.8 | 1.7 |
| CGG Curling - Bruce Brown | 6/22/2019 | Outline topics for Ledford and Barnes deposition; numberous emails with team to plan discovery. | 1.2 | | 1.2 | |
| CGG Curling - Bruce Brown | 6/23/2019 | Draft and circulate emails on upcoming discovery; emails to Curling team regarding depositions; email to D. Brody about protective order status. | 1.2 | | 1.2 | |
| CGG Curling - Bruce Brown | 6/24/2019 | Draft and circulate email to B. Tyson about L. Ledford deposition; email to D. Brody and then Curling about protective order; conference call with Defendants' counsel regarding protective order; conference with M. Marks to plan discovery and hearing preparation; email to J. Powers about initial disclosures. | 5.5 | | 5.5 | |
| CGG Curling - Bruce Brown | 6/25/2019 | Draft and revise substantive email to C. Correia about FBI's image of elections.kennesaw.edu server; substantial preparation for Barnes deposition; work on discovery disputes. | 3.8 | | 3.8 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 6/26/2019 | Letter to Judge Totenberg; prepare for Barnes deposition; substantial work relating to subpoenas to counties. | 4.5 | | 4.5 | |
| CGG Curling - Bruce Brown | 6/27/2019 | Prepare for and take M. Barnes deposition; prepare for J. Doran deposition. | 9 | | 9 | |
| CGG Curling - Bruce Brown | 6/28/2019 | Prepare for J. Doran deposition; travel to Athens; take J. Doran deposition; conference call hearing with Judge Totenberg about GEMS discovery; travel to Atlanta (actual time 9 plus). | 8 | | 8 | |
| CGG Curling - Bruce Brown | 6/29/2019 | Work on GEMS discovery brief; emails with D. Cross and M. Marilyn about server and database issues; address issue of why clients, not just experts, need to see database; emails with D. Brody about brief; conference call with A. Halderman and M. Bernhard about GEMS database issues. | 4.8 | | 4.8 | |
| CGG Curling - Bruce Brown | 6/30/2019 | Work on GEMS database discovery brief. | 2 | | 2 | |
| CGG Curling - Bruce Brown | 7/1/2019 | Work on GEMS brief; edit D. Brody draft and transmit to D. Cross; review D. Cross and A. Halderman edits (4.8); emails to J. Power and M. Marks about pending discovery issues (.9); email to C. Ichter about spoliation (.5); email to team and D. Cross about M. Beaver deposition and other discover issues (.5). | 6.7 | | 6.7 | |
| CGG Curling - Bruce Brown | 7/2/2019 | Review Judge Jones' opinion in Fair Fight case and email to team, and D. Cross, regarding same; telephone discussion with J. Powers about initial disclosures; conference call with Fair Fight about common interests; telephone calls with counsel representing third party churches; review Judge Totenberg's decision on discovery and multiple discussions over email and telephone about how to respond with clients, Curling and experts. | 6.5 | | 6.5 | |
| CGG Curling - Bruce Brown | 7/3/2019 | Work on Plaintiffs' Proposal Regarding Security Protocols for Review of GEMS Database, including drafting with Curling team, multiple discussions with experts and clients. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 7/4/2019 | Work on supplemental pleading on W. Digges; numerous communications about protective order with M. Marks and D. Brody; numerous emails with M. Marks about protective order terms; emails about ES&S contract and contractors. | 5.5 | | 5.5 | |
| CGG Curling - Bruce Brown | 7/5/2019 | Work on GEMS discovery dispute, including emails and telephone calls with defendants, D. Cross and M. Marks; prepare, revise and serve subpoena to ES&S and emails to defendants regarding same; emails and telephone calls regarding A. Halderman deposition; telphone call with defendant laywers; prepare filing regarding Digges. | 5.8 | | 5.8 | |
| CGG Curling - Bruce Brown | 7/6/2019 | Substantial work on GEMS discovery issues; planning for Bartow County deposition, including possibility of witness bringing a DRE machine; emails with J. Belinfante about discovery to third-party churches. | 3.8 | | 3.8 | |
| CGG Curling - Bruce Brown | 7/7/2019 | Work on discovery of Bartow County (.2); substantial work on reply brief relating to GEMS discovery, including multiple conferences with M. Marks and D. Cross and team; draft and revise brief; email to C. Ichter about spoliation brief and theory; draft proposed order on GEMS and transmit to D. Cross. | 5.8 | | 5.8 | |
| CGG Curling - Bruce Brown | 7/8/2019 | Substantial work on GEMS discovery, including Phase I document discovery, including drafting briefs, emails, proposed orders, and planning conference calls; emails with D. Cross on Shamos and Halderman discovery; substantial work on discovery to third party churches. | 8.8 | | 8.8 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 7/9/2019 | Continued work on GEMS discovery, including preparation for call with defense counsel, preparation of brief for filing on Phase I documents, numerous telephone conversations with D. Cross, M. Marks, M. Bernhard and A. Halderman (4.5); work on responses to third party subpoenas, including calls to Fair Fight and Common Cause lawyers and consideration of filing a motion to quash (1.5); further work on discovery to third parties (1.6); review Judge's order on GEMS discovery and emails and telephone calls about how to execute (1.1. | 8.7 | | 8.7 | |
| CGG Curling - Bruce Brown | 7/10/2019 | Draft, revise and circulate substantive email to defendants on terms of the proposed protective order, including First Amendment objection to retroactivity provision (1.2); emails about M. Bernhard deposition (.3); multiple emails and calls about plans for DB review and clarification of the Court's order, and non-confidential data extraction (2.5); review State's "mootness" brief (Doc. 466) and multiple emails and telephone conversations about planned response, including working with C. Chapple and D . Cross to draft, revise and file Doc. 470, Plaintiffs' Response to Minute Order (2.8); review Defendants' response brief and substantive email to team about the reply (1.5); draft response to V. Russo's suggestion that hearing needs to be delayed so that Dr. Shamos can be ready for his deposition (.1). | 8.4 | | 8.4 | |
| CGG Curling - Bruce Brown | 7/11/2019 | Review Defendants' Brief in Response to Motion for Preliminary Injunction and start work on reply; email regarding elections at issue; email to J. Belinfante regarding spoliation; prepare for and teleconference with Judge Totenberg on Phase I GEMS data dispute; email to D. Cross about expert review at Ann Arbor; multiple calls with A. Halderman, M. Marks, D. Cross etc. about document extraction; draft, revise and submit operative command language to Ms. Cole; participate in conference call and follow up thereto; extensive work with Curling team on protocol for GEMS database review and extraction; detailed email to M. Bernhard and R. Wilson regarding protocols (actual time 9 plus; 8.2 billed); review and edit motion to quash subpoena to third party churches (1.2). | 9.4 | | 9.4 | 1.2 |
| CGG Curling - Bruce Brown | 7/12/2019 | Work on reply brief, including telephone calls with all counsel and M. Marks; circulate list of tasks; begin drafting section on municipal elections and what's at stake; emails with A. McReynolds about her testimony; emails with C. Ichter about spoliation; emails with L. Bryan about witnesses on voting problems. | 8.5 | | 8.5 | |
| CGG Curling - Bruce Brown | 7/13/2019 | Communications with M. Bernhard and D. Cross about Defendants' misrepresentations as to how unique the Georgia GEMS database is (.7); work on reply brief (4.9). | 5.6 | | 5.6 | |
| CGG Curling - Bruce Brown | 7/14/2019 | Extensive work on GEMS extraction protocols, including numerous telephone calls and emails with D. Cross, A. Halderman, M. Bernhard and M. Marks, and emails to Defendants' counsel about issues to be resolved per Court's instructions on July 15 or submitted to the Court for determination (4.1); emails and telephone calls about Barnes deposition (.8); emails about Curling and Coalition remedies (1.5); work on reply brief, including ADA section, spoliation section, impact on municipalities, implementation section, and other sections of the brief (3.8 billed, actual time 5 plus). | 10.2 | | 10.2 | 1.2 |
| CGG Curling - Bruce Brown | 7/15/2019 | Draft response to document requests and start responses to interrogatories (1.1); prepare for and participate in call with defense counsel on GEMS discovery and follow up conversation with Curling lawyers regarding same (1.5); work on reply, including ballot secrecy, implementation, and all other sections (6.0 billed, actual time 8.5 plus). | 8.6 | | 8.6 | 2.5 |
| CGG Curling - Bruce Brown | 7/16/2019 | Further work on reply brief (actual time 12 plus). | 11 | | 11 | 1 |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 7/17/2019 | Work on witness list and time of testimony with M. Marks and D. Cross (2.1); work on response to document requests and interrogatories (1.5); work on corrective notice of filing (.5, actual time 1.3); work on reply brief (7.5, actual time 9.5). | 11.6 | | 11.6 | 2 |
| CGG Curling - Bruce Brown | 7/18/2019 | Draft major sections of Reply Brief; review and edit entire draft; finalize and file (6.4); further work on case, including letter to Judge Totenberg, telephone calls about witnesses and Dr. Shamos, work on interrogatory responses; prepare for hearing (3.3). | 9.7 | | 9.7 | |
| CGG Curling - Bruce Brown | 7/19/2019 | Email to J. Belinfante about defendants' discovery requests to Ebenezer church and others; review joint discovery statement on third party discovery; review and analysis of Curling reply brief; consider plaintiffs' remedies and email to D. Cross regarding issues and remedies; work planning the hearing and outlining testimony. | 5.5 | | 5.5 | |
| CGG Curling - Bruce Brown | 7/20/2019 | Prepare for hearing, including telephone conference with J. Power and M. Marks about witnesses; numerous emails with J. Belinfante about production of RFP documents; numerous communications with D. Cross about how to approach remedies (3.8); mutliple emails and telephone calls about public media attacks on State's position (not billed). | 3.8 | | 3.8 | |
| CGG Curling - Bruce Brown | 7/22/2019 | Prepare for hearing. | 11.8 | | 11.8 | |
| CGG Curling - Bruce Brown | 7/23/2019 | Prepare for hearing (actual time 13 plus). | 11 | | 11 | 2 |
| CGG Curling - Bruce Brown | 7/24/2019 | Prepare for hearing (actual time 13 plus). | 11 | | 11 | 2 |
| CGG Curling - Bruce Brown | 7/25/2019 | Prepare for first day of preliminary injunction hearing; attend hearing; prepare for second day of preliminary injunction hearing (actual time 14 plus). | 12 | | 12 | 2 |
| CGG Curling - Bruce Brown | 7/26/2019 | Prepare for day two of injunction hearing; attend injunction hearing (actual time 15.5). | 14 | | 14 | 1.5 |
| CGG Curling - Bruce Brown | 7/29/2019 | Review State's announcement on new contract; multiple communications about potential response; draft response brief and emails about content; draft section on why these BMDs violate Georgia law; draft section on why Coalition's remedy is the only feasible and constitutional alternative. | 4.6 | | 4.6 | |
| CGG Curling - Bruce Brown | 7/30/2019 | Revise and finalize brief in response to State's announcement (3.2); telephone calls and emails about State's misleading video (.5); review State's response on spoliation and emails regarding our reply (1.5). | 5.2 | | 5.2 | |
| CGG Curling - Bruce Brown | 7/31/2019 | Work on spoliation reply brief with C. Ichter; review record for determination of status of non-confidential document extraction and emails to D. Cross regarding same. | 2.2 | | 2.2 | |
| CGG Curling - Bruce Brown | 8/1/2019 | Work on spoliation reply brief, including editing C. Ichter draft and emails regarding same; factual research relating to M. Barnes' statements; further work on draft. | 2.9 | | 2.9 | |
| CGG Curling - Bruce Brown | 8/2/2019 | Emails about transcript distribution; work on protocol for GEMS database extraction to non-experts; circulate draft protocol; emails to M. Marks regarding same; transmit to D. Cross and then to B. Tyson. | 2.3 | | 2.3 | |
| CGG Curling - Bruce Brown | 8/3/2019 | Emails to Defendants about extraction protocol. | 0.1 | | 0.1 | |
| CGG Curling - Bruce Brown | 8/7/2019 | Emails regarding extraction protocol for GEMS databases (.8); extended conference with team about next steps on GEMS, BMDs, certification, discovery, etc. (1.5); follow up on third-party discovery to KSU and ES&S with the LC (.7). | 3 | | 3 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 8/7/2019 | Review and edit Curling objection to Secretary's attempt to keep GEMS data under seal (.5); review email from Judge Totenberg, via H. Cole and, with M. Marks, review record and transcript for proper response, draft and revise email to H. Cole (.8). | 1.3 | | 1.3 | |
| CGG Curling - Bruce Brown | 8/8/2019 | Numerous communications concerning FBI's delivery of image of wiped KSU server. | 0.8 | | 0.8 | |
| CGG Curling - Bruce Brown | 8/11/2019 | Emails to M. Marks about AEO material, protective order, and GEMS database discovery. | 0.9 | | 0.9 | |
| CGG Curling - Bruce Brown | 8/13/2019 | Telephone conference with M. Marks and R. Maguire about confidential matters relating to FBI server.; review emails; further work on matter. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 8/15/2019 | Review Judge Totenberg's Order granting motion for preliminary injunction in part; numerous telephone calls about decision and next steps; further review of order; review emails about sanctions. | 3 | | 3 | |
| CGG Curling - Bruce Brown | 8/17/2019 | Fee application: review authorities; review Judge Totenberg's decision on fees in the Mural Case; review Supreme Court cases on enhancement; draft extensive memo to team on preparing fee application; review Local Rule provisions on two-phased motions; further work on fee application issues. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 8/18/2019 | Review de-certification petition; emails with D. Cross about discovery motion; emails about whether to submit de-certification petition to the Court. | 1.5 | | 1.5 | |
| CGG Curling - Bruce Brown | 8/21/2019 | Work on fee petition, including emails to other counsel and legal research (1.5); consider motion for clarification or status conference regarding implementation issues (.8). | 2.3 | | 2.3 | |
| CGG Curling - Bruce Brown | 8/22/2019 | Work on motion for fees, including legal research on entitlement. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 8/23/2019 | Motion for fees: further legal research and drafting of motion; extensive telephone discussion with M. Marks on fees; email to counsel about fees; email to counsel about enhancement (3.5); work on discovery, FBI server, and other issues, including motion for clarification (.9). | 4.4 | | 4.4 | |
| CGG Curling - Bruce Brown | 8/26/2019 | Draft, revise and circulate draft status report; review edits, revise, and file; substantial revisions to Joint Discovery statement on FBI Server and then revise same and circulate. | 4.7 | | 4.7 | |
| CGG Curling - Bruce Brown | 8/27/2019 | Revise and circulate Motion for Fees (2.5); prepare for and participate in conference call with Judge Totenberg and follow up thereto (2.0); emails to team and to D. Cross about motion for fees (.5); draft reply brief on issue of discovery of FBI Image (.2). | 5.2 | | 5.2 | |
| CGG Curling - Bruce Brown | 8/28/2019 | Further work on Motion for Fees, including consideration of enhancement and fees for successful defense of appeal; telephone call with M. Marks and team on expenses, rates and fees; review and circulate brief (3.7). | 3.7 | | 3.7 | |
| CGG Curling - Bruce Brown | 8/29/2019 | Edit and finalize fee petition, including collecting rates and hours from each firm, assessing resonble expenses, and tabulating and circulating for review total figures; revise, circulate, edit and file brief (3.5); other work on matter, including review of numebous email on discovery and pending motions (.8); telephone conference with M. Marks about strategy and next steps (.5). | 4.8 | | 4.8 | |
| CGG Curling - Bruce Brown | 8/30/2019 | Work on fee substantiation and documentation, including emails regarding selection of expert witness (.5); extensive work on joint brief about server discovery, including review and revision of brief and R. Wilson declaration, and multiple emails or telephone calls with R. Wilson, A. Halderman, M. Marks, D. Cross and A. Uhler (3.1). | 3.6 | | 3.6 | |
| CGG Curling - Bruce Brown | 9/1/2019 | Draft and revise memorandum on unconstitutionality of presumption of validity of election results and circulate to R. McGuire and M. Marks. | 1.5 | | 1.5 | |

| | Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | F | G |
| 230 | CGG Curling - Bruce Brown | 9/2/2019 | Extensive discussion with M. Marks about North Carolina situation (.5 not billed); review strategy and priorities in Curling, including how and when to advance clarification or reconsideration of injunctive relief (.7); work on priorities and review emails about sanctions and other issues (.4). | 1.1 | | 1.1 | |
| 231 | CGG Curling - Bruce Brown | 9/4/2019 | Multiple communications following up on proposed changes to Judge Totenberg's Order to address First Quarter 2020 elections, use of GEMS, and epollbook changes, including emails and calls to B. Tyson, M. Marks, V. Russo, D. Cross, and revise proposed proposed order (2.3); review and revise motion for sanctions (1.5). | 3.8 | | 3.8 | |
| 232 | CGG Curling - Bruce Brown | 9/5/2019 | Multiple communications about whether and how to clarify order to ensure Defendants' compliance with objective of developing a real backup plan; prepare for conference with defendants; telephone "meet and confer" with Defendants' counsel; emails with D. Cross and CGG team regarding same; extended telephone calls with CGG team about next steps and shape of motion to reconsider (actual time 4.4; reduced to 2). | 2 | | 2 | |
| 233 | CGG Curling - Bruce Brown | 9/6/2019 | Substantial work on the supplemental complaint, including reviewing drafts, emails with M. Marks and R. McGuire, revisions to supplemental complaint, researching document evidence; review and revise motion for leave; further work on all papers, finalize and file (8; actual time 9 plus, not billed); emails about Defendants' filings under seal (.2). | 0.2 | | 0.2 | |
| 234 | CGG Curling - Bruce Brown | 9/7/2019 | Review and analysis of State's Response Brief on GEMS discovery; forward same to M. Marks; email to counsel about unsealing the brief (.6); extensive conference with M. Marks about implementation of injunctive relief, problems with pilot, issues with certification and other obstacles that the State will face, and to ensure State complies with the Order (2.0); conference with M. Marks on Supplemental Complaint, BMDs, Martin fees and the LC, and related issues (1.0) (1.0 not billed). | 2.6 | | 2.6 | |
| 235 | CGG Curling - Bruce Brown | 9/8/2019 | Further work on motion for sanctions; review M. Marks' edits and further revisions; transmit to D. Cross (1.8); work on fee application, including legal research and emails about fee experts (.8). | 4.6 | | 4.6 | |
| 236 | CGG Curling - Bruce Brown | 9/9/2019 | Draft outline of motion for reconsideration/regarding implementation; telephone calls and research regarding Rule 59(e) option (2.3); telephone calls and emails regarding potential fee experts (.2). | 2.5 | | 2.5 | |
| 237 | CGG Curling - Bruce Brown | 9/10/2019 | Work on Rule 59(e) motion and brief, including drafting the motion, legal research on types of relief appropriate under Rule 59(e), plaintiffs' right to monitor, and Rule 59(e) standards; start drafting brief (3.4); legal research on fees motion, including review of Kennedy v. Crittenden and other cases where fees were enhanced because of undesirability of the case (.5). | 3.9 | | 3.9 | |
| 238 | CGG Curling - Bruce Brown | 9/11/2019 | Revise Rule 59(e) motion and brief in support of motion and circulate to R. McGuire and MRM; email to B. Tyson about what system State planned to use for runoffs of pilots; draft and revise tactical incompetence section; extensive discussion and communications about the State's failure to plan on First Quarter 2020 elections and what to do about it in the Rule 59 motion; review brief and further discussions on framing of requested relief; emails about whether to include relief relating to failure of state to obtain state certification and legal research as to whether abstention doctrines apply (4.5, only 4.2 billed); emails about rates for fee application and briefing schedule for responses to Special Motion (.4). | 4.6 | | 4.6 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 9/12/2019 | Continue drafting and revising Rule 59(e) motion and brief, including generating and circulating new draft for review;transmit to E. Rosenberg;  considering comments from team; review S. Harvey memo; review M. Marks declaration; continued revision and finalization of motion papers (4.5 (actual time 6 plus)); emails about supplemental complaint, discovery, and K. Anderson proposal (.3, not biled). | 4.5 | | 4.5 | |
| CGG Curling - Bruce Brown | 9/15/2019 | Further discussions about Rule 59(e) motion; legal research regaring same (actual time 4 plus) | 3.5 | -2 | 1.5 | 0.5 |
| CGG Curling - Bruce Brown | 9/16/2019 | Draft status report for M. Marks and R. McGuire; review law on bill of costs. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 9/17/2019 | Extensive work on fee petition, including multiple emails about Holcomb & Ward; emails about potential expert on fees (R. Remar); legal research on fee petition (2.5); email to K. Burwell on duty to preserve election electronics (.2). | 2.7 | | 2.7 | |
| CGG Curling - Bruce Brown | 9/18/2019 | Further work on fee petition, including emails and telephone calls about R. Remar; telephone conference with M. Marks about fee petition; numerous emails about extension request (2.2); work on motion for sanctions and transmit same to Lawyers' Committee (.4). | 2.6 | | 2.6 | |
| CGG Curling - Bruce Brown | 9/19/2019 | Review response to motion for leave to amend and emails to M. Marks and R. McGuire regarding reply (.5); on fee application, email to R. Remar, draft, revise and file motion for extension (.5); emails regarding Curling's bill of costs (.2). | 1.2 | -0.5 | 0.7 | |
| CGG Curling - Bruce Brown | 9/20/2019 | Continue work on fees application. | 3 | | 3 | |
| CGG Curling - Bruce Brown | 9/21/2019 | Mistaken time entry (original description incorrect) | 0.1 | -0.1 | 0 | |
| CGG Curling - Bruce Brown | 9/24/2019 | Work with M. Marks and R. McGuire to finalize and file reply in support of motion for leave to file supplemental complaint (1.0, not billed) | 0 | | 0 | |
| CGG Curling - Bruce Brown | 9/25/2019 | Work on fee application, including emails to team and R. Remar; further work on matter. | 1 | | 1 | |
| CGG Curling - Bruce Brown | 9/26/2019 | Continued work on fee application,  including preparation of material for R. Remar, conference call with R. Remar, email to team; legal research on recoverability of expenses (2.6); review State's response to Rule 59(e) motion. | 3.3 | | 3.3 | |
| CGG Curling - Bruce Brown | 9/27/2019 | Work on fee application  including emails to R. Remar  B. Custer  C. Ichter  R. McGuire  W. Ney  Mr. Marks  and review file (1.5); emails with L. Bryan (.1); transmit brief to R. Wilson (.1). | 1.7 | | 1.7 | |
| CGG Curling - Bruce Brown | 9/28/2019 | Initial draft of reply brief in support of Rule 59(e) motion; conference call with R. McGuire and M. Marks about same; email to B. Tyson about State's plans for piloted run-offs. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 9/29/2019 | Continued work on fee application,  including work on phasing the case and reviewing work for reasonableness and email to R  McGuire and M. Marks regarding same (1.8); work on fee recovery information for motion for sanctions (.5). | 2.3 | | 2.3 | |
| CGG Curling - Bruce Brown | 9/30/2019 | Work on narrative for motion for sanctions and draft same into declaration; emails to D. Brody and M. Marks about their costs. | 2.5 | | 2.5 | |
| CGG Curling - Bruce Brown | 10/1/2019 | Work on reply in support of Rule 59(e) motion  including telephone conference with M. Marks and further drafting of brief (2.5); legal research and emails about Rule 65(c)(2) (.5); work on fee application  including work on evidence of rates and associated communications with E. Rosenberg and  R. Remar; email to team about documentation for fee application (2). | 5 | | 5 | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 10/2/2019 | Revise draft of Reply Brief in support of Motion for Rule 59(e) Relief and circulate to M. Marks and R. McGuire (2.4); further work on fee petition including emails about rates (.5); further work on declaration in support of motion for sanctions (1.5); work with M. Marks on revisions to Reply Brief (2.) (time reduced 1.0). | 3.6 | | 3.6 | |
| CGG Curling - Bruce Brown | 10/3/2019 | Further work on Rule 59(e) reply brief including telephone discussions about epollbooks and voter registration darabases (1.5); further work on fee application including telephone conversation with R. Remar and review of his draft declaration (.9). | 2.4 | | 2.4 | |
| CGG Curling - Bruce Brown | 10/4/2019 | Revise Rule 69 reply brief. | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 10/5/2019 | Review Curling motion for preliminary injunction (.5, not billed); further work on motion for sanctions including revising declaration to correct fee amounts and transmit to D. Cross (.3); work on Rule 59(e) reply and draft revise and file motion for additional pages (2.6) | 2.9 | | 2.9 | |
| CGG Curling - Bruce Brown | 10/6/2019 | Work on Supplemental Brief in Support of Fee Application including review of early pleadings consider and research record of State's positions on various issues; outline brief. | 3.5 | | 3.5 | |
| CGG Curling - Bruce Brown | 10/7/2019 | For fee application review time records from W. Ney and email to him; review time records from the LC and email to E. Rosenberg regarding issues; review submission from R. McGuire (2.3); on Rule 59(e) reply telephone conversation with M. Marks and further work on draft (.5). | 2.8 | | 2.8 | |
| CGG Curling - Bruce Brown | 10/8/2019 | Further work on Rule 59(e) reply; finalize same and file. | 1.3 | | 1.3 | |
| CGG Curling - Bruce Brown | 10/9/2019 | Work on fee application brief (2.0) (time on new MPI brief not included here). | 2 | | 2 | |
| CGG Curling - Bruce Brown | 10/11/2019 | Work on fee application; review and organization all declarations; compile time. | 3 | | 3 | |
| CGG Curling - Bruce Brown | 10/12/2019 | Further work on fee application; complete description of work in each phase. | 6.3 | | 6.3 | |
| CGG Curling - Bruce Brown | 10/13/2019 | Further work on fee petition; complete description of work in phases; draft and revise section anticipating defendants' response; extensive work on revisions; work on tables of hours; further work on draft (actual time 12.5). | 11 | | 11 | |
| CGG Curling - Bruce Brown | 10/14/2019 | Edit brief in support of motion for fees; review changes by C. Ichter E. Rosenberg R. McGuire and M. Marks. | 3.9 | | 3.9 | |
| CGG Curling - Bruce Brown | | | | | | |
| CGG Curling - Bruce Brown | | **Original Pre-October 15, 2019 Time from Declaration of Bruce P. Brown, Exhibit 1** | 954.5 | | | 35.1 |
| CGG Curling - Bruce Brown | | **January 2020 Adjustments to Pre-October 15, 2019 Time** | -16.65 | -16.65 | | |
| CGG Curling - Bruce Brown | | **Adjusted Total for Pre-October 15 Time** | 937.85 | | | |
| CGG Curling - Bruce Brown | | | | | | |
| CGG Curling - Bruce Brown | 10/15/2019 | Fees: Review and organize declarations of Remar Rosenberg R. McGuire W. Ney and M. Mark; finalize papers and file (Actual time 9.5). | 8 | | | 1.5 |
| CGG Curling - Bruce Brown | 10/16/2019 | Fee petition: follow up to filing of detailed specification; review Curling detailed specification and telephone discussions regarding same; emails about corrections and additions to CGG declaration and brief. | 1.5 | | | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 10/17/2019 | On fee application: Further work on corrected fee petition including revisions to M. Marks Declaration; proofread and edit brief; confirm and reconfirm dollar numbers; finalize and file (2.2); on BMD claim, which is not here billed: telephone conferences with M. Marks (.8) numerous emails and drafting regarding motion for preliminary injunction (1.9). | 2.2 | | | |
| CGG Curling - Bruce Brown | 10/25/2019 | Review deadlines and emails; prepare revise and file notice of filing additional exhibits in support of motion for preliminary injunction; emails and telephone calls about deadline for filing bill of costs and court's order regarding same. | 0 | | | |
| CGG Curling - Bruce Brown | 10/28/2019 | Review and emails about Fulton County's papers; prepare for and conference call with R. McGuire and M. Marks about next steps in BMD litigation. | 0 | | | |
| CGG Curling - Bruce Brown | 11/6/2019 | Emails about reply brief on sanctions. | 0.1 | | | |
| CGG Curling - Bruce Brown | 11/7/2019 | Substantial review of data and feedback on election pilot failures; emails to the Lawyers' Committee and R. McGuire regarding same; review Judge Totenberg's prior orders regarding same. | 2.2 | | | |
| CGG Curling - Bruce Brown | 11/8/2019 | For enforcement: Review emails and news articles about how poorly the November elections were; review emails from team conference call with M. Marks about current alternative strategies in the litigation (1.9); substantial telephone conference with Fair Fight attorneys to determine how to conserve resources in common efforts (1.0). | 2.9 | | | |
| CGG Curling - Bruce Brown | 11/8/2019 | Motion for Sanctions: review draft reply. | 0.4 | | | |
| CGG Curling - Bruce Brown | 11/9/2019 | Motion for Sanctions: review and edit draft reply. | 2.8 | | | |
| CGG Curling - Bruce Brown | 11/11/2019 | Review emails; work on sanctions motion reply; work on motion for status conference and emails regarding same. (.8, not here billed) | 0 | | | |
| CGG Curling - Bruce Brown | 11/12/2019 | On enforcement: Initial draft of motion for status conference; circulate same to team; revise and transmit to D. Cross (1.0, half billed here); extensive work on Reply Brief in Support of Motion for Sanctions including editing brief draft declarations of B. Brown and M. Marks numerous emails about extensive revisions (3.8). | 4.3 | | | |
| CGG Curling - Bruce Brown | 11/13/2019 | Further work on motion for status conference; circulate same; emails with team relating to whether and to what extent to provide evidence regarding election failures; email to D. Cross regarding strategy (actual time 3.2; billed 2.5, half billed here). | 1.25 | | | |
| CGG Curling - Bruce Brown | 11/14/2019 | Review State's Response to Motion for fees outline response activities for team; email team and plan conference call to address (.2). | 0.2 | | | |
| CGG Curling - Bruce Brown | 11/15/2019 | Email to V. DuBose about Georgia Open Records Act Requests relating to elections (.2); email to D. Cross regarding schedule and motions (.2). | 0 | | | |
| CGG Curling - Bruce Brown | 11/18/2019 | Fee application: review State's response and supporting declarations; extensive conference with team to discuss response and allocating roles (2.2); review emails and reports on election failures (.3). | 2.5 | | | |
| CGG Curling - Bruce Brown | 11/19/2019 | Draft and revise motion for extension and email to counsel (.8); telephone conference with D. Cross and related emails (.5); plan next steps regarding discovery preservation and telephone conference with M. Marks regarding same (1.2); numerous telephone calls and emails with V. Russo M. Marks M. Bernhard and others regarding Secretary's direct contact of M. Bernard and ramifications (2.1) (total is 4.6, but not billed here). | 0 | | | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 11/20/2019 | Numerous emails and telephone calls about Secretary's interference with expert M. Bernhard including emails to D. Cross  M. Bernhard  M. Marks  R. McGuire (.8, not here billed); work on discovery for enforcement and preservation issues (.3); telephone conference and emails with M. Marks about enforcement discovery (.5). | 0.8 | | | |
| CGG Curling - Bruce Brown | 11/21/2019 | Work on SOS investigation issues  including conference call with R. Demillo  R. Martin and M. Marks and consider options (1.5); emails regarding preservation of DREs  (.2) (actual time 1.7 plus; no charge). | 0 | | | |
| CGG Curling - Bruce Brown | 12/3/2019 | Review Court's order on status conference; review pleadings requesting conference (1.0); telephone conference with C. Ichter  R. McGuire and M. Marks about status conference and related issues (.5, not here billed). | 0 | | | |
| CGG Curling - Bruce Brown | 12/4/2019 | Further work planning for status conference  including review CGG's motion for status conference and consider presentation for conference (.5, half here billed). | 0.25 | | | |
| CGG Curling - Bruce Brown | 12/5/2019 | Review file and numerous communications with counsel and opposing counsel about status conference (1.0); work on status conference brief  including extensive discussions with co-counsel and drafting and revision of same (3.8) (total is 4.8, half here billed) | 2.4 | | | |
| CGG Curling - Bruce Brown | 12/6/2019 | Review pleadings and orders to prepare for status conference; travel to courthouse to meet with C. Ichter  D. Cross and clients; attend status conference; conference and telephone calls with counsel and clients thereafter (6.3 total, half here billed) | 3.15 | | | |
| CGG Curling - Bruce Brown | 12/7/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/8/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/9/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/10/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/11/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/12/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/14/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/15/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/16/2019 | Redacted - BMD | 0 | | | |
| CGG Curling - Bruce Brown | 12/17/2019 | BMD MPI: Review filed Curling and filed Coalition declarations in preparation for  and telephone conference with  C. Ichter et al. regarding BMD motion strategy (1.8, not here billed); Enforcement: conference call with team about how to ensure enforcement of Judge's prior order; legal research about rule nisi's and appropriate framing of remedy; email to team regarding same (1.0). | 1 | | | |
| CGG Curling - Bruce Brown | 12/19/2019 | Telephone call to C. Ringer; email to C. Ringer; draft  circulate  and revise extensive memo to Defendants' counsel about readiness for Dominion installation and progress on back-up plan development. | 1.7 | | | |

