**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**                                          Civil Action No. 1:17-CV-2989-AT

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**CURLING PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES UNDER 42 U.S.C. § 1988**

tk-753585

# TABLE OF CONTENTS

I.      INTRODUCTION...................................................................1

II.     ARGUMENT ......................................................................5

   A.      **Curling Plaintiffs are Prevailing Parties under 28 U.S.C.
       § 1988** ........................................................................5

   B.      **Curling Plaintiffs' Requests Are Reasonable, Contrary to
       Defendants' Vague and Baseless Objections** ..........................11

     1.   **The Number of Hours Is Reasonable** ...........................12

        *i.    Curling Plaintiffs Obtained the Fundamental Relief Sought* ..................13

        *ii.   Defendants' Vexatious Litigation Strategy Made This Case
           Longer and More Expensive Than It Needed to Be* ...............16

        *iii. Stage I Fees Should be Awarded in Full* ............................19

        *iv.  Stage II Fees Should Also Be Awarded in Full* .......................21

        *v.   Defendants Raise No Specific Argument against Curling
           Plaintiffs' Time Incurred in Stage III and Most of the Time
           Incurred in Stage IV* ................................24

        *vi.  Defendants' Complaints of "Block Billing," Vague Entries, and
           Overstaffing Are Exaggerated* ..........................25

        *vii. Defendants' Arguments Against Holcomb + Ward LLP's
           Recovery is Unsupported* ...........................27

        *viii.Fulton County Defendants' Argument that Curling Plaintiffs'
           Fee Request was Untimely is Absurd* ....................28

     2.   **The Hourly Rates are Reasonable** ...........................29

     3.   **The Expenses are Reasonable** ..............................33

   C.      **Curling Plaintiffs are Entitled to Full Non-Duplicative
       Recovery** ..................................................................35

III.    CONCLUSION..................................................................37

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ga. v. Barnes*,
   168 F.3d 423 (11th Cir. 1999) ..................................................... 12, 31

*Bird v. Sumter Cty. Bd. of Educ.*,
   No. 1:12-CV-76 (WLS), 2014 WL 1340677 (M.D. Ga. Apr. 3,
   2014) ............................................................................................ 9, 11

*Bivins v. Wrap It Up., Inc.*,
   548 F.3d 1348 (11th Cir. 2008) ..................................................... 5, 13

*Brooks v. Ga. State Bd. of Elections*,
   997 F.2d 857 (11th Cir. 1993) ................................................ 13, 15, 16

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) ............................................................................5

*Common Cause v. Jones*,
   235 F. Supp. 2d 1076 (C.D. Cal. 2002) ..............................................15

*Common Cause/Ga. v. Billups*,
   554 F.3d 1340 (11th Cir. 2009) ..................................................... 5, 22

*Common Cause/Ga. v. Kemp*,
   347 F. Supp. 3d 1270 (N.D. Ga. 2018) (Totenberg, J.) .........................7

*Curling v. Kemp*,
   334 F. Supp. 3d 1303 (N.D. Ga. 2018) ................................... 7, 18, 21

*Curling v. Raffensperger*,
   397 F. Supp. 3d 1334 (N.D. Ga. 2019) ....................................... passim

*Dowdell v. City of Apopka, Fla.*,
   698 F.2d 1181 (11th Cir. 1983) .........................................................19

*Draper v. Atlanta Indep. Sch. Sys.*,
   No. 1:06-CV-487-MHS, 2008 WL 11407320, (N.D. Ga. Apr. 14,
   2008) ............................................................................................................31

*Fernandes v. Limmer*,
   663 F.2d 619 (5th Cir. 1981) ....................................................................20

*Franklin v. Hartford Life Ins. Co.*,
   No. 8:07-cv-1400-T-23MAP, 2010 WL 916682 (M.D. Fla. Mar. 10,
   2010) ..................................................................................................... 21, 22

*Ga. State Conf. of the NAACP v. Kemp*,
   No. 1:17-cv-1397-TCB, 2018 WL 2271244 (N.D. Ga. Apr. 11,
   2018) ............................................................................................................12

*Gaylor v. N. Springs Assocs., LLLP*,
   No. 1:13-cv-01551-WCO, 2015 WL 12868201 (N.D. Ga. Apr. 2,
   2015) ..................................................................................................... 10, 11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ......................................................................... 13, 19, 32

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ....................................................................19

*Johnson v. Mississippi*,
   606 F.2d 635 (5th Cir. 1979) ......................................................................4

*Lamiri v. Audette*,
   No. 6:15-cv-1810-Orl-28TBS, 2015 WL 13741736 (M.D. Fla. Dec.
   22, 2015) ....................................................................................................26

*Lavin v. Husted*,
   764 F.3d 646 (6th Cir. 2014) ......................................................................4

*Norman v. Hous. Auth. of City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) ................................................................30

iii

*Obester v. Lucas Assocs., Inc.*,
No. 1:08-cv-3491-AT, 2011 WL 13167915 (N.D. Ga. Dec. 19,
2011) ...........................................................................................................19

*P&K Rest. Enter., LLC v. Jackson*,
758 F. App'x 844 (11th Cir. 2019) ............................................................ 11, 36

*Perkins v. Mobile Hous. Bd.*,
847 F.2d 735 (11th Cir. 1988) ..........................................................................13

*Popham v. City of Kennesaw*,
820 F.2d 1570 (11th Cir. 1987) ........................................................................27

*Prison Legal News v. Inch*,
No. 4:12cv239-MW/CAS, 2019 WL 5394614 (N.D. Fla. Oct. 22,
2019) ........................................................................................................ 13, 22

*R.W. v. Bd. of Regents of the Univ. Sys. of Ga.*,
No. 1:13-CV-2115-LMM, 2016 WL 8607395 (N.D. Ga. June 7,
2016) ........................................................................................................ 20, 24

*Rogers Grp., Inc. v. City of Fayetteville, Ark.*,
683 F.3d 903 (8th Cir. 2012) ................................................................... 9, 10, 11

*Rosie D. ex rel. John D. v. Patrick*,
593 F. Supp. 2d 325 (D. Mass 2009) .................................................................29

*Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*,
353 F.3d 901 (11th Cir. 2003) ......................................................................... 6, 10

*True Life Choice, Inc. v. Dep't of Health & Rehab. Servs. of State of
Fla.*,
914 F. Supp. 507 (M.D. Fla. 1994) ....................................................... 10, 11, 17

*Watrous v. Borner*,
995 F. Supp. 2d 84 (D. Conn. 2014) .................................................................20

*Wetherington v. Ameripath, Inc.*,
No. 1:10-CV-1108-AT, 2013 WL 12097825 (N.D. Ga. Mar. 27,
2013) (Totenberg, J.) ......................................................................................25

tk-753585

*Williams v. City of Atlanta*,
  No. 1:17-cv-1943-AT, 2018 WL 2284374 (N.D. Ga. Mar. 30, 2018)..................6

*Yule v. Jones*,
  766 F. Supp. 2d 1333 (N.D. Ga. 2010) ........................................................ 17, 33

**Statutes**

42 U.S.C. § 1988.................................................................................... passim

52 U.S.C. § 10310(e) .................................................................................33

**Other Authorities**

O.C.G.A. § 21-2-300..................................................................................16

## I.    INTRODUCTION

On August 15, 2019, this Court awarded Curling Plaintiffs a sweeping, statewide injunction, just as they sought.  This included not only barring the use of DREs in 2020 elections and beyond, but also requiring Georgia to—among other things—replace its entire election management system (GEMS) across all 159 counties and to develop a default plan for hand-marked paper ballots in the event a new lawful election system could not be implemented in time for 2020 elections. This was, and is, an enormous victory.  There can be no genuine dispute over this.

