## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>DECLARATION OF HAROLD T. DANIEL, JR.</u>

I, Harold T. Daniel, Jr., submit this declaration under penalty of perjury that the following is true and correct pursuant to 28 U.S.C. § 1746.

1.  My name is Harold T. Daniel, Jr.  I am a member of the State Bar of Georgia (admitted 1970).  I am a graduate of the Emory University School of Law.

2.  I served as President of the State Bar of Georgia (1994-1995) and as President of the Lawyers Club of Atlanta (1983-1984).  I am a member of the Atlanta Bar Association and of the American Bar Association (member, Federal Judicial Improvements Committee, 1996-1999; Commission on Separation of Powers and Judicial Independence, 1996-1997; and Standing Committee on the Federal Judiciary, 2000-2003).  I am a Fellow of the

American College of Trial Lawyers, a Fellow of the International Academy
of Trial Lawyers and a Fellow of the American Bar Foundation.  I am a
Master Barrister of the Joseph Henry Lumpkin American Inn of Court
(sponsored by the University of Georgia School of Law).  I have served on
the faculty of the Emory University School of Law Trial Techniques
Program, and I frequently lecture on the subject of business litigation at the
Vanderbilt University School of Engineering.  I have written and lectured
for various continuing legal education programs sponsored by the Institute
of Continuing Legal Education in Georgia and for other organizations.  I am
the author of a chapter entitled "Litigation Management by Law Firms" in
*Business and Commercial Litigation In Federal Courts*, Fourth Edition
(Thomson Reuters 2016).  I have been rated by my peers for listing in Best
Lawyers in America for Commercial Litigation and Bet-the-Company
Litigation.  I have an "AV" rating in the Martindale-Hubbell law directory.
A true and correct copy of my CV is marked Exhibit "A," attached hereto
and made a part hereof.

3.  I have engaged in the private practice of law in Atlanta, Georgia since 1970.
My practice in recent years has been devoted almost entirely to trial and
appellate litigation, representing plaintiffs and defendants, with substantial

concentration on complex business litigation.  From 1970 to July 1, 1994, I practiced in a small "litigation boutique" law firm in Atlanta, first in a general civil practice and later concentrating my practice in civil business litigation.  The firm changed names on several occasions.  When I commenced the practice of law, the firm was known as Webb, Parker, Young & Ferguson.  After two more name changes, the firm was known as Webb & Daniel from 1983 until merger with Holland & Knight LLP on July 1, 1994.  Webb & Daniel never had more than 12 lawyers.

4.  From July 1, 1994, to August 1, 2019, I practiced law in the Atlanta office of Holland & Knight LLP, first as an equity partner and later as of counsel. Holland & Knight is an international law firm with approximately 1300 lawyers located in cities throughout the United States and in some foreign countries.

5.  As of August 1, 2019, I resigned my position at Holland & Knight and commenced the practice of law as a sole practitioner at Harold Daniel Law LLC.

6.  At Webb & Daniel, I handled major civil business litigation in a small firm setting.  Among other matters, I handled the following major cases between 1983 and 1994:

- *Osterneck* v. *Barwick Industries*, 825 F.2d 1521 (11th Cir. 1987), cert. granted sub nom. *Osterneck* v. *Ernst* & *Whinney*, 56 USLW 3831 (1988); (federal securities and fraud; 13-week jury trial).

- *Beckham Petroleum*, et al. v. *Citizens* & *Southern National Bank*, (U. S. District Court for the Northern District of Georgia, Case No. 1-84-cv-00328-RHH (1987) (fraud, tortious interference with business relations, RICO; four-week jury trial, settled after jury verdict on liability).

- *Southern Engineering Company* v. *Gross*, et al., 410 S.E.2d 747 (Ga. 1991) (breach of fiduciary duty, misappropriation of corporate opportunities and fraud; nine-week jury trial).

- U. S. *Anchor Manufacturing* v. *Rule Industries*, et al., 7 F3d 1163 (11th Cir. 1993), 443 S.E. 2d 833 (Ga. 1994), 27 F. 3d 521 (11th Cir. 1994); (antitrust and breach of fiduciary duty, seven-week jury trial).

- *Williams* v. *Dresser* industries, 120 F. 3d 1163 (11th Cir. 1997) (fraud, eight-week jury trial).

In three of the cases listed above, I represented plaintiffs; in the other two, I represented defendants.

7.  At Holland & Knight, I continued to represent clients in complex business
    litigation.  Among other matters, I handled the following major cases from
    1994 to 2019:

    - *SunBank*, N. A. v. *Retirement Facility at Palm-Aire*, *Ltd*., 698 So.2d
      832 (Fl. 2004) (breach of contract, fraud and misappropriation of
      confidential information, one-week jury trial).

    - *Dresser-Rand* Company v. *Virtual Automation*, *Inc*., 361 F.3d 831 (5th
      Cir. 2004) (breach of contract, fraud and misappropriation of
      confidential information; one-week jury trial).

