## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | **Civil Action No. 1:17-CV-2989-AT** |

## CURLING PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ADDRESSING RIPENESS RAISED *SUA SPONTE* BY THE COURT

## TABLE OF CONTENTS

I.  Introduction ................................................................................................. 1

II. Argument .................................................................................................... 3

  A.  Curling Plaintiffs Present a Live, Concrete Controversy ................................. 3

    1.  The Legal Issue Before the Court Is Defined and Mature ............................ 3

    2.  Curling Plaintiffs' BMD-Based Claims Arise from Well-Established Facts ................................................................................................. 4

    3.  Curling Plaintiffs' BMD-Based Claims Are Not Contingent on the Outcome of Future Events or Other Proceedings .................................. 6

  B.  Curling Plaintiffs Will Suffer Hardship without Court Redress ..................... 9

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ..........................................................................................7

*Blanchette v. Conn. Gen. Ins. Corps.*,
    419 U.S. 102 (1974) ................................................................................. 1, 4, 10

*Cheffer v. Reno*,
    55 F.3d 1517 (11th Cir. 1995) ..........................................................................3

*Curling v. Kemp*,
    334 F. Supp. 3d 1303 (N.D. Ga. 2018) ............................................................3

*Curling v. Raffensperger*,
    397 F. Supp. 3d 1334 (N.D. Ga. 2019) .................................................... 4, 6, 9

*Dermer v. Miami-Dade Cty.*,
    599 F.3d 1217 (11th Cir. 2010) ........................................................................1

*Fla. State Conference of NAACP v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ................................................................ 1, 9, 10

*Pennsylvania v. West Virginia*,
    262 U.S. 553 (1923) ..........................................................................................1

*S. Pilot Ins. Co. v. CECS, Inc.*,
    15 F. Supp. 3d 1284 (N.D. Ga. 2013) (Totenberg, J.),
    *order clarified*, 15 F. Supp. 3d 1329 (N.D. Ga. 2013) .............................. 1, 3, 6, 8

*Warner Cable Commc'ns, Inc. v. City of Niceville*,
    911 F.2d 634 (11th Cir. 1990) ......................................................................2, 6

**Other Authorities**

O.C.G.A. § 21-2-300(a)(2) ......................................................................................5

## I. INTRODUCTION

Ripeness is a nominal threshold that turns on just two factors: "the hardship that a plaintiff *might* suffer without court redress and the fitness of the case for judicial decision." *S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1294 (N.D. Ga. 2013) (Totenberg, J.) (emphasis added) (quoting *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1221 (11th Cir. 2010)), *order clarified*, 15 F. Supp. 3d 1329 (N.D. Ga. 2013). The Supreme Court has long emphasized, particularly involving a constitutional right, that "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.'" *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923). Consistent with this principle, in *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008), the Eleventh Circuit upheld as ripe a constitutional challenge to a Florida voter registration statute on the mere possibility that errors on voters' registration applications *might* cause the applications to be rejected, which then *might* leave them too little time to submit corrected applications before the upcoming election.

As in *Browning*, the hardship Curling Plaintiffs and other Georgia voters will suffer without redress from this Court goes to the core of our democracy: the dilution and even deprivation of their right to vote. They need (and should) not

1

await that hardship to protect that right, as the Eleventh Circuit previously found.

In fact, Curling Plaintiffs' claims are even more concrete and mature than in *Browning*. "The central concern [of the ripeness doctrine] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Warner Cable Commc'ns, Inc. v. City of Niceville*, 911 F.2d 634, 642 (11th Cir. 1990) (brackets in original) (internal citations omitted). Georgia's BMD-based system is now the *current*—and *only*—voting system statewide for all elections, including critically-important presidential primaries beginning March 2. It already is being used for two special elections. The specific aspects of its design that render it unconstitutional are already in place and undisputed, including its reliance on *non-human-readable* barcodes to tabulate votes. Thus, unlike in *Browning*, the hardship to Curling Plaintiffs is neither uncertain nor contingent upon future events: Georgia voters have no ability to verify that their votes will be tabulated as intended, leaving them with no confidence that their votes will count. State Defendants admitted that the question of the constitutionality of tabulating votes using barcodes is ripe. Curling Plaintiffs have a right now to resolve that important constitutional question—and denying them that right would cause irreparable harm. The Court should deny Defendants' motion to dismiss and afford Curling Plaintiffs an opportunity to obtain relief.

