# Exhibit 2
# Declaration of Jeanne Dufort

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, et al.

Plaintiffs,

vs.

BRAD RAFFENSPEGER, et al.

Defendants.

)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION FILE NO.:
1:17-cv-2989-AT**

### SUPPLEMENTAL DECLARATION OF JEANNE DUFORT

**JEANNE DUFORT** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1.  My name is Jeanne Dufort.

2.  This declaration supplements my declarations of June 17, 2019, September
    10, 2018, December 16, 2019 (Dkt. 680-1 at 170), and January 14, 2020
    (Dkt. 699-7).

3.  I have personal knowledge of all facts stated in this declaration, and if
    called to testify, I could and would testify competently thereto.

4.  I attended the February 28, 2020 meeting of the State Board of Elections
    and heard their discussion of and vote to adopt Election Rule 183-1-15-.03
    regarding recounts.  A true and correct copy of the adopted rule is attached

as Exhibit C and can be found as a proposed rule.  *See*

https://sos.ga.gov/admin/files/Proposed%20Rule%20183-1-15-.03.pdf .

Election Rule 183-1-15-.03(2) requires that recounts be conducted by

scanner.  In other words, recounts are not conducted by physical hand

counts of the human readable text.

5.  The Georgia State Election Board's recount rule decision was reported by

the media.  *See* Mark Niesse, *Georgia election officials approve computer

recounts of paper ballots*, Atlanta Journal Constitution, Feb. 28, 2020,

https://www.ajc.com/news/state--regional-govt--politics/georgia-election-

officials-approve-computer-recounts-paper-

ballots/UmZhsoi3Fbg4PutT1xSNmJ/ .

6.  The adoption of this rule contravenes Secretary Raffensperger's often

repeated promises that any recounts of BMD ballot cards would be

"physical recounts" of each ballot.

7.  I attended the March 3, 2020 public meeting of the Athens-Clarke County

Board of Elections as a citizen observer and can affirm the Associated Press

report that the Board decided by a 3 to 2 vote to use hand marked paper

ballots instead of the BMD touchscreen devices for the March 24, 2020

election.  *See* Kate Brumback, *Georgia county ditches new voting machines*

*for paper ballots*, Associated Press, Mar. 4, 2020, *available at*

https://apnews.com/2085d559d623d03f5e4d5ae89562e24a .

8. Athens Clarke Board of Elections and Registration Chairman Jesse Evans

   sent me the following text message at approximately 9:40 pm on March 3,

   2020, which he stated that he sent to the media when he received inquiries

   regarding the basis of the Board's decision:

> "In accordance with GA Code § 21-2-281 and § 21-2-334, the Athens-Clarke County Board of Elections voted to utilize for the March 2020 Presidential Preference Primary the hand-marked paper ballot voting process piloted by the Cobb County Board of Elections in November 2019.  In a 3-2 decision, the Athens-Clarke County Board of Elections found it impracticable to use the new electronic voting system to meet the state and federal legal requirements that the ACC Board of Elections protect absolute ballot secrecy while allowing sufficient monitoring of the ballot marking devices in use.  Board Members Jesse Evans (Chair), Willa Fambrough, and Rocky Raffle voted to adopt the motion.

> Article II, Section I of the Georgia Constitution mandates that "Elections by the people shall be by secret ballot and shall be conducted in accordance with procedures provided by law."

> GA Code § 21-2-70 requires the Athens-Clarke County Board of Elections to conduct all elections in such manner as to guarantee the secrecy of the ballot and to perform such other duties as may be prescribed by law.

> According to GA Code § 21-2-379.22, the Athens-Clarke County Board of Elections is not legally permitted to use an electronic ballot marker that does not permit voting in absolute secrecy so that no person can see or know any other elector's votes, except when he or she has assisted the elector in voting, as prescribed by law

> Under federal law, the "Help America Vote Act" says that each voting

system used in an election for Federal office must protect ballot secrecy and voter privacy."

9. I have attended the majority of Athens-Clarke Board of Elections and Registration meetings for the last few months, and have heard their deliberations on whether ballot secrecy could be provided with the BMD touchscreens while also supplying one voting station for every 250 registered voters.

10. I personally observed the equipment configuration in the location for the first day of early voting (March 2, 2020) for Athens-Clarke County in the Elections Office. Chairman Jesse Evans had been there shortly before I arrived. I concur with his statement during the March 3, 2020 Board of Elections meeting that ballot secrecy was not provided to the voters in that location.

11. In the early voting area I also saw that the poll officers would be unable to monitor the components at all times to prevent tampering as required by the rules and statute. Poll officials would not have visual access to the voting station components set against the back corner without also improperly having a view of the voters' private touchscreen contents.

