# EXHIBIT 1



# Office of Secretary of State

*Brad Raffensperger*
**SECRETARY OF STATE**

*C. Ryan Germany*
**GENERAL COUNSEL**

March 2, 2020

<u>VIA ELECTRONIC MAIL</u>

Doris Cooley
Administrative Procedures Division
5800 Jonesboro Road
Morrow, GA 30260
Email: <u>aparules@sos.ga.gov</u>

   Re: Letter of Transmittal
     Rules of the State Election Board

Dear Ms. Cooley:

  Please find transmitted electronic versions of the following rules for filing in accordance with the Georgia Administrative Procedures Act: Rule 183-1-6-.02; Rule 183-1-12-.04; Rule 183-1-12-.06; Rule 183-1-12-.08; Rule 183-1-12-.09; Rule 183-1-12-.10; Rule 183-1-12-.11; Rule 183-1-12-.12; Rule 183-1-12-.18; Rule 183-1-12-.20; Rule 183-1-13-.02; Rule 183-1-14-.02; Rule 183-1-14-.13; and Rule 183-1-15-.03.

  Should questions arise about these rules, please contact me at (470) 312-2808 or rgermany@sos.ga.gov.

       Sincerely,

       Ryan Germany

Attachments

CORRECTED CERTIFICATION
OF ADMINISTRATIVE RULES
FILED WITH THE SECRETARY OF STATE
BRAD RAFFENSPERGER

(Pursuant to the Official Code of Georgia Annotated, Sections 50-13-3, 50-13-4, and 50-13-6.)

I do hereby certify that the attached Rule Amendment is a correct copy as promulgated and amended on the day of February 28, 2020.

**RULES OF THE STATE ELECTION BOARD**

FILED: March 2, 2020

*Rule 183-1-12-.04 "Storage, Maintenance, and Transport of Statewide Voting System Components" is amended as attached hereto.*

*Rule 183-1-12-.06 "Handling of Voting System" is amended as attached hereto.*

*Rule 183-1-12-.08 "Logic and Accuracy Testing" is amended as attached hereto.*

*Rule 183-1-12-.09 "Transport to Polls" is amended as attached hereto.*

*Rule 183-1-12-.10 "Before the Opening of the Polls" is amended as attached hereto.*

*Rule 183-1-12-.11 "Conducting Elections" is amended as attached hereto.*

*Rule 183-1-12-.12 "Tabulating Results" is amended as attached hereto.*

*Rule 183-1-12-.18 "Provisional Ballots" is amended as attached hereto.*

*Rule 183-1-12-.20 "Use of Emergency Paper Absentee Ballots When Voting Machines are Inaccessible" is amended and title changed to "Use of Emergency Paper Ballots When Voting Machines are Inaccessible" as attached hereto.*

STATUTORY AUTHORITY:

O.C.G.A. §§ 21-2-31, 21-2-94, 21-2-95, 21-2-226, 21-2-379.6, 21-2-409, 21-2-410, 21-2-417, 21-2-418, 21-2-419, 21-2-420

This 4th day of March, 2020.

Brad Raffensperger
Secretary of State
Chairman, State Election Board

Sworn and subscribed before me this 4th day of March, 2020.

Notary Public:
My commission expires:

Ari Schaffer
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 01/30/2024

**RULES**
**OF**
**THE STATE ELECTION BOARD**

**CHAPTER 183-1**
**GEORGIA ELECTION CODE**

**SUBJECT 183-1-12**
**PREPARATION FOR AND CONDUCT OF PRIMARIES AND ELECTIONS**

**TABLE OF CONTENTS**

183-1-12-.04 Storage, Maintenance, and Transport of Statewide Voting System Components
183-1-12-.06 Handling of Voting System
183-1-12-.08 Logic and Accuracy Testing
183-1-12-.09 Transport to Polls
183-1-12-.10 Before the Opening of the Polls
183-1-12-.11 Conducting Elections
183-1-12-.12 Tabulating Results
183-1-12-.18 Provisional Ballots
183-1-12-.20 Use of Emergency Paper Ballots When Voting Machines are Inaccessible

**183-1-12-.04 Storage, Maintenance, and Transport of Statewide Voting System Components**

1. The election superintendent of the county shall maintain all components of the voting system (including electronic ballot markers, ballot scanners, electronic poll books, and election management systems) in accordance with the requirements of this rule, the directives of the Secretary of State, and the specifications and requirements of the manufacturer.

2. All electronic components of the voting system shall be stored in a climate controlled space in which the temperature and humidity levels are maintained at acceptable levels year-round which shall not be lower than 0 degrees Celsius (32 degrees Fahrenheit) nor higher than 40 degrees Celsius (104 degrees Fahrenheit) and not lower than 20 percent relative humidity and not higher than 85 percent relative humidity such that no condensation forms on such components. The components shall not be stored in an area in which liquids or fluids stand, pool, or accumulate at any time or in areas that are subject to such standing, pooling, or accumulating liquids or fluids. The space in which the components are stored shall be secured and shall be accessible only to persons authorized by the election superintendent to have access to such components or such space. The components shall be stored in a manner that ensures that the components are protected from damage and shall not be stacked more than four units high. The back-up battery for the ballot scanner shall be charged at least every 9 months.

3. The storage areas for the voting system components at the county election office or other designated county facility shall be equipped with one or more of the following forms of electronic surveillance and protection: keypads or electronic locks, motion detectors, video surveillance, or a security system that is connected to an outside monitoring source, such as the police department or fire department.

4. The election Superintendent shall maintain numbered seals on all electronic ballot markers and ballot scanners in storage and all seal numbers shall be recorded and on file in the office of the election superintendent.

5. All components of the voting system shall be securely transported to polling places. Electronic ballot markers (including printers) and ballot scanners shall be transported in secure boxes or carrying cases that provide vibration and impact protection.

6. Upon delivery to a polling place in preparation for a primary, election, or runoff, all components of the voting system shall be secured and protected from unauthorized access. Upon delivery, the components shall either be stored in a locked, secure room at the polling place; in a locked, secure container that is reasonably affixed to the polling place; be under visual surveillance of an election official or their designee, law enforcement official, or licensed security guard; or, if the previously listed options are not feasible, in another manner, that in the reasonable judgement of the superintendent, secures and protects the voting system components from unauthorized access. Any electronic visual surveillance used for security when voting is not taking place shall not record, capture, or otherwise compromise the privacy of an elector's ballot.

7. The expenses for the implementation of the storage and security requirements of this rule shall be the responsibility of the county or municipal governing authority, as applicable, unless such security features are provided by the State.

8. Maintenance of Voting System Components. After the end of the initial warranty period for state owned voting system components, the county shall be responsible for maintaining an appropriate warranty or otherwise be responsible for maintenance and upkeep of such devices, including the repair and/or replacement of any devices which are destroyed, damaged, or otherwise rendered incapable of use in elections.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.06 Handling of Voting System**

1. All personnel, with the exception of the permanent employees of the Office of the Secretary of State and permanent employees of the county or municipal election superintendent, who prepare voting equipment for use in a primary, election, or runoff shall complete an oath of custodian before each election. One copy of the oath shall be placed on file in the office of the election superintendent and an additional copy shall be filed with the records for the

election filed with the clerk of superior court or the municipal clerk, as appropriate. The oath of custodian
shall be in the following form:

STATE OF GEORGIA

COUNTY/MUNICIPALITY OF _____


OATH OF CUSTODIANS AND DEPUTY CUSTODIANS OF GEORGIA VOTING SYSTEM
I, _____, do swear  (or  affirm)  that I will as a (deputy) custodian     of
the   voting   systems   for   the   County/Municipality   of _____, faithfully
perform all of my duties in accordance with  state  law;  that  I will  prepare  in accordance  with
all applicable  rules  and regulations  governing the use of the voting system all components  to be
used in primaries, elections, and runoffs in this county/municipality; that I will use my best
endeavors to prevent any fraud, deceit, or abuse in carrying out my duties while preparing the
voting system for use in primaries, elections, and runoffs; and that I am not disqualified by law to
hold the position of (deputy) custodian.


_____

(Deputy) Custodian

Administered by, sworn to,

and subscribed before me,

this _____ day of _____, 20___


Superintendent

(Required by O.C.G.A.  Section 21-2-379.6(b))

2.  Any electronic ballot markers, ballot scanners, electronic poll books, ballot boxes and
    accessories that are removed from storage for educational or training purposes must be
    signed in and out on an equipment log maintained by the election superintendent. The log
    shall contain, at a minimum, a description of the item being checked out, including any
    serial number or identifying number; the date and time when the item is checked out; the
    name of the person checking out the item; and the date and time when the item is returned
    to storage.  The items checked out of storage shall remain in the custody and control of the
    person checking out the items at all times and the person checking out the items shall
    personally return such items. Each person who utilizes equipment for educational or
    training purposes must be adequately trained in the use of the equipment prior to the release
    of the equipment into such person's custody.

3. Should it become necessary to relocate an election management system computer or any of its components from one facility to another, the election superintendent shall notify the Secretary of State in advance in writing of the reason for the relocation and the proposed new location.  The election management system shall not be relocated unless and until written authorization for the relocation is received from the Secretary of State except in the event of an emergency situation beyond the control of the election superintendent. If an emergency arises causing the election management system to be moved, the election superintendent is responsible to notify the Secretary of State as soon as possible of the move.

4. The poll manager shall sign a receipt for components of the voting system assigned to such poll manager's precinct. Upon returning election supplies to the election superintendent's office following the close of the polls, the poll manager shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

5. All voting system components and other equipment assigned to designated county election technicians shall be accounted for on the night of a primary, election, or runoff and shall be returned to storage. Each technician shall sign a receipt for all such items issued to such technician and, upon returning such items to the election superintendent's office following the close of the polls, the technician shall account for all such items and shall certify that all such items have been returned or shall describe any missing items and explain why such items have not been returned. The Secretary of State shall prepare and provide a chain of custody sheet for this purpose.

6. The election superintendent shall notify the Secretary of State of any instances of unaccounted for components of the voting system as soon as possible.

