IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## COALITION PLAINTIFFS' NOTICE OF FILING SUPPLEMENTAL EVIDENCE IN SUPPORT OF PENDING MOTION FOR PRELIMINARY INJUNCTION

The Coalition Plaintiffs[1] respectfully submit this Notice of Filing, which is submitted in support of the pending Coalition Plaintiffs' Motions for Preliminary Injunction [Doc. 640].

Attached are the following declarations containing new and relevant information bearing on the ballot secrecy violations that are occurring and threatened due to the ongoing and planned use of the Dominion Voting System to conduct voting in Georgia's March 24, 2020, Presidential Preference Primary Election and various county special elections:

---

[1] The "Coalition Plaintiffs" are Plaintiffs Coalition for Good Governance ("Coalition"), Laura Digges, William Digges III, Megan Missett, and Ricardo Davis.

- Exhibit A: Declaration of Shea Roberts.  Ms. Roberts proffers testimony that, as an early in-person voter in Fulton County, she observed that the BMD system in her polling place was insecure and did not permit secrecy in voting.  Ms. Roberts describes the harms she will suffer from these deficiencies both as a voter and as a candidate for Georgia State House District 52.

- Exhibit B: Declaration of Elizbeth Throop. Ms. Throop proffers testimony that she observed the transfer of electronic data on a repeatedly used usb device between internet-connected computers and the new Dominion server in Lee County. Ms. Throop further reports the lack of secret ballots provided on hundreds of BMD touchscreens she has observed during five months of Georgia's BMD elections.

- Exhibit C: Declaration of Marilyn Marks. Ms. Marks proffers testimony that she observed numerous BMD equipped polling places since November 2019 and that she has seen only three that provided secrecy in voting. Ms. Marks describes the data transmission security issues she observed in Lee County and Sumter County and the start up problems that electronic pollbooks continue to experience.

- Exhibit D: Declaration of Jorge Granados.  Mr. Granados proffers testimony that, as an early in-person voter in Gwinnett County, along with his brother, he observed that the BMD system in his polling place did not afford privacy during voting.  Mr. Granados describes the harms he suffered from the lack of secrecy and his concerns, as a candidate for Georgia State House District 99, about the negative effects that the lack of a secret ballot will have on turnout among his supporters.

- Exhibit E: Declaration of Deborah Gaventa Brown.  Ms. Brown proffers testimony that, when she voted early in person on a Dominion BMD in DeKalb County, the oversized touchscreens and polling place layout deprived her of the ability to cast a secret ballot.

- Exhibit F: Declaration of Aileen Nakamura.  Ms. Nakamura proffers testimony that, as an early in-person voter in Fulton County, she

observed the inability of polling place setup to mitigate the BMD system's failure to preserve secrecy in voting.

- Exhibit G: Declaration of Lucia Gambino.  Ms. Gambino proffers testimony that, as an early in-person voter in Fulton County, she could easily how other BMD voters were voting on the large touchscreens. Ms. Gambino describes the harms she suffered from the lack of secrecy and the adverse effect that secrecy violations will have on other students like herself.

- Exhibit H: Declaration of S. Kathryn Grant.  Ms. Grant proffers testimony that, as an early in-person voter in Lowndes County, she encountered a loss of privacy and intimidation while voting on BMDs in her polling place. She described the inadequacies of machine layout and blue panel screens to prevent the loss of privacy.

- Exhibit I: Declaration of Paschal McKibben.  Mr. McKibben proffers testimony that, as an early in-person voter in Stephens County, he observed that electronic pollbooks were not functioning properly and that he could easily see how other voters were voting from the large touchscreens.  He describes his inability to verify his votes encrypted by the QR code on his BMD printout and that he was never urged to verify his votes on the printout.

- Exhibit J: Supplemental Declaration of Rhonda J. Martin.  Ms. Martin proffers testimony that, as an early in-person voter in Fulton County, she observed that electronic pollbooks were not functioning properly at check-in and that voters could see how other voters were voting on the BMD touchscreens.

- Exhibit K: Declaration of Joseph Wagner.  Mr. Wagner proffers testimony that, as an early in-person voter in Fulton County, he observed that the touchscreens of other voters were plainly visible from the check-in line and that blue dividers between machines did not shield the screens.

- Exhibit L: Declaration of Kirk A. Lyman Barner.  Mr. Lyman Barner proffers testimony that, as an early in-person voter in Sumter County, he observed that the display of the single ADA-compliant BMD machine in his polling place could easily be seen.

- Exhibit M: Declaration of Priscilla Smith. Ms. Smith proffers testimony showing that, as an early in-person voter in Cobb County, she observed that the polling place setup permitted voters and pollworkers without effort to see how any voter was voting. Ms. Smith describes the harms she suffered from the lack of secrecy and her concerns, as a candidate for Georgia State House District 34, that her supporters might be intimidated by seeing that their votes are not secret.

- Exhibit N: Declaration of Kyle Rinaudo. Mr. Rinaudo proffers testimony showing that, as an early in-person voter in Cobb County, he observed that the polling place setup would have easily permitted others in the polling place to see how he was voting.  Mr. Rinaudo describes his concern that the lack of secrecy will affect how people vote.

- Exhibit O: Declaration of Caroline Holko. Ms. Holko proffers testimony that as an in-person early voter in Cobb County, she observed that the polling place set up permitted voters to see how others were vote. Ms. Holko describes her concern as a candidate for Georgia House District 46, that voters may be unable to vote their conscience without secret ballot protections.

Respectfully submitted this 11th day of March, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown

EXHIBIT

A

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, et al. )<br><br>Plaintiffs, )<br><br>vs. )<br><br>BRAD RAFFENSPEGER, et al. )<br><br>Defendants. ) | **CIVIL ACTION FILE NO.:**<br>**1:17-cv-2989-AT** |

## DECLARATION OF SHEA ROBERTS

**SHEA ROBERTS** declares, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. My name is Shea Roberts.

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. I am a candidate for Representative of Georgia State House District 52

4. My address is 510 Park Gate Ct, Atlanta, Georgia 30342.  I am a registered voter in Fulton County, and vote in most elections for which I am eligible.

5. I am an attorney with the firm of Giacoma Roberts & Daughdrill, LLC.

6. My experience voting on March 9, 2020 and my experience with Fulton County-sponsored voting system demonstrations recently has caused me

grave concern about the lack of ballot secrecy in the use of the touchscreens for voting.

