IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

**STATE DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' JOINT EMERGENCY MOTION FOR EXPEDITED
DISCOVERY AND EVIDENTIARY HEARING AND RESPONSE TO
PROPOSED SCOPE AND TIMING OF PROPOSED EXPEDITED
DISCOVERY**

Defendants Secretary of State Brad Raffensperger, State Election

Board, and the State Election Board Members (collectively, "State

Defendants") respond in opposition to Plaintiffs' Joint Emergency Motion for

Expedited Discovery and Evidentiary Hearing [Doc. 749] ("Plaintiffs'

Motion") and further respond to Plaintiffs' Joint Statement Addressing Scope

and Timing of Proposed Expedited Discovery [Doc. 752] as required by this

Court's order [Doc. 751].

As discussed below, Plaintiffs' proposed expedited schedule introduces

significant uncertainty into the process for preparing for the November

elections—down to examining voting equipment currently being used in the runoff—and is completely unnecessary given the scope of relief available at this point in the case. This case should proceed on a normal discovery track, not an expedited track, and the regular rules of Civil Procedure should govern the discovery process.

## BACKGROUND ON ELECTION SCHEDULE

As this Court is aware, Georgia held its primary elections on June 9, 2020. Of the more than 1.9 million votes cast, 1.1 million were absentee-by-mail votes instead of in-person votes using BMDs.[1]

As Plaintiffs acknowledge, early voting is already underway for the August 11, 2020 runoff elections. [Doc. 752, p. 1 n.1]. After voting concludes on August 11, county election officials begin the certification process, which must be complete by 5:00 P.M. on the second Friday after the election, August 21, 2020. O.C.G.A. § 21-2-493(k). The Secretary of State then has until the following Friday, August 28, 2020, to certify the results of the runoff. O.C.G.A. § 21-2-499 (b). The Secretary of State's office will then have 11 working days to build ballots for the November general election so ballots can be printed and sent to overseas and military ballots by September 15-19,

---

[1] Election Results,
https://results.enr.clarityelections.com/GA/103613/web.255599/#/summary

2020.[2] Early voting for the November general election will begin on October 12, 2020. O.C.G.A. § 21-2-385.

In the next two weeks, another judge on this Court will hold a preliminary-injunction hearing regarding a variety of election-related changes for the November election. *The New Georgia Project v. Raffensperger*, Case No. 1:20-cv-01986-ELR. State Defendants are currently scheduled to reply to hundreds of pages of summary judgment and *Daubert* motions by August 13, 2020 in another case involving election practices, including a challenge to the constitutionality of the old DRE/GEMS voting system. *Fair Fight Action v. Raffensperger*, Case No. 1:18-cv-05391-SCJ. Currently pending before this Court are several other preliminary-injunction motions that seek to change election practices prior to November. *Black Voters Matter Fund v. Raffensperger*, Case No. 1:20-CV-01489-AT; *SPS v. Raffensperger*, Case No. 1:19-CV-04960-AT. Plaintiffs' proposed relief to change from a

---

[2] When announcing the move to June 9 on April 9, 2020, the Secretary of State explained that June 9 was the latest the election could be held without compromising the November general election. Mark Niesse, Atlanta Journal-Constitution, *Georgia primary delayed again to June 9 during coronavirus emergency*, https://www.ajc.com/news/state--regional-govt--politics/georgia-primary-delayed-again-june-during-coronavirus-emergency/W5ElsYWTsP5clpNAVTYXnO/

BMD-marked paper-ballot system to a hand-marked paper-ballot system is the most radical change sought in any of these pending cases.

## PLAINTIFFS' PROPOSED SCHEDULE

While the State and counties are conducting the August 11 runoff and litigating these cases regarding election practices, both sets of Plaintiffs now acknowledge that they currently lack evidence needed to establish their claims and require extensive and burdensome discovery to support their third set of preliminary-injunction motions in this case. In light of this reality, they propose a three-week schedule that would monopolize the time and resources of election officials during this critical time, while preparing for an extremely difficult and important election in November. Specifically, Plaintiffs propose (among other things):

- that written responses be due at 5:00 P.M. three calendar days after being emailed, with all responsive documents produced no later than 10 calendar days after service, [Doc. 752, pp. 5-6];[3]

---

[3] Coalition Plaintiffs also announced they intended to serve requests for the production of documents today calling for a response by the following business day, August 3, 2020. [Doc. 752, p. 3 n.7]. The request for inspection sent by email earlier this afternoon is attached as Exhibit A to this response so the Court can review how broadly Coalition Plaintiffs view the scope of discovery.

