IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, *et al.*, : | |
| : | |
| Defendants. : | |

# **ORDER**

In this case, Plaintiffs challenge the constitutionality of the State of Georgia's electronic voting machines and associated software and voting data systems and their implementation. Now in the third act of this dispute at the center of Georgia's elections, though the voting machines at issue are new, the parties' legal positions remain essentially unchanged. Plaintiffs have filed their third round of Motions for Preliminary Injunction [Docs. 619, 640] seeking again to bar the use of voting machines and require hand-marked paper ballots.

**I.   BACKGROUND**

  **A.   Act One**

When this case was filed in 2017, Plaintiffs' claims targeted Georgia's use of Direct Recording Electronic voting machines ("DREs") and highlighted significant security flaws in the State's Global Election Management Systems ("GEMS") servers and online voter registration database. In the late summer of 2018, the

Plaintiffs moved to enjoin the use of DREs in the November 2018 gubernatorial general election.

Two months before the general election, the Court denied Plaintiffs' request to enjoin the use of DREs in the November 2018 general election because a last-minute switch to hand-marked paper ballots would likely adversely impact the public interest in an orderly and fair election. But, in concluding that the Plaintiffs had shown a substantial likelihood of success on the merits of their claims that Defendants' implementation of the DRE voting system absent an independent paper audit trail of the vote puts Plaintiffs at imminent risk of deprivation of their fundamental right to cast an effective vote that is accurately counted, the Court noted that:

(1) The State Defendants had delayed in grappling with the heightened critical cybersecurity issues posed for the State's dated, vulnerable voting system that provides no independent paper audit trail and that further delay would not be tolerable; and

(2) Because the 2020 elections were around the corner, if a new balloting system is to be launched in Georgia in an effective manner, it should address democracy's critical need for transparent, fair, accurate, and verifiable election processes that guarantee each citizen's fundamental right to cast an accountable vote.[1]

---

[1] While the case was originally pending, the Georgia legislature failed to pass a bill introduced in 2018 to phase out DREs by 2024. Legislation authorizing the funding of voting machines to replace the DREs was later enacted during the 2019 legislative session on April 2, 2019.

**B.     Act Two**

On April 2, 2019, the Governor of Georgia approved HB 316, the newly enacted state election legislation to replace the statewide mandated use of DREs with electronic ballot-marking devices ("BMDs") and optical scanners.[2]

Shortly after, Plaintiffs renewed their requests for a preliminary injunction. Plaintiffs again sought to enjoin the use of the DRE/GEMS voting system,[3] require hand-marked paper ballots, require post-election audits, and other relief related to the State's electronic pollbook and related computer systems in advance of the November 2019 local/municipal election cycle. The Court heard evidence on Plaintiffs' motions for two days on July 25 and 26, 2019.

On August 15, 2019, the Court entered an Order on Plaintiffs' renewed motions for preliminary injunction. The Court explained in a detailed order how Plaintiffs' new motions presented testimony manifesting a catalogue of pervasive voting problems arising in the 2017-2018 election period that compounded and expanded the evidence established in the September 2018 preliminary injunction record compiled before the November 2018 general election. Plaintiffs, the Court found, marshaled a mountain of evidence demonstrating the burdens to the voting process and to the casting of a secure, reliable, counted ballot that some portion of

---

[2] Georgia Act No. 24, Georgia House Bill 316, amending Chapter 2 of Title 21 of the Official Code of Georgia Annotated.
[3] The Court uses the term "DRE/GEMS voting system" as a short hand reference to describe the DRE voting machines and memory cards and the associated Global Election Management System ("GEMS") software, servers, and computers used to build ballots, program the DREs, and tally the vote results.

voters across Georgia, including Plaintiffs, had experienced as a result of the State's continued use of voting equipment, software, hardware, election and voter databases, that were demonstrably shown to be antiquated, seriously flawed, and vulnerable to failure, breach, contamination, and attack.

In issuing its ruling, this Court noted the complicated posture of the case in reviewing Plaintiffs' challenge to the GEMS/DRE system in the context of the State's recent passage of new legislation requiring the Secretary of State to implement prospectively "as soon as possible" an entirely new voting system to replace the existing DRE/GEMS. *See* O.C.G.A. § 21-2-300(a)(2). The Court found that it was bound to defer to the electoral machinery and processes chosen by the Legislature in HB 316 for prompt implementation as planned for the upcoming 2020 elections, expressly noting that the adequacy of the newly chosen BMD election system was not then before the Court. Based on this unique set of circumstances, the Court again declined to order the State to switch to hand-marked paper ballots for what would essentially be a single, limited election cycle before the State's planned transition to BMDs for the next major statewide elections in 2020.

But the Court also prohibited any continued use of the GEMS/DRE system past the completion of the 2019 election cycle and ordered the State to develop a backup plan other than the DRE/GEMS system in the event of incomplete rollout

of the new BMD system for the March 2020 elections statewide.[4] The Court required that this contingency backup plan should include the use of hand-marked paper ballots for voting, in coordination with scanners and other equipment available through the State's contract with Dominion. As the record evidence indicated that no State in the nation had previously introduced a new statewide voting system in the short time frame projected by the Georgia Secretary of State for rollout of the BMD system and as the severe inadequacies of the DRE system made for a faulty foundation for the future, the Court addressed in its order the issue of the need for a contingency plan other than continued use of the DRE system. The Secretary of State already had announced its plan to run pilot tryouts of its new BMD system in several jurisdictions holding smaller elections in November 2019. Consistent with its Order regarding the need for some form of contingency plan, the Court ordered the State also to arrange for pilot elections in several jurisdictions that would use hand-marked paper ballots along with optical ballot scanners and voter-verifiable, auditable ballot records as part of the development of its contingency plan. The Court further ordered the State Defendants to file a copy of the Georgia Board of Elections' proposed and final Rules relating to protocols and provisions for the auditing of election results and ballots. Finally, the Court ordered the State Defendants to take various actions to

---

[4] The March 2020 deadline date was consistent with the RFP and contract requirements imposed by the Secretary of State's Office on contract bidders.

remedy the harm caused by vulnerabilities in the State's electronic voter registration database and related pollbook information.

After the Court issued its injunction Order, the Coalition Plaintiffs moved to amend the Court's order to seek more detailed relief and add provisions for the Court to monitor the State Defendants' administration of the election. The Court declined the Coalition Plaintiffs' invitation to rewrite the Order to grant materially different relief. More importantly, the Court reiterated that in fashioning the terms of the August 15, 2019 Order, the Court had endeavored to provide meaningful relief without intruding excessively into the State's and counties' operational administration of the voting system. The Court per force took into consideration the Legislature's adoption of a new voting system and equipment for statewide use.

### C. Act Three

On the heels of the Court's August 15, 2019 Order partially granting the Plaintiffs' motions to preliminarily enjoin Georgia's use of DREs for future elections past 2019, the Plaintiffs amended their Complaints to include claims challenging the incoming BMDs and immediately moved to enjoin the use of BMDs in favor of hand-marked paper ballots.[5]

---

[5] Plaintiffs had previously asserted that their Complaints already encompassed a challenge to the new BMD system. The Court rejected this notion and indicated that if Plaintiffs wished to proceed with such a challenge, an amendment of the complaint to expressly deal with the BMD system would be necessary.

## II. DISCUSSION

Plaintiffs' amended claims assert that Defendants have failed to implement a constitutionally-acceptable election system by choosing to require voters to use ballot-marking devices ("BMDs") which suffer from the same security vulnerabilities as Defendants' flawed DRE Voting System. (Curling Pls.' Third Am. Compl. ¶¶ 11, 75-76, Doc. 627; *see also* Coalition Pls.' First Supp. Compl. ¶¶ 6-7, Doc. 628.) Plaintiffs also maintain that other components of the system suffer also from the same vulnerability and reliability issues, e.g., the new pollbook tablets that are used for voter check-in at the polls and production of access cards used for determining the configuration of the ballot to be pulled for different voters based on their address.

According to Plaintiffs, the barcode-based BMD voting system will not be substantially safer than the DREs because BMDs remain susceptible to manipulation, and the proposed system does not provide a meaningful way for a voter to verify their vote. (Curling Pls.' Third Am. Compl. ¶ 72; *see also* Coalition Pls.' First Supp. Compl. ¶ 68.) Plaintiffs contend that specific vulnerabilities have already been identified with Dominion's election software and hardware that could cause the BMD to code votes to the 2D barcode that do not match the voter's choices or that could cause a precinct scanner to improperly tabulate votes. (Curling Pls.' Third Am. Compl. ¶¶ 78-83; *see also* Coalition Pls.' First Supp. Compl. ¶¶ 167-68, 173-74.) Because the ballot scanners tabulate votes from each ballot based on the 2D barcode generated by the BMD, which is not readable by a

7

voter, voters cannot visually review and confirm whether the bar code accurately conveys their intended ballot selections. (Curling Pls.' Third Am. Compl. ¶ 71; *see also* Coalition Pls.' First Supp. Compl. ¶¶ 54-57, 102-103.) Plaintiffs claim this fundamental characteristic of the BMD voting system, even if operated as designed, fails to provide voters with a verifiable auditable voting record in violation of their Constitutional right to a "transparent, fair, accurate, and verifiable election process" and to "cast an accountable vote." (Coalition Pls.' First Supp. Compl. ¶¶ 1, 64-66, 105, 107; *see also* Curling Pls.' Third Am. Compl. ¶¶ 74, 116-119.)

Plaintiffs' motions sought to have this Court bar the use of BMDs prior to their implementation in a statewide election and to order the use of hand-marked optical scan paper ballots as the State's primary method of voting. Plaintiffs also request that the Court order Defendants to institute precertification, post-election, manual tabulation audits of the paper ballots to verify election results, in sufficient detail for the Court to evaluate its adequacy.

Plaintiffs moved for a preliminary injunction of the State's planned use of the BMDs voting system prior to the State's rollout and full implementation of the new voting machines based on their concerns and claims regarding the inherent problem posed by use of the barcode for counting votes and the vulnerability and lack of reliability and confidentiality of the system.[6] The centerpiece of Plaintiffs'

---

[6] With the exception of the small number of counties chosen for the BMD pilot elections in the fall of 2019, the State's rollout of the BMD system components began on December 5, 2019 with a scheduled completion through February 14, 2020 for use beginning in March 2020 in time for

8

claims is that like the touchscreen DRE machines, the Dominion barcode-based BMDs and associated equipment do not produce an accountable, verifiable vote or auditable results and the State's failure to implement requisite auditing protocols compounds this alleged operational and constitutional defect.

The Court carefully reviewed all parties' evidence and affidavits submitted in conjunction with the renewed injunction motions. On March 6, 2020, the Court conducted a limited hearing in light of questions it had concerning the system and the ongoing adaptations, changes, auditing issues, and State Election Board's new regulatory recount and audit provisions in process or under consideration in advance of the primary and general election cycles. The Court focused the hearing solely on the issues that it viewed as confusing or unclear in the paper record as it stood at that time. The hearing was not structured to be a full evidentiary hearing or to allow full cross-examination of state officials who provided information responsive to the Court's inquiries at the hearing. Then, within eight days of the hearing, the entire posture of the rollout of the new voting system was dramatically changed by the Secretary of State's determination to postpone the March 24, 2020 election to May 19, 2020 due to the impact of the Covid-19 pandemic.[7] This date was later changed to June 9, 2020 – merging the Presidential Primary with the

---

early voting for the scheduled Presidential Preference Primary election. However, the Court takes notice of more recent evidence that appears to suggest that needed election equipment components were being delivered up until the June 2020 general and primary elections and beyond.

[7] The decision to delay announced late on March 14 occurred after the start of early voting on March 2.

primaries for a broad swath of elected positions throughout the state. Thus, the June 9, 2020 primary election was the first time that the new election system was rolled out on an expansive statewide basis (with the exception of some early voting from March 2 through March 14 before the delay of the primary).

The Court recognizes that there are ongoing changes and challenges in the introduction of the new BMD system made all the more acute due to the Covid-19 pandemic, canceled and rescheduled elections, shortages of election poll workers trained on the usage of all BMD related voting system components, and other challenges to boot. Thus, the Court considers the current record in this case as dated, especially considering the concerns Plaintiffs raise in their most recent filings seeking expedited discovery. The legal standard for granting a preliminary injunction is rigorous. The Court appreciates Plaintiffs' central claim addresses the problem posed by tabulating votes based on a barcode that cannot be verified by voters in conjunction with the lack of meaningful, rigorous auditing and that this contention rests at the core of Plaintiffs' claims as a matter of law. However, based on the current preliminary record and Plaintiffs' *focus on their claims as resolvable as a sheer matter of law* in their initial motion pre-March 6, 2020 briefing (albeit bolstered by expert affidavits), the Court finds that Plaintiffs' showing has been insufficient to support the Court's granting an injunction solely based on an "in principle," or quasi-facial challenge to the legality of the BMD

system as presented as of March 6th.[8]  To the extent that Plaintiffs intended to present an evidentiary "as applied" challenge of the constitutionality of the BMD system and its components, *prior to the occurrence of any major elections as of March 6, 2020,* the Court views the record as of the Court's March 6, 2020 hearing as dated and providing an insufficient basis for the Court to issue such a ruling of weighty importance.

For these reasons, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motions for Preliminary Injunction regarding the BMDs [Docs. 619, 640].  The Court does not foreclose further proceedings in this matter based on actual election based evidence, auditing developments, and other evidence relevant to the claims at issue in this case, including those not deemed moot by the Court's Order of July 30, 2020.[9]  As Plaintiffs have indicated their intent to significantly supplement the evidence in support of their request for injunctive relief, the Court finds that a denial of the present motions and allowing Plaintiffs to refile their motions will provide the Court with a more streamlined and clean record.  At the same time, for the sake of clarity, the Court notes that a host of election issues may arise in the course of the 2020 election cycle that are not embraced within the ambit of this specific case.

---

[8] The Court notes that consistent with the Court's Order on the Defendants' Motion to Dismiss (Doc. 751), the Plaintiffs may also pursue in state court their state law claims with respect to the Defendants' implementation of HB 316.

[9] Indeed, Plaintiffs have indicated their intent to significantly supplement the evidence in support of their request for injunctive relief based on evidence from the June and August elections and evidence obtained during expedited discovery.

**IT IS SO ORDERED** this 7th day of August, 2020.

_____
**Amy Totenberg**
**United States District Judge**