IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., Plaintiffs, v. BRAD RAFFENSPERGER, ET AL., Defendants. | Civil Action No. 1:17-CV-2989-AT |

**CURLING PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY**

Pursuant to the Court's direction, the parties conducted a Rule 26(f) conference on August 6, 2020. During that conference, the parties discussed the substantially-narrowed document requests Plaintiffs served on State Defendants earlier that day. State Defendants agreed to follow up on August 7—continuing to August 10 if needed—with a proposal for what they would be willing to produce in response to those narrowed requests, nearly each of which could be satisfied with just a handful of documents or perhaps even a single document in some instances. Since State Defendants—unlike Plaintiffs—know what documents they do and do not have responsive to the requests, Plaintiffs welcomed a specific proposal from State Defendants for a narrow, expedited production.

Unfortunately, on the afternoon of August 7, State Defendants did what they have consistently done in this litigation since replacing their prior counsel: they did an about-face, ignoring this Court's directive to work out an arrangement for some expedited discovery and refusing to provide any discovery at all—even a single document—on an expedited basis. So here we are, yet again, forced to impose on this Court for help obtaining crucial discovery for forthcoming preliminary injunction motions because State Defendants are unwilling to cooperate.[1] Having once again refused this Court's directive to cooperate and reneged on their agreement to provide a proposal for expedited discovery, they should not now be heard to complain about these narrow requests and instead should be required to produce the relatively small number of documents sought expeditiously. Their persistent obstruction and delay need to finally end.

---

[1] Since the Court has indicated it is prepared to order some amount of expedited discovery (Aug. 5 Transcript, Dkt. No. 765 at 44:25-45:2), Curling Plaintiffs will not burden this Court with arguments refuting State Defendants' arguments against any expedited discovery, including mischaracterizations of *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). (Ex. A, Aug. 7, 2020 E-mail from Bryan Tyson to David Cross, et al.) Curling Plaintiffs will respond to those arguments in a supplemental filing if requested by the Court. Suffice to say that the Supreme Court has never held that a state is allowed to disenfranchise voters with an unconstitutional election system, regardless of when the unconstitutionality of that system is established. And State Defendants' timeliness argument is especially specious given Plaintiffs have been seeking preliminary injunctive relief since October of last year.

A.  **Discovery Deadlines**

On June 17, 2019, the parties agreed to—and the Court ordered—the following procedure for discovery in this litigation:

> All written responses and objections to discovery requests (interrogatories, requests for production, requests for admissions, and deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(6)) between the parties shall be due within fifteen calendar days of service of any such request.

(Dkt. No. 410-2; Scheduling Order at Dkt. No. 418.)  State Defendants now refuse to comply with this provision.  They argue that it was intended only for expedited discovery preceding the July 2019 preliminary injunction hearing.  But nothing in that Order supports their argument.  In fact, that same Order contained a schedule for full fact discovery to be completed months after the July 2019 hearing, and nothing in the Order relieves the parties of the 15-day deadline for discovery responses after that hearing was completed.

Moreover, there is no reason to eliminate this timing now.  Fifteen days is ample time to merely respond to discovery requests.  In fact, this is the default deadline by local rule in some federal courts.  *See, e.g.*, E.D. Va. Local Civ. Rule 26(C).[2]  By getting objections out sooner than the 30-day deadline to produce

---

[2] U.S. District Court for the Eastern District of Virginia, *Local Civil Rules* (Nov. 25, 2019), http://www.vaed.uscourts.gov/localrules/LocalRulesEDVA.pdf.

3

documents, document productions can proceed more expeditiously by enabling the parties to resolve disputes over scope before the 30-day production deadline arrives.

**B.   Scope of Document Requests for Expedited Discovery**

Despite State Defendants' refusal to provide a proposal for expedited discovery and despite the already narrow scope of Plaintiffs' August 6 document requests, Curling Plaintiffs have further narrowed some of those requests below as discussed during the Rule 26(f) conference. Curling Plaintiffs seek expedited discovery only for the requests below. Given the narrow scope of these requests and the ease with which the documents sought can be identified and produced, 15 calendar days should be sufficient for completing production.

**Request for Production No. 9:**

> Any reports, studies, findings, audits, evaluations, and/or assessments of actual or potential security breaches or vulnerabilities associated with the Election System since August 1, 2019, including but not limited to new, updated, or supplemental reports prepared by Fortalice Solutions or similar consultants (*see, e.g.*, October 2017 Fortalice Report, Dkt. No 510-5 (PAYTON000001), November 2018 Fortalice Report, Dkt. No 510-6 (PAYTON000070), February 2018 Fortalice Report, Dkt. No 510-7 (PAYTON000120)).

As Plaintiffs explained during the Rule 26(f) conference, they are simply seeking a discrete set of documents akin to the three reports prepared by Fortalice Solutions and produced in discovery last summer. This Court will recall how important Fortalice Solutions' assessments were in deciding Plaintiffs' prior

4

preliminary injunction motions. *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1375-82 (N.D. Ga. 2019). Those reports revealed serious security vulnerabilities with the election system and belied certain representations—including sworn testimony—from State Defendants regarding election security in Georgia. *Id.* at 1376-77.

Plaintiffs are not requesting sweeping searches for this request, which is limited to documents created after the adoption of the new Dominion election system. State Defendants should readily know whether Fortalice or others have prepared similar reports or assessments since August 1, 2019. (Dkt. No. 713 at 2-3.) And they should be able to easily collect and produce that discrete set of documents on an expedited basis. Their refusal to produce any such documents raises serious concerns about the security of the current system and their unsubstantiated claims that it is secure.

**Request for Production No. 10:**

> Documents *sufficient to show* compliance with the Court's directive in its August 2019 Order granting a preliminary injunction (*Curling*, 397 F. Supp. 3d at 1411) that "[t]he Secretary of State's Office should work with its consulting cybersecurity firm to conduct an in-depth review and formal assessment of the issues relating to exposure and accuracy of the voter registration database discussed here as well as those related issues that will migrate over to the State's database or its new vendor's handling of the EPoll voter database and function," including documents sufficient to show any remedial measures taken or planned as part of that effort.

This request seeks only to understand what steps State Defendants have taken to comply with a specific directive from this Court to address security vulnerabilities with particular aspects of the Election System, including those identified by Fortalice involving the voter registration database. *Curling*, 397 F. Supp. 3d at 1376-78. The Court will recall that State Defendants refused to allow Fortalice to determine whether those vulnerabilities were remedied or to otherwise examine the voter registration database again after identifying those vulnerabilities. *Id.* at 1378. Any argument that it would be unduly burdensome to produce in the next couple weeks a handful of documents—or even one document—simply to show how they complied with the Court's August 2019 Order is meritless. In fact, State Defendants argued during the Rule 26(f) conference that documents responsive to RFP 10 also are covered by RFP 9, in which case this request imposes no additional burden beyond RFP 9 by their own admission.

**Request for Production No. 11:**

> The data collected as part of the "pilot post-election audit" conducted in Fulton County after the June 9, 2020 primary elections and documents sufficient to show the specific steps taken in that "audit" and how audit procedures planned for November 2020 election differ from Fulton audit.

In opposing the relief Plaintiffs seek, Defendants rely heavily on their claim that they are implementing reliable audits—and more specifically, risk-limiting

6

audits—for Georgia elections. (Dkt. No. 645-1 at 6; Dkt. No. 658 at 13-14, 22; Dkt. No. 658-3, Gilbert Decl. ¶¶ 19-23; Dkt. No. 717 at 7-8). Since the June 9 primary elections, they have emphasized publicly a "pilot post-election audit" conducted in Fulton County.[3] Defendants thus have chosen to put audit plans and procedures at the core of their defenses in this case, arguing that audits will somehow cure the Election System of the infirmities Plaintiffs seek to remedy. Therefore, Plaintiffs and their experts need to be able to examine the reliability of the Fulton County pilot "audit" and understand how future audits will differ, if at all, including under any proposed rules concerning audits that State Defendants will promulgate and file with the Court.

The materials Plaintiffs seek in RFP 11 should not be difficult to identify and produce on an expedited basis. The data collected for the Fulton County "audit" almost certainly is sitting electronically on a server or hard drive somewhere and thus can easily be copied and produced. And the steps taken for that audit, as well as the steps planned for future audits, should be reflected in a handful of documents or even a single document, such as a written plan or manual for conducting post-election audits in Georgia.

---

[3] Ga. Sec'y of State, *Audit Supports Primary Outcome* (July 1, 2020), https://sos.ga.gov/index.php/general/audit_supports_primary_outcome.

**Request for Production No. 13:**

> Documents *sufficient to show* any plans to ensure that each barcode, or QR code, printed with a Dominion ballot-marketing device during a Georgia election accurately reflects the selections intended by the voter who cast the ballot bearing that barcode, including showing the specific steps to be taken as part of any such plans.

Plaintiffs explained during the Rule 26(f) conference that they are seeking only a discrete set of documents—or perhaps even a single document—sufficient to understand the steps State Defendants have taken, or planned, to ensure that each voter using a Dominion BMD and scanner to vote obtains a ballot with a bar code that actually reflects that voter's intended selections. This request goes to a central issue underlying Plaintiffs' claims and the relief they seek. And it is critically important for the reliability of Georgia elections this fall.

State Defendants argued during the Rule 26(f) conference that this request includes numerous documents describing the normal operation of the Dominion equipment. This is wrong, as Plaintiffs explained. Such operational documents are not "plans" to ensure that the equipment operates as it is supposed to with respect to a specific operation: printing correct bar codes. If no such plans exist, then State Defendants can simply state that. If they do exist, it should not be difficult for State Defendants to identify and produce those few documents, or perhaps that one document, on an expedited basis.

State Defendants claim that the computer-generated bar codes reliably reflect voters' intended selections. (Dkt. Nos. 658-2, Coomer Decl. ¶¶ 4-5; Dkt. No. 658-3, Gilbert Decl. ¶¶ 39, 59-61.) They should be required to substantiate that claim with a handful of documents—or even just one document—showing the specific steps they have taken or planned to ensure the bar codes' accuracy, beyond simply installing and operating the equipment according to its instructions and hoping every piece operates correctly.

The reliability of the printed bar codes is at the core of Plaintiffs' claims and the relief they seek. The very narrow discovery sought here is critically important for responding to Defendants' representations and defenses bearing on a key issue affecting the reliability of elections this fall.

**Request for Production No. 14:**

> Forensic examination by Dr. Alex Halderman and Harri Hursti (and those working at their direction) of the memory cards from Cobb, DeKalb, and Fulton Counties already provided to Plaintiffs for any potential or actual security breaches or security vulnerabilities.

The parties addressed this request during the August 5 conference with the Court. (Aug. 5 Transcript, Dkt. No. 765 at 36:13-46:4.) Curling Plaintiffs will not burden the Court by repeating those arguments. Suffice to say that there is absolutely no burden on or expense to State Defendants for Dr. Halderman to forensically

9

examine the memory cards *already in his possession*, nor is there any reason to further delay this important analysis. In fact, expediting the memory card forensic imaging will lessen the burden on both parties because Dr. Halderman simultaneously will be able to extract serial numbers from the remaining memory cards in his possession under the testing already allowed while starting the forensic imaging this week with those same cards. This will save substantial time for Dr. Halderman and the parties' observers.

Although Dr. Halderman likely cannot complete a full forensic examination of each of the thousands of cards he has on an expedited basis, he should be free to begin that analysis immediately and to complete what he can over the next several weeks. If those cards contain any indications of security breaches or vulnerabilities that could affect election outcomes or otherwise disenfranchise voters in Georgia, that is crucial information that the Court should have as soon as possible. State Defendants' unsubstantiated claims that the current election system is secure (e.g., "air-gapped," Aug. 5 Transcript, Dkt. No. 765 at 42:19-44:15) and untainted by components from the prior system should not go untested, especially given the unreliability of such claims in the past in this case.

State Defendants agreed during the Rule 26(f) conference that this examination could proceed as part of expedited discovery. The only issue they

raised was that they want some sort of protocol established for the examination. But rather than provide a proposal on August 7 as agreed, they have refused to agree to any expedited discovery, including forensic examination of these memory cards. Dr. Halderman can access the cards in the same manner the parties agreed and this Court ordered for the testing he is already allowed to do. (Dkt. No. 745.) And he can create a forensic image of each card for his examination, so that he is examining a *copy* of each card. These steps will protect the contents of the cards from alterations. State Defendants are welcome to observe Dr. Halderman creating forensic images of the cards as with the testing he has conducted. They should not be allowed to observe his examination of the *copies* of the cards, however, as any such analysis is not discoverable under Rule 26 unless and until he relies on it for any opinions he offers as an expert in this case—and any examination of the *copies* poses no threat to the contents of the cards themselves.

**Request for Production No. 16:**

> Reports of ballots inaccurately reflecting voters' touchscreen entries in the June 9, 2020 election.

The Rule 26(f) conference established that State Defendants could easily produce documents responsive to this request on an expedited basis. Although they claimed that numerous responsive documents exist in a variety of places and forms,

they acknowledged that they have a single email inbox that contains reports, such as complaints from voters, of inaccurate BMD ballots. They also acknowledged that documents in that inbox could be restricted to a specific date range corresponding to the June 9 primary elections, such as from the start of early voting through state certification of the election results. Those documents easily could be collected and produced en masse (likely in a single .pst file or similar format) to Plaintiffs who then would take on the burden and expense of searching them for relevant reports. State Defendants argued during the Rule 26(f) conference it would be too burdensome for them to cull these documents themselves, and so Plaintiffs will assume that burden.

Reports of BMD-printed ballots erroneously reflecting voters' intended selections go to the core of Plaintiffs' concerns with the unreliability of BMDs and the resulting disenfranchisement of voters. Reports of firsthand experience with such failures in actual Georgia elections are highly relevant for the preliminary injunctive relief Plaintiffs will seek.

**Request for Production No. 17:**

> Documents *sufficient to show* procedures regarding maintaining secure operations of the Dominion election equipment, including but not limited to procedures for transfer of data through removable media and for air-gapping state and county election servers.

Plaintiffs explained during the Rule 26(f) conference that are seeking only a discrete set of documents—or perhaps just a single document—sufficient to understand the specific procedures taken, or planned, to protect the security of the current election equipment. State Defendants should be able to show these procedures in a handful of documents, or perhaps even a single document, that comprehensively identifies these critically-important procedures.

This Court will recall how discovery—and cross examination—belied State Defendants' prior claims, including sworn testimony, about the security of the prior election system. *Curling*, 397 F. Supp. 3d at 1350-51, 1366-67, 1379. Even their own election security experts agreed that the election system was not air-gapped as they claimed and suffered from significant vulnerabilities. *Id.* at 1365-66, 1375-76. These failures included, for example, using removable media with an election server that also was used with an internet-connected computer. *Id.* at 1367-68. Given this history, it is crucial to understand what specific procedures have been taken, or planned, to remedy or avoid such security vulnerabilities with the current Dominion system with important elections approaching this fall.

Dated:  August 10, 2020

Respectfully submitted,

 */s/ David D. Cross*
David D. Cross (*pro hac vice*)
John P. Carlin (*pro hac vice*)
Lyle P. Hedgecock (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
LHedgecock@mofo.com
MKaiser@mofo.com
RManoso@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

    /s/ David D. Cross
David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

### CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, a copy of the foregoing **CURLING PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

    /s/ David D. Cross
    David D. Cross

ny-1971649

16