# EXHIBIT A

**NOTICE OF INTENT TO POST A RULE OF THE STATE ELECTIONS BOARD, TITLE 183-1,** *RULES OF STATE ELECTION BOARD*, **CHAPTER 183-1-15,** *RETURNS OF PRIMARIES AND ELECTIONS* **AND NOTICE OF PUBLIC HEARING.**

TO ALL INTERESTED PERSONS AND PARTIES:

Notice is hereby given that pursuant to the authority set forth below, the Georgia State Election Board, (hereinafter "SEB") proposes to amend SEB rule, Rules 183-1-15-.02(2) and 183-1-15-.04 *Returns Of Primaries And Elections* (hereinafter "proposed rule").

This notice, together with an exact copy of the proposed rule amendment and a synopsis of the proposed rule amendment, is being distributed to all persons who have requested, in writing, that they be placed on a distribution list. A copy of this notice, an exact copy of the proposed rule amendment, and a synopsis of the proposed rule amendment may be reviewed during normal business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, except official state holidays, at the Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334. These documents will also be available for review on the State Election Board's web page at https://sos.ga.gov/index.php/elections/state_election_board. Copies may also be requested by contacting the Elections Division at (404) 656-2871.

To provide the public an opportunity to comment upon and provide input into the proposed rule amendment, a public hearing will be held via webinar. To access the public hearing, please use the following link on the date and time provided below:

September 10, 2020
9:00 a.m.
Link: https://attendee.gotowebinar.com/register/5763140083444302607

For members of the public seeking to provide public comment, please use a computer and follow the steps titled "TO USE YOUR COMPUTER'S AUDIO," that are listed in the e-mail. This option allows participants to speak when the meeting is opened up for public comment.

For members of the public seeking to attend the meeting in listen only mode, dial: +1 (562) 247-8422. After dialing in, please dial the Access Code that is provided in the e-mail (757-912-796). All interested parties are invited to attend.

During the public hearing anyone may present data, make a statement, comment or offer a viewpoint or argument whether orally or in writing. Oral statements should be concise and will be limited to two minutes per person. Additional comments should be presented in writing. Lengthy statements or statements of a considerable technical or economic nature, as well as previously recorded messages, must be submitted for the official record on or before Monday, August 31, 2020 to the address below. Written comments must be received on or before Monday, August 31, 2020 and be addressed to Jasmine Shannon by mail to Office of the Secretary of State, Elections Division, 2 Martin Luther King Jr. Drive, S.E., 8th Floor West Tower, Atlanta, Georgia 30334 or by email to jshannon@sos.ga.gov.

The State Election Board will consider the proposed rule during the webinar meeting scheduled to begin at 9:00 a.m. on September 10, 2020 via the following link: https://attendee.gotowebinar.com/register/5763140083444302607.

This notice is given in compliance with O.C.G.A. § 50-13-4.

This 11th day of August, 2020.

*Brad Raffensperger*
Brad Raffensperger
Chairman, State Elections Board

Posted:  August 11, 2020

## SYNOPSIS OF THE PROPOSED RULE OF THE
## STATE ELECTIONS BOARD, TITLE 183-1, *RULES OF STATE ELECTION BOARD*, CHAPTER 183-1-15, *RETURNS OF PRIMARIES AND ELECTIONS*

Purpose: The purpose of the revisions to this rule is to clarify and define the procedures and requirements of preparing and conducting a statewide audit, as well as providing and defining a threshold of what constitutes a vote, by redefining the ambiguous zone.

Main Features: The main features of the revisions of this rule are to identify who participates in the statewide, when a statewide audit is to be conducted, how an audit is selected, and the type of notice that is to be provided to the public regarding the statewide audit. It outlines that an audit shall end once all selected ballots have been audited and the risk limit for the audit has been met. The revisions also identify that a ballot scanner shall be set to tabulate optical scan ballots so that an oval filled-in 20% or higher is considered a vote, an oval filled-in at least 10% but less than 20% will be reviewed by the vote review panel, and ovals filled-in less than 10% shall not be considered a vote.

## DIFFERENCES BETWEEN THE EXISTING RULE AND THE PROPOSED AMENDMENTS OF THE STATE ELECTION BOARD, TITLE 183-1-15, *RULES OF STATE ELECTION BOARD*, RULE 183-1-15, *RETURNS OF PRIMARIES AND ELECTIONS*

NOTE: Struck through text is proposed to be deleted. Underlined text is proposed to be added.

### CHAPTER 183-1-15

**Rule 183-1-15-.02(2) Definition of Vote.**

(1) Lever-type Voting Machines. A vote cast on a lever-type voting machine shall be the choice made by a voter by either operating the lever adjacent to the name of the candidate or answer to a question for which the voter desires to vote or by writing of the name of a qualified write-in candidate on the machine in accordance with the instructions for voting on the voting machine and then recording such votes on the machine by the actuation of the main lever which casts such votes and returns the other levers to their original positions.

(2) Optical Scan Voting Systems.

    (a)    A vote cast on an optical scan ballot marked by hand shall be the choice made by a voter by either:

        1.    Filling in the oval adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

       2.  Filling in the oval adjacent to the appropriate write-in space and writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

(b) In reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), if the voter filled in the oval next to the name of a candidate whose name appears on the ballot and filled in the oval adjacent to the write-in space and wrote the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(c) If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A.§ 21-2-483(g)(2), it appears that there is a properly cast vote and what is clearly a stray mark which has caused the ballot scanner to read the vote for such office as an overvote, the properly cast vote shall be counted and the stray mark shall be ignored.

(d) If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), a voter marks his or her ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the vote review panel as provided in O.C.G.A. § 21-2-483(g)(2)(B), the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

(e) If, in reviewing an optical scan ballot marked by hand, a discrepancy is found between the voter's mark on the ballot that clearly and without question indicated the voter's intent and the result tabulated by the ballot scanner, the voter's mark shall control and be counted. Nothing herein shall be deemed to disallow the use of ballot scanners for tabulation of ballots.

(f) When an optical scan ballot marked by hand contains stray marks or marks which prevent the ballot scanner from properly recording valid votes as determined under this rule and by law, the ballot shall be duplicated in accordance with law to correct such problems and the duplicate shall then be tabulated.

(g) In lieu of manually duplicating a ballot pursuant to paragraph (e), the manual review of ballots with overvotes by vote review panels pursuant to O.C.G.A. § 21-2-483(g) may be done by reviewing a digital image of the ballot and electronically adjudicating the intent of the voter, if such determination is recorded on the digital image of the ballot.

(h) A vote cast on an optical scan ballot marked by an electronic ballot marker shall be the choices indicated by the printed paper ballot.

(i) When an optical scan ballot marked by an electronic ballot marker contains marks added, in addition to what was printed by the electronic ballot marker, the additional marks shall be ignored.

(j) If, in reviewing an optical scan ballot marked by an electronic ballot marker in accordance with O.C.G.A. §§ 21-2-495 or 21-2-498, a discrepancy is found between the voter's choice indicated by the printed text on the ballot and the result tabulated by the ballot scanner, the printed text shall control and be counted. Nothing herein shall be deemed to disallow the use of ballot scanners for tabulation of ballots.

(k) <u>Ballot scanners that are used to tabulate optical scan ballots marked by hand shall be set so that:</u>

<u>1. Detection of 20% or more fill-in of the target area surrounded by the oval shall be considered a vote for the selection;</u>

<u>2. Detection of less than 10% fill-in of the target area surrounded by the oval shall not be considered a vote for that selection;</u>

<u>3. Detection of at least 10% but less than 20% fill-in of the target area surrounded by the oval shall flag the ballot for adjudication by a vote review panel as set forth in O.C.G.A. 21-2-483(g). In reviewing any ballot flagged for adjudication, the votes shall be counted if, in the opinion of the vote review panel, the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.</u>

3) Paper Ballots.

(a) A vote cast on a paper ballot that is not counted by an optical scan system (i.e. in certain municipal elections) shall be a choice made by a voter by either:

1. Placing an "X", a check, or other similar mark in the square adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

2. Writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

(b) If a voter marks his or her paper ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the poll officers as provided in O.C.G.A. § 21-2-439, the voter has clearly and

  without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

 (c) If the voter marked the square next to the name of a candidate whose name appears on the ballot and wrote in the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(4) Write-in Votes. In no event shall votes cast for write-in candidates who have not qualified in accordance with O.C.G.A. § 21-2-133 be counted or recorded.

Authority: O.C.G.A. §§ 21-2-2, 21-2-31, 21-2-133, 21-2-439, 21-2-483

**183-1-15-.04 Audit**
**(1) Preparing for the Audit**
1. Following November general elections in even-numbered years, each county shall participate in a statewide risk-limiting audit with a risk limit of not greater than 10 percent as set forth in this rule prior to the certification by the Secretary of State.
2. Prior to county certification, the election superintendent of each county shall prepare a ballot manifest as instructed by the Secretary of State.
3. The contest to audit shall be selected by the Secretary of State. The Secretary of State shall set a date, time, and location after the November general election in even-numbered years to select which contest to audit. Such meeting shall be open to the public. After selecting the contest to audit, the Secretary of State shall publicly announce which contest will be audited and publish the selected contest on the Secretary of State webpage. In selecting the contest to audit, the Secretary of State shall consider the below criteria:
    a. The closeness of the reported tabulation outcomes;
    b. The geographical scope of the contests;
    c. The number of ballots counted in the contests;
    d. Any cause for concern regarding the accuracy of the reported tabulation outcome of the contests;
    e. Any other benefits that may result from auditing certain contests; or
    f. The ability of the county to complete the audit before the state certification deadline.
4. The audit shall be open to the public, and public notice of the date, time, and location of the audit must be posted on the county election office's website, or, if the county election's office does not have a website, in another prominent location.

**(2) Conducting the Audit**
1. The audit shall be open to the view of the public and press, but no person except the person(s) designated by the election superintendent or the superintendent's authorized deputy shall touch any ballot or ballot container. The election superintendent may designate a viewing area from which members of the public may observe the audit for the purpose of good order and maintaining the integrity of the audit.
2. The election superintendent shall create audit teams comprised of at least two sworn designees to assist with the audit. The superintendent may designate non-employees to assist with the audit process. All persons who the superintendent designates to assist with the audit shall take and sign an oath that they will conduct the audit accurately and securely prior to assisting with the audit.
3. Chain of custody for each ballot shall be maintained at all times during the audit, including but not limited to, a log of the seal numbers on the ballot containers before and after completing the manual audit.
4. For ballots marked by electronic ballot markers, the auditors shall rely on the printed text on the ballot to determine the voter's selection. For ballots marked by hand, the auditors shall rely on the choices indicated by the voter by filling in the oval adjacent to the candidate or question.
5. The audit shall end once all selected ballots have been counted and the risk limit for the audit has been met.
6. The election superintendent shall report the results of the audit to the Secretary of State.
7. The election superintendent shall follow instructions issued by the Secretary of State on how to specifically conduct the audit, including but not limited to setting deadlines and formats for creating ballot manifests.

Authority: O.C.G.A. §§ 21-2-31, 21-2-498

**COPY OF THE PROPOSED NEW RULE**

**CHAPTER 183-1-15**

**Rule 183-1-15-.02(2) Definition of Vote.**

(1) Lever-type Voting Machines. A vote cast on a lever-type voting machine shall be the choice made by a voter by either operating the lever adjacent to the name of the candidate or answer to a question for which the voter desires to vote or by writing of the name of a qualified write-in candidate on the machine in accordance with the instructions for voting on the voting machine and then recording such votes on the machine by the actuation of the main lever which casts such votes and returns the other levers to their original positions.

(2) Optical Scan Voting Systems.

    (a) A vote cast on an optical scan ballot marked by hand shall be the choice made by a voter by either:

        1. Filling in the oval adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

        2. Filling in the oval adjacent to the appropriate write-in space and writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

    (b) In reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), if the voter filled in the oval next to the name of a candidate whose name appears on the ballot and filled in the oval adjacent to the write-in space and wrote the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

    (c) If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A.§ 21-2-483(g)(2), it appears that there is a properly cast vote and what is clearly a stray mark which has caused the ballot scanner to read the vote for such office as an overvote, the properly cast vote shall be counted and the stray mark shall be ignored.

    (d) If, in reviewing an optical scan ballot marked by hand which has been rejected as containing an overvote in accordance with O.C.G.A. § 21-2-483(g)(2), a voter marks his or her ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the vote review panel as provided in O.C.G.A. § 21-2-483(g)(2)(B), the

(e)      voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

(e)      If, in reviewing an optical scan ballot marked by hand, a discrepancy is found between the voter's mark on the ballot that clearly and without question indicated the voter's intent and the result tabulated by the ballot scanner, the voter's mark shall control and be counted. Nothing herein shall be deemed to disallow the use of ballot scanners for tabulation of ballots.

(f)      When an optical scan ballot marked by hand contains stray marks or marks which prevent the ballot scanner from properly recording valid votes as determined under this rule and by law, the ballot shall be duplicated in accordance with law to correct such problems and the duplicate shall then be tabulated.

(g)      In lieu of manually duplicating a ballot pursuant to paragraph (e), the manual review of ballots with overvotes by vote review panels pursuant to O.C.G.A. § 21-2-483(g) may be done by reviewing a digital image of the ballot and electronically adjudicating the intent of the voter, if such determination is recorded on the digital image of the ballot.

(h)      A vote cast on an optical scan ballot marked by an electronic ballot marker shall be the choices indicated by the printed paper ballot.

(i)      When an optical scan ballot marked by an electronic ballot marker contains marks added, in addition to what was printed by the electronic ballot marker, the additional marks shall be ignored.

(j)      If, in reviewing an optical scan ballot marked by an electronic ballot marker in accordance with O.C.G.A. §§ 21-2-495 or 21-2-498, a discrepancy is found between the voter's choice indicated by the printed text on the ballot and the result tabulated by the ballot scanner, the printed text shall control and be counted. Nothing herein shall be deemed to disallow the use of ballot scanners for tabulation of ballots.

(k)      Ballot scanners that are used to tabulate optical scan ballots marked by hand shall be set so that:

1. Detection of 20% or more fill-in of the target area surrounded by the oval shall be considered a vote for the selection;

2. Detection of less than 10% fill-in of the target area surrounded by the oval shall not be considered a vote for that selection;

3. Detection of at least 10% but less than 20% fill-in of the target area surrounded by the oval shall flag the ballot for adjudication by a vote review panel as set forth in O.C.G.A. 21-2-483(g). In reviewing any ballot

flagged for adjudication, the votes shall be counted if, in the opinion of the vote review panel, the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

3) Paper Ballots.

    (a)    A vote cast on a paper ballot that is not counted by an optical scan system (i.e. in certain municipal elections) shall be a choice made by a voter by either:

        1.    Placing an "X", a check, or other similar mark in the square adjacent to the name of the candidate or answer to a question for which the voter desires to vote; or

        2.    Writing the name of a qualified write-in candidate in the appropriate space on the ballot as specified in the instructions for voting such ballot.

    (b)    If a voter marks his or her paper ballot in a manner other than that specified by law and this rule, the votes shall be counted if, in the opinion of the poll officers as provided in O.C.G.A. § 21-2-439, the voter has clearly and without question indicated the candidate or candidates and answers to questions for which such voter desires to vote.

    (c)    If the voter marked the square next to the name of a candidate whose name appears on the ballot and wrote in the name of the same candidate in the write-in space for the same office, the properly cast vote shall be counted and the write-in vote shall be ignored.

(4) Write-in Votes. In no event shall votes cast for write-in candidates who have not qualified in accordance with O.C.G.A. § 21-2-133 be counted or recorded.

Authority: O.C.G.A. §§ 21-2-2, 21-2-31, 21-2-133, 21-2-439, 21-2-483

**183-1-15-.04 Audit**
  **(1) Preparing for the Audit**
  1. Following November general elections in even-numbered years, each county shall participate in a statewide risk-limiting audit with a risk limit of not greater than 10 percent as set forth in this rule prior to the certification by the Secretary of State.
  2. Prior to county certification, the election superintendent of each county shall prepare a ballot manifest as instructed by the Secretary of State.
  3. The contest to audit shall be selected by the Secretary of State. The Secretary of State shall set a date, time, and location after the November general election in even-numbered years to select which contest to audit. Such meeting shall be open to the public. After selecting the contest to audit, the Secretary of State shall publicly announce which contest will be audited and publish the selected contest on the Secretary of State webpage. In selecting the contest to audit, the Secretary of State shall consider the below criteria:
      a. The closeness of the reported tabulation outcomes;
      b. The geographical scope of the contests;
      c. The number of ballots counted in the contests;
      d. Any cause for concern regarding the accuracy of the reported tabulation outcome of the contests;
      e. Any other benefits that may result from auditing certain contests; or
      f. The ability of the county to complete the audit before the state certification deadline.
  4. The audit shall be open to the public, and public notice of the date, time, and location of the audit must be posted on the county election office's website, or, if the county election's office does not have a website, in another prominent location.

  **(2) Conducting the Audit**
  1. The audit shall be open to the view of the public and press, but no person except the person(s) designated by the election superintendent or the superintendent's authorized deputy shall touch any ballot or ballot container. The election superintendent may designate a viewing area from which members of the public may observe the audit for the purpose of good order and maintaining the integrity of the audit.
  2. The election superintendent shall create audit teams comprised of at least two sworn designees to assist with the audit. The superintendent may designate non-employees to assist with the audit process. All persons who the superintendent designates to assist with the audit shall take and sign an oath that they will conduct the audit accurately and securely prior to assisting with the audit.
  3. Chain of custody for each ballot shall be maintained at all times during the audit, including but not limited to, a log of the seal numbers on the ballot containers before and after completing the manual audit.

4. For ballots marked by electronic ballot markers, the auditors shall rely on the printed text on the ballot to determine the voter's selection. For ballots marked by hand, the auditors shall rely on the choices indicated by the voter by filling in the oval adjacent to the candidate or question.
5. The audit shall end once all selected ballots have been counted and the risk limit for the audit has been met.
6. The election superintendent shall report the results of the audit to the Secretary of State.
7. The election superintendent shall follow instructions issued by the Secretary of State on how to specifically conduct the audit, including but not limited to setting deadlines and formats for creating ballot manifests.

Authority: O.C.G.A. §§ 21-2-31, 21-2-498

**[INTENTIONALLY LEFT BLANK]**

**[INTENTIONALLY LEFT BLANK]**