EXHIBIT

14



SECRETARY OF STATE
STATE OF GEORGIA

| | |
|---|---|
| **In the matter of:** : | |
| : | |
| Administrative HAVA Complaint : | Complaint No. SOS2020-01 |
| : | |
| **Coalition for Good Governance,** : | |
| **Complainants.** : | |
| : | |

### FINAL DECISION

### I.

On January 2, 2020, the Coalition for Good Governance ("Complainant") filed an administrative complaint alleging that Georgia's voting system does not comply with Title III of the Help America Vote Act of 2002 ("HAVA"). Specifically, Complainant alleges that the voting system procured by Georgia violates the privacy provisions of Section 301 of HAVA. 52 U.S.C. § 21081(a)(1)(A) and (C). After investigation, review of the evidence submitted by Complainant, and a hearing on the record, the undersigned designee of the Secretary of State determines the Complaint is **UNFOUNDED** and is hereby **DISMISSED**.

### II.

As a condition of receiving HAVA funds, states must "establish and maintain State-based administrative complaint procedures" that allow any person that believes there is a violation of any provision of Title III of HAVA to file a complaint. 52 U.S.C. § 21112(a). The complaint procedures must be uniform and nondiscriminatory. 52 U.S.C. § 21112(a)(2)(A). The hearing shall be on the record if requested by the complainant. 52 U.S.C. § 21112(a)(2)(E). Georgia established

that the Secretary of State, as the chief election official for HAVA purposes, was authorized to promulgate rules and regulations for the HAVA complaint procedures. O.C.G.A. § 21-2-50.2. The Secretary of State promulgated the rule "Administrative Complaint Procedure for Violations of Title III of the Help America Vote Act of 2002" on May 11, 2004 with an effective date of May 31, 2004. Ga. Comp. R. & Regs. 590-8-2-.01.

On March 25, 2020, the Secretary of State designated Ryan Germany, General Counsel for the Office of the Secretary of State, to be his designee as authorized by Ga. Comp. R. & Regs. 590-8-2-.01(4) for the purposes of this complaint.

Complainant requested a hearing on the record. A public conference call hearing was held on March 27, 2020. Complainant was represented by attorney Bruce Brown, who made opening arguments, presented witnesses, and made closing arguments. Complainant had three witnesses testify: Rhonda Martin, Elizabeth Throop, and Marilyn Marks. In addition to the Complaint, the Complainant entered a 254-page consolidated exhibit to the record. The question presented is whether Georgia's voting system meets the requirements of Section 301 of HAVA as they relate to privacy, which are:

> *(a) Requirements. Each voting system used in an election for Federal office shall meet the following requirements:*
> *(1) In general.*
>> *(A) Except as provided in subparagraph (B), the voting system (including any lever voting system, optical scanning voting system, or direct recording electronic system) shall—*
>>> *(i) permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted;*
>>> *(ii) provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error*

> *before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error); and*
>
> *(iii) if the voter selects votes for more than one candidate for a single office—*
>
>> *(I) notify the voter that the voter has selected more than one candidate for a single office on the ballot;*
>>
>> *(II) notify the voter before the ballot is cast and counted of the effect of casting multiple votes for the office; and*
>>
>> *(III) provide the voter with the opportunity to correct the ballot before the ballot is cast and counted.*
>
> ...
>
> *(C) The voting system shall ensure that any notification required under this paragraph preserves the privacy of the voter and the confidentiality of the ballot.*

52 U.S.C. § 21081(a)(1)(A) and (C).

### III.

Following the passage of House Bill 316 in 2019, Georgia procured a new state-wide voting system. The system procured is an optical scan voting system, with in-person voting conducted through electronic ballot marking devices ("BMDs") and tabulating ballot scanners. O.C.G.A. § 21-2-300(a)(3) required Georgia to procure electronic ballot markers and optical ballot scanners that were certified by the United States Election Assistance Commission ("EAC"). The voting system Georgia procured, the Dominion Democracy Suite v.5.5-A was certified by the EAC on January 30, 2019 as conforming to Voluntary Voting System Guidelines Version 1.0 ("VVSG

1.0").[1] A number of VVSG 1.0 voting system requirements concern voter privacy and compliance with the HAVA requirements found in 52 U.S.C. 21081(a)(1)(A) and (C) including: 3.1.7, 3.1.7.1, 3.1.7.2, 4.1.4.1, and 7.9.5. Therefore, by certifying the equipment, the EAC, with the assistance of its independent testing laboratories, determined the Dominion Democracy Suite v.5.5-A voting system meets the privacy requirements of HAVA to their satisfaction.

Complainant's documentary evidence consists of pictures of Georgia's voting system being used in educational demonstrations and at polling places. Complainant's witnesses testified of their experience observing voting where the new voting equipment was being used. They testified as being able to view the screen of the ballot marking devices being used by voters at certain viewing angles and from a distance. Complainant argues that because they were able to see some voters mark their ballots, the voting system therefore violates HAVA "because voters cannot review their voting choices privately and 'confidentially.'" (Compl. Pg. 1.)

Complainant points out that some county election officials have set up and the new voting system in certain polling places in ways that do not adequately protect the privacy of voters. Complainant provided examples of such inadequate setups (Consolidated Exhibit Pgs. 19, 21, 157). However, Complainant's exhibits also show that other polling places have set up the voting system in a way that does protect voter privacy generally, and specifically, "permits the voter to

---

[1] The Voluntary Voting System Guidelines Version 1.0 were adopted by the U.S. Election Assistance Commission in 2005, as required by Section 202 of HAVA. The purpose of the guidelines, according to the EAC, is to "provide a set of specifications and requirements against which voting systems can be tested to determine if they provide all the basic functionality, accessibility, and security capabilities required to ensure the integrity of voting systems." The EAC further states that the VVSG system functional requirements "have been revised to comply with HAVA Section 301 requirements," which is the exact section of HAVA that Complainant asserts the system does not comply with. *See* Voluntary Voting System Guidelines Version 1.0. (2005), available at https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines. (Last accessed March 31, 2020).

verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted." 52 U.S.C. 21081(a)(1)(A). For example, Complaint Exhibit F shows voting machines on the left that are positioned such that the ballot marking device screen cannot be seen by the person taking the photograph outside of the enclosed space. The ballot marking devices in the center of Exhibit F that are facing the camera could have been positioned 180 degrees so that they are facing the back wall. There is plenty of room in this polling place to reposition all of the ballot marking devices in this polling place to face the back wall, which would permit privacy for the voters using those machines. Complainant presents no evidence that the voting system itself does not permit voters to verify their votes in a private and independent manner or that the over-vote notifications required by HAVA do not preserve voter privacy.

More examples of where Georgia's new voting system can be setup in a manner that establishes the voting system privacy requirements of HAVA are seen in Complainant's Consolidated Exhibit 1. Page 8 shows voting booths facing the wall providing sufficient privacy. Page 23 shows other voting booth options (voting booth with curtains) available to county election officials to use that provides voters with increased privacy, even in very small voting locations. Georgia law specifically authorizes voting booths with curtains in O.C.G.A. § 21-2-267(a). Pages 141-142 show voting equipment setup with the booths facing outer walls, providing privacy. Another example of a voting booth setup that provides enhanced privacy is the black cardboard shield on page 17. This shield further limits potential viewing angles, which combined with repositioning voting booths toward walls, permits privacy. But again, evidence that the system can be both properly and improperly set up does not support a HAVA violation. The HAVA requirements refer to the system itself.

The issue of voter privacy using Georgia's new voting system was recently adjudicated by the Superior Court of Sumter County in the case of *Coalition for Good Governance, et al., v. James Gaston, el al.,* No. 20CV00077(S) (Ga. Super. Ct. Mar. 2, 2020). The key issue before the court was "whether it was 'impossible or impracticable' for BMDs to be deployed in a way that (1) protects the absolute secrecy of the ballot while (2) allowing sufficient monitoring of the BMDs in use." Id. at 5. After conducting an emergency hearing, the court found that "Petitioners have failed to carry their burden of proving that it will be 'impossible or impracticable' for Respondents to deploy the BMDs in a manner that protects the secrecy of the ballot while allowing sufficient monitoring. Id. Similarly, Complainant has not shown here that Georgia's voting system does not permit the privacy required under HAVA. The evidence shows that the voting system can be setup in such a way that permits voters privacy in verifying their ballot selections and any notifications on the BMD screen. Evidence that not all possible set ups of the system adequately protect voter privacy is not evidence that the system itself does not permit the privacy requirements set forth in Section 301 of HAVA. As such, Complainants have not met their burden of establishing a HAVA violation.

While Complainants have not presented evidence of a HAVA violation, they have shown that polling places layouts developed by local election officials must be done in a manner that ensures voter privacy, including obscuring the sightlines of observers, poll watchers, and the public such that they cannot view a BMD screen. The Secretary of State has provided a privacy shield to go with every ballot marking device, but the counties are not prohibited from finding privacy solutions that best fit their unique polling place needs. County election officials must provide a private voting experience, and privacy must be considered in all aspects of election administrative

planning including polling place layouts, site selection, poll worker staffing levels, and the appropriate number and size of precincts.

## IV.

The Dominion Democracy Suite v.5.5-A voting system currently in use in Georgia was certified by the EAC on January 30, 2019 as fully compliant with VVSG 1.0, which incorporates the requirements of Section 301 of HAVA. Complainants have presented no evidence that contradicts this fact or calls its accuracy into question. As such, the Complaint is **UNFOUNDED** and is hereby **DISMISSED**.

**SO ORDERED**, this 31st Day of March, 2020

BY: _____
C. Ryan Germany
**General Counsel**
**Office of the Secretary of State**