IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al; | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION |
|  | ) FILE NO: 1:17cv02989-AT |
| BRAD RAFFENSPERGER, et al.; | ) |
| Defendants. | ) |

**FULTON COUNTY DEFENDANTS' RESPONSE TO CURLING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

The Members of the Fulton County Board of Registration and Elections, Mary Carole Cooney, Vernetta Nuriddin, Kathleen D. Ruth, Mark Wingate and Aaron Johnson, (hereafter "Fulton County Defendants") hereby file this Response to Curling Plaintiffs' Motion for Preliminary Injunction. Defendants show that with respect to the Fulton County Defendants, Plaintiffs are not entitled to the equitable relief requested in their Motion for Preliminary Injunction filed on August 19, 2020 for the following reasons:[1]

---

[1] Fulton County Defendants also incorporate the reasons, arguments and citations

# **INTRODUCTION**

Curling Plaintiffs have moved for a preliminary injunction, prohibiting Defendants from using any election system or devices for voting, including the Dominion ballot-marking device ("BMD")-based system that does not use hand-marked paper ballots as the primary method of recording electors' votes in any future elections.[2] Specifically, the Curling Plaintiffs seek an order from this Court directing:

(1) Defendants to conduct elections using hand-marked paper ballots as the primary method of recording the electors' votes;

(2) Defendants to make available at each polling place at least one electronic or mechanical BMD that is in compliance with the Americans with Disabilities Act and Help America Vote Act;

(3) Defendants to provide a minimum of one ballot scanner at each polling place for casting, tabulation and secure storage of voted paper ballots; and

(4) Defendants to file, within 5 days of the entry of the Court's Order, a plan providing specific steps Defendants intend to take to comply with the terms of the Court's Order and to institute pre-certification, post-election, manual tabulation audits of the paper ballots to verify

---

of authority set forth in the State Defendants' Response to Curling Plaintiffs' Motion for Preliminary Injunction.

[2] It should be noted that all of the relief sought in the Curling Plaintiffs' Motion for Preliminary Injunction can only be provided by the State Defendants.

election results, in sufficient detail for the Court to evaluate its adequacy;

[Doc. 785 pp. 1-2].

## PROCEDURAL POSTURE

This action was commenced in 2017 because Plaintiffs, proponents of hand-marked paper ballots, want to dictate how all Georgians cast their votes.

In October 2019, Plaintiffs filed their third round of Motions for Preliminary Injunction [Docs. 619, 640] seeking to bar the use of electronic voting machines and requiring hand-marked paper ballots.

On August 7, 2020 the court entered an Order denying, without prejudice, Plaintiffs' Motion for Preliminary Injunction regarding BMDs. Curling Plaintiffs have now renewed their Motion for Preliminary Injunction. As the court noted in its August 7, 2020 Order, the Plaintiffs' case is a "challenge of the constitutionality of the BMD system and its components." [Doc. 768 p. 11]. Their claims are not against the Fulton County Defendants, and they are seeking to enjoin the use of the statewide system as presently configured.

## FACTS

State law provides that counties, through their Superintendents must conduct elections. O.C.G.A. § 21-2-70. These elections must be conducted in accordance with state law.

As the Court is aware, on April 2, 2019, the Governor of Georgia approved newly enacted state election legislation. (*See* Georgia Act No. 24, Georgia House Bill 316, amending Chapter 2 of Title 21 of the Official Code of Georgia Annotated). This legislation replaces the statewide mandated use of DREs with mandated electronic ballot-marking devices ("BMDs") and optical scanners that count votes recorded on the paper ballots produced via printers attached to the BMDs. The legislation also revises various voting procedures and provides requirements for expanded auditing of the balloting system and results.

O.C.G.A. § 21-2-300(a)(1) provides:

> The equipment used for casting and counting votes in county, state, and federal elections **shall be the same in each county in this state** and shall be provided to each county by the state, **as determined by the Secretary of State**. [Emphasis added].

Accordingly, the Fulton County Defendants have implemented and are currently utilizing the new statewide BMD-based voting system. This system was utilized in the June 9, 2020 Presidential Preference Primary, General Primary, Nonpartisan General, and Special Election. After preparing, staffing, and conducting the June 9, 2020 election, the Fulton County Defendants prepared, staffed and conducted the August 11, 2020 general primary and runoff election, using the new system.

The Fulton County Defendants are currently preparing, staffing and conducting the September 29, 2020 special election for the 5th U.S. Congressional District. After preparing, staffing, conducting, and certifying the September 29, 2020 special election, Fulton County Defendants will then begin to staff and conduct the November 3, 2020 general and special election. All of the staffing, training, and elections are being conducted via the BMD-based system.

## Standard for Granting Preliminary Injunctions

In order to obtain preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65, the moving party must show: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Injunctive relief "is an extraordinary and drastic remedy, not to be granted unless the movant clearly established the 'burden of persuasion'" as to **each of the four prerequisites***." Id.; McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (internal citations and quotations omitted); see also *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (injunctive relief "is the exception rather than the rule," and movant must clearly

carry the burden of persuasion). In order to be entitled to injunctive relief, plaintiffs must meet the burden of persuasion on all four of the delineated factors. *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 435 (5th Cir. 1981).

## ARGUMENT AND CITATION OF AUTHORITY

**A.   Plaintiffs Have Failed to Establish that They Are Entitled to a Preliminary Injunction.**

Injunctive relief such as that requested by Plaintiffs has been held to be "an extraordinary and drastic remedy [that is] not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiffs' Motions for Preliminary Injunction, even when considered in tandem with all other pleadings of record in this matter, fail to present this Court with any evidence as to the four prerequisites for the issuance of the requested injunctions. *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 435 (5th Cir. 1981).

Plaintiffs have provided this Court with no evidence as to the likelihood that their underlying claims will succeed on the merits or that this Court's refusal to issue the requested orders would cause them any harm, much less irreparable harm. Discovery is proceeding and evidence may be uncovered or gathered as the case moves toward a trial on the merits. However, at this point in the litigation; the

preliminary injunction stage, Plaintiffs simply do not have evidence to support the relief they are requesting.

Plaintiffs have failed to support their theories and allegations with any evidence that the alleged future potential injury to Plaintiffs outweighs the harm to Defendants and the citizens of all of Georgia's 159 counties, if the requested order is issued. Plaintiffs have also downplayed the impact of the requested injunction and ignored the public interest.

### 1. Plaintiffs Have Not and Can Not Show a Likelihood of Success on the Merits.

Plaintiffs have not shown a likelihood of success on the merits in the case. Plaintiffs are alleging infringement on their right to vote, resulting in violations of the Fourteenth Amendment of the U.S. Constitution. However, Plaintiffs have not cited any case law to support their argument that the BMDs are unconstitutional.

A potential vulnerability does not amount to a constitutional violation. In fact, even if there were actual proven irregularities present in Georgia's voting system, this would not rise to the level of a constitutional violation. The Constitution does not mandate flawless or perfect elections. *Bodine* v. *Elkhart County Election Board*, 788 F.2d 1270, 1272 (7th Cir. 1986). Absent invidious discrimination or "fraudulent interference with a free election by stuffing the ballot

box," voter irregularities do not amount to constitutional violations. *Pettengill v. Putnam County R-1 School District*, 472 F.2d 121, 122 (8th Cir. 1973).

Further, Georgia courts have upheld the use of voting machines; therefore, Plaintiffs are not likely to succeed on the merits. *See Favorito v. Handel*, 285 Ga. 795 (2009). In *Favorito*, the Georgia Supreme Court rejected a constitutional challenge to the use of DRE machines for Georgia elections. In so doing, the Court held that voters are not entitled to have their votes cast and tabulated in a particular manner. Id. at 797. Plaintiffs assert that various persons agree that Georgia's system is susceptible, but this "consensus" is not evidence that anyone's constitutional rights have been violated, and does invalidate *Favorito* controlling Georgia law regarding Georgia elections.

### 2. Plaintiffs Cannot Show that They Will Suffer Irreparable Harm.

Plaintiffs are not entitled to a preliminary injunction based on theories alone. First, not every alleged constitutional violation regarding voting rights constitutes an irreparable injury. *See, e.g., Greater Birmingham Ministries v. State,* 161F.Supp.3d 1104, 1117 (N.D. Ala. 2016). Second, "Plaintiffs' allegations that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-

fact." *Stein v. Cortes,* 223 F.Supp.3d 423, 432 (E.D. Pa. 2016), citing *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 133 S.Ct. 1138, 1148 (2013).

Throughout the course of this litigation, neither Curling Plaintiff, nor any Plaintiffs' expert, has shown that there has in fact been a hacking or incursion into the State's system that has caused any harm, let alone caused irreparable harm. "[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). The Plaintiffs should not now be heard to complain that they will suffer irreparable harm if this Court does not grant them a preliminary injunction halting the operation of a duly-enacted State statute that designates the manner of voting within the State of Georgia.

Plaintiffs have failed their burden to show irreparable harm. Indeed, allowing elections to proceed with the use of BMD machines does not prevent Plaintiffs from securing the relief that they ultimately seek (i.e., use of paper ballots that are verified via optical scanners). This relief is available to each and every person who seeks to take advantage of the absentee voting process. If Plaintiffs want to vote through the use of paper ballots, they can request an absentee paper ballot without the need of disrupting ongoing election preparation. O.C.G.A. §21-2-381; *Favorito*, 285 Ga. at 798.

All Georgia voters "have the option of casting an absentee ballot or using the touch screen electronic voting machines on Election Day." *Favorito,* 285 Ga. at 798. Plaintiffs cannot possibly show irreparable harm when they may easily cast the paper ballot they perceive as more secure. O.C.G.A. § 21-2-380(b).

Not every alleged constitutional violation regarding voting rights constitutes irreparable injury. *See, e.g., Greater Birmingham Ministries v. State*, 161 F.Supp.3d 1104, 1117 (N.D. Ala. 2016). "Plaintiffs' allegations that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-fact." *Stein v. Cortes*, 223 F.Supp.3d 423, 432 (E.D. Pa. 2016), citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 1148, 185 L.Ed.2d 264 (2013). Because of the *sine qua non* of injunctive relief, absent evidence that Georgia's BMD machines—much less the individual votes of these Plaintiffs—will be manipulated in any future Georgia election, Plaintiffs' failure to show substantial likelihood of irreparable injury, especially when they have ample time to exercise their right to vote by paper absentee ballots, as many apparently will, is fatal to their quest for an injunction.

### 3. Plaintiffs Have Failed to Show that the Threatened Injury Outweighs the Harm to the Defendants.

Plaintiffs have also failed to establish that the balance of equities tips in their favor.  The Supreme Court has long recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

In contrast to the lack of injury to Plaintiffs outlined above, requiring the counties to not use BMD machines in the upcoming elections would cause significant administrative upheaval, disruption of the election process, extreme financial cost, voter disenfranchisement and voter confusion.  These outcomes, in turn, would undermine voter confidence in the electoral process, the integrity of that process, and trust in the governmental entities and officials who administer the electoral system.  Plaintiffs assert that they are seeking to protect the integrity of the voting system, but the requested relief, haphazardly being applied to the

upcoming election, would have the opposite effect. The Fulton County Defendants are already preparing for the election via the current statewide system.

On a motion for preliminary injunction, the Plaintiffs bear the burden of showing that the perceived injury outweighs the damages that the preliminary injunction might cause to the defendants. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). Here, the harm to Defendants is significant. An injunction would interfere with the County election processes which are already being planned and would require Fulton and other counties to expend additional taxpayer dollars. Plaintiffs make casual assertions that the switch to paper ballots could be quickly and easily achieved.

Plaintiffs' demands are unlike injunctions that would merely require the State to refrain from implementing a newly-enacted law or requiring the continuation of a familiar procedure as the status quo pending a decision on the merits of a new one. *Cf. League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 247-48 (4th Cir. 2014) (finding balance of equities leaned towards plaintiffs because challenged changes to North Carolina's voting laws involved systems that "have existed, do exist, and simply need to be resurrected" or "merely require[d] the revival of previous practices or, however accomplished, the counting of a relatively small number of ballots"). Instead, Plaintiffs seek an

injunction requiring the 159 counties to expend considerable resources to implement paper ballots even though Plaintiffs have provided no evidence that the BMD system is susceptible or doesn't accurately record the votes of electors.

No balloting system is perfect. Traditional paper ballots, as became evident during the 2000 presidential election, are prone to over-votes, under-votes, "hanging chads", and other mechanical and human errors that may thwart voter intent. *See generally, Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). Meanwhile, touchscreen voting systems remedy a number of these problems, albeit at the hypothetical price of vulnerability to programming "worms." The unfortunate reality is that the possibility of electoral fraud can never be *completely* eliminated, no matter which type of ballot is used. *Hennings v. Grafton,* 523 F.2d 861, 864 (7th Cir.1975). Plaintiffs' speculation that a paper balloting system would eliminate potential third-party interference with voting ignores reality. Again, no election system is flawless. *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003) ("The unfortunate reality is that the possibility of electoral fraud can never be *completely* eliminated, no matter which type of ballot is used.") (emphasis in original); *Favorito v. Handel*, 285 Ga. at 797 (voters do not have a right to a particular ballot system). Plaintiffs are naïve to think paper ballots do not have tradeoffs and problems, just of different types, gravities and levels of

risk. *See* (Testimony of Cathy Cox at September 12, 2018 hearing, Transcript at p. 284) [Doc. 307].

"There [is] no guarantee that the [Plaintiffs'] proposed remedy, i.e. the implementation of specific security measures and a paper ballot option, would [result], in fact, in a 'secure' election." *See, e.g. Schade v. Maryland Board of Elections*, 930 A.2d 304, 327 (Md. App. 2007) (denying preliminary injunction against use of DRE machines or use without paper trail, saying "[n]o system is infallible"). "[I]t is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems." *Favorito*, 285 Ga. at 797-798. The balance of the equities favors shielding the voters from the chaos and disruption of an injunction so that the State's interest and the counties' role in promoting fair and orderly elections are respected.

### 4. Plaintiffs Have Failed to Show that Granting the Proposed Injunctive Relief Would Serve the Public Interest.

If granted, the relief sought by Plaintiffs would not serve the public interest. The State of Georgia has used an electronic voting system for decades. As the Court is aware, the Secretary of State has recently implemented the use if the statewide BMD - based system. This system has been in place for all elections beginning in 2020. The Curling Plaintiffs have asked the Court to grant a preliminary injunction prohibiting the Defendants from conducting any further

elections through this system. After the recent transition to the BMD system, the change to a third distinct system would cause significant administrative upheaval, voter confusion and unnecessary costs on the County and its citizens. The right to vote and the right to fair and accurate elections belong to every citizen of the State of Georgia, not only to this group of Plaintiffs. The public interest does not lie in simply changing to paper ballots for future elections after implementing a new system this year.

Plaintiffs raise only spectral fears that BMDs will be hacked and votes miscounted. A theoretical possibility that a voting machine somewhere in the State might be susceptible to tampering is outweighed by the State's legitimate interest in protecting its elections from the mad scramble that would ensue if the Plaintiffs' motions were granted.

Mandating paper ballots by preliminary injunction "ha[s] the potential to cause voter confusion, particularly when implemented at such a late date in the election process." *Schade*, 930 A.2d at 327. It would also force the Georgia counties to absorb the costs in terms of implementation, education and training. Fulton County urges the Court "to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or

embarrassing demands on a State in adjusting to the requirements of the court's decree." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

**B.    Fulton County Defendants Cannot Provide the Relief Plaintiffs Are Seeking in Their Motion for Preliminary Injunction.**

The Curling Plaintiffs do not explicitly state that their motion for preliminary injunction and requested fees is brought only against the State Defendants.[3]  However, the requested relief can only be provided by the State Defendants and use of the statewide BMD-based system has been mandated by the Secretary of State and not by the Fulton County Defendants.  [Doc. 785 pp. 1-2].

The counties are directed by the State in how they conduct elections.  *See Fair Fight Action, Inc. v. Raffensperger*, et al., 413 F. Supp. 3d 1251 (N.D. Ga. 2019, wherein the Court reasoned that "by virtue of their offices as Secretary of State (and his role as the State's Chief Election Official (O.C.G.A. § 21-2-50(b)) and members of the State Election Board (who have a statutory duty pursuant to O.C.G.A. § 21-2-31(10) to take "such ... action, consistent with law, as the board may determine to be conducive to the fair, legal, and orderly conduct of primaries and elections)."   It is this statutory duty that causes the counties to follow the direction of the State when it comes to running elections in the State of Georgia.

---

[3] Plaintiffs often lump all defendants together, suing "Defendants" rather than specifying any articulable claim against the Fulton County Defendants.

16

Further, the Secretary of State of Georgia "is statutorily charged with the supervision of all elections in this State." *Smith v. DeKalb*, 288 Ga. App. 574, 576 (2007). The State creates the rules for conducting elections and the counties simply carry out these rules. State law provides that counties, through their Superintendents must conduct elections. O.C.G.A. § 21-2-70. These elections must be conducted in accordance with state law.

Pursuant to O.C.G.A. §§ 21-2-70 and 21-2-300, and the Court's August 15, 2019 Order, the Fulton County Defendants are required to conduct elections after December 31, 2019 using the newly-legislated statewide BMD-based voting system. The Fulton County Defendants are merely following Georgia Law as required in conducting elections and are constrained to follow Georgia law and this Court's order, when conducting elections in the future.

This motion for preliminary injunction is essentially a fourth bite at the apple. The instant motion is tantamount to an attempt to enjoin this Court's August 15, 2019 Order. This Court issued a ruling on August 15, 2019 with respect to the manner in which elections would be conducted throughout the State of Georgia in 2019 and 2020, if the new election system was not timely dispatched. However, the new system has been timely implemented.

This Motion for Preliminary Injunction is improper and as the Court indicated in its August 7, 2020 Order, the Plaintiffs are now attempting to bring in a "host of issues . . . that are not embraced within the ambit of this specific case." [Doc. 768 p. 11].

Consequently, the Fulton County Defendants state that they will conduct elections presently and in the future in the manner in which this Court and the State of Georgia have mandated.  Pursuant to the Court's previous Order, the Fulton County Defendants will be conducting future elections via Georgia's new statewide BMD-based voting system, the same as  the 158 other counties in the State of Georgia.  Thus, Plaintiffs request for preliminary injunction must fail as to the Fulton County Defendants.

## CONCLUSION

For all of the above reasons, the Fulton County Defendants respectfully request that they be allowed to conduct current and future elections via Georgia's new statewide BMD-based voting system.

Respectfully submitted this 26th day of August, 2020.

**OFFICE OF THE COUNTY ATTORNEY**

**/s/ David R. Lowman**
David Lowman
Georgia Bar Number: 460298

david.lowman@fultoncountyga.gov
Kaye Burwell
Georgia Bar Number:   775060
kaye.burwell@fultoncountyga.gov
Cheryl Ringer
Georgia Bar Number: 557420
cheryl.ringer@fultoncountyga.gov

ATTORNEYS FOR DEFENDANTS MARY CAROLE COONEY, VERNETTA NURIDDIN, MARK WINGATE, KATHLEEN RUTH, AARON JOHNSON, AND THE FULTON COUNTY BOARD OF REGISTRATION & ELECTIONS

**OFFICE OF THE COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
P:\CALitigation\Elections\Curling, Donna v. Kemp, Brian (Curling II) 1.17-CV-02989-AT- (DRL)\Pleadings\08.26.20 DEF's RESP to Curling PLTF's MOTION for Preliminary Injunction.doc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al; | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION |
| | ) FILE NO: 1:17cv02989-AT |
| BRAD RAFFENSPERGER, et al.; | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing **FULTON COUNTY DEFENDANTS' RESPONSE TO CURLING PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system, with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all attorneys of record.

This 26th day of August, 2020.

**/s/ David R. Lowman**
Georgia Bar Number: 460298
David.lowman@fultoncountyga.gov

20