1      IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF GEORGIA
2                ATLANTA DIVISION

3

4   DONNA CURLING, ET AL.,           :
                                     :
5            PLAINTIFFS,             :
    vs.                              :   DOCKET NUMBER
6                                    :   1:17-CV-2989-AT
    BRAD RAFFENSPERGER, ET AL.,      :
7                                    :
             DEFENDANTS.             :
8

9

10       **TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

11          **BEFORE THE HONORABLE AMY TOTENBERG**

12             **UNITED STATES DISTRICT JUDGE**

13                 **AUGUST 28, 2020**

14                   **3:05 P.M.**

15

16

17

18

19

20

21   *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

22              *TRANSCRIPT PRODUCED BY:*

23

    *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
24                                    *2394 UNITED STATES COURTHOUSE*
                                      *75 TED TURNER DRIVE, SOUTHWEST*
25                                    *ATLANTA, GEORGIA  30303*
                                      *(404) 215-1383*

```
 1           A P P E A R A N C E S   O F   C O U N S E L

 2                      (SPEAKING ONLY)

 3

 4    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
      SCHOENBERG:
 5

 6         DAVID D. CROSS
           MORRISON & FOERSTER, LLP
 7

 8
      FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
 9    WILLIAM DIGGES, III, AND RICARDO DAVIS:

10

11         BRUCE BROWN
           BRUCE P. BROWN LAW
12

13    FOR THE STATE OF GEORGIA DEFENDANTS:

14
           BRYAN P. TYSON
15         TAYLOR ENGLISH DUMA

16
      FOR THE FULTON COUNTY DEFENDANTS:
17

18         CHERYL RINGER
           OFFICE OF THE FULTON COUNTY ATTORNEY
19

20    FOR THE THIRD PARTY, DOMINION VOTING SYSTEMS:

21
           J. MATTHEW MAGUIRE, JR.
22         PARKS CHESIN & WALBERT

23

24
      ***There were many other counsel present on the phone call but
25    not listed on this appearance page.
```

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; August 28, 2020.)**

THE COURT:  Hi.  This is Judge Totenberg.  We have 24 people on the phone call.  That is a lot of people.  I can't hear anybody.

MR. BROWN:  Hello, Judge Totenberg.

THE COURT:  Hi.

MR. CROSS:  Hello, Your Honor.

COURTROOM DEPUTY CLERK:  Good afternoon, Judge.  This is Harry.  Would you like me to call the case?

THE COURT:  Yes.  We don't have to identify 24 people though.  We can identify on each side who is going to be speaking.

COURTROOM DEPUTY CLERK:  Right.  I've got that.  I'll identify who is speaking.

THE COURT:  Okay.

COURTROOM DEPUTY CLERK:  Good afternoon, everyone. We're here on the teleconference in the case of Curling vs. Raffensperger, Civil Action Number 17-CV-2989.

Judge, this afternoon for the State of Georgia, we have speaking Mr. Bryan Tyson.  For Curling, we have Mr. David Cross.  For the Coalition, we have Mr. Bruce Brown.  So far, nobody has identified themselves for Fulton County.

Is Fulton County on the call?

Okay.  And, Judge, we haven't had anybody appear for

1    Dominion yet either.  I believe Mr. Tyson has something he

2    would like to say on that matter.

3              MS. RINGER:  Mr. Martin, can you hear me?

4              COURTROOM DEPUTY CLERK:  Yes, I can.

5              MS. RINGER:  This is Cheryl Ringer on behalf of

6    Fulton County.  But I'm just here in a listening capacity.

7              COURTROOM DEPUTY CLERK:  Thank you.

8              MR. MAGUIRE:  This is Matt Maguire on behalf of

9    Dominion Voting.  I just got wind of this a minute or two ago.

10   But I am here.

11             THE COURT:  Okay.

12             COURTROOM DEPUTY CLERK:  Thank you, Mr. Maguire.

13             THE COURT:  Thank you.  Well, I'm sorry on a Friday

14   to give a fire alarm call.  But I was just shocked -- in

15   looking at the discovery statement, I just was really just

16   trying to understand basically how -- the information is

17   confusing -- a little confusing and not clear to me about what

18   the State is saying.

19             You'll be satisfied with one thing but not another

20   thing in terms of the Dominion equipment.  And the information,

21   as I at least infer from the plaintiffs, is that they cannot

22   purchase the equipment right now either directly from Dominion

23   or through some other entity.  But then I hear from reading the

24   discovery statement from the State that this can be done and

25   perhaps the State is agreeing to it as long as the same

1    protocol that we used in other states or other -- by other

2    experts and you -- but not knowing what exactly those are and

3    how this relates to exactly the dispute at this juncture, I'm

4    confused.

5         I mean, I understand the reason why this didn't arise

6    earlier is because obviously the plaintiffs believed they were

7    going to be able to purchase it themselves.  But -- so I just

8    want to -- so I just want to get to the heart of this and not

9    go in circles about it.

10        So what is the business about the protocols that you

11   are saying you would agree if X happened?

12        MR. TYSON:  Your Honor, Bryan Tyson for the

13   Secretary.  So I think the kind of root of this is, as we

14   mentioned, Number 1, we don't believe there is a discovery

15   request pending about this.  But I think the root of the

16   problem itself is all of our equipment that the State has is

17   being used for an election and/or as I see from what was filed

18   this afternoon the plaintiffs now saying that they have --

19   Fulton County is willing to loan them a BMD.  I'll set aside

20   what issues may be there.  But any equipment that leaves a

21   county the State is going to have to acceptance test it back

22   before it can be used in an election again.

23        And so in terms of the logic and accuracy testing and

24   all those pieces, any piece of the equipment that is being used

25   in the Georgia elections we do object to having that be

1   provided.  That being said, we are totally fine if Dominion is

2   able to reach an agreement with the plaintiffs and have them do

3   whatever testing they can agree on.  We're not going to stand

4   in the way of that.  Dominion has had other litigation in other

5   states involving their voting equipment.  There has been

6   protocols in place.  Those protocols usually involve -- and

7   Mr. Maguire can probably speak to this more than I can -- but

8   involve, you know, videoing what happens, who can touch the

9   equipment, what kind of tests can be performed, those types of

10  things, as opposed to just handing somebody a piece of

11  equipment and letting them tinker with it for weeks on end.

12          Again, this is just in a very different posture.

13  When the plaintiffs filed their amended complaint, they

14  represented to the Court that this is -- that these machines

15  are problematic.  Unlike the DREs, they had apparently never

16  had anybody lay hands on them.

17          So we don't object to Dominion and the plaintiffs

18  working out some sort of inspection protocol with this.  But we

19  don't see a way we can provide any of the equipment that is in

20  use in Georgia for the election for them to conduct whatever

21  inspection or testing they are looking to do.

22          THE COURT:  Mr. Cross, what is wrong --

23          MR. CROSS:  Yes, Your Honor.

24          THE COURT:  -- with just simply -- is there a problem

25  in securing this from Dominion?  I sort of have the

1    understanding that Dominion felt it could not do this without

2    the State's consent.  But the State is saying it would do it.

3    It wouldn't object if there were protocols.

4              Is there a problem with that?

5              MR. CROSS:  So, Your Honor, Mr. Maguire for --

6              THE COURT:  I'm sorry.  Excuse me.

7              MR. CROSS:  I'm sorry.  Can you hear me, Your Honor?

8              THE COURT:  Yes, I can.

9              MR. CROSS:  This is Davis Cross.

10             Mr. Maguire represents Dominion.  And I connected

11    with him briefly this afternoon.  They -- he has indicated that

12    he is going to talk to his client about whether they can make

13    equipment available and, if they would, under what

14    circumstances and at what timing.

15             So there are two concerns we have.  One is how

16    quickly we could do that, given we have just begun a discussion

17    with them and, two, the protocol, as he suggested, along the

18    lines of what Mr. Tyson indicated, such as videoing anyone who

19    is involved with it creates challenges in a litigation context

20    where, you know, we need our expert to be able to do the normal

21    type of analysis, much of which would be protected from

22    discovery.

23             But it really comes down to speed.  And Mr. Brown is

24    in a better position to speak about Fulton County.  In our

25    mind, this should be simple.  Fulton County has indicated that

1    they are willing to give us -- loan us a BMD for the period we

2    need for a few weeks which would enable our experts to analyze

3    it, analyze exactly what is used in the State, which will avoid

4    arguments later about whether it is really the same as what is

5    used in the State, which we have faced in the past.  They just

6    need an order from Your Honor or they need approval from the

7    State because of the position the State has taken.

8            And that is something that it sounds like we could

9    get done -- and Mr. Brown -- I will ask him to speak to it

10   because he is closer to it.  But it seems like that could

11   happen really quickly as opposed to getting bogged down in days

12   or weeks in negotiations with Dominion.

13           THE COURT:  All right.  Let's just take one thing at

14   a time though.  The thing is, Mr. Brown, you are saying this

15   about Fulton County.  But the State is saying it will -- as I

16   understand, it won't agree even to a loan.

17           Is that -- Mr. Tyson?

18           MR. TYSON:  Yes, Your Honor.  That is correct.  Just

19   because of what we have to do to get it back and to be able to

20   use it in an election.  Essentially, if it is loaned out, we

21   don't see a way we can get it back into the use of this

22   election.

23           THE COURT:  Well, you think that -- for a runoff

24   election in August, you are claiming that?

25           MR. TYSON:  No, Your Honor.  For the November -- for

1    the November elections.  The process for November begins as

2    we -- I believe it was one of the declarations filed yesterday

3    or the day before.  But the database-building for that and then

4    the logic and accuracy testing for those is going to begin

5    almost immediately.

6              And while there may be some BMDs that are owned by

7    the counties, almost all the BMDs are owned by the State.  They

8    are not the counties to just be handing out to people who might

9    want to look at them.  I also have not had a chance to confirm

10   yet if there are any additional agreements with Dominion

11   regarding, you know, who can have access to the equipment.

12             There are a number of State Election Board rules

13   about who can have access to the equipment that we have cited.

14   The counties just handing a BMD to a third party -- they would

15   be in violation of those State Election Board rules.

16             MR. CROSS:  Your Honor, this is David Cross.  Just

17   two brief things.  One, the acceptance testing that they are

18   talking about, my understanding is that takes all of about ten

19   minutes.  And they are talking about --

20             THE COURT:  Well, you are saying why -- what -- I

21   mean, it is curious to me that it would take maybe not ten

22   minutes.

23             But why -- why -- what are you -- how long is the

24   State saying it will take?

25             MR. TYSON:  Your Honor, I don't know the specific

1    time period that it will take.  But given the circumstances and

2    the fact that plaintiffs obviously want to get access to these

3    machines to do their own testing on them, I would expect we

4    would need to be very certain that nothing had been loaded or

5    modified on the system before we put it back into -- into the

6    election system.

7         I can get a specific time line if that would assist

8    Your Honor.  But the logic and accuracy testing process for

9    November is about to be underway as soon as the databases get

10   built.

11        So, again, I don't -- I'm just -- I can get you a

12   specific time line.  I just don't know.  I can't say right here

13   right now that we would need X number of days to do this --

14             MR. CROSS:  Your Honor --

15             MR. TYSON:  -- or hours or minutes.

16             MR. CROSS:  -- this is David Cross.  The other thing

17   that we had proposed that we thought would help expedite this

18   is we're perfectly happy to pay to replace the machine.  And so

19   we can get a machine from Fulton County right now or as quickly

20   as Fulton County can do that, get going with our assessment,

21   and in parallel Dominion can just ship a new BMD to Fulton

22   County to replace that one and they don't have to worry about

23   anything we do to the one we're getting.

24        In other words, we're not getting bogged down in

25   trying to deal with negotiations or, frankly, putting --

1    imposing on Dominion to have to deal with us.  They would just

2    send a new machine to the State or to Fulton County, which I

3    suspect could happen quite quickly.  And we will pay for that

4    at the prices that we at least have seen.  We need to confirm

5    that.  But what we see online, these are prices that are hefty.

6    But we will cover it, if we have to.

7            MR. BROWN:  Your Honor, this is Bruce Brown.  Fulton

8    County has indicated that they are willing to loan us a BMD for

9    a couple of weeks for the purposes of testing provided that we

10   pay for the acceptance testing and that if something happens in

11   the acceptance testing that is not acceptable that we will pay

12   for the BMD.

13           And we have indicated that those terms are

14   acceptable.  And by we, I'm referring to the plaintiffs

15   collectively.  We're not -- we're one unit for the purposes of

16   this call.

17           And in terms of the logistics of this, as Your Honor

18   is aware, Fulton County and Dekalb and Clayton, I guess, are

19   putting on an election for John Lewis' -- the special election

20   for John Lewis' predecessor.  However, that doesn't cover all

21   of Fulton County.  And so there are -- there is equipment that

22   is available for that purpose.

23           And so we provided that we -- since there doesn't

24   seem to be any basis for an objection if we're willing to

25   replace -- purchase a replacement for the machine, we think the

1    issue is resolved, frankly.

2         THE COURT:  Well, except for the fact that the State

3    says they won't -- they could be authorized -- Fulton County --

4    under their regulations to do it, to loan it necessarily.

5         MR. BROWN:  I'm hearing two things.  And one is --

6    this is Bruce Brown, again.  One thing from the State is they

7    won't stand in the way.  And then it seems like they are also

8    standing in the way or not getting out of the way.  And I'm

9    just not sure which -- which one it is.

10        MS. RINGER:  Your Honor --

11        MR. TYSON:  This is Bryan -- I'm sorry.

12        MS. RINGER:  This is Cheryl Ringer.  I was going to

13   chime in a little bit.

14        Though we're trying to be cooperative with

15   plaintiffs, we do have a concern that there is an allegation

16   that we have -- in providing the equipment that we would be

17   violating the SEB rules.  Fulton County -- as we just had a

18   hearing yesterday in front of the SEB.

19        So if there is a way for us to work things out where

20   we do get Dominion to set the protocols and then have the State

21   consent, that would be preferable to Fulton.

22        THE COURT:  Are the plaintiffs able to talk further

23   with counsel this afternoon for Dominion about the protocols

24   and how long this would take?

25        I mean, I feel like I'm in a -- hampered by not

1    knowing if that really is a lengthy process or not.

2            MR. CROSS:  Yes, Your Honor.

3            THE COURT:  If there are already protocols that they

4    have, why -- and -- and the -- and Dominion is not being

5    blocked by the State in selling one to you, I don't know what

6    the problem would be, as long as it can move forward extremely

7    expeditiously.

8            I mean, I've --

9            MR. MAGUIRE:  This is --

10           THE COURT:  Yes.  Go ahead.

11           MR. MAGUIRE:  I'm sorry.  This is Matt Maguire on

12   behalf of Dominion.  We haven't -- we haven't received a formal

13   request for the access to the machines.

14           I got an email from Mr. Cross on Wednesday.  I

15   responded -- Wednesday afternoon.  I responded first thing on

16   Thursday.  We didn't actually get connected until today.

17           I have since spoken with my client very briefly.  All

18   I know -- and I am -- I represent Dominion in connection with

19   the procurement with the State of Georgia.  I do not do their

20   voting -- I don't do this for them in other states.  So I'm

21   just kind of getting up to speed now.

22           I know that other protocols have been used in the

23   past, and I know that they involve videotaping and somebody

24   from Dominion being present and possibly even operating the

25   machine.  I'm trying to get more clarity on that.

1          I'm happy to continue talking with Mr. Cross.  But I

2     don't have the information I need yet.

3          THE COURT:  All right.  Well, I think that would be

4     difficult to have Dominion's person operating the machine.  I

5     think it would defeat the whole purpose of evaluating the

6     machine.  Maybe that is what other experts have done and -- but

7     I think that would be difficult.

8          But I -- I am absolutely willing to go forward at

9     gangbuster speed in resolving this.  I think it is important.

10    Because even if they are not going to -- not likely to get

11    ballot relief, it may be very important -- relevant to your --

12    obviously your claims relevant may be at the date of the -- at

13    the point of the election.  I don't know.  I have no idea.

14         But I just -- but I'm -- so it is not satisfactory,

15    on one hand, for the State to block you in all ways with one

16    machine.  I know we have seen and heard about these -- enough

17    about the acceptance testing that it is -- while it may not be

18    ten minutes, it is not sort of the lengthy process that would

19    be implied by the objection.

20         And if it is being paid for, that is a whole other --

21    that is a whole other additional issue that would be helpful.

22    Because obviously Dominion's folks may be also involved in the

23    acceptance testing.

24         But -- but to me, you know, we just don't exactly

25    have the facts.  And certainly since there are other people,

1     including the expert in Texas who evaluated it -- I realize it

2     is a slightly different machine.  And if these protocols exist,

3     I think I need to know what the story is about that.

4            And, you know, if -- my understanding was Dominion

5     didn't want to do it without the State's consent.  So if it is

6     going to be a lengthy process, then I have to think about plan

7     B.

8            But it is Friday, and it is 3:24.  So I'm going to

9     just say -- I mean, I will set this for a hearing again on

10    Monday.  But I -- I think you-all need to talk some more.

11           I mean, I -- one machine is -- just cannot be the

12    hullabaloo that is being involved here.  But at the same time,

13    I can understand Fulton County being nervous about the State

14    saying you violated the regulations.

15           I don't -- you know, most things there are -- you can

16    get approval even when you are telling me -- the State's

17    counsel was telling me that it requires State approval.  But

18    that doesn't mean it can't happen.

19           Obviously, what's happened here is in part that the

20    plaintiffs thought they could just purchase one and they could

21    not, as it turns out.  And because also for a long time we did

22    not have discovery.  And I don't think they delayed about that.

23    But, you know, maybe the Court's late ruling on this obviously

24    has impacted it.

25           But there was a lot of -- they thought they were

1   going to be able to do this.  It is just not -- of all the

2   things, this is not the most -- most difficult.

3          I do understand that there are issues that the State

4   has that are legitimate too.  But you-all need to talk some

5   more.  And I think that the plaintiffs' counsel needs to talk

6   also some more in understanding what -- exactly what this --

7   the conditions of the sale would be and the protocols

8   operationally.  Because I can't believe the experts who

9   evaluated any of the other BMDs would have agreed to some of

10  the -- a condition of being -- somebody else running the

11  machine and other people evaluating it.

12         MR. CROSS:  Your Honor, this is David Cross.  Just

13  briefly if I could.  I did kind of -- I wanted -- before we

14  even began to negotiate this with Dominion, I did want to come

15  back because I do think there is an easier pass forward for the

16  Court and for the parties, which is we can minimize the burden

17  on everyone, particularly Dominion as a third party, if the

18  State just simply allows Fulton to let us use one of their

19  machines and we will pay to replace that from Dominion.

20         There are existing contracts, as I understand it --

21  we assume it is with the State.  I understand --

22         THE COURT:  All right.  You articulated that.  That

23  is why I said that you should talk to them more about that as

24  an option as you are looking at this.  I understand that was an

25  option.

1        MR. CROSS:  Thank you, Your Honor.  I didn't know if

2    you were saying that we should work out a protocol where we are

3    getting it from Dominion.  Our preference --

4        THE COURT:  You know, I think I need to -- no.  I'm

5    saying if, in fact, the State is dead set against it, then I

6    need to understand relative to the reasonableness of their

7    position what is the reasonableness of what -- of the protocol.

8        I mean, if it is just going to basically hamstring

9    everything, then that is -- that is not reasonable either.  So

10   I just need to -- I don't have all of the information I need to

11   be able to determine what is to be done.  And I need to --

12   since I, frankly, walked back in from a long medical

13   appointment at this moment this morning to this situation -- I

14   read everything at issue.  But, you know, I still don't have

15   all of the information.  And I'm not going to just fly by the

16   seat of my pants.

17       And I think some of that is because you-all are just

18   running probably by the seat of your -- flying by the seat of

19   your pants as well.  But -- and I understand that.  But you

20   have got to talk about it some more.

21       MR. TYSON:  Your Honor, this is Bryan Tyson.  Can I

22   clarify one point before we get off the phone?

23       THE COURT:  Yes.  I'm not -- you had another also --

24       MR. TYSON:  Yes, Your Honor.  I'm sorry.  Before we

25   leave this --

```
 1              THE COURT:  All right.

 2              MR. TYSON:  -- this topic.  So the original request

 3     from the plaintiffs was for a BMD, a scanner, and the necessary

 4     software to run the equipment.

 5              As I hear the plaintiffs now, they are only

 6     requesting a single BMD.  And I just wanted to make sure I

 7     correctly understood the scope of what we're talking about as

 8     we continue from here.

 9              THE COURT:  Okay.

10              MR. TYSON:  Is that correct?

11              THE COURT:  Mr. Cross, what -- what is the answer?

12     Mr. Brown?

13              MR. CROSS:  This is David Cross.  The short answer is

14     our ideal world is a BMD and scanner.  My understanding is

15     Fulton was offering a BMD.

16              Mr. Brown, I'll leave it to you to speak to whether

17     the scanner --

18              THE COURT:  What about the software though?  That was

19     what the question was --

20              MR. CROSS:  Right.

21              THE COURT:  -- I thought.

22              MR. CROSS:  Bruce, do you want to speak to that?

23              MR. BROWN:  I believe the correct answer is that we

24     would need the -- we would need the BMD to be equipped with the

25     software that would allow it to be tested.
```

1           And exactly -- our understanding would be the reason

2    why -- one reason why it would be good to get it from Fulton

3    County is that it would already be programmed.  And that is why

4    that is the best solution is to get it from Fulton County and

5    then if we need to pay for a new replacement for Fulton County

6    so that we would get a programmed machine.  So that is our

7    understanding.

8           And so the BMD we would get from Fulton County would

9    be one that had the programming necessary to do the testing.

10          MR. TYSON:  This is Bryan Tyson.  But it would not be

11   the scanner or the tabulation -- the --

12          THE COURT:  I --

13                 **(Unintelligible cross-talk)**

14          MR. TYSON:  -- election management server?

15          THE COURT:  I mean, I'm not going through this.  I

16   can't believe you are not looking at the entire system.  That

17   is what you have asked for.  That is what you -- so I'm just --

18   I mean, I'm trying to understand is that --

19          MR. BROWN:  Thank you, Judge.

20                 **(Unintelligible cross-talk)**

21          MS. RINGER:  -- I asked about providing a scanner.

22          THE COURT:  At this time, I understand that.  That is

23   why I'm not going to go further here.  You have got to discuss

24   exactly what you want.  If -- you know, the thing is it just --

25   we can't proceed this way.  You have got to have a discussion

1   about what you want and if you have to buy a scanner

2   separately.  I mean, all of that.

3        I mean, because your claim is the scanner is

4   counting -- you don't know how it is counting the vote, as I

5   understand it.  So I'm not just going to -- either you are

6   doing this or you are not doing this, or you are doing it in

7   November after the election, or I'm hearing it before the

8   election but not giving relief on it until -- and perhaps or

9   perhaps not after the election.

10       I just -- so I'm not -- I'm not -- I'm not going to

11  get more excited than I have already gotten excited.  I mean,

12  this has just been a -- we need -- I'm happy to set aside time

13  on Monday.  But you are going to -- I need something in

14  writing, not just an explanation.

15       So I want to not have this phone call too long so you

16  can actually do that or begin that at least.  We will find a

17  time in the afternoon so that I have -- early afternoon so we

18  can do something, assuming you are able to provide me

19  something.

20       MR. CROSS:  Thank you, Your Honor.  We'll confer with

21  the defendants and Dominion.

22       THE COURT:  All right.  I'll just ask Mr. Martin

23  to -- we'll think about what time.  But I'm assuming, you know,

24  the sooner the better.  But also I have to read something too

25  and do other things in the morning too.

1          So did the State have a motion on the other matter --

2     on anything else?

3          MR. TYSON:  Your Honor, on the -- on this matter?

4     I'm sorry.  Or on the Fortalice report?

5          THE COURT:  No.  On the Fortalice report.

6          MR. TYSON:  Yes, Your Honor.  We just requested an

7     opportunity to respond to Mr. Cross and to have the in camera

8     review ordered on the record.  I can proceed to that now, or we

9     can handle it however you would like to handle it.

10         THE COURT:  All right.  You granted the request.  I

11    read the -- you haven't briefed it at this point; right?  I

12    mean, I have read --

13         MR. TYSON:  Correct.

14         THE COURT:  I read the -- the -- what has been filed

15    in camera.  And I thought it had already been filed in camera

16    or else maybe you just provided it to Ms. Cole.

17         But, anyway, I'm going to -- if it hasn't been

18    formally approved, we'll have a minute order with this -- with

19    this hearing today in the minutes indicating that the Court --

20    and maybe we need a separate one so that you are comfortable

21    with it -- that the Court will allow it to be sealed and filed

22    on an in camera -- for in camera review.

23         MR. TYSON:  Thank you, Your Honor.  And then we would

24    plan to respond.  We have a declaration from Mr. Germany

25    regarding the scope of work.

1            I think, again, the important thing from our

2     perspective is that this is -- this is separately delineated

3     from the types of Fortalice reports that were at issue

4     previously.  This one was for the purposes of litigation.  It

5     was for a security review of a discrete component as opposed to

6     the entirety in the normal course of the Secretary of State's

7     operations, which is what the other reports encompassed,

8     prepared at the direction of counsel and for the purposes of

9     litigation.

10            And we can cover all that again in our brief and in a

11     declaration, but I wanted you to be aware of that.

12            THE COURT:  All right.  Are you able to file it

13     Monday?

14            MR. TYSON:  We should be able to file it Monday, Your

15     Honor, yes.

16            THE COURT:  Okay.  All right.  Is there anything

17     else?

18            MR. CROSS:  Your Honor, this is David Cross.  I guess

19     just one clarification.

20            THE COURT:  Yes.  Go ahead.

21            MR. CROSS:  We have not found any Fortalice reports

22     in the production from defendants.  Although they had indicated

23     that they were going to produce them.  It would help to get a

24     clarification from the defendants as to whether we're not

25     seeing them or whether there are none beyond this one.

1          MR. TYSON:  I'll be happy to answer that, Your Honor.

2     This is Bryan Tyson.

3          When we were searching for documents, there was some

4     belief that there was -- might be an additional Fortalice

5     assessment of the type that had been done of the entire

6     security landscape.

7          The State has not paid Fortalice for an additional

8     assessment.  So there has not been an additional Fortalice

9     assessment conducted since the ones that were already produced

10    in discovery.

11         We wanted to provide the Court with the information

12    related to it, which is why we filed the declaration of

13    Mr. Hamilton.  But that -- there are not additional Fortalice

14    assessments of the same -- well, any type because they have

15    not -- they have not done any assessment of the Secretary's

16    network and computer components since that point.

17         THE COURT:  Since which point?

18         MR. TYSON:  The last one that was filed in this case,

19    which I believe was -- I can't remember if it was 2019 or 2018.

20    But whatever the last referenced one from Ms. Payton was that

21    we had as an exhibit, that is the last one that is there.  That

22    is a state -- I'm sorry -- I'm not speaking clearly, Your

23    Honor.  Let me try that again.

24         THE COURT:  That's all right.

25         MR. TYSON:  There were three reports regarding the

1    Secretary of State's network that were included in the hearing

2    last year when Ms. Payton testified.  And we discussed those at

3    some length.  Obviously the Court reviewed them.  There has not

4    been a further assessment by Fortalice of the Secretary's

5    network after the last of those three assessments were

6    conducted.

7              THE COURT:  All right.

8              MR. CROSS:  Is that true for -- there haven't been

9    any assessments at all?  Not just by Fortalice?  We didn't see

10   any assessments in the production.

11             MR. TYSON:  Correct.  Not by a cybersecurity vendor.

12   Correct.

13             MR. CROSS:  Oh.

14             THE COURT:  All right.  Well, Mr. Tyson, when do you

15   expect to be able to file that on Monday?

16             MR. TYSON:  Your Honor, we can -- I think we could

17   probably do noon if that works.

18             THE COURT:  That is fine.  That is fine.  Does anyone

19   have -- if anyone has -- any lead counsel has a conflict for

20   Monday afternoon, please advise Mr. Martin.  All right?  Just

21   send him an email now just telling him what your conflict is.

22   I don't need the nature of it but just simply the hours.

23             MR. BROWN:  Yes, Your Honor.

24             THE COURT:  All right.  And I really would like to

25   have something in writing though about what you have or haven't

1    been able to work out or what is involved, I guess, by -- I

2    mean, you're going to talk today.  You will probably have some

3    follow-up on Monday.

4            So, you know, see when you can -- see if you can do

5    it by 12:30.  If you can't, tell me when you are also going to

6    be -- and based on what the story is then, let me know when it

7    is going to be.  Because we're going to schedule things

8    accordingly.

9            MR. BROWN:  Yes, Your Honor.

10           MR. CROSS:  Your Honor, this is David Cross.  Could I

11   just ask:  Since everyone is convened, I can circulate a

12   dial-in.  Can everyone on this call who needs to be on for

13   that -- so Mr. Maguire for Dominion, State's counsel, Fulton's

14   counsel -- just jump right back on the phone right now to work

15   this out?

16           THE COURT:  That would make sense.  Sure.  That would

17   be great.  Do you want to give them the dial-in or -- you will

18   circulate it?

19           MR. CROSS:  Yes.

20           MS. RINGER:  One question, David.  Do you think we

21   will be finished before the end of the day?  Because I need to

22   make one other phone call otherwise.

23           MR. CROSS:  I sure hope so.  I hope it is like a

24   15-minute conversation.

25           MS. RINGER:  All right.  Thank you.

1          THE COURT:  All right.  Thank you-all very much.

2          MR. BROWN:  Thank you, Judge.

3          THE COURT:  Bye-bye.

4          MR. TYSON:  Thank you, Your Honor.

5              **(The proceedings were thereby concluded at)**

6              **3:39 P.M.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA


     I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

the United States District Court, for the Northern District of

Georgia, Atlanta Division, do hereby certify that the foregoing

26 pages constitute a true transcript of proceedings had before

the said Court, held in the City of Atlanta, Georgia, in the

matter therein stated.

     In testimony whereof, I hereunto set my hand on this, the

29th day of August, 2020.




                              _____
                              SHANNON R. WELCH, RMR, CRR
                              OFFICIAL COURT REPORTER
                              UNITED STATES DISTRICT COURT