# EXHIBIT A

**Bryan Tyson**

| | |
|---|---|
| **From:** | Cross, David D. <DCross@mofo.com> |
| **Sent:** | Monday, August 31, 2020 12:05 PM |
| **To:** | Bryan Tyson; Hedgecock, Lyle F.; Miriyala, Arvind S.; Bruce Brown; cichter@ichterdavis.com; ram@lawram.com |
| **Cc:** | Josh Belinfante; Vincent Russo; Carey Miller; Jonathan Crumly; Bryan Jacoutot; Loree Anne Paradise; Diane LaRoss; cheryl.ringer@fultoncountyga.gov; kaye.burwell@fultoncountyga.gov; david.lowman@fultoncountyga.gov; Alexander Denton; J. Matthew Maguire, Jr.; Halsey G. Knapp; 'Adam M. Sparks' |
| **Subject:** | RE: Curling - Scope Information |

Bryan -

We've been clear, as was the Court, that we need to examine the GA election system end to end because that's what our complaints challenge as unconstitutional. You must know what composes that system since you're defending it. You didn't actually need us to detail the components of your own election system, presumably. To express surprise that we identified the components that must be known to you is difficult to credit or understand, especially when you call out things like PollPads (which have long been at issue in the case) and a small volume of ballot paper (how did you think we were going to print test ballots with a BMD?). And the technical documentation you complain about should have been produced long ago. You also have not characterized our request accurately (much like your attacks on us in your PI Opposition). We've not asked to take central scanners out of use for elections. In any event, to say that, for you to offer a proposal to resolve this as the Court directed, you needed us to tell you what the components are of your own election system for the end to end analyses we need and have been seeking for a long time is neither accurate nor fair.

Regarding timing for our analyses, your email betrays an unsettling misunderstanding of what's involved in comprehensive testing of your own system. This may arise from the fact that you've inexplicably refused to do that even with your own experts and consultants, in violation of a Court Order no less as you finally disclosed on Friday. But suffice to say that it will take months to do that and do it properly. Beginning that process after the November elections would inject months of additional delay into the case and put subsequent elections, such as runoffs, at continued risk. Moreover, that this process can't be completed by the hearing is beside the point. If we can begin it now, there's still much we may be able to discern about the security of the system that the Court has made clear is important for the pending motions and the scope of relief the Judge could order, such as requiring specific security measures to plug serious holes in the system (like finally remediating the many vulnerabilities Fortalice identified years ago that you now admit still have not been remediated).

Regarding your contract, that's not a basis for refusing the discovery we're seeking in litigation. Courts routinely have held that private contract provisions are not a bar to relevant discovery between parties. You can cooperate with us on this and we can jointly obtain an order from the Court to address any contract issues if needed. Please identify the specific contract provisions you claim our requested discovery would breach so we can consider those provisions. And please provide a copy of any such contracts.

Regarding your questions, here's what I can tell you (again).

1. For my clients, just Dr. Halderman and litigation counsel and supporting staff at my firm or Halsey's firm who need access. I expect only a few members of the litigation counsel and staff will need access to assist Dr. Halderman and I'm happy to identify those once we determine who they are. We likely could limit it to something like 3-4 lawyers and a single paralegal. Happy to consider any proposal.

2. Yes.

3-4. I'll get back to you ASAP.

5. We're open to this as long as their access doesn't invade privilege or cross other lines of discoverability. Dr. Halderman's testing and analyses are not discoverable unless and until relied on for opinions in this case. This is why we proposed the video camera. But if you want someone in the room, we'd have to understand what exactly you're proposing and how that would work. We'd also require the same protocols with any experts you use to examine the system, if you ever decide to do that.

6. If you'd like that, we're happy to consider what would be workable for both sides.

7. We've identified everything below. Is there something specific you have in mind?

Thanks.
DC

**From:** Bryan Tyson <btyson@taylorenglish.com>
**Date:** Monday, Aug 31, 2020, 11:25 AM
**To:** Cross, David D. <DCross@mofo.com>, Hedgecock, Lyle F. <LHedgecock@mofo.com>, Miriyala, Arvind S. <AMiriyala@mofo.com>, Bruce Brown <bbrown@brucebrownlaw.com>, cichter@ichterdavis.com <cichter@ichterdavis.com>, ram@lawram.com <ram@lawram.com>
**Cc:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, Vincent Russo <vrusso@robbinsfirm.com>, Carey Miller <carey.miller@robbinsfirm.com>, Jonathan Crumly <jcrumly@taylorenglish.com>, Bryan Jacoutot <bjacoutot@taylorenglish.com>, Loree Anne Paradise <lparadise@taylorenglish.com>, Diane LaRoss <dlaross@taylorenglish.com>, cheryl.ringer@fultoncountyga.gov <cheryl.ringer@fultoncountyga.gov>, kaye.burwell@fultoncountyga.gov <kaye.burwell@fultoncountyga.gov>, david.lowman@fultoncountyga.gov <david.lowman@fultoncountyga.gov>, Alexander Denton <Alexander.Denton@robbinsfirm.com>, J. Matthew Maguire, Jr. <mmaguire@pcwlawfirm.com>, Halsey G. Knapp <hknapp@khlawfirm.com>, 'Adam M. Sparks' <sparks@khlawfirm.com>
**Subject:** RE: Curling - Scope Information

**External Email**

David,

We were rather surprised to receive this email at almost 11:00pm on Sunday night after discussing this issue on Friday afternoon and asking for it again on Saturday morning. The scope you've outlined here is far beyond anything we've discussed previously, because it now includes PollPads, actual ballot paper, a central-count scanner, and the full technical documentation utilized by the test lab, all with a deadline to provide this to you no later than the day after tomorrow for an apparently unlimited duration. We are discussing this proposal with our experts, but do not yet have a response in terms of a protocol that might be workable given the extreme breadth of what you're proposing. Given your admission that the "Component 1" analysis cannot be completed by the hearing date, we do not understand how this kind of scope of proportional to the needs to the case at this point, especially when it takes equipment, including central-count scanners, out of service for the November election to complete a process that can be completed just as easily once we get past the general election and attendant runoffs.

But your scope and proposals raise a larger concern—given the breadth of the information you are seeking and the unfettered access to the entirety of the election system, even if this was feasible, it would place Georgia in breach of its Master Solution Purchase and Services Agreement with Dominion.

2

If we can get past the contractual issues with Dominion, we still need additional information about your Component 2 test:

1. Which individuals (or at least how many) will have access to the BMD you propose to test?
2. Will your experts be physically opening the BMD?
3. Will the test of the BMD include installing additional software on the unit?
4. What protocols will your experts utilize to "return the BMD and scanner in working order and counting accurately"?
5. Will we be permitted to have our experts on site during these proposed tests?
6. Will your experts be providing an expert report of any type ahead of the hearing regarding their findings? If so, on what schedule?
7. What equipment do you anticipate needing beyond the ICP to complete the tabulation for your test?

Please provide this information as soon as possible so we can effectively respond to your proposal. If we had received your proposed scope earlier, we could have raised these issues at that point instead of within hours of talking with the Court.

Thanks,

Bryan



**Bryan P. Tyson**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7249  | M: 404.219.3160 | btyson@taylorenglish.com
Website | vCard | LinkedIn | Twitter

Georgia Legal Awards Litigation Department of the Year

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**From:** Cross, David D. <DCross@mofo.com>
**Sent:** Sunday, August 30, 2020 10:51 PM
**To:** Bryan Tyson <btyson@taylorenglish.com>; Hedgecock, Lyle F. <LHedgecock@mofo.com>; Miriyala, Arvind S. <AMiriyala@mofo.com>; Bruce Brown <bbrown@brucebrownlaw.com>; cichter@ichterdavis.com; ram@lawram.com
**Cc:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>; Vincent Russo <vrusso@robbinsfirm.com>; Carey Miller <carey.miller@robbinsfirm.com>; Jonathan Crumly <jcrumly@taylorenglish.com>; Bryan Jacoutot <bjacoutot@taylorenglish.com>; Loree Anne Paradise <lparadise@taylorenglish.com>; Diane LaRoss <dlaross@taylorenglish.com>; cheryl.ringer@fultoncountyga.gov; kaye.burwell@fultoncountyga.gov; david.lowman@fultoncountyga.gov; Alexander Denton <Alexander.Denton@robbinsfirm.com>; J. Matthew Maguire, Jr. <mmaguire@pcwlawfirm.com>; Halsey G. Knapp <hknapp@khlawfirm.com>; 'Adam M. Sparks' <sparks@khlawfirm.com>
**Subject:** RE: Curling - Scope Information

Bryan -

My recollection is that we agreed to provide more information generally about the analyses we need to do with the election equipment we requested. I thought we were clear on the call about the equipment and software we need for that work. That said, we're happy to reiterate that. We've also thought more about this and what's

3

feasible for all of us on an expedited basis. Our proposal is below and has two parallel components, recognizing immediate time and resource constraints for both sides.

**Component 1:** *Longer Term*

We understand from Friday's court call that the judge agrees it's important for our experts to do appropriate testing and analyses on the current election system, end to end, which would include one unit of each piece of equipment used in Georgia: an ICP scanner, an ICX BMD, and computers configured in the state's standard configuration for the counties' EMS servers and ICC scanner, the KnowInk Pollbooks, the backend system and related system software, as well as any accessories needed to administer the system or conduct test elections, such as voter cards, keys, USB sticks, memory cards, smart cards, and a small supply of ballot paper. We can supply our own COTS computers, printers, and scanners if those are in short supply since those are standard, off the shelf equipment (please let us know if you believe this is incorrect). But it is important that we receive the EMS and ICC software images in exactly the configuration used in Georgia. We will also need the full technical documentation (Technical Data Package) for the systems that was used during all certification testing, including any updates or customized changes made by Georgia.

We are seeking to do this as quickly as possible and would like to begin this work immediately, using equipment and software loaned by one of the counties that's previously been used in a GA election this year (regarding the EMS, we could simply image one or more county servers so that no server is out of commission for use in elections). This will avoid disputes over whether the equipment and software are exactly the same as used in GA elections and provide us with actual, recent GA election data for our analyses. Although the equipment could be returned to the county(ies) for use in future elections, we're prepared to pay to replace the equipment to the extent necessary, at a fair and reasonable price. We would need to understand why any equipment would need to be replaced and what the cost would be for each piece of equipment.

This end to end analyses is critically important, especially given we now know from Friday's Court call that Defendants have performed no security assessment of the current election system or otherwise of the SoS's IT systems/network since the last Fortalice report, which I believe was early 2019. It's imperative this begin right away given the upcoming elections, consistent with the Court's August 2019 Order directing defendants to perform such an assessment with their election security consultants.

Unfortunately, our experts can't complete this end to end analyses in time for the September 10-11 hearing. Again, it's nonetheless imperative they begin this work right away so they can do as much as possible before the hearing — and before the upcoming elections — but this work will have to continue after the hearing as discovery proceeds in this case. This reality takes us to the second component of our proposal.

**Component 2:** *Shorter Term*

Given we can't complete the end to end analyses before the hearing, our experts have considered what they realistically can complete for the hearing. They intend to perform limited-scale testing on a BMD to prove the feasibility of attacks they've described in their declarations, such as the barcode-based attacks. They would focus on this preliminary testing upon receiving the necessary equipment in preparation for the hearing.

This testing will require access to a BMD that is configured to run an election in GA, along with voter access cards, electronic poll book or other devices necessary to initialize, manage, maintain and operate the BMD and print ballots. Again, we can supply our own printer of the same type used in Georgia. Our experts would test the BMD in our own facility, either at the offices of outside counsel in Atlanta or perhaps at Georgia Tech. Although we won't need a scanner or EMS for these preliminary tests, we will need to tabulate ballots cast on the BMD using an ICP scanner and output the resulting tallies. So we would need brief access to a scanner

before the hearing at our facility and during the hearing. We will return the BMD and scanner in working order and counting accurately.

In the interest of being able to start the analyses quickly, our experts would apply a red-team penetration testing methodology (i.e., without source code), as was employed by one prong of the California Secretary of State's Top-to-Bottom voting system review. (Those tests and the methodology are explained here: https://votingsystems.cdn.sos.ca.gov/oversight/ttbr/red-overview.pdf, Section 2.0.) In this process, we will examine the system from the point of view of an attacker, in order to determine how secure it is against likely attack scenarios. As evidenced by the Fortalice reports and Merritt Beaver's prior testimony, penetration testing is a routine and appropriate method for assessing vulnerabilities with GA's election system.

A number of protections would be in place to safeguard the equipment and software: We would maintain the equipment in secure facilities, as we did with the GEMS databases. We would also maintain a surveillance camera that shows the working environment and who has access to it, and the recording will be available to defendants upon request. The recording would not capture our experts' analyses that are protected from discovery under Rule 26 and any applicable privilege. The equipment, software, data, and any analyses would be subject to the Court's protective order with respect to any confidential material. We would also agree to report to defendants and the Court any vulnerabilities discovered for mitigation, in accordance with industry-standard responsible-disclosure practices. We would do so confidentially as needed.

We note that, unlike the protocol you provided for testing in Wisconsin, this style of penetration testing does not involve access to source code and thus is much narrower in its scope and the material needed. Source-code access would facilitate other useful analyses (and ultimately may be necessary for a complete assessment of vulnerabilities, as with the Wisconsin protocol you provided), but we're not presently seeking that. If a source-code review becomes necessary, the methodology and security precautions adopted for the California Top-to-Bottom Review Source Code Review likely would be appropriate. Those security precautions are documented here: https://votingsystems.cdn.sos.ca.gov/oversight/ttbr/source-code-security-plan.pdf.

In sum, our immediate need, for the purposes of our PI motions, is for a BMD configured for GA elections and brief access to a scanner before and during the hearing. The BMD should be loaned from a county and previously used in GA elections this year, which Fulton has agreed to do with the state's approval. Again, we need the BMD immediately. In parallel, the county(ies) also would provide as soon as possible the equipment and software needed for the analyses in Component 1 of our proposal. We'd appreciate that by Wednesday.

We're available to discuss this tomorrow before the conference. We look forward to hearing from you and hopefully reaching agreement.

Thanks. Hope you has a nice weekend.

DC

---

**From:** Bryan Tyson <btyson@taylorenglish.com>
**Date:** Saturday, Aug 29, 2020, 9:41 AM
**To:** Cross, David D. <DCross@mofo.com>, Hedgecock, Lyle F. <LHedgecock@mofo.com>, Miriyala, Arvind S. <AMiriyala@mofo.com>, Bruce Brown <bbrown@brucebrownlaw.com>, cichter@ichterdavis.com <cichter@ichterdavis.com>, ram@lawram.com <ram@lawram.com>
**Cc:** Josh Belinfante <Josh.Belinfante@robbinsfirm.com>, Vincent Russo <vrusso@robbinsfirm.com>, Carey Miller <carey.miller@robbinsfirm.com>, Jonathan Crumly <jcrumly@taylorenglish.com>, Bryan Jacoutot <bjacoutot@taylorenglish.com>, Loree Anne Paradise <lparadise@taylorenglish.com>, Diane LaRoss

<dlaross@taylorenglish.com>, cheryl.ringer@fultoncountyga.gov <cheryl.ringer@fultoncountyga.gov>, kaye.burwell@fultoncountyga.gov <kaye.burwell@fultoncountyga.gov>, david.lowman@fultoncountyga.gov <david.lowman@fultoncountyga.gov>, Alexander Denton <Alexander.Denton@robbinsfirm.com>, J. Matthew Maguire, Jr. <mmaguire@pcwlawfirm.com>
**Subject:** Curling - Scope Information

**External Email**

---

David and Bruce,

On our call yesterday, Plaintiffs agreed to provide us with the scope of equipment you are seeking to test (only a BMD or, if more, what specific additional equipment/software) and the scope of testing your experts are seeking to conduct. Please provide this information as soon as possible so we can determine what contractual provisions may be implicated and consider necessary protocols.

Thanks,

Bryan



**Bryan P. Tyson**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7249 | M: 404.219.3160 | btyson@taylorenglish.com
Website | vCard | LinkedIn | Twitter

Georgia Legal Awards Litigation Department of the Year

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

==========================================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.

==========================================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.