IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## STATE DEFENDANTS' SURREPLY TO COALITION PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RELATING TO BMDS, SCANNING AND TABULATING, AND AUDITING

### INTRODUCTION

Like Curling Plaintiffs, Coalition Plaintiffs mainly parrot existing evidence in their reply brief, offering very little in the way of new information to the Court. In the process of attacking State Defendants for relying "almost entirely upon legal arguments" in a brief about the legal standard for the significant relief they seek, Coalition Plaintiffs continue to guess (incorrectly) about the functioning of the Dominion system. But they have not shown their clear entitlement to the extraordinary relief of a preliminary injunction.

For starters, this Court cannot reach Coalition Plaintiffs' laundry list of proposed relief about audits and other components of the election system

without first finding that voting technology (or at least Georgia's voting technology)—as a matter of law—places an unconstitutional burden on the right to vote that is not justified by a state interest. This Court should decline Coalition Plaintiffs' invitation to be the first court in the country to find that a paper-ballot system using BMDs is *unconstitutional*. Further, there is no reason for this Court to intervene in a policy dispute between various groups within the election community, especially when it must interpret questions of state law to do so.

## RESPONSE TO FACTUAL ISSUES

Coalition Plaintiffs really offer only one really new "fact" in their reply—their false claim that Georgia's Dominion system is not EAC-certified. That is simply not the case, as discussed below.

After cutting through all of the policy arguments in Coalition Plaintiffs' brief, this Court cannot conclude that the new Dominion system is less secure than Georgia's previous GEMS/DRE system. For Coalition Plaintiffs' nightmare hacking scenarios to be true (and not caught by the State's audit), a bad actor would have to (1) know the race they wanted to target, (2) know that the race would be close enough to manipulate a set number of ballots, and (3) write and get the malware undetected into enough BMDs in the targeted area after logic and accuracy testing and have it evade all other

system controls. Then a criminal actor would also need to ensure that (1) the malware only changed enough votes so that it wasn't enough for voters to notice (which Dr. Stark essentially acknowledges at [Doc. 853-1 at ¶¶ 7-12]), (2) not enough voters actually verified their ballots, (3) the malware manipulated a sufficient number of votes to actually cause a change in outcome, and (4) the race manipulated was not the one ultimately picked for auditing by the Secretary of State. Only if *every single one* of these factors was true could a bad actor infiltrate an election undetected. Although this Court has already ruled on standing for purposes of the motion to dismiss, to call this a "highly attenuated chain of possibilities" is generous. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 133 S. Ct. 1138, 1148 (2013).

## I.   Response to claims about audits.

Coalition Plaintiffs do not dispute that voters *can* verify their ballots, nor does Dr. Stark even respond to Dr. Ben Adida's declaration about the design of Georgia's risk-limiting audits (RLA). Coalition Plaintiffs are left misrepresenting Dr. Adida's declaration, claiming that "he does not bless BMDs as auditable." [Doc. 853, p. 16]. But in fact Dr. Adida explains that an important benefit of an RLA is that it protects against malfunctions or hacks of QR codes from BMDs. [Doc. 834-2 at ¶ 12]. VotingWorks has helped design RLAs of BMDs in a variety of states. *Id*. at ¶¶ 9, 13. Coalition Plaintiffs have

no response to these facts beyond the policy disagreement between Dr. Stark and others in the voting community like Dr. Adida. Whatever policy merits their academic arguments may have, there is no basis to impose such a policy preference as a matter of constitutional law.

## II.    Response to specific claims about BMDs.

### A.    *Response to Harri Hursti's latest declaration.*

Harri Hursti continues his speculation about the operation of the Dominion system. Despite providing another declaration, he still cannot provide this Court with any useful information. For example, Mr. Hursti says he cannot conclude if remote access features were used on an EMS server [Doc. 853-2 at ¶ 6], but is apparently unaware that, if the EMS server was connected to the Internet, Fulton County would be in violation of Ga. Comp. R. & Regs. r. 183-1-12-.05(2), which prohibits the EMS from being connected to the Internet unless specifically authorized by the Secretary of State.

Mr. Hursti also reiterates his inflammatory charge based on an incomplete assessment of Fulton's operations that Georgians should have no confidence in the results of the August 11 runoff. [Doc. 853-2 at ¶ 7]. The remainder of his new declaration is filled with more speculation and conclusory statements. *Id*. at ¶ 24 ("suspicion" about version management); ¶ 27 ("cannot compare" logs); ¶ 31 ("potentially" another version); ¶ 32

("possible" that guest account was disabled); ¶ 40 ("unexplained"); ¶ 46 ("not possible to determine" what was activated); ¶¶ 47, 48 ("suspicious"); ¶ 49 (all components "easily hacked," "should not be deployed," "far too unreliable"). While Mr. Hursti obviously personally opposes the Dominion system and favors hand-marked ballots, he offers nothing upon which this Court can find a likelihood of success on the merits to support the sweeping relief proposed by Coalition Plaintiffs.

Mr. Hursti also argues against the use of the scanners that Coalition Plaintiffs want used as part of their proposed relief, even with new threshold settings. *Id.* at ¶¶ 12, 17-18. But even if that was relevant to the issue of whether *ballot-marking devices* can be used in Georgia elections, it relates solely to the use of hand-marked ballots and Mr. Hursti does not appear to propose any solution beyond ensuring every single stray mark on every hand-marked ballot is reviewed by a human. [Doc. 853, pp. 22-24]. Coalition Plaintiffs do not offer one election official who endorses that view. Instead, they leave Mr. Harvey's testimony that such an approach was rejected and would delay certification unrebutted. [Doc. 834-3 at ¶¶ 8-10].

B.    *Response on timestamps.*

Coalition Plaintiffs remain confused about timestamps. As Dr. Coomer clearly explained, ballots scanned on a *precinct scanner* (ICP) have no

timestamps. [Doc. 821-1 at ¶ 10] (AuditMark "includes a randomized sequence number when scanned on the *ImageCast Precinct Tabulator*" (emphasis added)). Ballots scanned on a *central-count scanner* (ICC) have a timestamp because those scanners tabulate absentee ballots and the order does not matter because it is not the order in which the voters vote—unlike precinct scanners. Coalition Plaintiffs' own evidence proves exactly this point. The Dominion "documentation" they cite with a timestamp at [Doc. 640-1, p. 81] clearly indicates it was scanned on an "ICC Tabulator" and the hand-marked ballots with a timestamp attached to Marilyn Marks' declaration are also ballots scanned on a central scanner ("Scanned on: ICC"). [Doc. 853-4, pp. 28-46]. Ms. Marks also attaches—to the *same declaration*—a ballot scanned on a *precinct* scanner ("Scanned on: ICP") which clearly does *not* have a timestamp as part of the AuditMark but has the randomized number Dr. Coomer explained would be there. [Doc. 853-4, pp. 4-6]. Thus, Coalition Plaintiffs' own evidence demonstrates that there is no issue related to timestamps on ballots cast in precincts.[1]

---

[1] These are the exact kind of issues that can be addressed during normal discovery. Depositions and interrogatories can sort through questions like this instead of having to waste the Court's time and resources having non-existent factual issues raised through the briefing and declarations on a preliminary-injunction motion.

## III.    Response to claims Dominion system not EAC-certified.

Another example of how this case can benefit from the normal
discovery process is Coalition Plaintiffs' bizarre claim, raised for the first
time in this case, that Georgia's Dominion system is not certified by the
Election Assistance Commission. Setting aside the fact that this is a claim
that should be brought in superior court because it would mean the Secretary
of State was violating O.C.G.A. § 21-2-300(a)(3), this claim could also be
vetted in the discovery process and shown to be completely incorrect.

Coalition Plaintiffs have confused two different processes within Pro
V&V and claim to have found something nefarious when it was nothing of the
sort. In reality, the Georgia and the EAC certification process worked
together and Pro V&V oversaw all testing at the same time. Supplemental
Declaration of Jack Cobb, [Doc. 865-1 at ¶¶ 4-7]. The Georgia process was
completed more quickly than the EAC process and the tracking number ECO
100601 was used for the EAC process. *Id*. at ¶¶ 6-11. The "GA" designation
was added to clarify that additional state testing had been completed, using
ECO 100647, including Source Code Review, PCA, TDP Review, System
Integration, Accuracy Testing, Volume & Stress, and FCA/Regression
Testing. *Id*. at ¶¶ 7-8. This testing was performed to verify that the new
scanner (running version 5.5.3.3) could handle the Georgia requirements. *Id*.

at ¶ 9. The source code checks were performed to whitelist the scanner and ensure no other changes were made to the EAC-certified system. *Id*. ECO 100601 was later submitted to the EAC and, as a result, there are three different scanners that can be utilized with Democracy-Suite 5.5-A without jeopardizing certification. *Id*. at ¶ 11.

Coalition Plaintiffs have not "discovered" a non-certified system. They have merely identified different tracking numbers for the same system that ran on the same track but finished the testing process at different times because they had different requirements. Normal discovery would save the Court the necessity of sorting through these kinds of allegations. But in either case, Coalition Plaintiffs' arguments on certification provide no support for a preliminary injunction enjoining all or part of Georgia's election system.

## IV.   Response to claims about transition to new system.

As their sole support for the concept that a transition from a BMD-marked paper ballot system to a hand-marked paper ballot system would be simple, Coalition Plaintiffs rely on a two-hour and twenty-minute "statement" by Jesse Evans, taken without cross-examination well before Coalition Plaintiffs even filed their current motion. [Doc. 853-3]. While Mr. Evans chairs the election board in Athens-Clarke County, he is not the elections director and his statement indicates substantial disagreement

between the Board and the staff in Athens-Clarke County over switching to hand-marked paper ballots. *Id*. at 20:8-22:16, 35:10-17, 39:10-24, 62:8-63:1. Further, the "one-day" switches were at a single location during early voting with Elections Department staff—not during a full early-voting period or at all precincts with poll workers. *Id*. at 26:3-7, 28:5-11, 31:2-32:10.

Mr. Evans' statements do not call into question Mr. Harvey's testimony about ballot printing or the feasibility of switching election systems statewide for thousands of precincts with a little over a month's notice. [Doc. 834-3 at ¶¶ 8-15]. Coalition Plaintiffs provide nothing else on which this Court can conclude the change they seek can be made quickly or easily.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Coalition Plaintiffs are not likely to succeed on the merits.**

    *A.     Coalition Plaintiffs misunderstand* Anderson/Burdick.

The *Anderson/Burdick* analysis requires a court first determine the burden involved. In their reply, Coalition Plaintiffs simply assume the burden and begin with interests of the state, claiming that "financial and administrative considerations" are not a sufficient interest, relying on a case about participation in closed partisan primaries. *Tashjian v. Republican Party*, 479 U.S. 208, 214, 107 S. Ct. 544, 548 (1986).

Any burden is slight because of the difference in the posture of this case today versus when the DREs were in use.[2] [Doc. 834, pp. 15-16]. From the filing of this case in 2017 to their most recent filing, Plaintiffs have yet to show an actual compromise of the voting system and still rely on threats. These potential threats must be weighed against the voter confusion, poll worker problems, access for disabled voters, and other issues asserted as state interests.

Further, with Georgia being one of the few states planning to conduct a risk-limiting audit in 2020, whatever burden Coalition Plaintiffs may face is significantly reduced. Dr. Stark has literally nothing to say about Dr. Adida's declaration but instead reiterates his position that barcode-based ballots cannot be audited and that unless *all* voters verify *all* ballots, any RLA is invalid. [Doc. 853-1]. Obviously Dr. Stark and Dr. Adida have different views on audits, but this Court is not the proper venue to address the interrelated policy issues on which auditing process is the best. Georgia chose its path and Coalition Plaintiffs disagree. They offer nothing further.

---

[2] Regarding scanners particularly, Coalition Plaintiffs have not presented evidence that a 10% threshold is anything other than a minor burden on the right to vote that is justified by the regulatory interests of the State as outlined by Mr. Harvey. [Doc. 834-3 at ¶¶ 4-6, 9-10].

B.   *Coalition Plaintiffs misunderstand the Eleventh Amendment.*

The question of whether claims about DREs generally fit within the scope of *Ex Parte Young* is a separate consideration from whether Coalition Plaintiffs now call on this Court to decide whether *state* officials are violating *state* law for the *discrete* relief sought in their latest motions. *Compare Curling v. Ga. Sec'y of State*, 761 F. App'x 927, 931 (11th Cir. 2019) *with Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1290 (11th Cir. 2015); *see also* [Doc. 751, p. 50] (finding Coalition Plaintiffs had a remedy under state law). While Coalition Plaintiffs try to save their claims by saying they are really violations of federal law, the rest of their brief demonstrates that is not the case. On scanners, Coalition Plaintiffs argue that stray marks must be counted under state law. [Doc. 853, pp. 13, 23]. Similarly, on voter privacy issues, Coalition Plaintiffs argue that State Defendants (or others) are violating their own guidance. [Doc. 853, p. 24]. Further, they argue that the current logic and accuracy testing procedures violates the Georgia Code. [Doc. 853, pp. 17, 27].

To grant relief for each of these areas, this Court must make "a determination that a state official has not complied with state law." *Fair Fight Action v. Raffensperger*, Case No. 1:18-cv-05391-SCJ (Doc. 188), slip op. at 15 (December 27, 2019). And Coalition Plaintiffs do not even attempt a

response to the argument that their proposed relief would commandeer state actors in violation of *Jacobson v. Fla. Sec'y*, No. 19-14552, 2020 U.S. App. LEXIS 28078, at *47-48 (11th Cir. Sep. 3, 2020).

## II.   There is no irreparable harm.

Coalition Plaintiffs have no answer to State Defendants' arguments on irreparable harm, especially in light of the Eleventh Circuit's holding that "[v]oters have no judicially enforceable interest in the outcome of an election" but only in "their ability to vote and in their vote being given the same weight as any other." *Id.* at *17. Coalition Plaintiffs complain that "voters whose votes are discarded by scanners are prevented from voting," [Doc. 853, p. 28], but nowhere claim that they will fail to follow the instructions for properly marking a hand-marked ballot—which is a necessary precondition to their votes being "discarded" as they allege. Further, if the only irreparable harm is to voters whose hand-marked ballots are not counted by scanners [Doc. 853, p. 28], then the only harm is an alleged violation of state law.

## III.   Coalition Plaintiffs do not show that the equities or public interest favors them.

In arguing that the equities and public interest favor them, Coalition Plaintiffs completely ignore the fact that their expert continues to tell Georgians not to have confidence in the election system. [Doc. 853-2 at ¶ 7].

The idea that switching to hand-marked ballots "on the fly" in certain limited situations supports the concept that it is simple to make such a change across thousands of precincts is directly contrary to unrebutted testimony of Chris Harvey on this point. Coalition Plaintiffs offer nothing more in response.

## IV.    Coalition Plaintiffs have not shown their remedy is feasible.

In their attempt to argue that this is somehow not the "eve of an election," *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020), Coalition Plaintiffs make the strange statement that the election is still two months away. [Doc. 853, p. 29]. This betrays a serious lack of understanding of the administration of elections. The building of databases is nearly complete and absentee ballots go out eleven days from today. [Doc. 821-9 at ¶¶ 4, 6]. Early voting on BMDs begins on October 13—a mere 32 days from the second day of the hearing set in this matter. *Id*. at ¶ 7.

Coalition Plaintiffs do not identify a single election official who endorses their view that a jurisdiction could successfully implement a statewide hand-marked paper ballot system on the timeline they propose. This matters, especially given their earlier criticisms about rolling out a new election system on an aggressive schedule. And their back-of-the-envelope calculations, [Doc. 853, p. 31], are beyond incredible. Coalition Plaintiffs acknowledge that nearly *two million* ballots would need to be printed (at a

minimum) and yet fail to take into account the thousands of ballot combinations, ballot-storage issues, and chain-of-custody problems created by dramatically increasing the number of preprinted paper ballots used in an election—and that is before the cost is factored in. Coalition Plaintiffs wave this away as "extending [a] print run[]" and suggest using ballot-on-demand printers that were never designed to print millions of ballots. *Id*.; [Doc. 821-9 at ¶ 15]. The lack of any evidence on feasibility dooms their proposed relief.

Finally, Coalition Plaintiffs suggest that the State adopt new rules to their liking on scanners and audits. [Doc. 853, p. 31]. Even if they could avoid the jurisdictional problems of commandeering the State Election Board, Coalition Plaintiffs completely ignore the requirements of state law regarding the call of State Election Board meetings and the process for the adoption of rules. *See, e.g.*, O.C.G.A. § 50-13-4.

## CONCLUSION

Coalition Plaintiffs' reply perfectly illustrates why this case should not proceed on an emergency basis. Regular discovery would clear away the confusion by Coalition Plaintiffs about the state's election processes. But even that process does not solve the jurisdictional infirmities with the proposed relief. This Court cannot order almost all the relief sought and, to the extent relief is not barred by the Eleventh Amendment, Coalition Plaintiffs have

demonstrated none of the four requisites to a preliminary injunction. This Court should deny their motion.

Respectfully submitted this 4th day of September, 2020.

Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272

bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' SURREPLY TO COALITION PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RELATING TO BMDS, SCANNING AND TABULATING, AND AUDITING** has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson