IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

COALITION PLAINTIFFS' NOTICE OF FILING EXHIBITS TO
DESIGNATION OF CONSULTANTS PURSUANT
TO PROTECTIVE ORDER

On September 6, 2020, the Coalition Plaintiffs gave notice (Doc. 867) of their intent to designate Marilyn Marks, Rhonda J. Martin and Susan Greenhalgh as a consultants authorized to receive "ATTORNEYS' EYES ONlY" material pursuant to Paragraph 5(b)(ii) of the Protective Order (Doc. 477), effective September 9. On September 7, the State Defendants' filed a Response which does articulate any objection to the designation of Ms. Martin or Ms. Greenhalgh, but does object to the designation of Ms. Marks (Doc. 869).

The State Defendants make three arguments. First, the State Defendants contend that the "notice violated the Protective Order and the Court should deny the effort to change its terms," (*id.* at 1), and then suggest that the Protective Order limits access to "attorneys eyes only" material to attorneys and experts. This is

incorrect: the Protective Order allows disclosure of "attorneys' eyes only" material to "experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to Be Bound." (Doc. 477 at 10). The designation of Ms. Marks as a consultant is in complete compliance with the Protective Order; it is the State Defendants who seek to change its terms by eliminating the words "and consultants." The State Defendants do not challenge the Coalition Plaintiffs' assertion that the disclosure to Ms. Marks is "reasonably necessary for this litigation," nor could they do so. Given the volume of material that the State Defendants have marked "attorney's eyes only," to prepare for the hearing it is vitally necessary for counsel to have experts *and* consultants assist in the review.

Second, the State Defendants contend that Ms. Marks "has a history of posting discovery documents publicly," as if, even if true, doing so was wrongful and proves that Ms. Marks cannot be trusted to abide by the terms of the "Acknowledgment and Agreement to Be Bound." But the inference is completely unwarranted. The State Defendants do not contend that Ms. Marks has ever violated the Protective Order or any other Order of this Court. In addition, the discovery document that Ms. Marks posted was the State's contract with ES&S for outsourcng services ("the ES&S Outsourcing Contract"), a document that the State Defendants produced without restriction – it was not marked "attorneys eyes only"

or "confidential."  The document also is a public record under Georgia law, O.C.G.A. § 50-18-70.  The State Defendants' reaction to its posting, therefore, is antithetical to the policy of the State of Georgia: "public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions."  *Id.*

That the State Defendants would fault Ms. Marks for the truthful public report of a public record is particularly ironic given how the disclosure of this document - the ES&S Outsourcing Contract - forced the key State Defendant witness, Michael Barnes, on cross-examination to finally tell the truth about how the Secretary builds its ballots for the State of Georgia.  After initially testifying during his July 25, 2019 cross-examination (as he had in his testimony in September 2018) that the ballots were built by the Secretary in-house, Mr. Barnes was confronted with the ES&S Contract and admitted that, in fact, every ballot for every county for the 2018 mid-term elections had been built by three ES&S contractors in their homes, with no known security.[1]  In its published decision in

---

[1] In his 2019 cross-examination, Mr. Michael Barnes first testified that the Secretary of State's office did  the ballot building for all the counties, (Doc. 570, Tr. at 82 line 16), and that his office provided "the programming and configuration for GEMS databased and for the ballots for a vast majority of the elections in Georgia." (*Id.,* at 83 line 5).  Mr. Barnes was then confronted the ES&S Outsourcing Contract.  Only then did Mr. Barnes disclose that the Secretary of State's office *did none of the ballot building,* but, instead, pursuant to the ES&S Outsourcing Contract, paid ES&S to build the ballots.  Worse, the ballots were being by contractors "within their own purview," by which Mr. Barnes meant "at home." (*Id.* at 84-85).

this case, the Court explained at length how Mr. Barnes' 2019 testimony on cross-examination about the 2018 ballot building process was "entirely contrary" to the sworn testimony that Mr. Barnes had given in September 2018 -- while that ballot building process was underway.  *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1352 (N.D. Ga. 2019).   "Thus, the election programming for every county that is programmed by those external contractors, which included every county in Georgia during the November 2018 general election, travelled through an internet-connected computer where there is an attendant risk of infection by malware that can then be spread to voting machines."  *Id.,* 397 F. Supp. 3d at 1353.  The ES&S Outsourcing Contract not only forced Mr. Barnes, finally, to tell the truth under oath, it also exposed massive security lapses in the State's ballot building process.  The "State's reliance on ballot building contractors working independently in their homes without direct security oversight," among a number of other security lapses, demonstrated that  "Georgia's election system is not in fact an impenetrable secure air gapped system safe from intrusion or an advanced persistent threat." *Id.,* 397 F. Supp. 3d at 1367-68.

The third reason that the State Defendants provide for objecting to the Notice is the fact that they learned last week that Coalitions Plaintiffs are using representatives to review "confidential" documents and, in the course of their

review, also are inevitably exposed to "attorneys' eyes only" documents because that marking only appears at the bottom of the pdf – the State Defendants did not produce attorneys' eyes only documents separately or in a marked file.  Thus, as the Coalition Plaintiffs explained to the State Defendants, each pdf is first checked to determine if it is "attorneys eyes only" and, if it is, it is "skipped" and handled appropriately.  (Doc. 869-2 at 5).  State Defendants did not then, and do not now, suggest that there is a better way that the documents can be reviewed.  The State Defendants do not, and could not, maintain that the Coalition Plaintiffs have done anything improper or violated the Protective Order in any way whatsoever.

      The desgination of Ms. Marks as a consultant entitled to review "attorneys eyes only" material is therefore necessary, entirely proper, and in complete compliance with the Protective Order.

      This 8th day of September, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** **Plaintiffs,** v. E **BRAD RAFFENSPERGER, ET AL.,** **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on September 8, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record. In addition, pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown