```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,          :
                                     :
 5          PLAINTIFFS,              :
     vs.                             :   DOCKET NUMBER
 6                                   :   1:17-CV-2989-AT
     BRAD RAFFENSPERGER, ET AL.,     :
 7                                   :
            DEFENDANTS.             :
 8

 9

10         TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11           BEFORE THE HONORABLE AMY TOTENBERG

12             UNITED STATES DISTRICT JUDGE

13                   SEPTEMBER 9, 2020

14                      8:32 A.M.

15

16

17

18

19

20

21   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22              TRANSCRIPT PRODUCED BY:

23

     OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR
24                                   2394 UNITED STATES COURTHOUSE
                                     75 TED TURNER DRIVE, SOUTHWEST
25                                   ATLANTA, GEORGIA  30303
                                     (404) 215-1383
```

```
1          A P P E A R A N C E S   O F   C O U N S E L

2                        (SPEAKING ONLY)

3

4    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
     SCHOENBERG:
5

6        DAVID D. CROSS
         MORRISON & FOERSTER, LLP
7

8
     FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
9    WILLIAM DIGGES, III, AND RICARDO DAVIS:

10

11       BRUCE BROWN
         BRUCE P. BROWN LAW
12

13   FOR THE STATE OF GEORGIA DEFENDANTS:

14

15       VINCENT RUSSO
         CAREY A. MILLER
16       ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

17       BRYAN P. TYSON
         TAYLOR ENGLISH DUMA

18

19

20

21

22

23

24

25   ***There were many other counsel present on the phone call but
     not listed on this appearance page.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
 1                    P R O C E E D I N G S
 2    (Atlanta, Fulton County, Georgia; September 9, 2020.)
 3              THE COURT:  Good morning, Counsel.  Tell me who is
 4    there as lead counsel, and I'm not going to go beyond that for
 5    now.
 6              MR. CROSS:  Good morning, Your Honor.  David Cross
 7    for Curling.
 8              MR. BROWN:  Bruce Brown for Coalition.
 9              MR. TYSON:  Good morning, Your Honor.  Bryan Tyson
10    for the State defendants.  Mr. Russo and Mr. Miller are here as
11    well.
12              MR. RUSSO:  Good morning, Your Honor.
13              MR. MILLER:  Good morning, Your Honor.
14              THE COURT:  Good morning.
15              So you-all spoke -- you-all spoke at -- together
16    starting at 8:00 in the morning.
17              Did you make any progress?
18              MR. CROSS:  This is David Cross.  Unfortunately not
19    much.  It may just help us to walk through the issues where we
20    are.
21              THE COURT:  All right.  Just a second.  I'm just
22    printing one of the lists.  Just one second.
23                    (There was a brief pause in the proceedings.)
24              THE COURT:  Go ahead.
25              MR. CROSS:  So what we had proposed is that each
```

1   witness would testify only once.  And that would mean, for

2   example, if there is a witness that the State is going to call,

3   like one of their own employees, whether they call them as a

4   witness in our case and then have the witness recalled later,

5   the witness would testify only in their case.  We would just

6   wait to call the witness for our examination with someone like,

7   say, Mr. Cobb or Mr. Hamilton.

8          But in typical practice that would mean our cross --

9   our examination would not be limited to the scope of their

10  direct.  And the same would go the other way.  Any witness that

11  they want to examine that we call, we would call that witness

12  once and they would do their cross and whatever they want to

13  cover that is relevant.  That way that witness doesn't have to

14  get recalled in their case.  We did not have agreement on that.

15         There are two points of disagreement.  One, the State

16  is unwilling to agree that cross can exceed the scope of direct

17  even though they do think witnesses should testify once.  That

18  would mean anybody who calls a witness could dictate the scope

19  of cross, which anyone gets to do just by having a very short

20  limited direct.  We don't think that is fair.

21         The other disagreement is they think the witness

22  shouldn't testify to anything new beyond what is in their

23  declarations.  Just as an example given the examination that is

24  going on with the BMDs this week, we don't think that is fair

25  either.

1    MR. TYSON:  Your Honor, this is Bryan Tyson.  I think

2  maybe we need to start with a more fundamental question, which

3  is we have obviously raised the issue of the -- of there just

4  being argument only and/or if we are going to have witnesses

5  hearing from things that you haven't heard already.

6        And so it might be helpful just to kind of zoom out

7  and start with what we are anticipating in terms of scope and

8  focus of the hearing.  And then we can get into some of the

9  minutiae of this because there is obviously going to be a

10 difference in an expert like Dr. Halderman and fact witnesses

11 and those kind of things.

12       So from the State's perspective, I think it may make

13 more sense to start with that global question before we dig

14 down to specifics of how we are handling particular witnesses.

15       THE COURT:  That is fine.  That is fine.  But -- and

16 I have some observations and concerns regarding this as well.

17 I can't say that I have read everything at this point.  I have

18 tried to read all of the experts' affidavits last night again

19 so I could get a fix on that and -- and read enough so that

20 I -- though I plan to spend a good portion of today still

21 reading.

22       I think that one of my concerns is this:  I have

23 already -- first of all, let me deal with the low-hanging fruit

24 about scope.  I have dealt extensively with standing.  The

25 State has raised it extensively; has had opportunity to take

1    depositions; has not done so.

2         I'm not willing to spend time on standing at this

3    juncture, having spent such an inordinate amount of time, in

4    fact, on standing issues and recently, not just a year ago or

5    two years ago.

6         So I don't think that the calling -- the State's

7    calling of individuals for purposes of reviewing standing is a

8    good use of the Court's time.  You are welcome to do this on

9    your own time later.  But it is not going to be productive.

10        So to the extent that that is -- I'm not addressing

11   it in terms of being abusive or anything else that might be

12   raised in the context of the motion for protective order.  It

13   is just the inherent authority of the Court to control this

14   proceeding.  Which having still not endless time and which I

15   need to move promptly, it does not make sense.  So let me just

16   try -- that is Number 1 in terms of the time and the witnesses

17   listed by the State.

18        Now, one of the issues that I think that is of some

19   concern is -- you know, I have a number of experts here listed

20   by both parties.  And to the extent I'm allowing expert

21   testimony at this juncture, you know, I would hope it to be

22   productive as well or at least helpful for me to understand --

23   be able to ask some questions.

24        There are two issues for me at the moment.  One is

25   that a substantial portion of some of these experts' testimony

1    may be deemed -- has been at least for now classified by

2    defendants as super confidential.  And so I'm not clear

3    relative to the testimony that would be in open court how that

4    would be handled and would we have to reserve all of those

5    individuals and their testimony to, you know, a discrete part

6    of the hearing and cease the public of hearing for that portion

7    of the testimony because it is so interwoven and then go on to

8    a different number.  I mean, it is somewhat awkward I have to

9    say.  So that is one issue.

10           And it is not clear to me in terms of the examination

11   of the defendants' expert witnesses what -- at this juncture

12   what the -- whether the plaintiffs are seeking to have

13   extensive opportunity to do an examination and what you are

14   thinking.

15           I will say that just in terms of again something that

16   is productive under the framework that I have identified for

17   the hearing is, one, I guess I still reject the notion that it

18   is going to be helpful to the Court at this juncture -- I'm not

19   going to agree to be subject -- to have just oral argument.  At

20   the same time, there clearly are some conflicts in the evidence

21   at this juncture that would be very difficult for the Court to

22   resolve regarding the BMD data system issues.

23           And they certainly are potentially resolvable, and it

24   is certainly so that plaintiffs' experts have only -- are just

25   really beginning to be able to look into the function -- the

1    internal functionality of the system -- by a computer -- a BMD

2    for its usage.  And so something might emerge as of Thursday.

3            But -- and it is not that there is a problem with it

4    emerging as of Thursday at this point because the defendants

5    can obviously have their experts listen.  But I just think that

6    it is -- as much as that particular -- those particular issues

7    are sufficiently contested, it seems to me that it would still

8    be at this juncture very challenging for the Court to make the

9    findings necessary for a preliminary injunction.

10           Yes, it could educate me.  But I could have more

11   supplemental information as well to do that if you are really

12   at this -- if it is all -- basically great difficulties emerge

13   that are just -- that are basically -- that either give rise to

14   the need for me to hear more about this come -- come the

15   election and after the election or, on the other hand, just

16   simply that the record can be obviously supplemented as

17   Dr. Halderman and the plaintiffs do more work on what has been

18   accessible to them.

19           But I am concerned about this because it is a very

20   unwieldy circumstance to have the public hearing and at the

21   same time be stuck on matters that, you know, normally if we

22   had more time we would really try to figure out how more

23   effectively to segregate that testimony and how would that be

24   done and how would that be done also with the party itself not

25   being able even to sit in there if the attorneys' eyes only

1    determination holds.  And I haven't had enough time to go

2    through each of those issues or the attorneys to raise -- and

3    we're still basically sorting through those issues.

4          But what I can see is that there are certainly

5    considerable conflict about these.  Now, on the other hand,

6    I'm -- I think the issues as to the Poll Pads are straight --

7    are lots more straightforward in those concerns and something

8    that I could -- the Court could address and -- potentially or

9    also be -- have a clear idea of why -- of the State's position

10   than I do at this juncture.

11         So -- and there may be some other areas like that

12   that it absolutely will be useful right now and not as awkward.

13   So those are my general thoughts and concerns.  And --

14         MR. CROSS:  Your Honor, this is David Cross.  On the

15   AEO issue, we should be able to manage that as we have in the

16   past.  Your Honor may recall last summer the Fortalice reports

17   were a big focus of this hearing.  Those were designated AEO --

18   certainly confidential and I think AEO.  And we were able to

19   navigate that, as I recall, without having to publicly disclose

20   things that the State was concerned about.  And I envision

21   being able to do that again here.

22         I think on those types of issues we don't have to get

23   explicit for the examinations we want to conduct.  I think we

24   can do it as we did in the past.

25         We do anticipate there will be a lot of discussion of

1    the examination that we have done.  We expect there will

2    probably be a demonstration.  They are still working on their

3    analysis.  But, you know, we did that with the DREs, and that

4    was all in open court as well.

5         So notwithstanding the scope of the confidentiality

6    designations, we have navigated that.  And I don't think it is

7    going to be a problem here as it was not in the past.

8         MR. BROWN:  Your Honor, this is Bruce Brown.  In

9    terms of the Coalition's experts -- and I would agree with

10   Mr. Cross on that -- we have Dr. Stark and Harri Hursti and

11   Kevin Skoglund.  Neither Stark nor Hursti will rely on any

12   confidential information in their testimony.  Skoglund might.

13   But, again, there may be ways for us to navigate around that by

14   the way we couch the testimony and not cover things that have

15   already been covered under seal.

16        MR. TYSON:  Your Honor, this is Bryan Tyson for the

17   State defendants.  I believe the only document that we filed

18   under seal was the testimony of Mr. Hamilton regarding kind of

19   what has been done kind of on the specific topic of the

20   Fortalice reports.  So I don't believe anything else for the

21   State has been filed under seal.

22        Mr. Cross has mentioned a demonstration of the

23   system.  I think, again, one of the challenges we're going to

24   have is this is being done over Zoom.  So it is going to be a

25   little bit more limited access for our expert to figure out

1    what is going on with the demonstration.  So I'm just trying to

2    balance all those different interests.  I recognize -- I think

3    Your Honor is correct there are some things that will be

4    helpful for you to hear from people on.  And maybe a division

5    by topic makes more sense to cover.  For example, there's

6    discussions of audit.  There are discussions of Poll Pads.

7    There's discussions of scanner thresholds.  There's discussions

8    of BMDs, discussions of kind of general cyber principles.

9          Each of those is really kind of right now a distinct

10   area.  And at least for the plaintiffs -- I mean, we are kind

11   of at a point where they are asking for relief in all those

12   different areas.  And it may make sense to take those areas one

13   at a time by topic instead of trying to do something like a

14   more typical hearing.

15         But, again, I think it comes down to what do you need

16   to hear from as opposed to us just putting up a bunch of people

17   that are giving you information that is not really relevant for

18   the decisions that you need to make.

19         MR. CROSS:  Your Honor, this is David Cross.  I don't

20   think we can organize by topic because you are going to have

21   witnesses that cover multiple topics.  So you would have to

22   recall witnesses.  And I think we would like to avoid that.

23         And from my perspective, Your Honor has been very

24   adept in the past, as any judge is, to help people move on.  We

25   certainly are not looking to waste time.  Our witnesses for

1   Curling plaintiffs are going to focus principally on the

2   cybersecurity issues.  I think Your Honor is going to be very

3   surprised and unsettled on what you are going to see.

4          We're going to talk feasibility a bit because the

5   presentation from the defense and the papers on this being a

6   big change and a heavy lift is not accurate.  We will certainly

7   touch on that.

8          Then we will talk about the audits.  But I think it

9   has always worked well in the past as in any trial to set time

10   limits.  We call our witnesses.  And if it is not helpful, you

11   tell us to move on.

12          THE COURT:  The witnesses that the plaintiffs have

13   identified to call, have you made arrangements for their

14   availability?

15          MR. CROSS:  Yes, Your Honor.  For our own witnesses,

16   we have worked that out.  We're doing testing today on the

17   Zoomgov platform both with the court and separately on our own

18   just to make sure everyone that we are going to put up and all

19   of our lawyers are comfortable with that platform.

20          By the way, Your Honor, we also have a trial vendor

21   that has their own license to the Zoomgov.  They will be

22   supporting us in the background.  So we will have some

23   additional resources on our end just to make sure everything

24   works.

25          To the witnesses we would call that are defense

```
 1  witnesses, again where we left that was, even though there are
 2  some defense witnesses we would call in our own case, we are
 3  perfectly happy to just leave those for when the defense calls
 4  them, as long as the defense is committed to calling them.
 5          We don't want to have a situation where we rest and
 6  then they say, well, we decided not to call witnesses that we
 7  would have called ourselves.  As long as they are committing to
 8  calling those overlap witnesses, we'll let them wait until
 9  their case.  They do whatever examination they are doing.
10  We'll do whatever examination we are going to do.  And the
11  witness is on and off the stand once.
12          So if we have a commitment from them that they are
13  going to present those people, then I think all the witnesses
14  we have confirmed availability across the two days.
15          THE COURT:  What I'm saying is, for instance, Mr. --
16  Dr. Juan Gilbert, have you made arrangements with the defendant
17  to have him available?
18          MR. CROSS:  Yes.  Both sides have discussed -- well,
19  I mean, this is my understanding.  Mr. Tyson will tell me if
20  I've got it wrong.
21          We have discussed -- subpoenas were served by our
22  group.  And my understanding is that all of these people will
23  appear to the extent either side is calling them.
24          MR. TYSON:  Your Honor, this is Bryan Tyson.  I think
25  the one issue that might be outstanding on the witness list is
```

1    Dr. Coomer from Dominion.  I believe the plaintiffs had served

2    a 30(b)(6) notice on Dominion that they withdrew.  And we have

3    not decided yet whether we are calling Dr. Coomer.  We would --

4    so I think that's the one that may not be covered by what

5    Mr. Cross has described here.

6              MR. MILLER:  Your Honor, if I may, this is Carey

7    Miller.  Specific to Dr. Gilbert, I just wanted to -- we really

8    haven't had any detailed conversations in terms of

9    availability.  Dr. Gilbert was served with a subpoena this

10   morning.

11             I think after speaking with him yesterday, there are

12   going to be some restrictions kind of on his time availability

13   just due to his responsibility in teaching his graduate

14   students.

15             I'm sure we can work those things out.  But that is

16   kind of the one thing I wanted to flag in terms of his time

17   frame for availability.

18             THE COURT:  Well, please do as to any of the people

19   who are affiliated with the State.  Will you please identify

20   what their -- talk with counsel and really -- just as an easy

21   thing right now, if you know it, basically go ahead and send

22   them a note indicating what the time -- whatever periods of

23   time each of these witnesses might not be available.

24             I have -- I think the State -- and maybe I missed

25   it -- failed to provide me with the requisite notice of the

1   September 10, 2020, hearing in connection with -- more

2   importantly the proposed rule for auditing, which my

3   August 2019 order required.

4           But at this point, that is neither here nor there.  I

5   mean, I think it is attached as one of the -- as an exhibit now

6   to one of the plaintiffs' filings.

7           But are there any individuals who have to be present

8   at that hearing?  I mean --

9           MR. TYSON:  I'm sorry, Your Honor.  This is Bryan

10  Tyson.  I may not have understood your question.  I believe we

11  have filed the audit rules on the 21st of August.

12          THE COURT:  Maybe you did, and I didn't see it.

13          MR. TYSON:  But what was the question about a witness

14  relating to that?  I apologize.

15          THE COURT:  The hearing in front of the State Board

16  is at 9:00 A.M.  So I'm assuming it will be through, that there

17  will be no conflicts because of that.

18          Is that a fair assumption?

19          MR. TYSON:  Yes, Your Honor.  I'm sorry.  You are

20  referring to the State Election Board meeting tomorrow, yes.  I

21  don't believe we are going to have anybody who has a conflict

22  for that because I believe that meeting will be complete by the

23  time we get to our hearing.

24          THE COURT:  All right.  So at this juncture, you-all

25  don't agree about consolidating witnesses in the way that

1    Mr. Cross has proposed.

2         Let me just say this is what I'll -- I think it would

3    be better to have individuals up once.  But I think I've

4    allowed enough time if people are really moving through the

5    witnesses as anticipated to -- you know, to allow a more

6    traditional structure.

7         But if I don't think it is being productive, I'm

8    going to just change course.  And I mean -- and just -- I mean,

9    I have authority to do -- to manage this as I see fit because

10   it would be -- and I'll see how far this -- how much this

11   works.

12        But I know that the plaintiffs have said, oh, you are

13   going to be surprised at how easy the transition is.  And I

14   might be.  But there still are significant issues as you-all --

15   the plaintiffs are aware about changing at this late moment.

16        There are things that are not so significant.  And I

17   just -- I urge you to keep this in mind that if you are

18   giving -- providing a foundation for the future, you know, and

19   all are aware that this is what we're walking into, that is one

20   thing.

21        But I don't -- I don't want to waste time at this

22   juncture.  So it is hard for me to conceive exactly of how a

23   transition to an entire new system at this moment is going to

24   work but -- or would be -- under the current record if I did a

25   wholesale change.

1          But I've allowed you to present the hearing and go

2     forward because of the fact that there may be things that can

3     be done to at least secure the vote from the plaintiffs'

4     perspective that will be reassuring to the public rather than

5     something else.

6          And these are serious issues that have been raised.

7     But to the extent that -- again, that we end up in a war of

8     experts about some of these issues, it would be very tough to

9     resolve on -- this week.

10         So it is just a reiteration of my concerns identified

11    before.  But there are issues that I would like to talk about

12    further that I think that there are -- that there is a reason

13    to say, listen, a remedy right now can be implemented

14    potentially to address this issue.

15         MR. CROSS:  Your Honor, this is David Cross.  I'm

16    sorry.

17         THE COURT:  Go ahead.

18         MR. CROSS:  I was just going to say, just maybe to

19    ease your mind a bit, what we will be presenting and asking for

20    in the hearing is not going to be a wholesale change to a new

21    system.  We'll explain that, and we'll walk through that as to

22    why.

23         I think the witnesses will be really helpful because

24    I think what we are going to be focused on is going to be

25    something far short of that.

1          We understand Your Honor's concerns.

2          THE COURT:  Just one second.  I'm sorry.

3          **(There was a brief pause in the proceedings.)**

4          THE COURT:  All right.  So we're just moving forward

5    as you have set forth here.  I have already ruled about the

6    question of the defendants calling the plaintiffs or their

7    representatives as to standing issues and ruled that that would

8    not at this point be productive or useful.  And so I'm not

9    going to allow you to proceed in that way.

10         And if we end up with any sort of the confidentiality

11   issues, then you are going to have to flag them for me so we

12   can separately deal with them and potentially do them at a

13   separate hearing at the end.

14         And I have -- while I don't know what is on the

15   docket at this point, I did look at the background just by

16   looking at the web of the individual -- the nonparty-related

17   individual that -- Susan Greenhalgh that the Curling -- I'm

18   sorry -- the Coalition plaintiffs referenced.

19         And she appears to have specialized skills and not to

20   be a party representative.  So that if the Coalition wishes to

21   secure her consulting services and have her sign -- I assume

22   she already has signed the confidentiality agreement -- you can

23   use her.  But you would have to really, Mr. Brown, go over in

24   great detail what her obligations are relative to communicating

25   with other people that she knows.

```
 1              MR. BROWN:  Yes, Your Honor.

 2              THE COURT:  I put this on you.

 3              MR. BROWN:  Yes, Your Honor.

 4              THE COURT:  So we're going to begin at 1:00.  And is

 5    there anything else that we need to address at this juncture?

 6              MR. RUSSO:  Your Honor, this is Vincent Russo.  I

 7    believe the plaintiffs also submitted some information on

 8    Ms. Rhonda Martin yesterday as a consultant.

 9              Was there a decision on her?

10              THE COURT:  I'm sorry.  I don't have anything --

11    anything else.  And Ms. Martin is a named plaintiff.  So I

12    don't have anything else that would distinguish her from

13    Ms. Marks at this time.

14              MR. RUSSO:  Thank you, Your Honor.

15              MR. BROWN:  For your information --

16              THE COURT:  I mean, I see the last docket entry is

17    Ms. Martin and -- I'm sorry -- and, obviously, she has -- there

18    is no question that she has extensive skills.  But I don't know

19    how to distinguish her as a party at this juncture.

20              So go ahead, Mr. Brown.

21              MR. BROWN:  No.  I was just going to say that, as you

22    know, she obviously has the qualifications in terms of who she

23    is.  She's not a named plaintiff.  She is a director of the

24    Coalition, an employee of the Coalition.  So she would -- we

25    would argue she has the independence necessary under my
```

1    direction to follow the terms of the protective order with

2    respect to attorneys' eyes only and more important that there

3    is no damage to the defendants for having the AEO material

4    available to her, which is the question on the AEO is what

5    damage is it to give it to either Ms. Greenhalgh or Ms. Martin

6    or for that matter Ms. Marks, as opposed to confidential

7    information which they would be authorized to view.

8            THE COURT:  The only -- is there anything further

9    that counsel for the State wishes to say?

10           You addressed this issue as to Ms. Marks in your

11   papers.  You didn't really address anything related to

12   Ms. Martin other than generically.

13           MR. RUSSO:  Sure.  Your Honor, this is Vincent Russo.

14   I mean, if there is something that the plaintiffs believe

15   should be marked confidential that is marked AEO, I think that

16   is -- you know, there is a process for us to go through to

17   discuss that and we can try to work that out and, if we're not

18   able to, bring it back to you.

19           Otherwise I don't think she is any different than

20   Ms. Marks or any other named plaintiffs.  And if we're going to

21   allow, you know, the plaintiffs to be able to look at AEO --

22   the documents that are marked AEO, I think that makes the

23   designation pointless.

24           THE COURT:  All right.  Well, where are we on getting

25   identification of all the AEO documents to the plaintiffs?

1          MR. BROWN:  Your Honor, last night we received a list

2   of the AEO documents.  And part of the difficulty is the

3   limitations on reviewing those -- that is me and Mr. McGuire

4   for the Coalition -- to be able to review those to challenge

5   them.

6          They are almost uniformly user manuals and documents

7   relating to the Dominion product.  Many of the documents have

8   been produced by Dominion.  Many of the documents we have been

9   able to determine are actually on the internet already or were

10  produced by Dominion.

11         THE COURT:  All right.  If they are on the internet

12  already, you obviously should be able to resolve the question

13  of their confidentiality or AEO.  I mean, to me, that is where

14  you should start this morning and -- so that you can resolve

15  these issues.

16         And I can't -- you know, anything that is generally

17  available and accessible publicly or to representatives of the

18  State who are -- who are engaging in RFP processes, come on.

19  Those need to just be cleaned up.

20         So I would say do that all -- get that all done this

21  morning so that you can -- also that you can just -- your folks

22  can help you review those and any other similar -- any other

23  documents that would fall under that.

24         MR. BROWN:  Yes, Your Honor.

25         THE COURT:  And I think a lot of this will be taken

1    care of.  And then obviously somebody else can also -- by my

2    ruling can assist in anything else.  And obviously still the

3    plaintiffs are going to be looking at the same stuff.  I don't

4    think I have left you without a -- without a true team.  So --

5              MR. BROWN:  Thank you, Your Honor.

6              THE COURT:  All right.  Well, I'm going to close out

7    now.  And hopefully we won't have to have an emergency call

8    today.  We have some time tomorrow to work out some things too.

9              MR. CROSS:  Your Honor, this is David Cross.  Could I

10   ask one question as a suggestion for tomorrow?

11             THE COURT:  Yes.

12             MR. CROSS:  One other thing we had thought would be

13   useful to the Court was very brief opening statements.

14   Literally like a few minutes where we can just say, Your Honor,

15   this is what the key points --

16             THE COURT:  That is fine.  That is fine.  Do you

17   think five minutes, ten minutes?

18             MR. CROSS:  Okay.  Thank you.

19             THE COURT:  What are you saying?  Five or ten?

20             MR. CROSS:  I'm sorry.  We were saying ten minutes a

21   side.  So five minutes for each group.

22             THE COURT:  All right.  That is fine.

23             MR. TYSON:  Your Honor, this is Bryan Tyson.  One

24   last point is that the audit rules were filed at Docket Number

25   793, just so that you have that.

```
 1                THE COURT:  Okay.  All right.  I need to leave.  So I
 2     know you are --
 3                MR. BROWN:  Thank you, Your Honor.
 4                MR. CROSS:  Thank you, Your Honor.
 5                MR. TYSON:  Thank you.
 6                     (The proceedings were thereby concluded at 9:09
 7                     A.M.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                     C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    23 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   9th day of September, 2020.

14

15

16

17        _____
          SHANNON R. WELCH, RMR, CRR
18        OFFICIAL COURT REPORTER
          UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```