# State Defendants' Hearing Exhibit 1
*Curling v. Raffensperger,*
Dkt. No. 1:17-CV-2989-AT

**The New York Times** | https://nyti.ms/2DoHOLS

# Florida Recounts Senate Votes Yet Again, and Nelson's Chances Dwindle

By Audra D. S. Burch and Glenn Thrush

Nov. 16, 2018

LAUDERHILL, Fla. — After a chaotic statewide machine recount left a high-profile Senate race still undecided, Florida on Friday set out in earnest on a manual recount of ballots cast in the midterm election. But already Senator Bill Nelson's chances of holding on to his seat appeared to be slipping away.

With two of Florida's most populous counties reporting updated results on Friday, the Democratic incumbent appeared to be falling far short of the thousands of votes he needed to overtake his Republican opponent, Gov. Rick Scott, who held a 12,603-vote lead after the initial machine recount completed on Thursday.

Broward County, the South Florida region around Fort Lauderdale, gave Mr. Nelson less than 300 votes, according to the Scott campaign. In Miami-Dade County, he also made a slight gain: Though state results will not be officially filed until Sunday, Mr. Nelson added 348 votes, while Mr. Scott picked up 167, according to local news reports.

Broward County was a key to any hope Mr. Nelson might have of turning the race. Registered Democrats there outnumber Republicans by more than 2 to 1. The secretary of state's office on Friday said it had decided to accept Broward County's machine recount results — initially rejected because they were filed two minutes after the deadline on Thursday. The move is significant because Mr. Scott gained about 700 votes in the county.

Mr. Nelson had hoped to pick up as many as 9,800 votes in Broward County as a result of a large number of so-called undervote ballots — those in which a voter cast a vote, for example, in the governor's race, but not in the Senate race.

Broward County was unusual in that it had reported more than 30,400 of the undercount ballots. If they were not miscounted, then the most likely explanation was that they were in fact left blank, possibly because of the way the ballot was designed, with the Senate choices on the bottom left corner of the page, tucked beneath the voter instructions. Many have said it made the Senate race easy to miss.

Elections officials have not yet officially reported the new tallies, and in Broward, they said they would not do so until Sunday. But with the count incomplete, the Democratic official, who was not authorized to discuss the campaign's deliberations publicly, said it appeared that while Mr. Nelson had picked up some votes, they were not enough to put him over the top.

"It looks like this is the end of the line for the Nelson campaign. He was really relying on this undercount being due to machine error which, if that were the case, would have revealed more Senate votes," said Matthew Isbell, a Democratic data consultant from South Florida. "Considering how blue Broward is, it would have netted him thousands of additional votes. Without Broward, there is no obvious way he can make the votes up."

Mr. Scott's campaign quickly came to a similar conclusion. "With the hand recount concluding in most counties across the state showing no significant change in the margin, it's time for Bill Nelson to face reality and concede," Chris Hartline, a spokesman for the Scott campaign, said in a statement.

Mr. Nelson's campaign has not commented on the progress of the manual recount. But he was said to be huddling with his advisers, who are becoming increasingly pessimistic, and he could decide to drop out of the race in the next few days, two people close to the campaign told The New York Times.

Also subject to a manual recount is the race for state agriculture commissioner, an even tighter contest in which the Democrat, Nikki Fried, is ahead of her Republican challenger, Matt Caldwell, by 5,307 votes.

The still-undeclared governor's race escaped a second recount: Ron DeSantis, a conservative ally of President Trump, held enough of a lead over Andrew Gillum, the Democratic mayor of Tallahassee, that no recount was ordered, though additional uncounted ballots remain the subject of lawsuits. Though the race is effectively over, Mr. Gillum has declined to concede until every vote is counted.

Earlier in the day in Broward County, two-person counting teams — along with representatives from each campaign and party — sat around 100 tables in an airy warehouse at the office of the supervisor of elections, poring over tens of thousands of ballots contained in 29 plastic bins. It went quickly: Shortly before 10 a.m., less than two hours after they began, the counting teams were finished.

Meanwhile, the Scott campaign was demanding an investigation into reports that some Democratic Party representatives had altered official state affidavits distributed to voters whose ballots had been rejected because of mismatched signatures or other issues. The affidavits, used by voters to verify their identity and get their votes counted, instruct voters that they must be returned to election offices no later than the day before the election.

But according to the secretary of state's office, which has turned the matter over to federal prosecutors, affidavits were found in at least four counties that had been altered to say that voters had until two days after the election to return the forms. Republican officials believe this was done in anticipation of a Democratic Party lawsuit that successfully expanded the period of time for voters whose ballots had signature problems to get them rectified — an outcome that could theoretically expand the number of Democratic voters whose ballots were counted.

"Making or using an altered form is a criminal offense under Florida law," Bradley McVay, interim general counsel for the Secretary of State, said in a Nov. 9 letter to the United States attorneys in Florida.

Mark Herron, a lawyer for the Florida Democratic Party, said the matter was being investigated. "Upon receiving notice of the allegations that the form was incorrect, F.D.P. took immediate steps, including hiring an independent investigator to review the issues at hand," he said in an email. "As soon as we know the results of the investigation we will advise you."

The election has been marked by a wave of more than a dozen dueling lawsuits that have been filed in state and federal courts, each contesting some component of the election, from the validity of ballots with mismatched signatures to votes accepted by email.

Judge Mark E. Walker of the Federal District Court in Tallahassee, who vowed to work late nights and into the weekend to rule on the litany of lawsuits, late Thursday rejected a challenge to Florida's voter intent rules governing a hand recount, a decision that further shrinks Mr. Nelson's window to victory.

The federal lawsuit filed by Democrats targeted two standards that help determine voters' intent in cases where they either use different kinds of marks to signal their choices, or write in words to help specify their intent. They provide specific instructions, and according to challengers, these instructions often rule out counting ballots which, they contend, ought to be counted.

"These rules have been used for nearly 10 years, and they are clear, uniform rules that election officials have been trained to apply," Judge Walker wrote. "To enjoin the use of these rules now would create a substantial hardship on the defendants."

In yet another setback to the Democrats, Judge Walker ruled on Friday against the party's bid to force the state to count absentee ballots that arrived late because of problems with the mail.

The judge also rejected a League of Women Voters of Florida and Common Cause lawsuit that questioned Mr. Scott's role in overseeing the election as both a Senate candidate and the governor — he sits on the state's Elections Canvassing Commission, which certifies election results, and appoints two other members. The complaint accused Mr. Scott of using his office for an unfair advantage when he suggested state law enforcement officials investigate purported cases of fraud committed by Democrats during the election.

Mr. Scott's lawyer said on Thursday that the governor would recuse himself from the canvassing board. In any case, Judge Walker found that Mr. Scott had not improperly used his office. "Here, Scott has toed the line between imprudent campaign-trail rhetoric and problematic state action. But he has not crossed the line," the judge ruled.

"As a candidate, Scott can — and has — filed lawsuits. As a candidate, he can appear on television, post on social media, and even make baseless remarks about counties where populations cast majorities of ballots for his opponent," the judge said. "What Scott cannot do is undercut the count and mandatory recount of votes from his perch as a public official."

Mr. Scott, he added, while "sometimes careening perilously close to a due process violation" did not misuse his office. "As votes were still being counted, Scott asked — but did not order — state law enforcement to investigate two counties, citing no evidence for the investigation," he said. "There is a crucial and important distinction between asking and ordering."