# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-cv-2989-AT |

## STATE DEFENDANTS' RESPONSE TO COURT'S QUESTION ON UPDATED VOTER-LIST REPORTS

Pursuant to the Court's directive to counsel, but subject to the objections listed below, State Defendants provide the following answer to the Court's question regarding whether ENET will generate a report on the Saturday before the election containing updated information about which absentee ballots have been received by that point:[1]

The answer is yes, but it is not exactly that simple. There is no single report in ENET that includes all of the information located on the Poll Pads. County registrars can run a report that generates the elector's list from

---

[1] State Defendants provide this answer in a pleading because of the deadline given by the Court late this afternoon and because it was a request to counsel for State Defendants. If it would assist the Court to have the information in a declaration, State Defendants will provide one.

ENET (the same list printed by state officials several weeks before the election) at any time. It is an overnight report, so if it is requested one day, it will be made available on ENET for the county to download the following day. The elector's list contains an "AB" designation when a voter has either *requested* an absentee ballot or *voted* absentee at the time the report is run, but the elector's list does not differentiate between an absentee ballot that has been accepted and one that has been requested but not returned. That information must be obtained from a separate Absentee Voter Report, which allows poll officials to know whether an absentee ballot has been requested and accepted (assuming that the absentee-voting data has been timely entered into ENET by county election officials). The Poll Pads contain a graphical user interface that combines all of this data from these reports in a way that that makes it easier to use for poll workers—whose job it is to quickly and accurately check-in and confirm voter eligibility. All of that data is not combined in a single paper report, and there is no evidence in the record that those paper reports would be more user-friendly than the Poll Pads.

Ultimately, if counties want to provide this information on paper to precincts, they would have to print both reports (the elector's list and the Absentee Voter Report) and train poll workers on using both lists in case of

emergency. There is no evidence in the record that this would be preferable to the current practice of a paper backup elector's list at each precinct. Further, the weekend before the election is an incredibly busy time for county officials, as Mr. Harvey testified. Adding additional responsibilities on counties during that time could have unforeseen negative consequences.

State Defendants further point to the lack of evidence in the record before this Court regarding *malfunctions* of Poll Pads. While there were a significant number of poll-worker/user errors involving Poll Pads in the June 9 primary, only a handful of reports involved actual issues with the operation of the Poll Pads. After the June 9 primary, attempting to save time for poll officials, State Defendants added data to Poll Pads to not only show that a voter had requested an absentee ballot, but whether that absentee ballot had already been returned. This data is updated the weekend before the election. But initial reports from poll workers at the August 11 runoff indicated that almost all voters who showed up at the polls needing to cancel their absentee ballot had requested, but not yet returned, their absentee ballot. This fact pattern suggests that the necessary checks with county officials before allowing those individuals to vote would be required regardless of whether that data was also contained in paper form at the polling place. Therefore, an updated paper printout of the elector's list and/or absentee voter file would

not shorten the time necessary to process voters who had previously requested absentee ballots but would add significant burden to counties the weekend before the election.

State Defendants further raise the following objections because they are waived if not asserted when providing this answer. First, as the party seeking the extraordinary relief of a preliminary injunction in the context of elections, Plaintiffs bear the burden of proof as to all four requisites. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Plaintiffs continue to assert new theories and submit evidence, even through Dr. Stark's extensive declaration last night. [Doc. 891]. At the same time, Plaintiffs have not requested the information sought by the Court or presented evidence on this point related to feasibility, and should not be able to rely on evidence and information submitted by State Defendants at the Court's direction to satisfy their burden.[2]

Second, any relief about paper pollbook backups exceeds any relief sought by any operative complaint in this case. A preliminary injunction is

---

[2] The Eleventh Circuit has addressed this issue from a slightly different perspective, and its precedent provides an alternative basis for State Defendants' objection. *See Johnson v. United States*, 780 F.2d 902, 910 (11th Cir. 1986). *Cf. Paez v. Sec'y, Florida Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (addressing judicial notice).

not appropriate when it would grant relief of a different nature as that to be finally granted. *See De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945); *see generally* [Doc. 815] (also raising Eleventh-Amendment defenses to proposed interpretations of state law). This is especially true when the only real issue in Coalition Plaintiffs' motion about paper pollbook backups is the timing of printing of a paper pollbook list, which is an administrative detail of an election. *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986).

Third, as State Defendants have explained on multiple occasions, paper copies of the elector's list are generated by the Secretary of State at least five calendar days before the election. O.C.G.A. § 21-2-224(f). Those paper-backup elector lists for each precinct must be provided by the county superintendent for each polling place. Ga. Comp. R. & Regs. 183-1-12-.19(1); [Doc. 815-1, ¶¶ 3-4]. The registrars must provide the certified elector's list (contained on the Poll Pads) to each poll manager. O.C.G.A. § 21-2-401(b).

If the Poll Pads stop functioning, that paper elector's list is used to continue checking in voters. Ga. Comp. R. & Regs. 183-1-12-.19(1). County election officials are responsible for training poll workers of these requirements, which are included in the Secretary of State's *Poll Worker Manual*,

https://georgiapollworkers.sos.ga.gov/Shared%20Documents/Georgia%20Poll

[%20Worker%20Training%20Manual.pdf](#) (last updated August 2020), at page 71: "The poll officer shall verify the identity of the voter and that the person is a registered voter of the precinct **using the printed elector's list and supplemental list** (if the check-in functionality of the poll pad is not properly working)" (emphasis added).

Bearing in mind State Defendants' respect for this Court's efforts and its responsibilities in cases involving voting, State Defendants raise these objections to avoid waiving them. State Defendants appreciate this Court's continuing commitment to reach the right conclusion on these important issues.

Respectfully submitted this 14th day of September, 2020.

<div style="margin-left: 3em;">
Vincent R. Russo<br>
Georgia Bar No. 242628<br>
vrusso@robbinsfirm.com<br>
Josh Belinfante<br>
Georgia Bar No. 047399<br>
jbelinfante@robbinsfirm.com<br>
Carey A. Miller<br>
Georgia Bar No. 976240<br>
cmiller@robbinsfirm.com<br>
Alexander Denton<br>
Georgia Bar No. 660632<br>
adenton@robbinsfirm.com<br>
Robbins Ross Alloy Belinfante Littlefield LLC<br>
500 14th Street, N.W.<br>
Atlanta, Georgia 30318<br>
Telephone: (678) 701-9381<br>
Facsimile:  (404) 856-3250
</div>

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' RESPONSE TO COURT'S QUESTION ON UPDATED VOTER-LIST REPORTS** has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

>*/s/ Bryan P. Tyson*
>Bryan P. Tyson