IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

**PLAINTIFFS' NOTICE OF FILING MATERIALS REGARDING GEORGIA'S INTENDED REPLACEMENT OF DOMINION BMD <u>SOFTWARE ACROSS THE STATE</u>**

Plaintiffs jointly submit the attached expert declarations for the Court's consideration of their pending preliminary injunction motions (Dkt. Nos. 785 and 809) and State Defendants' sudden plan—announced during the Court's September 28, 2020 conference—to replace the software on every Dominion BMD in every county for elections beginning in about two weeks.[1]  The intended statewide software replacement for every BMD is a far greater and riskier change to the election system than merely using HMPBs in lieu of the BMDs.  The Court should immediately invoke Georgia's emergency paper ballot backup plan.

---

[1] Dr. Coomer acknowledged that all 159 counties "basically [] are going to have to load all the software anew and take off the old software."  (Tr. 64:9-16.)

State Defendants' characterization of a software failure requiring a statewide reprogramming of every BMD as a "very minor issue" is far from accurate and contradicted by their own explanation of what they intend to do, just two weeks before voters are expected to vote on the BMDs.[2] (Tr. 6:4-6.) Their arguments even contradict their own prior positions in this case.[3] This issue further confirms that the Dominion BMD voting system is not ready to be deployed in Georgia and that hand-marked paper ballots ("HMPBs") are the only reliable, secure voting means available for Georgia elections, just as the State's emergency backup plan provides.[4]

In an attempt to downplay the obvious seriousness of replacing the BMD software on some 34,000 machines across 159 counties just two weeks before voting

---

[2] Dr. Coomer admitted the software failure with the BMDs prompting the installation of new software across the state involves the Android operating system itself, not merely some "minor" software on the BMD. (Tr. 12:22-24 ("What we discovered is that the underlying issue is the way that the ICX is communicating with the underlying Android operating system."); *id.* at 64:9-16.) He also claimed that "it is not a systemic issue," and yet admitted the need to replace the software on every BMD in Georgia—which is the very definition of a "systemic issue."

[3] For example, State Defendants for weeks have objected to fixing Georgia's flawed scanner settings so as not to disenfranchise voters because that purportedly would require some sort of software change. Yet, they now defend reprogramming the software on every BMD (which far outnumber the scanners).

[4] Plaintiffs' experts did not have an opportunity to respond to this shocking revelation during the conference and thus submit this filing as rebuttal testimony, which includes testimony from three leading election security experts: Dr. Alex Halderman (Exhibit 1), Mr. Harri Hursti (Exhibit 2), and Mr. Kevin Skoglund (Exhibit 3).

begins, State Defendants did a complete about-face during the conference. When confronted with their own prior argument that it is far too late to make any changes to the election system this year because elections are already "underway," State Defendants now claim that argument concerned absentee voting, not BMDs. (Tr. 37:7-16.) This makes no sense given the primary relief Plaintiffs seek in their preliminary injunction motions concerns the BMDs, not absentee voting (which already uses HMPBs). This reversal confirms the frailty of this argument, as does the lack of supporting evidence.

State Defendants' defense of this audacious plan belies their argument that it is too late for the modest relief Plaintiffs seek. The intended statewide software replacement for every BMD is a far greater and riskier change to the election system than merely using HMPBs in lieu of the BMDs, the solution provided by statute. (O.C.G.A. 21-2-281, 21-2-334; SEB Rule 183-1-12-.11(2)(c)-(d).) The latter involves simply leaving the BMDs and printers in storage and instead using the existing protocols, equipment, training, and infrastructure already in place for HMPBs, per the emergency backup plan for the BMDs. (Dkt. No. 892-18, PX11) State Defendants acknowledge, on the other hand, that this new software rollout will require Pro V&V to approve and test the software, which the Secretary then has to load onto 159 USB drives and securely deliver to 159 counties, each of which then

has to install the software on hundreds or thousands of BMDs and then reprogram the election on the BMDs and subsequently conduct Logic and Accuracy testing on each of those machines, with voting on the BMDs beginning in about two weeks. (Tr. 12:20-18:23.)  And Defendants have no backup plan if the Pro V&V testing or logic and accuracy testing fails with the new software—or if the machines fail during voting—apart from the emergency backup plan already in place for HMPBs, which should be invoked immediately for Early Voting and Election Day.

State Defendants' audacious plan does not even ensure EAC approval, which almost certainly cannot happen in time for Early Voting to begin or even for Election Day, which means Georgia voters would be forced to cast their votes on machines with new software developed by a third-party vendor *over the course of a weekend* that would not be EAC-certified.  Implicitly acknowledging this, State Defendants again reversed position and argued that they need not use an EAC-certified election system.  (Tr. 39:24-40:7.)  This contradicts the clear intent of Georgia law (O.C.G.A. § 21-2-300(a)(3)), as State Defendants themselves previously argued.  (Dkt. No. 658 at 14 ("Georgia requires EAC certification for its election machines.").)  State Defendants themselves previously emphasized EAC certification as evidence of the BMD system's purported security and reliability, which they now argue is purely optional.  (*Id.*; Dkt. No. 905 at 248:3-251:14 ("We are using an EAC approved

system.").)  By their own argument, the system plainly is not secure or reliable if it lacks even the minimal EAC certification.  Moreover, the lack of EAC certification was State Defendants' only defense for not using Dominion's *non-barcode* BMD system.  (Dkt. No. 658 at 14-15.)  And their own expert, Dr. Juan Gilbert, rightly scoffed at the idea that Georgia would use a system *not* certified by the EAC, which they now say they may use.  (Dkt. No. 658-3 at ¶ 47 ("EAC certification is a significant point, in and of itself . . . and is necessary to provide assurance of a voting system's integrity.").)  Lastly, reprogramming every BMD in the state with new software is not at all consistent with the EAC's standard for a "de minimis" change.  Dr. Coomer previously admitted that the emergency EAC approval process Georgia is pursuing for a "de minimis" change "is for something like literally a one-line configuration change in some config file that would have no material impact on the system." (Dkt. No. 905 at 102:18-103:14.)

State Defendants' statewide reprogramming plan also does not include any security testing.[5]  And yet this plan is a Herculean undertaking involving likely hundreds of personnel across the state (who are supposed to be completing logic and accuracy testing and preparing to begin elections).  (Tr. 54:2-4 (confirming counties

---

[5] Any reliance on hash value comparisons, as previously suggested by Pro V&V's Jack Cobb, would be ineffective, as he admitted that can be circumvented by malware.  (Dkt. No. 905 at 235:4-236:25.)

5

received database files nearly two weeks ago).) It also involves countless delivery drivers or couriers to be trusted to reliably deliver each USB drive to each county, without damage or compromise. It is no exaggeration to say that this a nightmare scenario that presents grave risk for additional software bugs and a successful malware attack, any of which could disenfranchise voters and alter election outcomes. Any software change can introduce serious vulnerabilities or defects, even absent malware. (Dkt. No. 905 at 251:8-14.) It can lead to catastrophic consequences even with a seemingly minor software change aimed at fixing a single bug, as Boeing tragically learned with its 737 Max flight-control software.

Finally, State Defendants' repeated false attacks on Plaintiffs must stop. After refusing even to respond to Plaintiffs' inquiries seeking to understand this serious issue, State Defendants publicly accused Plaintiffs of engaging in "a disinformation campaign about Georgia elections." (Tr. 31:22-24.) The Secretary later publicly attacked Plaintiffs as "activists determined to undermine the credibility of our elections"—an utterly false and despicable attack on Plaintiffs' integrity.[6] Not only

---

[6] *See* https://www.law.com/dailyreportonline/2020/09/28/federal-judge-grants-narrow-injunction-challenging-states-electronic-voting-system/?slreturn=20200829085824. The Secretary also publicly attacked this Court, claiming its detailed, thorough, 67-page decision, reflecting the Court's own careful review of the extensive record, misstates the facts because it "is based on the plaintiffs' inaccurate characterizations of Georgia's elections systems." (*Id.*) This obviously is untrue and consistent with the Secretary's own lack of candor in

6

are these public reputational smears highly inappropriate, they ignore the reality that *State Defendants* are the ones who have been caught in repeated misrepresentations in this case—including under oath—and also are the ones defending an election system that not a single expert supports. They literally could not find one expert to endorse Georgia's Dominion BMD voting system, which their own prior experts advised against. Now they intend to embark on a statewide reprogramming of the BMDs, again without the support of any election security expert and likely without EAC certification, which is the mere starting point for reliable elections. The train is leaving the tracks in Georgia heading into the upcoming elections, with Plaintiffs and every other Georgia voter stuck onboard. This Court alone has the power to prevent the disaster that will ensue, one that will dwarf the chaos of the June 9 primary elections and disenfranchise countless voters across the state—and possibly even alter election outcomes from those the voters intended.

After insisting for months that it is far too late to make any changes to Georgia

---

these proceedings and with the public about the serious deficiencies with Georgia's election system. And this is not the first time the Secretary publicly attacked this Court. For example, in response to the Court's August 2019 preliminary injunction decision, the Secretary publicly claimed: "These conclusions are silly and unfounded. At the end of the day no judge should be susceptible to political Rhetoric." (Kate Brumback, "Judge blasts Georgia officials' handling of election system," Associate Press (Aug. 17, 2019), https://apnews.com/3bb82cd078444a42b9aad64faadc802b.)

ny-1985617

elections, the Court should hold Defendants to their argument. It should enjoin Defendants from a reckless, high-risk, statewide reprogramming of some 34,000 BMDs across 159 counties and order the immediate implementation of the State's existing emergency paper backup plan using HMPBs for all elections. This is the plan developed and intended by the State for situations such as this. Voting machines that State Defendants themselves admit cannot reliably function absent statewide reprogramming, involving hundreds of election workers and delivery personnel, two weeks before their use in elections with software developed hastily over a weekend are not practicable for voting and must be shelved. HMPBs are what Georgia requires in these circumstances—and the U.S. Constitution does too.

State Defendants present this Court with two options to choose from for elections this year: a statewide reprogramming of every BMD with hastily-developed software not fully tested or potentially even EAC-certified, or merely invoking the existing backup plan to use HMPBs. Their defense to Plaintiffs' preliminary injunction motions—the argument that no change is warranted or allowed at this stage—is long gone. Indeed, it is State Defendants who intend a sweeping change to the election equipment. Plaintiffs seek only what the State already requires and already has prepared for in such circumstances: HMPBs.

Respectfully submitted this 29th day of September, 2020.

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| John P. Carlin (*pro hac vice*) | GA Bar No. 425320 |
| Lyle P. Hedgecock (*pro hac vice*) | Adam M. Sparks |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 341578 |
| Robert W. Manoso (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2000 Pennsylvania Avenue, NW | Suite 3250 |
| Suite 6000 | Atlanta, GA 30309 |
| Washington, DC 20006 | (404) 888-9700 |
| (202) 887-1500 | |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

| | |
|---|---|
| /s/ Bruce P. Brown | /s/ Robert A. McGuire, III |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges, Ricardo Davis & Megan Missett*

9

ny-1985617

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER , ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

### CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2020, a copy of the foregoing **PLAINTIFFS' NOTICE OF FILING MATERIALS REGARDING GEORGIA'S INTENDED REPLACEMENT OF DOMINION BMD SOFTWARE ACROSS THE STATE** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross

11

ny-1985617