# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DONNA CURLING, *et al.*,

    Plaintiffs,

v.                                                    Case No. 1:17-cv-02989

BRAD RAFFENSPERGER, *et al.*,

    Defendants.

## BRIEF OF AMICUS CURIAE COMMON CAUSE – GEORGIA IN SUPPORT OF NEITHER PARTY

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iii

CORPORATE DISCLOSURE STATEMENT ........................................................ 1

INTEREST OF AMICUS CURIAE .......................................................................... 1

SUMMARY OF ARGUMENT ................................................................................. 2

ARGUMENT ............................................................................................................ 3

   I.   Voters Need Emergency Paper Ballots When Pollworkers Have Technical Difficulties with Electronic Pollbooks ............................................................. 3

   II.   To Avoid Voting Delays in November, Each Polling Place Needs Pre-printed Ballots for 40 Percent of Registered Voters ................................................... 4

   III.   Additional Pre-printed Ballots Will Be Needed for Provisional Voters ....... 8

CONCLUSION ....................................................................................................... 10

LOCAL RULE 7.1(D) CERTIFICATION ............................................................. 12

CERTIFICATE OF SERVICE ................................................................................ 12

# TABLE OF AUTHORITIES

**Statutes**

Ga. Code Ann. § 21-2-418(d) ...................................................................................9

**Other Authorities**

Charles Stewart III, "2016 Survey of the Performance of American Elections," page 343, https://dataverse.harvard.edu/dataset.xhtml?persistentId=doi:10.7910/DVN/Y38VIQ..................................................................................................................6

Gowri Ramachandran & Derek Tisler, Brennan Center, "To Avoid an Election Meltdown, Officials Must Stockpile Backup Paper Ballots" (Sept. 29, 2020), https://www.brennancenter.org/our-work/research-reports/avoid-election-meltdown-officials-must-stockpile-backup-paper-ballots............................. 4, 5, 6

John C. Fortier, Charles Stewart III, Stephen Pettigrew, Matthew Weil & Tim Harper, *Improving the Voter Experience: Reducing Polling Place Wait Times by Measuring Lines and Managing Polling Place Resources*, Bipartisan Policy Center, at 19 (2018), https://bipartisanpolicy.org/wp-content/uploads/2019/03/Improving-The-Voter-Experience-Reducing-Polling-Place-Wait-Times-by-Measuring-Lines-and-Managing-Polling-Place-Resources.pdf) ......................................................................................................6

Kevin Morris, Brennan Center, "Digging Into the Georgia Primary" (Sept. 10, 2020), https://www.brennancenter.org/our-work/research-reports/digging-georgia-primary....................................................................................................7

Mark Niesse, "Inquiry Shows 1,000 Georgia Voters May Have Voted Twice, but No Conspiracy," Atlanta Journal-Constitution, (Sept. 29, 2020), https://www.ajc.com/politics/inquiry-finds-1000-georgians-may-have-voted-twice-but-no-conspiracy/RGS3UI7JRJE5XP4OAL3T3BYDDI/ ..........................9

North Carolina State Board of Elections, Numbered Memo 2020-16, https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2020/Numbered%20Memo%202020-16_Ballot%20Quantities.pdf ....................................................5

Ronald Brownstein, "Brace for a Voter Turnout Tsunami," The Atlantic (June 13, 2019), https://www.theatlantic.com/politics/archive/2019/06/2020-election-voter-turnout-could-be-record-breaking/591607/ ............................................. 5, 7

State of Georgia Poll Worker Manual (August 2020), https://georgiapollworkers.sos.ga.gov/Shared%20Documents/Georgia%20Poll%20Worker%20Training%20Manual.pdf ................................................................. 9

Stephen Fowler, "Nearly 800,000 Georgians Have Already Requested Absentee Ballots for November," Georgia Public Broadcasting, (Sept. 2, 2020) (stating that about "one in nine active voters" had requested an absentee ballot), https://www.gpb.org/news/2020/09/02/nearly-800000-georgians-have-already-requested-absentee-ballots-for-november ............................................. 10

William A. Galston, "Election 2020: A Once-in-a-Century Massive Turnout?," Brookings (Aug. 14, 2020), https://www.brookings.edu/blog/fixgov/2020/08/14/election-2020-a-once-in-a-century-massive-turnout/ .............................................................................. 4, 7

**Rules**

Ga. Comp. R. & Reg. 183-1-12.11(2) ...................................................................... 6
Ga. Comp. R. & Reg. 183-1-12-.18(4)(a) ................................................................. 8

## CORPORATE DISCLOSURE STATEMENT

Amicus Common Cause Georgia, a state office of Common Cause, by its undersigned counsel, certifies that it has no parent corporation and that no publicly traded company owns 10% or more of its stock. No publicly traded company or corporation has an interest in the outcome of this case or any appeal.

## INTEREST OF AMICUS CURIAE[1]

Common Cause Georgia is a state office of Common Cause, a nonprofit, nonpartisan corporation dedicated to fair elections and making government at all levels more democratic, open, and responsive to the interests of all people. Common Cause works across the country to protect the security and integrity of public elections in the United States. Common Cause has provided expert testimony related to voting technology before the United States Congress and in state legislatures. Mitigating potential burdens on Georgia voters' right to vote is central to Amicus's mission, including by ensuring that election administrators have sufficient resources on Election Day so that all eligible Georgia voters are able to cast their votes and have them counted. In light of these significant

---

[1] The various Plaintiffs and the State Defendants consent to or do not object to the filing. Amicus has contacted the remaining Defendants but has not received a response. No party's counsel or any other person except amicus and its counsel authored this brief or contributed money to fund its preparation or submission.

interests, this Court previously granted Common Cause leave to file an amicus brief at an earlier stage in this litigation. *See* Order dated July 27, 2018, ECF No. 253. Common Cause Georgia respectfully submits this brief to provide critical and time-sensitive information to the Court about the number of emergency paper and provisional ballots required for the upcoming November 3, 2020 election and to urge the Court to clarify its September 28, 2020 Order, as provided below.

## SUMMARY OF ARGUMENT

This Court's order dated September 28, 2020, ECF No. 918, protects Georgia voters against long lines and disenfranchisement that stem from technical issues with electronic pollbooks and the voter registration database, by requiring effective paper pollbook backups and a sufficient stock of emergency paper ballots. In order to protect voters against the significant risks of disenfranchisement that this Court has identified, we urge this Court to clarify that, for the upcoming November election, a sufficient stock of pre-printed ballots–for use as emergency paper and/or provisional ballots—is equal to 40 percent of registered voters, and not the 10 percent that Georgia regulations require. A 10 percent stock of pre-printed ballots is not "sufficient" to ensure that voting can occur without disruption during the time needed to resolve technical difficulties encountered at the polling place. We take seriously the concerns that Plaintiffs

2

raise about security of the voting systems being used in Georgia, as well as any resulting impact on voters in this upcoming November election. However, we do not take any position here on Plaintiffs' other claims in this litigation.

## ARGUMENT

### I. Voters Need Emergency Paper Ballots When Pollworkers Have Technical Difficulties with Electronic Pollbooks

As this Court's order, ECF No. 918, explains, the risk of voter disenfranchisement posed by Georgia's voter registration database and electronic pollbook system is high. *Id.* at 51. A paper pollbook backup, updated after the close of absentee in-person early voting, is a "limited, common-sense remedy to the real and repetitive voting impediments," faced by Plaintiffs and other Georgia voters, whose fundamental rights to vote it is Common Cause's core mission to protect. *Id.* at 1, 51.

Yet in order for this remedy to effectively mitigate the risk of a "severe burden on the rights of voters," a "sufficient stock of emergency paper ballots" must be on hand at each polling place. *Id.* at 50, 66. As described by voters and quoted in this Court's order, *id.* at 42-43, problems with the electronic pollbooks and voter registration database have cascaded in recent Georgia elections, leading to problems with the issuance of voter access cards, and consequently to ballot marking devices becoming impracticable to use. Without the issuance of

3

emergency paper ballots, voters will have, and have had, their constitutional rights significantly burdened, as they will be and have been told to wait for inordinate amounts of time or to return later. *Id.* at 25-48.

## II. To Avoid Voting Delays in November, Each Polling Place Needs Pre-printed Ballots for 40 Percent of Registered Voters

Voters use pre-printed ballots as both emergency paper ballots and provisional ballots. To stock a "sufficient" supply, there should be enough pre-printed ballots to keep voter lines moving for up to three hours while any issues with electronic pollbooks or the voter registration database can be identified and resolved. We call this Court's attention to a recent Brennan Center analysis, provided in the Appendix, demonstrating that a supply of emergency paper ballots equal to 10 percent of registered voters in a precinct is not sufficient for this purpose in the November 2020 election,[2] in which record turnout is widely expected.[3] At a September 28, 2020 meeting of the Fulton County Board of

---

[2] Gowri Ramachandran & Derek Tisler, Brennan Center, "To Avoid an Election Meltdown, Officials Must Stockpile Backup Paper Ballots" (Sept. 29, 2020), https://www.brennancenter.org/our-work/research-reports/avoid-election-meltdown-officials-must-stockpile-backup-paper-ballots, attached in Appendix.

[3] William A. Galston, "Election 2020: A Once-in-a-Century Massive Turnout?," Brookings (Aug. 14, 2020), https://www.brookings.edu/blog/fixgov/2020/08/14/election-2020-a-once-in-a-century-massive-turnout/; Ronald Brownstein, "Brace for a Voter Turnout Tsunami," The Atlantic (June 13, 2019),

Elections, that county's Election Director, who has administered multiple elections in 2020, agreed that 10 percent was not enough.[4] And the North Carolina Board of Elections requires counties using Ballot Marking Devices to keep a supply of pre-printed ballots on hand for 50% of registered voters.[5] In order for this Court's order to effectively function to protect voters' constitutional rights, this Court should clarify that, for the November 2020 election, a sufficient stock of pre-printed paper ballots (for use as emergency paper and/or provisional ballots) is equal to 40 percent of registered voters assigned to a polling place, an amount sufficient to prevent delay during three peak hours of voting.

Across eight battleground states (AZ, FL, GA, MI, NC, OH, PA, WI), the Brennan Center's recent analysis determined, using data from the MIT/Caltech Voting Technology Project's comprehensive survey of the 2016 election, that "an estimated 32 percent–43 percent of Election Day voters arrived during the busiest three hours in 2016."[6]  "[M]ost jurisdictions see the largest rush of voters in the

---

https://www.theatlantic.com/politics/archive/2019/06/2020-election-voter-turnout-could-be-record-breaking/591607/.

[4] A video of the hearing is available at https://www.youtube.com/watch?v=veCcykFxN_E.

[5] North Carolina State Board of Elections, Numbered Memo 2020-16, https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2020/Numbered%20Memo%202020-16_Ballot%20Quantities.pdf

[6] Ramachandran & Tisler, *supra* note 2, citing Charles Stewart III, "2016 Survey of the Performance of American Elections," page 343,

morning during the first few hours that polling places are open. . . . With many voters arriving at the same time, roadblocks in the polling place process can quickly lead to long lines."[7] But as determined in a report issued by the Bipartisan Policy Center and the MIT/Caltech Voting Technology Project, "[i]f a precinct clears its morning line quickly, it is unlikely to experience long wait times for the rest of the day."[8]

To have enough pre-printed ballots to process voters for three peak voting hours, ballots for about 40 percent of Election Day voters should be on hand. Although it is likely that the use of absentee voting will increase significantly in November as compared to past general elections and therefore will reduce the number of in-person Election Day voters, a supply for 10 percent of *registered* voters, as provided for in state regulations, Ga. Comp. R. & Regs. 183-1-12.11(2),

---

https://dataverse.harvard.edu/dataset.xhtml?persistentId=doi:10.7910/DVN/Y38VIQ.

[7] Ramachandran & Tisler, *supra* note 2, (citing John C. Fortier, Charles Stewart III, Stephen Pettigrew, Matthew Weil & Tim Harper, *Improving the Voter Experience: Reducing Polling Place Wait Times by Measuring Lines and Managing Polling Place Resources*, Bipartisan Policy Center, at 19 (2018), https://bipartisanpolicy.org/wp-content/uploads/2019/03/Improving-The-Voter-Experience-Reducing-Polling-Place-Wait-Times-by-Measuring-Lines-and-Managing-Polling-Place-Resources.pdf). The Fortier report found that "nearly a quarter of Election Day voters had cast a vote by 9:00 a.m., and 56 percent had voted by noon," and that ninety percent of Election Day precincts saw their longest lines of the day within the first hour that polls were open.

[8] Fortier, et al., *supra* note 6, at 26.

is nevertheless insufficient and unlikely to be enough for 40 percent of Election Day voters.

To understand why the ten percent requirement is insufficient, consider the following example. Overall participation levels in November's election are expected to be high, potentially historic.[9] If a precinct experiences overall turnout of 70 percent of registered voters—well below the participation levels most are predicting for November[10]—with half of those voters choosing absentee and other early vote methods, then 40 percent of *Election Day* voters would be equal to 14 percent of *registered voters*. That is the amount of emergency paper ballots alone –not even including provisional ballots—that would be needed to cover three hours of peak voting on Election Day.

Moreover, the use of absentee and early in-person methods varies across communities.[11] Therefore, some precincts will likely see lower usage of advance voting methods, and higher usage of Election Day voting. If a precinct experiences

---

[9] Galston, *supra* note 3; Brownstein, *supra* note 3.
[10] *Id.*
[11] In Georgia's June primary, which would have attracted more frequent voters who are more familiar with all their voting options, about 64 percent of all voters, but only about 54 percent of Latino voters, ended up using early and absentee voting. *See* Kevin Morris, Brennan Center, "Digging Into the Georgia Primary" (Sept. 10, 2020), https://www.brennancenter.org/our-work/research-reports/digging-georgia-primary.

high overall turnout, for instance 90 percent of registered voters participate in the election, with a moderate 30 percent of those voters choosing to vote absentee or early in-person, then 40 percent of Election Day voters—the amount that could arrive during three peak hours of voting—would be 25 percent of registered voters. Emergency paper ballots for 25 percent of registered voters would be needed to cover that precinct's needs for three hours, in case of a technical problem occurring at peak voting time.

### III.   Additional Pre-printed Ballots Will Be Needed for Provisional Voters

While a supply of pre-printed ballots for 25 percent of registered voters would be sufficient for most emergency situations for three hours, this would leave no pre-printed paper ballots for any other purpose.  As referenced above, pre-printed paper ballots are also used for provisional voting, which is required even in the absence of problems with electronic pollbooks, ballot marking devices, and voter registration databases.  Therefore, a stock equal to 40 percent of registered voters is needed to cover all expected uses of these supplies.

Provisional ballots are an important failsafe. They are needed in Georgia when a voter has arrived at the wrong precinct and does not have time to travel to the correct precinct, Ga. Comp. R. & Regs. 183-1-12-.18(4)(a), which may happen when a voter's polling place has changed due to the pandemic.  They are also

required for all voters who benefit from court orders extending the hours of polls due to long lines, Ga. Code Ann. § 21-2-418(d). Defendants have recently announced that only the poll manager – not lower level poll workers – will be permitted to "cancel" the absentee ballot of any voter who requested one but now seeks to vote in person.[12] And as no workers will have the ability to override the system and issue access cards to voters that are marked—incorrectly or not—as having already voted,[13] such voters must also cast a provisional ballot.

In addition, due to the increased requests for absentee ballots, provisional voting will increase. Because there is only one poll manager per polling place,[14] and because numerous voters are requesting absentee ballots during the pandemic but may come to vote in person on Election Day anyway,[15] a sharp increase in the

---

[12] Mark Niesse, "Inquiry Shows 1,000 Georgia Voters May Have Voted Twice, but No Conspiracy," Atlanta Journal-Constitution, (Sept. 29, 2020), https://www.ajc.com/politics/inquiry-finds-1000-georgians-may-have-voted-twice-but-no-conspiracy/RGS3UI7JRJE5XP4OAL3T3BYDDI/.
[13] *Id.*
[14] *See* State of Georgia Poll Worker Manual (August 2020), https://georgiapollworkers.sos.ga.gov/Shared%20Documents/Georgia%20Poll%20Worker%20Training%20Manual.pdf (referring to "the" poll manager throughout the manual and providing for specific duties and requirements to be fulfilled by the single poll manager, such as announcing the opening and closing of the poll and unlocking an emergency ballot bin when scanners malfunction).
[15] Stephen Fowler, "Nearly 800,000 Georgians Have Already Requested Absentee Ballots for November," Georgia Public Broadcasting, (Sept. 2, 2020) (stating that about "one in nine active voters" had requested an absentee ballot),

need for provisional voting may result. About 9 percent of voters who requested an absentee ballot in the June 2020 primary elections in Georgia ended up voting in person,[16] and this number may increase in November, when there may be more first-time and less frequent voters.

For these reasons, this Court should clarify that a sufficient stock of pre-printed paper ballots is an amount equal to 40 percent of registered voters in a precinct. An amount equal to 25 percent is needed to cover three hours of emergency voting, and an amount equal to 40 percent will cover additional needs such as provisional voting.

## CONCLUSION

This Court should clarify its order, ECF No. 918, to state that the "sufficient" stock of pre-printed emergency and provisional ballots that must be on hand for the November 2020 election is equal to 40 percent of registered voters.

---

https://www.gpb.org/news/2020/09/02/nearly-800000-georgians-have-already-requested-absentee-ballots-for-november.
[16] Morris, *supra* note 10.

Dated: October 1, 2020                    Respectfully submitted,

  /s/ F. Skip Sugarman
F. SKIP SUGARMAN
Sugarman Law, LLP
154 Krog St., Suite 190
Atlanta, GA 30307
Tel. (404) 495-4811
skip@sugarman-law.com

*Of counsel:*

LAWRENCE NORDEN*
    (NY Bar No. 2881464)
GOWRI RAMACHANDRAN*
    (CA Bar No. 291786)
JOANNA ZDANYS*
    (NY Bar No. 5225008)
Brennan Center for Justice
    at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
lawrence.norden@nyu.edu
gowri.ramachandran@nyu.edu
joanna.zdanys@nyu.edu
**Not admitted to practice
 in Georgia*

## LOCAL RULE 7.1(D) CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

## CERTIFICATE OF SERVICE

I certify that on October 1, 2020, I served the foregoing upon all counsel of record via the Court's electronic case filing (ECF) system.

    /s/ F. Skip Sugarman
F. SKIP SUGARMAN
Sugarman Law, LLP
154 Krog St., Suite 190
Atlanta, GA 30307
Tel. (404) 495-4811
skip@sugarman-law.com