# EXHIBIT 3



October 3, 2020

**By Email**

Cheryl Ringer
Office of the County Attorney
141 Pryor St., SW
Suite 4038
Atlanta, Georgia 30303

Re: Fulton County Board of Elections' Ongoing Violations of State Law

Dear Cheryl:

The Fulton County Board of Elections has made many recent and welcome efforts to make voting more convenient and accessible. We enthusiastically commend such efforts. Given the Secretary of State's numerous reckless decisions regarding the upcoming election, however, Fulton is being lured into serious violations of Georgia's Election Code, as detailed below.

This week the Secretary of State disclosed that all of the existing software (and data, including evidence, from prior elections required to be preserved) must be wiped from the BMDs and replaced with new, uncertified, untested software that was written by Dominion just this past weekend. Fulton is complying with the State's ill-considered instructions, despite the fact that such actions are in plainly in violation of the Georgia Election Code.

You and the Board Members will recall that the Secretary unfairly blamed the Board for the "complete meltdown" that was the June Presidential Primary. The Secretary is either deliberately setting up the Board again to take the blame for another meltdown, or is recklessly unable to deploy its new systems in compliance with state law or federal constitutional requirements. Either way, the Board should not, and as a matter of Georgia law, cannot, allow it to continue.

We are confident that if the Board is made aware of these statutory violations that it will immediately bring Fulton County into compliance. The Board can do so by invoking the provisions for O.C.G.A. § 21-2-281, which allow the Board to switch to hand marked paper ballots in the event that using the BMDs is ***impossible*** or ***impracticable***. The conditions are expanded by State Election Board Rule 183-1-12-.11(2) (c) stating that if the BMDs are ***unusable***, impracticable or impossible for voting (c), and 183-1-12-.11(2)(d) adding that if ***insufficient*** BMDs are available, hand marked paper ballots should be used.

What follows a partial list of the Georgia statutes and Rules that the Board is currently violating:

1. **<u>Illegal software is being installed on Fulton's BMDs (</u>**violation of <u>O.C.G.A. §§</u> 21-2-368(d); 21-2-379.24; 21-2-300(a)(3))

Georgia law requires, at a bare minimum, that the following three steps be taken before voting system software may be used on election equipment:

First, O.C.G.A. §21-2-300(a)(3) requires that the system be certified by the federal EAC. At this very moment, Dominion technicians, at the direction of the Secretary, are installing new software on Fulton's BMDs, software that Dominion has confirmed to Judge Totenberg has *not* been certified by the EAC. This is *not* just a "patch" or revision: the prior election software is being wiped from the equipment and replaced in its entirely by new, uncertified, untested software. This software has never been run in any election in any jurisdiction—not even a mock election—and was written this past weekend.

Second, Voting System Rule 590-8-1.01(d)(6) requires that, after the system is EAC certified, it be sent to a state certification agent for further testing and a report. With no EAC certification, this of course has not occurred.

Third, Voting System Rule 590-8-1.01(d)(7) requires that, after the state certification agent issues its report, the Secretary of State must make a determination whether to certify the system. Certification of new voting systems is required by O.C.G.A § 21-2-379.24. The Secretary certified the prior BMD system, but not the system that Dominion technicians are installing on Fulton's BMDs this week.

Further, O.C.G.A. § 21-2-368(d) requires the Fulton Board: "At least ten days prior to any primary or election, including special primaries, special elections, and referendum elections, the election superintendent shall verify and certify in writing to the Secretary of State ***that all voting will occur on equipment certified by the Secretary of State***."

Early voting begins in ten days and this Board has not, and cannot, make the necessary certification without misrepresenting the undisputed facts.

These are not hyper-technical or bureaucratic requirements, but mandatory provisions of Georgia law that were enacted to protect the security and reliability of the voting systems and voters' constitutional rights to cast an accountable ballot. Untested and uncertified software can create errors in the operation and tallies of the BMDs and can carry bugs and malware into the database that can affect absentee ballots, reporting capabilities, and possibly pollbooks.

2. **Fulton is not conducting mandatory acceptance testing of the new software** (violation of Election Rule 183-1-12-03(1))

The Secretary of State's Voting Systems Rule 590-8-1-.01(d)(8) states, "[a]cceptance tests shall be performed in the user's environment to demonstrate that the voting system as delivered and installed is identical to the system that was certified by the State and satisfies the requirements specified in the procurement documents."

State Election Board Rule 183-1-12-03(1) states: "Upon the receipt of new, repaired, or upgraded components of the voting system, including electronic ballot markers . . . the election superintendent of the county is responsible to check that an acceptance test has been performed on the device in accordance with standards issued by the Secretary of State. No component of the voting system shall be placed into service until such time as the unit satisfactorily passes the prescribed acceptance tests."

Crucially, this Election Rule gives the *Board* the responsibility of assuring that satisfactory acceptance testing has been conducted. But Fulton has not done *any* acceptance testing or generated any of the required documentation. The Board is about to "place into service" components that have *not* passed "the prescribed acceptance tests," in complete violation of this Rule.

3. **Fulton is failing to conduct complete Logic and Accuracy Testing** (violation of O.C.G.A. §§ 21-2-379.25 (a) and (c))

O.C.G.A. §§ 21-2-379.25 (a) and (c) require that the county "verify that ***each*** device is properly recording votes and producing proper ballots," and that "the superintendent shall have ***each*** electronic ballot marker tested to ascertain that it will correctly record the votes cast for ***all offices and on all question***."

Testing being conducted by Fulton, based on the Secretary's guidance, does not comply with this statute because it fails to "have each electronic ballot marker tested … for all offices and on all questions." As laid out in detail in the *Curling v. Raffensperger* litigation and discussed extensively in recent conferences with the Court where this Board was represented, the Secretary's procedure for LAT falls far short of the minimum statutory requirements that this Board is obligated to obey. The Secretary of State's representative testified in a recent hearing that conducting the LAT on BMD units at the levels required by statute is ***impractical*** and too time consuming to accomplish. The Board, however, remains legally obligated to voters to ensure that the statutorily required LAT be conducted.

4. **Fulton is failing to review accuracy of the election database** (violation of Rules 183-1-12-.19 (5); 183-1-12-07(1))

Election Board Rule 183-1-12-07(1) states that "the election superintendent shall review the electronic databases used to generate ballots for correctness and accuracy."

Election Board Rule 183-1-12-(.19)(5) requires that "the county election superintendent shall provide to the Secretary of State or his or her designee a final copy of the election management system database for the county."

Again, in this Rule the State Election Board has transferred the responsibility for database review to this Board. We do not believe that Fulton is conducting the required database review for accuracy of its voluminous contents and configuration of the ballots and tabulation instructions, as required by the Election Code, or that it is sending a final corrected database to the Secretary prior to the election.

5. **Violation of absolute secrecy in voting** (O.C.G.A. §§ 21-2-379.22(5) and 21-2-70)

O.C.G.A. § 21-2-70 directs this Board to guarantee the secrecy of the ballot:

> Each superintendent within his or her county or municipality shall exercise all the powers granted to him or her by this chapter and shall perform all the duties imposed upon him or her by this chapter, which shall include the following: . . .
>
> **(13)** To conduct all elections in such manner as to *guarantee the secrecy of the ballot.*

The large well-lit BMD displays, however, advertise Fulton voters' votes to others in the polling place. O.C.G.A. § 21-2-379.22 further provides:

> No electronic ballot marker shall be adopted or used in primaries or elections in this state unless it shall, at the time, satisfy the following requirements: . . .
>
> **(5)** Permit voting in *absolute secrecy* so that no person can see or know any other elector's votes, except when he or she has assisted the elector in voting, as prescribed by law;

Fulton's failure to take necessary action to ensure ballot secrecy not only is violating voters' rights but also invites challenges to the outcome because the secrecy of the ballot is not being guaranteed.

### Security failures

There are numerous gravely serious security failures at EPC that must be addressed. We have detailed some of them in our pleadings in the Curling case, and we continue to offer, without response from this Board, to have a meeting with the Board or management to share our concerns in more detail.

### Remedy Provided by the Election Code

The Georgia Election Code provides for adopting hand marked paper ballots instead of BMDs in cases like this one where it is impossible or impracticable to do so. Given that it is impossible to use the system and comply with many mandates of Georgia law, it is the duty of the Board to adopt hand marked paper ballots, which can be read with the optical scanner and thoroughly audited. Georgia statutes (O.C.G.A. §§ 21-2-281, 21-2-334) call for this solution, and recent SEB Election Rule 183-1-12-.11(2)(c)-(d) specifically supports its application when BMDs are impractical to use.

We would very much like the opportunity to discuss our concerns with you and the Board and urge the Board to not install or use this unreliable, untested and illegal system.

Please let me know if you have any questions.

Sincerely,

Bruce P. Brown

cc: Kaye Burwell
David Lowman
Marilyn R. Marks
Cary Ichter
Robert A. McGuire