IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION FILE <br><br> NO. 1:17-cv-2989-AT |

**STATE DEFENDANTS' RESPONSE**
**TO THE COURT'S ORDER, [DOC. 957]**

On October 7, 2020, Plaintiffs jointly filed a "Notice of Filing of Correspondence with State Defendants and their Refusal to Comply with the Court's September 28, 2020 Docket Order," [Doc. 955]. Consistent with their prior filings in this case, Plaintiffs attacked Defendants and their counsel for not being adequately responsive to their frequent email demands—ignoring any rules of procedure or process when seeking to obtain additional evidence for their pending preliminary injunction motion (heard by this Court weeks ago). Plaintiffs went on to pose four interrogatories which they assert— without citation to authority—Defendants "should be required to publicly provide . . . to the Court immediately." *Id.* Today, at 9:18 am, the Court issued an Order directing Defendants to respond to those same four questions

this afternoon. [Doc. 957]. State Defendants provide this response to the Court, subject to the objections contained herein.

## INTRODUCTION

Defendants are not—and have never been—seeking to employ a "campaign of obstruction and obfuscation," as Plaintiffs suggest.[1] [Doc. 955 at 5]. Rather, Defendants have been clear from the start of questions regarding EAC approval that the process for seeking certification and approval of *de minimis* changes is between the Voting System Manufacturer and the Election Assistance Commission. As Dr. Coomer (appearing voluntarily) explained during the September 28, 2020 Teleconference, the software change was submitted by Dominion to the EAC-Certified Voting System Test Lab after testing by Dominion. Tr. 13:2-5. He then explained that Dominion was going to use the "process within the EAC for rapid approval of *de minimis* software changes." *Id.* at 39:3-7, 63:12-24.

---

[1] Of course, it is these kinds of inflammatory mischaracterizations that have made this case unique among all of those filed about elections in this District. It is also indicative of why the State Defendants have remained steadfast in their position that this case should proceed normally and subject to the standard rules of evidence and civil procedure, both of which allow the State Defendants the opportunity to address actual discovery requests and not informal email demands. The bright lines afforded by the rules are highly necessary, particularly when the Plaintiffs' informal demands have created most of the problems about which they complain.

Similarly, during the October 1, 2020 Teleconference, counsel for the State Defendants explained that the process of EAC approval happens in the absence of State Defendants—the manufacturer determines whether to seek such approval and has responsibility for those submissions. *See* Tr. 10:3-12; 11:15-12:8. Dr. Coomer then explained again the process: (1) the EAC-certified test lab tests the change and determines whether it is *de minimis* (which has occurred); (2) the lab writes a report (which is [Doc. 939]); (3) Dominion submits the modification to the EAC through an Engineering Change Order (ECO) (which is [Doc. 953-2]); and (4) the EAC approves the change for the current EAC-certified system. Oct. 1, 2020 Tr. 11:10-12:8.

But the Court (and Plaintiffs) need not rely on the explanation from State Defendants and Dr. Coomer—the Election Assistance Commission's Voting System Testing and Certification Manual Confirms this fact. *See* Exhibit 1, Section 3.4.3.1; *see also* Notice of Clarification, attached as Exhibit 2, Sec. 3.4.3.1 ("*Manufacturers* must submit any proposed de minimis change…"), Sec. 3.4.3.3 ("EAC will inform the *Manufacturer* and VSTL of its determination") (emphasis added). Despite the State Defendants' lack of firsthand knowledge of the status of the process, State Defendants and their undersigned counsel have nonetheless sought to be responsive to the Court's inquiries.

The same can also be said for Dominion, the State's Voting System Manufacturer. Despite not being a party to this proceeding, Dominion has "voluntarily provided thousands of pages of documents on days' notice" and made Dr. Coomer available on even less notice. [Doc. 955-2 (email between Dominion counsel and Plaintiffs' counsel)]. As a reward for their cooperation, Plaintiffs have blanketed the State's local elections officials with false and misleading information—sending out Dr. Coomer's testimony to those local officials, days after the Court ordered it unsealed over State Defendants' objection and without opportunity for Dominion to formally respond. *See* Exhibits 3 (Oct. 5, 2020, Email from Coalition "Analyst"), Exhibit 4 (Oct. 7, 2020, Email from Coalition "Analyst" and attachment A thereto). Indeed, Coalition Plaintiffs publicly claimed there were issues regarding scanners in Cherokee County and informed the Court they would "circle back to the Court and report to the Court on [their] findings" after their visit to Canton. Sep. 28, 2020 Teleconference Tr. 42:9-12. They never did, likely because their visit confirmed there actually was no issue. Their (and Curling Plaintiffs') emails and statements to the Court continue to confirm their efforts to undermine administration of elections in Georgia to achieve their preference of hand-marked paper ballots.

Importantly, Plaintiffs' tactics of intimidating local officials to adopt the relief they seek from this Court are not occurring in a vacuum. In addition to the Secretary's efforts to prepare for the upcoming election (with early voting starting Monday, October 12, 2020), local elections officials are also working tirelessly to prepare for a major election. Unfortunately, election administrators are being attacked on multiple fronts, from Plaintiffs in this case to national political figures. State Defendants respectfully submit that this Court should not be yet another avenue for these unfounded attacks.

## I. Defendants' Objections

Bearing in mind the State Defendants' respect for this Court and its weighty responsibilities in a matter of importance, State Defendants raise the following objections to avoid risk of their waiver:

1. Plaintiffs' relief was improperly sought. Rule 7(b)(1) of the Federal Rules of Civil Procedure requires a *motion* to request a Court Order. Plaintiffs instead chose to submit a "Notice of Filing," as they have many other times in this case, to seek wide-ranging *ad hoc* relief. This tact makes sense when considering the information sought should be directed at nonparty Dominion, yet no discovery requests have been made. Similarly, the "Notice of Filing" reads as a motion to compel—

but again, there is nothing to compel—or motion for contempt, but Plaintiffs have not done so.

2. The Evidentiary Record on Plaintiffs' Motion is Closed. As the party seeking extraordinary relief, the Plaintiffs bear the burden of proof. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Realizing they failed to carry their burden, Plaintiffs continue to assert new theories and submit (or request) "evidence" under the guise of "Notices of Filing" and email demands void of any consistency with formal discovery. Plaintiffs should not be permitted to rely on those email demands and filings submitted by the State Defendants—after the close of the three-day hearing—at the Court's direction (without motion) to satisfy their burden.

3. While the Court possesses inherent authority and responsibility to manage this case, it should not conduct independent factfinding as part of that process.[2] This Court should allow the normal, adversarial discovery process to proceed so that a fully tested record can be

---

[2] The Eleventh Circuit has addressed this issue from a slightly different perspective, and its precedent provides an alternative basis for the Secretary's objection. *See Johnson v. United States*, 780 F.2d 902, 910 (11th Cir. 1986). *Cf. Paez v. Sec'y, Florida Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (addressing judicial notice).

developed. This case involves issues that should be decided on a full record, not a rushed preliminary-injunction standard, and not on an apparently non-existent new motion concerning EAC Certification and what State law requires.[3]

## II. State Defendants' Response to the Court's Order.

Subject to the foregoing objections, State Defendants provide the following responses to the Court's Order:

1. <u>Was the Pro V&V report (Doc. 939) provided to the EAC and, if so, when and by whom?</u>

Yes. Mr. Cobb's declaration and the attached documentation demonstrate that the ECO and the Pro V&V report were sent to the EAC on Friday, October 2, 2020 by Pro V&V by email and Pro V&V informed the Secretary of State of that fact. Second Supplemental Declaration of Jack Cobb ("Cobb Dec."), Exhibit 5, at ¶¶ 4-5 and Ex. 1, thereto.

---

[3] To the extent such a claim is present (though not included in Plaintiffs' Complaint), this Court does not possess jurisdiction to decide a novel issue of state law. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342 (11th Cir. 1997) ("state courts, not federal courts, should be the final arbiter of state law") (citing *Hardy v. Brimingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992)).

2. <u>Was the ECO (Doc. 953-2) provided to the EAC and, if so, when and by whom?</u>

Yes. Mr. Cobb's declaration and the attached documentation demonstrate that the ECO was sent to the EAC on Monday, October 5, 2020 by Dominion and then resubmitted on Tuesday, October 6, 2020. The Pro V&V Analysis Form was submitted on Wednesday, October 7, 2020. Cobb Dec. at ¶¶ 6-7, Exs. 2 and 3, thereto.

3. <u>Has the EAC responded, formally or informally, to either the Pro V&V Report or the ECO or any other related communication addressing the software that is now being installed on Georgia's BMDs and, if so, what was the response and when was it received?</u>

No. According to Mr. Cobb's declaration, no response has been received yet. Cobb Dec. at ¶ 8.

4. <u>If the answer to (1) is no, why not and what was the basis for State Defendants' representation to the Court on Friday and their "understanding" yesterday to the contrary?</u>

The answer to (1) is yes. But to be clear: the basis of State Defendants' representation was Mr. Cobb's statement that he had sent the letter report to the EAC. Cobb Dec. at ¶ 5. Regardless, the State Defendants respectfully submit no meaningful difference was intended in any language used in the filing, rather since this process occurs at the direction of nonparty Dominion

(not the State), counsel for the State Defendants were seeking to provide an appropriate response.

Respectfully submitted, this 9th day of October 2020.

*/s/ Vincent Russo*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200

Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' RESPONSE TO THE COURT'S ORDER, [DOC. 957]** has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ *Vincent Russo*
Vincent Russo