IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>v.<br><br>**BRIAN KEMP, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**COALITION PLAINTIFFS' RENEWAL
OF MOTION FOR ATTORNEY'S FEES AND EXPENSES**

On August 29, 2019, the Coalition Plaintiffs filed a timely Motion for Attorney's Fees and Expenses (Doc. 595) ("Motion for Fees") as "prevailing parties" under 42 U.S.C. § 1988 based on this Court's August 15, 2019 Order (Doc. 579) granting in part Coalition Plaintiffs' Motion for Preliminary Injunction (Doc. 419).  On May 26, 2020, this Court denied without prejudice Coalition Plaintiffs' Motion for Fees, stating that "Plaintiffs may renew their request once a final judgment has been entered on their claims or if circumstances change that would support an interim award."  (Doc. 733 at 7).  Coalition Plaintiffs hereby renew their fee request based upon their previous motion papers and for the additional reasons set out herein. Renewed motion should be granted because, under the present (changed) circumstances, the Coalition Plaintiffs are entitled to

an interim award of fees that should be paid prior to entry of a final judgment in this case.

## I.     Procedural Background

After this Court granted in part Plaintiffs' Motions for Summary Judgment on August 15, 2019, both sets of Plaintiffs filed motions for attorney's fees as prevailing parties under 42 U.S.C. § 1988 (Doc. 595 (Coalition), Doc. 596 (Curling), and detailed itemizations (Doc. 631 (Curling), 632 (Coalition)).  The State Defendants (Doc. 660) and the Fulton Defendants (Doc. 661), filed responses, to which the Plaintiffs replied on January 21, 2020 (Doc. 705 (Coalition), Doc. 706 (Curling)).  Coalition Plaintiffs seek an award of $1,483,422 in fees and $415,959 in expenses, for a total award of $1,899,381 (Doc. 705 at 42).

As noted above and discussed in detail below, on May 26, 2020, this Court denied the motions for fees without prejudice.  (Doc. 733).

Separately, on October 11, 2019, Plaintiffs filed a Joint Motion for Sanctions (Doc. 623) seeking monetary sanctions of $297,368.49 against Defendants based on their obstructive discovery tactics in connection with the GEMS database.  On August 10, 2020, this Court denied the Joint Motion for Sanctions without prejudice, stating that it would "take up the issue of imposing purely monetary sanctions for alleged past discovery abuses at the conclusion of this case along with other fee issues, as appropriate."  (Doc. 771).

## II. Discussion

As a threshold matter, it is important to emphasize that the Coalition Plaintiffs seek interim fees for their successful efforts to obtain a preliminary injunction against the State's continued use of the DRE/GEMS voting system. This Court granted relief—prohibition on use of the DRE/GEMS system—that has now been fully implemented and which is at this time effectively unappealable by the State. While a final judgment has not yet entered on these claims because the Plaintiffs subsequently brought *supplemental* claims against the State's *new* voting system, there is nothing left to litigate with respect to the DRE/GEMS system. The State did not appeal the Court's injunction order in a timely fashion when it could have done so, *see* 28 U.S.C. § 1292, and any appeal of the DRE/GEMS decision that the State might ultimately bring at the end of this case will be moot. The State has not only replaced, but by its own admission has abandoned any intent ever to return to using, the enjoined DRE/GEMS voting system. The ongoing litigation of claims against the BMD voting system involves discrete claims that have no bearing on the finality of the DRE/GEMS ruling. Under these circumstances, an interim fee award is fully warranted for that discrete part of the case that concerned the DRE/GEMS system. All that remains to be done with respect to the DRE/GEMS claims is to formally enter a (now unappealable) final judgment.

In its Order denying the Motions for Fees without prejudice, the Court confined its discussion to two principal issues, both of which are addressed below. In Part A, the Coalition Plaintiffs will address the Court's finding that an interim award as of May 2020 would not be prudent in light of "the immediate pressing needs and deficits the State must address due to the current public health crisis and the reverberating economic fallout from the COVID-19 pandemic," but that "time and circumstances may also change the Court's determination." (Doc. 733 at 6 – 7). As shown below, in the five months since this Court's Order, the financial condition of the State has in fact dramatically improved: In the first quarter of fiscal year 2021 the State collected $365 million more than it collected in the first quarter of fiscal year 2020, and the State is currently on track to collect its budgeted Fiscal Year 2021 revenue targets. These changed circumstances now favor an interim fee award.

In Part B, the Coalition Plaintiffs will address the Court's concern that Plaintiffs had not addressed or satisfied the factors listed by the district court in *Walters v. City of Atlanta*, 652 F. Supp. 755 (N.D. Ga. 1985), as necessary for an interim award of fees prior to final judgment. First, it is doubtful whether the *Walters* factors apply in this context. More recent cases from courts within the Eleventh Circuit, including *McGuire v. Murphy*, 285 F. Supp. 3d 1272, 1284 (M. D. Ala. 2018), also cited by this Court, strongly suggest that an award of fees is

appropriate at this time. Second, even if the *Walters* factors are considered, they weigh in favor of granting an award of fees at this time. The Coalition Plaintiffs' renewed Motion for Attorney's Fees and Expenses (Doc. 595) should be granted under the circumstances that now prevail.

### A. The State's Financial Condition

The Coalition Plaintiffs are mindful that the COVID-19 pandemic has had, and will continue to have, an impact on the State, just as it has had upon the individual Plaintiffs, their attorneys, and voters in general. The Coalition Plaintiffs also appreciate the judgment and discretion the Court must exercise in making an interim fee award. The Coalition Plaintiffs do not believe, however, that the State's financial condition is properly considered as a relevant factor in determining the timing or amount of an award of fees under Section 1988.

In enacting Section 1988, Congress could have conditioned the award of fees on the defendants' financial condition or explained that the defendant's financial condition should be taken into account, but it did not do so. In addition, the federal common law that preceded the enactment of Section 1988, which is referenced in the legislative history of Section 1988, did not include a governmental defendant's financial condition as a factor to be considered in determining whether or when an award should be made, or whether there should be an upward or downward adjustment to the lodestar. *See, e.g., Johnson v. Georgia*

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (twelve factors do not include reference to defendant's financial condition); *Hensley v. Eckerhart*, 461 U.S. 424, 429–30 (1983) (noting that the House Report on Section 1988 cites the twelve factors set forth in Johnson). Consideration of the governmental defendant's financial conditions does not appear to be supported by the case law[1] or by the policy considerations underlying Section 1988.[2]

Fortunately, the State of Georgia's financial condition has dramatically improved since the Court's May 26, 2020 Order. Indeed, the State's financial condition is sound and has improved substantially since this time a full year ago, before the COVID-19 pandemic. As reported by the Atlanta Journal Constitution on September 10, 2020:[3]

>   *August 2020 tax collections were up 7.7%, or $134 million, over August 2019 "and follow a jump in July numbers";

---

[1] *Lee v. Randolph Cty. Bd. of Educ.*, 885 F. Supp. 1526, 1532 (M.D. Ala. 1995) ("The school board argues that the court should consider the precarious financial condition of the school district. Even assuming that this factor is proper for the court's consideration, the court is not convinced that, in this case, this concern overrides the directive of 42 U.S.C.A. §1988 to award attorney's fees to successful civil rights plaintiffs.").

[2] Civil rights cases protect the rights that governmental defendants should themselves be engaged in defending. "[T]he private attorney general doctrine dictates that civil rights lawyers should be fully compensated. Civil rights litigation performs a public service: vindicating fundamental constitutional rights, often obtaining judgments which benefit a large class of individuals, and 'enabling vigorous enforcement of modern civil rights legislation, while at the same time limiting the growth of the enforcement bureaucracy.'" *Dowdell v. Apopka*, 698 F.2d 1181, 1190-91 (11th Cir. 1983) (citing legislative history).

[3] https://www.ajc.com/politics/state-tax-take-up-134-million-august-continuing-strong-summer-showing-amid-pandemic/3BAEXWVTUZCOLDYBNCQRLGCZOI/.

   *The State had better-than-expected revenue collections from April through June 30, 2020;

   *Job creation was 1.5 times higher in August 2020 than August 2019;

   *The State anticipates being able to fund its $26 billion budget for fiscal year 2021, which began July 1;

   *Because of federal subsidies to unemployment checks, the State has been collecting $120 million or more *a month* in income tax withholding from the unemployed.

Significantly, accordingly to Governor Kemp's office, "net tax revenue collections for the first quarter of fiscal year 2021 totaled nearly $6.2 billion and marked a year-over-year increase of $365 million, or 6.3 percent."[4]

The Court's anticipation that the State would be experiencing unusual financial hardship because of the pandemic, therefore, does not weigh in favor of waiting until entry of a final judgment to award the Coalition Plaintiffs their attorney's fees related to the DRE/GEMS system. Accordingly, entry of an order awarding interim fees and requiring the Defendants to pay the fees at this time is fully warranted.

### B. Other Factors Do Not Support Waiting for Final Judgment to Grant Plaintiffs' Motions for Fees

---

[4] The State's net tax revenues for September 2020 dipped slightly compared to September 2019, but only because of a large, one-time adjustment resulting from "the culmination of a series of audits." https://gov.georgia.gov/press-releases/2020-10-06/september-net-tax-revenues-down-36-percent

In its Order denying Plaintiffs' Motion for Fees, the Court also relied upon the first two of four factors that the district court in *Walters v. City of Atlanta*, 652 F. Supp. 755 (N.D. Ga. 1985), identified as considerations that courts should use to evaluate requests for an interim award of fees: namely, "(1) whether the grounds for an interim award are sufficiently discrete from matters remaining to be litigated," and "(2) whether the moving party will be unable to continue litigating the case absent an interim award." (Doc. 733 at 3 (citation omitted)).[5]  Both of these *Walters* factors are satisfied, as will be shown in Subsections 1 and 2 below.

Before addressing these two *Walters* factors, however, it is important to emphasize that more recent authorities establish that only the first factor – "whether the grounds for an interim award are sufficiently discrete from matters remaining to be litigated" – is actually relevant in the context of Coalition Plaintiff's current motion.  Importantly, the four-factor test from *Walters* has only been cited and discussed in one other district court decision—namely, *McGuire v. Murphy,* 285 F. Supp. 3d at 1284, which the Court itself cited. (Doc. 733, at 3.)

---

[5]This Court did not address the third and fourth factors from *Walters* – that is, "(3) whether the party opposing the interim award has been guilty of dilatory tactics; and (4) whether the action has been or is likely to be unduly protracted." As discussed in the text, however, these factors do not appear to be consistent with *McGuire,* a more recent case from the Eleventh Circuit, or U.S. Supreme Court precedent, but if they were, they would strongly militate in favor of the making of an award.

In *McGuire,* the District Court for the Middle District of Alabama granted a plaintiff's motion for an interim award of fees while the defendants' appeal was pending and ordered the defendant to pay the fees within thirty days.[6] The district court cited the four-factor test from *Walters,* but granted relief even though it found that the plaintiff had satisfied only the first factor – that the "grounds for an interim award are sufficiently discrete from the matters remaining to be litigated." In its decision, the district court emphasized that the defendant's pending appeal of the relevant portions of the underlying decision on the merits had been rendered moot. 285 F. Supp. 3d at 1279-1280; *id.* at 1284-84. Since the plaintiff had obtained substantial relief that was "'not defeasible by further proceedings,'" the district court held that the plaintiff was entitled to an award of fees and there was no reason to delay ordering the defendant to pay them. *Id.* (quoting *Richardson v. Penfold,* 900 F.2d 116, 119 (7th Cir. 1900) (Posner, J.) ("Once a plaintiff obtains

---

[6]The procedural history of the *McGuire* case is complex, but instructive given the procedural posture of this case. The district court entered an order in 2015 holding that certain provisions of the Alabama Sex Offender Registration and Community Notification Act were unconstitutional, but only granting in part the plaintiff's requests for relief. S Supp. at 1277. The plaintiff moved for an award of attorney's fees. Before the briefing on the motion for attorney's fees was completed, the plaintiff appealed the underlying order and the defendants cross appealed. The district court then denied plaintiff's motion for fees without prejudice, granting plaintiff leave to re-file the motion after the conclusion of the appeals. A week later, Alabama passed a new law repealing the provisions that the district court had enjoined. Three years later the appeal had still not been decided, so the plaintiff moved for reconsideration of the previously denied motion for fees. The district court granted the motion for reconsideration, granted the motion for fees, and ordered the defendants to actually pay the fees within thirty days. *Id.* at 1289.

substantial relief that is not defeasible by further proceedings, he can seek interim fees and the district court has the power to award them.")).

By looking only to the first factor, and not to others, *McGuire,* not *Walters,* is consistent with U.S. Supreme Court precedent. In both *Hanrahan v. Hampton*, 446 U.S. 754, 757–58 (1980),[7] and *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791 (1989),[8] the Supreme Court acknowledged that successful plaintiffs were entitled to an award of fees *pendente lite*. Neither case suggested that a plaintiff's entitlement to fees was contingent upon factors other than success on the merits. On the contrary, both cases expressly recognize that

---

[7] In *Hanrahan,* the Court held that Congress "contemplated the award of fees *pendente lite*" "to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." The Court in *Hanrahan* did not suggest that a party who has established his entitlement to some relief on the merits had to go further and demonstrate any special financial need (e.g., that counsel could not continue representing the plaintiff without an interim payment of fees). Moreover, the power to *award* fees before the entry of final judgment recognized by the Court in *Hanrahan* carries with it the power to order *payment* of the fees in advance of the final judgment. *See Palmer v. City of Chicago*, 806 F.2d 1316, 1320 (7th Cir. 1986).

[8] In *Texas State Teachers,* the Court considered whether a plaintiff could be considered the "prevailing party" for purposes of Section 1988 if it succeeded on some claims but did not achieve, or had not yet achieved, the so-called "central purpose" of the litigation. Noting that the Court had already held in *Hanrahan* that plaintiffs were entitled to an award of fees *pendente lite* upon the achievement of "some success on the merits," the Court held that merely achieving some success, rather than fully accomplishing the "central purpose" of the litigation, was the touchstone for entitlement to fees under Section 1988: "Congress cannot have meant 'prevailing party' status to depend entirely on the timing of a request for fees: A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." 489 U.S. at 791. Nothing in *Texas State Teachers* suggests that the plaintiffs' entitlement to fees *pendente lite* should be conditioned upon anything other than success on the merits.

*pendente lite* fee awards are permissible under the Civil Rights Attorney's Fees Awards Act of 1976 when a civil rights plaintiff has prevailed on the merits of a contested issue—and nothing more.

Nevertheless, even if factors other than achieving success on the merits of an issue that is sufficiently discrete from matters remaining to be litigated are considered, Plaintiffs are still entitled to an award of fees at this time, as explained below.

> 1. *Whether The Grounds For An Interim Award Are Sufficiently Discrete From Matters Remaining To Be Litigated*

Under both *Walters* and *McGuire*, the first factor in considering an interim award of fees asks "whether the grounds for an interim award are sufficiently discrete from matters remaining to be litigated." *McGuire,* 285 F. Supp. 3d at 1284; *Walters,* 652 F. Supp. at 760 (same).  The grounds for the award that Plaintiffs' seek arise entirely from the Court's granting of Plaintiffs' motions on Georgia's previous Diebold voting system in 2019.  The matters currently being litigated in this Court have no bearing on whether Plaintiffs are entitled to fees as prevailing parties as a result of the injunctive relief granted in August 2019.

In this Court's Order denying without prejudice Plaintiffs' Motions for Fees, the Court discussed at length the *similarity* of the Plaintiffs case against the DREs in 2018 and 2019 and the Plaintiffs' current case against the BMDs.  (Doc. 733 at 4 – 5).  But the issue is not whether the claims are similar or different, but whether

they are discrete; that is, whether the continuing litigation over the BMDs will have any impact upon the Plaintiffs' entitlement to fees for the work on the DRE motions—which it will not.

Though Defendants in the Responses to the Plaintiffs' Motions for Fees argued generally that Plaintiffs are not prevailing parties, they do not argue that the resolution of that issue is bound up with issues currently being litigated. (*See* Doc. 660 and Doc. 661, *passim*). Nor could they do so; whether this Court finds in the future that the Defendants' use of BMDs is currently violating Plaintiffs' constitutional rights (or not) has no bearing upon the undisputed fact that Plaintiffs previously "succeeded on any significant claim affording" them "some of the relief sought" against Defendants' use of DREs in 2019. *Texas State Teachers,* 489 U.S. at 791.

Indeed, the Court has already twice ruled that litigation over the 2019 preliminary injunction is complete and discrete from the claims relating to the BMDs. In its July 30, 2020 Order Denying in Part Defendants' Motion to Dismiss, the Court stated:

> As an initial matter, the Court notes that in an October 23, 2019 Order, the Court advised Defendants that:
>
>> The Court has entered two prior orders addressing motions to dismiss Plaintiffs' claims regarding DREs and will not entertain further arguments regarding the dismissal of those claims which now form the basis of the Court's August 15, 2019 preliminary

> injunction order. Defendants should focus their arguments entirely on the new claims related to the BMDs. (Doc. 638.)

(Doc. 751 at 15). This ruling of course does not mean that the claims relating to the BMDs are not similar to the claims relating to the DREs, or that evidence relating to Georgia's security lapses involving the DREs is not germane to evaluating the security of the BMDs. But it does mean that further litigation involving the BMDs will have no impact upon the "grounds for the award" of fees based on Plaintiffs' prior success leading to the 2019 preliminary injunction on the DREs.

As to the relationship of the continuing litigation over the ballot marking devices to the award of fees for the DRE injunctive relief, Judge William Pryor's decision for the Eleventh Circuit in *Common Cause, Georgia v. Billups,* 554 F.3d 1340 (11th Cir. 2009), is particularly instructive. In *Common Cause,* the district court preliminarily enjoined the enforcement of Georgia's voter identification law. After the entry of the preliminary injunction, the state repealed the law and replaced it with another voter identification law. The plaintiffs amended their complaint to challenge the new law, which was rejected on the merits by the district court. The district court, however, granted the plaintiffs' motion for attorney's fees based on the prior preliminary injunction of the repealed law.

On appeal, Georgia argued that the plaintiffs were not entitled to fees because, although they had been granted a preliminary injunction, "they did not

succeed on the merits of their complaint." 554 F.3d at 1356. The Eleventh Circuit rejected the argument, holding that "'a preliminary injunction on the merits . . . entitled one to prevailing party status and an award of attorney's fees.'" *Id.* (quoting *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1558 (11th Cir. 1987)). The Court ruled that the plaintiffs had "materially altered their relationship with the election officials" because the "injunction prevented Georgia from enforcing the requirement of photo identification for in-person voting."

The *Common Cause* decision supports the granting of the Coalition Plaintiffs' renewed Motion for Attorney's Fees and Expenses at this time. The State's decision to purchase the Dominion Voting System, like the State's rewriting of the voter identification law in *Common Cause,* has no impact on Coalition Plaintiffs' entitlement to fees: the preliminary injunction materially, and finally, altered the legal relationship between the parties, *regardless* of whether the Coalition Plaintiffs ultimately succeed in their subsequent challenge to the BMDs.

> 2. *Whether The Moving Party Will Be Unable To Continue Litigating The Case Absent An Interim Award*

The second *Walters* factor considers "whether the moving party will be unable to continue litigating the case absent an interim award." *Walters*, 652 F. Supp. at 761. In the Court's Order dismissing without prejudice Plaintiffs' Motion for Fees, the Court found that "Plaintiffs have not at this time shown that they will be unable to continue litigating this case without the Court granting their fee award

*pendente lite.*" (Doc. 733 at 5).  The Court noted that some of the lawyers for Plaintiffs "have filed several other cases involves challenges to Georgia's election provision since the Court issued its August 2019 preliminary injunction Order." (*Id.*).

This second *Walters* factor should not prevent the granting of an award of fees to Coalition Plaintiffs.  Initially, there is nothing in § 1988, and very little in the cases, that would suggest that successful plaintiffs must show that they would be unable to continue litigating the case unless they received immediate payment of fees.  This factor is mentioned in the *Walters* case, but the more recent *McGuire* case casts significant doubt on the *Walters* case in this respect.  *McGuire* held that the issue is not whether plaintiffs' counsel in particular have the financial wherewithal to continue in the litigation or take on other civil rights cases, but whether "an interim fee award is needed [to] give effect to the underlying purpose of § 1988, which is to ensure that civil rights plaintiffs *in general* can continue to obtain representation." 285 F. Supp. 3d at 1285 (emphasis in the original).

In addition, it would be seriously prejudicial to require the Plaintiffs' lawyers in this case to make some kind of showing that they will be unable to continue representing the Plaintiffs unless they are awarded a payment of interim fees. For example, to make such a showing, counsel would have to represent to the Court that they would be forced to withdraw from the case unless the Court

ordered the Defendants to pay the interim fee award instanter.  Requiring counsel to commit publicly to withdrawing in such a manner would prejudice the client and create a conflict of interest for counsel.

The record establishes that counsel for Coalition Plaintiffs, and the Coalition itself, have invested an enormous amount of time and money to obtain the success achieved by the Court's 2019 Order. Attorneys Brown and McGuire—both solo practitioners—collectively seek compensation for 1,594 hours, which only covers a portion of their total work done on this case through a year ago.  This case has consumed a substantial portion these two small firms' capacities to serve their clients since at least early 2018.  The Lawyers' Committee, a non-profit committed to securing "for all the rights that are the ideals on which our country was founded,"[9] is seeking compensation for 760.5 hours of attorney time.  (Doc. 705 at 47).  Small firm lawyers Cary Ichter and William Ney collectively seek compensation for 465 hours of their own attorney time.  (*Id.*)  These figures do not include the substantial out-of-pocket expenses incurred by counsel and the substantial contribution of litigation support time and expenses by organizational Plaintiff, the Coalition for Good Governance.

Civil rights cases involving voting rights are hard to win in the first place.  This case is no exception.  Indeed, with the number of PACER docket entries

---

[9] *See* lawyerscommittee.org/history.

closing in on 1000, this case is perhaps destined to become an example of the extreme tenacity that civil rights plaintiffs and their counsel must possess and display to vindicate the rights of voters against the most powerful opponent to be found in the court system—the government.  The State and Fulton Defendants, with their effectively unlimited resources, consistently refuse to engage in settlement discussions.  They assert every conceivable defense, including "meritless" defenses, both in the district court and on appeal.  They make every step in the discovery process a pitched battle, characterized by stalling, sand-bagging, and concocted claims of confidentiality.

There is always a substantial risk in civil rights cases that counsel will be paid nothing, despite substantial effort and massive expenditures of time and resources. The serious risks of litigation alone can typically cause many otherwise qualified trial attorneys to avoid taking on Section 1983 plaintiffs as their clients. But if those risks are to be compounded by the prospect that even successful counsel cannot hope to be paid for months or years when they do win, then the number of qualified private lawyers willing to take on these cases will almost assuredly dry up.  When plaintiffs without resources are unable to find counsel motivated to stake thousands of hours in the risky endeavor of seeking to vindicate constitutional rights against infringements by the government, our society will be all the poorer and all of our constitutional rights will be weakened as a result.

On the other hand, as the *McGuire* court reasoned:

> Allowing an interim award will encourage other members of the bar to accept civil rights cases by reassuring them that the likelihood of a protracted appeal in a complicated case will not financially cripple their firms.

285 F. Supp. 3d at 1285.

For the foregoing reasons, the Coalition Plaintiffs move the Court to consider their renewed Motion for Attorney's Fees and Expenses at this time, to grant the Motion, to award the Coalition Plaintiffs reasonable compensation for their successful efforts in achieving the 2019 injunctive relief, and to direct the Defendants to pay the awarded fees and expenses within a reasonable time.

Respectfully submitted this this 13th day of October, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice (No. 125) |
| BRUCE P. BROWN LAW LLC | ROBERT MCGUIRE LAW FIRM |
| 1123 Zonolite Rd. NE | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br>E<br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on October 13, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.  In addition, pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown