**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**CURLING PLAINTIFFS' RENEWED**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

I. Introduction ........ 1

II. Procedural Background ........ 2

III. Discussion ........ 3

A. The State's Financial Condition Does Not Preclude the Award ........ 5

B. All Case Law Factors Support an Interim Award ........ 6

1. The Grounds For the Interim Award Are Sufficiently Discrete From Matters Remaining To Be Litigated ........ 7

2. Plaintiffs' Necessary Continued Investment in the Case Creates a Financial Burden Absent An Interim Award ........ 8

3. Defendant's Dilatory Tactics Support an Interim Award ........ 10

4. The Protracted Nature of the Action Supports an Award ........ 11

IV. Conclusion ........ 12

# TABLE OF AUTHORITIES

## Cases

*Clark v. Hous. Auth. of City of Alma*,
971 F.2d 723 (11th Cir. 1992) ....................6

*Common Cause/Ga. v. Billups*,
554 F.3d 1340 (11th Cir. 2009) ....................8

*James v. Stockham Valves & Fittings Co.*,
559 F.2d 310 (5th Cir. 1977) ....................6

*McGuire v. Murphy*,
285 F. Supp. 3d 1272 (M.D. Ala. 2018).................... 7, 8, 9

*Powell v. United States*,
569 F. Supp. 1192 (N.D. Cal. 1983).................... 8, 11

*Walters v. City of Atlanta*,
652 F. Supp. 755 (N.D. Ga. 1985),
*modified on other grounds*, 803 F.2d 1135 (11th Cir. 1986) .................... 6, 8, 11

## Statutes

42 U.S.C. § 1988 ....................1, 6

## I. INTRODUCTION

Curling Plaintiffs respectfully renew their Motion for Attorneys' Fees and Expenses in relation to the injunction this Court granted on August 15, 2019. This Court's May 26, 2020 Order denied without prejudice Curling Plaintiffs' August 29, 2019 Motion for Attorney's Fees and Expenses (Dkt. 596) ("Motion for Fees") as "prevailing parties" under 42 U.S.C. § 1988, but allowed Plaintiffs to "renew their request once a final judgment has been entered on their claims or if circumstances change that would support an interim award." (Dkt. 733 at 7). Curling Plaintiffs renew their request at this time because the case has reached a stage where an award of fees and costs is warranted, proper, and needed.

This request is fully briefed and ripe for a decision now. As Curling Plaintiffs previously showed, they invested millions of dollars in obtaining the injunction this Court awarded in August 2019, which effectively became a permanent injunction with Defendants' abandonment of the DRE and GEMS components of Georgia's election system and their decision not to appeal the injunction order, which continues to mandate a variety of important relief. As this Court has observed, State Defendants have engaged in a litigation strategy that has wasted considerable time and resources for Plaintiffs and the Court. It is time for them to bear the cost of that strategy, which plainly is intended to vexatiously

delay and compound these proceedings so as to penalize Curling Plaintiffs for pursuing their rights and to discourage other would-be claimants from doing the same. State Defendants have ample resources to cover Curling Plaintiffs' fees and costs, and any claim to the contrary is belied by the State's current financial condition as well as the unusually large litigation team State Defendants have deployed in this case and the enormously expensive strategy they have deployed here. It is time to hold them accountable and to reimburse Curling Plaintiffs as the prevailing party on the injunction that still stands today, over a year later.

## II.   PROCEDURAL BACKGROUND

Curling Plaintiffs—like Coalition Plaintiffs—accompanied their Motion for Fees as prevailing parties (Dkt. 596) with detailed and itemized fee descriptions (Dkt. 631, 706). Curling Plaintiffs' request for an award of $3,964,187.87 in fees and $439,197.43 in expenses, totaling $4,403,385.30, was fully briefed (Dkt. 660, 667, 705, 706) before being denied without prejudice (Dkt. 733).

Plaintiffs subsequently filed a Joint Motion for Sanctions on October 11, 2019. (Dkt. 623). In that submission, Plaintiffs jointly requested monetary sanctions against Defendants amounting to $297,368.49. That too was fully briefed (Dkt. 647, 656) before being denied without prejudice (Dkt. 771).

Curling Plaintiffs seek here the *same* fees and costs sought in their prior, fully-briefed motions. Thus, the arguments from the parties regarding the merits of this request and the underlying facts have been fully presented to the Court. Rather than burden the Court with the same briefing and exhibits again, Curling Plaintiffs incorporate those materials by reference here.

On October 13, 2020, Coalition Plaintiffs filed a renewed request for fees and costs. (Dkt. 967.) Curling Plaintiffs agree with Coalition Plaintiffs' arguments regarding the need and propriety to award fees and costs now, and will try not to repeat all those arguments here.

## III.  DISCUSSION

Curling Plaintiffs renew their request for fees and costs for the injunction granted against the use of the DRE/GEMS voting system in Georgia. State Defendants did not appeal the prohibition against the DRE/GEMS system's use and repeatedly have argued to this Court that the August 2019 injunction Order mooted any need for further discovery or a trial on the merits of Curling Plaintiffs' claims challenging that system. Thus, by their own argument, the time has come for an award of Curling Plaintiffs' fees and costs as the prevailing party. In every practical sense, the pending injunction against the DRE/GEMS voting system is—

as State Defendants themselves have emphasized—the final resolution of Curling Plaintiffs' claims challenging that system, and a fee award is appropriate now.

The fees and costs Curling Plaintiffs and Coalition Plaintiffs have requested cover related *but independent* and largely *non-duplicative* efforts to achieve relief for themselves and Georgia voters. Throughout the matter, and specifically with respect to efforts to enjoin the DRE/GEMS system, Coalition Plaintiffs' attorneys and experts have focused on county-level[1] and polling location discovery and evidentiary issues while Curling Plaintiffs' attorneys and experts have concentrated on broader cybersecurity and feasibility issues and corresponding discovery.[2] This division of labor is supported by the evidence each group of Plaintiffs submitted. Thus, while each group of Plaintiffs is entitled to choose their own counsel, experts, and evidence to present, and to recover their fees and costs as prevailing parties, the coordination between and different efforts of the two groups that resulted in the August 2019 injunction Order further justifies distinct awards.

Finally, circumstances have changed since the Court issued its Order denying the Motions for Fees without prejudice, and those changes favor an award

[1] *See* Dkt. 404, 405, 406, 407, Coalition Plaintiffs' Notices of Depositions for county officials.

[2] *See* Dkt. 390, 434, Curling Plaintiffs' Certificates of Service of Discovery Requests; Dkt. 406, Curling Plaintiffs' Notice of Deposition of Michael Barnes; Dkt. 545-1, Curling Plaintiffs' Notice of Deposition of Dr. Michael Shamos.

of fees and costs now. The State's financial system has improved and faces less uncertainty, while at the same time the financial investment by and burden on Curling Plaintiffs has grown substantially, due to State Defendants' obstructive and vexatious approach to this litigation. In the months since the May Order, this Court—and Curling Plaintiffs—have been forced to expend substantial resources due to State Defendants' submissions that were "confusing, incorrect, or misleading" (Dkt. 957 at 2); "simply removed from the *actuality* of the content of the Court's Order" (Dkt. 969 at 1); based on hyperbolic "protestations [] divorced from reality" (*id.*); part of a "cat and mouse response over [] ten days" (Dkt. 957 at 2); and "wasted everyone's time" (Dkt. 775 at 2). State Defendants' obfuscation and dilatory tactics have substantially compounded Curling Plaintiffs' fees and costs, imposing enormous expense that was entirely avoidable. State Defendants have forced Curling Plaintiffs—and this Court—to spend many, many hours on needless discovery disputes and motion practice on even the smallest of issues.

**A. The State's Financial Condition Does Not Preclude the Award**

Like the Coalition Plaintiffs, Curling Plaintiffs understand and appreciate the Court's concern for the effects the COVID-19 crisis continues to have on the State of Georgia and its voters, including Curling Plaintiffs. But Curling Plaintiffs also agree that the State's financial position in the current emergency has improved and

stabilized.[3] Thus, even if this were a valid consideration for the Court in deciding this request under 42 U.S.C. § 1988—and Curling Plaintiffs respectfully submit it is not—it does not weigh against the request.

**B. All Case Law Factors Support an Interim Award**

Section 1988 "itself prescribes no time frame for filing the request for attorney's fees," but interim fee awards are permitted and can give effect to the purpose of the statute by enabling civil rights litigants to undertake complex and lengthy cases. *Clark v. Hous. Auth. of City of Alma*, 971 F.2d 723, 724 (11th Cir. 1992); *see James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358-59 (5th Cir. 1977). A grant of fees and costs now would appropriately support the purposes of Section 1988 in this case, especially given the enormous expense State Defendants have imposed—and continue to impose—on Curling Plaintiffs through their vexatious tactics.

The district court in *Walters v. City of Atlanta* articulated the following factors for consideration of an interim award: "(1) whether the grounds for an interim award are sufficiently discrete from matters remaining to be litigated; (2) whether the moving party will be unable to continue litigating the case absent an interim award; (3) whether the party opposing the interim award has been guilty of

[3] Dkt. 967 at 4-7.

dilatory tactics; and (4) whether the action has been or is likely to be unduly protracted."  652 F. Supp. 755, 761 (N.D. Ga. 1985), *modified on other grounds*, 803 F.2d 1135 (11th Cir. 1986).  The most important determination—often dispositive standing alone—is the first factor.  *See McGuire v. Murphy*, 285 F. Supp. 3d 1272, 1284-85 (M.D. Ala. 2018) (awarding interim fee relief where movant satisfied the first and fourth of the four factors but where defendant's pending appeal of the relevant decision was moot).

Curling Plaintiffs are entitled to an award of interim fees based on the first factor alone, but all factors support the request.

### 1. The Grounds For the Interim Award Are Sufficiently Discrete From Matters Remaining To Be Litigated

Curling Plaintiffs' requested award is grounded in the relief this Court ordered with respect to the State's previous DRE/GEMS voting system.  The prohibition against the use of the State's DRE/GEMS voting system effectively is permanently in place as State Defendants themselves have argued repeatedly, because Curling Plaintiffs prevailed on that issue and the system is now gone.  The fact that State Defendants have now implemented the new BMD system in a manner that makes it susceptible to many of the same vulnerabilities as the DRE/GEMS system takes nothing away from Plaintiffs' success in challenging the DRE/GEMS system.  *See Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355-57

(11th Cir. 2009) (upholding the district court's grant of interim attorneys' fees related to a successful preliminary injunction against voter identification law later repealed by the state). That State Defendants replaced the unconstitutional DRE/GEM system with another unconstitutional voting system does not deprive Curling Plaintiffs of their right to an award of substantial fees and costs invested in successful pursuit of the August 2019 injunction Order, which remains in effect.

**2. Plaintiffs' Necessary Continued Investment in the Case Creates a Financial Burden Absent an Interim Award**

The court in *Walters* considered whether the plaintiff "required an interim award because of financial hardship." *Walters*, 652 F. Supp. at 756. There, the Court pointed to the circumstances in *Powell v. United States* where the plaintiff would have been unable to proceed with the litigation absent the relief of an interim award. *Id*. at 761 (citing *Powell*, 569 F. Supp. 1192 (N.D. Cal. 1983)). The Court in *Powell* noted that this factor supports an award of interim attorneys' fees even without the other factors. *Powell*, 569 F. Supp. at 1200 ("This hardship alone may be enough to justify an interim award.").

Recent Eleventh Circuit district court case law indicates that the policy intent of enabling civil rights' plaintiffs to secure legal redress would be undermined by requiring individual plaintiffs' attorneys to unduly financially burden their practices in order to obtain interim fee relief. *McGuire v. Murphy*

explains that interim fee awards "give effect to the underlying purpose of § 1988, which is to ensure that civil rights plaintiffs *in general* can continue to obtain representation." 285 F. Supp. 3d at 1285 (emphasis in original). When "[w]ithholding an interim fee award would hamper [counsel's] ability to take on other civil rights cases due to lack of resources," interim relief may be appropriate. *Id.* The court in *McGuire* evinced concern that a different approach could "mak[e] representation in civil rights cases financially untenable and by discouraging members of the bar from undertaking similar cases in the future." *Id.* at 1279.

Curling Plaintiffs' attorneys do not have unlimited resources. The enormous financial investment in this case—which is exponentially larger than expected—consumes resources that otherwise could, and would, be allocated for Curling Plaintiffs' attorneys to represent other prospective clients in important civil rights cases. Collectively, attorneys at Morrison & Foerster LLP submitted a fee request covering 5,117 hours, only a portion of the time actually spent on this matter given the conservative approach to the fee request. (Dkt. 631 ¶ 45, 706 at 12-27, 706-1 at ¶¶ 9-10.) Attorneys at Krevlin & Horst LLC have requested compensation for $229,627.50 in fees, which likewise reflects only a portion of the many hours spent on this matter. (Dkt. 631 at 449-518.) The financial investment of these firms is extraordinary, driven by State Defendants' vexatious strategy and tactics, which

will deprive civil rights claimants of counsel if prospective attorneys must turn down those engagements for fear of facing the sort of scorched-earth approach State Defendants have instituted here.

### 3. Defendant's Dilatory Tactics Support an Interim Award

As noted above, Plaintiffs previously filed for sanctions on the basis of State Defendants' obstruction of—and repeated false claims about—important discovery relevant to the GEMS databases. Plaintiffs' joint submissions at Dkt. 623 and Dkt. 656 provide extensive detail regarding the improper tactics State Defendants have long employed[4] and continue to employ in this case, which cause unnecessary expenditures and financial burden that State Defendants should have to bear. The Court need only review the last couple months of filings[5] as a reminder of the tiresome, expensive, and improper tactics employed in this case. This factor weighs heavily in Curling Plaintiffs' favor.

---

[4] Plaintiffs filed their Joint Motion for Sanctions on October 14, 2019. (Dkt. 623.) State Defendants' improper tactics have only intensified since, including submissions that were "confusing, incorrect, or misleading" (Dkt. 957 at 2) and "simply removed from the *actuality*" of the real world (Dkt. 969 at 1).

[5] The repeated requests, filings, and orders required just to obtain the ProV&V and EAC documentation is one recent and indicative example, much like the time and cost the Court and Curling Plaintiffs expended trying to obtain the GEMS databases last year. *See* Dkt. 919; Order, by docket entry only on September 28, 2020; Dkt. 923 and Exhibits; Dkt. 924; Dkt. 928; Order, by docket entry only on September 30, 2020; Dkt. 929; Dkt. 935; Dkt. 938; Dkt. 939; Dkt. 940; Dkt. 941; Dkt. 942; Dkt. 943; Dkt. 953; Dkt. 955 and Exhibits; Dkt. 957; Dkt. 959; Dkt. 960.

**4. The Protracted Nature of the Action Supports an Award**

Finally, the court in *Walters* considered whether the litigation was protracted in nature such that delaying relief until the conclusion of the case would create a delay in payment that counseled in favor of an interim award. *Walters*, 652 F. Supp. at 761. The three years this case has been pending speaks for itself, and much still remains to be done regarding the new BMD system. State Defendants repeatedly emphasize that limited discovery has been conducted thus far and much more is needed. This case—with its unusually protracted nature, its virtually unprecedented obstructive and vexatious campaign from State Defendants, and the resulting extraordinary fees and costs for Curling Plaintiffs—is the poster child for an interim fee award. *See Powell*, 569 F. Supp. at 1200 ("[T]his litigation has been pending for over a year and a half and is likely to continue for a substantial period of time."). This mandates an interim award of fees and costs at this time. Not only are Curling Plaintiffs entitled to it now as the prevailing party on an injunction Order issued over a year ago, but it also is needed to finally hold State Defendants accountable for their improper litigation tactics—and hopefully to curb such tactics in Act V of this case.[6]

[6] *See* Dkt. 964 at 147, October 20, 2020 Opinion & Order ("Time will tell whether Act V here can be still avoided or at least re-written.").

## IV. CONCLUSION

For the foregoing reasons, Curling Plaintiffs respectfully renew their Motion for Attorney's Fees and Expenses and request a full award, as prevailing parties, at the Court's earliest opportunity.

Dated: November 2, 2020

Respectfully submitted,

*/s/ David D. Cross*

David D. Cross (*pro hac vice*)
John P. Carlin (*pro hac vice*)
Lyle P. Hedgecock (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
LHedgecock@mofo.com
MKaiser@mofo.com
RManoso@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2020, a copy of the foregoing **CURLING PLAINTIFFS' RENEWAL OF MOTION FOR ATTORNEYS' FEES AND EXPENSES** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross