IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-cv-2989-AT |

**STATE DEFENDANTS' RESPONSE TO COALITION PLAINTIFFS' NOTICE OF FILING PROPOSED SCANNER REMEDY**

After this Court granted in part Coalition Plaintiffs' preliminary injunction motion as to scanner threshold settings, it permitted Coalition Plaintiffs an opportunity to clearly define the relief ordered. Now, Coalition Plaintiffs have shifted entirely the relief sought. Gone are any references to threshold settings or "DPI," about which this Court heard extensive testimony. Instead, Coalition Plaintiffs now suggest all of the settings remain exactly as they are, except to adjust the brightness setting from "90" to a new setting of "25." [Doc. 990-2, p. 2]. The Court should deny this proposed relief and, as a result, amend its order to deny injunctive relief entirely.

1

## PROCEDURAL BACKGROUND

In its Order granting in part Coalition Plaintiffs' Motion for Preliminary Injunction Relating to BMDs, Scanning and Tabulating, and Auditing, [Doc. 809], this Court was unable to fashion relief based on the evidence then before it. [Doc. 964, p. 141].[1] The Court explained several possible options for addressing what it found was an intermediate burden on the right to vote, even after the intervening change of threshold settings which Coalition Plaintiffs failed to address.

First, the Court suggested that scanners thresholds may be the solution. [Doc. 964, pp. 135-136]. Second, the Court suggested a higher resolution (DPI) or higher amount information could be captured by the scanner. [Doc. 964, pp. 136-138]. Third, the Court suggested that the adjudication software could be reprogrammed to isolate ballot marks interpreted as "blank."[2] [Doc. 964, p. 139-140].

---

[1] State Defendants have filed a Notice of Appeal concerning this Order. [Doc. 991].

[2] The Court found that the current process violates SEB rules if a checkmark or X is not counted, relying in part on a reference to Ga. Comp. R. & Regs. r. 183-1-15-.02. *See* [Doc. 964, p. 98-99 n.79]. That regulation though, is applicable only to votes cast by paper ballot and not counted on optical scan systems, "i.e. in certain municipal elections" where paper ballot votes are hand-counted. But even if this Court's interpretation was not otherwise barred by the Eleventh Amendment, Mr. Hursti's analysis of the brightness

The Court then explained that the relief sought by Coalition Plaintiffs' motion was broader than what was needed to address the specific injury identified and insufficiently precise. As a result, the Court directed Coalition Plaintiffs to "submit a proposed injunctive relief order that delineates the specific measures or course of action they are seeking that the Court adopt to address this vote counting issue." [Doc. 964, p. 141]. The Court apparently expected that to include possibly using "red outlined vote target ovals" or "programming changes" based on the building of the databases (apparently a reference to scanner thresholds). *Id*.

In response to the Court's Order, Coalition Plaintiffs present the Declaration of Mr. Harri Hursti. Mr. Hursti based his findings and proposed changes on testing conducted on September 29 and October 30 at the Cherokee County Board of Elections and Registration and his independent research. Mr. Hursti also testifies that he reviewed a different Dominion User Manual from Colorado along with a Georgia manual provided by Cherokee County staff.[3] Based on this limited review and testing, Mr. Hursti

---

settings included apparently only slash marks or straight lines, not checkmarks or Xs. [Doc. 990-1, pp. 40-53].

[3] Interestingly, Mr. Hursti determined not to utilize the manual produced by the Secretary pursuant to expedited discovery this Court granted. Instead, Mr. Hursti relied on manuals which are not the same—as had been previously explained to Plaintiffs' counsel following their unfounded assertion

recommends scanner brightness settings on the ICC scanner be decreased "to a value of 25," with no other changes. [Doc. 990-1, ¶ 5]. Mr. Hursti, who has never administered an election, also concludes his "immediate changes" are "quite feasible." *Id.* at ¶ 4.

## STATE DEFENDANTS' RESPONSE

### I. Coalition Plaintiffs' new idea about scanners.

This filing represents the first time Coalition Plaintiffs sought to change brightness settings on the ICC scanners. The only reference to brightness settings anywhere in Coalition Plaintiffs' filings was a single line describing the development of scanner technology in Mr. Hursti's declaration. [Doc. 853-2, ¶ 16]. Coalition Plaintiffs' reliance on scanner threshold settings (which are set in databases) in the briefing on their motion is why the Court found that changes could not be made for November—because database changes would be required. [Doc. 964, p. 125].

Further, with their current filing, Coalition Plaintiffs now apparently agree with Dr. Coomer that scanner resolution (DPI) is not an issue, *see* [Doc. 964, pp. 107-108], because they only seek a single change to Georgia's

---

that State Defendants improperly designated those documents under the Protective Order in this case.

settings, moving the brightness setting from 90 to 25. [Doc. 990-2, p. 2].[4] In order to preserve these issues, State Defendants note: (1) that it strains credulity to think that the U.S. Constitution speaks to scanner brightness settings; (2) that such a setting, affecting *only hand-marked paper ballots* where the voter disregards ballot instructions, is not encompassed in Coalition Plaintiffs' Complaint demanding hand-marked paper ballots[5]; (3) that such administrative details are not within the province of the federal judiciary; and (4) Coalition Plaintiffs seek, yet again, to have the Secretary to direct non-party superintendents to take action when they admit there is no state law or policy that sets scanner brightness settings. [Doc. 990-1, ¶ 21].

Coalition Plaintiffs' latest idea about how to handle scanners yet again demonstrates why this case should proceed through discovery instead of on a rushed record. Instead of having to take this Court's time spending hours discussing scanner threshold settings and DPI in a hearing, only to later disregard their own speculation, the issues could be properly narrowed

---

[4] Mr. Hursti's declaration makes a variety of other recommendations that Coalition Plaintiffs apparently do not seek to have this Court implement, including proposed changes for the November election, conducting additional scanning for close elections, displaying scanner settings publicly, and engaging in further study of other settings. [Doc. 990-1, ¶¶ 56-60].
[5] To the contrary, it supports the reasonable policy decision of the State to utilize Ballot-Marking Devices for most voters, which avoids ambiguous marks and overvotes.

5

through the normal discovery and litigation process prior to presentation to the Court. Or, at minimum, a normal litigation schedule would permit Coalition Plaintiffs to present proposed relief which actually addresses their alleged concerns and do so at the time of hearing on the relief sought—not two weeks after their Motion was nominally granted but with no relief ordered.

## II. This Court should not rely on Mr. Hursti's post-hearing analysis to order a change in scanner settings.

Coalition Plaintiffs' filing seeking entirely new scanner setting changes came to this Court in the midst of the November 2020 General Election, five weeks and one day before now-imminent December 2020 run-off elections for state offices, and ten weeks and one day before two statewide run-off elections for U.S. Senate. As of the date of this filing, local election superintendents in all of Georgia's one-hundred fifty-nine counties are working expeditiously to complete tabulation of all votes before the deadline for County certification on November 13, 2020. O.C.G.A. § 21-2-493(k). Those same superintendents, and the Secretary of State are also preparing to conduct a Risk-Limiting Audit. O.C.G.A. § 21-2-498; Ga. Comp. R. & Regs. r. 183-1-15-.04. Additionally, state and local officials are now planning for at least one state-wide run-off election for Public Service Commission District 4,

to be held December 1, 2020, along with two run-off elections for both of Georgia's United States Senate seats on January 5, 2021. *See* O.C.G.A. § 21-2-501. The reality of time counsels strongly against adopting Mr. Hursti's proposal.

First, given the Secretary's duties in relation to the November 2020 General Election, the Secretary has simply not had sufficient time to evaluate Mr. Hursti's proposal. The Secretary, and non-party Dominion, have been focused on completing their election-related duties and processes that were in place for that election.[6] Accordingly, the Secretary cannot now speak to unintended consequences which may result from Mr. Hursti's change. In fact, Mr. Hursti himself cannot speak to whether his proposed "new settings will not produce unintended adverse effects like reduced speed, false positives or decrease in ballot timing mark recognition readability." [Doc. 990-1, ¶ 11]. And, concomitantly, Mr. Hursti offers no opinion on those election administration impacts—because he does not know.

Potential unintended consequences resulting from a hastily pulled together recommendation, and the potential for confusion among election

---

[6] In the interim, State Defendants and their counsel were also required to evaluate and prepare a response to Coalition Plaintiffs' emergency motion for (more) expedited discovery and injunctive relief. [Doc. 1002].

7

administrators, is reason enough to deny Coalition Plaintiffs' proposed relief. But doing so with so little time before its implementation only exacerbates those potential problems. As this Court is aware, the Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). Indeed, the Eleventh Circuit has now stayed at least two orders issued against the Secretary concerning the 2020 election in the past month. *See New Ga. Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020), *Curling v. Ga. Sec'y of State*, No. 20-13730-RR, 2020 WL 6301847 (11th Cir. Oct. 24, 2020) (per curiam).

Setting all of this aside, the only purported injury remedied by this change in the brightness setting is an injury to voters who disregard the printed instructions on the absentee ballot. Put simply, there is no constitutional right of voters to disregard ballot instructions and mark their ballots with highlighters, as Coalition Plaintiffs propose. While this Court previously suggested that voters who vote in a small handful of municipal elections may be confused and erroneously apply checkmarks or X's to their ballots, [Doc. 964, p. 98-99 n.79], Coalition Plaintiffs never presented any

8

such evidence in connection with their motion and did not evaluate such marks here. *See generally* [Doc. 990-1].

## CONCLUSION

Coalition Plaintiffs' proposed changes on brightness settings are ill-conceived, injecting the uncertainty of many different unintended consequences. The relief sought violates existing law by attempting to bind non-parties, setting administrative details of an election, and is not required by the U.S. Constitution. This Court should decline Coalition Plaintiffs' invitation to enter relief in a manner even they did not conceive of at the time of the hearing.

Respectfully submitted this 9th day of November, 2020.

>Vincent R. Russo
>Georgia Bar No. 242628
>vrusso@robbinsfirm.com
>Josh Belinfante
>Georgia Bar No. 047399
>jbelinfante@robbinsfirm.com
>Carey A. Miller
>Georgia Bar No. 976240
>cmiller@robbinsfirm.com
>Alexander Denton
>Georgia Bar No. 660632
>adenton@robbinsfirm.com
>Robbins Ross Alloy Belinfante Littlefield LLC
>500 14th Street, N.W.
>Atlanta, Georgia 30318

Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
R. Dal Burton
Georgia Bar No. 097890
dburton@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## L.R. 7.1(D) CERTIFICATION

I certify that this Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Bryan P. Tyson*
Bryan P. Tyson