# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CURLING PLAINTIFFS' REPLY IN SUPPORT OF
## <u>RENEWED MOTION FOR ATTORNEYS' FEES AND EXPENSES</u>

# TABLE OF CONTENTS

I.      INTRODUCTION.....................................................................................1

II.     ARGUMENT .........................................................................................3

   A.     The August 2019 Awarded Relief is Sufficiently Discrete..........................3

     1.   State Defendants Admitted the BMD Claims Are Discrete .......................4

     2.   The Court Treated the DRE and BMD Claims as Discrete ........................4

     3.   State Defendants Misconstrue Curling Plaintiffs' Statements.....................5

     4.   Defendants Again Wrongly Argue Mootness...............................................7

     5.   The Requested Fees are Appropriate and Reasonable.................................9

   B.     The Financial Situations of the Parties Supports an Award.......................10

   C.     State Defendants Have Impeded Resolution on the Merits ........................13

   D.     Relief from Fulton County Defendants.......................................................14

III.    CONCLUSION ......................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Common Cause/Ga v. Billups*,
554 F.3d 1340 (11th Cir. 2009) ........................................................................8, 9

*Curling v. Kemp*,
334 F. Supp. 3d 1303 (N.D. Ga. 2018) (Dkt. 309) ...............................................10

*Curling v. Raffensperger*,
397 F. Supp. 3d 1334 (N.D. Ga. 2019) (Dkt. 579) ...................................... passim

*Curling v. Raffensperger*,
No. 1:17-cv-2989-AT, 2020 WL 5757809
(N.D. Ga. Sept. 28, 2020) (Dkt. 918) ....................................................................9

*Curling v. Raffensperger*,
No. 1:17-cv-2989-AT, 2020 WL 6065087
(N.D. Ga. Oct. 14, 2020) (Dkt. 969) .....................................................................4

*Fox v. Vice*,
563 U.S. 826 (2011) .............................................................................................11

*Jean v. Nelson*,
863 F.2d 759 (11th Cir. 1988) ................................................................................9

*McGuire v. Murphy*,
285 F. Supp. 3d 1272 (M.D. Ala. 2018)...........................................................8, 13

*Westfall v. Bd. of Comm'rs of Clayton Cnty.*,
477 F. Supp. 862 (N.D. Ga. 1979)..........................................................................4

**Statutes**

42 U.S.C. § 1988 ...........................................................................................................2

**Other Authorities**

O.C.G.A. § 21-2-281....................................................................................................14

## I.     INTRODUCTION

Defendants rely on six incorrect arguments.  First, they argue that Curling Plaintiffs are not prevailing parties because this Court's August 2019 preliminary injunction Order purportedly achieved nothing.  Not only does this ignore the full scope of relief the Court ordered, such as the emergency paper backup plan that proved vital for the chaotic June 2020 primary elections, but it directly contradicts Secretary Raffenperger's own recent admission:  "We stood up a new voting system, new voting machines in less than six months.  *And that was really because we had an activist federal judge that said you can't use the old DRE machines. And so we had to do that for the first primary that we had coming up*."[1]

Second, Defendants argue that the DRE claims are not sufficiently discrete from the BMD claims.  But Defendants previously argued the opposite, that the BMD claims are so distinct from the DRE claims as to require a new complaint. The Court agreed.  This is precisely what interim fees are intended for.  Notably, Defendants never argued in their prior briefing on an interim award—nor could they—that relief on the BMD claims could obviate a fee award regarding DREs.

---

[1] Rev.com, Inc., *Georgia Secretary of State Brad Raffensperger Press Conference Transcript: Announces Hand Recount* (Nov. 11, 2020), https://www.rev.com/blog/ transcripts/georgia-secretary-of-state-brad-raffensperger-press-conference-transcript-announces-hand-recount (emphasis added) ("Rev.com Transcript").

Third, State Defendants argue that the pandemic has hurt their financial condition. Even if accurate (and indications are that Georgia's financial condition is strong), this is not a factor the Court is permitted to consider under 42 U.S.C. § 1988—and for good reason. The statute authorizes fees and costs to ensure that important civil rights cases such as this are tenable. A denial here based on State Defendants' financial condition would contravene the law and discourage critical civil rights litigation, as states frequently face financial stress and uncertainty.

Fourth, again offering a *Twilight Zone*-like depiction of these proceedings, State Defendants blame Plaintiffs for the costly, protracted nature of this case. State Defendants entirely ignore their own vexatious strategy and this Court's repeated admonitions regarding their dilatory tactics and lack of candor.

Fifth, State Defendants argue that because Morrison & Foerster LLP has spent millions of dollars on other *pro bono* matters, Curling Plaintiffs have suffered no financial burden warranting fees and costs now. This is wrong. Every dollar spent on this case is a dollar unavailable to spend on other important *pro bono* matters. Moreover, State Defendants' vexatious strategy has increased the cost of this litigation exponentially from what was anticipated in March 2018. Curling Plaintiffs are entitled to recover that extraordinary cost now.

Finally, State Defendants repeatedly claim that Curling Plaintiffs have

avoided resolution on the merits of their claims.  This is false (and irrelevant).
This Court may recall that Curling Plaintiffs repeatedly asked State Defendants to
stipulate to the preliminary injunction as a final order or proceed with discovery
and a trial on the merits.  State Defendants refused.  Even now, they refuse to
proceed with discovery, unilaterally declaring that they will produce what they
want when they are good and ready.  They also delayed these proceedings with a
frivolous appeal in 2018.  State Defendants alone have impeded resolution on the
merits.  No doubt they fear the permanent injunction the evidence will mandate
when they can no longer hide behind claims of burden on the eve of an election.

Curling Plaintiffs spent millions of dollars to secure an injunction that still
stands today, that the Secretary himself admits eliminated the DRE system when it
otherwise would have remained in use, and that provides other critical relief.  It is
time for Curling Plaintiffs to recover the massive cost of that major success.

## II.   ARGUMENT

### A.   The August 2019 Awarded Relief is Sufficiently Discrete

Defendants claim this Court already held that the grounds for an interim
award are not sufficiently discrete from matters remaining to be litigated.  (Dkt.
1024 at 8; Dkt. 1022 at 11.)  But this contradicts the Court's Order, which
expressly states that the Court was not "commenting on the merits of such an

3

argument." (Dkt. 733 at 4.)  The argument, in fact, is wrong on the merits.

### 1.    State Defendants Admitted the BMD Claims Are Discrete

State Defendants repeatedly have argued that the DRE claims that were the subject of the August 2019 Order are discrete from the BMD claims.  (*See*, *e.g.*, Dkt. 645-1 at 10 (arguing DRE claims were moot and separate from BMD claims; "this new [BMD] system replaces the *entirety* of the existing DRE system. . . .") (emphasis original); Dkt. 588 at 4-5.)  They cannot escape their prior admissions.

### 2.    The Court Treated the DRE and BMD Claims as Discrete

The Court expressly emphasized that its August 2019 preliminary injunction Order addressed *only* the DRE system, distinct from the BMD system that had just been announced: "The adequacy of the newly chosen BMD election system is not before the Court at this time." (Dkt. 579 at 137, 151.)[2]  Accordingly, Curling Plaintiffs—at State Defendants' insistence—moved to amend their complaint to add *new claims* addressing the unconstitutionality of the Dominion BMD-based system.  The need for this amendment and new claims directed at the new election system establishes that the claims are sufficiently discrete.  *See Westfall v. Bd. of Comm'rs of Clayton Cnty.*, 477 F. Supp. 862, 869 n.3 (N.D. Ga. 1979) (granting

---

[2] In its October 14, 2020 Order, the Court reiterated that the DRE claims did not encompass a challenge to the new BMD system and thus amended complaints were needed to address the new BMD system.  (Dkt. 969 at 9 n.7.)

interim fees on original complaint that led to enactment of new ordinance despite continued litigation on amended complaint against that ordinance).

In denying State Defendants' motion to dismiss, the Court again distinguished the BMD claims from the DRE claims.  (Dkt. 751 at 15 (noting "State Defendants ignored this Court's directives" to address new BMD claims rather than DRE claims that were basis of Court's August 15, 2019 preliminary injunction order); *id.* at 20 ("the Court has indicated that it does not intend to grant any further relief relating to the use of the old DRE voting machines"); *id.* at 26 ("the Court does not view the Curling Plaintiffs' retention of these [prior DRE] allegations that form the basis of relief already granted as seeking any new or additional relief regarding the defunct DRE voting machines"); *id.* at 26 n.15 ("the purpose of the amended complaint was to 'add[] claims related to GA SOS's proposed implementation of a voting system relying on ballot-marking devices ('BMDs')"); *id.* at 29 ("Plaintiffs' claims challenge as unconstitutional other aspects of the voting system (apart from the DREs machines) that will allegedly continue and seek prospective relief in future elections from such harm").)  The Court's findings establish that the DRE claims are sufficiently discrete.

### 3.    State Defendants Misconstrue Curling Plaintiffs' Statements

Plaintiffs' statements cited by State Defendants—that the BMD and DRE

claims belong in the same case because they "involve *overlapping* issues and facts and parties" and could "rely *in part* on overlapping discovery" such that an entirely separate case was not required—do nothing to dispute that they are sufficiently discrete issues.  (*Id.* at 7 (emphasis added).)  That distinct claims encompass *some* of the same issues does not at all mean they are the *same* claims for considering an interim award.  The statute does not require complete separation as State Defendants wrongly argue—only sufficient distinction to distinguish one phase of the case from another, which State Defendants themselves have emphasized here.

Under State Defendants' argument, no case *ever* would support an interim award as no issue in a case could ever be sufficiently discrete merely by virtue of being in the same case.  Again, this is not the standard.  The partial overlap between the DRE claims and the BMD claims reflects the nature of the vulnerabilities present in today's environment of advanced persistent threats to election systems and Defendants' refusal to remedy those basic vulnerabilities with *two* election systems.  Curling Plaintiffs sought to bar the use of one unconstitutional system (DREs) and won.  Curling Plaintiffs now ask the Court to bar the use of a second unconstitutional system (BMDs).  Whether Curling Plaintiffs ultimately prevail on the constitutionality of the BMD claims has no bearing on the injunction already ordered—and still standing—against the DRE

6

system, as State Defendants admit.  (*See* Dkt. 588 at 4-5 (arguing Court could

provide no further relief regarding DRE claims because "Plaintiffs' claims—*which

are limited to the DRE/GEMS system*—are moot: *the Order* prevents the

GEMS/DRE system from being used in 2020 elections") (emphasis added).)

Finally, material differences between the DRE and BMD systems presenting

different attack vectors and vulnerabilities highlight the distinction between the

constitutional challenges to each.  For example, Curling Plaintiffs have focused

their BMD claims on the use of bar codes and the unreliability of BMD-generated

paper ballots—as opposed to HMPBs—*none of which was at issue at all with the

DRE claims*.  State Defendants likewise have largely based their defense of the

BMD system on the presence of paper ballots, a defense inapplicable to DREs.

Thus, the DRE and BMD claims are sufficiently distinct for an interim award.

### 4.    Defendants Again Wrongly Argue Mootness

State Defendants argue that "the injunction in this case did not prevent the

state officials from enforcing any law" because the General Assembly authorized a

new election system before the August 2019 Order was entered.  (Dkt. 1022 at 13.)

Defendants merely repeat their twice-rejected mootness argument.

As the Court noted in July 2020, "[t]his Court has twice indicated its view

that Plaintiffs' original claims challenging the constitutionality of the DRE/GEMs

voting system were not moot as a result of the passage of Act No. 24/H.B. 316."

(Dkt. 751 at 24 n.14.)  In the August 2019 Order, the Court noted that, "while the

State Defendants have maintained that the BMD system will be rolled out in time

for the federal Presidential Preference Primary elections in 2020 and that use of the

DRE system in the 2019 elections is just a stopgap, the Court has reason to doubt

that."  (Dkt. 579 at 142.)  Secretary Raffensperger just recently confirmed that this

Court's doubt was well-founded, admitting that the DREs were finally abandoned

in 2020 "really because we had an activist federal judge that said you can't use the

old DRE machines . . . [and] we had to do that for the first primary that we had

coming up."[3]  Defendants' attempts to distinguish *Common Cause* and *McGuire*

are thus misplaced; both cases are aligned with the facts here.  *Common Cause/Ga*

*v. Billups*, 554 F.3d 1340 (11th Cir. 2009) (upholding grant of interim attorneys'

fees related to successful preliminary injunction against voter identification law

repealed by the state); *McGuire v. Murphy*, 285 F. Supp. 3d 1272 (M.D. Ala. 2018)

(interim fee appropriate where judgment was not moot at the time it was rendered).

---

[3] Rev.com Transcript.  *See also* Ga. Sec'y of State, *Secure, Accessible & Fair Elections (SAFE) Commission Report*, at 8 (Jan. 10, 2019), https://sos.ga.gov/admin/uploads/SAFE_Commission_Report_FINAL_(1-10-18).pdf (State was "aware of the [2018] order in *Curling v. Kemp* [that] strongly suggest[ed] that if Georgia does not update its voting system soon, a new system will be ordered"); Dkt. 588 at 4-5 ("the Order prevents the GEMS/DRE system from being used in 2020 elections").

Further, even if Defendants had voluntarily abandoned the DRE system for all 2020 elections (which Secretary Raffensperger admits they did not), Curling Plaintiffs still would be prevailing parties because this litigation successfully prompted that action; and they then should be awarded attorneys' fees and costs at this interim stage of the proceedings. *Common Cause/Ga*, 554 F.3d 1340; *Jean v. Nelson*, 863 F.2d 759 (11th Cir. 1988).

Finally, Defendants simply ignore the critical relief in the Court's August 2019 Order beyond abolition of the DRE system. For example, the Court required a backup paper ballot plan going forward and a pilot election using hand-marked paper ballots (HMPBs) in 2019. (Dkt. 579 at 147-49.) This relief was critical in protecting the right to vote in 2019 and the June 2020 primaries, as Cobb County—where the HMPB pilot occurred—acknowledged.[4]

### 5.   The Requested Fees are Appropriate and Reasonable

State Defendants summarily argue that the requested fees and costs are

---

[4] GA VOTERS FOR HMPBs, *Cobb HMPB Pilot*, YouTube (Nov. 15, 2019), https://www.youtube.com/watch?v=rL_4rihgbhc&feature=youtu.be, (Janine Eveler: "The counties that were using the Ballot Marking Device were dead in the water."); Thomas Hartwell, *Eveler: Paper-ballot pilot, new machines a success in Cobb*, Marietta Daily Journal (Nov. 7, 2019), https://www.mdjonline.com/elections/eveler-paper-ballot-pilot-new-machines-a-success-in-cobb/article_16eeadb6-0181-11ea-a05e-e7ef327d817c.html; Dkt. 905 at 206:2-15 (discussing Dkt. 892-12); Dkt. 918 at 32-33 (describing failures during June 2020 primary).

blanket requests unrelated to the relief obtained.  (Dkt. 1022 at 2, 11.)  But they do not even respond to—much less rebut—Plaintiffs' expert declaration, submitted here again, confirming the reasonableness of the requested fees.  (Dkt. 706-2.)[5] State Defendants argue that work pursuing a preliminary injunction in August 2018 was unrelated.  This ignores the huge work Curling Plaintiffs—and this Court—put into those proceedings that laid the groundwork for the August 2019 preliminary injunction, establishing many vulnerabilities that led to that injunction.[6]  (*See*, *e.g.*, Dkt. 579 at 7, 26-27, 31-32, 64-65, 77, 83 (citing Dkt. 309, September 2018 Order).)  The Court found in September 2018 that Plaintiffs likely would prevail on the merits of their claims, which they did.  (Dkt. 579 at 7, 130.)  Thus, the work leading up to the September 2018 Order directly led to the August 2019 Order.

## B.    The Financial Situations of the Parties Supports an Award

State Defendants admit that Georgia's financial condition is improving but

---

[5] The fees itemized in Curling Plaintiffs' request were conservative.  (Dkt. 596, 706, 998.)  State Defendants criticize the inclusion of appeal fees, ignoring that they are a tiny fraction of the total fees and were prompted by a "frivolous" appeal. Oral Arg. Recording, *Curling v. Kemp*, No. 18-13951 (11th Cir. Jan. 30, 2019), http://www.ca11.uscourts.gov/oral-argumentrecordings?title=&field_oar_case_ name_value=curling&field_oral_argument_date_value%5Bvalue%5D%5Byear%5 D=&field_oral_argument_date_value%5Bvalue%5D%5Bmonth%5D=, at 7:27.
[6] *See* Dkt. 579 at 5 n.3 (noting "the Court refrains from repeating the full range of factual findings and assessments of the evidence already set forth at length in its September 17, 2018 Order and that the Court finds still applicable.").

nonetheless argue that the ongoing pandemic leaves the State's financial condition
unsettled.  (Dkt. 1022 at 4-5.)  State Defendants offer no *evidence* to support their
claims about the State's financial condition, nor could they given the State's
publicly-reported information about its strong financial condition.  Neither do they
attempt to—nor could they—tie this argument to any factor the Court can consider
regarding an interim award.  (Dkt. 1029 at 9-11.)  Nothing excuses Defendants'
constitutional violations or obviates Curling Plaintiffs' statutory rights.

Regarding Curling Plaintiffs' ability to continue litigating the case, State
Defendants point only to Morrison & Foerster's storied *pro bono* services and
substantial investments in this case to argue "pro bono work is part of the culture at
MoFo."  (Opp. at 15.)  This is true—yet entirely beside the point.  It is the
extraordinary cost of *this* case that matters and supports an interim award.  Section
1988 authorizes attorneys' fees to prevailing civil rights plaintiffs because they
serve as "private attorneys general" who vindicate policies that "Congress has
considered of the highest priority."  *Fox v. Vice*, 563 U.S. 826, 833 (2011).[7]  The
Eleventh Circuit in particular recognizes interim fee awards to enable civil rights
attorneys to undertake representation when litigation is likely to be protracted in

---

[7] Such fees at once reimburse a plaintiff for what it cost him to vindicate civil
rights and holds to account a violator of federal law.  *Id.*

11

difficult and complex cases that require significant investment of time and resources—like this one. (*See* Dkt. 733 at 3.)

The protracted nature of this case has increased costs as many MoFo attorneys have pursued other jobs, requiring new attorneys to get up to speed on a complex case. At any point in time, the MoFo team dedicated to this case is small—indeed, *much* smaller than State Defendants' large and expanding team.[8] But the effort required of that small team has been enormous. This case was MoFo's largest *pro bono* case by hours in 2018 and the second largest in 2019 and 2020. (Cross Decl. ¶¶ 2-4.) It alone accounted for 7.5% of all U.S. litigation *pro bono* hours (across hundreds of matters) in the last three years. (*Id.* at ¶ 6.) In a firm with an average of 180 open litigation *pro bono* matters in each of these years, a single case that accounts for 7.5% of total litigation hours is extraordinary. (*Id.* at ¶ 5.) The thousands of hours and considerable expense devoted to this case necessarily limit the resources available for other matters, including *pro bono* work. Much of that time was spent on confronting State Defendants' persistent obstruction and delays, which Curling Plaintiffs successfully overcame in obtaining the 2019 preliminary injunction (that still stands). Expert analyses also

---

[8] Simply note the large number of lawyers for State Defendants who typically attend Court conferences and hearings and the parties' meet-and-confers, all of whom insist on being included on every communication among the parties.

have been complex and costly.  Any sum recovered is devoted to costs of *pro bono* matters and permits this case and others to continue.  *McGuire*, 285 F. Supp. 3d at 1285 (noting withholding interim fee awards could make representation in civil rights cases financially untenable and discourage similar cases in the future).

### C.   State Defendants Have Impeded Resolution on the Merits

The Court noted that "Defendants have previously minimized, erased, or dodged the issues underlying this case."  (Dkt. 579 at 152.)  State Defendants ignore their own vexatious tactics and falsely argue that the protracted nature of this case is due to Plaintiffs' "refusal to proceed to final adjudication of this claim on the merits."  (Dkt. 1022 at 17.)  State Defendants, not Plaintiffs, repeatedly told the Court that there was no need to proceed on the merits through discovery and trial on the DRE claims because there was no more relief available *given the August 2019 injunction*.  (Dkt. 590 at 20:18-20 ("[W]e don't see what relief the discovery would lead to at this point in light of the preliminary injunction.").)  The Court noted that "Plaintiffs forcefully opposed any stay of the proceedings and immediately sought a status conference to discuss an expedited schedule to move the case forward in time to address future elections." (Dkt. 579 at 4 n.1.)  Curling Plaintiffs repeatedly sought to proceed to trial on the merits.  (Dkt. 590 at 13-14; Dkt. 222 at 4; Dkts. 4, 749, and 791 (motions to expedite discovery); Dkts. 323,

963 (oppositions to stays); Dkt. 229 at 14-17, Dkt. 385; Dkt. 615 at 8.)  As State

Defendants admit, the August 2019 injunction is effectively the final resolution of

the DRE claims and thus supports a fee award now.  (Dkt. 590 at 20:18-20.)

### D.    Relief from Fulton County Defendants

Fulton County Defendants contend they should not bear any award because

they have no authority over the matters at issue.  (Dkt. 1024 at 7.)  Although this

misportrays their authority[9], Curling Plaintiffs do not object to the Court imposing

an award only on State Defendants given their relative responsibility, as long as

State Defendants bear the fees and costs that Fulton County otherwise would bear.

Fulton County has cooperated in discovery (such as the Dominion equipment for

expert analyses) and has not engaged in the vexatious, unprofessional litigation

tactics State Defendants have.  Their arguments against a fee award otherwise fail

for the same reasons as State Defendants.  Notably, Fulton County Defendants do

no dispute that Curling Plaintiffs are prevailing parties as to State Defendants,

whom they contend are ultimately responsible for Georgia's election system.

## III.   CONCLUSION

Curling Plaintiffs have spent nearly three years litigating this case, in two

---

[9] Fulton County has discretion under Georgia law to use HMPBs when the BMD
system is not feasible to use.  (O.C.G.A. § 21-2-281; *see also* Dkt. 955-3.)  It could
have exercised that authority to protect Curling Plaintiffs' constitutional rights.

discrete phases:  the first addressing the unconstitutionality of the antiquated DRE system and the second addressing the unconstitutionality of the new BMD system. Although vulnerabilities with the two systems overlap in some important respects, the claims challenging them are *sufficiently* discrete to warrant an interim award of fees and costs.  The millions of dollars spent to obtain a still-standing injunction against the DRE system—an extraordinary cost State Defendants needlessly and willfully compounded with vexatious and dilatory tactics—warrants an award now; as does the need to avoid the chilling effect on critical civil rights litigation that will inevitably ensue from a denial or further delay.  State Defendants, including Secretary Raffensperger himself, have admitted that the August 2019 injunction eliminated the DRE system when it otherwise would have remained in use and that no further relief is available for that system.  This alone is dispositive—but of course the injunction Order includes substantial other relief Defendants ignore.

Based on the complete record in this litigation, including the prior briefing, Curling Plaintiffs respectfully request an award of attorneys' fees and costs in the total amount of $4,403,385.30 expended in obtaining the important relief secured in the Court's August 2019 preliminary injunction Order.  Prompt recovery of this long-outstanding cost is important to the continued pursuit of this and other critical civil rights litigation, as the statute providing for such an award contemplates.

Dated:  December 15, 2020

Respectfully submitted,

 */s/ David D. Cross*

David D. Cross (*pro hac vice*)
Lyle P. Hedgecock (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
LHedgecock@mofo.com
MKaiser@mofo.com
RManoso@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling,*
*Donna Price & Jeffrey Schoenberg*

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

 _/s/ David D. Cross_
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2020, a copy of the foregoing **CURLING PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

_/s/ David D. Cross_____
David D. Cross
