```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
                           ATLANTA DIVISION


 DONNA CURLING, ET AL.,            :
                                   :
           PLAINTIFFS,             :
 vs.                               :   DOCKET NUMBER
                                   :   1:17-CV-2989-AT
 BRAD RAFFENSPERGER, ET AL.,       :
                                   :
           DEFENDANTS.             :
```

**TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE AMY TOTENBERG**

**UNITED STATES DISTRICT JUDGE**

**JANUARY 19, 2021**

**3:32 P.M.**

*MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

*TRANSCRIPT PRODUCED BY:*

*OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR*
*                                2394 UNITED STATES COURTHOUSE*
*                                75 TED TURNER DRIVE, SOUTHWEST*
*                                ATLANTA, GEORGIA  30303*
*                                (404) 215-1383*

**A P P E A R A N C E S   O F   C O U N S E L**

**FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY SCHOENBERG:**

    DAVID D. CROSS
    MARY G. KAISER
    EILEEN M. BROGAN
    LYLE F. HEDGECOCK
    MORRISON & FOERSTER, LLP

    HALSEY G. KNAPP, JR.
    KREVOLIN & HORST, LLC

**FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES, WILLIAM DIGGES, III, AND RICARDO DAVIS:**

    BRUCE BROWN
    BRUCE P. BROWN LAW

    ROBERT ALEXANDER McGUIRE, III
    ROBERT McGUIRE LAW FIRM

**FOR THE STATE OF GEORGIA DEFENDANTS:**

    VINCENT ROBERT RUSSO, JR.
    CAREY A. MILLER
    JOSHUA B. BELINFANTE
    ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

    JONATHAN D. CRUMLY, SR.
    BRYAN JACOUTOT
    ROBERT DALRYMPLE BURTON
    DIANE F. LAROSS
    TAYLOR ENGLISH DUMA

**FOR THE FULTON COUNTY DEFENDANTS:**

    CHERYL RINGER
    OFFICE OF THE FULTON COUNTY ATTORNEY

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; January 19, 2021.)**

COURTROOM DEPUTY CLERK: Let's find out who we have on the call.

Curling plaintiffs, who do we have on the phone representing Curling?

MR. CROSS: This is David Cross on behalf of Curling. Good afternoon, Harry.

COURTROOM DEPUTY CLERK: Good afternoon, sir.

Anyone else?

MS. KAISER: Mary Kaiser.

MR. KNAPP: Mr. Martin -- I'm sorry.

COURTROOM DEPUTY CLERK: Ms. Kaiser, I've got you.

Who else?

MR. KNAPP: Halsey Knapp, Mr. Martin.

COURTROOM DEPUTY CLERK: Mr. Knapp, good afternoon.

Anyone else?

MS. BROGAN: Mr. Martin, this is Eileen Brogan.

COURTROOM DEPUTY CLERK: I'm sorry. Say again, please.

MS. BROGAN: This is Eileen Brogan.

COURTROOM DEPUTY CLERK: Eileen Brogan. Okay. Thank you.

MR. HEDGECOCK: This is Lyle Hedgecock.

COURTROOM DEPUTY CLERK: Okay, Mr. Hedgecock. Thank

1  you very much.
2           Okay.  Coalition plaintiffs?
3           MR. BROWN:  Mr. Martin, this is Bruce Brown for the
4  Coalition plaintiffs.  And joining with us is Rob McGuire and
5  Marilyn Marks.
6           COURTROOM DEPUTY CLERK:  Thank you, sir.
7           Anyone else for the Coalition?
8           All right.  State of Georgia?
9           MR. RUSSO:  Good afternoon, Mr. Martin.  This is
10 Vincent Russo for the State of Georgia.  I have here with me
11 Josh Belinfante and Carey Miller.
12          COURTROOM DEPUTY CLERK:  Great.  Thank you very much,
13 sir.
14          Fulton County?
15          MR. RUSSO:  And, Mr. Martin, we also have some folks
16 from Taylor English on the line.  I'll let them identify
17 themselves.
18          COURTROOM DEPUTY CLERK:  Okay.  Taylor English?
19          MR. CRUMLY:  Jonathan Crumly with Taylor English for
20 the State defendant.
21          MR. BURTON:  Dal Burton with Taylor English for the
22 State defendants.
23          MR. JACOUTOT:  Bryan Jacoutot with Taylor English.
24          COURT REPORTER:  I'm sorry.  What was the last one?
25          MR. JACOUTOT:  Bryan Jacoutot with Taylor English.

```
1                MS. LAROSS:  Diane LaRoss from Taylor English.
2                COURTROOM DEPUTY CLERK:  I'm sorry.  Is that
3    everybody at Taylor English?
4                All right.  Fulton County?
5                MS. RINGER:  Cheryl Ringer with Fulton County.
6                COURTROOM DEPUTY CLERK:  Thank you, Ms. Ringer.
7                Okay.  Judge, are you good with everybody that is on?
8                THE COURT:  Yeah.  Okay.  Very well.
9                COURTROOM DEPUTY CLERK:  We're ready to go.  Thank
10   you, ma'am.
11               THE COURT:  Okay.  We scheduled this phone conference
12   to address the parties' joint proposed schedule and your
13   differences regarding the proposed schedule.  And I looked at
14   each of the sets of schedules or the proposed.  And I want to
15   sort of approach something from outside the box with what are
16   the differences that you have here, first of all.
17               And, obviously, there has been an enormous amount of
18   election litigation going on in the country as a whole but
19   particularly in Georgia in the last two months.  And standing
20   has been a constant theme in the litigation, including a
21   decision by the Eleventh Circuit reviewing one of the many
22   cases against the State.
23               And I -- and, obviously, we have dealt with standing
24   multiple times in this case.  But between *Jacobson* and more
25   significantly all the decisions coming out and the fact that we
```

1  have two of my orders already up on interlocutory appeal, I'm
2  feeling very cautious about the approach of litigation that the
3  parties are proceeding with here.  Because given what I see, I
4  can well perceive that there is a reasonable chance that some
5  portion of my orders may be reversed or may not be.
6          But the most salient thing to me is the concern that
7  out of the box we'll end up having some procedural issues that
8  the court may want to tackle.  And, you know, I don't know that
9  we need any more of an evidentiary record relative to these
10 issues.  And I think that they may pop up whether I certify the
11 order I issued on the motion to dismiss or not.
12         But it seems like an enormous amount of money and
13 resources to devote to this if it is going to just end up
14 potentially being addressed on procedural grounds.  And, you
15 know, I think I have read every single decision, frankly, that
16 has come out on the election cases across the nation.  So I
17 think this is a reasonable concern on my part.
18         And I realize I didn't write you in advance about
19 this.  But it has obviously been in my mind since -- over the
20 last ten days in particular when we are going to end up wanting
21 to gin up the litigation and the things were in a relative
22 pause, even though I recognize that the plaintiffs were doing
23 all sorts of work yourselves in trying to map evidence for the
24 case.
25         But the case was -- with the schedule that you are

1  talking about, I think it is only fair to raise this as a
2  substantive concern and my thinking that really I probably
3  should just certify the order on the motion to dismiss to go
4  along with the other two orders that are already up there on
5  appeal and any other one you want possibly as well.
6         And I know I am sort of hitting you a little bit
7  blind, and you don't have to say anything at this juncture, and
8  we can have a -- you can obviously write me about it, or you
9  can talk about it now, or we can schedule another phone
10 conference to discuss it.
11        But it seems to me that having no idea what the
12 schedule, of course, in the Eleventh Circuit is, it is
13 something that I need to attend to promptly.
14        MR. CROSS:  Your Honor, this is David Cross.  I guess
15 a couple of thoughts.  One, I want to consult our appellate
16 team on their thoughts on this.  And they are not on this.  So
17 I would like an opportunity to do that.
18        THE COURT:  Right.  Sure.
19        MR. CROSS:  I guess -- I guess just for what it is
20 worth, my initial reaction -- the concern I have is just the
21 delay.  You know, we have elections coming up this year.  We
22 have major elections coming up next year.
23        The last time we went up to the Eleventh Circuit it
24 was a lot of lost time on an appeal that, you know, even the
25 Eleventh Circuit characterized as frivolous.

1  And I'm not suggesting this is frivolous. There has
2  been a lot of developments in the election litigation. But I
3  guess I'm not seeing why we would need to take the standing in
4  our case up now because our case is very differently postured
5  than the election challenges that had gone up to the Eleventh
6  Circuit.
7  Those were cases about -- all the ones that I have
8  seen and the ones you have noted were cases about voter fraud
9  changing the outcome of an election. And I think we have all
10 been agreed, because this is a point I recall making in my
11 closing in the September hearing. Everyone I think on both
12 sides of the "V" in this case have always agreed that this is
13 not about election outcomes. Those cases were. Our case is
14 about --
15 THE COURT: No. We're not --
16 MR. CROSS: -- the ruling -- yeah. It is about the
17 disenfranchisement of particular voters. So I understand Your
18 Honor's concern. I certainly understand the reasoning behind
19 it.
20 I worry a lot about running out of time again because
21 we keep ending up in this cycle where we are trying to get
22 relief and we end up in a world where *Purcell* matters and these
23 other things. I want to avoid that. But I understand Your
24 Honor's concern.
25 MR. BROWN: Your Honor, this is Bruce Brown. I would

1 share Mr. Cross' concerns and statements. And we have also
2 been reviewing the Eleventh Circuit's and other appellate
3 decisions about standing and the other issues. *Jacobson* is an
4 important case and has been. We have reviewed that before and
5 believe that the judge there made it very clear that the
6 Anderson-Burdick claims were different claims in terms of the
7 analysis of standing and the political question.
8     And so I think that Mr. Cross' statement that our
9 case is different is supported by fairly deep Eleventh Circuit
10 precedent. And I believe that the opinion I'm referring to
11 actually was -- was by a judge that would be considered
12 conservative and more reluctant to entertain federal court
13 actions than perhaps other judges would be.
14     And we would also underscore the need for relief, not
15 just to avoid *Purcell*. But that elections continue to be
16 conducted in Georgia. And our position is that people continue
17 to be disenfranchised not only because of the standing problems
18 but all the other problems that we have outlined in our papers.
19     MR. CROSS: Your Honor, David Cross again. If I
20 could make one other quick point before the defendants jump in.
21 I do think it is worth noting that even if Your Honor certifies
22 this the Eleventh Circuit may not take it up. And we should
23 remember that the last time we were in front of the Eleventh
24 Circuit on an appeal the defendants made a standing argument
25 then as well.

1               And so the Eleventh Circuit had an opportunity to
2     address standing in this case if it wanted to and did not.
3     Instead, it dismissed the appeal as frivolous.  Certainly on
4     the frivolousness, it addressed the immunity piece.  But the
5     standing argument has been before the court before.  They have
6     standing arguments, as I recall, on their current appeals as
7     well.
8               So it seems like if the Eleventh Circuit wants to
9     wade into that it can.  Again, I just -- I worry that if we put
10    this case on ice it is going to be a repeat of what happened
11    before where we sat for what may be many months.  And then we
12    just end up going in the ordinary course, which is standing
13    gets addressed on appeal at the end.
14              We would resist this path, which may not come as a
15    surprise to Your Honor.  But that is the thinking.
16              MR. RUSSO:  Your Honor, this is Vincent Russo for the
17    State defendants.  I mean, we would agree that standing is a
18    key issue here, an important issue and is -- you know, if Your
19    Honor wants to certify the question to the Eleventh Circuit, we
20    have no objection to that.
21              Standing, of course, is -- we're in a different
22    posture than we were back in 2018 when the case was previously
23    appealed to the Eleventh Circuit.  Standing, of course -- just
24    because the Eleventh Circuit found that the plaintiffs had
25    standing or disagreed with our appeal -- they did not rule on

1    it -- excuse me -- at that time.  It doesn't mean, of course,
2    that the plaintiffs still have standing today.
3             The evidence in the record has developed.  And as you
4    rightly pointed out, there have been a number of cases that
5    have addressed the standing issue over the past -- this last
6    election cycle.
7             One of the pending appeals does include the
8    jurisdiction issue with regards to standing.  The court -- the
9    Eleventh Circuit has not made a decision on the jurisdictional
10   question yet.
11            So if the court decides to proceed, then, of course,
12   standing will be raised then.  The -- I guess the Curling
13   plaintiffs are not in the appeal right now since the order that
14   was being appealed is one that they did not get any relief in.
15            But -- so that may be another good reason to certify
16   the question to the Eleventh Circuit to have it addressed with
17   regards to all of the plaintiffs at this point on the
18   jurisdictional issue.
19            If we have to get to the substantive issues, we have
20   plenty -- we have additional, you know, evidence that we would,
21   of course, want in the record, including the audit of the
22   Presidential election in 2020.
23            But it seems to us that at least moving forward on
24   the standing issue it makes a lot of sense now.
25            THE COURT:  Well, let me just ask you a follow-up

1  question.  You want -- it is a little hard for me to say that
2  you should be able to get in evidence as to the -- the audit
3  without allowing the plaintiffs to be able to get in more
4  evidence themselves as well.
5           I mean, it was sort of a limited set of orders that
6  went up.  So if it is going to go up with additional evidence
7  about the audit, I would have to allow them to have other
8  additional evidence in too.
9           MR. RUSSO:  That's right, Your Honor.
10          THE COURT:  And I don't know what else they have.
11 You know, I guess -- you know, it is a little wonky.  But you
12 could consider is there a month, six weeks of discovery you
13 want to do this.  But it is sort of -- I think the Eleventh
14 Circuit would think it was a little wonky.  I mean, they are --
15          MR. RUSSO:  Yeah.  Your Honor, this is Vincent Russo
16 again.  I think you are right.  It would be a little wonky.  I
17 mean, if it was going to be certified, we would think -- we
18 think it would be certified just as to the jurisdictional
19 issues.
20          THE COURT:  Yeah.  I mean, part --
21          MR. CROSS:  Your Honor, this is --
22          THE COURT:  Yes.  Go ahead.
23          MR. CROSS:  I was just going to say -- Your Honor,
24 this is David Cross.  I think if it goes up -- and it sounds
25 like Vincent is saying the same thing -- it has to go up only

1  on the motion to dismiss decision, which ordinarily would not
2  be appealable as a denial.  But if you were to certify it, it
3  would have to go up on that basis and only on what Your Honor
4  relied on.
5              We wouldn't be talking about the State being able to
6  rely on anything beyond what is pled in our complaint and what
7  Your Honor relied on in reaching a standing decision for the
8  motion to dismiss.
9              MR. BROWN:  Just one more point about what the
10 Eleventh Circuit has now.  The jurisdictional -- I'm not sure
11 if this helps entirely.  But the jurisdictional question before
12 the Eleventh Circuit was whether your order on the relief
13 relating to the scanners was sufficiently final for appellate
14 review.
15             And so that is what is in front of the Eleventh
16 Circuit right now in terms of the jurisdictional issue.  We
17 don't know the other issues the appellants are going to raise.
18 But presumably standing will be one of them.
19             MR. RUSSO:  Your Honor, this is Vincent Russo.  Our
20 civil appeal statement, of course, lists out the various issues
21 in that appeal.  I mean, Mr. Brown is correct that the
22 jurisdictional question is in regards to the finality of the
23 preliminary injunction order.  But jurisdiction is an issue
24 that we have identified as one that will be raised on appeal.
25             THE COURT:  But it hasn't been raised yet or not?

```
 1  That is what I'm trying --
 2              MR. RUSSO:  We have not gotten to that point in
 3  that -- on that appeal.
 4              There are two appeals.  One was stayed regarding the
 5  paper pollbook backups.  There is not a jurisdictional question
 6  there.  The court did consolidate both appeals.  But it has not
 7  ruled on whether it has jurisdiction yet over the preliminary
 8  injunction order regarding -- your second one.
 9              So that one is -- it is the one that you deferred
10  entering a final order on.  So we are waiting to hear on that
11  and then a briefing schedule set once this Court makes a
12  decision on the jurisdictional question.
13              THE COURT:  All right.  Well, why don't -- I mean, I
14  realize, as I said, that this is coming out of the blue at you
15  and particularly for the plaintiffs.  Why don't you -- I want
16  to give everyone an opportunity to talk to whoever they need to
17  in terms of your colleagues that do appellate litigation.
18              And I mean, maybe what would be more comfortable is
19  if you wanted to file something that would address your
20  position.  I mean, I'm happy to talk to you instead.  But, you
21  know, if you -- if you want ten pages to write me something
22  about why you think I am right or wrong or what alternatives
23  there exist that you-all might want to talk about together,
24  that is fine.  I don't really want more than that.
25              But I really feel because of the time frame I need
```

```
 1   you to do that basically pronto.
 2              MR. CROSS:  Your Honor, this is David Cross.  Sorry.
 3              THE COURT:  No.  Go ahead.
 4              MR. CROSS:  I was just going to say:  I certainly
 5   agree we would like to move as quickly as possible.
 6              Today is Tuesday.  What if we were to file something
 7   by Thursday or Friday?  I don't think we need ten pages either.
 8   I think we can set five pages aside.  It is just a question of
 9   whether this goes up and what that looks like.
10              THE COURT:  All right.  That is fine.
11              MR. RUSSO:  Your Honor, this is Vincent Russo.  I
12   don't think we necessarily -- the State defendants feel like we
13   need to file something with the Court.  I mean, we think that
14   certifying the question would be an efficient way to deal with
15   this issue.  However, we are -- you know, we are happy to file
16   a response to whatever the plaintiffs file.
17              THE COURT:  All right.
18              MR. CROSS:  Your Honor, this should be simultaneous.
19   We don't need extended briefing on this.  Both sides have a
20   position as to whether this should go up.  Because, otherwise,
21   we need to respond to them.  Let's just put simultaneous briefs
22   in on Thursday, and Your Honor can decide what to do.
23              THE COURT:  All right.  Why don't we do that then
24   that way.  And if -- just make life easy for me though.  If
25   there is a State jurisdictional statement or anything you filed
```

1  in the Eleventh Circuit other than obviously the original
2  motion for interlocutory that I respond -- that the court
3  already responded to and why don't you just provide it to me so
4  I can see exactly what is on appeal and how you have framed it.
5          MR. RUSSO:  Yes, Your Honor.  I mean, all we filed is
6  the civil appeal statement, and then the parties have briefed
7  the jurisdictional question issue.  But that is -- that is
8  where it stands.
9          THE COURT:  All right.  I'm just saying do me the
10 favor just because we're still on -- just go ahead and provide
11 me the briefs that you did and the jurisdictional statement.
12 It will just make life easier for us at the moment.
13         MR. RUSSO:  Sure.  Yes, ma'am.
14         Would you -- would you like for us to email that to
15 Ms. Cole?
16         THE COURT:  That is fine.  That is fine.
17         MR. RUSSO:  Okay.  We will do that.
18         THE COURT:  All right.  And I just wanted to note
19 that as to the concerns about the time frame that plaintiffs'
20 counsel has expressed I do understand that.  But I am just
21 concerned that either way we have the time frame issue and
22 maybe this is a faster way of dealing with it.
23         I mean, you can think about is there something that
24 you think properly you want to be able to do now while this is
25 going up.  There are obviously other options here that you

1   could all agree on.
2           But obviously there has been a lot of resources
3   devoted to this case, and you have to make a decision about
4   that too.
5           All right.  I'll look forward to seeing your briefs.
6   And if I decide we're not doing this, then we'll resume
7   discussion of the actual schedule.
8           Okay?
9           MR. CROSS:  Your Honor, could I ask -- this is David
10  Cross -- just to clarify, the parties had agreed that discovery
11  would continue to go forward.
12          Should we -- where does that leave us on that?
13          THE COURT:  Well, that's what I'm saying.  What I was
14  just trying to get to is I think you could decide that you want
15  to keep on going forward with discovery.  But you could also
16  decide that that is an enormous expenditure of resources that
17  you want -- that would be properly stayed until we have a
18  decision from the Eleventh Circuit.
19          MR. CROSS:  Okay.  I see.
20          All right.  So then we'll put joint submissions in
21  simultaneous on Thursday and then wait to hear from Your Honor
22  on whether you are going --
23          THE COURT:  Right.  I mean, if you -- I think it is
24  something -- what I'm saying is that I think that it would be
25  obviously something you want to think about so that I -- you

1  know -- and something you may want to talk about.  I'm going to
2  assume just knowing the way things are the State is going to
3  say why should we go forward with discovery.  So if that is the
4  obvious thing -- I mean, I think you-all ought to chat about
5  it.
6             But then -- but if plaintiffs still want to proceed
7  with it, then I think you should probably define what you
8  really want to do in that time frame.  Because maybe it is not
9  the whole deal because -- but it may be some portion of it and
10 you are just concerned about time frame.  Because if it gets
11 back to you and you have -- and the case is moving forward that
12 you want to have done more.
13            I'm not going to be focused -- I will say to you --
14 about that I need to decide in time for -- at this point for
15 the off-year elections.  You know, to be prepared in the event
16 of change for the -- for the gubinatorial election is a whole
17 other matter or the state elections.  That is obviously much
18 more serious.
19            All right.  Well, I will look to your submissions on
20 Thursday.  And thank you very much.
21            I will still say nothing should exceed ten pages no
22 matter what so that I don't get last-minute requests for an
23 extra page or anything like that.
24            Okay?
25            MR. BROWN:  Thank you, Your Honor.

1           MR. CROSS:  Thank you, Your Honor.
2           THE COURT:  All right.  Thank you very much.
3           MR. BELINFANTE:  Judge, thank you.
4                **(The proceedings were thereby concluded at 4:00**
5           **P.M.)**

```
1                    C E R T I F I C A T E
2
3    UNITED STATES OF AMERICA
4    NORTHERN DISTRICT OF GEORGIA
5
6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of
7    the United States District Court, for the Northern District of
8    Georgia, Atlanta Division, do hereby certify that the foregoing
9    19 pages constitute a true transcript of proceedings had before
10   the said Court, held in the City of Atlanta, Georgia, in the
11   matter therein stated.
12        In testimony whereof, I hereunto set my hand on this, the
13   22nd day of January, 2021.
14
15
16
17   _____
     SHANNON R. WELCH, RMR, CRR
18   OFFICIAL COURT REPORTER
     UNITED STATES DISTRICT COURT
19
```