**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL., Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL., Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

# COALITION PLAINTIFFS AND GWINNETT COUNTY BOARD OF ELECTIONS

# JOINT DISCOVERY STATEMENT REGARDING PRODUCTION OF SCANNED BALLOT IMAGES

**January 27, 2021**

JOINT DISCOVERY STATEMENT REGARDING PRODUCTION OF SCANNED BALLOT IMAGES

Pursuant to Part III(e) of this Court's Standing Order, the Coalition Plaintiffs and non-party Gwinnett County Board of Election ("Gwinnett") have conferred but are unable to resolve this discovery dispute. The relevant discovery is attached as Exhibit 1. Attached as Exhibit 2 is a full copy of the Georgia statute involved in this dispute, O.C.G.A. § 21-2-500.

*Issue:* Whether a Georgia records preservation statute, O.C.G.A. § 21-2-500, prohibits or excuses Gwinnett from producing, in response to an appropriate subpoena, electronic copies of scanned ballot images.

*Coalition Plaintiffs' Position*

Coalition Plaintiffs have subpoenaed electronic copies of the scanned ballot images, appended with the AuditMark stamp, that were generated by the Dominion scanners in the November 3, 2020 election. An example of such an image can be found at Doc. 877 at 20. The ballot images are highly relevant to many of the claims in this case, from the reliability of the QR codes to the problems with low-quality scans. Gwinnett objected, stating that the ballot scans "are held in accordance with state law," citing O.C.G.A. § 21-2-500, and would require a court order to obtain. That statute requires that copies of many public election records be preserved under seal with the superior court or other records custodian. It does not,

as Gwinnett claims, make Gwinnett's own copies of those election records exempt from discovery.

First, Gwinnett is still in possession of copies of electronic ballot images. The statute only requires Gwinnett to provide the records custodian with an electronic copy of those files, and Gwinnett could provide Coalition Plaintiffs with an electronic copy just as easily. Second, Gwinnett's compliance with O.C.G.A. § 21-2-500 does not create any barrier to complying with Coalition's request. That statute does not say that copies of the records that are delivered to the superior court (or county records custodian) are confidential or immune from public (or litigant) scrutiny, or anything close to it. Nor could it: under O.C.G.A. § 21-2-497, for example, copies of the consolidated returns, which the statute similarly requires to be filed under seal with the superior court, are required to be made available to the public, which is obviously done without an order of the superior court. In addition, the numbered list of absentee voters, which O.C.G.A. § 21-2-500 also requires Gwinnett to file under seal with the superior court, is currently available on the county's own website.[1] Obviously, complying with the preservation statute does not preclude Gwinnett from copying and distributing copies of the files they retained, including the electronic ballot images. Section 21-2-500 merely establishes who is responsible for keeping copies of election records for long term

[1] https://www.gwinnettcounty.com/web/gwinnett/departments/elections/voterslist

preservation. It is not meant to hinder access to the basic documents vital to election transparency or relevant in ongoing constitutional litigation. Additionally, in the course of this litigation, Coalition Plaintiffs have obtained electronic ballot images from Fayette County and Paulding County as public records, requiring no court order.

*Gwinnett Board of Elections' Position*

The non-party subpoena served on Kristi Royston, Gwinnett County's Elections Supervisor, seeks images of ballots cast by Gwinnett voters in the November 3, 2020 General Election. The images of ballots are stored on memory cards and on the server used by the County's Board of Registrations and Elections in connection with the Dominion Voting system. The image is generated on the cards from the ballot selections made by a voter on a ballot marking device and then scanned using an optical scanning scanner.

There have not been any decided cases on the access to be provided to ballots images since the adoption of the Dominion voting system in Georgia in 2019. With respect to the prior voting systems which use direct recording equipment ("DREs"), the Georgia Court of Appeals determined that a CD-ROM with ballot images, ballot styles and a copy of the consolidated returns from the election management systems was not subject to disclosure pursuant to the Georgia Open Records Act. Smith v. DeKalb County, 288 Ga. App. 574 (2007). In Smith,

the Georgia Secretary of State filed for a temporary protective order and a permanent injunction prohibiting DeKalb County from providing records in response to Mr. Smith's request for the GEMS CD-ROM "generated pursuant to O.C.G.A. section 21-2-500… which contains a copy of the information on each memory card (PCMCIA) which shall include all ballot images and styles" among other items.  Mr. Smith intervened and thereafter appealed the trial court's order enjoining disclosure of the requested material. Smith, 288 Ga. App. at 576. In Smith, there was evidence of additional concerns regarding election security. Id. at 577.  Respondent Royston is not advocating that similar concerns apply here. However, the requested ballot images exist on memory cards which are with sealed records in compliance with O.C.G.A. Section 21-2-500. See Exhibit 2. Consequently, here, Respondent Royston has attempted to comply with the law as reflected in Smith.

Coalition Plaintiffs assert that because the copies of ballot images also reside on a server that the requested records are not entitled to be treated the same as the sealed version of the records.  Respectfully, that appears inconsistent with the policy choice made by the Georgia General Assembly in the aforementioned statute. Access to ballot images on the server is currently being litigated in the Superior Court of Gwinnett County in a case styled VoterGa, LLC v. Gwinnett County Board of Registrations and Elections, Civil Action No. 20-A-08626-2, filed on November

30, 2020 arising from a request for ballot images for a run-off election held in August 2020. Respondent Royston advised Coalition Plaintiffs of the suit. The position asserted in response to the subpoena is taken out of an abundance of caution to avoid running afoul of any possible prohibition on disclosure of sealed records and is actively being litigated in the Gwinnett Superior Court. The fact that two counties, Fayette and Paulding, have made the ballot images available voluntarily without a court order is not determinative of whether there is a genuine issue of law concerning access to the requested records. The Coalition Plaintiffs characterize the law as a barrier to access, but if the Georgia General Assembly has determined that a Superior Court judge is the decision maker regarding who has access to certain election records and for what purpose, then the Coalition Plaintiffs should be required to follow that process.

*Coalition Plaintiffs' Reply*

The issue in *Smith v. DeKalb* was whether the GEMS database was subject to the Open Records Act, *not* the entirely different issue of whether it was discoverable in response to a federal court subpoena. To be clear: it is the Coalition Plaintiffs' position, notwithstanding the fact-bound *Smith v. DeKalb*[2]

[2] Coalition notes that the DRE "ballot images" referenced in *Smith* are nothing like the "scanned ballot images" involved here. DREs generated no scanned ballot images, of course; DRE "ballot images" appear as alpha-numeric entries in a database worksheet. Dominion "scanned ballot images" are scans of paper ballots similar to photographs as can be seen in Doc. 964 at 95-97.

decision about GEMS election records, scanned ballot images are subject to the Open Records Act.  But that is not the issue here.  It is true that some records that are exempt from the Open Records Act should also be exempt from discovery, such as records the disclosure of which would violate ballot or personal privacy. But Gwinnett makes no such claim; nor could it. Scanned ballot images do not show how any individual votes, disclose any personal information, or contain any other information the disclosure of which would compromise security.  During ballot adjudication, Gwinnett, and many other counties, routinely (and properly) make ballot images public on computer monitors for ballot review panel members, party monitors, the press, and members of the public. (Doc. 809-6 at 6-7).  In fact, copies of five Fulton scanned ballot images appear in this Court's Order concerning scanner settings (Doc. 964 at 95-97).

    The prompt production of ballot images also is essential to Coalition's ongoing discovery work to help identify the cause of unresolved discrepancies. The review of images involved in discrepant tabulations will be the next in a serious of multiples steps necessary to narrow the scope of forensic work that must be ultimately undertaken to determine the cause of system tabulation errors. Continued delays in accessing the ballot images postpones critical time-consuming forensic analysis and other discovery.

Respectfully submitted this 27th day of January, 2021.

| /s/Bruce P. Brown<br>Bruce P. Brown<br>BRUCE P. BROWN LAW LLC<br>Georgia Bar No. 064460<br>bbrown@brucepbrownlaw.com<br>1123 Zonolite Road, Suite 6<br>Atlanta, GA 30306<br>(404) 386-6856<br><br>*Attorney for Coalition Plaintiffs* | /s/Melanie F. Wilson<br>Senior Assistant County Attorney<br>Gwinnett County Law Department<br>Georgia Bar No. 768870<br>Melanie.wilson@gwinnettcounty.com<br>75 Langley Drive<br>Lawrenceville, Georgia 30046<br><br>*Attorney for Respondent Royston* |
|---|---|

CERTIFICATE OF COMPLIANCE AND SERVICE

The foregoing pleading has been prepared in accordance with the requirements of LR 5.1 and served on all counsel via the PACER-ECF system.

This 27th day of January 2021.

*/s/ Bruce P. Brown*
Bruce P. Brown
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 386-6856
*Counsel for Plaintiff Coalition for Good Governance*

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING ET AL.,

Plaintiff,

v.

BRAD RAFFENSPERGER ET AL.,

Defendant.

CIVIL ACTION FILE

NO. 1:17-CV-2989

**OBJECTIONS OF NON-PARTY KRISTI L. ROYSTON, IN HER CAPACITY AS THE GWINNETT COUNTY ELECTIONS SUPERVISOR TO PLAINTIFFS' SUBPOENA FOR PRODUCTION OF DOCUMENTS PURSUANT TO FED.R.CIV.P.45**

Pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure, Kristi L. Royston, ("Royston"), in her capacity as the Gwinnett County Elections Supervisor and as a non-party in the above-styled action hereby states her objections to Plaintiffs' Subpoena for Production of Documents ("the Document Request"). Royston states these objections without waiving any further objections to any specific documents when such documents are identified.

## I. GENERAL OBJECTIONS

1. Royston objects to any portion of the Document Requests, and any implied or expressed instruction or direction in the Document Requests, and any

**<u>Request No. 2</u>:** *Documents reflecting voter complaints relating to inaccuracy of the BMD printed ballots and all documents accounting for spoiled ballots for elections conducted after October 1, 2020.*

**<u>Response:</u>**

There are records responsive this request.

**<u>Request No. 3</u>:** *Reports sent to the Georgia Secretary of State after September 15, 2020 concerning errors, malfunctions, user errors, security concerns, ballot secrecy issues, or other operations problems related to the Dominion Voting System including Knowink Pollpad system.*

**<u>Response:</u>**

Royston objects to this request because it seeks records that are not in her control to the extent the request seeks those items from Royston, it exceeds the scope of Rule 45 of the Federal Rules of Civil Procedure. The request seeks records that are in the custody of a party to the action or originate from another third party. Subject to that objection and without waiving the same, there are no records responsive to this request.

**<u>Request No. 4</u>:** *Electronic copies of all scanned ballot images appended with the Auditmark record showing the interpretation of each vote where applicable from*

*both the election day count and the machine recount of the November 3, 2020 election.*

**<u>Response:</u>**

Royston objects to this request because it seeks records that are not in her possession, custody or control and to the extent the request seeks those items from Royston, it exceeds the scope of Rule 45 of the Federal Rules of Civil Procedure. The responsive records are held in accordance with state law, Official Code of Georgia Annotated Section 21-2-500 upon completion and certification of the election. Therefore, access to those records will require a court order.

**<u>Request No. 5</u>:** *An electronic copy of all Cast Vote Records from the Dominion "EMS Results Tally and Reporting" system, from both the original count and machine recount of the November 3, 2020.*

**<u>Response:</u>**

There are records responsive to this request.

**<u>Request No. 6</u>:** *The names and other identifiers of all batches of ballots cast Absentee By Mail for which the election day count of that batch differs from the Hand Audit Count in the 2020 Presidential Election race.*

E
X
H
I
B
I
T

2

Ga. Code Ann., § 21-2-500

**§ 21-2-500. Delivery of ballots and other documents to designated county or municipal officers**

(a) Immediately upon completing the returns required by this article, in the case of elections other than municipal elections, the superintendent shall deliver in sealed containers to the clerk of the superior court or, if designated by the clerk of the superior court, to the county records manager or other office or officer under the jurisdiction of a county governing authority which maintains or is responsible for records, as provided in Code Section 50-18-99, the used and void ballots and the stubs of all ballots used; one copy of the oaths of poll officers; and one copy of each numbered list of voters, tally paper, voting machine paper proof sheet, and return sheet involved in the primary or election. In addition, the superintendent shall deliver copies of the voting machine ballot labels, computer chips containing ballot tabulation programs, copies of computer records of ballot design, and similar items or an electronic record of the program by which votes are to be recorded or tabulated, which is captured prior to the election, and which is stored on some alternative medium such as a CD-ROM or floppy disk simultaneously with the programming of the PROM or other memory storage device. The clerk, county records manager, or the office or officer designated by the clerk shall hold such ballots and other documents under seal, unless otherwise directed by the superior court, for at least 24 months, after which time they shall be presented to the grand jury for inspection at its next meeting. Such ballots and other documents shall be preserved in the office of the clerk, county records manager, or officer designated by the clerk until the adjournment of such grand jury, and then they may be destroyed, unless otherwise provided by order of the superior court.

(b) The superintendent shall retain all unused ballots for 30 days after the election or primary and, if no challenge or contest is filed prior to or during that period that could require future use of such ballots, may thereafter destroy such unused ballots. If a challenge or contest is filed during that period that could require the use of such ballots, they shall be retained until the final disposition of the challenge or contest and, if remaining unused, may thereafter be destroyed.

(c) Immediately upon completing the returns required by this article, the municipal superintendent shall deliver in sealed containers to the city clerk the used and void ballots and the stubs of all ballots used; one copy of the oaths of poll officers; and one copy of each numbered list of voters, tally paper, voting machine paper proof sheet, and return sheet involved in the primary or election. In addition, the municipal superintendent shall deliver copies of the voting machine ballot labels, computer chips containing ballot tabulation programs, copies of computer records of ballot design, and similar items or an electronic record of the program by which votes are to be recorded or tabulated, which is captured prior to the election, and which is stored on some alternative medium such as a CD-ROM or floppy disk simultaneously with the

programming of the PROM or other memory storage device. Such ballots and other documents shall be preserved under seal in the office of the city clerk for at least 24 months; and then they may be destroyed unless otherwise provided by order of the mayor and council if a contest has been filed or by court order, provided that the electors list, voter's certificates, and duplicate oaths of assisted electors shall be immediately returned by the superintendent to the county registrar.

## Credits

Laws 1964, Ex. Sess., p. 26, § 1; Laws 1969, p. 292, § 1; Laws 1970, p. 347, § 30; Laws 1978, p. 1004, § 33; Laws 1993, p. 1074, § 1; Laws 1994, p. 1406, § 26; Laws 1997, p. 590, § 38; Laws 1998, p. 145, § 1; Laws 1998, p. 295, § 1; Laws 1999, p. 29, § 6; Laws 2003, Act 209, § 58, eff. July 1, 2003; Laws 2017, Act 250, § 21, eff. July 1, 2017.
**Formerly** Code 1933, § 34-1515.

Ga. Code Ann. § 21-2-500 (West)