IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-cv-2989-AT |

## STATE DEFENDANTS' BRIEF REGARDING STANDING

This case began with Plaintiffs' quest to declare the 2017 special Congressional election "void *ab initio.*" [Doc. 1-2]. After several amended complaints and even more attempted preliminary injunctions, Plaintiffs continue to raise concerns of *vulnerabilities* in Georgia's voting system. Under recent Eleventh Circuit precedent, Plaintiffs' concerns are not cognizable injuries in fact, regardless of the "evidence" they claim should be considered. Plaintiffs' injuries are hypothetical and the kind of generalized grievances that other courts addressed in recent election cases involving identical theories about BMDs. *See Pearson v. Kemp*, No. 1:20-cv-4809-TCB (N.D. Ga.); *Wood v. Raffensperger*, 1:20-cv-5155-TCB (N.D. Ga.) (*Wood II*).

Indeed, Sidney Powell's argument and filings in the *Pearson* case (popularly known as the "Kraken" litigation) consisted mainly of citing

Plaintiffs' arguments and orders from this case. *See, e.g.*, *Pearson*, Dec. 7, 2020 Motions Hrg., **Exhibit A**, Tr. 25:8–26:19 (reliance on this Court's Order); *see also* Exhibits to Complaint, *Pearson*, ECF Nos. 1-4 (Hursti Decl.), 1-5 ("CGG Analyst" email; Halderman, Skoglund, Hursti Decls.; Transcript of this Court's Conference regarding *de minimis* change). And L. Lin Wood, Jr. relied on Plaintiffs' arguments from this case in his subsequent case. *See, e.g.*, Complaint at ¶¶ 66–67, *Wood II*, No. 1:20-cv-5155-TCB, ECF No. 1; Exhibits to Mtn. for TRO, ECF Nos. 2-10 (Stark Decl.), 2-11 (Halderman Decl.).

Try as they might, Plaintiffs cannot separate their claims from those in *Wood II* and *Pearson*, which were each dismissed for lack of standing. *See* Ex. A, Tr. 42:16–43:1 (finding plaintiffs lacked standing since "their interests are one and the same as any Georgia voter"); *Wood II*, 2020 WL 7706833, at *2–6 (N.D. Ga. Dec. 28, 2020) (finding plaintiff lacked standing for generalized and speculative BMD claims). Plaintiffs may dislike their association with those who repeated Plaintiffs' mantra and claims, but the law treats them the same.

Resolving any remaining doubt is the Eleventh Circuit's February 2021 decision in *Tsao v. Captiva MVP Restaurant Partners, LLC*, No. 18-14959, 2021 WL 381948 at *5 (11th Cir. Feb. 4, 2020). There, the court decided that allegations about *vulnerabilities*—as opposed to those about actual injuries—

cannot establish standing. This binding precedent completely forecloses Plaintiffs' policy-based challenge to voting technology.

## FACTUAL BACKGROUND

### I. Plaintiffs' challenges.

The Court's October 11, 2020 Order describes Plaintiffs' challenges: "Plaintiffs allege that Defendants have failed to implement a constitutionally acceptable election system by requiring all in-person voters to use a BMD system that, as a whole, in its design and operation, is not voter-verifiable, secure, or reliable . . ." [Doc. 964, pp. 3-6]. "Plaintiffs' challenge focuses on the Defendants' implementation of the new statewide BMD system, *pursuant to the terms of the State's 2019 contract with Dominion Voting Systems*." [Doc. 964, p. 4] (emphasis added). *See* [Docs. 627, 628]. The Court continued: "Plaintiffs challenge the constitutionality of the State Defendants' *implementation of a barcode-based system for all in-person voting*." [Doc. 964, p. 5] (emphasis added). The Court further described Plaintiffs' challenge as "embracing an array of associated issues involving the electronic voting process that impact if an individual's vote (whether recorded from a scanned BMD-generated barcode or a hand-marked paper ballot) will be correctly captured, scanned, and accurately counted," which includes issues regarding

ballot processing and auditing the election results. [Doc. 964, p. 4].[1] This Court also described Plaintiffs' alleged injury as being "required to cast a ballot that cannot be read or verified as reflecting their actual choices because the votes are tabulated solely from an encrypted barcode that is not human readable." [Doc. 751, p. 38]. And, Plaintiffs claim that the current system and its configuration violates the Equal Protection clause because voters who vote using hand-marked ballots *might* have their votes rejected by the scanners due to "faint marks" on the ballot. [Doc. 964, p. 94]. In short, Plaintiffs contend that *every* voter is injured by the election system in Georgia, whether they vote using a BMD or hand-marked ballot.

The Court summarized Plaintiffs' Equal Protection and First and Fourteenth Amendment challenges as being based on:

(1) The alleged fundamental vote verification defect;
(2) The system's purported known and demonstrated risk vulnerabilities to access and manipulation identified by national cybersecurity experts; and
(3) The inherent problems posed in properly auditing votes tallied based on QR barcodes that cannot be verified by voters.

---

[1] State Defendants' dispute whether Plaintiffs have asserted such claims in the operative complaints, which is one of the issues in the pending appeal of the October 11, 2020 Order. State Defendants further contend that Plaintiffs have not demonstrated standing on this challenge either, but do not address it here given that the State Defendants have raised this issue on appeal.

[Doc. 964, p. 5].[2] So viewed, Plaintiffs' alleged BMD injuries are neither actual nor imminent, but speculative, potential, and generalized.[3]

## II.   The state of the evidence.

Contrary to Plaintiffs' arguments at the status conference, courts can and do dismiss complaints for lack of standing, even in election cases, even on a motion-to-dismiss standard , and frequently even when plaintiffs alleged an actual compromise of Georgia's voting equipment. *See Pearson*, Ex. A; *Wood II*, 2020 WL 7706833. This case should be no different. Even over its almost four-year history, the record in this case is devoid of actual evidence of an injury-in-fact to establish standing for the claims asserted by Plaintiffs. As the Eleventh Circuit instructed in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020), standing must be supported by evidence as a

---

[2] Coalition Plaintiffs also asserted procedural-due-process claims regarding the DREs and BMDs, and this Court determined Coalition Plaintiffs abandoned the former, [Doc. 375, p. 39 n.31], and dismissed the latter, [Doc. 751, p. 50].
[3] The same can be said regarding Plaintiffs' DRE claims, which State Defendants continue to maintain are moot. *See* [Doc. 645-1, pp. 12–15]. Coalition Plaintiffs have also brought a separate claim "based on the alleged intrusion on voters' free exercise of their right to cast a secret ballot at the polls." [Doc. 964, p. 5]. Coalition Plaintiffs' challenge centers on the "oversized voting touchscreens" and non-existent timestamping on precinct scanners. [Doc. 964, pp. 5-6]. While Coalition Plaintiffs' secret-ballot claims are undifferentiated and common to all members of the public, they are also based on state law and are barred by the Eleventh Amendment.

case moves forward—and Plaintiffs have had ample opportunity to present evidence of standing in their multiple preliminary-injunction motions.

For example, the individual Plaintiffs have submitted affidavits in this case proclaiming that they prefer to vote in person, but felt compelled to vote by absentee ballot because of their concerns about whether their ballots would be accurately counted by two different types of electronic systems. *See* [Docs. 785-3 (Curling); 785-4 (Price); 785-5 (Schoenberg); 640-1, pp. 149–151 (Missett), pp. 167–170 (W. Digges III), pp. 162–165 (L. Digges), pp. 156–160 (Davis)]. Of course, this is not evidence that any individual Plaintiff cast a BMD ballot that did not reflect their actual choices. Nor is it evidence that Plaintiffs are *likely* to cast a ballot in the future on a BMD system, nor that they are also *likely* to have their BMD ballot "hacked" by unspecified agents. Similarly, there is no evidence that the individual Plaintiffs have actually had (or will have) a hand-marked ballot rejected by a scanner due to a "faint mark" on the ballot—which would only happen if they refused to follow the directions printed on the ballot. Of course, there is also zero evidence that any BMD used in an election has ever been actually compromised.[4] All of

---

[4] This Court can take judicial notice of the undisputed fact that a full hand audit of the November 2020 presidential election results demonstrated that Plaintiffs' hypothetical fear is pure fantasy.

Plaintiffs' injuries are therefore hypothetical and generalized whether looked at on a pleading standard or based on the current evidence in the record.

## JUSTICIABILITY ANALYSIS

Courts are not "constituted as free-wheeling enforcers of the Constitution and laws." *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020) (citing *Initiative and Referendums Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc)). Consequently, jurisdiction in federal court is limited to only active "cases" and "controversies." U.S. Const. art. III, § 2; *Wilding v. DNC Servs. Corp.,* 941 F. 3d 1116, 1124 (11th Cir. 2019). Standing must be established before consideration of the merits. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). A litigant must show: "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson*, 974 F.3d at 1245 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). And, "threatened injuries [must be] "certainly impending." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).

**I.    The individual Plaintiffs lack standing because they have not been injured in a particularized manner and only claim generalized grievances.**

Injury in fact is the "first and foremost" of the standing elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish an injury in

fact, a plaintiff must show that he or she has suffered "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, *not conjectural or hypothetical.*" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (emphasis added). In the aftermath of the 2020 elections, the Third Circuit explained that an injury "that does no specific harm to you, or if it depends on a harm that may never happen, then you lack an injury for which you may seek relief from a federal court." *Bognet v. Sec'y of Pa.,* 980 F.3d 336, 348 (3d Cir. 2020) (emphasis added). Here, the evidence falls short of demonstrating an injury in fact.[5]

With respect to particularity, the alleged injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.[6] Plaintiffs "must demonstrate 'a personal stake in the outcome of the controversy.'" *Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513 at *4 (N.D. Ga. Nov. 20, 2020) (*Wood I*). As the district court in *Wood I* explained, a personal stake "requires more than a mere 'keen interest in the issue.'" *Id.* (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)).

---

[5] *Bognet* has repeatedly been favorably cited by courts in the Eleventh Circuit. *Wood*, 981 F.3d at 1314-15; *Wood I*, 2020 WL 6817513 at *4; *Wood II*, 2020 WL 7706833 at *3; *Trump v. Kemp*, No. 1:20-CV-5310-MHC, 2021 WL 49935 at *3 (N.D. Ga. Jan. 5, 2021).

[6] Footnote 7 in *Spokeo* reinforces this analysis because it specifically references the particularized harm suffered by individuals, even if many are injured.

The Eleventh Circuit affirmed the holding in *Wood I*, finding no particularized injury because no plaintiff was specifically disadvantaged even if a vote was improperly counted. *Wood*, 981 F.3d at 1314 (vote dilution can be a basis for standing but it requires a point of comparison). The court found Wood's interest in ensuring only lawful ballots are counted was not a distinct, personal injury. *Id.* Moreover, in considering Wood's argument that Georgia treats absentee voters as a "preferred class," the court stated, "[e]ven if we assume that absentee voters are favored over in-person voters, that harm does not affect Wood as an individual—it is instead shared identically by the four million or so Georgians who voted in person this November." *Id.* at 1315.

In his second lawsuit, *Wood II*, Wood sought, *inter alia*, to enjoin the use of the BMD voting system on constitutional grounds. *See Wood II*, 2020 WL 7706833, at *1. Wood alleged that his vote was devalued in relation to other votes because of claimed irregularities with the BMD voting machines and absentee-ballot procedures, which he claimed subjected him to unequal treatment as an in-person voter. *Id.* at *3-4. But the district court found Wood did not have a particularized injury and could not show a threatened concrete interest of his own. *Id.* at *4.

Plaintiffs have fared no better than Wood in articulating a particularized and distinct injury. Indeed, the *Wood II* injuries at least

*alleged* unequal treatment due to "systemic fraud" caused by a mysterious algorithm that swapped votes. Plaintiffs do not and, instead, complain that a system *they refuse to use* is vulnerable and unverifiable for those Georgia voters that *do* vote in person. "Setting aside the fact that '[i]t is an individual voter's *choice* whether to vote by mail or in person,' these complaints are generalized grievances." *Wood*, 981 F.3d at 1315 (citing *Bognet*, 2020 WL 6686120, at *15). Thus, Plaintiffs' allegations are not injuries that affect *these Plaintiffs* "in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.

Put another way, Plaintiffs' alleged injury is simply their fear that ballots will not be lawfully counted as cast. But "[a]n injury to the right 'to require that the government be administered according to the law' is a generalized grievance." *Wood*, 981 F.3d at 1314 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1995)). "A generalized grievance is 'undifferentiated and common to all members of the public.'" *Wood*, 981 F.3d at 1307 (quoting *Lujan*, 504 U.S. at 575). The alleged injury must be "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). A "keen interest in the issue" is not enough. *Trump*, 138 S. Ct. at 2416. Because Plaintiffs cannot identify a concrete and particularized injury, this Court "must not countenance[]" their

claims. *Wood*, 981 F.3d at 1315 (quoting *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007)).

## II. Plaintiffs lack an injury that is actual and imminent.

Because Plaintiffs seek injunctive relief, they "must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (citations omitted). In this regard, the threat of future injury must be "certainly impending,"—and that is fatal to the claims in this case. *See Wood I*, 2020 WL 6817513, at *2 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Eleventh Circuit recently considered whether a plaintiff in a data-breach case had alleged an injury sufficient for standing "because he faces a substantial risk of identity theft, fraud, and other harm in the future as a result of the data breach." *Tsao*, 2021 WL 381948 at *5. Just as Plaintiffs' claims here are premised on a fear that votes *may* be altered in the future (though, not theirs, given their refusal to use the BMDs), Tsao's claims were premised on a fear that "he *could* suffer future injury from misuse of the personal information disclosed during the cyber-attack (though he has not yet), and this risk of misuse alone is enough to satisfy the standing requirement." *Id.* at *3 (emphasis in original). And just as just as in *Tsao*, the

claims in this case are insufficient to show an injury that is "certainly impending." *See id.* at \*9 (citing *Clapper*, 568 U.S. at 409, 414 n.5).

Even more so, Plaintiffs here do not allege an actual breach of the BMD system—but in *Tsao*, there had been an actual compromise of the point-of-sale system.[7] *See also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 927 (11th Cir. 2020) (elevated risk of identity theft). Yet despite those facts and allegations in *Tsao* and *Muransky*, the Eleventh Circuit concluded there was an insufficient injury to confer Article III standing.

Further unlike the plaintiffs in *Tsao* and *Muransky*, the Plaintiffs here have had an uncommonly lengthy opportunity to probe for and produce evidence of an actual injury. But even after having access to the State's DREs for a significant amount of time, Dr. Halderman has yet to find any vote-changing malware in the DRE system, and instead only confirms "the *vulnerability* of the DRE system" and ways that "malware *could have* spread through it." [Doc. 885-1, ¶¶ 17-35] (emphasis added).

Other election cases have reached the same conclusion. In *Twelfth Cong. District Republican Cmte.*, for example, the plaintiffs asserted

---

[7] Plaintiffs' attempted reliance on Mr. Lamb accessing the KSU server that had some files related to the DRE and ExpressPoll system years ago is even more attenuated from the system they now challenge than the claimed triggering events in *Tsao* and *Muransky* that were insufficient to confer standing.

constitutional claims about absentee ballots that were "based upon speculation about actions or conduct of independent bad actors and simply they see ghosts behind a door." *Twelfth Cong. District Republican Cmte v. Raffensperger*, Case No. 1:20-CV-180 (S.D. Ga. Dec. 17, 2020), Motions Hrg. Tr. at 6:14-24.[8] Plaintiffs here suffer from the same fault, seeing ghosts in a machine. But as in *Twelfth Cong. District*, Plaintiffs do not have standing.

Further, Plaintiffs have not shown a "substantial likelihood" that they will suffer such an injury in the future. *See Strickland*, 772 F.3d at 883. Merely alleging that there is some chance Plaintiffs could be harmed in the future is not enough to establish injury-in-fact. *See GALEO v. Gwinnett Cnty. Bd. of Registration and Elections*, 2020 WL 6589661 at *5 (N.D. Ga. Oct. 5, 2020) (harm was too speculative to warrant Article III standing). Because the injuries Plaintiffs allege have not actually occurred and are not certainly impending, Plaintiffs injuries are hypothetical and not sufficient for standing.

### III. The Coalition for Good Governance has not established an injury-in-fact.

In a similar vein, the Coalition for Good Governance has failed to establish that an injury in fact based on diversion of resources. *Arcia v. Fla.*

---

[8] A copy of the transcript of the December 17 motions hearing in *Twelfth Cong. District Republican Cmte*, Case No. 1:20-CV-180, is attached as **Exhibit B**.

*Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Although diversion can be a concrete injury, the Coalition has not established that it has diverted any resources to address any illegal acts.

As the evidence in the record shows, the Coalition's mission is to "engage in litigation as well as provide monetary support for legal expenses to other organizations engaged in litigation" on issues involving elections and other government matters. [Doc. 882-1, p. 3]. Because the Coalition is serving its organizational purpose by filing and pursuing this litigation, it cannot be diverting resources because it is doing the very thing it exists to do. *See Nat'l Treasury Emps. Union v. U.S.*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). The Coalition cannot convert an otherwise non-justiciable claim into a justiciable one by the simple act of incorporating—otherwise all of the plaintiffs in the cases brought in the aftermath of the 2020 election could have solved their standing problem by filing as corporations. *See id.* at 1429 (mission statements do not establish standing).

The Coalition also cannot claim injury simply by diverting resources to new initiatives that are based on its "fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Because the only alleged diversion is based on injuries that are not certainly impending, as explained

above, the Coalition cannot "secure a lower standard for Article III standing by making an expenditure based on a nonparanoid fear." *Id.*

Finally, the Coalition has not identified what activities it must "divert resources away *from* in order to spend additional resources" combatting the practices at issue. *Jacobson*, 974 F.3d at 1250 (emphasis in original). Nor has it shown any perceptible impairment of organizational activities or daily operations, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919-21 (D.C. Cir. 2015), or that it diverted resources "beyond those normally expended," *Cigar Ass'n of Am. v. U.S.*, 323 F.R.D. 54, 63 (D.C. Dist. 2017). *Accord, Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018); *Ga. Latino Alliance for Human Rights v. Deal*, 691 F.3d 1250, 1260 (11th Cir. 2012). After nearly four years of litigation, there is simply no evidence to support that the Coalition is doing anything other than pursuing its purpose.

## CONCLUSION

Based on this brief and State Defendants' prior briefs in this case, Plaintiffs lack standing and this case should be dismissed.

Respectfully submitted this 12th day of February, 2021.

*/s/Vincent R. Russo*
Vincent R. Russo
Georgia Bar No. 242628

vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
R. Dal Burton
Georgia Bar No. 097890
dburton@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202

lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Vincent Russo*
Vincent R. Russo
