# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>        **Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>        **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CURLING PLAINTIFFS' BRIEF REGARDING STANDING

# TABLE OF CONTENTS

I.      INTRODUCTION.............................................................................................1

II.     BACKGROUND AND FACTUAL RECORD ...........................................1

III.    ARGUMENT ...................................................................................................4

   A.   Curling Plaintiffs Have and Will Suffer a Concrete and
        Particularized Injury in Fact.......................................................................5

      1. Curling Plaintiffs' Injury is No Less Particularized or Concrete
         Because Other Voters May Be Harmed.......................................................5

      2. Curling Plaintiffs' Individual Right to Vote Is and Will Be
         Injured In Fact..............................................................................................7

      3. Defendants Misportray Recent Election Decisions ....................................9

   B.   Curling Plaintiffs' Injury is Traceable to Defendants and
        Redressable ................................................................................................13

   C.   The Political Question Doctrine Does Not Bar This Case...........................14

IV.     CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ........................................................................14

*Baker v. Carr*,
    369 U.S. 128 (1962) ............................................................ 7, 8, 12, 14

*Bowyer v. Ducey*,
    No. 20-2321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) ...................10

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ........................................................................14

*Bush v. Gore*,
    531 U.S. 98 (2000) ...........................................................................8

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
    572 F.3d 1271 (11th Cir. 2009) ........................................................14

*Carney v. Adams*,
    141 S. Ct. 493 (2020) ................................................................ 10, 12

*Common Cause/Ga. v. Billups*,
    554 F.3d 1340 (11th Cir. 2009) ..........................................................8

*Curling v. Raffensperger*,
    No. 1:17-CV-2989-AT, 2020 WL 5994029 (N.D. Ga. Oct. 11,
    2020) .................................................................................... 3, 4, 8

*Davis v. Bandemer*,
    478 U.S. 109 (1986) ...........................................................................8

*Dillard v. Chilton Cnty. Comm'n*,
    495 F.3d 1324 (11th Cir. 2007) ........................................................11

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998) ....................................................................... 6, 10

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) .................................................................. 1, 5, 7

*Harper v. Va. Bd. of Elections*,
   383 U.S. 663 (1966) .............................................................................12

*Jacobson v. Fla. Sec'y of State*,
   974 F.3d 1236 (11th Cir. 2020) ............................................... 13, 14, 15

*King v. Whitmer*,
   No. 20-13134, 2020 WL 7238261 (E.D. Mich., Dec. 7, 2020) ...........10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................5, 7

*Oregon v. Mitchell*,
   400 U.S. 112 (1970) .............................................................................12

*Pearson v. Kemp*,
   No. 1:20-cv-4809-TCB, ECF No. 75 (N.D. Ga. Dec. 7, 2020) .................... 9, 12

*Public Citizen v. U.S. Dep't of Justice*,
   491 U.S. 440 (1989) ...............................................................................6

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ...............................................................................7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...........................................................................6

*Stewart v. Blackwell*,
   444 F.3d 843 (6th Cir. 2006), *vacated* (July 21, 2006), *superseded
   on other grounds*, 473 F.3d 692 (6th Cir. 2007) ....................................8

*United States v. Students Challenging Regul. Agency Procs.*,
   412 U.S. 669 (1973) ...........................................................................1, 6

*Weltner v. Raffensperger*,
   No. 1:20-cv-01407-ODE, 2020 WL 8116173 (N.D. Ga. May 18,
   2020)...................................................................................................7

iii

*Wexler v. Anderson*,
452 F.3d 1226 (11th Cir. 2006) ..............................................................15

*Wis. Voters Alliance v. Pence*,
No. 20-3791, 2021 WL 23298 (D.D.C. Jan. 4, 2021) ................................. 10, 11

*Wood v. Raffensperger* ("*Wood I*"),
No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20,
2020) ....................................................................................................... 9, 11

*Wood v. Raffensperger* ("*Wood II*"),
981 F.3d 1307 (11th Cir. 2020) .................................................................. 9, 11

*Wood v. Raffensperger* ("*Wood III*"),
No. 1:20-cv-5155-TCB, 2020 WL 7706833 (N.D. Ga. Dec. 28,
2020) .................................................................................................... 10, 11, 12

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
566 U.S. 189 (2012) ..............................................................................14

**Other Authorities**

O.C.G.A. § 21-2-300(a) ..............................................................................14

## I.     INTRODUCTION

The right to vote is itself personal and individual.  *Gill v. Whitford*, __U.S. __, 138 S. Ct. 1916, 1929 (2018).  "Voters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." *Id*. The Supreme Court repeatedly has made clear that a plaintiff has standing even when many others are also injured by the same violation—or "the most injurious and widespread Government actions could be questioned by nobody." *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 686-88 (1973).  The harm to each Curling Plaintiff from Defendants' requirement that all in-person voting use Georgia's Dominion BMD system is personal and individual.  That system deprives each Plaintiff individually of the right to cast a verifiable vote, to ensure that vote counts as intended, and to be treated equally with similarly-situated absentee voters. Since the Court's July 2020 ruling on standing (Dkt. 751), the record has expanded to provide further support for Curling Plaintiffs' standing, including expert analyses showing concrete, particularized, and actual harm to Curling Plaintiffs' right to vote. No recent court decisions in the Eleventh Circuit disturb well-settled standing jurisprudence or this Court's July 2020 Order.

## II.     BACKGROUND AND FACTUAL RECORD

Plaintiff Donna Curling is a voter in the State of Georgia and a resident of

Fulton County.  (Dkt. 627 ¶ 14.)  Plaintiffs Donna Price and Jeffrey Schoenberg are voters in the State of Georgia and residents of DeKalb County.  (*Id.* ¶¶ 16-17.) Curling Plaintiffs have voted in almost all previous elections for the last 28-32 years. (*Id.* ¶¶ 14, 16-17; Dkt. 387-5, -6, -7.)  Each Curling Plaintiff has suffered, and will suffer, personal injury to their individual right to vote.  (*See* Curling Decl. ¶¶ 3-8; Price Decl. ¶¶ 3-17; Schoenberg Decl. ¶¶ 3-12.)  Because Donna Curling was concerned that Georgia's in-person system could not securely record her votes for the June 2017 election, after multiple hurdles, burdens, and incorrect information given to her by election personnel, she personally turned in her absentee ballot and was assured her votes would be counted.  (Dkt. 387-5 at 2-4.)  She did not learn until filings in this case that her votes did not count and she had been disenfranchised. (*Id.* at 4; Dkt. 627 ¶ 15.)  She was very nearly disenfranchised again in the June 2020 election because of her choice to vote absentee.  (Curling Decl. ¶ 6.)  Donna Price is still not certain whether her absentee vote in the June 2020 election was counted or whether it contained the accurate slate of candidates.  (Price Decl. ¶¶ 12-13.)  In connection with the January 2021 runoff elections for U.S. Senate seats and Public Service Commission District 4, after requesting an absentee ballot he never received, Jeffrey Schoenberg was forced to vote in-person on a BMD with a ballot that he could not verify reflected his votes.  (Schoenberg Decl. ¶¶ 9-12.)  Each Curling

Plaintiff has explained that they cannot read a QR code, and so cannot verify when voting on a BMD that their individual votes are accurately recorded; further, no audit will be able to verify their votes were counted as they intended.  (Dkts. 619-3 at 2; 619-4 at 3; 619-5 at 3.)

This Court found that BMD votes are tabulated based on the ballot's unencrypted QR barcode, which cannot be reviewed or verified by individual voters. *Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2020 WL 5994029, at *35 (N.D. Ga. Oct. 11, 2020) (citing testimony of experts Liu, Appel, Halderman).  Following the September 2020 preliminary injunction hearing, the Court found that "Plaintiffs have shown demonstrable evidence that the manner in which Defendants' alleged mode of implementation of the BMD voting system, logic and accuracy testing procedures, and audit protocols deprives them or puts them at imminent risk of deprivation of their fundamental right to cast an effective vote (*i.e.*, a vote that is accurately counted)."  *Id.* at *33.  The Court further found that Plaintiffs' cybersecurity experts "have provided evidence credibly explaining how malware can mask itself when inserted in voting software systems or QR codes, erase the malware's tracks, alter data, or create system disruption . . . [that] often are not susceptible to full correction."  *Id.* at *12.  Since the September 2020 hearing, Dr. Halderman has continued his analysis and discovered additional vulnerabilities in

the BMDs that facilitate the introduction of malicious software, including malware that changes BMD QR codes and defeats Georgia's acceptance testing, logic and accuracy testing, and hash verification safeguards. (Halderman Decl. ¶¶ 6-8.)

Each Curling Plaintiff is thus forced to choose between casting a ballot they cannot read or verify as reflecting their individual, personal choices, or forgoing their right to full and unfettered participation in their right to vote by using Georgia's absentee ballot regime, which has, in fact, already disenfranchised at least Plaintiff Curling, threatened to disenfranchise Plaintiffs Schoenberg and Price, and carries additional burdens. *Curling*, 2020 WL 5994029, at *35. As this Court succinctly put it, "[a] choice between two evils is no choice at all; the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election regardless of which method they choose to cast their vote." *Id.* Without the intervention of this Court, each Curling Plaintiff will be compelled to choose between relinquishing their individual right to vote or voting in an unlawfully-burdened system that threatens to disenfranchise each of them altogether. (Dkt. 627 ¶¶ 15-17.)

## III. ARGUMENT

Standing has three elements: (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable

decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Curling Plaintiffs meet this standard because they have pled and shown on the current record actual injury and threat of imminent injury to their *individual and personal* right to vote, which injury is concrete, traceable to Defendants, and redressable.  Defendants' argument that Curling Plaintiffs lack particularized injury because Defendants' unconstitutional actions might *also* injure other voters' right to vote fails.  And the political question doctrine simply does not apply.

## A.   Curling Plaintiffs Have and Will Suffer a Concrete and Particularized Injury in Fact

"Foremost among these [standing] requirements is injury in fact–a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' *i.e.*, which 'affect[s] the plaintiff in a personal and individual way.'" *Gill*, 138 S. Ct. at 1929 (quoting *Lujan*, 504 U.S. at 560, 561 n.1).  Curling Plaintiffs suffer an actual and imminent particularized and concrete injury.

### 1.   Curling Plaintiffs' Injury is No Less Particularized or Concrete Because Other Voters May Be Harmed

As an initial matter, Defendants are wrong to argue that Plaintiffs' "alleged injury is not concrete and particularized because it is shared by all Georgia voters." (Dkt. 1061 at 28:9-11.)  "The fact that an injury may be suffered by a large number

of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo, Inc. v. Robins*, __U.S. __, 136 S. Ct. 1540, 1548 n.7 (2016). "To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *Students Challenging Regul. Agency Procs.*, 412 U.S. at 686-88. The Supreme Court has warned against the danger of concluding lack of particularized harm solely on the basis that a harm is widely shared. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23-24 (1998). Standing will be absent when an asserted, widely-shared harm is abstract and indefinite, such as harm to a "common concern for obedience to law." *Id.* But it is the abstract nature of such harm—not its wide applicability—that defeats standing. "[W]here a harm is concrete, though widely shared, the [Supreme] Court has found 'injury in fact.'" *Id.* (citing *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449-50 (1989) ("The fact that other citizens or groups of citizens might make the same complaint . . . does not lessen [their] asserted injury.")).

"This conclusion seems particularly obvious where . . . large numbers of voters suffer interference with voting rights conferred by law." *Id.* (concluding that alleged "injury at issue here, directly related to voting, the most basic of political rights, is sufficiently concrete and specific such that the fact that it is widely shared

does not deprive" plaintiffs of standing); *Baker v. Carr*, 369 U.S. 128 (1962) (holding voters had standing where they asserted plain, direct and adequate interest in maintaining the effectiveness of their votes, not merely a right possessed by every citizen to require government be administered according to law); *Public Citizen, Inc. v. Miller*, 992 F.2d 1548 (11th Cir. 1993) (same; rejecting defendants' argument that voter plaintiffs lack standing because they have no more than a generalized grievance shared with all Georgia voters); *Weltner v. Raffensperger*, No. 1:20-cv-01407-ODE, 2020 WL 8116173 (N.D. Ga. May 18, 2020) (holding plaintiffs' alleged injury, though shared by all Georgia voters, is sufficiently concrete and particularized to confer standing and citing authority that injury to the right to vote meets injury in fact requirement regardless of the size of the impact). As discussed below, the cases cited by Defendants concern general grievances seeking that government be administered according to law rather than remedying burdens on individual rights. *Infra*, § III.3.

## 2. Curling Plaintiffs' Individual Right to Vote Is and Will Be Injured In Fact

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1. The Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature.'" *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "Thus,

'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id*. (quoting *Baker*, 369 U.S. at 206). "A plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351–52 (11th Cir. 2009). A 'debasement or dilution of the weight of [Plaintiffs'] vote[s],' even if such conduct does not completely deny Plaintiffs the right to vote," is unconstitutional. *Bush v. Gore*, 531 U.S. 98, 105 (2000); *see also Davis v. Bandemer*, 478 U.S. 109, 124 (1986) ("everyone [has] the right to vote and to have his vote counted"). As the Court previously determined, "courts have found that plaintiffs have standing to bring Due Process and Equal Protection claims where they alleged that their votes would likely be improperly counted based on the use of certain voting technology." Dkt. 309 at 21-22 (citing *Stewart v. Blackwell*, 444 F.3d 843, 855 (6th Cir. 2006), *vacated* (July 21, 2006), *superseded on other grounds*, 473 F.3d 692 (6th Cir. 2007)); *Banfield v. Cortes*, 922 A.2d 36, 44 (Pa. Commw. Ct. 2007).

This Court has twice in this case recognized that the Constitution affords Plaintiffs an individual interest in transparent, fair, accurate, and verifiable election processes that guarantee their fundamental right to cast an accountable vote. *Curling*, 2020 WL 5994029, at *33-34. Curling Plaintiffs suffer immediate and

irreparable harm to this interest when required by Defendants to cast a ballot that they cannot review or verify as reflecting their actual choice and that is vulnerable to failure or breach.  *Id.*  The Court correctly held:  "This injury is not speculative; it is 'certainly impending,' since Plaintiffs intend to vote in person in each upcoming election in Georgia."  (Dkt. 751 at 38.)  The injury is thus individual, particularized, concrete, and inevitable.

### 3.  Defendants Misportray Recent Election Decisions

No cases have disturbed the long-standing precedent discussed above. Defendants misportray the case law in arguing that courts have recently "again and again dismissed similar election cases."  (Dkt. 1050.)  This is incorrect.

First, all but one case Defendants cite concern partisan *post-election* attempts to change the *outcome of a specific election*; none concerns burdens placed on individual plaintiffs' right to vote.  *Wood v. Raffensperger* ("*Wood I*"), No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) (post-election partisan suit alleging general grievance of failure to follow law with no allegations of individual harm); *Wood v. Raffensperger* ("*Wood II*"), 981 F.3d 1307 (11th Cir. 2020) (post-election request for injunction of certification of election with no specific harm alleged as to plaintiff); Clerk's Judgment, *Pearson v. Kemp*, No. 1:20-cv-4809-TCB, ECF No. 75 (N.D. Ga. Dec. 7, 2020) (post-election contest seeking

to decertify election results; subsequently voluntarily dismissed); *Wis. Voters Alliance v. Pence*, No. 20-3791, 2021 WL 23298 (D.D.C. Jan. 4, 2021) (post-election suit seeking to enjoin U.S. Congress from counting electoral votes though plaintiffs' votes were properly counted); *Bowyer v. Ducey*, No. 20-2321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) (action seeking injunctive relief setting aside results of general election with no concrete harm alleged); *King v. Whitmer*, No. 20-13134, 2020 WL 7238261 (E.D. Mich., Dec. 7, 2020) (post-election action to enjoin decertification of election results); *cf. Wood v. Raffensperger* ("*Wood III*"), No. 1:20-cv-5155-TCB, 2020 WL 7706833 (N.D. Ga. Dec. 28, 2020) (suit seeking to prevent run-off election with generalized grievances unconnected to plaintiff's individual vote).

Second, Defendants confuse widespread harm with generalized grievances. Nearly every burden on the right to vote is widespread, but where that widespread harm is also concrete and individual, there is injury in fact. *See Akins*, 524 U.S. at 25; *supra* § III.A.1. As discussed above, there is a difference between a generalized grievance "amount[ing] to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law" and a "personal and individual" harm sufficient for standing. *Carney v. Adams*, 141 S. Ct. 493, 495 (2020).

The cases cited by Defendants allege generalized failures to abide by the law

rather than specific burdens on individual voters.  Indeed, the district court made the distinction clear in *Wood III*: "claims premised on allegations that 'the law ... has not been followed ... [are] precisely the kind of undifferentiated, generalized grievance about the conduct of government ... [and] quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing.'" 2020 WL 7706833, at *3 (quoting *Wood I,* 2020 WL 6817513, at *14–15 and *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1332–33 (11th Cir. 2007)).  In *Wood II*, the plaintiff asserted a generalized interest in ensuring only lawful ballots are counted and that the government be administered according to the law, with no harm alleged to Wood as an individual.  981 F.3d at 1314; *see also Wood I*, 2020 WL 6817513, at *5-6 (generalized allegations that the law has not been followed in audit monitoring); *Wood III*, 2020 WL 7706833, at *3 (alleging election conducted in manner that does not follow the law, unconnected to individual vote).  Similarly, in *Wisconsin Voters*, no standing existed where the alleged interest was in having the election conducted according to the law and where plaintiffs' votes had in fact been counted.  The court found a "serious lack of good faith" and an attempt to "engage in gamesmanship or symbolic political gestures."  2021 WL 23298, at *3.  State Defendants' reliance on

such contrived suits is misplaced.[1]  Defendants' reading of the cases would disallow all voting rights cases and the government could impose any number of voter registration or voter verifications laws, require literacy tests,[2] even re-impose the poll tax,[3] and otherwise widely disenfranchise voters without recourse.  This plainly is not the law.

The factual record, including the attached declarations, shows Curling Plaintiffs have been subjected to the system they challenge and imminently face the ongoing threat to their right to cast an accurate vote.  Plaintiffs here allege exactly the "personal and individual" harm lacking in *Carney*.  Plaintiffs have shown they have been and will again be set with the choice to use the unconstitutional system to cast a vote they cannot verify or resort to alternate means of voting that at best requires them to suffer different burdens and at worst disenfranchises them entirely. *Supra*, § II.  This harm affects each Plaintiff individually.  *Baker*, 369 U.S. at 206 (standing found where plaintiffs assert interest in maintaining effectiveness of their

---

[1] The cases cited by Defendants further found a lack of concreteness and redressability, which are both present here.  *See Wood III*, 2020 WL 7706833, at *4-5 (finding no concreteness to "astonishingly speculative" claims of "systemic fraud" through Dominion voting machines alleged to be founded by foreign oligarchs to benefit Hugo Chavez); Transcript, *Pearson v. Kemp,* No. 1:20-cv-4809-TCB, ECF No. 79 (N.D. Ga. Dec. 8, 2020) (request to decertify election results not grantable relief).

[2] *But see Oregon v. Mitchell*, 400 U.S. 112 (1970).

[3] *But see Harper v. Va. Bd. of Elections*, 383 U.S. 663 (1966).

votes free of impairment by state and disadvantage to themselves as individuals).

*Jacobson* supports standing here.  The court found *after a full merits trial* that individual voters did not *prove* an injury in fact where "the record contain[ed] no evidence about any injuries [] two individuals suffered in the past or may suffer in the future [and] we do not even know whether they plan to vote in future Florida elections," and a third voter "failed to identify any difficulty in voting for her preferred candidate or otherwise participating in the political process." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1246 (11th Cir. 2020).  Focused on the alleged impact to a specific political party, that "lawsuit present[ed] a dispute 'about group political interest, not individual legal rights.'"  *Id.* at 1246-48.  Curling Plaintiffs, however, have submitted sworn testimony detailing the injury in fact *each* has suffered to their *individual* right to vote and will suffer imminently. (Price Decl. ¶¶ 3-17; Curling Decl. ¶¶ 3-8; Schoenberg Decl. ¶¶ 3-12; Dkts. 260-4-6; 387-5-7; 619-3-5; 785-3-5.)  And if this litigation proceeds in the normal course, additional factual development—already underway—will further show the nature of these injuries.

## B.   Curling Plaintiffs' Injury is Traceable to Defendants and Redressable

As the Court correctly found, "Plaintiffs' injury stems from Defendants' implementation of an alleged unconstitutional voting system that is subject to [] demonstrated vulnerabilities . . . and that is not a voter-verifiable and auditable paper

ballot system."   (Dkt. 751 at 42.)  Defendants have not shown any valid challenge

to traceability or redressability since this Court's prior ruling, and no change in law

exists to compel a different result.  The requisite authority lies with Defendants.  *See*

O.C.G.A. § 21-2-300(a).  The injury to Plaintiffs thus is traceable to Defendants and

redressable by the relief requested in this action.  (Dkts. 309 at 25-26; 751 at 44-45.)

### C.    The Political Question Doctrine Does Not Bar This Case

The mere fact that an action seeks protection of a political right does not mean

it presents a political question.  *Baker*, 369 U.S. at 209.  Rather, the political question

doctrine bars only a limited slice of cases.  The "hallmarks" of a nonjusticiable case

are a lack of "judicially discernable and manageable standards" and "basic questions

that are political, not legal."  *Jacobson*, 974 F.3d at 1242; *see Zivotofsky ex rel.*

*Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012); *Carmichael v. Kellogg, Brown &*

*Root Servs., Inc.*, 572 F.3d 1271, 1280 (11th Cir. 2009).

This is not such a case.  Plaintiffs identify burdens on their constitutional right

to vote—specifically, their right to have their individual votes properly counted.

*Supra* §§ II, III.A.2.  Precedent provides the framework for resolving the case:  The

court must ask the familiar question whether the asserted state interest justifies the

burden.  *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S.

428 (1992).   That is a long-recognized judicial standard for answering a

fundamentally legal question.[4]

The Eleventh Circuit recently explained that this is exactly the kind of election case that falls on the justiciable side of the line.   In *Jacobson*, the court held that whether a given order of candidates on a ballot is "politically 'fair'" presents a nonjusticiable question.   974 F.3d at 1261.   No judicial standards existed to answer that question—the court held that the *Burdick-Anderson* framework was inapplicable because the plaintiffs did "not allege *any* burden on individual voting rights."   *Id.* (emphasis in original).   In contrast, the court explained, if a "statute burdened voting or associational rights even slightly," *Burdick* and *Anderson* would supply justiciable standards.   *Id.* at 1262.   The court identified an array of justiciable voting-rights cases.   *Id.* at 1261-62.   Among them:   challenges to "the risk that some votes will go uncounted or be improperly counted."   *Id.* at 1262; *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006)).   That exactly describes this case.

## IV.   CONCLUSION

The record amply shows that Curling Plaintiffs have standing to bring their claims to protect their right to vote and to remedy the concrete and particularized harm each has personally suffered, and will suffer, as individual voters.

---

[4] Indeed, the Court has repeatedly applied this standard *in this case*.   (Dkts. 309 at 38-41; 375 at 36-37; 579 at 133-150; 751 at 31; 918 at 48-62; 964 at 79-89.)

Respectfully submitted this 12th day of February, 2021.

 */s/ David D. Cross*                          */s/ Halsey G. Knapp, Jr.*

David D. Cross (*pro hac vice*)         Halsey G. Knapp, Jr.
Veronica Ascarrunz (*pro hac vice*)     GA Bar No. 425320
Eileen Brogan (*pro hac vice*)          Adam M. Sparks
Lyle P. Hedgecock (*pro hac vice*)      GA Bar No. 341578
Mary G. Kaiser (*pro hac vice*)         KREVOLIN & HORST, LLC
Robert W. Manoso (*pro hac vice*)       1201 West Peachtree Street, NW
MORRISON & FOERSTER LLP                 Suite 3250
2100 L Street, NW, Suite 900            Atlanta, GA 30309
Washington, DC 20037                    (404) 888-9700
(202) 887-1500

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>    **Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>    **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

　　　　　　　　　　　　　 */s/ David D. Cross*　　
　　　　　　　　　　　　　David D. Cross

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
     **Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
     **Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2021, a copy of the foregoing **PLAINTIFFS' JOINT STATEMENT REGARDING STANDING** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

   */s/ David D. Cross*
   David D. Cross

18