# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,** **Plaintiffs,** **v.** **BRIAN KEMP, ET AL.,** **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## COALITION PLAINTIFFS' BRIEF ON STANDING

## **TABLE OF CONTENTS**

Table of Authorities…………..………………………………….………….....ii

I.    Introduction…………..………………………….………………………..1

II.    The "Concrete And Particularized" Component Of The Injury-In-Fact Element Of Standing…………………..……………………………...2

    A.    The "Concreteness" And "Particularization" Requirements………...3

        1.    Concreteness…………………………………………………4

        2.    Particularization……………………………………….......8

    B.    The Diversion Of Resources Is A "Concrete And Particularized" Injury-In-Fact To An Entity………………………………………11

    C.    Recent Case Law…………………………………………….....12

# TABLE OF AUTHORITIES

*American Civil Liberties Union of Florida, Inc. v. Miami-Dade Sch. Bd.*
557 F.3d 1177 (11th Cir. 2009)……………………………………………12

*Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 F.
App'x 235 (11th Cir. 2020)…………………………………………………...11

*Arcia v. Sec'y of Fla.*, 772 F.3d 1335 (11th Cir. 2014)…………………...…4, 11

*Baker v. Carr,* 369 U.S. 186 (1962)…………………………………………………10

*Bognet v. Sec'y of Pa.*, 980 F.3d 336 (3d Cir. 2020)……………………………...14

*Carney v. Adams,* 141 S. Ct. 493 (2020)…………………………………………12

*Charles H. Wesley Educ. Found., Inc. v. Cox,* 408 F.3d 1349
(11th Cir. 2005)………………………………………………………...…4

*Common Cause/Ga. v. Billups*, 554 F.3d 1340 (11th Cir. 2009)………………4, 10

*Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251
(N.D. Ga. 2019)………………………………………………………….12

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008)…..…3,11

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)………………………………...…8, 9

*Glassroth v. Moore,* 335 F.3d 1282 (11th Cir. 2003) …………………………12

*Jacobson v. Fla. Sec. of State*, 974 F.3d 1236 (11th Cir. 2020)…..……………11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)…………………………....3

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
508 U.S. 656 (1993)……………………………………………..10

*Pearson v. Kemp,* No. 20-14480, 2020 WL 7093408 (11th Cir. Dec. 4, 2020)….15

*Reynolds v. Sims*, 377 U.S. 533 (1964)…………………………………………….6

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004)….4

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)………………………*passim*

*Twelfth Cong. Dist. Republican Cmte v. Raffensperger*, Case No. 1:20-CV-180, 2020 U.S. Dist. LEXIS 237625 (S.D. Ga. Dec. 17, 2020)…………………15

*Wood v. Raffensperger,* No. 1:20-CV-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) *(Wood I)*……………………………………………………...13

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) *(Wood II)*…………...….14

## I.      Introduction

The purpose of this brief is to address the Court's questions about Plaintiffs'

injury-in-fact, for purposes of standing, that were raised at the February 2, 2021,

hearing, and to place the record evidence in a legal context that demonstrates

"concrete and particularized" injuries-in-fact to individual Plaintiffs.  At the

hearing, the Court asked Plaintiffs' counsel: "[W]hat makes your clients different

and specifically injured as opposed to the general public and . . . aren't they just

basically prototypical voters[?]" (Transc.Hr'g (Feb. 2, 2021) at page 15 lines 20–

23, Doc. 1061.[1])  The Court then asked whether the Plaintiffs' injuries were "a

legal injury for purposes of litigation, or . . . something that ought to be presented

to the legislature?"  (Doc. 1061 at page 15 line 25–page 16 line 4.)  After hearing

argument, the Court noted that "this whole issue of is it just a generalized concern,

is there a particularized injury" and "can it be a basis of standing" had not

previously been an emphasis of the parties' briefs about standing.  (Id. at page 35

lines 16–22.) Accordingly, the Court concluded the hearing by requesting "briefs

from the parties that specifically focus on that question."  (Id. at page 36 lines 3–

6.)  In addition, the Court expressed an expectation that, if Plaintiffs intended to

reply upon "one plaintiff who has standing or perhaps one for each side," then the

---

[1] Pinpoint citations to docketed items utilize PACER's blue pagination appended at
the top of the cited document, not the document's original pagination.

Court "would have to know something about that individual or else [Plaintiffs] would have to point out in the record what distinguishes their experiences." (Doc. 1061 at page 19 lines 2–6.)

This brief responds to the Court's questions with respect to the Coalition Plaintiffs. Section II.A. explains how the evidence satisfies the "concrete and particularized" component of the injury-in-fact element, which gives the individual Coalition Plaintiffs and other members of the Coalition for Good Governance ("CGG") standing (and supports the entity's associational standing). Section II.B. discusses the organizational standing of CGG under the "diversion of resources" doctrine.  Section II.C. examines recent case law. Section III concludes.

## II.    The "Concrete And Particularized" Component Of Injury-In-Fact

Mindful of the Court's admonition not to "rehash" past briefings, (Doc. 1051 at page 36 line 25), Coalition Plaintiffs confine this brief to the "concrete and particularized" component of the injury-in-fact element of standing.[2]  Each of the individual Coalition Plaintiffs is imminently threatened with an injury-in-fact that each will experience in a personal way.  Non-plaintiff individual members of CGG

---

[2] The recently filed Plaintiffs' Joint Statement Regarding Standing (Doc 1051) discusses the three elements required to establish standing (injury-in-fact, causation, redressability), when standing must be determined (at the time the complaint is filed), how many plaintiffs must demonstrate standing (only one per claim and form of relief sought). (Doc. 1051, at 10–14.)  Plaintiffs incorporate that discussion here.

are likewise threatened with "concrete and particularized" injuries and thus would have standing in their own right—which, in conjunction with the other elements of organizational standing, endows the entity with associational standing.  CGG is itself directly suffering ongoing injury-in-fact because its opposition to the Defendants' unconstitutional conduct is—and will continue—diverting resources away from the entity's other projects.  Multiple forms of standing for the Coalition Plaintiffs exist, each supported by "concrete and particularized" injuries-in-fact that are being (or will be) suffered by both individuals and the organization.

### A.    The "Concreteness" And "Particularization" Requirements

"An 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Gardner v. Mutz*, 962 F.3d 1329, 1338 (11th Cir. 2020) (citing *Lujan*).

Only the concreteness and particularization requirements are at issue now.[3]

---

[3] This Court has already held that the second component of injury-in-fact exists with respect to claims against the new BMD voting system. (See Doc. 751, at 38 ("This injury is not speculative; it is 'certainly impending,' since Plaintiffs intend to vote in person in each upcoming election in Georgia.").)  Even if the Court had not already so held, however, the actual/imminent requirement is easily satisfied by Coalition Plaintiffs' prospective injuries due to Georgia's insecure voting system, including its deficient scanners. *See Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, at 1163 (11th Cir. 2008) ("[P]robabilistic harm is 'enough injury in fact to confer . . . standing in the undemanding Article III sense.'"); *id.* at 1164 ("[S]omeone is certain to get injured in the end. By their nature, the kinds of mechanical, typographical mistakes that plaintiffs claim will illegally

"We have made it clear time and time again that an injury in fact must be both

concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

### 1.    Concreteness

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist."

*Spokeo*, 136 S. Ct. at 1548.

> When we have used the adjective 'concrete,' we have
> meant to convey the usual meaning of the term 'real,' and
> not 'abstract.' .... 'Concrete' is not, however, necessarily
> synonymous with 'tangible.' Although tangible injuries
> are perhaps easier to recognize, we have confirmed in
> many of our previous cases that intangible injuries can
> nevertheless be concrete.

*Id.* at 1548–49.  "[P]urely psychic injuries arising from disagreement with

government action—for instance, 'conscientious objection' and 'fear'—don't

qualify" as concrete.  *Gardner*, 962 F.3d at 1341.  But concreteness is satisfied by

such intangible injuries-in-fact as being wrongly identified as a non-citizen, *Arcia

v. Sec'y of Fla.*, 772 F.3d 1335, 1341 (11th Cir. 2014), suffering the inconvenience

of having to show identification, *Common Cause/Ga. v. Billups*, 554 F.3d 1340,

1351 (11th Cir. 2009), and being unable to vote in one's home precinct, *Charles H.*

---

disenfranchise voters . . . cannot be identified in advance.") (finding standing);
*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir.
2004) ("[A] voter cannot know in advance that his or her name will be dropped
from the rolls, or listed in an incorrect precinct, or listed correctly but subject to a
human error by an election worker who mistakenly believes the voter is at the
wrong polling place. It is inevitable, however, that there will be such mistakes. The
issues Appellees raise are not speculative or remote; they are real and imminent.").

*Wesley Educ. Found., Inc. v. Cox,* 408 F.3d 1349, 1352 (11th Cir. 2005).  As will

be shown below, Coalition Plaintiffs' injuries are all concrete.

Coalition Plaintiffs have attached hereto a Summary of Evidence already in

the record (Ex. A, "Summary").  The Summary includes references to additional

evidence filed with this brief: the Declarations of Marilyn Marks (Ex. B), Jeanne

Dufort (Ex. C), Rhonda Martin (Ex. D), Aileen Nakamura (Ex. E), Elizabeth

Throop (Ex. F), and B. Joy Wasson (Ex. G).  The Summary includes instructive

evidence of injuries, but does not include all such evidence in the record.

The record and attached evidence shows that all of the injuries that Coalition

Plaintiffs have shown they will suffer are concrete, not abstract.   For example,

Coalition Plaintiffs who must vote on BMDs are unable to verify that the ballot

that they cast is correct because their official votes are encoded in a QR code,

which human beings cannot read.  (Summary, Part B).  This inability to verify the

content of one's actual vote is a concrete deprivation of information that each voter

Plaintiff is obviously entitled to have. After all, the State Defendants themselves

point to voters' supposed ability to verify their own ballots before casting them as

a key backstop that safeguards against the malicious manipulation of computer

voting machines. The evidence that Coalition Plaintiffs will actually be deprived of

information that they must have to verify their ballots is not an abstract fear or

"psychic" injury, *Gardner,* 962 F.3d at 13421, but a real, "*de facto"* harm—and

5

thus it is plainly concrete.  *Spokeo,* 136 S. Ct. at 1548.

Another concrete injury  will be suffered by those Coalition Plaintiffs who must mark their votes on large, upright, widely visible BMD touchscreens.  If ballot secrecy (which the Georgia Constitution expressly guarantees) is not protected by the new BMD system to the same degree that it was protected by previous voting systems, then Coalition Plantiffs who are individual in-person voters will be denied their "right to vote *freely*," which is "the essence of a democratic society." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (emphasis added).  And the manner in which they exercise the franchise in-person will be devalued relative to absentee voters, who will still continue to enjoy the right to ballot secrecy. *Contra Bush v. Gore*, 531 U.S. 98, 104–05 (2000).

These sorts of harms, all of which are established in the record and demonstrated anew in the attached additional evidence, are plainly concrete injuries for purposes of standing.  As Coalition Members Jeanne Dufort explains, in a small community like Madison, Georgia, she cannot vote freely if her vote is substantially likely to be known to others in the community.  (Ex. C, Dufort Decl., ¶ 13, 14).  Another Coalition Member, Elizabeth Throop, describes the inconvenience she suffered (and is threatened with suffering again) when the privacy-busting arrangement of crowded BMD screens in the Memorial Drive polling placeforced her to leave and vote instead at the Flat Shoals Library, where

there were fewer voters and a more privacy-friendly machine arrangement.  (Ex. F,

¶ 9, 10).  Suffering such inconvenience as the price of voting is a concrete injury-

in-fact. *See Common Cause/Ga.*, 554 F.3d at 1351 (having to make a special trip to

show identification to vote was injury for standing purposes)

The burdens of voting on BMDs in turn will cause many Coalition Plaintiffs

and Members to vote absentee by mail, which will expose them to different and

additional concrete injuries.[4]  Significantly, in Georgia it is against the law to *vote*

an absentee ballot on Election Day, although voters may *deliver* their (previously)

voted ballot on Election DayAs a result, under Georgia law, absentee voters are

deprived of the ability to obtain and vote based upon new information that emerges

on Election Day—a deprivation of information that is an injury in itself. *Cf. FEC v.*

*Akins*, 524 U.S. 11, 21 (1998) (finding injury-in-fact based on "inability to

obtain information").

As these examples and the remainder of the evidence demonstrate, Coalition

Plaintiffs have shown they will suffer harms that are concrete.  Such harms, when

they are also particularized to the individual Plaintiffs as they are here, constitute

---

[4] *E.g.,* Dufort Decl., Ex. C ¶ 14 ("I am unwilling to take the risk of voting on a visible BMD where I may need to skip races or not vote my conscience if others in my polling place are monitoring my vote.  My need for ballot secrecy coupled with the inability to know what vote I'm casting if I cast a QR code vote, and the unauditable nature of the BMD system causes me to accept the inconveniences and costs of voting a mail ballot.")

injuries-in-fact that are sufficient to confer standing.

### 2.   Particularization

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548.  "Put slightly differently, the injury cannot be 'undifferentiated,' but rather must be 'distinct' to the plaintiff." *Gardner*, 962 F.3d at 1342 (citing *Spokeo*). The purpose of the particularization requirement is to ensure that a federal plaintiff "has 'a personal stake in the outcome,' . . . distinct from a 'generally available grievance about government,'" *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (citation omitted)—a safeguard that prevents "concerned bystanders" from using the courts merely "as a vehicle for the vindication of value interests."  *Gardner*, 962 F.3d at 1342 (citing *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013)).

Particularization is not defeated by the mere fact that an injury may be suffered by many people on a large scale.  *Spokeo*, 136 S. Ct. at 1548 n.7 ("The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm.")  All that matters is whether the individual plaintiff has been injured personally.

Thus, in a fundamental right-to-vote claim, such as Coalition Plaintiffs bring

in this case, particularization is satisfied for purposes of standing whenever individual voters suffer a personal "disadvantage to themselves" as individuals as a result of challenged government conduct. *See Gill*, 138 S. Ct. at 1929 ("[A] person's right to vote is " 'individual and personal in nature.' . . . Thus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage.").

For the Coalition Plaintiffs' fundamental right-to-vote claim, each of the concrete injuries demonstrated above is "particularized" because the impact of each concrete injury upon the affected individual Coalition Plaintiff (or member of Coalition) is personal and distinct.  The harms caused to an individual voter by the inability to read the QR code containing his or her official vote choices, or to vote his or her conscience freely in the absence of prying eyes, or to receive the informational benefit of last-minute news about candidates and issues right up to Election Day are all concrete harms that are self-evidently going to be experienced by—and thus to impact—each affected Coalition Plaintiff in an individualized way. Coalition Plaintiffs are not asserting a "generally available grievance about government," focusing on a particular mathematical vote tally, or seeking to vindicate a value interest.   Coalition Plaintiffs are not merely complaining about how the State Defendants are conducting elections generally, but are instead each seeking to change how elections are conducted in order to avoid actual harm to

9

themselves personally.  Coalition Plaintiffs each have an injury-in-fact that rightly gives them standing because each of them has a distinct "personal stake in the outcome" of this case,  *Baker v. Carr,* 369 U.S. 186, 204 (1962), which they have amply demonstrated with their alleged, and proven, "'facts showing disadvantage to themselves as individuals.'"  *Gill,* 138 S. Ct. at 745.  Likewise, in an equal-protection claim, such as Coalition Plaintiffs bring in this case, unequal treatment is itself sufficient injury to show standing. *See Common Cause/Ga.*, 554 F.3d at 1351 ("For purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier.") (quoting *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993)).

For their equal protection claim, Coalition Plaintiffs have alleged and proven they will each be subjected to unequal treatment.  Those individual Coalition Plaintiffs voting in person on BMDs, which produce unreadable QR codes that cannot be verified by a human, will be denied the ability to know that the votes they are casting actually contain their own electoral choices—unlike other, similarly situated voters who can complete their ballots by hand when they vote by mail.  Those individual Coalition Plaintiffs who vote by mail, on the other hand, will be required to incur costs of mailing and other inconveniences that in-person voters are spared, not to mention suffer a greater risk that their votes will not be as

10

effective as the votes of in-person voters, or may not even count at all, due to the proven deficiencies of Defendants' central-count scanners, which are less effective in detecting votes on hand marked paper ballots than the precinct scanners are at detecting votes on BMD ballot cards.  These deprivations of equal treatment are essentially per se injuries-in-fact to each of the individual Coalition Plaintiffs for standing purposes, and they have all been proven in the record.

### B.    The Diversion Of Resources Is An Injury-In-Fact To An Entity

 CGG claims organizational standing based on its diversion of resources to combat the Defendants' illegal conduct.[5]  "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia*, 772 F.3d at 1341.  *see also Common Cause/Ga.*, 554 F.3d at 1350 (same);  *Browning*, 522 F.3d at 1165–66 (same).

In *Jacobson v. Fla Sec'y of State*, the Eleventh Circuit observed that, "resource diversion is a concrete injury."  974 F.3d 1236, 1250 (11th Cir. 2020).  Given that the diversion of resources is also plainly a particularized injury for any entity whose resources are being diverted, the evidence detailed below shows that

---

[5] An entity need not show organizational standing if it has shown associational standing.  See *Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 F. App'x 235 n.6 (11th Cir. 2020).

CGG has demonstrated a concrete and particularized injury-in-fact that gives it direct organizational standing. *See,e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1267 (N.D. Ga. 2019) ("The diversion of resources from general voting initiatives or other missions of the organization to programs designed to address the impact of the specific conduct of the Defendants satisfies the injury-in-fact prong.").

As Ms. Marks explains in her declaration, Ex. B at 3 to 11,  CGG has been forced to abandon or curtail numerous other initiatives because of its enormous investment of time and resources to counteract the actions of the Defendants in this case. *See also* Summary, Part G.

## C.    Recent Case Law

A number of recent election law cases has been resolved on standing grounds.  Few of these have addressed concreteness and particularization.  Those that have do not cast doubt on Coalition Plaintiffs' injuries-in-fact.[6]  *See, e.g.*:

U.S. Supreme Court

- *Carney v. Adams*, 141 S. Ct. 493 (2020).  The Supreme Court held in this "highly fact-specific case" that a plaintiff's stated intent at the outset of a

---

[6] If CGG has organizational standing, then the individual plaintiffs are relieved of the need to demonstrate their own standing. *See ACLU of Fla., Inc. v. Miami-Dade Sch. Bd*. 557 F.3d 1177, 1194 (11th Cir. 2009); *Glassroth v. Moore,* 335 F.3d 1282, 1293 (11th Cir.2003)).

lawsuit to apply for a judgeship "without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence" were insufficient to differentiate him from the "general population of individuals affected in the abstract by the legal provision he attacks." *Id.* at 501–02. Accordingly, the Court held the plaintiff did not have a concrete injury-in-fact. *Carney* is inapposite, given the concrete and particularized injuries here.

<u>U.S. Courts of Appeals</u>

- *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020). This appellate case affirmed what the State Defendants call "***Wood I.***" On appeal, the Eleventh Circuit held that the voter plaintiff asserted "only a generalized grievance" where he claimed (1) injury due to vote dilution, but without providing any point of comparison to more favored voters; and (2) injury due to the effect of uniform rules that "harmed the electorate collectively"). *Id.* at 1314–16. On the second point, which is the more relevant here, the Eleventh Circuit explained that a harm "shared identically by the four million or so Georgians who voted in person this November" "d[id] not affect Wood as an individual" specifically because Wood failed to show how "the existence of separate rules for in[-]person and absentee voters" affected him in a personal way, as the plaintiffs in *Common*

*Cause/Ga*. had done. *Id.* at 1315.  Unlike the plaintiff in *Wood*, but like those in

*Common Cause/Ga*., Coalition Plaintiffs *have* shown that personal burdens caused

by the State's rules will be imposed upon the individual Plaintiffs and individual

members of Coalition—burdens that will "affect[] each voter in a personal way."

*Id.*

- *Bognet v. Sec'y of Pa.*, 980 F.*3d* 336 (3d Cir. 2020). *Bognet* held that

the counting of votes received after an extended deadline (1) did not cause a

concrete injury because it did not prevent plaintiffs' votes from being cast or

counted, *id.* at 356; and (2) did not cause a particularized injury because "no

Pennsylvania voter's vote will count for less than that of any other voter as a

result," *id.* at 356–60.  *Bognet* is not precedent for this Court, and it is inapposite in

any event. The individual Coalition Plaintiffs have shown individual burdens,

which they will suffer personally, that do include a substantial risk that their votes

will not be counted, or counted accurately, and their injuries are not attributable to

the "mathematical impact on the final tally" of any particular election. *Id.* at 356.

U.S. District Courts in Georgia

- *Wood v. Raffensperger*, No. 1:20-CV-5155-TCB, 2020 U.S. Dist.

LEXIS 244731, 2020 WL 7706833 (N.D. Ga. Dec. 28, 2020).  The State

Defendants call this district court case "*Wood II*." The district court held that the

voter plaintiff lacked standing on his equal-protection claim because suffering vote

dilution in the abstract, without any point of comparison to more favored voters, does not amount to a sufficiently particularized injury to give standing. The district court also found a lack of standing under two other causes of action that do not correspond to claims at issue in this case.  The *Wood II* ruling is inapposite to this case because Coalition Plaintiffs' equal-protection claim is based on personal burdens that are particularized, not on vote dilution.

State Defendants may refer to other district court cases in which standing-based dismissals were recently entered, such as *Twelfth Cong. Dist. Republican Cmte v. Raffensperger*, Case No. 1:20-CV-180, 2020 U.S. Dist. LEXIS 237625 (S.D. Ga. Dec. 17, 2020), or *Pearson v. Kemp*, No. No. 1:20-cv-4809-TCB, 2020 U.S. Dist. LEXIS 226348 (N.D. Ga. Nov. 29, 2020).  These cases are not precedent for this Court, and the dismissals in those cases offer little guidance since they occurred in open court and do not appear to be explained by written opinions.

In sum, none of the cases that have been recently decided in connection with the 2020 election appear to have changed any analysis required to decide whether an injury-in-fact is concrete and particularized.  Recent decisions do not offer any reason for this Court to question the sufficiency of the concreteness and particularization of the injuries-in-fact established by Coalition Plaintiffs.

## III.   CONCLUSION

Coalition Plaintiffs have sufficient injuries-in-fact for standing.

Respectfully submitted this 12th day of February, 2021.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 386-6856 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRIAN KEMP, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF COMPLIANCE AND SERVICE

This Certificate has been prepared in accordance with the requirements of

LR 5.1 and served on all counsel via the PACER-ECF system.

This 12th day of February, 2021.

*/s/ Bruce P. Brown*
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE, Suite 6
Atlanta, Georgia 30306
(404) 386-6856
*Counsel for Plaintiff Coalition for Good*
*Governance*

17