# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DONNA CURLING, *et al.*

     *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

     *Defendants*.

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED JOINT MOTION FOR SANCTIONS

Defendants Brad Raffensperger, in his official capacity as Secretary of State, and State Election Board Members Rebecca N. Sullivan, David J. Worley, Anh Le, and Matthew Mashburn (collectively "State Defendants" or the "State") submit this response to Plaintiffs' Joint Motion for Sanctions (the "Renewed Motion"). (Doc. 1083.) With this response, State Defendants show the Court that Plaintiffs' Renewed Motion is procedurally improper, substantively meritless, and based on misrepresentations by Plaintiffs to the Court.  For any of these reasons, it should be denied with prejudice.

## INTRODUCTION

This Court ruled on the substance of Plaintiffs' Renewed Motion in August 2020, when it denied Plaintiffs' first joint motion for sanctions (the

"First Motion"). (Doc. 771.)  At that time, the Court said it would decide the issue only "at the conclusion of this case." (*Id.*)  Plaintiffs know this.  They chose to ignore it, and their timing is telling.[1]  This Court is currently deciding whether Plaintiffs have standing to seek relief in federal court. (Docs. 1066-67, 1071, 1073-75.)  Meanwhile, a motions panel of the Eleventh Circuit recently stated that Plaintiffs' theories cannot be reconciled with binding precedent.[2] (Doc. 1082.)  Obviously, if this Court or the Eleventh Circuit concludes that Plaintiffs lack standing, this litigation ends and Plaintiffs' flawed joint motion for sanctions can then be considered.  In spite of this reality, Plaintiffs submitted this untimely Renewed Motion in a transparent attempt to wrongly malign the State and its counsel in the wake of decisions adverse to the Plaintiffs.

As this Court is well aware, since the 2018 election cycle, the State has been engaged in countless lawsuits involving elections and election laws.

---

[1] Plaintiffs have prioritized extracting a monetary award from the State, whether through these Motions or others, despite the Court's inclination to review such requests upon final adjudication. *See* ((Doc. 733 (denying without prejudice motions for interim fee award)); (Docs. 967 and 998 (renewing motions for interim fee award)); *see also* (Doc. 1061, Feb. 2, 2021 Status Conf., at Tr. 41:15-23.)

[2] On April 19, 2021, the State Defendants submitted the Appellant's Brief.

None of those cases involve the level of rancor and false accusation as this one.  The common denominator here is not the State or its counsel.  The Court need not weigh into Plaintiffs' invective, however, because the Renewed Motion is procedurally improper.  It treads no new ground and is based mainly on Plaintiffs' misleading recount of a 2019 discovery dispute involving the GEMS Databases.  To the extent there is anything new in the pleading, Plaintiffs have ignored the Court's discovery-dispute mechanism. On the substance, Plaintiffs' Renewed Motion provides little authority, and what is cited is easily distinguishable.  For any of these reasons, this Court should reject Plaintiffs' attempt to make the taxpayers pay for their efforts once and for all.[3]

---

[3] Notwithstanding the legal impropriety of Plaintiffs' Motions and requests for interim fee awards, the fees and expenses sought therein are themselves unreasonable. For example, the Curling Plaintiffs seek reimbursement from taxpayers for their lead counsel at an hourly rate of $1,065 per hour, (Doc. 623-1), and for stays at the Atlanta Ritz-Carlton during hearings, *see, e.g.*, (Doc. 631 at pp. 174; 181; 183; 194 – 195.) For their part, Coalition Plaintiffs seek reimbursement for Ms. Marks' (and other purported experts') time at an hourly rate nearly equal to State Defendants' counsel. *See generally* (Doc. 623-4); *see also* (Doc. 647 at 27-29 (discussing CGG rates).)

## FACTS

This Court knows the tortured history of this lawsuit, which began as a challenge to a 2017 special congressional election.[4] (Doc. 1-2 at 66 (¶ 161), 69 (¶ 169) and 81.)   Since that time, the parties have entered nearly 1,100 docket entries without summary judgment, formal discovery, or depositions of the Plaintiffs (or their numerous experts and declarants), or any meaningful production of documents by Plaintiffs.[5]  Plaintiffs have, however, been heard on nine total preliminary injunction motions, and moved for at least two other such injunctions.  During that time, Plaintiffs' counsel have steadfastly opposed any examination of Plaintiffs themselves, even as the Curling Plaintiffs "pro bono" legal counsel publicized their apparent "strategy to … [i]nduce the defendants to put key election officials on the stand."  MOFO News Item, "National Law Journal Names MoFo to Its 2019 Pro Bono Hot List," (May 1, 2019), available at https://www.mofo.com/resources/news/

---

[4] The challenger in the 2017 special election, Jon Ossof, is now a United States Senator, having won a runoff election using the current BMD machines.

[5] At least the Curling Plaintiffs claim that summary judgment is unnecessary and unusual in bench trials like this one. They are wrong. Copies of Judge Jones's orders granting, in part, summary judgment in the *Fair Fight Action* litigation are attached as "Exhibit 1" and "Exhibit 2."

190501-pro-bono-hot-list.html.[6]  The continued litigation-by-emergency has created situations involving expedited (and largely one-way) discovery on complex issues involving national security, election databases, and other forms of election systems infrastructure that have required experts on both sides to decipher.

Despite this, Plaintiffs jointly moved for sanctions over the State's treatment of the GEMS Databases. (Doc. 623.)  The State timely responded (Doc. 647), and the Plaintiffs filed a reply brief. (Doc. 656.)  The August 2020 Order denied Plaintiffs' First Motion for Sanctions without prejudice. (Doc. 771.)  Importantly, the Court established a clear timeline as to when it would revisit Plaintiffs' First Motion: "**at the conclusion of this case**." *Id.* (emphasis added).  Plaintiffs did not move for a reconsideration of the Court's order, nor did they appeal it.

Since then, Plaintiffs' claims have suffered mightily.  For example, when Sidney Powell (a/k/a "The Kraken") challenged the 2020 elections, she raised claims that are virtually indistinguishable from Plaintiffs'.  *See*

---

[6] A copy of Curling Plaintiffs' counsels' web-based publication is attached as "Exhibit 3."

*Pearson v. Kemp*, Civil Action No. 1:20-CV-4890-TCB (Dec. 7, 2020).[7]  Indeed, a significant portion of the *Pearson* plaintiffs' argument consisted of reading orders from this lawsuit as "evidence" that there is a ghost in the voting machine. *Id.* at 26-27.  Judge Batten quickly dispensed of the *Pearson* plaintiffs' claims on standing, *id.* at 42, and the *Pearson* plaintiffs ultimately withdrew their appeal. *Id.* at 42.  Of course, Ms. Powell has since largely recanted her theories.[8]

The Eleventh Circuit has also weighed in on Plaintiffs' claims.  After this Court granted a preliminary injunction governing the use of pollbooks and other relief, the appellate court stayed the decision. *Curling v. Sec'y of State for Georgia*, 20-13730-RR, 2020 WL 6301847, at *1 (11th Cir. Oct. 24, 2020).  When the Coalition Plaintiffs recently sought to lift that stay, the Eleventh Circuit denied their motion. *Curling v. Sec'y of State for the State of Georgia*, No. 20-13730-RR, Slip Op. at 1 (Apr. 1, 2021).  At least two judges

---

[7] A copy of the *Pearson* hearing transcript is attached as "Exhibit 4."

[8] Charlotte Klein, *Sidney Powell's Defamation Defense: Nobody In Their Right Mind Would Believe My Election Fraud Claims*, Vanity Fair, March 23, 2021, https://www.vanityfair.com/news/2021/03/sidney-powells-defamation-defense-nobody-in-their-right-mind-would-believe-my-election-fraud-claims

on the Eleventh Circuit motions panel went further and concluded that the

Plaintiffs' broader claims did not articulate a "'severe burden' on voters under

the *Anderson/Burdick* balancing test … electronic voting systems are not a

severe burden merely because they are electronic.  And the possibility of a

computer glitch in an otherwise nonburdensome voting system is no more a

severe burden than the possibility of an election-day snowstorm or traffic

jam." *Id.* (Brasher and Lagoa, JJ., concurring) (citations omitted).

This Court too has expressed doubts as to Plaintiffs' standing and the

utility of engaging in even more costly discovery given the current posture of

the litigation and recent precedent:

> between *Jacobson* and more significantly all of the
> decisions coming out [in 2020 and 2021] and the fact
> that we have two of my orders already up on
> interlocutory appeal, I'm feeling very cautious about
> the approach of litigation that the parties are
> proceeding with here … I can well perceive that there
> is a reasonable chance that some portion of my orders
> may be reversed or may not be. … But it seems like an
> enormous amount of money and resources to devote to
> this if it is going to just end up potentially being
> addressed on procedural grounds. So I think this is a
> reasonable concern on my part.

Jan. 19, 2021 Telephone Conf. Proceedings, (Doc. 1053), Tr. at 5-6.

Contrary to Plaintiffs' representation that State Defendants have not engaged in discovery since September, their recounting of the record is, again, misleading.  The current status of discovery is as follows:

- On November 30 and December 7, 2020, State Defendants filed objections to Plaintiffs' discovery. (Docs. 1019, 1027.)

- On December 28-30, 2020, State Defendants served Plaintiffs with various forms of written discovery. (Docs. 1032, 1033, 1034, 1035.)

- On December 29, 2020, Curling Plaintiffs wrote to the State Defendants, asserting various complaints about responses to expedited discovery and their requests from nearly two years ago.

- After briefing on the issue of Plaintiffs' standing concluded, the Curling Plaintiffs, on February 24, 2021, again wrote State Defendants and contended that Defendants' discovery responses were inadequate.

- In letters dated January 4, and March 2, 3, and 5, 2021, State Defendants responded to Curling Plaintiffs' correspondence, and also informed both Plaintiffs that their discovery responses were inadequate.

- • Conferences between the parties' counsel occurred on January 7, 2021, after which the parties requested a status conference with the Court, and again on March 3, 2021, but nothing was resolved.

At no point in all of these discovery discussions did Plaintiffs communicate to State Defendants their intent to file the Renewed Motion. Nor did they seek the Court's assistance with the apparent discovery dispute, even though the Renewed Motion may be based, in part, on Plaintiffs' misguided discovery theories. *See, e.g.,* (Doc. 1083 at 1) ("[Defendants] steadfastly refuse to provide *any* discovery") (emphasis added).)

In sum, the Eleventh Circuit has expressed concerns about Plaintiffs' theories. This Court has as well. So now, perhaps in an effort to change the subject or balance the scale of public perception, Plaintiffs resort to their tired, inaccurate, and ultimately unprofessional trope against the State and its counsel. Worse yet, they completely misrepresent the State Defendants' pleadings to do so.

## ARGUMENT AND CITATION TO AUTHORITY

This Court should deny Plaintiffs' Renewed Motion once and for all. First, the Renewed Motion is procedurally improper and in violation of this Court's August 2020 Order. Second, it contains misrepresentations of the

record that can only be described as intentional.  Third, it is substantively meritless.

### 1.   The Renewed Motion is Procedurally Improper.

In the Northern District, a motion for reconsideration must be filed within 28 days after the entry of the relevant order.  N.D. Ga. LR 7.2(E). This Court has already addressed Plaintiffs' argument about the GEMS Databases, which constitutes the bulk of the Renewed Motion. (Doc. 1083 at 2-5, 7-9.)  Plaintiffs' Renewed Motion is **213 days** past the time established in the Local Rules.  This alone warrants dismissal of the Renewed Motion's re-raising of the GEMS discussion.

To the extent the Renewed Motion raises other objections (either to the Pro V&V matters or current discovery objections), it failed to comply with this Court's standing order.  As Plaintiffs know well, parties appearing before the Court "shall not file discovery motions (including motions to compel, motions for protective order, and *motions for sanctions*) without prior permission from the Court."  Standing Order: Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg at III(e) p. 20 (emphasis added).  Plaintiffs' failure to comply with this Court's standing order further suggests improper motivations to change the subject, and this Court should not reward such a strategy.

2.      The Renewed Motion Continues Plaintiffs' Blatant
        Mischaracterization of The Record.

Plaintiffs' Reply Brief, filed in support of their original motion for

sanctions, also contains a flagrant misrepresentation of the record. (Doc. 656

at 9.)  By selectively citing to the State's Brief in Opposition to the motion for

sanctions (Doc. 647), Plaintiffs falsely asserted that the State acknowledged

it misled the Court:

> Defendants repeatedly claimed that the GEMS
> databases used in Georgia were unique and
> confidential. This was always untrue. Mr. Beaver
> conceded this under cross-examination. Defendants
> finally do too. (Opp. 3 ("that State defendants misled
> the Court … was not the result of any bad faith.").)

(Doc. 656 at 9 (citations omitted).)  The Renewed Motion doubles down on

this misstatement, claiming: "In fact, *State Defendants admitted to a lack of*

*candor* in their prior briefing on this issue, and sought to defend these

misstatements based on a nebulous security concern: '***State Defendants***

***misled the Court*** about the uniqueness of the structure of GEMS

Databases—[] not [as a] result of bad faith.'" (Doc. 1083 at 4-5 (italics and

brackets in original; bold added).)

The State has never taken the position it misled the Court, and

Plaintiffs know it.  The full portion of the State's Brief in Opposition cited by

the Plaintiffs makes this clear:

> Contrary to the deluge of innuendo and accusations of
> bad faith made by Plaintiffs in their Motion, **the entire
> basis** of their request for sanctions—that **the State
> Defendants misled the Court** about the uniqueness
> of the structure of Georgia's GEMS Databases—was
> not the result of any bad faith.

(Doc. 647 at 3 (emphasis added).)  The phrase about misleading the Court

was a description of Plaintiffs' argument and not Defendants' position.  The

State **never** represented that it misled the Court because it did not.  This is

not a close call.  Nor is it excusable as a mere oversight by Plaintiffs' counsel.

Further, the State was acting on information it had, at the time, about

complex databases.  Plaintiffs themselves said they needed a "team of

'individuals familiar with this type of election data,' guided by their expert,

Dr. Halderman" to understand them. (Doc. 647 at 19) (citing Doc. 482 at 13:9-

12.)  In addition, certain documents were mislabeled by the Plaintiffs, which

added to the difficulty of the situation.

Thus, despite the tone and false accusations of the Renewed Motion

(and Plaintiffs' prior pleadings) any misrepresentation has been by Plaintiffs.

This alone warrants denial of both the Renewed Motion and the First Motion.

3.    Plaintiffs' Motion Is Substantively Meritless.

This Court should not even reach the merits of Plaintiffs' Renewed

Motion or, in the light of the gross misrepresentation discussed above, the

First Motion.  A consideration of the merits, however, leads to the same conclusion: denial is appropriate.  Because this Court expressly decided to address the issue "at the conclusion of this case," State Defendants will not rehash arguments already pending before the Court.[9] (Doc. 771.)  Instead, the State will address arguments that are new to either the Reply Brief (Doc. 656), or the Renewed Motion. (Doc. 1083.)

       a.    *Rule 37(a)(5).*

Plaintiffs' first proffered ground for sanctions is Federal Rule of Civil Procedure 37(a)(5).[10] (Docs. 623 at 10; 656 at 23.)  As set forth in the State's Response in Opposition to the Joint Motion, Rule 37(a)(5) is available only when there is a motion to compel that has been filed. (Doc. 647 at 15-17.)  Plaintiffs' authority does not overcome this fatal flaw with their approach. *See Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993); *Props. Int'l Lts. v. Turner*, 706 F.2d 308, 310 (11th Cir. 1983); *Unfi Export Sales, LLC v. Mekfir Int'l Corp.*, 233 F.R.D. 443, 445-46 (M.D.N.C. 2005).

---

[9] Out of an abundance of caution, State Defendants incorporate their previous arguments fully into this brief. *See* (Doc. 647.)

[10] Plaintiffs' Renewed Motion cites to Rule 37(a)(3) on page 6 but speaks substantively of only Rule 37(a)(5). (Doc. 1083 at 6, 7.) Rule 37(a)(3) authorizes motions only.

*DeVaney*, cited only in the Renewed Motion, involved the filing of a motion to compel. 989 F.2d at 1163.  In *Turner*, the district court ordered the defendant to provide the government with full discovery, and the defendant failed to do so. 706 F.2d at 310.  The discussion about a motion to compel arose under Rule 37(b), which addresses failure to comply with a court order; it is wholly irrelevant to Rule 37(a) motions, which addresses failure to comply with discovery requests. *Id.*

Even if this Court concluded that a motion to compel is unnecessary for a Rule 37(a) motion, both *Turner* and *Mekfir International* are easily distinguishable.  In *Turner*, the defendant "repeatedly failed to provide witnesses at depositions and hearings, and incompletely replied to interrogatories." 706 F.2d at 310.  Similarly, in *Mekfir International*, the sanctioned party exhibited a "complete failure … to participate in" discovery. *Mekfir Int'l Corp.*, 233 F.R.D. at 445 (M.D.N.C. 2005).  Here, the parties' dispute about the confidential nature of a set of complex databases was made all the more confusing by Plaintiffs' erroneous summary sheet submitted as evidence.  Moreover, unlike *Turner* and *Mekfir International*, there was no steadfast refusal by the State Defendants to produce anything.  Instead, the State consistently repeated references to Georgia law, which prohibits public officials from production of the GEMS database absent a court order.  *See,*

*e.g.*, O.C.G.A. §§ 21-2-379.24(g), 21-2-500.  Even Dr. Halderman concurred with the need for security surrounding any production.  June 28, 2019 Tel. Conference, (Doc. Tr. 47:8-9).

This authority also provides no basis to sanction the State for its conduct regarding the Pro V&V report and EAC documentation.[11] (Doc. 1083 at 5.)  First, the Court has not concluded that the State engaged in bad faith or a "complete failure" to participate in discovery. *Mekfir Int'l Corp.*, 233 F.R.D. at 445.  Instead, the dispute arose from Plaintiffs' informal demands for information—sent after the close of evidence—via email. *See* (Doc. 959 at 1-2.)  At a minimum then, there was no discovery request or response, much less a motion to compel.

On the substance, Plaintiffs' complaints about the post-hearing (and irrelevant) EAC documentation fares even worse.  As State Defendants repeatedly explained to Plaintiffs and the Court, "the process of EAC approval happens in the absence of State Defendants—the manufacturer

---

[11] Plaintiffs' citation to this dispute is improper and should be summarily dismissed by the Court for another, independent reason—the propriety of the EAC inquiry is now under review by the 11th Circuit. *See* Wright & Miller, *Federal Practice & Procedure* § 3921.2 (3d ed. Apr. 2021 Update) ("[I]t would be advisable for the district court to determine whether the same issue has been presented on appeal, and to defer action when it seems reasonably probable that appellate decision of the same question is imminent.").

determines whether to seek such approval and has responsibility for those submissions." (Doc. 959 at 3 (citing Oct. 1, 2020 Tel. Conf. Tr. at 10:3-12; 11:15-12:8)); *see also* (*Id.* at 3 (citing (Docs. 959-1 and 959-2) ("But the Court (and Plaintiffs) need not rely on explanation from State Defendants and Dr. Coomer—the Election Assistance Commission's Voting System Testing and Certification Manual confirms this fact").) Nonetheless, while maintaining their objections (which have not been ruled upon) State Defendants expeditiously provided the documents requested by the Court, in real time, as quickly as they became available. *See* (Docs. 929, 938, 948, 953, 959, 960.) These circumstances provide no basis for sanctions under Rule 37(a) for obvious reasons: (1) Plaintiffs' requests were not made pursuant to formal discovery; (2) there was no motion to compel pending; and (3) the State responded, on an incredibly expedited basis, with candor and based on the information presented to it by third parties.[12]

---

[12] While EAC certification ended the inquiry in this case, it would not be the last time State Defendants saw such claims utilizing Plaintiffs' theories. *See Pearson*, 1:20-cv-04809-TCB, ECF Doc. 1-5 (N.D. Ga. Nov. 15, 2020), attached hereto as Exhibit 5, at 12-18 (Halderman Decl.), 19-29 (Skoglund Decl.), 30-36 (Hursti Decl.), 37-44 (VSTL Report), and 45-121 (Oct. 1, 2020 Conf. in *Curling*).

Finally, and to the extent that Plaintiffs contend the State's responses to ongoing discovery warrant sanctions, Plaintiffs are again wrong. They have attempted to sidestep this Court's procedural mechanism for resolving discovery disputes. Standing Order: Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg at III(e) p. 20. Plaintiffs also have not otherwise sought the Court's guidance for resolving Defendants' objections to their discovery. Thus, beyond the fatal procedural infirmities of the Renewed Motion, it substantively fails as well.[13]

    b.    *Rule 26(g).*

Plaintiffs brief discussion of its request for sanctions under Rule 26(g) is equally misguided. Rule 26(g) mandates only "reasonable inquiry." But, as State Defendants represented and Plaintiffs' conduct attested, the complexity of the GEMS Databases required nothing less than an *expert* inquiry. Further, any disclosure of the GEMS Databases required an order from the Court before that disclosure could be made in compliance with state law. *See, e.g.* O.C.G.A. §§ 21-2-379.24(g); 21-2-500; *Smith v. DeKalb Cty.*, 288 Ga. App.

---

[13] Plaintiffs' selective citation to the record continues here as well. For example, they cite a portion of this Court's order denying the motion to stay one of the recent preliminary injunctions, but they fail to cite or state that the Eleventh Circuit stayed the order (and reaffirmed that decision just last month). (Doc. 1082.)

574, 577, 654 S.E.2d 469, 472 (2007). Defendants ultimately obtained that order, (Doc. 463), and released the GEMS Databases under the conditions specified by the Court—many of which were requested by Defendants.

Counsel for the State expressed their concerns to Plaintiffs and conferred with Plaintiffs on numerous occasions, consistent with this Court's Standing Order. In keeping with the requirements of Rule 26(g), Defendants' counsel certified "to the best of the person's knowledge," that representations made by its expert were true and correct. As Mr. Beaver testified, he was also making representations to the best of his knowledge based on his review of Plaintiffs' documents. Simply put, although Plaintiffs mischaracterize the efforts required to confirm the similarities between GEMS Databases, Defendants made a reasonable inquiry as required under Rule 26.

         c.     *28 U.S.C. § 1927.*

Plaintiffs' Renewed Motion raises nothing new on 28 U.S.C. § 1927, and it is focused only on the GEMS Databases. (Doc. 1083 at 8). It cites two new cases, *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239-42 (11th Cir. 2007), and *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). Neither support the imposition of sanctions.

First, as *Amlong & Amlong, P.A.* make clear, an attorney subject to a sanctions order under Section 1927 is entitled to a hearing, and, here, one

has not taken place. 500 F.3d at 1242 (citation omitted).  Second, the

Eleventh Circuit *reversed* an order imposing sanctions in *Amlong & Amlong,*

*P.A.*, after concluding the district court abused its discretion by making

independent factual findings apart from the magistrate's order. 500 F.3d at

1245-46.  Thus, Plaintiffs' own authority shows the wisdom of the Court's

August 2020 Order, which delayed a decision on sanctions until after the

"conclusion of this case." (Doc. 771).  Third, *Avirgan* involved a frivolous claim

used to conduct fishing-expedition discovery. 932 F.2d at 1582.  It sheds

neither light nor mandate on Plaintiffs' allegations about the GEMS

Databases, the Pro V&V matter, or the current state of discovery.  Once

again, Plaintiffs' Renewed Motion is unsupported by the very law it cites.

        d.    *The Court's Inherent Power*.

Plaintiffs' also ask this Court to exercise its inherent power to sanction.

(Doc. 1083 at 8-9).  Of course, courts' inherent power to sanction "must be

exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S.

32, 44 (1991).  The cases cited in the Plaintiffs' Reply Brief and the Renewed

Motion do not establish that the Court's authority should be used in this

matter. *See Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978); *In re Sunshine Jr.*

*Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006); *Bates v. Michelin N. Am.,*

*Inc.,* 1:09-CV-3280-AT, 2012 WL 453233, at *1 (N.D. Ga. Jan. 13, 2012).

In *Hutto*, the government's bad faith was not questioned on appeal; the only issue was whether the imposition of sanctions violates the Eleventh Amendment to the United States Constitution. 437 U.S. at 689.  In *In re Sunshine Jr. Stores, Inc.*, the sanctioned party "failed to obey or otherwise respond to the court's orders over an extended period of time [and] refused to comply with the court's" order to provide information to the opposing party. 456 F.3d at 1305.  Plaintiffs do not allege this conduct, much less show it. Similarly, *Bates* involved a defendant's (1) failure to provide responsive information; (2) production of misleading or cumbersome information instead of what the Court ordered; (3) failure to correct the misleading information provided to the Court; and (4) violation of an order compelling the production of documents. 2012 WL 453233 at 22-24.  The facts here are simply inapposite.

Plaintiffs' theory simply cannot withstand the Eleventh Circuit's holding that "a conclusory finding of bad faith is not sufficient to withstand appellate review." *In re Porto*, 645 F.3d 1294, 1305 (11th Cir. 2011). Yet, that is precisely what the Plaintiffs seek with their wholly flawed Renewed Motion. Worse yet, Plaintiffs' suggestion that the State has engaged in "obstruction" is absurd, particularly in the light of the Plaintiffs' own, ongoing refusal to meaningfully participate in discovery. Put simply, the

Plaintiffs have provided no basis to meet the high and exacting standard imposed when courts exercise their inherent authority to sanction.

## <u>CONCLUSION</u>

The Plaintiffs' Renewed Motion—more aptly described as an untimely motion to reconsider—should be denied.  The simplest reason is that it is procedurally improper and untimely.  But Plaintiffs' blatant misquoting of the State's prior brief warrants dismissing the Renewed Motion and the First Motion altogether.  As already recognized by this Court, Plaintiffs may lack standing to even pursue this claim, and until that issue is resolved, expending "enormous amount[s]" of public funds on potentially needless discovery is not warranted and it certainly provides no basis to sanction the State or its legal counsel. (Doc. 1053 (Tr. at 5-6).)

Respectfully submitted this 22nd day of April, 2021.

*/s/ Josh Belinfante*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com

Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
R. Dal Burton
Georgia Bar No. 097890
dburton@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Josh Belinfante*
Josh Belinfante