IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al*.<br><br>    *Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>    *Defendants.* | CIVIL ACTION FILE<br><br>NO. 1:17-cv-2989-AT |

**STATE DEFENDANTS' SUPPLEMENTAL BRIEFING
REGARDING JUNE 2, 2021 DISCOVERY CONFERENCE**

The State Defendants submit this Notice of Filing pursuant to the Court's directive during the June 2, 2021 Discovery Conference. *See* [Docs. 1099, Tr. 59:18–60:3; 1103].

Curling Plaintiffs asked this Court to order the production of "(i) Dominion EMS DVD files, (ii) a fully-configured EMS for all counties prior to September 25, 2020, (iii) fully-configured EMS for all counties after September 25, 2020 (iv) a fully-configured ICC scanner, (v) a copy of the Democracy Suite EMS software, version 5.5A(GA), (vi) a fully-configured BMD for Fulton, Cobb, or DeKalb counties used in the November 2020 election, including a printer, and (vii) all necessary software, cards, USB drives, passcodes, and other devices necessary to operate this equipment."

1

[Doc. 1094 at 2].[1] During the discovery conference, Curling Plaintiffs explained they needed this equipment to "test or perhaps confirm that [vote-] manipulation *could* be implemented across the state through the EMS." [Doc. 1099, Tr. 7:1–4] (emphasis added). Curling Plaintiffs did not explain the reason for their change of heart after previously informing the Court they did not "anticipate asking to examine Dominion equipment that is going to be used in any of the elections." [Doc. 810, Tr. 34:4–9].

This Court should deny that discovery for two reasons. First, as explained in State Defendants' portion of the Joint Discovery Statement, [Doc. 1094], and their January 2021 brief on standing, [Doc. 1066], Curling Plaintiffs' (and, for that matter, Coalition Plaintiffs') operative Complaint alleges only vulnerabilities, which binding precedent holds is insufficient to confer an injury in fact for standing. Second, since the Curling Plaintiffs only assert these hypothetical vulnerabilities, discovery concerning equipment "programmed and actually used" in the 2020 elections is beyond the scope of the claims at issue here and unduly burdensome, requiring non-party counties to replace such equipment.

---

[1] "Fully-configured," according to Curling Plaintiffs' discovery statement, "means a system programmed *and actually used* in a Georgia statewide election and not since altered." [Doc. 1094 at 2 n.1] (emphasis added).

Curling Plaintiffs explain they need this discovery to show "here are the vulnerabilities that we identify, here is how we can show that those vulnerabilities could be exploited and then populated across the state or to other counties through the EMS." [Doc. 1099, Tr. 17:3–6]. But this ignores that, even if they could prove this purported vulnerability was true, it is still insufficient to confer an injury in fact—no matter how many ways they can claim it *could* be exploited. They argue that the State Defendants' position puts them in a "catch-22," but that catch-22 is of their own making: if the Plaintiffs believe an *actual compromise* has occurred and affected *their votes* in a particularized way, they can seek leave from this Court to amend their complaints (again) to make that allegation or they can file a new case. Indeed, this Court invited Plaintiffs to consider "any requisite tailoring or cutting back of their claims," [Doc. 1088], and Plaintiffs know how to allege an actual compromise: bringing this case to declare the results of Karen Handel's 2017 electoral victory of Jon Ossoff "void *ab initio*." [Doc. 1-2]. As it stands now, however, Plaintiffs' claims are insufficient to invoke this Court's subject-matter jurisdiction under Article III.

As to the BMD System, Curling Plaintiffs assert liability for not providing "reasonable and adequate protection" against unauthorized manipulation by a third party, inadequate protection "to ensure that all

3

properly cast votes are counted and that votes improperly cast are not counted" or "against the real and substantial threat of electronic and other intrusion and manipulation by individuals and entities without authorization." [Doc. 627 at 36–39 (¶¶ 116, 125)]. Similarly, Coalition Plaintiffs allege an injury because their ballot cannot be verified that it is cast as intended or that in-person voters (not them) suffer a greater risk of casting a less effective vote than those who vote-by-mail. [Doc. 628 at 57 (¶203)]. These claims are strikingly similar to those summarily rejected by the Eleventh Circuit. *See Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (holding that "ensuring that only lawful ballots are counted" is a generalized grievance) (alteration adopted); *id.* at 1315 (holding that Wood's allegation of valuing absentee voters over in-person voters was not a particularized injury).

Moreover, Plaintiffs have yet to articulate why they need the discovery they seek and cannot explore the purported vulnerabilities (though still insufficient) with equipment they *already possess*. Both Plaintiffs explained that they are not contesting the outcome of the 2020 elections and Coalition Plaintiffs agree that they "have not contended that malware 'was inserted into the Election system prior to or during the November 3, 2020 General Election'" and that they are "not contending that the November 2020 election

was hacked." Coalition Response to Sullivan Interrogatory No. 1 & Worley Interrogatory No. 10; Curling Response to Requests for Admission 19 & 20; attached as **Exhibits A** & **B**, respectively. With both Plaintiffs failing to allege any manipulation of the 2020 election results and agreeing that they are not contesting those results, what purpose could the requests possibly serve? In any event, Plaintiffs will still assert that whichever perceived vulnerability their expert can engineer a demonstration of for an emergency hearing is *possible*, and potentially as disastrous as an airplane malfunction which killed hundreds of people or the hack of a nuclear weapons system. But Plaintiffs have never addressed how their theory of vulnerability by QR-code and printed text mismatch could possibly remain after the Risk-Limiting Audit which expanded to a full manual recount. *See* **Exhibit C**. Simply put, this Court should not countenance such outrageous fear-mongering that undermines the confidence Georgians should have in their election system.

      Nor can Plaintiffs explain how the discovery is "proportional to the needs of the case." FRCP 26(b). Setting aside that the requested discovery is in pursuit of claims for which Plaintiffs do not have standing, their request for equipment from all 159 counties—later narrowed to just Fulton County, from whom they did not actually seek this discovery—means that equipment can no longer be utilized in elections. *See* [Docs. 1096-2 and -3]. At minimum

new rounds of acceptance testing will be required before use to confirm the activists that gained unfettered access did not alter the equipment. *See* Ga. Comp. R. & Regs. r. 183-1-12-.03. For Fulton, granting Plaintiffs' discovery will deprive them of such use in advance of a hotly contested mayoral election *this year*.

If past is prologue, the Plaintiffs will continue to possess the equipment for as long as the case remains alive, just like the GEMS databases, DREs (and State Defendants are *still* storing 30,000 DREs which will never be used again), memory cards, a copy of the KSU server image, and the previously ordered BMD precinct components. *See* [Doc. 1094 at 4]. If there were some evidence of actual compromise of the system necessitating new discovery, surely Plaintiffs would have raised it by now. Even beyond the acrimony of this case, State Defendants presume that if Plaintiffs possessed such evidence they would have truthfully answered State Defendants discovery indicating as much, or at least raised the issue to prevent actual harm.[2]

---

[2] State Defendants (and apparently Coalition Plaintiffs) remain unaware as to the substance of the *ex parte* communication and "emergency conference" Curling Plaintiffs sought with the Court in December 2020. In any event, the Court was unpersuaded. *See* December 23-24, 2020 Emails with the Court, **Exhibit D**, filed separately under seal.

For the reasons stated herein, and as explained in State Defendants' portion of the joint discovery statement, the discovery requests should be denied. Moreover, so long as Plaintiffs cling to only alleged "vulnerabilities," re-visiting Plaintiffs' standing before delving into the expansive discovery requested is the most efficient course of proceedings and use of this Court's (and the parties') resources.

Respectfully submitted this 9th day of June 2021.

*/s/ Carey A. Miller*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Joshua B. Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander F. Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly

Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
R. Dal Burton
Georgia Bar No. 097890
dburton@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Supplemental Briefing Regarding June 2, 2020 Discovery Conference has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Carey A. Miller*
Carey A. Miller