# EXHIBIT A

**taylor | english**

**Taylor English Duma LLP** 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868  Fax: 770.434.7376  taylorenglish.com

Bryan P. Tyson
Phone: (678) 336-7249
Email: btyson@taylorenglish.com

May 14, 2021

**VIA EMAIL ONLY**
David Cross, Esq.
Lyle F. Hedgecock, Esq.
Morrison & Foerster LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006-1888

    Re:    *Donna Curling, et al. v. Brad Raffensperger, et al.*
            Civil Action File No. 1:17-cv-2989-AT

           Your Letter of April 22, 2021

Dear David:

This is in response to your letter of May 11, 2021 concerning outstanding discovery issues. We have reviewed our exchange of discovery letters and this letter represents our final position subject to a meet and confer.

**RFPS 9-11, 13 and 16-17:**

As we explained in our letter of March 2, 2021 we have produced all known non-privileged documents to these requests. However, once we agree on additional search terms, we will run those through the Secretary of State's system and then produce any additional responsive documents that are located.

**Additional search terms:**

As we explained in our letter of March 2, 2021, your list of search terms would capture almost every email to or from the Elections Division which would not only be burdensome, but would capture huge volumes of irrelevant material. We will provide you a pared-down list of search terms by no later than May 20, 2021. If we can agree on that pared-down list, the State can begin producing documents.

Per our discussion, we also write to state our final position as to your objections to our discovery to you. Our positions are outlined below.

David Cross, Esq.<br>
Morrison & Foerster<br>
May 14, 2021<br>
Page 2

## WORLEY INTERROGATORIES

Interrogatories 4 and 8:

In Interrogatory No. 4, State Defendants sought the factual basis for Curling Plaintiffs responses to the bulk of the individual requests for admissions ("RFAs"). Those RFAs sought admissions concerning the circumstances surrounding the General Election on November 3, 2020. For example, whether the results of the November 3, 2020 election were valid (RFA 1), whether Curling Plaintiffs have any evidence that any component of the Election System was actually hacked in connection with that election (RFA 3), whether Curling Plaintiffs have any evidence that malware was inserted into the Election System in connection with that election (RFA 4), whether Curling Plaintiffs contend votes were switched from one candidate to another in that election (RFA 9), whether Curling Plaintiffs have evidence of widespread voter fraud in connection with that election (RFA 12), whether Curling Plaintiffs had any evidence of a malfunction of any component of the Election System that impacted the outcome of any race in that election (RFA 13). In other words, the clear import of the Interrogatories was to discover the factual basis for the Curling Plaintiffs' refusal to admit those RFAs which were directed at the operation of the Election System on November 3, 2020. In Interrogatory 8, State Defendants asked whether the Curling Plaintiffs contend that the Election System was hacked in connection with the November 3, 2020 General Election and, if so, to provide basic information like the identity of hacker, the identity of the component that was allegedly hacked, where the alleged hack occurred, etc.

In response to these Interrogatories, Curling Plaintiffs pointed to their discovery responses from July 15, 2019—prior to the State awarding the contract for the new Election System to Dominion and over a year prior to the General Election—as well as motions and other filings made well before the General Election. In your letter of May 1, 2021, you say those responses "remain valid and expressly address the BMD system and the Components of the DRE/ GEMS system that were carried over to the BMD System." To be clear, if by that response, Curling Plaintiffs mean that they have no criticisms whatsoever of the operation of the Election System, or any of its components, on November 3, 2020 (other than those outlined in the referenced items which occurred months—if not years—before the November 3, 2020 election), we will accept that answer subject to Curling Plaintiffs' obligation to supplement those responses no later than 30 days before the end of fact discovery so that State Defendants will have time to investigate those new claims and depose any witnesses. On the other hand, if Curling Plaintiffs currently have any factual information that supports their refusal to admit those RFAs or if they presently contend that the Election System was hacked, was subject to a malware attack or malfunctioned in some way in connection with the November 3, 2020, election we are entitled to know that information now.

Interrogatory 7:

In Interrogatory No. 7, State Defendants question whether Curling Plaintiffs contend that votes were switched from one candidate to another in the November 3, 2020 General Election. After a series of objections, including one that it is premature to seek Curling Plaintiffs' contentions on this issue, Curling Plaintiffs stated they lacked sufficient information to admit or deny. In your letter of May 11, 2021, you repeat that position; that is, you say Interrogatory No. 7 is "premature contention discovery," but you are willing to meet and confer. State Defendants are entitled to know your clients' contentions in this case. If they are not contending that any votes were switched from one candidate to another, all they have to do is say so. On the other hand, if they are making that contention, regardless of whether or not that "is an issue on which Curling Plaintiffs need to state a position," State Defendants are entitled to know. Nevertheless, we are willing to meet and confer in an effort to reach a compromise.

## REQUESTS FOR PRODUCTION

In RFP No. 4, State Defendants sought the production of any correspondence or communications Curling Plaintiffs have had with members of the press. In response Curling Plaintiffs objected for a variety of reasons and refuse to produce any documents. In your letter on May 11, 2020 you take the same position saying flatly "this request does not seek relevant documents." But that cannot be true because if there are documents that reflect correspondence or communications by your clients to the press that mention this Litigation or the challenges the Curling Plaintiffs have made to the Election System, they are by definition relevant within the liberal standards articulated in Fed. R. Civ. P. 26(b)(1) which is all that need be shown. This is particularly true where, as here, the Curling Plaintiffs have made a deliberate and conscious choice to try the case in the press and where we have seen multiple press reports and/or public statements by Plaintiffs, Plaintiffs' experts, and even Plaintiffs' counsel that go directly to core issues in the case.

Nor does RFP No. 4 implicate the First Amendment or infringe on Curling Plaintiffs First Amendment rights. In that regard, and just to be clear, the only documents State Defendants seek are those reflecting correspondence or communication *made by Curling Plaintiffs to members of the press* that mention this litigation or the challenges made by the Curling Plaintiffs to the Election System. State Defendants are not seeking correspondence or communications made *by any member of the press to Curling Plaintiffs.* Plaintiffs in the *Omokehoinde* case which you cite recognized this distinction and voluntarily produced their communications with the reporter without objection. Stated differently, the only objection made in that case was one to the production of the *reporter's* emails and correspondence—documents that the

David Cross, Esq.  
Morrison & Foerster  
May 14, 2021  
Page 4

State Defendants are not requesting. Please advise whether you will stand by your objections or whether we need to meet and confer on this issue.

In RFPs 5-12, State Defendants sought documents reflecting correspondence or communications with politicians, political campaigns, voting integrity groups, and others. Each RFP is expressly limited to documents that mention or refer to this Litigation and/or the challenges your clients have made to the Election System. As such, these communications with these individuals are discoverable. Your clients may have "a fundamental right to raise concerns about the reliability on the Georgia Election System with 'political figures' who are in a position to help implement or adopt measures to better secure and verify elections…" However, once they make the voluntary choice to become plaintiffs in a lawsuit and proceed to litigate the case in the media, they waive any protection or immunity that may have attached to those communications—if any existed in the first place. That said, we are willing to meet and confer with you to see if there is any middle ground.

### SUPPLEMENTATION OF DISCOVERY RESPONSES

The Federal Rules impose an obligation to supplement discovery responses under certain circumstances. From your response, State Defendants understand Curling Plaintiffs intend to comply with those rules, as do State Defendants. Nevertheless, State Defendants hereby formally request that Curling Plaintiffs supplement their responses to State Defendants' discovery to include additional responsive information and that Curling Plaintiffs do so no later than forty five (45) days before the end of fact discovery to allow State Defendants time to investigate any newly disclosed information and depose any newly identified witnesses.

If we cannot reach a compromise, we will bring these disputes to Judge Totenberg as soon as possible.

Sincerely,

*Bryan P. Tyson*

Bryan P. Tyson  
For TAYLOR ENGLISH DUMA LLP