IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.,* <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-CV-2989-AT |

**STATE DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

In further support of State Defendants' recent briefing on Plaintiffs' lack of Article III standing in this case, [Docs. 1066, 1094, 1105, 1117], State Defendants respectfully submit the attached opinion of the Eleventh Circuit Court of Appeals in which the Court determined that Plaintiff L. Lin Wood, Jr., lacked standing to pursue his claims regarding use of Georgia's Dominion BMD System and absentee ballot procedures for the January 2021 Runoff Election. *Wood v. Raffensperger*, Case No. 20-14813 (11th Cir. Aug. 6, 2021), *aff'g* No. 1:20-cv-5155-TCB, 2020 WL 7706833 (N.D. Ga. Dec. 28, 2020) [*Wood II*].[1] The Eleventh Circuit Opinion is attached as **Exhibit A**.

---

[1] This case is separate from Wood's prior suit and appeal, *Wood v. Raffensperger*, 501 F. Supp. 3d 1310 (N.D. Ga. 2020) *aff'd* 981 F.3d 1307 (11th Cir. 2020) [*Wood I*].

In *Wood II*, the plaintiff alleged that the State Election Board's promulgation of absentee-ballot "rules—together with the use of Dominion voting machines—violate[d] his rights to equal protection (Count I), due process (Count II), and a republican form of government (Count III)." *Wood II*, 2020 WL 7706833 at *1. The Eleventh Circuit summarized Wood's legal theories: that the absentee ballot procedures and use of the Dominion BMD System "violated his equal protection and voting rights, as he said he planned to vote in person in the election, and these procedures would dilute his vote and cause his vote to be treated differently [… ,] violated his due process rights because the procedures were 'defective and unlawful' and affected the 'integrity of the election,'" and violated the Guarantee Clause of the United States Constitution. Ex. A. at 2–3.[2]

Acutely relevant here, Wood alleged the Dominion machines used in Georgia were "unreliable, compromised, problematic, and subject to outside manipulation of voting results." *Wood II*, No. 1:20-cv-5155-TCB (N.D. Ga.), ECF No. 1 at 19 (¶ 55). Wood went on to cite Dr. Appel's (Curling Plaintiffs' expert's) observation on his ability to install vote-flipping malware, *id.* at 22 (¶ 61), and hand-marked paper ballot activist Garland Favorito's conclusion

---

[2] Page number references are to those generated by the Eleventh Circuit's CM/ECF filing system.

that it was more-likely-than-not that "vote-swapping malware" existed on Georgia election management servers, *id.* at 23 (¶ 64). Wood further relied upon this Court's conclusions in its October 11, 2020 Scanner Order:

> 66. Notably, The Honorable District Court Judge Amy Totenberg issued a 174-page detailed order on October 11, 2020 that foreshadowed the dangers presented by Georgia's use of [the Dominion BMD System]. Particularly, she observed that "the substantial risks posed by Georgia's BMD system, at least as currently configured and implemented, are evident." [ ]. Judge Totenberg went on to observe that her "Order has delved deep into the true risks posed by the new BMD voting system as well as its manner of implantation [*sic*]. **These risks are neither hypothetical nor remote under the current circumstances**."
>
> 67. Adopting the Plaintiff's cyber security expert's testimony, Judge Totenberg observed that "this is not a question of 'might this actually ever happen?' – but 'when it will happen,' especially if further protective measures are not taken. Given the masking nature of malware and the current systems described here, if the State and Dominion simply stand by and say, 'we have never seen it,' the future does not bode well."

*Id.* at 24 (¶¶ 66–67) (emphasis added in original) (quoting *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1312 & 1341–42 (N.D. Ga. 2020)).[3]

---

[3] Wood also filed numerous affidavits and exhibits Plaintiffs previously filed in this case to support his claims. *See, e.g.*, *Wood II*, No. 1:20-cv-5155-TCB (N.D. Ga.), ECF Nos. 2-9 (Appel, DeMillo & Stark, *Ballot-Marking Devices (BMDs) Cannot Assure the Will of the Voters* (Dec. 27, 2019)), 2-10 (Stark August 2020 Declaration), 2-11 (Halderman December 2019 Declaration).

3

The Court focused its inquiry on the "particularized-injury requirement" to establish an injury in fact under Article III. "A particularized injury is one that affects the plaintiff in a personal and individual way." *Id.* at 4 (quoting *Wood I*, 981 F.3d at 1314). "That means the plaintiff must show more than a generalized grievance that is 'undifferentiated and common to all members of the public.'" *Id.* at 4–5 (quoting *Wood I*, 981 F.3d at 1314) (quotation marks omitted in original). Employing this analysis—which the Court has used repeatedly in recent election suits—the Court held that "Wood lacked Article III Standing to bring each of his three claims," *Id.* at 6, because he failed to "explain how his <u>particular</u> in-person vote, as opposed to all in-person votes <u>more generally</u>, was diluted or disvalued." *Id.* at 6 (emphasis in original).

Like Plaintiffs here, Wood attempted to support his standing for his equal-protection claim by arguing that "the challenged procedures diluted in-person votes and valued in-person votes less than absentee votes." *Id.* The Court held, however, that Wood failed "to show the procedures 'specifically disadvantaged' his vote rather than impacting the proportional effect of every vote," and on disparate treatment or valuing absentee votes over in-person votes, he similarly failed to show harm that "affect[ed] Wood as an individual." *Id.* (citing *Wood I*, 981 F.3d at 1314–15). Instead, Wood's asserted

4

injuries were "shared identically by all Georgians who voted in person," and his allegations were "nothing more than a textbook generalized grievance that is insufficient for Article III standing." *Id.* Nor was Wood's argument that the procedures were unlawful, illegal, and unconstitutional persuasive, because an injury to Wood's "right that the government be administered according to the law is likewise an insufficient generalized grievance." *Id.* at 6–7. (citing *Wood I*, 981 F.3d at 1314 and *Lance v. Coffman*, 549 U.S. 437, 439–442 (2007)).

      The Court also found Wood lacked standing for his due process claims—addressing them though the Court held they were abandoned—because they similarly were generalized grievances. The Court noted that Wood's theory of standing here was rooted in allegations that "the procedures were 'defective and unlawful' and affected the 'integrity of the election.'" *Id.* at 7. Again, the Court noted, "this grievance is common to all members of the public, so it is not particularized and thus not enough for Article III standing." *Id.* at 7 (citing *Wood I*, 981 F.3d at 1314 and *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1333 (11th Cir. 2007) (per curiam)). Finally, the Court held that "Wood's Guarantee Clause claim fails for the same reason." *Id.* at 8.

The theories of injury for which Wood sought redress are strikingly similar to those the Plaintiffs press here. Wood alleged that his vote in the 2021 Runoff would be diluted and disparately treated, arguing that the use of the Dominion BMD System, together with absentee ballot procedures, resulted in his vote being diluted by "unlawful or invalid ballots" and elevated absentee voters to a "favored or preferred class of voters." *Wood II*, 2020 WL 7706833 at *3-4. Likewise, Plaintiffs here assert that:

- Defendants, through use of the Dominion BMD System, fail "to ensure that all properly cast votes are counted and that votes improperly cast are not counted[.]" [Doc. 627 at 36 (¶ 116(b))] (Curling Plaintiffs' Third Amended Complaint);

- Absentee paper-ballot voters and in-person BMD voters "have not been treated equally in that … [BMD votes] cannot be meaningfully recounted, reviewed against an independent record to verify, or have discrepancies detected and corrected." *Id.* at 40 (¶ 129);

- Absentee paper-ballot votes and in-person BMD votes "are unequally weighted, with greater weight given to those who vote by absentee paper ballot, whose votes can be verified as to voter intent, can be accurately recounted, and can have processing

- errors identified and corrected, while [BMD votes] do not share those essential advantages." *Id.* at 40–41 (¶ 129);

- "All voters, including in-person and absentee mail voters, will be deprived of the right to participate in a trustworthy and verifiable election process that safely, accurately, and reliably records and counts all votes cast and that produces a reliable election result capable of being verified as true in a recount or election contest." [Doc. 628 at 62–63 (¶ 223)] (Coalition Plaintiffs' First Supplemental Complaint); and

- Voters who use the BMDs "suffer a greater risk of casting a less effective vote than other similarly situated voters who vote by mail." *Id.* at 57 (¶ 203).

Plaintiffs' claims here, just like the claims in *Wood II*, are generalized grievances insufficient to confer standing. Indeed, Plaintiffs do not even assert that *their* votes will be burdened or harmed. Quite the opposite: Plaintiffs argue that their absentee votes will be given *greater* weight or are *more likely* to be effective—only alleging purported "harms" shared identically by all Georgia voters who vote on the Dominion BMDs.

    State Defendants again urge this Court to address Plaintiffs' lack of standing, particularly in light of the Eleventh Circuit's recent decision in

7

*Wood II*, which reinforces that Plaintiffs' claims here amount to "nothing more than a textbook generalized grievance that is insufficient for Article III standing." Ex. A. at 6.

Respectfully submitted, this 10th day of August 2021.

> */s/ Carey A. Miller*
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Carey A. Miller
> Georgia Bar No. 976240
> cmiller@robbinsfirm.com
> Alexander Denton
> Georgia Bar No. 660632
> adenton@robbinsfirm.com
> Javier Pico-Prats
> Georgia Bar No. 664717
> Robbins Ross Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, Georgia 30318
> Telephone: (678) 701-9381
> Facsimile:  (404) 856-3255
>
> Bryan P. Tyson
> Georgia Bar No. 515411
> btyson@taylorenglish.com
> Jonathan D. Crumly
> Georgia Bar No. 199466
> jcrumly@taylorenglish.com
> James A. Balli
> Georgia Bar No. 035828
> jballi@taylorenglish.com
> Diane F. LaRoss

8

Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **LOCAL RULE 7.1(D) CERTIFICATION**

I certify that this State Defendants' Notice of Supplemental Authority has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

>/s/ *Carey A. Miller*
>Carey A. Miller