IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>*Defendants.* | CIVIL ACTION<br><br>FILE NO. 1:17-CV-2989-AT |

### STATE DEFENDANTS' NOTICE OF FILING
### FOR HEARING ON AUGUST 19, 2021

State Defendants submit this notice of filing in advance of this Court's August 19, 2021 discovery hearing to address issues raised in the Court's Order, [Doc. 1154].

**I.   Preparing and identifying search terms, streamlining discovery, and communications with opposing counsel.**

In the process of proposing search terms to Plaintiffs' counsel, State Defendants started with the terms utilized in the *Fair Fight Action* litigation, knowing that some adjustment would be needed to tailor the terms to the claims in this case. On June 1, 2021, Plaintiffs proposed expanded search terms. State Defendants began loading the tranche of documents onto their e-

discovery platform for review—a process that took days to download and process.

In total, the search terms identified 297,857 documents. On June 21, 2021, State Defendants informed Plaintiffs' counsel that they did not believe this was proportional to the needs of the case, and that "completing review/production based on the universe of documents as it currently stands [would] be inordinately burdensome and take more time than [State Defendants] suspect [Plaintiffs] would prefer." [Doc. 1130-3 at 16-17]. Accordingly, State Defendants proposed narrowing the terms. Later that same day, counsel requested State Defendants provide times to meet-and-confer. *Id.*

The parties conferred on the scope of discovery on June 23, 2021. While the Parties were in the conference (unaided by the presence of lead counsel for Curling Plaintiffs), Plaintiffs filed their motion for an extension of discovery due to Defendants' "nonfeasance." [Doc. 1118]. State Defendants provided revised terms on June 28, 2021, while noting their intent to seek additional revisions, [Doc. 1130 at 5–6], and provided an Excel chart comparing the results of Plaintiffs' search terms to the revisions proposed by State Defendants, as counsel participating in the conference had requested. That Chart is attached hereto as **Ex. A**. Plaintiffs' counsel requested the

terms be re-expanded. [Doc. 1130-3 at 9]. State Defendants noted that they believed the appropriate course of action would be to narrow the terms and scope of discovery at issue—consistent with Rule 26 and this Court's Order for abbreviated discovery—and that if the parties could agree to do so, State Defendants would be willing to consider a "reasonable extension to conduct reasonable discovery." *Id.* at 8. Otherwise, State Defendants were prepared to file a joint discovery statement on the search terms and scope of discovery then. *Id.*

As addressed in the parties' joint discovery statement, [Doc. 1130], Curling Plaintiffs "accepted" the revised terms, never mind State Defendants' intent to seek further revisions. State Defendants responded the same day, June 30, 2021, informing Plaintiffs that they would prepare their portion of a joint discovery statement. [Doc. 1130-3 at 4]. Eventually, the parties conferred again on July 8, 2021, and a discovery dispute statement on the issue was filed on July 12. [Doc. 1130].

State Defendants understood this Court to have directed State Defendants to proceed on the expansive discovery at issue during the July 26, 2021 conference. As such, no further communications regarding the scope of discovery at issue during the conference has occurred. Separately, on August 2, 2021, Curling Plaintiffs provided additional search terms to identify

documents responsive to their Third Requests for Production of documents, yielding nearly 6,000 additional emails and attachments. Because State Defendants understood the Court had directed them to proceed, and because the number of additional documents is a drop in the bucket compared to the over 100,000 emails already under review, no discussion has occurred on those separate terms. To this point, review of the documents captured by search terms has resulted in *only about 40%* being identified as relevant to the claims in this case.

The Court posed an additional question regarding the use of "AI" in the discovery process. State Defendants are unsure what the Court may be referencing here, but are utilizing various tools including comparisons of metadata to eliminate duplicate documents. All of these tools, however, come at expense to the State. For example, State Defendants have directed their e-discovery vendor to apply email "threading" which collapses the number of documents at issue by combining various responses to emails into single chains. Utilizing this tool on the tranche of documents under review will cost the State nearly $6,000, bringing the total expenditure on e-discovery *costs*—not attorneys' fees for review—to approximately $30,000 since May 1, 2021. Apart from this, a review of this nature will incur significant attorneys' fees, as was the case in *Fair Fight Action*. To be clear to the Court, however, State

4

Defendants are not currently engaging contract attorneys as was the case in *Fair Fight Action*, which involved far more legal and factual issues, nearly a dozen expert witnesses and a discovery period that lasted more than six months. In any event, attorneys' fees solely for document review in *Fair Fight Action* amounted to hundreds of thousands of dollars; the document review State Defendants are engaged in now is already on track to meet those expenditures.

In sum, the discovery State Defendants are currently engaged in is not abbreviated discovery. And State Defendants maintain that it is beyond the scope of Rule 26(b)(1), particularly when significant jurisdictional issues remain un-resolved and Plaintiffs have not acted on this Court's directive to tailor their claims. [Doc. 1088]; *see also* [Docs. 1066, 1094, 1105, 1117, 1147] (State Defendants' 2021 Briefing and Notices of Authority regarding Standing). More so when the discovery at issue is not pertinent to Plaintiffs' standing which should be the primary focus at this juncture. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367–68 (11th Cir. 1997) (noting the importance of addressing significant pretrial motions prior to discovery which can avoid "unnecessary costs to the litigants and the court system"); *see also Curling et. al v. Dominion Voting Sys., Inc.*, No. 1:21-mc-00164-RM, ECF No. 14 (D. Colo. Aug. 18, 2021) (denying Curling Plaintiffs' motion to compel and

noting they "have not provided a persuasive explanation as to how the evidence sought from Respondent pertains to the issue of foremost import to the Georgia district court at this juncture, whether Petitioners have proof of standing").

## II. Production of documents from the Secretary's "central repository."

In the August 17, 2021 Order, this Court directed State Defendants to provide a schedule for supplemental production of documents from the State's central repository. [Doc. 1154 at 2]. State Defendants' estimate of the time to complete review and production of email documents does not include non-email documents stored on the Elections Division's shared server drive, which State Defendants are in the process of collecting. Counsel for the State Defendants anticipates this production will be made no later than Friday, September 3, 2021, and likely before then. State Defendants do not anticipate that any such documents will require extensive individual review as they will have already been identified as responsive.

## III. Plaintiffs' document production.

The discovery being produced at this point—only from the State Defendants—is not targeted to the issues of Plaintiffs' standing. If anything, it goes solely to the merits of their claims. To date, Plaintiffs have refused to

engage in any semblance of their discovery responsibilities, much less equaling the effort which State Defendants are undertaking.[1]

A.    Curling Plaintiffs' Document Production.

Curling Plaintiffs have produced documents on three occasions since September 2020: On September 4, 2020, July 22, 2021, and yesterday, August 18, 2021.[2] Review of their productions calls into question its completeness.

i.    *Curling Plaintiffs' September 4, 2020 Production.*

On July 30, 2020, this Court denied in part and granted in part State Defendants' motions to dismiss Plaintiffs' most-recent complaints and ordered that discovery begin immediately. [Doc. 751]. About a week later, the Court denied without prejudice Plaintiffs' initial motions seeking to enjoin

---

[1] Separately, State Defendants do not address in detail the issue here (largely because State Defendants maintain Plaintiffs' standing issues should be addressed before *any* discovery continues), but raise it to reserve all rights: State Defendants respectfully object to the Court's conclusion in footnote two. [Doc. 1154 at 3 n.2]. Plaintiffs are individuals, who, as individuals, brought suit against the State Defendants, purportedly to address their individual rights—unlike the State Defendants, who have been sued in their official capacities regarding the conduct of official business. They must be required to adhere to their discovery obligations. State Defendants do not seek emails (or documents) of a personal nature, only those relevant to their claims here.

[2] This production consists of missing attachments to emails produced on July 22, 2021. State Defendants requested these five documents nearly three weeks ago, on July 29.

the Dominion BMD System, holding that their motions and attached declarations were "insufficient" to meet the "rigorous" standard for granting a preliminary injunction on an "'in principle,' or quasi-facial challenge to the legality of the BMD system." [Doc. 768]. The Court also granted in part Plaintiffs' emergency motions for expedited discovery, with an eye toward new, forthcoming, preliminary injunction motions. [Doc. 775].

In its order for expedited discovery, the Court ordered that the State Defendants respond to Plaintiffs' requests for production within seven (7) days and produce any responsive documents within fifteen (15) days, permitting "a short extension of the response time for a discrete set of responsive documents," if necessary. *Id.* at 2. State Defendants complied, producing thousands of pages of responsive documents, including but not limited to hash verification and acceptance tests of election equipment, Dominion operations manuals, policies and procedures for operation of Dominion equipment shared with county officials, data from the Fulton County Pilot audit, and voter complaints from the June 2020 Primary. In the meantime, State Defendants also prepared and filed responsive briefing (and expert and fact-witness declarations) to Plaintiffs' *three separate* preliminary-injunction motions.

On August 21, 2020, this Court held a discovery conference on the progress of the expedited discovery it ordered. [Doc. 810]. State Defendants informed the Court they intended to seek discovery related to the preliminary-injunction motions, *Id.* at 59:3–11, but had not yet been able to serve such discovery in the time since Curling Plaintiffs' motion had been filed less than 36 hours before (on August 19, 2020 at 11:55pm).[3] The Court directed the parties to attempt to come to agreement on the issue. *Id.* at 79:2–21. With the hearing scheduled to commence in just under three weeks, State Defendants served thirteen (13) targeted document requests on Curling Plaintiffs' counsel the same day (August 21, 2020, at 2:35 PM), and requested Curling Plaintiffs' expedited treatment of those requests, consistent with the timelines imposed upon State Defendants. [Doc. 805-1]. Unable to obtain *any* response from Curling Plaintiffs, State Defendants filed an emergency motion for expedited discovery on August 24, 2020.

Ultimately, on September 4, 2020, Curling Plaintiffs produced a single nine-page email thread in response to State Defendants' discovery requests. **Ex. B**. The next day, on September 5, 2020, State Defendants requested that

---

[3] Likewise, State Defendants at this time were unable to craft discovery targeted to Coalition Plaintiffs' motion(s) because they *still* had not been filed.

Curling Plaintiffs confirm: (1) whether their document production was complete as to all requests for production; (2) whether the response to Request No. 11 was complete (seeking documents that support Dr. Halderman's claim that "If attackers breached any of them to attack the DRE-based system, those attackers may continue to have such access under the BMD-based system."); (3) if any documents were being withheld; and (4) which request the single email chain was responsive to. **Ex. C**. On September 7, 2020, counsel for Curling Plaintiffs stated they had "produced all responsive documents … identified for your requests based on a reasonably diligent search" and that no documents had been withheld. Counsel refused to identify the request to which it was responsive or, as State Defendants had proposed in the alternative, to explain how the search was conducted to identify the single responsive document. Given the lack of response, and the rapidly approaching hearing, State Defendants requested the parties confer on September 8, 2020. Curling Plaintiffs refused. The Court denied State Defendants' request to cross-examine the Plaintiffs under oath on the 9th, [Doc. 884], the hearing began on 10th.

      ii.    *Curling Plaintiffs' July 22, 2021 Production.*

On July 22, 2021, Curling Plaintiffs produced 57 documents in response to State Defendants' discovery requests. All of the documents were

10

designated under the terms of the protective order (42 of them designated Attorneys' Eyes Only), all were emails in the possession of only one Plaintiff (Ms. Price),[4] all had email addresses redacted, and all were produced as PDF's preventing State Defendants from aligning the messages with date, sender, and recipient without manual review. *See also* [Doc. 1149 at 4–6]. Nearly *all* of the documents produced pre-date the Plaintiffs' September 4, 2020 production of the single email chain they determined was responsive— only four are more recent, two dated October 4, 2020, one each dated September 11, 2020 and November 8, 2020. This raises questions of *when*

---

[4] Curling Plaintiffs now dispute that this is the case. [Doc. 1151 at 8]. But as the State's counsel explained on July 29, 2021: "It appears from a short review that these documents are from only Donna Price, she is included on every single email produced and I did not identify any other plaintiff similarly situated. Can you please confirm whether that is the case or whether you have searched/produced documents from all of your clients?" Curling Plaintiffs did not answer the question in writing, but in the meet-and-confer confirmed that the documents were located solely from Ms. Price's Verified Voting email account. Nor does Curling Plaintiffs' contention that "dozens of non-email messages" are contained in the production align with the facts. [Doc. 1151 at 10]. First, Curling Plaintiffs did not produce documents with the metadata and file types they have demanded of State Defendants, all are pdfs precluding State Defendants from searching "file types." Second, exactly two (2) documents are not emails: screenshots of Ms. Price's precinct card and absentee ballot status from the 2020 Primary; four (4) others are screenshots of Facebook comments emailed from Ms. Price to Ms. Curling in July 2020. Two documents, or even six if being generous, is hardly "dozens." Though, inclusion of the five attachments produced yesterday gets them closer to a dozen.

11

were these documents collected and *why* were these more-recently produced documents not responsive last year?

Curling Plaintiffs now apparently concede that documents were collected previously but withheld until July 22, 2021—"there may be some documents *previously collected* that are responsive to the broader scope of discovery applicable today." [Doc. 1151 at 8] (emphasis added). Indeed, there may be. An explanation of Curling Plaintiffs' search and review process is required.

Also pertinent, and even more troubling, is that three of the documents are emails responding to the single email chain that *Plaintiffs determined was responsive* in September 2020. The Court may recall the exhibit from the last preliminary-injunction hearing, Ex. B (originally filed at [Doc. 887-3]), in which the founder of Verified Voting, Dr. David Dill,[5] and the Chair of the Board of Verified Voting, Barbara Simons, along with Dr. Stark, Marilyn Marks, Donna Curling, Donna Price, and other interested parties debated the principles of Risk-Limiting Audits and their application to BMD voting systems which utilize optical scanners. Missing from that document—but produced in July of this year—are further discussions on the issue which

---

[5] Dr. Dill is an Emeritus Professor at the Stanford University School of Engineering.

12

essentially make the points State Defendants have been arguing for at least two years now: any computer can be hacked (particularly with unfettered access to the equipment), interventions improve the rate of voters' review of ballots, and a wholesale attack is exceedingly unlikely and would be difficult (if not impossible) to accomplish in the face of the Risk-Limiting Audit.

Notwithstanding that Curling Plaintiffs removed the designation for this chain of emails for purposes of the hearing, they designated their recent production of responses to the same email chain and discussing the same topic as "Attorneys' Eyes Only." *See* CURLING-0010166–67; -10153; 10127. Accordingly, State Defendants limit their discussion herein and file these documents separately under seal.

That these documents, responsive to the same email chain *Plaintiffs deemed responsive* were not produced before or otherwise only discovered in July of this year strains credulity. That no more-recent responsive documents exist (according to counsel's representation of completeness) is equally questionable. Even the smattering of documents that have been produced highlight the reality of this case: Plaintiffs are simply using this process as a fishing expedition and, in the course of doing so, are spreading misleading and incomplete information to undermine voter confidence as they have done

13

before. *See, e.g.*, [Doc. 935 at 71:11–22] (comparing a *de minimis* software update under EAC review to the Boeing 737 MAX).

For example, one document indicates that Ms. Greenhalgh—permitted to view Attorneys' Eyes Only material at Coalition Plaintiffs' insistence, [Doc. 884]—was assisting in publicizing "newsworthy" articles.[6] CURLING-0010114–15. Another is similar, stating that a national news organization was interested in a story on information apparently gathered for this case. CURLING-0010113. It is unknown what Ms. Price's initial email may have actually said, it was apparently either blank or cut off in production, an issue State Defendants raised to Curling Plaintiffs nearly three weeks ago but have not received a response.

State Defendants believe these failures are sanctionable, but in light of the Court addressing discovery during today's Conference, State Defendants do not move for sanctions at this time but reserve all rights to do so. Simply put, counsel for Curling Plaintiffs did not conduct a reasonable inquiry into the completeness of their production, likely withheld responsive and relevant

---

[6] As it turns out, Free Speech for People—Ms. Greenhalgh's employer—has recently litigated cases seeking to impose hand-marked paper ballots in North Carolina and Pennsylvania. *See, e.g.*, https://freespeechforpeople.org/naacp-pennsylvania-state-conference-v-boockvar/ and https://freespeechforpeople.org/voting-rights-advocates-file-appeal-to-stop-the-use-of-unsafe-and-insecure-electronic-voting-machines-in-north-carolina/.

14

documents, and failed to timely supplement their production. *See Delta/Airtran Baggage Fee Antitrust Litigation*, 846 F. Supp. 2d 1335, 1349–50 (N.D. Ga. 2012) (discussing obligations of counsel to conduct a reasonable inquiry).

B. <u>Coalition Plaintiffs' Production</u>.

Documents requested from the Coalition Plaintiffs included: any financial documents indicating a diversion of resources by CGG in relation to this litigation; any communications and documents referencing the litigation and the Coalition Plaintiffs' challenges to the election system, including minutes from the Coalition's board of directors; any communications and documents supporting various allegations the Coalition made in their Complaint; and any documents supporting allegations that Coalition is forced to divert resources for this litigation.

On June 4, 2021, Coalition Plaintiffs produced thirty-five documents to State Defendants in response to their discovery requests. Although those documents do not reveal much, they support State Defendants repeated argument that Coalition Plaintiffs lack standing. Six documents are IRS Form 990s for Rocky Mountain Foundation, Inc., from 2014 to 2016, and for Coalition for Good Governance from 2017 to 2019. Also included were articles of amendment and amended bylaws for the name change for Coalition for

Good Governance, and its amended bylaws. Others simply reflect Ms. Marks's opinion and legislative advocacy regarding various voting systems. At most, these documents are responsive only to requests of the Coalition for Good Governance, as an organization (and even then they still demonstrate no diversion of resources). But not a single document has been produced by the individual Coalition Plaintiffs. In any event, the documents demonstrate only that Coalition is not "divert[ing] resources *from* its mission," to combat electronic voting systems in Georgia, "[t]hat is its mission." *Shelby Advocates for Valid Elections v. Hargrett*, 947 F.3d 977, 982 (6th Cir. 2020) (emphasis added); *see also Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020) (noting that organizations must demonstrate what they are diverting resources away *from* to establish resource diversion).

## CONCLUSION

State Defendants recognize the resources expended by this Court in seeking to reach an efficient resolution of this case. However, the discovery currently at issue is far beyond the scope of Rule 26 and certainly beyond the abbreviated discovery the Court intended. State Defendants urge this Court to rule on the standing issues before the current pace of discovery becomes even more burdensome. If not else, doing so will clearly define what claims

Plaintiffs are proceeding on (and what claims are viable in light of recent, binding precedent), since Plaintiffs have refused to narrow or tailor their claims as this Court suggested. [Doc. 1088] (citing *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2007). Moreover, the only discovery needed at this juncture—that which goes to Plaintiffs' standing—requires *Plaintiffs'* participation in discovery (if it requires any discovery at all).

Respectfully submitted, this 19th day of August 2021.

    */s/ Carey A. Miller*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Javier Pico-Prats
Georgia Bar No. 664717
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly

Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **LOCAL RULE 7.1(D) CERTIFICATION**

I certify that this State Defendants' Notice of Filing Regarding August 19, 2021 Hearing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.  Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

<em>/s/Carey A. Miller</em><br>Carey A. Miller