IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., **Plaintiffs,** v. BRAD RAFFENSPERGER, ET AL., **Defendants.** | Civil Action No. 1:17-CV-2989-AT |

**BRIEF IN SUPPORT OF COALITION PLAINTIFFS' MOTION TO SEVER, GRANT MOTION FOR ATTORNEY'S FEES, GRANT MOTION FOR SANCTIONS, AND ENTER FINAL JUDGMENT ON SEVERED CLAIMS**

## Introduction

The Coalition Plaintiffs file this Brief in Support of their Motion to Sever the "DRE Claims" from the "Post-DRE Claims," each defined in the Motion, which severance will create two cases (the "DRE Case" and the "Post-DRE Case"); to grant the Coalition Plaintiffs' Motion for Attorney's Fees (Doc. 595); to grant the Plaintiffs' Joint Motion for Sanctions (Doc. 623); and to enter final judgment in the DRE Case.

Granting of the Motion is well within the Court's wide discretion and completely consistent with this Court's prior orders addressing the unlikelihood of further litigation over the DRE Claims. (*See generally* July 30, 2020 Order

1

Granting in Part and Denying in Part Defendants' Motion to Dismiss, Doc. 751, at 15-25)  Severance will permit resolution of the DRE Case and streamline the adjudication of the Post-DRE Case, ensuring to the greatest extent possible the just, efficient, and speedy resolution of these controversies.   Fed. R. Civ. P. 1.

The Coalition Plaintiffs will in Part I explain that the DRE Claims should be severed from the claims in the Post-DRE Case because that portion of the Coalition Plaintiffs' Third Amended Complaint (Doc. 226) that asserts the DRE Claims (as defined herein) has been resolved with finality in Plaintiffs' favor by the granting of the preliminary injunction, the State Defendants' compliance with the preliminary injunction, the State's abandonment of any defense to the DRE Claims on the merits, and the State's decision to not take a timely appeal.  Moreover, the DRE Claims are distinct from the Post-DRE Claims, and the resolution of the former need not and should not await the resolution of the latter.  In Parts II and III, the Coalition Plaintiffs will explain that, once the DRE Claims are severed, the pending Motions for Attorney's Fees and Sanctions, which pertain to litigation of the DRE Claims and have already been extensively briefed, should be considered on their merits and granted.  In Part IV, the Coalition Plaintiffs will show that, once the DRE Claims are severed and the pending sanctions and attorney fee motions are resolved, final judgment should be entered in the DRE Case.

I.     **MOTION TO SEVER**

Rule 21 of the Federal Rules of Civil Procedure is entitled "Misjoinder and Nonjoinder of Parties" and states, in pertinent part:

> On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

One recognized purpose of severing claims is to allow for the entry of final judgment on a portion of the case that has been fully adjudicated.  As Professors Wright, Miller, and Kane explain: once a claim has been severed, "it proceeds as a discrete unit with its own final judgment, from which an appeal may be taken." 7 FED. PRAC. & PROC. CIV. § 1689 (3d ed.).  *See also E.S. v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley,* 135 F.3d 566, 568-69 (8th Cir. 1998) ("When a single claim is severed from a lawsuit, it proceeds as a discrete, independent action and the trial court may render final, appealable judgment on the severed claim, notwithstanding the continued existence of unresolved claims in the remaining action. *See* Fed.R.Civ.P. 21.");  *Gaffney v. Riverboat Services of Indiana, Inc.,* 451 F.3d 424, 441 n.17 (7th Cir. 2006) (same).  Under Rule 21, "'the court has virtually unfettered discretion in determining whether or not a severance is appropriate.'" *Fisher v. Ciba Speciality Chemicals Corp.,* 245 F.R.D. 539, 541 (S.D. Ala. 2007) (quoting *Grisby v. Kane,* 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003)).

Severing the DRE Claims is in the best interest of the parties and the Court because they involved discrete challenges to Georgia's DRE machines, which have

been resolved.  The claims that would be severed are a subset of the original claims brought by the Coalition Plaintiffs in their TAC prior to the passage of HB316, and are limited to the challenges to the DRE machines themselves.  Thus, the claims severed into the DRE Case would *not* include challenges to the voter registration database or the related challenge to the State's continuing use of electronic pollbooks without updated paper backups.  *See* Order, Doc. 751 at 15-25 (explaining that those challenges remain live in light of State's continued use of challenged E-Net voter registration database and electronic pollpads after statewide implementation of Dominion ballot marking devices ("BMDs")).   The definition of "DRE Case" in this Motion – by design – includes only the Plaintiffs' resolved challenges to the DRE machines themselves, and the requested relief severs those challenges from the ongoing and as-yet-unresolved challenges to equipment, electronic databases, and systems that the State continued or continues to use following the cessation of DRE use.

There is no doubt that the DRE Case, as defined, requires no further litigation and is discrete and severable from the Post-DRE Case. In its August 15, 2019 Order Granting in Part Plaintiffs' Motions for Preliminary Injunction, the Court  directed the State Defendants to "refrain from the use of the GEMS/DRE system in conducting elections after 2019."  (Doc. 579 at 148).  The State did not appeal this Order.  Instead, the State complied with the Court's preliminary

injunction by conducting pilot elections as the Court mandated, after which the State decertified the DREs and moved them to storage. The State then began using the Dominion BMD Voting System for all elections after January 1, 2020, including the statewide 2020 primary elections, which is exactly what the Court's injunction required. (Doc. 751 at 19-20). The State disclaimed any intent to seek relief from the Court's order by returning to the use of DREs again. Recognizing this, the Court stated in its Order on Defendants' Motion to Dismiss: "Defendants are correct that all of this precludes the possibility of the DRE machines being used again in Georgia elections. And the Court has indicated that it does not intend to grant any further relief relating to the use of the old DRE voting machines." (*Id.* at 20).

Reinforcing that the claims to be severed into the DRE Case are now resolved, the State Defendants have repeatedly argued that the DRE Claims are both moot and discrete from the Post-DRE Claims. *E.g.* Doc. 645-1 at 10 (stating that claims about DREs were moot and separate from BMD claims; "the new [Dominion] system replaces the *entirety* of the existing DRE system" (emphasis in original)).[1] The State Defendants bluntly aver in their answer to Coalition's First Supplemental Complaint: "Coalition Plaintiffs' claims regarding the DRE/GEMS

---

[1] This assertion is partially incorrect in that the new system makes use of the voter registration database from the old system in its electronic pollbooks. *See* Order, Doc. 751 at 15-25.

5

voting system are moot." Doc. 779 at 3. More recently, the State Defendants stated: "Defendants continue to maintain [Plaintiffs' DRE Claims] are moot." (Doc. 1066 at 5 n.3).

The Coalition Plaintiffs do not oppose the State Defendants' position that the DRE Claims are moot: the Coalition Plaintiffs prevailed in obtaining the Court's preliminary injunction, the State has complied with the preliminary injunction, and the State has now abandoned any intention of seeking to be relieved from that Order.

Severance of the DRE Claims is appropriate because it will not produce a situation in which there will be two ongoing cases proceeding awkwardly and inefficiently in parallel but under different case numbers. On the contrary, there will be no further need for any substantive adjudication of the DRE Claims (whether severed or not), apart from resolving the ancillary motions for fees and sanctions.

In response to this Motion, the State Defendants can be expected to raise several arguments, none with merit. First, the State Defendants may claim that granting severance and entering final judgment on the DRE Claims is inconsistent with this Court's previous Order declining to dismiss as moot Plaintiffs' challenges to the "DRE system". (Doc. 751, at 24–25.) However, as discussed above, by virtue of its definition of "DRE Claims," this Motion does not seek to sever into

the DRE Case those claims relating to the voter registration database and the electronic pollbooks that the Court recognized were still the subject of a live dispute. (*Id*.)  The same challenged voter registration database and very similar electronic pollbooks are still in use by the State, so the claims relating thereto – which are distinct from the claims challenging the DRE machines themselves - remain to be resolved and can be resolved if they are left in the Post-DRE Case.

Second, the State Defendants may argue that Plaintiffs have continued to seek discovery relating to the DRE/GEMS system even after the State's abandonment of the DRE machines, and that Plaintiffs' arguments for such discovery should somehow amount to a concession that the DRE Claims are not, in fact, distinct.  This is a red herring.  Plaintiffs readily agree that, if evidence is only probative of a claim that has been resolved, then it is neither discoverable nor admissible because such evidence is not "of consequence in determining the action." Fed. R. Evid. 401(b).  But if the DRE/GEMS evidence is probative of a fact of consequence to a claim that is continuing to be litigated in the Post-DRE Case,  then that evidence is still properly subject to discovery even though it *also* relates to claims that have already been decided.  Severance of resolved claims, by itself, says nothing about what kinds of evidence may still be relevant to claims that remain alive.

Third, the State Defendants have previously sought, and may seek again now, to suggest that Plaintiffs are not entitled to fees because (supposedly) it was legislation, not the preliminary injunction barring the use of DREs in this litigation, that caused the State to replace the DREs with the BMDs. (*See, e.g.,* Doc. 700 at 8). This argument (though wrong) simply confirms the merits of this Motion to Sever by conceding that there is nothing left to litigate regarding the use of DREs. The question of what caused the State to move from DREs to BMDs is irrelevant to the issue of severance, and is instead (at most) only relevant to the issue of whether Plaintifffs are entitled to attorney's fees, which has been thoroughly briefed before now and is touched on again below.[2]

In sum, there is no valid objection to severance. Severing the DRE Claims into a DRE Case that is separate from the Post-DRE Case will not prejudice the Defendants in the least. Doing so will streamline this litigation by allowing final judgment to be entered on the DRE Claims, leaving only the claims remaining in

---

[2] The argument that this litigation was not responsible for the move to BMDs also is directly contradicted by public statements by Defendant Raffensperger, who has himself openly blamed (or credited) this Court for forcing the State to stop using the DRE machines: "We stood up a new voting system, new voting machines in less than six months. And that was really because we had an activist judget that said you can't use the old DRE machines. And so we had to do that for the first primary that we had coming up." Rev.com, Inc., *Georgia Secretary of State Brad Raffensperger Press Conference Transcript: Announces Hand Recount* (Nov. 11, 2020), https: //www.rev.com/blog/transcripts-announces-hand-recount. More recently, after the recount of the Presidential election, Secretary Raffensperger said publicly that replacing the DREs, which had no paper trail at all, was "a tremendous godsend," noting that the DRE system would have provided no paper ballot to recount. https://youtu.be/YGsK0HrIbeM at 46:45.

the Post-DRE Case before this Court for resolution.  Severing the DRE Claims will also allow the Court to address the pending Motions for Attorney's Fees and for Sanctions that relate to the litigation that occurred in connection with the severed claims.  The proper disposition of these pending motions is discussed next.

## II.   THE COURT SHOULD GRANT THE COALITION PLAINTIFFS' PENDING MOTION FOR ATTORNEY'S FEES

With the severing of the DRE Case from the Post-DRE Case, Plaintiffs' fully briefed Motions for Attorney's Fees will unquestionably be ripe for this Court's determination.

Coalition Plaintiffs' August 29, 2019 Motion for Attorney Fees has been thoroughly briefed by all parties on several occasions.  *See* Motion for Attorney's Fees and Expenses (Doc. 595), Detailed Specification (Doc. 630), State Defendants' Response (Doc. 660), Fulton Defendants' Response (Doc. 661), Reply (Doc. 705).  Coalition Plaintiffs claim $1,483,422 in attorney fees and $415,959 in expenses, or a total award of $1,899,381 (Doc. 705 at 42).  These claimed fees pertain to all work done in the course of challenging the DRE/GEMS system.

On May 26, 2020, this Court denied without prejudice Coalition Plaintiffs' 2019 Motion for Fees, stating that "Plaintiffs may renew their request once a final judgment has been entered on their claims or if circumstances change that would support an interim award."  (Doc. 733 at 7).  On October 13, 2020, Coalition Plaintiffs renewed their fee request, citing as a changed circumstance the State's

9

dramatically improved financial condition. (Doc. 967). On October 19, 2020, this Court granted Defendants a six-week extension of time to respond to Plaintiffs' renewals. (Doc. 979). On December 2, the State Defendants filed a consolidated responses to Plaintiffs' renewals (Doc. 1022), and the Fulton County Defendants filed separate responses to each renewal (Doc. 1023, Doc. 1024). On December 15, 2020, the Coalition Plaintiffs and the Curling Plaintiffs filed Replies. (Doc. 1029, Doc. 1030).

The Coalition Plaintiffs' position is that the Court has had the authority to grant the Plaintiffs' Motions for Attorneys Fees as an interim award prior to the entry of final judgment ever since the State decided to comply with, rather than to appeal, the 2019 preliminary injunction against the continued use of the DRE/GEMS system. Plaintiffs' position has been that their success was "indefeasible"[3] at that time because further litigation would have had an impact on Plaintiffs' entitlement to fees. Once the DRE Claims are severed and final judgment is entered in the DRE Case, the ripeness of the Plaintiffs' Motions for Attorneys Fees will be beyond question, and should be decided in Plaintiffs' favor for all the reasons already briefed and now before the Court.

---

[3] *See Richardson v. Penfold,* 900 F.2d 116, 119 (7th Cir. 1990) (Posner, J.) ("Once a plaintiff obtains substantial relief that is not defeasible by further proceedings, he can seek interim fees and the district court has the power to award them.").

It is no matter that the Court's preliminary injunction entitling the Plaintiffs to fees will never formally be made into a permanent injunction. The distinction between preliminary and permanent relief has no impact on Plaintiffs' entitlement to fees in this instance, since the preliminary relief is effectively permanent due to the State's decision to comply with, and not appeal, the preliminary injunction. On this issue, Judge William Pryor's decision for the Eleventh Circuit in *Common Cause, Georgia v. Billups,* 554 F.3d 1340 (11th Cir. 2009), is particularly instructive. In *Common Cause,* the district court preliminarily enjoined the enforcement of Georgia's voter identification law. After the entry of the preliminary injunction, the legislature repealed the law and replaced it with another voter identification law. The plaintiffs amended their complaint to add a challenge to the new law. The district court dismissed as moot the plaintiffs' challenge to the repealed law and rejected on the merits the plaintiffs' challenge to the new law. *Id.* at 1347. The district court, however, granted the plaintiffs' motion for attorney's fees based on the prior preliminary injunction of the repealed law.

On appeal, Georgia argued that the plaintiffs were not entitled to fees because, although they had been granted a preliminary injunction, "they did not succeed on the merits of their complaint." 554 F.3d at 1356. The Eleventh Circuit rejected that argument, holding that "'a preliminary injunction on the merits . . . entitled one to prevailing party status and an award of attorney's

11

fees.'" *Id.* (quoting *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1558 (11th Cir. 1987)). The Court ruled that the plaintiffs had "materially altered their relationship with the election officials" because the "injunction prevented Georgia from enforcing the requirement of photo identification for in-person voting." 554 F.3d at 1356.

The attorney's fees issues have been fully addressed in prior briefing and the Coalition Plaintiffs will not discuss the merits of the Motions again here. The Coalition Plaintiffs do, however, invite and welcome oral hearing on the motions.

### III. THE COURT SHOULD GRANT PLAINTIFFS' JOINT MOTION FOR SANCTIONS

On October 11, 2019, the Coalition Plaintiffs and the Curling Plaintiffs filed a Joint Motion for Sanctions (Doc. 623) seeking monetary sanctions of $297,368.49 against the State Defendants based on their obstructive discovery tactics in connection with the GEMS database. On August 10, 2020, this Court denied the Joint Motion for Sanctions without prejudice, stating that it would "take up the issue of imposing purely monetary sanctions for alleged past discovery abuses at the conclusion of this case along with other fee issues, as appropriate." (Doc. 771).

On April 9, 2021, the Plaintiffs jointly renewed their Motion for Sanctions. (Doc. 1083). On May 3, 2021, the Court entered an Order denying the Motion for Sanctions "at this time" but did not reach the merits of the Motion. (Doc. 1087 at

12

2). The Court gave two reasons for not reaching the merits. First, the Court noted that it had previously indicated that it would address sanctions at the "conclusion of the litigation along with its consideration of any fee issues." (*Id.* at 1). Second, the Court stated that the "frozen, post-election status of discovery in this case without a more specific presentation of the State Defendants' alleged current bad faith violations" "does not provide adequate factual or legal grounds by itself for the Court's imposition of discovery sanctions at this time." (*Id.* at 2). The Court stated in a footnote: "This is not to say that the Court would not revisit the issue of sanctions (i.e. attorney's fees) at a later time, as appropriate." (*Id*. n. 1).

Coalition Plaintiffs respectfully submit that, following severance of the DRE Claims into a separate DRE Case, it will then be timely and appropriate for the Court to revisit, consider, and grant the Motion for Sanctions. The Motion for Sanctions is not related to any ongoing discovery or any active controversy that would remain in the Post-DRE Case; instead, the Motion for Sanctions is based solely on the State Defendants' false statements to the Court and to the Plaintiffs about the GEMS database in the summer of 2019, falsities that the Plaintiffs documented in their Joint Motion and exposed in open court in the cross-examination of the State's CIO, Merritt Beaver. *See generally* Doc. 623 at 3-9 (facts documenting the State Defendants' false statements). The Motion for Sanctions should be granted once the DRE Claims are severed.

13

## IV. THE COURT SHOULD ENTER FINAL JUDGMENT IN THE DRE CASE

Having severed the DRE Claims and granted the ancillary fee and sanctions motions, the Court should then enter final judgment in the DRE Case because there will be nothing left to litigate in that case.  As noted above, the Defendants and the Plaintiffs agree that the DRE Claims are resolved, and the Court has indicated that it has no intent to grant any further relief relating to the DRE Claims.   The DRE Claims should be dismissed as moot for the reasons stated, including Defendants' compliance with the preliminary injunction, abandonment of any defense on the merits, and election not to pursue a timely appeal.  Thus, once the DRE Claims are severed from the rest of the case, and the pending motions adjudicated, final judgment should be entered in the DRE Case.

Respectfully submitted this 6th day of October, 2021.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC |  (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 386-6856 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

**CERTIFICATE OF COMPLIANCE AND SERVICE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

I also certify that on October 6, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown