IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

CIVIL ACTION

FILE NO. 1:17-CV-2989

## DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO SEVER AND GRANT MISCELLANEOUS RELIEF

On October 6, 2021, Coalition Plaintiffs filed a Motion asking this Court to sever their "DRE Claims" from their "Post-DRE Claims," award them attorney's fees and monetary sanctions, and enter a final judgment (on an unknown basis) on their "DRE Claims." [Docs. 1182 and -1]. Curling Plaintiffs joined in that motion in a one-paragraph Notice, [Doc. 1188], filed minutes after the Deposition of Plaintiff Jeffrey Schoenberg was suspended.[1] The State Defendants and Fulton County Defendants respond jointly here, showing this Court that the motion should be denied.

---

[1] As the Court is aware, counsel instructed Mr. Schoenberg not to answer questions regarding Curling Plaintiffs' pending DRE claims during that deposition, apparently in reliance on their yet-to-be-filed Notice.

The first reason the Court should deny the motion is the most fundamental: Plaintiffs lack Article III standing and always have. Plaintiffs seek to sever the "DRE Claims" and the "Post-DRE Claims" as discrete, independent actions, but Plaintiffs are still required to have standing to bring those claims, whether as a single action or separate, discrete actions. They do not, and this precludes any alleged benefits about case management or judicial economy. Instead, the Court should dismiss the case in its entirety for lack of standing.

Second, Plaintiffs are seeking to sever only their challenges to "the DRE machines themselves," [Doc. 1181-1 at 4], but, based on Plaintiffs' own strategic decisions, such severance is not as clean cut as Plaintiffs describe. Indeed, prior to the severance motions, Plaintiffs argued that the DRE Claims were inexorably related to those challenging the BMDs. Specifically, at Plaintiffs' behest, this Court authorized discovery of DRE voting machines so that Plaintiffs would have "access to potentially relevant evidence in connection with [their] security, breach, and data integrity claims" pertaining to their new complaints. *See* [Doc. 751 at n.12]. And Plaintiffs continue to claim alleged vulnerabilities with the DRE/GEMS system as a basis for their "Post-DRE Claims." If issues related to the old DRE/GEMS system remain intertwined in the "Post-DRE Claims," as Plaintiffs have alleged on a number

of occasions when they thought it benefited them, severance would not promote efficiency—it would cause this Court to entertain two separate suits with overlapping factual and legal issues.

Finally, Plaintiffs' consolidated requests for a final order (on an unknown basis) and an award of fees and monetary sanctions—both dependent on grant of severance—is improper. Discovery has not concluded, and the parties have not filed motions for summary judgment. Regardless, a motion to sever claims is not the procedural mechanism for this Court to enter a final judgment and entertain claims for fees.

## INTRODUCTION

The Court is aware of the long and tortured history of this case, dating back to the summer of 2017 when Plaintiffs—like many who challenged the 2020 elections—brought suit to declare that year's special election for the 6th Congressional District void *ab initio*. [Doc. 1-2 at pp. 66, 69, and 81]. Since then, the case has grown only more complex, working its way through five different complaints, at least ten different motions for preliminary injunction, and various rounds of "expedited" discovery. Pertinent here, immediately following the Court's August 2019 Order granting in part and denying in part Plaintiffs' preliminary injunction motions regarding the DREs, the Curling Plaintiffs sought leave to file their Third Amended Complaint, [Doc. 581],

with the Coalition Plaintiffs following thereafter with their First Supplemental Complaint, [Doc. 600].

State Defendants opposed those amended and supplemental pleadings, explaining that "the Plaintiffs should be required to bring a new case if they wish to bring what amounts to two new lawsuits against the State Defendants." [Doc. 607 at 8]. Nonetheless, the Court granted leave for those pleadings, at least in part "for ease of reference to the existing record in this case, to the extent it is relevant to Plaintiffs' new claims." [Doc. 626]. Plaintiffs, at least until the past couple of weeks, continued to maintain their assertion of relevance for that reason—that somehow, some unknown and unproven compromise of the prior system had found its way to the State's BMD System. *See, e.g.*, [Docs. 619-2 at ¶ 3, 628 at ¶¶ 176–181]. And Plaintiffs continued to seek (and obtain) extensive examination and discovery of the DRE/GEMS System even following their amended and supplemental pleadings.[2] *See, e.g.*, [Docs. 668, 745].

_____

[2] As this Court is aware, Defendants continue to store more than 30,000 DREs because of Plaintiffs' claims about those machines. Notably, Plaintiffs have had access to and imaged several DREs (in addition to their access to GEMS database files and memory cards), but have presented no evidence whatsoever that those DREs were compromised in any way. Defendants can only assume that the lack of evidence of any compromise is what led Plaintiffs to again alter the direction of this case.

In the time since this Court's orders on the 2020 motions for preliminary injunction, a significant amount of election (and non-election) litigation has resulted in binding precedent that demonstrates Plaintiffs lack standing here. *See* [Docs. 1066, 1094, 1105, 1117]. And, to be clear, Plaintiffs lack standing as it pertains to both their DRE *and* BMD claims. Now, at the effective end of the current discovery schedule, Plaintiffs reversed their prior position, seeking to sever their DRE claims—which have been moot for nearly two years and for which they continue to lack standing. That they chose not to do so when faced with Defendants' motions to dismiss, when this Court advised them to tailor their claims, [Doc. 1088], or before seeking extensive (and costly) discovery and preservation for the GEMS/DRE System is concerning. Moreover, it begs the question of why Plaintiffs vehemently opposed certifying for appeal this Court's order on Defendants' motions to dismiss their complaints. [Doc. 1050]. The instant motion is about one thing and one thing only: Plaintiffs' fear that their legally infirm claims will be dismissed before they can extract millions of dollars from taxpayers for their speculative journey through Georgia's voting system over the past four years.[3]

---

[3] That this journey led to many of the post-2020 claims of hacking of the voting system is notable, although not necessarily relevant to this motion.

## ARGUMENT AND CITATION TO AUTHORITY

I. **This Court lacks jurisdiction under Article III to allow Plaintiffs' claims to continue.**

"Federal courts are not 'constituted as free-wheeling enforcers of the Constitution and laws.'" *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020) (quoting *Initiative and Referendums Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc)). Instead, Article III of the United States Constitution requires a litigant to establish he or she has standing by proving "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Moreover, a litigant must support each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

According to Coalition Plaintiffs' Third Amended Complaint, requiring voters to use Georgia's DRE touchscreen voting machines "violates the voters' constitutional rights to have their votes recorded in a fair, precise, verifiable, and anonymous manner, and to have their votes counted and reported in an accurate, auditable, legal, and transparent process." [Doc. 226, ¶ 2]. But Plaintiffs' allegations fail to demonstrate how they will be injured in a personalized manner. Plaintiffs Laura Digges, William Digges, and Ricardo

Davis do not vote on the voting machines, and they have never personally experienced any injury beyond their speculative fears about the voting machines. *See* [Doc. 327-1 at 40-48]. Similarly, Plaintiffs Donna Price and Donna Curling choose to vote absentee by mail. [Docs. 387-5, ¶ 12; 387-6, ¶ 3]. Voters who do not suffer "difficulty in voting for [their] preferred candidate or otherwise participating in the political process" do not have standing. *Jacobson*, 974 F.3d at 1246. Moreover, all of this ignores that "[i]t is an individual voter's choice whether to vote by mail or in person," *Wood*, 981 F.3d at 1307 (citation omitted), whether that choice is exercised for convenience or because of Plaintiffs' speculative and hypothetical fears.

Plaintiffs are instead in the role of "concerned bystanders," in which case "an injury in fact has not occurred." *Gardner v. Mutz*, 962 F.3d 1329, 1342 (11th Cir. 2020). "'Article III standing,' the Supreme Court has emphasized, 'is not to be placed in the hands of concerned bystanders,' because they 'will use it simply as a vehicle for the vindication of value interests.'" *Id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013)) (alterations adopted). Despite all of their language about the importance of voting, Plaintiffs have not identified anything they challenge about the DRE/GEMS system—or the BMD system for that matter—that is not

"common to all members of the public." *Wood*, 981 F.3d at 1314 (quoting

*Lujan*, 504 U.S. at 575).

Furthermore, Plaintiffs' alleged harm is purely conjectural and

hypothetical, not concrete nor certainly impending. Plaintiffs' claims

regarding DRE voting machines fail to establish a concrete injury that

actually exists, "as opposed to being hypothetical or speculative." *Salcedo v.*

*Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019). Despite having had access to

actual DREs used in elections in Georgia for more than a year, Plaintiffs have

not shown that DRE machines have been hacked or their votes altered—or

some harm that has befallen them, personally. Only their irrational fear that

"vulnerabilities" make the system insecure, which is insufficient for standing.

*Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir.

2021) (plaintiff's claims were premised on a fear that "he *could* suffer future

injury from misuse of the personal information disclosed during the cyber-

attack (though he has not yet), and this risk of misuse alone is enough to

satisfy the standing requirement."). Likewise, Plaintiffs cannot manufacture

standing by pointing to their refusal to use voting machines and voting

absentee-by-mail as an injury—such self-inflicted harm does not amount to

an injury in fact. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931

(11th Cir. 2020). Even after having access to the State's DREs and the KSU

server for a significant amount of time, and more recently the BMDs the State is using, Plaintiffs' have yet to identify any actual compromise that has altered votes or otherwise caused any injury relevant to the claims in this case.

As this Court is aware, the Eleventh Circuit Court of Appeals and other district courts in this circuit have recently rejected generalized grievances of this nature—and in some cases where those plaintiffs literally parroted Plaintiffs' claims here. *See, e.g.*, *Wood*, 981 F.3d 1307 (finding claim that absentee voters were treated as a preferred class over in-person voters a generalized grievance); *Wood v. Raffensperger*, No. 1:20-cv-5155-TCB, 2020 WL 7706833 (N.D. Ga. Dec. 28, 2020) (finding Plaintiff's claims of hacked voting machines—citing the *Curling* district court orders and Plaintiffs' filings—and preferential treatment of absentee ballots a generalized grievance); *Pearson v. Kemp*, No. 1:20-cv-4809-TCB, Motions Hrg. Tr., ECF 79 (N.D. Ga. Dec. 7, 2020) (holding plaintiffs' claims based on the theories of the *Curling* litigation alleged harms that were one and the same with every Georgia voter, and thus insufficient to confer standing). This case should be no different. Plaintiffs, as mere bystanders, are simply seeking to impose their value interests as a matter of constitutional law—not seeking redress for a particularized injury. Such a generalized grievance is insufficient, "no

-9-

matter how sincere" Plaintiffs' policy positions may be. *Wood*, 981 F.3d at 1314.

Because Plaintiffs do not have standing to bring the DRE Claims or the Post-DRE Claims, the Court should dismiss the claims rather than sever the claims.[4] And this conundrum is precisely why this Court considered certifying its order on Defendants' motions to dismiss at the beginning of this year: whether to proceed with discovery or whether doing so would be "an enormous expenditure of resources that … would be properly stayed until we have a decision from the Eleventh Circuit." [Doc. 1053 at Tr. 17:13–18]. Now, Plaintiffs want to have it both ways, seeking final judgment on claims they have not proven and foreclosing Defendants' ability to test those claims under a conventional standard, i.e. *not* a preliminary injunction.

## II.   Plaintiffs fail to identify the claims they seek to sever and, even accepting their vague description, severance is inappropriate.

As Coalition Plaintiffs note, determining whether to sever claims is largely left to the discretion of the district court. *Fisher v. Ciba Specialty Chem. Corp.*, 245 F.R.D. 539, 541 (S.D. Ala. 2007). Exercising that discretion requires considering "whether the claims arise from the same transaction or

---

[4] To avoid a lengthy brief on the issue of standing, Defendants incorporate their prior briefing on standing in this case, which includes the lack of the Coalition for Good Governance's organizational standing.

occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied." *Id.* (citing *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004)). However, determining whether to sever claims—and whether doing so will cause duplicative proceedings concerning the same law and facts—necessarily requires determining which claims are to be severed in the first instance. *See Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (noting that severed claims must be "discrete and separate"). Plaintiffs do not (and cannot) do so because their complaints contain no claims for relief challenging "the voter registration database" or otherwise regarding paper pollbook backups, and thus there are no such claims to sever from the purported "DRE Claims." Even if such a claim were enmeshed or intertwined into the entirety of their complaints in some way, that would counsel *against* severance.

Four claims regarding the DRE System remain pending before the Court: Coalition Plaintiffs' Substantive Due Process, [Doc. 226 at 66–68], and Equal Protection Claims, *id.* at 69–71; and Curling Plaintiffs' Substantive Due Process, [Doc. 627 at 28–30], and Equal Protection Claims, *id.* at 31–33. Neither of these claims are susceptible to Plaintiffs' vague description of

claims concerning DREs that "include challenges to the voter registration database" or the use of electronic pollbooks without an additional paper pollbook backup. [Doc. 1182-1 at 4]. Coalition Plaintiffs' DRE Claims challenge *only* the "AccuVote DREs," [Doc. 226 at ¶¶ 170, 177], a term *they* defined to be a subset of "Georgia's Voting System."[5] Likewise, Curling Plaintiffs define Georgia's DRE Voting System to be only the DREs themselves. [Doc. 627 at ¶ 3]. And Plaintiffs' motion does not supply any concrete definition of those claims either.

With this lack of clarity, Plaintiffs are essentially seeking to amend their complaints through a severance motion. Not only is this procedurally improper, but it also will leave the Defendants guessing as to what, exactly, they are defending against in either of the severed suits. Put another way, Plaintiffs explain that "challenges to the voter registration database" and paper pollbook backups would remain in the current case, [Doc. 1182-1 at 4], but they provide no explanation as to what those claims *are* and their complaints provide no alternative.

---

[5] Notably, even the broader "Voting System" term only includes the AccuVote DREs, optical scanners, electronic pollbooks, and the GEMS database, [Doc. 226 at ¶ 59], not the voter registration database and not back-up pollbooks. Defendants recognize this Court has disagreed in the past, but the scope of the relevant complaints is critical to deciding Plaintiffs' motion to sever because this Court must determine which claims are in the complaints to decide whether or not to sever those claims.

In any event, even if Plaintiffs' DRE Claims encompass the voter
registration database and paper pollbook back-ups, that makes severance
even thornier. Those claims are now (presumably) subsumed within the
claims Plaintiffs *do not* seek to sever. In other words, based on Plaintiffs' own
representations, a significant common question of fact would now be
intertwined in both the "DRE Claims" and "Post-DRE Claims." Plaintiffs
created the conundrum they now find themselves in, and a motion to sever is
an improper and prejudicial way to untangle their knotty ball.

Moreover, regardless of the scope of Plaintiffs' actual claims, common
questions of law remain as to both sets of claims, both on the merits (such as
the application of the *Anderson/Burdick* framework to electronic voting
systems) and on jurisdictional matters (*e.g.,* Plaintiffs' standing to pursue
their generalized grievance against hypothetical concerns of hacking or
manipulation of electronic voting systems). Curling Plaintiffs agree,
previously arguing their BMD claims are "legally identical" to their "DRE-
related claims." [Doc. 651 at 17]; *see also id.* at 26 ("Curling Plaintiffs' DRE
claims are not moot so long as some of the evils associated with the DRE
Voting System are left 'substantially undisturbed'" by transition to the BMD
System.). And, if severed, these same common questions will need to be

determined by this Court while discovery continues and State Defendants'

appeals advance toward resolution.[6]

### III.   Plaintiffs' other miscellaneous relief is insufficiently vague and improperly consolidated with relief on which it depends.

In addition to seeking severance, Plaintiffs also seek a final judgment

on an unknown basis for a clear reason: so they can avoid this Court's prior

rulings reserving decisions on an award of attorney's fees and monetary

sanctions until the end of this litigation.[7] Defendants cannot adequately

respond to this request for "final judgment" without understanding the legal

basis under which it is sought and reserve all rights to do so if and when

necessary.[8] But regardless, under any circumstance, both of these requests

for relief are reliant on this Court's determination of severance and thus are

not ripe unless and until this Court decides severance is appropriate.

Even if Plaintiffs' request for a final judgment were ripe though,

Plaintiffs now concede that their DRE Claims are moot—depriving this Court

---

[6] Oral argument has been set for the consolidated appeals for the week of January 24, 2022.

[7] Defendants have briefed the sanctions and fees issues numerous times before and do not re-hash the lack of underlying substance on those requests here. To preserve all rights, Defendants incorporate their prior responses to those motions.

[8] State Defendants intend to appeal any final order on Plaintiffs' DRE claims because they have lacked standing from the beginning of this lawsuit.

of jurisdiction to enter a final order on those claims. Moreover, Plaintiffs lack standing on their DRE Claims just as they do the BMD Claims and this Court should address that lack of standing as well, especially while significant resources are being expended on not-so-abbreviated discovery. *See Gardner*, 962 F.3d at 1338 ("Because we can dispose of this case on standing grounds alone, we needn't—and won't—address either mootness or the merits."); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–94 (1998) (disapproving cases reaching merits over jurisdictional objection).

Put simply, "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex Parte McCardie*, 7 Wall. 506, 514 (1868)); *see also Jacobson*, 974 F.3d at 1245 ("If at any point a federal court discovers a lack of jurisdiction, it must dismiss the action."). Consequently, even if the "DRE Claims" are severed, this Court cannot enter an unknown "final order" on claims the Court lacks jurisdiction to entertain. Moreover, entering a "final order" on those claims would be highly prejudicial to Defendants, precluding discovery on Plaintiffs' non-existent theories of manipulation of the DRE System while at the same time permitting them to utilize that order to argue the BMD System has been

infected by "undetected malware or erroneous coding" transferred from the

DRE System. [Doc. 628 at ¶ 181]; *see also* [Doc. 619-2 at ¶ 3].

Respectfully submitted this 1st day of November, 2021.

/s/Vincent R. Russo
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Joshua B. Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander F. Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Javier Pico-Prats
Georgia Bar No.  664717
jprats@robbinsfirm.com
Melanie L. Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
Robbins Alloy Belinfante
Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane F. LaRoss

OFFICE OF THE COUNTY
ATTORNEY
Kaye Woodard Burwell
Georgia Bar No. 775060

/s/ David R. Lowman
David R. Lowman
Georgia Bar No. 460298
Cheryl Ringer
Georgia Bar No. 557420

OFFICE OF THE COUNTY
ATTORNEY
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
(404) 612-0246
(404) 730-6324 (fax)

*Counsel for the Fulton Defendants*

Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone:  770-434-6868

*Counsel for the State Defendants*

## **CERTIFICATE OF COMPLIANCE**

I certify that Defendants' foregoing Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

This 1st day of November, 2021.


*/s/ Vincent Russo*
Vincent R. Russo