IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

    Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.*,

    Defendants.

CIVIL ACTION NO.
1:17-cv-2989-AT

**ORDER**

This matter is before the Court on a discovery dispute [Docs. 1190 and 1195] between the Curling Plaintiffs and the State Defendants. The State Defendants seek to depose the Curling Plaintiffs about their political advocacy work relating to elections, election administration, and election technology in Georgia. According to the State Defendants, they seek to pursue this line of questioning as a means of exploring the Curling Plaintiffs' motivations for bringing this lawsuit, their potential lack of standing, and their credibility as witnesses. In addition to asking the Curling Plaintiffs about their advocacy work, the State Defendants seek to ask the Curling Plaintiffs about their specific conversations with other individuals, including elected officials, and organizations through the course of their advocacy work. The Curling Plaintiffs object to this line of questioning on the grounds that

it is not relevant and concerns information that is privileged under the First Amendment.

The Court held a teleconference with the parties on October 20, 2021 to discuss this discovery dispute. The Curling Plaintiffs each submitted affidavits after the teleconference, and both parties submitted briefs in support of their respective positions. In their filing, the Curling Plaintiffs argue that allowing the State Defendants to inquire about their advocacy-related communications would produce a chilling effect on their associational rights in violation of the First Amendment. The Curling Plaintiffs represent that if those communications were disclosed, they would not feel free to share their opinions. They further contend that disclosure could affect the willingness of legislators, experts, organizations, and voters, to associate with them. (Doc. 1190 at 3–4); (*see, e.g.*, Docs. 1190-1 ¶ 6; 1190-2 ¶¶ 5, 9; and 1190-3 ¶ 9). By the same token, this disclosure could impact the Curling Plaintiffs' personal ability to access and associate with legislators, voters, and other individuals and the efficacy of their advocacy.

In their response, the State Defendants argue that they are entitled to ask the Curling Plaintiffs about their motivations for bringing suit because the answers to these questions could shed light on whether the Curling Plaintiffs have standing. For example, the State Defendants suggest that the Curling Plaintiffs would lack standing if their "true motivation" for bringing suit was to "favor preferred political candidates or parties," "overturn the loss of their favored political candidate," or "simply advance their personal feelings for election technology." (Doc. 1195 at 9.)

Under Fed. R. Civ. P. 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "An individual . . . may invoke the First Amendment privilege in response to a Rule 26 discovery request when it can show – with an 'objectively reasonable probability' – that 'compelled disclosure will chill associational rights.'" *Flynn v. Square One Distrib., Inc.*, No. 6:16-mc-25-ORL-37TBS, 2016 WL 2997673, at *2 (M.D. Fla. May 25, 2016) (quoting *All. of Auto. Mfrs., Inc. v. Julie L. Jones*, No. 4:08-cv-555, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013)). "A party asserting a privilege or other protection against discovery normally has the obligation to establish, by affidavit of a competent witness or other evidence, all facts essential to the establishment of the privilege or protection." *Id.* at *3. To determine whether the discovery should be allowed, a court must balance the burden the information sought would impose on the deponent's associational rights with the party seeking the discovery's interest in disclosure. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010).

As a threshold matter, the affidavits submitted by the Curling Plaintiffs raise an objectively reasonable probability that the disclosure of their private communications would chill their exercise of First Amendment rights. *Cf. id.* at 1163 ("The declaration creates a reasonable inference that disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications that are essential to effective association and expression."). Therefore, the burden shifts to the State Defendants to show that

3

their interest in disclosure outweighs any First Amendment harm to the Curling Plaintiffs. To do so, the State Defendants must show that the information they seek is "highly relevant to the claims or defenses in the litigation." *Id.* at 1161. In addition, the State Defendants' request must "be carefully tailored to avoid unnecessary interference with protected activities," and the information they seek "must be otherwise unavailable." *Id.*

As the State Defendants argue, the Curling Plaintiffs' motivations for bringing suit could be a highly relevant consideration for purposes of determining whether the Curling Plaintiffs have standing. That said, the State Defendants can still explore the Curling Plaintiffs' motivations for bringing suit without interfering with their associational rights by requiring them to disclose the identities of persons with whom they had private conversations. Accordingly, the Court finds that the State Defendants' interest in disclosure does not outweigh the potential First Amendment harm to the Curling Plaintiffs to the extent they seek to ask the Curling Plaintiffs about the identities of *specific* individuals or organizations with whom they spoke, or the particular offices with which any of those individuals may have been associated. The Curling Plaintiffs thus will not be required to answer any questions on these topics. The Curling Plaintiffs also will not be required to disclose any information that could potentially reveal the identities of individuals, organizations, or officeholders with whom they spoke, such as the county in which an individual was elected or the divisions of the state in which an individual was employed.

However, bearing in mind that the potential harm to the Curling Plaintiffs' associational rights must be balanced against the State Defendants' interest in disclosure, the Court finds that the State Defendants may ask the Curling Plaintiffs relevant questions about the substance of conversations they have had through the course of their advocacy work *generally*. For example, the State Defendants could ask the Curling Plaintiffs whether they have told anyone that the purpose of the present litigation is to ensure certain election outcomes or the enactment of their personal policy preferences.[1] The Court provides the following non-exhaustive list of permissible topics as guidance to the parties:

- whether they talked to any elected officials or election administrators in the course of their advocacy work;
- whether they talked to elected officials at the state level as opposed to elected officials at the federal or local levels;
- whether they talked to individuals other than elected officials or election administrators in the course of their advocacy work;
- whether they regularly attended political party functions; and
- whether their concerns related to the present litigation are about the outcomes of elections or the candidates who are being elected.

---

[1] The State Defendants are not permitted to ask the identity of anyone with whom the Curling Plaintiffs spoke about these topics. However, the State Defendants are permitted to ask whether the Curling Plaintiffs spoke with elected officials generally about these topics.

5

The Court advises the State Defendants that relevance will be narrowly construed considering the First Amendment rights at stake. *See Perry*, 591 F.3d at 1161 (noting that when First Amendment rights are implicated "the party seeking the discovery must show that the information sought is *highly relevant* to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)") (emphasis added).

    **IT IS SO ORDERED** this 5th day of November, 2021.

                                      **Honorable Amy Totenberg**
                                      **United States District Judge**