IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

### COALITION PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXTEND THE SCHEDULE

State Defendants concede at the very outset of their response that an extension of the fact-discovery period and subsequent deadlines should be granted. (Doc. 1210, at 1 ("State Defendants reluctantly agree that the current discovery schedule should be adjusted."); *see also id*. at 4.) No other parties oppose the motion, including the Fulton County Defendants, who instead support it. Accordingly, the Court's analysis should end here; the motion should be granted.

As for the other concerns that State Defendants raise in their response—(1) that any extension should not be restricted to completion of pending productions, depositions, and discovery disputes; and (2) that standing should be revisited and the severance motion ruled upon—Coalition Plaintiffs make the following reply.

1

I.   **State Defendants' Miscellaneous Concerns About How Discovery Should Be Conducted During The Requested Extension Period Are Unwarranted**

Although nominally opposed to the motion, State Defendants "disagree that such an extension should be limited in a manner that vitiates the benefit of an extension in the first place." (Doc. 1210, at 4.) Accordingly, State Defendants appear to invite broader modifications of discovery than Coalition Plaintiffs have requested. Specifically, State Defendants:

- object to being required to proceed with the current scheduling of Dr. Halderman's deposition, which they wish to postpone;

- object to continuation of the current fifteen-day response periods for written discovery requests and non-party subpoenas;[1]

- appear to object to being unable to serve new document requests if depositions reveal the existence of additional documents; and

- suggest a temporary stay of discovery deadlines to ensure that all pending discovery, including depositions and pending document

---

[1] These shortened response periods were established by stipulation in mid-2019 in advance of the then-scheduled preliminary injunction hearing. (Doc. 410-2, at 2 (1st bullet point), *adopted at*, Doc. 418.)

2

productions, can still timely occur, regardless of how the Court rules on the motion.

Coalition Plaintiffs' respond to these concerns as follows:

First, Dr. Halderman's deposition timing is a matter for Curling Plaintiffs to address. Coalition Plaintiffs take no position on this objection.

Second, Coalition Plaintiffs oppose State Defendants' proposal to end the shortened fifteen-day deadline for responses to written discovery. The deadline for propounding any new written discovery is expired, and Coalition Plaintiffs have not proposed to re-open that deadline to permit parties to serve new discovery requests.  Instead, the whole purpose of the requested extension of discovery is simply to allow already-served discovery to be concluded, not to expand discovery by reopening it and allowing new interrogatories, requests for admission, and document requests.  Response deadlines for already-served written discovery requests are all either extended already or apply to responses that are already overdue and are now subjects of open discovery disputes that remain to be resolved. The fifteen-day response period applies to no operative requests, thus eliminating the stipulated fifteen-day response period is at this point unnecessary.

Third, Coalition Plaintiffs oppose re-opening the period for serving written discovery solely to accommodate State Defendants' speculation that depositions

may reveal the existence of hitherto unknown documents. If such a thing were to happen, then a remedy already exists—any party can initiate a discovery dispute (which would be timely under the proposed extension) focused on inadequate disclosures or an incomplete earlier productions, or could move to compel supplementation of discovery responses. With all these remedies available to all parties during the extension period under the terms of the extension requested by Coalition Plaintiffs, there is no need to permit parties to serve new written discovery requests after the deadlines for doing so have already closed. The point of the extension motion is not to drag the case out endlessly, but rather is to give all parties time they need to take depositions and to receive and digest the discovery they timely served within the current (but now expired) window for serving discovery requests, so that this four-year old case can finally proceed to resolution.

Finally, Coalition Plaintiffs believe that a temporary stay of discovery deadlines is unnecessary (unless the Court denies the extension motion.) Again, the whole point of the requested (limited) extension of the discovery period is just to give the parties sufficient additional time to do only the things that State Defendants say they are concerned about—completing pending document productions, completing fact-witness depositions, and resolving those discovery

disputes that now exist or may hereafter arise related to those things. Only if the Court were to deny the full length of the requested extension would Coalition Plaintiffs agree that a shorter stay is necessary to permit all parties to complete their presently outstanding productions and depositions.

## II. Standing Should Not Be Revisited At This Juncture

State Defendants regrettably insist on turning this motion into *yet another* opportunity to urge this Court to revisit its several previous decisions that Plaintiffs have demonstrated sufficient injuries-in-fact to confer standing upon them to pursue their constitutional claims on the merits. State Defendants' insistence is especially incongruous here, as they themselves emphasize that standing "is a pleading problem. It is not a discovery problem." (Doc. 1210, at 8.) Considering standing in the pleading context, this Court has already upheld the sufficiency Coalition Plaintiffs' First Supplemental Complaint in a well-reasoned and thorough opinion that denied dismissal because standing exists. (Doc. 751, at 8–14, 34–41.)

State Defendants have invested much in arguing that 2020 general election cases represent a change in the Eleventh Circuit's conception of standing. But in their zeal for reciting *Wood v. Raffensperger*'s statement that a harm shared by millions of voters equally should be regarded as a generalized grievance, 981 F.3d 1307, 1315 (11th Cir. 2020), Defendants have lost sight of the fact that Coalition

Plaintiffs' claims to standing are based on numerous alleged and substantiated injuries-in-fact that are unrelated to and *completely unaffected by* any holding that may or may not have been made in any of the 2020 election cases. For example, Coalition for Good Governance has both pled and thoroughly substantiated its own direct organizational standing according to the requirements of *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1340–42 (11th Cir. 2014), and *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020). (Doc. 226, at 54–57; Doc. 628, at 64–66; Doc. 1071-2, at 2–6). The Eleventh Circuit's recognition of organizational standing under these cases is completely unaffected by any of the individual-standing rulings in *Wood v. Raffensperger*, *Pearson v. Kemp*, 1:20-cv-04809-TCB (N.D. Ga. Nov. 15, 2020), and other 2020 election cases upon which State Defendants so heavily rely.

Even on the subject of individual standing, Coalition Plaintiffs have pled and substantiated particularized injuries-in-fact—suffered by individual Plaintiffs and by individual members of Coalition for Good Governance—that match the *precise* kinds of injuries the Eleventh Circuit has previously found to confer standing in voting rights cases, such as individualized injuries of being unable to vote a secret ballot, having to buy a postage stamp, and being unable to vote in-person in a home precinct or to mark an absentee ballot on election day, (Doc. 1071 &

Exhibits thereto). *See, e.g.*, *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (inconvenience of having to show identification); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (being unable to vote in one's home precinct).

None of these earlier standing cases were overruled by the 2020 election decisions. To the contrary, *Wood* explicitly contrasts the particularized injury that was asserted in *Common Cause* in order to distinguish the insufficient generalized grievance suffered by Wood, which "does not affect Wood as an individual," from the sufficiently particularized kind of harm—requiring a voter to produce photo identification—that conferred standing in *Common Cause*. State Defendants want to focus the Court on generalized voter apprehensions, on hacking and malware, and on the supposed need for proof that identified individuals' votes weren't counted. But such injuries, while highly relevant to a *merits* determination (and thus highly appropriate matters for discovery), are simply not necessary in order to satisfy a *standing* inquiry. Standing and the merits are distinct. Coalition Plaintiffs have pled and shown many injuries-in-fact for purposes of standing that are exact analogs of the individualized harms that the Eleventh Circuit found to be sufficient to confer standing in *Common Cause*, *Charles H. Wesley*, and similar cases. State

Defendants' relentless attempt to focus the Court on *Wood* and the other 2020 cases is pure misdirection. Standing has thoroughly been established in this case.

In any event, it is not necessary, nor appropriate, for the Court to rehash its sound standing determinations now by delving *yet again* into an assessment of injuries that have already been pled and established and properly found to be sufficient on multiple occasions. It is certainly not necessary or appropriate to engage in such an exercise simply in order to resolve Coalition Plaintiffs' procedural motion for an extension of the fact-discovery period and subsequent deadlines.

### III. The Question Of Severance Is Unrelated To The Need For An Extension Of Discovery

Finally, State Defendants argue that the pending severance motion should be decided before an extension of the discovery period for remaining claims in granted. This argument is wrong because the entire point of the request for severance is to allow the Court to conclude litigation over the severed claims. State Defendants' suggestion that discovery may remain to be done on DRE-related claims that they themselves have long argued are moot is incoherent. There is simply no logical or practical connection between the request to sever resolved claims, on one hand, and the scope of discovery that remains to be done with respect to unresolved claims, on the other hand. The Court should reject State

Defendants' attempt to link the severance decision to the extension decision, for the two issues are completely distinct.

## CONCLUSION

Coalition Plaintiffs have established good cause for an extension of the fact-discovery period and subsequent deadlines. State Defendants can claim no prejudice from such an extension and, in fact, concede that "the current discovery schedule should be adjusted." (Doc. 1210, at 1.) Accordingly, the Court should grant the requested extension by adopting an amended schedule that establishes the new deadlines set out in Coalition Plaintiffs' proposed order. (Doc. 1204-1.)

Respectfully submitted this 15th day of November, 2021.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC


3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges, Ricardo Davis & Megan Missett*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on November 15, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.  In addition, pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                                                                                */s/ Robert A. McGuire, III*
                                                                                                 Robert A. McGuire, III