**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

v.                                                              Civil Action No. 1:17-CV-2989-AT

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

### MEMORANDUM IN SUPPORT OF LIMITED MOTION TO INTERVENE BY R. KYLE ARDOIN, in his official capacity as the LOUISIANA SECRETARY OF STATE

The Louisiana Secretary of State, R. Kyle Ardoin, in his official capacity, (the "LA Secretary of State") submits this memorandum in support of its Limited Motion to Intervene. As will be demonstrated below, the LA Secretary of State has a compelling interest in accessing the sealed July 2021 report filed by Dr. J. Alex Halderman in this litigation. The LA Secretary of State will be able to maintain the confidentiality of this report, and this limited intervention will not retard or otherwise disrupt the progress of this litigation.

### Factual Background

Following an analysis conducted by Dr. Halderman, his July 1, 2021, expert report details multiple potential security flaws in the Dominion ICX ballot marking device machines, including possible vulnerabilities that could permit attackers to

{N4495448.1}                                      1

install malicious software on the voting system. The State of Louisiana also uses the Dominion ICX system for its early voting. Dr. Halderman references this report in a September 21, 2021, declaration filed with the Court (Doc. 1177-1, page 1). However, the underlying report has been designated as Confidential under the Court's Protective Order (Doc. 477). According to Dr. Halderman's declaration, the Dominion ICX machine could also contain other possible critical flaws that have yet to be discovered. (Doc. 1177-1, page 2)

In his declaration, Dr. Halderman also acknowledges the findings in his report have implications outside of Georgia. Specifically, Dr. Halderman mentions Louisiana's own use of the Dominion ICX machines for early voting. (Doc 1177-1, page 3). Further, he acknowledges that the lack of access to his analysis may impair the ability of states such as Louisiana to take action on the potential vulnerabilities he identified in ICX machines, including updating software and making changes to procedures: "Continuing to conceal those problems from those who can-and are authorized to-address them, to the extent possible, serves no one and only hurts voters (and heightens the risk of compromise in future elections)." (Doc. 1177-1, page 3)

Dr. Halderman's declaration makes clear that informing responsible parties about the ICX's potential vulnerabilities is becoming more urgent by the day. (Doc.

1177-1, page 4) Further, Court records also support the fact that the level of analysis and investigation by Dr. Halderman, and other experts, of the Dominion ICX voting system has never occurred previously. Another expert, Dr. Hursti, points out "[t]o my knowledge, no jurisdiction has permitted, and Dominion has not permitted, independent research, academic or otherwise, to be conducted on its systems, which greatly limits the number of people with any experience with the Dominion systems." (Doc. 964, page 47) Given the likelihood that no other detailed analysis of these machines is available to the LA Secretary of State, Louisiana has a critical and timely interest in this specific report. Access to Dr. Halderman's report would enable Louisiana to review his findings, and possibly mitigate some of these potential vulnerabilities in connection with the upcoming 2022 elections.

## REQUESTED RELIEF

This motion seeks access to the July 1, 2021, report by Dr. Halderman of his analysis of the Georgia election system, as referenced above. Currently, this report is deemed Confidential under this Court's Protective Order (Doc. 477).

At this time, Louisiana is one of sixteen states that use the Dominion ICX voting system. The state currently leases 780 ICX machines to conduct early voting in each election. Dr. Halderman specifically identifies Louisiana as one of the states

at risk from the potential cybersecurity threats discovered contained in his report and referenced in his September 21, 2021, filed declaration. (Doc. 1177-1, page 3).

The findings in Dr. Halderman's report appear to address potential cybersecurity flaws and vulnerabilities with the machines which, if exploited, could potentially overthrow the intent of the voter. In the additional declaration filed by Dr. Halderman in September 2021, it is made clear that the report has implications outside of the state of Georgia and its use of the ballot marking device function but broadly to include the Dominion ICX voting system as a whole. (Doc. 1177-1, pages 2-3)

The contents of this report remain under by seal by this Court. The Secretary seeks access to this report for purpose of discovering unknown potential vulnerabilities and taking the requisite mitigation measures and procedural steps to address any potential security flaws discovered in the Dominion ICX voting system used by Louisiana for its early voting. The request for this information is time sensitive and critical to conducting early voting in the state in light of the upcoming 2022 elections and recent legislative changes.

Louisiana will hold elections in spring of 2022. Municipal elections will be held on March 26, 2022, for the primary election and April 30, 2022, for the general election. Early voting will begin on March 12, 2022, for the primary election and

April 16, 2022, for the general election, with some limited early voting taking place prior to those dates for nursing home residents.

In the fall of 2022, the state of Louisiana will conduct elections in accordance with the federal election date of November 8, 2022, with early voting scheduled for beginning on October 25, 2022. The state will hold a general election on December 10, 2022, with early voting beginning on Saturday, November 26, 2022, with limited early voting taking place prior to those dates for nursing home residents.

Access to this report is also critical to conform to the legal requirements recently enacted by the Louisiana legislature, which established a voting system commission "to further the preservation of democracy by strengthening the state's commitment to maintaining the faith, integrity, and trust in election, voting, and ballot-counting processes, to provide the highest level of election security and functionality ." (La. R.S. 18:1362.1(A)(2)). As the commission is tasked with making a recommendation to the LA Secretary of State for any new voting system or equipment to be used in Louisiana, it is necessary that the LA Secretary of State is fully-informed of any potential cybersecurity concerns or exposures with its current system as the state moves forward to evaluate and ultimately procure a new voting system. The independent and impartial expertise provided in this report is invaluable to the state in identifying voting systems that encapsulate the

requirements set forth by the legislature to provide the highest level of security and functionality as well as upholding public trust in the process. This information would remain subject to confidentiality by the LA Secretary of State pursuant to the terms of any signed Acknowledgement and Agreement to Be Bound (Exhibit A, Doc. 477, page 19).

The LA Secretary of State asks that the Court recognize the urgent need for Louisiana to avail itself of critical cybersecurity information related to the security and integrity of voting for the LA Secretary of State to address any possible threats and vulnerabilities in the Dominion ICX machines, in advance of the spring and fall 2022 elections and in compliance with the recently enacted requirements by the Louisiana legislature.

## ARGUMENT

**I.   The Louisiana Secretary of State should be allowed to intervene for the limited purpose of accessing the report.**

Pursuant to Federal Rule of Civil Procedure 24(b) a court may grant permissive intervention if three conditions are met: (1) movant must show an independent ground for jurisdiction; (2) motion must be timely; and (3) claim must have a claim or defense and main action must have a question of fact or law in common. *Johnson v. Mortham,* 915 F.Supp. 1529 (N.D. Fla. 1995). Courts generally construe this provision broadly. *United States ex rel. McGough v. Covington Techs.*

*Co.,* 967 F.2d 1391, 1394 (9th Cir. 1992). However, in this instance the state of Louisiana is only seeking a limited intervention to receive access to judicial records and not be made a party to the litigation. Given this limited purpose, Rule 24(b) dictates only that the motion be timely. *E.g., Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473–74 (9th Cir. 1992).

The LA Secretary of State's motion is timely, satisfying the four relevant factors "(1) the period of time during which the putative intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the degree of prejudice to the existing parties as a result of the would-be intervenor's failure to move to intervene as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his position is denied; and (4) the presence of unusual circumstances militating either for or against a determination that the application is timely." *Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1365 (11th Cir.1984).

While the litigation in this present case has been ongoing since 2017, the issue of potential cybersecurity vulnerabilities with the Dominion ICX machines ballot marking device voting system was brought before the Court in 2020. (Doc. 964, pages 2-3) More recently, however, in September 2021, Dr. Halderman's filing before the Court raised possible concerns with the Dominion ICX system, noting

that it is likely to contain other flaws, and specifically named Louisiana as one of the affected states. (Doc. 1177-1, page 3). Further, Dr. Halderman noted the urgency for states to access the information in order to address potential flaws through mitigation efforts as well as procedural changes.

It has been a little over two months since that declaration was filed with the Court and Louisiana was specifically identified. (Doc. 1177-1). This motion will not prejudice nor delay any subsequent motions filed by either the Plaintiffs or Defendants in this case. This motion is intending only to provide limited access to information in Dr. Haldeman's report to the LA Secretary of State, which is already accessible to both parties. Denying this limited intervention would be extremely detrimental to the state of Louisiana. The state of Louisiana is seeking intervention only as to protect its early voting system from identified potential security vulnerabilities.  In order to do so, it must be allowed to see the information contained in the report, as referenced by Dr. Halderman. (Doc. 1130-1; Doc. 1177-1). Further, the fact that the state will be conducting elections in both the spring and fall of 2022 only heightens the need that this motion is timely and the release of that information is extremely time-sensitive.

## II. Under the presumption of the common law right-of–access to Court records, the LA Secretary of State is permitted to view the report.

Courts have long recognized the presumption of public access to judicial documents. *Callahan v. United Network for Organ Sharing,* 2021 U.S. App. LEXIS 34201; 2021 WL 5351863, __ F.4th __ (11th. Cir. Nov. 17, 2021). Courts have held that access is "an essential component of our system of justice" and "instrumental in securing the integrity of the process." *Id. (quoting Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001))*.* This right attaches to judicial records and the contents of Dr. Halderman's July 1, 2021, report "were used in connection with merits briefing such that the public right of access attaches." *Callahan v. United States HHS*, 2020 U.S. Dist. LEXIS 204550 (N.D. Ga., Sept. 29, 2020). His report and in-depth analysis of the Dominion ICX voting machines and potential security flaws and vulnerabilities are a critical component to the Plaintiffs' argument.

This presumption of access is not absolute, so Courts must determine whether good cause exists, balancing the interests of one party to keep the information confidential and the other party's right of access. *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007). The Court looks at a number of factors in weighing the competing interests, including "whether allowing access would

impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id.*

The LA Secretary of State recognizes the importance of protecting against sensitive voter and cybersecurity information being widely disseminated to the public. However, Louisiana's need for access to Dr. Halderman's report is distinguishable from a public interest, and Louisiana's proposal for limiting its access and protecting the report more than satisfies any concern about unwarranted disclosure. The LA Secretary of State continues to employ the Dominion ICX voting systems in conducting early voting in the Louisiana. It is absolutely necessary to address any and all potential flaws with the machines prior to the spring of 2022 elections. The potential injury to over 3,000,000 voters in the state of Louisiana and the protection of their right to vote outweighs the fact that this information is currently only available to the parties in this litigation. A less onerous alternative in this situation is to grant access to the LA Secretary of State pursuant to this Court's Protective Order.

Further, Dr. Halderman, based upon his own findings, cites to this Court the need to make this information available to interested parties:

> Public disclosure ensures that all jurisdictions that rely on the vulnerable equipment will be aware of the problems and able to begin mitigating them. It informs law enforcement and national security groups about forms of attack that they should be on the lookout for. It helps jurisdictions that are procuring new equipment make better informed purchases. It ensures that vendors of other equipment that may suffer from similar problems are on notice. (Doc. 1130-2, pages 1-2)

In balancing the interests of the parties here, the state of Louisiana should be afforded access to this information as it continues to be withheld from the public. To deny the state access to critical information regarding possible issues impacting their own election system is outside the scope of what this sealed information was intended to protect.

## III. The LA Secretary of State Will Comply With All Confidentiality Measures Set By This Court in Its Protective Order

Pursuant to the Minute Entry filed October 7, 2021, this Court set out narrow parameters in which it would consider disclosure of Dr. Halderman's report. (Doc. 1184, pages 1-2) By way of this motion, the LA Secretary of State is making a formal request for that information.

Pursuant to this Court's Protective Order (Doc. 477, page 8), the LA Secretary of State seeks limited disclosure of the sensitive information contained in Dr. Halderman's report for the reasons discussed above. The LA Secretary of State has read and agrees to sign the terms of the "Acknowledgement and Agreement to Be Bound" ("Exhibit A" Doc. 477, page 19) should this Court grant access to the report. The LA Secretary of State accepts full compliance with the terms laid out by this Court.

As chief election official, the LA Secretary of State's office has the necessary protocols and security measures in place to safeguard sensitive voter information, sensitive technology and equipment systems, and cybersecurity information. The state of Louisiana currently operates under similar agreements for the leasing of software, firmware, and hardware, maintaining the confidentiality required of such agreements with private entities. Further, this state has entered into data sharing information agreements with federal and state agency partners that maintain the requisite privacy protections and maintain that this information shall not be subject to disclosure under state public record law. (La. R.S. 44:4.1(b)(37); *see also* La. R.S. 44:1(b); *see also* La. R.S. 44:3.2; *see also* La. 18:154).

All data contained in the report shall be used by the LA Secretary of State exclusively for the purpose of addressing and mitigating potential vulnerabilities in

the Dominion ICX machines used by the state, including any corresponding component or software of the voting system. The sharing of the report shall adhere to all applicable federal and state laws governing the confidentiality of the agreement. The state has established safeguards to protect the confidentiality of the data and limit access to the individuals named below. The confidential data will be stored in a place secure from any unauthorized access. The state will comply with any necessary reporting, storage, or disposal requirements to comply with the orders of this Court to safeguard the data.

The state also maintains that the information will be strictly limited in access with the Department itself, limited only to high-level officers who oversee the relevant elections, operations, and information and technology divisions, and only these authorized users shall have access to shared data for the purpose of addressing any potential vulnerabilities in the current operation of the Dominion ICX machines for early voting in the state of Louisiana. Louisiana law also requires cybersecurity training for key personnel (*see* La. R.S. 18:31). Access to the report shall be limited to the following individuals:

- The LA Secretary of State
- The First Assistant Secretary of State
- The Commissioner of Elections

- The Elections Program Administrator

- The Director of Information Technology

- The Chief Information Officer

## CONCLUSION

In closing, the LA Secretary of State takes very seriously the concerns noted by this Court:

> The Plaintiffs' national cybersecurity experts convincingly present evidence that this is not a question of "might this actually ever happen?" – but "when it will happen," especially if further protective measures are not taken. Given the masking nature of malware and the current systems described here, if the State and Dominion simply stand by and say, "we have never seen it," the future does not bode well. (Doc. 964, page 146)

For the foregoing reasons, the LA Secretary of State requests the Court grant the Limited Motion to Intervene and grant access to the report containing Dr. Halderman's analysis of the Dominion ICX voting system.

Respectfully submitted,

_____
Chad V. Theriot

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point-size of 14.

_____
Chad V. Theriot