**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DONNA CURLING, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action File No. |
| v. | ) | 1:17-CV-02989-AT |
| | ) | |
| BRAD RAFFENSPERGER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION TO INTERVENE FOR LIMITED PURPOSES

Fox News Network, LLC ("FNN") seeks to intervene in this lawsuit pursuant to Federal Rule of Civil Procedure 24 for the limited purpose of obtaining access to a document kept under seal pursuant to the Court's protective order. As demonstrated below, FNN has a substantial interest in obtaining access to the sealed expert report of Dr. J. Alex Halderman (submitted July 1, 2021) because it addresses questions that are common to a claim or defense in a separate action in which FNN is a defendant. Specifically, Dr. Halderman's report is the result of his thorough analysis of the Dominion voting system used in Georgia in the 2020 election, and FNN is the defendant in a lawsuit brought by Dominion in which Dominion has relied upon Dr. Halderman's expertise for the proposition that no votes were

changed through a Dominion voting system in the 2020 elections. Compl. ¶ 68, *U.S. Dominion, Inc. v. Fox News Network, LLC*, No. N21C-03-257 EMD (Del. Superior Court Mar. 26, 2021) ("*Dominion v. FNN*") (alleging that "Professor J. Alex Halderman, the Director of the University of Michigan's Center for Computer Security & Society . . . told [FNN] explicitly, 'There is absolutely no evidence, none, that Dominion Voting Machines changed any votes in this election.'"). FNN should be permitted access to Dr. Halderman's expert report, *inter alia*, to determine the extent to which it contradicts his purported statement to FNN.

Accordingly, FNN is entitled to intervention as of right. *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1173 (11th Cir. 2019) (upholding intervention as of right in similar case). At a minimum, FNN is entitled to permissive intervention. *E.g.*, *id.* at 1171 (courts may "exercise discretion" to grant permissive intervention when the moving party has a "claim or defense that shares with the main action a common question of law or fact," if intervention will not "unduly delay or prejudice the adjudication of the original parties' rights") (quoting Fed. R. Civ. P. 24(b)(3)); *accord Georgia Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014) (describing a court's two-step inquiry as (1) whether the intervenor's claim or defense shares common questions of law or fact with the pending case and (2) whether the court should exercise its discretion to

allow the intervention); *see also Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1367 (11th Cir. 1982).

## BACKGROUND

Dr. Halderman is a retained expert in this case who was given access to certain Dominion hardware and software in order to perform a "technical and security analysis" of the Dominion voting system because "the issues covered by such [an] analysis fall within the heartland of this lawsuit's serious claims." Doc. 858 (Order Sept. 2, 2020). Dr. Halderman performed a twelve-week analysis of the Dominion system he was provided and generated a 25,000-word expert report. *See* Rebuttal Decl. of J. Alex Halderman ¶ 4 (Aug. 2, 2021) ("Halderman Rebuttal Decl."). That expert report has been filed under seal, and FNN understands that it remains designated Attorney's Eyes Only. *See* Doc. 1130-1 (filing of report under seal); Doc 1130-2 ¶ 7 (recognizing that contents of the report will remain under seal); Doc. 858 (Order requiring that access to and testing of Dominion software and hardware is subject to the protective order in this case); Doc. 477 (protective order).

Dr. Halderman has since submitted declarations in this case that are publicly available and that indicate Dr. Halderman's analysis uncovered multiple security problems with the Dominion system. Decl. of J. Alex Halderman, Doc. 1177-1 ¶ 1 (Sept. 21, 2021) ("Halderman Decl.") (stating that his "July 1, 2021 [sealed] expert

report describes numerous security vulnerabilities" in the Dominion system utilized in Georgia elections, and warning that these flaws "are not general weaknesses or theoretical problems, rather specific flaws in [Dominion's] ICX software . . . that can [be] exploit[ed] to steal votes on ICX devices"); Halderman Rebuttal Decl. ¶ 2 (expressing similar concerns regarding the "numerous, critical vulnerabilities" with the Dominion system that he was permitted to examine).

FNN seeks to intervene for the limited purpose of obtaining access to Dr. Halderman's complete expert report.

FNN is the defendant in a defamation suit that Dominion filed in Delaware. *See* Compl., *U.S. Dominion, Inc., et al., v. Fox News Network, LLC*, No. N21C-03-257 EMD (Del. Superior Ct. Mar. 26, 2021) ("*Dominion v. FNN*"). Dominion alleges, *inter alia*, that FNN defamed Dominion by reporting on and repeating allegations made by President Trump and his legal team that Dominion voting systems are not secure and that Dominion systems' vulnerabilities contributed to fraud during the 2020 presidential election. *See generally id.* Dominion argues in that litigation that its defamation claim turns not on whether FNN truthfully reported the newsworthy allegations made by the president and his representatives (FNN's view) but on whether the underlying allegations about Dominion's voting systems were in fact true. *See generally id.* The Delaware litigation remains in the early

stages, and the trial court there recently denied FNN's motion to dismiss (on Dec. 16, 2021), explaining in several places that at "the pleadings stage" factual issues must be resolved in Dominion's favor and that, in that court's view, FNN's dismissal arguments were affirmative defenses (including neutral reportage and fair-report doctrine) for which FNN may develop facts in support as the case proceeds. *See, e.g.*, Order at 44, *Dominion v. FNN*.

Accordingly, whether the Dominion systems in use in Georgia and elsewhere during the 2020 election were susceptible to manipulation or fraud—an issue that appears to have been thoroughly examined by Dr. Halderman—is a critical factual inquiry that FNN must continue to explore in its defense in the Delaware litigation. Notably, Dr. Halderman recognized that the security flaws he has uncovered suggest that there are additional, "equally critical flaws that are yet to be discovered." Halderman Decl. ¶ 4. Finally, Dr. Halderman has indicated that he will not disclose his report to others while the report remains subject to the protective order and AEO designation. Halderman Decl. ¶ 10 ("I of course have complied, and will continue to comply, with all directives from the Court regarding disclosure of my work in this matter.").

## SPECIFIC RELIEF REQUESTED

FNN seeks:

(1) intervention on a limited basis pursuant to Federal Rule of Civil Procedure 24 and

(2) entry of an Order granting FNN access to Dr. Halderman's July 1, 2021, expert report, which would be limited to 6 attorneys and consulting experts. FNN agrees to, and will abide by, the confidentiality requirements previously ordered by the Court in its protective order (Doc. 477).

## ARGUMENT and AUTHORITIES

## I.   The Standards for Intervention under Rule 24 Generally Permit Timely, Limited Interventions for the Purpose of Obtaining Access to Sealed Documents

Courts in this circuit and across the country have granted intervention "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); *id.* at 1045 ("[C]ourts have been willing to adopt generous interpretations of Rule 24(b) because of the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings.'") (quoting *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 354 (11th Cir. 1987)

("[A]ppellants have standing to intervene in this action and challenge the propriety of the district court's protective order.") (citation omitted); *In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012) (upholding intervenors' right to access documents relevant to intervenor's separate, ongoing litigation); *see also* 7C Charles Alan Wright & Arthur R. Miller, Federal Prac. and Proc. Civ. § 1911 (3d ed. 2007) ("[C]ourts generally have interpreted their discretion . . . broadly and have held that it can be invoked by nonparties who seek to intervene for the sole purpose of challenging confidentiality orders.").

More specifically, the Eleventh Circuit has held that intervention for the purpose of accessing documents relevant to other litigation is proper. For example, in *Brown v. Advantage Engineering Inc.*, Amco Chemical reached a settlement agreement with a plaintiff, but negotiated that the agreement would be sealed. 960 F.2d 1013, 1015 (11th Cir. 1992). In an unrelated action, a separate plaintiff sued Amco Chemical and sought the settlement agreement from the prior suit, contending that the requested documents reportedly contained admissions from Amco that could prove helpful in the unrelated suit. *Id.* at 1015. The district court denied the motion to intervene, but the Eleventh Circuit reversed, noting that "trials are public proceedings" and "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Id.* at 1016.

The Eleventh Circuit held that the "disclosure of sensitive information" is an insufficient basis to restrict disclosure of the information, but rather, "it must be shown that the denial is *necessitated by a compelling governmental interest, and is narrowly tailored to . . . that interest.*" *Id*. at 1015-16 (citing *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985)). "Absent the showing of extraordinary circumstances . . . the court file must remain accessible to the public" and cannot remain "improperly sealed." *Id*. at 1016; *see also Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985) ("Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access.") (internal citation and quotations omitted).

## II. FNN Satisfies the Requirements of Rule 24, and the Court Should Exercise its Discretion to Grant the Requested Limited Intervention

In cases like this, the Eleventh Circuit has upheld both interventions as of right and permissive intervention. *E.g.*, *Advance Loc. Media*, 918 F.3d at 1173. Most importantly, "[i]ntervention under either Rule 24(a) or 24(b) must be timely filed." *Id.* at 1171.

Under Rule 24(a), courts must grant intervention as of right when someone "claims an interest relating to the property or transaction that is the subject of the

action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.* at 1170-71 (quoting Fed. R. Civ. P. 24(a)(2)).[1]

Under Rule 24(b), the Court has discretion to permit a party to intervene in a case when that party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts undertake a two-step inquiry in determining whether permissive intervention under Rule 24(b) is proper. *Advance Loc. Media*, 918 F.3d at 1171. First, the intervenor must have "a claim or defense that shares with the main action a common question of law or fact," *Id.* (quoting Fed. R. Civ. P. 24(b)(1)(B)). Second, the court "must exercise discretion and consider whether the intervention will 'unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* (quoting Fed. R. Civ. P. 24(b)(3)); *accord Georgia Aquarium*, 309 F.R.D. at 690. And "[w]here intervention is sought only for a collateral purpose like unsealing documents, the ordinary requirements for permissive intervention are relaxed." *Vanda Pharms., Inc. v. Food & Drug Admin.*, No. CV 19-301 (JDB), 2021 WL 1820264, at *3 (D.D.C. May 6, 2021).

---

[1] To the extent this consideration is relevant in a case for limited intervention like this, there are plainly no parties to the litigation who can "adequately represent [FNN's] interest" in the sealed expert report because those parties are not currently subject to the litigation Dominion is pursuing against FNN. Fed. R. Civ. P. 24(a)(2).

A. **FNN has a claim or defense that shares common questions of fact with this litigation, sufficient for both intervention as of right and permissive intervention**

FNN's "asserted interests for intervening—for the limited purpose of unsealing judicial records—provide[s] an adequate nexus for intervention." *Advance Loc. Media*, 918 F.3d at 1173 n.12 (analyzing Rule 24(b)). "Many circuits recognize that parties 'seeking to intervene in a case for the limited purpose of unsealing judicial records' need not show a 'strong nexus of fact or law' to the issues in the original case." *Id.* (quoting *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015); collecting other cases).[2]

Here, Plaintiffs' expert, Dr. Halderman, has produced a lengthy report detailing "numerous security vulnerabilities" in the Dominion voting system utilized

---

[2] *See also, e.g.*, *Jessup v. Luther*, 227 F.3d 993, 997-99 (7th Cir. 2000) ("[A]lthough there is ample justification for the common fact or law requirement when the proposed intervenors seek to become a party to the action, [t]here is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.") (internal quotation marks omitted); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) ("By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action."); *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975) ("The 'claim or defense' portion of the rule has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'") (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)).

in Georgia elections and warning that these "rather specific flaws in [Dominion's] ICX software . . . can [be] exploit[ed] to steal votes on ICX devices." Halderman Decl. ¶ 1; Halderman Rebuttal Decl. ¶ 2 (expressing similar concerns over the "numerous, critical vulnerabilities" that he had discovered during his review of the Dominion systems). Dr. Halderman further explains that his analysis indicates "that the ICX is very likely to contain other, equally critical flaws that are yet to be discovered." Halderman Decl. ¶ 4. And Dr. Halderman notes the security problems are not limited to Georgia because the ICX systems are intended for use in parts of 16 states in the fast-approaching 2022 elections. *Id.*, ¶ 5, 8.

Whether Dominion's voting systems suffer from serious security risks or are vulnerable to manipulation or voting fraud are factual questions that will play a prominent role in *Dominion v. FNN*. In that Delaware case, Dominion alleges that FNN defamed it by reporting on and repeating allegations raised by President Trump and his legal team that Dominion voting systems were used to commit election fraud in the 2020 presidential election. Although FNN contends that the falsity prong of the defamation inquiry should be limited to whether FNN accurately reported on the newsworthy allegations made by the president and his representatives, Dominion insists otherwise. Dominion insists that FNN can be held liable for defamation unless the underlying allegations made by the president's representatives are true. Given

this discrepancy—as well as the Delaware trial court's recent denial of FNN's motion to dismiss based, in part, on the need for further factual development of the issues—FNN has no choice but to investigate the veracity of allegations that Dominion's voting systems are not secure.

Publicly available documents filed in this Court demonstrate that Dr. Halderman's expert analysis for this case bears directly on this aspect of the *Dominion v. FNN* case. *See generally* Halderman Decl.; Halderman Rebuttal Decl. Moreover, these unsealed documents appear to only scratch the surface of Dr. Halderman's analysis: the sealed expert report is "a 25,000 word document that is the product of twelve weeks of intensive testing of the Dominion equipment provided" to Dr. Halderman for his examination that concludes that the Dominion system in use in Georgia "contains multiple severe security flaws." Halderman Rebuttal Decl. ¶ 4. So not only does the sealed report bear directly on FNN's litigation, the sealed report is not merely duplicative of any otherwise available documents. Consequently, providing access to FNN is the only way in which FNN could obtain the information contained in the expert report.

*Dominion v. FNN* relates to the factual questions covered in Dr. Halderman's sealed analysis for an additional reason: Dominion injected Dr. Halderman's expertise into its suit against FNN by alleging that Dr. Halderman "told [FNN]

explicitly, 'There is absolutely no evidence, none, that Dominion Voting Machines changed any votes in this election.'" Compl. ¶ 68, *Dominion v. FNN*. FNN should thus be permitted to access Dr. Halderman's work in this litigation for the additional reason of determining, *inter alia*, whether his analysis here undermines his purported statement to FNN.[3]

### B.     FNN has made a timely request that will not interfere with the pending litigation or prejudice any current parties, under both Rules 24(a) and 24(b)

All four factors governing timeliness weigh in FNN's favor:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness.

*Advance Loc. Media*, 918 F.3d at 1171 (citation omitted). "The most important consideration in determining timeliness is whether any existing party to the litigation

---

[3] As demonstrated herein, FNN has a particularized interest in this specific expert report, which Louisiana did not have, making both FNN's right to obtain the report through intervention under Rule 24(a) and the case for permitting FNN to intervene under Rule 24(b) much stronger than any interest put forward by the State of Louisiana. And as FNN will demonstrate below, unlike Louisiana it does not readily have an alternative means of recreating Dr. Halderman's analysis, because FNN is not in possession of any state's Dominion election equipment and software.

will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Id.* (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)).[4] Accordingly, the time between the commencement of the action and the motion to intervene is less important. *Id.* ("Intervention may be timely filed *even if* it occurs after a case has concluded") (emphasis added; collecting cases).

*First*, although this litigation has been pending since 2017, the expert report that is the subject of this intervention request was completed only six months ago, and it was only more recently than that when Dr. Halderman's declarations noting his significant concerns with Dominion's systems were publicly filed. Likewise, the trial court in Delaware denied FNN's motion to dismiss Dominion's case just a few weeks ago (on December 16, 2021). While that motion was pending, there remained the possibility that FNN would not need to seek Dr. Halderman's report, so FNN waited to involve this Court only when it became necessary for FNN to do so.

The few months between FNN learning of some of the contents of Dr. Halderman's sealed report and the filing of this motion is well within the multi-year periods the Eleventh Circuit and other courts have deemed acceptable. *E.g.*, *Advance Loc. Media*, 918 F.3d at 1171 n.9 ("[O]ther circuits have recognized that timeliness

---

[4] "[T]his [prejudice consideration] may well be *the only significant consideration* when the proposed intervenor seeks intervention of right." *Advance Loc. Media*, 918 F.3d at 1171 (emphasis added; quoting *McDonald*, 430 F.2d at 1073).

concerns may be less significant when intervention is 'not on the merits, but for the sole purpose of challenging a protective order'") (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); collecting other cases).

*Second*, parties to the litigation will suffer no prejudice from FNN's intervention. *Advance Loc. Media*, 918 F.3d at 1171. FNN does not seek to participate in the litigation beyond moving to unseal Dr. Halderman's report for a limited purpose. In other words, FNN will not become a party to the litigation and this will not affect any other matters in this court—pending or forthcoming. The limited purpose for which FNN seeks intervention will ensure that there is no interference with the underlying litigation. There could thus be no possible prejudice to any of the parties in this litigation.

*Third*, denial of the motion to intervene would greatly prejudice FNN. It would impede FNN from obtaining a report from an expert who, following a thorough analysis of certain Dominion equipment and software, has determined that Dominion systems are plagued with "multiple severe security flaws," Halderman Rebuttal Decl. ¶ 4, facts that are highly relevant to FNN's defenses against Dominion's claims. FNN has rights in accessing the information in the sealed report as a litigant in a case in which the contents of the report are highly relevant. *E.g.*, *Advance Loc. Media*, 918 F.3d at 1166, 1170. Denying FNN's motion would

frustrate FNN's "common law right to access the" report, and "[d]enial of this right constitutes an injury." *Id.* at 1172.

Dr. Halderman has made clear that he will not disclose his report to others while the report remains subject to the Court's protective order and AEO designation. Halderman Decl. ¶ 10 ("I of course have complied, and will continue to comply, with all directives from the Court regarding disclosure of my work in this matter."); *see also* Halderman Public Testimony Before the Louisiana Voting System Commission, Part 3, at 1:10:00 (Dec. 14, 2021), *available at* https://www.loom.com/share/d784b2995ead4cc69bf596bae3d1ce75   (explaining that this Court will determine whether Dr. Halderman's expert report will become publicly available).

Nor does FNN have as a "reasonable alternative[]" the ability to readily recreate Dr. Halderman's analysis, as the Court suggested that the Louisiana Secretary of State could do with its own Dominion machines. Doc. 1249 at 6. First, FNN does not possess any voting machines that were used in the 2020 elections (in Georgia, Louisiana, or elsewhere) so it cannot test machines it does not have. Second, while hiring "other similarly skilled election cyber engineering experts" to run similar tests to those run by Dr. Halderman might suffice for Louisiana to better protect the integrity of its future elections, *id.*, FNN has a particular interest in and

need for Dr. Halderman's own analysis given the manner in which Dominion seeks to insert Dr. Halderman into the *Dominion v. FNN* case. So obtaining Dominion voting machines and retaining other experts would still not provide FNN the precise information—Dr. Halderman's analysis itself—which it has a right and a need to examine.

*Finally*, there are no "unusual circumstances weighing . . . against a determination of timeliness." *Id.* at 1171 (citation omitted).

Under the circumstances, FNN's motion is timely. *E.g.*, *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984) (articulating the following factors for the timeliness analysis: (1) the time period the intervenor should have known of its interest before seeking leave to intervene; (2) degree of prejudice to the existing parties due to the timing of the intervention; (3) prejudice to the intervenor if the request is denied; (4) any unusual circumstances militating either for or against a determination that the request is timely).

**C.   The Court should exercise its discretion and grant FNN's request to intervene and grant FNN the requested limited access to Dr. Halderman's report**

As demonstrated above, there is no impediment under Rule 24 to FNN's request to intervene in this litigation. The above considerations also demonstrate that the Court should grant the intervention request because to do so would not prejudice

any party and to deny the intervention would prejudice FNN by impeding FNN from accessing an expert's analysis that is highly relevant to FNN's defense in separate litigation.[5]

Additionally, as explained below, FNN requests permission for a limited number of attorneys and consulting experts to view Dr. Halderman's expert report while the report retains its current level of confidentiality under the Court's protective order. Granting the motion to intervene for this limited purpose thus would not risk wide publication of the report while it retains a confidential designation in this litigation.

Finally, courts have long recognized that providing access to judicial documents helps to "secur[e] the integrity of the [judicial] process." *E.g.*, *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361 (11th Cir. 2021) (explaining that this access is "an essential component of our system of justice" and

---

[5] FNN recognizes that the Court is considering the joint discovery request to allow some additional disclosure of Dr. Halderman's expert report. *See* Joint Disc. Statement Regarding Access to Pls.' Expert Report & Unduly Burdensome Disc., Doc. 1130 (July 12, 2021); *see also* Min. Entry, Doc. 1184 (Oct. 7, 2021). If the Court makes an unredacted version of the July 1, 2021 Halderman report available to the public, that could obviate the need for FNN's intervention. But the parties' request and the Court's minute order contemplate the Court making the expert report available on a more narrow basis that may not provide FNN sufficient access to the report, *id.*; *see also* Min. Entry, Doc. 1184 (Oct. 7, 2021), necessitating this motion to intervene at this time.

"instrumental in securing the integrity of the process. Providing FNN the limited access it seeks would serve to secure the integrity of the judicial process in the Delaware proceeding while maintaining the confidentiality required by the Court's protective order.

### III.    FNN Will Comply With the Confidentiality Measures Imposed By the Court's Protective Order

FNN does not seek widespread dissemination of Dr. Halderman's expert report. Rather, FNN seeks limited disclosure of the sensitive information contained in Dr. Halderman's report for the reasons discussed above. FNN seeks access for 2 consulting experts and the following 4 counsel with Jackson Walker LLP, who represent FNN in *Dominion v. FNN*: Charles L. Babcock, Carl C. Butzer, John K. Edwards, and Joel Glover.

The persons accessing the report will abide by the confidentiality measures imposed by the Court in its protective order (Doc. 477). FNN will take steps to ensure that no other persons access the report by storing the confidential data in a manner accessible only to the named individuals.

## CONCLUSION

FNN respectfully requests that the Court grant its motion to intervene for the sole purpose of obtaining limited access to the expert report of Dr. J. Alex Halderman.  A proposed order is attached hereto as Exhibit A.

Dated: January 12, 2022

*/s/ Charles E. Peeler*
Charles E. Peeler
Ga. Bar No. 570399
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Telephone: 404.885.3409
Email: charles.peeler@troutman.com

Charles L. Babcock
Application for Admission Pro Hac Vice pending
Joel Glover
Application for Admission Pro Hac Vice pending
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4210
Email: cbabcock@jw.com

Scott A. Keller
Application for Admission Pro Hac Vice pending
LEHOTSKY KELLER LLP
200 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (512) 693-8350

*Attorney for Fox News Network, LLC*

- 20 -

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point-size of 14.

*/s/ Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399
Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Telephone: 404.885.3409
Email: Charles.peeler@troutman.com
*Attorney for Fox News Network, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2021, I electronically filed the forgoing Memorandum in Support of Motion to Intervene For Limited Purposes which will automatically send email notification of such filing to the attorneys of record.

*/s/ Charles E. Peeler*
Charles E. Peller
Georgia Bar No. 570399
Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Telephone: 404.885.3409
Email: Charles.peeler@troutman.com
*Attorney for Fox News Network, LLC*