**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,** **Plaintiffs,** **v.** **BRAD RAFFENSPERGER, ET AL.,** **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**COALITION PLAINTIFFS' RESPONSE**
**TO STATE DEFENDANTS' NOTICE OF OBJECTION**
**TO SUPPLEMENTAL REPORTS OF DRS. STARK AND BUELL**

Coalition Plaintiffs hereby respond to the State Defendants' Notice of Objection to the Supplemental Reports of Drs. Stark and Buell filed on January 10, 2021, as verbally directed by the Court at the hearing held in this matter on January 27, 2022.[1]

The two outstanding issues for which the Court directed the Coalition Plaintiffs to submit briefing are interconnected. Therefore, this brief addresses the issues of 1) prejudice to the Coalition Plaintiffs' case resulting from certain missing and destroyed Fulton County documents and why those missing records are relevant to the matters at issue in this case, and 2) the manner in which Defendants'

---

[1] Dr. Stark amended his Supplemental Report on January 11, 2022, to correct some typographical errors.

obstructionist behavior in discovery has made the Coalition's efforts to comply with expert disclosure deadlines impossible. State Defendants object to the submission of those expert reports. (Doc. 1278)

### Timing of Coalition Plaintiffs' Expert Reports

It is ironic that State Defendants raise objections to the timing of Coalition's experts' reports given Defendants' continuing failure to preserve and timely produce records inarguably essential to Coalition experts' work. A previous Scheduling Order required Plaintiffs' Experts' Reports to be served July 1, 2021. (Doc. 1093) A subsequent Scheduling Order set the revised date for Supplementation of Reports for January 10, 2022. (Doc. 1238)

State Defendants blocked Fulton and other counties from producing to Coalition Plaintiffs the essential electronic record created by the Dominion system, called the "Cast Vote Record" (CVR), ordering counties not to produce information designed for use in post-election audits,[2] which are typically public records. Fulton County denied Coalition's RFD No. 10 based on the Secretary's instruction, (Fulton County Defendants' Position Regarding Production of Fulton County November 3, 2020 Election Files, attached as Exhibit A) over several months while Dr. Buell

---

[2] Dominion Democracy Suite EMS Results Tally & Reporting User Guide Chapter 14: Auditing (https://www.sos.state.co.us/pubs/elections/VotingSystems/DVS-DemocracySuite511/documentation/UG-RTR-UserGuide-5-11-CO.pdf )

was awaiting production of the Cast Vote Records and related electronic files.  At the November 19, 2021 hearing, the State Defendants unexpectedly dropped their objection. (Hr'g Tr. 54:15, Nov. 19, 2021) Fulton finally produced the November 2020 Cast Vote Records on December 8, 2021, after the entry of a consent Order on December 3, 2021, directing it to do so. (Doc. 1239)

**As has been made clear in communications with Defendants, Coalition Plaintiffs' experts awaited the necessary files for months while the Defendants delayed and objected to the production of the data needed by the experts to focus their discovery efforts on Plaintiffs' home precincts in Fulton and Cobb Counties.**

State Defendants only began to produce the Election Project Packages in June 2021 (Doc. 1278), and as is described below, the files were materially incomplete. Given that only limited work relating to the quality of the hardware and software performance and the accuracy of the tabulations could be accomplished without weeks of access to the essential electronic files or equipment, Coalition Plaintiffs packaged all of the experts' previous declarations  to serve as initial reports with a July 1, 2021 cover letter stating "Coalition Plaintiffs further state that the referenced Reports **will be supplemented by further expert opinions** that will be forthcoming as soon as possible after Defendants have responded to numerous requested, but currently overdue and outstanding, discovery requests that are required by Coalition Plaintiffs' experts in order to formulate those forthcoming opinions."  (Doc. 1278-

1 at 2, emphasis added) The State Defendants claim that Coalition Plaintiffs "never raised the prospect of potential supplemental expert reports until the November 19, 2021 Hearing…" is thus simply untrue. (Doc. 1278 at 4)

Also on August 2, 2021, Coalition Plaintiffs served State Defendants counsel with Dr. Stark's rebuttal report to Dr. Gilbert's initial expert report. At the conclusion of the report Dr. Stark declared, "***I anticipate supplementing my report*** when the Election Project files and ballot images for the November election become available from key counties, such as Fulton, Gwinnett, and DeKalb, to cross check key claims of the November, 2020, 'hand count audit.'" (Eighth Declaration of Philip Start, attached as Exhibit C ¶ 19) (emphasis added) State Defendants now feign surprise that experts planned to supplement their reports when they were provided with more of the documents that were required for them to form their opinions.[3]

Defendants now wish to benefit from their failure to preserve and timely serve essential electronic records required for expert analysis by claiming that Dr. Buell

---

[3] The relationship between the dates for completion of discovery and for the issuance of expert reports has created significant issues for the Coalition.  In general, the Rules require that experts' opinions be disclosed by way of a report at least 90 days before trial. *See* Fed. R. Civ. P. 26(a)(2)(D). That makes sense because discovery will typically be complete before the experts' reports are due.  Here, however, discovery related to Coalition's claims had barely begun by July 1, and continued for months after the due date for expert reports, allowing Defendants to slow-roll the production of critical documents necessary to the formulation and disclosure of Coalition's experts' opinions.

and Dr. Stark's still unfinished reports served on January 10-11, 2022 (Declarations of Duncan A. Buell and Philip B. Stark, attached hereto as Exhibits D and E respectively), were not prepared and served July 1, 2021. Defendants fully recognize they have not made available the information necessary for the expert analysis Dr. Stark and Dr. Buell had planned to undertake, and now attempt to exclude the opinions of these eminently qualified experts. Defendants created a Hobson's choice for Coalition Plaintiff experts; to withhold opinions because of the incompleteness of the data or offer the opinions that could be supported on partial data and state there would be more to come when requested data was made available and discovery on voting system components is permitted.

While awaiting the formal document production of the ballot images as part of the Election Project Packages, and anxious to get its expert analysis underway, Coalition Plaintiffs began seeking the Fulton ballot images under Georgia's Open Records statutes in May 2021 (Response to Open Records Request, attached as Exhibit B) and paid in advance for their production.  Fulton County admitted its failure to preserve the ballot images in their Responses to Request for Admissions. (Fulton County Defendants' Response to Coalition Plaintiffs' Second Requests for Admission, attached as Exhibit F, Request No. 1)

On June 11, 2021, State Defendants transmitted Election Project Packages (Doc. 1278 at 5), which were to include ballot images as one part of the electronic

records, to Dr. Halderman, who copied the files and forwarded the State's production to Dr. Buell. Those electronic files contained over 800 gigabytes of county election files. (Supplement to the Declaration of Duncan A. Buell, attached as Exhibit G, ¶5) The files failed, however, to include the majority of ballot images and were materially incomplete for Fulton, Cobb, and DeKalb counties, the home counties of all but one Plaintiff-voter. Complying with the Court's guidance to Plaintiffs to focus discovery activities on the individual voting experiences of Plaintiffs was made almost impossible with the three largest counties missing essential data.

Other counties' original and recount ballot images made up a large percentage of the produced files, supplemented by database files and .sha authentication files. (Exhibit G) Of Plaintiffs' home counties, only Cherokee County's files were reasonably complete. Coalition Plaintiffs experts had reasonably anticipated the electronic files would be complete with .sha files intact for initial authentication efforts, but by late-June 2021, that proved not to be the case.  Repeated requests for complete files were communicated to Defendants to no avail. (Exhibit H)

The Secretary of State requires counties to preserve election records, including ballot images, (Official Election Bulletin 12/01/20, attached as Exhibit I) as do federal and state statutes and the State Election Board Election Rules.[4]  In fact, counties are also required to send an electronic copy of ballot images to their county

---

[4] O.C.G.A. § 21-2-500; Election Board Rule 183-1-12.13.

Superior Court for retention for two (2) years. Both State Defendants and Fulton County have significant litigation preservation requirements requiring preservation of the requested election database files and ballot images.  Were that not enough, the Court also ordered preservation of electronic election records. (Doc 122) Nonetheless, Cobb County did not preserve approximately 400,000 ballot images, representing all the images relating to the final official results of all down ballot races. Fulton failed to preserve approximately 200,000 ballot images. (Exhibit G) So, between Cobb and Fulton alone, approximately 600,000 ballot images, not counting other related electronic files, from the official count for all races other than the presidential contest were destroyed.

Defendants are well aware that it would have been unreasonable to expect a July 1, 2021 complete report from Plaintiffs experts based upon materially incomplete files that were provided in mid-June 2021.  Moreover, the idea that the experts could analyze the records and generate a report by July 1, 2021, with only two weeks of access to partial electronic files is completely unrealistic, even if the analysis were isolated to Plaintiffs' and CGG members' home precincts.

Coalition Plaintiffs and their experts reasonably relied on the expectation that Defendants would comply with existing records retention laws, this Court's order, and their ongoing obligations in this litigation. Coalition Plaintiffs repeatedly conferred with the Secretary of State's counsel to attempt to obtain the missing files,

but with limited success. (Exhibit K) The ongoing controversy regarding the large number of missing electronic files (Election Project Packages, including ballot images) from large counties where Plaintiffs and many CGG members vote was raised in the August 19, 2021 conference with the Court after State Defendants refused to attempt to obtain the complete Election Project Packages they require the counties to transmit to them. (Exhibit I); (Hr'g Tr. 14-15, Aug. 19, 2021) The Court instructed Coalition Plaintiffs to seek the necessary electronic files through non-party subpoenas, rather than relying on the Secretary's inventory of counties' Election Project Files and directed Coalition to focus its discovery data collection and analysis from Plaintiff and member voters' home counties. (Hr'g Tr. 19, Aug. 19, 2021)

Thereafter, the effort to obtain the electronic records took on an intense and expensive life of its own, particularly with respect to Cobb County. After the Cobb County subpoena was served, Coalition Plaintiffs experts, analysts, attorneys, and Executive Director spent scores of hours communicating with Cobb County counsel and State Defendant's counsel trying to locate the ballot images and database files Coalition experts and analysts needed for analysis.

Initially, both Cobb and the Secretary's office denied having possession of the requested image files or having filed them with the Cobb County State Superior Court.  (Exhibit L) After repeated inquiries by Coalition counsel, counsel for the

State Defendants produced multiple tranches of Cobb *recount* (only) image files in mid-October 2021 (Exhibit M), although they had represented to this Court and to Coalition Plaintiffs' counsel did not have possession of those images. Even now, State Defendants' counsel represents that they did not have the Cobb County files, (Doc. 1278 at 5), although they apparently had sole possession of the only still-existing images files, the recount files. (Exhibit N)

As evident in the referenced emails, the Secretary's office had apparently taken possession of the recount images in December 2020, and Cobb County did not retain the required copies. Then, after over four months of delay, Coalition Plaintiffs learned that fully half of the Cobb County ballot images had been destroyed. Only the presidential recount images were preserved, and none of the images used for the down ballot official count were preserved.

DeKalb County image files were produced the first week of September 2021, also well after the July 1 experts' report deadline.  Fulton County also represented to Coalition that a copy of the recount Election Project files, including images, was delivered to the Secretary of State (Exhibit O), but neither Fulton nor State Defendants can produce the file transmitted to the Secretary of State's office.

State Defendants are now trying to use their own failure to produce essential records as a strategic weapon to exclude damning facts included in Dr. Buell and Dr. Stark's reports. (Exhibits D and E) As stated above, Coalition Plaintiffs had warned

of this problem when the July 1 package of reports were produced, and Dr. Stark had again noted the lack of critical files in his August 2, 2021 rebuttal report. (Exhibit C ¶ 19)  Both experts note in their reports that complete electronic files have not been supplied, and source paper records should be examined given findings to date of discrepancies and the significance of the missing records. (Exhibits D and E)

The discovery track for Coalition Plaintiffs' claims differs significantly from the discovery track to date for Curling Plaintiffs' claims. Curling Plaintiffs' expert discovery to date primarily focuses on Dr. Halderman's laboratory work with the ballot marking devices made available to Plaintiffs in September 2020 (Doc. 858), effectively a year prior to Coalition Plaintiffs being supplied with the data they required for analysis of how the system tabulated results in actual application in Georgia elections. Dr. Halderman's essential work to date has been restricted to system design of the BMD components, while Coalition has been analyzing systemic problems as to how the challenged voting system actually performed in the field. Dr. Halderman was able to complete his laboratory work and offer his expert report on July 1, 2021, while Coalition's experts only began to receive partial data from the November 2020 election in mid-June 2021, despite their best efforts, including attempting to use Open Records Act requests to accelerate the examination of at least a partial subset of the needed electronic records.

The full complement of files needed by the experts to undertake their analysis of Plaintiffs' home precincts' vote recording and reporting experience has been unreasonably withheld for six (6) months by Defendants who now object because the reports were not served before the information was made available to the experts. It should be noted that Dr. Buell and Dr. Stark spent many hours over the holidays studying and analyzing the December 8, 2021 Fulton County production, despite the materially incomplete and insufficient nature of the production.

Defendants object to Dr. Buell and Dr. Stark's findings that the level of discrepancies and irregularities they reviewed in the November 2020 Fulton County election merit a review of the original paper ballots to determine the root cause of what appears to be systemic problems encountered in the election. Despite State Defendants' assertions that the November 2020 election should be off limits for a review of the irregularities and systemic issues that demonstrate the burden on the right to vote caused by the implementation of the Dominion Voting System, the November vote recording and reporting provides direct evidence relevant to the Coalition's claims, and particularly to the injury-in-fact to the Fulton, DeKalb, and Cobb County Plaintiffs' ability to cast an accountable ballot.

The Coalition's truncated and narrow discovery activity that has been restricted by the Court's directive to focus discovery on Plaintiff's specific injuries regarding their votes, and the Court's denial to date, of discovery on actual the EMS

servers, installed EMS software, scanners, their logs, and other equipment used in Georgia's elections. (Order Doc. 1171 at 6) An examination of such equipment and electronic records and related paper records would likely reveal the source and underlying cause of the types of tabulation irregularities detected in the November 2020 electronic records in Plaintiff voter precincts as well as other precincts. Discovery activity related to Coalition Plaintiff's claims concerning the Dominion scanners and PollPads has also delayed by the State Defendants appeal of the interlocutory relief the Court granted Coalition Plaintiffs. Coalition Plaintiffs continue to plan for their identified experts Kevin Skoglund, Harri Hursti, and Logan Lamb to conduct discovery on those components' (scanners, PollPads, and EMS servers) records when the Court permits discovery on those components related to Coalition's claims in its First Supplemental Complaint (Doc. 628) concerning those elements of the Dominion Voting System. When that time comes, the Court should anticipate these hollow objections to be repeated by the State Defendants.

## Missing and Destroyed Relevant Electronic Records

During the January 27, 2022 hearing, the Court asked why Coalition Plaintiffs need Fulton County's 18,000 missing[5] November 2020 recount ballot images and

---

[5] Despite the assurances that counsel for Fulton gave the Court at the January 27, 2022 hearing that the missing files would be produced, counsel for Fulton County informed Coalition counsel on January 28 that the recount ballot image files were not preserved. (Exhibit S) The status of the other missing electronic files (.sha and .dvd files) was not disclosed, and those files still should be produced.

other electronic files, given the Court's urging that Plaintiffs narrow their discovery activity to demonstrate specific injury-in-fact with respect to the voting experience of named Plaintiffs and Coalition for Good Governance members. The Court noted that the Coalition already asserts that tabulation errors have been detected in currently available electronic records. (Hr'g Tr. 93:11, Jan. 27, 2022).

This is exactly the dilemma facing Coalition Plaintiffs in its efforts to present the Court with the fullest picture and most complete evidence available of the systemic voting system problems related to its claims. The extensive destruction of essential records needed even for the Coalition's narrowed discovery activities has underscored the question of how much evidence is enough to demonstrate the systemic nature of these voting system problems and their effect on individual Plaintiff voters' right to vote.

In short, the answer as to why the missing files at issue are needed is that Fulton County database files indicate that over 750 of the 18,000 missing recount images are from Plaintiffs and CGG members' home precincts. (Exhibit G ¶8) For example, of the 18,000 missing images, 418 *presidential recount* images are missing from Donna Curling's home precinct, and 179 such images are missing from Megan Missett's home precinct.

For the previous official tally (the official results of the down ballot races), 2,773 and 1,375 images have been destroyed in Ms. Curling and Ms. Missett's

precincts, respectively. This means that Coalition Plaintiffs' analysts and experts do not have access to 3,205 ballot images in Ms. Curling's RW01 precinct and 1,554 ballot images in Ms. Missett's 06J precinct as they attempt to evaluate the records for systemic vote tabulation irregularities. For context, this means that 64 percent of the images are unavailable for the analysts to review in these two precincts in the down ballot official tally, and 9 percent of the presidential recount images are unavailable. (Exhibit G)

Based on the systemic problems identified in the tabulation records reviewed in Plaintiffs' home precincts and explained further in this submission, there is a reasonable likelihood of similar tabulation irregularities in the missing ballot images, but those issues and inconsistencies cannot be identified without visual access to the ballot images or the original paper ballot.[6]   Given the Court's requirement that Plaintiffs show specific injury at a home precinct level, missing and destroyed records severely prejudice the Plaintiffs ability to show the full extent of such problems.

---

[6] Exhibit D ¶59; Exhibit E ¶ 61. Coalition Plaintiffs requested production of original ballots from Fulton County in Coalition Plaintiffs' Third Request for Production of Documents, dated October 15, 2021.  Fulton County responded that it did not control those documents because they could only be produced upon the issuance of a court order directing the same.  When Coalition Plaintiffs requested that Fulton County consent to such an order, the County flatly refused.

Of the seven (7) named Plaintiff-voters in the case, two (Donna Curling and Megan Missett) vote in Fulton County, two (Laura Digges and William Digges) vote in Cobb County, Donna Price and Jeffrey Schoenberg vote in DeKalb County, and Ricardo Davis votes in Cherokee County. Many of Coalition for Good Government's most active members are Fulton County voters. Between Cobb County and Fulton County, approximately 600,000 ballot images have been destroyed as acknowledged by the counties. (Exhibit G)

Given the quantity of missing relevant records, and their unreliable condition, Coalition's analysts and experts are significantly disadvantaged in their work to detect and analyze systemic vote counting irregularities in Plaintiffs' precincts. That work is being made all the more difficult by Fulton county's refusal to make the underlying original paper records available as an alternative.

Despite the severe handicap of missing records, Coalition analysts and experts have identified an alarming number of vote tabulation discrepancies in the existing images, which should satisfy any injury-in-fact standing requirement under even the narrowest interpretation of the requirement. For example, in the population of existing images, in Donna Curling's RW01 precinct recount, at least seven (7) ballots were counted three (3) times, and at least six (6) ballots were counted twice in the official recount results. (Fulton County Precinct RW01 Ballots, attached as Exhibit P) In Megan Missett's 06J precinct, at least seven (7) ballots were double

15

counted. (Fulton County Precinct O6J Ballots, attached as Exhibit Q) Those counting irregularities were confirmed by visual verification of the ballot images as certain ballot images had perceptible unique and distinguishing markings.

During the January 27 telephone conference, the Court inquired as to the relevancy of the tabulation irregularities to the Coalition Plaintiffs' claims. (Hr'g Tr. 94, Jan. 27, 2022)  Systemic tabulation irregularities and discrepancies, as well as ballot secrecy claims, are at the core of Coalition's constitutional claims. The primary goal of this action and relief sought by Coalition Plaintiffs is to avoid materially misstated and inaccurate election results caused by systemic problems in the Dominion Voting System, which includes the entire suite of components and software in the Dominion Democracy Suite 5.5-A.

The direct relevance of evidence of systemic tabulation inaccuracies in the November 2020 election go directly to the merits of the flawed voting system and constitute evidence of individual voter Plaintiffs' injury-in-fact of the specific type the Court has directed Plaintiffs to document to further support Plaintiffs' standing.

Given that 2,773 ballot images from Curling's RW01 precinct are unavailable for visual inspection in the down ballot official results and 418 are missing from the recount images, Coalition analysts are likely to underestimate the number of counting irregularities, potentially prejudicing the Coalition's efforts to prove systemic tabulation problems experienced in vote counting. The relevant

missing and destroyed electronic election records are not limited to the ballot images. Important supporting files are also missing as communicated to Fulton County and State Defendants on multiple occasions. (Exhibit R)

Coalition Plaintiffs believe they have already documented more than adequate evidence of injury-in-fact for purposes of Article III standing. However, presenting less than the complete picture and all available evidence (or, at last, all evidence that should be available) is of grave concern to Coalition Plaintiffs. Given Fulton County's disclosure that 18,000 missing images were not preserved, that portion of the discovery dispute seems moot at present, although it remains unclear whether other related electronic records can be produced by Fulton County or the Secretary of State.[7] However, if the court is satisfied that the scope of evidence and records as described below are adequate, Coalition Plaintiffs can drop their longstanding request for Fulton's complete electronic records. It should be noted, however, that such missing records may impair Coalition Plaintiffs experts' ability to most efficiently and effectively determine the root cause of the systemic tabulation problems.  A more practical consideration may be that, as Dr. Buell

---

[7]  Former Election Director for the State of Georgia, Chris Harvey, testified in his deposition on January 28, 2022, that Election Project Packages were inventoried by the SOS office after an election, and if files were missing, remedial action would be taken to obtain the files. (The Coalition will file the transcript of Mr. Harvey's deposition when it is available.) Therefore, the Secretary's office should have possession of electronic copies of the required files, despite their failure to provide them to date.

noted, the "mess" that is electronic voting in Georgia cannot be resolved until that cause of the "mess" is known. (Exhibit D ¶¶ 14, 56, and 59)

With the January 28, 2022 disclosure after the hearing that the 18,000 images were also destroyed, this becomes a textbook case for the application of spoliation sanctions and application of adverse inferences. Coalition Plaintiffs are prepared to address that in a separate motion.

Respectfully submitted this 1st day of February, 2022.


*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600
*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*


*/s/ Bruce P. Brown*                    */s/ Robert A. McGuire, III*
Bruce P. Brown                          Robert A. McGuire, III
Georgia Bar No. 064460                  Admitted Pro Hac Vice
BRUCE P. BROWN LAW LLC                    (ECF No. 125)
1123 Zonolite Rd. NE                    ROBERT McGUIRE LAW FIRM
Suite 6                                 113 Cherry St. #86685
Atlanta, Georgia 30306                  Seattle, Washington 98104-2205
(404) 881-0700                          (253) 267-8530


*Counsel for Coalition for Good Governance*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

Civil Action No. 1:17-CV-2989-AT

**BRAD RAFFENSPERGER, ET AL.,**
Defendants.

## CERTIFICATES OF SERVICE AND COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

I further certify that on February 1, 2022, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Cary Ichter*
Cary Ichter