**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DONNA CURLING, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action File No. |
| ) | 1:17-CV-02989-AT |
| ) | |
| BRAD RAFFENSPERGER, ET AL., ) | |
| ) | |
| Defendants. ) | |

**FOX NEWS NETWORK'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE FOR LIMITED PURPOSES AND REQUEST FOR ORAL ARGUMENT**

### I.   Introduction

Fox News Network ("FNN") files this reply memorandum ("Reply") in support of its motion to intervene (ECF 1251) ("Motion") seeking access to an expert report by Dr. J. Alex Halderman ("Report") which was filed in this case under seal and remains subject to the Court's protective order, (ECF 477, 1130-1, 1130-2) ("Sealing Order").

In the time since FNN filed its Motion to Intervene, all of the parties to this litigation have come to agree: At a minimum, a redacted version of the Report should be released. Neither the Curling Plaintiffs nor the Coalition Plaintiffs (collectively, "Plaintiffs") responded to or otherwise opposed the Motion. Initially, the State

Defendants took the position that they could not support releasing the Report. (ECF 1286). At a hearing held the day after filing their Response, however, the State Defendants changed their position and called for the Report to be released. That same day, Secretary of State Raffensperger issued a press release calling for the public release of Halderman's report. Press Release, *Secretary Raffensperger Calls on J. Alex Halderman to Agree to Release "Secret Report" and Pre-Election Testimony* (Jan. 27, 2022), https://bit.ly/3HloA8a. Again, on February 2, 2022, the State Defendants became the most zealous proponent of release – asking the Court to put an end to public speculation and innuendo by *immediately* releasing the report to the public. *See* Tr. of Feb. 2, 2022, Telephone Conference at 7–8, 12. At this stage, there is universal support among the parties to the litigation for releasing some version of the Report.

    The sole voice against transparency – Dominion – is not a party to this litigation and has a self-serving interest in maintaining the Report's secrecy because it contains information relevant to FNN's defense to a lawsuit brought by Dominion against FNN in Delaware. Indeed, Dominion confirmed on February 7 that it has *both* a redacted and unredacted copy of the Report in its possession. Of those two, Dominion stated that it would not produce the redacted Report without this Court's approval, and it would never produce the unredacted version because Dominion

"do[es] not think that copy needs to or should be produced" in Delaware. *See* Exhibit 1 (emails to Dominion's Delaware counsel). But that is not what Dominion's opposition says, and in opposing FNN's motion, Dominion failed to file its own motion to intervene, rendering its opposition procedurally improper regardless.

Even if Dominion had moved to intervene, its arguments were substantively deficient, as explained below. In short, the Court should grant FNN's Motion to Intervene.

## II.   FNN is entitled to intervene under Rule 24.

There are two questions for the Court: (1) Whether FNN has satisfied the standards for either "Intervention of Right" (Rule 24(a))[1] or "Permissive Intervention" (Rule 24(b)); and (2) if so, under what terms is FNN entitled to obtain and use all or some of the Report. Dominion's Opposition confusingly collapses those two questions into one, but they are separate. "The question of whether a party is allowed to intervene is distinct from the issue of whether the party's motion to unseal should be granted." *Flynn v. Lombardi,* 782 F.3d 963, 967 n.3 (8th Cir. 2015).

---

[1] Unless otherwise indicated all rule citations are to the Federal Rules of Civil Procedure.

**A.     Non-party Dominion has not expressly moved to intervene.**

We turn first to Non-Party Dominion's ability to object when, ironically, it did not move to intervene for that purpose.[2] *See Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979) ("The proper procedure . . . was . . . to seek permissive intervention in the private action pursuant to Rule 24(b), F. R. CIV. P., for the purpose of obtaining vacation or modification of the protective order.")

In the event the Court believes that Dominion impliedly and properly intervened and has demonstrated standing, then FNN should be permitted to intervene as well. If, on the other hand, the Court determines that Non-Party Dominion has improperly failed to intervene or demonstrate standing then its pleading should be disregarded.

**B.      FNN's Intervention Is Proper Under Rule 24**

**1.     Intervention as of Right**

Non-Party Dominion does not discuss the factors that inform a Rule 24 intervention analysis as FNN did, *citing, e.g., Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014) (Totenberg, J.); (ECF 1251-1 at 8-16), nor does

---

[2] Dominion also did not file a certificate of compliance with this Court's standing order nor did it file a certificate of interested persons or a corporate disclosure statement. It did not explicitly consent to this Court's jurisdiction and did not move to intervene.

Dominion claim FNN's Motion is untimely. Rather Dominion proceeds almost entirely on the faulty assumption that FNN must pursue the Report through discovery in the Delaware suit which would be entirely futile. Neither the Plaintiff in the Delaware case (Dominion) nor the state judge can override this Court's sealing order. This Court—*and only this court* (or the Eleventh Circuit)—can unseal the Report, which is evidence directly relevant to the Delaware litigation where Dominion has sued FNN for over a billion dollars. As a result, failure to obtain this indisputably material evidence will "as a practical matter impair or impede [FNN's] ability to protect its interest" as Rule 24(a) contemplates.

This is not a matter of speculation. FNN has asked Dominion whether it will produce the redacted version of the Report. Dominion responded that it will do so "pursuant to [the Delaware] protective order, provided that we satisfy any requirements we need to under the protective order in the *Curling* case, and to the extent we have permission in *Curling* to share it in [Delaware], which we do not presently have." *See* Exhibit 1 (emails with Dominion's Delaware counsel). And even then, Dominion is refusing to produce the unredacted Report because of its unilateral determination that "we do not think that copy needs to or should be produced [in Delaware]." *Id.* In all events, FNN needs this Court to grant access to the Report so that Dominion can satisfy its discovery obligations, and refusing this

limited intervention will harm FNN's ability to "protect its interest" in Delaware by concealing from FNN facts bearing directly on its defense.

### 2. Permissive Intervention

Non-Party Dominion also dismisses the many cases where permissive intervention is routinely and liberally allowed. *See Comm'r Ala. Dep't of Corrs. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1174 n.12 (11th Cir. 2019) ("[C]ourts have been willing to adopt generous interpretations of Rule 24 (b) because of the need for an effective mechanism for third-party claims of access to information generated through judicial proceedings.") (*quoting EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998)).

This is a paradigmatic example, as the Report relates to a paramount issue of public concern—the integrity of the election system. As the Fourth Circuit has recognized, intervention is especially important to help "monitor[] not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014).

Dominion attempts to distinguish the many cases FNN cites by focusing on whether the sealing was determined to be proper or not. But whether the sealing order is appropriate is a matter for *after* intervention is allowed not a reason to deny it in the first instance. It appears that the parties have agreed that at least a redacted

version of the Report should be released. If the Court agrees, FNN will then assess whether it needs to press further for full openness or more limited access in light of its special circumstances.

### III. The balancing of the interests favors the limited disclosure FNN seeks.

Under the particular circumstances of this case, FNN's unique interest in limited access to the Report outweighs any interest in keeping the Report under seal.

At its core, the Report contains (1) an expert opinion, (2) opining on vulnerabilities of Dominion's voting systems, (3) in some of the same voting machines at issue in Dominion's defamation claim against FNN—and, (4) crucially, Halderman's opinions in this case appear to *directly contradict* his opinions offered in Dominion's defamation case against FNN regarding vulnerabilities in Dominion's voting systems. *See* ECF 1251-1 at 1-5. In other words, the Report is unique and powerful countervailing evidence which undermines Dominion's billion dollar claims against FNN.

Though FNN does not know precisely what the Report says, publicly available documents on the record provide a glimpse of the Report's findings. In a declaration filed in this case, Halderman characterized the Report as a document that "describes numerous security vulnerabilities in Georgia's Dominion ICX BMDs." Decl. of Halderman ¶ 1 (Sept. 21, 2021) (Doc. 1177-1). These same flaws are at

issue in Dominion's lawsuit against FNN. Indeed, as Curling's counsel has acknowledged, the "vulnerabilities [described] in Dr. Halderman's report . . . are undisputed[.]" Tr. of Aug. 19, 2021, Status Conference at 31:8-11 (Doc. 1160); *see also* Tr. of July 26, 2021, Telephone Conference at 39:19-20 (Doc. 1143) (argument by Curling's counsel describing "the many serious vulnerabilities . . . identified" in "Dr. Halderman's report.").

The combination of FNN's uniquely strong interest and the limited attorney's-eyes-only access FNN seeks ensures that FNN's request satisfies the Eleventh Circuit's balancing test—which "include[es]" the following factors: "[1] whether allowing access would impair court functions or [2] harm legitimate privacy interests, [3] the degree of and likelihood of injury if made public, [4] the reliability of the information, [5] whether there will be an opportunity to respond to the information, [6] whether the information concerns public officials or public concerns, and [7] the availability of a less onerous alternative to sealing the documents." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021) (quotation omitted) (enumeration added).

All of the factors either weigh in favor of FNN or are mitigated by FNN's limited request. The Report "concerns public officials or public concerns," because its contents detail the potential for abuse in elections—an issue at the very heart of

our democracy. *Id.* Similarly, because this case concerns how well Georgia's elections function, there "will be an opportunity to respond to the information" and the "reliability" of the Report will be tested through the adversarial process. *Id.* To the extent that, notwithstanding the parties' agreement that public disclosure of some version of the report is warranted, further dissemination of the Report would "harm legitimate privacy interests" or result in "injury if made public," those concerns are fully mitigated by the attorney's-eyes-only access FNN requests. *Id.* And this limited access demonstrates "the availability of a less onerous alternative to sealing the documents." *Id.* Finally, there is no indication that granting FNN's attorneys limited access "would impair court functions." *Id.*

The arguments that Dominion offers to the contrary are unpersuasive. As an initial matter, because Dominion is a "Non-Party" (Dom. Opp. 1), its interest plays no role in this balancing test. *Callahan*, 17 F.4th at 1363 ("[A court must] evaluate whether good cause exists to prevent . . . access, balancing 'the asserted right of access against *the other party's* interest in keeping the information confidential.'" (emphasis added) (quoting *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007)).

Dominion's specific arguments also fail. First, citing this Court's denial of Louisiana's motion to intervene, Dominion argues (Dom. Opp. 2) that this Court

"has already considered and denied the relief [FNN] now seeks." But the balancing that the Court undertook in denying Louisiana's request is necessarily party-specific. *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) ("This standard requires the district court to balance *the party's* interest in obtaining access against the *other party's* interest in keeping the information confidential." (emphases added)). And the Court did not consider FNN's interests in considering Louisiana's motion or have the opportunity to balance FNN's targeted, unique interests against the interests that the parties have asserted here. As addressed *supra*, pages 4–6, and in its Motion (ECF 1251-1 at 1-5, 13 n.3), FNN has a unique interest in accessing *this* Report from Halderman regarding Dominion voting systems' vulnerabilities. Specifically, FNN seeks this information to test the veracity of Halderman's own opinions, which Dominion has injected into its lawsuit against FNN. Louisiana does not share this interest with FNN. Furthermore, the parties in this case have now announced agreement that (at least) a redacted version of the Report should be released. There was no such agreement when Louisiana sought access to the report, and the agreement is another factor tipping the balance in favor of granting FNN access here.

Second, again citing this Court's denial of Louisiana's motion to intervene, Dominion argues that granting FNN's request "could also open the floodgates to

similar requests from other individuals and entities around the country," and that this "would also increase the potential for hacking and misuse of sensitive, confidential election system information." Dom. Opp. 3 (citing Denial Order at 5 (ECF 1249)). But "concern that publication of [a judicial record] might lead the public to flood [the Court] with correspondence and telephone calls," while "understandable," does not "outweigh[]" FNN's targeted, unique interest here. *Newman v. Graddick*, 696 F.2d 796, 803–04 (11th Cir. 1983). Specifically, FNN has demonstrated a unique, affirmative interest in the Report (plus Dominion's agreement to produce it)—information crucial to testing the veracity of Halderman's statements on the same Dominion voting systems' vulnerabilities in a contrary manner in another lawsuit. So there is no concern that granting FNN's targeted motion based on unique interests would require the Court to entertain various other motions lacking this specific interest. *See id.*

Moreover, the problem that Dominion highlights is a product of its own making. Dominion and its former head of security, Eric Coomer, have filed defamation lawsuits against approximately 40 individuals or businesses and threatened over 150 more (including Halderman although Dominion later retracted the threat against him). Dominion cannot create the situation and then hope to profit from it.

Third, the limited access FNN requests fully mitigates the likelihood of disclosure. *Callahan*, 17 F.4th at 1363.

Fourth, Dominion argues (Dom. Opp. 5) that the "materials" FNN seeks are available through the discovery process in a separate action. As addressed *supra*, pages 4–6, however, and in Dominion's correspondence with FNN's counsel, that is not accurate. *See* Exhibit 1.

Fifth, Dominion argues (Dom. Opp. 7) that a document can be disclosed only if it "did not warrant sealing in the first instance." That is not the law. The Eleventh Circuit discussed this exact issue in *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, concluding that a protective order under the Federal Rules of Civil Procedure and Eleventh Circuit case law makes "documents presumptively confidential *until challenged*." 263 F.3d 1307-08 (emphasis added). Likewise, in *EEOC v. National Children's Center, Inc.*, the D.C. Circuit reversed the district court's denial of intervention with directions for the lower court to consider whether the would-be intervenor should receive the same thing that previous intervenors had: "access to the requested materials, *subject to a protective order that prohibited their public dissemination*." 146 F.3d at 1048 (emphasis added).

### IV. FNN requests limited access to the redacted version of the Report even if the Court denies access to the full Report.

The day after the State filed its Response, Georgia Secretary of State Raffensperger issued a statement calling for the Report's release in full. Press Release, *Secretary Raffensperger Calls on J. Alex Halderman to Agree to Release "Secret Report" and Pre-Election Testimony* (Jan. 27, 2022), https://bit.ly/3HloA8a. Both Curling and the Coalition Plaintiffs have also asked the Court to release "at least" a redacted version of the Report. Tr. of Jan. 27, 2022 Telephone Conference at 80:23-81:21 (statement of Curling's counsel).

If the Court denies FNN's motion for limited access to the unredacted Report, FNN asks that the Court, in the alternative, grant FNN limited access to the redacted version of the Report that the parties have agreed to provide to the Court. *Id.* at 86:3–5. Because no party to the litigation publicly objects to disclosure of the redacted copy, the balance of the interests firmly favors limited disclosure of, at minimum, the redacted version of the Report. *See supra* Part III.

### V. Conclusion

For the foregoing reasons, the Court should grant FNN's motion to intervene and grant FNN access to the Halderman report, subject to such terms as the Court deems appropriate.

Dated: February 9, 2022 /s/Charles E. Peeler
Charles E. Peeler
Georgia Bar No. 570399
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Telephone: 404.885.3409
Email: Charles.peeler@troutman.com

Charles L. Babcock (Admitted Pro Hac Vice)
Joel Glover (Admitted Pro Hac Vice)
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4210
Email: cbabcock@jw.com

Scott A. Keller (Admitted Pro Hac Vice)
LEHOTSKY KELLER LLP
200 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (512) 693-8350

*Attorneys for Fox News Network, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point-size of 14.

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Telephone: 404.885.3409
Email: Charles.peeler@troutman.com
*Attorney for Fox News Network, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2022, I electronically filed the forgoing Reply Memorandum in Support of Motion to Intervene For Limited Purposes which will automatically send email notification of such filing to the attorneys of record.

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399
Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Telephone: 404.885.3409
Email: Charles.peeler@troutman.com
*Attorney for Fox News Network, LLC*
