## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-02989-AT |
| BRAD RAFFENSPERGER, *et al.*, | |
| Defendants. | |

## MY PILLOW, INC. AND MICHAEL LINDELL'S MEMORANDUM
## IN SUPPORT OF MOTION TO INTERVENE FOR LIMITED PURPOSE

My Pillow, Inc. and Michael Lindell (together, the "MyPillow parties") respectfully move pursuant to Fed. R. Civ. P. 24 to intervene in this action for the limited purpose of obtaining access to the report of J. Alex Halderman, Ph.D. filed on July 12, 2021 under seal as ECF no. 1130-1 ("Halderman Report") and other documents related to Dr. Halderman filed under seal.[1] The MyPillow parties have been sued in the U.S. District Court for the District of Columbia by U.S. Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") alleging that the MyPillow parties defamed Dominion

---

[1] Other documents related to Dr. Halderman presently under seal include ECF nos. 487-1, 487-3, 498, 508-1, 510, 597-1, 855-1, 908-1, 909-1, 910-1, 911-1, 1068, 1108-1, 1156-1, -2, -3, -4, -5.

regarding statements that Dominion's voting machines were hacked in the November 2020 election. The Halderman Report and other documents related to Dr. Halderman contain important information that relates directly to the defense of Dominion's claims. Indeed, Dr. Halderman stated in his July 13, 2021, Declaration that:

> I have been attempting since January, through Plaintiffs' counsel, to meet with Dominion to confidentially discuss the vulnerabilities in my report. However, Dominion has yet to agree to meet. It would be dangerous to provide Dominion with the complete report if it were then *disclosed through discovery in the company's various ongoing defamation suits* to anyone who might misuse it.

Decl. of J. Alex Halderman ¶ 8, ECF no. 1133 (July 13, 2021) (emphasis added).

Dominion's self-serving objections to intervention (which were interposed in response to parallel intervention motions filed by other parties, *see* ECF nos. 1285, 1311, and which will undoubtedly be interposed in response to this motion) provide no proper basis to exclude the MyPillow parties. Dominion, a self-interested actor, objects to intervention merely because Dominion does anything it can to obstruct access to evidence that might undermine Dominion's position in Dominion's numerous lawsuits. Per Dr. Halderman's statement quoted above, Dominion's obstruction even extends to Dr. Halderman's entreaties to discuss "critical vulnerabilities" in Dominion's voting machines that "nefarious actors" can use "to steal votes" in at least sixteen states. Decl. of J. Alex Halderman ¶¶ 2-3, 5, 8, ECF no. 1177-1 (Sept. 21, 2021) ("Sept. 21, 2021, Halderman Decl."). However, no

proper reason exists to bar the MyPillow parties from obtaining this evidence subject to the Court's confidentiality order.

## I.    INTRODUCTION

Federal Rule of Civil Procedure 24(a)(2) grants the right to intervene in an action to "anyone" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Rule 24(b)(1)(B) permits intervention by "anyone" who "has a claim or defense that shares with the main action a common question of law or fact." As the Court's Order of January 10, 2022, explained, Rule 24(b)(1) has been broadly interpreted to permit intervenors to request access to documents subject to confidentiality orders.  Order at 2-3, ECF no. 1249 (Jan. 10, 2022).  The MyPillow parties should be allowed to intervene pursuant to each of these avenues.

*The MyPillow parties seek to intervene merely to obtain access to documents subject to a confidentiality order.* The thrust of Rule 24 is to prevent intervention in an action if intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *id.* R. 24(c) ("pleading that sets out the claim or defense for which intervention is sought").  The MyPillow parties do not seek in any way to delay or affect the adjudication of the claims and defenses

between the original parties.  They merely seek to obtain access to documents subject to a confidentiality order.  The delay/prejudice concerns of Rule 24 have no significance with respect to that objective, as the case law cited by the Court implicitly recognizes.  Order at 2-3, ECF no. 1249; *see United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir. 1990) ("The most important circumstance in this case is that intervention was not on the merits, but for the sole purpose of challenging a protective order.").  Rather, when a party seeks to intervene for the purpose of obtaining access to documents that are sealed, the relevant considerations are whether the party's interest in obtaining access to public records is outweighed by a situation-specific compelling government interest. *See* Order at 4-5 ECF no. 1249; *Romero v. Drummond Co*., 480 F.3d 1234, 1246 (11th Cir. 2007).

*The MyPillow parties claim an interest relating to the transaction that is the subject of this action, and the Court's disposition of this action may impair or impede the MyPillow parties' ability to protect its interests. No existing party to this action represents the interests of the MyPillow parties.* The "transaction" that is the subject of this action is the electronic voting machines manufactured, distributed, and supported by Dominion – specifically, the vulnerability of those machines to intrusion, manipulation, or fraud.  Third Am. Compl., ECF no. 627 ¶¶ 2, 4, 5, 7, 11, 28, 34, 39, 46-47, 52, 62, 65-66, 72, 76-89 (Oct. 15, 2019).  The MyPillow parties have been sued by Dominion for defamation based on statements made by Michael

Lindell about the vulnerability of Dominion's electronic voting machines to intrusion, manipulation, and fraud. Compl. ¶¶ 62, 98, 165(x), ECF no. 1, *Dominion v. My Pillow, Inc.*, no. 1:21-cv-00445-CJN (D.D.C. Feb. 22, 2021). The Halderman Report strongly supports the conclusion that Dominion's electronic voting machines *are* vulnerable to intrusion, manipulation, and fraud. "My July 1, 2021, expert report describes numerous security vulnerabilities in Georgia's Dominion ICX BMDs. These include flaws that would allow attackers to install malicious software on the ICX . . . . They are not general weaknesses or theoretical problems, rather specific flaws in the ICX software, and I am prepared to demonstrate proof-of-concept malware that can exploit them to steal votes." Sept. 21, 2021, Halderman Decl. at ¶ 2. Dr. Halderman's other declarations and testimony in this action additionally provide evidence about the vulnerability of Dominion's machines:

- "As I have already testified, malicious modifications to the BMDs' software could undermine the integrity of election results in multiple ways, including by changing either the barcodes alone or both the barcodes and the human readable text, with the result that election outcomes could be changed without detection." Decl. of J. Alex Halderman ¶ 7, ECF no. 923-1 (Sept. 29, 2020).

- "My previous declaration cites the results of penetration tests commissioned by the California Secretary of State, which found that

attackers could modify the Dominion software installation files and 'it would be possible to inject more lethal payloads into the installers', that the anti-virus software was insufficient or non-existent, and that the BMDs had vulnerabilities that 'would be open to a variety of actors including a voter, a poll worker, an election official insider, and a vendor insider,' among other problems." Decl. of J. Alex Halderman ¶ 13, ECF no. 885-1 (Sept. 9, 2020).

However, Dominion's litigation strategy apparently seeks to bar the defendants it has sued in the District of Columbia and other jurisdictions from access to this probative evidence by bandying the defendants back and forth between different courts, arguing to each court that the defendants must not ask it, but another court, to obtain the evidence. *See* Dom. Obj. to Fox Mot. to Interv. at 4-5, ECF no. 1285 (Jan. 26, 2022). Dominion's litigation strategy is calculated to advance its own interests, but burying evidence in an artificially-created lacuna between different courts does not promote the ascertainment of the truth. If every court presented with the question of ordering access to the evidence in the Halderman Report defers responsibility for answering the question elsewhere, the right of the MyPillow parties to protect themselves from Dominion's baseless defamation actions will be

greatly impaired.  There is no other way to obtain this evidence[2] absent this Court permitting the MyPillow parties access to it.

The Court's prior Order, ECF no. 1249 (Jan. 10, 2022), raised concerns about further dissemination of the report and proposed that a prospective intervenor could simply hire Dr. Halderman as its own expert as a "less onerous alternative." However, hiring Dr. Halderman to re-create substantially the same report would defeat the Court's concern to maintain control over the sensitive information that Dr. Halderman was given access to, in order to create his original report, and would arguably run afoul of the Court's existing confidentiality order. Allowing the MyPillow parties to intervene to receive access to the original report subject to the Court's  confidentiality order best protects the information at issue.

This Court should acknowledge the MyPillow parties' entitlement to obtain evidence to defend themselves and allow intervention as of right under Rule 24(a)(2), because no other party to this action has any connection with the MyPillow parties that would represent their interests, and there is simply no other viable way to obtain this evidence if Dominion objects to production in the defamation action.

---

[2] The My Pillow parties have requested the report in discovery, but in an abundance of caution and to ensure timeliness of this Motion as well as to preserve judicial economy, they seek intervention as it is anticipated that Dominion will object to and refuse production of the report based on this Court's confidentiality order.

Failure to allow the MyPillow parties access to these judicial records would result in extreme prejudice to the MyPillow parties.

*The MyPillow parties have a claim or defense that they share with the main action, a common question of law or fact.* For the same reasons set forth above, the MyPillow parties have a defense that shares a common question of fact with the claims and defenses in this action – the vulnerability of Dominion's machines to intrusion, manipulation, and fraud.  The Halderman Report is a document in a public dispute which the MyPillow parties would be entitled to obtain without even providing a reason, if the Report were not subject to the Court's confidentiality order. The confidentiality order injects an additional consideration into the equation – does MyPillow have an interest in obtaining the evidence that outweighs the interest protected by the seal?   But that additional consideration is not, contrary to Dominion's self-serving arguments, a *discovery* question in this case.  It is a *public access* question, and it must be answered by weighing evidentiary interests against confidentiality interests, without obfuscating these decisive questions by allusions to discovery disputes in other courts.  The language of Rule 24(b)(1)(B) does not condition intervention on discovery considerations in other courts.

## II.   THE MYPILLOW PARTIES HAVE A STRONG INTEREST IN ACCESSING THE HALDERMAN REPORT.

The Halderman Report, and the other documents in this dispute related to Dr. Halderman,  contain  evidence  genuinely  probative  of  important  issues  in  the

defamation lawsuit that the MyPillow parties have been forced to defend.  Because this evidence is probative and important, the MyPillow parties have a strong interest in obtaining it.  The MyPillow parties should be allowed to access, and use, the Halderman Report and other declarations by Dr. Halderman on the same terms as the parties to this action.[3]

Dominion brought defamation claims against the MyPillow parties, demanding more than $1.3 billion in damages. Compl., ECF no. 1, *Dominion v. My Pillow, Inc.*, no. 1:21-cv-00445-CJN (D.D.C. Feb. 22, 2021).  Defamation claims brought by public figures are scrutinized closely, because of the threat they pose to First Amendment free speech rights.  *See, e.g.*, *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) (citing *New York Times v. Sullivan*, 376 U.S. 254 (1964)). Accordingly, defamation defendants in such cases, including the MyPillow parties here, must have ready access to evidence that supports their defenses of their speech. By the same measure, defamation plaintiffs in such cases, including Dominion here, cannot be heard to complain when the defendants seek to gather relevant evidence as the plaintiff "opened that door" when it filed its lawsuit. *Condit v. Dunne*, 225 F.R.D. 100, 111 (S.D.N.Y. 2004).

---

[3] There appears to be evidence before this Court submitted by another proposed Intervenor that counsel for Dominion, although a non-party, already has a copy of the unredacted report.  *See* Exhibit 1 to Fox News Network's Reply Memorandum In Support of Motion to Intervene for Limited Purpose and Request for Oral Argument, Dkt. No. 1310-1.

Dominion bases its defamation claims on statements by Michael Lindell that characterized Dominion's voting machines as corrupted, unreliable, manipulated by foreign powers, or otherwise inaccurate. Compl. ¶¶ 62, 98, 129, 165(x), ECF no. 1, *Dominion v. My Pillow, Inc.*, no. 1:21-cv-00445-CJN (D.D.C. Feb. 22, 2021).  The sealed Halderman Report concluded after extensive analysis that a Dominion voting system has "numerous security vulnerabilities" that are "specific flaws . . . that can [be] exploited to steal votes." Sept. 21, 2021, Halderman Decl. ¶ 2.  Further, the identified security flaws suggest the existence of additional, "equally critical flaws that are yet to be discovered." *Id.* ¶ 4. The Halderman Report plainly contains information and evidence relevant to the contested issue of the truth of Lindell's statements about Dominion's voting machines.   The MyPillow parties, and the District of Columbia federal district court, have an obvious interest in obtaining this evidence – the same interest in obtaining and using this evidence as the parties before the Court in this action. "The Supreme Court has long held that 'the public . . . has a right to every man's evidence." *Jones v. City of Coll. Park*, 237 F.R.D. 517, 519 (N.D. Ga. 2006) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

### III.   NO COMPELLING GOVERNMENT INTEREST JUSTIFIES DENYING THE MYPILLOW PARTIES ACCESS TO THE HALDERMAN REPORT.

The overarching principle concerning access to court filings is a presumption of public access.  "Once a matter is brought before a court for resolution, it is no

longer solely the parties' case, but also the public's case.  Absent a showing of extraordinary circumstances . . . the court file must remain accessible to the public." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).  In *Brown*, the Eleventh Circuit reversed a district court and held that a non-party was entitled to obtain access to a settlement agreement that had been filed under seal because the non-party sought to use admissions it believed the settlement agreement contained as evidence in an unrelated action. 960 F.2d at 1015-16.  "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access." *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985) (internal citation and quotations omitted).

Where access to court filings is limited, denial must be *both* "necessitated by a compelling governmental interest" *and* "narrowly tailored to that interest." *Brown*, 960 F.2d at 1015-16 (quoting *Wilson*, 759 F.2d at 1571). For purposes of this motion, the MyPillow parties do not challenge the conclusion that a "compelling governmental interest" supports keeping the complete, unredacted Halderman Report out of the hands of the general public, at least at present. However, that compelling governmental interest can be accommodated while *also* accommodating the MyPillow parties' evidentiary interest in the Halderman Report by narrowly tailoring the confidentiality restrictions in two ways.

11

First, the Court should permit the MyPillow parties unrestricted access to, and use of, a redacted version of the Halderman Report, in which any information that would assist a hacker in compromising Dominion electronic election equipment is excised. In the absence of such information, no compelling governmental interest exists to support continued sealing of the document, and the Court's order sealing the document loses all justification. "If access to protected [material] can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994). Dr. Halderman has offered to provide an abridged version of the report that removes any "specific details" that are "dangerous." Decl. of J. Alex Halderman ¶ 7, ECF no. 1133 (July 13, 2021). Further, the State of Georgia *agrees* that the Halderman Report should be made public. *See* Georgia Sec. of State, *Secretary Raffensperger Calls on J. Alex Halderman to Agree to Release "Secret Report" and Pre-Election Testimony* (Jan. 27, 2022).[4] Thus, at least one of the actual parties to this action agrees that the report can in large part be made public. The Secretary of State has the highest compelling governmental interest in protecting this information, yet even he agrees it should be released. This Court

---

[4]   *Available at* https://sos.ga.gov/news/secretary-raffensperger-calls-j-alex-halderman-agree-release-secret-report-and-pre-election.

should not stand in the way of the Defendant's agreement to release a redacted version of the document.

Second, the Court should allow the MyPillow parties to obtain access to the unredacted Halderman Report subject to the same limitations of the confidentiality order applicable to the parties in this action.   Federal courts have frequently permitted non-party access to confidentially-filed docket items where the non-party agreed to be bound by, and comply with, the court's confidentiality order. For example, in *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042 (D.C. Cir. 1998) the D.C. Circuit reversed a district court's denial of non-party's motion seeking access to confidential docket item, where "three [other] intervenors" had previously been allowed access "subject to a protective order that prohibited their public dissemination." 146 F.3d at 1048.  As a general matter, for "collateral litigants" seeking access to sealed materials a court "need not balance prejudice against secrecy because secrecy can be preserved by subjecting the intervenor to the provisions of a protective order," and "[w]hen this is the case access should be granted 'even if the need for the protected materials is minimal.'" *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 333, 339-40 (E.D. Pa. 2004) (quoting *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc*., 823 F.2d 159, 163 (6th Cir. 1987)). The MyPillow parties are willing to submit to the same confidentiality order that

binds the parties in this action, and to use the unredacted version of the Halderman

Report only in compliance with that confidentiality order.

## IV.   THE MYPILLOW PARTIES MEET
## THE ELEMENTS OF RULE 24.

A non-party may intervene under Fed. R. Civ. P. 24 in an action for the

purpose of obtaining materials filed confidentially in that action. *In re Alexander*

*Grant & Co. Litig.*, 820 F.2d 352, 354 (11th Cir. 1987) ("[A]ppellants have standing

to intervene in this action and challenge the propriety of the district court's protective

order."); *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015); *In re Midland Nat.*

*Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012); *Newby*

*v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006); *Nat'l Children's Ctr.*, 146 F.3d

at 1045; *Pansy,* 23 F.3d at 778.

The MyPillow parties meet the requirements of Rule 24 both to intervene on

a permissive basis (Rule 24(b)) and also to intervene as of right (Rule 24(a)).

### A. <u>The MyPillow Parties May Intervene Permissively for the Limited</u>
### <u>Purpose of Obtaining Access to the Halderman Report.</u>

Courts undertake a two-step inquiry in determining whether permissive

intervention under Rule 24(b) is proper. *Comm'r, Alabama Dep't of Corr. v.*

*Advance Local Media, LLC,* 918 F.3d 1161, 1171 (11th Cir. 2019). First, the

intervenor must have "a claim or defense that shares with the main action a common

question of law or fact." *Id.* (quoting Fed. R. Civ. P. 24(b)(1)(B)).  Second, the court

"must exercise discretion and consider whether the intervention will 'unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* (quoting Fed. R. Civ. P. 24(b)(3)); *accord Georgia Aquarium, Inc. v. Pritzker,* 309 F.R.D. 680, 690 (N.D. Ga. 2014).

On the first step, the MyPillow parties plainly hold a claim or defense that shares with this action common questions of fact.  When a party seeks to intervene only for the limited purpose of obtaining access to sealed judicial records, there need not be a "strong nexus of fact or law" to the issues in the original case. *Advance Loc. Media*, 918 F.3d at 1173 n.12 (quoting *Flynt*, 782 F.3d at 967); *Jessup v. Luther*, 227 F.3d 993, 997-99 (7th Cir. 2000); *Pansy*, 23 F.3d at 778; *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975).  There is no requirement that the two actions involve "the same legal theory" when "intervenors are not becoming parties to the litigation." *Nat'l Children's Ctr.*, 146 F.3d at 1048 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 474 (9th Cir. 1992)).  The limited common question of the public's interest in the confidentiality of records itself provides an adequate nexus. *Advance Loc. Media*, 918 F.3d at 1173 n.12; *Flynt*, 782 F.3d at 967.

A key subject of this action is the vulnerability of electronic election equipment manufactured, supplied, and supported by Dominion to intrusion, manipulation, and fraud.  The Halderman Report is "a 25,000 word document that is the product of twelve weeks of intensive testing of the Dominion equipment

provided" to Dr. Halderman for his examination. Decl. of J. Alex Halderman ¶¶ 2, 4, ECF no. 1304-3 (Feb. 3, 2022).  It specifically addresses "numerous security vulnerabilities" in Dominion voting equipment and warns that these "rather specific flaws" in the software "can [be] exploit[ed] to steal votes." Sept. 21, 2021, Halderman Decl. ¶ 2.  It indicates that the Dominion voting equipment "is very likely to contain other, equally critical flaws that are yet to be discovered." *Id.* ¶ 4.  And it notes Dominion's security problems are not limited to the state of Georgia. *Id.* ¶¶ 5, 8. These same issues are factual matters upon which some of the MyPillow parties' defenses turn in Dominion's defamation action in the District of D.C.  These issues bear directly upon the truthfulness, and the reasonability, of the statements by Lindell that Dominion alleges were defamatory.  Accordingly, the MyPillow parties have defenses that share common questions of fact with this action and with the subject matter of the Halderman Report, as well as Dr. Halderman's other declarations and testimony in this action that the MyPillow parties seek to obtain.

On the second step of a permissive intervention analysis, it is plain that intervention by the MyPillow parties will not unduly delay or prejudice the adjudication of the original parties' rights. The MyPillow parties do not seek to assert claims or defenses in this action.  They merely seek to obtain a copy of case materials related to Dr. Halderman.

Finally, Rule 24 requires a party seeking intervention to "timely" move for intervention, but intervention may be "timely filed even if it occurs after a case has concluded; timeliness depends on the circumstances of each case." *Advance Loc. Media*, 918 F.3d at 1171.  Timeliness is of little concern when a party seeks only to obtain access to documents filed under seal, as with this motion, for the intervention does not affect or depend upon the procedural stage of the action.  "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp.,* 905 F.2d at 1427 (allowing intervention three years after the case had been settled because intervention was "for the sole purpose of challenging a protective order").  There is widespread support for the notion that a "district court may properly consider a motion for permissive intervention, for the limited purpose of modifying a confidentiality order, even after the underlying dispute between the original parties has been resolved." 6 *Moore's Federal Practice*, § 24.23[2] (3d ed. 2004); *United States v. Jefferson Cty.*, 720 F.3d 1511, 1516 (11th Cir. 1983); *accord Marshall v. Planz*, 347 F. Supp. 2d 1198, 1201 (M.D. Ala. 2004) (citing numerous circuits). The MyPillow parties' motion to intervene is timely and will not impose any undue burden on the parties to this action.

B. **The MyPillow Parties Have a Right to Intervene to Obtain Access to the Halderman Report.**

Under Rule 24(a)(2), a non-party may exercise the right to intervene if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The commonality of interest between this action and the Dominion lawsuit against the MyPillow parties is set forth above.

Courts in the Eleventh Circuit liberally construe Rule 24's "common interest" requirement, *Stallworth v. Monsanto*, 558 F.2d 257, 269 (5th Cir. 1977), and "[a] motion to intervene is the proper procedural device for a non-party to seek access to court **documents** which have been placed **under seal**," *U.S. ex rel. Walker v. Radiology Reg'l Ctr., P.A.*, No. 2:00-cv-558-FtM-29, 2007 U.S. Dist. LEXIS 19990, 2007 WL 865563, at *1 (M.D. Fla. Mar. 21, 2007) (emphasis in original). Both the common law right of access to judicial proceedings, *see Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001), and unsealing documents in light of separate litigation involving the same or similarly related parties, *see Marshall v. Planz, Inc.*, 347 F. Supp. 2d 1198, 1206-1208 (M.D. Ala. 2004) are legitimate and compelling interests.

The MyPillow parties also satisfy the other requirements of Rule 24(a)(2) because the MyPillow parties are situated such that the Court's handling of the

information in the Halderman Report may impair or impede their ability to protect their interest, and no existing party to this action protects the interests of the MyPillow parties.  If the MyPillow parties seek discovery of the Halderman Report directly from Dominion, Dominion will likely claim it cannot turn it over because it is bound by this Court's confidentiality order.  And Dr. Halderman has averred he will not disclose his report to others while the report remains subject to the Court's confidentiality order and that the Court will be the arbiter of if and when the report is released. Sept. 21, 2021, Halderman Decl. ¶ 10 ("I of course have complied, and will continue to comply, with all directives from the Court regarding disclosure of my work in this matter."); *see also* Halderman Public Testimony Before the Louisiana Voting System Commission, Part 3, at 1:10:00 (Dec. 14, 2021) (stating that this Court will determine whether the Halderman Report will become publicly available).[5]

No party to this action holds any interest that would prompt it to obtain the Halderman Report for the benefit of the MyPillow parties. The MyPillow parties must themselves intervene to secure a copy of the report.

---

[5] *Available at* https://www.loom.com/share/d784b2995ead4cc69bf596bae3d1ce75.

## V.    THE MYPILLOW PARTIES WILL COMPLY
## WITH THE COURT'S CONFIDENTIALITY ORDER.

The MyPillow parties seek access to the Halderman Report and other case materials related to Dr. Halderman solely for purposes of litigating claims and defenses against Dominion and another electronic voting machine manufacturer, Smartmatic,[6] that is engaged in similar defamation litigation with the MyPillow parties.  Accordingly, the MyPillow parties do not ask for any exception from the confidentiality measures imposed by the Court in its confidentiality order, ECF no. 477, except that, rather than limiting their use of the information to this action, they be authorized to use the confidential information solely to litigate their claims and defenses concerning Dominion and Smartmatic.  The MyPillow parties, as non-parties, will abide by the confidentiality order and preserve the confidentiality of the non-public information in the report.

## VI.    CONCLUSION

The MyPillow parties respectfully request that the Court enter an order permitting them to intervene in this action for a limited purpose; granting them access, subject to the terms of the Court's confidentiality order, to the Halderman Report and all other materials related to Dr. Halderman filed in this action; and

---

[6] "Smartmatic" means, collectively, Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited.

granting them unrestricted access to a version of the Halderman Report redacted to remove any "specific details" that Dr. Halderman deems "dangerous."

The undersigned certify that this brief has been prepared in Times New Roman 14 point font in accordance with LR 5.1.

Dated: March 5, 2022

THE HILBERT LAW FIRM, LLC

By: */s/ Kurt R. Hilbert*
    Kurt R. Hilbert
    Georgia Bar No. 352877
    khilbert@hilbertlaw.com
    205 Norcross Street
    Roswell, Georgia 30075
    (770) 551-9310 (Telephone)
    (770) 551-9311 (Facsimile)

    *Counsel for My Pillow, Inc. and*
    *Michael J. Lindell*

PARKER DANIELS KIBORT LLC

By: */s/ Andrew D. Parker*
    Andrew D. Parke*
    MN Bar No. 195042
    parker@parkerdk.com
    Joseph A. Pull*
    D.C. Bar No. 982468
    pull@parkerdk.com
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    (612) 355-4100 (Telephone)
    (612) 355-4101 (Facsimile)

    *To Be Admitted *Pro Hac Vice*

    *Counsel for My Pillow, Inc.*

**DANIELS & TREDENNICK PLLC**

By: */s/ Douglas A. Daniels*
    Douglas A. Daniels*
    Texas Bar No. 00793579
    doug.daniels@dtlawyers.com
    Heath A. Novosad*
    Texas Bar No. 2407199
    heath.novosad@dtlawyers.com
    DANIELS & TREDENNICK PLLC
    6363 Woodway Dr., Suite 700
    Houston, TX 77057-1759
    (713) 917-0024 (Telephone)
    (713) 917-0026 (Facsimile)

*To Be Admitted *Pro Hac Vice*

*Counsel for Michael J. Lindell*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, *et al.*,

        Plaintiffs,

    v.

BRAD RAFFENSPERGER, *et al.*,

        Defendants.

Case No. 1:17-cv-02989-AT

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2022, a copy of the foregoing **MY PILLLOW, INC.'S AND MICHAEL LINDELL'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE FOR LIMITED PURPOSE** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record for the parties.

                              */s/ Kurt R. Hilbert*
                              _____
                              Kurt R. Hilbert
                              Georgia Bar No. 352877