The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,            :
                                       :
 5          PLAINTIFFS,                :
     vs.                               :  DOCKET NUMBER
 6                                     :  1:17-CV-2989-AT
     BRAD RAFFENSPERGER, ET AL.,       :
 7                                     :
            DEFENDANTS.                :
 8

 9

10        TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11          BEFORE THE HONORABLE AMY TOTENBERG

12         UNITED STATES DISTRICT SENIOR JUDGE

13                    MARCH 11, 2022

14                     3:36 P.M.

15

16

17

18

19

20

21   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                 TRANSCRIPT PRODUCED BY:

23

     OFFICIAL COURT REPORTER:      SHANNON R. WELCH, RMR, CRR
24                                 2394 UNITED STATES COURTHOUSE
                                   75 TED TURNER DRIVE, SOUTHWEST
25                                 ATLANTA, GEORGIA  30303
                                   (404) 215-1383
```

```
 1              A P P E A R A N C E S   O F   C O U N S E L

 2

 3    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
      SCHOENBERG:

 4

 5         DAVID D. CROSS
           ZACHARY D. FUCHS
 6         MORRISON & FOERSTER, LLP

 7         ADAM M. SPARKS
           HALSEY G. KNAPP
 8         KREVOLIN & HORST, LLC

 9

10

11    FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
      WILLIAM DIGGES, III, AND RICARDO DAVIS:

12

13         BRUCE BROWN
           BRUCE P. BROWN LAW

14         ROBERT ALEXANDER McGUIRE, III
           ROBERT McGUIRE LAW FIRM
15

16    FOR THE STATE OF GEORGIA DEFENDANTS:

17

18         VINCENT ROBERT RUSSO, JR.
           CAREY A. MILLER
           JOSHUA B. BELINFANTE
19         ALEXANDER F. DENTON
           ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC
20

21         BRYAN P. TYSON
           TAYLOR ENGLISH DUMA
22

23    FOR THE FULTON COUNTY DEFENDANTS:

24

25         DAVID LOWMAN
           CHERYL RINGER
```

|     |                                                                                  |
| --- | -------------------------------------------------------------------------------- |
| 1   | **P R O C E E D I N G S**                                                        |
| 2   | **(Atlanta, Fulton County, Georgia; March 11, 2022.)**                           |
| 3   | THE COURT:  Good afternoon.  This is Judge Totenberg.                            |
| 4   | We're here for a phone conference in Curling v. Raffensperger.                   |
| 5   | That's Case Number 17-CV-2989.                                                   |
| 6   | I understand we've got a host of people here.  And I                            |
| 7   | don't think I have the names of the people who are going to be                   |
| 8   | speakers.  So we have some representatives, some proposed                        |
| 9   | intervenors.  And -- but I'm not going to go through everyone's                  |
| 10  | names.  They have all been given to Mr. Martin, and he will                      |
| 11  | make sure that they are on the record.                                           |
| 12  | Well, I frankly did not expect to receive a                                      |
| 13  | 25-page-or-so memorandum on everyone's joint positions this                      |
| 14  | Friday.  I thought I was getting a much simpler document that                    |
| 15  | would simply indicate a relatively limited list of matters to                    |
| 16  | be tackled before you were ready for summary judgment.                           |
| 17  | Instead, I got a long list of discovery disputes when                           |
| 18  | I had, in fact, resolved a whole range of discovery disputes                     |
| 19  | only a few weeks earlier and -- and, of course, a little bit                     |
| 20  | more discussion but not a lot about the defendants' request for                  |
| 21  | stay.  I am not quite sure why the defendants waited up until                    |
| 22  | last week on a Friday evening to make the request.  It seemed                    |
| 23  | very belated since you knew you were going to have the Fair                      |
| 24  | Fight trial this spring, whether in March or in April and it                     |
| 25  | was going to take a substantial period of time.  So it seems                     |

1    extremely belated to me.

2              But regardless of that, I still have to sort of

3    make -- have the information necessary to know whether we can

4    have a competently presented motion for summary judgment or

5    whether the plaintiffs are opposing the motion for stay.  And I

6    know that plaintiffs said you couldn't prepare a brief in the

7    period of time and wanted until next Friday.

8              But as I understand it, next Friday is also

9    essentially the end of -- when the summary judgment motion is

10   due.  So this seemed like a -- more than a trifecta of a mess

11   in terms of saying let's wait until Friday but, meanwhile, the

12   plaintiffs are saying -- the defendants are saying we want a

13   stay altogether or we want an extension.  So I didn't really

14   feel like it was going to help me address the circumstances

15   here.

16             So let me start by saying there is likely no way

17   today that I can resolve or even address most of the discovery

18   issues that you have put before me.  A, it arrived this

19   morning.  B, I didn't expect you to give a laundry list of

20   issues.  And, C, if we're going to have a summary judgment

21   motion soon and everyone has known about -- known that, I'm not

22   inclined to allow all of the different things that was asked

23   for in terms of extensions or this or that.

24             My approach much more likely would be to say, all

25   right, if there are three items that you need, to identify what

```
1   those are, two items.  And I'm going to look at this more
2   carefully from that perspective.
3            But, really, what I need to address, first and
4   foremost, is this question:  Are we going to have a summary
5   judgment motion due on Friday?
6            So without requiring counsel for plaintiffs to, you
7   know, do a superb oral argument about this, just let me -- tell
8   me what you are thinking about this.  Because I still didn't
9   get that from the submission.
10           MR. CROSS:  Yes, Your Honor.  This is David Cross.  I
11  can speak for my group.
12           One thing that I think may be helpful for context,
13  since it bears on the summary judgment issue, is the length of
14  the filing I think wasn't helpful to the Court in trying to
15  distill the discovery issues.
16           There actually is only one open discovery issue for
17  the plaintiffs, as I understand it.  Bruce will tell me if I'm
18  wrong about that.  But I think there's literally only one
19  discrete thing that we have that we were hoping to resolve
20  before summary judgment.  Everything else we're fine to just
21  park.
22           THE COURT:  You are fine to what?  To park, P-A-R-K?
23           MR. CROSS:  Yeah, we are fine to park, to table that
24  for later.  It is not something that we need to deal with.  So
25  there is really this one discrete thing.  And there may or may
```

1    not be a dispute with the State on that.

2            But as to the motion, our position, I guess, is

3    two-fold.  One, we do think it is belated.  And we think that

4    is an important factor for the Court to consider.  This

5    deadline has been long-standing.  Everybody has been working

6    towards it.  We're now less than a week away from the due date

7    for summary judgment.  Presumably the State has drafts well in

8    hand since it has been coming for quite some time and we're now

9    less than a week out.  So we don't see a need for it.

10           And the prejudice would be substantial because we

11   have literally scheduled lots of other things in other matters,

12   hearings, filings, family vacations, all sorts of things around

13   this particular schedule.

14           And so pushing that back even by a week or two weeks

15   or three weeks becomes incredibly difficult for the folks on

16   our team.  And we are literally at the end of our bandwidth.

17   We have maxed out resources to meet these deadlines, including

18   taking depositions, two this week.

19           I have been doing a lot of the work myself.

20   Ordinarily, we have associates doing a lot of this work.  We

21   just don't have the bandwidth.  And so we have -- we have

22   planned for this particular schedule.  And we would like to

23   keep it.

24           The prejudice point, I think, is also an important

25   point, Your Honor.  The State says there is no prejudice.  But

1    that ignores the relief we're looking for, which is our view --
2    and I understand the State disagrees.  But our view is that
3    every time our clients have to vote in the current system their
4    constitutional right is violated.  And that is what we need to
5    get resolved at least as to the standing issue by the Court.
6         And so if we push it off, that means they are going
7    not just through a primary that is upcoming -- and I don't
8    think any of us are delusional to think we'll have relief
9    before then.
10        But if we put it off even by a little bit, a month or
11   two months, then we're now pushing up against critically
12   important midterm elections.  And we think when Your Honor sees
13   the record that has developed, particularly in the depositions
14   in recent weeks, we're not going to have an issue on standing
15   and we're not going to have an issue on the merits.  And we'll
16   be in a position to get relief for the upcoming elections.  And
17   any delay puts us into a *Purcell* world again.
18        And the reality is the history of this case has been
19   every time we have litigated this case in a substantive fashion
20   on the preliminary injunctions we have always been on the cusp
21   of a major election cycle and the argument we always face is
22   the same.  Nothing can be done, Judge, because we're on the
23   cusp of an election cycle.  And we don't want to run into that
24   again.
25        So we think everybody has been working towards this

1    deadline.  Your Honor was unequivocal in our last hearing that

2    there would be no further extensions.  I don't think you could

3    have been any clearer about that.  We have worked hard to hold

4    it.  And I say Your Honor should hold to that and keep the

5    dates and let's get this case resolved one way or the other.

6                    MR. BROWN:  Your Honor, this is Bruce --

7                    THE COURT:  Go ahead.

8                    MR. BROWN:  Your Honor, this is Bruce Brown.  I would

9    echo everything that Mr. Cross said.  The Coalition plaintiffs

10   have indicated that we would agree to a seven-day extension

11   just basically as a professional courtesy if they are having

12   staffing issues.

13                    However, we would underscore what Mr. Cross said

14   about bandwidth.  We have been running on fumes or running on

15   empty for a while.  And so it is very difficult for us to

16   continue with an extension of the motion for summary judgment

17   period.

18                    And we think that the State's reasons for needing an

19   extension are not overwhelming.  This is a motion for summary

20   judgment.  It is extremely unlikely that any other discovery

21   that they may need would eliminate any issue of material fact,

22   particularly on the issues that are likely to be before Your

23   Honor.  And so we would concur with Mr. Cross on that.

24                    We have a different view on the stay mainly because

25   if the case is stayed then we can catch our breath in terms of

1    resources.  But if we have a stay or if there is an extension,

2    Your Honor, we would ask that the consideration of our motion

3    for attorneys' fees not be stayed and not -- and be considered.

4    Because as the case goes on, the hardship of that not being

5    addressed increases and it just makes us -- it frankly makes it

6    very difficult for us to continue.

7              So that is what we would add to Mr. Cross' statement.

8    Thank you.

9              THE COURT:  Mr. Brown, is your client not opposing a

10   stay?

11             MR. BROWN:  We do not oppose a stay provided -- with

12   a couple of important provisos.  One is that it is immediate.

13   In other words, that the State doesn't continue to churn for a

14   couple -- two more weeks in discovery, Number 1.  Number 2,

15   that the stay would not include a consideration of our fees,

16   that that is something the Court would consider.

17             We would also encourage the State -- we would oppose

18   a long stay, that is, a stay of more than, say, six weeks,

19   unless the State agreed to use something other than the BMDs

20   until CISA has finished their review.  Our view is that --

21             THE COURT:  I'm sorry.  The condition you are saying

22   if it wouldn't last more than six weeks approximately and what

23   about the BMDs?

24             MR. BROWN:  Well, we would agree to a longer stay if

25   the State would agree to not use the BMDs while CISA is

1    considering whether and if there is a mitigation for the newest

2    of the vulnerabilities with the system is in danger of.

3              COURT REPORTER:  I'm sorry.  Is what?  The very last

4    words, Mr. Brown?

5              MR. BROWN:  I didn't say it very well.  But just the

6    newest vulnerability that it is subject to.

7              Thank you, Ms. Welch.

8              THE COURT:  Let me go back then and make sure I

9    understand Mr. Cross' position on behalf of Ms. Curling and her

10   co-plaintiffs about the stay in particular.

11             You are opposing it, or do you have a position that

12   is consistent with Mr. Brown?

13             MR. CROSS:  We oppose the stay, Your Honor.

14             THE COURT:  And then another point of clarification

15   is:  It appeared to me that the Coalition was saying if you

16   have a stay you want some extra time to do more discovery

17   still; whereas, I don't know whether, Mr. Cross, you are

18   looking for more discovery because you mentioned one open

19   issue.

20             But let me first ask, Mr. Brown.

21             MR. BROWN:  Yes.  Thank you, Your Honor.

22             THE COURT:  What are you thinking you're trying to --

23   if I were to grant a stay, for instance, to a date that is post

24   the completion of the Fair Fight trial, which is roughly the

25   six weeks that you're talking about but it actually might still

1    be in the middle of Fair Fight for all I know because that

2    trial is not supposed to begin until the middle of April and it

3    is supposed to last approximately a month --

4          MR. BROWN:  Your Honor, we would -- the way we look

5    at the discovery is sort of two phases.  We agree with Mr.

6    Cross that prior to a motion for summary judgment that we do

7    not need additional discovery and we would not -- it would be

8    inconsistent with an agreement for a stay to be subject to

9    discovery from the State defendants.

10         And so -- however, one reason why the submission that

11   we made was longer than we wanted it to be or that you wanted

12   to see, quite frankly, is that we wanted also to anticipate

13   what might happen after the motion for summary judgment.

14         So what we did was both Curling and Coalition

15   plaintiffs sort of stepped back and said, wait a minute, we

16   don't need all of this right now.  We can deal with some of

17   this if the motion for summary judgment is denied.

18         And so that's part of what you are seeing is that

19   separation into phases.

20         THE COURT:  So do you anticipate you're going to

21   file -- I'm seeing cross-motions for summary judgment?  Is that

22   your anticipation?

23         MR. BROWN:  I don't know if Mr. Cross -- I don't

24   think so, Your Honor.

25         THE COURT:  Okay.  And are you anticipating the

1   motion will be solely about standing or about something broader

2   than standing?

3            MR. BROWN:  Our anticipation -- right.  We have

4   jaw-boned this a little bit with the State defendants.  And

5   they have pushed back on my suggestion that the only thing they

6   have now is standing, and they have resisted that it is only

7   going to be for standing.

8            Now, what they will say, Your Honor, is that -- is

9   that the motion for summary judgment consideration will be

10  tentative until the Eleventh Circuit rules.  And I think

11  Curling and the Coalition plaintiffs would push back as

12  strongly as we can on that suggestion.  Because then the case

13  will never be litigated -- will never get done.  And we

14  disagree with that being the case in light of the issues that

15  are actually in front of the Eleventh Circuit.

16           So we don't think the Eleventh Circuit is any reason

17  that Your Honor should not continue pushing this case along and

18  that it would be a mistake to do so and the State's reasoning

19  on that we do not find persuasive.

20           MR. CROSS:  Your Honor, this is David Cross.  Just

21  briefly, if I may.

22           Our understanding has always been summary judgment

23  was going to be limited to standing.  And that was a big driver

24  of having abbreviated discovery.  And we have tried really hard

25  to comply with that.

1          We have really narrowed our focus on Dr. Halderman's

2     report, on specific vulnerabilities with the system, specific

3     evidence of particular potential compromises, and then the

4     physical security measures that the State has pointed to as a

5     response to Dr. Halderman's report.

6          And I think it would be prejudicial if the State were

7     now to come in and say they are going to brief the full merits

8     of the case for summary judgment when each time we've asked for

9     broader discovery they have always responded no, no, no, this

10    is only abbreviated discovery for the narrow purpose of

11    addressing standing.

12         So to Bruce's point, we're willing, for example,

13    right now not to pursue Rule 30(b)(6) testimony of witnesses

14    that would be knowledgeable.  Because as we understand it, the

15    only thing that is going to get litigated now is standing.  And

16    we're comfortable with the record the way it is, as long as the

17    State is precluded from putting in evidence that should have

18    come out in the depositions.

19         But if they are going to come forward and say we want

20    to brief the whole case, then things get more complicated

21    because we had understood that has never been where the Court

22    was going and where we were going.

23         MR. MILLER:  Your Honor, this is Carey Miller on

24    behalf of the State.  If I may.

25         THE COURT:  Yes.

1          MR. MILLER:  I do want to just briefly address that

2    last point because it is respectfully a complete 180 from where

3    I thought this whole thing had been heading.

4          The plaintiffs are correct.  We have repeatedly

5    requested that this be limited to standing, raised the concept

6    of a summary judgment limited to standing.  But our

7    understanding is that we had moved well beyond that.

8          In fact, at the January 27, 2022, conference, I

9    specifically made clear in response to, I believe, a statement

10   by one of the plaintiffs' counsel assuming that we were moving

11   only on standing -- on Page 74 of the transcript, I stated,

12   Your Honor, I do just want to make clear to the Court -- this

13   is Carey Miller -- we will not be moving for summary judgment

14   limited purely to standing issues.

15         That has simply never been the case.  Your Honor, we

16   have urged this Court throughout that standing should be of the

17   top import.  As we understood from our November conference, the

18   Court agreed with that but that no limitation had been imposed

19   in terms of what would be at issue as we approached summary

20   judgment.

21         And, Your Honor -- if Your Honor will indulge me, I

22   do want to just respond briefly to a few of the points that

23   were raised since we've gotten on the call.

24         THE COURT:  Go ahead.

25         MR. MILLER:  With respect to the timeliness of the

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1   motion, I want to raise a few different things that frankly

2   have thrown the schedule a new wrench that we did not

3   anticipate.

4           As a starting point, when the current schedule was

5   set, the Fair Fight trial was scheduled to be held in mid

6   February.  That was changed in mid to late January upon the

7   omicron variant sort of coming into the state and in an

8   abundance of caution by the Court and the parties.  At that

9   point, it was moved to April and May.

10          Given the amount of resources the State has expended

11  in this case, the -- I cannot recall who.  I believe Mr. Brown

12  spoke to running on empty.  But we are in the same boat.  We

13  have offered up our clients for over 40 hours of deposition

14  testimony.  Just our clients and former employees.

15          We've proceeded along and tried to tease out at every

16  step of the turn the remaining discovery that was needed.  One

17  of the plaintiffs' depositions was not taken until this week.

18  I don't mean to, you know, imply any nefarious reason for that.

19  It was simply personal reasons that caused an issue.  We still

20  don't have a transcript for that deposition.

21          Multiple other depositions were delayed at the

22  plaintiffs' request on multiple occasions.  And since the time

23  of the initial schedule, we also received the setting of our

24  oral argument date in the Eleventh Circuit.

25          And, Your Honor, when we were at the point in May of

1   last year, we had no concept as to when the appeals in the

2   Eleventh Circuit would even approach resolution.  I don't mean

3   to imply that we're going to know when the oral argument is set

4   that we're going to get an order from the bench by the Eleventh

5   Circuit.  That certainly won't be the case.

6          But we now have gotten to the point where discovery

7   has gone on so long at plaintiffs' insisting because they were

8   unsatisfied with the voluminous documents produced and the

9   amount of deposition testimony in this case that we now are

10  beginning to encroach upon a time period we can expect the

11  Eleventh Circuit to rule.

12         And with respect to the issues that are bound up in

13  the appeals, we don't know for certain whether the Eleventh

14  Circuit is going to address standing but we have raised it.  We

15  do, however, have reason to believe that it is very likely that

16  the Eleventh Circuit will address the application of

17  Anderson-Burdick to the claims in this case.  The Eleventh

18  Circuit has already done so with a motions panel opinion when

19  Coalition plaintiffs sought to lift the stay that had been

20  imposed.

21         Your Honor, the case cited in our brief, the

22  *Miccosukee Tribe of Indians v. South Water Management District*

23  is very clear as to the efficiencies gained by a stay of this

24  sort.  The Eleventh Circuit said not only is a good reason, it

25  may, in fact, be an excellent one, to stay the case to await a

```
1    federal appellate decision that is likely to have a substantial
2    or controlling effect on the claims and issues in the stayed
3    case.
4            And, of course, most of the time when these concepts
5    come up, it is typically not within the same case.  We are
6    beyond likely to have a substantial or controlling effect --
7    extremely likely, if not nearly certain, with an opinion from
8    the Eleventh Circuit.
9            And all of this is to say I understand the
10   plaintiffs' position on wanting to get ahead of the Eleventh
11   Circuit right now.  However, regardless, we're going to be in a
12   position where we're engaging in this exercise all over again
13   once the Eleventh Circuit rules.
14           So in other words --
15           THE COURT:  You know, that could be -- it could be
16   June.  It could be June next year.
17           MR. MILLER:  That's correct, Your Honor.  That's
18   absolutely correct.
19           And at that point in time, presumably supplemental
20   briefing will be required.  Who knows if additional discovery
21   will be requested.
22           But, Your Honor, all that is to say -- one thing that
23   I heard earlier is with respect to staying the case
24   immediately.  The State defendants don't oppose that as long as
25   when we're -- when the stay is lifted that we are able to
```

1   obtain the 30(b)(6) deposition of Coalition for Good

2   Governance.

3         And lastly, Your Honor --

4         THE COURT:  Wait a second.  So you don't oppose

5   having a temporary stay?  I mean, that is -- that is what

6   Mr. Brown was proposing was a temporary.

7         You don't oppose that?

8         MR. MILLER:  Not out of hand, Your Honor.  The time

9   period that Mr. Brown suggested is still going to put us in the

10  middle of the Fair Fight trial so that that is the one

11  difficulty.  But except assuming that can be worked around, we

12  don't necessarily oppose a temporary stay.

13        We do, however, believe that doing so is again going

14  to create inefficiencies because the parties are going to have

15  to come back to you and brief the issues.

16        And, Your Honor, of course, the elephant in the room

17  here continues to be whatever CISA's process is at this

18  point -- who knows -- we don't know when that will arrive.  I

19  suspect CISA, you know, is not focused solely on this case.

20        And I presume that depending on what CISA says you

21  may have a preliminary injunction in front of you very, very

22  quickly, which will again eliminate the benefit of moving

23  forward into summary judgment at this juncture.

24        And finally, Your Honor, I do want to note, you know,

25  briefly -- and, respectfully, I wish I didn't have to.  But the

1   State defendants need to raise the issue concerning the

2   time-sensitive issue and communications with staff at the

3   court.

4            THE COURT:  Well, I will address that separately but

5   not today.

6            MR. MILLER:  Okay.  Thank you, Your Honor.

7            THE COURT:  And I am not -- you know, I really feel

8   like that it has been raised in a way that is not suitable for

9   this.  But I will address it.

10           But I'm not sure that you answered the question of

11  why did the State not move for a stay then or move for

12  consideration of its schedule when the Fair Fight case was

13  being rescheduled.

14           I mean, it was rescheduled before February when it

15  was scheduled.  Obviously, you knew before then.  So that is --

16  I don't think you have responded to that.

17           MR. MILLER:  Your Honor -- and that was to the first

18  point as to the number of depositions that have been delayed in

19  discovery in this case at plaintiffs' request for the purpose

20  of getting to summary judgment.

21           At this juncture, even if I wanted to move for

22  summary judgment today, I wouldn't have a deposition transcript

23  for Ms. Price.  I have a rough transcript.  However, what we

24  have seen in this case is I would expect an errata sheet from

25  Ms. Price.

1          So, Your Honor, given the delay in the depositions,

2     our inability to take the deposition of the Coalition for Good

3     Governance, we're just simply unable to do so at this juncture.

4     I wish we could have done it earlier.  But I continued to

5     believe that we could push through and get this thing done

6     because frankly, Your Honor, we want to be done with this.

7          MR. CROSS:  Your Honor, this is David Cross.  Could

8     I --

9          THE COURT:  Yes.

10          MR. CROSS:  I guess a couple of points.

11          Just to pick up on the last one, I'm not sure what

12     Mr. Miller means when he says that a number of the depositions

13     were delayed at plaintiffs' request.

14          All of the depositions were completed last month

15     except for Mr. Beaver.  That one was delayed because we had to

16     wait for the Fortalice documents and then we had to get him

17     scheduled.  That was a short deposition that occurred

18     yesterday.  And there could have been no revelations to the

19     defendants since that is their own witness and their own

20     reports.

21          Mr. Sterling was delayed later in February at the

22     State's request, not ours.  And so I'm just not sure what he's

23     referring to.

24          The prior --

25          MR. MILLER:  David, I'll correct you right there.

1          **(Unintelligible cross-talk)**

2          MR. CROSS:  Hold on, Mr. Miller.  Mr. Miller, please

3     stop.

4          The depositions were mostly done in January and -- or

5     maybe early -- mostly were done in January, some in early

6     February.

7          So the idea that depositions of any deponent warrants

8     an extension, I think, just doesn't hold.  And we weren't the

9     ones urging those except weeks ago, weeks ago.

10          As to Ms. Price, the State can get a copy of her

11     transcript anytime they want.  They just have to ask the court

12     reporter.  Court reporters can turn them around in a day.  The

13     entire deposition lasted about three or four hours.  And there

14     were no new revelations in that.

15          And it was -- when we scheduled that, when we offered

16     March 8th to the State, we pointed out it would be about a week

17     and a half before their motion was due.  I have looked back in

18     the correspondence.  I don't have anything from them saying,

19     that is too late, we would need more time.  And it is hard to

20     believe that that short deposition could warrant more time.

21          On the appeal, we've heard this point before that

22     they expect the Court of Appeals to say Anderson-Burdick

23     doesn't apply and that the order that came out of the motions

24     panel suggest that.  There is no reading of that order that can

25     support that, Your Honor.  I have read it multiple times in the

1    last couple of days because we heard this yesterday.  I have it

2    in front of me.

3            All the motions panel said about Anderson-Burdick is

4    a question whether the Anderson-Burdick standard was satisfied

5    on the discrete question of the paper pollbook relief.  It does

6    not suggest in any way that the Eleventh Circuit thinks the

7    Anderson-Burdick standard does not apply.  It does not address

8    it in the broader context of the relief in this case.

9            And importantly, Your Honor, while the motions

10   panel -- two of the judges felt the need to write something,

11   they specifically did not suggest there is no standing here

12   either.  They went as far as to suggest that they thought the

13   Court may have erred in finding the standard was satisfied on

14   the paper pollbook and that is it.

15           And there is nothing to suggest that the Eleventh

16   Circuit is going to suddenly weigh in on standing.  The last

17   time we were before them in this case the State also made

18   standing arguments, essentially the same arguments.  And that

19   appeal was dismissed as frivolous.

20           And to Your Honor's point, even if we thought for

21   some reason there might be a standing guidance, that could be a

22   year away.  And that is why courts generally don't stay cases

23   for the purpose of an appeal, particularly here where the

24   appeal, as the State has pointed out, only involves the

25   Coalition relief as the position they have taken with the

1    Eleventh Circuit.

2              They say we, Curling, shouldn't even be heard at the

3    Eleventh Circuit.  And so it has no bearing on our claims, and

4    standing is not properly before them.

5              On the CISA process, Your Honor, I guess the only

6    thing I will say is it is unclear what CISA is going to do.  I

7    don't think that is something to wait for from a summary

8    judgment standpoint.  I don't think what they do -- it could

9    bear on standing.  It may not.  We have got a record that we

10   think amply supports it.  So Your Honor doesn't need to wait

11   for that.  We don't know how long that process will run.

12             When Mr. Miller suggests you could be facing a

13   preliminary injunction motion based on what comes out of CISA

14   it sounds like he's implying that CISA could have a report that

15   validates Dr. Halderman's vulnerabilities and that would prompt

16   us to file for preliminary injunction motion.

17             We fully anticipate CISA will validate and will find

18   that those vulnerabilities are valid.  And that is all the more

19   reason for us to move forward now and get this record before

20   Your Honor so the case can proceed to relief.

21             Thank you.

22             MR. MILLER:  Your Honor, if I may, just a couple of

23   quick points.

24             Initially, with respect to Mr. Sterling, as I recall,

25   his deposition was originally scheduled in the late part of

1    January, early part of February.  I received a call from

2    plaintiffs' counsel requesting that we delay that deposition

3    because at the time we were also dealing with multiple

4    conferences with the Court with respect to this CISA

5    coordinated vulnerability disclosure and a number of other

6    matters that happened to be going on in the case.

7            At that point, it was delayed to February 16, which

8    we then ran into the issue of Mr. Sterling having oral surgery

9    that was apparently required on a time-sensitive basis.  That

10   is the process behind Mr. Sterling's deposition.  It should

11   have been concluded in the first week of February.

12           With respect to Ms. Price, Mr. Cross is correct.  We

13   did, in fact, request that Ms. Price's deposition be held no

14   later than March the 4th so that we could adequately turn

15   around and prepare for summary judgment.

16           What subsequently happened is the response I got back

17   from Mr. Cross was March 8th.  At that point, I just needed to

18   confirm the deposition so that we could get it done.  I didn't

19   think we would be in a position to go to the Court, ask for

20   relief on an expedited basis to demand a deposition that had

21   been delayed for personal reasons to be conducted sooner than,

22   as we understood it, Ms. Price may be healthy enough to provide

23   deposition testimony.

24           Your Honor, with respect to the point on

25   Anderson-Burdick, my point is not that Anderson-Burdick does

1  not apply.  In fact, the motions panel opinion in the New

2  Georgia Project case was very clear that Anderson-Burdick

3  applies to burdens on the right to vote.

4        My point was elucidating the proper application of

5  the Anderson-Burdick framework.  And that is what the motions

6  panel -- the two judges concurring on the motions panel

7  expressed therein, which would simply to be effective voting

8  systems do not impose a severe burden solely because they are

9  electronic.  And that was citing to the *Wechsler* case that we

10 have discussed on multiple occasions.

11       And, in fact, the Court found that there is a

12 likelihood of success on the merits with respect to application

13 of the Anderson-Burdick framework.  So that is the point of

14 clarification on Anderson-Burdick.

15       The State defendants do not dispute that

16 Anderson-Burdick applies.  It would be a little bit odd for me

17 to say so, frankly.

18       THE COURT:  Okay.  So the other thing, Mr. Miller and

19 Mr. Brown, related to the 30(b)(6) deposition -- and,

20 Mr. Brown, you indicated that you basically felt like you had

21 offered enough dates and that the State had not taken advantage

22 of those dates and therefore they had effectively waived their

23 right to take the deposition?

24       MR. BROWN:  Yes, Your Honor.  At the beginning of

25 February -- that's correct, Your Honor.

1          At the beginning of February, the State had dates

2   from us.  We said that we would produce Ms. Marks any day in

3   February.  And we -- you know, they had the summary judgment

4   motion deadline looking at them right in the face on

5   February 1st.  And they decided not to take her deposition at

6   any day in February.

7          And the first time I got actual dates from them was

8   yesterday.  And our view is that, you know, whatever came -- we

9   can talk all day about what came before January, December, all

10  the way back to 2019, 2018.

11         But this is a deposition on standing.  The motion has

12  been set forever.  And we're sort of at our -- we're at --

13  we're at a loss as to why the State should be given a break on

14  this, frankly.

15         MR. MILLER:  Your Honor, I can briefly respond to

16  that.  The deposition of the Coalition for Good Governance was

17  originally scheduled to be held on October the 4th of 2021.

18  That deposition was delayed at Coalition plaintiffs' request so

19  that they could complete document productions.

20         On February 2nd, I requested a confirmation as to

21  document productions that had been ordered by the Court in the

22  January 27 conference.  I received no response to that until a

23  co-counsel of mine re-raised the issue again.  And we received

24  that response on March 3, I believe.

25         Your Honor, setting all that aside --

```
1              THE COURT:  All right.  Whoa, whoa, whoa.  So what

2      you got was there was a supplementation or you have never

3      gotten any documents?  Or -- I don't know -- I'm having a

4      little bit of trouble understanding what you received on

5      March 3rd that you say -- or your co-counsel got.

6              MR. MILLER:  Yes, Your Honor.  I was actually trying

7      to pull up my message just now.

8              MR. BROWN:  I'll tell you, Your Honor --

9              MR. MILLER:  Your Honor --

10                   (Unintelligible cross-talk)

11             THE COURT:  Just let Mr. Miller continue.  And then,

12     Mr. Brown, I'll let you respond afterwards.

13             MR. BROWN:  Sure.

14             THE COURT:  Go ahead, Mr. Miller.

15             MR. MILLER:  So, Your Honor, in the January 27

16     conference, one of the issues that was addressed there, amongst

17     others, was the State defendants' discovery dispute with the

18     Coalition plaintiffs.

19             Part of that also included the interrogatory to the

20     Coalition plaintiffs for identification of those on which they

21     will rely upon for standing.  That discovery dispute states --

22     the initial one is at Doc. 1245.  Because of the lack of

23     response, it ended up extending to multiple documents for

24     response and then replies.

25             But shortly thereafter on February 2 -- excuse me --
```

yeah, February 2, late that evening, we received a supplemental

production, an interrogatory response that identified

individuals for associational standing, and notice that

additional documents would be produced, which included a

response to a handful of the items addressed in the conference.

I posed four questions to Mr. Brown at that time,

which were -- and simply requested that we put this issue to

bed so that we could move forward.

I asked him on Request Number 3 and Request

Number 9 -- we appeared to be missing some documents with

respect to particular individuals that the Court ordered

production.

The second point being the Court ordered production

for response -- documents that were responsive to our Request

Number 4.  Your Honor, that Request Number 4 sought multiple --

sought documents related to the issue that we are not

addressing today.

Request Number 8 sought documents that were

specifically targeted to the membership concept of the

Coalition for Good Governance.  That request sought documents

that were reflective of obligations or benefits of membership.

In the response to the request, Mr. Brown stated that

he would produce those documents.  And that is at Docket 1257.

I'm not aware that we ever received such a production at least

not since the time of Docket 1257.

1          Finally, we again requested another discovery item

2     that has been raised at different times.  It is not essential

3     to summary judgment but raises some problems particularly in

4     light of certain items that were not produced and used for

5     questioning of our clients, which was we still have not

6     received a privilege log from the Coalition for Good Governance

7     despite multiple references to privilege.

8          At this point, I'm not seeking to hang my hat on a

9     privilege log when we're at this late stage of the discovery.

10    We want to move forward.  That was what I expressed on

11    February 3, and I got no response.

12         And finally, Your Honor, with respect to this

13    deposition, had it gone forward in October of 2021 as

14    originally noticed, an individual who is no longer with our

15    team, Mr. Dal Burton, would have been taking that deposition.

16    Had been prepared to take it.  Had been doing all the leg work

17    on it.

18         Mr. Burton transitioned out of the Taylor English law

19    firm at the end of January.  And at the same time, Mr. Tyson

20    and his team were enmeshed in a preliminary injunction hearing

21    in the redistricting cases in front of Judge Jones.  So we

22    simply ran into some difficulty with manpower.  We completely

23    understand the plaintiffs' concern that the parties are running

24    on fumes to that respect.

25         So, Your Honor, that is where we are on the 30(b)(6)

1  deposition.  Frankly, I regret that we didn't just move forward

2  on October 4 despite the document production because it has

3  just continued and continued to cause issues.

4          MR. BROWN:  Your Honor, very briefly.  Mr. Miller's

5  account is wrong and then wrong again.  It is wrong that we

6  didn't produce documents in response to their question.  And it

7  is so trivial it is -- I hate to even burden the Court.

8          The defendants are basing their need for delay upon

9  an interrogatory that asks for the Coalition's internal

10 policies for admitting members and fees, that sort of thing.

11         And they wrote me and said, you didn't produce this.

12 And I wrote back and said, no.  We did produce it.  Here is the

13 Bates number.  It is under the name Rocky Mountain Foundation,

14 which is the Coalition's former name.  And that is all we have.

15         So that is the first time that Mr. Miller was wrong.

16 We had produced it.  And it was trivial in any event.

17         Second, in terms of the mysterious issue that we --

18 the issue that we'll not address today, I did produce it.  And

19 it was a one-page email -- not even one page.  It was a

20 one-sentence email from me to Mr. Cross, which I said, look,

21 that is subject to the common defense privilege but it is so

22 laughably immaterial that I would produce it.  And I did

23 produce it.  I told Mr. Miller I would.  And I did.

24         So the fact is now they may have run out of resources

25 to take Ms. Marks' deposition.  But they are coming to the

1    Court for an extension.  And, you know, if we go back -- if

2    they want to go back, we'll go back to when they should have

3    been taking these depositions.  And that is when they were

4    noticing Ebenezer Baptist Church, ACLU, Fair Fight, which was

5    their first round of depositions.

6            And if you want to talk about using up resources,

7    that -- we had the Lawyers' Committee back then.  The Lawyers'

8    Committee is long gone because they had to spend their

9    resources uncompensated defending frivolous discovery, like the

10   defendants' discovery of Ebenezer Baptist Church, one of their

11   first notices out the door.

12           They didn't notice us on standing.  They weren't

13   preparing for summary judgment then.  They were -- they were

14   doing a very effective job of sapping our resources.  And that

15   is work.  They have.  But they shouldn't get a cookie for it

16   with some break on a deadline that has been long in place.

17           MR. MILLER:  Your Honor, Mr. Brown is correct that he

18   did respond to my email and confirm my questions.  That

19   response came a month after I requested the information.

20           With respect to discovery we sought in 2019 during

21   the abbreviated period leading up to the 2019 preliminary

22   injunction motion, I don't know that any of that is at issue

23   now.  In fact, as I distinctly recall, the plaintiffs at that

24   time were taking the position that had we sought to depose

25   anybody it would be our one and only shot to depose them.  So

1    I'm not sure how that really plays into any of this at all.

2          Your Honor, with respect to the timing again of the

3    stay, you know, one other item was mentioned in our briefing.

4    But we frankly were discussing this concept of a stay with the

5    only party to this case that we thought, you know, were

6    properly parties on the appeal.

7          We didn't come to an agreement, which is fine.  But

8    that is where we are preceding our filing of the motion on the

9    4th.

10         THE COURT:  Mr. Brown and Mr. Miller, are you

11   prepared to have Ms. Marks' deposition in early -- early next

12   week?

13         MR. MILLER:  Your Honor --

14         MR. BROWN:  Your Honor --

15         MR. MILLER:  -- this is Carey Miller.  The State is

16   prepared to move forward on the 17th or 18th when we discussed

17   this on meet-and-conferral yesterday.  We understood it would

18   go forward on one of those dates but that the Coalition

19   plaintiffs may need to confirm the availability of their

20   counsel.

21         MR. BROWN:  Your Honor, if it is your direction,

22   we're available on the 17th, not on the 18th, for Ms. Marks'

23   deposition.

24         MR. MILLER:  That would be suitable for the State,

25   Your Honor.

```
 1              THE COURT:  Mr. Brown and Mr. Cross, Mr. Brown
 2   mentioned he would as a matter of professional courtesy, if I
 3   understood correctly, agree to an additional week before the
 4   motion for summary judgment would be due.
 5              Did you have an opportunity to -- Mr. Brown, to talk
 6   with Mr. Cross about that?  Because if you haven't really had
 7   an opportunity to talk about it, I would just simply go off --
 8   let you go offline to discuss whether -- his view about that.
 9              MR. BROWN:  We have not spoken about that issue
10   directly, Your Honor.
11              THE COURT:  All right.  Well, why don't you-all
12   talk -- if you have another -- you can tap back into this.  And
13   I'm going to go offline for a few minutes.
14              MR. CROSS:  Your Honor --
15              THE COURT:  Yes.
16              MR. CROSS:  -- sorry.  This is David Cross.  I can
17   actually speak to that quickly.
18              We saw that when they sent us their portion of the
19   draft.  The problem with a week extension is it puts us getting
20   the State's brief in the middle of me being out of the country
21   for a week, which is particularly problematic.  If we had to do
22   it, we would try to make it work.  But that is why we didn't
23   agree.  Like I said, we have scheduled -- we scheduled things
24   around this particular date.
25              The only other couple of points I wanted to make just
```

```
1    briefly, if I could is:  One, I do want to make clear there is
2    no outstanding discovery as to my clients, as I understand it.
3    Ms. Price has done, like I said, a few days ago a short
4    deposition, which for some reason mostly focused on DREs again,
5    which I don't quite get.  But there's no outstanding discovery
6    to us.
7             And so it would be prejudicial to our clients, I
8    would respectfully submit, Your Honor, to have things drag out,
9    deal with extended dates when we have worked hard to comply
10   with the deadlines and everything they are talking about deals
11   only with the Coalition.
12            And I am not in any way suggesting the Coalition -- I
13   think they have also worked really hard.  And the delinquency
14   is on the State's side.  And I won't repeat Mr. Brown's
15   arguments.
16            But as he said, I don't think they should get a
17   cookie for having stalled on that.  I don't want to see my
18   clients prejudiced for stuff that has nothing to do with us.
19            And if you push out the Coalition -- if you allow the
20   Coalition deposition, then that means presumably you're going
21   to have to move the March 17 filing date.  And that is when we
22   start to end up with my travel schedule and all --
23                    (Unintelligible cross-talk)
24            THE COURT:  Mr. Miller, do you anticipate having
25   different sections of your brief dealing with the Coalition and
```

1    dealing with the Curling plaintiffs?

2           MR. MILLER:  Yes, Your Honor.  I certainly anticipate

3    we would have different sections, if not two separate motions,

4    dealing with both of their individual complaints and claims in

5    this case.

6           And, Your Honor, I do want to note that discovery in

7    this case has been extended on three different occasions.  Each

8    time the State has opposed it.  And each time it was at the

9    plaintiffs' request.

10          So, Your Honor, I recognize we're all trying to get

11   this done.  I truly think that all the parties do want to have

12   this done.  That becomes a difficulty of -- I think as we wrote

13   in our brief, ordinarily we would simply ask the Court for, you

14   know, maybe one or two weeks.  That just continues to put us

15   right into the middle of the Fair Fight trial, which I guess

16   we'll take a break from to brief our reply.

17          And, Your Honor, on a slightly personal note, I

18   realize that things have been scheduled around this.  But I

19   have a conflict in mid May.  I'm expecting my first child.  So

20   I'm hoping that we avoid that.  But I will recognize the

21   Court's need to move forward, and we will have other attorneys

22   able to carry the case forward.

23          THE COURT:  Well, first of all, congratulations.  And

24   it will be an exciting period of time, and that is wonderful.

25          MR. MILLER:  Thank you, Your Honor.

1          MR. CROSS:  The current schedule would have us done a

2     month before mid May, Carey.  That may be the best thing for

3     you.

4          MR. MILLER:  Well, my point was the current schedule

5     would have us done in the midst of the Fair Fight trial, which

6     is a separate and different, distinct conflict.

7          THE COURT:  Well, Mr. Miller, I mean, I know all of

8     your names are on -- I checked and saw that most of -- almost

9     all of your names or all the names of counsel here are on the

10    Fair Fight docket.

11          Are any -- are all of you planning to be at the trial

12    all the time as well?  Being of counsel doesn't mean that you

13    are going to be at the trial all the time.

14          MR. MILLER:  Right.  And, Your Honor, we're a little

15    bit, I guess, in terms of scheduling witnesses and things of

16    that nature farther out.  But there's one individual on the

17    Fair Fight matter that is not also working on this matter.

18          With respect to our kind of signature block on this

19    matter, there's several folks that are not actively in this

20    case any more, as I think the plaintiffs are aware.

21          But to answer the Court's question, as of right now,

22    myself, Mr. Russo, and Mr. Tyson will -- and Mr. Belinfante

23    will all need to be present throughout the trial, I suspect.

24          THE COURT:  And, Mr. Cross, what are you -- when are

25    you going to be out of the country?

```
 1              MR. CROSS:  The 18th through whatever the following
 2    week -- no.  I'm sorry, Your Honor.  Next week.  So next Friday
 3    through the following weekend.  So that is why if you push
 4    their filing date back it comes in while we're away.
 5              Your Honor, it sounds like you were contemplating an
 6    idea that maybe they would go ahead and file as to our clients
 7    because the record is closed there.  It sounds like they may be
 8    thinking separate motions.
 9              That would be fine.  That way, we could get started
10    on ours and I could meet with my team before we leave and get
11    them going.  That would be -- that would work well for us.
12              THE COURT:  But you're leaving on the 18th or the
13    25th?  I'm --
14              MR. CROSS:  I'm sorry.  We leave -- it is either the
15    18th or the 19th.
16              THE COURT:  All right.
17              MR. CROSS:  My wife knows the actual travel plans.
18    If they file next Thursday, that gives me time to meet with the
19    team and get them going while I'm out of the country.  And that
20    was --
21              THE COURT:  How long do you anticipate being gone?
22              MR. CROSS:  A week.  It is somewhere between seven
23    and nine days.
24              THE COURT:  So why would you be adversely affected on
25    this -- I'm a little confused -- if they file the 25th or the
```

```
1    26th?  You'll be back on the 28th.
2              MR. CROSS:   Yes.  If they file after I return, then
3    the vacation wouldn't matter.  My point was that gets into the
4    other reasons for the prejudice of the delay.  So I don't want
5    to see this pushed back to after we return because then we're
6    losing about a week and a half.
7              But if it comes in the middle, it just means I'm not
8    going to be available to get my team going and we're going to
9    lose time to work on it.
10             But you're right.  If it is filed after I return,
11   then the travel doesn't affect that.  But there are other
12   prejudice for that.  That was the point.
13             THE COURT:  I mean, the greater concern is, it seems
14   to me, if they file the -- if they file the 25th and you-all
15   aren't doing your motions, then your response is due in 20
16   days?
17             MR. CROSS:  I think we have four weeks, if I remember
18   right.  Let me just look.
19             MR. BROWN:  Yes.  Four weeks.
20             THE COURT:  Four weeks under your schedule?
21             MR. CROSS:  Yes.  So that would push us --
22             THE COURT:  So then the real -- then we get to
23   April 24th or -- and then they are still in trial then.  And
24   they won't be through until the middle of May.  So they would
25   end up having to get an extension for their reply brief.
```

```
 1              But it would be still a problem for them with their
 2     reply brief if you get it to them on the 18th because they are
 3     just beginning trial then.  Yeah.
 4              All right.  I'm going to get -- I'm going to go
 5     offline for a few minutes if there is nothing else that needs
 6     to be presented at this moment to think about the schedule and
 7     the stay issue.  All right?
 8              MR. BROWN:  Thank you, Your Honor.
 9              MR. MILLER:  Thank you, Your Honor.
10              MR. CROSS:  Thank you, Your Honor.
11              THE COURT:  All right.
12              (A brief break was taken at 4:34 P.M.)
13              THE COURT:  Is the Fair Fight trial beginning on the
14     11th or the 18th?
15              MR. MILLER:  I'm sorry, Your Honor.  What was that?
16              THE COURT:  Is the Fair Fight trial beginning on the
17     11th or the 18th of April?
18              MR. MILLER:  It begins on the 11th, Your Honor.
19              THE COURT:  Okay.  Thank you.
20              What was the date of the oral argument in front of
21     the Eleventh Circuit?
22              MR. MILLER:  Yes, Your Honor.  The oral argument is
23     on May the 19th, which is a couple of days after the final
24     trial date of May 16th.
25              THE COURT:  Okay.  Now, is there a reason you think
```

1    it is the 16th?

2         I mean, I understood from Judge Jones this was a

3    four-and-a-half-week trial.  That is why I'm wondering.

4         MR. MILLER:  Right.  Your Honor, and there is a

5    judicial conference, as we understand, that will be in the

6    midst of the trial.  And Judge Jones intends to break for that.

7         Truthfully, Your Honor, we're hoping to limit the

8    trial and be shorter.

9         THE COURT:  Okay.  All right.  Thank you.  All right.

10   All right.  Thank you.

11                **(A brief break was taken at 4:37 P.M.)**

12        THE COURT:  All right.  I think that the following

13   schedule would both allow the State to take the deposition of

14   Ms. Marks, which seems to me important and whatever -- everyone

15   has provided information as to why it didn't happen before.

16   And I understand both perspectives.  And I'm not reaching a

17   judgment about it at all.  I'm just trying to move forward.

18        But I think this schedule is something that allows

19   the State to move forward and also takes into account the

20   circumstances if the State files its motion by March 31st.  The

21   plaintiffs -- I would make the plaintiffs' response on Friday,

22   April 22nd and the State's response due on May 6th, which is

23   giving the State for reply an extra week plus days than it had

24   in the original schedule you-all had agreed upon.  Originally

25   the reply was going to be due within a week.

1        Here, it is going to be due on a week and a day.  May

2   the 6th is, of course, also at the end of the -- it gives you

3   the few days post when Judge Jones is at the Eleventh Circuit

4   conference and it is an extra week.  So that's -- and then it

5   is prior to the birth of the child -- of the baby too.

6        MR. CROSS:  Your Honor, sorry.  Do you mind just

7   giving those dates one more time?

8        THE COURT:  March 31st for the motion to be filed.

9   April 22nd for the response to be filed.  May 6th for the

10  reply.

11        MR. CROSS:  Your Honor, I guess the only -- this is

12  David.  The only concern I would raise is that we're getting

13  three weeks to respond and they are getting two weeks for a

14  reply.  And so you are doubling the time that they have for

15  reply.

16        THE COURT:  I am doubling it.  It is an extra week.

17  But he has -- they have their team completely in trial.  I

18  understand that they normally -- you usually have in our

19  district two weeks to reply.

20        So, you know, you-all cut it because you were trying

21  to get this done.  And I understand that.  But realistically,

22  even if they had one person who is not going to be involved in

23  the Fair Fight trial, the reality is that this is a taxing

24  situation that they are facing.

25        And maybe the trial will be done sooner.  But that

1   seems to me the best I can do to make -- adjusting to all of

2   the peculiar circumstances.

3          And I think it is true that I have tried to also

4   adjust to the plaintiffs' circumstances as well at times.  So

5   it is -- this is my view.

6          While I'm taking the motion for the stay also under

7   advisement obviously, I'm not inclined to grant it or else I

8   wouldn't have spent time trying to figure this out.  But I'll

9   take it under advisement.

10         I would like -- if there is something -- I will

11  consider your argument in opposition based on what you have

12  argued.  If you think you want to do anything as an addendum to

13  what you have provided, then let me know when you can provide

14  it by.

15         MR. BROWN:  This is Bruce Brown from the Coalition

16  standpoint -- and, David, I don't want to speak for you.  But I

17  think we have presented our arguments with respect to the stay

18  and the -- particularly given, you know, our -- the only thing

19  I would add is that our agreement to a stay sort of goes out

20  the window with the extension.  Right?  I mean, it was one or

21  the other for the purposes of our position.

22         And so we do not see the utility of a stay under

23  these circumstances.  And given that we have the deposition

24  coming up this week, we would probably forgo filing a formal

25  brief on the issue and just request that it be denied.

```
 1              MR. CROSS:  Your Honor, this is David Cross.  Same
 2    for us, especially given Your Honor's leaning against granting
 3    it.  I don't want to burden you with more paper.
 4              THE COURT:  All right.
 5              MR. CROSS:  Your Honor, there was one other issue, if
 6    we're done with that.
 7              THE COURT:  All right.
 8              MR. CROSS:  I don't know if you saw, Your Honor,
 9    there was a motion that I sent to your clerks and to Mr. Martin
10    today.
11              The only reason I flag it is just to make sure Your
12    Honor is aware of it.  We haven't had to confer anything yet.
13    But there is a plaintiff in a case that would put our expert in
14    an untenable position were they to prevail on their motion to
15    compel.  And they are arguing to the court in that case that
16    that judge can order -- another federal judge in another
17    district can order Dr. Halderman to produce the report and he
18    would have to comply with that.  And we will keep you alerted
19    to that.
20              THE COURT:  All right.  All right.
21              MR. CROSS:  To be honest, I don't even know what to
22    do.  I'm just worried that he's going to end up in a position
23    with conflicting orders.  And I don't know if we come back to
24    you or we go there.  I have never been in that situation.
25              I wanted to flag it for you, and hopefully we don't
```

```
 1    end up there.
 2              THE COURT:  I hope not.
 3              I want to ask counsel for the plaintiff if there is
 4    any -- I really would prefer -- because all of this has come up
 5    at very much the 11th hour, the issue of the stay, if there is
 6    any law that you want me to look at, I would prefer -- you
 7    know, basically to be able -- I mean, I have tried because I
 8    have been able to get hold of you this afternoon that we would
 9    actually proceed to try to pragmatically decide how we're going
10    forward.
11              But I do feel like I need to look at the stay motion
12    still.  And so that if there is any -- I understand what your
13    positions are from sort of the law of this case.  And I
14    understand the State's position.
15              But if the plaintiffs are able to provide any
16    authority at all, even if this is just a letter -- a one-page
17    letter brief, because I'm not looking for more than that, I
18    would consider it.  And I think it would be helpful.
19              But if you are not able to do it, that is fine.  But
20    I think it would be helpful to the Court.  And it is a very
21    busy time of the year for us as well.
22              MR. CROSS:  Of course.  Would it be okay -- yeah.  If
23    Mr. Brown and I can talk about that, we likely can get you
24    something next week, if that works.
25              THE COURT:  All right.  That is fine.  But the
```

1     question is:  Could you advise -- because I don't want the

2     State working away on this motion for summary judgment if they

3     are -- if there is any chance that I'm going to stay something.

4           So do you think that -- I'm going to -- I don't know

5     when the likely deposition is.  And I know that Mr. Brown is

6     going to have to be spending time with his client preparing for

7     it.

8           But I think just from a pragmatic perspective I would

9     really need such a letter brief -- it doesn't have to be

10    beautiful.  But it can be really just a few cases to consider,

11    two paragraphs.  Think short.  And if we were able to have it

12    Tuesday morning, that would be very helpful for us to be able

13    to actually address it.

14          I don't want to give short shrift to this, and I also

15    don't like decision-making on the fly as much as we -- either.

16    So to try to move this forward --

17          MR. BROWN:  Your Honor --

18          THE COURT:  -- I still think I --

19          MR. BROWN:  Your Honor, the only -- Your Honor, the

20    only idea that I would have is whether the State would just go

21    ahead and drop the motion since they -- if you read their

22    brief, I read it as a motion for an extension.  And the stay

23    was sort of an afterthought because what they really needed was

24    an extension.

25          They got it.  So maybe the State would consider

1   withdrawing the motion to stay to save Your Honor the trouble

2   of denying it.

3            THE COURT:  Well, I assume Mr. Miller is going to

4   want to talk with his co-counsel.  Please do so.  All of you

5   talk to your respective co-counsel and communicate with each

6   other about that.  All right?  And figure out a schedule.

7            You know, I can get off and you can talk among

8   yourselves if you -- or else just get off and call each other.

9            MR. BROWN:  Your Honor, we can report to you if the

10  State does withdraw.  And if they do not, we will have

11  something to you by Tuesday morning.  This is Bruce Brown.

12           THE COURT:  All right.  Thank you very much.

13           MR. CROSS:  Your Honor, this is David Cross.  I

14  apologize.  There is one other issue that occurs to me that we

15  should address on the discovery.

16           We had taken the position that we would not pursue

17  further 30(b)(6) discovery at this stage.  But we haven't

18  really gotten a commitment from the State on that.

19           Our compromise proposal was, as long as they are

20  going to be bound by the testimony that they have put in from

21  the 30(b)(6) witnesses, meaning we're not going to seek new

22  testimony from anyone from the Secretary's office, new

23  evidence, new allegations, new facts, then we'll let that sit.

24           But I think we need that commitment.  Because if we

25  don't have that, then we may need to figure out whether we're

```
 1    going to use this additional time to get testimony from

 2    knowledgeable witnesses, which I would prefer not to spend time

 3    and money on.

 4             But I don't know if you can get that commitment

 5    today.  It sounds -- their filing suggested they were kind of

 6    close to that.  So I'm not sure.

 7             THE COURT:  Well, you can all discuss that.  And the

 8    alternative is that you preserve it if you can't come to an

 9    agreement by motion to compel that the 30(b)(6) witness was not

10    properly prepared.

11             MR. CROSS:  Okay.  Thank you, Your Honor.

12             MR. MILLER:  Your Honor, this is Carey Miller.  If I

13    may just pose two clarifying questions on the schedule.

14             I mentioned earlier our intent to move for summary

15    judgment kind of separately as to Coalition and as to Curling.

16    We would intend to file one set of statement of material facts

17    with respect to the -- well, I guess possibly two sets.  But

18    don't intend to necessarily make extra work.

19             But it is not entirely clear to me under the rules if

20    that will require leave.  And so I wanted to raise that issue.

21             THE COURT:  If you have a consolidated statement of

22    material facts, that is acceptable and you have leave to do

23    that.

24             MR. MILLER:  Okay.  Thank you, Your Honor.

25             The second issue would be -- one thing that we raised
```

1    in our filing concerned the Coalition for Good Governance is

2    associational standing issue.  At this juncture with the

3    schedule that the Court is contemplating, we'll simply move

4    forward with our option B for exclusion to the extent

5    necessary.

6            And my question for the Court would be:  Does the

7    Court prefer that to be filed as like it was a *Daubert* or

8    dispositive motion or to proceed in another manner?

9            THE COURT:  Well, I would like to hear Mr. Brown in

10   this connection.

11           MR. BROWN:  Your Honor, I must confess:  I don't

12   know -- I heard what he said, and I can repeat it, but I do not

13   understand what he is saying.

14           Carey --

15           MR. MILLER:  Your Honor, I'm happy to clarify it.  It

16   is in our -- we discussed it in our filing.  I was trying to

17   find the page here.

18           But it is Page -- Page 14 on to 15.  It would be with

19   respect to the late disclosed associational standing witnesses.

20   We proposed that we would either proceed with their depositions

21   or would move to exclude them.

22           As Mr. Cross raised, our proposal would be we'll move

23   to exclude them.  I'm not asking for Mr. Brown's consent on

24   that.  But Mr. Brown could continue to rely on the four

25   identified individual member plaintiffs for purposes of his

1    associational standing, given that those individuals were

2    timely disclosed and were deposed.

3            MR. BROWN:  Your Honor, we're going to oppose all of

4    that.  We're giving the State defendants Ms. Marks after they

5    waited a month, one week to schedule her deposition.  They have

6    never asked for a date for any of those 14 witnesses.  And they

7    are out of time on those.

8            I mean, they -- okay, they get an extension on their

9    brief.  But we do not intend to sit through 14 depositions of

10   members that they could have been deposing for the last six

11   weeks.  We do not have the resources.

12           And with respect, we do not believe that given how

13   the Court has accommodated the State's scheduling difficulties

14   and the constraints on the State's resources we strongly

15   believe that they have waived their right to take these 14

16   depositions.

17           And, furthermore, what they are saying is that they

18   need to take these witnesses' depositions to eliminate an issue

19   of fact for all 18 association members, like they are going to

20   do that.  I would suggest --

21           MR. MILLER:  Your Honor --

22           MR. BROWN:  -- that they haven't taken these

23   depositions because they are just a very low priority.  And

24   that would be smart for them to be a very low priority.  They

25   have had the names since February 2nd, and they have not asked

1    for a single one of them.

2            And, Your Honor, we don't -- we can't drop

3    everything -- I mean, we have other cases and other trials too.

4    We're not in Fair Fight.  But we also don't have 16 lawyers on

5    the pleadings.  And they have waived using the discovery --

6    they could have started this discovery when they were trying to

7    take the deposition of Ebenezer Baptist Church back in 2019.

8    And enough is enough.

9            MR. MILLER:  Your Honor, just to clarify, I don't

10   expect that there is going to be some sort of stipulation.  My

11   request was presuming that would, in fact, be Mr. Brown's

12   response as to when the Court would prefer a motion to that

13   effect.

14           THE COURT:  Well, if you're going to do it, you can

15   do it in the context of your motion for summary judgment.  I

16   mean, I don't -- you haven't noticed a deposition.  That is the

17   thing.

18           So, you know, you-all obviously could come -- I don't

19   know that you need every single one of those 16, by any means.

20   They have offered you four that relate to associational

21   standing -- is that right? -- already?

22           MR. MILLER:  Your Honor, the --

23                   **(Unintelligible cross-talk)**

24           MR. BROWN:  That --

25           MR. MILLER:  -- individuals were disclosed on

```
1    February 2.
2             THE COURT:  I understand that.  I'm just saying:  Are
3    there -- you have taken the deposition of four members of the
4    Coalition who say their associational rights have been
5    infringed or burdened?
6             MR. MILLER:  Your Honor, those are the four
7    individual member plaintiffs, Ms. Digges, Ms. Missett -- yes,
8    those are the same -- those are the four that we have taken.
9    Yes.
10            THE COURT:  Well, I don't know that this is a --
11   frankly a question of how many people somebody has to offer up
12   in order for associational -- an organization.  But, you know,
13   if you think there is something terribly different about the
14   other individuals, you-all could easily agree on depositions
15   not to exclude two hours of another two or three people.
16            But I'm not saying it is essential.  But this is
17   (inaudible) in my perspective.  But if the State doesn't want
18   to limit itself to a two-hour deposition for two or three
19   people --
20            (Unidentified interruption in proceedings)
21            THE COURT:  Anyway, I'm just going to -- that is my
22   view about this.  I'm not sure it is essential in any way.  But
23   there are ways of dealing with this with two or three people.
24   But there is no reason for 14 people or 16 people to have to
25   give depositions in my view.
```

1          But that is -- but having a few more, you know, for

2     the short depositions with the time I've given the State, it

3     certainly -- if you decline to do that, then that is your

4     problem.

5          MR. MILLER:  Okay.  Thank you, Your Honor.

6          THE COURT:  All right.  All right.  I look -- I'm

7     going to look to hear from the plaintiffs about your response

8     to the stay issues.

9          And I realize there is not -- in terms of the Court

10    of Appeals, it is not as if the Coalition -- the Curling

11    plaintiffs as opposed to Coalition plaintiffs are actually in

12    an Eleventh Circuit proceeding technically.  So it is a little

13    bit of a different position.

14         But I still would like to hear about -- they could

15    still -- they still asked for a stay, and I still think an

16    appropriate short response is appropriate for the record.

17         Thank you.  And I think we've covered everything.

18    And I'll address other matters separately.

19         Thank you.  We're adjourned.

20         MR. MILLER:  Thank you, Your Honor.

21              **(The proceedings were thereby concluded at 5:08**

22              **P.M.)**

23

24

25

```
1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    52 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   14th day of March, 2022.

14

15

16

17        _____
          SHANNON R. WELCH, RMR, CRR
18        OFFICIAL COURT REPORTER
          UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT