IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

**PLAINTIFFS' OBJECTION TO STATE DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S APRIL 7, 2022 DIRECTIVE**

State Defendants have not complied with this Court's April 7, 2022 directive to provide documents regarding potential unauthorized access to a county EMS server. Plaintiffs are entitled to—and need—targeted discovery regarding this important issue promptly.

On April 6, 2022, in a Joint Discovery Dispute (Dkt. 1360), Coalition Plaintiffs raised issues regarding discovery into the alleged unauthorized access to the Coffee County voting system, including its EMS server. Plaintiffs attempted to obtain documents and testimony about this important issue during fact discovery, but State Defendants refused to provide any information. For example, they refused to produce a Rule 30(b)(6) deponent knowledgeable about the issue, including what occurred and what investigation has been conducted, if any.

During the April 7, 2022 conference, Plaintiffs' counsel raised the issue of obtaining discovery related to investigations regarding election security issues, including potential unauthorized access to the Coffee County EMS server and subsequent seizure of that server by the Secretary of State in 2021. (Dkt. 1374 at 24:21-26:21.) In response, the Court requested that State Defendants provide contemporaneous documents corroborating certain representations they made to the Court during that conference regarding the Secretary of State taking possession of the Coffee County EMS server and State Defendants' purported inability (since June 2021) to access the server due to an alleged change of the password by a former Coffee County election superintendent. (*Id.* at 53:20-25.) What State Defendants filed—over a month later, only after multiple requests from Plaintiffs and a follow-up request from this Court—is not what this Court requested and in no way corroborates their representations.

On May 9, 2022, State Defendants filed simply "documents from the acceptance testing conducted by the Center for Elections Systems on the date the Coffee County EMS server was replaced, with the hash values redacted." (Dkt. 1377 at 3-4.) The document they filed is not responsive to the Court's request. It provides no information whatsoever regarding the issues addressed in the conference, including potential unauthorized access to the prior Coffee County

EMS server and other voting system components; the circumstances or reasons involving the Secretary of State seizing that server; the purported password change; any efforts by Dominion, State Defendants, or their consultants (such as Fortalice, which serves as the Secretary's Chief Information Security Officer) to access the ballot images, election project packages, or other data on the server; or any investigation into these events, which State Defendants told this Court was opened after the February 24, 2022 Rule 30(b)(6) deposition of Gabriel Sterling, the current Deputy Secretary of State for Georgia.[1]

The document State Defendants filed on May 9 provides no corroboration of any of the representations State Defendants made to this Court during the April 7 conference, including that a rogue county election official changed the password (*which that individual denies*) and now nobody has access to the server's contents. In fact, the document provides no information at all about the issue at hand given that it is merely an equipment test document for the new server, and there is no dispute that the Secretary replaced the Coffee County EMS server.[2]  State

---

[1] State Defendants' representations to the Court appear to be inconsistent with Mr. Sterling's testimony, who seemed to testify that an investigation already had been conducted prior to his deposition.  (Dkt. 1370-5 at 258:14-17.)

[2] The only thing the acceptance testing document State Defendants filed shows is how surprisingly inadequate their process is for testing the reliability of critical voting systems equipment such as county EMS servers.  The document, which makes no reference to Coffee County or the server exchange, further confirms that

Defendants did not even provide a contemporaneous equipment transfer form for the server, which they acknowledge would have been "standard practice" to prepare for any such transfer of equipment.[3] (Dkt. 1374 at 54:1-6.) The Court also requested State Defendants' communications with the Coffee County Election Board concerning the EMS server. (*Id*. at 54:11-15.) State Defendants provided no such communications.

    Plaintiffs in this case have previously raised serious issues related to potential or actual breaches of Georgia's voting system and repeatedly requested discovery regarding the reported unauthorized access to—and potential copying of—the Coffee County EMS server and other voting system components and data; this information is highly relevant to Plaintiffs' claims and State Defendants' defenses (including their unsubstantiated claims in this case and in the press that such access is not possible in Georgia). (*See, e.g.*, Dkt. 1360.) State Defendants have provided no information in response to these requests.

---

Georgia's acceptance testing serves no purpose for assessing whether an election server has been breached or compromised in some way that could affect individual votes or election outcomes.

[3] State Defendants have provided similar documentation during discovery in this case, such as STATE-DEFENDANTS-00161382, which Plaintiffs can file if the Court requests a copy (State Defendants designated it confidential).

Open Records Requests similarly have been met with silence or obstruction. In the case of Open Records requests to Coffee County, records reportedly could not be produced because of extensive election records destruction by the County and State Defendants' removal of the election records from Coffee County contained on the EMS server, although Coffee County is by law the official custodian of the records seized by the Secretary of State (which evidently were taken without a court order).

Neither State Defendants nor Coffee County has been able to provide a single document corroborating any of State Defendants' representations to this Court or shedding any light on the critically-important events involving this server. Plaintiffs have not even been able to corroborate the claim that the Secretary opened an investigation into those events, and if so, when.  Coffee County counsel represented to Coalition Plaintiffs as recently as May 25, 2022, that they remain unaware of any investigation at any time into the alleged breach or imaging of the voting system components, including the EMS server.  Now, State Defendants have provided irrelevant and unhelpful information in response to a direct, unambiguous request from the Court.  State Defendants are again engaged in a wasteful and improper "cat and mouse game" about a highly relevant issue. (Dkt. 957 at 2.)

State Defendants' failure (or refusal) to provide any information responsive to the Court's April 7, 2022 request or to corroborate their representations to the Court further confirms the need for targeted discovery. Specifically, Plaintiffs should be allowed the following regarding this issue:

- No more than five document requests to State Defendants, with responsive documents to be produced within 15 days;

- No more than five document requests to Coffee County via subpoena, with responsive documents to be produced within 15 days;

- Immediate access for Dr. Alex Halderman (and any necessary support personnel) to the Coffee County EMS server seized by the Secretary and any other voting equipment that discovery reveals was unlawfully accessed, including any data on it;

- A single Rule 30(b)(6) deposition of the Secretary's Office of no more than three hours;

- A single Rule 30(b)(6) deposition of Coffee County of no more than four hours; and

- No more than three percipient depositions of relevant individuals of no more than three hours each.

History in this case highlights the need for this targeted discovery. For example:

- When Logan Lamb learned that aspects of Georgia's voting system were vulnerable to penetration by bad actors via the internet, the Secretary's Office responded by trying to conceal these facts, including threatening Mr. Lamb.[4] (Dkt. 579 at 64-73.) The relevant

---

[4] Kim Zetter, *Will the Georgia Special Election Get Hacked?* (June 14, 2017), https://www.politico.com/magazine/story/2017/06/14/will-the-georgia-special-

server was then wiped clean, and State Defendants' effort to explain away that misconduct was simply not credible. (Dkt. 579 at 70 ("Given the entire course of events described here, the Defendants' contention that the servers were simply 'repurposed' and not intentionally destroyed or wiped is flatly not credible.").) Once Plaintiffs finally obtained a copy of that server, Logan Lamb found evidence that it had been compromised by an attacker that exploited a "shellshock" bug to gain full control of the server. (Dkt. 699-10 (Lamb Jan. 2020 declaration).)

- When a concerned voter learned of other election system vulnerabilities on the eve of the November 2018 election, the Secretary's Office again responded by concealing the truth of those vulnerabilities (later confirmed by Fortalice) and attacked the Democratic Party of Georgia with inaccurate claims. (Dkt. 1367 at 5-7.)

- When Plaintiffs sought discovery regarding Georgia's GEMS databases to show that they were neither unique nor confidential, State Defendants persisted with their inaccurate claims to the contrary (even in the face of compelling evidence refuting those claims), which were disproven only after this Court ordered disclosure of the GEMS databases. (Dkt. 623 at 3-9.)

- When the Secretary's Chief Information Officer testified under oath that penetration testing had confirmed the security of the Secretary's information technology systems, discovery of Fortalice reports revealed that testimony to be misleading. (Dkt. 579 at 78-79.) The Secretary's Chief Information Officer again provided similarly misleading testimony just months ago regarding penetration testing of

---

election-get-hacked-215255/ ("After Lamb discovered the initial problems last August, he notified Merle King, executive director at the center, who thanked Lamb and said he would get the server fixed. It was months before the presidential election, and King pressed Lamb not to talk about the issue with anyone, especially the media. 'He said, It would be best if you were to drop this now,' Lamb recalls. King also said that if Lamb did talk, 'the people downtown, the politicians … would crush' Lamb.").

the Secretary's information technology systems, which discovery of Fortalice reports again revealed to be inaccurate. (Dkt. 1370-2 at 83:11; Dkt. 1370-3 at 272:15.)

This history of unreliable representations and obstruction—among others—from State Defendants that were belied only by discovery confirms the need for the targeted discovery requested above regarding a critically-important issue about which State Defendants have provided no discovery, even in response to a directive from this Court. The Court should order this targeted discovery to proceed promptly.

Respectfully submitted this 27th day of May, 2022.

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Veronica Ascarrunz (*pro hac vice*) | Adam M. Sparks |
| Hannah R. Elson (*pro hac vice*) | GA Bar No. 341578 |
| Zachary Fuchs (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2100 L Street, NW, Suite 900 | Suite 3250 |
| Washington, DC 20037 | Atlanta, GA 30309 |
| (202) 887-1500 | (404) 888-9700 |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

| | |
|---|---|
| /s/ Russell T. Abney | /s/ Robert A. McGuire, III |
| Russell T. Abney | Robert A. McGuire, III |
| Georgia Bar No. 000875 | Admitted Pro Hac Vice |
| WATTS GUERRA, LLP | (ECF No. 125) |
| 4 Dominion Drive, Building 3 | ROBERT MCGUIRE LAW FIRM |
| Suite 100 | 113 Cherry St. #86685 |
| San Antonio, TX 78257 | Seattle, Washington 98104-2205 |
| (404) 670-0355 | (253) 267-8530 |

*Counsel for Plaintiff Coalition for Good Governance*

8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                                                        */s/ David D. Cross*
                                                                       David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a copy of the foregoing **PLAINTIFFS' OBJECTION TO STATE DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S APRIL 7, 2022 DIRECTIVE** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

                                          */s/ David D. Cross*
                                          David D. Cross