# EXHIBIT A

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| VOTERGA and PHILIP SINGLETON, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE NO. 2021CV353604 |
| ) | |
| STATE OF GEORGIA, ) | HON. KIMBERLY M. ESMOND ADAMS |
| ) | |
| Respondent. ) | |

### ORDER GRANTING STATE OF GEORGIA'S MOTION TO DISMISS

The above-styled case came before the Court on Respondent State of Georgia's Motion to Dismiss the Petition. Petitioners filed their Petition seeking declaratory and injunctive relief against the State of Georgia on August 24, 2021, alleging that the State's current electronic voting system does not comply with state law. The State filed this Motion to Dismiss on September 27, 2021. Petitioner timely filed a response to the Motion, and the State timely filed a reply to Petitioner's Response. Having considered the pleadings, argument of counsel and applicable authority, Respondent's Motion to Dismiss is hereby **GRANTED** for the reasons discussed below.

### FACTS

In 2019, the Georgia General Assembly enacted House Bill 316, which in pertinent part modernized Georgia's voting system by requiring a new unified system of electronic voting throughout the State. Specifically, the General Assembly replaced the direct-recording electronic voting system to a voting system utilizing ballot-marking devices ("BMDs") and optical scanners. The Secretary of State was tasked with selecting the equipment for the new voting system, which was done through an open and competitive bidding process as required by Georgia's State

Purchasing Act, O.C.G.A. § 50-5-50. Of the three requests for proposal evaluated by the seven member Selection Committee, the Dominion Voting Systems ("Dominion") received the highest overall score.

On July 29, 2019, the Secretary of State posted a Notice of Intent to Award the contract for the statewide voting system to Dominion, and after having received no bid protests, a final Notice of Intent to Award was issued on August 9, 2019. The Dominion voting system consists of BMDs that print paper ballots by way of a connected printer and optical scanners connected to a locked ballot box. The Dominion BMDs allow the voter to make selections on a screen and then print those selections onto a paper ballot, which the voter can review for accuracy. The paper ballot also includes a QR code containing machine-readable data that is read by an optical scanner to tabulate the votes. After scanning, the paper ballot drops into a locked ballot box connected to the scanner. The scanners create an electronic image of the ballot along with an audit report, which confirms the QR code read by the scanner conforms to the printed selections on the paper ballot.

In June of 2018, Mr. Garland Favorito and Mr. Michael Opitz warned then Candidate Brad Raffensperger about the dangers of unverifiable QR coded voting systems. VoterGA warned about the need for any new voting system to tabulate human readable vote marks in their requirements to the Secure, Accessible and Fair Elections Commission on or about December 20, 2018.

The State's electronic voting system required certification by both the United States Election Assistance Committee ("EAC") at the time of procurement and by the Secretary of State as safe and practicable for use. The EAC certified that the State's BMD system was in compliance with the Voluntary Voting System Guidelines and did so by utilizing approved, independent Voting System Test Laboratories ("VSTL"). The EAC certified the system on January 30, 2019. The Secretary of State utilized a separate, independent EAC-certified VSTL to conduct testing for

state certification of the voting system. The Secretary issued a Certification of the Dominion Voting Systems as meeting all applicable provisions of the Georgia Elections Code and Rules of the Secretary of State on August 9, 2019. The State's BMD system is also subject to logic and accuracy testing prior to every election to ensure that the results tabulated by the scanners match the printed paper ballots. A risk-limiting audit after the November 2020 general election confirmed the accuracy of the electronically tabulated results.

## LEGAL ANALYSIS

There is no actual controversy presented by Petitioners and there is interpretation of the facts presented in the Petition that would entitle Petitioners to the relief sought. Under O.C.G.A. § 9-11-12(b)(6), a petition shall be dismissed for failing "to state a claim upon which relief can be granted." A motion to dismiss may be granted where:

> "(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought."

*RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 445 (2017) (citations omitted). If no construction of the facts presented will entitle a plaintiff to relief, the motion to dismiss should be granted. *Development Authority of Columbus v. Four JS Family, LLLP*, 340 Ga. App. 474, 476 (2017).

The Declaratory Judgment Act, O.C.G.A. § 9-4-2, requires that a case of "actual controversy" be brought for courts to have the power "to declare rights and other legal relations of any interested party petitioning for [declaratory relief]." The Act's purpose is to "settle and afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations." O.C.G.A. § 9-4-1; *see also Hammond v. Sanders*, 210 Ga. App. 307, 308 (1993) (stating a

declaratory judgment is to "protect [claimants] from uncertainty and insecurity with respect to some future act or conduct"). If there is "no actual or justiciable controversy," then "a court may not declare the rights of parties." *Fourth Street Baptist Church v. Bd. of Registrars*, 253 Ga. 368, 369 (1984). To be entitled to a declaratory judgment, Petitioners "must show facts or circumstances whereby [they are] in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest." *Phoenix Assurance Co. v. Glens Falls Ins. Co.*, 101 Ga. App. 530, 532-33 (1960). When a Petition for declaratory relief shows on its face "that there is no actual or justiciable controversy between adverse parties, a trial court does not have jurisdiction to render a declaratory judgment." *Logan Paving Co. v. Peoples Bank & Trust*, 196 Ga. App. 42, 42 (1990).

Petitioners argue that the paper ballot generated from the current ballot marking devices used in the State of Georgia's elections does not comply with O.C.G.A. § 21-2-2(7.1) and O.C.G.A. § 21-2-300(a)(2). O.C.G.A. § 21-2-300(a)(2) provides that all state elections "shall be conducted with the use of scanning ballots marked by electronic ballot markers and tabulated by using ballot scanners for voting at the polls and for absentee ballots cast in person . . . provided, however, that such electronic ballot markers shall produce paper ballots which are marked with the elector's choices in a format readable by the elector." O.C.G.A. § 21-2-2(7.1) explains:

> 'Electronic ballot marker' means an electronic device that does not compute or retain votes; may integrate components such as a ballot scanner, printer, touch screen monitor, audio output, and a navigational keypad; and uses electronic technology to independently and privately mark a paper ballot at the direction of an elector, interpret ballot selections, communicate such interpretation for elector verification, and print an elector verifiable paper ballot.

Petitioners allege that the current BMDs violate state law because the devices use a QR code to tabulate votes which a voter cannot specifically read or verify. Petitioners state that because voters cannot read the QR code, they must rely on other actors to honestly read and verify their intent. Petitioners admit, however, that the paper ballot generated from the current ballot marking device has the elector's intent written on the face of the paper ballot, and that the elector can verify the written portion of the paper ballot. Given this admission, there is no interpretation of the facts that would show the BMDs violate the two statutes because they "produce paper ballots which are marked with the elector's choices in a format readable by the elector," § 21-2-300(a)(2), and they "communicate such interpretation for elector verification, and print an elector verifiable paper ballot" § 21-2-2(7.1).

Petitioners' reading of the relevant code sections would erode the plain and ordinary meaning of the statutory language of O.C.G.A. § 21-2-2(7.1) and O.C.G.A. § 21-2-300(a)(2), both of which require counties to use BMDs that print a paper ballot. The ballot scanners prescribed in these statutes would necessarily require *some* form of encoded data in order for the scanners to read and tabulate the paper ballots. How the scanners interpret the information is reproduced for the elector in a readable form on the paper ballots. The fact that the paper ballots include a QR code which the system uses to tabulate votes does not violate either statute's requirements that paper ballots be produced and that the interpretations of the electors' intent be produced in a readable fashion. These requirements are satisfied by the printed paper ballot.

Petitioners' proposal that the State use absentee ballots and optic scan devices until a replacement system can be acquired and implemented reveals the futility of their claim. The absentee paper ballots are scanned by the same optical scanners as the paper ballots printed by the current devices. No matter what electrical tabulation system is used, the computer must encode the

data and interpret it in code, as computers do not read in English. The statutes would become nonsensical under the Petitioners' reading, because the ballot scanners mandated in the statutes do not interpret an elector's intent in a format readable by the elector. The current devices comply with the statutes because they communicate the ballot scanner's interpretation of the elector's intent in a format readable by the elector through the printed paper ballot. There is no interpretation of the facts presented that would provide Petitioner relief for their claim and there is no actual controversy before the Court.

For the aforementioned reasons, the State of Georgia's Motion to Dismiss is hereby **GRANTED** on the basis that the Petition fails to state a claim upon which relief may be granted. The remaining grounds are not reached as they are **MOOT**. Accordingly, the Petition is hereby **DISMISSED** with prejudice.

**SO ORDERED** this 31st day of May, 2022.

_____
HONORABLE KIMBERLY M. ESMOND ADAMS
SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT