# EXHIBIT B

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 2 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 1

1              Nos. 20-13730 and 20-14067

2             ------------------------

3                      IN THE

4         UNITED STATES COURT OF APPEALS

5            FOR THE ELEVENTH CIRCUIT

6             ------------------------

7              DONNA CURLING, et al.,

8                        Plaintiffs-Appellees,

9                        v.

10        BRAD RAFFENSPERGER, in his official

11          capacity as Secretary of State

12      of Georgia and the Chair of the Georgia

13           State Election Board, et al.,

14                       Defendants-Appellants.

15            ------------------------

16

17                 Oral Argument

18                 May 19, 2022

19

20

21   B E F O R E:

22   HON. ROBERT LUCK

23   HON. BRITT GRANT

24   HON. LANIER ANDERSON

25   Appellant Judges

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 3 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 2

1    A P P E A R A N C E S:

2

3    TAYLOR ENGLISH DUMA LLP

4          Attorneys for Defendants-Appellants

5          1600 Parkwood Circle, Suite 200

6          Atlanta, GA 30339

7

8    BY:  BRYAN P. TYSON

9

10   ROBERT MCGUIRE LAW FIRM

11         Attorneys for Defendants-Appellants

12         1624 Market Street, Suite 226

13         Denver, CO 80202

14

15   BY:  ROBERT ALEXANDER MCGUIRE, III

16

17   MORRISON FOERSTER LLP

18         Attorneys for Plaintiffs-Appellees

19         2100 L Street, NW, Suite 900

20         Washington, D.C. 20037

21

22   BY:  MICHAEL F. QIAN

23

24

25

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067
May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 3

1              P R O C E E D I N G S

2              HON. BRITT GRANT:  We're now ready for

3      our next case, Curling versus Secretary of State

4      for the State of Georgia.  Mr. Tyson, whenever

5      you are ready.

6              MR. TYSON:  Thank you, Your Honor.

7              May it please the Court, Bryan Tyson.

8              HON. ROBERT LUCK:  Give me one second

9      for opposing counsel.

10             MR. TYSON:  Oh, sorry.  I apologize.  I

11     didn't know they weren't set.

12             HON. ROBERT LUCK:  No, no.  You're

13     fine.  Take your time.  Just want to make sure

14     everyone is settled.  Thank you.  Go ahead.

15             MR. TYSON:  Thank you.  May it please

16     the Court, my name is Bryan Tyson.  I represent

17     the Secretary of State and State Election Board

18     in this matter.

19             The procedural history of this case,

20     Your Honors, is complicated at best, so I thought

21     it might be helpful just to kind of summarize how

22     we got to this point in this case.

23             This case began in 2017 as an election

24     contest to Georgia 6th Congressional District

25     special election.  After it was removed to

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 5 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067    May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 4

1  federal court, it was transformed into a

2  challenge to the then-method of voting in Georgia

3  using direct recording electronic voting machines

4  called DREs.

5           The State -- there was litigation for

6  several years over that.  After the State

7  purchased new equipment in 2019, the district

8  court entered an order saying you can't use the

9  old equipment anymore and then transformed the

10  case into a challenge of the Dominion equipment

11  that had been purchased by the State in 2019.

12           HON. ROBERT LUCK:  Counsel, I don't

13  want to tell you how to use your time, but you

14  don't have a lot of it.  So tell me what you'd

15  like for us to reverse on.

16           MR. TYSON:  Certainly, Your Honor.  So

17  the first element is definitely the issue of

18  standing.  The district court found that there

19  was standing for the plaintiffs in this matter

20  based only on generalized grievances.

21           HON. ROBERT LUCK:  So let's -- I want

22  to go to standing but maybe in a different way

23  that the district court looked at, although maybe

24  the same.

25           Let's talk about organizational

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 6 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 5

1  standing.  We have held, as I understand it,

2  election challenges similar to this one or

3  election challenges generally that a diversion of

4  resources theory for organizational standing is

5  sufficient to alleged injury in fact.

6          MR. TYSON:  That's correct.

7          HON. ROBERT LUCK:  You agree with that.

8          MR. TYSON:  I do, Your Honor.

9          HON. ROBERT LUCK:  Did they not allege

10  diversion of resources?

11          MR. TYSON:  Your Honor, the plaintiffs

12  did allege a diversion of resources, the

13  Coalition itself.

14          HON. ROBERT LUCK:  Yes.

15          MR. TYSON:  I think the issue we have

16  here is the district court affirmatively

17  prevented the State from examining the issues

18  around the diversion of resources at the

19  preliminary injunction hearing and relied only on

20  some declarations, and then the plaintiffs cite

21  only declarations filed after the court's order

22  in terms of the nature of the diversion of

23  resources.

24          HON. ROBERT LUCK:  There may be an

25  error.  You can show me in your brief.  There may

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 7 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067
May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 6

 1  be an error of the district court in limiting you

 2  in discovery, but that's not how I understand

 3  this was presented to us.  This was presented to

 4  us simply as there isn't evidence of standing.

 5  Is that right?

 6            MR. TYSON:  Yes, Your Honor.  That is

 7  correct.

 8            HON. ROBERT LUCK:  At least under the

 9  allegations and the affidavit presented by the

10  executive director for the Coalition, it seems to

11  me that there is evidence of diversion of

12  resources.  Now, whether that evidence is

13  sufficient, let's talk about.  But it seems to me

14  that there are at least allegations that, hey, we

15  would have -- but for this law which we're now

16  spending money to educate and to fight in some

17  way, we would've spent money in Colorado doing

18  auditing and North Carolina doing election reform

19  efforts, and in others.  I think South Carolina

20  was another state that they do work in as well.

21            MR. TYSON:  Yes, Your Honor.  And I

22  think the key point is the nature of the

23  generalized grievance still applies on the

24  organizational standing and the sufficiency

25  because if you look at (indiscernible) from the

Case 1:17-cv-02989-AT  Document 1388-2  Filed 06/01/22  Page 8 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 7

1   6th Circuit, they discuss how the generalized

2   nature of the grievances affected all the nature

3   of standing.  The individual plaintiffs --

4           HON. ROBERT LUCK:  Diversion of

5   resources isn't generalized to every voter.  I

6   mean, that's the issue with generalized, right,

7   which is -- and I think you might have a point

8   with the individuals.

9           MR. TYSON:  Mh hmm.

10           HON. ROBERT LUCK:  That theirs is the

11   same as everyone -- every other voter is, and

12   they need something particularized or special as

13   to them.  But there's no one else who's claiming,

14   that I know of, that but for this law, I would

15   have spent money doing other election reform

16   efforts elsewhere.  This seems to be not general

17   but specific to the Coalition.

18           HON. BRITT GRANT:  Let me put it a

19   different way.  What do you identify specifically

20   as different between this set of -- this

21   organizational plaintiff versus the dozens that

22   we found standing for in other election cases?

23           MR. TYSON:  And Your Honor, I think the

24   key difference is the only evidence in the record

25   as far as the 990s are the Coalition exists to

Case 1:17-cv-02989-AT  Document 1388-2  Filed 06/01/22  Page 9 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 8

1    litigate.  That is its sole purpose.  Whether it

2    was a declaration to the contrary -- and I think

3    again, the idea that --

4            HON. ROBERT LUCK:  So I looked at that.

5    And I know you make that argument, but in their -

6    - at least in their allegations, they say -- the

7    executive director -- it is alleged the executive

8    director would do education and other -- now have

9    to spend efforts on education, instruction, and

10   litigation as a result, and otherwise would have

11   done work on auditing and election reform

12   efforts, which is not litigation related.

13           So it seems to be -- you might have a

14   point if the only goal was litigation, and that's

15   what they're doing, but this seems to be not

16   that.  This seems to be true diversion from at

17   least something else.

18           MR. TYSON:  Yes, Your Honor.  I'll just

19   -- I'll make one last point.  Then I'll move on

20   from this.  But just I think it's important to

21   consider too this Court's post-2020 litigation.

22   The idea that if an individual had merely

23   incorporated, they could've transformed their

24   generalized grievances into sufficient

25   organizational standing merely by the act of

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 10 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 9

1   incorporating I think is a problematic view of

2   how to look at Article 3 standing, but I'll move

3   on to some of the other bases we have here.

4           HON. BRITT GRANT:  I've got a question

5   actually.  Can you point me to an injunction

6   related to the scanner issue?

7           MR. TYSON:  Yes, Your Honor.  So I

8   think the key issue is the specificity on Rule

9   65.  The cases in Rule 65 focus on it was a

10  district court that didn't call what it did an

11  injunction actually issuing an injunction.

12  That's where most of the caselaw is on that.

13          In this case, you had the district

14  court saying three times that it is granting

15  relief, that it is granting the motion for

16  preliminary injunction.  Those statements

17  indicate the district court intended to enter an

18  injunction, but it didn't specify what the

19  requirements were.

20          HON. BRITT GRANT:  Didn't it ask the

21  State for a proposed injunction?  And I assume --

22  I think I see in the record that you all provided

23  that, but I don't see where one was ever entered.

24          MR. TYSON:  That's correct, Your Honor.

25  There was never a specific threshold entered for

Page 10

1   the scanner.

2          I think the key for the State is there

3   have been multiple situations in this case and in

4   the common cause case that was recently before

5   this Court where an injunctive relief of some

6   sort was entered.  From the State's position, it

7   didn't change anything the State was already

8   doing.

9          So for example, the 2019 order in this

10  case from the State's position, that just ordered

11  the State to do what it was already supposed to

12  do.  It became the basis for a $6 million request

13  for attorney's fees.  So from the State's

14  perspective we had to appeal this order because

15  the district court clearly said it was entering

16  an injunction as it related to the scanners.

17          HON. BRITT GRANT:  I'm not obviously

18  saying that we would say what you want us to say

19  about that, but what -- given what you've just

20  said, what would be your proposal for how the

21  Court would address this issue?

22          MR. TYSON:  And Your Honor, I think the

23  proper method at this point is to find that the

24  scanner order violated Rule 65's specificity

25  requirements, that if a district court was going

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 11

1   to enter an injunction that later -- was going to

2   contain later information, it needed to not say

3   it was entering the injunction in that order.  It

4   needed to say it was considering entering the

5   injunction.  It was taking other steps, not that

6   it was granting the PI.

7           HON. ROBERT LUCK:  You're in a fine

8   line here because on the one hand, if it's not

9   specific enough to the -- to a certain point, we

10  don't have appellate jurisdiction.  And on the

11  other hand, you want to tell us it's not specific

12  enough but enough for appellate jurisdiction

13  because it violates Rule 65.  That is a perilous

14  argument for you.

15          As I understand your argument on

16  appellate jurisdiction, and then we'll turn to

17  Rule 65, it is that there was language of --

18  there was mandatory language requiring certain

19  basic elemental things be done by a date certain.

20  Is that true?

21          MR. TYSON:  Your Honor, there are

22  certain -- there was the intent of the district

23  court to enter an injunction, so Chief Judge

24  (indiscernible) concurrence --

25          HON. ROBERT LUCK:  Well, beyond that --

Page 12

1    because I'm not sure that's enough.  I'm not sure

2    it's enough to say, "Injunction granted.  We'll

3    talk to you later."  It -- which is what you're

4    saying here.

5              As I understand, here's what the order

6    said starting -- I'll quote from Page 142.  "The

7    expanded methods to address the scanner tabulator

8    and adjudication software's per se blank

9    exclusion of marks that may reasonably be

10   considered by an adjudication panel as indicating

11   voter intent must be in place no later than the

12   next election cycle following the conclusion of

13   the January 2021 runoff."

14             So you have a date certain that

15   something must be done and a baseline with which

16   something must be done.  There must be something

17   different done than is currently the law or that

18   currently exists to expand the method that the

19   scanner tabulates such that an adjudication panel

20   can determine voter intent.  Right?

21             MR. TYSON:  That's correct.

22             HON. ROBERT LUCK:  And then it says --

23   and it -- the beginning of that sentence is

24   actually "in any event," because in other words,

25   what she first ordered you all to do is you guys

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 14 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 13

1   got to sit down.  But she says, "In any event, I

2   am ordering this and further relief," not just

3   relief but further relief will come later.  Is

4   that a fair representation of the order?"

5            MR. TYSON:  I think it's a fair

6   representation, Your Honor.

7            HON. ROBERT LUCK:  How is that not

8   specific enough?

9            MR. TYSON:  And I think that in this

10  case, it's not specific enough because it did not

11  tell the State what it needed to do to avoid a

12  contempt citation.

13           HON. ROBERT LUCK:  Yeah, it did.  Do

14  something more than you're doing now.

15           MR. TYSON:  But do something more I

16  don't think is specific enough for Rule 65

17  because what does "more" mean in this context?

18  There's a discussion of a variety of different

19  brightness settings, dots-per-inch settings, and

20  the later filings show the plaintiff's only

21  proposed remedy is related to brightness

22  settings, not anything else.

23           HON. ROBERT LUCK:  Contempt requires an

24  intentional, willful disregard of a court order.

25  If the State had come and said, "Judge, we've

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 15 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 14

 1   looked at this again, and we've now decreased the

 2   scanners to the 5 percent range.  We couldn't

 3   agree, but this is what we've done there," no

 4   judge in the world could ever find that you

 5   willfully violated that order, but that order

 6   still would have caused you to go back and to do

 7   something to comply, right?

 8           MR. TYSON:  I think it would, Your

 9   Honor, except that in -- as Judge -- Justice

10   Kavanagh said in the Merrill versus Milligan

11   case, elections are very complicated to run,

12   especially statewide.  The number of moving

13   pieces that are happening here requires very

14   specific direction for the Court, not just go try

15   again and go try to do something different.  When

16   the State had already done a study, it had

17   already adopted a rule, there needed to be more

18   specificity, from our perspective, to comply with

19   Rule 65.

20           HON. BRITT GRANT:  Did you do anything

21   in response to this order?

22           MR. TYSON:  Your Honor, I don't believe

23   there was ever any action taken related to the

24   scanner issue specifically.

25           HON. BRITT GRANT:  Did the plaintiffs

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067
May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 15

1    raise that with the Court?

2           MR. TYSON:  No, Your Honor.  The

3    plaintiffs took the position that this was not an

4    injunction because the Court never gave specific

5    direction.  I believe that's their position on

6    appeal in this case as well.

7           So in my time remaining, let me move to

8    Anderson-Burdick.  I think that's a key issue

9    here.

10          HON. LANIER ANDERSON:  Let me ask you

11   this.

12          MR. TYSON:  Yes, Your Honor.

13          HON. LANIER ANDERSON:  Assuming that

14   the scan order is something we have no

15   jurisdiction on, I can't understand really the

16   only belief granted by this pollbook order is

17   that you have to update through -- update the

18   paper ballot -- the paper backup through early

19   voting.  I cannot understand why you would not

20   want to do that.

21          MR. TYSON:  And Your Honor, the

22   testimony of -- at the hearing was this was

23   actually a lot more complicated than the district

24   court made it.  And this kind of goes to our

25   Anderson-Burdick question on this point.  There

Case 1:17-cv-02989-AT Document 1388-2 Filed 06/01/22 Page 17 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna Vs. Raffensperger, Brad

Page 16

1    was a reasonable nondiscriminatory election rule

2    in place.  The State had paper backups.  There

3    was never a question those existed already.  The

4    only question was would it include --

5              HON. ROBERT LUCK:  I have a legal

6    question.  A part of the -- what drove the

7    Anderson-Burdick analysis, frankly, it's like

8    with anything else.  If you find a severe burden,

9    you're going to lose.

10             MR. TYSON:  Yes.

11             HON. ROBERT LUCK:  Is the determination

12   of severity a factual determination or a legal

13   determination for us?

14             MR. TYSON:  Your Honor, I believe it

15   has to be a legal determination.  It's going to

16   be at least a mixed question of law and fact

17   because the district court obviously goes on at

18   length about all these possible malfunctions,

19   things that county poll workers were doing that

20   were not functioning.

21             But at the end of the day, the

22   theoretical vulnerability and the questions about

23   possible malfunctions can't in and of themselves

24   as a legal matter be a serious severe burden on

25   the right to vote because it's so unforeseeable.

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 18 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067    May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 17

1   And again, this is where these kind of -- these

2   pieces mix together because at the end of the

3   day, the plaintiffs haven't showed that this was

4   certainly going to happen.  They showed maybe it

5   might happen.  The State is entitled to

6   administer its reasonable nondiscriminatory

7   election rules without the district court's

8   interference.

9          HON. BRITT GRANT:  I'd like you to back

10  up and finish answering Judge Anderson's

11  question.  I'm interested in that too.

12         MR. TYSON:  Yeah.  So the key point is

13  the list that was provided included voter

14  registration information, so if a person

15  presented their driver's license, and they went

16  to check in on the poll pad, the check-in unit

17  wasn't working.  The poll worker is supposed to

18  consult the paper list, check the voter in, and

19  allow voting to continue.

20         The information on the poll pad

21  includes information updated over the weekend

22  regarding the absentee ballot status for a voter.

23  Because of the nature of the printing schedule

24  for those paper lists that the secretary

25  undertakes, they cannot print those lists from

Case 1:17-cv-02989-AT Document 1388-2 Filed 06/01/22 Page 19 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna Vs. Raffensperger, Brad

Page 18

1    the secretary's side in the weekend after the end

2    of early voting and before Tuesday.

3              So it may be a very good idea to

4    include absentee information.  That's something

5    that maybe the State needs to look at.  But at

6    the end of the day, it wasn't up to the district

7    court to use its Article 3 powers.

8              HON. LANIER ANDERSON:  You told the

9    district court in a written statement that it was

10   feasible.

11             MR. TYSON:  I'm sorry, Your Honor.  I

12   didn't hear the question.

13             HON. LANIER ANDERSON:  You told the

14   district court that it was feasible to do that.

15   You said it's not as simple as that, but it's

16   feasible.

17             MR. TYSON:  Certain, Your Honor.  And I

18   think this kind of goes back to where the new

19   Georgia project a case was on a lot of this too.

20   There are a lot of good ideas around the

21   administration of elections.  The State has

22   procedures.

23             The fact that we'd have to print two

24   different reports, I believe that filing said,

25   and train -- counties have to train poll workers

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 20 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 19

```
 1   how to use these alternate reports as well.

 2   That's a significant change to be happening,

 3   especially on the eve of an election.  This is a

 4   lot more than a Purcell case though because I

 5   think as we saw, the scanner order was used by

 6   folks challenging the 2020 election to add an

 7   aura of credibility around these claims of a

 8   stolen election.  And hewing closely to Article 3

 9   we think is very important here and that these

10   orders should be reversed.

11           And with Your Honor's permission, I'll

12   reserve the remainder of my time.

13           HON. BRITT GRANT:  Does anyone else

14   have any questions before he sits?  Okay.  Thank

15   you.

16           MR. TYSON:  Thank you, Your Honor.

17           HON. BRITT GRANT:  Mr. McGuire?

18           MR. MCGUIRE:  Good morning.  May it

19   please the court, my name is Robert McGuire.  I

20   represent the Coalition plaintiffs, which is one

21   of the two groups.

22           HON. ROBERT LUCK:  Counsel, I'm going

23   to jump right in because you don't have a ton of

24   time.

25           MR. MCGUIRE:  Sure.
```

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067
May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 20

1          HON. ROBERT LUCK:  I'll tell you that -

2     - and I'm only speaking for myself.  I think

3     there's standing, and I think that there's

4     appellate jurisdiction, so I'm very interested in

5     the Anderson-Burdick, the merits issue, and so

6     that's where my questions are going to go.

7          And my first one related to the scanner

8     order is this.  Where is the evidence in the

9     record -- and point me to it because I didn't

10    find in the district court's order that "the

11    average voter is likely unaware that their

12    failure to adequately darken the oval to a

13    certain percentage may cause their vote to be

14    rejected by the scanner and in turn not count it

15    altogether."  That's at 129 and 30 of the

16    district court's order.

17         MR. MCGUIRE:  Your Honor, off the top

18    of my head, I don't -- can't point you to where

19    that evidence is.  But I can say that I don't

20    believe that evidence is necessary for the Court

21    to have entered the rule as it did on the

22    scanners.

23         HON. ROBERT LUCK:  Well, so here's why

24    I think it is because the district court

25    acknowledged right before that sentence that the

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 22 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 21

1   burden is minimal, argument whether there's a

2   burden at all, but that the burden is minimal.

3   That sentence, however, was the basis for the

4   district court's finding or -- it should be

5   determination that the burden was actually more

6   than minimal because the average voter actually

7   doesn't really know despite the instructions that

8   they have to oval this thing in.

9          So what I want to know is where in the

10  record the district court determined what the

11  average voter would understand even though they

12  were explicitly instructed to oval that -- to

13  oval in a specific oval.

14         MR. MCGUIRE:  That was not part of our

15  proof that I recall, so what I will say on the

16  burden is that I think the burden that the

17  district court was talking about there was the

18  burden of complying with the instructions to

19  color in the oval.  And that burden certain is

20  minimal.  But the burden that's at issue in

21  determining the merit -- the issue here is the

22  burden on the voter of having their vote not

23  count.

24         HON. ROBERT LUCK:  And the reason -- I

25  agree with you completely.  You're right.  But

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 23 of 63

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 22

1    the point that the district court made is the

2    reason why that burden is more than minimal is

3    because the average voter wouldn't understand

4    despite the instruction what they'd have to do

5    and therefore wouldn't do it correctly.

6              And what I want to know is where is the

7    evidence to support that finding because that to

8    me is the critical finding in the whole thing.

9    If that -- to me, if that -- if there's not

10   evidence to support that, that whole thing falls

11   apart because then it becomes minimal, and it's

12   easy for the State to meet the burden.

13             MR. MCGUIRE:  Well, again, I can't

14   point you to exactly what evidence she had in

15   mind in that particular passage of her opinion.

16             HON. ROBERT LUCK:  Okay.  So let's -- I

17   want to go to the pollbook order, what everyone's

18   calling the pollbook order.

19             Let me ask you this.  If Georgia law

20   required that all polling places are required to

21   have and to use electricity mired to the grid, to

22   a hardline grid -- that was the statute -- and on

23   election day, the power went out, would that be a

24   severe burden on -- would that be a severe burden

25   on the right to vote?

Page 23

```
 1            MR. MCGUIRE:  That -- if that was the
 2    reason why the power went out, then there are
 3    emergency procedures which provide for people to
 4    cast ballots in that case.
 5            HON. ROBERT LUCK:  So the answer would
 6    be no.
 7            MR. MCGUIRE:  The answer would be no if
 8    that were the cause.
 9            HON. ROBERT LUCK:  Okay.
10            MR. MCGUIRE:  Correct.
11            HON. ROBERT LUCK:  Let's assume that
12    Georgia has a statue which says that every
13    polling location in the entire state has to be
14    hooked to some WIFI system, and for whatever
15    reason, in the southeast on election day, the
16    satellite goes down and all WIFI drops, would
17    that be a severe burden on the right to vote?
18            MR. MCGUIRE:  Well, I think -- I think
19    the answer to this question and in fact the
20    answer to your former question depends a little
21    bit on the presumption that underlies those
22    facts.
23            We presume that electricity -- the
24    electrical power grid functions normally and
25    isn't routinely defective.  If it were routinely
```

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 25 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 24

 1  defective, it would be a different answer.  I

 2  would have given you a different answer to your

 3  previous question.

 4          HON. ROBERT LUCK:  Okay.

 5          MR. MCGUIRE:  So I think -- I think --

 6          HON. ROBERT LUCK:  So answer my WI-FI

 7  question.

 8          MR. MCGUIRE:  If -- well, it depends on

 9  whether there would be evidence that the WI-FI

10  was routinely interrupted or routinely didn't

11  function properly.  If it did, if there was that

12  evidence as there is here for the --

13          HON. ROBERT LUCK:  Assuming it normally

14  works okay.

15          MR. MCGUIRE:  Assuming that it normally

16  works okay and there's not evidence, then I would

17  think that the fact that you're using electricity

18  and that's dependent on the system would not

19  create a burden by itself.

20          HON. ROBERT LUCK:  Okay.  So let's take

21  a more tangible -- let's take it to here.  So

22  here there's a requirement that there be used

23  iPads with an electronic polling system as part

24  of the BMD system that you all are attacking, and

25  that's the basis of the pollbook order.  How is

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 25

1   that a severe burden that many of those just

2   didn't operate correctly on election day?

3            MR. MCGUIRE:  I think the burden for

4   purposes of standing arises from you -- the

5   burden on --

6            HON. ROBERT LUCK:  I'm not talking

7   about standing.  I'm talking about whether it's

8   severe or not.

9            MR. MCGUIRE:  Oh, whether it's a severe

10  burden or not.

11           HON. ROBERT LUCK:  I'm -- I think you

12  have standing.

13           MR. MCGUIRE:  Okay.  So apologies.

14  Your question is whether it's a severe burden to

15  use an iPad, for example?

16           HON. ROBERT LUCK:  For the state to

17  require that an iPad be used?

18           MR. MCGUIRE:  I don't think there's any

19  burden at all on the State requiring you to vote

20  by a method that works.  The burden arises when

21  the method doesn't work.

22           HON. ROBERT LUCK:  Right, but there's a

23  risk that any method won't work on any given day.

24  I mean, rain could happen so bad that it floods

25  out a particular polling place.  Is that a severe

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 27 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 26

1    burden?  Probably not, right?

2              MR. MCGUIRE:  Well, that would -- that

3    obviously would be a burden to the voters that

4    are affected by it.

5              HON. ROBERT LUCK:  No, it's a burden

6    that day, but is it a severe burden on the right

7    to vote in the sense that we talk about for

8    Anderson-Burdick?

9              MR. MCGUIRE:  I think with the examples

10   that you're giving, I think the proper answer is

11   probably that these are burdens on the right to

12   vote, but the issue is whether there's causation

13   that's reasonably traceable to the defendant's

14   conduct.

15             HON. BRITT GRANT:  Right.  So wouldn't

16   it be different if say the State put all the

17   polling places in the places where they thought

18   that their preferred party wouldn't get the vote,

19   in the floodplain, right, and they just expected

20   that that was going to happen.  That would

21   certainly be different than a 100-year flood

22   happens, or even an ordinary flood, right?  A

23   pipe bursts.  Things -- you know, things happen.

24   Why is this any different than things happen?

25             MR. MCGUIRE:  So are we -- is -- may I

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 27

1   address your question on the standing issue or

2   the merits issue?

3            HON. BRITT GRANT:  We're not talking

4   about standing.  Standing is over.

5            MR. MCGUIRE:  Okay.  We're just talking

6   about merits.

7            HON. BRITT GRANT:  Yeah.

8            MR. MCGUIRE:  So I guess what's

9   confusing me is that the way we conceive of

10  burden here is that the burden on the voter is

11  the burden on the ability to vote.  And the

12  method of voting is not a burden unless the

13  method results in depriving you of the ability to

14  cast your vote.  And so it --

15           HON. LANIER ANDERSON:  Counsel, it

16  seems to me the best answer you might have to

17  questions asked by both Judge Luck and Judge

18  Grant is something along the following lines.

19           Obviously a storm that knocks out all

20  the power is not something that we could deal

21  with in a court order.  But the problem in this

22  case and your answer to them, it seems to me,

23  would be that there's a lot of evidence in this

24  case, and the evidence is that these pollbooks

25  did not operate in three different elections time

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 29 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 28

1   after time after time, and there were numerous

2   causes, probably.

3            But a considerable part of the cause,

4   probably, is the lack of training and, in

5   particular, the lack of training in how to use

6   the backup, and in particular the lack of

7   training in the use of provisional ballots when

8   emergency ballots should've been used if they had

9   referred to the backup.  Even though the pollbook

10  is not operating electronically, the backup would

11  show that the voter is supposed to vote in this

12  precinct, and he should be allowed then to vote

13  on emergency ballot and not a provisional ballot.

14  Why is that not your answer to some of these

15  questions anyway?

16           MR. MCGUIRE:  Well, I think -- I think

17  our answer -- I certainly will accept that as an

18  answer that I would be happy to give.

19           I think the -- what is causing me to

20  stumble here is that the thing that is causing

21  the burden is not the method of voting.  The

22  method of voting is we?re agnostic as to the

23  method of voting if the method of voting allows

24  people to vote.  It's the fact that the State is

25  doing something which is -- which is failing to

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 30 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 29

```
 1   provide an updated pollbook to take account of
 2   predictable failures.
 3              HON. ROBERT LUCK:  I understand that,
 4   but the method of voting is -- which includes all
 5   of that is part of why the district court
 6   determined that it's severe.  And the vagaries of
 7   any given day at any given time could affect the
 8   voting.  If it's paper and for some reason, you
 9   know --
10              HON. BRITT GRANT:  Printer jam.
11              HON. ROBERT LUCK:  The printer jams or
12   the ink is disappearing, or there's a paper
13   shortage like there is a shortage of a lot of
14   other things going on in today's day and age.
15   None of that would be called a severe burden even
16   though, obviously, it would interfere with the
17   right to vote.
18              MR. MCGUIRE:  Yes.
19              HON. ROBERT LUCK:  You would agree?
20              MR. MCGUIRE:  I would agree with that,
21   although I would dispute that -- whether these
22   are vagaries.  I think that these are not the
23   kind of vagaries of life that would appear to be
24   just random arbitrary --
25              HON. ROBERT LUCK:  Technology not
```

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 31 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 30

1    working?

2            MR. MCGUIRE:  Technology not working in

3    the course of --

4            HON. ROBERT LUCK:  I've had that vagary

5    just today, this morning, since I got here.

6            MR. MCGUIRE:  It's certainly something

7    that happens routinely in life, but it's not

8    something that happens routinely in elections

9    when you're running a system where you involve --

10    you require technology to vote, and then the

11    technology itself has been proven repeatedly to

12    be -- to be defective.  The problem for us is

13    that they are not providing a mitigation for that

14    foreseeable problem.

15            HON. BRITT GRANT:  First question.  Do

16    you know if the State or the county provides

17    training to poll workers related to the

18    pollbooks?

19            MR. MCGUIRE:  I believe the counties

20    provide the training directly.

21            HON. BRITT GRANT:  So could we as a

22    Court hold the State responsible for lack of

23    training on how to use the pollbooks?

24            MR. MCGUIRE:  The State -- the State is

25    -- under Grizzle v. Kemp, the State is the chief

Case 1:17-cv-02989-AT  Document 1388-2  Filed 06/01/22  Page 32 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 31

1   enforcement officer of the election code in

2   Georgia, and so the State prescribes --

3            HON. ROBERT LUCK:  That's not good

4   enough under Jacobson though.  I mean, we were

5   clear in Jacobson that that is -- it's not enough

6   just to say you're the chief election officer,

7   and you're responsible for all of it.  You've got

8   to -- you've got to drill down on who's

9   responsible for what specific thing to determine

10  redressability and traceability for standing.

11           MR. MCGUIRE:  And that is why also we

12  named Fulton County as a defendant in the case

13  and why they were enjoined as well as the State

14  was in this matter.

15           So I see I'm over my time.  We were

16  going to divide time, so I can turn it over to my

17  counsel unless you have more questions for me.

18  Mr. Qian is going to be discussing the

19  separateness of this case, the narrowness of this

20  appeal, so I'm happy to answer more questions, or

21  I can turn it over to him for him to address

22  this.

23           HON. BRITT GRANT:  It's your time, so

24  you all can decide.

25           MR. MCGUIRE:  I would just conclude by

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 33 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 32

1   saying from the Coalition perspective --

2   Coalition plaintiff's perspective, we would

3   respectfully request that you affirm the pollbook

4   order and lift the stay on it, and dismiss the

5   scanner order as unappealable.

6           MR. QIAN:  Good morning, Your Honors.

7   May it please the Court, Michael Qian for the

8   Curling plaintiffs, Donna Curling, Donna Price,

9   and Jeffrey Schoenberg.

10          HON. ROBERT LUCK:  So can I pick up

11  where your -- on a thread that your opposing

12  counsel talked about?  So in discussing some of

13  the hypotheticals, your -- including the

14  electricity one and the WI-FF one, your opposing

15  counsel said one reason the burden would not be

16  severe because, if the -- for instance, the

17  electricity went out in the entire grid in the

18  southeast on election day was Georgia very wisely

19  has an alternative paper ballot system for

20  emergency ballots that are actually counted.

21  They aren't provisional.  You just check off the

22  pollbook.

23          Here, I understand the pollbooks aren't

24  updated to the nth degree, but they have a list -

25  - a paper list of the voting rules, and they have

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 34 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 33

1    voting ballots.  How, even if the electronic

2    system is so unreliable, does that not take care

3    of any severity with regard to the burden?

4            MR. QIAN:  It doesn't take care of it

5    because there is still a burden imposed by

6    forcing voters to vote provisionally instead of

7    on ordinary ballot.

8            HON. ROBERT LUCK:  So the emergency

9    system -- I think you both are at pains and the

10   district court is at pains to say it's not a

11   provisional system, and I tend to agree with you

12   on provisional.

13           The -- there is, as I understand it,

14   three votes.  There's regular on the electronic.

15   Thar's emergency votes if the electronic system

16   goes down, and going down means lines of 30

17   minutes or more, the electricity goes off,

18   something like that, defined by regulation.  And

19   then provisional for those who for some reason

20   the pollbook is not updated, and they can't --

21   they're listed in the wrong place.  Is that

22   correct?

23           MR. QIAN:  To be honest, Your Honor,

24   I'm not sure because these were the Coalition

25   plaintiff's claims.  But what I do know from the

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 35 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 34

 1    district court's order is that there is evidence

 2    that voters were required to vote provisionally,

 3    and that does impose a burden on those voters.

 4            And let me just make one more point

 5    about this question about the vagaries of life.

 6    You know, one way you can think about this is the

 7    magnitude of the burden.  And there, I would say

 8    that if a voter doesn't get to vote or has to

 9    vote on a provisional ballot, that is a severe

10    burden on that voter.  But I think the --

11            HON. ROBERT LUCK:  The problem is,

12    Counsel -- and I'm sorry to interrupt, but that's

13    true of the electricity example.  It's true of

14    the WI-FI example.  It's true if there's a one in

15    a 100-year flood.  It's true of lots of things

16    that we don't call a severe burden.

17            MR. QIAN:  That's true, Your Honor.

18    And two differences I would point out in this

19    case.  One, it's as if the flood or the leak in

20    the roof happened year after year in every single

21    election.  Then I think you would say that there

22    is a severe burden on the voters.

23            The second is -- second point I would

24    make is that I think those problems -- those

25    issues are better dealt with on the other side of

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067
Curling, Donna  Vs. Raffensperger, Brad
May 19, 2022

Page 35

1  the ledger of the Anderson-Burdick balancing

2  test.  It's the State's interest.  The State does

3  have a severe interest not having to plan around

4  a 100-year flood.  But if the problem is easily

5  avoidable just by printing what they're already

6  printing, just at a later date, it's a minimal

7  burden on the State.  And that's why the

8  Anderson-Burdick analysis comes out in our

9  (indiscernible) here.

10          HON. ROBERT LUCK:  But that -- we don't

11  look at it that way.  In other words, we don't

12  say, "This is a really good idea, and it doesn't

13  cost the State so much, so we're going to require

14  that."  That's not what this is about.

15          What this is about is, is this a severe

16  -- is the fact that it's not updated by about

17  three or four days, is whatever minimal harm that

18  is to the right to vote balanced against whatever

19  State interest has in doing so?

20          And it seems to me that it's really

21  minimal to say that we're going to print it out

22  this day as opposed to this day, and that might

23  affect a really small handful that might have to

24  vote provisionally whose votes will end up being

25  counted anyway.  And again, we're only talking

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 36

1    about a case of emergency.

2              MR. QIAN:  I think, Your Honor, that

3    ultimately it is a balancing test.  And so

4    regardless of whether you're labeling it a severe

5    burden or a minimal burden, you still have to

6    balance the burden on voters who will not get to

7    vote or who will have to vote provisionally

8    against a minimal state interest on the other

9    side.

10             If I could just address --

11             HON. BRITT GRANT:  Are we supposed to

12   go back there to the conference room and hash it

13   out amongst ourselves what we would do if we were

14   in the Georgia legislature, what we think would

15   be the most effective way to make the line

16   shorter and the voting easier?  Is that -- is

17   that what the Supreme Court has said we should

18   do?

19             MR. QIAN:  No, Your Honor.  It's a

20   balancing test like many other constitutional

21   frameworks.  It's a well-establishing balancing

22   test under Burdick-Anderson, and the district

23   court had the full record before it.  It assessed

24   these, and the question is just whether the

25   district court committed some error, and I don't

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 38 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 37

1    think the State defense has pointed to one.

2         If I could just address the scanner

3    order briefly.  There is no appellate

4    jurisdiction because the district court entered

5    no injunction.

6         Judge Luck, you pointed to a line in

7    the district court's order where it talked about

8    expanded methods, but in the very next sentence,

9    the district court explained that those methods

10   would be identified through further proceedings.

11   It --

12         HON. ROBERT LUCK:  No.  It says it

13   would grant further relief after you guys sat

14   down together, but it set the standard.  It said

15   you must do something by a certain date, and it

16   told the State what that something was.  It says

17   you need to expand the method such that a -- I

18   forget what the -- the Board, whatever the Board

19   who looks at these -- can reasonably determine

20   voter intent.  How is that not a directive to do

21   something?

22         And if -- let's assume the State did

23   nothing, so this piggybacks off Judge Grant's

24   question.  Let's assume the State said, "I'm not

25   doing anything until we sit down, and we can't

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 39 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067     May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 38

1    agree, so we're at a standstill.  I'm not doing

2    anything."  You're telling me you wouldn't run to

3    the Court to say, "You said in any event they had

4    to do something by this date, and they didn't do

5    it, so require it"?

6              MR. QIAN:  I'm -- so two things, Your

7    Honor.  First, I respectfully disagree with your

8    reading of the district court's order.  I think

9    the further relief in the next sentence is

10   talking about the expanded methods.  And that's

11   clear in context of the district court --

12             HON. ROBERT LUCK:  Why use "further"?

13   Doesn't "further" imply that it granted relief?

14             MR. QIAN:  No, Your Honor.  It's --

15             HON. ROBERT LUCK:  Really?

16             MR. QIAN:  Yes, Your Honor, because

17   there is no instruction to the State defendants

18   in this order.  They're -- so it's not just the

19   absence of that language.  It's the presence of

20   the district court clarifying that it would hold

21   further proceedings to identify what the relief

22   was.  You can also --

23             HON. BRITT GRANT:  Did the plaintiffs -

24   - did the plaintiffs -- any plaintiff file asking

25   the district court to enter an injunction?

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 40 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 39

1          MR. QIAN:  Yes, Your Honor.  There were

2    further proceedings after this order.  Each side

3    submitted their proposed remedy, and then very

4    importantly, the district court issued a further

5    order -- it's at Docket 1021 -- where it further

6    deferred proceedings on the remedy.

7          So the district court was clear in both

8    Order 964 and in 1021 that it had not yet entered

9    anything.  The date certain, Your Honor, Judge

10   Luck, was -- it was after -- it said after the

11   January 2021 elections.  It didn't say do

12   anything by January 2021.  It said after, and

13   that's even clearer taking into account Order

14   1021.

15         But let me also address Judge Luck's

16   point about the practicalities of the situation

17   and how the parties have behaved because I think

18   that removes any doubt.

19         State defendants conceded this morning

20   they have done nothing differently because --

21         HON. ROBERT LUCK:  Counsel, I want to

22   go back to what you said.  You're way over time,

23   but you -- that needs to be corrected, what you

24   just said.  On Page 142, it says, "Must be in

25   place no later than the next election cycle

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 41 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 40

1  following the conclusion of the January 2021."

2  It didn't just say in some date in the future.

3  It said next election cycle.

4        MR. QIAN:  Your Honor, it said not the

5  January 2021 elections.  Some -- the elections

6  after that.

7        HON. ROBERT LUCK:  The date -- the next

8  election after that.  It's a date certain.

9        MR. QIAN:  But Your Honor, taken in

10  context, especially with Order 1021, what the

11  district court was doing was deferring

12  proceedings on the remedy.

13        And again, you know that by how the

14  parties have acted, and the State defendants

15  haven't changed their conduct.  They never sought

16  a stay of that order, which they would've done if

17  they thought they were under some sort of

18  injunction order, if they thought they were under

19  order of contempt because that's what they did

20  with the pollbook order, which was an injunction.

21  It's --

22        HON. BRITT GRANT:  I have a question

23  about what interests both the parties might have,

24  all the parties have, besides what happens with

25  the scanners.  Your friends on the other side

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 42 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 41

1    indicated a concern about attorney's fees.  Is

2    that something that changes depending on what we

3    decide about whether this is appealable?

4              MR. QIAN:  Your Honor, I -- to be

5    honest, I'm not in a position to answer that

6    because this was the Coalition plaintiff's

7    motion.  I'm just here to underscore the limited

8    nature of this Court's appellate jurisdiction --

9              HON. BRITT GRANT:  But why --

10             MR. QIAN:  -- in this appeal.

11             HON. BRITT GRANT:  If it's not -- if

12   it's not your motion or your party isn't

13   concerned about it, then why are you here talking

14   to us about it?

15             MR. QIAN:  My client's concern is,

16   again, to underscore the limited scope of these

17   appeals because State defendants have made broad

18   arguments that affect my client's interests, for

19   example on the ballot-marking device claims.  And

20   so I just want to be clear about --

21             HON. BRITT GRANT:  The ballot-marking

22   device claim was a Coalition claim.  Isn't that

23   what you just said?

24             MR. QIAN:  I'm sorry.  I represent the

25   Curling plaintiffs.

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 43 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 42

1          HON. BRITT GRANT:  Right.

2          MR. QIAN:  Both the Curling and

3    Coalition plaintiffs brought ballot-marking

4    device claims.

5          The reason that I'm here today on

6    behalf of the Curling plaintiffs is because the

7    State defendants made arguments regarding the

8    ballot-marking device claims, and our response to

9    that is that's not at issue in this appeal.  This

10   Court shouldn't address it.  And that the

11   appellate jurisdiction, even over the scanner

12   order is limited.

13         I don't have a view on the attorney's

14   fee question that Your Honor identified.  To my

15   knowledge, there haven't been proceedings on

16   attorney's fees as to the scanner order in the

17   district court, and so I think that's something

18   that would be resolved in future litigation.

19         HON. BRITT GRANT:  Thank you.

20         MR. QIAN:  Thank you.

21         HON. BRITT GRANT:  Mr. Tyson, you have

22   three minutes.

23         MR. TYSON:  Thank you, Your Honor.  I

24   think that what we've heard is the kind of

25   evidence-is-unnecessary idea, that we can just

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 44 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 43

```
 1   look and see there's problems, and therefore the
 2   State has responsibility, almost a res ipsa
 3   theory of election administration.
 4           I think what the Court sees here is
 5   there's not a flipping of the burden.  It's not
 6   the State's burden to disprove --
 7           HON. ROBERT LUCK:  Well --
 8           MR. TYSON:  -- their problems.
 9           HON. ROBERT LUCK:  I think you need to
10   address Judge Anderson's question.  And what
11   Judge Anderson's question was -- in giving a very
12   articulate response to questions that I had and
13   Judge Grant had -- which is that at some point,
14   when the flood happens every single time and you
15   don't change the polling place, at some point
16   when the electricity goes out on election day
17   every single time, is the State not then charged
18   with doing something -- and not charged with the
19   burden being severe by not doing something?  I
20   think that's really the question you have to
21   answer.
22           MR. TYSON:  And I think that if there
23   can show a kind of duty over time that is being
24   violated -- if you know for certain, for example,
25   to Judge Grant's question that you always place
```

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 45 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 44

1   the opposing party's political precincts in an

2   area where things are likely to go wrong.

3           I think we have though, really at a

4   root in that problem -- so I agree, number one,

5   that that could be a claim.  I don't want to say

6   that's not correct.  I think we get back to our

7   Jacobson traceability, redressability problem

8   though because what we find in Georgia elections

9   is as a matter of statute and practice, counties

10   run elections.

11           HON. ROBERT LUCK:  So I have to say I'm

12   very familiar with Jacobson, and I'm familiar

13   with Florida's system.

14           So I did a lot of digging, and I don't

15   know how you get around -- and please tell me how

16   you do -- the Georgia statute, and I'm talking

17   about 21-2-300 in all of its glory.  "The

18   equipment used for casting and counting votes,

19   for counting votes in county, state, and federal

20   elections shall be the same in each county of the

21   state and shall be provided by the State as

22   determined by the secretary of state."  The

23   secretary of state determines the method of

24   voting.

25           MR. TYSON:  Absolutely.

Case 1:17-cv-02989-AT Document 1388-2 Filed 06/01/22 Page 46 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna Vs. Raffensperger, Brad

Page 45

1          HON. ROBERT LUCK: That's different

2    than Florida.

3          MR. TYSON: That is different than

4    Florida, but I think the key distinction that is

5    the same as Florida is county officials still

6    carry out the training of the poll workers, so

7    under --

8          HON. LANIER ANDERSON: The State --

9    there's a statute, Georgia statute that says that

10   the secretary of state is responsible for

11   training the election superintendents in each

12   county.

13          So I think the ultimate duty of

14   training falls on the secretary of state, and the

15   secretary of state certainly has authority, it

16   seems to me, to direct the superintendents of

17   election in each county as to the kind of

18   training that needs to happen, which the evidence

19   in this case shows they need to train them about

20   use of the backup -- oh my goodness. I apologize

21   for that.

22          HON. BRITT GRANT: I'll ask you a

23   question while he's doing that. Was there

24   evidence discussed about the nature of the

25   secretary's training of the election supervisors?

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 47 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067    May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 46

1   Was that a part of the case?

2           MR. TYSON:  No, Your Honor.  That is a

3   part of some other cases that are going on in the

4   northern districts, but I would agree with Judge

5   Anderson that the secretary has a duty to train

6   county superintendents.  The county

7   superintendents then by statute, as we cited in

8   our brief, have the authority and responsibility

9   to train the poll workers.

10          And so this has never been a failure-

11  to-train case.  This has always been an Anderson-

12  Burdick equal protection style case, and I'm not

13  aware of any evidence in the record related to

14  the training of the secretary of local election

15  officials.

16          HON. ROBERT LUCK:  We won't hold Judge

17  Anderson in contempt on his last day.  But my

18  question here is something your opposing counsel

19  said, which is that unlike Jacobson -- part of

20  the problem in Jacobson was they only sued the

21  secretary of state, but they didn't do that here,

22  right?  They had a county official.  In fact,

23  they had the person responsible for county

24  elections that was before the Court, correct?

25          MR. TYSON:  The Fulton County -- one

Case 1:17-cv-02989-AT  Document 1388-2  Filed 06/01/22  Page 48 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067      May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 47

1   single county.  Yes, Your Honor.

2          HON. ROBERT LUCK:  Right.  So at least

3   as to that county, and I agree with you that

4   might affect the scope of the injunction, but at

5   least as to that county, they had every

6   redressable and traceable party, did they not?

7          MR. TYSON:  Your Honor, I would agree

8   that if you have a county election superintendent

9   in the case, then you can properly bind that

10  county.  You may be in a Bush versus Gore problem

11  for the other 158, but --

12         HON. ROBERT LUCK:  I don't disagree

13  that it might go to the scope of the injunction

14  and problems with that, but at the very least,

15  when we're talking about standing, they at least

16  would have standing with regard to that claim as

17  to that county, correct?

18         MR. TYSON:  I believe that would be

19  correct as to that county, Your Honor.

20         HON. ROBERT LUCK:  Okay.

21         HON. BRITT GRANT:  I want to make sure

22  I understand something that you said.  Has

23  training -- I know training has been mentioned in

24  the briefing.  Has training been part of the

25  relief sought in this case?

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067, May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 48

1            MR. TYSON:  Your Honor, the district
2    court has ordered training in several different
3    orders along the way.  I believe the 2019 order
4    included some training relief.
5            Standing here today, I don't recall
6    anything from the record in terms of training of
7    local election officials that was testimony
8    during the various preliminary injunction
9    hearings.  There's been four different rounds of
10   preliminary injunctions in this case.
11           HON. BRITT GRANT:  What about has this
12   -- has this paper -- has this paper voter list
13   been presented as a mitigation for a lack of
14   training?
15           MR. TYSON:  Not that I recall in that
16   way, Your Honor.  It's always been presented as
17   there is a severe burden on the right to vote by
18   not including this information on the paper
19   backups that are in the polling places.
20           HON. BRITT GRANT:  All right.  Thank
21   you.
22           MR. TYSON:  Thank you, Your Honor.
23           HON. BRITT GRANT:  Thank you all for
24   your arguments.  It's been of great help to the
25   Court.  We are in recess until tomorrow morning

Page 49

1    at 9.

2              CLERK:   All rise.

3              (End of proceedings)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 51 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067  May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

Page 50

1              C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7

8

9    _____

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date:  May 27, 2022

17

18

19

20

21

22

23

24

25

Case 1:17-cv-02989-AT Document 1388-2 Filed 06/01/22 Page 52 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna Vs. Raffensperger, Brad

[100 - attorney's]                                                            Page 1

| 1 | 6 | | |
|---|---|---|---|
| **100** 26:21 34:15 35:4 | **6** 10:12 | **adopted** 14:17 | **anymore** 4:9 |
| **1021** 39:5,8,14 40:10 | **65** 9:9,9 11:13,17 13:16 14:19 | **affect** 29:7 35:23 41:18 47:4 | **anyway** 28:15 35:25 |
| **11501** 50:14 | **65's** 10:24 | **affidavit** 6:9 | **apart** 22:11 |
| **12151** 50:8 | **6th** 3:24 7:1 | **affirm** 32:3 | **apologies** 25:13 |
| **129** 20:15 | **8** | **affirmatively** 5:16 | **apologize** 3:10 45:20 |
| **142** 12:6 39:24 | **80202** 2:13 | **age** 29:14 | **appeal** 10:14 15:6 31:20 41:10 42:9 |
| **158** 47:11 | **9** | **agnostic** 28:22 | **appealable** 41:3 |
| **1600** 2:5 | **9** 49:1 | **agree** 5:7 14:3 21:25 29:19,20 33:11 38:1 44:4 46:4 47:3,7 | **appeals** 1:4 41:17 |
| **1624** 2:12 | **900** 2:19 | | **appear** 29:23 |
| **19** 1:18 | **964** 39:8 | **ahead** 3:14 | **appellant** 1:25 |
| **2** | **990s** 7:25 | **al** 1:7,13 | **appellants** 1:14 2:4,11 |
| **20-13730** 1:1 | **a** | **alexander** 2:15 | **appellate** 11:10,12 11:16 20:4 37:3 41:8 42:11 |
| **20-14067** 1:1 | **ability** 27:11,13 | **allegations** 6:9,14 8:6 | |
| **200** 2:5 | **absence** 38:19 | **allege** 5:9,12 | **appellees** 1:8 2:18 |
| **20037** 2:20 | **absentee** 17:22 18:4 | **alleged** 5:5 8:7 | **applies** 6:23 |
| **2017** 3:23 | **absolutely** 44:25 | **allow** 17:19 | **arbitrary** 29:24 |
| **2019** 4:7,11 10:9 48:3 | **accept** 28:17 | **allowed** 28:12 | **area** 44:2 |
| **2020** 8:21 19:6 | **account** 29:1 39:13 | **allows** 28:23 | **argument** 1:17 8:5 11:14,15 21:1 |
| **2021** 12:13 39:11 39:12 40:1,5 | **accurate** 50:4 | **alternate** 19:1 | **arguments** 41:18 42:7 48:24 |
| **2022** 1:18 50:16 | **acknowledged** 20:25 | **alternative** 32:19 | |
| **21-2-300** 44:17 | **act** 8:25 | **altogether** 20:15 | **arises** 25:4,20 |
| **2100** 2:19 | **acted** 40:14 | **analysis** 16:7 35:8 | **article** 9:2 18:7 19:8 |
| **226** 2:12 | **action** 14:23 | **anderson** 1:24 15:8,10,13,25 16:7 18:8,13 20:5 26:8 27:15 35:1,8 36:22 45:8 46:5 46:11,17 | |
| **27** 50:16 | **add** 19:6 | | **articulate** 43:12 |
| **3** | **address** 10:21 12:7 27:1 31:21 36:10 37:2 39:15 42:10 43:10 | | **asked** 27:17 |
| **3** 9:2 18:7 19:8 | | | **asking** 38:24 |
| **30** 20:15 33:16 | | **anderson's** 17:10 43:10,11 | **assessed** 36:23 |
| **300** 50:13 | **adequately** 20:12 | **answer** 23:5,7,19 23:20 24:1,2,6 26:10 27:16,22 28:14,17,18 31:20 41:5 43:21 | **assume** 9:21 23:11 37:22,24 |
| **30339** 2:6 | **adjudication** 12:8 12:10,19 | | **assuming** 15:13 24:13,15 |
| **330** 50:12 | **administer** 17:6 | | **atlanta** 2:6 |
| **5** | **administration** 18:21 43:3 | | **attacking** 24:24 |
| **5** 14:2 | | **answering** 17:10 | **attorney's** 10:13 41:1 42:13,16 |

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 53 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

[attorneys - coalition]

Page 2

**attorneys**  2:4,11
 2:18
**auditing**  6:18 8:11
**aura**  19:7
**authority**  45:15
 46:8
**average**  20:11
 21:6,11 22:3
**avoid**  13:11
**avoidable**  35:5
**aware**  46:13

**b**

**b**  1:21
**back**  14:6 17:9
 18:18 36:12 39:22
 44:6
**backup**  15:18 28:6
 28:9,10 45:20
**backups**  16:2
 48:19
**bad**  25:24
**balance**  36:6
**balanced**  35:18
**balancing**  35:1
 36:3,20,21
**ballot**  15:18 17:22
 28:13,13 32:19
 33:7 34:9 41:19
 41:21 42:3,8
**ballots**  23:4 28:7,8
 32:20 33:1
**based**  4:20
**baseline**  12:15
**bases**  9:3
**basic**  11:19
**basis**  10:12 21:3
 24:25
**began**  3:23
**beginning**  12:23
**behalf**  42:6

**behaved**  39:17
**belief**  15:16
**believe**  14:22 15:5
 16:14 18:24 20:20
 30:19 47:18 48:3
**best**  3:20 27:16
**better**  34:25
**beyond**  11:25
**bind**  47:9
**bit**  23:21
**blank**  12:8
**bmd**  24:24
**board**  1:13 3:17
 37:18,18
**brad**  1:10
**brief**  5:25 46:8
**briefing**  47:24
**briefly**  37:3
**brightness**  13:19
 13:21
**britt**  1:23 3:2 7:18
 9:4,20 10:17
 14:20,25 17:9
 19:13,17 26:15
 27:3,7 29:10
 30:15,21 31:23
 36:11 38:23 40:22
 41:9,11,21 42:1,19
 42:21 45:22 47:21
 48:11,20,23
**broad**  41:17
**brought**  42:3
**bryan**  2:8 3:7,16
**burden**  16:8,24
 21:1,2,2,5,16,16
 21:18,19,20,22
 22:2,12,24,24
 23:17 24:19 25:1
 25:3,5,10,14,19,20
 26:1,3,5,6 27:10
 27:10,11,12 28:21

 29:15 32:15 33:3
 33:5 34:3,7,10,16
 34:22 35:7 36:5,5
 36:6 43:5,6,19
 48:17
**burdens**  26:11
**burdick**  15:8,25
 16:7 20:5 26:8
 35:1,8 36:22
 46:12
**bursts**  26:23
**bush**  47:10

**c**

**c**  2:1 3:1 50:1,1
**call**  9:10 34:16
**called**  4:4 29:15
**calling**  22:18
**capacity**  1:11
**care**  33:2,4
**carolina**  6:18,19
**carry**  45:6
**case**  3:3,19,22,23
 4:10 9:13 10:3,4
 10:10 13:10 14:11
 15:6 18:19 19:4
 23:4 27:22,24
 31:12,19 34:19
 36:1 45:19 46:1
 46:11,12 47:9,25
 48:10
**caselaw**  9:12
**cases**  7:22 9:9 46:3
**cast**  23:4 27:14
**casting**  44:18
**causation**  26:12
**cause**  10:4 20:13
 23:8 28:3
**caused**  14:6
**causes**  28:2
**causing**  28:19,20

**certain**  11:9,18,19
 11:22 12:14 18:17
 20:13 21:19 37:15
 39:9 40:8 43:24
**certainly**  4:16
 17:4 26:21 28:17
 30:6 45:15
**certify**  50:3
**chair**  1:12
**challenge**  4:2,10
**challenges**  5:2,3
**challenging**  19:6
**change**  10:7 19:2
 43:15
**changed**  40:15
**changes**  41:2
**charged**  43:17,18
**check**  17:16,16,18
 32:21
**chief**  11:23 30:25
 31:6
**circle**  2:5
**circuit**  1:5 7:1
**citation**  13:12
**cite**  5:20
**cited**  46:7
**claim**  41:22,22
 44:5 47:16
**claiming**  7:13
**claims**  19:7 33:25
 41:19 42:4,8
**clarifying**  38:20
**clear**  31:5 38:11
 39:7 41:20
**clearer**  39:13
**clearly**  10:15
**clerk**  49:2
**client's**  41:15,18
**closely**  19:8
**coalition**  5:13 6:10
 7:17,25 19:20

Case 1:17-cv-02989-AT Document 1388-2 Filed 06/01/22 Page 54 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna Vs. Raffensperger, Brad

[coalition - direct]

Page 3

32:1,2 33:24 41:6
41:22 42:3
**code** 31:1
**color** 21:19
**colorado** 6:17
**come** 13:3,25
**comes** 35:8
**committed** 36:25
**common** 10:4
**completely** 21:25
**complicated** 3:20
14:11 15:23
**comply** 14:7,18
**complying** 21:18
**conceded** 39:19
**conceive** 27:9
**concern** 41:1,15
**concerned** 41:13
**conclude** 31:25
**conclusion** 12:12
40:1
**concurrence** 11:24
**conduct** 26:14
40:15
**conference** 36:12
**confusing** 27:9
**congressional** 3:24
**consider** 8:21
**considerable** 28:3
**considered** 12:10
**considering** 11:4
**constitutional**
36:20
**consult** 17:18
**contain** 11:2
**contempt** 13:12,23
40:19 46:17
**contest** 3:24
**context** 13:17
38:11 40:10

**continue** 17:19
**contrary** 8:2
**correct** 5:6 6:7
9:24 12:21 23:10
33:22 44:6 46:24
47:17,19
**corrected** 39:23
**correctly** 22:5
25:2
**cost** 35:13
**could've** 8:23
**counsel** 3:9 4:12
19:22 27:15 31:17
32:12,15 34:12
39:21 46:18
**count** 20:14 21:23
**counted** 32:20
35:25
**counties** 18:25
30:19 44:9
**counting** 44:18,19
**country** 50:12
**county** 16:19
30:16 31:12 44:19
44:20 45:5,12,15
46:6,6,22,23,25
47:1,3,5,8,10,17
47:19
**course** 30:3
**court** 1:4 3:7,16
4:1,8,18,23 5:16
6:1 9:10,14,17
10:5,15,21,25
11:23 13:24 14:14
15:1,4,24 16:17
18:7,9,14 19:19
20:20,24 21:10,17
22:1 27:21 29:5
30:22 32:7 33:10
36:17,23,25 37:4,9
38:3,11,20,25 39:4

39:7 40:11 42:10
42:17 43:4 46:24
48:2,25
**court's** 5:21 8:21
17:7 20:10,16
21:4 34:1 37:7
38:8 41:8
**create** 24:19
**credibility** 19:7
**critical** 22:8
**curling** 1:7 3:3
32:8,8 41:25 42:2
42:6
**currently** 12:17,18
**cycle** 12:12 39:25
40:3

**d**

**d** 3:1
**d.c.** 2:20
**darken** 20:12
**date** 11:19 12:14
35:6 37:15 38:4
39:9 40:2,7,8
50:16
**day** 16:21 17:3
18:6 22:23 23:15
25:2,23 26:6 29:7
29:14 32:18 35:22
35:22 43:16 46:17
**days** 35:17
**deal** 27:20
**dealt** 34:25
**decide** 31:24 41:3
**declaration** 8:2
**declarations** 5:20
5:21
**decreased** 14:1
**defective** 23:25
24:1 30:12
**defendant** 31:12

**defendant's** 26:13
**defendants** 1:14
2:4,11 38:17
39:19 40:14 41:17
42:7
**defense** 37:1
**deferred** 39:6
**deferring** 40:11
**defined** 33:18
**definitely** 4:17
**degree** 32:24
**denver** 2:13
**dependent** 24:18
**depending** 41:2
**depends** 23:20
24:8
**depriving** 27:13
**despite** 21:7 22:4
**determination**
16:11,12,13,15
21:5
**determine** 12:20
31:9 37:19
**determined** 21:10
29:6 44:22
**determines** 44:23
**determining** 21:21
**device** 41:19,22
42:4,8
**difference** 7:24
**differences** 34:18
**different** 4:22 7:19
7:20 12:17 13:18
14:15 18:24 24:1
24:2 26:16,21,24
27:25 45:1,3 48:2
48:9
**differently** 39:20
**digging** 44:14
**direct** 4:3 45:16

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 55 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

[direction - feasible]

Page 4

**direction**  14:14
   15:5
**directive**  37:20
**directly**  30:20
**director**  6:10 8:7,8
**disagree**  38:7
   47:12
**disappearing**
   29:12
**discovery**  6:2
**discuss**  7:1
**discussed**  45:24
**discussing**  31:18
   32:12
**discussion**  13:18
**dismiss**  32:4
**disprove**  43:6
**dispute**  29:21
**disregard**  13:24
**distinction**  45:4
**district**  3:24 4:7
   4:18,23 5:16 6:1
   9:10,13,17 10:15
   10:25 11:22 15:23
   16:17 17:7 18:6,9
   18:14 20:10,16,24
   21:4,10,17 22:1
   29:5 33:10 34:1
   36:22,25 37:4,7,9
   38:8,11,20,25 39:4
   39:7 40:11 42:17
   48:1
**districts**  46:4
**diversion**  5:3,10
   5:12,18,22 6:11
   7:4 8:16
**divide**  31:16
**docket**  39:5
**doing**  6:17,18 7:15
   8:15 10:8 13:14
   16:19 28:25 35:19

37:25 38:1 40:11
   43:18,19 45:23
**dominion**  4:10
**donna**  1:7 32:8,8
**dots**  13:19
**doubt**  39:18
**dozens**  7:21
**dres**  4:4
**drill**  31:8
**driver's**  17:15
**drops**  23:16
**drove**  16:6
**duma**  2:3
**duty**  43:23 45:13
   46:5

**e**

**e**  1:21,21 2:1,1 3:1
   3:1 50:1
**early**  15:18 18:2
**easier**  36:16
**easily**  35:4
**easy**  22:12
**educate**  6:16
**education**  8:8,9
**effective**  36:15
**efforts**  6:19 7:16
   8:9,12
**election**  1:13 3:17
   3:23,25 5:2,3 6:18
   7:15,22 8:11
   12:12 16:1 17:7
   19:3,6,8 22:23
   23:15 25:2 31:1,6
   32:18 34:21 39:25
   40:3,8 43:3,16
   45:11,17,25 46:14
   47:8 48:7
**elections**  14:11
   18:21 27:25 30:8
   39:11 40:5,5 44:8
   44:10,20 46:24

**electrical**  23:24
**electricity**  22:21
   23:23 24:17 32:14
   32:17 33:17 34:13
   43:16
**electronic**  4:3
   24:23 33:1,14,15
**electronically**
   28:10
**element**  4:17
**elemental**  11:19
**eleventh**  1:5
**emergency**  23:3
   28:8,13 32:20
   33:8,15 36:1
**enforcement**  31:1
**english**  2:3
**enjoined**  31:13
**enter**  9:17 11:1,23
   38:25
**entered**  4:8 9:23
   9:25 10:6 20:21
   37:4 39:8
**entering**  10:15
   11:3,4
**entire**  23:13 32:17
**entitled**  17:5
**equal**  46:12
**equipment**  4:7,9
   4:10 44:18
**error**  5:25 6:1
   36:25
**especially**  14:12
   19:3 40:10
**establishing**  36:21
**et**  1:7,13
**eve**  19:3
**event**  12:24 13:1
   38:3
**everyone's**  22:17

**evidence**  6:4,11,12
   7:24 20:8,19,20
   22:7,10,14 24:9,12
   24:16 27:23,24
   34:1 42:25 45:18
   45:24 46:13
**exactly**  22:14
**examining**  5:17
**example**  10:9
   25:15 34:13,14
   41:19 43:24
**examples**  26:9
**exclusion**  12:9
**executive**  6:10 8:7
   8:7
**existed**  16:3
**exists**  7:25 12:18
**expand**  12:18
   37:17
**expanded**  12:7
   37:8 38:10
**expected**  26:19
**explained**  37:9
**explicitly**  21:12

**f**

**f**  1:21 2:22 50:1
**fact**  5:5 16:16
   18:23 23:19 24:17
   28:24 35:16 46:22
**facts**  23:22
**factual**  16:12
**failing**  28:25
**failure**  20:12
   46:10
**failures**  29:2
**fair**  13:4,5
**falls**  22:10 45:14
**familiar**  44:12,12
**far**  7:25
**feasible**  18:10,14
   18:16

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 56 of 63

Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

[federal - hon]                                                                              Page 5

**federal** 4:1 44:19
**fee** 42:14
**fees** 10:13 41:1
42:16
**ff** 32:14
**fi** 24:6,9 34:14
**fight** 6:16
**file** 38:24
**filed** 5:21
**filing** 18:24
**filings** 13:20
**find** 10:23 14:4
16:8 20:10 44:8
**finding** 21:4 22:7
22:8
**fine** 3:13 11:7
**finish** 17:10
**firm** 2:10
**first** 4:17 12:25
20:7 30:15 38:7
**flipping** 43:5
**flood** 26:21,22
34:15,19 35:4
43:14
**floodplain** 26:19
**floods** 25:24
**florida** 45:2,4,5
**florida's** 44:13
**focus** 9:9
**foerster** 2:17
**folks** 19:6
**following** 12:12
27:18 40:1
**forcing** 33:6
**foregoing** 50:4
**foreseeable** 30:14
**forget** 37:18
**former** 23:20
**found** 4:18 7:22
**four** 35:17 48:9

**frameworks** 36:21
**frankly** 16:7
**friends** 40:25
**full** 36:23
**fulton** 31:12 46:25
**function** 24:11
**functioning** 16:20
**functions** 23:24
**further** 13:2,3
37:10,13 38:9,12
38:13,21 39:2,4,5
**future** 40:2 42:18

**g**

**g** 3:1
**ga** 2:6
**general** 7:16
**generalized** 4:20
6:23 7:1,5,6 8:24
**generally** 5:3
**georgia** 1:12,12
3:4,24 4:2 18:19
22:19 23:12 31:2
32:18 36:14 44:8
44:16 45:9
**give** 3:8 28:18
**given** 10:19 24:2
25:23 29:7,7
**giving** 26:10 43:11
**glory** 44:17
**go** 3:14 4:22 14:6
14:14,15 20:6
22:17 36:12 39:22
44:2 47:13
**goal** 8:14
**goes** 15:24 16:17
18:18 23:16 33:16
33:17 43:16
**going** 10:25 11:1
16:9,15 17:4
19:22 20:6 26:20
29:14 31:16,18

33:16 35:13,21
46:3
**good** 18:3,20
19:18 31:3 32:6
35:12
**goodness** 45:20
**gore** 47:10
**grant** 1:23 3:2
7:18 9:4,20 10:17
14:20,25 17:9
19:13,17 26:15
27:3,7,18 29:10
30:15,21 31:23
36:11 37:13 38:23
40:22 41:9,11,21
42:1,19,21 43:13
45:22 47:21 48:11
48:20,23
**grant's** 37:23
43:25
**granted** 12:2
15:16 38:13
**granting** 9:14,15
11:6
**great** 48:24
**grid** 22:21,22
23:24 32:17
**grievance** 6:23
**grievances** 4:20
7:2 8:24
**grizzle** 30:25
**groups** 19:21
**guess** 27:8
**guys** 12:25 37:13

**h**

**hand** 11:8,11
**handful** 35:23
**happen** 17:4,5
25:24 26:20,23,24
45:18

**happened** 34:20
**happening** 14:13
19:2
**happens** 26:22
30:7,8 40:24
43:14
**happy** 28:18 31:20
**hardline** 22:22
**harm** 35:17
**hash** 36:12
**head** 20:18
**hear** 18:12
**heard** 42:24
**hearing** 5:19
15:22
**hearings** 48:9
**held** 5:1
**help** 48:24
**helpful** 3:21
**hewing** 19:8
**hey** 6:14
**history** 3:19
**hmm** 7:9
**hold** 30:22 38:20
46:16
**hon** 1:22,23,24 3:2
3:8,12 4:12,21 5:7
5:9,14,24 6:8 7:4
7:10,18 8:4 9:4,20
10:17 11:7,25
12:22 13:7,13,23
14:20,25 15:10,13
16:5,11 17:9 18:8
18:13 19:13,17,22
20:1,23 21:24
22:16 23:5,9,11
24:4,6,13,20 25:6
25:11,16,22 26:5
26:15 27:3,7,15
29:3,10,11,19,25
30:4,15,21 31:3,23

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 57 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067 May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

[hon - legislature]                                                                 Page 6

32:10 33:8 34:11
35:10 36:11 37:12
38:12,15,23 39:21
40:7,22 41:9,11,21
42:1,19,21 43:7,9
44:11 45:1,8,22
46:16 47:2,12,20
47:21 48:11,20,23
**honest** 33:23 41:5
**honor** 3:6 4:16 5:8
5:11 6:6,21 7:23
8:18 9:7,24 10:22
11:21 13:6 14:9
14:22 15:2,12,21
16:14 18:11,17
19:16 20:17 33:23
34:17 36:2,19
38:7,14,16 39:1,9
40:4,9 41:4 42:14
42:23 46:2 47:1,7
47:19 48:1,16,22
**honor's** 19:11
**honors** 3:20 32:6
**hooked** 23:14
**hyde** 50:3
**hypotheticals**
32:13

**i**

**idea** 8:3,22 18:3
35:12 42:25
**ideas** 18:20
**identified** 37:10
42:14
**identify** 7:19
38:21
**iii** 2:15
**imply** 38:13
**important** 8:20
19:9
**importantly** 39:4

**impose** 34:3
**imposed** 33:5
**inch** 13:19
**include** 16:4 18:4
**included** 17:13
48:4
**includes** 17:21
29:4
**including** 32:13
48:18
**incorporated** 8:23
**incorporating** 9:1
**indicate** 9:17
**indicated** 41:1
**indicating** 12:10
**indiscernible** 6:25
11:24 35:9
**individual** 7:3
8:22
**individuals** 7:8
**information** 11:2
17:14,20,21 18:4
48:18
**injunction** 5:19
9:5,11,11,16,18,21
10:16 11:1,3,5,23
12:2 15:4 37:5
38:25 40:18,20
47:4,13 48:8
**injunctions** 48:10
**injunctive** 10:5
**injury** 5:5
**ink** 29:12
**instance** 32:16
**instructed** 21:12
**instruction** 8:9
22:4 38:17
**instructions** 21:7
21:18
**intended** 9:17

**intent** 11:22 12:11
12:20 37:20
**intentional** 13:24
**interest** 35:2,3,19
36:8
**interested** 17:11
20:4
**interests** 40:23
41:18
**interfere** 29:16
**interference** 17:8
**interrupt** 34:12
**interrupted** 24:10
**involve** 30:9
**ipad** 25:15,17
**ipads** 24:23
**ipsa** 43:2
**issue** 4:17 5:15 7:6
9:6,8 10:21 14:24
15:8 20:5 21:20
21:21 26:12 27:1
27:2 42:9
**issued** 39:4
**issues** 5:17 34:25
**issuing** 9:11

**j**

**jacobson** 31:4,5
44:7,12 46:19,20
**jam** 29:10
**jams** 29:11
**january** 12:13
39:11,12 40:1,5
**jeffrey** 32:9
**judge** 11:23 13:25
14:4,9 17:10
27:17,17 37:6,23
39:9,15 43:10,11
43:13,25 46:4,16
**judges** 1:25
**jump** 19:23

**jurisdiction** 11:10
11:12,16 15:15
20:4 37:4 41:8
42:11
**justice** 14:9

**k**

**kavanagh** 14:10
**kemp** 30:25
**key** 6:22 7:24 9:8
10:2 15:8 17:12
45:4
**kind** 3:21 15:24
17:1 18:18 29:23
42:24 43:23 45:17
**knocks** 27:19
**know** 3:11 7:14
8:5 21:7,9 22:6
26:23 29:9 30:16
33:25 34:6 40:13
43:24 44:15 47:23
**knowledge** 42:15

**l**

**l** 2:19
**labeling** 36:4
**lack** 28:4,5,6
30:22 48:13
**language** 11:17,18
38:19
**lanier** 1:24 15:10
15:13 18:8,13
27:15 45:8
**law** 2:10 6:15 7:14
12:17 16:16 22:19
**leak** 34:19
**ledanski** 50:3
**ledger** 35:1
**legal** 16:5,12,15,24
50:11
**legislature** 36:14

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 58 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

**[length - opinion]**                                                      Page 7

| | | | |
|---|---|---|---|
| **length** 16:18 | 25:22 26:5 27:17 | 27:12,13 28:21,22 | **necessary** 20:20 |
| **license** 17:15 | 29:3,11,19,25 30:4 | 28:23,23 29:4 | **need** 7:12 37:17 |
| **life** 29:23 30:7 | 31:3 32:10 33:8 | 37:17 44:23 | 43:9 45:19 |
| 34:5 | 34:11 35:10 37:6 | **methods** 12:7 37:8 | **needed** 11:2,4 |
| **lift** 32:4 | 37:12 38:12,15 | 37:9 38:10 | 13:11 14:17 |
| **limited** 41:7,16 | 39:10,21 40:7 | **mh** 7:9 | **needs** 18:5 39:23 |
| 42:12 | 43:7,9 44:11 45:1 | **michael** 2:22 32:7 | 45:18 |
| **limiting** 6:1 | 46:16 47:2,12,20 | **milligan** 14:10 | **never** 9:25 15:4 |
| **line** 11:8 36:15 | **luck's** 39:15 | **million** 10:12 | 16:3 40:15 46:10 |
| 37:6 | **m** | **mind** 22:15 | **new** 4:7 18:18 |
| **lines** 27:18 33:16 | | **mineola** 50:14 | **nondiscriminatory** |
| **list** 17:13,18 32:24 | **machines** 4:3 | **minimal** 21:1,2,6 | 16:1 17:6 |
| 32:25 48:12 | **magnitude** 34:7 | 21:20 22:2,11 | **normally** 23:24 |
| **listed** 33:21 | **malfunctions** | 35:6,17,21 36:5,8 | 24:13,15 |
| **lists** 17:24,25 | 16:18,23 | **minutes** 33:17 | **north** 6:18 |
| **litigate** 8:1 | **mandatory** 11:18 | 42:22 | **northern** 46:4 |
| **litigation** 4:5 8:10 | **market** 2:12 | **mired** 22:21 | **nos** 1:1 |
| 8:12,14,21 42:18 | **marking** 41:19,21 | **mitigation** 30:13 | **nth** 32:24 |
| **little** 23:20 | 42:3,8 | 48:13 | **number** 14:12 |
| **llp** 2:3,17 | **marks** 12:9 | **mix** 17:2 | 44:4 |
| **local** 46:14 48:7 | **matter** 3:18 4:19 | **mixed** 16:16 | **numerous** 28:1 |
| **location** 23:13 | 16:24 31:14 44:9 | **money** 6:16,17 | **nw** 2:19 |
| **look** 6:25 9:2 18:5 | **mcguire** 2:10,15 | 7:15 | **ny** 50:14 |
| 35:11 43:1 | 19:17,18,19,25 | **morning** 19:18 | **o** |
| **looked** 4:23 8:4 | 20:17 21:14 22:13 | 30:5 32:6 39:19 | |
| 14:1 | 23:1,7,10,18 24:5 | 48:25 | **o** 1:21 3:1 50:1 |
| **looks** 37:19 | 24:8,15 25:3,9,13 | **morrison** 2:17 | **obviously** 10:17 |
| **lose** 16:9 | 25:18 26:2,9,25 | **motion** 9:15 41:7 | 16:17 26:3 27:19 |
| **lot** 4:14 15:23 | 27:5,8 28:16 | 41:12 | 29:16 |
| 18:19,20 19:4 | 29:18,20 30:2,6,19 | **move** 8:19 9:2 | **officer** 31:1,6 |
| 27:23 29:13 44:14 | 30:24 31:11,25 | 15:7 | **official** 1:10 46:22 |
| **lots** 34:15 | **mean** 7:6 13:17 | **moving** 14:12 | **officials** 45:5 |
| **luck** 1:22 3:8,12 | 25:24 31:4 | **multiple** 10:3 | 46:15 48:7 |
| 4:12,21 5:7,9,14 | **means** 33:16 | **n** | **oh** 3:10 25:9 45:20 |
| 5:24 6:8 7:4,10 | **meet** 22:12 | | **okay** 19:14 22:16 |
| 8:4 11:7,25 12:22 | **mentioned** 47:23 | **n** 2:1 3:1 50:1 | 23:9 24:4,14,16,20 |
| 13:7,13,23 16:5,11 | **merely** 8:22,25 | **name** 3:16 19:19 | 25:13 27:5 47:20 |
| 19:22 20:1,23 | **merit** 21:21 | **named** 31:12 | **old** 4:9 50:12 |
| 21:24 22:16 23:5 | **merits** 20:5 27:2,6 | **narrowness** 31:19 | **operate** 25:2 27:25 |
| 23:9,11 24:4,6,13 | **merrill** 14:10 | **nature** 5:22 6:22 | **operating** 28:10 |
| 24:20 25:6,11,16 | **method** 4:2 10:23 | 7:2,2 17:23 41:8 | **opinion** 22:15 |
| | 12:18 25:20,21,23 | 45:24 | |

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 59 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

**[opposed - proven]**                                                    Page 8

**opposed**  35:22
**opposing**  3:9
  32:11,14 44:1
  46:18
**oral**  1:17
**order**  4:8 5:21
  10:9,14,24 11:3
  12:5 13:4,24 14:5
  14:5,21 15:14,16
  19:5 20:8,10,16
  22:17,18 24:25
  27:21 32:4,5 34:1
  37:3,7 38:8,18
  39:2,5,8,13 40:10
  40:16,18,19,20
  42:12,16 48:3
**ordered**  10:10
  12:25 48:2
**ordering**  13:2
**orders**  19:10 48:3
**ordinary**  26:22
  33:7
**organizational**
  4:25 5:4 6:24 7:21
  8:25
**oval**  20:12 21:8,12
  21:13,13,19

**p**

**p**  2:1,1,8 3:1
**pad**  17:16,20
**page**  12:6 39:24
**pains**  33:9,10
**panel**  12:10,19
**paper**  15:18,18
  16:2 17:18,24
  29:8,12 32:19,25
  48:12,12,18
**parkwood**  2:5
**part**  16:6 21:14
  24:23 28:3 29:5
  46:1,3,19 47:24

**particular**  22:15
  25:25 28:5,6
**particularized**
  7:12
**parties**  39:17
  40:14,23,24
**party**  26:18 41:12
  47:6
**party's**  44:1
**passage**  22:15
**people**  23:3 28:24
**percent**  14:2
**percentage**  20:13
**perilous**  11:13
**permission**  19:11
**person**  17:14
  46:23
**perspective**  10:14
  14:18 32:1,2
**pi**  11:6
**pick**  32:10
**pieces**  14:13 17:2
**piggybacks**  37:23
**pipe**  26:23
**place**  12:11 16:2
  25:25 33:21 39:25
  43:15,25
**places**  22:20 26:17
  26:17 48:19
**plaintiff**  7:21
  38:24
**plaintiff's**  13:20
  32:2 33:25 41:6
**plaintiffs**  1:8 2:18
  4:19 5:11,20 7:3
  14:25 15:3 17:3
  19:20 32:8 38:23
  38:24 41:25 42:3
  42:6
**plan**  35:3

**please**  3:7,15
  19:19 32:7 44:15
**point**  3:22 6:22 7:7
  8:14,19 9:5 10:23
  11:9 15:25 17:12
  20:9,18 22:1,14
  34:4,18,23 39:16
  43:13,15
**pointed**  37:1,6
**political**  44:1
**poll**  16:19 17:16
  17:17,20 18:25
  30:17 45:6 46:9
**pollbook**  15:16
  22:17,18 24:25
  28:9 29:1 32:3,22
  33:20 40:20
**pollbooks**  27:24
  30:18,23 32:23
**polling**  22:20
  23:13 24:23 25:25
  26:17 43:15 48:19
**position**  10:6,10
  15:3,5 41:5
**possible**  16:18,23
**post**  8:21
**power**  22:23 23:2
  23:24 27:20
**powers**  18:7
**practicalities**
  39:16
**practice**  44:9
**precinct**  28:12
**precincts**  44:1
**predictable**  29:2
**preferred**  26:18
**preliminary**  5:19
  9:16 48:8,10
**prescribes**  31:2
**presence**  38:19

**presented**  6:3,3,9
  17:15 48:13,16
**presume**  23:23
**presumption**
  23:21
**prevented**  5:17
**previous**  24:3
**price**  32:8
**print**  17:25 18:23
  35:21
**printer**  29:10,11
**printing**  17:23
  35:5,6
**probably**  26:1,11
  28:2,4
**problem**  27:21
  30:12,14 34:11
  35:4 44:4,7 46:20
  47:10
**problematic**  9:1
**problems**  34:24
  43:1,8 47:14
**procedural**  3:19
**procedures**  18:22
  23:3
**proceedings**  37:10
  38:21 39:2,6
  40:12 42:15 49:3
  50:5
**project**  18:19
**proof**  21:15
**proper**  10:23
  26:10
**properly**  24:11
  47:9
**proposal**  10:20
**proposed**  9:21
  13:21 39:3
**protection**  46:12
**proven**  30:11

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 60 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

[provide - room]                                                                                                   Page 9

**provide** 23:3 29:1
  30:20
**provided** 9:22
  17:13 44:21
**provides** 30:16
**providing** 30:13
**provisional** 28:7
  28:13 32:21 33:11
  33:12,19 34:9
**provisionally** 33:6
  34:2 35:24 36:7
**purcell** 19:4
**purchased** 4:7,11
**purpose** 8:1
**purposes** 25:4
**put** 7:18 26:16

### q

**qian** 2:22 31:18
  32:6,7 33:4,23
  34:17 36:2,19
  38:6,14,16 39:1
  40:4,9 41:4,10,15
  41:24 42:2,20
**question** 9:4 15:25
  16:3,4,6,16 17:11
  18:12 23:19,20
  24:3,7 25:14 27:1
  30:15 34:5 36:24
  37:24 40:22 42:14
  43:10,11,20,25
  45:23 46:18
**questions** 16:22
  19:14 20:6 27:17
  28:15 31:17,20
  43:12
**quote** 12:6

### r

**r** 1:21 2:1 3:1 50:1
**raffensperger**
  1:10

**rain** 25:24
**raise** 15:1
**random** 29:24
**range** 14:2
**reading** 38:8
**ready** 3:2,5
**really** 15:15 21:7
  35:12,20,23 38:15
  43:20 44:3
**reason** 21:24 22:2
  23:2,15 29:8
  32:15 33:19 42:5
**reasonable** 16:1
  17:6
**reasonably** 12:9
  26:13 37:19
**recall** 21:15 48:5
  48:15
**recess** 48:25
**record** 7:24 9:22
  20:9 21:10 36:23
  46:13 48:6 50:5
**recording** 4:3
**redressability**
  31:10 44:7
**redressable** 47:6
**referred** 28:9
**reform** 6:18 7:15
  8:11
**regard** 33:3 47:16
**regarding** 17:22
  42:7
**regardless** 36:4
**registration** 17:14
**regular** 33:14
**regulation** 33:18
**rejected** 20:14
**related** 8:12 9:6
  10:16 13:21 14:23
  20:7 30:17 46:13

**relied** 5:19
**relief** 9:15 10:5
  13:2,3,3 37:13
  38:9,13,21 47:25
  48:4
**remainder** 19:12
**remaining** 15:7
**remedy** 13:21 39:3
  39:6 40:12
**removed** 3:25
**removes** 39:18
**repeatedly** 30:11
**reports** 18:24 19:1
**represent** 3:16
  19:20 41:24
**representation**
  13:4,6
**request** 10:12 32:3
**require** 25:17
  30:10 35:13 38:5
**required** 22:20,20
  34:2
**requirement**
  24:22
**requirements** 9:19
  10:25
**requires** 13:23
  14:13
**requiring** 11:18
  25:19
**res** 43:2
**reserve** 19:12
**resolved** 42:18
**resources** 5:4,10
  5:12,18,23 6:12
  7:5
**respectfully** 32:3
  38:7
**response** 14:21
  42:8 43:12

**responsibility**
  43:2 46:8
**responsible** 30:22
  31:7,9 45:10
  46:23
**result** 8:10
**results** 27:13
**reverse** 4:15
**reversed** 19:10
**right** 6:5 7:6 12:20
  14:7 16:25 19:23
  20:25 21:25 22:25
  23:17 25:22 26:1
  26:6,11,15,19,22
  29:17 35:18 42:1
  46:22 47:2 48:17
  48:20
**rise** 49:2
**risk** 25:23
**road** 50:12
**robert** 1:22 2:10
  2:15 3:8,12 4:12
  4:21 5:7,9,14,24
  6:8 7:4,10 8:4
  11:7,25 12:22
  13:7,13,23 16:5,11
  19:19,22 20:1,23
  21:24 22:16 23:5
  23:9,11 24:4,6,13
  24:20 25:6,11,16
  25:22 26:5 29:3
  29:11,19,25 30:4
  31:3 32:10 33:8
  34:11 35:10 37:12
  38:12,15 39:21
  40:7 43:7,9 44:11
  45:1 46:16 47:2
  47:12,20
**roof** 34:20
**room** 36:12

**[root - sufficiency]**                                                                      Page 10

| | | | |
|---|---|---|---|
| **root**  44:4 | 46:5,14,21 | **single**  34:20 43:14 | **standstill**  38:1 |
| **rounds**  48:9 | **secretary's**  18:1 | 43:17 47:1 | **starting**  12:6 |
| **routinely**  23:25,25 | 45:25 | **sit**  13:1 37:25 | **state**  1:11,13 3:3,4 |
| 24:10,10 30:7,8 | **see**  9:22,23 31:15 | **sits**  19:14 | 3:17,17 4:5,6,11 |
| **rule**  9:8,9 10:24 | 43:1 | **situation**  39:16 | 5:17 6:20 9:21 |
| 11:13,17 13:16 | **sees**  43:4 | **situations**  10:3 | 10:2,7,11 13:11,25 |
| 14:17,19 16:1 | **sense**  26:7 | **small**  35:23 | 14:16 16:2 17:5 |
| 20:21 | **sentence**  12:23 | **software's**  12:8 | 18:5,21 22:12 |
| **rules**  17:7 32:25 | 20:25 21:3 37:8 | **sole**  8:1 | 23:13 25:16,19 |
| **run**  14:11 38:2 | 38:9 | **solutions**  50:11 | 26:16 28:24 30:16 |
| 44:10 | **separateness** | **sonya**  50:3 | 30:22,24,24,25 |
| **running**  30:9 | 31:19 | **sorry**  3:10 18:11 | 31:2,13 35:2,7,13 |
| **runoff**  12:13 | **serious**  16:24 | 34:12 41:24 | 35:19 36:8 37:1 |
| | **set**  3:11 7:20 37:14 | **sort**  10:6 40:17 | 37:16,22,24 38:17 |
| **s** | **settings**  13:19,19 | **sought**  40:15 | 39:19 40:14 41:17 |
| **s**  2:1 3:1 | 13:22 | 47:25 | 42:7 43:2,17 |
| **sat**  37:13 | **settled**  3:14 | **south**  6:19 | 44:19,21,21,22,23 |
| **satellite**  23:16 | **severe**  16:8,24 | **southeast**  23:15 | 45:8,10,14,15 |
| **saw**  19:5 | 22:24,24 23:17 | 32:18 | 46:21 |
| **saying**  4:8 9:14 | 25:1,8,9,14,25 | **speaking**  20:2 | **state's**  10:6,10,13 |
| 10:18 12:4 32:1 | 26:6 29:6,15 | **special**  3:25 7:12 | 35:2 43:6 |
| **says**  12:22 13:1 | 32:16 34:9,16,22 | **specific**  7:17 9:25 | **statement**  18:9 |
| 23:12 37:12,16 | 35:3,15 36:4 | 11:9,11 13:8,10,16 | **statements**  9:16 |
| 39:24 45:9 | 43:19 48:17 | 14:14 15:4 21:13 | **states**  1:4 |
| **scan**  15:14 | **severity**  16:12 | 31:9 | **statewide**  14:12 |
| **scanner**  9:6 10:1 | 33:3 | **specifically**  7:19 | **statue**  23:12 |
| 10:24 12:7,19 | **shortage**  29:13,13 | 14:24 | **status**  17:22 |
| 14:24 19:5 20:7 | **shorter**  36:16 | **specificity**  9:8 | **statute**  22:22 44:9 |
| 20:14 32:5 37:2 | **should've**  28:8 | 10:24 14:18 | 44:16 45:9,9 46:7 |
| 42:11,16 | **show**  5:25 13:20 | **specify**  9:18 | **stay**  32:4 40:16 |
| **scanners**  10:16 | 28:11 43:23 | **spend**  8:9 | **steps**  11:5 |
| 14:2 20:22 40:25 | **showed**  17:3,4 | **spending**  6:16 | **stolen**  19:8 |
| **schedule**  17:23 | **shows**  45:19 | **spent**  6:17 7:15 | **storm**  27:19 |
| **schoenberg**  32:9 | **side**  18:1 34:25 | **standard**  37:14 | **street**  2:12,19 |
| **scope**  41:16 47:4 | 36:9 39:2 40:25 | **standing**  4:18,19 | **study**  14:16 |
| 47:13 | **signature**  50:8 | 4:22 5:1,4 6:4,24 | **stumble**  28:20 |
| **se**  12:8 | **significant**  19:2 | 7:3,22 8:25 9:2 | **style**  46:12 |
| **second**  3:8 34:23 | **similar**  5:2 | 20:3 25:4,7,12 | **submitted**  39:3 |
| 34:23 | **simple**  18:15 | 27:1,4,4 31:10 | **sued**  46:20 |
| **secretary**  1:11 3:3 | **simply**  6:4 | 47:15,16 48:5 | **sufficiency**  6:24 |
| 3:17 17:24 44:22 | | | |
| 44:23 45:10,14,15 | | | |

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 62 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067
Curling, Donna  Vs. Raffensperger, Brad
May 19, 2022

**[sufficient - vagary]**

**sufficient**  5:5 6:13
8:24
**suite**  2:5,12,19
50:13
**summarize**  3:21
**superintendent**
47:8
**superintendents**
45:11,16 46:6,7
**supervisors**  45:25
**support**  22:7,10
**supposed**  10:11
17:17 28:11 36:11
**supreme**  36:17
**sure**  3:13 12:1,1
19:25 33:24 47:21
**system**  23:14
24:18,23,24 30:9
32:19 33:2,9,11,15
44:13

**t**

**t**  50:1,1
**tabulates**  12:19
**tabulator**  12:7
**take**  3:13 24:20,21
29:1 33:2,4
**taken**  14:23 40:9
**talk**  4:25 6:13 12:3
26:7
**talked**  32:12 37:7
**talking**  21:17 25:6
25:7 27:3,5 35:25
38:10 41:13 44:16
47:15
**tangible**  24:21
**taylor**  2:3
**technology**  29:25
30:2,10,11
**tell**  4:13,14 11:11
13:11 20:1 44:15

**telling**  38:2
**tend**  33:11
**terms**  5:22 48:6
**test**  35:2 36:3,20
36:22
**testimony**  15:22
48:7
**thank**  3:6,14,15
19:14,16 42:19,20
42:23 48:20,22,23
**thar's**  33:15
**theirs**  7:10
**theoretical**  16:22
**theory**  5:4 43:3
**thing**  21:8 22:8,10
28:20 31:9
**things**  11:19 16:19
26:23,23,24 29:14
34:15 38:6 44:2
**think**  5:15 6:19,22
7:7,23 8:2,20 9:1
9:8,22 10:2,22
13:5,9,16 14:8
15:8 18:18 19:5,9
20:2,3,24 21:16
23:18,18 24:5,5,17
25:3,11,18 26:9,10
28:16,16,19 29:22
33:9 34:6,10,21,24
36:2,14 37:1 38:8
39:17 42:17,24
43:4,9,20,22 44:3
44:6 45:4,13
**thought**  3:20
26:17 40:17,18
**thread**  32:11
**three**  9:14 27:25
33:14 35:17 42:22
**threshold**  9:25
**time**  3:13 4:13
15:7 19:12,24

27:25 28:1,1 29:7
31:15,16,23 39:22
43:14,17,23
**times**  9:14
**today**  30:5 42:5
48:5
**today's**  29:14
**told**  18:8,13 37:16
**tomorrow**  48:25
**ton**  19:23
**top**  20:17
**traceability**  31:10
44:7
**traceable**  26:13
47:6
**train**  18:25,25
45:19 46:5,9,11
**training**  28:4,5,7
30:17,20,23 45:6
45:11,14,18,25
46:14 47:23,23,24
48:2,4,6,14
**transcript**  50:4
**transformed**  4:1,9
8:23
**true**  8:16 11:20
34:13,13,14,15,17
50:4
**try**  14:14,15
**tuesday**  18:2
**turn**  11:16 20:14
31:16,21
**two**  18:23 19:21
34:18 38:6
**tyson**  2:8 3:4,6,7
3:10,15,16 4:16
5:6,8,11,15 6:6,21
7:9,23 8:18 9:7,24
10:22 11:21 12:21
13:5,9,15 14:8,22
15:2,12,21 16:10

16:14 17:12 18:11
18:17 19:16 42:21
42:23 43:8,22
44:25 45:3 46:2
46:25 47:7,18
48:1,15,22

**u**

**ultimate**  45:13
**ultimately**  36:3
**unappealable**  32:5
**unaware**  20:11
**underlies**  23:21
**underscore**  41:7
41:16
**understand**  5:1
6:2 11:15 12:5
15:15,19 21:11
22:3 29:3 32:23
33:13 47:22
**undertakes**  17:25
**unforeseeable**
16:25
**unit**  17:16
**united**  1:4
**unnecessary**  42:25
**unreliable**  33:2
**update**  15:17,17
**updated**  17:21
29:1 32:24 33:20
35:16
**use**  4:8,13 18:7
19:1 22:21 25:15
28:5,7 30:23
38:12 45:20

**v**

**v**  1:9 30:25
**vagaries**  29:6,22
29:23 34:5
**vagary**  30:4

Case 1:17-cv-02989-AT   Document 1388-2   Filed 06/01/22   Page 63 of 63
Transcription of Oral Argument for Appeal Nos. 20-13730 and 20-14067   May 19, 2022
Curling, Donna  Vs. Raffensperger, Brad

| | |
|---|---|
| **variety** 13:18 | **washington** 2:20 |
| **various** 48:8 | **way** 4:22 6:17 |
| **veritext** 50:11 | 7:19 27:9 34:6 |
| **versus** 3:3 7:21 | 35:11 36:15 39:22 |
| 14:10 47:10 | 48:3,16 |
| **view** 9:1 42:13 | **we've** 13:25 14:1,3 |
| **violated** 10:24 | 42:24 |
| 14:5 43:24 | **weekend** 17:21 |
| **violates** 11:13 | 18:1 |
| **vote** 16:25 20:13 | **went** 17:15 22:23 |
| 21:22 22:25 23:17 | 23:2 32:17 |
| 25:19 26:7,12,18 | **wi** 24:6,9 32:14 |
| 27:11,14 28:11,12 | 34:14 |
| 28:24 29:17 30:10 | **wifi** 23:14,16 |
| 33:6 34:2,8,9 | **willful** 13:24 |
| 35:18,24 36:7,7 | **willfully** 14:5 |
| 48:17 | **wisely** 32:18 |
| **voter** 7:5,11 12:11 | **words** 12:24 35:11 |
| 12:20 17:13,18,22 | **work** 6:20 8:11 |
| 20:11 21:6,11,22 | 25:21,23 |
| 22:3 27:10 28:11 | **worker** 17:17 |
| 34:8,10 37:20 | **workers** 16:19 |
| 48:12 | 18:25 30:17 45:6 |
| **voters** 26:3 33:6 | 46:9 |
| 34:2,3,22 36:6 | **working** 17:17 |
| **votes** 33:14,15 | 30:1,2 |
| 35:24 44:18,19 | **works** 24:14,16 |
| **voting** 4:2,3 15:19 | 25:20 |
| 17:19 18:2 27:12 | **world** 14:4 |
| 28:21,22,23,23 | **would've** 6:17 |
| 29:4,8 32:25 33:1 | 40:16 |
| 36:16 44:24 | **written** 18:9 |
| **vulnerability** | **wrong** 33:21 44:2 |
| 16:22 | |
| | **y** |
| **w** | **yeah** 13:13 17:12 |
| **want** 3:13 4:13,21 | 27:7 |
| 10:18 11:11 15:20 | **year** 26:21 34:15 |
| 21:9 22:6,17 | 34:20,20 35:4 |
| 39:21 41:20 44:5 | **years** 4:6 |
| 47:21 | |