**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

### CURLING PLAINTIFFS' NOTICE OF FILING REQUESTED CITATIONS OF REPRESENTATIVE PORTIONS OF RULE 30(b)(6) DEPOSITION TRANSCRIPTS

On April 13, 2022, at the Court's direction, Curling Plaintiffs filed copies of the deposition transcripts of the Rule 30(b)(6) designees for the Secretary of State's Office who have been deposed.

Pursuant to this Court's May 27 Order (Dkt. 1385), Curling Plaintiffs hereby provide specific line and page numbers in each of the four depositions that provide a representative sampling of portions of the deposition testimony that failed to meet the requirements for a Rule 30(b)(6) designee. The witnesses were unprepared and entirely unknowledgeable about such important topics as Dr. Alex Halderman's findings in his July 1, 2021 report, any views or positions State Defendants have on the accuracy or reliability of his findings and underlying

1

analyses, and any measures State Defendants contend mitigate the risks to voters from the vulnerabilities that CISA has now verified in its recent advisories to states using the Dominion voting equipment (which advises states to implement over a dozen important mitigation measures as soon as possible—including measures not present in Georgia).[1]  The witnesses similarly were unprepared and unknowledgeable about important election security investigations, including what steps were taken (if any) and what findings were reached.

Each of the witnesses testified only to his own personal knowledge, having done nothing to prepare for the depositions apart from speaking with litigation counsel—and their personal knowledge was far from adequate to meet their obligations.  Merritt Beaver was the only designee who reviewed documents in preparation for his deposition, but even he reviewed only *two* Fortalice reports and only for his resumed deposition; as a result, he was unprepared and unknowledgeable about most of the reports Fortalice produced in this case.  He generally was unprepared and unknowledgeable about Fortalice's analyses and findings, which was particularly prejudicial since he admitted that he directed Fortalice in 2019—after certain Fortalice reports were produced in this case and

---

[1] Kate Brumback, *Activists say cyber agency weakens voting tech advisory*, AP News (June 2, 2022), https://apnews.com/383ce87b471a9044d28c2f2e1820445e.

relied upon by this Court for its August 2019 Order prohibiting use of the DRE system—not to create reports going forward and instead to convey its analyses and findings orally, to avoid such reports getting produced in the future. Because Mr. Beaver's resumed deposition specifically concerned the Fortalice reports and he was generally lacking the requisite knowledge throughout much of that deposition about Fortalice's analyses and findings, the many specific instance evidencing this are not listed below. A cursory review of his short, resumed deposition confirms his inadequacy regarding that important topic.

The amended and agreed-upon topics for the Rule 30(b)(6) deposition of the Office of the Secretary of State have been appended here as Appendix A. A list of the deponents the Secretary designated for each topic has been appended here as Appendix B.

## I.  Jan. 28, 2022 Rule 30(b)(6) Deposition of Chris Harvey (Dkts. 1368-1, 1370-1.)

| Chris Harvey<br>Topics: 12 & 18 | |
| --- | --- |
| 26:18-28:6 | Lack of sufficient preparation for Topic 18 |
| 11:18-25 | Lack of sufficient preparation (e.g., did not speak to Secretary Raffensperger or Deputy Secretary of State Jordan Fuchs) |
| 10:18-25 | Lack of sufficient preparation for Topic 12 |
| 13:8-15:1 | Insufficient testimony for Topic 12 (unaware of process for determining "de minimis" standard) |

| Chris Harvey Topics: 12 & 18 | |
|---|---|
| 30:21-24 | Insufficient testimony for Topic 18 (unaware whether the personal drives on the Secretary's servers were searched for documents and produced in this case) |
| 47:20-48:4 | Insufficient testimony for Topic 18 (unaware whether the inboxes for elections complaints and investigative division personnel were searched for documents and produced in this case) |
| 97:13-99:16 | (unaware whether a default, simple, universal password for PollPads had been changed) |
| 105:4-105:25 | (unaware whether counties were reusing USB drives for different elections) |
| 144:7-147:4 | (unaware who at Dominion had administrator-level access to the voting equipment) |
| 218:5-219:6 | (unaware of any investigation conducted to determine whether elections workers leaving ballots in a car in a driveway for some period of time before the ballots were transmitted to the State affected election tabulations in that county) |
| 54:24-56:2 | (unaware whether any investigation was conducted regarding an email reporting violations where machines had "elections database" doors open and the poll workers did not check serial numbers on the zip ties for a match to the form) |
| 119:6-121:9 | (unaware whether any investigation was conducted regarding an incident where someone threatened to hack the Georgia election system) |
| 213:24-214:9 | (unaware whether an investigation was conducted regarding an allegation of hacking in Fulton County on December 30, 2020) |
| 17:20-18:16; 22:2-23:5 | (unaware why the State decided to use a system with QR codes rather than human-readable text for tabulation, and said this was a question for Secretary Raffensperger or his "close advisors," such as Mr. Germany, Mr. Sterling, or Ms. Fuchs) |

| Chris Harvey<br>Topics: 12 & 18 | |
|---|---|
| 50:3-52:10 | (unaware whether an investigation was conducted regarding an incident of improperly-followed protocols for physical security of election equipment, but said that there should have been a report retained by the investigative division (which Curling Plaintiffs have not located in State Defendants' production)) |
| 74:2-17 | (unaware of Dr. Halderman's July 1, 2021 Opening Expert Report (the "Halderman Report") until he read about it in the A.J.C. a day or two before his deposition, and had not read the report) |

## II.   Feb. 2, 2022 Rule 30(b)(6) Deposition of Merritt Beaver (Dkts. 1368-2, 1370-2.)

| Merritt Beaver (Vol. I)<br>Topics: 1a, 1b, 1c, 10, 18 | |
|---|---|
| 36:24-37:17 | Insufficient testimony for Topic 1(a) (unaware whether an investigation into use of old equipment by counties had taken place) |
| 40:6-41-1 | Lack of sufficient preparation for Topic 1(a) (did not consult with any election security experts on the subject of malware) |
| 48:5-17 | Insufficient testimony for Topic 1(c) (unaware whether any county has connected equipment to the internet or third-party system) |
| 52:11-53:7 | Lack of sufficient preparation for Topic 10 |
| 53:8-54:6 | Lack of sufficient preparation for all the designated topics |
| 65:13-66:3 | Lack of sufficient preparation for Topic 18 (unaware of the process to identify and preserve potentially relevant emails) |
| 86:19-87:3 | Insufficient testimony for Topic 1(b) (lack of knowledge about voter registration data for the poll pad system and whether it sits on the purportedly-air-gapped EMS network) |

| Merritt Beaver (Vol. I) | |
| Topics: 1a, 1b, 1c, 10, 18 | |
|---|---|
| 110:10-111:2 | Insufficient testimony for Topic 10 (unaware of the outcome of the investigation into an alleged attempted hacking by the Democratic Party of Georgia ahead of the November 2018 election) |
| 115:1-22 | Insufficient testimony for Topic 10 (unaware of what led to the accusation that the Democratic Party of Georgia made an attempted hacking even though he apparently authorized the scans on the system by DHS that were mischaracterized as hacking attempts) |
| 130:11-132:9 | Lack of sufficient preparation and insufficient testimony for Topic 1(c) & 10 (regarding incident where a Dominion tech allegedly used a flash drive on a laptop to connect to E-Net even though he knew whom he could have asked to prepare on that point) |
| 155:10-18 | (unaware of the Halderman Report or how it was handled by the SOS's office) |
| 234:11-21 | Insufficient testimony for Topic 1(b)-(c) (unaware whether it was common for Wi-Fi networks to be active at election sites during elections) |

### III.   Mar. 10, 2022 Rule 30(b)(6) Deposition of Merritt Beaver (Dkts. 1368-3, 1370-3.)

| Merritt Beaver (Vol. II) | |
| Topics: 1a, 1b, 1c, 10, 18 | |
|---|---|
| 310:2-18 | Insufficient testimony for Topic 18 (unaware of process for maintaining cybersecurity assessments from Scytl) |
| 362:7-364:14 | Insufficient testimony for Topic 1(a) & 10 (unaware whether there were one or two laptops investigated for unusual activity leading up to the 2020 election) |

| Merritt Beaver (Vol. II) | |
|---|---|
| Topics: 1a, 1b, 1c, 10, 18 | |
| 374:18-375:9 | Insufficient testimony for Topic 1(a) (unaware of any measures taken to address issues raised in Fortalice report or any security measures implemented since the report was finalized) |
| 396:20-397:11 | Lack of sufficient preparation for Topic 10 (did not gather knowledge from any other person in the SOS's Office to prepare to address topic) |

**IV.   Feb. 11, 2022 Rule 30(b)(6) Deposition of Michael Barnes (Dkts. 1368-3, 1370-3.)**

| Michael Barnes | |
|---|---|
| Topics: 1a, 1b, 1c, 1e, 1f, 1g, 1h, 2a, 2b, 2d, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11 | |
| 13:23-15:5 | Lack of sufficient preparation for all of the designated topics |
| 94:7-96:1 | (unaware Dr. Halderman showed the Dominion equipment can be hacked so that the QR code does not match the human-readable portion of a ballot and unable to address that topic) |
| 96:3-97:19 | (unaware of the Halderman Report until a news article published a few weeks prior to his deposition) |
| 99:17-100:1 | (unaware of anyone who is addressing the vulnerabilities identified in the Halderman Report) |
| 100:9-16 | (unaware of any specific measures adopted to address the vulnerabilities identified in the Halderman Report) |
| 100:18-24 | (unaware of any specific measures adopted to mitigate the QR code hack demonstrated in September 2020) |
| 101:17-21 | (unaware that Dr. Gilbert was retained and offered testimony in this case) |
| 102:15-20 | (unaware that Dr. Gilbert did not disagree with any vulnerabilities found in the Halderman Report) |
| 187:17-188:1 | (unaware of what obligations Dominion has with respect to |

| Michael Barnes |
| Topics: 1a, 1b, 1c, 1e, 1f, 1g, 1h, 2a, 2b, 2d, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11 |

| | |
|---|---|
| | supporting the election system in Georgia) |
| 301:17-302:10 | (In the context of auditing, does not know why a decision was not made to conduct some reliable statistical sampling of ballots to compare QR codes to human-readable text.) |
| 32:25-33:5 | Insufficient testimony for Topic 1(a) (unaware whether there was other testing (besides hash tests and L&A testing) to look for malware on the DRE system) |
| 34:11-36:23; 227:14-25 | Insufficient testimony for Topic 1(a) (unaware of any forensic examination of the Dominion voting system and does not know if it's ever been discussed or considered and does not know why it has not been done) |
| 80:9-11; 80:18-81:3 | Insufficient testimony for Topic 1(c) (unaware whether the CES private network computers have Wi-Fi or Bluetooth capabilities) |
| 125:10-126:4 | Insufficient testimony for Topic 1(f) (unaware whether the election project files going to the counties include executable code) |
| 18:1-13 | Insufficient testimony for Topic 2(b) (unaware that malware can be designed to defeat L&A testing) |
| 23:21-25:21 | Insufficient testimony for Topic 2(b) (unaware that Dr. Shamos testified that Georgia's parallel testing is useless for evaluating the security of the voting system) |
| 155:21-158:10 | Insufficient testimony for Topic 2(d) (unaware of the circumstances surrounding an EasyVote data breach nor about any investigations or actions taken related to that incident) |
| 87:24-88:20; 91:10-91:25 | Insufficient testimony for Topic 7 (unaware why the current tabulation system is the QR code instead of the human-readable portion of the ballot) |
| 102:25-103:12 | Lack of preparation and insufficient testimony for Topic 9(a) (did not undertake any investigation or research into whether anything happened; did not speak with anyone from the |

| Michael Barnes | |
|---|---|
| Topics: 1a, 1b, 1c, 1e, 1f, 1g, 1h, 2a, 2b, 2d, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11 | |
| | investigative division) |
| 126:12-138:20 | Insufficient testimony for Topic 9(b) (regarding an issue in Jefferson County with BMD seals removed accidentally by election official and could not testify specifically regarding how the issue was mitigated and could not recall if any investigation or assessment was conducted) |
| 148:17-21 | Insufficient testimony for Topic 9(b) (unaware if the State has any security requirements on how seals are to be maintained when they're not on the equipment) |
| 161:10-162:14 | Insufficient testimony for Topic 9(b) (regarding incident of USB device being used with Clarke County EMS server) |
| 106:1-22 | Lack of preparation and insufficient testimony for Topic 10 (did not undertake any investigation or research into whether anything happened; did not speak with anyone from the investigative division) |
| 108:20-109:10 | Insufficient testimony for Topic 11 (unaware if SOS office made a recommendation to Pro V&V that they viewed it as a "de minimis" change) |

## V.    Feb. 24, 2022 Rule 30(b)(6) Deposition of Gabriel Sterling (Dkts. 1368-3, 1370-3.)

| Gabriel Sterling | |
|---|---|
| Topics: 1a, 1b, 1c, 1e, 1h, 2c, 3, 4, 5, 6, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11, 12, 13, 14, 15, 17, 18 | |
| 160:11-169:12 | Lack of sufficient preparation for all of the designated topics |
| 160:12-161:21 | Lack of sufficient preparation (e.g., did not speak to Secretary Raffensperger or Deputy Secretary of State Jordan Fuchs) |
| 28:11-32:10, 60:15-61:23, | Lack of sufficient preparation and insufficient testimony generally (cannot testify about specific vulnerabilities or |

| Gabriel Sterling | |
|---|---|
| Topics: 1a, 1b, 1c, 1e, 1h, 2c, 3, 4, 5, 6, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11, 12, 13, 14, 15, 17, 18 | |
| 68:17-71:16, 248:21-249:8 | whether the vulnerabilities identified in the Halderman Report are not a significant concern because of potential mitigations because he has not read the Halderman Report) |
| 29:4-6; 248:7-9 | Lack of sufficient preparation and insufficient testimony (unaware if Secretary Raffensperger has read the Halderman Report) |
| 211:13-212:3 | Lack of sufficient preparation and insufficient testimony (unaware if anyone at SOS office read the Stark Report) |
| 101:17-102:20 | Lack of sufficient preparation and insufficient testimony (unaware if the State has had any cybersecurity experts or election security experts review the Halderman Report) |
| 186:20-187:9 | Insufficient testimony for Topic 1(a) (unaware if State developed any procedures or took other action to address all the deficiencies found by the Court in its August 15, 2019 order concerning the election system) |
| 185:20-186:16; 273:5-275:5 | Insufficient testimony for Topic 1(a) (unaware if State developed any procedures to address any deficiencies found by the Court in its August 15, 2010 order re voter registration database) |
| 145:15-146:24 | Insufficient testimony for Topic 1(b) (could only testify about the concept of air-gapping "using general layman's terms" and notes that it is a term of art and the way he uses it probably does not exclude removable media like a USB drive) |
| 182:22-184:16 | Insufficient testimony for Topic 2 (unaware of any assessment by Fortalice, Dominion or anyone else that conducted an in-depth review and formal assessment of the election system) |
| 97:13-101:16 | Insufficient testimony for Topic 2 (unaware of the details or status of the project allowing Dr. Alex Schwarzmann to create a mirror set-up of voting system at Augusta University) |
| 100:12-101: | Insufficient testimony for Topic 2 (unaware if Dr. |

| Gabriel Sterling | |
|---|---|
| Topics: 1a, 1b, 1c, 1e, 1h, 2c, 3, 4, 5, 6, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11, 12, 13, 14, 15, 17, 18 | |
| | Schwarzmann had read any of Dr. Halderman's reports or testimony in this case or if Dr. Schwarzmann would do his own assessment of the election equipment) |
| 167:8-169:3 | Lack of preparation and insufficient testimony for Topic 2(c) (did not speak with anyone from the investigative division) |
| 119:14-120:16 | Insufficient testimony for Topic 2(c) (unaware how often CISA checks security measures at the county level and does not know if the CISA process generates a report) |
| 130:7-136:17; 138:15-24; 139:7-140:11 | Insufficient testimony for Topic 2(c) (unaware if the State has engaged Dr. Keromytis to advise the state on election security; unaware how often Dr. Keromytis has met with individuals on behalf of the SOS office regarding election security; unaware if Secretary Raffensperger or Jordan Fuchs attended the meetings he could recall attending himself; does not recall the other election security experts in such meetings; does not recall if there were any notes or minutes from those meetings; does not specifically recall what was discussed; unaware if Dr. Keromytis works directly with Jordan Fuchs on election security issues) |
| 171:17-175:15 | Lack of preparation and insufficient testimony for Topic 3 (did not review investigative files or speak with Frances Watson or others in investigative division) |
| 171:4-175:15 | Lack of preparation and insufficient testimony for Topic 9(a) (did not conduct any investigation or inquiry to respond to related interrogatory; did not review investigative files or speak with Frances Watson or others in investigative division) |
| 167:8-169:3 | Lack of preparation and insufficient testimony for Topic 9(a) (did not speak with anyone from the investigative division) |
| 347:10-348:18 | Insufficient testimony for Topic 9(a) (unaware if SOS office evaluated any risks to Georgia relating to potential release of Dominion software in Michigan and Colorado) |

| Gabriel Sterling | |
|---|---|
| Topics: 1a, 1b, 1c, 1e, 1h, 2c, 3, 4, 5, 6, 7a, 7b, 7c, 7d, 8, 9a, 9b, 9c, 10, 11, 12, 13, 14, 15, 17, 18 | |
| 108:15-109:12 | Insufficient testimony for Topic 9(b) (unaware why physical mitigation was not sufficient for DRE equipment but would be sufficient for BMD equipment) |
| 59:8-20 | Insufficient testimony for Topic 9(b) (unaware and unable to identify any specific training, policies, procedures) |
| 60:15-61:23 | Insufficient testimony for Topic 9(b) (unaware if mechanisms in place effectively protect voters/elections because does not know what the vulnerabilities are because has not read the Halderman Report) |
| 66:7-67:18 | Insufficient testimony for Topic 9(b) (unknowledgeable about policies and practices re BMDs with broken or missing seals used in elections) |
| 167:8-169:3 | Lack of preparation and insufficient testimony for Topic 10 (did not speak with anyone from the investigative division) |
| 258:5-259:22 | Lack of preparation and insufficient testimony for Topic 10 (unaware of any findings regarding the Coffee County server incident; would have to go check with investigative teams) |
| 216:5-219:16 | Lack of preparation and insufficient testimony for Topic 11 (unaware of any details or specifics) |
| 103:15-105:4 | Insufficient testimony for Topic 7 (unaware if SOS office has undertaken any efforts to advocate for tabulating the human-readable portion (S.A.F.E. Commission recommendation) change with the Georgia legislature) |

Dated:  June 3, 2022

Respectfully submitted,

 /s/ David D. Cross
David D. Cross (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)

Veronica Ascarrunz (*pro hac vice*)
Hannah R. Elson (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
DCross@mofo.com
MKaiser@mofo.com
VAscarrunz@mofo.com
HElson@mofo.com
ZFuchs@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling,
Donna Price & Jeffrey Schoenberg*

## Appendix A: Amended Topics

"Prior Election System" is the prior DRE/GEMS system[1] and "Current Election System" is the Dominion system currently used in Georgia, as clarified in Curling Plaintiffs' June 30, 2021 letter regarding the 30b6 topics.

1.      Implementation and operation of Georgia's Current Election System limited to the following subtopics:

        a.   Any efforts made specifically (i) to determine whether malware is, or was, located on any Component[2] of Georgia's Prior Election System and (ii) to prevent any such malware from infecting the Components of Georgia's Current Election System; and the success or failure of any such efforts, including any exchanges of software or data between any Component of the two election systems and the use of the same computers, servers, or removable media with both systems;

[1] Reference to the Prior Election System in these topics seeks information only regarding the extent to which potential infiltration of that system could affect the Current Election System.

[2] Component is limited to the following equipment that has been used for elections in the State of Georgia: ES&S DREs; Dominion BMDs; printers used with Dominion BMDs; scanners used to scan ballots; servers containing election management system (EMS) software for use with any ES&S DREs or Dominion BMDs; and servers, laptops, desktop computers, tablets, smartphones, and removable media connected to any of the preceding equipment or otherwise used to collect, tally, record, transmit, design, or audit voting information.

b.   Any efforts made to "air-gap" any Components of Georgia's Current Election System, and the success or failure of any such efforts;

c.   Any connections of any Components of Georgia's Current Election System to the Internet, telephone lines, cable lines, satellites, or other third-party system or network;

d.   [WITHDRAWN – MORE NARROWLY CAPTURED BY 1a and 9b];

e.   Any failure of any Component of Georgia's Current Election System to correctly tabulate, tally, record, store, or maintain any ballot cast in any 2020 or 2021 elections in Georgia, any measures implemented, planned, or contemplated to remediate or otherwise address any such failure, and the success or failure of any such measures;

f.   Practices and policies for creating ballot definition files and Election Project Packages for Georgia 2020 or 2021 elections, including when, where, how, and by whom such files were created and transmitted for use in any such election;

g.   Procedures and instructions for county review and approval of the Election Project Packages;

h. Practices and policies for transferring scanned ballot data and tabulation data or information for Georgia 2020 or 2021 elections to You, including when, how, and by whom such data or information was collected or transmitted.

2. Any testing, examination, reexamination, evaluation, study, analysis, investigation, or assessment of the security, integrity, reliability, accuracy, or transparency of Georgia's Current and/or Prior Election System, including:

a. Your knowledge about your policies and training on Logic and Accuracy testing, as well as practices concerning these issues undertaken by you or anyone acting on your behalf or at your direction;

b. Logic and Accuracy Testing of the current voting equipment, the results thereof, and any steps or measures contemplated or taken in response to any such testing;

c. Any reports, findings, or conclusions regarding any potential or actual security concerns, breaches, or vulnerabilities involving any aspect of Georgia's Current or Prior Election System;

d. Documentation—including research, reports, assessments, findings, studies, publications, memoranda, and communications—regarding

A-3

the security, integrity, reliability, or accuracy of any component of Georgia's Current Election System.

3.    Complaints regarding the security, integrity, reliability, or accuracy of Georgia's Current and/or Prior Election System, including when and by whom any such complaints were made and any responses thereto.

4.    Dominion's role and responsibilities in any 2020 and 2021 Georgia elections related to Georgia's Current Election System, including:

    a.    Any oversight Dominion exercises over technicians or other election workers in any such election;

    b.    Any access any Dominion Worker had to any components of the Election System used in any such election after the state or any county took possession of the component(s), whether (and if so, how, when, and by whom) that access was exercised by any Dominion Worker, and the reasons for any such access;

    c.    Any changes any Dominion Worker made to any components of the Election System (including servers and any software, firmware, or data on the equipment) used in any such election after the state or any county took possession of the component(s), including how, when, why, and by whom any such changes were made.

5.      Your knowledge about vendor access to Poll Pads, BMDs, printers, scanners, computers, or servers used to administer elections, including tabulating votes, under Georgia's Current and/or Prior Election System and applicable State Election Board (SEB) rules and training with respect to vendors with access to any such equipment and/or data, as well as any practices regarding the enforcement of those rules.

6.      Policies and practices for hiring, training, and overseeing technicians and other election workers (including volunteers) for 2020 and 2021 Georgia elections under Georgia's Current and/or Prior Election System, including regarding any background checks, confidentiality requirements, or other security measures implemented or contemplated for any such workers.

7.      Policies and practices for scanning and tabulating paper ballots under Georgia's Current Election System. Specifically:

    a.  Functionality and operation (including equipment settings) of Georgia's Current Election System (including software and firmware) for scanning paper ballots, whether generated by a ballot-marking device or marked by hand or some other means;

     b.  Functionality and operation of Georgia's Current Election System (including software and firmware) for adjudicating marks on paper ballots for tabulation;

     c.  Any policies and practices contemplated or adopted to try to ensure accurate tabulation of voter selections reflected on paper ballots; Training and oversight of technicians and other election workers and/or counties on such policies, practices, and equipment.

8.    Complaints or reports regarding security vulnerabilities with or unauthorized access to any Electronic Pollpads used in Georgia 2020 or 2021 elections.

9.    Vulnerabilities involving the security, integrity, reliability, or accuracy of Georgia's Current Election System limited to the following subtopics:

     a.  Suspected or actual unauthorized access to or copying or alteration of software or data on any Component of Georgia's Current Election System;

     b.  Policies and practices regarding securing Components of Georgia's Current Election System against unauthorized access to or copying or alteration of software or data on any such Components, including but not limited to removable media used with the system (and any other

equipment used with any such media) and equipment stored overnight in early voting polling places;

c.  Wireless connections available with any of the following equipment used in Georgia elections in 2020 or 2021: Dominion BMDs; printers used with Dominion BMDs; scanners used to scan ballots; servers containing election management system (EMS) software for use with any Dominion BMDs; Electronic Pollbooks; and servers, laptops, desktop computers, tablets, smartphones, and removable media connected to any of the preceding equipment or otherwise used to collect, tally, record, transmit, design, or audit voting information.

10.  Any instance in 2020 or 2021, within the knowledge of the Secretary of State's Office, when a person or entity other than an authorized election worker or Georgia state or county official obtained voting data from a Georgia election or images of voting equipment used in a Georgia election.

11.  Any changes to any software or firmware used on any component of Georgia's Current Election System since September 1, 2020, including when, how, why, and by whom any such changes were made and approved.

12.  Communications with the U.S. Election Assistance Commission ("EAC") regarding any software changes involving Georgia's current Election

System or otherwise relating to any actual or contemplated request for EAC approval for any aspect of Georgia's Current Election System.

13.    The voter verifiability and auditability of ballots generated by ballotmarking devices used in Georgia 2020 or 2021 elections, including:

a.    Any policies and practices contemplated, adopted, or implemented to try to ensure voter verification of the contents of paper ballots generated by Georgia's Current Election System;

b.    Any testing, examination, evaluation, study, analysis, or assessment of the extent to which voters reliably verify the accuracy of their respective ballots generated by ballot-marking devices used in Georgia's Current Election System;

c.    Any policies and practices contemplated or adopted for pre-election or post-election auditing of election results produced by Georgia's Current Election System, including but not limited to risk-limiting audits of that system;

d.    Any audit of any Georgia 2020 or 2021 election, including the steps taken as part of that audit and the results thereof and any review or investigation of discrepancies found in the audit.

14.     Any actual or contemplated plans to replace Georgia's current voting software or equipment with different voting software or equipment, such as BMDs that do not generate bar codes for tabulation.

15.     Potential implementation and operation of an election system using hand-marked paper ballots as the primary means of voting in person in Georgia elections, including:

     a.   Any examination, evaluation, study, analysis, or assessment of the reliability, feasibility, or costs thereof;

     b.   Any proposal or request for any such Election System for use in Georgia, including when and by whom any such proposal or request was made and any response thereto.

16.     Admissibility of any Documents You produce in discovery in this matter.

17.     Your process for identifying, collecting, searching, reviewing, and producing responsive Documents and other relevant materials in this matter.

18.     Your process for preserving information within Your possession, custody, or control potentially relevant for this matter, including any communications with counties or other entities or individuals regarding the same.

## Appendix B: Designees for Amended Topics

1a- Beaver, Barnes, and Sterling

1b- Beaver, Barnes, and Sterling

1c- Beaver, Sterling, Barnes

1e- Sterling, Barnes

1f- Barnes

1g- Barnes

1h- Barnes, Sterling

2a- Barnes

2b- Barnes

2c- Sterling

2d- Barnes

3- Sterling

4- Sterling

5- Sterling

6- Sterling

7(a-d)- Barnes, Sterling

8- Sterling, Barnes

9(a-c)- Sterling, Barnes

10- Sterling, Barnes, Beaver

11- Sterling, Barnes

12- Sterling, Harvey

13- Sterling

14- Sterling

15- Sterling,

16- Testimony regarding document authentication will need to be addressed on a case-by-case basis

17- Sterling

18- Sterling, Beaver, Harvey

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been

prepared in accordance with the font type and margin requirements of LR 5.1, using

font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER , ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2022, a copy of the foregoing **CURLING**

**PLAINTIFFS' NOTICE OF FILING REQUESTED CITATIONS OF**

**REPRESENTATIVE PORTIONS OF RULE 30(b)(6) DEPOSITION**

**TRANSCRIPTS** was electronically filed with the Clerk of Court using the

CM/ECF system, which will automatically send notification of such filing to all

attorneys of record.

*/s/ David D. Cross*
David D. Cross