## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

DONNA CURLING, et al.                )
                                     )
      Plaintiffs               )
                                     )
v.                                   )     Civil Action No. 1:17-cv-02989-AT
                                     )
BRIAN P. KEMP, et al.,               )
                                     )
      Defendants               )

### COFFEE COUNTY BOARD OF ELECTIONS & REGISTRATIONS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER

COMES NOW, Movant, Coffee County Board of Elections & Registration[1] ("Coffee County BOE") and respectfully moves that the Court quash or modify the subpoenas attached as Exhibits A and B to Coffee County BOE's motion (collectively, the "Subpoenas," and individually the "Subpoena to Testify" and "Subpoena to Produce") pursuant to Fed. R. Civ. P. 45(d)(3). Alternatively, Coffee County BOE moves that the court enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1).

---

[1] The movant is incorrectly named in the subject subpoenas as Coffee County Board of Elections.

## INTRODUCTION

This pending matter began in 2017, wherein Respondents challenged the results of the June 20, 2017 runoff election between Karen Handel and Jon Ossoff. Five years later, Respondents seek a burdensome document production and deposition of Coffee County BOE on what appears to be irrelevant issues. Of course, Coffee County BOE is a non-party to this extended litigation. There are at least 1401 docket entries in the subject lawsuit, rendering it impossible for Coffee County BOE to timely review all pleadings in support of this motion.

Respondents are using the pending litigation as an excuse to explore other irrelevant events irrespective of whether they are related to the 2017 election. The litigation must be limited to the facts relevant to the case. Coffee County BOE is a non-party being dragged into an issue it has no knowledge of that occurred in 2017. Furthermore, it is undisputable that Coffee County BOE was not served with the Subpoenas properly and sufficiently, as demonstrated by the Proof of Service sections.

The Subpoena to Testify commands deposition testimony by Coffee County BOE on July 14, 2022 at 9:00 am. (One member of the Coffee County BOE has an already-scheduled specialist doctor's appointment for his son with a pediatric cardiologist in Savannah, Georgia on the same date). The Subpoena to Produce seeks production of documents by June 30, 2022 at 10:00 am. (See Exhibit B).

## ARGUMENT AND CITATION OF AUTHORITY

### 1. Motions to Quash and Motions for Protective Order

Fed. R. Civ. P. 45(d)(3) reads as follows:

(3) Quashing or Modifying a Subpoena.

> (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

>> (i) fails to allow a reasonable time to comply;

>> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

>> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

>> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 26(c) reads as follows:

(c) Protective Orders.

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

>> (A) forbidding the disclosure or discovery;

>> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

3

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) Ordering Discovery. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

2. **Subpoena to Testify**

a. **Coffee County BOE Has No Knowledge Related to the Topics.**

Misty Hampton served as the Coffee County BOE Elections Supervisor from January 9, 2012 to February 25, 2021. (Affidavit of R. Roberts, ¶ 7). She was terminated from her position for reasons unrelated to elections and is no longer a Coffee County employee. Subsequently, James Barnes served as the Coffee County BOE Elections Supervisor from April 1, 2021 to December 3, 2021. (Affidavit of R. Roberts, ¶ 6). He resigned to take another job and is no longer a Coffee County employee. Rachel Roberts became the Coffee County BOE Election Supervisor on

4

December 13, 2021 and presently maintains that position. (Affidavit of R. Roberts, ¶¶ 3-4).

With this backdrop, Coffee County BOE can demonstrate that it has no knowledge related to the proposed topics.  More details are below:

**Topics #1, 6, 7**: SEB Case Number 2020-250 arose out of conduct by Ms. Hampton and the investigation occurred during James Barnes' tenure.  Neither of these individuals are employed or under the control of Coffee County BOE.  Ms. Hampton and Mr. Barnes contain the relevant knowledge related to this topic.  The current board members and the board's employees cannot offer insight into this topic.

**Topics #2-7, 12**:  These topics all relate to any "Unauthorized Access." Respondents define "Unauthorized Access" as

> any event(s) that took place after November 3, 2020, in which one or more Coffee County election officials (including members of its board of elections or persons under their authority or direction) granted access to one or more Unauthorized Persons to access Coffee County's Election System components, EMS server, electronic records, and election ballots . . . .

Coffee County contends that there has been no Unauthorized Access during the aforementioned time period.  However, to the extent there was an Unauthorized Access, Ms. Hampton has the exclusive knowledge.   No current employee or board member has any knowledge or can testify about any alleged Unauthorized Access.

**Topic #8**: Coffee County BOE does not know why the EMS server was replaced in 2021. This question should be directed to Georgia's Secretary of State, who is a party to this case.

**Topics #9, 11**: Coffee County BOE does not possess knowledge related to any change of password for the EMS Server after the 2020 election. This information should be obtained from Ms. Hampton or Mr. Barnes.

**Topic #10**: Coffee County BOE can testify on this topic. However, the termination of any Coffee County BOE employee or personnel after October 1, 2020 is irrelevant and unrelated to any election, election equipment, or election event. The terminations occurring during this timeframe were for business and office management purposes.

**Topic #13**: This is simply another way of describing an "Unauthorized Access." The board is unaware of security vulnerabilities and the computer systems or network environments used to support the Election System. Ms. Hampton or Mr. Barnes would be the necessary deponent(s) for this topic.

**Topic #14**: To the extent a board member is knowledgeable on this topic, Coffee County BOE can testify. However, Ms. Hampton or Mr. Barnes would likely have superior knowledge.

b. **The Subpoena to Testify is Unduly Burdensome.**

Although discovery matters are broad, there are limits to the scope of discovery.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  This scope of discovery applies to non-parties as well.  *Precision Aviation Group, Inc. v. Prime Industries, Inc.*, 2017 WL 2903361, *1 (N.D. Ga. June 16, 2017).

"[T]o determine whether the subpoena subjects the subpoena recipient to an undue burden, one must identify both that burden as well as the interests served by demanding compliance with the subpoena.  As to the latter inquiry, the relevance of the requested information to the underlying litigation, or the lack thereof, is important.  In addition, a subpoena recipient's status as a non-party to the litigation is also a factor that can weigh against disclosure."  *Jordan v. Commissioner, Mississippi Department of Correction*, 947 F.3d 1322, 1337 (11th Cir. 2020).  To help with this analysis, the courts have identified several factors, including the

relevance of the information requested, the burden of producing the information, and the subpoena recipient's non-party status. *Id*.

Thus, quite simply, discovery must be relevant and not overly burdensome to the responding party. *West v. City of Albany, Georgia*, 830 Fed. Appx. 588, 592 (11th Cir. 2020). Discovery should not be questionably or tangentially relevant disproportionately to the needs of the case. *Id*. at 593. "Where a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied." *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991).

The Subpoena to Testify is issued in a never-ending case beginning as an election challenge in 2017. For example, Schedule A of the Subpoena to Testify seeks testimony on issues that occurred in 2020 and 2021. These events are clearly chronologically irrelevant to a 2017 election.

Looking at the plaintiffs' Prayer for Relief in the Amended Complaint, they seek two remedies relating to Georgia's DRE software. However, the bulk of the remedies are about the 2017 election. Thus, any actions taken by Coffee County BOE in 2020, even if relating to DRE software, are only tangentially relevant to this lawsuit, at best. However, requiring a deposition for the overly-broad topics would be excessively and unduly burdensome on Coffee County BOE.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  F.R.C.P. 45(d)(3)(A)(iv) requires that the court quash or modify a subpoena that subjects a person to undue burden.  Here, the plaintiffs did not take reasonable steps to avoid imposing an undue burden or expense on Coffee County BOE.  The Subpoena to Testify is incredibly broad, seeking any and all information on events that are irrelevant to the case at hand.

Respondents are required by law to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).  The Subpoena to Testify falls woefully short of this standard.  Therefore, the Court should quash the Subpoena to Testify to avoid the undue burden placed on Coffee County BOE.

### c. <u>The Proof of Service Shows the Subpoena to Testify Was Served on a Non-Employee.</u>

The Subpoena to Testify incorrectly shows that it was served on James Barnes, who is no longer Coffee County BOE's Elections Supervisor and did not hold that position at the time of service.  In fact, he was not even a county employee at this time.

Fed. R. Civ. P. 45(b) delineates specific service and proof of service requirements for a subpoena:

(1) *By Whom and How; Tendering Fees.* Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena

requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

. . .

(4) *Proof of Service.* Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

The Subpoena to Testify states that "James A. Barnes was served at his residence without incident.  He was served as the Coffee County Board of Elections Supervisor."  (See Exhibit A).  This is false.  He is no longer the Coffee County Board of Elections Supervisor.  (Affidavit of R. Roberts, ¶ 6).

The Affidavit of Ms. Roberts proves that James Barnes was the Supervisor until his resignation on December 3, 2021.  (Affidavit of R. Roberts, ¶ 6).  Likewise, it shows that James Barnes is not authorized to accept service on behalf of Coffee County BOE and was not authorized to do so on the date outlined in the Proof of Service.   Upon information and belief, James Barnes was not served with the subpoenas at his residence, but instead Rachel Roberts was served with the subpoenas at her place of business.  Because the Proof of Service incorrectly states the method of service, the Subpoena to Testify should be quashed.

### d. <u>Service on the Elections Supervisor is Improper.</u>

Service on the Elections Supervisor on behalf of the entire Board of Elections and Registration is insufficient.  Stated differently, the Elections Supervisor has no authority to accept service of a subpoena on behalf of the Board.  The Elections Supervisor is appointed by the board, with the approval of the Coffee County Board of Commissioners.  1970 Ga. Laws (Act. No. 934), p. 2441 (Sec. 11).  The Elections Supervisor is not a member of the board; he or she is treated as an employee of the county.  1970 Ga. Laws (Act. No. 934), p. 2441 (Sec. 11).  Coffee County BOE has not authorized the Elections Supervisor to accept service on its behalf.

The Elections Supervisor has no authority or control over the board and cannot accept service on its behalf.  Because service on the Elections Supervisor was insufficient, the Subpoena to Testify should be quashed.

### 3. <u>Subpoena to Produce</u>

### a. <u>The Subpoena to Produce is Unduly Burdensome.</u>

The law regarding quashing a subpoena that is unduly burdensome is outlined hereinabove in Section 2.b.  For sake of conciseness, Coffee County BOE will not duplicate that language.  Therefore, Coffee County BOE reincorporates and reiterates the legal arguments in Section 2.b as if fully set forth herein.

Coffee County BOE invites the Court to examine the document requests in the Subpoena to Produce to see the overbroad and burdensome nature of the requests.

11

The requests are not narrowly tailored in the slightest; Respondents seek all documents that even "evidence. refer to, or reflect" the tangentially related events. (See Exhibit B).  Coffee County BOE also points out that responding the Subpoena will require significant time and expense to investigate but is unlikely to reveal many responsive documents.    Many of the responsive documents or written communications are not in Coffee County BOE's possession.

Additionally, Respondents define "Relevant Time Period" as "July 1, 2020, until the present unless otherwise indicated."   This definition highlights the irrelevance of the document search.  As mentioned above,  "to determine whether the subpoena subjects the subpoena recipient to an undue burden, one must identify both that burden as well as the interests served by demanding compliance with the subpoena.  As to the latter inquiry, the relevance of the requested information to the underlying litigation, or the lack thereof, is important.  In addition, a subpoena recipient's status as a non-party to the litigation is also a factor that can weigh against disclosure." *Jordan*, 947 F.3d at 1337.  Thus, even if the document requests are slightly relevant and may provide a small benefit to Respondents, the overbroad and unduly burdensome nature of the requests outweighs the benefits.

### b. <u>The Proof of Service Shows that the Subpoena to Produce was Served on a Non-Employee.</u>

The Subpoena to Produce incorrectly shows that it was served on James Barnes, who is no longer Coffee County BOE's Elections Supervisor and did not

hold that position at the time of the alleged service.  In fact, he was not even a county employee at that time.

Fed. R. Civ. P. 45(b) delineates specific service and proof of service requirements for a subpoena:

> (1) *By Whom and How; Tendering Fees*. Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.
>
> . . .
>
> (4) *Proof of Service*. Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

The Proof of Service section state that James Barnes was served with the Subpoena to Produce on June 16, 2022.  (See Exhibit B).  The Subpoena to Produce states that "JAMES A. BARNES, JR WAS SERVED AT HIS RESIDENCE WITHOUT INCIDENT.  HE IS AUTORIZED [sic] TO ACCEPT SERVICE FOR THE COFFEE COUNTY BOARD OF ELECTIONS."  (See Exhibit A).  This is patently false.  (See Affidavit of R. Roberts, ¶ 5).  James Barnes is not authorized to accept service for Coffee County.

The Affidavit of Ms. Roberts proves that James Barnes was the Supervisor until his resignation on December 3, 2021.  (Affidavit of R. Roberts, ¶ 6).  Likewise,

it shows that James Barnes is not authorized to accept service on behalf of Coffee County BOE and was not authorized to do so on the date outlined in the Proof of Service.   Upon information and belief, James Barnes was not served with the subpoenas at his residence, but instead Rachel Roberts was served with the subpoenas at her place of business.  Because the Proof of Service incorrectly states the method of service, the Subpoena to Testify should be quashed.

### c.  <u>Service on the Elections Supervisor is Improper.</u>

Service on the Elections Supervisor on behalf of the entire Board of Elections and Registration is insufficient.  Stated differently, the Elections Supervisor has no authority to accept service of a subpoena on behalf of the Board.  The Elections Supervisor is appointed by the board, with the approval of the Coffee County Board of Commissioners.  1970 Ga. Laws (Act. No. 934), p. 2441 (Sec. 11).  The Elections Supervisor is not a member of the board; he or she is treated as an employee of the county.  1970 Ga. Laws (Act. No. 934), p. 2441 (Sec. 11).  Coffee County BOE has not authorized the Elections Supervisor to accept service on its behalf.

The Elections Supervisor has no authority or control over the board and cannot accept service on its behalf.  Because service on the Elections Supervisor was insufficient, the Subpoena to Produce should be quashed.

### 4. **Discovery Has Expired.**

Upon information and belief, the discovery period has expired in the instant litigation and was expired at the time the Subpoenas were issued. The issuance of a Rule 45 subpoena after the close of the discovery period is improper and grounds to quash the subpoena(s). *See, e.g., Secretary, Dept. of Labor v. Seibert*, 464 Fed. Appx. 820, 823 (11th Cir. 2012) (holding that the lower court acted within its discretion to deny a request for a subpoena duces tecum to a number of other nonparties after the close of the discovery period); *Lamar v. Clayton County School District*, 2014 WL 12650653, *4 (N.D. Ga. April 8, 2014) (stating that a majority of courts within the Eleventh Circuit consider subpoenas issued pursuant to Rule 45 as discovery and thus subject to discovery deadlines); *Circle Group, LLC v. Southeastern Carpenters Regional Council*, 836 F. Supp. 2d 1327, 1352 (N.D. Ga. 2011) ("There is no exception to the general rule that Rule 45 subpoenas may not be used to . . . engage in discovery after the discovery deadline has passed.") (internal quotations omitted).

Because the Subpoenas were drafted and served subsequent to the closing of the discovery period, they should be quashed.

## **CONCLUSION**

The undisputable evidence shows that Respondents failed to properly serve Coffee County BOE with the Subpoenas. The Subpoenas, as written, are overly

broad and unduly burdensome.  Respondents and/or their attorneys are responsible for preventing a subpoena recipient from facing an undue burden.  The Subpoenas are no more than improper fishing expeditions.  For all of the above reasons, Coffee County BOE respectfully requests that this Court grant its Motion to Quash. Alternatively, Coffee County BOE respectfully requests that this Court enter a Protective Order and/or modify the subpoena sufficient to protect the interests of Coffee County BOE, described above.

**HALL BOOTH SMITH, P.C.**

/s/ Anthony A. Rowell
ANTHONY A. ROWELL
Georgia Bar No.: 616930
JENNIFER D. HERZOG
Georgia Bar No. 109696
NICHOLAS A. KINSLEY
Georgia Bar No.: 273862

*Counsel for Coffee County*
*Board of Elections & Registration*

1564 King Road
Tifton Georgia 31793
(229) 382-0515 – Telephone
(229) 382-1676 – Facsimile
Email: arowell@hallboothsmith.com
Email: jherzog@hallboothsmith.com
Email: nkinsley@hallboothsmith.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

DONNA CURLING, et al.           )
                                )
        Plaintiffs              )
                                )
v.                              )           Civil Action No. 1:17-cv-02989-AT
                                )
BRIAN P. KEMP, et al.,          )
                                )
        Defendants              )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this 29th day of June, 2022, served a copy of the within and foregoing **COFFEE COUNTY BOARD OF ELECTIONS & REGISTRATIONS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER** upon all Counsel of Record via CM/ECF and by placing a copy of same in the United States Mail, in an envelope with adequate postage affixed thereon to ensure delivery, as follows:

Halsey G. Knapp, Jr.
Krevolin & Horst, LLC
One Atlantic Center
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA  30309
hknapp@khlawfirm.com

**HALL BOOTH SMITH, P.C.**

/s/ Jennifer D. Herzog
ANTHONY A. ROWELL
Georgia Bar No.: 616930
JENNIFER D. HERZOG
Georgia Bar No. 109696
NICHOLAS A. KINSLEY
Georgia Bar No.: 273862

*Counsel for Coffee County*
*Board of Elections & Registration*

1564 King Road
Tifton Georgia 31793
(229) 382-0515 – Telephone
(229) 382-1676 – Facsimile
Email: arowell@hallboothsmith.com
Email: jherzog@hallboothsmith.com
Email: nkinsley@hallboothsmith.com