# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., Plaintiffs, v. BRAD RAFFENSPERGER, ET AL., Defendants. | Civil Action No. 1:17-CV-2989-AT |

## PLAINTIFFS' REPLY IN SUPPORT OF PROCEEDING TO TRIAL AND DENYING OR DEFERRING SUMMARY JUDGMENT AND REGARDING COFFEE COUNTY VOTING SYSTEM BREACH DISCOVERY

Pursuant to the Court's June 23, 2022 Order (Dkt. 1405), Plaintiffs submit this joint reply to State Defendants' June 30, 2022 filing (Dkt. 1412).

## I. Summary Judgment

### A. *This Court Has Broad Discretion to Manage This Case*

State Defendants attack a strawman. They claim that Plaintiffs seek "to *preclude* Defendants from moving for summary judgment" and for "*preemptive* denial of a summary judgment motion this Court *has not reviewed*." (Dkt. 1412 at 2 (emphasis added).) They cite nothing for this claim, nor could they—Plaintiffs made no such request. Plaintiffs actually proposed that the Court (i) deny Defendants' anticipated summary judgment motion *after reviewing it* or (ii) hold the *filed motion* in abeyance until after the close of trial or Plaintiffs' case:

> As this Court will see *upon receipt of a summary judgment motion*, denial of the motion without briefing is especially appropriate here given the compelling evidence Plaintiffs have compiled and the numerous material fact disputes in this case.
> …
> *Should Defendants burden this Court and Plaintiffs with a wasteful summary judgment motion*, Plaintiffs request that this Court exercise its broad discretion and either deny the motion without requiring a response from Plaintiffs or hold the motion and any briefing on it in abeyance until after the close of trial, or at least Plaintiffs' evidence at trial.

(Dkt. 1403 at 2, 6.) Defendants are free to file a motion for summary judgment if they believe that is a worthwhile use of taxpayer funds and this Court's limited

1

time and resources (*it isn't*).  But nothing prevents this Court from dealing with it as Plaintiffs propose.  (*Id.* at 2-3.)  Pretending Plaintiffs seek something different, Defendants do not even address—much less dispute—this fact.

This Court is well-positioned to recognize that summary judgment is wholly improper here upon reviewing State Defendants' anticipated motion, without needing to hear more from Plaintiffs on the merits before trial.  *First*, as this Court is aware, this is a complex, public matter involving many hotly-contested fact disputes and voluminous evidence, including extensive expert analyses from Plaintiffs (certain of which CISA validated (Dkt. 1391)).  *Second*, the Court already decided (by Defendants' own count (Dkt. 1412 at 8)) "ten separate motions for preliminary injunction" that required the Court to consider the merits of this case under a more stringent standard than Rule 56, yielding several detailed opinions discussing Defendants' election security failures and the harm to Plaintiffs.  *Third,* the Court already held several multi-day evidentiary hearings with numerous live witnesses including experts from both sides.  *Fourth*, the Court already had multiple rounds of briefing on standing.  (*See*, *.e.g.*, Dkts. 83, 234, 1050-51, 1061, 1066-67, 1071, 1073-75, 1160, Aug. 19, 2021 Tr. at 19:15-39:1.) *Fifth*, at least one member of the Eleventh Circuit panel acknowledged standing in this case.  (Dkt. 1388-2 at 25:6-12).  *Sixth*, the Court has been deeply involved in

much of the discovery development through many hearings and filings, including reviewing voluminous deposition testimony and expert reports. (*See, e.g.*, Dkts. 1130, 1131, 1278, 1370, 1390.) Defendants must "show[] that there is no genuine dispute as to any material fact."[1] Fed. R. Civ. P. 56. They cannot make this showing, which should be apparent from the Court's already-extensive involvement with the record in this case—and which the Court will see if and when Defendants file a summary judgment motion.

Moreover, Defendants do not dispute that even if they somehow could make the requisite Rule 56 showing, this Court has discretion "to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing." *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991). As the Fifth Circuit explained:

> The Supreme Court has recognized that, even in the absence of a factual dispute, a district court has the power to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." We, too, have recognized that (except in cases of qualified or absolute immunity) a district court "has the discretion to deny a [motion for summary judgment] even if the movant otherwise

---

[1] State Defendants cite *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), which notes: "Of course, a party seeking summary judgment always bears the *initial responsibility* of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (emphasis added)

3

successfully carries its burden of proof if the judge has doubt as to the wisdom of terminating the case before a full trial."

*Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Veillon v. Expl. Servs.*, 876 F.2d 1197, 1200 (5th Cir. 1981)).  Defendants entirely ignore this well-settled principle and the Supreme Court's *Anderson* decision, and cite no contrary authority.  In short, this Court can—and should—deny any summary judgment motion from Defendants regardless of the showing they might make, especially because a matter of such critical public importance deserves the vetting of a full trial.

Further, even if this Court needed Plaintiffs to respond to a summary judgment motion from Defendants in order to deny the motion, the Court should—allow Plaintiffs to respond by presenting their full evidence at trial rather than defending their case *twice*.  Defendants insist that Plaintiffs do so "based on the embryonic facts that exist[] before trial, as opposed to the fleshed-out facts [to be] developed at trial."  *Black*, 22 F.3d at 572 n.6.  The Court should decide any summary judgment motion after the close of trial or at least Plaintiffs' presentation of evidence at trial.[2]  (Dkt. 1403 at 3-4.)  Again, Defendants do not address this

---

[2] As in the *Black* case, forcing Plaintiffs to present their case on an "embryonic" summary judgment record "seems to be [Defendants'] motivation in asking" this Court to decide this case on a summary judgment motion.  22 F.3d at 572 n.6.

4

approach at all, much less dispute the Court's well-established discretion to do so.

Defendants' claim that Plaintiffs' proposed approach "is unsupported by their own authority" mischaracterizes that authority.[3] (Dkt. 1412 at 2-3.) Their only response to *Enwonwu v. Fulton-Dekalb Hospital Authority*, 286 F. App'x 586, 595 (11th Cir. 2008), is to criticize Plaintiffs for "disregard[ing] the second half of the sentence" Plaintiffs quoted—language that merely indicates that the "broad discretion" courts enjoy "in deciding how best to manage the cases before them" *includes* "whether to consider untimely motions for summary judgment." (*Id.* at 4-5.) But Defendants admit that language has no bearing here, because Plaintiffs did not object to a summary judgment motion as untimely. That this Court's "broad discretion … to manage the cases before" it "extends to" circumstances not at issue here in no way indicates that discretion somehow *excludes* Plaintiffs' proposed approach to summary judgment. Defendants' only response to the *Black* and *Hayes* decisions is to ignore the propositions for which they were cited (Dkt. 1412 at 7)—namely, that this Court can deny even a well-supported motion for summary judgment. 22 F.3d at 572; 943 F.2d at 1297. Likewise, regarding *Bolden v. Winkleman*, 19 F.3d 21 (7th Cir. 1994), Defendants' only response is to dismiss it

---

[3] Defendants wrongly claim that Plaintiffs "rely upon four cases from the past thirty years to support their request." (Dkt. 1412 at 4.) Defendants ignore many of Plaintiffs' authorities, conceding they have no rebuttal.

as "not precedential"—which of course does not mean it's unpersuasive or wrong. (Dkt. 1412 at 7-8.) Again, they do not dispute this Court's discretion to rule on a summary judgment motion before or after trial, and they cite no contrary authority.

Finally, Defendants' heavy reliance on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) is misplaced. (Dkt. 1412 at 6.) Again, Plaintiffs have not asked that this Court "fail[] to rule on significant pretrial motions before issuing dispositive orders." (Dkt. 1412 at 6 (quoting 123 F.3d at 1367).) Further, the "significant pretrial motion" at issue was a motion to dismiss, *not* a summary judgment motion. 123 F.3d at 1359-60. The "burdens of allowing a dubious claim to remain in the lawsuit" that Defendants emphasize (Dkt. 1412 at 6) concerned discovery, which is not the case here, as this Court ruled on Defendants' motion to dismiss years ago, and discovery is nearly complete.

    B.    *Summary Judgment Briefing Would Greatly Waste the Court's and Plaintiffs' Already-Constrained Time and Resources*

Defendants identify no efficiency or judicial economy from summary judgment proceedings. They ignore that this Court is the ultimate factfinder. Having Plaintiffs present their case to the factfinder *twice* and the Court address the merits of this case *twice* is directly contrary to judicial economy. Defendants do not dispute that full briefing and a decision from this Court on summary judgment before trial will (i) inject many months of delay into this case; (ii) force

6

Plaintiffs to expend enormous time and money addressing the "substantial" record here *twice* (Dkt. 1412 at 8); and, again, (iii) require this Court to address the merits of this case *twice*. This is the opposite of "expeditious disposition" of this case.

In Defendants' cited authority, *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188-89 (11th Cir. 2005), the Eleventh Circuit concluded that the "cost and expense" that might have been avoided through summary judgment likely was attributable to the defendant's "failure to move for summary judgment" on the key issue "as soon was practical . . . ." 419 F.3d at 1189. The Eleventh Circuit expected the defendant "to schedule any necessary depositions promptly and then move for summary judgment on this ground at an early stage in the proceedings" if it believed the plaintiff's case to be so weak, but it didn't. *Id.* at 1188. Likewise, here Defendants delayed depositions until the final days of discovery and have not moved for summary judgment in the nearly five years this litigation has been proceeding, rendering their "cost and expense" arguments empty, as in *Cordoba*. Also as in *Cordoba*, Defendants here were "aware of all facts" regarding the key issues in the case "from the outset of [the] litigation." *Id.* at 1187. They have had unfettered access to their own voting system and yet persistently chose the "head in the sand" approach to this litigation (and to the serious failings with that system) this Court warned against years ago. (Dkt. 309 at 45.)

7

Defendants' reliance on some purported distinction between Plaintiffs' claims is misplaced. (Dkt. 1412 at 9.) *First*, that Plaintiffs are two groups represented by distinct counsel proceeding under distinct amended complaints (after initially filing a joint complaint) says nothing about the efficiency or judicial economy of summary judgment briefing.

*Second*, Defendants' claim that "those complaints assert seven different causes of action" is misleading. (*Id.*) Defendants identify no specific substantive differences in the relief sought. Nor do they dispute that fundamentally "there is one pending issue for the Court to decide: whether Georgia's current Dominion voting system is sufficiently secure and reliable to protect the Constitutional right of Plaintiffs to vote and have their vote counted as intended."[4] (Dkt. 1403 at 6 (citing Dkt. 964 at 4, 19-78; Dkt. 785-1).)

*Third*, Defendants' claim that "each Plaintiff group has consistently sought different relief based on different claims with each round of preliminary injunction motions" is demonstrably incorrect. (Dkt. 1412 at 9.) Both Plaintiff groups seek

---

[4] Defendants' argument that "at least some claims remain in Plaintiffs' complaints which even they admit are moot" presumably refers to the DRE claims and is not well taken. (Dkt. 1412 at 12 n.5.) Those remain *only* because *State Defendants* opposed their dismissal (Dkt. 1201) and have rebuffed Plaintiffs' offers to stipulate to their dismissal. To argue now that dismissing those claims warrants the substantial cost and burden of summary judgment briefing is disingenuous at best.

8

an injunction against Georgia's current voting system so as to protect the right to vote.[5]  (Dkts. 627, 628, 785, 809.)

*Fourth*, Defendants wrongly argue that "[b]riefing on an evidentiary record will, for one, clearly identify what actual burden is alleged relative to Plaintiffs' claims" and "will assist in delineating precisely what imposes this burden as well … and whether claims on ancillary matters are encompassed in the complaints." (Dkt. 1412 at 10-11.)  Defendants ignore that there already has been extensive briefing on these issues on their motions to dismiss and on Plaintiffs' preliminary injunction motions, which were decided "on an evidentiary record."  (Dkts. 375, 964.)  Defendants offer no basis for believing that these issues would be more efficiently and cost-effectively addressed on summary judgment rather than at trial, when the parties can present all their evidence and the Court can consider it just once more.  Doing that *twice* is neither expedient nor sensible.

*Fifth*, Defendant liken this case to the *Fair Fight* case by claiming similarity without specifics.  But the *Fair Fight* case involved "five constitutional and statutory challenges based upon *factually distinct 'theories* of voter suppression.'" (Dkt. 1403 at 5-6.)  Here, Plaintiffs share a fundamental theory of constitutional

---

[5] State Defendants cite only two filings from years ago for their argument.  (Dkt. 1412 at 10.)  Those filings predate Plaintiffs' operative complaints and the subsequent cooperation between the Plaintiff groups in pursuit of shared goals.

9

violation: that Georgia's current voting system is so lacking in basic election security in a climate of advanced persistent threats directed at U.S. elections, including specifically in Georgia, that Defendants' challenged conduct unlawfully infringes Plaintiffs' respective individual rights to vote (and to equal protection). State Defendants offer no way for this Court to "parse" this theory on summary judgment as the *Fair Fight* court did with the "factually distinct theories" there.

The most expedient and cost-effective approach is to proceed promptly to trial, where both sides can present all their evidence on the pending claims and this Court can finally resolve those claims in this case on the merits *once and for all.*

### C.   *State Defendants' Standing Arguments Fail (Again)*

Plaintiffs will not repeat their prior arguments regarding standing. Rather, they briefly refute Defendants' latest arguments.

*First*, Defendants' argument that the one-plaintiff rule does not apply because Plaintiffs purportedly are seeking different relief (Dkt. 1412 at 9) fails for the reasons discussed above. All Plaintiffs are seeking an injunction against the required use of BMDs for in-person voting, among other things. Thus, Curling Plaintiffs have standing just as Coalition Plaintiffs do, as State Defendants implicitly acknowledge. (Dkt. 1412 at 10 (conceding that a plaintiff may rely on the one-plaintiff rule where it does *not* "seek[] damages or remedies distinct from

those sought by the plaintiff with standing").)  Defendants' argument that this Court must "separately analyze[]" each Plaintiff's standing, even for the same claims, because they appear in distinct complaints wrongly elevates form over substance and contravenes their own articulation of the law.  (*Id.* ("The one-plaintiff rule provides that when one party has standing to bring a claim, the *identical claims* brought by other parties to the same lawsuit are justiciable").)

*Second*, Defendants' argument that "[t]he same generalized grievance that prohibits the individual plaintiffs from having standing is likewise an obstacle to the Coalition's standing" ignores the recent Eleventh Circuit argument.  (Dkt. 1412 at 9 n.4.)  It also relies solely on an out-of-circuit district court case that explicitly applied D.C. Circuit law on organizational standing, which that court observed "is not a model of clarity."  *CREW v. U.S. Off. of Special Couns.*, 480 F. Supp. 3d 118, 127 (D.D.C. 2020).  And rather than show how D.C. Circuit law on organizational standing applies in the Eleventh Circuit (it doesn't), Defendants rely on an observation that the plaintiff there "may not 'employ a federal court as a forum in which to air ... generalized grievances about the conduct of government'" (Dkt. 1412 at 9 n.4.)  But this observation was made only after the court found that the plaintiff had "not established the requisite injury to its interests" or the requisite diversion of resources (480 F. Supp. at 131-33), which is unlike the showing CGG

11

has made here, as suggested in the recent Eleventh Circuit argument.

In sum, Defendants offer no justification for requiring all parties to brief Plaintiffs' standing *yet again*, especially after this Court already rejected Defendants' arguments multiple times and given that the Eleventh Circuit just recently appeared equally unreceptive.

## II. Discovery regarding Coffee County Voting System Breach

*First*, Defendants ignore that this Court already authorized the discovery Plaintiffs are seeking regarding this issue (June 7, 2022 Tr. at 27, 34-36), except for the narrow requests at issue in Coalition Plaintiffs' Joint Discovery Dispute Statement (Dkt. 1360) and Plaintiffs' request for their experts to access the Coffee County EMS server that State Defendants seized last year (Dkt. 1387).

*Second*, Defendants' argument that Plaintiffs did not timely seek discovery regarding this issue improperly seeks reconsideration of the Court's rulings and ignores that Defendants did not disclose in discovery what has come to light: that they opened an investigation no later than May 2021 into potential unauthorized access to Coffee County voting system equipment and seized the EMS server (*and the ICC, as Plaintiffs just recently learned*) almost immediately thereafter. They withheld this important information in discovery responses and depositions, and refused to verify under oath an interrogatory response denying such access. (*See*,

12

*e.g.*, Dkts. 1177 at 1-4; 1178 at 3-5, 16-18; 1370-4 (Barnes) at 102:25-103:12, 106:1-22; 1370-5 (Sterling) at 171:17-175:15, 253:9-254:23, 258:5-259:22.)  And they have provided no information in response to this Court's directives except for a single document indicating standard testing of an EMS server.[6]  (Dkt. 1409 at 6-8.)  Given their unclean hands on this issue, their claims of delay are meritless.

*Third*, State Defendants ignore the obvious importance of this issue.  Their only remaining rebuttal to Plaintiffs' showing of system vulnerabilities—given Dr. Halderman's findings, which CISA validated, among other evidence—is the unsubstantiated claim that bad actors cannot realistically access any component of Georgia's voting system.[7]  What happened in Coffee County bears directly on the validity of that defense, and what State Defendants have known about those events bears heavily on their seriousness about election security and their credibility.

*Fourth*, Defendants' unsubstantiated claim that the investigation is *still*

---

[6] Defendants Ed Lindsey and Jan Johnston have produced *no* documents despite multiple requests from Plaintiffs.  Those likely would include documents regarding the Coffee County issue given the ongoing investigation during their tenure (as well as issues concerning the 2020 Risk Limiting Audit effectiveness heard in the March 2022 meeting, among other issues).

[7] Ga. Sec'y of State (Jan. 27, 2022), https://sos.ga.gov/news/secretary-raffensperger-calls-j-alex-halderman-agree-release-secret-report-and-pre-election; Atlanta Journal-Constitution (Feb. 11, 2022), https://www.ajc.com/politics/us-cybersecurity-agency-reviews-hacking-risk-to-georgia-voting-system/UQ4LHNUL3VGNLM7UIX6VNKDUVE/.

ongoing demands discovery, as this Court already found. That State Defendants purportedly are *still* investigating this situation over a year after they were apparently first alerted to the potential unauthorized access to Coffee County voting system equipment highlights the seriousness of the situation.[8] (Ex. A.[9]) That said, their representations to this Court that the investigation is ongoing directly contradict Gabriel Sterling's claim months ago that Defendants *completed* the investigation and purportedly confirmed the intrusion did not happen.[10]

*Fifth*, State Defendants' tit-for-tat approach to discovery, claiming they are entitled to suddenly seek entirely new discovery (such as CISA's review of Dr. Halderman's findings) is wholly improper and untimely. CISA received Dr.

---

[8] That at least one person involved is now asserting the Fifth Amendment further confirms the seriousness of the situation. (Dkt. 1411.)

[9] The fact that Francis Watson, the former head of the Secretary's investigations unit, was tasked with investigating this issue over a year ago further confirms the extreme relevance of the investigative files State Defendants refuse to produce, including Ms. Watson's emails and other investigative employees or agents. State Defendants also refuse to produce a privilege log (or otherwise substantiate their privilege claim, per Rule 26(b)(5)) while claiming that *all* documents regarding the reported Coffee County voting system breach are somehow privileged. And they refuse to comply with this Court's directive to share whether they have enlisted Dominion (or anyone else) to try to access the seized Coffee County EMS server (or ICC). (June 7, 2022 Tr. at 28.)

[10] The Carter Center, *Restoring Confidence in American Elections*, YouTube (Apr. 29, 2022, uploaded May 9, 2022), https://youtu.be/PbB_c_PX8D8%20at%20approximately%2035:30, at 35:30.

14

Halderman's report on February 2, 2022. (Dkt. 1314.) Defendants chose not to pursue any discovery regarding that process, and it is far too late to do so now—especially given State Defendants twice opposed that very same discovery and specifically acknowledged that they were not seeking it. (June 7, 2022 Tr. at 56:3-10.) Nor have they articulated any need for any further discovery. But if the Court were to order discovery regarding CISA's evaluation, it would have to be mutual, requiring—for example—Defendants and Dominion to provide discovery regarding all their analyses and communications relating to that work, including with CISA and any other entities or individuals.

## CONCLUSION

The Court should promptly deny any summary judgment motion Defendants file for the reasons above or hold it in abeyance for resolution at or after trial. Either approach is well within this Court's undisputed discretion and will avoid duplicative and unnecessary work and expense for the Court and Plaintiffs. The Court also should (again) order State Defendants to comply with its prior discovery directives regarding the reported Coffee County voting system breach and State Defendants' election-security-related investigations, including producing relevant documents and appearing for a Rule 30(b)(6) deposition. The Court should set prompt deadlines for the completion of all discovery by State Defendants.

Respectfully submitted this 8th day of July, 2022.

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Veronica Ascarrunz (*pro hac vice*) | Adam M. Sparks |
| Hannah R. Elson (*pro hac vice*) | GA Bar No. 341578 |
| MORRISON & FOERSTER LLP | KREVOLIN & HORST, LLC |
| 2100 L Street, NW, Suite 900 | 1201 West Peachtree Street, NW |
| Washington, DC 20037 | Suite 3250 |
| (202) 887-1500 | Atlanta, GA 30309 |
| | (404) 888-9700 |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

| | |
|---|---|
| /s/ Russell T. Abney | /s/ Robert A. McGuire, III |
| Russell T. Abney | Robert A. McGuire, III |
| Georgia Bar No. 000875 | Admitted Pro Hac Vice |
| WATTS GUERRA, LLP | (ECF No. 125) |
| 4 Dominion Drive, Building 3 | ROBERT MCGUIRE LAW FIRM |
| Suite 100 | 113 Cherry St. #86685 |
| San Antonio, TX 78257 | Seattle, Washington 98104-2205 |
| (404) 670-0355 | (253) 267-8530 |

*Counsel for Plaintiff Coalition for Good Governance*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, a copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF PROCEEDING TO TRIAL AND DENYING OR DEFERRING SUMMARY JUDGMENT AND REGARDING COFFEE COUNTY VOTING SYSTEM BREACH DISCOVERY** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross