1

2

3

4

5

6

7

8   The following is the PDF of an official transcript.  Official

9   transcripts may be filed in CM/ECF only by the official Court

10  Reporter and will be restricted in CM/ECF for a period of 90

11  days. You may cite to a portion of the attached transcript by

12  the docket entry number, referencing page and line number,

13  only after the Court Reporter has filed the official

14  transcript; however, you are prohibited from attaching a full

15  or partial transcript to any document filed with the Court.

16

17

18

19

20

21

22

23

24

25

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF GEORGIA
 2                  ATLANTA DIVISION

 3

 4  Donna Curling, et al.,      )
            PLAINTIFFS,         )
 5                              )   Civil docket number
                                )
 6          ,                   )
            -v-                 )   1:17-cv-2989-AT
                                )
 7  Brad Raffensperger, et al., )
            DEFENDANTS.         )
 8                              )

 9

10

11            Transcript of telephone conference

12            before the Honorable Amy Totenberg,

13            United States District Senior Judge,

14               July 15, 2022 at 9:00 a.m.

15

16

17

18

19

20        Proceedings recorded by mechanical stenography,

21            transcript produced by computer.

22

23            Melissa A. Brock, RPR, RMR,
              Federal Official Court Reporter
24        75 Ted Turner Drive, SW, Suite 1946
              Atlanta, Georgia 30303-3309

25
```

1                    APPEARANCES OF COUNSEL:

2

3   For Donna Curling:

4        David D. Cross, Esq.
         Halsey Knapp, Esq.
5        Adam M. Sparks, Esq.

6

7   For the Coalition for Good Governance:

8        Bruce Brown, Esq.

9

10  For the State Election Board:

11       Carey A. Miller, Esq.
         Vincent Russo, Esq.
12       Joshua Belinfante
         Alexander Denton
13

14  For Coffee County:

15       Nicholas Kinsley, Esq.

16

17  For the Fulton Board of Registration and Elections:

18       David Lowman, Esq.

19

20  For Fox News Network

21       Charles Peeler, Esq.

22

23

24

25

P R O C E E D I N G S

1

2      THE COURT:  Good morning.  Let me just ask each of

3  the counsel who are going to take chief responsibility for

4  speaking today to announce themselves and anyone who is

5  present on your -- part of your team.

6      MR. KINSLEY:  This is Nick Kinsley.  I'm here for

7  Coffee County and the individual board members and employees

8  that we represent.

9      THE COURT:  Thank you.

10      MR. CROSS:  Your Honor, this is David Cross for the

11  Curling plaintiffs and Halsey Knapp and Adam Sparks are on for

12  us as well.

13      THE COURT:  Thank you very much.

14      MR. BROWN:  Your Honor, this is Bruce Brown.  I'm

15  here for Coalition plaintiffs.

16      THE COURT:  Thank you, Mr. Brown.

17      MR. PEELER:  Good morning, your Honor.  This is

18  Charles Peeler on behalf of the intervenor, Fox News Network.

19      THE COURT:  Very good.

20      MR. RUSSO:  Good morning, Your Honor.  This is

21  Vincent Russo.  I'm here with Carey Miller and Josh Belinfante

22  on behalf of the State.

23      THE COURT:  Great.

24      MR. SNEPP:  Good morning, Your Honor.  This is

25  Reginald Snepp.  I'm here with Parker Daniel Keyboard on

1  behalf of representing the intervenor, My Pillow.

2        THE COURT:  All right.  So as I understand it and,

3  you know, reflected most recently relative to Coffee County,

4  just so also it's possible that Coffee County's counsel does

5  not want to necessarily stay on this phone call.  Coffee

6  County removed its or withdrew its objections and motion to

7  quash.

8        So, does that mean -- let me just clarify.  I assume

9  that means you are agreeing to allow the requested deposition

10 to proceed or does it mean something else?

11       MR. KINSLEY:  Yes, Your Honor.

12       Jennifer Hertzog is the main attorney for Coffee

13 County in this situation, but she's just unavailable today.  I

14 think they worked out the Coffee County depositions will go

15 forward no later than August 15th and the documents produce --

16 will be produced, I believe, two weeks in advance.

17       The James Lawrence deposition is going forward

18 either Monday or Wednesday.  I think that's still up in the

19 air.

20       THE COURT:  All right.  Mr. Russo, is the State

21 planning -- I know generally what you'd do about the Coffee

22 County matter, but are you -- is Coffee County -- is the State

23 planning to participate in that?

24       MR. RUSSO:  Yes, Your Honor.  The State is planning

25 their cross notices.  Our plan is to participate in those

1  depositions.

2        You know, the one question, we will probably be

3  getting to this, is just kind of the status of discovery in

4  the case.

5        THE COURT:  Right.

6        MR. RUSSO:  Right.

7        THE COURT:  Right.

8        MR. RUSSO:  We do intend to participate.

9        THE COURT:  Okay.  All right.

10       Well, it seems to me from what everyone has provided

11  and indicate, that we need to sort of have a kind of --

12  obviously things have drifted more than I had hoped, and there

13  are some cleanup matters that have to be taken care of, but we

14  need to have a firm date for finishing it.

15       And with respect to the question of motion for

16  summary judgment, there is no dispute, as I read everyone's

17  brief, that at very minimum, the State will proceed with

18  preparing a motion for summary judgment.

19       I will say I think it's doubtful that I'm going to

20  say that the plaintiffs won't have to respond.  I'm not

21  saying -- I'm not ruling it out that there are still obviously

22  issues that don't -- that need to go to trial.  It may be that

23  I'll decide that that's something specific but, you know,

24  that's really hard to predict without having read the motion.

25  And if there is anything that I'm going to exempt, I think we

1   need an absolute schedule, and -- without any doubt -- and I'd

2   like to sort of factor in the fact that the time that we're

3   going to -- whatever amount of time that we are going to have

4   to do, spend on wrap up -- you know, we work, obviously, to

5   begin on many of the issues for the State and there are likely

6   grounds for moving, you know, immediately.

7          Because some of them are ones that we -- that have

8   been raised consistently and the plaintiffs and the defendants

9   know what those grounds are and, you know, I don't think that

10  they are unnecessarily so seriously impacted by some of them

11  lack upon the evidence.  Some of them might be, but that's up

12  to you.

13         But I will go through that, but I think we should

14  just discuss the remaining discovery and then come up with a,

15  you know, kind of basically a hard and fast date, and then may

16  be items that I don't know about or that I don't think, in

17  fact, need to proceed.

18         But, the last -- we are talking about August 15th is

19  the remaining deposition at Coffee County, and I wanted to

20  understand what seems to be the most relative to that and

21  anything that's even tangential to that.

22         I do think that the State hasn't produced their

23  witnesses, Mr. Beaver and Mr. Sterling, in their 30(b)6

24  capacities.  It did not provide adequate testimony about

25  questions that were being asked.  And that -- that's the

1  only -- that's the other part of the remaining cleanup that
2  maybe and I think that they were -- those were topics that
3  were identified and that needs to go ahead.  It may not need
4  to go ahead -- it may not need an enormous amount of time, in
5  my mind, but because this case is not -- the gravamen of this
6  case is not about Coffee County.  But to the extent that it
7  deals with how you deal with a breach or how the State dealt
8  with the breach and what happened, it's relevant.  I don't
9  know what else is really relevant about it.  That's not clear
10 to me.
11         But, Mr. Russo, what I have from the plaintiffs'
12 counsel indicates that there hasn't been any response about
13 the variety of their requests to the State, and maybe that's a
14 function of how extraordinarily busy counsel has been with a
15 number of other cases.  Maybe it doesn't actually reflect the
16 position that you're taking.  But if you could clarify that, I
17 would be appreciative.
18         MR. RUSSO:  Yes, Your Honor.
19         We had a conference call with counsel for the
20 plaintiffs last week to talk through a number of the discovery
21 issues.
22         We attached some back and forth on 30(b)6 topic.  I
23 believe that Mr. Belinfante sent a proposed 30(b)6 topic, our
24 revised 30(b)6 topic, I should say, to Mr. Cross yesterday,
25 and we also had discussions about documents that -- and just

1 the new SEB board members' obligations to produce documents or
2 even locate, you know, to conduct a search for documents that
3 are responsive to all of the RFP's that have been served in
4 this case to date.

5        We have -- Mr. Cross sent a letter a couple of weeks
6 ago and we -- that highlighted a few RFP's and we've already
7 had the SEB members conducting a search -- or the new SEB
8 members, so Judge Duffy, Mr. Lindsey, and Ms. Johnson or Dr.
9 Johnson, I should say, conducting, you know, their own
10 internal search for documents responsive to that.

11        We have to have that search done by -- I think, what
12 did we say, next Friday?  So we just got some additional
13 document requests this morning from Mr. Cross that we'll have
14 to address, so that's ongoing.

15        And then I believe our plan is to have the SEB
16 investigations that you had spoken with us the last time
17 about, those documents produced.  I think it was next, next
18 week.

19        THE COURT:  Mr. Russo, are you through or are you
20 talking to somebody else at this point or looking at your
21 notes?

22        MR. RUSSO:  I'm sorry.  I think that's it.

23        THE COURT:  Okay.  Great.

24        MR. CROSS:  Your Honor, this is David Cross.  It's
25 helpful to address a couple of points here.

1          The documents that Your Honor had asked the State to

2    produce regarding the SEB investigations, they had indicated

3    those would start on a rolling function this week.  That's

4    what we had confirmed on Friday.  It sounds like maybe that's

5    not going to start until next week.

6          THE COURT:  I believe it is Friday.

7          MR. CROSS:  Right.  It sounds like that is

8    forthcoming.  The document requests that Mr. Russo indicated

9    that I sent over today, those are not new requests.  I just

10   want to be clear.  They asked if we could identify among the

11   document requests that we had served, a subset that we think

12   are most important, and so we did that.  It took some time to

13   go back and get through that, and so we sent over this morning

14   definite requests among the ones that we served, that we asked

15   them to really focus on.

16         In all of those requests, frankly, I only really

17   focused on one topic, which is security or reliability systems

18   or unauthorized access with the BMD system and its component

19   parts.  So I just want to make sure it's not something new.

20         THE COURT:  Okay.  All right.

21         MR. MILLER:  Your Honor, this is Carey Miller.  I do

22   just want to briefly say with respect to the production, we

23   had some technical difficulties that are beyond my knowledge

24   on getting the investigative reports loaded into our document

25   review platforms.  That's slowed us up a little bit, but long

1  story short, we will be done with it next week.  We apologize

2  for --

3            THE COURT:  Okay.  All right.  Thank you.

4            And so, once -- Mr. Cross, does that take care of

5  what you believe is outstanding or is there other

6  categories -- or are there other categories of documents you

7  are still looking for?

8            MR. CROSS:  The biggest category, Your Honor, is --

9  and it may have related to Coffee County.  In particular, he

10 sent their investigations into unauthorized access for the

11 system.  It sounds like some of that may be captured on what's

12 coming, but with Coffee County in particular, the position

13 we've gotten is that they won't produce any documents.  That

14 even if we do agree on a topic for the 30(b)6 deposition, and

15 it looks like we may be close on that with what Josh sent over

16 yesterday, what we were told last Friday is that that

17 deposition is likely just going to be them telling the witness

18 not to answer on privilege grounds.

19           So I think where the parties need to be at issue is

20 the State's view seems to be that they can assert a blanket

21 investigative privilege objection and we don't get any

22 information about Coffee County.

23           Our view on that is, one, they've never

24 substantiated that.  The only indication that there is any

25 ongoing investigation is from representations made by the

1  Secretary's counsel.  As we've pointed out, those

2  presentations are not consistent with what Gabriel Sterling

3  publicly said months ago, and we don't have any documents.  I

4  mean literally not one document that indicates that there is

5  any ongoing investigation.

6         And while, certainly, some parts of an ongoing

7  investigation might be privileged, the facts are not.  And so,

8  I think we just need to get help from Your Honor as to how to

9  deal with that, because we can net it out.

10        Our view is, one, they haven't substantiated the

11  privilege.

12        Two, to the extent there was a privilege, it's

13  waived because it's been asserted for months under Rule 26.

14  We've never gotten anything to substantiate it or to show that

15  there is an ongoing investigation.

16        THE COURT:  Regarding the privilege log.

17        MR. CROSS:  No privilege log.  I mean nothing.  Not

18  any information about anything other than -- it looks like we

19  lost the judge.  Let's wait a moment.

20             (Judge Totenberg reconnects to call.)

21        THE COURT:  This is Judge Totenberg again.

22        MR. CROSS:  Judge, can you hear us?

23        THE COURT:  Yes.  I'm sorry.

24        So my question to you when I dropped off was did

25  you -- are you saying they've never provided you a privilege

1 log the last time?  Because when you said you have gotten

2 nothing, did you mean you had gotten no documents and no

3 privilege log?  Is that what you meant?

4        MR. CROSS:  Yes, Your Honor.  It's that, but I would

5 see it even more broadly.  I mean we just haven't gotten any

6 real information at all to substantiate a privilege.

7        THE COURT:  Um-hmm.

8        MR. CROSS:  We have spoken to a number of people

9 involved in the Coffee County situation.  The lawyers for

10 Coffee County, Mr. Barnes.  There is not a single individual

11 involved with this situation who tells us it's ever heard from

12 the Secretary of State's Office or any investigation.

13        And so, again, the only thing we have is counsel --

14 and I'm not suggesting that counsel doesn't believe what

15 they're saying -- but we only have counsel telling us there is

16 an ongoing investigation.  So we can't find any evidence of

17 that, you know, people who you would expect to be

18 investigated.

19        Mr. Sterling publicly said in April that their

20 investigation is over and they've concluded that whatever was

21 alleged in Coffee County did not happen.  We don't have any

22 documents indicating that an investigation is ongoing.

23        So our view is Your Honor should order them to

24 produce anything and everything they have on Coffee County,

25 because there's no evidence of an ongoing investigation.  So

1   there is no privilege.  And even if there was privilege, it's

2   waived as we've been asking for months to substantiate it.

3            And, lastly, Your Honor, facts are not privileged.

4   So while there may be some internal process documents or

5   communications about the investigation that might be

6   privileged, the fact results are not.  And I certainly don't

7   think it would be appropriate in a deposition to instruct a

8   witness not to disclose facts.

9            So that, I would say, Your Honor, is the key issue

10  that --

11            THE COURT:  All right.

12            MR. CROSS:  -- that we need to get.

13            THE COURT:  And Mr. Russo.

14            MR. MILLER:  Your Honor, this is Carey Miller, Your

15  Honor.

16            THE COURT:  Okay.

17            MR. MILLER:  I guess to kind of start from the

18  beginning here, you know, with respect to a privilege log,

19  absent these investigative reports, you know, there is nothing

20  to add to our privilege log right now.  So I'm not really sure

21  what the purpose of that is.

22            Long story short, you know, upon the conclusion of

23  this production of investigative reports, if something is

24  withheld for privilege, it will be added to our privilege log,

25  which we have already provided to plaintiffs.  I do want to be

1  clear that, you know, we had extended discovery in this case

2  and we've provided a privilege log before.  There's no

3  indication that it's going to be otherwise.

4          And so right now trying to kind of prospectively

5  deal with an investigative privilege issue I think becomes a

6  little bit difficult on the document front for that reason.

7  Because outside of that, we don't have a request right now,

8  other than what is coming in for the State Election Board

9  members.  So if there is anything withheld, it will be added

10 to the privilege log when we're done with the production.

11         Second, with respect to the deposition aspect, you

12 know, I think this idea that there is a blanket assertion of

13 investigative privilege is not entirely correct.  You know,

14 first of all, sitting here today, there is no active

15 investigation ongoing.  One that, frankly, you know, depending

16 on the circumstances could raise serious issues.  I don't

17 know.

18         And at the same time, plaintiffs are -- seem to be

19 conducting their own investigation with depositions.  And with

20 respect to any individual, you know, from the Secretary's

21 office that is put up on this continued 30(b)6, the assertion

22 of an investigative privilege will depend entirely on what the

23 question is being asked.  You know, I just don't know that I

24 can predict that sitting here today.

25         THE COURT:  Well, I'm a little confused here.  I

1  mean there are -- are you saying that not -- that you can't

2  produce a privilege log until you complete the investigation

3  because you don't know what documents are in front of you

4  when, in fact, there -- some part of this matter went to the

5  Attorney General's Office, and when the server itself was

6  delivered to the Secretary of State's Office, they have

7  nothing that you -- there is nothing that you have at all to

8  actually produce a log about?  That doesn't make sense.

9        MR. MILLER:  No, Your Honor.  And I apologize, if I

10  was less than clear.  The point was that of the documents for

11  which an investigative privilege claim may be made, we are not

12  finished reviewing those right now.  Those will be done by the

13  end of next week, in which case, the documents will be added

14  to the privilege log.

15        But outside of these investigative reports that

16  we're reviewing, you know, that we've discussed before, it's

17  not entirely that -- two buckets, those investigative reports

18  we are reviewing, and there is secondarily the State Election

19  Board members, the new State Election Board members, that are

20  producing documents.  It's not entirely clear to me what

21  additional request is out there for which a claim of privilege

22  would be asserted.

23        THE COURT:  Well, my understanding, and may be I'm

24  incorrect, is that -- but from what I could tell, the State

25  has kind of a generic privilege log over anything related to

1  the handling of the Coffee County matter or the server or what

2  happened afterwards and whether it was examined, what was

3  examined, what was not examined, and that -- what transpired

4  and that's what I -- I mean, I gather that there is only one

5  document and it's a one-page document that would have -- that

6  was transmitted.

7          So I'm really -- that's my question.  I mean are you

8  saying, well, all those -- we are going to assert privilege

9  about that?  We are going to do it by next Friday when we give

10 you the log?  That's one thing.  I mean, I'll deal with that,

11 but I don't know that the executive privilege is that broad.

12 But, you know, if, in fact, it's something -- you mean

13 something else, I just need to get it clarified because

14 nothing has been produced.

15         And when Mr. Beaver, who is over technology, says he

16 has no knowledge of an examination of the server or anything

17 about this, that doesn't smack of executive privilege to me.

18 So who did deal with it then?

19         MR. MILLER:  Your Honor, I apologize.  I don't want

20 to interrupt.

21         THE COURT:  That's all right.  Go ahead.

22         MR. MILLER:  Well, I think with respect to the first

23 group, the bucket of anything, you know, within the

24 investigative files we are reviewing now for which there will

25 be a claim of privilege, you know, that will be added to the

1  log on Friday, next Friday from.

2        With respect to kind of the other aspects you

3  mentioned, I -- may be I'm misunderstanding, but I'm not aware

4  of a pending request, you know, discovery request for those

5  items.  I understood that to be subject to a dispute as to

6  whether it's going to go forward or not at all.  The request,

7  you know, Your Honor, in sum --

8        THE COURT:  Go ahead.

9        MR. MILLER:  -- in sum, Your Honor, we're in a bit

10 of a difficult position because we're essentially responding

11 when -- without discovery requests.  In a good, safe -- in an

12 effort to act in good faith, we're just making the Court aware

13 and the plaintiffs aware, you know, that this is going to, you

14 know, cause additional problems with respect to an ongoing

15 investigation.

16       MR. CROSS:  Your Honor, this is David Cross.

17       Maybe Carey can explain what he means.  I'm not sure

18 what he means when he says without discovery requests.  We

19 have discovery requests that have been pending for years that

20 specifically relate to this issue and we haven't asserted any

21 new requests.  So I'm not sure what the disconnect is.

22       MR. MILLER:  David, I think I went to the extent

23 your prior served requests are going to cover, it's going to

24 be within the investigative files that are being handled on

25 Friday.  To the extent there is discussion about the Coffee

1  County server and, you know, all this other stuff that I last
2  recall, the Court did not permit that kind of, you know,
3  discovery request.  I wasn't aware that there was one, you
4  know, for that.

5       MR. CROSS:  Your Honor, the e-mails I discovered
6  this morning identifies nine different requests, all of which
7  I think or certainly most of which would capture that.  I'm
8  waiting now to see if it gets to documents reflecting actual
9  potential, anticipated suspected alleged security breaches or
10 security vulnerabilities.

11      THE COURT:  That's the outstanding interrogatories
12 that you are saying that they needed to -- request for
13 production that they needed to -- that was from years back or
14 that they need to supplement?

15      MR. CROSS:  Yes, Your Honor.  It's from a RFT
16 document request from August of 2020.  It postdates the new
17 system.  It's not from the DRE era.  There are a number of
18 requests along those lines that certainly capture anything
19 that happened in Coffee County.

20      THE COURT:  All right.  Well, I'm -- I will be --
21 State counsel is going to have to look at those in how they
22 proceed.  I'm going to wait until I get a privilege log and --
23 that is sufficiently particularized that I can actually
24 understand it.  But I will say, you know, I think that my
25 concern, almost the first concern, was really that Mr. Beaver

1  had -- was the 30(b)6 witness who said he had no knowledge of

2  anything about this when he was deposed.  And that

3  Mr. Sterling now says, look, it's all over.

4          So that's -- I mean, I don't think Coffee County is

5  what this entire case is about by any means.  But there are

6  parts of what happened and -- that are potentially relevant,

7  and I'm not going to beat the ground by what happened in

8  Coffee County, but I think this needs to be some direct

9  answers to some of these issues.

10          It's not conceivable that the server got taken or

11  that other people -- some examination of this was made as a

12  procedural matter and then it all ends up being under -- or

13  it's a reality matter as to the facts without thinking about

14  any conclusions.  And then it's all going to be all tucked

15  under executive privilege or investigative privilege.

16          Because, you know, that's -- anyway, but I -- it's

17  premature without my seeing the specific log, and I don't

18  think I've seen or at least I haven't read Mr. Cross's memo

19  that he said he sent this morning with those outstanding ones

20  for me to even in any way comment on it.

21          So I'll deal with it when I get the log and we can

22  all send that, you know, the file on Monday.  I don't know

23  when you are going to bring it up Friday, but it's no

24  chance -- I'm going to be traveling on Friday.

25          MR. BROWN:  Your Honor, this is Bruce Brown.  I

1   don't want to get into the facts too much on the Coffee County

2   matter.  I understand that that's developing.

3        In terms of the relevancy of it, it is true that one

4   major issue that's triggered by Coffee County is how the State

5   deals with the breach as you know, but the other more

6   general --

7        THE COURT:  Mr. Brown, I just need to cough, so I

8   don't want to just blast all over you.

9        Okay.  Go ahead.

10       MR. BROWN:  That's certainly how to deal with it but

11  at another level, the Secretary of State's defense to the

12  Halderman report and the other evidence of the insecurity in

13  the system is primarily that the machines are physically

14  secure.  And that he says that if anybody has access to the

15  system, of course, they can get into it.  He said in the

16  newspaper, of course, someone like Halderman can hack it, if

17  they have enough time with it.

18       What we're finding out in Coffee County is that

19  somebody probably does have access to it, to the -- to the

20  image of the system -- to the system.  And so it's a current

21  real security threat to the election system in Georgia, we

22  believe and also is evidence in our case of the fundamental

23  vulnerability of the system.  So that's why it's important.

24       The other thing is that while we have Coffee County

25  on the phone, it's very curious to us as to what this

1  investigation is at all.  Because we hear from so many

2  different conflicting things.

3       Mr. Sterling says in April that it's over.  Then the

4  State, the Secretary of State says it's ongoing.  Then Coffee

5  County as recently as this week says we've never heard

6  anything from anybody from the State at all.

7       And you can't conduct an investigation without

8  contacting somebody at Coffee County, obviously.  You can't

9  figure out if it was really -- security is really breached if

10 you don't call somebody down there and say what happened.  And

11 they haven't done it.

12       And so we're being told that this is an ongoing

13 investigation but there are no footprints, either documents or

14 anybody saying anything related to any investigation.  That's

15 a serious issue.

16       Substantively, it's serious for the first reason he

17 said, and that is how a state deals with a breach.  They

18 don't -- apparently don't deal with it.  They will say that

19 they're dealing with it, but there is no evidence that they're

20 dealing with it.

21       And so we are going to -- we are going to run into

22 this next week when we get their investigative report.  It's

23 going to be empty or it's going to be an assertion of some, we

24 think, focused privilege.  But that is where this is going and

25 I just wanted to mention that.  Thank you.

1          THE COURT:  All right.

2          MR. CROSS:  Your Honor, if I may, I just need to

3   briefly respond.  You know, first of all, I do want to just

4   keep in mind that this, you know, re-allegation or new

5   allegation surfaced after one of the plaintiffs in this case

6   held a recording for more than a year until they determined

7   that it was worthwhile to pursue and stir up an issue at the

8   close of discovery.

9          Separately from that, with respect to how the POST

10  certified officers at the Secretary of State's Office conduct

11  an investigation you know, if Mr. Brown has got ideas, he's

12  welcome to give those to the officers, but I don't tell them

13  how to conduct their investigation.  I wouldn't expect, you

14  know, a non-law enforcement officer to tell them how to

15  conduct an investigation.

16         Outside of that, Your Honor, you know, this is

17  Exhibit A to the particular issue we have in this case, which

18  is, with respect to an ongoing investigation, these kind of

19  discussions, what they end up doing is compromising the

20  investigation over, you know, what are the investigatory

21  tactics.  And I'm just truthfully not at much liberty for my

22  client to get into what little detail that I know right now.

23         THE COURT:  All right.  I think there is enough for

24  now, but would Coalition's counsel just respond once and for

25  all to the concern that Mr. Miller has expressed about the

1  fact that about the -- what he says is the fact that Ms. Marks

2  held back the information and you all didn't act for a year.

3         MR. BROWN:  Yes, Your Honor.  It was not clear the

4  relevance of the phone call and its importance was not -- at

5  the time that it was made, was not clear to the Coalition

6  until we came back to review it.  As soon as we -- the

7  realization of its relevance was determined, it was produced

8  and it was the subject of testimony.

9         Then, and in effect, it's a little bit of a red

10 herring, Your Honor, because Gabe Sterling testified that he

11 already knew about it.  And so the idea that this was some

12 revelation that was delayed to the State and that they would

13 have done something differently had they had it earlier is

14 simply not correct.

15        And then after they got this information, they've

16 done nothing with it.  And so they do -- that is their only

17 response, Judge, the whole Coffee County thing, is that they

18 should have gotten the recording of that conversation earlier.

19 That's all they say because that's all they have.  I

20 understand that, but they knew about it before and when they

21 got it, they didn't do anything with it.

22        MR. MILLER:  Your Honor, I just have to briefly

23 correct and, you know, maybe there are different

24 interpretations of deposition testimony.  But as I understood

25 Mr. Sterling's deposition testimony when a snippet of the

1  recording was played for him for the first time, he had been

2  previously referring to the Youtube video of this former

3  supervisor adjudicating balance with a sticky note of her

4  password on the screen.

5           This is a situation that I recall we discussed it in

6  the Fall of last year, you know, with respect to these

7  allegations that were kind of coming out around the clock.

8  This specific allegation of chartering a plane and taking

9  people into a server web, that came through the recording.  So

10  I don't want to get down the road of arguing over what

11  deposition testimony means.  You know, that's not the role

12  that we are in right now, but I can't let that just go past.

13           THE COURT:  All right.

14           MR. CROSS:  Your Honor, this is David Cross.  Just

15  briefly, it sounds like we may be wrapping up, but there were

16  a few just very discrete things that we were hoping we could

17  get a deadline from the Court for the State to provide.

18           I know that Your Honor has docket 1421.  We saw it

19  yesterday, there in paragraph 4 --

20           THE COURT:  I do.

21           MR. CROSS:  So if you look at paragraph 4, there are

22  some specific things Your Honor had asked them to provide in

23  prior conferences.

24           For example, you know, whether they've asked

25  Dominion to help access the advance server, the dates the

1  investigation began.  Those things -- those seem like discrete
2  things that we could hopefully resolve today.
3          So, for example, in the first one, they're taking
4  the position as of last Friday -- correct me if I
5  understood -- that even whether anyone has asked Dominion to
6  help access the server, they're arguing that that's
7  privileged.  We just disagree.  That just seems as a matter of
8  fact that they can answer.
9          I don't know why there is trouble with number 2 on
10 the dates.  We have not seen that.
11         Number 3, documents as well as the transfer.  If the
12 only thing they have is the document they have given us, that
13 seems unlikely of these investigations that are dealing, then
14 they would have the test document of a new server, but it
15 seems like there should be more.  But these seems like
16 discreet things may be we could get done since they have
17 already been directed by the Court.
18         THE COURT:  Mr. Miller.
19         MR. MILLER:  Well, I guess my thoughts generally
20 are -- so with respect to the first question, is to -- well,
21 let me take a step back.  With respect to process here
22 generally, you know, I would have anticipated these things be
23 served in a discovery request and not requested in a
24 conference.  I realize they were previously, but it puts me in
25 quite a difficult situation to object to a question of the

1   Court on the basis of the privilege.  So I do just want to ask
2   Your Honor to bear with me for that aspect.

3          With respect to the server via web, what I can tell
4   the Court is that appropriate individuals are reviewing the
5   server.  I really cannot get into details beyond that to the
6   extent they're in my knowledge because they are subject to
7   privilege.  And that goes to specific investigatory tactics as
8   well.

9          And, you know, with respect to these other requests,
10  you know, I'm not -- I'm not entirely sure which discovery
11  requests they are.  I think that was the server, documents.
12  You know, we can conduct an additional search for other
13  documents but we've provided documents that were responsive to
14  the Court's request as to when the server was taken from
15  Coffee County.

16         You know, I think this goes back to what seemed to
17  us to be a motion for contempt but was put into a notice of
18  filing.  But if that's the case, that's what they want to move
19  forward with, then we'll respond to it as necessary.

20              THE COURT:  Do you want to respond?

21              MR. CROSS:  Yes, Your Honor.  We're really just
22  looking for the facts.  No one has suggested contempt, Your
23  Honor.

24              MR. MILLER:  Your Honor, I mean this in the most
25  respectful way.  This is Carey Miller.  We are just not in a

 1   position to have that kind of discussion on this call with all

 2   the individuals.

 3             THE COURT:  All right.  That's fine.  All right.

 4             Well, I will just ask counsel specifically involved

 5   in item 4 to follow up with a phone call and also then to

 6   identify for me later what -- I mean, I thought there was a

 7   basis but, you know, I'm at this point as large as this case

 8   is, I have a lot of other cases, so I'm not going to say that

 9   I remember precisely when I -- from the last phone call what I

10   was relying on.  It seems like a basic objective set of facts

11   that would be helpful.

12             But -- so when framing this matter, I would suggest

13   that the two of you or the three of you talk regarding the

14   actually involved as to that -- this particular matter but

15   also then for the -- again, for the plaintiffs' counsel to

16   identify what outstanding requests were -- these items in

17   number 4 would have fallen within and some method.

18             Counsel for the State.

19             MR. CROSS:  Your Honor, this is David Cross.  We can

20   do that.  I think that's accurate of what we sent over

21   earlier.

22             I did just want to say that it is not the case that

23   for information to be exchanged in the lawsuit that it has to

24   come in a formal discovery request.  Things come up all the

25   time.  And, for example, whether Dominion was asked to access

1   the Coffee County EMS server, we can go back and review the

2   dozens of requests we've produced.  That just doesn't seem

3   worthwhile.

4        THE COURT:  Yeah, I understand.  I understand.  But,

5   if there is something that you think pertains to it, it makes

6   it a lot easier for the Court.  You all ended up being in a

7   dispute about this.  Okay.

8        MR. CROSS:  Yes, Your Honor.

9        THE COURT:  And I know there was an outstanding

10  request for me to do an in-camera review, but I'm not thinking

11  about that until I at least see the results of your

12  conversation as well as a privilege log.  I will consider it

13  and postpone a consideration of that until I review that.

14        As well as I'd like to see the outstanding requests

15  in terms of what you would have thought they would have

16  supplemented their responses about whatever interrogatories

17  request for production.

18        So after Friday when you get all of that, then you

19  can on Monday produce whatever you think was -- this

20  information would have been responsive to and what --

21  provide -- just don't tell me the document number, but

22  actually the cite and then the type of language and cite where

23  it's found in the document number.

24        Okay.  And since this seems to relate to the

25  question of also we don't want to just have a pointless 30(b)6

1  deposition supplement.  We will have to just defer the

2  completion of them until I rule on that.  Because that seems

3  to be the main issue that has to be completed; is that right,

4  those depositions?

5           MR. CROSS:  Yes, Your Honor.  This is David Cross.

6           THE COURT:  Are there any other outstanding

7  discovery matters on the part of plaintiffs' counsel?  I need

8  to go back to look at your document you filed yesterday.

9           MR. CROSS:  Your Honor, I think the one issue that

10 may be ripe, we believe that's ripe, is the joint discovery

11 statement, document 1360.

12           THE COURT:  What's in 1360 right now?

13           MR. CROSS:  That's the joint discovery statement

14 regarding specific document data requests.  It relates to

15 Coffee County as well but it is fully briefed.

16           MR. MILLER:  Your Honor, this is Carey Miller.

17           This document 1360 is kind of what I was discussing

18 earlier as to what is continuing or what is subject to a

19 ongoing dispute right now.

20           This is the Coalition plaintiffs request for the

21 election project packages from Coffee County from

22 November 2020, January 2021, Coffee County EMS information,

23 various information.

24           THE COURT:  Basically Mr. Cross maybe waiting until

25 I see their privilege log.

1      MR. CROSS:  Well, Your Honor, I think the issue with
2  the request here is that there are, you know, there are
3  objections beyond just privilege with this discovery dispute
4  statement.

5      UNIDENTIFIED ATTORNEY:  Your Honor, we agree with
6  that.  I think this is different.  There's not a privilege
7  objection to the items that's in their joint discovery, as I
8  understand it.  It's other objections and it is -- you know,
9  the idea was that it was sort of predicate discovery to help
10 us get access to the underlying data before we got into the
11 deposition.

12      UNIDENTIFIED ATTORNEY:  Your Honor, this was filed
13 in April of this year after we had sent --

14      THE COURT:  Yeah, I haven't printed it for myself.
15 It's 1360 or 1, is that what you said?

16      UNIDENTIFIED ATTORNEY:  Yes, Your Honor, 1360 is the
17 joint statement.

18      THE COURT:  Okay.  What I'm trying to understand is
19 Mr. Cross's arguing.  Are we talking about on that document
20 items Roman numeral I, II, III?  Because everything else seems
21 to be a little bit -- more about their issues that are -- tell
22 me what Roman numerals are you talking about on page 2 of the
23 submission.

24      MR. CROSS:  Yes, Your Honor.  I just pulled it up.
25 It's Roman numeral I through VIII.  That's found up in the

1  broader issues we were discussing.

2          MR. BROWN:  Your Honor, this is Bruce Brown.  I

3  think that's correct.  Six is the investigative files that we

4  have been discussing.  The other ones, the project packages,

5  they're documentation well.

6          THE COURT:  What about number 8?

7          MR. BROWN:  Go ahead, David.

8          MR. CROSS:  I was going to say on that, Your Honor,

9  the reason it's written this way, we were treating -- they

10  were treating the investigative files as extinct.  I mean to

11  the extent that they're documents that aren't part of an

12  investigation.

13          So, for example, we do know that there was -- the

14  only -- I think the only other document we have seen on this

15  is an e-mail exchange that we filed with Chris Harvey, Mr.

16  Barnes and then Ms. Watson saying that they were going to look

17  into whether there was a potential breach when they found the

18  cyber interest card left over from the prior election

19  director.

20          And so to the extent that they're documents outside

21  of the investigation that reference and relate to any sort of

22  concern like that, that should be produced.

23          In category 7 would be the -- 6 would be the one

24  that's specific to the investigative files for which they are

25  asserting a privilege claim.

1          UNIDENTIFIED ATTORNEY:  You know, one of the things
2   that I was reminded of, we have researched the investigative
3   privilege.  We have not gotten any authority from the State on
4   it, but from our research, it looks to us like that is a
5   privilege that's asserted in response to an open records
6   request, so that the State does not have to publicly make
7   information available.  Whether it applies it's a privilege to
8   prevent discovery where there is an protective order in a case
9   is an entirely different question, and we have not seen --
10          THE COURT:  I understand that.  That's something
11  that obviously we may end up having briefing on.
12          What you are asking for exactly what falls within
13  little Roman numeral I and II, I and II?
14          MR. BROWN:  Your Honor, this is Bruce Brown.  The
15  project packages for all the counties except for Coffee County
16  were produced.  The State's position is that it can't find the
17  Coffee County election project packages, and that that's why
18  they haven't been produced.  And that's what they say in
19  response -- in their response to 1360.
20          Our response is the project packages are in that
21  server that they picked up from Coffee County and they have in
22  their possession and that all they need to do is to access
23  that server, get the files out, and produce them.
24          Their response to that is that it's locked and they
25  can't figure out the passcode or something like that.  We

1  don't understand that.  Our technical people do not understand

2  that objection.  But it's the project packages are there.  If

3  our people got a hold of that server, they could get the

4  project packages that are inside along with a lot of other

5  information, but that's just a missing piece of this.

6          THE COURT:  And number 3, documentation from Coffee

7  County's election management system to backup their uploaded

8  results.

9          MR. BROWN:  Right.

10         THE COURT:  Is that, in fact, the same thing that

11 you generally have been provided for other --

12         MR. BROWN:  I believe so, Your Honor.  Yes, Your

13 Honor.

14         THE COURT:  Let me complete my sentence.  For any

15 other business.

16         Mr. Russo or Mr. Miller, do you want to comment on

17 that?

18         MR. RUSSO:  Your Honor, this is Vincent Russo.  I

19 think that this kind of goes back to the issue of

20 investigating the Coffee County situation.  You know, we --

21 Mr. Miller mentioned, you know, the investigation of that

22 server is ongoing.  Without necessarily getting into the

23 details of what is happening with that server, you know, I'm

24 hesitant to dive into that on this call with so many other

25 folks on it.

1          THE COURT:  Okay.

2          MR. RUSSO:  But, you know, there is -- I will leave

3    it at that.  But, yeah, we think that there's -- the project

4    package is on the server.  We, you know, previously had looked

5    for the product package and, of course, did not have them

6    produce the others.  But I think all of this kind of still

7    ties into what is happening with the investigation in that

8    server.

9          THE COURT:  All right.  Well, it seems almost

10   inevitable that we are actually going to have to have a full

11   briefing on this, but I still would like to see the privilege

12   log first before we dive into that.   But --

13         MR. MILLER:  Your Honor, if I may, this is Carey

14   Miller.  Just for clarity so that we know where we are with

15   respect to this docket 1360 status, you know, there are

16   additional objections in here with respect to the timeliness

17   and relevance.  I'm just -- are we -- I guess my question is,

18   is this -- should we be treating this as a discovery request

19   that we are responding to, I suppose is my question?  Or

20   having the Court rule on those objections?

21         THE COURT:  Well, I'm not -- what I'm saying is

22   basically this:  One, I want the plaintiffs to identify any of

23   the requests they think that they've made that this would have

24   gone within and that they would have expected an update on.

25         And so we discussed that just a few moments ago.  So

1   that you know clearly and I know clearly what they think this
2   is within because we don't just have roving discovery
3   otherwise.  It goes on and on, but this is necessary because
4   this has developed and it's part of -- and it would have been
5   expected as a supplemental response to something -- an
6   outstanding interrogatory or request for production.  That's
7   what I want them to identify.  And I'd like you to -- them to
8   identify that before you have to produce your log.

9           But I think this is -- and that shouldn't be a
10  problem since they've -- Mr. Brown, Mr. Cross, is it a problem
11  for you to get that to them by Tuesday?

12          UNIDENTIFIED ATTORNEY:  By that you mean identify --
13          THE COURT:  What you feel like this is a --
14  basically a -- your question about Coffee County matters that
15  they are -- how they fall within whatever discovery request
16  that you have already made that were outstanding.  That you
17  would have expected a supplementation.

18          UNIDENTIFIED ATTORNEY:  Absolutely, your Honor.  We
19  can do that.

20          THE COURT:  All right.  So since that deals with
21  that issue and then we are going to -- because the State has
22  asserted a privilege on this, all this, I need to understand
23  what the contours of that are.  And then once I see that, then
24  we'll talk about, you know, what -- if there needs to be
25  further briefing and whether it's appropriate, and does it, in

1   fact, fall into what one would have thought would be

2   appropriate supplementation.

3       I mean, I tried to narrow this some when we last

4   talked.  Obviously, that was not very successful.  But even

5   what I thought was going to be provided now you are saying

6   is -- would fall within that framework.  That what I

7   specifically said should be produced, at least giving some

8   sort of goal post of what happened has not been produced

9   because Mr. Miller says is covered by privilege, so it's more

10   sensitive.  So let's deal with it more formally.  And so

11   that's my effort to try to get this resolved once and for all.

12   We'll get it T'd up in the normal way and maybe they're not

13   sufficient requests for production or interrogatories that

14   really fully cover what the plaintiffs are seeking here.

15       MR. CROSS:  Your Honor, on the issue of where we

16   started, the issue of the summary judgment schedule, I just --

17   briefly on that, would Your Honor be open to setting a

18   deadline for defendants to file but not yet setting a deadline

19   for a response until Your Honor has an opportunity to review

20   their motion and determine how you want to proceed?

21       And the reason I ask is this:  Because if we have a

22   deadline to respond, we necessarily are going to have to start

23   doing the work if their motion is filed.  But if Your Honor

24   decides, for example, to defer it to trial, then we don't have

25   to do that work.  Or if Your Honor decides to just focus

1  briefing on, say, one or two discrete issues, then the work

2  gets easier.  So I would just suggest that if Your Honor is

3  open, we would then get guidance from Your Honor on exactly

4  what you would need, if anything, before we have to begin the

5  work.

6              THE COURT:  Well, at least one thing you mentioned

7  wasn't going to happen until August 15th.  I can't remember

8  what it was.

9              MR. CROSS:  The Coffee County depositions will be

10  done by then.  The idea was, as I understand from our

11  discussions with the State, the Coffee County discovery is not

12  discovery they think is needed, so maybe they can file it

13  earlier.  But if they --

14              THE COURT:  I can't imagine even given what they've

15  gone through the last number of months that they are going

16  to -- they are going at a speedy rate frankly.

17              MR. CROSS:  Right.  And I understand that.

18              THE COURT:  I'm referring to their other obligations

19  outside of this.

20              MR. CROSS:  Right.  Understood.  And so I guess I

21  would ask, you know, what amount of time they think they need

22  to file a motion.  We'd like things to move quickly.  So if

23  they could file it, you know, in a span of a few weeks not

24  months, that would be ideal, and then Your Honor could figure

25  out what, if anything, you need from us and set a briefing

1 schedule accordingly, if you have briefing.

2          MR. MILLER:  Your Honor, this is Carey Miller.  I

3 guess with respect to Mr. Cross's point, he's correct.  We

4 don't think that the Coffee County discovery is material here.

5 But the fact that it is going forward, we now have to wait,

6 you know, to do it and for us to be able to, you know, have

7 that opportunity as well.

8          And so on schedule then, if it's August 15th,

9 that -- you know, if everything else is done on August

10 the 15th, then, you know, my suggestion would be, I guess

11 September the 15th or 30th or in the alternative, 45 days from

12 the last deposition, whichever is later, because I'm just not

13 confident that Coffee County is going to end the discussion.

14          And one thing that I forgot that or that we will

15 need to get some clarity on is the status of, you know, CISA

16 with respect to this case.  I think we raised it in a prior

17 call to the extent of either with -- we viewed a lot of what

18 the plaintiffs were doing as essentially pointing to CISA as

19 an additional expert.  If that's the case, we will need, you

20 know, we may need discovery related to that.  If that's not

21 the case, then we will not.  But it's just not entirely clear

22 to me what that status is as far as this case.

23          THE COURT:  Mr. Cross, do you want to respond to

24 that?

25          MR. CROSS:  Sure.  We certainly are not offering

1  CISA as some sort of retained expert.  The CISA advisory is a

2  government report that Your Honor, we believe, can rely on for

3  the purpose of this case, just as you would any other

4  government report that meets the rules for admissibility.

5         That's the extent of it.  That's the extent.  The

6  State wants discovery.  I mean as we said before, that should

7  have started back in February or March when it went over.  And

8  when we have raised with the State the possibility of the

9  parties conducting discovery regarding CISA's process, because

10 we reached out to them about that, their response is it's off

11 limits.

12        So we decided to agree so that we can move this case

13 forward.  I can't imagine what discovery they would get from

14 CISA that would matter here, unless the idea is to suggest

15 that CISA advisory is somehow wrong or biased or I don't know.

16 I don't know what the discovery being.  But it's just another

17 piece of evidence that Your Honor can rely on, like any other

18 admissible government report.

19        THE COURT:  Well, they're not your expert, but it is

20 a development, just like some of your Coffee County stuff has

21 been a development.  So it's within the timeframe you're doing

22 Coffee County.  If the State wants to go and attempt to find

23 anything out from CISA, they are welcome to.  You know, the

24 Touhy doctrine makes it kind of hellish for anyone to do

25 depositions without the government's consent.

1          But, you know, since -- I mean I think it's -- it is
2    a development just as Coffee County has been a development and
3    what's good for the goose is good for the gander.

4          UNIDENTIFIED ATTORNEY:  Your Honor, we have no
5    objection.  I do just want to make clear that they're opening
6    the door to both sides.  Because what we had said, for
7    example, was, you know, send us your communications regarding
8    CISA because we know the Secretary's office was involved.  We
9    know Dominion was involved.

10         The deposition is with Dominion, their agents.  And
11   so as long as that's where we are going, we have no problem
12   opening the door on this.  But they have refused to provide
13   any information about their involvement or Dominion's
14   involvement with CISA.  So it's got to go both ways.

15         THE COURT:  Mr. Miller and Mr. Russo, you might want
16   to think about that.

17         UNIDENTIFIED ATTORNEY:  Your Honor, I think it just
18   raises kind of the bigger question, which I think Your Honor
19   was headed towards initially, which was at some point, this
20   has to end.  There has to be a temporal limit as to what we
21   are covering, you know, if we're stopping it in Coffee County
22   or if we are stopping it, you know, things that occurred on,
23   you know, prior to the runoff elections, you know, something
24   along those lines.  It just concerns me that it's got a big
25   gap for more discovery.

1          THE COURT:  Well, me, too.  I mean I'm basically
2   trying to rule on the Coffee County business as soon as I get
3   your new materials I have asked for.  And once I have it, I
4   will rule.  And then, hopefully, we are going to, you know,
5   have a route forward so that we can finish everything on the
6   15th of August.  But if we can't, then we'll do it, finish the
7   21st of August.  But, you know, in any event no matter what,
8   in August.

9          So -- but I do, you know, I know that in Washington
10  D.C. all this is like a dead month.  If you are really
11  thinking that you are going to get that much in August, it's
12  like the entire world disappeared there who are involved in
13  government.  So I just want to headline that issue.

14          I think the State has to decide is that something
15  you really are wanting to pursue, because that's going to drag
16  it out.  So right now, my primary concern was handling this
17  report and how -- and getting a position about it, which I
18  really didn't ultimately get, so I'm just still waiting for
19  their response.

20          And -- but it's -- the State views that it's
21  important to their defense in some way.  You know, now that
22  it's happened, I wouldn't preclude you from it, but then you'd
23  need to tell me what your timeframe is.

24          But you'd also have to understand, I mean basically
25  on the end of the first week in August, I don't think you find

1   many people in Washington.  But maybe, you know, whoever from

2   the Justice Department, et cetera, you can talk to.

3           MR. CROSS:  Your Honor, this is David Cross.  Just

4   one quick point on this.  There is the inconsistency in the

5   way the State is approaching this, which is worth noting,

6   which is Coffee County is a new development.  You know, we

7   asked about that.  Their response is well, show us the

8   discovery request to cover it.

9           Are they going to be held to the same?  Because I

10   don't know of a single discovery request that they've served

11   that would attach to CISA.  And so if now the idea is that

12   they can come in with new discovery requests on CISA, well,

13   then that would obviate anything --

14           THE COURT:  No.  I mean I think they can take a -- I

15   mean, first of all, they point -- I don't want to go tit for

16   tat here, but there are developments factually in both

17   matters.

18           So -- and I mean, I don't know the breath of what

19   would be authorized either, but I can tell you that I think

20   it's -- there are going to be multiple issues about the

21   discovery and I'm not going to hold everything up for those to

22   be resolved.

23           But if they decide they want to ask for something

24   more from CISA, but I'm just saying no matter what, you know,

25   I'm looking that all that matters is going to be resolved by

1  Labor Day in terms of everything new.  You all have told me

2  about August 15th.  I can imagine, you know, some wrap up of

3  this or that.

4          So if CISA is something that they think that the

5  State is wanting to jump into in some form in order to explain

6  whatever report, you know, whatever is going to be introduced

7  if you are, in fact, intending to introduce a report or that

8  there is something that is helpful to them then, you know, I

9  think, it's fair but not fair for spending another four months

10 on it.

11         UNIDENTIFIED ATTORNEY:  Yes, Your Honor, I

12 completely agree.  My only point is both of these are new

13 factual developments.

14         THE COURT:  I understand.  That's exactly what I

15 said.  That's what I said.  So if that's -- the State's

16 counsel wants to do that, then you need to get on the stick

17 and advise the Court and work with your opposing counsel about

18 it and obviously work with the Justice Department about it and

19 get back to me as soon as possible.

20         UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

21         And that's, you know, truthfully the point of

22 raising it now was so that we have clarity as to where the

23 status was in terms of whether CISA is in this case and

24 whether discovery is open right now or subject to certain --

25         THE COURT:  Well, it's not endless discovery on the

1 | items we've discussed.

2 |     UNIDENTIFIED ATTORNEY:  Okay.

3 |     THE COURT:  And their supplementation that's

4 | required.  Of course, every party is required to supplement

5 | responses under the rules on an ongoing basis.  Obviously

6 | given the volume of discovery that has occurred in this case,

7 | I think it's only prudent that no one should play cat and

8 | mouse games with that, because you have to identify what, in

9 | fact, you think, encompasses it before or potentially would

10 | have.

11 |     So, anyway let me just say, I don't know when Labor

12 | Day is this week right now but assuming it's around

13 | September --

14 |     UNIDENTIFIED ATTORNEY:  September 5th.

15 |     THE COURT:  September 5th.  That's a Monday.  So

16 | really basically we are talking about the Friday before then

17 | it will have to be resolved by then.

18 |     Giving this a little wiggle room, and these are

19 | other matters but basically everyone has got to get their

20 | stuff done.

21 |     Now the State said you need 45 days from that time

22 | or 45 days from August 15th?

23 |     I mean I don't know that -- I have given the extra

24 | wiggle time in part because I'm not going to get the -- I mean

25 | I think the Coffee County stuff could be resolved by clearly

1  by the third week in August.  The last week was just simply

2  small stuff for the State.

3          MR. MILLER:  Your Honor, my -- this is Carey Miller.

4  My -- I think my suggestion was essentially that it be 45 days

5  from the close of discovery productions, et cetera, discussing

6  as September 2nd or otherwise, you know, 45 days from the date

7  of the last deposition, whichever occurs later, recognizing,

8  as Your Honor mentioned, the kind of tying up loose ends

9  aspect.

10          THE COURT:  All right.  Well, let's use the

11  September 2nd date and 45 days from then.

12          And in terms of the plaintiffs' request that I tell

13  them what I think of it as a -- whether they have to do a

14  full response, I think, you know -- if I see something I want

15  you really to focus on, that would be -- I will tell you that

16  but I think you have to be prepared that you may have to

17  respond in the same 45-day period.

18          I think it would be helpful for us to talk before,

19  like on the Monday after -- on the Tuesday after Labor Day or

20  thereabout about the focus of the Government's motion -- the

21  State's and Fulton County's motion.

22          It's not -- it's manageable to the Court.

23          UNIDENTIFIED ATTORNEY:  Your Honor, we were

24  intending to move forward but I think what we have discussed

25  before, before the stay was entered, we will be moving for

1  summary judgment as to the Coalition class and, secondly, as
2  to the Curling class for the single statement of material
3  facts.
4           THE COURT:  Okay.  Well, I mean it would be --
5  that's fine.  That's fine.  We'll have a more -- by the middle
6  of August, I'll have a more concrete idea and longer
7  discussion.  I don't want to add that to our situation.
8              I want to say that just on the other issue that I
9  thought was outstanding was about Dr. Starks' testimony.  I
10 think that, you know, while he added -- I don't know, hundreds
11 of pages in his affidavit, it's really not hundreds of pages.
12 Those are all an updated set of qualifications papers, et
13 cetera.  So, you know, basically we have a much more limited
14 set of editions that relate to the extent that focused on
15 errors and accuracy and he, so that Stark -- the same, I think
16 it falls within this -- at least arguably within the scope of
17 his testimony.
18             I think that there were some other parts of it that
19 guilds testimony that's more focused on duplications.  But to
20 the extent that there are questions of error, which is the
21 focus of the testimony of Starks, he can testify about that.
22             Whether it's merely fully liable and all that, I
23 mean obviously, I don't -- I think -- the State and Fulton
24 County have not taken the deposition of Dr. Starks, if I
25 recall correctly, and they can do so and they can file an

1    appropriate motion, if they think it's not reliable, which
2    inevitably they probably will.
3            But I'm going to allow the amendment.  That doesn't
4    mean that they won't be effective in their cross-examination
5    in that motion that they may make regarding his methodology or
6    what he actually had this information for.
7            UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
8            THE COURT:  All right.
9            I'm going -- I'm going to just allow my law clerks
10   who are on this phone to -- in fact, they don't have multiple
11   phones here -- just to text me if they have any particular
12   questions they would like me -- give them a minute and they
13   can do that since they type in the chat.
14           Is counsel for Fulton County on the phone?
15           MR. LOWMAN:  Yes.  David Lowman is here for Fulton.
16           THE COURT:  Mr. Lowman, is Fulton intending to file
17   a motion for summary judgment?
18           MR. LOWMAN:  Yes, Your Honor.
19           THE COURT:  Well, the same schedules will apply to
20   you.  You can always file earlier, if you want to.
21           MR. LOWMAN:  Thank you, Your Honor.
22           THE COURT:  All right.  I haven't heard a lawyer
23   that says I want to do it earlier but nevertheless.
24           And is Ms. Dimmagio's counsel still on the phone?
25   Did Ms. Dimmagio's counsel respond?  I don't think so.

1          MR. MILLER:  Your Honor, I'm not -- this is Carey

2   Miller.  I'm not sure that -- I may have missed it, but I'm

3   not sure that they were ever on the phone.

4          THE COURT:  Okay.  I thought somebody had introduced

5   as -- Harry, are you on phone or could the court reporter look

6   and see who -- whether anyone introduced themselves as

7   representing Ms. Dimmagio the phone?

8          THE COURT REPORTER:  I don't have anyone.

9          THE COURT:  All right.  Then we'll deal with that

10  separately then.  Since he's not popping -- if he was on the

11  phone, he's no longer here.

12         Calling all counsel for Ms. Dimaggio.

13         Anybody there?

14         Okay.  No one there.

15         Is there anything else you would like to me to

16  address?

17         MR. PEELER:  Your Honor, Charles Peeler for Fox News

18  Network.

19         As it relates to the timing of CISA's obligation to

20  Dr. Halderman's report on June 24th, you entered an order

21  instructing CISA to provide appropriate redactions by July

22  22nd.

23         Hopefully that will resolve our issues and the Court

24  will be comfortable, pursuant to the protective order,

25  allowing Fox access to that so that they can defend itself in

1  the Delaware case.

2          But I wanted to just let the Court know just for

3  perspective that discovery in Delaware is moving quickly and

4  that there are deadlines there that effect discovery

5  September 27th and as a part of that, Fox will need to depose

6  Dr. Halderman.

7          We have to have these issues related to the relief

8  of his report hopefully resolved prior to that deposition.  So

9  I just wanted to raise that, we are under some time crutch in

10 the Delaware case.

11         THE COURT:  Okay.  Thank you.

12         And I will say to you what I said earlier to the

13 parties.  You know, I'm hopeful I'm going to get it there at a

14 timely response.  I'm concerned about anything with D.C.

15 counsel's after the 1st of August.  So I was conscious of that

16 when I set this timeframe but we will see what happens.

17         MR. PEELER:  Great.  Thank you, Your Honor.

18         THE COURT:  All right.

19         Anything else from anyone else?

20         All right.  We'll see the log and the other

21 materials that plaintiff is also going to send about where

22 they're expecting supplementation.

23         We will deal with the depositions once I have seen

24 the log, too.

25         Is there an issue about the board members?  Let me

1   ask you that because -- is there -- about -- they're just

2   still in the process of collecting their materials?

3           UNIDENTIFIED ATTORNEY:  Yes, Your Honor.  I don't

4   think there is any ripe issue with respect to board members.

5           THE COURT:  Okay.  Very good.  All right.

6           Thank you very much.

7           Have a good weekend.

8       (Whereupon, the proceedings were concluded at 10:33 a.m.)

9

10

11  I do hereby certify that the foregoing pages are a true and

12  correct transcript of the proceedings taken down by me in the

13  case aforesaid.

14          This, the 18th day of  July 2022.

15

16                  /s/Melissa C. Brock RPR, RMR

17                  OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25