# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DONNA CURLING, *et al.*,

    *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants.*

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

### DECLARATION OF RYAN GERMANY

I, Ryan Germany, declare under penalty of perjury that the following statements are true and accurate to the best of my knowledge.

**Background**

1.    I am the General Counsel for the Office of the Georgia Secretary of State.  I have held that position since January 2014.  My job responsibilities include providing legal advice and guidance to all divisions of the Secretary of State's Office, including the Elections Division. I also work closely with the State Election Board. I routinely interact with county election officials.

**Investigations Division**

2.    One of the divisions of the Secretary of State's office is the Investigations Division. That Division has 24 investigators that oversee matters concerning elections, charities, securities, professional licensing,

corporations, and cemeteries. All of the investigators in the Investigations Division are certified peace officers by the Georgia Peace Officer Standards and Training (POST) Council. As POST-certified law enforcement officers, Secretary of State investigators carry weapons and can make arrests.

3.      In the course of an investigation, Secretary of State investigators gather pertinent information, conduct relevant interviews, and report findings to the governmental entity which authorized or referred the investigation to our office. Those entities include the State Election Board, various Professional Licensing Boards, the Secretary of State (in his capacity as Securities Commissioner), the Attorney General's office, and various local prosecutors.

4.      The investigations the Secretary's office conducts may result in civil enforcement actions pursued by the relevant entity and/or criminal prosecution pursued by the appropriate prosecuting authority.

5.      In addition to attending to investigations referred by Georgia governmental entities, the Secretary's investigators also work with other investigative authorities within and outside of Georgia who often seek non-public information for purposes of their investigations and/or joint investigations with those entities. Some of those authorities include the Federal Bureau of Investigation, the Georgia Bureau of Investigation, Sheriffs'

Offices within and outside Georgia, Securities Divisions of other states, Securities and Exchange Commission, and local District Attorneys.

**Coffee County initial investigation**

6.      Coffee County had three separate complaints investigated by the Secretary's office after the 2020 election, all under the designation SEB 2020-250 (Coffee County).

7.      First, on December 4, 2020, Coffee County advised they were not going to certify their electronic recount numbers, blaming the Dominion system for creating inaccurate election results. Second, the then-Coffee County elections supervisor, Misty Martin (also referred to as Misty Hampton) posted a video on YouTube showing ways she said the elections software could be manipulated and exposing the password of the EMS. Third, a voter submitted a request for an absentee ballot but did not receive it until 25 days later.

8.      After investigation, the office concluded that Ms. Martin failed to keep ballots in batches, failed to follow training she received about the operation of the scanner, and that the video she created was misleading and designed to create doubt and mistrust in the Dominion voting system. The investigation also revealed that Ms. Martin also failed to follow SEB rules regarding the locking of doors to the room where the EMS was located, even though the office itself was locked from the public, and securing the password.

3

9.    Ms. Martin was removed as supervisor while the investigation was pending and the case was bound over to the Attorney General's office.

**Allegations after the 2020 elections**

10.    After the 2020 presidential election, Scott Hall made a number of allegations about the administration of elections in Georgia.

11.    For example, he signed a sworn affidavit filed in *Wood v. Raffensperger*, Case No. 1:20-cv-04651-SDG (N. D. Ga.) on November 17, 2020, alleging that he observed ballots "giving the impression that they were never folded into an envelope and mailed" and that those ballots "appeared to be pre-printed with the selections already made." *Wood* Doc. 6-18 at ¶ 3. He also alleged that ballots were bubbled in "perfectly" and that "[h]undreds of ballots at a time were counted for Biden only." *Id.* He also made allegations about the setup of tables and a bag in an area that he said was not visible to security cameras. *Wood* Doc. 6-18 at ¶ 4.

12.    The next month, Mr. Hall testified to the Election Law Study Subcommittee of the Standing Senate Judiciary Committee on December 3, 2020 along with Russell Ramsland, Phil Waldron, and Suzie Voyles. During the hearing, Mr. Hall testified that "the referee [referring to Dominion] got paid off to call the game," that he "was told to leave the World Congress Center" after trying to photograph what he said were unsecured bag of ballots, and

4

again discussed the ballots he believed were "machined-produced" and "pristine." *See* Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee, pp. 6–7, 11 (Dec. 30, 2020), *available at* http://www.senatorligon.com/THE_SENATE%20JUDICIARY%20SUBCOMMITTEE_FINAL%20REPORT.PDF

13.    In mid-March 2022, well after SEB 2020-250 was bound over to the Attorney General's office, I was provided a recording of a phone call with Mr. Hall by the Secretary's outside counsel in the *Curling* case.

14.    On that call, Mr. Hall and Marilyn Marks, the director of the Coalition for Good Governance, discuss a variety of topics, including claims by Mr. Hall that the fact that a Dominion employee was from Nigeria was suspicious, given his beliefs about the history of Nigerians engaging in credit card fraud and internet computer hacks, then tying that to Dominion covering up information with Nigerians through contracts with counties.

15.    Mr. Hall also found it suspicious that a Dominion employee whom he described as a young Hispanic lady was "roaming around" in Fulton County and "disappeared" after he mentioned Dominion's home office in Colorado to her.

16.    After saying he didn't believe anyone in Fulton County about elections, claiming they threw away ballots—and almost an hour into the call—

Mr. Hall mentions in passing that he chartered "a jet" to go to Coffee County to "scan every freaking ballot." He then said that no one had issued a report, despite the same people going to Michigan had "scanned all the equipment" and "every single ballot" and that Mr. Hall had gotten no feedback from the team.

17.    He then claimed Ms. Martin showed him where her daughter watched Netflix on the Coffee County Poll Pads.

18.    The total time where Coffee County is being discussed in the one hour, 22 minute, and 55 second call constitutes about three minutes.

19.    The recording had not been turned over to our lawyers or to the Secretary's office prior to March 2022 and the Secretary's office was not on notice of Mr. Hall's allegations until receiving the recording.

20.    Based on filings in this case regarding that recording and testimony from a "Cyber Ninja" that he reviewed both the Coffee County and Fulton County election software, we have also received complaints that Fulton County elections was "breached."

**Re-Opening the Coffee County investigation**

21.    After reviewing the recording and discussing with our lawyers in this case, I asked our Investigations Division to open an investigation into the

6

allegation that Mr. Hall told Ms. Marks regarding Coffee County. That was also in mid-March, 2022.

22.    Given the type of allegations and the fact that the person asserting these claims had made many other allegations that were not factually supported regarding the 2020 election, our office determined to first undertake a forensic evaluation of the server at issue to see what information could be gathered by that route.

23.    We first contacted Dominion to see if they could assist us gain access to the server to conduct a forensic investigation in or around March 25, 2022. Despite involving Dominion engineering staff, Dominion was ultimately unable to gain access to the server.

24.    In and around the same time period, I was also having discussions with Coffee County's attorneys. They were aware of the allegations by Mr. Hall and had been looking into them as well.

25.    Because we believed that a forensic evaluation would greatly assist in determining truth from falsity in these claims prior to interviewing witnesses (some of whom who have made numerous allegations regarding the 2020 election in Georgia that have not turned out to be supported by the facts), we determined that we would bring in the consulting expert in this case to assist in the forensic inspection of the server. Without disclosing investigative

sources and methods, that investigation has been fruitful and I believe the information gathered will assist our investigators as they interview witnesses and gather other relevant information.

26.     Despite this process beginning in mid-March 2022, on or around April 24, 2022, it was brought to my attention that a case file had not been created in our investigations tracking system even though the investigation was ongoing, and I had requested one to be opened. I believe this occurred because the Deputy Chief Investigator whom I had asked to open the investigation left our office shortly after the request was made and did not complete the tracking system update prior to leaving. When I learned the tracking system had not been updated as requested, I asked the current Deputy Chief Investigator to document the re-opening of the investigations aspect of SEB 2020-250 (Coffee County) because the new allegations seemed related to that existing case. That occurred on April 25, 2022.

27.     The investigation into Coffee County has been re-opened since March 14, 2022 and remains ongoing.

28.     Our next steps are to complete the forensic investigation and to interview witnesses.

29.     Based on our investigation so far, we have also asked the Georgia Bureau of Investigation (GBI) to assist with the investigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and accurate to the best of my knowledge, information, and belief.

8/2/22
Date

C. Ryan Germany
Office of the Georgia Secretary of State