IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| DONNA CURLING, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:17-cv-2989-AT |
| | : | |
| BRAD RAFFENSPERGER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

Six intervention-related motions are currently before the Court. Four of these motions are Motions to Intervene filed by various companies seeking access to an expert report written by cybersecurity expert Dr. J. Alex Halderman on behalf of the Curling Plaintiffs. [1] The other two motions were filed by one of the proposed intervenors, seeking oral argument on its Motion to Intervene and requesting that the Court lift the stay on the same motion. Dr. Halderman's report, which concerns potential vulnerabilities in Dominion's ICX ballot marking device system that is used for elections in the State of Georgia as well as several other States, has been sealed and treated as "Attorneys' Eyes Only" since it was filed on July 12, 2021 pursuant to the parties' consent protective order. (Docs. 477, 1130, 1131.) The

---

[1] Dr. Halderman is a Professor of Computer Science and Engineering at the University of Michigan where he is also director of the Center for Computer Security and Society. He has served as the Curling Plaintiffs' expert witness on cybersecurity issues since at least 2018.

report was filed in connection with a discovery dispute in this case and has not been filed in connection with a dispositive motion on the merits. (Docs. 1130, 1131.)

## I.   BACKGROUND

On January 12, 2022, Fox News Network, LLC ("FNN") filed its Motion to Intervene for the limited purpose of obtaining access to Dr. Halderman's report on an "Attorneys' Eyes Only" basis. (Doc. 1251.) The following month, FNN also filed a Motion for Oral Argument on its Motion to Intervene. (Doc. 1303.) On January 27, 2022, Herring Networks, Inc., d/b/a One America News Network ("OAN"), joined FNN's Motion. (Doc. 1287.) Similarly, on March 2, 2022 and March 5, 2022 respectively, Newsmax, Inc. ("Newsmax") and My Pillow, Inc. and Michael J. Lindell (collectively, "My Pillow") moved to intervene in this matter in order to obtain access to Dr. Halderman's report. (Docs. 1324, 1332.) In addition to seeking access to Dr. Halderman's report, My Pillow generically seeks access to all documents that have been filed under seal in this matter relating to Dr. Halderman.

FNN, OAN, My Pillow, and Newsmax (collectively, "Proposed Intervenors") claim in their Motions that they have a compelling need to access Dr. Halderman's report to aid their respective defenses against defamation claims brought by Dominion in the Delaware Superior Court and the U.S. District Court for the District of Columbia. While Proposed Intervenors contend that Dominion's defamation claims are based (at least in part) on statements the putative intervenors allegedly made regarding the vulnerability of Dominion's election

system to hacking or fraud, the claims asserted in Dominion's Complaints appear to focus on very specific purported misrepresentations allegedly made by Proposed Intervenors that bear little to no relationship to the cyber-security and engineering issues discussed by Dr. Halderman as part of the ongoing litigation in this case. Nevertheless, Proposed Intervenors argue that Dr. Halderman's report is integral to their defenses in Dominion's lawsuits because it might reveal the truth of their allegedly defamatory statements. For all these reasons, Proposed Intervenors maintain that it is necessary for them to intervene in the present matter for the purpose of accessing Dr. Halderman's report.

The Court previously stayed all four intervention motions and FNN's Motion for Oral Argument pending the United States Cybersecurity and Infrastructure Agency's ("CISA") review of Dr. Halderman's report and its completion of its formal Coordinated Vulnerability Disclosure ("CVD") process.[2] (Doc. 1316.) On May 19, 2022, CISA informed the Court that it was undergoing the final steps of its CVD process by continuing to evaluate the potential software vulnerabilities identified in Dr. Halderman's report and beginning to notify relevant government agency stakeholders of specific potential software vulnerabilities in Dominion's election software and the remedies for such. (Doc. 1381.) The next day, although

---

[2] Earlier this year, the Court authorized the parties to share an unredacted copy of Dr. Halderman's report with the United States Government's Cybersecurity and Infrastructure Agency ("CISA") on a confidential basis so as to allow CISA to review the report and implement its formal CVD review process.

CISA had not yet completed its CVD process, FNN filed a Motion to Lift the Stay on its Motion to Intervene. (Doc. 1382.)

Several weeks later, CISA completed its CVD process and issued a public advisory detailing its findings. (Doc. 1391); *see* Cybersecurity & Infrastructure Sec. Agency, ICS Advisory (ICSA-22-154-01): Vulnerabilities Affecting Dominion Voting Systems ImageCast X, (June 3, 2022), https://www.cisa.gov/uscert/ics/advisories/icsa-22-154-01. The public advisory discusses several potential vulnerabilities affecting Dominion's election software and explains that "[w]hile these vulnerabilities present risks that should be mitigated as soon as possible, CISA has no evidence that these vulnerabilities have been exploited in any elections." *Id.*  This CISA advisory information is publicly available to Proposed Intervenors.

Because CISA has completed its review of Dr. Halderman's report and the CVD process, the Court **GRANTS** FNN's Motion to Lift the Stay on its Motion to Intervene (Doc. 1382) and **LIFTS THE STAY** on Proposed Intervenors' Motions to Intervene in this matter. (Docs. 1251, 1287, 1324, and 1332.)

## II.  DISCUSSION

The Court now turns to the merits of the intervention motions. Proposed Intervenors seek to intervene in this matter pursuant to Federal Rule of Civil Procedure 24. Each putative intervenor argues that it is entitled to intervene in this action as a matter of right or that the Court should exercise its discretion to allow permissive intervention.

## A.   INTERVENTION AS OF RIGHT

Rule 24(a)(2) allows third parties to intervene as of right in pending litigation where they "claim[ ] an interest relating to the property or transaction that is the subject of the action[ ] and [are] so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest, unless existing parties adequately represent that interest." The Eleventh Circuit has explained that a party seeking intervention as of right must demonstrate that:

> (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288 (11th Cir. 2020) (quoting *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017)). Putative intervenors bear the burden of proof to establish all four bases for intervention as a matter of right. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). If putative intervenors fail to establish even one of these elements, intervention as of right must be denied. *Id.*

### 1.   Whether Proposed Intervenors Have an Interest in the Subject of this Action

The Court begins its intervention as of right analysis by considering whether Proposed Intervenors possess an interest relating to the property or transaction that is the subject of this action. "In determining sufficiency of interest, this circuit requires that the intervenor must be at least a real party in interest in the

transaction which is the subject of the proceeding. This interest has also been described as a direct, substantial, legally protectable interest in the proceedings." *Worlds v. Department of Health and Rehabilitative Serv.*, 929 F.2d 591, 594 (11th Cir.1991) (per curiam) (footnotes, citations, and quotation marks omitted). Thus, a "generalized" concern will not support a claim for intervention as of right. *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).

Here, Proposed Intervenors have not met their burden to show that they have a direct and substantial interest in the *subject* of this litigation. Each putative intervenor argues that it has an interest in obtaining access to Dr. Halderman's expert report and the report's findings relating to potential vulnerabilities in Dominion's election software. However, the thrust of the Plaintiffs' claims *in this action* is that the Defendants violated Plaintiffs' constitutional rights (or those of their members) to cast reliable and verifiable ballots and that, in turn, the Defendants impaired their right to vote. Dr. Halderman's report is only one document in a sea of documents and testimony filed in this case, and it has not yet been filed in support of or in opposition to a substantive motion on the merits (*i.e.*, a summary judgment motion). None of the Proposed Intervenors have articulated why they have a legally protectible interest in the outcome of this case such that resolving this case without the putative intervenors' participation would impair their right to protect their interest. Proposed Intervenors are not Georgia voters and could not stand in the shoes of any party in this action. The Court therefore finds that Proposed Intervenors have not met their burden to establish that they

have an interest in the transaction or property that is the subject of this action, which is necessary to entitle them to intervene as of right in this matter.

<blockquote>

**2.      Whether Proposed Intervenors Are So Situated that Disposition of this Action May Impede or Impair Their Ability to Protect Their Purported Interest**

</blockquote>

Even if Proposed Intervenors were able to show that they have a sufficient interest in the subject matter of this proceeding, their claim for intervention as of right would still fail because they have not established that, absent intervention, they will be impaired from protecting their purported interest in obtaining Dr. Halderman's report or the facts described therein. For instance, Proposed Intervenors could use the discovery channels available in their respective lawsuits as well as retain cybersecurity experts who could provide expert information and opinions directly relevant to the actual claims and defenses asserted in the Dominion lawsuits. Additionally, the putative intervenors could review CISA's public advisory regarding the potential vulnerabilities in Dominion's election software to identify the nature of the election system's vulnerabilities as well as the agency's findings in this connection. *See* Cybersecurity & Infrastructure Sec. Agency, ICS Advisory, *supra*. To the extent that Proposed Intervenors believe that the available evidence is insufficient to inform their defenses in their respective lawsuits, the judges presiding over those lawsuits are well equipped to determine what additional discovery should be authorized that is tailored to the actual issues at play in the Dominion defamation suits.

Under Rule 26, Proposed Intervenors are entitled to discovery if it concerns a "nonprivileged matter [and] is relevant to any party's claim or defense," *i.e.*, discovery that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).[3] Given their familiarity with Dominion's claims, the judges presiding over the putative intervenors' respective lawsuits are best suited to determine (1) whether Dr. Halderman's expert report is relevant to the factual allegations supporting the defamation claims asserted by Dominion in those lawsuits; (2) whether the report is relevant to the putative intervenors' defenses in those lawsuits; and (3) to what degree Dominion must disclose the report's contents to Proposed Intervenors, subject to disclosure limitations imposed by this Court, including this Court's likely schedule for maintaining full confidentiality of the report through at least the conclusion of the 2022 election cycle.[4] Therefore, this Court finds that Proposed Intervenors have not established the likelihood of an impairment of their rights and interests absent their intervention in this matter.

The Court finds it important to note here that, contrary to Proposed Intervenor My Pillow's assertion in its brief supporting its Motion to Intervene

---

[3] Similarly, under Delaware Superior Court Civil Rule 26(b), Proposed Intervenors are authorized to serve Dominion a request for documents that are relevant to their defenses. Del. Super. Ct. Civ. R. 26.

[4] Additionally, the presiding judges will, when compared to the undersigned, be better positioned to weigh the additional factors a court must consider when determining whether to compel production of a particular document in Proposed Intervenors' defamation cases, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

(Doc. 1332-1), the Court never suggested that an earlier proposed intervenor, the Louisiana Secretary of State, hire Dr. Halderman for the purpose of recreating his report in this case. Instead, when the Louisiana Secretary of State moved to intervene in this matter, the Court noted in a January 10, 2022 Order that a "reasonable alternative" to accessing Dr. Halderman's report would be to:

> simply reach out to Dr. Halderman himself and request that Dr. Halderman perform a review of the State's election apparatus or Dominion systems on a retained basis.

(Doc. 1249 at 6.) The Court then explained that a report based on a targeted investigation of Louisiana's own election system and the security of that system would likely be more useful than a report describing the potential vulnerabilities in Georgia's voting system:

> If anything, a targeted investigation of potential cybersecurity threats to Louisiana's own election system would more directly address the LA Secretary of State's concerns than a written report about the system utilized in Georgia. investigation could not be arranged in the future without the LA Secretary of State intervening in this case.

(*Id.*) Just as the Court did in its January 10th Order, the Court has here considered and described some of the obvious alternatives to intervention in this matter that are specific to the instant parties seeking to intervene and take into account the parties' objectives and defenses in their own lawsuits.

Because Proposed Intervenors have failed to show that they possess a direct and substantial interest in the subject of this action and that their ability to protect their alleged interests would be impaired if this action were resolved without their

participation, the Court **DECLINES** Proposed Intervenors' requests to intervene in this case as a matter of right.

### B.   PERMISSIVE INTERVENTION

Having declined Proposed Intervenors' request to intervene as of right in this matter, the Court now considers whether it should exercise its discretion to permit the putative intervenors to intervene in this matter. Under Rule 24(b)(2), "a district court may permit intervention 'when an applicant's claim or defense and the main action have a question of law *or fact in common*.'" *Athens*, 690 F.2d at 1367 (emphasis added). In determining whether to allow intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). However, "[i]f there is no right to intervene as of right under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (quoting *Worlds*, 929 F.2d at 595).

Here, Proposed Intervenors argue that whether Dominion's voting software suffers from security risks or is vulnerable to manipulation are factual questions that play a prominent role both in this matter and Proposed Intervenors' respective cases with Dominion. Relying on *Commissioner, Alabama Department of Corrections v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1173 (11th Cir. 2019), FNN

further argues that the Eleventh Circuit has recognized that putative intervenors who seek to intervene in an action for the limited purpose of accessing a sealed judicial record "provide[] an adequate nexus for intervention under Rule 24(b)." *Id.* at 1173 n.12.  The Court reviews these arguments below.

### 1. Whether There Is a Common Question of Fact Between this Lawsuit and Dominion's Defamation Lawsuits

First, the Court notes that Dominion's defamation lawsuits appear to have limited factual overlap with the matter before the Court. In its lawsuit against OAN, Dominion alleges that OAN "manufactured, endorsed, repeated, and broadcast a series of verifiably false yet devastating lies about Dominion." Compl. ¶ 3, *US Dominion, Inc., et al. v. Herring Networks, Inc., d/b/a One America News Network, et al.*, No. 1:21-cv-02130 (D.D.C. Aug. 10, 2021), ECF No. 1. Dominion's Complaint continues:

> These outlandish and far-fetched fictions included that: (1) Dominion committed election fraud by rigging the 2020 Presidential Election; (2) Dominion's software and algorithms manipulated vote counts in the 2020 Presidential Election; (3) Dominion is owned by or owns a company founded in Venezuela to rig elections for the dictator Hugo Chávez; and (4) Dominion was involved with alleged voting irregularities in Philadelphia and Dallas—cities where its voting system is not even used.

*Id.*

In its lawsuit against FNN, Dominion similarly alleges that FNN "endorsed, repeated, and broadcast a series of verifiably false yet devastating lies about Dominion." Compl. ¶ 2, *U.S. Dominion, Inc., et al., v. Fox News Network, LLC,*

No. N21C-03-257 EMD (Del. Super. Ct. Mar. 26, 2021), ECF No. 1. Dominion's

Complaint continues:

> These outlandish, defamatory, and far-fetched fictions included Fox falsely claiming that: (1) Dominion committed election fraud by rigging the 2020 Presidential Election; (2) Dominion's software and algorithms manipulated vote counts in the 2020 Presidential Election; (3) Dominion is owned by a company founded in Venezuela to rig elections for the dictator Hugo Chávez; and (4) Dominion paid kickbacks to government officials who used its machines in the 2020 Presidential Election.

*Id.*

In its lawsuit against Newsmax, Dominion also alleges that Newsmax

defamed it by manufacturing, endorsing, repeating, and broadcasting false

statements that:

> (1) Dominion committed election fraud by rigging the 2020 Presidential Election; (2) Dominion's software and algorithms manipulated vote counts in the 2020 Presidential Election; (3) Dominion is owned by or owns a company founded in Venezuela to rig elections for the dictator Hugo Chávez; (4) Dominion paid kickbacks to government officials who used its machines in swing states during the 2020 Presidential Election; and (5) Dominion was involved with alleged voting irregularities in Dallas, Texas, in 2018— even though Dominion's voting system was not used there.

Compl. ¶ 3, *U.S. Dominion, Inc. v. Newsmax, Inc.*, No. N21C-08-063 EMD (Del.

Super. Ct. Aug. 10, 2021), ECF No. 1.

Finally, in its lawsuit against My Pillow, Dominion alleges that My Pillow

made or endorsed several false statements that "there were 'algorithms' in

Dominion machines programmed to steal votes from Trump and that the fraud

was discovered in an 'election night miracle' when Trump's lead was so great that

it broke the algorithms." Compl. ¶ 35, *Dominion v. My Pillow, Inc.*, No. 1:21-cv-00445-CJN (D.D.C. Feb. 22, 2021), ECF No. 1.

Dominion's defamation lawsuits seemingly contest the veracity of Proposed Intervenors' statements that Dominion's "algorithms" manipulated vote counts in the 2020 presidential election by "stealing" votes from former President Donald J. Trump. They also contest the truth of several other statements relating to (1) Dominion's ownership, (2) alleged kickbacks paid to government officials who used Dominion's voting software during the 2020 election, and (3) Dominion's alleged involvement with purported voting irregularities in cities where Dominion's voting software was not used. Because there appears to be only minimal overlap between the facts and legal issues in this lawsuit and Proposed Intervenors' asserted defenses in their respective lawsuits, the Court finds that permissive intervention is not warranted here.

### 2. Whether Proposed Intervenors Have a Common Law Right of Access to Dr. Halderman's Report

Second, the Court addresses the related question of whether Dr. Halderman's report, even with the redactions proposed by the Plaintiffs,[5] should be disclosed based on the common law right of public access. The Court recognizes that Proposed Intervenors may be permitted to stand in the shoes of the public and assert a common law right of access to Dr. Halderman's expert report. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), and *Chicago Trib. Co. v.*

---

[5] Previously, the Court directed the Plaintiffs to provide it with proposed redactions to Dr. Halderman's report.

*Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). However, as discussed below, the common law right of public access has yet to attach to Dr. Halderman's report because, at this stage it is merely a record filed in connection with a discovery dispute.

### a) The Standard for the Common Law Right of Public Access

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, (1978). Given this, there is a "common-law right of access to judicial proceedings," which includes "the right to inspect and copy public records and documents." *Chicago Trib.*, 263 F.3d at 1311. The right of access is not absolute, however. Instead, "a judge's exercise of discretion in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to the production of the particular document in question.'" *Id.* at 1311 (cleaned up) (quoting *Nixon,* 435 U.S. at 597). Furthermore, the right of access may be overcome by a showing of good cause, which requires (1) balancing the public's interest in accessing the information against the other party's interest in keeping the information confidential, and (2) considering the "nature and character of the information in question." *See id.* at 1314–15; *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

In performing this balancing act, federal courts consider many case-specific factors, including, but not limited to:

whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246.

Importantly, "[w]hen applying the common-law right of access[,] federal courts traditionally distinguish between those items which may properly be considered public or *judicial records* and those that may not." *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (emphasis added) (citation omitted). The public has a right to access judicial records but do not have a right to access documents that do not qualify as such. *Id.* As "the prospect of all discovery material being presumptively subject to the right of access would likely lead to an increased resistance to discovery requests," the Eleventh Circuit has recognized a discovery exception to the public right of access. *Romero*, 480 F.3d at 1245. More specifically, the Eleventh Circuit has stated that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Chicago Trib.,* 263 F.3d at 1312. That is because the need for the public to access discovery documents is low, as discovery is a private process with trial preparation as its goal. *Romero*, 480 F.3d at 1245. Thus, discovery documents are not judicial documents subject to the common law right of public access.

### b) Whether Dr. Halderman's Report Is a Judicial Record Subject to the Common Law Right of Access at this Time

"[W]e determine whether a document is a judicial record depending on the type of filing it accompanied." *AbbVie Prod.*, 713 F.3d at 64. In this case, the Curling Plaintiffs filed Dr. Halderman's expert report on a sealed basis on the docket as a component of a Joint Discovery Statement that did not require "judicial resolution of the merits." (*See* Docs. 1130, 1131.) The Eleventh Circuit has made clear that materials produced in discovery "do not automatically qualify as judicial records subject to the common-law right of access," but only "take on that status once they are filed in connection with a substantive motion." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1362 (11th Cir. 2021). Because Dr. Halderman's expert report was filed on the docket in connection with a discovery dispute, the common-law right of public access has yet to attach to the report.

Finally, even if Dr. Halderman's expert report were a judicial record or becomes one in the ensuing months, the Court would not likely publicly release the report prior to the full completion of the 2022 election cycle based on the "good cause" standard given associated heightened security issues in the period immediately preceding the election.[6] If this delay impacts Proposed Intervenors'

---

[6] Though this Court has long recognized that "great weight" should be afforded to the public's right to access material filed on the docket, and that there is indeed a strong "public interest in information regarding elections," the Court has also been mindful that "[f]urther disseminating Dr. Halderman's report presents complicated risks" relative to election security. (Doc. 1249 at 4–5.) Releasing Dr. Halderman's report, even with the Plaintiffs' proposed redactions, into the public domain just 89 days before the 2022 General Election could invite hacking and intrusion efforts, especially given the current heated climate surrounding voting issues as well as ever heightening concerns about international and domestic cybersecurity attacks.

discovery and trial schedules, they have an obvious remedy — they can seek an extension of the discovery deadlines in the courts where their cases are being litigated. Accordingly, Proposed Intervenors' request for permissive intervention is **DENIED**.

## III.   CONCLUSION

For all these reasons, the Court **LIFTS THE STAY** on FNN, OAN, My Pillow, and Newsmax's Motions to Intervene (Docs. 1251, 1287, 1324, and 1332) for the limited purpose of obtaining access to Dr. Halderman's report[7] and **DENIES** the same Motions. FNN's Motion for Oral Argument (Doc. 1303) is similarly **DENIED as both unnecessary and moot**. To the extent Proposed Intervenor My Pillow also sought to secure from the Court any and all additional sealed documents produced in connection with discovery in this case relating to Dr. Halderman, its Motion is **DENIED** for the reasons discussed above and based on the lack of any meaningful descriptive parameters to this request.

**IT IS SO ORDERED** this 11th day of August, 2022.

_____
**Honorable Amy Totenberg**
**United States District Judge**

---

[7] The Court thereby **GRANTS** FNN's Motion to Lift the Stay on its Motion to Intervene (Doc. 1382).