# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, *et al.*

     *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

     *Defendants.*

CIVIL ACTION

FILE NO. 1:17-CV-2989

## STATE DEFENDANTS' NOTICE OF CONDITIONAL OBJECTION TO PROCEEDINGS ON SEPTEMBER 9, 2022

The State Defendants submit this Conditional Objection to Proceedings on September 9, 2022.  As shown more fully below, Plaintiffs appear to be seeking "emergency" relief in the form of a court order "direct[ing] the counties to use hand marked paper ballots instead of the Dominion, BMDs" for some uncertain time.  The only notice provided to the State Defendants about the nature of the hearing on September 9 is an email sent at 5:37pm on Tuesday, September 6, 2022.  Under these circumstances, a conference on discovery and relief limited to discovery disputes would be understandable.  But, to order the extraordinary relief Plaintiffs seek requires more reasonable notice, and is not permissible under the current circumstances.

## <u>INTRODUCTION</u>

Since at least 2017, Plaintiffs have sought a court order compelling the State of Georgia and its 159 counties to substitute hand marked paper ballots ("HMPBs"). This journey has taken the parties and the Court through (at least) ten preliminary injunction motions and several appeals. Indeed, threshold issues, including standing, remain pending before the United States Court of Appeals for the Eleventh Circuit.

After what was to be limited discovery confined to the issue of the Plaintiffs' standing, the case has taken another direction altogether. Plaintiffs' efforts now appear focused on incidents, occurring in 2020, in Coffee County, Georgia. Parroting the claims of the Plaintiffs in this case, supporters of then President Trump, as well as (or perhaps including) sympathetic former county election officials (who have since been terminated), granted unauthorized access to Coffee County's election equipment. Indeed, persons who brought the challenge to Georgia's voting equipment immediately after the election appear to have retained a firm to image and copy election data in Coffee County, and consulted with at least one Plaintiff in this case.[1]

---

[1] As has been noted many times, the *Pearson* lawsuit relied almost exclusively on Plaintiffs' theories and one of this Court's orders to argue that Georgia's election equipment had been hacked and was being manipulated. The only difference between the allegations of the *Pearson* plaintiffs and

Throughout this more recent round of discovery, Plaintiffs' position has been inconsistent.  At one point, they wrongly condemn the State for not conducting an investigation into the incidents in Coffee County despite the State's affirmation that a criminal investigation remains ongoing.  In addition, Plaintiffs have stated that the State Defendants are not permitted to conduct discovery into the Coffee County incident, while simultaneously accusing the State of sitting on its hands.  And, the Coalition Plaintiffs have argued that the State Defendants sent an untimely subpoena to Ms. Marilyn Marks, only to send two subpoenas after making that allegation.  These are the type of issues that can be heard at the conference on September 9.

However, Plaintiffs do not stop with discovery disputes.  Their email at 5:37pm on September 6, 2022[2] seeks their ultimate requested relief—on an expedited basis with no consideration of testimonial evidence, briefing, or opportunity for sufficient response by the State Defendants.  Worse yet, the nature of the conference changed dramatically between 8:19am on September 6, and 5:37pm.  Specifically, the morning email made a limited request and sought no relief:

> Plaintiffs need a telephone conference with Judge Totenberg at her earliest opportunity to address recent developments in Plaintiffs' Coffee County

those here, is that the *Pearson* plaintiffs articulated where the potential hack could have originated.

[2] A true and accurate copy of the email chain is attached as "Exhibit 1."

> discovery. We know that the Judge is extremely busy,
> but we believe a short conference is necessary and
> would be beneficial to the Court and the parties. We
> do not believe the conference needs to be confidential
> or attorneys only and that it would be beneficial to
> have client representatives from each of the State
> Defendants and the plaintiffs, and the parties'
> technical experts, present.

(Ex. 1.) While the State Defendants were curious about the need for a

conference to "address recent developments" in discovery, the State

Defendants did not object.

Several hours later, however, it became clear that the Plaintiffs now

seek a form of a temporary restraining order without filing a motion, a brief,

or providing an opportunity for the Defendants to do the same:

> Plaintiffs believe that these circumstances constitute
> an emergency and that the State Defendants,
> consistent with Georgia law and necessary to protect
> Plaintiffs' U.S. Constitutional rights, should direct the
> counties to use hand marked paper ballots instead of
> the Dominion BMDs, at least until the full
> ramifications of this breach of the statewide system
> can be understood and addressed.

(Ex. 1.) This request is impermissible under the United States Constitution,

binding precedent of the Eleventh Circuit, and the Federal Rules of Civil

Procedure. Consequently, the State Defendants object to the conference to

the extent that it is being used as a vehicle to obtain a court order for

substantive relief. (*Id.*).

## ARGUMENT AND CITATION TO AUTHORITY

The State Defendants do not oppose a discussion of outstanding discovery disputes, though several do not involve the State Defendants at all. To the extent that the Plaintiffs seek to turn the hearing into one where broader relief could be issued, the State Defendants object for several reasons. First, insufficient notice has been provided to the State Defendants to prepare. Second, binding Eleventh Circuit precedent forecloses the Plaintiffs' requested relief. Third, the prerequisites of Federal Rule of Civil Procedure 65 have not been met.

### 1. Constitutional Notice Has Not Been Satisfied.

It is axiomatic that "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United States Aid Funds, Inc. v. Espinosa*, 599 U.S. 260, 272 (2010) (citations omitted). This applies equally to the State Defendants.[3] Here, the State Defendants are uncertain as to several aspects of the Plaintiffs' requested relief. For example, what is the purported federal

---

[3] For example, the Court of Appeals of Georgia reversed a trial court's decision to award ultimate relief after noticing a hearing to "discuss with the Judge the status of the case, [and] any special needs. … The court may also rule on small motions. The Court will enter a Scheduling Order following the conference." *Ga. Dep't of Agriculture v. Griffin Indus.*, 284 Ga. App. 259, 261, 644 S.E.2d 286, 288 (2007).

constitutional violation that would warrant the extraordinary relief sought?
Second, would the relief be applied statewide or to Coffee County only?
Third, if it is to be statewide relief, what is the factual basis for statewide
application?  Fourth, are Plaintiffs seeking a temporary restraining order
under Rule 65(b), or a preliminary injunction under Rule 65(a)?  Fifth, will
the parties be permitted to brief these complex issues?  Sixth, will the Court
consider the ongoing criminal investigations—both by the State and now by
the Grand Jury in Fulton County—and if so, will the Court permit witnesses
to speak *in camera*? Seventh, if the violation is one that allegedly arises
under the United States Constitution, is there any evidence of actual
alterations of the State's Election System?  Eighth, to the extent that
Plaintiffs claim that "Georgia law" is at issue, which provision? (Ex. 1.)
Ninth, if Georgia law is the basis of the Plaintiffs' argument, is it identified in
the operative complaints?  Tenth, what are the implications of the Eleventh
Amendment and sovereign immunity to Plaintiffs' (seemingly new) state law
claims?

These are just some of the important issues that warrant briefing,
appropriate notice, and a hearing.  To be sure, there are more.  A three
sentence email, however, provides a constitutionally insufficient basis to
order the extraordinary and ultimate relief sought by the Plaintiffs.  If they

want to litigate these claims, there are certainly appropriate ways to do so.[4]

Sending an initial email that requested a mere "telephone conference," and a

"short conference" at that, falls well below the proper means of obtaining the

relief Plaintiffs appear to now seek tomorrow.

### 2. **The Eleventh Circuit Has Foreclosed Plaintiffs' Requested Relief.**

In 2020, the Eleventh Circuit issued an opinion in *Jacobson v. Florida*

*Secretary of State*, 974 F.3d 1236 (11th Cir. 2020). There, the plaintiffs sued

the Secretary of State and contended that a Florida statute—implemented by

county officials—violated the United States Constitution. *Id.* at 1253. No

county officials were parties to the litigation. Ultimately, the district court

"took the truly remarkable step of enjoining nonparties" from enforcing the

state law. *Id.* at 1258.

The Eleventh Circuit reversed the district court's decision for at least

two reasons. First, it concluded that the constitutional standing

requirements of traceability and redressability required the presence of the

county officials. *Id.* "That approach would have made for more defendants,

but nothing prevented the voters and organizations from taking that course

---

[4] The State Defendants do not agree that any of the issues are appropriately
before this Court, and certainly not at this time. The State Defendants
reserve all rights to object to any future motions to seek relief, particularly
this close to the time of an election. *See Republican Nat'l Comm. v.*
*Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).

of action." *Id.* Second, the Eleventh Circuit decided that relief compelling the state to act—specifically and "injunction ordering the Secretary to promulgate a rule requiring" action by the county election officials—"would have raised serious federalism concerns, and it is doubtful that a federal court would have the authority to order it." *Id* at 1257.

This binding precedent precludes the exact relief sought by the Plaintiffs here, and it certainly does at this stage of the litigation. Like the plaintiffs in *Jacobson*, Plaintiffs here have asked the Court to "*direct the counties* to use hand marked paper ballots instead of the Dominion BMDs" for an uncertain time. (Ex. 1.) The only county named in the lawsuit is Fulton County. The presence of the State Defendants does not save the Plaintiffs' claim either, as the court said in *Jacobson*. Put simply, even if the Court were to consider the merits of Plaintiffs' emailed request for relief, the Eleventh Circuit has already said "no."

### 3. <u>Plaintiffs' Request Is Inconsistent With the Federal Rules of Civil Procedure.</u>

Having been through four preliminary injunction hearings in this case already, all are familiar with Federal Rule of Civil Procedure 65. It provides two bases for expedited injunctive relief: temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a) and 65(b).

To the extent that the Plaintiffs seek a temporary restraining order, they have not satisfied the requirements imposed by the Federal Rules of Civil Procedure.[5]  Specifically, and certainly to the State Defendants' knowledge, the Plaintiffs have not provided any "specific facts in an affidavit or verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result" before the State Defendants can be heard to respond.  Fed. R. Civ. P. 65(b)(1)(A).

In the more likely event that Plaintiffs are seeking a type of preliminary injunction based on an email request, the requirements of Rule 65(a) are still not satisfied.  First, there must be notice that a party is seeking a preliminary injunction.  Fed. R. Civ. P. 65(a).  Second, despite Plaintiffs' request that all 159 counties be subject to an injunction, at best, only a few counties have been provided notice of a proposed preliminary injunction. Federal Rule of Civil Procedure 65(d)(2) limits the reach of preliminary injunction orders to parties, their agents and similar persons, and those acting in "active concert or participation" with either.  There has been no allegation made to support this requirement.  Third, the *Jacobson* decision

---

[5] Given the notice provided by the Plaintiffs, however insufficient in terms of substance to order relief, the State Defendants do not believe that the Plaintiffs are seeking a temporary restraining order.  Nevertheless, given the Plaintiffs' decision not to cite any authority for the relief they seek, the State Defendants provide this argument out of an abundance of caution.

applies with equal weight here, and demonstrates that statewide relief is unavailable in the light of the parties that are now presently before the Court.  Fourth, the Eleventh Circuit requires plaintiffs to "clearly establish" the grounds for a preliminary injunction, which cannot occur in the limited time that the Court has afforded the conference (saying nothing of the evidence itself).  *See Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  Fifth, the *Purcell* doctrine would preclude the imposition of such drastic relief this close to an election, and particularly without evidence on the feasibility of Plaintiffs' requested ultimate relief.  *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).

In short, Plaintiffs' requested relief—proceeding under any applicable Federal Rule of Civil Procedure—is inappropriate for a hearing such as this.

## CONCLUSION

Plaintiffs' initial request sought a "short conference" on discovery matters.  It has morphed into something far more significant and far less appropriate.  For these reasons, the Court should DENY any requests for relief regarding Georgia's election equipment or hand marked paper ballots.

Respectfully submitted, this 8th day of September 2022.

> */s/Vincent R. Russo*
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Josh Belinfante

Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Javier Pico Prats
Georgia Bar No. 664717
jpicoprats@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Filing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Filing has been prepared using 13-pt Century Schoolbook font.


_/s/Vincent R. Russo_
Vincent R. Russo