**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO MOTION TO QUASH
SUBPOENAS AND FOR ATTORNEY'S FEES AND COSTS
<u>BY CATHLEEN A. LATHAM</u>**

Latham's Reply (Dkt. 1480) doubles down on misrepresentations in her sworn deposition and Motion. It ignores evidence refuting her testimony and her representations to this Court, including that she searched for and produced all documents responsive to Curling Plaintiffs' subpoena. Latham's Motion should be denied and is itself sanctionable, as is her Reply. Exhibit 9 shows side-by-side comparisons of her testimony with her actual activities on January 7, 2021.

Plaintiffs have a compelling need for the data from Latham's devices because she was a primary facilitator of the breach of Georgia's voting system. And as former GOP caucus chair for over 125 Georgia counties and a key player among those who tried to overturn the 2020 Presidential election, such as with alternative (or "fake") electors, she likely still has highly relevant communications. Her data likely will reveal additional details about the work performed and information obtained in the breach, what was done with the compromised software and data, and the people involved in planning and orchestrating the breach, which puts voters and future elections at enormous risk.

## I. New Evidence Further Refutes Latham's Arguments and Allegations and Underscores the Importance of Her Subpoenaed Data

Latham's Reply asserts that Plaintiffs "attempt to twist [her] innocent oversight and a few deposition answers based on [her] best memory of the events on January 7, 2021 that may not, as it turns out, be fully accurate." (Reply 22.)

1

The claim that her deposition testimony "*may not* … be fully accurate" highlights the persistent refusal of Latham and her counsel to be straight with this Court about the facts. Her testimony was nothing close to "fully accurate."

Latham testified *under oath* that she was not involved and was only very briefly present in the Coffee County Elections Office in the late afternoon on January 7, 2021, when Georgia's voting system was breached; she claimed she spent the day teaching.[1] Even now, faced with irrefutable video and sworn deposition evidence of her *active* presence in the Elections Office nearly the whole day and of her lead role orchestrating Georgia's voting system breach, she tries to dismiss her false testimony as a mere "innocent oversight" and her "best memory of the events." (Reply 22.) Rather than finally approach this Court with the

---

[1] Latham testified repeatedly under oath about how "tired" and "exhausted" she was and just wanted to avoid people and go home after an early dinner following a day of teaching. (Dkt. 1470-1 at 119, 121, 139, 141, 206.) She also testified she could not have been at the Elections Office on January 7 outside of the "few minutes" because she "taught a full schedule." (*Id.* at 205; *see also* https://www.washingtonpost.com/investigations/2022/09/06/coffee-county-georgia-breach-logan/ ("'Mrs. Latham . . . does remember going to the Elections Office after teaching school on January 7, 2021 to check in on some voter review panels from the runoff election, and she truthfully testified to those facts,' Cheeley, her lawyer, told The Post.").) But surveillance video evidence shows her in the Office nearly the entire day, as Sullivan Strickler confirmed under oath. (Ex. 6.)

2

honesty and candor required of her and her counsel,[2] they would have this Court believe that she somehow forgot that she coordinated directly with Paul Maggio and Scott Hall to get them to the Elections Office on the morning of January 7, 2021, personally escorted Maggio's team as well as Hall and his programmer into the Office, and spent nearly the full day in the Elections Office, *including directing the Maggio team what to copy*, which they did in plain view for virtually every component of the voting system.  That's not the sort of conduct one innocently "forgets" under oath in a deposition she knew would be specifically about the Coffee County voting system breach.  Exhibit 9 highlights just some of the stark contradictions between her sworn testimony and her actual conduct.

Especially egregious is Latham's claim (twice made) that "[n]o one who was present in the Coffee County Elections Office on that day has even suggested that Mrs. Latham participated in whatever SullivanStrickler and others were allegedly doing because she was not." (Reply 22, 23.)  This is simply untrue.  It ignores video evidence and sworn testimony from SullivanStrickler—which Plaintiffs obtained after their Opposition was filed—confirming that she was "one of the primary points of contact for organizing and facilitating" the forensic work they

---

[2] Plaintiffs invited Latham, through her counsel, several times to withdraw the Motion Latham and her counsel instead doubled down on those misrepresentations in correspondence and again in the Reply.  (*See* Ex. 10.)

3

performed that day in the Elections Office.  (Ex. 2 at 119:4-15.)  In fact, she "was literally the person who welcomed Mr. Maggio and his team at the elections office the morning of January 7, 2021."  (*Id.* at 125:11-20.)  SullivanStrickler explained that Latham even "presented herself as a Coffee County elections official."  (*Id.* at 125:21-126:2.)  And SullivanStrickler testified that, among others, "Cathy Latham also provided direction on what was required for collection."  (*Id.* at 146:10-21.)  ***The video evidence, described below, corroborates this testimony***.  (*See* Exs. 3-5, 8-9.)

Tellingly, Latham offers no explanation of what she supposedly believed the Maggio team was there to do if not what she saw, heard, and personally directed them do that day and just what the team is trained to do.  She offers no explanation for why she coordinated their arrival, escorted them into the Office, and spent the day with them in the Office.  The Reply doubles down on the misrepresentations.

Evidence that was not available when Plaintiffs filed their Opposition on August 30, 2022—and that Latham conveniently ignores or dismisses in her Reply—decimates her claims of innocence.  The timeline of Latham's involvement, as appended to Plaintiffs' Opposition, is attached hereto as Exhibit 6, now supplemented with the new evidence noted in red.

Most significantly, on August 30, 2022, the Coffee County Board of

Elections produced some 90 days of security camera footage from the entrance of the Board of Elections Office.[3]  Still shots of that video are at Exhibits 3, 4, and 5 hereto[4].  Still shots of additional Coffee County Elections Office video just received are at Exhibits 8-9.  The video belies Latham's testimony at her deposition that she was only in the Elections Office for a few minutes after 3:48 p.m. on January 7, 2021, because she taught a full class schedule, that she didn't fully go in to the Office because she saw people and "get[s] uncomfortable when there's others," that she did not know why Paul Maggio and Scott Hall were flying in or to see whom, that she never talked to Paul Maggio, and that she doesn't know

---

[3] The Coffee County Board of Elections repeatedly represented that no such video existed, but ultimately produced it on August 30, 2022, after persistent follow-up from Plaintiffs.  The Board then claimed that no additional video existed because it gets periodically overwritten.  But the day of this Court's order permitting this sur-reply, the Board sent for Saturday delivery 250GB of additional surveillance video from two more cameras for a longer period.  Suffice to say that nearly all those involved in the breach have been less than forthcoming with information.  While Plaintiffs' investigation of the new video continues, it corroborates that Doug Logan of Cyber Ninjas and Jeffrey Lenberg, a computer analyst—both under investigation for breaking into voting equipment in Michigan—were present in the Office on January 18-19, with Lenberg returning on January 25-29.  The new video appears to show that a Secretary of State investigator entered the Office on January 26 while Lenberg was there, giving the State notice of his presence (*see* Ex. 11).

[4] A portion of the video showing Latham escorting the SullivanStrickler team, Hall, and another individual with Hall into the Coffee County Elections Office the morning of January 7, 2021, is viewable at https://www.cnn.com/2022/09/06/politics/surveillance-video-voting-machine-breach-coffee-county-georgia/index.html.  Given the large size of the video, Plaintiffs will provide it to the Court upon request.

5

from where the scanner was borrowed to scan the Coffee County ballots. (*See* Dkt. 1470-1 at 129, 134, 136, 171-172, 205.) The video also refutes other portions of her sworn deposition testimony. (*See* Ex. 9.)

The video shows Latham, an unidentified man (neither were election officials), and Misty Hampton were alone in the Coffee County Elections Office on January 6, 2021, after it closed at 5:04 p.m. until 7:39 p.m. with unsecured PollPad equipment and walking freely throughout the office. (Ex. 5 at 1-2.) *During that time*, Latham was on the phone with Scott Hall "about wanting to come scan our ballots from the general election like [was] talked about the other day" and texted Scott Hall's email address to Misty Hampton. (Dkt. 1470-2 at 1, 5.) The next day, January 7, 2021, Latham entered the Coffee County Elections Office at 11:37 a.m., shortly after she had asked Paul Maggio by text how far out he was.[5] (Ex. 3 at 6; *see also* Ex. 2 at 291:13-18 (SullivanStrickler deponent confirming "Cathy Latham was there for most of the day"); Ex. 1 at 38:2-8 (Coffee County Board of Elections deponent confirming still shots of the video show Latham, then-chair of the Republican Party for Coffee County, was present at the Elections Office on

---

[5] As noted in Plaintiffs' Opposition, this text message exchange was never produced by Latham, who instead misleadingly testified that she never spoke with Maggio whereas she actually spent most of January 7, 2021 in the Elections Office with him. (*See* Dkt. 1470, Opp. Appx. A at A-1.)

January 7 at 11:37 a.m.) At 11:40 a.m., Latham stepped outside and repeatedly looked at and interacted with her phone (which suggests she may have received additional texts from or about the two teams arriving that morning that she has not produced). (*See* Ex. 3 at 7.) Three minutes later, she welcomed and escorted three individuals into the Elections Office at 11:43 a.m. (Ex. 1 at 39:17-23; Ex. 3 at 8-9.) Those individuals were Paul Maggio, Jim Nelson, and Jennifer Jackson of SullivanStrickler. (Ex. 2 at 126:3-13.) Inside, she made introductions. (Ex.8 at 7-10.) At 11:44 a.m., Latham was outside again, repeatedly interacting with and speaking on her phone while waiting for another team of individuals. (Ex. 4 at 35-37.) She then welcomed and escorted two more people into the Office at 11:50 a.m. (Ex. 4 at 38-39; Ex. 1 at 41:7-16 (confirming that at "11:45 am., Miss Latham is standing outside the door on her phone" and five minutes later "Latham is escorting two more individuals into the office."); Ex. 8 at 12-13.) These individuals were Scott Hall and a man whom Hall introduced as a programmer. (Ex. 2 at 127:13-19; 234:14-22.) Apart from a brief time when she left the Office between 1:26 p.m. and 3:51 p.m., Latham was in the Office all day until 6:19 p.m. The internal video shows her interacting much of the day with Hall, Maggio, and the other participants, looking at the "programmer's" computer, sitting at the table where electronic PollPads were copied, hugging and taking selfies with the

7

SullivanStrickler team, and interacting with her phone often. (Exs. 8, 9.) Exhibit 9 shows side-by-side comparisons of her sworn testimony with her actual activities of the day. During the breach of the voting system that day, at 1:39 p.m., former chairman of the Coffee County Board of Elections, Ed Voyles, (who also was present for the breach) entered with a device appearing to be a small portable scanner, which Latham came to collect and remove on January 20, 2021. (Ex. 5 at 3-5.) Latham's Reply does not address these devastating facts and instead repeats the false claim that she was just an innocent bystander in all this.

Since the filing of Plaintiffs' Opposition on August 30, 2022, Wendell Stone, the Coffee County Board of Elections 30(b)(6) witness, also confirmed Latham is in the video literally holding the door open for Maggio, Hall, and others to enter the Elections Office the morning of January 7, 2021. He confirmed none of these individuals were Coffee County election officials (Ex. 1 at 40:21-24; 42:13-18.) Latham herself was not an election official and had no responsibilities for Coffee County elections. (Ex. 1 at 38:2-22.) And as she now admits—contrary to what she conveyed to the Sullivan-Strickler team—she had no authority to permit the copying of Georgia's voting system equipment and data that day.[6]

---

[6] *See* https://www.cnn.com/2022/09/06/politics/surveillance-video-voting-machine-breach-coffee-county-georgia/index.html ("A lawyer representing Latham

These new facts—which Latham pretends do not exist—refute her unsubstantiated insistence that she did not "participate[] in whatever SullivanStrickler and others were allegedly doing." (Reply at 23.) *She literally directed them on what to collect in the Office.* That she still cannot be straight with this Court about her role in the breach confirms that she cannot be trusted to have produced all responsive documents about those critical events. Tellingly, she has never confirmed compliance under oath, instead asserting the Fifth Amendment.[7]

## II. Latham's Reply Makes Additional Material Misstatements and New Arguments not Raised in Her Motion

Latham's Reply argues that "[n]owhere in their subpoena or in their 696 pages of responsive filings do Plaintiffs identify a *single* specific communication or document that they believe their requested forensic imaging will unearth, much less how that communication or document goes to the heart of their claims or defenses." (Reply at 6.) Setting aside the tautology that Plaintiffs cannot describe a specific document that they do not have and that Plaintiffs' Opposition is only 23

---

did not dispute the facts of the story and said that Latham did not have the authority to 'authorize anyone to do anything with the ballots.').

[7] As yet another example of Latham's lack of candor, Exhibit B to the Reply was attached to support Latham's claim that she was a proper elector and is being defamed. Exhibit B is a motion to quash filed by Latham and others—*Latham omits the Fulton County Superior Court's Order denying it*. See Order, https://www.documentcloud.org/documents/22120757-order-to-disqualify-district-attorney-7-25-2022.

pages (with the bulk of the exhibits being the full deposition transcripts of three witnesses), Latham's contention is wrong. First, Plaintiffs identified *multiple specific documents* Latham failed to produce, including correspondence with Paul Maggio, Misty Hampton, and Scott Hall. (*See* Opp. 1-2, 9-11.) Added to this are the photos she is seen visibly taking on that day. (Ex. 8 at 34, 58-59.) These failures indicate she has other documents or they may be recoverable from her devices or cloud storage. Second, Plaintiffs have explained that they need "email, text messages, iMessages, and encrypted communications" as to "the relevant individuals, dates, and events," including specifically "with the individuals involved in the breach of the Georgia voting system." (Opp. 12-13.) Obviously, Scott Hall, Paul Maggio, SullivanStrickler, Misty Hampton, Sidney Powell, Robert Sinners, and Eric Chaney were discussed at length in Plaintiffs' Opposition. Plaintiffs already have described the relevance of this discovery and do not reiterate it here. (Opp. 14-18; Dkt. 1476 at 4-26.)

Latham, in insisting that she "has cooperated in the discovery process," argues that "she had inadvertently missed Scott Hall's email address – magnolia64@gmail.com[8] – because it did not contain his name, for which she *had*

---

[8] The email address is actually magnolia64@protonmail.com. That she identified a *different* email address in her Reply suggests a second email address for Hall for which she has not produced documents.

10

searched" and that those emails have now been produced. (Reply at 6, 21.) But Latham omits that those emails were finally produced *just a few hours before Latham filed her Reply*, several weeks after her deposition and *three months* after the subpoena that sought those emails. **And those emails support the subpoena**:

- Although Latham testified that she only ever used a proton email address briefly for a campaign in 2022 and did not have a proton email address around January 2021 (Dkt. 1470-1 at 155), the just-produced emails reveal that she interacted with Scott Hall in February 2021 **with a proton email address using the Proton Mail Mobile application**. (Ex. 7)

- Although Latham represents that she "*had* searched" for Scott Hall's *name* in her email when she initially produced documents (Reply at 21), she has Scott Hall's email address specifically assigned to "Scott" in her proton mail and **Scott Hall's full name shows up in the just-produced emails** tying it specifically to the magnolia64@protonmail email address. This refutes her claim that she searched for and produced emails *with his name* and had forgotten to whom that email belonged. (Ex. 7.)

Even with this recent production, she *still* has not produced correspondence that exists as demonstrated by the production of other witnesses and her own testimony, including the correspondence with Paul Maggio and Misty Hampton, among others. (*See, e.g.* Dkt. 1470-1 at 122 (discussing email she woke up to on the morning of January 7, 2021, that neither she nor anyone has produced). In light of her repeated and sustained failures to comply with the original document subpoena and her repeated false statements in her deposition, Motion, and Reply, her representations simply cannot be taken at face value. Notably absent from her

Motion and Reply is a declaration stating *under oath* that she has thoroughly searched for and produced all responsive documents within her possession, custody, or control. In fact, she pled the Fifth on the *very questions* of what efforts she undertook to search for responsive documents, whether she searched her personal devices, whether she withheld responsive documents, and what the basis was for her counsel's representation that she had performed a diligent search. (*See* Opp. 12.) That representation from her counsel proved to be incorrect, as it remains today. The Court should infer from Latham's Fifth Amendment invocation in response to specific questions about complying with the document subpoena that any honest answer would have been unfavorable to her and thus she failed to comply with the subpoena. (Opp. 21.)

Latham also claims that "[a]s a nonparty witness, Mrs. Latham was [not] **on notice** *or under any duty to preserve such communications*, and she did not. Their absence is more of an indication of her nonparty status in this case than any indication of obfuscation or malfeasance." (Reply 6 n.2 (emphasis added).) But this too is incorrect. Latham ignores what Plaintiffs noted in their Opposition:

> Latham should have been on heightened alert to be cautious with her electronic data because on December 23, 2020, Latham received a letter from Dominion's counsel instructing her to ensure that she maintain emails, text messages, recordings, voice mails, drafts, notes, communications, documents, data, and electronically store information relating in any way to the use of the Dominion election system in the

12

>November 2020 election. (Dkt. 1470-10.) So all her documents related to the Coffee County breach should have been preserved. (Opp. 11 n.5.)

Latham now confirms that *despite this notice*, she deleted emails, text messages, and other documents that she was "on notice" to preserve as of December 2020 before the Coffee County voting system breach. (*See* Reply 6 n.2.)

Latham also now argues that because she failed to turn over responsive documents *authored by or sent to her* that were ultimately produced by others, her discovery failures are excused and the requested discovery is simply "cumulative of what [Plaintiffs] already have." (Reply 4, 15-16.) This misses the point. That *Latham* failed to produce these highly relevant documents undermines her claim that she produced all responsive documents. Moreover, her argument *assumes* that Plaintiffs have received from others *all* the discovery *Latham* has, but several of the individuals known or suspected to have engaged with Latham have *not* produced documents, such as Eric Chaney (or any Coffee County Elections Board Member for that matter), Scott Hall, Doug Logan, and Stefanie Lambert.

Latham argues for the first time that the cost of imaging her personal electronic devices "is prohibitive." (Reply 13.) But she offers no evidence of this, instead citing supposed *generic* expenses of forensic copying—and the authority she cites (none from this district) actually supports Plaintiffs. In *Powers*, the court confirmed that "at times, 'perhaps due to improper conduct on the part of the

13

responding party,' the requesting party itself may need to do its own examination." *Powers v. Thomas M. Cooley L. Sch.*, 2006 WL 2711512, at *4 (W.D. Mich. Sept. 21, 2006).  But in that case, the court "made no findings that Ford had failed to comply properly with discovery requests," which is not the case here.  *Id*.  *Cf. Barton & Assocs., Inc. v. Liska*, 2020 WL 8299750, at *1 (S.D. Fla. May 11, 2020) (finding that, because a witness had failed to produce copies of any text messages during the non-compete period and had failed to preserve his phone, a forensic examination was warranted).  *Motorola* is simply irrelevant.  *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 919 (N.D. Ill. 2019) (rejecting *three-week forensic examination* of multiple computers in China which were not relevant to claims concerning Malaysia).

All that is required of Ms. Latham is mere hours at a reasonable location of her choosing for the vendor to extract the information.  This can be done in a manner that safeguards Latham's privacy concerns—a fact she glosses over.  The vendor can create a temporary forensic image of specific portions of the device, to be destroyed shortly thereafter and comprising data from all communication apps (i.e., Signal, SMS, MMS, iMessage, WhatsApp, Gmail, and the like), the log of phone calls made and received, voicemails, photos, videos, and other documents.  Using that image of the device, *the vendor*, not Plaintiffs or their counsel, can

14

search for and extract all relevant documents/data according to specific parameters, including a date range, relevant names and phone numbers, search words, and the like. A list of "potentially privileged" search terms, with Latham's input, can also be used to ensure that communications with her counsel entitled to attorney-client privilege are not provided. Once the vendor has confirmed a successful extraction based on these parameters, the vendor will delete the forensic image. Standard terms to claw back any legitimately privileged documents could apply. The vendor can be appropriately supervised throughout the process.

Latham's remaining argument for refusing production, that her documents are entitled to Fifth Amendment privilege, fails for the reasons the Court already stated. The Court already rightly held in this case, in ruling on Maggio's motion to quash, that "the Fifth Amendment does not prohibit the production of documents when the creation of the documents was not compelled." (Dkt. 1442 at 4; *see also* Opp. 18-21.) Plaintiffs are not asking Latham to create any documents.

## CONCLUSION

Latham's Motion should be denied. Her failure to produce highly relevant electronic documents and her repeated false claims, including in sworn testimony and briefs filed with the Court, confirm that she cannot be trusted to properly search for and produce responsive documents and data.

Respectfully submitted this 19th day of September, 2022.

| | |
|---|---|
| */s/ David D. Cross* | */s/ Halsey G. Knapp, Jr.* |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Veronica Ascarrunz (*pro hac vice*) | Adam M. Sparks |
| Hannah R. Elson (*pro hac vice*) | GA Bar No. 341578 |
| MORRISON & FOERSTER LLP | KREVOLIN & HORST, LLC |
| 2100 L Street, NW, Suite 900 | 1201 West Peachtree Street, NW |
| Washington, DC 20037 | Suite 3250 |
| (202) 887-1500 | Atlanta, GA 30309 |
| | (404) 888-9700 |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

| | |
|---|---|
| */s/ Russell T. Abney* | */s/ Bruce P. Brown* |
| Russell T. Abney | Bruce P. Brown |
| Georgia Bar No. 000875 | Georgia Bar No. 064460 |
| WATTS GUERRA, LLP | BRUCE P. BROWN LAW LLC |
| 4 Dominion Drive, Building 3 | 1123 Zonolite Rd. NE |
| Suite 100 | Suite 6 |
| San Antonio, TX 78257 | Atlanta, Georgia 30306 |
| (404) 670-0355 | (404) 881-0700 |

*Counsel for Plaintiff Coalition for Good Governance*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2022, a copy of the foregoing **PLAINTIFFS' SURREPLY IN OPPOSITION TO MOTION TO QUASH SUBPOENAS AND FOR ATTORNEY'S FEES AND COSTS BY CATHLEEN A. LATHAM** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

                                                                     */s/ David D. Cross*
                                                                     David D. Cross