# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## COALITION PLAINTIFFS' EXPEDITED MOTION FOR LIMITED RELIEF FROM PROTECTIVE ORDER (DOC. 477)

Coalition Plaintiffs respectfully move this court on an expedited basis for certain relief related to this Court's Protective Order (Doc. 477), and in support thereof state as follows:

**I.  Expedited Relief Requested by This Motion**

Coalition Plaintiffs seek leave to designate Marilyn Marks as an "expert and consultant" pursuant to Paragraph 5(b)(ii) of the Protective Order, (Doc. 477, at 10), with respect to all "Attorney Eyes Only" ("AEO")-designated Coffee County-related [1] discovery documents including AEO-designated deposition testimony.

---

[1] Plaintiffs use the term "Coffee County related discovery" to include not only discovery related to the voting system breach and related security issues in the aftermath of the November 2020 election in Coffee County, Georgia, but similar attempts at unauthorized access of the voting system in other Georgia counties. For example, Plaintiffs have recently learned of a similar contract with SullivanStrickler under negotiation during 2021 with Spalding County.

1

Relief is requested on an expedited basis because Coffee County related discovery is at a critical stage, and counsel is being hindered, even this week, from effectively prosecuting this important stage of discovery without having benefit of Ms. Marks's full involvement. A form of Proposed Order is attached.

The requested relief is necessary because Coalition Plaintiffs' legal team urgently requires Ms. Marks's assistance, subject matter knowledge, and expertise as they conduct the remaining discovery, summary-judgment work, and trial-preparation efforts in this case. To represent Coalition Plaintiffs most effectively, counsel needs the freedom to fully utilize Ms. Marks in the role of what is essentially a consulting expert/senior paralegal as they already do daily on non-AEO designated materials. The requested relief would permit this by allowing Ms. Marks to immediately receive and review Coffee County-related discovery documents and hear complete deposition testimony even if such subject matters have been designated as AEO.

As the Court is aware, a Rule 30(b)(6) deposition of the Secretary of State's office is scheduled for October 12, 2022, and Plaintiffs have this week learned that all documents produced in advance of the Coffee County breach-related deposition have been improperly designated by State Defendants as AEO. Without resolution of this issue, and without the relief requested by this Motion, Coalition Plaintiffs' counsel will suffer the disadvantage of not having Ms. Marks's knowledge and

input during their examination of the 30(b)(6) witness. Counsel routinely relies on Ms. Marks's significant involvement at each deposition to prepare outlines, provide real time follow up questions, advise counsel on the credibility of the witnesses' testimony based on her wide-ranging factual knowledge. Through this expedited motion, Coalition Plaintiffs are attempting to avoid the prejudice that has been a recurring issue in depositions. During technical testimony of AEO documents in prior depositions, Coalition counsel was prejudiced in his ability to confer at breaks about testimony concerning "as deployed" technology after Ms. Marks, with her Georgia-specific knowledge, was excluded from hearing that testimony because it concerned purported AEO topics. This problem is exacerbated in the context of discovery targeting the tangled yet unfolding statewide voting system breach that occurred through Coffee County, which involves dozens of players at a local, state, and national level with various roles and quiet relationships. Access to Ms. Marks's detailed knowledge and input to help assess and contextualize AEO documents and testimony is required for Coalition Plaintiffs' counsel to be able to conduct this critical discovery most effectively.

Ms. Marks's efforts are largely responsible for initiating the exposure, through this case, of the largest known breach of a voting system in the nation's history. State Defendants fully understand the key role that she plays as a member of the Coalition Plaintiffs' legal effort on the Coffee-related issues. Therefore, it is

no surprise that they seek to minimize her access by weaponizing their ability to designate documents as AEO now, a litigation tactic that has been very successful to date and that will certainly not stop even if the Court were to de-designate specific Coffee-related documents on a case-by-case basis. The AEO-restriction process itself, as it has been applied in this case, has undoubtedly prejudiced Coalition Plaintiffs' litigation efforts.

Ms. Marks consented to the Court's jurisdiction and disciplinary authority for purposes of reviewing confidential material under the Protective Order in July 2019 and has fully honored the terms of that order for over three years. There is no evidence in the record that she has failed to meet any requirement of the Protective Order that governs the handling and protection of confidential information. Moreover, there are no grounds whatsoever in the record for the Court or any parties to doubt, much less suggest, that Ms. Marks would fail to handle and protect AEO material with equal integrity.

From 2019 to now, the State Defendants have succeeded in persuading the Court to deprive Coalition Plaintiffs' counsel of the ability to choose and utilize Ms. Marks as a consulting expert over their repeated requests to be able to do so. The only rationale ever set out on the record for Ms. Marks's exclusion from viewing AEO materials in this case came at the very outset of the Protective Order's coverage and consisted of the Court's observations that she, like the

individual Plaintiffs, is a "committed activist" in the area of election security and that she (as the principal officer of the sole organizational Plaintiff), also like the individual Plaintiffs, lacks the "same obligations . . . in terms of confidential information" as "somebody who is a direct agent like an expert who works in a very secure field." [2]

These grounds are not, and have never been, sufficient to justify the prejudice that has resulted from depriving Coalition Plaintiffs of their ability to utilize one of their most knowledgeable experts throughout key moments of this case. Nevertheless, with only a short time now left in discovery, Coalition Plaintiffs are focused on the future—on concluding the remaining critical discovery that relates only to the state's voting system breach, which will allow them to bring this stage of the case to a close.[3]  Without waiving their right to request complete relief from the Protective Order's AEO restrictions with respect to Ms. Marks at some future time, Coalition Plaintiffs for now respectfully request only that they be permitted to make use of Ms. Marks's case knowledge and

---

[2] *See, e.g.*, Doc. 438, Tr. at 34:14–:23 (June 28, 2019).

[3] Because issuance of the appellate mandate with be forthcoming in light of the Eleventh Circuit's ruling in the interlocutory appeal of pollbook and scanner orders on October 5, 2022, (Doc. 1502), this Court will shortly resume jurisdiction over those issues.  Coalition Plaintiffs accordingly intend and reserve their right to proceed with further discovery and trial on the merits of those claims.

unique subject matter expertise for the Coffee County-related discovery just as if she were any other consulting expert or in-house legal staffer.

## II.  Background

Marilyn Marks, Executive Director of Plaintiff Coalition for Good Governance, has the most comprehensive knowledge of how voting systems and Georgia's statutory and regulatory requirements and actual election processes intersect of any expert to whom Coalition Plaintiffs' counsel have access. Her expertise, despite the limitations on counsel's ability to make use of it, has been crucial to informing the Coalition Plaintiffs' claims and allegations at all stages of the case.  Probably precisely because Ms. Marks's knowledge is so evident, ever since the Protective Order first became a subject of negotiations between the parties, the State Defendants have implacably opposed her ability to access AEO discovery materials, even in the capacity of a consulting expert—even though nonparties like Dominion and CISA, non-lawyer support staff such as paralegals and law-firm summer associates, and all other experts on all sides in this case (including those with more specialized technical, and thus narrower, scopes of knowledge than Ms. Marks) have been permitted to review *all* AEO materials as a matter of course without facing any similar objections.  Due to resource constraints (which have largely prevented challenges to the large volume and frequency of wrongly designated AEO documents), Coalition Plaintiffs have done their best to

work around the State Defendants' restriction of Ms. Marks's role and to achieve their clients' litigation objectives without the benefit of her full input before now, rather than spend scarce resources to raise this issue through a formal motion. But the situation has become untenable, especially since there is no good reason for Ms. Marks to be excluded from the critical Coffee County-related discovery and depositions and since summary judgment practice is imminent. Ms. Marks will be needed by Coalition Plaintiffs' counsel and other experts to advise during the acquisition of the key remaining Coffee-related evidence as the legal team wraps up discovery.

When the proposed Protective Order was first negotiated between the parties—in the context of discovery disputes over production of the GEMS database taking place under the significant time pressures posed by the impending July 2019 preliminary injunction hearing [4]—the State Defendants insisted on excluding Ms. Marks from the list of individuals able to review AEO information. Coalition Plaintiffs very reluctantly agreed to the adoption of any AEO category at all on the basis of two assumptions: (1) that the AEO designation would be used sparingly for security-sensitive proprietary technical material, as appeared to be the Court's and parties' intentions at the time when the Protective Order was adopted;

---

[4] *See, e.g.*, Doc. 438, Tr. at 34–35, 48–52 (June 28, 2019) (discussion of AEO provisions and Ms. Marks's exclusion.)

and (2) that Ms. Marks could later appropriately be designated as a consulting expert pursuant to Paragraph 5(b)(ii) and could by that means review AEO discovery materials other than the GEMS databases, which the State portrayed (falsely) as being exceptionally sensitive, even without being individually named as a person specifically authorized to review AEO material.[5]

These assumptions proved to be mistaken, since the State Defendants immediately began abusing the AEO designation to shield materials that were not appropriately so restricted, such as (for example) user manuals and guidance documents that were publicly available outside of Georgia and not generally treated as being sensitive by Georgia officials during elections. (Such "AEO" materials were, for example, routinely kept on open bookshelves and shared widely with even temporary workers without non-disclosure agreements or protections against onward distribution.) And the perceived need for AEO treatment to be given to the GEMS databases ultimately proved to be based on a misleading representation by State Defendants about the sensitivity of those databases.

It is well accepted in complex litigation that counsel may require the assistance of consulting experts to assist counsel in understanding the nuances and

---

[5] Paragraph 5(b) of the Protective Order permits disclosure of "Attorneys' Eyes Only" information or items to "(ii) experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to Be Bound'." (Doc. 477, at 10.)

technicalities of a case, and planning discovery efforts, litigation strategy, and selection of and coordination work with testifying experts. Discovery aimed at the statewide voting system breach that occurred in Coffee County not only involves the technology aspects of the breach and the resulting impact on the statewide voting system, but also requires knowledge and exploration of the highly specific set of facts, players, relationships, activities of local citizens, state officials, and nationally known figures. Ms. Marks researches and maintains a voluminous base of knowledge about parallel and related events and legal proceedings, as well as relationships, to a degree that profoundly contributes to the legal effort in this case but that would simply be impossible for the attorneys to do, given the time and resources that would be required of them. Accessing and incorporating Ms. Marks's knowledge requires the legal team to be able to discuss all aspects of their Coffee County discovery efforts with her.

    The inability of Coalition Plaintiffs' legal team and experts to fully share information with Ms. Marks has deprived them of the ability to make even more effective use of her expansive knowledge to help review, synthesize, and contextualize the great volume of substantial documentary evidence that has been produced as AEO. This inability to utilize Ms. Marks fully has adversely impacted efficiency, as well as profoundly burdened, and in some instances stymied, efforts by Coalition Plaintiffs' counsel to appropriately coordinate and focus the work of

the legal team's other experts. For example, none of Coalition Plaintiffs' more traditional experts have (or could be expected to have) Ms. Marks's Georgia-specific knowledge and hundreds of hours of observation of Georgia on-site election activities and challenged practices. Ms. Marks's knowledge has guided the Coalition Plaintiffs' election observation efforts, which have in turn resulted in hundreds of pages of declarations that this Court has cited in its orders.

Ms. Marks's singular knowledge and expertise, which bring together the understanding of the voting system design, its operation and performance in the polling place, and an understanding of applicable law and the particular factual and legal claims in the case, is simply not available from any other consultant accessible to Coalition Plaintiffs' counsel and experts. Preventing Coalition Plaintiffs' experts and counsel from sharing the AEO material needed to permit them to access Ms. Marks's insights threatens to prejudice the Coalition Plaintiffs' claims at this critical juncture.

### III. Reasons for This Court to Grant the Relief Requested

This Court entered the Protective Order (Doc. 477) pursuant to its authority under Rule 26. "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The standard that is required to justify a protective order is "good cause," but there is also a requirement to balance the interests of those requesting the order. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) ("Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order.").

There are four factors "for ascertaining the existence of good cause which include: '[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). "A district court must articulate its reasons for granting a protective order sufficient for appellate review." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987).

A standard substantially higher than mere "good cause" should be required for adopting AEO restrictions like the one here—especially over the objection of a party—because AEO restrictions are far more restrictive than is a normal protective order. "Requiring an 'attorneys' eyes only' designation is a drastic remedy given its impact on the party entitled to the information, in that it prevents a party from reviewing documents with counsel, and can hamper the ability of the party to present his or her case." *Water Tree Ventures, LLC v. Giles*, No.

11

3:18cv1421-MCR-HTC, 2019 U.S. Dist. LEXIS 244686, at *13 (N.D. Fla. Apr. 26, 2019). "Therefore, any designation of material as 'attorneys' eyes only' should be reserved for only those rare instances in which it is truly justified . . . and there is no other effective alternative." .*Gillespie v. Charter Communs*., 133 F. Supp. 3d 1195, 1202 (E.D. Mo. 2015) (internal quotation marks omitted). "Generally, an 'attorneys' eyes only' designation is an appropriate only in cases involving trade secrets, patents, or other intellectual property." *Id.*; *see also In re city of New York*, 607 F.3d 923, 935-36 (2d Cir. 2010) (AEO restrictions are a "routine feature of civil litigation involving trade secrets.").

Applying these standards, this Court's imposition of an AEO restriction should arguably be reconsidered and revoked altogether. But Coalition Plaintiffs, for now, seek only to eliminate the restriction with respect to a limited subset of the AEO material in this case—namely, all Coffee County-related discovery documents including AEO-designated deposition testimony.

There is no reason why AEO restrictions should be applied to any of the Coffee County-related material. The Eleventh Circuit has approved AEO restrictions where case circumstances suggest that a genuine threat to disclose highly sensitive information may exist. *In re Sec'y, Fla. Dep't of Corr*., No. 20-10650-J, 2020 U.S. App. LEXIS 9894, at *4, *6 (11th Cir. Mar. 30, 2020) (permitting restriction "only for a small subset of the prison information sought

12

which would impair the security and safety functions of the prison if disclosed other than to plaintiffs' counsel" in a lawsuit brought by "currently incarcerated prisoners"). But no such threat of disclosure—by Ms. Marks—has been suggested to exist in this case, much less shown to be substantiated by <u>any</u> grounds in the record. Whatever their passion for their cause may be, even "committed activists" can hardly be fairly or objectively presumed to be just as likely to violate a protective order as incarcerated prisoners, and Ms. Marks in particular—especially given the utter absence of any showing by the State to the contrary—deserves more benefit of the doubt than a group of convicted criminals still serving their sentences.

An additional reason for eliminating the AEO restriction on Ms. Marks exists because Coalition Plaintiffs properly have the right to choose Ms. Marks as a consulting expert if they wish to do so. The fact that she is a principal officer of an organization plaintiff should make no difference; if Ms. Marks were to quit her position with Coalition for Good Governance, her expertise would still make her a necessary and invaluable part of Coalition Plaintiffs' counsel's legal team. Indeed, had Ms. Marks not been Executive Director of Coalition for Good Governance when this case began, counsel could have utilized her as a consulting expert without even *telling* the State Defendants about her role under the terms of the

Protective Order, which does not mandate disclosure to the opposing side of the identity of a party's non-testifying consulting experts.

Courts have recognized that identification of a party's consulting experts may be appropriate when good cause exists, such as the legitimate concern of a commercial business to verify whether it is disclosing sensitive information to an opposing party who may be revealing that information to a competitor. *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV-LENARD/GOODMAN, 2014 U.S. Dist. LEXIS 160160, at *5 (S.D. Fla. Nov. 14, 2014). But Coalition Plaintiffs have located no case in which a party was allowed to effectively *veto* the opposing party's choice of a consulting expert—certainly not without first making a showing of good cause for excluding the objected-to consulting expert. Yet this is exactly what State Defendants have managed to accomplish with respect to Ms. Marks based on nothing more than her executive directorship of Coalition for Good Governance. The Court should recognize that State Defendants have strategically used their ability to improperly make AEO designations as a weapon to diminish Coalition Plaintiffs' ability to involve one of their most important sources of expertise in this case, and the Court should put an end to that misuse of the Protective Order by granting the requested relief.

Throughout the case, State Defendants have attempted to discredit Ms. Marks with hyperbolic and false insinuations that she has somehow inappropriately

14

publicized information about this case. When confronted with demands to substantiate these claims, they have always backed off because they well know that they can produce no evidence whatever to show that Ms. Marks has ever done anything other than scrupulously observe the requirements of the Protective Order. Accordingly, Ms. Marks and the Coalition Plaintiffs challenge State Defendants, since they oppose this Motion, to dispense with their innuendo and instead put in the record whatever plausible and good-faith evidence they believe justifies a factual finding by this Court that Ms. Marks cannot be relied upon to protect AEO material in compliance with the terms of the Protective Order to the same degree as any other consulting expert Coalition Plaintiffs might employ.

Because Ms. Marks has fully honored her obligations with respect to confidential information under the Protective Order, Coalition Plaintiffs respectfully submit that no plausible and good-faith evidence to this effect can possibly be forthcoming. The apparent presumption that Ms. Marks uniquely cannot be trusted to abide by this Court's Protective Order, which is implicit in the restrictions that have been imposed upon her and Coalition Plaintiffs and which has governed Ms. Marks's exclusion from serving as a consulting expert for years now, should be reconsidered by this Court and rejected as completely unwarranted, at least for the purpose of allowing Coalition Plaintiffs to conclude their Coffee County-related discovery.

The need to avoid further prejudice to Coalition Plaintiffs as they conduct and analyze Coffee County-related discovery and prepare for summary judgment makes disclosure of the requested limited subset of AEO material to Ms. Marks "reasonably necessary" for purposes of Paragraph 5(b)(ii) of the Protective Order. (Doc. 477, at 10.) Good cause exists for this Motion to be granted on an expedited basis.

### IV.  Conclusion

WHEREFORE, Coalition Plaintiffs respectfully request that the Court (1) order State Defendants to respond on an expedited basis to this Motion so that a disposition can occur in time to benefit Coalition Plaintiffs' efforts at the upcoming 30(b)(6) deposition and (2) grant this Motion and issue an Order as requested herein.  A proposed Order granting the Motion is attached for the Court's convenience.

Respectfully submitted this 6th day of October, 2022.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 386-6856 | (253) 267-8530 |

*s/ Russell T. Abney*
Russell T. Abney
Georgia Bar No. 000875

WATTS GUERRA, LLP
4 Dominion Drive, Building 3
Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

/s/Robert A. McGuire, III
Robert A. McGuire, III

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I served a copy of the foregoing upon counsel for the Defendants via CM/ECF.

/s/Robert A. McGuire, III
Robert A. McGuire, III
