**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | **Civil Action No. 1:17-CV-2989-AT** |

**PLAINTIFFS' RESPONSE TO NON-PARTY DOMINION, INC.'S NOTICE OF FILING AND REQUEST FOR GUIDANCE ON APPLICATION OF <u>THE COURT'S PROTECTIVE ORDER</u>**

I.   **Introduction**

On September 19, 2021, non-party U.S. Dominion, Inc. ("Dominion") filed a report from The MITRE Corporation ("MITRE") under seal (Dkt. 1487-1), with the Executive Summary publicly filed.[1] The MITRE Report heavily quotes the long-sealed Halderman Report. After its filing, Dominion disclosed for the first time—at Plaintiffs' request—that it secretly provided Dr. Halderman's **unredacted** July 1, 2021 report to MITRE for its own purposes. This disclosure constitutes a serious violation of the Court's longstanding Protective Order (Dkt. 477). Dominion and MITRE should promptly be held to account for that conduct.

As to its request to share the MITRE Report with its customers, Plaintiffs maintain that Dr. Halderman's **redacted** report should be immediately unsealed and released to the public. *Should the Court do that*, Plaintiffs would not object to public disclosure of the MITRE Report subject to any redactions that may be needed, as with the Halderman Report. If, on the other hand, the Court continues to seal the redacted Halderman Report over the objections of all parties to this case and against CISA's agreement to public release (Dkts. 1383, 1430), then Plaintiffs

---

[1] According to MITRE's Report, Dominion "retained MITRE's National Election Security Lab (NESL) to provide an independent expert technical review of [Dr. Halderman's] claims." (Dkt. 1487-1 at 1.)

1

would object to any disclosure of the MITRE Report *without including the redacted Halderman Report with it*. The MITRE Report alone provides a critically incomplete and misleading picture of Dr. Halderman's analyses and findings and their implications for election security, which CISA validated months ago and agreed warranted prompt adoption of important remedial measures.[2] State Defendants themselves likewise have proposed that the MITRE Report and Halderman Report "travel in tandem" if shared with others. (June 7, 2022 Hr'g Tr. at 10:21-11:9.)

## II.   Dominion Violated the Protective Order for Its Own Purposes

The Court's longstanding Protective Order unambiguously prohibited disclosure of the sealed Halderman Report to MITRE. Yet the MITRE Report quotes extensively from the unredacted Halderman Report[3]—which has been treated as "Attorneys' Eyes Only" since it issued on July 1, 2021, and has been under seal since filed with the Court on July 12, 2021. (Dkt. 1453.) Dominion has provided no colorable defense for this conduct, nor did it ever obtain or even seek

---

[2] U.S. Cybersecurity & Infrastructure Security Agency, *ICS Advisory: Vulnerabilities Affecting Dominion Voting Systems ImageCast X*, No. ICSA-22-154-01 (June 3, 2022), https://www.cisa.gov/uscert/ics/advisories/icsa-22-154-01.
[3] MITRE reproduces large portions of the Halderman Report in full in chart form. (Dkt. 1481-1 at 2-5.)

2

permission for this disclosure of the *unredacted* Halderman Report to a non-party.

Plaintiffs were very surprised to see in Dominion's unexpected filing that MITRE—a non-party and consultant for Dominion—evidently had received the sealed Halderman Report, in violation of the Protective Order.[4] When Plaintiffs' counsel asked Dominion's counsel how MITRE obtained the sealed Halderman Report, Dominion's counsel disclosed for the first time that they "provided the *unredacted* report confidentially to [Dominion's] retained expert, MITRE, so that MITRE [could] consider Dr. Halderman's findings and advise Dominion on them." (Ex. A (Sept. 22, 2022 M. Maguire letter) (emphasis added).) Implicitly conceding that Dominion never obtained or sought permission from the Court for this secret, self-serving disclosure to a non-party, Dominion's counsel argued it was

---

[4] Despite discussion of the then-forthcoming MITRE report in a hearing on June 7, 2022, no indication was provided that Dominion was planning to or already had shared the sealed Halderman Report with MITRE. (June 7, 2022 Hr'g Tr. at 10:21-11:9.) Given Dominion sought no such authorization from the Court and such disclosure is strictly prohibited by the Protective Order, Plaintiffs understood that MITRE would prepare its report without reviewing the sealed Halderman Report (just as MITRE evidently did not examine Dominion's voting equipment it somehow opines on in its report (Dkt. 1487-1 at ii, 10, 38)). State Defendants seem to say they too did not know about the disclosure to MITRE—they stated that they "did not disclose Dr. Halderman's report to MITRE" and directed Plaintiffs "to contact Dominion's counsel about when it provided the report to MITRE." (Ex. B, Oct. 5, 2022 Email Correspondence.)

"expressly permitted" to disclose the sealed unredacted Halderman Report to MITRE under Section 5(b) of the Protective Order, "which allows AEO materials to be shared with expert witnesses." Not so—not even close.

Section 5(b) of the Protective Order only permits "Attorneys' Eyes Only" material to be shared with experts "*to whom disclosure is **reasonably necessary for this litigation** and who have signed the 'Acknowledgment and Agreement to Be Bound'*" by the Protective Order. (Dkt. 477 § 5(b) (emphasis added).)[5] Dominion has not articulated any *reasonable need for this litigation* to provide the sealed Halderman Report to MITRE. Nor could it satisfy this requirement given it is not a party to or expert in this case and repeatedly has made clear it wants no involvement in this litigation. Indeed, Dominion does not seek to use the MITRE Report for this litigation at all, instead intending to share the report *with its*

---

[5] Dominion has not indicated whether anyone—much less everyone—at MITRE who received or had access to any of the substance of the sealed Halderman Report has agreed to be bound by the Protective Order. Given those individuals have this sealed information already, Dominion should be required to immediately file with the Court (i) a complete list of names and titles for *all* individuals and organizations who it knows received or has had access to any of the substance of the sealed Halderman Report, including specifically identifying each such individual and organization who received or had access to *redacted* portions of the Report; and (ii) a hand-signed Acknowledgment and Agreement to Be Bound by the Protective Order for *each* such individual and organization including the date that each agreement was signed.

*customers* for its own purposes. (Dkt. 1486 at 2.) Moreover, no one from MITRE is an expert in this litigation (nor could they be at this late stage, consistent with this Court's February 23, 2022 Order (Dkt. 1322) striking an expert report from Coalition Plaintiffs as untimely over seven months ago). There is no colorable reading of the Protective Order that remotely supports this disclosure, which Dominion tellingly did in secret.[6]

Additionally, the Court has been explicit that its permission is required for this sort of disclosure of the sealed Halderman Report. The Court did not even allow the report to be shared with CISA without first carefully vetting its confidentiality measures. (Nov. 19, 2021 Hr'g Tr. at 90:12-91:2.) And the Court denied a request from the Louisiana Secretary of State for access to the sealed report, which has a far more compelling and legitimate need for the report than MITRE given it is responsible for the security and reliability of Louisiana elections. (Dkt. 1249.) State Defendants themselves opposed that request, arguing that the Louisiana Secretary of State had no interest in this litigation (despite using Dominion voting software and equipment) and emphasized that "Dr. Halderman was granted access to Georgia's voting system *for this litigation*, and not for the

---

[6] MITRE itself never should have accepted access to the sealed Halderman Report. It shares Dominion's culpability for this violation of the Protective Order.

purpose of filing reports with CISA or *marketing it to* various governmental entities and *other individuals*"—which is exactly what Dominion now seeks to do with the MITRE Report based on the sealed Halderman Report. (Dkt. 1244 at 2.) The Court stayed a variety of other requests from non-parties for access to the sealed report (Dkts. 1251, 1287, 1324, 1332) and eventually denied those requests (Dkt. 1453). Dominion could not reasonably believe it was allowed to share the report—*in unredacted form no less*—with a non-party that this Court and Plaintiffs did not even know about, much less vet as the Court did with CISA, a federal agency responsible for election security. Even now, this Court and Plaintiffs have no information about the confidentiality measures, if any, MITRE has in place, when each of those was implemented, and whether they are sufficient to protect a report that provides step-by-step guidance for stealing votes and hacking elections using Dominion's highly-vulnerable software and equipment.[7]

---

[7] Dominion makes much of the fact that Dr. Halderman sought to share his sealed report *with Dominion* so it could try to address the serious deficiencies and vulnerabilities with its software and equipment. (Ex. A.) But this is entirely beside the point. Neither Dr. Halderman nor Plaintiffs ever suggested that Dominion could share Dr. Halderman's sealed report *outside Dominion*. In fact, to the contrary, Plaintiffs emphasized that *within Dominion* the report should be shared *only with those employees who needed access to it* to try to remediate the failings identified in it. The Court only allowed Dominion itself access to the sealed Report and made clear that, while there might be others responsible for elections who might warrant access to the Report, its permission was required for

Dominion and MITRE should promptly be held to account for this violation. Compliance with the Court's Protective Order is critically important to protect highly-sensitive information. Both parties and non-parties before this Court and others need to understand this—and they need to understand that violations will reap significant consequences. The obvious purpose of the disclosure to MITRE makes it especially egregious. Dominion could not reasonably claim it *needed* a third party to address Dr. Halderman's report regarding *Dominion's **own** software and equipment*. If true, this would betray a stunning unsophistication and lack of knowledge about products it is representing as secure and reliable to election officials across the country. The reality, of course, is that Dominion deliberately disclosed the sealed report to MITRE *for its own business purposes*—to represent to customers that purportedly "independent" experts evaluated and refuted Dr. Halderman's findings. (Dkt. 1486 at 1-2.) This is obviously very far afield from what the Protective Order allows for sealed material, and the Court should not permit Dominion to profit from its willful violation of the Court's Order.[8]

Importantly, Dominion had no need at all to share the Halderman Report

---

any additional disclosure, as with CISA. (Nov. 19, 2021 Hr'g Tr. at 86:23-87:23.)
[8] Dominion did not respond to Plaintiffs' detailed explanation and concerns about this violation of the Protective Order. (Ex. A.)

7

with MITRE to obtain an "independent" assessment of the security and reliability of its *own* software and equipment. If that were genuinely what it wanted, it could, and should, have simply had MITRE do its own analyses of the software and equipment—as Dr. Halderman—without regard to what Dr. Halderman or any other expert had said. But Dominion plainly did not want that. Instead, it wanted something it could misleadingly tout as a refutation of Dr. Halderman's findings, despite their validation by CISA. That's not a sound election security assessment—that's *marketing*, which violated the Court's Protective Order and has no place in the context of securing elections and protecting the right to vote. Dominion and MITRE now need to be held to account for this.

### III. The Court Should Unseal *Redacted* Halderman and MITRE Reports

Plaintiffs continue to maintain that Dr. Halderman's *redacted* report[9] should be immediately unsealed and publicly released. They respectfully submit that this is critically important for enabling election officials across the country responsible for Dominion voting software and equipment to understand and address the serious deficiencies and vulnerabilities Dr. Halderman has detailed in his sealed report—

---

[9] The proposed redacted version was sent to G. Palmer and A. Bradley via FTP by J. Conaway on June 17, 2022, per the Court's directive not to file the report on the docket. Plaintiffs can resend that version of the redacted Halderman Report upon request.

which CISA confirmed. State Defendants have indicated that their position remains that Dr. Halderman's report should be public. (Ex. B at 2.)

Plaintiffs respectfully submit that they have found no other cases where a Court sealed material that all the parties had requested be unsealed, especially where the parties included state officials responsible for assessing the specific confidentiality concerns at issue. Both the Secretary of State and the State Election Board (SEB) have objected to keeping the Halderman Report under seal. The SEB—under the leadership of its new chair, the Hon. William S. Duffey, Jr.—just last week unanimously called for its public release at its last meeting.[10] Dr. Halderman himself has emphasized that public release of the *redacted* report is important to help protect future elections, including the 2022 midterm elections. (Dkt. 1383 at 2-4; Dkt. 1133 at 2-3.) CISA also has approved release of the *redacted* report. (Dkt. 1430.)

Under these circumstances, Plaintiffs respectfully submit that they are unaware of a factual predicate for continued sealing of the *redacted* Halderman Report and reiterate that this unfortunately is likely to do more harm than good— especially given the extraordinary breach of Georgia's Dominion voting software

---

[10] Ga. House of Representatives, *State Election 9.28.22*, https://vimeo.com/showcase/8988933?video=749684800, at 3:33:45 to 3:38:30.

and equipment through Coffee County in January 2021.  Bad actors have had extended access to the state's software and equipment, both in the Coffee County Elections Office and—for a much longer period—over the internet.  As Merritt Beaver, the Chief Information Officer for the Secretary's Office, testified, this means bad actors have had for some 20 months the "roadmap" to hack elections where that software and equipment are used.  (Dkt. 1370-2 at 192:16-193:6.)  And to date, nobody has been held accountable for that breach, thus incentivizing similar conduct in the future.

Should the Court unseal the *redacted* Halderman Report, Plaintiffs would not object to unsealing the MITRE Report as well, subject to any necessary redactions as with the Halderman Report.  If, on the other hand, the Court were to continue to seal the Halderman Report, Plaintiffs would strenuously object to unsealing the MITRE Report or otherwise allowing its dissemination to anyone without requiring the *redacted* Halderman Report to be shared with it.  The MITRE Report suffers from numerous significant deficiencies, including misstating critical facts and basing *all its findings* on a demonstrably unsound and wrong assumption:  "MITRE's assessment of the researcher's proposed attacks assumes ***strict and effective controlled access*** to Dominion election hardware and software." (Dkt. 1487-1 at ii n.2 (emphasis added).)  This was a farfetched

assumption even before Plaintiffs uncovered the unauthorized access to Georgia's "Dominion election hardware and software" through the Coffee County Elections Office and voting equipment. Now that assumption is obviously wildly inaccurate—and thus so is "MITRE's assessment of the researcher's proposed attacks," *which is explicitly premised on that wrong assumption*. (*Id.*)

The MITRE Report emphasizes that this incorrect threshold assumption underpins MITRE's finding that the attacks detailed in the Halderman Report are "infeasible": "Each of the attacks *requires access and/or opportunity* ***that remains unavailable*** *in the operational environment*." (*Id.* at ii (emphasis added).) *That very* "access and/or opportunity" is now known not only to be available but to *have occurred* on a stunning scale, spanning numerous actors working in the Coffee County Election Office for many hours over many days and countless more actors working countless more hours over the last 20 months or so (e.g., Ben Cotton (Dkt. 1440-4 ¶¶ 9, 18(b); Dkt. 1440-5 at 37:6-18)). The report goes on to concede that a significant attack detailed by Dr. Halderman is "scalable"—meaning it could be exploited to affect votes and election outcomes broadly. (Dkt. 1487-1 at ii.) But MITRE dismisses this attack as "infeasible *due to access controls in place in operational election environments*, ***access required to Dominion election software***, *and* ***access required to Dominion election hardware***." (*Id.* (emphasis

11

added).) Again, *that* access *has occurred*.[11]

Moreover, the MITRE Report is especially unsound given MITRE evidently did not examine the Dominion software and equipment itself *as Dr. Halderman did*. (*Id.* at ii, 10, 38.) Instead, the report indicates MITRE merely reviewed the Halderman Report and some set of documentation about the Dominion software that Dominion itself cherry-picked. (*Id.*) Thus, Dominion, just like State Defendants, has so little confidence in its own software and equipment that it will not allow even its own consultant to examine its products. The tragic irony is that those who breached the state's Dominion software and equipment through Coffee County in January 2021 have had *far greater access* and thus been able to perform far more extensive analyses *than Dominion's own consultants at MITRE*—who remarkably simply assumed that none of that was even possible. For these and other reasons, MITRE's report is worth little more than the paper it's printed on.[12]

---

[11] The MITRE report at best provides Dominion with *damning* praise. Evidently the most MITRE could muster is effectively: sure, Dominion's voting software and equipment are riddled with holes that could be exploited to steal votes, but that's okay because *access* to the software and equipment is *presumably* "infeasible." This would be laughable in any other context. Here, it's stunning and dangerous.

[12] Defendants have indicated that they believe this Court can consider the MITRE Report for purposes of this litigation and suggested that they intend to ask the Court to do that. (Ex. B at 2.) This issue is not presently before the Court, and so Plaintiffs will not address it here other than to reserve all rights and objections regarding the issue, some of which it already conveyed to State Defendants at their

MITRE even gets critical facts wrong. For example, it misrepresents Dr. Halderman's analysis, wrongly claiming that he identified only six avenues of attack on the Dominion software and equipment. (Dkt. 1487 at ii.) This grossly oversimplifies and understates his findings and their seriousness. MITRE also somehow was misinformed that the QR codes on Dominion BMD-generated ballots are a "non-authoritative portion of a Georgia ballot." (*Id*.) This fundamental misunderstanding vitiates its assessment of the various attacks Dr. Halderman details relating to the QR codes, which are in fact the authoritative portion of a BMD-marked ballot because that is the portion of the printed paper ballot used for tabulation by optical scanners in Georgia. O.C.G.A. § 21-2-300(a)(2); *see also* Ex. C at 72:2-9. In fact, the human-readable portion of a BMD-generated ballot is never even considered with respect to election results except in the case of a court-ordered manual recount and *potentially* in a risk-limiting audit that examines that portion of the ballots, like with the "hand audit" of the

---

request. (*Id.*) It would be extremely unfair, prejudicial, and improper for the Court to consider this very-belated report provided in secret to previously-undisclosed "experts" by a non-party in violation of the Court's Protective Order, especially where Plaintiffs have had no discovery relating to MITRE's Report. (*See* Dkt. 1322, Order Granting State Defendants' Emergency Motion to Exclude the Supplemental Reports of Dr. Buell and Dr. Stark.) Plaintiffs will brief this issue at the appropriate time should any Defendant seek to use the report in this case or should the Court indicate it may consider the report for the case.

13

November 2020 Presidential election. Ga. Comp. R. & Regs. 183-1-15-.02(j) (citing O.C.G.A. §§ 21-2-495, 498); Ex. C at 34:14-35:17; *see generally* Dkt. 1346. In the latter case, Georgia law provides no readily-apparent means for correcting and properly counting any discrepant votes caught by such an audit for any individual ballots. State Defendants repeatedly have confirmed this understanding of tabulation of BMD-marked ballots, as has their own expert, Dr. Juan Gilbert. (*See, e.g.,* Dkt. 722 at 32:3-17 (citing Ga. Comp. R. & Regs. 183-1-15-.02(h).)[13] And even then, Georgia law requires only *one* risk-limiting audit of only *one statewide election contest* only every two years. Thus, the QR codes do in fact determine individual vote tabulation and election outcomes for virtually every election contest every year under Georgia law with the Dominion software and equipment that MITRE opined on (without examining it). That MITRE somehow does not know this further highlights the unreliability of its report.

To ensure that Dominion's customers and anyone else receiving the MITRE Report are not materially misled about the "Dominion election hardware and software" at issue in that report and the Halderman Report, *it is imperative that both travel together at all times*. State Defendants evidently agree. (June 7, 2022

---

[13] Ga. House of Representatives, *supra* note 10, at 3:17:17-3:18:21 (Secretary of State Election Director Blake Evans: "The scanner reads the QR codes.").

14

Hr'g Tr. at 10:21-11:9 ("[T]he Secretary's position has been clear that with appropriate redactions he wanted the [Halderman] report released publicly. . . . [T]he final report from MITRE will be completed soon. . . . ***And so maybe we can just have these two travel in tandem*** and treat everything the same way on that. That may be a logical thing.").) The Court should promptly order this, if not unsealing both reports in redacted form.

## IV.  Conclusion

For the reasons above, Plaintiffs respectfully request that the Court promptly unseal the redacted Halderman Report and the MITRE Report with appropriate redactions.[14] Failing that, Plaintiffs request that the Court order that the redacted Halderman Report be included with an appropriately-redacted MITRE Report any time it is shared and require each recipient to sign the Acknowledgment and Agreement to Be Bound by the Protective Order before receiving either report, with each such agreement promptly provided to the parties here. And the Court should promptly hold Dominion and MITRE to account for their violation of the Protective Order.

---

[14] The redacted Halderman Report can and should be unsealed immediately; the MITRE Report can be unsealed once the appropriate parties, including Dr. Halderman and CISA, have had an opportunity to review it for needed redactions.

Respectfully submitted this 6th day of October, 2022.

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Veronica Ascarrunz (*pro hac vice*) | Adam M. Sparks |
| Hannah R. Elson (*pro hac vice*) | GA Bar No. 341578 |
| Zachary Fuchs (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2100 L Street, NW, Suite 900 | Suite 3250 |
| Washington, DC 20037 | Atlanta, GA 30309 |
| (202) 887-1500 | (404) 888-9700 |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

| | |
|---|---|
| /s/ Bruce P. Brown | /s/ Robert A. McGuire, III |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

/s/ Russell T. Abney
Russell T. Abney
Georgia Bar No. 000875
WATTS GUERRA, LLP
4 Dominion Drive, Building 3
Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Plaintiff Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC

16

3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for Plaintiffs William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** **Plaintiffs,** v. **BRAD RAFFENSPERGER, ET AL.,** **Defendants.** | Civil Action No. 1:17-CV-2989-AT |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                                                             */s/ David D. Cross*
                                                                            David D. Cross

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, a copy of the foregoing **PLAINTIFFS' RESPONSE TO NON-PARTY DOMINION, INC.'S NOTICE OF FILING AND REQUEST FOR GUIDANCE ON APPLICATION OF THE COURT'S PROTECTIVE ORDER** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

                                             */s/ David D. Cross* <br>
                                             David D. Cross