# EXHIBIT C

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, et al.           )
                                )
            Plaintiffs          )
                                )
                vs.             ) Case No.
                                ) 1:17-CV-2989-AT
BRAD RAFFENSPERGER, et al.      )
                                )
            Defendants          )
_____)


VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
JUAN GILBERT, Ph.D.
Friday, October 29, 2021
Volume I


Reported by:
CARLA SOARES
CSR No. 5908
Job No. 4871592
Pages 1 - 289

1    Q   Certainly you would not expect that
2    auditing only a single statewide contest every two
3    years would be sufficient to address Dr. Halderman's
4    findings with this equipment, right?
5            MR. MILLER:  Object to form.
6            THE WITNESS:  As I stated, auditing is not
7    my area of expertise, and I would allow other
8    members of the committee and other experts to make
9    that decision.
10   BY MR. CROSS:
11       Q   Dr. Philip Stark is a widely recognized
12   expert on election audits, right?
13       A   Yes.
14       Q   What remedial measure should the state
15   take to verify QR codes in order to continue using
16   this election equipment in light of Dr. Halderman's
17   findings?
18           MR. MILLER:  Object to form.
19           THE WITNESS:  The verification of a QR
20   code is to -- you can -- the QR code can be verified
21   against the human-readable portion of the text.  So
22   you could scan it and determine that it is a match
23   to that text.
24           To my understanding, I have not seen a QR
25   code that's self-modifiable whereby it changes

1   itself after it's been scanned.  Therefore, you'd
2   have evidence that there's a difference between the
3   QR code and the actual human-readable text.
4   BY MR. CROSS:
5        Q   And what specific steps are you
6   recommending should be taken to test that?
7           MR. MILLER:  Objection.  Misstates.
8           THE WITNESS:  I have not given a specific
9   recommendation as of this time.  I could develop
10  that.  That hasn't been something I've worked on,
11  but that's something I could develop if necessary.
12          I would hope the election administration
13  would do that.
14  BY MR. CROSS:
15       Q   When you say "do that," do what?
16       A   Determine the protocol for comparing the
17  QR code against the human-readable text.
18       Q   You understand Georgia currently has no
19  protocol for that, right?
20       A   I was not aware if they did or did not.
21       Q   So that's not something you considered for
22  your opinions in this case; is that fair?
23       A   I don't understand that question.
24       Q   It's okay.  I'll withdraw it.
25          Are there any other remedial measures

Page 72

1  BY MR. CROSS:
2       Q   Do you understand when votes are tabulated
3  in the ordinary course of an election in Georgia,
4  they're tabulated using the QR code for a BMD
5  ballot?  Do you understand that?
6       A   My understanding is that they are put
7  through the tally machine and then they are tallied
8  on the QR code and followed by the -- again, the
9  RLA.  But yes, it does read the QR code.
10      Q   When you say, "followed by the RLA," why
11 do you think there's an RLA of every contest in
12 Georgia?
13      A   I didn't say, "every contest."  Again, I
14 just said there's an RLA.  And I -- never mind.
15      Q   So when you said that the way votes are
16 tallied in Georgia is they go through -- the QR is
17 tabulated and then it's followed by an audit, that's
18 not accurate except for a single election statewide
19 every two years, right?
20          MR. MILLER:  Objection.  Calls for a legal
21 conclusion.
22          THE WITNESS:  I'd have to go back and
23 confirm how it's actually done in Georgia by any
24 statute.
25 ///

Page 288

1        I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:
4        That the foregoing proceedings were taken
5   before me at the time and place herein set forth;
6   that any witnesses in the foregoing proceedings,
7   prior to testifying, were administered an oath; that
8   a record of the proceedings was made by me using
9   machine shorthand which was thereafter transcribed
10  under my direction; that the foregoing transcript is
11  a true record of the testimony given.
12       Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [x] was [ ] was not requested.
16       I further certify I am neither financially
17  interested in the action nor a relative or employee
18  of any attorney or any party to this action.
19       IN WITNESS WHEREOF, I have this date
20  subscribed my name.  Dated this 5th day of November, 2021.

*Carla Soares*

CARLA SOARES

CSR No. 5908