The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF GEORGIA
2                          ATLANTA DIVISION

3

4    DONNA CURLING, ET AL.,             :
                                        :
5              PLAINTIFFS,              :
     vs.                                :   DOCKET NUMBER
6                                       :   1:17-CV-2989-AT
     BRAD RAFFENSPERGER, ET AL.,        :
7                                       :
               DEFENDANTS.              :
8

9

10          TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11             BEFORE THE HONORABLE AMY TOTENBERG

12            UNITED STATES DISTRICT SENIOR JUDGE

13                      OCTOBER 7, 2022

14                       12:32 P.M.

15

16

17

18

19

20

21    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                   TRANSCRIPT PRODUCED BY:

23

     OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR
24                                   2394 UNITED STATES COURTHOUSE
                                     75 TED TURNER DRIVE, SOUTHWEST
25                                   ATLANTA, GEORGIA  30303
                                     (404) 215-1383
```

```
 1                A P P E A R A N C E S   O F   C O U N S E L

 2

 3   FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
     SCHOENBERG:

 4

 5       DAVID D. CROSS
         MORRISON & FOERSTER, LLP

 6

 7   FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
     WILLIAM DIGGES, III, AND RICARDO DAVIS:

 8

 9       BRUCE P. BROWN
         BRUCE P. BROWN LAW

10

11   FOR THE STATE OF GEORGIA DEFENDANTS:

12

13       VINCENT ROBERT RUSSO, JR.
         CAREY A. MILLER
         JOSH BELINFANTE

14       JAVIER PICO PRATS
         ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

15

16       BRYAN TYSON
         DIANE LaROSS

17       TAYLOR ENGLISH DUMA

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2    (Atlanta, Fulton County, Georgia; October 7, 2022.)

 3              THE COURT:  Good afternoon.  This is Judge Totenberg.

 4    I'm conducting a trial right now.  So I've got this 25 minutes

 5    and not more.  So just keep that in mind.

 6              We're here in Curling v. Raffensperger, 1:17-CV-2989,

 7    first and foremost to discuss the issue of the documents in the

 8    privilege log.  And maybe there is some confusion.  But I did

 9    not see that there was -- that the State had provided from a

10    representative officer of the State department or the board any

11    type of affidavit asserting the privilege.

12              Now, I know that the plaintiffs have asked that I

13    basically strike the assertion of privilege on that ground.

14    But I'm not going to.  But I do think that somebody who has

15    operational authority who has reviewed the assertion of

16    privilege in these matters and not just counsel needs to submit

17    an affidavit that is appropriate consistent with the legal

18    authority that we have previously discussed and -- and to do

19    that by Monday morning.

20              Even though the court is closed, I will be able to

21    review it if you put it on the docket.  And whatever you file

22    will still be on the docket, even if I can't file things on the

23    docket without anyone here.

24              So that is my expectation.  I don't think it has to

25    be Mr. Raffensperger himself.  But somebody of comparable
```

1    authority on a programmatic basis who is speaking on behalf of

2    the State department and the board.

3              MR. TYSON:  Your Honor, this is Bryan Tyson.  If I

4    could just ask kind of along the lines if it is comparable to

5    Mr. Raffensperger are you anticipating somebody like the Deputy

6    Secretary of State, Mr. Sterling, or would the Director of

7    Investigations, who is a law enforcement officer, Ms. Koth, be

8    sufficient?

9              I just want to make sure we're giving you what you

10   are asking for.

11             THE COURT:  Tell me is he -- the director you're

12   talking about, is he within the State -- is he the director

13   within the Secretary of State's office?

14             MR. TYSON:  Yes, Your Honor.  Bryan Tyson.  Sara

15   Koth, she is the director of the -- the chief investigator over

16   the Investigations Division of the Secretary's office and a

17   POST certified law enforcement officer.

18             I believe, Your Honor, we did something similar with

19   Judge Jones in the Fair Fight case when Frances Watson was

20   formerly the chief investigator.  So I think that is going to

21   be some precedent for us using the director -- the chief

22   investigator as the individual.

23             THE COURT:  And would she have knowledge about the

24   information in this log?

25             MR. TYSON:  She would, Your Honor.  She prepared the

1    documents, and we got the documents from her and her file over

2    which the investigative privilege is asserted on that log.

3            THE COURT:  Okay.  That is satisfactory then.

4            MR. TYSON:  Thank you.

5            THE COURT:  I did have some questions regarding the

6    log that have nothing to do with the -- in really trying to

7    narrow down what is likely truly at issue.  I mean, there are a

8    number of communications that seem to be essentially with

9    counsel and are attorney-client work product that I don't

10   imagine that I would consider appropriate for disclosure.

11           And if the plaintiffs are contending otherwise, if

12   you would briefly tell me why.  What would be the basis of

13   piercing attorney-client and work product privilege?

14           MR. CROSS:  Your Honor, this is David Cross.  We're

15   not.  The only entries that we're addressing are the ones that

16   are investigative privilege.  Everything that is

17   attorney-client and work product, that is not an issue that

18   we're raising at this time.  And I don't have any reason to

19   anticipate that we will.

20           THE COURT:  Okay.

21           MR. CROSS:  One issue that we did have, Your Honor,

22   because the log on the descriptions is not very specific.  So,

23   for example, one of the entries just says Coffee County

24   documents.  Another says Coffee County -- literally just says

25   Coffee County.

1          To the extent that the declaration is coming in on

2     Monday, we would ask consistent with the case law that it be

3     specific about -- I mean, obviously we don't expect it to

4     disclose the substance, because that is what is at issue.  But

5     what the courts have said is it needs to be specific enough to

6     get a better description of sort of categorially or

7     substantively what is being withheld and why that in particular

8     presents some harm to the investigation if disclosed to us,

9     particularly under the protective order where it would be

10    limited to counsel, if that is appropriate.  But we would ask

11    for that.

12          MR. TYSON:  Your Honor, this is Bryan Tyson.  I think

13    we can include that in Ms. Koth's affidavit.  Those were

14    emails.  So that is the email subject line.  So we can just

15    describe at a high level what the topics were.  It is going to

16    be the same general topic area.

17          THE COURT:  All right.

18          MR. TYSON:  We can explain that.

19          THE COURT:  All right.  So when do you think you can

20    get that done?  I mean, I would think that they need it Monday

21    morning.

22          MR. TYSON:  Yes, Your Honor.  This is Bryan Tyson.  I

23    think we can get it for you Monday morning.  Ms. Koth is at an

24    out-of-town training at the moment that she actually returns

25    from early next week.  But she is available.  I think we should

```
 1    be able to get everything done with her over the weekend and --
 2    so --
 3              THE COURT:  Okay.  Well, if you can get it filed by
 4    10:00 in the morning, that would be satisfactory.
 5              MR. TYSON:  Certainly.
 6              THE COURT:  I mean, if there is a genuine -- it is
 7    hard for me to go further at this point with having no idea
 8    what these documents are.  But obviously one alternative is --
 9    will be if you -- is simply to share the specific -- these very
10    limited group of documents with me for in camera review.
11              It is hard for me to really know what they are at
12    this juncture and whether it is -- you know, and obviously hard
13    for the plaintiffs as well.  Because if they are just basically
14    documents that the plaintiffs already have, there is not really
15    that much of an issue.
16              I don't -- and I don't know.  Do you happen to know
17    whether they are, Counsel?
18              MR. TYSON:  Your Honor, this is Bryan Tyson.  These
19    are not documents the plaintiffs have to my knowledge.  These
20    are documents that have been indicated were shared with either
21    the Secretary's office and the investigative division or are
22    from the file -- Ms. Koth's notes kind of investigating,
23    research, you know, interview plans, those types of things that
24    are included.  But we can provide them for in camera review.
25              THE COURT:  All right.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
 1          MR. TYSON:  Would you like them printed and delivered
 2    to you?  What is the best way to get them to you?
 3          THE COURT:  What is the fastest way?  I mean, if you
 4    can have them delivered, great.  But, otherwise, you can
 5    certainly electronically send them.  But if you don't feel
 6    comfortable doing that, then have them delivered here today.
 7          MR. TYSON:  Okay.  We can do that, Your Honor.  We'll
 8    get them put together and delivered to you.
 9          THE COURT:  All right.
10          MR. CROSS:  Your Honor, this is David Cross.  One
11    point of clarification.  And I may have misunderstood the log
12    when it first came in.
13          I thought the log was capturing not just documents
14    withheld but also redactions because a lot of the documents the
15    State produced on Monday have redacted portions.  But looking
16    back at it again this morning, I'm not sure that is right.
17          Bryan, are you able to shed light on that?  Have you
18    guys logged the redactions too?  Because if not, we would ask
19    for that.
20          MR. TYSON:  Certainly we haven't because we were
21    trying to work on the timeline in getting this to y'all by
22    Monday at noon.  But the redactions are all attorney-client.
23    And I think that is pretty obvious from where they occur.  It
24    is redacting language from outside counsel.  It is redacting
25    language from the Attorney General's office in an email.
```

1              So every redaction that is in the file that we

2    produced is attorney-client.  But we can log those if you need

3    that written down separately.

4              MR. CROSS:  No.  No.  That is okay, Bryan.  I thought

5    it might be attorney-client because you can kind of tell what

6    is there.  But if it was an investigative privilege redaction,

7    we wanted that log.

8              MR. TYSON:  No, there is no investigative redaction.

9              MR. CROSS:  Okay.  Thanks, Bryan.

10             THE COURT:  Well, then basically, you know, we'll

11   look at that and get it back to everyone as soon as possible on

12   Monday.

13             Does that --

14             MR. CROSS:  Your Honor, the only other thing --

15   sorry.

16             THE COURT:  Yes.  Go ahead.

17             MR. CROSS:  I just want to make sure we are clear.

18   The State filed the most recent log last night.  Our motion --

19   I guess it is a motion -- relates to the original log also that

20   we discussed in the prior conference because there was

21   investigative privilege over those prior reports.

22             So I just want to make clear that the declaration

23   that comes in on Monday is addressing both sets of documents

24   and that whatever Your Honor is looking at in camera will

25   include both sets.  If it is --

```
 1              THE COURT:  This is the one with the larger print and

 2    just -- Document 1504 on the docket?

 3              MR. CROSS:  Yes, ma'am.

 4              THE COURT:  Okay.

 5              MR. MILLER:  Your Honor, this is Carey Miller.

 6              I can address that additional privilege log, which is

 7    the first time we went through this exercise relative to the

 8    investigative reports and summaries.

 9              And as we discussed before, only one of those

10    investigative reports has anything to do with Coffee County

11    whatsoever.  The final entry on the log is subject to a claim

12    of work product privilege as well, which relates to our

13    consulting experts' work on the ICC and EMS server, forensic

14    copies of which the plaintiffs already have now.

15              And with respect to the subject matter of any of the

16    other reports, as we discussed before, we did produce the

17    summaries for those subject matters.  I just as an initial

18    matter fail to see the relevance of some of that.

19              MR. CROSS:  Carey, could I ask -- that is really

20    helpful.  So I understand, everything other than the work

21    product one, you are saying you guys personally reviewed those

22    and none of them relates to allegations of unauthorized access

23    to voting equipment or software?

24              MR. MILLER:  No, that is not what I said.

25              MR. CROSS:  Oh, sorry.
```

1        MR. MILLER:  We produced investigative summaries

2   for -- that correspond to the investigative report numbers that

3   are in the entries on each of those logs.  So you guys have the

4   investigative summary.  So you know what the subject matter is,

5   what the general outcome is.  The report is the more detailed

6   version that is subject to a claim of investigative privilege.

7        Of the entries on the log, one report pertains to

8   Coffee County.  That is 2020-250, which was generated prior to

9   the Scott Hall recording and the latest allegation.  The final

10  entry is the work product one.  That part you were accurate on.

11       MR. CROSS:  Okay.  I guess we would ask that if there

12  are any reports on here -- and I haven't had the time to go

13  back to look at the summaries that were produced.  But if there

14  are any reports on here that relate to allegations of

15  unauthorized access to voting software or equipment --

16       THE COURT:  I don't think they were.  I went through

17  them myself not last night but before.  I mean, you know, they

18  are -- as I think that counsel said in our last call, they are

19  ones where people were able to obtain -- they left -- not just

20  left doors on.  People were able to come in.  I think in

21  Stephens County even, there was something about coming in.

22  Really just not being -- not secure practices as running the

23  office.

24       MR. MILLER:  That's right, Your Honor.

25       THE COURT:  Somebody else also -- you know, I think

1   there's somebody else who complained about their systems but

2   nothing about breach.

3           MR. CROSS:  Okay.  That is what I thought too, Your

4   Honor.  So that is what I was trying to clarify.

5           THE COURT:  But that is -- you know, that was -- that

6   is just my recollection.

7           But as defense counsel has said, I think you can --

8   it is Document 1449-1, if you have anyone with you who wants to

9   quickly go through them.

10          MR. CROSS:  We'll do that.

11          MR. MILLER:  And that's -- David, maybe it is ships

12  passing through the night --

13          COURT REPORTER:  I'm sorry.  I can't hear you.  Mr.

14  Miller --

15          MR. MILLER:  Oh, I apologize.

16          COURT REPORTER:  That's okay.  You were just muffled.

17          MR. MILLER:  Is that any better?

18          COURT REPORTER:  Maybe.

19          MR. MILLER:  David, I was just going to say maybe it

20  is ships passing through the night as to the definition of

21  unauthorized access or security allegations.

22          But, you know, that was our review of the reports in

23  trying to be as inclusive as possible.  But you guys have the

24  subject matter.  So if there are ones of particular subject

25  matter that you do think are relevant, that could certainly be

1    helpful.

2           THE COURT:  So Document 1449-1 deals with the Coffee

3    County, and it is at Page 31.  And that was originally

4    identified as state education -- state board Number 2020-250.

5    So I assume this was initiated in 2020.

6           MR. MILLER:  Yes, Your Honor.

7           MR. TYSON:  Yes, Your Honor.  Bryan Tyson.  I was

8    just going to clarify because 2020-250 is the original

9    allegation.  This also goes to the last entry in the privilege

10   log about the -- related to the original investigation from

11   various investigators.  Those are the three allegations that

12   are in that summary of investigation about, you know, the

13   failure to certify and the things that are unrelated to the

14   allegations we learned of from Mr. Hall.  So those are really

15   kind of separate from the unauthorized access issues.

16          But we didn't want to waive anything.  That is why

17   those were included, but they are not related to unauthorized

18   access.

19          THE COURT:  Well, obvious -- yes and no.  It depends

20   on the way you see it.  But it is obviously all part of the

21   same -- part of a related story.  I mean, the whole thing

22   starts with the complaint one sending a letter to -- that they

23   could not certify because of the electronic recount numbers.

24   And then obviously there is further discussion later on.  And

25   complaint two is comparable but -- about the vote -- the way

1    the system is working.

2          So you've given -- but you have provided the

3    plaintiffs with everything as to each one of these complaints?

4          MR. MILLER:  Your Honor, I may be -- this is Carey

5    Miller.  I may be misunderstanding the question there.

6          But provided everything as it relates to the

7    complaints --

8          THE COURT:  Well, you completed an investigation as

9    to complaint one and two, and then I think you may have

10   reopened things.

11         But there was a completed investigation as to one and

12   two, wasn't there?

13         MR. MILLER:  Yes, Your Honor.  And that -- the

14   plaintiffs have the investigative summary, which, you know,

15   obviously was filed on the docket.  We had already produced it

16   to them.

17         What we have withheld under a claim of investigative

18   privilege because it has not completed prosecution is the

19   investigative report.

20         THE COURT:  For both complaint one and two or for --

21         MR. MILLER:  It is a single -- yes, Your Honor, it is

22   a single report.  But it encompasses both complaint one and

23   two.

24         THE COURT:  All right.  And also three or just one

25   and two?

```
 1              MR. MILLER:  Your Honor, it would also include three.

 2              THE COURT:  Okay.  All right.  Do -- is there

 3  anything here on your log that relates to Spalding County?

 4              MR. TYSON:  Your Honor, this is Bryan Tyson.  There

 5  is not anything for Spalding.  We turned over to the plaintiffs

 6  all the documents we had so far for Spalding.  So there is

 7  nothing further on that.  That investigation is just getting

 8  underway.

 9              THE COURT:  Okay.  Does that address the plaintiffs'

10  concerns?  I mean, I will look at this on late -- sometime

11  Monday morning.  Late morning probably.

12              And if necessary, can I reach you-all?  I mean,

13  otherwise, we'll just send it by -- disposition by email.

14              MR. CROSS:  Yes, Your Honor.  For plaintiffs, yes.

15              MR. TYSON:  And the State is certainly available as

16  well.  This is Bryan Tyson.

17              THE COURT:  All right.  Well, it is sort of -- I'm

18  just sort of being very -- a little somewhat oblique because I

19  don't know what we're going to be seeing.

20              So -- all right.  Well, if we reach you, it probably

21  will be -- try to be in the afternoon but not too late.  And if

22  we do, I might just ask you to -- one of you to set up the

23  phone call because I'm not going to be in the office.  But

24  we'll let you know at that juncture.

25              The other issue that was raised sort of on an
```

1    emergency basis was that of -- on behalf of the Coalition last

2    night as to AEO documents and the need for the client

3    representative for the Coalition to have -- be able to properly

4    assist her counsel in representing them and be able to have

5    access to some of these documents.

6           And, you know, I don't know what has been classified

7    as AEO so that is -- other than the Curling report, the one of

8    Dr. Halderman.

9           But I have no other idea what has been classified.

10   And I know that counsel just sort of as an immediate thing says

11   I'm not going to look -- obviously I don't have the defendants'

12   response.  But I can understand why they -- counsel would like

13   Ms. Marks at the deposition because she's obviously played a

14   vital role in their own evaluation of what is going on in --

15   not just in Coffee County but obviously for a longer period of

16   time.

17          But I don't know what is in these AEO documents.  And

18   I don't know whether they are ones that would seem to me that

19   Ms. Marks is so deeply involved -- has been so deeply involved

20   in the Coffee County matters that it is hard for me to know --

21   to think that there was something she hadn't already seen

22   herself through plaintiffs' discovery.

23          But maybe there is something and that plaintiffs are

24   in a position to identify that for me so that I could

25   understand is it vital to her being able to be -- have read it

1    and been prepared in order to be at the hearing.

2          I realize that the plaintiffs are looking for broader

3    assistance and involvement and her ability to access other

4    information.  But I'm just trying because of the time

5    sensitivity to deal with the issue of what is needed if she

6    were to be by counsel's side on Tuesday.

7          MR. BROWN:  Your Honor, this is Bruce Brown.  We --

8    you are correct that we're seeking broader relief with respect

9    to Ms. Marks in connection with attorneys' eyes only documents.

10          We will be making a separate motion today, probably

11    within the hour, to declassify or redesignate the documents

12    that the State has asserted AEO with respect to the last batch.

13    So it is a much more concrete motion to you.

14          We have conferred with the State counsel about it.

15    We haven't been able to reach an agreement.  Although they did

16    declassify some documents.

17          So that is coming to you.  And that will explain in a

18    more concrete way a narrower request.  That doesn't overtake

19    the earlier motion that we filed yesterday but hopefully will

20    be more concrete for you to evaluate.

21          THE COURT:  All right.  Well, assuming we talk on

22    Monday, I will have read that as well.

23          MR. MILLER:  Your Honor, if I may, this is Carey

24    Miller.  And just so that we're on the same page, it may cut to

25    the chase here a little bit.

```
 1          But, Bruce, do I understand that part of your motion
 2   includes also access to the forensic images of the server and
 3   ICC, or am I incorrect in that?
 4          MR. BROWN:  It does not.  Those are not AEO.  But it
 5   does not.
 6          MR. MILLER:  I disagree on that point.  I think --
 7          MR. BROWN:  They might be confidential.  But in any
 8   event, it doesn't cover that.
 9          MR. MILLER:  Well, I appreciate it doesn't cover
10   that.  But I do want to clarify.  I understood -- I thought it
11   was in an order that it was produced as attorneys' eyes only.
12          MR. BROWN:  It could be.  If you are -- which one are
13   you talking about?
14          MR. MILLER:  I'm talking about the forensic images of
15   the ICC and of the EMS server that Judge Totenberg ordered us
16   to produce.
17          MR. BROWN:  Right.  I understand.  No.
18          MR. MILLER:  I understood those were attorneys' eyes
19   only.  I just want to make sure we're on the same page on that.
20          MR. BROWN:  No.  My motion that I'm filing shortly
21   has only to do with the documents that you designated AEO.  I
22   know you withdrew some of the ones that were emails to the
23   Washington Post from AEO classification, but there are still
24   ones that we think are overdesignated, and it will address
25   documents only.
```

1          MR. MILLER:  Okay.  Sure, I get that with respect to

2     the motion.

3          I guess the bigger question now is I want to make

4     sure we're on the same page that the forensic images are being

5     treated as attorneys' eyes only.

6          MR. BROWN:  Yes, they are.

7          THE COURT:  And I understood that as well from our

8     in-person conference.

9          All right.  Well, I will look at that, and I'm just

10    going to take a small bite at this point to deal with your

11    request as to her being able to be next to counsel on Tuesday.

12         And, you know, of course, there are -- if there is

13    something that is confidential, she can always be excused

14    during a period of time.  That is not what your desire is.  But

15    if it is necessary, that is -- that is an option.  Okay.

16         MR. CROSS:  Your Honor, this is David Cross.  I know

17    you need to go.

18         But just to give you a quick update, we're still

19    waiting for search results from Ms. Latham.  Our understanding

20    is those searches have been running this week.  It is taking a

21    little longer than we thought it would.  But we are in

22    discussions with her counsel, Holly Pierson.  And we understand

23    we should get a search report today or tomorrow morning.  And

24    hopefully documents will roll in from there.  So just as an

25    update.

```
 1            THE COURT:  All right.  My law clerks point out to me
 2   that they believe that the deposition -- I'm wrong.  The
 3   deposition is on Wednesday and not Tuesday.  And I think that
 4   is my muddled brain.  Last week it was -- this past week it was
 5   supposed to be Tuesday.
 6            But now it is going to be Wednesday?
 7            MR. CROSS:  That's correct, Your Honor.  Although I
 8   was panicking myself that you were right and I was wrong.
 9            THE COURT:  All right.  So -- anyway.  Well, that
10   gives us a little more breathing room.
11            Okay.  Good.  That is fine.  We'll let you know
12   whether we're going to have to push off until Tuesday morning
13   or something because I'm impinging on everyone else's time off.
14            But all right.  I want to say so there is no
15   expectations otherwise:  The position I took when I denied
16   Dominion's motion before is -- I am very firm about so no one
17   has any conceptions otherwise.  I'll revisit this when the
18   election cycle is completely over.
19            MR. CROSS:  Your Honor, this is David.  Just to
20   clarify, you are going to revisit the pending issue before you
21   on the MITRE report and the Halderman report?
22            THE COURT:  I mean, I indicated I would -- I would --
23   you know, I would look at where we are but after the election
24   cycle.
25            MR. CROSS:  Understood.  I just wanted to make sure
```

21

```
 1    that I understood what you meant by the Dominion issue.  But

 2    understood.  Thank you for that.

 3             THE COURT:  All right.  So no one should, you know,

 4    think that they need to rush to the issue is the real point

 5    because I'm firm of my view at this point.

 6             All right.  Thank you very much.  I do need to go

 7    back into court.  Have a very good weekend.  Thanks.

 8             MR. CROSS:  Thank you, Your Honor.

 9             THE COURT:  All right.  Bye-bye.

10             (The proceedings were thereby concluded at 1:02

11             PM.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                  C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    21 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12       In testimony whereof, I hereunto set my hand on this, the

13   7th day of October, 2022.

14

15

16

17                      _____
                        SHANNON R. WELCH, RMR, CRR
18                      OFFICIAL COURT REPORTER
                        UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25