Copyright © 2020 Dominion Voting Inc. All Rights Reserved

00794□00019□000002

# FULTON COUNTY

779-RW01

## OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT

### OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA NOVEMBER 3, 2020

INSTRUCTIONS:

| To Vote | Warning |
|---|---|
| 1. Use black or blue ink to mark the ballot<br>2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote<br>3. If voting for a Write-In candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided | Do NOT use red ink or felt tip pen to mark ballot<br>Do NOT circle, underline or mark through choices<br>Do NOT use check marks or X to mark ballot<br>Do NOT mark more choices per race than allowed<br>Do NOT sign, cut, tear or damage the ballot |

**If you make a mistake or change your mind on a selection:**

A. Do not attempt to mark through the selection or attempt to erase. Write "**Spoiled**" across **the ballot and across the return envelope**
B. Mail or return the spoiled ballot and envelope to your county board of registrars; a new official absentee ballot will be mailed to you

**If you decide to vote in-person:** Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

*"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]*

**For President of the United States** (Vote for One)

- ● **Donald J. Trump** - President, **Michael R. Pence** - Vice President, (Incumbent) Republican
- ○ **Joseph R. Biden** - President, **Kamala D. Harris** - Vice President, Democrat
- ○ **Jo Jorgensen** - President, **Jeremy "Spike" Cohen** - Vice President, Libertarian
- ○ Write-in

**For United States Senate** (Vote for One)

- ● **David A. Perdue**, (Incumbent) Republican
- ○ **Jon Ossoff**, Democrat
- ○ **Shane Hazel**, Libertarian
- ○ Write-in

**SPECIAL ELECTION**

**For United States Senate** (To Fill the Unexpired Term of Johnny Isakson, Resigned) (Vote for One)

- ○ **Al Bartell**, Independent
- ○ **Allen Buckley**, Independent
- ● **Doug Collins**, Republican
- ○ **John Fortuin**, Green
- ○ **Derrick E. Grayson**, Republican
- ○ **Michael Todd Greene**, Independent
- ○ **Annette Davis Jackson**, Republican
- ○ **Deborah Jackson**, Democrat
- ○ **Jamesia James**, Democrat
- ○ **A. Wayne Johnson**, Republican
- ○ **Tamara Johnson-Shealey**, Democrat
- ○ **Matt Lieberman**, Democrat
- ○ **Kelly Loeffler**, (Incumbent) Republican
- ○ **Joy Felicia Slade**, Democrat
- ○ **Brian Slowinski**, Libertarian
- ○ **Valencia Stovall**, Independent
- ○ **Ed Tarver**, Democrat
- ○ **Kandiss Taylor**, Republican
- ○ **Raphael Warnock**, Democrat
- ○ **Richard Dien Winfield**, Democrat
- ○ Write-in

**For Public Service Commissioner** (To Succeed Jason Shaw) (Vote for One)

- ● **Jason Shaw**, (Incumbent) Republican
- ○ **Robert G. Bryant**, Democrat
- ○ **Elizabeth Melton**, Libertarian
- ○ Write-in

**For Public Service Commissioner** (To Succeed Lauren Bubba McDonald, Jr.) (Vote for One)

- ● **Lauren Bubba McDonald, Jr.**, (Incumbent) Republican
- ○ **Daniel Blackman**, Democrat
- ○ **Nathan Wilson**, Libertarian
- ○ Write-in

**For U.S. Representative in 117th Congress From the 6th Congressional District of Georgia** (Vote for One)

- ● **Karen Handel**, Republican
- ○ **Lucy McBath**, (Incumbent) Democrat
- ○ Write-in

**For State Senator From 56th District** (Vote for One)

- ● **John Albers**, (Incumbent) Republican
- ○ **Sarah Beeson**, Democrat
- ○ Write-in

**Turn Ballot Over To Continue Voting**

---

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

00791□00026□000079

# FULTON COUNTY

779-RW01

## OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT

### OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA NOVEMBER 3, 2020

INSTRUCTIONS:

| To Vote | Warning |
|---|---|
| 1. Use black or blue ink to mark the ballot<br>2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote<br>3. If voting for a Write-In candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided | Do NOT use red ink or felt tip pen to mark ballot<br>Do NOT circle, underline or mark through choices<br>Do NOT use check marks or X to mark ballot<br>Do NOT mark more choices per race than allowed<br>Do NOT sign, cut, tear or damage the ballot |

**If you make a mistake or change your mind on a selection:**

A. Do not attempt to mark through the selection or attempt to erase. Write "**Spoiled**" across **the ballot and across the return envelope**
B. Mail or return the spoiled ballot and envelope to your county board of registrars; a new official absentee ballot will be mailed to you

**If you decide to vote in-person:** Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

*"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]*

**For President of the United States** (Vote for One)

- ● **Donald J. Trump** - President, **Michael R. Pence** - Vice President, (Incumbent) Republican
- ○ **Joseph R. Biden** - President, **Kamala D. Harris** - Vice President, Democrat
- ○ **Jo Jorgensen** - President, **Jeremy "Spike" Cohen** - Vice President, Libertarian
- ○ Write-in

**For United States Senate** (Vote for One)

- ● **David A. Perdue**, (Incumbent) Republican
- ○ **Jon Ossoff**, Democrat
- ○ **Shane Hazel**, Libertarian
- ○ Write-in

**SPECIAL ELECTION**

**For United States Senate** (To Fill the Unexpired Term of Johnny Isakson, Resigned) (Vote for One)

- ○ **Al Bartell**, Independent
- ○ **Allen Buckley**, Independent
- ● **Doug Collins**, Republican
- ○ **John Fortuin**, Green
- ○ **Derrick E. Grayson**, Republican
- ○ **Michael Todd Greene**, Independent
- ○ **Annette Davis Jackson**, Republican
- ○ **Deborah Jackson**, Democrat
- ○ **Jamesia James**, Democrat
- ○ **A. Wayne Johnson**, Republican
- ○ **Tamara Johnson-Shealey**, Democrat
- ○ **Matt Lieberman**, Democrat
- ○ **Kelly Loeffler**, (Incumbent) Republican
- ○ **Joy Felicia Slade**, Democrat
- ○ **Brian Slowinski**, Libertarian
- ○ **Valencia Stovall**, Independent
- ○ **Ed Tarver**, Democrat
- ○ **Kandiss Taylor**, Republican
- ○ **Raphael Warnock**, Democrat
- ○ **Richard Dien Winfield**, Democrat
- ○ Write-in

**For Public Service Commissioner** (To Succeed Jason Shaw) (Vote for One)

- ● **Jason Shaw**, (Incumbent) Republican
- ○ **Robert G. Bryant**, Democrat
- ○ **Elizabeth Melton**, Libertarian
- ○ Write-in

**For Public Service Commissioner** (To Succeed Lauren Bubba McDonald, Jr.) (Vote for One)

- ● **Lauren Bubba McDonald, Jr.**, (Incumbent) Republican
- ○ **Daniel Blackman**, Democrat
- ○ **Nathan Wilson**, Libertarian
- ○ Write-in

**For U.S. Representative in 117th Congress From the 6th Congressional District of Georgia** (Vote for One)

- ● **Karen Handel**, Republican
- ○ **Lucy McBath**, (Incumbent) Democrat
- ○ Write-in

**For State Senator From 56th District** (Vote for One)

- ● **John Albers**, (Incumbent) Republican
- ○ **Sarah Beeson**, Democrat
- ○ Write-in

**Turn Ballot Over To Continue Voting**

---

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

00791□00019□000022

# FULTON COUNTY

779-RW01

## OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT

### OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA NOVEMBER 3, 2020

INSTRUCTIONS:

| To Vote | Warning |
|---|---|
| 1. Use black or blue ink to mark the ballot<br>2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote<br>3. If voting for a Write-In candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided | Do NOT use red ink or felt tip pen to mark ballot<br>Do NOT circle, underline or mark through choices<br>Do NOT use check marks or X to mark ballot<br>Do NOT mark more choices per race than allowed<br>Do NOT sign, cut, tear or damage the ballot |

**If you make a mistake or change your mind on a selection:**

A. Do not attempt to mark through the selection or attempt to erase. Write "**Spoiled**" across **the ballot and across the return envelope**
B. Mail or return the spoiled ballot and envelope to your county board of registrars; a new official absentee ballot will be mailed to you

**If you decide to vote in-person:** Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

*"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]*

**For President of the United States** (Vote for One)

- ● **Donald J. Trump** - President, **Michael R. Pence** - Vice President, (Incumbent) Republican
- ○ **Joseph R. Biden** - President, **Kamala D. Harris** - Vice President, Democrat
- ○ **Jo Jorgensen** - President, **Jeremy "Spike" Cohen** - Vice President, Libertarian
- ○ Write-in

**For United States Senate** (Vote for One)

- ● **David A. Perdue**, (Incumbent) Republican
- ○ **Jon Ossoff**, Democrat
- ○ **Shane Hazel**, Libertarian
- ○ Write-in

**SPECIAL ELECTION**

**For United States Senate** (To Fill the Unexpired Term of Johnny Isakson, Resigned) (Vote for One)

- ○ **Al Bartell**, Independent
- ○ **Allen Buckley**, Independent
- ● **Doug Collins**, Republican
- ○ **John Fortuin**, Green
- ○ **Derrick E. Grayson**, Republican
- ○ **Michael Todd Greene**, Independent
- ○ **Annette Davis Jackson**, Republican
- ○ **Deborah Jackson**, Democrat
- ○ **Jamesia James**, Democrat
- ○ **A. Wayne Johnson**, Republican
- ○ **Tamara Johnson-Shealey**, Democrat
- ○ **Matt Lieberman**, Democrat
- ○ **Kelly Loeffler**, (Incumbent) Republican
- ○ **Joy Felicia Slade**, Democrat
- ○ **Brian Slowinski**, Libertarian
- ○ **Valencia Stovall**, Independent
- ○ **Ed Tarver**, Democrat
- ○ **Kandiss Taylor**, Republican
- ○ **Raphael Warnock**, Democrat
- ○ **Richard Dien Winfield**, Democrat
- ○ Write-in

**For Public Service Commissioner** (To Succeed Jason Shaw) (Vote for One)

- ● **Jason Shaw**, (Incumbent) Republican
- ○ **Robert G. Bryant**, Democrat
- ○ **Elizabeth Melton**, Libertarian
- ○ Write-in

**For Public Service Commissioner** (To Succeed Lauren Bubba McDonald, Jr.) (Vote for One)

- ● **Lauren Bubba McDonald, Jr.**, (Incumbent) Republican
- ○ **Daniel Blackman**, Democrat
- ○ **Nathan Wilson**, Libertarian
- ○ Write-in

**For U.S. Representative in 117th Congress From the 6th Congressional District of Georgia** (Vote for One)

- ● **Karen Handel**, Republican
- ○ **Lucy McBath**, (Incumbent) Democrat
- ○ Write-in

**For State Senator From 56th District** (Vote for One)

- ● **John Albers**, (Incumbent) Republican
- ○ **Sarah Beeson**, Democrat
- ○ Write-in

**Turn Ballot Over To Continue Voting**

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

0 7 9 4 0 0 0 9 0 0 0 0 2

**For State Representative
In the General Assembly From
48th District**
(Vote for One)

- ● Betty Price — Republican
- ○ Mary Robichaux — (Incumbent) Democrat
- ○ Write-in

**For District Attorney of the
Atlanta Judicial Circuit**
(Vote for One)

- ● Fani Willis — Democrat
- ○ Write-in

**For Clerk of Superior Court**
(Vote for One)

- ● Cathelene "Tina" Robinson — (Incumbent) Democrat
- ○ Write-in

**For Sheriff**
(Vote for One)

- ○ Patrick "Pat" Labat — Democrat
- ○ Write-in

**For Tax Commissioner**
(Vote for One)

- ○ Arthur E. Ferdinand — (Incumbent) Democrat
- ○ Write-in

**For Surveyor**
(Vote for One)

- ○ Write-in

**For Solicitor-General of
State Court of Fulton County**
(Vote for One)

- ○ Keith E. Gammage — (Incumbent) Democrat
- ○ Write-in

**For Fulton County Commissioner
From District No. 2**
(Vote for One)

- ● Bob Ellis — (Incumbent) Republican
- ○ Justin Holsomback — Democrat
- ○ Write-in

**For Fulton County Soil and Water
Conservation District Supervisor**
(Vote for One)

- ● Alan Toney — (Incumbent)
- ○ Write-in

## PROPOSED CONSTITUTIONAL AMENDMENTS

**- 1 -**

Authorizes dedication of fees and taxes to their intended purposes by general state law.

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so as to authorize the General Assembly to dedicate revenues derived from fees or taxes to the public purpose for which such fees or taxes were intended?"

- ● YES
- ○ NO

**- 2 -**

Waives state and local sovereign immunity for violation of state laws, state and federal constitutions.

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to waive sovereign immunity and allow the people of Georgia to petition the superior court for relief from governmental acts done outside the scope of lawful authority or which violate the laws of this state, the Constitution of Georgia, or the Constitution of the United States?"

- ● YES
- ○ NO

## STATEWIDE REFERENDUM

**- A -**

Establishes a tax exemption for certain real property owned by charities.

House Bill 344
Act No. 149

"Shall the Act be approved which provides an exemption from ad valorem taxes for all real property owned by a purely public charity, if such charity is exempt from taxation under Section 501(c)(3) of the federal Internal Revenue Code and such real property is held exclusively for the purpose of building or repairing single-family homes to be financed by such charity to individuals using loans that shall not bear interest?"

- ● YES
- ○ NO

**Turn Ballot Over To Continue Voting**

---

0 7 1 0 0 0 2 6 0 0 0 7 9

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

**For State Representative In the General Assembly From 48th District** (Vote for One)
- ● Betty Price — Republican
- ○ Mary Robichaux — (Incumbent) Democrat
- ○ Write-in

**For District Attorney of the Atlanta Judicial Circuit** (Vote for One)
- ● Fani Willis — Democrat
- ○ Write-in

**For Clerk of Superior Court** (Vote for One)
- ● Cathelene "Tina" Robinson — (Incumbent) Democrat
- ○ Write-in

**For Sheriff** (Vote for One)
- ● Patrick "Pat" Labat — Democrat
- ○ Write-in

**For Tax Commissioner** (Vote for One)
- ○ Arthur E. Ferdinand — (Incumbent) Democrat
- ○ Write-in

**For Surveyor** (Vote for One)
- ○ Write-in

**For Solicitor-General of State Court of Fulton County** (Vote for One)
- ● Keith E. Gammage — (Incumbent) Democrat
- ○ Write-in

**For Fulton County Commissioner From District No. 2** (Vote for One)
- ● Bob Ellis — (Incumbent) Republican
- ○ Justin Holsomback — Democrat
- ○ Write-in

**For Fulton County Soil and Water Conservation District Supervisor** (Vote for One)
- ● Alan Toney — (Incumbent)
- ○ Write-in

## PROPOSED CONSTITUTIONAL AMENDMENTS
- 1 - Authorizes dedication of fees and taxes to their intended purposes by general state law. House Resolution 164, Act No. 597. ● YES ○ NO
- 2 - Waives state and local sovereign immunity for violation of state laws, state and federal constitutions. House Resolution 1023, Act No. 596. ● YES ○ NO

## STATEWIDE REFERENDUM
- A - Establishes a tax exemption for certain real property owned by charities. House Bill 344, Act No. 149. ● YES ○ NO

**Turn Ballot Over To Continue Voting**

---

0 7 9 1 0 0 0 9 0 0 0 0 2

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

**For State Representative In the General Assembly From 48th District** (Vote for One)
- ● Betty Price — Republican
- ○ Mary Robichaux — (Incumbent) Democrat
- ○ Write-in

**For District Attorney of the Atlanta Judicial Circuit** (Vote for One)
- ● Fani Willis — Democrat
- ○ Write-in

**For Clerk of Superior Court** (Vote for One)
- ● Cathelene "Tina" Robinson — (Incumbent) Democrat
- ○ Write-in

**For Sheriff** (Vote for One)
- ○ Patrick "Pat" Labat — Democrat
- ○ Write-in

**For Tax Commissioner** (Vote for One)
- ○ Arthur E. Ferdinand — (Incumbent) Democrat
- ○ Write-in

**For Surveyor** (Vote for One)
- ○ Write-in

**For Solicitor-General of State Court of Fulton County** (Vote for One)
- ○ Keith E. Gammage — (Incumbent) Democrat
- ○ Write-in

**For Fulton County Commissioner From District No. 2** (Vote for One)
- ● Bob Ellis — (Incumbent) Republican
- ○ Justin Holsomback — Democrat
- ○ Write-in

**For Fulton County Soil and Water Conservation District Supervisor** (Vote for One)
- ● Alan Toney — (Incumbent)
- ○ Write-in

## PROPOSED CONSTITUTIONAL AMENDMENTS
- 1 - Authorizes dedication of fees and taxes to their intended purposes by general state law. House Resolution 164, Act No. 597. ● YES ○ NO
- 2 - Waives state and local sovereign immunity for violation of state laws, state and federal constitutions. House Resolution 1023, Act No. 596. ● YES ○ NO

## STATEWIDE REFERENDUM
- A - Establishes a tax exemption for certain real property owned by charities. House Bill 344, Act No. 149. ● YES ○ NO

**Turn Ballot Over To Continue Voting**

Case 1:17-cv-02989-AT Document 1569-3 Filed 11/02/22 Page 3 of 292

00794_00019_000002.tif scanned at: 12:44:48 on 12/02/20.

Scanned on: ICC   Tabulator: 794   Batch: 19
Poll ID:  317  Ballot ID: 676

President of the United States
  Donald J. Trump (I) (Rep)
US Senate (Perdue)
  David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
  Doug Collins (Rep)
Public Service Commission District 1
  Jason Shaw (I) (Rep)
Public Service Commission District 4
  Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
  Karen Handel (Rep)
State Senate District 56
  John Albers (I) (Rep)
State House District 48
  Betty Price (Rep)
District Attorney - Atlanta
  Fani Willis (Dem)
Clerk of Superior Court
  Cathelene "Tina" Robinson (I) (Dem)
Sheriff
  BLANK CONTEST
Tax Commissioner
  BLANK CONTEST
Surveyor
  BLANK CONTEST
Solicitor General
  BLANK CONTEST
County Commission District 2
  Bob Ellis (I) (Rep)
Soil and Water - Fulton County
  Alan Toney (I)
Constitutional Amendment #1
  YES
Constitutional Amendment #2
  YES
Statewide Referendum A
  YES

00791_00026_000079.tif scanned at: 09:34:56 on 12/01/20.

Scanned on: ICC   Tabulator: 791   Batch: 26
Poll ID:  317  Ballot ID: 676

President of the United States
  Donald J. Trump (I) (Rep)
US Senate (Perdue)
  David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
  Doug Collins (Rep)
Public Service Commission District 1
  Jason Shaw (I) (Rep)
Public Service Commission District 4
  Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
  Karen Handel (Rep)
State Senate District 56
  John Albers (I) (Rep)
State House District 48
  Betty Price (Rep)
District Attorney - Atlanta
  Fani Willis (Dem)
Clerk of Superior Court
  Cathelene "Tina" Robinson (I) (Dem)
Sheriff
  BLANK CONTEST
Tax Commissioner
  BLANK CONTEST
Surveyor
  BLANK CONTEST
Solicitor General
  BLANK CONTEST
County Commission District 2
  Bob Ellis (I) (Rep)
Soil and Water - Fulton County
  Alan Toney (I)
Constitutional Amendment #1
  YES
Constitutional Amendment #2
  YES
Statewide Referendum A
  YES

00791_00019_000022.tif scanned at: 15:21:10 on 11/30/20.

Scanned on: ICC   Tabulator: 791   Batch: 19
Poll ID:  317  Ballot ID: 676

President of the United States
  Donald J. Trump (I) (Rep)
US Senate (Perdue)
  David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
  Doug Collins (Rep)
Public Service Commission District 1
  Jason Shaw (I) (Rep)
Public Service Commission District 4
  Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
  Karen Handel (Rep)
State Senate District 56
  John Albers (I) (Rep)
State House District 48
  Betty Price (Rep)
District Attorney - Atlanta
  Fani Willis (Dem)
Clerk of Superior Court
  Cathelene "Tina" Robinson (I) (Dem)
Sheriff
  BLANK CONTEST
Tax Commissioner
  BLANK CONTEST
Surveyor
  BLANK CONTEST
Solicitor General
  BLANK CONTEST
County Commission District 2
  Bob Ellis (I) (Rep)
Soil and Water - Fulton County
  Alan Toney (I)
Constitutional Amendment #1
  YES
Constitutional Amendment #2
  YES
Statewide Referendum A
  YES

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

# FULTON COUNTY
## 779-RW01

### OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT

**OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA**

**NOVEMBER 3, 2020**

**INSTRUCTIONS:**

**To Vote**
1. Use black or blue ink to mark the ballot
2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote
3. If voting for a Write-in candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided

**Warning**
Do **NOT** use red ink or felt tip pen to mark ballot
Do **NOT** circle, underline or mark through choices
Do **NOT** use check marks or X to mark ballot
Do **NOT** mark more choices per race than allowed
Do **NOT** sign, cut, tear or damage the ballot

**If you make a mistake or change your mind on a selection:**
A. Do not attempt to mark through the selection or attempt to erase. Write "Spoiled" across the ballot and across the return envelope
B. Mail or return the spoiled ballot and envelope to your county board of registrars, a new official absentee ballot will be mailed to you

**If you decide to vote in-person:** Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

*"I understand that the offer or acceptance of money or any other object of value in vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." (O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a))*

**For President of the United States** (Vote for One)
- ● Donald J. Trump - President / Michael R. Pence - Vice President (Incumbent) Republican
- ○ Joseph R. Biden - President / Kamala D. Harris - Vice President Democrat
- ○ Jo Jorgensen - President / Jeremy "Spike" Cohen - Vice President Libertarian
- ○ Write-In

**For United States Senate** (Vote for One)
- ● David A. Perdue (Incumbent) Republican
- ○ Jon Ossoff Democrat
- ○ Shane Hazel Libertarian
- ○ Write-In

## SPECIAL ELECTION

**For United States Senate** (To Fill the Unexpired Term of Johnny Isakson, Resigned) (Vote for One)
- ○ Al Bartell Independent
- ○ Allen Buckley Independent
- ○ Doug Collins Republican
- ○ John Fortuin Green
- ○ Derrick E. Grayson Republican
- ○ Michael Todd Greene Republican
- ○ Annette Davis Jackson Republican
- ○ Deborah Jackson Democrat
- ○ Jamesia James Democrat
- ○ A. Wayne Johnson Republican
- ○ Tamara Johnson-Shealey Democrat
- ○ Matt Lieberman Democrat
- ● Kelly Loeffler (Incumbent) Republican
- ○ Joy Felicia Slade Democrat
- ○ Brian Slowinski Libertarian
- ○ Valencia Stovall Independent
- ○ Ed Tarver Democrat
- ○ Kandiss Taylor Republican
- ○ Raphael Warnock Democrat
- ○ Richard Dien Winfield Democrat
- ○ Write-In

**For U.S. Representative In 117th Congress From the 6th Congressional District of Georgia** (Vote for One)
- ● Karen Handel Republican
- ○ Lucy McBath (Incumbent) Democrat
- ○ Write-In

**For State Senator From 56th District** (Vote for One)
- ● John Albers (Incumbent) Republican
- ○ Sarah Beeson Democrat
- ○ Write-In

**For Public Service Commissioner** (To Succeed Jason Shaw) (Vote for One)
- ● Jason Shaw (Incumbent) Republican
- ○ Robert G. Bryant Democrat
- ○ Elizabeth Melton Libertarian
- ○ Write-In

**For Public Service Commissioner** (To Succeed Lauren Bubba McDonald, Jr.) (Vote for One)
- ● Lauren Bubba McDonald, Jr. (Incumbent) Republican
- ○ Daniel Blackman Democrat
- ○ Nathan Wilson Libertarian
- ○ Write-In

**Turn Ballot Over To Continue Voting**

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

FULTON COUNTY
779-RW01
OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT
OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA
NOVEMBER 3, 2020

INSTRUCTIONS:
To Vote
1. Use black or blue ink to mark the ballot
2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote
3. If voting for a Write-in candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided

Warning
Do NOT use red ink or felt tip pen to mark ballot
Do NOT circle, underline or mark through choices
Do NOT use check marks or X to mark ballot
Do NOT mark more choices per race than allowed
Do NOT sign, cut, tear or damage the ballot

If you make a mistake or change your mind on a selection:
A. Do not attempt to mark through the selection or attempt to erase. Write "Spoiled" across the ballot and across the return envelope
B. Mail or return the spoiled ballot and envelope to your county board of registrars, a new official absentee ballot will be mailed to you

If you decide to vote in-person: Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

"I understand that the offer or acceptance of money or any other object of value in vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." (O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a))

For President of the United States (Vote for One)
Donald J. Trump - President / Michael R. Pence - Vice President (Incumbent) Republican
Joseph R. Biden - President / Kamala D. Harris - Vice President Democrat
Jo Jorgensen - President / Jeremy "Spike" Cohen - Vice President Libertarian
Write-In

For United States Senate (Vote for One)
David A. Perdue (Incumbent) Republican
Jon Ossoff Democrat
Shane Hazel Libertarian
Write-In

SPECIAL ELECTION
For United States Senate (To Fill the Unexpired Term of Johnny Isakson, Resigned) (Vote for One)
Al Bartell Independent
Allen Buckley Independent
Doug Collins Republican
John Fortuin Green
Derrick E. Grayson Republican
Michael Todd Greene Republican
Annette Davis Jackson Republican
Deborah Jackson Democrat
Jamesia James Democrat
A. Wayne Johnson Republican
Tamara Johnson-Shealey Democrat
Matt Lieberman Democrat
Kelly Loeffler (Incumbent) Republican
Joy Felicia Slade Democrat
Brian Slowinski Libertarian
Valencia Stovall Independent
Ed Tarver Democrat
Kandiss Taylor Republican
Raphael Warnock Democrat
Richard Dien Winfield Democrat
Write-In

For Public Service Commissioner (To Succeed Jason Shaw) (Vote for One)
Jason Shaw (Incumbent) Republican
Robert G. Bryant Democrat
Elizabeth Melton Libertarian
Write-In

For Public Service Commissioner (To Succeed Lauren Bubba McDonald, Jr.) (Vote for One)
Lauren Bubba McDonald, Jr. (Incumbent) Republican
Daniel Blackman Democrat
Nathan Wilson Libertarian
Write-In

For U.S. Representative In 117th Congress From the 6th Congressional District of Georgia (Vote for One)
Karen Handel Republican
Lucy McBath (Incumbent) Democrat
Write-In

For State Senator From 56th District (Vote for One)
John Albers (Incumbent) Republican
Sarah Beeson Democrat
Write-In

Turn Ballot Over To Continue Voting

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

FULTON COUNTY
779-RW01
OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT
OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA
NOVEMBER 3, 2020

INSTRUCTIONS:
To Vote
1. Use black or blue ink to mark the ballot
2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote
3. If voting for a Write-in candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided

Warning
Do NOT use red ink or felt tip pen to mark ballot
Do NOT circle, underline or mark through choices
Do NOT use check marks or X to mark ballot
Do NOT mark more choices per race than allowed
Do NOT sign, cut, tear or damage the ballot

If you make a mistake or change your mind on a selection:
A. Do not attempt to mark through the selection or attempt to erase. Write "Spoiled" across the ballot and across the return envelope
B. Mail or return the spoiled ballot and envelope to your county board of registrars, a new official absentee ballot will be mailed to you

If you decide to vote in-person: Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

"I understand that the offer or acceptance of money or any other object of value in vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." (O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a))

For President of the United States (Vote for One)
Donald J. Trump - President / Michael R. Pence - Vice President (Incumbent) Republican
Joseph R. Biden - President / Kamala D. Harris - Vice President Democrat
Jo Jorgensen - President / Jeremy "Spike" Cohen - Vice President Libertarian
Write-In

For United States Senate (Vote for One)
David A. Perdue (Incumbent) Republican
Jon Ossoff Democrat
Shane Hazel Libertarian
Write-In

SPECIAL ELECTION
For United States Senate (To Fill the Unexpired Term of Johnny Isakson, Resigned) (Vote for One)
Al Bartell Independent
Allen Buckley Independent
Doug Collins Republican
John Fortuin Green
Derrick E. Grayson Republican
Michael Todd Greene Republican
Annette Davis Jackson Republican
Deborah Jackson Democrat
Jamesia James Democrat
A. Wayne Johnson Republican
Tamara Johnson-Shealey Democrat
Matt Lieberman Democrat
Kelly Loeffler (Incumbent) Republican
Joy Felicia Slade Democrat
Brian Slowinski Libertarian
Valencia Stovall Independent
Ed Tarver Democrat
Kandiss Taylor Republican
Raphael Warnock Democrat
Richard Dien Winfield Democrat
Write-In

For Public Service Commissioner (To Succeed Jason Shaw) (Vote for One)
Jason Shaw (Incumbent) Republican
Robert G. Bryant Democrat
Elizabeth Melton Libertarian
Write-In

For Public Service Commissioner (To Succeed Lauren Bubba McDonald, Jr.) (Vote for One)
Lauren Bubba McDonald, Jr. (Incumbent) Republican
Daniel Blackman Democrat
Nathan Wilson Libertarian
Write-In

For U.S. Representative In 117th Congress From the 6th Congressional District of Georgia (Vote for One)
Karen Handel Republican
Lucy McBath (Incumbent) Democrat
Write-In

For State Senator From 56th District (Vote for One)
John Albers (Incumbent) Republican
Sarah Beeson Democrat
Write-In

Turn Ballot Over To Continue Voting

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

00794□00019□000005

**For State Representative In the General Assembly From 48th District** (Vote for One)

● Betty Price
Republican

○ Mary Robichaux
(Incumbent) Democrat

○ Write-in

**For District Attorney of the Atlanta Judicial Circuit** (Vote for One)

● Fani Willis
Democrat

○ Write-in

**For Clerk of Superior Court** (Vote for One)

● Cathelene "Tina" Robinson
(Incumbent) Democrat

○ Write-in

**For Sheriff** (Vote for One)

● Patrick "Pat" Labat
Democrat

○ Write-in

**For Tax Commissioner** (Vote for One)

● Arthur E. Ferdinand
(Incumbent) Democrat

○ Write-in

**For Surveyor** (Vote for One)

○ Write-in

**For Solicitor-General of State Court of Fulton County** (Vote for One)

● Keith E. Gammage
(Incumbent) Democrat

○ Write-in

**For Fulton County Commissioner From District No. 2** (Vote for One)

● Bob Ellis
(Incumbent) Republican

○ Justin Holsomback
Democrat

○ Write-in

**For Fulton County Soil and Water Conservation District Supervisor** (Vote for One)

● Alan Toney
(Incumbent)

○ Write-in

## PROPOSED CONSTITUTIONAL AMENDMENTS

- 1 -

**Authorizes dedication of fees and taxes to their intended purposes by general state law.**

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so as to authorize the General Assembly to dedicate revenues derived from fees or taxes to the public purpose for which such fees or taxes were intended?"

● YES
○ NO

- 2 -

**Waives state and local sovereign immunity for violation of state laws, state and federal constitutions.**

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to waive sovereign immunity and allow the people of Georgia to petition the superior court for relief from governmental acts done outside the scope of lawful authority or which violate the laws of this state, the Constitution of Georgia, or the Constitution of the United States?"

● YES
○ NO

## STATEWIDE REFERENDUM

- A -

**Establishes a tax exemption for certain real property owned by charities.**

House Bill 344
Act No. 149

"Shall the Act be approved which provides an exemption from ad valorem taxes for all real property owned by a purely public charity, if such charity is exempt from taxation under Section 501(c)(3) of the federal Internal Revenue Code and such real property is held exclusively for the purpose of building or repairing single-family homes to be financed by such charity to individuals using loans that shall not bear interest?"

● YES
○ NO

Turn Ballot Over To Continue Voting

00791□00026□000076

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

**For State Representative In the General Assembly From 48th District** (Vote for One)

● Betty Price
Republican

○ Mary Robichaux
(Incumbent) Democrat

○ Write-in

**For District Attorney of the Atlanta Judicial Circuit** (Vote for One)

● Fani Willis
Democrat

○ Write-in

**For Clerk of Superior Court** (Vote for One)

● Cathelene "Tina" Robinson
(Incumbent) Democrat

○ Write-in

**For Sheriff** (Vote for One)

● Patrick "Pat" Labat
Democrat

○ Write-in

**For Tax Commissioner** (Vote for One)

● Arthur E. Ferdinand
(Incumbent) Democrat

○ Write-in

**For Surveyor** (Vote for One)

○ Write-in

**For Solicitor-General of State Court of Fulton County** (Vote for One)

● Keith E. Gammage
(Incumbent) Democrat

○ Write-in

**For Fulton County Commissioner From District No. 2** (Vote for One)

● Bob Ellis
(Incumbent) Republican

○ Justin Holsomback
Democrat

○ Write-in

**For Fulton County Soil and Water Conservation District Supervisor** (Vote for One)

● Alan Toney
(Incumbent)

○ Write-in

PROPOSED CONSTITUTIONAL AMENDMENTS

- 1 -

**Authorizes dedication of fees and taxes to their intended purposes by general state law.**

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so as to authorize the General Assembly to dedicate revenues derived from fees or taxes to the public purpose for which such fees or taxes were intended?"

● YES
○ NO

- 2 -

**Waives state and local sovereign immunity for violation of state laws, state and federal constitutions.**

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to waive sovereign immunity and allow the people of Georgia to petition the superior court for relief from governmental acts done outside the scope of lawful authority or which violate the laws of this state, the Constitution of Georgia, or the Constitution of the United States?"

● YES
○ NO

STATEWIDE REFERENDUM

- A -

**Establishes a tax exemption for certain real property owned by charities.**

House Bill 344
Act No. 149

"Shall the Act be approved which provides an exemption from ad valorem taxes for all real property owned by a purely public charity, if such charity is exempt from taxation under Section 501(c)(3) of the federal Internal Revenue Code and such real property is held exclusively for the purpose of building or repairing single-family homes to be financed by such charity to individuals using loans that shall not bear interest?"

● YES
○ NO

Turn Ballot Over To Continue Voting

00791□00019□000025

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

**For State Representative In the General Assembly From 48th District** (Vote for One)

● Betty Price
Republican

○ Mary Robichaux
(Incumbent) Democrat

○ Write-in

**For District Attorney of the Atlanta Judicial Circuit** (Vote for One)

● Fani Willis
Democrat

○ Write-in

**For Clerk of Superior Court** (Vote for One)

● Cathelene "Tina" Robinson
(Incumbent) Democrat

○ Write-in

**For Sheriff** (Vote for One)

● Patrick "Pat" Labat
Democrat

○ Write-in

**For Tax Commissioner** (Vote for One)

● Arthur E. Ferdinand
(Incumbent) Democrat

○ Write-in

**For Surveyor** (Vote for One)

○ Write-in

**For Solicitor-General of State Court of Fulton County** (Vote for One)

● Keith E. Gammage
(Incumbent) Democrat

○ Write-in

**For Fulton County Commissioner From District No. 2** (Vote for One)

● Bob Ellis
(Incumbent) Republican

○ Justin Holsomback
Democrat

○ Write-in

**For Fulton County Soil and Water Conservation District Supervisor** (Vote for One)

● Alan Toney
(Incumbent)

○ Write-in

PROPOSED CONSTITUTIONAL AMENDMENTS

- 1 -

**Authorizes dedication of fees and taxes to their intended purposes by general state law.**

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so as to authorize the General Assembly to dedicate revenues derived from fees or taxes to the public purpose for which such fees or taxes were intended?"

● YES
○ NO

- 2 -

**Waives state and local sovereign immunity for violation of state laws, state and federal constitutions.**

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to waive sovereign immunity and allow the people of Georgia to petition the superior court for relief from governmental acts done outside the scope of lawful authority or which violate the laws of this state, the Constitution of Georgia, or the Constitution of the United States?"

● YES
○ NO

STATEWIDE REFERENDUM

- A -

**Establishes a tax exemption for certain real property owned by charities.**

House Bill 344
Act No. 149

"Shall the Act be approved which provides an exemption from ad valorem taxes for all real property owned by a purely public charity, if such charity is exempt from taxation under Section 501(c)(3) of the federal Internal Revenue Code and such real property is held exclusively for the purpose of building or repairing single-family homes to be financed by such charity to individuals using loans that shall not bear interest?"

● YES
○ NO

Turn Ballot Over To Continue Voting

Case 1:17-cv-02989-AT Document 1569-5 Filed 01/07/23 Page 6 of 292

00794_00019_000005.tif scanned at: 12:44:51 on 12/02/20.

00790940190005

Scanned on: ICC   Tabulator: 794   Batch:  19
Poll ID:  317  Ballot ID: 676

President of the United States
    Donald J. Trump (I) (Rep)
US Senate (Perdue)
    David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
    Kelly Loeffler (I) (Rep)
Public Service Commission District 1
    Jason Shaw (I) (Rep)
Public Service Commission District 4
    Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
    Karen Handel (Rep)
State Senate District 56
    John Albers (I) (Rep)
State House District 48
    Betty Price (Rep)
District Attorney - Atlanta
    Fani Willis (Dem)
Clerk of Superior Court
    Cathelene "Tina" Robinson (I) (Dem)
Sheriff
    Patrick "Pat" Labat (Dem)
Tax Commissioner
    Arthur E. Ferdinand (I) (Dem)
Surveyor
    BLANK CONTEST
Solicitor General
    Keith E. Gammage (I) (Dem)
County Commission District 2
    Bob Ellis (I) (Rep)
Soil and Water - Fulton County
    Alan Toney (I)
Constitutional Amendment #1
    YES
Constitutional Amendment #2
    YES
Statewide Referendum A
    YES

00791_00026_000076.tif scanned at: 09:34:54 on 12/01/20.

00791000012600076

Scanned on: ICC   Tabulator: 791   Batch:  26
Poll ID:  317  Ballot ID: 676

President of the United States
    Donald J. Trump (I) (Rep)
US Senate (Perdue)
    David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
    Kelly Loeffler (I) (Rep)
Public Service Commission District 1
    Jason Shaw (I) (Rep)
Public Service Commission District 4
    Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
    Karen Handel (Rep)
State Senate District 56
    John Albers (I) (Rep)
State House District 48
    Betty Price (Rep)
District Attorney - Atlanta
    Fani Willis (Dem)
Clerk of Superior Court
    Cathelene "Tina" Robinson (I) (Dem)
Sheriff
    Patrick "Pat" Labat (Dem)
Tax Commissioner
    Arthur E. Ferdinand (I) (Dem)
Surveyor
    BLANK CONTEST
Solicitor General
    Keith E. Gammage (I) (Dem)
County Commission District 2
    Bob Ellis (I) (Rep)
Soil and Water - Fulton County
    Alan Toney (I) (Dem)
Constitutional Amendment #1
    YES
Constitutional Amendment #2
    YES
Statewide Referendum A
    YES

00791_00019_000025.tif scanned at: 15:21:12 on 11/30/20.

00791000012600025

Scanned on: ICC   Tabulator: 791   Batch:  19
Poll ID:  317  Ballot ID: 676

President of the United States
    Donald J. Trump (I) (Rep)
US Senate (Perdue)
    David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
    Kelly Loeffler (I) (Rep)
Public Service Commission District 1
    Jason Shaw (I) (Rep)
Public Service Commission District 4
    Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
    Karen Handel (Rep)
State Senate District 56
    John Albers (I) (Rep)
State House District 48
    Betty Price (Rep)
District Attorney - Atlanta
    Fani Willis (Dem)
Clerk of Superior Court
    Cathelene "Tina" Robinson (I) (Dem)
Sheriff
    Patrick "Pat" Labat (Dem)
Tax Commissioner
    Arthur E. Ferdinand (I) (Dem)
Surveyor
    BLANK CONTEST
Solicitor General
    Keith E. Gammage (I) (Dem)
County Commission District 2
    Bob Ellis (I) (Rep)
Soil and Water - Fulton County
    Alan Toney (I)
Constitutional Amendment #1
    YES
Constitutional Amendment #2
    YES
Statewide Referendum A
    YES

00794□00019□000006

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

# FULTON COUNTY

779-RW01

## OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT

### OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA NOVEMBER 3, 2020

**INSTRUCTIONS:**

| To Vote | Warning |
|---|---|
| 1. Use black or blue ink to mark the ballot<br>2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote<br>3. If voting for a Write-In candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided | Do NOT use red ink or felt tip pen to mark ballot<br>Do NOT circle, underline or mark through choices<br>Do NOT use check marks or X to mark ballot<br>Do NOT mark more choices per race than allowed<br>Do NOT sign, cut, tear or damage the ballot |

**If you make a mistake or change your mind on a selection:**

A. Do not attempt to mark through the selection or attempt to erase. Write "**Spoiled**" across **the ballot and across the return envelope**
B. Mail or return the spoiled ballot and envelope to your county board of registrars; a new official absentee ballot will be mailed to you

**If you decide to vote in-person:** Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

*"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]*

**For President of the United States**
(Vote for One)

● **Donald J. Trump** - President / **Michael R. Pence** - Vice President — (Incumbent) Republican
○ **Joseph R. Biden** - President / **Kamala D. Harris** - Vice President — Democrat
○ **Jo Jorgensen** - President / **Jeremy "Spike" Cohen** - Vice President — Libertarian
○ Write-in

**For United States Senate**
(Vote for One)

● **David A. Perdue** — (Incumbent) Republican
○ **Jon Ossoff** — Democrat
○ **Shane Hazel** — Libertarian
○ Write-in

**SPECIAL ELECTION**

**For United States Senate**
(To Fill the Unexpired Term of Johnny Isakson, Resigned)
(Vote for One)

○ **Al Bartell** — Independent
○ **Allen Buckley** — Independent
○ **Doug Collins** — Republican
○ **John Fortuin** — Green
○ **Derrick E. Grayson** — Republican
○ **Michael Todd Greene** — Independent
○ **Annette Davis Jackson** — Republican
○ **Deborah Jackson** — Democrat
○ **Jamesia James** — Democrat
○ **A. Wayne Johnson** — Republican
○ **Tamara Johnson-Shealey** — Democrat
○ **Matt Lieberman** — Democrat
● **Kelly Loeffler** — (Incumbent) Republican
○ **Joy Felicia Slade** — Democrat
○ **Brian Slowinski** — Libertarian
○ **Valencia Stovall** — Independent
○ **Ed Tarver** — Democrat
○ **Kandiss Taylor** — Republican
○ **Raphael Warnock** — Democrat
○ **Richard Dien Winfield** — Democrat
○ Write-in

**For Public Service Commissioner**
(To Succeed Jason Shaw)
(Vote for One)

● **Jason Shaw** — (Incumbent) Republican
○ **Robert G. Bryant** — Democrat
○ **Elizabeth Melton** — Libertarian
○ Write-in

**For Public Service Commissioner**
(To Succeed Lauren Bubba McDonald, Jr.)
(Vote for One)

● **Lauren Bubba McDonald, Jr.** — (Incumbent) Republican
○ **Daniel Blackman** — Democrat
○ **Nathan Wilson** — Libertarian
○ Write-in

**For U.S. Representative in 117th Congress From the 6th Congressional District of Georgia**
(Vote for One)

● **Karen Handel** — Republican
○ **Lucy McBath** — (Incumbent) Democrat
○ Write-in

**For State Senator From 56th District**
(Vote for One)

● **John Albers** — (Incumbent) Republican
○ **Sarah Beeson** — Democrat
○ Write-in

**Turn Ballot Over To Continue Voting**

---

00791□00026□000075

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

FULTON COUNTY
779-RW01
OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT
OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA NOVEMBER 3, 2020

INSTRUCTIONS:
To Vote
1. Use black or blue ink to mark the ballot
2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote
3. If voting for a Write-In candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided
Warning
Do NOT use red ink or felt tip pen to mark ballot
Do NOT circle, underline or mark through choices
Do NOT use check marks or X to mark ballot
Do NOT mark more choices per race than allowed
Do NOT sign, cut, tear or damage the ballot

If you make a mistake or change your mind on a selection:
A. Do not attempt to mark through the selection or attempt to erase. Write "Spoiled" across the ballot and across the return envelope
B. Mail or return the spoiled ballot and envelope to your county board of registrars; a new official absentee ballot will be mailed to you

If you decide to vote in-person: Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]

For President of the United States
(Vote for One)
● Donald J. Trump - President / Michael R. Pence - Vice President — (Incumbent) Republican
○ Joseph R. Biden - President / Kamala D. Harris - Vice President — Democrat
○ Jo Jorgensen - President / Jeremy "Spike" Cohen - Vice President — Libertarian
○ Write-in

For United States Senate
(Vote for One)
● David A. Perdue — (Incumbent) Republican
○ Jon Ossoff — Democrat
○ Shane Hazel — Libertarian
○ Write-in

SPECIAL ELECTION
For United States Senate
(To Fill the Unexpired Term of Johnny Isakson, Resigned)
(Vote for One)
○ Al Bartell — Independent
○ Allen Buckley — Independent
○ Doug Collins — Republican
○ John Fortuin — Green
○ Derrick E. Grayson — Republican
○ Michael Todd Greene — Independent
○ Annette Davis Jackson — Republican
○ Deborah Jackson — Democrat
○ Jamesia James — Democrat
○ A. Wayne Johnson — Republican
○ Tamara Johnson-Shealey — Democrat
○ Matt Lieberman — Democrat
● Kelly Loeffler — (Incumbent) Republican
○ Joy Felicia Slade — Democrat
○ Brian Slowinski — Libertarian
○ Valencia Stovall — Independent
○ Ed Tarver — Democrat
○ Kandiss Taylor — Republican
○ Raphael Warnock — Democrat
○ Richard Dien Winfield — Democrat
○ Write-in

For Public Service Commissioner
(To Succeed Jason Shaw)
(Vote for One)
● Jason Shaw — (Incumbent) Republican
○ Robert G. Bryant — Democrat
○ Elizabeth Melton — Libertarian
○ Write-in

For Public Service Commissioner
(To Succeed Lauren Bubba McDonald, Jr.)
(Vote for One)
● Lauren Bubba McDonald, Jr. — (Incumbent) Republican
○ Daniel Blackman — Democrat
○ Nathan Wilson — Libertarian
○ Write-in

For U.S. Representative in 117th Congress From the 6th Congressional District of Georgia
(Vote for One)
● Karen Handel — Republican
○ Lucy McBath — (Incumbent) Democrat
○ Write-in

For State Senator From 56th District
(Vote for One)
● John Albers — (Incumbent) Republican
○ Sarah Beeson — Democrat
○ Write-in

Turn Ballot Over To Continue Voting

---

00791□00019□000026

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

FULTON COUNTY
779-RW01
OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT
OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT OF THE STATE OF GEORGIA NOVEMBER 3, 2020

INSTRUCTIONS:
To Vote
1. Use black or blue ink to mark the ballot
2. Completely fill in the empty oval to the left of the candidate name or choice in all races you wish to vote
3. If voting for a Write-In candidate, completely fill in the empty oval to the left of the Write-In selection, then write the name of the write-in candidate in the space provided
Warning
Do NOT use red ink or felt tip pen to mark ballot
Do NOT circle, underline or mark through choices
Do NOT use check marks or X to mark ballot
Do NOT mark more choices per race than allowed
Do NOT sign, cut, tear or damage the ballot

If you make a mistake or change your mind on a selection:
A. Do not attempt to mark through the selection or attempt to erase. Write "Spoiled" across the ballot and across the return envelope
B. Mail or return the spoiled ballot and envelope to your county board of registrars; a new official absentee ballot will be mailed to you

If you decide to vote in-person: Surrender the ballot to the poll manager of an early voting site within your county or the precinct to which you are assigned. You will then be permitted to vote a regular ballot

"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]

For President of the United States
(Vote for One)
● Donald J. Trump - President / Michael R. Pence - Vice President — (Incumbent) Republican
○ Joseph R. Biden - President / Kamala D. Harris - Vice President — Democrat
○ Jo Jorgensen - President / Jeremy "Spike" Cohen - Vice President — Libertarian
○ Write-in

For United States Senate
(Vote for One)
● David A. Perdue — (Incumbent) Republican
○ Jon Ossoff — Democrat
○ Shane Hazel — Libertarian
○ Write-in

SPECIAL ELECTION
For United States Senate
(To Fill the Unexpired Term of Johnny Isakson, Resigned)
(Vote for One)
○ Al Bartell — Independent
○ Allen Buckley — Independent
○ Doug Collins — Republican
○ John Fortuin — Green
○ Derrick E. Grayson — Republican
○ Michael Todd Greene — Independent
○ Annette Davis Jackson — Republican
○ Deborah Jackson — Democrat
○ Jamesia James — Democrat
○ A. Wayne Johnson — Republican
○ Tamara Johnson-Shealey — Democrat
○ Matt Lieberman — Democrat
● Kelly Loeffler — (Incumbent) Republican
○ Joy Felicia Slade — Democrat
○ Brian Slowinski — Libertarian
○ Valencia Stovall — Independent
○ Ed Tarver — Democrat
○ Kandiss Taylor — Republican
○ Raphael Warnock — Democrat
○ Richard Dien Winfield — Democrat
○ Write-in

For Public Service Commissioner
(To Succeed Jason Shaw)
(Vote for One)
● Jason Shaw — (Incumbent) Republican
○ Robert G. Bryant — Democrat
○ Elizabeth Melton — Libertarian
○ Write-in

For Public Service Commissioner
(To Succeed Lauren Bubba McDonald, Jr.)
(Vote for One)
● Lauren Bubba McDonald, Jr. — (Incumbent) Republican
○ Daniel Blackman — Democrat
○ Nathan Wilson — Libertarian
○ Write-in

For U.S. Representative in 117th Congress From the 6th Congressional District of Georgia
(Vote for One)
● Karen Handel — Republican
○ Lucy McBath — (Incumbent) Democrat
○ Write-in

For State Senator From 56th District
(Vote for One)
● John Albers — (Incumbent) Republican
○ Sarah Beeson — Democrat
○ Write-in

Turn Ballot Over To Continue Voting

Copyright © 2020 Dominion Voting Inc. All Rights Reserved

## Ballot 1 (0794000190006)

**For State Representative
In the General Assembly From
48th District**
(Vote for One)

- ● Betty Price
  Republican
- ○ Mary Robichaux
  (incumbent) Democrat
- ○
  Write-in

**For District Attorney of the
Atlanta Judicial Circuit**
(Vote for One)

- ○ Fani Willis
  Democrat
- ○
  Write-in

**For Clerk of Superior Court**
(Vote for One)

- ○ Cathelene "Tina" Robinson
  (incumbent) Democrat
- ○
  Write-in

**For Sheriff**
(Vote for One)

- ○ Patrick "Pat" Labat
  Democrat
- ○
  Write-in

**For Tax Commissioner**
(Vote for One)

- ○ Arthur E. Ferdinand
  (incumbent) Democrat
- ○
  Write-in

**For Surveyor**
(Vote for One)

- ○
  Write-in

**For Solicitor-General of
State Court of Fulton County**
(Vote for One)

- ○ Keith E. Gammage
  (incumbent) Democrat
- ○
  Write-in

**For Fulton County Commissioner
From District No. 2**
(Vote for One)

- ● Bob Ellis
  (incumbent) Republican
- ○ Justin Holsomback
  Democrat
- ○
  Write-in

**For Fulton County Soil and Water
Conservation District Supervisor**
(Vote for One)

- ○ Alan Toney
  (incumbent)
- ○
  Write-in

**PROPOSED
CONSTITUTIONAL
AMENDMENTS**

**- 1 -**

**Authorizes dedication of fees and
taxes to their intended purposes by
general state law.**

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so
as to authorize the General Assembly to dedicate
revenues derived from fees or taxes to the public
purpose for which such fees or taxes were
intended?"

- ● YES
- ○ NO

**- 2 -**

**Waives state and local sovereign
immunity for violation of state laws,
state and federal constitutions.**

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to
waive sovereign immunity and allow the people
of Georgia to petition the superior court for relief
from governmental acts done outside the scope
of lawful authority or which violate the laws of this
state, the Constitution of Georgia, or the
Constitution of the United States?"

- ● YES
- ○ NO

**STATEWIDE
REFERENDUM**

**- A -**

**Establishes a tax exemption for
certain real property owned by
charities.**

House Bill 344
Act No. 149

"Shall the Act be approved which provides an
exemption from ad valorem taxes for all real
property owned by a purely public charity, if such
charity is exempt from taxation under Section
501(c)(3) of the federal Internal Revenue Code
and such real property is held exclusively for the
purpose of building or repairing single-family
homes to be financed by such charity to
individuals using loans that shall not bear
interest?"

- ● YES
- ○ NO

## Ballot 2 (0710000260005)

**For State Representative
In the General Assembly From
48th District**
(Vote for One)

- ● Betty Price
  Republican
- ○ Mary Robichaux
  (incumbent) Democrat
- ○
  Write-in

**For District Attorney of the
Atlanta Judicial Circuit**
(Vote for One)

- ○ Fani Willis
  Democrat
- ○
  Write-in

**For Clerk of Superior Court**
(Vote for One)

- ○ Cathelene "Tina" Robinson
  (incumbent) Democrat
- ○
  Write-in

**For Sheriff**
(Vote for One)

- ○ Patrick "Pat" Labat
  Democrat
- ○
  Write-in

**For Tax Commissioner**
(Vote for One)

- ○ Arthur E. Ferdinand
  (incumbent) Democrat
- ○
  Write-in

**For Surveyor**
(Vote for One)

- ○
  Write-in

**For Solicitor-General of
State Court of Fulton County**
(Vote for One)

- ○ Keith E. Gammage
  (incumbent) Democrat
- ○
  Write-in

**For Fulton County Commissioner
From District No. 2**
(Vote for One)

- ● Bob Ellis
  (incumbent) Republican
- ○ Justin Holsomback
  Democrat
- ○
  Write-in

**For Fulton County Soil and Water
Conservation District Supervisor**
(Vote for One)

- ○ Alan Toney
  (incumbent)
- ○
  Write-in

**PROPOSED
CONSTITUTIONAL
AMENDMENTS**

**- 1 -**

**Authorizes dedication of fees and
taxes to their intended purposes by
general state law.**

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so
as to authorize the General Assembly to dedicate
revenues derived from fees or taxes to the public
purpose for which such fees or taxes were
intended?"

- ● YES
- ○ NO

**- 2 -**

**Waives state and local sovereign
immunity for violation of state laws,
state and federal constitutions.**

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to
waive sovereign immunity and allow the people
of Georgia to petition the superior court for relief
from governmental acts done outside the scope
of lawful authority or which violate the laws of this
state, the Constitution of Georgia, or the
Constitution of the United States?"

- ● YES
- ○ NO

**STATEWIDE
REFERENDUM**

**- A -**

**Establishes a tax exemption for
certain real property owned by
charities.**

House Bill 344
Act No. 149

"Shall the Act be approved which provides an
exemption from ad valorem taxes for all real
property owned by a purely public charity, if such
charity is exempt from taxation under Section
501(c)(3) of the federal Internal Revenue Code
and such real property is held exclusively for the
purpose of building or repairing single-family
homes to be financed by such charity to
individuals using loans that shall not bear
interest?"

- ● YES
- ○ NO

## Ballot 3 (0791000260006)

**For State Representative
In the General Assembly From
48th District**
(Vote for One)

- ● Betty Price
  Republican
- ○ Mary Robichaux
  (incumbent) Democrat
- ○
  Write-in

**For District Attorney of the
Atlanta Judicial Circuit**
(Vote for One)

- ○ Fani Willis
  Democrat
- ○
  Write-in

**For Clerk of Superior Court**
(Vote for One)

- ○ Cathelene "Tina" Robinson
  (incumbent) Democrat
- ○
  Write-in

**For Sheriff**
(Vote for One)

- ○ Patrick "Pat" Labat
  Democrat
- ○
  Write-in

**For Tax Commissioner**
(Vote for One)

- ○ Arthur E. Ferdinand
  (incumbent) Democrat
- ○
  Write-in

**For Surveyor**
(Vote for One)

- ○
  Write-in

**For Solicitor-General of
State Court of Fulton County**
(Vote for One)

- ○ Keith E. Gammage
  (incumbent) Democrat
- ○
  Write-in

**For Fulton County Commissioner
From District No. 2**
(Vote for One)

- ● Bob Ellis
  (incumbent) Republican
- ○ Justin Holsomback
  Democrat
- ○
  Write-in

**For Fulton County Soil and Water
Conservation District Supervisor**
(Vote for One)

- ○ Alan Toney
  (incumbent)
- ○
  Write-in

**PROPOSED
CONSTITUTIONAL
AMENDMENTS**

**- 1 -**

**Authorizes dedication of fees and
taxes to their intended purposes by
general state law.**

House Resolution 164
Act No. 597

"Shall the Constitution of Georgia be amended so
as to authorize the General Assembly to dedicate
revenues derived from fees or taxes to the public
purpose for which such fees or taxes were
intended?"

- ● YES
- ○ NO

**- 2 -**

**Waives state and local sovereign
immunity for violation of state laws,
state and federal constitutions.**

House Resolution 1023
Act No. 596

"Shall the Constitution of Georgia be amended to
waive sovereign immunity and allow the people
of Georgia to petition the superior court for relief
from governmental acts done outside the scope
of lawful authority or which violate the laws of this
state, the Constitution of Georgia, or the
Constitution of the United States?"

- ● YES
- ○ NO

**STATEWIDE
REFERENDUM**

**- A -**

**Establishes a tax exemption for
certain real property owned by
charities.**

House Bill 344
Act No. 149

"Shall the Act be approved which provides an
exemption from ad valorem taxes for all real
property owned by a purely public charity, if such
charity is exempt from taxation under Section
501(c)(3) of the federal Internal Revenue Code
and such real property is held exclusively for the
purpose of building or repairing single-family
homes to be financed by such charity to
individuals using loans that shall not bear
interest?"

- ● YES
- ○ NO

**Turn Ballot Over To Continue Voting**

Case 1:17-cv-02989-AT Document 1569-5 Filed 01/07/22 Page 9 of 292

00794_00019_000006.tif scanned at: 12:44:52 on 12/02/20.

Scanned on: ICC  Tabulator: 794   Batch: 19
Poll ID: 317  Ballot ID: 676

President of the United States
  Donald J. Trump (I) (Rep)
US Senate (Perdue)
  David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
  Kelly Loeffler (I) (Rep)
Public Service Commission District 1
  Jason Shaw (I) (Rep)
Public Service Commission District 4
  Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
  Karen Handel (Rep)
State Senate District 56
  John Albers (I) (Rep)
State House District 48
  Betty Price (Rep)
District Attorney - Atlanta
  BLANK CONTEST
Clerk of Superior Court
  BLANK CONTEST
Sheriff
  BLANK CONTEST
Tax Commissioner
  BLANK CONTEST
Surveyor
  BLANK CONTEST
Solicitor General
  BLANK CONTEST
County Commission District 2
  Bob Ellis (I) (Rep)
Soil and Water - Fulton County
  BLANK CONTEST
Constitutional Amendment #1
  YES
Constitutional Amendment #2
  YES
Statewide Referendum A
  YES

00791_00026_000075.tif scanned at: 09:34:53 on 12/01/20.

Scanned on: ICC  Tabulator: 791   Batch: 26
Poll ID: 317  Ballot ID: 676

President of the United States
  Donald J. Trump (I) (Rep)
US Senate (Perdue)
  David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
  Kelly Loeffler (I) (Rep)
Public Service Commission District 1
  Jason Shaw (I) (Rep)
Public Service Commission District 4
  Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
  Karen Handel (Rep)
State Senate District 56
  John Albers (I) (Rep)
State House District 48
  Betty Price (Rep)
District Attorney - Atlanta
  BLANK CONTEST
Clerk of Superior Court
  BLANK CONTEST
Sheriff
  BLANK CONTEST
Tax Commissioner
  BLANK CONTEST
Surveyor
  BLANK CONTEST
Solicitor General
  BLANK CONTEST
County Commission District 2
  Bob Ellis (I) (Rep)
Soil and Water - Fulton County
  BLANK CONTEST
Constitutional Amendment #1
  YES
Constitutional Amendment #2
  YES
Statewide Referendum A
  YES

00791_00019_000028.tif scanned at: 15:21:14 on 11/30/20.

Scanned on: ICC  Tabulator: 791   Batch: 19
Poll ID: 317  Ballot ID: 676

President of the United States
  Donald J. Trump (I) (Rep)
US Senate (Perdue)
  David A. Perdue (I) (Rep)
US Senate (Loeffler) - Special
  Kelly Loeffler (I) (Rep)
Public Service Commission District 1
  Jason Shaw (I) (Rep)
Public Service Commission District 4
  Lauren Bubba McDonald, Jr. (I) (Rep)
US House District 6
  Karen Handel (Rep)
State Senate District 56
  John Albers (I) (Rep)
State House District 48
  Betty Price (Rep)
District Attorney - Atlanta
  BLANK CONTEST
Clerk of Superior Court
  BLANK CONTEST
Sheriff
  BLANK CONTEST
Tax Commissioner
  BLANK CONTEST
Surveyor
  BLANK CONTEST
Solicitor General
  BLANK CONTEST
County Commission District 2
  Bob Ellis (I) (Rep)
Soil and Water - Fulton County
  BLANK CONTEST
Constitutional Amendment #1
  YES
Constitutional Amendment #2
  YES
Statewide Referendum A
  YES

# APPENDIX 9



Exhibit D-2 DeKalb Post-Election Audit Discrepancies

See attached Excel worksheet of potential discrepancies

DeKalb November RLA worksheet shows material potential discrepancies in the conduct of the audit, with inaccuracies in entries, missing entries, and unsupported entries. In short, no reconciliation took place as Secretary Raffensperger and Voting Works claimed. (Exhibit D-3) RLA discrepancies are not isolated to Fulton and DeKalb. The quality of the "audit" was unacceptably low, and the Secretary's claims about the audit findings are unsupportable.

Link to numbered batch sheets https://coaltionforgoodgovernance.sharefile.com/d-sfde4917e5bde48a5b620e34f0daf7f24

Exhibit D-3 -Article by VotingWorks auditor reporting SOS/County reconciliation process

Despite the claims in this report, counties have reported through Open Records Requests that no reconciliation or review of the Arlo worksheet entries took place.

**D-3 Report of VotingWorks Auditor Referencing "Reconciliation" Process**

https://www.whittierdailynews.com/2020/12/03/a-behind-the-scenes-look-at-georgias-vote-counting/

**A behind the scenes look at Georgia's vote-counting**

Conny Mccormack December 3, 2020 at 4:09 p.m.



Officials work on ballots at the Gwinnett County Voter Registration and Elections Headquarters, Friday, Nov. 6, 2020, in Lawrenceville, near Atlanta. (AP Photo/John Bazemore)

With less than 48 hours-notice, Georgia's 159 county election directors were assigned the Herculean task of conducting a 100 percent audit – involving hand counting ALL votes cast for president on five million ballots statewide – in a mere six days.

A statewide 100 percent manual audit had never been done before in U.S. history.

Georgia's Secretary of State has confirmed that the 100 percent manual tally verified that their voting system accurately counted the votes and he has certified the official election results.

I worked as a ==consultant on a team for Voting Works, the company hired by the Georgia Secretary of State to conduct the audit to manually recount the presidential votes on all five million ballots.== We were deployed to counties throughout the state offering technical support regarding the auditing procedures. I rotated among three large suburban counties surrounding Atlanta and three small rural counties.

Hundreds of tables of two-person audit boards performed virtually flawlessly.  They separated ballots into batches and then hand counted ballots cast in the presidential contest for Donald Trump, Joe Biden, a third party candidate, write-ins, and no votes.  The biggest challenge was the data entry of 41,881 batch reports statewide into a spreadsheet.  ==We poured over each county's reconciliation report to identify inadvertent double entry of some ballot batches, and to determine where data entry initially missed other batches==. All processes were observed by a swarm of Republican and Democrat monitors.

Witnessing the dedication and unceasing work of election directors and their staffs is always inspiring. Several of Georgia's county election directors had to deal with COVID-19 infections, decimating staffing during the critical election preparation period.

On the fourth day of the audit, I traveled to a small county in southeast Georgia because no audit/recount numbers had yet been reported there. The director, who has served for 35 years, together with one full-

time staff member and three temporary employees had worked around the clock to manage a record-shattering number of voters. Upon arrival, I learned they had nearly completed the hand counting, but the director had no time to learn how to enter the ballot batch data. While I assisted her, she revealed the horror that her sister had been randomly murdered in their town the night before the early voting period began. Through her shock and grief, she continued working, including processing an unprecedented deluge of absentee ballot applications.

With the Georgia Secretary of State's audit deadline of midnight Nov. 18 looming, several counties requested an extension until noon the next day. Having worked until 11 pm resolving and balancing data entry issues on ballot batches in a large suburban Atlanta county, I was then assigned to a mid-sized county an hour away.

Upon arrival, the director was frantically looking for about 500 ballots she had counted on election night but were temporarily unaccounted for. My husband Austin, who accompanied me, calculated that 500 ballots would weight about 8 lbs.  He suggested weighing the bags containing the ballot batches. After searching for a scale, weighing the ballot bags identified a heavy one. The director opened that bag and found 598 ballots that had been counted on election night but had not yet been audited. Relieved, the director immediately summoned an audit board with a Republican and Democrat representative to hand count that batch.

The results of the hand count dispels the theory that the vote tabulation software changed or flipped votes from one presidential candidate to another. The small deviation between the hand tally and the original machine tally was well within the expected margin of error of a hand tally of five million ballots. During the week-long recount, four small counties discovered mistakes in their original tallies that resulted in counting 5,800 previously untallied ballots and re-certification of those counties' results.

Elections are a human endeavor and consequently never perfect. The results of Georgia's unprecedented 100 percent audit should instill voter confidence that the vote counting process is honest and the outcome is reliable.

*Conny McCormack previously served as the Registrar-Recorder/County Clerk of Los Angeles County.*

**Exhibit E –Stolen Software and Implications**

E-1 Elbert County, CO AP Story *"Colorado secretary of state sues to compel Elbert County clerk to hand over copies of election hard drive"*

      (Risk of Exploitation of server images.)

E-2 Griswold v Schroeder (CO SOS lawsuit referenced in E-1)

    ¶ 32. "These failures also create an ongoing risk that the copies of the voting system hard drives, which are now outside the possession of Respondent, are being exploited by unknown actors ***to uncover system vulnerabilities*** that might be used to undermine voters' confidence in Colorado's secure elections."

E-3 *Colorado county elections official Tina Peters is indicted in probe of alleged tampering with voting equipment* (Washington Post) 3/9/22

E-4 Experts' letter to California Secretary of State Weber Concerning Theft of Colorado and Michigan Dominion EMS Software

E-5 Alleged theft of Dominion software in Coffee County, GA.

Rapidly developing information. Will update as more information becomes available.
(No press reports on this topic as of 3/11/22)

Recording of Scott Hall explaining the imaging of the Coffee County equipment:

https://www.dropbox.com/s/5iuhdxybkhg1pii/Scott%20Hall%20March%207%2C%202021.m4a?dl=0

Kevin Skoglund to prepare memo for Board on election risk of misuse of stolen Dominion system software. (to be supplied separately when available)

E-5-5 12/2020 Election Contest Lawsuit against Coffee County

Lawsuit contains significant details of operation of the equipment before and after the alleged unauthorized access. (Recount discrepancies are of unknown source. It is unknown whether unauthorized access impacted the quality of the tabulation of the recount.)

 https://www.dropbox.com/s/kj2q32xjjmslhhb/2020cv343711-Still%20complaint-1%20clean%20.pdf?dl=0
(pdf attached and linked)

E-6 Minutes of Senate Judiciary Committee 12/30/20

Relevant facts about Coffee County issues are included in the minutes.

E-7 Ligon Report on Senate Judiciary Committee 12/3/20

Exhibit E-1 –Stolen Software  Elbert County CO

https://coloradosun.com/2022/02/18/elbert-county-clerk-election-hard-drive/

**Colorado secretary of state sues to compel Elbert County clerk to hand over copies of election hard drive**

The copies got in the hands of two unauthorized attorneys after they were made

**By James Anderson,** *The Associated Press*

Colorado's Democratic secretary of state filed a lawsuit on Thursday to compel a Republican elections clerk who says he copied his voting system's hard drive to deliver those copies and other records related to the purported security breach. The copies got in the hands of two unauthorized attorneys after they were made.

Elbert County Clerk and Recorder Dallas Schroeder is the second Republican election clerk in Colorado associated with Donald Trump's election falsehoods to be investigated for possible breaches of state election systems.

Elbert County is near Denver. In western Colorado, Mesa County Clerk Tina Peters is under investigation in connection to a breach of the system there. Peters has announced she intends to run for secretary of state this year despite the investigation.

Secretary of State Jena Griswold's Elbert County District Court lawsuit contends that Schroeder didn't comply with orders to answer questions and produce records about the alleged copying and distribution of the county's voting system hard drives.

The lawsuit seeks to compel Schroeder to regain possession of any copies and deliver any devices used in the copying for inspection by her office.

It alleged that the attorneys still possess unauthorized copies of the hard drives.

In a statement, Griswold said that Schroeder "has created a risk that the copies of Elbert County's voting system hard drives may be exploited to undermine confidence in Colorado's secure elections."

Last fall, Schroeder joined a lawsuit to compel an audit of Colorado's elections system that was filed by supporters of former President Trump's lies about widespread election fraud. Schroeder didn't immediately return telephone messages Thursday and an email seeking comment.

According to Griswold's suit, Schroeder has told her office that two copies of the voting system hard drive were made. One was provided to Schroeder's attorney, David Case, and another to an attorney Schroeder didn't identify, the lawsuit said.

Case said he was reviewing the lawsuit and couldn't immediately comment.

**Exhibit  E-2**

Griswold v Schroeder Complaint (Colorado)

(Re: Risk of Unauthorized Released Dominion EMS Software)

Exhibit E-2
Page 1 of 8

| | |
|---|---|
| DISTRICT COURT, ELBERT COUNTY, COLORADO<br>51 Ute Avenue<br>Kiowa, CO 80117<br><br>_____<br><br>JENA M. GRISWOLD, SECRETARY OF STATE, STATE OF COLORADO,<br>     Petitioner,<br><br>v.<br><br>DALLAS SCHROEDER, in his official capacity as Clerk and Recorder, County of Elbert, Colorado,<br>  Respondent. | <br><br><br><br><br>▲ **COURT USE ONLY** ▲<br>_____<br><br>Case No. _____ |
| *Attorneys for Petitioner Jena M. Griswold, Secretary of State, State of Colorado:*<br>PHILIP J. WEISER, Attorney General<br>HEATHER K. KELLY, #36052*<br>First Assistant Attorney General<br>JENNIFER H. HUNT, #29964*<br>Senior Assistant Attorney General<br>Colorado Department of Law<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, Colorado 80203<br>*Counsel of Record<br>Telephone: (720) 508-6000<br>Email: heather.kelly@coag.gov;<br>Jennifer.hunt@coag.gov | |
| **PETITION FOR ENFORCEMENT OF ELECTION ORDERS PURSUANT TO §§ 1-1-107(2)(d) and 1-1.5-104(10)(d), C.R.S.** | |

Jena M. Griswold, Colorado Secretary of State, hereby seeks an order pursuant to §§ 1-1-107(2)(d) and 1-1.5-104(10)(d), C.R.S., requiring Respondent, Dallas Schroeder in his official capacity as Elbert County Clerk and Recorder, to comply with Secretary of State Election Orders 2022-02 and 2022-04.

## PARTIES

1.    Petitioner Jena M. Griswold is the duly elected Colorado Secretary of State. The Secretary of State is an elected constitutional officer and is Colorado's chief state election official. Colo. Const. art. IV, § 1, §§ 1-1-107(1)(e), 1-1.5-101(h), C.R.S.

2.     Respondent Dallas Schroeder is the duly elected Clerk and Recorder for Elbert County, Colorado. His office is located at 440 Comanche Street, Kiowa, Colorado 80117, within Elbert County, Colorado.

3.     The Secretary and Respondent are "election officials" charged with duties and functions under the Election Code. *See, e.g.*, §§ 1-1-104(10), 1-1-107, 1-1-110, 1-5-616, -617, -621, and -623, and 1-7.5-104, C.R.S. In this context, the Secretary is charged with supervision of Respondent and Respondent is charged with compliance to the Secretary's orders. *See* §§ 1-1-107(1)(a), 1-1-110(1), C.R.S.

## VENUE AND JURISDICTION

4.     This Court has jurisdiction over the subject matter of this action pursuant to § 1-1-107(2)(d), C.R.S.

5.     Venue is proper in this Court under C.R.C.P. 98(b)(2) and § 1-1-107(2)(d). C.R.S.

## LEGAL BACKGROUND

6.     The Uniform Election Code of 1992, §§ 1-1-101, *et seq.*, C.R.S. (2021) ("Election Code" or "Code"), authorizes the Secretary of State to certify electronic and electromechanical voting systems, which are used to cast, record, and tabulate votes cast in Colorado elections, if they are compliant with standards and conditions of use imposed by state and federal law and, once certified, requires that such systems be maintained securely by County Clerks and Recorders who serve as their custodians.

7.     The County Clerk and Recorder serves as the chief designated election official for a county. § 1-1-110(3), C.R.S. In carrying out their duties and functions under the Election Code, County Clerks and Recorders must follow the rules, conditions of use, and orders promulgated by the Secretary of State pursuant to the Code. §§ 1-1-110(1), 1-7.5-104, C.R.S.

8.     A "voting system" is "a process of casting, recording, and tabulating votes using electromechanical or electronic devices or ballot cards and includes, but is not limited to, the procedures for casting and processing votes and the operating manuals, hardware, firmware, printouts, and software necessary to operate the voting system." § 1-1-104(50.8), C.R.S.

9.     The County Clerk and Recorder is the custodian of the voting system in a political subdivision and may appoint deputies necessary to prepare and supervise the voting system before and during elections. § 1-5-605.5, C.R.S.

10.     Due to the integral role voting systems serve in conducting elections, access to "voting equipment"—which "means electronic or electromechanical voting systems, electronic voting devices, and electronic vote-tabulating equipment, as well

as materials, parts, or other equipment necessary for the operation and maintenance of such systems, devices, or equipment," § 1-1-104(50.7), C.R.S. — is strictly limited by the Secretary of State's Elections Rules. *See* 8 CCR 1505-1, Election Rules 20.2 (prohibiting the installation of unapproved software); 20.3 (requiring chain-of-custody evidence be maintained); 20.5 (restricting access to secure areas to certain employees who have passed background checks); 20.6 (limiting users who have electronic access to voting equipment); 20.10 (setting minimum standards for equipment maintenance procedures; and 20.19 (setting conditions for use of voting systems).

11.     As an important security measure, Colorado's voting systems are prohibited from being connected to the internet. Election Rule 20.19.1. As a result, updates to the software on voting equipment must be done manually and in person. These updates, called a "trusted build," are essential to maintaining the security of voting systems.

12.     A software build is a process where source code is converted to machine readable instructions for the voting system. A trusted build is a software build performed with security measures intended to ensure that the software installed on the machine is exactly the software created by the voting system provider and approved by the Department of State.

13.     The Department of State conducts the trusted build installation process and limits participation to designated staff of the Colorado Department of State, authorized employees of the County Clerk and Recorder's Office, and the voting system provider. All such personnel must have cleared criminal background checks prior to being present, and each must be identified to the Department of State prior to the trusted build. These select individuals are present to ensure the trusted build securely and faithfully creates the necessary code in the voting system equipment, and must pass background checks to be present.

14.     As the state's chief election official, the Secretary of State has the authority "to inspect . . . and review the practices and procedures of county clerk and recorders, their employees, and other election officials," compel testimony and production of documents, and to inspect voting system components. §§ 1-1-107(2)(B), 1-1.5-104(2)(a)(I), 1-5-621(4), C.R.S.

15.     The Secretary may inspect voting systems to determine whether they comply with applicable standards and issue orders specifying actions to remedy defects, prohibit or limit the use of a non-compliant voting system, or decertify a system. § 1-5-621(4), C.R.S.

16.     The Secretary may enforce the provisions of the Code and its administrative orders by injunctive action in state district court. §§ 1-1-107(2)(d), 1-1.5-104(1)(d), C.R.S.

## FACTUAL ALLEGATIONS

17.     In April 2021, the Department of State notified all county clerks and recorders in Colorado that county voting systems would be scheduled for a trusted build to prepare the systems for the next election cycle. Elbert County's trusted build initially was scheduled for May 2021.

18.     Respondent cancelled the originally scheduled trusted build and repeatedly refused to accommodate requested COVID safety precautions. As a result of these delays, the Elbert County trusted build was completed on August 27, 2021. The Department of State did not find any anomalies in the Elbert County voting system at the time of the 2021 trusted build.

19.     On January 12, 2022, the Department of State learned of an affidavit signed by Petitioner on January 7, 2022, stating that he made a "forensic image of everything on the election server" prior to the Department's 2021 trusted build of voting system equipment in Elbert County and "saved the image to a secure external hard drive that is kept under lock and key in the Elbert County elections office."

20.     After learning of this affidavit, the Department initiated an investigation to determine whether Respondent violated Election Rules 20.2, 20.6.1(d), 20.6.1(f), 10.10.1, 10.19.1, 20.19.2, or any other rule or law during the unauthorized imaging. On January 13, 2022, the Department sent Respondent an email requesting information regarding the unauthorized imaging of the voting system. Respondent did not respond to the Department's email.

21.     On January 19, 2022, the Secretary issued Election Order 2022-02 under the authority granted in §§ 1-1-107, 1-1-110(1), 1-1.5-104(2)(a), and 1-5-621(4), C.R.S. The order, attached as Exhibit 1, directed Respondent to, among other things:

      a.  Explain when and how the "image of everything on the election server" was created.

      b.  Identify who was present when the image was created.

      c.  Identify who provided assistance or instruction regarding the creation, maintenance, storage or distribution of the image.

      d.  Identify how many copies were made and who had access to them.

      e.  Describe the chain of custody for the image and any copies.

      f.  Describe the specific security measures put in place to keep Elbert County's election server secure from future inappropriate access.

     g.   Identify and provide any video recordings of the physical process of making the image.

     h.   List any person who has had access to voting equipment who does not appear in the voter system logs or who is not authorized to have such access.

The order required a response within 48 hours.

22.     Respondent, through legal counsel, provided a written response on January 24, 2022, attached as Exhibit 2. The response did not fully answer the questions posed in Election Order 2022-02, and presented potential evidence of additional violations of election security.

23.     The response indicated that two copies of the voting system hard drives had been made and that those copies were provided to Respondent's counsel, John Case, and an unidentified "private attorney." The Department was unable to determine whether either of these individuals are authorized to access any components of the voting system, raising the concern that their possession of images of the hard drives violates Election Rule 20.5.4. The response explained that Respondent created the first copy of the voting system hard drives by physically opening the cases of the voting system components, manually detaching the hard drives from the machines, and making the copies of the hard drives while they were disassembled from the machines in which they had been installed. The response also indicated that the voting system components from which these hard drives were extracted were not sealed with tamper-evident seals until September 2, 2021, five days after the trusted build on August 27, 2021.

24.     The response also indicated that a Logic Cube Forensic Falcon Neo device was used to create the images of the voting system equipment's hard drives, potentially violating Election Rule 20.6.2 (prohibiting the use of certain removable storage media) and Election Rule 20.5.4 (restricting access to copies of the hard drives of voting system components).

25.     In addition, it appears likely, based on the description of the method by with the images were made, that the copies of voting system hard drives also contain scans of voted ballots. The uncontrolled dissemination of unredacted copies of voted ballots would violate § 24-72-205.5(b), C.R.S., and could constitute a violation of certain voters' constitutional and statutory rights to ballot anonymity.

26.     On January 27, 2022, the Secretary issued Election Order 2022-04, attached as Exhibit 3, requiring Respondent to comply with the following:

     a.   Provide any information and documents establishing that John Case and the "private attorney" are authorized to access voting systems components.

5

b. In the absence of such authorization, retake possession of all copies of the voting system hard drives.

c. Place all copies of the voting system hard drives in a secure location with tamper evident seals and a chain of custody log.

d. Provide proof to the Department that the actions have been completed within 48 hours of the order.

e. Confirm, in writing, that the individuals who had access to the images of the hard drives have not accessed the images and have not disseminated the images to anyone else.

f. Provide the Logic Cube Forensic Falcon Neo device to the Department for examination.

g. Provide the brand and serial number of the external hard drive devices connected to the Logic Cube Forensic Falcon Neo device and provide them to the Department for Examination.

h. Provide information about the hard drives and any reformatting done.

27.   Election Order 2022-04 also directed Respondent to, among other things:

a. Provide identifying information for the devices used to make copies of hard drive images.

b. Provide copies of access logs.

c. Identify the "private attorney" referenced in the response.

d. Describe the chain of custody for the external hard drive containing the images.

e. Provide the video recording referenced in the prior response.

f. Turn over all external storage drives or any other device that contains images of any voting system component over the last year.

g. Provide any and all communications with Shawn Smith, Mark Cook, and any other persons involved in the planning and imaging of voting system components and the storage, maintenance, examination, or copies of those images.

Again, Election Order 2022-04 required a response and compliance within 48 hours.

28.     On February 3, 2022, Respondent, through legal counsel, provided a written response to Election Order 2022-04. This response, attached as Exhibit 4, purported to assert multiple objections and provided very limited, incomplete answers to the questions posed in the order.

29.     On February 7, 2022, the Secretary sent a letter to Respondent notifying him that his responses to the orders were incomplete, attached as Exhibit 5. The notice specifically identified responses to the following requests and requirements as insufficient:

      a.  Election Order 2022-02, questions 1(e), (f)

      b.  Election Order 2022-04, items 1(2), 2(1), 2(2), 3(6), 3(9), 3(11)

The notice advised Respondent that failure to provide full and complete responses and compliance on these items would result in the initiation of an enforcement proceeding.

30.     On February 10, 2022, Respondent, through legal counsel, informed the Secretary that he would not provide any further responses or compliance with the items listed in the February 7 notice. Exhibit 6.

31.     Respondent is required to comply with all rules and orders of the Secretary related to the security of voting systems.

32.     Respondent's refusal to provide any information about the identity of the "private attorney" who has possession of voting system components, retrieve the unauthorized copies of voting system components from this unidentified and unauthorized individual, retrieve and produce the Logic Cube Forensic Falcon Neo device, or to produce any communications related to the imaging of the voting system components with unauthorized individuals (including Shawn Smith and Mark Cook) directly interferes with the Secretary's ability to ensure that Elbert County voting systems comply with standards and conditions of use imposed by state and federal law. These failures also create an ongoing risk that the copies of the voting system hard drives, which are now outside the possession of Respondent, are being exploited by unknown actors to uncover system vulnerabilities that might be used to undermine voters' confidence in Colorado's secure elections.

## RELIEF REQUESTED

The Secretary of State respectfully requests that this Court:

1.  Order Respondent, pursuant to §§ 1-1-107(2)(d) and 1-1.5-104(1)(d), C.R.S to provide supplemental responses to Election Orders 2022-02 and 2022-04 within seven (7) days, including complete information and responsive documents to Election Order 2022-02, questions 1(e), (f), and Election Order 2022-04, items 1(2), 2(1), 2(2), 3(6), 3(9), 3(11).

2. Order Respondent, pursuant to §§ 1-1-107(2)(d) and 1-1.5-104(1)(d), C.R.S., to retrieve any voting system components in the possession of third parties, including but not limited to the storage drives containing the images made before the August 2021 trusted build in the possession of the unidentified private attorney, and ensure that any such copies are stored in strict compliance with current requirements of the Election Rules

Respectfully submitted this 17th day of February, 2022.

PHILIP J. WEISER
Attorney General

*s/ Jennifer H. Hunt*
HEATHER K. KELLY, #36052*
First Assistant Attorney General
JENNIFER H. HUNT, #29964
Senior Assistant Attorney General

*Attorneys for Petitioner Jena M. Griswold,*
*Secretary of State, State of Colorado*

Petitioner's Address:
1700 Broadway #550
Denver, CO 80290

Exhibit E-3

https://www.washingtonpost.com/investigations/2022/03/09/tina-peters-colorado-elections-clerk-charged/

**Colorado county elections official Tina Peters is indicted in probe of alleged tampering with voting equipment**

Emma Brown March 9, 2022

Mesa County Clerk Tina Peters speaks at a Dec. 1 rally in Grand Junction, Colo. (McKenzie Lange/Grand Junction Daily Sentinel/AP)

A county official in Colorado whose embrace of election-fraud conspiracy theories has made her a hero to election deniers nationwide has been indicted on state criminal charges stemming from her alleged efforts to secretly copy hard drives from Dominion Voting Systems equipment, officials said Wednesday.

Mesa County Clerk Tina Peters (R), who is now seeking the GOP nomination for Colorado secretary of state, is the first elections official to face criminal charges related to conspiracy theories surrounding the 2020 election, experts said. She is accused not of fixing the election but of breaking the law as she sought to investigate whether someone else did.

Peters's alleged actions, along with efforts by other election deniers to seek public office, are contributing to concern among experts about possible escalating risk to the nation's voting systems. State or federal investigators have probed multiple alleged security breaches of election systems and equipment since Donald Trump lost the 2020 presidential race, including some thought to be aided by elections-office insiders or right-wing conspiracy theorists.

In an 18-page indictment, a county grand jury accused Peters of sneaking someone who was not a county employee into secure areas of her office in May, before and during a manual update of Dominion voting machines known as a "trusted build." She is accused of devising a scheme to allow that person to use a security badge assigned to another person.

Peters has been under investigation since August, when the data copied from Mesa County's machines surfaced at a symposium held by the election denier and conspiracy theorist Mike Lindell.

*An elections supervisor embraced conspiracy theories. Officials say she has become an insider threat.*

Peters, 66, was charged Tuesday evening with 10 counts, seven of them felonies. They include conspiracy to commit criminal impersonation and attempting to influence a public servant, stemming in part from Peters's alleged efforts to deceive state elections officials.

Her deputy, Belinda Knisley, was also indicted and was being held after her arrest Wednesday. Knisley's lawyer, R. Scott Reisch, told The Washington Post, "We look forward to all the evidence being considered by a jury."

Peters was in custody Wednesday afternoon, with bond set at $500,000.

In a statement, Peters claimed that the charges were a politically motivated attack meant to weaken her candidacy to become the state's top elections official. The statement accused the district attorney, Daniel Rubinstein (R), of being a "never Trumper" and of allying himself with Democrats in "using legal muscle to indict political opponents during an election."

She rejected a call from the leadership of the state GOP for "*any* Republican candidate who is indicted with felonies by a grand jury" to suspend their campaign.

Peters has previously said that she brought in a "consultant" to help her copy hard drives — a move she said was necessary to ensure that the trusted build did not erase files needed to fully investigate the 2020 election.

Photographs of confidential Dominion passwords that were taken during the trusted build were published online by Ron Watkins, a prominent purveyor of baseless claims. Watkins, who is running for an Arizona congressional seat, is perhaps best known for serving as the administrator of the 8kun anonymous message board that hosted posts by "Q" regarding the QAnon conspiracy theory. Watkins is not mentioned in the indictment and did not respond to a request for comment.

Doug Frank, a prominent conspiracy theorist, previously told The Post that he spoke to Peters in April about the upcoming trusted build, which he believed could delete data that was needed to prove the election had been rigged. He said he told her that she had a responsibility under federal law to preserve election records, including data from the

machines. Frank said he had recommended someone he trusted to help her back up records.

"Nothing nefarious in any of this. Merely prudence," Frank wrote in a text message to The Post on Wednesday.

The office of Secretary of State Jena Griswold (D) had instructed county employees to back up their election records before the trusted build and provided instructions to do so. But such a backup "does not include anyone imaging the hard drive" of the election management software, according to the indictment.

In an interview Wednesday, Lindell said he didn't know of Peters or the copied hard drives before the symposium. "Did I take her under my wing after the symposium? Darn right I did," he said. The MyPillow chief executive, who has at times paid for Peters's security and lawyers, pledged to help Peters and Knisley get out on bail. He called the charges a "scare tactic" aimed at silencing Peters.

On his nightly online show Wednesday, Lindell provided the name and chambers phone number of the judge who he said had set Peters's bond. He urged listeners to call the judge to share their opinion about Peters having to spend the night in jail.

The indictment does not name Frank or Lindell.

Griswold's office had told county clerks across Colorado that only certain people — county staffers, state officials and Dominion representatives who had undergone background checks — could attend the trusted build in May.

According to the indictment, Peters reached out to a county resident named Gerald Wood and told him she might need his help doing some contract IT work on Dominion machines. Wood then gave Knisley his Social Security number for a background check. He was given a security access badge on May 19, but was asked to return it before he left the office.

The security badge assigned to Wood was used to swipe into the elections department on May 23, two days before the trusted build — the same day a copy of the hard drives was made — and on May 25, the day the trusted build began. At the time, Peters told state officials that a man she introduced as Gerald Wood was an employee transitioning from the motor vehicle division in her office to elections, according to the indictment.

But Wood was never employed by Mesa County, according to county officials. And according to the indictment, Wood — who was subpoenaed to testify before the grand jury — was not present at the elections office on either May 23 or May 25. Peters faces a felony identity theft charge in connection with the use of Wood's personal information.

The indictment does not say who allegedly posed as Wood and swiped his badge.

In a statement, Rubinstein and state Attorney General Phil Weiser (D) said their investigation continues and more people could be charged.

The criminal charges come after a state judge barred Peters from overseeing the county's November 2021 election, finding that she breached and neglected her duties and was "untruthful" when she brought in an outsider to make copies of the Dominion hard drives.

Griswold is now asking a judge to bar Peters from overseeing the 2022 election in Mesa County.

In a statement Wednesday about the Peters indictment, Griswold said: "Officials tasked with carrying out elections do so in public trust and must be held accountable when they abuse their power or position."

Peters also faces allegations that she used an iPad to videotape state court proceedings in early February and then lied to a judge when he asked her whether she had been recording.

When police served her with a search warrant for the iPad at a bagel shop in downtown Grand Junction on Feb. 8, video of her kicking and resisting went viral on social media.

On Feb. 14, Peters announced on a podcast hosted by Stephen K. Bannon — the influential conservative figure who served as a political strategist for Trump — that she would run for secretary of state.

The FBI confirmed last year that it was assisting in the investigation of the alleged security breach. A federal grand jury was convened, according to a subpoena for documents issued to Mesa County in September and obtained via a public records request. The status of that federal probe was unclear Wednesday, and a spokesman for the U.S. attorney's office in Colorado declined to comment.

Another Colorado clerk — Dallas Schroeder of Elbert County — has also admitted to making two copies of his county's voting system hard drive. Schroeder said he gave one copy to his own attorney and another to an unidentified "private attorney."

Griswold filed a lawsuit in February to force Schroeder to name the private attorney, retrieve the copies of the hard drives and provide copies of communications with non-county employees who assisted Schroeder in making the copies. She argued that Schroeder's behavior had created "an ongoing risk that the copies of the voting system ... are being exploited by unknown actors to uncover system vulnerabilities that might be used to undermine voters' confidence in Colorado's secure elections."

In court documents, Schroeder's lawyer has said that he believes his actions were "authorized by law and appropriate under the circumstances to preserve election records of the November 2020 election."

Elsewhere, the FBI has investigated allegations of an attempted breach of the election network in Lake County, Ohio, after a private laptop was plugged into the network in the office of a county commissioner. No sensitive data was obtained, only routine network traffic; that traffic was later circulated at the same Lindell conference as the data from Mesa County.

In Michigan, Secretary of State Jocelyn Benson (D) last month requested that state law enforcement officials investigate reports that an unnamed party had been allowed to access voting equipment in northern Roscommon County. In rural Cross Village Township in Emmet County, near Michigan's northern tip, a woman who allegedly tried to marshal several people to copy voting machine data in January 2021 was charged with two felonies — including unauthorized access to a computer. She recently pleaded no contest to a single misdemeanor count of creating a disturbance.

Exhibit E-4

**Experts call for rigorous audit to protect California recall**

By CHRISTINA A. CASSIDY and KATE BRUMBACK

September 2, 2021

A group of election security experts on Thursday called for a rigorous audit of the upcoming recall election for California's governor after copies of systems used to run elections across the country were released publicly.

Their letter sent to the secretary of state's office urges the state to conduct a type of post-election audit that can help detect malicious attempts to interfere.

The statewide recall targeting Democratic Gov. Gavin Newsom, set for Sept. 14, is the first election since copies of Dominion Voting Systems' election management system were distributed last month at an event organized by MyPillow CEO Mike Lindell, an ally of former President Donald Trump who has made unsubstantiated claims about last year's election. Election offices across 30 states use the Dominion system, including 40 counties in California.

Election security experts have said the breaches, from a county in Colorado and another in Michigan, pose a heightened risk to elections because the system is used for a number of administrative functions — from designing ballots and configuring voting machines to tallying results. In the letter, the experts said they do not have evidence that anyone plans to attempt a hack of the systems used in California and are not casting blame on Dominion.

"However, it is critical to recognize that the release of the Dominion software into the wild has increased the risk to the security of California elections to the point that emergency action is warranted," the experts wrote in their letter, which was shared with The Associated Press.

The eight experts signing the letter include computer scientists, election technology experts and cybersecurity researchers.

Jenna Dresner, a spokeswoman for Secretary of State Shirley Weber, said the 40 counties in California using Dominion employ a different version of the election management system that meets various state-specific requirements. She outlined numerous security measures in place to protect voting systems across the state. That includes regular testing for vulnerabilities, strict controls on who has access, physical security rules and pre-election testing to ensure that no part of the system has been modified.

"California has the strictest and most comprehensive voting system testing, use, and requirements in the country, and it was designed to withstand potential threats," Dresner said in a statement to the AP.

The security experts want California counties using Dominion's election management system to do what's known as a "risk-limiting audit," which essentially uses a statistical approach to ensure that the reported results match the actual votes cast. California also uses paper ballots, which makes it easier to verify results.

The letter said differences between the leaked Dominion software images and the versions used in California are relatively minor. The experts said thousands of people now have blueprints to the underpinnings of Dominion's election management system, including some who may have access to voting equipment.

"That increases the risk of undetected outcome-changing cyber-attacks on California counties that use Dominion equipment and the risk of accusations of fraud and election manipulation which, without rigorous post-election auditing, would be impossible to disprove," the letter states.

A majority of voters are expected to cast mail ballots during the recall, returning them through the U.S. Postal Service or by drop boxes in their counties.

California law already requires counties to hand-count ballots from a random sample of 1% of the precincts after an election. Although the state has conducted a pilot program with risk-limiting audits, Dresner said state law does not currently allow one for the recall election. It's not clear whether that could be changed with less than two weeks to go before the election.

Among those signing the letter was Harri Hursti, a voting technology expert who was at the Lindell event in South Dakota. Hursti said he received three copies of the Dominion election management system — one an image of the system used in Antrim County, Michigan, and the other two from Mesa County, Colorado. In a sworn declaration filed in federal court in Georgia, Hursti said the copies were later made available for online download.

He said the release gives hackers a "practice environment" to seek vulnerabilities in the system and a road map to avoid defenses. All hackers would need is physical access to the systems because they aren't supposed to be connected to the internet.

Philip B. Stark, a professor of statistics at the University of California, Berkeley, who also signed the letter, likened it to the difference between a bank robber having a blueprint of a vault and having an exact replica of the vault to practice attacks.

"That's what this is," he said. "They basically have an exact copy of the thing they're trying to break into."

Experts say attacks could create technical problems that can cause machines to malfunction, manipulate ballot design or even target results.

A Dominion representative said the company was aware of reports about the unauthorized release of the system images and had reported it to authorities. The company said federal cybersecurity officials don't view the breach as significantly increasing the risk to elections.

But Stark said the sheer number of people who now have access to the information makes this breach especially serious. While it's possible the information already was in the hands of the Russians or other adversaries, there had been considerable expense and legwork involved in getting it, he said. Now that's not the case.

"What this has done on some level is democratized access to the information that would be needed to make a cyberattack on Dominion systems," Stark said.

==Compounding the threat is a finding by voting technology specialist J. Alex Halderman that even a voter has enough physical access to implant malware, Stark said.==

"So if you have someone who can do the technical work of devising a cyberattack, then it could actually be deployed by a voter, by an insider, by a vendor, by whoever," he said. "==It's just really multiplied the number of people who are in a position to do harm to our elections by a very large factor==."

Halderman, director of the University of Michigan's Center for Computer Security and Society, made those observations after examining Dominion voting equipment used in Georgia as an expert witness in a long-running lawsuit challenging the use of those machines.

The release of the system images follows an effort by Republicans to examine voting equipment that began soon after the November election as Trump challenged the results and blamed his loss on widespread fraud, even though there has been no evidence of it.

___

Cassidy and Brumback reported from Atlanta.

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| SHAWN STILL, in his capacity as a Voter and capacity as an Official Presidential Elector, JANE DOE 1, | ] ] ] |
| Petitioner, | ] |
| | ] |
| vs. | ] |
| | ] |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION, ERNESTINE THOMAS-CLARK, in her official capacity as Chairman of the Coffee County Board of Elections and Registration, WENDELL STONE, in his official capacity as vice-chairman of the Coffee County Board of Elections and Registration, ERIC CHANEY, in his official capacity as a member of the Coffee County Board of Elections and Registration, MATTHEW MCCULLOGH, in his official Capacity as a member of the Coffee County Board of Elections and Registration, C.T. PEAVY, in his official capacity as a member of the Coffee County Board of Elections and Registration, MISTY MARTIN, in her official Capacity as Coffee County Election Supervisor, JIL RIDLEHOOVER, in her official capacity as Coffee County Elections Assistant, CORPORATE ENTITY 1,  JOHN DOE 1 | ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] |
| Respondents. | ] |

**CIVIL ACTION FILE**

**NO.** _____

## VERIFIED PETITION FOR EMERGENCY INJUNCTIVE

## AND DECLARATORY RELIEF

**COMES NOW**, Petitioner SHAWN STILL, in his capacity as a voter and Presidential

Elector (*hereinafter,* "Petitioner") and Jane Doe 1 ("Jane Doe") (collectively "Petitioners"), by and

through his undersigned counsel, and respectfully files this Verified Petition (*hereinafter,*

"Petition") against Respondent BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia (*hereinafter*, "Respondent Raffensperger"), Respondent COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION (*hereinafter*, "Respondent CCBOE"), CORPORATE ENTITY 1, and JOHN DOE 1 (collectively "Respondents"), alleging and showing this Honorable Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.

Petitioner Shawn Still is a resident of Georgia and an Official Presidential Elector.

2.

Petitioner Jane Doe 1 is a natural person believed to have a claim against the Respondents.

3.

Petitioners are "contestants" as defined by O.C.G.A. § 21-2-520(1) who is entitled to bring an election contest under O.C.G.A. § 21-2-521 (the "Election Contest").

4.

Respondent BRAD RAFFENSPERGER, is named in his official capacity as Secretary of State of Georgia. Respondent Raffensperger serves as the Chairperson of Georgia's State Election Board, which promulgates and enforces rules and regulations to (1) obtain uniformity in the practices and proceedings of election officials as well as legality and purity in all primaries and general elections, and (ii) be conducive to the fair, legal and orderly conduct of primaries and general election. O.C.G.A. §§ 21-2-30(d), 21-2-231, 21-2-33.1. Respondent Raffensperger, as Georgia's chief elections officer, is also responsible for the administration of the Election Code. *Id.* Respondent Raffensperger is a state official subject to suit in his official capacity because his

office "imbues him with the responsibility to enforce the [election laws]." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  This Respondent may be served with summons and process upon General Counsel for the Georgia Secretary of State at 214 State Capitol, Atlanta, Georgia 30334 and with copies to the Corporations Division of the Secretary of State's Office at 2 Martin Luther King, Jr., Dr., Suite 313 West Tower, Atlanta, GA 30334-1530.  This Respondent is subject to the jurisdiction of this Court as a "Violator" as defined under the Elections Code.

5.

Respondent COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION is charged to "promulgate[s] rules and regulations to define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as a vote for each category of voting system" in Georgia.   O.C.G.A. § 21-2-31(7).  This Respondent is also responsible for "formulat[ing], adopting, and promulgat[ing] such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections." *Id.*  This Respondent may be served with summons and process through their Board of Commissioners Chairman Jimmy Kitchens and/or the County Attorney, Anthony A. Rowell, 206 South Coffee Avenue, Douglas, GA 31533. This Respondent is subject to the jurisdiction and venue of this Court.

6.

Respondents Ernestine Thomas-Clark, Wendell Stone, Eric Chaney, Matthew Mccullogh, C.T. Peavy, Misty Martin, Jil Ridlehoover are election officials appointed in Coffee County, Georgia. They may be served with summons and process in their official capacities as required by law.

7.

Respondent Corporate Entity 1 is a corporation believed to have liability in this matter.  As the party is identified the party will be served.

8.

Respondent John Doe 1 is an individual believed to have liability in this matter.  As the party is identified, the party will be served.

9.

This Court has jurisdiction over the subject matter of this action as it is an Election Contest and venue is proper as the actions and conduct that give rise to this Petition occurred in and the equitable relief sought in Coffee County. O.C.G.A. § 9-10-30 et seq. (All actions seeking equitable relief shall be filed in the county of the residence of one of the Respondents against who substantial relief is prayed.)

## **FACTS**

10.

Coffee County, Georgia participated in the 2020 General Election, including holding a general election for President of the United States, for which President Donald J. Trump, former Vice President Joseph R. Biden, and Jo Jorgensen were the only candidates on the ballot for President in the election.

11.

The general election conducted in Coffee County, Georgia, was subject to and was required to adhere to, the election procedures set forth in the Georgia Election Code. O.C.G.A. § 21-2-1 et seq.

12.

Respondent Raffensperger serves as the Chairperson of Georgia's State Election Board, which promulgates and enforces rules and regulations to (1) obtain uniformity in the practices and proceedings of election officials as well as legality and purity in all primaries and general elections, and (ii) be conducive to the fair, legal and orderly conduct of primaries and general election. O.C.G.A. 21-2-30(d), 21-2-231, 21-2-33.1.   Respondent Raffensperger, as Georgia's chief elections officer, is also responsible for the administration of the Election Code. *Id.*

13.

SEB not CCBOE

not correct CGG

The CCBOE is charged to "promulgate[s] rules and regulations to define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as a vote for each category of voting system" in Georgia.   O.C.G.A. § 21-2-31(7).   CCBOE is also responsible for "formulat[ing], adopting, and promulgat[ing] such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections." *Id.*

14.

Coffee County, Georgia and the Respondent CCBOE were "given" deadlines, that do not exist in the Election Code, but that were "demanded" from Respondent Raffensperger concerning

certification of electronic recounts of the November 3, 2020 general election for President of the United States.   Correct  CGG

15.

Coffee County, Georgia, by and through Respondent CCBOE, were unable to certify the electronic recount election result numbers from the November 3, 2020 election.

16.

Coffee County, Georgia, by and through the Respondent CCBOE Chairperson Ernestine Thomas-Clark, sent a letter dated December 4, 2020 to Respondent Raffensperger informing him that Coffee County, Georgia was not able to repeatedly replicate or duplicate "creditable" electronic recount election results and, thus, "cannot certify" the electronic recount numbers from the general election results from November 3, 2020 and stated they "should not be used."

17.

A true and correct copy of the letter is attached hereto as **Exhibit "A"** and incorporated herein by reference.

18.

Coffee County, Georgia and the Respondent CCBOE were given deadlines, that do not exist in the Election Code, from Respondent Raffensperger of when certified results of the general election needed to be given to the Georgia Secretary of State's office. That arbitrary deadline was December 4, 2020.

19.

Respondent CCBOE felt extreme pressure and undue influence from Respondent Raffensperger to meet his arbitrarily set deadline and to meet his specific demand to certify electronic recounts of the November 3, 2020 election results.

20.

Respondent CCBOE, in an abundance of caution, and to meet Respondent Raffensperger's demanded deadline to "certify" election results, Respondent CCBOE voted to certify the election results *only* from the raw votes from the November 3, 2020 election night itself and tendered that result to the Secretary of State's Office as the so-called "certification."

21.

Respondent CCBOE further stated in the same letter to Respondent Raffensperger that "To demand certification of patently inaccurate results neither serves the objective of the electoral system nor satisfies the legal obligation to certify the electronic recount."

22.

Coffee County, Georgia and the Respondent CCBOE through their letter to Respondent Raffensperger further informed him that "NO local election board has the ability to reconcile anomalies reflected in the attached." *See* Ex. A.

23.

There are 159 local Election Boards in the State of Georgia, each one was "demanded" by Respondent Raffensperger to certify the electronic recounts and tender those certified electronic recounts to the Secretary of State's office on or before December 4, 2020.

24.

The CCBOE letter calls into doubt the procedures, repeatability, dependability, creditability and the "patently inaccurate" results of "electronic recount number certifications" throughout the entire State of Georgia in each of the 159 counties, and concludes that each and every local Election Board could not possibly certify their results to "satisf[y] the legal obligation to certify the electronic recount."

25.

The results of an election, here Coffee County, Georgia, may be set aside when there is "any error in counting the votes or declaring the result of the primary or election, if such error would change the results" (O.C.G.A. § 21-2-522) or "place in doubt the result" (*Id.*) and where there is "clearly established a violation of election procedures and has demonstrated that the violation has placed the result of the election in doubt." *Martin v. Fulton Cty Bd. Of Registration & Elections,* 307 Ga. 193-94, 835 S.E.2d 245, 248 (2019).

26.

An unknown quantity of registered voters for President Donald J. Trump were denied the ability to vote in the 2020 presidential election because they were told they were not registered.  See Exhibit B attached hereto and incorporated by reference.

27.

The inclusion of registered voters that were precluded from voting, will only further add to the vote totals.  This is an unknown quantity further placing the election results in doubt. *See* Affidavits attached hereto as **Exhibit "B".**

28.

The raw election results from the night of November 3, 2020 did not and could not be matched to the results of the electronic recount as declared by Respondent CCBOE in their letter to Respondent Raffensperger.

29.

The tabulated electronic recount in Coffee County revealed discrepancies between the Election Day results, Hand Recount, Electronic Recount which triggered a CCBOE investigation.

not a recount CGG

30.

The CCBOE investigation initially revealed that 185 ballots had not been run, so those ballots were re-run.

31.

After CCBOE re-ran those 185 ballots through the electronic recount system, there was "No change in Vote Count Despite 185 Ballots Added." *See* Ex. A.

32.

The CCBOE inquired with the onsite representative for the electronic system, but the representative "could not explain why the system would not update the votes."

33.

The electronic system representative then "directed the Board of Elections to make a decision about what to do." *See* Ex. A.

34.

The CCBOE also found from their investigation "FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY. **THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM**." (Caps and bolding in original). *See* Ex. A.

35.

Upon information and belief, the electronic system representative inquired with Respondent Raffensperger or his staff and was directed to inform Respondent CCBOE to "make a decision" and ignore the discrepancies.

36.

The CCBOE voted to certify the election night results because there was an "irreconcilable difference in vote count which leaves the Board with no guidance as to which count to certify."

37.

The failure of the raw election night vote results to match the electronic recount results, on a repeated basis, and the inability of Respondent CCBOE to "reconcile the anomalies" establishes a *per se* error in the counting the votes as contemplated by (O.C.G.A. § 21-2-522).

38.

Th CCBOE data shows that election night results matched the hand recount results, but neither the election night results or the hand recount matched the electronic recount.

39.

The electronic recount anomalies in Coffee County, Georgia are "sufficient to change the outcome" of the election in Coffee County, Georgia, and "place in doubt the result."

40.

The electronic recount anomalies in Coffee County, Georgia are "sufficient to change the outcome" of the election in the entire State of Georgia and "place in doubt the result," as Respondent CCBOE has stated to the Respondent Secretary of State that "NO local election board has the ability to reconcile the anomalies…." which *per se* places in doubt the certified results of the electronic recounts and election results of each and every Election Board in each of the 159 counties of the State of Georgia.

41.

The disparity in votes between President Donald J. Trump and former Vice President Joseph Biden is currently 11,779 votes based on the public website of Respondent Raffensperger.

42.

Simple math shows that if the percentage discrepancy in Coffee County is extrapolated across 159 counties, the disparity in votes between the two (2) main candidates is undermined and the outcome of the election in Georgia potentially renders President Donald J. Trump as winner which triggers Section 5 of O.C.G.A. § 21-2-522 "For any other cause which shows that another was the person legally nominated, elected …in a[n]…election." *See* attached Affidavit by Benjamin Overholt attached hereto and incorporated by reference.

43.

The Election Code "allows elections to be contested through litigation, both as a check on the integrity of the election process and as a means of ensuring the fundamental right of citizens to vote and to have their votes counted securely." *Martin*, 307 Ga. at 194.

44.

The Georgia Supreme Court has made clear that "it [is] not incumbent upon [Petitioner] to show how…voters would have voted if their…ballots had been regular.  [Petitioners] only ha[ve] to show that there were enough irregular ballots to place in doubt the result." *Mead v. Sheffield,* 278 Ga. 268, 271, 601 S.E.2d 99, 101 (2004) (citing *Howell v. Fears,* 275 Ga. 627, 628, 571 S.E.2d 392, 393 (2002)).

45.

By information and belief, Respondent Raffensperger's response to the public release of CCBOE's letter was to send armed investigators to harass the members of the CCBOE.

46.

By information and belief, Respondent Raffensperger further ordered another recount in Coffee County to be conducted by high school seniors.

47.

Also see page 70 and 71 of this pdf

By information and belief, at least some of the high schoolers were under the age of 18.

48.

It is declared to be the policy of the State of Georgia that it has a "responsibility to protect the integrity of the democratic process and to ensure fair elections for constitutional offices O.C.G.A. § 21-5-2.

49.

Speaking to the Atlanta Journal Constitution, Respondent Raffensperger said by and through his office that "[e]very other county was able to complete this task within the given time limits.  In some cases, counties realized they made mistakes in scanning ballots and had to rescan,

or realized they neglected to scan some ballots and had to correct that error.  But nonetheless, those counties completed the recount on time."

50.

The rule of law applying to our most fundamental democratic election process cannot be disregarded in favor of public sentiment to simply move on or for purposes of speed. *Bush v. Gore,* 531 U.S. 98, 108 (2000).

51.

**Because the outcome of the Contested Election is in doubt, Petitioner jointly and severally hereby contests Georgia's November 3, 2020, election results for President of the United States in Coffee County, Georgia, and the entire State of Georgia (all 159 counties) pursuant to O.C.G.A. §§ 21-2-521 and 21-2-522 et seq.**

**<u>COUNT I:</u>**
**ELECTION CONTEST**
**O.C.G.A § 21-2-521 *et seq.***
**(All Respondents)**
52.

Petitioner incorporates paragraphs 1 – 51 above verbatim for purposes of this Count I, as though set forth fully herein.

53.

Respondents, jointly and severally, have violated the Constitution of the State of Georgia.

54.

Respondents, jointly and severally, have violated the laws of the State of Georgia.

55.

Respondents, jointly and severally, have violated the Election Code.

56.

Respondents, jointly and severally, have violated State Election Board Rules and Regulations.

57.

Respondents, jointly and severally, have violated the basic tenants of an open, free, and fair election.

58.

The Contested Election has been timely and appropriately contested per O.C.G.A. § 21-2-522 et seq.

59.

As a direct and proximate result of Respondents' actions, the Contested Election is fraught with irregularities, misconduct and fraud sufficient to change the outcome of the election in Coffee County, Georgia, and place in doubt the entire election result in State of Georgia.

60.

Due to the actions and failures of Respondent Secretary of State, many illegal votes were accepted, cast, and counted in the Contested Election, and legal votes were rejected.

61.

The fraud, misconduct, and irregularities that occurred under the "supervision" of Respondents are sufficient to change the purported results of the Contested Election.

62.

The fraud, misconduct, and irregularities that occurred under the "supervision" of Respondents are sufficient to place the Contested Election in doubt.

63.

Respondent Raffensperger's misconduct is sufficient to change the purported results in the Contested Election in President Trump's favor.

64.

Respondents' misconduct is sufficient to place the purported Contested Election results in doubt.

65.

Respondents, jointly and severally, erred in counting the votes in the Contested Election.

66.

Respondents' error in counting the votes in the Contested Election would change the result in President Trump's favor.

67.

Respondents, jointly and severally, erred in certifying the election results from election night after performing the recount.

68.

Respondents were aware the vote counts taken after recount were incorrect.

69.

Respondent CCBOE vote counts were not capable of being duplicated or replicated.

70.

Respondent Raffensperger's negligent, intentional, willful, and/or reckless violations of the Georgia Constitution, Georgia law, as well as the fundamental premise of a free and fair

election created such error and irregularities at every stage of the Contested Election—from registration through certification and every component in between—that the outcome of the Contested Election is in doubt.

<div align="center">71.</div>

As a result, there is sufficient evidence to call the result of the Contested Election into doubt as to the outcome of the Contested Election, and the Contested Election and any certification associated therewith shall be enjoined, vacated, and nullified and either a new presidential election be immediately ordered that complies with Georgia law or, in the alternative, that such other just and equitable relief is obtained so as to comport with the Constitution of the State of Georgia.[1] *See* O.C.G.A. § 21-2-522.

<div align="center">

**COUNT II:**

**RESPONDENTS' CERTIFICATION WAS INVALID AND MUST BE DECERTIFIED**

**(All Respondents)**

72.

</div>

Petitioner incorporates paragraphs 1 – 71 above verbatim for purposes of this Count II, as though set forth fully herein.

<div align="center">73.</div>

Respondents are required by statute to certify the results of the election.

---

[1] In the event this Court enjoins, vacates, and nullifies the Contested Election, the Legislature shall direct the manner of choosing presidential electors.  U.S. art II, § 1; *see also Bush v. Gore*, 531 U.S. 98.

74.

When a recount is performed by statute, the county is required to certify the results of the recount.

75.

Respondent Raffensperger selected an arbitrary deadline for counties to certify their elections.

76.

Respondent CCBOE informed Respondent Raffensperger that its results from the statutory recount were not capable of being duplicated or replicated.

77.

Respondent CCBOE informed Respondent Raffensperger that "NO" county could certify the results of the recount. (emphasis in original).

78.

Respondent Raffensperger still required Respondent CCBOE to certify the results of the recount.

79.

Respondent CCBOE recertified its election night vote totals after being unable to confidently certify the results of the recount.

80.

Respondent Raffensperger certified the State's election results knowing the numbers from Coffee County did not accurately reflect the results of the recount.

81.

Respondent Raffensperger has repeatedly stated that the certified results accurately reflect the state's vote totals.

82.

Respondent Raffensperger knew that statement to be false at the time he made it.

83.

The Office of the Secretary of State lied to the people of Georgia.

84.

Such a lie constitutes a fraud on the people of Georgia, including Petitioners.

85.

Such action by Respondent Raffensperger make him a "Violator" as defined under the Election Code.

86.

Because Respondent Raffensperger certified vote totals he knew to be inaccurate the December 7, 2020, certification is void.

.

87.

Petitioner seeks an injunction to decertify both the Coffee County, Georgia certification of the election results, and enjoin and decertify Respondent Raffesperger's State certification of the entire State of Georgia's 2020 Presidential election results.

## COUNT III – DECLARATORY JUDGMENT
### (All Respondents)
88.

Petitioner incorporates paragraphs 1 – 87 above verbatim for purposes of this Count III, as though set forth fully herein.

89.

Petitioner is insecure, uncertain and unsure of his legal rights, status and other legal relations with respect to the Contested Election and his ability to vote as a Presidential Elector in the State of Georgia.

90.

Petitioner seeks all relief under O.C.G.A. § 9-4-1 et seq, including injunctive relief, against Respondents to decertify both the Coffee County, Georgia certification of the election results, and enjoin and decertify Respondent Raffesperger's State certification of the entire State of Georgia's 2020 Presidential election results.

## COUNT IV - INJUNCTIVE RELIEF
### (All Respondents)

91.

Petitioner incorporates paragraphs 1 –90 above verbatim for purposes of this Count IV, as though set forth fully herein.

92.

Petitioner seeks an injunction, both equitable and statutory preliminary, interlocutory, and permanent, against Respondents to decertify both the Coffee County, Georgia certification of the election results, and enjoin and decertify Respondent Raffesperger's State certification of the entire State of Georgia's 2020 Presidential election results.

**WHEREFORE**, Petitioner prays for the following relief:

1. That process issue according to law and this Verified Petition be served upon all Respondents on an expedited basis;

2. That a *Rule Nisi* hearing on this matter be set *instanter;*

3. That the Court order expedited responses to discovery served with the Verified Petition see Exhibit "C" attached hereto for Petitioner's Emergency Motion for Expedited Discovery and Discovery served herewith as Exhibits C-1, C-2, C-3;

4. That the Court issue a declaration to decertify both the Coffee County, Georgia certification of the 2020 Presidential election results, and enjoin and decertify Respondent Raffensperger's State certification of the entire State of Georgia's 2020 Presidential election results;

5. That equitable injunctive relief, including temporary restraining order, preliminary, interlocutory and permanent relief, be awarded in favor of Petitioner and against

Respondents for any and all relief allowed as a matter of equity; and

6. For such other and further relief as this Honorable Court deems proper, just and equitable and as justice so requires.

Respectfully submitted, this _12th_ day of December, 2020.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
Georgia Bar No. 352877
*Attorneys for Petitioner*

The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, Georgia 30076
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

# COFFEE COUNTY BOARD OF
# ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty.hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

December 10, 2020

House Governmental Affairs Committee
Elections Investigative Hearing
Shaw Blackmon – Chairman
401 State Capitol
Atlanta, Ga. 30334

We want to thank the Governmental Affairs Committee for allowing the Coffee County Board of Election's to express its dilemma regarding certifying the electronic recount performed in the November 3, 2020 General Election. As you know, the certification process requires the Election Supervisor to swear under oath and under penalty of perjury that the certified votes are a true and accurate reflection of the count, or recount. In the instant case, the Election Supervisor of Coffee County could not honestly make such an attestation given the inherent inconsistencies existing within the electronic summary report generated by the Dominion voting system.

The basis for the dilemma is simple the election summary report for the electronic recount tabulated votes in a manner that resulted in more collective votes being cast for the Presidential candidates than the total number of votes reflected within the report. The inconsistent count could not be reconciled.

This fact (inherent inconsistency) alone was grounds not to certify the election based on the Dominion data set and report. However, the reluctance to certify the electronic recount was compounded where those results were considered in context with the two prior vote count results.

As this committee knows, a hand count of the original General Election balloting occurred on November 16 – November 17. Coffee County's hand count yielded one more ballot than was reflected on the ballot count on election night. At the direction of the Secretary of State, if the hand count yields a net vote difference of less than five votes, the board was instructed to certify the original vote tally. Coffee County certified on the original elections results on November 9, 2020.

The election report used to certify the original election results was internally consistent, meaning that the sum of the votes for each presidential candidate equaled the total votes reflected on the report. The hand count also yielded the same internal consistency within the report. See Exhibit 5. It is worth noting that we believe Dominion election reports generated in prior elections were likewise internally consistent. The internal inconsistency of the election summary report stands in stark contrast to all other prior elections.

To this application we have attached the following exhibits:

Exhibit 1:    Election Night Summary Report
Exhibit 2:    Recount Data



Exhibit 3:      Electronic Electron Summary Report
Exhibit 4:      Letter to Secretary of State
Exhibit 5:      Spreadsheet with results (corrected)
Exhibit 6:      Certification Form

Exhibit 5 is a spreadsheet that summarizes the discrepancies thus far described.  A review of Exhibit 5 illustrates the two glaring problems presented to the Coffee County Board of Elections. The report relating to the recount is patently inaccurate on its face.  Moreover, if one is to consider the electronic recount in light of the two prior vote counts, there is no way the vote tally reflected in that report could be accurate.  It is not credible to accept that the original count and the hand count, under counted the total ballots by material number of ballots.  Considering the inherent inconsistency of the electronic recount data, and its unlikely accuracy when compared to the first two vote counts, the Coffee County Board of Elections refused to certify the electronic recount based on the mandate of the certification form.

The decision not to certify the electronic recount was the result of a unanimous vote by Coffee County Board of Elections. However, this decision was not made until the Board could first have the data reviewed and explained by its Dominion representative.  The data reflected in this statement was presented to the representative.  He had NO explanation for the inaccuracies. He could not reconcile the electronic recount report data or explain how it so dramatically differed from the two prior counts. Knowing this decision would certainly be scrutinized, the Board sent a letter explaining its dilemma, its decision and the supporting spreadsheet to the Secretary of State.  This letter was sent to Brad Raffensperger, on Friday, December 4, 2020.

That same day, the Election Supervisor also communicated directly with Chris Harvey, Director of Elections about the findings and the decision.  No one could explain what was wrong or what to do. No one from the Secretary of State's office came to help the Board determine if it made an error or if the inaccuracies are Dominion software related.

This committee must understand, in this same election cycle, we identified other problems with the Dominion System and reported the same to the Secretary of State.  On November 13, 2020 a letter was written to the Secretary of State identifying other serious concerns.  A copy of that letter and other relevant documents are attached as Exhibit 7.  Our Board members and Election Supervisor have called the Secretary of State's office to both report these issues as well as ask for help to address those problems.  All our concerns and requests for help have fallen on deaf ears.

One can understand why today, December 10, 2020, our Board is dismayed to learn that the Secretary of State has opened an "investigation" into our handling of the recount.  We learned this not from the Secretary of State but through WALB News where Chris Harvey provided a statement for the media. Mr. Harvey did not show us the courtesy of a phone call.

The same is true as relates to a video created at a Coffee County Board of Elections meeting which is now widely distributed via the internet.  This video demonstrates how the Dominion system can be manipulated to alter existing ballot results or create voter ballots out of thin air.  This security issue was first discovered by the Coffee County Board of Elections supervisor in June, 2020.  It was made known to some but not all of the Board members.  Importantly however, the findings were reported to our State Representative  Dominic LaRiccia on or about June 10, 2020, with the hope that someone unassociated with Dominion would scrutinize this problem.  The board never heard a word from Mr. LaRiccia or anyone from the Secretary of State's office or state government.

After the Presidential election was over, national attention focused on whether Dominion software could be manipulated to impact election results. Having previously demonstrated this fact, the full Board wanted to have this process documented during an open meeting. The video that captured this demonstration, along with other documents were requested to be produced via an Open Records Request. The content became public knowledge through this third-party request.

The Coffee County Board of Elections has for many months reported various aspects of these problems to the Secretary of State receiving no assistance in correcting these problems. As for the investigation, the Secretary of State chose not to assist us or help evaluate the root cause of the refusal to certify the election recount but certified the statewide election results despite our findings. The Coffee County Board of Elections took action which it believed accurately reflected the accurate vote of its citizens and certified that vote. If it has done so erroneously, it has been done, not nefariously or belligerently but honestly, humbly and with but one goal: to certify the true vote of the citizens of Coffee County.

This is particularly disappointing given that Eric Chaney personally called Chris Harvey and Dennis Carbone on November 13, 2020 to express his concerns over the Dominion System. Mr. Harvey nor Mr. Carbone returned this phone call. But the deafening silence from people in authority regarding our concerns go back to June 2020; their indifference is unfortunate.

As Exhibit 8 we have attached a list of individuals who, prior to Monday December 7, 2020, were made aware of some or all of the problems reflected in this statement. Not one person has offered any solution or explanation for these issues. The Secretary of State has been AWOL.

We look forward to our "investigation" which begins Friday. We stand ready to take any necessary action to correct any problems which are supported by the law and facts, even if we mistakenly erred in our decisions.

Respectfully,

Eric Chaney
Coffee County Board Member

# EXHIBIT LIST

1.  Election night summary report
2.  Hand recount election summary
3.  Electronic recount ESR
4.  Letter to Secretary State (Dec. 4th, 2020)
5.  Spread sheet summary election results (correction)
6.  Certification form
7.  Letter to Secretary of State (Nov 11th, 2020)
8.  People aware of problems prior to Monday Dec 7th, 2020

CGG  26/83

# EXHIBIT 1

# Election Summary Report

General Election

COFFEE

November 03, 2020

Summary for: All Contests, All Districts, All Tabulators, All Counting Groups

OFFICIAL AND COMPLETE

Precincts Reported: 6 of 6 (100.00%)

Registered Voters: 15,277 of 25,114 (60.83%)

Ballots Cast: 15,277

## President of the United States (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Donald J. Trump (I) (Rep) |  | 2,587 | 7,066 | 917 | 8 | 10,578 |
| Joseph R. Biden (Dem) |  | 1,100 | 2,411 | 995 | 5 | 4,511 |
| Jo Jorgensen (Lib) |  | 41 | 67 | 17 | 0 | 125 |
| Total Votes |  | 3,728 | 9,544 | 1,929 | 13 | 15,214 |

| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Loren Collins | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Gloria La Riva | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Unresolved Write-In |  | 10 | 12 | 1 | 0 | 23 |

## US Senate (Perdue) (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| David A. Perdue (I) (Rep) |  | 2,535 | 6,981 | 899 | 9 | 10,424 |
| Jon Ossoff (Dem) |  | 1,067 | 2,298 | 913 | 3 | 4,281 |
| Shane Hazel (Lib) |  | 85 | 155 | 46 | 0 | 286 |
| Total Votes |  | 3,687 | 9,434 | 1,858 | 12 | 14,991 |

| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Unresolved Write-In |  | 5 | 8 | 1 | 0 | 14 |

# Public Service Commission District 4 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Lauren Bubba McDonald, Jr. (I) (Rep) | | 2,375 | 6,662 | 871 | 7 | 9,915 |
| Daniel Blackman (Dem) | | 1,008 | 2,156 | 910 | 3 | 4,077 |
| Nathan Wilson (Lib) | | 87 | 144 | 37 | 1 | 269 |
| Total Votes | | 3,470 | 8,962 | 1,818 | 11 | 14,261 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 2 | 4 | 2 | 0 | 8 |

# US House District 12 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Rick W. Allen (I) (Rep) | | 2,483 | 6,909 | 916 | 7 | 10,315 |
| Liz Johnson (Dem) | | 1,054 | 2,247 | 938 | 4 | 4,243 |
| Total Votes | | 3,537 | 9,156 | 1,854 | 11 | 14,558 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 1 | 3 | 0 | 0 | 4 |

# State Senate District 7 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Tyler Harper (I) (Rep) | | 2,948 | 7,790 | 1,216 | 7 | 11,961 |
| Total Votes | | 2,948 | 7,790 | 1,216 | 7 | 11,961 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 54 | 166 | 51 | 0 | 271 |

12/7/2020 11:03:51 AM

## Sheriff (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Doyle T. Wooten (I) (Rep) | | 3,058 | 8,018 | 1,396 | 9 | 12,481 |
| Total Votes | | 3,058 | 8,018 | 1,396 | 9 | 12,481 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 49 | 124 | 44 | 0 | 217 |

## Tax Commissioner (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Shanda Henderson (I) (Rep) | | 3,132 | 8,175 | 1,412 | 9 | 12,728 |
| Total Votes | | 3,132 | 8,175 | 1,412 | 9 | 12,728 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 15 | 61 | 33 | 0 | 109 |

## Surveyor (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Adam H. Evans (I) (Rep) | | 3,004 | 7,933 | 1,350 | 9 | 12,296 |
| Total Votes | | 3,004 | 7,933 | 1,350 | 9 | 12,296 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 18 | 66 | 26 | 0 | 110 |

## County Commission District 5 (Vote for 1)
### NP

Precincts Reported: 5 of 5 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 1,134 | 1,916 | 345 | 6 | 3,401 / 5,144 | 66.12% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Ted Osteen (I) (Rep) | | 946 | 1,604 | 255 | 1 | 2,806 |
| Total Votes | | 946 | 1,604 | 255 | 1 | 2,806 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 0 | 7 | 9 | 0 | 16 |

## Soil and Water - Altamaha (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Total Votes | | 0 | 0 | 0 | 0 | 0 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 412 | 938 | 178 | 0 | 1,528 |

## Constitutional Amendment #1 (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| YES | | 2,520 | 6,513 | 1,342 | 5 | 10,380 |
| NO | | 827 | 2,133 | 399 | 3 | 3,362 |
| Total Votes | | 3,347 | 8,646 | 1,741 | 8 | 13,742 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 0 | 0 | 0 | 0 | 0 |

CGG  31/83

# EXHIBIT 2

Hand Recount Recap

| | | | | | | Invalid | Valid | | |
|---|---|---|---|---|---|---|---|---|---|
| Jurisdiction | Batch Name | Batch Type | Trump | Biden | Jorgensen | Write-In | Write-iin | Blank/Unde | Overvote |
| COFFEE | 1 | Absentee By Mail | 441 | 1 | 17 | 0 | 0 | 0 | 0 |
| COFFEE | 2 | Absentee By Mail | 484 | 527 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 3 | Absentee By Mail | 0 | 474 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 10 | Election Day | 376 | 565 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 11 | Election Day | 879 | 185 | 95 | 0 | 0 | 0 | 0 |
| COFFEE | 12 | Election Day | 489 | 182 | 13 | 0 | 0 | 0 | 0 |
| COFFEE | 13 | Election Day | 625 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 14 | Election Day | 872 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 15 | Election Day | 966 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 16 | Election Day | 1071 | 430 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 17 | Election Day | 0 | 0 | 0 | 23 | 0 | 0 | 0 |
| COFFEE | 4 | Election Day | 393 | 8 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 5 | Election Day | 1046 | 7 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 6 | Election Day | 866 | 639 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 7 | Election Day | 461 | 592 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 8 | Election Day | 674 | 316 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 9 | Election Day | 935 | 585 | 0 | 0 | 0 | 0 | 0 |
| | | Election Day | 9653 | 3509 | 17 | 23 | | 13202 | Total Votes |
| | | Absentee By Mail | 925 | 1002 | 108 | | | 2035 | Total Votes |

*10578    4511      125*

*15,237 ✳*

*This total did Not include the additional*
*ballot (15,238) based on SOS*
*guidance.*

CGG  33/83

# EXHIBIT 3

# Election Summary Report

## General Election
## COFFEE
## November 03, 2020
Summary for: All Contests, All Districts, All Tabulators, All Counting Groups
## OFFICIAL AND COMPLETE RECOUNT

Precincts Reported: 6 of 6 (100.00%)
Registered Voters: 15,327 of 25,114 (61.03%)
Ballots Cast: 15,327

## President of the United States (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Donald J. Trump (I) (Rep) |  | 9,671 | 0 | 926 | 0 | 10,597 |
| Joseph R. Biden (Dem) |  | 3,519 | 0 | 1,001 | 0 | 4,520 |
| Jo Jorgensen (Lib) |  | 119 | 0 | 17 | 0 | 136 |
| Total Votes |  | 13,309 | 0 | 1,944 | 0 | 15,253 |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Loren Collins | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Gloria La Riva | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Unresolved Write-In |  | 5 | 0 | 0 | 0 | 5 |

## US Senate (Perdue) (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| David A. Perdue (I) (Rep) |  | 9,525 | 0 | 906 | 0 | 10,431 |
| Jon Ossoff (Dem) |  | 3,375 | 0 | 917 | 0 | 4,292 |
| Shane Hazel (Lib) |  | 248 | 0 | 45 | 0 | 293 |
| Total Votes |  | 13,148 | 0 | 1,868 | 0 | 15,016 |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Unresolved Write-In |  | 13 | 0 | 1 | 0 | 14 |

## Public Service Commission District 4 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Lauren Bubba McDonald, Jr. (I) (Rep) | | 9,037 | 0 | 873 | 0 | 9,910 |
| Daniel Blackman (Dem) | | 3,167 | 0 | 912 | 0 | 4,079 |
| Nathan Wilson (Lib) | | 237 | 0 | 38 | 0 | 275 |
| Total Votes | | 12,441 | 0 | 1,823 | 0 | 14,264 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 6 | 0 | 2 | 0 | 8 |

## US House District 12 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Rick W. Allen (I) (Rep) | | 9,398 | 0 | 921 | 0 | 10,319 |
| Liz Johnson (Dem) | | 3,308 | 0 | 939 | 0 | 4,247 |
| Total Votes | | 12,706 | 0 | 1,860 | 0 | 14,566 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 4 | 0 | 0 | 0 | 4 |

## State Senate District 7 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Tyler Harper (I) (Rep) | | 10,743 | 0 | 1,219 | 0 | 11,962 |
| Total Votes | | 10,743 | 0 | 1,219 | 0 | 11,962 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 219 | 0 | 53 | 0 | 272 |

12/2/2020 5:24:08 PM

## Sheriff (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Doyle T. Wooten (I) (Rep) | | 11,081 | 0 | 1,396 | 0 | 12,477 |
| Total Votes | | 11,081 | | 1,396 | 0 | 12,477 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 173 | 0 | 46 | 0 | 219 |

## Tax Commissioner (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Shanda  Henderson (I) (Rep) | | 11,314 | 0 | 1,414 | 0 | 12,728 |
| Total Votes | | 11,314 | | 1,414 | 0 | 12,728 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 76 | 0 | 35 | 0 | 111 |

## Surveyor (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Adam H. Evans (I) (Rep) | | 10,944 | 0 | 1,352 | 0 | 12,296 |
| Total Votes | | 10,944 | 0 | 1,352 | | 12,296 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 84 | 0 | 28 | 0 | 112 |

## County Commission District 5 (Vote for  1)
## NP

Precincts Reported: 5 of 5 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,066 | 0 | 350 | 0 | 3,416 / 5,144 | 66.41% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Ted Osteen (I) (Rep) |  | 2,553 | 0 | 255 | 0 | 2,808 |
| Total Votes |  | 2,553 | 0 | 255 | 0 | 2,808 |

|  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 7 | 0 | 9 | 0 | 16 |

## Soil and Water - Altamaha (Vote for  1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Total Votes |  | 0 | 0 | 0 | 0 | 0 |

|  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 1,350 | 0 | 178 | 0 | 1,528 |

## Constitutional Amendment #1 (Vote for  1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| YES |  | 9,041 | 0 | 1,342 | 0 | 10,383 |
| NO |  | 2,961 | 0 | 399 | 0 | 3,360 |
| Total Votes |  | 12,002 | 0 | 1,741 | 0 | 13,743 |

|  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 0 | 0 | 0 | 0 | 0 |

CGG  38/83

# EXHIBIT 4

# COFFEE COUNTY BOARD OF
## ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

12/04/2020

Brad Raffensperger
214 State Capitol
Atlanta, GA. 30334

Dear Mr. Raffensperger,

The Coffee County Board of Elections and Registration cannot certify the electronic recount numbers given its inability to repeatably duplicate creditable election results. Any system, financial, voting, or otherwise, that is not repeatable nor dependable should not be used. To demand certification of patently inaccurate results neither serves the objective of the electoral system nor satisfies the legal obligation to certify the electronic recount.

I am enclosing a spread sheet which illuminates that the electronic recount lacks credibility.  NO local election board has the ability to reconcile the anomalies reflected in the attached.  Accordingly, the Coffee County Board of Elections and Registration have voted to certify the votes cast in the election night report.  The election night numbers are reflected in the official certification of results submitted by our office.

Respectfully,
Coffee County Board of Elections and Registration

Ernestine Thomas-Clark
Chairperson
Signed by Chairperson by expressed permission and consent of 100% of the board.

cc
Dominic LaRiccia
Tyler Harper

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | No Vote* | Total Votes | Internal Delta | Total Delta | Net Discrepancy Between Total and Internal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 40 | 15237 | | | |
| | | | | | | | | | | | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | NA | 15238 | | | |
| | Compare 2 to 1 | | 0 | 0 | +1 | | | +1 | +1 | +1 | 0 |
| | | | | | | | | | | | |
| 11/30/2020 | Electronic Recount | 3 | 10596 | 4518 | 13 | 0 | 15 | 15127 | | | Approximate date of unauthorized access. 11/17 |
| | Compare 3 to 1 | | +18 | +7 | -112 | | | -110 | -87 | -110 | +23 |
| | Compare 3 to 2 | | +18 | +7 | -112 | | | -110 | -88 | -110 | +22 |
| | | | | | | | | | | | |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | 74 | NO CHANGE | | | |
| | | | | | | | | | | | |
| | The tabluted Electonic Recount revealed the above discrepencies | | | | | | | | | | |
| | Investigation revealed we negelected to run 185 balltos:  we then ran these ballots | | | | | | | | | | |
| | we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | | | | |
| | The Dominion Rep directed the Board of Elections  to make a decision about what to do. | | | | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | | | | |
| | | | | | | | | | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | | | 15236 | | | |
| | Compare 5 to 1 | | +19 | +9 | +11 | | | -1 | +37 | +16 | +23 |
| | Compare 5 to 2 | | +19 | +9 | +11 | | | -2 | +38 | +16 | +24 |
| | There is a discrepancy between Electronic Recount and total votes for both 1 & 2 | | | | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand recount, and the electronic recount. | | | | | | | | | | |
| | Anomilies in software recounts create irreconciable difference in vote count which leaves the Board with no clear guidance as to which count to certify. | | | | | | | | | | |
| | | | | | | | | | | | |
| | * Write-IN and NO Votes are NOT included in the Total Votes | | | | | | | | | | |

CGG  41/83

# EXHIBIT 5

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | Total Votes | Internal Delta |
|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 15237 | |
| | | | | | | | | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | 15238 | |
| | Compare 2 to 1 | | 0 | 0 | +1 | | +1 | +1 |
| | | | | | | | | |
| 11/30/2020 | Electronic Recount | 3 | 10597 | 4520 | 136 | 0 | 15258 | |
| | Compare 3 to 1 | | +19 | +9 | +11 | | | +39 |
| | Compare 3 to 2 | | +19 | +9 | +12 | | | +40 |
| | | | | | | | | |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | NO CHANGE | |
| | The tabluated Eletonic Recount revealed the above discrepencies | | | | | | | |
| | Investigation revealed we negelected to run 185 balltos:  we then ran these ballots | | | | | | | |
| | we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | |
| | The Dominion Rep directed the Board of Elections  to make a decision about what to do. | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | |
| | | | | | | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | 5 | 15258 | |
| | Compare 5 to 1 | | +19 | +9 | +11 | | | +39 |
| | Compare 5 to 2 | | +19 | +9 | +12 | | | +40 |
| | There is a discrepency between Electronic Recount and total votes for both 1 & 2 | | | | | | | |
| | | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand recount, and the electronic recount. | | | | | | | |
| | | | | | | | | |
| | Anomilies in software recounts create irreconiable difference in vote count which leaves the Board with no clear guidance as to which count to certify. | | | | | | | |
| | | | | | | | | |
| | * Write-IN and NO Votes are NOT included in the Total Votes | | | | | | | |

Revised 12/10/2020

CGG  43/83

# EXHIBIT 6

## CERTIFICATION OF RETURNS FOR:

### NOVEMBER 3, 2020 GENERAL ELECTION  RECOUNT

_____

(COUNTY)

---

Instructions: Prepare and print 4 copies of the Election Summary for the General Election (county consolidated vote totals report that is generated by EMS).
Attach copies of this consolidated certification report as follows:

1. White sheet is attached to Election Summary and returned to Secretary of State.
2. Yellow sheet is attached to Election Summary and maintained by Superintendent.
3. Pink sheet is attached to Election Summary and sent to Clerk of Superior Court.
4. Goldenrod sheet is attached to Election Summary and immediately posted at the Courthouse.

ELECTION SUMMARY MUST BE ATTACHED TO THIS FORM

---

We, the undersigned Superintendent/Supervisor of Elections and his/her Assistants, do jointly and severally certify that the attached Election Summary is a true and correct count of the votes cast in this County for the candidates in the General Election.
In TESTIMONY WHEREOF, We have hereunto set our hands and seals this _____ day of
_____, 20 _____ . SIGNED IN QUADRUPLICATE.

_____ Assistant      _____

_____ Assistant      Superintendent/Supervisor Of Elections

_____ Assistant

_____ Assistant

_____ Assistant

CR-GE-20

CGG  45/83

# EXHIBIT 7

CGG 46/83

## COFFEE COUNTY BOARD OF
## ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Asistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of Elections and Registration discovered deficiencies in the current Dominion election system. We are writing to ensure you are aware of these and that they may be immediately rectified.

The adjudication process allows the ICC operator to choose how adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate and change votes on all ballots, even if the ballot was correctly and cleanly voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors would duplicate the voter's intent on a new ballot on all races possible. A representative from the Democratic and Republican Party plus a board member, would all agree on the marking or duplicating the ballot. We, also, all 3 sign the top tab of the ballot that we attach to the void ballot so that we may recreate the process and see who was making the changes. We have proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail can be created. This allows ANYONE to make a change to the vote so there

is no accountability.  We also believe that the adjudication process may not be observed from any distance beyond that of the operator of the ICC.  Given the computer screen it is not possible to observe the change being completed from any further distance.

In a Mockup election we were able to count ballot multiple times.  It was during this mockup election we have verified and recreated the above deficiencies

Respectfully,

Ernestine Thomas-Clark

Wendell Stone

Matthew McCullough

Eric Chaney

Delivered by: Overnight and fax  404-656-0513



Transmission Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Coffee Co Commission | | | Friday, 2020-11-13  16:28 | | | | 9123840291 | |

| Date | Time | Type | Job # | Length | Speed | Fax Name/Number | Pgs | Status |
|------|------|------|-------|--------|-------|-----------------|-----|--------|
| 2020-11-13 | 16:27 | SCAN | 09289 | 0:32 | 14400 | 814046560513 | 1 | OK -- V.17 AB31 |

**COFFEE COUNTY BOARD OF**
**ELECTIONS AND REGISTRATION**
224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Perry, Member

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of Elections and Registration discovered deficiencies in the current Dominion election system. We are writing to ensure you are aware of these and that they may be immediately rectified.

The adjudication process allows the ICC operator to choose how adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate and change votes on all ballots, even if the ballot was correctly and cleanly voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors would duplicate the voter's intent on a new ballot on all races possible. A representative from the Democratic and Republican Party plus a board member, would all agree on the marking or duplicating the ballot. We, also, all 3 sign the top tab of the ballot that we attach to the void ballot so that we may recreate the process and see who was making the changes. We have proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail can be created. This allows ANYONE to make a change to the vote so there

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Track Another Package +

Tracking Number: EJ475214345US

Remove ✕

**Scheduled Delivery by**

## MONDAY

# 16 NOVEMBER 2020 ⓘ

by

**3:00pm** ⓘ

### Delivery Attempt

November 14, 2020 at 10:09 am
Delivery Attempted - No Access to Delivery Location
30334

Get Updates ⌄

Feedback

---

### Text & Email Updates ⌃

Select what types of updates you'd like to receive and how. Send me a notification for:

**Text**      **Email**

☐        ☐  All Below Updates

☐        ☐  Expected Delivery Updates ⓘ

☐        ☐  Day of Delivery Updates ⓘ

☐        ☐  Package Delivered ⓘ

☐        ☐  Available for Pickup ⓘ

☐        ☐  Delivery Exception Updates ⓘ

☐        ☐  Package In-Transit Updates ⓘ

---

### Proof of Delivery ⌃

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=EJ475214345US

1/2

CGG  50/83

# EXHIBIT 8

The following 15 people have received calls or letters identifying the following cartological problems with the Dominion software and other issues.

1. The adjudication processes and the ability to manipulate votes
2. The absence of audit trail to identify who changed data in adjudication process and who witnessed to the adjudication of any given ballot.
3. Change by the SOS in the adjudication process changing the old system which required a rep from each party, plus a board member, to determine the voter's intent.

Under the Dominion adjudication process anyone can adjudicate change a vote with out any oversite or accountability from any neutral 3 party.  A single ballot can be scanned and counted multiple times.

4. Multiple complaints and concerns have been logged over training, equipment failure and inexplicable software anomalies.

Secretary of State Brad Raffensperger

Gary Gainous _ Dominion Tech

Dominic LaRiccia – State House Representatives for Dist 169 6/10

Butch Miller – Senator 12/3

Mike Dugan – Senator 12/3

Steve Gooch – Senator 12/3

John Kennedy – Senator 12/3

Larry Walker – Senator 12/3

Dean Burke – Senator 12/3

Tyler Harper – Senator 12/3

Blake Tillery 12/3 & 12/4

Cardan Summers 12/3 & 12/8

Cathy Latham 12/7 & 12/8

Whitney Argenbright – Albany News - 12/7

Robert Preston 12/7 & 12/8

Brad Schrade with AJC 12/8

## AFFIDAVIT OF ALYSSA HOPE TAYLOR

Comes now, Alyssa Hope Taylor, and after being duly sworn makes the following statement under oath:

1.    My name is Alyssa Hope Taylor.

2.    I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

3.    I am a resident of Coffee County, GA.

4.    On multiple occasions I have tried to register to vote in Coffee County, GA.

5.    On multiple occasions, my husband – who lives at the same address - also tried to register to vote in Coffee County, Ga.

6.    Both my husband and I were denied the opportunity to register to vote.

7.    I wished to vote for President Donald J. Trump in the 2020 Presidential Election.

8.    My husband also wished to vote for President Donald J. Trump in the 2020 Presidential Election.

9.    We were denied the opportunity to register to vote in Coffee County, GA.

10.    We were denied the opportunity to vote.



EXHIBIT

B

11.    I was told that I could not vote.

12.    I was denied the opportunity to vote.

13.    I was denied the opportunity to vote for President Donald J.
Trump's re-election.

14.    Upon information and belief there are other similarly situated
eligible registered voters in Coffee County that were not allowed to register to
vote.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 12th day of December, 2020.

_Alyssa Taylor_

Alyssa Hope Taylor


State of Georgia
County of Coffee


Appeared before me Alyssa Hope Taylor, this 12th day of December, 2020 and
after being duly sworn, stated the forgoing statements are true and correct to
the best of his knowledge and belief.

_Robert Alexander Sinners_   12/12/20

ROBERT ALEXANDER SINNERS
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires December 7, 2024

STATE OF GEORGIA
COUNTY OF COFFEE

Personally appeared before me, the undersigned officer duly authorized to administer oaths, **Cecelia O'Steen**, who, after having been sworn, deposes and says as follows:

1. My name is Cecilia Cheyenne O'Steen.

2. I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

3. I reside at 1414 GA HWY 64, NICHOLLS, GA 31554.

4. I am a resident of Coffee County.

5. I registered to vote when renewing my Driver's License on 3/13/2018.

6. My Driver's License incorrectly places my residence in Bacon County.

7. When attempting to vote in Coffee County on 10/30/2018, I was told I was registered in Bacon County.

8. I was not allowed to vote.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of December, 2020.

Cheyenne O'Steen

State of Georgia County of Coffee

Appeared before me ~~Cheyenne O'Steen~~ this 12th day of December, 2020 and after being duly sworn, stated the forgoing statements are true and correct to the best of his knowledge and belief.

12/12/20

Robert Alexander Sinners

```
ROBERT ALEXANDER SINNERS
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires December 7, 2024
```

## AFFIDAVIT OF APRIL MICHELLE MCCLAIN

Comes now, April Michelle McClain, and after being duly sworn makes the following statement under oath:

1.      My name is April Michelle McClain.

2.      I am over the age of 18 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

3.      I am a resident of Coffee County, GA.

4.      I registered to vote in Georgia on or about January 14, 2020.

5.      I wished to vote for President Donald J. Trump in the 2020 Presidential Election.

6.      I attempted to vote early in person in October, 2020.

7.      I showed my driver's license to a female employee at the Coffee County Elections Office.

8.      I was told by the female poll worker employee that I was not registered to vote.

9.      I was told that I could not vote.

10.     I was denied the opportunity to vote.

11.     I was denied the opportunity to vote for President Donald J. Trump's re-election.

12.    Upon information and belief there are other similarly situated eligible registered voters in Coffee County that were denied the opportunity to register or vote.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of December, 2020.

April Michelle McClain

State of Georgia
County of Coffee

Appeared before me April Michelle McClain, this 12th day of December, 2020 and after being duly sworn, stated the forgoing statements are true and correct to the best of his knowledge and belief.

Notary Public

My commission expires:

ROBERT ALEXANDER SINNERS
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires December 7, 2024

# IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

SHAWN STILL, in his capacity as a Voter and        ]
capacity as an Official Presidential Elector,      ]
JANE DOE 1,                                        ]
        Petitioner,                               ]
                                        ]     **CIVIL ACTION FILE**
vs.                                                ]
                                        ]     **NO. _____**
BRAD RAFFENSPERGER, in his official               ]
capacity as Secretary of State of Georgia,        ]
COFFEE COUNTY BOARD OF ELECTIONS                  ]
AND REGISTRATION, ERNESTINE                       ]
THOMAS-CLARK, in her official capacity as         ]
Chairman of the Coffee County Board of            ]
Elections and Registration, WENDELL STONE,]
 in his official capacity as vice-chairman of the ]
 Coffee County Board of Elections and            ]
Registration, ERIC CHANEY, in his official        ]
capacity as a member of the Coffee County         ]
Board of Elections and Registration,              ]
MATTHEW MCCULLOGH, in his official                ]
Capacity as a member of the Coffee County         ]
Board of Elections and Registration, C.T.         ]
PEAVY, in his official capacity as a member       ]
of the Coffee County Board of Elections and       ]
Registration, MISTY MARTIN, in her official       ]
Capacity as Coffee County Election Supervisor, ]
JIL RIDLEHOOVER, in her official capacity as ]
Coffee County Elections Assistant,                ]
CORPORATE ENTITY 1,  JOHN DOE 1                   ]
             Respondents.                            ]
                                    ]

## PETITIONER'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY

COMES NOW the Petitioner, Shawn Still, and moves pursuant to O.C.G.A. § 9-11-26, and

as otherwise allowed by law and the Uniform Superior Court Rules, this Honorable Court for

Expedited Discovery for good cause shown.  Specifically, Petitioner requests that the Court require



Respondents to produce documents and testimony regarding facts surrounding the elections certification process in Coffee County, GA.   See Petitioner's Request for Production of Documents, Requests for Admission, and Interrogatories, attached hereto as Exhibits C-1 and C-2.  O.C.G.A. § 9-11-26; O.C.G.A. § 9-11-33, 9-11-34, and 9-11-36.

Petitioner is a designated Georgia Elector for the November 3, 2020 presidential election. Petitioner *must* complete discovery within 36 hours of this filing to discern election results for Coffee County, Georgia **in advance of December 14, 2020**, the date specified by federal statute for the vote of the Electoral College.  ("The electors of President and Vice President of each State shall meet and give their votes on the first Monday after the second Wednesday in December next...").  3 U.S.C. § 7.  Petitioner cannot ascertain or perform his duty as a member of the Electoral College without completed discovery in this case.  Accordingly, due to the extreme time constraint and based on the recent documentation that was discovered December 4, 2020, the need for expedited discovery is paramount to resolving the underlying Election Contest and determining the irregularities, misconduct and possible fraud in the Presidential Election that may be "sufficient" to change the outcome of the election, or place the result in doubt – not only in Coffee County, but also in the entire State of Georgia.

Further, Petitioner intends to file a motion to add parties and needs responses to this discovery to identify those parties and expeditiously proceed with the parties' addition and subsequent litigation.

A proposed Order granting this Motion is attached hereto as Exhibit C-3.

**WHEREFORE**, for the within and foregoing reasons, Petitioner Shawn Still's Motion for

Expedited Discovery respectfully requests that its motion be **GRANTED** in the above captioned

matter, and for such other and further relief as is just, proper and equitable.

Respectfully submitted this 12th day of December 2020.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT, ESQ.

Georgia Bar No. 352877
Attorney for Shawn Still
205 Norcross Street
Roswell, GA 30075
Georgia Bar No. 352877
T: (770) 551-9310
F: (770) 551-9311
khilbert@hilbertlaw.com

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

SHAWN STILL, in his capacity as a Voter and ]
capacity as an Official Presidential Elector, ]
JANE DOE 1, ]
      Petitioner, ]
            ]   **CIVIL ACTION FILE**
vs. ]
            ]   **NO. _____**
BRAD RAFFENSPERGER, in his official ]
capacity as Secretary of State of Georgia, ]
COFFEE COUNTY BOARD OF ELECTIONS ]
AND REGISTRATION, ERNESTINE ]
THOMAS-CLARK, in her official capacity as ]
Chairman of the Coffee County Board of ]
Elections and Registration, WENDELL STONE, ]
in his official capacity as vice-chairman of the ]
Coffee County Board of Elections and ]
Registration, ERIC CHANEY, in his official ]
capacity as a member of the Coffee County ]
Board of Elections and Registration, ]
MATTHEW MCCULLOGH, in his official ]
Capacity as a member of the Coffee County ]
Board of Elections and Registration, C.T. ]
PEAVY, in his official capacity as a member ]
of the Coffee County Board of Elections and ]
Registration, MISTY MARTIN, in her official ]
Capacity as Coffee County Election Supervisor, ]
JIL RIDLEHOOVER, in her official capacity as ]
Coffee County Elections Assistant, ]
CORPORATE ENTITY 1,  JOHN DOE 1 ]
      Respondents. ]
_____ ]

PETITIONER'S <mark>FIRST DISCOVERY REQUESTS</mark>
TO RESPONDENT COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION
SERVED WITH THE VERIFIED PETITION

    **COMES NOW** Petitioner Shawn Still, in his Official Capacity as Presidential Elector and

serves upon Respondent Coffee County Board of Elections and Registration (hereinafter the

"Coffee County Board") the following Discovery requests pursuant to O.C.G.A. § 9-11-26, 9-11-33,



1

9-11-34, and 9-11-36, and as otherwise allowed by law.

Respondent Coffee County Board is requested to respond to the following discovery request by serving its responses upon the undersigned counsel for Petitioner within forty-five (45) days from the date of service of the discovery with the Complaint in conformance with the requirements of the Georgia Civil Practice Act, or on a more expedited basis as this Honorable Court may so direct and order.

## DEFINITIONS

The Definitions set forth below are incorporated into this request and are to be carefully followed.

1.  When used herein, the following terms shall have the meanings described below:

    a.  The "Contested Election" is defined as the 2020 Presidential Election Contest in Georgia concluding on November 3, 2020.

    b.  "Election Night" is defined as the evening of November 3, 2020, and the morning of November 4, 2020.

    c.  "Dominion" is defined as Dominion Voting Systems Corp.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.

Produce copies of all election ballots for the 2020 Presidential Election in Coffee County, Georgia with redactions of only personal identifying information.

2.

Produce all recordings, videos, text messages, voicemails, emails, and communications of any kind and nature with any Dominion representative that participated in the recount of the ballots in the 2020 Presidential Election in Coffee County, Georgia.

2

3.

Produce all documentation evidencing who was deputized as an official election official in the 2020 Presidential Election in Coffee County, Georgia.

4.

Produce all documentation evidencing what rules, regulations or instructions (other than the Election Code), if any, that the Coffee County Board relied upon to conduct the recount concerning the 2020 Presidential Election in Coffee County, Georgia.

5.

Produce all documentation evidencing who was registered to vote in the 2020 Presidential Election in Coffee County, Georgia.

6.

Produce any and all documentation evidencing any provisional ballots in the 2020 Presidential Election in Coffee County, Georgia.

7.

Produce all documentation evidencing any and all provisional ballots that were counted in the 2020 Presidential Election in Coffee County, Georgia.

8.

Produce all documentation evidencing any and all provisional ballots that were not counted in the 2020 Presidential Election in Coffee County, Georgia.

9.

Produce all documentation evidencing any and all software and/or coding for the

Dominion machines that was provided to the Coffee County Board.

10.

Produce all documents and communications from other Georgia counties evidencing election irregularities regarding the Contested Election.

11.

Produce all documents and communications with the Office of the Secretary of State of Georgia concerning irregularities with vote counts and recounts concerning the Contested Election.

## **INTERROGATORIES**

1.

If the Coffee County Board's response to any Request for Admission contained in Petitioner's First Requests for Admission is anything other than an unqualified admission, state the factual basis for the response.

2.

Identify any representative(s), employees, contractors, and/or agents from Dominion who was/were present during the Coffee County Board's administration of the Contested Election and/or any recount related to the Contested Election.

3.

Identify any representative(s), employees, contractors, and/or agents from Dominion who was present during the Coffee County Board's electronic recount who did not provide an explanation for inaccuracies with the electronic recount for the Contested Election after being asked by agent(s) of the Coffee County Board for such explanation.

4

4.

Identify the representative from Dominion who informed agent(s) of the Coffee County Board that it had to make a decision regarding whether to submit electronic recount results or results from Election Night to the Georgia Secretary of State and state whether such individual contacted the Georgia Board of Elections or the Georgia Secretary of State's Office prior to making that comment.

5.

State whether any representatives from Dominion who were present during the Coffee County Board's administration of the Contested Election and/or during any vote counting for the Contested Election were deputized as election officials in connection with Georgia's 2020 General Election.

6.

Identify who found the 185 ballots that neglected to be counted initially in connection with Georgia's 2020 General Election.

7.

Identify if any  the 185 ballots were either so-called "no-vote" ballots, or "write-in" ballots.

8.

Identify any and all facts that any person on the Coffee County Board has in their possession, custody or control that shows that "NO local election board has the ability to reconcile the anomalies reflected in" the spreadsheet attached to the letter dated December 4, 2020.

9.

Identify any and all conversations that any Coffee County Board official had with Secretary

Raffensperger or any of his employees, staff or agents concerning the 2020 Election recount anomalies and the content of such conversations and the date, time, and parties to said communications.

## REQUESTS FOR ADMISSION

1.

Admit that venue in this action is proper as to the Coffee County Board.

2.

Admit that jurisdiction in this action is proper as to the Coffee County Board.

3.

Admit that jurisdiction in this action is proper as to the Secretary of State of Georgia Brad Raffensperger.

4.

Admit that venue in this action is proper as to the Secretary of State of Georgia Brad Raffensperger.

5.

Admit that Respondents have been properly served with process in this case, or have acknowledged service of process pursuant to O.C.G.A. § 9-11-4 et seq.

6.

Admit that all factual allegations in the Verified Petition are true and correct.

7.

Admit that all exhibits attached to the Verified Petition are true and correct copies.

6

8.

Admit that agents of the Coffee County Board were responsible for administering the Contested Election in Coffee County.

9.

Admit that agents of the Coffee County Board are responsible for totaling the number of votes in the Contested Election in Coffee County.

10.

Admit that agents of the Coffee County Board reported vote totals for the Contested Election in Coffee County to the Georgia State Elections Board on Election Night.

11.

Admit that on November 9, 2020, agents of the Coffee County Board certified the Coffee County Election Night results of the Contested Election.

12.

Admit that agents of the Coffee County Board conducted a hand recount of the votes cast in the Contested Election in Coffee County.

not true
CGG

13.

Admit that agents of the Coffee County Board obtained vote totals resulting from a hand recount for the Contested Election in Coffee County on or around November 17, 2020.

14.

Admit that agents of the Coffee County Board compared vote totals resulting from a hand recount of the raw Election Night results for the Contested Election in Coffee County.

7

15.

Admit that agents of the Coffee County Board, to satisfy the demand of the Georgia Secretary of State, conducted an electronic recount of the votes cast in the Contested Election in Coffee County.

16.

Admit that agents of the Coffee County Board obtained vote totals from an electronic recount for the Contested Election in Coffee County on or around November 30, 2020.

17.

Admit that electronic recount did not match the raw Election Night results or the hand recount for the candidates running in the Contested Election.

18.

Admit that the electronic recount process for the Contested Election in Coffee County did not duplicate the election results for the Contested Election in Coffee County obtained on Election Night.

19.

Admit that the electronic recount process for the Contested Election in Coffee County had discrepancies in the totals.

20.

Admit that the electronic recount process for the Contested Election in Coffee County did not change the totals after 185 ballots were re-run that had not been counted previously.

21.

Admit that the electronic recount process for the Contested Election in Coffee County

produced inaccurate results that could not be repeatedly replicated.

22.

Admit that the electronic vote recount process used for the Contested Election in Coffee County produced a report with a summary showing that more votes were cast in the Contested Election in Coffee County than the total number of votes reflected in the report.

23.

Admit that the Coffee County Board was required to certify election results from the Contested Election by attaching the Elections Summary and certifying it is "a true and correct count of the votes cast" in Coffee County.

24.

Admit that on or about December 4, 2020, the Coffee County Board did not certify the results based on the electronic recount.

25.

Admit that on or about December 4, 2020, the Coffee County Board certified the same results of the Contested Election that it previously certified on November 9, 2020.

26.

Admit that on December 4, 2020, the Coffee County Board, sent the letter attached as Exhibit A to the Petition to the Office of the Georgia Secretary of State.

27.

Admit that the members of the Coffee County Board gave unanimous consent to send the letter attached as Exhibit A to the Petition to the Office of the Georgia Secretary of State.

28.

Admit that the onsite representative of Dominion during the electronic recount instructed the Coffee County Board to "make a decision" on the voting results.

29.

Admit that the onsite representative of Dominion during the electronic recount was not deputized by the Secretary of State of Georgia or any member of the Coffee County Board.

30.

Admit that the onsite representative of Dominion did not contact the Georgia Secretary of State before instructing the Coffee County Board to "make a decision" on the electronic vote recount.

31.

Admit that the Coffee County Board voted to certify the Election Night results only and submitted those results to the Georgia Secretary of State in place of or instead of the election recount results.

32.

Admit that Secretary Raffensperger certified the results of the Contested Election on December 7, 2020.

33.

Admit that a representative from Dominion could not explain the inconsistencies in the

electronic recount tabulations for the Contested Election.

34.

Admit that the Coffee County Board discovered deficiencies in the Dominion electronic election system prior to November 11, 2020.

35.

Admit that the Coffee County Board discovered prior to November 11, 2020, that operators using the Dominion electronic election system could change votes on valid ballots.

36.

Admit that the Coffee County Board discovered that operators using the Dominion electronic election system could change votes on valid ballots without the Dominion system recording evidence of the operator's identity.

37.

Admit that the Coffee County Board provided notice to Secretary Raffensperger on November 11, 2020 of the deficiencies discovered in the letter attached hereto as **Exhibit 1**.

38.

Admit that on or about December 12, 2020, Secretary Raffensperger along with armed election investigators traveled to Coffee County, Georgia and, without a warrant, began investigating the Coffee County, Georgia 2020 election results.

39.

Admit that on or about December 12, 2020, Secretary Raffensperger along with armed election investigators traveled to Coffee County, Georgia and, without a warrant, began investigating the Coffee County, Georgia 2020 election results.

40.

Admit that on or about December 12, 2020, Secretary Raffensperger along with armed election investigators and while in Coffee County, Georgia gathered and instructed high school students from, upon information and belief Citizens Cristian Academy, who were under the age of 18, to engage in another recount of the ballots of Coffee County, Georgia.

This 12th day of December, 2020.

THE HILBERT LAW FIRM, LLC

_____

KURT R. HILBERT
Georgia Bar No. 352877
*Attorney for Petitioner*

205 Norcross Street
Roswell, Georgia 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

12

## CERTIFICATE OF SERVICE

This is to certify that I have attached the foregoing **PETITIONER'S FIRST DISCOVERY REQUESTS TO RESPONDENT COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION SERVED WITH THE VERIFIED PETITION** filed with the Superior Court of Coffee County on the same date as filing of the Verified Complaint, and this discovery shall be served upon Respondents simultaneously along with the Summons and Complaint upon Respondents in accordance with the Georgia Civil Practice Act.

This 12th day of December, 2020.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
Georgia Bar No. 352877
*Attorneys for Petitioner*

The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, Georgia 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

13

CGG 73/83

### COFFEE COUNTY BOARD OF
### ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of Elections and Registration discovered deficiencies in the current Dominion election system. We are writing to ensure you are aware of these and that they may be immediately rectified.

The adjudication process allows the ICC operator to choose how adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate and change votes on all ballots, even if the ballot was correctly and cleanly voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors would duplicate the voter's intent on a new ballot on all races possible. A representative from the Democratic and Republican Party plus a board member, would all agree on the marking or duplicating the ballot. We, also, all 3 sign the top tab of the ballot that we attach to the void ballot so that we may recreate the process and see who was making the changes. We have proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail can be created. This allows ANYONE to make a change to the vote so there



is no accountability.  We also believe that the adjudication process may not be observed from any distance beyond that of the operator of the ICC.  Given the computer screen it is not possible to observe the change being completed from any further distance.

In a Mockup election we were able to count ballot multiple times.  It was during this mockup election we have verified and recreated the above deficiencies

Respectfully,

Ernestine Thomas-Clark

Wendell Stone

Matthew McCullough

Eric Chaney

Delivered by: Overnight and fax  404-656-0513

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SHAWN STILL, in his capacity as a Voter and capacity as an Official Presidential Elector, JANE DOE 1,<br>　　　　Petitioner,<br><br>vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION, ERNESTINE THOMAS-CLARK, in her official capacity as Chairman of the Coffee County Board of Elections and Registration, WENDELL STONE, in his official capacity as vice-chairman of the Coffee County Board of Elections and Registration, ERIC CHANEY, in his official capacity as a member of the Coffee County Board of Elections and Registration, MATTHEW MCCULLOGH, in his official Capacity as a member of the Coffee County Board of Elections and Registration, C.T. PEAVY, in his official capacity as a member of the Coffee County Board of Elections and Registration, MISTY MARTIN, in her official Capacity as Coffee County Election Supervisor, JIL RIDLEHOOVER, in her official capacity as Coffee County Elections Assistant, CORPORATE ENTITY 1,  JOHN DOE 1<br>　　　　Respondents. | ]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br><br>CIVIL ACTION FILE<br><br>NO. _____ |

<u>PETITIONER'S FIRST DISCOVERY REQUESTS</u>
<u>TO RESPONDENT BRAD RAFFENSPERGER IN HIS OFFICIAL CAPACITY AS</u>
<u>SECRETARY OF STATE SERVED WITH THE VERIFIED PETITION</u>

COMES NOW Petitioner Shawn Still, in his Official Capacity as Presidential Elector and

serves upon Respondent Brad Raffensperger in his Official Capacity as Secretary of State of

Georgia (hereinafter the "Secretary Raffensperger" or "Respondent") the following Discovery



1

requests pursuant to O.C.G.A. § 9-11-26, 9-11-33 and 9-11-34 and as otherwise allowed by law.

Respondent is requested to respond to the following discovery request by serving his responses upon the undersigned counsel for Petitioner within forty-five (45) days from the date of service of the discovery with the Complaint in conformance with the requirements of the Georgia Civil Practice Act, or on a more expedited basis as this Honorable Court may so direct and order.

## DEFINITIONS

The Definitions set forth below are incorporated into this request and are to be carefully followed.

1.   When used herein, the following terms shall have the meanings described below:

    a.   The "Contested Election" is defined as the 2020 Presidential Election Contest in Georgia concluding on November 3, 2020.

    b.   "Election Night" is defined as the evening of November 3, 2020, and the morning of November 4, 2020.

    c.   "Dominion" is defined as Dominion Voting Systems Corp.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.

Produce all recordings, videos, text messages, voicemails, emails, and communications of any kind and nature with any Dominion representative that participated in the recount of the ballots in the 2020 Presidential Election in Coffee County, Georgia.

2.

Produce all documentation evidencing who was deputized as an election official in the 2020 Presidential Election in Coffee County, Georgia.

2

3.

Produce all documents and communications from all Georgia counties evidencing election irregularities regarding the Contested Election.

4.

Produce all documents and communications with Coffee County, Georgia election officials concerning irregularities with vote counts and recounts concerning the Contested Election.

## INTERROGATORIES

1.

Identify any and all conversations that any Coffee County Board official had with Secretary Raffensperger or any of his employees, staff or agents concerning the 2020 Election recount anomalies and the content of such conversations and the date, time, and parties to said communications.

2.

Identify all persons, their addresses, telephone numbers, and their ages who participated in the unofficial recount that took place at Citizens Christian Academy, in Coffee County, Georgia, or other school or facility used to count ballots on December 12, 2020.

This 12th day of December, 2020.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
Georgia Bar No. 352877
*Attorney for Petitioner*

205 Norcross Street
Roswell, Georgia 30075
T: (770) 551-9310

3

F: (770) 551-9311
E: khilbert@hilbertlaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have attached the foregoing **PETITIONER'S FIRST DISCOVERY REQUESTS TO RESPONDENT BRAD RAFFENSPERGER IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE SERVED WITH THE VERIFIED PETITION** filed with the Superior Court of Coffee County on the same date as filing of the Verified Complaint, and this discovery shall be served upon Respondents simultaneously along with the Summons and Complaint upon Respondents in accordance with the Georgia Civil Practice Act.

This 12th day of December, 2020.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
Georgia Bar No. 352877
*Attorneys for Petitioner*

The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, Georgia 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| SHAWN STILL, in his capacity as a Voter and capacity as an Official Presidential Elector, JANE DOE 1,<br>　　　　　Petitioner,<br><br>vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION, ERNESTINE THOMAS-CLARK, in her official capacity as Chairman of the Coffee County Board of Elections and Registration, WENDELL STONE, in his official capacity as vice-chairman of the Coffee County Board of Elections and Registration, ERIC CHANEY, in his official capacity as a member of the Coffee County Board of Elections and Registration, MATTHEW MCCULLOGH, in his official Capacity as a member of the Coffee County Board of Elections and Registration, C.T. PEAVY, in his official capacity as a member of the Coffee County Board of Elections and Registration, MISTY MARTIN, in her official Capacity as Coffee County Election Supervisor, JIL RIDLEHOOVER, in her official capacity as Coffee County Elections Assistant, CORPORATE ENTITY 1,  JOHN DOE 1<br>　　　　　Respondents. | CIVIL ACTION FILE<br><br>NO. _____ |

### PROPOSED ORDER GRANTING MOTION FOR EXPEDITED DISCOVERY

Upon consideration of Petitioner's Emergency Motion for Expedited Discovery in the above-captioned matter, the arguments and materials submitted by the parties and for good cause shown, Petitioner's Motion is hereby **GRANTED** in the above captioned matter, and it is **ORDERED** as follows:



EXHIBIT
"C-3"
Blumberg No. 5208

1.  Petitioner's Request for Production of Documents, Requests for Admission and Interrogatories are deemed properly served as of the date of service of the Motion.

2.  Responses to Petitioner's Request for Production of Documents, Requests for Admission and Interrogatories shall be served and the documents to be produced pursuant thereto shall be made available for inspection and copying on or before 11:00 a.m. on December 14, 2020.

**IT IS SO ORDERED** this _____ day of December 2020.

_____

Judge, _____
Superior Court of _____ County
State of Georgia

Submitted by:

Kurt Hilbert, Esq.
The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, GA 30075
Georgia Bar No. 352877
T: (770) 551-9310
F: (770) 551-9311
khilbert@hilbertlaw.com

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

SHAWN STILL, in his capacity as a Voter and     ]
capacity as an Official Presidential Elector,    ]
JANE DOE 1,                                      ]
   Petitioner,                    ]
        ] **CIVIL ACTION FILE**
        ]
vs.                                              ]
        ] **NO. _____**
BRAD RAFFENSPERGER, in his official              ]
capacity as Secretary of State of Georgia,       ]
COFFEE COUNTY BOARD OF ELECTIONS                 ]
AND REGISTRATION, ERNESTINE                      ]
THOMAS-CLARK, in her official capacity as        ]
Chairman of the Coffee County Board of           ]
Elections and Registration, WENDELL STONE,       ]
 in his official capacity as vice-chairman of the ]
 Coffee County Board of Elections and            ]
Registration, ERIC CHANEY, in his official       ]
capacity as a member of the Coffee County        ]
Board of Elections and Registration,             ]
MATTHEW MCCULLOGH, in his official               ]
Capacity as a member of the Coffee County        ]
Board of Elections and Registration, C.T.        ]
PEAVY, in his official capacity as a member      ]
of the Coffee County Board of Elections and      ]
Registration, MISTY MARTIN, in her official      ]
Capacity as Coffee County Election Supervisor,   ]
JIL RIDLEHOOVER, in her official capacity as     ]
Coffee County Elections Assistant,               ]
CORPORATE ENTITY 1,  JOHN DOE 1                  ]
    Respondents.              ]
_____          ]

## VERIFICATION

Personally appeared before me, the undersigned officer, duly authorized by law to administer oaths, came **SHAWN STILL** who is *sui juris,* of sound mound and body, and upon oath, does depose and say that he has reviewed the foregoing *VERIFIED PETITION FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF* with regard to the facts contained therein, and that the facts set forth therein are true and correct where derived from his own knowledge and are believed to be true and correct where derived from the knowledge of others, public information, or from documents that are maintained in the course of business.

This 12th day of December 2020.

By: Shawn Still

Sworn to and subscribed before me

This 12 th day of December 2020.

Notary Public

ROBERT ALEXANDER SINNERS
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires December 7, 2024

# MINUTES OF THE ELECTION LAW STUDY SUBCOMMITTEE OF THE STANDING SENATE JUDICIARY COMMITTEE

## SECOND HEARING
### DECEMBER 30, 2020

Honorable William T. Ligon, Chairman
Senator, District 3
Honorable John Kennedy
Senator, District 18
Honorable Bill Heath
Senator, District 31
Honorable Blake Tillery
Senator, District 19
Honorable Michael Rhett
Senator, District 33
Honorable Elena Parent
Senator, District 42

The Election Law Study Subcommittee of the Standing Senate Judiciary Committee met again on December 30, 2020 to take further evidence of the issues arising from the November Presidential election and the ongoing recounts and litigation (the "General Election"), ongoing issues in the upcoming runoffs for Senate and Public Service Commissioner on January 5, 2020 (the "Runoff Election"), the recounts and audits of the process, the current investigations taking place, the litigation that is moving forward, as well as to address issues relating to the upcoming runoffs.

The Chairman opened the meeting with a prayer for truth.

The Chairman asked for comments on the Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee on the December 3, 2020 hearings. The Report had been previously distributed to the Subcommittee. Upon motion and second, the Report was unanimously approved by the quorum present. During the meeting, Senator Rhett asked that he be recorded as voting against the approval of the Chairman's Report, and the Chairman noted that his dissent would be recorded in the minutes of the meeting.

Members of the committee present were Senator William Ligon, Senator Bill Heath, Senator Blake Tillery, and Senator Michael Rhett. Senator Brandon Beach and Senator Burt Jones also joined the meeting.

## Receipt of Further Oral Testimony

### Cathy Latham

The Chairman called Ms. Cathy Latham to testify. Ms. Latham identified herself as the Chair of the "Under 80,000 Caucus," covering 129 counties in the state of Georgia.  She is also the Chair of Republican Party of Coffee County Republican Party.

Ms. Latham noted that there were problems with the Dominion Voting machines "from the git-go." The problems ranged from non-functioning scanners to a complete breakdown requiring a delivery from another county under police escort on an emergency basis.

Ms. Latham reported that the Secretary of State and the Secretary of State's office had spoken as if they would support the county but had been non-responsive. After "a couple of Zoom calls" with the Secretary of State, the office offered a new scanner, and referred her to Gabriel Sterling. Even though she was experienced, we had nothing but problems. Finally, the scanning had to be completed with unreliable scanners, and then only in batches.

Ms. Latham noted that between the June primary and the November election, her team discovered that the machines could be used to manipulate the ballots during an "adjudication."

Ms. Latham then presented a video, available on YouTube[1], showing an election official using a Dominion voting machine to assign votes randomly in an adjudication procedure.

After the video, Senator Ligon asked her to define an "adjudication."  Ms. Latham noted that adjudications occur when a ballot has been rejected by the machines for a number of reasons – for example, a stray mark on a ballot could cause there to be a need for an adjudication. Anything that causes a machine to reject a ballot will lead to an adjudication. [There has been some discussion that the Dominion Voting machines permit ballots to be marked for adjudication.]

In an adjudication, the operator must determine "voter intent" in reviewing the ballot. But it is impossible to see voter intent when the operator is reading a "QR code." In that instance, the machine determines voter intent with a process that she related to an "auto-correct" function on a computer – it is hard to otherwise determine voter intent on a machine-marked ballot.

Senator Tillery asked Ms. Latham if she was part of the recount process. She said she was and Senator Tillery asked if the numbers in the recount matched.

Ms. Latham noted that there was some variance in the machine counts, but the big difference came in the recount.  She noted that Coffee County could never reproduce Election Night results. She said they re-ran 15,000 ballots five times and received different numbers each time, with a variance of around 50 – at one time the variance was over 100 ballots for the Libertarian candidate.

Senator Heath asked if there was any way to know if a ballot had been adjudicated. Ms. Latham testified that she was not an expert, but that she had been told there was no way to know and that adjudicated ballots were not separated. She noted that, in some cases, if a ballot had a memorable entry,

---

[1] Tim Hains, Election Workers in Coffee County, Georgia demonstrate Dominion Voting Machine Flaw, Real Clear Politics (Dec. 10, 2020) at https://youtu.be/46CAKyyObls (retrieved December 30, 2020).

a poll worker could remember a ballot and that it had been adjudicated. But there is generally no way of recording that a ballot has been adjudicated and no way of auditing the adjudication.

The Chairman recognized Mr. Preston Halliburton, counsel of record for the Giuliani legal team and counsel for Ms. Latham. Mr. Halliburton noted that Ms. Latham was claiming whistleblower status.

Mr. Halliburton asked if the vote from Coffee County had been certified after the recount. Ms. Latham stated they had been certified from Election night, but not from the recount.

Mr. Halliburton asked Ms. Latham to explain the process that led to the failure to certify. Ms. Latham said that ballots were run in batches of four, and the system would identify ballots to be pulled and those were set aside. At the end of the day, those ballots were separately processed. The ballots that had jammed the system were those with QR codes, not the mail-in ballots.

Mr. Halliburton asked if there were other counties that had experienced the same problems. Ms. Latham said he knew of at least eight others counties, one off by a factor of 2.3%, and that six county officials had said they were "forced to certify" by the Secretary of State's office. One other county could not certify but uploaded their data to the Secretary of State's office and were told that the Secretary of State had found a missing batch that "magically matched." She said that each of those counties had indicated they would be willing to sign an affidavit.

Mr. Halliburton asked about the response of the Secretary of State when Coffee County refused to certify. Ms. Latham responded as follows:

> "When they came to Coffee County, they came down on a Friday. They told them that Thursday, I believe, it may have been late Wednesday, that they were coming. Three people from the Secretary of State showed up with guns and badges and handcuffs and two Dominion Tech reps. They came with the intent of intimidation. Luckily, the county attorney stayed with a supervisor so that she wasn't by herself. And basically he said, "You want to recount? We'll do a recount." There were no Democrats and no Republicans there, to watch this recount. And the attorney called to an area private school, got a group of Sophomores. They sat there and divided the ballots into 100 count batches, and they proceeded to scan them and they wouldn't scan. The Dominion Tech, ran into the problems that Coffee County ran into. The Dominion Techs, sat on the floor for two hours with a manual, trying to figure out why they couldn't get the machines to do what they needed to do."

Mr. Halliburton asked if the Secretary of State was responsive or helpful? Ms. Latham said he was "on it" or that Mr. Sterling was "on it," but emails to Mr. Sterling would be met with no response.

Senator Jones asked Ms. Latham if Coffee County have a technician on site from Dominion. Ms. Latham said that there was a Dominion technician but that he had many problems. He did not know that he was supposed to clean the machines after a certain number of scans. Senator Jones asked if the contractors were being paid by the Secretary of State or Dominion. Ms. Latham said she would "love to know" how they were being paid in every county because "That's a lot of people."

**Anne Dover**

Chairman Ligon called Ms. Anne Dover to speak over a Zoom call. Ms. Dover is the Interim Director for Cherokee County Elections. Ms. Dover identified two problems with the E-Net system, which is the system used for registering voters, and checking in ballots. First, Ms. Dover noted that many voters were receiving ballots that were not their ballots. She said that a Cherokee County ballot was sent to a Cobb County address that was not the address of the voter. She estimated that 18 such instances were identified to her office. She believed that for some reason the E-Net system was recording an address that did not belong to the voter. She said that the Secretary of State's office has been made aware of this problem.

The second problem she explained as an issue with a mismatch between the barcode and the identified voter.  A barcode may populate a voter other than the voter identified on the ballot.

When the county identified the problem to the Secretary of State's office, Mr. Sterling dismissed the inaccuracies as being a local issue based on problems with the local scanners or labels, but Ms. Dover believed the problem resulted from some other error.  She noted that the problem seemed to have been corrected over time in the Runoff Election. But Ms. Dover said that she was still not confident that the portal is correct or that the scanning of the absentee ballots is correct.

**John Cochran**

Mr. Cochran identified a statement he had provided to the Subcommittee, which is attached.  Mr Cochran identified himself as an automation engineer with extensive experience in data validations and familiar with complex software applications designed to control "items" in U.S. industry – Mr. Cochran said that each ballot is an "item." He has authored and executed hundreds of documents related to the validation of manufacturing process systems and equipment.  He expected to see documentation around the validation of the "purported risk limiting audit" in November; he saw "saw very little evidence of such documentation." He noted that he would refer to the audit as a "purported risk limiting audit" because he did not view what happened as a real risk limiting audit.

During his three days working as an observer and monitor (November 14, 16, and 17), Mr. Cochran witnessed the data collection and reporting for 410,000 ballots in Gwinnett County during the statewide risk limiting audit.  Mr. Cochran noted that he made specific observations regarding the "Arlo" system – the system that was used for the "purported risk limiting audit." The Arlo software had never been used in Georgia before. We had no experience with it.

Mr. Cochrane noted that the Arlo system was purported to be an independent auditing system that was used to compare manual vote counts to the Dominion system count in Georgia. Mr. Cochran noted that the Arlo system is owned by Voting Works, a non-profit company of approximately 10 employees based in California that is primarily funded and sanctioned by the Department of Homeland Security (DHS) and the Cybersecurity and Infrastructure Security Agency (CISA). The former director of CISA, Chris Crebbs, described the Arlo software as being "open source" in order to enhance security.

Mr. Cochran described how the Arlo system was used with tallying computers in each county, and how the data was uploaded and tabulated centrally. Mr. Cochran noted all the information was "phoning home to the mothership, and … connected to the internet via local wireless network." Mr. Cochran noted that he asked a visiting consultant at the Gwinnett site, who was very familiar with Arlo, and was obviously responsible for the training of the workers there, about the location of a local Arlo server, and if local backup tallies were being kept. She responded that there were no central collection

server computer or local tallying application located in Gwinnett County or any other County in the state, as far as she was aware.

Chairman Ligon interrupted to confirm that there were no local records of the counts being kept, and that the Secretary of State's office was responsible for confirming its own results. Mr. Cochran confirmed that was his understanding.

Mr. Cochran referred to that process as a "top-down" auditing process, and it's not a preferred method of formalized validation, which deploys a bottom up approach. that whereas an audit system should be a "bottom up" system.  As Mr. Cochran put it, "The numbers from the bottom challenge the numbers at the top, not the numbers at the top tell the bottom what they counted. That's just backwards."

Mr. Cochran also noted that since the software was "open source," it could be seen and analyzed by outside sources or be easily intercepted. He also noted that the Voting Works webpage contained at least one code example that could be used to hack Arlo applications. That example includes information on how to set a programming variable to grant administrative access to any user who turns that access on.

Mr. Cochran noted that he did not believe that a bonafide audit was actually performed. A true audit would collect additional validation data in the form of independent backup data from the 159 counties. He noted that the information for such an audit was required by law to be retained and that Georgians will have the opportunity for the next 23 months to perform a more formalized, actual validation of the presidential race vote count that would be a far less intensive data validation process than counting every vote again. He noted that his affidavit contained a suggested procedure at the end of his written statement.

Finally, Mr. Cochran asked the following questions:

1.  Is there a record of who actually performed the final tally at the Secretary of State's office using the central servers cloud application?
2. Were any of these central server administrators connected to Dominion as employees or consultants?
3. Were there any electronic connections to Dominion systems or Dominion data in any way during the Arlo audit counts?
4. Were the Arlo server administrators comprised of properly trained elections officials who were employees of the state of Georgia, or appointees?
5. Were any Arlo server administrators outside consultants whose names and credentials can be shared with the public?
6. What was the process of collecting the Arlo data at the Secretary of State level?
7. Was that process witnessed by Democratic and Republican monitors?

Mr. Cochran noted that the Arlo audit could have been compromised and the fact that it was web-based and centrally tallied made it an unreliable audit. He implored the Subcommittee to obtain proof that there were no attempts to hack or manipulate the Arlo vote totals in each county or at the state's server and to share the results of a real audit publicly.

**Marci McCarthy**

The Chairman called Ms. Marci McCarthy, who identified herself as a successful business woman in the cybersecurity industry.  In 2020, Ms. McCarthy served on the voter review panels (VRPs) in Dekalb County during the presidential primary in June, the August runoffs, and the General Election. She shared her belief that the processes and controls were either altered or removed entirely for the General Election, even when they had been in place in the June presidential primary and in the August runoff.  Ms. McCarthy noted that the process changed from being a two-person bipartisan panel to a four-person non-objective panel, which resulted in two pairs of VRPs operating independently.

Ms. McCarthy also noted that, when adjudicating ballots via scanned images on the computer workstations, there were no system or physical controls and no audit capabilities either. She noted that as members of the VRPs during the General Election aftermath, they could not protect the changes that we were making to the General Election sections of the ballot. She also observed lax security, such as computer IDs being shared amongst election personnel that made it impossible to track and audit the work and the personnel responsible. Finally, she noted that the duplication of the absentee ballots and the military ballots did not have witnesses as required by Georgia election code.

Chairman Ligon asked if a new ballot was created for each absentee ballot, and Ms. McCarthy said that a new ballot was created through the system using the scanner. These ballot duplications were done by County Officials in a separate location and at a separate time, independent of VRP oversight.

She believed the Runoff Election VRPs will be conducted in the same manner. Ms. McCarthy noted that, while observing the process, she found it "troubling" that the purportedly "nonpartisan" VRPs were operating independently for five days, and the most common error was an over-vote of all five Democrat candidates. There will be no audit trail to show the changes, who made the changes, and when the changes were made.

Ms. McCarthy again repeated that there were no controls on the computers because of the common and shared passwords. As a result, there was no way to track who actually logged onto these computers, who used them, what time, when the work was performed, and how long the work was being done. Ms. McCarthy concluded that, "[w]hether intentional or plain incompetent, this effectively made it impossible to audit the work of these individuals to detect fraud and adhere to Georgia's election code."

With respect to the absentee, military, and UOCAVA ballots, those ballots had been transcribed under the supervision of the VRPs in the earlier elections, but were duplicated by unsupervised election workers in the General Election.  1,878 out of 2,500 military ballots were "transcribed" by those officials without bi-partisan supervision.

It is her understanding that this process will also be used in the Runoff Elections.

Ms. McCarthy expressed her concern that there are no checks and balances in the absentee ballot authentication process, and no defined escalation procedure.  She said all decisions were "ad hoc" decisions by a County official.  She also noticed other basic errors that led to vote miscounting – the wrong ballots being used and tabulated, even after discovery.  Finally, because outside organizations that were aligned with the Democrat party were allowed to participate in the VRPs, any decision was voted with many votes aligned against the Republican.  She concluded that there was significant bias towards Democrat votes in this configuration.

Ms. McCarthy said that, as a cybersecurity professional, she was appalled at the lack of system and physical controls that are not in place protecting the right to vote.  She said that she believed that if an audit were to be performed on the process, it would receive an "F" because it failed to protect voter's intent.

## The Story that the Data and Data Charts Reveal about the 2020 Election

### Jovan Hutton Pulitzer

Mr. Jovan Hutton Pulitzer identified himself as an inventor and pattern recognition expert, and part of the Gold Institute for International Strategy out of Washington, D.C.  Mr. Pulitzer noted his patents in the development of "machine readable code" and discussed how to "read" the ballots without needing to understand the code.  Mr. Pulitzer noted that he had a basic patent on machine reading QR codes or other patterns and about 200 patents in a portfolio stemming from his basic inventions.  His patents are licensed on all mobile devices (except Huawei) on approximately 12 billion devices globally.  The Dominion Voting machines could tell one story, but Mr. Pulitzer noted that his system would permit him to read the ballots and confirm whether there were inaccuracies in the tabulation.

Mr. Pulitzer noted that any time a paper was bent, folded, pushed or written on by hand, a "kenematic artifact" was created that could be read by machines.  If a ballot does not have the proper kenematic artifacts, it should be considered counterfeit. He noted that this is not new science, and if applied to detect counterfeit ballots, it would give more confidence to the people.

Senator Brandon Beach asked if the Mr. Pulitzer could assess whether ballots were counterfeit by looking at them. Mr. Pulitzer replied that he could tell if they had been folded, if they were counterfeit, whether they were filled out by a human hand, whether they were printed by a machine, or whether they were batch fed continually over and over.

Mr. Pulitzer noted that every mail-in ballot involves the printing and folding of the ballot. It is tracked through the post office, and sent to houses, where it is imprinted with a pen mark. Each imprint creates a breaking of the fiber, and a kinematic artifact, which can be read by a computer in ways that a human eye cannot see.

Mr. Pulitzer described the differences in the imprints made by a human hand and an imprint made by a machine. Each different action on a ballot creates a trail that can be traced.

But Mr. Pulitzer noted that when a ballot is "adjudicated," it eliminates the paper trail, and prevents an audit. He noted that it was "sad" that the process of protecting voters was not even up the standards that we expect from retail merchants. He asked why the Secretary of State was playing "hide and seek" with documents that are the property of the taxpayers, and subject to inspection for at least 22 months under Federal law.

Mr. Pulitzer said that possession of the ballots would show the "artifact" that the voter intended – he noted that all prior testimony had showed that the Q-code was preventing the machines from reading the ballots. He noted that the Q-code should not ever fail, but he suspected that the Q-codes may have been printed in a way that made them fail.

Mr. Pulitzer posted a picture of two ballots – both Fulton County – one with a bar code and one without. Ballots without a bar code, a key material difference between the two, are suspect. It was

unclear why a ballot would not have a bar code, but he observed that the rejections were more common in certain areas – he noted that was a "trick" that he had seen before.

In addition to the bar code, Mr. Pulitzer noted that there were different codes at the top of the ballots. He also noted that the machines that were reading the ballot were calibrating their reading by reference to a single point in the middle of a crosshair. He noted that the scanning by the machines were calibrated from a single point that was the signaling device for the ballot. Due to the material differences on the ballots, it was evident why so many ballots were rejected by the machines and sent to adjudication.

Senator Bill Heath asked Mr. Pulitzer about the "fiducials" (the boxes printed on the sides of the ballots), and Mr. Pulitzer described his view of what they added to the tabulation process. Mr. Pulitzer noted that if the machine was not calibrated correctly, it would perform a different function.

But Mr. Pulitzer noted that it would be difficult to audit the ballots that had been "adjudicated," but the original ballots could be reviewed. With his process, he would be able to determine with 100% accuracy what the voter intent on the ballot was and if the ballot was legitimate.

Mr. Pulitzer noted that he had a problem with the extraordinarily high adjudication rate. Fulton County reported 106,000 adjudications out of 113,000 ballots. He noted that was a failure in the process of operating the Dominion voting machines. He noted that the adjudication rate for the entire nation in 2016 was about 1.2%, but Fulton County was reporting adjudication rates of 93.6%. He suspected that those rates may be high because of the mismarked printing on the ballots.

Senator Beach commented that he believed there was a well-coordinated effort with several groups to commit widespread and systemic fraud from out of state voters, felons voting, and drop boxes change of custody. He noted that the video of State Farm Arena and the ballot shuffling made it hard to imagine that something fraudulent was not in evidence. He asked Mr. Pulitzer if he could identify the counterfeit ballots if the ballots from State Farm Arena were subpoenaed.

Mr. Pulitzer said that he would be able to tell which ballots were fraudulent with 100% accuracy. The more ballots he could process, the more accurate he could be in his assessment. Mr. Pulitzer noted that there is a forensic difference between a ballot that was officially printed and something that ran on a high-speed press – between a ballot completed by a human or one completed by a machine. With the ballots, a lot of information would become clear.

Senator Rhett questioned whether the information being discussed was based on personal experience working with election machines. Mr. Pulitzer responded that his techniques had not been used on ballots before, but it is exactly how counterfeit money is detected. He said that his techniques could determine if the ballots were printed in China, or if the person handling it was a smoker. He believed that this technology would be useful if applied to the physical ballot.

The Chairman thanked him for his testimony. Mr. Pulitzer said that he would donate his time to determine the authenticity of the physical ballots for the State of Georgia.

Later in the day, Mr. Pulitzer was given a couple of minutes extra time to provide a real-time announcement. He stated that some white-hat hackers had been able to get into the poll-pad system while the Run-Off Election was taking place at two different locations. It was wi-fi enabled and was

sending and receiving data. He noted that it only took one device to be connected and that other devices could daisy-chain off that connection.

He stated that this could allow data to be exchanged or that data could be siphoned-off, or that data could be modified and fed right back into the system, what he referred to as a "pump and dump in real time."

## Garland Favorito

Garland Favorito identified himself as career professional in information technology, with 40 years of experience. Sixteen years ago he co-founded the non-partisan VoterGA, and has been working on election integrity effort Georgia ever since. Mr. Favorito discussed the litigation history that led to the new voting systems that hide the votes in QR codes. While the Secretary of State purchased Dominion Democracy Suite 5.5, the BMD (ballot marking device) system, U.S. District Court (Judge Totenberg) found deficiencies in such a system.

In response to Senator Beach's question, Mr. Favorito noted his group is currently seeking a motion to compel Fulton County to produce the ballots in question. Mr. Favorito was a State Farm Arena tabulation observer, an audit monitor, and a recount monitor. In his role as the elections director of the Constitution Party of Georgia, he helped coordinate hundreds of volunteers in dozens of counties to monitor the recount and the audit.

In Fulton County on Election Day, Mr. Favorito noticed an abnormal spike of 20,000 votes for Biden. He has not received a response to his Open Records Request for the interim results explaining that spike.

After the election, as an Audit Monitor, he noticed three boxes and stacks on tables of 100% Biden ballots. That is mathematically improbable beyond the eighth degree, if not impossible.  He testified that four auditors detected potentially fraudulent ballots – not creased from being mailed, not marked with writing instruments, and of a different paper stock. Mr. Favorito immediately filed an Open Records Request to view those ballots in the custody of the elections department.  His request has so far been ignored.

Mr. Favorito noted that the original election results accumulated votes that were hidden in a barcode. That barcode is 100% unverifiable to the voters in the state of Georgia. A recount is effectively meaningless in Georgia, because it simply rescans the same bar codes.

Mr. Favorito also pointed out three fatal flaws to the so-called "hand count" audit:  First, there was no independent monitoring of the count. Second, the data upload was not monitored at all – some counties, such as Fulton, actively prevented observation of the data upload. Third, as Mr. Cochran testified, the counties were simply forced to enter data into the Secretary of State's Arlo system, which then reported to them what the results were. The counties did not have the tools for a bottoms-up audit.

Mr. Favorito discussed other issues that called the audits into question. He also discussed the Dominion system anomalies. In Spalding County, an upload to the Dominion voting machines on the eve of Election Day caused a two-hour delay in opening of the polls. There was no audit trail of that upload.

Mr. Favorito has asked for a forensic exam on the KnowInk poll books. In response, the Secretary of State has resisted any requests for independent audits – or independence by the county officials they have tried to get fired or whom they have intimidated.

Mr. Favorito repeated the issues that led to five different totals in Coffee County, in ways that even Dominion voting techs could not explain. Mr. Favorito requested an independent forensic exam; the Secretary of State has opened an investigation.

Mr. Favorito noted that the Dominion machines flipped 37 votes from President Trump to former Vice President Biden. Mr. Favorito recited the documentation supporting that finding.

The results were in an unrebutted affidavit from the elections director of Ware County. Again, there is a need for a forensic exam. A fact check by *USA Today* was not done with any input from Mr. Favorito. *USA Today* offered to print his rebuttal and then reneged on that.

Mr. Favorito was at State Farm Arena, where he saw multiple violations of Georgia law.  Monitors were not in places where they could monitor the room; it is curved and impossible to see around the corner. There was a skirted table, hidden ballot bags, starting and stopping the scanning without notice. All these are violations of state law.

Immediately after the unwatched ballots were scanned, Vice President Biden's tallies jumped by 136,000 votes with only 29 votes added for President Trump. Mr. Favorito noted that the change was statistically improbable and noted that David Cross, a later witness, would discuss that.

Mr. Favorito noted that the Secretary of State had tried to debunk the video of State Farm Arena with statements. But the statements have not been verified; meanwhile the video shows the workers repeatedly stuffing the same ballot stacks through counters, scanning continuing after the monitors left. Ballots are not usually held behind skirted tables; the ballots had already been separated from the signed envelopes. Mr. Favorito noted that the unlawful scanning involved tens of thousands of thousands of ballots. The evidence has been presented and not rebutted.

Mr. Favorito's group has filed suit against Fulton County to inspect the ballots. We want the independent forensic exam that Mr. Pulitzer has described, and we want the digital ballot images and the election reports. All of that should be public, but it is not, because Georgia does not operate transparent elections. That has got to change.

Mr. Favorito observed that the Secretary of State seems determined to "cover up" for Fulton County. He noted his disgust with the cover-up, the actions, and HB 316 that created the new voting systems.

### David Cross
Mr. Cross identified himself as a person who has been doing investment planning and management in Duluth, Georgia for 30 years. He identified himself as a private citizen who has been exploring the facts about what happened. He asked why he was taking time from running his business to do the work of the Secretary of State? That's inexcusable.

Mr. Cross noted that he downloaded the entire data feed from election night from the Edison feed, which comes from Scytl, which is then reported by the Secretary of State. Using his charts, Mr.

Cross identified the spikes in four states that created the margin of Vice President Biden's claim of victory in those states.

In Georgia, Mr. Favorito had noted a spoke of 136,000 votes for Biden and 29 or Trump. At around the same time, an upload of Michigan data attributed 141,000 votes for Biden, and 5,900 for Trump. In Wisconsin about the same time of night, 143,000 votes were attributed to Biden, and 25,000 for Trump. All of these numbers are statistically impossible and should be verified. Mr. Cross noted that the Secretary of State has refused to release original timestamped data. Mr. Cross observed there was no transparency from the Secretary of State.

He also testified there was no transparency in the second recount at the Georgia World Congress Center. While 13 scanners were set up, the monitors could not see anything because the scanners were running too fast, and the font on the machines was too small for anyone to read. When he noticed a bag of unsecured ballots and called witnesses over to observe what he had seen, he was removed by armed guards from the GWCC; the official alleged that he had kicked a bag because he had pointed to it with his shoe. Fortunately, a reporter took a picture of the unsecured bags.

Mr. Cross said he saw nine unsecured bags that day and believes those bags averaged about 1700 ballots per bag, which therefore may have totaled over 15,000 unsecured ballots, enough to have caused Fulton County to be de-certified. Those ballots alone likely accounted for more than the difference separating the presidential candidates.

Mr. Cross showed a photo of Bernard Talmadge, a known ballot harvester who is operating in Georgia. He was arrested in Indiana, but charges were dropped because his known harvesting could not have affected any elections there. But he has issued hundreds of checks for $75 from his companies – The Operations Group, The Ardleigh Group, and maybe others. Copies of checks had been discovered by Mr. Cross and were presented to the Subcommittee; he was caught in Indiana, and charges were brought against people that worked for him, but they were ultimately dropped because the authorities said it couldn't have really affected anything.

Mr. Cross noted that an investigative reporter named Tom Lauder reported that people who had worked for the Operations Group and the Ardleigh Group were paid $15 per hour to produce ballots, with a quota of 10 ballots per hour, which works out to one every six minutes. Mr. Cross reported on how improbable it was – even in an apartment building – to obtain six registrations every six minutes.

Mr. Cross reported that, according the Federal Election Commission, Mr. Talmadge's companies have taken in $9.1 million for field operations, which could harvest more than 6 million ballots at the known rates above.

Mr. Talmadge's companies have taken in funds from multiple entities. Mr. Cross pointed out that the Maine Democratic Party gave Mr. Talmadge's companies $3 million – but the Maine Democrats did not even raise $3 million during the 2019/2020 election.

Since Mr. Talmadge is known to be operating in Georgia, Mr. Cross solicited information from 400 checks cashing companies and liquor stores – two called him back and sent him copies of checks from companies associated with Mr. Talmadge, using different names, such as McDream Enterprises, but having the same bank account numbers. Mr. Cross asked why other law enforcement agencies were not interested.

Mr. Cross also called the Subcommittee's attention to a video circulating on the internet of a discussion with a Chinese printer supposedly printing ballots for the General Election in Georgia. The authenticity of the video could not be proven.  But the printer alleges in the video that it would be difficult to produce a ballot using magnetic ink. Mr. Cross suggested that an independent forensic review of the ballots should review the paper stock, but also look for any traces of magnetic ink.

Finally, Mr. Cross noted that, by simply doing his own investigation, he had been able to find states with more voters than persons of voting age in the population of that state. Mr. Cross noted other areas of voter fraud being solicited in other states. Mr. Cross presented other information to the Subcommittee that would demonstrate that laws were being ignored or deliberately broken.

### Debbie Fisher (Military Votes)

Debbie Fisher testified that she was from Cobb County and part of a VRP during the General Election.  She has also served as a monitor during the recount, the hand recount, and the last recount. She was currently monitoring the absentee ballot processing in Cobb County at Jim Miller Park.

On November 16th, during the recount, Ms. Fisher was serving on a VRP and reviewed the recount of 298 military ballots on one day. Each was neatly filled out in "perfect bubbles" with no stray marks, no X's, and no check marks. It appeared that about 90% of them had no paper folds. She also noticed that there were only two of the 298 that had blue ink versus black ink.

The watermarks were supposed to be transparent, but appeared to have been copied on some of the ballots. Based on all of these out of the ordinary features, she challenged the ballots as inauthentic.

Ms. Fisher also observed that 80% to 90% of the military ballots were being marked for Vice President Biden. She surmised that the percentage rate was out of the ordinary for military personnel from Cobb County and would have expected it to be closer to the actual allocation of votes in Cobb County, which had traditionally been more evenly divided between parties.

Upon further investigation, she determined that only Fulton County reported military ballots as a separate category, and had reported that 93% of the transcribed military ballots were cast for Vice President Biden. Ms. Fisher found that statistically improbable.

As she has gone through three processes, the number of ballots reported as military ballots has shifted. Between the first recount and the latest recount, the number of military ballots recorded decreased by 300. She also noted that she was told that the military ballots had been received "electronically" but had not been able to see an actual ballot with a signature for those ballots. Thus, it was impossible to verify if the ballots were real or not.

Senator Rhett asked if she was aware that Cobb County has passed several audits, including just recently a signature audit where they received a 99.99% accuracy rate?  Ms. Fisher responded that she was aware of that claim.

Senator Rhett asked if she was aware that the audit was supervised by the Secretary of State and the Georgia Bureau of Investigation. Ms. Fisher responded that she was aware when the GBI brought the boxes full of ballots including an unmarked box that wasn't the envelopes. She guessed that box contained the military ballots that she complained about. Ms. Fisher noted that the audits, including the last signature audit, were conducted without oversight and noted that she did not believe them.

Senator Beach asked if she had reported what she had seen to the Secretary of State. Ms. Fisher responded that she had reported her observations to the Secretary of State on three separate occasions and had not received any response except acknowledgement that her comments had been received.

Ms. Fisher took the liberty of amending and clarifying her comments in response to Mr. Beach. She noted that, with respect to the signature audit, she had observed some of the early voting and she knew that many mail-in ballots lacked the necessary "red ink" initials that would indicate that a poll worker had verified the signature.

Senator Beach thanked her for her submission but noted that a common theme was that everyone who had presented testimony had said they had reached out to the Secretary of State's office and got little to no response.

## Irregular Activities by Election Workers

### Sandra Metts

Sandra Metts worked as a poll worker in the last two elections in Clark County, Athens, Georgia on November 3rd and in a subsequent runoff at two different polling stations. While at those locations, she witnessed poll workers attempting to register out-of-state voters, poll workers actually registering voters on the same day of the election, in violation of state law, poll workers requesting favors or bribes for registering voters, and other voting irregularities.

Ms. Metts said she had called the Secretary of State's office to report these issues and has still not heard back. However, she was threatened with not being re-hired because the Secretary of State reported that she had complained. She tried to call the Secretary of State to report that her complaints were being used against her, but she did not receive any response.

Ms. Metts also reported that she has seen poll workers appearing to "find" ballots in the back room, and voters who requested same-day ballots when they had already been recorded as having cast an absentee ballot. Ms. Metts also described how easy it would be to obtain an absentee ballot under the name of another voter.

### Salleigh Grubbs

Ms. Salleigh Grubbs identified herself as being from Marietta, Georgia. Ms. Grubbs said she was present for the recount at Jim Miller Park on the 13th of November, and she had already submitted two affidavits.

But she noted a "recurring theme" – the Secretary of State's office. She said she was present when the calls came in about shredding at Jim R. Miller Park. Ms. Grubbs said she had lots of details, but that the details were being dismissed. When the observers and citizens she was working with started asking questions, those questions were being dismissed – she referred to the prior question from Senator Rhett. She said that it did not matter how much evidence they presented, they were being met with questions like, "Were those actual ballots in there?"

Ms. Grubbs noted that, in an election, all the boxes, including the boxes in question, were sealed with "evidence tape," which is called evidence tape because those papers are potential evidence. In her view, anything that goes in the evidence box is evidence. There should have been no shredding.

She noted that Jim R. Miller Park is a fairground with differing exhibit halls – A, B and C. When she went to observe, she was kept from going into Exhibit Hall B and was told that no election related activity was going on in there.

She stated that monitors were relegated to areas six feet away and "scolded, …. "yelled at," … "belittled" and "harassed" by the County officials.

Jim R. Miller Park is not a government facility – it was only being used for election purposes in this election cycle. There could not have been election material from prior elections being shredded from that location.

There were two days of voter review panel activity going on in Exhibit Hall B with no Republican representation at all. She was purposely told not to go in there. When she heard that documents were being shredded at Jim R. Miller Park, having served there as a poll watcher, she left work and followed the shredding truck.

She called 911 and went to the police to make a report of the election fraud, but was told that the police would not even take an incident report. Protocols had been changed 10 minutes before they reported the shredding incident and that protocol suddenly required all election fraud to be reported to the Secretary of State. The Secretary of State reported that the shredding was "routine."

Grubbs noted that the Secretary of State's office was doing nothing but obstruct the drive for transparency for the election. She specifically mentioned Gabe Sterling and Jordan Fuchs. She noted that Gabe Sterling had posted on Facebook that "Iran has worked to foment division in our nation. Those continuing to claim the election was stolen are supporting the tactical actions of Iran."

"When we have seen the fraud, we have been lied to, we have been distracted, we've been held up and we're tired of it. And it's time that you people stand up."

Ms. Grubbs said she has emailed legislators. She has formed an activist group called the Angry Patriots of Georgia. She said she has begged the Legislature to come into session and noted that several people had given time and dollars to try to get the points about the fraud across to the legislature.

She noted that she had sent every legislator a DocuSign document – many in the legislature did not even bother to open it. She asked if anyone cared and if anyone was listening to the people.

Ms. Grubbs said she had backed her phone up in five different places to preserve what is on it. She is afraid it will be stolen. But she noted that she is now banned from taking her personal phone into Jim R. Miller Park. She asked if the election is so clean, why is it impossible to record the tabulation? State law does not mandate that voters give up their phone to watch tabulation. Ms. Grubbs said that the cover-up indicated fraud, and she believed the Runoff Election was being operated in a fraudulent way and should be stopped.

**Testimony of Rudy Giuliani, former mayor of New York City, former U.S. Attorney**

Mr. Giuliani noted that he had testified before the Subcommittee in the prior meeting on December 3, 2020. He noted that he had listened to some prior testimony and found it credible.

Mr. Giuliani noted that the Secretary of State had said that this election was the cleanest election in history; Mr. Giuliani submitted that this was the dirtiest election in history.

Mr. Giuliani noted that, based on the evidence he had seen, "Whatever the result, this election is going to live in history. This is going to be the election that will be the dirtiest election, the most crooked election, the most manipulated election in American history." Mr. Giuliani noted that more evidence would be gathered and that it would involve "international connections." Mr. Giuliani concluded his introduction by stating:

> "[P]eople are going to look back on this and they're going to say, 'What did you do about it?' I mean, a year from now, and two years from now, people can look back on it and say, 'What did you do about the fraud? Did you just sit by and let it happen?'"

Mr. Giuliani made the following observations in the course of his testimony:

- The activity in Georgia was organized and appeared to be coordinated with activity in other states at the same time that Fulton County election officers were unlawfully scanning ballots at the State Farm Arena.

- With respect to the tabulation and recounts, Mr. Giuliani noted that the counting of ballots had to be public and had to allow inspectors but that the inspectors were being thrown out in violation of law. Mr. Giuliani suggested that ballots that were counted without inspectors present were illegal votes and should be thrown out.

- Mail-in balloting is subject to fraud, as had been predicted in the bi-partisan report authored by former President Jimmy Carter and former Secretary of State James A. Baker.  76% of European countries do not allow mail-in ballots.

- The violations are occurring in the current Runoff Election. Unless corrective action is taken by the Legislature, the violations will recur.

Mr. Giuliani noted that the U.S. Constitution gives the plenary authority over the federal election to the State Legislature: "the buck stops here." The "consent decree" negotiated by the Secretary of State was an unlawful usurpation of the State Legislature's authority. Mr. Giuliani asked whether there was anyone who believes that Georgia submitted the correct votes. Mr. Giuliani noted that, as a lawyer, he would not counsel a client to certify those numbers because they were not true and correct. He referred again to the videotape of illegal ballot stuffing at State Farm Arena and noted that alone should convince anyone that the certified numbers were not correct.

Mr. Giuliani noted that:

> 2,560 felons voted in Georgia unlawfully.
> 15,700 voters had changed their address before the election.
> 40,000 voters failed to register before they voted.
> 10,315 voters were dead before they voted, based on their obituaries.

Based on his observations, Mr. Giuliani noted that the number submitted to Washington was a lie. And he noted his belief that the Secretary of State was engaged in an unlawful coverup.

Finally, Mr. Giuliani noted that his team had tested the Dominion voting machines in Michigan and they were insecure:

> "Those machines are like Swiss cheese. You can invade them. You can get in them. You can change the vote. You can fractionalize the vote. Why would you ever fractionalize a vote?  There's not such a thing as half a vote or a quarter of a vote. Why would you have an election machine where you can change the vote? The liars who run Dominion have said, you can't change the vote. ....  Read their manual. Their manual says you can change the vote. Why should you be allowed to change a vote in a voting machine?  Once that vote goes in there, that's it. You shouldn't be able to change it. You shouldn't be able to move it from Trump to Biden or from Biden to Trump. Well, you can do that in the Dominion machine. Our people have inspected 22 Dominion machines."

Mr. Giuliani noted that his legal team had submitted affidavits from ex-military experts who had examined the machines all of whom had worked or the National Security Agency or the United States government. He noted that there were no consistent vote counts based on numerous uses of the machines. He noted that operators of the Dominion Voting machines are able to change votes between candidates. In the 22 machines examined so far, his inspectors have identified 6,000 votes that were transferred from Vice President Biden to President Trump.

Mr. Giuliani noted that every time his team would count using the machine, they would get a different count. They were able to change votes, massive number of votes, from one side to the other. He noted that his team had identified 6,000 vote changes on 22 machines, how many more machines needed to be observed?  He also questioned why the Secretary of State would not allow a transparent review:  "We'll find out really fast if this was the cleanest election in history, or the biggest scandal in terms of voting in the history of our country."

Mr. Giuliani called the prior recount efforts a "joke" and an "insult."  He noted that counting the same phony ballots over and over would always produce the same result. Examining the ballots was the only way to verify the actual process, and that was being inexplicably barred by the Secretary of State. He asked why there would be any reason to not permit the review unless the Secretary of State was actually uncertain as to whether there were votes created by one party and submitted in the manner documented in the State Farm Arena video.

Mr. Giuliani noted that Vice President Biden gained a 138,000 vote advantage during the period of unmonitored counting at State Farm Arena.

Mr. Giuliani concluded by noting the constitutional implications of not following the State Legislature's mandated Election Law.  He noted that the Founding Fathers envisioned disputed elections, cheating, stealing, and they made a choice. They made a choice of where to put the responsibility in a difficult situation like that. He noted that Article I, Section 4 of the U.S. Constitution made the State Legislature the sole entity responsible for determining the manner of election contests –

"not the Governor, not your Secretary of State who's covering up everything he can cover up, not anybody else, but you."

Mr. Guiliani asked that the Legislature use its power under the U.S. Constitution. He noted that the Constitution takes the Governor out of the process, and that the Legislature could call a Special Session at any time to correct the imbalances created by the fraud and irregularities. He also noted that it was the responsibility of the Legislature to stop the improper conduct of the election.

Mr. Giuliani noted that there was more than sufficient evidence of the impropriety -- dead voters, felons, phony ballots, phony mail-in ballots. He noted that the President ran behind the State legislators in Georgia by 4%-6%, despite his popularity, and ran ahead of state legislators in other states.

Mr. Giuliani said it was a question of courage and challenged the Georgia Legislature:

> "Do you have the courage to [fulfill your obligations under] the Constitution of the United States put on you to save our people from fraud? To save the reputation of the State of Georgia from … certifying a phony vote that led to the wrong result in an election -- which will be the verdict of history. Or, do you have the courage to put up with what's going to happen if you, in fact, change that certification and do the right thing? You'll be attacked. You'll be pilloried. You'll be described in all sorts of horrible ways, but you will wake up the next morning and look in the mirror and you'll be able to say, 'I did the right thing.'"

### Christine McKinnell

Christine Mckinnell identified herself as a resident of Cobb County and asked the Subcommittee to look into the "poll pads" and the software that accompanied them. Ms. McKinnell noted that during the election, she was a poll manager in Cobb County. Ms. McKinnell confirmed that poll books were always wifi-enabled, syncing in real time with local boards of elections. They would scan voter identification and reveal to the poll worker the voter's party of choice.

When she went to her assigned precinct, she found that a technician named Lucas was in her "enclosed area for the entire day," despite the fact that she was not told in advance that he would be there, which was most unusual. She did not know whom he worked for either. Cobb County had its own technicians. He sat in one position down the line of poll pads most all day and was constantly using his cell phone even though cell phones were not supposed to be used in that area. Lucas did not know how to remedy the errors when they arose. There seemed to be no consistent way of dealing with the issues.

Ms. McKinnell described issues with the poll pads, ballot cancellations, and default error screens that she had not previously seen and were not in the training manuals. Though not entirely clear in her testimony, she was sharing how the poll pads would almost immediately show that the voter had voted even though they had not even had time to place a vote. She saw that same screen multiple times. Later, when she was working the "voter fraud line" in Buckhead, she received multiple calls from poll workers, managers, and assistant managers who had gotten the same screen she had seen. She noted that the error screen appeared to be associated with Republican voters only. She reported that one specific poll manager who called said that he received this screen on over 20 voters. It stuck out to him

because the voters all were young. They seemed to be first-time voters. They were in their late teens, early twenties.

She also reported on voters who found out after voting that their votes had not been recorded.

Ms. McKinnell reported that one caller noted a difference in the QR codes in Dunwoody -- Democrat ballots had one QR code on them, and Republican ballots had two QR codes.  And that they were directed to different scanners.

Ms. McKinnell noted that she had "logged in a lot of issues" and she wanted to make sure that the poll managers were following the law.  She was concerned that the election process was lawless.

## Issues Involving Retaliation

### Dana Smith

Dana Smith is from Hartwell, Hart County and was a poll worker in the last election. She previously testified to the committee on December 3, 2020, but returned to share that she has been retaliated against in her community by an editorial. Her husband heard from people at work who asked him, "Wow, are you comfortable with your election office really slandering your wife in the newspaper like that since she testified?"

She shared that she was not invited back as a poll worker again for the January 5th election. "So I'm pretty sure I'm not really in great standing in my own County where I live, which has been pretty difficult. I came to you as just a concerned citizen. That's who I am, who happened to work as a poll worker, and then a poll watcher. And I'm feeling a lot of repercussions for doing that."

Nonetheless, Ms. Smith then further testified to the committee that the signature verification process was broken and that poll workers were not trained to adequately verify signatures. Considering the fact that many people were registered to vote via an electronic signature provided through the driver's license process, such signatures present challenges to in the verification process. Furthermore, people's signatures change over time. Why should voters trust one person with no training and no oversight to be able to verify signatures and thus have so much power in the election process.

### Suzi Voyles

Ms. Voyles previously testified at the December 3, 2020 Subcommittee hearing. She reminded the Subcommittee of her 20-year track record serving at polling stations in Fulton County and as a poll manager at a Sandy Springs precinct. Ms. Voyles previously testified that she had seen the extra large batch of pristine ballots in the first recount. Because of her testimony to the Subcommittee, she has been released of her job as a poll manager. Ms. Voyles asked the Subcommittee to do its job and to prevent retaliation against poll workers who come forward to testify.

### Preston Haliburton

Mr. Haliburton noted that he was representing several plaintiffs, including persons who have been terminated simply because they appeared before the subcommittee to testify. He stated that President Trump apparently lost major cities in the middle of the night in certain swing states through improper conduct by election officials and others. He said he is still researching the issues, but he could not make it public now for fear of retaliation as well.

Mr. Haliburton said that we have a major problem in the Secretary of State's office, which might not be impropriety, but that smart people had to come together to solve the problem. He noted that no state had ever seen an administration error this massive in a presidential election. He noted that the Giuliani team was comprised of top notch people who were trying to get it right. He said this was not a farcical conspiracy, but a group trying to come up with solutions.

**Bobby Pitton**

Mr. Bobby Pitton identified himself as coming from the suburbs of Chicago, Illinois with a background in finance economics.  Mr. Pitton has an MBA from Northwestern University, Kellogg School, and working on a degree in financial engineering. Mr. Pitton analyzed the number of unique first names and unique last names in the Fulton County data sets and concluded that the number of people with unique first names and the number of people with unique surnames is so out of kilter that the only explanation could be that many people in the voter rolls are "fake" names. The voter rolls should be cleaned up and verified.

Mr. Pitton reviewed the data in Fulton County and six other surrounding counties: Cherokee, Clayton, Cobb, Fayette, Forsyth, and Gwinnett. Mr. Pitton noted that there were 66,363 first names in his dataset of people in Fulton County.  Of those names, 46,796, or 70%, have one instance, only one instance of that first name.

There are 105,558 surnames in Fulton County, but 46,000, or 43%, have only one instance. So 70% of all the names that are available for people in Fulton are unique. They have one instance of that first name, and 43% of the surnames.

Mr. Pitton noted that nationwide, there are about 150,000 last names that account for about 90% of the U.S. population. 150,000 total last names are 90% of the country. On average, each of those last names have about 2,000 persons with that last name – obviously some have significant more names, some have less.

Mt. Pitton noted that the nationwide ratio of first names to last names is about 33 to one or so. But in Fulton County, the average is more like 3 to one.

Mr. Pitton is still analyzing the data but he considered whether the surrounding counties might have additional relatives that could account for this discrepancy. But the number of unique first names jumps up, which is counterintuitive. Based on the discrepancies, he has concluded that there are many fake names, and thus these can account for many of the phantom votes.

**Lynda McLaughlin.**

Ms. Lynda McLaughlin has a background in politics and media and an MBA in business, and she is a part of the Data Integrity Group. She and her group provided some data analysis and an explan-atory video to assist in understanding voter irregularities. Her analysis suggested that the Secretary of State's office is certifying with the same data that the *New York Times* reported via its Edison feed. Lynda McLaughlin stated that the certification of votes and the votes that were submitted for the State of Georgia have negative swings in them. As such, they are in error and they are not representative of the State of Georgia and how the State of Georgia's voters voted. Thus the Secretary of State's office is recording and certifying results that have negative errors and fraudulent votes in them.

**Justin Mealey**

Justin Mealey, also part of the Data Integrity Group, is a a nine and a half year veteran of the U.S. Navy where he worked as a electronic warfare technician and Arabic linguist, four years of which being spent at Fort Gordon in Augusta. Mr. Mealey also spent time as a CIA contractor as a data analyst and programmer for the National Counterterrorism Center. He currently works for a big four accounting firm.

Mr. Mealey focused on three separate data sources. The first data source is the Edison Data Source, a time-series based data. The second source is the Scytl data source. That Scytl data source bifurcates that data and sends the data to the Edison data feed which then sends that to the Secretary of State. The Secretary of State's data is actually basing the certification process off of Scytl data, for all intents and purposes. Now because the Secretary of State data gets it after the Scytl server, what happens then is the Secretary of State could possibly change that. Thus, the group also uses a third data source as well.

Mr. Mealey stressed the point that an adjudicated ballot completely destroys the ability to recreate voter intent in an audit. He noted that in Fulton County, Richard Barron said that 113,000 votes were cast, and, of those, 105,000 were adjudicated, an abnormally high number. The original ballot is replaced with a new image. With no metadata, no trail, and even from an audit perspective, it would fail because from an audit perspective they're all using the same account to audit. So one cannot know who made that change. One cannot know how many times that change was made in the past. Mr. Mealey noted that a group that changed the ballot image and then adjudicated that exact same ballot the only thing someone would see from the end perspective data-wise is that final adjudication.

**Dave Lobue**

Dave Lobue identified himself as a data scientist with over a decade of experience, working directly with structured and unstructured data across a number of industries, specialized in machine learning and more recently artificial intelligence. He has worked with a multitude of data structures in the financial services, telecommunications, and in primary research consulting industries.

Based on his review, his team identified over 40 data points where negative voting or outright vote switching across candidates has totaled over 200,000 votes. Using machine learning algorithms that are regularly used for anomaly detection of fraud and financial services, his team identified over 500 precincts with over 1 million corresponding votes that exhibited suspicious activity.

Mr. Lobue based his analysis on the fact that vote tallies were being split and transferred up and down through the evening. Votes summations should not decrease, since new votes are constantly being added, but they did.

Mr. Lobue presented videos to the Subcommittee to show patterns in Georgia and Michigan. In Fulton County, over 150 precincts voted 90% or more for Vice President Biden. That is statistically unlikely to be true. In the statewide race that was decided by less than 13,000 votes, these 150 Fulton precincts alone accounted for 152,000 Biden votes. This is a clear indicator of suspicious or outright fraudulent activity.

In DeKalb County, 94 precincts voted 90% or more for Vice President Biden. That is also statistically unlikely to be true.

Mr. Lobue noted that recorded vote totals for President Trump decreased at certain points during election night. He asked "Why are any bars going negative?" Since there are no such things as negative votes, this has no valid explanation other than fraud. Unbeknownst to the general public, votes for Donald Trump were being switched and removed from his total, which often coincided with other precinct updates, but simultaneously offset deductions so that they appeared to remain neutral to outside observers.

Mr. Lobue presented a video showing the many places in the election process where fraud could easily occur on a grand electronic scale. Drilling down into the numbers in three counties, he concluded that President Trump had over 30,000 votes simply disappear in Dodge, Dougherty, and Putnam counties.

At 9:11p.m. EST on Election Night in Bibb County, President Trump reported 29,391 votes, and Vice President Biden was reported to have 17,218 votes. Minutes later, those tallies had switched.

Because there was a time lag between each state reported aggregation of county results, this type of switch can go undetected in state reporting, as long as it falls after the latest state refresh and before the next state update.

According to the Georgia Secretary of State website, President Trump lost Georgia by 12,670 votes. Mr. Lobue's videos presented evidence that the Dominion voting systems could be programmed to react in real time to manipulate data overall so that reporting seemed fluid. No figures should go negative, but they did. The results of the election were not consistent with how the data is structured and what would be consistent with normal or routine legal voting.

### Ray Smith

Ray Smith represented himself as co-counsel for the President of the United States, Donald J. Trump. He noted that the President has a lawsuit pending in Fulton County before the Superior Court. The certification by the election by the Secretary of State relied on a slim margin a margin of 11,700 votes. But yet the Coffee County testimony alleges that various counties were forced to certify the results.

Ray Smith discussed the basis for various ongoing challenges – letters being sent to out-of-state voters, and 8,000 voters who had moved out-of-state and voted illegally in the General Election. That is 3/4ths of the difference between the candidates alone.

The Secretary of State also admitted 74 felons voted who should not have. So right there, how can they possibly certify the election? They also admitted that the 15,700 NCOA votes were voted by persons who had left the state.

Mr. Smith asked that the Senate and the House not stand by the Secretary of State's certification.

### Sen. Brandon Beach

Senator Beach thanked the Chairman and Senator Heath. He also added that the testimony was unbelievable and an embarrassment for our state. He said he was "more and more convinced now that this was a well-orchestrated, well-coordinated effort by several groups to commit widespread and systemic fraud."

Senator Beach noted that Gabe Sterling has admitted that a lady from Maryland used his address to vote in our election. He works for the Secretary of State's office. Senator Beach noted that there were double votes cast, but no action. He noted that, after the primary, the Secretary of State had a press conference, said he was going to investigate and prosecute over 1000 people that double-voted in the primary. As of December 23rd, there has not been one investigation or one prosecution.

Senator Beach noted that felons voted illegally and dead voted. At least 37,500 ballots appeared and were counted with no supervision. Mr. Beach also discussed chain of custody failures which could lead to unknown errors.

Mr. Beach noted that people are mad. People are angry. Mr. Beach suggested that the Legislature take action and do something about this fraud. He suggested that the subcommittee focus on Fulton County and the State Farm Arena.

Senator Beach made a motion to request that the Fulton County Board of Elections make absentee ballots from State Farm Arena from 10:30 PM to 1:30 AM on Election Night available to the Cheeley Law Group and Mr. Pulitzer to validate if those are legitimate ballots.

Sen. Tillery seconded the motion. Chairman Ligon noted that this was not a formal committee motion, but discussed recasting the motion, which Senator Beach accepted.

Senator Tillery asked if all the ballots were needed, and Bob Cheeley responded that they were.

Senator Tillery, as one of the official subcommittee members, restated the motion to request that the Fulton County Board of Elections make the absentee ballots cast in Fulton County for the November 3rd General Election available for inspection by the Cheeley group through the process that Mr. Pulitzer outlined earlier in the day. As restated, the motion was then adopted.

**<u>Chairman Ligon</u>**

Chairman Ligon provided closing remarks, acknowledging the many people across the state who had sent him affidavits and letters and emails describing all the irregularities and fraud that they had observed, along with the ways that many had been treated with hostility. He noted that people had been barred from observing, had been belittled, and were not treated with dignity and respect as they sought to perform their civic duty as participants in the election process, a duty which is at the heart of being an American.

He made an analogy of what they had endured. It was as if a person had gone to a bank and asked to see how much was in his own account and being told that he could not see his own transactions, or even ask to see them, and further, if he asked again that a sheriff would be called to have him removed. Senator Ligon noted that the vote was more important than money because the vote determines the type of country people live in, with all of the God-given rights and liberties that the forefathers enshrined in the nation's founding documents.

He acknowledged that people know and understand that and want to see their heritage "jealously guarded and vigorously defended. And when there's an offense to it, they want to see it aggressively prosecuted and they want it corrected, and they want it set right."

He further stated, "I believe that we should come together as a [legislative] body to meet and to look into these things and to consider what should be done for this past election and what should be

done for future elections." He expressed his hope that the work of the committee and its recommenda-tions would be considered by the next legislature which meets and that serious steps would be taken to ensure that Georgians never find themselves in a position like this again. He looked forward to the day when Georgia would have a system of voting that everyone could be proud of and have confidence in so that citizens would know that the results of elections do in fact reflect the will of the people.

After thanking the members of the subcommittee, Senator Ligon adjourned the meeting.

# THE CHAIRMAN'S REPORT OF THE ELECTION LAW STUDY SUBCOMMITTEE OF THE STANDING SENATE JUDICIARY COMMITTEE

### SUMMARY OF TESTIMONY FROM DECEMBER 3, 2020 HEARING

Honorable William T. Ligon, Chairman
Senator, District 3

Honorable John Kennedy
Senator, District 18

Honorable Bill Heath
Senator, District 31

Honorable Blake Tillery
Senator, District 19

Honorable Michael Rhett
Senator, District 33

Honorable Elena Parent
Senator, District 42

I.   INTRODUCTION

II.   EXECUTIVE SUMMARY

III.   ORAL TESTIMONY

IV.   FINDINGS

V.   RECOMMENDATIONS

## I.      INTRODUCTION

The charge assigned to the Election Law Study Subcommittee of the Standing Senate Judiciary Committee was to examine the recent election cycle, the recount process, the audit process, the current investigations taking place, the litigation that is moving forward, as well as address issues relating to the upcoming runoffs. In the matter of the law itself, we were to also consider Georgia's election laws as they have impacted and are impacting the current election cycle. This Report may be further amended prior to the 2021 Georgia Legislative Session.

This Subcommittee met once at the Georgia State Capitol on Thursday, December 3, 2020. The hearing was open to the public, and there was an open invitation for citizens to speak before the committee. Subcommittee members also expressed stories they had heard from their constituents. Other committee meetings have also been hearing testimony which should be considered to present an even broader understanding. At this time, the additional committees which have met and received testimony are the Senate Governmental Affairs Committee and the House Governmental Oversight Committee. Many who could not testify due to lack of time have recorded their own testimonies online and shared their written speeches with this committee; the Subcommittee received many affidavits under oath.

<u>This Report by the Subcommittee Chair has not been formally approved by the Subcommittee or the standing Judiciary Committee.  It is submitted for informational purposes to be a part of the record at the request of the Judiciary Chair.  It is a summary of testimony given in person and by affidavit.  For more information, please refer to the video record of the hearing and the affidavits submitted.</u>


## II.     EXECUTIVE SUMMARY

The November 3, 2020 General Election (the "Election") was chaotic and any reported results must be viewed as untrustworthy.  The Subcommittee took evidence from witnesses and received affidavits sworn under oath.  The Subcommittee heard evidence that proper protocols were not used to ensure chain of custody of the ballots throughout the Election, after the opening of ballots prior to the Election, and during the recounts. The Subcommittee heard testimony that it was possible or even likely that large numbers of fraudulent ballots were introduced into the pool of ballots that were counted as voted; there is no way of tracing the ballots after they have been separated from the point of origin. The Subcommittee heard testimony of pristine ballots whose origin looked suspicious or which could not be verified and the inability of poll workers to distinguish between test ballots and absentee ballots. Signatures were not consistently verified according to law in the absentee balloting process.

Poll watchers on Election Night testified that they had noted that ballots were not secured, that seals and security tags were not used, and the chain of custody was often lax or non-existent. During the recount process, the monitors observed similar patterns of unsecured ballots that had broken seals and open cases of ballots laying around for hours or overnight in unsecured

locations. There was a lack of enforcement of the law, sloppy handling of the ballots by those counting, deliberate covering-up of voting numbers by workers, lack of following the process during the recount, unsafe handling of military ballots, and insecure data such as on laptops and flash drives. According to submitted testimony, there were also many equipment failures when ballots would not go through the machines and other times when ballots were counted more than once.

A great deal of testimony supported evidence of a coordinated effort to prevent a transparent process of observing the counting of ballots during the absentee ballot opening period and on Election Night. Witnesses testified to hostility to Republican poll workers during the recount – directional signage was unavailable, doors were locked, and Republican poll watchers were sent home early or given menial assignments.

Monitors throughout the state were often kept at an unreasonably long distance – some social distancing was understandable, but monitors were blocked from having the visual ability to see what was written on the ballots or to have any meaningful way to check the counting or to double-check that what was counted was actually assigned to the right candidate. They also could not observe what was entered into the ARLO system, nor could they be told the count that was being entered into ARLO. Instead, they were told that those numbers would be totaled and come back from the Secretary of State's Office. They were also told not to take pictures, film, or have other means of acquiring proof of the process that they were experiencing based on a rule from the State Elections Board.  That rule contravenes the spirit and purpose of the election law.

The Secretary of State's Office was unresponsive to its hotline. It has been unresponsive to many who wonder if their vote ever really counted. The office has turned a blind eye to fraud to the point that it ought to be considered gross negligence.

The Subcommittee did not have time to investigate the numerous publicly reported issues with the Dominion voting machines. The Subcommittee takes notice of the various publicly reported functions of the machines and heard evidence that the machines can duplicate fraudulent ballots to the point that not even trained personnel can tell the difference between a test ballot and a real ballot. Testimony also suggested that the system responds wirelessly to being reset from an unknown location as happened with the poll books. The Subcommittee also heard that Dominion machines can be programmed with algorithms that reallocate votes between candidates. In addition, the Dominion machines are programmed to count votes using percentages of whole numbers rather than actual votes, which is a feature incompatible with the actual voting process.  The Subcommittee learned that the history and control of the company that owns the Dominion voting system is unclear and provides serious implications of foreign interference in the U.S. election.

## III.    ORAL TESTIMONY

**Violation of Ballot/Computer Security Procedures During Early Voting and on Election Day**

- ■ Bridget Thorne, who has nine years' experience as a poll worker/precinct manager in Fulton County, worked for five and a half days during early voting as a technician in the temporary warehouse in the Georgia World Congress Center. Because of positive COVID tests among Fulton County elections employees, Dominion Software was selected to run the warehouse. Thorne was disturbed at the lack of ballot security. Test ballots were printed on the same type of paper (official Rolland Voting paper) as real ballots, but test ballots were not routinely marked as such or destroyed. Thorne testified she saw a stack of these ballots almost eight inches tall.

  On October 30, when early voting finished at State Farm Arena in Fulton County (the "State Farm Arena"), Thorne observed 40-50 scanners being brought into the arena and tens of thousands of ballots being scanned in by random people pulling ballots from random places – no formal procedure, no oaths, no chain of custody. When Thorne objected to this haphazard process, a Dominion employee replied, "It's fine, we have been doing this all week." When Thorne left that night, she observed unsecured suitcases of ballots next to the scanners.

  Upon arriving at the State Farm Arena the following morning, Thorne saw that suitcases of ballots had been piled in a corner and sealed. But there was no restricted access, so anyone could have removed one or more suitcases. In addition, anyone could have opened them and resealed them" because "seals were easily accessible." During the day, employees brought Thorne other ballots that were found in the warehouse, asking if they were real or test. She had no way of knowing.

  The following night, when Thorne was again working at the warehouse, she observed a Dominion employee and an Election Group Consultant printing "test ballots" but doing so incorrectly. She realized then that "<u>anyone</u> in the warehouse had access to printing real ballots."

  Before Election Day, Thorne attempted to report her concerns about these insecure ballot operations to the Secretary of State (SOS) office and to the State Board of Elections; she received no response.

  Since giving her testimony to the Senate Subcommittee, Bridget Thorne has been fired by a consultant working for Fulton County.

**Recount: Counting Votes Without Monitoring, or Without Meaningful Monitoring**

- Election Day – Video from State Farm Arena in Fulton County showed a Fulton County Election worker approaching the media and poll monitors. After a brief exchange, the media and monitors packed up and left. This coincided with media reports that everyone was told to leave State Farm Arena around 10 p.m. on Election Night; workers testified they were told that tabulation was stopping for the night and would resume the next morning. Instead, video from State Farm Arena revealed that about six workers stayed behind. What happened next revealed a coordinated effort by election workers to deliberately conceal their continued counting of ballots out of public view, in direct violation of the law. This incident was premeditated. Those workers pulled out four concealed cases of ballots from under a table and continued counting for another two hours. During those two hours there were multiple machines running, each of which could process up to 3000 ballots per hour.  A "representative" of The Secretary of State's office claimed that it had a representative present during that period, and the media reported that statement widely; it was not true.  The representative admitted he was not present during that time period and is not evident on the video.

- David Cross, though unable to speak at the hearing due to time constraints, submitted written testimony with graphs, one of which appears to enhance the significance of what took place with the change in vote totals just after the late-night activities took place at State Farm Arena. Due to its significance to the State Farm Arena video seen by the committee, his graph is included with this Report. It shows that 136,155 votes suddenly appeared in Biden's vote column at 1:59 a.m., November 4, 2020.

- Scott Hall of Fulton County is an experienced poll watcher who testified that there was a secured "lunch area" but when he bought lunch for workers, they were not permitted to use that area.  There were no cameras in that area, yet tables were set up for counting, and poll watchers were excluded.  He has photographs of the area.  He also testified that there were stacks and stacks of unsecured blank ballots ("checks," as he called them) that were in the open.

- Mr. Hall noted a limitation of one monitor per 10 recounting tables as being an inadequate ratio to be truly effective.  He was constantly engaged in the recount, even being called to go to the World Congress Center at ridiculous hours, such as 10 p.m., for more counting.  He was adamant that something was seriously wrong with how Fulton County was handling the ballots.

- Mark Amick reported that in DeKalb County, only one monitor was allowed per 10 tables of 16 recounters.  He testified that monitors were kept six feet away and could not see the totals entered on the computer screens.

■ At State Farm Arena at the end of the recount day on November 14, Susan Voyles of Sandy Springs observed pallets of ballots remaining to be counted beginning the following day. When she arrived the next morning, November 15, those pallets were gone.

■ On November 15, Voyles and her partner with whom she had traveled to State Farm Arena (also identified as a Republican), were given only 60 ballots to review, even though other tables had thousands. Voyles and her partner, as well as other Republican monitors, were told at 10 a.m. there was nothing else for them to do, so they should leave. Since giving her testimony to the Senate Subcommittee, Susan Voyles has been fired by a consultant working for Fulton County.

■ Tony Burrison of Savannah and a military veteran served as one of very few recount observers during the recount in Chatham County. He described the process as "disgusting" – stacks of ballots were being counted with no oversight or accountability. Based on what he observed, he believed there is a major problem with voting integrity due to tampering with the vote.

■ Nancy Kain of DeKalb reported that she was kept too far from the counting to verify any votes.

■ Hal Soucie of Smyrna, a poll watcher at State Farm Arena, testified that he was told that he was not supposed to be close enough to see batch numbers.

**No Chain of Custody**

■ Annette Davis Jackson, a Gwinnett monitor, saw broken locks on the bins containing paper backup ballots.

■ Scott Hall of Fulton County was told to leave the World Congress Center after he tried to document and photograph nine unsecured bags of ballots.  He testified he "cried" over the incidents he saw.

■ Dana Smith, a Republican poll watcher in Hart County, testified that she observed the paper backup ballots being placed in unlocked canvas bags for transport to the county office of the Elections Supervisor. The precinct manager finally (at Smith's insistence) obtained locks before transporting the bags in her car, but she refused to complete chain-of-custody forms.  Smith also testified that there was open access to the special paper used to print the paper backup ballots.

- Hal Soucie observed the recount process in two counties, Cobb and Fulton. At State Farm Arena in Fulton County, he reported "suitcases" full of ballots "all over the place," with no chain-of-custody procedures, no time and no date information. He observed people taking ballots out of the cases, counting, and putting them right back into the cases. No one checked him in as a credentialed observer, and one man handed him a stack of ballots without knowing who he was or where the ballots came from.

**Suspicious "Pristine" Absentee Ballots**

- At the State Farm Arena recount on November 14, Susan Voyles – who has 20 years' experience managing election precincts in Fulton County – reviewed a stack of 110 absentee ballots [ballots are normally placed in stacks of 100] and noticed they were "pristine." They had not been folded, and they did not appear worn as though voters and election workers had handled them. Each ballot was "bubbled in" with exactly the same marking, which showed a small crescent of white in the bubble. It appeared as though one ballot had been marked and then reproduced over 100 times. In addition, one of these ballots bore the distinctive ink markings of having been pulled from a printer too soon. Almost all of these ballots were votes for Vice President Biden; only two were for President Trump. In her 20 years of election experience, Voyles had never seen any ballots like these. As noted above, Ms. Voyles has been fired from her position as a poll manager with Fulton County, presumably for her honest testimony.

- Hal Soucie, who was also at the State Farm Arena, verified that he saw the pristine ballots mentioned by Ms. Voyles.

- During the recount, Scott Hall of Fulton County saw large quantities of ballots at the World Congress Center that appeared to have been machine-produced. He stated that he saw this "over and over."  The Subcommittee received evidence that other poll workers throughout the State reported similar instances of "pristine" ballots with no explicable origin.

**Duplication of Ballots Without Oversight**

- Nancy Kain, a naturalized citizen in DeKalb County, volunteered as a poll watcher for Advance Voting at lower Roswell Road, served as a poll monitor during processing of absentee ballots and as a poll watcher on Election Day. At 10 a.m. on November 5, at the State Farm Arena, she was not asked for credentials and noticed that many people did not even have credentials. She observed a young man with paper ballots putting in selections on a ballot on a voting machine and wondered why it was not going through the scanner. The supervisor explained that the military ballots are transcribed in proper format and ballots come in that they were trying to salvage because of damage, thus they were just transferring them to a new ballot, and that was the process. Yet, no one was there to verify what the young man was doing. He was the brother of the

supervisor. Technically, he was voting for someone else on a voting machine. She took video and photographs and recorded her conversation with the supervisor.

■ Mark Amick observed the processing of Provisional, Military and UOCAVA ballots in Fulton County on November 6 from early morning until 10:15 p.m. The only "oversight" provided was from a Secretary of State (SOS) employee who was not seen in the area before mid-morning, and who spent much of day not observing the duplication and tabulation process but rather sitting in the back of the room and leaving the room while on his phone. The first time Amick saw the SOS employee on the counting/sorting floor was 5:53 p.m. By 6:02 p.m. he had returned to his chair at the back of the room, and he did not go back onto the counting/sorting floor by the time Amick left at 10:15 p.m.

**Denial of Entry to Election Day Poll Watchers and During Recount**

■ Mark Amick, a credentialed Statewide Poll Watcher in Milton (Fulton County), was denied entry into the Birmingham Falls Elementary School precinct despite his statewide credentials. The Subcommittee has also received evidence from monitors that some of them were denied entrance during the recount.

**Hostility**

■ Hale Soucie of Symrna testified that Cobb County was using an electronic counting machine on the first day to count ballots, which was not the approved way to do the recount. The next day, it was the hand count process. He stated that on his second day he immediately observed that the first auditor made three mistakes in two minutes calling three ballots marked for Trump as Biden votes, but the second auditor caught those mistakes. He noticed another table that was not even doing a double-check at all. When he sought to observe, he was met with great hostility and vulgar name calling directed at him. The Subcommittee received other evidence of hostility against the monitors.

**Wildly Disparate Vote Totals from the Recount**

■ While observing the recount at the DeKalb County Board of Elections on November 15, Mark Amick saw that a box of ballots was recorded as 10,707 votes for Biden and 13 votes for President Trump. He flagged this obvious disparity to the election workers, who discussed among themselves how it came to be. Two election officials with whom he engaged about this issue became agitated with Amick for his continued monitoring of the situation. They finally agreed to recount the box, resulting in a revised total of 1,081 votes for Vice President Biden and 13 for President Trump – still statistically disparate, but 9,626 votes less so.  Amick was not certain if the corrected count was actually entered into the final recount totals.

- At State Farm Arena during the recount, Susan Voyles also noted a stack of absentee ballots with only two votes for President Trump.

- Hal Soucie of Smyrna, while monitoring in State Farm Arena, noticed stacks of ballots quite high, such as eight inches high for Biden, yet not a single Trump vote. He stated that he works with data and marketing, and anytime figures start reaching the 90th percentile, that type of consumer data is suspect, and when it gets to 100 percent that is passing the level of improbable to impossible.

**Ballots Counted from Ineligible Voters**

- Mark Davis analyzed data from U.S. Postal Service change-of-address (COA) forms and compared it to voters who voted in their former precincts. For example, he discovered that 14,980 out-of-state movers still voted in the Georgia General Election. Another 40,279 moved across county lines more than 30 days prior to the election, yet still voted in their former county precincts, a violation of Georgia law. He also noted that about 1,000 voters had voted twice in the Primary, inferring that the same pattern could have existed in the General Election.

**Constitutional Violations of Duly Passed Law**

- Dr. John C. Eastman, former Professor of Law and former Dean of the Chapman University Fowler School of Law and current Fellow at the Claremont Institute, testified regarding the plenary authority of the legislative body of the States to set the "Times, Places and Manner" of elections involving Federal officials, including with respect to the selection of Electors for the Electoral College in the presidential election, citing Article I, Section 4 and Article II, Section 1 of the U.S. Constitution. He noted that when States have vested that authority in the people of their States that they are bound to follow the people's choice in a free and fair election, but where fraud and failure to follow the law as passed by the legislative body is evident, that authority can be withdrawn. The legislature then can exercise its plenary authority to choose the electors in a presidential contest. He referenced both *Bush v. Gore* and *McPherson v. Blacker* as authoritative.

  Professor Eastman further explained that the failure of State election officials to follow the manner of conducting the election according to the statutes duly passed by the legislative body can annul an election. The U.S. Constitution clearly gives State legislatures under Article I, Section 4 the duty to determine the "manner" of federal elections, and that power rests solely with the State legislatures unless Congress passes its own laws that preempt State election laws. There is no provision which allows any Executive branch member to modify, set aside, enhance, or otherwise create policies or procedures which undermine or contravene those laws.

He noted various ways State election officials had failed to follow the statutes in conducting the election. He reiterated failures such as counting the votes of approximately 66,000 underage individuals, the 2,500 felons whose votes were unlawfully counted, the votes of those who had no verifiable residences within the State, and the "biggest" of all he believed was the March 2020 settlement agreement that was entered into with Georgia's Secretary of State and "certain democrat committee challengers that effectively altered the signature verification process" with regard to Absentee Ballots, an agreement that was contrary to State law.  He further noted that the "intermingling of legal and illegal ballots" also meant that the election cannot legally be certified. "The State has failed to make a choice on Election Day in accordance with the manner" the legislature prescribed. In light of the failures, the fraud, and the unconstitutional agreement, Dr. Eastman opined that it was the duty of the legislative body to choose the State's Electors for the presidential election.

**Data Analysis in General and Dominion Issues**

- Russell J. Ramsland, Jr., a cybersecurity expert from Texas, testified that his team had compared data from Dominion voting machines in those places where they were used around the nation. They discovered that with Dominion machines, Vice President Biden outperformed what he was statistically expected to receive by an "amazing" 5%. He also outperformed statistical expectations when the analysis was run by county, with Vice President Biden picking up 78% of Dominion counties but only 46% of counties using machines from other manufacturers. Depending on the type of analysis performed, Ramsland estimated that these anomalies translated to between 123,000 and 136,000 extra votes for Vice President Biden in Georgia.

  Ramsland also found that the rejection rate for absentee ballots in Georgia was much lower in 2020 (0.2%) than in 2016 (6.4%). He also identified over 96,000 phantom votes, meaning that they had been counted, but there was no record of the counties recording those ballots as "received."

- Phil Waldron**,** a former U.S. Army information officer with expertise in electronic warfare, identified a "pretty significant information warfare campaign" conducted across the country during the Election. He described the history of the Dominion and other voting machines, with the operating software sharing the same "DNA" going back to Smartmatic, which was created to help steal elections in Venezuela.

  Waldron analyzed these machines in Michigan and found them extremely insecure. He said a good hacker could get into them within two minutes, while an elementary-school student could probably do it in twelve. There are 12 avenues of attack. Dominion also sends voter data outside the United States.

Waldron discussed fractional voting. Waldron testified that the Dominion software used in the Georgia machines assigns a fractional value to each vote; there is no legitimate purpose in assigning an elector's vote as a fractional vote.  That feature can allow the manipulation of election results.

Waldron said federal law (USC Title 46) requires that the ballot images within the machine are required to be preserved for 22 months, but only a forensic analysis would show if this was done. Each machine can record 2,000-3,000 ballots per hour.  His Michigan analysis showed "huge breaches in chain of custody" with respect to the machines and to absentee ballots. In Georgia, there was an unexplained upload of ballots at 3:36 a.m. on November 4.

Waldron urged a full forensic audit of the machines and of absentee ballots (for example, ink analysis would show if ballots were mass-produced).

- Scott Hall of Fulton County stated that when he worked at the English Street facility that he had concerns about the contractors hired there. He noted that every vote in Fulton County ends up on thumb drives that eventually find their way to the English Street location. He said, "I have photographs of pallet loads of basically signed checks." "So you've got every single vote, you've got currency, and now you just need someone to do it." He said he hired one of his own guys to determine if a fraudulent vote could be recorded on the Dominion machines at that point in the process.  "Now, I've got all these votes that have not been uploaded anywhere. And he actually wrote me a paper, and he said that it was the 'stupidest, simplest thing I've ever seen.' He said, 'Dominion's own documentation shows how you take an entire batch, swipe it off, and then swipe on a new batch, before you put it into the real-time reader that uploads." He summed up the voter fraud by using the analogy that the referee got paid off to call the game and something is very wrong.

**Outside Influence Over Governmental Election Functions**

- Scott Walter from the Capitol Research Group testified about Mark Zuckerberg's Center for Technology and Civic Life (CTCL), a progressive advocacy group that seeks to influence elections via voter "education" and get-out-the-vote efforts. In the 2020 election, CTCL made grants to individual counties, in Georgia and elsewhere, ostensibly to help run safe elections during COVID. But county boards could use the money for whatever they wanted, and the bulk of the grants (95% of total funding) went to counties that voted for Clinton in 2016 and for Biden in 2020. In fact, nine of the 10 Georgia counties that experienced the largest shifts toward Democrats in 2020 received CTCL grants -- $4.38-$10.47 spent per each man, woman, and child in those counties. Georgia should not allow "privatized" elections via the organization that the Washington Post has called the "Democratic Party's Hogwarts for digital wizardry."

**Voters Unable to Verify Votes Counted**

- Grace Lennon, a student at Georgia Tech, hoped to early vote on October 23. When she arrived, she was told that she had been sent an absentee ballot.  She never received an absentee ballot. She had to sign an affidavit saying that she had not requested nor had she received an absentee ballot. She was then given a voter card to vote on the machine. However, the next day, she learned that someone had voted absentee in her name on October 7th.  She was not able to verify that her vote actually counted for the one she chose to select in the election or whether the absentee ballot counted instead. Senator Greg Dolezal confirmed that most all the Senators had heard many similar stories.

## V.   FINDINGS

1- The November 3, 2020 election was chaotic and the results cannot be trusted.
2- The Secretary of State and the State Elections Board failed to enforce the law as written in the Georgia Code, and furthermore, created policies that contravened State law. As Senator Matt Brass concluded at the December 3 hearing, "We have heard evidence that State law was not followed, time after time after time."
3- The Secretary of State failed to have a transparent process for the verification of signatures for absentee ballots, for the counting of votes during the subsequent recount and audit, and for providing the type of guidance and enforcement necessary to ensure that monitors and other observers had meaningful access to the process.
4- The Secretary of State instituted an unconstitutional gag order so that monitors were told not to use photography or video recording devices during the recount.
5- Election officials at all levels failed to secure test ballots and actual ballots. Many reports indicate that proper procedures were not followed, and there was systematic failure to maintain appropriate records of the chain of custody for these ballots, both prior to and after voting and throughout the recount.
6- The Secretary of State and Election Supervisors failed to stop hostile behavior of workers toward citizen volunteer monitors during the recount process.
7- The events at the State Farm Arena are particularly disturbing because they demonstrated intent on the part of election workers to exclude the public from viewing the counting of ballots, an intentional disregard for the law. The number of votes that could have been counted in that length of time was sufficient to change the results of the presidential election and the senatorial contests. Furthermore, there appears to be coordinated illegal activities by election workers themselves who purposely placed fraudulent ballots into the final election totals.
8- Grants from private sources provided financial incentives to county officials and exerted influence over the election process.
9- The oral testimonies of witnesses on December 3, 2020, and subsequently, the written testimonies submitted by many others, provide ample evidence that the 2020 Georgia General Election was so compromised by systemic irregularities and voter fraud that it should not be certified.

## VI.   RECOMMENDATIONS

### A.  Absentee Ballots

In addition to following the law as already written by the legislature, such as not opening absentee ballots until Election Day, additional steps should be taken to ensure that only legal absentee votes are counted.

At a minimum, these recommendations include requiring photo identification, following signature match procedures faithfully, allowing absentee ballots to be used only upon demonstration of need, mailing absentee ballots out only upon the request of the registered voter, and although already illegal, expressly prohibiting drop boxes.

### B.  Secure Chain of Custody and Additional Security Measures

Procedures should be established to ensure proper chain of custody for all ballots, whether they are test ballots, new unused ballots, spoiled ballots, cast BMD-generated ballots, absentee ballots, and even the specialty paper that is used to print the ballots.

Penalties should be clearly known and enforced for any violations.

There should be complete security when workers go on the job, with sign-in of their names and a time stamp, when they go in and when they go out.

Cameras should also be on-site to monitor the process at all times, as well as all the entrances to the buildings where ballots and the ballot paper are stored.

### C.  Meaningful Access for Poll Watchers and Monitors

Citizens who are seeking to ensure the integrity of the vote need to be able to truly see the process. They should be able to ensure that people are reading their ballots before they are cast. They should be able to inspect the signature match process when ballots are opened. They should be able to write down seal information so they can ensure proper custody is in place. They should be close enough to see the names on the ballots during any recounts, the counts written on recount report sheets, the counts going into the ARLO system, the counts written on ballot containers, the process of the seals being broken as the ballots are entering the process, and so forth.

More poll watchers and monitors should be allowed to participate since the ratio needs to be improved. Objections by monitors should be addressed immediately on-site to ensure access and transparency.

Hostile actions by election workers toward volunteers should be immediately addressed and should be cause for dismissal.

### D.  No Unconstitutional Gag Orders

There is no reason to ban cameras when tabulation is taking place or when recounts and audits are taking place.

Furthermore, there is no reason to ban cameras at the polling booth as long as voters have privacy while voting.

The State Board of Elections should not ban cameras and recording equipment. They must fulfill their duty to ensure a transparent election process. Furthermore, citizens have a right to share those photos, recordings, and thoughts about what they observe.

### E.  Unqualified Voters Should Be Purged from the System

No underage voters should be in the system to allow their votes. No felons should be in the system to allow their votes.

Other categories of voters, such as the deceased and those who have moved out of state, should also be examined as to their continued presence on the voter rolls.

### F.  Violations of State Election Laws Must Be Prosecuted

The Georgia Bureau of Investigation ("GBI") and the Attorney General should aggressively investigate and prosecute those who violate election laws, including those conspiring to place fraudulent ballots into the system and the 1,000 persons identified by the Secretary of State who voted twice in the 2020 primaries. If prosecutions do not happen, violations will recur.

The GBI should establish an independent office for the investigation of all claims of voter fraud. That office should report regularly to the Judiciary Committee and, except in the case of investigations involving the Secretary of State or its personnel, the office of the Secretary of State.

The GBI should investigate the cases where many affidavits already exist regarding election fraud in the 2020 General Election.

### G.  Forensic Audits of Ballots and Machines

The Legislature must determine if ballot marking devices (BMDs) have been manipulated to provide a fraudulent result and without regard to whether the forensic audits can actually identify the manipulation of votes and the authenticity of the ballots that are in the ballot boxes, either generated by the BMDs or those that are absentee ballots.

Independent third-party auditors should review the fiducials on all ballots types (absentee, military, machine generated), audit the absentee ballot results from the last election, confirm the number of external envelopes in each county, and the number of ballots for each county.

Such audits should help ensure that phantom ballots and other fraudulent ballots are not counted in election results, and that legal votes are the only votes counted.

### H.  For Rectifying the 2020 General Election Results

The Legislature should carefully consider its obligations under the U.S. Constitution.  If a majority of the General Assembly concurs with the findings of this report, the certification of the Election should be rescinded and the General Assembly should act to determine the proper Electors to be certified to the Electoral College in the 2020 presidential race.  Since time is of the essence, the Chairman and Senators who concur with this report recommend that the leadership of the General Assembly and the Governor immediately convene to allow further consideration by the entire General Assembly.

Respectfully submitted this the 17th day of December 2020.

Honorable William T. Ligon, Chairman
Senator, District 3

**Exhibit F—Example Tabulation issues**

Exhibits below are *examples* of November 2020 tabulation discrepancies detected using public records. Numerous counties certified such discrepancies in their official tabulations both in down ballot races in the original count and in the POTUS recount. The examples should be seen as indications of systemic problems, not isolated errors. The root cause of the double/triple counting of votes is unknown and cannot be determined without reviewing the original paper records and voting system activity logs.

The discrepancies cannot be quantified statewide using available electronic records because of the extensive improper destruction of ballot images. (CGG's review has found nothing that would change the outcome of the POTUS election. Extensive errors have tended to be offsetting at the POTUS level.)

Exhibit F-1 Fulton RW01 Precinct Example Double and Triple Vote Counting

**(See Excel worksheet F-1 attached)**

RW01 is Plaintiff Donna Curling's home precinct. It is used as example to show impact of double and triple counting on one precinct. Highlighted file names (on Excel worksheet) show double-and triple- counted ballots.

> Links to Ballot images:
> Certified Initial Results—Double Counts
> https://coaltionforgoodgovernance.sharefile.com/d-s689a9bb5bfa24af6ace0fde6a12c9e97
>
> Certified POTUS Results—Double and Triple Counts (examples from RW01)
> https://coaltionforgoodgovernance.sharefile.com/d-sd2efe330ba3043acbe061d4f1d390b20

Exhibit F-2 Cherokee Voter Troy Horton SEB Complaint 1 on Cherokee Double Vote Counting
> Horton uses 49 vote double counting as example of systemic problem.
>
> Contact information: Troy Horton, jthorton@yahoo.com
> 678.767.0898
> 530 Crested Hawk Ridge
> Canton, GA 30114
>
> Filed with Georgia State Election Board 1/26/22
> SOS Investigator is Paul Cain.

Exhibit F-3 Horton SEB Complaint #2 on Adding/Omitting Recount Ballots

> Complaint #2 relates to Complaint #1 (F-2) (CGG verification of "new" ballot images is being completed)

Exhibit F-4 Early County Double Counting

Early County (5,217 voters) double counted 50 ballots
This is used as one example only. Double-counting is a systemic problem across counties.

Exhibit F- 5 Fulton County Double and Triple Counts

**See Excel Worksheet F-5**
Preliminary *partial* sample of double and triple counted ballots in Fulton Recount.
(It is anticipated that there are hundreds, or possibly a few thousand, more double counts to confirm not listed on the worksheet.)

Exhibit F-1 Fulton RW01 Precinct Example Double and Triple Vote Counting

See Exhibit F-1 Excel worksheet for details.

     RW01 is Plaintiff Donna Curling's home precinct. It is used as example to show impact of double and triple counting on one precinct. Highlighted file names show double-and triple-counted ballots.

     Links to Ballot images:
Certified Initial Results—Double Counts
https://coaltionforgoodgovernance.sharefile.com/d-s689a9bb5bfa24af6ace0fde6a12c9e97

Certified POTUS Results—Double and Triple Counts
https://coaltionforgoodgovernance.sharefile.com/d-sd2efe330ba3043acbe061d4f1d390b20

<u>Exhibit F-2 Cherokee Voter Troy Horton SEB Complaint 1 on Cherokee Double Vote Counting</u>
  Horton uses 49 vote double counting as example of systemic problem.

  Contact information: Troy Horton, jthorton@yahoo.com
         678.767.0898
         530 Crested Hawk Ridge
         Canton, GA 30114

  Filed with Georgia State Election Board 1/26/22
  SOS Investigator is Paul Cain.

<u>Exhibit F-3 Horton SEB Complaint #2 on Adding/Omitting Recount Ballots</u>

  Complaint #2 relates to Complaint #1 (F-2) (CGG verification of "new" ballot images is in process)

## Pertaining to:  November 3, 2020 General Election

## Statement of Complaint: Ballot Images Added/Omitted Between Election Night and Recount

### Chronological Order of Complaint:

1. In two precincts on election night, Arnold Mill and Woodstock, the Statement of Votes Cast matched the number of ballot images in those precincts provided by Cherokee County.  Within these precincts there were 50 double scanned and counted ballots.
   a. Arnold Mill Precinct - 1 Double Scanned and Counted Ballot
      i. Election Night Statement of Votes Cast: 2521
      ii. Election Night Ballot Images Provided: 2521
      iii. Double Scanned Ballots in the Precinct Discovered: 1
   b. Woodstock Precinct  - 49 Double Scanned and Counted Ballot
      i. Election Night Statement of Votes Cast: 5209
      ii. Election Night Ballot Images Provided: 5209
      iii. Double Scanned Ballots in the Precinct Discovered: 49
2. The list of double scanned ballots which counted in the election night SoVC are as follows:

| Precinct | Ballot Type | Original File | Double Scan File |
|----------|-------------|---------------|------------------|
| Woodstock | Handmarked | 00950_00033_000001.tif | 00950_00035_000001.tif |
| Woodstock | Handmarked | 00950_00033_000002.tif | 00950_00035_000002.tif |
| Arnold Mill | Handmarked | 00950_00033_000003.tif | 00950_00035_000003.tif |
| Woodstock | Handmarked | 00950_00033_000004.tif | 00950_00035_000004.tif |
| Woodstock | Handmarked | 00950_00033_000005.tif | 00950_00035_000005.tif |
| Woodstock | Handmarked | 00950_00033_000006.tif | 00950_00035_000006.tif |
| Woodstock | Handmarked | 00950_00033_000007.tif | 00950_00035_000007.tif |
| Woodstock | Handmarked | 00950_00033_000008.tif | 00950_00035_000008.tif |
| Woodstock | Handmarked | 00950_00033_000009.tif | 00950_00035_000009.tif |
| Woodstock | Handmarked | 00950_00033_000010.tif | 00950_00035_000010.tif |
| Woodstock | Handmarked | 00950_00033_000011.tif | 00950_00035_000011.tif |
| Woodstock | Handmarked | 00950_00033_000012.tif | 00950_00035_000012.tif |
| Woodstock | Handmarked | 00950_00033_000013.tif | 00950_00035_000013.tif |
| Woodstock | Handmarked | 00950_00033_000014.tif | 00950_00035_000014.tif |
| Woodstock | Handmarked | 00950_00033_000015.tif | 00950_00035_000015.tif |
| Woodstock | Handmarked | 00950_00033_000016.tif | 00950_00035_000016.tif |
| Woodstock | Handmarked | 00950_00033_000017.tif | 00950_00035_000017.tif |
| Woodstock | Handmarked | 00950_00033_000018.tif | 00950_00035_000018.tif |
| Woodstock | Handmarked | 00950_00033_000019.tif | 00950_00035_000019.tif |
| Woodstock | Handmarked | 00950_00033_000020.tif | 00950_00035_000020.tif |
| Woodstock | Handmarked | 00950_00033_000021.tif | 00950_00035_000021.tif |
| Woodstock | Handmarked | 00950_00033_000022.tif | 00950_00035_000022.tif |

| Woodstock | Handmarked | 00950_00033_000023.tif | 00950_00035_000023.tif |
| Woodstock | Handmarked | 00950_00033_000024.tif | 00950_00035_000024.tif |
| Woodstock | Handmarked | 00950_00033_000025.tif | 00950_00035_000025.tif |
| Woodstock | Handmarked | 00950_00033_000026.tif | 00950_00035_000026.tif |
| Woodstock | Handmarked | 00950_00033_000027.tif | 00950_00035_000027.tif |
| Woodstock | Handmarked | 00950_00033_000028.tif | 00950_00035_000028.tif |
| Woodstock | Handmarked | 00950_00033_000029.tif | 00950_00035_000029.tif |
| Woodstock | Handmarked | 00950_00033_000030.tif | 00950_00035_000030.tif |
| Woodstock | Handmarked | 00950_00033_000031.tif | 00950_00035_000031.tif |
| Woodstock | Handmarked | 00950_00033_000032.tif | 00950_00035_000032.tif |
| Woodstock | Handmarked | 00950_00033_000033.tif | 00950_00035_000033.tif |
| Woodstock | Handmarked | 00950_00033_000034.tif | 00950_00035_000034.tif |
| Woodstock | Handmarked | 00950_00033_000035.tif | 00950_00035_000035.tif |
| Woodstock | Handmarked | 00950_00033_000036.tif | 00950_00035_000036.tif |
| Woodstock | Handmarked | 00950_00033_000037.tif | 00950_00035_000037.tif |
| Woodstock | Handmarked | 00950_00033_000038.tif | 00950_00035_000038.tif |
| Woodstock | Handmarked | 00950_00033_000039.tif | 00950_00035_000039.tif |
| Woodstock | Handmarked | 00950_00033_000040.tif | 00950_00035_000040.tif |
| Woodstock | Handmarked | 00950_00033_000041.tif | 00950_00035_000041.tif |
| Woodstock | Handmarked | 00950_00033_000042.tif | 00950_00035_000042.tif |
| Woodstock | Handmarked | 00950_00033_000043.tif | 00950_00035_000043.tif |
| Woodstock | Handmarked | 00950_00033_000044.tif | 00950_00035_000044.tif |
| Woodstock | Handmarked | 00950_00033_000045.tif | 00950_00035_000045.tif |
| Woodstock | Handmarked | 00950_00033_000046.tif | 00950_00035_000046.tif |
| Woodstock | Handmarked | 00950_00033_000047.tif | 00950_00035_000047.tif |
| Woodstock | Handmarked | 00950_00033_000048.tif | 00950_00035_000048.tif |
| Woodstock | Handmarked | 00950_00033_000049.tif | 00950_00035_000049.tif |
| Woodstock | Handmarked | 00950_00033_000050.tif | 00950_00035_000050.tif |

3. During the recount, this batch of hand-marked ballots was only scanned once which should have left Woodstock precinct 49 ballots short of the election night Statement of Votes cast and Arnold Mill 1 vote short of the election night Statement of Votes Cast.   However, the Statement of Votes Cast did not change between election night and the recount.  Those 50 double scanned handmarked ballots were replaced with 50 new handmarked ballots.

4. During the recount,  50 ballots which did not exist in the election night ballot image population appeared in the same configuration as the 50 ballots that were missing due to the fact that they weren't double scanned during the recount.  These 50 ballots were the only ballots not reconcilable in Woodstock and Arnold Mill between the election night and recount ballot image populations.

5. The list of new ballots which did not exist in the election night ballot image population but which first appeared in the recount ballot image population is as follows:

| Precinct | Ballot Type | New Ballot Image in Recount |
|---|---|---|
| Woodstock | Handmarked | 00950_00196_000001.tif |
| Woodstock | Handmarked | 00950_00196_000002.tif |

| | | |
|---|---|---|
| Woodstock | Handmarked | 00950_00196_000003.tif |
| Woodstock | Handmarked | 00950_00196_000004.tif |
| Woodstock | Handmarked | 00950_00196_000005.tif |
| Woodstock | Handmarked | 00950_00196_000006.tif |
| Woodstock | Handmarked | 00950_00196_000007.tif |
| Woodstock | Handmarked | 00950_00196_000008.tif |
| Woodstock | Handmarked | 00950_00196_000009.tif |
| Woodstock | Handmarked | 00950_00196_000010.tif |
| Woodstock | Handmarked | 00950_00196_000011.tif |
| Woodstock | Handmarked | 00950_00196_000012.tif |
| Woodstock | Handmarked | 00950_00196_000013.tif |
| Woodstock | Handmarked | 00950_00196_000014.tif |
| Woodstock | Handmarked | 00950_00196_000015.tif |
| Woodstock | Handmarked | 00950_00196_000016.tif |
| Woodstock | Handmarked | 00950_00196_000017.tif |
| Woodstock | Handmarked | 00950_00196_000018.tif |
| Woodstock | Handmarked | 00950_00196_000019.tif |
| Woodstock | Handmarked | 00950_00196_000020.tif |
| Woodstock | Handmarked | 00950_00196_000021.tif |
| Woodstock | Handmarked | 00950_00196_000022.tif |
| Woodstock | Handmarked | 00950_00196_000023.tif |
| Woodstock | Handmarked | 00950_00196_000024.tif |
| Woodstock | Handmarked | 00950_00196_000025.tif |
| Woodstock | Handmarked | 00950_00196_000026.tif |
| Woodstock | Handmarked | 00950_00196_000027.tif |
| Woodstock | Handmarked | 00950_00196_000028.tif |
| Woodstock | Handmarked | 00950_00196_000029.tif |
| Woodstock | Handmarked | 00950_00196_000030.tif |
| Woodstock | Handmarked | 00950_00196_000031.tif |
| Woodstock | Handmarked | 00950_00196_000032.tif |
| Woodstock | Handmarked | 00950_00196_000033.tif |
| Woodstock | Handmarked | 00950_00196_000034.tif |
| Woodstock | Handmarked | 00950_00196_000035.tif |
| Woodstock | Handmarked | 00950_00196_000036.tif |
| Woodstock | Handmarked | 00950_00196_000037.tif |
| Woodstock | Handmarked | 00950_00196_000038.tif |
| Woodstock | Handmarked | 00950_00196_000039.tif |
| Woodstock | Handmarked | 00950_00196_000040.tif |
| Woodstock | Handmarked | 00950_00196_000041.tif |
| Woodstock | Handmarked | 00950_00196_000042.tif |
| Woodstock | Handmarked | 00950_00196_000043.tif |
| Woodstock | Handmarked | 00950_00196_000044.tif |
| Woodstock | Handmarked | 00950_00196_000045.tif |

| Woodstock | Handmarked | 00950_00196_000046.tif |
| Woodstock | Handmarked | 00950_00196_000047.tif |
| Woodstock | Handmarked | 00950_00196_000048.tif |
| Woodstock | Handmarked | 00950_00196_000049.tif |
| Arnold Mill | Handmarked | 00950_00196_000050.tif |

6.  Woodstock and Arnold Mill were not the only Precincts which had different ballots included in the recount ballot image population from the election night ballot image population but this is the most egregious example of creating fraudulent ballots in order to not deviate from the SoVC totals between election night and the recount.   I can provide information about other instances if you'd like to investigate them as well.

## How and When was Issue Discovered:

Issue was discovered over a period of time between 10/6/2021 and 12/22/2021.  The first request for an explanation was to the Cherokee County Board of Elections on 1/3/2022.

## Research Methods Utilized (websites, text messages, photographs found in research):

- Election Night (MC1) and Recount (MC2) Ballot Images produced by the Cherokee County Board of Elections
- Election Night (MC1) Statement of Votes Cast provided by the Cherokee County Board of Elections
- Recount (MC2) Statement of Votes Cast provided by the Cherokee County Board of Elections

## Full Contact Information for All Witnesses:

I am not aware of any eye witnesses to the creation and insertion of the 50 new ballots in the recount ballot image population to replace the 50 double scanned and counted ballots from the election night ballot image population

## Reports filed with Election Officials:

- Presented this information to the Cherokee County Election Board members at their monthly meeting on 1/3/2022.   A written response followed that this investigation would require an Elections Security Expert and that I should therefore contact the Secretary of State's office for an investigation to be conducted.

## Pertaining to:  November 3, 2020 General Election

## Statement of Complaint: Ballot Images Added/Omitted Between Election Night and Recount

### Chronological Order of Complaint:

1. In two precincts on election night, Arnold Mill and Woodstock, the Statement of Votes Cast matched the number of ballot images in those precincts provided by Cherokee County.  Within these precincts there were 50 double scanned and counted ballots.
   a. Arnold Mill Precinct - 1 Double Scanned and Counted Ballot
      i. Election Night Statement of Votes Cast: 2521
      ii. Election Night Ballot Images Provided: 2521
      iii. Double Scanned Ballots in the Precinct Discovered: 1
   b. Woodstock Precinct  - 49 Double Scanned and Counted Ballot
      i. Election Night Statement of Votes Cast: 5209
      ii. Election Night Ballot Images Provided: 5209
      iii. Double Scanned Ballots in the Precinct Discovered: 49
2. The list of double scanned ballots which counted in the election night SoVC are as follows:

| Precinct | Ballot Type | Original File | Double Scan File |
|---|---|---|---|
| Woodstock | Handmarked | 00950_00033_000001.tif | 00950_00035_000001.tif |
| Woodstock | Handmarked | 00950_00033_000002.tif | 00950_00035_000002.tif |
| Arnold Mill | Handmarked | 00950_00033_000003.tif | 00950_00035_000003.tif |
| Woodstock | Handmarked | 00950_00033_000004.tif | 00950_00035_000004.tif |
| Woodstock | Handmarked | 00950_00033_000005.tif | 00950_00035_000005.tif |
| Woodstock | Handmarked | 00950_00033_000006.tif | 00950_00035_000006.tif |
| Woodstock | Handmarked | 00950_00033_000007.tif | 00950_00035_000007.tif |
| Woodstock | Handmarked | 00950_00033_000008.tif | 00950_00035_000008.tif |
| Woodstock | Handmarked | 00950_00033_000009.tif | 00950_00035_000009.tif |
| Woodstock | Handmarked | 00950_00033_000010.tif | 00950_00035_000010.tif |
| Woodstock | Handmarked | 00950_00033_000011.tif | 00950_00035_000011.tif |
| Woodstock | Handmarked | 00950_00033_000012.tif | 00950_00035_000012.tif |
| Woodstock | Handmarked | 00950_00033_000013.tif | 00950_00035_000013.tif |
| Woodstock | Handmarked | 00950_00033_000014.tif | 00950_00035_000014.tif |
| Woodstock | Handmarked | 00950_00033_000015.tif | 00950_00035_000015.tif |
| Woodstock | Handmarked | 00950_00033_000016.tif | 00950_00035_000016.tif |
| Woodstock | Handmarked | 00950_00033_000017.tif | 00950_00035_000017.tif |
| Woodstock | Handmarked | 00950_00033_000018.tif | 00950_00035_000018.tif |
| Woodstock | Handmarked | 00950_00033_000019.tif | 00950_00035_000019.tif |
| Woodstock | Handmarked | 00950_00033_000020.tif | 00950_00035_000020.tif |
| Woodstock | Handmarked | 00950_00033_000021.tif | 00950_00035_000021.tif |
| Woodstock | Handmarked | 00950_00033_000022.tif | 00950_00035_000022.tif |

| Woodstock | Handmarked | 00950_00033_000023.tif | 00950_00035_000023.tif |
| Woodstock | Handmarked | 00950_00033_000024.tif | 00950_00035_000024.tif |
| Woodstock | Handmarked | 00950_00033_000025.tif | 00950_00035_000025.tif |
| Woodstock | Handmarked | 00950_00033_000026.tif | 00950_00035_000026.tif |
| Woodstock | Handmarked | 00950_00033_000027.tif | 00950_00035_000027.tif |
| Woodstock | Handmarked | 00950_00033_000028.tif | 00950_00035_000028.tif |
| Woodstock | Handmarked | 00950_00033_000029.tif | 00950_00035_000029.tif |
| Woodstock | Handmarked | 00950_00033_000030.tif | 00950_00035_000030.tif |
| Woodstock | Handmarked | 00950_00033_000031.tif | 00950_00035_000031.tif |
| Woodstock | Handmarked | 00950_00033_000032.tif | 00950_00035_000032.tif |
| Woodstock | Handmarked | 00950_00033_000033.tif | 00950_00035_000033.tif |
| Woodstock | Handmarked | 00950_00033_000034.tif | 00950_00035_000034.tif |
| Woodstock | Handmarked | 00950_00033_000035.tif | 00950_00035_000035.tif |
| Woodstock | Handmarked | 00950_00033_000036.tif | 00950_00035_000036.tif |
| Woodstock | Handmarked | 00950_00033_000037.tif | 00950_00035_000037.tif |
| Woodstock | Handmarked | 00950_00033_000038.tif | 00950_00035_000038.tif |
| Woodstock | Handmarked | 00950_00033_000039.tif | 00950_00035_000039.tif |
| Woodstock | Handmarked | 00950_00033_000040.tif | 00950_00035_000040.tif |
| Woodstock | Handmarked | 00950_00033_000041.tif | 00950_00035_000041.tif |
| Woodstock | Handmarked | 00950_00033_000042.tif | 00950_00035_000042.tif |
| Woodstock | Handmarked | 00950_00033_000043.tif | 00950_00035_000043.tif |
| Woodstock | Handmarked | 00950_00033_000044.tif | 00950_00035_000044.tif |
| Woodstock | Handmarked | 00950_00033_000045.tif | 00950_00035_000045.tif |
| Woodstock | Handmarked | 00950_00033_000046.tif | 00950_00035_000046.tif |
| Woodstock | Handmarked | 00950_00033_000047.tif | 00950_00035_000047.tif |
| Woodstock | Handmarked | 00950_00033_000048.tif | 00950_00035_000048.tif |
| Woodstock | Handmarked | 00950_00033_000049.tif | 00950_00035_000049.tif |
| Woodstock | Handmarked | 00950_00033_000050.tif | 00950_00035_000050.tif |

3. During the recount, this batch of hand-marked ballots was only scanned once which should have left Woodstock precinct 49 ballots short of the election night Statement of Votes cast and Arnold Mill 1 vote short of the election night Statement of Votes Cast.   However, the Statement of Votes Cast did not change between election night and the recount.  Those 50 double scanned handmarked ballots were replaced with 50 new handmarked ballots.

4. During the recount,  50 ballots which did not exist in the election night ballot image population appeared in the same configuration as the 50 ballots that were missing due to the fact that they weren't double scanned during the recount.  These 50 ballots were the only ballots not reconcilable in Woodstock and Arnold Mill between the election night and recount ballot image populations.

5. The list of new ballots which did not exist in the election night ballot image population but which first appeared in the recount ballot image population is as follows:

| Precinct | Ballot Type | New Ballot Image in Recount |
| --- | --- | --- |
| Woodstock | Handmarked | 00950_00196_000001.tif |
| Woodstock | Handmarked | 00950_00196_000002.tif |

| Woodstock | Handmarked | 00950_00196_000003.tif |
| Woodstock | Handmarked | 00950_00196_000004.tif |
| Woodstock | Handmarked | 00950_00196_000005.tif |
| Woodstock | Handmarked | 00950_00196_000006.tif |
| Woodstock | Handmarked | 00950_00196_000007.tif |
| Woodstock | Handmarked | 00950_00196_000008.tif |
| Woodstock | Handmarked | 00950_00196_000009.tif |
| Woodstock | Handmarked | 00950_00196_000010.tif |
| Woodstock | Handmarked | 00950_00196_000011.tif |
| Woodstock | Handmarked | 00950_00196_000012.tif |
| Woodstock | Handmarked | 00950_00196_000013.tif |
| Woodstock | Handmarked | 00950_00196_000014.tif |
| Woodstock | Handmarked | 00950_00196_000015.tif |
| Woodstock | Handmarked | 00950_00196_000016.tif |
| Woodstock | Handmarked | 00950_00196_000017.tif |
| Woodstock | Handmarked | 00950_00196_000018.tif |
| Woodstock | Handmarked | 00950_00196_000019.tif |
| Woodstock | Handmarked | 00950_00196_000020.tif |
| Woodstock | Handmarked | 00950_00196_000021.tif |
| Woodstock | Handmarked | 00950_00196_000022.tif |
| Woodstock | Handmarked | 00950_00196_000023.tif |
| Woodstock | Handmarked | 00950_00196_000024.tif |
| Woodstock | Handmarked | 00950_00196_000025.tif |
| Woodstock | Handmarked | 00950_00196_000026.tif |
| Woodstock | Handmarked | 00950_00196_000027.tif |
| Woodstock | Handmarked | 00950_00196_000028.tif |
| Woodstock | Handmarked | 00950_00196_000029.tif |
| Woodstock | Handmarked | 00950_00196_000030.tif |
| Woodstock | Handmarked | 00950_00196_000031.tif |
| Woodstock | Handmarked | 00950_00196_000032.tif |
| Woodstock | Handmarked | 00950_00196_000033.tif |
| Woodstock | Handmarked | 00950_00196_000034.tif |
| Woodstock | Handmarked | 00950_00196_000035.tif |
| Woodstock | Handmarked | 00950_00196_000036.tif |
| Woodstock | Handmarked | 00950_00196_000037.tif |
| Woodstock | Handmarked | 00950_00196_000038.tif |
| Woodstock | Handmarked | 00950_00196_000039.tif |
| Woodstock | Handmarked | 00950_00196_000040.tif |
| Woodstock | Handmarked | 00950_00196_000041.tif |
| Woodstock | Handmarked | 00950_00196_000042.tif |
| Woodstock | Handmarked | 00950_00196_000043.tif |
| Woodstock | Handmarked | 00950_00196_000044.tif |
| Woodstock | Handmarked | 00950_00196_000045.tif |

| Woodstock | Handmarked | 00950_00196_000046.tif |
|-----------|------------|------------------------|
| Woodstock | Handmarked | 00950_00196_000047.tif |
| Woodstock | Handmarked | 00950_00196_000048.tif |
| Woodstock | Handmarked | 00950_00196_000049.tif |
| Arnold Mill | Handmarked | 00950_00196_000050.tif |

6. Woodstock and Arnold Mill were not the only Precincts which had different ballots included in the recount ballot image population from the election night ballot image population but this is the most egregious example of creating fraudulent ballots in order to not deviate from the SoVC totals between election night and the recount.   I can provide information about other instances if you'd like to investigate them as well.


## How and When was Issue Discovered:

Issue was discovered over a period of time between 10/6/2021 and 12/22/2021.  The first request for an explanation was to the Cherokee County Board of Elections on 1/3/2022.

## Research Methods Utilized (websites, text messages, photographs found in research):

- Election Night (MC1) and Recount (MC2) Ballot Images produced by the Cherokee County Board of Elections
- Election Night (MC1) Statement of Votes Cast provided by the Cherokee County Board of Elections
- Recount (MC2) Statement of Votes Cast provided by the Cherokee County Board of Elections


## Full Contact Information for All Witnesses:

I am not aware of any eye witnesses to the creation and insertion of the 50 new ballots in the recount ballot image population to replace the 50 double scanned and counted ballots from the election night ballot image population

## Reports filed with Election Officials:

- Presented this information to the Cherokee County Election Board members at their monthly meeting on 1/3/2022.   A written response followed that this investigation would require an Elections Security Expert and that I should therefore contact the Secretary of State's office for an investigation to be conducted.

| COUNTY | TALLY | HMPB? | BALLOT ID 1 | BALLOT ID 2 |
|--------|-------|-------|-------------|-------------|
| Early | Machine Count 1 | Yes | 00130_00013_000001 | 00130_00014_000001 |
| Early | Machine Count 1 | Yes | 00130_00013_000002 | 00130_00014_000002 |
| Early | Machine Count 1 | Yes | 00130_00013_000003 | 00130_00014_000003 |
| Early | Machine Count 1 | Yes | 00130_00013_000004 | 00130_00014_000004 |
| Early | Machine Count 1 | Yes | 00130_00013_000005 | 00130_00014_000005 |
| Early | Machine Count 1 | Yes | 00130_00013_000006 | 00130_00014_000006 |
| Early | Machine Count 1 | Yes | 00130_00013_000007 | 00130_00014_000007 |
| Early | Machine Count 1 | Yes | 00130_00013_000008 | 00130_00014_000008 |
| Early | Machine Count 1 | Yes | 00130_00013_000009 | 00130_00014_000009 |
| Early | Machine Count 1 | Yes | 00130_00013_000010 | 00130_00014_000010 |
| Early | Machine Count 1 | Yes | 00130_00013_000011 | 00130_00014_000011 |
| Early | Machine Count 1 | Yes | 00130_00013_000012 | 00130_00014_000012 |
| Early | Machine Count 1 | Yes | 00130_00013_000013 | 00130_00014_000013 |
| Early | Machine Count 1 | Yes | 00130_00013_000014 | 00130_00014_000014 |
| Early | Machine Count 1 | Yes | 00130_00013_000015 | 00130_00014_000015 |
| Early | Machine Count 1 | Yes | 00130_00013_000016 | 00130_00014_000016 |
| Early | Machine Count 1 | Yes | 00130_00013_000017 | 00130_00014_000017 |
| Early | Machine Count 1 | Yes | 00130_00013_000018 | 00130_00014_000018 |
| Early | Machine Count 1 | Yes | 00130_00013_000019 | 00130_00014_000019 |
| Early | Machine Count 1 | Yes | 00130_00013_000020 | 00130_00014_000020 |

| Early | Machine Count 1 | Yes | 00130_00013_000021 | 00130_00014_000021 |
| Early | Machine Count 1 | Yes | 00130_00013_000022 | 00130_00014_000022 |
| Early | Machine Count 1 | Yes | 00130_00013_000023 | 00130_00014_000023 |
| Early | Machine Count 1 | Yes | 00130_00013_000024 | 00130_00014_000024 |
| Early | Machine Count 1 | Yes | 00130_00013_000025 | 00130_00014_000025 |
| Early | Machine Count 1 | Yes | 00130_00013_000026 | 00130_00014_000026 |
| Early | Machine Count 1 | Yes | 00130_00013_000027 | 00130_00014_000027 |
| Early | Machine Count 1 | Yes | 00130_00013_000028 | 00130_00014_000028 |
| Early | Machine Count 1 | Yes | 00130_00013_000029 | 00130_00014_000029 |
| Early | Machine Count 1 | Yes | 00130_00013_000030 | 00130_00014_000030 |
| Early | Machine Count 1 | Yes | 00130_00013_000031 | 00130_00014_000031 |
| Early | Machine Count 1 | Yes | 00130_00013_000032 | 00130_00014_000032 |
| Early | Machine Count 1 | Yes | 00130_00013_000033 | 00130_00014_000033 |
| Early | Machine Count 1 | Yes | 00130_00013_000034 | 00130_00014_000034 |
| Early | Machine Count 1 | Yes | 00130_00013_000035 | 00130_00014_000035 |
| Early | Machine Count 1 | Yes | 00130_00013_000036 | 00130_00014_000036 |
| Early | Machine Count 1 | Yes | 00130_00013_000037 | 00130_00014_000037 |
| Early | Machine Count 1 | Yes | 00130_00013_000038 | 00130_00014_000038 |
| Early | Machine Count 1 | Yes | 00130_00013_000039 | 00130_00014_000039 |
| Early | Machine Count 1 | Yes | 00130_00013_000040 | 00130_00014_000040 |
| Early | Machine Count 1 | Yes | 00130_00013_000041 | 00130_00014_000041 |

| | | | | |
|---|---|---|---|---|
| Early | Machine Count 1 | Yes | 00130_00013_000042 | 00130_00014_000042 |
| Early | Machine Count 1 | Yes | 00130_00013_000043 | 00130_00014_000043 |
| Early | Machine Count 1 | Yes | 00130_00013_000044 | 00130_00014_000044 |
| Early | Machine Count 1 | Yes | 00130_00013_000045 | 00130_00014_000045 |
| Early | Machine Count 1 | Yes | 00130_00013_000046 | 00130_00014_000046 |
| Early | Machine Count 1 | Yes | 00130_00013_000047 | 00130_00014_000047 |
| Early | Machine Count 1 | Yes | 00130_00013_000048 | 00130_00014_000048 |
| Early | Machine Count 1 | Yes | 00130_00013_000049 | 00130_00014_000049 |

SHARE:



Join Our Email List



**Exhibit**
CGG 0019

August 20, 2020

Dear ,

Thanks to your generous donation to Coalition for Good Governance, we have great progress to report, and are redoubling our efforts to obtain court-ordered improvements to Georgia's election system before November. We are asking you to also commit to reinvest to support this unique and high-potential effort with an additional donation.

Last week the Court ordered expedited discovery on the new touchscreen voting system for supporting our upcoming Motion for Preliminary Injunction against using the unauditable and problem-laden components of the new $110+ million system. The formal discovery will be supplemented by the "boots on the ground" research CGG's donors made possible since the new voting system's pilot last fall. Our evidence is strong that this overly complex system has no place in Georgia's elections.

With your help, we've been able to collect much wide-ranging evidence of statewide voting system issues including—

 -Votes Detected But Not Counted

 -Equipment Malfunctions

 -Ballot Secrecy Violations

For details, please see the News page on CoalitionForGoodGovernance.org. The rollout of Georgia's new voting system has been as bad as we predicted. The system's continuing failures have brought voter disenfranchisement due to long lines, and voting machine and scanning software problems leading to uncounted votes.

All of these problems could have been easily avoided, and still can be avoided in November if we are successful in timely providing the Court with the evidence of the problems and the very feasible, workable solution. That common sense solution is:

-use paper copies of pollbooks to continue the voting when the electronic pollbooks malfunction;

-use hand marked paper ballots in the polling places instead of the cumbersome, insecure touchscreen machines;

-count the hand marked paper ballots using the new Dominion scanners and conduct robust post-election audits.

Coalition for Good Governance is best positioned in the courts to achieve urgently needed changes for November, but to do so we need your immediate help to fund the attorneys' fees and experts' forensic examinations and cybersecurity reports that were recently undertaken. Litigation is expensive and the state has over a dozen attorneys assigned to our case at Georgia taxpayers' expense. CGG is a lean and nimble nonprofit. We leverage the attorneys' and experts' time with talented volunteers. We rely on donors like you to help pay the legal and experts' fees and expenses that are mounting daily with this renewed effort driven by the Court's recent order. Our incredible interns, energetic young warriors for fair elections, are paid because of your generosity.

Please consider making a donation today and recurring donations every month through November.

You're probably besieged right now with requests from candidates. Consider this—your favorite candidates will get the chance to make a difference for good governance *only* if they have a fair election. Coalition for Good Governance is laser focused on ending unaccountable elections caused by unreliable and insecure voting system processes that lead to long lines and uncounted votes. Our work is unique, and we need your help now.

Together, we can make Georgia elections safe and secure for all voters.
Thank you for your support.

Sincerely,
Marilyn Marks
Executive Director
Coalition for Good Governance
704 292 9802 cell

CGG2021001277809

SHARE:

Join Our Email List



**Exhibit**
CGG 0020

CGG2021001277824

September 13, 2020

Dear Friends of Coalition for Good Governance,

The stakes are clear--our constitutional right to have our votes counted hangs in the balance in Georgia.

After two days of hearings, which will resume Monday before Judge Totenberg, the amount of compelling new evidence the Coalition presented to the Court included

- how inferior ballot scanners and arbitrary software settings are discarding some votes,
- why audits of election outcomes are not possible with the vulnerable Ballot Marking Device system,
- how an updated backup paper pollbook will reduce polling place lines, and
- how serious security vulnerabilities discredit the new voting system, including the electronic pollbooks.

Our nationally recognized experts include Philip Stark, inventor of risk limiting audits of elections, Harri Hursti, ethical hacker and co-founder of Voting Village at Def-Con, and Kevin Skoglund, a software developer and expert in voting systems.

Will all Georgia voters be able to vote on hand marked paper ballots in the upcoming general election? This is the core issue that the Court will decide after closed door testimony concerning Georgia's current voting system's security vulnerabilities concludes on Monday.

Can you make a contribution now to help with attorneys' fees and experts' work? Your investment in our battle for election integrity is making a difference, yet there is more work to be done to ensure that our votes are secure and fair.

As the State of Georgia's counsel told the court: "You would be the first judge to find that Ballot Marking Device systems infringe on our constitutional right to vote."

This case could impact voting throughout the United States. Can we count on you to support the essential battle for simple, secure, and defensible elections?

Please donate now at https://coalitionforgoodgovernance.org/donate/.

Thank you.

On behalf of the grateful Coalition for Good Governance Team,

Marilyn R. Marks, Executive Director
c/o Board Secretary, Coalition for Good Governance
1520 Cress Court, Boulder, CO 80304
(704) 292 9802
Marilyn@USCGG.org


Coalition for Good Governance is a nonpartisan, nonprofit organization (501(c)(3)) focused on election security and transparency.

## Help Us Fight Georgia's Flawed Voting Laws



June 30, 2021

Dear Friends,

The stakes are clear: Our constitutional right to have our votes accurately counted hangs in the balance in Georgia. Georgia's new anti-democratic, anti-transparency voting law (SB202), combined with the un-auditable electronic voting system in Georgia, makes for the toughest but most important state voting rights fight in the nation.

In the wake of the passage of Georgia's SB202 law, we must do our part to work to dismantle this legislative weapon against basic democratic principles, election integrity, and election security. We are leveraging our expertise in election security, transparency, and election oversight to challenge the policy failures in the law. Therefore, our newest lawsuit (https://coalitionforgoodgovernance.sharefile.com/share/view/s154d5b2a6ddc4d6fb2505433f55223e9) (supported by our motion for preliminary injunction (https://coalitionforgoodgovernance.sharefile.com/share/view/s6413352986ea4977a9058d65c2d4a844)) seeks a judgment that the challenged provisions of SB202 violate the U.S. Constitution.

Our Curling v Raffensperger case to ban the touchscreen voting machines (touchscreen ballot marking devices) continues in federal court with important rulings (https://coalitionforgoodgovernance.sharefile.com/share/view/sb0e8c40f4204bcfb) from Judge Totenberg in October 2020 concerning the vulnerabilities of the voting system. We expect a trial on the merits in early 2022.

Your donation to Coalition for Good Governance will help defend election transparency and security. We are a lean and nimble nonprofit. We in management take no compensation. We rely on donors like you to help fund the legal and experts' fees and expenses. Your generosity also assures that our incredible interns, energetic young warriors for fair elections, are compensated.

With your support we will continue to fight against the dangerously vulnerable ballot marking devices, to ensure elections are conducted transparently, and to dismantle unconstitutional provisions in SB202.

Thank you for supporting the fight for transparent and evidence-based elections!

The PayPal website is user friendly and secure. On the PayPal entry page, a monthly donation option is available to support ongoing work.

If you prefer to donate by check, please make out the check to Coalition for Good Governance and mail it to the CGG Board Secretary:

CGG Secretary
1520 Cress Court
Boulder, CO 80304

Thank you for your support!

On behalf of the grateful Coalition for Good Governance Team,

**Exhibit
CGG 0021**

Case 1:17-cv-02989-AT   Document 1565-5   Filed 01/07/23   Page 175 of 292

Marilyn R. Marks, Executive Director

(704) 292 9802

Marilyn@USCGG.org (mailto:Marilyn@USCGG.org)

P.S. Our EIN is 26-3670783. Our Public Disclosure copy of the 2019 Return of Organization Exempt From Income Tax (Form 990) is available here (https://coalitionforgoodgovernance.sharefile.com/d-sc3aac8a1eed34bf79d89d299c6a44bbd). Coalition for Good Governance is a nonpartisan, nonprofit organization (501(c)(3)) focused on election security and transparency.

If you experience problems with the PayPal app, read on. If you are using "Autofill" to complete the donation information, it may help to manually enter the small amount of data required. Some donors have found it useful to change the data entry from a cellphone to a laptop or computer.

# The Coalition Challenges the Secretary of State and Election Practices in Georgia

Look what happens when a small, volunteer-run, nonpartisan, nonprofit 501(c)(3) organization focuses on election transparency and verifiability. And watch our progress in bringing effective challenges to un-auditable electronic voting systems in Georgia, assisted by your donation that will exclusively support the legal and forensic work.

 Donate

### The Coalition's Continuing Lawsuit to Obtain Hand-Marked Paper Ballots

On October 12, 2018, Rachel Maddow told her viewers about the Georgia scandals that Coalition for Good Governance has been fighting since summer 2017 (http://www.msnbc.com/transcripts/rachel-maddow-show/2018-10-12). She mentions our case, calling the Coalition the "good government group." She explains that the Georgia government's response to our lawsuit was to wipe the servers' memories so that no further information about possible hacking could come to light. She also portrays [then SOS, now Gov.] Kemp's partisan attacks to disenfranchise nonwhite voters via misuse of law enforcement and with the cooperation of the state legislature.

Our February 2019 discovery of 130,000 missing votes in the 2018 Lieutenant Governor's race led to some national press coverage (https://www.theroot.com/exclusive-thousands-of-black-votes-in-georgia-disappea-1832472558), but it took the *Atlanta Journal-Constitution* until August (https://www.ajc.com/news/state--regional-govt--politics/mystery-missing-votes-deepens-congress-investigates-georgia/x4OTY0ylxfA0Z0Rg6wjkyN/) to alert Georgia voters to the scandal. At that point, Maddow again covered the Coalition's efforts (https://www.msnbc.com/rachel-maddow/watch/voting-machine-errors-in-georgia-seen-as-part-of-bigger-problem-67725381775) and gave an explanation of why the missing votes were so disturbing. We are still seeking forensic discovery of what happened to those votes so that it won't happen again.

We are now fighting Georgia's terrible decision to purchase electronic ballot marking devices that encode the voter's choices into a barcode on the voting machine printout. The unverifiable barcode is scanned to tabulate the votes. The voter is forced to cast a vote they cannot read. Therefore, after our August 2019 victory that got un-auditable paperless touchscreen machines banned in Georgia, we asked the Court to ban electronic touchscreen ballot marking devices (BMDs) and require electronic pollbook corrections, paper pollbook backups, and hand-marked paper ballots for future elections.

The press has generally not described how easily electronic machines can be rigged without a trace. That danger is why Coalition for Good Governance is fighting for hand-marked paper ballots. The *Washington Post* ran a December 2019 story (https://www.washingtonpost.com/politics/as-georgia-rolls-out-new-voting-machines-for-2020-worries-about-election-security-persist/2019/12/23/c5036d74-2017-11ea-bed5-880264c0c91a9_story.html) explaining some of the issues at play in our lawsuit. Three of our expert witnesses, Andrew Appel, Richard DeMillo, and Phillip Stark, are quoted. The Coalition is referred to in a photo caption, but otherwise whenever Judge Amy Totenberg is mentioned, that refers to our case. Updated stories appear on our website's News Page.

However, the press has recently reported on the frightening findings of two of those expert witnesses, Andrew Appel (https://coalitionforgoodgovernance.sharefile.com/share/view/s270d7cc8d63140798488719d0c218820) and Phillip Stark (https://coalitionforgoodgovernance.sharefile.com/share/view/se6afd8d26cd74bb1becb34a4ef6a4fd4), as well as another of our expert witnesses, J. Alex Halderman (https://coalitionforgoodgovernance.sharefile.com/share/view/s0a60d3ee5e294b7b87255ed43f2f4f98). An overview appeared in the Associated Press (https://apnews.com/article/technology-business-science-voting-election-2020-6755cf1c409f4aab613df8891b84272d), but to see most clearly what these three researchers have discovered, read their own mid-summer words on the links provided here and on the News Page under Coalition Work.

Coalition for Good Governance was in multiple hearings in front of Judge Totenberg during 2020 and up to the present in 2021. Now we are in that federal lawsuit's discovery phase. This effort is resource intensive, and we expect many disputes with the state officials along the way.



**Exhibit CGG 0022**

In the meantime, on March 25, 2021, the state of Georgia adopted a far-reaching elections bill, SB202, and we are challenging several key provisions. In a new federal lawsuit (Coalition for Good Governance v Kemp), we brought a subset of our claims to court, seeking a preliminary injunction very early in the process. The case is in United States District Court in front of Judge J. P. Boulee. On August 20, 2021, the Court found that we have standing to bring these claims and struck down the challenged Photography Ban. Although the Court denied relief at this early stage on the other portions of the motion, we continue the litigation to have them declared unconstitutional in future proceedings. There are eight lawsuits against various provisions of SB202. Ours is the first to have any relief granted. This small early victory is an important one as the case moves forward.

**Action Needed**

Now the arduous discovery phase of the federal lawsuit before Judge Totenberg has arrived. Discovery is and will continue to be resource intensive, and we expect many disputes with the state officials. We also expect further hearings in front of Judge Boulee to be scheduled soon.

Please join our efforts!

Marilyn R. Marks, Executive Director
(704) 292 9802
Marilyn@USCGG.org (mailto:Marilyn@USCGG.org)

## Our Challenge to Georgia's New Election Law (SB202)

In the wake of the passage of Georgia's SB202 law, we must do our part to work to dismantle this legislative weapon against basic democratic principles, election integrity, and election security. During mid-April, Coalition for Good Governance will file a lawsuit to challenge several parts of the new law that have not been covered in the other essential recent federal lawsuits by voting rights organizations. Our wheelhouse is election security, election technology, citizen oversight and transparency of elections. Our claims will primarily focus on those areas, leveraging our expertise. No one lawsuit will remove all of the dangerous parts of SB202, nor will any pending federal legislation. Numerous cases from varying perspectives and plaintiffs are essential to take down this democracy-destroying new law.

Our legal team will include attorneys who have represented Coalition for Good Governance in our successful lawsuits to

- stop arbitrary rejections of mail ballots (2018),
- ban the use of paperless voting machines (2019),
- require paper pollbook backups (2020—under appeal by State), and
- change ballot scanner settings for greater accuracy (2020—under appeal by State).

Our Curling v Raffensperger case to ban the new touchscreen voting machines continues in federal court with important rulings from Judge Totenberg in October 2020 (https://coalitionforgoodgovernance.sharefile.com/share/view/sb0e8c40f4204bcfb) concerning the security risks of the voting system. Discovery will continue in the case this spring and summer. Dr. Alex Halderman recently reported to the Court in a sealed declaration (https://coalitionforgoodgovernance.sharefile.com/d-s0aee83ba56a24aa39d66edfbb61cd4db) that the security risks of the system are considerably greater than had been initially assumed. As well, his conclusion is that the new touchscreen system is even more vulnerable than the previous touchscreen system banned by the Court as unconstitutional.

We at CGG continue the battle for election integrity and election security on legal battlegrounds that few others attempt because of the technical and legal complexities. We are proud of our track record and encourage your support of our ongoing efforts. None of the management of the Coalition receive any remuneration. Donations go only to cover our litigation support expenses and modest compensation for our analyst and interns. Please see our Donate page (https://coalitionforgoodgovernance.org/donate/).

### Filing Links

02.10.2022 United States Cybersecurity and Infrastructure Security Agency (CISA) gives notice to the Court concerning the Agency's expected work to review the hacking risk to Georgia's voting system (https://www.dropbox.com/s/ky4wry7v6en95zb/2022-02-10%20Notice%20%5Bdckt%201314_0%5D.pdf?dl=0)

02.07.2022 Plaintiffs' Motion for Leave to Amend the Amended Complaint against SB202. Amendment referring to Tally Rules is included as Appendix A. (https://coalitionforgoodgovernance.sharefile.com/share/view/sb512...)

02.02.2022 Coalition Plaintiffs' Statement on the Disclosure of the Halderman Report (https://www.dropbox.com/s/9ljwk8ls9n4kqrp/2022-02-02%20Notice%20Of%20Filing%20Halderman%20report%20300_0.pdf?dl=0)

01.12.2022 Motion to Intervene in Curling v. Raffensperger, et al., for the Limited Purpose of obtaining access to J. Alex Halderman's sealed report of his analysis of Dominion voting machines (https://www.dropbox.com/s/a00c51r1504tny2/2022-01-12%20Motion%20%5Bdckt%201251_0%5D.pdf?dl=0)

01.11.2022 Declaration of Duncan A. Buell, Ph.D., in which he describes his analysis methods and results for several Georgia counties' November 2020 electronic files of individual ballot data (https://coalitionforgoodgovernance.sharefile.com/share/view/s40d...)

12.09.2021 Judge J. P. Boulee's ruling in the Coalition's favor to deny GA Gov. Kemp and SOS Raffensperger's motions to dismiss our case against SB202 (https://coalitionforgoodgovernance.sharefile.com/share/view/s4aba...)

10.06.2021 Brief in Support of Coalition Plaintiffs' Motion to Sever, Grant Motion for Attorney's Fees, Grant Motion for Sanctions, and Enter Final Judgment on Severed Claims (https://coalitionforgoodgovernance.sharefile.com/d-sc48a9192c5974b46b853d6ca3za3f818)

10.06.2021 Coalition Plaintiffs' Motion to Sever, Grant Motion for Attorney's Fees, Grant Motion for Sanctions, and Enter Final Judgment on Severed Claims (https://coalitionforgoodgovernance.sharefile.com/d-se4a9c6ddab1c44868f8703b7cc4e54ae)

07.13.2021 Declaration of J. Alex Halderman, Ph.D., in which he asks the Court to allow public disclosure (subject to certain redactions for the sake of election security) of the results of his security analysis of Dominion's election equipment (https://coalitionforgoodgovernance.sharefile.com/share/view/sd75l...)

07.07.2021 Order by U.S. District Judge J. P. Boulee denying Coalition for Good Governance and other plaintiffs' Motion for Preliminary Injunction (https://coalitionforgoodgovernance.sharefile.com/share/view/sc8f5...)

07.02.2021 Motion for Leave to File Post-Hearing Brief (https://coalitionforgoodgovernance.sharefile.com/share/view/s27d...)

06.30.2021 Motion of Georgia First Amendment Foundation for Leave to File Amicus Curiae Brief AND Amicus Curiae Brief of Georgia First Amendment Foundation (https://coalitionforgoodgovernance.sharefile.com/d-see4a39670ff847f9b40a778c61fe0969)

06.28.2021 Expert Report of Andrew W. Appel, Ph.D., regarding voter verifiability problem with Ballot Marking Devices and the hackability hazard (https://coalitionforgoodgovernance.sharefile.com/d-s85b14b535ca148afbd06a1e15749aa93)

06.28.2021 Reply Brief in Support of Plaintiffs' Motion for Preliminary Injunction (https://coalitionforgoodgovernance.sharefile.com/d-s1e604850a95047ea9e88e2671370775a)

06.14.2021 CGG's Motion for Preliminary Injunction, for Expedited Briefing, and for Oral Hearing to preserve the right to vote without unjustified state interference, to protect freedom of speech, and to ensure a meaningful separation of powers — three pillars of liberty (https://www.dropbox.com/s/aqgfxb5v5dl7vhv/15%20MPI%20pack...dl=0)

06.11.2021 Amended Complaint. "Liberty requires at least three essential things—an unfettered right to vote, freedom of speech, and the meaningful separation of powers. This lawsuit is necessary to preserve individual constitutional



**Exhibit
CGG 0023**

rights, and constitutional government, against the attacks
that SB202 makes on these three pillars of liberty."
(https://coalitionforgoodgovernance.sharefile.com/share/s154c

05.17.2021 Coalition for Good Governance Filed a Lawsuit
against GA SOS and State Election Board to Challenge Key
Unconstitutional Provisions of SB202
(https://coalitionforgoodgovernance.sharefile.com/share/view/s89ca

01.14.2021 Coalition Plaintiffs' Joint Proposed Schedule for
Discovery (also Dispositive and Daubert motions)
(https://coalitionforgoodgovernance.sharefile.com/share/view/sa9d2

11.18.20 Coalition Plaintiffs' Reply Brief in Support of
Proposed Scanner Remedy (Doc. 990-2) Filed Pursuant to
Order (Doc. 964)
(https://coalitionforgoodgovernance.sharefile.com/d-
s99839b9be35343d980d0ffeefde1c8c4)

11.05.2020 Coalition Plaintiffs' Emergency Motion for
Expedited Discovery and Immediate Injunctive Relief
(https://coalitionforgoodgovernhttps://coalitionforgoodgovernance.s
s85b14b535ca148afbd06a1e15749aa93ance.sharefile.com/share/view

10.21.2020 The Coalition's Brief in Opposition to the
State's Motion to Stay, the United States Court of Appeals
for the Eleventh Circuit
(https://coalitionforgoodgovernance.sharefile.com/d-
s454413bd914edaa)

10.14.2020 The Court Denies Defendants' Motion to Stay
Preliminary Injunction on Paper Pollbook Backup
(https://coalitionforgoodgovernance.sharefile.com/s887t

10.12.2020 New Order by the Court Concerning Pollbook
Backup Printouts at Each Polling Place on Election Day
(https://coalitionforgoodgovernance.sharefile.com/d-
s999ff46733a43a99)

10.11.2020 Court's Order on Motion for Preliminary
Injunction
(https://coalitionforgoodgovernance.sharefile.com/d-
sb0e8c40f4204bcfb)

10.09.2020 Coalition Plaintiffs' Response in Opposition to
State Defendants' Emergency Motion to Stay Court's
Injunction on Paper Pollbook Backups
(https://coalitionforgoodgovernance.sharefile.com/share/view/s226

10.07.2020 Plaintiffs' Notice of Filing of Correspondence
with State Defendants and Their Refusal to Comply with
The Court's September 28, 2020, Docket Order
(https://coalitionforgoodgovernance.sharefile.com/s52cb

10.05.2020 Order by the Court Denying the Defendants'
Motion to Seal Dr. Eric Coomer's Technical Testimony
(https://coalitionforgoodgovernance.sharefile.com/d-
sc46a6fbfbcd464ca)

10.04.2020 Declarations by Experts Harri Hursti and
Kevin Skogland and Transcript of Zoom Video Conference
Proceedings before The Honorable Amy Totenberg,
October 1, 2020
(https://coalitionforgoodgovernance.sharefile.com/share/view/sd72a

10.03.2020 CGG Attorney's Letter to Fulton County about
County's Ongoing State Law Violations, Which Can Be
Remedied Only by Switching to Hand-Marked Paper
Ballots
(https://coalitionforgoodgovernance.sharefile.com/share/view/s7e56

09.30.2020 Plaintiffs' Request for Emergency Conference
Regarding Statewide Changes to Election Databases and
BMD Software
(https://coalitionforgoodgovernance.sharefile.com/share/view/sb8d5

09.29.2020 Plaintiffs' Notice of Filing Materials Regarding
Georgia's Intended Replacement of Dominion BMD
Software across the State
(https://coalitionforgoodgovernance.sharefile.com/d-
s75834a4c15ea43a3bedc9369ab50af2f)

09.28.2020 Opinion and Order by the Court Granting
Coalition Plaintiffs' Motion for Preliminary Injunction on
Paper Pollbook Backups
(https://coalitionforgoodgovernance.sharefile.com/d-
s6f89e575352f42abbd11e824c91bd69a)

09.28.2020 Transcript of Telephone Conference
Proceedings before The Honorable Amy Totenberg, U.S.
District Judge (partially redacted)
(https://coalitionforgoodgovernance.sharefile.com/share/view/s6f85

09.25.2020 Emergency Notice of Supplemental Evidence
Relating to Motions for Preliminary Injunction—Serious
problem found in GA's Nov. election programming
(https://coalitionforgoodgovernance.sharefile.com/d-
s66faa870bad54f9c939eb5181105 7c41)

09.17.2020 Transcript of Hearing on Preliminary
Injunction, United States District Court for the Northern
District of Georgia, Atlanta Division, Judge Totenberg
Presiding, September 10, 11, and 14, 2020
(https://coalitionforgoodgovernance.sharefile.com/d-
s0366ba1ca3014703895ad197d8e3c6c1)

09.16.2020 Coalition Plaintiffs' Brief in Response to Court
Order (Document 900)
(https://coalitionforgoodgovernance.sharefile.com/d-
see9e1c7c89b4e808)

09.16.2020 Curling Plaintiffs' Response to the Court's
September 15, 2020, Order
(https://coalitionforgoodgovernance.sharefile.com/d-
s30f6cfa1a274a96a)

09.01.2020 Coalition Plaintiffs' Reply Brief in Support of
Motion for Preliminary Injunction Relating to BMDs,
Scanning and Tabulating, and Auditing
(https://coalitionforgoodgovernance.sharefile.com/d-
s6f17b63c75e4993b)

08.24.2020 Coalition Plaintiffs' Motion For Preliminary
Injunction Relating to BMDs, Scanning and Tabulating,
and Auditing
(https://coalitionforgoodgovernance.sharefile.com/d-
sf37f4507d0a74633b6fb81ae5fa6b956)

08.21.2020 Coalition Plaintiffs' Motion for Preliminary
Injunction on Paper Pollbook Backups
(https://coalitionforgoodgovernance.sharefile.com/d-
s2fd0badae72e4db5af2626a303d4a1b9)

08.11.2020 Judge Totenberg's Order to Grant Most of
CGG's Emergency Motions for Expedited Discovery
(https://coalitionforgoodgovernance.sharefile.com/share/view/s100l

08.02.2020 Motion of Coalition Plaintiffs to File Notice of
Filing Evidence and Request for Immediate Injunctive
Relief on Paper Pollbook Backups
(https://coalitionforgoodgovernance.sharefile.com/d-
sb15d3d4756df47beaf4b8fbad77639e4)

07.31.2020 Notice of Rule 34 Request for Expedited
Inspection and Copying
(https://coalitionforgoodgovernance.sharefile.com/share/view/s8de

07.31.2020 Plaintiffs' Joint Statement Addressing Scope
and Timing of Proposed Expedited Discovery
(https://coalitionforgoodgovernance.sharefile.com/d-
s88412273d18141b0a3f9176ccc473dc3)

07.30.2020 Judge Totenberg's Order Authorizing
Expedited Discovery
(https://coalitionforgoodgovernance.sharefile.com/d-
s2ba43bf59b2c4e20897a15c10b8c78b3)

07.18.2020 Coalition for Good Governance Memo on Legal
Basis to Use Hand-Marked Paper Ballots, by Bruce P.
Brown
(https://coalitionforgoodgovernance.sharefile.com/share/view/s6c0c

07.17.20 Plaintiffs' Joint Emergency Motion for Expedited
Discovery and Evidentiary Hearing
(https://coalitionforgoodgovernance.sharefile.com/d-
s082318633d04905992ff318c1369ff9)

04.20.20 CGG COVID Complaint as Filed
(https://coalitionforgoodgovernance.sharefile.com/d-
s9bfb7dd1bc72446f976971120d5f6863)

04.06.20 Request for reexamination of certain voting
system components because of COVID-19
(https://coalitionforgoodgovernance.sharefile.com/d-
s933677bc7ebc41d485db0d7b0c3ac1e2)

03.13.20 Brief of the Electronic Privacy Information Center
as amicus curiae regarding voter privacy and the secret
ballot (https://coalitionforgoodgovernance.sharefile.com/d-
sdf10a4b0dd75468ca)

02.24.20 Emergency Motion for an order requiring
Respondents to comply with Georgia Constitution
provision that "Elections by the people shall be by secret
ballot."
(https://coalitionforgoodgovernance.sharefile.com/d-
s23069f4248840tbb)

01.16.20 Coalition Plaintiffs' Status Report Regarding BMD
Implementation and Response to State Defendants'
Request to Destroy DRE System Records
(https://coalitionforgoodgovernance.sharefile.com/d-
s0dce50c25084f0da)

12.16.19 Coalition Plaintiffs' Reply Brief in Support of
Motion for Preliminary Injunction
(https://coalitionforgoodgovernance.sharefile.com/d-
s48b58ba54ce40dab)

10.23.19 Coalition Plaintiffs' Motion for Preliminary Injunction (https://coalitionforgoodgovernance.sharefile.com/d-s63984aa323b435da)

10.11.19 Plaintiffs' Joint Motion for Sanctions (https://coalitionforgoodgovernance.sharefile.com/d-se451f75ce514579a)

10.08.19 Coalition Plaintiffs' Reply in Support of Motion to Alter or Amend the Judgment (https://coalitionforgoodgovernance.sharefile.com/d-se6cf3dc94bf434ea)

09.12.19 Proposed Order Granting Coalition Plaintiffs' Motion to Alter or Amend the Judgment (https://coalitionforgoodgovernance.sharefile.com/d-safoe3d8fe55454c8)

09.12.19 Coalition Plaintiffs' Motion to Alter or Amend the Judgment (https://coalitionforgoodgovernance.sharefile.com/d-s2e67a6faf2c4f7ba)

09.12.19 Coalition Plaintiffs' Brief in Support of Their Motion to Amend or Alter Judgment (https://coalitionforgoodgovernance.sharefile.com/d-s322d31bdb144bae9)

09.06.19 Coalition Plaintiffs' Motion for Leave to File Supplemental Complaint to U.S. District Court (https://coalitionforgoodgovernance.sharefile.com/share/view/s7bdc...

08.19.19 Petition by Over 1,450 Georgia Voters for Reexamination of the Dominion Voting System by SOS-appointed Certification Agent (https://coalitionforgoodgovernance.sharefile.com/d-s8352ce01d4ca49d99194cc8b24b94525)

08.15.19 Judge Totenberg's Order Supporting Plaintiffs' Motion for Preliminary Injunction that GA End DRE Use, File Audit Requirements, and Address Voter Registration Database Deficiencies (https://coalitionforgoodgovernance.sharefile.com/d-sc8f29343ea8414cb)

07.25.19-07.26.19 Transcript of Hearing on Preliminary Injunction Proceedings Before the Honorable Amy Totenberg, U.S. District Judge, Volumes 1 and 2 (https://coalitionforgoodgovernance.sharefile.com/d-s80c876a0338f4b0bb6c1534504898141)

06.19.19 Coalition Plaintiffs' Notice of Filing Evidence: Parts One and Two (https://coalitionforgoodgovernance.sharefile.com/d-s5eb52aa7ee243644a)

05.21.19 Judge Totenberg's Order: Discovery Shall Begin Immediately (https://coalitionforgoodgovernance.sharefile.com/d-s1d3f5515f34716bd52bc2baacbfa20)

05.03.19 Amicus Brief Supporting Coalition's Demand in Georgia Supreme Court for Fair Election for Lt. Governor (https://coalitionforgoodgovernance.sharefile.com/d-sf71496b8e5ba6dd9)

04.30.19 Final Supplemental Brief to Georgia Supreme Court for Fair Election for Lt. Governor (https://coalitionforgoodgovernance.sharefile.com/d-sb4f6114192d4835b)

04.09.19 Coalition Plaintiffs' Status Report (https://coalitionforgoodgovernance.sharefile.com/d-s3a50ee68f4a4414ca)

02.07.19 US Court of Appeals for 11th Circuit Denies Georgia's Appeal (https://coalitionforgoodgovernance.sharefile.com/share/view/sbd3...

01.21.19 Motion for Expedited Consideration of Appeal of Lt. Gov. Election Contest (https://coalitionforgoodgovernance.sharefile.com/d-sd0bd31c136141af8)

01.07.19 Superior Court of Fulton County: Plaintiffs' Joint Consolidated Response to Pending Motions to Dismiss (https://coalitionforgoodgovernance.sharefile.com/d-sbe75ba200d34bffb)

11.23.18 Petition to Contest Georgia Lt. Gov. Election Result (https://coalitionforgoodgovernance.sharefile.com/d-s435b904c3924797a)

09.17.18 Order by U.S. District Judge Amy Totenberg in Response to Coalition Plaintiffs' Motion for Preliminary Injunction (https://coalitionforgoodgovernance.sharefile.com/d-sf16d09f7539498ab)

Current Projects – Coalition for Good Governance

08.20.18 Coalition Plaintiffs' Reply Brief in Support of
Motion for Preliminary Injunction
(https://www.scribd.com/document/386756732/20180820-
CGG-277-CGG-Reply-Brief-in-Support-of-Motion-for-
Preliminary-Injunction)

08.03.18 Coalition Plaintiffs' Motion for Preliminary
Injunction
(https://www.scribd.com/document/385466124/Coalition-
Plaintiffs-Motion-for-Preliminary-Injunction)

07.17.18 Coalition Plaintiffs' Response to Motion to Dismiss
Third Amended Complaint
(https://www.scribd.com/document/384948039/Plaintiffs-
Response-to-Motion-to-Dismiss-3rd-Amended-Complaint-
2018-07-17)

06.13.18 Coalition Plaintiffs' Third Amended Complaint
Accepted
(https://www.scribd.com/document/384947967/Third-
Amended-Complaint-2018-06-13)

04.16.18 Coalition Plaintiffs' Opposition to Motion for
Extension of Time
(https://www.scribd.com/document/376627361/Opposition-
to-Motion-for-Ext-of-Time)

04.05.18 Coalition Plaintiffs' Request for Status Conference
(https://www.scribd.com/document/375692856/4-06-18-
Coalition-Plaintiffs-Request-for-Status-Conference)

04.04.18 Coalition Plaintiffs' Proposed Third Amended
Complaint
(https://www.scribd.com/document/375566885/Coalition-
Proposed-Third-Amended-Complaint-1)



**Marilyn Marks** @MarilynRMarks1 · Jan 24 ···
11/ It hasn't worked for @GaSecofState and @GabrielSterling to impatiently declare that conspiracy claims are foolish and be dismissive. This is a result of an opaque and unverifiable system.

Totally unnecessary, when a simple transparent provable system was available.

💬 1    🔁 3    ♡ 12    ⬆



**Marilyn Marks** @MarilynRMarks1 · Jan 24 ···
12/ Would our nation be torn apart over claims of a "stolen election" if GA ballot processing had been open for basic oversight and if GA used hand marked ballots that could be counted and results proven?

Claims of vote flipping and manipulation would have been easily resolved.

💬 1    🔁 3    ♡ 10    ⬆



**Marilyn Marks** @MarilynRMarks1 · Jan 24 ···
13/ Remember that GA GOP lawmakers and @GaSecofState insisted on buying touchscreen barcode ballot system that CANNOT be audited--2019's HB316.
Only one GOP "no" vote in legislature.



💬 1    🔁 7    ♡ 10    ⬆



**Marilyn Marks** @MarilynRMarks1 · Jan 24 ···
14/ Sadly, Rep. Barry Fleming who rammed through HB316 with his lies has been named Chair of "Election Integrity" committee, signaling that GA is NOT to become  more transparent nor run auditable elections,  even with the nation torn apart because of GA election problems.



◂  ▸

▲ HIDE CAPTION                                    1/6
Rep. Barry Fleming listens to a presentation by Billy Murphy, of Clear Ballot, a voting machine manufacturer, during the SAFE Commission meeting in Grovetown. [MICHAEL HOLAHAN/THE AUGUSTA CHRONICLE]

💬 1    🔁 5    ♡ 12    ⬆



**Marilyn Marks** @MarilynRMarks1 · Jan 24 ···
15/ Most media has it wrong, praising Raffensperger for transparency, when his very transparency failures are a primary cause of this massive national crisis.

He did the right thing standing up to Trump!!--but that call would not have happened if GA ran an auditable election.

💬 1    🔁 4    ♡ 17    ⬆

Exhibit
CGG 0024

## Twitter sidebar
- 🏠 Home
- # Explore
- 🔔 Notifications
- ✉ Messages
- 🔖 Bookmarks
- ☰ Lists
- 👤 Profile
- ⋯ More

**Tweet**


Bryan Tyson
@bptyson

**Messages**



🐦 Twitter

🏠 Home

# Explore

🔔 Notifications

✉️ Messages

🔖 Bookmarks

📋 Lists

👤 Profile

⚪ More

Tweet

16/ If SOS had run a transparent election that could be audited and any touchscreen/server errors detected, Trump, Sidney Powell, and GA senators (Ligon, Beach, Jones, etc.) who poured gasoline on fire would have had nothing to question.



💬 2          🔁 2          ♡ 13          ⬆️

**Marilyn Marks** @MarilynRMarks1 · Jan 24                          •••

17/ Back to where I started--@AlanJudd3000 's Oct. article--
What if GA leaders (in both parties) had heeded experts' warnings and insisted on standard election controls and security?

> 🧑 **Richard DeMillo** @rad_atl · Oct 23, 2020
> I agree. "In high-stakes election, Georgia's voting system vulnerable to cyberattack" ajc.com/politics/elect...

💬 1          🔁 3          ♡ 13          ⬆️

**Marilyn Marks** @MarilynRMarks1 · Jan 24                          •••

18/ Instead of heeding warnings, @GaSecofState shot the @ajc messenger with this ridiculous error-riddled press release.
sos.ga.gov/index.php/elec...

💬 1          🔁 2          ♡ 13          ⬆️

**Marilyn Marks** @MarilynRMarks1 · Jan 24                          •••

19/ If GA's election had been transparent, verifiable, and properly audited, the losers of the election would have been robbed of the ability to create chaos. GA would not be in the national spotlight or the cause of national unrest.

GA GOP could confirm results themselves.



⬅️          **Thread**

💬 1          🔁 3          ♡ 11          ⬆️

**Marilyn Marks** @MarilynRMarks1 · Jan 24                          •••

20/ If GA had a transparent auditable election, with either Biden or Trump provably winning, would the nation have suffered an insurrection, and all the damage it has caused?

Why is no one asking these questions, forcing some soul-searching in GA?



🔍 Search Twitter

**Relevant people**

🧑 **Marilyn Marks**
@MarilynRMarks1
Election integrity ac
opinions solely my c

Ⓖ **Coalition for Good**
@CoalitionGoodGv
Citizen engagement
governance throug
transparent election
force hand marked
elections.

**What's happening**

COVID-19 · Yesterday
**WHO releases new guidanc**
advising most pregnant pe

1/28/2021

Marilyn Marks on Twitter: "21/ We @CoalitionGoodGv warned of this problem in 2018, 2019, and continue our federal lawsuit (Curling v …



2    ↨ 3    ♡ 13

**Marilyn Marks** @MarilynRMarks1

Replying to @MarilynRMarks1

21/ We @CoalitionGoodGv warned of this problem in 2018, 2019, and continue our federal lawsuit (Curling v Raffensperger) to seek auditable elections --no hackable touchscreens. GA should use hand marked ballots that cannot be manipulated.
Please help us. bit.ly/CGGDonate

12:22 PM · Jan 24, 2021 · Twitter Web App

**8** Retweets    **22** Likes

**StrategyPhD** @StrategyPhD · Jan 24
Replying to @MarilynRMarks1 and @CoalitionGoodGv
And I just donated some cash for this excellent work that you all are doing. I know it's not a lot but every 20 bucks here or there will make a difference. Keep up the democracy saving work.
1    ↨    ♡ 1

**Marilyn Marks** @MarilynRMarks1 · Jan 24
Thank you so very much!  We know how to stretch a dollar and put it to crucial use. We have no overhead and all donations go for direct costs of litigation. Experts, travel, attorneys fees, transcripts, etc. And to keep our interns out in the field gathering facts.
↨    ♡ 1

**Kim Baum** @Sailorscout58 · Jan 24
Replying to @MarilynRMarks1 and @CoalitionGoodGv
If they pass the election/voting laws that McConnell tabled, will we be able to require #HandMarkedPaperBallots ?
1    ↨    ♡ 1

**Marilyn Marks** @MarilynRMarks1 · Jan 24
Not without more clarity.
↨    ♡ 1

Show replies

**Bruce Korb** 🖊️ 🆘 Σ @bruckorb · Jan 24
Replying to @MarilynRMarks1 and @CoalitionGoodGv
@threader_app compile or unroll
↨    ♡

**Threader** @threader_app · Jan 24
Hi, you can read this thread from @MarilynRMarks1 here:

**Threader**
A compiled thread
from @MarilynRMarks1

## Search Twitter

**#Webull**
Trending with Ja Rule

Politics · Trending
**Ted Cruz**
Alexandria Ocasio-Cortez tel
almost had me murdered thr
you can sit this one out' after
agreement with her about th
Robinhood's trading restricti
Trending with Dave Portnoy

COVID-19 · LIVE
**COVID-19: News and updat
Georgia**

CNBC ✓ · 15 minutes ago
**GameStop jumped again to
after a wild session**

Show more

Terms of Service  Privacy Policy
Ads info  More ···  © 2021 Twitte

**Home**
**Explore**
**Notifications**
**Messages**
**Bookmarks**
**Lists**
**Profile**
**More**

**Tweet**


Bryan Tyson
@bptyson

A thread written by @MarilynRMarks1

1/ GA's controversial election remains the focus of national news. (Trump's attempts to have the DOJ work to overturn GA's election.) ...

🔗 threader.app

Bryan Tyson
@bptyson





💬 4          ↻ 62          ♡ 64          ⬆

**Marilyn Marks #Wear A Mask!**
@MarilynRMarks1

2/ We @CoalitionGoodGv are fighting for a fair election in Nov. We don't spend our time on seeking recognition or writing research papers. We spend our resources on the battlefield in the Court to protect your rights.  Please help support our efforts. coalitionforgoodgovernance.org/donate/

11:02 AM · Aug 22, 2020 · Twitter Web App

**18** Retweets   **26** Likes

💬          ↻          ♡          ⬆

**Exhibit**
CGG 0025

**Subject:** Re: Follow up on voter registra3on discussion
**Date:** Thursday, January 18, 2018 at 6:07:33 AM Eastern Standard Time
**From:** Brian Blosser
**To:** Marilyn Marks

I will be more than glad to help. I do not remember all the details ( people's names etc), but I remember a majority of what happened that day.  The emails would be a very good reminder as I was detailed in those documents.  I just can't seem to find them in my system.  I may have wrote the emails from my work computer at the 3me.  I know longer work for that company, so access would not be possible.  I will wait to hear back from you.

Best Regards,

Brian Blosser
VP of Development & Construc3on
Cell Phone: 678-699-4153


On Jan 17, 2018, at 11:06 AM, Marilyn Marks <marilyn@aspenoffice.com> wrote:

> No problem. Don't go to too much trouble.
> I can get copies of them through public records request or in the case discovery.
>
> Our attorney thinks that your example is very interesting and helpful. Would you consider letting us use that in our case in federal court? All that we would need is for you to be willing to testify as to what happened, and to be a member of our organization. There are no membership fees or anything like that. It is a group of Republicans, Democrats and Unaffiliated
> Voters in various states that work on fair elections. We bring lawsuits on behalf of our members, without them having to have their names on the case themselves. Works like a club or church or association bringing a lawsuit on behalf of its members. But in our case, it is about fair elections---totally non-partisan.
>
> The testimony would be needed likely in the late spring or summer. Probably wouldn't take more than an hour of your time.
>
> Let me know if you would like to discuss.
>
> Thanks for your help.
>
> Thanks.
> Marilyn
> Coalition for Good Governance
> https://coalitionforgoodgovernance.org
> 970 404 2225 (cell)



**Exhibit
CGG 0026**

CGG2021001278172

**From:** Brian Blosser <bwblosser@yahoo.com>
**Date:** Wednesday, January 17, 2018 at 10:56 AM
**To:** Marilyn Marks <marilyn@aspenoffice.com>
**Subject:** Re: FW: Follow up on voter registra3on discussion

Marilyn,

I cannot find any of my correspondence with the Secretary of State (GA).  I do not know where they wene, but i will continue to look for them. I apologize for the inconvenience, but will continue to look for them.  Thanks.

On Sunday, January 14, 2018, 5:03:35 PM EST, Marilyn Marks <marilyn@aspenoffice.com> wrote:



Hi, Mr. Blosser.


I am late in sending you the things I found in the Fulton County Files. I think that you would already have these documents.

I would love to see a copy of the new voter card that they sent to you, or any other correspondence.


As I mentioned to you, several Georgia voters and the organization I run (Coalition for Good Governance) are suing Fulton County and the Secretary of State and State Board of Elections to force them to secure the system and get rid of the un-auditable equipment. You have probably seen the news about it in the papers. The suit no longer seeks to challenge the results of the 6 [th] District Election, but our focus is on securing the voting system for future elections.


Our organization is non-partisan, non-profit and we focus on fair elections. We have members in our organization who are interested in election integrity, and we can sue on behalf of those members so that they can avoid the legal exposure and hassles of being a party themselves to the lawsuit.  Our membership requires nothing beyond having an interest in our work, and letting us know that you would like to be a member. There are no dues or fees. If you would like to be a member, we could use your issue of April 18 as an example in our lawsuit of one of the many problems with the election computer systems. You would not need to do anything other than possibly come testify about your experience and provide the documentation you have.


There has been a lot written about our lawsuit, which is being re-organized, and we are soon to file an amended complaint with a new (and much better) team of attorneys. We would like to include your experience in the complaint.


Here are a few articles---there have been many ---


https://www.law.com/dailyreportonline/sites/dailyreportonline/2017/11/01/georgia-attorney-general-quits-defense-in-server-wiping-case/?slreturn=20171001173032

**Page 2 of 4**

**Two Georgia Election Servers Were Erased, Here's What We Know**

https://www.wabe.org/two-georgia-election-servers-timeline/

**APNewsBreak: Georgia election server wiped after suit filed,** by Frank Bajak|AP, October 26, 2017.https://apnews.com/7d63dd986bd34e7286a14807f514aca4 .

**Georgia election server wiped days after lawsuit,** by Joe Uchill | The Hill, October 26, 2017.http://thehill.com/policy/cybersecurity/357323-georgia-election-server-wiped-days-after-lawsuit

**Kemp starts probe after data on Georgia election computer destroyed,** by Greg Bluestein and Maya T. Prabhu | The Atlanta Journal-Constitution, October 26, 2017. https://www.myajc.com/news/state--regional-govt--politics/ke…er-destroyed/YbX6G77yFqgEdqCCvB987O/politicallygeorgia.html .

**APNewsBreak: Q&A: Why wiping of Georgia elections server matters,** by Frank Bajak|AP, October 26, 2017. https://apnews.com/7d63dd986bd34e7286a14807f514aca4 .

**Incompetence or a Cover-Up? — Georgia destroyed election data right after a lawsuit alleged its voting system might have been hacked,** by Jeremy Stahl | Slate, October 27, 2017. *[A particularly useful article with a detailed timeline.]*http://www.slate.com/articles/technology/future_tense/2017/10/georgia_destroyed_election_data_right_after_a_lawsuit_alleged_the_system.html

**Georgia's voting system - Outrageous security lapse,** Editorial | Savannah Morning News, Posted October 27, 2017. http://savannahnow.com/opinion/editorial/2017-10-27/editorial-georgia-s-voting-system-outrageous-security-lapse

**Georgia's election technology 'problem' is now a suspicious trash fire,** By Dusty Nix | Ledger-Enquirer (Columbus), October 27, 2017 1:29 PM. http://www.ledgerenquirer.com/opinion/article181273691.html

I look forward to hearing from you.

Marilyn Marks

Executive Director

Coalition for Good Governance

Charlotte, NC

**Page 3 of 4**

CGG2021001278174

970 404 2225 (cell)

**CGG2021001278175**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

Civil Action No. 1:17-CV-2989-AT

## COALITION PLAINTIFFS' RESPONSES TO DEFENDANT ANH LE'S FIRST INTERROGATORIES

In accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure, the Coalition for Good Governance, Megan Missett, Ricardo Davis, Laura Digges, and Williams Digges (the "Coalition Plaintiffs"), by and through counsel, hereby supplement several of the responses to Defendant Anh Le's First Interrogatories to Coalition Plaintiffs, served August 16, 2021.

### RESPONSES AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 12:**

Identify all "members" of the Coalition for Good Governance that are residents of the State of Georgia, the date their membership began, and (if applicable) the date their membership ended.

**Supplemental Response from Coalition Plaintiffs:**



Exhibit
CGG 0027

1

The following is a list of members upon whom CGG will rely to establish associational standing and their dates of membership:

Brian Blosser, member in 2017 but inactive in recent years.

Jasmine Clark, member July 2018 through current, Gwinnett County

Shea Roberts, Member 2019 through current, Fulton County

Dana Bowers, March 2018 through current, Gwinnett

Ricardo Davis, June, 2017 through current, Cherokee County

Laura Digges, June 2017 through current, Cobb County

William Digges, June 2017 through current, Cobb County

Jeanne Dufort, August 2018 through current, Morgan County.

J. Smythe Duvall,  July 2018 through current, Cobb County

Virginia Forney, August 2014 though current, Fulton County

Rhonda Martin, March 2018 through current, Fulton County

Megan Missett, June 2017 through current, Fulton County

Aileen Nakamura, February 2019 through current, Fulton County

Elizabeth Throop, October 2018 through current, DeKalb County

B. Joy Wasson, October 2018 through current, DeKalb County

Ashley Walker, August 2014 through current, Muscogee County

This 2nd day of February, 2022.

<div align="right">

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE, Ste 6
Atlanta, Georgia 30306
(404) 386-6856
*Attorney for Coalition for Good Governance*

</div>

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2022, I served a copy of the foregoing upon counsel for the Defendants via electronic mail.

<u>*/s/ Bruce P. Brown*</u>

Bruce P. Brown

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## PLAINTIFF COALITION FOR GOOD GOVERANCE'S RESPONSES TO DEFENDANT ANH LE'S FIRST INTERROGATORIES

In accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure, the Coalition for Good Governance ("CGG"), by and through counsel, hereby responds and objects to Defendant Anh Le's First Interrogatories to CGG, served August 16, 2021.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1:**

Please identify any and all criticisms you have of the State's audit of the 2020 General Election.

**Response:**

CGG objects to this Interrogatory as overly broad as it seeks "any and all criticisms." CGG cannot compile every minor criticism of a state-wide audit involving thousands of people. CGG also objects because the CGG is still trying to

1


**Exhibit**
CGG 0028

collect documentation of what happened during the audit of the 2020 General Election, to analyze for potential problems. CGG cannot identify any and all criticisms of the audit while that analysis is still ongoing.

Without waiving the foregoing objections, CGG responds that it is critical of the lack of any procedures to reconcile the tallies of the audit and the machine counts of the 2020 General Election. Clear procedures would have allowed counties to find where the counts differed, to examine the causes of those differences, and to fix certain problems in the election process, and ensure a more accurate final certified result. The lack of those procedures has left those tasks to private groups and citizens when they should have been handled by state and county officials in a transparent process with adequate citizen oversight in the first place.

**Interrogatory No. 2:**

Please identify all polling place locations in the State of Georgia visited by your experts in the Litigation in connection with their work on this case and any and all persons who accompanied your experts on such visits.

**Response:**

CGG's expert Harri Hursti visited the following polling locations:

- High Museum (Fulton)

- State Farm Arena (Fulton)

- FanPlex (Fulton)

2

- Fairburn Senior Center (Fulton)

- Christ Episcopal Church (Fulton)

- Central Park Rec. Center (Fulton)

- Ponce de Leon Library (Fulton)

- UGA Campus (Spalding County)

- First Assembly of God Church (Spalding)

At each location he was either accompanied by Marilyn Marks or Dan Weber. For some locations, he was also accompanied by a PBS news crew. CGG will supplement this response upon a more thorough search of manual records.

**Interrogatory No. 3:**

Identify each and every one of the "[a]uditing and voting system experts" that you rely on in Paragraph 115 of the First Supplemental Complaint for the statement that such "experts are in virtually unanimous agreement that in most elections, many, if not most, voters will be unable from memory, without the benefit of any visual cues or context, to reliably, accurately, and completely, verify the completeness and correctness of a paraphrased textual summary of the selections they previously made on the touchscreen over the course of potentially 5 or 10 minutes." Because the allegation in the complaint concedes that there is not unanimity on the issue, please identify those experts who agree and disagree with what you allege to be the "virtually unanimous" position.

3

**Response:**

CGG relies on the expert opinions of Phillip Stark, Harri Hursti, Duncan Buell, and Richard DeMillo. CGG also relies on academic papers already cited in this case, including, *Can Voters Detect Malicious Manipulation of Ballot Marking Devices?*, Bernhard, M., et. al., (2020); and *What Voters are Asked to Verify Affects Ballot Verification: A Quantitative Analysis of Voters' Memories of Their Ballots*, DeMillo et. al., (2018). CGG is not aware of any experts that take the position that verifying a BMD ballot is easy or can be done universally. The only disagreement among experts that CGG is aware of is whether or not the voting process can be improved enough so that an adequate number of voters accurately verify their ballots.

**Interrogatory No. 4:**

Identify a system of ballots that are "uniformly reliable as records of voter intent" as you allege in Paragraph 116 of the First Supplemental Complaint.

**Response:**

Hand marked paper ballots are reliable records of voter intent.

**Interrogatory No. 5:**

Identify every study, test, research, or other document that supports your contention in Paragraph 118 of the First Supplemental Complaint.

**Response:**

CGG objects to this Interrogatory because it is so unintelligible, CGG cannot determine what information Defendant is seeking. Paragraph 188 of the First Supplemental Complaint reads, "Requiring voters to perform a challenging, memory-based verification of a paraphrasing of their touchscreen vote selections in order to assure that the printed text summary accurately reflects the voters' choices severely burdens the right to vote." This paragraph is merely stating that requiring a burdensome task in order to vote is a burden on the right to vote. CGG is unaware of any studies, tests, or research that would help clarify that statement.

**Interrogatory No. 6:**

Identify what constitutes "high education levels, excellent memories, [and] excellent English skills" that are alleged in Paragraph 120 of the First Supplemental Complaint.

**Response:**

CGG objects that this Interrogatory is unintelligible. Paragraph 120 of the First Supplemental Complaint does not suggest there are some thresholds or qualifications for what constitutes, for example, and excellent memory. In the United States, "high[er] education" levels means "any schooling beyond high school. ... Higher education includes the following: Colleges and universities. When most people speak of higher education, they are referring to colleges and universities."

See   https://americanprofile.com/articles/what-is-higher-education/.   "Excellent memor[y]" refers to the mental capacity or faculty of retaining and reviving facts, events, impressions, etc., or of recalling or recognizing previous experiences.  See https://www.dictionary.com/browse/memory.  Excellent English skills refer to the "four skills" of listening, speaking, reading, and writing using the English language. Of course, other skills such as pronunciation, grammar, vocabulary, and spelling all play a role in effective English communication, but those typically are not as important with respect to voting.

**Interrogatory No. 7:**

Identify every voter who has been "reluctant to even show pollworkers their ballot card to try to demonstrate the inaccuracies, because doing so will reveal their private ballot choices" as are alleged in Paragraph 139 of the First Supplemental Complaint.

**Response:**

CGG objects to this interrogatory as unduly burdensome because it asks to identify "every" voter that would be reluctant to show their ballot to a poll worker. Coalition Plaintiffs cannot list every voter who would be reluctant to give up their Constitutionally protected right to a secret ballot. However, individual members of CGG—Laura Digges, William Digges, Megan Missett, and Ricardo Davis—would

be reluctant to show their ballots to a poll worker, as would numerous members who have filed declarations stating the importance of the absolute secrecy of their ballots.

**Interrogatory No. 8:**

Identify each and every expert sho led to your statement, in Paragraph 167 of the First Supplemental Complaint, that "[c]ybersecurity experts warn that the use of a 'barcode' application for voting systems is inherently dangerous."

**Response:**

CGG relies on the expert opinions of Phillip Stark, Harri Hursti, and Duncan Buell.

**Interrogatory No. 9:**

Identify each and every individual who, during DEFCON 27, allegedly "identified twenty vulnerabilities, including flaws that specifically affect the scanners used by the Dominion BMD System" as articulated in Paragraph 173 of the First Supplemental Complaint.

**Response:**

Information on vulnerabilities found in voting equipment during DEF CON 27 can be found in the report "DEF CON 27 Voting Machine Hacking Village" from August 2019.[1] The report was co-authored by Matt Blaze (Georgetown University), Harri Hursti (Nordic Innovation Labs), Margaret MacAlpine (Nordic Innovation

---

[1] Available at https://media.defcon.org/DEF%20CON%2027/voting-village-report-defcon27.pdf

Labs), Mary Hanley (University of Chicago), Jeff Moss (DEF CON), Rachel Wehr (Georgetown University), Kendall Spencer (Georgetown University), and Christopher Ferris (Georgetown University).

However, CGG objects to this request as unduly burdensome because it asks to identify "each and every individual" who identified these vulnerabilities. The report does not list every participant who found a vulnerability, and the possible participants include any "hackers, technologists, academics, and other experts" who attended the conference that year. CGG is in no better position to identify these individuals than the State Defendants are.

**Interrogatory No. 10:**

Identify the "transportation costs" associated with "choosing to vote by mail" as alleged in Paragraph 204 of the First Supplemental Complaint.

**Response:**

CGG objects that this Interrogatory is duplicative of one also sent to the individual plaintiff members of Coalition for Good Governance. CGG incorporates by reference the individual plaintiff members' responses and objections to this Interrogatory. Individual plaintiffs' members responses are indicative of such transportation costs experienced by numerous other CGG members.

**Interrogatory No. 11:**

Identify any and all fact witnesses upon whom you will rely at summary judgment or at trial in this litigation and any such witnesses' expected testimony.

**Response:**

Coalition Plaintiffs object to Interrogatory No. 21 as an improper compound interrogatory consisting of multiple discrete subparts. See Fed. R. Civ. P. 33(a)(1). Coalition Plaintiffs further object to this Interrogatory on the grounds that it prematurely seeks discovery of Plaintiffs' final witness list for trial.

**Interrogatory No. 12:**

Identify all "members" of the Coalition for Good Governance that are residents of the State of Georgia, the date their membership began, and (if applicable) the date their membership ended.

**Response:**

Coalition Plaintiffs object to this Interrogatory because it impermissibly seeks membership lists in violation of Coalition Plaintiffs' First Amendment rights.

Without waiving the foregoing objection, CGG responds that Plaintiff Megan Missett is a member of CGG. She joined the organization through an oral agreement in 2017 and continues to be a member.

9

**Interrogatory No. 13:**

Identify the responsibilities or obligations entailed in being a "member" of Coalition for Good Governance, and any benefits conferred by such membership.

**Response:**

Members of the Coalition for Good Governance work together to promote the goals of the organization. Through their work with the Coalition for Good Governance, members have volunteered their time and efforts to improve the election systems across multiple states.   CGG provides voter education on issues such as protecting voter privacy, and mail ballot application processes, and provides volunteers or interns to help member voters who contact CGG during elections. CGG provides members with poll watcher training. CGG provides members with education for citizen lobbying on election-related matters. CGG speaks on behalf of members to election officials during their public meetings. The foregoing benefits are examples, but not all of the types of benefits that CGG provides its members.

This 15th day of September, 2021.

<div style="text-align: right">

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
Tel: (404) 869-7600
cichter@ichterdavis.com

</div>

*Attorney for Megan Missett, Ricardo Davis, Laura Digges and William Digges*

and

/s/Bruce P. Brown
Bruce P. Brown
BRUCE P. BROWN LAW LLC
Georgia Bar No. 064460
1123 Zonolite Road, Suite 6
Atlanta, GA 30306
(404) 881-0700
bbrown@brucepbrownlaw.com

*Attorney for Coalition for Good Governance*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2021, I served a copy of the foregoing upon counsel for the Defendants via electronic mail.

*/s/ Cary Ichter*
Cary Ichter

## JOINT LITIGATION AND COMMON INTEREST AGREEMENT

This Joint Litigation and Common Interest Agreement (the "Agreement") is entered into between Fair Fight Action, Care in Action, and Coalition for Good Governance (collectively, as further defined below, the "Clients"). The Clients, through their respective undersigned counsel, agree as follows:

1. The Clients have shared and continue to share a common interest in the successful prosecution of litigation brought by the parties in connection with the State of Georgia's election systems and procedures, including *Fair Fight Action and Care in Action v. Crittenden, et al.* (N.D. Ga. No. 1:18-CV-05391-SCJ); *Coalition for Good Governance, et al. v. Crittenden, et al.* (Fulton Superior, No. 2018CV313418); *Martin, et al. v. Crittenden, et al.* (N.D. Ga. No. 18CV04776); and *Curling, et al. v. Kemp, et al.* (N.D. Ga. No. 17CV2989) (collectively, "the Litigation").

2. The Clients and their counsel wish to continue to cooperate in prosecuting the Litigation and accordingly agree that they may share privileged communications without waiving the attorney-client privilege, work product protection or any other applicable privilege or protection ("Privileged Communications"). Privileged Communications shall include all communications (oral, electronic, or written) concerning the Litigation.

3. Additionally, to pursue a joint prosecution effectively, the Clients and their counsel may also share documents, factual material, mental impressions, memoranda, litigation strategies and other information, including the confidences of each Client ("Litigation Material"). (Litigation Material does not include material that was already in the possession of the recipient or that is thereafter independently obtained).

4. The undersigned believe that such Privileged Communications and Litigation Material will promote the effective prosecution of the Litigation. Except as expressly stated in writing to the contrary by the party providing the Privileged Communications or Litigation Material, any and all Privileged Communications or Litigation Material obtained by either of the Clients are being provided solely for internal use of the Clients for the purpose of the Litigation and shall remain confidential and shall be protected from disclosure to any third party by the joint privilege, the attorney-client privilege, the attorney work product doctrine and any other applicable privilege and immunity.

5. Neither the Clients nor their counsel shall disclose the existence of this Agreement or any of its terms to any third party without the prior written consent of the other Clients or their counsel, except as required by court

**Exhibit
CGG 0029**

1

CGG 00000191

order or subpoena or as necessary to preserve the protection of Privileged Communications or Litigation Materials. If any person or entity requests or demands, by subpoena or otherwise, any Privileged Communications or Litigation Materials from a Client, that Client will promptly notify all counsel who are signatories to this Agreement in writing and afford that counsel a reasonable amount of time to assert all applicable rights, privileges and immunities with respect to such Privileged Communications or Litigation Materials.

6. This Agreement does not require Clients or their counsel to share any communication or other information with other Clients or their counsel. Each attorney participating in this Agreement is obligated to maintain the confidentiality of information as specified in the Agreement, but no attorney acts on behalf of any person other than his or her client.

7. The term "Clients" or "Client" as used in this Agreement includes the consultants and experts of the Clients and other parties that the undersigned are representing in the Litigation, including parties that may be added by amendment.

8. This Agreement may be terminated by any Client in writing as to that Client; provided, however, that such termination shall not affect or impair the obligations of confidentiality with respect to Privileged Communications or Litigation Materials previously furnished pursuant to this Agreement.

Dated: January 7, 2019

Allegra Lawrence
Lawrence & Bundy LLC
1180 West Peachtree Street, Suite 1650
Atlanta, Georgia 30309
(404) 400-3350

*Counsel for Fair Fight Action and Care in Action*

Dated: Jan 7, 2019

Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Road, Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Counsel for Coalition for Good Governance*

2

CONFIDENTIAL

CGG 00000192



**Friends of Coalition for Good Governance**
July 25, 2019 · 🌐

🔥⏳LAST DAY - 7/25!⏳ 🔥
Please DONATE TODAY to Fair Fight Action's MATCHING fundraiser to
DOUBLE YOUR $$ supporting Coalition for Good Governance & the
GA #HandMarkedPaperBallots lawsuit (ONLY thru July 25th)!
Help CGG in this historic fight for SECURE, TRANSPARENT ELECTIONS
to make sure YOUR VOTE COUNTS by 2020!

Lawsuits are EXPENSIVE and CGG depends on generous donors like
YOU!
https://secure.actblue.com/donate/handmarkedballots...
Please pack the courtroom for hearings on 7/25 & 7/26.

**STAND WITH**
**STACEY ABRAMS**
**DONATE**

FAIR FIGHT

SECURE.ACTBLUE.COM
I just gave to help Stacey Abrams fight back against Brian
Kemp & his Cronies

👍❤ 4                                              9 Shares

👍 Like          💬 Comment          ↪ Share

**Exhibit**
**CGG 0030**

| From: | Marilyn Marks |
|---|---|
| To: | Mark Lindeman; timwhite at rockisland.com |
| Cc: | John McCarthy; state-audit-working-group |
| Subject: | Re: [SAWG] New folder and docs on Google Drive re GA ballot image legislation |

All,
The bill that now incorporates ballots as public records is facing hyperbolic and well-funded (!!)  opposition from Fair Fight (Stacey Abrams's org.) See the article I have posted in below.

We don't understand at all. Coalition for Good Governance has been lobbying for this basic measure for over a year. For some strange reason, Fair Fight and their colleagues claim that our goal is to "sabotage elections."  We have worked with the sponsor of HB933 which has now been incorporated into HB1464 to streamline it and make it very simple. Current law requires that the Clerk of the Superior Court be the custodian or appoint a custodian of the paper ballots. And any inspection of those ballots requires a court order, but without defining what the criteria should be for such an order. The bill simply lifts the requirement for a court order and making them subject to normal records inspection requirements. The idea that somehow election "denialists" would attack the officials of the state court to "sabotage" elections seems far fetched, but that seems to be the stated rationale.

The bill will come up pretty fast in the Senate. (maybe later this week or next week). I hope that SAWG can weigh in with Dems and R's.  The R's will be poised to support the bill.  There are some provisions on poll watching that need improvement, but I think that we can get that accomplished with Republican sponsors.

See article below--


https://www.ajc.com/politics/politics-blog/the-jolt-voting-groups-prep-7-figure-fight-against-new-georgia-elections-bill/PSPMMYMLDJG3TKDRTQGURNK724/

# The Jolt: Voting groups prep 7-figure fight against new Georgia elections bill

**Exhibit
CGG 0031**

Patricia Murphy

**By Patricia Murphy - The Atlanta Journal-ConstitutionGreg Bluestein - The Atlanta Journal-ConstitutionTia Mitchell - The Atlanta Journal-Constitution**

After Georgia Republicans fast-tracked a new elections bill, voting rights groups and their allies are rallying behind a new effort to stop it.

A coalition of organizations is launching a seven-figure campaign today in opposition to House Bill 1464 that aims to remind Georgians that Gov. Brian Kemp and his allies promised they wouldn't adopt more election-related measures after last year's controversial rewrite.

Hillary Holley of Fair Fight Action said that the coalition of dozens of organizations will "lobby hard to defeat this egregious bill that could devastate local elections administration and undermine our democracy." Other members of the coalition include the New Georgia Project Action Fund, Stand Up America and several labor unions.

The measure, which emerged last week ahead of tomorrow's Crossover Day deadline, would authorize public paper ballot inspections and GBI fraud investigations. It cleared a panel last week, setting the stage for a vote soon.

As our AJC colleague Mark Niesse wrote, the proposal is the latest effort by the Republican majority in the General Assembly to rework election procedures in response to complaints from the party's voters about Donald Trump's defeat in 2020.

Here's more from Niesse's report:

**Under the legislation, original paper ballots would become public records available for members of the public to request and review. Under current law, ballots can only be unsealed by a judge's order, though digital ballot images are already available.**

**The GBI would gain jurisdiction to investigate election cases and subpoena records, supplementing investigators in the secretary of state's office.**

**The bill also would restrict nonprofit funding for elections offices, require chain-of-custody paperwork when election officials handle ballots and make it a felony to threaten violence against poll workers and election officials.**

**From:** Marilyn Marks <marilyn@aspenoffice.com>
**Date:** Saturday, February 26, 2022 at 6:49 AM
**To:** Mark Lindeman <taxshift@gmail.com>, Tim White <timwhite@rockisland.com>
**Cc:** John McCarthy <john@verifiedvoting.org>, state-audit-working-group <state-audit-working-group@googlegroups.com>
**Subject:** Re: [SAWG] New folder and docs on Google Drive re GA ballot image legislation


Hi, All.
Sorry I have not been following the thread here.  Might have been traveling to spam, I fear.
I need to catch up to speed and maybe I can help. Rep. Blackmon is the sponsor and a friend. I talk with him often. He brought the bill (originally bi-partisan) at my request, although the initial language was not satisfactory and he has a much improved, but still imperfect amended bill that has not been made public yet.

Sadly, Fair Fight has gone ballistic on this bill and calling those of us who promoted it as attempting "election sabotage." They forced the Dems off the bill and have instructed Dems to fight it.  I could go on about the extreme claims that the opposition is creating about this basic transparency bill…. (ACLU and Common Cause have jumped on board with emotional pleas to stop the transparency. It is all very bizarre.)

Let's be clear. Ballot images have been public records in Georgia since last March when we proposed that bill to Rep. Blackmon and Rep. Roberts (Dem) and it became law. Harvie and I have spent hundreds of hours analyzing those images.  This bill was to take the next step to make the ballots themselves public with appropriate controls. As we see so many problems with the images, it is clear that the ballots themselves need to be accessed.  Hence, the basis for the bill.

Yes, indeed, if 2020 ballots were exposed, more controversies may arise, but we need to be able to handle whatever transparency may expose, and not attempt to conceal the facts from the public and press.

All that is to say that if you catch me up on what the goal is, I can help with Rep. Blackmon.  If the goal is to persuade Fair Fight to adopt a more pro-transparency stance, I don't think that I can help. (They are also pushing legislation that would permit a poll manager to unilaterally expel a poll watcher or monitor (without cause) and that removal would ban that person from the polls for 4 years. Several of us would have long since been banned for four years. ( For example, one of our board members and I are being threatened by the St. Election Board for prosecution for "disputing voting while monitoring the polls" in a county where we have never observed the polls, and never heard of the location, although there is a "witness"

claiming to have seen us disrupting voting. The investigator admits that there is no evidence we were there, but the last we heard, they are moving forward anyway to charge us. I guess on the theory of "they must be guilty of *something!*"   This is one of many examples I could give of my experiences in GA in monitoring polls. Our interns were threatened by sheriffs deputies for standing on a sidewalk watching the polling place traffic and timing lines for voting as poll manager reported them and told them that they had to leave the property. There was no allegation of a legal violation---just "disrupting voting." The new law supported by some leading Dems would ensure that orgs like ours would be banned quickly from doing the work that we do.)

Sorry to be so long winded here.  Please let me know what the goal is and how I can help.

Marilyn

---

**From:** <state-audit-working-group@googlegroups.com> on behalf of Mark Lindeman <taxshift@gmail.com>
**Date:** Saturday, February 26, 2022 at 6:15 AM
**To:** Tim White <timwhite@rockisland.com>
**Cc:** John McCarthy <john@verifiedvoting.org>, state-audit-working-group <state-audit-working-group@googlegroups.com>
**Subject:** Re: [SAWG] New folder and docs on Google Drive re GA ballot image legislation

Tim, I see three things:

(1) a bill from Blackmon that would make paper ballots public records and provide for election officials to handle them on behalf of folks who pay reasonable costs;

(2) Fair Fight's quoted opposition to that bill, which clearly is not "ballot image legislation";

(3) a draft memo about the value of "release of the anonymous ballot images" and "routine ballot image auditing," which if anything tends to conflate "official posting of... secured ballot images" with "THE PUBLIC HA[VING] THE BALLOTS."

The intention may be entirely different. I can only say what I see.

Mark

"If you are going to Armageddon, you have to battle for the Lord, but the political scientist is always a little doubtful whether the Lord called him." --Walter Lippmann

On Sat, Feb 26, 2022 at 2:28 AM timwhite at rockisland.com <timwhite@rockisland.com> wrote:

Yes, Mark, and we're proposing that public access to image-confirming paper ballots validates the audit data chain reliability from voter-intent to voter-intent-correctly-counted.

Ability to publicly verify images by comparison to their paper clinks into place the missing/weak image-authentication link giving cautious pause to VV and SAWG-wide embrace of ballot images as sufficiently trustworthy for use in auditing.

Are we there? If not, are we closer? What deficiencies remain?

Thank you, Mark.

Tim White

---

**From:** "Mark Lindeman" <taxshift@gmail.com>
**To:** "John McCarthy" <john@verifiedvoting.org>
**Cc:** "state-audit-working-group" <state-audit-working-group@googlegroups.com>
**Sent:** Friday, February 25, 2022 8:25:46 AM
**Subject:** Re: [SAWG] New folder and docs on Google Drive re GA ballot image legislation

But the legislation under discussion isn't really ballot image legislation. As Niesse's story points out, since last year, ballot images already are public records in Georgia. Blackmon's legislation is about making ballots themselves public records.

Mark

"If you are going to Armageddon, you have to battle for the Lord, but the political scientist is always a little doubtful whether the Lord called him." --Walter Lippmann

On Fri, Feb 25, 2022 at 10:40 AM John McCarthy <john@verifiedvoting.org> wrote:

Thanks to Tim White for writing an initial draft memo about Fair Fight's opposition to GA ballot image legislation.

I've uploaded a copy of Tim's initial draft memo into a new shared google drive folder titled Georgia Ballot Image Legislation, where we can all add comments and suggest edits.

I've also put copies of two articles from the Atlanta Journal Constitution in that same folder -- the Feb 15 article that Tim pointed out, which cites Fair Fight's initial opposition to the proposed legislation, and a Feb 17 AJC Jolt note about the Fair Fight leadership and plans for the coming year.

I'm tied up with grandsons until tomorrow (Sat) afternoon, but hope to add more of my own thoughts on the memo at that point.

Thanks again to Tim for bringing this situation to our attention and writing an

initial draft  memo to help get us started on a possible collective response.

John

--

**John McCarthy** Volunteer Advisor (he/him)

john@verifiedvoting.org · **510.666.5309**

verifiedvoting.org

.

--
This is a private discussion list. All messages posted to this list
are confidential. Messages posted to this list should not be
redistributed without the permission of the author or authors.
---
You received this message because you are subscribed to the Google Groups
"State Audit Working Group" group.
To unsubscribe from this group and stop receiving emails from it, send an email
to state-audit-working-group+unsubscribe@googlegroups.com.
To view this discussion on the web visit https://groups.google.com/d/msgid/state-audit-working-group/559aaf26-d549-3e51-86d4-cf76c97b7eef%40verifiedvoting.org.

--
This is a private discussion list. All messages posted to this list
are confidential. Messages posted to this list should not be
redistributed without the permission of the author or authors.
---
You received this message because you are subscribed to the Google Groups
"State Audit Working Group" group.
To unsubscribe from this group and stop receiving emails from it, send an email to
state-audit-working-group+unsubscribe@googlegroups.com.
To view this discussion on the web visit https://groups.google.com/d/msgid/state-audit-working-group/CAE3mb%3D2T9%3DYAGEcbfx7eQNw-YBLOOw8EHASHz3M02XCK5HFVYA%40mail.gmail.com.

--
This is a private discussion list. All messages posted to this list
are confidential. Messages posted to this list should not be
redistributed without the permission of the author or authors.
---
You received this message because you are subscribed to the Google Groups "State Audit Working Group" group.

To unsubscribe from this group and stop receiving emails from it, send an email to state-audit-working-group+unsubscribe@googlegroups.com.

To view this discussion on the web visit https://groups.google.com/d/msgid/state-audit-working-group/CAE3mb%3D3T7MzuF0R1H3cmbXiHwggVE2Uip%3DzDws8pfS1saRSYjw%40mail.gmail.com.

**To:** Philip Stark[pbstark@gmail.com]; Alex Halderman[halderman@gmail.com]; Harri Hursti[harri@bursti.net]; Duncan Buell[duncan.buell@gmail.com]; rad@demilo.com[rad@demilo.com]; Andrew Appel[appel@princeton.edu]; Kevin Skoglund[kevin@kevinskoglund.com]; Susan Greenhalgh[susan@freespeechforpeople.org]
**Sent:** Tue 8/24/2021 7:09:57 PM (UTC)
**Subject:** Garland's new lawsuit against BMDs
Voterga_Philip-Singleton_Dominion_Ban_Petition-Roswell-GA-08-24-2021.pdf

It's pretty short, and totally focused on QR codes.
I expect all sorts of press conferences from Garland implying that you guys are providing the expertise for his lawsuit. He made indications of that in a vague way in his press conf. today. I expect it to get more direct. Claimed he was going to try to get Alex's report unsealed.

MM

---

**From:** "Brumback, Kate" <KBrumback@ap.org>
**Date:** Tuesday, August 24, 2021 at 2:52 PM
**To:** Marilyn Marks <Marilyn@USCGG.org>
**Subject:** petition

**Kate Brumback**
Reporter
The Associated Press, Atlanta
Working from home, cell: 404-844-9914
Twitter: @katebrumback

**The Associated Press is the essential global news network, delivering fast, unbiased news from every corner of the world to all media platforms and formats. Founded in 1846, AP today is the largest and most trusted source of independent news and information. On any given day more than half of the world's population sees news from AP.**

*Click here to send news tips, documents or other files securely and confidentially to AP.*

The information contained in this communication is intended for the use of the designated recipients named above. If the reader of this communication is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify The Associated Press immediately by telephone at +1-212-621-1500 and delete this email. Thank you.



**Exhibit CGG 0032**

3/16/22, 2:58 PM          Marilyn Marks on Twitter: "1/ I was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "h...

Case 1:17-cv-02989-AT   Document 1565-5   Filed 01/07/23   Page 218 of 292



← Thread



**Marilyn Marks**
@MarilynRMarks1

1/ I was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "hearing" encouraging lies and false allegations, allowing no rebuttal. So I annotated the transcript of @JovanHPulitzer ⬇️ highlighting some of his many lies. See thread.



10:58 PM · Jan 1, 2021 · Twitter Web App

**181** Retweets   **30** Quote Tweets   **306** Likes

💬            🔁            ♡            ⬆️

Tweet your reply                                    Reply

 **Marilyn Marks** @MarilynRMarks1 · Jan 1, 2021
Replying to @MarilynRMarks1
2/ He knows almost nothing about GA elections, the voting system, or ballots. So he made up wild sensational lies that made no sense whatsoever, and sold them like snake oil to the GOP senators.
My annotations- bit.ly/CGG12_30Sen
The video. youtu.be/_PpyoYlGqBg

💬 6          🔁 62          ♡ 146          ⬆️

 **Marilyn Marks** @MarilynRMarks1 · Jan 1, 2021
3/ Next he demands that HE be permitted to scan and inspect ballots to determine the "counterfeit" ballots. There is no indication that there are any "counterfeit ballots." Where did that come from?

The GOP senators voted to support this ridiculous shameful effort.

💬 6          🔁 61          ♡ 193          ⬆️

 **Marilyn Marks** @MarilynRMarks1 · Jan 1, 2021
4/ I am all for transparency and anyone seeing the ballots, but the State Senate Committee should not be publicly endorsing his efforts as if he were honest, trustworthy or knowledgeable.
It creates a huge stain on the credibility of the senate.

💬 5          🔁 42          ♡ 188          ⬆️

 **Marilyn Marks** @MarilynRMarks1 · Jan 2, 2021

**Relevant people**

 **Marilyn Marks**            Follow
@MarilynRMarks1
Election integrity activist. Political opinions solely my own.

 **Sen William Ligon**         Follow
@williamligon
Georgia State Senator - District 3

 **JovanHuttonPulitzer...**    Follow
@JovanHPulitzer
Cut The CRAP Radio Show Missoula, MT Google Scholar EXCLUSIVE CONTENT ON LOCALS
bit.ly/2RGL4vx #KinematicArtifacts
Inventor

**What's happening**

War in Ukraine · LIVE
**Russia bombs theater in Mariupol where hundreds of civilians are reported to have been taking shelter, reports say** 
Trending with US Congress, Zelensky

**#AsWeWork**
Listen to WSJ's new podcast about our rapidly changing work lives.
📰 Promoted by The Wall Street Journal

Sports · Trending
**Soler**
After the Atlanta Braves, Rosario to a two-year, hope that Jorge Soler well
4,720 Tweets

 Euronews Green ✔ · 4 hours ago
Chicago dyes its river green fo

**Exhibit
CGG 0033**

**Home**

**Explore**

**Notifications**

**Messages**

**Bookmarks**

**Lists**

**Profile**

**More**

**Tweet**

Bryan Tyson
@bptyson

**Messages**    ✉️  ⌃

https://twitter.com/MarilynRMarks1/status/1345217977835266048

3/16/22, 2:58 PM
Marilyn Marks on Twitter: "...was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "h...

Case 1:17-cv-02989-AT   Document 1565-5   Filed 01/07/23   Page 219 of 292

Twitter

Home

Explore

Notifications

Messages

Bookmarks

Lists

Profile

More

Tweet

5/ It is interesting that Senator and chair of the subcommittee @williamligon has apparently deleted all his Tweet history. As a gov't official, that is not permitted--it's destroying public records. Wonder if the legal threats from Dominion were the motivation for that?

💬 8        ⟲ 56        ♡ 153        ⬆

**Atlanta Humanist** @AtlantaHumanist · May 2, 2021      •••
Replying to @MarilynRMarks1 @williamligon and @JovanHPulitzer
South Carolina and Kentucky are the states that should be audited!

💬 1        ⟲ 1        ♡ 2        ⬆

**Marilyn Marks** @MarilynRMarks1 · May 2, 2021      •••
South Carolina is like Georgia. It uses unauditable BMD touchscreen machines.  We can never, ever know who won in SC or GA because of the use of those machines in the polling places.

💬        ⟲        ♡ 1        ⬆

🌺 **Queen_Fae's Momma** 🌺 @zymminy · Jan 2, 2021      •••
Replying to @MarilynRMarks1 @williamligon and @JovanHPulitzer @threadreaderapp unroll please

💬 1        ⟲ 1        ♡ 3        ⬆

**Thread Reader App** @threadreaderapp · Jan 2, 2021      •••
Halo! the unroll you asked for: 1/ I was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "hearing"...
threadreaderapp.com/thread/1345217... Share this if you think it's interesting. 🙂



---

**Thread reader**        [🐦 Tweet]  [f Share]

THREAD BY MARILYN MARKS #HAND_MARKED_BALLOTS_JAN. RUNOFFS (@MARILYNRMARKS1)

1/ I was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "hearing" encouraging lies and false allegations, allowing no rebuttal. So I annotated the transcript of @JovanHPulitzer ⬇ highlighting som...

**Read all 4 tweets on threadreaderapp.com**        →

threadreaderapp.com
Thread by @MarilynRMarks1 on Thread Reader App
Thread by @MarilynRMarks1: 1/ I was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "hearing" ...

---

💬        ⟲ 2        ♡ 5        ⬆

Search Twitter

3,837 Tweets

Show more

Terms of Service   Privacy Policy   Cookie Policy
Accessibility   Ads info   More •••
© 2022 Twitter, Inc.

**Bryan Tyson**
@bptyson                              •••

Messages



Marilyn Marks on Twitter: "V was so angry that GA State Senator @williamligon and colleagues held a highly partisan election "h...

Home

Explore

Notifications

Messages

Bookmarks

Lists

Profile

More

**Tweet**

Search Twitter

Bryan Tyson
@bptyson

...

Messages

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## COALITION FOR GOOD GOVERNANCE'S AND COALITION PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT BRAD RAFFENSPERGER'S FIRST REQUEST FOR ADMISSION

In accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure, the Coalition for Good Governance ("Coalition"), by and through counsel, hereby responds and objects to Defendant Brad Raffensperger's First Requests for Admission to the Coalition, served December 28, 2020. Additionally, Plaintiffs Megan Missett, Ricardo Davis, Laura Digges, and Williams Digges (the "Coalition Plaintiffs") join in responses and objections to Requests Nos. 9-30 which are identical to the Requests Nos. 1-22 addressed to Coalition Plaintiffs.

### RESPONSES AND OBJECTIONS TO REQUESTS

**Request for Admission No. 1:**

1



**Exhibit**<br>**CGG 0034**

Admit that the attached hereto as Exhibit A is a true and correct copy of your website's "Home" page as of December 22, 2020 with a URL of https://coalitionforgoodgovernance.org/.

**Response from Coalition:**

Admitted.

**Request for Admission No. 2:**

Admit that all donations received by you have been used exclusively to support the legal and forensic work in bringing effective challenges to un-auditable electronic voting systems in Georgia

**Response from Coalition:**

Coalition objects that this Request is irrelevant as it has no relevance to any claims in this case. Subject to that objection, Coalition responds: Denied.[1]

**Request for Admission No. 3:**

Admit that the attached hereto as Exhibit B is a true and correct copy of your website's "Current Projects" page as of December 22, 2020 with a URL of https://coalitionforgoodgovernance.org/current-projects/.

**Response from Coalition:**

Admitted.

---

[1] Defendant David J. Worley's First Interrogatories ask for explanations and documents supporting any denial in these Requests. Full explanations for this any later denials may be found in Coalition's Response to those interrogatories.

2

**Request for Admission No. 4:**

Admit that you solicit donations to exclusively support your essential legal and forensic work.

**Response from Coalition:**

Coalition objects that this Request is irrelevant as it has no relevance to any claims in this case. Subject to that objection, Coalition responds: Denied.

**Request for Admission No. 5:**

Admit that all your essential legal and forensic work from July 3, 2017 to the present is related to the Litigation.

**Response from Coalition:**

Coalition objects that this Request is irrelevant as it has no relevance to any claims in this case. Subject to that objection, Coalition responds: Denied.

**Request for Admission No. 6:**

Admit the donations you solicit go only to cover your legal and forensic expenses.

**Response from Coalition:**

Coalition objects that this Request is irrelevant as it has no relevance to any claims in this case. Subject to that objection, Coalition responds: Denied.

**Request for Admission No. 7:**

Admit the only legal and forensic expenses you incurred from July 3, 2017 to the present relate to the Litigation.

**Response from Coalition:**

Coalition objects that this Request is irrelevant as it has no relevance to any claims in this case. Subject to that objection, Coalition responds: Denied.

**Request for Admission No. 8:**

Admit that you have not diverted any financial resources from Coalition's mission or purpose to pay expenses incurred by you in the Litigation.

**Response from Coalition:**

Coalition objects that this Request is irrelevant as it has no relevance to any claims in this case. Subject to that objection, Coalition responds: Denied.

**Request for Admission No. 9:**

Admit that you believe the results of the Presidential Election held on November 3, 2020 in Georgia are valid.

**Response from Coalition:**

Coalition Plaintiffs object to this Request as vague and ambiguous as it does not define the term "valid." The term might mean that the correct winners were chosen, or the exactly correct tallies determined, or that the results were reached through proper processes with full adherence to applicable laws, or other definitions Coalition Plaintiffs do not anticipate. Because of the ambiguity of the

Request, Coalition Plaintiffs presently lack sufficient information or knowledge to admit or deny this Request.

**Request for Admission No. 10:**

Admit that you believe the results of the other elections held on November 3, 2020 in Georgia are valid.

**Response from Coalition:**

Coalition object to this Request as vague and ambiguous as it does not define the term "valid." The term might mean that the correct winners were chosen, or the exactly correct tallies determined, or that the results were reached through proper processes with full adherence to applicable laws, or other definitions Coalition Plaintiffs do not anticipate. Because of the ambiguity of the Request, Coalition Plaintiffs presently lack sufficient information or knowledge to admit or deny this Request.

**Request for Admission No. 11:**

Admit that you have no evidence that any component of the Election System was actually hacked prior to or during the elections held on November 3, 2020.

**Response from Coalition:**

Denied.

**Request for Admission No. 12:**

Admit that you have no evidence that any malware was actually inserted into any component of the Election System prior to or during the elections held on November 3, 2020.

**Response from Coalition:**

Denied.

**Request for Admission No. 13:**

Admit that you have no evidence that the results of any election held in Georgia held on November 3, 2020 were actually changed in any way as a result of the hacking of or the insertion of malware into any component of the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 14:**

Admit that you have no evidence that any vote(s) in the Presidential Election held on November 3, 2020 in Georgia were actually switched from President Donald J. Trump to Joseph R. Biden, Jr. as a result of an anomaly in the software used in the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 15:**

6

Admit that you have no evidence that any vote(s) in the Presidential Election held on November 3, 2020 were actually switched from President Donald J. Trump to Joseph R. Biden, Jr. as a result of an algorithm or any other design feature of the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 16:**

Admit that you have no evidence that any vote(s) in the Presidential Election held on November 3, 2020 were actually switched from President Donald J. Trump to Joseph R. Biden, Jr. as a result of any problem of any kind with any component of the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 17:**

Admit that you have no evidence that any vote(s) in any election held in Georgia on November 3, 2020 were actually switched from any candidate to another as a result of an anomaly in the software used in the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 18:**

Admit that you have no evidence that any vote(s) in any election held in Georgia on November 3, 2020 were actually switched from one candidate to another as a result of an algorithm or any other design feature of the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 19:**

Admit that you have no evidence that any vote(s) in any election held in Georgia on November 3, 2020 were actually switched from one candidate to another as a result of any problem of any kind with any component of the Election System.

**Response from Coalition:**

Denied.

**Request for Admission No. 20:**

Admit that you have no evidence of any widespread voter fraud in Georgia in connection with the elections held in Georgia on November 3, 2020.

**Response from Coalition:**

Admitted.

**Request for Admission No. 21:**

Admit that you have no evidence of any malfunction(s) of any component of the Election system that impacted the outcome of the Presidential Election held in Georgia on November 3, 2020.

**Response from Coalition:**

Admitted.

**Request for Admission No. 22:**

Admit that you have no evidence of any malfunction(s) of any component of the Election System that impacted the outcome of any of the other elections held in Georgia on November 3, 2020.

**Response from Coalition:**

Admitted.

**Request for Admission No. 23:**

Admit that you have no evidence that the Election System failed to count any legal vote(s) in the Presidential Election held on November 3, 2020 in Georgia.

**Response from Coalition:**

Denied.

**Request for Admission No. 24:**

Admit that you have no evidence that the Election System counted any illegal vote(s) in the Presidential Election held on November 3, 2020 in Georgia.

**Response from Coalition:**

Admitted.

**Request for Admission No. 25:**

Admit that you have no evidence that the Election System failed to count any legal vote(s) in any of the other elections held in Georgia on November 3, 2020.

**Response from Coalition:**

Denied.

**Request for Admission No. 26:**

Admit that you have no evidence that the Election System counted any illegal vote(s) in any of the other elections held in Georgia on November 3, 2020.

**Response from Coalition:**

Admitted.

**Request for Admission No. 27:**

Admit that you are not contesting the outcome of the Presidential Election held in Georgia on November 3, 2020.

**Response from Coalition:**

Admitted.

**Request for Admission No. 28:**

Admit that you are not contesting the outcome of any of the other elections held in Georgia on November 3, 2020.

**Response from Coalition:**

Admitted.

**Request for Admission No. 29:**

Admit that you have no evidence that there was any mismatch between the QR Codes on the Paper Ballots cast in the Presidential Election held on in Georgia on November 3, 2020 election and the human-readable portion of the Paper Ballots.

**Response from Coalition:**

Denied.

**Request for Admission No. 30:**

Admit that you have no evidence that there was any mismatch between the QR Codes on the Paper Ballots cast in any of the other elections held on in Georgia on November 3, 2020 election and the human-readable portion of the Paper Ballots.

**Response from Coalition:**

Admitted.

This 27th day of January, 2021.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

/s/ Robert A. McGuire, III
Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*Counsel for Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for Megan Missett, Ricardo Davis, Laura Digges, and William Digges*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2021, I served a copy of the foregoing

upon counsel for the Defendants and the Curling Plaintiffs via electronic mail.


<u>/s/ Bruce P. Brown</u>

Bruce P. Brown

GA Senate Judiciary Sub-committee on Election Law 12.30.2020

**[This _excerpt_ rough draft transcript focuses on testimony of Jovan Hutton-Pulitzer. Comments by Marilyn Marks, Coalition for Good Governance in `blue font.` ]**

**Senator Ligon**  59:14
Thank you, Miss McCarthy. Thank you. Now we'll move on to Mr. Jovan Hutton-Pulitzer you need to show something needs to connect to the PowerPoint. (technical problems) But we'll take a five minute break while you do that. Sure. And we'll  reconvene in 5 minutes All right, if you would restate your name and a little bit about yourself

**Jovan Hutton-Pulitzer**  1:01:03
Jovan Hutton, Pulitzer, I am inventor and pattern recognition expert. I'm also part of the Gold Institute of International Strategy at Washington DC. So to understand what I'm going to talk about today, even though I'm a technology guy, my goal is to make it really simple, really obvious, I'm not going to be talking about codes on machines, how things are swap server overseas, I'm just going to show you the simple basis of what possibly went on. But most importantly, how this is fixed, how it's detected, fixed and will never happen again. And that basically is based on my technology background for over the last 30 years, it's just we have a little basis in it. The fact that your phone now can scan a barcode in any grocery store or any kind of code, or fact you hear cue coats here today, any type of machine readable code as it talks to the internet, that's my technology. It's the basis of my patent portfolio of about 200 patents on that particular one. My patents are so prolific in licensing, that every manufacturer in the world basically licenses, my patents to use on any mobile device except one Huawei out of China. They don't license it, they just use it. And I'm on approximately about 12 billion devices globally. And that's what I'm going to be talking about today keeping it simple. What could have happened here? How can it be detected and confirmed? And then how can this hole be plugged from now on because this is about vote verification, it's three P's that I'm going to deal with today. First, the people. Second, paper, and three protection. That's all this is about. So if we'll go on the next slide, just roll up for me I want to kind of show you what I'm talking about when I talk about kinematic artifacts can affect kinematic is just the nerdy word for evidence on paper. When two physical forces come together, right and a paper's bent, there's always going to be an example of that. All of us have dealt with this machines have very hard, strict rules. You can go to the bank, you can use your debit card, if you put in your pin wrong, it kicks it back, it keeps asking now correct this note correct, just now you know your money's there. But if you enter your PIN wrong, it won't work. Same thing with your password for your email. So machines have very, very hard rules. A lot of those rules are also in the physical world. So before anything became a rule of the machine, it became a rule in the physical world. That means somebody's hand put it in, in this case, it's paper. What I'm going to be talking about is kinematic artifacts. That's the fold the fold that's leftover. You take a brand new dollar bill and you fold it, that fold will always be there. Go to coin machine and a snack machine trying to get a snack out of it put in your dollar bill and it kicks it back. It's the machine saying something's not right about this dollar. It's broken. It's messed up the colors not right. We have all experienced this before. What I may be talking about is kinematic artifacts.

**Exhibit
CGG 0035**

- 1 -

If we'll move on to the next PDF, please. I'm going to show you how my process of our team what we're going to do and if we can enlarge that day be great is we can detect what I'm calling the counterfeit. There is nothing new that I'm going to be sharing with you today. This is how counterfeit bills are detected. This is how counterfeit art is detected. This has already been adjudicated. It's not new science. It's just never been applied to these very important things in our process. It's about the people. The people want confidence that their vote matters, period. I personally do not care how this comes down. But I do care about the vote being counted. And the vote mattering. Whatever our system can detect and that's what we're here to do is offer something that can remedy Do this immediately. The numbers will speak for themselves. The people need that confidence we need to give the people of Georgia, that confidence. But this is not about Georgia. The United States is watching. And this is also not about the United States. The entire world is watching this process. You know, people come I when I was coming in here to Georgia last night. Yes, sir.

**Senator Beach**  1:05:28

You talked about counterfeit. If we were able to get our hands on... Thank you for testifying. Thank you. If if you were able to take count- if you were able to get your hands on the State Farm arena, absentee, but on the ballots that were run between 1030 and one 130 in the morning, would you be able to tell if they were folded? And would you be able to if there were counterfeit,

*CGG: There has been no credible allegation of counterfeit ballots in Georgia. This is a fabricated claim set up for unethical reasons.*

**Jovan Hutton-Pulitzer**  1:05:57

we would be able to tell if there were folded if they were counterfeit, whether they were filled out by human hand, whether we print it by a machine, whether they were batch fed continually, over and over, we can detect every bit of that.

*CGG:  There is no credible allegation of ballots being repeatedly scanned to add more votes.  The number of mail ballots counted can easily be compared to the entire list of mail ballot voters by name to see if the number of mail ballot voters equal number of mail ballots cast and counted.*

Thank you, certainly. And so coming here last night, I drove in the driver from Uber's. Fellow name was Christopher, he was Nigerian. He came here to start a business. He's been here five years, he legally immigrated here, his brother came first. And he's hoping for his next two sisters to come. And his whole goal is to start a tire company because it's about capitalism. For instance, I want my own business. He was a lecturer on economics in Nigeria. But he came here because he wanted what we have here in the United States and in the state of Georgia. Opportunity, right. But more importantly, if you look at the people that come to this country, it's not just about opportunity and freedoms, they are coming to our country from countries that have one additional thing. They come from countries where their votes don't matter. where their votes mean nothing. And they know here in the United States, what we're supposed to stand for is votes matter. Your voice, one voice matter. So that little bitty piece of paper that we're all talking about here, the ballot, it got chosen to, it was a generic piece of paper one day it comes out in a system, it's a ballot. However, when that ballot is filled in by a voter, it becomes a historical artifact. It is

Transcribed by https://otter.ai

what changes that very simple piece of paper into something that can change or guide a nation. So we have to look at these artifacts, we have to look at this documentation of what the one person expressed and their intent. And so we're getting confused in machines, let's just talk about that piece of paper, because it's about voter intent. And if there are problems, if there are issues in machines, if there are counterfeits, everybody wants them detected because at the core of this is each vote must count. Let me show you what a kinematic artifact is. It stands to reason that in a election that comes down to the propensity of a tremendous amount of mail in ballots, that a very simple process occurred, that piece of paper should have been folded and sent to you at home. A printer prints it out. That printer folds it it goes into an envelope, it's tracked in the process, United States Post Office sends it out that is tracked, it comes to your home, you receive it, you open it up, chances are you didn't vote right, then you kind of put it off a little bit, you open it two or three times you finally got around to it, you put your pin to it, fold it back, put it in the envelope and send it back that entire processes like folding and rolling process. Every time that piece of paper is opened and refold it it's like a hinge. Remember, a paper is nothing but a reconstituted tree. So it's constantly breaking fibers, it is actually changing that piece of paper into something else that it can never be hidden once it's done. This is what's called a kinematic artifact. So what you're looking at on the screen is just a simple fold. Looking at it through a computer, the things that human eyes can't see. But if you look at this, you can see even the paper on the front side of the fold to the backside of the fold changes frequency, it becomes a whole different level of light frequency. If you look at the bottom, on the left, you're looking at an oval filled out by a machine. The two on the writer by human hands. The first one that's somebody who fills in in a circular motion. handwriting is the opposite of a rocket rockets. takeoff impact, handwriting is impact. And then you're filling in that circle. And no matter how creative or non creative you are, your mind goes, Oh, I'm finished with that. But that finished process happens in your brain first, pen second. And so you always start to lighten the load and so those little bitty light areas You're seeing as the load been lightened by the person's hands, the second one is actually a gel pen. If you look at the one on the left that's done by a machine, a machine can never hide that it was a machine can't, because the same process of printing the ballot is the same process of printing, the vote is there another page in this line. Let's look at these a little bit closer on it going, going on to the next one, please, he can roll it on. So keep on going. So you're looking at four forms of human dynamic. First, we want to know where these things mailed. That's the definition of a mail in ballot. Second, we're supposed to vote for them individually by person and hand. If you have a machine one in there, he didn't cast it by hand, you're looking at the four different types. Every pin has a signature, every ink has a forensic signature, every hand has a different stroke. You're looking at circular Scribbler. Right, inside out, gel, and Sharpie. Now let's scroll up to the next one place those people no other direction. Thank you keep on going. Now look at the bottom of the machine. If you're looking at it, you can see the difference between the two. The handwritten one, the ink is over the paper. Look at the bottom one that's a machine selling and an oval. And that's a machine selling in a scribble. But you can still see through it, you see all the little bitty dots. That's because the machine still prints the same exact way just a little denser, it can always be detected. And unless the ballot all had original scribbles that scribble can be detected. Every time that scribble shows up, we find it we map it and all of a sudden, if you have 50 of these scribbles are even if you have to, you technically have a problem.

*CGG: Speaker is implying that there is some credible indication of fraudulently marked ballots. There has been none. He is hyping baseless speculation to generate publicity and stirring up controversy.*

Transcribed by https://otter.ai

We'll go to the next part of the slide. next presentation, please. And so things I'm hearing about that concern me, and this is what concerned me when I looked into this, so I'm the guy that told the world that, hey, that little bitty barcode, that means a product can talk to the internet. So things started to be tracked that way, everything you see sitting out here on the committee's table that has a barcode can now talk to the internet. That's what I'm responsible for making the physical world talk to the internet world. What bothers me in this process is to continually hear there is no, when you get adjudication, there's no paper trail, or that's kind of wiped or you can't tell what the predecessor was.

*CGG: False claim. The adjudication process for the Dominion system is far from ideal, but an electronic audit trail is available. Counties should be printing the audit trail (called "AuditMark") and creating a VRP member-signed paper trial that matches the electronic trail for every ballot adjudicated where adjustments are made.*

That's disturbing. That's the first rule of forensic audit audits. And if it was an accountant in a corporation, you'd be fired. If you ran the financials for a public company, and the numbers didn't match, and all of a sudden you couldn't adjudicate it and show the records, you'd go to prison. Now this is as simple as scanning a loaf of bread at the grocery store. When you walk in and buy a loaf of bread, and it works off that barcode that's your boat, you're walking in saying I want this bread. This is my candidate. You walk up to the cash register, you're handing it to the checker or you're doing yourself. That's basically the polling machine. And when that scan happens, it goes on low for bread $2. That's what you expect. That's what you committed to. But if all of a sudden that scan said, Sorry, it's a transmission change for your car, yours five grand, you would have a conniption fit. What's sad about this is we're not even performing at standards that we expect at a grocery stores. We're not even performing at standards that you would accept from your online purchase. When you fill that shopping cart, you expect that shopping cart to be exactly what you chose. And if you had a problem with Amazon, because they shipped you 20 things you don't need but still charge you, you would be on the phone to Amazon complaining, they would have to audit it, figure it out and make it right. But we don't do this in elections. We play hide and secret documents. We don't turn documents over which are the property of the taxpayer. Federal law states this has to be available for 22 months for audit and Inspection.

*CGG: False claim. The federal law requires preservation for 22 months but does not require the ballots to be available for "audit and inspection." While availability is quite desirable, access to original ballots for inspection is not the law in Georgia.*

That is a federal law ratified many times over.

*CGG: No the federal law has not been "ratified many times over."*

Transcribed by https://otter.ai

But yet somebody can sit and say no, we don't want to show you. You don't have access to it. That is an issue. All of these issues we can fix if we can get access to the artifact that the voter intended and what is that? That's the physical ballot. I heard about testimony about cue codes.

*CGG: Below, he is apparently referencing the QR codes on BMD ballots, but does not specify where the ballots "wouldn't run in the machine" or even what type of machine he is referencing, or where Dominion employees were who had issues with the machines.  These hyped-up vague allegations seem to be used to fan the flames of fact free claims of fraud.*

They wouldn't run in the machine. The one thing that was common that wouldn't run into the machine was what you heard it the cue code And then you heard it had to go through a secondary audit. And it still didn't run for the employee of dominion. They had to do it over and over and still didn't run.

*CGG: What is he talking about? No, we heard none of these claims. We know of no "secondary audit."*

You know, what's the common denominator inset in that code? If you go to an ATM, put in the card because you have the card, but put in the wrong pin. What happens? reject, reject, reject, reject. That paper ballot was reading that code. That code was what was making it fail. It should never occur. Ever. What it was really telling you is I've seen this before. I've seen this before. I've seen this before, and they're using the code to adjudicate it out.

*CGG: He seems to be implying that barcodes are unique and are causing the ballot scans to be rejected because they have been scanned before. Neither type of barcode GA uses is unique on any ballot. The scanners expect to see many that are identical. Hutton-Pulitzer is making up lies for unethical reasons.*

*Also, the Dominion adjudication system does not use the barcode to adjudicate hand marked paper ballots, despite his claims.*

It's a trick in systems commonly used. Let's take a look at some of these things. This is a Fulton County ballot. You can see the voting area of Fulton County on this one, we refer to it as "08L." it narrows down to Roswell, Georgia.

*CGG: No, facts are all wrong. 08L is an Elementary School precinct in an affluent area of Atlanta called Buckhead, 20 miles from Roswell.*

These are physical ballots, you know, people got extra ballots, some people got five ballots, some people got 10 ballots, tremendous amount of Texans got Georgia ballots, all kinds of interesting things happen, right?

Transcribed by https://otter.ai

*CGG: We have heard of no Georgia voters getting 5 or 10 ballots, or "extra ballots." This is likely more dishonest wild claims to achieve some other unethical goal.*

If you ever lived in Georgia, even people that moved away 10 11,12 years ago, they got ballots to vote in Georgia. So here you're looking at a ballot in Fulton County. This particular county, not according to my data, but according to public data says 67.7% of the people voted Democrat. I'm just pointing this out. So you understand I use traditional coding. The blue for the democrat side, the red for the Republican side. Let's take a look at the next ballot please. This is a ballot for Buckhead, Georgia.

*CGG: No, the ballot he is showing is a Ballot for Roswell, Georgia, not Buckhead, Georgia which is in Morgan County.*

This particular one says that 69.2% voted for the Republican Party. Right.

*CGG: Those numbers of 69.2% are from Buckhead, GA, a community in Morgan County*

This one is what we call our our "R" ballot.

*CGG: But the "R" ballot he is displaying is the Roswell Georgia ballot for which the precinct voted 53% for Trump, (not the Buckhead ballot which he claims.)*

We roll back to the first one. Look at the top right corner of that ballot in the block that says Fulton County. Now go to the next ballot. Look at the top right corner right there that says Roswell are.. Buckhead Why is there not a tracking code in that ballot?

*CGG: There is no "tracking code" on any ballot.  Hutton-Pulitzer fabricates this claim. The barcode merely had the precinct number in it. These barcodes only appear on ballots printed by the counties on ballot-on-demand printers. It is not a "tracking code," which would be illegal.*

That's the code that makes it cross check to the signature.

*CGG: False.  The code is merely the precinct.  I have checked these barcodes on ballots.  They do not appear on commercially printed ballots.*

Why is it absent?

Transcribed by https://otter.ai

*CGG: The barcode is absent because the ballot was commercially printed, not internally printed on a BOD printer.*

There are a lot of these inconsistencies in these ballots and they run along party lines.

*CGG: No, the differences are merely because they were printed by very different printers. BOD printers are used for printing military and overseas ballots, ballots to fill unexpected shortages, emergency needs, etc.*

Next slide please. So here's the sample. Yes, we have a question. Yes.

**Senator Tillery** 1:17:40
Can you go back up just a little bit? Come a little closer to microphone out here. Yeah, sorry. When we're looking at I'm just walking. Watch it across Buckhead, Georgia. On your left side, Morgan County. I just want to make sure we're comparing apples and apples. Is there a Is there something here that's off with the data? Because it looks like we're talking about Buckhead, Georgia on your left side in Fulton County, which will be the neighborhood of Buckhead on your right side iMac,

*CGG: When Pulitzer's nonsense false claims related to geographic source of ballots is caught, he obfuscates and deflects.*

**Jovan Hutton-Pulitzer** 1:18:05
I'm actually showing you the two ballots and what they relate to, I don't program that I don't write that that's in your servers. That's what your state says. So I am serving you back, according to the coding on this ballot right up in the corner of what it says it relates to. So on the left side, did our servers make the left side of your screen that says politics and voting bucket, the left side is actually the public data you can pull based on neighborhoods and areas based on the propensity of how they voted. And then in past elections,

**Senator Tillery** 1:18:36
the bottom is Morgan County, Georgia. But we're using the Fulton ballot. So I'm just making sure that

*CGG: Pulitzer is not going to acknowledge his false claim, but will deflect and criticize the questioner who is a State Senator.*

**Jovan Hutton-Pulitzer** 1:18:42
I'm just giving you examples of the general areas, right. So you understand how they break down. This is the only breakdown that's available, right? And when you put in that precinct and that zip code, this is the only information available.

*CGG: No, this the wrong because the zip code and precinct codes are in different counties.*

**Senator Tillery** 1:18:58

Transcribed by https://otter.ai

My question is, though I while I support your your in premise, I believe I'm concerned your data may not be the accurate data.

*CGG: Indeed the data is inaccurate, but Pulitzer is not going to admit a mistake or a lie, no matter what the senator says.*

**Jovan Hutton-Pulitzer**  1:19:07
That's awesome, because that's not the data I'm even referring to. Okay, let's get to the ballot and talk about the exact ballot. Because here's why. I'm not the webmaster for this. Neither you. I'm not the webmaster for that. Neither are you. I can throw that off the slide. And we can focus on the ballot instead of what doesn't matter. Here's what matters.

**Senator Tillery:**

That's what I'm wondering because the I'm afraid that your boxes refer to a different County.

**Jovan Hutton-Pulitzer**

So I'm what I'm referring to the ballot. Okay. And if you want to continue to refer to the ballot, I will show you the ballot that might I invite you to ignore every footnote that goes with the ballot, only focus on the ballot, okay, right, then we'll focus on the same exact thing, then we could still be talking okay. That's what I was wondering is that's all we're talking about when we talking about here, Georgia ballots. So if you look at this ballot here, you can confirm on your own, what district that comes from, you can see it right underneath there right now have nothing to do with the presentation, the box on the left and the boxes, though the boxes have to do to give you some reference to what outside sources say about where the ballot area is.

*CGG: He has made a gross error in the data and ballot he is using to present his (bogus) point,and trying to confuse the audience to distract from the fact that he has no relevant or accurate point to make*

That's not the right ballot area. I would suggest you submit that to the webmaster that does this for the state. I don't program it. I don't say it.

*CGG: Now blaming his error on getting the wrong ballot and wrong county on the "webmaster."*

And do me a favor. Will you scroll down? No, no, scroll down. Cover up that bottom. Now, if you look at the screen, let's look at the ballot. Don't get distracted in anything else. Okay, that might not not even be the right read for the republican party or the right blue for the Democrat Party. But let's look at the ballot maybe. In fact, if you'll blow it up so big Yeah, that would feel this bloat up so big, that people can't connect the dots, we'll get it. Let's just look at the ballot. Right? This is called Simple. Let's go even further, they might get distracted by the left side. There you go. That is so fat and so big, you cannot miss we're talking about the ballot, do you agree? And I'm not gonna roll up to the bottom so

Transcribed by https://otter.ai

nobody gets concerned. So let's look at the differences between the two. You see the code in the right is talking about that barcode. Okay. Let's scroll back to the other one. Please be very careful not to show any other data to confuse people. Let's go up. There we go. Keep on going. And now let's look at the right side of the ballot. See that there is no code there.

*CGG: There is no barcode there because it was commercially printed. This is not an indication of a problem.*

**Senator Tillery**  1:21:43
Okay, where it would be right there. Okay, that's the point.

**Jovan Hutton-Pulitzer**  1:21:46
So there's no code there. Can we agree on that? side to side? Okay, I didn't print this ballot. I do not assign the districts. I only look at the ballots. This is what the ballot says. Let's go on to the next slide, please. Okay. Again, you can discard the information at the bottom. If it confuses you. We have a copy First we have a pap. Yes.

**Senator Tillery**  1:22:13
Do you mind if I show you that? It's not confusing. I want to show you what I was saying.

*CGG: Pulitzer is not going to let the senator show the error to the rest of the audience.*

**Jovan Hutton-Pulitzer**  1:22:17
It's not I'm only talking about the ballot. I got it. I understand completely what you're saying. I'm only talking about the physical ballot on that. We agree.

**Senator Tillery**  1:22:23
Okay, good deal. That's, I want to make sure that we were on the same 100%

**Jovan Hutton-Pulitzer**  1:22:26
I think we're all on the same page. So please, let's zoom up. So there's no confusion. You have a ballot from a democrat propensity area on the left, *(CGG: it was the Buckhead area of Altanta ballot on left. (70% Biden)* I did not print the ballot have nothing to do with it. You have a ballot from the same county on the right, *(CGG: Roswell ballot 53% Trump)* I did not print the ballot, I have nothing to do with it. You're only looking at them side by side. Why is the code not there? Now let's go to the next one. Please. Scroll on up. Okay, that code. I didn't create any of these graphics. These come from third parties. They come from how your state adjudicates these, these come from, what are the checksums in the barcode?
*CGG: There are not checks in the barcode. It is only the precinct number.*

Basically, that barcode that you see missing up there is what helps adjudicate it.

*CGG: Not the barcode does not help "adjudicate it." Adjudication does not use the barcode.*

Transcribed by https://otter.ai

And if you want to zoom it way up to the bottom there, none of these graphics are mine. Keep on going, keep on going. Keep on going. That's how you verify, and adjudicate and tabulate, and correlate that code.

*CGG: No, another lie. The barcode stating the precinct number has nothing to do with tabulation, adjudication, or tabulation.*

So we've now established that, wow, that codes not there.

*CGG: There is no reason that codes should be there.*

 Can we go to the next slide, please? Great. Okay, let's get rid of the top so we don't get confused between the icons of the parties. And let's just look at a ballot. We've all been hunting probably or know what hunting is. We look to a scope. There's a crosshair in the center. You put that crosshair on exactly what you want to hit, that's called hitting the target. If you have hunted in your life, and you're not lined up in the crosshairs, and you're doing a 50 yard shot, and you're kind of going to the bottom right, you're gonna miss whatever your target is. I have questions about these targets. I have simple questions and forensics. Why is the ballot from one county on the left? Why does it have a completely separate code in it than the one on the right? These are actually coded to where they come from, *(CGG: you can know the precinct they came from)* why should you be able to look at a ballot and know whether it came from a republican area or democratic area? *(CGG: Because precincts must be recorded on the ballots by state laws in almost every state, and most precincts have partisan leanings.  There is nothing wrong with this. )* This concerns me? I don't think you should be able to know can we look on to the next one, please. So let's use this target here. We'll use top as first

**Senator Ligon**  1:24:43
senator rhett had a question while you're there.

**Jovan Hutton-Pulitzer**  1:24:45
Let's see. Sure.

**Senator Rhett**  1:24:46
I just have a quick question.

**Jovan Hutton-Pulitzer**  1:24:47
Can you speak in the microphone on I'm sorry, I'm unable to hear you.

**Senator Rhett**  1:24:50
Sorry. I was just wondering if the scanners won't show creases, because the images are usually very low quality.

**Jovan Hutton-Pulitzer**  1:24:59

Transcribed by https://otter.ai

No sir all the machines Scan at 300 DPI, which is the default, which is a standard used in any forensic investigation, right. So they all scan to the same confirmation level. So from San Francisco, California to here, they all have the same exact scan level. It's just inherent to the machine and what they see.

**CGG: No, GA Dominion machines scan at 200 dpi.**

Thank you. Yes, sir. The things that concern me, the ballot on the left again, I just color coded them to make them easy. I'm not saying everybody that lives there's a Democrat. And I'm not saying everybody on the right living, there's a Republican, I'm just calling your eyes. I use this as coding so you can see what I'm saying. However, what's really interesting to me is the ballot that goes to the republican area is completed, it printed completely off register. You remember when I told you you feed $1 to the snack machine and it kicks it back? It's because that dollar is broken, it's off? register? The machine says I don't recognize this. I don't recognize this. What do you want me to do with it? Now when it comes to a snack machine, it keeps on spitting the dollar bill out at you until you finally put in one eight degrees with a pin for your bank account to access your money. It's putting the right code in the voting machines is saying adjudicate me adjudicate me what's going on here? Well, that's just also like a siding device. You see how far that registers off? It makes the paper talking differently than what the machines tried to look at. Can we roll up a little please? Yes, sir. I can't hear you very well, I'm so sorry.

**Bill Heath (GA Sen.)**  1:26:39
Would you agree that the boxes along the left and right side of the ballot, create horizontal scanning areas, and the marks along the bottom edge and the top edge create scanning areas. So you have a gridd on the paper?

**Jovan Hutton-Pulitzer**  1:26:59
It's, it's there like waypoints like in GPS. It's what tells everything how to communicate. So if you'll scroll back to the bigger ballot, please. So we can look at keep on going backwards. Just keep going until you There you go. All those hash marks on the top and bottoms. All of those are citing communication and adjustment devices. Let me give me an example. Long before computers talk with programs, they talked with paper, they punch little holes in paper. And that's what programming, that's what you're looking at. That's the paper, basically telling the machines to program itself. Yes.

**Bill Heath (GA Sen.)**  1:27:36
So the marks along the left pan and right in the vertical square boxes, they create horizontal lines for regions on the ballot, it's only an outside adjustment, it does not create a line for scanning purposes. optically, when it gets to a square to a black box on the on the vertical edges, it creates a scanning area across the ballot horizontally.

**Jovan Hutton-Pulitzer**  1:28:04
That's not the actual description of what it creates

**Bill Heath (GA Sen.)**  1:28:08
I can describe it. Maybe another way. If you if you take that ballot right there, and be printed out. And you take a straight edge and you draw from the top of the box on the left side to the top of the box on

Transcribed by https://otter.ai

the right side of the bottom of the box on the left side to the bottom of the box. On the right side, you create a series of horizontal lines.

**Jovan Hutton-Pulitzer**  1:28:28
You can create you can connect these like a grid. Yes, sir.

**Bill Heath (GA Sen.)**  1:28:31
And you can do the same from top to bottom,

**Jovan Hutton-Pulitzer**  1:28:34
correct, sir.

**Bill Heath (GA Sen.)**  1:28:35
So the width of the box on the left and the right has nothing to do with anything other. The width has nothing to do it could be an eighth of an inch wide or an inch wide is still creative, an 1/8 inch wide scanning

**Jovan Hutton-Pulitzer**  1:28:49
Untrue I understand what you're saying. But the signature of the ink creates something different. You can't What? No, I'll give you a simple test. Take a $1 bill out of your pocket. Take a $5 bill out of your pocket, cut off the five put it on the one run it through your snack machine out there, see what happens. It's all going to be the same size. It's all gonna be the same markers. It's all gonna be the same detection things, but that's going to kick it back because the computer must see it. Exactly. So you can do this own test yourself. Right? It has to be exact. We in the human world, we deal with variables all the time. That's what we're talking about. And ballots. Oh, we heard it. Oh, I think that's a vote for this guy. When somebody else says no, it's a vote for this guy. what you just described was an opinion a variable machines don't operate that way. machines have hard absolute fact rules.

**Bill Heath (GA Sen.)**  1:29:55
I know you don't know me. I'm actually a electrical engineer myself and The currency processing equipment and dealt with currency scanner. So I know a lot about how they work all I'm saying is, is all the little ovals on that ballot are lined up in that grid?

**Jovan Hutton-Pulitzer**  1:30:14
Well, we talking about the ovals, and we're talking about the hash marks on the side

**Bill Heath (GA Sen.)**  1:30:17
 I'm talking about the ovals are lined up

**Jovan Hutton-Pulitzer**  1:30:19
 The ovals almost have an exact location on the paper, we use all of those hash marks top to bottom left to right to find out where that is, let's share some common technology or terminology if it helps us communicate here. Number one, regardless to the machine, I don't care about the machine. I don't want to run another ballot through a machine. That's why we're here.

Transcribed by https://otter.ai

*CGG: We are here not to run another ballot through the machine?*

 So I do not care about how the machine reads it and what you're doing, I care about getting to the physical ballot. So in our world of what we're doing, which you'll understand this, as a mechanical engineer, I've now said, I don't care about the machine. So now all those rules went right out the door, what I'm talking about is that piece of paper, what we do is we use those hash marks for something different. And those hash marks for something different, are basically what we do when we look at the ballot.

*CGG: Seeing that his barcode argument is causing his remaining credibility to spiral down, he no longer cares about how the machines read the ballot. Now he wants to talk about any different subject—hash marks, the arena, artifacts…*

 So this is the arena, with no regard to what it was to do in the machine, we call it the stadium, the arena. Then when you go to the presidential area, we call that the football field, that one happens to be the Super Bowl field, I think we can agree. And you have other ones that are at the state and college and local levels. And then all of them have a game ball and play. I have no regard for the smoke and mirrors of how the machines work, the hidden stuff in the code or how this machine is supposed to be programmed. If the machine worked according to programming, none of us will be standing here, we're here because something broke. So I'm saying I don't care about the machine. I don't even care about the code that was written in the machine. What I care about is that physical artifact. And you know what? That physical artifact has material differences from district to district that should not be there.

*CGG: False! Barcodes are legitimately on some ballots and not others. And of course precinct coding should be on each ballot and it will always be different than other precinct codes.*

*Next is "word salad" that makes no sense whatsoever.*

Now we can all talk about, well it scan lines and assess, you know, as a mechanical engineer, that doesn't create a scan line, period. That's not what creates the scan line. So bottom line is we have differences in ballasts that shouldn't be are there. Why are they there. That's why I said earlier, I'm not talking about code, because that's how this process gets derailed. That's how the smoke and mirrors happens. And nobody's get to it, please, let's go to the bottom. So we use that as the stadium. And we have the football field and we have the ovals. We're only looking for it. Let's keep on going for it. Here's what does matter. You as a mechanical engineer can understand this. There's a sighting device. That is the item that tells the optical I technically although in mechanical engineering speak, it's not a singular eye anymore, but we'll just use that as an example. That's telling the sighting device where to look. You as a mechanical engineer, knowing forensic knowing dollars, writing codes, doing whatever, you yourself know that when it doesn't line up, the machine doesn't work the way it's supposed to work. It's the difference between pulling your dollar bill out like this and looking at it pulling the same dollar bill but doing a cross side. One of them doesn't make sense. One of them doesn't look at the same thing.

Transcribed by https://otter.ai

The other thing does. That's why this paper is a piece of code. So we don't care about the scan lines. We don't care about the resolution. We don't care about any of that we care about the piece of paper. And if you're looking at the bull's eye, can we draw that up? Try to keep them both in frame. Just two targets on the bottom. There you go. If we're looking at the bullseye, the very thing that says hey, look here. Well, the left one saying look in my yard and the right when saying look two houses over. But you know what the ovals never moved. Because they were printed hard. So even as a mechanical engineer or photography, or optics or camera, when you expect to take a picture and you hold it at somebody, you're not trying to photograph two people over. And this is what it tells the machine to do. This is a problem at the most lowest elementary level and the number one way it's cloaked. Well, we can't see it in the code. We don't know how it's done. Show me the code that does it. Well, that's the code. That's the code. Any printer, industry executives, any monetary printing executive, any engineer in the world that deals with printing will tell you This simple fact, if your machine is not calibrated to hit the target, it becomes something else. So if we talk about machines, and we talk about code, it is a smoke and mirrors not to deal with what's real and physical.

*CGG: We have tested the scanners on many barcoded ballot on demand ballots and have not seen any systemic counting errors related to the barcode or alignment. We have heard of none reported by others. Is Pulitzer saying that he has some evidence of vote count problem?*

Here's my contention. This is the historical artifact of a voter. And states are telling voters You have no right to that. The very voter that pays your salary that paid for that ballot that paid for that piece of paper and paid for the machine that you're running it in. So those people that pay your salary that you work for, and do this for, you're telling them you can't look at them. That is both unacceptable. And unAmerican. What I'm saying is, all of these problems you've heard to day can be corrected and detected now, by the simplest of things, it takes you days or weeks to recount votes, give me these 500,000 ballots, we'll have them done in two hours.

*CGG: What "problems have been heard today? " He has fabricated some problems for his own purposes, but they're not real. He could not begin to scan 500,000 ballots in 2 hours.  This is a ludicrous claim.*

How can you complain? What is there to hide with the physical artifact of the human interaction that is putting people in office. That is unacceptable. unAmerican, and to talk about it any other way is smoke and mirrors, is geek gobbly gook. We want to know if these ballots are authentic or counterfeit.

*CGG: What reason is there to believe that there are counterfeit ballots?*

We want to make sure every vote is verified. This is not about President Donald J. Trump, or President Elect Joe Biden. This is about are we still a country where your vote matters. One person, one vote. If you refuse to allow the ballots to be examined the ballots, not the smoke and mirrors. But the ballots, let the machine look at it not the voting machine that already messed up. machines do what you tell them, you just have it look at that and verify the vote. There's only one element that will do that. The historical artifact of the people of the United States of America and here are the people of the state of Georgia,

Transcribed by https://otter.ai

they trusted you that this was right. They trusted you that your vote would matter. They trusted you I have a voice and I want my voice counted. That is only that piece of paper. It is unforgiveable for somebody to be able to audit something. And then the original one disappears. How convenient. You know, if you did it in your company, as a mechanical engineer, and you had your CPA do it, or your financial guy, you'd fire him. And that's just one little bitty company. But yet we accept this as a nation on acceptable on American. So our technology can answer every bit of these if you will roll up. I don't even know if there's any more. So let's look at this. Here's what I have a problem with is simplest state. This is the repub This is the county's statement on ballots went out on national TV. We had 113,130 votes at the time, and we had to adjudicate 106,000 of them.

*CGG: Fulton did not have to adjudicate 106,000 ballots, That is a lie.*

You know what that's really saying your machine didn't work. When the national average for the last elections 2016 was what 1.2% that's an audited number 1.2% of the total had to be adjudicated. And then you look at 2018 nationally 2.7%. But yeah, your own election officials said we had to do this 93.6% of the time.
*CGG: Rick Barron did not indicate a 93.6% adjudication rate, He was merely reporting that 106,000 ballots were past the stage in processing at which some may need adjudication. Accusing Fulton of saying this is an irresponsible lie.*

Let me decode that for you, Mr. Mechanical Engineer, your machine doesn't work. Mr. printer, your ballots screwed up. Because you took something that should have been transparent and easy and readable and you put an opinion smack dab in the middle of it. How is that acceptable? That's like depositing $100 in your bank says Well, we only see it as $2.33 That's our opinion of it, would you accept that because that's the net effect of this? No, it is unacceptable. And by the way, where everybody talks about batch scanning, which you have on video, you have on sitio people standing there, feeding the ballots, doing the three card Monte, run them again, one guy, Monty, run them again, let me tell you how that works. Right. You don't go to the bank and deposit $1,000 and say, hand it back, when we run the same $1,000 through, and now you got a $2,000 net deposit. And you don't say hand that $1,000 back, let me run it again. And now I got a $3,000. net deposit. We also don't take our $600 stimulus check and feed it to a Dominion machine, because we get $187,000 back on acceptable. Now you might be able to accept these. And everybody might try to talk quietly about it and duck their heads in the sand. This is not even a beating of a drum. This is a burning of a city. This is a broadcasting to every person who voted in Georgia, your vote doesn't matter, because we're going to decide what you really meant. So I'm up here saying I don't care what anybody's background is, you know why? It's 100%? irrelevant. I only care what that piece of paper tells us.

*CGG: After that nonsensical rant, he decides that he is "not going to listen to anybody else." (who might challenge him).*

And I'm not going to listen to anybody else. You know why? Because I'm not going to be talked out of the historical artifact that the person expressed. That is the only thing that matters, not your opinion of how these machines work. It doesn't matter at all. That is just an opinion. And we all got one.

Transcribed by https://otter.ai

*CGG: He doesn't have facts, so he will have his "opinion."*

The fact is the paper, the paper, verify the vote, verify the vote, the paper the paper. I don't care about the council's for committees, I'm sorry. And in case you didn't tell, I'm not gonna bow to it. I do care about the American people. I do not care how the vote comes down. I do care that it counts, right. I do care that it's authentic. Our country was founded on a piece of paper. Our laws and our word came down to us on paper. And all of a sudden we're going to hide the paper and we don't get to look at it on acceptable. That is the word.

**Senator Ligon**  1:42:43
Thank you, we got a lot more witnesses. Appreciate your unless there any question any questions.

**Senator Beach**  1:42:55
I do think there was a well coordinated effort with several groups to commit widespread and systemic fraud from out of state voters felons voting and dropboxes chain of custody. And now finding out the Dominion machines didn't scan from our testimony. But I think the real fraud in my opinion occurred at the State Farm arena. Did you see that video?

**Jovan Hutton-Pulitzer**  1:43:16
Yes, sir.

**Senator Beach**  1:43:18
I cannot think that there was not fraud there. And and I would tell you, my question to you is, if we were able to subpoena those ballots between 1030 and 1am, would you be able to tell if they were counterfeit, or legitimate? And if you were what probability, would you be able to tell that? I mean, what would be the probability of your

*CGG: No one has presented even a credible allegation of systemic fraud or collusion, much less evidence.*
*Total gibberish follows as the next response---*

**Jovan Hutton-Pulitzer**  1:43:38
 This is 100%. And let me tell you why it's 100%. First off, this is a combination of computer vision, computer vision, or now how your car self drives. And you trust that. It's how we look at everything on an assembly line, that those tolerances for that jet engine are perfect. So that plane does not fall out of the sky. That's all computer vision. Machine learning is looking at these patterns and going I've seen this, what does it mean? I've seen this, what does it mean?

*CGG: that fabricated nonsense that follows is not true. The Dominion scanner EMS software does not learn patterns or ballots or have artificial intelligence as he fabricates below.*

Transcribed by https://otter.ai

So every time we feed the ballot, it keeps on learning. And then it uses artificial intelligence and artificial intelligence goes, wow, what do all these patterns tell us? That's it. And so on those ballots, you could take a section of every hour of the day and look at them or you could take that spike, what could we tell Was this the real ballot? Did you know there is a forensic difference between a ballot that was officially printed and something that ran on a high speed press that should have never been on a duplicated press? This is why people are screaming to look at the physical ballot because we will tell you instantly what came out of a mass copier versus what came out of a printer.

*CGG: There has been no reason to believe that there are any ballots of suspect sources.*

Officially printed. We will tell you did a human fill this out or did a machine fill it out? We will tell you what it mailed Was it not mailed? It can be checked against spoil drew adjudications, there still going to be a difference in number. And last but not least, we will tell you have we seen this number before that we see it keep popping back up, we're looking at the wrong things. I suggest every one of us if you want us to understand what we really should be looking at, go into your computer right now and change your clock in your computers in 1900. Watch it shut down and nothing work. And you can't get back in to change the date. This should be looked at with timestamps and dates, and the correct portion of code not to smoke and mirror coats we're being fed. And you will see what get run over and over and over and over again. That is the problem of why we must see the physical ballot is the Holy Grail. The second one is the digital scan. So yes, sir. All of that can be detected unbiased in exactly just what the forensic science says the scientific method, not the opinion.

1:46:08
Thank you.

1:46:09
Thank you.

**Senator Rhett**  1:46:12
I was just wondering if the information that you're presenting is,

**Jovan Hutton-Pulitzer**  1:46:17
can you I'm really sorry, I read lips, I have a hearing problems, part of why I talk so loud.

**Senator Rhett**  1:46:21
But I was just wondering if the information you're presenting was based on your personal experience working with election machines.

*CGG: Has to admit that he does not have election and ballot evaluation experience.*

**Jovan Hutton-Pulitzer**  1:46:28

Transcribed by https://otter.ai

My my experience is this has never been done for election machines before this is exactly how counterfeit money is detected. The elections machines have always tried to hide the physical ballots, so it can't be done. What I've spent the I've spent the last 24 years and understanding how papers and machine and internet interact. I spent the last six years almost understanding the paper reading details at the nano level. I can tell you what paper came from China, I can tell you the person that handled it was a smoker. All of it is detectable with the physical ballot. So yes, 24 years doing this the last six years doing it in the new field of science, looking at it at the nano level. We don't even have to look at color anymore. We will look at waveforms and frequencies and lines and curves. But yes, sir. 100% detectable and this is what my whole career has been about. And is also why a tremendous amount of the functions on your mobile phone work. you interact with me eight 910 times a day on your phone, you just didn't know it was this loud guy. Right? Who has a hearing problem? I'm very sorry. But it's just the way it is right? It's probably because I grew up the youngest. And I had to talk over my older brothers and sisters just kind of the way it goes. But you interact with me net depend on these things. When you walk into an airport, and you no longer present that boarding pass on use of that phone, that code staring you and you go through. That's me. And you depend on that to get on that plane and make sure they have your reservation. These are simple. These are simple when in case you can't tell I can get really technical and deep in geeky but I try not to because this is simple. Simple.

**Senator Ligon**  1:48:16
Well, we're gonna need to move on to thank you for Yes. Thank you I need to move on to Mr. Garland Favorito

**Jovan Hutton-Pulitzer**  1:48:30
By the way, for the state of Georgia, we'll do this for the people will do it absolutely for free. The moment you let us do it, we'll put it in the system and we will give you the answers you seek.

**Senator Ligon**  1:48:39
Thank you. Thank you.

Transcribed by https://otter.ai

[IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** **Plaintiffs,** **v.** **BRAD RAFFENSPERGER, ET AL.,** **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## PLAINTIFF COALITION FOR GOOD GOVERNANCE'S OBJECTIONS AND RESPONSES TO STATE DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

In accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Coalition for Good Governance ("CGG"), by and through counsel, hereby responds and objects to State Defendants' Second Request for Production of Documents ("Second Requests") to CGG, served August 16, 2021.

## RESPONSES AND OBJECTIONS TO SECOND REQUESTS

### Second Request No. 1:

All communications between you and Fair Fight or Fair Fight Action or any individual employed by or acting on behalf of such entities, concerning the Litigation or otherwise concerning Georgia's Election System, and any documents related thereto. This request shall be for the time-period January 1, 2018 to present.

1



Exhibit
CGG 0036

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery because any such communications are not relevant to any of the claims or defenses at issue in this case. Simply put, there is no material relevant fact at issue in this matter that such documents would tend to make more or less likely. Based on this objection, CGG will not produce any documents in response to this Request.

**Second Request No. 2:**

Documents sufficient to show the total number of contributors, and total amount of contributions received by the Coalition for Good Governance as a result of fundraising efforts concerning the Litigation, including but not limited to the total number and amount of contributions received by the Coalition as a result of your joint fundraising effort(s) with Fair Fight or Fair Fight Action.

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery. There is no material relevant fact at issue in this matter that such documents would tend to make more or less likely. Based on this objection, CGG will not produce any documents in response to this Request.

**Second Request No. 3:**

All communications between you and the following individuals or organizations, or any persons employed by or acting on behalf of such individuals

or organizations, which concern or relate to the Litigation or Georgia's Election System, including documents related thereto:

a. L. Lin Wood, Jr.;

b. Sidney Powell;

c. Garland Favorito;

d. VoterGA;

e. Members of the Arizona State Senate;

f. Free Speech for People or The North Carolina Chapter of the NAACP; or

g. Any candidate on the ballot for election to federal, state, or local office in the 2020 General Election or Primary, or the 2021 Runoff Election.

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery because any such communications are not relevant to any of the claims or defenses at issue in this case. There is no material relevant fact at issue in this matter that such documents would tend to make more or less likely. Based on this objection, CGG will not produce any documents in response to this Request.

**Second Request No. 4:**

All documents or communications related to the "important and time-sensitive issue" raised with the Court in the Litigation via electronic mail on or about

3

December 23, 2020, including but not limited to any such documents or communications between you and the Court *ex parte*.

**Response:**

CGG objects to this Request as irrelevant. It was the Curling Plaintiffs that raised the "important and time-sensitive issue" on or about December 23, 2020. CGG made no *ex parte* communications. Additionally, any communications related to the issue are protected by attorney-client, work-product, and other relevant privileges. Based on this objection, CGG will not produce any documents in response to this Request.

**Second Request No. 5:**

All communications between you and any individual who is not participating as an expert witness or counsel in the litigation concerning the July 1, 2021 report of Dr. J. Alex Halderman in the Litigation, and any documents related thereto.

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery because any such communications are not relevant to any of the claims or defenses at issue in this case. There is no material relevant fact at issue in this matter that such documents would tend to make more or less likely. CGG therefore also objects that it would be unduly burdensome to search for communications which, if they exist,

could only show that CGG is aware of the existence of the report. Based on these objections, CGG will not produce any documents in response to this Request.

**Second Request No. 6:**

All communications between you and any declarant or fact witness upon whom you intend to rely, in whole or in part, at summary judgment or trial in the Litigation, and any documents related thereto.

**Response:**

CGG objects to this Request in that it has no contextual parameters that would limit its scope to matters relevant to the subject matter of this litigation. Additionally, four members of CGG are declarants and co-plaintiffs. CGG therefore objects that this request is overbroad because it seeks "all" communications with some of its members, without any limits for time, content, or context. CGG also objects to the extent that this Request violates the common interest privilege. CGG is willing to meet and confer as to whether there is a reasonable scope of this Request that can be narrowed to seek relevant, non-objectionable documents.

**Second Request No. 7:**

All communications between you and any member of the Coalition for Good Governance concerning the Litigation, and any documents related thereto.

**Response:**

This Request is nearly word-for-word identical to Request No. 22 in "Defendant Brad Raffensperger's First Request For Production of Documents to the Coalition For Good Governance," which was served on CGG December 30, 2020. CGG objects today for the same reasons they objected to that previous Request. The Court has already sustained the objection on the previous, near-identical, request. (Doc. 1171, p. 2). Therefore, CGG will not produce documents responsive to this Request.

**Second Request No. 8:**

All documents or communications concerning membership with the Coalition for Good Governance, including but not limited to registration processes, dues, responsibilities, obligations, or benefits of membership.

**Response:**

CGG will produce responsive documents.

**Second Request No. 9:**

Any and all documents or communications concerning the membership status of Jasmine Clark, Dana Bowers, Brian Blosser, and any communications with such individuals concerning the Litigation.

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery. CGG further objects that the Request lacks any temporal limitations. There is no material relevant fact at issue in this matter that such documents would tend to make more or less likely. CGG also objects to the extent that such communications are protected with the attorney-client, work-product, or other relevant privilege. CGG will not produce any documents in response to this Request.

**Second Request No. 10:**

All communications between you and any member of a County Board of Elections & Registration, or any such separate boards thereof to the extent applicable, concerning the Litigation or Georgia's Election System, and any documents related thereto.

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery. There is no material relevant fact at issue in this matter that such documents would tend to make more or less likely.

Without waiving the foregoing objection, CGG will produce documents responsive to this Request.

**Second Request No. 11:**

All communications between you and the Election Assistance Commission, or any individual employed by or acting on its behalf, concerning Georgia's Election System or otherwise concerning Dominion Voting Systems, including but not limited to communications concerning the *de minimis* software change approved by the EAC on or about October 9, 2020, and any documents related thereto.

**Response:**

CGG objects to this Request as irrelevant and beyond the scope of discovery because communications to the Election Assistance Commission are not relevant to any of the claims or defenses at issue in this case. Simply put, there is no material relevant fact at issue in this matter that such documents would tend to make more or less likely.

Without waiving the foregoing objection, CGG responds that it has no documents responsive to this Request.

**Second Request No. 12:**

All responses to subpoenas in this Litigation or responses to requests under the Georgia Open Records Act concerning the Litigation or Georgia's Election System.

**Response:**

CGG has already started producing records responsive to this Request and will continue to do so.

**Second Request No. 13:**

All documents responsive to prior requests or interrogatories served by State Defendants on you in the Litigation since July 31, 2020.

**Response:**

CGG objects to this Request because it is duplicative of all prior requests and interrogatories. CGG already objected to many of those prior requests and interrogatories and continues to object. Disputes over those objections have recently been resolved (Doc. 1171), and CGG will produce documents in accordance with that order. No new documents will be produced in response to this request.

This 15th day of September, 2021.

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
Tel: (404) 869-7600
Fax: (404) 869-7610
cichter@ichterdavis.com

*Attorney for Megan Missett, Ricardo Davis, Laura Digges and William Digges*

9

and

/s/Bruce P. Brown
Bruce P. Brown
BRUCE P. BROWN LAW LLC
Georgia Bar No. 064460
1123 Zonolite Road, Suite 6
Atlanta, GA 30306
(404) 881-0700
bbrown@brucepbrownlaw.com

*Attorney for Coalition for Good
Governance*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2021, I served a copy of the foregoing upon all counsel of record via electronic mail.

*/s/ Cary Ichter*
Cary Ichter

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, ET AL.,

Plaintiffs,

v.

BRAD RAFFENSPERGER, ET AL.,

Defendants.

Civil Action No. 1:17-CV-2989-AT

## RESPONSE OF COALITION FOR GOOD GOVERNANCE TO BRAD RAFFENSPERGER'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff Coalition for Good Governance ("Coalition") responds to Brad Raffensperger's First Request for Production of Documents as follows ("the Requests"). The defined terms in this Response are the same as those in the Requests. Note: for the purpose of these responses, the term "responsive documents" means documents in Coalition's possession or control and does not include privileged attorney client communication or work product.

### Request 1

All of your financial books and records, including balance sheets, bank statements, ledgers, and expense reports, that reflect any diversion of financial resources as a result of your challenges to the Election System and/or the

1



Exhibit
CGG 0037

Litigation. This request covers the time period of January 1, 2017 to the present day.

### Coalition Response

Coalition objects because this Request is overly broad and unduly burdensome in the following respects.  Thousands of documents reflect a diversion of resources for this litigation; indeed, every document generated or received by the Coalition reflects a dedication to that communication which reflects a diversion of resources.  Thus, responsive documents exist, but no additional documents responsive to this request will be produced.

### Request 2

All documents and communications that reflect any diversion of personnel or time spent by or on behalf of the Coalition as a result of your challenges to the Election System and/or the Litigation from January 1, 2017 to the present.

### Coalition Response

Coalition objects because this Request is overly broad and unduly burdensome in the following respects.  Thousands of documents reflect a diversion of resources for this litigation; indeed, every document generated or received by the Coalition reflects time and personnel dedicated to those activities  which reflect a diversion of resources.  Thus, responsive documents exist, but no additional documents responsive to this request will be produced, except to this extent:

Coalition will produce documents sufficient to show a diversion of resources for the purposes of establishing standing in this litigation.

**Request 3**

All of your corporate by-laws, including any  amendments.

**Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

**Request 4**

All of your articles of incorporation and corporate formation documents, including any amendments.

**Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

**Request 5**

All agreements with any of the other Plaintiffs in the Litigation, including agreements entered into as part of the Litigation.

**Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  At this time, Coalition does not believe any documents exist, and none will be produced.

### **Request 6**

Your corporate mission statement, including any amendments.

### **Coalition Response**

Responsive documents will be produced.

### **Request 7**

All organizational charts or other documents that identify the persons in leadership positions (including but not limited to members of the board of directors and corporate officers), since January 1, 2017.

### **Coalition Response**

Responsive documents will be produced.

### **Request 8**

All corporate resolutions approved by the board of directors or similar authorizing entity related to the Litigation and/or your challenges to the Election System since January 1, 2017.

### **Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

### **Request 9**

All minutes of corporate meetings and meetings of your board of directors that reference the Litigation and/or your challenges to the Election System since January 1, 2017.

### **Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

### **Request 10**

All written consents of your board of directors that reference the Litigation and/or your challenges to the Election System since January 1, 2017.

### **Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

### **Request 11**

All Internal Revenue Service determinations and communications regarding your tax status.

### Coalition Response

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

### Request 12

All documents that evidence, refer to, or reflect any entities under the common control or management of the Coalition.

### Coalition Response

No responsive documents exist.

### Request 13

13. All documents that describe the roles of each corporate office position (e.g., chairman, president, etc.).

### Coalition Response

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents do not exist.

### Request 14

Your Form 990 tax returns for every year from 2017 to the present.

### Coalition Response

Coalition objects because the requested documents are not relevant to the claim or defense of any party. However, no documents will be withheld based on this objection; responsive documents exist and will be produced.

### Request 15

All communications that you sent to potential or actual voters in Georgia from January 1, 2017 to the present. This includes electronic communications via text message or electronic mail. This request does not include social media posts that are generally accessible.

### Coalition Response

Coalition objects to this request as overly broad and unduly burdensome. The "potential or actual voters in Georgia" that Coalition communicates with includes almost everyone with which Coalition communicates which includes thousands of Georgia residents The request for "all communications" includes any communication, regardless of whether such communication is relevant to any claim or defense of any party or not. Coalition also objects to this Request as it seeks information subject to attorney-client, work product, common interest, or other applicable privilege. On the basis of these objections, Coalition will not produce any documents in response to this Request.

### Request 16

All documents reflecting any and all fundraising solicitations in connection with the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

**Request 17**

All documents reflecting all donations or contributions received by the Coalition in response to any fundraising solicitation(s) in connection with the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects because the requested documents are not relevant to the claim or defense of any party.  Responsive documents exist, but none will be produced.

**Request 18**

All documents and communications that relate to the Coalition's identification and tracking of individuals allegedly affected by the Election System.

**Coalition Response**

Coalition objects to this request because it is vague and does not identify any particular document or category of documents.  On the basis of this objection, no documents will be produced.  However, to the extent this Request means documents describing how individuals are affected by the Election System in the form of declarations, to that extent this Request is not objectionable and such documents exist, and, to the extent that they have not already been filed in this Action, will be produced.

### Request 19

All documents related to communications with anyone the Coalition claims was affected by the Election System.

### Coalition Response

Coalition objects to this request because it does not identify any particular document or category of document, but instead consists of an interrogatory – asking Coalition to first identify such persons – and then to produce documents reflecting communications with such persons.  The request also is overly broad in that every voter is "affected" by the Election System in some way, so the request encompasses every communication with every Georgia voter.  Responsive documents exist, but will not be produced.

### Request 20

All videos, recordings of any kind, photographs and any other tangible evidence responsive to any of the above requests for production of documents directed to the Coalition.

**Coalition Response**

Coalition objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case.  Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims.  No documents will be produced specifically in response to this request.

**Request 21**

All documents received from nonparties through subpoenas issued in the Litigation.

**Coalition Response**

Responsive documents will be produced.

**Request 22**

Any and all documents reflecting any correspondence or communication with or from any member(s) of the press that mention or refer to the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects to this request because it is burdensome far out of proportion to its utility in capturing relevant evidence that cannot be obtained with more reasonable, narrow, or focused requests.  Responsive documents exist, but will not be produced.

**Request 23**

Any and all documents reflecting any correspondence or communication with or from any political campaigns that mention or refer to the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects to this request because the phrase "political campaign" is not defined.  Coalition also objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case.  Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims.  No documents will be produced specifically in response to this request.   To the extent "political campaign" means only "political candidate," *see* response to Request 24.

**Request 24**

Any and all documents reflecting any correspondence or communication with or from any political candidates that mention or refer to the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case. Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims. No documents will be produced specifically in response to this request. Without waiving this objection as to other documents, and solely for the purpose of avoiding a discovery dispute, Coalition will produce a set of documents that include mass emails sent to elected officials who may also be candidates, and mass emails sent to internal lists of 2020 Georgia candidates.

**Request 25**

Any and all documents reflecting any correspondence or communication with or from any political parties that mention or refer to the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case.  Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims.  No documents will be produced specifically in response to this request.

### Request 26

Any and all documents reflecting any correspondence or communication with or from any member of the public that mention or refer to the Litigation and/or your challenges to the Election System.

### Coalition Response

Coalition objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case.  Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims.  No documents will be produced specifically in response to this request.

### Request 27

Any and all documents reflecting any correspondence or communication with or from any voting rights or election integrity organization that mention or

refer to the Litigation and/or your challenges to the Election System.

### Coalition Response

Coalition objects to this request because the terms "voting rights or election integrity" organizations is not defined.  In addition, Coalition objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case.  Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims.  No documents will be produced specifically in response to this request.

### Request 28

Any and all documents reflecting any correspondence or communication with or from any teachers, professors or other members of the academic community that mention or refer to the Litigation and/or your challenges to the Election System.

### Coalition Response

Coalition objects to this request because it is burdensome far out of proportion to its utility in capturing relevant evidence that cannot be obtained with more reasonable, narrow, or focused requests.  Responsive documents exist, but will not be produced.

**Request 29**

Any and all documents reflecting any correspondence or communication with or from schools, colleges or other educational institutions that mention or refer to the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition believes that no responsive documents exist.

**Request 30**

Any and all documents reflecting any correspondence or communication with or from any of your members that mention or refer to the Litigation and/or your challenges to the Election System.

**Coalition Response**

Coalition objects to this request because the burden of producing such documents is far out of proportion to whatever relevance or materiality they have to the case.  Relevant and material documents responsive to this request will be produced to the extent they are responsive to the other requests which seek documents supporting Coalition's claims.  No documents will be produced specifically in response to this request.

**Request 31**

Any and all documents reflecting any criticism or complaint by any voter about any components of the Election System, including, but not limited to, any

hardware, software or other products supplied by Dominion.

### Coalition Response

Responsive documents will be produced.

### Request 32

Any and all documents that support your allegation in Paragraph 37 of the Complaint that "the Dominion BMD system does not satisfy the Certification Rule's requirements for qualification testing."

### Coalition Response

Responsive documents will be produced.

### Request 33

Any and all documents that support your allegation in Paragraph 37 of the Complaint that the Dominion BMD system "is not validly certified."

### Coalition Response

Responsive documents will be produced.

### Request 34

Any and all documents that support your allegation in Paragraph 37 of the Complaint that the Dominion System "is not legal to use in Georgia."

### Coalition Response

Responsive documents will be produced.

### Request 35

Any and all documents that support your allegation in Paragraph 68 that the Dominion BMD system "is less secure than DRE systems."

**Coalition Response**

Responsive documents will be produced.

**Request 36**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system "does not meet Georgia's legal requirements for a lawful voting system."

**Coalition Response**

Responsive documents will be produced.

**Request 37**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system "shares the same kinds of security flaws as Georgia's existing… DRE system."

**Coalition Response**

Responsive documents will be produced.

**Request 38**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system "has not been properly tested."

**Coalition Response**

17

Responsive documents will be produced.

**Request 39**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system "was improperly certified."

**Coalition Response**

Responsive documents will be produced.

**Request 40**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system fails to produce verifiable accountable and auditable vote totals and election results."

**Coalition Response**

Responsive documents will be produced.

**Request 41**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system "if used…severely and unequally burdens the constitutional rights of Georgians."

**Coalition Response**

Responsive documents will be produced.

**Request 42**

Any and all documents that support your allegation in Paragraph 93 of the Complaint that the Dominion BMD system "will deprive Georgia voters of their state constitutional right to a secret ballot."

**Coalition Response**

Responsive documents will be produced.

**Request 43**

And all documents that refer to or reflect "the public statements by the Secretary of State's Office" referred to in Paragraph 96 of the Complaint.

**Coalition Response**

Coalition objects to this request because it is, in substance, an interrogatory. It does not define any document or set of documents.  It is also unreasonable, because the Secretary has all such documents.  Responsive documents exist, but will not be produced.

**Request 44**

Any all documents that support your allegation in paragraph 107 of the Complaint that "the design of the Dominion BMD system is inherently burdensome to voters."

**Coalition Response**

Responsive documents will be produced.

**Request 45**

Any and all documents that support your allegation in Paragraph 108 of the Complaint that "the design of the Dominion BMD system makes in- person voters less likely to cast an effective vote than absentee mail voters."

**Coalition Response**

Responsive documents will be produced.

**Request 46**

Any and all documents that support your allegation in Paragraph 110 of the Complaint that "because of the length and complexity of modern ballots, requiring voters to verify even a human readable text summary of the touchscreen choices is a severe burden on the right to vote that will cause in- person voters to be less likely to cast an effective vote than are mail absentee voters."

**Coalition Response**

Responsive documents will be produced.

**Request 47**

Any and all documents that support your allegation in Paragraph 111 of the Complaint that "many, if not most, in-person voters lack the memory and cognitive

skills to be able to verify that the printout produced by the Dominion   BMD system has completely and correctly recorded their touchscreen choices."

### Request 48

Any and all documents that support your allegation in Paragraph 117 of the Complaint that "many voters will skip trying to verify their ballots."

### Coalition Response

Responsive documents will be produced.

### Request 49

Any and all documents that support your allegation in Paragraph 131 that Professor Stark concludes that BMD-generated results are "meaningless."

### Coalition Response

Responsive documents will be produced.

### Request 50

Any and all documents that support your allegation in Paragraph 132 of the Complaint that "twenty four leading voting system experts, cyber security experts and election quality leaders not[ed] that a valid BMD audit is impossible."

### Coalition Response

Responsive documents will be produced.

### Request 51

Any and all documents that support your allegation in Paragraph 139 of the Complaint that "voters will be reluctant even to show pollworkers their ballot card to demonstrate inaccuracies because doing so will reveal their private ballot choices."

### Coalition Response

Responsive documents will be produced.

### Request 52

Any and all documents that support your allegation in Paragraph 145 of the Complaint that "the 'official' BMD votes of in-person voters will be excluded from any chance of being included in any precertification audits…"

### Coalition Response

Responsive documents will be produced.

### Request 53

Any and all documents that support your allegation in Paragraph 152 of the Complaint that "the 'certification testing' performed by Pro V&V for the Secretary could not have been qualification testing."

### Coalition Response

Responsive documents will be produced.

**Request 54**

Any and all documents that support your allegation in Paragraph 154 of the Complaint that "… the Certification Rule's requirement for qualification testing of the Dominion BMD system is not satisfied."

**Coalition Response**

Responsive documents will be produced.

**Request 55**

Any and all documents that support your allegation in Paragraph 158 of the Complaint that "… the certification testing that Pro V&V performed still does not meet the requirements for certification testing because Pro V&V did not examine whether the Dominion BMD system 'complies with the Georgia Election Code, the Rules of the Georgia State Election Board, and the Rules of the Secretary of State.'"

**Coalition Response**

Responsive documents will be produced.

**Request 56**

Any and all documents that support your allegation in Paragraph170 of the Complaint that "the Dominion BMD System has not, in fact, been properly tested as required by the State Election Board's own Certification Rule."

**Coalition Response**

Responsive documents will be produced.

**Request 57**

Any and all documents that reflect or refer to the "twenty vulnerabilities" in the Dominion BMD System allegedly identified at the DEFCON 27 trade convention as alleged in paragraph 173 of the Complaint.

**Coalition Responsive**

All responsive documents have been filed in the record of this case. No additional documents will be produced.

**Request 58**

Any and all documents that support your allegation in Paragraph 176 of the Complaint that "malware infected components of the DRE system can be transmitted to the new Dominion BMD System…"

**Coalition Response**

Responsive documents will be produced.

**Request 59**

Any and all documents that support your allegation in Paragraph178  of  the Complaint  that  "DRE's  system's  components  have  never  been examined for, much less cleansed of, any malware…"

**<u>Coalition Response</u>**

Coalition states that it is the absence of any document showing such examination that supports the allegation.  Responsive documents – that is, documents that show that no such examination occurred – if in Coalition's possession will be produced.

**<u>Request 60</u>**

Any and all documents that support your allegation in Paragraph 178 of the Complaint that the "State has taken no steps to correct or remedy the past exposure of its systems to hackers and adversaries."

**<u>Coalition Response</u>**

At this time,  Coalition does not have any documents responsive to this request.

**<u>Request 61</u>**

Any and all documents that support your allegation in Paragraph 180 of the Complaint that "GEMS database workers …transmitted sensitive database configuration files to CES over the internet …"

**<u>Coalition Response</u>**

Responsive documents will be produced.

## Request 62

Any and all documents that support your allegation in Paragraph 182 of the Complaint that "…the State has made no effort to address numerous system failures and irregularities that have marred the DRE System and rendered it insecure and unsafe to use in Georgia elections."

### Coalition Response

Coalition does not have in its possession any documents reflecting any State effort to address any major system failures and irregularities.  Documents supporting the fact that such failures and irregularities continue to exist will be produced.

## Request 63

Any and all documents that support your allegation in Paragraph184 of the Complaint that "the Secretary has not improved the computer security practices that he requires his staff, vendors and contractors to observe."

### Coalition Response

Coalition does not have in its possession any documents reflecting any such improvement.

## Request 64

Any and all documents that support your allegation in Paragraph 218 of the Complaint that the Coalition will be forced "to divert personnel, time and resources to educating its members and the voting public about how to protect their rights to case a secret ballot and equally effective vote."

**Coalition Response**

See response to Request 2.

This 23rd day of January, 2021.

/s/Bruce P. Brown
Bruce P. Brown
BRUCE P. BROWN LAW LLC
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
1123 Zonolite Road, Suite 6
Atlanta, GA 30306
(404) 881-0700
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2021, I served a copy of the foregoing upon counsel for the Defendants via electronic mail.

*/s/ Bruce P. Brown*
Bruce P. Brown



EXHIBIT
38