**Appendix B:**

**Fact Allegations in State Defendants' summary judgment brief directed at Curling Plaintiffs that do not appear in the Statement of Facts**

| Dkt. 1567-1 | Fact Allegations in State Defendants' MSJ as to Curling Plaintiffs |
|---|---|
| p. 7 | The Court subsequently entered a Consent Order on Storage of DREs on June 25, 2020, but that Consent Order had no bearing on the conclusive effect of the Secretary's GEMS/DRE decertification order. [no citation] |
| p. 15 | Citing the QR codes, Dr. Halderman's general opinion regarding BMDs is that they "face security risks that are worse than the risks they faced when voting on DREs." Doc. 1068 at 1–2. |
| p. 15 | But he completely dismisses the BMD's inclusion of human-readable text on the grounds that votes are initially tabulated using the QR code. Doc. 1068 at 2. |
| p. 16-17 | In January 2021, various supporters of then-President Donald Trump, including certain since-terminated county election officials, granted unauthorized accessed to Coffee County's election equipment. Doc. 1473. |
| p. 20-21 | Nor have they produced a single voter who has testified that their voter-registration information is incorrect, let alone that such an inaccuracy was caused by any actual breach of the old CES server. |
| p. 25 | Voters are not "required" to use the BMD system—they are completely free to vote absentee-by-mail, the method which they themselves agree is constitutionally sufficient. TAC ¶ 103, 124. |
| p. 27-28 | Curling Plaintiffs attempt to shore up their allegations by arguing that the BMDs create a "risk" of future harm due to their "vulnerabilities" that are "susceptible to manipulation." TAC ¶ 8. |
| p. 36 | In short, as demonstrated by the lack of any evidence showing the manipulation of Georgia's election system, Curling Plaintiffs "fears" about unauthorized access to Georgia's election systems are based upon nothing more than "speculation about actions or conduct of independent bad actors[.]" Doc. 1066-2 (Twelfth Cong. District Republican Cmte v. Raffensperger, Case No. 1:20-CV-180 (S.D. Ga. Dec. 17, 2020), Motions Hrg. Tr. at 6:14–24). |
| p. 36 | Curling Plaintiffs simply "see ghosts behind a door." Doc. 1066-2 (Twelfth Cong. District Republican Cmte v. Raffensperger, Case |

| Dkt. 1567-1 | Fact Allegations in State Defendants' MSJ as to Curling Plaintiffs |
|---|---|
|  | No. 1:20-CV-180 (S.D. Ga. Dec. 17, 2020), Motions Hrg. Tr. at 6:14–24). |
| p. 37 | Here, Plaintiffs' injuries are not traceable to State Defendants because the ultimate injury they fear—the inability to have their vote accurately counted—could only be traced either to illegal hacking by third parties; improper conduct by election officials; or voters' failures to verify their paper ballots—not the State's implementation of BMDs. |
| p. 38 | Specifically, the Curling Plaintiffs allege the BMD system violates their due process rights by unconstitutionally burdening their right to vote in three separate (potential) ways: it (1) is vulnerable to manipulation by third parties; (2) produces no verifiable paper trail; and (3) does not allow for a "meaningful audit." MTD Order at 8–13. |
| p. 42 | Voters have other options, most notably by voting absentee using hand-marked paper ballots, which the Curling Plaintiffs contend is a "verifiable, recountable [method], which can be counted, reviewed, and discrepancies corrected under the supervision of a court." TAC ¶¶ 103, 124. |
| p. 46 | Put simply, Plaintiffs' fears are just that: concerns that have never materialized. |