The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1                IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
2                        ATLANTA DIVISION

3

4    DONNA CURLING, ET AL.,            :
                                       :
5            PLAINTIFFS,               :
     vs.                               :   DOCKET NUMBER
6                                      :   1:17-CV-2989-AT
     BRAD RAFFENSPERGER, ET AL.,       :
7                                      :
             DEFENDANTS.               :
8

9


10       TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11          BEFORE THE HONORABLE AMY TOTENBERG

12          UNITED STATES DISTRICT SENIOR JUDGE

13                    JANUARY 13, 2023

14                       1:02 P.M.

15

16

17

18

19

20

21    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                 TRANSCRIPT PRODUCED BY:

23
     OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR
24                                   2394 UNITED STATES COURTHOUSE
                                     75 TED TURNER DRIVE, SOUTHWEST
25                                   ATLANTA, GEORGIA  30303
                                     (404) 215-1383
```

```
 1              A P P E A R A N C E S   O F   C O U N S E L

 2
    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
 3  SCHOENBERG:

 4
         DAVID D. CROSS
 5       MORRISON & FOERSTER, LLP

 6       ADAM SPARKS
         HALSEY KNAPP
 7       KREVOLIN & HORST

 8
    FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
 9  WILLIAM DIGGES, III, AND RICARDO DAVIS:

10
         BRUCE P. BROWN
11       BRUCE P. BROWN LAW

12       ROBERT A. McGUIRE III
         ROBERT McGUIRE LAW FIRM
13

14

15  FOR THE STATE OF GEORGIA DEFENDANTS:

16
         VINCENT RUSSO
17       CAREY A. MILLER
         JAVIER PICO PRATS
18       ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

19       BRYAN TYSON
         BRYAN JACOUTOT
20       TAYLOR ENGLISH DUMA

21

22  FOR THE CITY OF ATLANTA:

23
         DAVID LOWMAN
24

25
```

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; January 13, 2023.)**

COURTROOM DEPUTY CLERK:  Good afternoon, Judge.
Would you like me to call the case?

THE COURT:  Sure.  Thank you.

COURTROOM DEPUTY CLERK:  Okay.  Good afternoon,
everyone.

We're here for the teleconference in the case of
Curling v. Raffensperger, Civil Action Number 17-CV-2989.

Judge, for the state of Georgia, we have Mr. Russo,
Mr. Miller, Mr. Tyson, Mr. Jacoutot, and Mr. Pico Prats
present.

For Fulton County, we have Mr. Lowman.

For the Curling plaintiffs, we have Mr. Cross and
Mr. Knapp and Ms. Price.

And for the Coalition plaintiffs, we have Mr. Brown
and Mr. McGuire.

MR. SPARKS:  And Mr. Sparks as well on behalf of the
Curling plaintiffs.

MS. CURLING:  And Donna Curling also.

COURTROOM DEPUTY CLERK:  Yes, ma'am.  Thank you,
Ms. Curling.

THE COURT:  All right.  This is not going to take
very long.  I mean, I understand what the issues are and what
has been raised by the Curling plaintiffs about the large

1   volume of paragraphs -- alleged facts that are alleged to be

2   material and not in dispute.

3        I don't think there is an express requirement that

4   there is a -- that the -- even when I go back and look at my

5   own -- the source sentence that I have in my own version of the

6   local rule and my guidelines that every single paragraph has to

7   be referenced.  It is more that the source material has to be.

8   It is certainly the contemplation generally speaking that the

9   material facts -- facts be referenced in the brief so that --

10   that the brief is really in accord with the material facts and

11   that I could -- one could go back and forth and reference them.

12        And I'm sure typically that the material facts are

13   deemed to be a whole supplemental document in sort of like a

14   whole extra set of facts that are not actually discussed.  And

15   I think that -- but, you know, this -- none of this is

16   particularly I think in stone in terms of sort of the

17   particular territory that the Curling plaintiffs have explored.

18        I do understand that they view the large volume of

19   paragraphs that are not referenced as being sort of unnecessary

20   for them to have to deal with and a waste of time, et cetera.

21        But I think that the local rules expressly at

22   Page 61 -- and this is at -- where it is dealing with summary

23   judgment practice.  And Page 61 at (a)(2), the very bottom,

24   this Court will deem each of the movant's facts as admitted

25   unless the respondent -- and it goes through Number (i), (ii),

1    and (iii).  At Roman numeral (iii), it points -- this is sort

2    of -- unless the respondent points out that the movant's

3    citation does not support the fact or that the movant's fact is

4    not material or otherwise has failed to comply with the

5    provision set out in Local Rule 56.1(B)(1).

6              As I understand it at this juncture, what the -- what

7    really is happening is that it appears to me that Mr. Cross'

8    point is that it does not seem that the facts that are in these

9    paragraphs that aren't cited in the brief are actually

10   material.

11             And if that is, in fact, the position of plaintiffs

12   having reviewed them, then that is all you have to do in

13   responding.  If you think you're going to rely on them in some

14   way, then you may want to admit them because you do, in fact,

15   think they are material.

16             But for purposes of your response here, I mean, that

17   is -- this sort of seems to me an adequate resolution of the

18   problem that you're saying is before the Court.

19             And maybe you can explain to me why it is not.

20   But -- and I will give you that opportunity, Mr. Cross.  But I

21   don't understand why it is not.

22             MR. CROSS:  Thank you, Your Honor.  This is David

23   Cross.

24             It might be, if I understand what you are saying --

25   and that's why we wanted to have this call is to get clarity.

1   So as we read the local rule, our obligation is to show that we

2   dispute each fact that we, in fact, dispute and to provide

3   evidence showing that.

4           If the only thing that we were to say in response to

5   an individual statement in that statement of facts is we think

6   it is immaterial because it is not cited -- you know, rely on

7   it still -- they don't connect it to the arguments -- if that

8   is the only thing that we said, our fear was, as we read the

9   local rule, and Your Honor were to disagree and say, well,

10  okay, they didn't cite it, but I actually do think it is

11  material, that under the local rule that fact would be deemed

12  admitted by us because we did not offer evidence refuting it to

13  show why it is disputed and why we haven't disputed it.  That

14  is sort of where the rubber hits the road.

15          I mean, the team has spent inordinate hours already

16  this week just trying to get our hands around this.  And going

17  through 456 individual statements, I cannot -- there is no way

18  to exaggerate the amount of time and cost that is going to

19  take.

20          Let me just give you one quick example to explain

21  why.  So a lot of the statements in there, for example, are

22  just -- take Donna Curling.  They'll say, Donna Curling

23  testified to X.  Put aside that that is not a statement of

24  fact.  That is counsel's argument of what she said.  But --

25          THE COURT:  If she testified in a deposition, why is

```
1    that a statement -- why is that defense counsel's view of what
2    she said?
3              MR. CROSS:  I'm sorry.  Say that again, Judge.
4              THE COURT:  All right.  You know, if, in fact, the
5    statement of material fact repeats what she actually said, why
6    is that in dispute?  It may not be a complete rendition of what
7    she said, and you can say that.  But is there any reason -- I
8    mean, or do you feel like they are summarizing something she
9    said without it being in quotation marks?
10             MR. CROSS:  It is that, Your Honor.  What they do is
11   they list snippets.  Right?  They'll have a phrase from a
12   longer answer or longer colloquy.  And they characterize what
13   she said to say that she admitted something.  They do this to
14   Dr. Halderman.  They do this with lots of different witnesses
15   with plaintiffs.
16             What they represent as a fact that a witness
17   testified to X is not accurate.  In many instances, it is not
18   even remotely accurate.  And -- but to show that is not simple
19   with many of these situations because it is not as simple as,
20   well, let's pull the testimony, and we'll show the judge here
21   is the full testimony of what she actually said.  Here is the
22   colloquy.
23             You know, a lot of the questions and depositions are
24   nonlinear.  Right?  And so they will list something on Page 12
25   to say she admitted X, but then they came back to it on
```

1    Page 150 for her to clarify what she said before or correct

2    what she said before.  There is context there.  And that is not

3    there.

4            And that is an incredible undertaking to keep each

5    and every one of those excerpts because they never just quote

6    like here is her answer.  It is always a characterization or

7    nearly always a characterization.  And they go through all that

8    and point out, well, that is not quite right.

9            And then you get into harder things where, for

10   example, in the deposition --

11           THE COURT:  All right.  Let's just deal with this one

12   right now.

13           MR. CROSS:  I am.  But I just want to give you an

14   example.

15           THE COURT:  Right.  I just want to deal with example

16   one.  All right?

17           So example one -- and you're telling me that they

18   do -- that this is how defense counsel has characterized the

19   response and presented it and also that it is not cited in the

20   brief.

21           MR. CROSS:  Correct.

22           THE COURT:  That is the larger -- that is what you

23   have written me about is that they are not relying on it in the

24   brief.  But --

25           MR. CROSS:  Exactly.

```
1          THE COURT:  But they have this.  I still don't
2    understand why -- under these circumstances why if you don't
3    think it is, in fact, the -- and you think it is, in fact,
4    something that might be material, then you are obviously -- if
5    it is arguably material, I would obviously -- I would think you
6    would have to respond to it.  Because it is going to -- it
7    could come up in your brief.  It could come up in their --
8    later on in their reply brief.  Because any of that is
9    possible.
10         But if it is just absolutely not -- you don't think
11   it is material -- and you can always assert a materiality
12   objection if it is made in good faith and based on your
13   professional judgment and then still additionally respond to
14   something saying you think it is misleading and that she
15   responds in an additional manner and it is not -- it is out of
16   context.
17         I mean, that is -- you know, that is perfectly
18   acceptable without citing every single other time she's talking
19   about the same issues.
20         MR. CROSS:  Right, Your Honor.  It wouldn't be citing
21   every other time.  But it would be showing how what they have
22   stated as a fact is not accurate.
23         And I mean, our hope when we reached out to
24   defendants was that they would agree that if their
25   statements -- if their allegations or exhibits that they don't
```

1  rely on in their brief -- that they would just agree that those

2  are not material because if you're not relying on them or at

3  least most of them.  But they have been unwilling to agree to

4  that.

5        And so where that puts us is if all we say is:  We

6  don't think this is material because they don't rely on it and

7  we don't see any materiality, they are going to come back, I

8  expect -- right? -- and said, well, now you have admitted it

9  because you haven't refuted it.  And then we could be in bad

10  shape.

11        But's there 227 allegations that don't appear in any

12  of the briefs.  They cite five exhibits across both of their

13  briefs, Your Honor.  They literally cite five exhibits in the

14  briefs, which tells you about how these are not Rule 56

15  motions.  But just put that to the side.

16        THE COURT:  All right.  Let me hear from the defense

17  about this last -- what you just said.  All right?  And then we

18  will go on after that.

19        Why do we have 227 -- why do we have 227 statements

20  that are not actually relied upon?  Or not that many.  But a

21  substantial number.

22        MR. TYSON:  Yes, Your Honor.  This is Bryan Tyson.

23  I'll start.  And if Mr. Russo or Mr. Miller want to jump in,

24  they are welcome to.

25        I think that, Number 1, we obviously were filing one

1   statement of undisputed material facts with the two briefs.

2   And so I mean, there is going to be a little bit of -- I

3   understand there is going to be some things that in the editing

4   process they ended up in there.  I haven't independently

5   calculated or counted whether it is as many as 200-something.

6           But I think that what Your Honor had said is exactly

7   how you would deal with that.  I mean, I just think back to

8   Fair Fight.  We had over 1000 statements of additional material

9   facts and doing summary judgment on those with the plaintiff in

10  that case and we had to respond to each one.  And the issue is

11  is it material or not.  You make that statement.  If we're not

12  relying on it in a brief, I think Mr. Cross would have a decent

13  argument to say it is not material.  And he can make that.  And

14  then we kind of go from there.

15          But I guess I'm a little bit at a loss here.  I feel

16  like we are almost kind of pre-arguing the motion when in

17  reality it is just follow the local rules is the way to deal

18  with this, if that is the concern, based on the materials, the

19  cites to support the statement.  I mean, that is what we do

20  when we file summary judgment motions.

21          THE COURT:  Well -- okay.  Is there something else

22  you want to say, Mr. Cross, in response?

23          MR. CROSS:  I guess I would just put the same

24  compromise that we had offered the defendants before, which

25  sounds like maybe what Bryan is saying.  If the defendants will

1   agree that they are not going to argue that we have admitted an

2   allegation that appears only in their statement of undisputed

3   facts by responding simply that it is immaterial so we're at no

4   risk of that -- they are not going to argue that and the Court

5   is not going to deem it admitted -- then this gets easy.

6   Because that will be our response to all of those allegations

7   unless we determine they are material for some reason, like we

8   relied on them.

9         That was the compromise we had hoped would avoid

10  getting in a court of law.  If we are agreed on that, then this

11  is easy.  But if they are going to reserve the right to come

12  back on reply and say, well, out of these 227 -- and it is 227.

13  We have been carefully through this.  It is Appendix A we sent

14  to the Court -- and they are going to come back and say, well,

15  50 of these or a hundred of these -- you have now admitted them

16  because all you said was they are immaterial and now we're

17  going to rely on them, well, that is a problem.  Because that

18  means we now have to go through and refute 227.  And that is

19  what we're trying to avoid.

20        Again, I have never confronted this in my entire

21  career.  I have seen lots of statements of fact.  I have never

22  seen one -- a handful have slipped through the cracks.  And if

23  that is what we are talking about, we wouldn't be on the phone

24  with you.  If it was 20 or 50 -- it is half of 456.  This is

25  not small.

1          And it really is an enormous amount of work that the

2    team is going to have to do, Your Honor.  It is an enormous

3    amount of work.

4          MR. BROWN:  Your Honor, this is Bruce Brown.  The

5    Coalition plaintiffs have joined in the Curling submission.

6          To underscore the point that David has been making,

7    there are pages and pages of assertions of undisputed facts

8    relating to Dr. Stark, for example, and the auditing.  None of

9    them are cited in either brief -- in either brief.  In fact,

10   the word Stark does not even appear in either brief.

11         Yet for us to respond to those, we need to get with

12   Dr. Stark, who is not cheap.  I mean, he's very generous with

13   his time.  But it is an enormous amount of time to go through

14   pages and pages of assertions that didn't even make it into

15   their brief.

16         I don't know how you can write a brief in this case

17   without using the word Stark.  But that is a different issue.

18   But it is just a burden that they put together this statement

19   of material fact without thinking about what they were doing.

20   The same with the exhibits.

21         And we are the ones and the Court is going to be

22   faced with dealing with them not thinking through what they

23   really needed to support their motion for summary judgment.

24         I mean, we will point this out later.  But at a

25   deeper level, the motions are really 12(b)(6) motions.  They do

1    not identify a single -- single allegation in our -- in either

2    complaint that is refuted by their assertion of facts.  Not a

3    single allegation.  But that whole thing --

4            THE COURT:  All right.  Now you're arguing the

5    motion.  So --

6            MR. CROSS:  Your Honor, this is David Cross.  If I

7    could, just to clarify one point.  Mr. Tyson said that they had

8    a single statement of facts for both briefs.  I do want to be

9    clear.  The 227 -- those are statements that do not appear in

10   either brief.  It is not just Curling.  It is in either brief.

11   They do not appear in any brief that has been submitted to this

12   Court on summary judgment.

13           And the same with the exhibits.  They have dozens of

14   exhibits.  They literally cite five.  They don't cite a single

15   exhibit in the Coalition brief.  They cite five.

16           I can't begin to understand how you can file a

17   Rule 56 motion that says the facts don't support your claims

18   and you rely on five exhibits and one another.

19           What that means is they have really just done what

20   the Court has said and what we cited you're not allowed to do

21   is to end run around the page limit and say, well, go look at

22   our statement of undisputed facts and then figure out for

23   yourself, Judge and plaintiffs, how that somehow factors into

24   our arguments and how the exhibits and the allegations there

25   somehow support our arguments.

1          The courts have said that is wrong, we're going to

2     disregard all of that.  So, again, the compromise on the table

3     is:  If we all agree that we don't have to address any exhibit

4     in any allegation that is not cited in the brief because we all

5     agree those are immaterial, then this is easy, we're done.

6          But if they are going to come back and reply and say,

7     no, no, no, you have admitted all these things by not refuting

8     and then now here's our new argument -- brand-new argument and

9     all of these exhibits and how they support our claims and these

10    allegations, well, that is a problem.

11         The Courts have said we can't do that.  So this is --

12    I feel bad we're bothering you, Judge.  But I just cannot drive

13    home the amount of work this is going to be.  I mean, I have

14    got a team of associates that work really hard.  And they are

15    in panic mode because just this week they have only scratched

16    the surface of this.  It is an incredible, incredible list to

17    get through --

18         THE COURT:  Okay.  I view it a little bit

19    differently.  I don't know why we have as many as we do that --

20    why the state included such a large volume without even

21    referencing them in the briefs.  And that is something, you

22    know, I will think about as I read the briefs.

23         But I just want to remind everyone exactly that the

24    point of summary judgment is, in fact, to help streamline the

25    presentation of the case for the Court's review.  And I'm not

1    looking for more work in this case than necessary.  I want it

2    to be presented in a streamlined way.  And I am not intending

3    to look at the statement of material facts as simply an entire

4    expansion of a brief that should have summarized the evidence

5    that they are relying on.

6            So I don't know what is going on with that.  I have

7    not read the brief.  We did look at -- the two law clerks

8    involved in the case have looked at the samples and the things

9    that have been left off.

10           I think you are entitled if there is that volume of

11   them to respond that you think something is not material and/or

12   inconsistent with the testimony.

13           And I am not inclined under these circumstances to

14   be -- look favorably on basically a motion to say that they are

15   deemed admitted.  But on the other hand, I think both of you

16   know what the evidence is in this case.

17           I am not looking for somebody to go and cite all of

18   the other different pages where there is only one excerpt that

19   has been cited of somebody's testimony, like Ms. Curling.  That

20   doesn't make any sense.

21           And if you think it is not material, that is the

22   first layer.  If you think it might be material -- in reality

23   material but it is not a fair representation of the facts, then

24   that is what you -- as presented in the -- in her deposition

25   and elsewhere, that is what you state.  You don't have to go

1    and cite every other fact to the contrary.

2         I think that we have been in litigation enough that I

3    feel comfortable saying that.  And then when you provide your

4    material -- statement of material facts in opposition, you can

5    state -- if you think it is indeed material, then state the

6    corrected version.

7         MR. CROSS:  Thank you, Your Honor.  That may seem

8    obvious or small.  But I will tell you that is incredibly

9    helpful to us just to get comfort that we're not at risk of

10   having things deemed admitted if our response is they are

11   immaterial.

12        THE COURT:  But I just would say I think you have to

13   actually look at them.  You-all know the case inside out.  So

14   if it is material but you just -- it wasn't mentioned in their

15   brief, then I think you likely are going to have to answer it.

16   But it may be the answer is it is that it is not consistent

17   with the rest of the deposition.  That it is whatever -- it is

18   inaccurate.  And then you either put it there or put it in your

19   contrary position of what -- and you just reference what you do

20   say in your statement of material facts.

21        MR. CROSS:  Absolutely.  We will do that, Your Honor,

22   and that is really helpful.

23        Could I ask while we are here:  Bryan, would you guys

24   be willing to take another look at your list of statement of

25   facts and exhibits and if there are some that you are willing

```
 1    to either withdraw or acknowledge that they are immaterial just
 2    send us a list of the numbers on maybe Monday or Tuesday.
 3              MR. TYSON:  I mean --
 4              THE COURT:  Well, Monday is MLK Day.  No one --
 5              MR. CROSS:  Tuesday or Wednesday.  If you would just
 6    take a look and just let us know if there are any.
 7              MR. TYSON:  I mean, David, I don't expect we are
 8    going to change our view of any of that.  We can look at it.
 9    But just don't expect that we're going to.
10              MR. CROSS:  Okay.
11                    (Unintelligible cross-talk)
12              MR. CROSS:  I'm sorry.  Go ahead.
13              THE COURT:  I'm sorry.  Who is talking now?
14              MR. CROSS:  This is David Cross.
15              THE COURT:  Okay.
16              MR. CROSS:  One other procedure question.  I think I
17    know the answer to this from the rules.
18              But for exhibits that we have admissibility
19    objections, as I understand the rules, we just put that into
20    our brief or in our response to the statement of facts?  You're
21    not looking for a separate motion to strike?
22              THE COURT:  No.  No.
23              MR. CROSS:  Okay.  Thank you.
24              THE COURT:  I mean, you don't -- you could put it in
25    one paragraph -- the ones that you think are not admissible.
```

1    But just remember that when -- which I'm sure you do well know

2    that even if -- if it is potentially admissible with other

3    evidence or -- you know, this is particular statements made,

4    even if it is hearsay -- what you've got is hearsay but there's

5    potential -- but it can be made admissible, that is a whole

6    different thing.

7              MR. CROSS:  Right.  Right.  Understood, Your Honor.

8              THE COURT:  There was another item you wanted to

9    raise.  But I can't remember it at the moment.

10             MR. CROSS:  That was the focus.  I mean, the more

11   macro task we had -- and I gather from where we're headed with

12   this I know the answer.  But we were asking whether Your Honor

13   would be open to deferring the motions till trial as we had

14   asked originally.

15             THE COURT:  No.  Yes.  You inferred correctly.  So I

16   have sort of put it outside of my brain.

17             MR. CROSS:  I saw the train was headed in that

18   direction, so I wasn't even going to address it.

19             THE COURT:  Yeah.  You know -- and I guess

20   Ms. Bradley and I in particular can say that we just had to put

21   off a trial for six months, after having denied summary

22   judgment, if it were to go trial that was just such a train

23   wreck.  That has taken so much time to basically deal with and

24   now for us to have to say basically go do this, go do that -- I

25   mean, it is still -- and I had to revisit my order and grant

1    summary judgment on some things.  And then we had evidentiary

2    messes.  And it is just sort of -- no, I don't think so.

3           And, you know, I don't -- and this is a hard area to

4    say the least of the law.  So I think even though I respect

5    your view of the things, I think that it is like per se at this

6    moment asking for the state to go and -- go to the Eleventh

7    Circuit and initiate an interlocutory appeal.  And that only

8    results in more time being spent.

9           And, you know, they certainly can do that.  And, you

10   know, maybe the Eleventh Circuit wouldn't grant their

11   interlocutory appeal, but maybe they would.  So then that is a

12   whole other level of briefing and uncertainty and delay.  So it

13   doesn't make any sense to me.

14           MR. CROSS:  Okay.  Yes.

15           THE COURT:  I have two great overburdened law clerks

16   who are familiar with the case.  And I am determined to get

17   this -- have this team and not a different team working on the

18   motions for summary judgment.  And that is the way I can be

19   most efficient.

20           If I delay it further, then, you know, a whole new

21   group of people have to become familiar with the case.  And

22   that is just too much weight on me.

23           MR. CROSS:  Thank you, Your Honor.

24           MR. BROWN:  Thank you, Your Honor.  I appreciate the

25   time today.

```
1              THE COURT:  All right.  Well, I hope everyone is
2    well.  I wish everyone a good New Year.
3              And how is the -- how are the newest babies in the --
4    who have been born in this group?
5              MR. MILLER:  Judge, this is Mr. Miller.  My son is
6    doing well.  He is a lot of fun and thankfully sleeping well.
7    So we're doing well.
8              THE COURT:  Good.  How old is he now?  How many
9    months?
10             MR. MILLER:  He's a little over eight months now --
11   be nine months on the 30th.
12             THE COURT:  I can't believe it.  That is fast.  Well,
13   you're at a happy point -- a really happy point.  You have
14   broken him in, and he is smiling and moving and entertaining
15   you.  That's great.
16             MR. MILLER:  Yes, he is a lot of fun.
17             MR. TYSON:  Judge, this is Bryan Tyson.  We also have
18   another new baby that joined is.  Mr. Jacoutot, I think, is on
19   the line.
20             He has a two-week-old now, Bryan?
21             MR. JACOUTOT:  Yes.  She is two weeks old today.
22   We're still getting that sleep schedule arranged.
23             MR. MILLER:  Congratulations.
24             THE COURT:  That is marvelous.  Mr. Tyson has an
25   incredible crew of kids.  So I don't know how he handles all of
```

1    his responsibilities.

2              But how are they doing?

3              MR. TYSON:  They are all doing well, Your Honor.

4    Thank you for asking.  Yeah, we have got them all -- they are

5    all in the same school, the same place now.  And that helps us

6    out a lot on our family schedule having them all in the same

7    place each day.

8              THE COURT:  Well, that's great.

9              MR. CROSS:  Judge, we had a new baby when we started

10   this case.

11             THE COURT:  Wow.  And has the baby graduated yet?

12             MR. CROSS:  I think she's voting soon.

13             THE COURT:  Voting soon.  So how old is she now?

14             MR. CROSS:  She's eight.  She's eight.

15             THE COURT:  Unbelievable.  Unbelievable.

16             And did that big trial of yours ever happen?  Did it

17   resolve, or what happened?

18             MR. CROSS:  No.  It got pushed to May unfortunately.

19   We ran into a conflict with a criminal.  So it is still on.

20             Thank you for asking.

21             THE COURT:  Well, if there are any other exciting

22   developments in people's lives, speak now or forever hold your

23   peace and I'll ask more.

24             But I hope everyone -- I hope everyone is well and

25   you did get some days of the holiday.

1          I had 21 members of my family who we were housing in

2   three houses when we went off on vacation at Christmastime.

3   That was very exciting.  But it was pretty wonderful too.  With

4   the youngest being 15 months and keeping us up, even though she

5   sleeps at home perfectly fine.  But she had an intense case of

6   fear of missing out.  So she was having such a good time that

7   she decided that at 4:30 and 5:00 A.M. that people might be up

8   and be happy to be entertained by her.  But they weren't.

9          MR. CROSS:  Sure.

10         THE COURT:  But her father and her mother had to be

11  up or one or the other and go to the beach with her after she

12  had woken everyone else up.

13         But, anyway -- but she was great.  And it was a very

14  good time, and it was a wonderful thing to be able to have

15  everyone present.

16         Well, be well, everybody, with MLK Day, and hopefully

17  this will move us more comfortably towards the next stage.

18         All right.  Take care.

19         MR. CROSS:  Thank you.

20         MR. MILLER:  Thank you, Your Honor.

21              **(The proceedings were thereby concluded at 1:32**

22              **PM.)**

23

24

25

1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    23 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   13th day of January, 2023.

14

15

16

17                    _____
                      SHANNON R. WELCH, RMR, CRR
18                    OFFICIAL COURT REPORTER
                      UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25