IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, et al.**<br><br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, et al.**<br><br>Defendants. | CIVIL ACTION FILE<br>NO.: 1:17-cv-2989-AT |

# DECLARATION OF MARILYN MARKS

**MARILYN MARKS** hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2. I am the Executive Director of Plaintiff Coalition for Good Governance ("CGG").

3. The volunteer work of CGG members, in the polling place, tabulation, and audit observations, collection of documents, and litigation research work is generally done under my direction and supervision.

4. I am in conversation multiple times a day with a core group of our very active members, who spend scores of hours each week working on

1

CGG projects. Much of the activity described in this declaration is such member volunteer work.

5.      Mr. Brian Blosser was a member of CGG at the time of the filing of the Third Amended Complaint. I have not spoken with Mr. Blosser in the last two to three years. When I last talked with him, he told me that he was quite pleased that his unfortunate experience of being disenfranchised helped create evidence of electronic pollbook issues that need to be resolved in Georgia. CGG still considers him to be a member.

**Ballot Secrecy**

6.      Members of CGG have spent hundreds of volunteer hours observing the Georgia's current voting system in operation since it was deployed in 2019. Their observations span across numerous counties. I have personally observed polling place operations in at least twelve Georgia counties since the BMD system was deployed.

7.      CGG and CGG members have raised our concerns about the violations of Gerogia's ballot secrecy laws and violations of voters expectations of having an anonymous ballot since the system was deployed in 2019. We have raised our concerns in many venues, to many decision makers. This includes the Secretary of State, the State Election Board, Fulton County Board of Elections and many other county boards of

elections. We have raised our concerns with lawmakers as well, proposing legislation to remedy the flawed voting system and the ballot secrecy violations.

8. In general, despite these scores of hours of CGG communications with officials on this topic, including written complaints and suggestions for mitigation, we have seen no meaningful efforts to mitigate the ongoing violations.

9. Fulton County Board of Elections Chair Cathy Woolard said to me on during my observation of the November 8, 2022 election that the touch screens were a "real problem" in protecting voter privacy.

10. Attached as Exhibit 1 is a true and correct copy of July 28, 2020 emails between Richard Barron and Fulton County Board members, produced by the State Defendants in discovery.

11. I have observed hundreds of voters vote on touchscreens across the state and the vote selections on those voters' touchscreen were visible to me (and others in the polling place) from at least 30 feet away.

12. CGG members, including poll watchers, have reported violations of ballot secrecy because of the touchscreens over the 3 years the system has been in place. The examples of ballot secrecy failures of the type

detailed at Dkt. 809-1 at 20 continue to go unresolved, based on CGG's members' observations and my personal observations.

13. I have reviewed the transcripts of the State Election Board meetings since 2019 or heard every meeting audio live or recorded. The State Election Board has not taken action on the ballot secrecy issue, or discussed the issue, despite the number of complaints it has received.

14. Exhibit 2 is a true and correct copy of an email dated June 2, 2020 that I received from Richmond County Elections denying CGG's request for the public records of video security footage of a polling place where BMDs were installed. The stated reason for denial was the fact that the cameras are "set up in such a manner where the ballots of voters can clearly be seen, which would be an invasion of the personal privacy."

15. Exhibit 3 is a true and correct copy of an e-mail dated September 28, 2022 that I received from the attorney representing Coffee County election office designating as attorneys eyes only a video recording of the early voting site for the January 2021 U.S. Senate runoff election. She states that the reason for the designation is the "camera angle" that included "election activities."

16. I have reviewed short segments of the Coffee County video referenced above and observed that I could see the position on the BMD

4

screen that voters selected while voting. The video record is clear and individuals are easily recognizable.

17. The Coffee County video also includes the scanner activity and the timestamped sequence of each voter casting their ballot.

18. Exhibit 4 is a true and correct copy of a December 7, 2022 email response to CGG's public records request for video from Coffee County for the December 2022 U.S. Senate runoff. Coffee County Board of Elections denied the request on the basis of the video capture of votes on the touchscreens.

19. Exhibit 5 is it true and correct copy of an e-mail I received from Coffee County on January 26, 2023 in response to CGG's public records request for any guidance received from the Secretary of State's office concerning ballot secrecy and touch screen machines since March 1, 2020. The local election official answered that no guidance had been received.

20. CGG obtained through a public records request the video security recordings of early voting in October 2021 at the Ponce de Leon Library and the New Beginnings Senior Center. I have viewed segments of the footage that includes time and date stamps. I can clearly see the chronological order of voters as they cast their ballots into the scanners. The

voters are in clear view and would be easily recognizable by people who know them.

21. I was a poll watcher on November 8, 2022 and observed voting activities at the Ponce de Leon library at approximately 5:45 p.m. I was able to see the choices that voters were making on their touchscreen machines from the location where poll watchers were asked to observe. I could also take note of the sequence of the voters and the public scanner counter number.

22. As I left the polling place at approximately 6 p.m., and walked to my car, from the sidewalk I could see into the well-lighted voting room and could see the touchscreen selections that voters were making on the machines turned toward the windows.

23. CGG's poll observation activities were reduced in 2022 after the passage of SB202, which made the observation of a voters' touchscreen selections a felony. The threat of the allegation of a felony has made it more difficult for CGG to recruit observers. This is particularly true given the State Election Board's continuing efforts to initiate investigations of me and other CGG members that appear to be retaliatory in nature.

24. Exhibit 6 is a true and correct copy of an October 17, 2022 letter from CGG to all Georgia counties election offices and officials for

whom we have an e-mail address alerting them to Dr. Halderman's findings concerning the assignment of predictable ballot image numbers to the cast vote records and ballot images, which can result in connecting the voter to their ballot in some cases.

**Diversion of Resources**

25. I supervised CGG member Paschal McKibben's work since September 2022 in reviewing Coffee County video security recordings from 3 cameras for the period of mid-November 2020 to February 26, 2021. Mr. McKibben reviewed weeks of video records to document the details of the unauthorized access to the Coffee County voting system. His work included the creation of time logs, still shots, and short video clips, and was used in preparation of Coffee County related depositions and discovery activities. His work on this project to date has involved approximately 177 hours.

26. The hours that Mr. McKibben has spent on the Coffee County video were hours taken away his ability to undertake video creation and editing projects he has volunteered to do for CGG. He has volunteered to help create training and educational videos, but because of our efforts to challenge the BMD voting system, he is unable to engage in those activities and our team is unable to organize such efforts. Those efforts would include educational videos on our Accurate Count Project with Scrutineers, and our

7

desired Ranked Choice Voting educational efforts, advising municipal officials on conducting their own elections, among other topics.

27. Additionally, Mr. McKibben has been a poll observer for CGG, but was unable to serve except in a limited capacity during the 2022 general election and runoff because of the priority and time urgency of the Coffee County video project.

28. Mr. McKibben volunteered to participate as a CGG monitor in our joint Scrutineers "Accurate Count" project to create an audit trail of Election Night Reporting results. However, I asked him to prioritize the Coffee County video review instead, so we did not get his help with the Accurate Count project.

29. Because of the resources that CGG was using to challenge the BMDs, CGG had to deny a request in late 2022 from the non-profit Transparent Election NC to assist in their legal challenge concerning public observation of Wake County, North Carolina election processes.

30. I have been unable to help with the collection of evidence or even provide CGG's own experiences to support the legal challenge in North Carolina. The demands of the Georgia Voting System challenge have prevented CGG from devoting meaningful resources to support the effort to

obtain more transparent elections in North Carolina, consistent with our mission.

31. In at least the past three years, prior to the Georgia General Assembly's legislative session, CGG prepared outlines or drafts of potential legislation for bills that promote more transparency in government, including Open Records legislation and election oversight legislation. We also met with key lawmakers about such legislation. The demands of challenging the BMD system have curtailed most legislative lobbying activity for CGG projects.

32. I previously attended Mecklenberg County, North Carolina County Election Board meetings and provided CGG input on various election administrative proposals during the public comment time and followed up with emails to the board members. In the last two years, because of the demands challenging the BMD system, I have been unable to participate in these activities.

33. Because of the demands of CGG's challenge to the Georgia Voting System, I have been unable to attend North Carolina State Board of Elections meetings in the last two years. I used to travel to Raleigh to attend and participate in such meetings on behalf of CGG and meet with other election security and voting rights groups for collaborative efforts. Those

activities have been curtailed in the last two years because of the time demands of Georgia Voting System challenge.

34. Because of the demands of this litigation, other North Carolina-based CGG members and I have been unable to schedule meetings with North Carolina legislators as we did in prior years to advise on election security legislation under consideration.

35. The types of activities described in my declaration of February 12, 2021 (Doc. 1071-2 ¶10) continue to be activities CGG resources have been diverted from in order to challenge the conduct of the Defendants with respect to the use of the BMD system.

**Election Activities**

36. On November 8, 2022, I observed the processing of absentee mail ballots at the Fulton election preparation center. I observed hand marked ballots that had been damaged or were otherwise unreadable by the scanner being converted into BMD QR code ballots by two person teams.

37. The election workers told me that such ballots are often damaged by the ballot envelope slitter machinery if it is not functioning properly.

38.     I have obtained slog.txt files created by the Dominion ballot scanners as public records in Georgia within the last year.  These are the log file records that Dr. Halderman refers to in his DVS Order research.

39.     CGG obtained through public records requests and discovery the ballot images from various counties for the November 2020 election. The analysis that CCG volunteers conducted found numerous examples of light marks and marginal marks with clear voter intent as votes on absentee mail ballots and found numerous cases of such voter markings not counted by the system.

40.     Exhibit 7 is a small set of examples of light marks not counted by the scanner.  Some of these were not adjudicated, causing the vote not to be counted.

41.      In February 2021, I received a short video recording from Ed Voyles, former Chairman of the Coffee County Board of Elections. It purports to be a Netflix video segment playing on a Coffee County PollPad. Mr. Voyles told me that Misty Hampton, Election Supervisor at that time, had made the recording and had given it to him.  This is a link to the video that Mr. Voyles sent me:

https://coaltionforgoodgovernance.sharefile.com/d-s75f853359bfa495ca3198eb63c71f146

42. Exhibit 8 is a true and correct copy of an email I received on December 2, 2022, from Coffee County in response to an open records request, in which I had asked for information on updating paper backup pollbooks for the U.S. Senate runoff.

43. Exhibit 9 is a true and correct copy of a September 10, 2020, email from Rick Barron, Fulton County Election Director, to Gabe Sterling and others regarding concerns about PollPad reliability.  Exhibit 8 was produced in discovery.

This 10th day of February,

_____
Marilyn R. Marks