IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

**COALITION PLAINTIFFS' SUPPLEMENTAL STATEMENT OF
ADDITIONAL FACTS SUBMITTED IN RESPONSE TO MOTIONS FOR
<u>SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1(B)(2)(b), in addition to the Plaintiffs' Joint Statement of Additional Facts, the Coalition Plaintiffs submit the following additional facts which preclude the granting of Defendants' Motions for Summary Judgment.

1. Multiple Coalition Plaintiffs and CGG members have personal and professional reasons for wanting their vote selection to be private. Dkt 1593 Decl.

1

Dufort ¶14-21; Doc. 1592 Decl. Forney ¶8-14; Doc. 1597 Decl. Nakamura ¶9-13, 22.

    2.     Multiple CGG members fear being accused of attempting to see another voter's touchscreen voting selections, which is a felony under SB202, O.C.G.A. §21-2-568.1. Doc. 1596 Decl. Throop ¶25; Doc. 1597 Decl. Nakamura ¶ 43.

    3.     BMD touchscreen notifications to the voter of races that they have not voted on (in error or on purpose) are displayed on the screen in a manner visible to the public. Doc. 1596 Decl. Throop ¶ 33; Doc. 1594 Decl. Martin ¶ 8; Doc. 1595 Decl. Missett ¶ 19.

    4.     Multiple CGG members and Plaintiff Missett are unable to memorize the ballot content of a long ballot for purposes of verification. Doc. 1595 Decl. Missett ¶16-17; Doc. 1597 Decl. Nakamura ¶48-51; Doc. 1596 Decl. Throop ¶39-40; Doc. 1594 Decl. Martin ¶10; Doc. 1592 Decl. Forney ¶ 20-21; Doc. 1593 Decl. Dufort ¶33; Doc. 680-1 Decl. Nakamura ¶39-40.

    5.     Multiple CGG members have concerns that they cannot read the QR code when voting on a BMD. Doc. 1592 Decl. Forney ¶23; Doc. 1595 Decl. Missett ¶21; Doc. 1596 Decl. Throop ¶32; Doc. 1593 Decl. Dufort ¶13; Doc. 723 at 41 Decl. Nakamura ¶12; Doc.1617 Decl. Wasson ¶19.

6. Chris Harvey, former State Election Director stated in state vote education video that "the voter will be charged with reviewing and confirming ballot choices," indicating the mandatory ballot confirmation required of the voter. https://www.youtube.com/watch?v=3QXV7scwQhA (timestamp 2:10).

7. Multiple CG members fear voting on Election Day when poll pads would be used to check in voters, given the history of electronic pollbook problems. Doc. 1597 Decl. Nakamura ¶ 58-67; Doc. 1594 Decl. Martin ¶13; Doc.1593 Decl. Dufort ¶ 35-36; Doc. 1071-3 Dufort ¶ 11; Doc. 1071-5 Decl. Nakamura ¶27.

8. Multiple CGG members fear loss of ballot secrecy when their votes are exposed by touchscreen displays. Doc. 1596 Decl. Throop 26-27; Doc. 1597 Decl. Nakamura ¶¶ 9-13, 22; Doc. 1594 Decl. Martin ¶11; Doc. 1592 Decl. Forney ¶8-13, 19, 25; Doc. 1595 Decl. Missett ¶ 18-19; Doc. 1593 Decl. Dufort ¶14-22; Doc. 723 Decl. Shea Roberts ¶ 9-12; Doc. 723 Decl. Lucia Gambino ¶7-8.

9. Multiple CGG members are uncomfortable casting a BMD ballot with votes that are not considered to be official votes, given that the printed text is legally required to be counted. Doc. 1956 Decl. Throop ¶32, 41; Doc.1592 Decl. Forney ¶ 23; Doc. 1595 Decl. Missett ¶ 21; Doc. 723 at 38 Decl. Nakamura ¶12; Doc. 1595 Decl. Missett ¶21; Doc. 1617 Decl. Wasson ¶19.

10. Multiple CG members and plaintiffs have experienced the burden of attempting to obtain a timely mail ballot because of delayed issuance and receipt and the resulting need to monitor the process. Doc. 1597 Decl. Nakamura ¶80-81, 83-85; Doc. 1596 Decl. Throop ¶34; Doc. 1617 Decl. Wasson ¶8-11; 7-14; 22; Doc. 1593 Decl. Dufort ¶29, 32; Doc. 1592 Decl. Forney ¶24; Doc. 1595 Decl. Missett ¶8-12.

11. Multiple CG members and plaintiffs intend to vote by mail ballot in order to avoid the risk of voting in person on the BMD system. Doc. 1591 Davis Decl. ¶ 9; Doc.1593 Decl. Dufort ¶ 7, 13, 22,28, 35-36); Doc. 1597 Decl. Nakamura ¶ 8, 46, 54, 58, 65-66) Doc. 1617 Wasson ¶ 7,10,15; Doc.1595 Decl. Martin ¶11,13.

12. Multiple Coalition Plaintiffs and CGG members wish to vote in person either in early voting or Election Day voting in upcoming Georgia elections. Doc.1597 Decl. Nakamura ¶ 6-8; Doc. 1592 Decl. Forney ¶7, 27; Doc. 1593 Decl. Dufort ¶22–23; Doc. 1595 Missett Decl. ¶ 6-7, 13; Doc. 1591 Davis ¶7-8; Doc. 1617 Decl. Wasson ¶15.

13. Voter Travis Edwards was turned away from voting in Fulton County on November 8, 2022, because the PollPad inaccurately stated that he was a Gwinnett County resident. Doc. 1597 Decl. Nakamura ¶ 62-64.

14. Mail ballots, which are hand marked paper ballots, are frequently damaged by the mail ballot envelope slitter and must be duplicated to be readable by the scanner. Some counties are duplicating such ballots onto a BMD rather than hand duplicating them onto similar hand marked paper ballots. Doc. 1593 Decl. Dufort 8-13; Doc.1618 Decl. Marks Decl. ¶36-37.

15. The ballot content for some elections exceeds forty contests or questions. Doc. 1595 Decl. Missett ¶ 16; Doc. 1594 Martin ¶ 10; 1597 Decl. Nakamura ¶ 50-51; Doc. 1596 Decl. Throop ¶ 39; Doc. 1592 Decl. Forney ¶20.

16. On Election Day November 6, 2018, poll watcher and CGG member Elizabeth Throop interviewed numerous voters who were turned away from the polls in Fairburn, Georgia, including a voter who had driven from Oxford to Fairburn because he was mistakenly assigned to Fairburn in the electronic poll book. Doc. 1596 Decl. Throop ¶ 42.

17. Election managers at times use the same USB devices to move data back and forth between the Dominion EMS and web-connected computers. Doc. 723 Decl. Throop ¶¶ 5-11; Doc. 723 Decl. Marks¶15-17.

18. The Secretary of State's online publication entitled *A Guide for Registered Voters, An Overview of Georgia's Absentee Voting Process,* states on page 8 that it "is a crime to violate the secrecy of the ballot, or otherwise tamper with ballots or the voting system." (Doc. 1590-9 Marks Decl. at 8.

19. On December 22, 2019 CGG filed an Administrative Complaint concerning violations of ballot secrecy with the Secretary of State under the provisions of the Help America Vote Act. (Doc. 699-6 Decl. Marks Ex. C).

20. On March 31, 2020, the Secretary acknowledged in his ruling against a HAVA complaint filed by Coalition that:

> [P]olling places layouts developed by local election officials must be done in a manner that ensures voter privacy, including obscuring the sightlines of observers, poll watchers, and the public such that they cannot view a BMD screen. …County officials must provide a private voting experience… (Doc. 809-15 at 7).

21. In response to privacy complaints from voters, Fulton Board Member Aaron Johnson stated in a July 9, 2020, meeting: "When in the South Service Center, you could see in the hallway and see two rooms over and see people's votes because of the large touchscreen." Doc. 1597 Decl. Nakimura ¶ 35.

22. On July 27, 2020, Dr. Kathleen Ruth, a board member of the Fulton Board of Elections, sent an e-mail to other board members and Richard Baron stating that the machines were positioned so that all of the poll workers could see

the voting screens at Northside library during early voting. Doc. 1618-1 at 2 Decl. Marks ¶ 10.

23. On July 28, 2020, Vernetta Nuriddin, then a member of the Fulton County Board of Elections, wrote to other board members, Fulton County officials, and Rick Barron, stating that the screens are so visible that "casting a private ballot is impossible for voters." Doc. 1618-1 at 1 Decl. Marks ¶ 10.

24. The Carter Center, appointed by the State Election Board to review Fulton County's election operations, reported: "The height and angle of the BMD screen within the equipment container inadvertently undermined the secrecy of the voting process, especially in locations where tight space did not allow for optimal placement of the equipment containers." Doc. 1597 Decl. Nakamura ¶ 23.

25. On June 2, 2020, Richmond County denied an open records for security video because the cameras had been set up "where the ballots of voters can be clearly seen." Doc. 1618-2 Decl. Marks ¶ 14.

26. CGG Member Jeanne Dufort is the First Vice-Chair of the Morgan County Democratic Committee. In her role she is required to be neutral on competing candidates in party primary elections. She makes efforts to support and maintain good relationships with all Democratic Party primary candidates. Voting in primaries by BMD touchscreen with its visible votes or on the IPC scanner with

its traceable votes puts Ms. Dufort's candidate preferences into the public domain, in violation of the principles of her official role in the Democratic Party. The disclosure of Ms. Dufort's primary candidate ballot choices can harm her relationships with candidates and within the party.  Doc. 1590 Decl. Dufort ¶¶15-21.

27.    CGG member Dr. Virginia Forney, a physician, is careful to avoid partisan political stress in her practice and is concerned about her ballot selections being connected with her through one or more methods of her ballot secrecy being compromised. Doc. 1592 Decl. Forney ¶8-19).  Her concern causes her to pause as she is voting, depending on the circumstances, to consider whether she should vote her conscience in all races on the ballot, or skip voting on races that may create unnecessary controversy in her practice if her votes are disclosed.  (*Id*. ¶12).

28.    Although a mail ballot voter may deliver their ballot anytime before 7 pm on Election Day, a mail ballot voter is not permitted to wait until Election Day to mark their ballot, depriving them of the ability to obtain all of the latest election news or wait until election day before doing their candidate research and making their decisions. Voters are mailed a notice in their mail ballot packets instructing them not to vote their ballots on election day. Doc.1590 Decl. Marks ¶19 Ex. 16.

29. Experience in Georgia in 2020 shows that Dominion's scanner settings (low resolution, black-and-white) can cause voters' selections not to appear at all in images of ballots, selections that human readers looking at the actual ballots can easily discern. Doc. 1569-42 Decl. Stark at ¶ 53.

30. Ballot images obtained in open records requests and discovery show that some light marks were not detected or counted in the November 2020 election. Doc. 1618-7 Decl. Marks Ex. 7.

31. Voter selections are displayed on touchscreens in a manner that are recorded in some polling places by security video cameras that permits the voters votes to be known by those who have access to the videos. Coffee County designated the January 2021 video record of the early voting polling place as "attorneys eyes only" because the video would show voters voting. Doc. 1618-3 Decl. Marks ¶ 15.

32. Video footage of the Coffee County early voting location for December 14, 2020, shows the voter selections of identifiable voters voting on the BMD touchscreens. The video has a timestamp, allowing someone to determine the exact time and sequence that the voters cast their ballots. Doc. 1618 Decl. Marks ¶ 16.

33. In an October 3, 2020 letter, counsel for CGG informed Fulton County Election Board Members of the violations of law with respect to the voting system relating to election security and ballot secrecy and described how Fulton could independently comply with the law without further direction from the Secretary of State. Doc. 1590 Decl. Marks ¶13 Ex. 10.

34. On September 28, 2022, Coffee County denied an Open Records request from CCG for video security records of the early voting polling place during the December 6, 2022, runoff because "videos contain footage of voters voting." Doc. 1618 Decl. Marks ¶ 15.

35. On November 8, 2022, Marilyn Marks was leaving Fulton County's Ponce de Leon polling place in the evening after dark and could see from the sidewalk the brightly lit screen of the touchscreen while a voter was voting, revealing his selections. Doc. 1618 Decl. Marks ¶ 21-22.

36. Chris Harvey, former Election Director for the State, stated: "The Secretary of State's office has provided guidance to county election officials about the setup of precincts so that the touch screens will not be visible to other voters when they are being used by a voter." Doc. 843-3 Harvey Decl. ¶ 3.

37. On October 10, 2022, Dr. Halderman emailed Georgia Secretary of State Blake Evans with his report on the DVSOrder Vulnerability, stating: "In

some scenarios, knowing the order could make it possible to identify individuals' ballots and determine how they voted. What appear to be CVR's and the ballot images from counties throughout Georgia are available online and we have confirmed that we can unshuffle ballots in this data that were voted on the affected equipment." Dominion ballot image record ID numbers are not randomized. Instead, they are assigned a pseudo random number, which can easily be unshuffled to reveal their original sequence. This is called the "DVSOrder Vulnerability." *See* Doc. 1590-1 Marks Decl. ¶ 4.

38.     On October 17, 2022, CGG sent a letter to all counties informing them of the DVS Order Vulnerability that can violate ballot secrecy. Doc. 1618 Decl. Marks ¶ 24.

39.     CGG obtained video security records from Fulton County from the Ponce de Leon Library polling place and the New Beginnings Senior Center for early voting in October 2021. Such video records show the record of each voter casting their ballot in the scanner, and the exact time the ballot was cast. Doc. 1618 Decl. Marks ¶ 20.

40.     The consensus of the scientific community is that ballot marking devices are fundamentally insecure and unreliable. *See generally* Doc. 1589 Decl. Stark, and exhibits thereto.

Respectfully submitted this February 10, 2023.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 386-6856 | (253) 267-8530 |

*s/ Russell T. Abney*
Russell T. Abney
Georgia Bar No. 000875
WATTS GUERRA, LLP
4 Dominion Drive, Building 3
Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** <br><br> **Plaintiffs,** <br><br><br> **v.** <br><br><br><br> **BRAD RAFFENSPERGER, ET AL.,** <br> **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

/s/Bruce P. Brown
Bruce P. Brown

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, I served a copy of the foregoing upon counsel for the Defendants via CM/ECF.

/s/Bruce P. Brown
Bruce P. Brown