# EXHIBIT 32

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

CURLING PLAINTIFFS' THIRD AMENDED NOTICE OF
DEPOSITION OF OFFICE OF THE SECRETARY OF STATE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Curling Plaintiffs will take the deposition by oral examination of the Office of the Secretary of State as permitted by Rule 30 of the Federal Rules of Civil Procedure and applicable court orders in the above-captioned matter and as set forth in Schedule A.  Given defense counsel's representation that they expect to produce four representatives for this deposition, it will take place on **January 28 and February 2, 11 & 16, 2022**, beginning at **9:00 a.m. Eastern Time**, and continue from day to day until completed.  In light of current health issues around the country, the deposition will take place online by videoconference, such that each participant may participate from a location of their choosing.  The deposition shall be taken by oral examination with written and/or

1

sound and visual record made thereof before a court reporter or other officer authorized by law to administer oaths.

Respectfully submitted this 8th day of February, 2022.

| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
|---|---|
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Veronica Ascarrunz (*pro hac vice*) | Adam M. Sparks |
| Hannah R. Elson (*pro hac vice*) | GA Bar No. 341578 |
| Zachary Fuchs (*pro hac vice*) | KREVOLIN & HORST, LLC |
| MORRISON & FOERSTER LLP | 1201 West Peachtree Street, NW |
| 2100 L St, NW, Suite 900 | Suite 3250 |
| Washington, DC 20006 | Atlanta, GA 30309 |
| (202) 887-1500 | (404) 888-9700 |
| DCross@mofo.com | HKnapp@khlawfirm.com |
| MKaiser@mofo.com | Sparks@khlawfirm.com |
| VAscarrunz@mofo.com | |
| HElson@mofo.com | |
| ZFuchs@mofo.com | |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

## SCHEDULE A

## DEFINITIONS

The following words, terms, or phrases shall, for purposes of the Topics below, have the meanings specified, unless otherwise expressly stated in each request:

"All" and "each" shall be construed as all and each.

"And" as well as "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the Topics all information that might otherwise be construed to be outside their scope.

"Any" means each and every.

"Communication" shall mean any transmission of information by any means, including without limitation: (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more Persons, whether or not such contact was by chance or prearranged, formal or informal.

"Concerning," "related to" or "relating to," and "regarding" shall mean analyzing, alluding to, concerning, considering, commenting on, consulting,

comprising, containing, contradicting, describing, dealing with, discussing, establishing, evidencing, identifying, involving, noting, recording, reporting on, related to, relating to, reflecting, referring to, regarding, stating, showing, studying, mentioning, memorializing, or pertaining to, in whole or in part.

"Document" and "documents" shall be synonymous in meaning and equal in scope to the usage of that term in Rule 34(a), and includes "tangible things" (as that term is used in Rule 34(a)(1)(b)), as well as anything that falls within the definition or meaning of "electronically stored information" (as that term is used in Rule 34(a)(1)(A)) or of "writings" or "recordings" in Federal Rule of Evidence 1001.  A draft or non-identical copy of a document shall be considered a separate document within the meaning of the term "document," as used in the Topics.

"Dominion" means Dominion Voting Systems, Inc., its predecessors, divisions, subsidiaries, affiliates, partnership and joint ventures, and all directors, officers, employees, contractors, representatives, and agents thereof, and any other person acting on its behalf or under its direction or control with respect to subject matter of these Topics.

"Dominion Worker" means employees, contractors, representatives, and agents of Dominion, and any other person acting on its behalf or under its direction or control with respect to subject matter of these Topics.

"Electronic Pollbook" refers to the Election Systems & Software ExpressPoll, PollPad system supplied by KnowInk, or any other similar electronic pollbook system.

"Election System" means every aspect of any system, device, machine, server, computer, equipment, files, removable media (such as memory cards), ballot-marking devices (BMDs) (including ImageCastX Ballot-Marking Devices), BMD-adjacent equipment (including ImageCast Precinct Polling Place Scanner and associated printers or touchscreens), the KnowInk PollPad Plus system and associated components, software (such as any version of the Global Election Management System (GEMS), the BallotStation software or the software associated with the "Dominion Voting Democracy Suite" (D-Suite) and the KnowInk PollPad Plus system used in any election in the state of Georgia, script, hardware, firmware, software patch or update, paper, documentation, or facility (to include any backup of the foregoing) used in or as part of the operation, administration, implementation, execution, completion, preparation, facilitation, recording, processes, or procedures of elections in the State of Georgia, including voter registration information, election results data, DREs, BMDs, optical scanners, modems, network equipment, other peripheral devices, any server that hosts or has hosted the GEMS software, Dominion software, or any other election

management system, or the Election Night Reporting system, voter registration systems or databases (e.g., "eNet"), online voter registration servers, electronic poll books and related components, administrative credentials, the Center for Election Systems (CES) (including when it was located at Kennesaw State University), or information related to employees, agents, representatives, volunteers, or others acting on behalf of you, the State of Georgia, or any county or municipality with respect to elections in the State of Georgia.

"Including" means including without limitation.

"Person" means and includes a natural person (i.e., an individual), a group of natural persons acting as individuals, a group of individuals acting in a collegial or concerted capacity (e.g., as a committee, a board of directors or advisors, etc.), an association, firm, corporation, joint venture, partnership, company, governmental unit or agency, and any other business, enterprise, or entity, unless otherwise limited or specified in the Topics.

"State Election Board" means any current or former members of Georgia's State election board from 2016-present.

"You" or "your" mean and include Secretary of State Brad Raffensperger, any of his predecessors, the divisions, departments, partnerships, and joint ventures of or subject to the control of the Office of the Secretary of State, all directors,

officers, employees, contractors, consultants, representative, and agents thereof, and any other person acting on its behalf or under its direction or control with respect to subject matter of these Topics, including to the extent applicable the Georgia Technology Authority.

## INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 30(b)(6), the Office of the Secretary of State shall designate one or more of its officers, directors, managing agents, employees, or other persons to testify on its behalf about the matters set forth in the Topics set forth below. The Person(s) so designated shall be required to testify about each of those matters known or reasonably available to the Office of the Secretary of State. At least five days in advance of the date of deposition, the Office of the Secretary of State is directed to provide to counsel for Plaintiffs a written designation of the name(s) and position(s) of the Person(s) designated to testify on each of the following topics.

## AMENDED TOPICS

"Prior Election System" is the prior DRE/GEMS system[1] and "Current Election System" is the Dominion system currently used in Georgia, as clarified in Curling Plaintiffs' June 30, 2021 letter regarding the 30b6 topics.

1. Implementation and operation of Georgia's Current Election System limited to the following subtopics:

   a. Any efforts made specifically (i) to determine whether malware is, or was, located on any Component[2] of Georgia's Prior Election System and (ii) to prevent any such malware from infecting the Components of Georgia's Current Election System; and the success or failure of any such efforts, including any exchanges of software or data between any Component of the two election systems and the use of the same computers, servers, or removable media with both systems;

---

[1] Reference to the Prior Election System in these topics seeks information only regarding the extent to which potential infiltration of that system could affect the Current Election System.

[2] Component is limited to the following equipment that has been used for elections in the State of Georgia: ES&S DREs; Dominion BMDs; printers used with Dominion BMDs; scanners used to scan ballots; servers containing election management system (EMS) software for use with any ES&S DREs or Dominion BMDs; and servers, laptops, desktop computers, tablets, smartphones, and removable media connected to any of the preceding equipment or otherwise used to collect, tally, record, transmit, design, or audit voting information.

b. Any efforts made to "air-gap" any Components of Georgia's Current Election System, and the success or failure of any such efforts;

c. Any connections of any Components of Georgia's Current Election System to the Internet, telephone lines, cable lines, satellites, or other third-party system or network;

d. [WITHDRAWN – MORE NARROWLY CAPTURED BY 1a and 9b];

e. Any failure of any Component of Georgia's Current Election System to correctly tabulate, tally, record, store, or maintain any ballot cast in any 2020 or 2021 elections in Georgia, any measures implemented, planned, or contemplated to remediate or otherwise address any such failure, and the success or failure of any such measures;

f. Practices and policies for creating ballot definition files and Election Project Packages for Georgia 2020 or 2021 elections, including when, where, how, and by whom such files were created and transmitted for use in any such election;

g. Procedures and instructions for county review and approval of the Election Project Packages;

    h. Practices and policies for transferring scanned ballot data and tabulation data or information for Georgia 2020 or 2021 elections to You, including when, how, and by whom such data or information was collected or transmitted.

2. Any testing, examination, reexamination, evaluation, study, analysis, investigation, or assessment of the security, integrity, reliability, accuracy, or transparency of Georgia's Current and/or Prior Election System, including:

    a. Your knowledge about your policies and training on Logic and Accuracy testing, as well as practices concerning these issues undertaken by you or anyone acting on your behalf or at your direction;

    b. Logic and Accuracy Testing of the current voting equipment, the results thereof, and any steps or measures contemplated or taken in response to any such testing;

    c. Any reports, findings, or conclusions regarding any potential or actual security concerns, breaches, or vulnerabilities involving any aspect of Georgia's Current or Prior Election System;

    d. Documentation—including research, reports, assessments, findings, studies, publications, memoranda, and communications—regarding

the security, integrity, reliability, or accuracy of any component of Georgia's Current Election System.

3. Complaints regarding the security, integrity, reliability, or accuracy of Georgia's Current and/or Prior Election System, including when and by whom any such complaints were made and any responses thereto.

4. Dominion's role and responsibilities in any 2020 and 2021 Georgia elections related to Georgia's Current Election System, including:

   a. Any oversight Dominion exercises over technicians or other election workers in any such election;

   b. Any access any Dominion Worker had to any components of the Election System used in any such election after the state or any county took possession of the component(s), whether (and if so, how, when, and by whom) that access was exercised by any Dominion Worker, and the reasons for any such access;

   c. Any changes any Dominion Worker made to any components of the Election System (including servers and any software, firmware, or data on the equipment) used in any such election after the state or any county took possession of the component(s), including how, when, why, and by whom any such changes were made.

5.  Your knowledge about vendor access to Poll Pads, BMDs, printers, scanners, computers, or servers used to administer elections, including tabulating votes, under Georgia's Current and/or Prior Election System and applicable State Election Board (SEB) rules and training with respect to vendors with access to any such equipment and/or data, as well as any practices regarding the enforcement of those rules.

6.  Policies and practices for hiring, training, and overseeing technicians and other election workers (including volunteers) for 2020 and 2021 Georgia elections under Georgia's Current and/or Prior Election System, including regarding any background checks, confidentiality requirements, or other security measures implemented or contemplated for any such workers.

7.  Policies and practices for scanning and tabulating paper ballots under Georgia's Current Election System. Specifically:

    a.  Functionality and operation (including equipment settings) of Georgia's Current Election System (including software and firmware) for scanning paper ballots, whether generated by a ballot-marking device or marked by hand or some other means;

  b. Functionality and operation of Georgia's Current Election System (including software and firmware) for adjudicating marks on paper ballots for tabulation;

  c. Any policies and practices contemplated or adopted to try to ensure accurate tabulation of voter selections reflected on paper ballots; Training and oversight of technicians and other election workers and/or counties on such policies, practices, and equipment.

8. Complaints or reports regarding security vulnerabilities with or unauthorized access to any Electronic Pollpads used in Georgia 2020 or 2021 elections.

9. Vulnerabilities involving the security, integrity, reliability, or accuracy of Georgia's Current Election System limited to the following subtopics:

  a. Suspected or actual unauthorized access to or copying or alteration of software or data on any Component of Georgia's Current Election System;

  b. Policies and practices regarding securing Components of Georgia's Current Election System against unauthorized access to or copying or alteration of software or data on any such Components, including but not limited to removable media used with the system (and any other

    equipment used with any such media) and equipment stored overnight in early voting polling places;

    c. Wireless connections available with any of the following equipment used in Georgia elections in 2020 or 2021: Dominion BMDs; printers used with Dominion BMDs; scanners used to scan ballots; servers containing election management system (EMS) software for use with any Dominion BMDs; Electronic Pollbooks; and servers, laptops, desktop computers, tablets, smartphones, and removable media connected to any of the preceding equipment or otherwise used to collect, tally, record, transmit, design, or audit voting information.

10. Any instance in 2020 or 2021, within the knowledge of the Secretary of State's Office, when a person or entity other than an authorized election worker or Georgia state or county official obtained voting data from a Georgia election or images of voting equipment used in a Georgia election.

11. Any changes to any software or firmware used on any component of Georgia's Current Election System since September 1, 2020, including when, how, why, and by whom any such changes were made and approved.

12. Communications with the U.S. Election Assistance Commission ("EAC") regarding any software changes involving Georgia's current Election

System or otherwise relating to any actual or contemplated request for EAC approval for any aspect of Georgia's Current Election System.

13. The voter verifiability and auditability of ballots generated by ballotmarking devices used in Georgia 2020 or 2021 elections, including:

   a. Any policies and practices contemplated, adopted, or implemented to try to ensure voter verification of the contents of paper ballots generated by Georgia's Current Election System;

   b. Any testing, examination, evaluation, study, analysis, or assessment of the extent to which voters reliably verify the accuracy of their respective ballots generated by ballot-marking devices used in Georgia's Current Election System;

   c. Any policies and practices contemplated or adopted for pre-election or post-election auditing of election results produced by Georgia's Current Election System, including but not limited to risk-limiting audits of that system;

   d. Any audit of any Georgia 2020 or 2021 election, including the steps taken as part of that audit and the results thereof and any review or investigation of discrepancies found in the audit.

14. Any actual or contemplated plans to replace Georgia's current voting software or equipment with different voting software or equipment, such as BMDs that do not generate bar codes for tabulation.

15. Potential implementation and operation of an election system using hand-marked paper ballots as the primary means of voting in person in Georgia elections, including:

   a. Any examination, evaluation, study, analysis, or assessment of the reliability, feasibility, or costs thereof;

   b. Any proposal or request for any such Election System for use in Georgia, including when and by whom any such proposal or request was made and any response thereto.

16. Admissibility of any Documents You produce in discovery in this matter.

17. Your process for identifying, collecting, searching, reviewing, and producing responsive Documents and other relevant materials in this matter.

18. Your process for preserving information within Your possession, custody, or control potentially relevant for this matter, including any communications with counties or other entities or individuals regarding the same.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>v.<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | Civil Action No. 1:17-CV-2989-AT |

**CERTIFICATE OF SERVICE**

I certify that on February 8, 2022, a copy of the foregoing was served by email on all counsel of record.

*/s/ David D. Cross*
David D. Cross