# EXHIBIT 34

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:17-cv-2989-AT |
| : | |
| BRAD RAFFENSPERGER, *et al.*, : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

This case requires the Court to consider whether Georgia's practices and procedures for administering voter access to the ballot at the polls unconstitutionally impact the voting process and unduly burden the exercise of qualified citizens to choose their elected representatives. The relief that the Coalition Plaintiffs seek here is a limited common sense remedy to the real and repetitive voting impediments Plaintiffs have experienced at the precinct threshold and the substantial threat that they will face from these impediments anew in the 2020 general election if preliminary injunctive relief is not granted.

In tandem with the Plaintiffs' motions for injunctive relief seeking to bar the State of Georgia from requiring the use of electronic ballot marking devices (BMDs) for all in-person voters on election day, the Coalition Plaintiffs have filed a stand-alone Motion for Preliminary Injunction on Paper Pollbook Backups [Doc.

The voter registration database, ENET, which is used by county registrars to maintain and update voter registration records and determine ballot precinct information was not replaced with the adoption of the new Dominion BMD election system. As described by Mr. Harvey, voter information from the existing ENET system is loaded into the new electronic pollbooks for each election. (Harvey Decl., Doc. 815-1 ¶ 12.)[11] Other than a switch to the new KnowInk PollPad electronic pollbooks, Defendants have offered nothing to indicate concretely any action taken in response to issues experienced by voters in November 2018 and more recent elections to ensure that the information from ENET and the operation of the electronic pollbooks is reliable, accurate, and updated.

Plaintiffs submitted a volume of evidence of the impact of these issues on voters' ability to cast votes, as detailed in the Court's August 2019 Order, and more recently in the BMD pilot elections and the 2020 primary elections. In connection

---

[11] Defendants contend, and offer the declaration of Dr. Eric Coomer of Dominion, that information from ENET is not electronically transmitted, and therefore cannot corrupt the new pollbook system, because only a flat text file from ENET (that will be run through a security scan) will be loaded into the pollpads for use during elections. This contention appears to be in conflict with other evidence regarding the operation of the KnowInk pollbooks via WiFi and Harvey's statement in his declaration that "[e]lectronic pollbooks allow counties to receive updated information from the electors list after the close of early voting during the three days prior to Election Day," and the information in Dominion's public contract documents about the capacity of the KnowInk pollbooks to receive up to the minute voter information on election day. As a prime example, the Secretary of State's summary report of the November 5, 2019 pilot elections reports that "Some Poll Pads were not able to produce Voter Cards to activate the BMDs . . . The issue was discovered upon the opening of the polls and was reported from Bartow, Carroll, Cobb, and Paulding by approximately 7:20 am . . . By 7:40 am the SOS office directed that KnowInk and Dominion do a universal fix by loading the dataset through a WiFi connection. That was executed and the Poll Pads then began to function properly by approximately 8:20 am." (Doc. 675-1 at 4.) Plaintiffs have offered testimony of cybersecurity experts to rebut the State's assertion that the other two voter registration systems, the My Voter Page (MVP) and the Online Voter Registration system, do not interface with ENET.

connections. Peterson also received a Dominion manual which contained troubleshooting steps. According to Peterson, the field technicians were advised as part of their training that they were not permitted to touch the equipment at the polls during the election.

On August 11, 2020, Peterson was assigned to a precinct at New Beginnings United Methodist Church in Kennesaw, Cobb County. Peterson assisted with assembly of the PollPads as none of the poll workers seemed familiar with setting up the equipment. When the polls opened, only seven out of the ten BMDs were working, three of them would not turn on. Peterson was surprised he had not been asked to assist in troubleshooting the issue. By 9:30 a.m., technical issues had caused two more BMDs to become inoperable and one BMD printer was jammed. Because Peterson was not permitted to touch the equipment, poll workers had to wait for a Dominion technician.

In sum, the Coalition Plaintiffs presented compelling evidence demonstrating that the PollPads failed to perform many of their critical functions during the 2019 pilot elections, the June 2020 primary election, and again in the August 2020 runoff election. These include failing to read driver's license barcodes to verify registration status during voter check-in, failing to record voter signatures upon check-in resulting in poll workers having to resort to manual processes, failing to accurately report if a voter has voted previously, and failing to encode ballot access cards to allow voters to cast ballots on the BMDs. As a result, voters waited for hours because of delays and malfunctions with the operation of the

47

PollPads. In many instances of such bottlenecks created by operational problems with the PollPads, poll workers did not use paper pollbooks as a backup to aid voter check-in and facilitate voting. Many voters were required to use provisional ballots, and in some instances, those ballots were rejected without explanation from election officials.

### D. Injunctive Relief Factors

In determining whether Plaintiffs have established a substantial likelihood of prevailing on the merits of their claim related to the paper pollbook backup, the Court must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment." *Anderson v. Celebrezze,* 460 U.S. at 789. Although Coalition Plaintiffs do not characterize the magnitude of the burden on their constitutional rights explicitly in their pollbook motion, they assert that that the undisputed evidence shows that using unreliable and unsecure electronic pollbooks without an updated paper backup disenfranchises voters. And Plaintiffs have vigorously advocated the need for such relief in these proceedings, dating back at least to the July 2019 preliminary injunction hearing and then again, in additional questions following the Court's issuance of the Order of August 15, 2019, asking the Court to substitute the requirement of provision of pollbooks in place of the less helpful voter registration lists as a backup during voting. (*See, e.g.*, Plaintiffs' Rule 59(e) Motion, Doc. 605; Order, Doc. 636.) The Court in its later conferences with counsel encouraged the State Defendants' counsel to cooperate in addressing this issue.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006) ("The right to vote is fundamental, forming the bedrock of our democracy."). Voting is, indisputably, a right "'of the most fundamental significance under our constitutional structure.'" *Burdick*, 504 U.S. at 433 (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). The right to vote includes "the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). State and local laws that unconstitutionally burden that right are impermissible. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008).

Building on the foundation of evidence from the prior injunction motions, Plaintiffs have presented additional evidence in connection with the State's new voting system and inaccuracy problems in its legacy ENET voter registration database. Plaintiffs' new evidence indicates that the State has yet to work out the host of bugs afflicting its implementation of an entirely new electronic voting system, and along with its contractor, has adopted measures that jeopardize the security of the voter check-in system, including disabling the default password protection of the PollPads and allowing the PollPads to operate on an unreliable and unsecure WiFi connection to transfer sensitive voter data. Plaintiffs' declaration testimony establishes that the threshold bottleneck during voter

49

check-in significantly has contributed to long lines and waiting periods of hours (far greater than 30 minutes) and caused voters to leave and be deterred from voting. This evidence combined with issues related to the power supply limitations at multiple polling places (causing equipment shutdowns), repeated issues with the operation of the PollPads and BMDs themselves, and ineffective or nonexistent "non-technical" backup systems in place has led to a severe burden on the rights of voters.

This Court previously held that "[i]f voters' capacity to cast votes are thwarted through an inaccurate express pollbook voting check-in or voter website, this burdens their right to cast votes, scrambles election day voting procedures, and ultimately, in turn affects voting results." (August 15, 2019 Order, Doc. 579 at 89-90.) The totality of the evidence presented in connection with the elections conducted thus far on the State's new system provides no indication that the circumstances facing voters described above will be better in the November Presidential election. The imminent harm faced by Plaintiffs and other Georgia electors is of a constitutional magnitude.[19] *See Democratic Exec. Comm. of Florida*

---

[19] In addition to the burdens faced by the individual Coalition member Plaintiffs, the Coalition has a protected interest in pursuing its organizational goals of preserving and advancing the constitutional liberties and individual rights of citizens, with an emphasis on preserving and protecting the rights of its members that are exercised through public elections without having to divert resources and personnel to counteract Defendants' challenged actions. (*See* Coalition Pls.' Suppl. Compl. ¶ 214; Third Am. Compl. ¶ 140-141.) *See Georgia Coalition for People's Agenda, Inc. v. Kemp*, 347 F.Supp.3d 1251, 1268 (N.D. Ga. 2018) (finding that "Plaintiffs, as an organization, will also suffer irreparable injury distinct from the injuries of eligible voters. Without an injunction to address the citizenship verification procedure, Plaintiffs' organizational missions, including registration and mobilization efforts, will continue to be frustrated and organization resources will be diverted to assist with the citizenship mismatch issue. Such

protecting voters' constitutionally protected ability and right to cast a ballot that is counted and given the same weight as any other on this coming November 3rd general election day and thereafter.[31] It is not too late for Defendants to take these reasonable concrete measures to mitigate the real potential harms that would otherwise likely transpire at precinct polling locations grappling with the boiling brew created by the combination of new voting equipment issues and old voter data system deficiencies.

**IT IS SO ORDERED** this 28th day of September, 2020.

_____
**Honorable Amy Totenberg
United States District Judge**

---

[31] This relief is also consistent with the advice of the Department of Homeland Security. As reported by the New York Times in an article yesterday, Christopher Krebs, who runs the Cybersecurity and Infrastructure Security Agency for the Department of Homeland Security "noted that the agency [i]s trying to make sure local election officials printed out their electronic poll books, which are used to check in voters, so that they ha[ve] a backup." Nicole Perlroth and David E. Sanger, Ransomware Attacks Take on New Urgency Ahead of Vote, The New York Times, September 27, 2020, available at https://www.nytimes.com/2020/09/27/technology/2020-election-security-threats.html?referringSource=articleShare.