# EXHIBIT 47

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs,*

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants.*

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

### BRIEF IN SUPPORT OF STATE DEFENDANTS'[1] RENEWED MOTION TO DISMISS CURLING PLAINTIFFS'[2] THIRD AMENDED COMPLAINT AND COALITION PLAINTIFFS'[3] FIRST SUPPLEMENTAL COMPLAINT

Plaintiffs do not like technology in voting. They believe hand-marked paper ballots are the only valid election system. That is a policy position they are free to endorse but it is an outrageous position as a matter of constitutional law, especially because the Constitution *specifically* reserves most election-administration decisions to States. After failing to persuade the

---

[1] State Defendants are Defendants Secretary of State Brad Raffensperger and State Election Board Members David J. Worley, Rebecca N. Sullivan, Anh Le, and Seth Harp.

[2] Plaintiffs Donna Curling, Donna Price and Jeffrey Schoenberg are referred to herein as the "Curling Plaintiffs.

[3] Plaintiffs Coalition for Good Governance, Laura Digges, William Digges III, Ricardo Davis, and Megan Missett as the "Coalition Plaintiffs."

**the current GEMS Servers or GEMS Databases**.[14] [Doc. No. 556.]; *see also* [Doc. 571-1 at 46:18-23].

The Dominion Election Management System (EMS) is completely replacing the GEMS/DRE system, the system currently used to build ballots, receive votes, and tabulate those votes. [Doc. 556 at 2.] The Dominion BMD system, which includes an electronic ballot-marking device, a printer, and an optical scanner connected to a locked ballot box, is replacing DREs. KNOWink Poll Pads, which will receive text-file data from ENET after the security scans required by Georgia law is completely replacing the ExpressPoll system.

---

[14] There are at least five different systems that are part of the overall election process in Georgia. Three of those systems do not connect to the BMD voting system and are *not* changing: (1) The voter registration database (ENET), which is used by county registrars to maintain and update voter registration records. A flat-text extract from ENET is loaded into pollbooks for each election, but this system does not connect to the Dominion BMD system. (2) The My Voter Page (MVP), which is a separate, outward-facing system used to provide information to voters and does not input any information into ENET or any other part of the Georgia election system. (3) The Online Voter Registration system (OLVR), which is a separate system used by voters to register to vote or update their voter registration by sending information to the local registrar for review. OLVR does not input any information directly into ENET or any other part of the Georgia election system—any applications or changes submitted by voters are sent to the county registrar for processing.

11

Plaintiffs do not allege any harms different than those that theoretically could occur in their preferred system. Hand-marked ballots are prone to overvotes, and stray marks or voter confusion can cause problems in counting hand-marked paper ballots. [Doc. 472-1 at ¶¶ 36, 48, 52]. Hand-marked paper ballots are *more* susceptible than BMDs to fraud and manipulation. [*Id*. at ¶¶ 40, 45].

## ARGUMENT AND CITATION TO AUTHORITY

### I.   **Plaintiffs' claims challenging DREs are moot.**

Plaintiffs continue to challenge DREs in their Amended and Supplemental Complaints even though Georgia will not use DREs after 2019. The DRE claims are moot, particularly if Plaintiffs assert that the BMD claims are ripe.

The mootness doctrine arises from "[t]he Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 168 (2000). A claim becomes moot when "[T]he issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003). A claim can become moot at any point in the litigation. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 45 (1997). One exception to the mootness doctrine,

the "'capable of repetition yet evading review'" exception, only applies when: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014). But if a defendant voluntarily ceases engaging in the challenged act, and "the allegedly wrongful behavior could not reasonably be expected to recur," a claim regarding such conduct is moot and not subject to this exception. *See Friends of the Earth, Inc.*, 528 U.S. at 170; *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014).

When a state engages in "comprehensive election reforms," as Georgia has through H.B. 316 and the procurement of a new voting system, a court "cannot conclude that the Georgia Legislature would go back to the old electoral system if [the case] were dismissed as moot." *United States v. Georgia*, 778 F.3d 1202, 1205 (11th Cir. 2015). This is because "voluntary cessation by a government actor gives rise to a rebuttable presumption that the objectionable behavior will not recur." *Atheists of Fla. Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013).

Not only has the State enacted legislation mandating the replacement of DREs, O.C.G.A. § 21-2-300(a)(2); [Doc. 357-1 at 13; Doc. 472 at 28; Doc. 579

13

at 8], it is in fact replacing the DREs for elections in 2020. [Doc. 579 at 8-9].[15] The Court also has prohibited the State's use of "the GEMS/DRE system in conducting elections after 2019." [Doc. 579 at 148]. By the time this motion is fully briefed, DREs will be used only for December runoff elections—and then never again. As indicated in the August 27, 2019, teleconference, the Court is wary of getting "involved with this messiness on a part of the [DRE] system that *is not going to proceed*." [Doc. 590 at 28-29 (emphasis added)].

Plaintiffs cannot have it both ways. By filing their supplemental and amended pleadings, which include new claims challenging the constitutionality of BMDs, they assert that the claims regarding BMDs are now ripe. *See generally* [Docs. 672 & 628 (challenging BMDs)]. Ripeness requires a determination "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) (internal citations and quotations omitted). Here, the State is rapidly retiring DREs and replacing them with BMDs. [Doc. 579 at

---

[15] In fact, the State is currently seeking to remove all parts of the GEMS/DRE system from counties. [Doc. 616-1 at ¶ 12]. Were it not for Plaintiffs' litigation and baseless accusations of spoliation and bad faith, this already would be occurring.

148]. If Plaintiffs' claims as to the BMDs are now "mature," "defined," and "concrete," *Cheffer*, 55 F.3d at 1524, the future use of DREs is certainly "no more than a mere possibility." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Accordingly, Plaintiffs' DRE claims are now moot.

II.   **Plaintiffs' Amended and Supplemental Complaints fail to state a claim or otherwise present improper issues to this Court.**

Plaintiffs' new Complaints fail to state a claim for relief and must be dismissed. The Eleventh Amendment bars retrospective DRE claims, and the BMD claims improperly ask the Court to adjudicate policy decisions. Similarly, Plaintiffs' procedural due process claims are not sufficiently pled and must be dismissed for failure to state a claim. Finally, Plaintiffs' laundry list of statutory assertions do not amount to any federal violation and thus either do not state a claim or are improperly before the Court.

A.   Curling Plaintiffs' retrospective DRE claims are barred by the Eleventh Amendment and Coalition Plaintiffs' BMD claims extend beyond the scope of *Ex Parte Young*.

Plaintiffs' Complaints raise different Eleventh Amendment questions than those the Court previously addressed. The Eleventh Amendment bars several of the new counts, because Plaintiffs' requested relief: (1) seeks redress of *past* harm; (2) is drastically different and more comprehensive than before; and (3) impermissibly seeks removal of the State's constitutional

15

authority to oversee the details of elections. Accordingly, this Court must again review the application of the Eleventh Amendment to this case.

First, in Counts I and II of their Amended Complaint, Curling Plaintiffs still seek *retrospective* declaratory relief regarding use of the "DRE Voting System" in the "Relevant Previous Elections." *See* [Doc. 627 at ¶¶ 98(a), 110, 112(a)]. The Eleventh Amendment bars such claims for retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Plaintiffs here are seeking relief that would only indirectly encourage compliance with federal law through deterrence which is "insufficient to overcome the dictates of the Eleventh Amendment." *Fla. Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dep't of Health and Rehabilitative Svcs.*, 225 F.3d 1208, 1219 (11th Cir. 2000). Moreover, just as in *Green*, the State's statutory changes have eliminated any alleged ongoing violation of constitutional rights based on the DRE System. *Green*, U.S. 474 at 74. This is doubly true where, as here, any continuing DRE claims have not been finally adjudicated and are moot. *See, supra* Section I. These counts must be dismissed.

Second, Coalition Plaintiffs' Supplemental Complaint now also requests relief beyond the scope of that permitted by *Ex Parte Young*, 209 U.S. 123 (1908), implicating special state sovereignty interests. Specifically, Coalition Plaintiffs seek a mandatory injunction to "employ a properly certified system

using hand marked paper ballots as the standard method of voting" with specific "post-election, precertification audits" and tabulation of all votes using optical scanners. *See generally* [Doc. 628, Prayer for Relief]; *see also, e.g., Id.* ¶¶ B, E, F, H. The fiction of *Ex Parte Young*, however, "requires careful consideration of the sovereign interests of the State." *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 649 (2002) (Kennedy, J., concurring); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281–288 (1997). The relief sought here implicates special sovereignty interests of the State by seeking judicial legislation in an area specifically reserved to the states by the Constitution. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008).

The Eleventh Circuit acknowledged this exact issue in this case, noting Plaintiffs were *not* seeking "a court order directing the precise way in which Georgia should conduct voting," only relief against a system they alleged to be unconstitutionally unsecure. *Curling v. Secretary of Georgia*, 761 F. App'x 927, 934 (2019). [16] Now, however, Plaintiffs seek relief that reaches far deeper into the sovereignty interests of the state to the point of choosing one

---

[16] State Defendants do not dispute that *Ex Parte Young* generally permits cases to proceed for prospective relief against a state to enjoin allegedly unconstitutional conduct, indeed the Eleventh Circuit in this case has held as much. *Curling*, 761 F. App'x at 927.

auditable paper-ballot system over another. *Compare* [Doc. 226, pp. 67–68] *with* [Doc. 628, pp. 69–72]. As such, Coalition Plaintiffs' requested relief is impermissible.

Even if this Court finds that Coalition Plaintiffs' Supplemental Complaint does not implicate the special sovereignty interests under *Ex Parte Young*, states retain constitutional and regulatory authority to ensure the integrity and efficiency of elections. U.S. Const. Art I, § 4, cl. 1; *Storer v. Brown*, 415 U.S. 724, 730 (1974); *see also Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006). Here, Coalition Plaintiffs' specifically tailored relief asks this Court to oversee the administrative details of the election. There is no constitutional basis for the Court to do so. *Pettengill v. Putnam County R-1 Sch. Dist.*, 472 F.2d 121, 122 (8th Cir. 1973).

"[I]t is the job for democratically elected representatives to weigh the pros and cons of various balloting systems," not the federal courts. *Weber*, 347 at 1107. "[T]he framers of the Constitution intended the States to keep for themselves, as provided by the Tenth Amendment, the power to regulate elections." *Gregory v. Ashcroft*, 501 U.S. 452, 461–62 (1991) (quoting *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973)); *see also Favorito v. Handel*, 285 Ga. 795, 796 (2009) (noting "states are entitled to broad leeway in enacting reasonable, even-handed legislation to ensure that elections are

18

carried out in a fair and orderly manner") (citing *Wexler*, 452 F.3d at 1232)).

Additionally, the relief Coalition Plaintiffs request deprives the State of its

authority to "effectuat[e] statutes enacted by representatives of its people."

*New Motor Vehicle Bd. of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1351

(1977). It also seeks to replace that sovereign authority with a policy decision

properly reserved to the state legislature and that the federal judiciary is ill-

equipped to make. *See Vermont Yankee Nuclear Power Corp. v. Natural*

*Resources Defense Council, Inc.*, 435 U.S. 519, 557–558 (1978) (refusing to

reexamine policy questions resolved in Congress and state legislatures). This

Court similarly should decline the invitation to second-guess the legislative

process resulting in the implementation of BMD-marked paper ballots.

   B. Coalition Plaintiffs' Procedural Due Process allegations fail to state a
      claim and must be dismissed.

   Procedural due process guarantees that the state may not deprive a

person of life, liberty, or property without providing "appropriate procedural

safeguards." *Daniels v. Williams*, 474 U.S. 327 (1986). "A §1983 action

alleging a procedural due process clause violation requires proof of three

elements: a deprivation of a constitutionally-protected liberty or property

interest; state action; and constitutionally inadequate process." *Doe v. Fla.*

*Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

At the outset, State Defendants are at a disadvantage in responding to any procedural due process claims alleged by Plaintiffs.[17] Coalition Plaintiffs reallege and incorporate by reference the entirety of their previous allegations into their procedural due process claims, leaving State Defendants to try to divine which allegations support the now-assumed procedural due process claims. [Doc. 628 ¶ 238]. Consequently, Coalition Plaintiffs' Supplemental Complaint is a prototypical shotgun-style pleading that is universally disfavored. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997); *see also Chapman v. Al Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("We have frequently railed about the evils of shotgun pleadings and urged district courts to take a firm hand and whittle cases down to the few triable claims . . . .").

---

[17] Curling Plaintiffs also assert violations of Due Process under the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause, of course, provides two types of protection: (1) substantive due process; and (2) procedural due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*). Unlike Coalition Plaintiffs, Curling Plaintiffs have not identified whether they seek relief under procedural or substantive due process of the Fourteenth Amendment. *See* [Doc. 627 ¶¶ 91–98, 113–119]. Should the Court determine Curling Plaintiffs' Amended Complaint encompasses a procedural due process claim, the argument contained herein applies with equal force.

Nonetheless, taking Coalition Plaintiffs' allegations as presented, they have not sufficiently alleged the first element—deprivation of a constitutionally protected liberty or property interest. *See Doe*, 630 F.3d at 1342. Coalition Plaintiffs' procedural due process claim is apparently premised on Georgia's decision to implement a BMD balloting system as a replacement for DREs. [Doc. 628 ¶¶ 238-245]. But there is no state-created liberty or property interest in a preferred choice of voting systems. *See, e.g. Favorito*, 285 Ga. at 797–798. Even assuming a liberty or property interest existed for a preferred voting system, there is no deprivation of that interest, given the State's no-excuse absentee voting system by hand-marked paper ballots. Accordingly, Plaintiffs have not—and cannot—establish a liberty interest, nor a deprivation thereof.

Further, even if Coalition Plaintiffs could articulate a constitutionally protected liberty interest under procedural due process, the Complaint fails to allege they have been subjected to inadequate process. Procedural due process violations require the state refuse to provide due process, *McKinney*, 20 F.3d at 1562, and Coalition Plaintiffs have not alleged the absence of state remedies, as is their burden. *Searcy v. Prison Rehab Industries & Ent, Inc.*, 746 Fed. Appx. 790, 795 (11th Cir. 2018). The availability of a state remedy necessarily prevents Plaintiffs from maintaining a procedural due process

claim as a matter of law. *See Horton v. Bd. Of Cty. Comm'rs*, 202 F.3d 1297,

1300 (11th Cir. 200). Instead, Plaintiffs appear to have pled the opposite,

acknowledging that they have sought recertification *under Georgia law*. [Doc.

628, pp. 55–56]. Accordingly, Coalition Plaintiffs' procedural due process

allegation fails to state a claim and must be dismissed.

   C. <u>Plaintiffs' state law claims, smuggled into this case without clear legal
   grounds, fail to state a claim and must be dismissed.</u>

   Plaintiffs seek adjudication of numerous state-law issues without

stating a claim this Court can address. Curling Plaintiffs list eighteen

different provisions of Georgia's Constitution, Official Code, and Compilation

of Rules and Regulations, [Doc. 627 ¶ 142], and Coalition Plaintiffs similarly

cite various provisions of state law regarding certification. *See, e.g.*, [Doc. 628,

24–25, 41–45]. As a preliminary matter, to the extent the alleged state

statutory violations do not amount to vindication of a federal right, they fall

outside *Ex Parte Young* and are thus inapposite. *See, infra,* Section IV. And

in any event, the allegations are not sufficiently pled and the statutes do not

create a private right of action. Accordingly, any state law claims stated in

the Complaints must be dismissed.

   Curling Plaintiffs' apparent state law claims contained in Paragraph

142 of [Doc. 627] do not meet the basic requirements of pleading under

federal law. The conclusory enumeration of various statutes does not amount to a short and plain statement showing the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, they amount to only "'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557). This conclusory prayer for relief is doubly confounding given that Plaintiffs ostensibly seek to *prevent* implementation of the voting system provided for by that statute (Counts I-IV) but pray this Court enforce *compliance* with those same statutes. Given this lack of clarity and coherence, the paragraph seems to place state law claims—which do not provide a private right of action—before this Court.

Similarly, Coalition Plaintiffs' allegations about certification are simply misplaced and inaccurate, but, in any event, do not amount to a violation of federal law. As a preliminary matter, the BMD-system certification complies with *the only set of guidelines used by any election system* in the country. Regardless, even if it were somehow defective, Coalition Plaintiffs cite nothing for the proposition that a lack of compliance with state law amounts to a violation of federal rights. Nor do Coalition Plaintiffs assert the grant of any private cause of action under state law.

III.   **There is no subject matter jurisdiction over Plaintiffs' new claims challenging Georgia's BMD Voting System because Plaintiffs lack standing.**

The change from challenging DREs to challenging Georgia's new paper-ballot system requires another look at Plaintiffs' standing, because the use of paper ballots and required audits completely changes any potential injuries alleged by Plaintiffs. As this Court knows, the Article III standing doctrine limits the category of litigants empowered to maintain a lawsuit in federal court and redress a legal wrong, *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547 (2016), it is the threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to establish Article III standing, the plaintiff must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendants; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S.Ct. at 1548. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990), and at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element of standing. *Warth*, 422 U.S. at 518.

A. Plaintiffs fail to demonstrate a concrete and particularized injury.

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). For an injury to be particularized, it must affect the plaintiff in a distinct way. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

Plaintiffs have not sufficiently alleged the injury-in-fact element as to BMDs. The "threat of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone." *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983)). "It is the reality of the threat . . . not the plaintiff's subjective apprehensions . . . the emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107 n. 8. Plaintiffs fail to allege that they are under threat of suffering a prospective injury that is "<u>real</u> and <u>immediate</u>" regarding Georgia's new BMD voting system. *Summers*, 555 U.S. at 493 (emphasis added). While Plaintiffs have detailed a host of factual allegations regarding *prior* injuries that they have allegedly suffered as a result of the DREs, [See Doc. No. 627, pp. 11-17], these purported injuries are insufficient to demonstrate that Plaintiffs are under threat of future injury from BMDs. *Lyons*, 461 U.S. at 102-03.

Plaintiffs' BMD allegations are replete with hedging language, illustrating their ability to demonstrate a concrete, particularized, and imminent injury-in-fact. *See, e.g.*, [Doc. No. 627, pp. 23–28]. For example, Plaintiffs allege that that the BMDs "remain susceptible to manipulation," are "vulnerable to intentional [and] unintentional forms of manipulation," and that these vulnerabilities "could cause" BMDs to malfunction or improperly tabulate votes. *Id*. In sum, Plaintiffs injury allegations are that: (1) a malicious hacker *might* hack BMDs; (2) voters *might* not review the ballot; (3) the optical-scan unit *might* incorrectly count votes; (4) post-election audits of the ballot or an election challenge *might* not catch any errors. *Id*. Plaintiffs have complete control over whether *they* are "injured" because they can review their selections on their BMD-marked paper ballot. This alleged generalized fear that malicious activity *might* occur is insufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568, U.S. 398, 410 (2013) (rejecting "reasonable likelihood" of injury to meet the injury-in-fact standard).

Plaintiffs cannot rely on their previous claims about DREs and simply "bootstrap" their way to standing for their BMD allegations. Georgia's transition to the new BMD system creates a stopgap that necessarily limits Plaintiffs' ability to demonstrate that there is a real or immediate threat of prospective injury as to that new system. Accordingly, because Plaintiffs'

theory of prospective harm relies on a string of speculative actions, their

claims regarding the BMDs do not reach the level of imminence required to

confer standing on a plaintiff seeking injunctive and declaratory relief in

federal court. *See Heindel v. Andino*, 359 F. Supp. 3d 341, 358 (D. S.C. 2019);

*Shelby County Advocates for Valid Elections v. Hargett*, 2019 WL 4394754

(W.D. Tenn. Sep. 13, 2019).

   B. <u>Plaintiffs' claims are neither fairly traceable to Defendants nor</u>
   <u>redressable by this Court.</u>

   Plaintiffs also cannot "fairly trace" their injury to State Defendants, nor

is their injury likely to be redressed by a favorable decision in this case.

Traceability is established if it is "likely that the injury was caused by the

conduct complained of and not by the independent action of some third party

not before the court." *Friends of the Earth, Inc. v. Gaston Copper Recycling*

*Corp.*, 204 F. 3d 149, 154 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 561). An

injury is redressable if it is "likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

   Plaintiffs' BMD allegations make plain that, to the extent any injuries

arise, those injuries are the result of *third-party actions*, not the actions of

State Defendants. The theoretical hacking, potential auditing issues, and

27

hypothetical bar-code problems could be traced either to illegal hacking by third parties; improper conduct by election officials; or voters' failures to verify their paper ballots—not the State of Georgia's implementation of BMDs. Optical scanners record a BMD-marked ballot in the exact same manner as a hand-marked ballot, and it is only interference from third parties that creates any potential constitutional injury to Plaintiffs. For this same reason, Plaintiffs also cannot show redressability, because the same concerns allegedly associated with BMDs (lack of audits, hacking, and interference from election officials) are present in Plaintiffs' requested relief. Plaintiffs' speculation that their preferred balloting system would eliminate potential third-party interference ignores the reality "that the possibility of electoral fraud can never be *completely* eliminated, no matter which type of ballot is used." *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003) (emphasis in original). Accordingly, Plaintiffs' claims regarding the BMDs should be dismissed for lack of standing.

IV.   **Immunity bars Curling Plaintiffs' declaratory judgment claim; regardless, a Georgia court is the proper forum for this claim.**

Curling Plaintiffs, in their Amended Complaint, request a declaratory judgment from this Court "that the Proposed Election System violates Act No. 24, H.B. 316." [Doc. 627 ¶ 140]. The Eleventh Amendment and sovereign

28

immunity bar this claim, however. Even if the Court determines that immunity does not bar Curling Plaintiffs' claim, the proper forum for Curling Plaintiffs' declaratory judgment claim is in Georgia's state courts. Curling Plaintiffs' declaratory judgment claim must be dismissed.

A. <u>The Eleventh Amendment and sovereign immunity bar Curling Plaintiffs' declaratory judgment claim.</u>

Curling Plaintiffs' declaratory judgment claim is barred by the Eleventh Amendment. The claim is one against the State of Georgia and is premised on an alleged violation of state—not federal—law, and thus does not fall within the *Ex Parte Young* exception. Moreover, "sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment," *Alden v. Maine*, 527 U.S. 706, 713 (1999), therefore regardless of the text and thrust of the Eleventh Amendment itself, the sovereign immunity of the state bars Plaintiffs' claim here.

The Eleventh Amendment generally bars claims against the State Defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). While *Ex Parte Young* provides for an exception to Eleventh Amendment immunity, it does so only for prospective injunctive relief grounded in a violation of *federal* law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984). This is for good reason: "*Ex Parte*

*Young* was the culmination of efforts by [the] Court to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere in the Constitution." *Pennhurst*, 465 U.S. at 105 (quoting *Perez v. Ledesma*, 401 U.S. 82, 106 (1971) (Brennan, J., concurring in part and dissenting in part)). In other words, "the *Young* doctrine rests on the need to promote the vindication of *federal* rights," and is "inapplicable in a suit against state officials on the basis of *state* law." *Id.* at 105–106 (emphasis added).

Similar to the claim at issue in *Pennhurst*, Curling Plaintiffs' declaratory judgment claim has no basis in federal law and thus satisfies neither the confines of precedent nor the purpose of *Ex Parte Young*. In *Pennhurst*, the plaintiffs' claims before the Supreme Court rested entirely on state law—the Third Circuit had applied *Ex Parte Young* to enforce an injunction against the defendants for a pendent state law claim. 465 U.S. at 95–96. The Supreme Court reversed, noting that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law" and therefore holding that *Ex Parte Young* is "inapplicable in a suit against state officials on the basis of state law." *Id.* at 106. Just as the claims before the Supreme Court in *Pennhurst* had no basis in federal law, Plaintiffs' declaratory

30

judgment claim also vindicates no federal right. Instead, Count V of Curling
Plaintiffs' Amended Complaint focuses only on the text of Act No. 24, H.B.
316, and arguments regarding the Proposed Elections System's compliance
with that *state* law. Accordingly, Curling Plaintiffs' declaratory judgment
claim must be dismissed.

Since *Ex Parte Young* is inapplicable, the sovereign immunity of the
state will operate to bar Plaintiffs' declaratory judgment claim absent some
other congressional abrogation of that immunity or waiver by the state.
There is simply no congressional abrogation applicable to this claim. Curling
Plaintiffs identify no congressional abrogation, and no congressional act is
applicable because, again, the claim is rooted only in state law. *Seminole
Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Green v. Mansour*,
474 64, 68 (1985)).

A state's consent to suit and waiver of its sovereign immunity is subject
to a stringent test; it must be unequivocally expressed in the text of the
relevant statute and may not be implied. *Sossamon v. Texas*, 563 U.S. 277,
284 (2011). The Supreme Court has noted that "'[o]nly by requiring this clear
declaration' by the State can we be 'certain that the State in fact consents to
suit.'" *Id.* (citing *College Savings Bank v. Florida Postsecondary Ed. Expense
Bd.*, 527 U.S. 666, 675 (1999)).

Here, no waiver of immunity exists. The "sweep of sovereign immunity under the Georgia Constitution is broad." *Olvera v. University System of Georgia Bd. of Regents*, 298 Ga. 425, 426 (2016). Pursuant to Ga. Const. Art. I, Sec. II, Para IX(e), "only the General Assembly has the authority to waive the State's sovereign immunity." *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc*, 294 Ga. 593, 599 (2014). That the claim is for declaratory relief, as opposed to damages, does not prevent the application of sovereign immunity. *See Olvera*, 298 Ga. at 426–427. Nor does it make a difference that the claim is alleged against State Defendants in their official capacities. *See Lathrop v. Deal*, 301 Ga. 408 (2017). Under Georgia law, any waiver of immunity by the State must be present in the State Constitution itself or be provided by an act of the General Assembly. *Lathrop*, 301 Ga. at 425 (quoting *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2015)). Simply put, no waiver exists for Plaintiffs' claim under the Georgia Constitution or Official Code of Georgia.[18]

---

[18] Removal to federal court provides no basis for waiver either. *See Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013) (explaining that even where consent to *forum* may exist, a state can still retain its sovereign immunity).

B. <u>The proper forum for Curling Plaintiffs' declaratory judgment claim is in Georgia state courts, not this Court.</u>

Even if the Court decides immunity does not bar the declaratory judgment claim, Curling Plaintiffs' claim can find a jurisdictional fit in this Court only as a matter of the Court's supplemental jurisdiction. The claim asserts no issues arising under federal law and there is no diversity of the parties, which confers jurisdiction only where the Court otherwise has original jurisdiction. Accordingly, since Plaintiffs' other claims conferring original jurisdiction must be dismissed, the Court lacks subject matter jurisdiction over Curling Plaintiffs' declaratory judgment claim. 28 U.S.C. § 1367(c)(3); *see also L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984). Moreover, even if this Court finds that supplemental jurisdiction permits consideration of this claim, the State's sovereign immunity still necessitates its dismissal. *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541–42 (2002) (holding supplemental jurisdiction does not abrogate Eleventh-Amendment immunity).

## V. **Plaintiffs' requested relief violates federal law.**

Both Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act prohibit discrimination against people with disabilities. Title II of the ADA provides that "no qualified individual

with a disability shall by reason of such disability be excluded from
participation in or denied the benefits of the services, programs, or activities
of a public entity, or be subjected to discrimination by any such entity." 42
U.S.C. § 12132. In enacting the ADA, Congress concluded that there was a
"compelling need" for a "clear and comprehensive national mandate" to both
eliminate discrimination and to integrate disabled individuals into the social
mainstream of American life. 42 U.S.C. § 12101(a)(5).

   The Help America Vote Act ("HAVA") also requires the state to provide
persons with disabilities access to voting technology that provides them with
the means to vote in private and independently "through the use of at least
one direct recording electronic voting system or other voting system equipped
for individuals with disabilities at each polling place." 52 U.S.C. §
21081(a)(3). These federal laws require that disabled individuals receive an
opportunity to participate that is equal to that afforded to others. *See Nat'l
Federation of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016); *see also*
28 C.F.R. § 35.130(b)(1)(ii). Specific to elections, requiring blind and visually
impaired individuals to vote with the assistance of a third party, for example,
at best provides these individuals with a voting experience not equal to that
afforded others. *Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d
1229, 1239 (N.D. Cal. 2013); *see also Lamone*, 813 F.3d at 506.

Here, Plaintiffs' legal theory is that any use of BMDs by the general public is unconstitutional and necessitates this Court's intervention. Purporting to account for protections for disabled voters, Plaintiffs call for hand-marked ballots with one BMD at each precinct for use by disabled individuals. Plaintiffs requested relief thus requires this Court to force some of our country's most vulnerable voters to use a voting system the Court has deemed unconstitutional. At minimum, Plaintiffs' theory would run afoul of HAVA and ADA, requiring the Georgia's disabled voters, relegated to a position of "political powerlessness in our society," *Tennessee v. Lane*, 541 U.S. 509, 516 (2004), a sharply disparate means of voting that Plaintiffs claim would place those voters' actual votes and private information at risk of harm. At its worst, Plaintiffs' theory asserts that it is permissible for disabled voters to use an unconstitutional elections system that is insufficient for the general populace, raising obvious Equal Protection Clause concerns.

Respectfully submitted, this 25th day of October, 2019.

> */s/ Vincent R. Russo*
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Carey A. Miller
> Georgia Bar No. 976240

cmiller@robbinsfirm.com
Kimberly Anderson
Georgia Bar No. 602807
kanderson@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250


Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678)336-7249

*Counsel for State Defendants*