# EXHIBIT 81

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONNA CURLING, *et al.*, | : | |
| Plaintiffs, | : : : | |
| v. | : : | CIVIL ACTION NO. 1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, *et al.*, | : : | |
| Defendants. | : | |

**ORDER**

In this case, Plaintiffs challenge the constitutionality of the State of Georgia's electronic voting machines and associated software and voting data systems and their implementation. Now in the third act of this dispute at the center of Georgia's elections, though the voting machines at issue are new, the parties' legal positions remain essentially unchanged. Plaintiffs have filed their third round of Motions for Preliminary Injunction [Docs. 619, 640] seeking again to bar the use of voting machines and require hand-marked paper ballots.

I.  **BACKGROUND**

   A.  **Act One**

When this case was filed in 2017, Plaintiffs' claims targeted Georgia's use of Direct Recording Electronic voting machines ("DREs") and highlighted significant security flaws in the State's Global Election Management Systems ("GEMS") servers and online voter registration database. In the late summer of 2018, the

### B.     Act Two

On April 2, 2019, the Governor of Georgia approved HB 316, the newly enacted state election legislation to replace the statewide mandated use of DREs with electronic ballot-marking devices ("BMDs") and optical scanners.[2]

Shortly after, Plaintiffs renewed their requests for a preliminary injunction. Plaintiffs again sought to enjoin the use of the DRE/GEMS voting system,[3] require hand-marked paper ballots, require post-election audits, and other relief related to the State's electronic pollbook and related computer systems in advance of the November 2019 local/municipal election cycle. The Court heard evidence on Plaintiffs' motions for two days on July 25 and 26, 2019.

On August 15, 2019, the Court entered an Order on Plaintiffs' renewed motions for preliminary injunction. The Court explained in a detailed order how Plaintiffs' new motions presented testimony manifesting a catalogue of pervasive voting problems arising in the 2017-2018 election period that compounded and expanded the evidence established in the September 2018 preliminary injunction record compiled before the November 2018 general election. Plaintiffs, the Court found, marshaled a mountain of evidence demonstrating the burdens to the voting process and to the casting of a secure, reliable, counted ballot that some portion of

---

[2] Georgia Act No. 24, Georgia House Bill 316, amending Chapter 2 of Title 21 of the Official Code of Georgia Annotated.

[3] The Court uses the term "DRE/GEMS voting system" as a short hand reference to describe the DRE voting machines and memory cards and the associated Global Election Management System ("GEMS") software, servers, and computers used to build ballots, program the DREs, and tally the vote results.

3

voters across Georgia, including Plaintiffs, had experienced as a result of the State's continued use of voting equipment, software, hardware, election and voter databases, that were demonstrably shown to be antiquated, seriously flawed, and vulnerable to failure, breach, contamination, and attack.

In issuing its ruling, this Court noted the complicated posture of the case in reviewing Plaintiffs' challenge to the GEMS/DRE system in the context of the State's recent passage of new legislation requiring the Secretary of State to implement prospectively "as soon as possible" an entirely new voting system to replace the existing DRE/GEMS. *See* O.C.G.A. § 21-2-300(a)(2). The Court found that it was bound to defer to the electoral machinery and processes chosen by the Legislature in HB 316 for prompt implementation as planned for the upcoming 2020 elections, expressly noting that the adequacy of the newly chosen BMD election system was not then before the Court. Based on this unique set of circumstances, the Court again declined to order the State to switch to hand-marked paper ballots for what would essentially be a single, limited election cycle before the State's planned transition to BMDs for the next major statewide elections in 2020.

But the Court also prohibited any continued use of the GEMS/DRE system past the completion of the 2019 election cycle and ordered the State to develop a backup plan other than the DRE/GEMS system in the event of incomplete rollout

**IT IS SO ORDERED** this 7th day of August, 2020.

_____
**Amy Totenberg**
**United States District Judge**