# EXHIBIT 99

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## COALITION PLAINTIFFS'
## EXPERT DISCLOSURES – OPENING REPORTS

Pursuant to Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Order, Plaintiff Coalition for Good Governance and Plaintiffs William Digges III, Laura Digges, Ricardo Davis & Megan Missett ("Coalition Plaintiffs") hereby disclose the following Experts' Opening Reports ("Reports"):

1. Declaration of Duncan Buell, attached hereto as Exhibit "A";

2. Declaration of Harri Hursti, attached hereto as Exhibit "B";

3. Affidavit of Logan Lamb, attached hereto as Exhibit "C";

4. Declaration of Kevin Skoglund, attached hereto as Exhibit "D"; and

5. Declaration of Philip B. Start, attached hereto as Exhibit "E".

Coalition Plaintiffs further state that the referenced Reports will be supplemented by further expert opinions that will be forthcoming as soon as possible

after Defendants have produced the numerous requested, but currently overdue and

outstanding, discovery responses that are required by Coalition Plaintiffs' experts in

order to formulate those forthcoming opinions.

This 1ˢᵗ day of July, 2021.

*/s/ Bruce P. Brown*                           */s/ Robert A. McGuire, III*
Bruce P. Brown                                 Robert A. McGuire, III
Georgia Bar No. 064460                         Admitted Pro Hac Vice
BRUCE P. BROWN LAW LLC                           (ECF No. 125)
1123 Zonolite Rd. NE                           ROBERT MCGUIRE LAW FIRM
Suite 6                                        113 Cherry St. #86685
Atlanta, Georgia 30306                         Seattle, Washington 98104-2205
(404) 881-0700                                 (253) 267-8530


*Counsel for Coalition for Good Governance*


*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

2

Case 1:17-cv-02989-AT   Document 1630-49   Filed 02/13/23   Page 4 of 12

Case 1:17-cv-02989-AT   Document 1375-1   Filed 09/25/20   Page 23 of 282
Case 1:17-cv-02989-AT   Document 958-2   Filed 09/21/20   Page 2 of 282

## SUPPLEMENTAL DECLARATION OF HARRI HURSTI

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

1.      My name is Harri Hursti.  I am over the age of 21 and competent to give this testimony.  The facts stated in this declaration are based on my personal knowledge, unless stated otherwise.

2.      My background and qualifications in voting system cybersecurity are set forth in my December 16, 2019 declaration.  (Doc. 680-1, pages 37 *et seq*).  I stand by everything in that declaration, my August 21, 2020 declaration.  (Doc. 800-2), and my August 24, 2020 declaration (Doc. 809-3)

**Responses to State's Assertions**

1.      While the State attempts to minimize my experience with the Dominion Voting System used in Georgia, there are only a few independent voting system researchers with more hands-on experience than I have with key components of the Dominion Voting System elements. To my knowledge, no jurisdiction has permitted, and Dominion has not permitted, independent research, academic or otherwise, to be conducted on its systems, which greatly limits the number of people with any experience with the Dominion system.

material, dynamic settings for brightness and contrast were developed to "wash out" the defects caused by copying, like white background not being white and black not being black and a variety of speckles that appear across the paper. In essence, the goal is to make the text easier to read by the human eye by removing anomalies and weaker markings. When this kind of techniques are applied and then the image converted to black-or-white pixels, the image becomes brittle, and intentional markings being lost.

17.     While this process is useful for making text on this page easier to read, it can degrade human markings on a ballot. The human brain with the experience recognizes the markings better, when excess markings are removed – in contrast, Dominion software utilizes no intelligence and merely tries to calculate a value to make the determination. Therefore, this family of image enhancement features is not compatible with the approach chosen by the developers of the Dominion system.

18.     Excerpts of the ballot vote targets in the Exhibit A are not degenerated as result of production for this document. These are degenerated this way in the original images obtained from Fulton County. While it is unclear what caused the failure to scan the vote target identically from identical sources, this kind of quality difference between documents is typical for dynamically adjusting

8

parameters. When the input material is not uniform, it cannot be measured in later process with fixed thresholds.

### Fulton County Election Preparation Center August 25 observations

19.     I visited the Fulton County Election Preparation Center ("EPC") on August 25 from 10:50am to approximately 5pm. I had visited the Center multiple times and am generally familiar with their equipment configuration.

20.     I was at EPC to conduct scanner testing using the original voter marked ballots that were rejected for scanning and hand duplicated in the June 9, 2020 election, as agreed with Fulton County in the discovery process. I was accompanied by Marilyn Marks and later in the afternoon by Rhonda Martin, of Coalition for Good Governance.

21.     The Dominion technician (Dominic) had full operating control of the system as he had before during my visits on August 11 and August 17. Fulton County employees seem to have little to do with operating the server component of the system and little familiarity with it.

22.     The failure of accountable election officials to have direct control of the voting system with proper administrative controls that prevent vendors and third parties from accessing the system is a troubling sign to voting system security

9

49.     The State Defendants seem to misunderstand the importance of basic functional Logic and Accuracy testing of voting machines.  The BMD touchscreens, printers and scanners are all easily hacked and subject to erroneous ballot building and malfunction and should not be deployed into the polling places until each machine has been tested for its ability to accurately register a vote for each candidate in each race and to register an undervote in each contest. The system is far too unreliable to conduct sample counts testing as little as a vote for one candidate for an entire precinct's machines.

50.     Although Mr. Chris Harvey said in his declaration (Doc 834-3 ¶¶6-7) that testing all choices on all machines is "overly burdensome and unnecessary because it would require creating and printing" an extremely large test deck. The size of a test deck would rarely be unwieldy, but more importantly, BMDs require testing at minimum level of casting a vote for each position for each race.  The cost of such inconvenience and labor expense for standard Logic and Accuracy Testing of BMDs should be factored into the purchase decision, and not shortcut after the fact, furthering diminishing the security of the system.

This 1st day of September, 2020.

Harri Hursti

17

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al. ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION FILE NO.: |
| BRIAN P. KEMP, et al. ) | 1:17-cv-2989-AT |
| Defendant. ) | |
| ) | |

## DECLARATION OF PHILIP B. STARK

**PHILIP B. STARK** hereby declares as follows:

### Qualifications and Background

1. I am Professor of Statistics and Associate Dean of Mathematical and Physical Sciences at the University of California, Berkeley, where I am also a faculty member in the Graduate Program in Computational Data Science and Engineering; a co-investigator at the Berkeley Institute for Data Science; principal investigator of the Consortium for Data Analytics in Risk; director of Berkeley Open Source Food; and affiliated faculty of the Simons Institute for the Theory of Computing, the Theoretical Astrophysics Center, and the Berkeley Food Institute. Previously, I was Chair of the Department of Statistics and Director of the Statistical Computing Facility.

2. I have published more than one hundred and ninety articles and books. I have served on the editorial boards of archival journals in physical science, Applied Mathematics, Computer

5.  I have been an expert witness or non-testifying expert in a variety of state and federal cases, for plaintiffs and for defendants, in criminal matters and a range of civil matters, including, *inter alia*: truth in advertising, antitrust, construction defects, consumer class actions, credit risk, disaster relief, elections, employment discrimination, environmental protection, equal protection, fairness in lending, federal legislation, First Amendment, import restrictions, insurance, intellectual property, jury selection, mortgage-backed securities, natural resources, product liability class actions, *qui tam*, risk assessment, toxic tort class actions, trade secrets, utilities, and wage and hour class actions. Much of that work concerned statistical sampling and extrapolation.

6.  I have been qualified as an expert on statistics in federal courts, including the Central District of California, the District of Maryland, the Southern District of New York, and the Eastern District of Pennsylvania.

7.  I have also been qualified as an expert on statistics in state courts.

8.  I have used statistics to address a wide range of questions in many fields.[1]

9.  I served on former California Secretary of State Debra Bowen's Post-Election Audit Standards Working Group in 2007.

10. In 2007, I invented a statistical approach to auditing elections ("risk-limiting audits") that has been incorporated into statutes in California (AB 2023, SB 360, AB 44, AB 2125), Colorado (C.R.S. 1-7-515), and Rhode Island (RI Gen L §17-19-37.4 (2017)), and which were recently

---

[1] For example, I have used statistics to analyze the Big Bang, the interior structure of the Earth and Sun, the risk of large earthquakes, the reliability of clinical trials, the accuracy of election results, the accuracy of the U.S. Census, the risk of consumer credit default, the causes of geriatric hearing loss, the effectiveness of water treatment, the fragility of ecological food webs, risks to protected species, the effectiveness of Internet content filters, high-energy particle physics data, and the reliability of models of climate, among other things.

proposed in federal legislation (the PAVE Act of 2018). RLAs have been tested in California, Colorado, Indiana, Ohio, Virginia, and Denmark.

11. RLAs are widely viewed as the best way to check the accuracy of vote tabulation. They have been endorsed by the Presidential Commission on Election Administration, the National Academy of Sciences report "Securing the Vote: Protecting American Democracy," the American Statistical Association, the League of Women Voters, Verified Voting Foundation, Citizens for Election Integrity Minnesota, and other groups concerned with election integrity.

12. I have worked closely with state and local election officials in California and Colorado to pilot and deploy RLAs. The software Colorado uses to conduct RLAs is based on software I wrote.

13. I worked with Travis County, Texas, on the design of STAR-Vote, an auditable and end-to-end cryptographically verifiable voting system.

14. I testified as an expert witness in the general area of election integrity, including the reliability of voting equipment, in 2016 presidential candidate Jill Stein's recount suit in Wisconsin, and filed a report in her suit in Michigan.

15. I have testified as an expert in election auditing and the accuracy of election results in two election-related lawsuits in California.

16. I have testified to both houses of the California legislature regarding election integrity and election audits. I have testified to the California Little Hoover Commission about election integrity, voting equipment, and election audits.

17. Since 1988, I have taught statistics at the University of California, Berkeley, one of the top two statistics departments in the world (see, e.g., QS World University Rankings, 2014) and the nation (US News and World Reports, 2014). I teach statistics regularly at the

53. The audit sample must not be predictable before the audit starts. Public trust in audits may be increased if the public participates in generating "seed" for selecting the sample. In Colorado, for instance, the "seed" is generated in a broadcast, public ceremony in which 10-sided dice are rolled 20 times, with public participation.

54. Auditing cross-jurisdictional contests requires contest-level results (not merely county-level results) to be known before the audit can conclude. It also requires coordinating the sampling in different counties, so that each county knows when its portion of the audit can stop.

55. I recommend that starting with the 2018 mid-term election, Georgia conduct ballot-polling RLAs of all countywide, statewide, and federal contests, using a risk limit no larger than 5 percent. I recommend that other contests be audited "opportunistically" as described in paragraph 52, *supra.* I believe this is feasible and affordable, but there is no time to waste: the process for establishing the guidelines and procedures must start immediately.

56. A number of non-partisan, non-profit organizations are ready and able to assist Georgia in implementing post-election audits, including Verified Voting Foundation. The U.S. Election Assistance Commission also has staff with extensive experience with RLAs.

57. Although ballot-polling RLAs are not particularly costly, I understand that federal HAVA funds recently granted to Georgia could be used to implement post-election audits, presumably including the cost of monitoring the audits and reporting the results to this Court.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this date, 9 September 2018.

Philip B. Stark