# EXHIBIT 121

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| DONNA CURLING, et al.,                    ) | |
| )  | |
| Plaintiff,              ) | CIVIL ACTION FILE |
| )  | |
| vs.                                               ) | NO. 1:17-cv-2989-AT |
| )  | |
| BRAD RAFFENSPERGER, et al.,    ) | |
| )  | |
| Defendant.            ) | |
| )  | |

## STATE DEFENDANTS' OBJECTIONS AND RESPONSES TO CURLING PLAINTIFFS' FIRST SET OF INTERROGATORIES

State Defendants, Brad Raffensperger, in his official capacity as Secretary of

State of Georgia and as Chair of the State Election Board of Georgia, and David

Worley, Rebecca Sullivan, Le Ahn, and Seth Harp ("State Defendants")

hereby respond through counsel of record to Curling Plaintiffs' ("Curling

Plaintiffs" or "Plaintiffs") First Set of Interrogatories as follows:

**Exhibit**
**0005**

## RESPONSES AND OBJECTIONS TO INTERROGATORIES[1]

**Interrogatory No. 1:**

List all DRE Machines in the State of Georgia, identifying the following:

a) Manufacturer and model;

b) Serial number;

c) Each election used;

d) Software version used in each election; and

e) Voting precincts used.

**Response To Interrogatory No. 1:**

State Defendants object to this Interrogatory as overly broad, unduly burdensome, and because it seeks information irrelevant to the issues in this case. Accordingly, the Interrogatory places a burden on State Defendants that is disproportionate to any benefit the discovery might provide to Curling Plaintiffs.

Subject to and without waiving the foregoing objections, State Defendants state that all DREs use Ballot Station version 4.5.2! software and all GEMS computers use version 1.18.22G!. In lieu of further response, please see documents produced by State Defendants in response to Request No. 11 of Curling Plaintiffs'

---

[1] As Curling Plaintiffs have incorporated by reference the definitions and terms used in their First Requests for Production of Documents, State Defendants similarly incorporate by reference their objections to the overly broad and vague terms "Election System," "Security Vulnerability," and "Security Breach" as stated in their responses thereto.

Requests for Production of Documents, which will be produced either in conjunction with these responses or as soon as practicably possible thereafter. State Defendants do not possess information regarding the elections or precincts in which individual DREs were used. DRE recap sheets, which indicate by serial number the DREs used in particular Counties, are filled out by Counties and are not maintained by the Secretary of State's office but rather filed with the Georgia Archives for long-term storage.

**Interrogatory No. 2:**

Describe with specificity each known, attempted, or suspected Security Vulnerability or Security Breach involving any part of the Election System since Georgia adopted and implemented DREs, including describing with specificity any and all types of all information accessed, exposed, lost, altered, modified, manipulated, deleted, taken, copied, or stolen, or otherwise affected as a result of any such Security Vulnerability or Security Breach.

**Response To Interrogatory No. 2:**

State Defendants object to this Interrogatory as it seeks confidential information, trade secrets, sensitive election security information, and/or state secrets. State Defendants also object to this Interrogatory as vague and overly broad because it seeks documents outside the scope of the claims and defenses in this case through Plaintiffs' use of the defined terms "Election System," "Security

Breach," and "Security Vulnerability." State Defendants further object to the Request to the extent it seeks documents subject to attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the foregoing objection, State Defendants state that the incident involving the Kennesaw State University ("KSU") web server and the hacking attempt by Logan Lamb, information regarding both of which is already well known to Curling Plaintiffs, are the only incidents responsive to this interrogatory.2 In lieu of further response, please see documents produced in response to Requests Nos. 1 and 4-7 of Curling Plaintiffs' First Requests for Production of Documents, and the deposition testimony of Michael Barnes.

**Interrogatory No. 3:**

Identify the date, purpose of, entities, and individuals who performed maintenance, upgrades, replacement, repurposing, repairs, remedial measures, updates, patches, and/or decommissioning of any and all software or hardware for DREs, Electronic Pollbooks, Optical Scanners, Memory Cards, Voter Access Cards, and GEMS servers that are, or have been at any point since Georgia adopted and implemented DREs, part of the Election System.

---

2 State Defendants note that the failed hack by the Democratic Party of Georgia on the Secretary of State's Online Voter Registration System and My Voter Page occurred in early November 2018. This incident is outside the scope of the claims and defenses at issue in this case, and thus is not subject to discovery under Federal Rule of Civil Procedure 26.

**<u>Response To Interrogatory No. 3:</u>**

State Defendants object to this Request as vague and overly broad because it seeks documents outside the scope of the claims and defenses in this case through Plaintiffs' use of the defined terms "Election System." State Defendants also object to this Interrogatory as overly broad, unduly burdensome, and because it seeks information irrelevant to the issues in this case. Accordingly, the Interrogatory places a burden on State Defendants that is disproportionate to any benefit the discovery might provide to Curling Plaintiffs.

Subject to and without waiving the foregoing objection, State Defendants state that while numerous security upgrades have been made from a physical security and access perspective since and before the incident at KSU, the software on GEMS, DRE, ExpressPoll, and Optical Scan machines was last updated in 2011. An update to the TSX units occurred in 2015 to resolve a printer issue.

In lieu of further response, please see documents produced by State Defendants in response to Request No. 11 of Curling Plaintiffs' Requests for Production of Documents, which will be produced either in conjunction with these responses or as soon as practicably possible thereafter, and the Declaration of Merritt Beaver filed with State Defendants' Response to Plaintiffs' Motions for Preliminary Injunction. [Doc. 472-2].

**Interrogatory No. 4:**

Describe with specificity all efforts, including each process and procedure, undertaken to assess, evaluate, test, or audit the security and functionality of the Election System, including DREs, Electronic Pollbooks, Optical Scanners, Memory Cards, Voter Access Cards, and GEMS servers, since Georgia adopted and implemented DREs, including the result, conclusions, or findings of any such effort and the identity of each entity or individual involved and their respective roles and responsibilities.

**Response To Interrogatory No. 4:**

State Defendants object to this Interrogatory as the phrase "all efforts, including each process and procedure, undertaken to assess, evaluate, test, or audit the security and functionality . . ." is vague and overly broad and because it seeks information outside the scope of the claims and defenses in this case through Curling Plaintiffs' use of the defined term "Election System."

Subject to and without waiving the foregoing objections, State Defendants state that the Secretary of State's office has conducted parallel testing of DREs on numerous occasions since at least 2004 including, but not limited to, on December 4, 2018 in Fulton and Ben Hill Counties; November 6, 2018 in Fulton and DeKalb Counties; July 24, 2018 in Fulton County; and May 22, 2018 in Fulton County. No vote count anomalies were encountered during these tests; the results produced

were in line with the results in the test deck.  The State's parallel testing has never

indicated any anomalies between what was entered and what was counted and

reported back by the DREs. Following the 2018 general election, the Secretary of

State also conducted a further review and analysis of DRE units in Ben Hill

County. No anomalies were found. Counties also conduct Logic & Accuracy

testing of machines prior to each use. The Secretary of State's office also

conducted a reexamination of the system in 2017.

In addition, and in lieu of further response, please see documents produced

in response to Request No. 1 of Curling Defendants' Requests for Production of

Documents.

**Interrogatory No. 5:**

Describe with specificity each action You took in response to or otherwise

prompted by or related to any suspected, attempted, or actual Security Breach of

any part of the Election System since Georgia adopted and implemented DREs,

including how each such action complied with or did not comply with any

applicable policy and what each policy states or provides.

**Response To Interrogatory No. 5:**

State Defendants object to this Interrogatory as the phrase "each action You

took in response to or otherwise prompted by or related to any suspected,

attempted, or actual . . ." is vague and overly broad because it seeks information

outside the scope of the claims and defenses in this case through Curling Plaintiffs'
use of the defined terms "Election System" and "Security Breach."

Subject to and without waiving the foregoing objections, and in lieu of
further response, please see the deposition testimony of Michael Barnes and the
Declarations of Merritt Beaver and Theresa Payton filed with State Defendants'
Response to Plaintiffs' Motions for Preliminary Injunction. [Docs. 472-2; 472-3].

**Interrogatory No. 6:**

Describe with specificity each alternative system, software, or hardware You
considered to the use of the elections.kennesaw.edu server or any other similarly
centralized election data preparation and/or distribution system, each reason You
rejected each such alternative, when each such consideration and decision
occurred, and the name, role(s), and responsibility(ies) of each entity or individual
involved in or consulted regarding each such consideration or decision.

**Response To Interrogatory No. 6:**

State Defendants object to this Interrogatory as the phrase "similarly
centralized election data preparation and/or distribution system," as used by
Curling Plaintiffs, is vague and confusing. Centralized data preparation, such as
GEMs, is separate and distinct from the elections.kennesaw.edu server.

Subject to and without waiving the foregoing objection, State Defendants
state that after the March 2017 incident, all operations for moving data

electronically to the counties was transitioned to a newly built, SOS-maintained system. For GEMS databases, the Secretary of State's office considered hand delivery of databases but determined that was not feasible for a statewide election, so a new system that requires verification by each county prior to the County receiving the encryption code was put into place. For Express Poll, the Secretary of State's office considered and adopted moving to locked bags that require a key to open, and the key is only in the possession of that County. For training materials and bulk updates as were on "elections.kennesaw.edu" server, the Secretary of State's office considered and adopted moving to a FTPS file sharing protocol.

Please also see the Declaration of Merritt Beaver filed with State Defendants' Response to Plaintiffs' Motions for Preliminary Injunction. [Doc. 472-2].

**Interrogatory No. 7:**

Describe with specificity each alternative system, software, or hardware You considered, adopted, or implemented to supplement or replace the use of any or all DREs, Optical Scanners, and GEMS products involving electronic voting in the State of Georgia; when each such consideration, adoption, or implementation occurred; and the name, role(s), and responsibility(ies) of each entity or individual involved in or consulted regarding each such consideration, adoption, or implementation; and each reason You rejected each such alternative that was not

adopted or implemented, and each reason You adopted or implemented any such alternative.

**Response To Interrogatory No. 7:**

State Defendants object to this Interrogatory to the extent it seeks confidential and trade secret information related to an ongoing procurement that is not subject to disclosure.

Subject to and without waiving the foregoing objection, State Defendants further state that the State is currently in the process of obtaining bids for Ballot-Marking Devices that will replace the State's DREs in the near future. To replace the State's current DREs, the State considered moving to an all ballot-marking device solution, a hybrid system that used ballot-marking devices for advance voting, and hand-marked paper for election day and absentee voting, and an all hand-marked system. For further information regarding these systems and the State's evaluation thereof, and in lieu of further response, please see documents produced in response to Requests Nos. 14 and 16 of Curling Plaintiffs' First Requests for Production of Documents.

State Defendants further state that it previously considered and adopted moving GEMs servers to virtual machines due to the lack of available hardware capable of being configured to the necessary Windows Server 2000 operating system.

10

**Interrogatory No. 8:**

Describe with specificity each process and procedure by which in-state voters and absentee voters may vote in an election in the State of Georgia using a paper ballot, including (1) each process and procedure by which any such voter may obtain such a paper ballot, and (ii) each policy, process, procedure, and cost for creating, designing, preparing, procuring, printing, handling, collecting, tallying, maintaining, storing, and auditing such paper ballots.

**Response To Interrogatory No. 8:**

State Defendants object to this Interrogatory as the phrases "process and procedure" and "policy, process, procedure, and cost for creating, designing, preparing, procuring, printing, handling, collecting, tallying, maintaining, storing, and auditing…" as used by Curling Plaintiffs, are vague and confusing.

Subject to and without waiving the foregoing objections, State Defendants state that for County, State, and Federal elections, hand-marked paper ballots are used for absentee-by-mail voting. Georgia has no-excuse absentee voting. To vote absentee-by-mail, registered voters submit an application to their County and the County then mails a ballot to the voter. The voter fills out his or her ballot, seals it, places the sealed envelope in a larger envelope, and signs the oath on the back of that envelope. If the signature matches the voter's signature on file with the County, the ballot is accepted.

Hand-marked paper-ballots are also used for provisional voting. Paper provisional ballots are created utilizing the same system that is used to build ballots for DREs. Counties are in charge of proofing their ballots and printing needed ballots. Paper ballots are stored for two years following the election under seal in the County Superior Court.

If an absentee ballot is spoiled or a voter was not eligible to vote in all races on a provisional ballot, election officials must duplicate the ballot by hand using the process outlined by statute. *See* O.C.G.A. § 21-2-483.

For certain municipal elections that are not run by Counties, voters may utilize hand-marked paper ballots for all types of voting (i.e., absentee, in-person, Election Day, or provisional voting).

**Interrogatory No. 9:**

Describe with specificity each action or omission that led to the destruction, deletion, alteration, erasure, or loss of data or other information on the elections.kennesaw.edu server since March 2017 and each reason for each such action or omission, including (i) the decisions to DBAN the server, to degauss the server multiple times, and to delete, destroy, alter, modify, or erase data or other information on any back-up server; and (ii) any actions taken, attempted, or considered to try to recover any such data or other information, each reason each

such action was or was not taken, and when each such action was taken, attempted, considered, or rejected.

**Response To Interrogatory No. 9:**

The Secretary of State's office was not made aware of or consulted about, nor had it any knowledge of, that decision. After the Secretary of State learned that data had been deleted, the Secretary of State contacted the FBI and asked them to retain the image of the server and delivered a hard drive to the FBI to allow them to do so. In lieu of further response, also see the deposition testimony of Michael Barnes.

**Interrogatory No. 10:**

Describe with specificity each step You have taken to preserve potentially relevant information for this matter, including describing with specificity any attempted, suspected, or actual recovery, destruction, deletion, alteration, erasure, or loss of potentially relevant data or other information.

**Response To Interrogatory No. 10:**

All potentially relevant custodians were made aware of this litigation and asked to retain all documents related to the allegations in this and other lawsuits. The Secretary of State's IT Department was instructed to halt normal retention schedules for documents related to the allegations in this and other lawsuits. As stated above in response to Interrogatory No. 10, the Secretary of State asked the

FBI to retain an image of the KSU web server and provided a hard drive to the FBI to copy an image of the KSU web server onto.

**Interrogatory No. 11:**

Describe with specificity each step You contend would be required to implement the specific relief Curling Plaintiffs seek in their preliminary injunction motion (Dkt. No. 387), including (i) the cost of each such step and how each such cost was calculated; (ii) the identify [*sic*]of each entity or individual You contend would need to take some action to effectuate each such step, including their respective roles and responsibilities and the respective actions You contend each would need to take; (iii) the time You contend each such step would take and how each time estimate was calculated; and (iv) whether each such step would be new, meaning the same or similar step is not already taken as part of the current Election System.

**Response To Interrogatory No. 11:**

State Defendants object to this Interrogatory as overly broad, unduly burdensome, and because it seeks information irrelevant to the issues in this case because the steps required to conduct an election and so numerous and disperse that it is either impossible or practically infeasible to respond to this Interrogatory. Accordingly, the Interrogatory places a burden on State Defendants that is disproportionate to any benefit the discovery might provide to Curling Plaintiffs.

Subject to and without waiving the foregoing objections, the relief Curling Plaintiffs are seeking for elections in 2019 would be borne by the Counties and Municipalities who will be conducting elections at that time. Counties that conduct municipal elections for Municipalities would have to purchase additional paper ballots, additional scanners, ballot on-demand printers, completely redo their polling place setup, develop policies for dealing with large amounts of paper ballots in polling places, and train personnel on a new type of election system, to name only a few necessary steps. Not being able to use their existing systems may void County contracts to conduct municipal elections. Municipalities would then have to build an election system from scratch. These steps would all have to take place while the State is implementing a new system for the March 2020 elections, which will also require additional training, procurement procedures, etc.

In lieu of further response, please see State Defendants' Response to Plaintiffs' Motion for Preliminary Injunction [Dkt. 472] at 54-74.

**Interrogatory No. 12:**

Describe with specificity each step required to conduct each election in 2019 and 2020 using DREs, including (i) the cost of each such step and how each such cost was calculated; (ii) the identify [*sic*] of each entity or individual who needs to take some action to effectuate each such step, including their respective roles and

responsibilities and the respective actions each needs to take; and (iii) the time

each such step takes and how each time was determined.

**Response To Interrogatory No. 12:**

State Defendants object to this Interrogatory as overly broad, unduly

burdensome, and because it seeks information irrelevant to the issues in this case

because the steps required to conduct an election are so numerous and disperse that

it is either impossible or practically infeasible to respond to this Interrogatory. The

vast majority of these activities (other than building ballots) are conducted by

Counties and the costs are borne by Counties. Accordingly, the Interrogatory places

a burden on State Defendants that is disproportionate to any benefit the discovery

might provide to Curling Plaintiffs.

Subject to and without waiving the foregoing objections, a non-exhaustive

list of these steps would include candidate qualifying (which occurs at either the

county or municipal level for this year's elections); ballot building; ballot proofing;

ballot printing; absentee ballot application processing; preparing and mailing

absentee ballots; polling place setup; logic and accuracy testing; training County

election officials; hiring and training poll workers; preparing memory cards;

preparing electronic poll books; conducting early voting; tracking absentee voting;

conducting Election Day voting; shutting down polling places; transporting results,

tabulating ballots; processing and uploading election results; certifying vote totals;

conducting any recounts; litigating any election contests; and recertifying vote totals if necessary after recounts or contests.

Please also see the deposition testimonies of Lynn Ledford and Jennifer Doran.

**Interrogatory No. 13:**

Describe with specificity each cost incurred by the use of DREs, Optical Scanners, Memory Cards, Voter Access Cards, Electronic Pollbooks, and GEMS servers in each election in the State of Georgia, including: the acquisition of DREs; the maintenance and support (electronic and physical) of DREs, including but not limited to any software, firmware, or hardware that are part of or otherwise associated with the DREs; the acquisition of replacement parts for DREs; the storage of DREs; the transportation of DREs before and after elections, or at any other time; the set-up of DREs at polling locations for elections; the breakdown and removal of DREs from polling locations for elections; the training of anyone associated with the use of DREs; the acquisition of GEMS; the maintenance or support (electronic and physical) of any GEMS servers, including but not limited to any software, firmware, or hardware that are part of or otherwise associated with any GEMS server; the storage of GEMS servers; the training of anyone associated with the use of GEMS; software, firmware, hardware, facilities, or other resources used or needed for utilizing and securing the current Election System, including

DREs, memory cards used or otherwise compatible with any DREs, Optical Scanners, GEMs servers, Electronic Pollbooks, Voter Access Cards, voter registration database and/or system, and any modems used to communicate election results or other data used in or resulting from elections.

**Response To Interrogatory No. 13:**

State Defendants object to this Interrogatory as overly broad, unduly burdensome, and because it seeks information irrelevant to the issues in this case because the costs required are so numerous, disperse, and variable from County to County that it is either impossible or practically infeasible to respond to this Interrogatory. The costs described are largely borne by Counties. Accordingly, the Interrogatory places a burden on State Defendants that is disproportionate to any benefit the discovery might provide to Curling Plaintiffs.

Subject to and without waiving the foregoing objections, a non-exhaustive list of these costs would include storage; maintenance; transportation; and security. These costs differ based on the size of the County and are generally borne by each County Board of Elections and Registration.

**Interrogatory No. 14:**

Describe with specificity each contract, work order, and payment to any vendor that provides or supports DREs, Optical Scanners, Memory Cards, Voter

Acces Cards, Electronic Pollbooks, and GEMS servers, including but not limited to ES&S.

**Response To Interrogatory No. 14:**

In lieu of response, please see documents produced in response to Request No. 13 of Curling Plaintiffs' First Request for Production of Documents.

This 15th day of July, 2019

**Robbins Ross Alloy Belinfante Littlefield LLC**

*/s/ Vincent R. Russo*
Vincent R. Russo
Georgia Bar No.: 242628
vrusso@robbinsfirm.com
Joshua B. Belinfante
Georgia Bar No.: 047399
jbelinfante@robbinsfirm.com
Alexander F. Denton
Georgia Bar No.: 660632
adenton@robbinsfirm.com
Kimberly K. Anderson
Georgia Bar No.: 602807
kanderson@robbinsfirm.com
Carey Miller
Georgia Bar No.:  976240
cmiller@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
500 14th Street, N.W.
Atlanta, GA 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250

**TAYLOR ENGLISH DUMA LLP**
Bryan P. Tyson
GA Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 770.434.6868

*Attorneys for State Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I served a true and correct copy of the

foregoing **STATE DEFENDANTS' OBJECTIONS AND RESPONSES TO**

**CURLING PLAINTIFFS' FIRST SET OF INTERROGATORIES** on all

counsel of record by electronic mail delivery as follows:

David D. Cross
DCross@mofo.com
John Carlin
JCarlin@mofo.com
Jane P. Bentrott
JBentrott@mofo.com
Catherine L. Chapple
CChapple@mofo.com
Robert W. Manoso
RManoso@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite. 6000
Washington, DC 20006

Halsey G. Knapp, Jr.
HKnapp@khlawfirm.com
Adam M. Sparks
Sparks@khlawfirm.com
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309

Cary Ichter
Attorney for William Digges III,
Laura Digges, Ricardo Davis and
Megan Missett
ICHTER DAVIS LLC
3340 Peachtree Road NE - Suite 1530
Atlanta, Georgia 30326

Bruce P. Brown
Attorney for Coalition for
Good Governance
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE - Suite 6
Atlanta, Georgia 30306

Robert A. McGuire, III
Attorney for Coalition
for Good Governance
Robert McGuire Law Firm
113 Cherry St. #86685
Seattle, Washington 98104-2205

John Michael Powers
David Brody
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005

Kaye Burwell
David Lowman
Cheryl Ringer
OFFICE OF THE FULTON COUNTY
ATTORNEY
141 Pryor Street
Suite 4038
Atlanta, Georgia 30303


This 15th day of July, 2019.


/s/ Vincent R. Russo
Vincent Russo
Georgia Bar No.: 242628

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, *et al.*,

     *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

     *Defendants.*

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## <u>VERIFICATION FOR INTERROGATORY RESPONSE</u>

Pursuant to 28 U.S.C. § 1746, the below signatory declares under penalty of perjury that the statements contained within **STATE DEFENDANTS' OBJECTIONS AND RESPONSES TO CURLING PLAINTIFFS' FIRST SET OF INTERROGATORIES** dated July 15, 2019 were prepared with the assistance and advice of counsel and the assistance of employees of the Secretary of State's office, upon which he has relied; and are true and correct to the best of his knowledge, information, and belief.

Gabriel Sterling
Office of the Georgia Secretary of State