# EXHIBIT 125

```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION


 DONNA CURLING, ET AL.,           :
                                  :
         PLAINTIFFS,              :
 vs.                              :   DOCKET NUMBER
                                  :   1:17-CV-2989-AT
 BRAD RAFFENSPERGER, ET AL.,      :
                                  :
         DEFENDANTS.              :
```

**TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE AMY TOTENBERG**

**UNITED STATES DISTRICT JUDGE**

**OCTOBER 7, 2021**

**4:01 P.M.**

*MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

*TRANSCRIPT PRODUCED BY:*

*OFFICIAL COURT REPORTER:     SHANNON R. WELCH, RMR, CRR*
*                             2394 UNITED STATES COURTHOUSE*
*                             75 TED TURNER DRIVE, SOUTHWEST*
*                             ATLANTA, GEORGIA  30303*
*                             (404) 215-1383*

| | |
|---|---|
| 1 | Rule 33(d) allows. |
| 2 | In taking Interrogatory 15, they don't even answer |
| 3 | whether there has ever been any compromise of the system at |
| 4 | all.  And we raised that specifically in the negotiations. |
| 5 | Could we just get an up or down yes or no to that? |
| 6 | The fact that they won't answer, I think, probably |
| 7 | tells us the answer.  But we need an answer of some measure, |
| 8 | other than just saying here are a handful of documents that |
| 9 | you've got from public sources. |
| 10 | That would be our position. |
| 11 | MR. RUSSO:  Your Honor, this is Vincent Russo.  You |
| 12 | know, regarding this interrogatory and all of them, Your Honor |
| 13 | is correct that they are extremely broad.  And if you couple |
| 14 | the interrogatory requests with the definitions that the |
| 15 | plaintiffs have used in their interrogatories, the requests |
| 16 | expand exponentially to the point that, Your Honor, I don't |
| 17 | think anyone could provide a complete answer. |
| 18 | Now, it sounds like Mr. Cross is referencing |
| 19 | documents that answer those questions.  If there are others -- |
| 20 | we have produced thousands and thousands of documents.  We have |
| 21 | been going through this exercise for months.  And we are |
| 22 | hopefully at the tail end of it. |
| 23 | They have received, of course, Fortalice documents |
| 24 | from the State in the past related to Fortalice's work.  And, |
| 25 | Your Honor, I would suggest if you look at the definitions -- I |

1   know that they weren't provided because the plaintiffs didn't
2   attach their actual requests to this joint discovery statement.
3   But they are extremely broad.  And, you know, to be able to
4   describe with specificity a suspected security vulnerability at
5   that time as defined, I don't think anybody could reasonably
6   provide a response to that.
7            THE COURT:  Well, I don't have the definitions in
8   front of me, unless one of you filed it.  I see the objections
9   to them.  But I don't see the -- I don't have a definitions
10  section here.
11           MR. RUSSO:  Mr. Miller will send those to Mr. Martin.
12           THE COURT:  Okay.
13           Well, let me -- just as to Number 15, did you-all
14  attempt to meet and confer regarding how to narrow what was
15  being sought in 15 if that is -- because obviously this is a
16  more concrete one in my -- actually, even though I know that
17  the State views it as particularly broad.  But I think it is
18  certainly susceptible to being narrowed.
19           MR. CROSS:  Yes, Your Honor.  David Cross.
20           We talked about that one specifically.  You know,
21  when we received the objections, we invited them to give us a
22  proposed narrowing of each of the requests.  The reaction we
23  got was no, that they would not do that.  So that is how we are
24  where we are.
25           You know, Mr. Russo's argument, I appreciate again

1  the breadth.  But that would be a defense of an answer related
2  to an interrogatory to say, well, we did our best.  We gave you
3  a good faith response where we conducted due diligence,
4  compiled an answer, and here it is.  And now they are asking
5  for more.
6         That is not where we are.  We don't have any answers
7  to these interrogatories at all.  And we have not been able to
8  get an engagement on narrowing it down to something that they
9  would find agreeable.
10        MR. RUSSO:  Your Honor, we had a meet-and-confer with
11  Mr. Sparks.  I don't believe Mr. Cross was on that call.  And
12  if I recall, the narrowing of the request was simply to remove
13  the reference to the voter registration system as being part of
14  the current election system that is referenced in the request.
15        So, in other words, it was so broad previously that
16  it would have encompassed the voter registration system.  And
17  it was narrowed to remove that, and that was it.
18        THE COURT:  And what was plaintiffs' view as to why
19  you didn't want yourselves to propose a narrowing, having seen
20  the objections and having had that conversation?
21        MR. CROSS:  Your Honor, this is David Cross.  I think
22  the challenge we had, as we tried to explain in each of our
23  discovery disputes, is I'm not sure how we narrow it.  I mean,
24  the question for the State is what would you consider a
25  reasonable scope within the scope of the request.

1    And that is how I have litigated my entire career.
2    If somebody sends me a discovery request that I think is
3    overbroad, I'm going to come back to them and say here is what
4    I think is reasonable, this is what we're willing to answer.
5    And then you negotiate from there.
6    I'm just shooting in the dark, as Mr. Russo just
7    pointed out.  Right?  One of the ways to narrow, as Mr. Sparks
8    suggested, was, well, what if we pull out the registration
9    database.  And that was not a sufficient narrowing.
10   And it is just not a useful -- it is not a good use
11   of time for us just to offer one proposal after another in the
12   dark.
13   What really should happen is they come back and say,
14   we read your request, we think it is too broad, but here is the
15   scope that we're willing to answer.
16   And we have never gotten that.  We have invited it
17   many times.  So we just find ourselves at impasse.
18   MR. RUSSO:  Your Honor, I think this somewhat goes
19   back to the issue of taking depositions and that they could
20   simply take a 30(b)(6) and have -- and question a witness over
21   this topic.
22   Now, alternatively, of course, the plaintiffs could
23   have narrowed it -- narrowed the request to say describe each
24   breach of the system or describe a hack of the system.  We
25   haven't seen any evidence so far in this case that demonstrates

1  that the system has been -- that the BMD system has been
2  hacked, so to speak, or changed anybody's votes.
3              But there are ways to narrow it without -- that they
4  could have done if they really wanted to have a precise
5  interrogatory that the State could have answered.  But to leave
6  it as each known or attempted or suspected security
7  vulnerability or security breach is literally impossible for
8  anyone to answer.
9              THE COURT:  Well, Interrogatory 19 says identify any
10 efforts made to ensure that any actual or potential hack or
11 compromise of Georgia's GEMS DRE election system could not and
12 did not affect the current election system.  Well, that is sort
13 of dealing with a hack.  And the same sort of general
14 objection.
15             And I think there was another one that dealt with
16 asking about specific -- other than the Number 15 where we
17 started.
18             MR. RUSSO:  Your Honor, this is Vince Russo.  I'll
19 try to address that Number 19 real quickly.  The request is
20 asking the State to go back many years, not just, you know, to
21 the start of when the BMD system was put in place is one issue.
22             However, they have also received Fortalice reports,
23 reports -- Pro V&V reports, documents regarding hash values,
24 and other documents.  So they have documents that would provide
25 the information they are looking for.

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

    I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 32 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

    In testimony whereof, I hereunto set my hand on this, the 7th day of October, 2021.

_____
SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT