# EXHIBIT 151

Page 1

1           IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
2                      ATLANTA DIVISION
3    DONNA CURLING, ET AL.,       )
                                  )
4        Plaintiffs,              )
                                  )
5    vs.                          )    CIVIL ACTION NO.
                                  )
6    BRAD RAFFENSPERGER, ET       )    1:17-CV-2989-AT
     AL,                          )
7                                 )
         Defendants.              )
8
9
10
11
12
13       VIDEOTAPED 30(b)(6) DEPOSITION OF ERIC B. CHANEY
14                   (Taken by Plaintiffs)
15                    August 15, 2022
16                      10:20 a.m.
17
18
19
20
21
22
23
24
25     Reported by:   Debra M. Druzisky, CCR-B-1848

Page 35

1  Q.  Okay.  So Exhibit 4 is an official summary
2  from the Secretary of State's office about an
3  investigation involving Coffee County; is that
4  fair?
5  A.  Yes.
6  Q.  And what involvement, if any, did you have
7  with this investigation?
8  A.  None that I recall.
9  Q.  So did anybody from the State interview
10  you as a member of the board?
11  A.  Not that I recall.
12  Q.  Did anyone from the State provide a report
13  to any -- to you as a member of the board other
14  than what's written here?
15  A.  Not that I recall.
16  Q.  Okay.  So if we look at Exhibit 4, look at
17  complaint two on Page 1.  Do you see that?
18  A.  I do.
19  Q.  And it reads:
20      "A video surfaced on YouTube where
21       it showed Coffee County election
22       supervisor Misty Martin discussing the
23       ways in which the election software
24       could be manipulated."
25      Do you see that?

Page 36

1      A.   I do.
2      Q.   And Misty Martin is the same person as
3  Misty Hampton?
4      A.   Yes.
5      Q.   Okay.  So we're talking about the, at this
6  time, the Coffee County election supervisor; right?
7      A.   Yes.
8      Q.   Okay.  And are you familiar with that
9  YouTube video?
10     A.   Yes.
11     Q.   You filmed that video; right?
12     A.   Fifth Amendment.
13     Q.   The video that's referenced there, that
14 was filmed during an official meeting of the Coffee
15 County election board in the Coffee County
16 office -- election office; right?
17     A.   Fifth Amendment.
18     Q.   All right.  Turn to the third page, if you
19 would.  Do you see where it has Findings at the
20 top?
21     A.   Yes, sir.
22     Q.   And then Complaint Two referencing that
23 same complaint.  Do you see that?
24     A.   Yes.
25     Q.   And under the findings here, the State

1     reports:
2            "Ms. Martin, along with Coffee
3        County Board of Election member Eric
4        Chaney, made two videos claiming the
5        Dominion system election software
6        could be manipulated."
7            Do you see that?
8     A.   I do.
9     Q.   Do you disa -- dispute that finding?
10    A.   Fifth Amendment.
11    Q.   It then goes on, if you come to the third
12    sentence, four lines down in the middle, do you see
13    where it reads, "Ms. Martin never"?
14    A.   I do.
15    Q.   And it -- and the finding here is:
16           "Ms. Martin never once during the
17        videos explained the intended use of
18        the adjudication process.
19           "The video was very misleading and
20        seemed its purpose was simply to
21        create doubt and public mistrust in
22        the Dominion Voting System."
23           Do you see that?
24    A.   Yes.
25    Q.   Was it your purpose in creating this video

Page 55

```
 1        A.    I don't recall.
 2        Q.    Was it another member of the board?
 3        A.    There again, I don't recall.
 4        Q.    Was it counsel for the board, like, Tony
 5   Rowell?
 6        A.    I do not recall.
 7        Q.    Where is that video surveillance today?
 8        A.    I do not know.
 9        Q.    Would it surprise you to learn that Coffee
10   County claims it doesn't exist?
11        A.    There again, I don't know.
12        Q.    Did that video surveillance cover the
13   month of January 2021?
14        A.    I don't know.
15        Q.    You don't recall whether you viewed any
16   video surveillance from the elections county office
17   from January of 2021?
18        A.    I do not.
19        Q.    As a former member of the board, do you
20   have any inside information into why that video
21   surveillance would have been destroyed?
22        A.    Fifth Amendment.
23        Q.    Do you recall that, in that meeting on --
24   in February of 2021, that Ms. Hampton showed up
25   with a letter of resignation in an envelope?
```

Page 60

1  Mr. Lindell as associated with former President
2  Trump?
3       A.   Bits and pieces, I have.
4       Q.   When was Mr. Lindell in the Coffee County
5  election office?
6       A.   To my knowledge, he's never been in the
7  elections office.
8       Q.   You're not aware of Mr. Lindell being in
9  Coffee County in around February, late February or
10 early March 2021?
11      A.   No, sir.
12      Q.   What about Doug Logan?
13      A.   No recollection of the name.
14      Q.   You're not aware of Doug Logan being in
15 the Coffee County election office?
16      A.   No.
17      Q.   What about Paul Maggio?
18      A.   I don't recognize the name.
19      Q.   Not aware of him in that office?
20      A.   Not that I'm aware of.
21      Q.   What about Chris -- sorry.  What about
22 Scott Hall?
23      A.   I don't know the name.
24      Q.   Not aware of him in that office?
25      A.   No, sir.

Page 61

1    Q.   Do you know Robert Sinners?
2    A.   I know the name.
3    Q.   Who is that?
4    A.   Just an attorney in the -- I know the name
5    of Robert Sinners, but I don't know Robert Sinners.
6    Q.   He works for the Secretary of State's
7    office; right?
8    A.   No idea.
9    Q.   You don't know Robert Sinners who started
10   working for the Secretary of State's office in
11   20 -- February of 2021?
12   A.   I do not.
13   Q.   Is there a reason why you have his phone
14   number?
15   A.   As I said, I don't know Robert Sinners.  I
16   knew he's an attorney, but I don't -- past that, I
17   don't know Robert Sinners.
18   Q.   Okay. All right. Look at the meeting
19   minutes from June 8th, 2021.
20   A.   Okay.
21   Q.   I'm sorry. Before we turn to that, the
22   video surveillance that you reviewed when
23   Ms. Hampton was asked to resign, did you see in any
24   of that video anyone in the Coffee County elections
25   office that wasn't supposed to be there?

1      A.    Fifth Amendment.
2      Q.    Was that something that was discussed with
3  other members of the board or counsel?
4      A.    Fifth Amendment.
5      Q.    All right.  Take a look at the June 8,
6  2021 minutes.  Do you recall this board meeting?
7      A.    Not specifically, I do not.  No, sir.
8      Q.    Do you recall Mr. Barnes reporting to you
9  or anyone else on the board at any meeting that the
10 Secretary of State's office had come in and taken
11 the E.M.S. server and the I.C.C. that had been in
12 Coffee County?
13     A.    I vaguely remember some discussion of
14 that, but I don't remember any specific
15 information.
16     Q.    Tell me what you remember about that.
17     A.    First of all, the terms "I.C.C. scanner"
18 and -- I mean, all the -- that really doesn't --
19 that doesn't ring a -- you know, I don't even know
20 what that is, per se.
21           He just made mention that something was --
22 some of the equipment wasn't working, he contacted
23 the Secretary of State's office, as I recall, and
24 they had come -- I think, if I remember correctly,
25 they come down, they couldn't get it to work or

```
 1      A.   Yes, sir.
 2      Q.   And there are three screenshots of poll
 3 pads, three photos of poll pads that Ms. Hampton
 4 sent you.  Do you see that?
 5      A.   Yes.
 6      Q.   And on the first one she shows that the
 7 poll pad is accessing Netflix; right?
 8      A.   Yes.
 9      Q.   And on the second one, she shows that the
10 poll pad is accessing, what is she -- what is that?
11 Do you know what that is?  Some sort of games?
12           MR. DELK:  Object to the form.
13           THE WITNESS:  I'm not sure.
14 BY MR. CROSS:
15      Q.   One of the things that Ms. Hampton had
16 raised as a concern with you and others was that
17 the poll pads used in Georgia are connected to the
18 Internet; right?
19      A.   That's correct.
20      Q.   And you're aware that -- well, back up.
21           Ms. Hampton's daughter also worked for the
22 County; right?
23      A.   She did.
24      Q.   She helped with elections?
25      A.   She was employed part-time with the
```

Page 121

1     County.
2         Q.   And you're aware that, during at least one
3     election, Ms. Hampton's daughter was able to use a
4     poll pad to watch Netflix during the election;
5     right?  Ms. Hampton conveyed that to you?
6         A.   Fifth Amendment.
7         Q.   Then if you come down to the bottom,
8     there's still -- just so you can see, we're still
9     on December 30 of 2020.  That spills over to the
10    top of Page 20, and there's an additional photo.
11             So this is still December 30.  Do you see
12    that?
13        A.   Yes.
14        Q.   And there's a card game that's depicted on
15    a computer screen in that one; right?
16        A.   Yes.
17        Q.   And here Ms. Hampton wrote to you:
18             "This is the computer that the
19         I.C.C. scanner is connected to."
20             Right?
21             MR. DELK:  Object to the form.
22             THE WITNESS:  Fifth Amendment.
23    BY MR. CROSS:
24        Q.   And then she sends you another photo.  Do
25    you see that below?

Page 122

```
 1        A.    Yes.
 2        Q.    And there she writes:
 3              "This is the E.M.S. server
 4        computer."
 5              Do you see that?
 6        A.    Fifth Amendment.
 7        Q.    Then on December 31 of 2020 at 7:46 p.m.,
 8   you wrote to her:
 9              "Did you get the letter sent?"
10              Do you see that?
11        A.    Yes.
12        Q.    What letter?
13        A.    Fifth Amendment.
14        Q.    Sent to whom?
15        A.    Fifth Amendment.
16        Q.    About what?
17        A.    Fifth Amendment.
18        Q.    For what purpose?
19        A.    Fifth Amendment.
20        Q.    Who wrote it?
21        A.    Fifth Amendment.
22        Q.    What was your involvement?
23        A.    Fifth Amendment.
24        Q.    Who else was involved?
25        A.    Fifth Amendment.
```

Page 167

1  bullets that continue on to the top of the next
2  page?
3       A.   I do.
4       Q.   Are you aware of any communication by the
5  Secretary's office to the Coffee County election
6  board or anyone with responsibility for Coffee
7  County elections to ensure that any of these
8  mitigation measures were taken?
9       A.   I'm not personally aware.
10      Q.   Are you aware of any effort by Coffee
11 County to implement these mitigation measures?
12           MR. DELK:  Object to the form.
13           THE WITNESS:  I'm not aware.
14 BY MR. CROSS:
15      Q.   And you're not aware that anybody ever
16 told anyone at Coffee County they needed to
17 implement these measures; right?
18      A.   I'm not personally aware, no, sir.
19      Q.   And as a member of the Coffee County
20 election board, if mitigation measures as serious
21 as those here were being implemented in the county,
22 you would expect to have received a report on that
23 as a member of the board; right?
24           MR. DELK:  Object to the form.
25           THE WITNESS:  Can you state that

```
 1         R E P O R T E R    C E R T I F I C A T E
 2    STATE OF GEORGIA  )
      COBB COUNTY       )
 3
 4            I, Debra M. Druzisky, a Certified Court
      Reporter in and for the State of Georgia, do hereby
 5    certify:
              That prior to being examined, the witness
 6    named in the foregoing deposition was by me duly
      sworn to testify to the truth, the whole truth, and
 7    nothing but the truth;
              That said deposition was taken before me
 8    at the time and place set forth and was taken down
      by me in shorthand and thereafter reduced to
 9    computerized transcription under my direction and
      supervision.  And I hereby certify the foregoing
10    deposition is a full, true and correct transcript
      of my shorthand notes so taken.
11            Review of the transcript was requested.
      If requested, any changes made by the deponent and
12    provided to the reporter during the period allowed
      are appended hereto.
13            I further certify that I am not of kin or
      counsel to the parties in the case, and I am not in
14    the regular employ of counsel for any of the said
      parties, nor am I in any way financially interested
15    in the result of said case.
              IN WITNESS WHEREOF, I have hereunto
16    subscribed my name this 18th day of August, 2022.
17
18
19
20                        _____
                          Debra M. Druzisky
21                        Georgia CCR-B-1848
22
23
24
25
```