# EXHIBIT 151

Page 1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
2                   ATLANTA DIVISION
3    DONNA CURLING, ET AL.,        )
                                   )
4          Plaintiffs,             )
                                   )
5    vs.                           )    CIVIL ACTION NO.
                                   )
6    BRAD RAFFENSPERGER, ET        )    1:17-CV-2989-AT
     AL,                           )
7                                  )
           Defendants.            )
8
9
10
11
12
13     VIDEOTAPED 30(b)(6) DEPOSITION OF ERIC B. CHANEY
14                 (Taken by Plaintiffs)
15                  August 15, 2022
16                    10:20 a.m.
17
18
19
20
21
22
23
24
25      Reported by:   Debra M. Druzisky, CCR-B-1848

Page 35

1        Q.    Okay.  So Exhibit 4 is an official summary

2    from the Secretary of State's office about an

3    investigation involving Coffee County; is that

4    fair?

5        A.    Yes.

6        Q.    And what involvement, if any, did you have

7    with this investigation?

8        A.    None that I recall.

9        Q.    So did anybody from the State interview

10   you as a member of the board?

11       A.    Not that I recall.

12       Q.    Did anyone from the State provide a report

13   to any -- to you as a member of the board other

14   than what's written here?

15       A.    Not that I recall.

16       Q.    Okay.  So if we look at Exhibit 4, look at

17   complaint two on Page 1.  Do you see that?

18       A.    I do.

19       Q.    And it reads:

20             "A video surfaced on YouTube where

21        it showed Coffee County election

22        supervisor Misty Martin discussing the

23        ways in which the election software

24        could be manipulated."

25             Do you see that?

```
 1        A.    I do.
 2        Q.    And Misty Martin is the same person as
 3   Misty Hampton?
 4        A.    Yes.
 5        Q.    Okay.  So we're talking about the, at this
 6   time, the Coffee County election supervisor; right?
 7        A.    Yes.
 8        Q.    Okay.  And are you familiar with that
 9   YouTube video?
10        A.    Yes.
11        Q.    You filmed that video; right?
12        A.    Fifth Amendment.
13        Q.    The video that's referenced there, that
14   was filmed during an official meeting of the Coffee
15   County election board in the Coffee County
16   office -- election office; right?
17        A.    Fifth Amendment.
18        Q.    All right.  Turn to the third page, if you
19   would.  Do you see where it has Findings at the
20   top?
21        A.    Yes, sir.
22        Q.    And then Complaint Two referencing that
23   same complaint.  Do you see that?
24        A.    Yes.
25        Q.    And under the findings here, the State
```

1    reports:

2         "Ms. Martin, along with Coffee

3         County Board of Election member Eric

4         Chaney, made two videos claiming the

5         Dominion system election software

6         could be manipulated."

7         Do you see that?

8    A.   I do.

9    Q.   Do you disa -- dispute that finding?

10   A.   Fifth Amendment.

11   Q.   It then goes on, if you come to the third

12   sentence, four lines down in the middle, do you see

13   where it reads, "Ms. Martin never"?

14   A.   I do.

15   Q.   And it -- and the finding here is:

16        "Ms. Martin never once during the

17        videos explained the intended use of

18        the adjudication process.

19        "The video was very misleading and

20        seemed its purpose was simply to

21        create doubt and public mistrust in

22        the Dominion Voting System."

23        Do you see that?

24   A.   Yes.

25   Q.   Was it your purpose in creating this video

1    A.    I don't recall.

2    Q.    Was it another member of the board?

3    A.    There again, I don't recall.

4    Q.    Was it counsel for the board, like, Tony

5    Rowell?

6    A.    I do not recall.

7    Q.    Where is that video surveillance today?

8    A.    I do not know.

9    Q.    Would it surprise you to learn that Coffee

10   County claims it doesn't exist?

11   A.    There again, I don't know.

12   Q.    Did that video surveillance cover the

13   month of January 2021?

14   A.    I don't know.

15   Q.    You don't recall whether you viewed any

16   video surveillance from the elections county office

17   from January of 2021?

18   A.    I do not.

19   Q.    As a former member of the board, do you

20   have any inside information into why that video

21   surveillance would have been destroyed?

22   A.    Fifth Amendment.

23   Q.    Do you recall that, in that meeting on --

24   in February of 2021, that Ms. Hampton showed up

25   with a letter of resignation in an envelope?

Page 60

1    Mr. Lindell as associated with former President

2    Trump?

3         A.   Bits and pieces, I have.

4         Q.   When was Mr. Lindell in the Coffee County

5    election office?

6         A.   To my knowledge, he's never been in the

7    elections office.

8         Q.   You're not aware of Mr. Lindell being in

9    Coffee County in around February, late February or

10   early March 2021?

11        A.   No, sir.

12        Q.   What about Doug Logan?

13        A.   No recollection of the name.

14        Q.   You're not aware of Doug Logan being in

15   the Coffee County election office?

16        A.   No.

17        Q.   What about Paul Maggio?

18        A.   I don't recognize the name.

19        Q.   Not aware of him in that office?

20        A.   Not that I'm aware of.

21        Q.   What about Chris -- sorry.  What about

22   Scott Hall?

23        A.   I don't know the name.

24        Q.   Not aware of him in that office?

25        A.   No, sir.

Page 61

1        Q.    Do you know Robert Sinners?

2        A.    I know the name.

3        Q.    Who is that?

4        A.    Just an attorney in the -- I know the name

5    of Robert Sinners, but I don't know Robert Sinners.

6        Q.    He works for the Secretary of State's

7    office; right?

8        A.    No idea.

9        Q.    You don't know Robert Sinners who started

10   working for the Secretary of State's office in

11   20 -- February of 2021?

12       A.    I do not.

13       Q.    Is there a reason why you have his phone

14   number?

15       A.    As I said, I don't know Robert Sinners.  I

16   knew he's an attorney, but I don't -- past that, I

17   don't know Robert Sinners.

18       Q.    Okay.  All right.  Look at the meeting

19   minutes from June 8th, 2021.

20       A.    Okay.

21       Q.    I'm sorry.  Before we turn to that, the

22   video surveillance that you reviewed when

23   Ms. Hampton was asked to resign, did you see in any

24   of that video anyone in the Coffee County elections

25   office that wasn't supposed to be there?

Page 62

1      A.    Fifth Amendment.

2      Q.    Was that something that was discussed with

3  other members of the board or counsel?

4      A.    Fifth Amendment.

5      Q.    All right.  Take a look at the June 8,

6  2021 minutes.  Do you recall this board meeting?

7      A.    Not specifically, I do not.  No, sir.

8      Q.    Do you recall Mr. Barnes reporting to you

9  or anyone else on the board at any meeting that the

10  Secretary of State's office had come in and taken

11  the E.M.S. server and the I.C.C. that had been in

12  Coffee County?

13      A.    I vaguely remember some discussion of

14  that, but I don't remember any specific

15  information.

16      Q.    Tell me what you remember about that.

17      A.    First of all, the terms "I.C.C. scanner"

18  and -- I mean, all the -- that really doesn't --

19  that doesn't ring a -- you know, I don't even know

20  what that is, per se.

21          He just made mention that something was --

22  some of the equipment wasn't working, he contacted

23  the Secretary of State's office, as I recall, and

24  they had come -- I think, if I remember correctly,

25  they come down, they couldn't get it to work or

1      A.    Yes, sir.

2      Q.    And there are three screenshots of poll

3    pads, three photos of poll pads that Ms. Hampton

4    sent you.  Do you see that?

5      A.    Yes.

6      Q.    And on the first one she shows that the

7    poll pad is accessing Netflix; right?

8      A.    Yes.

9      Q.    And on the second one, she shows that the

10   poll pad is accessing, what is she -- what is that?

11   Do you know what that is?  Some sort of games?

12           MR. DELK:  Object to the form.

13           THE WITNESS:  I'm not sure.

14   BY MR. CROSS:

15     Q.    One of the things that Ms. Hampton had

16   raised as a concern with you and others was that

17   the poll pads used in Georgia are connected to the

18   Internet; right?

19     A.    That's correct.

20     Q.    And you're aware that -- well, back up.

21           Ms. Hampton's daughter also worked for the

22   County; right?

23     A.    She did.

24     Q.    She helped with elections?

25     A.    She was employed part-time with the

1    County.

2         Q.    And you're aware that, during at least one

3    election, Ms. Hampton's daughter was able to use a

4    poll pad to watch Netflix during the election;

5    right?  Ms. Hampton conveyed that to you?

6         A.    Fifth Amendment.

7         Q.    Then if you come down to the bottom,

8    there's still -- just so you can see, we're still

9    on December 30 of 2020.  That spills over to the

10   top of Page 20, and there's an additional photo.

11            So this is still December 30.  Do you see

12   that?

13        A.    Yes.

14        Q.    And there's a card game that's depicted on

15   a computer screen in that one; right?

16        A.    Yes.

17        Q.    And here Ms. Hampton wrote to you:

18            "This is the computer that the

19       I.C.C. scanner is connected to."

20            Right?

21            MR. DELK:  Object to the form.

22            THE WITNESS:  Fifth Amendment.

23   BY MR. CROSS:

24        Q.    And then she sends you another photo.  Do

25   you see that below?

Page 122

1        A.    Yes.

2        Q.    And there she writes:

3              "This is the E.M.S. server

4         computer."

5              Do you see that?

6        A.    Fifth Amendment.

7        Q.    Then on December 31 of 2020 at 7:46 p.m.,

8    you wrote to her:

9              "Did you get the letter sent?"

10             Do you see that?

11       A.    Yes.

12       Q.    What letter?

13       A.    Fifth Amendment.

14       Q.    Sent to whom?

15       A.    Fifth Amendment.

16       Q.    About what?

17       A.    Fifth Amendment.

18       Q.    For what purpose?

19       A.    Fifth Amendment.

20       Q.    Who wrote it?

21       A.    Fifth Amendment.

22       Q.    What was your involvement?

23       A.    Fifth Amendment.

24       Q.    Who else was involved?

25       A.    Fifth Amendment.

Page 167

1    bullets that continue on to the top of the next

2    page?

3         A.   I do.

4         Q.   Are you aware of any communication by the

5    Secretary's office to the Coffee County election

6    board or anyone with responsibility for Coffee

7    County elections to ensure that any of these

8    mitigation measures were taken?

9         A.   I'm not personally aware.

10        Q.   Are you aware of any effort by Coffee

11   County to implement these mitigation measures?

12             MR. DELK:  Object to the form.

13             THE WITNESS:  I'm not aware.

14   BY MR. CROSS:

15        Q.   And you're not aware that anybody ever

16   told anyone at Coffee County they needed to

17   implement these measures; right?

18        A.   I'm not personally aware, no, sir.

19        Q.   And as a member of the Coffee County

20   election board, if mitigation measures as serious

21   as those here were being implemented in the county,

22   you would expect to have received a report on that

23   as a member of the board; right?

24             MR. DELK:  Object to the form.

25             THE WITNESS:  Can you state that

Page 189

```
 1                VERITEXT LEGAL SOLUTIONS
 2             FIRM CERTIFICATE AND DISCLOSURE
 3
 4          Veritext represents that the foregoing
      transcript as produced by our Production
 5    Coordinators, Georgia Certified Notaries, is a
      true, correct and complete transcript of the
 6    colloquies, questions and answers as submitted by
      the certified court reporter in this case.
 7
          Veritext further represents that the
 8    attached exhibits, if any, are a true, correct and
      complete copy as submitted by the certified
 9    reporter, attorneys or witness in this case;
10          And that the exhibits were handled and
      produced exclusively through our Production
11    Coordinators, Georgia Certified Notaries.  Copies
      of notarized production certificates related to
12    this proceeding are available upon request to
      litsup-ga@veritext.com.
13
          Veritext is not taking this deposition
14    under any relationship that is prohibited by OCGA
      15-14-37(a) and (b).  Case-specific discounts are
15    automatically applied to all parties at such time
      as any party receives a discount.  Ancillary
16    services such as calendar and financial reports are
      available to all parties upon request.
17
18
19
20
21
22
23
24
25
```

1       R E P O R T E R   C E R T I F I C A T E
2    STATE OF GEORGIA )
     COBB COUNTY       )
3
4           I, Debra M. Druzisky, a Certified Court
     Reporter in and for the State of Georgia, do hereby
5    certify:
            That prior to being examined, the witness
6    named in the foregoing deposition was by me duly
     sworn to testify to the truth, the whole truth, and
7    nothing but the truth;
            That said deposition was taken before me
8    at the time and place set forth and was taken down
     by me in shorthand and thereafter reduced to
9    computerized transcription under my direction and
     supervision.  And I hereby certify the foregoing
10   deposition is a full, true and correct transcript
     of my shorthand notes so taken.
11          Review of the transcript was requested.
     If requested, any changes made by the deponent and
12   provided to the reporter during the period allowed
     are appended hereto.
13          I further certify that I am not of kin or
     counsel to the parties in the case, and I am not in
14   the regular employ of counsel for any of the said
     parties, nor am I in any way financially interested
15   in the result of said case.
            IN WITNESS WHEREOF, I have hereunto
16   subscribed my name this 18th day of August, 2022.
17
18
19
20          _____
            Debra M. Druzisky
21          Georgia CCR-B-1848
22
23
24
25