# EXHIBIT 220

Dr. Phillip Stark                              December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 1

1              IN THE UNITED STATES DISTRICT COURT

               FOR THE NORTHERN DISTRICT OF GEORGIA

2                        ATLANTA DIVISION

3

4        DONNA CURLING, et al.,

5             Plaintiffs,

6                                        CIVIL ACTION

         vs.                        FILE NO.:  1:17-CV-2989-AT

7

         BRAD RAFFENSPERGER, et al.,

8

9             Defendants.

10       ------------------------------

11

12

13                   REMOTE DEPOSITION OF

14                    DR. PHILLIP STARK

15                   December 16, 2022

16                        1:00 p.m.

17

18          (All attendees appeared remotely via

19          videoconferencing and/or teleconferencing)

20

21

22

23                      Inger Douglas

24                      CVR No. 7481

25              CCR No. 5166-3765-6508-0064

Dr. Phillip Stark                                    December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 19

1    concern your view on audits and a purported vulnerability

2    called DVSorder.  Is that generally accurate?

3         A    Yes, sir.  A little bit of specific information about

4    the audit of the Secretary of State's contest.

5         Q    Okay.  All right.  So if you'll scroll maybe to

6    paragraph five, this is -- let's see.  I think it's the third

7    page of the declaration.

8         A    Yes, sir.

9         Q    You state there, "No audit can reliably determine

10   whether BMDs altered enough votes to change who appeared to

11   win."  Do you see that?

12        A    Yes, sir.

13        Q    Okay.  So do I understand this correctly to mean that

14   in your opinion, even if the State did everything, you know,

15   precisely as you recommend as far as procedure in here that the

16   audit would essentially be worthless because it's -- the

17   election was conducted on BMDs; is that accurate?

18        A    I've -- it's a bit of an overstatement.  I wouldn't

19   say it's entirely worthless.  But it couldn't limit the risk

20   that an incorrect electoral outcome would be certified because

21   there are ways in which the outcome could be altered that no

22   audit could detect.  In particular, malware or malfunctioning

23   or misconfiguration of BMDs could cause the BMDs to print

24   different votes from what the voters actually selected, and

25   there would be no way for an audit to detect that that

Dr. Phillip Stark                           December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 20

1    happened.

2         Q    Okay.  So the point is that you can have an audit,

3    but it wouldn't be risk-limiting; is that accurate?

4         A    Yes, sir.  There are aspects of the election that you

5    could check by auditing.  But ultimately, you could not check

6    the correctness of the outcome of the election.

7         Q    Okay.  So there is still some value in doing those

8    audit procedures even if you're utilizing a BMD, right?

9         A    If they're done correctly, yes.

10         Q    Okay.  And is there some value in utilizing audit

11    procedures more generally -- strike that.  Is there some value

12    in utilizing audit procedures generally even if it might not

13    align to a statewide, jurisdiction-wide, risk-limiting audit?

14         A    There is some value and there's also -- there is also

15    some danger in that it's an invitation to draw erroneous

16    conclusions.  In particular, the Secretary of State's Office

17    has advertised that these audits have demonstrated that the

18    equipment functioned correctly, that the results are accurate,

19    and that the reported winners really did win.  And the audits

20    don't, in fact, show those things.  So I think that there's a

21    danger of misinterpreting the result of applying some of these

22    procedures to an untrustworthy paper trail.

23         Q    Okay.  And so then, in paragraph six you also -- what

24    I gather in this paragraph, you also state the opinion that

25    essentially even a hand-marked paper ballot, risk-limiting

Dr. Phillip Stark                December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 21

1    audit in Georgia would be insufficient, right?

2         A    Absent some changes to procedures; in particular,

3    around the security -- physical security of the voted ballots

4    and physical accounting for ballots, checks of chain of

5    custody, and things of that kind.

6         Q    Okay.  But you specifically say in the last sentence

7    that, "Thus, any audit that Georgia might perform cannot

8    protect against the possibility that the Coffee County breach

9    resulted in changed election outcomes in Coffee County or other

10   counties," right?

11        A    Yes, sir.  But there's a first sentence about the

12   lack of physical accounting controls, et cetera.  If those

13   controls were there, then my conclusion in the second sentence

14   would be different.

15        Q    Okay.  And we'll get to those controls here.  I do

16   want to note -- go briefly to paragraph eight.

17        A    Yes, sir.

18        Q    You say basically you haven't had adequate time to

19   digest the details nor to search exhaustively, right?

20        A    Yes, sir.

21        Q    And then, you go on to provide plenty of additional,

22   you know, opinion testimony on this.  But what exactly have you

23   reviewed in relation to risk-limiting audits that you were

24   relying on for this declaration?

25        A    I have the PowerPoint slides from a presentation

Dr. Phillip Stark                December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 22

1    given to local election officials, a couple of webpages on the

2    Secretary of State's website relating to the audit and the

3    audit results, a quick look at some of the documentation of the

4    Arlo software which I think I referred to in this declaration.

5    Since filing this declaration, I've had a chance to look at

6    some of the underlying data that the Secretary of State posted

7    to the website, the batch subtotals and things like that.

8         Q    So you...

9         A    And -- oh, and I'm sorry.  Forgive me.  And then, the

10   declarations that I cite in this declaration of people who

11   observed the audit procedure on the ground in a couple of

12   counties.

13        Q    Okay.  So it seemed to me, and correct me if I'm

14   wrong, that the items you referenced are either attached in the

15   appendix to this declaration or are linked within the

16   declaration, right?

17        A    Yes, sir.

18        Q    Okay.  And I'm talking about with respect to your

19   risk-limiting audit opinion, right?

20        A    Yes, sir.

21        Q    Okay.  And just to clarify on a statement you just

22   made, so you provided and submitted this declaration before you

23   reviewed the publicly available information on the Secretary's

24   website?  Did I hear that correctly?

25        A    Before I had started doing exploratory data analysis

Dr. Phillip Stark                       December 16, 2022
Curling, Donna v. Raffensperger, Brad

                                                      Page 23

1    on the batch reports from the thousands and thousands of

2    batches that were there in the ZIP file.

3         Q    Okay.

4         A    I had not done any data analysis when I -- when I

5    finished this report.  I started the data analysis then.

6         Q    Okay.  So in paragraph ten, you say, "To the best of

7    my knowledge, there was no mandatory ballot accounting, poll

8    book reconciliation, eligibility auditing, chain of custody

9    checks, or other measures to ensure the paper trail was

10   complete and intact."  Do you see that?

11        A    Yes, sir.

12        Q    Okay.  And that's based off of what you just said you

13   reviewed, i.e., the appendix or things that are linked in this

14   declaration, right?

15        A    Yes, sir.  And also, a lay reading of some Georgia

16   regulations around the canvass.

17        Q    Okay.  Which regulations did you read?

18        A    I'm not going to recall it by number.  I'm sorry.  It

19   was a 2019 statute.

20        Q    2019 statute?

21        A    I believe so.

22        Q    Okay.  So you -- did you review the statute that was

23   part of House Bill 316 requiring risk-limiting audits?

24        A    I'm sure I did once upon a time, but I have not

25   refreshed my memory of that.  And I didn't read it before

Page 26

1        A     I'm not, but that's true in most places.

2        Q     Okay.  And with respect to the poll book

3    reconciliation, you're aware that that's required as part of

4    the tabulation process in Georgia, right?

5        A     No, I'm not aware of that.  My understanding -- and

6    I'm not an expert on law.  But my reading of that regulation or

7    statute was that it doesn't happen at the time of tabulation;

8    that it is required to happen within something like 30 days

9    after the election.

10       Q     Okay.  So you're not doubting me that that is, in

11   fact, a requirement, right?

12       A     I have no reason to doubt whether it's a requirement.

13   I would have reason to doubt whether it's enforced, given the

14   number of ballots or ballot scans that were discovered after

15   the 2020 election never to have been uploaded into the system

16   in the first machine tabulation, and given another omission.  I

17   can't recall which county it was in here where some -- some

18   number of the Cobb County memory card hadn't been uploaded into

19   the voting system.  That's in paragraph 12.

20       Q     Okay.  So -- and this is the distinction that I'm

21   trying to make sure I understand.  Are you offering an opinion

22   as to whether state law or regulation itself is adequate or

23   that based on observation of county procedures under such law

24   or regulation that they're not adhering to a regulation?

25       A     So I'm not an attorney.  I won't pretend to be able

Page 27

1     to interpret the law.  But regardless of what the law says, it

2     seems that this isn't happening in practice, at least not that

3     well.

4          Q    Okay.  Have you ever seen a polling place recap form?

5          A    A polling place what form?

6          Q    Recap form?

7          A    No, sir.

8          Q    Okay.  Would you have any reason to doubt me that

9     these are standard forms compiled as part of the tabulation

10    process?

11         A    I'm not familiar with that -- with the term "recap

12    form".  It's possible that I have seen such a form but don't

13    know it by that name.  But I have no reason to doubt what

14    you're telling me.

15              (Defendant's Exhibit No. 3 was identified.)

16    BY MR. MILLER:

17         Q    Okay.  And I'm going to mark another exhibit for you

18    here.  And just let me know when you see it on your end.

19         A    I have it.

20         Q    Okay.  Have you seen this regulation before?

21         A    No, sir.

22         Q    Okay.  And you see at the top it says 183-1-12-.12?

23         A    Yes, sir.

24         Q    And it's entitled Tabulating Results, right?

25         A    Yes.

Dr. Phillip Stark                    December 16, 2022
Curling, Donna v. Raffensperger, Brad

                                                        Page 36

1            MR. MILLER:  Yeah.  I apologize for that.

2      BY MR. MILLER:

3            Q    You see there the first bullet?  "The check-in and

4      check-out clerk should refer to the appropriate documentation

5      to verify the chain of custody of each secure container prior

6      to removing it from the check-in and out station."

7            A    Yes, sir, I see that.

8            Q    Okay.  And it talks there specifically about

9      verifying the seals on the container with the check-in and out

10     clerk before signing the chain of custody form.

11           A    Yes, sir.

12           Q    Okay.  So you're aware that during the audit process,

13     state regulation and the Secretary's directives require the

14     ballots to be sealed when they arrive at the location where the

15     audit is occurring and to be unsealed and resealed as each

16     container is checked out, right?

17           A    You told me that they're required to be sealed in the

18     polling place, and this says that the seal should be checked

19     when they're opened again for the audit.  Yes.

20           Q    Okay.  And then, after the audit of a particular

21     container or a tally of a particular container -- if you'll

22     scroll with me to Page 62?  You see there that, "Upon check-in,

23     the check-in and out clerk will have the total number of

24     ballots in the batch manifest and is comparing that to the

25     audit team's total number of ballots counted"?

Page 37

1          MR. BROWN:  Object to the form.

2          THE WITNESS:  I'm sorry.  I see batches selected on

3      that screen.  Can you point me to...

4   BY MR. MILLER:

5      Q    Oh, I'm sorry.  The next page, yeah.  Page 62.  I

6   know they get a little -- as you -- because these are

7   landscape, I think sometimes it wants you to be on the next

8   page.

9      A    Yes.

10     Q    Okay.  And you see there on the second bullet point

11  it directs the check-in and out clerk to compare with the

12  counters for that particular batch the total number of ballots

13  they counted versus the total number of ballots in the batch

14  form -- strike that -- in the batch from the ballot manifest?

15         MR. BROWN:  I'm going to object to all of these.  If

16      you want to know why, Kerry, you can ask me.

17         THE WITNESS:  I see the check-in bullet item, and, in

18      fact, the sub-bullet is one of the things that really

19      concerned me about this procedure in that if there is a

20      discrepancy, it's left up to the election superintendent

21      to decide whether to investigate it.  And Arlo itself

22      doesn't accept -- my understanding is that it only expects

23      an input of the number of valid votes tabulated for each

24      candidate in a batch, not the number of undervotes or

25      invalid ballots or the total number of ballots in the

Dr. Phillip Stark                    December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 48

1        A    Yes, sir.

2        Q    Okay.

3        A    Except it's -- risk-limiting audit is a risk-limiting

4    audit in name rather than in fact.

5        Q    Okay.  And that is because of the two issues we

6    discussed earlier; because they aren't hand-marked paper

7    ballots and because of general procedural observations you were

8    making, right?

9        A    Well, there's another thing that I mentioned as well,

10   which is in order to limit the risk that an incorrect outcome

11   will be certified, the audit has to have the ability to correct

12   the outcome if the outcome is wrong.  A risk-limiting audit is

13   supposed to correct the outcome by conducting a full hand count

14   of the trustworthy paper trail.  Again, I'm not an attorney,

15   but my understanding of the Georgia statute around

16   risk-limiting audits is that the audit does not have the legal

17   power to correct the outcome even if it ends up becoming a full

18   hand count that demonstrates that the original outcome was

19   incorrect.

20       Q    And that's your understanding based on a statute that

21   I think you testified earlier you read some time ago, right?

22       A    Yes, sir.  And I'm -- again, I'm not an attorney.

23   But my understanding is that only a recount can change the

24   outcome in Georgia, and that recounts by default, absent a

25   judge's order, are machine recounts rather than hand recounts.

Dr. Phillip Stark                    December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 54

1        A     I'm sorry.  I did testify that I did not, yes.

2        Q     That -- thank you for clarifying that.  And -- but I

3    understood you testified that Mr. Skoglund and Dr. Haldeman

4    did?

5        A     That's my understanding, yes.

6        Q     Okay.  And in their review, are you aware of any

7    evidence that votes cast on that equipment were not cast as

8    intended?

9        A     I am not aware of any evidence that the machine

10   misbehaved in practice in any way.

11       Q     Okay.  And are you aware of any evidence of machines

12   in Coffee County or elsewhere in Georgia did not cast votes as

13   intended subsequent to the unauthorized access in Coffee

14   County?

15       A     Could would be a little bit more specific?  Are we

16   talking about ballot marking devices?  I mean, the issue with

17   ballot marking devices is I'm not aware of any evidence that

18   they printed selections other than what the voters intended.

19   But the problem with ballot marking devices is that they don't

20   generate any evidence of printing selections other than what

21   the voters intended.  So there's just a security gap there,

22   which is one of my biggest concerns with the widespread

23   reliance on BMDs.  But I am not aware of any evidence of

24   misbehavior of BMDs.  I'm not aware of any evidence of

25   misbehavior of the tabulators.  I am aware of evidence of

Page 55

1    procedural lapses of various kinds.

2         Q    Okay.  I think that satisfies my question there.  And

3    you're not offering an opinion that the incorrect winner was

4    certified in any Georgia election, right?

5         A    I'm offering no such opinion.

6         Q    Okay.

7         A    I would have no basis for any such opinion.

8              MR. MILLER:  Okay.  That's all the questions I have.

9         Mr. Brown or Mr. Cross may have some for you.

10                  E X A M I N A T I O N

11   BY MR. BROWN:

12        Q    Dr. Stark, Bruce Brown representing the Coalition

13   Plaintiffs.  Thank you for your testimony today.  I just have a

14   couple of questions.  You testified as to when you started to

15   put pen to paper on your declaration and -- but you also

16   collected some documents in advance of that, correct?

17        A    Yes, sir.  I'm trying to think of specifically which

18   ones, but I've been -- I've been following the developments in

19   the case including attending the depositions that are referred

20   to.  And I was certainly collecting thoughts and making notes

21   anticipating that I might be asked to write a supplementary

22   declaration.  But I didn't start to really draft it until

23   approximately December 1.  I believe that was, I think, the

24   Thursday or Friday of that week.

25        Q    Okay.  And then, you -- and you participated or at

Dr. Phillip Stark                        December 16, 2022
Curling, Donna v. Raffensperger, Brad

Page 58

1                         DISCLOSURE

2            I, Inger Douglas, do hereby disclose pursuant to Article

3      10.B of the Rules and Regulations Council of Georgia that

4      Veritext Legal Solutions was contacted by the party taking the

5      deposition to provide court reporting services for this

6      deposition and there is no contract that is prohibited by

7      O.C.G.A. 15-14-37 (a) and (b) or Article 7.C of the Rules and

8      Regulations of the Board for the taking of this deposition.

9            There is no contract to provide court reporting services

10     between Veritext Legal Solutions or any person with whom

11     Veritext Legal Solutions has a principal and agency

12     relationship nor any attorney at law in this action, party to

13     this action, party having a financial interest in this action,

14     or agent for an attorney at law in this action, party to this

15     action, or party having a financial interest in this action.

16     Any and all financial arrangements beyond our usual and

17     customary rates have been disclosed and offered to all parties.

18           This 16th day of December 2022.

19



20     _____

21     Inger Douglas, CVR No. 7481

22     CCR No. 5166-3765-6508-0064

23     Certified Court Reporter

24

25

Page 59

1                          CERTIFICATE

2     STATE OF GEORGIA

3     COUNTY OF FORSYTH

4

5          I, Inger Douglas, Certified Court Reporter, hereby certify

6     that the foregoing pages numbered 2 through 59 constitute a

7     true, correct, and accurate transcript of the testimony heard

8     before me, an officer duly authorized to administer oaths, and

9     was transcribed under my supervision.

10         I further certify that I am a disinterested party to this

11    action and that I am neither of kin nor counsel to any of the

12    parties hereto.

13         In witness whereof, I hereby affix my hand on this the

14    20th day of December 2022.

15

16    _____

17    Inger Douglas, CVR 7481

18    CCR 5166-3765-6508-0064

19    Certified Court Reporter

20

21

22

23

24

25

Dr. Philip Stark
Curling v. Raffensperger
#5625976
December 16, 2022

E R R A T A   S H E E T

1.   PAGE – GLOBAL – CHANGE "Phillip" to "Philip" – only one "L".  This is my name and it is misspelled throughout the transcript.  Please make a global change, including the title and headers and footers.

Reason: Spelling

2.      PAGE – GLOBAL – Change "Marx" to "Marks" throughout.

Reason: Spelling

3.      PAGE 8,  LINE 24 – Change "and putting" to "including"

Reason:  error

4.      PAGE 12, LINE 22 – Change "To wonder whether it was true or just in fluster."

To: "To wonder whether it was true or just bluster."

Reason: error

5.      PAGE 14, LINE 22 – Change "Haldeman" to "Halderman"

Reason: spelling

6.      PAGE 15, LINE 9 – Change "Haldeman" to "Halderman"

Reason: spelling

7.      PAGE 15, LINE 23 - Change "Limburg" to "Lenberg"

Reason: spelling

8.       PAGE 16, LINES 3, 12, 16, 20 – Change "Limburg" to "Lenberg"

Dr. Philip Stark, Curling v. Raffensperger, #5625976
December 16, 2022

Reason: spelling

9.      PAGE 18, LINES 10, 15 – Change "Haldeman" to "Halderman"

Reason: spelling

10.     PAGE 18, LINE 18 – Change "of this declaration" to "of his declaration"

Reason: error

11.     PAGE 33, LINES 10 – 13 – Change "Moreover, if the steps that you pointed out in the -- regarding the recap form had, in fact, taken place, then this would appear to be redundant, not that redundant checks
are -- aren't valuable."

To:  "Moreover, if the steps that you pointed out in the -- regarding the recap form had, in fact, taken place, then this would appear to be redundant, not that redundant checks are -- aren't valuable."

Reason: clarify the record

12.     PAGE 33, LINE 21 – Change ""Thirty-six is the ballot inventory tool of what you will generate?"

To: "Thirty-six is, "BALLOT INVENTORY TOOL WHAT YOU WILL GENERATE"?"

Reason: clarify the record

13.     PAGE 34, LINE 4 – Change "Forty-four, the batch inventory tool?"

To: "Forty-four, the "BATCH INVENTORY TOOL"?"

Reason: clarify the record

14.     PAGE 35 LINES 15-16 – Change "Okay. Fifty-nine, yeah. I see auditing process chain of custody."

Dr. Philip Stark, Curling v. Raffensperger, #5625976
December 16, 2022

To: "Okay. Fifty-nine, yeah. I see, "AUDITING PROCESS CHAIN OF CUSTODY.""

Reason: clarify the record

15.      PAGE 37, LINES 2-3 – Change "I'm sorry. I see batches selected on"

To: "I'm sorry. I see "BATCHES SELECTED" on "

Reason: clarify the record

16.      PAGE 38, LINE 2 – Change "discover whether a discrepancy matters or the measured"

To: "discover whether a discrepancy matters for the measured"

Reason: Error

17.      PAGE 39, LINES 3-10 – Change

"No, sir. I -- not specifically, but in general, the
processes that are in place to ensure that every eligible voter
has the opportunity to vote and no one who is not eligible, in
fact, votes and those who are eligible to vote are given a
ballot of the appropriate style that contains exactly those
contests that they're eligible to vote in are all processes
that are subject to some error and need to be vetted as part of
an audit or as precursor to a risk-limiting audit."

To: "No, sir. I -- not specifically. But in general, the
processes that are in place to ensure that every eligible voter
has the opportunity to vote, that no one who is not eligible in
fact votes, and those who are eligible to vote are given a
ballot of the appropriate style that contains exactly those
contests that they're eligible to vote in, are all processes
that are subject to some error and need to be vetted as part of
an audit or as precursor to a risk-limiting audit."

Dr. Philip Stark, Curling v. Raffensperger, #5625976
December 16, 2022

Reason: clarify the record

18.     Page 41, Lines 17-25 – Change

"such affirmative evidence. It -- currently, if we're talking
about elections conducted not using, say, end-to-end
cryptographically verifiable voting systems, but things that
are more like traditional elections, the only way to have an
election that generates affirmative evidence that the results
are correct is to conduct that election using predominantly
hand-marked paper ballots, ensure that only people who are
eligible and everyone who is eligible has an opportunity to
vote, keep -- so generate the paper trail in a way that is"

To: "such affirmative evidence. It ... currently, if we're talking
about elections conducted not using, say, end-to-end
cryptographically verifiable voting systems, but things that
are more like traditional elections, the only way to have an
election that generates affirmative evidence that the results
are correct is to conduct that election using predominantly
hand-marked paper ballots, ensure that only people who are
eligible and everyone who is eligible has an opportunity to
vote, keep ... So, generate the paper trail in a way that is"

Reason: clarify the record

19.     PAGE 44, LINE 2 – Change "without reviewing how anybody voted."

To: "without revealing how anybody voted."

Reason: error

20.     PAGE 48, LINES 3-4 – Change "Except it's -- risk-limiting audit is a risk-limiting
audit in name rather than in fact."

4

Dr. Philip Stark, Curling v. Raffensperger, #5625976
December 16, 2022


To:  "Except its "risk-limiting audit" is a risk-limiting
audit in name rather than in fact."

Reason: clarify the record

21.  PAGE 48, LINES 23-25 – Change "But my understanding is that only a recount can
change the outcome in Georgia, and that recounts by default, absent a judge's
order, are machine recounts rather than hand recounts."

To: "But my understanding is that only a recount can change the outcome
in Georgia, and that recounts--by default, absent a judge's order--
are machine recounts rather than hand recounts."

Reason: clarify the record

22.     PAGE 54, LINE  3 – Change "Haldeman" to "Halderman"

Reason: spelling

23.     PAGE 54, LINE 9 – Change "machine" to "machines"

Reason: clarify the record

24.     PAGE 54, LINE 15-21 – Change

"Could would be a little bit more specific? Are we talking about
ballot marking devices? I mean, the issue with ballot marking
devices is I'm not aware of any evidence that they printed selections
other than what the voters intended. But the problem with ballot
marking devices is that they don't generate any evidence of printing
selections other than what the voters intended."

To: "Could you be a little bit more specific? Are we talking about
ballot-marking devices? I mean, the issue with ballot-marking
devices is ... I'm not aware of any evidence that they printed selections
other than what the voters intended. But the problem with ballot
marking devices is that they don't generate any evidence of printing
selections other than what the voters intended."

5

Dr. Philip Stark, Curling v. Raffensperger, #5625976
December 16, 2022

Reason: clarify the record

ACKNOWLEDGEMENT OF DEPONENT

I, Dr. Philip B. Stark, do hereby declare that I have read the foregoing

transcript, I have made any corrections, additions, or changes I deemed necessary

as noted above to be appended hereto, and that the same is a true, correct and

complete transcript of the testimony given by me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that

the following is true and correct.

This   19   day of January, 2023.

_____
Philip B. Stark

6