# EXHIBIT 239

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| DONNA CURLING, et al.<br>Plaintiff,<br>vs.<br>BRIAN P. KEMP, et al.<br>Defendant. | CIVIL ACTION FILE NO.:<br>1:17-cv-2989-AT |

**DECLARATION OF AMBER F. McREYNOLDS**

**AMBER F. McREYNOLDS** hereby declares as follows:

1. I am currently the Executive Director for the Vote At Home Institute and Coalition focused on improving the voting experience for voters across the country and implementing convenient voting options to include effective ballot delivery systems (commonly known as ballots by mail) along with in person voting options to ensure voters have convenient options.

2. Until August 15, 2018, I was the Elections Director for the City and County of Denver. I administered elections in Denver for 13 years and have worked in public policy and administration for over 16 years. I served as the Director of Elections for the past 7 years, Deputy Director of

19. It is imperative that correction of DRE system electronic pollbook and voter registration records and the reconciliation of discrepancies between the two records be undertaken immediately as a serious effort. Researching, confirming accurate information, and correcting errors will likely take weeks of work and must begin immediately, regardless of what voting system is used in November's election.

20. Given the significant problems that appear to be of unknown origin in the electronic pollbooks and the general need for verification of auditable records, I recommend initiating an audit (perhaps by another state agency with auditing capabilities or an outside entity with expertise in database auditing) to review the pollbook set-up and review discrepancies documented previously. I further recommend that a back-up (paper or other) be allocated to each polling location to ensure efficient and accurate voter processing.

### NECESSITY OF PAPER BALLOTS WITH AUDIT TRAIL

21. In my professional experience, given the technology that is available today, a paper ballot with a voter-verified audit trail is unquestionably essential in election and voting systems. Colorado has primarily voted on paper ballots for a long period of time, with only a short period in the mid-2000's where DRE systems were used in some counties, but

were soon abandoned for reliable and verifiable paper ballot systems. Denver converted to a primarily paper ballot based system in 2008.

22. After years of developing supporting procedures, regulation and statutory requirements for high volume mail ballot processing, in 2013, the Colorado legislature passed a bill to mandate mail ballots, with exceptions made for in-person vote centers for voters wishing to cast their ballots in person. This system replaced a traditional system of voting paper ballots in the neighborhood precincts counted by precinct optical scanners or central count optical scanners, depending on the county.

23. Under Colorado's current law and with its ballot delivery system, every voter is automatically mailed a paper ballot, and voters also have the option of voting in person at a vote center also on a paper ballot, even if using the accessible ballot marking device. It is essential to use a voting system under which the voter directly records their vote on paper, or on a voter-verifiable paper record.

24. Virtually all Colorado counties count the paper ballots with optical scanners located centrally at each counties' election office, with results tabulated on each counties' election management server from which reports are generated. In the case of a very small number of sparsely

that no material errors, programming mistakes, or hacking has impacted the results.

28. It is essential that Georgia conduct post-election audits for paper ballots counted on optical scanners and summarized on the election management system server (GEMS server.) This fundamental requirement is true for all electronically counted ballots, but the need is even more undispensible because Georgia's voting system components were exposed to the risk of anonymous malicious users while programs were on the server at KSU.

29. Numerous expert resources are available at little nor no cost to advise Georgia jurisdictions on implementing various types of post-election audits of paper ballot elections. In my experience, the election community shares best practices and aids our fellow colleagues in urgent circumstances.

30. There is virtually universal agreement by election officials and voting system experts that paperless DREs, such as Georgia uses, cannot be meaningfully audited or recounted, and that verifiable elections require a voter-verified paper audit trail.

31. Georgia was granted $10.8 million in HAVA funding very recently. Post election audit programs are a qualified use of HAVA funds, and

voter himself at the central office, discourages mail ballot voting, particularly given the traffic in Atlanta and other locations. I would suggest modifications to this process to allow voters to drop off their mail ballot at any polling location across Georgia.

41. Georgia ranked 42nd for Mail Ballots Rejected on the recent Election Performance Index https://elections.mit.edu/#state-GA. This illustrates why I have concerns about the increase in the use of mail ballots without modifications to the existing process.

42. In the absence of a signature cure process, efficient drop-off procedures and locations, and other procedures, the claim that voters can protect themselves by using a mail ballot as opposed to a potentially unreliable DRE without a paper audit trail is not a legitimate replacement. In my professional opinion, the current mail ballot procedures need to be updated in advance of this November election to ensure voters have fair and accessible options.

## FEASIBILITY OF IMMEDIATE CONVERSION TO PAPER BALLOTS

43. In my opinion, with appropriate and efficient planning, best practices, and assistance from experts in the field, Georgia has time to convert to paper ballots in an organized manner because no new technology, systems

conversion, or significant training is needed. This is primarily because it is my understanding that Georgia uses an adequate paper ballot scanning and tabulation system currently, which can be successfully deployed system wide if post-election audits are required, and electronic pollbooks are corrected and backed up with paper pollbooks. Additionally, there are available resources and plans from states with a similar system that can be utilized quickly.

44. I understand that Georgia has certified and uses Diebold Accu-vote TS and TSx paperless DRE units for in person voting, in concert with Accu-Vote Optical Scan for paper mail and provisional ballots, tabulated by the GEMS server.

45. I am familiar with this equipment through its widespread and successful use in Colorado in prior years, although Denver did not use the Diebold brand of optical scanners. Denver used Sequoia 400c high speed optical scanners prior to May 2015 when the new Dominion system that includes high-speed Canon optical scanners was deployed. Some counties in Colorado did use the AccuVote Optical scanners in a central count environment.

46. Although Diebold Accu-vote optical scanners are not the most modern or highest speed ballot scanners, they are in successful widespread use across

86. While administrative errors will be made and some machines will have problems in all elections, recovery from errors is almost always possible in paper ballot elections where audit trails exist.

87. Voters generally know how to mark paper ballots, and election workers know how to handle, issue and secure paper ballots in the same way they do now for provisional voters.

88. The Accu-Vote optical scanning system used today in Georgia for paper ballots is widely used across the United States, with a consistent record of mechanical efficiency and durability, although as with any ballot scanning system, post-election audits are necessary. Fears of widespread or chronic scanner breakdowns appear unfounded based on my research.

89. In my opinion, the Defendants and all county election officials, without waiting for this Court's ruling, should immediately undertake a systematic review of the accuracy of the voter registration database and assure that the Diebold ectronic pollbooks are operating properly with the identical relevant data in the voter registration base, and correct the discrepancies reported in recent elections and the underlying cause. I would also recommend engaging and outside entity to review the database. This is a best practice in the industry and there are various resources available.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this date, August 20, 2018.

*[signature]*

Amber F. McReynolds