# EXHIBIT 253

Page 1

1  UNITED STATES DISTRICT COURT
2  FOR THE NORTHERN DISTRICT OF GEORGIA
3  ATLANTA DIVISION
4
5  Civil Action No. 1:17-cv-02989-AT
6  _____
7  DONNA CURLING, et al.,
8      Plaintiffs,
9  vs.
10 BRAD RAFFENSPERGER, et al.,
11     Defendants.
12 _____
13
14     VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
15              BENJAMIN R. COTTON
16 DATE:          August 25, 2022
17 TIME:          9:11 a.m. to 4:02 p.m. CDT
18 LOCATION:      Witness location
19
   REPORTED BY:  Felicia A. Newland, CSR
20
21           Veritext Legal Solutions
             1250 Eye Street, N.W., Suite 350
22           Washington, D.C. 20005

1      didn't know that he was working in Georgia.
2           Q     Have you ever had any communications
3      with Mr. Penrose?
4           A     Only in the capacity of collaborating
5      experts supporting Ms. Lambert.
6           Q     Have you collaborated with
7      Mr. Penrose at all with respect to Georgia voting
8      data or voting -- the Georgia voting software?
9           A     Tangentally.
10          Q     Can you elaborate on that?
11                MR. PARKER:  If it relates to your
12     engagement as a consulting expert in Georgia, you
13     cannot testify to it.  If it does not, you can.
14                THE WITNESS:  He was involved in the
15     initial spin-up of Coffee County, Georgia.
16     BY MS. KAISER:
17          Q     What do you mean when you say
18     "spin-up of Coffee County, Georgia"?
19          A     So when -- when Stefanie directed me
20     to support Coffee County, Georgia, I had a
21     conversation with him that -- concerning access to
22     the materials.

Page 88

1    Q    Did he facilitate your access to the
2    materials?
3         MR. PARKER:  Don't answer that.  It's
4    related to work product.  Actually, you can -- you
5    can answer it to the extent that you don't get into
6    materials that you actually received and reviewed.
7         THE WITNESS:  Yes, he did.
8    BY MS. KAISER:
9    Q    How did he facilitate that access?
10        And, again, I'm not asking about the
11   contents of the materials.  I'm just asking about
12   the access.
13   A    He provided some log-in credentials
14   for me to download the materials.
15   Q    To download them from where?
16   A    From the SullivanStrickler website, a
17   secured portal.
18   Q    A secured portal?
19   A    Yes.
20   Q    And approximately when was that,
21   Mr. Cotton?
22   A    That was approximately the 11 -- or

Page 89

1    the middle of June, 11th, 12th, somewhere in there.
2         Q    June 2021, correct?
3         A    Correct.
4         Q    So Mr. Penrose provided you with the
5    log-in credentials that you required to download
6    information from the SullivanStrickler secured
7    portal.  Is that correct?
8         A    That is correct.
9         Q    Is that the extent of your
10   communications with Mr. Penrose?
11        A    Yes.
12        Q    Also copied on this e-mail is Brendan
13   Sullivan.  Do you see that?
14        A    I do.
15        Q    Do you know Mr. Sullivan?
16        A    I do not.
17        Q    And the last person copied on this
18   e-mail is Doug Logan.  Do you see that name?
19        A    I do.
20        Q    Do you know Mr. Logan?
21        A    I know a Doug Logan.  I don't know if
22   this is the same Doug Logan, but I certainly know a

Page 105

1    Q    Do you recognize that as the same
2    number that was referenced in Maggio's --
3    Mr. Maggio's e-mail on Exhibit 5?
4         A    I do.
5    Q    Mr. Cotton, did you receive data
6    copied from Coffee County, Georgia on January 7,
7    2021?
8         A    I did not.
9    Q    At any time?
10             MR. PARKER:  Objection.
11             You can answer if it's outside of
12   the consulting expert role that you were retained
13   for in Georgia; and if it is not, you cannot
14   answer.
15             THE WITNESS:  So as I previously
16   testified, I received access to a download site on
17   or about the middle of June 2021.
18   BY MS. KAISER:
19        Q    Did you ever receive a hard drive
20   or -- or any other materials containing data from
21   Coffee County, Georgia?
22             MR. PARKER:  You cannot answer that

Page 106

1    if it was received as a part of your consulting
2    expert role in Georgia.
3              THE WITNESS:  So as I previously
4    testified, I received access to the
5    SullivanStrickler download site in the middle of
6    June of 2021.
7    BY MS. KAISER:
8         Q    If you look at Exhibit 7 again.  Did
9    you receive access to the files listed in
10   Exhibit 7?
11             MR. PARKER:  If you -- if you
12   received that -- if you received any access related
13   to your consulting expert role, you cannot answer
14   it, but if you received it outside of that role,
15   you can.
16             THE WITNESS:  I did not receive any
17   access outside of my role as a consulting expert.
18   BY MS. KAISER:
19        Q    So you're not willing to testify as
20   to the contents of the data that you received
21   access to?
22             MR. PARKER:  That's correct.  I'm

Page 130

1     it's work-product doctrine, it's governed by all
2     of the rules that have been cited in the log, as
3     well as the nondisclosure agreement.
4     BY MS. KAISER:
5             Q    Are you willing to answer that
6     question, Mr. Cotton?
7             A    I will follow the direction of the
8     attorney.
9             Q    Do you still have the Dominion data
10    files from Coffee County?
11            A    Yes.
12            Q    What steps, if any, have you taken to
13    secure those files?
14            A    They're on isolated systems, password
15    protected on encrypted hard drives.
16            Q    Does anybody have access to those
17    passwords besides you?
18            A    No.
19            Q    To your knowledge, who has received
20    or had access to the Dominion data from Coffee
21    County, Georgia?
22                 MR. PARKER:  To the extent that it

Page 286

CERTIFICATE OF NOTARY PUBLIC

I, FELICIA A. NEWLAND, CSR, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me in stenotype and thereafter reduced to typewriting under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

_____
FELICIA A. NEWLAND, CSR
Notary Public

My commission expires:
September 15, 2024