# EXHIBIT 276

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs,*

    v.

BRAD RAFFENSPERGER, *et al.,*

    *Defendants.*

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## STATE DEFENDANTS' BRIEF REGARDING STANDING

This case began with Plaintiffs' quest to declare the 2017 special
Congressional election "void *ab initio.*" [Doc. 1-2]. After several amended
complaints and even more attempted preliminary injunctions, Plaintiffs
continue to raise concerns of *vulnerabilities* in Georgia's voting system.
Under recent Eleventh Circuit precedent, Plaintiffs' concerns are not
cognizable injuries in fact, regardless of the "evidence" they claim should be
considered. Plaintiffs' injuries are hypothetical and the kind of generalized
grievances that other courts addressed in recent election cases involving
identical theories about BMDs. *See Pearson v. Kemp*, No. 1:20-cv-4809-TCB
(N.D. Ga.); *Wood v. Raffensperger*, 1:20-cv-5155-TCB (N.D. Ga.) (*Wood II*).

Indeed, Sidney Powell's argument and filings in the *Pearson* case
(popularly known as the "Kraken" litigation) consisted mainly of citing

Plaintiffs' injuries are therefore hypothetical and generalized whether looked

at on a pleading standard or based on the current evidence in the record.

## JUSTICIABILITY ANALYSIS

Courts are not "constituted as free-wheeling enforcers of the

Constitution and laws." *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th

Cir. 2020) (citing *Initiative and Referendums Inst. v. Walker*, 450 F.3d 1082,

1087 (10th Cir. 2006) (en banc)). Consequently, jurisdiction in federal court is

limited to only active "cases" and "controversies." U.S. Const. art. III, § 2;

*Wilding v. DNC Servs. Corp.,* 941 F. 3d 1116, 1124 (11th Cir. 2019). Standing

must be established before consideration of the merits. *Whitmore v.*

*Arkansas*, 495 U.S. 149, 154 (1990). A litigant must show: "(1) an injury in

fact that (2) is fairly traceable to the challenged action of the defendant and

(3) is likely to be redressed by a favorable decision." *Jacobson*, 974 F.3d at

1245 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). And,

"threatened injuries [must be] "certainly impending." *Id.* (citing *Clapper v.*

*Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).

## I.     The individual Plaintiffs lack standing because they have not been injured in a particularized manner and only claim generalized grievances.

Injury in fact is the "first and foremost" of the standing elements.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish an injury in

fact, a plaintiff must show that he or she has suffered "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, *not conjectural or hypothetical.*" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (emphasis added). In the aftermath of the 2020 elections, the Third Circuit explained that an injury "that does no specific harm to you, or if it depends on a harm that may never happen, then you lack an injury for which you may seek relief from a federal court." *Bognet v. Sec'y of Pa.,* 980 F.3d 336, 348 (3d Cir. 2020) (emphasis added). Here, the evidence falls short of demonstrating an injury in fact.[5]

With respect to particularity, the alleged injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.[6] Plaintiffs "must demonstrate 'a personal stake in the outcome of the controversy.'" *Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513 at *4 (N.D. Ga. Nov. 20, 2020) (*Wood I*). As the district court in *Wood I* explained, a personal stake "requires more than a mere 'keen interest in the issue.'" *Id.* (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)).

---

[5] *Bognet* has repeatedly been favorably cited by courts in the Eleventh Circuit. *Wood*, 981 F.3d at 1314-15; *Wood I*, 2020 WL 6817513 at *4; *Wood II*, 2020 WL 7706833 at *3; *Trump v. Kemp*, No. 1:20-CV-5310-MHC, 2021 WL 49935 at *3 (N.D. Ga. Jan. 5, 2021).

[6] Footnote 7 in *Spokeo* reinforces this analysis because it specifically references the particularized harm suffered by individuals, even if many are injured.

The Eleventh Circuit affirmed the holding in *Wood I*, finding no particularized injury because no plaintiff was specifically disadvantaged even if a vote was improperly counted. *Wood*, 981 F.3d at 1314 (vote dilution can be a basis for standing but it requires a point of comparison). The court found Wood's interest in ensuring only lawful ballots are counted was not a distinct, personal injury. *Id.* Moreover, in considering Wood's argument that Georgia treats absentee voters as a "preferred class," the court stated, "[e]ven if we assume that absentee voters are favored over in-person voters, that harm does not affect Wood as an individual—it is instead shared identically by the four million or so Georgians who voted in person this November." *Id.* at 1315.

In his second lawsuit, *Wood II*, Wood sought, *inter alia*, to enjoin the use of the BMD voting system on constitutional grounds. *See Wood II*, 2020 WL 7706833, at *1. Wood alleged that his vote was devalued in relation to other votes because of claimed irregularities with the BMD voting machines and absentee-ballot procedures, which he claimed subjected him to unequal treatment as an in-person voter. *Id.* at *3-4. But the district court found Wood did not have a particularized injury and could not show a threatened concrete interest of his own. *Id.* at *4.

Plaintiffs have fared no better than Wood in articulating a particularized and distinct injury. Indeed, the *Wood II* injuries at least

- 9 -

*alleged* unequal treatment due to "systemic fraud" caused by a mysterious algorithm that swapped votes. Plaintiffs do not and, instead, complain that a system *they refuse to use* is vulnerable and unverifiable for those Georgia voters that *do* vote in person. "Setting aside the fact that '[i]t is an individual voter's *choice* whether to vote by mail or in person,' these complaints are generalized grievances." *Wood*, 981 F.3d at 1315 (citing *Bognet*, 2020 WL 6686120, at *15). Thus, Plaintiffs' allegations are not injuries that affect *these Plaintiffs* "in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.

Put another way, Plaintiffs' alleged injury is simply their fear that ballots will not be lawfully counted as cast. But "[a]n injury to the right 'to require that the government be administered according to the law' is a generalized grievance." *Wood*, 981 F.3d at 1314 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1995)). "A generalized grievance is 'undifferentiated and common to all members of the public.'" *Wood*, 981 F.3d at 1307 (quoting *Lujan*, 504 U.S. at 575). The alleged injury must be "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). A "keen interest in the issue" is not enough. *Trump*, 138 S. Ct. at 2416. Because Plaintiffs cannot identify a concrete and particularized injury, this Court "must not countenance[]" their

claims. *Wood*, 981 F.3d at 1315 (quoting *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007)).

## II.   Plaintiffs lack an injury that is actual and imminent.

Because Plaintiffs seek injunctive relief, they "must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (citations omitted). In this regard, the threat of future injury must be "certainly impending,"—and that is fatal to the claims in this case. *See Wood I*, 2020 WL 6817513, at \*2 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Eleventh Circuit recently considered whether a plaintiff in a data-breach case had alleged an injury sufficient for standing "because he faces a substantial risk of identity theft, fraud, and other harm in the future as a result of the data breach." *Tsao*, 2021 WL 381948 at \*5. Just as Plaintiffs' claims here are premised on a fear that votes *may* be altered in the future (though, not theirs, given their refusal to use the BMDs), Tsao's claims were premised on a fear that "he *could* suffer future injury from misuse of the personal information disclosed during the cyber-attack (though he has not yet), and this risk of misuse alone is enough to satisfy the standing requirement." *Id.* at \*3 (emphasis in original). And just as just as in *Tsao*, the

claims in this case are insufficient to show an injury that is "certainly

impending." *See id.* at \*9 (citing *Clapper*, 568 U.S. at 409, 414 n.5).

Even more so, Plaintiffs here do not allege an actual breach of the BMD

system—but in *Tsao*, there had been an actual compromise of the point-of-

sale system.[7] *See also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917,

927 (11th Cir. 2020) (elevated risk of identity theft). Yet despite those facts

and allegations in *Tsao* and *Muransky*, the Eleventh Circuit concluded there

was an insufficient injury to confer Article III standing.

Further unlike the plaintiffs in *Tsao* and *Muransky*, the Plaintiffs here

have had an uncommonly lengthy opportunity to probe for and produce

evidence of an actual injury. But even after having access to the State's DREs

for a significant amount of time, Dr. Halderman has yet to find any vote-

changing malware in the DRE system, and instead only confirms "the

*vulnerability* of the DRE system" and ways that "malware *could have* spread

through it." [Doc. 885-1, ¶¶ 17-35] (emphasis added).

Other election cases have reached the same conclusion. In *Twelfth

Cong. District Republican Cmte.*, for example, the plaintiffs asserted

---

[7] Plaintiffs' attempted reliance on Mr. Lamb accessing the KSU server that had some files related to the DRE and ExpressPoll system years ago is even more attenuated from the system they now challenge than the claimed triggering events in *Tsao* and *Muransky* that were insufficient to confer standing.

constitutional claims about absentee ballots that were "based upon speculation about actions or conduct of independent bad actors and simply they see ghosts behind a door." *Twelfth Cong. District Republican Cmte v. Raffensperger*, Case No. 1:20-CV-180 (S.D. Ga. Dec. 17, 2020), Motions Hrg. Tr. at 6:14-24.[8] Plaintiffs here suffer from the same fault, seeing ghosts in a machine. But as in *Twelfth Cong. District*, Plaintiffs do not have standing.

Further, Plaintiffs have not shown a "substantial likelihood" that they will suffer such an injury in the future. *See Strickland*, 772 F.3d at 883. Merely alleging that there is some chance Plaintiffs could be harmed in the future is not enough to establish injury-in-fact. *See GALEO v. Gwinnett Cnty. Bd. of Registration and Elections*, 2020 WL 6589661 at *5 (N.D. Ga. Oct. 5, 2020) (harm was too speculative to warrant Article III standing). Because the injuries Plaintiffs allege have not actually occurred and are not certainly impending, Plaintiffs injuries are hypothetical and not sufficient for standing.

## III.   The Coalition for Good Governance has not established an injury-in-fact.

In a similar vein, the Coalition for Good Governance has failed to establish that an injury in fact based on diversion of resources. *Arcia v. Fla.*

---

[8] A copy of the transcript of the December 17 motions hearing in *Twelfth Cong. District Republican Cmte*, Case No. 1:20-CV-180, is attached as **Exhibit B**.

above, the Coalition cannot "secure a lower standard for Article III standing by making an expenditure based on a nonparanoid fear." *Id.*

Finally, the Coalition has not identified what activities it must "divert resources away *from* in order to spend additional resources" combatting the practices at issue. *Jacobson*, 974 F.3d at 1250 (emphasis in original). Nor has it shown any perceptible impairment of organizational activities or daily operations, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919-21 (D.C. Cir. 2015), or that it diverted resources "beyond those normally expended," *Cigar Ass'n of Am. v. U.S.*, 323 F.R.D. 54, 63 (D.C. Dist. 2017). *Accord, Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018); *Ga. Latino Alliance for Human Rights v. Deal*, 691 F.3d 1250, 1260 (11th Cir. 2012). After nearly four years of litigation, there is simply no evidence to support that the Coalition is doing anything other than pursuing its purpose.

## CONCLUSION

Based on this brief and State Defendants' prior briefs in this case, Plaintiffs lack standing and this case should be dismissed.

Respectfully submitted this 12th day of February, 2021.

> */s/Vincent R. Russo*
> Vincent R. Russo
> Georgia Bar No. 242628

- 15 -

vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
R. Dal Burton
Georgia Bar No. 097890
dburton@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202