# EXHIBIT 294

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al._<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD RAFFENSPERGER, et al._<br><br>Defendants. | CIVIL ACTION FILE<br>NO.: 1:17-cv-2989-AT |

**SUPPLEMENTAL DECLARATION OF MARILYN MARKS**

**I, MARILYN MARKS,** hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I have personal knowledge of all facts stated in this declaration and, if called to testify, I could and would testify competently thereto.

2. I am the Executive Director of Coalition for Good Governance ("CGG"). I am over the age of 18.

**CGG Activities and Diversion of Resources**

3. Coalition for Good Governance, (formally known as Rocky Mountain Foundation) was founded in 2008 as a non-profit non-partisan corporation under the laws of Colorado. The current management of CGG undertook the management of the organization in 2014 with

1

7. CGG's first efforts in 2017 in Georgia were in petitioning then Secretary Kemp for a reexamination of the DRE voting system. CGG filed a lawsuit in Fulton County Superior Court in May 2017 seeking to remove DRE from use in the Ossoff/Handle Congressional District 6 runoff. In July 2017 this Curling lawsuit was filed, initially to challenge the outcome of that runoff, and then seeking to halt the use of the DRE system.

8. CCG organized other lawsuits in Georgia related to election matters including challenging the excess rejections of absentee ballots (2018), COVID-related voting infrastructure improvements (2020), and an election contest (2018), all of which commanded significant resources of CGG's volunteers' and management's time and CGG's modest budget.

9. The unpredicted complexity and protracted time requirements and expenses of this litigation has required CGG to consistently redirect resources of funding and management and volunteer time away from other desired projects that are of great interest to our board members, members, and donors.

10. I have had to reduce my active involvement in several important efforts that CGG supports because of the time demands of this litigation, and CGG has had to curtail and decline numerous organization activities.

Some examples include: inability to participate in the EAC's current process of accepting comments on the controversial pending Voluntary Voting System Standards; sharply reducing active involvement in Election Verification Network (a national organization of election experts); declining most speaking invitations on the topic of election security; ceased active involvement in State Audit Working Group (experts focused on developing election auditing standards); ceased activity in weekly meetings of Election Cybersecurity Working Group (a group proposing VVSG standards to NIST); ceased work in on-going drive-up voting project CGG initiated in North Carolina; became inactive in working with other North Carolina election transparency groups on voter education and transparency efforts in Wake County; reduced collaboration with North Carolina NAACP on voter education on election security; stopped participation in meetings of the North Carolina State Board of Elections; stopped participation in Charlotte-Mecklenburg Board of Elections meetings; lacked resources to provide requested consulting support for another non-profit organization's North Carolina state court case on ballot marking devices; abandoned CGG's plans to file a lawsuit in North Carolina against the use of ballot marking devices; deferred plans to file a lawsuit in North Carolina on the violations of

secret ballot laws; limiting CGG's involvement in the current effort to educate the New York State Board of Elections on the problems in using Ballot Marking Devices; declining request of Colorado members to help educate the Boulder Colorado City Council on problems with Instant Runoff Voting; declining the request of Georgia members to conduct voter education or author an opinion piece on the difficulties with Ranked Choice Voting; cancel plans for candidate forum on election security prior to the November election; cancel plans to conduct a meeting regarding Georgia needed election law changes with a group of Georgia lawmakers; delayed preparation of education materials for Georgia election officials regarding HB270; and failing to keep our website, fundraising efforts and donor communications current.

11. The examples of more current resource diversions listed above are similar to the activities and resource diversions detailed in June 2018 in Coalitions' Plaintiffs' TAC (Doc. 226 ¶¶142-143) which were true and correct at that time.

**Batch Management-Tabulation Software Problem**

12. During the November 3, 2021 election, Harri Hursti and I visited Gwinnett County Elections for several hours on multiple days as they were having significant problems with the Dominion server processing

places and does not effectively obscure sightlines to the touchscreens by people in the polling place. This reality is in conflict with the Secretary of State's order of March 31, 2020. (Doc. 809-1 at 20). The Secretary's order was a result of a Help America Vote Act complaint filed by CGG in to address the violation of ballot secrecy that appears to be impractical to resolve given the design of the Dominion BMD units.

Executed on this date, February 12, 2021

*[signature]*

Marilyn Marks