**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DONNA CURLING, et al;                    )
                                         )
            Plaintiffs,                  )
                                         )
                                         )
v.                                       )   CIVIL ACTION
                                         )   FILE NO: 1:17cv02989-AT
BRAD RAFFENSBERGER, et al.;              )
                                         )
                                         )
            Defendants.                  )
                                         )
                                         )
                                         )
                                         )
_____ )

## FULTON COUNTY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

From the beginning of this suit, and as argued previously, it is clear that at all times relevant to this case, the Fulton County Defendants have been required to follow; and have indeed followed the law of the State of Georgia in conducting elections. First, utilizing a Direct Recording Electronic ("DRE") system, and currently a Ballot Marking Devices ("BMD") system, the Fulton County Defendants are complying with the statewide mandated voting system.

In accordance with § 21-2-50 of the Ga. Elec. Co. Ann., the Secretary of State has the power to (1) to determine the forms of nomination petition, ballots, and other forms…;" "(9) to determine and approve the form of ballots for use in special elections;" "(15) **to develop, program, build, and review ballots for use by counties and municipalities on voting system in use in the state.**" § 21-2-50 (a)(1), (9) and (15). (emphasis added). § 21-2-210 of the Ga. Elec. Co. Ann. provides, "The Secretary of State is designated as the chief state election official to coordinate the responsibilities of this state under the National Voter Registration Act of 1993." *See id.* "The **equipment used** for casting and counting votes in county, state, and federal elections **shall be the same in each county in this state and shall be provided to each county by the state, as determined by the Secretary of State**." *See* O.C.G.A. § 21-2-300 (a). (emphasis added).

As it relates to the former DRE system, in accordance with the Georgia Constitution, the General Assembly established said system which the Secretary of State then implemented. "after a Pilot Project was conducted in 2001 pursuant to Ga. L. 2001, pp. 269, 285, § 19, **the General Assembly established a uniform direct recording electronic (DRE) voting system**. Ga. L. 2002, p. 598. *See also* Ga. L. 2003, p. 517. The Secretary of State examined, purchased, and distributed touch-screen voting machines, testing them at various points during the

process." *See Favorito v. Handel*, 285 Ga. 795, 795, 684 S.E.2d 257, 259 (2009). (emphasis added).

Similarly, as it relates to the current BMD system, the General Assembly/Georgia Legislature established said system, and the Secretary of State implemented the same. "Effective April 2, 2019, the Georgia legislature passed H.B. 316 and S.B. 34, mandating a new uniform statewide voting system… Georgia's new election code defines "electronic ballot marker" – also referred to as a ballot marking device or BMD…" (Doc. 751 ¶ A).  As is the normal course, pursuant to O.C.G.A. § 21-2-300 (a)(1) "equipment used for casting and counting votes in county, state, and federal elections shall be the same in each county of this state and shall be permitted to each county by the state, as determined by the Secretary of State. *Id.*

The Fulton County Defendants, as well as all election superintendents in the State of Georgia, are required to utilize the mandated statewide BMD system when conducting elections.  And in doing so, they have not unfairly infringed upon Plaintiffs constitutional rights. Plaintiffs cannot present an issue of material fact as to the Fulton County Defendants' actions that have led to the claimed constitutional violations. Accordingly, the Fulton County Defendants are entitled to summary judgment as a matter of law.

The claims asserted by both the Curling Plaintiffs and the Coalition Plaintiffs are improper as against the Fulton County Defendants. The Fulton County Defendants neither established nor implemented either voting system which Plaintiffs claim unfairly infringe upon their constitutional rights.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Fulton County Defendants Have Not Deprived Plaintiffs of Any Rights.

The Fulton County Defendants cannot be held liable to the Plaintiffs, as they have not subjected the Plaintiffs to any deprivation of rights.  No actions taken by any of the Fulton County Defendants, infringed upon the Plaintiffs right to vote. Further, Plaintiffs cannot show that the Fulton County Defendants' rules, customs, or policies required the use of the voting systems and equipment that purportedly infringed on their First and Fourteenth Amendment rights. To determine if such a violation occurred, "a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule"" *Burdick v. Takushi*, 504 U.S. 428, 434, (1992) (quoting *Anderson*, 460 U.S. at 789).

Again, there is no "rule," custom, or policy put forth by the Fulton County Defendants.  "In order to state a claim against the County under 42 USC § 1983, . . . (Plaintiff) must allege that a County policymaker's acts or omissions, done under color of state law, resulted in the deprivation of a right, privilege, or immunity protected by the United States Constitution or the laws of the United States." *Brown v. Dorsey*, 276 Ga. App. 851, 853 (2005). "[L]ocal government entities are included among those persons to whom § 1983 applies." Dorsey, 276 at 853 (*citing Monell v. Dept. of Social Services.*, 436 U.S. 658, 690–691 (1978). "[H]owever, it is only when the execution of . . . (the local government entity's) **policy or custom** inflicts the subject injury that liability can attach to the entity under § 1983." *Dorsey*, 276 at 853 (*citing Board of County Commissioners v. Brown*, 520 U.S. 397, 403(II); *Monell v. Dept. of Social Services.*, 436 U.S. 658, 690–691 (1978)) [emphasis added]. "To make this showing, . . . [P]laintiff must prove that, through a deliberate and official policy, the local governmental entity was the moving force behind the constitutional tort." *Dorsey*, 276 at 853 (*citing Brown*, 520 U.S. at 403-404).

The Plaintiffs argue that Defendants fail to meet the burden of the Anderson/Burdick test.  (Doc. 1625 at p. 65).  In so arguing, Plaintiffs point to previous references by this Court to the Anderson/Burdick test. (Doc. 1624 at p.

42).   However, none of these citations pertain to the Fulton County Defendants, they all reference the implementation of the statewide voting system.  (Doc. 1624 at pp. 44 – 46) (referencing Docs 309, 579, 918, 965, 966 and 964).

In referencing previous holdings by this Court, Plaintiffs cite the following language from the Court: "Plaintiffs had shown a substantial likelihood of success on the merits of their claims that ***Defendants' implementation of the DRE voting system absent an independent paper audit trail*** of the vote puts Plaintiffs at imminent risk of deprivation of their fundamental right to cast an effective vote that is accurately counted." (Doc. 309, at 41, 41–44);  "Plaintiffs have continued to demonstrate a likelihood of prevailing on the merits of their claims that the current ***non-auditable Georgia GEMS/DRE voting system***, as implemented, burdens and deprives them of their rights to cast secure votes that are reliably counted, as guaranteed under the First and Fourteenth Amendments" (Doc. 579, at 130); and "[Plaintiffs] are likely to succeed on the merits of their claim regarding the security and reliability of the ***voter registration database and electronic pollbook system***." (Doc. 918, at 63).

None of these citations implicate rules or policies put forth by the Fulton County Defendants. The Court's previous findings with respect to the Anderson/Burdick test pertain wholly to the burden of State's utilization of its

statewide voting system, as evidenced by the Court's language cited by Plaintiffs:

> A choice between two evils is no choice at all; the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election regardless of which method they choose to cast their vote. That Plaintiffs and other voters have the alternative of casting an absentee hand-marked paper ballot does not lessen or ***absolve the State of the burdens imposed by the State's chosen, preferred, primary voting system[.]***

(Doc. 964 at 83–84).

Plainly, the Court considered these factors in weighing, "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule." As stated previously, there is no rule put forth by the Fulton County Defendants. As Plaintiffs argue, the Fulton County Defendants have not offered analysis under the Anderson/Burdick test (Doc. 1625 at p. 65, footnote 35), because their rule cannot be justified, as there is no rule. No rule has been imposed by the Fulton County Defendants. Plaintiffs themselves argue, the Fulton County Defendants are not "arms of the state." (Doc. 1625 at 37).

State law provides that "the equipment used for casting and counting votes in county, state, and federal elections shall . . . be provided to each county by the state, as determined by the Secretary of State. O.C.G.A. § 21-2-300 (a)(1). In

addition, the State Election Board also echoed this sentiment, promulgating that "[t]he electronic ballot markers and ballot scanners shall be supplied by the Secretary of State or purchased by the counties with the authorization of the Secretary of State." Ga. Comp. R. & Regs. r. 183–1–12–.01. In light of this power conferred to the State Defendants, they issued the rule requiring the statewide use of the BMD systems. Thus, the State Defendants again have chosen to enforce state law to generally require the statewide use of a specific voting system. *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1317 (N.D. Ga. 2018) (The State Election Board issued a rule requiring the statewide use of DRE voting systems, pursuant to statutory authority. The requirement was alleged to be a constitutional violation. This Court reasoned that the State Defendants chose to enforce state law to generally require the use of the DREs). Therefore, the Fulton County Defendants were merely operating at the direction of the State Defendants rules and Plaintiffs have not and presented evidence to the contrary. The Fulton County Defendants cannot be held liable for the execution of the rules of the State Defendants.

The Fulton County Defendants must follow the Election Code of Georgia. Failure to follow the state election law would subject the Fulton County Defendants to suspension or removal. *See* O.C.G.A. §21-2-33.2. Further, the Fulton County Defendants could be investigated and prosecuted by the District

8

Attorney or Attorney General for violating state election law. *See* O.C.G.A. §21-2-31(5).

### B. The Power to Establish and Implement Voting Systems Rests Squarely with the Secretary of State and the State Legislature and not the Fulton County Defendants.

In accordance with § 21-2-50 of the Ga. Elec. Co. Ann., the Secretary of State has the power to (1) to determine the forms of nomination petition, ballots, and other forms…;" "(9) to determine and approve the form of ballots for use in special elections;" "(15) **to develop, program, build, and review ballots <u>for use by counties and municipalities</u> on voting system in use in the state.**" § 21-2-50 (a)(1), (9) and (15). (emphasis added). § 21-2-210 of the Ga. Elec. Co. Ann. provides, "The Secretary of State is designated as the chief state election official to coordinate the responsibilities of this state under the National Voter Registration Act of 1993." *See id.* "The **equipment used** for casting and counting votes in county, state, and federal elections shall be the same in each county in this state and **shall be provided to each county by the state, as determined by the Secretary of State**." *See* O.C.G.A. § 21-2-300 (a). (emphasis added). Moreover, § 21-2-324 (a) and (b) of the Ga. Elec. Co. Ann. provides, in pertinent part, "(a) any person or organization owning, manufacturing, or selling, or being interested in the

manufacture or sale of, any voting machine may request the Secretary of State to examine the machine."

"(b) The Secretary of State shall thereupon require such machine to be examined or reexamined by three examiners when he or she shall appoint for the purpose, of whom one shall be an expert in patent law and the other two shall be experts in mechanics, and shall be an expert in patent law and the other two shall be experts in mechanics, and shall require off them a written report on such machine, attested by their signatures; and the Secretary of State shall examine the machine and shall make and file, together with the reports of the appointed examiners, his or her own report, attested by his or her signature and the seal of his or her office, stating whether, in his or her opinion and in consideration of the reports of the examiners aforesaid, the kind of machine so examined can be safely and accurately used by electors are primaries and elections as provided in this chapter. **If his or her report states that the machine can be so used, the machine shall be deemed approved; and machines of its kind may be adopted for use at primaries and elections as provided in this chapter**." *Id.* (emphasis added).

As it relates to the former DRE system, in accordance with the Georgia Constitution, the General Assembly established said system which the Secretary of

State then implemented. "after a Pilot Project was conducted in 2001 pursuant to Ga. L. 2001, pp. 269, 285, § 19, the General Assembly established a uniform direct recording electronic (DRE) voting system. Ga. L. 2002, p. 598. *See also* Ga. L. 2003, p. 517. The Secretary of State examined, purchased, and distributed touch-screen voting machines, testing them at various points during the process." *See Favorito v. Handel*, 285 Ga. 795, 795, 684 S.E.2d 257, 259 (2009). (emphasis added).

Similarly, as it relates to the current BMD system, the General Assembly/Georgia Legislature established said system, and the Secretary of State implemented the same. "Effective April 2, 2019, the Georgia legislature passed H.B. 316 and S.B. 34, mandating a new uniform statewide voting system… Georgia's new election code defines "electronic ballot marker" – also referred to as a ballot marking device or BMD…" (Doc. 751 ¶ A).  As is the normal course, pursuant to O.C.G.A. § 21-2-300 (a)(1) "equipment used for casting and counting votes in county, state, and federal elections **shall be the same in each county of this state** and shall be permitted to each county by the state, as determined by the Secretary of State. *Id.*

Moreover, it is of note that the Fulton County Defendants, who are members of the Fulton County Board of Registration and Elections, are members of an entity

created by the General Assembly and therefore cannot establish or implement voting systems of its own volition. (General Assembly authorized to create board of elections and board of election and registration in any county - § 21-2-40 (a) of the Ga. Elec. Co. Ann. states, "(a) the General Assembly may by local Act create a board of elections in any county of this state and empower the board with the powers and duties of the election superintendent relating to the conduct of primaries and elections. Such board shall consist of not fewer than three members."). The instant Defendants are simply a creation of the General Assembly in furtherance of fair elections.

In their Responses, Plaintiffs argue that the Fulton County Defendants have violated Plaintiffs right to secrecy of the ballot. (Doc. 1624 at p. 37). In making such allegations, Plaintiffs include photographs of BMD voting setups. (Doc. 1624 at p. 71). However, it should be noted that these photographs depict voting equipment in Fulton **and Gwinnett Counties**. *Id.* And no photograph shows a voter's choices. Mostly shown are machines without a voter standing in front of the monitor. The photographs with voters show that the voter's body protects their choices from being observed by others.

This further illustrates why it is not proper for Fulton County to be singled out for alleged violations of Plaintiffs' voting rights. It is clear, as Plaintiffs' own

photographic evidence demonstrates, that Fulton County is following the Georgia Election Code and the regulations promulgated by the State of Georgia for the manner in which the statewide voting equipment is to be set up and deployed. Fulton County is using the equipment that has been allocated in the manner provided by state law.  *See* Ga. Comp. R. & Regs. r. 183–1–12.  There is no difference between the way in which Fulton County interprets the election code and/or utilizes the equipment and the way in which Gwinnett County or any other county of the state does the same.  Further, O.C.G.A. § 21-2-300 (d) provides, "[t]he Secretary of State shall be responsible for the development, implementation, and provision of a continuing program to educate voters, ***elections officials, and poll workers*** in the proper use of such voting equipment."  Thus, pursuant to the Georgia Election Code, the Secretary of State is responsible for training all election official and workers on how to properly implement the BMD voting system.

In support of their Responses, Coalition Plaintiffs have attached Declarations of several Coalition Members.  However, Fulton County Defendants object to every Declaration by Coalition Members as each has an interest in the outcome of the case and a bias in stating "facts."  There are issues with each of these Declarations.  For example, the Virginia Forney Declaration mentions Fulton County but alleges nothing that rises to the level of a constitutional violation. (Doc.

1629-7). The Marks Declaration attaches a letter from Plaintiff's Counsel Bruce Brown to former counsel for the Fulton County Defendants, dated October 3, 2020. Fulton County Defendants do not agree with the contents of the letter and, further, the letter is not evidence but rather argument by counsel. (Doc. 1629-8, Exhibit 10).

The Declarations of Martin and Missett are filled with filled with opinions and conclusions and statements and reports by others and are therefore not reliable. These Plaintiffs Declarations also reveal that both voted. (Docs. 1594 and 1629-11). The Nakamura Declaration makes allegations about not receiving absentee ballots on time, which is not relevant to the claims in this case which pertain to the statewide DRE and BMD based voting systems. (Doc. 1629-12).

This Court previously recognized that Georgia law confers on the Georgia Secretary of State the primary responsibility to manage Georgia's electoral system. (Doc. 579, p.17, citing O.C.G.A. §21-2-50(b)). The Secretary of State has the statutory responsibility to "develop, program, build, and review ballots for use by counties and municipalities on voting systems in use in the state." O.C.G.A. §21-2-50(a)(15). In their Third Amended Complaint, the Coalition Plaintiffs point to actions taken by the Members of the Fulton County BRE "[w]ith the authorization

of Defendants Kemp and the State Board." (Doc. 226 ¶¶135-138). This case is about State law and choices made by the State Defendants.

Based on the foregoing it is evident that the power to both establish and implement voting systems, such as the DRE and BMD systems, which Plaintiffs' claim violated their right to vote, rests solely with the State of Georgia (via the Secretary of State). Counties, which include, members of the County Board of Registration and Elections do not have the authority or the autonomy to establish or implement voting systems and therefore cannot be held liable for violating Plaintiffs' rights under a system they did not create.

### C. Coffee County.

In their Responses, Plaintiffs have discussed, at length, the events that took place in Coffee County, Georgia in 2021, involving the statewide voting system. (Doc. 1624 at 52; Doc. 1625 at 14). The alleged irregularities, security breaches, and conduct are highlighted, in order to demonstrate the voting system implemented by the State of Georgia is insecure. *Id.*

The Plaintiffs have alleged that in January 2021, Georgia's voting system was breached by a team from forensics firm SullivanStrickler, orchestrated by Coffee County Republican Party Chair Cathy Latham, election officials Misty Hampton and Eric Chaney, bail bondsman Scott Hall, and Cyber Ninjas CEO

Doug Logan.  (Doc. 1625 at pp. 14-15).

On January 7, 2021, SullivanStrickler forensically imaged many components of Georgia's voting system in Coffee County, including the ICC, the EMS server, ICPs, a Dominion-supplied laptop, and extensive removable media, including one containing the Dominion ICX BMD software. *Id.*  Evidence indicates that SullivanStrickler altered data on at least the Coffee County EMS server and numerous cast ballots were scanned and shared with others. *Id.*

SullivanStrickler uploaded the data it collected from Georgia's voting system—including protected software from nearly every component of that system—to a cloud-based ShareFile site and provided login credentials to download the data to several individuals.  Anyone with login information could access that data. *Id.* At 17.

Plaintiffs have made serious allegations concerning Coffee County and Coffee County officials.  However, Coffee County is not a party to this lawsuit.  Further Coffee County is not Fulton County.  The Fulton County Defendants have no involvement or affiliation with any of these allegations.  Plaintiffs allege that the events in Coffee County demonstrate that the statewide BMD voting system is not secure and is unconstitutional; and that Plaintiffs' rights are being violated by not being given a statewide system of hand-marked paper ballots by which to vote.

(Docs. 601, 627).

However, the Fulton County Defendants did not select the BMD voting system and are mandated by state law to use the system employed by the State of Georgia. (O.C.G.A. § 21-2-300 (a)(1)). Yet, the Fulton County Defendants are somehow implicated in this case and Plaintiffs are asking this Court to find the Fulton County Defendants liable for allegations against the statewide voting system, and the mandated rules and regulations propagated by the State of Georgia for implementation of the BMD system.

This is another example of why the Fulton County Defendants are not proper defendants in this case and why they have no liability to Plaintiffs in this case. As shown above, Plaintiffs have made their case against the statewide BMD voting system and have included examples and allegations against Gwinnett and Coffee counties. Thus, demonstrating that the alleged problems with the BMD system should not be laid at the feet of Fulton County, especially when there are no such allegations of wrongdoing by any of the Fulton County Defendants. The Fulton County Defendants have no control over the State's selection, implementation or operation of the BMD based voting system that the Plaintiffs seek to have declared unconstitutional.

## **CONCLUSION**

Based on the foregoing it is clear, as it was at the outset of this matter, that the Fulton County Defendants are an improper party to this action as they did not establish or implement any of the voting systems alleged to have violated Plaintiffs' constitutional rights to vote in this action. Accordingly, the Fulton County Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted this 13th day of March 2023.

**OFFICE OF THE COUNTY ATTORNEY**

Kaye Burwell
Georgia Bar Number:   775060
kaye.burwell@fultoncountyga.gov
david.lowman@fultoncountyga.gov

**_/s/ David R. Lowman_**
David R. Lowman
Georgia Bar Number: 460298
david.lowman@fultoncountyga.gov

ATTORNEYS FOR DEFENDANTS
MARY CAROLE COONEY,
VERNETTA NURIDDIN, DAVID J.
BURGE, AARON JOHNSON, AND
THE FULTON COUNTY BOARD
OF REGISTRATION &
ELECTIONS

**OFFICE OF THE COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, et al;                    )
                                         )
      Plaintiffs,                      )
                                         )
                                         )
v.                                       )   CIVIL ACTION
                                         )   FILE NO: 1:17cv02989-AT
BRAD RAFFENSBERGER, et al.;              )
                                         )
                                         )
      Defendants.                      )
                                         )
                                         )
                                         )
_____ )

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing **FULTON COUNTY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all attorneys of record.

This 13th day of March, 2023.

                                  */s/ David R. Lowman*
                                  David R. Lowman
                                  Georgia Bar Number: 460298

david.lowman@fultoncountyga.gov