## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, *et al.*

*Plaintiffs,*

      v.

BRAD RAFFENSPERGER, *et al.*,

*Defendants.*

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON COALITION PLAINTIFFS' CLAIMS

## INTRODUCTION

Coalition Plaintiffs'[1] Response to State Defendants' Motion for Summary Judgment [Doc. 1624] makes abundantly clear just why summary judgment is necessary in this case. Coalition Plaintiffs have not pointed this Court to any genuine issue of a *material* fact sufficient to defeat State Defendants' motion. Instead, Coalition Plaintiffs now propose at least two brand-new forms of relief in this case: (1) reconfiguring software on the *precinct* scanners—not just using them as-is with hand-marked paper ballots; and (2) a new set of proposed changes to their pollbook backup ideas, including the use of "a secure read-only USB stick." [Doc. 1624, p. 36[2]]. Despite the Eleventh Circuit's ruling in this case, Coalition Plaintiffs still seek modifications to the scanner settings of central-count scanners. [Doc. 1624, p. 40]. And despite being limited to the relief asserted in their operative complaints, Coalition Plaintiffs continue to assert a variety of claims about how BMDs are arranged in precincts, how scanners process ballots, and the PollPad voter check-in units while still maintaining that they are seeking relief about Dominion BMDs, [Doc. 1624, p. 35], and not DREs. These claims, new and old, fail as a matter of law.

---

[1] Coalition Plaintiffs are the Coalition for Good Governance (CGG), Laura M. Digges, William Digges III, Ricardo Davis, and Megan Missett.

[2] All citations to ECF documents are to the blue numbers at the top of each page.

As discussed below, this Court should dismiss the entirety of Coalition Plaintiffs' claims. In the alternative, clarity from the Court as to which claims remain and will proceed to trial, is imperative at this stage of the case. The constantly shifting nature of the claims in this case make it unmanageable for the parties and this Court, especially when Coalition Plaintiffs continue asking this Court to "step into the role of elected representatives, weighing the costs and benefits of various procedures when the State has already done so in a reasonable and nondiscriminatory way." *Curling v. Raffensperger*, 50 F.4th 1114, 1126 (11th Cir. 2022).

## ARGUMENT AND CITATION OF AUTHORITY

In their response, Coalition Plaintiffs miss several important points about this case and the applicable law and thus distract the Court from what really matters at this stage. First, granting preliminary injunctions or finding a likelihood of success on the merits is not binding on this Court in later stages of litigation, even on issues like standing, where Coalition Plaintiffs claim they have repeatedly prevailed.[3] As Judge Murphy explained when ruling against

---

[3] For example, Coalition Plaintiffs rely on prior rulings on standing in this case [Doc. 1624, p. 25] but fail to address that their standing was *never* tested by cross-examination at the various preliminary-injunction hearings. *See, e.g.*, [Doc. 884] ("The Court will not permit State Defendants to call individual Plaintiffs for testimony on standing at the hearing as it will not aid the court in its determination of the pending relief issues.").

plaintiffs in cases involving Georgia's photo-identification law after a trial when he earlier granted multiple preliminary-injunction motions in their favor, "[i]t is important to note, however, that the preliminary injunction motions were made at an earlier stage of the litigation and were made under more relaxed evidentiary standards. Here, however, Plaintiffs must actually prove their contentions by a preponderance of the evidence, using evidence reduced to an admissible form. Plaintiffs have failed to do so here." *Common Cause/Georgia v. Billups*, 504 F. Supp. 2d 1333, 1379 (N.D. Ga. 2007) *aff'd in part and rev'd in part* 554 F.3d 1340 (11th Cir. 2009).

Second, Coalition Plaintiffs claim that the only question before the Court at the summary-judgment stage is "whether Plaintiffs' claims are supported by evidence." [Doc. 1624, p. 15]. But whether evidence exists for Coalition Plaintiffs' claim is not the standard—the question at this point is whether Coalition Plaintiffs have "come forward with ***significant, probative evidence*** demonstrating the existence of a triable issue of fact." *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) (emphasis added) (quoting *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). "Only disputes over facts that might affect the outcome of the suit ***under the governing law*** will properly preclude the entry of summary judgment" and "[f]actual

disputes that are ***irrelevant or unnecessary*** will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis added).

As discussed below, when this Court reviews what claims are actually remaining in this case, Coalition Plaintiffs have not pointed to any disputes about facts that are *relevant* or *necessary* to resolve this case. *Id*. Coalition Plaintiffs failed to put forward material evidence of standing that demonstrates this Court has jurisdiction. And they have shown no basis for this Court to conclude with admissible evidence that any severe or even moderate burden on the right to vote exists through the use of Georgia's Dominion voting equipment. This Court has no jurisdiction to continue this case, but even if it does, State Defendants are entitled to judgment as a matter of law because of the lack of any dispute over any *material* fact relevant and necessary to the *Anderson-Burdick* analysis in this case.

## I.   Coalition Plaintiffs have not demonstrated they have standing.

Coalition Plaintiffs have the burden of proving they have standing "with the manner and degree of evidence required at the successive stages of the litigation." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, at summary judgment, "the plaintiff must set forth by affidavit or other evidence specific facts" to prevail. *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. EPA,*

386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola County*, 222 F.3d 875, 878 (11th Cir. 2000)). And mere disputes of fact are not enough—those disputes must be about facts that are material as determined by applicable substantive law. *Anderson*, 477 U.S. at 248; *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) ("Only disputes of material fact are important at summary judgment"). In their efforts to demonstrate they have standing, Coalition Plaintiffs first ask this Court to ignore any connection between their actual claims and their purported injuries. [Doc. 1624, p. 17]. But the only case from the Eleventh Circuit they cite supporting that theory was decided on a preliminary-injunction standard and only discussed the connection between injury and rights in the context of the causation prong of standing. *Reeves v. Comm'r*, 23 F.4th 1308, 1317 (11th Cir. 2022). Even if that case spoke to the issues here—which it does not—it does not address Coalition Plaintiffs' failing to show any concreteness of injury and redressability that are required elements of standing.

## A. The individual Coalition Plaintiffs have not shown an injury that is concrete, particularized, and certainly impending.

### 1. *The individual Coalition Plaintiffs have not suffered a particularized injury.*

In order to have standing, Coalition Plaintiffs must show an injury that is "'distinct and palpable,' as distinguished from merely 'abstract,' and the

alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Georgia Shift v. Gwinnett Cty.*, No. 1:19-cv-01135-AT, 2020 U.S. Dist. LEXIS 31407, at *9 (N.D. Ga. Feb. 12, 2020) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). But Coalition Plaintiffs' response does not provide any material facts showing these substantive requirements are met.

Coalition Plaintiffs claim that voting in-person will injure them, then simply assert that the injuries "are both concrete and particularized." [Doc. 1624, p. 26]. But the long list of state- and federal-law claims they say are impacted by the use of BMDs is *identical* to a list any other voter could make.[4] Coalition Plaintiffs' lists on pages 28 through 33 of their Response illustrate this fact—replacing "Plaintiffs" with "Every Georgia voter" does not change the meaning of any sentence. Thus, every possible injury-in-fact asserted by the individual Coalition Plaintiffs is a "paradigmatic generalized grievance" and cannot be the basis for standing. *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1322 (N.D. Ga. 2020) (quoting *Bognet v. Sec'y of State of Pa.*, 980 F.3d 336, 356 (2020)), *aff'd* 981 F.3d 1307, 1314 (11th Cir. 2020).

---

[4] In addition to asserting state-law claims that were dismissed, [Doc. 751, p. 50], and violate the Eleventh Amendment, Coalition Plaintiffs also include at least one federal statute with no private right of action. *Compare* [Doc. 1624, p. 27] *with Bellitto v. Snipes*, 935 F.3d 1192, 1199 (11th Cir. 2019). The Georgia Constitution likewise does not require voting in any particular manner. *Democratic Party of Ga., Inc. v. Perdue*, 288 Ga. 720, 727 (2011).

Coalition Plaintiffs attempt to maneuver out of the post-2020 precedent about generalized grievances by claiming that voting laws always apply to everyone, and therefore each individual experience is sufficient to confer an injury. [Doc. 1624, pp. 46–47]. But Coalition Plaintiffs cannot point to anything different about their allegation that State Defendants treat "voters unequally based on how they choose to vote" and the exact same post-2020 claim made by Mr. Wood about the alleged differences in treatment of absentee and in-person voters. *Wood*, 501 F. Supp. 3d at 1322.

Coalition Plaintiffs try to particularize their purported injuries by relying on Dr. Forney and Ms. Dufort, among other Plaintiffs and members, claiming that they are concerned about someone seeing their ballot for various individual reasons. [Doc. 1624, pp. 29 n.9, 48]. But this does not convert their generalized grievances into particularized injuries, because *every* voter has some reason to keep their ballot secret. And Coalition Plaintiffs again try to shoehorn their state-law ballot secrecy claims into the case for purposes of standing, when this Court already dismissed those claims.

Coalition Plaintiffs also base their potential injuries, such as wasted time, on alleged differential treatment of similarly situated voters. [Doc. 1624, pp. 28–34]. But in doing so, they do not even attempt to distinguish the Eleventh Circuit precedent that valuing or favoring "in-person votes less than

absentee votes [is] also only a generalized grievance." *Wood v. Raffensperger*, No. 20-14813, 2021 U.S. App. LEXIS 23376, at *6 (11th Cir. Aug. 6, 2021).

Coalition Plaintiffs' continued reliance on declarations instead of the actual testimony of the individual Plaintiffs further demonstrates the lack of a particularized injury. Once the individual Plaintiffs were unable to identify such an injury during their depositions, Coalition Plaintiffs next attempted to create a record of potential injuries from various members to survive summary judgment. More is required at this point to avoid dismissal.

> 2. *The individual Coalition Plaintiffs have not suffered an injury that is certainly impending.*

The next problem with Coalition Plaintiffs' list of claimed injuries is that many of the injuries are not "certainly impending." *Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*, 986 F.3d 1332, 1339 (11th Cir. 2021). Perhaps nothing illustrates Coalition Plaintiffs' failure to put forward disputes about material facts on this point more than the fact that they do not attempt to distinguish *Tsao*—because they do not even cite it in their brief.[5] Instead, Coalition Plaintiffs again claim that they are merely "at risk," [Doc. 1624, pp. 32–33], without showing that those injuries are certain to occur.

---

[5] Coalition Plaintiffs also do not attempt to distinguish the multiple cases cited by State Defendants on standing from the 2020 election cycle that alleged nearly identical claims and were dismissed. *See* [Doc. 1568-1, p. 24 n.12].

This Court's prior preliminary-injunction rulings, relied on by Coalition Plaintiffs on this issue, came before *Tsao* and *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 920 (11th Cir. 2020) and on a different evidentiary standard. At this point in the case, it is the Court's obligation to review the admissible evidence and binding precedent. Coalition Plaintiffs continue to assert their claims are not speculative, when in fact they are highly speculative and depend on the exploitation of "vulnerabilities in the Dominion voting system" which even experts who agree with Plaintiffs admit have not been exploited in any manner that has affected votes in an election. The most Coalition Plaintiffs even allege is that they are "at risk" of suffering their claimed harms (not that they *will* or *have* suffered them). [Doc. 1624, pp. 32–33, 49–50].

Coalition Plaintiffs rely on *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008), but in that case the Eleventh Circuit found certainty of injury given the nature of the matching process at issue. No such certainty exists here, as Coalition Plaintiffs implicitly acknowledge when they call the injuries "threatened" and refer to them only as "risks." [Doc. 1624, pp. 49–50]. But in the same way that mere risks are not enough to impose a severe burden on the right to vote, *Curling*, 50 F.4th at 1120, they are also not certainly impending. As the Eleventh Circuit already held, "[e]vidence of a mere data breach [that] does not, standing alone, satisfy

9

the requirements of Article III standing." *Tsao*, 986 F.3d at 1344. Thus, Coalition Plaintiffs' claims "are premised entirely on the possibility" of failures that "might result in burdens to voting." *Georgia Shift*, 2020 U.S. Dist. LEXIS 31407, at *10–11. That is not a certainly impending injury.

## B. CGG has not shown a basis for associational standing.

Coalition Plaintiffs devote exactly one paragraph to any evidence in support of their associational-standing claim [Doc. 1624, pp. 42–43]. They acknowledge that the injuries in which they seek to stand in the shoes of their members are identical to the individuals in the prior section. *Id*. Thus, CGG fails to grapple with the fact that in order for CGG to assert the rights of its purported members, those members must have standing to sue ***in their own right***. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). For all the reasons that the individual Plaintiffs only assert generalized grievances, CGG's associational standing claim also fails.

## C. CGG cannot support its diversion-of-resources claim with admissible evidence.

Despite CGG's designee, Ms. Marks, testifying clearly about the lack of diversions by CGG in its 30(b)(6) deposition, Coalition Plaintiffs now offer a series of declarations from Ms. Marks and others attempting to add to further claimed diversions. Not only is this practice prohibited by binding precedent,

*Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony"), it is also not sufficient to place the standing of CGG as an organization into doubt.

Even with their new declarations, CGG still can only show that the "diversion to" activities are this litigation, which is exactly what Ms. Marks testified in CGG's deposition. [Doc. 1569, ¶¶ 186–188, 191–192, 197, 199–200]. The problem with CGG's supposed diversion is not the lack of records—it is that its documented diversions all relate to this litigation or supporting litigation. And "litigation expenses cannot establish standing." *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011). Thus, CGG has failed to point to any dispute about a material fact related to its organizational standing.

### D. Coalition Plaintiffs cannot demonstrate redressability for all of their claims.

Just before expanding their claims in this case to include prohibiting State Defendants from using the Dominion precinct scanners with the current configuration and prohibiting State Defendants from instructing counties to

11

rely on Poll Pads for voter check-in, [Doc. 1624, pp. 35–36], Coalition Plaintiffs claim that their claims will be redressed by an injunction "from enforcing requirements for all in-person voters to use BMDs." [Doc. 1624, p. 35]. But it is impossible to address Coalition Plaintiffs' latest concerns about scanners and Poll Pads through an injunction on BMDs alone.[6] Either Coalition Plaintiffs' claims are limited to the relief sought in their operative Complaints or their alleged injuries cannot be redressed and they lack standing.

### E. There is no dispute about material facts on standing.

Finally, all Coalition Plaintiffs claim that there are disputes of fact about standing. [Doc. 1624, p. 51]. But as discussed above, the only *material* facts before this Court demonstrate there is no concrete, particularized, certainly impending injury to any of the individual Coalition Plaintiffs or to CGG. After years of discovery, it is Coalition Plaintiffs' burden to come forward with admissible facts to place their standing in dispute. They have not done so and that alone disposes of this case.

## II.    Coalition Plaintiffs' claims fail when this Court applies the material facts to the law on the merits.

---

[6] Further, if the only issue in this case is an injunction about BMDs, then the State Election Board has no role here, as the Secretary is responsible for deciding voting equipment in accordance with applicable law. O.C.G.A. § 21-2-300.

### A. Applicable legal standard.

In turning to the merits, it is worth noting a significant area of agreement—State Defendants and Coalition Plaintiffs agree that *Anderson-Burdick* governs the merits of the entirety of Coalition Plaintiffs' claims.[7] *Compare* [Doc. 1624, p. 53] ("*Anderson-Burdick* Governs the Merits") with [Doc. 1568-1, p. 36] ("claims brought under fundamental right to vote and the Equal Protection Clause related to elections are evaluated 'under what is known as the *Anderson-Burdick* test'"). And *Anderson-Burdick* "offers no license for 'second-guessing and interfering with' state decisions; the Constitution charges States, not federal courts, with designing election rules." *Curling*, 50 F.4th at 1122.

Under *Anderson-Burdick*, this Court must first establish the severity of the burden on the right to vote. *Id.* Only *after* the Court determines the severity of the alleged burden does it move to consideration of the State's interests—in other words, the State interests are not weighed *at all* until after this Court

---

[7] While Coalition Plaintiffs later attempt to backtrack on this statement by claiming the unconstitutional-conditions doctrine also applies, [Doc. 1624, p. 54], they offer no voting or election cases that have ever applied that doctrine and offer no reason why this Court should apply a different standard when the Eleventh Circuit makes clear that voting cases must be evaluated under *Anderson-Burdick*, not other standards. *See New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020).

has determined the severity of the claimed burden on the right to vote. *Id*. This is because every regulation of voting places at least some burden on the right to vote, but courts cannot second-guess election rules based on their own preferences. *Id*.

### B. This Court's prior rulings are not binding at summary judgment.

While Coalition Plaintiffs seek to rely on this Court's prior preliminary-injunction rulings, those rulings are not binding at this stage of the litigation, where the evidentiary standard is now different. *See, e.g., Common Cause/Georgia*, 504 F. Supp. 2d at 1379. This Court must now evaluate the claims that remain in this case using the admissible evidence under the proper legal standard of *Anderson-Burdick*.

Coalition Plaintiffs note that this Court previously ruled they were likely to succeed in the past prior to the 2020 preliminary-injunction orders. [Doc. 1624, pp. 57–58]. But none of these orders are binding or relevant to the claims at this stage of the litigation. First, the orders finding a likelihood of success regarding DREs are related to an entirely different, paperless voting system with a different electronic check-in system. [Docs. 309, 579]. As explained in State Defendants' earlier motions, no claims remain properly pending regarding the use of DREs and, in any case, this Court is limited to prospective

injunctive relief. Second, orders from this Court regarding the Dominion system that found severe burdens on the right to vote that are significantly called into doubt by the Eleventh Circuit's ruling on the electronic pollbooks. *Compare* [Docs. 918, 964, 965, 966] *with Curling*, 50 F.4th at 1125 ("the Coalition is asking the courts to redline the already reasonable voting policy the State has in place. That is not our role."). Coalition Plaintiffs do not even attempt to grapple with this direction from the Eleventh Circuit and its impact on prior orders.

### C. Coalition Plaintiffs do not identify any severe burden on the right to vote.

Like their arguments about standing, Coalition Plaintiffs' search for a severe burden on the right to vote also comes up short. They propose six potential burdens, [Doc. 1624, pp. 61–77], none of which rise to the level of severity they claim. In each case, instead of locating a severe burden, Coalition Plaintiffs only ask this Court to replace the State's "policies with the 'better' option offered by the plaintiffs," *Curling*, 50 F.4th at 1125, which this Court cannot do consistent with binding precedent.

First, Coalition Plaintiffs claim a burden on the right to cast "an accountable vote," relying on the QR code on each ballot as an example of something that makes a system "unaccountable." But Coalition Plaintiffs do

not even attempt to explain how they distinguish scanners that read QR codes from those that read hand-marked paper ballots—because the method the scanner uses is the same. *See* [Doc. 1569, ¶¶20–22]. This cannot be a severe burden when the technology functions the same when tabulating votes on Coalition Plaintiffs' preferred system and Georgia's existing system, and especially when the Eleventh Circuit has already decided that electronic voting systems are not a severe burden merely by being electronic. *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006).

Second, Coalition Plaintiffs claim a burden because they say that in-person voters face a "higher likelihood" that their votes will not be effective "if a BMD in their polling place malfunctions or is affected by malware." [Doc. 1624, p. 62]. Setting aside the speculative nature of this language, Coalition Plaintiffs have not shown any actual malware on any voting machine actually used in an election—in Georgia or anywhere. And Coalition Plaintiffs make unsupported statements about the willingness of voters to show ballots to pollworkers and actions pollworkers might take in the face of a variety of hypothetical situations. [Doc. 1624, p. 63]. Coalition Plaintiffs have not shown any severe burden on the right to vote because of a "higher likelihood" of manipulation that is different from anything else that might affect the ability of voters to vote. *See Duncan v. Poythress*, 657 F.2d 691, 699 (5th Cir. Unit B

1981) (the Constitution provides no guarantee against innocent irregularities in the administration of elections). Using electronic voting systems, which every jurisdiction in the country is required to make available to voters with disabilities, is not a severe burden on the right to vote without more and Coalition Plaintiffs have not shown any admissible evidence beyond speculation to support these theories.

Third, Coalition Plaintiffs claim that there is a severe burden on the right to vote because the Dominion system is "inherently unreliable." [Doc. 1624, p. 63]. Coalition Plaintiffs acknowledge that the evidence they have assembled consists only of *vulnerabilities* before providing several examples.[8] [Doc. 1624, p. 64]. As an initial matter, vulnerabilities alone cannot satisfy Coalition Plaintiffs' burden of proof. Mere conjecture of vulnerabilities falls far short of the "significant, probative evidence"[9] required for Coalition Plaintiffs to defeat summary judgment, much less satisfy their burden of proof that Georgia's election system is so defective as to be unconstitutional—and

---

[8] Coalition Plaintiffs apparently incorporate by reference the entirety of the Curling Plaintiffs' Response Brief on evidence of vulnerabilities. [Doc. 1624, p. 64]. This Court should not allow the circumventing of already-extended page limits in this fashion, but to the extent the Court will consider Curling Plaintiffs' Response Brief as part of the Coalition Brief, State Defendants incorporate by reference the entirety of their reply to the Curling Plaintiffs' Response.

[9] *Irby*, 44 F.3d at 953.

Coalition Plaintiffs do not even attempt to wrestle with this heavy burden.

Coalition Plaintiffs' arguments demonstrate their inability to see past their disapproval of electronic voting equipment—they continue to miss the lack of distinctions between their chosen system and Georgia's chosen system. They claim that elections should not "depend on the physical security of the machines," [Doc. 1624, p. 67], but urge a system that depends on physical security of hand-marked paper ballots. They claim that BMD results cannot be audited, but somehow still believe that the November 2020 election results in Georgia were valid in spite of the lack of what they believe was a valid audit and ignore the 2020 and 2022 audits that confirmed the results of those elections. [Doc. 1569, ¶¶ 292–308]. And Coalition Plaintiffs apparently believe that the U.S. Constitution requires risk-limiting audits of all elections (which are only currently conducted in thirteen states[10]), because they claim that, without RLAs, any voting system must be invalid. [Doc. 1624, p. 68]. But they cannot point to any precedent that a state's voting system places a severe burden on the right to vote if there are not "sufficient" audits. The idea that the Constitution requires such an outcome places any number of state voting systems into doubt.

---

[10] *See* https://www.lgbtmap.org/democracy-maps/risk_limiting_audits

The other bases Coalition Plaintiffs claim are burdens are equally applicable to their preferred hand-marked paper ballot system. Recounts are conducted on machines under Georgia law, regardless of whether the ballots are marked by BMDs or marked by hand, such as absentee-by-mail ballots. Ga. Comp. R. & Regs. r. 183-1-15-.03(1)(b). Logic and accuracy testing occurs on BMDs but also on scanners, for both BMD-marked and hand-marked ballots. Ga. Comp. R. & Regs. r. 183-1-12-.08.

While Coalition Plaintiffs obviously have strong beliefs that their preferred system is "better" than the Dominion BMD system in use, *Curling*, 50 F.4th at 1125, they have not provided any basis to conclude that merely comparing the vulnerabilities and features of the Dominion system to their preferred system leads to the conclusion that the Dominion system imposes a severe burden on the right to vote. And Coalition Plaintiffs cannot demonstrate that their proposed burdens would "represent a significant increase over the usual burdens of voting." *Curling*, 50 F.4th at 1123 (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (plurality opinion)).

Fourth, Coalition Plaintiffs try to shoehorn their state-law claim for ballot secrecy into this case, when it has already been dismissed. This Court dismissed the substantive-due-process claim that incorporated a variety of state-law claims earlier in this case. [Doc. 751, p. 50]. And because HAVA lacks

19

a private right of action, *Bellitto*, 935 F.3d at 1199, Coalition Plaintiffs cannot attach a claim under HAVA to this case. Without those possible jurisdictional hooks, Coalition Plaintiffs still claim that this Court cannot weigh the burden on the right to vote by violations of ballot secrecy at summary judgment. [Doc. 1624, pp. 70–71]. But Coalition Plaintiffs do not cite to any court that has found violations of ballot secrecy could constitute a severe burden on the right to vote and the statute they cite requires secrecy under *state* law. O.C.G.A. § 21-2-379.22(5). Thus, if there is any issue with ballot secrecy, Coalition Plaintiffs are free to enforce that right through mandamus in superior court against the county officials who select and set up polling locations, but it is not appropriately before this Court—nor does it create a severe burden on the right to vote.

Fifth, Coalition Plaintiffs now claim that asking or requiring voters to review their ballots is a severe burden on the right to vote. [Doc. 1624, pp. 71–72]. It is hard to understand how reviewing one's own ballot constitutes a severe burden on the right to vote—especially when such a review would be part of a hand-marked system—and Coalition Plaintiffs only rely on their theory that voters will lack sufficient memory and cognitive skills. *Id*. It is also hard to comprehend how this logic would not extend to mean that requiring voters to select particular candidates is a severe burden on the right to vote.

Coalition Plaintiffs essentially ask this Court to "flyspeck" this particular election rule and "apply strict scrutiny no matter how limited the burden on voters." *Curling*, 50 F.4th at 1122–23. Asking voters to review their ballots is part of the process of election administration, not a severe burden on the right to vote.

Finally, Coalition Plaintiffs propose that, because voting by mail is its own burden on the right to vote, individuals who wish to vote in person but must vote on BMDs are unconstitutionally burdened. [Doc. 1624, pp. 72–73]. But the mere possibility that some types of ballots are handled by particular rules does not lead to a severe burden on the right to vote. *New Ga. Project*, 976 F.3d at 1281. Further, "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992). Georgia provides a variety of avenues to vote and Plaintiffs' preference for voting in person is not a matter of constitutional import.

Coalition Plaintiffs' next idea on this point, that absentee voters and in-person voters are "similarly situated" does not make sense. The sole case Coalition Plaintiffs rely on for their theory of voters being similarly situated involved the payment of taxes on cars by in-state and out-of-state residents. *Williams v. Vermont*, 472 U.S. 14, 15–16 (1985). In contrast, in the voting

context, "Absentee voting is a fundamentally different process from in-person voting, and is governed by procedures entirely distinct from in-person voting procedures." *ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1320 (10th Cir. 2008). And this makes sense. This is why states have "considerable leeway . . . with respect to election processes generally." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191 (1999). When considering voters who had issues with photo-identification laws, three Justices determined "[t]hat the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring).

Thus, in considering the six bases offered by Coalition Plaintiffs to find *any* burden on the right to vote, their admissible evidence comes up far short of what is necessary to create any dispute of material fact. There is no need for the Court to weigh evidence because Coalition Plaintiffs have not shown there is any *material* fact in question about the burden on the right to vote. Even assuming every burden asserted by Coalition Plaintiffs was supported by facts, their claims fail as a matter of law—just as every other challenge to voting machines has when considered across the country. [Doc. 1568-1, p. 24 n.12]. The portion of *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 691 (11th Cir. 2014),

cited by Coalition Plaintiffs (which is actually an appendix to the Eleventh Circuit's decision upholding a grant of summary judgment) supports this approach because it granted judgment to Alabama when the Plaintiffs failed to offer evidence on the severity of the burden—just as here. *Id.* at 699. Thus, Coalition Plaintiffs have provided no material facts that support a finding of any burden on the right to vote, and there is no evidence of a severe burden.

## III.  Given the lack of any burden on the right to vote, the State's regulatory interests require the dismissal of this case.

When there is no severe burden on the right to vote, the State's regulatory interests are sufficient to uphold the law, even with no evidentiary showing by the State. *Curling*, 50 F.4th at 1122; *Common Cause/Ga.*, 554 F.3d at 1354–55. Coalition Plaintiffs instead purport to flip the burden—jumping to the conclusion that the voting system is unconstitutional, [Doc. 1624, p. 75], based on their burden analysis alone.

Because any burden on the right to vote asserted by Coalition Plaintiffs is reasonable and nondiscriminatory, the State's regulatory interests in protecting disabled voters, providing clear voter intent (versus marginal marks on hand-marked ballots), and the functioning of the election system more than justify the slight burden of using BMDs for all in-person voters. While Coalition Plaintiffs wish to argue with these various interests, this Court never

need reach that point because there is no requirement of narrow tailoring or further evidence.[11] *Common Cause/Ga.*, 554 F.3d at 1354–55; *Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1299 (N.D. Ga. 2018); *Coalition for Good Governance v. Kemp*, No. 1:21-cv-02070-JPB, 2021 U.S. Dist. LEXIS 125873, at *11 (N.D. Ga. July 7, 2021).

## IV. Coalition Plaintiffs' other arguments to avoid summary judgment also fail.

Coalition Plaintiffs strangely assert that the DRE claims are apparently both moot and not moot. To the extent they are correct that any claims regarding DREs remain active, summary judgment is the appropriate vehicle to address those claims. A motion for reconsideration is not the proper avenue for anything—if there are still DRE claims in this case, Coalition Plaintiffs have put forward no material facts to show there is any remaining dispute of law that can actually be remedied by prospective injunctive relief from this Court. That fact alone entitles State Defendants to summary judgment.

Finally, Coalition Plaintiffs argue that State Defendants did not move

---

[11] This Court should ignore Coalition Plaintiffs' continued attempts to assert that the Dominion system violates Georgia law. [Doc. 1624, p. 79]. Not only is that issue not properly before this Court, if true, it is enforceable in superior court in a mandamus or prohibition action. And it has been soundly rejected by the superior court that has considered that question. *See* [Doc. 1388-1, pp. 5–6] (Order in *VoterGA v. State of Georgia* in Fulton County Superior Court).

for summary judgment on a variety of claims. But this makes no sense. State Defendants moved for summary judgment on the only four remaining counts in the operative complaints. Claims about ballot secrecy, the functioning of central count and precinct scanners, and PollPads are not part of the relief sought in the complaints nor are they part of the claims in this case. As discussed above and in State Defendants' motion, ballot-secrecy claims are matter of state law, not issues before this Court. Claims about malfunctions in other equipment are also not part of this case. And to the extent they are, they are fully addressed by the legal arguments made in State Defendants' motion. The latest ideas from Coalition Plaintiffs about how to run elections in Georgia are no basis for denying summary judgment.

## CONCLUSION

Coalition Plaintiffs desperately want to get to trial in this case. But to do so, they must come forward with evidence of disputes about material facts. They have shown none. As a result, this Court can properly consider the legal questions—and State Defendants are entitled to judgment as a matter of law. This Court should dismiss this case, enter judgment for State Defendants, and remove the cloud this case places over Georgia's voting system and the elections that have been conducted on that system.

25

Respectfully submitted this 13th day of March, 2023.

Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Edward A. Bedard
Georgia Bar No. 926148
ebedard@robbinsfirm.com
Javier Pico Prats
Georgia Bar No. 664717
jpicoprats@robbinsfirm.com
Anna Edmondson
Georgia Bar No. 289667
aedmondson@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing **STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON COALITION PLAINTIFFS' CLAIMS** has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

<u>*/s/ Bryan P. Tyson*</u>
Bryan P. Tyson