IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

     *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

     *Defendants.*

CIVIL ACTION

NO. 1:17-CV-2989-AT

## STATE DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' CORRECTED STATEMENT OF ADDITIONAL MATERIAL FACTS

State Defendants hereby submit these responses and objections to the individual facts asserted in Plaintiffs' Corrected Joint Statement of Additional Facts in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment (Doc. No. [1626]), (Plaintiffs' "SAMF"), showing the Court as follows:

As an initial matter, State Defendants object to the titles and headings used throughout the SAMF as such do not comply with LR 56.1(B)(1) in that they are argumentative statements unsupported by evidence. They are

repeated herein only for the purposes of clarity and organization and, to the extent necessary, State Defendants object to any inferences or implied statements of fact that Plaintiffs may attempt to draw from their use.

State Defendants further object to Plaintiffs' characterizations, summaries, or descriptions of evidence in their statements of fact to the extent that such deviates from the actual language of the evidence in question. Where State Defendants have admitted that the Court may consider the evidence for purposes of the summary judgment, such does not constitute an admittance that Plaintiffs' characterizations, summaries, or descriptions thereof are accurate. See LR. 56.1(B)(3)(d) (acceptable responses to statement of additional material fact includes "a concession that the Court can properly consider the respondent's evidence for purposes of the summary judgment motion.").

State Defendants respond and object to Plaintiffs' individual statements of fact below:

A. **DREs Suffered from Serious Vulnerabilities.**

1.      The DREs that Georgia used from 2002 until 2019 were vulnerable to numerous routes of infection and attack that are "difficult or impossible to detect or reverse," Opp. Ex. 1 ¶ 14; see also Opp. Ex. 2 at 7 (this case arose in "a technology context where Georgia's [then] current voting equipment, software, election and voter databases, are antiquated, seriously flawed, and vulnerable to failure, breach, contamination, and attack."); Opp. Ex. 3 at PDF p. 108 (2018 National Academies Report finding that voting machines that do not produce a voter-verifiable paper audit trail" "be removed from service as soon as possible" and that "[a]ll local, state, and federal elections should be conducted using human readable paper ballots by the 2020 presidential election.").

**RESPONSE:** Objection. The fact does not comply with LR. 56.1(B)(1) because it states an argument. The subjective opinions of Plaintiffs' proffered experts are not statements of fact. State Defendants further object, as the fact does not comply with LR 56.1(B)(1) because it does not cite to evidence by page or paragraph number. The citation Opp. Ex. 2 at 7 does not contain the stated quote. In fact, the stated quote could not be found anywhere in Opp. Ex. 2.

2.     The bootloader software used in Georgia's DREs dates from June 2002 and was not updated for the 18 years that Georgia used DREs as the primary voting method. The bootloader software is critical to the DREs' security since it runs every time they are powered on and controls sensitive operations such as loading the operating system and installing software updates.  Opp. Ex. 4 ¶¶ 26-29.

**RESPONSE:** Objection. The stated fact does not comply with LR 56.1(B)(1) because it is two statements combined into one. State Defendants further object that there is no mention that the software was not updated for 18 years. The evidence only states that it "dates from 2002."

3.     The BallotStation election software installed on Georgia's DREs was not materially updated since 2004. Opp. Ex. 4 ¶¶ 27-29.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Opp. Ex. 4 ¶ 27 states that the BallotStation election software "displays a 2004 copyright date." It is not a matter of fact that due to this, "software installed on Georgia's DREs was not materially updated since 2004." State Defendants further object that the evidence cited does not support the stated fact, as Opp. Ex. 4 ¶¶ 28-29 do not offer any relevant supporting evidence to the statement provided.

4.     The Diebold AccuVote TSX vulnerability discovered by Harri Hursti in 2006 and described by Michael Shamos as "one of the most severe security flaws ever discovered in a voting system" is present in the DREs software that was used in Georgia until 2020. Diebold released a patch to address the vulnerability in 2006 but Georgia never installed it. Opp. Ex. 5 at 115-17; Opp. Ex. 6 at 2; Opp. Ex. 2 at 23-24; Opp. Ex. 4 ¶¶ 27-29; *see also* Opp. Ex. 7 ¶¶ 8-9; Opp. Ex. 1 ¶ 18.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. Michael Shamos's description and characterization of the alleged security flaws is stated as an argument and a personal opinion, rather than a fact. Further, the statement provided is misleading, as Dr. Shamos made that statement with the qualifier that it was "one of the most severe security flaws ever discovered in a voting system," but he qualified his answer by stating that "[u]p to 2006, yes." Opp. Ex. 5 at 115:16-20. State Defendants further object that the evidence cited does not support that stated fact. No evidence cited provides that Georgia never installed the Diebold patch. Mr. Shamos states "I don't know" when asked during his deposition whether there is any evidence that the Diebold patch was installed.

5.     Diebold's AccuVote TSX DRE machine was vulnerable to malware that could infect machines and steal votes in a manner that ensured the attacker's favored candidate always had at least a certain percentage of the vote total. The malware could modify all of the vote records, audit logs, and protective counters stored by the machine, so that even careful forensic examination of the files would find nothing amiss. The voting machine virus could spread the vote-stealing malware automatically and silently from DRE machine to DRE machine during normal election activities via the removable memory cards. Opp. Ex. 6 at 2; Opp. Ex. 4 ¶¶ 27-29; Opp. Ex. 8 at 1-2; *see also* Opp. Ex. 1 ¶¶ 18-21.

**RESPONSE:** Objection. The stated fact does not comply with LR 56.1(B)(1) as it is various statements combined into one. State Defendants further object that the stated fact is argumentative and does not comply with LR 56.1(B)(1). Finally, the stated fact is immaterial to the claims in this case as there is no evidence that such malware infected the system or that Plaintiffs votes were changed.

## B. Logan Lamb Breaches CES in August 2016.

6.     From approximately 2002 to 2017, the Secretary of State contracted with Kennesaw State University's ("KSU") Center for Elections

System ("CES") to manage the GEMS/DRE system for all 159 Georgia counties. Opp. Ex. 9 at 107-09; Opp. Ex. 10 at 8:17-9:7; Opp. Ex. 11 ¶ 2; *see also* Opp. Ex. 12.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Opp. Ex. 10 at 8:17-9:7 does not state that KSU was contracted from "approximately 2002 to 2017" or that their responsibility was "to manage the GEMS/DRE system." Instead, it provides immaterial testimony of Michael Barnes during his deposition in which he states his responsibilities while employed at KSU from June 2005 through December 31, 2017. Further, Opp. Ex. 9 and Opp. Ex. 11 do not support the stated fact. Opp Ex. 9 states that "[t]he Center for Election Systems at Kennesaw State University was created in 2002 to provide support and independent testing to all 159 Georgia counties." Opp. Ex. 11 states that KSU "was an outside contractor with the Office of the Secretary of State." There is no mention that KSU was contracted from 2002, or that it was contracted to "manage the GEMS/DRE system for all 159 Georgia counties."

State Defendants further object on the grounds that the stated fact does not comply with LR 56.1(B)(1) because it does not cite to evidence by page or paragraph number. Opp. Ex. 12 is cited without any specific page

numbers.

7.      On August 24, 2016, Logan Lamb, a professional cybersecurity expert, was able to access, through the CES public website, "key election system files, including multiple gigabytes of data and thousands of files with private elector information [including] electors' driver's license numbers, birth dates, full home addresses, the last four digits of their Social Security numbers, and more." Opp. Ex. 2 at 64; Opp. Ex. 13 at 8; Opp. Ex. 14 ¶¶ 12-15; Opp. Ex. 4 ¶ 24.

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

State Defendants further object that the evidence cited does not support the stated fact. Opp. Ex. 4 ¶ 24 does not state that Logan Lamb "was able to access, through the CES public website" the files and information mentioned.

Finally, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion.

8.      Mr. Lamb "was also able to access, for at least 15 counties, the

8

election management databases from the GEMS central tabulator used to create ballot definitions, program memory cards, and tally and store and report all votes." Opp. Ex. 2 at 64; Opp. Ex. 13 at 8; Opp. Ex. 14 ¶ 14(b).

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Subject to and without waiving the foregoing objection, State Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

9.     Additionally, Mr. Lamb was "able to access passwords for polling place supervisors to operate the DREs and make administrative corrections to the DREs." Opp. Ex. 2 at 64; Opp. Ex. 13 at 8; Opp. Ex. 14 ¶ 14(d).

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Further, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

10.     On August 28, 2016, Mr. Lamb alerted Merle King, the Executive

Director who oversaw CES, of the system's vulnerabilities. Opp. Ex. 15 ¶ 5; Opp. Ex. 2 at 64; Opp. Ex. 13 at 8; Opp. Ex. 14 ¶ 16; Opp. Ex. 16 at 432-33; Opp. Ex. 17.

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Further, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion about vulnerabilities as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

11.     KSU's CES did not take successful remedial action after Mr. Lamb alerted Mr. King of the vulnerabilities. Opp. Ex. 14 ¶ 16; *see also* Opp. Ex. 2 at 64; Opp. Ex. 13 at 8.

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

State Defendants further object that the evidence cited does not support the stated fact. Plaintiffs' mischaracterize the evidence contained in Opp. Ex. 14 ¶ 16.

12.     A colleague of Mr. Lamb's, Chris Grayson, was able to repeat Mr.

Lamb's actions in February 2017. Opp. Ex. 2 at 64; Opp. Ex. 13 at 8; Opp. Ex. 14 ¶ 16.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Plaintiffs' mischaracterize the evidence contained in Opp. Ex. 14 ¶ 16.

State Defendants further object that Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

13.   Mr. Lamb was also able to access and download the above information in the same manner around February 2017. Opp. Ex. 2 at 64; Opp. Ex. 13 at 8; Opp. Ex. 14 ¶ 16.

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Further, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

14.   On March 1, 2017, Mr. Grayson notified KSU of the open access to the "elections.kennesaw.edu" server. Opp. Ex. 16 at 422-25, 433-35.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Mr. Grayson is not identified in Plaintiffs referenced pages. State Defendants further object that the stated fact is argumentative and does not comply with LR 56.1(B)(1). There is no reference to "open access" of the server.

15.    On March 2, 2017, the KSU University Technology Services ("UTIS") Information Security Office "pulled apache and Drupal logs…and seized the 'elections.kennesaw.edu' server." Opp. Ex. 16 at 422-25.

**RESPONSE:** Objection. The stated fact is not material to the claims of this case. Subject to and without foregoing the objection, Defendants admit that the Court may consider the evidence cited for purposes of the summary judgment motion.

16.    On March 3, the FBI was contacted, and FBI took possession of "the impacted server;" the evidence suggests that only a single server was turned over to the FBI. Opp. Ex. 16 at 422-25; *see also* Opp. Ex. 2 at 64; Opp. Ex. 13 at 8-9.

**RESPONSE:** Objection. The evidence cited does not support the fact. The evidence cited does not mention that "only a single server was turned over the FBI" and is thus an opinion.

Further, Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Defendants admit that the Court may consider the remaining evidence for purposes of the summary judgment motion.

17.    A Forensic image of this server was created on March 6, 2017, by the FBI. Opp. Ex. 18 ¶¶ 7, 10.

**RESPONSE:** Objection. Logan Lamb's account of events by KSU and the FBI are hearsay, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

18.    The FBI returned the seized server to KSU on March 17, 2017, at the prompting of Michael Barnes, who expressed a need to access data on the compromised server. Opp. Ex. 18 ¶ 28; Opp. Ex. 19.

**RESPONSE:** Objection. The evidence cited does not support the fact. Opp. Ex. 18 does not contain any information to support the stated fact. State Defendants further object that Logan Lamb's account of events by KSU and the FBI are hearsay, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th

Cir. 1999).

19.     Data from the compromised KSU server was retrieved at the
direction of Michael Barnes including a directory that contained "workflow
databases used during our ballot building efforts." Opp. Ex. 18 ¶ 28; Opp. Ex.
19.

**RESPONSE:** Objection. The evidence cited does not support the fact.
Opp. Ex. 18 does not contain any information to support the stated fact. State
Defendants further object that Mr. Lamb's declaration regarding Mr. Barnes'
testimony is hearsay, and the Court cannot consider hearsay at summary
judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th
Cir. 1999). The stated fact is immaterial to the claims in this case. Finally,
State Defendants object that the stated fact is argumentative because it
states the server is "compromised" and does not comply with LR 56.1(B)(1).

20.     On July 7, 2017, the day after a copy of the Complaint in this
action was served to the Secretary of State's Office, all the data on the hard
drives of Kennesaw State University's server were destroyed. Opp. Ex. 20;
Opp. Ex. 21; Opp. Ex. 2 at 65; Opp. Ex. 13 at 9.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1)
because it is being stated as an argument rather than as a fact. The

allegation that the "data on the hard drives of Kennesaw State University's server were destroyed" the day after a copy of the Complaint was served, is argumentative as it implies the serving of the Complaint led to the destruction of the hard drives. Additionally, there is no admissible evidence provided on the date the Complaint was filed.

Further, Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations to evidence. Finally, the fact presented mischaracterizes the evidence cited.

21.    On August 9, 2017, less than one day after this action was removed to this Court, all the data on the hard drives of a secondary server, containing similar information, were also destroyed. Opp. Ex. 2 at 65; Opp. Ex. 13 at 9; Opp. Ex. 22; Opp. Ex. 23.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is being stated as an argument rather than as a fact. The statement that the data on the hard drives of a secondary server were destroyed "less than one day after this action was removed to this Court," is argumentative as it implies the hard drives were destroyed for that reason.

Further, Plaintiffs' citations to Court Orders found in Opp. Ex. 2 and Opp. Ex. 13 do not comply with LR 56.1(B)(1) because they are not citations

to evidence. Finally, the fact presented mischaracterizes the evidence cited.

22.    State Defendants contended that the KSU servers were simply "repurposed" (after the SOS's Office first attributed the wiping of the servers to "undeniable ineptitude"), but after carefully reviewing the evidence, this Court determined that contention was "flatly not credible." Opp. Ex. 10 at 111:10-14; Opp. Ex. 24 at 2; Opp. Ex. 2 at 70-71; Opp. Ex. 25.

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders and pleadings in Opp. Ex. 2 and Opp. Ex. 24 do not comply with LR 56.1(B)(1) because they are not citations to evidence. Finally, the fact presented mischaracterizes the evidence cited.

State Defendants further object because the evidence on which the statement relies is inadmissible hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999). see also Dallas Cty. v. Commercial Union Assur. Co., 286 F.2d 388, 391-92 (5th Cir. 1961) ("Of course, a newspaper article is hearsay, and in almost all circumstances is inadmissible.").

Finally, State Defendants object that the evidence cited does not support the fact. Plaintiffs' statement mischaracterizes Mr. Barnes' testimony in his deposition, as he only stated that "[i]t's my understanding

16

that they had intention of trying to reuse the servers in some other capacity within the University."

23.     Despite the data on the original server and the backup server having been purposefully destroyed, Logan Lamb, on January 1, 2020, was able to begin a forensic audit of the March 6, 2017 forensic image created by the FBI. Opp. Ex. 18 ¶¶ 7-9.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because Plaintiffs' statement that the server was "purposefully destroyed" is argumentative. State Defendants further object that the fact is not supported by evidence, as the evidence cited does not state that the server and backup server were "purposefully destroyed." Finally, State Defendants object that Logan Lamb's account of events by KSU and the FBI are hearsay, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

24.     There is evidence that on December 2, 2014, an attacker was able to breach the KSU server and exploit the "shellshock" bug, well before the 2016 election. Opp. Ex. 18 ¶¶ 11(a), 13, 15-20; Opp. Ex. 4 ¶ 23.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The stated fact is a mischaracterization of the entirety of the evidence

cited, as Mr. Lamb's declaration on Opp. Ex. 18 ¶ 19 explains that "There may be other explanations [other than an outside attacker gained access to the server]." Mr. Lamb further provides that "It is possible, for example, that a CES employee used a convoluted method of patching shellshock on December 2nd, 2014."

Further, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

25.    Despite significant media attention and warnings from the Department of Homeland Security, CES did not take action to patch the "shellshock" bug before December 2014. Opp. Ex. 18 ¶¶ 13-14.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited states that "CES did not patch the bug for months," and does not state that the patch did not occur before December 2014. Further, State Defendants object that the stated fact is immaterial to the claims in this case.

26.    If an attacker did indeed exploit the "shellshock" bug, then they would have had almost total control of the KSU server including the abilities to modify files, delete data, and install malware. Opp. Ex. 18 ¶ 20.

18

**RESPONSE:** Objection. The stated fact does not comply with LR 56.1(B)(1) because it states an argument. The evidence cited is a subjective opinion, and not a statement of fact.

Further, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

27.   The access log records on the forensic image of the KSU server only go back to November 10, 2016, two days after the 2016 election. The missing logs could be vital to determining if the server was breached on additional occasions before the election, and there were no legitimate reasons why records from that critical period of time should have been deleted. Opp. Ex. 18 ¶¶ 11(b), 21-22; Opp. Ex. 4 ¶ 22; Opp. Ex. 1 at 61-62, 66-68.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The fact does not comply with LR. 56.1(B)(1) because it states an argument. Plaintiffs' mischaracterize the evidence and fail to lay a proper foundation, as there is no mention that an initial breach occurred for there to be a breach "on additional occasions." Additionally, there is no mention that "there were no legitimate reasons why records from that critical period of time should have been deleted."

19

State Defendants further object because the evidence on which the statement relies is inadmissible hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999). see also Dallas Cty. v. Commercial Union Assur. Co., 286 F.2d 388, 391-92 (5th Cir. 1961) ("Of course, a newspaper article is hearsay, and in almost all circumstances is inadmissible.").

28.     The forensic image from the FBI reveals that there were "scores of files" deleted on March 2, 2017, just before the server was taken offline by the CES/KSU staff and the original server handed over to the FBI. Opp. Ex. 18 ¶¶ 11(c), 24.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited states that Mr. Lamb did the forensic image, and was not "from the FBI." This is a mischaracterization of the evidence cited.

Further, to the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

29.     The installer file for the BallotStation election software used on the DREs was publicly available on the KSU server, where it could have been modified by a malicious actor. Opp. Ex. 18 ¶¶ 11(d), 25-27; Opp. Ex. 4 ¶ 28.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited states that "copies of the software to be installed on the DREs were stored on the vulnerable CES server." However, there is no mention that the original used could be manipulated, only a copy. State Defendants further object that the entire excerpt was not included, as Dr. Halderman goes on to say that "Although I have thus far been unable to determine whether the installation files on the server were modified by attackers, they had the opportunity to do so." The possibility of an occurrence is not a statement of fact.

30.     The KSU server was used to regularly exchange e-pollbook information with counties. Opp. Ex. 26 at 183:10-25, 184:7-11; Opp. Ex. 10 at 110:9-16; Opp. Ex. 27 ¶¶ 4-5; Opp. Ex. 28 at 1-2 (Instructions from KSU on how to transfer files via USB drive from GEMS server to external computer for upload).

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited is mischaracterized, as there is no mention that the server was "used to regularly exchange e-pollbook information." Mr. Barnes instead said "I know that the Center for Election System placed an Express Poll data set on its web server for access for counties."

31.     In 2018, Mr. Lamb concluded that: "The [DRE/GEMS] system is flawed by design and made worse by the KSU exposure in ways that cannot be practically mitigated. The system should be treated as untrustworthy for the conduct of Georgia's elections." Opp. Ex. 14 ¶ 23.

**RESPONSE:** Objection. To the extent that Plaintiffs attempt to proffer Mr. Lamb's opinion as an established fact, State Defendants object because Plaintiffs failed to provide any foundation for that opinion testimony.

## C. Georgia's GEMS System Was Not Air-Gapped.

32.     USB drives used with the GEMS servers were formatted using SOS public-facing computers that are connected to the internet before being used directly with the GEMS system.  Opp. Ex. 29 at 77-78; 101:3-9, 107:1-4; *see also* Opp. Ex. 2 at 26-33.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The stated fact is a mischaracterization of Mr. Barnes testimony, as it does not provide the complete information cited. Mr. Barnes states that the USB drives are reinserted back into the GEMS server "[o]nly after it is reformatted on the public computer."

Subject to and without waiving the foregoing objections, State Defendants admit that the Court may consider the stated fact for purposes of

the summary judgment motion.

33.     Outside contractors built ballots on Georgia's GEMS database using their personal computers in their homes, and those ballot files were then uploaded to state and county voting equipment. Opp. Ex. 29 at 83:24-85:21.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The stated fact is a mischaracterization of Mr. Barnes testimony, as he does not state that the computers are "personal." There is further mischaracterization, as the evidence cited does not state that the "ballot files were then uploaded to state and county voting equipment."

34.     If malware ends up on the memory cards, it can be propagated between GEMs and the DREs. Opp. Ex. 5 at 119:12-15.

**RESPONSE:** Objection. A potential vulnerability is immaterial to resolving Plaintiffs claims, and does not provide a fact that malware has existed on either the GEMs or the DREs.

35.     James Oliver, the SOS's former Security Manager, did not know if Georgia's election management server was air gapped and was not involved in any efforts to air gap the server. Opp. Ex. 30 at 96:13-98:8.

**RESPONSE:** Objection. The cited evidence does not support the stated

fact. The cited evidence contains objections during the deposition of Mr.
Oliver, which are not mentioned. Further, Mr. Oliver's knowledge of the
system being air gapped is not conclusive of whether the system is air
gapped. He stated "I don't recall." Such testimony is therefore immaterial to
the determination of the action.

36.    Merritt Beaver, the SOS's long-running CIO, could not say for
sure that no one in any of the counties connected any part of the system to
the internet or internet-equipped devices. Opp. Ex. 31 at 11:9-12:15, 46:20-
48:25, 133:7-11; Opp. Ex. 32; Opp. Ex. 33.

**RESPONSE:** Objection. Plaintiffs' citations to pleadings do not comply
with LR 56.1(B)(1) because they are not citations to evidence.

Additionally, State Defendants object that the evidence cited does not
support the stated fact. The fact stated is a mischaracterization of the
testimony provided by Mr. Beaver.

State Defendants further object as the evidence on which the statement
relies is inadmissible because it is not based on the Mr. Beaver's personal
knowledge. *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F.
Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or
speculation is not based on personal knowledge and is not competent

summary judgment evidence.")

37.     Georgia election results were sent over phone lines from a modem connected to the GEMS servers. Opp. Ex. 26 at 265:20-267:3.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. This is a mischaracterization of the evidence cited, as the evidence states this only applied to April 2017 election results. Further, the phone lines are described as "analog" phone lines. Finally, the phone lines are stated to be "air-gapped."

## D. <u>Multiple Components of Georgia's DRE/GEMs Voting System Were Transferred to the Current System.</u>

38.     Georgia's voter registration database, ElectioNET ("ENET"), was used by county registrars with the DRE system and BMD system to maintain and update voter registration records and determine ballot precinct information. Opp. Ex. 4 ¶ 66; Opp. Ex. 34 at 23; *see, e.g.,* SMF Exs. 18, 21, 23, 24, 29, 32, 34, 36 (ENET reports of individual plaintiffs); *see also* Opp. Ex. 2 at 69 ("The programming and use of ballots in both the DRE and the Dominion BMD system is inherently tied to the accuracy of voter precinct and address information in the voter registration database, and inaccuracy in this voter information triggers a variety of obstacles in the voting process"), 88 (noting that ENET "plays a vital role in the proper functioning of the

voting system").

**RESPONSE:** Objection. Plaintiffs' citations to Court Orders and pleadings do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Further, State Defendants object that the evidence cited that does comply with LR 56.1(B) does not support the stated fact. The evidence cited does not state that "ElectioNET ("ENET"), was used by county registrars with the DRE system and BMD system to maintain and update voter registration records and determine ballot precinct information."

39.    ElectioNET contains the personal identifying information of millions of Georgia voters and "plays a vital role in the proper functioning of the voting system." Opp. Ex. 35 ¶ 3; Opp. Ex. 2 at 88; *see, e.g.,* SMF Exs. 18, 21, 23, 24, 29, 32, 34, 36 (ENET reports of individual plaintiffs).

**RESPONSE:** Objection. Plaintiffs' citation to a Court Order does not comply with LR 56.1(B)(1) because they are not citations to evidence.

Further, State Defendants object that the evidence cited does not support the stated fact. The evidence cited that complies with LR 56.1(B) does not support the stated fact.

40.    The programming and use of ballots in both the DRE and the

Dominion BMD system is inherently tied to the accuracy of voter precinct and address information in the voter registration database, and inaccuracy in this voter information triggers a variety of obstacles in the voting process. Opp. Ex. 36 at 155:16-15 (Rick Barron testifying to the issues Fulton County experienced with the electronic pollpads in the September 2020 election); *see also* Opp. Ex. 2 at 88-89.

    **RESPONSE:** Objection. Plaintiffs' citation to a Court Order does not comply with LR 56.1(B)(1) because they are not citations to evidence.

    Further, State Defendants object that the evidence cited does not support the stated fact. First, the evidence cited is incorrect, as Opp. Ex. 36 at 155:16-15 does not provide any support for the stated fact. Second, expanding those pages and transcript lines still do not provide support for the stated fact.

    Finally, State Defendants object that the fact does not comply with LR 56.1(B)(1) because it is being stated as an argument rather than as a fact. The use of the word "inherently" is not found in the stated fact. The use of "inherently" is not found in the stated cited evidence, and its use is an argumentative opinion formulated by Plaintiffs.

    41.    ElectioNET "had rampant security issues" that made it possible

for unauthorized parties to access and modify sensitive system configuration files and voter registration data and create absentee ballot requests for other voters. Opp. Ex. 4 ¶¶ 66-68; Opp. Ex. 29 at 38:5-40:5, 226:1-227:8; Opp. Ex. 37; Opp. Ex. 38 at 21; Opp. Ex. 39; Opp. Ex. 31 at 169:8-23; Opp. Ex. 40; Opp. Ex. 41; Opp. Ex. 42; Opp. Ex. 49; *see also* Opp. Ex. 43 at 16-17; Opp. Ex. 2 at 7 (finding "the record demonstrates the perilous vulnerability and unreliability of the State's electronic voter registration system as well as its burdening of Georgia citizens' right to cast a vote that reliably will be counted"), 88 (finding Georgia's ENET system "has been open to access, alteration, and likely some degree of virus and malware infection for years," including vulnerabilities which were not addressed even after the CES/KSU functions were transferred back to the SOS), 149 ("voter database problems extensively identified" in this case "present an imminent threat to voters' exercise of their right to vote").

**RESPONSE:** Objection. Plaintiffs' citations to pleadings and Court Orders do not comply with LR 56.1(B)(1) because they are not citations to evidence.

Additionally, State Defendants object that the evidence cited does not support the stated fact. There is no mention of in the stated evidence that are

not pleadings or Court Orders that ENET "had rampant security issues." This is an argumentative statement derived from Plaintiffs opinion, and does not comply with LR 56.1(B)(1).

State Defendants further object that the stated facts do not comply with LR 56.1(B)(1) because they are not separately number, and include various statements.

Finally, State Defendants object that some of the evidence cited is not narrowed to page or paragraph number, which does not comply with LR 56.1(B)(1).

42.    Voter registration information was retrieved from ENET via USB drives to update the ExpressPoll pollbooks used in the DRE system. Opp. Ex. 26 at 185:2-5, 211:1-12; Opp. Ex. 29 at 104:23-105:3, 106:1-6; Opp. Ex. 44 at 332:4-6.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited does not support the statement that "Voter registration information was retrieved from ENET." The evidence cited also does not reference the DRE system.

43.    The voter registration system, ENET, shared or exchanged files with the KSU server that was "wide open to the world for at least six months

from August 2016 to March of 2017," including sensitive personal information

for millions of voters. Opp. Ex. 26 at 184:7-185:4; Opp. Ex. 14 ¶ 14(a).

    **RESPONSE:** Objection. The evidence cited does not support the stated

fact. The quotation, cited as originating from Opp. Ex. 26, is a question by

counsel which is not admissible evidence. Further, the statement provided is

a misrepresentation of the fact as Mr. Harvey explained "I don't believe that

more sensitive information like the ExpressPoll logs or the ExpressPoll data

would have been sent across that. But I'm not the best person to give you an

exact answer on that" and "I don't know -- I don't know." Opp. Ex. 26 at

184:18-21. As a consequence, the cited testimony is improper to consider at

summary judgment. Riley v. Univ. of Alabama Health Servs. Found., P.C.,

990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or

speculation is not based on personal knowledge and is not competent

summary judgment evidence.") Additionally, Plaintiffs statement further

misrepresents the evidence cited, as the evidence does not state that the KSU

server was "wide open to the world for at least six months from August 2016

to March of 2017."

    Finally, to the extent that Plaintiffs attempt to proffer Mr. Lamb's

opinion as an established fact, State Defendants object because Plaintiffs

failed to provide any foundation for that opinion testimony.

44.   After the SOS took over operations from KSU in 2017, files were retrieved from the same voter registration system, ENET, and sent via FTP from the SOS server to counties with instructions to save the files to their local desktops in order to update the ExpressPoll pollbooks used in the DRE system. Opp. Ex. 28 at 7, 3-16.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The cited evidence is labeled as "Instructions," however, there is no support provided for the statement that "SOS took over operations from KSU in 2017" or that "files were retrieved from the same voter registration system, ENET."

45.   For at least three years, ENET has been used to update the new KNOWInk PollPad pollbooks used with the BMDs. Opp. Ex. 45 ¶ 8; Opp. Ex. 43 at 16-17; Opp. Ex. 46 at 3; Opp. Ex. 27 ¶¶ 2-3.

**RESPONSE:** Objection. Plaintiffs' citations to pleadings do not comply with LR 56.1(B)(1) because they are not citations to evidence.

State Defendants further object that the evidence cited does not support the stated fact.

46.   ENET was not replaced with the adoption of the Dominion BMD

election system; until late January 2023, county registrars continued to use the same voter registration database to maintain voter registration records, determine ballot precinct information, and load that information onto poll pads. Opp. Ex. 31 at 183:2-184:18; Opp. Ex. 47 at 11 n.14 ("KNOWink Poll Pads, which will receive text-file data from ENET after the security scans required by Georgia law is completely replacing the ExpressPoll system."); Opp. Ex. 35 ¶ 12; *see also* Opp. Ex. 34 at 23 ("Other than a switch to the new KnowInk PollPad electronic pollbooks, Defendants have offered nothing to indicate concretely any action taken in response to issues experienced by voters in November 2018 and more recent elections to ensure that the information from ENET and the operation of the electronic pollbooks is reliable, accurate, and updated.").

**RESPONSE:** Objection. Plaintiffs' citations to pleadings do not comply with LR 56.1(B)(1) because they are not citations to evidence.

State Defendants further object that the stated facts do not comply with LR 56.1(B)(1) because they are not separately number, and include various statements.

Finally, State Defendants object that the evidence cited does not support the stated fact. The statement is an inference by Plaintiffs and is not

stated in the evidence cited.

47.     There is no evidence the State took any actions to address the
deficiencies in the voter registration database. *See* Opp. Ex. 48 at 10:19-
12:23; 192:17-194:9; Opp. Ex. 32; Opp. Ex. 33; Opp. Ex. 31 at 6-8, 16, 18, 19,
21; Opp. Ex. 49; *see also* Opp. Ex. 4 ¶ 12; Opp. Ex. 50 at Response No. 65;
Opp. Ex. 51 at 23 (this Court previously "required State Defendants to
develop procedures and take other actions to address the significant
deficiencies in the voter registration database," but "it [wa]s unclear what
actions, if any, the State has undertaken to address these deficiencies . . . in
advance of" the 2020 elections.").

**RESPONSE:** Objection. Plaintiffs' citations to pleadings and Court
Orders do not comply with LR 56.1(B)(1) because they are not citations to
evidence. Additionally, certain cited evidence does not comply with LR
56.1(B)(1) because is not cited by page or paragraph number.

State Defendants further object that the statement provided does not
comply with LR. 56.1(B)(1) because it states an argument. The subjective
opinions of Plaintiffs' proffered experts are not statements of fact.

Finally, State Defendants object that the evidence cited does not
support the stated fact. The statement is an inference by Plaintiffs and is not

stated in the evidence cited.

48.    Fortalice recommended an additional authentication mechanism for the voter registration database in at least October 2017. Opp. Ex. 38 at 24. Two factor authentication for ENET was not implemented until July 30, 2018. Opp. Ex. 52 at 5; Opp. Ex. 28 at 15-16.

**RESPONSE:** Objection. The stated facts do not comply with LR 56.1(B)(1) because they are not separately number, and provide more than one statement. Further, Plaintiffs mischaracterize the evidence provided. The recommendations cited in the evidence provided came not from Fortalice, but from Cloudburst Security and Fortalice Solutions' "Cloudburst Security team."

Finally, State Defendants object that the evidence cited does not support the stated fact. There is no "additional authentication mechanism" described in the statement provided.

49.    In at least December 2020, Secretary Raffensperger certified that the "Voter Registration System is being maintained in a manner consistent with the standards set forth in subsection (b) of this rule [SOS Rule 590-8.3]" despite warnings from the SOS Chief Information Security Officer that the voter registration system was unable to meet SOS rule requirements. Opp.

Ex. 31 at 170:18-187:16; Opp. Exs. 42, 49, 53.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Plaintiffs' mischaracterize the evidence contained in Opp. Ex. 31. First, the rule is "590-8-3." Second, Mr. Beaver frequently states that the SOS rule requirements were met. Mr. Beaver explains that "Mr. Hamilton had a view of an attestation that was broader than the rule actually is written for."

Further, State Defendants object that the fact does not comply with LR 56.1(B)(1) because Plaintiffs' statement is argumentative.

50.     While the SOS's office recently indicated that it is phasing out ENET, the extent of data from ENET already transferred over to the BMD system remains unclear. Opp. Ex. 31 at 182:18-184:18; Opp. Ex. 54 ¶¶ 10-11; Opp. Ex. 4 ¶ 12.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Exs. 54 and 4 do not relate to "phasing out ENET" or that "the extent of data from ENET already transferred over to the BMD system remains unclear."

State Defendants further object that the fact stated is a mischaracterization of the evidence cited. Mr. Beaver does not state or reference what has been transferred over to the BMD system. That it

"remains unclear" is an opinion by Plaintiffs and not a fact.

51.    State Defendants have offered no information to show that no corrupt or infected data from ENET will be transferred over to the new voter registration system. Opp. Ex. 4 ¶ 12; *see also* Opp. Ex. 2 at 89 (stating that simply purchasing now poll machines from Dominion as part of a new contract "cannot alone cleanse the voter database to be transferred and relied upon.").

**RESPONSE:** Objection. The fact is not supported by the cited evidence and is stated as an argument rather than as a statement of fact. Further, Plaintiffs' citation to a Court order does not comply with LR 56.1(B)(1).

52.    One of several ways in which the Dominion BMD system could potentially be attacked is using an attack facilitated by a preexisting infection of the DRE/GEMS system. Opp. Ex. 55 at 36:9-13, 37:6-8; Opp. Ex. 27 ¶¶ 2-3; Opp. Ex. 56 at 119:18, 121:23-122:3; Opp. Ex. 14 ¶ 14.

**RESPONSE:** Objection. The fact is not supported by the cited evidence. The "ways in which the Dominion BMD system could potentially be attacked" is not addressed in Opp. Ex. 14 at ¶ 14 or Opp. Ex. 27 at ¶¶ 2-3. Dr. Halderman's cited testimony was that, "we do have evidence that the Center for Election Systems server, for instance, was compromised, but for specific

GEMS databases or DREs, the answer is no." Opp. Ex. 55 at 37:6-8.

Additionally, Dr. Appel's testimony was not specific to Georgia's DRE/GEMS system and is incomplete. Dr. Appel further testified: "someone installing malware in a Diebold BMD or in GEMS and then that propagating to the Dominion systems, I would say that is not a likely way for a malware to propagate to the Dominion systems." Opp. Ex. 56 at 120:3-7.

53.    Despite the purchase and deployment of new equipment for Georgia's current election system, important databases, files, and personnel were carried forward from the previous election system (the "GEMS/DRE System"). Opp. Ex. 57 ¶ 3; Opp. Ex. 31 at 20:11-15, 21:7-9, 27:16-30:2, 44:6-13; Opp. Ex. 58; Opp. Ex. 4 ¶ 12; Opp. Ex. 27 ¶ 4.

**RESPONSE:** Objection. The fact is not supported by the cited evidence. The fact is a direct quote from the declaration of Dr. Halderman, but the cited evidence does not establish the fact for which it is cited. Opp. Ex. 57 ¶ 3. None of the other evidence cited states that important databases, files, and personnel "were carried forward" from the GEMS/DRE system to the BMD system.

54.    The DRE/GEMS system was unpatched for most of a 15-year period, during which it potentially could have been compromised by many

kinds of sophisticated attackers who would then still have a way into the system that would facilitate remaining inside or remaining in a position of having infiltrated the Georgia election system into the current day. Opp. Ex. 55 at 36:14-37:8.

**RESPONSE:** Objection. The fact is not supported by the cited evidence. The fact also does not comply with LR 56.1(B)(1) because it states an argument and mischaracterizes the cited evidence.

55.    This means that vulnerabilities in the GEMS/DRE System will also affect the security of the current election system. Opp. Ex. 57 ¶ 3; Opp. Ex. 27 ¶ 4 ("Although the KSU server itself was decommissioned in 2017, many of these potentially infected computers likely remain in use with the BMD-based system."); Opp. Ex. 18 ¶¶ 29-30 ("It is unreasonable to assume that the new BMD election system and supporting infrastructure is not already potentially compromised or exposed to malware or given the broad range of election filed on the CES elections.kennesaw.edu server."); Opp. Ex. 54 ¶ 10; Opp. Ex. 59 ¶¶ 5-10.

**RESPONSE:** Objection. The fact is not supported by the cited evidence. The fact also does not comply with LR 56.1(B)(1) because it states an argument.

56.    The SOS's legacy GEMS server was not shut down when it was replaced, and was located within the same room at the Elections Center as the current EMS Server that runs Dominion's Democracy Suite. Opp. Ex. 165; Opp. Ex. 61; Opp. Ex. 62; Opp. Ex. 31 at 246:16-247:8.

**RESPONSE:** Objection. The fact that "[t]he SOS's legacy GEMS server . . . was located within the same room at the Elections Center as the current EMS Server that runs Dominion's Democracy Suite," is not supported by the cited evidence. Additionally, Defendants object that Plaintiffs reference to entire documents does not comply with LR 56.1(B)(1)(a), which requires citation to evidence by page or paragraph number.

57.    It was common for election workers to re-use old USB drives (used with GEMS) in uploading the Election Night Reporting system from the Dominion EMS, permitting malware to travel from the old GEMS system to the ENR webserver to the Dominion EMS and BMD system. *See, e.g.*, Opp. Ex. 31 at 28:11-20, 34:3-35:15; Opp. Ex. 62; Opp. Ex. 63 at 36:4-38:3; Opp. Ex. 64; Opp. Ex. 65; Opp. Ex. 66; Opp. Ex. 28 at 1-2 (GEMS USB drives potentially used with compromised KSU server).

**RESPONSE:** Objection. The statement is not supported by the cited evidence. The evidence cited does not support the claimed fact that it was

"common" for election workers to re-use old USB devices (used with GEMS) in uploading data from the Dominion EMS or that malware could "travel from the older GEMS system to the ENR webserver to the Dominion EMS and BMD system." Additionally, the fact does not comply with LR 56.1(B)(1)(c), and Defendants object that Plaintiffs reference to entire documents does not comply with LR 56.1(B)(1)(a), which requires citation to evidence by page or paragraph number.

58.    After finding a box containing flash drives predating his employment in the server room, James Barnes plugged one into the EMS to copy election project files during an election. Barnes is unsure of the origin of these flash drives and whether they were appropriate to use with Georgia' voting system. Opp. Ex. 67 at 193:25-195:13.

**RESPONSE:** Objection. The fact is not supported by the cited evidence and mischaracterizes the cited testimony of James Barnes. Nothing in the cited evidence supports the statement that James Barnes was unsure whether the flash drives were appropriate to use with Georgia's election system.

The statement that "After finding a box containing flash drives predating his employment in the server room, James Barnes plugged one into

40

the EMS to copy election project files during an election," is also a mischaracterization of Mr. Barnes testimony that Plaintiffs cite as evidence for the statement in paragraph 58. Opp. Ex. 67 at 193:25-195:13.

Finally, the statement also does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is two statements combined into one.

59.    The build instructions for the new EMS server list the "need to be able to scan every USB attached storage device connected prior to use" because they "cannot ensure USB is free from malware, keylogging, etc." Opp. Ex. 62.

**RESPONSE:** Objection. The fact is not supported by the cited evidence and Plaintiffs mischaracterizes the evidence as "build instructions" for the EMS server. The cited evidence is taken from notes of David Hamilton in a document titled "Election Office Notes: 10am 6/15/20 Meeting." Opp. Ex. 62; D. Hamilton Depo. at 116:22-117:25. Nothing in the document indicates the notes are "build instructions," as Plaintiffs characterize the evidence. Additionally, Plaintiffs' reference to an entire document does not comply with LR 56.1(B)(1)(a), which requires citation to evidence by page or paragraph number.

60.    Removeable media could spread vote-stealing malware to BMDs

throughout a county or the state if connected to a central EMS server at the state or county level. Dkt. 1131 at 12.

**RESPONSE:** Objection. The fact is not supported by the cited evidence and does not comply with LR 56.1(B)(1) because it is stated as an argument. Plaintiffs' assertion that the "Removeable media could spread vote-stealing malware to BMDs throughout a county or the state if connected to a central EMS server at the state or county level" is not a statement of fact, but an overtly argumentative statement regarding a disputed issue in this case. The statement is also not supported by the cited evidence. The entire statement in Dr. Halderman's report cited by Plaintiffs in paragraph 60 is as follows:

"Nation-state actors likely can obtain access to election equipment with which to develop attacks via physical intrusion, theft, or by purchasing it under false pretenses. They also have developed a variety of techniques for infiltrating non Internet-connected systems, including by compromising hardware and software supply chains [15, 61, 62] and by spreading malware on removable media that workers use to copy files in and out of protected environments. [citing Stuxnet]. Such methods could be used to target the EMS systems that are used to prepare and distribute election definitions files

for the ICX. The attackers could then exploit vulnerabilities I discovered to spread vote-stealing malware to BMDs throughout Georgia." Dkt. 1131 at 12.

61.    Consumer grade USB flash drives are used to transfer data from the Elections Center's EMS "to and from the 159 counties in Georgia." State Defendants' former Chief Information Security Officer acknowledged: "The endpoints that are in the counties are not under the control of our department, and we can't be assured they don't have malware/viruses." Opp. Ex. 68.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is two statements combined into one. Plaintiffs' reference to an entire document also does not comply with LR 56.1(B)(1), which requires citation to evidence by page or paragraph number.

Additionally, the quotations in paragraph 61 are incomplete and mischaracterize the cited evidence. The entirety of the statements of David Hamilton from his July 1, 2020 email (Opp. Ex. 68) quoted in paragraph 61 are:

"We have a group in the Election Center that uses consumer grade USB flash drives and software encryption to move data regarding ballots and

poll information (not votes) to and from the 159 counties in Georgia." Opp. Ex. 68 at ¶ 1.

"The endpoints that are in the counties are not under the control of our department, and we can't be assured they don't have malware/viruses – Our offices are well outfitted with endpoint protection and the ability to scan any attached storage prior to use, etc." Opp. Ex. 68 at ¶ 4.

62.    Data has moved into and out of what was supposed to be—but was not—an "air-gapped system" using removable media that were provided by the SOS's office (and potentially other sources). Opp. Ex. 69 at 122:15-125:6; Opp. Ex. 70 at 34:5-14.

**RESPONSE:** Objection. The fact is not support by the cited evidence. Additionally, the statement does not comply with LR 56.1(B)(1) because it states an argument—an overtly argumentative statement regarding a disputed issue in this case. The cited evidence does not support the stated fact in paragraph 62 that "data has moved into and out of what was supposed to be—but was not—an 'air-gapped system,'" nor does the cited evidence mention removable media provided by "potentially other sources." Opp. Ex. 69 at 122:15-125:6; Opp. Ex. 70 at 34:5-14.

63.    Georgia's use of "commodity USBs" to move data into and out of

44

the purportedly "air-gapped" election system was not a competent or safe security practice because, *inter alia*, the USBs were not made in the U.S. and could have had data or malware already stored on them. Opp. Ex. 69 at 122:15-125:6.

 **RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as an argument rather than as a matter of fact. Moreover, the evidence cited does not support the fact asserted in paragraph 63. David Hamilton testified that "a strawman of what their ballot looks like" would be shared with counties via USB, and in his view, using "commodity-based USBs" was not a "best practice" "[b]ecause they're not made in the U.S. They're -- they could have all kinds of things on them. We don't know." Opp. Ex. 69 at 122:15-125:6.

 64. The SOS's Chief Information Security Officer, David Hamilton, recommended that the SOS adopt a more secure "managed USB" program through a vendor called Datalocker, but that had not been implemented by the time he left in 2021. Opp. Ex. 69 at 122:15-125:6.

 **RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as an argument rather than as a matter of fact and mischaracterizes the cited evidence. David Hamilton testified, "I decided that

I thought that he [Michael Barnes] needed to go to a more secure managed solution for USB drives, and I proposed moving to a – an actual managed USB key program. And I'm not sure if that ever got funded or not." Opp. Ex. 69 at 123:10-15. Defendants also object that the statement in paragraph 64 is immaterial to the claims and defenses in this case in that it provides no evidentiary support to any such argument that any party has asserted to date.

65.     Infiltration of Georgia's current BMD-related election hardware could be easily accomplished in under two minutes simply by plugging in a USB drive containing malicious code into a USB port on the equipment, including by a voter in the voting booth. *See* Dkt. 1131 at 46-48; Opp. Ex. 146 § 2.2.1, § 2.2.3, § 2.2.4, § 2.2.5, § 2.2.7.

**RESPONSE:** Objection. The cited evidence does not support the statement in paragraph 65 that "infiltration of Georgia's current BMD-related election hardware could be easily accomplished in under two minutes simply by plugging in a USB drive." Dr. Halderman's report cited in paragraph 65 states, "An attacker can install vote-stealing malware on the ICX by attaching a small USB device for under two minutes," but it does not support the claim that infiltrating Georgia's BMB equipment would be easy

or easily accomplished in under two minutes. Dkt. 1131 at 46-48.

Additionally, nothing in ICS Advisory (ICSA-22-154-01), Opp. Ex. 146, cited

by Plaintiffs in paragraph 65 supports the statement that "infiltration of

Georgia's current BMD-related election hardware could be easily

accomplished in under two minutes simply by plugging in a USB drive."

Finally, the fact in paragraph 65 does not comply with LR 56.1(B)(1) because

it is argumentative.

66.    Such malware has the potential to be installed by dishonest

election workers (or what Defendants refer to as "insiders") or intruders who

gain access to the machines during pre-election testing and at the polling

place. Opp. Ex. 5 at 82:1-20; Opp. Ex. 71 at 102:8-23; *see also* Dkt. 1131 at 48.

**<u>RESPONSE:</u>** Objection. The fact in paragraph 66 does not comply with

LR 56.1(B)(1) because it is argumentative. The statement refers to "such

malware" but does not cite to any evidence of malware or what "such

malware" could do. In this regard, the statement is also immaterial to the

claims and defenses in this case in that it provides no evidentiary support for

what "such malware" could do.

Additionally, the statement in paragraph 66 is not supported by the

cited evidence and mischaracterizes the cited evidence. Dr. Shamos'

testimony cited by Plaintiffs does not mention installing malware during pre-election testing or at the polling place. Opp. Ex. 5 at 82:1-20. Dr. Shamos testified that if the Russians want to skew Georgia's elections, it would be much easier for them to do so by bribing insiders to tamper with paper ballots. *Id.* Plaintiffs' counsel then asked, "Russians could also just bribe insiders to tamper with DREs, such as swapping out memory cards, right?" And Dr. Shamos responded, "[t]hey could." *Id.*

Finally, the statement in paragraph 66 also mischaracterizes Dr. Gilbert's testimony cited by Plaintiffs as evidence. Dr. Gilbert testified that an insider would need "a certain level of technical expertise" to alter votes on a BMD but "with a hand-marked paper ballot, 100 percent of the people inside can [alter those votes]." Opp. Ex. 71 at 102:8-23.

67.   The software on BMD machines is updated with a USB device that is plugged into each machine. Opp. Ex. 70 at 33:22-24.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

68.   Fulton County does not scan or inspect the USB devices used to update the software on BMD machines. Opp. Ex. 70 at 34:5-14.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

69.     Using fresh USB devices in every election would be a prudent security recommendation, but Defendants do not do this. Opp. Ex. 56 at 126:5-20.

**RESPONSE:** Objection. The cited evidence does not support the statement in paragraph 69 and mischaracterizes the testimony of Dr. Appel. The cited evidence does not mention what Defendants do. In fact, the testimony of Dr. Appel cited as evidence for the statement in paragraph 69 was that a general security recommendation "is not to reuse USB devices that have been out of your physical possession in places you don't necessarily trust. And so the idea of using fresh USB devices in every election or certainly using fresh USB thumb drives and you switch to a new set of equipment that would be a prudent security recommendation in general. I haven't studied it specifically on how it would apply to the machines in this case." Opp. Ex. 56 at 126:5-20.

70.     It would be a cause for concern if poll workers in Georgia were connecting USB drives to voting equipment that had also been connected to internet-connected devices (which they have). Opp. Ex. 56 at 126:21-127:16.

**RESPONSE:** Objection. The citied evidence does not support the statement in paragraph 70. The statement in paragraph 70 also does not comply with LR 56.1(B)(1) because it is argumentative. The citied evidence does not indicate what Georgia poll workers have done. Moreover, the cited testimony was in response to a hypothetical question and whether it would be concerning to Dr. Appel, and Dr. Appel's responded that he would be concerned "if you have computers that are routinely connected to the internet where they are vulnerable to attack from anywhere on the internet and then those computers may be corrupted." Opp. Ex. 56 at 126:21-127:16. Thus, the statement in paragraph 70 is not supported by the cited evidence.

71.     It would be a cause for concern if election workers in Georgia publicly shared or otherwise disclosed to unauthorized personnel passwords used to access and operate voting equipment (which they have). Opp. Ex. 56 at 127:17-128:7.

**RESPONSE:** Objection. The citied evidence does not support the statement in paragraph 71. The statement in paragraph 70 also does not comply with LR 56.1(B)(1) because it is argumentative. The testimony of Dr. Appel cited as evidence to support paragraph 71 does not mention anything about what Georgia election workers actually did. Moreover, the cited

50

evidence was Dr. Appel's testimony regarding whether he would be concerned if passwords were transmitted via FTP and without any encryption. Opp. Ex. 56 at 127:17-128:7.

72.     Coffee County employee Misty Hampton publicly shared a YouTube video in which two passwords used to access and operate voting equipment (including the critically-important county EMS server) were readily visible to viewers. Opp. Exs. 72, 73, 74; Opp. Ex. 75 ¶¶ 53-57; Opp. Ex. 76 at 5-8.

**RESPONSE:** Objection. The cited evidence does not support the statement in paragraph 72. The cited evidence does not indicate whether Misty Hampton or another person publicly shared the YouTube video. Additionally, the cited evidence indicates that Windows records show that the password was changed. Opp. Ex. 75 ¶ 55.

## E.     **Ballots Produced by Georgia's BMD System are Not Voter-Verifiable, Much Less Voter-Verified.**

73.     Georgia used a DRE in-person voting system for all elections conducted in the state from 2002 until 2019, when this Court granted Plaintiffs' request for an injunction against the continued use of that system. Opp. Ex. 9 at 101; Opp. Ex. 2 at 147-48. Secretary Raffensperger admitted that Georgia ended its use of the DRE system at the direction of this Court.

Opp. Ex. 77 at 6; Opp. Ex. 78 at 11 ("We stood up a new voting system, new voting machines in less than six months. *And that was really because we had an activist federal judge that said you can't use the old DRE machines. And so we had to do that for the first primary that we had coming up*.") (emphasis added); *see also* Opp. Ex. 79 at 8 (State was "aware of the [2018] order in *Curling v. Kemp* [that] strongly suggest[ed] that if Georgia does not update its voting system soon, a new system will be ordered"); Opp. Ex. 80 at 4-5 (State Defendants admit "the Order prevents the GEMS/DRE system from being used in 2020 elections").

**RESPONSE:** Objection. The statement in paragraph 73 does not comply with LR 56.1(B)(1)(b) because Plaintiffs rely on pleadings and a court order as cited evidence. The statement also does not comply with LR 56.1(B)(1) because it is argumentative and states a legal conclusion in dispute. The State of Georgia used the DRE voting system until the law was changed in 2019 to require the purchase of the BMD system, which the state purchased prior to the Court's order referenced in paragraph 73, and the implementation of the BMD system for the 2020 elections. 2019 Ga. Laws Act No. 24 (H.B. 316).

Defendants further object that the cited evidence would constitute inadmissible hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion"). Finally, the statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is two statements combined into one.

74.     This Court's 2019 injunction against that system still stands today. Opp. Ex. 2 at 147-48, 152.

**RESPONSE:** Objection. The statement in paragraph 74 is not a statement of fact; rather, it states a legal conclusion, which "the Court will not consider" pursuant to LR 56.1(B)(1)(c).

75.     In April 2019—in the wake of this Court's September 2018 preliminary injunction Order (Opp. Ex. 302 at 109-12) which found serious security and reliability failings with Georgia's DRE/GEMS system and warned Defendants that prompt corrective action was needed and expected— H.B. 316 was adopted, which provided for the DRE/GEMS system to be replaced with Dominion's Democracy Suite BMD system, including optical

scanners, for all in-person voters in state and federal elections. O.C.G.A. § 21-2-300(a)(2); Opp. Ex. 81 at 3.

**RESPONSE:** Objection. The statement in paragraph 75 does not comply with LR 56.1(B)(1)(b) because Plaintiffs rely on a court order as cited evidence. The statement also does not comply with LR 56.1(B)(1) because it states a legal conclusion and cited evidence would constitute inadmissible hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").

Subject to the aforementioned objections, Defendants do not dispute that Governor Kemp signed HB 316 into law on April 2, 2019, which mandated that the state replace the statewide use of DREs with BMDs and optical scanners.

76.    The following business day after the July 25-26, 2019 hearing that culminated in this Court granting an injunction barring the continued use of DREs, Secretary Raffensperger announced his selection of Dominion's Democracy Suite system for Georgia elections. Opp. Ex. 82.

54

**RESPONSE:** Objection. The statement in paragraph 76 does not comply with LR 56.1(B)(1) because it is argumentative and states a legal conclusion. Further, the cited evidence does not support the statement in paragraph 76 regarding the Court granting an injunction barring the continued use of DREs.

Subject to the foregoing objections, Defendants do not dispute the fact that Secretary Raffensperger announced his selection of Dominion Voting Systems to implement Georgia's new paper ballot voting system on July 29, 2019, and Defendants admit that the Court may consider the cited evidence for purposes of the summary judgment motion. Opp. Ex. 82.

77.     On July 29, 2019, the Secretary of State's Office posted the Notice of Intent to Award (NOIA) the contract for the State's new voting system including all equipment and software components to Dominion Voting Systems, Inc. ("Dominion"). Opp. Ex. 199; *see also* Opp. Ex. 84.

**RESPONSE:** Objection. The fact in paragraph 77 does not comply with LR 56.1(B)(1)(b) because Plaintiffs cite to a pleading as evidence, which the Court will not consider. *See, e.g.,* Opp. Ex. 199. Additionally, the fact in paragraph 77 does not comply with LR 56.1(B)(1)(a) because the citation to

evidence does not include the page or paragraph numbers, which are required for the Court's consideration of the fact. *See, e.g.,* Opp. Ex. 84.

Subject to the foregoing objections, Defendants do not dispute the fact that on July 29, 2019, the Notice of Intent to Award (NOIA) the contract for the State's new voting system including all equipment and software components to Dominion Voting Systems, Inc. was posted. Defendants admit that the Court may consider the Notice of Intent to Award posted July 29, 2019, Opp. Ex. 199 at 6, and the Master Solution Purchase and Services Agreement between Dominion Voting Systems, Inc. and the Secretary of State as evidence for purposes of the summary judgment motion.

78.    The final Notice of Award and certification was awarded to Dominion on August 9, 2019. Opp. Ex. 83.

**RESPONSE:** Objection. The fact in paragraph 78 does not comply with LR 56.1(B)(1)(b) because Plaintiffs cite to a pleading as evidence, which the Court will not consider. Additionally, the fact in paragraph 78 does not comply with LR 56.1(B)(1)(a) because the citation to evidence does not include the page or paragraph numbers, which are required for the Court's consideration of the fact.

Subject to the foregoing objections, Defendants do not dispute that the Notice of Award was posted on August 9, 2019 and that the Secretary of State issued the certification for the Dominion Voting System on August 9, 2019. Defendants admit that the Court may consider the Notice of Award, Opp. Ex. 83 at 5, and the Secretary of State's certification, Opp. Ex. 83 at 6, as evidence for purposes of the summary judgment motion.

79.    Georgia's Dominion BMD system encompasses but is not limited to: ImageCast X Prime (ICX) BMDs and associated printers, ImageCast Central (ICC) central-count optical scanners, Image Cast Precinct (ICP) precinct-count optical scanners, and the Democracy Suite election management system (EMS) software. Opp. Ex. 84 at 52-58; Dkt. 1131, Halderman Report at 9.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

80.    Dominion's Democracy Suite EMS software is used to create election definition files containing information specific to each election, which are loaded onto each BMD from a USB drive before each election. Dkt. 1131, Halderman Report at 10; Opp. Ex. 84 at 54 (ImageCast X-Prime BMD "The ballot is loaded directly onto the standalone device"), 100 ("Load Elections

57

Files on USB").

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

81.     Both BMD-printed ballots and handmarked paper ballots ("HMPBs") are fed into an ICC or ICP scanner, which is supposed to tabulate them and deposit them into a ballot box. Opp. Ex. 84 at 54-55; Dkt. 1131, Halderman Report at 11.

**RESPONSE:** Objection. The statement in paragraph 81 does not comply with LR 56.1(B)(1) because it argumentative. The cited evidence indicates that the ICC and ICP scanner are used to count voted ballots. State Defendants further object that the cited evidence does not support the stated fact. There is no mention in the evidence cited that ICP scanners are used to tabulate HMPBs in Georgia.

82.     The ICX BMD requires voters to make selections on a large computer screen that can be visible to other voters while the voter makes their selections; the BMD is supposed to cause an attached non-proprietary printer connected to the BMD by a cable to print ballots. Opp. Ex. 84 at 54 (listing 21.5" Avalue touchscreen, HP LaserJet Pro M402dne laser printer and 6' cable); Dkt. 1131, Halderman Report at 10-11, 18.

58

**RESPONSE:** Objection. The statement in paragraph 82 does not comply with LR 56.1(B)(1) because it argumentative. Additionally, the cited evidence does not support the statement in paragraph 82. The cited evidence does not mention the ICX having a "large" screen or the visibility of the screen to other voters while the voter makes their selections. Opp. Ex. 84 at 54; Dkt. 1131 at 10-11, 18. Additionally, the cited evidence does not state that the BMD "is supposed to cause" a printer to print the ballot, but instead that "after the voter reviews the ballot selections, a paper ballot is created for the voter from a printer in the voting booth." Plaintiffs have misrepresented the cited evidence.

83.   The system described in Georgia's contract with Dominion calls for in-precinct scanners/tabulators to count votes based on 2D QR barcodes included on the printed ballots generated by the BMDs. Opp. Ex. 84 at 54; Dkt. 1131, Halderman Report at 13-14; SMF Ex. 4 ¶ 9.

**RESPONSE:** Defendants object to consideration of the Halderman Report cited as evidence for the statement in paragraph 83 to the extent it does not discuss Georgia's contract with Dominion or the what the contract calls for. Dkt. 1131 at 13-14. Defendants admit that the Court may consider the Master Solution Purchase and Services Agreement between Dominion

Voting Systems, Inc. and the Secretary of State and Coomer Declaration cited as evidence for paragraph 83 for purposes of the summary judgment motion. Opp. Ex. 84 at 54; SMF Ex. 4 ¶ 9.

84.    The BMDs, Image Cast X models, also produce what is supposed to be a text summary of an elector's candidate selections on the printed ballots. Opp. Ex. 54 ¶ 37; SMF Ex. 4 ¶ 4.

**RESPONSE:** Objection. The cited evidence to Opp. Ex. 54 ¶ 37 does not support the statement in paragraph 84. Nothing in Opp. Ex. 54 ¶ 37 cited by Plaintiffs as evidence for paragraph 84 goes to the fact asserted.

Additionally, the statement in paragraph 84 does not comply with LR 56.1(B)(1) because it argumentative. Dr. Coomer's declaration that Plaintiffs cite as evidence to support the statement in paragraph 84 states, "The BMDs produce printed ballots with barcodes to accurately and efficiently count each vote along with human-readable plain-text ballot summaries that voters can use to verify their selections." SMF Ex. 4 ¶ 4.

85.    Each printed ballot is supposed to contain both a 2D QR barcode and human-readable text, both of which are supposed to capture the voter's selections made on the BMD touchscreen. Dkt. 1131, Halderman Report at 13-14; Opp. Ex. 54 ¶ 37; Opp. Ex. 84 at 54; SMF Ex. 4 ¶ 4.

**RESPONSE:** Objection. The cited evidence to Opp. Ex. 54 ¶ 37 does not support the statement in paragraph 85. Nothing in Opp. Ex. 54 ¶ 37 cited by Plaintiffs as evidence for paragraph 85 goes to the fact asserted. Additionally, the statement in paragraph 84 does not comply with LR 56.1(B)(1) because it argumentative. There is no evidence that the 2D QR barcode and human-readable text has not captured the voter's selections made on the BMD touchscreen.

86.     The Dominion ICP and ICC scanners currently used in Georgia can already scan and tabulate votes using paper ballots without QR barcodes. SMF Ex. 4 ¶ 4; Opp. Ex. 36 at 79:15-18; *see also* Opp. Ex. 54 ¶¶ 4, 37-40; Opp. Ex. 57 ¶ 11.

**RESPONSE:** Objection. The cited evidence to Opp. Ex. 54 ¶¶4, 37-40 and Opp. Ex. 57 ¶ 11 do not support the statement in paragraph 86. Defendants admit that the Court may consider the evidence at SMF Ex. 4 ¶ 4 and Opp. Ex. 36 at 79:15-18 for purposes of the summary judgment motion.

87.     Currently in Georgia, the ballot scanners tabulate votes from each BMD-produced ballot based on the 2D QR barcode generated by the BMD, and not based on the human-readable text. Dkt. 1131, Halderman Report at 13-14, ¶ 7; Opp. Ex. 84 at 54; Opp. Ex. 54 ¶ 32; SMF Ex. 4 ¶ 9.

**RESPONSE:** Objection. The cited evidence to the Halderman Report [Doc. 1131 at 13-14] and Opp. Ex. 54 ¶ 32 do not support the statement in paragraph 87. Defendants admit that the Court may consider the evidence at SMF Ex. 4 ¶ 9 and Opp. Ex. 84 at 54 for purposes of the summary judgment motion.

88.    Electors cannot visually review and confirm whether the barcode accurately conveys their selections. Dkt. 1131, Halderman Report at 13-14; Opp. Ex. 57 ¶¶ 3-8, 12-15, 20, 22; Opp. Ex. 56 at 38:2-7, 55:23-57:2; Opp. Ex. 85 at 10:1-17, 25:22-26:20, 71:3-72:8; Opp. Ex. 32; Opp. Ex. 33; Opp. Ex. 70 at 180:20-181:7; Opp. Ex. 86; SMF Ex. 55 at PDF p. 4, ¶¶ 9-10; Opp. Ex. 87 at 46:4-11; Opp. Ex. 5 at 56:13-57:21; Dkt. 1131 ¶ 3.2; Opp. Ex. 57 ¶ 6; Opp. Ex. 88 ¶ 27; Opp. Ex. 89 ¶ 18; SMF. Ex. 42 ¶ 87(b); Opp. Ex. 90 ¶ 10; SMF Ex. 59 ¶ 54; Dkt. 1590-7, Feb. 2023 Marks Decl., Ex. 7 at 4 *see also* Opp. Ex. 2 at 9 n.10 (finding "no elector can visually review and confirm whether the barcode accurately conveys her votes actually cast, as filled out on the BMD screen or appearing on the printout."); Opp. Ex. 91 at 82 ("the evidence shows that the Dominion BMD system does not produce a voter-verifiable paper ballot or a paper ballot marked with the voter's choices in a format readable by the voter because the votes are tabulated solely from the unreadable QR code"); *id* at

147 ("Time will tell whether Act V here can be still avoided or at least re-written.").

**RESPONSE:** Objection. The statement in paragraph 88 does not comply with LR 56.1(B)(1) because it argumentative, is a legal opinion, and is not a statement of fact. The paper ballot printed from the Dominion ICX contains the human-readable text of the voter's selections. Opp. Ex. 84 at 54. Additionally, the fact in paragraph 88 does not comply with LR 56.1(B) because Plaintiffs cite to pleadings as evidence, which the Court will not consider.

89.     Dr. Alex Halderman identified an instance where a QR code on a ballot cast in DeKalb County did not match the human readable text on that ballot. Dkt. 1590-13 (June 7, 2022 Jan. 20, 2023 email from Halderman to Marks); Dkt. 1590-12, Feb. 2023 Marks Decl., Ex. 12 at 2; *see also* SMF Ex. 42 ¶ 87(b)(i); Dkt. 1131 ¶¶ 5, 7.

**RESPONSE:** Objection. The statement in paragraph 89 is not supported by the cited evidence. The statement is a mischaracterization of the events that occurred in DeKalb County, as it was not that the QR code did not match the human readable text, but that the database was adjusted

so that coding did not match up when the ballot was scanned. State Defendants object that it is not a fact, as it is disputed.

Additionally, to the extent that Plaintiffs intend to rely on the substance of the email and documents attached to Ms. Marks' declaration for the truth of the matter contained therein, Defendants object that the cited evidence is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").

90.    Most voters do not verify that the human readable portion of their printed ballots reflect their intended votes. Opp. Ex. 70 at 180:20-181:13; Opp. Ex. 54 at ¶ 7(b), 21 n.40 (citing Opp. Ex. 27 at Ex. A); SMF Ex. 55 at PDF p. 53, ¶ 22; Opp. Ex. 92 at 1-2; Opp. Ex. 56 at 70:20-72:2; Opp. Ex. 93 ¶¶ 10, 63-64; Opp. Ex. 71 at 75:2-7; Opp. Ex. 87 at 46:12-21; Dkt. 1589-4, Feb. 2, 2023 Stark Decl., Ex. 4 (Georgia Verification Study) at 3; Opp. Ex. 54 ¶ 7(b); Dkt. 1593, Feb. 2023 Dufort Decl. ¶ 34; Dkt. 1597, Feb. 2023 Nakamura Decl. ¶ 48.

**RESPONSE:** Objection. The statement in paragraph 90 is not supported by the cited evidence and does not comply with LR 56.1(B) because it argumentative. The evidence does not support the claim in the statement that "most" voters do not verify the human-readable text on their ballot. Testimony of Rick Barron cited by Plaintiffs as evidence states that voters are "supposed" to review their ballot and refers to Mr. Barron's experience in Nevada, not Georgia. Opp. Ex. 70 at 180:20-181:13. The citation to Dr. Halderman's declaration in paragraph 90 states, "Research shows that few voters carefully review their BMD printouts," not that "most" voters do not verify the human-readable text on their ballot in Georgia. Opp. Ex. 54 ¶ 7(b). Likewise, Plaintiffs' citation to Dr. Appel's declaration, [Opp. Ex. 93 ¶ 10], indicates that over 90% of voters verify the human-readable text on their ballot. Plaintiffs also cite to what they represent as ¶¶ 63-64 of Dr. Appel's declaration, [Opp. Ex. 90 ¶¶63-64], but there are no paragraphs (or page numbers) number 63 or 64. The other cited evidence in the string cite in paragraph 90 is similarly unsupportive of the fact in that paragraph. *See, e.g.*, Doc. 1593, Feb. 2023 Dufort Decl. ¶ 34 ("I have rarely seen a voter look at their BMD ballot for more than 10 seconds"); Doc. 1597, Feb. 2023 Nakamura Decl. ¶ 48 ("I have never seen a voter check a long ballot against a

'cheat sheet' … like the ones I bring on the occasions when I have had to vote in person.").

Additionally, State Defendants object that a portion of the cited evidence is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion"). *See, e.g.,* Opp. Ex. 92 at 1-2.

91.    Multiple studies of the BMD system in practice show that the rates at which voters typically check the human-readable text on the ballots (when they check at all) fall far short of the rates election security experts agree is needed to detect a systematic problem with Georgia's voting system and to allow for any remedy to correct the problem. *See* SMF Ex. 59 ¶¶ 60-64; *see also* Opp. Ex. 94.

**RESPONSE:** Objection. The statement in paragraph 91 is not supported by the cited evidence and does not comply with LR 56.1(B) because it argumentative. The cited evidence does not demonstrate that "multiple studies" show that the rate at which voters check the human-readable text "falls far short of the rates election security experts agree is needed to detect

systematic problems with Georgia's voting system and to allow for any remedy." The studies cited in Dr. Appel's declaration did not involve voters in Georgia, but instead involved voters in Tennessee and voters in jurisdictions prior to Georgia's implementation of the BMD system. SMF Ex. 59 ¶¶ 60-64.

92.     Even if a voter checks their ballot, they are unlikely to spot errors and are very unlikely to raise the issue to a poll manager, and even if they do, they are likely to simply be directed by election workers to spoil their ballot and vote again rather than corrective action being taken to address a failure with the voting equipment or broader system itself. SMF Ex. 59 ¶¶ 22, 65-74; Opp. Ex. 87 at 44:21-45:16, 47:11-15; Opp. Ex. 92 at 2; *see also* Opp. Ex. 4 ¶ 7.

**RESPONSE:** Objection. The statement in paragraph 92 is not supported by the cited evidence and does not comply with LR 56.1(B) because it argumentative. Additionally, the fact does not comply with LR 56.1(B) because it is not separately numbered, as it is several statements combined into one.

93.     In the Georgia Voter Verification Study commissioned by the SOS's Office, *only 19%* of voters checked their ballots for *more than five seconds*. Dkt. 1589-4, Feb. 2, 2023 Stark Decl., Ex. 4 (Georgia Verification Study) at 2-3. When State Defendants' expert Juan Gilbert was asked in his

deposition to look at a real, BMD-printed ballot cast in Fayette County during the November 2020 election and *just identify the candidates selected who were not Republicans*, it took him *21 seconds* to be able to do so with just the one ballot. Opp. Ex. 71 at 180:7-24; Dkt. 1131 at 15.

**RESPONSE:** Objection. The statement does not comply with LR 56.1(B) because it is not separately numbered, as it is two statements combined into one.

Additionally, the two statements in paragraph 93 are not supported by the cited evidence. The statement in the first sentence is not supported by the cited Georgia Voter Verification Study, which is a draft document and only examined voters checking their ballot *at the voting booth*, which does not encompass all voters that check their ballots at different times, such as at the scanner. 1589-4 at 1, 4.

Further, the statement and cited evidence in the second sentence is not relevant evidence the claims in the case. Dr. Gilbert is not a Georgia voter and the ballot he was asked to review was a random ballot spring upon him at a deposition—not one that he marked. The amount of time Dr. Gilbert took

to identify all of the selected candidate who were not Republican is thus irrelevant.[1] Opp. Ex. 71 at 180:7-24.

94.    BMD-printed ballots can be particularly difficult to read and understand. Opp. Ex. 93 ¶ 8; Opp. Ex. 3 at PDF p. 107 n.75; Opp. Ex. 56 at 36:15- 37:2, 71:17-72:2; Opp. Ex. 87 at 46:12-21; Dkt. 1597, Feb. 2023 Nakamura Decl. ¶ 50-51, Dkt. 1597, Feb. 2023 Nakamura Decl. Exs 10-12.

**RESPONSE:** Objection. The statement in paragraph 94 is not supported by the cited evidence and does not comply with LR 56.1(B) because it argumentative. Plaintiffs' assertion that the "BMD-printed ballots can be particularly difficult to read and understand" is not a statement of fact, but an overtly argumentative statement regarding a disputed issue in this case.

95.    Dr. Gilbert was unaware of the study the SOS's Office commissioned confirming very low voter verification of ballots in Georgia 2020 elections and thus did not consider that study or its findings for his analyses and opinions. Opp. Ex. 95; Opp. Ex. 71 at 41:24-43:5.

---

[1] Moreover, the ballot that Dr. Gilbert was asked to review and identify the Republican candidates was presented to him on a computer screen during a virtual deposition, which Plaintiffs conveniently ignore.

**RESPONSE:** Objection. The statement in paragraph 95 is not supported by the cited evidence and does not comply with LR 56.1(B) because it argumentative. The Georgia Voter Verification Study cited to support the statement "The results of our analysis indicate that 80.1% of the voters observed checked their ballot, compared to a fifth (19.9%) who did not." Opp. Ex. 95 at 3. Moreover, Dr. Gilbert stated that he did not recall the study and did not believe he cited it. Opp. Ex. 71 at 41:24-43:5. The fact is also irrelevant to the claims because the study was limited to voters checking their ballot at the voting booth only. Opp. Ex. 95.

96.    Georgia election code mandates voting on devices that print "an elector verifiable paper ballot" and "produce paper ballots which are marked with the elector's choices in a format readable by the elector." O.C.G.A. § 21-2-2(7.1); O.C.G.A. § 21-2-300(a)(2).

**RESPONSE:** Objection. The statement in paragraph 96 is a legal conclusion, which "the Court will not consider" pursuant to LR 56.1(B).

97.    The Dominion BMD system that Georgia currently uses does not accomplish the statutory mandate of producing paper ballots which are marked with the elector's choices in a format readable by the elector. Dkt. 1131, Halderman Report at ¶ 3.2; Opp. Ex. 57 ¶ 6; *see also* Opp. Ex. 91 at 82

("[T]he evidence shows that the Dominion BMD system does not produce a voter verifiable paper ballot or a paper ballot marked with the voter's choices in a format readable by the voter because the votes are tabulated solely from the unreadable QR code. Thus, under Georgia's mandatory voting system for 'voting at the polls' voters must cast a BMD-generated ballot tabulated using a computer-generated barcode that has the potential to contain information regarding their voter choices that does not match what they enter on the BMD (as reflected in the written text summary), or could cause a precinct scanner to improperly tabulate their votes.").

**RESPONSE:** Objection. The statement in paragraph 97 does not comply with LR 56.1(B) because it is overtly argumentative and states a legal conclusion about an issue in dispute in this action, which the Court will not consider pursuant to LR 56.1(B).

98.     Hand-marked paper ballots provide a reliable, software-independent record of the selections each voter actually made when registering their votes on the ballots, because there is no possibility whatsoever that a misconfiguration, a computer glitch, or malware will cause the voter's pen to handwrite a selection on the ballot the voter did not intend or actually make or otherwise alter the voter's selections on the ballot itself.

71

Opp. Ex. 87 at 62:6-15; Opp. Ex. 96; Opp. Ex. 92 at 2; Opp. Ex. 89 ¶ 4; Opp.

Ex. 55 at 256:23-257:3.

**RESPONSE:** Objection. The statement in paragraph 98 does not

comply with LR 56.1(B) because it is not separately numbered, as it is several

statements combined into one. Additionally, the statement in paragraph 98 is

not supported by the cited evidence and does not comply with LR 56.1(B)

because it argumentative and misrepresents as fact an issue that is in

dispute in this case. Plaintiffs state as fact that hand-marked paper ballots

are "reliable" and a "record of the selections each voter *actually* made,"

because "there is no possibility" of "a misconfiguration, a computer glitch, or

malware," which is merely Plaintiffs opinion and not a statement of fact.

99.    Election officials also have options to help protect voters using

hand-marked paper ballots from their own mistakes, such as configuring

scanners to reject overvotes (where a voter registers more than one selection

among the choices for a particular contest or question on the ballot) and to

warn voters about undervotes, the most common kinds of voter errors

(undervotes—where a voter does not register a selection for every contest or

question on the ballot—are often intentional by voters rather than errors.

Opp. Ex. 88 ¶ 27; Opp. Ex. 97 ¶ 44.

**RESPONSE:** Objection. The statement in paragraph 99 does not comply with LR 56.1(B) because it is not separately numbered, as it is several statements combined into one. Additionally, the statement in paragraph 99 is not supported by the cited evidence and does not comply with LR 56.1(B).

100.   In 2020, numerous marks by voters on paper ballots erroneously were not detected by the Dominion scanning software and thus the ballots were not fully or properly tabulated, even though vote review panelists unanimously agreed on the candidate that the voter intended to select for affected contests, a fact that one vote review panelist found "truly disturbing." Opp. Ex. 98.

**RESPONSE:** Objection. The statement in paragraph 100 does not comply with LR 56.1(B) because it is not separately numbered, as it is several statements combined into one. Additionally, the statement in paragraph 100 is not supported by the cited evidence and does not comply with LR 56.1(B) because it argumentative.

Finally, the email Plaintiffs cite as evidence is hearsay and is also "hearsay within hearsay." To the extent that Plaintiffs intend to rely on the substance of the emails for the truth of the matter contained therein, Defendants object that the cited evidence is hearsay, which cannot be

considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193
F.3d 1316, 1322 (11th Cir. 1999); *see also Carr v. Tatangelo*, 338 F.3d 1259,
1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a
district court in ruling on a summary judgment motion").

101.   Election security experts, including Defendants' own election
experts, recommend using HMPBs as the primary method of voting. Opp. Ex.
99 at PDF p. 165, ¶¶ 6, 15; Opp. Ex. 55 at 84:2-8, 91:4-15, 96:2-6; Opp. Ex. 92;
Opp. Ex. 56 at 109:1-3, 135:23-136:2; Opp. Ex. 5 at 56-57; *see also* Opp. Ex.
100 (stating that his "ideal voting model is one where voters get to choose
BMD or hand marked, where audits happen regularly, and where machines
are maximally transparent and use modern security features"); Opp. Ex. 87
at 125:7-12; Opp. Ex. 92 at 2.

**RESPONSE:** Objection. The evidence cited does not support the stated
fact. Plaintiffs mischaracterize the depositions of Drs. Halderman, Appel and
Shamos, as they did not recommend the use of HMPBs. Plaintiffs also
mischaracterize the testimony of Harri Hursti, as Mr. Hursti does not
"recommend using HMPBs as the primary method of voting." Mr. Hursti
instead recommends HMPBs instead of BMDs because "when the system in

between cannot be trusted the chain of custody is broken." This means that a different system that was trusted could be put in place instead of HMPBs.

State Defendants further object that Opp. Ex. 92 is inadmissible. The cited evidence is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999); Dallas Cty. v. Commercial Union Assur. Co., 286 F.2d 388, 391-92 (5th Cir. 1961) ("Of course, a newspaper article is hearsay, and in almost all circumstances is inadmissible.").

102.   The vast majority of U.S. jurisdictions use hand-marked paper ballots ("HMPBs") as the primary method of voting, with BMDs used only for voters who need or request them (e.g., those with certain disabilities). Dkt. 1131, Halderman Report at ¶ 2; Opp. Ex. 57 ¶ 6; Opp. Ex. 102; Opp. Ex. 103; see also Opp. Ex. 104 at 8.

**RESPONSE:** Objection. Plaintiffs' citation to the docket does not comply with LR 56.1(B) because it is not a citation to evidence.

State Defendants also object that the fact does not comply with LR 56.1(B) because it is being stated as an argument rather than as a fact. The quantifier "vast majority" is argumentative, as it is an opinion for what "vast majority" is.

State Defendants further object that Opp. Ex. 57 ¶ 6 does not support the stated fact as it is not discussing the number of U.S. jurisdictions that use hand-marked paper ballots. State Defendants object to Opp. Ex. 102 because it does not support the stated fact due to a lack of foundation.

Additionally, Opp. Ex. 103 is cited without any specific page or paragraph numbers, and therefore does not comply with LR 56.1(B).

Finally, Opp. Ex. 104 does not support the stated fact. The evidence provided is only an opinion of Verified Voting and not a statistic relating to the number of U.S. jurisdictions that use hand-marked paper ballots.

103.   The current consensus among election security experts is that BMDs, such as the Dominion ICX at issue, are not a secure method of voting due to fundamental flaws and that there is no known way of remedying those flaws other than to abandon BMDs except for those voters who cannot mark a paper ballot with a pen. Opp. Ex. 56 at 45:10-46:5; SMF Ex. 59 ¶¶ 5-6, 22-23, 25, 45, 77; Opp. Ex. 105 at 11:9-13:20, 271:4-272:6; Opp. Ex. 32; Opp. Ex. 33; Opp. Ex. 87 at 42:21-43:4; Dkt. 1589, Feb. 2, 2023 Stark Decl., ¶¶ 6-7, Ex. 5 at 2; Opp. Ex. 96.

**RESPONSE**: Objection. The cited evidence does not support the stated fact. Dr. Appel's testimony is an opinion, and not a fact. Further, the

statement is a mischaracterization of his testimony, as he says it is a

"growing scientific consensus." Further, Opp. Ex. 105 and Opp. Ex. 87 do

support the stated fact as they do not discuss the "current consensus among

election security experts."

State Defendants object that Opp. Ex. 32 and Opp. Ex. 33 are not

citations to evidence and are cited without any specific page or paragraph

numbers, and therefore does not comply with LR 56.1(B). Additionally, Dkt.

1589 is not a citation to evidence and does not comply with LR 56.1(B).

104.    In addition, the National Academies of Sciences, Engineering,

and Medicine has found that there is no technical mechanism currently

available that can ensure that a computer application used to record voter

selections will produce accurate results; testing alone cannot ensure that

systems have not been compromised; and any computer system used for

elections – such as a voting machine or e-pollbook – can be rendered

inoperable, which is why software-independence is critically important for

voting systems that use any computer devices or applications. Opp. Ex. 3 at

PDF p. 110; *see also* Opp. Ex. 91 at 25 (citing Opp. Ex. 3 at PDF p. 70, 108);

*see also* Opp. Ex. 56 at 41:12-19; 110:5-21; SMF Ex. 59 ¶¶ 20, 30.

77

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Opp. Ex. 3, Opp. Ex. 56, and SMF Ex. 59 do not discuss the stated fact. Further, Plaintiffs' citations to Court Order found in Opp. Ex. 91 does not comply with LR 56.1(B) because it is not a citation to evidence.

State Defendants further object that the statement does not comply with LR 56.1(B) because it is not separately numbered, as it is multiple statements combined into one.

105.   SOS CIO Merritt Beaver was not familiar with the well-recognized computer science concept of software independence. Opp. Ex. 31 at 133:7-11.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B) because Plaintiffs' statement that software independence is a "well-recognized computer science concept" is argumentative. The cited evidence does not support that statement, and it is merely an argumentative opinion by Plaintiffs.

106.   In 2018, the National Academy of Science noted that research on BMD verification was limited and warned against the specific style of BMD (with summary ballots) used in Georgia, stating that "[a]dditional research on ballots produced by BMDs will be necessary to understand the

effectiveness of [BMD] ballots." Opp. Ex. 3 at PDF p. 107-08. That additional research has led to the current consensus against BMD systems like that used in Georgia for all in-person voters statewide as described above.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. There is no information in the cited evidence that states that the type of BMD that is being discussed is the one used in Georgia. Further, there is no explicit warning in the evidence cited.

State Defendants further object that the statement does not comply with LR 56.1(B) because it is not separately numbered, as it is multiple statements combined into one.

107.   Numerous Georgia counties have had difficulties reconciling vote totals cast on the BMDs. *See, e.g.*, Opp. Ex. 106; Opp. Ex. 107; Opp. Ex. 108; Opp. Ex. 76; Opp. Ex. 109.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Opp. Ex. 107 and Opp. Ex. 108 do not state that the difficulties came from the BMDs. Further, these are concerns from a citizen, sharing his opinion and concerns over an issue he experienced on the Secretary of States website and is not a fact concerning a county having difficulties reconciling.

State Defendants further object that the word "numerous" is argumentative and does not comply with LR 56.1(B). The word "numerous" is subjective and could be interpreted as a misrepresentation of the evidence cited.

108.   Defendants' expert Dr. Juan Gilbert has designed a new BMD for the very purpose of trying to remedy the well-recognized, serious deficiencies with BMDs like the Dominion BMDs Georgia uses. Opp. Ex. 110 ("BMDs. . .in voting machines are often nontransparent, hackable, and overly complex"); Opp. Ex. 71 at 55:11-20, 57:19-25.

**RESPONSE:** Objection. The evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses Plaintiffs' expert creating a new BMD machine, but is not the BMD machine that is used in Georgia elections, and does not support relief sought in this case.

To the extent the Court rules this evidence is material, State Defendants admit that the Court may consider the fact that Dr. Gilbert designed a BMD for purposes of the pending summary judgment motions.

109.   Under the current BMD system, the threshold bottleneck during voter check-in significantly has contributed to long lines and waiting periods of hours (far greater than 30 minutes) and caused voters to leave and be

deterred from voting. . . . combined with issues related to the power supply
limitations at multiple polling places (causing equipment shutdowns),
repeated issues with the operation of the PollPads and BMDs themselves,
and ineffective or nonexistent 'nontechnical' backup systems in place has led
to a severe burden on the rights of voters" Opp. Ex. 34 at 47, 49-50; Opp. Ex.
63 at 131:10-132:12, 134:19-138:16; Opp. Ex. 111; Opp. Ex. 112; Opp. Exs.
113-118.

**RESPONSE:** Objection. Plaintiffs' citations to the Court Order found
in Opp. Ex. 34 does not comply with LR 56.1(B) because it is not a citation to
evidence.

Further, State Defendants object that the cited evidence does not
support the stated fact. The cited evidence which complies with LR 56.1(B)
does not discuss "threshold bottleneck during voter check-in," "issues related
to the power supply limitations," or "ineffective or nonexistent 'nontechnical'
backup systems."

State Defendants object that the statement does not comply with LR
56.1(B) because it is not separately numbered, as it is multiple statements
combined into one.

81

State Defendants further object that various citations do not comply with LR 56.1(B) because they are not numbered by page or paragraph number.

110.   In June 2020, multiple Georgia counties had to turn prospective voters away because BMDs were not working and the counties did not have paper ballots to offer. *See, e.g.*, Opp. Ex. 119; Opp. Ex. 120; Opp. Ex. 63 at 131:10-132:12; Opp. Ex. 111.

**RESPONSE:** Objection. The evidence on which the statement relies is inadmissible hearsay because the evidence is either a transcript of testimony about voter issues, or emails regarding issues from voters, and does not come from the declarant. The Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Opp. Ex. 119 is hearsay of a voter.

Further, State Defendants object that the fact does not comply with LR 56.1(B) because it is being stated as an argument rather than as a fact. The word "multiple" is objective and argumentative, and there is no evidence provided that more than one county turned voters away.

111.   In 2019, Jennifer Doran, Election Supervisor for the Morgan County Board of Elections & Registration, was directed by her board to ask

the Secretary of State whether Morgan County could conduct elections using hand-marked paper ballots, but the Secretary of State informed her that Morgan County could not use hand-marked paper ballots in any elections—notwithstanding that Georgia law affords county election superintendents discretion to adopt HMPBs when they deem the BMD system infeasible to use. Opp. Ex. 44 at 331:8-17; *see also* O.C.G.A. §§ 21-2-281, 21-2-334.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The cited evidence states that Ms. Doran was asked by her Board of Elections to ask the Secretary of State if they could conduct elections by using hand-marked paper ballots, and the Secretary of State denied their request. However, the remaining portion of the stated fact regarding what Georgia law affords county election superintendents is an argumentative statement, as well as a legal argument, derived from Plaintiffs opinion, and does not comply with LR 56.1(B).

State Defendants further object that the statement does not comply with LR 56.1(B) because it is not separately numbered, as it is multiple statements combined into one.

112.   For absentee ballots that cannot be scanned in Georgia elections, election officials use BMDs to purportedly duplicate those ballots for

tabulation purposes, which means that voters who vote by HMPB via

Georgia's absentee system nonetheless may end up with their votes subject to

Georgia's BMD system (without that information being disclosed to those

voters, no less). Opp. Ex. 48 at 224:18-228:17; Dkt. 1593, Feb. 2023 Dufort

Decl. ¶¶ 11-13, Ex. A.

**RESPONSE:** Objection. The evidence cited does not support the stated

fact. The stated fact is an argumentative statement, and is derived from

Plaintiffs opinion, and does not comply with LR 56.1(B). Words such as

"purportedly," "which means," and "no less" are argumentative in the context

used and describe opinions and not facts.

113.   Multiple SOS employees with responsibility related to the

administration of Georgia elections were not aware that Logic and Accuracy

testing is unlikely to detect malware. Opp. Ex. 48 at 38:1-24; Opp. Ex. 105 at

252:4-19.

**RESPONSE:** Objection. The evidence cited does not support the stated

fact. Mr. Sterling did not testify that he was "not aware that Logic and

Accuracy testing is unlikely to detect malware." Mr. Sterling was only asked

if he was aware that "multiple election security experts have testified in this

case that L & A testing cannot detect malware?" Further he was asked if he

was aware that "multiple election security experts have testified that hash testing cannot detect malware?" This is a mischaracterization of the testimony provided to those questions unrelated to the fact stated. State Defendants further object that the evidence cited does not support the stated fact, as Mr. Barnes answered "yes" to being "under the belief that the logic and accuracy testing … would detect malware." Plaintiffs mischaracterize his testimony as "not" being aware.

114.   Multiple SOS employees with responsibility related to the administration of Georgia elections or the SOS Office's IT systems were not aware that certain malware can defeat hash testing. Opp. Ex. 31 at 91:25-92:10; Opp. Ex. 48 at 38:1-24.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Mr. Sterling did not testify that he was "not aware that certain malware can defeat hash testing." Mr. Sterling was only asked if he was aware that "multiple election security experts have testified that hash testing cannot detect malware?" This is a mischaracterization of the testimony provided to the question presented, which is unrelated to the fact stated. State Defendants further object that the cited evidence does not support the stated, for a lack of foundation. Plaintiffs do not lay a foundation that "certain

malware can defeat hash testing" and state it as a fact. State Defendants further object that the statement is argumentative and a mischaracterization of the evidence presented. The word "multiple" is a mischaracterization and is argumentative, as the cited evidence does not support that statement. Finally, State Defendants further object that the evidence cited is mischaracterized as an objection was made for the line of questioning being discussed in Mr. Beaver's deposition.

115.   Michael Barnes believed that testing a single BMD and printer on election day was a reliable testing method, based on the fact that if one BMD shows proper operation, the others would as well. Opp. Ex. 105 at 27:20-29:3.

**RESPONSE:** Objection. The stated fact is immaterial to the claims in this case. State Defendants further object that the evidence cited does not support the stated fact, as the evidence is mischaracterized.

116.   Parallel testing of a single voting machine, at best, will only reveal whether that particular machine has been infected with malware, and thus this sort of parallel testing is not reliable for assessing the operation of voting machines beyond that one machine. Opp. Ex. 5 at 104:24-106:25.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited is an opinion of Dr. Shamos, and should be characterized as such, as it is not a fact. Further, the evidence is mischaracterized, because the Plaintiffs are discussing DREs, specifically, and that is not mentioned in the stated fact.

State Defendants further object that the evidence is mischaracterized, as objections were made by State Defendants, and were not included in the stated fact.

Finally, State Defendants object that the cited evidence does not support the stated fact. Dr. Shamos does not state in the cited evidence that "this sort of parallel testing is not reliable for assessing the operation of voting machines beyond that one machine." That is a question presented by Plaintiffs, which is not answered in the evidence cited, and is testimony of counsel and not Dr. Shamos.

117.   State Defendants' expert, Dr. Michael Shamos, does not have confidence in a parallel testing procedure that only selects one machine out of some 27,000 for testing. Opp. Ex. 5 at 107:1-11.

**<u>RESPONSE:</u>** Objection. The cited evidence does not support the stated fact. The cited evidence is mischaracterized, as it is in relation to DRE machines and Georgia now uses BMD machines.

Subject to and without waiving the foregoing objection, State Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

118.   There are technical implications for systems that are not adequately logic and accuracy tested, which could result in configuration problems not being caught, particularly if it is with the ballot-printing portion of the system. *See* Opp. Ex. 121 at 107:15-108:17, 129:24-130:10, 130:8-10, 130:15-21, 130:25-132:4 (Skoglund Testimony).

**<u>RESPONSE:</u>** Objection. The fact does not comply with LR 56.1(B) because it states an argument. The subjective opinions and assessments of Plaintiffs or their proffered experts are not statements of fact. Mr. McGuire's question to Mr. Skoglund was asking for his opinion, and not for a fact. Further, State Defendants object that the evidence cited does not support the stated fact. Mr. Skoglund's testimony is in relation to an isolated event that occurred in Northhampton County, Pennsylvania, and was not addressed as such in the stated fact.

88

119.   It is not sound cybersecurity practice to ignore known vulnerabilities simply because there may be other unknown vulnerabilities in an election system. Opp. Ex. 56 at 142:9-14.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B) because it states an argument. The subjective opinions and assessments of Plaintiffs or their proffered experts are not statements of fact.

120.   That voters with disabilities may be vulnerable to BMD-hacking is not a reason to needlessly subject voters who can mark a paper ballot by hand to the risk of their votes being stolen by a hacked BMD. Opp. Ex. 93 ¶ 17.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B) because it states an argument. The subjective opinions and assessments of Plaintiffs or their proffered experts are not statements of fact.

121.   Mr. Beaver said his team received reports from Georgia counties on a regular basis that someone in the office clicked on something that introduced malware onto the computer system. Opp. Ex. 31 at 164:25-167:8.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Mr. Beaver is discussing reports from counties that are helpful to make the Secretary of State's office aware of different malware attacks and the

89

counties are asking for help. The cited evidence is mischaracterized, as Mr. Beaver does not state that the event "introduced malware onto the computer system."

122.   Mr. Barnes did not know who in the SOS Office would actually deal with security vulnerabilities. Opp. Ex. 105 at 98:5-100:24.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited is discussing specific Vulnerabilities outlined by Dr. Halderman in his report. Mr. Barnes made clear that he was not aware of Dr. Halderman or his report. The stated fact is a mischaracterization of this as the cited evidence is not discussing "security vulnerabilities" generally. It is merely discussing one report from Plaintiffs' expert in this case. Mr. Barnes stated that he would ask Mr. Germany for the specific, alleged, vulnerabilities that were asked about concerning Dr. Halderman.

123.   The SOS Office did not undertake any investigation for Curling Plaintiffs' interrogatories before responding to them that State Defendants were unaware of "any election equipment used with the Dominion election system being hacked in an election in Georgia." Opp. Ex. 48 at 171:17-177:7.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Plaintiffs mischaracterize the cited evidence. Mr. Sterling explained that

there were no reports or evidence of "any election equipment used with the Dominion election system being hacked in an election in Georgia." Further, various people were spoken with in relation to this interrogatory, such as "Mr. Germany, Blake, Frances." State Defendants further object that this mischaracterization is argumentative and is not in compliance with LR 56.1(B).

124.   Curling Plaintiffs have repeatedly served interrogatories requesting information about *unauthorized access* to voting system components that State Defendants refused to answer at all or only evasively, such as only denying knowledge specifically of a hack. Opp. Ex. 122; Opp. Ex. 123.

**RESPONSE:** Objection. The cited evidence does not comply with LR 56.1(B) because it is not provided with page or paragraph number. State Defendants further object that the stated fact does not comply with LR 56.1(B) because it is stated as argument rather than as a statement of fact. The statements that State Defendants "refused to answer at all or only evasively" as legal arguments and are not facts. The word "repeatedly" is also argumentative, as that is an opinion from Plaintiffs and is not a fact.

125.   After narrowing the requests in response to State Defendants'

refusal to answer the interrogatories, State Defendants sent an unverified Word document from Vincent Russo denying that Georgia's election system had been hacked. Opp. Ex. 124; Opp. Ex. 123 at Aug. 23, 2021 Response to Rog 15 & Oct. 21, 2021 Response to Revised Rog 15; Opp. Ex. 125.

**RESPONSE:** Objection. None of the cited evidence complies with LR 56.1(B) because it is not provided with page or paragraph number. State Defendants further object that the stated fact does not comply with LR 56.1(B) because it is stated as argument rather than as a statement of fact. The statement that the interrogatories were narrowed and that State Defendants refused to answer them are legal arguments and are not statements of fact. Finally, the evidence cited does not support the stated fact. There is no mention of an unverified Word document in the evidence cited. This is a mischaracterization of the evidence and is also argumentative, and thus violates LR 56.1(B).

126.    Despite repeated requests for State Defendants to remedy the incomplete and evasive October 21, 2021 interrogatory responses and for a signed verification of those written responses, State Defendants refused to provide either, verifying only *other* interrogatory responses. Opp. Ex. 123 (verifying State Defendants October 1, 2021 responses, not the October 21,

2021 responses). Notably, State Defendants provided their evasive October

21, 2021 responses to Curling Plaintiffs' interrogatories asking about "each

successful or *attempted* instance of unauthorized access to or copying or

alteration of" any data on any component of Georgia's BMD voting system

just a few months after investigating a potential unauthorized access in

Coffee County (in response to the Cyber Ninjas card James Barnes shared

with the SOS Office in May 2021) and replacing the Coffee County EMS

server and ICC due to a possible compromise, as James Barnes testified. *See*

Opp. Ex. 123 at Oct. 21, 2021 Response to Revised Rog 15; Opp. Ex. 67 at

159:25-162:12; Opp. Ex. 127.

**RESPONSE:** Objection. The stated fact does comply with LR 56.1(B)

as more than one statement is made and it is not separately numbered. State

Defendants further object that the statements are argumentative and are not

facts, thus not in compliance with LR 56.1(B). Plaintiffs' opinion on whether

State Defendants adequately answered interrogatories is not a statement of

fact, but a legal argument.

127.   The State has not produced any evidence that any cybersecurity

assessment of Georgia's voting equipment, including its BMDs, printers,

ICCs, ICPs, and EMS servers, has been done. Opp. Ex. 69 at 106:25-108:2;

Opp. Ex. 31 at 42:7-18; Opp. Ex. 105 at 227:2-25; Opp. Ex. 70 at 163:3-165:3;

Opp. Ex. 54 ¶ 12.

**RESPONSE:** Objection. The cited evidence does not support the stated

fact. Mr. Hamilton's testimony did not say that no evidence existed, he only

stated that he was "not aware" that a cybersecurity had been assessment

done. Mr. Beaver's testimony likewise is mischaracterized, as he is asked if

he knows of any "forensic analysis" has been done of the BMDs. Mr. Beaver

stated he was "not aware of that." Mr. Barnes was asked if any "forensic

examination" had been conducted of the Dominion equipment. Mr. Barnes

stated he was "not aware of one." Dr. Halderman stating that "there is no

indication that Georgia has ever forensically or otherwise rigorously

examined the current election system" is not a fact that one has not occurred.

Plaintiffs claim that "the state has not produced any evidence" is not

supported by citing to any evidence that does not make that exact statement.

The evidence cited by Plaintiffs is not a totality of evidence produced by State

Defendants, does not prove that State Defendants have not produced such

evidence, nor does it preclude the existence of evidence not cited.

128.   Michael Barnes could not identify any cybersecurity election

expert that has endorsed the current Georgia voting system as reliable, and

does not know why the SOS has not arranged for one to examine the election system. Opp. Ex. 105 at 296:5-297:11.

**RESPONSE:** Objection. The fact is immaterial to any of the claims or defenses in this case because the fact of Mr. Barnes's knowledge of the Secretary of State's decisions, or the necessity of a cyber security expert endorsing the Georgia voting system is not relevant to the claims in this case.

129.   James Oliver stated that if he had been at the SOS Office when it was made aware of the vulnerabilities with BMD machines, he would have recommended steps be taken to remedy the vulnerabilities. Opp. Ex. 30 at 140:22- 141:2, 142:25-143:24, 146:3-10.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Mr. Oliver's testimony is mischaracterized, as he explains that he would recommend an investigation and any solutions if there were any. However, he states that "as the security manager … your job is to recommend; it's up to the owners of the date to take any kind of mitigation action."

130.   Mr. Oliver also stated that it did not surprise him that the SOS Office did not take any measure to mitigate the vulnerabilities based on his experience in his role there. Opp. Ex. 30 at 140:22-141:2, 142:25-143:24, 146:3-146:10.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. Plaintiffs mischaracterize Mr. Oliver's testimony. Mr. Oliver explains that "your job is to recommend; it's up to the owners of the data to take any kind of mitigation action." Further, he goes on to say that "not all recommendations were accepted." Thus, the substance of the recommendation is not what he was answering for whether he was surprised if any measures were taken. He was explaining that a hypothetical recommendation not being accepted was common practice, as not all recommendations were accepted, and that aspect did not surprise him. State Defendants further object that various objections were made throughout the deposition in the cited evidence portion, but were not addressed in the stated fact.

131.   SEB Member Mashburn and former SEB Member Le would not support the use of an election system that could be hacked in a few minutes by a voter in the voting booth. Opp. Ex. 128 at 23:16-25:7; Opp. Ex. 129 at 22:4-23:2.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B) because it is not separately numbered, as it is multiple statements combined into one.  The statement also does not comply with LR 56.1(B)

because it is argumentative.  The evidence cited does not support the fact.

Matthew Mashburn is not a "[f]ormer SEB Member[]."  The cited transcript

shows Plaintiffs' counsel repeatedly asking Mr. Mashburn this fact statement

in the form of a question, and Mr. Mashburn never accepted Plaintiffs'

counsel's hypothetical.  At most, Mr. Mashburn stated, "You would want to

avoid a system that could be hacked by a random person in the wild."  With

respect to Anh Le, the cited transcript shows Plaintiffs' counsel repeatedly

asking her this fact statement in the form of a question.  Counsel for State

Defendants objects each time, and Ms. Le never accepted Plaintiffs' counsel's

hypothetical.  At most, Ms. Le stated that she would not support a system for

which she was presented with "provable evidence . . . that a certain system is

not secure": "So the hypothetical is based on the fact that there are provable

evidence in front of me that a certain system is not secure.  If that's the case,

no.  If there's provable evidence in front of me that points to -- that

establishes that clearly, then as a hypothetical I would not support

something like that."  In addition, the evidence is immaterial to the claims

and defenses in this case.  Whether a former or current member of Georgia's

State Election Board generally supports the use of one particular election

system or another has no bearing on whether Plaintiffs have been legally

injured or are entitled to relief from State Defendants and, at most, refers to an unquantified potential, unexploited vulnerability of a hypothetical "voting system," which does not support relief sought in this case.

132.   SEB Member Mashburn and former SEB Member Le would not support the use of a system that could be hacked in a way that altered the QR code but not the human readable text of the ballot. Opp. Ex. 128 at 35:10-19; Opp. Ex. 129 at 27:10-29:10.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B) because it is not separately numbered, as it is multiple statements combined into one.  The statement also does not comply with LR 56.1(B) because it is argumentative.  The evidence cited does not support the fact. Matthew Mashburn is not a "[f]ormer SEB Member[]."  The cited transcript shows Plaintiffs' counsel repeatedly asking Mr. Mashburn a hypothetical question that differs from the one in the statement: "Would you support the use of an election equipment [*sic*] that could be hacked in such a way that *both* the QR codes and the human readable text could be altered?"  (Emphasis added.)  The cited transcript does not contain testimony from Mr. Mashburn addressing the hypothetical posed in the statement.  With respect to Anh Le, as with Mr. Mashburn, the cited transcript shows that the hypothetical

98

Plaintiffs' counsel posed to Ms. Le was one in which the imaginary "election equipment . . . could be hacked in such a way that *both* the QR codes and human readable text could be altered." (Emphasis added.) The cited transcript does not contain testimony from Ms. Le addressing the hypothetical posed in the statement. To the extent Plaintiffs intended to refer to the entirety of these transcripts instead of the individual pages and lines cited, or a specific page or line other than the ones identified, State Defendants object that that does not comply with LR 56.1(B), which requires citation to evidence be by page or paragraph number. In addition, the evidence is immaterial to the claims and defenses in this case. Whether a former or current member of Georgia's State Election Board generally supports the use of one particular election system or another has no bearing on whether Plaintiffs have been legally injured or are entitled to relief from State Defendants and, at most, refers to an unquantified potential, unexploited vulnerability of a hypothetical "voting system," which does not support relief sought in this case.

133. There is no evidence that anyone with technical expertise has presented to the SEB about how Georgia's BMD voting system works. Opp. Ex. 128 at 103:21-104:4; Opp. Ex. 130 at 45:14-46:12, 55:9-56:1.

**RESPONSE:** Objection.  The evidence cited does not support the fact.
Nothing in the cited transcript supports Plaintiffs' statement that "[t]here is
no evidence that anyone with technical expertise has presented to the SEB
about how Georgia's BMD voting system works," which statement also does
not comply with LR 56.1(B) both because it is argumentative and because it
is a legal conclusion.  Plaintiffs' citation to the testimony of two former SEB
members does not support their broad, argumentative statement.  Plaintiffs'
counsel's question to Anh Le asked whether a person with technical expertise
ever addressed her and other, unspecified SEB members "about how some of
these technological components of Georgia's current election system works,"
rather than about how the system generally works, as described in the
statement.  (Plaintiffs also failed to cite to the entirety of Ms. Le's answer to
that question.)  With respect to Rebecca Sullivan, the cited testimony neither
addresses nor supports Plaintiffs' statement; instead, she answers
(partially—Plaintiffs cut off one of her answers, as they did with their
citation to the transcript of Ms. Le's testimony cited in support of this
statement) questions about the SEB's rulemaking process and whether she
ever sought outside assistance with her work as an SEB member.  To the
extent Plaintiffs intended to refer to the entirety of these transcripts instead

of the individual pages and lines cited, or a specific page or line other than the ones identified, State Defendants object that that does not comply with LR 56.1(B), which requires citation to evidence be by page or paragraph number.  In addition, the evidence is immaterial to the claims and defenses in this case.  The testimony of former members of Georgia's State Election Board about outside experts has no bearing on whether Plaintiffs have been legally injured or are entitled to relief from State Defendants.

F.   **The July 2021 Halderman Report Identified Numerous Serious Vulnerabilities with Georgia's Current BMD System.**

134.   Dr. Halderman is a renowned Professor of Computer Science and Engineering at the University of Michigan. This Court has accepted him as an election security expert. Opp. Ex. 2 at 23 n.19; Opp. Ex. 91 at 24 n.28.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B) because it is not separately numbered, as it is multiple statements combined into one.  The first sentence also does not comply with LR 56.1(B) because it does not cite to evidence.  In relying solely on a 2019 Court order and a 2020 Court order, the statement does not comply with LR 56.1(B) because it does not cite to evidence.  The orders cited also do not support the fact.  The orders do not provide that the Court has accepted Dr. Halderman

as an expert in election security.  In addition, the evidence is immaterial to

the claims and defenses in this case.  Dr. Halderman's public reputation and

professional affiliation and whether the Court currently has "accepted" or

admitted Dr. Halderman as an expert in election security are not facts that

bear on whether Plaintiffs have been legally injured or are entitled to relief

from State Defendants.

135.   Per a Court order, on September 4, 2020, Fulton County provided

Dr. Halderman a BMD and an ImageCast precinct programmed with

Dominion software. Opp. Ex. 91 at 24.

**RESPONSE:** Objection.  In relying solely on a 2020 Court order, the

statement does not comply with LR 56.1(B) because it does not cite to

evidence.  The cited order also does not support the fact.  The page cited does

not mention Fulton County. The fact statement also may be missing a word

(". . .  an ImageCast precinct programmed [*sic*] with Dominion software"). In

addition, the evidence is immaterial to the claims and defenses in this case.

The timeline of individual events in the litigation-discovery process in this

case are not facts that bear on whether Plaintiffs have been legally injured or

are entitled to relief from State Defendants.

136.   Dr. Halderman conducted extensive testing on the Fulton County

102

BMD and related equipment and software over the course of 11 work sessions, including included examining the machines, testing for vulnerabilities, and developing proof of concept attacks. Dkt. 1131 at 4, 19.

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact. The evidence is stated as an argument where Plaintiffs use the words "extensive."

137.   Dr. Halderman discovered many serious vulnerabilities in the Georgia BMD provided by Fulton County that facilitate the introduction of malicious software, including malware that changes BMD QR codes and defeats Georgia's purported security tests of the equipment—namely, acceptance testing, logic and accuracy testing, and hash verification safeguards. Opp. Ex. 131 ¶¶ 6-9; Opp. Ex. 4 ¶¶ 48-49; *see also* Opp. Ex. 36 at 55:5-22 (Vincent Liu Testimony).

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B) because it is stated as an argument rather than a statement of fact. The evidence is stated as an argument where Plaintiffs use the words "many," "serious," "defeats," and "purported."

138.   On July 1, 2021, Dr. Halderman produced a 26,000-word analysis

103

of Georgia's BMD voting system, detailing numerous, serious cybersecurity

vulnerabilities and the steps that a malicious actor could take to exploit these

vulnerabilities to alter individual votes and election outcomes without

detection, including by introducing malware into the system through

temporary physical access or remotely via the EMS server. Dkt. 1131,

Halderman Report at 4-5.

**RESPONSE:** Objection. The word count of Dr. Halderman's report is

immaterial to the claims and defenses in this case. State Defendants admit

that the Court may consider that Dr. Halderman produced a Report for

purposes of the summary judgment motion.

139.   After receiving the July 2021 Halderman report, State

Defendants repeatedly insisted through at least late 2021 that the Court seal

the report and treat it as Attorneys Eyes Only, thus confirming the highly

sensitive nature of Dr. Halderman's findings and their serious implications

for the insecurity and unreliability of Georgia's current BMD voting system.

*See* Opp. Ex. 132. Dr. Halderman's report demonstrates that the

vulnerabilities in Georgia's BMD voting system provide multiple routes by

which attackers can install malicious software on Georgia's BMDs, either

with temporary physical access or remotely from election management

systems (EMSs). Dkt. 1131, Halderman Report at 5.

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B) because it is stated as an argument rather than a statement of fact.

Opp. Ex. 132 is the State Defendants' Motion for Leave to File Exhibit A to Joint Discovery Statement Under Seal. This exhibit does not state that State Defendants are confirming the alleged "unreliability of Georgia's current BMD voting system." Further, this is a pleading and is not evidence as is required by LR 56.1(B).

Further, the evidence is stated as an argument and does not comply with LR 56.1(B), as Plaintiffs state "thus confirming the highly sensitive nature of Dr. Halderman's findings and their serious implications for the insecurity and unreliability of Georgia's current BMD voting system" because, as the motion states, State Defendants requested the report to be filed under seal due to the report's "confidential nature."

140. Dr. Halderman showed that—even without access to the BMD— an attacker can alter the QR codes a BMD prints on ballots to modify voters' selections. Dkt. 1131, Halderman Report at 20; Opp. Ex. 121 at 22:10-29:4; Opp. Ex. 133 (stillshots of Dr. Halderman's BMD printer prototype attack

video); Opp. Ex. 134 (Side-by-side of Ballots from system hack); Opp. Ex. 135 (Scanner Results of Photocopied Ballots).

**RESPONSE:** Objection. The fact is immaterial to any of the claims or defenses in this case because Dr. Halderman's demonstration does not represent real world risks, it does not prove that there is any certainly impending threat to *Curling Plaintiffs'* votes, and it does not represent a systemic vulnerability.

141.   Dr. Halderman's demonstration confirms the warnings Dr. Wenke Lee shared with the SOS and the S.A.F.E. Commission in 2018 and 2019. Opp. Ex. 92 at 4-5 ("Researchers already have demonstrated attack methods that can change votes recorded by a DRE or BMD. It requires no imagination to know that real attackers will try similar attacks on our election and voting systems.").

**RESPONSE:** Objection. The evidence does not comply with LR 56.1(B) because it is stated as an argument rather than a statement of fact. The evidence is stated as an argument where Plaintiffs state that "the warnings" from Dr. Wenke Lee are "confirm[ed]" because there are several concerns included in Dr. Lee's memo and Plaintiffs do not state which aspects they believe are confirmed. Further, State Defendants object that the fact is

immaterial to any of the claims or defenses in this case because Dr.

Halderman's demonstration does not represent real world risks, it does not

prove that there is any certainly impending threat to *Curling Plaintiffs'*

votes, and it does not represent a systemic vulnerability.

142. Since September 2020, Dr. Halderman has continued his analysis

of the BMD equipment and software and discovered additional serious

vulnerabilities in the BMDs that facilitate the introduction of malicious

software, including malware that changes BMD QR codes and defeats

Georgia's acceptance testing, logic and accuracy testing, and hash verification

safeguards. Opp. Ex. 131 ¶¶ 6-9.

**RESPONSE:** Objection. The evidence does not comply with LR 56.1(B)

because it is stated as an argument rather than a statement of fact. The

evidence is stated as an argument where Plaintiffs use the word "serious,"

"vulnerabilities," and "facilitate." Further, State Defendants object that the

fact is immaterial to any of the claims or defenses in this case because Dr.

Halderman's discoveries do not represent real world risks, they do not prove

that there is any certainly impending threat to *Curling Plaintiffs'* votes, and

they do not represent a systemic vulnerability.

143. Contrary to the initial claims of State Defendants' purported

agent, Dominion, that its QR codes are encrypted (Opp. Ex. 136 at -612), Dr. Halderman showed that "no part of the QR codes is encrypted" and instead QR codes "can be decoded by attackers and can be replaced or manipulated to steal voters' votes." Dkt. 1131, Halderman Report at 20; Opp. Ex. 36 at 55-56; Opp. Ex. 4 ¶¶ 37-40.

**RESPONSE:** Objection. State Defendants object that the fact is immaterial to any of the claims or defenses in this case because Dr. Halderman's demonstration does not represent real world risks, it does not prove that there is any certainly impending threat to *Curling Plaintiffs'* votes, and it does not represent a systemic vulnerability. State Defendants further object that the stated fact is two facts instead of one as required by LR 56.1(B).

144.   Dominion's QR codes do not contain a unique identifier, thus, "there is no mechanism for detecting *duplicate* QR codes." Dkt. 1131, Halderman Report at 23-24 (emphasis in original); Opp. Ex. 36 at 319:22-320:6; Opp. Ex. 4 ¶ 46.

**RESPONSE:** Objection. State Defendants object that the fact is immaterial to any of the claims or defenses in this case because the showing of duplicate QR codes does not prove that there is any certainly impending

threat to *Curling Plaintiffs'* votes, and does not represent a systemic vulnerability. There is no proof provided that a duplicate QR code has been discovered.

145.   The ICP scanners used in Georgia will tabulate ballots generated by a Georgia BMD and copied using a standard office photocopier or printer. Dkt. 1131, Halderman Report at 23; Opp. Ex. 36 at 82:15-21.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. The testimony in Opp. Ex. 36 states that precinct scanners will "potentially" accept a photocopy of a valid ballot. However, that is not a fact that it will. This is a mischaracterization of the evidence. The evidence is further mischaracterized because all of the relevant testimony is not included in the cited portion. The testifier goes on to say that he "can't agree with the statement at all" that "it would be possible for any commercial printer to provide acceptable ballots for Georgia to use." Opp. Ex. 36:22-25.

146.   A genuine BMD ballot generated by Georgia's BMD system may be copied and tabulated to stuff the ballot box. Dkt. 1131, Halderman Report at 23; Opp. Ex. 121 at 28:23-29:2.

**RESPONSE:** Objection. State Defendants object that the fact is immaterial to any of the claims or defenses in this case because Dr.

Halderman explaining that a ballot can be copied does not prove that there is any certainly impending threat to *Curling Plaintiffs'* votes, and does not represent a systemic vulnerability.

147.   Dr. Halderman's July 2021 report identifies at least seven critical failings in Georgia's current BMD system. Dkt. 1131, Halderman Report at 4-5.

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B) because it is stated as an argument rather than a statement of fact. Dr. Halderman's opinions about the "critical failings" of Georgia's BMD system are not statements of fact. Further, State Defendants object that the stated fact is immaterial to the claims of this case.

148.   Dr. Halderman found that critical vulnerabilities in the ICX BMD used in Georgia—and the wide variety of lesser but still serious security issues identified —indicate that it was developed without sufficient attention to security during design, software engineering, and testing, resulting in a "brittle" system architecture that can be completely exploited by small mistakes. Dkt. 1131, Halderman Report at 7-8.

**RESPONSE:** Objection. The evidence does not comply with LR 56.1(B) because it is stated as an argument rather than a statement of fact and it is

immaterial to the claims and defenses in this case. The evidence is stated as an argument where Plaintiffs use the words "sufficient," "brittle," "completely exploited," and "small mistakes."

Further, Dr. Halderman's opinion on what is "sufficient" and his characterization of the system being "brittle" is immaterial to the claims and defenses in this case.

149. Some of the critical vulnerabilities Dr. Halderman identified in Georgia's ICX BMDs could be at least partially mitigated through changes to its software, but merely patching these specific problems is unlikely to make the ICX substantially more secure overall. Dkt. 1131, Halderman Report at 7.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims. The fact also does not comply with LR 56.1(B) because it is stated as argument rather than as a statement of fact.

150. A paper ballot generated from Georgia's ICX BMDs does not mitigate any security concerns with the equipment, because ICX malware can still change individual votes and election outcomes without detection. Dkt. 1131, Halderman Report at 7; Opp. Ex. 121 at 38:24-39:4.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "security concerns" are insufficient to sustain Plaintiffs' claims. The fact also does not comply with LR 56.1(B) because it is stated as argument rather than as a statement of fact.

151.   The ICX BMDs used in Georgia have even more security risks than the predecessor DREs which this Court found were unconstitutionally insecure, because malware is easier to create for the ICX BMD system than for the DRE system. Dkt. 1131, Halderman Report at 34; Opp. Ex. 55 at 54:1-21; Opp. Ex. 131 ¶ 11; *see generally* Opp. Ex. 29.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims. The fact also does not comply with LR 56.1(B) because it is stated as argument rather than as a statement of fact. The fact is also unsupported by the evidence in that the Court did not conclusively find that the DREs were "unconstitutionally insecure"; it merely issued a ruling in a preliminary-injunction hearing.

152.   Dr. Juan Gilbert, Defendants' own election expert, did not disagree with the many technical failings Dr. Halderman reported and even identified him as one of two election security experts he would rely on to

assess the cybersecurity of voting equipment. Opp. Ex. 71 at 144:7-17, 216-45.

**RESPONSE:** Objection. The fact is unsupported by the evidence cited. There is no page "216-45" in Opp. Ex. 71. And even assuming Plaintiffs meant to cite page 216, nothing on that page supports the statement that "Dr. Juan Gilbert … did not disagree with the many technical failings Dr. Halderman reported[.]" The fact is also immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims. The fact also does not comply with LR 56.1(B) because it contains more than one specific fact.

153.    Secretary Raffensperger repeatedly dismissed Dr. Halderman's findings with the unsupported claim that his access to Georgia's voting equipment could not be replicated by a real-world bad actor—a claim vitiated at least by the 2021 Coffee County breach. Opp. Ex. 137; *see*, *infra*, Section K.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B) because it is stated as argument rather than as a statement of fact in that it claims that Secretary Raffensperger's statement was "unsupported," and that it argues Secretary Raffensperger's statement was "vitiated at least by the 2021 Coffee County breach." The fact also does not comply with LR 56.1(B)(1)

because it does not cite to relevant evidence by page or paragraph number. The fact also does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is also immaterial to the claims and defenses in this case because the Coffee County incident does not satisfy Plaintiffs' burdens of proving their claims.

154.   Secretary Raffensperger misleadingly criticized Dr. Halderman's analyses on the basis that he received certain information to access the Dominion voting equipment, despite the fact Dr. Halderman's report itself rebuts this claim, and the SOS's Chief Information Officer and Rule 30(b)(6) deponent admitted that it is standard practice to receive such information for cybersecurity assessments. Opp. Ex. 137 at 13-14; Dkt. 1131, Halderman Report at 33, 39, 44-45; Opp. Ex. 138 at 271:2-273:17, 396:13-397:11; Opp. Ex. 32; Opp. Ex. 33.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it claims Secretary Raffensperger's statement was "misleading." The fact is also unsupported by the evidence cited in that Dr. Halderman's report does not rebut the fact that Dr. Halderman "received certain information to access the Dominion voting equipment"—in fact, it supports that factual statement.

Dkt. 1131, Halderman Report at 18 ("I received access to Georgia election system components that were provided to Plaintiffs by Fulton County … I received a Poll Worker Card and Technician Card … for the BMD, together with the PINs for both cards. I was also provided a Centon USB drive containing an ICX election definition file for a mock election used for testing and training."); Opp. Ex. 138 at 272:12–13 ("We gave them username and password to a computer that was on our network. … Because they could not get into our system."). The fact also does not comply with LR 56.1(B)(1) because it does not cite to relevant evidence by page or paragraph number. Moreover, Opp. Exs. 23–33 and Opp. Ex. 138 at 396:13–391:11 do not support or relate to anything in this fact paragraph. The fact also does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

155. Gabriel Sterling was aware in or around the fall of 2020 that Dr. Halderman was able to hack the QR code on a Georgia BMD as demonstrated for the Court at that time. Opp. Ex. 48 at 68:17-72:7.

**RESPONSE:** Objection. The fact is unsupported by the evidence cited. Mr. Sterling testified that he was aware Dr. Halderman *claimed* to have, in Plaintiffs' words, "hack[ed] the QR code on a Georgia BMD[.]" *See* Opp. Ex. 48 at 69:8–70:7. The fact is also immaterial to any of the claims or defenses in

this case because the extensive access provided to Dr. Halderman does not represent real world risks, it does not prove that there is any certainly impending threat to *Curling Plaintiffs'* votes, and it does not represent a systemic vulnerability.

156.   It is possible to design fraudulent software that could self-propagate to multiple BMDs used throughout Georgia and that would be adaptable to multiple ballot styles. Opp. Ex. 56 at 85:3-16; 85:22-86:12, 86:13-87:11, 99:3-100:8, 101:3-6.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims. Importantly, Mr. Appel, the witness cited in this paragraph, testified multiple times that he is not aware of any "fraudulent software that could self-propagate to multiple BMDs used throughout Georgia and that would be adaptable to multiple ballot styles." Opp. Ex. 56 at 85:17–21; 100:3–11.

157.   On January 27, 2022, Secretary Raffensperger publicly asked Dr. Halderman to request that this Court release his report, a request Dr. Halderman and Plaintiffs already had made multiple times and which State Defendants had opposed each time. *See* Opp. Ex. 139.

116

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Whether Secretary Raffensperger, Plaintiffs, or State Defendants did or did not ask that the Court release the Halderman Report is wholly irrelevant to Plaintiffs' claims. The fact also does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is also unsupported by the evidence cited in that the cited press release only supports the idea that Secretary Raffensperger called for the release of the Halderman Report, but it does not say anything about Plaintiffs' or State Defendants' positions, past or present, on the issue.

158.   A voting system that uses a barcode on a paper ballot as the exclusive means of interpreting the voter's choices increases the likelihood that attackers will be able to compromise election results, because the use of barcodes makes it possible for attackers to commit difficult-to-detect fraud by hacking either the scanners or the BMDs. Opp. Ex. 57 ¶ 5.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims.

159.   Producing an entirely human-readable ballot that uses the human-readable text for tabulation rather than a barcode that is not human-

readable, if deployed in Georgia, would somewhat mitigate—though not eliminate—the risk of hacking Georgia's BMDs because voters then could at least verify the portion of their ballots that would be tabulated, though unfortunately few voters actually do that in practice. Opp. Ex. 57 ¶ 11.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is also unsupported by the evidence cited in that Dr. Halderman says nothing about the frequency at which voters review their ballots.

160.   The kinds of attacks that Dr. Halderman demonstrated on the Dominion BMDs—attacks that replace the software running in the ICX and make arbitrary changes to the ballots that it prints—are the most serious kind of attack that you could have on voting equipment. Opp. Ex. 55 at 46:25-47:8, 182:2-11.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

161.   For a voting system with HMPBs tabulated with optical scanners paired with rigorous audits, the primary method of attack would be retail-level tampering with single pieces of paper at a time, which is *much more* difficult to do at a wide scale than the kinds of electronic fraud that can be used to attack Georgia's BMD voting system. Opp. Ex. 55 at 28:18-29:5.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the relative "vulnerability" of different manners of voting are irrelevant and insufficient to sustain Plaintiffs' claims.

162.   Dr. Halderman's findings regarding the security vulnerabilities of the BMD system used in Georgia may reasonably leave Georgia voters with diminished confidence that the votes they cast on ICX BMDs will be counted correctly, or that any future elections conducted using Georgia's BMD system will be reasonably secure from attack. Dkt. 1131, Halderman Report at 8; *see also* Opp. Ex. 55 at 76:4-15, 259:20-260:24; Opp. Ex. 264 at 37:7-17, 43:21-44:11.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because mere "vulnerabilities" are insufficient to sustain Plaintiffs' claims and the relative "confidence" in the election system is irrelevant to Plaintiffs' claims. The fact does not comply with LR 56.1(B)(1)

because it contains more than one specific fact. The fact is also unsupported by the evidence cited in that Dr. Halderman says nothing about the frequency at which voters review their ballots. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

163.   Neither the SOS Office's Chief Information Officer (Merritt Beaver), Chief Operations Officer (Gabriel Sterling), Director of the Center for Election Systems (Michael Barnes), Security Manager (James Oliver), nor Chief Information Security Officer (David Hamilton) had read Dr. Halderman's July 2021 report at the time of their depositions and thus were unable to address his many serious findings, despite their responsibility related to Georgia's elections or the SOS Office's IT systems. Opp. Ex. 69 at 183:4-184:12, 189:5-193:22, 201:12-21; Opp. Ex. 48 at 21:15-24:12; 26:15-28:24; Opp. Ex. 85 at 74:15-78:6; Opp. Ex. 30 at 140:22-141:2, 142:25-143:24, 146:3-10; Opp. Ex. 105 at 96:15-97:19; Opp. Ex. 128 at 53:15-54:14; 57:9-18.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether any official had read Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains

more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it purports to establish some legal responsibility for the referenced individuals to respond to Dr. Halderman's report.

164. All but one current and former SEB member who were asked had not read Dr. Halderman's July 2021 report at the time of their depositions and thus were unable to address his many serious findings, despite their responsibility related to Georgia's elections. Opp. Ex. 140 at 14:18-15:9; Opp. Ex. 129 at 51:16-57:17; Opp. Ex. 141 at 53:1-21, 55:19-23; Opp. Ex. 130 at 50:11-24, 52:13; Opp. Ex. 63 at 72:12-16; 72:21-25, 94:12-20, 97:20-98:12; Opp. Ex. 142 at 9:20-10:7.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether any official had read Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it purports to establish some legal responsibility for the referenced individuals to respond to Dr. Halderman's report.

165.   The single SEB member who had read Dr. Halderman's July 2021 report admitted that it raised questions regarding the vulnerabilities in the BMD systems—for which that SEB member had no answers or solutions, despite his responsibility related to Georgia's elections. Opp. Ex. 142 at 11:12-19.

**RESPONSE:** Objection. The fact is unsupported by the evidence cited in that the deposition transcript only says that the Halderman report "raised questions" for Mr. Lindsey; nothing in the cited deposition transcript supports the statement that he "had no answers or solutions." The fact is immaterial to the claims and defenses in this case because whether any official had read Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it purports to establish some legal responsibility for Mr. Lindsey to respond to Dr. Halderman's report.

166.   Michael Barnes did not know why the SOS Office decided not to share Dr. Halderman's findings regarding security failings with Georgia's BMD system with him and others, despite their responsibility related to

Georgia's elections. Opp. Ex. 105 at 96:15-97:19.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether any official had read Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it purports to establish some legal responsibility for Mr. Barnes to respond to Dr. Halderman's report.

167. As the CISO, David Hamilton would expect to have been made aware of Dr. Halderman's testimony that he was able to hack Georgia's BMD equipment in *only three* days and that is something Mr. Hamilton would have liked to have known about—but he did not know. Opp. Ex. 69 at 183:4-184:12, 189:5-193:22, 201:12-21.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether any official had read Dr. Halderman's report or whether any official was told about Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than

one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it purports to establish some legal responsibility for Mr. Hamilton to respond to Dr. Halderman's report and in that it italicizes "only three days." It is also worth noting that one portion of the cited testimony—201:12–21—establishes that this issue was outside of his scope of work.

168.   Defendants have offered no evidence that they have taken steps to remediate the many serious vulnerabilities identified by Dr. Halderman with Georgia's BMD system, despite their unsupported public claims that "Georgia's election system is safe and secure." Opp. Ex. 69 at 193:24-198:17; Opp. Ex. 105 at 98:5-100:24; Opp. Ex. 85 at 74:15-78:6; Opp. Ex. 48 at 68:17-72:7; Opp. Ex. 63 at 72:12-16; 72:21-25, 94:12-20, 97:20-98:12, 100:21-25, 101:1-6; Opp. Ex. 138 at 373:3-376:22; Opp. Ex. 139 ("Sensationalized media articles and misleading reports from paid activists notwithstanding, Georgia's election system is safe and secure.").

**RESPONSE:** Objection. The fact is unsupported by the evidence cited in that none of the cited witnesses stated categorically that the State has not made any changes to the BMD system; they merely state that they are unaware of any. The fact is immaterial to the claims and defenses in this case

because whether the State has "remediated" any issues identified in Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. It also inappropriately attempts to shift the burden of proof to State Defendants. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it purports to establish some legal responsibility for the State to respond to Dr. Halderman's report and in that it argues that State Defendants' claims that Georgia's election system is safe and secure are "unsupported."

169.   When asked who within the SOS Office would have responsibility for ensuring that security vulnerabilities with Georgia's voting equipment were remediated, Mr. Hamilton testified probably the CISO, which was his role at SOS Office—and yet he was not informed of the security vulnerabilities Dr. Halderman found with the equipment, including those demonstrated for the Court during the September 2020 preliminary injunction hearing. Opp. Ex. 69 at 193:24-198:17.

**RESPONSE:** Objection. The fact is unsupported by the evidence cited in that Mr. Hamilton expressly testified in the quoted language that the

BMD machines were "specifically excluded … from my responsibilities." Opp. Ex. 69 at 196:22–197:4. Mr. Hamilton also testified that he believed responsibility for managing the equipment lay with Dominion and the counties. *Id.* at 194:5–195:24. The fact is immaterial to the claims and defenses in this case because who Mr. Hamilton believed had "responsibility" for remediating "security vulnerabilities" and whether he had read or was aware of Dr. Halderman's report is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

### G. An Independent Government Cybersecurity Agency Verified Dr. Halderman's Findings and Recommended Mitigation Measures.

170.   On January 21, 2022, the Cybersecurity and Infrastructure Security Agency ("CISA") within the Department of Homeland Security agreed to conduct an analysis of Georgia's BMD system with the condition that its findings would likely need to be shared with "affected end users" of the Dominion BMD system subsequent to the application of appropriate mitigation measures. Opp. Ex. 143.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether CISA agreed to conduct an analysis and the conditions necessary for such an analysis is irrelevant to the success of State Defendants' motions for summary judgment. The fact also does not comply with LR 56.1(B)(1) because it does not cite to relevant evidence by page or paragraph number.

171.   On February 2, 2022, this Court authorized Dr. Halderman to share his July 2021 report with CISA. Opp. Ex. 144 at 2.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether the Court authorized the Halderman Report to be released to CISA is irrelevant to the success of State Defendants' motions for summary judgment. The fact is also unsupported by evidence because pleadings submitted by counsel do not constitute evidence.

172.   CISA notified the Court that it had commenced analyzing the Georgia BMD system using its standard Coordinated Vulnerability Disclosure ("CVD") process on February 10, 2022. Opp. Ex. 144 at 2.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact is also

127

unsupported by evidence because pleadings submitted by counsel do not constitute evidence.

173.   Between February and June 2022, CISA completed the CVD process, working closely with Dr. Halderman and Dominion Voting Systems and coordinating with relevant stakeholders. Opp. Ex. 145 at 1.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact is also unsupported by evidence because pleadings submitted by counsel do not constitute evidence.

174.   As a result of its CVD process CISA released a public advisory corroborating the July 2021 Halderman Report findings and detailing nine serious vulnerabilities in Georgia's BMD system. Opp. Ex. 146 §§ 2.2.1-5, 2.2.7, 2.2.9.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

175.   Among these nine serious vulnerabilities, CISA confirmed the QR code vulnerability described in Dr. Halderman's July 2021 report, noting that the "authentication mechanism" voters are required to use to vote on the BMD device "is susceptible to forgery," and that "[a]n attacker could leverage [the QR code] vulnerability to print an arbitrary number of ballots without authorization." Opp. Ex. 146 § 2.2.9. In the first release of its Advisory that went to secretaries of state across the U.S., CISA advised against the use of the QR code option with Dominion's BMD system. Opp. Ex. 146 § 3 ("[J]urisdictions should, where possible, configure the ImageCast X to produce traditional, full-face ballots, rather than summary ballots with QR codes.")

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. The fact is also unsupported by the

evidence cited in that there is nothing to support statement that the Advisory was "the first release" or that it "went to secretaries of state across the U.S."

176.   The CISA Advisory described several methods an attacker could use to introduce malicious code to the BMD system via removable media or remotely from the EMS server. Opp. Ex. 146 § 2.2.1, § 2.2.3, § 2.2.4, § 2.2.5, § 2.2.7.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact is also unsupported by the evidence cited in that the only two of the five cited sections in the Advisory mention "removable media or remotely from the EMS server."

177.   The CISA Advisory recommends 13 steps for Georgia to mitigate the risk that bad actors could exploit the vulnerabilities. Those steps include three physical security measures, seven cybersecurity measures, and three recommendations related to ballot verification, post-election testing and audits. Opp. Ex. 146 § 3.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" or recommended

mitigations are irrelevant to the success of State Defendants' motions for summary judgment. The fact is also unsupported by the evidence cited in that it recommends "election officials" take certain action; it did not make specific recommendations to the State of Georgia.

178.   Gabriel Sterling agreed that the vulnerabilities identified by CISA should be mitigated as CISA advised. Opp. Ex. 149 at 11:12-13:22, 349:16-21; Opp. Ex. 32; Opp. Ex. 33; *see also* Opp. Ex. 105 at 98:5-100:24.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" or recommended mitigations are irrelevant to the success of State Defendants' motions for summary judgment. Other than Opp. Ex. 149, the evidence cited is also irrelevant to the stated fact.

179.   Defendants have offered no evidence indicating that any of the 13 mitigation steps recommended by CISA have been implemented in Georgia. *See*, *e.g.*, Opp. Ex. 142 at 21:6-24:1; Opp. Ex. 150 at 176:25-177:22; Opp. Ex. 151 at 167:4-18; Opp. Ex. 138 at 373:3-376:22.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" or recommended mitigations are irrelevant to the success of State Defendants' motions for

summary judgment. It also inappropriately attempts to shift the burden of proof to State Defendants. The fact is unsupported by the evidence cited. Plaintiffs cite the deposition testimony of four witnesses: (1) Edward Lindsey, (2) Coffee County Board of Elections' 30(b)(6) witness, (3) Eric B. Chaney (of Coffee County's Board of Elections), and (4) Sanford Merritt Beaver. The two Coffee County depositions are irrelevant and unrelated to the stated fact. Messrs. Lindsey's and Beaver's testimony, meanwhile, did not state categorically that the State has not made any changes to the BMD system; they merely state that they are unaware of any.

## H.   **Defendants' Experts Never Examined Georgia's Voting Equipment and Admit Key Vulnerabilities.**

180.   State Defendants' expert, Dr. Michael Shamos, confirmed many serious failings with Georgia's DRE/GEMS system that rendered it unconstitutional and advised against barcode BMDs like those used in Georgia. Opp. Ex. 5 at 56:13-57:21.

**RESPONSE:** Objection. The fact is unsupported by the evidence cited in that Mr. Shamos does not discuss the DRE/GEMS system in the cited portion of his deposition transcript. The fact is immaterial to the claims and defenses in this case because any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. Moreover,

Plaintiffs' DRE claims are moot. The fact also does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it states that there were "serious" failings with the DRE/GEMS system and that it was "unconstitutional."

181.   Dr. Wenke Lee, whom then-Secretary and current-Governor Brian Kemp selected as the sole election cybersecurity expert on the Georgia's SAFE Commission, objected to the use of BMDs in Georgia. Opp. Ex. 152 at 4; Opp. Ex. 92 at 2-3.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is immaterial to the claims and defenses in this case because Dr. Lee's views on the use of BMDs are irrelevant to the success of State Defendants' motions for summary judgment.

182.   In a reference document created for the SAFE Commissioners, Dr. Lee stated that "[a] secure voting system should use hand-marked paper ballots instead of ballot marking devices. . . . This consensus approach among the cybersecurity research community ensures that votes by the voters are counted accurately." Opp. Ex. 152 at 4.

133

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is immaterial to the claims and defenses in this case because Dr. Lee's views on the use of BMDs are irrelevant to the success of State Defendants' motions for summary judgment.

183.   In an addendum to the reference document created for the SAFE Commissioners, Dr. Lee stated that "[a] voting system must provide either a human readable, post-vote paper receipt from a ballot-marking device or an actual paper ballot as the durable, independent evidence that can be used as the authoritative source document in an audit or recount." Opp. Ex. 92 at 2.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is immaterial to the claims and defenses in this case because Dr. Lee's views on the use of BMDs are irrelevant to the success of State Defendants' motions for summary judgment.

184.   Dr. Eric Coomer retained Dr. Halderman as his own election security expert regarding Dominion's BMDs. Opp. Ex. 55 at 10:1-6; Opp. Ex. 153.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Halderman's expert-witness activities outside of this litigation are irrelevant to the success of State Defendants' motions for summary judgment.

185.   Dr. Ben Adida, Defendants' audit expert, has not testified or submitted additional opinions in this matter since the 2020 preliminary injunction hearing. Opp. Ex. 36.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether or not Dr. Adida has submitted additional declarations is irrelevant to the success of State Defendants' motions for summary judgment.

186.   None of Defendants' experts have conducted cybersecurity examinations of Georgia's Dominion voting equipment. Opp. Ex. 71 at 13:12-17, 68:4-22; Opp. Ex. 5 at 84:24-86:8.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether State Defendants' experts have conducted "cybersecurity examinations of Georgia's Dominion voting equipment" is irrelevant to the success of State Defendants' motions for summary judgment. The fact is also unsupported by the evidence cited in

that Dr. Shamos does not discuss whether or not he has conducted any testing in the transcript portions cited. Finally, State Defendants object that the statement is not a fact, as Plaintiffs have not provided an exhaustive list of State Defendants' experts, only citing two.

187.   Dr. Gilbert was unaware that Fortalice found serious cybersecurity vulnerabilities with the SOS Office's IT systems and thus did not consider that information for his analyses or opinions in this case. Opp. Ex. 71 at 269:11-23.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Gilbert's awareness of Fortalice's conclusions is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

188.   Dr. Gilbert was not aware that Georgia's previous DRE/GEMS system had not actually been "air gapped" as State Defendants claimed (it had been connected to phone lines, via a modem, and used with removable media that also had it been used with internet-connected computers), and thus he did not consider that information for his analyses or opinions in this case. Opp. Ex. 71 at 267:10-21.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Gilbert's awareness of the previous DRE/GEMS system is irrelevant to the success of State Defendants' motions for summary judgment. Plaintiffs' DRE claims are also moot. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

189.   Dr. Gilbert was not aware that removable media used with Georgia's previous DRE/GEMS system may have been reused with the Georgia's new BMD system, and thus did not consider that information for his analyses or opinions in this case. Opp. Ex. 71 at 213:3-216:19.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Gilbert's awareness of the use of any removable media between the DRE and BMD systems is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

190.   Dr. Gilbert agreed that Dr. Halderman had identified numerous attacks that could be readily implemented against Georgia's BMD system, including manipulation of QR codes or human-readable text, and did not disagree with Dr. Halderman's findings regarding the manner and ease with which those attacks could be effected in Georgia. Opp. Ex. 71 at 74:19-22,

105-09, 186:4-208:9, 216:20-245:22.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Halderman's conclusions are irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact also does not comply with LR 56.1(B)(1) because it does not cite to relevant evidence by page or paragraph number. It instead cites to a long string of nearly 35 pages worth of deposition testimony. There is also no page "105-09" in Opp. Ex. 71.

191.   Dr. Gilbert did not dispute that, in contrast, altering hand marked paper ballots requires many hours to manually change ballots— and any alteration to a hand-marked paper ballot could occur only after *the ballot is tabulated by the scanner*. Opp. Ex. 71 at 134-35.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because whether or not hand-marked paper ballots take more time to manually change is irrelevant to the success of State Defendants' motions for summary judgment. The fact also does not comply with LR 56.1(B)(1) because it does not cite to relevant evidence by page or paragraph number. There is no page "134-35" in Opp. Ex. 71.

138

192.   Dr. Gilbert testified that he is not a cybersecurity expert and thus lacks the expertise to evaluate the cybersecurity of Georgia's voting system. Opp. Ex. 71 at 143-44.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Gilbert's expertise is irrelevant to the success of State Defendants' motions for summary judgment. The fact also does not comply with LR 56.1(B)(1) because it does not cite to relevant evidence by page or paragraph number. There is no page "143–44" in Opp. Ex. 71.

193.   Dr. Gilbert admitted that eliminating QR codes "would get rid of a lot of the issues" Dr. Halderman found with Georgia's BMD system, and "recommend[ed] not using [QR codes] to eliminate all these discussions and concerns around them." Opp. Ex. 71 at 89:7-13, 90:9-16.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Dr. Gilbert's personal views on the use of QR codes is irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact. The fact is unsupported by the evidence cited in that it does not specify what "the issues" are that Dr. Gilbert is referring to,

let alone Plaintiffs' conclusion that he was referring to any issues "Dr. Halderman found with Georgia's BMD system." Also, Dr. Gilbert testified that he believed QR codes could be used, but the testimony reflects his recommendation not to use them to avoid controversy, not because of any specific concern he had with them.

I.   **Defendants' Own Cybersecurity Consultant Identified Vulnerabilities.**

194.   The SOS Office retained a cybersecurity consulting company, Fortalice Technical Solutions, to identify weaknesses in the SOS Office's IT network and externally facing environment. Fortalice's role was to review the infrastructure and make recommendations as to what should be improved and identify weaknesses that needed to be strengthened. Opp. Ex. 154 at 5-6; Opp. Ex. 30 at 65:11-23.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the SOS Office's hiring of Fortalice Technical Solutions or the scope of its work are irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

195.   Theresa Payton, CEO and Chief Advisor for Fortalice Solutions, and certain of her colleagues at Fortalice, found serious security failings with

the SOS Office's IT networks and opined that it is only a matter of time until a U.S. election is hacked. Opp. Ex. 154 at 5-6; Opp. Ex. 37; Opp. Ex. 38; Opp. Ex. 155; Opp. Ex. 29 at 219:11-23, 225:1-226:4, 227:22-228:19.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Fortalice's findings and any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact in that it claims that the cited witnesses claims that there were "serious" security failings with the SOS Office's IT networks. The fact also does not comply with LR 56.1(B)(1) because it does not cite to relevant evidence by page or paragraph number. The fact is unsupported by the evidence cited. As the evidence cited actually shows, Fortalice stated that it "did not find any critical vulnerabilities" in the SOS network. Opp. Ex. 154 at 5–6.

196.   In Fortalice's assessment in October of 2017, Fortalice identified 22 security risks in the networks that they examined, characterizing most of those risks as significant. Opp. Ex. 29 at 29:16-30:2, 219:11-16.

**<u>RESPONSE:</u>** Objection. The fact is immaterial to the claims and defenses in this case because Fortalice's findings any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment.

197.   One of the significant risks that Fortalice identified in the 2017 risk assessment was widespread local administrative rights, which granted every Georgia SOS Office employee administrative rights on their workstations and every other work station in the SOS Office, and, thus, allowed every single user the ability to download software, affect the programming of that computer, and, ultimately, created a significant risk of malware infecting the election-related network. Opp. Ex. 29 at 32:15-33:23, 219:17-220:21.

**<u>RESPONSE:</u>** Objection. The fact is immaterial to the claims and defenses in this case because Fortalice's findings any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment. The fact does not comply with LR 56.1(B)(1) because it contains more than one specific fact.

198.   Another vulnerability that Fortalice identified in the October 2017 risk assessment was that the SOS Office IT network relied on legacy systems and software that were no longer supported or receiving security

patches even when new vulnerabilities were identified, which created a

significant risk that a hacker could easily exploit the unpatched devices. Opp.

Ex. 29 at 34:8-17.

**RESPONSE:** Objection. The fact is immaterial to the claims and

defenses in this case because Fortalice's findings any "vulnerabilities" in the

SOS IT network are irrelevant to the success of State Defendants' motions for

summary judgment.

199.   Fortalice was able to penetrate aspects of the SOS Office IT

network during the 2017 assessment, which allowed them to obtain domain

administrator rights on the network they penetrated, gain access to the

network security systems, and review the enterprise architecture and system

configurations. Opp. Ex. 29 at 44:13-45:24.

**RESPONSE:** Objection. The fact is immaterial to the claims and

defenses in this case because Fortalice's findings any "vulnerabilities" are

irrelevant to the success of State Defendants' motions for summary judgment.

200.   The Fortalice team assessed the SOS Office IT security as Tier 2

on the NIST scale in the October 2017 assessment, which meant that "they

had an awareness of cybersecurity risks at the organizational level but an

organization-wide approach to managing cybersecurity risks had not been

established." Opp. Ex. 29 at 218:21-219:10.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Fortalice's findings any "vulnerabilities" are irrelevant to the success of State Defendants' motions for summary judgment.

201.   The risk of nonunique local administrator passwords for the SOS Office IT network that were identified and recommended to be fixed in the October 2017 Fortalice assessment was still present in a November 2018 assessment by Fortalice. Opp. Ex. 29 at 223:11-25.

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it is a transcript of testimony describing the contents of a report and not the report itself, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The cited transcript does not support the fact.  Uncited portions of the transcript excerpted in Opp. Ex. 29 show that Fortalice found that the Secretary's office had done a good job of making improvements in securing access to administrative accounts in its office computers, including with respect to the use of nonunique local administrator passwords. (Dkt. 570, Tr. 260:13-263:4.)  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence

144

addresses security protocols for computers in the Secretary's office that are

not connected to voting equipment used in Georgia elections; at most, refers

to an unquantified potential, unexploited vulnerability, which does not

support relief sought in this case; and refers to reports of analyses conducted

prior to the replacement of the GEMS/DRE election system with the current

Dominion/BMD system.

202.   During the February 2018 assessment, Ms. Payton identified

several missing critical operating system patches, unsupported software, and

vulnerable third-party software with the SOS Office IT network. Opp. Ex. 29

at 227:6-9.

**RESPONSE:** Objection.  The evidence on which the statement relies is

inadmissible hearsay because it is a transcript of testimony describing the

contents of a report and not the report itself, and the Court cannot consider

hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193

F.3d 1316, 1322 (11th Cir. 1999).  In addition, the evidence is immaterial to

the claims and defenses in this case.  The cited evidence addresses security

protocols for computers in the Secretary's office that are not connected to

voting equipment used in Georgia elections; at most, refers to an

unquantified potential, unexploited vulnerability, which does not support

145

relief sought in this case; and refers to reports of analyses conducted prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

203.   Fortalice's February 2018 assessment of the SOS Office IT network also identified 15 security risks involving PCC, the company who owned and operated the voter registration database at that time, and recommended those risks for remediation. The risks included that PCC was relying on outdated software that was known to contain critical security vulnerabilities which could be exploited by an attacker with sufficient time and resources, and that PCC was not blocking VPN connections from IP addresses of known threat sources or foreign countries. Opp. Ex. 29 at 225:1-25, 226:19-227:5.

**RESPONSE:** Objection.  The first sentence does not comply with LR 56.1(B)(1) because it does not cite to evidence.  The second sentence does not comply with LR 56.1(B)(1) because it is not separately numbered.  The evidence on which the statements rely is inadmissible hearsay because it is a transcript of testimony describing the contents of a report and not the report itself, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The cited

146

transcript does not support the facts.  For example, the cited transcript

portions do not disclose the identify of PCC, or the nature, extent, or timing of

any relationship between PCC and any voter registration database.  The

cited transcript portions also do not tie "15 security risks" to PCC, nor does it

make clear that the specific items mentioned were among the "15 security

risks."  To the extent Plaintiffs intended to refer to the entirety of this

transcript instead of the individual lines cited, or a specific page or line other

than the ones identified, State Defendants object that that does not comply

with LR 56.1(B)(1), which requires citation to evidence be by page or

paragraph number.  In addition, the evidence is immaterial to the claims and

defenses in this case.  The cited evidence addresses security protocols for the

voter registration database, which is separate from the voting equipment

used in Georgia elections; at most, refers to an unquantified potential,

unexploited vulnerability, which does not support relief sought in this case;

and refers to reports of analyses conducted prior to the replacement of the

GEMS/DRE election system with the current Dominion/BMD system.

204.   The Fortalice team interviewed Chris Harvey during these

assessments, who indicated that the voter registration databases is what

Russian hackers would want to get into. Opp. Ex. 29 at 234:1-235:8.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  The evidence on which the statements rely is

inadmissible hearsay because it is a transcript of testimony about written

notes from an interview of a person not the declarant, and the Court cannot

consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v.*

*DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The cited transcript does not

support the facts.  For example, the cited transcript portion does not disclose

that anyone interviewed Chris Harvey during multiple "assessments."  To the

extent Plaintiffs intended to refer to the entirety of this transcript instead of

the individual pages and lines cited, or a specific page or line other than the

ones identified, State Defendants object that that does not comply with LR

56.1(B)(1), which requires citation to evidence be by page or paragraph

number.  In addition, the evidence is immaterial to the claims and defenses

in this case.  The cited evidence addresses the security of the voter

registration database, which is separate from the voting equipment used in

Georgia elections; at most, refers to speculation about what an unidentified

person might do with an unquantified potential, unexploited vulnerability,

which does not support relief sought in this case; and refers to notes from an

interview conducted prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

205.   Chris Harvey subsequently indicated to Fortalice that the PCC and the voter registration database was out of scope for the next Fortalice assessment in November 2018. Opp. Ex. 29 at 234:1-235:8.

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it is a transcript of testimony about written notes from an interview of a person not the declarant, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The cited transcript does not support the facts.  For example, the cited transcript portion does not indicate that Chris Harvey told Fortalice PCC was out of the scope of the November 2018 Fortalice assessment.  To the extent Plaintiffs intended to refer to the entirety of this transcript instead of the individual pages and lines cited, or a specific page or line other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses a security assessment of the voter registration database, which is

149

separate from the voting equipment used in Georgia elections; and refers to

notes from an interview conducted prior to the replacement of the

GEMS/DRE election system with the current Dominion/BMD system.

206.   Fortalice's November 2018 assessment resulted in 20 additional

recommendations to the SOS Office IT network to improve their

cybersecurity. Opp. Ex. 29 at 227:22-25.

**RESPONSE:** Objection.  The evidence on which the statements rely is

inadmissible hearsay because it is a transcript of testimony describing the

contents of a report and not the report itself, and the Court cannot consider

hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193

F.3d 1316, 1322 (11th Cir. 1999).  The cited transcript does not support the

fact.  The testimony does not indicate whether "20 additional

recommendations" were the "result[]" of the referenced report.  To the extent

Plaintiffs intended to refer to the entirety of this transcript instead of the

individual pages and lines cited, or a specific page or line other than the ones

identified, State Defendants object that that does not comply with LR

56.1(B)(1), which requires citation to evidence be by page or paragraph

number.  In addition, the evidence is immaterial to the claims and defenses

in this case.  The cited evidence addresses security protocols for computers in

the Secretary's office that are not connected to voting equipment used in Georgia elections and refers to reports of analyses conducted prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

207.   As of the November 2018 assessment of the SOS Office IT network, weeks after the midterm election, 19 out of the 22 vulnerabilities identified by Fortalice in 2017 had not been remediated, and the SOS Office earned a numerical score of only *53.98 out of 100* from Fortalice. Opp. Ex. 29 at 228:14-17, 230:1-231:14.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The evidence on which the statements rely is inadmissible hearsay because it is a transcript of testimony describing the contents of a report or reports and not the reports themselves, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The cited transcript portions do not support the fact.  The testimony does not identify when the alleged vulnerabilities were identified.  The statement also provides no context or meaning whatsoever for the referenced "numerical score."  To the extent

Plaintiffs intended to refer to the entirety of this transcript instead of the individual pages and lines cited, or a specific page or line other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  Uncited portions of the transcript not part of the excerpt Plaintiffs created and provided in Opp. Ex. 29 show that the score "isn't like this is a failing grade to get a 50.  So it is not like – it is not like you got 47 percent wrong kind of thing.  This is a maturity model," and the witness agreed that "GA SOS scored well in the maturity raking." (Dkt. 570, Tr. 268:9-271:13.)  In addition, the evidence is immaterial to the claims and defenses in this case. The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; at most, refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in this case; and refers to reports of analyses conducted prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

208.   The SOS Office's engagement for the three Fortalice assessments in 2017 and 2018 did not include examining GEMS servers, DREs, memory cards, and scanners; nor was Teresa Payton engaged to do that analysis for

her declaration. Opp. Ex. 29 at 216:5-217:18.

**RESPONSE:** Objection. The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one. In addition, the evidence is immaterial to the claims and defenses in this case. The cited evidence addresses security protocols for computers other than the voting equipment used in Georgia elections and refers to reports of analyses conducted prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

209. Fortalice's most recent Technical Assessment of the SOS Office IT network identified eight separate vulnerabilities, including four "High" risks, meaning that the vulnerability could be "utilized to gain unauthorized access to the noted system(s) or data or otherwise have a significant impact to the environment," and "should be remediated in a timely manner." Opp. Ex. 154 at 5.

**RESPONSE:** Objection. The evidence cited does not support the fact. The document does not indicate whether it is "Fortalice's most recent Technical Assessment of the SOS Office IT network." The page of the exhibit Plaintiffs cited does not identify how many risks or vulnerabilities were identified, nor does it identify the type of risks identified. To the extent

Plaintiffs intended to refer to the entirety of this document instead of the individual page cited, or a specific page other than the one identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; and, at most, it refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in this case.

210.   Neither Fortalice— nor anyone else— was asked to determine whether any of the vulnerabilities it identified with the SOS Office IT network or any other systems or equipment it examined at the SOS Office's direction had been exploited by any outside party. Opp. Ex. 138 at 282:22-284:1.

**RESPONSE:** Objection.  The evidence cited does not support the fact.  The testimony cited does not define the scope of "vulnerabilities" being discussed as having been identified or the exploitation of which investigated.  The cited testimony also indicates that no exploitation of any vulnerability ever had been identified.  (Opp. Ex. 138 at 283:24-284:1.)  To the extent

154

Plaintiffs intended to refer to the entirety of this document instead of the individual page cited, or a specific page other than the one identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  Other portions of the cited transcript not included in the excerpt Plaintiffs created for Opp. Ex. 138 contain testimony about the investigation of reports of claimed vulnerability exploitation, which were determined to be false.  (Dkt. 1370-3, Tr. 342:19-343:9.)  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; at most, it refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in this case.  It also is immaterial to the extent it refers to reports of analyses conducted prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

211.  The "High" level risks in the 2021 Fortalice Technical Assessment of the SOS Office IT network include directory traversal vulnerability ("When a web server does not properly restrict access to the intended web content, it is sometimes possible to force browse to unintended

directories on the local system of the server. This can grant an attacker read access to critical directories for unauthorized access of sensitive information."); insecure file shares; insecure password storage; and weak passwords. Opp. Ex. 154 at 6-15.

**RESPONSE:** Objection.  The evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; and, at most, it refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in this case.

212.    Regarding insecure password storage, the 2021 Fortalice Technical Assessment found that many SOS Office employees appeared to be using Excel spreadsheets and Word documents for password storage. Opp. Ex. 154 at 14.

**RESPONSE:** Objection.  The evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; and, at most, it refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in

this case.

213.   A Fortalice Report on "Web Vulnerability Remediation Checks" dated July 14, 2020 found that two remediation attempts by the SOS Office to fix vulnerabilities in the My Voter Page web application were unsuccessful. Opp. Ex. 156 at 2-3; Opp. Ex. 69 at 159:9-165:5. The vulnerabilities in the My Voter Page web application involved cross-site scripting and insecure direct object reference. Regarding insecure direct object reference, the Fortalice report found that unauthorized users could view precinct cards *belonging to other users*. Opp. Ex. 156 at 2-3.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The evidence cited does not support the fact stated in the first sentence.  The document cited as Opp. Ex. 156 is labeled as a "draft" report.  The cited pages also refer to a My Voter Page web application vulnerability that was remediated.  The second sentence also does not comply with LR 56.1(B)(1) because it does not cite to evidence.  The evidence cited also does not support the fact in the third sentence.  The cited pages of the draft report do not state that unauthorized users viewed precinct cards belonging to other users.  To the extent Plaintiffs intended to refer to the

157

entirety of this document instead of the individual page cited, or a specific page other than the one identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  Additionally, uncited evidence includes testimony about a subsequent Fortalice assessment explaining a fix to the My Voter Page and contextualizing the vulnerability as "not caus[ing] a severe hazard or any type of major issue" because "[a]ll they could do was see prior [*sic*] user's precinct card, which is bad practice, but did not allow anybody to change anything about the voting process, voter information or anything like that. They were just able to see something that we would rather them not see. People could see what they were able to see by simply buying a voter list that we sell.  So it wasn't specific information that the public had no access to but they would have had to pay for it."  (Dkt. 1370-3, Tr. 342:19-343:25.) The evidence also is immaterial to the claims and defenses in this case.  The cited evidence for the two of the three sentences that cite evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; and, at most, it refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in this case.

214.   A draft Fortalice Technical Assessment from May 2020 for the SOS Office IT network reported the findings of a penetration test from the perspective of a remote worker, which revealed several critical and high-risk vulnerabilities in the IT infrastructure, including two entirely separate routes to gain *administrative control of the entire SOS Office network*. Opp. Ex. 157; Opp. Ex. 69 at 62:5-64:20.

**RESPONSE:** Objection.  Plaintiffs' citation to the entirety of the draft report at Opp. Ex. 157 does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  The evidence cited does not support the fact.  The cited transcript does not reference a draft Fortalice Technical Assessment from May 2020 for the SOS Office IT network or any date-specific assessment or report, nor does it disclose the revelation of any vulnerabilities whatsoever.  To the extent Plaintiffs intended to refer to the entirety of this transcript instead of the individual pages and lines cited, or a specific page or line other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  Additionally, uncited evidence includes testimony about the report cited in its entirety that explains that references to "compromising the entire domain" actually refer to an old, out-

of-use server no longer being used and subsequently decommissioned, with no connection to in-use systems, or an internal helpdesk system that logs intra-office requests for IT support. (Dkt. 1370-3, Tr. 293:11-294:15, 295:23—301:17.) The evidence also is immaterial to the claims and defenses in this case.  The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections; and, at most, it refers to unquantified potential, unexploited vulnerabilities, which does not support relief sought in this case.

215.   The Fortalice team discovered that an administrator account for the SOS Office IT network password had not been changed since 2014. According to Fortalice, "if an attacker ever compromises this account, it is the equivalent to compromising the entire [SOS network] domain." Opp. Ex. 157 at 5. The penetration testing conducted by Fortalice curiously only included the data centers where the voter registration system is, not the CES environment that has a critical role for Georgia's voting system and elections using that system. Opp. Ex. 31 at 80:18-81:17; 83:4-84:4.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The first sentence also does not comply with LR

56.1(B)(1) because it does not cite to evidence.  The evidence cited does not

support the fact.  The cited page of Opp. Ex. 157, a draft report, does not

contain the language purportedly quoted in the second sentence, nor does it

support the contents of the first sentence.  Instead, it discusses remote VPN

users and discloses related findings, including that "Active Directory

permissions for users were strong," and "Service accounts seemed to be

appropriately phased out or disabled when not in use."  (Opp. Ex. 157 at 5.)

To the extent Plaintiffs intended to refer to the entirety of this draft report

instead of the individual page cited, or a specific page other than the one

identified, State Defendants object that that does not comply with LR

56.1(B)(1), which requires citation to evidence be by page or paragraph

number.  Additionally, uncited evidence includes testimony about the report

cited in its entirety that explains that references to "compromising the entire

domain" actually refer to an old, out-of-use server no longer being used and

subsequently decommissioned, with no connection to in-use systems, or an

internal helpdesk system that logs intra-office requests for IT support.  (Dkt.

1370-3, Tr. 293:11-294:15, 295:23—301:17.) The third sentence also does not

comply with LR 56.1(B)(1) because it is argumentative.  The cited evidence

does not convey that any limitations on the scope of a Fortalice assessment

161

were "curious[]."  The cited evidence also does not support the fact in the third sentence.  The cited testimony discusses different Fortalice assessments than the one cited following the second sentence.  The cited testimony does not support the argumentative inference that any particular "environment" was "curiously" excluded from testing; instead, it says that Fortalice "can't do penetrations testing on any of the CES environment, the – a Dominion environment," and that the "data centers where the voter registration system is" was "the only one that they could actually do potentially penetration testing" on.  (Opp. Ex. 31 at 83:22-84:4.)  Additionally, an uncited portion of the testimony Plaintiffs cite from Opp. Ex. 31 that appears immediately after the portion they cited explains the reason for this distinction: "Q.  Why not?  A.  [The CES/Dominion environment] is not tied to any network, whether it be Wi-Fi or hard wire that they could come through.  It is completely isolated out."  (Opp. Ex. 31 at 84:5- :8.)  The cited testimony following the third sentence also does not support the statements in the first two sentences.  The evidence also is immaterial to the claims and defenses in this case.  As the testimony that appears immediately following the testimony Plaintiffs cited confirms, the cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia

162

elections; and, at most, it refers to unquantified potential, unexploited

vulnerabilities, which does not support relief sought in this case.

216.   A draft report from Fortalice regarding Firmware Comparison

and Configuration Analysis from July 9, 2020 noted that a variety of access

methods were unrestricted or not as restricted as they could be for the SOS

Office IT network, and "[m]any of the devices [had] minimal IPv6-related

configurations in place," which "has the potential to allow a malicious actor to

abuse Ipv6 to perform man-in-the-middle (MITM) attacks on SoSGA's

infrastructure, or bypass rules and triggers that may be only in place for Ipv4

traffic."). Opp. Ex. 138 at 321:15-323:22; Opp. Ex. 158.

**RESPONSE:** Objection.  The evidence on which the statement relies is

inadmissible hearsay because it is a transcript of testimony describing the

contents of a report and not the report itself, and the Court cannot consider

hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193

F.3d 1316, 1322 (11th Cir. 1999).  The evidence cited also does not support

the fact.  The cited testimony does not contain the language quoted in the

statement.  To the extent Plaintiffs intended to refer to the entirety of the

draft report, or to the entirety of the transcript instead of the individual

pages and lines cited, or a specific page or lines other than the ones

identified, State Defendants object that that does not comply with LR

56.1(B)(1), which requires citation to evidence be by page or paragraph

number.  The evidence also is immaterial to the claims and defenses in this

case.  The cited evidence addresses security protocols for computers in the

Secretary's office that are not connected to voting equipment used in Georgia

elections; and, at most, it refers to unquantified potential, unexploited

vulnerabilities, which does not support relief sought in this case.

217.   Fortalice's risk assessments conducted for the SOS Office IT

network did not include similar risk assessments for any of the 159 counties

in Georgia, each of which bears critical responsibility for securing and

maintaining many essential components of Georgia's voting system, including

159 EMS servers, tens of thousands of BMDs and printers, many ICC and

ICP scanners, and much more. Opp. Ex. 29 at 275:25-276:7. Defendants have

offered no evidence of any cybersecurity assessment of any aspect of Georgia's

voting system conducted for, by, at the behest of, or in any of Georgia's 159

counties.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  The second sentence also does not comply with LR

56.1(B)(1) because it does not cite to evidence.  The second sentence also does

not comply with LR 56.1(B)(1) both because it is argumentative and because

it is a legal conclusion.  The evidence cited does not support the fact.  For

example, the testimony does not address the existence or nature of county

election security responsibilities at all, nor does it identify the existence or

number of pieces of election equipment subject to any such county

responsibility. The evidence also is immaterial to the claims and defenses in

this case to the extent the cited evidence addresses purported responsibilities

of counties, not the Secretary or other State Defendants.

218.   After this Court issued its preliminary injunction Order in

August 2019 relying in part on certain Fortalice reports finding serious

security failings with the SOS Office IT network, the SOS Office directed

Fortalice to stop sending written reports of cybersecurity assessments to the

SOS Office because, purportedly, "they were taken out of context by the

public." Opp. Ex. 31 at 75:4-9, 159:16-24; Opp. Ex. 138 at 312:15-314:19,

331:17-22.

**RESPONSE:** Objection.  The evidence cited does not support the fact.

Nothing in the cited testimony references any order of this Court in any

respect, nor does the cited testimony contain the language quoted in the

statement.  To the extent Plaintiffs intended to refer to the entirety of the transcript instead of the individual pages and lines cited, or a specific page or lines other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  Additionally, both the cited testimony and uncited testimony from the cited exhibit that immediately follows testimony the Plaintiffs cited confirms that Fortalice continued to conduct cybersecurity assessments for the Secretary's office; document those assessments in writing; and communicate the results of those assessments to the Secretary's office after August 2019.  (*E.g.*, Opp. Ex. 31 at 75:10-13.)  To the extent the cited exhibits refer to the contents of uncited documents or transcripts, the evidence on which the statement relies is inadmissible hearsay, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).  The evidence also is immaterial to the claims and defenses in this case.  The cited evidence addresses the manner in which information about security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections is communicated from Fortalice to the Secretary's office, which does not support relief sought in this case.

166

219.   Now the SOS Office does conference calls with Fortalice to

discuss assessments rather than obtain written reports memorializing their

findings. Opp. Ex. 31 at 71:18-72:23. Plaintiffs obtained Fortalice

cybersecurity assessment reports prepared after this Court's August 2019

preliminary injunction Order from Fortalice itself (over State Defendants'

objections). Opp. Ex. 159.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  The evidence cited with the first sentence also is

immaterial to the claims and defenses in this case.  The cited evidence

addresses the manner in which information about security protocols for

computers in the Secretary's office that are not connected to voting

equipment used in Georgia elections is communicated from Fortalice to the

Secretary's office, which does not support relief sought in this case.  The

evidence cited in support of the second sentence does not support the fact.

The email from an apparent attorney for Fortalice to Plaintiffs' attorney does

not describe the contents of the document or documents being transmitted;

does not describe the date or dates on which the document or documents

being transmitted were created; nor makes any reference to State

Defendants' input or objection to that transmission.  To the extent the cited exhibits refer to the contents of uncited documents, the evidence on which the statement relies is inadmissible hearsay, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).  The evidence cited with the second sentence also is immaterial to the claims and defenses in this case.  The cited evidence addresses the apparent fact of transmission of documents from Fortalice to Plaintiffs, which does not support relief sought in this case.  To the extent these sentences are an attempt to rehash a discovery dispute from years ago, they also do not comply with LR 56.1(B)(1) because they are argumentative.

220.   No significant findings from the 2020 and 2021 annual assessments done by Fortalice for the SOS Office IT network were raised to Merritt Beaver, the SOS Office longstanding CIO. Opp. Ex. 31 at 71, 80:18-81:17; 83:4-84:4.

**RESPONSE:** Objection.  The evidence cited does not support the fact. The cited testimony does not describe Merritt Beaver's position or tenure with the Secretary's office, nor does it identify the existence of significant findings from Fortalice in 2020 or 2021 that were not communicated to

Merritt Beaver.  To the extent the cited exhibits refer to the contents of

uncited documents or other communications, the evidence on which the

statement relies is inadmissible hearsay, and the Court cannot consider

hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193

F.3d 1316, 1322 (11th Cir. 1999).  To the extent the statement is read to

imply that no one in the Secretary's office received information from Fortalice

about any significant findings from 2020 or 2021, the evidence does not

support the fact, and the statement does not comply with LR 56.1(B)(1)

because it is argumentative.  The evidence is immaterial to the claims and

defenses in this case.  The cited evidence addresses security protocols for

computers in the Secretary's office that are not connected to voting

equipment used in Georgia elections; and, at most, it refers to unquantified

potential, unexploited vulnerabilities, which does not support relief sought in

this case.

221.   While Mr. Hamilton, the SOS Office former CISO, agreed with

Fortalice's recommendations—many of which involved no cost to the SOS

Office—and pushed the SOS Office to move faster on the recommendations,

the SOS Office reportedly did not have enough people with enough training to

make more headway on Fortalice's recommendations. Opp. Ex. 69 at 45:10-

61:12.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  The statement also does not comply with LR 56.1(B)(1),

which requires citation to evidence be by page or paragraph number, because

it cites seventeen consecutive pages of a deposition transcript and is overly

broad.  The evidence cited does not support the fact.  The testimony does not

define David Hamilton's position or status with the Secretary's office except

to indicate that Mr. Hamilton was not with the Secretary's office during all

times covered in the referenced analysis reports and had left the office by the

time of his testimony.  The testimony does not indicate whether and how

many of the various recommendations abstractly referred to David Hamiton

agreed with.  The testimony does not support the statement that "many" of

the recommendations involved no cost to the Secretary's office.  The

testimony does not refer to a "report[]" about deficiencies in the number or

training of people in the Secretary's office for responding to these generally

referenced recommendations.  The statement also omits mention of testimony

about progress made on the recommendations.  To the extent the cited

exhibit refers in the questions of cross-examining counsel and testimony to

the contents of uncited documents, the evidence on which the statement

relies is inadmissible hearsay, and the Court cannot consider hearsay at

summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316,

1322 (11th Cir. 1999).  In addition, the evidence is immaterial to the claims

and defenses in this case.  The cited evidence addresses security protocols for

computers in the Secretary's office that are not connected to voting

equipment used in Georgia elections; at most, refers to an unquantified

potential, unexploited vulnerabilities, which does not support relief sought in

this case; and refers to reports of analyses conducted prior to the replacement

of the GEMS/DRE election system with the current Dominion/BMD system.

222.   Mr. Hamilton recommended that the SOS Office hire a full-time,

permanent CISO, which would have been preferable to his fractional

arrangement, but that recommendation was not adopted. Opp. Ex. 69 at

23:25-27:5, 35:5-36:13.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  To the extent the cited exhibit refers to the contents of

uncited documents, the evidence on which the statement relies is

inadmissible hearsay, and the Court cannot consider hearsay at summary

judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).  To the extent the statement states that anyone other than David Hamilton "would have . . . prefer[red]" the hiring of a full-time, permanent CISO in the Secretary's office, the evidence cited does not support the fact. The testimony only refers to David Hamilton's preference that the Secretary's office hire a full-time employee for that role, and "permanent" does not appear in the cited testimony.  The cited evidence also includes David Hamilton's testimony that utilizing a part-time or contractor position in that context was "not unheard of."  (Opp. Ex. 69 at 35:23-36:6.)  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections, which separation the cited testimony confirms.  (Opp. Ex. 69 at 25:24-27:1 ("Didn't have anything to do with the tabulation of votes or the voting machines themselves.").)

223.   When Mr. Hamilton was planning to leave his position as CISO at the SOS Office, he reached out to Fortalice to tell them he would be leaving and to try to get their help in addressing a "backlog of security issues," saying "there was definitely work to be done" and the SOS Office

"needed some help"—but there is no evidence that backlog was resolved or that Fortalice or anyone else provided the necessary help. Opp. Ex. 69 at 68:13-70:9.

**RESPONSE:** Objection. The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one. The evidence on which the statement relies is inadmissible hearsay because it is a transcript of testimony describing the contents of another document and not the document itself, and the Court cannot consider hearsay at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The evidence cited does not support the fact. For example, the quoted language in the statement, "backlog of security issues" does not appear in the cited transcript. (To the extent Plaintiffs meant to quote the phrase "backlog of security tasks," the evidence is hearsay and may not be considered. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). That phrase appears in the transcript in the cross-examining Plaintiffs' attorney's question to the deponent.) Nothing in the cited transcript supports Plaintiffs' statement that "there is no evidence that backlog was resolved or that Fortalice or anyone else provided the necessary help," which statement also does not comply with

173

LR 56.1(B)(1) both because it is argumentative and because it is a legal conclusion. To the extent Plaintiffs intended to refer to the entirety of the transcript instead of the individual pages and lines cited, or a specific page or lines other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1)(a), which requires citation to evidence be by page or paragraph number. In addition, the evidence is immaterial to the claims and defenses in this case. The cited evidence addresses security protocols for computers in the Secretary's office that are not connected to voting equipment used in Georgia elections, which separation the testimony elsewhere in the cited exhibit confirms. (Opp. Ex. 69 at 25:24-27:1 ("Didn't have anything to do with the tabulation of votes or the voting machines themselves.").)

## J. **Georgia's Election System Lacks Sufficient Safeguards to Protect Against Demonstrated Cybersecurity Vulnerabilities.**

224. The SOS Office emphasized that "Physical security is . . . the front line of all cybersecurity." Opp. Ex. 48 at 250:19-15.

**RESPONSE:** Objection. The statement does not comply with LR 56.1(B)(1) because it does not cite to evidence (citing to lines "19-15" of a transcript page). To the extent Plaintiffs intended to refer to the entirety of

the transcript instead of the individual pages and lines cited, or a specific page or lines other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence refers to a statement of general security policy, which does not support relief sought in this case.

225.   During a hearing before the Congressional Committee on House Administration, Georgia's Director of Election Administration, Kathy Rogers, testified: "The first line of security defense in any system is physical security. All other security measures go for naught if you leave the doors unlocked." Opp. Ex. 9 at 110.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The evidence cited in support of the first sentence is immaterial.  The cited evidence refers to a statement of general security policy, which does not support relief sought in this case, stated in a 2004 United States House of Representatives, Committee on House Administration hearing on HAVA compliance generally, with statements addressing Georgia's GEMS/DRE election system, which Georgia's current

Dominion/BMD system replaced sixteen years later. The evidence cited in

support of the second sentence does not support the fact.  The cited testimony

discusses different responsibilities of the State and Georgia counties for

Georgia voting equipment, as well as CISA involvement at the State and

county levels, and it does not specifically identify a county obligation to

coordinate with CISA to check the security of voting equipment, including

physical security, at the county level.  The cited testimony does not indicate

an assignment of responsibility as between the State and counties for

"knowing whether counties were reusing removable media devices."  The

evidence cited in support of the third sentence is immaterial, because there is

not a failure-to-train claim in this case.  State Defendants admit that the

Court may consider the fact that, in Georgia, counties bear the primary

responsibility for physical security of the in-use BMDs for purposes of the

pending summary judgment motions.  To the extent the statements and

evidence cited in this paragraph refer to unquantified potential, unexploited

vulnerabilities, they do not support the relief sought in this case.

226.   When asked who is responsible for the security of Georgia's

voting equipment, including knowing whether counties were reusing

removeable media devices, the SOS Office said that the counties were, and

that the counties are supposed to coordinate with CISA to check the security of voting equipment, including physical security, at the county level. Opp. Ex. 48 Feb. 24, 2022 SOS 30b6 (Sterling) Dep., at 118:1-120:8; Opp. Ex. 85SOS 30b6 (Harvey) Dep. At 105:15-25, 146:22-25; Opp. Ex. 105Feb. 11, 2022 SOS 30b6 (M. Barnes) Dep. At 30:22-31:1. Fulton County described how it "took a lot for [Fulton County] to get the State to produce any kind of poll worker manual" on the BMD system and how "the State was pretty hands-off when it came to the system." Opp. Ex. 70 at 58:14-59:16.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it does not cite to evidence.  Plaintiffs' statements skip from numbered paragraph 225 to numbered paragraph 227.

227.   Regulations require that voting machine discrepancies, for example a broken seal or another concerns, need to be resolved *before* use, and BMDs found unsealed before an election should *not* be used. Opp. Ex. 31 at 49:5-51:7; 141:7-146:11; Opp. Ex. 85 at 54:25-55:17.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The statement also does not comply with LR 56.1(B)(1) because it is a legal conclusion.  The meaning and effect of Georgia's election

code and State Election Board rules are legal questions for the Court to decide. The statement also does not comply with LR 56.1(B)(1) because it is argumentative. To the extent the cited deposition testimony purports to describe the contents of a written report, the evidence on which the statement relies is inadmissible hearsay because it is a transcript of testimony describing the contents of another document and not the document itself, and the Court cannot consider hearsay at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The evidence cited does not support the fact. The statement does not cite any regulations at all; instead, it cites portions of two deposition transcripts the bulk of which contain a discussion between counsel and a videographer about use of the court-reporting service's exhibit-sharing technology during the deposition. The only actual testimony cited does not identify any particular "[r]egulations" (1) requiring resolution of "voting machine discrepancies" at a particular time or (2) prohibiting the use of certain election equipment. At most, the cited testimony indicates that one deponent "ha[s] not heard of any counties that have had an issue with BMDs being unsealed" and another who speculated about the existence and possible substance of election statutes or regulations that might be applicable to county election officials. To the

178

extent the evidence is addressing obligations of county—rather than State— election officials, it is immaterial.

228.   Secretary Raffensperger testified to a House Committee that because machines "always. . . have security, you know, tape on it, you know, so that you know that, if you broke it, broke the seal, that someone could've been in there," and that "there was never any evidence of that that we are aware of." Opp. Ex. 77 at 60. But this was not accurate, as the SOS Office was in fact aware of such evidence as described below.

**RESPONSE:** The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The second sentence also does not comply with LR 56.1(B)(1) because it does not cite to evidence and because it is argumentative.

229.   Fulton County election workers used BMDs for the November 2020 election that, in violation of election policies, were found with the side doors of the voting machines that cover the machines' removable media ports open, unsealed, and unsecured. Opp. Ex. 160; Opp. Ex. 85 at 50:3-15, 52:11-53:19, 54.25-56:1; Opp. Ex. 161 at Slide 12.

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it is a transcript of testimony describing the

contents of an email containing the written complaint of a non-testifying, nonparty declarant, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact. The cited portions of the deposition transcript show that the deponent had no knowledge of the information contained in the forwarded written complaint and predominantly consists of the examining attorney reading the complaint into the record.

230.   There is no evidence that an investigation occurred or that the Fulton County BMDs were tested for compromise or removed from future use, despite the fact that an election worker reported the incident to the SOS's Office with a complaint containing photo evidence of the unlocked machines in question. Opp. Ex. 160; Opp. Ex. 162; Opp. Ex. 85 at 50:9-15, 55:18-23.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The statement also does not comply with LR 56.1(B)(1)

180

because it is argumentative.  The evidence on which the statement relies is

inadmissible hearsay because it is a transcript of testimony referencing the

contents of emails containing (1) the written complaint of a non-testifying,

nonparty declarant and (2) notes of a conversation with another non-

testifying, nonparty declarant, and the Court cannot consider hearsay at

summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316,

1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir.

2003) (unsworn statements "cannot be considered by a district court in ruling

on a summary judgment motion").  The evidence cited does not support the

facts.  Neither the cited transcript nor the emails support the statement

"[t]here is no evidence that an investigation occurred" either in the abstract

or in reference to a complaint about open voting machines in Fulton County.

The cited testimony is that the deponent assumed there was an investigation

but did not know whether it occurred.  None of the cited evidence discusses

testing at all.  None of the cited evidence "contain[s] photo evidence of the

unlocked machines."  Opp. Ex. 162 contains the text of a URL to a post from a

Twitter account, but, independently following that link reveals that post now

is unavailable and the account that posted whatever it was has been

suspended.

181

231.   A presentation on Fulton County "Election Day Issues," mentions that there was no seal on a scanner, in addition to other problems with BMDs, such as failure to power on, need to be reset, error signals, and other problems. Opp. Ex. 161 at Slide 6, 8.

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it is two slides of a slideshow restating reports of the observations of unidentified, non-testifying, nonparty declarant(s), and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").

232.   The presentation also mentions how "Not enough seals [were] provided" on election day. Opp. Ex. 161 at Slide 10. The presentation specifically states that the Messiah Precinct did not have the required seal on the voting scanner. Opp. Ex. 161 at Slide 12.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The evidence on which the statement relies is inadmissible hearsay because it is two slides of a slideshow restating reports

of the observations of unidentified, non-testifying, nonparty declarant(s), and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").

233.   Michael Barnes told multiple county elections supervisors to use BMDs for voting even though the BMD's seals had been removed or were missing. Opp. Ex. 163; Opp. Ex. 164.

**RESPONSE:** Objection.  To the extent the statement relies on the emailed reports of non-testifying, nonparty declarants, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  Nowhere in the email exchange that is Opp. Ex. 163 does Michael Barnes tell anyone to use a BMD with removed or missing seals.  The email exchange that is Opp. Ex. 164 shows Michael Barnes responding to a report from a different election supervisor in a different county from the one in Opp. Ex. 163 about logic and accuracy

testing revealing missing seals on two BMDs, possibly removed by poll workers, and offering to return the BMDs for resealing.  Barnes' response directs the supervisor to reseal the machines and document it.  Opp. Ex. 164. It does not expressly state whether to use the BMDs for voting.  The evidence also is immaterial because it does not disclose the full circumstances under which seals were removed from the machines.

234.   There are multiple places where access to voting machines might be obtained in order to hack voting machines other than election warehouses, such as when the machines are being transported to polling places, when they are in polling places before or after an election, or when they are being transported from the polling places. Opp. Ex. 56 at 104:24-105:17.

**RESPONSE:** Objection. The evidence cited does not support the fact. Dr. Appel's testimony is speculative, unlike the certainty present in the statement.  And, uncited portions of the transcript of Dr. Appel's testimony excised from Plaintiffs' exhibit show that Dr. Appel never has been to an election warehouse in Georgia; never has been to a polling place in Georgia; and has no knowledge of the security rules and regulations surrounding storage of voting equipment in Georgia.  (Tr. 105:19-106:5. [Doc. 1553].)  In addition, the evidence is immaterial to the claims and defenses in this case.

The cited evidence addresses unquantified potential, unexploited vulnerability, undifferentiated between different election systems, which does not support relief sought in this case.

235.   Security at election warehouses is not always effective. Opp. Ex. 56 at 104:19-23.

**RESPONSE:** Objection. The evidence cited does not support the fact. The cited testimony of Dr. Appel does not state that election-warehouse security is not always effective; instead, it states that Dr. Appel has been to election warehouses "in a couple of different states, and I can say that the security of election warehouses is not always as good as one might want." And, uncited portions of the transcript of Dr. Appel's testimony excised from Plaintiffs' exhibit show that Dr. Appel never has been to an election warehouse in Georgia; never has been to a polling place in Georgia; and has no knowledge of the security rules and regulations surrounding storage of voting equipment in Georgia.  (Tr. 105:19-106:5. [Doc. 1553].)  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited testimony is an abstract, colloquial statement about security of election warehouses in states other than Georgia and speaks, at most, to unquantified

potential, unexploited vulnerability, undifferentiated between different election systems, which does not support relief sought in this case.

236.   Infiltration of hardware stored in an unlocked area could be easily accomplished simply by plugging in a USB drive containing malicious code. *See* Dkt. 1131, Halderman Report at 48; Opp. Ex. 146 § 2.2.1, § 2.2.3, § 2.2.4, § 2.2.5, § 2.2.7.

**RESPONSE:** Objection. The evidence on which the statement relies is inadmissible hearsay because it is Dr. Halderman's report, which is not evidence, and a CISA webpage, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  The cited portion of the report from Dr. Halderman describes a "more complex," multi-step attack, not an "eas[y]," "simpl[e]," single-step attack. The cited portions of the CISA web page also do not discuss the relative ease of the attack.  None of the cited evidence addresses the storage of any unspecified "hardware" referenced in the statement.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited

186

evidence addresses unquantified potential, unexploited vulnerability, which does not support relief sought in this case.

237.   In Hart County, "many voting machines were left unlocked" during the day while the polls were open for the November 2020 election. Although the SOS's Office learned about this issue, there is no evidence it was ever investigated. Opp. Ex. 162; Opp. Ex. 85 at 62:16-20.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The first sentence also does not comply with LR 56.1(B)(1) because it does not cite to evidence.  The statement also does not comply with LR 56.1(B)(1) because it is argumentative.  The evidence on which the statement relies is inadmissible hearsay because it is a transcript of testimony referencing the contents of emails containing the written complaint of a non-testifying, nonparty declarant, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  The quotation in the statement in the first

187

sentence does not appear in any of the evidence cited following the second

sentence, nor does any of that evidence indicate when during which day, if

ever, voting machines were "unlocked" (perhaps explaining why the first

sentence does not cite to evidence).  Neither the cited transcript nor the email

support the statement in the second sentence that "[t]here is no evidence it

was ever investigated" either in the abstract or in reference to a complaint

about voting machines in Hart County.  The cited testimony is that the

deponent expected that there was an investigation but did not know whether

it occurred. Opp. Ex. 162 contains the text of a URL to a post from a Twitter

account, but, independently following that link reveals that post now is

unavailable and the account that posted whatever it was has been suspended.

238.   In Fulton County during the November 2020 election, a scanner

containing 400-500 ballots was left unsecured overnight, and the precinct's

election manager did not report the ballots to Fulton County. Opp. Ex. 60.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  The evidence on which the statement relies is

inadmissible hearsay because it is an email containing the forwarded, written

complaint of a non-testifying, nonparty declarant also reporting the

statement of another non-testifying, nonparty declarant, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  The forwarded complaint does not support the statement that ballots were left unsecured overnight.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited forwarded complaint purports to describe, at most, a potential, unexploited vulnerability, undifferentiated between different election systems, which does not support relief sought in this case.

239.   Later that night, the election manager stopped at her house to take a shower in the middle of transmitting completed ballots, leaving them unsecured in her personal vehicle for nearly 20 minutes. Opp. Ex. 85 at 218:5-219:6; Opp. Ex. 60.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is argumentative.  The evidence on which the statement relies is inadmissible hearsay because it is an email containing the forwarded, written complaint of a non-testifying, nonparty declarant also

reporting the statement of another non-testifying, nonparty declarant, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion"). The evidence cited does not support the fact.  The forwarded complaint repeatedly refers to a period of "15 minutes" and contains no reference to a period of "nearly 20 minutes" as described in Plaintiffs' statement.  It also does not contain direct evidence of whether anyone took a shower during that time or how the ballots may have been secured (e.g., whether the car was locked).  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited forwarded complaint purports to describe, at most, a potential, unexploited vulnerability, undifferentiated between different election systems, which does not support relief sought in this case.

240.   Although known to the SOS, there is no evidence of any investigation of the incident involving the election manager who left ballots unsecured in her vehicle, including whether the election tabulation in Fulton County was affected. Opp. Ex. 85 at 218:21-219:6.

**RESPONSE:** Objection.  The statement does not comply with LR

56.1(B)(1) because it is argumentative.  The cited evidence does not support

the fact.  The cited portion of the transcript contains no mention of an

election manager or unsecured ballots, nor does it address whether "the SOS"

knew of any such incident.  It does not support the statement that "there is

no evidence of any investigation of the incident . . . ."  To the extent Plaintiffs

were attempting to reference the contents of Opp. Ex. 60, the cited portions of

the transcript do not contain any description of those contents, and uncited

portions of that transcript indicate that the deponent lacks personal

knowledge of those circumstances.  To the extent Plaintiffs were attempting

to reference the contents of Opp. Ex. 60, State Defendants object that that

does not comply with LR 56.1(B)(1), which requires citation to evidence be by

page or paragraph number, and that evidence is inadmissible hearsay

because it is a transcript of questions about an email containing the

forwarded, written complaint of a non-testifying, nonparty declarant also

reporting the statement of another non-testifying, nonparty declarant, and

the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802;

*Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*,

338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be

considered by a district court in ruling on a summary judgment motion").  In

addition, to the extent Plaintiffs were attempting to reference the contents of

Opp. Ex. 60, the evidence is immaterial to the claims and defenses in this

case.  The cited forwarded complaint purports to describe, at most, a

potential, unexploited vulnerability, undifferentiated between different

election systems, which does not support relief sought in this case.

241.   In one Fulton County warehouse, election workers often left the

storage area for the EMS server unlocked. Opp. Ex. 166 at 59:23-61:7.

**RESPONSE:** Objection.  The evidence cited does not support the fact.

The cited testimony is that "[t]he warehouse door is always locked."  The

cited testimony does not specifically reference an "EMS" server, nor does it

state that election workers often left an area inside the "always locked"

warehouse unlocked.  At best the testimony on access to the inner rack area

within the "always locked" warehouse is ambiguous, indicating that "you can

open it without the key," but also that the area "is locked" and "[i]s most of

the time closed."  In addition, the evidence is immaterial to the claims and

defenses in this case.  The cited testimony purports to describe, at most, a

potential, unexploited vulnerability, undifferentiated between different

election systems, which does not support relief sought in this case.

242.   One Fulton County pollworker reported that Dominion, not

Fulton County Election Employees, seemed to be running an election

warehouse, and that people were opening up 40-50 standalone scanners and

"emptying the ballots into suitcases," with "no formal procedure." Opp. Ex.

168.

     **RESPONSE:** Objection. The statement does not comply with LR

56.1(B)(1) because it is not separately numbered, as it is multiple statements

combined into one.  The evidence on which the statement relies is

inadmissible hearsay because it is an emailed complaint from a non-

testifying, nonparty declarant and contains reported statements of other non-

testifying, nonparty declarants, and the Court cannot consider hearsay at

summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316,

1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir.

2003) (unsworn statements "cannot be considered by a district court in ruling

on a summary judgment motion").  In addition, the evidence is immaterial to

the claims and defenses in this case.  The cited forwarded complaint purports

to describe, at most, a potential, unexploited vulnerability, undifferentiated

between different election systems, which does not support relief sought in

this case.

     243.   U.S. and Georgia elections are targets of hackers seeking to

disrupt the voting process. Opp. Ex. 29 at 205:20-206:12 (Payton testimony);

Opp. Ex. 1 ¶¶ 8-12, Exs. B-G (PDF p. 47-76); *see also* Opp. Ex. 2 at 40-42;

Opp. Ex. 52 at 1, 3, 5, 7, 9, 11-38.

**RESPONSE:** Objection. To the extent the statement relies on a 2019

Court order, the statement does not comply with LR 56.1(B)(1) because it

does not cite to evidence.  The evidence on which the statement relies is

inadmissible hearsay because it is news articles cited in Dr. Halderman's

declaration, which is not evidence, USDHS "Intelligence Notes," and

USNCSC memorandum, and the Court cannot consider hearsay at summary

judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th

Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003)

(unsworn statements "cannot be considered by a district court in ruling on a

summary judgment motion").  The evidence cited does not support the fact.

The cited testimony from Theresa Payton, at most, is that hackers might

target future, U.S. elections.  Neither the cited 2019 Court order nor many of

the election bulletins states that a U.S. or Georgia election was the target of a

hacker.  In addition, the evidence is immaterial to the claims and defenses in

this case.  The cited evidence addresses unquantified potential, unexploited

vulnerability (e.g., 2018 election bulletin: "There is no evidence that either of

194

the county webpages were compromised as a result of this activity"), undifferentiated between different election systems or having nothing to do with actual vote recording and tabulation systems (e.g., the hacking of Hillary Clinton's emails in 2016; attacks targeting voter-registration data in Illinois and Arizona in 2016; a Ukrainian voting attack in 2014, etc.), which does not support relief sought in this case; and refers to reports of analyses conducted, incidents, a Court order, and election bulletins prior to the replacement of the GEMS/DRE election system with the current Dominion/BMD system.

244.   In the 2022 midterm elections, the federal government renewed warnings that bad actors are working to compromise elections in the United States. *See* Opp. Ex. 169 ("The ability of persons located, in whole or in substantial part, outside the United States to interfere in or undermine public confidence in United States elections, including through the unauthorized accessing of election and campaign infrastructure or the covert distribution of propaganda and disinformation, continues to pose an unusual and extraordinary threat to the national security and foreign policy of the United States.").

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it is a page from the White House website, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  The notice states that "there has been no evidence of a foreign power altering the outcomes or vote tabulation in any United States election" and, at most, notes vague "vulnerabilities" that a someone might attempt to exploit, not that "bad actors are" doing this.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited notice purports to describe, at most, the existence of circumstances for potential, unexploited vulnerability, undifferentiated between different election systems, which does not support relief sought in this case.

245.   Fulton County experienced someone attempting to run vulnerability scans and run scripts to gain access into its external server environment, an incident which Fulton County was concerned may have been a "politically motivated attack." Opp. Ex. 170.

196

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it purports to be an email from a Fulton County "Information Security Manager," and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion"). The evidence cited does not support the fact.  The unelaborated speculation of a manager working under the Fulton County Chief Information Security Officer about the motivations of someone running security scans on the County's external Outlook server is not evidence of an official County statement on the incident.  In addition, the evidence is immaterial to the claims and defenses in this case.  The cited evidence addresses the security of Fulton County's external Outlook server, which is separate from the voting equipment used in Georgia elections and, at most, refers to an unquantified potential, unexploited vulnerability, which does not support relief sought in this case.

246.   The SOS Office received a hacking threat via e-mail that stated: "If you don't want me to try and hack your elections, please follow Oregon's lead and vote by mail, on paper. You really DON'T need electronic voting

machines, but if you insist, then let the games begin. Fair warning." Opp. Ex.
171.

**RESPONSE:** Objection.  The evidence on which the statement relies is
inadmissible hearsay because it is an email from Mr. Robot, a non-testifying,
nonparty declarant, and the Court cannot consider hearsay at summary
judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th
Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003)
(unsworn statements "cannot be considered by a district court in ruling on a
summary judgment motion").  In addition, the evidence is immaterial to the
claims and defenses in this case.  Whether the Secretary's office received an
email from a "Mr. Robot" making a vague, indirect hacking threat and
advocating a policy preference akin to the one Plaintiffs are pressing in this
litigation as shown in Opp. Ex. 171, that fact of receipt is immaterial to the
claims and defenses in this case.  The cited evidence at most, refers to an
unquantified potential, unexploited vulnerability, which does not support
relief sought in this case; and refers to a threat made prior to the
replacement of the GEMS/DRE election system with the current
Dominion/BMD paper-ballot system.

247.   The usual process to deliver poll pads to poll managers is "just to

198

hand them [poll pads] out on Sundays" before elections. In Fulton County,
poll managers would even "put them [poll pads] in their cars" after receiving
them from the county. Opp. Ex. 70 at 47:3-15.

**RESPONSE:** Objection. The statement does not comply with LR
56.1(B)(1) because it is not separately numbered, as it is multiple statements
combined into one. The first sentence also does not comply with LR
56.1(B)(1) because it does not cite to evidence. The evidence cited does not
support the fact. The cited testimony does not specifically mention poll pads
or Fulton County (or any county), nor does it clarify when the referenced
"Sunday" occurs relative to an election or indicate that the events described
are a "usual," common, or standard process. The cited testimony also reveals
that the deponent is speculating, making an assumption, and actually
"do[es]n't know" about the practice in question, which does not provide
support for the stated facts. To the extent Plaintiffs intended to refer to the
entirety of this transcript instead of the individual lines cited, or a specific
page or line other than the ones identified, State Defendants object that that
does not comply with LR 56.1(B)(1), which requires citation to evidence be by
page or paragraph number. In addition, the evidence is immaterial to the
claims and defenses in this case.

248.   This process of handing out poll pads on Sundays to poll mangers is common among Georgia counties. Opp. Ex. 70 at 47:16-20.

**RESPONSE:** Objection.  The evidence cited does not support the fact. The cited testimony does not substantively describe any process whatsoever, nor does it reference poll pads, Sundays, or poll managers.  The cited testimony also states that the process described is "common across the country," not "among Georgia counties."  To the extent Plaintiffs intended to refer to the entirety of this transcript instead of the individual lines cited, or a specific page or line other than the ones identified, State Defendants object that that does not comply with LR 56.1(B)(1), which requires citation to evidence be by page or paragraph number.  In addition, the evidence is immaterial to the claims and defenses in this case.

249.   Poll pads are internet-connected and can be used to watch Netflix, for example. Opp. Ex. 172 at 19; Opp. Ex. 173 at 49:22-50:11; Opp. Ex. 151 at 120:2-121:6.

**RESPONSE:** Objection.  The statement does not comply with LR 56.1(B)(1) because it is not separately numbered, as it is multiple statements combined into one.  The evidence on which the statement relies is inadmissible hearsay because it is a text message and the questions of cross-

examining Plaintiffs' counsel, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  Neither the text message nor the cited testimony states that the single poll pad referenced is connected to the internet.  The evidence also refers to one poll pad, not poll pads generally.  In addition, the evidence is immaterial to the claims and defenses in this case.  Poll pads are not a part of the claims or defenses in this case and are separate from the Dominion BMDs; at most, it refers to an unquantified potential, unexploited vulnerability, which does not support relief sought in this case.

250.   The Coffee County EMS computer and ICC tabulation computer had Windows game applications installed. Opp. Ex. 172 at 20; Opp. Ex. 173 at 50:15-52:9; Opp. Ex. 151 at 121:7-122:6.

**RESPONSE:** Objection.  The evidence on which the statement relies is inadmissible hearsay because it is a text message, and the Court cannot consider hearsay at summary judgment.  Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Carr v. Tatangelo*, 338 F.3d

1259, 1273 n.27 (11th Cir. 2003) (unsworn statements "cannot be considered by a district court in ruling on a summary judgment motion").  The evidence cited does not support the fact.  Neither the text message nor the cited testimony identify whether the programs are Windows programs or how they came to appear on the computer monitors shown.  In addition, the evidence is immaterial to the claims and defenses in this case.  There is no suggestion in the evidence cited that the presence of Windows software on a computer is evidence of an exploited vulnerability in Georgia election equipment and, at most, would be a potential, unexploited vulnerability, at least in part undifferentiated between different election systems, which does not support relief sought in this case.

**K.** **The Coffee County Breach Reveals the Lack of Meaningful Safeguards to Protect Georgia's Voting System.**

**1. Election Officials in Coffee County Permitted Unauthorized Individuals Access to Georgia's Election System**

251.  Dominion's Contract with SOS Office defines a "Security Breach" as: "(i) unauthorized physical or technical access to any Contractor Computer System; (ii) any circumstance that may constitute or result in, any unlawful or unauthorized acquisition, access, loss, theft, use or disclosure of any Confidential Information, Regulated Information, or State Data in the

possession of any of the Contractor Parties; (iii) any breach or attempted breach of the security of any Confidential Information, Regulated Information, or State Data, or of any of the controls of any of the Contractor Parties intended to protect the same; or (iv) ) any other circumstances or events that could compromise the privacy or security of any of the Confidential Information, Regulated Information, or State Data in the possession of any of the Contractor Parties." Opp. Ex. 84 at 45-46.

**RESPONSE:** Objection. The stated fact is irrelevant and immaterial. FRE 403; Local R. 56.1 (B)(1). The definition of "security breach" pertaining to the contractual relationship between Dominon and the Secretary is not probative of any fact of consequence in determining the action. Moreover, a "security breach" concerning a "Contractor Computer System," Opp. Ex. 84 at 45 (¶ 18.87(i)), or items in the possession of "Contractor Parties," *id.* at ¶ 18.87(ii–iv), are not at issue in this case. Finally, the evidence cited fails to include the additional defined terms contained therein.

252.   In January 2021, an infiltration of Georgia's voting system by a team from Atlanta-based forensics firm SullivanStrickler ("SS") was orchestrated by, *inter alia*, Coffee County Republican Party Chair Cathy Latham, bail bondsman Scott Hall, and Cyber Ninjas CEO Doug Logan, and

local Coffee County election officials Misty Hampton and Coffee County

Elections Board member Eric Chaney, who facilitated the SS team's entry

into the elections office. Opp. Ex. 174; Opp. Ex. 175 at 18:19-19:3, 48:1-5,

111:7-9, 114:3-117:11, 114:12-147:5; Opp. Ex. 176; Opp. Ex. 177; Opp. Ex. 149

at 147:10-15; Opp. Ex. 263.

**RESPONSE:** Objection. The stated fact is irrelevant and immaterial.

FRE 403; Local R. 56.1 (B)(1). The citation to Opp. Ex. 174 further fails to cite

to evidence by page or paragraph number, Local R. 56.1(B)(1), and contains

inadmissible hearsay which cannot be considered at summary judgment.

FRE 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

Defendants further object that Opp. Ex 175 at 18:19–19:3 contains only a

question of counsel which is inadmissible as evidence; Opp. Ex. 175 at 48:1–5,

111:7–9, and 114:3–117:11, do not support the stated fact, and merely contain

references to people present in Coffee County, not anyone who "orchestrated"

any "infiltration;" and the citation to Opp. Ex. 175 at 114:12–147:5 fails to

comply with Local R. 53.1(B)(1), by citing to thirty-three pages of deposition

testimony. The citations to Opp. Exs. 176, 177, and 263, likewise fail to

comply with Local R. 56.1 by failing to cite to evidence by paragraph or page

number, instead referencing one-hundred sixty six pages of pictures and

screen captures. Finally, the citation to Opp. Ex. 149 at 147:10-15 does not

support the stated fact; Mr. Sterling simply agreed that (unnamed)

individuals who traveled to Coffee County "kept it quiet."

253.   An organization founded and operated by Sidney Powell (an

attorney for the Trump Campaign and for Cathy Latham) paid for the

infiltration. Opp. Ex. 175 at 75:3-6; Opp. Ex. 178; Opp. Ex. 180 at 2.

**RESPONSE:** Objection. The stated fact is irrelevant and immaterial

since the organization which paid for SullivanStrickler's services is of no

consequence to the action. FRE 403; Local R. 56.1 (B)(1). The citation to Opp.

Ex. 178 further fails to cite to evidence by page or paragraph number, Local

R. 56.1(B)(1), and contains inadmissible hearsay which cannot be considered

at summary judgment. The citations further fail to support the stated fact

that an "organization founded and operated by Sidney Powell … paid" for

SullivanStrickler's services. Local R. 56.1(B)(3)(b).

254.   Both testimony by SS and security video from the Coffee County

elections office confirm the activity and movements of the forensics team, the

coordination with Coffee County elections officials, and other facilitators,

including Misty Hampton's assistant, Jil Ridlehoover, Hampton's daughter,

and her daughter's boyfriend. Opp. Ex. 175 at 114:3-117:11, 144:12-147:5;

Opp. Ex. 176.

**RESPONSE:** Objection. The stated fact is irrelevant and immaterial since the activity and movements of the individuals is of no consequence to the action. FRE 403; Local R. 56.1 (B)(1). Further, the evidence cited does not support the statement, no deposition testimony cited concerns "Jil Ridlehoover, Hampton's daughter, and her daughter's boyfriend." Local R. 56.1(B)(3)(b). Finally, the citation to Opp. Ex. 176 fails to cite to evidence by page and paragraph number. Local R. 56.1(B)(1)(a).

255.   On January 7, 2021, SS forensically imaged many components of Georgia's voting system *in its operational environment* in Coffee County, including the ICC, the EMS server, one or more pollpads, ICPs, a Dominion-supplied laptop, and extensive removable media, including one containing the Dominion ICX BMD software. Opp. Ex. 175 at 144:12-147:5, 290:7-14, 302:2-9; Opp. Ex. 75 ¶ 12.

**RESPONSE:** Objection. The stated fact is irrelevant and immaterial since the activity and movements of the individuals is of no consequence to the action. FRE 403; Local R. 56.1 (B)(1). Further, the evidence cited does not support the statement, the deposition testimony cited refers only to copying

of compact flash drives and re-scanning of previously cast ballots, and Dr.

Halderman's opinions are not factual evidence.

256.   The SS team made these copies at the direction and oversight of

Latham, Chaney, Hall, and Hampton, in part by connecting various devices,

including computers, to the voting equipment; some of the devices the SS

team brought with them, exposing Georgia's operational voting system and

its key components to potentially-compromised outside devices and software.

Opp. Ex. 175 at 144:12-147:5; *see also* Opp. Ex. 75 ¶ 10.

**RESPONSE:** Objection. The stated fact is irrelevant and immaterial

since the direction and oversight of the individuals is of no consequence to the

action. FRE 403; Local R. 56.1 (B)(1). Further, the evidence cited does not

support the statement, the deposition testimony cited refers only to copying

of compact flash drives and counsel in fact specifically instructed the witness

to *not* explain the copying process for compact flash drives. Opp. Ex. 175 at

145:11–19. Further, Dr. Halderman's subjective opinions are not factual

evidence and the cited paragraph does not state that that any component was

connected to "potentially-compromised outside devices and software." Opp.

Ex. 75 at ¶ 10.

257.   The SS team made copies of software and other files, including

Dominion's proprietary Democracy Suite software and actual election data, from the Georgia voting equipment and other devices in Coffee County. Opp. Ex. 175 at 144:12-147:5.

**RESPONSE:** Objection. The evidence cited does not support the statement, the deposition testimony cited refers only to copying of compact flash drives and counsel in fact specifically instructed the witness to not explain the copying process for compact flash drives. Opp. Ex. 175 at 145:11–19.

258.   The SS team also collected scanned cast ballot images from actual Georgia elections and removable media provided to them by former Coffee County elections supervisor Misty Hampton. Opp. Ex. 175 at 290:7-14.

**RESPONSE:** Objection. The evidence cited does not support the statement, the deposition testimony cited refers only to re-scanning cast ballots. Further, obtaining such ballot images is irrelevant and immaterial since obtaining cast ballot images is of no consequence to the action. FRE 403; Local R. 56.1 (B)(1).

259.   SS also attempted to image a Georgia BMD using a Cellebrite forensic extraction device, and succeeded in copying the Dominion BMD system installation software used in Georgia from a flash drive located in the

Coffee County election office. Opp. Ex. 175 at 302:2-9; *see also* Opp. Ex. 75 ¶ 12.

**RESPONSE:** Objection. The evidence cited does not support the statement, the deposition testimony consists of the witness's speculation that he "would think cellebrite would have been utilized." Opp. Ex. 302:2–5. For this same reason, the witness's testimony is speculation and inadmissible. Fed. R. Evid. 602. Further, the stated fact is immaterial to the action.

260.   SS did not use write-blocking equipment, as is industry best practice, to prevent the inadvertent transfer of data—such as malicious code—to the voting equipment. Opp. Ex. 181 at 38:8-25; *see also* Opp. Ex. 255 ¶¶ 30-31.

**RESPONSE:** Objection. The fact stated is immaterial and of no consequence in determining the action. Indeed, Mr. Skoglund testified in his deposition that he did not even look to determine whether malicious code or other data had been inadvertently transferred. Opp. Ex. 181 at 39:12–13.

261.   Evidence indicates that SS altered data on at least the Coffee County EMS server. Opp. Ex. 181 at 40:18-41:4; *see also* Opp. Ex. 255 ¶¶ 30-31.

**RESPONSE:** Objection. The fact stated is immaterial and of no consequence in determining the action. Mr. Skoglund testified that the only "data" which was changed was limited to a log of an external device being connected. Opp. Ex. 181 at 40:5–8. Such a log is of no consequence to this action.

262.   From January 18-19, 2021, Doug Logan and Jeffrey Lenberg, a computer security consultant who has also analyzed Dominion voting equipment in Michigan in connection with efforts to discredit the 2020 Presidential election, visited the Coffee County elections office and spent significant time in the access-restricted GEMS room and conducted a series of experiments on Georgia's voting equipment *in its operational environment*. Opp. Ex. 182; Opp. Ex. 183; Opp. Ex. 184 at 16:10-14; *see also* Opp. Ex. 75 ¶¶ 17-18.

**RESPONSE:** Objection. Citations to Exhibits 182 and 183 fail to cite to evidence by page or paragraph number, Local R. 56.1(B)(1), referencing seventeen pages of screenshots. Exhibit 184 further does not support the statement wherein the witness testified only that he tested equipment in Coffee County and Michigan. Further, the statement is immaterial as the access in Coffee County—which Plaintiffs' experts did not uncover malicious

code or malicious alteration of the equipment—is of no consequence in determining the action.

263.   During Mr. Logan and Mr. Lenberg's visits to Coffee County's elections office and access to Georgia's voting equipment *in its operational environment*, system dates on several election computers were altered, scanner settings were reconfigured several times, over 6,400 ballots were scanned, and one precinct scanner was physically opened to inspect the internal parts. Opp. Ex. 184 at 116-119, 122-130; *see also* Opp. Ex. 255 ¶ 9; Opp. Ex. 75 ¶ 18.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence in determining the action.

264.   Mr. Lenberg returned to the Coffee County elections office, including the highly-restricted EMS server room, for five more days later in January to conduct experiments on Georgia's voting equipment *in its operational environment*. Opp. Ex. 182; Opp. Ex. 183; *see also* Opp. Ex. 255 ¶ 9.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence in determining the action.

265.   During Mr. Lenberg's visit, the date on the Coffee County ICC

was twice changed, both times on January 19, 2021, and never changed back, media was created to program a precinct scanner and a BMD, 559 ballots were scanned, and Misty Hampton gave him voting system data to take with him. Opp. Ex. 184 at 16-22, 117:1-10, 178:13-22, 178:1-2, 187:16-188:7, 251:15-20, 260-263, 263:5-265:5, 289:9-18; Opp. Ex. 185; Opp. Ex. 186; Opp. Ex. 187 at 11 n.17; Opp. Ex. 255 ¶¶ 9, 105-107; Opp. Ex. 255 Ex. 23 p. 1-2.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence in determining the action.

266.   On January 17, 2021, an unknown entity uploaded Coffee County's November 2020 Cast Vote Records in json format to a public internet site, long before the json format Cast Vote Records were permitted to be released as public records by Georgia's Secretary of State. Opp. Ex. 188.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence in determining the action.

267.   These November 2020 Cast Vote Records in json format can only be created with access to Georgia's EMS software and specific election database. Opp. Ex. 188.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence in determining the action. Further, the exhibit cited—an email

of *Coalition Plaintiff's counsel*—is inadmissible hearsay and statements of counsel are in any event inadmissible as evidence.

268.   In the late evening to early morning hours of February 25-26, 2021, Mike Lindell—a leading "election denier" associated with the Trump Campaign—mysteriously flew to Coffee County during the night after flying to DC and Mar-a- Lago that same day. Opp. Ex. 189; Opp. Ex. 149 at 261:10-265:14; Opp. Ex. 150 at 155:4-22.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence to determining the action. Further, the exhibits cited do not support the stated fact, no witness testified as to a "mysterious[ ]" flight taken by Mike Lindell and Opp. Ex. 189 is inadmissible hearsay. Fed R. Evid. 802.

269.   Also on February 25, 2021, (i) Misty Hampton and her assistant resigned under pressure from the Coffee County Board of Elections, and (ii) Conan Hayes (another renown "election denier" associated with the Trump campaign) suddenly accessed data taken from the Coffee County voting equipment on the SS ShareFile site after weeks of inactivity. Opp. Ex. 150 at 155:4-12; Opp. Ex. 190; Opp. Ex. 191; Opp. Ex. 179 at -137 to -138.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence to determining the action. Further, the cited exhibits do not support the statement that Ms. Hampton resigned "under pressure" nor that Mr. Hayes, a "renown 'election denier,'" accessed Coffee County data; instead the exhibits only confirm that Msses. Hampton and Riddlehoover resigned, that the name Conan H. appears on a document produced by SullivanStrickler, and that the Coffee County Board of Elections 30(b)(6) representative had not knowledge whatsoever of Mr. Lindell's alleged presence.

270.   The day before, February 24, Ms. Hampton was on Mr. Lindell's website. Opp. Ex. 172 at 24.

**RESPONSE:** Objection. The evidence cited does not support the statement, page 24 of Opp. Ex. 172 links to an unknown "bitchute.com" website and no witness has testified to its authenticity.

271.   Text messages produced by former-Coffee County Board member, Ed Voyles, show that Misty Hampton received a request on February 4, 2021 from Kurt Olsen, an attorney who represents Mr. Lindell, asking that she call him. Opp. Ex. 192 at 104-105; Opp. Ex. 266 at 145:3-148:15.

**RESPONSE:** Objection. The evidence cited does not support the

statement. Exhibit 192 is inadmissible hearsay concerning a text from "Maybe: Kurt Olsen" and the second citation fails to comply with Local Rule 56.1 as it cites to an unknown exhibit.

272.   When questioned about the purpose of Mr. Lindell's February 25, 2021 trip to Coffee County and communications with Mr. Lindell, Ms. Hampton pled the Fifth Amendment. Opp. Ex. 173 at 160:16-163:11.

**RESPONSE:** Objection. Ms. Hampton's invocation of her constitutional rights is immaterial and of no consequence to determining the action.

273.   Jil Ridlehoover also pled the Fifth Amendment in response to questions about her involvement in the Coffee County breach that occurred in January 2021, and stated that people being at the Coffee County elections office on January 7, 2021 raised red flags for her. Opp. Ex. 193 at 166:6-11.

**RESPONSE:** Objection. Ms. Ridlehoover's invocation of her constitutional rights and her subjective and vague response to whether she had concerns or red flags is immaterial and of no consequence to determining the action.

274.   On February 26, 2021, the day after both Coffee County elections workers were suddenly forced to resign and escorted out of the elections

office—which was the same day Mr. Lindell flew to Coffee County during the night—Fortalice prepared an "Incident Response" protocol at the direction of the SOS Office noting that "[a]quiring *evidence* for analysis is critical to determining the scope and root cause of an *incident*." (emphasis added). The evidence collection process "outlines the various steps necessary to properly acquire digital evidence related to an incident." The software provided by Fortalice to the SOS Office "contain[ed] all the files and scripts necessary to conduct an initial gathering of evidence *from a suspect system or systems*." Opp. Ex. 194 at -660 (emphasis added).

**RESPONSE:** Objection. The evidence on which the statement relies is inadmissible hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999).

275.   Internal timestamps of February 3, 2021 indicate that Fortalice was drafting the February 26, 2021 Incident Response protocol just one week after an SOS investigator visited the Coffee County Elections Office at the same time Mr. Lenberg was impermissibly inside the room where the EMS server was located and was performing various tests on the equipment in that room. Opp. Ex. 194 at - 661; Opp. Ex. 210 at 35-52.

**RESPONSE:** Objection. The evidence cited does not support the

216

statement regarding "internal timestamps" and the exhibits are inadmissible hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; <u>Macuba v. DeBoer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999).

276.   The Coffee County Elections Office reportedly was closed from February 26, 2021—the day after Misty Hampton and Jil Ridlehoover resigned under pressure from the Coffee County Board of Elections and Mike Lindell flew in during the night—until April 2021, when James Barnes was hired to replace Misty Hampton. Opp. Ex. 67 at 85:23-86:14; Opp. Ex. 150 at 156:15-19.

**RESPONSE:** Objection. The evidence cited does not support the stated fact—Mr. Barnes and the Coffee County 30(b)(6) representative did not testify that the office was "reportedly closed," nor about resignations "under pressure" or Mr. Lindell's whereabouts. Further, the stated fact is of no consequence to determining the action.

277.   The changes made to Georgia's voting system via the Coffee County equipment *in its operation environment* during Mr. Logan and Mr. Lenberg's January 2021 visits were "abnormal and reckless" because they could prevent the system from functioning properly or accurately recording votes, whether intentionally or inadvertently. Opp. Ex. 255 ¶ 158.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Mr. Skoglund's subjective opinion about "abnormal and reckless" behavior is not factual evidence.

278.   Because of this risk, when unauthorized individuals have accessed election hardware, other states have decommissioned it, quarantined it, and not used it in future elections. Opp. Ex. 255 ¶ 163.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Mr. Skoglund's subjective opinions are not factual evidence.

279.   State Defendants replaced only Coffee County's EMS server and ICC when the SOS Office learned in May 2021 about a potential compromise of the voting system there involving Doug Logan and his now-defunct Cyber Ninjas organization. Opp. Ex. 195; Opp. Ex. 149 at 130:19-23; 132:4-10, 400:20-401:11; *see also* Opp. Ex. 255 ¶ 165.

**RESPONSE:** Objection. Plaintiff's citation to Opp. Ex. 195 does not support the stated fact but rather states that the Secretary replaced all election equipment in Coffee County, and in Opp. Ex. 149 the deponent did not testify of any connection between the Cyber Ninjas and replacement of the Coffee County EMS and ICC. Finally, Mr. Skoglund's subjective opinion about "abnormal and reckless" behavior is not factual evidence.

218

280.   State Defendants refused to replace the remainder of the equipment for over 18 months, until September 26, 2022. Opp. Ex. 196; Opp. Ex. 195; Opp. Ex. 197; Opp. Ex. 149 at 159:18-160:15; *see also* Opp. Ex. 198 at 10:4-11:10 (stating that it seemed like it would be prudent for SOS Office to replace all the Coffee County equipment).

**RESPONSE:** Objection. The cited evidence does not support any refusal by the Secretary regarding replacement of election equipment. The Court may properly consider that all election equipment has been replaced.

281.   The Coffee County voting equipment accessed during the January 2021 breach was used in subsequent elections. Opp. Ex. 195; Opp. Ex. 197.

**RESPONSE:** Objection. The evidence cited does not support the statement, rather opp. Ex. 195 states that all equipment was replaced and Opp. Ex. 197 contains only testing of replacement equipment.

282.   State Defendants have refused to replace the EMS server and ICC that were used with that potentially infected equipment for over 18 months, leaving voters still subject to that server and ICC in elections. Opp. Ex. 149 at 160:1-15; Opp. Ex. 200 (declining to replace the new EMS server and ICC).

**RESPONSE:** Objection. The cited evidence does not support any refusal by the Secretary regarding replacement of election equipment. The Court may properly consider that all election equipment has been replaced.

283.   State Defendants have provided no evidence that they ever actually analyzed any of the equipment they took from Coffee County in June 2021 and later September 2022 for malware, other compromises, or other alterations that could have affected how it operated in elections where it was used, nor were there any audits of those elections. Opp. Ex. 138 at 402:13-24; Opp. Ex. 149 at 152:10- 14; *see also* Opp. Ex. 75 ¶ 6.d. State Defendants' consultant, Mr. Persinger testified that he did not conduct any such analyses and was not asked to do so. Opp. Ex. 201 ¶ 52. And Dominion reportedly failed to access its own equipment taken from Coffee County despite the ease with which the passwords on both could have been circumvented and the fact that at least the ICC password should have been known to the SOS Office given it was known to James Barnes in Coffee County when the SOS Office took it. Opp. Ex. 149 at 211:19-216:2.

**RESPONSE:** Objection. The stated facts are immaterial and not of consequence to determining the action, whether the State Defendants searched for malware on equipment that has not been utilized in an election

is not probative of any fact of consequence. The Court may properly consider that Plaintiffs' experts did not locate any malicious code.

284.   During her deposition, Cathy Latham asserted the Fifth Amendment in response to key questions, including whether she was ever in the County Coffee elections office room containing the EMS server and ICC, Opp. Ex. 249 at 25:9- 11, and whether she had discussed anything concerning the situation regarding the January 2021 Coffee County breach with Eric Chaney, *id.* at 29:20-22.

**RESPONSE:** Objection. Ms. Latham's invocation of her constitutional rights in response to questions that Plaintiffs' counsel has determined to be "key" is immaterial and of no consequence in determining the action.

285.   Ms. Latham provided false testimony under oath during her deposition, testifying that she went to the Coffee County elections office after 4:00 pm on January 7, 2021, for "just a few minutes," and only "walked into the front part" and "didn't go into the office." Opp. Ex. 249 at 133:23-134:11; 136:19-22. In reality, Ms. Latham escorted multiple people into the elections office and remained there for much if not all of the day from 11:37AM until 6:19PM. Opp. Ex. 150 at 39:17-23; Opp. Ex. 175 at 126:3-13, 291:13-18; Opp. Ex. 250 at 6, 8-9; Opp. Ex. 176 at 79; Opp. Ex. 251 at 6-10. Ms. Latham also

did in fact enter Ms. Hampton's office, which leads to the EMS server room where the SS team breached and copied the voting equipment there. Opp. Ex. 176 at 38-39; Opp. Ex. 150 at 41:7-16; Opp. Ex. 175 at 127:13-19; 234:14-22; Opp. Ex. 251 at 11-13.

**RESPONSE:** Objection. Whether Ms. Latham—a non-party who was not employed in any governmental capacity pertaining to elections—was truthful in her testimony is immaterial and of no consequence to determining the action. Further, Plaintiffs' counsel's opinion of her truthfulness is not admissible factual evidence.

286.   Eric Chaney also asserted the Fifth Amendment to various questions during his deposition, including whether he filmed a video of Misty Hampton that was posted to YouTube containing sensitive passwords for the Coffee County voting equipment, including the EMS server, Opp. Ex. 151 at 35:15-37:24, why the Coffee County video surveillance from January 2021 would have been destroyed, *id.* at 55:15-22, and whether he saw anyone in the Coffee County elections office who was not supposed to be there when he reviewed the video surveillance having to do with Ms. Hampton's resignation, *id.* at 61:21-62:4; Opp. Exs. 268-269.

**RESPONSE:** Objection. Whether Mr. Chaney—a non-party—was

truthful in his testimony is immaterial and of no consequence to determining the action. Further, Plaintiffs' counsel's opinion of his truthfulness is not admissible factual evidence.

287.   Eric Chaney falsely testified under oath that, to his knowledge, Doug Logan, Paul Maggio, and Scott Hall had never been in the Coffee County election office, despite spending much of January 7, 2021 in that office with the three of them. Opp. Ex. 151 at 60:4-25.

**RESPONSE:** Objection. Whether Mr. Chaney—a non-party—was truthful in his testimony is immaterial and of no consequence to determining the action. Further, Plaintiffs' counsel's opinion of his truthfulness is not admissible factual evidence.

### 2. Election Data from Coffee County was Uploaded to the Internet and Accessed by Dozens of Unauthorized Individuals

288.   Paul Maggio of SS emailed Sidney Powell on January 8, 2021, writing that "[w]e are consolidating all of the data collected and will be uploading it to our secure site for access by your team." Opp. Ex. 175 at 302:2-9; Opp. Ex. 178.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence to determining the action—Mr. Maggio's actions have no bearing

on any purported burden on Plaintiff's right to vote.

289.   SS uploaded all data collected from Georgia's voting system—which included sensitive Dominion election software from nearly every component of that system—to a cloud-based ShareFile site. Opp. Ex. 175 at 215:22-216:8.

**RESPONSE:** Objection. The stated fact is immaterial and of no consequence to determining the action—SullivanStrickler's actions have no bearing on any purported burden on Plaintiff's right to vote.

290.   SS provided login credentials to download the data taken from Coffee County to various individuals identified by Sidney Powell and others. Opp. Ex. 255 ¶ 9; Opp. Ex. 175 at 215:22-216:8.

**RESPONSE:** Objection. The evidence does not support the stated fact, the testimony cited at Opp. Ex. 175 does not state that any particular individual directed additional access and Mr. Skoglund's subjective opinions are not factual evidence. Further, whether individuals had access to a sharefile site is immaterial and of no consequence to determining the action.

291.   Login credentials to the SS ShareFile site were shared with others, leaving no complete trail of who had the ability to—and did—login and access the sensitive data taken from Georgia's voting system. Opp. Ex.

224

253 at 87:2-89:8.

**RESPONSE:** Objection. The cited evidence does not support the stated

fact and does not cite to page or paragraph, Opp. Ex. 256 references a

declaration of Benjamin Cotton filed in the United States District Court for

the District of Arizona and no page 87 exists.

292.   Anyone with login information could access the Georgia voting

system data on SS's ShareFile site. Opp. Ex. 175 at 176:12-177:12.

**RESPONSE:** Objection. Whether individuals had access to data

reflecting Coffee County equipment that is no longer in use is immaterial and

of no consequence to determining the action. Further, the evidence cited does

not support the statement, in fact, the SullivanStrickler representative

testified in the following lines that access was restricted depending on the

individuals. Opp. Ex. 175 at 177:12–17.

293.   Records produced by Mr. Maggio of SullivanStrickler's ShareFile

site's user activity show that at least ten individuals from all over the

country, and even outside of the country based on identified locations,

uploaded and downloaded Georgia voting system data. Opp. Ex. 179; Opp.

Ex. 255 ¶ 9.

**RESPONSE:** Objection. Whether individuals accessed and/or

downloaded/uploaded information to SullivanStrickler's sharefile site is immaterial and of no consequence to determining any burden on Plaintiffs' right to vote.

294.   Benjamin Cotton, a cybersecurity consultant who was retained by known "election deniers" and admitted he conducted a forensic analysis of the Georgia voting system data taken from Coffee County, was among the individuals who downloaded and reviewed the data. Opp. Ex. 253 at 105:19-106:6; Opp. Ex. 256 at 2; Opp. Ex. 262.

**RESPONSE:** Objection. Whether Mr. Cotton accessed data reflecting voting equipment no longer utilized is immaterial and of no consequence to determining any ongoing burden on Plaintiffs' right to vote.

295.   The Georgia voting system data taken from Coffee County still existed on Mr. Cotton's home computer in Montana as of August 2022. Opp. Ex. 253 at 130:9-11 ("Q: Do you still have the Dominion data files from Coffee County? A: Yes.").

**RESPONSE:** Objection. The citation to "Oct. 10, 2022 SOS 30b6 (Sterling)" fails to cite to evidence by page and line number. Further, whether Mr. Cotton has retained data of election equipment no longer in use is immaterial and of no consequence to determine any ongoing burden on

Plaintiffs' right to vote.

296.   James Penrose provided his credentials to Mr. Cotton for Mr. Cotton to access the ShareFile account and download election software and data while logged in as Penrose. Opp. Ex. 253 at 87:2-89:8.

**RESPONSE:** Objection. The citation to "Oct. 10, 2022 SOS 30b6 (Sterling)" fails to cite to evidence by page and line number. Further, whether Mr. Penrose shared his login with Mr. Cotton s immaterial and of no consequence to determine any ongoing burden on Plaintiffs' right to vote.

297.   At least ten individuals across the country and even outside the U.S. based on the identified locations in the logs downloaded and uploaded sensitive Georgia voting system data. Opp. Ex. 179; Opp. Ex. 175 at 264:8-17; Opp. Ex. 255 ¶ 9.

**RESPONSE:** Objection. Whether individuals accessed and/or downloaded/uploaded information to SullivanStrickler's sharefile site is immaterial and of no consequence to determining any ongoing burden on Plaintiffs' right to vote.

298.   Still other individuals had the Georgia voting system data taken from Coffee County shipped to them on hard drives. Opp. Ex. 258 at -100 (Jim Penrose), at -098 (Stefanie Lambert at Michael Otra's apartment

address); Opp. Ex. 184 at 204:3-13.

**RESPONSE:** Objection. The citations to "Maggio-" fail to cite by page or paragraph to exhibits filed in support of Plaintiffs' response in opposition to Defendants' motions for summary judgment and the citation to Opp Ex. 184 does not support the stated fact.

299.   Doug Logan uploaded several zip files related to the Coffee County EMS server to the ShareFile site from a location in Florida on January 16, 2021. SS did not know why Logan uploaded these files, what they were, or where they came from. Opp. Ex. 179; Opp. Ex. 175 at 264:8-17.

**RESPONSE:** Objection. The citation to Opp. Ex. 179 fails to cite to evidence by page or paragraph and the testimony in Opp. Ex. 175 fails to support the stated fact; rather, the deponent testified generally to his lack of knowledge regarding any action of Mr. Logan. Opp. Ex. 175 at 264:8-17.

300.   Logan testified that he uploaded a forensic image he captured from the Georgia voting system while in the Coffee County elections office after having converted it into a virtual machine, which allows a viewer to "utilize it like it was the computer in order to take a look at the way the things operate, and more closely examine it like it was a local system you were using." Opp. Ex. 257 at 125:5-126:5.

**RESPONSE:** Objection. Whether Mr. Logan uploaded a forensic image while he was in Coffee County is immaterial to the claims in this case.

301.   Greg Freemyer, a SullivanStrickler employee who was involved in the firm's copying of Dominion election data from a county in Michigan, uploaded zip files to the ShareFile site from a location in New Jersey on January 24, 2021. Opp. Ex. 175 at 264:8-17; Opp. Ex. 300.

**RESPONSE:** Objection. The evidence cited does not support the fact asserted. The fact asserted does not comply with LR 56.1(B)(1) because it does not cite to evidence. The evidence is the deposition of Dean Felicetti, and the citation is asking Mr. Felicetti if he knows why "Doug Logan was uploading these EMS files to the SullivanStrickler ShareFile?" Mr. Felicetti answers that he does not. The evidence does not provide dates, or mention Greg Freemeyer.

302.   Scott Hall forwarded Alex Cruce the Coffee County ICC log and SLOG he received from Ms. Hampton over e-mail. Opp Ex. 265 at 51:5-22; 53:22-54:5; 85:8-17.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

303.   From Mr. Cruce's understanding, "election officials around the

state of Georgia had been handing over SLOG files. It was a lot that actually were giving them to people." Opp Ex. 265 at 135:15-20.

**RESPONSE:** Objection. Mr. Cruce's mere "understanding" does not make it a fact in this case. Further, the statement is immaterial to the claims and defenses in this case. The statement that "elections officials around the state of Georgia had been handing over SLOG files" is irrelevant to the claims in this case.

304.   Kevin Skoglund found Cast Vote Records ("CVRs") (data which show how a tabulator interpreted each ballot) from the November 2020 General Election in Coffee County publicly available on the Internet with an upload date of January 17, 2021. Opp. Ex. 301 ¶ 2-5, 17-22.

**RESPONSE:** Objection. Plaintiffs cite to a pleading and not to evidence, which does not comply with LR 56.1(B)(1). State Defendants further object that the evidence cited does not support the stated fact. Mr. Skoglund makes clear that it is his opinion, and thus it is not a fact. Plaintiffs mischaracterize the evidence cited.

305.   In Coffee County, a few rogue elections officials were able to provide access to sensitive Georgia voting system equipment and software used in elections in Coffee County and the other 158 counties in Georgia,

which all use the same Dominion election software and the same types of Dominion election equipment. Opp. Ex. 149 at 144:24-145:11; 147:10-15.

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact. First, the evidence cited is testimony from Gabriel Sterling during the 30(b)(6) deposition of the Secretary of State. The testimony provided by the deponent only states that "But [Misty Hampton] wasn't an election official," and "Yeah" in relation to "In Coffee County, a few rogue elections officials were able to provide access to sensitive Georgia voting system equipment and software used in elections in Coffee County and the other 158 counties in Georgia." Second, the evidence is stated as an argument where Plaintiffs use the words "rogue," and "sensitive."

Defendants admit that the Court may consider that "the other 158 counties in Georgia, which all use the same Dominion election software and the same types of Dominion election equipment" for evidence for purposes of the summary judgment motion. Defendants also admit that the Court may consider that access was granted to the Coffee County election equipment for purposes of the summary judgment motion.

306.   The access that Paul Maggio, Karuna Naik, Jennifer Jackson, and Jim Nelson ("the SS Team"), Scott Hall, Doug Logan, and Jeffrey Lenberg obtained in January 2021 to the Dominion voting equipment used in Coffee County, Georgia, in or around January 2021 was not authorized under Georgia law. Opp. Ex. 195.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state names or provide the month or date that any individuals had such access.

307.   The access Scott Hall, Doug Logan, Jeffrey Lenberg, the SS Team, Ben Cotton, Alex Cruce, and the numerous other individuals had to download proprietary Dominion software and Georgia election data from Georgia voting system equipment in Coffee County in or around January 2021 was not authorized under Georgia law. Opp. Ex. 195; Opp. Ex. 262.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the

Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state names or provide the month or date that any individuals downloaded "proprietary Dominion software and Georgia election data from Georgia voting system equipment in Coffee County," or that any individuals downloaded "proprietary Dominion software and Georgia election data from Georgia voting system equipment in Coffee County."

308.   The dissemination by the SS Team of Dominion software and voting data that was copied from the Georgia voting system equipment used in Coffee County, Georgia, in or around January 2021 was not authorized under Georgia law. Opp. Ex. 195.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state that "Dominion software or voting

data that was copied from the Georgia voting system equipment used in Coffee County, Georgia" and disseminated.  Opp. Ex. 195 does not state names or provide the month or date that individuals allegedly disseminated such information.

309.   The changes Doug Logan, Jeffrey Lenberg, and the SS Team made in January 2021 to one or more components of the Georgia voting system equipment used in Coffee County, Georgia, were not authorized under Georgia law. Opp. Ex. 195.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state names or provide the month or date that individuals allegedly made changes to the Georgia voting system equipment used in Coffee County, Georgia. Opp. Ex. 195 does not state that changes were made to "the Georgia voting system equipment used in Coffee County, Georgia."

310.   In January 2021, the Coffee County Election Supervisor did not

have the legal authority to provide Scott Hall, Doug Logan, Jeffrey Lenberg, or the SS Team access to the Georgia voting system equipment used in Coffee County, Georgia. Opp. Ex. 195.

     **RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state names or provide the month or date that individuals "did not have legal authority to provide ... access to the Georgia voting system equipment used in Coffee County, Georgia." Opp. Ex. 195 does not state names of individuals who were "provide[d] ... access to the Georgia voting system equipment used in Coffee County, Georgia."

     311.   In January 2021, the Coffee County Election Supervisor did not have the legal authority to allow Scott Hall, Alex Cruce, Doug Logan, Jeffrey Lenberg, or the SS Team to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia. Opp. Ex. 195.

     **RESPONSE:** Objection. The evidence cited does not support the fact

stated. The evidence cited is a September 23, 2022 press release from the Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state "the Coffee County Election Supervisor did not have the legal authority to allow" individuals "to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia." Opp. Ex. 195 does not state names of individuals who were "allowe[d] ... to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia." Opp. Ex. 195 does not state the date or month that individuals were "allowe[d] ... to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia."

312.   In January 2021, the Coffee County Election Board, including individual members, did not have the legal authority to provide Scott Hall, Doug Logan, Jeffrey Lenberg, or the SS Team access to the Georgia voting system equipment used in Coffee County, Georgia. Opp. Ex. 195.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the

Secretary of State announcing that their office "is replacing the election equipment in Coffee County following the unauthorized access to the equipment that former Coffee County election officials allowed in violation of Georgia law." Opp. Ex. 195 does not state "the Coffee County Election Board, including individual members did not have the legal authority to allow" individuals "to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia." Opp. Ex. 195 does not state names of individuals who were "allowe[d] ... to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia." Opp. Ex. 195 does not state the date or month that individuals were "allowe[d] ... to copy Dominion software or voting data from the Georgia voting system equipment used in Coffee County, Georgia."

313.   In January 2021, the Coffee County Election Board, including individual members, did not have the legal authority to allow Scott Hall, Doug Logan, Jeffrey Lenberg, or the SS Team to copy Dominion software or Georgia voting data from the Georgia voting system equipment used in Coffee County, Georgia. Opp. Ex. 195.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited is a September 23, 2022 press release from the

237

Secretary of State announcing that their office "is replacing the election

equipment in Coffee County following the unauthorized access to the

equipment that former Coffee County election officials allowed in violation of

Georgia law." Opp. Ex. 195 does not state "the Coffee County Election Board,

including individual members did not have the legal authority to allow"

individuals "to copy Dominion software or Georgia voting data from the

Georgia voting system equipment used in Coffee County, Georgia." Opp. Ex.

195 does not state names of individuals who were "allowe[d] ... to copy

Dominion software or voting data from the Georgia voting system equipment

used in Coffee County, Georgia." Opp. Ex. 195 does not state the date or

month that individuals were "allowe[d] ... to copy Dominion software or

Georgia voting data from the Georgia voting system equipment used in Coffee

County, Georgia."

### 3.  The Coffee County Breach Poses a Serious Threat to the Security of Future

314.   Dr. Halderman and Kevin Skoglund examined a series of forensic

images from Coffee County's EMS server and other components of the

Georgia's voting system and found that the "risk that a future Georgia

election will be attacked materially increased with the outside group(s)'s

copying and distribution of the proprietary software that operates Georgia's

election system and specific system configurations." SullivanStrickler hard drive produced on Aug. 12, 2022; Opp. Ex. 75 ¶ 6; *see also* Opp. Ex. 255 ¶ 9(i); Opp. Ex. 149 at 52:21-53:6; Opp. Ex. 31 at 192:16-193:6.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The SullivanStrickler hard drive produced on Aug. 12, 2022 does not state that there was a "risk that a future Georgia election will be attacked materially increased with the outside group(s)'s copying and distribution of the proprietary software that operates Georgia's election system and specific system configurations."

The Alex Halderman November 22, 2022 declaration includes the referenced quote, but Defendants do not admit that there is a "risk that a future Georgia election will be attacked materially increased with the outside group(s)'s copying and distribution of the proprietary software that operates Georgia's election system and specific system configurations."

Defendants admit that "releasing [the Dominion software] provides a roadmap for the hacking system," Opp. Ex. 149 at 52:21-53:6; *see also* Opp. Ex. 31 at 192:16-193:6.

315.   Adversaries, including one or more of those involved with the January 2021 Coffee County breach, may use the software taken in that

breach in disinformation campaigns or study it to learn how to subvert its operation through malware, reprogramming, or disabling defenses. Opp. Ex. 255 ¶ 9(i); Opp. Ex. 257 at 125:5-126:5; Opp. Ex. 253 at 105:19-106:6.

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

The opinion of Mr. Skoglund is not a stated fact. The evidence is stated as an argument where Plaintiffs use the words "including one or more of those involved with the January 2021 Coffee County breach" and "insufficient."

316.   The January 2021 Coffee County breach and others like it portend easier access to equipment to put manipulations into effect—in Coffee County strangers and outsiders were given free rein to key components of Georgia's voting system *in its operational environment* for hours and days. Opp. Ex. 255 at ¶ 9(i).

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

Defendants admit that Mr. Skoglund's declaration states that: "This breach and others like it portend easier access to equipment to put manipulations into effect—in Coffee County strangers were given free rein for hours."

Defendants do not admit that "[t]his breach and others like it portend easier access to equipment to put manipulations into effect—in Coffee County strangers were given free rein for hours."

The evidence is stated as an argument where Plaintiffs use the words "key components," "and days," and italicizing "in its operational environment."

317.   The implications of the January 2021 Coffee County breach require that the recommendations of election security experts, as well as CISA, should be implemented fully and urgently throughout Georgia. Opp. Ex. 255 at ¶ 9(i).

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

241

Defendants admit that Mr. Skoglund's declaration states that: "These implications require that the recommendations of election security experts should be implemented fully and urgently."

The evidence is stated as an argument where Plaintiffs use the words "require," "fully," and "urgently."

318.   The January 2021 Coffee County breach was by any measure a consequential breach of Georgia's voting system security—in its operational environment no less. Opp. Ex. 255 ¶ 9(h).

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

Defendants admit that Mr. Skoglund's declaration states that: "These events were by any measure a consequential breach of Georgia's election security."

The evidence is stated as an argument where Plaintiffs use the words "by any measure," "consequential," and "in its operational environment no less."

319.   Georgia's access controls to protect election hardware and software are obviously insufficient in light of the January 2021 Coffee County

breach. Opp. Ex. 255 ¶ 9(h).

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

Defendants admit that Mr. Skoglund's declaration states that: "The access controls to protect election hardware and software were obviously insufficient."

The evidence is stated as an argument where Plaintiffs use the words "obviously" and "insufficient."

320. The data collected in the January 2021 Coffee County breach includes sensitive, access-restricted software from almost every component of Georgia's current voting system. Opp. Ex. 255 ¶ 9(h); Opp. Ex. 175 at 144:12-147:5, 290:7-14, 302:2-9; Opp. Ex. 75 ¶ 12.

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

Defendants admit that Mr. Skoglund's declaration states that: "The data collected includes protected software from almost every component of Georgia's election system."

243

The evidence is stated as an argument where Plaintiffs use the word "sensitive."

321.   Control over sensitive voting equipment software and data cannot be reestablished after its distribution like occurred with the in the January 2021 Coffee County breach, and all of Georgia's counties and other states using the same or similar Dominion software or equipment must now endure the increased risk attendant to that breach as a result. Opp. Ex. 255 ¶ 9(h); Opp. Ex. 75 ¶¶ 6, 40; Opp. Ex. 149 at 52:21-53:6; Opp. Ex. 138 at 192:16-193:6.

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

Defendants admit that Mr. Skoglund's declaration states that: "Control over the software and data cannot be reestablished after its distribution, and all of Georgia's counties and other states must endure the increased risks as a result."

The evidence is stated as an argument where Plaintiffs use the words "sensitive," "endure," and "increased risk."

322.   All users of the Coffee County EMS server share a single account,

rather than assigning users accounts with differing levels of access based on role and need. This single account has administrator privileges, such that any authorized user could bypass security controls and alter software, election data, and log files. Opp. Ex. 75 ¶¶ 45, 47-48.

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

Defendants do not admit that Mr. Halderman's declaration is fact, but admit that Alex Halderman's November 22, 2022 declaration states the purported facts.

323.   The hard drive on the Coffee County EMS server and ICC workstation reportedly taken by the SOS Office in June 2021 are both unencrypted, even though the operating system supports the full-disk encryption that is standard for most modern smartphones and corporate laptops. Such unencrypted systems allow anyone with physical access to use widely available methods to bypass a Windows login password and gain access. Opp. Ex. 175 at 172-174; *see also* Opp. Ex. 75 ¶ 43.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it does not cite to evidence by page or paragraph number. To the

extent that Plaintiffs intended to refer to the entirety of these documents, Defendant objects that such does not comply with LR 56.1(B)(1), which requires citation to evidence by page or paragraph number. The fact is also immaterial to the claims and defenses in this case.

Defendants admit that Alex Halderman's November 22, 2022 declaration states the purported facts, but do not admit that Mr. Halderman's declaration is fact.

Defendants do not admit that "[t]he hard drive on the Coffee County EMS server and ICC workstation reportedly taken by the SOS Office in June 2021 are both unencrypted."

It is immaterial that "the operating system supports the full-disk encryption that is standard for most modern smartphones and corporate laptops."

324.   Both the Coffee County EMS server and ICC reportedly taken by the SOS Office in June 2021 operate on outdated software lacking critical security updates. The EMS server uses an August 2016 version of Windows, and Georgia has never installed any system security patches. Opp. Ex. 75 ¶ 29.

**RESPONSE:** Objection. The evidence cited does not support the stated fact.

Defendants admit that Alex Halderman's November 22, 2022 declaration states the purported facts, but do not admit that Mr. Halderman's declaration is fact.

Defendants do not admit that "Georgia has never installed any system security patches."

325.   Windows has released some 380 software updates for the version of Windows used on the Coffee County EMS server reportedly taken by the SOS Office in June 2021, including 165 "critical" updates that fix vulnerabilities that hackers are already actively exploiting. Opp. Ex. 75 ¶ 31.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. This fact is immaterial because the evidence does not support that these "critical" updates would have fixed the vulnerabilities in the voting system equipment in Coffee County.

326.   The Coffee County ICC workstation reportedly taken by the SOS Office in June 2021 uses a July 2015 version of Windows installed on the workstation in November 2019. Since then, the State has not installed any security updates on the ICC workstation. Opp. Ex. 75 ¶¶ 30, 27.

247

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

327.   Windows has released 184 software updates for the version of Windows used on the Coffee County ICC workstation reportedly taken by the SOS Office in June 2021, of which 101 are critical. Opp. Ex. 75 ¶ 30.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. This fact is immaterial because the evidence does not support that these "critical" updates would have fixed the vulnerabilities in the voting system equipment in Coffee County.

328.   The web browser history file contained in the forensic image of the ICC reportedly taken by the SOS Office in June 2021 indicates the system was at least briefly connected to the Internet on November 25, 2019, the same day Windows was installed. Opp. Ex. 75 ¶ 25.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. The fact is immaterial because the brief internet connection on November 25, 2019 is not evidence that the system in Coffee County was hacked.

329.   State Defendants tout their use of hash testing as ensuring the integrity of the software used in the Georgia's voting system. *See e.g.*, Opp.

Ex. 48 at 36:7-11, 38:9-17.

**RESPONSE:** Objection. The evidence cited does not support the stated fact and does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact.

First, the evidence cited is testimony from Gabriel Sterling during the 30(b)(6) deposition of the Secretary of State. The testimony provided by the deponent only states that "I mean, you have L & A testing before each and every one. After the last election we had hash testing of several -- in several different counties to make sure there wasn't anything that had been changed." Then, when asked, "Are you aware that multiple election security experts have testified that hash testing cannot detect malware?" Mr. Sterling responds, "No. And I -- from what little I do know about computer security from my learning over the last few years, that would be very difficult unless the people were -- it would take a her -- it would take a large effort to do -- to get around hash testing."

Defendants admit that Mr. Sterling stated that the Secretary of State's Office conducts L & A testing before each election, that after the referenced election the Secretary of State's Office did hash testing "in several different counties to make sure there wasn't anything that had been changed."

Second, the evidence is stated as an argument where Plaintiffs use the words "tout," and "ensuring," and "integrity."

330.   But the forensic images of the Coffee County EMS server reportedly taken by the SOS Office in June 2021 showed that the hash testing tool used during acceptance testing verified the hash values of only four files on the EMS server, out of 700 Dominion software application files and 27,000 files containing executable on the system. Thus, although there are numerous files on the system that could be modified by malware, Georgia or its vendor inspected only a tiny fraction during hash testing. Opp. Ex. 75 ¶ 40.

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact. The evidence is stated as an argument where Plaintiffs use the words "tiny," and "fraction."

331.   The dissemination of the Dominion software taken from the Georgia voting system equipment used in Coffee County and all other Georgia counties by SS and others provides countless individuals and entities a "roadmap" to hack Georgia elections—and the January 2021 Coffee County breach confirms that access to the system is not hard to procure. Opp. Ex. 75

¶ 6; Opp. Ex. 149 at 52:21-53:6; Opp. Ex. 138 at 192:16-193:6.

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact. The evidence is stated as an argument where Plaintiffs use the words "countless," and "hard."

332.   The KNOWink Poll Pads used in Coffee County were used to stream Netflix content over the internet. Opp. Ex. 172 at 19; Opp. Ex. 173 at 49:22-50:11; Opp. Ex. 151 at 120:2-121:6.

**RESPONSE:** Objection. The fact asserted is immaterial to the claims of this case.

333.   The Coffee County EMS computer and ICC tabulation computer had Windows game applications installed. Opp. Ex. 172 at 20; Opp. Ex. 173 at 50:15-52:9; Opp. Ex. 151 at 121:7-122:6.

**RESPONSE:** Objection. The fact asserted is immaterial to the claims of this case.

## L.   State Defendants Ignored All Indications of the Coffee County Breach, until Plaintiffs began to Uncover the Facts.

334.  State Defendants claim the SOS Office opened an investigation into the January 2021 Coffee County breach as soon as the SOS Office

learned of an allegation made by Scott Hall that the equipment had been infiltrated in February 2022. Opp. Ex. 272 at 21:20-23; Opp. Ex. 149 at 274:5-277:18.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Opp. Ex. 149 is unrelated to the stated fact and does not support the allegation that an investigation was made in January 2021. Further, Opp. Ex. 272 is not clear on what information is being provided or when an investigation occurred. Plaintiffs are mischaracterizing the evidence cited, as it states that "as soon as the Secretary learned that was the allegation being made, the Secretary has opened an investigation into the handling of that EMS server, and that investigation is ongoing." Finally, there is a lack of foundation cited for the portion of the cited evidence.

335. The SOS Office wrongly asserted that, when it purportedly opened an investigation in March 2022, "the call from Mr. Hall was the sole basis for this concern that there was some sort of compromise of the system[.]" Opp. Ex. 272 at 39:5-8.

**RESPONSE:** Objection. The stated fact is stated as an argument and does not comply with LR 56.1(B)(1). Plaintiffs state that the SOS Office "wrongly asserted." That is argumentative and an opinion. Further, the cited

evidence does not support the stated fact. The only portion provided is four lines in the middle of a paragraph, without any foundation provided.

336.   In December 2020, the SOS opened an investigation into a YouTube video showing Coffee County Election Supervisor Misty Hampton demonstrating ways to manipulate Georgia's voting software, with the EMS server password visible on her computer monitor. Opp. Ex. 286 at 2-3; Opp. Ex. 76.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it does not cite to evidence by page or paragraph number. To the extent that Plaintiffs intended to refer to the entirety of these documents, Defendant objects that such does not comply with LR 56.1(B)(1), which requires citation to evidence by page or paragraph number.

337.   The SOS sent an investigator to Coffee County who visited the elections office at least three times: on December 11, 2020 and January 20 and 26, 2021. Opp. Ex. 209 at 1-3, 18-25, 35-52.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

338.   During the investigator's third visit on January 26, 2021, Jeffrey Lenberg was present in the Coffee County elections office at the same time as

the investigator, working in Misty Hampton's office or in the EMS server room which is accessed from her office. Opp. Ex. 210 at 35-52.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

339.   The investigator did not appear to question Mr. Lenberg's presence or pursue the issue of unauthorized personnel being allowed in sensitive areas of the Coffee County elections office during his January 2021 visits. Opp. Ex. 210 at 35-52.

**RESPONSE:** Objection. The evidence cited does not comply with LR 56.1(B)(1) because it is stated as an argument rather than a statement of fact. The evidence is stated as an argument where Plaintiffs characterize what the investigator was doing.

340.   On September 28, 2021, the investigator submitted his summary of findings related to his Coffee County investigation. Opp. Ex. 76.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

341.   The summary found that the Coffee County Board of Elections and Misty Hampton violated SEB RULE 183.1-12-.05(3) Security of Voting System Components at County Elections Office or Designated County

Storage Area (for leaving a critical door unlocked). Opp. Ex. 76 at 5.

**RESPONSE:** Defendants admit that the Court may consider this

evidence for purposes of the summary judgment motion.

342.   The summary makes no mention of any unauthorized personnel

in the Coffee County elections office. Opp. Ex. 76 at 5.

**RESPONSE:** Objection. The fact is immaterial to the claims and

defenses in this case. The investigator not including mention of unauthorized

personnel does not relate to any claim or defense in the case.

343.   The SOS Office did not act on the finding that Misty Hampton

violated state regulations insofar as she received no repercussions from the

SOS Office or another Georgia agency for those violations. Opp. Ex. 76 at 5.

**RESPONSE:** Objection. The fact is immaterial to the claims and

defenses in this case. The lack of sanction for Misty Hampton does not relate

to any claim or defense in the case. Misty Hampton is not an employee of the

Secretary of State, or of another Georgia agency.

344.   Robert Sinners was a key "election denier" on the ground in

Georgia actively supporting Trump's "Big Lie" about the November 2020

election. Opp. Ex. 211 at 122:12-16, 244:7-9.

**RESPONSE:** Objection. The evidence cited does not support the stated

fact and does not comply with LR 56.1(B)(1) because it is stated as an

argument rather than a statement of fact. The evidence cited does not

contain the quote "election denier," or "Big Lie." The evidence is stated as an

argument where Plaintiffs characterize Robert Sinners as a "key 'election

denier' on the ground in Georgia actively supporting Trump's "Big Lie" about

the November 2020 election."

345.   Mr. Sinners initially claimed under oath *not* to have organized a

lawsuit filed against Coffee County by Shawn Still in or around December

2020/January 2021, but then admitted to flying to Coffee County on

December 12, 2020, with Alex Kaufman in a private plan to serve as a notary

for declarations collected from declarants he and Kaufman recruited at a

local Coffee County steakhouse; he further admitted that he and Kaufman

typed up the declarations, printed them out at a local hotel, and got them

signed by the declarants and notarized by Mr. Sinners during their 12 to 18-

hour stay in Coffee County. Opp. Ex. 211 at 35:11-42:5.

**RESPONSE:** Defendants admit that the Court may consider this

evidence for purposes of the summary judgment motion.

346.   Mr. Sinners testified that he did not know why the Shawn Still

lawsuit was dropped on January 7, 2021, the same day that the breach of

Georgia's voting system occurred in the Coffee County Election Office involving the SS Team among others. Opp. Ex. 211 at 42:6-10, 122:12-16, 244:7-9.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

347.   Mr. Sinners claimed to have had limited interaction with Eric Chaney and Misty Hampton because Coffee County was a "low-priority county," and concerns about the voting system were not within the scope of his role. Opp. Ex. 211 at 32:14-34:15.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

348.   Mr. Sinners was in touch with Eric Chaney and Misty Hampton around the same time regarding the November 2020 election, including ask for and receiving a letter to Secretary Raffensperger about Coffee County's inability to certify the election. Opp. Ex. 211 at 72:17-19, 82:13-86:17.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

349.   On the evening of January 7, 2021, just as SS completed its work in the Coffee County elections office, Mr. Chaney sent Ms. Hampton Mr.

Sinners' personal cellphone number and told her to switch to Signal (which enables users to delete encrypted messages they send and receive from all other user's devices in the same conversation, unlike other messaging apps that enable a user to delete messages only from their own device). Opp. Ex. 211 at 110:19-111:13; Opp. Ex. 172 at 23.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited does not explain what "Signal" is or what it does.

Defendants admit that the Court may consider that "On the evening of January 7, 2021, just as SS completed its work in the Coffee County elections office, Mr. Chaney sent Ms. Hampton Mr. Sinners' personal cellphone number and told her to switch to Signal" for purposes of the summary judgment motion.

350.   The SOS Office hired Mr. Sinners in February 2021, shortly after Mr. Lenberg spent five days accessing and testing sensitive components of Georgia's voting system in its operational environment in Coffee County; and the SOS Office has since promoted Mr. Sinners to a senior communications role. Opp. Ex. 211 at 123:20-124:15.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited does not explain that "Mr. Lenberg spent five days

accessing and testing sensitive components of Georgia's voting system in its
operational environment in Coffee County; and the SOS Office has since
promoted Mr. Sinners to a senior communications role."

Defendants admit that the Court may consider that "The SOS Office
hired Mr. Sinners in February 2021" for purposes of the summary judgment
motion.

351.   In November 2020, individuals at the Robbins and Taylor English
law firms appear to have assisted a movement in Georgia at that time
looking to raise doubts about the results of the 2020 Presidential election,
including by connecting the team with Robert Sinners, who also was part of
that same movement. Opp. Ex. 212 at 2-8.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1)
because it is not a statement of fact, but rather a statement of opinion given
the use of "appears to have" in its language. Further, the evidence cited does
not support the fact stated and the fact is immaterial to the claims and
defenses in this case. The actions of individuals in November 2020 are not
relevant to Plaintiffs' claims, as Plaintiffs have long insisted.

352.   On May 6, 2021, Dominion circulated to Georgia counties a
customer notification "that customers are being approached with offers or

requests to conduct a 'forensic audit' of their voting equipment." Opp. Ex. 213.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Notifications about actions of other individuals related to Dominion equipment are not relevant to the claims in this case.

353.   Also on May 6, 2021, Ms. Hampton's successor as Coffee County Elections Supervisor, James Barnes, emailed Georgia's then-State Elections Director Chris Harvey to report that he found a Cyber Ninjas business card for Doug Logan at the base of Hampton's former computer, and that this was alarming to him, because it suggested that "[i]f [Misty] did not use them, she was at the very least in contact." Opp. Ex. 127.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it characterizes Mr. Barnes' statement as argument rather than as a statement of fact. Further, the evidence cited does not support the respondents' fact. Further, the statement is immaterial to the issues in this case because all systems have vulnerabilities.

354.   Mr. Harvey directed the SOS Office's chief investigator, Frances Watson, to investigate whether there had been contact between Doug Logan and anyone at the Coffee County Elections Office. Opp. Ex. 127.

**RESPONSE:** Objection. The evidence cited does not support the respondents' fact. Further, the statement is immaterial to the issues in this case because all systems have vulnerabilities.

355.   The SOS Office's investigator spoke with James Barnes who said that "he and his Board have not been able to locate anything showing where Cyber Ninjas did any consulting for Coffee County." Opp. Ex. 214; Opp. Ex. 215; Opp. Ex. 149 at 77:23-81:2.

**RESPONSE:** Objection. The statement is immaterial to the issues in this case because what the Coffee County Board found in its investigation does not have a bearing on the issues in this case.

356.   In a recorded interview, Secretary Raffensperger later claimed that his office conducted a thorough investigation of the Coffee County incident in May 2021, including interviewing Misty Hampton Opp. Ex. 216.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

357.   No one had interviewed Ms. Hampton on behalf of the SOS Office or State of Georgia for well over a year after she resigned her position in the Coffee County Elections Office. Opp. Ex. 173 at 237:19-22.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

358.   Around the time that James Barnes reported the Cyber Ninja business card to the SOS Office, he also reportedly realized that the password to Coffee County's EMS server—a password provided by the SOS Office—no longer worked. Opp. Ex. 67 at 108:3-109:4.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, The fact does not comply with LR 56.1(B)(1) because it is not separately numbered.

359.   James Barnes reported the issue to SOS's Center for Elections, which promptly replaced the EMS server and the computer attached to the ICC on or about June 8, 2021. Opp. Ex. 67 at 108:3-109:4.

**RESPONSE:** State Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

360.   Mr. Barnes understood the SOS Office replaced the Coffee County EMS server and ICC workstation in or around June 2021 for fear

that it was compromised, per the Cyber Ninjas card. Opp. Ex. 67 at 159:25-162:12.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the fact does not comply with LR 56.1(B)(1) because it is not separately numbered.

361.   James Persinger identifies himself as a "computer forensic and cybercrime expert" retained by State Defendants' counsel in or about *May 2021*— the same time James Barnes alerted the SOS Office to the Cyber Ninjas card in the Coffee County Elections Office and Chris Harvey directed the SOS Office Investigative Unit to investigate potential unauthorized access to the voting equipment in Coffee County. Opp. Ex. 201 ¶¶ 3, 11.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is not separately numbered and the evidence cited does not support the statement, connecting two events that are not related to attempt to create a relationship.

362.   On or about June 29th, 2022 State Defendants' counsel requested that Persinger take possession of the Coffee County EMS server and Coffee

County Workstation computer to determine if he could gain access to the EMS server, discover when the EMS server was last access and who had accessed it, determine if the EMS server was connected to the Internet after the password was changed, determine whether the EMS server had been forensically imaged before he took possession of it, or determine if any other devices had been connected to the EMS server that were inconsistent with normal operations—but remarkably, State Defendants' counsel reportedly did not inform Persinger that it was potentially evidence related to an ongoing lawsuit and did not direct him to take reasonable measures to preserve the server's data. Opp. Ex. 201 ¶¶ 12, 14.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the fact does not comply with LR 56.1(B)(1) because it is not separately numbered and the evidence cited does not support the statement.

363.   Sometime around or shortly after June 29, 2022, Michael Barnes, the Director of the Center for Elections Systems at the SOS's Office, asked Persinger to reset the EMS server password to a known password. Opp. Ex. 201 ¶ 15.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the evidence cited does not support the statement.

364.   Persinger took possession of the Coffee County EMS server on or around July 1, 2022. At that time, he and Michael Barnes executed an *evidence* chain of custody form to document the change in possession of the EMS server and workstation, even though Persinger claims under oath nobody informed him that it was potentially evidence related to an ongoing lawsuit. Opp. Ex. 201 ¶¶ 16, 17.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is not separately numbered and is stated as argument. Further, the evidence cited does not support the statement, characterizing statements.

365.   Persinger began his work on the Coffee County EMS server on or about July 5, 2022. He started by creating a forensic image of the EMS server. Opp. Ex. 201 ¶ 22.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is

unrelated to whether Georgia's Dominion voting system is constitutional.

366.   Upon examination, Mr. Persinger noted that the internal clock on the Coffee County EMS server was incorrect. Opp. Ex. 201 ¶ 20.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

367.   Persinger reset the Coffee County EMS server password after he created a forensic image of the server—on or about July 5, 2022. Opp. Ex. 201 ¶ 23.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

368.   Persinger claims he did not alter any other files on the Coffee County EMS server other than one file, associated with the password reset. Opp. Ex. 201 ¶ 49.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

369.   Dr. Halderman compared the forensic image of the Coffee County

266

EMS server made by Persinger on or about July 5, 2022 to other forensic images of that same EMS server, including created by the SS Team in January 2021 and another created on or about September 22, 2022, by Plaintiffs' litigation consultant. Opp. Ex. 187 ¶¶ 11-12, 15.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

370.   If Persinger had only changed one file associated with his password reset on the Coffee County EMS server, the July 5, 2022 and September 22, 2022 forensic images would be identical except for that single file. Opp. Ex. 187 ¶ 12.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

371.   Persinger in reality caused *hundreds* of changes to the Coffee County EMS server. Opp. Ex. 187 ¶¶ 10, 16. While the server was in Mr. Persinger's possession, 185 new files or folders were created, 349 were deleted, 21 were appended to, and 719 were otherwise modified. Opp. Ex. 187 ¶ 16, Ex. A.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the evidence cited does not support the statement.

372.   The files that Persinger altered include files that contain evidence of what occurred during the January 2021 Coffee County breach. Opp. Ex. 187 ¶ 18. These include election project databases, Windows registry files (which store the system configuration and user settings), and numerous kinds of log files. Opp. Ex. 187 ¶ 18. Log files are files that document important activities relating the EMS server's operation. Opp. Ex. 187 ¶ 19. They are a primary source of information for experts when analyzing a computer's prior activity. Opp. Ex. 187 ¶ 19.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, this fact is disputed by Mr. Persinger's declarations. Opp. Ex. 201 ¶¶ 22-26.

373.   Persinger's changes to the Coffee County EMS server are not standard forensic practice. Opp. Ex. 187 ¶ 4. Standard practice would be to

perform all analysis using a *copy* of the data from the server, not to perform

analysis on the original server itself. Opp. Ex. 187 ¶ 4.

**RESPONSE:** Objection. The fact is immaterial to the claims and

defenses in this case because the scope of the Coffee County investigation is

unrelated to whether Georgia's Dominion voting system is constitutional.

Further, this fact is disputed by Mr. Persinger's declarations. Opp. Ex. 201

¶¶ 19, 22-26.

374.   Apart from a single generic acceptance testing document for an

EMS server, Defendants claim they have no documents—including emails,

text messages, chain of custody forms, etc.—regarding this unusual

replacement of a county's EMS server and ICC workstation (which State

Defendants represented to this Court in September 2022 was a significant

undertaking and that is why they declined to replace that same equipment in

Coffee County at that time when replacing other voting system components

then). Opp. Ex. 197; *see also* Opp. Ex. 67 at 118-21, 131-32, 134-36 (testifying

that no documentation of the events exists); Opp Ex. 202 (noting that State

Defendants had not preserved additional documents to produce, despite

having had knowledge that the server was potentially compromised and so

would be highly relevant to Plaintiffs' case).

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the evidence cited does not support the statement.

375.   State Defendants made no serious investigative efforts to look into the January 2021 Coffee County breach until after Plaintiffs began investigating it in the spring of 2022. State Defendants did not refer the matter to the GBI until August 2022. Opp. Ex. 150 at 176:25-177:22; Opp. Ex. 151 at 167:4-18; Opp. Ex. 203.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. State Defendants do not dispute that they referred the matter to the GBI in August 2022 after Plaintiffs withheld evidence in their possession related to the Coffee County breach for months.

376.   However, from March 14, 2022 to present, State Defendants repeatedly claimed an "ongoing investigation" was underway regarding the

270

January 2021 Coffee County breach in order to shield discovery regarding that breach. Opp. Ex. 204 at 5; Opp. Ex. 203; Opp. Ex. 205; Opp. Ex. 206; Opp. Ex. 207; Opp. Ex. 208.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the evidence cited does not support the statement.

377.   State Defendants previously asserted that the state investigation of the January 2021 Coffee County breach would be completed and Georgia would be able resolve any security issues before the November 2022 elections—but that did not happen. Opp. Ex. 142 at 53:11-17, 80:3-5.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the evidence cited does not support the statement.

378.   Gabriel Sterling, the SOS Office's COO, publicly announced in April 2022 that there was no evidence of a voting system breach in Coffee County, claiming that "it didn't happen"—which was not an accurate statement. Opp. Ex. 217.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional.

379.   On October 1, 2022, Gabriel Sterling re-tweeted a statement by Dr. Ben Adida, State Defendants' prior expert in this case and a SOS Office election consultant, that there was no cause for concern about the January 2021 Coffee County breach because it lasted only a few hours, even though the statement was inaccurate. Opp. Ex. 149 at 46:9-48:5; Opp. Ex. 86.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and is not separately numbered.

380.   Sixteen months after Mr. James Barnes reported the Cyber Ninjas business card and the purported EMS server password issue to the SOS Office— and just three months before the November 2022 midterm elections—State Defendants suddenly acknowledged that they had "questions" about the January 2021 Coffee County breach and referred the issue to the Georgia Bureau of Investigations. *See* Opp. Ex. 142 at 11:7-17.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and is not separately numbered.

381.   On August 15, 2022, an investigation was opened by the GBI relating to the "Coffee County Server Security"—no status report or information has been provided about that investigation in months, and nobody has received any criminal charges regarding the January 2021 Coffee County breach. Opp. Ex. 149 at 115:4-24; Opp. Ex. 218.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the Coffee County investigation is unrelated to whether Georgia's Dominion voting system is constitutional. Further, the fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and is not separately numbered.

**M.**   **Georgia's Election System Also Lacks Procedural Safeguards Because it is Un-Auditable.**

382.   Under Georgia law, an RLA is a protocol using "statistical methods" that is "designed to limit to acceptable levels the risk of certifying a

273

preliminary election outcome that constitutes an incorrect outcome."

O.C.G.A. 21-2-498(a)(3).

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1)

because it is a legal conclusion.

383.   A risk-limiting audit ("RLA") is not a tabulation; rather, an RLA

statistically checks whether an accurate manual count of the paper trail

would find the same winner(s). Opp. Ex. 219 ¶ 14.

**RESPONSE:** State Defendants admit that the Court may consider this

evidence for purposes of the summary judgment motion.

384.   Georgia has never conducted a legitimate RLA. Opp. Ex. 220 at

48:3-4; Opp. Ex. 221 ¶¶ 23-32; SMF Ex. 44 ¶¶ 13-17; SMF Ex. 42, Mar. 2022

Stark Decl. at 31 ¶ 87(g).

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1)

because it is stated as argument rather than as a statement of fact.

385.   In a proper RLA, more and more reliable, voter-verified ballots

are examined until either (a) the voter-verified selections listed on the

examined ballots give convincing evidence that the reported winners really

won or (b) the voter-verified selections listed on all the ballots have been

manually inspected so the correct outcome is known. Opp. Ex. 219 ¶ 26.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

386.   In Georgia, the initial QR code tabulation is the *only* tabulation in an election, unless there is a full, hand recount. Opp. Ex. 84 at Ex. B, Dominion Solution Order, § 3.1; Opp. Ex. 71 at 72:2-9; Opp. Ex. 85 at 71:3-72:8.

**RESPONSE:** Objection. The evidence cited does not support the stated fact. The evidence cited does not say that "the initial QR code tabulation is the *only* tabulation." In fact, during Mr. Harvey's deposition, when the question was presented to him, he stated "I'm not sure about that."

387.   The audit and hand count of the 2020 Presidential race in Georgia did not check the outcome of the election, and the thing it was positioned to check—the tabulation of validly cast ballots—was not checked properly. SMF Ex. 42 ¶¶ 23-45.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion.

388.   The hand recount conducted for the 2020 Presidential election relied upon a tool that Mr. Richard Barron, former Fulton County Election Supervisor, called "a complete joke" – a piece of software called "Arlo" that

275

was "not built" for the purpose of an audit. Opp. Ex. 70 at 147:7-149:14; Opp. Ex. 48 at 202:10-203:24.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because Plaintiffs claim the 2020 Presidential election is not in doubt and the fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

389.   Georgia's November 2022 Presidential election audit "was not a genuine RLA, nor an effective audit." SMF Ex. 44 at 4.

**RESPONSE:** Objection. This is not a statement of fact as this is disputed.

390.   Georgia law only requires an RLA of a single statewide race every two years. Ga. Comp. R. & Regs. 183-1-15-.04.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion.

391.   The SOS Office called such infrequent auditing as required by Georgia law "crazy." Opp. Ex. 149 at 325:3-25.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional.

392.   Philip Stark, a leading expert in election auditing, has testified that "[a] risk-limiting audit of one contest every two years is not enough, no matter how rigorous that audit is." Opp. Ex. 222 ¶ 17.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional.

393.   Post-election audits will only flag an incorrect election outcome if they are based on a trustworthy paper trail (i.e., voter-*verified* selections that are tabulated on a paper ballot) produced by a voting system that is software independent (i.e., immune to software changes altering an election outcome without detection). SMF Ex. 55 at PDF p. 3, ¶ 4; Opp. Ex. 90 ¶ 8; SMF 44 ¶ 18.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional.

394.   If there is no trustworthy paper trail, a true tabulation audit is not possible, because even an accurate full manual recount would not necessarily reveal who won. SMF Ex. 55 at PDF p. 3, ¶ 4; Opp. Ex. 92 at 1-2; SMF Ex. 42 ¶ 85; Opp. Ex. 56 at 30:17-31:2.

277

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional.

395.   Unlike HMPBs, BMD ballots do not produce a trustworthy paper trail, even if proper custody procedures are followed. This is because a malfunctioning or compromised BMD could print a human-readable text summary that does not match what the voter selected on the touchscreen or what the QR encoded. Opp. Ex. 90 ¶¶ 5, 10 n.31, 19 n.11; SMF Ex. 44 ¶ 9; Opp. Ex. 220 at 19:9-20:06, 20:23-21:14; Opp. Ex. 55 at 95:23-96:6; see also Opp. Ex. 128 at 72:2-15; Opp. Ex. 129 at 67:21-69:19; 100:17-101:13; Opp. Ex. 141 at 35:17-36:9; Opp. Ex. 130 at 34:1-37:2; Opp. Ex. 99 at PDF p. 165, ¶¶ 6, 15; Opp. Ex. 56 at 35:15-24; 37:16-38:7, 48:1-9; Opp. Ex. 87 at 43:11-14, 44:6-8, 45:17-46:1, 46:4-11, 81:24-82:2, 123:21-124:8; Opp. Ex. 105 at 285:4-14, 301:2-24; *see also* Opp. Ex. 48 at 81:15-84:1; Opp. Ex. 219 ¶ 32; Opp. Ex. 54 ¶¶ 41, 55; SMF Ex. 44 ¶ 5; Opp. Ex. 223 ¶¶ 11, 13,  21; Opp. Ex. 224 ¶ 6(c); SMF Ex. 42 ¶ 86; Dkt. 1131, Halderman Report at 6-7; Dkt. 1589, Feb. 2, 2023 Stark Decl., ¶ 2, Ex. 1.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether

Georgia's Dominion voting system is constitutional.

396.   Election security experts recognize that audits of elections conducted primarily on BMDs cannot reliably detect whether computer errors or hacking altered votes or election results. Opp. Ex. 99 at PDF p. 165, ¶¶ 6, 15; SMF Ex. 44 ¶ 5; Dkt. 1589, Feb. 2, 2023 Stark Decl., ¶ 3, Ex. 2; Opp. Ex. 55 at 95:23-96:6; Opp. Ex. 92; Opp. Ex. 56 at 48:5-9, 109:1-3, 135:23-136:2; *see also* Opp. Ex. 91 at 77 ("[T]here is no audit remedy that can confirm the reliability and accuracy of the BMD system, as Dr. Stark has stressed.").

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional.

397.   Even if Georgia conducted a post-election audit for every election contest—and even if those all properly-conducted RLAs—that would not mitigate the security risks of Georgia's election system, because audits cannot confirm that any votes were accurately recorded. *See, e.g.*, SMF Ex. 42 ¶ 87(b); SMF Ex. 55 at PDF p. 3, ¶ 10; Opp. Ex. 90 ¶ 10.); Opp. Ex. 71 at 70:9-12, 173:8-13.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether

Georgia's Dominion voting system is constitutional.

398.   Even if elections conducted primarily on BMDs could be properly audited by RLAs, Georgia would need to change its election procedures—including the physical security of the voted ballots, the physical accounting for ballots, and checks of chain of custody—to conduct a proper one. Opp. Ex. 220 at 19:9-20:06, 20:23-21:14; SMF Ex. 44 ¶ 6).

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional and does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

399.   To conduct what qualifies as an RLA, Georgia would also need the ability to correct an election outcome before certification if the outcome is wrong. Opp. Ex. 220 at 48:11-12.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional and does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

400.   Current Georgia law does not require a full manual recount to correct inaccurate results. *See* Opp. Ex. 225 ¶¶ 27-28; Opp. Ex. 220 at 48:9-25; Opp. Ex. 93 ¶ 15.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case because the scope of the audit is unrelated to whether Georgia's Dominion voting system is constitutional and does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and is a legal conclusion.

401.   If there are significant security vulnerabilities left unremedied in an election system like Georgia's, "the effects of stealing individual voters' votes and even altering election outcomes are likely to go undetected. . . ." Opp. Ex. 93 ¶ 15; *see also* Opp. Ex. 287.

**RESPONSE:** Objection. The stated fact is stated as an argument and does not comply with LR 56.1(B)(1). The stated fact argues that there are security vulnerabilities in Georgia, which is not a fact. Further, this is the opinion of an expert, and is not a fact. There is no foundation provided for this assertion.

402.   Optical scanner hacking, contrary to BMD hacking, is "reliably detectable [through RLAs] and . . . is fully correctable without an election

doover," particularly because such hacking does not affect the paper ballot itself, which then can serve as an independent, reliable record of the voter's selections if the ballot contains voter-verified selections that are used for tabulation. Opp. Ex. 56 at 132:24-133:12; *see also* SMF Ex. 59 ¶ 75.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) and is inadmissible. The declarant lacks personal knowledge because it is based on a hypothetical scenario posed in Plaintiffs' expert report as opposed to analysis or the purported expert's historical experience. *See, Riley v. Univ. of Alabama Health Servs. Found., P.C.,* 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

403.   Hand-marked paper ballots allow officials to conduct a secure and accurate election even in the presence of voting equipment that may have been hacked. Opp. Ex. 56 at 76:20-77:5.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B) because the declarant lacks personal knowledge and the fact is actually just speculation. Further, the fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

## N.   **Curling Plaintiffs are Georgia Electors Who Have Suffered Particularized Harm.**

404.   Georgia's current voting system has forced Donna Curling to choose between (1) voting on a system she does not believe will reliably count her vote using a ballot she cannot verify and which does not leave a software-independent paper trail; and (2) voting absentee using a paper ballot. Opp. Ex. 226 ¶ 5.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The fact refers to "Georgia's current voting system" but references a declaration paragraph from Plaintiff Donna Curling that refers to a 2017 primary election in Georgia. The current voting system is entirely different from the system cited as evidence for the fact.

405.   Because Ms. Curling was concerned that Georgia's in-person DRE system could not securely record her votes for the June 2017 election, she elected to vote using an absentee ballot. Opp. Ex. 273 ¶ 12.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The evidence cited refers to a declaration provided by Plaintiff Donna Curling in May of 2019 recalling her decision to vote "grudgingly" on DRE machines in prior elections and professing an *intent* to vote by absentee ballot in the future.

406.   Before the June 2017 election, Ms. Curling called the election office to determine the procedures for voting absentee and was told she could receive an absentee paper ballot by going to the County Annex and filing a request. When Ms. Curling went to the County Annex on the Friday before Election Day to receive an absentee ballot, she was informed that she could only receive an absentee ballot by mail. Opp. Ex. 273 ¶ 7-11.

**RESPONSE:** Objection. The evidence cited does not support fact stated. Further, the evidence cited is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

407.   Ms. Curling requested an absentee ballot for the June 2017 election and it arrived on June 19, 2017, the day before Election Day. Opp. Ex. 273 ¶ 7-11.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Mr. Curling requested the paper absentee ballot two days before the election, those days being weekend days. The statement is a mischaracterization of the evidence and does not comply with LR 56.1(B)(1).

408.   When Ms. Curling took her absentee ballot for the June 2017 election to her precinct, she was informed that she must instead take it to the

county election office. Opp. Ex. 273 ¶¶ 7-11.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is not separately numbered. Further, the evidence cited does not support fact stated. Further, the evidence cited is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

409.   Ms. Curling took her absentee ballot for the June 2017 election to the county election office and confirmed with the office clerk that she had followed the proper procedures. Opp. Ex. 273 ¶¶ 2-5, 7-11.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is not separately numbered. Further, the evidence cited does not support fact stated. Further, the evidence cited is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

410.   Ms. Curling did not learn until filings in this case that her June 2017 ballot was not counted and she had been disenfranchised. Opp. Ex. 273 at 4; SMF Ex. 17, Dkt. 627 ¶ 15.

**RESPONSE:** Partial Objection. Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion except

285

that the allegation contained in the fact that Ms. Curling has "been

disenfranchised" is argumentative and constitutes a legal conclusion and

therefore does not comply with LR 56.1(B)(1).

411.   Following Ms. Curling's discovery that her absentee ballot in the

June 20, 2017 election was not counted, she reluctantly voted on DRE

machines in subsequent elections. Opp. Ex. 273 ¶ 12.

**RESPONSE:** Objection. The cited evidence does not support the stated

fact. Further, the stated fact is argumentative and does not comply with LR

56.1(B)(1). The word "reluctantly" is not stated in the cited evidence and is

argumentative. State Defendants admit that the Court may consider that

"Ms. Curling[] discover[ed] that her absentee ballot in the June 20, 2017

election was not counted, she [] voted on DRE machines in subsequent

elections."

412.   Ms. Curling also lacks confidence in Georgia's BMD system

because it is susceptible to manipulation and not transparent, and voters

using Georgia's BMDs cannot very their ballots since the barcode—not the

human-readable portion of the paper ballot—is used to tabulate votes. Opp.

Ex. 228 at 67:7-17, 73:15-23, 83:15, 95:25-96:10, 99:16-23, 102:6-12.

**RESPONSE:** Objection. The evidence on which the statement relies is

inadmissible because it is not based on the declarant's personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also, Riley v. Univ. of Alabama Health Servs. Found., P.C.,* 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

413.   Ms. Curling did not receive an absentee ballot for the August 2020 election, even though she timely submitted an application for one. Dkt. 1598, Feb. 10, 2023 Curling Decl. ¶ 10.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. While the evidence cited does say Ms. Curling applied on April 28, 2020 for an absentee ballot for the June 9, 2020 General Primary, it states only that she "opted to receive absentee ballots for the entire election cycle as [she[ was eligible to do as a voter who is over 65 years old." There is no evidence suggesting that this "opt-in" was properly carried out.

414.   Ms. Curling reluctantly again attempted to vote absentee in the 2020 Presidential primary, because of her concerns about verifying her vote

with Georgia's BMD system. Opp. Ex. 227 ¶¶ 6, 12; Opp. Ex. 228 at 75:3-6.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. There is no evidence that Ms. Curling was reluctant, even in her own words, to do anything in Paragraph 6 of Opp. Ex. 227. And there is no Paragraph 12 in Opp. Ex. 227, so there is nothing to glean from that erroneously cited portion. Further the citation to Opp. Ex. 228 at 75:3-6 merely states that Ms. Curling does not know whether her vote was counted. This fact is entirely unsupported by the evidence cited.

415.   Although she applied for an absentee ballot six weeks before the 2020 Presidential primary election, Ms. Curling did not receive her ballot until the day before election day. Opp. Ex. 227 ¶ 6; Opp. Ex. 228 at 112:15-24.

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The citation to Opp. Ex. 228 refers to the General Presidential Election, not the 2020 Presidential primary election. Defendants admit that the citation to Opp. Ex. 227 ¶6 establishes that Ms. Curling alleges she did not receive her ballot until the day before election day.

416.   Because her absentee ballot for the 2020 Presidential primary election arrived one day before election day, Ms. Curling took her ballot to a drop box, rather than mailing it in, and did not learn until filings in this case

that her ballot was not counted and she had been disenfranchised. Opp. Ex.

227 ¶ 4; SMF Ex. 17, Dkt. 627 ¶ 15.

**RESPONSE:** Objection. The evidence cited does not support the fact

stated. State Defendants further object that Plaintiffs' citations to pleadings

do not comply with LR 56.1(B)(1) because they are not citations to evidence.

417.   When Ms. Curling voted in person on Georgia's BMD system in a

municipal election, she "ha[d] no way of knowing" if her vote counted. Opp.

Ex. 228 at 41:7-12, 42:24-43:4, 83:16-19, 99:22-23.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1)

because it is not separately numbered. Further, the evidence on which the

statement relies is inadmissible because it is not based on the declarant's

personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used

to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated."); *see also, Riley v.*

*Univ. of Alabama Health Servs. Found., P.C.,* 990 F. Supp. 2d 1177, 1187

(N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on

personal knowledge and is not competent summary judgment evidence.")

418.   Ms. Curling intends to vote absentee in the future despite its

burdens and challenges, including the possibility of disenfranchisement, because she cannot trust Georgia's BMD system. Opp. Ex. 228 at 74:14-19; 112:2-113:2; 124:18-125:5; Opp. Ex. 226 ¶ 12; Opp. Ex. 227 ¶¶ 7, 11.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. "burdens and challenges" are not statements of fact and are only arguments to disputed statements. Ms. Curling's opinions about the BMD system are not statements of fact.

419.   If Georgia implemented a voting system that provides voters with hand-marked paper ballots, such that she could review and verify her votes, Ms. Curling would find it less risky to cast an in-person ballot and she would exercise her right to vote in-person on Election Day. Opp. Ex. 227 ¶ 8.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. Ms. Curling's opinion is an argument and not a statement of fact.

420.   Secretary Raffensperger has agreed that Fulton County Defendants' actions have disenfranchised voters like Ms. Curling. Opp. Ex. 229 ("The Department of Justice needs to take a long look at what Fulton County is doing and how their leadership disenfranchises Fulton voters

through incompetence and malfeasance.").

**RESPONSE:** Objection. The evidence cited does not support fact stated. Further, Plaintiffs stated fact is argumentative and does not comply with LR 56.1(B)(1). The cited evidence does not state that "Fulton County Defendants' actions disenfranchised voters like Ms. Curling." That is an argumentative opinion and is not a fact.

421.   Ms. Price had been concerned about DRE machines since the early 2000s and filed a complaint about the DRE machines in 2006. Opp. Ex. 230 at 77:9-78:24.

**RESPONSE:** Objection. The stated fact is immaterial to the claims of this case. Ms. Price's opinion about DREs and that she filed a complaint are not statements of fact, nor are they relevant to this case.

422.   Plaintiff Donna Price voted in person until about 2018, at which point she started voting absentee after hearing what had happened in Kennesaw. Opp. Ex. 230 at 77:9-16.

**RESPONSE:** Objection. The evidence cited does not support fact stated. Further, the evidence cited is hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

423.   Under Georgia's current BMD system, Ms. Price is forced to choose between voting with a ballot that she cannot verify or voting absentee. Opp. Ex. 230 at 45:7-46:12.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

424.   Voting absentee has its own barriers for Ms. Price; for example, Ms. Price cannot see that the ballot goes into a lockbox or scanner like her fellow voters who vote in person can. Opp. Ex. 230 at 45:7-46:12; Opp. Ex. 231 ¶¶ 8, 11; Opp. Ex. 234 ¶¶ 7-8.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

425.   If she were to vote on a Georgia BMD, Ms. Price would not be able to verify the selections she made because she cannot read QR code, thus, Ms. Price would have no primary record of the selections she made. Opp. Ex. 230 46:13-47:14; Opp. Ex. 234 ¶¶ 8-10.

**RESPONSE:** Objection. The cited evidence does not support the stated fact. Ms. Price's opinion about where a vote could be verified is not a statement of fact. State Defendants further object that the stated fact is argumentative and does not comply with LR 56.1(B)(1).

292

426.   Without a durable, software-independent, voter-verified record to audit, Ms. Price has no confidence that the results of a given election conducted using Georgia's BMD system will be accurate and reliable. Opp. Ex. 234 ¶ 8.

**RESPONSE:** The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than a statement of fact and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.") . Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

427.   If she were to vote on a Georgia BMD, Ms. Price believes she would merely be going through the motions of an action that simulates voting, while giving up her vote to whatever determines what is in the QR code. Opp. Ex. 230 at 48:1-15.

**RESPONSE:** The fact does not comply with LR 56.1(B)(1) because it is

stated as argument rather than a statement of fact and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge. *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.") . Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

428.   Ms. Price is concerned that Georgia does not perform risk-limiting audits that could help secure her right to vote with an otherwise reliable voting system. Opp. Ex. 230 at 45:7-46:12.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than a statement of fact and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge. *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent

summary judgment evidence.") . Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

429.   Because of Georgia's BMDs' infirmities, Ms. Price plans on voting on an absentee paper ballot in future elections even though she finds that absentee voting imposes other burdens. Opp. Ex. 231 ¶ 8.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because reference to the "BMD's infirmities" is stated as argument rather than a statement of fact and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.") . Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

430.   On January 27, 2020, Ms. Price requested an absentee ballot for the March 24,2020 election, which she received on February 21. 2020. Opp. Ex. 231 ¶ 12.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.  Defendants further state that Ms. Price's ballot was accepted and her vote was counted.  (Price ENET Report, Doc. 1569-21).

431.   Ms. Price promptly mailed her completed absentee ballot back ahead of the primary, which was then scheduled for March 24, 2020. Opp. Ex. 231 ¶ 12.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.  Defendants further state that Ms. Price's ballot was accepted and was counted. (Price ENET Report, Doc. 1569-21).

432.   The SOS Office then sent her another ballot for the June 2020 election that she had not requested, so she destroyed it, believing it to be an error. Opp. Ex. 231 ¶ 12; Opp. Ex. 230 at 118:14-119:9.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. Further, the fact does not comply with LR 56.1(B)(1) because it is not separately numbered.

433.   Ms. Price requested a ballot for the August 2020 election, but

never received a ballot and does not know why. Dkt. 1599, Feb. 2023 Price

Decl. ¶¶ 3-4; Opp. Ex. 230 at 118:14-119:9.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is stated as argument rather than as a statement of fact. Further,

the fact does not comply with LR 56.1(B)(1) because it is not separately

numbered.

434.   Ms. Price could not vote in the August 2020 election because she

never received an absentee ballot and was not willing to vote using the BMD

system, which she has no confidence in. Dkt. 1599, Feb. 2023 Price Decl. ¶ 3.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is stated as argument rather than as a statement of fact. Further,

the fact does not comply with LR 56.1(B)(1) because it is not separately

numbered.

435.   When the date of the Mary 24, 2020 primary changed, Ms. Price

contacted DeKalb County because she was concerned her original ballot

would not be counted. The County election office told her to fill out another

application. She did so, but never received another absentee ballot. Opp. Ex.

231 ¶ 12.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is stated as argument rather than as a statement of fact. Further, the fact does not comply with LR 56.1(B)(1) because it is not separately numbered.

436.   The action of casting his own individual vote and personally exercising his constitutional right – and having confidence that his vote will be reliably counted—is paramount to Jeffrey Schoenberg. Opp. Ex. 232 ¶¶ 7-8.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. Further, the fact does not comply with LR 56.1(B)(1) because it is not separately numbered.

437.   Mr. Schoenberg would like to vote in person in future elections, because it is his preferred method of voting. Opp. Ex. 233 at 92:23.

**RESPONSE:** Defendants admit that the Court may consider this evidence for purposes of the summary judgment motion.

438.   However, he is concerned that he will be disenfranchised by Georgia's current BMD voting system—that his vote will not be counted accurately, and nobody would even be able to tell after the fact. Opp. Ex. 235 ¶ 10.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than a statement of fact, mischaracterizes the underlying evidence in this case and is not separately numbered..  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")  Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

439.   Mr. Schoenberg is also concerned about the reliability of voting by absentee ballot in Georgia due to mail delays and problems obtaining ballots and having them counted when returned. Opp. Ex. 236 ¶ 12.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than a statement of fact and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or

speculation is not based on personal knowledge and is not competent

summary judgment evidence.") . Further, the evidence cited is based on

hearsay, which cannot be considered at summary judgment. Fed. R. Evid.

802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).  Further, the

fact does not comply with LR 56.1(B)(1) because it is not separately

numbered.

440.   Mr. Schoenberg, therefore, decided to vote in-person in the 2020

Presidential Preference Primary, but found Georgia's BMD process so

disturbingly unreliable that he planned to vote absentee thereafter. Opp. Ex.

233 at 132:16-133:16.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is stated as argument rather than a statement of fact,

mischaracterizes the underlying evidence in this case and is not separately

numbered.  In addition, the declarant's belief about the BMDs is speculative,

conclusory and not based on the declarant's personal knowledge.  *Riley v.*

*Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187

(N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on

personal knowledge and is not competent summary judgment evidence.")

Further, the evidence cited is based on hearsay, which cannot be considered

at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

441.  Mr. Schoenberg's experience voting absentee in a January 5, 2021, Public Service Commission/special run-off combination election confirmed his concerns that absentee ballots are also an unreliable way to cast a vote in Georgia. Opp. Ex. 232 ¶ 10; Opp. Ex. 233 at 94:12-95:3.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than a statement of fact and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.") . Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

442.  Mr. Schoenberg requested an absentee ballot for the January 5, 2021 election, received confirmation of his request, but never received the ballot, with no further communication. Opp. Ex. 232 ¶ 10; Opp. Ex. 233 at

301

94:12-95:3.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)
because it is opinion rather than a statement of fact.  Further, the fact does
not comply with LR 56.1(B)(1) because it is not separately numbered.

443.   When he realized his ballot would likely not arrive in time, Mr.
Schoenberg voted early in person on a Georgia BMD in January 2021. Opp.
Ex. 232 ¶ 10; Opp. Ex. 233 at 94:12-95:3.

**RESPONSE:** Objection in part.  Defendants object to Mr. Schoenberg's
"realization" as it is opinion and not a statement of fact.  However,
Defendants admit that the fact that Mr. Schoenberg voted successfully in the
January 2021 runoff and that Court may consider this fact for purposes of the
summary judgment.

444.   Although Mr. Schoenberg was able to make his selections on a
Georgia BMD and scan his ballot in January 2021, he could not verify the
scannable portion of the ballot (the QR code) and left the polling place
without confidence that his vote would be counted as cast. Opp. Ex. 232 ¶¶
10-11.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)
because it is stated as argument rather than a statement of fact and

mischaracterizes the underlying evidence in this case.  In addition, the

declarant's belief is speculative and not based on the declarant's personal

knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F.

Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or

speculation is not based on personal knowledge and is not competent

summary judgment evidence.") . Further, the evidence cited is based on

hearsay, which cannot be considered at summary judgment. Fed. R. Evid.

802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).  Further, the

fact does not comply with LR 56.1(B)(1) because it is not separately

numbered.

445.   Mr. Schoenberg feels that choosing between voting in-person or

absentee in Georgia is akin to choosing "this poison rather the other." Opp.

Ex. 233 at 132:12-133:3; *see also* Opp. Ex. 236 ¶¶ 9-11.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is stated as argument rather than a statement of fact and

mischaracterizes the underlying evidence in this case.  In addition, the

declarant's belief is speculative and not based on the declarant's personal

knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F.

Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or

speculation is not based on personal knowledge and is not competent summary judgment evidence."). Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

446.   Mr. Schoenberg's vote is deeply personal and is a unique expression of his individual freedoms and his unique combination of values, beliefs, judgments, perspectives, and life experiences. Opp. Ex. 232 ¶¶ 7-8.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is argument and a statement of opinion rather than a statement of fact.

447.   Another identical ballot would still differ from Mr. Schoenberg's because what his vote represents to him and how he reached his exact selections is unique. Opp. Ex. 232 ¶ 8.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is a statement of opinion rather than a statement of fact.  Further, the fact is immaterial to the claims and defenses in this case.

448.   The loss of his vote would be a profound and personal harm to Mr. Schoenberg, regardless of the outcome of the election. Opp. Ex. 232 ¶ 8; Opp. Ex. 233 at 125:15-126:6.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is a statement of opinion rather than a statement of fact.  Further, the fact is immaterial to the claims and defenses in this case.

449.   Voting absentee deprives Mr. Schoenberg of the civic experience and his right to vote alongside his fellow citizens, something deeply important to Georgia voters as SOS Office COO Gabriel Sterling emphasized. Opp. Ex. 236 ¶ 10; Opp. Ex. 237 ("[H]istorically, they do not like voting by mail in Georgia. Part of that has to do with the history of our state. Martin Luther King Jr. is from there. People have fought for the right to vote. They like the pageantry of it. They like going to see their neighbors in line. It's something that helps their heart.").

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than a statement of fact, is not separately numbered and mischaracterizes the underlying evidence in this case.  In addition, the declarant's belief  and his reference to the preference of other Georgia voters is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent

summary judgment evidence."). Further, the evidence cited is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer,* 193 F. 3d 1316, 1322 (11th Cir. 1999).

450.   On the other hand, voting on Georgia's BMDs would risk disenfranchisement for Mr. Schoenberg. Opp. Ex. 236 ¶ 10.

**RESPONSE:** Objection.  The evidence in this case does not support the fact stated. The stated fact does not comply with LR 56.1(B)(1) because reference to a "risk" of "disenfranchisement" is stated as argument rather than a statement of fact and mischaracterizes the evidence in this case.  In addition, what could be a "risk" in the future is speculative and not based on the declarant's personal knowledge.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

451.   Mr. Schoenberg described verifying the printed text on his Georgia BMD ballot as "a silly thing to do" because what he was reading is not what the machine would read. Opp. Ex. 233 at 98:3-13.

**RESPONSE:** Objection.  The paragraph does not comply with LR 56.1(B)(1) because it is stated as argument as to Mr. Schoenberg's thoughts

and feelings about verifying the printed text of his ballot rather than as a
statement of fact.   This paragraph is also objectionable to the extent any
reference to what a BMD can "read" mischaracterizes the underlying
evidence and is inadmissible because it is not based on the declarant's
personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used
to support or oppose a motion must be made on personal knowledge, set out
facts that would be admissible in evidence, and show that the affiant or
declarant is competent to testify on the matters stated."); *see also Riley v.
Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187
(N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on
personal knowledge and is not competent summary judgment evidence.")
Rather, the statement is based on hearsay, which cannot be considered at
summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316,
1322 (11th Cir. 1999).

452.   It is troubling for Mr. Schoenberg that the lessons he teaches his
daughters about the importance of exercising citizenship rights are undercut
by the reality that he cannot have faith in Georgia elections due to the
failings with its BMD system. Opp. Ex. 238 ¶ 9.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because Mr. Schoenberg's thoughts and feelings about parenting lessons on "citizenship rights" and what is "reality" are immaterial to the claims and defenses in this case.  Further, the fact is stated as argument rather than as a statement of fact.   In addition, this paragraph is objectionable to the extent that it is inadmissible because it mischaracterizes the underlying evidence and is beyond declarant's personal knowledge as to what constitutes a "failing" of the BMD election system. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")  Rather, the statement is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

453.   Mr. Schoenberg would be satisfied with any voting system that the public and the state can verify is reliable, transparent, and verifiable. Opp. Ex. 233 at 37:15-23.

**RESPONSE:** Defendants admit that the Court may consider this
evidence for purposes of the summary judgment motion.

454.   Mr. Schoenberg believes that hand-marked ballots are not the
only system that could be reliable, transparent, and verifiable. Opp. Ex. 233
at 37:15-23.

**RESPONSE:** Defendants admit that the Court may consider this
evidence for purposes of the summary judgment motion.

455.   During every Georgia election since 2006, Mr. Schoenberg has
thought casting his vote could be a "hollow exercise" because no one could
know whether his vote was recorded, tallied, or reporting correctly using the
DREs and then Georgia's BMDs. Opp. Ex. 238 ¶ 7.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)
because Mr. Schoenberg's belief that "casting his vote could be a hollow
exercise" is a statement of opinion rather than a statement of fact.  In
addition, this paragraph is objectionable because Mr. Schoenberg's
speculation that it cannot be known "whether his vote was recorded, tallied,
or reporting correctly using the DREs and then Georgia's BMDs" is self-
serving and mischaracterizes the evidence in this case that Georgia voters
can verify their vote.  The fact is also inadmissible because it is not based on

the declarant's personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")  Rather, the statement is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

456.   After he voted on a Georgia BMD, Mr. Schoenberg left the polling place without any certainty that he had meaningfully participated in the election. Opp. Ex. 233 at 135:8-18.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because Mr. Schoenberg's thoughts that he is "without certainty that he meaningfully participated" is a statement of opinion and argument rather than a statement of fact.  In addition, this paragraph is inadmissible because it is not based on the declarant's personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")  Rather, that statement is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

457.   If Georgia's BMDs were prohibited going forward, Mr. Schoenberg would perceive less risk while voting. Opp. Ex. 235 ¶ 11; Opp. Ex. 236 ¶.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because Mr. Schoenberg's perception is a statement of opinion and argument rather than a statement of fact. In addition, the evidence does not support the fact stated.

In addition, this paragraph is objectionable in that it mischaracterizes the underlying evidence and is beyond declarant's personal knowledge as to what constitutes a "failing" of the BMD election system and the operation of the system.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to

support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.") Rather, that statement is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

458.   Mr. Schoenberg also has concerns that Georgia's BMD system is flawed because it cannot be properly audited. Opp. Ex. 233 at 83:25-84:2.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is a statement of opinion and/or argument that the "BMD system is flawed because it cannot be properly audited" rather than as a statement of fact. In addition, this fact is objectionable to the extent Mr. Schoenberg concludes that the system cannot be "properly audited" because it is not based on his personal knowledge and mischaracterizes the underlying fact that verified audits are an integral part of Georgia's BMD system. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")  Rather, that statement is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

459.   There is no record to tell Mr. Schoenberg that elections conducted with Georgia's BMD system are properly counted and that his vote particularly gets counted as cast. Opp. Ex. 233 at 84:2-4.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because Mr. Schoenberg's belief that there is no record of his vote is argument, not a statement of fact and mischaracterizes the underlying facts that there are election records of the votes cast by Georgia voters.  In addition, this fact is objectionable because it is inadmissible and is not based on his personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")  Rather, that statement is based on hearsay, which cannot be considered at summary judgment. Fed. R. Evid. 802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

460.   Mr. Schoenberg does not know if his vote on Georgia's BMD system in the January 5, 2021 election reflected his vote as cast or was counted at all. Opp. Ex. 232 ¶ 12; Opp. Ex. 233 at 135:8-18.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1) because it is argumentative and a statement of opinion rather a statement of fact.  In addition, this fact is objectionable because it mischaracterizes the underlying fact that the BMD system allows voters to verify their choices before casting their ballot.

461.   Every time Mr. Schoenberg votes on a system that is not reasonably secure, he cannot know that he has participated in the democratic process. Opp. Ex. 233 at 125:3-126:6.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is argumentative speculative and mischaracterizes the underlying

facts and is not a proper statement of fact.  In addition, this fact is

objectionable because it is not based on his personal knowledge. Fed. R. Civ.

P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion

must be made on personal knowledge, set out facts that would be admissible

in evidence, and show that the affiant or declarant is competent to testify on

the matters stated."); *see also Riley v. Univ. of Alabama Health Servs.*

*Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere

'belief' and/or speculation is not based on personal knowledge and is not

competent summary judgment evidence.")  Rather, that statement is based

on hearsay, which cannot be considered at summary judgment. Fed. R. Evid.

802; *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

462.   A court order prohibiting Georgia's BMDs and requiring hand-

marked paper ballots would allow Mr. Schoenberg to verify his vote was cast

as intended and would be counted as cast. Opp. Ex. 235 ¶¶ 10-11; Opp. Ex.

236 ¶ 10.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is a statement of argument rather than as a statement of fact.

Further, this fact mischaracterizes the evidence that Georgia voters can

verify their choices on BMDs before casting their ballot.   This is a statement

of conjecture and is not based upon his personal knowledge.  Fed. R. Civ. P.

56(c)(4) ("An affidavit or declaration used to support or oppose a motion must

be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the

matters stated."); *see also Riley v. Univ. of Alabama Health Servs. Found.,*

*P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief'

and/or speculation is not based on personal knowledge and is not competent

summary judgment evidence.")  Rather, that statement is based on hearsay,

which cannot be considered at summary judgment. Fed. R. Evid. 802;

*Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

463.   There have been changes in Georgia law that make it more

difficult to vote absentee, and therefore harder to vote on a hand-marked

paper ballot. Opp. Ex. 105 at 289:13-25.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is a statement of argument and/or opinion rather than a statement

of fact.  In addition, this fact is objectionable because it mischaracterizes the

evidence.

464.   Voter confidence in election systems is important. Opp. Ex. 105 at

296:9-17; Opp. Ex. 48 at 79:5-15.

**RESPONSE:** Defendants admit that the Court may consider this

evidence for purposes of the summary judgment motion.

465.   Suppressing even a relatively small handful of votes, particularly

in a local election with a small number of voters, could be enough to change

the outcome of an election. Opp. Ex. 29 at 209:9-14 (Payton testimony).

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is argumentative and improperly accuses the State Defendants of

"suppressing" votes and is not a statement of fact.

### O.   It is Feasible to Implement a Voting System Using Hand-Marked Paper Ballots in Georgia.

466.   Experts consider the use of hand-marked paper ballots

("HMPBs") for all in-person voters (with exceptions for voters with specific

accessibility needs) to be the gold standard for elections systems. *See*, *e.g.*,

Opp. Ex. 26 at 103:3-5 (testimony of Dr. Alex Halderman); Opp. Ex. 152 at 2;

Opp. Ex. 99 at PDF p. 46, ¶ 18; Opp. Ex. 239 ¶ 21.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)

because it is argument and not a statement of fact.

467.   Georgia could transition swiftly and cost-effectively to HMPBs, as

the primary elements for a HMPB system are already in place. *See, e.g.*, Opp.

Ex. 240 at 19; Opp. Ex. 54 ¶ 24; Opp. Ex. 56 at 137:14-138:15; Opp. Ex. 44 at

227:13-228:22; *see also* Opp. Ex. 2 at 148 (directing State Defendants to

include hand-marked paper ballots in the default plan they were directed to

prepare during the rollout of the BMD system).

**RESPONSE:** Objection. The evidence cited does not support the fact

stated because evidence of the inclusion of "hand marked paper ballots in the

default plan" during "the rollout of the BMD system" is not the equivalent of

what is required for the State to transition to the exclusive use of hand

marked paper ballots statewide.    In addition, this statement of fact is

objectionable because the referenced court order was based on an evidentiary

standard that is not applicable to the Court's consideration of motions for

summary judgment.  The statement of fact also does not comply with LR

56.1(B)(1) because it is stated as argument rather than as a statement of fact

and is not separately numbered.

468.   A HMPB-based voting system in Georgia would require far less

equipment and employees than Georgia's current BMD-based system because

counties would no longer require clunky, complicated, costly machines or

printer stations. Opp. Ex. 29 at 157:9-15.

**RESPONSE:** Objection.  The statement does not comply with LR

318

319 of 336

Filed 03/13/23

56.1(B)(1) because it is a statement of argument rather than a statement of fact as to the characterization of the BMD system as "clunky" and "complicated".  Further, this statement is based on speculation as to what resources would be required to change Georgia BMD system. *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

469.   The Georgia Election Code authorizes superintendents to adopt HMPBs instead of Georgia's BMDs on an emergency basis where the use of the BMDs for any reason is not practicable. O.C.G.A. §§ 21-2-281, 21-2-334.

**RESPONSE:** Objection.  The fact is immaterial to the claims and defenses in this case as Plaintiffs' demand for the use of hand marked paper ballots on a permanent basis is not authorized under the cited provisions of Georgia's Election Code.   The fact is also  objectionable on the grounds that it t does not comply with LR 56.1(B)(1) because it is a legal conclusion and not a proper statement of fact.

470.   Georgia law already requires polling places to print enough HMPBs for all voters "in the event of an emergency." State Election Board Rule 183-1-12-.11(2)(c)-(d).

319

**RESPONSE:** Objection. The fact is immaterial to the claims and
defenses in this case as Plaintiffs' demand for the use of hand marked paper
ballots on a permanent basis is not authorized under the cited provisions of
Georgia's State Election Board Rules. The fact is also objectionable on the
grounds that it t does not comply with LR 56.1(B)(1) because it is a legal
conclusion and is not a statement of fact.

471.   Georgia' Election Code provides the elections supervisor with
discretion over the existence of an emergency situation. State Election Board
Rule 183-1-12-.11(2)(c)-(d).

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1)
because it is a legal conclusion.

472.   The Dominion ICP scanners used in Georgia's BMD system
statewide already have the capability to count barcode or HMPBs
interchangeably. Opp. Ex. 54 ¶ 4; Opp. Ex. 54 ¶¶ 4, 37-40; Opp. Ex. 56 at
128:23-129:22; *see also* Opp. Ex. 2 at 146 ("scanning technology provided by
Dominion under the State's contract and funds authorized in connection with
HB 316" could be used to implement a constitutionally-acceptable HMPB
voting system).

**RESPONSE:** Objection.  The fact is an argument rather than a

statement of fact.  Further, the fact is immaterial to the claims and defenses in this case and is based upon speculation as to the interchangeability of the BMD system.  The fact is also objectionable on the grounds that it t does not comply with LR 56.1(B)(1) because it is a legal conclusion as to what is "constitutionally acceptable".

473.   Because Georgia already has the ability to print and tabulate HMPBs on a widespread scale, there is minimal additional burden associated with moving to HMPBs statewide. *See*, *e.g.*, Opp. Ex. 240 at 19; Opp. Ex. 54 ¶ 24; Opp. Ex. 56 at 137:14-138:15; Opp. Ex. 105 at 218:13-219:3; *see also* Opp. Ex. 2 at 146 (finding that the "scanning technology provided by Dominion under the State's contract and funds authorized in connection with HB 316" could be used to implement a constitutionally-acceptable hand-marked paper ballot voting system).

**RESPONSE:** Objection.  The fact is immaterial to the claims and defenses in this case and is based upon speculation as to Georgia's alleged "ability to print and tabulate HMPBs on a widespread scale".  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.").  The fact

does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact and is a legal conclusion as to the alleged burden and what is "constitutionally acceptable".  The fact also does not comply with LR 56.1(B)(1) because it is not separately numbered.

474.   Election workers would require little or no new technical training for an HMPB system in Georgia because paper ballots make use of the same equipment, and election workers are already trained on the use of paper ballots because they must be prepared to use them in exigent circumstances. Opp. Ex. 44 at 336:7-10.

**RESPONSE:** Objection.  The fact is based upon speculation as to the training of Georgia's election workers and what would be required of them under an HMPB system.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.").  The fact does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact and is a legal conclusion.  The fact also does not comply with LR 56.1(B)(1) because it is not separately numbered.

475.   Under Georgia's current BMD-based voting system, for every

322

election, numerous county and contract employees take tens of thousands of heavy BMD touchscreens, BMD printers, and BMD backup batteries out of storage and transport them to polling places, set up, program, test, maintain, and secure that equipment, and, after the election, dismantle the equipment and transport it back to storage. Opp. Ex. 193 at 23:7-29:3; 33:3-34:20.

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case.  The fact also does not comply with LR 56.1(B)(1) because it is not separately numbered.

476.   A system using primarily HMPBs would be much less expensive than Georgia's current BMD system because it would require less equipment production, upkeep, personnel, and delivery. Opp. Ex. 29 at 157:9-15.

**RESPONSE:** Objection.  The fact is immaterial to the claims and defenses in this case and is based upon speculation as to what constitutes expense and "equipment production, upkeep, personnel, and delivery". *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence."). The fact also does not comply with LR 56.1(B)(1) because it is argument, not a statement of fact and because it is not separately numbered.

323

**P.**    **State Law Requires Fulton County to Conduct Elections and Implement the Voting System in Fulton County.**

477.    Fulton Defendants must, under State law, conduct elections and thereby implement the voting system in Fulton County. O.C.G.A. § 21-2-70; Dkt. 1573 p. 13-14.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion.

478.    Fulton Defendants had knowledge of security failures in Georgia's voting system, including some of Dr. Halderman's statements about vulnerabilities in the BMD system. Opp. Ex. 70 at 165:4-166:4, 166:25-167:10; Opp. Ex. 243; Opp. Ex. 244; Opp. Ex. 245; Opp. Ex. 246; *see also* Dkt. 1590-10.

**RESPONSE:** Objection.  The alleged knowledge of other parties in this case is immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact.

479.    Fulton Defendants expressed "serious concerns" in 2020 that "the new voting system is failing to read all votes marked by voters on absentee by mail ballots." Opp. Ex. 247 at 2.

**RESPONSE:** Objection.  The alleged concerns of other parties in this

case are immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact.

480.   Fulton County's Elections Director, Richard Mr. Barron, has admitted that there is "no way for the voter to verify" the QR code on the BMD-printed ballot. Opp. Ex. 70 at 18:10-11, 31:1-5, 173:13, 180:20-181:7. He also testified: "the best thing to do would be for there to be minimal barcodes or Q.R. codes." Opp. Ex. 70 at 181:20-183:4.

**<u>RESPONSE:</u>** Objection.  The alleged statements of other parties in this case are immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is argument and/or opinion rather than a statement of fact.

481.   Fulton Defendants have not assessed or examined the Georgia voting system for cyber-attack vulnerabilities. Opp. Ex. 63 at 100:21-25.

**<u>RESPONSE:</u>** Objection.  Any alleged actions of other parties in this case are immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact.

482.   As of January 21, 2022, Fulton Defendants were not taking any

measures to eliminate or remediate any cyber-attack vulnerabilities in the Georgia voting system. Opp. Ex. 63 at 101:1-6.

**RESPONSE:** Objection. Any alleged actions of other parties in this case are immaterial to the claims against State Defendants. The fact does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact.

483. Mr. Gilstrap was not aware of efforts that Fulton Defendants must make to ensure that components of Georgia's voting system as used in Fulton County are actually air gapped. Opp. Ex. 63 at 17:19-22.

**RESPONSE:** Objection. The awareness and alleged actions of other parties in this case are immaterial to the claims against State Defendants. The fact does not comply with LR 56.1(B)(1) because it is argument rather than a statement of fact.

484. Mr. Gilstrap was not aware of claims that someone made a successful hacking attempt into Fulton County voting machines via remote Wi-Fi towards the end of 2020. Opp. Ex. 63 at 102:13-18.

**RESPONSE:** Objection. Any alleged "awareness" of other parties in this case is immaterial to the claims against State Defendants. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than

as a statement of fact.

485.   It would be a concern to Fulton County if a third party had taken copies or images of voting equipment used in Fulton County elections, or voting data in those elections. Opp. Ex. 63 at 122:23-123:8.

**RESPONSE:** Objection.  Any alleged concerns of other parties in this case are immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.  The fact is also objectionable because it is based on speculation and is not proper evidence for the Court's consideration of the present motion.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

486.   Dominic Olomo was unable to answer what process Fulton County would follow if it learned about a problem with a Georgia BMD. Opp. Ex. 167 at 22:15-21; 23:10-23.

**RESPONSE:** Objection.  Any alleged "inability to answer" on behalf of other parties in this case is immaterial to the claims against State Defendants.  The fact also does not comply with LR 56.1(B)(1) because it is

stated as argument rather than as a statement of fact and is also objectionable because it is based on speculation which is improper evidence for the Court's consideration of the present motion. *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

487.   Mr. Olomo was not able to testify about wireless connections involving components of Georgia's voting system apart from stating that poll pads are connected to Wi-Fi during bulk updates and during logic and accuracy testing. Opp. Ex. 167 at 29:12-30:5.

**RESPONSE:** Objection.  Any alleged inability to testify on behalf of other parties in this case is immaterial to the claims against State Defendants.  The fact also does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and is also objectionable because it is based on speculation which is improper evidence for the Court's consideration of present motion. *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

488. Fulton County has not conducted an assessment as to whether the information on cards created by poll pads and then inserted into Georgia BMDs as part of the voter check-in system are vulnerable to malicious attacks. Opp. Ex. 70 at 41:24-42:11.

**RESPONSE:** Objection.  Any alleged conduct or lack of conduct on behalf of other parties in this case are immaterial to the claims against State Defendants.  The fact also does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and is also objectionable because it is based on speculation which is improper evidence in the Court's consideration of present motion.  *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.")

489. Mr. Olomo stated there were no policies concerning cybersecurity (i.e., protection against cyber-attack vulnerabilities) that come to Fulton County from the Secretary of State's office and that Fulton County did not have any such policies of its own. Opp. Ex. 167 at 36:23-37:5.

**RESPONSE:** Objection.  Any alleged policies or lack of policies on behalf of other parties in this case are immaterial to the claims against State

Defendants. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact and because it is a legal conclusion. The fact does not comply with LR 56.1(B)(1) because it is not separately numbered.

490. Mr. Olomo had not read any of the expert reports in the case and was otherwise not aware of them. Opp. Ex. 167 at 33:12-19.

**RESPONSE:** Objection. What Mr. Olomo has read or not read is immaterial to the claims against State Defendants.

491. There were operational or execution issues and challenges for Georgia's election system in the Fulton County June 2020 primary election, including unavailability of emergency paper ballots. Opp. Ex. 63 at 131:10-132:12; Opp. Ex. 111.

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion and is not separately numbered.

492. One issue encountered in the Georgia primary runoff election in 2020 was a problem with poll pad "decoders," which prevented the printing of ballot access cards. Problems such as the decoder issue have occurred since

the August 2020 election in Georgia. Opp. Ex. 63 at 134:19-138:16; Opp. Ex.
112.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)
because it is stated as argument rather than as a statement of fact.  The fact
does not comply with LR 56.1(B)(1) because it is a legal conclusion and is not
separately numbered.

493.   One issue encountered in 2020 elections was Georgia BMDs
printing ballots with two QR codes, an issue that had previously been
discovered during logic and accuracy testing. Opp. Ex. 63 at 138:21-141:15;
Opp. Ex. 248.

**RESPONSE:** Objection.  The fact does not comply with LR 56.1(B)(1)
because it is stated as argument rather than as a statement of fact.  The fact
does not comply with LR 56.1(B)(1) because it is a legal conclusion and is not
separately numbered.

494.   Despite the issue of Georgia BMDs printing ballots with two QR
codes, Fulton Defendants did not seek to alter or change their logic and
accuracy procedures. Opp. Ex. 63 at 141:16-142:2.

**RESPONSE:** Objection.  Any alleged conduct on behalf of other parties
in this case is immaterial to the claims against State Defendants.  The fact

does not comply with LR 56.1(B)(1) because it is a legal conclusion and is not separately numbered.

495.   Neither Fulton Defendants nor anyone at their direction or behest scans or conducts other inspections of USB devices used to update the software on Georgia's BMDs. Opp. Ex. 70 at 34:5-14.

**RESPONSE:** Objection.  Any alleged conduct on behalf of other parties in this case is immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion and is not separately numbered.

496.   Neither Fulton Defendants nor anyone at their direction or behest has conducted an assessment as to whether the information on cards created by poll pads and then inserted into Georgia BMDs as part of the voter check-in system are vulnerable to malicious attacks. Opp. Ex. 70 at 41:24-42:11.

**RESPONSE:** Objection.  Any alleged conduct on behalf of other parties in this case is immaterial to the claims against State Defendants.  The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion and is not separately numbered.

497.   Fulton County has an adversarial relationship with the Georgia

Secretary of State and his office as well as the State Election Board. Opp. Ex. 70 at 115:25-117:14.

**RESPONSE:** Objection.  The fact is immaterial to the claims and defenses in this case.  The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact.

Respectfully submitted, this 13th day of March, 2023.

/s/ Vincent R. Russo

Vincent R. Russo          242628
Josh Belinfante           047399
Edward A. Bedard          926148
Carey Miller              976240
Alexander Denton          660632
Javier Pico Prats         664717
Anna Edmondson            289667
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com
    jbelinfante@robbinsfirm.com
    cmiller@robbinsfirm.com
    adenton@robbinsfirm.
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

Bryan P. Tyson            515411
Diane F. LaRoss           430830

333

Bryan F. Jacoutot      668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
T: 678-336-7249
E: btyson@taylorenglish.com
   dlaross@taylorenglish.com
   bjacoutot@taylorenglish.com

*Counsel for State Defendants*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

I certify that this **State Defendants' Responses and Objections to Plaintiffs' Corrected Statement of Additional Material Facts** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Vincent R. Russo*
Vincent R. Russo

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I served a true and correct copy of **State Defendants' Responses and Objections to Plaintiffs' Corrected Statement of Additional Material Facts** on all parties who have entered an appearance in this case by electronically filing it with the Clerk of the Court using the ECF filing system, which will automatically send an email notification of such filing to counsel for such parties.

This 13th day of March, 2023.

*/s/ Vincent R. Russo*
Vincent R. Russo