IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, et al.,<br><br>Defendants. | CIVIL ACTION FILE NO.:<br>1:17-cv-2989-AT |

**PLAINTIFFS' NOTICE OF CHANGE OF STATE LAW
ON POST-ELECTION AUDITS**

The Coalition Plaintiffs and the Curling Plaintiffs give notice to the Court of a change in Georgia law relating to post-election audits. On May 4, 2023, Governor Kemp signed into law State of Georgia Act 341 ("SB 129"), Section 5 of which incorporates significant changes to applicable post-election audit law. The text of SB 129 is attached as Exhibit 1. SB 129 materially weakens the already inadequate audit requirements initially enacted by the General Assembly in 2019's House Bill 316. SB 129 is relevant to the Court's analysis of future post-election audits as part of the state's election security procedures in at least five respects.

1

*First,* SB129 removes the requirement for Risk Limiting Audits as the anticipated mandatory audit method, providing an option for conducting "tabulation audits," without defining the term or the requirements or expectations of a "tabulation audit."  (SB 129, lines 141-147).

*Second,* and relatedly, SB 129 completely eliminates Section 498(e), the previous requirement for a statewide auditing plan by the 2024 general election originally mandated by 2019's HB 316 and referenced in this Court's Order on Plaintiffs' Motion for Preliminary Injunction.  (Doc. 964 at 60-78).  (SB 129, lines 162-166).

*Third,* SB 129 allows the State Election Board to leave to local election officials the determination of the audit method and the races to be audited, while eliminating the role of the Secretary of State in coordinating and conducting post-election audits.  (SB 129, lines 140, 161-169).  This change will inevitably result in counties choosing different audit methods and different races to audit.  It also throws into question the continued validity of the State Election Board rule requiring counties to "participate in a statewide risk-limiting audit" of a contest "selected by the Secretary of State."  Ga. Comp. R. & Regs. 183-1-15-.04(1)(1), (3). SB 129 likely precludes a meaningful audit of results in any statewide or federal races.

*Fourth,* the new law could be read to restrict the number of contests per election to be audited to one contest, a wholly inadequate standard for verifying an election. (SB 129, line 142).

*Fifth*, while the new law expands covered elections to include elections, primaries, and runoffs, both regular and special, where a contest for federal or state office appears on a ballot, the requirements are unclear as to how many contests are to be audited on ballots containing multiple types of federal, state, county, and municipal elections, a frequent occurrence in Georgia. (SB 129, lines 140-144). For example, in even-numbered years the Georgia Election Code requires partisan general primaries and nonpartisan general elections to occur on the same day. *See* O.C.G.A. §§ 21-2-138. For reasons of efficiency, special elections are sometimes held on the same day as general elections as well, as they were in November 2020.

Perhaps most surprisingly, the new law continues to require audits as a mere informational exercise without providing a legal remedy for wrongly decided election outcomes detected in the audit.

Finally, pursuant to existing law, O.C.G.A § 21-2-498(b), (d), the current State Election Board Audit Rule must be amended to reflect SB 129, including the reduction of the role of the Secretary of State and the expansion of the roles of local election officials.

Respectfully submitted this 12th day of May 2023.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 386-6856 | (253) 267-8530 |

*/s/ Russell T. Abney*
Russell T. Abney
Georgia Bar No. 000875
WATTS GUERRA, LLP
4 Dominion Drive, Building 3
Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Plaintiff Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for Plaintiffs William Digges III, Laura Digges*
*Ricardo Davis & Megan Missett*

| | |
|---|---|
| /s/ David D. Cross | /s/ Halsey G. Knapp, Jr. |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Hannah R. Elson (*pro hac vice*) | Adam M. Sparks |
| Oluwasegun Joseph (*pro hac vice*) | GA Bar No. 341578 |
| Wail Jihadi (*pro hac vice*) | Jessica G. Cino |
| Caroline L. Middleton (*pro hac vice*) | GA Bar No. 577837 |
| Riley Jo Porter (*pro hac vice*) | KREVOLIN & HORST, LLC |
| Sonja N. Swanbeck (*pro hac vice*) | 1201 West Peachtree Street, NW |
| MORRISON & FOERSTER LLP | Suite 3250 |
| 2100 L Street, NW | Atlanta, GA 30309 |
| Suite 900 | (404) 888-9700 |
| Washington, DC 20037 | |
| (202) 887-1500 | |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

**CERTIFICATE OF COMPLIANCE AND SERVICE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14 and that I have this day electronically filed it with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

This 12th day of May 2023.

*/s/ Bruce P. Brown*
Bruce P. Brown

EXHIBIT

1

23 SB 129/AP

Senate Bill 129

By: Senators Williams of the 25th, Burns of the 23rd, Harbin of the 16th, Anderson of the 24th, Beach of the 21st and others

**AS PASSED**

A BILL TO BE ENTITLED

AN ACT

1  To amend Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to
2  primaries and elections generally, so as to revise provisions related to performance review
3  boards; to revise the language that must be used on absentee ballot applications distributed
4  by persons or entities; to provide for time off for employees to advance vote; to revise
5  provisions related to time off for employees to vote on election day; to revise the latest
6  reporting time for required election night reporting; to mandate audits following all
7  state-wide primaries, elections, or runoffs; to provide for related matters; to repeal conflicting
8  laws; and for other purposes.

9  BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

10  **SECTION 1.**
11  Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to primaries and
12  elections generally, is amended by revising subsection (a) of Code Section 21-2-106, relating
13  to performance review of local election official, role of performance review board, and
14  findings as grounds for removal, as follows:
15  "(a)  The following officials may request that a performance review of a local election
16  official be conducted:

17    (1)  The governing authority of the same jurisdiction as the local election official;
18    (2)  For counties represented by more than three members of the Georgia House of
19    Representatives and Georgia Senate, at least two members of the Georgia House of
20    Representatives and two members of the Georgia Senate who represent the county; and
21    (3)  For counties represented by fewer than four members of the Georgia House of
22    Representatives and Georgia Senate, at least one member of the Georgia House of
23    Representatives and one member of the Georgia Senate who represent the county.
24  Such request shall be transmitted to the State Election Board which shall appoint an
25  independent performance review board within 30 days after receiving such resolution. The
26  State Election Board shall appoint three competent persons to serve as members of the
27  performance review board, one of whom shall be an employee of the elections division of
28  the Secretary of State and two of whom shall be local election officials or members of a
29  county board of elections or county board of elections and registration, provided that no
30  such appointee shall be a local election official or member of a county board of elections
31  or county board of elections and registration for the county or municipality, as applicable,
32  under review."

33                            **SECTION 2.**
34  Said chapter is further amended by revising subparagraph (a)(1)(C) of Code
35  Section 21-2-381, relating to making of application for absentee ballot, determination of
36  eligibility by ballot clerk, furnishing of applications to colleges and universities, and persons
37  entitled to make application, as follows:
38    "(C)(i)  Any person applying for an absentee-by-mail ballot shall make application in
39    writing on the form made available by the Secretary of State.  In order to confirm the
40    identity of the voter, such form shall require the elector to provide his or her name,
41    date of birth, address as registered, address where the elector wishes the ballot to be
42    mailed, and the number of his or her Georgia driver's license or identification card

43    issued pursuant to Article 5 of Chapter 5 of Title 40.  If such elector does not have a
44    Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5
45    of Title 40, the elector shall affirm this fact in the manner prescribed in the application
46    and the elector shall provide a copy of a form of identification listed in subsection (c)
47    of Code Section 21-2-417.  The form made available by the Secretary of State shall
48    include a space to affix a photocopy or electronic image of such identification.  The
49    Secretary of State shall develop a method to allow secure electronic transmission of
50    such form.  The application shall also include the identity of the primary, election, or
51    runoff in which the elector wishes to vote; the name and relationship of the person
52    requesting the ballot if other than the elector; and an oath for the elector or relative to
53    write his or her usual signature with a pen and ink affirming that the elector is a
54    qualified Georgia elector and the facts presented on the application are true.
55    Submitting false information on an application for an absentee ballot shall be a
56    violation of Code Sections 21-2-560 and 21-2-571.
57    (ii) A blank application for an absentee ballot shall be made available online by the
58    Secretary of State and each election superintendent and registrar, but neither the
59    Secretary of State, election superintendent, board of registrars, other governmental
60    entity, nor employee or agent thereof shall send absentee ballot applications directly
61    to any elector except upon request of such elector or a relative authorized to request
62    an absentee ballot for such elector.  No person or entity other than a relative
63    authorized to request an absentee ballot for such elector or a person signing as
64    assisting an illiterate or physically disabled elector shall send any elector an absentee
65    ballot application that is prefilled with the elector's required information set forth in
66    this subparagraph. No person or entity other than the elector, a relative authorized to
67    request an absentee ballot for such elector, a person signing as assisting an illiterate
68    or physically disabled elector with his or her application, a common carrier charged
69    with returning the ballot application, an absentee ballot clerk, a registrar, or a law

70    enforcement officer in the course of an investigation shall handle or return an elector's
71    completed absentee ballot application.  Handling a completed absentee ballot
72    application by any person or entity other than as allowed in this subsection shall be
73    a misdemeanor.  Any application for an absentee ballot sent to any elector by any
74    person or entity shall utilize the form of the application made available by the
75    Secretary of State and shall clearly and prominently disclose on the face of the form:
76       'This is NOT an official government publication and was NOT provided to you
77       by any governmental entity and this is NOT a ballot.  It is being distributed by
78       [insert name and address of person, organization, or other entity distributing such
79       document or material]
80       This application is being distributed by [insert name and address of person,
81       organization, or other entity distributing such document or material], not by any
82       government agency or any state or local election office.  THIS IS NOT A
83       BALLOT.'
84    (iii)  The disclaimer required by division (ii) of this subparagraph shall be:
85       (I)   Of sufficient font size to be clearly readable by the recipient of the
86       communication;
87       (II)  Be contained Contained in a printed box set apart from the other contents of the
88       communication; and
89       (III)  Be printed Printed with a reasonable degree of color contrast between the
90       background and the printed disclaimer."

91                                    **SECTION 3.**
92    Said chapter is further amended by revising Code Section 21-2-404, relating to affording
93    employees time off to vote, as follows:

94    "21-2-404.

95 Each employee in this state shall, upon reasonable notice to his or her employer, be
96 permitted by his or her employer to take any necessary time off from his or her
97 employment to vote in any municipal, county, state, or federal political party primary or
98 election for which such employee is qualified and registered to vote <u>either on one of the</u>
99 <u>days that are designated for advance in-person voting or</u> on the day on which such primary
100 or election is held; provided, however, that such necessary time off shall not exceed two
101 hours~~; and provided, further, that, if the hours of work of such employee commence at least~~
102 ~~two hours after the opening of the polls or end at least two hours prior to the closing of the~~
103 ~~polls, then the time off for voting as provided for in this Code section shall not be available~~.
104 The employer may specify the hours during which the employee may absent himself or
105 herself as provided in this Code section."

106                                        **SECTION 4.**
107 Said chapter is further amended by revising Code Section 21-2-421, relating to posting of
108 required information after closing of polls and reporting to Secretary of State, as follows:
109    "21-2-421.
110 (a) As soon as possible but not later than ~~10:00~~ <u>11:59</u> P.M. following the close of the polls
111 on the day of a primary, election, or runoff, the election superintendent shall report to the
112 Secretary of State and post in a prominent public place the following information:
113  (1) The number of ballots cast at the polls on the day of the primary, election, or runoff,
114      including provisional ballots cast;
115  (2) The number of ballots cast at advance voting locations during the advance voting
116      period for the primary, election, or runoff; and
117  (3) The total number of absentee ballots returned to the board of registrars by the
118      deadline to receive such absentee ballots on the day of the primary, election, or runoff.

119    (b) Upon the completion of the report provided for in subsection (a) of this Code section,
120    the election superintendent shall compare the total number of ballots received as reported
121    in subsection (a) of this Code section and the counting of the ballots in the primary,
122    election, or runoff minus any rejected and uncured absentee ballots, uncounted provisional
123    ballots, and any other uncounted ballots, with the total number of ballots cast in the
124    primary, election, or runoff. The results of such comparison and all explanatory materials
125    shall be reported to the Secretary of State. The reason for any discrepancy shall be fully
126    investigated and reported to the Secretary of State."

127                                           **SECTION 5.**
128  Said chapter is further amended by revising Code Section 21-2-498, relating to
129  precertification tabulation audits, as follows:
130    "21-2-498.
131    (a) As used in this Code section, the term:
132      (1) 'Incorrect outcome' ~~is when~~ <u>means</u> the winner of a contest or the answer to a
133      proposed constitutional amendment or question would be different from the results found
134      in a manual recount of paper official ballots.
135      (2) 'Risk limit' means the largest statistical probability that an incorrect outcome is not
136      detected or corrected in a risk-limiting audit.
137      (3) 'Risk-limiting audit' means an audit protocol that makes use of statistical methods and
138      is designed to limit to acceptable levels the risk of certifying a preliminary election
139      outcome that constitutes an incorrect outcome.
140    (b) ~~As soon as possible, but no later than the November, 2020, general election, the local~~
141    <u>Local</u> election superintendents shall conduct precertification tabulation <u>or risk-limiting</u>
142    audits <u>on one contest following any election, special election, election runoff, special</u>
143    <u>election runoff, primary, special primary, primary runoff, or special primary runoff</u> ~~for any~~
144    <u>with</u> federal or ~~state general election~~ <u>state-wide contests</u> in accordance with requirements

145  set forth by rule or regulation of the State Election Board.  Audits performed under this
146  Code section shall be conducted by manual inspection of random samples of the paper
147  official ballots.
148  (c)  In conducting each audit, the local election superintendents shall:
149    (1)  Complete the audit prior to final certification of the contest;
150    (2)  Ensure that all types of ballots are included in the audit, whether cast in person, by
151    absentee ballot, advance voting, provisional ballot, or otherwise;
152    (3)  Provide a report of the unofficial final tabulated vote results for the contest to the
153    public prior to conducting the audit;
154    (4)  Complete the audit in public view; and
155    (5)  Provide details of the audit to the public within 48 hours of completion.
156  (d)  The State Election Board shall be authorized to promulgate rules, regulations, and
157  procedures to implement and administer the provisions of this Code section.  The
158  procedures prescribed by the State Election Board shall include security procedures to
159  ensure that collection of validly cast ballots is complete, accurate, and trustworthy
160  throughout the audit.
161  ~~(e)  The Secretary of State shall conduct a risk-limiting audit pilot program with a risk limit~~
162  ~~of not greater than 10 percent in one or more counties by December 31, 2021.  The~~
163  ~~Secretary of State shall review the results of the pilot program and, within 90 days~~
164  ~~following the election in which such pilot program is used, shall provide the members of~~
165  ~~the General Assembly with a comprehensive report, including a plan on how to implement~~
166  ~~risk-limiting audits state wide.  If such risk-limiting audit is successful in achieving the~~
167  ~~specified confidence level within five business days following the election for which it was~~
168  ~~conducted, then all audits performed pursuant to this Code section shall be similarly~~
169  ~~conducted, beginning not later than November 1, 2024.~~"

170                                    **SECTION 6.**

171   All laws and parts of laws in conflict with this Act are repealed.