IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*, | : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION NO.<br>1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, *et al.*, | : |
| Defendants. | : |

## ORDER

On January 9, 2023, the State Defendants filed Motions for Summary Judgment against the Curling and Coalition Plaintiffs.[1] (Docs. 1567, 1568.) In support of their Motions for Summary Judgment, the State Defendants filed the "MITRE Report," which is currently sealed from public view on the docket and described further below. (Doc. 1570-4.) The Plaintiffs oppose the State Defendants' Motions and rely on the July 2021 report written by cybersecurity expert Dr. J. Alex Halderman (the "Halderman Report") to support their opposition. (*See* Docs. 1624, 1636, 1639.) Like the MITRE Report, the Halderman Report is currently sealed from public view on the docket. Indeed, the Halderman Report, which concerns potential vulnerabilities in Dominion's ICX ballot marking device ("BMD") system that is used for elections in the State of Georgia as well as several

---

[1] The Fulton County Defendants similarly filed a Motion for Summary Judgment against the Curling and Coalition Plaintiffs. (Doc. 1571.)

other States, has been sealed and treated as "Attorneys' Eyes Only" since it was filed on July 12, 2021 pursuant to the parties' consent protective order. (Docs. 477, 1130, 1131, 1639.) On May 3, 2023, counsel for the Curling Plaintiffs requested via email that the Court unseal the Halderman Report subject to their previously proposed redactions.[2] It is the Court's understanding that the State Defendants do not oppose the Curling Plaintiffs' unsealing request.

In response to a follow-up inquiry from the Court regarding the Curling Plaintiffs' unsealing request, counsel for the Curling Plaintiffs emailed the Court a series of letters and declarations from various cybersecurity experts in support of their request. These letters and declarations reference not only the Halderman Report but also the MITRE Report — a July 2022 report prepared by the MITRE Corporation's National Election Security Lab that "undertakes a technical analysis to assess the feasibility of [the Halderman Report]'s proposed attacks [against Georgia's BMD software] to change the outcome of a Georgia election." (Doc. 1570-4.) Counsel for the Curling Plaintiffs requested that the letters and declarations be included on the public docket. However, for several reasons, including that the MITRE Report may have been created in violation of this Court's protective order (*see* Doc. 1520) and provided to Dominion in contravention of the Court's prior sealing order, the Curling Plaintiffs contend that the MITRE Report should be struck from the docket. Alternatively, Plaintiffs request that the MITRE Report remain under seal as long as the Halderman Report is under seal and that the

---

[2] Importantly, the Curling Plaintiffs previously requested that the Halderman Report be unsealed.

MITRE Report should not be publicly disclosed until Dr. Halderman and the United States Cybersecurity and Infrastructure Agency (the "CISA") have had the opportunity to review it and propose redactions.

The State Defendants oppose the inclusion of the letters and declarations on the public docket. The State Defendants argue that it would be improper for Plaintiffs to introduce new evidence now that discovery has closed, and that none of these additional materials should be considered for purposes of resolving Defendants' Motions for Summary Judgment. Alternatively, the State Defendants request that the MITRE Report also be added to the public docket and treated in conjunction with the Halderman Report. The Court addresses each of these issues in turn.

## I. The Halderman Report

The Court begins by addressing the Curling Plaintiffs' request to unseal the redacted version of the Halderman Report. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, 839 (1978). Given this, there is a "common-law right of access to judicial proceedings," which includes "the right to inspect and copy public records and documents." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). The right of access is not absolute, however. Instead, "a judge's exercise of discretion in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to the production of the particular

3

document in question.'" *Id.* at 1311 (cleaned up) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Furthermore, the right of access may be overcome by a showing of good cause, which requires (1) balancing the public's interest in accessing the information against the other party's interest in keeping the information confidential, and (2) considering the "nature and character of the information in question." *See id.* at 1314–15; *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

In performing this balancing act, federal courts consider many case-specific factors, including, but not limited to:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246.

Importantly, "[w]hen applying the common-law right of access[,] federal courts traditionally distinguish between those items which may properly be considered public or *judicial records* and those that may not." *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (emphasis added) (citation omitted). The public has a right to access judicial records but does not have a right to access documents that do not qualify as such. *Id.* More specifically, the Eleventh Circuit has stated that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with

pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Chicago Trib.*, 263 F.3d at 1312. In other words, materials produced in discovery "do not automatically qualify as judicial records subject to the common-law right of access," but only "take on that status once they are filed in connection with a substantive motion." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1362 (11th Cir. 2021). "[W]e determine whether a document is a judicial record depending on the type of filing it accompanied." *AbbVie Prod.*, 713 F.3d at 64.

Here, the Curling Plaintiffs originally filed the Halderman Report on the docket as a component of a Joint Discovery Statement that did not require "judicial resolution of the merits." (*See* Docs. 1130, 1131.) The Court therefore held in August 2022 (Doc. 1453) that the common-law right of public access had yet to attach to the Report and that it should therefore remain under seal given the serious election security concerns raised by the potential release of the Report even with the Curling Plaintiffs' proposed redactions.

Since that time, the Halderman Report has been relied on by the Plaintiffs in opposition to the State Defendants' Motions for Summary Judgment, i.e., substantive motions that require "judicial resolution of the merits." (*See* Doc. 1639.) Therefore, the common-law right of public access has now attached to the Report. All parties agree that the Curling Plaintiffs' proposed redactions to the Halderman Report provide appropriate safeguards against any election security risk and hacking concerns previously raised by the Court. The CISA also agrees

5

that "Plaintiffs' most-recent proposed redactions appropriately manage the risk to election security while advancing security through transparency." (Doc. 1430 at 2.) For all these reasons, the Court **GRANTS** the Curling Plaintiffs' request to unseal the redacted version of the Halderman Report on the docket for public view.[3]

Before turning to the MITRE Report, the Court briefly addresses the letters and declarations that the Curling Plaintiffs submitted in support of their request to unseal the Halderman Report. Despite the State Defendants' objection, the Curling Plaintiffs have recently filed the letters and declarations on the public docket. (Doc. 1678.) These materials were filed on the docket without the Court's approval. Nevertheless, the Court **GRANTS** the Curling Plaintiffs' request to file the letters and declarations on the docket *nunc pro tunc*. However, the Court will not consider these materials for purposes of resolving Defendants' Motions for Summary Judgment.

## II.   The MITRE Report

Like the Halderman Report, the MITRE Report (Doc. 1570-4) was filed in connection with the State Defendants' Motions for Summary Judgment, i.e., substantive motions that require "judicial resolution of the merits." Therefore, the common-law right of public access has now attached to the MITRE Report. Additionally, the Court directed the parties to review and provide any proposed redactions to the MITRE report in order to mitigate and safeguard against any

---

[3] As very small minor corrections have been made in the text of the Halderman report, the Court **DIRECTS** Plaintiffs' counsel to file the corrected version of the report on the docket and redact only the minimal words that were previously redacted in the sealed version.

potential election security risk associated with the public publication of the MITRE Report. (Doc. 1674.) Counsel for Plaintiffs and Defendants both indicated that no such redactions were necessary. For these reasons, and consistent with this Court's long recognized view that great weight should be afforded to the public's right to access material filed on the docket, the Court **ORDERS** that the MITRE Report be made available for public view.  As the Defendants did not seek to make the MITRE Report available to the Plaintiffs during the discovery period prior to summary judgment briefing, the Court will not consider the MITRE report in connection with the summary judgment motion.

### III. Conclusion

Having considered the parties' arguments, the Court **GRANTS** the Curling Plaintiffs' request to unseal Dr. Halderman's July 2021 report subject to the Curling Plaintiffs' previously proposed redactions. The Court also **GRANTS** *nunc pro tunc* the Curling Plaintiffs' request to file the additional letters and declarations they provided in support of their request to unseal the Halderman Report. However, the Court will not consider these additional materials for purposes of resolving Defendants' Motions for Summary Judgment.

The Court understands that the Curling Plaintiffs have previously filed the redacted version of the Halderman Report on the docket under seal (Doc. 1639) and that the previously filed version of the Report contains some extremely minor errors. Therefore, the Curling Plaintiffs are **DIRECTED** to file the corrected, redacted version of the Halderman Report on the docket within the next seven

7

days. The Clerk is **DIRECTED** to permanently seal the previously filed version of the Report that contains errors (Doc. 1639.).

Finally, immediately following the Curling Plaintiffs' filing of the Halderman Report on the docket as ordered (in the next 7 days), the Clerk is **DIRECTED** to unseal the MITRE Report (Doc. 1570-4) so that it will also be available on the public docket in the same time frame.

**IT IS SO ORDERED** this 7th day of June, 2023.

_____
**Honorable Amy Totenberg
United States District Judge**