**SECOND DIVISION
MILLER, P. J.,
MERCIER and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 13, 2023**

# In the Court of Appeals of Georgia

A23A0004. VOTERGA et al. v. STATE OF GEORGIA.

MILLER, Presiding Judge.

In this civil dispute concerning Georgia's electronic voting system, VoterGA and Philip Singleton appeal from the trial court's order granting the State of Georgia's motion to dismiss their petition for declaratory and injunctive relief. On appeal, the petitioners argue that the trial court erred by granting the motion to dismiss because they alleged sufficient facts in their petition to state a claim upon which relief could be granted and that a declaratory judgment is the proper vehicle to address their harm. Because the petitioners have failed to state a claim upon which relief can be granted, we affirm the trial court's order granting the State's motion to dismiss.

"As an appellate court, we review de novo a trial court's determination that a pleading fails to state a claim upon which relief can be granted, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted.) *Wright v. Waterbug Big Game Hunting Lodge Otjahewita (PTY), Ltd.*, 330 Ga. App. 508, 509 (767 SE2d 513) (2014).

The record shows that petitioner VoterGA is a non-profit organization that focuses on election integrity, and petitioner Singleton is an elector who voted in the 2020 general election and in the subsequent January 2021 runoff election. In August 2021, the petitioners filed a petition for declaratory and injunctive relief against the State of Georgia regarding the State's electronic voting system. According to the petition, in July 2019, the Georgia Secretary of State's office contracted with Dominion Voting Systems, Inc. to obtain ballot marking devices, scanner tabulators, and election management servers, and the Secretary of State subsequently certified that the devices complied with Georgia law. The petitioners alleged that, notwithstanding the Secretary of State's certification, the ballot marking devices do not comply with Georgia law and that the use of the devices violates the right to vote. Specifically, the petitioners alleged that, although the paper ballot that is generated

from the ballot marking devices displays the elector's written intent on the face of the ballot, the elector is unable to verify whether the corresponding QR code on the paper ballot accurately encodes the elector's voting choices. Therefore, the petitioners contended that the ballot marking devices fail to comply with OCGA §§ 21-2-2 (7.1) and 21-2-300 (a) (2), which require electronic ballot marking devices to mark a paper ballot at the direction of an elector and print a paper ballot with the elector's choices in a format readable by the elector. The petitioners asserted that declaratory relief is proper because it would provide guidance on their right to vote as it relates to the use of ballot marking devices and that they would suffer irreparable harm without an injunction because of the then-pending 2022 primary and general elections and future elections.

The State answered the petition and filed a motion to dismiss, arguing, among other things, that the petitioners failed to state a claim upon which relief could be granted because there is no actual or justiciable controversy between the parties, and the petitioners admit that an elector can verify the written portion of the paper ballot. The trial court agreed with the State and granted the motion to dismiss, concluding that the petitioners failed to state a claim upon which relief could be granted because there is no actual controversy between the parties, and "[t]here is no interpretation of

3

the facts presented that would provide [the] [p]etitioner[s] relief for their claim[.]" This appeal followed.

In their sole enumeration of error, the petitioners argue that the trial court erred by granting the motion to dismiss their petition because they may seek decalaratory relief on their claim that electors cannot verify whether the QR code printed onto a paper ballot accurately reflects the elector's voting choice. We disagree and conclude that the petitioners have failed to state a claim upon which relief could be granted and that the trial court therefore did not err by granting the motion to dismiss their petition for declaratory and injunctive relief.

The following well-established principles apply to a trial court's ruling on a motion to dismiss:

> A trial court may grant a motion to dismiss for failure to state a claim upon which relief may be granted only if (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

4

(Citation omitted.) *Wright*, supra, 330 Ga. App. at 508.

Petitions for declaratory judgment are governed by the Declaratory Judgment Act set forth in OCGA § 9-4-1 et seq. The Act gives courts "the power to declare rights and other legal relations of any interested party in cases of actual controversy under OCGA § 9-4-2 (a) and in any civil case in which it appears to the court that the ends of justice require that the declaration should be made" under OCGA § 9-4-2 (b). (Citations and punctuation omitted.) *Sexual Offender Registration Review Bd. v. Berzett*, 301 Ga. 391, 392-393 (801 SE2d 821) (2017). The term "actual controversies" as used in OCGA § 9-4-2 (a) typically refers to standing to bring suit, while "[OCGA § 9-4-2 (b)] . . . broadens the scope of [the Act] beyond actual controversies to include justiciable controversies." (Citation and punctuation omitted.) *U-Haul Co. of Arizona v. Rutland*, 348 Ga. App. 738, 743-747 (1) (824 SE2d 644) (2019).

> A 'justiciable controversy' under this subsection means there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.

(Citation and punctuation omitted.) Id. at 747 (1). Still, "the relief sought by a plaintiff must have some immediate legal effect on the parties' conduct, rather than simply burning off an abstract fog of uncertainty." *City of Atlanta v. Atlanta Independent School System*, 307 Ga. 877, 880 (838 SE2d 834) (2020). "[W]here the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court will be issuing an advisory opinion, and the Declaratory Judgment Act makes no provision for a judgment that would be advisory." (Citation omitted.) *Avery v. Paulding County Airport Auth.*, 343 Ga. App. 832, 842 (1) (b) (808 SE2d 15) (2017); see also *Strong v. JWM Holdings, LLC*, 341 Ga. App. 309, 315 (2) (800 SE2d 380) (2017) ("Declaratory relief . . . is inappropriate for controversies that are merely hypothetical, abstract, academic, or moot[.]") (citation and punctuation omitted). Likewise, "in seeking injunctive relief a plaintiff must show that he is in great danger of suffering an imminent injury for which he does not have an adequate and complete remedy at law." *American Mgmt. Svcs. East, LLC v. Fort Benning Family Communities*, *LLC*, 313 Ga. App. 124, 127 (1) (a) (720 SE2d 377) (2011).

Here, the petitioners argue that, although electors can verify their voting choices on a printed ballot, electors cannot verify whether the corresponding QR

Code printed on the ballot, which is unreadable by an elector, accurately records the elector's voting choices. Thus, the petitioners contend that the electronic ballot markers obtained from Dominion Voting Systems do not comply with OCGA §§ 21-2-2 (7.1) and 21-2-300 (a) (2). OCGA § 21-2-300 (a) (2), however, simply states:

> As soon as possible, once such equipment is certified by the Secretary of State as safe and practicable for use, all federal, state, and county general primaries and general elections as well as special primaries and special elections in the State of Georgia shall be conducted with the use of scanning ballots marked by electronic ballot markers[1] and tabulated by using ballot scanners for voting at the polls and for absentee ballots cast in person, unless otherwise authorized by law; provided, however, that such electronic ballot markers shall produce paper ballots which are marked with the elector's choices in a format readable by the elector.

Thus, there is no language in the statute that requires that the corresponding QR code on the ballot be readable by an elector, or that electors must be able to verify their

---

[1] OCGA § 21-2-2 (7.1) defines election ballot markers as

an electronic device that does not compute or retain votes; may integrate components such as a ballot scanner, printer, touch screen monitor, audio output, and navigational keypad; and uses electronic technology to independently and privately mark a paper ballot at the direction of an elector, interpret ballot selections, communicate such interpretation for elector verification, and print an elector verifiable paper ballot.

7

election choices through the specific mechanism or device that actually tabulates and counts their voting choices, and we decline to construe the statute in such a manner. See *DeKalb County Bd. of Tax Assessors v. Barrett*, 361 Ga. App. 598, 600 (865 SE2d 192) (2021) ("[I]n considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant.") (citation omitted); *Moosa Co., LLC v. Commr. of Ga. Dept. of Revenue*, 353 Ga. App. 429, 432 (838 SE2d 108) (2020) ("[T]his [C]ourt cannot add language to a statute by judicial decree.") (citation omitted). Instead, as reflected by the plain language of the statute, the law simply requires that electronic ballot markers produce paper ballots that are marked with the elector's choices in a format that can be read by the elector, and the petitioners do not dispute that an elector can read their voting choices on the printed paper ballot. Hence, the petitioners have failed to show that they are in any danger of an actual injury. As a result, there are no state of provable facts that would warrant relief and the petitioners cannot introduce any evidence within the framework of their petition to warrant declaratory and injunctive relief.[2] See *Lue v. Eady*, 297 Ga. 321, 329 (2) (c) (773 SE2d 679) (2015)

---

[2] We reject the petitioners' claim that the trial court considered facts not in evidence and concluded that the printed ballot is "wholeheartedly readable and verifiable." The trial court merely concluded, as the petitioners acknowledged in their

(holding that plaintiffs were not entitled to injunctive relief because they failed to show an imminent and irreparable injury); see also *GeorgiaCarry.Org, Inc. v. Bordeaux*, 360 Ga. App. 807, 810-811 (2) (861 SE2d 649) (2021) (holding that the trial court properly dismissed a complaint for declaratory relief against two plaintiffs because the plaintiffs failed to show that they faced some uncertainty, and they failed to show an "imminent or actual threat of an injury."). Therefore, the trial court properly concluded that the petitioners failed to state a claim for declaratory relief and injunctive relief.

Accordingly, for the aforementioned reasons, we affirm the trial court's order granting the State's motion to dismiss the petition for declaratory and injunctive relief.

*Judgment affirmed. Mercier and Hodges, JJ., concur.*

---

petition, that an "elector can verify the written *portion* of the paper ballot." (Emphasis supplied.)