# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARC THIELMAN *et al.*,

Plaintiffs,

v.

SHEMIA FAGAN *et al.*,

Defendants.

Case No. 3:22-cv-01516-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Marc Thielman, Ben Edtl, Janice Dysinger, Don Powers, Sandra Nelson, Chuck
Wiese, Loretta Johnson, Terry Noonkester, Diane Rich, Pam Lewis, and Senator Dennis
Linthicum (together, "Plaintiffs") filed this action on behalf of themselves and all others
similarly situated against Shemia Fagan ("Fagan"), in her official capacity as the former Oregon
Secretary of State, and twelve Oregon counties (the "County Defendants"), challenging the
constitutionality of Oregon's computerized vote tabulation and vote-by-mail systems. (*See* First
Am. Compl. ("FAC"), ECF No. 71.)

Now before the Court is the Secretary's motion, pursuant to Federal Rules of Civil
Procedure ("Rule") 12(b)(1) and 12(b)(6), to dismiss Plaintiffs' amended complaint for lack of

PAGE 1 – OPINION AND ORDER

subject matter jurisdiction and for failure to state a claim. (Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 73.) The County Defendants joined the Secretary's motion to dismiss. (ECF No. 75.)

The Court heard oral argument on Defendants' motion on June 26, 2023, and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. For the reasons explained below, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

### I.    PRELIMINARY PROCEDURAL MATTER

Fagan filed her reply on April 14, 2023 (ECF No. 79), and at that time, she remained Oregon's Secretary of State. However, Fagan resigned from her position on May 8, 2023,[1] and former Oregon Deputy Secretary of State Cheryl Myers assumed the title of Acting Secretary of State.[2]

Rule 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." FED. R. CIV. P. 25(d). Instead, "[t]he officer's successor is automatically substituted as a party." *Id.* Consequently, this action continues against Cheryl Myers in her official capacity as Oregon's Acting Secretary of State (hereinafter, the "Secretary," together with the County Defendants, "Defendants").

///

---

[1] *See* SECRETARY OF STATE SHEMIA FAGAN ANNOUNCES RESIGNATION, EFFECTIVE MONDAY MAY 8 (May 2, 2023), https://perma.cc/Y67S-ZGN2.

[2] *See* SECRETARY FAGAN RESIGNS; THE SECRETARY OF STATE'S OFFICE WILL NOT EXPERIENCE ANY DISRUPTION IN OPERATIONS DURING THE TRANSITION (May 8, 2023), https://perma.cc/QFG4-5CAF.

## II.     PLAINTIFFS' CLAIMS

Plaintiffs allege that Oregon's computerized vote tabulation and mail-in voting systems violate their constitutional rights, including violations of the Due Process Clause, the Equal Protection Clause, and their fundamental right to vote. (*See* FAC ¶¶ 198-218.) Plaintiffs allege that "organized criminals" are manipulating Oregon's elections, and they base their claims on a documentary about voting irregularities in other states and reports of voting irregularities in Oregon. (*See, e.g.*, *id.* ¶¶ 72-86, 100-130, 137-38, 160-62.) Plaintiffs seek entry of a judgment declaring that Oregon's voting systems are unconstitutional and enjoining their use. (*See* FAC at 54.)

## III.    SUBJECT MATTER JURISDICTION

Defendants argue that Plaintiffs lack standing to bring their claims and therefore the Court should dismiss this case under Rule 12(b)(1) for lack of subject matter jurisdiction. (*See* Defs.' Mot. at 9-17.) For the following reasons, the Court agrees that Plaintiffs have failed adequately to plead a cognizable injury-in-fact and therefore grants Defendants' Rule 12(b)(1) motion to dismiss.

### A.     Article III's Standing Requirements

"The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). As the parties "'invoking federal jurisdiction,' [Plaintiffs] have the burden of establishing standing pursuant to Article III." *Shulman*, 58 F.4th at 408 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, Plaintiffs "must show (1) that they 'suffered an injury in fact that is

PAGE 3 – OPINION AND ORDER

concrete, particularized, and actual or imminent[;'] (2) 'that the injury was likely caused by the defendants;' and (3) 'that the injury would likely be redressed by judicial relief.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)).

"A court must accept all material allegations of the complaint as true and must construe the complaint in favor of the nonmoving party when deciding standing at the pleading stage and for purposes of ruling on a motion to dismiss for lack of standing." *Grey v. Jacobsen*, No. CV-22-82-M-BMM, 2022 WL 9991648, at *2 (D. Mont. Oct. 17, 2022) (citing *Mecinas v. Hobbs*, 30 F.4th 890, 895-96 (9th Cir. 2022)).

### B.  Analysis

Defendants argue that Plaintiffs have failed to plead a cognizable injury-in-fact to establish standing because their claims are based on generalized grievances regarding Oregon's voting systems that are unconnected to any particularized or concrete injury to Plaintiffs. (Defs.' Mot. at 11-18.)

Plaintiffs acknowledged at oral argument that their grievances are generalized, but stand by their argument that the alleged injury conferring standing here is the "lack of confidence in the integrity of Oregon's election system[.]" (Pls.' Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n") at 5, 28, ECF No. 78; *see also id.* at 27, "Plaintiffs' injuries stem from their distrust of Oregon's election system[;]" *id.* at 28, Plaintiffs "are focused on a lack of confidence that is justly felt due to the myriad of facts ple[d and a] lack of confidence in the integrity of elections in Oregon is sufficient for [their] claim[;]" *id.* at 29, "Oregon has . . . destroy[ed] Plaintiffs' confidence in the integrity of elections"). Defendants argue in reply that "[a] lack of confidence in Oregon's election system . . . cannot establish standing" because such an injury is not "particularized" to Plaintiffs and does not constitute concrete harm. (Defs.' Reply at 1, 5, arguing that Plaintiffs'

"grievances are shared by the collective 'people,' rather than a specific subset of the general public sufficient to 'warrant exercise of jurisdiction[,]'" and citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Defendants are correct.

It is well settled that a voter seeking relief in federal court for alleged violations of constitutional rights must have standing to do so, including "a personal stake in the outcome, distinct from a generally available grievance about government." *Wash. Election Integrity Coal. United v. Hall*, --- F. Supp. 3d ----, 2022 WL 4598506, at *2 (W.D. Wash. Sept. 30, 2022) (citing *Gill v. Whitford*, --- U.S. ----, 138 S. Ct. 1916, 1923 (2018)). "The Supreme Court has 'consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Id.* (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007) and *Lujan*, 504 U.S. at 573-74). Pursuant to this authority, Plaintiffs lack standing here because the injury they allege is neither particularized nor concrete.

First, Plaintiffs' alleged injury—their lack of confidence in Oregon's election system—is not particularized to the plaintiffs in this litigation. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" (quoting *Lujan*, 504 U.S. at 560 n.1)). Rather, Plaintiffs allege that their lack of confidence in Oregon's election system is shared "by all of Oregon's citizens" and is "a state-wide issue." (*See* Pls.' Opp'n at 28.) As such, Plaintiffs have not alleged a particularized injury sufficient to establish standing.[3] *See Warth*, 422 U.S. at 499 ("[T]he Court has held that when the

---

[3] Plaintiffs' counsel asserted at oral argument, without citing any relevant authority, that the Court should create an exception to Article III standing because their claims are novel. Plaintiffs also cite dicta from Supreme Court cases on the importance of confidence in elections,

asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large

class of citizens, that harm alone normally does not warrant exercise of jurisdiction."); *Drake v.*

*Obama*, 664 F.3d 774, 782 (9th Cir. 2011) (affirming the district court's dismissal of claims for

lack of standing and finding that "as a voter, [the plaintiff] has no greater stake in this lawsuit

than any other United States citizen" and that his alleged injury was merely a "'generalized

interest of all citizens in constitutional governance' which is insufficient to satisfy the

requirements of standing") (citation omitted); *Grey*, 2022 WL 9991648, at *3-4 ("[T]he case

before the Court proves analogous to similar lawsuits that courts dismissed for lack of standing

when plaintiffs' generalized grievances failed to allege an injury in fact. . . . [The plaintiff's]

generalized grievances about [Montana's] election system software allegedly allowing for 'ballot

tampering' prove insufficient to grant standing required under Article III of the Constitution.");

*Bowyer v. Ducey*, 506 F. Supp. 3d 699, 706-12 (D. Ariz. 2020) (dismissing claims that "the

election process and results were 'so riddled with fraud, illegality and statistical impossibility . . .

that Arizona voters, courts and legislators cannot rely on or certify' its results" for lack of

standing because, *inter alia*, "the[] allegations are nothing more than generalized grievances that

any one of the 3.4 million Arizonans who voted could make if they were so allowed"); *see also*

*O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022 WL 1699425, at *2 (10th Cir. May

27, 2022) ("[N]o matter how strongly [the p]laintiffs believe that [the d]efendants violated

voters' rights in the 2020 election, they lack standing to pursue this litigation unless they identify

an injury to themselves that is distinct or different from the alleged injury to other registered

voters."); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (affirming the district

---

but the cases on which Plaintiffs rely did not address the issue of Article III standing. (*See* Pls.'
Opp'n at 5, 15, 25-26, 28, citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) and *Republican Party of
Penn. v. Degraffenreid*, 141 S. Ct. 732 (2021)).

court's dismissal of claim for lack of standing where the plaintiff challenged the results of the

general election because his alleged injury was not particularized, and finding that the plaintiff

"cannot explain how his interest in compliance with state election laws is different from that of

any other person"); *Stein v. Cortes*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016) (dismissing claims

that the defendants infringed on the plaintiffs' "fundamental right to vote" and finding that it

"appears that [the p]laintiffs seek to protect the rights of all Pennsylvania voters [but t]here is no

authority to support such an invocation of standing" (citing *Warth*, 422 U.S. at 499-500));

*Samuel v. Virgin Islands Joint Bd. of Elections*, No. 2012-0094, 2013 WL 842946, at *4 (D.V.I.

Mar. 7, 2013) (holding that the plaintiffs lacked standing and finding that "[the p]laintiffs'

allegations do not distinguish their concerns—about the use of certain voting machines in the

election or the election results in general—from concerns of other voters or even other

candidates [and in f]act, they make a point that their injuries are completely aligned with [all]

local voters").

      Second, courts have universally concluded that an alleged injury related to a lack of

confidence in a voting system is "too speculative to establish an injury in fact, and therefore

standing." *Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1028-29 (D. Ariz. 2022) (finding that the

plaintiffs lacked standing because, *inter alia*, their alleged injury of potential voter fraud was too

speculative because "a long chain of hypothetical contingencies must take place for any harm to

occur" and concluding "that speculative allegations that voting machines may be hackable are

insufficient to establish an injury in fact under Article III"), *appeal filed* (9th Cir. Sept. 16,

2022); *see also Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 376

(W.D. Pa. 2020) (dismissing claims related to the state's mail-in voting system as "too

speculative to be concrete" where the plaintiffs claimed a "fear that absent implementation of the

PAGE 7 – OPINION AND ORDER

security measures that they seek (guards by drop boxes, signature comparison of mail-in ballots, and poll watchers), there [was] a risk of voter fraud by other voters"); *Stein*, 223 F. Supp. 3d at 432 (concluding that "[the p]laintiffs' allegation that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-fact"); *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001) (finding that the plaintiffs' alleged injury that "[t]hey were unable to know that their votes were accurately counted" was "not the kind of 'informational injury' that has previously been found to establish standing and concluding that "a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared"). So too here.

The Court finds that Plaintiffs' lack of confidence in Oregon's voting systems is a generalized grievance not particularized to the plaintiffs in this litigation and too speculative to qualify as a concrete injury. Accordingly, Plaintiffs have failed to plead an injury-in-fact sufficient to establish standing and the Court dismisses Plaintiffs' claims for lack of subject matter jurisdiction.[4] The Court dismisses Plaintiffs' claims without leave to amend because the nature of Plaintiffs' claims is inconsistent with Article III standing and any further amendments to Plaintiffs' claims would be futile. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (affirming the district court's dismissal of the plaintiffs' claim without leave to amend where the plaintiffs lacked standing to sue and the court's analysis of "[t]he basic underlying facts [as] alleged by plaintiffs" demonstrated that "the plaintiffs cannot cure the basic flaw in their pleading" and finding that "[b]ecause any amendment would be futile, there is no

---

[4] Defendants alternatively move to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* Defs.' Mot. at 21-30.) Because the Court lacks subject matter jurisdiction, the Court does not reach the merits of Defendants' Rule 12(b)(6) arguments.

need to prolong the litigation by permitting further amendment" (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002))).

## CONCLUSION

For these reasons, the Court GRANTS the Secretary's motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and DISMISSES Plaintiffs' claims without leave to amend (ECF No. 73), GRANTS the County Defendants' corrected joinder in the Secretary's motion to dismiss (ECF No. 75), and DENIES AS MOOT the County Defendants' original joinder in the Secretary's motion to dismiss (ECF No. 74).

**IT IS SO ORDERED.**

DATED this 29th day of June, 2023.

*Stacie F. Beckerman*

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
HON. STACIE F. BECKERMAN
United States Magistrate Judge