The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
 2                            ATLANTA DIVISION

 3

 4    DONNA CURLING, ET AL.,            :
                                        :
 5              PLAINTIFFS,             :
      vs.                               :  DOCKET NUMBER
 6                                      :  1:17-CV-2989-AT
      BRAD RAFFENSPERGER, ET AL.,       :
 7                                      :
                DEFENDANTS.             :
 8

 9

10         TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

11             BEFORE THE HONORABLE AMY TOTENBERG

12            UNITED STATES DISTRICT SENIOR JUDGE

13                      NOVEMBER 15, 2023

14                         3:31 P.M.

15

16

17

18

19

20

21    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                   TRANSCRIPT PRODUCED BY:

23

      OFFICIAL COURT REPORTER:         SHANNON R. WELCH, RMR, CRR
24                                     2394 UNITED STATES COURTHOUSE
                                       75 TED TURNER DRIVE, SOUTHWEST
25                                     ATLANTA, GEORGIA  30303
                                       (404) 215-1383
```

```
 1              A P P E A R A N C E S   O F   C O U N S E L

 2

 3    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
      SCHOENBERG:

 4

 5         DAVID D. CROSS
           MARY KAISER
 6         MORRISON & FOERSTER, LLP

 7         ADAM SPARKS
           KREVOLIN & HORST

 8         CHRISTIAN ANDREU-VON EUW
           THE BUSINESS LITIGATION GROUP

 9

10

11    FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
      WILLIAM DIGGES, III, AND RICARDO DAVIS:

12

13         BRUCE P. BROWN
           BRUCE P. BROWN LAW

14         ROBERT A. McGUIRE III
           ROBERT McGUIRE LAW FIRM

15

16

17    FOR THE STATE OF GEORGIA DEFENDANTS:

18

19         VINCENT RUSSO
           JOSH BELINFANTE
20         CAREY MILLER
           ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

21         BRYAN TYSON
           BRYAN JACOUTOT
22         DIANE LAROSS
           TAYLOR ENGLISH DUMA

23

24

25
```

|  | **P R O C E E D I N G S** |
|---|---|

1           **P R O C E E D I N G S**

2     **(Atlanta, Fulton County, Georgia; November 15, 2023.)**

3           THE COURT:  Good afternoon.  This is Judge Totenberg.

4           I think somebody else just joined.  Who is that?

5           MS. LaROSS:  Diane LaROSS.

6           THE COURT:  Thank you very much.

7           We're here for a telephone conference in Curling, et

8     al. v. Raffensperger, et al., Case Number 1:17-CV-2989.

9           I wanted just to talk actually just fairly briefly

10    about where we are in the process of our getting ready for

11    trial.  And I took out our little schedule that I had filed

12    previously on the 13th of October.  So I was sort of wanting to

13    circle back to this and also had some observations about things

14    in the -- items in the schedule that seemed not necessarily

15    needed.  But obviously I haven't given you a ton of time to

16    prepare for trial.  But that is where we're at.

17          If you have any items that you want to raise, you

18    should obviously feel free to do so.  I know there have been

19    other conversations spurred in light of the order, and I leave

20    that for you to handle with Mr. Gonzalez as you see fit.  And

21    if I can be of any help, of course, I would be.

22          The things I was looking at -- the case events was

23    just kind of straightforward.  Since this is not a jury trial,

24    it seemed to me that some of the spots where we had allowed for

25    motions in limine might not really be necessary and would just

 1    take up time for you that is not necessary since it is a bench

 2    trial.

 3           And I wasn't sure really what the issues were around

 4    the necessity of objections to depositions.  But I don't know

 5    how you're using the depositions.  And I wanted to know also

 6    what your thoughts are about how long the trial would be and

 7    what else I can do to assist you in structuring this so that it

 8    is in any way more pragmatically arranged and efficient.

 9           So those are the sort of immediate matters I wanted

10    to talk about.  Because since we had deadlines for bunches of

11    the motions in limine being ruled upon and the objections to

12    the depositions, that was probably the biggest concern to me

13    was how long we thought it would take to try this.

14           MR. CROSS:  This is David Cross.  My partner, Mary

15    Kaiser, is going to take most of these issues.

16           But the one thing I will say -- and Bruce or someone

17    can jump in.  I think we're in agreement on the plaintiffs'

18    side.  Having talked about it and having conferred with the

19    defendants, I think we agree that we do not need motions in

20    limine.  We had made the same point to the defendants that you

21    just made, that it is a bench trial.  It seems much more

22    efficient to take up evidentiary issues during the course of

23    the trial as they arise with the Court.

24           So I think unless Bruce has a different view that we

25    would take that off calendar and not have those motions.

```
 1              MR. BROWN:  This is Bruce Brown.  I would agree
 2     100 percent.
 3              THE COURT:  And where is the State on that?
 4              MR. TYSON:  This is Bryan Tyson.  I'll begin.  And I
 5     apologize.  I know that I was in trial and had been kind of out
 6     of the loop of some of the conversations we've had.  Mr. Miller
 7     may recall.
 8              I wasn't sure that we said we weren't going to file
 9     any motions in limine, and I believe we might need at least
10     some scope-type of issues.  Also I know we've had -- beginning
11     the witness list and things like an exhibit list and things
12     like that.  There may be some things that I thought we might
13     need to discuss.
14              But maybe Mr. Miller or somebody else can recall
15     specifically on that because I don't think I was part of all
16     those conversations.  So I'm sorry about that.
17              THE COURT:  That's fine.
18              MR. MILLER:  Your Honor, this is Carey Miller.  The
19     last time we spoke with plaintiffs' counsel on this was
20     obviously before the Court's order on summary judgment.  I
21     think at this juncture the State is not in a position to
22     concede or waive the ability to file motions in limine that is
23     not else particularly related to the scope of the evidentiary
24     issues necessary for trial.
25              Maybe some of that gets sussed out as the pretrial
```

1  proceedings go along.  But as we stand right now, we don't

2  believe that we would be able to agree to that.

3            THE COURT:  All right.  Well, right now it is on the

4  schedule that motions would be filed by the 11th of December

5  and the responses by December the 18th and replies by the 22nd.

6            My concern about that is I'm not here -- I mean, I'm

7  not sure the issues will arise the first day.  But I don't

8  think I'm going to be in a position to review these

9  instantaneously or that my law clerks are, given there being --

10  the replies are going to be Friday 22nd and that is likely the

11  end of the day too.  So --

12            MR. CROSS:  Your Honor, this is David -- sorry.

13            THE COURT:  No.  That's fine.

14            So my only thoughts about that was if we are going to

15  do this and have -- and for you to have any expectation that

16  we're going to get responses before -- to you before the

17  beginning of trial, I think we would have to try to get these

18  done a little bit earlier.

19            MR. CROSS:  Your Honor, one suggestion I would

20  make -- sorry.  Sorry, Judge.

21            Can you hear me?

22            THE COURT:  Yes.

23            MR. CROSS:  Sorry.  My headphones died.

24            One suggestion I would make that I've had in other

25  trials and Your Honor might consider here, particularly since

 1    it is a bench trial, is that I have had other judges require

 2    the parties to just provide a list of the topics that they

 3    would intend to file motions in limine on and then the judge

 4    has to authorize whether they file.  And that might be useful

 5    here.  Because the one example I can recall from when we

 6    conferred with the State was that they suggested, for example,

 7    they might file a motion in limine on the Coffee County breach.

 8            I would think -- I don't know if that is still on the

 9    table, if they are contemplating it.  I would think Your

10    Honor's recent order makes clear that that is a key part of the

11    case.

12            But it may be that if each side just sends the list

13    of what they are contemplating Your Honor can look at that and

14    say, this isn't something that the parties need to spend time

15    briefing on.  Or if it is, then we know that there's some

16    discrete set that we can all move quickly on.  And, you know,

17    both sides could get those lists in maybe within the next week.

18            THE COURT:  Well, I think it is a good idea.  But --

19            MR. MILLER:  I'm sorry.

20            THE COURT:  -- I mean, obviously counsel probably

21    need to think about it.  But I think it is a good idea from the

22    perspective of, even if you are providing a one paragraph

23    description of the issue, then at least everyone can say -- for

24    instance, maybe there's something that you want to make sure --

25    that the State doesn't want to come in about some particular

```
 1   item, at least it is something you-all could discuss because it
 2   might be something you could resolve without me.
 3               MR. BELINFANTE:  I think, you know, certainly
 4   communication -- sorry.  This is Josh Belinfante.
 5               Certainly communications between counsel is something
 6   we would entertain and do and hopefully resolve the issue.
 7               But I think that part about the motions in limine
 8   raises another, perhaps more substantive issue, which is, if
 9   Dr. Halderman is going to testify about his malware, we haven't
10   seen it.  And we have tried.  And we have not been granted
11   access to it.  And I think that that could be, potentially at
12   least, a material aspect of the case.
13               So I do want to flag that.  Because that's one that
14   kind of sticks out.  And, you know, it perhaps more -- will
15   have a much more significant impact on witness lists,
16   documents, et cetera.
17               MR. CROSS:  Your Honor, this is David.
18               Respectfully Josh, I don't know what he is talking
19   about.  When he says they have tried, this is the first that
20   I'm hearing of this.  I mean, maybe a long time ago in
21   discovery, there was a request made.  I don't recall.
22               But we're on the cusp of trial.  None of their
23   experts have asked to do this.  I don't know what they would do
24   at this stage.  Expert discovery closed a very long time ago.
25   And this is very untimely.
```

```
 1              MR. MILLER:  Judge, this is Carey Miller.  I don't
 2    have the docket number in front of me.  But there is a
 3    discovery dispute filed on the access to this.  And, frankly,
 4    it is not so much about our experts doing anything but we have
 5    got to be able to adequately cross-examine Dr. Halderman.
 6              And, really, the reason this arose is that we noticed
 7    on the recent exhibit list that there was, you know, equipment
 8    to be coming in.
 9              If they are not planning on doing that kind of
10    demonstration, then maybe it is not an issue.  But we read that
11    to assume that that was the case.
12              THE COURT:  Well, is that the case, Mr. Cross?
13              MR. CROSS:  Are we planning to -- we had talked about
14    a demonstration.  I have not had a chance to connect with
15    Dr. Halderman to determine whether we would actually do that.
16              I honestly don't know the answer to that.  I would
17    have to talk to him and figure out whether we would.
18              I mean, Your Honor may recall.  We have videos that
19    we used last time.  It may be that we just use those videos
20    again for demonstrative purposes for the Court to see what he's
21    talking about.  That may be fine.
22              I just have not had time to focus on this, so I don't
23    know.  But I guess what I come back to is:  This is all
24    something that should have played out a long time ago.  You
25    don't get to sit on this until we are three weeks out or
```

1  whatever we are -- six weeks out from trial and suddenly say,

2  we want to do expert discovery.

3          THE COURT:  Okay.  Well, I don't -- I don't have the

4  request or the response or anything about it.  So I think you

5  all need to send me everything you have about it so that I can

6  have it by tomorrow.

7          MR. MILLER:  Judge, if I may, this is Carey Miller.

8  I have just located the discovery dispute filing.  It is

9  Docket 1246.

10         THE COURT:  Okay.

11         MR. CROSS:  I'm sorry.  What was the resolution?

12         MR. MILLER:  Yeah.  Honestly, David, I'm not sure

13  that there was a resolution.  This was January 6th of 2022.

14         THE COURT:  January 26 of '22?

15         MR. MILLER:  January 6 of '22.

16         THE COURT:  We're just trying to have an anniversary.

17  Okay.  All right.

18         MR. CROSS:  I think I once read that this case is

19  like Groundhog Day.

20         THE COURT:  Yes.  We have a new Groundhog Day

21  apparently.

22         All right.  Well, I obviously can look at that.  But

23  if both parties could look at your own -- what you think you --

24  whether there was any follow-up or not, it still would be

25  helpful because I would like to try to resolve that and address

1    it as soon as possible and I'm -- this week.

2          So anything you can -- your staff can find so that I

3    can have it by 2:00 tomorrow, it would be most helpful.

4          MR. BELINFANTE:  We can do that, Your Honor.  Sorry.

5    Josh Belinfante.

6          THE COURT:  But in terms of the -- even if the State

7    wants to proceed with other -- a motion in limine, I'm still

8    concerned about the time frame.  I had put down the first date

9    as December 11th, and I just think that is not going to give us

10   enough time.

11         MR. MILLER:  Judge, this is Carey Miller.  I don't

12   necessarily disagree there, Your Honor.

13         THE COURT:  Well, I know you're just at this point

14   sort of looking at what you need to do or don't need to do.

15   And you can all talk about it.  But I --

16         Do you have your calendar open?

17         LAW CLERK:  Yes.

18         THE COURT:  Well, do you think that the motion in

19   limine could at least be filed by the 6th of December?  Is that

20   realistic?  Or do you need the 7th?  I understand this is a

21   crunch and you-all have had a lot of trials.

22         MR. MILLER:  Your Honor, we'll do whatever the Court

23   needs to make it work.  A bit of the struggle that we were

24   having with respect to -- we did confer.  But a bit of the

25   struggle we were having with respect to the motions in limine

1   at that time was, you know, we weren't exactly sure what to be

2   filing it off of without the summary judgment order.

3          THE COURT:  Right.  Okay.  Well, let's get me -- if

4   you are going to file a motion in limine, file it by the 7th of

5   December.  And I need a reply by the 12th.  And then anything

6   after that is sort of like -- in terms of a reply, you know, I

7   would need the reply by the 14th.

8          So hopefully if you all confer some more about the

9   issues that you wanted -- you're thinking about, you could

10  perhaps limit that or structure it.

11         MR. MILLER:  Okay.

12         THE COURT:  And it may be that we're going to just

13  respond by saying yea or nay on something and not be giving you

14  much of a discussion and we'll discuss it later on, so...

15         MR. CROSS:  This is David.  Can I just ask one other

16  thing for efficiency sake maybe?

17         THE COURT:  Yes.

18         MR. CROSS:  If it ends up that the State files

19  motions in limine because we're not able to reach resolution,

20  would Your Honor have time to just quickly peruse them and let

21  us know whether we need to file -- it may be that you read them

22  and we don't need to respond.

23         THE COURT:  Well, we can do that.  I have a trial

24  that begins on the 6th though, you know.  But that is a

25  weeklong trial.  But it doesn't mean I can't read it either.

1    But it depends.

2            I would just say these need to be not magnum opuses.

3            MR. MILLER:  Your Honor, certainly the

4    State's intention would be that any motions in limine are short

5    and concise and, to the extent we can, simply consolidate

6    issues within a single motion.  Keep it within the 25-page for

7    sure.

8            THE COURT:  Okay.  Thank you.

9            Okay.  So the long and short of it is I would be

10   prepared to make an assessment after I get the plaintiffs'

11   response.  I'll look at it if I can beforehand so that if I

12   have something to say and say please address A and B but not C

13   and D -- motion C and D are not necessary or vice versa, I will

14   let you know.

15           MR. RUSSO:  Good afternoon, Your Honor.  This is

16   Vincent Russo.  I just joined.  I have been in a TRO hearing.

17   So I apologize.  But I did want to identify myself so you

18   didn't think it was someone random joining the meeting.

19           THE COURT:  Mr. Russo, you're never random.

20           MR. RUSSO:  I apologize again for being late.

21           THE COURT:  No.  I heard that you were in a TRO

22   hearing.

23           What was the subject matter?

24           MR. RUSSO:  It is over a licensing process in the

25   state of Georgia related to medical cannabis.

```
 1              THE COURT:  Well, speaking of motions, just to jump
 2   off of what we were talking about, you know, there's a motion
 3   from somebody who is proceeding pro se to intervene.
 4              I wanted to get your input as to whether you wish to
 5   respond to that or not.
 6              MR. BROWN:  Your Honor, this is Bruce Brown.  I will
 7   be filing on behalf of the -- on behalf of CGG and Curling
 8   plaintiffs' agreement, that we are opposing the motion to
 9   intervene on timeliness grounds.
10              But I'm just about finished with that filing, and it
11   will be filed right after this conference today.
12              THE COURT:  Okay.  Thank you.  Anyone else planning
13   to file a response?
14              MR. BELINFANTE:  Your Honor, this is Josh Belinfante.
15              Once we see Mr. Brown's response, we may just
16   (unintelligible) --
17              THE COURT:  You may just what?
18              MR. BELINFANTE:  We may just file something that
19   agrees.  I don't think you will be getting anything significant
20   from us.
21              THE COURT:  Okay.  Thank you.
22              Mr. Cross, did you have anything you wanted to offer
23   in that regard?
24              MR. CROSS:  No, Your Honor.  We agree with Bruce.
25   We're joining in the motion -- his opposition.
```

```
 1                THE COURT:  All right.  Very good.

 2                All right.  Are all of the other -- is there anything

 3      as to the rest of the case events on the original scheduling

 4      order of the 13th of October -- is there anything else that you

 5      want to talk about in that connection?  Anything that needs to

 6      be adjusted?

 7                MS. KAISER:  Your Honor, this is Mary Kaiser.

 8                MR. TYSON:  This is Bryan Tyson.

 9                Oh, I'm sorry.  Go ahead, Mary.

10                MS. KAISER:  Thanks, Bryan.

11                We wanted to get Your Honor's clarification on one

12      entry on that order.  It is at the top of Page 3, the deadline

13      that is Tuesday, December the 12th.  It says, counsel should

14      proceed to schedule a mutually acceptable date and time for a

15      conference together for the purpose of working on a proposed

16      pretrial order that shall be due no later than November 28th,

17      2023.

18                So...

19                THE COURT:  Yeah.  I don't know why it said

20      December 12th.  I have no idea.  I assume that it meant

21      actually possibly November 11th, but I don't know.

22                I can remember going over this with my very smart

23      clerk who was relatively new to the case by phone because of

24      some emergency.  So it is -- I think it must have been a

25      telephone communication problem between the two of us.
```

1            I take responsibility for it though because it is

2    obviously nonsense.  So...

3            MR. TYSON:  Your Honor, this is Bryan Tyson.

4            One thing I was actually going to ask -- we had

5    talked about on our side is I know we have these kind of

6    interstitial deadlines of, you know, joint witness list in

7    pieces.

8            Would it make sense for you to kind of give us a date

9    to file a consolidated pretrial order that includes all these

10   pieces that are breaking up to get in separately and we'll just

11   kind of work through that --

12           THE COURT:  That would be great.

13           MR. TYSON:  -- and then file the consolidated

14   pretrial order?

15           THE COURT:  That would be great.

16           MR. TYSON:  What day would you want that pretrial

17   order then?

18           THE COURT:  What date is realistic for all of you?

19           MR. TYSON:  We could use that December 12th deadline.

20   But I know we have a motions in limine response deadline for

21   the plaintiffs on that date now.

22           So is that enough time for the pretrial conference

23   for you if the pretrial conference is the 15th?

24           THE COURT:  I think so.

25           Well, what I would say is, if you could get it in on

1    Monday by -- by 6:00, it would be -- it would be better Monday

2    the 11th.

3          MR. TYSON:  Sorry.  Get the consolidated pretrial

4    order by Monday the 11th at 6:00 P.M.  And then that would

5    include all the different pieces.  So there wouldn't be like a

6    separate filing only December 4th with a joint list and things.

7    That would just be encompassed with the CPO.

8          THE COURT:  Right.

9          MS. KAISER:  Your Honor, this is Mary Kaiser.

10         We did want to talk about the consolidated pretrial

11   order and what does or does not need to be included.  You know,

12   we had tried to, I think, isolate what we thought would be of

13   most benefit to the Court and the parties in terms of pretrial

14   filings with, you know, witness lists, exhibit lists,

15   deposition designations.  Because I know there are a number of

16   components that are called for in the local rules for the

17   pretrial order.  Some of which we don't think are necessary.

18         So we could talk through specifically what those are.

19   I mean, I know there are several sections that pertain fully to

20   jury trials, which I assume we would not need to address in our

21   consolidated pretrial order.

22         THE COURT:  Correct.

23         MS. KAISER:  Okay.  Then just given the Court's deep

24   familiarity with the case, recent decision on summary judgment,

25   and the fact that this is a bench trial, we believe that we

1  could properly dispense with some of the other sections, such

2  as stipulated facts, the statement of legal issues to be tried.

3  But we wanted to get Your Honor's thoughts on that.

4          MR. MILLER:  Your Honor, this is -- oh --

5          MR. TYSON:  Your Honor -- oh -- go ahead, Carey.

6          THE COURT:  Let me hear from the State's counsel.

7          MR. MILLER:  Your Honor, this is Carey Miller.

8          I think I had rather jump to the phone quicker.  I

9  heard about the legal issues to be tried being removed or

10  avoided in the pretrial order.  Frankly, the State disagrees on

11  that.  I think that would be helpful to all the parties

12  involved with respect to the order, what all comes in and

13  frankly may render our intended motions in limine unnecessary,

14  at least to some extent.

15          And with respect, this is (unintelligible) not

16  applicable.  I agree some of those won't be applicable.  That

17  is how we have done it in prior cases at least.

18          THE COURT:  I'm sorry.  I didn't -- the last sentence

19  you said something would not be askable?

20          MR. MILLER:  Oh, I'm sorry.  Not applicable.

21          THE COURT:  Not applicable.  Okay.

22          I think if you-all would schedule a phone conference

23  as soon as possible to discuss any other details like that.  I

24  mean, it is fine to have the legal issues.  I understand

25  State's counsel's -- Mr. Miller's view.  And that makes sense.

1          I just don't think you need to give -- for instance,

2    usually we have a statement of what the case is about.  Please

3    don't do that.  That is not necessary.  And it is a very large

4    list of counsel.  You don't even have to do that.  But it is

5    easy for you to do also.  I do want you to identify who is lead

6    counsel.

7          But -- so if we're going to make it -- if we're going

8    to -- I mean, it just seems to me that you could -- by having a

9    phone conference -- a genuine working conference, you could

10   possibly be making -- moving the blocks of this so that you

11   were already no later than the date I gave you but it is --

12   because you could possibly do it beforehand.

13         I don't know whether you've made progress in

14   exchanging already or about to be ready with anything as to

15   exhibit lists, et cetera.

16         So in short, is there something other than the

17   objections to documents, document lists, witness lists, and the

18   item that was -- I mean, I'm just thinking about what is

19   usually in the pretrial order.

20         Any other issues that need to be addressed?

21         MR. CROSS:  Regarding the pretrial order or just in

22   general?

23         THE COURT:  Regarding the pretrial order.  But the

24   pretrial order also asks you if there will be anything that

25   will be helpful basically will be addressed.

```
 1              MS. KAISER:  Your Honor, this is Mary Kaiser.

 2              MR. TYSON:  Your Honor --

 3              MS. KAISER:  I think -- I'm sorry, Bryan.  We keep

 4    talking over each other.

 5              MR. TYSON:  You can go ahead.

 6              MS. KAISER:  Thank you.  This is Mary Kaiser.

 7              I think one other issue we wanted to clarify is the

 8    proposed findings of fact and conclusions of law.  I think that

 9    is typically required in a pretrial order for nonjury cases.

10    That is something that could take considerable time to put

11    together.  So we wanted to see if that is something that Your

12    Honor would like us to do.

13              THE COURT:  I would prefer for you -- if we're going

14    to -- if I'm going to ask you to do it, I would prefer it to

15    occur after trial.

16              I don't think that most judges who have a bench trial

17    have as much familiarity with the facts as I have here so -- or

18    the evidence, let's say.  They are not facts, but evidence and

19    the conflicts in the evidence.

20              So I think we should be thinking about doing all of

21    that after the trial.

22              MR. TYSON:  Your Honor, this is Bryan Tyson.

23              I agree.  I think it is helpful to have those after

24    trial.

25              One other thing we had been trying to brainstorm
```

1    about ways to help kind of get us to the right points on

2    things.  I know Your Honor in the summary judgment order had

3    given some points on Page 5 about kind of structure of

4    potential remedial pieces of the puzzle.

5            And in light of the summary judgment order, one thing

6    that we can talk about and might be helpful is in light of what

7    the Court has ruled on summary judgment for the plaintiffs to

8    clarify kind of what the scope of remedy is they are seeking in

9    the trial.  I think that might be helpful to help us kind of

10   focus in on the issues and those types of things.

11           That was another thing we had discussed that might be

12   useful, especially since the Court had kind of set a structure

13   on the summary judgment order of here are some areas where that

14   might be a useful conversation.

15           THE COURT:  Does counsel for the plaintiffs want to

16   respond to that?

17           MR. BROWN:  This is Bruce Brown.  I'm not sure we are

18   ready to answer that question, frankly, during this

19   conversation.

20           You know, the bulk of our case will be concerning the

21   ballots, whether it is contemplated by the *Anderson-Burdick*

22   line of cases showing we hope and believe to be the case that

23   the BMD system as currently configured is unconstitutional.

24   And then in terms of how the Court would decide to address

25   that, including the time frame and the components of doing

1   that, that would be up to the Court.  And we do not know right

2   now, in fact, what that -- what evidence we would put up in

3   that respect.

4           But our experts have, you know, covered this in

5   depositions.  And I know it has been covered in discovery.

6           But exactly what our trial presentation would be on

7   that, we don't know at this time.

8           THE COURT:  Okay.  Well -- and anyone from the

9   Curling folks?

10          MR. CROSS:  Your Honor, this is David Cross.

11          I guess what I would say is, like, I generally agree

12  with Bruce, you know, in terms of the scope of the relief we're

13  looking for.

14          I mean, I will say candidly that the primary relief

15  we're looking for is an order akin to what we got in August of

16  2019.  But there are certainly a lot of different iterations

17  for relief that will be available to the Court, a lot of which

18  we have talked about, as Bruce said, in discovery, which

19  involve software changes, audits, physical security measures,

20  again covered throughout.

21          And I think -- the way I'm thinking about it is we're

22  going to put our evidence and our experts on.  We're going to

23  ask Your Honor to issue an order like you did in August of

24  2019.  And if Your Honor decides that that is not supported

25  based on the record, then we're going to have options short of

1    that within the framework, frankly, that you've laid out in

2    your decision that gets to things like the software package and

3    the other measures.

4            But those are fallback measures in our mind.  But

5    they will be relief that is available at trial.

6            MR. TYSON:  Your Honor, this is Bryan Tyson.

7            I guess one thing that we -- I don't know if it is

8    helpful.  In the Fair Fight trial along that line -- I hear

9    what Bruce and David are saying -- before the close of the

10   plaintiffs' evidence in the Fair Fight case, given the kind

11   of -- you know, there is a variety of different remedial

12   approaches, Judge Jones had the plaintiffs kind of do a

13   presentation on remedies as part of that as like what they were

14   seeking.

15           And in an election case, I think it is especially

16   helpful just because of, as you know, the very fact intensive

17   nature of running elections and all the interconnected pieces

18   of it.

19           So we can keep thinking about that.  But I just

20   thought that since Your Honor has given us some framework on

21   that front it would be helpful.  I know that is similar to what

22   we had kind of last discussed with Mr. Gonzalez in kind of

23   making a proposal along those lines to the plaintiffs.  So

24   maybe there is room on that too.

25           THE COURT:  Yeah.  Well, I think it is a good idea

1    for the plaintiffs to be prepared to do it, to present

2    something at trial at the end of their case or at the end of

3    both parties' cases.

4           But, you know, of course, as you well know, I think

5    it is important for you to continue discussing those very same

6    issues now and not wait till trial.

7           So I think that is the best I can tell you.

8           MR. TYSON:  Thank you, Your Honor.

9           And for the sake of the defendants, we are ready to

10   hear from plaintiffs definitely.  So we have that out there.

11   We are ready to hear back from them on that, and hopefully that

12   can get things moving.

13          THE COURT:  Okay.  So, you know, the discussion so

14   far really just as sort of -- we've been focused on terms of

15   the pretrial order about what is not necessary, what could be

16   modified.  And I think we have basically done that.  We need a

17   witness list and exhibit list, deposition designation.  And we

18   have talked about the motions in limine.

19          MR. MILLER:  Your Honor, one thing with respect to

20   the deposition designations that I just want to ask clarity

21   from the Court on:  The State would generally intend to, you

22   know, oppose introduction of a deposition if they are within

23   the scope to be commanded to be at trial, if it is just a

24   general witness.

25          I just want to make sure that the Court was not

1   expecting from us to have deposition designations other than

2   those who are unavailable.

3           THE COURT:  I mean, I think it is for people who are

4   unavailable is the way I considered it --

5           MR. MILLER:  Okay.

6           THE COURT:  -- unless there is some other issue that

7   I don't know about.

8           MR. MILLER:  No, Your Honor.  That resolves my

9   question.  I had the unfortunate scenario of being in a case

10  where it was much broader than that.

11          So thank you for that clarification.

12          MR. CROSS:  Your Honor, the one caveat I would offer

13  to that is under Rule 32 for managing agents.  For example,

14  Rule 30(b)(6) testimony of the State, the witness does not have

15  to be unavailable.  So I generally agree with what he is saying

16  except if it is within the scope of Rule 32.  It would be

17  unavailable witnesses.

18          MR. MILLER:  That Rule will significantly narrow down

19  the list, and we can handle the objections with the exchange.

20          THE COURT:  All right.  Why don't you indicate the

21  possible managing agents.  So if there is a problem in having

22  them present, then we can -- it can be dealt with in advance.

23          MR. CROSS:  Yes, Your Honor, we will do that.

24          The other thing we would suggest -- and we haven't

25  raised this with the Court.  So if you want to think about it.

1          But generally I found that if both sides agree that

2    they will put their clients on without subpoenas I think that

3    makes things easier for everyone.

4          THE COURT:  I agree.  But I think -- I think --

5          MR. TYSON:  Yeah.  This is Bryan Tyson.  We're fine

6    with that.

7          THE COURT:  Okay.

8          MR. BELINFANTE:  Your Honor, this is Josh Belinfante.

9          The only caveat I want to add is the Governor himself

10   is on the witness list.  So I think that is one at least we

11   would object to and perhaps the Secretary.  We have certainly

12   had apex issues in the past.  And that gets to part of our

13   pretrial motions as well.  So we will raise that.  I wanted to

14   not surprise the Court if there is dispute about that.

15         THE COURT:  Well, I missed a word here.  You said

16   about the Secretary there are apex issues.  And I don't know

17   what -- I don't know what the apex issues are.  What --

18         MR. BELINFANTE:  Sure.  I think the Secretary -- and

19   this was Judge Jones' ruling in Fair Fight on the Secretary as

20   well.

21         But issues involving the Secretary can be handled by

22   staff members who we do plan to put up without any objection.

23   And under apex, that would be the appropriate, we think, way to

24   handle his testimony and the Governor as well.  And technically

25   our representation is not of the Governor.  So we would have

1    some issues that we would have to work through on our side on

2    that.

3            But I just -- again, I just wanted to flag it so that

4    the Court is not surprised when you see something.

5            THE COURT:  All right.

6            I would appreciate if you would discuss that with the

7    parties together.  So if you're talking about replacing the

8    Governor -- well, let's talk about the Secretary of State

9    first -- the Secretary of State with somebody else that it is

10   somebody who actually -- in the 30(b)(6), it is somebody who

11   actually is prepared and fully equipped to answer the

12   questions.

13           MR. MILLER:  Yes, Your Honor.  This is Carey Miller.

14           That is certainly the intent.  And that is actually

15   kind of an initial question I think when we first exchanged

16   exhibit lists because we had listed out, you know, basically

17   the various folks within the Secretary's office that we knew

18   were likely to be within the scope and also tried to leave a

19   placeholder to say, to the extent these aren't the right

20   people, it will be a representative of the Secretary's office

21   on the topic.

22           Of course, again, that exchange occurred prior to the

23   summary judgment order.  So --

24           THE COURT:  Okay.

25           MR. MILLER:  -- maybe we can narrow that down

1   further.  But that is certainly the intent, Your Honor.

2           THE COURT:  Do you all have --

3           MS. KAISER:  Your Honor, this is Mary --

4           THE COURT:  Go ahead.

5           MS. KAISER:  Your Honor, this is Mary Kaiser.

6           I think since we are talking about witnesses, we did

7   want to raise a couple of issues that we had been discussing

8   with the State about their witness list because the list that

9   they produced to us so far has failed to identify any will call

10  witnesses versus may call.  It is just one list that doesn't

11  distinguish between witnesses they definitely intend to call

12  versus those they may call.

13          And to Mr. Miller's point, they included placeholders

14  for representatives but not only from the Secretary of State's

15  Office but also from several other entities, including

16  Dominion, the Coalition, and the Coffee County Elections Board.

17          And we think that we are close enough to trial here

18  that they should be able to identify specific individuals to

19  move into place rather than just a placeholder for

20  representatives.

21          So we would ask that they amend their witness list to

22  identify will call witnesses and to specific individuals from

23  those entities.  We have reached out several times and asked

24  them to make those changes and have not received a response

25  yet.

1          MR. MILLER:  Your Honor, this is Carey Miller.

2          I think the discussion earlier with respect to the

3    remedy kind of goes to this issue as well.  You know -- and

4    particularly at the time that we exchanged these witness lists,

5    we did not know what the scope of trial was going to be while

6    our summary judgment motions were pending.

7          But at this point, the, you know, appropriate witness

8    to respond to a question on audits is probably going to be a

9    different witness than the appropriate witness to respond to a

10   question on the Secretary's ballot-building process.  So that

11   is kind of a starting point where we were struggling.

12         With respect to the Coffee County Board designee, we

13   put that placeholder in there because, as we understood, the

14   30(b)(6) witness that was deposed is no longer on the board.

15   So really it would be, I think -- I would have to get out my

16   mileage calculator to see where Coffee County is.  But it may

17   be that that is obviated by the deposition testimony.

18         So a lot of this has been a little bit of a -- we're

19   trying to reserve our rights to be able to adequately respond

20   to the plaintiffs' presentation of their case without, until

21   last Friday, knowing what case we were going to trial on.

22         And I do think to the extent that we can have this

23   discussion on what remedy is on the table, frankly, that

24   probably allows us to narrow it down significantly further.

25         THE COURT:  Okay.  Well, I understand that.  And at

```
 1    the same time, I think that you -- there are individuals you
 2    know are core will calls.  Everyone is always very anxious
 3    about putting people on a will call list because you don't know
 4    what exactly is going to happen.
 5              But inevitably there will have to be some core
 6    people, no matter who, who are on will call.  And as to people
 7    who are on may call, of course, I will say to the plaintiffs if
 8    there's something -- one that you really think that you are
 9    going to all need, you obviously should be putting the State's
10    witnesses on your own list.
11              MS. KAISER:  Your Honor, would it be possible to get
12    a date by which the defendants will update their witness list
13    to identify the will call witnesses and particular
14    representatives?
15              MR. BELINFANTE:  Your Honor, this is Josh Belinfante.
16              I think, again, to Mr. Miller's point, we're happy to
17    work with a date if we know what the remedy is the plaintiffs
18    are seeking.  It is completely amorphous.  The Court has
19    identified several things that could be a remedy.  We're open
20    to talking about those.  We have been.
21              But it is very difficult for us to identify who is
22    going to come in if we don't know what this case and the remedy
23    is.
24              MR. CROSS:  Your Honor, this is David Cross.
25              That is not how trials work.  I have been in many
```

1  trials with injunctive relief.  In antitrust cases, for

2  example, injunctive relief is often on the table.  I've done it

3  on both sides, plaintiff and defendant.  You don't know until

4  you are in that courtroom what the scope of the relief is going

5  to be and the various iterations it could be.

6          In antitrust trials, for example, oftentimes the

7  plaintiff, sort of their ideal injunctive relief is to say that

8  defendant has to stop what it is doing and that then can break

9  down where a judge says, okay, I'm not going to give you a

10 complete bar on what they are doing, but there are a lot of

11 different things I can do short of that to tell this company

12 they can't do this, that, or the other thing.

13         And there is no obligation ever to have to say, here

14 is every iteration that anybody might contemplate that a judge

15 might come up with.  That is not how trials work.  They know

16 what their core defenses are.  They know who some of the

17 witnesses are that they are going to rely on.

18         And it is not going to turn on anything that they are

19 hearing that they have already heard.  There is nothing our

20 experts are going to say in this courtroom on any opinions they

21 offer that they haven't heard before.  So we --

22         THE COURT:  Well, let me just say --

23         MR. CROSS:  -- we need to get --

24              **(Unintelligible cross-talk)**

25         THE COURT:  I don't -- I think that -- I'm not quite

1    sure why the remedy is being attached so much to the question

2    of what witnesses are will call or may call.  But I think what

3    you've got to do is the people that you know you're going to

4    have to call -- the State has to call or that the plaintiffs

5    have to call they should -- there is no question you're going

6    to call them, that you should honestly put them on will call.

7    And you put the others on may call.

8             And that is -- I mean, I'm not going to say more than

9    that.  I mean, it is obvious that I am seeking -- you know,

10   have a different -- a more limited vista on remedy than

11   probably the plaintiffs have.

12            But it doesn't mean that that is -- it doesn't really

13   change things because I'm not -- I may be awarding no remedy

14   also.  I may be finding that there is -- that while you had

15   enough to go forward with a trial that you don't have enough

16   basis to prevail in the case.

17            So, you know, I think that we're talking about a zero

18   to 100 percent, and everyone is going to have to just figure

19   out in between.  And I mean this for both the State as well as

20   for the plaintiffs.

21            But honestly try to figure out who -- I think an

22   important thing is to try to identify though, as realistically

23   as possible, who is a will call witness.  And if we only end up

24   having a tiny number of people who are will call when everyone

25   knows they really are going to be likely called, you know, that

1    is not really being constructive in terms of running -- having

2    the trial.

3           But I'm not sure, frankly, under the circumstances

4    where I'm also asking you to work with Mr. Gonzalez why we're

5    exactly in this spot because you're going to do a may call

6    and -- ultimately all of you a may call and will call as you

7    see fit but trying to be as fair as possible in identifying

8    what you know are real witnesses and the same thing as to the

9    remedy issues.

10          You're going to be -- you know, I'm certainly hoping

11   that you're going to be continuing to talk and you're going to

12   get some sense from that.

13          So I don't know why we have to have a special -- a

14   special session on that since I've already asked for it

15   essentially for you to continue talking about that.

16          So that's as much as I can say.  So I really haven't

17   positively and affirmatively responded to either side about

18   this, in short.  Do your best and keep on talking.

19          MR. BELINFANTE:  This is Josh Belinfante.  I think

20   certainly that is fair, and we appreciate it.  But we don't

21   know is are the -- even in light of your order, are the

22   plaintiffs going to come in and seek hand-marked paper ballots?

23          And, again, that changes a lot of, you know, what

24   is -- because the defense to hand-marked ballots is quite

25   different from the defense to updating software.  And so yes,

1   we will -- we can assure you -- and I'm saying it fully on the

2   record.  We will try to provide a definitive list of people we

3   fully intend to call regardless.

4          But that has been part of the issue, and it goes to

5   the remedy.  Yes, I have been in cases too where we have pushed

6   people on remedies.  The courts have agreed that part of the

7   standard is determining whether the remedy the person seeks is,

8   you know, comparatively better, warranted by the evidence, and

9   so on.

10          And, you know, we have been at this since 2016, 2017.

11   It is time for them to know what they want, particularly in

12   light of the order.

13          MR. BROWN:  Your Honor, this is Bruce Brown.

14          I would like to respond to Mr. Belinfante.

15          THE COURT:  All right.

16          MR. BROWN:  The remedy that we seek is no secret, and

17   that is a prohibitory injunction on the BMDs.  The defendants

18   need to bring the witnesses that they believe can persuade the

19   Court that that relief is unnecessary because other relief will

20   fix the problem or is not authorized under the law.

21          So, Mr. Belinfante, that is your answer.

22          MR. BELINFANTE:  Well, respectfully, Mr. Brown, if

23   you get rid of the BMDs, what is your alternative?  And that is

24   part of the calculus in what is required for an injunction.

25   So...

1      MR. BROWN:  Then that is up to you to litigate.  That

2  is not a pretrial issue.

3      And, Judge, they are trying to put us on the spot by

4  surfacing settlement discussions in the middle of a pretrial

5  conference, which is totally not going to work.  I'm not going

6  to say it is inappropriate.  It is just not going to work.

7      MR. BELINFANTE:  In the press -- so I really am not

8  going to feel terrible about what you are saying.  I'm not

9  talking about settlement conferences.  I'm asking you to

10  explain if the BMDs are enjoined -- and we don't think they

11  will be and should be based on the evidence -- what is the

12  remedy you're seeking.  Because that is part of the calculus

13  and the elements.  And, you know, that's not --

14                  **(Unintelligible cross-talk)**

15      MR. CROSS:  That is not how this works.  We went

16  through this.  This trial is similar to the preliminary

17  injunction hearing we did in 2019.  The Court issued a negative

18  prohibitory injunction.  The Court did not tell the State what

19  to adopt.  We are not telling the State what to adopt.  And

20  that is how injunctions work.

21      Our only obligation is to establish that the current

22  system does not meet the constitutional requirements.  If we

23  prevail on that -- maybe we will; maybe we won't.  But if we do

24  and we persuade the Court, the Court can issue the same sort of

25  injunction it did in August of 2019.

1      The fallback is then up to the State, just as it was

2  in August of 2019.  This is a red herring, and I agree with

3  Bruce.  This is -- this is -- it does not overt and it is not

4  an appropriate topic for today.

5      MR. BELINFANTE:  If it is y'all's position that you

6  don't know, won't admit, or won't say what your remedy is,

7  fine, we'll adjust to that.  Just come out and say it.

8      MR. BROWN:  I just told you that we did know what our

9  remedy was.  You don't like it.  But I told you what it was.

10     And it is just -- for example, if this were an Eighth

11  Amendment prison case where we were challenging the conditions

12  of confinement, our burden would be to show that the prison

13  conditions were unconstitutional.  It would be up to the Court

14  to fashion an appropriate remedy.

15     And the extent of the Court's power in terms of what

16  it could order the State to do or not do about building

17  prisons, prisoners in other prisons, having a bond issue, that

18  is a difficult issue that Judge Totenberg has recognized in her

19  order.

20     But our burden is to show that it is

21  unconstitutional.  And if the State wants to bring in witnesses

22  to show that it is not or that our -- that they have no

23  alternative but to roll out unconstitutional BMDs, then bring

24  it on.

25     MR. BELINFANTE:  Well, Your Honor, I mean, you've

1  heard and I've heard what we need to do.  Our difficulty in

2  trying to understand the plaintiffs continues.  They won't tell

3  you, us, or anyone really what remedy it is they are seeking.

4       That is (unintelligible) element, but that is where

5  we are.

6       THE COURT:  Well, let me just say that I think that

7  they -- we all have known each other and had these

8  conversations a lot.  But I think what perhaps is different --

9  a little different is, of course, in some prior hearings there

10  have been explicit requests for paper ballots.

11       At this juncture, they are basically not saying that.

12  What they are saying, perhaps to make me happy -- I don't know,

13  but also perhaps because it is absolutely 100 percent

14  correct -- is that the most that the Court can do relative to

15  the question of -- the very most the Court can do as to

16  remedial relief in terms of determining what a remedy is in the

17  legislative scheme is one that they actually cannot ask me to

18  impose on, other than at most to not proceed with the current

19  system as implemented right this moment.

20       So, you know, I don't think you -- the fact that they

21  are not going -- are saying they are not prepared to present

22  evidence on as they have in the past or at least some of them

23  have in the past about a different system of voting is probably

24  influenced by what the decisions have been and what the limits

25  of the scope of my authority are.  And so they have reverted to

1    what happened in 2019 instead.

2         So I don't -- I don't think you can ask them to

3    propose a remedy that they know is outside my authority.

4         MR. CROSS:  Your Honor, this is David.

5         One other thing I would add is I think Mr. Belinfante

6    is confusing types of remedies because there are compulsory

7    injunctions and there are prohibitory injunctions.  Right?

8    Compulsory injunctions would be us asking Your Honor to tell

9    them to do something specific, affirmative steps, adopt the

10   hand-marked paper ballots after 2018, for example.

11        What we're saying is we're asking for a prohibitory

12   injunction.  That is a remedy.  And I'm not sure why there

13   would be any disagreement on that.  That is a -- many are

14   issued in courts across the country probably on a weekly basis.

15        And a prohibitory injunction does not require

16   anything other as a remedy than a court telling the defendant,

17   stop what you are doing.  And then the defendant has to figure

18   out, well, what do I do instead?

19        And that is -- that is the extent of what is required

20   by us.  So I'm not sure why there would be any confusion on

21   that.

22        MR. BELINFANTE:  Your Honor, this is Josh Belinfante.

23   I'll say this, and it sounds like we need to move on.

24        THE COURT:  Okay.  Thank you.

25        MR. BELINFANTE:  I don't think it is on our side as

1    much as I think their own witnesses have testified that the

2    remedies -- some remedies won't satisfy them.  And I think to

3    show irreparable harm to warrant that injunction, they are

4    going to have to talk about what the remedy is.  But they

5    disagree.  And so, you know, we'll address that at the

6    appropriate time.

7            But I think we've probably covered enough ground on

8    this one, Your Honor.  So I'll --

9            THE COURT:  Thank you.

10           MR. BELINFANTE:  -- stand down.

11           THE COURT:  All right.  Thank you.

12           MR. CROSS:  Your Honor, two other things we were

13   going to touch on, but I don't know if there were more on the

14   pretrial.

15           THE COURT:  No, I don't have anything else.

16           MR. CROSS:  Mary, did we have anything else on the

17   pretrial?

18           MS. KAISER:  No.  We had a couple of logistical

19   issues, but nothing else on the pretrial order.

20           MR. CROSS:  Okay.  The last two things, Your Honor:

21   One, coming back to the expert issue, we have taken a look at

22   the filing you were talking about.  There was a January 31st,

23   2022, hearing transcript -- and if you don't have it handy,

24   we'll send it to the Court -- where Your Honor addressed that

25   filing.  And at Page 37, you directed the State to send us a

1    process and protective order for how they would propose

2    handling the inspection of Dr. Halderman's work, including the

3    malware.

4          Unless I'm mistaken -- and they can forward it to

5    me -- I don't believe we ever received anything like that.  I

6    don't recall hearing from them after that conference.

7          So I would just reiterate our timeliness argument.

8    But I'm happy to see if there is something they sent us as a

9    proposal.

10          The other thing I was going to come to is settlement.

11    I think there is one thing that would be helpful from us.  We

12    are talking with Carlos.  I know the Coalition plaintiffs --

13    all the plaintiffs are talking to Carlos.

14          It sounds like Carlos has had at least one

15    conversation with Bryan and maybe others on the defense side.

16          We have been down this road before.  And the

17    challenge we have, Your Honor, is on the heels of your decision

18    on Friday, the official position of the State through their

19    spokesperson was -- and I quote -- we will not negotiate with

20    election deniers.

21          I can't bring my clients to the table when that is

22    the posture of the other side.  If they are not going to

23    negotiate, that's fine.  But it means we don't move forward in

24    settlement talks.

25          And when they publicly make those types of defamatory

1   statements, it is almost impossible to get our clients to

2   engage, understandably, because then they are fighting for

3   their reputations and so are our experts.

4         And so I'm not sure -- I'm not going to ask Your

5   Honor for a gag order.  But settlement -- and we have talked to

6   Carlos about this.

7         It is just those statements are so knowingly false

8   and defamatory about our experts, frankly, as Your Honor knows

9   and I think --

10        THE COURT:  All right.  I got what you are saying.

11  But, listen, I really --

12        MR. BROWN:  Your Honor?

13        THE COURT:  I think that that is something

14  appropriate for you to deal with Carlos about.  I am not --

15  obviously I'm not in a position and there is no warrant for me

16  to step that far.

17        I mean, all of the discussions of gag orders --

18  everyone knows the context of that but I am -- in other cases.

19  But I understand completely your concerns, and I think they are

20  serious concerns.  And, you know, I would -- I hope that

21  counsel will try -- for the State will try to address those.

22        I realize this -- all of this creates lots of hot

23  feelings.  But really I have, you know, designated someone to

24  deal with that.  And I am trying -- I don't want to be involved

25  further than just saying I think it could -- that there are

1    ways of addressing that.

2            And I'm hoping that counsel who have a lot of

3    credibility with their client, as plaintiffs' counsel have a

4    lot of credibility with your clients, we can handle this

5    better.  But I think it is a mistake for me to go further than

6    that -- saying anything as to that.

7            MR. TYSON:  Your Honor, this is Bryan Tyson.

8            I just want to also make really clear, like, our

9    clients have put a proposal on the table that was not responded

10   to last.  And Mr. Cross is the one who in the press said he

11   hopes the decision will be a wake-up call to the Secretary to

12   secure the right to vote in Georgia.

13           So I think everybody toning things down would be

14   helpful.  But what would be most helpful is if the plaintiffs

15   could respond to the proposal we made that kind of matches up

16   with Page 5 of what you talked about in your order.

17           MR. CROSS:  Bryan, that is not what I said.  Come on.

18   I said wake up --

19           MR. TYSON:  I'm reading a quote from the article,

20   David.

21           THE COURT:  All right.  This is really -- I'm not

22   going to get involved with this, I'm just going to say.  If you

23   need to talk about it with somebody -- if you-all need to talk

24   about it, then do it collectively with Mr. Gonzalez.  But I am

25   not going to say more.

1          I mean, I think that the process before ended too

2     soon in my mind, and I'm hoping that you can bring some fresh

3     energy to it and that people will not be making comments one

4     way or the other about each other and their positions because

5     it is the only way you're going to get there.  But I think that

6     is all I can say.

7          But what about -- I do want to circle back to the

8     question:  Does the State have any record or can you look in

9     the next day of whether you have any record of your response to

10    the email or entry of January 31st that I gave directing the

11    State to send a potential protective order regarding the

12    handling of the malware and other matters?

13          MR. MILLER:  Your Honor, we'll --

14          MR. TYSON:  Go ahead.

15          MR. MILLER:  That really only came up when we saw the

16    exhibit entry on the exhibit list.

17          THE COURT:  Say that again.  I'm not sure I quite

18    caught what you said.

19          MR. MILLER:  I said -- I apologize.  We'll certainly

20    look for it.  And I apologize I didn't have it beforehand.  We

21    really only started thinking about this issue at the time that

22    the exhibit list came up showing that on there.  So I apologize

23    for that.

24          THE COURT:  All right.  Well, whatever.  Let's -- if

25    you are going to want it, then you've got to basically move on

1    it tomorrow and get them your -- by the end of the day,

2    whatever you actually either intended to send or that you

3    actually did send.

4              MR. MILLER:  Okay.  Yes, Your Honor.

5              THE COURT:  And then you can all talk about it.  Then

6    if you can't resolve that, then let me know.  And if we all

7    need to talk about it because of the shortage of time, you need

8    to let me know by noon on Friday that you haven't been able to

9    make sense of it -- of how to proceed.

10             So I know that is a lot.  But I mean, either it is

11   there or it is not there.  And if it is not there, then you

12   have all of tomorrow to figure out what you are going to be

13   proposing to send it by 5:00 in the afternoon and see if you

14   can resolve it in the morning if you can't agree and let me

15   know by noon on Friday.

16             Is there anything else that would be helpful to

17   address?

18             MR. BROWN:  Your Honor, this is Bruce Brown.  And I

19   wish this conference were in person because then I could convey

20   to you more fully how difficult this is a question to raise

21   again.

22             But it is on the motion for fees.  And we understand

23   fully how hard the Court and its staff has been working on the

24   motion for summary judgment and indeed for the last seven

25   years.  We, all of us, the Curling plaintiffs, Morrison

1     Foerster -- the associates and partners of Morrison Foerster,

2     Krevolin & Horst, Cary's practice, my practice, Mr. McGuire,

3     and my client, Coalition for Good Governance, just really urge

4     upon you and just stress how necessary it is for us to get an

5     order on the attorneys' fees motion for the DRE case.

6           We have been litigating this case now for seven years

7     without any fees from the State.  And a petition has been filed

8     for some time, and it just is becoming both on a personal and a

9     professional level more and more difficult to continue without

10    that award.

11          In addition --

12          THE COURT:  Let me ask you this -- let me just say

13    this.  Obviously I switched finishing off the fee motion for

14    dealing with the -- because of the time the summary judgment

15    motion.

16          But the reality is you know that even if I were to

17    make -- issue an opinion and awarded you fees there is nothing

18    that makes me -- is there anything that you see that is likely

19    to result because of that in the payment of fees in the

20    reasonable future, given the realities of litigation and the

21    way that people appeal?

22          MR. BROWN:  That is an excellent point, Your Honor.

23    Several responses to that.  First, the sooner we get started on

24    that process the better.

25          Second is that it will have -- in terms of the

1    staffing and in terms of our own budgeting in terms of our

2    funds or our practices and of getting donations and getting

3    support, it will have a very meaningful impact upon our current

4    financial position to have a projection for a fee awarded in

5    the future.

6              And third, Your Honor, the -- I have been in several

7    of these.  And in some situations, the State will pay the award

8    or even negotiate -- negotiate a resolution.  In others, they

9    will appeal it.  And at least in my experience, they always pay

10   for the fees in appealing it also.  But that is not always the

11   case.

12             Finally, if we're going to resolve the case as

13   Mr. Belinfante is repeatedly raising, we need to resolve all

14   the issues.  And the fees for the BMD case and the fees for the

15   DRE case are a material component of any resolution.  And the

16   State doesn't take the fee seriously because they don't see it.

17   They don't see the bite of an attorneys' fees award as being

18   much of an incentive for them to settle the BMD case, which is

19   a major reason why they should come to terms with an

20   appropriate resolution of the BMD case because it is a very

21   expensive case that they will pay for.

22             But on the DRE phase of the case, that piece is fully

23   litigated.  Nothing is going to happen in the future to change

24   either our entitlement to or the amount of that award.  And so

25   it really would have a meaningful impact upon Morrison Foerster

1    and the people there and upon our practices to start the

2    process of collecting the fee award on the DRE case.

3           Thank you for hearing us out on that, Your Honor.

4           THE COURT:  Okay.  All right.  Is there anything else

5    that anyone wants to raise that is a new item?

6           MS. KAISER:  Your Honor, this is Mary Kaiser, again.

7           There were just a couple of logistical issues that we

8    wanted to raise today.  The first is the pretrial conference.

9    I think you set a date of December 15th.  But we wanted to see

10   if it made sense to set a particular time.

11          THE COURT:  10:30 in the morning.

12          MS. KAISER:  Thank you, Your Honor.

13          One other issue we wanted to discuss is the paper

14   exhibits.  We know the Court has paper copies of many documents

15   in this case.  But, you know, we intend to provide trial marked

16   copies of the exhibits.  And we wanted to see how many copies

17   of trial exhibits the Court would prefer.

18          THE COURT:  I have two law clerks now working on the

19   case, and then there is me, and then there is also the document

20   for the record.  And then, you know, all of that gets scanned,

21   and we don't -- I know the clerk's office no longer keeps

22   ultimately the paper record that is given -- put into the

23   record.

24          But you can talk -- I think that you can talk

25   ultimately with Mr. Martin about the question of scanning of

```
1        the documents -- the exhibits.
2               MS. KAISER:  Okay.
3               THE COURT:  But other than putting it -- putting in
4        the document that is part of the record or that might be in --
5        just simply in a scanned version, we need three.
6               MS. KAISER:  Okay.  Thank you, Your Honor.
7               THE COURT:  If you have a witness, you need one for
8        your witness -- for the witness.
9               MS. KAISER:  Yes.
10              THE COURT:  Anything else logistical?
11              MS. KAISER:  Yes.
12              One other thing.  We wanted to see if we could get
13       access to an attorney lounge or witness room in the courthouse.
14              THE COURT:  You'll be given one.  You'll be given
15       access to one.
16              MS. KAISER:  Okay.  Would it be helpful for us to
17       coordinate --
18              THE COURT:  Talk with Mr. Martin about that.  He is
19       the master of all logistics.
20              If you're planning -- if you're planning any fancy
21       technology that you haven't gone over with him recently, then
22       make sure that you get -- schedule a time for your folks to go
23       over technology in the courtroom with him and with anyone else
24       from the court staff who is involved in the technology.
25              MS. KAISER:  Thank you, Your Honor.
```

```
 1              Then in terms of the trial days, you know, we know
 2     that your standing order for jury trials calls for trial dates
 3     from 9:30 to 5:00 with a 15-minute break in the morning and the
 4     afternoon and a short lunch break.  And we just wanted to
 5     confirm that we should expect the same since this is a bench
 6     trial.
 7              THE COURT:  Roughly speaking.  But it is not -- I'm
 8     not having to keep a jury happy.  So, you know, we might adjust
 9     that to go later.  We might -- you know, things happen.  I
10     don't know how long you are thinking the trial is going to go.
11     So it kind of depends on how long the trial is going in terms
12     of managing that.
13              Do you have a projection of how many days the
14     plaintiffs' case will go?
15              MR. CROSS:  This is David.  We've been thinking --
16     oh, go ahead, Mary.
17              MS. KAISER:  Go ahead, David.
18              MR. CROSS:  I was just going to say we have been
19     thinking the whole trial will run probably about two weeks, no
20     more than three.  Hopefully two.  That gives Your Honor some
21     sense.
22              I don't have it -- I don't know if Bruce does either
23     -- sort of broken down by trial days.  But if we're doing full
24     days with reasonable breaks, two weeks is probably doable.
25              THE COURT:  You are saying two weeks including the
```

```
 1   State's portion or two weeks for you to present your portion?

 2            MR. CROSS:  The whole -- yeah.  Sorry.  Fair

 3   question.

 4            The whole trial.  So that would include us and the

 5   State.  Unless the State is contemplating something longer than

 6   we were expecting, I think something like two, two and a half

 7   weeks would be feasible for the whole thing.

 8            MR. BROWN:  Yes, Your Honor.  This is Bruce Brown.

 9            Our thinking in terms of planning our witnesses is

10   that while we may, you know, come short of actually leaving the

11   Court to enter findings of fact under -- what is it? -- 56(g)

12   or (h) -- I can't remember on this -- on the summary judgment

13   record, it is certainly the Court's understanding of the issues

14   and the depth of the documentary evidence already in the case

15   to go ahead and accelerate the trial and we'll move it along.

16            THE COURT:  Does the two, two and a half weeks sound

17   realistic to the State's counsel?

18            MR. MILLER:  Your Honor, this is Carey Miller.

19            And I'll say that I'm skeptical.  That is largely in

20   light of not anything to do with this case in particular.  But

21   I think when we were headed into the Fair Fight trial we were

22   expecting three weeks and it ended up being six weeks with a

23   month break and then another two or three weeks.  As the Court

24   well knows, it just goes a little slower in practice than you

25   expect.
```

```
 1            The only thing that would really complicate from the
 2   State's perspective -- we don't anticipate having a voluminous
 3   number of witnesses called.  But to the extent the plaintiffs
 4   are not called in their portion of the case, we will be calling
 5   them.
 6            MR. CROSS:  The plaintiffs will testify.  We have an
 7   understanding that they need to testify.
 8            I assume, Your Honor, we're going to have a one up,
 9   one down rule with witnesses or called just once.  We're not
10   recalling witnesses in like the plaintiffs' case and the
11   defense case.
12            MR. MILLER:  Your Honor, from the
13   State's perspective, I think we may have some difficulty with
14   that.  Maybe there are certain witnesses we can do it.  But I
15   understand the practical reality and, you know, how that played
16   in with a preliminary injunction.
17            But as to a trial on the merits, the State will
18   certainly intend to call their own witnesses in their own case.
19            MR. CROSS:  I have not had a trial where a judge
20   allowed that, but we defer to you, Your Honor.
21            THE COURT:  Okay.  Well, I don't have to decide that
22   right now.  Normally I allow people to call their own witnesses
23   in their own part of the case.  But that doesn't mean you can't
24   call the plaintiffs or the defendants can't call the opposing
25   party for cross-examination -- as a witness for
```

1    cross-examination but not for double cross-examination.

2           So, you know, that's -- you-all, I think, will work

3    that out in time.

4           All right.  Well, we're blocking off the two and a

5    half weeks.  But I'm not blocking off a month at this point

6    because I just can't conceive of it.  But I will -- obviously

7    we are going to do what is necessary.

8           I do not see myself as us taking a month off in

9    between because I have other trials to do.  So I've just got to

10   keep on rolling.  But we'll see.

11          MR. CROSS:  Your Honor, we haven't discussed this

12   with the State, and we can come back to you with a proposal.

13   But one thing that I have found in other trials is having a

14   Court-imposed time limit discussed with the parties.

15          I agree with Carey that things sometimes balloon.

16   But in my more recent trials, the judges have told us you have

17   so many hours and that is it.  And it is amazing how efficient

18   people can be when the judge tells you --

19                    **(Unintelligible cross-talk)**

20          THE COURT:  I agree.  I agree.  I agree.  But let me

21   get you a little closer to being -- planning your case.  And

22   everyone can get very long-winded in this case, I realize.  But

23   the reality is still we never had a -- we went late after

24   5:00 but we never went more than two days in any of these

25   cases.

1          And you are not having to educate me from scratch.

2   So I'm hopeful that you can actually do it in two and a half

3   weeks and that be that.  And that is what my expectation is.

4   And if something goes completely off, then, you know, we'll --

5   we're going to be -- I would, you know, ideally like to chat

6   with you on the 15th so that -- because I'm going out of town

7   after that.

8          So I mean, I can talk to you again the following

9   week.  I'm available.  But we can -- I think we should try to

10  have a phone conference or in-person conference -- we have the

11  pretrial conference.  We'll talk about the same things at that

12  time about the time frame.  You should be prepared to discuss

13  that.  And that is going to be in person and how it is going

14  about the planning and the length of time, et cetera.

15          MR. CROSS:  So, Your Honor, you're talking about the

16  December 15 is in person?

17          THE COURT:  Yes.

18          MR. CROSS:  Okay.  Great.  Thank you.

19          MR. MILLER:  Your Honor, I apologize.  I think

20  earlier -- did you say 10:30 on the 15th?

21          This is Carey.

22          THE COURT:  I did.

23          Okay.  Before somebody thinks of something new and

24  bright and wonderful, I look forward to hearing about this --

25  what happened on this dispute in connection with Doc. 1246 and

1    the examination of the malware so we can get that done this

2    week.

3              And if you are -- why don't you let us know if there

4    are any times on particular Friday afternoon you're not

5    available.

6              You don't have to tell me.  Tell Mr. Martin.  It is

7    like sending it into a hole to tell me.

8              MR. MILLER:  Thank you, Your Honor.

9              THE COURT:  All right.

10             MR. MILLER:  If I can mention one thing on that topic

11   that may short circuit the issue.  If that is -- if our

12   understanding or anticipation that that is the intention of

13   that exhibit mentioned was -- if that is incorrect, then it may

14   obviate the need to go back in detail.  We're looking for

15   whatever is coming on trial.

16             THE COURT:  I'm not sure I understood what you said

17   in terms of -- I tell you what.  I think what you should do is

18   this.  You've looked at it.  If you don't need to talk about it

19   further because you either have a resolution or you're

20   accepting something, communicate -- you know, just send -- file

21   something that is very short in the record that reflects that.

22             Otherwise, figure out when you are talking to me on

23   Friday.

24             MR. MILLER:  Okay.

25             THE COURT:  Thank you.  Great.  Thank you very much.

1             Anything -- I'm just going to look at my group to see

2    if they have anything.

3             Thank you very much.  Good luck.  Take care.

4             MR. BROWN:  Thank you, Judge.

5             MS. KAISER:  Thank you, Your Honor.

6                      **(The proceedings were thereby concluded at 4:55**

7                      **PM.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
 1                    C E R T I F I C A T E

 2

 3    UNITED STATES OF AMERICA

 4    NORTHERN DISTRICT OF GEORGIA

 5

 6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7    the United States District Court, for the Northern District of

 8    Georgia, Atlanta Division, do hereby certify that the foregoing

 9    55 pages constitute a true transcript of proceedings had before

10    the said Court, held in the City of Atlanta, Georgia, in the

11    matter therein stated.

12         In testimony whereof, I hereunto set my hand on this, the

13    17th day of November, 2023.

14

15

16    _____
      SHANNON R. WELCH, RMR, CRR
17    OFFICIAL COURT REPORTER
      UNITED STATES DISTRICT COURT
18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

**LAW CLERK: [1]** 11/17
**MR. BELINFANTE: [15]** 8/3 11/4 14/14 14/18 26/8 26/18 30/15 33/19 34/22 35/7 36/5 36/25 38/22 38/25 39/10
**MR. BROWN: [12]** 5/1 14/6 21/17 34/13 34/16 35/1 36/8 41/12 44/18 45/22 50/8 55/4
**MR. CROSS: [31]** 4/14 6/12 6/19 6/23 8/17 9/13 10/11 10/18 12/15 12/18 14/24 19/21 22/10 25/12 25/23 30/24 31/23 35/15 38/14 39/12 39/16 39/20 42/17 49/15 49/18 50/2 51/6 51/19 52/11 53/15 53/18
**MR. MILLER: [30]** 5/18 7/19 9/1 10/7 10/12 10/15 11/11 11/22 12/11 13/3 18/4 18/7 18/20 24/19 25/5 25/8 25/18 27/13 27/25 29/1 43/13 43/15 43/19 44/4 50/18 51/12 53/19 54/8 54/10 54/24
**MR. RUSSO: [3]** 13/15 13/20 13/24
**MR. TYSON: [17]** 5/4 15/8 16/3 16/13 16/16 16/19 17/3 18/5 20/2 20/5 20/22 23/6 24/8 26/5 42/7 42/19 43/14
**MS. KAISER: [21]** 15/7 15/10 17/9 17/23 20/1 20/3 20/6 28/3 28/5 30/11 39/18 47/6 47/12 48/2 48/6 48/9 48/11 48/16 48/25 49/17 55/5
**MS. LaROSS: [1]** 3/5
**THE COURT: [90]**

**'**

**'22 [2]** 10/14 10/15

**-**

**-- and [1]** 16/13
**-- maybe [1]** 27/25
**-- stand [1]** 39/10
**-- unless [1]** 25/6

**1**

**100 percent [3]** 5/2 32/18 37/13
**10:30 [1]** 53/20
**10:30 in [1]** 47/11
**11th [5]** 6/4 11/9 15/21 17/2 17/4
**1246 [2]** 10/9 53/25
**12th [4]** 12/5 15/13 15/20 16/19
**1383 [1]** 1/25
**13th [2]** 3/12 15/4
**14th [1]** 12/7
**15 [3]** 1/13 3/2 53/16
**15-minute [1]** 49/3
**15th [4]** 16/23 47/9 53/6 53/20
**17th [1]** 56/13
**18th [1]** 6/5
**1:17-CV-2989 [1]** 3/8
**1:17-CV-2989-AT [1]** 1/6

**2**

**2016 [1]** 34/10
**2017 [1]** 34/10
**2018 [1]** 38/10
**2019 [6]** 22/16 22/24 35/17 35/25 36/2 38/1
**2022 [2]** 10/13 39/23
**2023 [4]** 1/13 3/2 15/17 56/13
**215-1383 [1]** 1/25
**22nd [2]** 6/5 6/10

**2394 [1]** 1/24
**25-page [1]** 13/6
**26 [1]** 10/14
**28th [1]** 15/16
**2989 [1]** 3/8
**2:00 tomorrow [1]** 11/3

**3**

**30 [3]** 25/14 27/10 29/14
**30303 [1]** 1/25
**31st [2]** 39/22 43/10
**32 [2]** 25/13 25/16
**37 [1]** 39/25
**3:31 [1]** 1/14

**4**

**404 [1]** 1/25
**4:55 [1]** 55/6
**4th [1]** 17/6

**5**

**55 [1]** 56/9
**56 [1]** 50/11
**5:00 but [1]** 52/24
**5:00 in [1]** 44/13
**5:00 with [1]** 49/3

**6**

**6:00 [1]** 17/1
**6:00 P.M [1]** 17/4
**6th [3]** 10/13 11/19 12/24

**7**

**75 [1]** 1/24
**7th [1]** 11/20
**7th of [1]** 12/4

**9**

**90 [1]** 1/4
**9:30 [1]** 49/3

**A**

**ability [1]** 5/22
**able [6]** 6/2 9/5 12/19 28/18 29/19 44/8
**about [79]**
**absolutely [1]** 37/13
**accelerate [1]** 50/15
**acceptable [1]** 15/14
**accepting [1]** 54/20
**access [4]** 8/11 9/3 48/13 48/15
**across [1]** 38/14
**actually [12]** 3/9 9/15 15/21 16/4 27/10 27/11 27/14 37/17 44/2 44/3 50/10 53/2
**ADAM [1]** 2/6
**add [2]** 26/9 38/5
**addition [1]** 45/11
**address [7]** 10/25 13/12 17/20 21/24 39/5 41/21 44/17
**addressed [3]** 19/20 19/25 39/24
**addressing [1]** 42/1
**adequately [2]** 9/5 29/19
**adjust [2]** 36/7 49/8
**adjusted [1]** 15/6
**admit [1]** 36/6
**adopt [3]** 35/19 35/19 38/9
**advance [1]** 25/22
**affirmative [1]** 38/9
**affirmatively [1]** 33/17

**after [11]** 1/16 12/6 13/10 14/11 20/15 20/21 20/23 38/10 40/6 52/23 53/7
**afternoon [5]** 3/3 13/15 44/13 49/4 54/4
**again [11]** 9/20 13/20 22/20 27/3 27/22 30/16 33/23 43/17 44/21 47/6 53/8
**agents [2]** 25/13 25/21
**ago [2]** 8/20 8/24 9/24
**agree [16]** 4/19 5/1 6/2 14/24 18/16 20/23 22/11 25/15 26/1 26/4 36/2 44/14 52/15 52/20 52/20 52/20
**agreed [1]** 34/6
**agreement [2]** 4/17 14/8
**agrees [1]** 14/19
**ahead [8]** 15/9 18/5 20/5 28/4 43/14 49/16 49/17 50/15
**AIDED [1]** 1/21
**akin [1]** 22/15
**al [4]** 1/4 1/6 3/8 3/8
**all [49]** 5/15 6/3 7/16 8/1 9/23 10/5 10/17 10/22 11/15 11/21 12/8 15/1 15/2 15/2 16/9 16/18 17/5 18/11 18/12 18/22 20/20 23/17 25/20 27/5 28/2 30/9 33/6 34/15 37/7 39/11 40/13 41/10 41/17 41/22 42/21 42/23 43/6 43/24 44/5 44/6 44/12 44/25 46/13 47/4 47/20 48/19 52/2 52/4 54/9
**allow [1]** 51/22
**allowed [2]** 3/24 51/20
**allows [1]** 29/24
**ALLOY [1]** 2/20
**almost [1]** 41/1
**along [4]** 6/1 23/8 23/23 50/15
**already [5]** 19/11 19/14 31/19 33/14 50/14
**also [13]** 3/13 4/5 5/10 19/5 19/24 27/18 28/15 32/14 33/4 37/13 42/8 46/10 47/19
**alternative [2]** 34/23 36/23
**always [3]** 30/2 46/9 46/10
**am [6]** 32/9 35/7 41/14 41/18 41/24 42/24
**amazing [1]** 52/17
**amend [1]** 28/21
**Amendment [1]** 36/11
**AMERICA [1]** 56/3
**amorphous [1]** 30/18
**amount [1]** 46/24
**AMY [1]** 1/11
**Anderson [1]** 21/21
**Anderson-Burdick [1]** 21/21
**ANDREU [1]** 2/8
**ANDREU-VON [1]** 2/8
**anniversary [1]** 10/16
**another [3]** 8/8 21/11 50/23
**answer [4]** 9/16 21/18 27/11 34/21
**anticipate [1]** 51/2
**anticipation [1]** 54/12
**antitrust [2]** 31/1 31/6
**anxious [1]** 30/2
**any [22]** 1/8 3/17 3/21 4/8 5/9 6/15 10/24 13/4 18/23 19/20 26/22 28/9 31/20 38/13 38/20 43/8 43/9 45/7 46/15 48/20 52/24 54/4
**anybody [1]** 31/14
**anyone [5]** 14/12 22/8 37/3 47/5 48/23
**anything [24]** 9/4 10/4 11/2 12/5 14/19 14/22 15/2 15/4 15/5 19/14 19/24 31/18

**A**

**anything... [12]** 38/16 39/15 39/16 40/5 42/6 44/16 45/18 47/4 48/10 50/20 55/1 55/2

**apex [4]** 26/12 26/16 26/17 26/23

**apologize [7]** 5/5 13/17 13/20 43/19 43/20 43/22 53/19

**apparently [1]** 10/21

**appeal [2]** 45/21 46/9

**appealing [1]** 46/10

**applicable [4]** 18/16 18/16 18/20 18/21

**appreciate [2]** 27/6 33/20

**approaches [1]** 23/12

**appropriate [8]** 26/23 29/7 29/9 36/4 36/14 39/6 41/14 46/20

**are [99]**

**areas [1]** 21/13

**aren't [1]** 27/19

**argument [1]** 40/7

**arise [2]** 4/23 6/7

**arose [1]** 9/6

**around [1]** 4/3

**arranged [1]** 4/8

**article [1]** 42/19

**as [55]** 3/20 4/23 5/25 6/1 11/1 11/1 11/9 14/4 15/3 18/2 18/23 18/23 19/14 20/17 20/17 21/23 22/18 23/13 23/13 23/16 24/4 24/14 26/13 26/19 26/24 29/3 29/13 30/6 32/19 32/19 32/22 32/23 33/6 33/7 33/7 33/8 33/16 33/16 36/1 37/15 37/19 37/22 38/16 38/25 39/1 40/8 41/8 42/3 42/6 46/12 46/17 50/23 51/17 51/25 52/8

**ask [10]** 12/15 16/4 20/14 22/23 24/20 28/21 37/17 38/2 41/4 45/12

**askable [1]** 18/19

**asked [3]** 8/23 28/23 33/14

**asking [4]** 33/4 35/9 38/8 38/11

**asks [1]** 19/24

**aspect [1]** 8/12

**assessment [1]** 13/10

**assist [1]** 4/7

**associates [1]** 45/1

**assume [4]** 9/11 15/20 17/20 51/8

**assure [1]** 34/1

**ATLANTA [5]** 1/2 1/25 3/2 56/8 56/10

**attached [2]** 1/4 32/1

**attaching [1]** 1/7

**attorney [1]** 48/13

**attorneys' [2]** 45/5 46/17

**audits [2]** 22/19 29/8

**August [4]** 22/15 22/23 35/25 36/2

**authority [2]** 37/25 38/3

**authorize [1]** 7/4

**authorized [1]** 34/20

**available [4]** 22/17 23/5 53/9 54/5

**avoided [1]** 18/10

**award [5]** 45/10 46/7 46/17 46/24 47/2

**awarded [2]** 45/17 46/4

**awarding [1]** 32/13

**B**

**back [7]** 3/13 9/23 24/11 39/21 43/7 52/12 54/14

**balloon [1]** 52/15

**ballot [1]** 29/10

**ballot-building [1]** 29/10

**ballots [5]** 21/2 33/22 33/24 37/10 38/10

**bar [1]** 31/10

**based [2]** 22/25 35/11

**basically [5]** 19/25 24/16 27/16 37/11 43/25

**basis [2]** 32/16 38/14

**be [120]**

**because [35]** 4/10 5/15 7/5 8/1 8/13 10/25 12/19 15/23 16/1 17/15 19/12 23/16 27/16 28/8 29/13 30/3 32/13 33/5 33/24 34/19 35/12 37/13 38/6 41/2 43/4 44/7 44/19 45/14 45/19 46/16 46/20 52/6 52/9 53/6 54/19

**becoming [1]** 45/8

**been [25]** 3/18 5/5 8/10 13/16 15/24 20/25 22/5 24/14 28/7 29/18 30/20 30/25 34/4 34/5 34/10 37/10 37/24 40/16 44/8 44/23 45/6 45/7 46/6 49/15 49/18

**before [10]** 1/11 5/20 6/16 6/16 23/9 31/21 40/16 43/1 53/23 56/9

**beforehand [3]** 13/11 19/12 43/20

**begin [1]** 5/4

**beginning [2]** 5/10 6/17

**begins [1]** 12/24

**behalf [2]** 14/7 14/7

**being [10]** 4/11 6/9 13/20 18/9 25/9 32/1 33/1 46/17 50/22 52/21

**believe [6]** 5/9 6/2 17/25 21/22 34/18 40/5

**BELINFANTE [13]** 2/19 2/20 8/4 11/5 14/14 26/8 30/15 33/19 34/14 34/21 38/5 38/22 46/13

**bench [6]** 4/1 4/21 7/1 17/25 20/16 49/5

**benefit [1]** 17/13

**best [2]** 24/7 33/18

**better [4]** 17/1 34/8 42/5 45/24

**between [5]** 8/5 15/25 28/11 32/9 52/9

**biggest [1]** 4/12

**bit [4]** 6/18 11/23 11/24 29/18

**bite [1]** 46/17

**blocking [2]** 52/4 52/5

**blocks [1]** 19/10

**BMD [4]** 21/23 46/14 46/18 46/20

**BMDs [4]** 34/17 34/23 35/10 36/23

**board [3]** 28/16 29/12 29/14

**bond [1]** 36/17

**both [7]** 7/17 10/23 24/3 26/1 31/3 32/19 45/8

**BRAD [1]** 1/6

**brainstorm [1]** 20/25

**breach [1]** 7/7

**break [4]** 31/8 49/3 49/4 50/23

**breaking [1]** 16/10

**breaks [1]** 49/24

**briefing [1]** 7/15

**briefly [1]** 3/9

**bright [1]** 53/24

**bring [5]** 34/18 36/21 36/23 40/21 43/2

**broader [1]** 25/10

**broken [1]** 49/23

**BROWN [9]** 2/12 2/13 5/1 14/6 21/17 34/13 34/22 44/18 50/8

**Brown's [1]** 14/15

**BRUCE [16]** 2/12 2/13 4/16 4/24 5/1

14/6 14/24 21/17 22/12 22/18 23/9 34/13 36/3 44/18 49/22 50/8

**BRYAN [13]** 2/21 2/21 5/4 15/8 15/10 16/3 20/3 20/22 23/6 26/5 40/15 42/7 42/17

**budgeting [1]** 46/1

**building [2]** 29/10 30/16

**bulk [1]** 21/20

**bunches [1]** 4/10

**burden [2]** 36/12 36/20

**Burdick [1]** 21/21

**BUSINESS [1]** 2/8

**C**

**calculator [1]** 29/16

**calculus [2]** 34/24 35/12

**calendar [2]** 4/25 11/16

**call [28]** 28/9 28/10 28/11 28/12 28/22 30/3 30/6 30/7 30/13 32/2 32/2 32/4 32/4 32/5 32/6 32/6 32/7 32/23 32/24 33/5 33/6 33/6 34/3 42/11 51/18 51/22 51/24 51/24

**called [5]** 17/16 32/25 51/3 51/4 51/9

**calling [1]** 51/4

**calls [2]** 30/2 49/2

**came [2]** 43/15 43/22

**can [59]**

**can't [9]** 12/25 31/12 40/21 44/6 44/14 50/12 51/23 51/24 52/6

**candidly [1]** 22/14

**cannabis [1]** 13/25

**cannot [1]** 37/17

**care [1]** 55/3

**CAREY [12]** 2/19 5/18 9/1 10/7 11/11 18/5 18/7 27/13 29/1 50/18 52/15 53/21

**Carlos [5]** 40/12 40/13 40/14 41/6 41/14

**Cary's [1]** 45/2

**case [45]** 3/8 3/22 7/11 8/12 9/11 9/12 10/18 15/3 15/23 17/24 19/2 21/20 21/22 23/10 23/15 24/2 25/9 29/20 29/21 30/22 32/16 36/11 45/5 45/6 46/11 46/12 46/14 46/15 46/18 46/20 46/21 46/22 47/2 47/15 47/19 49/14 50/14 50/20 51/4 51/10 51/11 51/18 51/23 52/21 52/22

**cases [8]** 18/17 20/9 21/22 24/3 31/1 34/5 41/18 52/25

**caught [1]** 43/18

**caveat [2]** 25/12 26/9

**certain [1]** 51/14

**certainly [12]** 8/3 8/5 13/3 22/16 26/11 27/14 28/1 33/10 33/20 43/19 50/13 51/18

**certify [1]** 56/8

**cetera [3]** 8/16 19/15 53/14

**CGG [1]** 14/7

**challenge [1]** 40/17

**challenging [1]** 36/11

**chance [1]** 9/14

**change [2]** 32/13 46/23

**changes [2]** 22/19 28/24 33/23

**chat [1]** 53/5

**CHRISTIAN [1]** 2/8

**circle [2]** 3/13 43/7

**circuit [1]** 54/11

**circumstances [1]** 33/3

**cite [1]** 1/4

**C**

**City [1]** 56/10
**clarification [2]** 15/11 25/11
**clarify [2]** 20/7 21/8
**clarity [1]** 24/20
**clear [2]** 7/10 42/8
**clerk [1]** 15/23
**clerk's [1]** 47/21
**clerks [2]** 6/9 47/18
**client [2]** 42/3 45/3
**clients [5]** 26/2 40/21 41/1 42/4 42/9
**close [2]** 23/9 28/17
**closed [1]** 8/24
**closer [1]** 52/21
**CM [2]** 1/2 1/3
**CM/ECF [2]** 1/2 1/3
**COALITION [4]** 2/10 28/16 40/12 45/3
**Coffee [4]** 7/7 28/16 29/12 29/16
**collecting [1]** 47/2
**collectively [1]** 42/24
**come [11]** 7/25 9/23 30/22 31/15 33/22 36/7 40/10 42/17 46/19 50/10 52/12
**comes [1]** 18/12
**coming [3]** 9/8 39/21 54/15
**commanded [1]** 24/23
**comments [1]** 43/3
**communicate [1]** 54/20
**communication [2]** 8/4 15/25
**communications [1]** 8/5
**company [1]** 31/11
**comparatively [1]** 34/8
**complete [1]** 31/10
**completely [3]** 30/18 41/19 53/4
**complicate [1]** 51/1
**component [1]** 46/15
**components [2]** 17/16 21/25
**compulsory [2]** 38/6 38/8
**COMPUTER [1]** 1/21
**COMPUTER-AIDED [1]** 1/21
**concede [1]** 5/22
**conceive [1]** 52/6
**concern [2]** 4/12 6/6
**concerned [1]** 11/8
**concerning [1]** 21/20
**concerns [2]** 41/19 41/20
**concise [1]** 13/5
**concluded [1]** 55/6
**conclusions [1]** 20/8
**conditions [2]** 36/11 36/13
**confer [2]** 11/24 12/8
**conference [16]** 1/10 3/7 14/11 15/15 16/22 16/23 18/22 19/9 19/9 35/5 40/6 44/19 47/8 53/10 53/10 53/11
**conferences [1]** 35/9
**conferred [2]** 4/18 7/6
**configured [1]** 21/23
**confinement [1]** 36/12
**confirm [1]** 49/5
**conflicts [1]** 20/19
**confusing [1]** 38/6
**confusion [1]** 38/20
**connect [1]** 9/14
**connection [2]** 15/5 53/25
**consider [1]** 6/25
**considerable [1]** 20/10
**considered [1]** 25/4
**consolidate [1]** 13/5

**consolidated [5]** 16/9 16/13 17/3 17/10
17/21
**constitute [1]** 56/9
**constitutional [1]** 35/22
**constructive [1]** 33/1
**contemplate [1]** 31/14
**contemplated [1]** 21/21
**contemplating [3]** 7/9 7/13 50/5
**context [1]** 41/18
**continue [3]** 24/5 33/15 45/9
**continues [1]** 37/2
**continuing [1]** 33/11
**conversation [3]** 21/14 21/19 40/15
**conversations [4]** 3/19 5/6 5/16 37/8
**convey [1]** 44/19
**coordinate [1]** 48/17
**copies [3]** 47/14 47/16 47/16
**core [3]** 30/2 30/5 31/16
**correct [2]** 17/22 37/14
**could [23]** 7/17 8/1 8/2 8/11 10/23
11/19 12/9 16/19 16/25 17/18 18/1 19/8
19/9 19/12 20/10 24/15 30/19 31/5
36/16 41/25 42/15 44/19 48/12
**counsel [12]** 5/19 7/20 8/5 15/13 18/6
19/4 19/6 21/15 41/21 42/2 42/3 50/17
**counsel's [1]** 18/25
**country [1]** 38/14
**County [5]** 3/2 7/7 28/16 29/12 29/16
**couple [3]** 28/7 39/18 47/7
**course [6]** 3/21 4/22 24/4 27/22 30/7
37/9
**court [42]** 1/3 1/6 1/9 1/1 1/23 4/23
9/20 11/22 17/13 21/7 21/12 21/24 22/1
22/17 24/21 24/25 25/25 26/14 27/4
30/18 34/19 35/17 35/18 35/24 35/24
36/13 37/14 37/15 38/16 39/24 44/23
47/14 47/17 48/24 50/11 50/23 52/14
56/6 56/7 56/10 56/17 56/17
**Court's [4]** 5/20 17/23 36/15 50/13
**Court-imposed [1]** 52/14
**courthouse [2]** 1/24 48/13
**courtroom [3]** 31/4 31/20 48/23
**courts [2]** 34/6 38/14
**covered [4]** 22/4 22/5 22/20 39/7
**CPO [1]** 17/7
**creates [1]** 41/22
**credibility [2]** 42/3 42/4
**cross [14]** 2/4 4/14 9/5 9/12 14/22
22/10 30/24 31/24 35/14 42/10 51/25
52/1 52/1 52/19
**cross-examination [3]** 51/25 52/1 52/1
**cross-examine [1]** 9/5
**cross-talk [3]** 31/24 35/14 52/19
**CRR [3]** 1/23 56/6 56/16
**crunch [1]** 11/21
**CURLING [6]** 1/4 2/2 3/7 14/7 22/9
44/25
**current [3]** 35/21 37/18 46/3
**currently [1]** 21/23
**cusp [1]** 8/22
**CV [2]** 1/6 3/8

**D**

**date [9]** 11/8 15/14 16/8 16/18 16/21
19/11 30/12 30/17 47/9
**dates [1]** 49/2
**DAVID [13]** 2/4 4/14 6/12 8/17 10/12
12/15 22/10 23/9 30/24 38/4 42/20

**DAVIS [1]** 2/11
**day [8]** 6/7 6/11 10/19 10/20 16/16 43/9
44/1 56/13
**days [6]** 1/4 49/1 49/13 49/23 49/24
52/24
**deadline [3]** 15/12 16/19 16/20
**deadlines [2]** 4/10 16/6
**deal [2]** 41/14 41/24
**dealing [1]** 45/14
**dealt [1]** 55/22
**December [11]** 6/4 6/5 11/9 11/19 12/5
15/13 15/20 16/19 17/6 47/9 53/16
**December 11th [1]** 11/9
**December 12th [1]** 15/20 16/19
**December 15 [1]** 53/16
**December 4th [1]** 17/6
**decide [2]** 21/24 51/21
**decides [1]** 22/24
**decision [4]** 17/24 23/2 40/17 42/11
**decisions [1]** 37/24
**deep [1]** 17/23
**defamatory [2]** 40/25 41/8
**defendant [3]** 31/3 31/8 38/16 38/17
**defendants [8]** 1/7 2/17 4/19 4/20 24/9
30/12 34/17 51/24
**defense [4]** 33/24 33/25 40/15 51/11
**defenses [1]** 31/16
**defer [1]** 51/20
**definitely [1]** 24/10 28/11
**definitive [1]** 34/2
**demonstration [2]** 9/10 9/14
**demonstrative [1]** 9/20
**deniers [1]** 40/20
**depends [2]** 13/1 49/11
**deposed [1]** 29/14
**deposition [6]** 17/15 24/17 24/20 24/22
25/1 29/17
**depositions [4]** 4/4 4/5 4/12 22/5
**depth [1]** 50/14
**description [1]** 7/23
**designated [1]** 41/23
**designation [1]** 24/17
**designations [3]** 17/15 24/20 25/1
**designee [1]** 29/12
**detail [1]** 54/14
**details [1]** 18/23
**determine [1]** 9/15
**determining [2]** 34/7 37/16
**DIANE [2]** 2/22 3/5
**did [15]** 11/24 13/17 14/22 17/10 22/23
28/6 29/5 35/17 35/18 35/25 36/8 39/16
44/3 53/20 53/22
**didn't [3]** 13/18 18/18 43/20
**died [1]** 6/23
**different [11]** 4/24 17/5 22/16 23/11
29/9 31/11 32/10 33/25 37/8 37/9 37/23
**difficult [4]** 30/21 36/18 44/20 45/9
**difficulty [2]** 37/1 51/13
**DIGGES [2]** 2/10 2/11
**directed [1]** 39/25
**directing [1]** 43/10
**disagree [2]** 11/12 39/5
**disagreement [1]** 38/13
**disagrees [1]** 18/10
**discovery [7]** 8/21 8/24 9/3 10/2 10/8
22/5 22/18
**discrete [1]** 7/16

**D**

**discuss [7]** 5/13 8/1 12/14 18/23 27/6 47/13 53/12
**discussed [2]** 21/11 23/22 52/11 52/14
**discussing [2]** 24/5 28/7
**discussion [4]** 12/14 24/13 29/2 29/23
**discussions [2]** 35/4 41/17
**dispense [1]** 18/1
**dispute [4]** 9/3 10/8 26/14 53/25
**distinguish [1]** 28/11
**DISTRICT [7]** 1/1 1/1 1/12 56/4 56/7 56/7 56/17
**DIVISION [2]** 1/2 56/8
**do [57]** 3/18 4/7 4/19 6/15 8/6 8/13 8/23 8/23 9/15 10/2 11/4 11/14 11/14 11/16 11/18 11/20 11/22 12/23 19/3 19/4 19/5 19/5 19/12 20/12 20/14 22/1 23/12 24/1 25/23 26/22 28/2 29/22 31/11 31/12 32/3 33/5 33/18 35/23 36/16 36/16 37/1 37/14 37/15 38/9 38/18 38/18 42/24 43/7 49/13 50/20 51/14 52/7 52/8 52/9 53/2 54/17 56/8
**doable [1]** 49/24
**Doc [1]** 53/25
**docket [4]** 1/5 1/5 9/2 10/9
**Docket 1246 [1]** 10/9
**document [1]** 1/8 19/17 47/19 48/4
**documentary [1]** 50/14
**documents [4]** 8/16 19/17 47/14 48/1
**does [10]** 17/11 17/11 21/15 25/14 35/22 36/3 38/15 43/8 49/22 50/16
**doesn't [7]** 7/25 12/25 28/10 32/12 32/12 46/16 51/23
**doing [8]** 9/4 9/9 20/20 21/25 31/8 31/10 38/17 49/23
**Dominion [1]** 28/16
**don't [65]**
**donations [1]** 46/2
**done [5]** 6/18 18/17 24/16 31/2 54/1
**DONNA [1]** 1/4 2/2 2/2
**double [1]** 52/1
**down [10]** 11/8 25/18 27/25 29/24 31/9 39/10 40/16 42/13 49/23 51/9
**Dr. [4]** 8/9 9/5 9/15 40/2
**Dr. Halderman [3]** 8/9 9/5 9/15
**Dr. Halderman's [1]** 40/2
**DRE [4]** 45/5 46/15 46/22 47/2
**DRIVE [1]** 1/24
**due [1]** 15/16
**DUMA [1]** 2/22
**during [2]** 4/22 21/18

**E**

**each [4]** 7/12 20/4 37/7 43/4
**earlier [3]** 6/18 29/2 53/20
**easier [1]** 26/3
**easy [1]** 19/5
**ECF [2]** 1/2 1/3
**educate [1]** 53/1
**efficiency [1]** 12/16
**efficient [3]** 4/8 4/22 52/17
**Eighth [1]** 36/10
**either [7]** 12/25 33/17 44/2 44/10 46/24 49/22 54/19
**election [2]** 23/15 40/20
**elections [2]** 23/17 28/16
**element [1]** 37/4

**elements [1]** 35/13
**else [14]** 3/4 4/7 5/14 5/23 14/12 15/4 27/9 39/15 39/16 39/19 44/16 47/4 48/10 48/23
**email [1]** 43/10
**emergency [1]** 15/24
**encompassed [1]** 17/7
**end [5]** 6/11 24/2 24/2 32/23 44/1
**ended [2]** 43/1 50/22
**ends [1]** 12/18
**energy [1]** 43/3
**engage [1]** 41/2
**ENGLISH [1]** 2/22
**enjoined [1]** 35/10
**enough [6]** 11/10 16/22 28/17 32/15 32/15 39/7
**enter [1]** 50/11
**entertain [1]** 8/6
**entities [2]** 28/15 28/23
**entitlement [1]** 46/24
**entry [4]** 1/5 15/12 43/10 43/16
**equipment [1]** 9/7
**equipped [1]** 27/11
**especially [2]** 21/12 23/15
**essentially [1]** 33/15
**establish [1]** 35/21
**et [7]** 1/4 1/6 3/7 3/8 8/16 19/15 53/14
**EUW [1]** 2/8
**even [6]** 7/22 11/6 19/4 33/21 45/16 46/8
**events [2]** 3/22 15/3
**ever [2]** 31/13 40/5
**every [1]** 31/14
**everybody [1]** 42/13
**everyone [7]** 7/23 26/3 30/2 32/18 32/24 41/18 52/22
**everything [1]** 10/5
**evidence [10]** 20/18 20/18 20/19 22/2 22/22 23/10 34/8 35/11 37/22 50/14
**evidentiary [1]** 4/22 5/23
**exactly [4]** 12/1 22/6 30/4 33/5
**examination [4]** 51/25 52/1 52/1 54/1
**examine [1]** 9/5
**example [7]** 7/5 7/6 25/13 31/2 31/6 36/10 38/10
**excellent [1]** 45/22
**except [1]** 25/16
**exchange [2]** 25/19 27/22
**exchanged [2]** 27/15 29/4
**exchanging [1]** 19/14
**exhibit [10]** 5/11 9/7 17/14 19/15 24/17 27/16 43/16 43/16 46/16 47/17 48/1
**exhibits [4]** 47/14 47/16 47/17 48/1
**expect [2]** 49/5 50/25
**expectation [2]** 6/15 53/3
**expecting [3]** 25/1 50/6 50/22
**expensive [1]** 46/21
**experience [1]** 46/9
**expert [3]** 8/24 10/2 39/21
**experts [7]** 8/23 9/4 22/4 22/22 31/20 41/3 41/8
**explain [1]** 35/10
**explicit [1]** 37/10
**extent [7]** 13/5 18/14 27/19 29/22 36/15 38/19 51/3

**F**

**fact [6]** 17/25 20/8 22/2 23/16 37/20

**facts [3]** 18/2 20/17 20/18
**failed [1]** 28/9
**fair [7]** 23/8 23/10 26/19 33/7 33/20 50/2 50/21
**fairly [1]** 3/9
**fallback [2]** 23/4 36/1
**false [1]** 41/7
**familiarity [1]** 17/24 20/17
**fancy [1]** 48/20
**far [3]** 24/14 28/9 41/16
**fashion [1]** 36/14
**feasible [1]** 50/7
**fee [4]** 45/13 46/4 46/16 47/2
**feel [2]** 3/18 35/8
**feelings [1]** 41/23
**fees [9]** 44/22 45/5 45/7 45/17 45/19 46/10 46/14 46/14 46/17
**Fight [4]** 23/8 23/10 26/19 50/21
**fighting [1]** 41/2
**figure [6]** 9/17 32/18 32/21 38/17 44/12 54/22
**file [13]** 5/8 5/22 7/3 7/4 7/7 12/4 12/4 12/21 14/13 14/18 16/9 16/13 54/20
**filed [9]** 1/2 1/6 1/8 3/11 6/4 9/3 11/19 14/11 45/7
**files [1]** 12/18
**filing [7]** 10/8 12/2 14/7 14/10 17/6 39/22 39/25
**filings [1]** 17/14
**Finally [1]** 46/12
**financial [1]** 46/4
**find [1]** 11/2
**finding [1]** 32/14
**findings [2]** 20/8 50/11
**fine [7]** 5/17 6/13 9/21 18/24 26/5 36/7 40/23
**finished [1]** 14/10
**finishing [1]** 45/13
**FIRM [1]** 2/14
**first [7]** 6/7 8/19 11/8 27/9 27/15 45/23 47/8
**fit [2]** 3/20 33/7
**fix [1]** 34/20
**flag [2]** 8/13 27/3
**focus [2]** 9/22 21/10
**focused [1]** 24/14
**FOERSTER [4]** 2/5 45/1 45/1 46/25
**folks [3]** 22/9 27/17 48/22
**follow [1]** 10/24
**follow-up [1]** 10/24
**following [2]** 1/1 53/8
**foregoing [1]** 56/8
**forward [2]** 32/15 40/4 40/23 53/24
**found [2]** 26/1 52/11
**frame [3]** 11/8 21/25 53/12
**framework [2]** 23/1 23/20
**frankly [8]** 9/3 18/10 18/13 21/18 23/1 29/23 33/3 41/8
**free [1]** 3/18
**fresh [1]** 43/2
**Friday [7]** 6/10 29/21 40/18 44/8 44/15 54/4 54/23
**front [2]** 9/2 23/21
**full [1]** 1/8 49/23
**fully [7]** 17/19 27/11 34/1 34/3 44/20 44/23 46/22
**Fulton [1]** 3/2

**F**

**funds [1]** 46/2
**further [5]** 28/1 29/24 41/25 42/5 54/19
**future [3]** 45/20 46/5 46/23

**G**

**gag [2]** 41/5 41/17
**gave [2]** 19/11 43/10
**general [2]** 19/22 24/24
**generally [4]** 22/11 24/21 25/15 26/1
**genuine [1]** 19/9
**GEORGIA [9]** 1/1 1/25 2/17 3/2 13/25
42/12 56/4 56/8 56/10
**get [30]** 6/16 6/17 7/7 9/25 12/3 13/10
14/4 15/11 16/10 16/25 17/3 18/3 21/1
24/12 29/15 30/11 31/23 33/12 34/23
41/1 42/22 43/5 44/1 45/4 45/23 48/12
48/22 52/21 52/22 54/1
**gets [4]** 5/25 23/2 26/12 47/20
**getting [4]** 3/10 14/19 46/2 46/2
**give [4]** 11/9 16/8 19/1 31/9
**given [10]** 3/15 6/9 17/23 21/3 23/10
23/20 45/20 47/22 48/14 48/14
**gives [1]** 49/20
**giving [1]** 12/13
**go [16]** 6/1 15/9 18/5 20/5 28/4 32/15
42/5 43/14 48/22 49/9 49/10 49/14
49/16 49/17 50/15 54/14
**goes [4]** 29/3 34/4 50/24 53/4
**going [68]**
**gone [1]** 48/21
**Gonzalez [4]** 3/20 23/22 33/4 42/24
**good [9]** 2/10 3/3 7/18 7/21 13/15 15/1
23/25 45/3 55/3
**got [6]** 9/5 22/15 32/3 41/10 43/25 52/9
**GOVERNANCE [2]** 2/10 45/3
**Governor [4]** 26/9 26/24 26/25 27/8
**granted [1]** 8/10
**great [4]** 16/12 16/15 53/18 54/25
**ground [1]** 39/7
**Groundhog [2]** 10/19 10/20
**grounds [1]** 14/9
**group [2]** 2/8 55/1
**guess [3]** 9/23 22/11 23/7

**H**

**had [35]** 3/11 3/13 3/24 4/10 4/20 5/5
5/6 5/10 6/24 7/1 9/13 9/14 9/22 11/8
11/21 16/4 17/12 18/8 20/25 21/2 21/11
21/12 23/12 23/22 25/9 26/12 27/16
28/7 32/14 37/7 39/18 40/14 51/19
52/23 56/9
**Halderman [3]** 8/9 9/5 9/15
**Halderman's [1]** 40/2
**half [4]** 50/6 50/16 52/5 53/2
**hand [4]** 33/22 33/24 38/10 56/12
**hand-marked [3]** 33/22 33/24 38/10
**handle [3]** 3/20 25/19 26/24 42/4
**handled [1]** 26/21
**handling [2]** 40/2 43/12
**handy [1]** 39/23
**happen [3]** 30/4 46/23 49/9
**happened [2]** 38/1 53/25
**happy [4]** 30/16 37/12 40/8 49/8
**hard [1]** 44/23
**harm [1]** 39/3
**has [18]** 1/6 4/24 7/4 21/7 22/5 23/20
28/9 29/18 30/18 31/8 32/4 34/4 36/18

36/17 40/14 44/23 45/7 47/14
**have [127]**
**haven't [8]** 3/15 8/9 25/24 31/21 33/16
44/8 48/21 52/11
**having [13]** 4/18 4/18 11/24 11/25 19/8
25/21 32/24 33/1 36/17 49/8 51/2 52/13
53/1
**he [5]** 8/18 8/19 25/15 42/10 48/18
**he's [1]** 9/20
**headed [1]** 50/21
**headphones [1]** 6/23
**hear [5]** 6/21 18/6 23/8 24/10 24/11
**heard [6]** 13/21 18/9 31/19 31/21 37/1
37/1
**hearing [9]** 8/20 13/16 13/22 31/19
35/17 39/23 40/6 47/3 53/24
**hearings [1]** 37/9
**heels [1]** 40/17
**held [1]** 56/10
**help [3]** 3/21 21/1 21/9
**helpful [15]** 10/25 11/3 18/11 19/25
20/23 21/6 21/9 23/8 23/16 23/21 40/11
42/14 42/14 44/16 48/16
**her [1]** 36/18
**here [9]** 3/7 6/6 6/25 7/5 20/17 21/13
26/15 28/17 31/13
**hereby [1]** 56/8
**hereunto [1]** 56/12
**herring [1]** 36/2
**him [3]** 9/17 48/21 48/23
**himself [1]** 26/9
**his [3]** 8/9 14/25 26/24
**hole [1]** 54/7
**honestly [4]** 9/16 10/12 32/6 32/21
**Honor [81]**
**Honor's [3]** 7/10 15/11 18/3
**HONORABLE [1]** 1/11
**hope [2]** 21/22 41/20
**hopeful [1]** 53/2
**hopefully [4]** 8/6 12/8 24/11 49/20
**hopes [1]** 42/11
**hoping [5]** 33/10 42/2 43/2
**HORST [2]** 2/7 45/2
**hot [1]** 41/22
**hours [1]** 52/17
**how [21]** 4/5 4/6 4/13 18/17 21/24
30/25 31/15 35/15 35/20 40/1 44/9
44/20 44/23 45/4 47/16 49/10 49/11
49/13 51/15 52/17 53/13
**however [1]** 1/7

**I**

**I'll [5]** 5/4 13/11 38/23 39/8 50/19
**I'm [51]** 5/16 6/6 6/6 6/8 7/19 8/20
10/11 10/12 11/1 11/7 14/10 15/9 18/18
18/20 19/18 20/3 20/14 21/17 22/21
31/9 31/25 32/8 32/13 33/3 33/4 33/10
34/1 35/5 35/8 35/9 38/12 38/20 40/4
40/8 41/4 41/4 41/15 42/2 42/19 42/21
42/22 43/2 43/17 49/7 50/19 52/5 53/2
53/6 53/9 54/16 55/1
**I've [5]** 6/24 31/2 33/14 37/1 52/9
**idea [4]** 7/18 7/21 15/20 23/25
**ideal [1]** 31/7
**ideally [1]** 53/5
**identified [1]** 30/19
**identify [8]** 13/17 19/5 28/9 28/18
28/22 30/13 30/21 32/22

**identifying [1]** 33/7
**III [2]** 2/11 2/14
**immediate [1]** 4/9
**impact [3]** 8/15 46/3 46/25
**implemented [1]** 37/19
**important [2]** 24/5 32/22
**impose [1]** 37/18
**imposed [1]** 52/14
**impossible [1]** 41/1
**inappropriate [1]** 35/6
**incentive [1]** 46/18
**include [1]** 17/5 50/4
**included [2]** 17/11 28/13
**includes [1]** 16/9
**including [4]** 21/25 28/15 40/2 49/25
**incorrect [1]** 54/13
**indeed [1]** 44/24
**indicate [1]** 25/20
**individuals [3]** 28/18 28/22 30/1
**inevitably [1]** 30/5
**influenced [1]** 37/24
**initial [1]** 27/15
**injunction [9]** 34/17 34/24 35/17 35/18
35/25 38/12 38/15 39/3 51/16
**injunctions [4]** 35/20 38/7 38/7 38/8
**injunctive [3]** 31/1 31/2 31/7
**input [1]** 14/4
**inspection [1]** 40/2
**instance [1]** 7/24 19/1
**instantaneously [1]** 6/9
**instead [2]** 38/1 38/18
**intend [6]** 7/3 24/21 28/11 34/3 47/15
51/18
**intended [2]** 18/13 44/2
**intensive [1]** 23/16
**intent [2]** 27/14 28/1
**intention [2]** 13/4 54/12
**interconnected [1]** 23/17
**interstitial [1]** 16/6
**intervene [2]** 14/3 14/9
**introduction [1]** 24/22
**involve [1]** 22/19
**involved [4]** 18/12 41/24 42/22 48/24
**involving [1]** 26/21
**irreparable [1]** 39/3
**is [326]**
**isn't [1]** 7/14
**isolate [1]** 17/12
**issue [18]** 7/23 8/6 8/8 9/10 20/7 22/23
25/6 29/3 34/4 35/2 35/24 36/17 36/18
39/21 43/21 45/17 47/13 54/11
**issued [2]** 35/17 38/14
**issues [25]** 4/3 4/15 4/22 5/10 5/24 6/7
12/9 13/6 18/2 18/9 18/24 19/20 21/10
24/6 26/12 26/16 26/17 26/21 27/1 28/7
33/9 39/19 46/14 47/7 50/13
**it [191]**
**item [3]** 8/1 19/18 47/5
**items [2]** 3/14 3/17
**iteration [1]** 31/14
**iterations [2]** 22/16 31/5
**its [1]** 44/23

**J**

**JACOUTOT [1]** 2/21
**January [5]** 10/13 10/14 10/15 39/22
43/10
**January 26 [1]** 10/14

**J**

**January 31st [1]** 39/22
**January 6 [1]** 10/15
**January 6th [1]** 10/13
**JEFFREY [1]** 2/2
**joined [2]** 3/4 13/16
**joining [2]** 13/18 14/25
**joint [2]** 16/6 17/6
**Jones [1]** 23/12
**Jones' [1]** 26/19
**JOSH [9]** 2/19 8/4 8/18 11/5 14/14 26/8
30/15 33/19 38/22
**judge [16]** 1/12 3/3 6/20 7/3 9/1 10/7
11/11 23/12 26/19 31/9 31/14 35/3
36/18 51/19 52/18 55/4
**judges [3]** 7/1 20/16 52/16
**judgment [12]** 5/20 12/2 17/24 21/2
21/5 21/7 21/13 27/23 29/6 44/24 45/14
50/12
**jump [3]** 4/17 14/1 18/8
**juncture [2]** 5/21 37/11
**jury [4]** 3/23 17/20 49/2 49/8
**just [68]**

**K**

**KAISER [8]** 2/5 4/15 15/7 17/9 20/1
20/6 28/5 47/6
**keep [6]** 13/6 20/3 23/19 33/18 49/8
52/10
**keeps [1]** 47/21
**key [1]** 7/10
**kind [21]** 3/23 5/5 8/14 9/9 16/5 16/8
16/11 21/1 21/3 21/8 21/9 21/12 23/10
23/12 23/22 23/22 27/15 29/3 29/11
42/15 49/11
**knew [1]** 27/17
**know [106]**
**knowing [1]** 29/21
**knowingly [1]** 41/7
**known [1]** 37/7
**knows [4]** 32/25 41/8 41/18 50/24
**KREVOLIN [2]** 2/7 45/2

**L**

**laid [1]** 23/1
**large [1]** 19/3
**largely [1]** 50/19
**LAROSS [2]** 2/22 3/5
**last [8]** 5/19 9/19 18/18 23/22 29/21
39/20 42/10 44/24
**late [2]** 13/20 52/23
**later [4]** 12/14 15/16 19/11 49/9
**LAURA [1]** 2/10
**law [6]** 2/13 2/14 6/9 20/8 34/20 47/18
**lead [1]** 19/5
**least [11]** 5/9 7/23 8/1 8/12 11/19 18/14
18/17 26/10 37/22 40/14 46/9
**leave [2]** 3/19 27/18
**leaving [1]** 50/10
**legal [3]** 18/2 18/9 18/24
**legislative [1]** 37/17
**length [1]** 53/14
**let [12]** 12/20 13/14 18/6 31/22 37/6
44/6 44/8 44/14 45/12 45/12 52/20 54/3
**let's [4]** 12/3 20/18 27/8 43/24
**level [1]** 45/9
**licensing [1]** 13/24
**light [1]** 3/19 21/5 21/6 33/21 34/12

50/20
**like [22]** 5/11 5/12 10/19 10/25 12/6
17/5 18/23 20/12 22/11 22/23 23/2
23/13 34/14 36/9 38/23 40/5 40/14 42/8
50/6 51/10 53/5 54/7
**likely [4]** 6/10 27/18 32/25 45/18
**limine [17]** 3/25 4/11 4/20 5/9 5/22 7/3
7/7 8/7 11/7 11/19 11/25 12/4 12/19
13/4 16/20 18/13 24/18
**limit [2]** 12/10 52/14
**limited [1]** 32/10
**limits [1]** 37/24
**line [3]** 1/6 21/22 23/8
**lines [1]** 23/23
**list [22]** 5/11 5/11 7/2 7/12 9/7 16/6
17/6 19/4 24/17 24/17 25/19 26/10 28/8
28/8 28/10 28/21 30/3 30/10 30/12 34/2
43/16 43/22
**listed [1]** 27/16
**listen [1]** 41/11
**lists [9]** 7/17 8/15 17/14 17/14 19/15
19/17 19/17 27/16 29/4
**litigate [1]** 35/1
**litigated [1]** 46/23
**litigating [1]** 45/6
**litigation [2]** 2/8 45/20
**little [6]** 3/11 6/18 29/18 37/9 50/24
52/21
**LITTLEFIELD [1]** 2/20
**LLC [1]** 2/20
**LLP [1]** 2/5
**local [1]** 17/16
**located [1]** 10/8
**logistical [3]** 39/18 47/7 48/10
**logistics [1]** 48/19
**long [9]** 4/6 4/13 8/20 8/24 9/24 13/9
49/10 49/11 52/22
**long-winded [1]** 52/22
**longer [3]** 29/14 47/21 50/5
**look [9]** 7/13 10/22 10/23 13/11 39/21
43/8 43/20 53/24 55/1
**looked [1]** 54/18
**looking [5]** 3/22 11/14 22/13 22/15
54/14
**loop [1]** 5/6
**lot [10]** 11/21 22/16 22/17 29/18 31/10
33/23 37/8 42/2 42/4 44/10
**lots [1]** 41/22
**lounge [1]** 48/13
**luck [1]** 55/3
**lunch [1]** 49/4

**M**

**made [6]** 4/20 4/21 8/21 19/13 42/15
47/10
**magnum [1]** 13/2
**major [1]** 46/19
**make [15]** 6/20 6/24 7/24 11/23 13/10
16/8 19/7 24/25 28/24 37/12 40/25 42/8
44/9 45/17 48/22
**makes [4]** 7/10 18/25 26/3 45/18
**making [3]** 9/10 23/23 43/3
**malware [4]** 8/9 40/3 43/12 54/1
**managing [3]** 25/13 25/21 49/12
**many [6]** 30/25 38/13 47/14 47/16
49/13 52/17
**marked [4]** 33/22 33/24 38/10 47/15
**Martin [1]** 47/25 48/18 54/6

**MARY [12]** 2/5 4/14 15/7 15/9 17/9
20/1 20/6 28/3 28/5 39/16 47/6 49/16
**master [1]** 48/19
**matches [1]** 42/15
**material [2]** 8/12 46/15
**matter [3]** 13/23 30/6 56/11
**matters [2]** 4/9 43/12
**may [29]** 1/2 1/4 5/7 5/12 7/12 9/18
9/19 9/21 10/7 12/12 12/21 14/15 14/17
14/18 18/13 28/10 28/12 29/16 30/7
32/2 32/7 32/13 32/14 33/5 33/6 50/10
51/13 54/11 54/13
**maybe [13]** 5/14 5/25 7/17 7/24 8/20
9/10 12/16 23/24 27/25 35/23 35/23
40/15 51/14
**McGUIRE [3]** 2/14 2/14 45/2
**me [28]** 3/24 4/12 6/21 8/2 9/2 10/5
12/3 18/6 19/8 31/22 37/6 37/12 37/17
40/5 41/15 42/5 44/6 44/8 44/14 45/12
45/12 45/18 47/19 52/20 53/1 54/6 54/7
54/22
**mean [21]** 6/6 7/20 8/20 9/18 12/25
17/19 18/24 19/8 19/18 22/14 25/3 32/8
32/9 32/12 32/19 36/25 41/17 43/1
44/10 51/23 53/8
**meaningful [2]** 46/3 46/25
**means [2]** 40/23
**meant [1]** 15/20
**measures [3]** 22/19 23/3 23/4
**MECHANICAL [1]** 1/21
**medical [1]** 13/25
**meet [1]** 35/22
**meeting [1]** 13/18
**members [1]** 26/22
**mention [1]** 54/10
**mentioned [1]** 54/13
**merits [1]** 51/17
**middle [1]** 35/4
**might [16]** 3/25 5/9 5/12 6/25 7/4 7/7
8/2 21/6 21/9 21/11 21/14 31/14 31/15
48/4 49/8 49/9
**mileage [1]** 29/16
**MILLER [11]** 2/19 5/6 5/14 5/18 9/1
10/7 11/11 18/7 27/13 29/1 50/18
**Miller's [3]** 18/25 28/13 30/16
**mind [2]** 23/4 43/2
**minute [1]** 49/3
**missed [1]** 26/15
**mistake [1]** 42/5
**mistaken [1]** 40/4
**modified [1]** 24/16
**moment [1]** 37/19
**Monday [3]** 17/1 17/1 17/4
**month [3]** 50/23 52/5 52/8
**more [16]** 4/8 4/21 8/8 8/14 8/15 12/8
32/8 32/10 39/13 42/25 44/20 45/9 45/9
49/20 52/16 52/24
**morning [3]** 44/14 47/11 49/3
**MORRISON [4]** 2/5 44/25 45/1 46/25
**most [8]** 4/15 11/3 17/13 20/16 37/14
37/15 37/18 42/14
**motion [14]** 7/7 11/7 11/18 12/4 13/6
13/13 14/2 14/8 14/25 44/22 44/24 45/5
45/13 45/15
**motions [18]** 3/25 4/11 4/19 4/25 5/9
5/22 6/4 7/3 8/7 11/25 12/19 13/4 14/1
16/20 18/13 24/18 26/13 29/6
**move [6]** 7/16 28/19 38/23 40/23 43/25

**M**

move... [1]  50/15
moving [2]  19/10 24/12
Mr [5]  9/12 14/22 28/13 30/16 42/10
Mr. [18]  3/20 5/6 5/14 13/19 14/15
18/25 23/22 33/4 34/14 34/21 34/22
38/5 42/24 45/2 46/13 47/25 48/18 54/6
Mr. Belinfante [4]  34/14 34/21 38/5
46/13
Mr. Brown [1]  34/22
Mr. Brown's [1]  14/15
Mr. Gonzalez [4]  3/20 23/22 33/4 42/24
Mr. Martin [3]  47/25 48/18 54/6
Mr. McGuire [1]  45/2
Mr. Miller [2]  5/6 5/14
Mr. Miller's [1]  18/25
Mr. Russo [1]  13/19
much [13]  3/6 4/21 8/15 9/4 12/14
20/17 25/10 32/1 33/16 39/1 46/18
54/25 55/3
must [1]  15/24
mutually [1]  15/14
my [19]  4/14 6/6 6/9 6/14 6/23 15/22
25/8 29/15 37/25 38/3 40/21 43/2 45/2
45/3 46/9 52/16 53/3 55/1 56/12
myself [2]  13/17 52/8

**N**

narrow [3]  25/18 27/25 29/24
nature [1]  23/17
nay [1]  12/13
necessarily [2]  3/14 11/12
necessary [9]  3/25 4/1 5/24 13/13
17/17 19/3 24/15 45/4 52/7
necessity [1]  4/4
need [34]  4/19 5/9 5/13 7/14 7/21 10/5
11/14 11/14 11/20 12/5 12/7 12/21
12/22 13/2 17/11 17/20 19/1 19/20
24/16 30/9 31/23 34/18 37/1 38/23
42/23 42/23 44/7 44/7 46/13 48/5 48/7
51/7 54/14 54/18
needed [1]  3/15
needs [2]  11/23 15/5
negative [1]  35/17
negotiate [4]  40/19 40/23 46/8 46/8
never [3]  13/19 52/23 52/24
new [4]  10/20 15/23 47/5 53/23
next [2]  7/17 43/9
no [19]  6/13 13/21 14/24 15/16 15/20
19/11 25/8 29/14 30/6 31/13 32/5 32/13
34/16 36/22 39/15 39/18 41/15 47/21
49/19
None [1]  8/22
nonjury [1]  20/9
nonsense [1]  16/2
noon [2]  44/8 44/15
Normally [1]  51/22
NORTHERN [3]  1/1 56/4 56/7
not [105]
nothing [4]  31/19 39/19 45/17 46/23
noticed [1]  9/6
NOVEMBER [5]  1/13 3/2 15/16 15/21
56/13
November 11th [1]  15/21
November 28th [1]  15/16
now [8]  6/1 6/3 16/21 22/2 24/6 45/6
47/18 51/22

number [8]  1/5 1/6 1/5 3/8 9/2 17/15
32/24 51/3

**O**

object [1]  26/11
objection [1]  26/22
objections [4]  4/4 4/11 19/17 25/19
obligation [2]  31/13 35/21
observations [1]  3/13
obviate [1]  54/14
obviated [1]  29/17
obvious [1]  32/9
obviously [10]  3/15 3/18 5/20 7/20
10/22 16/2 30/9 41/15 45/13 52/6
occur [2]  20/15
occurred [1]  27/22
October [2]  3/12 15/4
off [8]  4/25 12/2 14/2 45/13 52/4 52/5
52/8 53/4
offer [3]  14/22 25/12 31/21
office [4]  27/17 27/20 28/15 47/21
official [8]  1/1 1/2 1/3 1/7 1/23 40/18
56/6 56/17
often [1]  31/2
oftentimes [1]  31/6
oh [5]  15/9 18/4 18/5 18/20 49/16
okay [29]  10/3 10/10 10/17 12/3 12/11
13/8 13/9 14/12 14/21 17/23 18/21 22/8
24/13 25/5 26/7 27/24 29/25 35/24
39/20 44/4 47/4 48/2 48/6 48/16 51/21
53/18 53/23 54/24
once [3]  10/18 14/15 51/9
one [35]  4/16 6/19 6/24 7/5 7/22 8/13
12/15 15/11 16/4 20/7 20/25 21/5 23/7
24/19 25/12 26/10 28/10 30/8 37/17
38/5 39/8 39/21 40/11 40/14 42/10 43/3
47/13 48/7 48/12 48/14 48/15 51/8 51/9
52/13 54/10
only [12]  1/2 1/6 6/14 17/6 26/9 28/14
32/23 35/21 43/5 43/15 43/21 51/1
open [2]  11/16 30/19
opinion [1]  45/17
opinions [1]  31/20
oppose [1]  24/22
opposing [2]  14/8 51/24
opposition [1]  14/25
options [1]  22/25
opuses [1]  13/2
order [39]  3/19 5/20 7/10 12/2 15/4
15/12 15/16 16/9 16/14 16/17 17/4
17/11 17/17 17/21 18/10 18/12 19/19
19/21 19/21 19/24 20/9 21/2 21/5 21/13
22/15 22/23 24/15 27/23 33/21 34/12
36/16 36/19 39/19 40/1 41/5 42/16
43/11 45/5 49/2
orders [1]  41/17
original [1]  15/3
other [37]  3/19 6/24 7/1 11/7 12/15
15/2 18/1 18/23 19/16 19/20 20/4 20/7
20/25 23/3 25/1 25/6 25/24 28/15 31/12
34/19 36/17 37/7 37/18 38/5 38/16
39/12 40/10 40/22 41/18 43/4 43/4
43/12 47/13 48/3 48/12 52/9 52/13
others [3]  32/7 40/15 46/8
Otherwise [1]  54/22
our [39]  3/10 3/11 9/4 16/5 17/20 18/13
21/20 22/4 22/6 22/22 22/22 23/4 26/12
26/25 27/1 29/6 29/19 31/19 35/21 36/8

56/12 38/20 36/22 37/1 38/25 40/7 41/1
41/3 41/8 42/8 46/1 46/1 46/2 46/3
46/24 47/1 50/9 50/9 54/11
out [23]  3/11 5/5 5/25 8/14 9/17 9/24
9/25 10/1 23/1 24/10 27/16 28/23 29/15
32/19 32/21 36/7 36/23 38/18 44/12
47/3 52/3 53/6 54/22
outside [1]  38/3
over [5]  13/24 15/22 20/4 48/21 48/23
overt [1]  36/3
own [8]  10/23 30/10 39/1 46/1 51/18
51/18 51/22 51/23

**P**

P.M [2]  1/14 17/4
package [1]  23/2
page [6]  1/5 13/6 15/12 21/3 39/25
42/16
Page 3 [1]  15/12
Page 37 [1]  39/25
Page 5 [2]  21/3 42/16
pages [1]  56/9
paper [6]  33/22 37/10 38/10 47/13
47/14 47/22
paragraph [1]  7/22
part [11]  5/15 7/10 8/7 23/13 26/12
34/4 34/6 34/24 35/12 48/4 51/23
partial [1]  1/8
particular [5]  7/25 30/13 47/10 50/20
54/4
particularly [4]  5/23 6/25 29/4 34/11
parties [7]  7/2 7/14 10/23 17/13 18/11
27/7 52/14
parties' [1]  24/3
partner [1]  4/14
partners [1]  45/1
party [1]  51/25
past [3]  26/12 37/22 37/23
pay [3]  46/7 46/9 46/21
payment [1]  45/19
PDF [1]  1/1
pending [1]  29/6
people [14]  25/3 27/20 30/3 30/6 30/6
32/3 32/24 34/2 34/6 43/3 45/21 47/1
51/22 52/18
percent [3]  5/2 32/18 37/13
perhaps [7]  8/8 8/14 12/10 26/11 37/8
37/12 37/13
period [1]  1/4
person [5]  34/7 44/19 53/10 53/13
53/16
personal [1]  45/8
perspective [3]  7/22 51/2 51/13
persuade [2]  34/18 35/24
pertain [1]  17/19
peruse [1]  12/20
petition [1]  45/7
phase [1]  46/22
phone [5]  15/23 18/8 18/22 19/9 53/10
physical [1]  22/19
piece [1]  46/22
pieces [5]  16/7 16/10 17/5 21/4 23/17
place [1]  28/19
placeholder [3]  27/19 28/19 29/13
placeholders [1]  28/13
plaintiff [2]  31/3 31/7
plaintiffs [24]  1/5 2/2 2/10 16/21 21/7
21/15 23/12 23/23 24/1 24/10 30/7

**P**

**plaintiffs... [13]** 30/17 32/4 32/11 32/20 33/22 37/2 40/12 40/13 42/14 44/25 51/3 51/6 51/24
**plaintiffs' [9]** 4/17 5/19 13/10 14/8 23/10 29/20 42/3 49/14 51/10
**plan [1]** 26/22
**planning [8]** 9/9 9/13 14/12 48/20 48/20 50/9 52/21 53/14
**played [2]** 9/24 51/15
**please [2]** 13/12 19/2
**PM [1]** 55/7
**point [8]** 4/20 11/13 28/13 29/7 29/11 30/16 45/22 52/5
**points [2]** 21/1 21/3
**portion [4]** 1/4 50/1 50/1 51/4
**position [6]** 5/21 6/8 36/5 40/18 41/15 46/4
**positions [1]** 43/4
**positively [1]** 33/17
**possible [6]** 11/1 18/23 25/21 30/11 32/23 33/7
**possibly [3]** 15/21 19/10 19/12
**posture [1]** 40/22
**potential [2]** 21/4 43/11
**potentially [1]** 8/11
**power [1]** 36/15
**practical [1]** 51/15
**practice [3]** 45/2 45/2 50/24
**practices [2]** 46/2 47/1
**pragmatically [1]** 4/8
**prefer [2]** 20/13 20/14 47/17
**preliminary [2]** 35/16 51/16
**prepare [1]** 3/16
**prepared [5]** 13/10 24/1 27/11 37/21 53/12
**present [4]** 24/1 25/22 37/21 50/1
**presentation [3]** 22/6 23/13 29/20
**press [2]** 35/7 42/10
**pretrial [27]** 5/25 15/16 16/9 16/14 16/16 16/22 16/23 17/3 17/10 17/13 17/17 17/21 18/10 19/19 19/21 19/23 19/24 20/9 24/15 26/13 35/2 35/4 39/14 39/17 39/19 47/8 53/11
**prevail [2]** 32/16 35/23
**previously [1]** 3/12
**PRICE [1]** 2/2
**primary [1]** 22/14
**prior [3]** 18/17 27/22 37/9
**prison [2]** 36/11 36/12
**prisoners [1]** 36/17
**prisons [2]** 36/17 36/17
**pro [1]** 14/3
**probably [10]** 4/12 7/20 29/8 29/24 32/11 37/23 38/14 39/7 49/19 49/24
**problem [3]** 15/25 25/21 34/20
**proceed [4]** 11/7 15/14 37/18 44/9
**proceeding [1]** 14/3
**proceedings [5]** 1/10 1/21 6/1 55/6 56/9
**process [7]** 3/10 13/24 29/10 40/1 43/1 45/24 47/2
**produced [2]** 1/22 28/9
**professional [1]** 45/9
**progress [1]** 19/13
**prohibited [1]** 1/7
**prohibitory [5]** 34/17 35/18 38/7 38/11

38/13
**projection [2]** 46/4 49/13
**properly [1]** 18/1
**proposal [5]** 23/23 40/9 42/9 42/15 52/12
**propose [2]** 38/3 40/1
**proposed [2]** 15/15 20/8
**proposing [1]** 44/13
**protective [2]** 40/1 43/11
**provide [3]** 7/2 34/2 47/15
**providing [1]** 7/22
**publicly [1]** 40/25
**purpose [1]** 15/15
**purposes [1]** 9/20
**pushed [1]** 34/5
**put [12]** 11/8 20/10 22/2 22/22 26/2 26/22 29/13 32/6 32/7 35/3 42/9 47/22
**putting [4]** 30/3 30/9 48/3 48/3
**puzzle [1]** 21/4

**Q**

**question [12]** 21/18 25/9 27/15 29/8 29/10 32/1 32/5 37/15 43/8 44/20 47/25 50/3
**questions [1]** 27/12
**quicker [1]** 18/8
**quickly [2]** 7/16 12/20
**quite [3]** 31/25 33/24 43/17
**quote [2]** 40/19 42/19

**R**

**RAFFENSPERGER [2]** 1/6 3/8
**raise [6]** 3/17 26/13 28/7 44/20 47/5 47/8
**raised [1]** 25/25
**raises [1]** 8/8
**raising [1]** 46/13
**random [2]** 13/18 13/19
**rather [2]** 18/8 28/19
**reach [1]** 12/19
**reached [1]** 28/23
**read [4]** 9/10 10/18 12/21 12/25
**reading [1]** 42/19
**ready [5]** 3/10 19/14 21/18 24/9 24/11
**real [1]** 33/8
**realistic [3]** 11/20 16/18 50/17
**realistically [1]** 32/22
**realities [1]** 45/20
**reality [3]** 45/16 51/15 52/23
**realize [2]** 41/22 52/22
**really [21]** 3/25 4/3 9/6 24/14 29/15 30/8 32/12 32/25 33/1 33/16 35/7 37/3 41/11 41/23 42/8 42/21 43/15 43/21 45/3 46/25 51/1
**reason [2]** 9/6 46/19
**reasonable [2]** 45/20 49/24
**recall [6]** 5/7 5/14 7/5 8/21 9/18 40/6
**recalling [1]** 51/10
**received [2]** 28/24 40/5
**recent [4]** 7/10 9/7 17/24 52/16
**recently [1]** 48/21
**recognized [1]** 36/18
**record [10]** 22/25 34/2 43/8 43/9 47/20 47/22 47/23 48/4 50/13 54/21
**red [1]** 36/2
**referencing [1]** 1/5
**reflects [1]** 54/21
**regard [1]** 14/23

**regarding [3]** 19/21 19/23 43/11
**regardless [1]** 34/3
**reiterate [1]** 40/7
**related [2]** 5/23 13/25
**relative [1]** 37/14
**relatively [1]** 15/23
**relief [11]** 22/12 22/14 22/17 23/5 31/1 31/2 31/4 31/7 34/19 34/19 37/16
**rely [1]** 31/17
**remedial [3]** 21/4 23/11 37/16
**remedies [5]** 23/13 34/6 38/6 39/2 39/2
**remedy [23]** 21/8 29/3 29/23 30/17 30/19 30/22 32/1 32/10 32/13 33/9 34/5 34/7 34/16 35/12 36/6 36/9 36/14 37/3 37/16 38/3 38/12 38/16 39/4
**remember [2]** 15/22 50/12
**removed [1]** 18/9
**render [1]** 18/13
**repeatedly [1]** 46/13
**replacing [1]** 27/7
**replies [2]** 6/5 6/10
**reply [3]** 12/5 12/6 12/7
**Reporter [5]** 1/3 1/6 1/23 56/6 56/17
**representation [1]** 26/25
**representative [1]** 27/20
**representatives [3]** 28/14 28/20 30/14
**reputations [1]** 41/3
**request [2]** 8/21 10/4
**requests [1]** 37/10
**require [2]** 7/1 38/15
**required [3]** 20/9 34/24 38/19
**requirements [1]** 35/22
**reserve [1]** 29/19
**resolution [7]** 10/11 10/13 12/19 46/8 46/15 46/20 54/19
**resolve [7]** 8/2 8/6 10/25 44/6 44/14 46/12 46/13
**resolves [1]** 25/8
**respect [8]** 11/24 11/25 18/12 18/15 22/3 24/19 29/2 29/12
**respectfully [2]** 8/18 34/22
**respond [9]** 12/13 12/22 14/5 21/16 29/8 29/9 29/19 34/14 42/15
**responded [2]** 33/17 42/9
**response [7]** 10/4 13/11 14/13 14/15 16/20 28/24 43/9
**responses [3]** 6/5 6/16 45/23
**responsibility [1]** 16/1
**rest [1]** 15/3
**restricted [1]** 1/3
**result [1]** 45/19
**reverted [1]** 37/25
**review [1]** 6/8
**RICARDO [1]** 2/11
**rid [1]** 34/23
**right [27]** 6/1 6/3 6/3 10/17 10/22 12/3 14/11 15/1 15/2 17/8 21/1 22/1 25/20 27/5 27/19 34/15 37/19 38/7 39/11 41/10 42/12 42/21 43/24 47/4 51/22 52/4 54/9
**rights [1]** 29/19
**RMR [3]** 1/23 56/6 56/16
**road [1]** 40/16
**ROBBINS [1]** 2/20
**ROBERT [2]** 2/14 2/14
**roll [1]** 36/23
**rolling [1]** 52/10
**room [2]** 23/24 48/13

**R**

**ROSS [1]** 2/20
**Roughly [1]** 49/7
**rule [5]** 25/13 25/14 25/16 25/18 51/9
**Rule 32 [1]** 25/16
**ruled [2]** 4/11 21/7
**rules [1]** 17/16
**ruling [1]** 26/19
**run [1]** 49/19
**running [2]** 23/17 33/1
**RUSSO [3]** 2/18 13/16 13/19

**S**

**said [12]** 5/8 15/19 18/19 22/18 26/15 42/10 42/17 42/18 43/18 43/19 54/16 56/10
**sake [2]** 12/16 24/9
**same [7]** 4/20 24/5 30/1 33/8 35/24 49/5 53/11
**satisfy [1]** 39/2
**saw [1]** 43/15
**say [32]** 4/16 7/14 7/23 10/1 13/2 13/12 13/12 16/25 20/18 22/11 22/14 27/19 30/7 31/7 31/13 31/20 31/22 32/8 33/16 35/6 36/6 36/7 37/6 38/23 42/22 42/25 43/6 43/17 45/12 49/18 50/19 53/20
**saying [13]** 12/13 23/9 25/15 34/1 35/8 37/11 37/12 37/21 38/11 41/10 41/25 42/6 49/25
**says [3]** 8/19 15/13 31/9
**scanned [2]** 47/20 48/5
**scanning [1]** 47/25
**scenario [1]** 25/9
**schedule [6]** 3/11 3/14 6/4 15/14 18/22 48/22
**scheduling [1]** 15/3
**scheme [1]** 37/17
**SCHOENBERG [1]** 2/3
**scope [10]** 5/10 5/23 21/8 22/12 24/23 25/16 27/18 29/5 31/4 37/25
**scope-type [1]** 5/10
**scratch [1]** 53/1
**se [1]** 14/3
**Second [1]** 45/25
**secret [1]** 34/16
**Secretary [9]** 26/11 26/16 26/18 26/19 26/21 27/8 27/9 28/14 42/11
**Secretary's [3]** 27/17 27/20 29/10
**sections [2]** 17/19 18/1
**secure [1]** 42/12
**security [1]** 22/19
**see [18]** 3/20 9/20 14/15 20/11 27/4 29/16 33/7 40/8 44/13 45/18 46/16 46/17 47/9 47/16 48/12 52/8 52/10 55/1
**seek [2]** 33/22 34/16
**seeking [6]** 21/8 23/14 30/18 32/9 35/12 37/3
**seeks [1]** 34/7
**seemed [2]** 3/14 3/24
**seems [2]** 4/21 19/8
**seen [1]** 8/10
**send [8]** 10/5 39/24 39/25 43/11 44/2 44/3 44/13 54/20
**sending [1]** 54/7
**sends [1]** 7/12
**SENIOR [1]** 1/12
**sense [6]** 16/8 18/25 33/12 44/9 47/10

9/2
**sent [1]** 40/8
**sentence [1]** 18/18
**separate [1]** 17/6
**separately [1]** 16/10
**serious [1]** 41/20
**seriously [1]** 46/16
**session [1]** 33/14
**set [5]** 7/16 21/12 47/9 47/10 56/12
**settle [1]** 46/18
**settlement [5]** 35/4 35/9 40/10 40/24 41/5
**seven [2]** 44/24 45/6
**several [6]** 17/19 28/15 28/23 30/19 45/23 46/6
**shall [1]** 15/16
**SHANNON [3]** 1/23 56/6 56/16
**short [10]** 13/4 13/9 19/16 22/25 31/11 33/18 49/4 50/10 54/11 54/21
**shortage [1]** 44/7
**should [14]** 3/18 9/24 15/13 20/20 28/18 30/9 32/5 32/6 35/11 46/19 49/5 53/9 53/12 54/17
**show [4]** 36/12 36/20 36/22 39/3
**showing [2]** 21/22 43/22
**side [8]** 4/18 7/12 16/5 27/1 33/17 38/25 40/15 40/22
**sides [1]** 7/17 26/1 31/3
**significant [1]** 8/15 14/19
**significantly [2]** 25/18 29/24
**similar [2]** 23/21 35/16
**simply [2]** 13/5 48/5
**since [10]** 3/23 4/1 4/10 6/25 21/12 23/20 28/6 33/14 34/10 49/5
**single [1]** 13/6
**sit [1]** 9/25
**situations [1]** 46/7
**six [2]** 10/1 50/22
**skeptical [1]** 50/19
**slower [1]** 50/24
**smart [1]** 15/22
**so [91]**
**software [3]** 22/19 23/2 33/25
**some [30]** 3/13 3/24 5/6 5/10 5/12 5/25 7/15 7/25 12/8 15/24 17/17 18/1 18/14 18/16 21/3 21/13 23/20 25/6 27/1 30/5 31/16 33/12 37/9 37/22 39/2 43/2 45/8 46/7 49/20 51/13
**somebody [8]** 3/4 5/14 14/3 27/9 27/10 27/10 42/23 53/23
**someone [3]** 4/16 13/18 41/23
**something [25]** 7/14 7/24 8/1 8/2 8/5 9/24 12/13 13/12 14/18 18/19 19/16 20/10 20/11 24/22 27/4 30/8 38/9 40/8 41/13 50/5 50/6 53/4 53/24 54/20 54/21
**sometimes [1]** 52/15
**soon [3]** 11/1 18/23 43/2
**sooner [1]** 45/23
**sorry [15]** 5/16 6/12 6/20 6/20 6/23 7/19 8/4 10/11 11/4 15/9 17/3 18/18 18/20 20/3 50/2
**sort [8]** 3/12 4/9 11/14 12/6 24/14 31/7 35/24 49/23
**sound [1]** 50/16
**sounds [2]** 38/23 40/14
**SOUTHWEST [1]** 1/24
**SPARKS [1]** 2/6
**speaking [2]** 14/1 49/7

**special [2]** 35/13 33/14
**specific [3]** 28/18 28/22 38/9
**specifically [2]** 5/15 17/18
**spend [1]** 7/14
**spoke [1]** 5/19
**spokesperson [1]** 40/19
**spot [2]** 33/5 35/3
**spots [1]** 3/24
**spurred [1]** 3/19
**staff [4]** 11/2 26/22 44/23 48/24
**staffing [1]** 46/1
**stage [1]** 8/24
**stand [2]** 6/1 39/10
**standard [1]** 34/7
**standing [1]** 49/2
**start [1]** 43/21
**started [2]** 43/21 45/23
**starting [1]** 29/11
**state [33]** 2/17 5/3 5/21 7/6 7/25 11/6 12/18 13/25 18/10 24/21 25/14 27/8 27/9 28/8 32/4 32/19 35/18 35/19 36/1 36/16 36/21 39/25 40/18 41/21 43/8 43/11 45/7 46/7 46/16 50/5 50/5 51/17 52/12
**State's [9]** 13/4 18/6 18/25 28/14 30/9 50/1 50/17 51/2 51/13
**State's intention [1]** 13/4
**State's perspective [2]** 51/2 51/13
**State's portion [1]** 50/1
**stated [1]** 56/11
**statement [2]** 18/2 19/2
**statements [2]** 41/1 41/7
**STATES [6]** 1/1 1/12 1/24 56/3 56/7 56/17
**STENOGRAPHY [1]** 1/21
**step [1]** 41/16
**steps [1]** 38/9
**sticks [1]** 8/14
**still [4]** 7/8 10/24 11/7 52/23
**stipulated [1]** 18/2
**stop [2]** 31/8 38/17
**straightforward [1]** 3/23
**stress [1]** 45/4
**structure [3]** 12/10 21/3 21/12
**structuring [1]** 4/7
**struggle [2]** 11/23 11/25
**struggling [1]** 29/11
**subject [1]** 13/23
**subpoenas [1]** 26/2
**substantive [1]** 8/8
**such [1]** 18/1
**suddenly [1]** 10/1
**suggest [1]** 25/24
**suggested [1]** 7/6
**suggestion [2]** 6/19 6/24
**summary [12]** 5/20 12/2 17/24 21/2 21/5 21/7 21/13 27/23 29/6 44/24 45/14 50/12
**support [1]** 46/3
**supported [1]** 22/24
**sure [18]** 4/3 5/8 6/7 7/24 10/12 12/1 13/7 21/17 24/25 26/18 32/1 33/3 38/12 38/20 41/4 43/17 48/22 54/16
**surfacing [1]** 35/4
**surprise [1]** 26/14
**surprised [1]** 27/4
**sussed [1]** 5/25
**switched [1]** 45/13

**S**

**system [4]** 21/23 35/22 37/19 37/23

**T**

**table [5]** 7/9 29/23 31/2 40/21 42/9
**take [9]** 4/1 4/13 4/15 4/22 4/25 16/1 20/10 46/16 55/3
**taken [1]** 39/21
**taking [1]** 52/8
**talk [24]** 3/9 4/10 9/17 11/15 15/5 17/10 17/18 21/6 27/8 31/24 33/11 35/14 39/4 42/23 42/23 44/5 44/7 47/24 47/24 48/18 52/19 53/8 53/11 54/18
**talked [7]** 4/18 9/13 16/5 22/18 24/18 41/5 42/16
**talking [16]** 8/18 9/21 14/2 20/4 27/7 28/6 30/20 32/17 33/15 33/18 35/9 39/22 40/12 40/13 53/15 54/22
**talks [1]** 40/24
**TAYLOR [1]** 2/22
**technically [1]** 26/24
**technology [3]** 48/21 48/23 48/24
**TED [1]** 1/24
**telephone [1]** 1/10 3/7 15/25
**tell [9]** 24/7 31/11 35/18 37/2 38/8 54/6 54/6 54/7 54/17
**telling [1]** 35/19 38/16
**tells [1]** 52/18
**terms [17]** 11/6 12/6 17/13 21/24 22/12 24/14 33/1 36/15 37/16 45/25 46/1 46/1 46/19 49/1 49/11 50/9 54/17
**terrible [1]** 35/8
**testified [1]** 39/1
**testify [3]** 8/9 51/6 51/7
**testimony [4]** 25/14 26/24 29/17 56/12
**than [18]** 15/16 19/11 19/16 25/1 25/10 28/19 29/9 32/8 32/10 37/18 38/16 41/25 42/5 48/3 49/20 50/5 50/24 52/24
**thank [21]** 3/6 13/8 14/12 14/21 20/6 24/8 25/11 38/24 39/9 39/11 47/3 47/12 48/6 48/25 53/18 54/8 54/25 54/25 55/3 55/4 55/5
**Thanks [1]** 15/10
**that [401]**
**that's [7]** 5/17 6/13 8/13 33/16 35/13 40/23 52/2
**their [19]** 8/22 24/2 26/2 28/8 28/21 29/20 30/12 31/7 31/16 39/1 40/18 41/3 42/3 43/4 51/4 51/18 51/18 51/22 51/23
**them [16]** 12/20 12/21 24/11 25/22 28/24 32/6 32/6 34/11 37/22 38/2 38/9 39/2 40/6 44/1 46/18 51/5
**then [33]** 7/3 7/15 7/23 9/10 12/5 16/13 16/17 17/4 17/23 21/24 22/25 25/22 31/8 35/1 36/1 36/23 38/17 41/2 42/24 43/25 44/5 44/5 44/6 44/11 44/19 47/19 47/19 47/20 48/21 49/1 50/23 53/4 54/13
**there [58]**
**there's [4]** 7/15 7/24 14/2 30/8
**thereby [1]** 55/6
**therein [1]** 56/11
**these [11]** 4/15 6/8 6/17 13/2 16/5 16/9 27/19 29/4 37/7 46/7 52/24
**they [66]**
**thing [20]** 4/16 12/16 16/4 20/25 21/5 21/11 23/7 24/19 25/24 31/12 32/22

**this [96]** 36/5 46/16 40/11 48/12 30/7 51/7 52/13 54/10
**things [20]** 3/13 3/22 5/11 5/11 5/12 17/6 21/2 21/10 23/2 24/12 26/3 30/19 31/11 32/13 39/12 39/20 42/13 49/9 52/15 53/11
**think [94]**
**thinking [10]** 12/9 19/18 20/20 22/21 23/19 43/21 49/10 49/15 49/19 50/9
**thinks [1]** 53/23
**third [1]** 46/6
**this [127]**
**those [20]** 4/9 4/25 5/16 7/17 9/19 17/18 18/16 20/23 21/10 23/4 23/23 24/5 25/2 28/12 28/23 28/24 30/20 40/25 41/7 41/21
**though [3]** 12/24 16/1 32/22
**thought [4]** 4/13 5/12 17/12 23/20
**thoughts [3]** 4/6 6/14 18/3
**three [5]** 9/25 48/5 49/20 50/22 50/23
**through [5]** 16/11 17/18 27/1 35/16 40/18
**throughout [1]** 22/20
**till [1]** 24/6
**time [33]** 3/15 4/1 5/19 7/14 8/20 8/24 9/19 9/22 9/24 11/8 11/10 12/1 12/20 15/14 16/22 20/10 21/25 22/7 29/4 30/1 34/11 39/6 43/21 44/7 45/8 45/14 47/10 48/22 52/3 52/14 53/12 53/12 53/14
**timeliness [2]** 14/9 40/7
**times [2]** 28/23 54/4
**tiny [1]** 32/24
**today [3]** 14/11 36/4 47/8
**together [2]** 15/15 20/11 27/7
**told [3]** 36/8 36/9 52/16
**tomorrow [1]** 10/6 11/3 44/1 44/12
**ton [1]** 3/15
**toning [1]** 42/13
**too [4]** 6/11 23/24 34/5 43/1
**took [1]** 3/11
**top [1]** 15/12
**topic [3]** 27/21 36/4 54/10
**topics [1]** 7/2
**totally [1]** 35/5
**TOTENBERG [3]** 1/11 3/3 36/18
**touch [1]** 39/13
**town [1]** 53/6
**transcript [8]** 1/1 1/5 1/7 1/8 1/10 1/22 39/23 56/9
**transcripts [1]** 1/2
**trial [48]** 3/11 3/16 3/23 4/2 4/6 4/21 4/23 5/5 5/24 6/17 7/1 8/22 10/1 12/23 12/25 17/25 20/15 20/16 20/21 20/24 21/9 22/5 23/5 23/8 24/2 24/6 24/23 28/17 29/5 29/21 32/15 33/2 35/16 47/15 47/17 49/1 49/2 49/6 49/10 49/11 49/19 49/23 50/4 50/15 50/21 51/17 51/19 54/15
**trials [11]** 6/25 11/21 17/20 30/25 31/1 31/6 31/15 49/2 52/9 52/13 52/16
**tried [6]** 8/10 8/19 17/12 18/2 18/9 27/18
**TRO [2]** 13/16 13/21
**true [1]** 56/9
**try [4]** 4/13 6/17 10/25 32/21 32/22 34/2 41/21 41/21 53/9
**trying [7]** 10/16 20/25 29/19 33/7 35/3 37/2 41/24

**this [96]** 5/13
**turn [1]** 31/18
**TURNER [1]** 1/24
**two [17]** 15/25 39/12 39/20 47/18 49/19 49/20 49/24 49/25 50/1 50/6 50/6 50/16 50/16 50/23 52/4 52/24 53/2
**type [1]** 5/10
**types [3]** 21/10 38/6 40/25
**typically [1]** 20/9
**TYSON [8]** 2/21 5/4 15/8 16/3 20/22 23/6 26/5 42/7

**U**

**ultimately [3]** 33/6 47/22 47/25
**unavailable [4]** 25/2 25/4 25/15 25/17
**unconstitutional [4]** 21/23 36/13 36/21 36/23
**under [5]** 25/13 26/23 33/3 34/20 50/11
**understand [7]** 11/20 18/24 29/25 37/2 41/19 44/22 51/15
**understandably [1]** 41/2
**understanding [3]** 50/13 51/7 54/12
**understood [2]** 29/13 54/16
**unfortunate [1]** 25/9
**unintelligible [6]** 14/16 18/15 31/24 35/14 37/4 52/19
**UNITED [6]** 1/1 1/12 1/24 56/3 56/7 56/17
**unless [4]** 4/24 25/6 40/4 50/5
**unnecessary [2]** 18/13 34/19
**until [3]** 9/25 29/20 31/3
**untimely [1]** 8/25
**up [20]** 4/1 4/22 10/24 12/18 16/10 22/1 22/2 26/22 31/15 32/23 35/1 36/1 36/13 42/11 42/15 42/18 43/15 43/22 50/22 51/8
**update [1]** 30/12
**updating [1]** 33/25
**upon [5]** 4/11 45/4 46/3 46/25 47/1
**urge [1]** 45/3
**us [28]** 11/9 12/21 14/20 15/25 16/8 20/12 21/1 21/9 23/20 25/1 28/9 29/24 30/21 35/3 37/3 38/8 38/20 39/25 40/8 40/11 44/25 45/4 47/3 48/16 50/4 52/8 52/16 54/3
**use [2]** 9/19 16/19
**used [1]** 9/19
**useful [3]** 7/4 21/12 21/14
**using [1]** 4/5
**usually [2]** 19/2 19/19

**V**

**variety [1]** 23/11
**various [2]** 27/17 31/5
**versa [1]** 13/13
**version [1]** 48/5
**versus [2]** 28/10 28/12
**very [17]** 3/6 8/24 8/25 15/1 15/22 19/3 23/16 24/5 30/2 30/21 37/15 46/3 46/20 52/22 54/21 54/25 55/3
**vice [1]** 13/13
**videos [2]** 9/18 9/19
**view [2]** 4/24 18/25
**VINCENT [2]** 2/18 13/16
**vista [1]** 32/10
**voluminous [1]** 51/2
**VON [1]** 2/8
**vote [1]** 42/12

**V**

**voting [1]** 37/23
**vs [1]** 1/5

**W**

**wait [1]** 24/6
**waive [1]** 5/22
**wake [2]** 42/11 42/18
**wake-up [1]** 42/11
**want [21]** 3/17 7/24 7/25 8/13 10/2 13/17 15/5 16/16 17/10 19/5 21/15 24/20 24/25 25/25 26/9 28/7 34/11 41/24 42/8 43/7 43/25
**wanted [18]** 3/9 4/5 4/9 12/9 14/4 14/22 15/11 18/3 20/7 20/11 26/13 27/3 47/8 47/9 47/13 47/16 48/12 49/4
**wanting [1]** 3/12
**wants [3]** 11/7 36/21 47/5
**warrant [2]** 39/3 41/15
**warranted [1]** 34/8
**was [38]** 3/12 3/22 3/22 4/12 4/13 5/5 5/15 5/19 6/14 7/6 8/21 9/7 9/11 10/11 10/13 10/13 10/24 12/1 13/18 13/23 15/23 16/4 19/18 21/11 24/25 25/10 26/19 29/5 29/14 36/1 36/9 36/9 39/22 40/10 40/19 42/9 49/18 54/13
**wasn't [2]** 4/3 5/8
**way [7]** 4/8 22/21 25/4 26/23 43/4 43/5 45/21
**ways [2]** 21/1 42/1
**we [211]**
**we'll [12]** 11/22 12/14 16/10 36/7 39/5 39/24 43/13 43/19 50/15 52/10 53/4 53/11
**we're [32]** 3/7 3/16 4/17 6/16 8/22 10/16 12/12 12/19 14/25 19/7 19/7 20/13 22/12 22/15 22/21 22/22 22/25 26/5 29/18 30/16 30/19 32/17 33/4 38/11 38/11 46/12 49/23 51/8 51/9 52/4 53/5 54/14
**we've [5]** 5/6 5/10 24/14 39/7 49/15
**week [4]** 7/17 11/1 53/9 54/2
**weeklong [1]** 12/25
**weekly [1]** 38/14
**weeks [13]** 9/25 10/1 49/19 49/24 49/25 50/1 50/7 50/16 50/22 50/22 50/23 52/5 53/3
**WELCH [3]** 1/23 56/6 56/16
**well [31]** 6/3 7/18 9/12 10/3 10/22 11/13 11/18 12/3 12/23 14/1 16/25 22/8 23/25 24/4 26/13 26/15 26/20 26/24 27/8 29/3 29/25 31/22 32/19 34/22 36/25 37/6 38/18 43/24 50/24 51/21 52/4
**went [3]** 35/15 52/23 52/24
**were [24]** 4/3 11/23 11/25 13/21 14/2 19/11 23/13 27/18 29/6 29/11 29/21 36/10 36/11 36/13 39/12 39/13 39/22 44/19 45/16 47/7 50/6 50/21 50/21 55/6
**weren't [2]** 5/8 12/1
**what [92]**
**whatever [5]** 10/1 11/22 43/24 44/2 54/15
**when [11]** 7/5 8/19 27/4 27/15 32/24 40/21 40/25 43/15 50/21 52/18 54/22
**where [15]** 3/10 3/16 3/24 5/3 21/13 25/10 29/11 29/16 31/9 33/4 34/5 36/11

**whereof [1]** 56/12
**whether [10]** 7/4 9/15 9/17 10/24 12/21 14/4 19/13 21/21 34/7 43/9
**which [8]** 8/8 17/17 17/20 22/17 22/18 30/12 35/5 46/18
**while [3]** 29/5 32/14 50/10
**who [21]** 3/4 14/3 15/23 19/5 20/16 25/2 25/3 26/22 27/10 27/10 30/6 30/6 30/7 30/21 31/16 32/21 32/23 32/24 42/2 42/10 48/24
**whole [4]** 49/19 50/2 50/4 50/7
**why [9]** 15/19 25/20 32/1 33/4 33/13 38/12 38/20 46/19 54/3
**will [56]** 1/3 4/16 6/7 8/14 13/13 14/6 14/11 14/19 19/24 19/25 19/25 21/20 22/14 22/17 23/5 25/18 25/23 26/2 26/13 27/20 28/9 28/22 30/2 30/3 30/5 30/6 30/7 30/12 30/13 32/2 32/6 32/23 32/24 33/6 34/1 34/2 34/19 35/11 35/23 40/19 41/21 41/21 42/11 43/3 45/25 46/3 46/7 46/9 46/21 49/14 49/19 51/4 51/6 51/17 52/2 52/6
**WILLIAM [1]** 2/11
**winded [1]** 52/22
**wish [2]** 14/4 44/19
**within [8]** 7/17 13/6 13/6 23/1 24/22 25/16 27/17 27/18
**without [7]** 8/2 12/2 26/2 26/22 29/20 45/7 45/9
**witness [23]** 5/11 8/15 16/6 17/14 19/17 24/17 24/24 25/14 26/10 28/8 28/21 29/4 29/7 29/9 29/9 29/14 30/12 32/23 48/7 48/8 48/8 48/13 51/25
**witnesses [20]** 25/17 28/6 28/10 28/11 28/22 30/10 30/13 31/17 32/2 33/8 34/18 36/21 39/1 50/9 51/3 51/9 51/10 51/14 51/18 51/22
**won't [6]** 18/16 35/23 36/6 36/6 37/2 39/2
**wonderful [1]** 53/24
**word [1]** 26/15
**work [12]** 11/23 16/11 27/1 30/17 30/25 31/15 33/4 35/5 35/6 35/20 40/2 52/2
**working [4]** 15/15 19/9 44/23 47/18
**works [1]** 35/15
**would [85]**
**wouldn't [1]** 17/5

**Y**

**y'all's [1]** 36/5
**yea [1]** 12/13
**yeah [5]** 10/12 15/19 23/25 26/5 50/2
**years [2]** 44/25 45/6
**yes [13]** 6/22 10/20 11/17 12/17 25/23 27/13 33/25 34/5 44/4 48/9 48/11 50/8 53/17
**yet [1]** 28/25
**you [236]**
**You'll [2]** 48/14 48/14
**you're [18]** 4/5 11/13 12/9 13/19 27/7 32/3 32/5 33/5 33/10 33/11 33/11 35/12 43/5 48/20 48/20 53/15 54/4 54/19
**you've [6]** 19/13 23/1 32/3 36/25 43/25 54/18
**you-all [5]** 8/1 11/21 18/22 42/23 52/2
**your [107]**

**Z**

**zero [1]** 32/17