# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CURLING PLAINTIFFS' OPPOSITION TO WITHDRAWAL MOTION

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................1

II.     BACKGROUND ...................................................................................3

    A.   Mr. Davis is closely affiliated with Garland Favorito and VoterGA, which peddle baseless conspiracy theories..............................................................3

    B.   Mr. Harding represents Mr. Favorito and VoterGA, and has an interest in the confidential discovery in this case for other purposes...........................6

    C.   Mr. Favorito has for years wrongly claimed to be part of this case.............7

III.    ARGUMENT ......................................................................................10

    A.   This Motion is Procedurally Improper and Should Be Denied..................11

    B.   Mr. Harding's Motion Should Be Denied Due to the Risk of Delay and for Other Good Cause .........................................................................................12

      1.   Mr. Harding's Very-Belated Appearance Would Introduce Delay ...........12

      2.   Mr. Harding's Motion Fails for Additional Good Cause ...........................14

    C.   The Court Should Bifurcate Mr. Davis's Claims for a Separate Trial if Mr. Harding Is Allowed to Appear .................................................................18

IV.    CONCLUSION ..........................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
  2014 WL 1087934 (S.D.N.Y. Mar. 19, 2014)......................................................13

*Fears v. Keystone Petroleum Transp., LLC*,
  2012 WL 12835497 (N.D. Ga. Feb. 21, 2012)....................................................12

*Grayson v. K-Mart Corp.*,
  849 F. Supp. 785 (N.D. Ga. 1994)......................................................................19

*Ohai v. Delta Cmty. Credit Union*,
  2022 WL 19518162 (N.D. Ga. Apr. 28, 2022) ...................................................11

*Outside Box Innovations, LLC v. Travel Caddy, LLC*,
  369 F. App'x 116 (Fed. Cir. 2010).....................................................................16

*Patterson v. Henderson*,
  2023 WL 184119 (M.D.N.C. Jan. 13, 2023)......................................................12

*Robinson v. Shelby Cnty., Ky.*,
  No. 17-cv-00097-GFVT-EBA, (E.D. Ky. Sept. 21, 2022), Dkt. 244 .......... 19, 20

*Saxion v. Titan-C-Manufacturing, Inc.*,
  86 F.3d 553 (6th Cir. 1996) ...............................................................................19

*Vachula v. Gen. Elec. Cap. Corp.*,
  199 F.R.D. 454 (D. Conn. 2000) ........................................................................13

**Rules**

Fed. R. Civ. P. 1 ...................................................................................................13

Fed. R. Civ. P. 42(b) ...................................................................................... 18, 19

Ga. R. Prof. Cond. 1.7....................................................................................... 15, 16

Local Rule 83.1(E)(2) ....................................................................................... 11, 12

Local Rule 83.1(E)(3) ................................................................................. 10, 11, 12, 13

## I.    INTRODUCTION

This Motion is extremely untimely and highly prejudicial to Curling Plaintiffs.  With trial only a month away, Ricardo Davis seeks to disrupt these proceedings by injecting a new lawyer into a case that has been pending for over six years—a lawyer who has taken, and is taking, positions directly at odds with those Plaintiffs have taken here for years on fundamental issues.  The Court has the discretion to deny this Motion, and it should exercise that discretion here.

To be clear, this Motion is not about a client who merely wants a new lawyer to advocate for his longstanding positions in this case.  There is no indication that Mr. Davis was unsatisfied with his longstanding, capable representation in this case.  On the contrary, for years, Plaintiffs and their respective lawyers successfully coordinated to bring this case to the brink of trial, including obtaining an extraordinary injunction in August 2019 and more recently defeating summary judgment.  And yet now, Mr. Davis suddenly seeks to replace his counsel with Todd A. Harding—a lawyer who has taken positions in multiple cases contradicting those advanced by Plaintiffs, including Mr. Davis, in this case and who has shown an interest in obtaining confidential material produced in this case for use in unrelated cases or political activities.

The timing of this Motion reveals its true purpose.  Mr. Davis is closely affiliated with Garland Favorito, a political activist who is well known in Georgia

for making baseless, outlandish claims about purported fraud in the November 2020 Presidential election.  Mr. Favorito has long claimed to be part of this case. He is not.  His claims about the outcome of the 2020 Presidential election have nothing to do with this case and have never been part of it.  Mr. Harding filed this Motion shortly after Coalition Plaintiffs' counsel rightly raised a concern with Mr. Favorito about the repeated false claim that Mr. Favorito is associated with this case.  This Motion is an effort to advance a particular political agenda—that directly contradicts Plaintiffs' longstanding positions here—and for third parties to embed themselves in this case and steer it in new directions of their choosing at trial.  This is improper, would greatly disrupt the proceedings and overwhelm the Court with needless disputes, and would be highly prejudicial to Curling Plaintiffs.

The Motion fails for several reasons.  First, it fails to comply with the Local Rules' specific requirements for withdrawals by consent.  Second, it risks causing delay to the pretrial and trial dates that have been set in this case for months. Third, if granted, these proceedings, including trial, will become significantly more complicated and difficult for all parties and the Court.  There would no longer be a common interest privilege between Curling Plaintiffs and Mr. Davis, making coordination and meaningful communication with Mr. Harding about the litigation impossible.  Curling Plaintiffs likely would have to object to much of what Mr. Davis and Mr. Harding would seek to offer and do at trial.  Defendants no doubt

2

would as well.  And the Court would get bogged down with those disputes.  It would be chaos, which would hurt Curling Plaintiffs' case—a case in which they and their counsel have invested enormous effort and tens of millions of dollars and which seeks critical constitutional relief for their fundamental right to vote.

If Mr. Davis now wishes to pursue an agenda at odds with his personal prior positions here, he needs to withdraw and file his own lawsuit; or his claims should be bifurcated from those of the other Plaintiffs.  What he cannot do is hijack this case with new counsel and positions that have no grounding here.  This Court has discretion to deny withdrawal motions for good cause, including the circumstances here.  It should exercise that discretion.  While Mr. Harding is free to represent Mr. Davis in whatever way they choose, he is not entitled to *appear* in this case at this very late stage.  In the alternative, the Court should bifurcate trial in this case and order Mr. Davis to proceed to trial on his own.

## II.    BACKGROUND

### A.    Mr. Davis is closely affiliated with Garland Favorito and VoterGA, which peddle baseless conspiracy theories

Mr. Harding's Motion stems from Mr. Davis's close connection to Garland Favorito.  Their relationship dates back to at least 2006, when Mr. Davis was a plaintiff in a lawsuit brought by VoterGA against the then-Secretary of State

sf-5681045

contending that Georgia's electronic voting method was unlawful.[1]  Mr. Favorito and Mr. Davis co-founded VoterGA.  Ex. A at 1 (November 19, 2023 Favorito, Brown Email Thread).  Mr. Davis also is the Chair of the Constitution Party of Georgia and Garland Favorito is the party's Election Director.[2]  Mr. Davis hosts a public, multi-hour video broadcast each Saturday morning featuring Garland Favorito with lengthy reports and audience engagement.  Mr. Davis's Constitution Party states on its website that it "supports the efforts of groups like VoterGA in advancing elections integrity efforts in our state."[3]

VoterGA, at Mr. Favorito's direction, has spread well-refuted speculation and doubt concerning the outcome of the 2020 Presidential election, including claiming that Donald Trump did not lose the election.[4]  They also publicly attacked

---

[1] VoterGA, *History*, https://voterga.org/history/ (last visited Dec. 3, 2023) ("In July of 2006, a group of Plaintiffs brought a Complaint alleging five counts of legal, constitutional or other voting rights violations against the current method of voting" (hyperlinking to the Complaint)); *see also* VoterGA, *Favorito v. Cox Complaint*, https://voterga.org/wp-content/uploads/2014/09/plaintiffs-final-voting-complaint-071206.pdf.

[2] Defend Our Union, *Garland Favorito and Ricardo Davis*, https://defendourunion.org/garland-ricardo (last visited Dec. 3, 2023).

[3] Constitution Party of Georgia, *Election Integrity Update – October 28, 2023* (Oct. 28, 2023), https://gaconstitutionparty.org/election_integrity_update_20231028.

[4] VoterGA Press Release, *New Evidence Reveals GA Audit Fraud and Massive Errors* (July 13, 2021), https://voterga.org/wp-content/uploads/2021/11/Press-Release-Georgia-Audit-Riddled-by-Massive-Errors-Fraud.pdf; *see also* VoterGA Press Release, *VoterGA Provides Conclusive Evidence Showing Fulton 2020 Election Results Were Electronically Manipulated* (Mar. 7, 2022),

sf-5681045

Fulton County's 41-count racketeering indictment against Donald Trump and 18 other individuals for election interference, based in part on the Coffee County breach revealed through discovery conducted by Plaintiffs in this case. They have referred to the indictment as "phony" and "malicious prosecution," and called for District Attorney Fani Willis to be impeached.[5]

Just two weeks ago, Mr. Davis and Mr. Favorito appeared on their weekly webinar to discuss this case with members of the Georgia Constitution Party and the public. It was a source of misinformation. Mr. Davis announced that he is the only plaintiff "representing a political party" in this case.[6] Not so. No Plaintiff represents a political party here—and neither the Constitution Party nor VoterGA is a Plaintiff here. He and Mr. Favorito also said "we do not believe there was a breach" in Coffee County; they instead claimed that those involved were merely doing a justified "forensic investigation."[7] In addition to being baseless and

---

https://voterga.org/wp-content/uploads/2022/03/Press-Release-VoterGA-2020-Fulton-Election-Results-Manipulated-03-07-22.pdf.

[5] Voter GA Press Release, *VoterGA: Impeach Fani Willis for Prosecutorial Misconduct in "Phony" Indictment of 19 Political Adversaries* (Aug. 29, 2023), https://voterga.org/wp-content/uploads/2023/08/Press-Release-VoterGA-calls-for-Fani-Willis-Impeachment.pdf.

[6] Constitution Party of Ga., *Election Integrity Update – 11/18/2023*, https://www.gaconstitutionparty.org/election_integrity_update_report_20231118 (*CP-GA Election Integrity Update 11/18/2023* webinar at 1:09:00).

[7] *See id.*

sf-5681045

absurd, that claim contravenes one of the core positions Plaintiffs—including Mr.

Davis—have taken in this case: that there was a significant and unlawful security

breach of Georgia's voting system via Coffee County.  *See, e.g.*, Curling Pls.'

Corrected Opp'n to Defs.' Mots. for Summ. J. at 14-25 (Dkt. 1625); Coalition Pls.'

Consol. Resp. to Mots. for Summ. J. at 52-54 (Dkt. 1624).

**B.     Mr. Harding represents Mr. Favorito and VoterGA, and has an interest in the confidential discovery in this case for other purposes**

Mr. Harding has represented Mr. Favorito and VoterGA in at least *seven*

lawsuits raising election fraud claims against various counties and the state of

Georgia, including a December 2020 lawsuit filed against members of the Fulton

County Board of Registration and Elections alleging that fraudulent or fabricated

ballots were tabulated in the 2020 Presidential election.  *See* Ex. B (Compilation of

petitions and complaints filed by Mr. Harding on behalf of Mr. Favorito).

Mr. Harding also currently represents Harrison Floyd, one of the defendants

in the state's racketeering case prosecuted by District Attorney Willis.  His defense

is premised upon the specious theory that Donald Trump did not lose the 2020

election.  Ex. C at 7 (Defendant Harrison Floyd's Consolidated Opposition to

Motions to Quash Subpoenas).

In support of that defense, just last month Mr. Harding served subpoenas on

Fulton County seeking a wide range of sensitive election data, including copies of

the Fulton County EMS for the November 3, 2020 election and copies of every ballot image.  Ex. D at 6, 4 (Defendant Harrison Floyd's Amended Subpoena Duces Tecum).  Mr. Harding misleadingly claims that publicly filed documents *from this case*, including declarations from Drs. Duncan Buell and Philip Stark, and Fulton County's Response to the Coalition Plaintiffs' Second Requests for Admission (Dkt. 1297-6), somehow support his claim that Donald Trump did not lose the 2020 election.  Ex. C at PDF pp. 20-21, 25-26, 29-60, 61-81.

Nothing filed in this case supports such an absurd claim.  This case has nothing to do with the outcome of the 2020 election.  But Mr. Harding appears to be inclined to twist discovery from this case to argue otherwise.  Allowing him to appear in this case would provide him—and likely Mr. Favorito and others within VoterGA—access to highly sensitive discovery that remains under seal, including the unredacted version of the July 1, 2021 Expert Report of Dr. J. Alex Halderman.

## C.   Mr. Favorito has for years wrongly claimed to be part of this case

The Court issued its Order denying the State Defendants' Motions for Summary Judgment on November 10, 2023.  Following that decision, Mr. Favorito promptly reached out to Donna Curling and counsel for Curling Plaintiffs asking to get involved in the trial.  They did not respond to Mr. Favorito's request.  This was nothing new unfortunately, as he has been trying to embed himself in this case since at least 2018.  He, like Mr. Harding, has twisted the record in this case to

peddle conspiracy theories about Georgia elections.[8]  This case is featured

prominently on the VoterGA website's home page.[9]

On November 17, 2023, Mr. Favorito sent an email invitation for an election

update webinar to a listserv associated with the Georgia Constitution Party with the

subject line: "Hear All About *Our* Curling v. Raffensperger Case and New

Election Issues."  Ex. A at 2-3 (emphasis added).  The email asked invitees to "join

the fight to stop judicial interference in Georgia's elections" by telling legislators

to "call for a Special Session to investigate Fulton County District Attorney Fani

Willis."  *Id.*  It referred to the indictment in District Attorney Willis's racketeering

case as a "direct attack on the integrity of our elections and the republican form of

government guaranteed by our federal and state constitutions."  *Id.* at 4.  These

claims directly contradict the grounded and fact-based positions Plaintiffs have

taken here.  And the claim that *this case is VoterGA's case* (i.e., "Our Curling v.

Raffensperger Case") is false and detrimental to the important work the actual

Plaintiffs in this case actually have been doing for six years.

On November 17, 2023, counsel for Coalition Plaintiffs asked Mr. Favorito

to stop falsely associating himself with this case:

The issues that you address in your email have little or nothing to do with

---

[8] VoterGA, *Studies*, "Halderman Security Analysis of Dominion ICX Ballot Marking Devices," https://voterga.org/studies/ (last visited Dec. 3, 2023).

[9] VoterGA, https://voterga.org/ (last visited Dec. 3, 2023).

the lawsuit and you have no way of knowing if your positions on those issues are shared by plaintiffs in the Curling case or if the plaintiffs find those views highly and deeply offensive.  It is wrong for you to suggest to anyone that you are speaking on behalf of the plaintiffs in the Curling case or their counsel, for you to insinuate that you are involved in the lawsuit, or for you to imply that the parties to the lawsuit share any of your beliefs or positions.  This has to stop.

*Id.* at 2.

But Mr. Favorito did not stop.  In the November 18 webinar the very next day, despite counsel's request, Mr. Favorito said: "[W]e are part of the Coalition Plaintiffs."[10]  Obviously he is not, nor is VoterGA.  And as noted above, he went on to take positions diametrically opposed to those of the actual Plaintiffs in this case concerning, for example, the voting system *breach* via Coffee County.  *Compare* Aug. 29, 2023 Voter GA Press Release, *supra* note 5, *with* Curling Pls.' Corrected Opp'n to Defs.' Mots. for Summ. J. at 14-25 (Dkt. 1625), *and* Coalition Pls.' Consol. Resp. to Mots. for Summ. J. at 52-54 (Dkt. 1624).

The next day, Mr. Favorito responded to counsel's email, stating: "At no time during our public discussions of the Curling case have I ever claimed to speak on behalf of any plaintiff in the case…."  Ex. A. at 1.  But he had done that just the day before in the webinar where he claimed to be "part of the Coalition Plaintiffs" and when he referred to this case as "Our Curling v. Raffensperger Case."

---

[10] *See* Constitution Party of Georgia, *supra* note 6 (*CP-GA Election Integrity Update 11/18/2023* webinar at 1:09:00).

9

Nine days later—less than two weeks before the parties' final proposed pretrial order is due—Mr. Davis suddenly discharged his longtime counsel, Cary Ichter, and Mr. Harding filed this Motion.  There was no indication that he was unsatisfied with his representation to date.  He gave no explanation for the discharge whatsoever.  *See* Coalition Pls.' Statement on Position Relating to Mot. for Substitution at 1 (Dkt. 1719).  But its effect is clear: it will disrupt the proceedings and introduce to the case a sideshow of conspiracy theories about the outcome of the 2020 Presidential election that have nothing to do with the Plaintiffs' claims and contravene fundamental positions they have taken for years.

## III.   ARGUMENT

The Court should deny Mr. Harding's Motion.  First, it is procedurally improper because it fails to comply with the requirements in Local Rule 83.1(E). This is dispositive.  And Mr. Harding has had ample opportunity to cure these deficiencies since he was alerted to them on November 29, 2023.  Ex. E (November 29, 2023 Cross Email to Martin).  Second, even if those procedural deficiencies were cured, injecting Mr. Harding into this case as counsel as the parties prepare for trial a month away presents a significant risk of delaying longstanding trial and pretrial deadlines.  Third, that would greatly disrupt and complicate the proceedings, including trial, and prejudice the other Plaintiffs.  If the Court is inclined to allow Mr. Harding to appear, it should bifurcate Mr.

sf-5681045

Davis's claims and require him to proceed to trial separately.

### A.      This Motion is Procedurally Improper and Should Be Denied

Mr. Harding's Motion should be denied as procedurally improper. Withdrawals by consent are governed by Local Rule 83.1(E).  Under that rule, counsel may withdraw by filing a Certificate of Consent demonstrating that "the client has been advised of the items set forth in LR 83.1(E)(2)(b)(B) through (H)." LR 83.1(E)(3).  In particular, the client must be advised of their "obligation to prepare for trial or hire other counsel to prepare for trial," and of the "dates of any scheduled proceedings, including trial, and that *these dates will not be affected by the withdrawal of counsel*."  LR 83.1(E)(2)(b)(D), (F) (emphasis added).  Courts in this district have denied motions to withdraw—even those by consent—that fail to comply with the requirements in the Local Rules.  *See*, *e.g.*, *Ohai v. Delta Cmty. Credit Union*, 2022 WL 19518162, at *1 (N.D. Ga. Apr. 28, 2022).

The Court should do the same here.  There is no indication that Mr. Davis has been informed that he has a continued obligation to ensure his new counsel is prepared for trial beginning in only about a month, on January 9, 2024, and to comply with all existing pretrial deadlines, including joining a proposed pretrial order in a week.  Mr. Harding was obligated in his Motion to make clear that Mr. Davis understands this obligation and that Mr. Harding's highly untimely appearance—if allowed—will not affect the January 9, 2024 trial date that has

sf-5681045

been on calendar for months in this case or any other deadline.  None of this

appears in Mr. Harding's Motion, which thus fails to comply with the requirements

in Local Rule 83.1(E) and should be denied.  The Court should deny the Motion

with prejudice since Mr. Harding has had ample opportunity to cure these

deficiencies and has failed to do so.  *See* Ex. E.

## B.  Mr. Harding's Motion Should Be Denied Due to the Risk of Delay and for Other Good Cause

Even if Mr. Harding's Motion complied with Local Rule 83.1(E), the Court

would still have discretion to deny it—and should do so on the circumstances here.

The rule states: "The Court may reject the withdrawal by consent … when

withdrawal would delay trial of the case, or for other good cause."  LR 83.1(E)(3).

The Court should exercise that discretion here.

### 1.  Mr. Harding's Very-Belated Appearance Would Introduce Delay

Courts in this circuit and around the country have routinely denied motions

to withdraw filed on the eve of trial.  In *Fears v. Keystone Petroleum Transp.,*

*LLC*, the court denied a motion to withdraw because new counsel "would almost

certainly ask for a continuance.  Hence, [granting the withdrawal] would almost

certainly result in this case's delay."  2012 WL 12835497, at *2 (N.D. Ga. Feb. 21,

2012); *see also Patterson v. Henderson*, 2023 WL 184119, at *3 (M.D.N.C. Jan.

13, 2023) (denying motion to withdraw because it was filed less than two weeks

12

before trial date and would "undoubtedly" disrupt the trial date); *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, 2014 WL 1087934, at *3-4 (S.D.N.Y. Mar. 19, 2014) (denying a motion to withdraw where the client sought to engage new counsel where withdrawal weeks before trial "would have a severe impact on the progress of this … action."); *Vachula v. Gen. Elec. Cap. Corp.*, 199 F.R.D. 454, 458 (D. Conn. 2000) (collecting cases) ("Where an attorney moves to withdraw on the eve of trial, courts generally deny such a motion.").

The courts have made clear that Mr. Davis's right to choose his lawyer is not absolute and must be balanced against other important rights and interests, including those of the parties to this case and the public's substantial interest in a just, speedy, and efficient resolution of this important case on the merits. *See* Fed. R. Civ. P. 1. The Local Rules explicitly give the Court discretion to deny a withdrawal by consent—and those rules provide fair notice of this to parties and their counsel so that they understand the need to act diligently and promptly well in advance of trial regarding any potential substitution of counsel. LR 83.1(E)(3).

Allowing Mr. Harding to appear in this case at this late stage, especially at trial, threatens to upend many years of work by the parties and the Court to get this case trial-ready and to resolve it on the merits at long last. The parties already have spent months working on pretrial exchanges. Their proposed pretrial order is due in a week. This case is literally on the brink of trial and any delay would be

sf-5681045

highly unfair and prejudicial to the other Plaintiffs and the Court.  Mr. Davis had

ample opportunity—for years—to decide to change lawyers or raise questions or

objections about legal strategy and positions, including as he joined in countless

filings taking positions that Mr. Harding, Mr. Favorito, and others affiliated with

VoterGA have contradicted for years.  Mr. Harding's Motion presents an

undeniable risk of delay.  That alone is a compelling reason to deny it.

### 2.    Mr. Harding's Motion Fails for Additional Good Cause

Mr. Harding's appearance also would create unfair and problematic division

among Plaintiffs and a potential conflict of interest in violation of Georgia Rule of

Professional Conduct ("GRPC") 1.7.

Every indication is that Mr. Harding plans to advance theories and

arguments that are fundamentally at odds with the positions Plaintiffs intend to

take at trial, positions they—including Mr. Davis—have maintained in this case for

years.  The state voting system *breach* via Coffee County is one fundamental

example.  Since uncovering the facts surrounding that breach, Plaintiffs—including

Mr. Davis—consistently have argued to this Court that the breach constituted a

grave security intrusion into the state voting system and that the people involved

need to be held accountable.  *See, e.g.*, Curling Pls.' Corrected Opp'n to Defs.'

Mots. for Summ. J. at 14-25 (Dkt. 1625); Coalition Pls.' Consol. Resp. to Mots. for

Summ. J. at 52-54 (Dkt. 1624).  Plaintiffs have emphasized how the failure of the

14

Secretary of State, the State Election Board (SEB), and the GBI to take any action to hold accountable anyone in the Coffee County caper significantly undermines the already-weak security of Georgia's voting system by encouraging similar or even worse intrusions into the system.[11] *Id.* Given his defense in the racketeering case prosecuted by District Attorney Willis and his longstanding representation of Mr. Favorito in various election fraud cases, Mr. Harding appears poised to argue that the Coffee County unauthorized voting system access and software theft was entirely appropriate—directly contradicting Plaintiffs' longstanding position here.

This creates a potential conflict. The Georgia Rules of Professional Conduct state that a "lawyer shall not represent … a client if there is a significant risk that … the lawyer's duties to another client … will materially and adversely affect the representation of the client…." Ga. R. Prof. Cond. 1.7(a). And where the representation "involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients," the conflict is not waivable. Ga. R. Prof. Cond. 1.7(c)(3).

Throughout this litigation, Mr. Davis has joined Plaintiffs' arguments and allegations regarding the Coffee County caper. *See, e.g.*, Coalition Pls.' Consol.

---

[11] Unlike District Attorney Willis who is prosecuting some of the individuals involved in the Coffee County caper for that breach, the Secretary of State and SEB refused to even obtain a copy of the GBI's report regarding its investigation into the breach until the Court ordered them to do so. Dkts. 1703, 1704.

Resp. to Mots. for Summ. J. at 52-54 (Dkt. 1624); Joint Statement Regarding GBI

Investigative Documents (Dkt. 1703); Pls.' Resp. to State Defs. Notice of Suppl.

Authority (Dkt. 1702).  That argument has long been a fundamental part of his and

the other Plaintiffs' case.  Mr. Davis is not free to suddenly abandon a core

component of Plaintiffs' theory of this case on the eve of trial, a theory he has

endorsed himself by joining in filing after filing.  To properly represent Mr. Davis

on the well-established record here, Mr. Harding would have to endorse this

position and sponsor evidence in support of it.  But doing so runs directly counter

to his defense of Harrison Floyd in District Attorney Willis's racketeering case.

Thus, Mr. Harding cannot adequately represent both Mr. Davis on the record here

and Mr. Floyd on the defense he has asserted there.  His involvement in this case

would create a significant risk of an unwaivable conflict under GRPC 1.7.  *See,*

*e.g.*, *Outside Box Innovations, LLC v. Travel Caddy, LLC*, 369 F. App'x 116, 118

(Fed. Cir. 2010) (applying GRPC 1.7 to grant a motion to disqualify firm as

counsel for respondent on the grounds that it could not provide adequate

representation because it would need to consider whether to challenge the opinion

of one of its own lawyers who served as an expert for appellant).

But even if Mr. Harding's appearance did not run afoul of GRPC 1.7, his

addition to this case still would deeply divide what has been for years a well-

coordinated and mutually beneficial group of Plaintiffs.  That sudden division will

sf-5681045

make every aspect of trial—from coordinating pretrial filings, to allocating trial time, resolving disputes about witness exams and evidentiary objections, participating in openings and closings, offering evidence at trial, and ultimately determining fundamental case strategy—significantly more complicated, if not entirely impossible to coordinate.  The parties *and the Court* will confront numerous disputes about what material Mr. Harding is entitled to as he prepares for trial and what positions he can and cannot take in this case in light of the existing record.  Meeting the many pretrial deadlines coming up this month and leading up to trial in only a month would be a nightmarish scenario for all parties and the Court with Mr. Harding's very-belated appearance.

Further, effective communication with Mr. Harding would be virtually impossible.  Given the lack of common interest between Mr. Harding and the other Plaintiffs' counsel due to his positions in other matters, he could not be permitted access to any privileged communications between or among any of the Plaintiffs' lawyers that have occurred or will occur going forward.  Nor could he be permitted access to any draft or otherwise non-public or non-privileged work product.  Mr. Harding also could not have access to highly sensitive material, such as Dr. Halderman's unredacted report, due to his interest in obtaining such access for purposes beyond use in this case, as noted above.  In short, Mr. Harding would be entirely on his own with limited access to the record.  He would be an untimely

17

interloper adverse not just to Defendants, but to the other Plaintiffs too—appearing just one month before trial.

In sum, Mr. Harding's sudden, unnecessary, and ill-intentioned appearance at this very late date would highly prejudice the remaining Plaintiffs who have been unified in their fundamental positions for years and eager to present their claims to the Court beginning January 9.  His appearance also would overwhelm the Court with countless unnecessary disputes to resolve.  Whatever right Mr. Davis has to choose his own lawyer does not entitle him to embark on new and contradictory theories, much less those grounded in well-refuted speculation and absurdity.  Nor does it supersede the other Plaintiffs' fundamental right to proceed to trial quickly and efficiently in accordance with the existing dates, and to finally obtain important relief they have been pursuing for many years.  The Court should exercise its discretion and deny Mr. Harding's Motion.  While Mr. Harding is free to represent Mr. Davis in whatever way they choose, he is not entitled to *appear* in this case at this very late stage.

### C.     The Court Should Bifurcate Mr. Davis's Claims for a Separate Trial if Mr. Harding Is Allowed to Appear

If Mr. Harding is allowed to appear here, the Court should order a separate trial for Mr. Davis's claims under Rule 42(b), which provides in pertinent part:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims….

sf-5681045

Fed. R. Civ. P. 42(b). "Bifurcation is justified if just one of these criteria is satisfied." Mem. Op. & Order at 4, *Robinson v. Shelby Cnty., Ky.*, No. 17-cv-00097-GFVT-EBA, (E.D. Ky. Sept. 21, 2022), Dkt. 244 (citing *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)) (attached hereto as Exhibit F). This Court has "broad discretion to decide whether or not plaintiffs' cases should be tried separately." *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994). "In making its determination, the trial court must balance the probable savings of time and effort against the likelihood that a party might be prejudiced, inconvenienced, or put to extra expense." *Id.* (citations omitted).

As explained above, granting Mr. Harding's Motion undoubtedly will delay these proceedings, including trial. It also will put Mr. Davis at odds with the rest of the Plaintiffs, prejudicing the remaining Plaintiffs and complicating trial. The Court should exercise its discretion under Rule 42 to bifurcate Mr. Davis's claims. In *Robinson*, a group of plaintiffs brought civil claims against Shelby County in Kentucky. The court allowed counsel for one plaintiff to withdraw on the eve of trial. The remaining plaintiffs moved to bifurcate their claims because they were concerned about the withdrawal causing delay and lack of coordination among the plaintiffs at trial. Defendants opposed bifurcation, arguing that bifurcated trials would be inefficient and prejudice them. The court found that "[b]ecause she is no longer represented by the same counsel as her co-Plaintiffs, her case will likely be

made separately from theirs, minimizing the economy benefit of proceeding to trial together."  Mem. Op. & Order at 4, *Robinson*, No. 17-cv-00097-GFVT-EBA (attached hereto as Ex. F).  It granted the bifurcation motion, stating that the remaining plaintiffs had "been waiting nearly five years to try this case" and should "not be made to wait indefinitely" on behalf of the plaintiff who sought to go her own way on the eve of trial.  *Id.* at 5.

This Court should exercise similar discretion here should it allow Mr. Harding to appear at this very late stage.  If the Court allows Mr. Davis to go his own way now with new counsel, the remaining Plaintiffs should not suffer any prejudice from this and instead should be allowed to proceed to trial as scheduled.

## IV.   CONCLUSION

Nothing new has developed in this case to suddenly warrant Mr. Harding's very-belated appearance except that the Coalition Plaintiffs' counsel simply asked Mr. Favorito to stop falsely claiming to be part of this case.  Mr. Favorito's longstanding desire to embed himself in a case that has nothing to do with him, his organization, or his wild, outlandish election fraud claims provides no basis for Mr. Harding to appear on the eve of trial.  Mr. Davis is bound by the positions he has joined in for years in this case, as is his counsel.  If he is no longer happy with that, he needs to withdraw from this case and file his own lawsuit.  He should not be allowed to throw a grenade into these proceedings just as the other Plaintiffs are

finally poised to obtain critical relief for their fundamental right to vote—*relief in which there is strong public interest*.

The Court should deny Mr. Harding's untimely and improper Motion. While Mr. Harding is free to represent Mr. Davis in whatever way they choose, he is not entitled to *appear* in this case at this very late stage.  Alternatively, the Court should bifurcate Mr. Davis's claims and order him to proceed to trial separately, with the other Plaintiffs proceeding to trial as scheduled on January 9, 2024.

Dated:  December 4, 2023                    Respectfully submitted,

                                    */s/ David D. Cross*

David D. Cross (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Matthaeus Martino-Weinhardt
(*pro hac vice*)
Ramsey Fisher *(pro hac vice)*
Aaron Scheinman *(pro hac vice)*
Benjamin Campbell *(pro hac vice)*
Wail Jihadi *(pro hac vice)*
Oluwasegun Joseph *(pro hac vice)*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
DCross@mofo.com
MKaiser@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
Jessica G. Cino
GA Bar No. 577837

21

KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com
Cino@khlawfirm.com


Christian G. Andreu-von Euw
*(pro hac vice)*
THE BUSINESS LITIGATION
GROUP, PC
150 Spear Street
San Francisco, CA 94105
(415) 765-6633
Christian@blgrp.com

*Counsel for Plaintiffs Donna Curling,
Donna Price & Jeffrey Schoenberg*

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2023, a copy of the foregoing

**CURLING PLAINTIFFS' OPPOSITION TO WITHDRAWAL MOTION**

was electronically filed with the Clerk of Court using the CM/ECF system, which

will automatically send notification of such filing to all attorneys of record.

        _/s/ David D. Cross_
        David D. Cross

24

sf-5681045