IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br> NO. 1:17-CV-2989-AT |

**DEFENDANTS' MOTION FOR CLARIFICATION OR MODIFICATION**

Defendants Brad Raffensperger, Sara Tindall Ghazal, Janice W. Johnston, Edward Lindsey, and Matthew Mashburn ("State Defendants"), pursuant to Rule 59(e) and this Court's inherent authority, respectfully submit this motion for clarification or, in the alternative, modification of the Court's Opinion and Order, [Doc. 1705], on certain matters which will affect trial, showing the Court as follows:

I. **Evidence Involving The Voter Registration Database As A Component Of The Existing Voting System.**

In its summary judgment order, the Court found that Plaintiffs' claims related to the DREs are moot and granted summary judgment in Defendants' favor on those claims. [Doc. 1705 at 109]. In dismissing those claims, the Court

stated:

> While any challenge to the use of the DRE machines no longer presents a live controversy, Plaintiffs may still challenge and present evidence on elements of the DRE system that *carried over to the BMD system*, specifically involving the voter registration database as a component of the existing voting system and the policies and practices regarding matters such as updating of software patches."

*Id.* at 109–10 (emphasis added). The Court further stated that "[h]ere, Plaintiffs' claim that Georgia's current BMD voting system imposes a severe constitutional burden on their right to have their votes accurately counted as cast." *Id.* at 120.

Plaintiffs' only remaining claims in this case involve allegations that Georgia's current BMD voting system unconstitutionally burdens the right to vote—in particular the right to have their votes accurately counted as cast. *Id.* As such, any DRE-related evidence must therefore assist Plaintiffs in proving that the *BMD voting system* is a burden on their right to vote in order to be relevant and admissible. Under the Federal Rules of Evidence, evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; *and* (b) the fact is of consequence in *determining the action*." Fed. R. Evid. 401 (emphasis added). Even if relevant evidence exists, it remains subject to exclusion if the Court finds that its probative value is substantially outweighed by a danger of unfair prejudice,

wasting time, or confusion of the issues to be tried in the case. Fed. R. Evid. 403.

After years of litigation, Plaintiffs have identified no evidence to date falling into these two categories that could be presented at trial and satisfy Federal Rule of Evidence 401. For starters, the voter registration database is not part of the BMD system that Plaintiffs are challenging in this case. Plaintiffs define the BMD system as "Dominion Voting System (EAC Certification Number DVS-DemSuite 5.5-A)" and "[t]he system described in Georgia's contract with Dominion [that] calls for in-precinct scanners/tabulators for 2D barcodes generated by BMDs," respectively. [Doc. 628 at ¶ 5]; [Doc. 627 at ¶ 71]. Neither of these definitions encompass the voter registration database. Likewise, Plaintiffs' allegations of how their right to vote is burdened do not relate to any aspect of the voter registration database do not relate to the voter registration database. Indeed, if that were the case, Plaintiffs' equal protection challenges, premised on the idea that voters who vote absentee-by-mail "will suffer none of the [alleged] burdens, risks, and harms" that face BMD voters, [Doc. 628 at ¶ 231; *see also* Doc. 627 at ¶ 129 ("greater weight" given to absentee ballots)], would make no logical sense because *all* voters—regardless of the method of casting ballots—are registered within the voter registration database.

Regardless, any alleged inaccuracies in the voter registration system are

not only wholly speculative and unsubstantiated, but Plaintiffs have also failed to identify any inaccuracies which affect *them* (or in the case of the Coalition, their members). While the Court alluded to evidence regarding "practices regarding matters such as software patches" in its summary judgment order as being potentially relevant, Plaintiffs have not articulated how any "practices" related to applying software patches to the DREs or voter registration system applies or is relevant to the BMD system.

Lastly, Plaintiffs have at times argued that the DRE/GEMS system is still relevant because of the potential for a "preexisting infection of the DRE/GEMS system" to carry over and attack the current BMD system. *E.g.*, [Doc. 1626 at ¶ 52]. But Plaintiffs have not identified any *actual* element of the DRE/GEMS system that has *carried over* to make this information relevant. Nor have they identified any *actual* transfer of such "preexisting infection" to the BMD system. Instead, Plaintiffs continue to rely on pure speculation and hypotheticals because their review of DRE memory cards, [Doc. 745], DREs themselves, and GEMS databases, [Doc. 463], found *nothing*. But without something *actually* connecting an *actual* flaw in the DRE system to the *actual* BMD system that Plaintiffs challenge, State Defendants struggle to see how DRE-related evidence is relevant to Plaintiffs' claims in this case.

For these reasons, Defendants request clarification of the Court's Order in this regard such that Defendants can reasonably anticipate the scope of

relevance this Court envisioned, or otherwise modification to strike this portion of the Order and withholding ruling upon this issue until it arises at trial.

## II. The Poll Pads As A Coordinated Part Of Georgia's Electronic Voting System.

Like above, albeit even more attenuated, the Court also dismissed the Coalition's poll pad claims while noting "[b]ut, to the extent the Coalition Plaintiffs challenge the Poll Pads as a coordinated part of Georgia's electronic voting system … the operation of the Poll Pads (or other similar devices used in their place) remains relevant to the functioning, integrity, and reliability of the election system challenged in this case. Evidence of this nature is plainly relevant here and can be presented at trial." [Doc. 1705 at 133–134]. It is unclear what evidence remains relevant as to the operation of the Poll Pads or to what extent the Coalition Plaintiffs challenge the Poll Pads as a coordinated part of Georgia's BMD voting system.

Coalition Plaintiffs, however, do not allege the Poll Pads burden their right to vote as a "coordinated part of Georgia's electronic voting system." Rather, their alleged burden concerns verifiability, auditability, and traceability (albeit, dismissed) of votes cast on BMDs. [Doc. 628 at ¶ 223]. And the Court's Order lacks any clarity on how evidence regarding this dismissed claim is plainly relevant other than saying it is so. Being unable to resort to

Plaintiffs complaint to find such clarity, and recognizing that the Eleventh Circuit found Plaintiffs' allegations and evidence lacking on appeal thereby removing any limited utility of resorting to Coalition Plaintiffs' preliminary-injunction motion in search of such clarity, Defendants are without an understanding of what sort of evidence they should be prepared to defend against in this regard.

For these reasons, Defendants request clarification of the Court's Order in this regard such that Defendants can reasonably anticipate the scope of relevance this Court envisioned, or otherwise modification to strike this portion of the Order and withholding ruling upon this issue until it arises at trial.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court clarify the scope of its Opinion and Order, [Doc. 1705], on the issues identified herein or otherwise modify the Order such that these matters may be addressed at trial to the extent necessary.

Respectfully submitted, this 8th day of December, 2023.

/s/ *Vincent R. Russo*

Vincent R. Russo 242628
Josh Belinfante 047399
Carey A. Miller 976240
Alexander Denton 660632
Edward A. Bedard 926148
Javier Pico Prats 664717

Anna Edmondson 289667
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com
    jbelinfante@robbinsfirm.com
    cmiller@robbinsfirm.com
    adenton@robbinsfirm.
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

Bryan P. Tyson       515411
Diane F. LaRoss      430830
Bryan F. Jacoutot    668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
T: 678-336-7249
E: btyson@taylorenglish.com
    dlaross@taylorenglish.com
    bjacoutot@taylorenglish.com

*Counsel for State Defendants*

**LOCAL RULE 7.1(D) CERTIFICATION**

I certify that this DEFENDANTS' MOTION FOR CLARIFICATION OR MODIFICATION has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Vincent R. Russo*
Vincent R. Russo
