## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

CIVIL ACTION
NO. 1:17-CV-2989-AT

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION TO EXCLUDE MITRE REPORT

Defendants submit this response to the motion, [Doc. 1725], filed by a subset of the Plaintiffs that seeks to exclude any use of the MITRE report at trial. Although Plaintiffs are themselves guilty of not complying with the strict requirements of Federal Rule of Civil Procedure 26(a)(2) and failed to timely disclose the data considered by their retained expert witness, Dr. Alex Halderman, in forming his opinions, Plaintiffs now seek to completely exclude an assessment that was conducted by MITRE at the request of non-party Dominion. Defendants did not retain MITRE as an expert witness in this case or identify anyone from MITRE as an expert witness for trial. The MITRE Report itself is not subject to the Rule 26(a)(2) disclosures, but even if it were, any failure to timely disclose it was justified because Dr. Halderman's report

was sealed and Dominion did not have access to Dr. Halderman's report in time for the MITRE Report to be disclosed prior to the close of expert discovery. As such, and for the reasons stated herein, Defendants respectfully ask the Court to deny Plaintiffs' motion.

## BACKGROUND

The history of the MITRE report is tied to the broader history of the disclosure of the components of the Dominion BMD voting system to Dr. Halderman in 2020 and Dr. Halderman's July 1, 2021 report. On August 28, 2020, the parties filed a *Joint Discovery Statement Regarding Urgent Access to Equipment*. [Doc. 829]. Defendants did not object to Plaintiffs agreeing to a protocol with Dominion regarding the testing of Dominion's equipment, but did object to producing equipment that the State had purchased for use in elections and raised Dominion's intellectual-property interests as further consideration. [Doc. 829 at 4-5]. On September 2, 2020, the Court entered an Order requiring the production of certain equipment from the BMD voting system that had been issued to the Fulton County Board of Elections and Registration. [Doc. 858]. Specifically, the Court directed the now-dismissed Fulton County Defendants to:

> [T]o provide Plaintiffs with one each of the following items needed for testing as described in the Secretary of State's Logic and Accuracy Procedures NO LATER THAN SEPTEMBER 4, 2020 AT 5:30 P.M.

a. Dominion ImageCast X (ICX) Prime 21" BMD;

b. ImageCast Precint (ICP) Scanner;

c. 1 box of ballot paper with a minimum of 100 ballots;

d. Programmed Technician Card;

e. Programmed Poll Worker Card;

f. USB Drive containing information from GA ICX BMD programming group;

g. Print out of Ballot Activation Codes;

h. Programmed Compact Flash Cards for Polling Place Scanner; and

i. Programmed Security Key Tab for Polling Place Scanner.

[Doc. 858 at 5].

Dr. Halderman issued his report 10 months later, on July 1, 2021. The report was based on Dr. Halderman's analysis of the Court-ordered items, which Dr. Halderman performed testing on "remotely via videoconference, directing on-site work by [his] assistant, Dr. Springall." [Doc. 1131]. The report was marked as "Attorneys' Eyes Only" and filed under seal with the Court on July 12, 2021. [Doc. 1131].

That same day, Defendants and Curling Plaintiffs filed a *Joint Discovery Statement Regarding Access to Plaintiffs' Expert Report and Unduly Burdensome Discovery*. [Doc. 1130]. The discovery dispute stemmed from

Defendants' request to Plaintiffs for their consent to allow Dominion's access to Dr. Halderman's report under the same Protective Order applicable to Dr. Halderman's access to the Dominion equipment. [Doc. 1130 at 2-5]. The declaration of Dr. Halderman attached by Curling Plaintiffs to the joint discovery statement described providing the report to Dominion as "dangerous." [Doc. 1130-2].

At the July 26, 2021 hearing on this discovery dispute, Curling Plaintiffs' counsel noted that Plaintiffs had obtained discovery previously from Dominion, stating that "[Plaintiffs] had to serve a subpoena on [Dominion], which [Plaintiffs] did. And [Dominion] cooperated last year in producing a lot of documents[.]" Tr. of July 26, 2021 Teleconference at 39:8–9. However, Curling Plaintiffs' counsel objected to sharing Dr. Halderman's report with Dominion if Dominion's assessment was not shared with the Court, stating:

> The Court should hear and we should hear ***everything*** Dominion has to say about Dr. Halderman's report, about the claims and defenses in this case so that the Court has a complete and accurate record and can make a decision that is right on the merits.
>
> ***No one should be picking and choosing what Dominion has to share with the Court or us.***

Tr. of July 26, 2021 Teleconference at 40:18–24 (emphasis added). In contrast, Coalition Plaintiffs' counsel stated their position as follows:

> And our concern with having it released to Dominion even under the protective order is that there are

reporting obligations that Dominion as a manufacturer of voting equipment is going to have once it becomes aware of a vulnerability because this system is used in other states. And so once information is put in the hands of Dominion -- and, in fact, I'm not sure if the Secretary of State doesn't have obligations as well. And from what we understand, this report has not been shared with the client of opposing counsel. The Secretary of State's office doesn't know the details of it either because it is AEO.

But once that -- once the report is handed outside of attorneys to people who have reporting obligations, then the Court's protective order is going to be at odds with those lawful requirements that vulnerabilities be reported to, you know, the EAC and probably authorities in other states where the same equipment is being used.

Tr. of July 26, 2021 Teleconference at 44:20–45:11.

On August 17, 2021, the Court issued an Order, [Doc. 1154], indicating it had reviewed anew the discovery issues and the transcript of the July 26th hearing transcript. [Doc. 1154 at 1]. The Court noted that "endless tangling about discovery persists" and that it was "determined to issue a decision that allows this case to properly proceed or be appealed based on a fair record that reflects the work that has been devoted to this case by all parties as well as addresses the fundamental threshold issue of standing." [Doc. 1154 at 2]. The Court then directed both sides to address several issues in advance of the hearing scheduled August 19, 2021. [Doc. 1154 at 2-4]. Defendants addressed the questions raised by the Court the following day, [Doc. 1155], identifying

several discovery-related issues, including that Curling Plaintiffs had produced a mere 58 documents and had improperly withheld discovery. [Doc. 1155 at 7-15]. At the hearing on August 19, 2020, Curling Plaintiffs' counsel stated:

> So you have got one of the most respected election integrity experts in the country testifying in front of Congress, has been retained by two Secretary of States, including Michigan just recently, for the very purpose of examining the Dominion equipment. And he has found serious vulnerabilities that could be exploited in minutes by a voter in the voting booth for just one of them. And it is undisputed that that is the system.
> …
> They haven't identified any measures. They say only Dominion can even address those measures, which is disturbing since the State is responsible for the election system.

Tr. of August 19, 2021 Teleconference at 31:17–32:06. The issue of whether Dominion could have access to Dr. Halderman's report ultimately remained unresolved at the hearing, but Curling Plaintiffs' counsel did raise a new request—permission to share Dr. Halderman's report with CISA. Tr. of August 19, 2021 Teleconference at 83:5–84:8.

The issue of allowing Dr. Halderman's report to be provided to Dominion, or to the Secretary of State's Office for that matter, continued to persist, with Plaintiffs refusing to allow Dr. Halderman's report to be disclosed—preventing Dr. Halderman's findings from being assessed. The Court again raised the

question of protocols for handling confidential material in its Order on
September 13, 2021. [Doc. 1171 at 6]. The Court directed the parties to "confer
anew and report on what agreements they have been able to reach by
September 20, 2021." *Id.* Once again, the parties filed a joint discovery
statement in which access to Dr. Halderman's report was raised. [Doc. 1177].
As Defendants indicated, Defendants, their staff, and Dominion still did not
have access to Dr. Halderman's sealed report and thus had not reviewed it.
[Doc. 1177 at 6]. Curling Plaintiffs filed another declaration from Dr.
Halderman, in which he stated that "critical vulnerabilities could be at least
partially mitigated through changes to the ICX software if Dominion
implemented such changes and jurisdictions deployed them." [Doc. 1177-1 at ¶
3]. Dr. Halderman further stated:

> [I]t would take months for Dominion to assess the
> problems, develop responsive software updates, test
> them, obtain any necessary approvals from the EAC
> and state-level certification authorities, and distribute
> the new software to states, as well as additional time
> for localities to install the changes. But Dominion
> cannot begin this process, because (to my knowledge)
> they have yet to learn what is in my report.

[Doc. 1177-1 at ¶ 3]. However, the issue remained unresolved, preventing
Dominion's review of Dr. Halderman's report.

Finally, at a hearing on November 19, 2021, Curling Plaintiffs' counsel definitively stated, "we think Dominion should see [Dr. Halderman's report]." Tr. of November 19, 2021 Teleconference at 86:18–19. The Court also stated:

> I certainly think that they could share it with Dominion. And I wouldn't have an objection to their sharing it with Dominion, just to be 100 percent clear. And if they have other contractors who are involved with this, whether it is Fortalice or other entities that are responsible for the delivery of the system and the safety and security and functionality of the election system, it is to the greater good of the public. And I certainly would authorize that, if there is any question about that.

Tr. of November 19, 2021 Teleconference at 86:23–87:6. As such, Dominion was provided with a copy of Dr. Halderman's report. [Doc. 1521 at 2].

As a result of the November 19, 2021 teleconference and the Court's authorization for Dr. Halderman's report to be shared with Dominion, Dominion retained MITRE "to perform an independent evaluation of the unredacted Halderman Report," given that Dr. Halderman's report raised security and functionality issues with Dominion's equipment. [Doc. 1521 at 3]. But this was not MITRE's only involvement in the review of the Dominion election system. Dominion and MITRE were directly involved in the process undertaken by CISA since at least May 2022. [Doc. 1521 at 4–5]. And Dr. Halderman never expressed concern about MITRE's involvement in the CISA process. *Id.* The MITRE Report was completed in July 2022. [Doc. 1570-4].

About a month later, Dominion moved to file the MITRE Report under seal on the Court's docket. [Docs. 1486–88]. On October 20, 2022, the Court denied Dominion's request and struck the MITRE Report from the Court's record solely on the grounds that Dominion was not a party to the case and that, notwithstanding the Court's statements at the November 19, 2021 Teleconference, the Halderman Report remained Attorneys' Eyes Only. [Doc. 1520].

Just six weeks later, the MITRE Report, like Dr. Halderman's report, was filed in connection with Defendants' motions for summary judgment on the merits. [Doc. 1570-4]. The Court subsequently entered an Order, [Doc. 1674], indicating that it was prepared to allow both the unredacted version of Dr. Halderman's report and the MITRE Report to be filed on the public record. To mitigate and safeguard against any potential election security risk associated with the public publication of the MITRE Report, the Court directed the parties to first review and provide any proposed redactions to the MITRE report in order. [Doc. 1674]. Counsel for the parties "indicated that no such redactions were necessary." [Doc. 1680 at 7]. As such, the Court ordered that the MITRE Report, [Doc. 1570-4], be made available on the public docket. *Id.*

## I. There was no delay providing the MITRE Report to Plaintiffs.

Plaintiffs seek to exclude the MITRE Report on the grounds that Defendants did not timely designate an expert pursuant to Local Rule 26(C)

and Federal Rule of Civil Procedure 37(c)(1). [Doc. 1725 at 10-12]. The premise of Plaintiffs' argument is flawed.

*First*, Rule 37(c)(1) and Local Rule 26(C) do not apply here because neither Dominion nor MITRE are retained experts. Rule 26(a)(2)(B) only requires a party to disclose an expert witness and provide a written report *if* the witness is one retained to provide expert testimony in the case. Fed. R. Civ. P. 26(a)(2)(B); *Cedent v. United States*, 75 F.4th 1314, 1320 (11th Cir. 2023). A witness is a "retained" expert "only if his connection to the litigation was, from the beginning, as a paid expert witness." *Id.* at 1321. As the Eleventh Circuit Court of Appeals further stated earlier this year in *Cedent*, "[t]he expert's job title, the subject or scope of his testimony, and the way that he formed his opinions are irrelevant inquiries for Rule 26(a)(2) purposes. The *only* question presented by the Rule's text is whether the witness was retained as an expert or otherwise employed as described in Rule 26(a)(2)(B)." *Id.* at 1324. But Defendants did not retain either Dominion or MITRE to provide expert testimony; as Plaintiffs readily recognize in their motion, the MITRE Report was disclosed September 19, 2022 "*by Dominion for its own commercial purposes*." [Doc. 1725 at 12] (emphasis in original). Because neither Dominion nor MITRE was retained as an expert by Defendants, the MITRE Report is not subject to the Rule 26(a)(2)(B) requirements.

*Second*, even if Defendants did have some disclosure obligation, the

"failure" to disclose the MITRE Report by the expert-disclosure deadline was both substantially justified and harmless to Plaintiffs. Rule 37(c) states that a party's failure to identify a witness may not excluded if "the failure was substantially justified or is harmless." The Court's expert-disclosure deadline in this case was on July 16, 2021. But the Court did not allow Defendants to disclose the Halderman Report until the November 19, 2021 status conference, *after* the expert-disclosure deadline had already passed. And MITRE's work for Dominion was not completed until July 2022, *after* discovery closed. The timing of the MITRE Report was discussed with the Court at the June 6, 2022 conference. Tr. of June 7, 2022 Teleconference at 10:21–11:9. Defendants also indicated at that time that the MITRE Report is Dominion's report, not a report for Defendants, similar to the way CISA did its own analysis of Dr. Halderman's report. *Id.* at 55:13-19. Notably, Defendants also stated that if the CISA report was to be included in the merits of this case, Defendants should be entitled to explore how CISA reached its findings also. *Id.* at 55:24-56:2. Regardless, any delay providing the MITRE Report was directly related to the timing and manner in which discovery occurred in this case and the restrictions placed on disclosure of Dr. Halderman's report to Dominion. Thus, by the Court's own order, it was impossible for Defendants to disclose the MITRE Report by the deadlines at issue. And to the extent Defendants had any disclosure obligation at all, it an obligation to *supplement* their prior

disclosures under Rule 26(e).

Moreover, Plaintiffs have suffered absolutely zero prejudice or harm. Plaintiffs learned of the MITRE Report at the same time Defendants did—nearly *18 months* ago. And Dr. Halderman testified at his deposition nearly one year ago that he reviewed the MITRE Report. [Jan. 1, 2023 Dep. 34:18-35:1]. Plaintiffs have had plenty of opportunity to conduct discovery into the MITRE Report if they so desired. Instead, they spent much of that time participating in extended discovery into issues related to Coffee County while fighting public disclosure of the MITRE Report. The MITRE Report is not prejudicial simply because Plaintiffs made the strategic decision to ignore it.

*Third*, the MITRE Report is not solely opinion testimony—it can be used in a number of ways at trial. Similar to past preliminary injunction hearings in which a Dominion representative has testified, Defendants included a Dominion representative on their witness list for trial. Specifically, Defendants identified Nick Ikonomakis, Vice President of Engineering, on their witness list. Dominion is allowed to testify to actions it took in response to Dr. Halderman's report. This includes testifying that Dominion retained MITRE to provide an independent assessment of Dr. Halderman's report. In addition, as mentioned above, Dr. Halderman testified that he reviewed and assessed the MITRE Report. [Doc. 1564 at 34:18–35:1]. Dr. Halderman may open the door to cross-examination on the MITRE Report, and the MITRE Report may

be admissible for that purpose. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995) (holding that where a testifying expert opens the door to cross-examination about another expert's opinions, the district court did not abuse its discretion in permitting cross-examination "as to why he rejected those opinions," even though that introduced "what otherwise would have been inadmissible hearsay").

## II.  The MITRE Report is not inadmissible hearsay.

Plaintiffs also seek to exclude the MITRE Report wholesale on the grounds that it is hearsay. Not so. As an initial matter, the MITRE Report may be used for a variety of non-hearsay purposes, including impeachment, rehabilitation, and to refresh a witness's recollection, among others. For example, "[t]he doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." *United States v. Lum*, 466 F.Supp. 328, 334 (D. Del. 1979) (citations omitted). While application of this doctrine depends on the testimony of the witness on direct examination, it may be applicable to Dr. Halderman, for example. Dr. Halderman's report and testimony are directly related to the MITRE Report, and Dr. Halderman testified nearly a year ago that he reviewed the MITRE report. [Doc. 1564 at 34:18–35:1].

Indeed, Dr. Halderman's declaration dated May 16, 2023 and filed in pre-

trial proceedings states:

> One reason for this lack of urgency may be the fact that Dominion has told Georgia (and other jurisdictions that use Dominion's voting equipment) that MITRE concluded the attacks in the Expert Report are infeasible. This is highly misleading. MITRE admits it was provided no access to Dominion's equipment or software (unlike Professor Springall and myself), and MITRE's analysis is entirely premised on the false assumption that outsiders cannot gain access to the equipment and software—which outsiders did in Coffee County and elsewhere. Security experts who advise states cannot properly assess MITRE's claims and understand why they are unfounded and dangerous without the same access to the Expert Report that MITRE received from Dominion.

[Doc. 1678-7]. As a result, it is likely that Dr. Halderman's testimony may open the door to cross-examination about the MITRE Report. *See Vodusek*, 71 F.3d at 157. In this case, the interests of fairness are served by permitting Defendants to ask Dr. Halderman about the MITRE Report. On that basis alone, the MITRE Report cannot be excluded entirely as Plaintiffs seek.

Nevertheless, the MITRE Report is still admissible for the substance of its contents under the residual hearsay exception. Federal Rule of Evidence 807 contains the "residual" hearsay exception intended to cover "new and presently unanticipated situations" when trustworthy hearsay evidence is offered, but does not fall within an existing hearsay exception. *See* Advisory Committee Note to Fed. R. Evid. 807. In light of the circumstances surrounding the concealment of Dr. Halderman's report from Dominion and underlying

data from Defendants, this is an appropriate scenario for F.R.E. 807 to be invoked.

The residual hearsay exception allows statements not admissible under other hearsay exceptions to nonetheless be admitted if: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of [the Federal Rules of Evidence] and the interests of justice. Fed. R. Evid. 807(a). In evaluating the trustworthiness of a hearsay statement, a court may consider several factors, such as "the circumstances in which it was made, the motivation of the declarant, the knowledge and qualification of the declarant, and the existence of corroborating evidence." *United States v. Brown*, 685 F. App'x 891, 895 (11th Cir. 2017) (citation omitted). Here, the MITRE Report and circumstances surrounding the MITRE Report support its admissibility under Rule 807.

MITRE was founded in 1958 and has operated federally funded research and development centers that provide independent technical expertise to

federal agencies since that time.[1] [Doc. 1521 at 3]. MITRE has worked on some of the nation's most complex technical issues, from nuclear weapons security to highly sensitive data analysis. *Id.* Even Plaintiffs' expert Dr. Richard DeMillo has conducted research for a MITRE report. [Doc. 1678-5 at 14] ("A Report to the Federal Aviation Administration, MITRE Report (January 1993)"). MITRE's National Election Security Lab (MITRE NESL) is a trusted authority on cybersecurity in the election space and was directly involved in CISA's review of Dr. Halderman's assertions about the Dominion equipment. Sufficient guarantees of trustworthiness exist for purposes of the hearsay exception. The MITRE Report is also evidence that is material to this case, and in light of the attacks on democracy spurred by Plaintiffs' claims, admitting the MITRE Report will best serve the interests of justice, in satisfaction of the requirements of Rule 807.

Additionally, the MITRE Report is more probative on the issue of an assessment of Dr. Halderman's report than any other evidence that could be obtained through reasonable efforts. Indeed, the MITRE Report is an

---

[1] MITRE (https://www.mitre.org/) has operated federally funded research and development centers for over 65 years and currently operates six of the forty-two federally funded research and development centers. Among other things, MITRE also maintains the CVE and CWE lists in coordination with the Department of Homeland Security and CISA. *See* https://cwe.mitre.org/ and https://cve.mitre.org/.

independent assessment provided to Dominion of the claims in Dr. Halderman's report. MITRE's report is of course based on Dr. Halderman's report and not the data underlying Dr. Halderman's conclusions because Plaintiffs refused to disclosure required information. While Plaintiffs can argue about the weight the Court should give the MITRE Report, they have not shown a basis for its complete exclusion.

## III. Authentication of the MITRE Report.

Plaintiffs also seek to exclude the MITRE Report because they claim it cannot be authenticated. Plaintiffs claim that only a witness from MITRE with knowledge of the MITRE Report could authenticate the document. However, the Federal Rules of Evidence do not limit authentication solely to the author of the document.

Evidence is properly authenticated where there is "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Trial courts employ a two-step process to determine whether a document is authentic. *United States v. Maritime Life Caribbean Limited*¸913 F.3d 1027, 1032-33 (11th Cir. 2019). The first step is a preliminary assessment of authenticity under Rule 901, which "requires a proponent to present 'sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'" *Id.* (quoting *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012)). If the proponent makes out the prima facie case

to satisfy the first step, the trial court proceeds to the second step, in which "the evidence may be admitted, and the ultimate question of authenticity is then decided by the [factfinder]." *Id.*; *see also In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015) ("Once [a] prima facie showing of authenticity [is] made, the ultimate question of the authenticity of the documents [is] left to the factfinder.").

Here, although several witnesses may be able to authenticate the MITRE Report, Dominion's company representative, Nick Ikonomakis, Vice President and chief engineer at Dominion, could of course authenticate the MITRE Report. MITRE NESL was retained by Dominion to provide an independent expert technical review of the claims made by Dr. Halderman concerning the security of Dominion's voting system. Federal Rule of Evidence 901(b)(1) states that a matter may be authenticated by testimony from a witness who has knowledge that the matter is what its proponent claims it to be. Unless Dominion's representative lacks knowledge of the report that Dominion retained MITRE to provide through its review of Dr. Halderman's claims, Dominion can authenticate the MITRE Report.

## IV.  The MITRE Report should not be excluded under Rule 37(b)(2)(A)(ii).

Finally, Plaintiffs claim that the MITRE Report should be excluded under Rule 37(b)(2)(A)(ii) because it is a product of a violation of the Court's

Protective Order. Dominion provided Dr. Halderman's report to MITRE based on its good faith belief that doing so adhered to the Court's direction at the November 19, 2021 hearing. [Doc. 1521]. Moreover, Dr. Halderman's report has been made publicly available on the record. [Doc. 1680]. As such, to exclude the MITRE Report now on this ground would unfairly prejudice Defendants and the voters of Georgia.

Respectfully submitted, this 12th day of December, 2023.

/s/ Vincent R. Russo

| Vincent R. Russo | 242628 |
| Josh Belinfante | 047399 |
| Carey A. Miller | 976240 |
| Alexander Denton | 660632 |
| Edward A. Bedard | 926148 |
| Javier Pico Prats | 664717 |
| Anna Edmondson | 289667 |

ROBBINS ALLOY BELINFANTE
    LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com
    jbelinfante@robbinsfirm.com
    cmiller@robbinsfirm.com
    adenton@robbinsfirm.
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

| Bryan P. Tyson | 515411 |
| Diane F. LaRoss | 430830 |
| Bryan F. Jacoutot | 668272 |

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200

Atlanta, GA 30339
T: 678-336-7249
E: btyson@taylorenglish.com
  dlaross@taylorenglish.com
  bjacoutot@taylorenglish.com

*Counsel for State Defendants*

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE MITRE REPORT has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Vincent R. Russo*
Vincent R. Russo