## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

      **v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## PLAINTIFFS' REPLY IN SUPPORT OF ITS
## <u>MOTION TO EXCLUDE THE MITRE REPORT</u>

## TABLE OF CONTENTS

I.     DEFENDANTS GROSSLY MISSTATE THE FACTS ................................1

       A.     Plaintiffs urged sharing the Halderman Report with Dominion ..........2

       B.     Plaintiffs did not know that MITRE received the unredacted
              Halderman Report until September 2022................................................4

       C.     Plaintiffs did not know that Defendants would rely on the
              MITRE Report until the January 2023 summary judgment
              motions ....................................................................................................5

II.    ARGUMENT ........................................................................................................6

       A.     Defendants' late disclosure of the MITRE Report is not
              justified ....................................................................................................6

       B.     Defendants cannot avoid their expert disclosure obligations .............8

       C.     The MITRE Report is hearsay ...............................................................9

       D.     Defendants cannot authenticate the MITRE Report .........................13

       E.     Defendants do not dispute the protective order violation that
              produced the MITRE Report................................................................14

III.   CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Addison v. Arnett*,
    2016 WL 3676621 (S.D. Ga. Jul. 6, 2016) .......................................................11

*Armstead v. Allstate Prop. & Cas. Ins. Co.*,
    2016 WL 878507 (N.D. Ga. Mar. 8, 2016) .....................................................9, 10

*Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*,
    389 F.3d 1339 (11th Cir. 2004) ....................................................................10

*Cedent v. United States*,
    75 F.4th 1314 (11th Cir. 2023) ......................................................................8

*Frame v. ADT Sec. Servs., Inc.*,
    2007 WL 9702445 (N.D. Ga. Oct. 25, 2007) ................................................14

*Garcia v. Fannie Mae*,
    794 F. Supp. 2d 1155 (D. Or. 2011) ............................................................14

*Gbarabe v. Chevron Corp.*,
    2017 WL 956628 (N.D. Cal. Mar. 13, 2017) ................................................14

*Moon v. Advanced Med. Optics, Inc.*,
    2010 WL 11500832 (N.D. Ga. Dec. 29, 2010) .............................................13

*Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*,
    2007 WL 4563875 (N.D. Ga. May 11, 2007) ...............................................13

*Spearman v. Broker Sols.., Inc.*,
    2023 WL 3919752 (N.D. Ga. Feb. 16, 2023) ............................................13, 14

*Sweet Additions Ingredient Processors, LLC v. Meelunie Am., Inc.*,
    2023 WL 3600628 (S.D. Fla. Mar. 20, 2023) ................................................9

*United States v. Bradford*,
    748 F. App'x 217 (11th Cir. 2018) ..............................................................14

*United States v. Scott*,
    701 F.2d 1340 (11th Cir. 1983) ....................................................................11

*Walker v. Johnson,*
  2007 WL 4579641 (M.D. Ga. Dec. 27, 2007)......................................................11

*Wegener v. Johnson,*
  527 F.3d 687 (8th Cir. 2008) ...............................................................................10

**Rules**

Fed. R. Civ. P. 26(a)(2)............................................................................... 8, 9, 10

Fed. R. Civ. P. 26(a)(3) .....................................................................................10

Fed. R. Evid. 801(d)(1) ......................................................................................11

Fed. R. Evid. 807 ...............................................................................................12

Local Rule 26.2(C)...............................................................................................8

Defendants' Response is meritless.  *First*, they grossly misstate the facts to blame Plaintiffs for the untimeliness of the MITRE Report.  Plaintiffs repeatedly urged Defendants *for many months* to share the Halderman Report with Dominion, but they refused.  More importantly, Defendants were free to engage MITRE or any other expert *themselves* to do the "assessment" MITRE did.  *Second*, Defendants' claim that *no discovery* obligations apply to the MITRE Report because it came from non-party Dominion smacks of gamesmanship and is wrong. Defendants had to make the required Rule 26 expert disclosures for any expert testimony they seek to offer.  They admit they did not even try to comply with those requirements, even after receiving the MITRE Report as late as May 2022. *Third*, Defendants' intended purposes for the Report at trial do not permit its admission into evidence.  *Fourth*, Defendants do not—and cannot—claim that this Court allowed the disclosure of the sealed Halderman Report to MITRE, rendering the MITRE Report ill-gotten gains of a willful violation of the Protective Order.

## I.    DEFENDANTS GROSSLY MISSTATE THE FACTS

To shirk responsibility for failing to comply with their discovery obligations, Defendants present a highly misleading narrative.  (Doc. 1732 at 2-9.)  Yet Defendants cannot refute the key facts: (1) this Court never permitted disclosure of the sealed Halderman Report to MITRE; (2) Defendants never disclosed and did not seek to rely on the MITRE Report until summary judgment despite having it

1

*themselves* since at least *May 2022*; (3) Defendants could have had MITRE or another expert conduct the same "assessment" at any time after receiving the July 2021 Halderman Report; and (4) no one from MITRE will appear at trial to endorse or even authenticate the MITRE Report.  These facts are dispositive.

### A.    Plaintiffs urged sharing the Halderman Report with Dominion

Defendants claim that "Plaintiffs refus[ed] to allow Dr. Halderman's report to be disclosed—preventing Dr. Halderman's findings from being assessed" *by Dominion* through fall 2021.  (Doc. 1732 at 3-4, 6.)  This is blatantly untrue.

*First*, nothing "prevent[ed] Dr. Halderman's findings from being assessed" by virtually any expert of Defendants' choosing.  They had Dr. Juan Gilbert "assess" his findings in July 2021.  *Dominion's* access is entirely irrelevant.

*Second*, *Defendants* insisted on keeping the redacted Halderman Report under seal, *over Plaintiffs' repeated objections*.  (Doc. 1177 at 5.)  Plaintiffs designated the Report AEO *only* "at the insistence of State Defendants."  (Doc. 1383 at 3.)  And *Defendants* insisted on that until January 2022.  (*See id.*)

*Third*, Plaintiffs repeatedly urged sharing the Halderman Report with Dominion.  At a July 26, 2021 hearing, Curling Plaintiffs stated, "we [Curling Plaintiffs and the State] are aligned in the idea that [the Halderman Report] *should go to Dominion and eventually should be public*."  (Doc. 1143 at 42:3-5.)  At an August 19, 2021 hearing, Curling Plaintiffs reiterated: "*We are eager, as Dr.*

2

*Halderman has explained, to share his findings with Dominion.*  As we discussed last time, we need a protocol for that." (Doc. 1160 at 81:16-21.)  Curling Plaintiffs simply wanted a discovery protocol for "who gets it, what the protections are in place, what are the things we can do to prevent discovery in [] other litigations." (*Id.* at 43:8-15; *see also id.* at 40:6-11.)  Defendants had used "privilege" to hide a damaging assessment of the BMDs from Fortalice (Doc. 1229), and Plaintiffs rightly wanted to ensure proper transparency with any assessment by Dominion.

On September 21, 2021, the parties filed a joint discovery statement about providing the Halderman Report to CISA.  (Doc. 1177 at 4-6.)  Curling Plaintiffs urged disclosing the Halderman Report to CISA, individuals at the Secretary's Office, *and Dominion*.  (*Id.*)  But *Defendants* insisted the Halderman Report remain sealed, opposed disclosure to CISA, and did not even identify *anyone* at the Secretary's Office to receive the Report.  (*See id.*)  (As of spring 2022, senior officials still had not seen it, including the CIO (Doc. 1374 at 27:10-28:14.))

At a November 19, 2021 hearing, Curling Plaintiffs again emphasized: "[W]e are not the ones that are keeping anyone at the Secretary of State's office *or Dominion* or anyone else from reviewing the report. . . . [*W*]*e think Dominion should see it*." (Nov. 19, 2021 Hr'g Tr. at 86:12-19; *see id.* at 92:12, 93:23-94:2.) The Court stated it "would authorize" the State to disclose the Halderman Report to Dominion (*id.* at 86:23-87:23) but would not *order* it to do so (*id.* at 93:23-

3

94:8).  Curling Plaintiffs asked whether *they* could send the Report to Dominion, but the Court declined.  (*Id.* at 92:7-20.)  Curling Plaintiffs even offered a meeting among Dominion and Drs. Halderman and Springall—with the State's counsel present—to discuss the Report; the Court encouraged the meeting did not mandate it.  (*Id.* at 94:20-95:13.)

On December 10, 2021, Curling Plaintiffs' lead counsel held a meeting with Defendants' counsel, Drs. Halderman and Springall, and Dominion representatives, including Nick Ikonomakis, Dominion's Vice President of Engineering.  Drs. Halderman and Springall offered to make themselves available to assist Dominion however they could with the Report and its findings and to help address the many vulnerabilities it details.  A month later, in January 2022, Dominion sent an engagement letter to retain Dr. Halderman *as its own consultant*. That engagement did not proceed after Secretary Raffensperger suddenly called for the public release of the Halderman Report that same month.

Defendants are coy on exactly when Dominion provided the Halderman Report to MITRE.  But *Defendants' persistent refusal* to share the Report with Dominion is indisputable, and their narrative attributing delay to Plaintiffs in their Response is so blatantly untrue as to be sanctionable.

### B.   Plaintiffs did not know that MITRE received the unredacted Halderman Report until September 2022

Defendants claim that "Dominion and MITRE were directly involved in the

4

process undertaken by CISA since at least May 2022." (Doc. 1732 at 8.) This is entirely irrelevant to this Motion—but regardless, *Plaintiffs* were not part of that process and were unaware that Dominion had shared the sealed Halderman Report with MITRE until Dominion filed it on September 19, 2022.

At a June 7, 2022 hearing, a *forthcoming* MITRE report was mentioned without suggesting that Dominion would (or had) shared the Halderman Report with MITRE. (June 7, 2022 Hr'g Tr. at 10:21-11:9.) On September 20, 2022, the day after Dominion filed the MITRE Report, Curling Plaintiffs asked Dominion to explain "how it is that Dominion shared Halderman's July 2021 report with MITRE," stating "[w]e're not aware of [the Court] ever authorizing disclosure to MITRE." (Doc. 1506-1 at 2-3.) Plaintiffs' response to Dominion's filing likewise noted they were "very surprised to see in Dominion's unexpected filing that MITRE...had received the sealed Halderman Report." (Doc. 1506 at 2-3.)

## C.   Plaintiffs did not know that Defendants would rely on the MITRE Report until the January 2023 summary judgment motions

On September 30, 2022, Curling Plaintiffs emailed Defendants asking whether Defendants would seek to rely on the MITRE Report. (Doc. 1506-2 at 3-4.) Defendants did *not* state that they would, instead saying only that "the report is relevant to the issues in this case, and it is a development." (*Id.* at 2.) They did not object when the Court struck the Report from the record in October 2022. (Doc. 1520.) They relied on it for the first time for summary judgment earlier this year.

## II.     ARGUMENT

### A.     Defendants' late disclosure of the MITRE Report is not justified

Defendants do not dispute that Plaintiffs received the MITRE Report after all discovery deadlines.  (Doc. 1732 at 11.)  They nonetheless argue that "[t]here was no delay providing the MITRE Report to Plaintiffs" and that any delay was "directly related to . . . the restrictions placed on disclosure of Dr. Halderman's report to Dominion."  (Doc. 1732 at 9, 11.)  That is knowingly untrue.

*First*, Defendants were not *required* to have non-party *Dominion* retain an expert to respond to Dr. Halderman.  They received his Report on July 1, 2021, and could have asked their existing experts to do what MITRE did—or retained MITRE to do it—by the close of expert discovery on December 6, 2021, the extended deadline for rebuttal expert disclosures on January 24, 2022 (or any of the later extended deadlines).  (Doc. 1238; Doc. 477 § 5(b).).  Defendants simply *chose* not to do that.  They now have to live with that choice.

*Second*, Defendants protest that "the Court did not allow Defendants to disclose the Halderman Report [to Dominion] until the November 19, 2021 status conference."  (Doc. 1732 at 11.)  But this was entirely *their* doing.  Plaintiffs repeatedly urged disclosure to Dominion, including at hearings on July 26, August 19, and November 19, 2021.  (*See supra* § I.A.)  Plaintiffs even asked to share the Halderman Report with Dominion themselves (which the Court denied) and

*offered a meeting between Dr. Halderman and Dominion* with Defendants' counsel present (which occurred in December 2021).  (*Supra* § I.A.)  Plaintiffs only sought some protocol to limit the disclosure to appropriate individuals at Dominion— *which proved prescient given the later unauthorized disclosure to MITRE*. Meanwhile, *Defendants* opposed unsealing the Halderman Report for many months and refused to share it with Dominion and CISA.  (*See supra* § I.A.)

*Third*, Defendants do not explain the extensive delay after November 19, 2021, when Defendants claim the Court allowed disclosure of the Halderman Report to Dominion.  (Doc. 1732 at 11.)  Defendants contend that "MITRE's work for Dominion was not completed until July 2022, *after* discovery closed."[1]  (*Id*.) But they do not explain why it took *more than six months* to complete the MITRE Report (which did not even involve examining any equipment or software)—far eclipsing any reasonable timeframe for an expert rebuttal report.  Defendants also do not explain failing to disclose the MITRE Report at the time it was completed. And Defendants do not explain waiting until summary judgment motions in *January 2023* to rely on that Report (Doc. 1570-4)—over 1.5 years after Plaintiffs produced the Halderman Report; a year after the Court's expert disclosure deadline; over a year after Defendants now claim they received "permission" to

---

[1] Defendants can't keep their story straight. The Secretary's COO, Gabriel Sterling, publicly announced the MITRE Report's purported findings in May 2022, *months before* July 2022 when Defendants now claim the Report was completed.  (Ex. E.)

share the Halderman Report with Dominion; and some seven months after MITRE

completed its work.  Defendants *chose* not to use MITRE during discovery, which

precludes its use for any purpose now.  It would be extremely prejudicial and

unfair to allow use of the Report now, ***especially after Defendants successfully***

***excluded Plaintiffs' expert Dr. Duncan Buell <u>two years ago</u>***.  (Doc. 1322.)

### B.        Defendants Cannot Avoid Their Expert Disclosure Obligations

Defendants concede they made no Rule 26 expert disclosures about the

MITRE Report.  (Doc. 1732 at 10-11.)  They argue that the requirements of Rule

26(a)(2)(B) do not apply because "neither Dominion nor MITRE was retained as

an expert by Defendants."  (*Id.*)  This is demonstrably wrong (and underhanded).

The MITRE Report states that Dominion "retained MITRE's National

Election Security Lab (NESL) to provide an independent expert technical review

of [Dr. Halderman's] claims."  (Doc. 1570-4 at ii.)  Thus, the MITRE Report is

explicitly a retained "expert" report that *Defendants seek to use in this case*.  Thus,

Rule 26(a)(2)(B) applies *to Defendants*.  That *non-party* Dominion (rather than

Defendants) retained MITRE does not permit Defendants to rely on the MITRE

Report without making the required expert disclosures.  Indeed, Local Rule

26.2(C) requires that "[a]ny party who desires to *use* the testimony of *an* expert

witness shall designate the expert sufficiently early in the discovery period to

permit" a deposition.  Defendants *chose* not to do this, even when asked directly in

September 2022.  Permitting such an end-around the Federal Rules would incentivize parties to evade expert disclosures by funneling expert retention through friendly non-parties.  *Cf. Sweet Additions Ingredient Processors, LLC v. Meelunie Am., Inc.*, 2023 WL 3600628, at *3 (S.D. Fla. Mar. 20, 2023) (excluding undisclosed expert and rejecting plaintiff's "efforts to 'disguise' its expert witness as a lay witness" to evade disclosure obligations).

Further, Defendants also failed to comply with Rule 26(a)(2)(A), which mandates that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Experts retained by non-parties are not excluded when a party seeks to use their work at trial.  Defendants have never disclosed any author of the MITRE Report as a potential trial witness.  This too is dispositive.

## C.   The MITRE Report is hearsay

Defendants argue that they can use the MITRE Report for the non-hearsay purposes of impeachment, rehabilitation, and to refresh recollection, and that the residual hearsay exception applies.  (Doc. 1732 at 13-17.)  Defendants are wrong, including because none of these purposes permits the material used to be *admitted into evidence*.  Defendants are trying to backdoor inadmissible evidence.

*First*, undisclosed expert opinions cannot be introduced to "impeach" the testimony of an opposing expert.  In *Armstead v. Allstate Prop. & Cas. Ins. Co.*,

9

the plaintiff argued that her rebuttal expert's "testimony is allowed—even if [the expert] did not comply with the requirements of Rule 26(a)(2)(B) . . . to impeach the testimony of [defendant's] experts."  2016 WL 878507, at *1 (N.D. Ga. Mar. 8, 2016).  The court rejected this argument, stating that "Plaintiff does not provide any authority to support that a party calling an impeaching expert witness is not required to disclose the identity and report of the expert during the discovery process," and "the exception for impeachment evidence found in Rule 26(a)(3)(A) applies only to the *additional* disclosures required under that subsection for [witnesses] other than expert[s]."  *Id.* at *3 (emphasis in original).

The Eighth Circuit held that "Rule 26(a)(2) required disclosure of [expert's] supplemental testimony" because "[i]t does not impeach . . . to show that an expert's opinion about the meaning of facts merely differs from that of other experts."  *Wegener v. Johnson*, 527 F.3d 687, 690-91 (2008).  Although it can sometimes be difficult to distinguish between impeachment and substantive evidence, "Rule 26(a)(2)(C)(ii) resolves the dilemma in favor of disclosure by *requiring parties to disclose expert testimony offered to contradict the expert testimony of the opposing party*."  *Id.* (emphasis added); *see also Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1354 (11th Cir. 2004) (disclosure exemption "only covers witnesses whose testimony is offered *solely* to impeach," not "those who provide any substantive testimony") (emphasis in original).

Even were Defendants permitted to use the MITRE Report for impeachment despite their Rule 26 failures, impeachment exhibits are not admissible as substantive evidence absent an *independent basis* for admissibility. *See Addison v. Arnett*, 2016 WL 3676621, at *3 (S.D. Ga. Jul. 6, 2016) ("inadmissible evidence used to impeach a witness may not be admitted as substantive evidence"); *Walker v. Johnson*, 2007 WL 4579641, at *5 (M.D. Ga. Dec. 27, 2007) (affidavit "could be used for possible impeachment purposes" but "such impeachment evidence is not substantive evidence of the truth of the statements").

*Second*, the MITRE Report cannot be used for rehabilitation. This exemption applies if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and is offered . . . to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1). Defendants acknowledge that no one from MITRE will testify. Thus, the MITRE Report cannot serve as a prior consistent statement of a declarant who will testify at trial.

*Third*, the contents of the MITRE Report cannot be introduced for refreshing recollection. "[T]he court has an obligation to prevent witnesses from putting into the record the contents of an otherwise inadmissible writing under the guise of refreshing recollection." *United States v. Scott*, 701 F.2d 1340, 1346 (11th Cir. 1983) (citation omitted). This is just what Defendants seek to do.

11

*Finally*, the MITRE Report does not meet Rule 807's residual exception since it lacks sufficient guarantees of trustworthiness:  the authors, their qualifications, their methodology, and the information they considered are all unknown, rendering the Report inherently untrustworthy.  (Doc. 1725 at 11-12.) MITRE itself has not even endorsed the Report in this case and apparently is unwilling to be cross examined on it at trial.  Moreover, *two dozen* leading cybersecurity and election security experts called for the MITRE Report's immediate retraction for its failure to comport with basic, well-accepted scientific principles.  (Ex. D) ("MITRE's analysis isn't simply wrong—it is dangerous . . . .").  And the MITRE Report itself confirms its untrustworthiness, especially the statement that it "*assumes* strict and effective controlled access to Dominion election hardware and software."[2]  (Doc. 1570-4 at ii n.2).  The Coffee County breach renders that assumption—pivotal to the Report's findings—absurd.

Defendants nonsensically claim that "the MITRE Report is more probative on the issue of an assessment of Dr. Halderman's report than any other evidence that could be obtained through reasonable efforts" because it provides an "independent assessment" of Dr. Halderman's findings.  (Doc. 1732 at 17-18.)

---

[2] Notably, Secretary Raffensperger and others in his Office have misrepresented the MITRE Report in public statements, claiming that "MITRE recognized that existing procedural safeguards make it extremely unlikely for any bad actor to actually exploit any vulnerabilities."  (Ex. E.)  MITRE simply *assumed* that.

They easily could have made "reasonable efforts" to obtain the same "assessment" from virtually any independent expert.  And MITRE is not "independent" as Defendants suggest—**MITRE is one of the Secretary's own vendors** regarding the 2020 Presidential election.  (Ex. F.)  Lastly, there *has* been an "independent assessment" of Dr. Halderman's findings:  *CISA's advisory*.  (Doc. 1631-46.)  It not only confirms his findings; it advised mitigation measures Defendants ignored.

### D.     Defendants cannot authenticate the MITRE Report

Defendants claim Dominion's representative, Mr. Ikonomakis, can authenticate the MITRE Report, but that is wrong for at least two reasons.

*First*, Mr. Ikonomakis also was not timely disclosed in discovery or even on Defendants' initial witness list.  (Ex. G.)  He was newly added to Defendants' revised witness list on December 5, 2023, which is far too late.  He therefore cannot testify.  *See Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*, 2007 WL 4563875, at *6 (N.D. Ga. May 11, 2007) (excluding documents for failure to disclose the authentication witnesses during discovery).

*Second*, Mr. Ikonomakis is not a MITRE employee who helped author the report and thus lacks the requisite personal knowledge to authenticate the Report *as authored by MITRE*.  *See Moon v. Advanced Med. Optics, Inc.*, 2010 WL 11500832, at *7 (N.D. Ga. Dec. 29, 2010) (witness did "not have the required personal knowledge" to authenticate document); *Spearman v. Broker Sols., Inc.*,

2023 WL 3919752, at *1 (N.D. Ga. Feb. 16, 2023) (similar); *United States v. Bradford*, 748 F. App'x 217, 219-20 (11th Cir. 2018) (similar).  MITRE's purported authorship of the Report is a key allegation Defendants rely on to try to lend the Report credence—but only someone with firsthand knowledge at MITRE directly involved with preparing the Report can corroborate that allegation.  Mr. Ikonomakis's testimony regarding the MITRE Report—at best—would be based on hearsay (statements from MITRE), which is insufficient.  *See Gbarabe v. Chevron Corp.*, 2017 WL 956628, at *27 (N.D. Cal. Mar. 13, 2017) (finding no authenticity for declarations based on hearsay, not personal knowledge); *Garcia v. Fannie Mae*, 794 F. Supp. 2d 1155, 1162 (D. Or. 2011) (hearsay is not personal knowledge and is insufficient to authenticate); *Frame v. ADT Sec. Servs., Inc.*, 2007 WL 9702445, at *3 (N.D. Ga. Oct. 25, 2007) (same).  Lacking the requisite MITRE witness, the Report cannot be authenticated and is inadmissible.

### E.    Defendants do not dispute the protective order violation that yielded the MITRE Report

Defendants do not dispute that the MITRE Report was prepared in violation of the Court's Protective Order, claiming only that "Dominion provided Dr. Halderman's report to MITRE based on its good faith belief that doing so adhered to the Court's direction."  (Doc. 1732 at 19.)  Defendants cannot speak to Dominion's subjective belief.  But in any event, there is no basis for such a belief. Defendants cite Dominion's reference to a November 2021 statement by the Court

suggesting the Court *would* authorize—***not** had authorized*—disclosure to contractors "responsible for the delivery of the [election] system" and its "safety and security." (Doc. 1521 at 2-3.) The Court did *not* give Dominion free rein to share the sealed Halderman Report with third parties *without* the Court's specific authorization. (Doc. 1520 at 2.) And MITRE obviously is not "responsible for the delivery of the [election] system" and its "safety and security." Defendants' contrary suggestion directly contradicts their claim that MITRE is an "independent" expert. Defendants, again, cannot keep their story straight.

## III.   CONCLUSION

Defendants plainly intend to try this case by ambush. Despite this Court's directive weeks ago for them to identify the witnesses they actually intend to call at trial, they have identified *only four such witnesses* with over 30 "may call" witnesses—including individuals never disclosed as potential trial witnesses or even as individuals with information relevant to the BMD claims in this case. They have burdened Plaintiffs and this Court with a discovery dispute regarding Dr. Halderman's Report that they admit they willfully sat on for 2.5 years—now they want significant new discovery to use at trial. The MITRE Report is just another example—among many others—of their trial-by-ambush approach. The Court needs to reject this tactic and hold them to the discovery record, including their own longstanding decisions not to develop that record in important ways.

15

Respectfully submitted this 14th day of December, 2023.

/s/ David D. Cross
David D. Cross (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Matthaeus Martino-Weinhardt
(*pro hac vice*)
Ramsey Fisher (*pro hac vice*)
Aaron Scheinman (*pro hac vice*)
Benjamin Campbell (*pro hac vice*)
Wail Jihadi (*pro hac vice*)
Oluwasegun Joseph (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
dcross@mofo.com

/s/ Halsey G. Knapp, Jr.
Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
Jessica G. Cino
GA Bar No. 577837
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
(404) 888-9700
hknapp@khlawfirm.com

/s/ Christian G. Andreu-von Euw
Christian G. Andreu-von Euw
(*pro hac vice*)
THE BUSINESS LITIGATION GROUP, PC
150 Spear Street
San Francisco, CA 94105
(415) 765-6633
christian@blgrp.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

/s/ Russell T. Abney
Russell T. Abney
Georgia Bar No. 000875
WATTS GUERRA, LLP
4 Dominion Drive, Building 3

/s/ Robert A. McGuire, III
Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Plaintiff Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for Plaintiffs William Digges III, Laura Digges, & Megan Missett*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2023, a copy of the foregoing

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE**

**MITRE REPORT** was electronically filed with the Clerk of Court using the

CM/ECF system, which will automatically send notification of such filing to all

attorneys of record.

*/s/ David D. Cross*
David D. Cross

19