**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DONNA CURLING, *et al.*

*Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

*Defendants*.

CIVIL ACTION

FILE NO. 1:17-CV-2989-AT

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR OMNIBUS MOTION *IN LIMINE*

After arguing that motions *in limine* should not be filed at all and stressing the need for concise motions should Defendants exercise their right to do so, Plaintiffs have offered the Court twenty-five pages of incorrect statements on the law, fabricated factual circumstances, and changed positions from the Parties' meet-and-confer in response to Defendants' sixteen-page Motion. Notwithstanding that all of this demonstrates the need for clear rulings to clarify the scope of trial and avoid wasting this Court's and the Parties time and resources, Plaintiffs double-down and insist this Court do nothing such that they may freely throw anything and everything against the wall to see what sticks. As explained herein, however, Plaintiffs' arguments fail on the law and this Court should grant Defendants' Omnibus Motion *in Limine*.

## I. Plaintiffs proffer no basis to admit Fifth Amendment invocations and draw adverse inferences therefrom.

Offering no corroborating evidence to support the inferences from which they seek to benefit, Plaintiffs argue that the Court should avoid addressing the issue altogether. They go on to contort case law to impute the Fifth Amendment invocations of nonparties Chaney, Hampton, Latham, and Riddlehoover against State Defendants, Resp. at 3, n.1—despite that none of these individuals ever were an agent or employee, or otherwise loyal to State Defendants—in a continued effort to paper over their lack of evidence with docket entries. This Court should decline to invent by legal fiction what Plaintiffs cannot prove in fact.

### A. <u>This Court can and should decline Plaintiffs' requested inference prior to trial.</u>

Plaintiffs argue that the Court cannot, prior to trial, evaluate this matter on a "case-by-case, *question-by-question* basis" because it "does not have in front of it the specific set of … invocations Plaintiffs will seek to admit." Resp. at 4, 5 (emphasis in original). Plaintiffs are wrong.

First, *Coquina Invs. v. T.D. Bank, NA*, 760 F.3d 1300 (11th Cir. 2014), cited by Plaintiffs to support their emphatic position that a "*question-by-question*" analysis is required and cannot be conducted prior to trial, says nothing of the sort. Resp. at 4 (citing *Id.* at 1311). Indeed, the only analysis of questions in *Coquina* concerned whether counsel had a good-faith basis for

asking leading questions at trial for the sole purpose of drawing a Fifth Amendment invocation and adverse inference. *Id.* at 1312–13. After noting Ninth Circuit authority holding "that an 'adverse inference can only be drawn when' silence is countered by 'independent evidence ... of the fact to which the party refuses to answer," *Id.* at 1313 (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000)), the Eleventh Circuit did not decide "whether to adopt *Doe* as the law of this Circuit," because any "error did not affect TD Bank's 'substantial rights.'". *Id.*

Plaintiffs further argue that the Court "does not have in front of it a specific set of Fifth Amendment invocations Plaintiffs will seek to admit." Resp. at 5. This is a curious statement given the time and resources the Parties have spent addressing deposition designations and further given the individuals invoking the Fifth Amendment are all beyond the subpoena range of the Court; thus, presumably, Plaintiffs will not be calling these individuals to testify live. And to the extent such specificity is lacking (as to the specific question or specific inference proposed to be drawn) it is the result of Plaintiffs' hand-waving. It is not Defendants' responsibility to make their argument for them.

Moreover, the other district court cases Plaintiffs cite for the proposition that the Court cannot rule on this matter now are all readily distinguishable. Resp. at 4. In *SEC v. Melvin*, for example, the district court deferred ruling because the nonparty witnesses had "not yet been identified." 2014 WL

11829332 at *3 (N.D. Ga. Nov. 21, 2014). Not so here. Likewise, in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, the district court did not defer the issue simply because it was prior to trial. 681 F. Supp. 2d 141. Rather, the court addressed the matter at **summary judgment** and declined to decide it since there was "sufficient evidence to establish a genuine issue of material fact on the issue of the DSM defendants' participation in a price-fixing conspiracy even without having to draw negative inferences." *Id.* at 153 (D. Conn. 2009). Finally, in *Wechsler v. Hunt Health Sys., Ltd.*, the court declined to decide the issue on a motion *in limine* where the **movant** sought an adverse inference without providing any specificity and where the movant's "broad-based questions" provided no instruction as to the relevance of the testimony. 2003 WL 21998980 at *3. If anything, this counsels in favor of granting Defendants' motion since Plaintiffs have yet to establish with specificity what they are seeking and how it is relevant.

B. Notwithstanding Plaintiffs' misstatement of the law, *Coquina* and *LiButti* counsel against drawing an adverse inference.

Plaintiffs failed attempt to contort controlling precedent and reliance on distinguishable cases further confirms that the application of the factors elucidated by *Coquina* and *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997) foreclose drawing an adverse inference.

First, as Defendants correctly noted in their Motion, the nature of the relationship factor "should be examined … from the perspective of a non-party witness' loyalty to the plaintiff or defendant." *LiButti*, 107 F.3d at 123. Here, there is no evidence from which it can be reasonably deduced that these nonparty witnesses would be "less likely to render testimony in order to damage the relationship." *Id.* Indeed, one of the Fifth Amendment invocations was made in response to the question "Why did you have to help Trump's man … go after Secretary Raffensperger and Governor Kemp?" Chaney Dep. Tr. 107:11-14. The circumstances here indicate that, if anything, these nonparty witnesses would purposefully render any testimony they could which would damage the Secretary and the State Defendants—not that they would avoid doing so out of loyalty or another bond. This is precisely the reason why in the majority of circumstances, nonparty inferences are drawn against parties closely tied, "whether by reason of blood, friendship or business," to the party against whom the inference is sought. *LiButti*, 107 F.3d at 123.

Second, Plaintiffs' argument regarding control misses the mark entirely. Plaintiffs cite to *Fair Fight Action, Inc. v. Raffensperger*, 599 F. Supp. 3d 1337, 1341 (N.D. Ga. 2022), to argue that the statements of Chaney, Hampton, and Riddlehoover may be imputed against Defendants as akin to statements by an agent. Resp. at 9-10. Plaintiffs ignore, however, that in that case Judge Jones admitted a statement made by a State Election Board Member against the

State Election Board itself, in a case where the Board (not just its Members) was a party to the suit. *Id.* But the relationship between the State Election Board and its individual members is a far cry from the relationship between the State Election Board Members, the Secretary of State, and individual county employees. Perhaps if the Coffee County Board of Elections was the defendant in this suit, it would be an appropriate comparison, but that is not the case. Even assuming, however, that an agency relationship could be created between the State Defendants and the nonparty witnesses (it cannot), Plaintiffs ignore the fundamental principle of agency that the statement must "be made **during the period of the agency**[.]" *Id.* at 1341 (quoting *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 (7th Cir. 2003)) (emphasis added). Here, however, none of these nonparty witnesses were employed by Coffee County or held any County position at the time the invocation was made. *Compare Fair Fight*, 599 F. Supp. 3d. at 1342 (finding that "Mr. Harp's deposition occurred during the period of agency").

Third, Plaintiffs argue the proper inquiry as to the nonparty's interests in the litigation is "not whether the party and non-party are theoretically aligned on a potential *outcome* of the litigation." Resp. at 10 (citing *LiButti*, 107 F.3d at 123). Plaintiffs are misleading the Court. Indeed, the portion of *LiButti* cited (but, tellingly, not quoted) reads:

> 3. *The Compatibility of the Interests of the Party and Non–Party Witness in the* ***Outcome*** *of the Litigation:* The trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party **in the outcome of the litigation**.

*LiButti*, 107 F.3d at 123 (italics in original, bold supplied). Plaintiffs do not even dispute the alignment of interests in the outcome of the litigation: both are plainly aligned in ensuring that the Dominion BMD System is ruled unconstitutional. Whether to protect against Hugo Chavez's weighted algorithm or Dr. Halderman's theory that the system is akin to the fatal consequences of Boeing's 737 MAX, [Doc. 935 at 71:11-22], both want the Dominion BMD System gone.

Finally, these nonparties—who have no substantive knowledge of the elections system—are not key figures in the litigation. Unlike the nonparties in *Coquina*, the actions of these individuals in Coffee County did not "form[ ] the bulk of [Plaintiffs'] complaint[s]." *Coquina*, 760 F.3d at 1311. Rather, they occupied the role of convenient sideshow after ten months of "abbreviated" discovery revealed nothing to support their floundering case. Underscoring this reality is Plaintiffs' withholding of the recorded phone call that kickstarted the Coffee County endeavor for an **entire year**. If, in fact, these nonparties were so key to the case, then surely they would have come forward to press this issue sooner.

## II. Plaintiffs have not and cannot show a special need or compelling reason to require testimony of the Secretary of State.

Plaintiffs' reliance on Judge Jones' ruling in *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689 (N.D. Ga 2019), reflects a misunderstanding of the issues in that case. As noted in the 2019 order Plaintiffs rely on, "Plaintiffs seek to depose Governor Kemp about two statements: one he made at a Gwinnett event in July of 2014 while he was running for Secretary of State, and one he made at a campaign event in Atlanta in October of 2018 while he was running for Governor." *Fair Fight Action, Inc.*, 333 F.R.D. at 695-96. The plaintiffs argued that those statements were material as they related to their 15th Amendment and Equal Protection claims. *Id.* at 696. That case involved claims of racial discrimination in violation of the 15th Amendment and the Equal Protection Clause of the 14th Amendment, both of which require proof of intent to discriminate. *Fair Fight Action, Inc. v. Raffensperger*, 634 F.Supp.3d 1128, 1236 (N.D. Ga. 2022). Unlike the court's reasoning in *Fair Fight*, there are no issues in the case that require special knowledge of intent that could only be elicited from Secretary Raffensperger.

Plaintiffs' claim that Secretary Raffensperger has unique knowledge of various categories of information requiring his testimony, but they fail to state why Secretary Raffensperger's knowledge is unique to him and relevant to determining the claims in their action. The categories of information identified

by Plaintiffs include: "(i) an alleged 2021 investigation into the Coffee County breach; (ii) his own statements about this litigation and the issues involved in it; and (iii) his own decisions about what, if anything, the State is doing to maintain and secure its voting system." [Doc. 1733 at 21-22]. Knowledge about the State Election Board investigation in 2021 into Coffee County is hardly specialized to Secretary Raffensperger, and his statements about this litigation are not relevant to the claims at issue, unlike in *Fair Fight*. Moreover, Plaintiffs have not identified any potential testimony relevant to the claims in this litigation that only Secretary Raffensperger could have knowledge of. Finally, testimony about what the State is doing to maintain and secure its voting system will be addressed by several other witnesses, and does not require Secretary Raffensperger's unique knowledge. Without something more, Plaintiffs intention to call Secretary Raffensperger appears to be for no other reason than harassment.

## III. After this Court already refused Curling Plaintiffs' state law claim, Plaintiffs should be precluded from relitigating what the Georgia Court of Appeals has already decided.

Plaintiffs' refusal throughout this case to clearly enumerate their claims is the root cause of this issue. Curling Plaintiffs abandoned their state-law claim seeking a declaratory judgment. [Doc. 651 at 28–29]. And Plaintiffs now concede that they have not brought claims "arising under state law." [Doc. 1733

at 19]. However, at the parties meet-and-confer regarding motions in limine, Coalition Plaintiffs' counsel stated that they are challenging whether the Dominion BMD voting system complies with Georgia law and intend to litigate the Georgia General Assembly's decision to require the use of ballot marking devices when it enacted H.B. 316 in 2019. Evidence related to those issues is not relevant to the claims in this case. *See* [Doc. 1705 at 1-2] ("Instead, this case focuses on whether Georgia's statewide electronic voting system, as currently designed and implemented, suffers from major cybersecurity deficiencies that unconstitutionally burden Plaintiffs' First and Fourteenth Amendment rights and capacity to cast effective votes that are accurately counted.").

Evidence is relevant under F.R.E. 401 if the evidence has any tendency to make a fact more or less probable than it would be without the evidence, F.R.E. 401(a), provided the fact is of consequence in determining the action, F.R.E. 401(b). As the Advisory Committee Notes state, "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relationship between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401, Advisory Committee's Note. Plaintiffs brought their claims under 42 U.S.C. § 1983, claiming that "Georgia's current BMD voting system imposes a severe constitutional burden on their right to have their votes accurately counted as cast." [Doc. 1705 at 120]. Evidence related to the General

Assembly's decision to pass H.B. 316 and whether the Dominion BMDs comply with state law does not establish a fact of consequence—whether the current BMD system imposes a burden on Plaintiffs' right to vote.

While a state law may, of course, be relevant to a determination of a claim arising under the federal constitution as a general matter, the evidence must still be relevant under F.R.E. 401. Even if the Court finds that it is relevant under F.R.E. 401, evidence related to whether the Dominion BMD system complies with Georgia law and the General Assembly's decision to pass H.B. 316 will create unnecessary confusion of the issues and should be excluded under F.R.E. 403. Plaintiffs' rely on *Moore v. Harper*, 600 U.S. 1 (2023), for the proposition that "state law is relevant to the determination of claims arising under the federal constitution." [Doc. 1733 at FN 7]. But that case was before the United States Supreme Court on writ of certiorari from the North Carolina Supreme Court's decision on a reapportionment challenge. *Harper*, 600 U.S. at 8-11. It did not attempt to convert an alleged violation of State law into a constitutional claim, as Plaintiffs seek to do here. *See id.* at 36-37 ("In interpreting state law in this area, state courts may not so exceed the bounds of ordinary judicial review as to unconstitutionally intrude upon the role specifically reserved to state legislatures by Article I, Section 4, of the Federal Constitution."). Plaintiffs also point to federal court diversity

jurisdiction, [Doc. 1733 at FN 8], but that is similarly not applicable to this case—before the Court because the claims arise under the Constitution.

## IV. Introducing thousands of pages of deposition testimony while calling the same witnesses to testify live is a waste of time.

Plaintiffs argue that Defendants seek to "rewrite the Federal Rules" by virtue of their position that if a 30(b)(6) witness's deposition testimony is introduced at trial, then they oppose Plaintiffs calling such individual in their case. Not so. This "Court retains its discretion to exclude or limit the use of such testimony for other reasons." *Walker v. Blitz*, 2009 WL 10669635 at *3 n.5 (N.D. Ga. Feb. 24, 2009). Those reasons here being both the Court's authority to control the order and mode of examining witnesses, FRE 611, and, perhaps most acutely, to avoid cumulative and repetitive testimony which does nothing but waste time. *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 (10th Cir. 1999) (holding that, regardless of Rule 32, trial court retains discretion to limit use of a deposition to avoid repetition); *Jackson v. Chevron Chem. Co.*, 679 F.2d 463, 266 (5th Cir. 1982) (finding no prejudicial error in refusal to admit a deposition where the "deposition contain[ed] no information that [the witness's] live testimony could not supply").

Regardless, Defendants are not seeking to preclude the offering of 30(b)(6) testimony at all (setting aside that Plaintiffs refused to follow this Court's instruction, Nov. 15, 2023 Conf. tr. 25:20-21). Rather, Defendants

simply suggest that under these circumstances, it makes little sense to require a day of live testimony in addition to the volume of deposition designations being offered. Indeed, Plaintiffs have stated they **will call** some twenty-one witnesses in their case. [Doc. 1728 at 39 (Ec. C-1)]. How they intend to do so within their anticipated five-to-eight trial days, *id.* at 31 (¶ 27)], remains unknown. This Court can and should limit this trial so that at least this case's conclusion can be efficient.

## CONCLUSION

For the reasons stated herein, this Court should: (1) refrain from drawing any adverse inference in this matter in response to invocation of the Fifth Amendment privilege; (2) exclude evidence concerning the enactment of HB 316 and argument concerning the compliance of the Dominion BMD System with State law; (3) preclude Plaintiffs from calling the Secretary of State as a witness at trial; and (4) limit the trial testimony of individuals whom Plaintiffs insist must also testify by deposition.

Respectfully submitted, this 14th day of December, 2023.

*/s/ Carey A. Miller*


Vincent R. Russo 242628
Josh Belinfante 047399
Carey A. Miller 976240
Alexander Denton 660632
Edward A. Bedard 926148
Javier Pico Prats 664717
Anna Edmondson 289667

ROBBINS ALLOY BELINFANTE
LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com
jbelinfante@robbinsfirm.com
cmiller@robbinsfirm.com
adenton@robbinsfirm.
ebedard@robbinsfirm.com
jpicoprats@robbinsfirm.com
aedmondson@robbinsfirm.com

Bryan P. Tyson 515411
Diane F. LaRoss 430830
Bryan F. Jacoutot 668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
T: 678-336-7249
E: btyson@taylorenglish.com
dlaross@taylorenglish.com
bjacoutot@taylorenglish.com

*Counsel for State Defendants*

**LOCAL RULE 7.1(D) CERTIFICATION**

I certify that this DEFENDANTS' REPLY IN SUPPORT OF THEIR OMNIBUS MOTION IN LIMINE has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Carey A. Miller*
Carey A. Miller