Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants.* | CIVIL ACTION <br><br> FILE NO. 1:17-CV-2989-AT |

**DEFENDANTS' OMNIBUS**
**MOTION IN LIMINE AND BRIEF IN SUPPORT**

Defendants submit this omnibus motion *in limine* for the Court's consideration prior to trial of this case. Defendants are cognizant that this case will be tried to the Court, not a jury, but believe these objections can and should be resolved prior to trial to promote efficiency and establish a clear record. *Salomon Construction & Roofing Corp. v. James McHugh Construction Corp.*, No. 1:18-cv-21733-UU, 2019 WL 5256980 (S.D. Fla. 2019); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1324 (11th Cir. 2010) (affirming order on motion *in limine* prior to bench trial). Even if the Court determines to defer certain of these matters until trial, Defendants believe written presentation of these objections will aid the Court in considering the issues when they arise. Defendants seek a ruling on the following matters:

I. **Plaintiffs' proffered deposition testimony of non-parties invoking the Fifth Amendment privilege should be excluded.**

Plaintiffs have designated the deposition testimony of various individuals who testified by deposition in discovery this Court authorized regarding Coffee County. The deposition transcripts of at least Eric Chaney, Misty Hampton, Cathy Latham, and Jill Riddlehoover are replete with invocations of the Fifth Amendment Privilege by these non-party witnesses, and Plaintiffs apparently seek to draw an adverse inference from such invocations as they did at summary judgment. *See, e.g.*, May 2, 2023, Oral Arg. Tr. 157:01–19 (examples of counsel from which seeking to draw inferences), [Doc. 1636 at 18, n.13 (Curling Plaintiffs' Resp. in Opp. to Defs' MSJ)]. This Court should exclude such evidence and decline to draw any such inference.

In *Coquina Invs. v. TD Bank, N.A.*, the Eleventh Circuit held "that the admissibility of a nonparty's invocation of the Fifth Amendment privilege and the concomitant drawing of adverse inferences should be considered by courts on a case-by-case basis," while elucidating four non-exclusive factors to guide the inquiry. 760 F.3d 1300, 1311 (2014). Those factors are: (1) the nature of the relevant relationships; (2) the degree of control of the party over the nonparty witness; (3) the compatibility of the interests of the party and the non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *Id.* (citing *LiButti v. United States*, 107 F.3d 110, 123

2

(2d Cir. 1997)). These non-exclusive factors, however, "should be applied flexibly and [ ] the overarching concern is whether the adverse inference is **trustworthy under all of the circumstances**." *Id.* (emphasis added). Application of these factors here conclusively shows that drawing any such inference is inappropriate, and the complete absence of evidence supporting the trustworthiness or corroborating the inferences sought only underscores this conclusion.

The nature of relationships between these nonparties and the Defendants is, when viewed most charitably, attenuated. Indeed, Mr. Chaney was a single member of the Coffee County Board of Elections, appointed by a *County* Commissioner to a *county* office. Likewise, Mses. Hampton and Riddlehoover occupied *county* employment positions and were hired by the *county* board of elections. For Ms. Latham, there simply is no alleged relationship between her and the Defendants—she was not employed by the County Elections Board, she was not employed by the State, and held no relevant governmental position—rather, she apparently became involved in the caper only by way of her political activity and the location of her prior residence. This stands in stark contrast to cases where an inference has been permitted based in part on present or prior relationships between the nonparty and the party. *See Coquina*, 760 F.3d at 1311 (former employee); *LiButti v. U.S.*, 107 F.3d 110, 124 (2nd Cir. 1997) (father/daughter and business

3

partners). Notably too, none of these witnesses have indicated any degree "loyalty" or the existence of a close "bond" with the Defendants. *LiButti*, 107 F.3d at 123. Quite the opposite, both Mr. Chaney and Ms. Hampton expressed their willingness to help go "after the SOS" in "any way [they could]," [Doc. 1634-18, at 16], and Ms. Hampton even invoked the Fifth Amendment when asked whether she was "supportive of efforts to go after the Secretary of State." [Doc. 1610, Hampton Dep. Tr. 39:17–10]. Indeed, discovery has revealed it is *Plaintiff* CGG whose representatives had repeated communications with Mr. Voyles and Ms. Latham regarding their shared concerns about the Dominion BMD System—before, during, and after the alleged Coffee County caper.

Likewise, the degree of control over these nonparties does not come near "approaching admissibility under Fed. R. Evid. 801(d)(2)," such that it is akin to a vicarious admission by Defendants. *Libutti*, 107 F.3d at 123. Independent county elections boards (much less individual board members and the board's employees) are simply not controlled by the State Defendants—they are independently established, O.C.G.A. § 21-2-40, their members are independently appointed by county officials, *see, e.g.*, Ga. L. 2005, p. 3839 (establishing Coffee County Board of Elections and Registration and providing for appointment by county commissioners), and they are subject to their own independent duties, *see, e.g.*, *Georgia Shift v. Gwinnett County*, No. 1:19-cv-01135-AT, 2020 WL 864938 at *5 (N.D. Ga. Feb. 12, 2020) (discussing various

4

duties of county election boards). Even as to enforcement authority of the State Election Board, the SEB "must eventually resort to judicial process if the counties fail to perform their election duties." *Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-cv-5391-SCJ, 2021 WL 9553855 at *11, n. 16 (N.D. Ga. Feb. 16, 2021).

Moreover, there is also a complete lack of alignment of interests in the outcome of this litigation between the Defendants and the nonparty witnesses. Quite the opposite. If any alignment of interests with respect to the outcome of the litigation is present between these non-party witnesses and the parties to this case, it is an alignment with Plaintiffs' interests in prohibiting use of the Dominion BMD System. The same is true when considering "[w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects." *LiButti*, 107 F.3d at 123–124. The nonparties here have had no presence or mention in this litigation until disclosure of Ms. Marks's telephone call with Scott Hall—a disclosure made nearly a year after the fact—and certainly have not exercised any controlling role with respect to the Defendants or Plaintiffs.

*Fourth*, there is no indication of trustworthiness from other sources to support an adverse inference for the questions from which Plaintiffs seek to benefit. For example, Plaintiff's counsel suggested at oral argument on Defendants' motions for summary judgment that "the inference is powerful"

5

with respect to inquires like "[d]id they upload any malware?" or "[a]re you aware of anyone ever having compromised the EMS server in Coffee County?" May 2, 2023 Oral Arg. Tr. 157:01–19. While an inference regarding such questions may indeed be "powerful" for Plaintiffs' case, that is so only because of the complete lack of reliable, tangible evidence to that effect. Indeed, Plaintiffs seemingly seek this inference in a naked attempt to benefit from a factual finding that does not exist. Regardless, its "power" does nothing to establish the reliability of the requested inference.

Finally, even if the circumstances would support an inference of some sort, there is little probative value to the inferences and the prejudice to Defendants of being unable to cross examine these witnesses in the face of their invocations also counsels toward exclusion under Rules 401 and 403. That unauthorized access occurred in Coffee County—in disregard of SEB Rules and in contravention of State law—is not of consequence to determining whether the *State Defendants* proximately caused any injury to Plaintiffs. At most its probative value is limited to establishing either (a) that malware was installed on equipment (for which Plaintiffs have yet to come forth with evidence) or (b) that some third-party may seek to use that access in a future attempt to do so (also in contravention of State law). But even if it were probative, the unfair prejudice to the Defendants in admitting the testimony and drawing the

6

adverse inference in these circumstances drastically outweighs its probative value.

## II. The enactment of HB 316 and the Dominion BMD System's compliance with State law is irrelevant.

In the course of conferral regarding this motion, Defendants had initially identified what they thought was an uncontroversial issue brought to the forefront by certain of Plaintiffs' exhibit and deposition designations: an apparent intent to litigate the Georgia General Assembly's determination to require the use of ballot marking devices when it enacted H.B. 316 in 2019. That concern, however, was dwarfed by a matter brought to light by the Parties' conferral on potential motions *in limine*: Plaintiffs' intention to challenge the Dominion BMD System's compliance with State law, an intention which is the only logical explanation for their inclusion of the supplemental jurisdiction statute, 28 U.S.C. § 1367, in the proposed pretrial order the Parties are preparing. Both subjects of inquiry, however, are entirely irrelevant to Plaintiffs' claims. Moreover, notwithstanding Curling Plaintiffs' dismissal of the original declaratory judgment claim—a voluntary dismissal occasioned by Defendants' motion to dismiss their Third Amended Complaint—whether the Dominion BMD System is compliant with *state* law is a matter for the *state* courts of Georgia.

7

Under FRE 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" *and* such "fact is of consequence to determining the action." Defendants concede, of course, that HB 316 requires the use of BMDs for in-person voting and such fact is of consequence to the extent it simply establishes the existence of the in-person voting system which Plaintiffs allege burdens the right to vote. However, Plaintiffs have gone to great lengths to insist that their claims, as the Court put it, are not claims "challenging the legislature's passage of HB 316 itself as unconstitutional," but instead are claims "challenging the Secretary of State's implementation of a barcode-based BMD system." [Doc. 751 at 41, n.24]; *but see* [Doc. 1622 at 47 (disclaiming verifiability as their injury)]. Thus, to the extent Plaintiffs are intending to put on evidence at trial for the purpose of challenging the legislature's passage of HB 316, this Court should preclude the introduction of such extraneous matters.

The same is true with respect to Plaintiffs' resurrected argument that the Dominion BMD System does not comply with state law. As a starting point, whether the Dominion BMD System complies with the mandates of Georgia law is not a fact "of consequence in determining" the alleged burden on Plaintiffs' federal constitutional rights. FRE 401. It also bears noting, this Court has seen this issue before—when Curling Plaintiffs first asserted a state-law claim for declaratory judgment. [Docs. 627 (Count V)]; [645-1 at 28–33

8

(moving to dismiss)]; [651 at 28–29 (abandoning the claim)]. Regardless, any such legal claim is barred by the Eleventh Amendment and state sovereign immunity. [Doc. 645-1 at 28–33]. And even if it weren't, "[s]uch needless decisions of state law are to be avoided." *Grant v. Seminole Cnty., Fla.*, 817 F.2d 731, 732 (11th Cir. 1987) (collecting cases); *see also Ameritox, Ltd. v. Millenium Labs, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) (finding, after trial, district court abused its discretion in exercising supplemental jurisdiction over novel state law claim). Such is certainly the case where this novel issue has recently been decided by the Fulton County Superior Court, the Georgia Court of Appeals, and a petition for writ of certiorari from the Georgia Supreme Court is pending. *VoterGa, et al. v. State of Georgia*, No. 2021CV353604 (Fulton Cnty., Ga., Superior Court May 31, 2022) (granting motion to dismiss), *aff'd*, 368 Ga. App. 119 (2023), *petition for cert. filed*, S23C1132 (Ga. July 13, 2023).[1]

### III. This Court should preclude Plaintiffs from calling the Secretary of State as a witness at trial.

Plaintiffs' most recent "will call" list of witnesses at trial indicates their intention to call Secretary Raffensperger for trial testimony in this case. This Court should preclude such testimony.

---

[1] VOTERGa, the organization Plaintiff Ricardo Davis "co-founde[d]" with Mr. Favorito, [Doc. 1721-1], is the plaintiff in that litigation, and is represented there by his new counsel in *this* case.

9

This is not the first time Plaintiffs have raised this issue in the final hours before deadlines in this case, with Coalition Plaintiffs previously seeking Secretary Raffensperger's deposition via a notice served in the waning days of the "abbreviated" discovery this Court ordered. *See* [Doc. 1271-1]. At that time, the Court rejected the endeavor for lack of a special need to depose a high-ranking government official. Jan. 27, 2022 Conf. Tr. 44:16–45:04; *see also* [Doc. 1271 (citing *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993) (citing *United States v. Morgan*, 313 U.S. 409 (1941)); *In re USA*, 624 F.3d 1368 (11th Cir. 2010); *Fair Fight Action v. Raffensperger*, 333 F.R.D. 689 (N.D. Ga. 2019); *Davis ex rel. J.D.D. v. Carroll*, No. 8:16-cv-0998, 2017 WL 11151858 (M.D. Fla. Jul. 24, 2017))]. Plaintiffs still have not, and cannot, make such a showing, and the reasons for precluding deposition testimony are equally relevant, or even heightened, in the context of trial testimony. *Benson v. City of Lincoln*, No. 4:18-cv-3127, 2023 WL 5627091 at **5–7 (D. Neb. Aug. 31, 2023); *EEOC v. St. Joseph's/Candler Health Sys., Inc.*, No. CV420-112, 2022 WL 17978822 at *8 (S.D. Ga. Dec. 28, 2022); *Pinn, Inc. v. Apple, Inc.*, No. SA 19-cv-01805-DOC-JDE, 2021 WL 4775969 at **3 (C.D. Cal. Sep. 10, 2021). Even setting all this aside, such testimony would be needlessly cumulative and waste the Parties' and this Court's time and resources—particularly when viewed in the light of Plaintiffs' twenty other "will call" witnesses, including five current or former employees of the Secretary's Office. *See also, infra.*, Sec. V.B.

## IV. Testimony of Dr. Halderman relying upon undisclosed data and methods, or the proffering undisclosed exhibits must be excluded from trial.

The parties have previously filed a joint statement on this matter which is pending resolution by the Court. [Doc. 1716]. To avoid repetition, Defendants incorporate that statement herein. However, at Plaintiffs' insistence that a motion *in limine* on this matter must be filed, Defendants expound herein on the impropriety of permitting expert testimony when disclosure of all "facts or data considered by the witness in forming" his opinions along with all "exhibits that will be used to summarize or support" those opinions was not disclosed "at least 90 days prior to trial" or otherwise at the time ordered by the Court for such mandatory disclosures (here, July 1, 2021, [Doc. 1093]). FRCP 26(a)(2)(B)(ii–iii), 26(D). Specifically, Defendants request this Court exclude testimony on the "proof-of-concept attacks" and any exhibits of such attacks used to summarize or support his opinions.

Compliance with Rule 26 obligations concerning expert reports is, of course, mandatory and "not merely aspirational." *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–458 (2006). As a consequence, Federal Rule of Civil Procedure 37(c)(1) plainly states that the failure of a party to provide information as required by Rule 26(a) will result in precluding that party from "us[ing] that information … to supply evidence … at trial." To avoid this result,

11

or imposition of another appropriate sanction, a party must demonstrate their failure "was substantially justified or is harmless." *Id.* Curling Plaintiffs, as the non-disclosing party, bear the burden of making such a showing. *Charter Oak Fire Ins. Co. v. Patterson*, 46 F. Supp. 3d 1361, 1366 (N.D. Ga. 2014). Applying that test here requires exclusion.

Even assuming Plaintiffs could show substantial justification in not *initially* disclosing the data and information underlying Dr. Halderman's "proof-of-concept attacks," they certainly can not do so in the face of Defendants' specific requests, [Doc. 1716-1], to which they offered objections not recognized under the Rules of Procedure, [Docs. 1716-2, -3]. Moreover, Plaintiffs cannot show substantial justification where Defendants sought to establish a protocol as directed by the Court and Plaintiffs chose not to respond. Jan. 27, 2022 Conf. Tr. 31:01–32:05, 40:05–41:14; [Doc. 1716-4]. Plaintiffs even acknowledged the dispute remained a live issue several months later. [Docs. 1361 & 1362]. Despite all this, they chose not to comply with their obligations under Rule 26 and made matters worse by their intent to proffer undisclosed exhibits or demonstrations of the "proof-of-concept attacks" at trial. Nor is Plaintiffs' disclosure harmless. Indeed, Plaintiffs' entire case hinges on the testimony of Dr. Halderman's proof-of-concept attacks which form the basis of the alleged imminent threat of manipulation of ballots cast by Georgia voters.

12

Applying the five-factor test utilized by courts in this Circuit leads to the same result. *See Patrick v. Henry Cnty.*, 2016 WL 2961103 (N.D. Ga. May 23, 2016). *First*, Defendants will remain surprised as to the workings of Dr. Halderman's "attacks" in the absence of disclosure. *Second*, without examining the data underlying those attacks Defendants will be unable to cure that surprise via cross-examination or otherwise experimentation with the data and evaluation of the exhibit(s). *Third*, allowing this evidence will almost certainly disrupt the trial, permitting Dr. Halderman to display an inflammatory parlor trick which cannot be adequately examined in the absence of disclosure. *Fourth*, as discussed above Dr. Halderman's proof-of-concept attacks are the *only* evidence Plaintiffs can point-to in order to demonstrate the alleged imminent threat of vote-switching malware which undergirds their "verifiability" theory. *Fifth*, Plaintiffs still cannot explain why they refused to (1) comply with their disclosure obligations initially, (2) comply with this Court's directive after a dispute was raised, and (3) respond to Defendants' good-faith attempt to establish a protocol for disclosure.

## V. Matters which have been resolved by agreement or representation, in whole or in part.

Three matters which Defendants initially intended to present for this motion appear to have been resolved based on the representations of counsel. However, since the consolidated proposed pretrial order has not yet been filed,

13

much less that order entered, Defendants raise these issues to preserve their objections.

A. <u>Plaintiffs' designations of Defendants' 30(b)(6) depositions.</u>

Plaintiffs have designated voluminous deposition testimony of 30(b)(6) deponents for introduction at trial, to the extent that nearly the entirety of several deponents' deposition transcripts are identified. While FRCP 32(a)(3) may permit such use to the extent the testimony is offered in the capacity of a managing agent or representative, those designations are also subject to this Court's control over the mode and order of examining witnesses, FRE 611, and Rule 403's protection against needlessly cumulative evidence. *Walker v. Blitz USA, Inc.*, 2009 WL 10669635, at *3 n.5 (N.D. Ga. Feb. 24, 2009). Defendants understood the Court to instruct Plaintiffs to identify such managing agents, Nov. 15, 2023 Conf. Tr. 25:20–21, and Plaintiffs identified all 30(b)(6) deponents designated by the Secretary of State's Office. Defendants have therefore provided objections and counter-designations to that voluminous testimony.

Plaintiffs subsequently stated that they do not plan to offer deposition designations for testimony they will elicit live, but also reserved the right to do so. In the event Plaintiffs proceed with offering these voluminous deposition designations of SOS 30(b)(6) witnesses for their substance, Defendants request

14

the Court preclude Plaintiffs from also calling those witnesses live in their case. Such an order will streamline the presentation of evidence at trial and avoid cumulative testimony.

B. <u>Plaintiffs' designation of deposition testimony from their retained experts.</u>

Plaintiffs have designated deposition testimony of their own retained experts for admission at trial. While certain of these individuals may be beyond 100 miles from the courthouse or otherwise beyond the subpoena power of the Court, FRCP 32(a)(4)(B) & FRE 804(a)(5), these expert witnesses have been retained for the specific purpose of testimony in this case and—barring unforeseen, serious circumstances—their potential non-appearance would be a result of either the witness's absence being "procured by the party offering the deposition," *i.e.*, by not simply asking their retained experts to appear, FRCP 32(a)(4)(B), or otherwise would fail to show an attempt to secure attendance by "other reasonable means," FRE 804(a)(5). *See also Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 535–537 (2d Cir. 1972). Defendants understand from counsel's representation that Plaintiffs will offer any expert opinion testimony live at trial, which appears to resolve the issue.

C. <u>Evidence at trial is limited to that which is introduced at trial.</u>

State Defendants also object to the Court's consideration of and move to exclude any alleged evidence that is not introduced at trial. *See J-B Weld Co.,*

15

*LLC v. Gorilla Glue Co.*, 978 F.3d 778, 794 (11th Cir. 2020) ("the District Court's reliance on its factual findings at the preliminary injunction stage was improper at the summary judgment posture[.]"). State Defendants understand the Parties to be in agreement on this point. Sept. 1, 2023 Status Conf. Tr. 51:24–52:1, 52:12–17.

## CONCLUSION

For the reasons stated herein, this Court should: (1) refrain from drawing any adverse inference in this matter in response to invocation of the Fifth Amendment privilege; (2) exclude evidence concerning the enactment of HB 316 and argument concerning the compliance of the Dominion BMD System with State law; (3) preclude Plaintiffs from calling the Secretary of State as a witness at trial; and (4) exclude the opinions of Dr. Halderman relying upon still undisclosed data and information, and likewise exclude any undisclosed exhibits or demonstrations supporting those opinions. To the extent Defendants have misunderstood the Parties apparent agreements on matters addressed in Section V herein, Defendants reserve the right to seek the relief prayed for with respect to those matters.

Respectfully submitted, this 7th day of December, 2023.

/s/ *Carey A. Miller*
Vincent R. Russo   242628
Josh Belinfante   047399
Carey A. Miller   976240

Alexander Denton 660632
Edward A. Bedard 926148
Javier Pico Prats 664717
Anna Edmondson 289667
ROBBINS ALLOY BELINFANTE
   LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com
   jbelinfante@robbinsfirm.com
   cmiller@robbinsfirm.com
   adenton@robbinsfirm.
   ebedard@robbinsfirm.com
   jpicoprats@robbinsfirm.com
   aedmondson@robbinsfirm.com

Bryan P. Tyson 515411
Diane F. LaRoss 430830
Bryan F. Jacoutot 668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
T: 678-336-7249
E: btyson@taylorenglish.com
   dlaross@taylorenglish.com
   bjacoutot@taylorenglish.com

*Counsel for State Defendants*

17

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this DEFENDANTS' OMNIBUS MOTION IN LIMINE AND BRIEF IN SUPPORT has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Carey A. Miller*
Carey A. Miller