IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

      *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

      *Defendants.*

CIVIL ACTION
NO. 1:17-CV-2989-AT

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
EMERGENCY MOTION TO STAY ORDER AND SUBPOENA
PENDING APPEAL AND FOR EXPEDITED BRIEFING**

# TABLE OF CONTENTS

Introduction.................................................................................................1

Argument...................................................................................................2

    I.    The Secretary is likely to succeed on the merits of his Petition............3

        A.    The Court abused its discretion by compelling the Secretary to testify at trial. ............................................................................3

        B.    The writ is appropriate under the circumstances and there are no other adequate remedies available.................................. 11

    II.    Defendants will suffer irreparable injury absent a stay pending appeal. ...................................................................................... 11

    III.  The issuance of a stay will not substantially injure Plaintiffs. .......... 12

    IV.  The public interest favors a stay pending appeal.............................. 13

Conclusion ............................................................................................. 13

## INTRODUCTION

As the Court is aware, the Secretary filed a Petition for Writ of Mandamus with the Eleventh Circuit seeking an order requiring the Court to quash Plaintiffs' subpoena and this Court's December 23, 2023 compelling the Secretary to personally testify at trial. *See* ECF 1750 (containing Petition and exhibits). The Eleventh Circuit has issued an expedited briefing schedule on the Petition, with Plaintiffs' response due by 5:00 PM on December 29th and the Secretary's reply due by 5:00 PM on January 3rd. In light of that briefing schedule, Defendants expect the Eleventh Circuit to issue a decision on the Petition in advance of start of trial on January 9th, which would negate the need for a stay. But given the possibility that the Eleventh Circuit may be unable to issue a decision before the trial begins, Defendants reached out to Plaintiffs to see if they would consent to stay enforcement of their trial subpoena until the Eleventh Circuit rules on the Secretary's Petition (*i.e.*, agree not to call the Secretary until the Eleventh Circuit's ruling). Plaintiffs opposed that request. Defendants now respectfully request an emergency stay of the Court's Order compelling the Secretary to testify personally at trial and any enforcement of Plaintiffs' trial subpoena upon the Secretary until such time as the Eleventh Circuit issues its ruling.[1]

---

[1] Importantly, Defendants are ***not*** seeking a stay of the case or a continuance of the trial. Defendants seek only a stay of any order or subpoena

The relevant factors point in favor of a stay. As discussed below, the Secretary is likely to succeed in his Petition. In the event the Eleventh Circuit is unable to issue a decision before the start of trial, the Secretary would suffer irreparable injury if he were forced to choose between testifying and being held in contempt of the Court. And in the unlikely event that the Secretary does not succeed, Plaintiffs will suffer little prejudice. Plaintiffs' case is currently estimated to take at least two weeks. Even if the Eleventh Circuit is unable to issue a decision before the start of trial, Defendants expect it to come shortly thereafter. Thus, Plaintiffs will not lose the opportunity to call the Secretary should they prevail on the Secretary's Petition. Under these circumstances, a stay is warranted.

In addition, Defendants respectfully request expedited briefing. Given the fast-approaching trial date, the Local Rules' standard briefing schedule would carry far beyond the start of trial.

## ARGUMENT[2]

The decision to issue a stay pending appeal is committed to the Court's discretion. *Nken v. Holder*, 556 U.S. 418, 433 (2009). The Court considers four

---

compelling the Secretary to personally testify at trial until such time as the Eleventh Circuit rules on that specific issue.

[2] Given the Court's familiarity with the parties' recent briefing on this issue, Defendants have foregone a background section. The relevant facts leading up to this dispute, however, may be found in the Secretary's Petition.

factors when considering whether to grant a stay: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). "The first two factors 'are the most critical.'" *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1177 (11th Cir. 2020) (quoting *Nken*, 556 U.S. at 434). All four factors are satisfied here.

## I.    The Secretary is likely to succeed on the merits of his Petition.

The Court clearly erred in compelling the Secretary to personally appear at trial. Plaintiffs have not identified any unique knowledge the Secretary has which is essential to their case, providing testimony at trial would place a substantial burden on the Secretary, and allowing such precedent would create serious consequences for future election cases. Moreover, there are no other adequate remedies available, and as such, mandamus is appropriate under the circumstances.

### A. The Court abused its discretion by compelling the Secretary to testify at trial.

The Court's order compelling the Secretary to testify was inappropriate because Plaintiffs have not identified any essential information uniquely in the Secretary's possession that could not be addressed by the numerous other

employees from the Secretary's Office that Plaintiffs have identified as witnesses in this case.

As the Eleventh Circuit has previously held, requiring high-ranking government officials like the Secretary[3] to testify not only implicates substantial federalism concerns, but it also creates serious practical consequences by distracting and inhibiting those officials from fulfilling their official duties. *In re USA*, 624 F.3d at 1372; *see also United States v. Morgan*, 313 U.S. 409 (1951) ("it [is] not the function of the court to probe the mental processes of the Secretary"); *In re Univ. of Michigan*, 936 F.3d 460, 465 (6th Cir. 2019) ( "invoke[ing] federal power to haul a high-ranking state official into federal court" creates federalism concerns that justify mandamus). "High-ranking officials … are often drawn into lawsuits. They cannot perform their duties if they are not personally shielded from the burdens of litigation." *In re Paxton*, 60 F.4th at 258. Indeed, executive officials' "execution of the laws can be crippled if courts can unnecessarily burden [officials] with

---

[3] There is no serious dispute that the Secretary qualifies as a high-ranking government official who is protected under this standard. The Secretary is an independent Executive-branch official in the State of Georgia holding a statewide constitutional office that is elected to a four-year term. Ga. Const. art. V, § 3, ¶ I. The Secretary bears a wide variety of responsibilities, including overseeing Georgia's elections, the State's regulation of the securities industry and charitable organizations, the issuance of numerous professional licenses, and corporate registrations.

compelled [testimony]." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022).

"In order to protect officials from the constant distraction of testifying in lawsuits," the Eleventh Circuit has established that such officials can only be compelled to testify under "exceptional circumstances" where there is a "special need" for the official's testimony, a standard that is in accord with other circuits. *Id.* 1372–74; *see also, e.g.*, *In re Paxton*, 60 F.4th at 258; *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). To show a "special need," the party seeking the officials' testimony must demonstrate not only that the official has "first-hand knowledge related to the claim being litigated," but also that "other persons cannot provide the necessary information." *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007). Where relevant "testimony [is] available from alternate witnesses," no special need exists, and courts—including the Eleventh Circuit—have issued writs of mandamus protecting officials from the distraction of having to testify. *E.g.*, *In re United States*, 985 F.2d at 512; *In re Paxton*, 60 F.4th at 258. Moreover, it is not enough that the information be "relevant," it must also be "essential to the claims alleged by the plaintiffs." *Id.*, at 704 (issuing writ of mandamus where plaintiffs "have not demonstrated that the taking of [Secretary] DeVos's deposition is essential to their case.").

Using this same standard, the Fifth Circuit recently issued a writ of

mandamus under almost identical circumstances. Similar to Plaintiffs here, the plaintiffs in *In re Paxton* sought to depose the Attorney General of Texas because "his public statements—including official advisories, campaign statements, and tweets—allegedly contradicted his court filings" about various issues in the litigation. 60 F.4th at 254–55. The district court thought the Attorney General's testimony was necessary because "he 'possesses unique, first-hand knowledge' about his intentions to enforce the challenged laws." *Id.* at 255. Because the Attorney General had "'inserted himself into this dispute by repeatedly tweeting and giving interviews about [the challenged laws],' the [district] court concluded that 'Paxton alone is capable of explaining his thoughts and statements.'" *Id.*

The Fifth Circuit emphatically rejected this reasoning. Like the Secretary's statements in this case, "Paxton's personal 'thoughts and statements' [had] no bearing" on the essential elements of the case. *Id.* at 258. "It is entirely unexceptional for a public official to comment publicly about a matter of public concern. If doing so imparts unique knowledge, high-level officials will routinely have to testify." *Id.* And if there was "a need to clarify the office's enforcement policy, a representative [could] do so on the Attorney General's behalf." *Id.* Accordingly, the Fifth Circuit found that the district court "committed a 'clear abuse of discretion'" in not quashing the subpoena and issued a writ of mandamus to the district court. *Id.* at 259.

Here, like the trial court in *In re Paxton*, the Court plainly erred by failing to identify any "essential" facts that could not be obtained from the testimony of the ten other witnesses from the Secretary's office. Court focused on the Secretary's "numerous statements" about the case, Plaintiffs' experts, and the "steps the State has taken to ensure the security of the voting system." ECF 1749 at 4. These comments, coupled with the fact that the Secretary is the "final decision maker and head of the department," led the Court to find Plaintiffs' had a "special need" because the Secretary has "direct personal factual information pertaining to material issues." *Id.* But the the Court (and Plaintiffs) erred because it failed to explain why the *statements themselves* are "essential" to Plaintiffs' case. *In re U.S. Dep't of Educ.*, 25 F.4th at 704. "[W]hat the [Secretary] meant when he made the statements" simply has no bearing on the essential elements of this case—whether Georgia's use of the BMD System imposes an unconstitutional burden on Plaintiffs' right to vote. ECF 1749 at 5; *see also In re Paxton*, 60 F.4th at 258 ("Paxton's personal 'thoughts and statements' have no bearing on his office's legal authority to enforce Texas's abortion laws or any other law."). After all, "it [is] not the function of the court to probe the mental processes of the Secretary[.]" *Morgan*, 313 U.S. at 422. And to the extent the factual substance of the Secretary's statements about Georgia's voting system is at issue, Plaintiffs can obtain that from the ten other witnesses they've

identified throughout this case, which include the Secretary's Chief Operating Officer, Chief Information Officer, former Chief Information Security Officer, Director of the Center for Elections Systems, former Elections Director, former General Counsel, and Chief Investigator.

Indeed, if Plaintiffs had truly believed that the Secretary had some essential, unique knowledge, one would expect that they would have vigorously pursued that discovery during the many years of discovery in this case. Plaintiffs previously represented to the Court two years ago that if any "questions remain unanswered" at the end of discovery that it appears the Secretary should be capable of answering," they would "present those questions to the Court and seek leave to take Secretary Raffensperger's deposition as a last resort." ECF 1275 at 4. But Plaintiffs never raised the issue again with the court. *Id.*

Moreover, the mere fact that the Secretary is the "final decision maker and head of the department" and made public statements about an issue of intense public interest is true of *every* high-ranking official, including the President of the United States. ECF 1733 at 19–21. That alone does not demonstrate that the Secretary has "first-hand knowledge related to the claim being litigated," in which "other persons cannot provide the necessary information." *Bogan*, 489 F.3d at 423. If high-ranking government officials like the Secretary could be hauled into federal court to testify in a case

simply because they had ultimate responsibility over decisions made by their office or because they made public statements about subject matters squarely within their portfolio, they would "routinely have to testify" and become nothing more than publicly funded professional witnesses. *See In re Paxton*, 60 F.4th at 258; *see also In re United States*, 985 F.2d at 512. Or worse, they would avoid speaking on matters of public importance altogether. In either event, they would no longer be doing the job the public elected them to do.

The Court also erred when it trivialized the burden that testifying at trial imposes on the Secretary. At the pretrial conference, the Court held that this wouldn't be a significant distraction to the Secretary because "what could be more important than elections," Plaintiffs would only get 75 minutes[4] of opening direct examination, and his office is "essentially six minutes from this courthouse. Even by walking, it is about ten minutes." ECF 1750-1 at 123:10–11, 127:24–128:14.

But that ignores the fact that this trial is occurring in the middle of the legislative session[5] and during preparations for the 2024 election cycle. It also ignores the serious consequences and burden the "cumulative effect" this

---

[4] This does not count the time for any redirect examination, which the Court said it would determine after cross examination. ECF 1749 at 5.

[5] The regular legislative session for the Georgia General Assembly convenes on the second Monday of each January, or January 8, 2024. Ga. Const. art. III, § 4, ¶ I.

reasoning sets for current and future election-related cases in Georgia. *In re United States*, 985 F.2d at 512 n.2. The Secretary's office is regularly involved in election-related litigation as a routine function of the job—he is a named defendant in at least 20 active pieces of litigation in various courts, not counting the dozens of other cases that are now closed. The fact that the Court limited his testimony to 75 minutes of direct examination (not counting cross or redirect) is of no consequence. If the Secretary were required to testify in every elections-related case, even where limited, the "cumulative effect … would be considerable" and "his time would be monopolized by preparing and testifying" as he became a perpetual witness. *In re United States*, 985 F.2d at 512. That's not the job the people of Georgia elected him to do. For that very reason, the Eleventh Circuit has issued writs of mandamus in situations requiring far *less* onerous testimony than this Court seeks to require of the Secretary. *See id.* at 511–13 (issuing writ of mandamus to quash subpoena where official was only going to be required to sit for 30-minute deposition by telephone).

In short, the Court abused its discretion by compelling the Secretary to appear at trial under these circumstances, and its reasoning "undermine[s the exceptional circumstances test" in its entirety. *In re Paxton*, 60 4th at 258. Accordingly, the Secretary has demonstrated a clear and indisputable right to relief.

**B. The writ is appropriate under the circumstances and there are no other adequate remedies available.**

A writ of mandamus is also appropriate here because there are no other adequate remedies available. While "mandamus is an extraordinary remedy," the Eleventh Circuit has held that it is the appropriate remedy for a high-ranking official who has been inappropriately compelled to testify. *See In re USA*, 624 F.3d at 1372; *In re United States*, 985 F.2d at 512–13. Without the writ, the official "will be compelled either to submit to testifying or risk contempt charges for violating the court's order," implicating serious federalism concerns in the process. *In re Paxton*, 60 F.4th at 259. That Hobson's choice is no remedy at all and is incompatible with the respect which federal courts owe to a state's sovereign interests.

## II. Defendants will suffer irreparable injury absent a stay pending appeal.

The second "most critical" factor of irreparable injury absent a stay also weighs strongly in the Secretary's favor. Trial is set to begin in just over two weeks. Without a stay, the Secretary of State will be faced with two options: (1) spend precious time preparing for and testifying at trial in the weeks before the legislative session and while the Secretary of State's office is preparing for the 2024 presidential election, or (2) face the prospect of being held in contempt. Being forced to make that choice is itself the very type of injury the apex doctrine is intended to prevent, let alone the injury caused by

– 11 –

the options themselves. Ga. Const. Art. 5, § 3, ¶ I; *see also, e.g.*, *In re U.S.*, 985 F.2d 510, 511–12 (11th Cir. 1993) (the threat of contempt itself causes an injury, as does being forced to testify); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) ("execution of the laws can be crippled if courts can unnecessarily burden [officials] with compelled [testimony]."). Those injuries cannot be remedied later.

## III. The issuance of a stay will not substantially injure Plaintiffs.

By contrast, a stay will not substantially injure Plaintiffs. The Eleventh Circuit has set an expedited briefing schedule that indicates the Eleventh Circuit is well aware of the time-pressing nature of this issue and suggests it will likely issue a decision before trial begins or, at worst, shortly thereafter. In the unlikely event Plaintiffs prevail on the Secretary's Petition, Plainitffs will have plenty of time left in their case—currently estimated to take about two weeks—to call the Secretary to testify. In the meantime, Plaintiffs have deposed or otherwise identified as trial witnesses ten current and former employees of the Secretary's office, the vast majority of whom are senior staff. *See supra* at 5–6. Plaintiffs have also identified and deposed several former and current members of Georgia's State Election Board. *Supra* at 6. And after initially seeking the Secretary's deposition two years ago over the Secretary's objection, Plaintiffs never raised the issue again until just before trial. *Supra* at 6–7. There is simply no compelling reason for additional

testimony from the Secretary at all, let alone in the early stages of the case, and staying Court's order will not substantially injure their case.

## IV.    The public interest favors a stay pending appeal.

Lastly, the issuance of a stay is in the public interest because the State's "interest and harm merge with that of the public" when it is a party to the proceeding. *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Nken*, 556 U.S. at 435). Finally, the public interest lies in allowing the Secretary of State to do the job he was elected to do, not in spending his time testifying in lawsuits in which there are numerous individuals who can provide testimony for the Secretary of State's office.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant its motion and stay its December 20, 2023 order and Plaintiffs' trial subpoena compelling the Secretary to testify personally pending the Eleventh Circuit's consideration of the Secretary's Petition for Writ of Mandamus. Defendants also respectfully request an expedited briefing schedule to the extent Plaintiffs oppose this motion.

Respectfully submitted, this 22nd day of December, 2023.

*/s/ Vincent R. Russo*
Vincent R. Russo        242628
Josh Belinfante         047399
Carey A. Miller         976240

Alexander Denton    660632
Edward A. Bedard    926148
Javier Pico Prats    664717
Anna Edmondson    289667
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com
   jbelinfante@robbinsfirm.com
   cmiller@robbinsfirm.com
   adenton@robbinsfirm.
   ebedard@robbinsfirm.com
   jpicoprats@robbinsfirm.com
   aedmondson@robbinsfirm.com

Bryan P. Tyson    515411
Diane F. LaRoss    430830
Bryan F. Jacoutot    668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
T: 678-336-7249
E: btyson@taylorenglish.com
   dlaross@taylorenglish.com
   bjacoutot@taylorenglish.com

*Counsel for Defendants*

– 14 –

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this State Defendants' Emergency Motion for Stay Pending Appeal and for Expedited Briefing Schedule has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

/s/ *Vincent R. Russo*
Vincent R. Russo