| Matter Description and Time Keeper | Date | Description | Number of Hours Billed | January 2020 Adjustment | Adjusted Total | Initial Billing Judgment Write off |
|---|---|---|---|---|---|---|
| CGG Curling - Bruce Brown | 12/20/2019 | Finalize extensive email to defense counsel about readiness; telephone call with C. Ringer; email to M. Marks about potential filings for judicial relief regarding need for back-up plan as ordered by the Court | 0.9 | | | |
| CGG Curling - Bruce Brown | 12/21/2019 | Emails to The Lawyer's Committee and client regarding discovery; draft and transmit memo to team about conversation with C. Ringer and readiness of Fulton County; review emails from C. Ichter and R. McGuire about enforcement motion and discovery. | 0.9 | | | |
| CGG Curling - Bruce Brown | 12/22/2019 | Review news and communications of State Senator Kirk's death and challenges the Secretary will have with special election and readiness of BMDs. | 0.5 | | | |
| CGG Curling - Bruce Brown | 12/23/2019 | Work on staffing for discovery for enforcement monitoring; telephone conference about motion to enforce Judge Totenberg's order on HMPB  epollbooks  and directions to county to provide provision ballots. | 0.8 | | | |
| CGG Curling - Bruce Brown | 12/24/2019 | Review and revise draft interrogatories to Secretary of State on readiness for 2020 elections and transmit same to MRM (.4); review draft motion to enforce and draft comments (1.0). | 1.4 | | | |
| CGG Curling - Bruce Brown | 1/1/2020 | Work on Reply Brief in Support of Motion for Fees. | 1.7 | | | |
| CGG Curling - Bruce Brown | 1/2/2020 | Work on Reply Brief  including legal research and review and analysis of Fulton County's brief. | 3.6 | | | |
| CGG Curling - Bruce Brown | 1/6/2020 | Work on Reply Brief  including granular review of time records  research on blocked billing  and starting drating.  (Actual time 9 plus). | 8 | | | 1 |
| CGG Curling - Bruce Brown | 1/7/2020 | Enforcment: work on discovery relating to the FBI server; consider implementation status and options for ensuring State compliance with Order to develop a back-up plan. | 0.7 | | | |
| CGG Curling - Bruce Brown | 1/8/2020 | Work on Reply Brief. | 2.5 | | | |
| CGG Curling - Bruce Brown | 1/9/2020 | Work on Reply Brief (3.8); draft and file motion for extension of time (not billed). | 3.8 | | | |
| CGG Curling - Bruce Brown | 1/10/2020 | Work on Reply Brief. | 4.5 | | | |
| CGG Curling - Bruce Brown | 1/14/2020 | Complete first rough draft of reply and distribute to team. | 6 | | | |
| CGG Curling - Bruce Brown | 1/15/2020 | Work on Reply Brief. | 2 | | | |
| CGG Curling - Bruce Brown | 1/16/2020 | Work on Reply Brief. | 5.5 | | | |
| CGG Curling - Bruce Brown | 1/16/2020 | Billing Judgment Reduction for Work on Reply Brief | -8 | | | 8 |
| | | Totals for Post-October Time | 72.45 | | | 10.5 |

| | | | | |
|---|---|---|---|---|
| | Total for Pre-October 15 Time | 937.85 | | |
| | Total for Post-October 15 Time | 72.45 | | |
| | Grand Total | 1010.3 | | |
| | Write Offs | | | |
| | Original Write Offs Pre-October 15 Time | 35.1 | | |
| | January 2020 Write Offs on Pre-October 15 Time | 16.65 | | |
| | Write Offs on Post-October 15 Time | 10.5 | | |
| | Total Write Offs | 62.25 | | |

EXHIBIT

2

Legal Ease Attorney Services, Inc.

# Invoice

645 Waldo Street, SE
Atlanta, GA.  30312

| Date | Invoice # |
|---|---|
| 5/20/2019 | 7595 |

| Bill To |
|---|
| Bruce P. Brown Law<br>1123 Zonolite Road<br>Suite 6<br>Atlanta, Georgia 30306 |

| Ref. No. | Terms | Due Date | Order Date | Firm/Contact |
|---|---|---|---|---|
| Coalition for Good ... | Net 15 | 6/4/2019 | 5/15/2019 | Bruce Brown, Esq. |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| Document Pick Up Charge Zone A.  Coalition for Good Governance, et al. v Brad Raffensperger, et al.  USDC Case# 1:17-cv-2989-AT. | | 20.00 | 20.00 |
| Service of Process Zone E.  (Based on Round Trip Mileage plus $35.00).  Served Jennifer Doran, Elections Supervisor on 5/16/19 at her business. | | 203.00 | 203.00 |
| Rush Fee.  **Service attempt made within two business days** | | 25.00 | 25.00 |
| Waiting Time.  Process Server arrived at 10:58 AM and was told that Jennifer Doran was in a meeting.  Served Jennifer Doran at 11:33 AM.  **No charge to client** | | 0.00 | 0.00 |
| **Emailed affidavit of service to client.  Returned original affidavit of service via US Mail** | | 0.00 | 0.00 |

Thank you for your business.
There is a 5% late fee to all invoices over 30 days past due.

| | |
|---|---|
| **Total** | $248.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $248.00 |

| Phone # | Fax # | E-mail |
|---|---|---|
| 404-849-1240 | 404-624-9181 | legaleaseatlanta@outlook.com |

EXHIBIT

C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, ET AL.,
Plaintiffs,

v.

BRAD RAFFENSPERGER, ET AL.,
Defendants.

Civil Action No. 1:17-CV-2989-AT

## SECOND DECLARATION OF CARY ICHTER

Pursuant to 28 U.S.C. §174, I certify under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.     My name is Cary Ichter.  I am a managing member of Ichter Davis, LLC (the "Firm") and a member in good standing with the State Bar of Georgia.  I offer this Declaration on my personal knowledge to provide the Court in this matter with information concerning services provided, costs advanced, and the value of the service provided to Laura Digges., William Digges, Richardo Davis and Megan Missett (collectively, the "Individual Coalition Plaintiffs") in the above-captioned action.

2.     I graduated *magna cum laude* from the University of Georgia School of law in 1984.  I was admitted to the State Bar of Georgia the same year.  I have practiced law in Georgia full-time and continuously since then.

3.      Attached hereto as Exhibit "1" is a listing of tasks performed between October 8, 2019, and January 16, 2020, by myself and other timekeepers in the Firm as well as the date on which the work was done, the time it took to perform each task, and the billing rate of each timekeeper.  The tasks performed by others in the Firm were performed at my direction and under my supervision.

4.      The billing records attached hereto show that the amount billed for the tasks performed is $22,940.  That is in addition to the amount described in my initial Declaration.

5.      For the work performed in this action, Ichter Davis LLC charged the Individual Coalition Plaintiffs $625, $350, $350, and $195 per hour for work performed by myself, Mr. Davis, Ms. Berland, and Ms. LeMieux, respectively.

7.      In my opinion, these hourly rates are well within the range charged by civil litigation firms for similar work by persons of similar experience and ability. This opinion is based on my experience as a litigator and managing partner of multiple civil litigation firms.  My opinion is also based on my knowledge of wat friends and colleagues in the market charge and the Fulton County *Daily Report*'s most recent billing rate report, a copy of which was attached to my initial Declaration as Exhibit "B."

8.      I have reviewed the billing records in this matter for the tasks I performed, as well as the tasks performed by Mr. Davis, Ms. Berland and Ms.

LeMieux under my supervision.  Based on that review and my personal knowledge of the case, the total number of hours devoted to the various tasks performed and reported in the attached were reasonable, necessary and required.

9.      Based on my review of the billing records and my knowledge of the case, the total amount of total fees and expenses incurred in performing the various tasks reported were reasonable, necessary, and required.

I certify under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Dated: January 16, 2020.

Cary Ichter

E
X
H
I
B
I
T

1

| Date | Timekeeper | Time | Reference | Rate | Total |
|------|-----------|------|-----------|------|-------|
| 10/08/19 | Cary Ichter (CI) - lead attorney | 2.30 | Prepare narratives regarding spoliation paragraphs for fee application; Prepare declaration for fee application; Review and revise summary of time. | $625.00 | $1,437.50 |
| 10/08/19 | William Daniel Davis (WDD) - attorney | 0.70 | Attention to Mr. Ichter's fee Affidavit. | $350.00 | $245.00 |
| 10/08/19 | Janis Lemieux (JL) - paralegal | 0.10 | Update electronic case files with Coalition Plaintiffs' Reply in Support of Motion to Alter or Amend Judgment. | $195.00 | $19.50 |
| 10/11/19 | JL | 0.10 | Update electronic case files with Curling Plaintiffs' Joint Motion for Sanctions. | $195.00 | $19.50 |
| 10/14/19 | CI | 1.50 | Review and revise Petition for Fees. | $625.00 | $937.50 |
| 10/14/19 | JL | 0.10 | Update electronic case files with Motion to Strike Motion for Preliminary Injunction. | $195.00 | $19.50 |
| 10/15/19 | JL | 0.20 | Update electronic case files with Order granting Plaintiffs' Motion to Amend/Supplement Complaints; calendar associated deadlines. | $195.00 | $39.00 |
| 10/16/19 | JL | 0.10 | Update electronic case files with Curling Plaintiffs' Notice of Filing Exhibits. | $195.00 | $19.50 |
| 10/17/19 | JL | 0.10 | Update electronic case files with Itemization of Attorney Fees. | $195.00 | $19.50 |
| 10/18/19 | JL | 0.10 | Update electronic case files with Response to Motion for Preliminary Injunction. | $195.00 | $19.50 |
| 10/23/19 | JL | 0.10 | Update electronic case files with Order granting in part and denying in part Coalition Plaintiffs' Motion to Amend Judgment. | $195.00 | $19.50 |
| 10/23/19 | JL | 0.10 | Update electronic case files with Order granting Consolidated Briefing on Plaintiffs' Motions for Preliminary Injunction. | $195.00 | $19.50 |
| 10/23/19 | JL | 0.10 | Update electronic case files with Coalition Plaintiffs' Motion for Preliminary Injunction and Brief In Support. | $195.00 | $19.50 |
| 10/28/19 | JL | 0.10 | Update electronic case files with pleadings responding to Curling Plaintiffs' Am. Complaint and Coalition Plaintiffs' Supplemental Complaint. | $195.00 | $19.50 |
| 10/28/19 | JL | 0.10 | Update electronic case files with pleadings responding to Curling Plaintiffs' Am. Complaint and Coalition Plaintiffs' Supplemental Complaint. | $195.00 | $19.50 |
| 10/29/19 | JL | 0.10 | Update electronic case files with Notice of Leave of Absence. | $195.00 | $19.50 |
| 11/04/19 | JL | 0.10 | Update electronic case files with Notice of Filing Record of Related Case. | $195.00 | $19.50 |
| 11/05/19 | JL | 0.10 | Update electronic case files with Response to Motion to Dismiss Curling Plaintiffs' Complaint and Coalition Plaintiffs' Supplemental Complaint. | $195.00 | $19.50 |
| 11/08/19 | CI | 0.50 | Exchange emails with Ms. Marks regarding spoliation brief; Review Mr. Cross' sanctions brief. | $625.00 | $312.50 |
| 11/18/19 | CI | 1.50 | Review Defendant's Response to Attorney's Fees Motion; Conference call regarding Response to Attorney's Fees Motion with entire team. | $625.00 | $937.50 |
| 11/20/19 | JL | 0.10 | Update electronic case files with Order Granting Motion for Extension. | $195.00 | $19.50 |
| 11/22/19 | JL | 0.10 | Update electronic case files with Response to Motion for Fees. | $195.00 | $19.50 |
| 11/25/19 | JL | 0.10 | Update electronic case files with recent Order. | $195.00 | $19.50 |
| 11/25/19 | CI | 1.50 | Review Court Order regarding GEMs database; Exchange email correspondence with Mr. Gross and Ms. Marks; Conference with Ms. Marks; Exchange emails with Mr. Draper (ESI Vendor); Review and revise letter to opposing counsel for preservation of retired election equipment. | $625.00 | $937.50 |

| Date | Timekeeper | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 11/28/19 | CI | 0.30 | Exchange email correspondence with Mr. Brown and Ms. Marks. | $625.00 | $187.50 |
| 12/02/19 | CI | 0.80 | Review State Defendant's Request for Status Conference; Prepare email correspondence to State Defendants regarding production of inventory lists produced by counties. | $625.00 | $500.00 |
| 12/02/19 | JL | 0.10 | Update electronic case files with court filings. | $195.00 | $19.50 |
| 12/03/19 | CI | 1.30 | Prepare email correspondence to opposing counsel regarding inventory of county equipment; Review Order regarding Status Conference; Conference call with Mr. Brown and Mr. Maguire regarding Status Conference. | $625.00 | $812.50 |
| 12/03/19 | JL | 0.20 | Update electronic case files with Notice of Hearing and calendar same. | $195.00 | $39.00 |
| 12/03/19 | JL | 0.10 | Update electronic case files with Order regarding status hearing; confirm calendaring for same. | $195.00 | $19.50 |
| 12/04/19 | CI | 0.30 | Exchange email correspondence with Mr. Brown and Mr. Maguire. | $625.00 | $187.50 |
| 12/05/19 | CI | 3.00 | Exchange multiple emails with team regarding preparation for Status Conference; Conference call regarding same; Prepare module for Status Conference filing regarding preservation of evidence; Review email to opposing counsel regarding preservation of equipment. | $625.00 | $1,875.00 |
| 12/05/19 | Jill Connors (JC) - paralegal | 0.80 | Proofread and edit Motion for Use of Electronic Equipment at Status Conference and Proposed Order; Finalize and e-file same. | $195.00 | $156.00 |
| 12/06/19 | CI | 3.00 | Travel to courthouse; Meeting with team and Mr. Cross ahead of Status Conference; Attend Status Conference; Return travel to office. | $625.00 | $1,875.00 |
| 12/09/19 | JL | 0.10 | Update electronic case files with Minute Entry of Proceedings on 12/6/19. | $195.00 | $19.50 |
| 12/09/19 | JL | 0.10 | Update electronic case files with Status Report in advance of hearing. | $195.00 | $19.50 |
| 12/10/19 | CI | 1.00 | Various communications with Ms. Mark and Mr. Gross regarding KSU server image and inventory of DRE equipment held by State; Prepare email to State Defendants. | $625.00 | $625.00 |
| 12/10/19 | JL | 0.10 | Update electronic case files with transcript of status conference. | $195.00 | $19.50 |
| 12/15/19 | CI | 1.80 | Review and revise Reply Brief for Plaintiff's Motion for Preliminary Injunction. | $625.00 | $1,125.00 |
| 12/16/19 | JL | 0.10 | Update electronic case files with Reply to Response to Motion for Preliminary Injunction. | $195.00 | $19.50 |
| 12/17/19 | CI | 2.00 | Exchange various emails with team regarding follow up on discovery issues, KSU server, and spoliation issues; Review Protective Order; Prepare email regarding AEO issue; Prepare email to State Defendant's counsel regarding the destruction of equipment. | $625.00 | $1,250.00 |
| 12/18/19 | CI | 1.80 | Review various emails with team; Conference call with team; Prepare email to State Defendants regarding the preservation of DREs and identifying DREs for production and inspection. | $625.00 | $1,125.00 |
| 12/19/19 | CI | 0.30 | Exchange various emails with team regarding retention of DRE equipment and spoliation. | $625.00 | $187.50 |
| 12/22/19 | CI | 0.70 | Exchange emails with team; Review list of documents to be subpoenaed from Cobb County. | $625.00 | $437.50 |
| 12/23/19 | CI | 2.30 | Exchange various emails with team regarding discover to be pursued; Review and revise Subpoena to Cobb County; Prepare email to Mr. Belinfante regarding Ms. Marks' right to review KSU server image data; Exchange emails with Ms. Monyak regarding Cobb Subpoena. | $625.00 | $1,437.50 |

| Date | Atty | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 12/23/19 | JC | 1.00 | Prepare Subpoena to Janine Eveler; Prepare Notice of Intent to Serve Subpoena on Janine Eveler and e-file same; Telephone conference with Ms. Marilyn Marks. | $195.00 | $195.00 |
| 12/24/19 | CI | 1.00 | Prepare Plaintiff's Third Interrogatories to Defendant Secretary of State; Various email exchanges with team. | $625.00 | $625.00 |
| 12/26/19 | JC | 1.20 | Prepare Interrogatories in final form; Prepare Rule 5.4 Certificate and e-file same; Confirm all attorneys of record who are still in case to ensure accuracy of service; Statutory Electronic Service and service via US Mail of same. | $195.00 | $234.00 |
| 12/27/19 | JC | 0.80 | Prepare Coalition Plaintiffs' Third Interrogatories to Defendant Secretary of State; Prepare Rule 5.4 Certificate of Service; E-file Rule 5.4 Certificate; Statutory Electronic Service and service via US Mail of Interrogatories; Attention to calendaring relevant case deadlines. | $195.00 | $156.00 |
| 12/27/19 | CI | 0.80 | Conference with Ms. Marks regarding discovery and injunction issues. | $625.00 | $500.00 |
| 12/30/19 | CI | 1.30 | Exchange email with opposing counsel regarding Ms. Mark's access to information from KSU server; Prepare email regarding potential injunction motion; Exchange various emails regarding Secretary of State's request for Status Conference. | $625.00 | $812.50 |
| 12/31/19 | CI | 0.30 | Conference with Ms. Marks to discuss deposition of Secretary of State, project manager and dealing with the Defendant's request for Status Conference. | $625.00 | $187.50 |
| 01/01/20 | CI | 3.00 | Review and revise Response to Defendant's Request for Status Conference; Review and revise Fail Safe Summary; Review and revise Implementation Status Report Request and Proposed Elements; Exchange emails with Ms. Marks. | $625.00 | $1,875.00 |
| 01/02/20 | CI | 0.30 | Exchange email correspondence with team; Review email correspondence regarding Cobb subpoena from Ms. Monyak and Mr. Russo. | $625.00 | $187.50 |
| | JL | 2.00 | Exchange email correspondence with counsel; prepare Declaration of Cary Ichter; format exhibit to same; identify formatting issues in draft Report and communicate corrections to counsel; begin drafting Motion for Leave to File Under Seal; examine Protective Order and communicate with counsel regarding duty to confer. | $195.00 | $390.00 |
| 01/15/20 | | | | | |
| 01/16/20 | JL | 2.50 | Format revised exhibits, prepare all slip sheets for same; confirm citations to exhibit numbers within Status Report and within Declarations; revise Certificate of Service to Status Report; finalize and file Status Report and exhibits; zip and forward stamped-filed e-copies of same to counsel. | $195.00 | $487.50 |
| 01/16/20 | WDD | 0.50 | Organize fee slips for supplemental fee affidavit. | $350.00 | $175.00 |
| | | | **TOTAL** | | **$22,940.00** |

EXHIBIT

D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br><br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br><br>    Defendants. | Civil Action File No.<br>1:17-CV-2989-AT |

## DECLARATION OF JOHN POWERS

1.    My name is John Powers.  I make this declaration pursuant to 28 U.S.C. § 1746 in support of the fee request submitted by the Coalition Plaintiffs in this case.

2.    I am a Counsel with the Lawyers' Committee for Civil Rights Under Law.  The Declaration of Ezra D. Rosenberg and the accompanying exhibits support the Lawyers' Committee's detailed specification of hours worked and expenses incurred in this matter through October 17, 2019.  *See* Doc. 632, Exhibit E, at 156-257.

3.     Mr. Rosenberg's declaration also identifies the hourly rates for each timekeeper associated with the Lawyers' Committee. *See* Rosenberg Decl. ¶ 47.

## EXPENSES

4.     As of October 17, 2019, the date of the filing of the detailed specification, the Lawyers' Committee had incurred $13,155.30 in expenses. *Id*. ¶ 56.

5.     The Lawyers' Committee is subtracting $25 worth of meal-related expenses, *see* Doc. 660 at 40, from the total amount sought.  The Lawyers' Committee therefore currently seeks recompense for $13,130.30 in expenses.

## ATTORNEYS' FEES

6.     At the time of the filing of the detailed specification on October 17, 2019, Lawyers' Committee attorneys had worked 760.5 billable hours on the case, incurring a total of $266,730 in attorneys' fees. *See* Rosenberg Decl. ¶ 52.

7.     The Lawyers' Committee is subtracting 17.5 of Mr. Rosenberg's hours and 5.0 of Mr. Brody's hours spent traveling from the total number of hours billed. *See* Doc. 660 at 26.  When multiplied by Messrs. Rosenberg and Brody's hourly rates, this causes a reduction of $13,375 to the total attorneys' fees sought by the Lawyers' Committee.

8.   Between November 15 and 21, 2019, and between January 15 and 16, 2020, I worked a total of 12.1 hours on the reply brief in support of the Coalition Plaintiffs' attorneys' fees motion. That time includes researching, drafting, reviewing, and editing various drafts of the reply brief, conversations with Jacob Conarck and Ezra Rosenberg regarding the brief, and drafting, reviewing, editing, and finalizing this declaration.

9.   I supervised the work of Jacob Conarck on the reply brief in support of the Coalition Plaintiffs' attorneys' fees motion. He worked a total of 15.6 hours on the brief between November 15 and 21, 2019. That time includes researching, drafting, reviewing, and editing various drafts of the reply brief, as well as conversations with me and Ezra Rosenberg regarding the brief.

10.   Between January 9 and 15, 2020, I worked a total of 8.3 hours on Coalition Plaintiffs' Status Report Regarding BMD Implementation and Response to State Defendants' Request to Destroy DRE System Records, Doc. 699. That time includes drafting, reviewing, and editing various drafts of the brief, reviewing evidence, and conversations and email communications with Marilyn Marks, Bradley Phillips, Ritchie Wilson, Robert McGuire, and others regarding the content of the brief and related strategy matters.

3

11.     When multiplied by our hourly rates, these additional 36 billable hours amount to $12,060 in additional attorneys' fees sought by the Lawyers' Committee.

12.     After the additions and subtractions, the Lawyers' Committee now seek recompense for 13.5 additional hours but are seeking $1,315 less in attorneys' fees.

13.     The Lawyers' Committee now seeks recompense for 774 hours of work, which amounts to $265,415 in attorneys' fees.

## TOTAL AMOUNT SOUGHT FOR ATTORNEYS' FEES AND EXPENSES

14.     The total amount of attorneys' fees and litigation sought by the Lawyers' Committee in this matter for work performed and expenses incurred through January 16, 2020 is $278,545.30

15.     Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury that the foregoing is true and correct.

This 16th day of January, 2020.

John Powers

4

E
X
H
I
B
I
T

E

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **DONNA CURLING, et al.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **vs.** | ) | **NO.: 1:17-cv-2989-AT** |
| | ) | |
| **BRAD RAFFENSPERGER, et al.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## DECLARATION OF MARILYN MARKS

**I, MARILYN MARKS,** hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I have personal knowledge of all facts stated in this declaration and, if called to testify, I could and would testify competently thereto.

2.  I am the Executive Director of Plaintiff Coalition for Good Governance.

3.  Attached as Exhibit 1 is a true and correct copy of a document that I received from the Attorney General of the State of Georgia in response to a Georgia Open Records Act Request.

4.  I supervise our analysts and paid interns who spend virtually all of their hours in direct litigation support. This support is of the nature of direct support that would be provided by paralegals, legal assistants or research assistants in a law firm engaged in a case such as this one.

5.  Our standard pay rate for the duration of this case has been $17 per hour for the interns and analysts. We reimburse direct expenses such mileage, parking, postage, reimbursement of Open Records Request fees if they have paid them directly, and office supplies.

6.  Taran Greenwald has worked on an as needed basis in litigation support since mid-November 2018.

7.  Greenwald's work has included a range of direct litigation support work from messenger service tasks to reseaching anomalies in the 2018 elections. Almost none of his work is in administrative support for Coalition for Good Governance.

8.  His work has routinely involved picking up and delivering discovery related documents, scanning and organizing them into electronic files. He has copied and organized deposition and hearing support files for the attorneys and delivered such files and supplies.

9.  Greenwald's research work is under my direction based on requests from the attorneys regarding evidence that requires collection and coordination. For example, Greenwald initiated scores of Georgia Open Records requests regarding the administration and documentation of the 2018 and 2019 relevant elections. Upon receiving responses, he organized, summarized and followed up where necessary, bringing to my

attention pertinent information for evidence collection. This is work that would otherwise be done by a paralegal or research analyst.

10. Greenwald also made or obtained recordings of election superintendents' public meetings and made transcripts of relevant portions for attorney review and inclusion in Court filings where appropriate, including highlighting significant information in the transcripts. This is work that would typically be done by paralegals or legal asssitants.

11. The vast majority of Greenwald's  analytical work related to the manual review of manual records of 2018 and 2019 election results at the precinct and machine level as reported on polling place tapes, which are difficult to decipher, handle and transcribe.  The purpose of the work was to locate anomalous or erroneously reported results, such as the Winterville Precinct anomalies in Clarke County.

12. The many hours of laborious and tedious manual work to locate anomalies and document and DRE system reporting errors was necessitated only because the Defendants refused to permit access to the non-confidential data in the GEMS databases.

13. Greenwald also analyzed data patterns and counties' individual results reporting patterns during the process and became quite knowledgeable in identifying unusual results, anomalies, and machines and reports that

require further investigation—more so than anyone on our team. Greenwald prepared reports prioritizing and describing the follow up analysis needed.

14. This level of knowledge and analytical skill would bear a market rate of well over $200 per hour if Greenwald were working as a legal assistant in a law firm engaged in this research effort.

15. Greenwald's reimbursed expenses related to this case total $2,061.14 (attached as Exhibit 2-2).

16. Greenwald's hours of direct litigation support at $17 per hour pay rate total $30,285.50. (attached as Exhibit 2-1).  However, to compensate for Greenwald's training time and unrelated tasks, the Coalition for Good Governance reduced the amount sought for Greenwald's time by $2,521, bringing the total time and expenses sought for reimbursement  to $29,826.

17. Executed on this date, January 21, 2020.

Marilyn Marks

EXHIBIT

1



# GEORGIA DEPARTMENT OF LAW

40 Capitol Square SW
Atlanta, Georgia 30334-1300

www.law.ga.gov
(404) 656-3300

CHRISTOPHER M. CARR
ATTORNEY GENERAL

## ADMINISTRATIVE ORDER

BY THE ATTORNEY GENERAL:

ORDERED:     That under the authority contained in Chapter 15 of Title 45 of the
Official Code of Georgia Annotated, the Honorable **CRAIG PRIMIS**,
of Kirkland & Ellis, LLP, in Washington, District of Columbia, is
hereby appointed Special Assistant Attorney General to assist the
Attorney General and his staff by performing legal services for the
State of Georgia in the case of *Florida v. Georgia*, Case No. 142 in the
Supreme Court of the United States, (Matter No. 1129890) and to be
compensated for the performing of such legal services at an hourly
rate of Nine Hundred Dollars ($900.00) per hour and at a rate of Three
Hundred Dollars ($300.00) an hour for services performed by legal
assistants; be it further

ORDERED:     That reimbursement to the Department of Law by the **Office of the
Governor of this State**, for services performed and expenses incurred
under this appointment shall be made in accordance with the provisions
of Chapter 15 of Title 45 of the Official Code of Georgia Annotated; be
it further

ORDERED:     This order shall remain in effect until the final disposition of the case or
until further direction of the Attorney General.

Effective the 1st day of January, 2019.

CHRIS CARR, Attorney General

SCANNED

XCP
#0002
SC

EXHIBIT

2-1

## Taran Greewald paid hours

**2019**
**Hours**
Mon 7/22: 1:00-2:00pm. **1 hour.**
Tue 7/23: 2:00-11:00pm. **9 hours.**
Wed 7/24: 11:00am-4:00pm. **5 hours.**
Thu 7/25: 6:00pm-12:00am. **6 hours.**
Fri 7/26: 11:30am-8:30pm. **9 hours.**
Sat 7/27: 12:00pm-12:00am. **12 hours.**
Sun 7/28: 2:00pm-12:00am. **10 hours.**
Mon 7/29: 12:00-8:00pm. **8 hours.**
Tue 7/30: 3:00pm-12:00am. **9 hours.**
Wed 7/31: 4:00pm-12:00am. **8 hours.**
Thu 8/1: 8:00pm-12:00am. **4 hours.**
Fri 8/2: 4:00pm-12:00am. **8 hours.**
Sat 8/3: 12:00-6:00pm. **6 hours.**
Sun 8/4: 3:00-5:00am. **2 hours.**
Mon 8/5: 12:00pm-3:00pm. **3 hours**
Tue 8/6: 5:00-7:00am, 10:30am-7:30pm. **11 hours.**
Wed 8/7: 5:00am-12:00pm. **7 hours.**
Thu 8/8: 1:00-11:30pm. **10.5 hours.**
**TOTAL: 128.5 HOURS.**                                                128.5

**HOURS**
Mon 7/1: 12:00pm-12:00am. **12 hours.**
Tue 7/2: 12:00pm-12:00am. **12 hours.**
Wed 7/3: 12:00am-6:00am, 5:00pm-12:00am. **13 hours.**
Thu 7/4: 12:00am-6:00am, 12:00pm-6:00pm. **12 hours.**
Fri 7/5: 11:00am-12:00am. **13 hours.**
Sat 7/6: 9:30am-3:30pm, 7:00pm-12:00am. **11 hours.**
Sun 7/7: 2:30pm-12:00am. **9.5 hours.**
Mon 7/8: 12:00pm-12:00am. **12 hours.**
Tue 7/9: 1:00pm-12:00am. **11 hours.**
Wed 7/10: 12:00pm-12:00am. **12 hours.**
Thu 7/11: 12:00am-4:30am, 12:00pm-12:00am. **16.5 hours.**
Fri 7/12: 12:00pm-12:00am. **12 hours.**
Sat 7/13: 9:00pm-12:00am. **3 hours.**
Sun 7/14: 12:00am-7:30am. **7.5 hours.**
Mon 7/15: 1:00pm-10:00pm. **9 hours.**
Tue 7/16: 4:00pm-12:00am. **8 hours.**
Wed 7/17: 8:00am-12:00pm. **4 hours.**

Thu 7/18: 1:00pm-9:00pm. **8 hours.**
Fri 7/19: 1:00pm-9:00pm. **8 hours.**
Sat 7/20: 1:00pm-7:00pm. **6 hours.**

**TOTAL: 199.5 HOURS**                                             199.5

**HOURS**
Mon 6/10: 12:30-3:30pm--**3 hours.**
Tue 6/11: 3:30-7:00pm--**3.5 hours.**
Thu 6/13: 2:30-4:00pm, 6:00-10:30pm--**6 hours.**
Fri 6/14: 3:00-7:30pm--**4.5 hours.**
Sat 6/15: 2:30-11:30pm--**9 hours.**
Mon 6/17: 12:00-3:00am, 2:30pm-12:00am--**12.5 hours.**
Tue 6/18: 12:00-3:00am, 2:00-9:00pm--**10 hours.**
Wed 6/19: 4:00pm-12:00am--**8 hours**
Thu 6/20: 12:00-2:30am, 10:00am-2:00pm, 6:00pm-12:00am--**12.5 hours.**
Fri 6/21: 5:00pm-12:00am--**7 hours.**
Sat 6/22: 4:00pm-12:00am--**8 hours.**
Sun 6/23: 2:00-8:00pm--**6 hours.**
Tue 6/25: 1:30-3:30pm, 8:30-9:00pm--**2.5 hours.**
Wed 6/26: 3:00pm-7:30pm--**4.5 hours.**
Thu 6/27: 2:00-7:00pm, 8:00pm-12:00am--**9 hours.**
Fri 6/28: 8:00am-12:00am--**16 hours.**
Sat 6/29: 12:00pm-12:00am--**12 hours.**
Sun 6/30: 9:00am-12:00am--**15 hours.**

**TOTAL: 149 HOURS.**                                             149

Mon 5/13: 2am-8am; 10am-3pm. **11 hours.**
Tue 5/14: 7pm-12am. **5 hours.**
Wed 5/15: 12am-7am. **7 hours.**
Thu 5/16: 12am-7am. **7 hours.**
Fri 5/17: 12pm-5pm. **5 hours.**
Sat 5/18: 5pm-11pm. **6 hours.**
Sun 5/19: 2pm-12am. **10 hours.**
Mon 5/20: 12am-2am; 3pm-12am. **11 hours.**
Tue 5/21: 4pm-12am. **8 hours.**
Wed 5/22: 1pm-4pm; 6pm-9pm. **6 hours.**
Thu 5/23: 12pm-3pm. **3 hours.**
Thu 6/6: 12pm-2pm. **2 hours.**
Fri 6/7: 12pm-2pm. **2 hours.**

Sat 6/8: 4pm-10pm. **6 hours.**
Sun 6/9: 5pm-11pm. **6 hours.**

## TOTAL: 95 HOURS

95

**HOURS**

Mon 4/22: 2:30-7:30pm. **5 hours.**
Tue 4/23: 3:00-5:00pm. **2 hours.**
Wed 4/24:  4:00pm-8:00pm. **4 hours.**
Thu 4/25: 7:00pm-12:00am. **5 hours.**
Fri 4/26: 1:00-11:00am. **10 hours.**
Sun 4/28: 9:30am-10:00pm. **12.5 hours.**
Mon 4/29: 10:00am-12:00am. **14 hours.**
Tue 4/30: 12:00pm-12:00am. **12 hours.**
Wed 5/1: 12:00pm-12:00am. **12 hours.**
Thu 5/2: 12:00-2:00am; 10:00am-12:00am. **16 hours.**
Fri 5/3: 11:00am-12:00am. **13 hours.**
Sat 5/4: 11:00am-12:00am. **13 hours.**
Sun 5/5: 12:00-1:00am. **1 hour.**
Mon 5/6: 5:00-11:00pm. **6 hours.**
Tue 5/7: 5:00pm-12:00am. **7 hours.**
Wed 5/8: 12:00-2:00am; 1:00pm-12:00am. **13 hours.**
Thu 5/9: 12:00-2:00am; 12:00pm-12:00am. **14 hours.**
Fri 5/10: 4:30pm-12:00am. **7.5 hours.**
Sat 5/11: 12:00-2:00am; 4:00pm-12:00am. **10 hours.**
Sun 5/12: 12:00-1:30am. **1.5 hours.**

**TOTAL: 178.5 HOURS**

178.5

Mon 3/25: 12:00-7:00pm. **7 hours.**
Tue 3/26: 2:00-4:30am; 4:00-6:00pm; 9:00pm-12:00am. **9.5 hours.**
Wed 3/27: 12:00-4:00am;; 9:00pm-12:00am. **7 hours.**
Thu 3/28: 12:00-3:00am; 3:00pm-12:00am. **12 hours.**
Fri 3/29: 12:00-9:00am; 7:00pm-12:00am. **14 hours.**
Sat 3/30: 5:00-8:00pm. **3 hours.**
Sun 3/31: 7:00pm-12:00am. **5 hours.**
Mon: 4/1: 12:00-5:00am; 7:00pm-12:00am. **10 hours.**
Tue 4/2: 2:00pm-12:00am. **10 hours.**
Wed 4/3: 2:00-10:00pm. **8 hours.**
Thu 4/4: 12:00-3:00pm. **3 hours.**
Fri 4/5: 6:00-10:00pm. **4 hours.**
Sat 4/6: 6:00-11:00pm. **5 hours.**
Sun 4/7: 8:00pm-12:00am. **4 hours**
Mon 4/8: 7:00am-7:00pm. **12 hours.**
Tue 4/9: 9:00am-2:00pm; 5:00pm-12:00am. **12 hours.**
Wed 4/10: 12:00-4:30am. 2:30-4:00pm. **6 hours**
Thu 4/11: 4:00-8:00pm. **4 hours.**

Fri 4/12: 4:00-10:00pm. **6 hours.**
Sat 4/13: 12:00-5:00pm. **5 hours.**
Sun 4/14: 7:00-11:00am. **4 hours.**

TOTAL HOURS: **150.5**                                                        150.5

Mon 3/4-- 12:30-2:00pm; 3:00-3:30pm; 6:00-8:00pm.  **4 hours.**
Tue 3/5-- 5:00-10:00pm. **5 hours.**
Wed 3/6-- 4:00-8:00pm. **4 hours.**
Thu 3/7-- 5:30-7:30pm; 10:00pm-12:00am. **4 hours.**
Fri 3/8-- 12:00-4:00am; 5:00-11:30pm. **10.5 hours.**
Sat 3/9-- 5:00-7:30pm. **2.5 hours.**
Sun 3/1-- 4:00-4:30am; 5:00-8:00pm.  **3.5 hours.**
Mon 3/11-- 4:00-8:00pm.  **4 hours.**
Tue 3/12-- 9:00pm-12:00am. **3 hours.**
Wed 3/13-- 12:00-5:00am; 8:00pm-12:00am.  **9 hours.**
Thu 3/14-- 12:00-8:00am; 5:00-8:00pm.  **11 hours.**
Sat 3/16-- 7:00pm-12:00am.  **5 hours.**
Sun 3/17-- 12:00-8:00am. **8 hours.**
Tue 3/19-- 2:00-11:00pm. **9 hours.**
Wed 3/20-- 3:00pm-12:00am.  **9 hours.**
Thu 3/21-- 3:00-9:00pm. **6 hours.**
Fri 3/22-- 12:00-7:00pm. **7 hours.**
Sat 3/23-- 11:00am-12:00am. **13 hours.**
Sun 3/24-- 12:00pm-12:00am. **12 hours.**

**TOTAL: 129.5 HOURS**                                                       129.5


Mon 2/11: 4:00pm-1:00am--**9 hours.**
Tue 2/12: 4:00pm-3:30am-- **11.5 hours.**
Wed 2/13: 4:00pm-12:00am-- **8 hours.**
Thu 2/14: 9:00pm-1:00pm-- **14 hours.**
Sat 2/16: 9:00am-10:30pm--**13.5 hours.**
Sun 2/17: 11:00pm-Noon-- **13 hours.**
Tue 2/19: 3:00pm-6:00pm; 11:00pm-4:00am-- **8 hours.**
Wed 2/20: 11:000am-1:00am-- **14 hours.**
Thu 2/21: 3:00pm-1:00am-- **10 hours.**
Fri 2/22: 2:30pm-5:00pm--**2.5 hours.**
Sat 2/23: 2:30pm-5:30pm--**3 hours.**
Sun 2/24: 11:00pm-6:00pm-- **7 hours.**
Tue 2/26: 2:00pm-6:00pm-- **4 hours.**
Thu 2/28: 1:00pm-4:00pm; 8:00pm-11:00pm-- **6 hours.**
Fri 3/1: 12:00pm-6:00pm; 10:00pm-12:00am-- **8 hours.**
Sat 3/2: 12:00pm-7:00pm--**7 hours.**
Sun 3/3: 2:00pm-9:00pm--**7 hours.**
**TOTAL HOURS: 145.5**                                                       145.5


Mon 1/21--1:30am-5:30am; 4:30pm-4:30am Tue 1/22. **16 hours.**
Tue 1/22--1:45pm-3:15pm. **1.5 hours.**
Wed 1/23--2:00pm-4:30pm; 7:00-11:00pm. **6.5 hours.**

Thu 1/24--1:00-1:30 pm; 6:45-7:15pm. **1 hour.**
Fri 1/25--4:00pm-1:00am Sat 1/26. **9 hours.**
Sat 1/26--4:00pm-12:00am. **8 hours.**
Sun 1/27--5:00am-5:30am; 5:00pm-9:00pm. **4.5 hours.**
Mon 1/28--11:30am-4:00pm. **4.5 hours.**
Tue 1/29--3:00pm-2:00am Wed 1/30. **11 hours.**
Wed 1/30--4:00pm-5:00am Thu 1/31. **13 hours.**
Fri 2/1--12:00am-8:00am; 5:00pm-4:00am Sat 2/2. **19 hour.**
Sat 2/2--5:00pm-6:30am Sun 2/3. **13.5 hours.**
Sun 2/3--7:00pm-4:30pm Mon 2/4. **21.5 hours.**
Tue 2/5--3:00pm-3:00am Wed 2/6. **12 hours.**
Wed 2/6--7:00pm-12:00am. **5 hours.**
Fri 2/8--1:45pm-3:30pm; 7:00pm-9:15pm. **4 hours.**

TOTAL: **150 HOURS**                                                              150

Mon 1/7--4:45pm-10:45pm. **6 hours.**
Wed 1/9--9:15am-11:15am; 6:10pm-7:40pm. **3.5 hours.**
Fri 1/11--4:15pm-2:15am Sat 1/12. **10 hours.**
Sat 1/12--4:30pm-7:30pm. **3 hours.**
Sun 1/13--1:30am-5:00am; 4:30pm-4:30am Mon 1/14. **15.5 hours.**
Mon 1/14--5:30am-8:30am; 5:30pm-2:00am Tue 1/15. **11.5 hours.**
Tue 1/15--3:30pm-3:45pm; 9:15pm-10:45pm. **1.75 hours.**
Wed 1/16--2:00am-3:30am; 7:30pm-10:00pm; 11:00pm-12:30am Thu 1/17. **5.5 hours.**
Thu 1/17--8:15am-5:15pm. **9 hours.**
Fri 1/18--9:15am-11:00am; 1:15pm-2:45pm. **3.25 hours.**
Sat 1/19--2:45-4:45pm; 5:45pm-4:45am Sun 1/20. **13 hours.**
Sun 1/20--9:00pm-12:00am Mon 1/21. **3 hours.**
TOTAL: **85 HOURS.**                                                              85

# 2018
Mon 12/31---1:30pm-5:00pm; 10:00pm-11:00pm. **4.5 hours.**
Tue 1/1----5:00pm-11:00pm; 3:00am-4:00am Wed 1/2. **7 hours.**
Wed 1/2---4:00pm-7:00pm. **3 hours.**
Thu 1/3---4:00pm-2:00am Fri 1/4. **10 hours.**
Fri 1/4---4:00pm-8:00pm; 9:00pm-3:00am Sat 1/5. **10 hours.**
Sat 1/5---9:00pm-9:30am Sun 1/6. **12.5 hours.**

Total: **47 HOURS.**                                                              47

Tues 12/25 11:30pm-1:30am Wed 12/26. **2 hours.**
Wed 12/26 3:15pm-1:45am Thu 12/27. **10.5 hours.**
Thu 12/27 2:45pm-5:45am Fri 12/28 **15 hours.**
Fri 12/28 6:00pm-7:30pm **1.5 hours**
Sat 12/29 5:50am-6:20am; 3:00pm-6:00pm. **3.5 hours.**
Sun 12/30 7:00pm-11:00pm. **4 hours.**

TOTAL: **36.5 HOURS**                                                            36.5

Mon 12/17 5:30pm-1:30am Tue 12/18: **8 hours.**
Tue 12/18 4:15pm-3:45am Wed 12/19: **11.5 hours.**
Wed 12/19 2:45pm-6:15pm; 8:30pm-4:30am Thu 12/20:  **11.5 hours.**
Thu 12/20 12pm-12am Fri 12/21:  **12 hours.**
Fri 12/21 8:30am-12:30pm: **4 hours.**
Sun 12/23 4:30pm-6:30am Mon 12/24  **14 hours.**

TOTAL:**61 HOURS.**                                                                                    61

Mon 12/10--4:00pm-1:30am Tue 12/11. **9.5 hours.**
Tue 12/11--9:00pm-1:00am Wed 12/12.  **4 hours.**
Wed 12/12--10:00am-11:00pm.  **13 hours.**
Thu 12/13--11:00am-12:00am Fri 12/14.  **13 hours.**
Fri 12/14--4:00pm-8:30pm; 9:30pm-2:30am Sat 12/15.  **9.5 hours.**
Sat 12/15--2:30pm-4:30pm.  **2 hours.**

**TOTAL: 51 HOURS.**                                                                                   51


**Hours**

Mon 12/3 1:30am-5:30am; 6:00pm-4am Tue 12/4.  **14 hours.**

Tue 12/4 11:30am-12:00pm; 1:00pm-8:30pm.  **8 hours.**

Wed 12/5 9:30am-10:00am.  **0.5 hours.**

Thur 12/6 9:00pm-3:00am Fri 12/7  **6 hours.**

Sat 12/8 1:00am-9:00am; 1:30pm-7:00pm  **13.5 hours.**

Sun 12/9 9:00pm-11:00pm  **2 hours.**

**TOTAL: 44 HOURS.**                                                                                   44

------------------------------
Mon 11/26: 8:00am-10:00am; 1:00pm-4:00pm; 7:00pm-11:00pm.  **9 hours.**
Tues 11/27 2:00pm-4:00am Wed 11/28.  **14 hours.**
Wed 11/28 4:30pm-12:30am Thurs 11/29.  **8 hours.**
Thurs 11/29 5:00pm-3:30am Fri 11/30.  **10.5 hours.**
Sat 12/1 7:00pm-1:30am Sun 12/2.  **6.5 hours.**
Sun 12/2 2:30am-8:30am.  **6 hours.**

**TOTAL: 54 hours.**                                                                                   54

_____
Friday 11/16 11:00pm-Saturday 11/17 7:00am.  **8 hours.**
Saturday 11/17 4:30pm-7:30pm; 9:30pm-Sunday 11/18 2:00 am.  **7.5 hours.**
Sunday 11/18 5:30pm-11:30pm.  **6 hours.**
Monday 11/19 4:30pm-8:30pm; 10:30pm-Tuesday 11/20 1:30am.  **7 hours**
Tuesday 11/20 3:00pm-3:30pm; 4:30pm-11:00pm.  **7 hours.**
Wednesday 11/21 9:00am-4:00pm; 6:30pm-9:30pm.  **10 hours.**
Thursday 11/22 3:00pm-5:00pm; 11:30pm-Friday 11/23 5:00am.  **7.5 hours.**

Friday 11/23 11:00am-10:00pm.  **11 hours.**
Sunday 11/25 2:00pm-Monday 11/26 3:00am.  **13 hours.**
**TOTAL: 77 HOURS.**                                                   77


| | | |
|---|---|---|
| Total hours | $ | 1,782 |
| | $ | 17 |
| Hours paid | $ | 30,286 |
| 8.3% reduction for learning curve, general admin | $ | 2,521 |
| **net billed to case** | $ | 27,765 |
| Plus Expenses | $ | 2,061 |
| Total | **$** | **29,826** |

EXHIBIT

2-2

**Taran Greenwald Reimbursed Expenses**

Open Records charges
Atkinson: $25
Baldwin: $25
Bibb: $25
Calhoun: $25
Clarke: $25
Clay: $25
Cobb: $25
Cook: $25
Dougherty: $25
Greene: $25
Gwinnett: $25
Mitchell: $23.62
Morgan: $20.62
Richmond: $25
Talbot: $25
Terrell: $12.92
Troup: $25
Walker: $25
Whitfield: $25

**TOTAL: $457.16**                                    $        457.16

May expenses:
Office depot supplies and copies                       $        100.24


July
$477.74 for Fedex copying/printing depositions
$25 to the Clinch County Board of Elections for records.

**TOTAL: $502.74**                                    $        502.74


_____
Expenses:

Supreme court records: $33.00--deduct
Staples: $18.00
Athens records: $50.84

TOTAL: $101.84                                         $        101.84

**Checks to County BOER**
Bacon: $25.00
Clarke: $25.00
Echols: $25.00
Houston (sent from vacation in late August): $25.00

Lanier: $25.00
Quitman: $25.00
Terrell: $12.32
**TOTAL: $162.32**                                                    $          162.32

Check to Bartow County BOER: $25                                      $           25.00

_ _ _ _ _ _ _ _ _
Other:
Panera for Bruce: $12.40 deduct
Court sandwiches: $60.05 deduct
Affidavit scan: $2.49 deduct
Office Depot copies: $29.58

Courthouse parking: $19.00 deduct
GA Tech parking: $2.00
TOTAL: **$104.52** ($125.52 with parking)                            $          125.52

**Total Expenses**                                                   **$        1,474.82**

**MILEAGE**

**Mileage Nov 2018**
Round trip to and from Fulton County BoE: **7 miles.**
Round Trip to and from Gwinnett County BoE: **56 miles.**
Home-Bruce-Fedex-Home: **6 miles.**
**TOTAL: 69 miles.**                                                 $           69.00

**Mileage--Dec 2018**

Runoff day: **103 miles** (polling tape collection at precincts)

Cobb Magistrate Court round-trip: **38 miles.** -- deduct

**TOTAL: 141 MILES** (101 correcting for GPS error).                 $          141.00

**Mileage--Dec 2018**
OK Cafe meeting with Bruce round trip: **17 miles.**
(Gwinnett poll worker manual copy) round trip: **58 miles.**

**TOTAL: 75 miles**                                                  $           75.00

**MILEAGE--Jan 2019**
Bartow doc delivery round-trip: **93.5 miles.**
Georgia Archive round-trip: **38 miles**.
Office Depot/Fedex: **11.5 miles.**

**TOTAL: 143 MILES.**                                              $              143.00

**Mileage Jan 2019**
41.6 Mile RT to Cobb (x3)
1.8 mile RT for scanning affidavit.
1 mile RT dropping off part with Matt
3.8 mile RT to Bruce's office
3.2 mile RT for copies at Office Depot.
8.6 mile RT Matt to DeMillo office
TOTAL: **143.2 MILES.**                                           $              143.20

**Miileage Feb. 2019**
Capitol (1/22) Round trip--4.8 miles.
Morrow RT--42.5 miles.
Staples-Marilyn-Bruce--11 miles.
Appeals Court  records-Supreme Court records-Bruce--15.9 miles. Deduct
Clarke Board of Elections RT--154.1 miles.
                                                                  $              228.30
TOTAL: **228.3 MILES.**

**Mileage March 2019**
Madison GA roundtrip--**106 miles.**
Capitol roundtrip--**7.8 miles.**
**TOTAL: 113.8 MILES**                                            $              113.80

**May  2019 Milage**
174   miles delivering documents                                 $              174.00

**Mileage--July 2019**
Fulton Govt/Sandy Springs round trip: **43 miles (total).**       $               43.00

Grand total miles                                                 $            1,130.30
deduct --not related to Curling case                              $               54.00
Net miles                                                         $            1,076.30
paid at $.545                                                     $              586.58

## Total Mileage and Expenses                              <u>$        2,061.40</u>