In fact, Defendants[1] have long conceded that Curling Plaintiffs succeeded in obtaining the very relief they sought from this Court in its August 15 Order[2] ("Order").   They argued themselves that this Court's Order was so comprehensive in awarding Curling Plaintiffs' desired relief that there was—and is—literally nothing more for the Court to do with respect to the DRE/GEMS-based claims. Defendants' lead counsel was unequivocal in admitting this when opposing further discovery:  "[W]e don't see what relief the discovery would lead to at this point in

---

[1] "Defendants" refers to both State Defendants and Fulton County Defendants, which expressly adopted all State Defendants' arguments regarding Plaintiffs' fee submissions.  (Dkt. No. 661 at 11 n.3.)  "Opp." refers to State Defendants' Opposition.  (Dkt. No. 660.)  "Fulton Opp." refers to Fulton County Defendants' Opposition.  (Dkt. No. 661.)

[2] *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1374-75 (N.D. Ga. 2019) [hereinafter *Curling II*].

1

light of the preliminary injunction."  (Dkt. No. 590 at 20:18-20.)

Defendants have repeated this admission numerous times to oppose further proceedings in this case, even going so far as to admit that the injunction rendered a trial on the merits of Curling Plaintiffs' DRE/GEMS-based claims wholly unnecessary.  This admission disposes of their meritless claim that "Plaintiffs are not prevailing parties."  The Court's Order would obviate a trial only if this Court resolved Curling Plaintiffs' claims thoroughly in their favor through that Order.  Otherwise, they would be entitled—as a matter of due process—to a trial on the merits of their claims to obtain any relief the Court preliminarily denied or did not already award.  But *Defendants* are adamant that no such trial is needed any longer—because they recognize Curling Plaintiffs won.

Curling Plaintiffs' central mission was to enjoin the use of the unreliable DRE/GEMS election system for Georgia voters.  They did exactly that, as Defendants repeatedly have emphasized since this Court's Order.  Defendants now attempt to confuse the facts by claiming that Curling Plaintiffs "request[ed] to stay in Court."  Not so.  Defendants chose to contravene the advice of their *own* election security experts and adopt a *new* BMD-based election system that also is unlawful.  This forced Curling Plaintiffs to bring supplemental claims for relief from *that* system to again protect their right to vote.  The BMD-based claims have

2

no bearing on whether Curling Plaintiffs prevailed on their DRE/GEMS-based claims and thus whether Curling Plaintiffs are entitled to the fees and costs incurred in achieving that victory.  In fact, Defendants themselves have emphasized this very distinction:  "[T]he new BMD system . . . replaces the *entirety* of the existing DRE system, including the GEMS servers."  (Dkt. No. 645-1 at 10 (emphasis in original).)  The only question now is the amount of fees and costs Curling Plaintiffs may rightfully recover.  And to that question, Defendants resort to myriad attacks on Curling Plaintiffs' counsel's and experts' time entries and costs that are meritless and distort the facts.

Finally, State Defendants' personal assault on Curling Plaintiffs, their counsel, and their experts is not well taken and ignores their own deliberate campaign to obstruct, compound, and delay these proceedings at nearly every turn. This included an appeal the Eleventh Circuit rejected as "frivolous"[3] and repeated efforts to mislead Curling Plaintiffs and this Court both by omission and outright misrepresentation.  Defendants' hyperbolic claim that Curling Plaintiffs are trying

---

[3] Judge William Pryor specifically called the State Defendants' appeal as to legislative immunity "frivolous as far as [he could] tell."  Oral Arg. Recording, *Curling v. Kemp*, No. 18-13951 (11th Cir. Jan. 30, 2019), http://www.ca11.uscourts.gov/oral-argument-recordings?title=&field_oar_case_name_value=curling&field_oral_argument_date_value%5Bvalue%5D%5Byear%5D=&field_oral_argument_date_value%5Bvalue%5D%5Bmonth%5D=, at minute 7:27.

to "raid the coffers of the State" is as offensive as it is false.  Defendants alone have treated taxpayers as their "own personal financiers . . . for their policy advocacy regarding elections," including defending Georgia's DRE/GEMS-based system that their *own* election security experts admitted was unreliable.

Curling Plaintiffs should not now be denied the extraordinary fees and costs that *Defendants precipitated* through their vexatious litigation strategy simply because they include government entities.  Were that the standard—and it is not[4]— then government entities could routinely employ such strategies and thereby make critical constitutional and other actions unaffordable for the *taxpayers* who must litigate such cases.  Indeed, it should not be forgotten that Curling Plaintiffs are themselves law-abiding taxpayers.  They were required to prosecute this case for years to protect the right to vote not just for themselves, but for all Georgia voters—all the while enduring baseless personal attacks by State Defendants on their intentions and integrity.  All they seek now is what they are owed as prevailing parties in this hard-fought litigation, which is entirely reasonable.

---

[4] This is "an improper ground" for denying or reducing the requested award.  *Lavin v. Husted*, 764 F.3d 646, 651 (6th Cir. 2014) (internal quotation marks and certain citations omitted) (citing, among others, *Johnson v. Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979)).

## II.    ARGUMENT

The Supreme Court has emphasized that counsel for prevailing parties in such cases as this "should be paid . . . '*for all time reasonably expended on a matter*.'"  *City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) (emphasis in original) (internal citation omitted).  Defendants fail to overcome the "strong presumption that the lodestar is the reasonable sum the attorneys deserve."  *Bivins v. Wrap It Up., Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal quotation marks and citation omitted).

### A.    Curling Plaintiffs are Prevailing Parties under 28 U.S.C. § 1988

Defendants' Opposition turns on the principal argument that, because the Court did not grant every single thing Curling Plaintiffs sought in their motion for preliminary injunction, they are not "prevailing" parties and the Court should deny *all* fees and expenses.  (Opp. 1, 3, 7-10.)  Defendants overreach by ignoring the broad scope of relief awarded and the governing prevailing party standard.[5]  The Eleventh Circuit requires only "at least some relief on the merits."  *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009).  In other words, "if the plaintiff has succeeded on any significant issue . . . which achieve[d] some of the

---

[5] Fulton County Defendants mistakenly assume that Curling Plaintiffs seek recovery under the "catalyst theory."  (Fulton Opp. 6.)  They seek only fees and expenses reasonably incurred while litigating the claims the Order addressed.

benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Williams v. City of Atlanta*, No. 1:17-cv-1943-AT, 2018 WL 2284374, at *4 (N.D. Ga. Mar. 30, 2018) (internal quotation marks omitted) (citing *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 907 (11th Cir. 2003)).

There can be no genuine dispute that Curling Plaintiffs succeeded on *multiple* significant issues, which already have been specified for the Court. (*See, e.g.*, Dkt. Nos. 596-1 at 1-2; 630 at 9-14.) The Court designed the relief to remedy the core constitutional injury Curling Plaintiffs established, and did so consistently with the principles of voter verification, auditability, and election security that Curling Plaintiffs emphasized. *Curling II*, 397 F. Supp. 3d at 1374-75 (identifying the "central issue" as whether Defendants should be permitted to continue using the DRE/GEMS system "incapable of producing a verifiable voter audit trail"). The Court heavily cited evidence that Curling Plaintiffs submitted and developed through the extensive work for which they now seek reimbursement. (*E.g., id.* at 1348-50, 1353-55, 1376-80, 1398.) The Court recognized the valuable contributions of Curling Plaintiffs' primary expert witness, Dr. Alex Halderman, calling him a "marvelous resource." (Dkt. No. 590 at 22:23-24.) Further, Curling Plaintiffs' litigation efforts and *statewide success* benefited Georgia voters across

6

the state, including in other election-related cases.  *See Common Cause/Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1294-95 (N.D. Ga. 2018) (Totenberg, J.) (taking notice of expert evidence introduced in this case).[6]

Defendants next claim Curling Plaintiffs are not prevailing parties because Defendants purportedly "already planned to" phase out the DRE/GEMS system, such that much of the relief was "already in motion."  (Opp. 10 (emphasis removed).)  As with their baseless allegations throughout this litigation, they offer no evidence to substantiate this claim, nor could they.  It is spurious to claim that the eventual abandonment of the DRE/GEMS system after nearly 20 years and only after this Court's September 2018 Order admonishing Defendants to remedy the severe vulnerabilities with that system is mere coincidence.  In any event, Defendants long ago acknowledged that this argument holds no weight.  They admitted that the State's new statute—which, *not coincidentally*, came only after this Court's September 2018 Order[7] admonishing Defendants to remedy the

---

[6] Fulton County Defendants' argument that Curling Plaintiffs did not prevail *as to them* is nonsensical.  (*See* Fulton Opp. 2-3.)  The Court reiterated its 2018 finding that injunctive relief against State Defendants would also enjoin Fulton County, and indeed it has.  *Curling II*, 397 F. Supp. 3d at 1342-43.  Further, in awarding the injunction, the Court rejected Fulton County Defendants' opposition just as with State Defendants.

[7] *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1327-28 (N.D. Ga. 2018) [hereinafter *Curling I*].

obviously deficient DRE/GEMS-based system for future elections—did *not* moot Curling Plaintiffs' claims and expressly declined to argue otherwise.  (*See* Dkt. Nos. 356 at 1; 362 at 2.)

Regardless, Defendants' argument ignores the significant relief that went well beyond elimination of the DRE/GEMS system.  The Order required State Defendants to develop a hand-marked paper ballot "default plan" (*Curling II*, 397 F. Supp. 3d at 1410); oversee a hand-marked paper ballot "pilot election" (*id.*); file with the Court proposed or final auditing rules within two days of their issuance (*id.*); develop a plan to remedy several kinds of errors and discrepancies in the voter registration database (*id.* at 1411); require counties to furnish a printout of the voter registration list to all precincts (*id.*); provide clear guidance to counties on voters' rights to cast provisional ballots and prominently post information to inform voters of those rights and how to check their registration and provisional ballot status (*id.*); and conduct an "in-depth review and formal assessment" of the cybersecurity of the voter registration database (*id.*).  Defendants do not and cannot argue that they "already planned to" take these significant Court-ordered actions. Therefore, their argument that they "already planned to" phase out the DRE/GEMS system cannot provide a basis for the Court to deny all fees and expenses.

Further, as a matter of law, subsequent developments that make judicial relief redundant *in hindsight* do not deprive parties of prevailing party status. *Bird v. Sumter Cty. Bd. of Educ.*, No. 1:12-CV-76 (WLS), 2014 WL 1340677 (M.D. Ga. Apr. 3, 2014). In *Bird*, the plaintiff was a prevailing party because he obtained a preliminary injunction that barred the defendants from violating voting rights for what turned out to be about one year. *Id.* at *3. The plaintiff obtained a TRO enjoining and suspending an election from taking place using malapportioned election districts, and later obtained additional injunctive relief when the court appointed an advisor to assist the court to redraw the challenged districts. *Id.* About one year after the TRO, and while the district redrawing process was still in progress, a Supreme Court decision rendered the case moot. *Id.* Nonetheless, the court recognized that the plaintiff was a prevailing party by virtue of having obtained both forms of injunctive relief during the intervening one-year period. *Id.*

It makes no difference whether the subsequent development came as a result of a change in the law. In *Rogers Group, Inc. v. City of Fayetteville, Arkansas*, 683 F.3d 903 (8th Cir. 2012), the court concluded that the plaintiff was a prevailing party even where the defendant city passed a new ordinance midway through the case that fully mooted it. *Id.* at 911; *cf. True Life Choice, Inc. v. Dep't of Health &*

9

*Rehab. Servs. of State of Fla.*, 914 F. Supp. 507, 512 (M.D. Fla. 1994) (plaintiffs were prevailing parties despite subsequent administrative code amendment).

This District has rejected arguments similar to that of Defendants.  In *Gaylor v. North Springs Associates, LLLP*, No. 1:13-cv-01551-WCO, 2015 WL 12868201 (N.D. Ga. Apr. 2, 2015), the court found the plaintiff was a prevailing party despite the defendant entering into agreement that would eventually moot the case.  *Id.* at *2-3.  In that case, involving the ADA[8], the court awarded the plaintiff preliminary injunctive relief requiring the defendant shopping center to remove certain architectural barriers by a certain date.  *Id.* at *3.  Then, prior to the court's deadline, the shopping center filed an agreement that contemplated that it would be torn down and replaced with residential units, and argued that the agreement mooted the case.  *Id.* at *2.  However, the court noted that the defendant would continue to operate the shopping center at least until the buyer obtained required re-zoning approvals, a period that could last several months, and thus found that the plaintiff was a prevailing party due to the relief awarded during the intervening time.  *Id.* at *3.

---

[8] The Eleventh Circuit applies the same "prevailing party" analysis in awarding fees under Section 1988 as it does under the ADA and many other civil rights statutes.  *Smalbein*, 353 F.3d at 904-05.

tk-753585

Here, Defendants fail in their attempt to use subsequent events as a shield against fee liability.  The Order materially changed Curling Plaintiffs' legal relationship with Defendants from the moment it issued by awarding significant relief in a variety of respects.  *See Bird*, 2014 WL 1340677, at *3; *Rogers Grp.*, 683 F.3d at 911; *True Life*, 914 F. Supp. at 512; *Gaylor*, 2015 WL 12868201, at *3.  Defendants admitted as much when they confessed they undertook their (misguided) efforts to implement a BMD-based system at least in part "in order to comply with . . . this Court's recent preliminary-injunction Order."  (Dkt. No. 658 at 49.)  They further admitted they "instituted a large-scale effort" to do so "according to the Court's timeframe."  (*Id.*)  Even now, they implicitly acknowledge significant relief Curling Plaintiffs obtained.  (Opp. 8 (admitting that the Court-ordered hand-marked paper ballot default plan was "core relief" and not part of "Defendants' predetermined path").)  Defendants' admissions dispose of their argument that this Court's Order awarded Curling Plaintiffs no significant relief and merely provided what Defendants already planned to do.

### B.   Curling Plaintiffs' Requests Are Reasonable, Contrary to Defendants' Vague and Baseless Objections

Defendants' objections to this fee request fail the threshold requirement that they be "specific and reasonably precise."  *P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 851 (11th Cir. 2019) (internal quotation marks omitted) (citing

11

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)).  Defendants object to Curling Plaintiffs' request on grounds not recognized by the law of the Eleventh Circuit, and propose massive reductions based on precedent Curling Plaintiffs have already distinguished.  (*See* Opp. 11; Fulton Opp. 23 n.7.)  To repeat, *Georgia State Conference of the NAACP v. Kemp* is distinguishable because it was a "relatively straightforward . . . single count statutory construction action," (No. 1:17-cv-1397-TCB, 2018 WL 2271244, at *3 (N.D. Ga. Apr. 11, 2018)), whereas this case is—as Defendants themselves emphasized in defending their repeated misrepresentations to this Court about GEMS—complex, technically difficult, and time sensitive.  (Dkt. No. 647 at 12-14.)  *Martin v. Raffensperger* is also distinguishable, because the court in that case did not even have a chance to consider most of the requested relief.  (*See* Order on Fees, No. 1:18-cv-04776-LMM, Dkt. No. 101 at 10-11 (N.D. Ga. July 24, 2019).)  Defendants do not even try to connect the facts of those cases to this fee request.

### 1.    The Number of Hours Is Reasonable

The number of hours is reasonable in light of the significant success that flows from the Order, Defendants' vexatious litigation strategy, and the inherent complexity and time pressure of the case.  (Daniel Decl. ¶¶ 17-18, 24.)  The declarations Curling Plaintiffs have submitted are "evidence of considerable

12

weight." *See Prison Legal News v. Inch*, No. 4:12cv239-MW/CAS, 2019 WL 5394614, at *10 (N.D. Fla. Oct. 22, 2019) (citing *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 748 (11th Cir. 1988)).  Defendants' exaggerated complaints about Curling Plaintiffs' timekeeping do not warrant reductions under the demanding standard that the time "must appear . . . obviously and convincingly excessive under the circumstances." *See id.* (citing *Perkins*, 847 F.2d at 748).

> ### i. *Curling Plaintiffs Obtained the Fundamental Relief Sought*

Defendants repeatedly ask the Court to reduce Curling Plaintiffs' recovery far below the level that is strongly presumed to be correct (*Bivins*, 548 F.3d at 1350), on the basis that Curling Plaintiffs did not get exactly the relief they asked for in every single detail.  (Opp. 1-2, 6, 8-9, 37.)  However, an exact match between the relief requested and the relief obtained is not necessary to recover all fees and costs.  *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 868 (11th Cir. 1993).  "Where a plaintiff has obtained excellent results . . . the fee award should not be reduced simply because the plaintiff . . . did not receive all the relief requested."  *Id.* (internal quotation marks removed) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435-36, 436 n.11 (1983)).

Here, Curling Plaintiffs obtained excellent results, including the fundamental relief sought in their lawsuit.  The Order prohibited Defendants from using the

13

DRE/GEMS system in all elections statewide after 2019.  *Curling II*, 397 F. Supp. 3d at 1410.  As recounted above (*see* Section II.A, *supra*), it further required Defendants to prepare for potential implementation of a hand-marked paper ballot system, develop and file auditing regulations with the Court, and remedy serious deficiencies in the voter registration database and provisional ballot procedures. *Id.* at 1410-11.  It crucially forced Defendants to do these things on a Court-imposed schedule.  *See id.* at 1407-08 (describing previous schedule slippage). Finally, it recounted for posterity "the long and twisting saga of Georgia's non-auditable DRE/GEMS voting system" in order "to ensure transparency for the future."[9]  *Id.* at 1411-12.

Defendants argue that because they supposedly had planned to phase out the DRE/GEMS system *at some unspecified point in the future*, Curling Plaintiffs' success was only partial and their recovery should be heavily reduced.  (Opp. 1-2, 10, 37.)  However, a near-identical argument was raised and rejected in *Common*

---

[9] The Order is already serving this purpose.  The Emmy Award-winning variety talk show Last Week Tonight with John Oliver cited the Order in its show aired on Sunday, November 3, 2019.  LastWeekTonight, *Voting Machines: Last Week Tonight with John Oliver (HBO)*, YouTube (Nov. 3, 2019), https://www.youtube.com/watch?v=svEuG_ekNT0, at minute 9:30 (discussing Defendants' failure to patch "one of the most severe security flaws ever discovered in a voting system" (quoting *Curling II*, 397 F. Supp. 3d at 1348 (quoting Shamos Dep. at 115))).

*Cause v. Jones*, 235 F. Supp. 2d 1076 (C.D. Cal. 2002).  In that case, the court

found plaintiffs were fully successful where their sustained litigation efforts

achieved decertification of pre-scored punch card ballot machines "in as expedited

a manner as [was] practicable." *Id.* at 1080-81.  Even though the California

Secretary of State announced his intention to decertify the challenged punch card

ballot machines and stipulated to do so in the middle of the lawsuit, the court held

that the plaintiffs were successful and entitled to all time spent through the case's

"ultimate conclusion." *Id.* at 1080.  This was because the defendant's "vigorous

opposition" and inadequately slow progress "made reasonable Plaintiffs'

prosecution of th[at] action." *Id.*

The Eleventh Circuit also rejected a similar argument in *Brooks*.  997 F.2d at

868.  There, the court affirmed a fully compensatory award where, despite

Georgia's pre-litigation efforts to comply with the Voting Rights Act's

preclearance requirements, once litigation had begun, it "contended [preclearance]

was not required." *Id.*

Like the plaintiffs in those two cases, Curling Plaintiffs are entitled to full

recovery because they obtained sweeping injunctive relief during a time in which

Defendants continued to operate the DRE/GEMS system and opposed Curling

Plaintiffs' motions seeking to enjoin use of that system. *See Jones*, 235 F. Supp.

15

2d at 1080-81; *Brooks*, 997 F.2d at 868.  Moreover, as the Court recognized, Georgia law did not require the removal of the DRE/GEMS system by any hard deadline.  *Curling II*, 397 F. Supp. 3d at 1373 (citing O.C.G.A. § 21-2-300 (providing for electronic ballot markers "[a]s soon as possible, once such equipment has been certified.")).  The Master Dominion Contract set forth only a best-case scenario, if implementation went off "without a hitch," which the Court found highly unlikely given Defendants' "schedule slippage" and demonstrated "capacity issues."  *Curling II*, 397 F. Supp. 3d at 1407-08, 1408 n.96.  Finally, there is no evidence—or even reason to believe—that Defendants would have abandoned the DRE/GEMS system in 2020 absent this Court's September 2018 and August 2019 Orders.

> ii.    *Defendants' Vexatious Litigation Strategy Made This Case Longer and More Expensive Than It Needed to Be*

Despite filing a 45-page brief, State Defendants do not spend even one page trying to justify their many strategic and tactical decisions that extended and complicated this case way beyond what was necessary or appropriate.[10]  The Court has already remarked that they "are responsible in their own way for their own delay," and expressed its wish that "the state had been more forthright with [it] a

---

[10] Fulton County Defendants take pains to distance themselves from State Defendants when it comes to discovery conduct.  (*See* Fulton Opp. 21.)

16

year ago" because "it would have saved us time."  (Dkt. No 571 at 356:5-6, 377:9-

14.)  Defendants' sanctionable discovery misrepresentations are not only a basis

for fee recovery in their own right, but they are also a prime example of

Defendants' indifference to the multiplication of work for Curling Plaintiffs and

the Court.  Defendants cannot complain about a large fee award that reflects the

costs of their own unfortunate strategy.  *See Yule v. Jones*, 766 F. Supp. 2d 1333,

1349 (N.D. Ga. 2010); *True Life*, 914 F. Supp. at 512 (noting that if the defendant

"had acted quicker and with more good faith, [it] could have reduced the attorney

fees involved in this action.").

Defendants attempt to distract from their own responsibility.  They draw

attention to a filing in which Curling Plaintiffs opposed a motion from Coalition

Plaintiffs, and suggest from this that "disagreements between the groups of

plaintiffs" majorly contributed to the case's protracted nature.  (Opp. 4; Fulton

Opp. 12-13.)  This is idle speculation that holds no weight.  The reality is that,

despite early differences between Coalition Plaintiffs and prior counsel, both

groups of Plaintiffs—as this Court witnessed firsthand in two evidentiary hearings

and numerous filings and teleconferences— ultimately worked well together to

maximize efficiencies in a complex case.  There can be no genuine dispute that

17

Plaintiffs litigated this case to excellent results far more cost-effectively than had Defendants faced two separate lawsuits.

At any rate, this case has entailed a high degree of complexity no matter how efficiently Plaintiffs conducted themselves, and that complexity supports a fully compensatory award. Early on, the Court noted "the complexity of this case." (Dkt. No. 135 at 3.) Ruling on the first set of preliminary injunction motions, the Court recognized that the "subject matter in this suit is complex, even if well-presented." *Curling I*, 334 F. Supp. 3d at 1321. And during the hearing on the second set of preliminary injunction motions, it observed that the case continued to raise "very difficult issues." (Dkt. No. 571 at 377:7.) State Defendants' attempt to characterize the case as "straightforward" (Opp. 11), rings especially false seeing as their primary line of defense against sanctions was that the discovery issue presented was one that "rarely arises" (Dkt. No. 647 at 2), and that the "possibility for [lawyers to misinterpret] technical details is rampant" (*id.* at 3), in this case. This is just further evidence of Defendants' willingness to say anything to defend a given position at any given moment, even if outright contradicting prior arguments. The *Johnson* factors Defendants cite—novelty and difficulty of the questions presented and the skill requisite to perform the legal service properly—thus strongly support the full award as currently requested. *Johnson v. Ga. Highway*

18

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); (Daniel Decl. ¶¶ 18-20; *cf. id.* ¶¶ 16-35, 38 (analyzing each *Johnson* factor in detail and concluding that the requested award is reasonable)).

iii.      *Stage I Fees Should be Awarded in Full*

Defendants argue that Stage I fees should be reduced by 95% because the Court did not grant Curling Plaintiffs' first motion for preliminary injunction. (Opp. 35-37.)  This argument is based on the nonsensical notion that parties must prevail on every motion at every stage to be "prevailing parties."  That is not how Section 1988 fee awards work.  *See Hensley*, 461 U.S. at 435 ("the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised"); *Obester v. Lucas Assocs., Inc.*, No. 1:08-cv-3491-AT, 2011 WL 13167915, at *4 (N.D. Ga. Dec. 19, 2011) ("[t]he theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit" (citing *Dowdell v. City of Apopka, Fla.,* 698 F.2d 1181, 1187 (11th Cir. 1983))).  Curling Plaintiffs obtained excellent results going to the core of their claims.  That it took two motions to get there is irrelevant in evaluating this request (especially given that Defendants misled this Court about key facts in opposing the first motion).  *Curling II*, 397 F. Supp. 3d at 1350-52.

The Court's decision not to grant the 2018 preliminary injunction motion is "immaterial" to Curling Plaintiffs' ability to recover fees for work in support of that motion.  In *Fernandes v. Limmer*, the Fifth Circuit affirmed the district court's Section 1988 fee award for work on an unsuccessful preliminary injunction motion before the plaintiff eventually obtained favorable relief.[11]  663 F.2d 619, 636-37 (5th Cir. 1981); *see also R.W. v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:13-CV-2115-LMM, 2016 WL 8607395, at *3 (N.D. Ga. June 7, 2016) (declining to deduct hours spent on three unsuccessful motions because no argument was made that it was unreasonable *to file* the motions).

Further, it is logical that the fee award should encompass attorney and expert work on the first preliminary injunction motion, because that work "distilled the key issues and substantially advanced the litigation," contributing to Curling Plaintiffs' ultimate success.  *Watrous v. Borner*, 995 F. Supp. 2d 84, 90 (D. Conn. 2014).  Indeed, in ordering injunctive relief, the Court referred to "evidence from both the 2018 and 2019 [preliminary injunction] motions."  *Curling II*, 397 F. Supp. 3d at 1392.  Moreover, even though the Court denied the injunction in its September 2018 Order, it nonetheless admonished Defendants to finally remedy

---

[11] In *Fernandes*, the plaintiff had even agreed to voluntarily dismiss and file a new suit, yet the court awarded fees from the beginning of the first suit.  663 F.2d at 636-37.

20

the highly-vulnerable DRE/GEMS system, which precipitated the new statute Defendants now emphasize. *Curling I*, 334 F. Supp. 3d at 1327-28.

Fulton County Defendants criticize several individual time entries from Stage I. (Fulton Opp. 28 n.8.) Most are absolute necessities, such as "set[ting] up a database for document review" that would allow reasonably efficient review of documents that Defendants later produced in a format that was essentially unreviewable in its native form. (*See* Dkt. No. 631 at 328-52.) Others, such as ECF registration, DRE data analysis, and mass file transfer from former counsel are specialized administrative tasks that were sensibly delegated to junior attorneys and paralegals. Finally, Curling Plaintiffs voluntarily withdraw its fees and expenses incurred communicating with the press, including all such time identified by Fulton County Defendants, even though this is well within the normal responsibilities of counsel in a case of this magnitude and media attention. (Suppl. Cross Decl. ¶ 9.)

        *iv.*      *Stage II Fees Should Also Be Awarded in Full*

Defendants do not even try to distinguish *Franklin v. Hartford Life Insurance Co.*, No. 8:07-cv-1400-T-23MAP, 2010 WL 916682 (M.D. Fla. Mar. 10, 2010), which was decided the year after the case cited by Defendants for the proposition that fees in Stage II are not recoverable as a rule. (*See* Opp. 34 (citing

tk-753585

*Common Cause/Ga.*, 554 F.3d at 1356-57).)  As the district court found that it had

authority to award fees under Section 1988 due to the minor role the appeal played

in resolving the merits of that case, so too this Court should find that it has

authority to award all or at least a substantial portion of Curling Plaintiffs'

requested fees.  *See Franklin*, 2010 WL 916682, at *5; *see also Prison Legal*

*News*, 2019 WL 5394614, at *13 (awarding over $100,000 in fees for time worked

while case was on appeal).

The reality is that actual development and presentation of the case to the

Eleventh Circuit was only a small part of the overall efforts Curling Plaintiffs'

counsel took during Stage II.  Even if the Court is persuaded to disallow the hours

claimed while the case was on appeal, it should only reduce the claimed amount by

$310,953.75 (approximately 48% of Stage II fees). [12]  This amount fairly reflects

work before the Eleventh Circuit.  First, it reflects all time from two attorneys in

Morrison & Foerster's appellate practice group, Joseph Palmore and Michael Qian,

who actually drafted the briefs, prepared for and delivered oral argument, and

managed the strategy before the Eleventh Circuit.  (Dkt. No. 631 at 5-6.)  Second,

it reflects one-third of Mr. Cross's time, which he spent assisting Mr. Palmore and

---

[12] Mr. Palmore's fees ($94,500), plus Mr. Qian's fees ($135,957.50), plus one third
of Mr. Cross's fees ($80,496.25) equals $310,953.75.

22

Mr. Qian with the appeal while maintaining primary responsibility for the ongoing development of evidence and strategy in the district court. (*Id.*) The other seven timekeepers engaged in non-appellate work that this Court has complete discretion to award.

Further, the whistleblower report was reasonably related to the claims on which Curling Plaintiffs ultimately prevailed, because it identified yet another serious vulnerability with the election system—one the State outright misrepresented, even going so far as to falsely accuse a political rival of attempting to hack the election system.[13]

Lastly, the Open Records Request also is recoverable. Curling Plaintiffs were forced to use various means to develop their claims because Defendants consistently refused to produce documents or otherwise cooperate in discovery. (*See* Dkt. No. 631 at 327-52.) Finally, even substantial time spent researching and developing potential arguments that are not ultimately asserted may be recoverable, since deducting that time as excessive could "discourage attorneys

---

[13] Tim Starks, *Georgia's Kemp lobs evidence-free hacking allegation at Democrats on eve of vote*, Politico (Nov. 4, 2018), https://www.politico.com/story/2018/11/04/georgia-election-kemp-abrams-hacking-919333.

from diligently investigating alternative avenues of relief for their clients." *R.W.*, 2016 WL 8607395, at *4.

>    v.    *Defendants Raise No Specific Argument against Curling Plaintiffs' Time Incurred in Stage III and Most of the Time Incurred in Stage IV*

Defendants concede as a practical matter that Curling Plaintiffs are entitled to compensation for their time incurred in Stage III.  They further concede that Curling Plaintiffs are entitled to fees for their time incurred in preparing the filings necessary for the attorneys' fees motion itself.

Defendants, however, criticize the recovery of time spent preparing the Bills of Costs.  But even conservatively estimated, *i.e.*, counting time that may have overlapped partially with the attorneys' fee motion, that portion of the proposed award spans only 17.25 hours, and totals only $8,653.75 in fees (less than 6% of claimed fees during that stage).  (Supp. Cross Decl. ¶ 8.)  Thus, even if Defendants' criticism is correct, it would not justify anywhere near a 50% reduction.  (*See* Opp. 38.)  Although the Court found the Bills of Costs premature, the time Curling Plaintiffs spent preparing costs documentation would have been incurred anyway in connection with the current fee request.  Further, the decision to prepare the Bills of Costs was reasonable.  Early preparation and review of Bills of Costs can serve the interest of judicial economy.  *See Wetherington v.*

24

*Ameripath, Inc.*, No. 1:10-CV-1108-AT, 2013 WL 12097825, at \*14 (N.D. Ga. Mar. 27, 2013) (Totenberg, J.).  Of course, Defendants are ultimately responsible for any of this time that is excessive in hindsight, because Defendants' conflicting positions have left Plaintiffs and the Court guessing whether the case has reached a final judgment on the DRE/GEMS claims or not.  (*See* Dkt. No. 590 at 20:18-20 ("[MR. RUSSO:] we don't see what relief the discovery would lead to at this point in light of the preliminary injunction").)

### vi. Defendants' Complaints of "Block Billing," Vague Entries, and Overstaffing Are Exaggerated

"Block billing" and vagueness are not serious concerns here, especially where Curling Plaintiffs' revised proposed award *already* effectively reduces over 8.5% of fees in the exercise of healthy billing judgment.  (Suppl. Cross Decl. ¶ 10.) Defendants impugn the records of over a dozen timekeepers over nearly two years on the basis of three time entries by Ms. Catherine Chapple.  (Opp. 33 (citing only May 8-10, 2018 entries, Dkt. No. 631 at 33).)  But even Defendants recognize that the three entries are fine in substance, quoting several "supposedly compensable activities."  (*Id.*)  Since Defendants do not argue that the total time Ms. Chapple spent on those activities was unreasonable, they effectively concede that they could not find a single day that counsel billed excessive time.

Further, a careful examination of the time entries Defendants had previously complained about as "block billed" showed that Defendants misread and mischaracterized entries that were readily understandable. (Dkt. No. 656-1 at ¶¶ 4-5, 8.) In reality, the allegedly "block billed" tasks are in fact "intertwined or otherwise sufficiently related to one another to warrant summary in a single time entry," and "sufficiently detailed [to] determine how the time was spent." *Lamiri v. Audette*, No. 6:15-cv-1810-Orl-28TBS, 2015 WL 13741736, at *5 (M.D. Fla. Dec. 22, 2015). And as Curling Plaintiffs have set forth in detail previously, Defendants argue for massive reductions, larger even than in cases they cite that have little resemblance to this one. (Dkt. No. 656 at 27 (demonstrating that no decision cited by Defendants reduced any fee request by more than 10% for "block billing").)[14]

Fulton County Defendants alone complain that Curling Plaintiffs overstaffed this case. (Fulton Opp. 13-15.) State Defendants are silent, having enlisted thirteen attorneys from five law offices over the course of this litigation, and their silence confirms the unreasonableness of Fulton County's argument. Simply counting all the attorneys' names that have ever represented Curling Plaintiffs is

---

[14] No reduction is appropriate, but even if it were, it should not exceed the 10% level that Fulton County Defendants submit is reasonable. (*See* Fulton Opp. 28.)

misleading in that many individuals contributed only to certain stages, and many have left Morrison & Foerster or taken parental leave.  It makes even less sense to count Holcomb + Ward's four attorneys as "overstaffing" when there was no overlapping time where both Holcomb + Ward and Morrison & Foerster billed Curling Plaintiffs.

> vii.   *Defendants' Arguments Against Holcomb + Ward LLP's Recovery is Unsupported*

Only Fulton County Defendants argue that Holcomb + Ward LLP cannot recover their reasonable fees because they had ceased representing Curling Plaintiffs before this Court's August 15, 2019 Order.  (Fulton County Opp. 19, 30.) This argument is contrary to the law of this circuit.  *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987) (finding "nothing untoward" in an award that "encompassed the time expended by both initial and trial counsel").

Defendants complain that Holcomb + Ward "provided no summaries." (Opp. 17.)  This is misleading.  Holcomb + Ward's complete time records take up a single, easily reviewable column across seven pages, which summarize the same work that is apparent from the face of the docket.  Holcomb + Ward prepared the First Amended Complaint, moved for expedited discovery, oversaw service of process, attended telephone conference proceedings with the Court, and prepared an Opposition to a Motion to Remand to State Court.  (Dkt. No. 631 at 526-32.)

27

viii.     *Fulton County Defendants' Argument that Curling
          Plaintiffs' Fee Request was Untimely is Absurd*

Fulton County Defendants frivolously argue that Curling Plaintiffs should be denied millions of dollars in fees and costs merely because exhibits—not a brief—to one of their filings related to this fee request were filed via ECF just after midnight in the wee hours of October 16, 2019.  (Fulton County Opp. 10-11.)  This is a hypertechnical "gotcha" tactic that warrants no attention.  Fulton County Defendants cite no authority supporting their argument that simply completing exhibits to a voluminous filing via ECF shortly after midnight—when it began before midnight—is untimely at all, much less warranting waiver of millions of dollars in fees and costs owed.  Tellingly, they claim no prejudice, nor could they given the lack of any allegation that anyone for the County was anxiously awaiting those exhibits at midnight and ready to start working on the response right then and there.  The frivolousness of their argument is highlighted by the fact that they never requested any extension to file its response.  To the extent any filing supporting this fee request was untimely in the wee hours shortly after midnight, it was not in bad faith and it was utterly harmless.[15]

---

[15] Fulton County Defendants later asked the Court for permission to amend their response, in a filing submitted more than sixteen hours after the relevant deadline. (Dkt. No. 662.)

28

### 2.      The Hourly Rates are Reasonable

Defendants' arguments on hourly rates lack merit.  (Opp. 11-13.)  Morrison & Foerster's non-local rates are appropriate under the special circumstances of this case.  (Daniel Decl. ¶ 24.)  They would not be unreasonable even in the Atlanta legal market.  (*Id.* ¶¶ 24-25.)

Defendants start by criticizing Curling Plaintiffs for submitting declarations from primary timekeepers.  (Opp. 12.)  There are several problems with this criticism.  Primary timekeepers are an appropriate source to establish the actual rates they charge paying clients, which in turn is compelling evidence.  *Rosie D. ex. rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 330 (D. Mass 2009) ("the strongest and most persuasive authority is that an attorney representing a plaintiff in a civil rights action should get whatever his or her normal hourly rate is.").  Further, Defendants do not specifically disagree with any of the facts those timekeepers testified to, and they appear unaware of corroborating evidence in the record.  (*See, e.g.*, Dkt. Nos. 631 at 443-47, Curling Decl. (lack of local attorneys); 656-2 at 5, Suppl. Brown Decl. ¶ 12 (same); 656-3 at 8, NLJ Billing Report (average rates of King & Spalding LLP).)

Next, for the second time, Defendants incorrectly invite the Court to compare the requested rates to Defendants' hourly rate on this case.  (Opp. 12; Dkt.

29

No. 647 at 26.)  Both times, Defendants have cited *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988), for the proposition that their hourly rate "bears noting."  (Opp. 12.)  The cited opinion directly contradicts that proposition on its *very next page*.  *Norman*, 836 F.2d at 1300 ("it is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than . . . in a single case"); *id.* ("the fee charged by a government attorney is simply irrelevant to the . . . reasonable hourly rate for a plaintiff's civil rights lawyer.").

Defendants move on from their misstatement of the law to attack Mr. Cross by dismissing his testimony that Morrison & Foerster's D.C. office has specialized institutional cybersecurity expertise as "self-serving."  (Opp. 13.)  Defendants do not even call the underlying fact into question, nor could they.[16]  Even the Court

---

[16] Morrison & Foerster's cybersecurity practice is robust, but just a single example blunts Defendants' attack.  John Carlin is the former Assistant Attorney General for the U.S. Department of Justice's (DOJ) *National Security Division* (NSD) and former Chief of Staff to then-FBI Director Robert S. Mueller, III.  Maggie Miller, *Keeping US elections safe from hackers*, The Hill (Jan. 14, 2020), https://thehill.com/policy/technology/478085-keeping-us-elections-safe-from-hackers.  He recently authored a book entitled *Dawn of the Code War: America's Battle Against Russia, China, and the Rising Global Cyber Threat*.  James Clapper (former Director of National Intelligence) characterized it as "a crucial book—for practitioners and laymen alike—about the evolution, impacts, and implications of the abuses we've all witnessed, and many have personally experienced, in the cyber domain."  Morrison & Foerster LLP, *Dawn of the Code War* (Oct. 2018), https://www.mofo.com/resources/insights/181000-dawn-of-the-code-war.html.

acknowledged it.  (Dkt. No. 463 at 14 (noting Morrison & Foerster's "well

established institutional expertise in the management of high level security for

sensitive, confidential information technology and databases.").)

     After getting these swipes out of the way, Defendants finally turn to the core

issue of non-local rates.  (Opp. 13.)  Curling Plaintiffs have already explained how

they carried their burden to justify the need for out-of-state counsel—they made

"vigorous and multiple efforts . . . to secure and retain local counsel," but faced

insurmountable hurdles because of "the limited availability of lawyers who could

take [their] case on a pro bono or contingent basis."  (*See* Dkt. No. 656 at 23

(quoting *Draper v. Atlanta Indep. Sch. Sys.*, No. 1:06-CV-487-MHS, 2008 WL

11407320, at *9, 13 (N.D. Ga. Apr. 14, 2008)).)  Defendants cite no contrary

authority.  Although Defendants suggest with empty rhetoric that Curling Plaintiffs

did not do enough to find the mythical Atlanta lawyers willing and able to take on

this case, they do not actually challenge the diligence of Ms. Curling's efforts

(other than to point out correctly that she could not afford to pay market rates).

(Opp. 13, 13 n.7.)  The Eleventh Circuit admittedly puts the burden on plaintiffs

who seek non-local rates to prove a negative, *i.e.*, "a lack of [willing and able]

attorneys practicing in th[e] place [where the case is filed]."  *ACLU of Ga.*, 168

F.3d at 437.  Curling Plaintiffs have met that burden handily, with detailed

evidence to which Defendants respond with meaningless citations to Atlanta firms as if throwing darts at a phonebook.  The law does not require a plaintiff to contact every conceivable local lawyer, especially after the extensive efforts Curling Plaintiffs made and especially where it was obvious that a firm with the size and resources of Morrison & Foerster was needed.[17]  The purpose of 42 U.S.C. § 1988 is "to ensure effective access to the judicial process for persons with civil rights grievances."  *Hensley*, 461 U.S. at 429 (internal quotation marks and citation omitted).  Fee recoveries are critical for achieving that purpose, and Defendants' argument would render such recoveries illusory.

Further, this case presents unique circumstances justifying non-local rates. The Court itself recognized the "unfortunate" position from which Curling Plaintiffs conducted their search for representation.  (Dkt. No. 135 at 3.)  They were "left hanging" after "considerable investment of time and funds into this case" when the Court granted Steptoe & Johnson LLP's Motion to Withdraw over Curling Plaintiffs' objections.  (*Id.*)  It noted that Curling Plaintiffs "would be better served if they could retain new counsel" "[i]n light of the complexity of this case."  (*Id.*)  Curling Plaintiffs took the Court's advice to heart.  They made

---

[17] Even had a firm comparable to Morrison & Foerster in size and resources that had a local Atlanta office taken this case, there would not be significant differences in the hourly rates charged.  (Daniel Decl. ¶ 23.)

diligent efforts to find new counsel in Atlanta, and when none was willing and able, they broadened their search.  In the end, they chose Morrison & Foerster as lead counsel and obtained excellent results.  This is precisely the way Congress designed the civil rights fee-shifting statute to work.

Although non-local rates are warranted on the facts of this case, should the Court conclude otherwise, Mr. Harold Daniel offers a proposal based on typical rates in the Atlanta market in 2019.  (Daniel Decl. ¶ 25, Ex. C.)  However, it should be noted that these rates are drawn from a variety of firms, not just those comparable to Morrison & Foerster in size and reputation.  (*Id.*)

### 3.    The Expenses are Reasonable

Defendants concede, as they must, the reasonableness of most of Curling Plaintiffs' expenses.  (Daniel Decl. ¶ 37.)  They are wrong in arguing that some are not, such as Westlaw and Lexis charges, "photocopies," "long distance telephone," and "hotel and inflight Wifi."  (*See* Opp. 44-45.)  These items—which are in fact billed to paying clients in the normal course—are recoverable as long as they are reasonably incurred, which they were.  *Yule*, 766 F. Supp. 2d at 1344.

Defendants vaguely object to Dr. Halderman's rate as "high."[18]  His rates

---

[18] Defendants do not contest that Curling Plaintiffs may recover reasonable expert fees under 42 U.S.C. § 1988.  (*See* Opp. 44.)  The Court may also award (non-duplicative) expert fees under 52 U.S.C. § 10310(e), which provides:  "[i]n any

should not surprise Defendants, however, since their own cybersecurity expert Ms. Payton already testified that there is a "war for talent" for "cybersecurity professionals" (Dkt. No. 570 at 271:19-20).  Dr. Halderman's rate is only $150 (25%) higher than Dr. Shamos'.  (*See* Dkt. No. 472-1, Shamos Decl. ¶ 23.)  This small difference is more than made up for by the extensive contributions to this case that Dr. Halderman has made and this Court has emphasized based upon his specific expertise.  (Dkt. No. 590 at 22:23-24.)  And Defendants merely feign an inability to discern the meaning of Dr. Halderman's time entry stating that he "Collect[ed] Basis Documents."  (*See* Opp. 44.)  He was preparing to analyze Defendants' production of GEMS databases despite Defendants' sanctionable discovery abuses.

Finally, Curling Plaintiffs' counsel generally booked their lodging through the travel agency, Lawyers Travel, which negotiates very low rates with hotels. (Daniel Decl. ¶ 36.)  Additionally, counsel always flew at economy fares and often used Uber locally.  (*Id.*)  No travel costs or expenses should be reduced when Defendants have not objected to them specifically, but even if they had, the expenses sought here are reasonable under the circumstances of this litigation.  (*Id.*

---

action or proceeding to enforce the voting guarantees of the fourteenth . . . amendment, the court, in its discretion, may allow the prevailing party . . . reasonable expert fees."

34

¶ 37.)  Curling Plaintiffs do not accept Defendants' premise that the State

Accounting and Reimbursement Policy is somehow the proper measure of the

adequacy of expense documentation under Section 1988.  (*See* Opp. 43.)

However, in the interest of transparency, Curling Plaintiffs nonetheless attach

additional invoices to further document counsel's lodging expenses.  (Suppl. Cross

Decl. ¶ 11, Ex. D.)

### C.    Curling Plaintiffs are Entitled to Full Non-Duplicative Recovery

In the briefing on the pending Joint Motion for Sanctions, Defendants have

suggested that Curling Plaintiffs have broken some unwritten rule by claiming

entitlement to their reasonable fees and expenses under multiple legal theories.

(Dkt. No. 647 at 22 n.2.)  Curling Plaintiffs, however, have been crystal clear that

they do not seek double recovery; they seek full single recovery under all legal

theories that entitle them to it.  (Dkt. No. 629 at 14-15; Dkt. No. 631 at 14-15,

Cross Decl. ¶¶ 41-42).  For example, since the Court denied Curling Plaintiffs'

Bills of Costs without prejudice as premature, Curling Plaintiffs now include those

costs in their requested award (they had previously been subtracted only to avoid

the appearance of double counting).  (Suppl. Cross. Decl. ¶ 8.)  It is not Curling

Plaintiffs' fault that Defendants exposed themselves to fee liability under multiple

legal theories, including sanctions for misconduct.

Defendants imply that Curling Plaintiffs seek duplicative recovery in particular between the Joint Motion for Sanctions and the present motion. They note two things. First, the tasks listed in the Second PI Stage ("Stage III") in the Cross Declaration included a mention of the "GEMS database discovery dispute." (Opp. 37 (citing Dkt. No. 631 at 7, Cross Decl. ¶ 13).) Second, a deduction Curling Plaintiffs made in a summary table to avoid any appearance of duplicative recovery does not "precisely match" the number of hours sought in the Motion for Sanctions. (Opp. 37 (citing Dkt. No. 631 at 8, Cross Decl. ¶ 14).) This is exactly the kind of vague attack that falls far short of Defendants' obligation to make "specific and reasonably precise" objections. *P&K Rest.*, 758 F. App'x at 851 (internal quotation marks and citation omitted).

The reason "GEMS database discovery dispute" appears in Stage III is because it occurred in Stage III. Defendants do not argue that Curling Plaintiffs' work on it was not reasonably related to pursuing their claims. Further, it is completely natural that the deduction in *that summary table* would not precisely match the number of hours sought in the Motion for Sanctions. The summary table is only supposed to summarize work *in Stage III*, which was created for the convenience of evaluating Curling Plaintiffs' requested Section 1988 award, and ended on July 27, 2019. (Dkt. No. 631 at 2-3, Cross Decl. ¶ 5.) The Motion for

36

Sanctions seeks recovery for *all time* related to Defendants' sanctionable conduct, which extends through the end of briefing on that motion in November 2019.  The alleged 1.5-hour discrepancy in Mr. Cross's time is fully explained by July 29 and 31 time entries appearing in sanctions motion documentation but redacted from the present motion's documentation.  (*Compare* Dkt. No. 623-1 at 40-41, *with* Dkt. No. 631 at 120-21.)  The alleged 0.25-hour discrepancy in Ms. Conaway's time is also fully explained by an August 13 time entry appearing in sanctions documentation but redacted from the present motion's.  (*Compare* Dkt. No 623-1 at 44, *with* Dkt. No. 631 at 124.)  Defendants' arguments are trivial and wrong.

The Court should follow the example of most courts in similar situations and disregard Defendants' frivolous attacks.  It should also consider that it is another tiring example of Defendants' tactic of raising baseless arguments that force Plaintiffs to spend time responding.  Defendants should pay for this tactic.

## III. CONCLUSION

Curling Plaintiffs achieved excellent results, obtaining statewide relief for themselves and all other Georgia voters in a variety of significant respects. Defendants themselves have emphasized this *fact* numerous times in arguing that the Court's August 2019 injunction obviated the need for any further proceedings, including a trial on the merits—because the sweeping relief the Court awarded

tk-753585

Curling Plaintiffs left nothing more for them to pursue regarding the DRE/GEMS system.  Defendants, through their vexatious approach to this litigation, forced Curling Plaintiffs to incur substantial fees and costs to obtain that critical relief. They now must reimburse Curling Plaintiffs.

For the reasons above, Curling Plaintiffs respectfully modify their previous request and now request an award of attorneys' fees and expenses in the total amount of **$4,403,385.30**, broken down as follows:

- Morrison & Foerster LLP:  **$3,641,780** in fees and **$437,381.56** in expenses;

- Krevolin & Horst LLC:  **$229,627.50** in fees and **$1,815.87** in expenses;

- Holcomb + Ward LLP:  **$92,780.37** in fees.

Respectfully submitted this 21st day of January, 2020.

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| John P. Carlin (*pro hac vice*) | GA Bar No. 425320 |
| Jane P. Bentrott (*pro hac vice*) | Adam M. Sparks |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 341578 |
| Robert W. Manoso (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2000 Pennsylvania Avenue, NW | Suite 3250 |
| Suite 6000 | Atlanta, GA 30309 |
| Washington, DC 20006 | (404) 888-9700 |
| (202) 887-1500 | |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

38

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

 */s/ David D. Cross*
David D. Cross

39

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2020, a copy of the foregoing **CURLING PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES UNDER 42 U.S.C. § 1988** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

 */s/ David D. Cross*
David D. Cross

40