    - *Acuity Brands*, *Inc*. v. *Thomas & Betts*, *Inc*., U. S. District Court for
      the Northern District of Georgia, Case No. 1:05-cv-228 BBM (2005)
      (breach of contract; one-week bench trial, settled after trial).

    - *Discrete Wireless*, *Inc*. v. *Coleman Technologies*, *Inc*., 422 Fed.
      App'x 777 (11th Cir. 2011) (breach of contract and promissory
      estoppel; one-week jury trial).

    In two of these cases, I represented plaintiffs; in the other two, I
    represented defendants.

8.  Additionally, I have represented clients in major litigation that did not go to
    trial.  As an attorney at Webb & Daniel, I represented the plaintiffs in a

breach of contract case in the United States District Court for the Southern

District of Indiana. The law firm of Morrison & Foerster represented the

defendant. The case was settled shortly before it was scheduled for trial. At

Holland & Knight, I represented the defendant in *In re Sykes Enterprises*,

*Incorporated*, United States District Court for the Middle District of Florida

(class action, federal securities) and the defendant in *In re Mayflower PLC*,

United States District Court for the Northern District of Georgia (breach of

contract, federal securities law counterclaim, over 80 depositions taken on

two continents before settlement).

9. Earlier in my career, I represented Fulton County, a political subdivision of

the State of Georgia, and separately the Housing Authority of Fulton

County, Georgia in litigation involving constitutional law issues. In some of

those cases, attorney's fees were sought and recovered.

10. My current standard hourly rate is $1,050 per hour. This has been my

standard hourly rate for approximately two years. I routinely charge this

hourly rate to clients, and this is my rate for this engagement.

11. In my law practice, I have had occasion to hear sworn testimony and to

review itemized billing statements for fees and expenses submitted by

lawyers in connection with (a) civil litigation involving claims for recovery

of legal fees and expenses; (b) applications for the payment of legal fees in the United States Bankruptcy Court; and (c) services rendered by lawyers as expert witnesses on the subject of attorney's fees.  I have been qualified as an expert witness to testify in numerous courts on the subject of attorney's fees, including The United States District Court for the Northern District of Georgia, the United States District Court for the Southern District of Texas, the United States District Court for the Central District of California, Fulton Superior Court, DeKalb Superior Court, Cobb Superior Court and other courts.  I have previously served as an expert witness on the subject of attorney's fees for plaintiffs who were seeking a recovery in a *pro bono* litigation matter.

12. In the course of serving as an expert witness on the subject of attorney's fees, I have reviewed invoices and attorney billing records for fees and costs at various dates between 2017 and 2020 by many law firms, including the following:

- King & Spalding LLP;

- DLA Piper (US) LLP;

- Bondurant Mixson & Elmore LLP;

- Dentons;

- Bryan Cave LLP;

- Barnes & Thornberg LLP;

- Morris Manning & Martin LLP;

- Polsinelli; and

- Ichter Davis, LLP.

I have also served as an arbitrator in the State Bar of Georgia's Fee Arbitration Program on numerous occasions.  And I was appointed as Special Master by the Georgia Supreme Court in a disciplinary matter involving attorney's fees.  See *In the Matter of Denise L. Majette*, 757 S.E. 2d 114 (2014).

13. In forming my opinions, I have considered the materials that are listed on Exhibit "B" of this declaration.  In particular, I have reviewed the time and expense records of counsel for Donna Curling, Donna Price and Jeffrey Schoenberg (hereinafter sometimes referred to as the "Curling Plaintiffs").  I noted that time was recorded in segments of an hour and that the time reports generally included adequate descriptions of the work done by attorneys and non-lawyer staff for the Curling Plaintiffs.

14. Also, I interviewed Halsey G. Knapp, Jr., Adam M. Sparks, and David D. Cross regarding the history of the litigation and the work that was done by Curling Counsel.

15. In forming my opinions in this matter, I considered each of the factors to be considered in determining the reasonableness of a fee. See *Johnson* v. *Highway Express*, *Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974); Georgia Rules of Professional Conduct 1.5. With respect to the factors noted in *Johnson*, I noted the following:

**(a)   The time and labor required**

16. In their motion for attorney's fees, the Curling Plaintiffs seek to recover attorney's fees for 4,941.00 hours devoted by 13 principal timekeepers. In an exercise of billing judgment, the Curling Plaintiffs do not seek to recover fees for over 775 hours of time of 56 other timekeepers.[1] The Curling Plaintiffs also do not seek in this motion to recover any fees and costs awarded in connection with Plaintiffs' Joint Motion for Sanctions [Dkt.

---

[1] The motion does not seek to recover for time of attorneys who reported less than 50 hours on the case, nor for time spent communicating with the press. Time was excluded in its entirety for three appellate lawyers, 12 paralegals, 18 research analysts, three eDiscovery specialists and 14 summer associates.

623].  In their motion, the Curling Plaintiffs divide time for which fees are

sought into four stages of the litigation to date:

    a.  First Preliminary Injunction Stage (10/6/17 to 9/6/18).  In this period

        of 11 months, 10 days, Curling Plaintiffs' counsel recorded 1,920.75

        hours to the case.

    b.  Appeal (9/17/18 to 2/6/19).  Curling Plaintiffs' counsel recorded

        831.25 hours to the case during this stage.

    c.  Second Preliminary Injunction Stage (2/7/19 to 7/27/19).  In just over

        five months, counsel for the Curling Plaintiffs recorded 2,098 hours to

        the case.

    d.  Fee and Cost Recovery Stage 7/28/19-present).  As of this writing,

        counsel recorded 263.25 hours.

17. In reviewing the docket of the case, I noted that a major development

occurred on February 15, 2019 when there was a substitution of counsel for

Brad Raffensperger (as successor to Brian Kemp), State Election Board

Members David J. Worley, Rebecca N. Sullivan, Anh Li and Seth Harp

(hereinafter sometimes referred to as the "State Defendants").  Effective that

date, Vincent Robert Russo, Jr. and Bryan P. Tyson replaced Roy E. Barnes

and John Frank Salter, Jr. as counsel for the State Defendants. From a

review of the docket and interviews of counsel for the Curling Plaintiffs, it is clear that this case was hard-fought and became more adversarial after the substitution of counsel. A major discovery battle was conducted over access to the GEMS databases, for example. I was informed in the interviews that prior counsel, John Salter, was professional and cooperative, while also a zealous advocate for his clients. After the substitution, however, I was informed that the State Defendants' counsel were not always forthright and that it was unusually difficult to deal with them and to obtain information needed for the case, which generated significant work and corresponding fees and costs. I noted that the Court observed in its August 15, 2019 Order issues with State Defendants' counsel's candor and reliability, including with addressing well-established deficiencies in a challenged voting system (Doc. 579 at 6), showing "inconsistent candor with the Court" about a hacking incident (*id*.), failing to provide follow-up information to the Court in this and another voting case (*id*. at 86-87), and presenting the Court with scheduling and pilot information for implementing a new statewide voting system that changed over time with little or no warning (*id*. at 137-39, 142-45).

Curling Plaintiffs' counsel devoted more hours (2,098) to the case in the five months and ten days of the Second Preliminary Injunction Stage than it had in 11 months-plus of the First Preliminary Injunction Stage (1,920.75).

(b) **The novelty and difficulty of the questions**

18. This case involves complex issues of fact.  The technical issues involved required counsel to retain expert witnesses in very specialized areas, including J. Alex Halderman of Ann Arbor, Michigan, a computer science engineer with a background in voting technology and election security.  In order to understand the technical aspects of the case, the Court held three telephone conferences with counsel and experts between June 28 and July 17, 2019.  The Court observed that "it is a difficult case."[2]   At the conclusion of a two-day hearing on July 26, 2019, the Court observed:  "And these are very difficult issues though.  And I'm going to wrestle with them as best I can.  But there are not simple answers."[3]

---

[2] Preliminary Injunction Proceedings (July 25, 2019), Hr'g Tr. [Doc. 570], p. 30.

[3] Preliminary Injunction Proceedings (July 26, 2019), Hr'g Tr. [Doc. 571], p. 377.

(c)   **The skill requisite to perform the legal services properly**

19. This lawsuit was originally filed on July 3, 2017 by attorneys of a small
    Atlanta law firm, Holcomb & Ward ("H&W").  Due to the case's size and
    complexity, H&W determined that it would be necessary to find a larger law
    firm with more resources to handle the case.  A larger firm, Steptoe &
    Johnson, briefly undertook the representation of the Curling Plaintiffs, but it
    had to withdraw due to a claimed conflict of interest.  The Curling Plaintiffs
    then approached at least seven Atlanta-based lawyers and law firms in
    search of new counsel, and approaches were made to other law firms on
    their behalf by others.  Donna Curling Declaration (Dkt. 631).  After
    extensive efforts, the Curling Plaintiffs found that Morrison & Foerster's
    Washington, D. C. office was the only firm willing and able to take on the
    representation.[4]  With Morrison & Foerster in the lead, Krevolin & Horst
    agreed to serve as local counsel, conditioned on Morrison & Foerster

---

[4] I understand that Curling Plaintiffs' prior counsel at Steptoe & Johnson already
had engaged John Carlin of Morrison & Foerster to assist them with this matter
due to his specialized experience and expertise with the sort of complex
cybersecurity and national security issues involved in this case.  Morrison &
Foerster agreed to expand their engagement to assume the role and responsibilities
Steptoe & Johnson had previously agreed to fill.

handling most of the work and covering the expenses given the relative size and resources of the firms.

20. Morrison & Foerster has lawyers with specialized institutional cybersecurity expertise in its Washington office. These attorneys include John Carlin, who formerly served as an Assistant Attorney General for the United States Department of Justice's National Security Division and as chief of staff to former FBI Director Robert S. Muller, Jr. Morrison & Foerster clearly had the skill and experience necessary to represent the Curling Plaintiffs properly.

(d) **The preclusion of other employment**

21. When a law firm makes a commitment to take on a major litigation matter, and when it devotes substantial time and effort in dealing with the case, as both Morrison & Foerster and Krevolin & Horst did in this case, then it necessarily follows that the law firm is precluded from representing clients in other matters, especially when a matter requires as many timekeepers, hours, and resources as this one. There are only so many hours in a day.

(e) **The customary fee**

22. When a lawyer represents a client on an hourly rate basis, the hourly rate is a matter of choice by the parties. Some lawyers charge higher hourly rates

than others, and some lawyers agree to work for below-market rates.[5] Hourly rates can reflect the difficulty and complexity of the litigation. Hourly rates in excess of $1,000 are not uncommon in the Atlanta legal market.  The Atlanta-based firm of King & Spalding LLP would be ranked in the same tier of law firms as Morrison Foerster. I reviewed a survey by the National Law Journal ("NLJ") that reported hourly rates for law firms in 2016 and 2017.[6]  I noted in the 2016 survey that the partner rates at King & Spalding ranged from $810 to $1,250, or an average of $925.  In 2017, the NLJ reported that partner rates ranged from $775 to $1,435, or an average of $1,000.  Associate rates at King & Spalding in 2016 were reported to range between $400 and $600, and in 2017 to range between $525 and $790. Hourly rates are generally adjusted by law firms annually.  It can be reasonably assumed that King & Spalding hourly rates generally were increased for 2018 and 2019.[7]

---

[5] The rates being charged by counsel for the State Defendants are far below market rates in Atlanta, Georgia.  Apparently, counsel for the State Defendants are willing to accept such lower rates for the privilege of representing state officials or for some other reason.

[6] This is the latest survey available from this source.

[7] The New York Times reported that lawyers for the National Rifle Association charged their client $1,350 and $1,400 per hour respectively [New York Times, 22

i. **Morrison & Foerster LLP fees**

23. The State Defendants challenge the rates cited by Morrison Foerster on the ground that its attorneys are based in Washington, D. C. where hourly rates are sometimes higher than hourly rates in Atlanta.  The comparison is misplaced.  Morrison Forester is one of the leading law firms in the United States.  If you were to compare Morrison Forester's hourly rates with those of top tier, international law firms with offices in Atlanta, such as King & Spalding LLP, the differences would not be significant.  Based on my experience, I know of numerous lawyers in Atlanta who charged clients an hourly rate of $1,000 or more in 2019.

24. In my opinion, the non-local hourly rates stated in the fee application for Morrison & Foerster lawyers and staff are reasonable under the circumstances of this case.[8]  This is not a garden-variety lawsuit.  The case

---

August 2019]; the Boston Business Journal reported that a former partner at Ropes & Gray "typically charged" clients $1,500 per hour [Boston Business Journal, 2 January 2019].

[8] Several years ago, I served as an expert witness on the subject of attorney's fees for Kirkland & Ellis, a Chicago-based law firm, which represented the plaintiffs in a case in Muscogee Superior Court in Columbus, Georgia.  The case involved 50-year contracts for construction and management of base housing at Ft. Benning and other Army bases.  The defendants were represented by Greenberg Traurig, an international law firm.  The rates charged by Kirkland & Ellis were substantially higher than those being charged by local lawyers in Columbus.  Because this was a

required lawyers of skill with experience in cybersecurity, national security, constitutional law, civil rights law, and complex litigation. The case also required a law firm with resources to litigate under time constraints and against determined opposition. I practiced law in a small law firm for about the first half of my career to date. My former small law firm could not have undertaken representation of plaintiffs similar to the Curling Plaintiffs without the assistance of a larger law firm. Indeed, the very survival of my prior firm, Webb & Daniel, was threatened in 1985 when we represented the plaintiffs in a 13-week trial and again in 1991-1992 when we represented clients in two consecutive trials—a nine-week jury trial and a seven-week jury trial—during a 20-week period. See paragraph 6 above. I note, also, that only a large law firm with ample resources could have handled this case on a *pro bono* basis, which I understand was the only way the litigation could proceed for Curling Plaintiffs given their financial resources.

25. While not unreasonable, the hourly rates of Morrison & Foerster are on the high side for the Atlanta legal market. Based upon my research and

---

case of national significance that happened to be filed in a Georgia state court, I opined that the rates of Kirkland & Ellis were reasonable. The instant case presents a similar circumstance. This case may have far-reaching effects beyond the jurisdiction of the court in which it was filed, which the national attention it has received in the media and election security community indicates.

experience, I have prepared a chart showing reasonable hourly rates that were being charged by attorneys and paralegals in the Atlanta legal market in 2019 by firms of the type that handle litigation similar to the complexity and magnitude of this case.  A copy of my chart is marked Exhibit "C," attached hereto and made a part hereof.  I note that the rates on this chart were not the highest or the lowest that were being charged by attorneys in the Atlanta legal market in 2019 but instead represent a typical range.  In my opinion, the hourly rates listed on Exhibit "C," are typical of rates that were being charged by attorneys at various experience levels in the Atlanta legal market in 2019.

26. To the extent that a downward adjustment in rates was deemed to be warranted because Morrison & Foerster's hourly rates may be somewhat higher than typical rates charged by attorneys in the Atlanta legal market—and it is my opinion, based on my experience, that no downward adjustment is warranted here—then the rates could be generally adjusted in accordance with Exhibit "C" with the following results:

| Timekeeper | Rate | Hours | Amount |
|------------|------|-------|--------|
| Cross | 1,065 | 905.25 | 964,091.25 |
| Chapple | 525 | 733 | 384,825 |
| Miriyala | 400 | 1,073 | 429,400 |

| | | | |
|---|---|---|---|
| Bentrott | 475 | 543 | 258,281 |
| Manoso | 525 | 352.75 | 185,193.75 |
| Tepfer | 500 | 142 | 71,250 |
| Conaway | 375 | 372 | 139,500 |
| Carlin | 1,475 | 99 | 143,097 |
| Qian | 450 | 240 | 108,450 |
| Palmore | 1,125 | 87 | 97,875 |
| Brimer | 450 | 105 | 47,475 |
| Ali | 375 | 93 | 34,969 |
| Uhler | 400 | 192.75 | 77,100 |

The total after these adjustments would be $2,941,507.00.[9]  These

adjustments would reduce the total of Morrison & Foerster's fees by

approximately 19.33%.  In my opinion, any such discount would

unreasonably reduce the fees Morrison & Foerster incurred through its work

on this matter.  I offer this only as an alternative, based on my experience

and knowledge with rates in the Atlanta area, should the Court conclude that

a downward adjustment is warranted.  It is my opinion that any greater

---

[9] In making these adjustments to rates, I did not decrease the hourly rates of
attorneys Cross, Carlin or Palmore. Cross was lead attorney for the Curling
Plaintiffs and had the requisite skill and experience to lead this team, and I did not
believe that his hourly rate should be reduced.  Carlin was the senior partner with
significant experience in  cybersecurity law who monitored and supervised the
case, and Palmore was head of the appellate team who assisted in the appeal, and I
did not believe that their hourly rates should be reduced

reduction would be particularly unwarranted and unreasonable under the circumstances here.

     ii. **Krevolin & Horst Fees**.

27. Krevolin & Horst is seeking fees of $229,627.50.  This fee request is based upon hourly rates of $500 for Knapp and $350 for Sparks.  In my opinion, these rates are low for the Atlanta legal market.   Knapp is a well-respected lawyer who has practiced law in Atlanta for almost 40 years.  On one occasion, due to a conflict, I referred a case to Knapp, and he handled it well.  Sparks has developed expertise in election law and has had a significant role in this matter.  I note, also, that Krevolin & Horst was not just local counsel in name only but performed significant roles in this litigation, such as preparing an initial draft of the May 2019 preliminary injunction motion and witness examination at the July 2019 hearing.

    (f) **Whether the fee is fixed or contingent**

28. Both Morrison & Foerster and Krevolin & Horst undertook representation of the Curling Plaintiffs on a *pro bono* basis.  As such, the law firms could not have expected any compensation unless the Curling Plaintiffs were

prevailing parties in the litigation.  To this extent, their representation may be deemed to be the equivalent of representation on a contingency fee basis.

### (g)  The limitations imposed by the client or the circumstances

29. Because the case involved voting technology and the equipment used by governmental authorities to count votes in elections, this litigation was strongly tied to election deadlines.  There was strong pressure to resolve the issues in order to avoid voting irregularities and fraud in upcoming elections. This case was on a fast track with respect to two preliminary injunction motions, multiple rounds of motions to dismiss, and an appeal, with numerous court hearings and deadlines.

I was also informed in interviews of counsel that the trial team at Morrison & Foerster led by David Cross was simultaneously handling a major antitrust case in Utah (that began trial with jury selection in mid-September before settling) among other substantial matters and had conflicting time pressures as they worked on multiple large cases.

### (h)  The amount involved and the results obtained

30. The results obtained were those desired throughout the course of the
litigation:  eliminating DREs and GEMS statewide, among other relief the
Court awarded in August 2019.

(i) **The experience**, **reputation and ability of the attorneys**

31. The Curling Plaintiffs were represented by very experienced and able
lawyers.  The principal lawyers from Morrison & Foerster were the
following:

- David D. Cross.  Cross served as lead counsel.  He is a partner in the
  firm's Global Antitrust practice group and has 17 years of experience in
  complex business litigation.  He is a graduate of Columbia University
  Law School and clerked for Michael B. Mukasey, former Chief Judge of
  the United States District Court for the Southern District of New York
  and former United States Attorney General.

- John P. Carlin.  Carlin is chair of the firm's Global Risk and Crisis
  practice group and co-chair of the National Security practice group.  He
  is a former Assistant Attorney General for the United States Department
  of Justice's National Security Division, and he was formerly chief of staff
  to FBI Director Robert S. Muller, III.  Carlin regularly advises clients on

national cybersecurity and other national security matters.  He is a graduate of Harvard Law School.

- Joseph R. Palmore.  Palmore is co-chair of the firm's Appellate and Supreme Court practice group.  He was formerly Assistant Solicitor General at the United States Department of Justice.  Palmore is a graduate of the University of Virginia Law School and clerked for three judges, including Justice Ruth Bader Ginsburg on the Supreme Court of the United States.

- Catherine L. Chapple.  Chapple is a graduate of Wake Forest Law School and clerked for a judge on the United States Court of Federal Claims.  Since working on the case, she left the firm and now works as in-house counsel for Google.

- Jane P. Bentrott. Bentrott is a graduate of Columbia Law School.

- Robert W. Manoso.  He is a graduate of the University of Virginia Law School.

- Cameron A. Tepfer.  Tepfer is a graduate of New York University Law School and clerked for a federal judge in the Eastern District of New York.  Since working on the case, he left the firm and is now an Assistant

United States Attorney in the United States District Court for the District
of Columbia.

- Marcie Brimer.  She is a graduate of Harvard Law School.

- Arvind S. Miriyala. He is a graduate of Georgetown University Law
Center.

- Michael Qian.  He is a graduate of Stanford University Law School and
previously clerked for a judge on the United States District Court for the
District of Columbia and served as a Bristow Fellow at the Office of the
Solicitor General in the United States Department of Justice.  After
working on the case, he left the firm and is currently a law clerk for
Justice Ruth Bader Ginsburg on the United States Supreme Court.

- Austin M. Uhler.  Uhler graduated from law school at the University of
California in Berkley.

32. The Curling Plaintiffs were represented by the following lawyers of
Krevolin & Horst:

- Halsey G. Knapp, Jr.  Knapp has practiced law in Atlanta for almost 40
years  and is a well-respected lawyer with significant experience in
representing clients in complex business litigation.  He is past president
of the Lamar American Inn of Court (sponsored by the Emory University

School of Law) and has held leadership positions in numerous

committees of the organized Bar.  He is a graduate of Emory University

School of Law.

- Adam M. Sparks.  He is a graduate of Columbia Law School, where he

  was a Harlan Fiske Stone Scholar.  He clerked for a federal judge in the

  United States District Court for the Northern District of Georgia.  Sparks

  handles complex business litigation and has developed expertise in

  election law.

- Joyce Gist Lewis.  She is a graduate of Wake Forest Law School, *magna*

  *cum laude*.

- Sada J. Baby.  She is a graduate of the University of Michigan Law

  School, *cum laude*.

(j)  **The "undesirability" of the case**

33. Based on the fact that the Curling Plaintiffs approached a number of

lawyers and law firms about representation and were turned away, it would

appear that the case was undesirable to Atlanta-based firms for financial,

political, and possibly other reasons.  Also, the undertaking of a major

litigation matter on a *pro bono* basis is not a decision to be lightly made, and

many lawyers—while sympathetic to the Curling Plaintiffs and even eager to help them—may have considered the case to be "undesirable" for that reason.  I understand that this litigation already has greatly exceeded the expectations of Morrison & Foerster and Krevolin & Horst regarding the time and cost consumed by the matter, which is still ongoing as the Curling Plaintiffs attempt to obtain similar results regarding the new voting technology the Defendants adopted after the July 2019 hearing ended.

### (k) **The nature and length of the professional relationship with the client**

34. This factor would not seem to apply to this case, except to note, again, that Morrison & Foerster already had been retained for this case when the Curling Plaintiffs needed to replace Steptoe & Johnson due to the particular experience and expertise of John Carlin.

### (l) **Awards in similar cases**.

35. This case is unique and difficult to compare with other litigation matters. Nonetheless, based on my experience, the amounts of fees sought by the Curling Plaintiffs would be in line with fee awards in other complex cases in this district.

36. I have also reviewed documents supporting the request of counsel for the Curling Plaintiffs to recover out-of-pocket costs and expenses.  I noted that opposing counsel challenged some of the cost items.  For example, on one occasion, an attorney spent a night at a Ritz Carlton Hotel at a cost of $346.35. I noted, however, that the reservation was booked through a travel agency, Lawyers Travel.  When I was an attorney at Holland & Knight, the firm used the same travel agency, and I know of my own personal knowledge that Lawyers Travel negotiated very low rates with hotels.  I noted, also, that other hotel reservations in Atlanta, which were sometimes booked through Hotels.com, at Courtyard by Marriott and Moxy by Marriott were booked at similar rates of $296 and $302 respectively.  I also noted that lawyers and experts always traveled on airplanes at economy fares and that they frequently used UBER for local transportation.

37. Based on my experience, the amount of $437,381.56 is a reasonable amount of costs and expenses in this matter for Morrison & Foerster and consistent with what I would expect to see in litigation of this size and scope.  Based on my experience, the amount of $1,815.87 is a reasonable amount of costs and expenses in this matter for Krevolin & Horst as active local counsel and consistent with what I would expect to see in litigation of this size and scope.

38. Based on the foregoing, the amount of $3,641,780.00 is a reasonable amount of attorney's fees for Morrison & Foerster in this matter. This amount is fully justified because the results obtained were excellent, the law firm took risk in accepting a complex *pro bono* case in an area of developing law and counsel demonstrated exemplary skill in their handling of this litigation. This opinion was determined by using the standard hourly rates of Morrison & Foerster, which are generally higher than most Atlanta-based law firms but consistent with firms of comparable size and reputation that have offices in Atlanta. Because of the results obtained over determined resistance, the resources which Morrison & Foerster applied to the case and its expertise in cybersecurity law, it is my opinion that this amount is justified. Alternatively, if it is deemed appropriate to adjust hourly rates of Morrison & Foerster timekeepers to hourly rates typically charged by Atlanta law firms in 2019, the amount of $2,941,507.00 would be consistent with such rates.

39. In my opinion, the amount of $229,627.50 is a reasonable amount of attorney's fees for Krevolin & Horst in this matter. This amount is justified because this firm played an active role in the litigation and made significant contributions to the result obtained.

This 21st day of January 2020.

Harold T. Daniel, Jr.

# EXHIBIT A

## HAROLD DANIEL LAW, LLC

Daniel House
119 The Prado NE
Atlanta, Georgia 30309-3327
404-372-4087
www.haldaniellaw.com
haldaniellaw@outlook.com

Harold T. Daniel, Jr. has practiced law in Atlanta, Georgia for more than 40 years.  He has represented plaintiffs and defendants in civil business litigation in federal and state courts and has tried approximately one hundred cases to juries in Georgia, Florida and Texas.  His cases have routinely involved complex factual and legal issues including antitrust, securities, RICO, business torts and commercial law.  He has also served as an arbitrator, mediator, special master and expert witness on the subject of attorney's fees and other matters related to the legal profession.

## EXPERIENCE

**AUGUST 2019 – PRESENT**
**PARTNER, HAROLD DANIEL LAW, LLC**

**JULY 1994 – JULY 2019**
**PARTNER, HOLLAND & KNIGHT LLP**

**May 1970 – June 1994**
**WEBB & DANIEL (and predecessor firms)**

## EDUCATION

**EMORY UNIVERSITY, B.A POLITICAL SCIENCE**
**EMORY UNIVERSITY SCHOOL OF LAW, J.D.**

## REPRESENTATIVE ENGAGEMENTS

- Defended major law firms for alleged violations of federal securities laws and in litigation against the law firms for recovery of attorney's fees
- Represented an engineering company in a nine-week jury trial against former officers and directors for breaches of fiduciary duties, misappropriation of corporate opportunities and tortious interference with business relationships; favorable verdict affirmed on appeal to state's highest court
- Obtained favorable rulings on motions for summary judgment and settlement on very favorable terms for a public British corporation which was sued by a public U. S. corporation for fraud, breaches of fiduciary duties, promissory estoppel and breach of contract in connection with an acquisition; the litigation also included a counterclaim under federal and state securities laws
- Represented heirs of an estate in protracted litigation arising out of probate of a will, including favorable jury verdict against the executor for breaches of fiduciary duties
- After a jury trial of three and one-half months, obtained a multimillion-dollar securities fraud verdict in favor of the former owners of a manufacturing company; judgement was affirmed on appeal
- Represented a multinational manufacturing company in a two-month jury trial in a business fraud case involving the formation of a joint venture with a Japanese company; represented the client on appeal and obtained a total victory with $250,000 in costs awarded against the plaintiffs
- Defended a manufacturing company in a seven-week trial involving alleged violations of the Sherman Act; won a total victory on appeal
- Defended a public telecommunications company in a class action securities case; settled on favorable terms for client

## REPRESENTATIVE ENGAGEMENTS (cont.d)

- Represented a bank and four mutual funds in in a lender liability case in a Florida state court; obtained favorable jury verdict and denial of injunctive relief, both of which were affirmed on appeal
- Represented multinational re-seller of computer products in a jury trial for RICO violations against entities which had illegally obtained and used confidential pricing and customer information; obtained verdict, which was trebled, plus punitive damages and attorney's fees

### MEMBERSHIPS

- The International Institute for Conflict Prevention & Resolution (CPR), Distinguished Neutrals, General Commercial Panel and Banking, Accounting and Financial Services Panel
- State Bar of Georgia, past president, 1994-1995
- Lawyers Club of Atlanta, past president, 1983-1984
- American Bar Association, Standing Committee on Federal Judiciary, 2000-2003; Standing Committee on Federal Judicial Improvements, 1996-1999; Commission on Separation of Powers and Judicial Independence, 1996-1997
- American College of Trial Lawyers, Fellow
- International Academy of Trial Lawyers, Fellow
- American Bar Foundation, Fellow
- Joseph Henry Lumpkin American Inn of Court, Master Barrister
- Atlanta Bar Association
- Leadership Atlanta, 1998
- Georgia Legal Services Program, former Trustee and board chair
- Georgia Legal Services Foundation, Trustee
- Atlanta Girls' School, former Trustee and board chair
- The Children's School, former Trustee
- All Saints-Saint Luke's Episcopal Home for the Retired, Inc. (Canterbury Court), Trustee and former board chair
- Saint Luke's Episcopal Church, former member of Vestry

### HONORS AND AWARDS

- Boy Scouts of America, Eagle Scout; Whitney A. Young, Jr. Award, Atlanta Area Council, 2007
- State Bar of Georgia, Distinguished Service Award, 2001
- Georgia Legal Services Program, Champion of Justice award, 2016
- Martin Luther King Center for Nonviolent Change, Inc., Community Service Award, 1996
- The Best Lawyers in America guide, Commercial Litigation and Bet-the-Company Litigation, 2001-2020
- Martindale-Hubbell AV Preeminent Peer Review Rated
- *Lawdragon*, Leading 500 Litigators in America, 2006

### PUBLICATIONS

- Sikes v. Teleline, Inc.:  The Eleventh Circuit Rejects "Fraud On The Market" Theory As Device To Certify Consumer Fraud And Civil RICO Class Action"  (with James F. Bogan III), American Bar Association Section of Antitrust Law, Civil RICO Committee, *RICO News*, Fall 2002
- Litigation Management by Law Firms, Chapter 68, *Business and Commercial Litigation in Federal Courts, Fourth Edition*, Thomson Reuters 2016
- Ansley Park:  Home to Historic Judicial Residences, *11th Circuit Historical News*, Spring 2016

# EXHIBIT B

EXHIBIT "B"

1.  Answer To Third Amended Complaint Of Plaintiffs Coalition For Good Governance, Laura Digges, William Diggs III, Ricardo Davis and Megan Missett

2.  Answer To Second Amended Complaint

3.  State Defendants' Consolidated Response In Opposition To Motion For Attorneys' Fees And Costs

4.  Order dated 5/21/19

5.  Fulton County Defendants' Answer to Consolidated Plaintiffs' Third Amended Complaint

6.  Fulton County Defendants' Answer To Curling Plaintiffs' Second Amended Complaint

7.  Coalition Plaintiffs' Corrected Detailed Specifications In Support Of Motion For Attorneys' Fees

8.  Coalition Plaintiffs' Special Motion For Award Of Attorneys' Fees And Costs

9.  Curling Plaintiffs' Specification And Itemization Of Requested Award For Fees Under 2 U.S.C. Sec. 1988 And Response In Support Of Bill Of Costs

10. Curling Plaintiffs' Memorandum In Support Of Special Motion For Award Of Attorneys' Fees And Costs

11. Docket as of 1/6/20

12. Mary Carole Cooney, Vernetta Neriddin, Kathleen D. Ruth, Mark Wingate and Aaron Johnson's Corrected Consolidated Response To Plaintiffs' Motion For Attorneys' Fees

13. Order filed 9/17/18

14. Order filed 8/15/19

15.   Third Amended Complaint Of Plaintiffs Coalition for Good Governance, Laura Digges, William Diggs III, Ricardo Davis and Megan Missett

16.   Court hearing transcripts of 9/12/18, 7/25/19 and 7/26/19

17.   Plaintiffs' Joint Motion for Sanctions, together with supporting declarations of Halsey Knapp, Alex Halderman and Bruce Brown

18.   State Defendants' Opposition To Joint Motion For Sanctions

19.   Plaintiffs' Reply In Support Of Motion For Sanctions

# EXHIBIT C

EXHIBIT "C"

2019 RATES

| | |
|---|---|
| Paralegal | $300 |
| Junior Associate (1-5 years) | $400 |
| Senior Associate (5+ years) | $525 |
| Partner/Counsel (0-5 years) | $575 |
| Partner/Counsel (5-10 years) | $650 |
| Partner/Counsel (10-20 years) | $750 |
| Partner/Counsel (20-30 years) | $850 |
| Partner/Counsel (30+ years) | $1050 |