## II. ARGUMENT

### A. Curling Plaintiffs Present a Live, Concrete Controversy

#### 1. The Legal Issue Before the Court Is Defined and Mature

A legal claim is unripe only when it "is not 'sufficiently mature, and [where] the issues [are not] sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Southern Pilot*, 15 F. Supp. 3d at 1294 (alterations in original) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). Curling Plaintiffs' claims present a well-defined, concrete issue: whether Georgia's barcode-based BMD voting system is constitutional. As discussed below, the specific attributes of that system's design are well-established and Georgia is already using it. Like with the DRE-based system, the question of whether Georgia's barcode-based BMDs deprive Curling Plaintiffs of their "fundamental right to participate in an election process that accurately and reliably records their votes," *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1315 (N.D. Ga. 2018) [hereinafter *Curling I*], is "sufficiently defined and concrete [] to permit effective decisionmaking by the court.'" *Southern Pilot*, 15 F. Supp. 3d at 1294. Defendants' counsel admitted as much at the December 6, 2019 status conference. (Dkt. No. 679 at 43:20-22.) Whether a state's current election system is constitutional is precisely the type of dispute that a court should decide before an

election. *Browning*, 522 F.3d at 1164; *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1402 (N.D. Ga. 2019) [hereinafter *Curling II*]. The "threatened injury" here is real and irreparable, necessitating redress now. *Blanchette*, 419 U.S. at 143.

### 2. Curling Plaintiffs' BMD-Based Claims Arise from Well-Established Facts

The BMD-based system is now Georgia's statewide voting system. (*See* Dkt. No. 689 at ¶¶ 9-10.) Georgia's BMDs print a 2D barcode and a written summary of voters' choices; however, the scanners tabulate votes based on the barcodes, not the summaries. (Dkt. No. 658-2 ¶ 4.) Voters cannot read barcodes and no voter can verify whether a barcode accurately conveys his or her intended candidate selections. *Cf. Curling II*, 397 F. Supp. 3d at 1341 n.10. Despite Defendants' repeated claims that the BMD system provides a voter-verifiable ballot, it is undisputed—and dispositive—that the portion of the ballot used to tabulates votes and decide election outcomes is *not* voter-verifiable.

Even Defendants' own election security experts advised against the barcode-based BMD system because it is not voter-verifiable. (*See* Dkt. No. 554, Shamos Dep. at 56:13- 57:2, 57:13-21; Dkt. No. 615-2 at 2-3.) As the Court observed, the national consensus among election security and cybersecurity experts is that all elections "should be conducted using human-readable paper ballots." *Curling II*, 397 F. Supp. 3d at 1357 (internal citations omitted). Georgia's legislature likewise

required voter-verifiable ballots. O.C.G.A. § 21-2-300(a)(2). But Defendants instead adopted a system that tabulates barcodes that no person can read.

Defendants seek to distract the Court from the fact that they selected a system that no election security expert endorses by claiming that 44 states use BMDs. This is misleading and says nothing about the use of *barcode*-based BMDs. The reality is that in November 2020, voters in only 12 percent of precincts in the United States will mark ballots primarily by any type of BMD, compared to the 72.5 percent of precincts that will mark ballots primarily by hand. (Dkt. No. 681-2, Ex. 1 at 2E, 2G.) And only 12 percent of precincts *nationwide* will use BMDs for all voters. (*Id.*, Ex. 2 at 2G.) Precincts using BMDs overwhelmingly do so for disabled voters, just as Curling Plaintiffs seek here. (*Id.* at 2I.) Georgia is an extreme "outlier" in forcing BMDs—much less barcode-based BMDs—on all voters. (Dkt. No. 658 at 2.)

One reason election security experts oppose barcode-based BMDs is, if the barcode is inconsistent with the voter's selections, the voter has no way of knowing—and since no voters can read the barcodes, they cannot have confidence their votes will count. (*See* Dkt. No. 619-2 at ¶ 6.) Curling Plaintiffs allege specific vulnerabilities already identified with the BMD system, (Dkt. No. 627 at ¶¶ 76-83), including some of the same sort of security vulnerabilities as those this

Court found rendered Georgia's DRE system unlawful. *Curling II*, 397 F. Supp. 3d at 1374-75. These many vulnerabilities might cause the BMDs to print barcodes that do not reflect voters' selections and thus deprive voters of their right to vote—and the voters would have no idea. *See Southern Pilot*, 15 F. Supp. 3d at 1294 (ripeness considers "'the hardship that a plaintiff *might* suffer without court redress'" (emphasis added)). Georgia voters face an ongoing threat of this deprivation of their right to vote given the persistent, sophisticated efforts to hack U.S. elections and the specific, lingering vulnerabilities with Georgia's election system.[1] Thus, the right to vote in Georgia has become illusory.

### 3. Curling Plaintiffs' BMD-Based Claims Are Not Contingent on the Outcome of Future Events or Other Proceedings

Curling Plaintiffs' claims are neither uncertain nor contingent on the outcome of future events. *See Warner Cable Commc'ns, Inc.*, 911 F.2d at 642. The flaws with Georgia's BMD system are clear, unavoidable, and fundamental, including its reliance on barcodes that voters cannot read. Continued use of that system will further confirm its unconstitutionality, but there are no uncertain or contingent events that need to play out for the Court to decide the constitutionality

---

[1] Both this Court and Defendants' own expert have emphasized that threats to states' electronic voting systems persist. *Curling II*, 397 F. Supp. 3d at 1357-58; (Dkt. No. 570 at 206:9-12; s*ee also* Dkt. No. 680-1, Ex. J at ¶ 16 (it is "probable that a system like Georgia's . . . can and will be targeted by adversarial parties.")).

6

of that system. If the State built a bridge that had an alleged design defect that might cause it to collapse while residents were on it, the Court would not be required to await a disastrous collapse before addressing claims challenging the bridge's lawfulness. Nor would it be appropriate to do so. The same holds for elections, especially in a presidential election year.

The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). In *Abbott Laboratories*, the Supreme Court held that drug companies' challenge to a regulation promulgated by the Commissioner of Food and Drugs was ripe because the regulation already was promulgated. *Id*. at 151. Similarly, here State Defendants already made a final decision to use Dominion's barcode-based BMD system—over the objections of their own experts—for all elections, and no further action by the State is contemplated that might change that decision. Although State Defendants may refine certain regulations for conducting future elections on the BMDs (such as developing post-election audits (Dkt. No. 645-1 at 6)), those render nothing about Curling

Plaintiffs' challenge to the barcode-based BMDs' design and operation uncertain or contingent on future events. (*See* Dkt. No. 681 at 11-13.) Curling Plaintiffs' claims do not turn on any auditing procedures or other forthcoming regulations, nor could those eliminate such constitutional violations as depriving voters of the right when submitting their ballots to verify the votes that will be tabulated. Thus, there is no basis to await audit procedures (for which there is no deadline) or other regulations governing elections.

Defendants likely will cite this Court's decision in *Southern Pilot*, but that case is readily distinguishable. The plaintiff sought a declaration that the insurance policy it sold to the defendants was not in force at the time of a car accident and, thus, the defendants were liable for the accident. 15 F. Supp. 3d at 1287. The defendants filed a third-party complaint against their insurance agents for failing to ensure defendants were insured. *Id*. The Court held that the defendants' third-party complaint was unripe because "their liability [wa]s dependent upon the resolution of the declaratory judgment action." *Id*. at 1294. Here, Curling Plaintiffs claim that Defendants threaten to violate their fundamental right to vote with an *existing* voting system that, *by its design*, fails to "provide a reasonable and adequate method for voting by which Georgia electors' votes will be accurately counted." (Dkt. No. 627 at ¶ 116(c).) Defendants' liability turns only on this

Court's determination of whether Georgia's current barcode-based BMD system is or is not constitutional. That question is ripe, as Defendants previously admitted.

### B. Curling Plaintiffs Will Suffer Hardship without Court Redress

The inevitable outcome of dismissing Curling Plaintiffs' claims regarding Georgia's *current* voting system is that they and all other Georgia voters will be forced to vote on a system that provides no reasonable assurance that their votes will be accurately counted.[2] Absent Court redress, there is no indication or likelihood that Defendants will suddenly abandon their barcode-based BMDs and implement an alternative voting system.[3] It is already in use for special elections and mandated for all elections. This Court has previously held that the injury caused by a voting system that "burdens and deprives [voters] of their rights to cast secure votes that are reliably counted, as guaranteed under the First and Fourteenth Amendments of the United States Constitution," is irreparable. *Id.* at 1402. This holds true for Georgia's current barcode-based BMD system.

The Eleventh Circuit's decision in *Browning* makes clear that Curling Plaintiffs' claims are ripe. 522 F.3d at 1164. It held that the plaintiffs'

---

[2] Although they could vote by absentee ballot, this Court held that this does not defeat their constitutional challenges to the primary voting system. *Curling II*, 397 F. Supp. 3d at 1382 n.71, 1402.

[3] In fact, it appears the State is doubling down on the system's reliance on barcodes and will conduct recounts by merely re-scanning the barcodes. (Cross Decl. Ex. 1.)

constitutional challenge to a Florida voter registration statute was ripe because it would impose hardship on would-be voters who were required to provide license or Social Security numbers when registering to vote. Florida law also required voters to register at least 29 days prior to an election. If voters made an error on their applications, they had to submit new applications prior to this date or they could not vote. *Id*. at 1156-57. The defendants argued that the case was not ripe because none of the plaintiffs' members' registration applications had been rejected. But the court found that, if would-be voters were forced to wait until their applications were rejected to challenge the statute, they may not have time to submit a corrected application before the upcoming election and, thus, could not vote. *Id*. at 1164. Curling Plaintiffs' claims are even more concrete and mature. Whereas no applications ultimately could have been rejected under the statute challenged in *Browning*, here every Georgia voter will be required to vote on the barcode-based BMDs whenever voting in person. The hardship that will result from a system in which voters cannot verify their ballots for tabulation is clear, concrete, and inevitable. Because "the injury is certainly impending, that is enough" to render Curling Plaintiffs' claims ripe. *See Blanchette*, 419 U.S. at 143 (citation omitted).

Dated: January 27, 2020

Respectfully submitted,

 /s/ David D. Cross
David D. Cross (*pro hac vice*)
John P. Carlin (*pro hac vice*)
Jane P. Bentrott (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
JBentrott@mofo.com
MKaiser@mofo.com
RManoso@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** <br> **Plaintiffs,** <br><br> **v.** <br><br> **BRAD RAFFENSPERGER, ET AL.,** <br> **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                                 */s/ David D. Cross* <br>
                                                David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | Civil Action No. 1:17-CV-2989-AT |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2020, a copy of the foregoing **CURLING PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ADDRESSING RIPENESS RAISED *SUA SPONTE* BY THE COURT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

                                        */s/ David D. Cross*
                                        David D. Cross