12. At the March 3, 2020 meeting, Director Charlotte Sosebee was unable to supply the requested floorplans for each polling place that would demonstrate that polling places could be supplied with the required number

of BMD stations while set up to provide ballot secrecy and permit the poll officers to observe all components of the system.

13. I obtained an email sent by Chris Harvey to election officials regarding suggested machine layouts, as well as an attachment containing the suggested layouts, from the Morgan County Board of Elections and Registration.  A true and correct copy of Mr. Harvey's email is attached hereto as Exhibit A, and a true and correct copy of the suggested machine layouts is attached as Exhibit B.

14. I attended the January 22, 2020 meeting of the State Election Board where the attached revised Rule 183-1-15-.02 (Exhibit D) was passed without addressing what constitutes the official vote in the BMD system. At the meeting I presented a proposed Rule amendment that I had previously submitted to the State Election Board to address the barcoded BMD ballot cards so that the official vote would be defined. The State Election Board declined to address this question.

Executed on this date, March 4, 2020.

Jeanne Dufort

Exhibit A

**Jennifer Doran**

| | |
|---|---|
| **From:** | DoNotReply@sos.ga.gov |
| **Sent:** | Thursday, February 13, 2020 12:05 PM |
| **To:** | DoNotReply@sos.ga.gov |
| **Subject:** | The Buzz Post - Polling Place Privacy for Voters |

A new discussion has
been posted in The Buzz by Harvey, Chris on 2/13/2020 11:52 AM


I've uploaded three diagrams that illustrate potential problems and solutions to securing voter privacy. This is based on reported concerns and our own observations. Simply said, having the BMD screens facing areas where observers or people waiting to vote decreases the privacy of the voter. Simple solutions involving turning the BMDs so that face *away* from the public are illustrated in the diagrams. See also O.C.G.A. 21-2-267(a)

The diagrams can be found on Firefly under Training>Polling Place Information

Chris Harvey


 If you would like to opt out of receiving email notifications for this
discussion, click here.


Georgia Open Records Act: Under Georgia law, all information, including e-mail, written letters, documents and phone messages, sent to the County Board of Commissioners and County offices and employees is subject to Public Records law. This includes the sender's e-mail address, home address or phone number if shown in the message, the content of the message and any associated attachments to the mail.

# Exhibit B

# SECURE THE VOTE

## Precinct Layout
## to Aid with Privacy Training













Exhibit C

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD, CHAPTER 183-1-15, *RULES OF STATE ELECTION BOARD*, RULE 183-1-15-.03 *OPTICAL SCAN RECOUNT PROCEDURE* AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to post an SEB rule, Rule 183-1-15-.03 *Optical Scan Recount Procedure* (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed new rule and a synopsis of the proposed rule, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list. A copy of this notice, an exact copy of the proposed rule, and a synopsis of the proposed rule may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334. These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board. Copies may also be requested by contacting the Elections Division at 404-656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule, a public hearing will be held on:

February 28, 2020
9:00 a.m.
2 Martin Luther King Jr. Dr. SE
18th Floor, West Tower
Room 1816
Atlanta, GA 30334

At the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing. Oral statements should be concise and will be limited to 3 minutes per person. Additional comments should be presented in writing. Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before February 17, 2020 to the address below. Written comments must be received on or before February 17, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334 or by email to jshannon@sos.ga.gov.

The State Election Board will consider the proposed rule at a meeting scheduled to begin at 9:00 a.m. on February 28, 2020 at 2 MLK Jr. Dr. SE, 18th Floor, West Tower, Room 1816, Atlanta, Georgia 30334.

This notice is given in compliance with O.C.G.A. § 50-13-4.

This 24th day of January, 2020.


Brad Raffensperger
Chairman, State Elections Board


Posted:  January 24, 2020

**SYNOPSIS OF THE PROPOSED RULE OF THE
STATE ELECTIONS BOARD, CHAPTER 183-1-15, *RULES OF STATE
ELECTION BOARD*, RULE 183-1-15-.03 *OPTICAL SCAN RECOUNT
PROCEDURE***

Purpose:  The purpose of the rule is to provide a detailed description of the procedure for recounting votes using an optical scanning voting system.

Main Features:  The main feature of the rule is to implement a uniform procedure for conducting a recount that ensures an accurate and timely tabulation of the ballots cast while maintaining chain of custody and integrity of the process.

**THE PROPOSED RULE OF THE STATE ELECTION BOARD, CHAPTER 183-1-15, *RULES OF STATE ELECTION BOARD*, RULE 183-1-15-.03 *OPTICAL SCAN RECOUNT PROCEDURE***

NOTE: Struck through text is proposed to be deleted.  Underlined text is proposed to be added.  There is no current rule under State Board Rule 183-1-15-.03.

**RULE 183-1-15-.03 Optical Scan Recount Procedure**

1.  Recounts of primaries and elections conducted using an optical scanning voting system shall be in accordance with this rule.

2.  The recount shall be conducted by tabulating all ballots utilizing ballot scanners.

3.  Prior to conducting a recount, the election superintendent shall test each ballot scanner to be used in the recount. A test deck shall be prepared to include scanning ballots marked by an electronic ballot marker and absentee ballots marked by hand. A manual hand count of the test deck shall be made and compared to the electronic tabulation of the test deck. If the two counts do not match, the discrepancy shall be researched and additional tests may be run. If the discrepancy cannot be resolved such that the manual hand count and electronic tabulation of the test deck matches, the ballot scanner shall not be used in the recount.

4.  The recount shall be open to the view of the public, but no person except one designated for the purpose by the superintendent or the superintendent's authorized deputy shall touch any ballot or ballot container. The superintendent may designate a viewing area by which members of the public are limited for the purpose of good order and maintaining the integrity of the recount.

5.  The tabulation of ballots must be completed through a precise, controlled process that ensures, for each ballot scanner used in the recount, no more than one ballot container is unsealed at any given time.

6.  A clear audit trail must be maintained at all times during the recount, including but not limited to, a log of the seal numbers on ballot containers before and after the recount.

7.  The ballot scanner shall be programmed to flag or reject ballots that contain an overvote for the contest to be recounted. One or more recount vote review panels shall be established, consistent with O.C.G.A. § 21-2-483(g), to manually review the overvoted ballots. The recount vote review panel shall determine by majority vote the elector's intent, as described in O.C.G.A. § 21-2-438(c), a duplicate ballot shall be created consistent with the elector's intent for the contest to be recounted, labeled "RECOUNT DUPLICATE", and used in the recount. The original overvoted ballot shall be retained.

8.  All ballots that required a duplicate ballot to be created in the original primary or election, as allowed by law, shall be reviewed by a recount vote review panel to determine that the votes marked in the contest to be recounted on the duplicated ballot are consistent with the elector's intent on the original ballot, as described in O.C.G.A. § 21-2-438(c). If a majority of the recount vote review panel determines that the duplicated ballot is not consistent with the elector's intent on the original ballot, a new true duplicate ballot shall be created consistent with the elector's intent for the contest to be recounted, labeled "RECOUNT DUPLICATE", and used in the recount. The original overvoted ballot and initial duplicated ballot shall be retained.

9.  If it appears that a ballot is so torn, bent, or otherwise defective that it cannot be processed by the ballot scanner, the recount vote review panel shall prepare a duplicate ballot for the contest to be recounted. All duplicate ballots created during the recount shall be clearly labeled by the word "RECOUNT DUPLICATE". The defective ballot shall be retained.

10. After all of the valid ballots to be included in the recount have been tabulated, the superintendent shall cause a printout to be made of the results and shall compare the results to the results previously obtained.  If upon completing the recount, it shall appear that the original vote count for the recounted contest was incorrect, such returns and all papers being prepared by the superintendent shall be corrected accordingly.

Authority: O.C.G.A. §§ 21-2-31, 21-2-495

## COPY OF THE PROPOSED NEW RULE

**RULE 183-1-15-.03   Optical Scan Recount Procedure**

1. Recounts of primaries and elections conducted using an optical scanning voting system shall be in accordance with this rule.

2. The recount shall be conducted by tabulating all ballots utilizing ballot scanners.

3. Prior to conducting a recount, the election superintendent shall test each ballot scanner to be used in the recount. A test deck shall be prepared to include scanning ballots marked by an electronic ballot marker and absentee ballots marked by hand. A manual hand count of the test deck shall be made and compared to the electronic tabulation of the test deck. If the two counts do not match, the discrepancy shall be researched and additional tests may be run. If the discrepancy cannot be resolved such that the manual hand count and electronic tabulation of the test deck matches, the ballot scanner shall not be used in the recount.

4. The recount shall be open to the view of the public, but no person except one designated for the purpose by the superintendent or the superintendent's authorized deputy shall touch any ballot or ballot container. The superintendent may designate a viewing area by which members of the public are limited for the purpose of good order and maintaining the integrity of the recount.

5. The tabulation of ballots must be completed through a precise, controlled process that ensures, for each ballot scanner used in the recount, no more than one ballot container is unsealed at any given time.

6. A clear audit trail must be maintained at all times during the recount, including but not limited to, a log of the seal numbers on ballot containers before and after the recount.

7. The ballot scanner shall be programmed to flag or reject ballots that contain an overvote for the contest to be recounted. One or more recount vote review panels shall be established, consistent with O.C.G.A. § 21-2-483(g), to manually review the overvoted ballots. The recount vote review panel shall determine by majority vote the elector's intent, as described in O.C.G.A. § 21-2-438(c), a duplicate ballot shall be created consistent with the elector's intent for the contest to be recounted, labeled "RECOUNT DUPLICATE", and used in the recount. The original overvoted ballot shall be retained.

8. All ballots that required a duplicate ballot to be created in the original primary or election, as allowed by law, shall be reviewed by a recount vote review panel to determine that the votes marked in the contest to be recounted on the duplicated ballot are consistent with the elector's intent on the original ballot, as described in O.C.G.A. § 21-2-438(c). If a majority of the recount vote review panel determines

that the duplicated ballot is not consistent with the elector's intent on the original ballot, a new true duplicate ballot shall be created consistent with the elector's intent for the contest to be recounted, labeled "RECOUNT DUPLICATE", and used in the recount. The original overvoted ballot and initial duplicated ballot shall be retained.

9. If it appears that a ballot is so torn, bent, or otherwise defective that it cannot be processed by the ballot scanner, the recount vote review panel shall prepare a duplicate ballot for the contest to be recounted. All duplicate ballots created during the recount shall be clearly labeled by the word "RECOUNT DUPLICATE". The defective ballot shall be retained.

10. After all of the valid ballots to be included in the recount have been tabulated, the superintendent shall cause a printout to be made of the results and shall compare the results to the results previously obtained.  If upon completing the recount, it shall appear that the original vote count for the recounted contest was incorrect, such returns and all papers being prepared by the superintendent shall be corrected accordingly.

Authority: O.C.G.A. §§ 21-2-31, 21-2-495

Exhibit D

**RULES
OF
THE STATE ELECTION BOARD**

**CHAPTER 183-1
GEORGIA ELECTION CODE**

**SUBJECT 183-1-15
RETURNS OF PRIMARIES AND ELECTIONS**

**TABLE OF CONTENTS**

Rule 183-1-15-.02 Definition of a Vote

**183-1-15-.02 Definition of Vote**

(1) Lever-type Voting Machines. A vote cast on a lever-type voting machine shall be the choice made by a voter by either operating the lever adjacent to the name of the candidate or answer to a question for which the voter desires to vote or by writing of the name of a qualified write-in candidate on the machine in accordance with the instructions for voting on the voting machine and then recording such votes on the machine by the actuation of the main lever which casts such votes and returns the other levers to their original positions.

(2) Optical Scan Voting Systems.

    (a)    A vote cast on an optical scan ballot marked by hand shall be the choice made by a voter by either:

        1.    Filling in the oval adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

        2.    Filling in the oval adjacent to the appropriate write-in space and writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

    (b)    In reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), if the voter filled in the oval next to the name of a candidate whose name appears on the ballot and filled in the oval adjacent to the write-in space and wrote the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

    (c)    If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A.§ 21-2-483(g)(2), it appears that there is a properly cast vote and what is clearly a stray mark which has caused

the ballot scanner to read the vote for such office as an overvote, the properly cast vote shall be counted and the stray mark shall be ignored.

(d)    If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), a voter marks his or her ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the vote review panel as provided in O.C.G.A. § 21-2-483(g)(2)(B), the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

(e)    When an optical scan ballot marked by hand contains stray marks or marks which prevent the ballot scanner from properly recording valid votes as determined under this rule and by law, the ballot shall be duplicated in accordance with law to correct such problems and the duplicate shall then be tabulated.

(f)    In lieu of manually duplicating a ballot pursuant to paragraph (e), the manual review of ballots with overvotes by vote review panels pursuant to O.C.G.A. § 21-2-483(g) may be done by reviewing a digital image of the ballot and electronically adjudicating the intent of the voter, if such determination is recorded on the digital image of the ballot.

(g)    When an optical scan ballot marked by an electronic ballot marker contains marks added, in addition to what was printed by the electronic ballot marker, the additional marks shall be ignored.

(3) Paper Ballots.

(a)    A vote cast on a paper ballot that is not counted by an optical scan system (i.e. in certain municipal elections) shall be a choice made by a voter by either:

    1.    Placing an "X", a check, or other similar mark in the square adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

    2.    Writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

(b)    If a voter marks his or her paper ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the poll officers as provided in O.C.G.A. § 21-2-439, the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

(c)    If the voter marked the square next to the name of a candidate whose name appears on the ballot and wrote in the name of the same candidate in the write-in space for

the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(4)   Write-in Votes.  In no event shall votes cast for write-in candidates who have not qualified in accordance with O.C.G.A. § 21-2-133 be counted or recorded.


Authority: O.C.G.A. §§ 21-2-2, 21-2-31, 21-2-133, 21-2-439, 21-2-483