7. The election superintendent shall perform an audit count of all voting system components housed and maintained by the jurisdiction on an annual basis.  The results of the audit shall be submitted to the Secretary of State.

Authority: O.C.G.A. §§ 21-2-31, 21-2-379.6

**Rule 183-1-12-.08 Logic and Accuracy Testing**

1. Primaries and Elections.

   a. On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the election superintendent shall commence the preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners for use on Election Day.

b.  On or before the third day preceding the advance voting period, the election superintendent shall commence the preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners for use during the advance voting period. Voting system components that passed logic and accuracy testing for advance voting do not have to be re-tested for use on Election Day for the same election, unless there is a change in the programming or database used by the component.

c.  At least five days prior to the commencement of such preparation and testing, the election superintendent  shall publish a notice on the homepage of the county's publicly accessible website associated with election and/or registrations, or if the county does not have such a website, in a newspaper of general circulation in the county or by posting in a prominent location in the county stating the date, time, and place or places where preparation and testing of the voting system components for use in the primary or election will commence, and stating that such preparation  shall continue from day to day until such preparation is complete and that such preparation and testing shall be open to the public and that members of the public are entitled to be present during the preparation and testing. Prior to a runoff election, the Superintendent shall prominently post notice of the date, time, and place of such testing at least 24 hours prior to its occurrence.

d.  The election superintendent shall cause such preparation and testing to begin on such date and time and at such place or places. Such preparation and testing shall be open to members of the public to observe; however, such members of the public shall not in any manner interfere with the preparation and testing of the voting system components. Any person found to be interfering with the preparation and testing process may be asked to leave the testing process and may be cited for interfering with an election official while in performance of election duties. Any questions and/or complaints from the general public regarding the preparation and testing process must be directed to the election superintendent and not to the individual personnel conducting the preparation and testing process.  The election superintendent may make such reasonable rules and regulations concerning the conduct of such members of the public observing such preparation and testing, as the election superintendent deems necessary and appropriate; provided, however, that such rules and regulations shall not prevent members of the public from fairly observing the preparation and testing of the voting system components.

2.  In addition to any reasonable rules and regulations that the election superintendent may create for the public to observe the preparation and testing process, the election superintendent or designee thereof, shall:

a.  Be available for the first hour of the first day of testing to explain the preparation and testing process and to respond to questions and provide answers regarding the purpose and the process of preparation and testing;

b.  Maintain a presence at all times during the preparation and testing process;

c.  Administer an oath of custodian prior to beginning the preparation and testing process to any county personnel (except permanent state, county, or municipal election staff) appointed by the election superintendent to conduct the preparation and testing process;

d.  Establish an area reasonable in proximity for the public to observe the preparation and testing process.   Such area shall provide reasonable accommodations for the public insofar as space permits, but shall not be so established as to deny the general public the opportunity to view the process; however, the area should be of such nature so as to allow the preparation and testing process to proceed without interference by the general public;

e.  Allow only election office personnel or individuals assigned to conduct the preparation and testing to enter the testing area during the preparation and testing process;

f.  Prohibit any preparation and testing reports created for recording the seal numbers of voting system components from being disclosed to the public;

g.  Prohibit the security seal numbers or other security measures of any voting system components from being disclosed to the public; and

h.  Prohibit photographic and audio equipment of any kind, including cell phone cameras, from being used to record the security seal numbers or other measures used to secure any voting system components, provided that this rule shall not prohibit the news media from reporting on the preparation and testing process, so long as seal numbers and other security measures on any voting system component are not recorded or displayed in any manner.

3.  During the public preparation and testing of the electronic poll books, electronic ballot markers, printers, and ballot scanners to be used in a particular primary or election, the election superintendent shall cause each electronic ballot marker and scanner to be programmed with the election files for the precinct at which the electronic ballot marker and ballot scanner unit will be used.

The superintendent shall cause the accuracy of the components to be tested by causing the following tasks to be performed:

A.  Check that the electronic poll books accurately look up and check-in voters via both the scanning function and manual lookup and create a voter access card that pulls up the correct ballot on the electronic ballot marker for every applicable ballot style.

B.  Check that the touchscreen on the electronic ballot marker accurately displays the correct selections and that the touchscreen accurately reflects the selected choices.

C.  Check that the printer prints a paper ballot that accurately reflects the choices selected on the touchscreen and immediately mark all printed paper ballots as "test" ballots.

D.  Check that the ballot scanner scans the paper ballot, including both ballots marked by electronic ballot markers and ballots marked with a pen, and that the ballot scanner scans ballots regardless of the orientation the ballot is entered into the scanner.

E.  Check that the tabulation contained in the ballot scanner memory card can be accurately uploaded to the election management system, and that the tabulated results match the selections indicated on the paper ballot.

If any component fails any of the testing, the component shall not be used in a primary, election, or runoff until such unit is repaired and inspected and found capable of proper functioning and passes logic and accuracy tests. The component failure should be documented and reported to the superintendent. Upon the successful completion of the logic and accuracy test, the component shall be cleared of any vote totals collected during testing. A zero tape shall be run on the ballot scanner subsequent to successful testing, and the tape shall be attached to the custodian's certification form to document the logic and accuracy testing. The components shall then be sealed and securely stored for transfer to the polling place.

4.  After the completion of Logic and Accuracy testing on any voting system component, each component shall be sealed and safely and securely stored until such time as the component is transported to the polling place in which such component is to be used. The zero tapes, results tapes, test ballots, and other paperwork shall be securely stored by the superintendent.

Authority: O.C.G.A. § 21-2-31

**Rule 183-1-12-.09. Transport to Polls**

1.   The election superintendent shall take all necessary measures to cause the voting system components to be safely and securely transported to the polling places.

2.   The election superintendent shall cause the voting system components for each polling place to be delivered to the polling place at least one hour before the time for the opening of the polls. The election superintendent shall cause magnifying devices to be made available at each polling place to assist voters in reviewing their paper ballots.

3.   If the voting system components are stored at a polling place prior to the arrival of the poll manager or their designee, the election superintendent shall cause the components to be stored in a locked, secure manner with appropriate climate control as described in Rule 183-1-12-.04.

Authority: O.C.G.A. § 21-2-31

## Rule 183-1-12-.10 Before the Opening of the Polls

1.   The poll officers shall set up and power on the voting system components for voting prior to the opening of the polls. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the election superintendent may deem appropriate to protect the security of the voting system components and to prevent interference with the duties of the poll officers.

2.   The poll officers shall verify that the seal for each voting system component is intact and that there is no evidence or indication of any tampering. The poll officers shall verify that the number of the seal matches the number of the seal recorded for that component when such component was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering, the election superintendent shall be immediately notified and such component shall not be used until such matters are resolved by agreement of the election superintendent and the poll manager.

3.   The poll manager shall check that the electronic poll books, electronic ballot markers, and ballot scanners all indicate zero counts prior to the opening of the polls.

4.   The poll manager shall cause each ballot scanner in the polling place to run a zero tape prior to the start of voting.   If the tape does not show zero votes prior to the start of voting, the election superintendent shall be immediately notified and such unit shall not be used until the unit is cleared and the matter is resolved by agreement of the election superintendent and the poll manager.

5.   The poll manager and two witnesses who have been sworn as poll officers pursuant to O.C.G.A. §§ 21-2-94 and 21-2-95 shall sign the zero tape from the ballot scanner. The poll manager and those same two witnesses shall then confirm that the ballot box is empty. The Secretary of State shall develop a form to be signed by the poll manager and the two witnesses attesting that the ballot box was empty prior to the opening of the polls.   Such form shall include the date and time it was executed, shall be attached to the zero tape generated by the ballot scanner attached to that ballot box, and shall be returned to the election superintendent with the polling place recap forms at the close of the polls. The ballot box shall then be securely locked and sealed. Once the ballot box is verified to have been empty and locked and sealed, no person shall access the inside of the ballot box while voting is occurring unless it is absolutely necessary to the functioning of elections. Any such access shall be by the poll manager and two witnesses who have been sworn as poll officers, and the poll manager and witnesses shall attest, on a form to be developed by the Secretary of State, to when and for what purpose the ballot box was accessed, and that no action was taken to affect the results of the election. That form shall also be returned to the election superintendent with the polling place recap form at the close of the polls.

6.   The poll officers shall verify that there is no unauthorized matter affixed to any of the voting system components or present in the voting booths.

7.   The poll officers shall affix a card of instructions for voting within each voting booth and shall place at least one printed sample ballot and at least one voting instructions poster approved or provided by the Secretary of State outside the enclosed space at the polling place for the information of the voters. At least one printed sample ballot and one voting instructions poster shall also be posted in the enclosed space. Prior to voters entering the enclosed space, the poll officers may also distribute to such voters a card of instructions for voting on the voting system that has been approved or provided by the Secretary of State. The poll officers shall also have a sufficient supply of sample ballots available should voters request to view them while voting or reviewing their ballot.

8.   As near as possible to exit of the enclosed space in every polling place in a manner that is visible to voters as they exit the enclosed space, the poll manager shall post a sign that informs voters that ballots shall not be removed from the enclosed space.

9.   Accredited poll watchers must be able to observe the polling place setup process; however, they may not interfere with the setup process.

Authority: O.C.G.A. § 21-2-31, 21-2-94, 21-2-95

**Rule 183-1-12-.11 Conducting Elections**

1.   As each voter presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, each voter shall be offered instruction by a poll officer in the method of voting on the voting system. In providing such instruction, the poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote any particular candidate, political party, or political body, or for or against any particular question.

2.   (a) When a person presents himself or herself at the polling place for the purpose of voting during the time during which the polls are open for voting, the person shall complete a voter certificate and submit it to the poll officers. The voter certificate may be an electronic or paper record. The poll officers shall verify the identity of the person and that the person is a registered voter of the precinct and, if so, shall approve the voter certificate and enter an appropriate designation on the electors list for the precinct reflecting that the voter has voted in the primary, election, or runoff being conducted. The voter's name shall then be entered on the appropriate numbered list of voters.

         (b) A poll officer shall then issue the voter an appropriate voter access card authorizing the voter to vote the correct ballot on the touchscreen or utilize the correct access code to manually bring up the correct ballot on the touchscreen. The voter shall then enter the enclosed space in the polling place and proceed to vote his or her choices. Upon making his or her selections, the voter shall cause the paper ballot to print, remove his or her printed ballot from the printer, remove the

voter access card from the touchscreen component, review the selections on his or her printed ballot, scan his or her printed ballot into the scanner, and return the voter access card to a poll officer. Then the voter shall exit the enclosed area of the polling place.

(c) If an emergency situation makes utilizing the electronic ballot markers impossible or impracticable, as determined by the election superintendent, the poll officer shall issue the voter an emergency paper ballot that is to be filled out with a pen after verifying the identity of the voter and that the person is a registered voter of the precinct. Emergency paper ballots shall not be treated as provisional ballots, but instead shall be placed into the scanner in the same manner that printed ballots in the polling place are scanned. The election superintendent shall cause each polling place to have a sufficient amount of emergency paper ballots so that voting may continue uninterrupted if emergency circumstances render the electronic ballot markers or printers unusable. For any primary or general election for which a state or federal candidate is on the ballot, a sufficient amount of emergency paper ballots shall be at least 10% of the number of registered voters to a polling place. The poll manager shall store all emergency ballots in a secure manner and ensure that all used and unused emergency ballots are accounted for. All unused emergency ballots shall be placed into a secure envelope and sealed such that the envelope cannot be opened without breaking such seal.

(d) If an emergency situation exists that makes voting on the electronic ballot markers impossible or impracticable, the poll manager shall alert the election superintendent as soon as possible. The existence of an emergency situation shall be in the discretion of the election supervisor. However, if a poll manager is unable to contact the election superintendent after diligent effort, the poll manager shall have the ability to declare that an emergency situation exists at the polling place. The poll manager shall continue diligent efforts to contact the election superintendent, and shall inform the superintendent as soon as possible of the situation at the polling place. The election superintendent, in his or her discretion, shall either overrule or concur with the declaration of emergency circumstances. While the determination of an emergency situation is in the discretion of the election superintendent, the types of events that may be considered emergencies are power outages, malfunctions causing a sufficient number of electronic ballot markers to be unavailable for use, or waiting times longer than 30 minutes.

3.   At least once each hour during the time while the polls are open, the poll officers shall examine the enclosed space to verify that no unauthorized matter has been affixed to any voting system component or placed in the voting booth and that the voting system components have not been tampered with in any manner.  Poll officers shall also check that no unattended ballots are left in the printer or anywhere in the enclosed space other than the appropriate ballot box. Any unattended ballots found in the enclosed space that do not belong to a voter currently in the enclosed space shall not be counted, but shall be secured and labelled as unattended ballots.

4.   The polling place shall be arranged in such a manner as to provide for the privacy of the elector while voting and to allow monitoring of each voting system component by the poll officers while the polls are open. The electronic ballot markers and ballot scanners used in the polling place shall be set up in a manner to assure the privacy of the elector while casting his or her ballot while maintaining the security of such units against tampering, damage, or other improper conduct.  In addition, at least one ballot marking device shall be configured for voting by physically disabled

voters in wheelchairs and provisions shall be made to provide for the privacy of such electors while voting.

5.   It shall be permissible under O.C.G.A. § 21-2-410 and shall not constitute assistance in voting under O.C.G.A. § 21-2-409 for poll officers to assist a voter in inserting the voter access card into the ballot marking device and in explaining the operation of the unit to the voter; provided that the poll officer shall withdraw from the voting booth prior to the voter making any selections.   The poll officers shall not in any manner request, suggest, or seek to persuade or induce any voter to vote for any particular candidate, political party, or political body, or for or against any particular question.

6.   Voters utilizing an audio tactile interface (ATI) device to vote on the ballot marking device without the assistance of any other individual shall not be considered as receiving assistance in voting and shall not be required to complete the forms required for receiving assistance in voting pursuant to O.C.G.A. § 21-2-409; however, if another person other than a poll officer is handling the printed ballot before it is inserted into the scanner, that person shall be considered as assisting.

7.   The poll officers shall confirm that voters deposit their ballots and return the voter access cards to the poll officers prior to leaving the enclosed space in the polling place. The poll officers shall arrange and configure the polling place and provide staffing at such places within the polling place to confirm that a voter will not leave the enclosed space with a ballot or voter access card.

8.   The election superintendent shall cause each polling place to be sufficiently staffed. At least one poll officer shall be assigned to assisting voters who have questions while they are in the voting booth but before they approach the ballot scanner. Another poll officer shall be stationed at every ballot scanner in use in the polling place while voting is occurring. The poll officer stationed at the ballot scanner shall offer each voter specific verbal instruction to review their printed paper ballot prior to scanning it. In addition to the preceeding insturction, the poll officer stationed at the ballot scanner shall offer general instruction throughout the period while voting is occurring telling voters that sample ballots and magnifying devices are available to assist them in reviewing their paper ballot. The poll officer shall take all reasonable precautions not to view the selections on an elector's ballot unless it is required due to assistance requested by the elector. If a poll officer observes a voter attempting to leave the enclosed space with a paper ballot, the poll officer shall inform the voter of the consequence of not depositing his or her paper ballot into the ballot scanner prior to leaving the room.

9.   A voter may request information from poll officers concerning how to use the electronic ballot marker or any other voting system component at any time during the voting process. However, once the voter scans his or her ballot into the ballot scanner, even if the ballot is blank with no votes cast, such voter shall be deemed to have voted and may not thereafter vote again. If a voter leaves the room encompassing the enclosed space with his or her paper ballot and does not place that ballot into the appropriate ballot scanner or ballot box, that voter shall be deemed to have voted and may not thereafter vote again. A sign shall be placed at the exit of the enclosed space that informs every voter that ballots may not be removed from the enclosed space. Any paper ballot that is removed from the room encompassing the enclosed space shall not be counted and shall be marked as spoiled by a poll officer.

10.    (a) If a voter discovers that the ballot presented on the electronic ballot marker is not correct or, for a partisan primary, is not the ballot that the voter desired to vote, the voter shall immediately notify a poll officer. The poll officer shall cancel or void the ballot on the electronic ballot marker without attempting in any manner to see how the voter has voted and shall then take the necessary steps to provide the voter with the correct ballot and make any necessary corrections to the voter certificate of the voter, the electors list, and the numbered list of voters. If the error is due to equipment malfunction, the poll officer shall document the incident on a form developed by the Secretary of State. The poll manager shall inform the election superintendent immediately if one or more electronic ballot markers are associated with a significant number of incidents.

(b) If, while reviewing his or her printed ballot, the voter discovers that the printed ballot does not contain the proper ballot selections or that the voter was not issued the proper ballot, the voter shall immediately inform a poll officer. The poll officer shall spoil the paper ballot and take the necessary steps to allow the voter to make his or her selections again on the electronic ballot marker and cause the correct ballot to be issued. If the error is due to equipment malfunction, the poll officer shall document the incident on a form developed by the Secretary of State. The poll manager shall inform the election superintendent immediately if one or more electronic ballot markers are associated with a significant number of incidents.

(c) If the voter places his or her paper ballot into the ballot scanner or ballot box prior to notifying the poll officials of any errors in the ballot, the voter shall be deemed to have voted and shall not be permitted to cast another ballot.

11.    (a) If any voting system component malfunctions during the day of a primary, election, or runoff, the poll manager shall immediately notify the election superintendent and shall not allow any voter to use the component until and unless the malfunction is corrected. The poll manager shall utilize appropriate backup procedures so that voting is not interrupted due to any equipment malfunctions. The election superintendent shall immediately arrange for the repair of the voting system component or shall provide a replacement component as soon as practicable. A replacement component shall not be used unless it has been appropriately tested prior to its use.

(b) In the event that a ballot scanner malfunctions, the voter shall place their voted ballot in the emergency bin connected to the ballot box. The ballots in the emergency bin shall be counted when the ballot scanner is properly functioning, by a replacement ballot scanner brought to the polling place, or, if neither are available, by another scanner at the county elections office. Poll officers may scan ballots placed into the emergency bin through the ballot scanner or a replacement ballot scanner when doing so will not interfere with voting. A voter placing his or her ballot into the emergency bin is considered to have voted that ballot and shall not be permitted to cast another ballot.

12. Accredited poll watchers shall be allowed to observe the process described in this rule; however, they must do so in a manner that does not interfere with poll officials or voters.

Authority: O.C.G.A. §§ 21-2-31, 21-2-409, 21-2-410

**Rule 183-1-12-.12 Tabulating Results**

(a)  After the Polls Close.

1.   Immediately after the polls close and the last voter has voted, the poll manager and two witnesses who have been previously sworn as poll officers as provided in O.C.G.A.  §§ 21-2-94 and 21-2-95 shall begin the closing procedure on each ballot scanner so that no further votes are cast and record the number of scanned ballots from every ballot scanner used in the polling place. The poll manager and the two witnesses shall record the number of scanned ballots from each scanner on a recap form to be developed by the Secretary of State. The poll manager and the two witnesses shall cause each ballot scanner to print three tapes of the tabulated results and shall sign each tape indicating that it is a true and correct copy of the tape produced by the ballot scanner. If the poll manager or the witnesses have reason to believe that printed tapes are not a true and correct tabulation of the ballots scanned by that ballot scanner, the poll manager or witness shall document the reasons and evidence for that belief and inform the election superintendent, who shall take appropriate action, in his or her discretion, so that the ballots in the ballot box associated with the ballot scanner are accurately tabulated.

2.   The poll manager shall cause the number of printed ballots from each ballot marking device to be recorded on the recap form. The poll manager shall further cause the number of spoiled ballots and ballots placed in the emergency bin of the scanner that were unable to be scanned to be recorded on the recap form. The poll manager shall cause the total number of voter check ins from the electronic poll book and/or paper voter list to be recorded on the recap form. If the numbers recorded on the recap form do not reconcile with each other, the poll manager shall immediately determine the reason for the inconsistency; correct the inconsistency, if possible; and fully document the inconsistency or problem along with any corrective measures taken.

3.   One of the three tapes of the tabulated results printed from the ballot scanner shall be affixed to the door of the polling place for the information of the public along with a copy of the provisional ballot recap form for the polling place. One tape shall be placed into an envelope (or reusable document storage container suitable for the same purposes) provided by the election superintendent, along with the "poll officer" memory card from the ballot scanner. The envelope shall be sealed by the poll manager and the same two witnesses who signed the tape such that the envelope cannot be opened without breaking such seal. The poll manager and the two witnesses shall initial the envelope indicating that it contains the correct tape and memory card from the indicated ballot scanner.  The envelope shall be labelled with the name of the polling place, the serial number of the ballot scanner, and the number assigned to the ballot scanner for that election.  The third tape shall be placed into another envelope with the polling place recap form.

4.   The poll manager and two witnesses who have been sworn as poll officers as provided in O.C.G.A.  §§ 21-2-94 and 21-2-95 shall unseal and open each ballot box, remove the paper ballots from each ballot box, and place the paper ballots into a durable, portable, secure and sealable container to be provided for transport to the office of the election superintendent. A separate container shall be used for the paper ballots from each ballot

box and the container shall be labelled with the polling place, ballot scanner serial number, the number assigned to the ballot scanner for that election, the count of the ballots from the tabulation tape, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the poll manager and the same two witnesses such that it cannot be opened without breaking the seal. The poll manager and the two witnesses shall sign a label affixed to the container indicating that it contains all of the correct ballots from the indicated ballot box and no additional ballots.

5.    The poll manager and the same two witnesses who emptied the ballot box shall complete and sign a form indicating that the ballot box was properly emptied and the ballots were properly stored and secured.   Such form shall be delivered to the election superintendent with the completed polling place recap form. The ballot box shall be resealed and the new seal numbers shall be documented.

6.    The envelopes containing the tabulation tape and the memory card, the containers containing the paper ballots, the completed polling place recap forms, voter access cards, supervisor's cards, electors lists, numbered lists of voters, electronic poll books, and other such paperwork shall be delivered to the election superintendent by the poll manager and at least one other sworn poll officer or law enforcement official.   The election superintendent or his or her designee shall receive the materials and shall issue a receipt to the poll manager for the materials. The poll manager and any poll officers who travelled with the materials shall sign a form indicating that no sealed documents were unsealed enroute and that the materials have not been tampered with. The election superintendent, in his or her discretion, may allow a designee of the poll manager to deliver the envelopes or containers containing the ballot scanner tabulation tapes and memory cards to be used for unofficial reporting of results prior to the delivery of the other polling place materials provided that the same procedures for transit and delivery set forth herein are followed.

7.    Before leaving the polling place, the poll manager shall power off, secure, and seal all electronic ballot markers, ballot boxes, and ballot scanners. The polling place shall be locked to prohibit unauthorized entry.

8. Accredited poll watchers shall be allowed to observe the process described in this rule; however, they must do so in a manner that does not interfere with poll officials.

(b)   Consolidation of Results.
    1.    All persons involved with the tabulation and consolidation of the election results and who will operate the computer programs or handle the memory cards shall be sworn in the same manner that custodians are sworn before entering into their duties.

    2.    Only persons who are permanent employees of the election superintendent or have been duly sworn as poll officers or custodians shall touch or be in contact with any ballot, container, returns, tapes, device, memory card, or any other such election materials. Only persons who are employed by the election superintendent or have been duly sworn shall be in the immediate area of the tabulating center designated by the superintendent for the officers to conduct the tabulation and consolidation of the election results.

3.   The tabulation and consolidation shall be performed in public. However, the election superintendent may make reasonable rules and regulations for conduct at the tabulating center for the security of the results and the returns and to avoid interference with the tabulating center personnel.

4.   Upon the delivery of any election materials from a polling place, the election superintendent or his or her designee shall provide a receipt that clearly states what election materials have been delivered.

5.   Upon receiving the paper ballots and the memory cards, the election superintendent shall verify the signatures on the sealed envelopes and containers, verify that the seals are intact, that the envelopes or containers have not been opened, and that there is no evidence of tampering with the envelopes, containers, or their contents.

6.   In the case of elections for county, state, and federal office, after verifying that the envelopes and containers are properly sealed and have not been opened or tampered with, the election superintendent shall break the seal and open each envelope and remove the memory card and results tape. The election superintendent or his or her designee shall then insert the memory card into the election management system computer and transfer the vote totals from the memory card into the election management system for official tabulation and consolidation.

7.   After transferring all of the vote totals from the memory cards to the election management system and consolidating such totals with the totals from the absentee ballot system and such votes from any provisional ballots which have been found by the registrars to be authorized pursuant to O.C.G.A. § 21-2-419, the election superintendent shall prepare the official consolidated returns for the primary, election, or runoff.

8.   The election superintendent shall not list and certify in the official consolidated returns for an election any results for write in candidates who were not properly qualified under O.C.G.A. § 21-2-133.

9.   In the case of primaries, elections, and runoffs for county, state, and federal office, the county election superintendent shall transmit to the Secretary of State the election returns by precinct for the county in electronic format or by electronic means, as may be specified by the Secretary of State, within fourteen days following a primary, election, or runoff.

(c)   Election Night Reporting. The election superintendent shall transmit to the Secretary of State unofficial election results for all races for state offices in any primary, election, or runoff as soon as possible after the closing of the polls for such primary, election, or runoff.  Such results shall be transmitted in a format prescribed by the Secretary of State. At a minimum, the results shall be transmitted upon one third of the precincts reporting results, upon two thirds of the precincts reporting results, and upon all precincts reporting results, including absentee ballots within all precincts. Except upon prior notice to and consultation with the Secretary of State, no election superintendent shall conclude the tabulation of votes on election night in any primary, election, or

runoff in which there are contested races for federal and state offices until and unless all such unofficial results, including absentee ballots, have been transmitted to the Secretary of State.

Authority: O.C.G.A. §§ 21-2-31, 21-2-94, 21-2-95

**Rule 183-12-.18 Provisional Ballots**

(1)   This rule shall govern the casting of provisional ballots by voters at primaries and elections in accordance with O.C.G.A. §§ 21-2-418 and 21-2-419.

(2)   In each polling place, there shall be established a location or station in the public area of the polling place for the purpose of issuing and receiving provisional ballots. Each polling place shall have an information sheet developed by the Secretary of State available for voters who have questions about the provisional ballot process. The information sheet should describe relevant law regarding provisional ballots for voters who do not show up on the electors list for that polling place.

(3)   The election superintendent shall provide each polling place with an adequate supply of provisional ballots in each ballot style (district combination) for the precinct and an inner ballot envelope and an outer ballot envelope. The election superintendent shall also be prepared to resupply polling places with provisional ballots in needed ballot styles in a timely manner while voting is occurring so that polling places do not run out of provisional ballots. The ballot envelopes shall be so designed that the ballot will fit within the inner ballot envelope and the inner ballot envelope will fit within the outer ballot envelope. The inner ballot envelope shall have printed on it the words "Official Provisional Ballot" and nothing else. The outer envelope shall have places for inserting the person's name, precinct, date and name of election, ballot style (district combination), and whether such ballot is a regular provisional ballot, a provisional ballot cast by a voter who registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. §§ 21-2-220 and 21-2-417, or a ballot cast during poll hours extended by a court order, or a combination thereof. Primaries and elections conducted by counties shall use optical scan ballots for provisional voting. The poll manager shall cause all voted provisional ballots to be deposited into the provisional ballot box and not be inserted into the polling place ballot scanner and kept separate and apart from non-provisional ballots cast at the polling place. Municipalities shall use the same type of ballots as the municipality uses for mail-in absentee voting. The election superintendent shall also provide a booth for voting provisional ballots in the enclosed space which will provide privacy for a person while voting a provisional ballot and a secure container in which the voted provisional ballots shall be placed.

(4)   Voters whose names do not appear on electors list.
    (a)   When a person arrives at a polling place, completes a voter certificate, and presents it to the poll workers but the person's name does not appear on the official electors list for the precinct, the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the polling place shall have an electronic poll book that includes a mastered list of registered voters in the state, and the poll workers shall check the list to determine if the person is assigned to a different polling place within the

county or registered in a different county. If the person's name appears on the master list for a different precinct within the same county, the poll workers shall inform the person of his or her correct polling place. The person shall be instructed to go to his or her correct polling place if practicable, but that if it is not practicable for the person to get to his or her correct polling place before the close of polls, that the person may vote a provisional ballot in the polling place in which they are present.  If, after receiving that instruction, the person states that it is not practicable for him or her to get to their correct polling place prior to the close of voting, the poll officer shall offer the person a provisional ballot. If the person is registered in a different county, the poll officer shall inform the person that he or she appears to be registered in a different county. If the person is still eligible to vote in the county in which they appear to be registered, the person may return to that county to vote. If the person states a good-faith belief that he or she timely registered to vote in the county in which he or she is present, he or she shall be offered a provisional ballot.

(b)    If the person's name is not found on the official list of electors for the precinct or the master list, the poll officers shall immediately contact the registrars and the person shall provide such information as the registrars may request to determine if the person is eligible to vote in the election. The registrars shall promptly review the information provided by the person and shall attempt to determine if the person timely and properly registered to vote in the county in which he or she is present.

(c)    If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election and should be assigned to the precinct at which the person is present, the registrars shall authorize the poll officers to add the person's name to the official electors list for the precinct and shall permit the person to vote in the same manner as other voters in the precinct vote. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the precinct with a notation of the name of the registrar who authorized such addition. Upon presentation of a properly completed voter certificate and the identification required by O.C.G.A. § 21-2-417, the person shall be permitted to vote in the same manner as other voters in the precinct.

d)    If the registrars can immediately determine that the person timely and validly registered to vote in the primary or election but should be assigned to a different precinct within the same county where the person is present, the registrars shall direct the poll officers to inform the person of the appropriate other precinct and the registrars shall notify the officers of such other precinct to add the person's name to the official electors list for such other precinct. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers at such other precinct which ballot style (district combination) should be issued to the person. The person's name shall then be added to the official electors list for the other precinct by the poll officers of the other precinct with a notation of the name of the registrar who authorized such addition. Upon the completion of a voter certificate and the submission of the identification required by O.C.G.A. § 21-2-417. the person shall be permitted to vote in the same manner as other persons in such other precinct. However, the poll officer shall also instruct the person that

if it is not practicable for such person to go to such other precinct before the polls close and the person communicates that to the poll officers, the person shall be offered a provisional ballot at the precinct in which the person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21·2-419(c).

(e)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if properly registered, would be assigned to the precinct at which the person is present, the registrars shall inform the poll officers and the person shall be offered a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person.

(f)     If the registrars cannot immediately determine that the person timely and validly registered to vote in the primary or election; but, from the information presented by the person, the person, if registered, would be assigned to a different precinct from the precinct in the county at which the person is present, the registrars shall direct the poll officers to inform the person of the appropriate precinct. The registrars shall notify the officers of such other precinct to permit the person to vote a provisional ballot when such person arrives at such precinct, completes an official voter registration form and a provisional ballot voter certificate, and submits the appropriate identification required by O.C.G.A. § 21-2-417. When there are multiple ballot styles (district combinations) in use in such other precinct, the registrars shall also advise the poll officers which ballot style (district combination) should be issued to the person. However, the poll officer shall also instruct the person that if it is not practicable for such person to go to such other precinct before the polls close and the person communicates that to the poll officers, the person shall be offered a provisional ballot at the precinct at which such person is present. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2·419(c).

(g)     If the person appears at a precinct in a county or municipality in which the person does not reside, the registrars shall instruct the poll officers to direct the person to contact the registrars in the county in which the person resides to determine in which precinct such person should vote.

(h)     If the poll officers cannot get in touch with the registrars after making a reasonable effort to do so, the poll officers shall be authorized to permit the person to receive a provisional ballot at the precinct without additional authorization from the registrars. In such case, all votes cast by such person for candidates for whom such person is properly entitled to vote shall be counted and all votes cast for candidates for whom such person is not properly entitled to vote shall be void and shall not be counted in accordance with O.C.G.A. § 21-2-419(c).

(i)     Upon accepting the opportunity to receive a provisional ballot, the person shall complete a provisional ballot voter certificate and an official voter registration form and submit such completed certificate and form to the poll officers along with the appropriate identification required by O.C.G.A. § 21-2-417. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an Inner ballot envelope and an outer ballot envelope.  Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to the provisional ballot voting booth and mark the ballot with his or her intended selections.  Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(j)     Upon receiving the sealed ballot envelope from a person casting a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete,  shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person to place the ballot envelope into the secure container for provisional  ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public. The provisional ballot voter certificate and voter registration form shall be attached together and shall be placed in a separate, distinctively marked envelope or reusable document container which shall be placed in a secure location in the polling place.

(5)    Voter who registered for first time by mail but did not provide required identification.

(a)    When a person arrives at a polling place, completes a voter certificate, and presents it to the poll workers but does not have the identification required by O.C.G.A. § 21-2-417 and the person's name appears on the official electors list for the precinct with a designation that the person registered to vote for the first time in this state by mail but has not provided the required identification to the registrars as required by O.C.G.A. § 21- 2-220. the poll officers shall immediately direct the person to the provisional ballot station. At the provisional ballot station, the person shall be permitted to cast a provisional ballot at such precinct. When there are multiple ballot styles (district combinations) in use in the precinct, the poll officers shall issue the appropriate ballot style (district combination) to the person as shown on the electors list. The poll officers shall place the name of the person on the numbered list of provisional ballot voters and issue the person a provisional ballot of the style authorized by the registrars along with an inner ballot envelope and an outer ballot envelope.  Before issuing the outer ballot envelope to the person. the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to the provisional ballot voting booth and mark the ballot with his or her intended selections. Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall

seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers.

(b)    Upon receiving the sealed ballot envelope from a person completing a provisional ballot, the poll officers  shall verify that the information requested on the outer ballot envelope  is complete, shall mark the appropriate box or boxes to designate the type of provisional ballot enclosed therein, and shall direct the person to place the ballot envelope into the secure container for provisional ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)    The provisional ballot shall not be counted unless the voter provides the identification required by O.C.G.A. § 21-2-220 and 21-2-417 to the registrars before the end of the period set by law for the verification of provisional ballots. Such identification may be provided to the registrars in person, by email, by facsimile transmission or, in the case of disabled voters, by delivery by a third party.

(6)    Voters voting during extended polling hours in an election in which federal candidates are on the ballot.

(a)    In the event that the polling hours for a polling place are extended by a court order beyond the normal closing time for a primary, election, or runoff in which federal candidates are on the ballot, all voters who vote after the normal closing time for the polling place shall vote by provisional ballot.

(b)    Voters whose names appear on the electors list and who have the appropriate identification required by O.C.G.A. § 21-2-417 shall complete a provisional voter certificate and shall be issued a provisional ballot along with an inner ballot envelope and an outer ballot envelope. Such voters shall not be required to complete a voter registration form. It also shall not be necessary to obtain approval from the registrars to issue provisional ballots to such voters. The poll officers shall place the name of the person on the numbered list of provisional ballot voters. Before issuing the outer ballot envelope to the person, the poll officers shall enter the person's name, the name of the precinct, the date and name of the election, and the ballot style (district combination) on the outer envelope. The person shall then retire to a provisional ballot voting booth and mark the ballot with his or her intended selections.  Upon completing the ballot, the person shall seal the ballot in the inner ballot envelope and place the inner ballot envelope containing the ballot into the outer ballot envelope and shall seal the outer ballot envelope. The person shall then return the sealed envelope to the poll officers. Upon receiving the sealed ballot envelope from a person completing a provisional ballot, the poll officers shall verify that the information requested on the outer ballot envelope is complete, shall mark the appropriate box to designate that the ballot is an extended poll hours provisional ballot, and shall direct the person to place the ballot envelope into the secure container for provisional  ballots which shall be located within the enclosed space in the polling place where it can be monitored by the poll officers and observed by the public.

(c)   If the voter's name is not on the electors list, the poll workers shall follow the provisions of this rule for regular provisional balloting under this rule and, if the voter is authorized by the registrars to vote a provisional ballot under the terms of this rule, shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(d)   If the voter's name is on the electors list but registered to vote for the first time in this state by mail and has not provided the identification required by O.C.G.A. § 21-2-220. the poll officers shall permit the voter to vote in accordance with the provisions of this rule for first time voters who register for the first time in this state by mail without providing the required identification, and shall also mark the appropriate box on the outer ballot envelope to indicate that the ballot was issued during extended poll hours.

(e)   The poll officers shall provide each first time voter who registered for the first time in this state by mail without providing the required identification who casts a provisional ballot information on how the voter may provide the registrars with the appropriate identification in order that the voter's ballot may be counted.

(7)   Each voter casting a provisional ballot in a primary, election, or runoff in which federal candidates appear on the ballot shall be given written information explaining how such voter can ascertain if such ballot is counted and, if such ballot is not counted, the reason why such ballot was not counted.

(8)   The provisional ballot voter certificates and voter registration cards may be picked up during the day by a registrar or deputy registrar for the purpose of beginning the process of determining the eligibility of the persons to cast provisional ballots. Before transferring the voter certificates and registration cards to the registrars during the day, the poll officers shall note the number of certificates and cards being transferred to the registrars. If such voter certificates and registration cards are not picked up by the registrars by the time that the polls close and the last voter has voted, the envelope in which the provisional ballot voter certificates and voter registration cards have been deposited shall be securely sealed and shall be returned to the election superintendent with the other materials from the polling place.

(9)   After the close of the polls and the last voter has voted, the poll officers shall account for all voted provisional ballots, cancelled and spoiled provisional ballots, and unused provisional ballots. The ballot stubs and unused and spoiled ballots shall then be securely sealed in the container provided for them by the election superintendent. The poll officer, along with two other witnesses sworn as poll officers, shall then proceed to open the secure container in which the provisional ballots were deposited and count the number of voted provisional ballots contained therein. The poll officer and witnesses shall then compare the total number of persons voting provisional ballots as shown on the numbered list of provisional ballot voters with the number of ballots issued and the number of ballots voted. If these numbers do not equal one another. the poll officers shall determine the reason for the inconsistency and shall correct the problem before going further. The poll officer and witnesses shall seal the voted provisional ballots in a container for transfer to the election superintendent. The poll officers shall complete and sign a provisional ballot recap sheet and post one copy of the recap sheet on the door of the polling place with the election results from

the precinct. The remaining copies of the provisional ballot recap sheet along with the numbered list of provisional ballot voters shall be returned to the election superintendent with the other election materials from the precinct.

(10)    Upon receiving the election materials from the precincts, the election superintendent shall cause the envelope containing the provisional ballot voter certificates and voter registration cards to be promptly removed from the other materials and, if applicable, transferred to the registrars for processing. If applicable, the voter certificates and registration cards shall be transferred to the registrars no later than 9:00 a.m. on the day following the day of the primary, election, or runoff. The election superintendent shall also remove the container containing the voted provisional ballots and shall place such container in a secure location within the election superintendent's office.

(11)    Upon receiving the provisional ballot voter certificates and voter registration cards from the election superintendent, the registrars shall promptly proceed to determine the eligibility of each person that voted a provisional ballot.

(a)    If the registrars determine that the person did timely register and is eligible and entitled to vote in such primary, election, or runoff, the registrars shall mark on the numbered list of provisional ballot voters that the ballot is accepted and shall notify the election superintendent of the proper ballot style (district combination) for the voter.

(b)    If the registrars determine that the person did not timely register to vote for the primary or election or is not eligible and entitled to vote in such primary or election  or if the registrars cannot determine by the close of business on the third business day following the day of the primary, election, or runoff if the voter timely registered and was eligible and entitled to vote in such primary  or election, the registrars shall mark on the numbered list of provisional  ballot voters that the ballot is rejected.

(c)    Not later than the close of business on the third business day following the day of the primary, election, or runoff, the registrars shall return to the election superintendent the numbered list of provisional ballot voters reflecting the accepted and rejected provisional ballots.

(d)    The names of those persons whose names are accepted shall be added to the official electors list. The voter registration cards of those persons whose ballots are rejected on the numbered list of provisional ballot voters shall be processed by the registrars and, if found to be eligible and qualified, shall be added to the electors list for future elections.

(e)    The registrars shall maintain the provisional ballot voter certificates for the same period of time and under the same conditions as the regular voter certificates. Voter registration cards completed by provisional ballot electors shall be maintained for the same period of time and under the same conditions as other voter registration cards.

(12)    Upon receiving the numbered list of provisional ballot electors from the registrars, the election superintendent shall prepare to count the accepted provisional ballots. The election

superintendent shall first compare the precinct designation and election district information with the style of ballot (district combination) cast by the provisional ballot voter.

(a)  If the ballot style (district combination) voted by the voter was correct, then the election superintendent shall open the outer envelope and place the inner envelope containing the ballot into a ballot box.

(b)  If the ballot style (district combination) voted by the voter was not correct, then the election superintendent shall open the outer envelope and note the correct ballot style (district combination) on the inner envelope. Each such inner envelope shall then be placed in a separate container until all of the outer envelopes have been opened. The outer envelopes shall then be stored in a location away from the inner envelopes in a manner such that the inner envelope and ballot of a voter cannot be identified as being the ballot of a particular voter. The superintendent shall then open each such inner envelope and remove the ballot and shall place a unique identifying number on the ballot along with the designation of the precinct at the top of the ballot. The election superintendent shall then prepare or cause to be prepared a duplicate ballot. The duplicate ballot shall be clearly labeled with the word "Duplicate" and shall bear the name of the precinct and the same unique identifying number as the original ballot at the top of the ballot. The election superintendent shall transfer or cause to be transferred to the duplicate ballot, in the presence of at least two other consolidation assistants and in public, only the votes cast by the provisional ballot voter in the races and on the questions to which such voter was eligible and entitled to vote. The votes entered on the duplicate ballot shall be verified by at least one consolidation assistant. The completed duplicate ballot shall be placed in the ballot box with the other provisional ballots to be counted. The original ballot shall be placed into an appropriate container and retained.

(c)  After opening all of the outer envelopes and making all necessary duplicate ballots, the election superintendent shall then open the inner envelopes of the ballots in the ballot box and proceed to count the votes in the same manner as absentee ballots are counted. Upon completing the count, the election superintendent shall add the provisional ballot votes to the other votes cast at the polls and by absentee ballot and shall consolidate and certify the results of the primary, election, or runoff. The provisional ballots and any duplicates shall be retained for the same time period and in the same manner as absentee ballots.

(d)  The rejected provisional ballots shall be marked on the outer envelope as "Not Counted" and shall not be opened. The ballots shall be maintained for the same time period and in the same manner as absentee ballots which were returned too late to be counted.

(e)  The election superintendent shall notify the registrars of the names of those persons who cast a provisional ballot in the wrong precinct or on an incorrect ballot style (district combination).

(13)  Upon identifying the rejected provisional ballot electors, the registrars shall proceed at the earliest possible time to notify each such person by first-class mail at the address shown on the provisional ballot voter certificate that his or her ballot was not counted because of the inability of

the registrars to verify that the person timely registered to vote or such other proper reason. The registrars shall also attempt to notify the person by telephone or email if the provisional ballot voter certificate contains an email address or telephone number. If the person's voter registration card was approved, the registrars shall also notify the person that his or her name will be added to the elector's list and the person will be eligible to vote in future primaries and elections and that a voter notification or precinct card will be mailed to the person to provide the voter with the correct precinct and election district information.

(a)   Upon receiving notification from the election superintendent of the names of persons who cast provisional ballots in the incorrect precinct or on the incorrect ballot style (district combination), the registrars shall notify such persons of their correct precinct and/or election district information. The sending of a voter notification or precinct card by first-class mail to the address shown on the voter registration card completed by such person when voting by provisional ballot shall be sufficient notice for such voters.

(b)   If the person's voter registration is rejected, the registrars shall notify the person of such rejection in accordance with O.C.G.A. § 21-2·226(d).

(c)   In addition, the registrars shall establish a free access system, such as a toll-free telephone number or an Internet website, by which voters who cast provisional ballots in a primary, election, or runoff in which federal candidates are on the ballot may ascertain whether their ballots were counted or, if the ballots were not counted, the reasons why such ballots were not counted. The registrars shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by such system. Access to information about an individual provisional ballot shall be restricted to the voter who cast such ballot.

Authority: O.C.G.A. §§ 21-2-31, 21-2-,226, 21-2-417, 21-2-418, 21-2-419, 21-2-420

## Rule 183-1-12-.20 Use of Emergency Paper Ballots When Voting Machines are Inaccessible

Emergency paper ballots shall be offered to and may be used by persons with disabilities in non-emergency situations if the electronic ballot markers are inaccessible.

Authority: O.C.G.A. § 21-2-31

CERTIFICATION
OF ADMINISTRATIVE RULES
FILED WITH THE SECRETARY OF STATE
BRAD RAFFENSPERGER

(Pursuant to the Official Code of Georgia Annotated, Sections 50-13-3, 50-13-4, and 50-13-6.)

I do hereby certify that the attached Rule Amendment is a correct copy as promulgated and amended on the day of February 28, 2020.

**RULES OF THE STATE ELECTION BOARD**

FILED: March 2, 2020

*Chapter 183-1-13 "Preparation for and Conduct of Primaries and Elections" title is changed to "Poll Watchers" and is hereby amended as attached hereto.*

*Rule 183-1-13-.02 "Assistive Technology Devices" is adopted as attached hereto.*

STATUTORY AUTHORITY:

O.C.G.A. §§ 21-2-31

This 2nd day of March, 2020.

Brad Raffensperger
Secretary of State
Chairman, State Election Board

Sworn and subscribed before me this 2 nd day of March, 2020.

Notary Public
My commission expires:

Ari Schaffer
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 01/30/2024

**RULES
OF
THE STATE ELECTION BOARD**

**CHAPTER 183-1
GEORGIA ELECTION CODE**

**SUBJECT 183-1-13
POLL WATCHERS**

**TABLE OF CONTENTS**

183-1-13-.02 Assistive Technology Devices

**RULE 183-1-13-.02 Assistive Technology Devices**

An illiterate or disabled elector who is entitled to receive assistance pursuant to O.C.G.A. §§ 21-2-385 or 21-2-409, or a person assisting such an elector, may use an assistive technology device to help the elector review their paper ballot prior to casting. Any image of the ballot obtained through using an assistive technology device shall be immediately deleted.  Use of an assistive technology device by an illiterate or disabled elector or by a person assisting an illiterate or disabled elector shall not be deemed a violation of O.C.G.A. § 21-2-413(e).

Authority: O.C.G.A. § 21-2-31

CERTIFICATION
OF ADMINISTRATIVE RULES
FILED WITH THE SECRETARY OF STATE
BRAD RAFFENSPERGER

(Pursuant to the Official Code of Georgia Annotated, Sections 50-13-3, 50-13-4, and 50-13-6.)

I do hereby certify that the attached Rule Amendment is a correct copy as promulgated and amended on the day of February 28, 2020.

**RULES OF THE STATE ELECTION BOARD**

FILED: March 2, 2020

*Rule 183-1-14-.02 "Advance Voting" is amended as attached hereto.*

*Rule 183-1-14-.13 "Prompt Notification of Absentee Ballot Rejection" is amended as attached hereto.*

STATUTORY AUTHORITY:

O.C.G.A. §§ 21-2-31, 21-2-381

This 2nd day of March, 2020.

Brad Raffensperger
Secretary of State
Chairman, State Election Board

Sworn and subscribed before me this 2nd day of March, 2020.

_____
Notary Public
My commission expires:

Ari Schaffer
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 01/30/2024

**RULES**
**OF**
**THE STATE ELECTION BOARD**

**CHAPTER 183-1**
**GEORGIA ELECTION CODE**

**SUBJECT 183-1-14**
**ABSENTEE VOTING**

**TABLE OF CONTENTS**

183-1-14-.02 Advance Voting
183-1-14-.13 Prompt Notification of Absentee Ballot Rejection

**RULE 183-1-14-.02 Advance Voting**

(1)    All federal, state, and county primaries and elections shall be conducted using electronic ballot markers and ballot scanners for in-person absentee voting during the advance voting period. As used in this rule, the term "registrar" or "registrars" means a county board of registrars, a county board of elections and registration, a joint county-municipal board of elections and registration, a municipal absentee ballot clerk, a municipal registrar, or the designee of a board of registrars, board of elections and registration, or joint county-municipal board of elections and registration.

(2)    The registrar shall publish the times, dates. and locations of the availability of advance voting in their jurisdiction on the homepage of the county's publicly accessible website associated with elections and/or registrations, or if the county does not have such a website, in a newspaper of general circulation and by posting in a prominent location in the county, no later than 7 days prior to the beginning of the advance voting period.  Any additional advance voting locations added after that deadline shall be published as soon as possible. The registrar shall endeavor not to remove or alter any advance voting locations after they are published, unless there are emergency or unforeseen circumstances make such a change necessary, in which case the registrar shall publish those changes as soon as possible.

(3)    Electronic ballot markers and ballot scanners shall be configured and tested in accordance with the provisions of Rule 183-1-12-.08 prior to use in advance voting. Public notice of the time and place for such configuration and testing of the electronic ballot markers and ballot scanners to be used for advance voting shall be given in accordance with O.C.G.A. §§ 21-2-374 and 21-2-379.25 and Rule 183-1-12-.08 prior to such configuration and testing.

(4)    The electronic ballot markers and ballot scanners to be used for advance voting shall be set up in a manner to assure the privacy of the elector while casting his or her ballot while maintaining the security of such components against tampering, damage, or other improper conduct. In addition, there shall be at least one electronic ballot marker configured for use by physically disabled electors. at each advance voting location.

(5)      Voter access cards for use in electronic ballot markers for advance voting may be encoded by use of an electronic poll book or other device approved by the Secretary of State. The registrar may also utilize the correct access code to manually bring up the correct ballot on the touchscreen.

(6)      Magnifying devices shall be available at advance voting locations to assist voters in reviewing their paper ballots.

(7)      On the first day of the advance voting period, prior to any votes being cast on ballot scanners, the registrars shall verify that the seals for each electronic ballot marker, ballot scanner, and ballot box are intact and that there is no evidence or indication of any tampering with the seal or the component. The registrars shall verify that the number of the seal matches the number of the seal recorded for that component when such component was prepared by the election superintendent for the primary, election, or runoff. If a seal number does not match or if there is any evidence or indication of tampering with the seal or component, the election superintendent shall be immediately notified and such component shall not be used until such matters are resolved by agreement of the election superintendent and the registrars. The set up shall be performed in public and the public may view the set up subject to such reasonable rules and regulations as the registrars may deem appropriate to protect the security of the voting system components and to prevent interference with the duties of the registrars. The registrars and two witnesses sworn as poll officers as provided in O.C.G.A. §§ 21-2-94 and 21-2-95 shall run a zero tape on each ballot scanner prior to the beginning of advance voting on those scanners, and the registrar and the two witnesses shall sign the zero tape in the space provided. The registrars shall verify that the electronic ballot markers and ballot scanners all indicate zero counts prior to the opening of the polls. If the tape does not show zero votes prior to the start of voting, the election superintendent shall be immediately notified and such component shall not be used until the component is cleared and the matter is resolved by agreement of the election superintendent and the registrars. The registrar and the same two sworn witnesses who signed the zero tape shall inspect and confirm that the ballot box associated with that scanner is empty and contains no ballots or other unauthorized matter, and shall verify that fact in writing on a form to be developed by the Secretary of State. Such form shall include the date and time it was executed, shall be attached to the zero tape generated by the ballot scanner attached to that ballot box, and shall be returned to the election superintendent at the close of the advance voting period with the other paperwork from the voting location.  The registrars shall verify that there is no unauthorized matter affixed to the electronic ballot markers, ballot scanners, or voting booths. The registrars shall affix a card of instructions for voting within each voting booth. Prior to voters entering the voting booth, the registrars may also distribute to such voters a card of instructions for voting that has been approved or provided by the Secretary of State.

(8)      If at the close of voting on any day during the advance voting period, there are more than 1,500 ballots inside any ballot box, the registrar and two sworn witnesses shall unseal the ballot box, remove the paper ballots, and place the ballots in one or more durable, portable, secure, and sealable containers. The registrars shall complete and affix to each container a form identifying the advance voting location, the advance voting dates that the ballots were cast, the ballot scanner serial number, the number assigned to that ballot scanner for that specific election, the count of the ballots from the ballot scanner, and the date and time that the ballot box was

emptied. The container shall be sealed and signed by the registrar and the two witnesses such that it cannot be opened without breaking the seal. The ballot box shall be resealed, and the new seal numbers shall be documented. The registrar and at least one sworn witness shall deliver the ballot container to the election superintendent for secured storage until time for the tabulation of votes, and the election superintendent shall complete a chain of custody form indicating the delivery of the secure container. The form shall be signed by the registrar and any witnesses who travelled with the registrar indicating that no sealed documents were unsealed enroute and have not been tampered with. In the discretion of the registrar, the same procedure for emptying the ballot box may be followed if there are less than 1,500 ballots in the ballot box at the end of any advance voting day, but the ballot box shall not be opened while voting is taking place except as authorized by Rule 183-1-12-.10(5).

(9)    At the close of voting each day during the advance voting period, the registrars shall document the election counter number from the ballot scanner on the daily recap sheet. The memory cards shall remain in the ballot scanner at all times during the advance voting period until the polls close on the day of the primary, election, or runoff. Each electronic ballot marker, ballot scanner, ballot box, electronic poll book, paper backup poll book, and voter access cards shall then be secured overnight. If the room where advance voting is taking place cannot be locked and secured overnight in the reasonable judgment of the superintendent, the superintendent shall cause the voting system components to be stored in a locked, secure container that is reasonably affixed to the polling place; be under visual surveillance of an election official or their designee, a licensed security guard, or a law enforcement official; or if, if the previously listed options are not feasible, in another manner that in the reasonable judgment of the superintendent secures and protects the voting system components from unauthorized access. Any electronic visual surveillance used for security when voting is not taking place shall not record, capture, or otherwise compromise the privacy of an elector's ballot.

(10)    Each morning during the advance voting period prior to voting beginning, the registrars shall verify the seal numbers on each electronic ballot marker and ballot scanner to be used for advance voting with the number of the seal recorded on the daily recap sheet from the previous day of advance voting and shall verify that the seals do not show any signs of tampering. If the seal number corresponds to the entry on the daily recap sheet and there is no evidence of tampering, the electronic ballot markers and ballot scanners shall be turned on. If the numbers do not match or there is evidence of tampering, the election superintendent shall be notified immediately and the component shall not be used until such discrepancy is resolved to the satisfaction of the election superintendent and the registrars. After turning on the ballot scanners, the registrars shall verify the election counter number with the number recorded on the daily recap sheet from the previous day of advance voting. If the numbers do not match, the election superintendent shall be immediately notified and the component shall not be used until such discrepancy is resolved to the satisfaction of the election superintendent and the registrars. The election counter number shall then be entered onto the daily recap sheet for that day.

(11)    Voters who vote absentee ballots in person shall first complete an absentee ballot application and sign an oath, which may be on the same form and may be on paper or digital. After the registrars determine that the voter is eligible to vote, the registrars shall note the voter's registration number and ballot style on the absentee ballot application. Each voter shall be

offered instruction by a registrar in the method of voting on the voting system, including specific instruction to review their printed ballot prior to scanning it. In providing such instruction, the registrar shall not in any manner request, suggest, or seek or persuade or induce any voter to vote any particular ticket or for any particular candidate, or for or against any particular question. The voter shall then be issued a voter access card programmed with the correct ballot style or the registrar shall use the correct access code to manually bring up the correct ballot on the electronic ballot marker. The voter shall then enter the enclosed space in the advance voting location and proceed to vote his or her choices. Upon making his or her selections, the voter shall cause the paper ballot to print, remove his or her printed ballot from the printer, remove the voter access card from the touchscreen unit, review the selections on his or her printed ballot, scan his or her printed ballot into the ballot scanner, and return the voter access card to a poll officer.

(12)    The registrars shall cause each advance voting location to be sufficiently staffed.  At least one poll officer shall be assigned to assisting voters who have questions while they are in the voting booth, but before they approach the ballot scanner. Another poll officer shall be  stationed at every ballot scanner in use in the polling place while voting is occurring. The poll officer stationed at the ballot scanner shall offer each voter specific verbal instruction to review their printed paper ballot prior to scanning it. In addition to the preceding instruction, the poll officer stationed at the ballot scanner shall offer general instruction throughout the period while voting is occurring telling voters that sample ballots and magnifying devices are available to assist them in reviewing their paper ballot. The poll officer shall take all reasonable precautions not to view the selections on an elector's ballot unless it is required due to assistance requested by the elector. If a poll officer observes a voter attempting to leave the enclosed space with a paper ballot, the poll officer shall inform the voter of the consequence of not depositing his or her paper ballot into the ballot scanner prior to leaving the room.

(a)   If a voter discovers that the ballot presented on the electronic ballot marker is not correct or, for a partisan primary, is not the ballot that the voter desired to vote, the voter should immediately notify a poll officer.  The poll officer shall cancel or void the ballot on the electronic ballot marker without attempting, in any manner, to see how the voter has voted and shall then take the necessary steps to provide the voter with the correct ballot and make any necessary corrections to the voter's certificate of the voter, the electors list, and the numbered list of voters. If the error is due to equipment malfunction, the poll officer shall document the incident on a form developed by the Secretary of State. The poll officer shall inform the election superintendent immediately if one or more electronic ballot markers are associated with a significant number of incidents.

(b)  If, while reviewing his or her paper ballot, a voter discovers that the printed ballot does not reflect the voter's desired selections or that the voter was not issued the proper ballot, the voter should immediately inform a poll officer.  The poll officer shall spoil the paper ballot and take the necessary steps to allow the voter to make his or her selections again on the electronic ballot marker and cause the correct ballot to be issued.  The poll officer shall document the incident on a form circulated by the Secretary of State.  The poll manager shall inform the elections superintendent immediately if one or more BMDs are associated with a significant number of incidents.

(13)     At the end of the advance voting period, the registrars shall record the election counter number from each ballot scanner on the daily recap sheet. The ballot scanners shall be shut down and sealed. The registrars shall record the seal numbers on the daily recap sheet. The registrar and two sworn witnesses shall unseal the ballot box, remove the paper ballots, and place the ballots in one or more durable, portable, secure, and sealable containers.  The registrars shall complete and affix to each container a form identifying the advance voting location, the advance voting dates that the ballots were cast, ballot scanner serial number, the number assigned to that ballot scanner for that specific election, the count of the ballots from the ballot scanner, and the date and time that the ballot box was emptied. The container shall be sealed and signed by the registrar and the two witnesses such that it cannot be opened without breaking the seal. The ballot box shall be resealed, and the new seal numbers shall be documented. The registrar and at least one sworn witness shall deliver the ballot container to the election superintendent for secured storage until time for the tabulation of votes, and the election superintendent shall complete a chain of custody form indicating the delivery of the secure container. The form shall be signed by the registrar and any witnesses who travelled with the registrar indicating that no sealed documents were unsealed enroute and have not been tampered with. The ballot scanners and ballot containers shall then be secured until time for the tabulation of votes.

(14)     By the close of the polls on the day of the primary, election, or runoff, the registrars shall deliver all of the ballot scanners used for advance voting and all other absentee ballots received to the election superintendent or the tabulating center. The election superintendent or tabulating center personnel shall count all of the absentee ballots in accordance with the procedures required by law and the rules of the State Election Board. The election superintendent or tabulating center personnel shall verify the seal numbers of each ballot scanner with the numbers recorded on the daily recap sheet form and shall inspect each seal and unit to verify that there is no evidence of tampering with the unit.  If the seal numbers are not correct or there is evidence of tampering, the Secretary of State and the election superintendent shall be notified immediately and no further action shall be taken with regard to such unit until the reason for the discrepancy has been determined to the satisfaction of the election superintendent.

(15)     After verifying the seal number and the integrity of the seal on each ballot scanner, the election superintendent or tabulating center personnel shall open each ballot scanner and turn on the power. The election superintendent or tabulating center personnel shall then compare the numbers shown on the election counters of the ballot scanners with the numbered list of absentee electors and the absentee ballot recap form to verify that there are no discrepancies. If there is a discrepancy, no further action shall be taken until the reason for the discrepancy has been determined to the satisfaction of the election superintendent. The election superintendent or tabulating center personnel shall cause each ballot scanner to print a minimum of three tapes showing the vote totals as cast on that ballot scanner. Three witnesses shall sign each of the tapes or shall write on the tapes the reason why they will not sign the tapes. One copy of the results tape for each ballot scanner shall be made available for the information of the public. One tape shall be placed into an envelope (or reusable document storage container suitable for the same purpose), provided by the election superintendent along with "poll worker" memory cards from the ballot scanner. The envelope shall be sealed by the poll manager and the same two witnesses who signed the tape such that the envelope cannot be opened without breaking such seal. The envelope shall be initialed by the poll manager and the two witnesses indicating that it contains

the correct tape and memory card from the indicated ballot scanner. The envelope shall be labelled with the name of the polling place, the serial number of the ballot scanner, and the number assigned to the ballot scanner for that election. The third tape shall be placed into another envelope with the absentee ballot recap form.

(16)    After completing the printing of the results, the ballot scanner shall be turned off, secured, and resealed. The ballot scanners shall then be placed in a secure area with appropriate climate control. The envelopes containing the memory cards and results tapes, voter access cards, poll worker cards, ballot encoder devices, numbered lists of absentee voters, absentee ballot recap forms, and other such paperwork shall be transported to the office of the election superintendent by the election superintendent or tabulating center personal, which transportation shall at all times involve at least two authorized individuals. The office of the election superintendent shall receive the materials and shall document delivery. The election superintendent or tabulating center personal who travelled with the materials shall sign a form indicating that no sealed documents were unsealed enroute and that the materials have not been tampered with.

(17)    Any notices to the Secretary of State about discrepancies in numbers or seals, zero tapes, or election counters shall also be forwarded to members of the State Election Board, but such information shall be considered confidential if the Secretary of State has initiated an investigation of the matter.

Authority: O.C.G.A. §§ 21-2-31, 21-2-385


**RULE 183-1-14-.13 Prompt Notification of Absentee Ballot Rejection**

When a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure, as provided by O.C.G.A. § 21-2-386, by mailing written notice, and attempt to notify the elector by telephone and email if a telephone number or email is on the elector's voter registration record, no later than the close of business on the third business day after receiving the absentee ballot.  However, for any timely submitted absentee ballot that is rejected on or after the second Friday prior to Election Day, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure, as provided by O.C.G.A. § 21-2-386, by mailing written notice, and attempt to notify the elector by telephone and email if a telephone number or email is on the elector's voter registration record, no later than close of business on the next business day.

Authority: O.C.G.A. §§ 21-2-31, 21-2-386

CERTIFICATION
OF ADMINISTRATIVE RULES
FILED WITH THE SECRETARY OF STATE
BRAD RAFFENSPERGER

(Pursuant to the Official Code of Georgia Annotated, Sections 50-13-3, 50-13-4, and 50-13-6.)

I do hereby certify that the attached Rule Amendment is a correct copy as promulgated and amended on the day of February 28, 2020.

**RULES OF THE STATE ELECTION BOARD**

FILED: March 2, 2020

*Rule 183-1-15-.03 "Optical Scan Recount Procedure" is adopted as attached hereto.*

STATUTORY AUTHORITY:

O.C.G.A. §§ 21-2-31, 21-2-495

This 2nd day of March, 2020.

Brad Raffensperger
Secretary of State
Chairman, State Election Board

Sworn and subscribed before me this 2nd day of March, 2020.

Notary Public:
My commission expires:

Ari Schaffer
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 01/30/2024

**RULES**
**OF**
**THE STATE ELECTION BOARD**

**CHAPTER 183-1**
**GEORGIA ELECTION CODE**

**SUBJECT 183-1-15**
**RETURNS OF PRIMARIES AND ELECTIONS**

**TABLE OF CONTENTS**

Rule 183-1-15-.03 Optical Scan Recount Procedure

**Rule 183-1-15-.03 Optical Scan Recount Procedure**

(1)     Recount by Electronic Tabulation

    (a).   Recounts of primaries and elections conducted using an optical scanning voting system shall be in accordance with this rule.

    (b).   The recount shall be conducted by tabulating all ballots utilizing ballot scanners.

    (c).   Prior to conducting a recount, the election superintendent shall test each ballot scanner to be used in the recount. A test deck shall be prepared to include at least 75 ballots marked by an electronic ballot marker and 25 absentee ballots marked by hand that were cast in the election to be recounted. The ballots shall be selected from at least 3 different precincts, if available. The selection of individual ballots from a precinct's ballot container shall be conducted in in a manner that selects ballots from throughout the ballot container. The test desk shall be tabulated by the ballot scanner or scanners to be used in the recount using one or more batches. A manual hand count of the test deck shall be made and compared to the electronic tabulation of the test deck. If the two counts do not match, the discrepancy shall be researched and additional tests may be run. If the discrepancy cannot be resolved such that the manual hand count and electronic tabulation of the test deck matches, the ballot scanner shall not be used in the recount. If, after testing all available ballot scanners, there are no ballot scanners authorized to be used in the recount, the recount shall be conducted by manual hand count. Upon completion of the test, the test deck ballots shall be returned to their original ballot containers.

    (d).   The recount shall be open to the view of the public, but no person except one designated for the purpose by the superintendent or the superintendent's authorized deputy shall touch any ballot or ballot container. The superintendent may designate a viewing area by which members of the public are limited for the purpose of good order and maintaining the integrity of the recount.

(e). The tabulation of ballots must be completed through a precise, controlled process that ensures, for each ballot scanner used in the recount, no more than one ballot container is unsealed at any given time.

(f). A clear audit trail must be maintained at all times during the recount, including but not limited to, a log of the seal numbers on ballot containers before and after the recount.

(g). The ballot scanner shall be programmed to flag or reject ballots that contain an overvote for the contest to be recounted. One or more recount vote review panels shall be established, consistent with O.C.G.A. § 21-2-483(g), to manually review the overvoted ballots. The recount vote review panel shall determine by majority vote the elector's intent, as described in O.C.G.A. § 21-2-438(c), a duplicate ballot shall be created consistent with the elector's intent for the contest to be recounted, labeled "RECOUNT DUPLICATE", and used in the recount. The original overvoted ballot shall be retained.

(h). All ballots that required a duplicate ballot to be created in the original primary or election, as allowed by law, shall be reviewed by a recount vote review panel to determine that the votes marked in the contest to be recounted on the duplicated ballot are consistent with the elector's intent on the original ballot, as described in O.C.G.A. § 21-2-438(c). If a majority of the recount vote review panel determine that the duplicated ballot is not consistent with the elector's intent on the original ballot, a new true duplicate ballot shall be created consistent with the elector's intent for the contest to be recounted, labeled "RECOUNT DUPLICATE", and used in the recount. The original overvoted ballot and initial duplicated ballot shall be retained.

(i). If it appears that a ballot is so torn, bent, or otherwise defective that it cannot be processed by the ballot scanner, the recount vote review panel shall prepare a duplicate ballot for the contest to be recounted. All duplicate ballots created during the recount shall be clearly labeled by the word "RECOUNT DUPLICATE". The defective ballot shall be retained.

(j). After all of the valid ballots to be included in the recount have been tabulated, the superintendent shall cause a printout to be made of the results and shall compare the results to the results previously obtained. If upon completing the recount, it shall appear that the original vote count for the recounted contest was incorrect, such returns and all papers being prepared by the superintendent shall be corrected accordingly.

(2)     Recount by Manual Hand Count

(a)     A recount shall be conducted by manual hand count only:
    1.  as provided under Rule 183-1-15-.03(1)(c); or

    2.  pursuant to a court order.

(b) Votes shall be counted by one or more recount teams consisting of at least three persons each. The superintendent shall select the persons for each recount team.

(c) In a recount of a partisan election, the recount team shall be composed of the election superintendent or designee thereof and one person selected by the election superintendent from a list provided by the county executive committee of each political party and body having candidates whose names appear on the ballot for such election, provided that, if there is no organized county executive committee for a political party or body, the person shall be selected from a list provided by the state executive committee of the political party or body.  If, after the superintendent provides reasonable notice and a deadline to the executive committee, a county executive committee or state executive committee does not provide a sufficient number of names or does not timely delivery the list of names, the superintendent shall be permitted to select the persons to serve on the recount team on behalf of the political party or body as needed.

(d) In a recount of a nonpartisan election, the recount team shall be composed of the election superintendent or designee thereof and two electors of the county, in the case of a county election, or the municipality, in the case of a municipal election, selected from a list provided by the chief judge of the superior court of the county in which the election is held or, in the case of a municipality which is located in more than one county, of the county in which the city hall of the municipality is located. If, after the superintendent provides reasonable notice and a deadline to the chief judge, the chief judge fails to designate a sufficient number of persons for the recount or does not timely delivery the list of names, the superintendent shall be permitted to select the persons to serve on the recount team as needed.

(e) Ballots shall be manually counted by hand in batches of no more than 30 to ensure that the number of ballots recounted matches the number originally counted.

(f) The recount teams shall determine the elector's intended vote on each ballot, by majority vote, in accordance with Rule 183-1-15-.02. In the event of a tie vote by a review team, the vote of the election superintendent or designee thereof shall control.

(g) Recount teams shall compare the number of votes, overvotes, and undervotes to the number of ballots in the batch. If the numbers do not match, the batch shall be counted again.

(h) After all of the valid ballots to be included in the recount have been counted, the superintendent shall compare the results of the recount to the results previously obtained. If upon completing the recount, it shall appear that the original vote count for the recounted contest was incorrect, such returns and all papers being prepared by the superintendent shall be corrected accordingly.

Authority: O.C.G.A. §§ 21-2-31, 21-2-495