7. Having read the Georgia case Cox v. Williams, 216 Ga. 535 (1961), I am concerned that there is a substantial risk that the results of Georgia's BMD elections could be declared "null and void." My Presidential Primary vote would then be voided, and elections in 2020 where I am a candidate could be subject to the same devastating result.

8. On March 9, 2020 I voted at the Chastain Park Gymnasium location of Fulton County Elections in the early voting process.

9. There were approximately 6 touchscreen voting stations (BMDs), all in a line, immediately next to each other. I happened to be the only voter in the room at the time, but should anyone have been at the BMD on either side of me, I could have easily seen their touchscreens even with the 3-sided blue panels, since the panels provided very little ballot privacy at all.

10. The machines were faced away from the room and there were no poll workers or watchers behind the voters. Therefore, they could not see my screen, but they also couldn't see if anyone tampered with the BMDs or printers. No one paid any attention the entire time I was at the machines and I took my time and observed them not observing me. Had I wanted to

tamper with the touchscreen or printer electronics I feel confident that I could have done so in an undetected manner from behind the blue panels.

11. I have attached a drawing I made of the polling place as Exhibit A.

12. As a candidate for State House, I am very concerned that voters and constituents will be intimidated to vote because of the lack of ballot secrecy. My community has become tightly competitive as it relates to political party, but it's difficult for some people to vote their conscience if their bosses, family members, friends and neighbors or poll watchers from political parties are watching how they vote.

13. Lastly, I am extremely concerned about the lack of supervision and visibility of the machines when I was voting. There is no part of the BMD or printer visible to the poll workers, so tampering from behind the blue panels would have been very simple.

Executed on this date, March 10, 2020.

_____

Shea Roberts

Exhibit A
Roberts Declaration
Sketch of Chastain Park Gym polling place



EXHIBIT

B

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, et al. ) | |
| Plaintiffs, ) | **CIVIL ACTION FILE NO.:** |
| vs. ) | **1:17-cv-2989-AT** |
| BRAD RAFFENSPERGER, et al. ) | |
| Defendants. ) | |

## DECLARATION OF ELIZABETH THROOP

**Elizabeth Throop** declares, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. My name is Elizabeth Throop.

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. I am a registered voter in DeKalb County.

4. As an appointed poll watcher for a political party, I observed various aspects of the March 3, 2020 Senate District 13 runoff election. One of the locations I visited was the Lee County Board of Elections for the Election Night tabulation at approximately 7:30 pm.

5.  In the tabulation room, Supervisor Veronica Johnson sat at the Election Night Reporting (ENR) workstation and a young man with a Dominion (DV) name badge sat at the Dominion Election Management System (EMS) computer. I observed two poll workers bring in results from their respective polling places. In each case, Ms. Johnson removed a precinct scanner memory card from a zippered pouch and gave it to the DV rep. He would insert the card into a peripheral memory card reader, then use his computer interface to transfer files from the card reader to the EMS server.

6.  He would then insert a thumb drive into the EMS's USB port and transfer files either from the memory card or the hard drive – I couldn't tell which, although it was most likely a transfer from the updated EMS server.

7.  He then printed out an Election Summary Report from an HP printer. Afterward, he would give the precinct scanner memory card back to Ms. Johnson, who would return it into its pouch and store it. He then removed the thumb drive from the EMS and gave it to Ms. Johnson, who inserted it into the USB port of a laptop computer. That laptop computer was explained to be a utility elections office computer and the Election Night Reporting (ENR) web-enabled server.

8.  Johnson uploaded files from the thumb drive to the state's Clarity Election Night Reporting interface to share over the internet. When she finished, she

handed the thumb drive back to the DV rep to re-insert it into the (supposedly air-gapped) EMS server. That sequence of events may have varied a bit, but I definitely saw Ms. Johnson and the DV representative pass the thumb drive back and forth two times from an internet-connected workstation to the EMS and back again while iterations of the election results were uploaded as the precinct tallies came in.

9.  Ms. Johnson told our watcher group that the ENR web-enabled server had been used for that function for some time, meaning that it also interfaced via usb drive with the GEMS server until the Senate District 13 special election where the Dominion system was initially used. Therefore, it stands to reason that malware in the old GEMS system could have been transferred to the ENR web-enabled computer.

10. Now that the new Dominion server is indirectly connected to the ENR computer that was previously used with the GEMS system, it raises questions of whether the Dominion server has been contaminated by either old GEMS server malware or internet malware that could have been transmitted on the ENR server connections.

11. Ms. Johnson told me that the thumb drive was not a regular thumb drive. She showed me it could be locked and unlocked. She said the data on it was encrypted and assured me the procedure was secure. However, I am

concerned that sophisticated malware could circumvent this protection. Even if the usb is protected from malware, the protection seems to rely on her remembering to lock the device every single time when uploading data. That protection (if effective at all) seems very fragile.

12. On my trip to the March 3, 2020 Senate District 13 election counties, I visited early voting locations along the way. I visited early voting centers in Clayton County, Lamar County, Monroe County, Peach County, Taylor County, and Dooley County. In every location I visited, poll officials had failed to arrange the machines in a method that provided privacy for the voters. The touchscreen ballot contents could be seen by other voters and poll officers to varying degrees. In general, the rooms for voting are simply not large enough to provide enough space to orient each machine in a way that creates privacy for the voter.

13. This failure to achieve ballot secrecy is a problem whether or not the counties were attempting to comply with the Secretary of State's proposed plan for turning machines away from the center of the room.

14. As an authorized Fulton County poll watcher for a political party, on Monday March 9, 2020 I observed voting at SE Atlanta Branch Library, 1463 Pryor Rd., SW Atlanta 30315, Fulton County and East Point Library, 2757 Main St., Atlanta 30344, Fulton County.

15. At the Southeast Atlanta Library, six BMD voting units faced the walls, surrounded by blue plastic privacy screens. The poll workers could see the screens if they walked behind the tables to check on the machines or help a voter. Voters had to walk behind one another to use four of the BMDs permitting them to see how others were voting.

16. The dimensions of the room are approximately 15' x18'. Based on the required ratio of 1 voting station for every 250 registered voters and the November 2018 voter registration data, it is my understanding that at least 19 BMD voting stations would be required on Election Day if BMDs are used. It is impossible to fit 19 BMD units into the room in a workable way, and certainly out of the question when ballot secrecy requirements are considered. The only feasible way to meet the minimum required number of voting stations and to offer privacy would be to use hand marked paper ballot stations which take up significantly less space.

17. At East Point Library, the facility had 6 BMDs, 2 Poll Pads, and 2 Scanners. The room is about 24' x 24' with all BMD voting units with the touchscreens facing the center of the room. Any person walking through the room can see the face of the touchscreens and the voter choices. There are three BMDs along the South wall and three along the East wall.

18. When I approached the machines to check the public counter, the angle of the blue panel to my left allowed me to see 100% of the neighboring touchscreen. The fact that each bank of 3 is perpendicular to the other also allows views by voters turning to come or go. The four poll workers at the check-in area were seated about 15 feet from the BMDs on the East wall. They had an easy view of those touchscreens and of the touchscreens to their right on the South wall. When I sat at the North wall, next to the scanners, I could see touchscreens, though often my views were blocked by the voters' bodies most times.

19. During the first hour I was there, poll workers did not tell voters to check their printouts. During the second hour, a poll worker took over at the scanner and told voters to check their printouts.

20. The entire time I was there, voters were told to insert their printouts into scanners face up. Poll workers are standing directly next to scanners could clearly see the printouts with voters' votes as they are fed in.

21. In summary, I have observed hundreds of BMD touchscreens in service in several counties since October 2019 during early voting for the pilot elections until March 8, 2020. The vast majority of polling places I have visited have been unable to provide ballot secrecy because of the size and design of the touchscreen machines.

Executed on this date, March 10, 2020

Elizabeth Throop

EXHIBIT

C

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, et al.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE** |
| **vs.** ) | **NO.: 1:17-cv-2989-AT** |
| ) | |
| **BRAD RAFFENSPERGER, et al.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## <u>SUPPLEMENTAL DECLARATION OF MARILYN MARKS</u>

**I, MARILYN MARKS,** hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I have personal knowledge of all facts stated in this declaration and, if called to testify, I could and would testify competently thereto.

2. Since November 2019 during the pilot elections, I have observed the operation and layouts of several hundred BMD units in over 20 polling places in approximately 6 counties in six elections.  I have observed the positioning of BMDs before and after the Secretary of State's February recommendation to counties to turn the touchscreen faces to the perimeter walls of the voting room. I have seen only three polling place locations where the number of voting stations required was deployed to provide ballot secrecy.

1

3. In the vast majority of operating polling places I observed, there was not a feasible method to deploy BMDs to meet the statutory minimum number of voting stations and to also provide for secret ballots on the touchscreen. In some limited cases where the polling place room was large (such as a gymnasium or cafeteria) and the number of registered voters was small, it was possible to provide both the minimum voting stations and privacy using BMD touchscreens.

4. For example, on March 7, 2020 I was an authorized poll watcher in Fulton County and made two brief visits to early voting locations. I first visited Chastain Park Recreation Center, and later visited the Fulton County North Annex Service Center. Both failed to provide secret ballots for touchscreen voters, but must provide far more voting stations on Election Day March 24, 2020.

5. The Chastain Park location setup was accurately described in the Declaration of Shea Roberts. Her sketch on her Declaration's Exhibit A reflects the polling place as I observed it on March 7, although there was a second scanner in the room during my visit.

6. I stood beside the main doorway where the public enters to watch the voting operation initially.  The first voter I saw voted at the machine at the end of the row of touchscreens. The touchscreen faced the door. I

could see from a distance of approximately 15 feet which candidate the voter chose.

7. When there were no voters in the polling place, I went to each touchscreen to check the public counter (number of ballots printed) on each machine. Standing at each machine in the same position a vote would, I could see two to three touchscreen faces clearly, depending on where I stood and which direction I glanced. This is the same view that a voter would have when voting beside other voters, destroying the secrecy of the ballot.

8. There were six BMDs in the Chastain Park polling place, and privacy was not available. This polling location is to be used again on March 24, 2020 as the precinct polling place. Based on November 2018 reported registration statistics, 19 voting stations are required to be deployed to meet the current statutory minimum of one station for every 250 registered voters. If the same polling place room and BMDs are used, 19 BMD machines will not feasibly fit in the room.

9. I found a similar situation at the North Fulton Annex polling location. There were 12 BMD voting stations, arranged in a row of 8 and a row of 4. Voters walking behind the machines to reach their machine would walk past very visible screens of other voters while they were voting.

10. I stood at various stations while checking the public counters and could see two to three screens neighboring the one where I was standing. I avoided doing this while anyone was voting, but it was clear that I could have read the ballot content if someone had been voting on these touchscreens.

11. While the North Annex room is large, it is clearly inadequate to house the 55 voting stations that will be required on March 24 Election Day in that location if BMDs are used and ballot secrecy is provided. The only feasible way to deploy 55 voting stations is to provide hand marked paper ballot voting stations.

12. On March 3, 2020 I visited the early voting location in Lee County while observing the tabulation of the Senate District 13 Runoff Election. Ms. Veronica Jones, the Election Supervisor of Lee County, explained the thorough efforts she and her staff had diligently made to try to provide privacy for the BMD units, including the additional equipment purchased to attempt to enhance privacy.

13. Lee County has acquired plastic hoods for the BMD screens and separate carts for each BMD as shown in Exhibit A, attempting to create space and shielding of screens between BMD units. But as can be seen in Exhibit A, the staff at the desk can see some voters' screens. Voters

4

walking to screens down the row will pass voters and be able to see others' screens as they walk to their voting station. Ms. Jones went so far as to put an opaque banner over the large window that separates the waiting area from the voting room to try to reduce the number of screen that can be seen by waiting voters.

14. Until some redesign of the touchscreen or auxiliary touchscreen accessories can be created and deployed, it is my experience that only a small percentage of polling places can meet the competing requirements of providing a secret ballot and the minimum number of voting stations if BMDs are used as the voting method.

15. When I visited the Lee County tabulation center on March 3 Election Night, I observed the results upload process and the data exchanges between the internet connected computer and the Dominion server using a single (purportedly "lockable") usb stick. Ms. Throop described this accurately based on my observations in her declaration in paragraphs 5 through 11. Like Ms. Troop, I am skeptical of the security of the "lockable" usb, particularly when any security it has relies on 100% perfect execution by the operator with no failures to remember to lock.

16. The exchange of data between the (purportedly "air gapped") Dominion server and the internet-connected elections department server on a single

usb stick also appeared to occur in Sumter County on February 4, during the special Senate District 13 election. I was a poll watcher in the tabulation room on election night.

17. It is my understanding that the Secretary of State has not issued instructions barring transmission of data on a rewritable memory devices between the counties' Dominion server and internet connected computers, including computers formerly interfacing with the GEMS system.

18. During my observations of early voting polling places, I observed that that electronic pollbook Poll Pad app is not yet operational for voter check-in. Therefore, voter access card encoding must be done manually, resulting in higher risk of ballot issuance error and bottlenecks creating long lines.

19. The March 24, 2020 elections must overcome PollPad start-up problems that occurred in  the small elections to date that I have observed, the observed PollPad wifi connectivity problems and associated risk, the delayed deployment of the PollPad application, the lack of updated paper pollbook backups (certified electors list) in the polling place on Election Day that I observed, and the equipment limitations that create non-secret

ballot conditions, in order to avoid long lines and voting delays that discourage voters.

Executed on this date, March 10, 2020.

_____

Marilyn Marks

EXHIBIT

D

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, et al.

Plaintiffs,

vs.

BRAD RAFFENSPEGER, et al.

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION FILE NO.:
1:17-cv-2989-AT

## SUPPLEMENTAL DECLARATION OF JORGE GRANADOS

**JORGE GRANADOS** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is Jorge Granados.

2. I am over the age of 18 and competent to testify if called on to do so. This

   affidavit is based on my personal knowledge.

3. I am a registered voter in Gwinnett County and a candidate for Georgia

   State House District 99. My name will appear on the primary ballot in May

   2020.

4. I voted in the Presidential Preference Primary on March 4th at the Gwinnett

   County Voter Registration and Elections Office in Lawrenceville, GA. My

   brother Luis Granados and I went together to vote. When we went in, we

were greeted and handed a form to fill out to vote. We both went to the station where the volunteers checked our IDs. They handed us green cards to access the voting machines in another room.

5.  When I approached the room, I saw the touchscreen voting machines. I could see the face of the touchscreens very clearly from a distance. There was nothing shielding the screen from public view. I went up to one of the machines and started to make my selection.

6.  I did not feel comfortable as the touchscreen machines were right next to each other and people could see my screen when I was voting. My concern was that someone might be looking over my shoulder and see who I was trying to vote for. We did not have any privacy while voting. From across the room, the screen contents can be seen very clearly.

7.  All the machines were right next to each other, so anyone nearby can look at a voters' votes on the touchscreen. The blue privacy panels around the machine are ineffective in providing adequate privacy for the vote.

8.  Once I had completed voting, I moved to side while my brother, Luis, went to vote. When he finished voting, he turned around and was startled. There was someone behind him watching while he was voting. I do not if that person was a voter or a poll worker/volunteer. We weren't sure what that person was doing watching behind Luis while he voted.

9. This experience was upsetting to me, and Luis told me that he was also disturbed by having someone standing behind him watching his voting choices.

10. Anyone can look over your shoulder, look over the dividers, or look from across the room and see your chosen candidates.

11. After voting on the new machines, as a candidate for the Georgia House of Representatives for District 99, this is very concerning to me. I fear that this public voting will be intimidating to voters. It is intimidating that once someone sees a voter's selection, the voter might be criticized and if word gets out, and voters could even fear losing their jobs if they don't vote how their employers want them to vote.

12. I fear that this lack of a secure ballot will depress voter turnout in future elections when voters learn that they have no privacy in voting. I believe that voters who do not have employment or financial flexibility will be most negatively impacted by the concern that their votes are available for all to know.

Executed on this date, March 8, 2020.

Jorge Granados

E
X
H
I
B
I
T

E

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, et al.** ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION FILE NO.:** |
| **BRAD RAFFENSPEGER, et al.** ) | **1:17-cv-2989-AT** |
| **Defendants.** ) | |

**DECLARATION OF DEBORAH GAVENTA BROWN**

**DEBORAH GAVENTA BROWN** declares, under penalty of perjury, pursuant to

28 U.S.C. §1746, that the following is true and correct:

1. My name is Deborah Gaventa Brown.

2. I have personal knowledge of all facts stated in this declaration, and if

   called to testify, I could and would testify competently thereto.

3. I am a registered voter in DeKalb County, and vote in most elections for

   which I am eligible.

4. On March 6, 2020 I voted at the Memorial Ave. office of the DeKalb

   Elections Department in the early voting process.

5. There were approximately 25 to 30 touchscreen voting stations in the early

   voting room, with only a few inches between the side by side stations.

6. I could see the votes on the neighboring machine to my right, and the voter there could see my touchscreen ballot.

7. Also, people in the polling place walking behind me could see my ballot and other voters' ballots in the area. There were numerous voters and poll workers circulating in the voting area making everyone's ballots vulnerable to prying eyes.

8. I felt uncomfortable that my fellow voters could look over and easily see my ballot. In Dekalb we are voting for the sheriff, and it is a delicate, sensitive situation. There are numerous candidates running for this powerful local office.

9. When I voted on the touchscreen, not only could I easily see my neighbors' voting screen on both my left and right, anyone walking behind me, because of width of aisle was 3 ft away from my voting touchscreen, could easily see my voting choices choice.

10. I was also uncomfortable that when I scanned my ballot it was reviewed by the poll workers on my left and right side. So I know they could see who I voted for. There was no privacy nor secrecy in either case, actual voting and scanning.

11. I am concerned that when the lack of voter privacy is widely known, voters will stay away from their neighborhood precincts and fail to vote on

Election Day. Voting in a home neighborhood precinct has a higher chance

of having to vote in front of family, friends and neighbors who may have

reason to disapprove or retaliate.


Executed on this date, March 10, 2020.

Deborah Gaventa Brown

EXHIBIT

F

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD RAFFENSPEGER, et al.<br><br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    **CIVIL ACTION FILE NO.:**<br>   **1:17-cv-2989-AT** |

## DECLARATION OF AILEEN NAKAMURA

**AILEEN NAKAMURA** declares, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. My name is Aileen Nakamura.

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. I am a registered voter in Fulton County, and vote in most elections for which I am eligible. I reside at 610 River Valley Rd, Sandy Springs, GA, 30328.

4. On March 9, 2020 I voted at the Sandy Springs Library location of Fulton County Elections in the advanced voting process. This library is very close

to my house and my family and I frequent it and know staff and other frequent visitors.

5. There were approximately 12 touchscreen voting stations in the early voting room, 6 each along both sides of the wall as you walked in, paired in twos (two touchscreen voting stations per table). There was no space between each pair of stations, and only a few inches between two of the tables on each side (not an aisle.)  One table (two touchscreens) was set further away from the other two tables on each side. (See photos attached in Exhibit A.)

6. I could see the screen on the neighboring machine to my left, and had there been a voter to my right, they could have seen the way I voted easily as well.

7. For the four touchscreens that were close together along either wall, any voter trying to get to a machine in the middle of the row would have to walk past other touchscreens, allowing them to see how others were voting. And any poll worker trying to help a voter or standing by a voter would be able to see how the voter was voting.

8. Two things about the BMD setup worries me greatly. First, even though the screens were facing the wall, any voter, poll worker or poll watcher walking behind or standing on my right could see how I voted.

9. Second, the blue panels around the touchscreens have little positive privacy effect in my observation, but also have the negative impact of preventing monitoring of the vulernable electronics.  Because of my degree in computer science, work history in the computer industry, and research into the Dominion voting system, I know how easy it is for a bad actor to tamper with the equipment (BMDs or printers,) especially when the poll workers are not able to watch the equipment and voters' hands at all times because of the blue panels surrounding the equipment. Since the only poll workers who were watching the voters were doing so from the center of the room, it is a huge concern to me that someone with bad intentions could easily tamper with the machines with this set-up undetected because the blue panels would conceal their activities. The same is true for simple voter error where accidental misuse damages the machine or electronic records without detection because of the lack of visibility.

10. Photos I took of the Sandy Springs Library polling place right after I voted (with the permission of the poll manager) are attached as Exhibit A.

11. When I took my paper printout to be scanned, I felt very uncomfortable that the poll worker seemed to be looking at how I voted as the paper was scanned. I do not know for certain that she was looking at my choice of

candidate, but I was glad that she was a stranger and not one of my neighbors, since I live in a very polarized area.

12. In addition, I am very concerned about the QR code that is scanned, since I cannot read QR, and I have no way of knowing what it represents. At no time did a poll worker instruct or remind me to review my selection on the paper printout. As I waited to take an authorized photo of the polling place, about 15 other voters went in and voted, but none of them were told to review their printouts prior to scanning either.

13. I am very concerned about the lack of ballot secrecy, both at the touchscreen and at the scanner. I live in a very divided neighborhood – when I put out a candidate's sign in 2008, my mailbox was bashed in during the night. Knowing that a person standing next to me, **who can see my vote**, could be the person who damaged my property or could be someone who could do worse damage to me or my family, makes me extremely nervous and unlikely to vote in this scenario in the future.

Executed on this date, March 9, 2020.

Aileen Nakamura

Exhibit A

Nakamura Declaration
Photos from Sandy Springs Library polling place





Exhibit A
Nakamura Declaration
Photos from Sandy Springs Library polling place



EXHIBIT

G

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, et al.** ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION FILE NO.:** |
| ) | **1:17-cv-2989-AT** |
| **BRAD RAFFENSPEGER, et al.** ) | |
| **Defendants.** ) | |

## <u>DECLARATION OF LUCIA GAMBINO</u>

**LUCIA GAMBINO** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is Lucia Gambino.

2. I am over the age of 18.

3. I have personal knowledge of all facts stated in this declaration, and if

    called to testify, I could and would testify competently thereto.

4.  I am a registered voter in Fulton County.

5. I voted on March 9, 2020 in early voting for the March 24, 2020 election at

    the  Georgia State University's Early Voting location at Student Center East

    Ballroom.

6.  When I walked toward the voting station with the touchscreen to start voting I could see other voters' touchscreen ballot displays. I didn't have to stare or really focus. At a glance I saw how they were voting. Accidentally seeing how others were voting made me uncomfortable.

7.  Other voters walking towards their machines could also see what was displayed on my touchscreen ballot. A poll worker standing far away behind me with could also easily read my screen, assuming they had normal eyesight. The fact that others could see how I was voting made me uncomfortable and feel that my privacy is being violated.

8.  Political emotions are running high right now on my college campus and some students I know who keep their opinions quiet will hesitate to vote in this election if they have to declare their choices on big screens in front of other students.

9.  When I printed out my ballot I walked over to scan and cast it, and the pollworker forcefully took it away from me, looked at my vote and then

cast my ballot for me. I feel that my privacy was violated not only at the touchscreen but when I tried to cast my ballot as well.

10. Students I associate with are talking about the lack of privacy and the prying eyes in the polling operation set up at our school. I believe that as some students find out about this privacy violating voting method, it will discourage some student voters from voting.

Executed on this date, March 10, 2020.

Lucia Gambino

EXHIBIT

H

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, et al.** ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION FILE NO.:** |
| ) | **1:17-cv-2989-AT** |
| **BRAD RAFFENSPEGER, et al.** ) | |
| **Defendants.** ) | |

**DECLARATION OF S. KATHRYN GRANT**

**S. KATHRYN GRANT** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is S. Kathryn Grant.

2. I have personal knowledge of all facts stated in this declaration, and if

    called to testify, I could and would testify competently thereto.

3. I am a registered in voter in Lowndes County, Georgia.

4. On March 8, 2020, I went to vote at the Lowndes County Board of

    Elections office, 2808 N. Oak Street, Valdosta, Georgia, 31602. I

    completed the Application For In Person Absentee Ballot form (early

    voting) and was asked for my photo ID. I submitted my Georgia Drivers

    License. My drivers license number was recorded on my application. I was

then asked to take a seat in a section of the large public room/reception area and told I would be called to vote.

5. About 5 minutes later, my application was brought back to me to designate a political party. I marked the application, the poll worker read it, thanked me by name, and returned it to the walled off area behind the seating section where poll workers were looking up applicant information on computer terminals. My name was then called by a poll worker from the doorway of the voting area, in to the large common area where I was seated, and where other voters, staff, or anyone could hear it. As I was being escorted in to the voting area, the poll worker noted my birth year on my ballot application as being the same as her own. I was uncomfortable with poll workers appearing to take an interest in personal information listed on the ballot application, ie political party affiliation, my year of birth, and my name called out in a large public room.

6. I work as the director of state affairs for a non-partisan, non-profit gun violence prevention organization. My personal safety and security is a concern as I have been the subject of harrasement that has included threats of physical violence against me.

7. When I entered the voting area, some ballot marking device touchscreens (approximately six to eight) were against the wall with the screens facing the largest section of voting machines in the center of the room.

8. I chose to use a voting machine in the row on the far side of the voting room that I believed would ensure the most privacy, thus avoiding the row where voters were ushered in and where my vote may be seen by voters walking behind me as I cast my ballot. Voters voting on those machines have their votes exposed to others in the polling place.

9. However, approximately six feet behind the row of machines I chose were uncovered windows that faced a lawned area that may allow someone from the outside of building to see in to the voting room, and potentially view voters' ballot.

10. The blue panel screens surrounding the voting machines do not ensure adequate privacy. Voters and poll workers entering the voting room, and walking behind voters as they cast their ballot, can observe how voters cast their ballot.

11. I believe that the loss of privacy may contribute to a sense of mistrust and unease during the voting process, as was my experience. The announcement of voters' names in addition to the touchscreen displaying voters' votes in a

public way combine to make the loss of voting privacy even more intimidating.

12. I fear that when many Lowndes County voters learn that their votes for local offices will be made public in upcoming elections, that many people will be discouraged from voting.

Executed on this date, March 8, 2020.

S. Kathryn Grant

EXHIBIT

I

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, et al.**

**Plaintiffs,**

**vs.**

**BRAD RAFFENSPEGER, et al.**

**Defendants.**

)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION FILE NO.:
1:17-cv-2989-AT**

## DECLARATION OF PASCHAL McKIBBEN

**PASCHAL McKIBBEN** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is Paschal H. McKibben, Jr.

2. I am over the age of 18 and competent to testify if called on to do so.  This

   affidavit is based on my personal knowledge.

3. I am and registered voter in Stephens County, Georgia

4. On March 2, 2020 I went to my polling place located in the Stephens

   County Courthouse. As I entered the room I could see all the touchscreen

   ballot marking devices in a row at the front of the courtroom facing in a

   direction where anyone could see their screens with large fonts, readable

   from a distance.

5.  I took the picture attached as Exhibit A outside the polling place showing that the touchscreen faces are visible to the public and poll officers in the room.

6.  I proceeded to the check in table and waited a few minutes while two other voters checked in. When it was my time to check in I stepped forward and was asked for my ID. I gave my ID to the poll worker.  She took my ID and held it while she started looking at a laptop computer. Because I'm well versed in the new Georgia voting system, I asked her why she wasn't using the Poll-Pad tablet for check in. She informed me that they weren't working properly and they were using their backup plan, which was to check people in as they've always done in the past, from their laptop computer.

7.  Another poll worker handed me a form for me to fill out. It was a form I'd seen in the past that asked for basic information so the poll worker could give me the proper voter access card. After looking at my information she handed me the access card that is used for voting. She told me I could go vote. I walked to the front of the courtroom and along the line of computers. There was a voter at one of the touchscreens. As I passed I could easily see the screen and who he was voting for. It just so happened that I was walking past as he was touching the box on the screen.

8.  I did not happen to know this voter whose marked ballot I observed, but Stephens County is a small county where many voters know each other, making it more uncomfortable to be required to select candidates in public. But even without knowing this voter, it made me uncomfortable to see his choice, and to know that people entering the voting room would be able to see my choice.

9.  I proceeded to voting station number 9, inserted the memory card, touched 'start', looked for my candidate on the list. I looked around to see if there were any voters nearby, then I touched the box to create an X, and then, after review, touched the print ballot button on the screen. The paper "ballot" printed out. It had a big QR code at the top and some small print underneath. I had to use my glasses to be able to read the name printed below the QR code. I verified the name on the paper was the same as I had touched on the computer screen. I was not able to read or verify if my candidates name was in the QR code. This fact alone is disturbing to me.

10. I took the paper ballot to the scanner and fed it into the scanner face down. A poll worker thanked me for voting.  At no time did any poll worker inform me that I should be sure and review the information printed on the paper ballot.

11. I believe that as more voters have the experience that I did of having to vote on a publicly displayed screen, it will discourage some voters in Stephens County from voting in future elections where we will be making sensitive choices among local candidates.


Executed on this date, March 8, 2020.

Paschal McKibben

Exhibit A

McKibben Declaration

Stephens County Courthouse voting room



E

X

H

I

B

I

T


J

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, et al. )<br><br>Plaintiff, )<br><br>vs. )<br><br>BRAD RAFFENSPERGER, et al. )<br><br>Defendant. ) | CIVIL ACTION FILE NO.: 1:17-cv-2989-AT |

## SUPPLEMENTAL DECLARATION OF RHONDA J. MARTIN

**RHONDA J. MARTIN** declares, under penalty of perjury, pursuant to

28 U.S.C. § 1746, that the following is true and correct:

1. I have personal knowledge of all facts stated in this declaration and, if
   called to testify, I could and would testify competently thereto.

2. Since my supplemental declaration of March 04, 2020, I have observed
   the use of the Dominion Voting System during Early Voting in Fulton
   County at Georgia Institute of Technology on March 09, 2020 as an
   authorized poll watcher.

3. The entire time I was on the premises, (about 30 minutes) there was a
   line of voters waiting to check in. There were 3 stations set up for check
   in. Each station had a laptop and a printer. The poll worker would use the
   laptop to manually look up the voter's registration and print out the

voter's certification. The voter would sign this and take it to one of the poll pads where a voter card would be issued. The poll pad application did not appear to be operational for checking in voters, thereby requiring this two-step process to generate a voter access card.

4. The 6 voting stations were set up side by side in a row, with the touchscreens facing the wall. When standing in front of each touchscreen to review the public counter tallies on each screen, I was able to see the touchscreen to my right, as well as the one I was standing in front of. Given this, it is clear that any voter using those voting stations would also be able to observe the vote of the person to their right as they voted.

5. In addition, the flow of voters through the polling place involved voters walking behind all of the voting stations, and thus being able to observe any votes on the screens of all others present at the time.

6. As of 3:10pm a total of 335 voters had cast their ballots since the polls had opened at 8:30am. As I left the location, I counted 50 people in line waiting to check in.

7. Although this was an outreach location for early voting, I still believe that wait times of reasonable length and the provision of absolute ballot secrecy are required to protect the voting rights of our citizens.

Executed on this date, March 10, 2020.

Rhonda J. Martin

EXHIBIT

K

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, et al.** ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION FILE NO.:** |
| ) | **1:17-cv-2989-AT** |
| **BRAD RAFFENSPEGER, et al.** ) | |
| **Defendants.** ) | |

## DECLARATION OF JOSEPH WAGNER

**JOSEPH WAGNER** declares, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. My name is Joseph Wagner

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. I am a Fulton County voter.

4. On March 5, 2020 I voted in the 2020 Presidential Primary at the Roswell Library  in Fulton County. This location utilized the new BMD machines recently adopted by Georgia.

5.  The poll workers at this site were friendly and efficient. I had only positive interactions with the workers.

6.  However, as I was standing in line to have my ID checked, I was shocked to see that the touchscreen contents of many of the new voting machines were plainly visible to the poll workers at the check-in tables as well as voters standing in line.

7.  The machines had huge screens, were situated literally feet away from the check-in tables, and the content of the screens was clearly visible to all in the area. There were short blue dividers between the voting stations, but these did nothing to shield the screens from those situated at or near the check-in tables.

8.  Fortunately, as there were very few voters in the location at the time, I was able to go to the opposite side of the room and find a machine that was relatively isolated and that provided some measure of privacy.

9.  I was very alarmed by the fact that, if more voters had been present, I likely would have had to vote at one of the machines that were exposed to poll workers and fellow voters. This

felt very intimidating and made me question whether I should

vote in person in the future.

10. I fear that some voters will choose not to vote or hesitate to vote their

conscience if they are required to vote ballots that are visible to people in

the polling place.


Executed on this date, March 8, 2020.

_Joseph Wagner_____

Joseph Wagner

EXHIBIT

L

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD RAFFENSPEGER, et al.<br><br>Defendants. | CIVIL ACTION FILE NO.:<br>1:17-cv-2989-AT |

## DECLARATION OF KIRK A. LYMAN BARNER

**KIRK A. LYMAN BARNER** declares, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. My name is Kirk A Lyman Barner, I am a registered voter in Sumter County, Georgia.

2. I early voted in the Presidential Preference Primary at the Sumter County Courthouse on Monday, March 2, 2020.

3. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

4. At the time that I voted, the Sumter County Courthouse Early Voting location only had four voting machines set up and in use.

5. Of the four voting machines set up and in use, three were turned to face the wall, while the ADA-compliant machine was facing the center of the room.

6. The positioning of the scanner machine used in conjunction with the voting machine printouts was such that anyone standing at or near the scanner could easily observe whatever was being displayed on the ADA machine, including who the individual was voting for; this is especially true if the individual was seated in a wheelchair as the ADA machine was positioned high enough that you could easily see over someone's head if they were using it from a seated position.

Executed on this date, March 10, 2020.

Kirk A Lyman Barner

EXHIBIT

M

### IN THE UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, et al.** )<br><br>**Plaintiffs,** )<br><br>**vs.** )<br><br>**BRAD RAFFENSPEGER, et al.** )<br><br>**Defendants.** ) | **CIVIL ACTION FILE NO.:**<br>**1:17-cv-2989-AT** |

### DECLARATION OF PRISCILLA SMITH

**PRISCILLA SMITH** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is Priscilla Smith.

2. I have personal knowledge of all facts stated in this declaration, and if

   called to testify, I could and would testify competently thereto.

3. I am a candidate for Georgia Representative of State House District 34, and

   my name will be on future 2020 ballots.

4. My address is 1530 Gilbert Road, NW, Kennesaw, GA 30152.  I am a

   registered voter in Cobb County, and vote in most elections for which I am

   eligible.

5. On March 2, 2020 I voted in the March 24, 2020 election  at the West Park Government Center Early Voting location at 736 Whitlock Ave, Marietta, GA.

6. There were more than 20 touchscreen voting machines set up in the room. The touchscreens were mostly set up two per table. Some screens were positioned so that the voter's back was to the exterior plate glass window that was completely shuttered by blinds. Others were positioned so that the voter's back, as she faced her screen, was to the blue panel back of the machine behind her. With two machines per table, any voter could  merely glance unobtrusively over the top of the panel or around the panel of her table-mate to see how she was voting.

7. Without effort and without notice, just by glancing, I could have seen any other voter's screen at almost all the tables by looking up when I would see over the top of my and my neighbor's blue plastic panel. A pollworker walking by could have seen most of the voters' touchscreen ballots while walking by.

8. When I voted there was almost no one else there. I purposely chose a BMD at the very farthest point, my back and side were to blind-covered windows and no one was using the machine beside me, so I knew I had privacy so

long as no one came to use the machine next to me.  Had a person been at the machine next to me, she could easily have looked at my screen.

9.  I am a candidate and worried that voters might be intimidated by seeing in the March 24 election that their votes are not secret. I fear that it will discourage voting in future elections when my name is on the ballot.

10. I saw a husband stand behind his wife and watch her vote on the BMD touchscreens when I was watching polls in the fall elections. In the layout where I voted, a husband could easily have stood next to his wife to make sure she voted how her husband wanted her to.

11. If the polling place were very busy, a person walking behind a voter at a machine to get to the machine immediately next to it could look at another voter's screen while getting to her own. Voters behind could see screens of others in front of them. It was all very disturbing and not at all what secret ballot voting is supposed to be.

12. The room was a bit crowded with equipment and poll officers. Had there been 20 people all voting at the same time, it would have been very full.

13. I have a few more concerns about my voting experience. A pollworker had difficulty with the Poll Pad machine preparing the ballot access card for me. She was very friendly and seemed to be well informed, but handed the card

to me after it took longer than the access card for the other voter who was there and said, "Let me know if it doesn't work and I'll get you another."

14. I walked to the touchscreen and inserted the card. The screen read that "this ballot has already been used" or words to that effect. So I went back to the pollworker and got another. I returned to the same table, but inserted the ballot access card into the other machine on the table, which had had a dark screen the whole time I'd been there. The screen continued to be dark and nothing happened, so I put the card into my original machine and voted. I wondered if the pollworkers knew that machine wasn't functioning.

15. Also, any of the pollworkers whose job it was to make sure that no tampering was going on with the machines would have had a very difficult time monitoring. If they got close enough to make sure the voter wasn't abusing the machines, or making unintentional damaging mistakes using the equipment, the worker could not have avoided seeing how the voter was voting.

Executed on this date, March 10, 2020.

_____

Priscilla Smith

EXHIBIT

N

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD RAFFENSPEGER, et al.<br><br>Defendants. | CIVIL ACTION FILE NO.:<br>1:17-cv-2989-AT |

## DECLARATION OF KYLE RINAUDO

**KYLE RINAUDO** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is Kyle Rinaudo, and I am a candidate for Representative of State House District 35.

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. I am a registered voter in Cobb County, and vote in most elections for which I am eligible.

4. On March 9, 2020 I voted at the Cobb Elections Office Advanced Voting location at 736 Whitlock Ave, Marietta, GA.

5. There were more than 10 touchscreen machines and printers.  Some of the screens faced different ways, but none actually faced a wall. There were several clusters of voting machines, with screens facing away from each other.

6. My touchscreen machine was in the middle of the room, facing other people, poll workers, or voters. I'm not a very big guy, so I'm sure people walking by could have easily seen and read my screen and chosen votes. Thankfully, I was the only person voting at the moment I was there, but if  I looked slightly to the left I could read the words on the screen to my left. I could have read the votes if a voter was voting on it.

7. Especially with 2020 being a competitive election year in Georgia, I am concerned that some voters would be aware of their screen being watched and they would change their vote as a result. It's definitely possible that other people in the polling place could easily have seen what candidates I voted for, especially since the screens themselves are so large! With these machines being so big and being placed so close together, it is much much more likely that other voters will see my vote and violate my ballot's secrecy.

8. As a side note, my municipality holds city council elections every two years. When I vote in that election, even if I'm the only person in the room

voting at the time, I go into an election booth, with a curtain drawn behind me, and can vote using hand marked paper ballots knowing that no one can see my vote. There is a real value for me in the secret ballot, knowing that no one will see my votes and try to pressure me to change it.

Executed on this date, March 10, 2020.

Kyle Rinaudo

E

X

H

I

B

I

T

O

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, et al.** ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION FILE NO.:** |
| ) | **1:17-cv-2989-AT** |
| **BRAD RAFFENSPEGER, et al.** ) | |
| **Defendants.** ) | |
| ) | |

## DECLARATION OF CAROLINE HOLKO

**CAROLINE HOLKO** declares, under penalty of perjury, pursuant to 28 U.S.C.

§1746, that the following is true and correct:

1. My name is Caroline Holko.

2. I have personal knowledge of all facts stated in this declaration, and if
   called to testify, I could and would testify competently thereto.

3. I am a candidate for Representative of Georgia State House District 46 in
   the 2020 elections.

4. I am a registered voter in Cobb County, and vote in most elections for
   which I am eligible. I have been a frequent attendee at my County Board of
   Elections Meetings, and because I am familiar with the new voting system

concerns, have made public comments regarding the security of our votes to the State Board of Elections.

5. On March 3, 2020 I cast my ballot in the Presidential Preference Primary at the main office of the Cobb Elections Office on 736 Whitlock Road in Marietta, GA. I have cast a ballot at this location in the past and this experience was quite different.

6. When it was my turn, I took a seat at the window and the next poll worker prepared my access card. The poll worker completed the process of preparing my access card and returned my id and gave me a green card. Check in was a long process, much longer than usual. I had enough time to make idle conversation with the poll worker. I've never before had the time to chit chat, show ID, and get my card. I am concerned about this slow process creating long lines on Election Day.

7. I moved on to the next area - through a space that seemed unusually cramped. I stopped at the entrance to where the voting machines were housed. The machines were arrayed on tables with bright blue folding panels around each station. The machines were facing into each other, and there were poll workers at each end of the room. The layout of the room was odd. I cannot imagine how the lines will be able to move with so little clearance.

8. The touchscreen was very, very large. The printer was located next to it, and both components were enclosed by a blue corrugated plastic trifold board. The screen was approximately shoulder high, and extended almost to the end of the table. The blue panels meant to provide privacy do not provide privacy. Not even a little. A quick turn of the head, and I know my neighbor's vote, and they know mine. Also, anyone such as another voter or poll worker walking by has a full view of my ballot.

9. I placed my card into the machine and very quickly the screen lit up and my ballot appeared. I made my selection, which was highlighted on a bar going across the entire screen. That bar and position can be seen from quite a distance by anyone in the room who had a line of sight to my touchscreen, who could easily know how I voted. I am not comfortable disclosing to others how I vote on all races.  As we vote on more local races later this year, the issues of publicly disclosing our votes become even more sensitive.

10. As a candidate for state office, I have a very personal stake in ensuring that voters are not discouraged from voting by the inappropriate requirement to vote on non-secret ballots, or alternatively feeling that they have to vote against their conscience because friends, neighbors, boss, other authority

figures, or poll watchers appointed by policital parties are watching how they vote.

11. I was not offered any direction on how to use the machines, but followed the confirmation instructions and my ballot was printed.

12. The printout contained a QR code a little smaller than a square business card, with the details of my vote underneath in very small print. I took my printout and had to ask for guidance on my next step. A poll worker guided me to the scanners, where there was one person ahead of me.

13. The voter was having difficulty scanning their ballot and the pollworker was assisting them. During this process, the voter and the pollworker made several attempts to get the document to scan. After a total of 5 tries, the document was accepted and the previous voter exited the building. It horrified me to think that it was only the second day of early voting, in a low traffic scenario, and the scanner was already acting up.

14. I approached when called and was able to feed my document in on the first try. (Face down, QR code to the top). There was a small notification screen on the top of the scanner. I don't recall what appeared, but it wasn't helpful. I asked the poll worker to confirm that I was done. With a yes answer, I exited the building.

15. This voting experience left me with many questions, and a very uncomfortable feeling about the loss of voter privacy and whether Cobb County is prepared for Election Day.

Executed on this date, March 10, 2020.

Caroline Holko