- that non-party counties provide ballot images for absentee ballots that were *not even created* by the challenged BMDs, *id*.;

- a full forensic examination[4] of memory cards and DREs using at least one expert that has not previously been noticed in this case, *id*. at 2-3;

- inspection and testing of actual voting equipment *being used* in the August 11, 2020 runoff during its use in the election, *id*. at 3;

- deadlines this coming Tuesday and Thursday for expert disclosures from Defendants, *id*. at 4; and

- a 24-hour turnaround on resolution of all discovery disputes, *id*. at 6.

Obviously, each of these requests will require the participation of State employees, county election officials, and their counsel. Plaintiffs propose that the entirety of this discovery process be concluded in three weeks, with briefs filed on August 28—the same day as the deadline to certify the August 11, 2020 runoff and just days before mail ballots for the November elections must go out. *Id*. at 5.

---

[4] Despite having received electronic data from the now-decertified DRE/GEMS system—including hundreds of copies of GEMS databases— Plaintiffs have yet to provide concrete evidence that the vulnerabilities in that system ever created an unconstitutional burden on voters in Georgia.

## ARGUMENT AND CITATION OF AUTHORITY

More than a year ago (on July 25 and 26, 2019), this Court held a hearing on Plaintiffs' second set of motions for preliminary injunction regarding DREs, ahead of the municipal elections in November 2019. When this Court ruled on August 15, 2019, it expressed concern at that time "about the State's capacity to manage a transition to paper ballots for the 2019 elections while overseeing and undergoing a simultaneous transition to the newly enacted voting system during this time." *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1405 (N.D. Ga. 2019) ("*Curling II*").[5] Any hearing in this case after the conclusion of Plaintiffs' proposed discovery period on August 28 would provide election officials with even less time to accomplish the sweeping and drastic changes sought by Plaintiffs.

Their requests for expedited discovery should be viewed with this end in mind, because it asks the necessary question of "to what end?" A preliminary-injunction hearing after August would leave State and local election officials with virtually no time to actually implement any ordered relief, must less to do so in a safe and secure manner that protects the

---

[5] That concern was based on the "unique circumstances of the 2019 off-cycle election before introduction of the newly mandated auditable BMD system." *Curling*, 397 F. Supp. 3d at 1407. Certainly COVID-19 presents an extremely unique circumstance in 2020.

integrity of the election and Georgia voters' voting experience. As shown below, this Court has already reached that conclusion twice before when Plaintiffs sought preliminary-injunctive relief. There is no need for expedited discovery now, because there is no real likelihood that the relief Plaintiffs seek could be ordered in time to implement it or in a manner that is consistent with binding precedent.

In light of that history and where the State is in the current election cycle, it is important to look back at how the parties arrived at this point. This case has proceeded for three years, through numerous amended and supplemental complaints that have expanded the scope of this litigation far beyond its beginning as an election contest in one Congressional district, through three preliminary-injunction motions, a legislative overhaul of Georgia's election laws, and the rollout of new paper-ballot voting equipment. It should now be fully litigated in regular order, with a proper discovery process and timelines and subject to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Plaintiffs' repeated attempts to try this case through expedited procedures and lax rules of evidence fails to do justice to the very cause to which they purport to claim allegiance—and Plaintiffs' seeming unwillingness to subject their evidence and witnesses to the regular discovery process that allows full consideration is telling.

Plaintiffs' basis for their request for expedited discovery and an expedited hearing is now rooted in a global pandemic. [Doc. 749]. As this Court is aware, the June 2020 election was severely impacted by the COVID-19 crisis. Plaintiffs rely on a series of news articles which focus on a few metro Atlanta counties and contain no claims that BMDs or the optical scanners failed to accurately record the electors' votes in the June 2020 election. *Id*. Yet Plaintiffs now seek to use this particular virus to accomplish their goal of replacing the state's chosen paper-ballot system with their policy goal: a hand-marked paper ballot system. Indeed, another court in this District has already rejected similar claims from one of the Plaintiffs. *Coal. for Good Governance v. Raffensperger*, No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *2 (N.D. Ga. May 14, 2020) (noting Plaintiffs sought order "requiring polling locations to use paper ballots rather than the new touchscreen ballot marking device ('BMD') component of the State's new Dominion Voting System.").

The bottom line is that one election is already underway and another major one is closely approaching. As the Supreme Court has consistently held, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207, 206 L. Ed. 2d 452 (2020); *accord Purcell v. Gonzalez*,

549 U. S. 1, 127 S. Ct. 5 (2006) (*per curiam*); *Frank v. Walker*, 574 U. S. 929, 135 S. Ct. 7 (2014); *Veasey v. Perry*, 574 U.S. 951, 135 S. Ct. 9 (2014).

This Court has—in this very case—twice recognized the impact of timing of elections on its ability to rule. *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018) ("*Curling I*"); *Curling II*, 397 F. Supp. 3d at 1407.

Tomorrow is August 1. Early voting for the November general election begins on October 12, 2020. O.C.G.A. § 21-2-385. Given the closeness of the election, the scope of Plaintiffs' proposed relief is staggering—abandoning entire components of one voting system, retraining pollworkers on a new system, printing and distributing a sufficient number of paper ballots, purchasing pens, printing new instructions for polling places, and possibly even changing the entirety of the check-in process. Changing election processes over a three-month period for the June 9 primary due to the coronavirus was a massive challenge for election officials and pollworkers. Changing an entire election system no more than 45 days[6] before a presidential election is a recipe for disaster.

---

[6] There are 45 days between Plaintiffs' proposed August 28 deadline for briefs based on the expedited discovery process and the start of early voting on October 12.

Plaintiffs attempt to minimize this burden by mischaracterizing this Court's prior order as still requiring a paper backup system *after* the new ballot-marking device ("BMD") technology has been fully deployed throughout the State. [Doc. 579]. State Defendants' obligations under that portion of the Order ceased when the deployment was complete.

Put simply, proceeding on an expedited basis makes sense only to support Plaintiffs' (third) motions for preliminary injunction. A preliminary injunction imposing the relief Plaintiffs would be incredibly disruptive and not in the public interest. Consequently, there is no reasonable need for expedited discovery, and this case can and should proceed in the traditional manner with an answer, a 26(f) conference, and normal deadlines for responses.

## I. Standard of review.

"In this Circuit, a preliminary injunction is an extraordinary and drastic remedy." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). As Plaintiffs have recognized, this Court has previously been unwilling to "dictate how the [government] should properly administer their elections … A federal court should not be 'the arbiter of disputes' which arise in elections…the 'constitution leaves to states broad power to regulate the conduct of federal and state elections.'" *Ga. Shift v. Gwinnett Cty.*, No. 1:19-

cv-01135-AT, 2020 WL 864938 *5 (N.D.Ga. Feb. 12, 2020) (citations omitted).
*See also Powell v. Power*, 436 F.2d 84, 86 (2d Cir. 1970) ("Absent a
constitutional or other unlawful infraction of that authority, the states are
charged with making reasonable policy decisions to effectuate orderly
elections.").

This Court has also been rightfully wary to implement the kind of
massive changes that Plaintiffs seek so close to elections. *Curling I*, 334 F.
Supp. 3d at 1326; *Curling II*, 397 F. Supp. 3d at 1407. Indeed, this and other
courts in this District have been equally remiss to require the State to
implement litigants' policy aims—even in response to the COVID-19
pandemic. *Coal. for Good Governance*, 2020 U.S. Dist. LEXIS 86996, at *8
(during pandemic court must "hew closely to the Constitution's original
imperatives" beginning with the Elections Clause, which pledges election
administration to congress and state legislatures, not the courts); *Black
Voters Matter Fund v. Raffensperger*, No. 1:20-CV-01489-AT, 2020 WL
2079240, at *2 (N.D. Ga. Apr. 30, 2020) (denying injunctive relief at the
"eleventh-hour" due to impact on public interest); *Georgia Ass'n of Latino
Elected Officials, Inc. v. Gwinnett Cty. Bd. of Registrations & Elections*, 1:20-
CV-1587-WMR, 2020 WL 2505535, at *1 (N.D. Ga. May 8, 2020) (denying
injunctive relief requiring bilingual absentee-ballot applications during

pandemic because it is not the court's job to write election law); *Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registration & Elections*, No. 1:20-CV-00912-SDG, 2020 WL 1031897, at *9 (N.D. Ga. Mar. 3, 2020) (denying injunctive relief to open additional voting locations as early voting had already begun). *See also Fair Fight Action, Inc. v. Raffensperger*, Civil Action No. 1:18-cv-4391-SCJ at 10 (N.D.Ga. Dec. 27, 2019) (Slip Op.).

To be sure, Plaintiffs can now fully litigate their case, but they should not be permitted to continue to do so on an informal, expedited basis. As the Court noted in its order yesterday, there are any number of media reports about any variety of issues in elections. [Doc. 751, p. 23]. Instead of being forced to rely on those reports, the discovery process in this case should be put to the requirements of the Federal Rules of Evidence and Plaintiffs should welcome the opportunity to prove their case using the standards of proof required outside the preliminary-injunction context.

## II.   Plaintiffs cannot use issues unrelated to BMDs from June 2020 to support their claims.

The issues in the June 2020 election are attributable to a once-in-a-lifetime worldwide pandemic, not the BMDs that are the subject of Plaintiffs' Complaints. For example, Plaintiffs cite to long lines, [Doc. 749 at 2], inadequate numbers of polling locations, *id*. at 6, and problems with issuing

and receiving absentee ballots, *id*. None of these issues are the subject of the claims in Plaintiffs' Complaints, nor can they be attributed to the BMDs that Plaintiffs actually challenge. As was widely reported, fewer polling sites were willing to serve as polling locations due to the health concerns associated with hosting large numbers of people and the resulting long lines were due to county officials consolidating polling places in response.[7] *See* O.C.G.A. § 21-2-265 ("the superintendent of a county . . . shall select and fix the polling place within each precinct"). Other courts in this District have recognized—in response to similar arguments from some of the same Plaintiffs here—the distinctions between circumstances arising due to state action and those caused by a rare and novel virus and global pandemic. *Coal. for Good Governance*, 2020 U.S. Dist. LEXIS 86996, at *9 n.2.

Similarly, issues with absentee ballots were due to a record number of voters requesting to vote by mail because of health concerns of voting in

---

[7] Mark Nieese and Nick Thieme, *Extreme voting lines expose where Georgia primary failed*, The Atlanta-Journal Constitution (July 28, 2020), https://www.ajc.com/politics/extreme-voting-lines-expose-where-georgia-primary-failed/YQUMSTEBVFAY7CR7UQOQEHSVLI/; Mark Niesse, *Virus concerns close churches, other voting sites for Georgia primary*, The Atlanta-Journal Constitution (May 12, 2020), https://www.ajc.com/news/state--regional-govt--politics/virus-concerns-close-churches-other-voting-sites-for-georgia-primary/o6Ri26ArzR6shl4FWuNe0O/

person.[8] These issues are the result of the pandemic, not the BMDs that are the subject of Plaintiffs' claims. Plaintiffs should not be allowed to transform their Complaints into an omnibus wish list of their preferred policy objectives that differ from the Georgia General Assembly. Specifically, Plaintiffs' pleaded claims do not relate to long lines, polling place closures, or problems with issuing absentee ballots. They relate to *technology* and its purported vulnerability to hacking and other acts of third parties. [Doc. 627 at ¶¶94, 104, 116, 125]; [Doc. 628 at ¶¶164, 167, 176]. Plaintiffs should not be granted the opportunity to exploit the current global health crisis to engage in discovery for evidence supportive of claims wholly unrelated to the events of the June 2020 election. Put simply, nothing has changed since Plaintiffs first filed their motions for preliminary injunction that would warrant expedited discovery or another hearing.

---

[8] Stephen Fowler, Eric Fan, and Georgia News Lab, *Georgia's Mail-In Ballot Requests On Track To Surpass Total 2018 Primary Turnout*, Georgia Public Broadcasting (May 6, 2020), https://www.gpb.org/news/2020/05/06/georgias-mail-in-ballot-requests-on-track-surpass-total-2018-primary-turnout; Stephen Fowler, *Here's What The Data Shows About Polling Places, Lines In Georgia's Primary*, Georgia Public Broadcasting (July 17, 2020), https://www.gpb.org/news/2020/07/17/heres-what-the-data-shows-about-polling-places-lines-in-georgias-primary

III.   **Plaintiffs' sweeping changes to election laws should be handled through the normal rules of civil procedure.**

The requested relief in this case demands to be litigated after a full discovery period and not on a loosened preliminary-injunction standard, which Plaintiffs' abbreviated schedule would necessarily entail. "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Here, Plaintiffs are asking this Court to mandate wholesale changes to Georgia's new chosen voting system, which in turn affects Georgia's election laws and policies, through a preliminary injunction and based on evidence hastily procured through discovery so expedited that it will be over in three weeks.

Plaintiffs' requests threaten to severely undermine the fair administration of justice in this proceeding. Plaintiffs now use the June 2020 election to justify their request for a fishing expedition (and, as argued above, expansion of their relatively limited Complaints, which address voting technology). Plaintiffs' request for expedited discovery is so broad that it includes involving themselves in the actual administration of the August 11

runoff itself. [Doc. 752, pp. 3-4]; Ex. A. Plaintiffs essentially seek unfettered freedom to engage in discovery that has the high likelihood of disrupting the 2020 elections to submit evidence on a relaxed preliminary-injunction standard. Given the magnitude of the relief Plaintiffs seek, they should not be permitted to engage in expedited discovery for evidence to submit under the less-rigid evidentiary standards of a preliminary-injunction hearing, especially because the very election officials from whom the discovery is sought are literally in the middle of a challenging election cycle, with only days before critical elections.

## IV.    Response to scope and timing.

In response to Plaintiffs' proposed timing, Defendants urge that this case should proceed on a normal, six-month discovery track with the regular deadlines set by the Federal Rules of Civil Procedure.[9] Defendants oppose any request to conduct a full forensic examination of the memory cards and DREs as proposed by Plaintiffs on such a rushed schedule. Defendants instead propose that a destructive testing protocol, such as in a product-liability case, be developed by the respective experts to allow a mutual review

---

[9] Given the track record in this case and Plaintiffs' expansive desire to inspect and involve themselves in the administration of the August 11 election [Doc. 752, pp. 3-4], it seems inevitable that significant disputes about the scope of discovery will require resolution by this Court.

of the DREs and underlying equipment. That can take place according to regular procedure without the necessity of rushing through that process in the next few days.

Defendants believe that any other issues related to the scope of discovery can be addressed through the normal discovery-dispute processes and propose the following discovery schedule:

| | |
|---|---|
| Rule 26(f) Conference on new claims | Week of August 10, 2020 |
| Plaintiffs' Expert Disclosures (reports) | December 1, 2020 |
| Defendant's Expert Disclosures (reports) | January 4, 2021 |
| Plaintiffs' Rebuttal Expert Disclosures (reports) | January 18, 2021 |
| Close of Discovery | February 26, 2021 |
| Dispositive Motions (filed) | March 29, 2021 |
| Dispositive Motions (response) | April 30, 2021 |
| Dispositive Motions (reply) | May 14, 2021 |
| Last Day for Daubert Motions | On last day to submit Pretrial Order |
| Last Day to Submit a Pretrial Order | 30 days after entry of the Court's ruling on summary judgment |
| Trial readiness | Summer 2021 |

## CONCLUSION

For each of the above reasons, State Defendants respectfully request this Court deny Plaintiffs' Motion and set normal discovery deadlines for this case moving forward.

Respectfully submitted this 31st day of July, 2020.

> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Carey A. Miller
> Georgia Bar No. 976240
> cmiller@robbinsfirm.com
> Alexander Denton
> Georgia Bar No. 660632
> adenton@robbinsfirm.com
> Brian E. Lake
> Georgia Bar No. 575966
> blake@robbinsfirm.com
> Robbins Ross Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, Georgia 30318
> Telephone: (678) 701-9381
> Facsimile:  (404) 856-3250
>
> */s/Bryan P. Tyson*
> Bryan P. Tyson
> Georgia Bar No. 515411
> btyson@taylorenglish.com
> Bryan F. Jacoutot
> Georgia Bar No. 668272
> bjacoutot@taylorenglish.com
> Diane F. LaRoss
> Georgia Bar No. 430830
> dlaross@taylorenglish.com
> Loree Anne Paradise
> Georgia Bar No. 382202
> lparadise@taylorenglish.com
> TAYLOR ENGLISH DUMA LLP
> 1600 Parkwood Circle, Suite 200
> Atlanta, GA 30339

Telephone: 678-336-7249

*Counsel for State Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' JOINT EMERGENCY MOTION FOR EXPEDITED DISCOVERY AND EVIDENTIARY HEARING AND RESPONSE TO PROPOSED SCOPE AND SCHEDULE FOR DISCOVERY** has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson