EXHIBIT 9

# Exhibit 1

EXHIBIT 9

The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1 IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
2 ATLANTA DIVISION

3

4 DONNA CURLING, ET AL.,   :
             :
5    PLAINTIFFS,    :
vs.           : DOCKET NUMBER
6           : 1:17-CV-2989-AT
BRAD RAFFENSPERGER, ET AL., :
7           :
    DEFENDANTS.    :
8

9

10 **TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS**

11 **BEFORE THE HONORABLE AMY TOTENBERG**

12 **UNITED STATES DISTRICT SENIOR JUDGE**

13 **DECEMBER 15, 2023**

14 **10:55 A.M.**

15

16

17

18

19

20

21 *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

22 *TRANSCRIPT PRODUCED BY:*

23

*OFFICIAL COURT REPORTER:*  *SHANNON R. WELCH, RMR, CRR*
24           *2394 UNITED STATES COURTHOUSE*
           *75 TED TURNER DRIVE, SOUTHWEST*
25           *ATLANTA, GEORGIA  30303*
           *(404) 215-1383*

EXHIBIT 9

```
 1            A P P E A R A N C E S   O F   C O U N S E L

 2

    FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
 3  SCHOENBERG:

 4

        DAVID D. CROSS
 5      MARY KAISER
        RAMSEY W. FISHER
 6      MORRISON & FOERSTER, LLP

 7      HALSEY KNAPP
        ADAM SPARKS
 8      KREVOLIN & HORST

 9      CHRISTIAN ANDREU-VON EUW
        THE BUSINESS LITIGATION GROUP
10

11
    FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
12  WILLIAM DIGGES, III, AND MEGAN MISSETT:

13
        BRUCE P. BROWN
14      BRUCE P. BROWN LAW

15      ROBERT A. McGUIRE III
        ROBERT McGUIRE LAW FIRM
16

17
    FOR THE PLAINTIFFS LAURA DIGGES, WILLIAM DIGGES, III, MEGAN
18  MISSETT, AND RICARDO DAVIS:

19
        CARY ICHTER
20      ICHTER DAVIS

21

22

23

24

25
                                        (...CONT'D....)
```

EXHIBIT 9

```
 1     (...CONT'D....)
 2
 3     FOR THE STATE OF GEORGIA DEFENDANTS:
 4
 5         VINCENT RUSSO
           CAREY MILLER
           JAVIER PICO-PRATS
 6         EDWARD BEDARD
           ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC
 7
           BRYAN TYSON
 8         BRYAN JACOUTOT
           DIANE LAROSS
 9         TAYLOR ENGLISH DUMA
10
11     ALSO PRESENT (POTENTIALLY ON BEHALF OF RICARDO DAVIS):
12
13         DAVID E. OLES, SR.
           LAW OFFICE OF DAVID E. OLES
14
15     SPECIAL MASTER:
16
17         CARLOS GONZALEZ
18
19
20
21
22
23
24
25
```

EXHIBIT 9

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | **(Atlanta, Fulton County, Georgia; December 15, 2023.)** |
| 3 | THE COURT:  Good morning.  Have a seat. |
| 4 | Well, you think I'm a speed reader, don't you, for |
| 5 | the amount of things that have been filed in the last week? |
| 6 | All right.  We're here for a pretrial order in Donna |
| 7 | Curling, et al. v. Brad Raffensperger, et al., Civil Action |
| 8 | Number 1:17-CV-2989. |
| 9 | And why doesn't everyone announce their presence, |
| 10 | just simply for the record. |
| 11 | MR. CROSS:  Just the appearances? |
| 12 | THE COURT:  Yes. |
| 13 | MR. CROSS:  David Cross from Morrison Foerster on |
| 14 | behalf of Curling plaintiffs. |
| 15 | MS. KAISER:  Mary Kaiser from Morrison Foerster on |
| 16 | behalf of Curling plaintiffs. |
| 17 | MR. SPARKS:  Good morning, Judge.  Adam Sparks, |
| 18 | Krevolin Horst, for Curling plaintiffs. |
| 19 | MR. KNAPP:  Halsey Knapp, Krevolin Horst, for the |
| 20 | Curling plaintiffs. |
| 21 | MR. BROWN:  Bruce Brown for the Coalition for Good |
| 22 | Governance and for plaintiff Megan Missett and the two Digges |
| 23 | plaintiffs. |
| 24 | MR. ICHTER:  Cary Ichter here representing Ricardo |
| 25 | Davis, Plaintiff Missett, and the Digges. |

EXHIBIT 9

5

```
 1          MR. FISHER:  Ramsey Fisher, Morrison Foerster, for
 2    the Curling plaintiffs.
 3          MR. VON EUW:  Christian von Euw, Business Litigation
 4    Group, for the Curling plaintiffs.
 5          MR. OLES:  David Oles for plaintiff, Ricardo Davis.
 6          MR. McGUIRE:  Your Honor, this is Rob McGuire for
 7    Coalition for Good Governance on the TV.
 8          THE COURT:  Thank you very much.
 9          MR. TYSON:  Good morning, Your Honor.  Bryan Tyson
10    for the defendants.
11          MR. RUSSO:  Good morning, Your Honor.  Vincent Russo
12    for the defendants.
13          MR. MILLER:  Good morning, Your Honor.  Carey Miller
14    for the defendants as well.
15          MR. JACOUTOT:  Good morning, Your Honor.  Bryan
16    Jacoutot for the defendants.
17          MS. LaROSS:  Good morning, Your Honor.  Diane LaRoss
18    for the defendants.
19          MR. PICO-PRATS:  Morning, Your Honor.  Javier Pico
20    for the defendants.
21          MR. BEDARD:  And Ed Bedard for the defendants.
22          THE COURT:  Okay.
23          I know that Mr. Oles has made an appearance or at
24    least filed an appearance on behalf of Mr. Davis.
25          For purposes of this hearing, I will say I can't
```

EXHIBIT 9

```
1    imagine that Mr. Oles could have digested the huge volume of

2    the record for the purposes of this hearing.

3              But in any event, I would prefer to deal with the

4    issues surrounding his notice of appearance and contentions as

5    to -- on behalf of Mr. Davis as to why he should be able to

6    proceed.

7              Is Mr. Ricardo Davis present?

8              MR. OLES:  No, Judge, I don't believe he is present

9    in the courtroom.

10             THE COURT:  All right.

11             All right.  So it is sort of -- my agenda for now is

12   to discuss the pretrial order and issues raised about the

13   administration of the trial first.  Then there is the omnibus

14   motion in limine and Dr. Halderman's data and parties'

15   proposals regarding inspection of data.  Also in that context,

16   defendants listed individuals who should have access.  The

17   Fifth Amendment adverse inference issue.  Then defendants'

18   request to exclude any evidence relating to issue of the BMD

19   system's compliance with state law or seeking clarification

20   regarding exactly what the plaintiffs have in mind.

21   Defendants' request that the Court preclude plaintiff from

22   calling Secretary Raffensperger as a witness.  The issue of

23   admission of the 30(b)(6) deposition designations in addition

24   to live testimony.

25             So this is defendants' omnibus motion as a whole.
```

EXHIBIT 9

```
 1    But there are obviously motions within this that are filings of

 2    the plaintiffs that are directly germane.  Also then we have

 3    the motion to exclude the MITRE report from plaintiffs'

 4    counsel.  There is a motion outstanding for clarification on

 5    the Poll Pads -- what evidence will be introduced on the Poll

 6    Pads.

 7              Is there a motion to intervene?  What is the name of

 8    the individual, and is she here?  Just tell me the name -- the

 9    name of the individual.

10              Okay.  Well -- and, of course, Mr. Davis'

11    representation.  I'm going to deal with Mr. Davis'

12    representation before I deal with the motion to intervene.

13              I think that the -- let me just say to start off with

14    that, as usual in this case, the volume of paper is

15    overwhelming.  And the filings and the way this has ended up

16    is -- and the disputes that people on all sides have are

17    challenging.

18              And I'll do my best.  Whether we can resolve

19    everything today is a whole other question.

20              So it is Ms. Deborah J. Davis who did the motion to

21    intervene.  Is Ms. Davis present?

22              Okay.  Well, just as -- just as a -- to try to sort

23    of resolve anything that is easy right from the start, I don't

24    think that Ms. Davis has stated on the record adequate grounds

25    at this late point to intervene.  She is proceeding pro se.
```

```
1   And I don't think it would be --
2            Since she doesn't represent an interest that is not
3   already taken into account in this case and it is a very
4   belated motion to intervene and Ms. Davis is not represented by
5   counsel as well, I think that there is no sound reason either
6   under the rules, Federal Rules of Civil Procedure, or that are
7   presented in her motion that would warrant my granting her
8   motion to intervene.  And therefore I will deny it.
9            So maybe the good thing is to start with the pretrial
10  order -- proposed pretrial order and some of just the initial
11  items that are easy to get rolling.
12           The parties seem to agree that there is no need to
13  file an outline of the case.  It has been outlined to death.
14  And that is at ECF -- the pages of the PTO, which the PTO is at
15  1728.  And that is at 12 through 13.  And I agree it is not
16  necessary.
17           The next issue was whether witnesses should be called
18  only once.  That is at Pages 18 and 20 of Document 1728 of the
19  ECF.  The issue was the difference among -- regarding calling
20  witnesses.  And the plaintiffs' position was each witness
21  should be called only once and examined in full by both sides;
22  recall only for rebuttal or unforeseeable circumstances.  And
23  the defendants' position was each side should be able to call
24  witnesses for its own case in chief.
25           So I think that I agree with the defendants' position
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
 1   that each side should be able to call witnesses for its own
 2   case in chief.  But that does not preclude an opposing party
 3   from being called, for instance, the plaintiff calling somebody
 4   from the defendant -- who is a defendants' witness in their
 5   case and then the defendant presenting them again.
 6              MR. CROSS:  Your Honor, could I ask one clarifying
 7   question?
 8              THE COURT:  Yes.
 9              MR. CROSS:  I assume that means then that any
10   cross-examinations will be limited to the scope of direct?
11              THE COURT:  That is right.
12              MR. MILLER:  Your Honor, if I may, before we get too
13   far past it with respect to the outline issue, the defendants'
14   position on that is, you know, the standard pretrial order
15   calls for both an outline and a pretrial brief.
16              We don't belief both are necessary.  But we do
17   request the opportunity to file one or the other in short and
18   concise form prior to trial.  We can do that as consolidated,
19   but I wanted to make our position clear.
20              THE COURT:  You're welcome to file whatever you want.
21   I'm just saying it is not required.  You can do an outline.
22   You can do a proposed finding.  Just -- let's just not make it
23   repetitive.
24              MR. MILLER:  Yes.  We realize there is a lot of
25   paper.
```

EXHIBIT 9

1        THE COURT:  We have lived and breathed this case.  So

2 make it useful.  Because I fear that I will have even more

3 paper submitted in front of me in the days to come.  So make

4 sure it doesn't exceed 25 pages.  That's for sure.

5        MR. MILLER:  Absolutely.

6        THE COURT:  The next one was notice of witnesses to

7 be called.  Plaintiffs proposed offering -- that the offering

8 party should provide notice of witnesses to be called no later

9 than 6:00 P.M. two business days before calling, which I assume

10 is like, for instance, if you would get -- if trial began on

11 the 9th that you would know -- learn by the 7th.

12        Because of the days we're beginning, that is not --

13 let's say it is the 11th.  And you want them to be advised by

14 the 9th at -- before the witness is called; is that right?

15        MR. VON EUW:  Yes, Your Honor.

16        THE COURT:  And part of the reason you say this is

17 the defendants have a lot of may call witnesses and only four

18 will call witnesses.  And that is challenging.

19        MR. VON EUW:  That is correct.

20        COURT REPORTER:  Who is saying that?

21        MR. VON EUW:  Christian Andreu.  Sorry.

22        THE COURT:  Thank you.

23        The defendants' position is defendants are willing to

24 disclose witnesses in advance but don't include -- but I don't

25 think you identified your position as to the two days.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1          I mean, I know there is a whole -- another thing

2      about document --

3          MR. TYSON:  Your Honor, Bryan Tyson.  I think that

4      just for our sake, in the other trials we have done, we have

5      always been open about communicating which witnesses are coming

6      up the next day.  So since -- trying to do it two business days

7      in advance we felt like would be a little challenging.

8          I don't think we're necessarily opposed to that.  It

9      is just I think we've more run on a night before we all confer,

10     know what it is coming up the next day, and kind of go from

11     there.

12         THE COURT:  Well, it is the volume of may call

13     witnesses.  Maybe you could identify more clearly who you

14     actually are calling.  That might be one way of addressing

15     this, and the one day is not so -- quite so burdensome.

16         MR. TYSON:  And, Your Honor, I think that that will

17     narrow significantly as we see kind of how the case goes.

18     Obviously, we'll get to our case after the plaintiffs complete

19     theirs.  And I think we will narrow that significantly once we

20     see kind of how the plaintiffs' case is proceeding.  But we're

21     -- we can work towards doing that as well.

22         THE COURT:  Okay.  Well, if you're going to do a

23     one-day, then you really are going to have to -- not do

24     7:00 P.M.  You are going to actually have to make judgments by

25     6:00 P.M.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
 1              And I think a two-day is definitely a better idea.
 2    But I think we can consult about that when you get to the -- we
 3    get -- have the close of plaintiffs' case.  Because then we're
 4    really trying to get you at that point to identify clearly who
 5    are your will calls and may calls.
 6              Does that address some of your concerns?
 7              I realize it is not what you requested specifically.
 8    But -- I'm not sure who is responding.
 9              MR. VON EUW:  I think so, Your Honor.  Just to make
10    sure I understand, the State is being asked to provide more
11    will call witnesses and we'll visit the issue at the close of
12    our case and see where we are?
13              THE COURT:  Right.  I'm asking them to be prepared at
14    the close of your case to be able to address this.  Obviously
15    talk with you as well in advance so I don't have to be the
16    referee.  But -- and that the day ahead is 6:00 P.M. --
17    deadline is 6:00 P.M., not 7:00.  Because that is just --
18    you're going to have to get moving obviously.
19              What about -- I mean, of course, it means the
20    plaintiff also has to identify who is coming ahead.  And to the
21    extent you can identify somebody who is a will call -- I don't
22    know whether the same issue exists.  I didn't examine the list
23    in terms of how many will calls versus may calls you have.
24              MR. CROSS:  Your Honor, the challenge that we have
25    that you hit on the head is we have, I think, 21 will call
```

EXHIBIT 9

1   witnesses.  So we really tried to figure out who the will calls

2   are.  I think that list will probably get smaller.  But we

3   tried to give them notice now, this is what our case is going

4   to look like.  They have four.

5           My worry is, if we kind of punt this down the road,

6   we are going to have to spend the holidays preparing

7   cross-examination outlines and exhibits for -- I think they

8   have over 30 may call witnesses.

9           So I don't want to just punt this to trial because

10  then that is a lot of work for witnesses they are never going

11  to call.

12          So what we really need -- as Your Honor told them in

13  November, we should know by Monday, what does your actual case

14  look like?  Who are your will call witnesses?

15          It is hard to believe that their whole defense in

16  this case is Gabriel Sterling; Ben Adida, who has not offered

17  any testimony in this phase of the case since 2020; Juan

18  Gilbert; and the fourth might be Michael Barnes, if my memory

19  is right.

20          So we need more visibility because I don't want our

21  team doing that work unnecessarily.

22          THE COURT:  Well, surely you are beyond four.

23          MR. MILLER:  Well, Your Honor, to be clear, as

24  Mr. Tyson pointed out, we completely anticipate that by the

25  time -- frankly, a day or two prior to the end of plaintiffs'

EXHIBIT 9

1    case, we're not going to need to be still disclosing that

2    number of may call witnesses, depending on the scope of the

3    case that plaintiffs put up.

4           But, Your Honor, I recognize this is a large list.

5    But at the same time, I also want to point out they have got

6    20-some-odd will call witnesses.  They also have another 20 may

7    call witnesses on their end as well.

8           I mean, this is a two-way street.  We realize -- it

9    is not something we want to do either.  But, you know, it is

10   just where we are right now.

11          THE COURT:  Well, all I'm saying is I don't really

12   believe that you only have four will call witnesses.  It might

13   be you only have seven.  But I just don't believe it and

14   especially when I look at the people you are saying you are

15   calling.

16          MR. TYSON:  Your Honor, if I could just address that

17   point.  So I think the Fair Fight trial is a good explanation

18   of kind of how this happened.

19          As the plaintiffs' case developed -- for example, we

20   had an employee from the Secretary's office named Mr. Hallman,

21   who we fully anticipated calling in our case.  By the time the

22   examination of Mr. Hallman was complete in the plaintiffs'

23   case, we didn't feel the need to recall him.

24          So I think that is why we think in terms of who we

25   know we're going to have it is a small list because a lot of

1   the other witnesses are going to be covered in the plaintiffs'
2   case and there may be no other need to recall people based on
3   how they have been crossed.
4           So I think in Fair Fight we ended up calling only a
5   handful of witnesses.  It was five or six witnesses.  And that
6   was obviously a much broader, wide-ranging case.
7           So from our perspective, we have given everything we
8   know at this point.  And we believe a lot of this may narrow,
9   again, as the plaintiffs' case proceeds.
10          THE COURT:  All right.  Let me just say:  I would ask
11  you to look at your list again because it is not like it is a
12  mystery to you about who might be important.
13          If I find -- you know, if this ends up being -- not
14  working, you know, I'm going to say you've got to now do it.  I
15  mean, we'll see.
16          But it is not -- did you identify at the close of the
17  plaintiffs' case all your will call people, or did you only do
18  it bit by bit?
19          MR. TYSON:  We only did it bit by bit.  And that was
20  true for the plaintiffs too.  They just notified us the night
21  before of who they were calling the next day.
22          But I think once we get to the end of the plaintiffs'
23  case, we'll be able to say with a high degree of confidence who
24  our will calls are at that point.  Because like, for example,
25  we have all the plaintiffs on our may call list.  Depending on

EXHIBIT 9

1   how the cross-examination goes, it seems unlikely we may -- we

2   may need to recall them, but maybe not.  So there will be

3   things like that that should be very clear as the case moves

4   along.

5           MR. MILLER:  What Mr. Tyson just mentioned actually

6   reminded me of something that may be useful for the whole

7   two-day versus one-day witness deal.

8           In Fair Fight, what we had was it was like a menu of

9   potential witnesses for the next two or three days at trial.

10  And then the day before, we said, out of these four to five

11  people, we're calling this individual tomorrow.  We would

12  identify that by 6:00 P.M.  So that may be something that --

13          THE COURT:  All right.  If you have a menu, that

14  would be helpful.  That would put people --

15          MR. CROSS:  That is supposed to be the witness list.

16  I just -- I guess, again, Your Honor, my challenge is that we

17  do a lot of trials in very large complex cases.  It does not

18  work the way they are describing.  You don't decide your will

19  call witnesses at the close of the plaintiffs' case.

20          I do a ton of defense work.  I have never once gone

21  into trial not knowing who my witnesses are.  There may be some

22  folks at the margins.  But this is trial by ambush in a lot of

23  ways.

24          And one point I'll just make:  There are folks on

25  this witness list we have never heard of before.  We have asked

EXHIBIT 9

1  them, show us in discovery where these people have shown up.

2  They admit they don't, they never mentioned them, they never

3  identified them, they never disclosed them.  It's folks from

4  Dominion.  It is other folks.

5          The idea that we have got to prepare for a trial

6  where they could just have the flexibility to call any number

7  of some 40 people and not tell us until a day or two before

8  they are presenting their case -- I have never seen that in 20

9  years of practice.  It doesn't happen.

10          Your Honor is completely right.  They have an idea of

11  who their will call witnesses are.  They just don't want to

12  tell us.  And it is not workable.

13          It would be hard enough if this was a normal trial.

14  But we're going into the holidays.  And I'll tell Your Honor

15  our people have not slept in weeks.  We are working as hard as

16  we can get to get ready for this.

17          This Halderman thing we will get to.  There is an

18  approach here that is very clear.  It is not appropriate.

19  We've got to stop it today.  We have to.

20          THE COURT:  Well, do you want -- let me ask you this.

21  I mean, they could give you a will call list that is overbroad.

22          Is that what you are seeking?

23          I mean, it may be.  But I mean, they obviously know

24  people who they have no idea about whether -- but there are --

25  it could be, well, it is a 50 percent chance that this is a

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1  will call as opposed to about a ten percent chance.

2          Is that what you would prefer?

3          MR. CROSS:  I guess what I would say is we want a

4  genuine list.

5          I spend a lot of my time dealing with class action

6  lawyers.  Class action lawyers are not always the most

7  transparent people.  But I have never actually run into this.

8  But I --

9          THE COURT:  I don't want to get lost.

10          MR. CROSS:  I'm answering your question.  We just

11  need good faith -- like genuine good faith.  Who is your list?

12  Who is it you think that you are very likely to call?

13          Sure, if that ends up somebody is not on it, then we

14  work with that.  If it is on their may call witness list and

15  they tell us sufficiently in advance we're adding this person,

16  that is fine.  But at least it lets us prioritize.  Right?

17          We know they have got seven or eight or nine

18  witnesses that they think they are going to call.  Okay.  Then

19  we can focus on that for our prep.  And that generally has

20  worked over the course of our career and our trials.  That is

21  all we're asking.

22          THE COURT:  What is wrong with that proposal?

23          MR. TYSON:  Nothing is wrong with that proposal, Your

24  Honor, except the fact that from our perspective this is our

25  good faith.  This is who we know we're calling.

EXHIBIT 9

1          In looking at the other people on this list, I mean,

2     I can't see anybody on here who we're definitely going to call

3     who is on our may call list.

4          THE COURT:  He's not asking you actually now

5     apparently for definitely.  He's asking who if -- you know,

6     understanding that you may completely satisfy what you need to

7     do on cross-examination -- and as you know, because you saw me,

8     I attended parts of the trial.  So I saw that happening.  And I

9     saw your list evaporating for calling people affirmatively.

10          But that is a given.  You have named the four people

11    you are sure of, you say.  And I'll accept that representation.

12          But surely there are at least another six that if you

13    don't get -- aren't able to repair their testimony that you --

14    or address it and clarify it to your satisfaction that you will

15    indeed at that point, in fact, call them.

16          So this is not saying -- putting this in blood that

17    you will call them.  It is saying these are the likely people

18    because they have to prepare.  And it is a large case.

19          And I think that that is a reasonable -- if it is not

20    in blood, so to speak, it is not like it is -- it is to make

21    them more efficient and help make the whole process work

22    better.

23          MR. TYSON:  We can definitely do that, Your Honor.

24          THE COURT:  All right.  Thank you.

25          And do you have any time frame for that that you

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1　could do that in?

2　　　　MR. RUSSO:  Your Honor, I think one issue that Mr.

3　Cross just raised is that they are going to be taking people

4　off of their will call list.

5　　　　So like Mr. Tyson mentioned, we have people on our

6　may call list that are on their will call list, which is why we

7　have them on our may call.  If they are going to take those

8　people off -- for example, you know, the individual plaintiffs,

9　they probably won't be taken off their will call.  If they

10　were, then we would want to add them on.

11　　　　We can -- we can go back through our list of may

12　calls.  And, you know, to the extent it is a 50 percent may,

13　you know, we're happy to do that.  We can do that by next --

14　early next week, if that is fine.

15　　　　THE COURT:  Okay.

16　　　　MR. RUSSO:  I don't think it is going to take us much

17　time to make that assessment.

18　　　　THE COURT:  Can you do it by Tuesday?  Just thinking

19　about the holiday rollout, that would be great.

20　　　　MR. RUSSO:  That is fine.

21　　　　THE COURT:  And if there are people you are going to

22　take off your may calls or -- the will calls that you know, can

23　you provide that to them by Monday?

24　　　　MR. CROSS:  Yeah.  I didn't mean to suggest we have

25　identified anyone.  I was more suggesting as you get through

EXHIBIT 9

```
 1    trial sometimes somebody falls out.

 2           THE COURT:  If there is anyone that you know that

 3    really is a may call, not a will call, then let them know by

 4    Monday so they can adjust as well.

 5           MR. CROSS:  Yes, Your Honor.  Thank you.

 6           THE COURT:  All right.  Then sequestration of expert

 7    witnesses.  It is in the pretrial order at Pages 19 through 21.

 8    The plaintiffs' position is they want experts not to be

 9    sequestered.  The defendants request that witnesses who are not

10    parties be sequestered but -- and that you're willing to

11    discuss this in good faith.

12           I mean, generally speaking, I've always allowed

13    experts to sit in on the entire trial testimony.  So I would

14    have to have strong reason not to.  And I don't have it at this

15    juncture.

16           So, you know, if something evolves, you can bring

17    that to my attention.  But, otherwise, just assume that your

18    experts can listen to each other.

19           And the proposals on the disclosure of exhibits

20    between the parties -- I'm not sure why the full two days is

21    necessary.  Plaintiffs propose by 6:00 P.M. two business days

22    before offering the offering party shall disclose exhibits and

23    sponsoring witness; second, by 6:00 P.M. one day before, the

24    non-offering party must disclose all objections; third, at

25    7:30 P.M. the night before, parties meet and confer and discuss
```

```
1    all exhibits for the next day and resolve issues.  And the

2    parties waive these deadlines only by mutual written agreement.

3         The defendants propose alternatively only that by

4    6:00 P.M. one business day before offering the offering party

5    shall disclose exhibits it intends to offer and corresponding

6    witness and the parties shall meet and confer as necessary and

7    inform the Court of disputes prior to start of trial each day.

8         Well, since I sort of changed -- changed the time as

9    it was to disclosure about witnesses by one day at 6:00 P.M.,

10   unless you knew more -- and I thought that was a good idea.  If

11   you know more, then you should tell the menu that is not just

12   the exhibit list.  But -- and that would go for plaintiff as

13   well.

14        So I guess -- I know that you -- it would seem like

15   you know -- each side knows the objections to the exhibits ince

16   you have already done all that.  So I'm not sure it is

17   necessary.  But obviously to try to resolve them to talk at

18   least the night before, it seems important.

19        I think you could have a fallback of a 6:00 P.M. call

20   because you're talking about witnesses for the next day but --

21   each time.  But whether you really are going to want to talk or

22   productively talk at 6:00 P.M. because you're exhausted from

23   the day is another matter.

24        So I would say 6:00 P.M. is a fallback.  But you

25   should -- and maybe you will be in here talking about it, for
```

1  all I know.  But, otherwise, you can obviously agree to a

2  different date -- to a different time.

3          Yes, Counsel?

4          MR. VON EUW:  Your Honor, part of the reason we have

5  the two days is a similar issue to the witness list.  We have a

6  very long exhibit list to get through.  So if we could get some

7  sort of lookahead on that so we really know which objections we

8  need to talk about --

9          THE COURT:  I think -- I'm having some trouble

10 hearing you because --

11         MR. VON EUW:  Let me sit to the microphone then, Your

12 Honor.

13         Your Honor, our concern here and part of the reason

14 for the two-day request is the same as the witness list.  We

15 have received a very long exhibit list.  And it is hard to

16 really work through and confer on that large volume.  So we

17 would ask that we get some sort of narrowing of the exhibit

18 list ahead of time as with the witness list.

19         THE COURT:  Well, to the extent -- I'll just say this

20 to the plaintiffs.  To the extent that you're going to be --

21 you know that you're likely covering these -- you know,

22 Exhibits 400 to 500 on a particular day or with a particular

23 witness, I mean -- and I would say this for everyone --

24 identify it as soon as possible.

25         If you know what each other's objections are, you

EXHIBIT 9

```
 1    know, you could do this -- you could decide you're going to

 2    walk through it at the day -- at the end -- as tired as

 3    everyone is.  Take half an hour break and then be prepared to

 4    address it, rather than having to see each other again and talk

 5    with each other again.

 6              You've got to get dinner.  You've got to clean your

 7    mind out a little bit and then get ready.

 8              So I understand what you are saying.  I think that

 9    I'm just going to say everyone is duty-bound to try to make

10    this as efficient as possible.  And one day is sort of like the

11    bare minimum.  And I see it is as the bare minimum.

12              So, you know, I would try to, if I were you-all, to

13    devise a schedule -- even when you are meeting to say, all

14    right, now we could also tell you we're going to call this

15    person and this person two days from now and these are the

16    exhibits we see and what are your problems with them.

17              If you don't, you don't.  I mean, the trial goes

18    slower and is messier.  And there is no -- obviously in this

19    group of people, there is no end of disputes about everything.

20    So, you know, we've got to try to do it.

21              At this point, how long is plaintiffs thinking -- are

22    plaintiffs thinking their case will last?

23              MR. CROSS:  I think what we put in the pretrial order

24    was about six to eight trial days is what we're shooting for.

25              THE COURT:  For your side?
```

```
 1          MR. CROSS:  For our examinations.  That does not

 2  account for their crosses in that window.

 3          THE COURT:  And do you have any anticipation?

 4          MR. TYSON:  Your Honor, I think we estimated about

 5  three days for ours, and I think that would include a lot of

 6  the cross elements on that.  So --

 7          MR. CROSS:  Sorry.  I think we didn't understand

 8  that.  So the three days does not include the cross?

 9          MR. MILLER:  I mean, Judge, I guess in terms of

10  including the cross, I don't know that -- unless we're

11  anticipating it by length of hours -- our three-day proposal is

12  what it will take to put on our case in chief, not including

13  cross-examination during their case.

14          MR. TYSON:  That's right.  I'm sorry.  Yes.  I

15  apologize.

16          MR. CROSS:  We didn't know that.

17          So how long are we talking for trial?

18          THE COURT:  For total trial do you think?

19          MR. TYSON:  Y'all have 25 will calls; right?

20          MR. CROSS:  21.

21          MR. TYSON:  21.  Yeah.

22          MR. MILLER:  I mean, reasonably, Your Honor, I would

23  be surprised if we're getting through more than three

24  witnesses -- three or four witnesses a day, I guess, depending

25  on the complexity of that witness' testimony.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1          So, you know, that will put us at above eight days.

2     I mean, it is -- I'm saying three days inclusive of -- or three

3     witnesses per day inclusive of the cross-examination -- the

4     time we get through it.

5          You know, I think that probably puts -- with the 20

6     witnesses in the plaintiffs' case, I would anticipate that's

7     looking more like 12 trial days.

8          Our three-day proposal is anticipating their cross

9     time within it.

10          MR. CROSS:  Okay.  It sounds like maybe total we're

11     talking --

12          MR. MILLER:  15.

13          MR. CROSS:  I think -- we have a strong incentive to

14     get this case done in January because we know we lose you.  So

15     we will be maximum efficiency to work towards that.

16          THE COURT:  Yeah.

17          Well, let me ask you this while we're talking about

18     dates though.  You -- this -- it is -- you have such disputes

19     over the disclosures and the experts and access to data that it

20     is hard for me at the moment to really think -- I know this is

21     not what anyone wants to hear.  I'm just thinking you might be

22     in better shape if you started the following Monday rather than

23     on the Tuesday.

24          I don't know what anyone else's schedule is.  I think

25     we could --

```
 1              Harry, we could do that, couldn't we?  Do we have

 2   anything else in January?  I don't remember.

 3              COURTROOM DEPUTY CLERK:  What are we looking for?

 4              THE COURT:  What --

 5              MR. TYSON:  I would say, Your Honor, the following

 6   Monday is also MLK Day.

 7              THE COURT:  I understand we're losing days because of

 8   the holidays again.

 9              What is the rest of -- I don't have it in front of

10   me.  What is the rest of January looking like?

11              COURTROOM DEPUTY CLERK:  I've got the week of the

12   22nd blocked out just in case we go over.

13              COURT REPORTER:  They just said three weeks.

14              COURTROOM DEPUTY CLERK:  Then on the 30th and 31st,

15   we've got some criminal matters.  But that is it for the month.

16              THE COURT:  Are any of those sentencings, or are

17   they --

18              COURTROOM DEPUTY CLERK:  One sentencing and two

19   revocations.  And we have something on the afternoon of the 8th

20   before we start --

21              MR. CROSS:  Your Honor, we would really strongly

22   prefer to keep the 9th.  Because, one, things always tend to

23   take a little longer than we expect and we'll lose time.

24              The other challenge we have is Dr. Halderman, who is

25   obviously a critical witness -- he has another baby due in the
```

EXHIBIT 9

1  start of February.  There is some chance that that may happen

2  in January.  So we're already trying to work with that.

3        I mean, we'll get to it when we get to it.  Obviously

4  we think there should not be any further discovery, and we're

5  all ready to go to trial.

6        THE COURT:  I'll revisit this again at the end.

7        MR. MILLER:  Judge, we completely understand.

8  Truthfully, I also have a baby due January 2nd.  I will be

9  missing the first week of trial unfortunately if we stay on our

10  schedule.  And one of our other colleagues is not here today

11  because he is welcoming a new baby at the moment.

12        So we're happy to move around.  But there are a lot

13  of those up in the air.

14        THE COURT:  It is exciting though.  But I'm sure your

15  wife would prefer for you to be there not -- more than one

16  week --

17        MR. MILLER:  Very much so, Your Honor.

18        THE COURT:  -- and not to be distracted from

19  anything.

20        MR. RUSSO:  We can't have that.

21        THE COURT:  Okay.  All right.  Well, I'm just tucking

22  it in my brain even if it is a day or two because -- and we'll

23  get to that when we get to these other issues.

24        So the process for disclosure of designated

25  deposition testimony -- I mean, it is the same disagreement.  I

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1    guess the only thing -- my overall question is normally I have

2    received in connection with the pretrial -- proposed pretrial

3    order a document that says what is the deposition testimony

4    that is being designated and any objections to it.

5           But you're talking about doing that just at the sort

6    of -- whether it is one or two days beforehand or by -- I'm a

7    little bit surprised, I guess.

8           Maybe you need to explain to me what this is because

9    it is different than any other trial I have ever had.

10          MR. MILLER:  So, Your Honor, I'll let the plaintiffs

11   speak to this because when we conferred on this they clarified

12   the issue for us.  We had had the same prior experience.  Send

13   the designations.  That is what is going in.  You know,

14   oftentimes, try and move it at the beginning of the trial

15   rather than take up time reading the transcripts.

16          As we then understood from the plaintiffs, the

17   universe of designations -- I don't believe they are now

18   anticipating to introduce all of those and are going to select

19   from that to seek to admit portions of those.

20          So I think that is where the note on the two-day

21   disclosure deal came about.  Which if that's the way the

22   plaintiffs want to do it, I mean, that is fine by us but --

23          MR. VON EUW:  Your Honor, that is correct.  And I

24   think the only disagreement here isn't about the dates.  It is

25   the firmness of the dates, unless I misunderstood

EXHIBIT 9

1  plaintiffs' -- I mean, defendants' position.

2         THE COURT:  The only disagreement --

3         MR. VON EUW:  The firmness of the date.  We think

4  they should be firm, and defendants want a regime where they

5  can opt out of it essentially by giving us notice.  That is the

6  only disagreement here.

7         MR. MILLER:  Maybe I'm confusing the issues.  But I

8  think the -- at one point there was a -- it wasn't just in this

9  section but with respect to other sections about the only way

10  we can modify the timelines and the stipulations as to when

11  we're going to disclose these things is mutual written

12  agreement.

13         As the Court knows, things come up in trial that just

14  occur that we may not have in the two days prior.  Of course,

15  if it is in the pretrial order, we have got to show you good

16  cause in order to amend it, to begin with, or to get around it.

17         So I think that was the only issue, unless I am

18  misunderstanding what you are referring to here.

19         THE COURT:  You don't have to lean and make a

20  backache.  Just speak louder.  Then we'll hear you.

21         MR. VON EUW:  Your Honor, I think that is the only

22  issue.  We want either mutual written agreement or showing of

23  good cause.  The defendants' position is they give us notice

24  that they are not going to make it.  Notice with giving us a

25  reason.

EXHIBIT 9

1    MR. MILLER:  We would have to provide them notice,

2  give them the reason to see if they will agree to it.  If they

3  won't, then we will be coming to you, Your Honor, and saying,

4  this is what happened, we want to bring this piece in.

5    MR. VON EUW:  Sorry.  In that case, I think we

6  misunderstood.  If that is the procedure, we're okay with that.

7    THE COURT:  All right.  Well, then you seem to have

8  an agreement that might fall part, but that's all right.  We'll

9  deal with it.

10    Then there is whether parties should file trial

11  briefs.  It is sort of like the outline of the case versus

12  brief.

13    Is this the same thing?

14    MR. MILLER:  Yes, Your Honor.  We don't believe we

15  need both an outline and a brief.  We -- at the bottom, what

16  occurred is plaintiffs didn't want to do either.  We, of

17  course, didn't want to, like, outline our case to the Court at

18  the pretrial order before they started putting on their case.

19  We're just requesting permission to do one or the other.

20    THE COURT:  Well, you don't need an outline of the

21  case.  If you want to do something with evidentiary -- that

22  discusses relevant anticipated evidentiary questions and

23  related legal issues but not a rehashing of anything that I

24  have already decided, i.e., the summary judgment motion, then

25  you can do that, assuming it doesn't exceed 20 pages.

```
 1              It is not mandatory.  And it could be just a listing

 2    of the evidentiary issues anticipated and see X.  See these

 3    five cases that we think control.  So then we run into them.  I

 4    say to my law clerks, there are five cases, each of them, go

 5    look at them.  I'm not going to look at them all in advance.

 6    So we'll just have them here.

 7              But -- so it doesn't have to be a true brief.  It

 8    could be whatever you want.  It is not responsive to each

 9    other.

10              So this says seven days after the Court enters the

11    PTO.  Today is the 15th.  So then you're talking about the 22nd

12    or 23rd.

13              You really want that?

14              MR. RUSSO:  It may make sense to tie it back to the

15    trial when the trial date is actually set -- work backwards

16    from there.

17              THE COURT:  Why don't you just file it by

18    January 2nd?  Or -- isn't that the first day of work?  I mean,

19    let's not drive everyone crazy.

20              MR. MILLER:  I'll be a little busy on the 2nd.  But

21    my colleagues --

22              THE COURT:  Busy on the 2nd.  Somebody else will

23    be -- will be busy.

24              MR. MILLER:  But if I am on my computer, I will be in

25    trouble.
```

EXHIBIT 9

```
 1            THE COURT:  Well, just put a sign around you to say,
 2   I'm busy.  Walk around with your colleagues for the next number
 3   of weeks and they will maybe absorb that.
 4            Okay.  I think those were the general issues
 5   regarding the pretrial order.
 6            There are a lot of objections to exhibits and
 7   deposition testimony.  Are you expecting -- and attachments to
 8   the PTO.
 9            Are you wanting me to be resolving those, or are you
10   just preserving those so you understand -- so that I understand
11   what is going to be happening?
12            Are there any that need to be addressed, in other
13   words, before trial?
14            MR. MILLER:  With respect to the deposition
15   designations, Your Honor?  Objections?
16            I don't believe so except to the extent that they are
17   included in our motion in limine.  Some of those -- for
18   example, the Fifth Amendment invocation, part of the motion in
19   limine.
20            THE COURT:  All right.  What about exhibits?
21            MR. TYSON:  Exhibits for us is just preserving the
22   issue for when we get to trial to address that.
23            THE COURT:  Okay.  Anything from plaintiffs?
24            MR. CROSS:  Same.
25            MR. BROWN:  Your Honor, if I may just make one
```

EXHIBIT 9

```
 1   technical correction to our proposed pretrial order before it

 2   is entered.  Mr. McGuire should be listed as co-lead counsel

 3   for the Coalition for Good Governance.

 4              THE COURT:  Okay.  Harry, can you take care of that?

 5              COURTROOM DEPUTY CLERK:  Yes, ma'am.

 6              MR. CROSS:  Your Honor, one quick question before we

 7   leave that because I'm not sure also what you had in mind.  The

 8   exhibits -- certainly objections are preserved.

 9              We do have this issue -- and I'm not sure exactly

10   when Your Honor wants to address it, if Your Honor wants to

11   address it -- is, again, there are witnesses on their witness

12   list we have never heard of.  So I didn't want -- I didn't know

13   how you want to address that.

14              THE COURT:  All right.  Are these witnesses who have

15   been identified in prior discovery or mandatory disclosures or

16   amendments to the -- to the mandatory disclosures?

17              MR. TYSON:  Your Honor, I believe the only -- I may

18   be wrong about this.  And I'm sure I'll be corrected if I am.

19              But I believe it is just the Dominion representative

20   who has not been listed previously in that kind of situation.

21              I will let Mr. Russo address this.

22              MR. RUSSO:  Your Honor, the Dominion representative

23   has not been previously listed.  Dr. Coomer was previously

24   listed, as you may recall.  And then I don't believe he is with

25   Dominion any more.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1    The individual who is listed is the chief engineer,

2    Nick Ikonomakis.  So he would be testifying kind of in that

3    same capacity that Dr. Coomer did previously.

4    The others I think -- there is one individual who --

5    and I'm losing his name on my list here.  Nick Whitney is -- so

6    he is -- he works for the vendor for the State over the state

7    voter registration system.

8    And so, you know, we weren't sure kind of where the

9    issues were going to fall on the voter registration system.

10   The State does have a new voter registration system in place.

11   That is the GARViS system.  So that is why he is a may call.

12   It may be that our client's staff who are on our list

13   are able to testify about the implementation of all of the

14   GARViS system.  But to the extent there are technical questions

15   about it, that is why he is on our list.

16   I think the others that they have raised are

17   individuals who work in the Secretary of State's office.  Due

18   to turnover -- for example, one is Richard Lysinger, who is in

19   the IT group in the Secretary of State's office.

20   THE COURT:  Who did he replace?

21   MR. RUSSO:  Well, Merritt Beaver is, I think, as of

22   January 1st no longer with the State.  We are still planning to

23   have him testify.  He is on the plaintiffs' will call list.  I

24   think he lives in Texas.  So we're still kind of working out

25   some issues around that.

EXHIBIT 9

1        But to the extent there are still IT-related issues,

2   Richard Lysinger may be the relevant person to testify.  He is

3   on our list for that reason.

4        I think that -- I think that is it.  I'm just running

5   through our list real quick.

6        Yes, Your Honor.  I think that is -- I think that is

7   it.

8        THE COURT:  Were there other people that you didn't

9   know who they were, Counsel?

10       MR. CROSS:  There are -- those are the ones that we

11  never heard of before.  The additional ones at issue are Nancy

12  Boren, B-O-R-E-N, and James Elliott.

13       They submitted declarations regarding the DREs.  The

14  State has emphatically argued DREs are not relevant.  There has

15  never been any indication that they would offer testimony at

16  this phase.  I don't know what that would be.

17       THE COURT:  Let's just stop with those right now.

18       James Elliott and Nancy Boren.

19       MR. RUSSO:  Yeah.  I think both of them have either

20  been deposed or have testified in this case.  Nancy Boren is a

21  county election manager in Muscogee County.

22       And unfortunately I can't pull up our list of

23  depositions right now.  But --

24       MR. CROSS:  Neither was deposed.

25       MR. RUSSO:  James Elliott, he was in one of the -- I

EXHIBIT 9

1    believe he was in one of the preliminary injunction hearings as

2    a witness.  And maybe he wasn't deposed.  But he was a

3    municipal election supervisor.

4           And so to the extent there is an issue around kind of

5    implementation of anything for a municipality, which, you know,

6    are treated differently under the state law from a county

7    elections office, he would be the person that we would be

8    calling for --

9           MR. BROWN:  Your Honor, from the Coalition

10   plaintiffs' standpoint, just to save some time, just the

11   balance of everything, we're not going to insist that those

12   people be taken off the exhibit list if they call them and give

13   us some advance notice before they call them, like we

14   discussed.  We can deal with it then to see if it is worth

15   fighting over.

16          THE COURT:  Is that your position as well?

17          MR. CROSS:  No.  Sorry, Bruce.

18          MR. BROWN:  Your Honor, on the last two.

19          THE COURT:  On the last two?  You mean on Nancy Boren

20   and on James Elliott?

21          MR. BROWN:  Right.

22          MR. CROSS:  I mean, what Mr. Russo is leaving out in

23   his description is they only testified during the DRE phase.

24   The reason the Court ordered initial disclosures and discovery

25   disclosures for this phase is so we knew who would testify in

1    this phase.

2          I just have no idea what these folks are going to say

3    relevant to the BMDs.  We would have deposed them if we had

4    known they were going to testify.

5          THE COURT:  Why don't we -- when we take a break, you

6    talk with your co-counsel so that I -- because I can't

7    really -- really make sense of this completely.

8          I'm more concerned about did you need -- is Richard

9    Lysinger likely to -- and Mr. Beavers' replacement and the

10   other person who is now going to be --

11         MR. CROSS:  We have Nick Whitney, who they say is on

12   the voter registration system.  As Your Honor recalls, the

13   voter registration system has been at issue since the start of

14   this case.  Multiple orders.  That person was never disclosed

15   in discovery.

16         THE COURT:  I'm sorry.  What is the name?

17         MR. CROSS:  Nick Whitney, W-H-I-T-N-E-Y.  Richard

18   Lysinger, which is L-Y-S-I-N-G-E-R.

19         THE COURT:  They are just saying that he is replacing

20   Merritt Beaver?

21         MR. CROSS:  Right.  But I don't know what he would

22   offer that is relevant.  There is a particular time period in

23   play here.  Mr. Beaver has accepted service of a subpoena.  He

24   will appear.

25         And so to bring in someone new, we don't know what he

EXHIBIT 9

1   is going to say.

2          And then Nick Ikonomakis, I-K-O-N-O-M-A-K-I-S.

3   Dominion has always been relevant to the case.  There was never

4   any suggestion they were calling anyone from Dominion.

5          Just importantly on that, Your Honor, we had to

6   litigate in Colorado to get any discovery from Dominion.

7   Dominion insisted they were not going to participate in this

8   case.  They were not going to provide deponents.

9          And we had an agreement with them that if for some

10  reason they had to produce a witness -- and this witness is

11  definitely beyond the subpoena power of the Court from what I

12  understand, so there is no compulsion here -- if someone were

13  required to testify, we would get to depose that person.

14         I spoke with Matt McGuire, Dominion's counsel.  I

15  understand he conveyed the same to the State.

16         Mr. Ikonomakis is not available at all until

17  January 15th, which means the earliest he would even show up is

18  in the middle of trial.  We would have to depose him in the

19  middle of trial.  So this is why the courts say you can't do

20  these things at the last minute.

21         There are three additional witnesses, Your Honor.

22  One is Christopher Bellew, B-E-L-L-E-W.  Not identified in any

23  initial disclosures.  Never been deposed.  No indication they

24  would rely on him.

25         From my understanding, he was at one point -- and he

```
 1    may still be -- an employee of the Secretary of State's office.
 2    I think perhaps with CES.  But I'm not really sure.
 3              Matthew Bernhard.  Dr. Bernhard was an expert that
 4    the Coalition put on in the DRE phase.  I don't know what he
 5    would say about the BMDs.
 6              And then they have a representative of the Coalition
 7    for Good Governance.  They have not identified who that is.  We
 8    don't know who they plan to call.
 9              MR. RUSSO:  Where to begin?
10              For Nick Whitney, there is clearly some
11    misunderstanding here about where the voter registration system
12    sits.  We used to have -- the State used to use eNet.  The
13    State now uses GARViS, which is a separate system.  I believe
14    his -- GARViS has come up in testimony of Ms. Marks in this
15    case.  So --
16              THE COURT:  But why didn't you identify Nick --
17              MR. RUSSO:  Excuse me.  Gabe Sterling's deposition.
18              THE COURT:  But you never identified Mr. Whitney as a
19    witness before?
20              MR. RUSSO:  That is correct, Your Honor.  We had not
21    because of some of the issues around the voter registration
22    system and how it plays into this case.
23              The fact that it is a whole new system we think is
24    important for the Court to understand the difference between
25    GARViS and eNet and where the State is at currently for
```

EXHIBIT 9

```
 1   purposes of prospective relief.
 2          THE COURT:  Yeah.  But -- and you probably are right.
 3   But then why wouldn't you have identified Mr. Whitney ahead of
 4   time?
 5          To identify them for the first time in the pretrial
 6   when you haven't identified the person before is a problem.
 7          MR. RUSSO:  Well, GARViS did not -- well, discovery
 8   was closed by the -- by the time the State implemented the
 9   GARViS system.
10          THE COURT:  But Mr. Whitney had to be likely, I would
11   think, involved in that replacement process or --
12          MR. RUSSO:  That's exactly --
13          THE COURT:  So I would have thought that you would
14   have identified him because of the fact -- it didn't happen in
15   one day, the replacement.  That is -- the process of -- in the
16   voter registration data system.
17          So why this late point?
18          MR. RUSSO:  So we have him as a may call just in case
19   there are technical details for the Court around GARViS, quite
20   honestly.  I think that other employees of the Secretary of
21   State's office could, of course, testify about that system.
22          THE COURT:  Will they have been identified?
23          MR. RUSSO:  They have been identified.  And
24   Mr. Bellew was -- he was discussed in Michael Barnes' 30(b)(6)
25   deposition.  He is the -- what? -- the deputy CIO for the
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1　State -- for the Secretary of State's office.

2　　　　　THE COURT:  You had him on your list before?

3　　　　　MR. RUSSO:  Deputy --

4　　　　　THE COURT:  You have identified him in response to --

5　　　　　MR. RUSSO:  He has just -- no.  I mean, he has been

6　identified in discovery.  He is not somebody who we filed a

7　supplemental disclosure for.

8　　　　　MR. MILLER:  Your Honor, to each of these witnesses,

9　as Mr. Russo mentioned, with respect to Mr. Whitney, sitting

10　here today, I don't presently anticipate that we are absolutely

11　going to need him to be called.  That is the kind of guy that

12　when it gets into technical details beyond what the customer

13　side, i.e., the State sees, we are moving to GARViS -- if

14　something comes up in plaintiffs' case over some sort of source

15　code on the voter registration system, our State witness is not

16　going to be able to testify about that because it is hosted by

17　MTX, the vendor.

18　　　　　And this -- MTX -- the knowledge of this vendor and

19　the knowledge of GARViS has been open throughout deposition

20　testimony in this case.  And, in fact, Mr. Davis' organization

21　that he cofounded is currently suing over whether the vendor,

22　other than the State, can host the voter registration system.

23　　　　　And we have got declarations from the plaintiffs'

24　side about GARViS, the system, coming forward.

25　　　　　Everything prior to this point has been about eNet or

EXHIBIT 9

```
 1   questions around eNet.  The Court knows that we have been, you

 2   know, disputing as to whether that is part of the case.  But

 3   nonetheless, to the extent it was, it was all about eNet and

 4   various vulnerabilities and eNet.  For whatever reason, GARViS,

 5   though it has come up in discovery, just hasn't been a central

 6   issue.

 7            And related to that, with respect to Mr. Bellew, he

 8   is Michael Barnes' deputy in the Center for Election Systems.

 9   He's another individual that we don't presently intend that

10   we're going to need him in particular to testify.  But his name

11   may come up in the plaintiffs' case in chief relative to

12   various different documents and information that comes up in

13   their case.  That is why he is on our may call list.

14            We expect right now the testimony we need out of CES

15   will come from Mr. Barnes.

16            MR. RUSSO:  I --

17            MR. CROSS:  I'm sorry.

18            MR. RUSSO:  I was just going to add to that.  It is

19   somewhat the same as Mr. Bernhard, who was called as an expert

20   at one point for the plaintiffs in this case that worked for

21   Dr. Halderman.

22            He works for another company now that is working with

23   the State or in discussions with the State about having a QR

24   code scanner that is going to be in polling places for

25   individuals -- voters to be able to look and see if the QR code
```

EXHIBIT 9

1    has the -- tracks the names on the ballot.

2          The State is -- it is not necessarily being

3    implemented right now because it is contingent upon funding.

4    But that was -- so Mr. Bernhard is probably not going to be

5    called.  But that was the impetus for his listing on our --

6          THE COURT:  You mean Mr. Barnes or Mr. Bernhard?

7          MR. RUSSO:  Mr. Bernhard.  Mr. Barnes will be called.

8          MR. CROSS:  Your Honor, the State said two directly

9    conflicting things.  They said that all of the questions

10   regarding the voter registration concerned eNet is verbatim

11   what Mr. Miller said.  But Mr. Miller and Mr. Russo also said

12   that this is okay to do this because there were questions about

13   GARViS in the depositions and in discovery, which is actually

14   true.

15         What they didn't say is those depositions were in the

16   spring of 2022.  Mr. Sterling, who was asked about the rollout

17   of the new system, which Mr. Russo acknowledges, covered spring

18   of 2022.  So they have always known that the rollout of the new

19   system had some relevance in this case, and they did not

20   identify Nick Whitney.

21         Similarly, Your Honor, with Christopher Bellew, we

22   just heard that his name came up in the Barnes deposition.

23   Mr. Russo said he was identified in discovery.  To be very

24   careful with the things that get said, because what he means by

25   identified in discovery is he was mentioned in passing in a

EXHIBIT 9

1  deposition and he showed up on an email.  That is not how it

2  works.  Right?

3        There are probably hundreds, if not thousands, of

4  people that were identified in discovery meaning they showed up

5  on an email.  The purpose of initial disclosures, the purpose

6  of the discovery class is to find out who are you going to rely

7  on at trial.  And it can be an overinclusive list when you put

8  in your initial disclosures.  But you have an obligation to

9  supplement them and to make clear these are the people we

10 anticipate we might rely on so that we know to depose them and

11 get discovery from them.

12       So we have seven witnesses here, Your Honor, at least

13 six, that they have now told you will testify on subjects that

14 were part of the discovery.

15       The last thing I will say, Your Honor, regarding

16 Mr. Bernhard, again, he has not had any role in this case since

17 the DREs.  So I don't know what it is they want him to address.

18       We just heard about these new QR scanners.  That is

19 also not part of the case and not part of discovery.  And it

20 gets to a macro point, which we don't need to address now.  But

21 we have a concern that we're going to get a defense in this

22 case that is entirely new that is going to be about 5.17,

23 so-called health checks, a scanner system.  And we're going to

24 be trying to defend a case where we have never had discovery.

25       We raised this concern when they first suggested this

EXHIBIT 9

1  might be what their defense is in a meeting with Your Honor in

2  chambers.

3          So, again, I'll just leave it with that.  They have

4  acknowledged all these people are on issues that were covered

5  in discovery.  They made a tactical decision not to identify

6  any of them.

7          That is it.  That is the end of it.  That is the

8  rule.

9          THE COURT:  Why don't -- just wait a second,

10  Mr. Miller.

11          **(There was a brief pause in the proceedings.)**

12          MR. CROSS:  Your Honor, Mr. Brown makes a good point

13  to give credit where credit is due.  Our own clients have had

14  people -- they have come to us and said, I would like to call

15  them and put them on the stand.  We have told them no.

16          So if we're just going to open the doors to anyone

17  that you want to call, then that has to run both ways.  But we

18  don't want that.

19          Our whole approach to this case is transparency,

20  which is why we've offered lots of exchanges and

21  meet-and-confers and deadlines and living with the record we

22  all developed.

23          There are a lot of things I wish we could go back and

24  add to this case.  But the rule doesn't allow it.  They have

25  got to live with that.

EXHIBIT 9

```
1           MR. MILLER:  Your Honor, just briefly, there's been
2   very little in this case in discovery and pretrial procedure
3   that is typical.  We did not have a joint discovery -- early
4   discovery conference and preliminary report entered after the
5   supplemental and amended complaints were filed, in large part
6   because we were scrambling to handle a preliminary injunction
7   motion and hearing that was coming up three weeks later and
8   expedited discovery going on during that.
9           MR. CROSS:  Can I --
10          THE COURT:  Just let Mr. Miller go.
11          MR. CROSS:  Totally inaccurate.
12          THE COURT:  All right.  It doesn't matter what
13  happened in 2021, let me just say.
14          At this juncture -- I mean, I do understand what you
15  are saying, that this is a run, run, run case and then not run,
16  run, run.
17          But the reality is still to have witnesses appear on
18  a list that haven't been identified before and supplementation
19  to discovery or by other form of communication that they have
20  actually been identified is a concern.  It is not -- you know,
21  it is not so much of a concern with one person because we can
22  always have a deposition from one person if they are not just
23  major.  But it is a concern with this number of people.
24          MR. MILLER:  So here is the --
25          THE COURT:  Some of them are fairly significant
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1   potentially.

2          MR. MILLER:  So here is the rub that is very

3   particular to this case, which is within the bounds of ex

4   parte, prospective injunctive relief that they are seeking.

5          So with the voter registration system, for example,

6   if GARViS is out of the case, then the voter registration

7   system is out of the case.  You know, the eNet cannot be

8   enjoined going forward.  It is not used in any way, shape, or

9   form.  GARViS is known; has been known to both sides, both

10  parties.

11         The only purpose of this Mr. Whitney is -- and the

12  reason why he is listed as a may call and not a will call,

13  because we anticipate the GARViS testimony is going to come in

14  large part from Mr. Sterling, is to the extent that there is

15  some particular coding technical issue that is beyond the

16  bounds of the knowledge of the Secretary of State's office, in

17  which case he is coming in as a potential fact witness when we

18  have to put on our case to try and clean up whatever issue may

19  have arisen.

20         It seems unlikely to me that that is even going to be

21  necessary with Mr. Whitney.  But that is why we have disclosed

22  him as a may call witness.

23         And it becomes a -- we dealt with this same problem

24  in Fair Fight because the reality is that the State has to

25  continue operating, things continue to change, people come and

EXHIBIT 9

1   go within the office of the State.

2        And at some point, there is both a cutoff but a

3   recognition that there is -- this has to be prospective

4   injunctive relief on what is happening.

5        So that is the context of, you know, how this has

6   come up at this point.  Again, I don't anticipate that there is

7   going to be any testimony on GARViS that is, you know, not

8   going to come from Mr. Sterling.

9        We're putting him -- we're putting Mr. Whitney on our

10  may call list in the event that, you know, it doesn't come up

11  or the particulars come up.

12       And then with respect to Mr. Ikonomakis -- as the

13  Court is aware, Dr. Coomer has testified previously.  Everybody

14  is aware of Dominion.  We have disclosed Dominion.  They have

15  the conversations with Dominion's counsel.  They went and

16  sought discovery in Colorado.

17       THE COURT:  Yeah.  But that is all the more reason

18  why you identify the person you're going to be calling from

19  Dominion.  It doesn't mean that they should have to guess who

20  is going to be calling -- presenting things from Dominion.

21       MR. MILLER:  It is another example of the particular

22  instances.  It depends on what plaintiffs put on as far as the

23  Dominion -- if it is something about the Dominion interworkings

24  that is not something that Gilbert is directly responding to or

25  that becomes a factual issue of something that has changed

EXHIBIT 9

```
 1  slightly since Dr. Halderman did his report in July of 2021 --

 2          THE COURT:  Well, what are you -- what is

 3  Mr. Ikonomakis going to be testifying about?

 4          MR. RUSSO:  I think he will be -- Your Honor, I think

 5  he will be testifying about the Dominion system, what 5.17 --

 6  the versions that have been updated with what they do.  He may

 7  be testifying about future versions that Dominion has coming

 8  out.  So those --

 9          THE COURT:  I mean, that is a lot of stuff for you

10  not to have identified him so that they could take his

11  deposition on a timely basis and to have prepared.

12          I mean, that is a -- I mean, I don't want to truncate

13  your defense.  But I also think that is really not fair and not

14  right.  I mean, it was obvious that you were going to -- it

15  would have seemed to me it would be obvious to you-all that you

16  needed to have disclosed who you were going to use as to this

17  in advance so that they could take the deposition and be

18  prepared.  And it might have been two or three people who were

19  possible.  But then at least they could make a judgment.

20          I mean, the fact that they have talked to people and

21  had to go out to Colorado to conduct discovery doesn't mean

22  that they are knowledgeable about who you are going to call or

23  that they were given access to that person or -- and the way

24  that -- in such a way that they had -- that there is no harm to

25  them.
```

EXHIBIT 9

```
 1              And, you know, given everything else that has to
 2    happen, it sort of seems like it is very late for them to have
 3    to take a deposition under these circumstances.  And what is
 4    their -- then will they have to fly out to Colorado again?
 5    Will you-all have to fly -- I mean, this is kind of, frankly, a
 6    mess.
 7              MR. TYSON:  So, Your Honor, I know we're spending a
 8    lot of time on this question.  I want to propose a way forward
 9    on this.
10              THE COURT:  All right.  Fine.  Thank you.
11              MR. TYSON:  As Mr. Russo and Mr. Miller have
12    referenced, these individuals are on the may call list but we
13    don't anticipate them necessarily testifying.  Mr. Ikonomakis
14    might be the one exception on that point.  We can discuss that.
15              But I think this may be resolved by us giving our
16    50 percent or higher chance of these individuals testifying.
17    Because I think for most of this, it can be addressed through
18    Mr. Barnes, through Mr. Sterling, people we have on our will
19    call list that we know we're going to call.
20              And so that may be a way we can try to resolve this
21    at this point and then address -- if we get to a point where we
22    feel like we need to call somebody else who is on the may call
23    list for some of these technical points, we could address that
24    when it comes up.
25              MR. CROSS:  That would be the worst thing the Court
```

1  could do because we would -- they would just have this long

2  list of witnesses and we have no idea when they are coming, if

3  they are coming.  If they tell us at any point between now and

4  the middle of trial they are coming, then suddenly we're in a

5  worse situation than we are now.

6          At least now, if Your Honor allowed it, which you

7  shouldn't, there is some window to get some sort of discovery.

8  This has to get resolved today.  And Your Honor's inclination

9  is exactly right.  They sat on all these people.

10          We're seeing the same thing with Halderman.  They

11  made tactical decisions in discovery.  They have to live with

12  them.  That is how it works.  That is how trials work.

13          THE COURT:  Let's put a pin in this for now.  And

14  we'll have a lunch break.

15          I would like you to confer with your co-counsel and

16  tell me, other than Mr. Ikonomakis, who else is the most

17  important person -- two other people that you think -- in this

18  list that you think are just -- you would need to have their

19  deposition and the others you're just going -- whatever you're

20  going to do -- how you decide.

21          MR. CROSS:  Sorry.  I thought you were talking to

22  them.  I'm sorry.

23          THE COURT:  No.  I'm talking to you.  I'm talking

24  about, if you needed to take three depositions here, which you

25  don't want to do --

EXHIBIT 9

```
 1            MR. CROSS:  We honestly can't, Your Honor.  It is not
 2   even a want.  I mean, we do not have bandwidth.  We just don't.
 3   I mean, that is just why the courts have a particular standard
 4   in these situations, and we're so far afield of anything the
 5   court has ever allowed.  We just can't, Your Honor.  I mean --
 6            THE COURT:  All right.  I will take it under
 7   advisement.
 8            MR. CROSS:  Honestly, Your Honor, it is a health
 9   issue at this point.  We're not sleeping.  We're dying.  We
10   can't do --
11            THE COURT:  Well, I don't want you to die.
12            MR. CROSS:  My wife doesn't want me to die.
13            THE COURT:  I don't want you to die.  I don't want
14   anyone here to die.  I have -- at all.  And I certainly myself
15   would like to live to see another day beyond this case.  Thank
16   you.
17            But -- but these are real issues to deal with.  And
18   I'll think about it because I didn't expect this.  That's all.
19            MR. MILLER:  Judge, I just want to be clear.  We are
20   not trying to just make work for no reason.  I'm in the same
21   boat as Mr. Cross.  I haven't slept in at least a week and a
22   half over just --
23            THE COURT:  You're not going to sleep again in
24   January.
25            MR. MILLER:  I was trying to get in as much as I
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
1    could before then.
2          I think the only slight difference is, like we said
3    as to other individual witness -- but Mr. Ikonomakis is just
4    Dominion's representative.  We have disclosed -- obviously,
5    Dominion is the vendor.
6          THE COURT:  Yeah.  It doesn't make any difference.
7          MR. MILLER:  Dr. Coomer got run out of town since we
8    disclosed him.
9          MR. CROSS:  Years ago.
10         THE COURT:  Years ago.  I know.  None of us who have
11   been involved all these years wouldn't know what happened with
12   Dr. Coomer.  And it is a sad situation.  And I'm sure everyone
13   read the New York Times magazine article about him and many
14   others.
15         MR. CROSS:  We would love to put Dr. Coomer on the
16   stand because he hired Dr. Halderman as his expert.  So we wish
17   we could call him.
18         But, to your point, he is in a terrible situation.
19         THE COURT:  Yeah.  Well, let's keep on rolling.  What
20   time does the --
21         (A discussion ensued off the record.)
22         THE COURT:  Let's proceed until 12:30.  Then we'll
23   get you down there or else to wherever -- whatever gourmet meal
24   that you have arranged to be delivered to you.
25         You were discussing the witnesses.  Was there
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1    something else here that you were trying to -- that counsel was

2    trying to discuss -- be responsive to?

3         I mean, you raised this issue.  And I don't know --

4    is there anything beyond this issue that you were -- about

5    witness lists, document lists, anything else as to the pretrial

6    order and its identifications of how we're proceeding?

7    Anything else like that?

8         MR. CROSS:  Not for Curling.

9         MR. BROWN:  No, Your Honor.

10        THE COURT:  Anything for the defendant?

11        MR. MILLER:  Your Honor, with respect to the pretrial

12   order, I understand the Court wants to deal with this in a

13   separate setting.

14        But with respect to the status of Mr. Davis, whether

15   he is in the case, out of the case, part of the pretrial order,

16   who is his counsel, we just want to get clarity on that at the

17   time the pretrial order is entered.

18        THE COURT:  Absolutely.  Absolutely.

19        And I see his putative counsel is standing up.  Did

20   you want to -- I mean, I had put this towards the end because

21   you can see we have a lot of other matters that we have to deal

22   with.

23        MR. OLES:  Yes, Judge.

24        THE COURT:  Do you --

25        MR. OLES:  And I know you've deferred the issue of

EXHIBIT 9

```
 1    representation.  But we do have a motion to supplement the
 2    pretrial order from Mr. Davis.  And I don't know when would be
 3    the proper time --
 4            THE COURT:  Maybe you should present it -- do you
 5    have a motion that is an oral motion or a written motion?
 6            MR. OLES:  It is a written motion.  It has already
 7    been submitted.
 8            THE COURT:  I did look at that.
 9            All right.  We'll discuss it after lunch but not
10    necessarily immediately after lunch.  But I did look at it.  I
11    just frankly forgot between the time it was given to me and I
12    read it and the time this morning after reading everything else
13    I had to read in the night.
14            MR. OLES:  I'm sure Your Honor has nothing else to
15    do.
16            THE COURT:  Nothing.  Nothing.  But thank you though
17    for raising the point.  We'll make sure that we address it in
18    the context of -- when we're dealing with the pretrial order,
19    which is forever apparently.
20            I think we might as well take a lunch break now
21    because I have to get myself organized for the next section.
22            If anyone has any recommendations as to how you --
23    what matters you would like to first address, you can -- I
24    mean, I went through my agenda with you.  Now I have to find
25    my -- whether I consumed it in some other --
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
 1              MR. CROSS:  Your Honor, one quick procedural

 2    question.

 3              THE COURT:  Yes.

 4              MR. CROSS:  Since the order you issued on Thursday

 5    was sealed, are you planning to seal the courtroom for that

 6    discussion?

 7              THE COURT:  About counsel?

 8              MR. CROSS:  No.  No.  About Halderman.

 9              THE COURT:  About Dr. Halderman.

10              That wasn't my thought.  But you can address that now

11    if you want.

12              MR. CROSS:  We're not asking.  I was just wondering

13    because it might -- if you were, it might be easier to start

14    with that.  Because if you seal it, we could kill that and move

15    on.  If you're not going to seal it, we can take it in whatever

16    order you would like.

17              THE COURT:  All right.  Well, I'll take that under

18    advisement.

19              MR. CROSS:  We're not suggesting sealing the

20    courtroom.  I was just asking.  Thank you.

21              MR. MILLER:  Your Honor --

22              THE COURT:  Let me deal with an easy issue though

23    right now, which -- I know, since you spilled a lot of ink on

24    it, you don't think is easy, but I -- you know, as to the

25    depositions where the plaintiffs have asked me to allow --
```

EXHIBIT 9

```
 1    authorize an adverse inference that is connected with the

 2    current defendants from this, I don't see this issue the way

 3    you do.

 4           I mean, I think the depositions, of course, are

 5    relevant.  And I'm not clear actually whether the defendants

 6    are objecting to their being read or introduced because

 7    obviously I don't necessarily need you to read them to me like

 8    a jury would.

 9           But I just -- you know, and it is possible that there

10    is something that arises in one -- in some -- somebody who is

11    working with -- coordinating with the State that there is

12    something that would suggest that State officials knew that

13    there was a problem.

14           But that is different than inferring -- making an

15    inference of the magnitude that they -- that State officials

16    were in some ways authorizing the conduct of people.

17           And maybe I don't understand.  But that's the way it

18    reads to me in part, that it is as if you're asking for the

19    Court to draw an inference of guilt that is comparable to

20    what -- to these individuals from Coffee County who are now --

21    who have been charged, many of them, or whether they are in

22    Coffee County or not or people who were involved in the -- in

23    the intrusion into the data system and copying of it.

24           MR. FISHER:  Sure, Your Honor.  This is Ramsey

25    Fisher.  I can address that.  I'll try to be brief because I
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1    don't want to keep anybody from fish at lunch.

2          But we are not -- to be clear, we're not seeking

3    inferences about guilt to the level that is at issue in the

4    Fulton County criminal case.  That is not what this is about.

5          I think our point in the motion or in the opposition

6    to the motion is that the Court can't really resolve this now

7    because it doesn't have the actual specific case-by-case

8    designations in front of it from which we will be asking for an

9    adverse inference.

10         These witnesses were asked loads of questions about

11   their involvement in the Coffee County breach.  They took the

12   Fifth on the vast majority of them.  We have corroborating

13   evidence of their involvement.  But we can't just carte blanche

14   say we're not entitled to an adverse inference based on their

15   involvement at this stage when we don't have the specific Q and

16   A in front of the Court.  And, more importantly, we don't have

17   the foundation that is required for the Court to consider the

18   LiButti factors with respect to those specific designations.

19         So that's -- our position is that let's get to trial.

20   The Court will have the record in front of it.  You will have

21   the specific Q and A that we're asking for adverse inferences

22   for in front of it.  We expect that to be a pretty limited,

23   narrow set.

24         And based on that, then the Court will be in a better

25   position.  Right now asking it to do it in the abstract is just

1  inappropriate and premature.

2          THE COURT:  Could you give me an example, though, of

3  what you would do so I have some idea, that I'm not just sort

4  of in the middle of trial trying to make sense of what is

5  happening.

6          MR. FISHER:  Yes.  Sure, I have a couple here.

7          For example, Ms. Latham at her deposition:

8          Question, do you yourself ever access the EMS server

9  in Coffee County?

10          Fifth Amendment.

11          Did you ever touch the server?

12          Fifth Amendment.

13          Did you ever see the server?

14          Fifth Amendment.

15          Did you ever access the ICC in Coffee County?

16          Fifth Amendment.

17          Did you ever touch it?

18          Fifth Amendment.

19          Did you ever see it?

20          Fifth Amendment.

21          THE COURT:  All right.  But Ms. Latham is also not

22  even an employee -- is not someone at least who is employed by

23  Coffee County.  She is a political figure who got very involved

24  with this obviously and then hired -- helped to hire other

25  people to be involved with it.

EXHIBIT 9

```
 1              But what would -- I'm just -- at least so when I
 2     don't have all of the pressure of the world running a trial on
 3     my shoulders, explain even with that, which is your example,
 4     how would that translate into a request for an inference?
 5              MR. FISHER:  The inference would be about the conduct
 6     of the individuals involved in the breach.  It would be
 7     evidence of the breach itself.  That is the inference.
 8              And I have other examples if the Court would like.  I
 9     would be happy to --
10              THE COURT:  Well, I mean, I know they were involved
11     in -- I mean, we have taken evidence that would indicate that
12     they are -- or you have taken evidence and presented it and
13     others have done this.
14              So I'm not saying anything about the criminal trial
15     and whether it was -- the criminal standards though -- are met,
16     though there have been people who have pled guilty obviously
17     from Coffee County at this juncture.
18              But I just don't quite know how it translates.
19     That's all.  I understand the significance of the incident.  I
20     clearly -- and the conduct.  And it is obviously discussed at
21     length in the order on summary judgment.
22              But I don't understand this inference business.
23     These are real facts that the Court has to consider.  But how
24     does it translate into an inference of -- whatever inference
25     you are trying to draw?
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
 1              I don't know what the type of inferences are.  If you
 2     want, so I'm just not putting you on the spot, you can think --
 3     talk with your colleagues or all of you talk and explain it a
 4     little better when we come back.
 5              MR. FISHER:  Sure.  Can I just make one final point?
 6              THE COURT:  Yes, you can.  Of course, you can.
 7              MR. FISHER:  The Court referenced the evidence cited
 8     in the summary judgment order.  We intend to introduce a
 9     variety of pieces of evidence regarding the Coffee County
10     breach.  It is just at this point we don't know what is
11     actually going to get in and what is not going to get in.
12              THE COURT:  I understand.  That is not a problem.
13     I'm just trying to understand your position about that you
14     could, in fact -- it was perfectly legitimate to make an
15     inference of guilt basically and culpability.
16              I mean, I think one can make an inference -- I mean,
17     the sort -- the range of things that I talked about in the
18     summary judgment motion I anticipate that you would be arguing.
19     But I'm not quite sure how you are talking about reading a
20     passage and then it is just simply going to go from there to my
21     making an inference of culpability on the part of an individual
22     defendant or the State as a whole.
23              MR. CROSS:  Let me see if I can help, Your Honor.  We
24     are not seeking an inference specifically on culpability or
25     guilt.
```

1          So let me give you a more specific example.  There

2     were questions asked of some of these people, actual election

3     workers, like Misty Hampton or Jill Riddlehoover --

4          COURT REPORTER:  I need you to slow down.

5          MR. CROSS:  Sorry.  Sorry.

6          THE COURT:  Misty Hampton or Jill who?

7          MR. CROSS:  Jill Riddlehoover, who was Misty

8     Hampton's assistant or county employee in the office; Eric

9     Chaney.

10         There were specific questions along the lines of

11    things like, do you know if these folks put malware into the

12    system?  Do you know if the access they had caused the system

13    not to work properly?

14         Those types of questions, while they may not -- we

15    wouldn't ask you to infer that the defendants are liable in

16    this case because they took the Fifth.  But you could, if all

17    the factors are met, infer that they pled the Fifth because

18    they knew if they answered honestly they would have to say yes,

19    they did something that made the system not work.  Or they

20    could say -- the honest answer might be, I don't know, but the

21    point being that is an inference --

22         THE COURT:  I understand.  But how does that -- this

23    is what I'm asking you.  I understand all of that.

24         But how does that translate to the concern I think

25    somehow -- and maybe I misread everyone's briefs -- but that

EXHIBIT 9

```
 1   the defendants are saying that you're asking me to infer their

 2   guilt from this?

 3           MR. CROSS:  That's why I think we are ships passing

 4   in the night.  We're not asking you to infer guilt liability.

 5   We're asking you to infer facts.

 6           Now, whether those facts -- whether those factual

 7   inferences leave the Court in the grand scheme of all the

 8   evidence to find them liable, that is a separate question.

 9           And that is why the macro point -- Your Honor, really

10   the disagreement between us is this.  We think there are

11   discrete questions -- a relatively small number of discrete

12   questions we will present to Your Honor and say, we think you

13   can have a negative inference that means the answer to this

14   would have been unhelpful to the witness because it would have

15   exposed them to criminal liability.

16           And that is a question like, for example, did you put

17   malware in the system?  You wouldn't infer liability, but you

18   would infer that maybe they did.  Right?  Or maybe they don't

19   know, which still raises an important fact for the Court about,

20   well, what does that mean on whether this system is reliable to

21   go forward if the people who hacked it can't even say I don't

22   know?  Right?

23           The division between us is this:  They want you to

24   enter a ruling today that there is no Fifth Amendment inference

25   that could be ever reached on this case.
```

EXHIBIT 9

```
 1          What we're saying is there are some.  It will be a
 2   small discrete set.  But you can't figure that out until you
 3   are at trial where you have the whole record.
 4          That's really the disagreement.  They are saying
 5   decide today wholesale you could never infer anything.  We're
 6   saying courts have been clear you just can't do it like that
 7   way.  You have got to look question by question at the time of
 8   the record.
 9          We're not going to ask for much, which I will get to.
10   We don't want to create any appealable issues in this case.  We
11   are going to be conservative.  And I say that honestly.  We're
12   going to be conservative in the way we go forward.
13          I don't want a record that that comes out where Your
14   Honor says, I have inferred a whole slew of things, because
15   that is just going to be arguments on appeal.  We may
16   ultimately not ask you for any inferences.
17          THE COURT:  Right.
18          MR. MILLER:  Your Honor, I'll be brief.  I know you
19   said you wanted to take a break here shortly.
20          First of all, with respect to deciding this issue
21   prior to the trial, the Court absolutely can and should do
22   that.  There is no -- the cases cited by plaintiffs for the
23   proposition that you can't do not hold that.  They are
24   concerning summary judgment or an inference drawn the other way
25   or where the movant is denied that is seeking the inference as
```

1    the movant and they don't say what the inference is they want.

2         But the particular example of, did you install

3    malware, did you alter the equipment -- and for the -- for the

4    Court to infer that as a fact that is essential to its order at

5    the end of trial, when it is the particular problem in this

6    case for the inference issue where the plaintiffs have no

7    evidence of that factual inference -- they have got the

8    forensic image of the Coffee County equipment.  If they wanted

9    to put it forth, if they had it, they would already have put it

10   forth and wouldn't require an inference, a legal creation to

11   create the fact that they could not find.

12        And with respect to establishing it pretrial, you

13   know, if we get in trial and this comes up, the plaintiffs are

14   going to have to make a proffer as to this is going to be how

15   this inference works.

16        Obviously that proffer is frequently used not

17   necessarily on previously admitted evidence but evidence that

18   is coming forward, you know, what is going to come, what the

19   witness is expected to say.

20        They can make that proffer now.  But as it stands,

21   the LiButti factors, there is no situation, no circumstance, no

22   facts under which the LiButti factors counsel in favor of

23   inferring an adverse inference against the defendants for the

24   actions of these nonparties, three of whom are county election

25   officials and one of whom is -- or not even county election

1    officials, former county employees or board members and one of

2    them, as Your Honor pointed out, was never employed by the

3    county.  Even more attenuated.

4         So, Your Honor, the application of the LiButti

5    factors is not going to change between now and the proffer at

6    trial.

7         MR. FISHER:  Three quick points.

8         First, we can't know -- we can't tell you what

9    inferences we're specifically going to ask for because they

10   haven't identified the question and answers that they want to

11   exclude.

12        They are the movants on this motion in limine.  It is

13   their burden to identify the specific evidence that they want

14   to exclude.  Instead, they presented a general motion saying

15   that we're not entitled to any adverse inference from any of

16   these witnesses on any questions.

17        And fact inferences in this case are going to be

18   especially important because the witnesses selectively invoked

19   the Fifth Amendment.

20        Finally, on this question about whether or not the

21   Court can do this now -- and we can get into -- our brief lays

22   out what the cases say and what they don't.  But one quote from

23   *Coquina*, which adopts the LiButti analysis in the Eleventh

24   Circuit, we agree with and adopt the LiButti analysis, i.e.,

25   that the admissibility of a nonparty's invocation of the Fifth

EXHIBIT 9

```
1    Amendment privilege and the concomitant drawing of adverse

2    inferences should be considered by courts on a case-by-case

3    basis.

4              It is talking about doing that with respect to each

5    invocation, not in a general motion in limine before trial

6    before the Court has the record before it to do the analysis.

7              THE COURT:  Okay.  Thank you.

8              MR. MILLER:  Judge, if I could just offer one thing?

9              THE COURT:  Yes.

10             MR. MILLER:  Your Honor has deposition designations

11   and objections, thorough, in the pretrial order.  Your Honor

12   has all that right now, our objections based off of the Fifth

13   Amendment.

14             The invocations that the LiButti factors don't apply

15   now, they are not going to apply later.  There is going to be

16   no different set of facts and no, as I understood it,

17   deposition designations that are not within that universe that

18   Your Honor already has in front of you.

19             MR. FISHER:  The pretrial order that we submitted is

20   over 800 pages long.  The objections that they submitted to our

21   designations are a large portion of that.

22             If they wanted to identify the specific Q and A that

23   they think poses a problem here and they want to exclude, they

24   should have done that in their motion.

25             THE COURT:  I will consider it again over lunch and
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1    see where we're going.  So -- and I'm going to reconsider my

2    order of addressing issues.

3            But right now we have Dr. Halderman's data and the

4    parties' protocols for provision and inspection of data; the

5    possible list of individuals who might have -- be granted

6    access; defendants' request to exclude any evidence relating to

7    the issue of the BMD system's compliance with state law.

8            That seems like -- I think we need to get just simply

9    clear what the plaintiff is saying there.  I think there is

10   some confusion about that.

11           MR. CROSS:  I'm sorry, Your Honor.  What was that

12   last issue?

13           THE COURT:  The defendants' request to exclude any

14   evidence relating to the issue of the BMD system's compliance

15   with state law.

16           In other words, are you raising a state law claim?

17   Which I don't think you are.  But I mean, I think just getting

18   clarity on that.

19           The defendants' request that the Court preclude

20   plaintiffs from calling Secretary Raffensperger as a witness.

21           I think -- admission of 30(b)(6) deposition

22   designations in addition to live testimony, I think I would

23   allow that.  So that will take care of itself -- that one.

24           Then there is the motion to exclude the MITRE report.

25   That is the plaintiffs' motion.  The defendants' request for

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1   clarification as to Poll Pads or electronic voter database --

2   what -- is there evidence of this?

3           I already dealt with the motion to intervene and then

4   Mr. Davis' representation.

5           Okay.  All right.  Well, it is 12:36 now roughly.

6   I'm assuming you can manage -- and I'm not sure you can -- can

7   we have everyone back here really in 35 or 40 minutes?

8           I mean, I don't know what -- I don't think -- there

9   are not that many people there.  So you should be able to be

10  back here in 30 minutes.

11                  **(A lunch break was taken.)**

12          THE COURT:  I'm drawing this microphone closer.  I

13  gather you had trouble understanding me in the back.  My

14  apologies.  You can always raise your hand.

15          So, well, just with respect to the motion for -- the

16  State's motion to preclude the plaintiffs from asking for

17  inferences to -- of guilt or otherwise to be drawn from the

18  testimony of various individuals and witnesses in connection

19  with Coffee County -- the Coffee County events, I think that it

20  would be better for me to defer ruling on that and see what the

21  actual testimony is and what the proffer is.

22          We are in a bench trial.  If we were in a jury trial,

23  I would feel compelled to make a decision at this point.

24          In saying that though, it is not to endorse a theory

25  of rampant requests for inferences.  I have already expressed

```
1   some of my doubts about that.  It doesn't mean the facts aren't
2   relevant as presented or even some of the omissions in the
3   record.
4            But an inference is a whole other thing.  Maybe your
5   inferences are more -- will be more specific than what I was
6   hearing.
7            It would be an enormous leap to say because Jane
8   Doe -- we should infer that Jane Doe put malware on, to infer
9   that the State though knew that Jane Doe was putting malware
10  on.
11           There are other inferences from the record that could
12  be drawn.  But that is not sort of -- you're in a territory
13  where you're asking for the most significant inferences to be
14  applied.
15           So I would say, to the extent you're thinking of
16  doing this, be very precise.  Or else I'll just say forget it
17  altogether.  And we'll see whether it really is an issue at
18  all.
19           It is an understandable motion though that is in
20  front of me from the State.  I just don't think -- except in
21  very factually specific circumstances in the motion made and
22  you say it is not going to happen much that it is worth dealing
23  with at this point on a generic basis in a bench trial.
24           So -- but it is definitely something you should be
25  cautious about as to how -- because to the extent there is
```

 1    media there, it also has an impact.  You're asking in the

 2    public eye for -- if you're asking for very significant

 3    inferences to be made and it is reckless, it hurts other

 4    people.

 5             Why don't we do a few relatively easy ones, like

 6    requests to exclude BMD compliance with state law?  And then

 7    what I -- I think would be short just simply to make some

 8    progress.  And then I would like to deal with the attorney

 9    representation issue before we go -- which may or may not need

10    to be in private -- I mean, without an audience here.

11             So -- and then after that, I will deal with the

12    issues regarding review of Dr. Halderman's data and the

13    parties' proposals because that might also have to be in

14    camera.

15             So very briefly, could counsel for the State just for

16    the record here identify the question or the concern, like just

17    a few sentences as to -- how is the -- how is the issue

18    presented as to the state law issue and BMD compliance.

19             MR. MILLER:  Yes, Your Honor.  I think this issue

20    goes to the scope of the trial and the issues to be decided at

21    trial.  In other words, are we litigating over compliance with

22    state law?  Is the gravamen of the complaint really a state law

23    issue, even though it is, you know, attempted to be

24    encapsulated within a federal claim?

25             Truthfully this came up at the witness list stage

```
1    when we had witnesses from the SAFE Commission and actually the
2    Governor on the witness list at one point.  That has been
3    pulled off.  But we were scratching our heads a little bit over
4    are we now trying a state law claim.  And this -- part of this
5    is a little bit of a difficulty on filing the motions prior to
6    the proposed pretrial order being filed.
7            At the time we filed our motion, we are having this
8    conferral where it comes up that they are going to raise this
9    issue as the compliance with the state law.  And the pretrial
10   order at that point in time also had a reference to invocation
11   of supplemental jurisdiction.
12           So at that point we have got alarm bells going off of
13   what are we going to trial on here on this claim.  The point
14   being, the way the plaintiffs' claims are phrased or put forth
15   in the complaint:  The BMD system is there.  How the State went
16   about enacting HB 316 doesn't matter.  It is -- the fact of the
17   matter is it is the system.  And the plaintiffs have gone to
18   great extent to make sure this is an as-applied challenge, not,
19   you know, some facial challenge as to the system as a whole or
20   the statute.
21           So setting that aside, there may be other uses for
22   things like the SAFE Commission.  We're not saying that at all.
23   What we filed this motion about really is to get clarity on are
24   we now going to be litigating in this courtroom the same thing
25   that was decided in the Court of Appeals and that is now
```

EXHIBIT 9

```
1   pending for cert to the Supreme Court.

2           THE COURT:  Okay.

3           MR. BROWN:  Your Honor, Bruce Brown for the Coalition

4   plaintiffs.  And I'll speak on behalf of the plaintiffs on this

5   one.

6           First, the plaintiffs have no claim arising under

7   state law, period.  We do not articulate one in the pretrial

8   order.  Your Honor does not discuss one in the motion for

9   summary judgment.

10          Second, just because we don't have a claim arising

11  under state law doesn't mean that state law is not highly

12  relevant to our federal law claims.  In case after case,

13  federal courts look at state law to determine whether the

14  defendant is complying with state law or not.  And that is the

15  same here.

16          In fact, the defendants themselves, although they

17  complain about us talking about the system's noncompliance with

18  state law, they rest their -- the bulk of their state

19  justification for the burden they are imposing on the

20  plaintiffs on their compliance with state law.  They wrap

21  themselves in compliance with state law and say, Judge, as a

22  federal judge, you can't touch us because we're just following

23  state law.

24          They are putting it in issue.  And there are

25  instances in which the State has violated state law that Your
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1    Honor has already found.  And we think that is highly relevant.

2          And, you know -- so that is our position on that.

3          Separately, there is no specific evidence that they

4    are pointing to that would really allow in a motion in limine

5    for Your Honor to exclude it or not exclude it.

6          Obviously, with any question or with any witness, we

7    will have to establish the foundation, how it is relevant to

8    our claim.  And we will do so, or it will be excluded.

9          Thank you, Your Honor.

10          MR. CROSS:  Your Honor, to give you a quick

11    reference, if you look at the proposed pretrial order at

12    Page 16, they actually identify this as one of the legal issues

13    to be tried in this case over state law.

14          So I think there's some confusion about what -- what

15    their view is on this.

16          MR. MILLER:  Your Honor, I think the -- unless I'm

17    looking at something different, David, I think the issue on

18    Page 16 is a reference to causation by the defendants under

19    color of state law, which, of course, is a baseline 1983 issue.

20          Am I looking at something -- at Page 16?

21          THE COURT:  I mean, I don't know which page it is.

22    So you'll have to read to me what you are -- to make it easier

23    for me.

24          MR. BROWN:  One of the issues that the defendants say

25    is crucial for Your Honor to decide is whether defendants'

1    improper -- important regulatory interests or otherwise

2    compelling and tailored interests are sufficient to justify any

3    burden imposed on Georgia voters.

4           We will show under Anderson-Burdick a burden on the

5    right to vote.  In response, they are saying, we are complying

6    with regulatory interests.  We get to say, no, you're not.

7    You're not here.  You're not here.  You're not here.

8           And in case after case, Your Honor, that we have

9    cited from, that Chief Justice Roberts summarizes in the recent

10   elections clause case, federal courts in election cases and in

11   nonelection cases look at state law all the time to determine a

12   state's regulatory or governmental interests and whether or not

13   they have sustained it.  Because the defendants are agents of

14   the state.  They are not the state.  They are agents of the

15   state.

16          And if they are straying from what the legislature

17   determined, that is highly relevant in determining whether or

18   not their actions violates the -- violate due process.  And we

19   have that in case after case.

20          And in a broader sense, the defendants are not

21   confused about our claims.  Our claims are standard.  Each --

22   the Curling plaintiffs and Coalition plaintiffs have two claims

23   under the due process clause and equal protection clause, both

24   of them arise under the Anderson-Burdick framework.  There is

25   no mysteries there.

EXHIBIT 9

```
 1              And both of those claims are informed by a lot of

 2     facts and a lot of factors, including state law and their

 3     compliance with it.

 4              MR. CROSS:  Your Honor, one quick thing to add.  I

 5     was going to try to pull it up.

 6              But in their summary judgment brief, when they

 7     identified the specific interests that support the burden on

 8     the voters here, one of those is explicitly complying with

 9     state law.

10              And so to Mr. Brown's point, they are all in on this

11     argument that they can defend this case on the position they

12     are complying with state law.  So even if we don't put it at

13     issue, they clearly have.

14              MR. MILLER:  Judge, this is the corollary of an issue

15     that coincidentally, like many other things we also dealt with

16     in Fair Fight in which the plaintiffs at that point in time

17     were seeking --

18              THE COURT:  You're getting --

19              MR. MILLER:  Sorry.

20              THE COURT:  You're welcome to come up here, even

21     though it just means you get a little more exercise.

22              MR. MILLER:  I prefer the informality.

23              But it is a similar issue to what we dealt with that

24     came up in Fair Fight in the context of a preliminary

25     injunction over the meaning of a calendar year in a state
```

EXHIBIT 9

1    statute dealing with voter list maintenance and registration.

2            And in that case, Judge Jones in the preliminary

3    injunction order pointed to Eleventh Circuit authority of *S&M*

4    *Brands, Inc., v. Georgia ex rel. Carr* and several others for

5    the proposition that when the gravamen of the complaint appears

6    to be that the State improperly interpreted and failed to

7    adhere to a state statute, there is a *Pennhurst* problem, which

8    means it is beyond the realm of *Ex Parte Young*.  And that order

9    is in the Fair Fight docket at ECF Number 188.

10           But, Your Honor, the issue here is not that -- we're

11   not seeking to preclude any evidence.

12           THE COURT:  No.  You wanted clarification.  And I

13   think they have provided clarification.  So let's move on.

14           MR. MILLER:  Okay.

15           THE COURT:  I think they have provided -- and to the

16   extent we get -- things get messy during the trial, then we'll

17   revisit it.  But I think they have provided clarification as to

18   where they are going.

19           MR. BROWN:  Thank you, Your Honor.

20           THE COURT:  Okay.  As to the review of

21   Dr. Halderman's data and the parties' proposals, if there is --

22   I'm prepared to rule at this point.  But if there is anything

23   that anyone wants to say that is confidential as to the data or

24   the parties' proposals and you want a few minutes to say

25   something or in response to me, alert me now or after I give my

EXHIBIT 9

1    at least preliminary ruling.  And if there is something, let me

2    know.  Okay?

3              **(There was a brief pause in the proceedings.)**

4              THE COURT:  I read over the record last night.  And

5    in my view, this was obviously an area where the parties

6    disagreed for some time and also the -- for the defendant that

7    some -- the ball got kicked down the line to this point of

8    close to the actual trial.

9              I don't think that it is precisely so that it is one

10   party's or another party's fault.  Though I think that it would

11   have been far preferable for the -- if this was this central to

12   the defendants for it to have been just -- that you would have

13   brought it to the Court and asked for a hearing on it earlier.

14             But I don't think it is productive at this juncture

15   for me to go further than that because I don't -- I mean,

16   everyone has cast a lot of aspersions on each other as to

17   their -- who is at fault, who didn't raise the issue on a

18   timely basis, who didn't respond on a timely basis.

19             And we'll be here all day if I get into that at this

20   juncture, and it is not a clean -- such a clean picture either.

21             I don't think that the State's proposal is a

22   realistic one, especially given the time frame and the number

23   of people to be involved that you would like to have and have

24   the number of computers, the number of possible sharing of the

25   data.  It just -- given the fact that we're talking about

EXHIBIT 9

1    malware, it is not something that I could authorize.

2         I think that the plaintiffs' proposal for a

3    designated individual to come up to Michigan, especially given

4    the fact of the sensitivity and the time frame involved and the

5    cybersecurity issues involved makes a great deal more sense.  I

6    think they propose one day.  I'm not sure -- I don't think that

7    one day is reasonable.

8         I think you just proposed the 19th or 20th; is that

9    right?  Or is it the 20th and the 21st?

10        MR. MILLER:  Next Tuesday and Wednesday, 19th and

11   20th.

12        THE COURT:  What?

13        MR. MILLER:  Next Tuesday and Wednesday, the 19th and

14   20th.

15        THE COURT:  Yeah.  Now, I don't know whether anyone

16   can be available on that time frame.  And -- but a two-day

17   window does make sense.  And I think we would have to agree now

18   as to who.  I mean, we can't have a cast -- the whole cast of

19   people that were being proposed.

20        I think given the fact that one of the defendants'

21   experts -- even if he had a lot of involvement in cybersecurity

22   before, his main focus has not been that for years.  So perhaps

23   Dr. Gilbert would be a better choice.

24        But I think you have -- or alternatively the

25   gentleman who used to work for the GBI.  But, you know, one

```
1    attorney, two other individuals that you choose.  I'm not going
2    to be choosing them for you.  I'm just pointing that out
3    because I have some concerns about Dr. Adida's involved -- even
4    what his -- he says he is testifying about in '21, which has
5    never been updated, it is really not cybersecurity matters.  So
6    I would have some real concerns.
7              MR. MILLER:  I'm sorry.  The concerns over the --
8    Your Honor, just to put this into context here, frankly we were
9    proposing the list of individuals because we were putting it
10   together in 24 hours.
11             THE COURT:  I understand, and I'm not being critical.
12   I'm just saying what I'm doing --
13             MR. MILLER:  I understand.
14             THE COURT:  -- what I'm authorizing you to do.  I'm
15   just telling you my concern about one of the experts being --
16   while he may have had an academic history involved in -- and
17   Ph.D. on cybersecurity, if he is going to end up giving expert
18   testimony and he hasn't given -- and he has not really been
19   talking about cybersecurity issues as opposed to auditing
20   issues, it gives me concern.  I'm just sharing that with you
21   now as a matter of fairness.
22             But it is ultimately your choice which people --
23   which two people you're going to have and which lawyer you're
24   going to have.
25             But -- and I understand that Tuesday and Wednesday
```

EXHIBIT 9

1    are awfully early.  And we only got -- they gave you the dates

2    they had.  But I think you have -- that plaintiffs' counsel

3    have to think about even if it is coming back, you know, one

4    day then like on a Wednesday and coming back for a second day

5    after their having studied that and considered it, that would

6    make sense as well.

7          I understand the -- as I said, I understand

8    everyone's positions in this.  I am just trying to -- we could

9    be here letting me splice and dice these issues endlessly with

10   you-all arguing about it.  And I just felt like I needed to

11   make a decision and proceed from there.

12         MR. CROSS:  Your Honor, I guess I'll try to take this

13   in two ways, if I can.

14         On the dates on the protocol, we proposed those

15   particular dates because Dr. Halderman has to be the one to

16   organize this.  The University is closed as of, I think, this

17   week.  The students are gone.  The faculty is gone.  Everyone

18   is gone.

19         THE COURT:  So it is a great opportunity is the

20   truth.  Everyone is gone.  It is not like they are -- he is

21   going to close down his lab.  He can keep his lab functional.

22         MR. CROSS:  Right.  Yes.  He has gotten permission

23   from the University.  He has limited discretion.  We have

24   permission to do this at the University.

25         But it becomes challenging because ordinarily he

EXHIBIT 9

```
 1    might have, you know, one of his grad students to help with

 2    this.  He's going to have to do it.  He's got family coming

 3    into town.  We will do what we need to do.

 4              I would like to take a run at persuading Your Honor

 5    not to do this.

 6              THE COURT:  No.  I have really considered this, and

 7    I'm not going to do that.  You know, we have to have adequate

 8    safety protocols.  But you-all have argued this to the Nth

 9    degree.

10              I am concerned for you and for all of the parties

11    that if I don't allow anyone on the defense side to be able to

12    see what is the issue here that -- you know, that is straight

13    reversible.  You may give -- it is not reversible as I'm doing

14    it.  But I will always bend over backward to allow people to

15    have some measure of evidence so they can understand what

16    the -- what the situation is.

17              And I do that for -- I have done that for plaintiffs

18    plenty of times.  I think it is not -- I understand the

19    enormous concerns.  And I think that Dr. Halderman can put in

20    any number of protocols, which was in your proposal, to make

21    sure that things are handled securely and that he has -- he can

22    have two or three graduate students.  Graduate students don't

23    just disappear.  They are not college students.  They are

24    around there.  They are living there.  He has people who are

25    close.
```

EXHIBIT 9

```
1              And we will be here all day if I don't make some
2    decisions.
3              MR. CROSS:  Understood, Your Honor.  I don't want to
4    debate the facts.  All I would say is the facts of what
5    transpired are actually not in dispute.  The dispute is whether
6    those facts -- how they resolve the diligence standard.  But
7    the underlying facts of who did what when they are not
8    disputed.  They are laid out.  Everyone acknowledge who did
9    what when.
10             It is just a question of did we have some sort of
11   affirmative obligation to do something that they didn't follow
12   up on.  I understand where Your Honor is on that.
13             The two points that I guess I'll emphasize is:  One,
14   we deposed Dr. Gilbert, and we asked him numerous times, why
15   didn't ask you for any of this?  Why didn't you do this?  He
16   said none of this was relevant to responding to Dr. Halderman.
17   And he says at Page 25 of his deposition, I wasn't going to
18   replicate the hacks.
19             So the problem is we find ourselves in a position
20   where decisions were made.  And this is exactly why the courts
21   don't allow this.
22             And the last point I'll get to, Your Honor, is:  With
23   all due respect, it is massively unfair that we lost Duncan
24   Buell when he issued a report only two weeks after the initial
25   expert discovery deadline and their only argument wasn't
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
1    prejudice, because they got in line with others -- he wasn't on
2    the initial disclosures.
3            And now they sat on this for two and a half years.
4    The facts are what they are.  It is not disputed that they did
5    not raise this once since March of 2022.  That is undisputed.
6    Do we get to bring Duncan Buell?
7            I get Your Honor -- and I will tell you candidly we
8    have had lots of discussions about the appeal issue here
9    because we do not want to create appeal issues.  But they
10   haven't cited a single case that is anywhere in the universe of
11   what we have here where they told this Court, we know we're
12   going to want this for trial.
13           Your Honor extended the expert deadline again and
14   again and again, including until November of last year.  And at
15   every moment, they decided we're not going to do anything on
16   this.  And so --
17           THE COURT:  All right.  So you made your point.  And
18   since you did, I'll let them make the record too.  But in one
19   minute.
20           MR. MILLER:  Thank you, Your Honor.
21           I'm not going to rehash the initial argument.  But
22   the bottom line here is this is a Rule 26 disclosure that has
23   to be disclosed for the expert to testify on it.  Your Honor
24   has ordered that.
25           Our concern here with the plaintiffs' proposed
```

```
1   protocol is the restrictive nature of it and actually being

2   able to prepare for trial with it where we can't bring

3   electronic equipment into the review room, there is going to be

4   a representative of plaintiffs' counsel in the review room with

5   us.  There is -- you know, we can't take anything off of the

6   computer.  We have to request to them with specificity a

7   portion for essential use at trial to get, you know, any paper

8   copies of this source code.

9           I mean, what the Court is ordering -- and I

10  appreciate the Court trying to resolve the issue so we can get

11  to trial.  But what is in this proposal is, frankly, even more

12  restrictive than what was for the DRE malware that we went up

13  to -- I sat in a room with Fortalice in Morrison Foerster to be

14  able to examine it.

15          At least in that circumstance, there wasn't somebody

16  in the room with us.  We could talk about it.  We could take

17  notes on it and take the notes with us without disclosing --

18          THE COURT:  I guess the difference is I think there

19  is a much greater concern about this malware than that.

20          MR. MILLER:  But, Your Honor, the concern about the

21  malware -- if the concern is the State cannot be trusted to

22  handle secure malware, personally, Your Honor, I stringently

23  disagree.  I don't believe that is what Your Honor is saying.

24          THE COURT:  No, it is not what I'm saying.

25          MR. MILLER:  That is in essence the --
```

EXHIBIT 9

```
 1          THE COURT:  But you -- for instance, your list says

 2   not only all the lawyers, most of them who probably can't work

 3   with this, but also anyone else you shall designate in your law

 4   firms.  Well, that is sort of like -- listen, we have people

 5   who are terrific in our armed services who engage in taking

 6   data and doing other things.

 7          I'm not going to be responsible in any way for -- for

 8   dissemination of malware here.  You need to understand a little

 9   bit about what the -- more, according to you, that really is

10   possible to hack the system with the malware attack system that

11   he -- was designed.

12          All right.  You'll get some better sensibility about

13   that.  You could have, of course, if you -- you really have not

14   identified an expert who was prepared to deal with that issue

15   from an early point so that you could actually have somebody

16   talking with -- with Dr. Halderman in a way that we could have

17   addressed this earlier but -- you know, or a more reasonable

18   strategy before for getting this done.

19          I am trying to bend over backwards to make sure that

20   you have at least some evidence here -- the core evidence -- is

21   this something, a made-up thing, or is this something real?

22   So --

23          MR. MILLER:  Your Honor, all I want to preserve is

24   our ability to adequately explore it and look at it.  What we

25   have right now is one day out of two next week.
```

EXHIBIT 9

```
 1              THE COURT:  I said two days.

 2              MR. MILLER:  And not being able to bring in

 3    electronics to analyze it naturally means it is going to be

 4    handwritten on a notepad to try and analyze it.  Not being able

 5    to take out the documents from doing so without disclosing it

 6    to plaintiffs' counsel so they get to see our notes as to how

 7    we're going to cross-examine Dr. Halderman based off of what we

 8    saw within the source code.

 9              Your Honor, it is a step too far in some of those

10    respects.  I appreciate Your Honor's approach to try and

11    resolve it and move it along.

12              I am just noting our concern and objection with

13    respect to the restriction.

14              THE COURT:  All right.  Your objection is noted.  And

15    I will just simply say the proposal that the State submitted

16    was so exhaustive, so beyond what anyone could have really

17    thought would realistically be able to be delivered to you in

18    the time frame that we have at this juncture or that was beyond

19    burdensome that I couldn't use it.

20              You know, if I had something simpler from you, I

21    would have used it.

22              MR. CROSS:  Your Honor does have something simpler.

23              THE COURT:  What?

24              MR. CROSS:  Your Honor has something simpler from

25    them.  We actually built our proposal off of Docket 440.  And I
```

EXHIBIT 9

1    have a copy, if it is helpful for Your Honor.

2         You may recall when we asked to look at the GEMS

3    database you asked for a protocol.  They filed a proposal for

4    review of the GEMS database at Docket 440.  We thought, okay,

5    well, they view that as reasonable.

6         We built our order -- their proposal off of that.

7    And the very things that they are now objecting to are the

8    things they insisted on with the GEMS database down to the

9    level of it had to be supervised access where they could watch

10   what Dr. Halderman was doing; you must make copies of all notes

11   during the review and leave them with the Secretary's office;

12   everything is recorded; you can't bring in electronic

13   equipment.

14        We took it from them.  And that was a publicly

15   available database.  Not malware that no one has ever had

16   access to beyond Dr. Halderman and Dr. Springall.

17        So I would say, Your Honor, you're on good ground to

18   enter ours because it came from them.

19        MR. MILLER:  Of course, Your Honor, that is not what

20   the Court ordered when it allowed the inspection of the GEMS

21   database and when it subsequently gave the copies of the GEMS

22   databases for all 159 counties to the plaintiffs for them to

23   look for anything, any sign of malware in the DREs that would

24   have possibly transitioned over to the BMDs.  And they have

25   come forward with nothing.

```
 1            We're simply looking at the opportunity to say,

 2    sufficiently what is this?  How does it work?  Does it work in

 3    real life?  Because that goes directly to this imminence of the

 4    risk.

 5            THE COURT:  Well, that is why I'm allowing you an

 6    extra day.  So y'all need to find two days.

 7            And I would suggest, even if Dr. Halderman isn't

 8    going to be there all the time, he does need to go some of the

 9    time.  He can't just say I want this level of security and

10    precaution and then just say I'm not going to have any touch

11    with it.  I'm very sorry.

12            MR. CROSS:  Yes.  I don't think he would do that.

13            THE COURT:  His family is there.  And this obviously

14    has been a great issue for him for years.  So he has to take

15    responsibility for it too.

16            MR. CROSS:  Totally understood, Your Honor.

17            What we were contemplating, because Dr. Drew

18    Springall supported Dr. Halderman, that one of the two of them

19    would work with this and one of the two of them will be

20    available.

21            That is our hope, and we'll make that work.

22            MR. MILLER:  Your Honor, I did want to -- that just

23    reminded me.  I wanted to clarify one point as to our

24    disclosure attempting to provide the Court this list of people.

25    You know, that was the same context in which Dr. Springall
```

EXHIBIT 9

1   became involved in this.  He was never disclosed as to be the

2   one looking at the BMDs that I believe are still sitting in

3   Krevolin Horst's office.  It was Dr. Halderman.  Dr. Springall

4   is the one that came there and assisted him.  We found out at

5   some point later.

6        It is not the biggest deal in the world.  The point

7   is we're looking for the same degree of flexibility.

8        MR. CROSS:  We are hearing this for the first time.

9   The protective order is clear.  That equipment was produced

10  subject to the AEO.  The AEO provides that your expert can rely

11  on folks who are working with them.

12       This is a very different situation.  Right?  This is

13  a situation where -- where we're talking about something that

14  has to be more limited.  And they have, of course, known about

15  Dr. Springall for a long time.

16       I don't even know what we're talking about.  I give

17  up.

18       THE COURT:  Well, don't -- let's just move on.

19       I think you -- be careful who -- I mean, you can

20  have, as I said, from your list one lawyer and either -- you

21  can use both of those experts.  Though I'm just going to say at

22  least one of them doesn't look like he could -- and perhaps

23  both of them are not necessarily the ones that you already

24  designated as experts, as people who are really going to be

25  able to talk about this particular -- the malware.

```
1              But that is up to you.  Of the list in there, there's

2      the two who have been identified as expert witnesses and

3      then -- then there is the GBI -- former GBI gentleman and maybe

4      one other.  I can't remember who the other --

5              MR. MILLER:  Mr. Ikonomakis from Dominion.

6              THE COURT:  But since I have to still resolve the

7      question of his testifying, I think that it is of concern.  But

8      it doesn't mean he couldn't, I guess, view it.  But I would

9      have to figure out whether he can testify in the first place.

10             MR. MILLER:  Your Honor, to be clear, the two

11     differences is as to whether somebody is going to testify on

12     something versus be able to inspect it and inform the --

13             THE COURT:  I understand, and I've got that.  But I

14     just want to be clear with you that I haven't decided that.  So

15     if you are thinking he is going to share anything about that,

16     that may not happen.

17             It may be useful for him to be able to see it as a

18     whole, even for the greater good of society and democracy.

19     But --

20             MR. MILLER:  Understood.

21             THE COURT:  But I want to -- I mean -- I mean, Mr. --

22     Dr. Adida's only expert affidavit really doesn't deal with

23     these sorts of issues.  And he doesn't seem to be working in

24     this realm any longer.  His interests have moved on.

25             And all of that happens to all of us at times.  But
```

 1    it doesn't make us necessarily an expert on things we did 15

 2    years earlier, unless we're attorneys.

 3              MR. MILLER:  Judge, I've got one additional point of

 4    clarification that maybe we just deal with later after we get

 5    our arms around how we're going to use it as far as a trial

 6    strategy.

 7              But with respect to the limitation on the viewing of

 8    the malware by counsel, you know, we're going to have different

 9    attorneys cross-examining different folks.

10              Is there a limitation as to conclusions deriving from

11    it to be used for our work product purposes I guess is the

12    question for you.

13              For example, I won't be here first week of trial.  I

14    will not be able to be the one cross-examining Dr. Halderman.

15    Other individuals that might be assigned to him or another

16    expert want to cross-examine about points of this.

17              Is there some degree of separation -- difference

18    between the source code --

19              THE COURT:  I think it is at this point a theoretical

20    question to me.  You should -- I mean, if you have a

21    pragmatic -- you know, you want to say that lead counsel don't

22    want to be spending their time out there for two days but

23    you've got a great other associate who is going to take

24    responsibility and you are going to split that part of the

25    examination or something, that is a different way of doing it.

EXHIBIT 9

```
 1    But --
 2              MR. MILLER:  I wanted to preserve the ability to be
 3    able to come back to you.
 4              THE COURT:  You can get back in touch with us about
 5    that.  But obviously first try to resolve it with opposing
 6    counsel.
 7              Mr. Ichter, I don't know whether your conversation
 8    with Mr. Davis is protected attorney-client communication or
 9    not.  So I'm trying to -- but --
10              MR. BROWN:  If I may address that, Your Honor.
11              I think to the extent there are any confidences, it
12    may be difficult disclosing those to anyone but not from here
13    outside, if that makes any sense.
14              We will not be disclosing any attorney-client
15    confidences either with respect to the Court or anyone else.
16    So we think we can have it in open court.
17              THE COURT:  All right.
18              MR. BROWN:  Is that right?
19              MR. ICHTER:  Yes.
20              THE COURT:  Is that acceptable to you?
21              MR. OLES:  Yes, sir.
22              THE COURT:  Well, Mr. Brown and Mr. Ichter, is there
23    anything that you want to say in this connection about -- as to
24    Mr. Davis' presentation at this juncture?
25              MR. BROWN:  I wanted to explain one thing.  I made a
```

1  notice of appearance last night on behalf of the other

2  individual plaintiffs.  And the purpose of that was to make

3  sure that on our side everybody was represented, no matter how

4  this played out, in ways that that was appropriate for our

5  clients' various interests.  So that was the purpose of that.

6       I do not and never have been counsel of record for

7  Ricardo Davis.  Although all of us have shared under a

8  defense -- common defense agreement ideas and representation

9  throughout the case.

10       COURT REPORTER:  I'm having a little trouble hearing

11  you.

12       MR. BROWN:  We have shared -- throughout the case, we

13  have been under a common prosecution agreement, representation

14  agreement.

15       And so our roles with the various plaintiffs have not

16  been one lawyer per plaintiff.  But we've taken on different

17  tasks.  Mr. Ichter has done a lot of the hard lifting on the

18  discovery, particularly recently.

19       And so all of us have worked with all of the

20  plaintiffs.  But in terms of counsel of record, it is as I have

21  laid out before.

22       Thank you.

23       MR. ICHTER:  Your Honor, the only thing I would like

24  to add is that Mr. Martin sent an email yesterday asking if I

25  have made it clear to Mr. Davis that I will make myself

1    available for the entirety of the trial and that my situation

2    is not going to interfere with my ability to represent him in

3    the trial.

4              I have made that clear on multiple occasions.

5              THE COURT:  Okay.  Did Mr. Davis indicate to you he

6    still -- that he was or was not comfortable or how he wanted to

7    proceed in that conversation?

8              MR. ICHTER:  Mr. Davis has never indicated to me what

9    it is that has motivated him in particular in connection with

10   making the decisions he has made regarding counsel.  He has

11   expressed some things to me about issues but nothing about

12   representation.

13             THE COURT:  Okay.  Thank you.

14             MR. BEDARD:  Your Honor, Ed Bedard for the State.  I

15   don't know if you want to --

16             COURT REPORTER:  I need to get you to a mic.

17             MR. BEDARD:  Sorry.  I can come around.

18             THE COURT:  Introduce yourself again since I'm only

19   getting to know you.

20             MR. BEDARD:  For sure.  Ed Bedard for the State.

21             I have got two young kids at home.  So it is that

22   time of year.

23             I don't know if you want to hear from the State on

24   the State's position before or after Mr. Oles speaks.  But the

25   State does have at least some position on this issue.

EXHIBIT 9

```
 1              THE COURT:  All right.  Go ahead and identify it.

 2              MR. BEDARD:  Okay.  The State doesn't have any

 3     particular care or interest in who represents Mr. Davis on a

 4     personal level.  Obviously, the State's concern though

 5     centrally is, as Mr. Cross has mentioned before, trying to

 6     avoid appealable issues.

 7              Whatever happens in this trial, we want things to be

 8     done and final and clear for the records for when we go back up

 9     -- if either side goes up on appeal, the things are done, they

10     are ready for the Eleventh Circuit to deal with the merits of

11     this case.

12              The issue that we see, just objectively speaking, is

13     under the local rules we don't see any process for denying

14     somebody from making an appearance.  We only see the process

15     for denying somebody from withdrawing or completely

16     substituting.

17              So if Mr. Ichter is going to stay in the case, we

18     don't see a basis under the local rules for keeping Mr. Oles

19     out.

20              Beyond that, constitutionally, Mr. Davis, who is a

21     named plaintiff in the case, has a Fifth Amendment

22     constitutional due process right to counsel of his own choice.

23              Now, that is not an absolute right, of course.  But

24     the limited circumstances in which we have seen in the case law

25     for when a court can deny somebody the right to counsel of
```

EXHIBIT 9

1    their own choice in a civil case has been when, you know,

2    there's some evidence of bad faith or somebody is trying to

3    make an appearance to try to get the judge to recuse or create

4    some sort of conflict.  Not in this circumstance.

5            As far as we have seen, we just haven't seen a basis

6    to necessarily deny Mr. Davis the right to counsel of his own

7    choice.  Again, we don't particularly care who represents him.

8    But what we want to avoid is any sort of appealable issue for

9    Mr. Davis on this constitutional due process right.

10           So that is kind of where we sit with things.

11           THE COURT:  Well, you saw my last order on the last

12   attorney who sought to represent him?

13           MR. BEDARD:  Yes.

14           THE COURT:  And are you -- does the State disagree

15   that the Court has the -- in fact, the authority as identified

16   in the legal authority I have provided to manage a case that is

17   right before trial and prevent it from becoming enormously

18   inefficient because it is such a belated insertion of new

19   counsel in a massive record?

20           MR. BEDARD:  Sure.  I would say, again, you know,

21   part of that is a question of the representations by Mr. Oles

22   about what they intend to do or not to do at trial.  I think

23   the Court, you know, has control --

24           THE COURT:  Well, they want to introduce new

25   evidence.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
 1          MR. BEDARD:  Well, it is not new evidence.  It is
 2    just additional evidence from that which the plaintiffs have
 3    identified.  So they want to add their own stuff to the
 4    pretrial order.  I think --
 5          THE COURT:  No.  It is more than that.
 6          MR. BEDARD:  And I think -- I think the Court again
 7    has the authority certainly to control the introduction of
 8    evidence, what counsel may want to do at trial.
 9          We're not, again, speaking to that.  I think the
10    difference between the Court's order on the last one was it was
11    a motion to substitute and have Mr. Ichter withdraw.  If the
12    Court wants to deny Mr. Ichter the ability to withdraw from the
13    case, I think the Court, within the local rules and otherwise,
14    is well within its authority.
15          I think the question is just whether Mr. Oles can
16    make an appearance and represent Mr. Davis.  We're just very
17    much concerned that denying him the ability to do that, setting
18    aside what he is able to actually do at trial, what evidence he
19    is able to introduce or whatever -- denying him the ability to
20    appear may create an appealable issue for Mr. Davis.  And that
21    greatly concerns us.
22          THE COURT:  Well, we're talking about two new
23    witnesses as experts.  So that is not a minor -- in at least a
24    quasi expert capacity supposedly.
25          So that is not a minor issue, is it?
```

EXHIBIT 9

```
 1          MR. BEDARD:  No, not at all.  And I would say, Your

 2   Honor, I think that's a separate issue though about whether

 3   Mr. Oles can introduce that evidence.

 4          I'm not taking a position on that on behalf of the

 5   State.  The question solely that I'm trying to get across is

 6   denying him, I think, the ability to appear in total just

 7   concerns us.

 8          But we just wanted to get that on the record.

 9          THE COURT:  All right.  Thank you very much.

10          (There was a brief pause in the proceedings.)

11          THE COURT:  As I understand it from what you

12   presented here -- and I'm going to ask you a number of

13   questions.  And, of course, you're free to make whatever

14   statement you want to make -- is that essentially at the

15   eleventh-point-nine hour you want to come into a record that

16   you have been listening to about the magnitude of the record

17   and jump in as counsel for Mr. Davis individually.  So it is a

18   mammoth undertaking.

19          You do understand that?

20          MR. OLES:  I do understand that this case has been

21   going on for six years.  And to use an overused expression,

22   there is an enormous amount of water under this bridge.

23          THE COURT:  Well, there is an enormous number of

24   trees that have been cut down because I'm still a paper person

25   in part but also probably has electronically burned my head.
```

EXHIBIT 9

1  But it is -- so it is more than just -- that it has been going

2  on.  The volume of issues and evidence is great.

3          So we really don't have -- and there are obviously --

4  as you know from the briefs that you most recently have seen

5  probably, that the two plaintiff teams have been working in

6  close connection with each other strategically.

7          So it is throwing a bit of a bomb into this to say

8  we're going to have new counsel and we're going to in any way

9  affect their presentation that they have worked on for six

10 years by what you're -- whatever you are planning to do.

11         And in particular, what you propose is, first of all,

12 to call two witnesses who have been deposed but who are not

13 listed on either party's witness list, Mr. Ben Cotton and

14 Jeffrey Lenberg.

15         MR. OLES:  I believe one of them is on the State's --

16         THE COURT:  State's?  Mr. Cotton?

17         MR. OLES:  Yes.

18         THE COURT:  But not Mr. Lenberg?

19         MR. OLES:  Correct.

20         THE COURT:  And Mr. Lenberg played a role in

21 downloading the data in Coffee County, didn't he?

22         MR. OLES:  That's my understanding.

23         THE COURT:  And sharing it with others?  And sharing

24 the data and software with others?

25         MR. OLES:  Again, my understanding is he was

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
 1    involved.
 2            THE COURT:  Have you talked with Mr. Lenberg, in
 3    fact?
 4            MR. OLES:  I have not spoken with Mr. Lenberg at this
 5    point.
 6            THE COURT:  And are you -- are you planning to try to
 7    call him in person or just to present his testimony by
 8    deposition?
 9            MR. OLES:  My plan would be to try to call him in
10    person assuming that he is able to do that and we're able to
11    present that.
12            I always think that it is more compelling if a
13    witness is seen in person.
14            THE COURT:  And then you indicate that you also want
15    to show how Dr. Halderman and Dr. Starks' findings manifested
16    in the Georgia's 2021 U.S. Senate runoff through remotely
17    initiated irregular access utilizing identified security
18    vulnerabilities.
19            You say this is forensic evidence that corroborates
20    the testimony and conclusions of the Curling and Coalition
21    plaintiffs.  But you don't identify what that evidence is.
22            MR. OLES:  No, I haven't put the specifics of that in
23    the -- in the motion, Judge.  There's a certain amount of --
24    his deposition is what it is.  It would not be our intention to
25    introduce really new evidence of a significant nature but only
```

1    to have him present it in person and describe what he found.

2              THE COURT:  Who is that?

3              MR. OLES:  Previously --

4              THE COURT:  Who?  Which one of these people or

5    somebody else?  Because you are saying to have he, and I don't

6    know who he is.

7              MR. OLES:  I'm sorry.  Either of the two witnesses

8    that we've identified, Mr. Cotton or Mr. Lenberg.

9              The difference, I think, right here is that we're not

10   asking to qualify them as a witness.  We understand that

11   trying -- trying to introduce a new expert at this late --

12   stage of the game right on the eve of trial could be extremely

13   prejudicial to the presentation of the parties' case.  We're

14   not asking to do that.

15             What we are asking to do is to include some factual

16   testimony that for whatever reason, for reasons of trial

17   strategy, for reasons of how they weigh the evidence, the

18   current plaintiffs have not decided to introduce and it appears

19   as though the State certainly isn't intending to do that

20   either.

21             All I have been called in to do is to try to ensure

22   that my client -- to the extent that his view of this case may

23   diverge somewhat from that of the other plaintiffs, that he has

24   the opportunity to make sure that the evidence that he believes

25   is most compelling is also included in the record of the case

EXHIBIT 9

1    at trial.

2         So it is -- really, my only involvement has been

3    triggered by the fact that this late in the game he is

4    discovering that what he expected to be presented is not on the

5    list.  And he wants to ensure that as a co-plaintiff what he

6    thinks is important is also going into the record.

7         We are very carefully not going outside -- outside

8    the scope of what was already within discovery in the case.  So

9    there shouldn't be a risk of prejudice to any party.

10        Again, I do realize that this is late.  But this is

11   when my client brought it to me, and I'm just trying to make

12   sure that he has that chance to present his case at trial.

13        THE COURT:  All right.  Are you actually going to be

14   able to sit through a trial that may last more than two and a

15   half weeks?

16        MR. OLES:  That is a discussion --

17        THE COURT:  A family law practice and do other sorts

18   of legal practice.

19        MR. OLES:  The Court may fairly assume that that has

20   been a very -- a subject of discussion between me and

21   Mr. Davis, yes.

22        It is my hope, of course, and my intention with

23   regard to all matters, except for the ones that are identified

24   in this motion, my client's interests will continue to be

25   aligned with the presentation as outlined by plaintiffs'

EXHIBIT 9

```
 1    counsel.
 2              THE COURT:  Well, I'm not really sure of what the --
 3    I mean, the major piece of evidence also that you describe in
 4    Paragraph 4, as you do earlier in Number 2, is that Plaintiff
 5    Davis' witnesses, which means Mr. Cotton and Mr. Lenberg, will
 6    show remote irregular access occurred on the evening of January
 7    the 5th, 2021, U.S. Senate Race, when an on-site technician in
 8    Coffee County, Georgia, called Dominion's Scott Tucker
 9    regarding a ballot scanning rejection problem and the system
10    was reconfigured without physical access to the scanner or
11    server equipment.
12              So what is the actual direct knowledge of the two
13    extra witnesses that you are planning to call?  Because I know
14    that Mr. Lenberg was there, but not on the 5th.
15              So what is their actual personal knowledge of that?
16              MR. OLES:  Not being the technical expert, I'm a
17    little bit challenged at this point to come in.  And not having
18    spent significant time with him, I can only give the Court my
19    understanding from discussions with my client and others so
20    far.
21              Is that key contention in this case is whether or not
22    this system is remotely accessible by wireless devices.  It is
23    the State's contention that it is not.  It is my client's
24    contention that it is.  And that these two -- these two
25    individuals will have seen factual evidence that that remote
```

EXHIBIT 9

```
1    access did occur on the 5th and that they can show -- this is
2    not -- this is not extrapolated knowledge.  This is not deduced
3    knowledge.  This is not -- this is not opinion evidence.  This
4    is a case of where they can identify for the Court exactly what
5    Your Honor is asking me.
6              THE COURT:  All right.  Well, I know that you've had,
7    you said, considerable discussion with your client about these
8    matters but -- and thought about the length of the trial.
9              I guess I really do need to understand:  Are you
10   planning to be -- attend -- are you able to attend the entire
11   trial or not, or are you just expecting to be there for
12   purposes of the examination of the evidence that -- or the
13   witness -- the introduction of the witness testimony that your
14   client is interested in?
15             MR. OLES:  I guess that depends, Your Honor, on
16   whether or not Mr. Cary Ichter continues to be counsel in the
17   role for my client as well.  I think if he does continue, then
18   it would likely not be necessary for me to be here for the full
19   duration.  And then in that case, my intention would be to
20   introduce these two witnesses and elicit their testimony.
21             However, should Mr. Ichter decide and the Court
22   permit him to withdraw upon the eve of trial like this, then,
23   of course, I would have no choice but to make myself --
24   consistent with my obligations to my client, to make myself
25   available for that period of time.
```

1          THE COURT:  Okay.  All right.  Well, I may have other

2   questions for you.  But I want to hear from plaintiffs' counsel

3   at this point.

4          Well, don't you think, in fact -- I mean, I realize

5   this has an impact on the Curling plaintiffs.  But it seems to

6   me the first thing is for me to hear from the Coalition

7   plaintiffs and Mr. Ichter.

8          MR. BROWN:  Your Honor --

9          THE COURT:  Do you want to come up so that we don't

10  have to struggle about this?

11         Thank you.

12         MR. BROWN:  Your Honor, I know you understand the

13  sensitivities of the position that we're in.

14         I do have to say that the issues involving Mr. Cotton

15  and Mr. Lenberg as to whether those, as described by Mr. Oles,

16  should be a part of the case has not come up in previous

17  discussions specifically to our representation.

18         As you know --

19         THE COURT:  From the client himself?

20         MR. BROWN:  That's correct.  The --

21         THE COURT:  So you are saying he never raised it with

22  you?

23         MR. BROWN:  That's correct.

24         THE COURT:  Can you remind me what Mr. Cotton

25  testified -- I remember, of course, Mr. Lenberg's scope of

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

 1    activities.  I am -- Mr. Cotton is less -- less clear in my

 2    mind at the moment.

 3              MR. BROWN:  Sure.  Mr. Cotton was -- Mr. Cotton was a

 4    forensic examiner.  He looked at the software.  He got the code

 5    to get the software from Mr. Penrose.  Part of our claim is

 6    that the distribution of the software goes on and on because

 7    someone like Cotton could just get the code from Penrose and

 8    they could pass it on and pass it on, pass it on.  He examined

 9    it.  We deposed him.

10              He did not -- he actually did not take the Fifth

11    Amendment, which was -- which was good.  But he withheld a lot

12    of evidence because of the attorney-client -- because of the

13    work product privilege.

14              And his theory of the work product privilege is that

15    he had been engaged by Misty Hampton to be her expert.  And so

16    that is why he was looking at the software.  And that's why

17    there were certain questions that he resisted answering.

18              So that is how he falls.  And we fully deposed him.

19    And I do not recall sitting here his testimony about the

20    Senate -- I don't recall that.

21              I do recall deposing Mr. Lenberg.  And Mr. Lenberg

22    did not disclose any admissible facts.  Your Honor, we would

23    have been all over it had he because this is part of our claim

24    is that there are vulnerabilities to the system.  And we have

25    explored those, and we have presented all that to all of our

EXHIBIT 9

109

Case 1:17-cv-02989-AT    Document 1750-10    Filed 12/22/23    Page 111 of 170

```
1   clients.  And Mr. Davis, you know, is part of that client
2   group.
3           And so we stand ready, willing, and able to present
4   the case that Mr. Davis joined in on for a period of six years,
5   seven years.  And we have counsel, Mr. Ichter, despite the
6   difficulties, ready to represent him.  I am here to represent
7   the other plaintiffs should there be any difficulty in
8   Mr. Davis getting his position through Mr. Ichter with respect
9   to the other plaintiffs.
10          So I think we've done everything we can on this.  And
11  I appreciate Your Honor's wisdom on how it should go forward.
12          Thank you.
13          THE COURT:  Is there anything, Mr. Ichter, you want
14  to add?
15          MR. ICHTER:  Never had anything like this happen
16  before.  I will tell you that I would comment on my thoughts on
17  the two additional witnesses.  But I didn't see Mr. Oles'
18  motion before it was filed.  I have never talked to those
19  witnesses.  As I --
20          THE COURT:  Personally never talked with them?
21          MR. ICHTER:  Personally never talked with them.  And
22  I haven't read their depositions.  I think as everybody in this
23  case knows based upon the volume of things that have been going
24  on, everybody doesn't do everything.  Different people have
25  discrete tasks.
```

EXHIBIT 9

```
1              I have been handling those things that have been

2      assigned to me.  Other people have been handling things

3      assigned to them.

4              And so when the motion with respect -- that Mr. Oles

5      has filed was filed, it was a surprise to me because no one had

6      discussed it with me.

7              When Mr. Harding filed the motion to have me

8      withdraw, that was a surprise to me because I thought he was

9      being added as additional counsel.

10             I didn't try to stop that from happening because

11     Mr. Davis had indicated to me that he wanted to replace me as

12     counsel.  And so I just let it go.

13             And I -- perhaps I should have said something to

14     Mr. Harding with respect to the formalities associated with a

15     withdrawal.  But since it wasn't my idea to withdraw, I didn't

16     undertake to do that.

17             So if you have any questions, Your Honor, I would be

18     happy to answer them but --

19             THE COURT:  Well, I guess one of the questions is

20     really that Mr. Oles has suggested here essentially that he

21     could work with you, that he would be there for those two

22     witnesses and you would represent Mr. Davis otherwise.  But for

23     those two witnesses, for some reason, he believes that he could

24     be helpful.  Though he wouldn't -- couldn't be as familiar with

25     the record as everyone else here because it just would require
```

EXHIBIT 9

```
1    an unbelievable amount of preparation.  But that is -- anyway,

2    that was one proposal he made.

3            The other one was, well, then he would have to be

4    here the whole time if you withdrew.  And he didn't exactly

5    indicate to me how that would be done.

6            MR. ICHTER:  I haven't sought to withdraw.  I haven't

7    asked the Court.  I do, however, think that it would make sense

8    for me to withdraw with respect to the individual plaintiffs

9    that Mr. Brown made an appearance on behalf of because there

10   are issues that may arise based upon what Mr. Oles and

11   Mr. Davis want to do.

12           As far as working with Mr. Oles, I have no personal

13   problems with Mr. Oles.  I would say, however, that the level

14   of collaboration that has occurred up to this point suggests to

15   me that that could be a problem.

16           Because, generally speaking, when I have been working

17   on a case for six years and somebody else shows up as

18   additional counsel and starts filing motions without asking me

19   or even telling me, I regard that as being somewhat

20   problematic.

21           I also am not really sure how we would sort out

22   questions if, for example, there were situations to arise where

23   I believe the Court had already ruled on the admissibility of

24   certain evidence and Mr. Oles had a different view of that how

25   we would sort that out.  So I think that could turn into a bit
```

EXHIBIT 9

1    of a problem.

2           So --

3           THE COURT:  Thank you.

4           MR. ICHTER:  I haven't dealt with this before.

5           THE COURT:  I have never had it happen either.

6           MR. ICHTER:  I appreciate it, Judge.

7           THE COURT:  All right.  You wanted to say your two

8    cents too, Mr. Cross?

9           MR. CROSS:  Just quickly, Your Honor.

10          To your question to the State, we think it is

11   unquestionable Your Honor has the authority to do this.  And

12   your order laid that out clearly.

13          I just wanted to highlight a couple of things.  One,

14   in the ordinary course, we wouldn't care -- right? -- if

15   Mr. Oles wanted to come in.  But they are very clear on the

16   reason they want to do this.

17          Mr. Harding was initially.  Your Honor has hit it on

18   its head on Paragraphs 2 and 4.  But I think it is important to

19   be clear about what it is they want to do and why it is

20   actually directly at odds with what the plaintiffs have always

21   taken as a position in this case.

22          In Paragraph 2, they say that the forensic evidence

23   they want to produce corroborates the conclusions of Curling

24   and Coalition plaintiffs.  But it doesn't.  Because what they

25   are saying when they say that the findings manifested in

EXHIBIT 9

```
 1   Georgia's 2021 U.S. Senate runoff -- we know from the public
 2   statements from Mr. Davis and Garland Favorito and others, they
 3   are talking about manifested in a way that altered the election
 4   outcome.
 5            That has never been our case.  I will tell you now
 6   there is no way we're going to sit in trial and let that type
 7   of theory come in.  That is not our theory.  It is directly at
 8   odds with the theory that we have taken, which is prospective.
 9   And they lay that out in Paragraph 4, Your Honor.
10            They have also tried to suggest, well, these are fact
11   witnesses.  But you heard Mr. Oles say he can't explain what
12   they want to do because he's not a technical expert.  They are
13   acknowledging this is technical expertise that they want to put
14   into the record.
15            In Paragraph 5, they say Mr. Davis' witnesses,
16   meaning Mr. Cotton and Mr. Lenberg, have not been accused of
17   any wrongdoing from investigations into activities taken by
18   Coffee County election personnel.  That is wrong.  We've
19   accused them of wrongdoing.  The Coalition plaintiffs,
20   Mr. Davis himself, in filings in this case have accused them
21   explicitly of wrongdoing.
22            And when they refer to his investigations into
23   activities, already you have seen us part ways because we say
24   it is an unauthorized breach.  This was not some forensic
25   investigation.
```

EXHIBIT 9

```
 1          Which gets to the final point, Your Honor:  The
 2   parties work well together.  And I will say, even as to the
 3   State, we have lots of disputes.  We get annoyed with each
 4   other.  But we actually have an amicable professional
 5   relationship among the lawyers, which has developed well,
 6   particularly over the last year or so.
 7          There are things we don't agree on.  We present them
 8   to the Court.  Sometimes maybe the papers get heated.  But our
 9   relationship has gotten to be an amicable professional
10   relationship where we can talk through things.
11          As hard as it may be to believe, there are things we
12   resolve that don't reach the Court.
13          THE COURT:  Amazing.
14          MR. CROSS:  Amazing; right?
15          This is literally a grenade in the case because it is
16   at odds with, I think, where the State is on their substantive
17   positions in ways they certainly are not -- they are going to
18   dispute any kind of outcome determining fraud.  It is at odds
19   where we are.
20          And what is going to happen is Mr. Oles is going to
21   be on an island because no one can talk to him, no one can
22   coordinate with him, there is no privilege with him.  And we're
23   going to be in a case where Your Honor is going to have to deal
24   with these issues.
25          And the last thing is:  None of what he has offered
```

EXHIBIT 9

1   today appears anywhere in the record.  This notion that they

2   found evidence that findings manifested in the election -- they

3   were deposed, both Cotton and Lenberg.  None of them disclosed

4   what that is.

5          My understanding from our experts, who have been --

6   had to deal with them in other cases like Antrim, they have

7   misinterpreted things like log files in other cases like Antrim

8   it sounds like to make -- to offer opinions that are just

9   demonstrably wrong on the science.

10         So ordinary case, I would probably be where

11  Mr. Bedard is.  If they want to show up, let them show up.  I

12  certainly don't want an appeal issue.  But this goes way beyond

13  just showing up.

14         Thank you, Your Honor.

15         THE COURT:  Well, what -- I'm going to ask this both

16  to Mr. Brown and Mr. Ichter and to you as well, Mr. Cross, and

17  ultimately, of course, also to Mr. Oles.

18         Another alternative is:  Stick with the current

19  configuration and if Mr. Oles on behalf of Ricardo Davis wants

20  to either have his case segregated and just simply a second --

21  a second trial, I mean, he can proceed with one or -- before

22  you jump up, just sit.

23         MR. CROSS:  I heard the gasp, Your Honor.  We're not

24  unsympathetic.

25         THE COURT:  The young corner over there.

EXHIBIT 9

```
 1            MR. MILLER:  It is a hot corner.

 2            THE COURT:  The hot corner.  They want to go --

 3            MR. MILLER:  We've got to make sure that we are not

 4   okay with two trials in this case.

 5            MR. RUSSO:  We'll have a lot more babies at that

 6   point.

 7            MR. MILLER:  Don't torture your wife that fast.

 8            THE COURT:  Well, it is a problem because -- I mean,

 9   they are truly inconsistent -- I mean, inconsistent positions.

10   To get this far, you know, is -- and with that degree of -- it

11   would be something else -- and with all due respect to

12   Mr. Oles, because he very nicely presented and honestly

13   presented his knowledge and his lack of knowledge and also his

14   earnestness about this.

15            But, you know, the problem is, A, it makes the trial

16   go longer; b, it confuses things because there is a highly

17   developed piece of evidence; c, this is a theory that never was

18   subject to summary judgment either and the motion that the

19   defendants' counsel -- that I might have resolved if it had

20   been done earlier.  So it is sort of like a back door way of

21   introducing evidence that never got in because Mr. Davis didn't

22   come up with this -- that he wanted to do this until very

23   belatedly.  And so that is -- those are all issues.

24            I guess the other thing that -- and if it was simply

25   that he wanted to have separate counsel to talk about -- to
```

EXHIBIT 9

```
 1   talk to, that is something different.  But when you
 2   affirmatively want to present evidence that no one else got to,
 3   even your co-plaintiffs, have a chance to say, no, this really
 4   can't go in because it sabotages our case that we have worked
 5   on and also it never went through the vetting process that has
 6   been part of the federal court procedures because you're
 7   introducing evidence and a theory and facts that were not part
 8   of the case, it is challenging.
 9            MR. OLES:  May I respond?
10            THE COURT:  Yes.  If you would come up close to the
11   microphone, you can.  But not from there.
12            MR. OLES:  Thank you, Your Honor.  I don't want to be
13   presumptuous.
14            THE COURT:  No.  That's all right.
15            MR. OLES:  Thank you.
16            Judge, with all respect to Mr. Cross, I think he is
17   articulating a theory that we have not announced nor is it our
18   intention to do.  Okay?  So this fear that somehow this case is
19   going to morph into something completely different than what it
20   is, is completely overblown and completely unjustified.
21            The evidence that we're -- my client is seeking to
22   put in has been in discovery.  They have known about these
23   witnesses.  These witnesses have been deposed.  They are not
24   new quantities.
25            All we're really talking here is about a difference
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1  between co-plaintiffs about the persuasiveness of the evidence

2  that is going to be put before the fact-finder in this case.

3  Those kinds of disagreements or agreements or, you know,

4  differences of opinion, I guess, happen all the time when you

5  have litigation that has multiple parties on each side.

6          And that is really all we're talking about here.

7  We're not talking about anything that I anticipate is going to

8  extend this trial for any real length of time.  A few hours.

9  And, again, I can't speak for how long cross-examination is

10  going to take.  But I certainly don't anticipate that the

11  direct testimony on this is really going to add significantly

12  to the length of this trial.

13          All I'm trying to do here as my client's advocate is

14  to make sure that after he spent six years in this case that

15  the evidence that he believes is compelling in this case

16  because of his professional background and because of his

17  desires as the client that he wants the fact-finder to be able

18  to consider -- and I think it is an important point and I have

19  mentioned that in the motion that my client was not -- his

20  opinion and his desire was not sought by this group of learned

21  counsel.  And that is no -- I am not denigrating counsel at

22  all.

23          THE COURT:  You are saying that he asked for them to

24  call Mr. Lenberg as a witness?  I mean, obviously they did for

25  deposition.  But are they --

1         MR. OLES:  Well, I don't want to go into

2  attorney-client privilege matters.  But it is my

3  understanding -- and I have personal reason to know that --

4  that it was not an intention to use these two witnesses by the

5  remainder of the counsel in the case.

6         And so he really -- my client was in a position

7  either, you know, to his mind waste the six years that he has

8  already put into this or ask this Court's permission,

9  understanding what this is going to do at 11:59 in this case,

10  which is huge.

11         But still I don't think -- he just felt like he had

12  no option except to come here and see if Your Honor would

13  permit this what we hope to be a very minor change in the

14  procedure with evidence that is already in discovery in the

15  case.

16         Thank you.

17         MR. CROSS:  Your Honor, could I suggest a solution?

18         THE COURT:  All right.

19         Are you near a microphone?

20         MR. CROSS:  I am sensitive to Mr. Bedard's point

21  about appeal.  Although, again, I think that is a nominal issue

22  because of the discretion you have.

23         But if what they are now saying is they just want to

24  have some discrete piece of evidence to put on, Your Honor

25  could deny the motion without prejudice or you could allow

1    Mr. Oles to represent him in whatever capacity but not appear

2    in the case in the trial.  And once we get towards the close of

3    our evidence, they can make a new motion, put in a proffer of

4    what specifically they want in, and Your Honor can decide at

5    that point is it admissible, is it consistent with the

6    positions taken before, is it appropriate.

7            And so you don't have to resolve it now.  No one is

8    saying he doesn't get his counsel.  And at least then, you're

9    deciding it on a trial record of whether this actually belongs

10   in this case.

11           MR. BROWN:  Your Honor, just for the record, Mr. Oles

12   said that -- something to effect that Mr. Davis had been told

13   by us that we were not going to use the testimony of Lenberg

14   and Cotton.

15           The question wasn't asked.  And had it been asked, we

16   would have said we are using their testimony.  It is in the

17   record.  It is in the pretrial order.  We have lines and lines

18   of deposition testimony from each of them in the record.

19           So that is just not factually correct.  The record is

20   voluminous, and that is one of the reasons why it is difficult

21   for counsel to come in at this late -- at this late date, I

22   think.

23           So we would just like to present that.  Thank you.

24           MR. OLES:  Judge, we do agree with Mr. Brown that

25   some of his -- some testimony from these witnesses is in the --

EXHIBIT 9

1   in the designations.

2          But as the Court knows, there's lots and lots of

3   lines and lots of pages of testimony.  And the ones that my

4   client is interested in getting are not in this.  So that is

5   why we are here.

6          THE COURT:  All right.

7          Pop-up king?

8          MR. BEDARD:  Thanks again, Your Honor.  I know this

9   has been an extended discussion.

10          I just want to make clear I think there's two

11   separate issues here.  There's whether Mr. Oles can appear for

12   Mr. Davis, and then there is whether he can amend his pretrial

13   order and do other things in the case.

14          Our concern is, by not allowing him to appear, it

15   creates a Fifth Amendment constitutional due process issue for

16   Mr. Davis.  Because, look, it is inconvenient for us, just as

17   much as it is for Mr. Cross and Mr. Brown, to have him appear

18   late in this stage.

19          We obviously fundamentally disagree with his theory

20   of the case, just as we disagree with all of the plaintiffs'

21   theory of the case.

22          THE COURT:  Shocking.

23          MR. BEDARD:  Shocking exactly.  We may have

24   substantive objections to the new evidence he wants to

25   introduce.  We'll certainly move on that when the time comes.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

1  But I think we need to remember it is the plaintiffs' case.  It

2  is not Mr. Brown's.  It is not Mr. Cross'.  And it is the

3  plaintiff's right to choose his own counsel.

4  So as much as we might disagree with Mr. Davis, we

5  are just very concerned about the issues that creates on

6  appeal.  And we'll leave it there.

7  THE COURT:  All right.  Well, I will take it under

8  advisement.  Thank you.

9  I've got to find my agenda again.  Each time I get

10  into a new subject, I seem to lose it.  All right.

11  We didn't -- I already ruled on the question of

12  30(b)(6) deposition designations in addition to live testimony.

13  So that is taken care of.

14  As to Secretary Raffensperger being available to

15  testify as a witness, I have spared him for a significant

16  period of time when it was not necessary to have him as a

17  witness.  I understand at this juncture why the plaintiffs

18  believe that they do need Secretary Raffensperger as a witness

19  to testify on the specific issues that they have identified in

20  the course of the summary judgment motion and the statements

21  made because nothing else is going to replace that at this

22  point.  They didn't depose him.  There was not an agreement for

23  that.

24  But in any event, it is -- you know, I can certainly

25  put time limits on it to be able to make sure that it is not

EXHIBIT 9

```
 1   abusive.  But he is a central figure in this case, and he's
 2   head of the department and has been so throughout the --
 3   basically all of the relevant period now.  And he has made a
 4   great number of statements that are relevant, and he continues
 5   to.
 6              And, you know, from my perspective, he could also be
 7   a very positive witness for the State as well.  I have seen him
 8   testify.  He is a very articulate, clear speaker.  And I know
 9   his -- as with all high-level officials, he is busy.
10              But this is -- what could be more important than
11   elections to the Secretary of State.  And he has a position.
12              But I certainly am willing to hear, because of the
13   importance, from counsel -- one or multiple.
14              MR. MILLER:  Thank you, Your Honor.  I would just
15   like to address that briefly.
16              Back in the spring of 2022, Your Honor was presented
17   a -- or excuse me -- a 30(b)(6) deposition notice with multiple
18   additional topics and a deposition notice for the Secretary of
19   State, Mr. Raffensperger personally.  That was the last
20   significant involvement that Mr. Ichter had in this case was
21   serving those to us.
22              At the time, Your Honor correctly pointed out the
23   issues with the apex doctrine and said, plaintiffs, if you want
24   to do this, I'm going to need you to make this specific
25   showing.  Ever since then, they have never attempted again.
```

EXHIBIT 9

```
 1    They never sought it again.  They never pointed out, you know,
 2    what it is that is specific.
 3            And as to the issues that they have pointed out in
 4    their briefing, Your Honor, these are opinion statements of
 5    Secretary Raffensperger that just aren't relevant to the case.
 6            What Secretary Raffensperger's personal opinion is as
 7    to some specific matter has no relevance to whether the BMD
 8    system burdens the constitutional right of the plaintiffs in
 9    this matter.  It is Secretary Raffensperger's personal opinion.
10            And that is the distinction, you know, with respect
11    to the Fair Fight case where Judge Jones did allow the
12    deposition of Governor Kemp.  Because the very specific issue
13    there were allegations related to campaign speech that the
14    plaintiffs insisted were evidence of intentional discrimination
15    for purposes of their 15th Amendment claim.
16            As it turned out, they lost on the merits of that.
17    But that was the basis as to the specific knowledge from that
18    individual.
19            Secretary Raffensperger is not going to sit here and
20    be able to testify about, you know, what -- the workings of the
21    Dominion BMD system.  He is going to be relying on his staff
22    that is overseeing and deploying this.  And the plaintiffs
23    haven't shown what it is that they cannot get out of the staff
24    that they want out of the Secretary, other than these opinion
25    statements that have no relevance to the issues at trial.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1          THE COURT:  Do you want to respond?

2          MR. CROSS:  The way Your Honor started is exactly

3     right.  The Secretary has made very specific statements.  I

4     think it is surprising and it is probably surprising to the

5     public to hear his counsel say he is only offering opinions.

6     He does not state these as opinions.  He's very specific about

7     his claims on the security of the system in light of this case.

8     Right?

9          He has specifically dismissed Dr. Halderman's

10    findings.  He has talked about them at length publicly.  He has

11    talked about the security of the system, that it has health

12    checks they talk about.  He emphasized his logic and accuracy

13    testing.  He talks about very specific things that he says

14    secure this system and render our claims meritless.

15          If now we're hearing -- and these are his lawyer's

16    words -- he cannot talk about the workings of the BMD system

17    and he is merely offering an opinion, I guess that raises a

18    whole separate concern.  But we're entitled to examine him on

19    that.

20          The last point I'll make -- two points.  One, he is

21    on their own witness list.  They put him on their witness list.

22    So they acknowledge that he may need to testify in this case.

23    So I don't know how they can excuse relevance.

24          And the last is:  Where Mr. Miller started was purely

25    on a deposition.  We're entitled to depose witnesses before

EXHIBIT 9

1   they testify as a general rule.  We're not required to depose

2   witnesses.

3          And what is disappointing is we tried to get through

4   this case without ever needing to examine him.  We respected

5   the fact that he is the Secretary and there is an apex standard

6   there.  We are now at trial.  And for all of the reasons we've

7   identified, we need to ask him about his specific knowledge,

8   his specific statements.  That we didn't depose him is totally

9   beside the point.

10          And what we didn't hear anything about are his

11   statements in Coffee County.  These are not opinion statements.

12   He went on the news.  He went and did an interview and said

13   they conducted an investigation in Coffee County.  He is the

14   only who has ever said that.  He had very specifics -- they

15   interviewed people.  Those people were not forthcoming.

16          That is why they thought this didn't happen.  Those

17   are specific factual claims.  And he is the only one who has

18   ever said anything about it.  We need to know what he is

19   talking about.

20          And they have no response at all to each of the

21   State's witnesses we asked specific questions about.  We have

22   put the testimony in the record for Your Honor where they said

23   you have to ask Secretary Raffensperger.  We asked those

24   questions.  They said ask him.  We're entitled to do that at

25   trial.

```
 1              THE COURT:  How much time do you think you'll need?

 2              MR. CROSS:  It is a good question, Your Honor.  I was

 3   going to suggest a way to do this is where you went, to impose

 4   a time limit.  We have no problem with that.

 5              I think we need to talk to get a better sense of

 6   that.  So I don't want to talk without talking to them.  But it

 7   is not long.  We're not thinking -- I would say it is not

 8   multiple --

 9              THE COURT:  When we take a break -- take a break

10   and -- when we take a break, because I'm going to have to go to

11   the restroom at some point here, let me know.

12              MR. CROSS:  Okay.

13              THE COURT:  We'll take a five-minute break.

14              (A brief break was taken at 2:50 PM.)

15              THE COURT:  So what sort of time are we talking about

16   for the Secretary's testimony?

17              MR. CROSS:  We would expect to get it done in no more

18   than an hour, Your Honor.

19              THE COURT:  Between you both?  I mean, the

20   plaintiffs' side.

21              MR. CROSS:  Plaintiffs.  Plaintiffs collectively, no

22   more than an hour.  We would maybe ask for a little flexibility

23   if we get long-winded answers.  But that would be the target.

24              THE COURT:  Well, understanding the ways of the

25   world, I'll say 75 minutes.
```

EXHIBIT 9

```
 1          MR. MILLER:  Judge, I just wanted to clarify this is
 2     the Court's final order.  I would just like to make sure we
 3     know if this is --
 4          THE COURT:  Yes, that is my order.  I mean, I think
 5     that there are -- I will formalize it because of the fact that
 6     it is -- because of the nature of it.  But it is my decision.
 7          I will explain -- I mean, just because of the passage
 8     of time here, I will write something short about it and the
 9     other supplementary findings.
10          But I think he is a necessary witness.  And I don't
11     think that the time proposed is so excessive that it will
12     invade his -- his duties in some ways.  And we're talking about
13     his location being essentially six minutes from this
14     courthouse.  Even by walking, it is about ten minutes.
15          So -- but I will issue an order on it.
16          MR. MILLER:  Thank you, Your Honor.  We just request
17     the order be entered as soon as possible.  Thank you.
18          THE COURT:  Yes.  We will try to do it early next
19     week.
20          As will we enter an order on the motion to add
21     counsel for Mr. Davis.  And just formally because we don't have
22     the individual who is here who sought to intervene, we will
23     issue something in writing on the denial of the intervention so
24     that she knows.
25          Before I get to the MITRE report, which was, I think,
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

 1  the last thing, there was also a question sort of parallel to

 2  the issue about the voter registration system.

 3          The defendants sought clarification also on another

 4  item which was --

 5          Annie, what was the other item?

 6          LAW CLERK BORING:  Poll Pads.

 7          THE COURT:  Poll Pads.  Excuse me.

 8          How you -- I think this was particularly the

 9  Coalition plaintiffs.

10          But were you intending to proceed in any way?  I

11  mean, I ruled on Poll Pads.  But if you think -- you seem to be

12  contending they are still relevant -- so --

13          MR. CROSS:  Yes, Your Honor.  The distinction that

14  Your Honor drew, we think, clearly in your order is between a

15  claim that seeks relief specific to the Poll Pads, on one hand,

16  and evidence about the Poll Pads that might be relevant to

17  another part of the case.

18          We quite understand that we're not seeking and you're

19  not granting any evidence specific to, like, a paper pollbook

20  backup and we're not seeking that.  However, as we pointed out

21  in our summary judgment motion papers, there is evidence about

22  the Poll Pads that is germane to the entire security of the

23  system.  For example, the Poll Pads are now connected to the

24  internet.  That is one example.

25          But with respect to both the Poll Pads and the voter

EXHIBIT 9

```
 1    registration, I have spoken to Mr. Cross.  We do not know the

 2    specific evidence that they are complaining about in advance.

 3    And we do not know exactly what evidence that we will present.

 4    But we can project to the Court that will not be substantial

 5    evidence on either one.  It is limited discrete issues.

 6            In terms of the motion for clarification, since we've

 7    had the opportunity to talk about this today, we weren't going

 8    to file another brief on it in response to it.  We oppose it,

 9    and we'll brief it, if necessary.

10            But on the voter registration piece of that -- this

11    is 1727 at 1 -- we believe your order could not be more clear

12    and actually answers the question that they present.  They ask

13    what evidence about the voter registration system is going to

14    be allowed, if presented.

15            Your order that they quote says that present evidence

16    on the elements of the DRE system that carried over to the BMD

17    system specifically involving voter registration database as a

18    component of existing voting system.  And so you have answered

19    the question.

20            And if we have evidence that does not meet that

21    standard, it is not going in.  If we do, it does get in.

22            So your order is very clear.  I don't see any

23    question remaining about that.  I don't know if we can meet

24    that standard or not.  But it is premature to make that

25    decision.
```

EXHIBIT 9

1    On the -- on the -- on the Poll Pads, they are not

2    asking for clarification.  They just disagree with your ruling.

3    They say, and the Court's order lacks any clarity on how

4    evidence regarding this dismissed claim is plainly relevant

5    other than saying it is so.  Sort of a cheeky description of

6    your order.

7    THE COURT:  I guess it wasn't long enough -- the

8    order.

9    MR. BROWN:  But I would just --

10   THE COURT:  I couldn't match Judge Jones' 500 pages,

11   and I didn't even match my own self.  I just had a mere 150

12   pages.

13   MR. BROWN:  Yeah.  So I think it is -- I think it is

14   clear that we have the burden of showing by foundation and

15   relevancy if a particular piece of evidence at that moment in

16   time in the case is germane to our overall claim.  And we

17   understand that if we don't meet that standard of relevancy

18   that it will be excluded, whether it is about the Poll Pads,

19   the new voter registration -- new voter registration system, or

20   the new GARViS one.  We understand that.

21   So we would ask that the motion for clarification or

22   modification 1727 be denied without prejudice to raising

23   evidentiary questions in the context of the trial.

24   Thank you.

25   MR. MILLER:  So, Judge, I'll start backwards from

1    there because it appeared to us from the summary judgment order

2    of the Court determining plain relevance of a topic for the

3    admissibility at trial, we would have no ability to, you know,

4    object to that already ruled upon issue.  Or if we did, you

5    would be quite annoyed in that you have already told us that

6    you have determined the relevance.

7            THE COURT:  Well, I don't have -- the topic is

8    potentially relevant and could plainly be relevant.  It doesn't

9    mean that the evidence they actually produce will be relevant.

10   There is a distinction.

11           MR. MILLER:  Okay.  Second, Your Honor, it is the

12   scope of what is the type of relevant evidence.  You know,

13   Mr. Brown just gave one example.  That is helpful.  That is

14   what we are trying to understand from the order where it is the

15   operation of the Poll Pads, you know, is relevant for the

16   issues at trial.

17           We're scratching our heads a little bit as to what

18   operational issues --

19           THE COURT:  Well, it is exactly this.  It is being

20   connected to the internet and is it a source of --

21           MR. MILLER:  Being connected to the internet.  Okay.

22           THE COURT:  That is right.  That's really the large

23   issue.

24           MR. MILLER:  Then with respect to the second --

25           THE COURT:  I mean, there may be something else they

EXHIBIT 9

1   raise, but that was what was plainest to me.

2          MR. MILLER:  Okay.  With respect to the second issue,

3   going in reverse, the first one addressed in our motion, you

4   know, as Mr. Brown just pointed out, the voter registration

5   system relevance was couched in terms of what is carried

6   forward from the DRE system to the BMD system.

7          As a starting point, there has been no finding of,

8   you know, malware living on the DRE system.  But setting that

9   aside, the voter registration system that is operable presently

10  and will be operable at the time that the Court enters the

11  order is also not carrying forward.  It is GARViS.  So that is

12  a scope issue.

13         As we have raised before, Your Honor, we don't

14  believe the voter registration system is part of the case.  We

15  will make the objection here because the context in which the

16  plaintiffs plead their burden as to how they are burdened by

17  the right to vote is about the verifiability of the BMDs, the

18  difference in treatment between the BMD voters and absentee

19  voter.

20         It is really particularly an example with respect to

21  an equal protection claim that the two, an absentee and an

22  in-person voter, are treated differently by the BMD system and

23  the absentee system.  The voter registration database would

24  make absolutely no sense to be a part of that equal protection

25  claim.  Because either way, you have got to be registered to

EXHIBIT 9

```
 1   vote, whether you are voting absentee or you're voting in

 2   person.

 3          Your Honor, we've asked for the clarification not to

 4   the extent that we're asking the Court to reconsider the order.

 5   We want some ground rules as to what kind of scope we are

 6   talking about.  Such that when we object and bring this up at

 7   trial, you're not going to be frustrated with us that this is

 8   an issue.  We want to be upfront that we are a little unclear

 9   as to the scope of the relevance here.

10          THE COURT:  Well, let me, first of all, ask the

11   plaintiffs' counsel who want to introduce evidence as to this

12   what you had specifically in mind.  I mean, I know what in the

13   past I thought.  But it doesn't mean what -- it is, in fact,

14   consistent with your plan now or your intentions.

15          MR. BROWN:  I do not know, Your Honor, specifically

16   what we intend to introduce with respect to either the old or

17   the new voter registration system.

18          I would say that some of the motions in limine appear

19   to be more directed at discovery to kind of fish out what we're

20   going to say about things, rather than saying that there is

21   some legitimate evidentiary objection that can be heard before

22   trial.

23          And -- but at this point sitting here, I do not know

24   specifically what evidence we intend to bring in on the voter

25   registration.
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

```
1              THE COURT:  I will just simply comment on this basis.
2     Obviously, they have to have competent evidence that is
3     connected to the main claims.
4              But one of those claims is simply -- just as you
5     asked about the Poll Pads, since the voter registration system
6     is another data system that is feeding into the entire system
7     as a whole -- I mean, when you go in on the Poll Pad, you are
8     pulling up somebody's name that comes from a voter registration
9     list.  It is really -- that was what I had in mind.
10             And I don't know whether they are going to be able to
11    do anything about interface.  I just simply left it as an open
12    question.
13             So I didn't think you had -- either party had
14    particularly fully presented it or fully defeated it as
15    relevant.
16             So that is -- it may be -- it may disappear into the
17    ether, and it may not.  And if I find that plaintiffs are
18    wasting our time with it because they -- they are just throwing
19    a lot of mud at the -- mud in hoping that something sticks,
20    then I will tell them.
21             Because none of us want to be here for weeks on end
22    without reason.  And I don't want to be writing about something
23    that is irrelevant, either.
24             So I advise the plaintiffs to be very careful about
25    wasting our time.  And -- but I think it is still -- it is
```

EXHIBIT 9

```
 1    still out there.  But it doesn't mean it really is.  It means

 2    you've got to tie it all together and effectively so and

 3    efficiently.

 4            In case I didn't say it -- though I think I did.  But

 5    I want to make clear that I will issue the beginning of next

 6    week, either Monday or Tuesday, also an order on the question

 7    of counsel's representation of Mr. Davis, the additional

 8    counsel.

 9            As I understand it, Mr. Ichter has -- believes that

10    you're medically able to continue through trial in either

11    event?

12            And if you're not, then that is -- I understand that

13    as well.  I mean backs are a sensitive matter.

14            MR. ICHTER:  I will soldier on bravely, Your Honor.

15            THE COURT:  Now, there were a number -- just speaking

16    about soldiering on, there were a number of people who remain

17    on the docket but I don't think really are doing anything.

18    Maybe they have withdrawn.

19            But I'm looking at -- next to Mr. Ichter's name,

20    there was Mr. Ney -- William Ney.  I don't know that he is

21    still here.

22            Did they actually withdraw, or are they -- people

23    like Mr. Ney?  I don't mean to zone in on him.  But I just

24    think it is a little confusing when we have lots of people --

25            MR. BROWN:  Excuse me, Your Honor.  He would like to
```

```
 1   withdraw.  And if it would help, I will put in papers to get
 2   him taken off.  He was on the case very, very early on.
 3            THE COURT:  Right.  I know.  But there's a lot of
 4   people like that.  And it is just -- A, they will keep on
 5   getting notices one way or the other, as long as they are there
 6   and, B -- even if it is a confidential matter; and, B, I
 7   just -- it is a little confusing.
 8            If they would authorize you to file something on
 9   their behalf, I mean, you could stick all those authorizations
10   on to the notice.
11            MR. BROWN:  I will see what we can do to clean that
12   up, Your Honor.
13            THE COURT:  I know you have a lot of other things to
14   do.  So I don't mean to clutter you.  But it just sort of
15   struck me when we were talking about substituting, adding, et
16   cetera.
17            With respect to the motion as to the MITRE report, I
18   make these findings:  The report is the product of a violation
19   of the Court's protective order at the time Dominion passed it
20   to MITRE without permission.  Two, the inherent -- there is an
21   inherent unworthiness of the report for purposes of this
22   proceeding.  I'm not making a finding that the whole report is
23   untrustworthy.  But for purposes -- its admission or its use
24   for cross-examination, there are no authors who are identified.
25   It is -- we don't know the background -- particular background
```

EXHIBIT 9

1    of each individual.  It is not a published report.  It is not a

2    learned treatise or published in a reputable publication.

3         I'm not saying that MITRE isn't a reputable

4    organization.  It is.  But we don't have any more information

5    than what I have described.

6         It provides a -- the report itself provides a limited

7    understanding of the methods used to reach the findings.  And

8    there was no indication that the MITRE folks who worked on it

9    had ever actually studied its -- the actual implementation in

10   real life of the software.

11        The question of it not being published or a learned

12   treatise is important because it doesn't -- it means that the

13   document cannot meet the residual exceptions to hearsay.

14        And even -- the Court's understanding also is that

15   the State did not cite this -- the MITRE report as evidence it

16   intended to rely on until after the regular discovery deadline.

17   First cited by the State in January of 2023 in support of the

18   summary judgment briefing.

19        Yes, it had been on the docket before.  But it was

20   filed without authorization, as you-all know, by Dominion

21   itself or by MITRE itself, neither of which are a party.  It

22   was filed just for clarity by Dominion, a nonparty, in

23   September of '22.

24        I realize that the State is not explicitly offering

25   the report as expert testimony.  But it did announce its intent

EXHIBIT 9

1    to use it as if it was a learned treatise or a published

2    document from an identified source, not just simply MITRE, but

3    that we actually knew who it was being produced by.  So it is

4    sort of back door expert testimony.

5         Finally, though impeachment and refreshing

6    recollection are context specific uses, it is not clear how the

7    report would be used for those purposes given the people who

8    have been named to testify and also the absence of the

9    information that I have already identified.

10        That doesn't mean the topics or the concerns flagged

11   in the report can't be raised but not via citing the report

12   itself.  I mean, those are issues that counsel obviously can --

13   whatever the concerns are that counsel can raise in examining.

14        But to rely on the report itself and be citing it to

15   Dr. Halderman as authority and to get it in through a back door

16   method, given the status of the report and the true ability of

17   counsel beforehand, given the record, to have obtained this and

18   the persistent efforts on the part of plaintiffs' counsel that

19   I am aware of personally being present at our meetings and our

20   phone conferences to get Dominion involved prior to the

21   creation of the Dominion report -- of the report by MITRE that

22   they retained and then also arranged for by breaching their

23   responsibility as to confidentiality, it is just objectionable.

24        I don't -- I think that it doesn't -- simply under

25   these circumstances and the volume of other information that

EXHIBIT 9

```
1    the State has to cross-examine, I think it is the appropriate

2    ruling under these circumstances.  And I know you object to it.

3    But your objection is preemptively noted because you obviously

4    have written about this.  Your position is clear in the record.

5            So those were, unless I have missed something, all of

6    the topics we had to deal with.  We have obviously a few orders

7    to issue next week.  And I know everyone is scattering to the

8    winds during the holiday season at the same time that they

9    don't get sleep.

10           So if I have to be, I am reachable.  I know that my

11   clerks -- that Ms. Boring will be here up until -- you are

12   leaving town Thursday?

13           LAW CLERK BORING:  Yes.

14           THE COURT:  We will be reachable if need be.

15           Is there anything else that you want to address at

16   this time?

17           MR. CROSS:  Just one clarification.  Sorry.

18           What did Your Honor say you were going to do with the

19   witnesses we raised that were new?  You were going to rule on

20   that later?

21           THE COURT:  Which -- I'm sorry.

22           MR. CROSS:  Sorry.  There were -- it was seven -- six

23   or seven witnesses.  It was the Dominion person, two from the

24   State, I think, Mr. Bernhard.  I didn't know if that was a

25   ruling that was coming later or how you --
```

EXHIBIT 9

141

```
 1            THE COURT:  I will issue a ruling on it on Monday --

 2            MR. CROSS:  Okay.

 3            THE COURT:  -- or Tuesday.

 4            All right.  The trouble is I should have ruled on it

 5     at the time that you raised it.  But now I've got to go back

 6     and see if there is -- what I'm doing.  All right.

 7            MR. BROWN:  I think we were winning the argument.  I

 8     remember being way ahead.

 9            MR. MILLER:  Kind of like how the Fifth Amendment was

10     going until lunch.

11            THE COURT:  All right.  So anything else?

12            Thank you for reminding me about that.

13            And all right.  If there is anything that is really

14     of significance, let us know.  And I hope that all other things

15     you can resolve.

16            I know that Mr. Gonzalez is here.  And many of you

17     have talked to him before.  And I don't know whether you want

18     to now.  But he has -- unless somebody has something you want

19     to talk about desperately now, I think we're at a close.

20            So my plan is to begin at 9:30 in the morning on the

21     9th.  We set that to meet the football needs, and now we're

22     sadly without a football team.  But it is good enough in the

23     finals.  It gives you an extra day.

24            If there is anything else, let me know obviously.

25     Okay.  We are through.  We can -- if you all want to meet
```

EXHIBIT 9

```
1    either alone or together or with Mr. Gonzalez, we have --

2    Mr. Martin can make any number of rooms available for that.

3    You just have to let him know.

4            So, Harry, what is the situation in the -- in the

5    counsel's room just in terms of just -- for them to get

6    together just to make a decision if they want to talk?

7            COURTROOM DEPUTY CLERK:  We have rooms available

8    here.  Of course, we have got our room back here.

9            THE COURT:  But that is kind of small for this group

10   of people.

11           COURTROOM DEPUTY CLERK:  We've got a much bigger room

12   out here in the hallway.

13           THE COURT:  Why don't you open that up.  And they can

14   decide how they want to proceed.

15           MR. GONZALEZ:  Your Honor, we can just all stay in

16   here when you are adjourned, if that is okay.

17           THE COURT:  Yes, you can.  That is fine.

18                   (The proceedings were thereby concluded at 3:31

19                   PM.)

20

21

22

23

24

25
```

EXHIBIT 9

```
 1                    C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   142 pages constitute a true transcript of proceedings had

10   before the said Court, held in the City of Atlanta, Georgia, in

11   the matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   18th day of December, 2023.

14

15

16   _____
     SHANNON R. WELCH, RMR, CRR
17   OFFICIAL COURT REPORTER
     UNITED STATES DISTRICT COURT
18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

EXHIBIT 9

**COURT REPORTER: [5]** 10/20 27/13
63/4 95/10 96/16
**COURTROOM DEPUTY CLERK: [7]**
27/3 27/11 27/14 27/18 34/5 142/7
142/11
**LAW CLERK BORING: [2]** 129/6
140/13
**MR. BEDARD: [12]** 5/21 96/14 96/17
96/20 97/2 98/13 98/20 99/1 99/6 100/1
121/8 121/23
**MR. BROWN: [25]** 4/21 33/25 37/9
37/18 37/21 55/9 74/3 75/24 78/19
94/10 94/18 94/25 95/12 107/8 107/12
107/20 107/23 108/3 120/11 131/9
131/13 134/15 136/25 137/11 141/7
**MR. CROSS: [74]** 4/11 4/13 9/6 9/9
12/24 16/15 18/3 18/10 20/24 21/5
24/23 25/1 25/7 25/16 25/20 26/10
26/13 27/21 33/24 34/6 36/10 36/24
37/17 37/22 38/11 38/17 38/21 43/17
44/8 46/12 47/9 47/11 51/25 52/21 53/1
53/8 53/12 54/9 54/15 55/8 57/1 57/4
57/8 57/12 57/19 62/23 63/5 63/7 64/3
69/11 75/10 77/4 82/12 82/22 84/3
88/22 88/24 90/12 90/16 91/8 112/9
114/14 115/23 119/17 119/20 125/2
127/2 127/12 127/17 127/21 129/13
140/17 140/22 141/2
**MR. FISHER: [8]** 5/1 58/24 60/6 61/5
62/5 62/7 67/7 68/19
**MR. GONZALEZ: [1]** 142/15
**MR. ICHTER: [10]** 4/24 94/19 95/23
96/8 109/15 109/21 111/6 112/4 112/6
136/14
**MR. JACOUTOT: [1]** 5/15
**MR. KNAPP: [1]** 4/19
**MR. McGUIRE: [1]** 5/6
**MR. MILLER: [65]** 5/13 9/12 9/24 10/5
13/23 16/5 25/9 25/22 26/12 28/7 28/17
29/10 30/7 31/1 31/14 32/20 32/24
33/14 42/8 47/1 47/24 48/2 49/21 53/19
53/25 54/7 55/11 57/21 65/18 68/8
68/10 72/19 75/16 77/14 77/19 77/22
78/14 80/10 80/13 81/7 83/5 83/20
86/20 86/25 87/23 88/2 89/19 90/22
92/5 92/10 92/20 93/3 94/2 116/1 116/3
116/7 123/14 128/1 128/16 131/25
132/11 132/21 132/24 133/2 141/9
**MR. OLES: [27]** 5/5 6/8 55/23 55/25
56/6 56/14 94/21 100/20 101/15 101/17
101/19 101/22 101/25 102/4 102/9
102/22 103/3 103/7 104/16 104/19
105/16 106/15 117/9 117/12 117/15
119/1 120/24
**MR. PICO-PRATS: [1]** 5/19
**MR. RUSSO: [24]** 5/11 20/2 20/16
20/20 28/20 32/14 34/22 35/21 36/19
36/25 40/9 40/17 40/20 41/7 41/12
41/18 41/23 42/3 42/5 43/16 43/18 44/7
50/4 116/5
**MR. SPARKS: [1]** 4/17
**MR. TYSON: [16]** 5/9 11/3 11/16 14/16
15/19 18/23 19/23 25/4 25/14 25/19
25/21 27/5 33/21 34/17 51/7 51/11
**MR. VON EUW: [11]** 5/3 10/15 10/19
10/21 12/9 23/4 23/11 29/23 30/3 30/21

MS. KAISER: [1] 4/15
MS. LaROSS: [1] 5/17
THE COURT: [221]

**'**
'21 [1] 81/4
'22 [1] 138/23

**-**
-- or [1] 141/3
-- what [1] 81/14

**.**
...CONT'D [2] 2/25 3/1

**1**
10:55 [1] 1/14
11:59 in [1] 119/9
11th [1] 10/13
12 [2] 8/15 26/7
12:30 [1] 54/22
12:36 [1] 70/5
13 [1] 8/15
1383 [1] 1/25
142 [1] 143/9
15 [4] 1/13 4/2 26/12 93/1
150 [1] 131/11
159 [1] 89/22
15th [3] 32/11 39/17 124/15
16 [3] 75/12 75/18 75/20
1727 [1] 130/11 131/22
1728 [2] 8/15 8/18
18 [1] 8/18
188 [1] 78/9
18th [1] 143/13
19 [1] 21/7
1983 [1] 75/19
19th [3] 80/8 80/10 80/13
1:17-CV-2989 [1] 4/8
1:17-CV-2989-AT [1] 1/6
1st [1] 35/22

**2**
20 [5] 8/18 14/6 17/8 26/5 31/25
20-some-odd [1] 14/6
2020 [1] 13/17
2021 [5] 47/13 50/1 102/16 105/7 113/1
2022 [4] 44/16 44/18 85/5 123/16
2023 [4] 1/13 4/2 138/17 143/13
20th [4] 80/8 80/9 80/11 80/14
21 [4] 12/25 21/7 25/20 25/21
215-1383 [1] 1/25
21st [1] 80/9
22nd [2] 27/12 32/11
2394 [1] 1/24
23rd [1] 32/12
24 [1] 81/10
25 [3] 10/4 25/19 84/17
26 [1] 85/22
2989 [1] 4/8
2:50 [1] 127/14
2nd [4] 28/8 32/18 32/20 32/22

**3**
30 [7] 6/23 13/8 41/24 69/21 70/10
122/12 123/17
30303 [1] 1/25

304 [1] 27/4
316 [1] 73/16
31st [1] 27/14
35 [1] 70/7
3:31 [1] 142/18

**4**
40 [2] 17/7 70/7
400 [1] 23/22
404 [1] 1/25
440 [2] 88/25 89/4

**5**
5.17 [2] 45/22 50/5
50 percent [3] 17/25 20/12 51/16
500 [2] 23/22 131/10
5th [3] 105/7 105/14 106/1

**6**
6:00 P.M [12] 10/9 11/25 12/16 12/17
16/12 21/21 21/23 22/4 22/9 22/19
22/22 22/24

**7**
75 [2] 1/24 127/25
7:00 [1] 12/17
7:00 P.M [1] 11/24
7:30 P.M [1] 21/25
7th [1] 10/11

**8**
800 [1] 68/20
8th [1] 27/19

**9**
90 [1] 1/4
9:30 [1] 141/20
9th [4] 10/11 10/14 27/22 141/21

**A**
A.M [1] 1/14
ability [9] 87/24 94/2 96/2 99/12 99/17
99/19 100/6 132/3 139/16
able [33] 6/5 8/23 9/1 12/14 15/23
19/13 35/13 42/16 43/25 70/9 83/11
86/2 86/14 88/2 88/4 88/17 91/25 92/12
92/17 93/14 94/3 99/18 99/19 102/10
102/10 104/14 106/10 109/3 118/17
122/25 124/20 135/10 136/10
about [149]
above [1] 26/1
absence [1] 139/8
absentee [4] 133/18 133/21 133/23
134/1
absolute [1] 97/23
absolutely [6] 10/5 42/10 55/18 55/18
65/21 133/24
absorb [1] 33/3
abstract [1] 59/25
abusive [1] 123/1
academic [1] 81/16
accept [1] 19/11
acceptable [1] 94/20
accepted [1] 38/23
access [13] 6/16 26/19 50/23 60/8
60/15 63/12 69/6 89/9 89/16 102/17
105/6 105/10 106/1
accessible [1] 105/22

**A**

according [1] 87/9
account [2] 8/3 25/2
accuracy [1] 125/12
accused [3] 113/16 113/19 113/20
acknowledge [2] 84/8 125/22
acknowledged [1] 46/4
acknowledges [1] 44/17
acknowledging [1] 113/13
across [1] 100/5
action [3] 4/7 18/5 18/6
actions [2] 66/24 76/18
activities [3] 108/1 113/17 113/23
actual [8] 13/13 59/7 63/2 70/21 79/8
 105/12 105/15 138/9
actually [27] 11/14 11/24 16/5 18/7
 19/4 32/15 44/13 47/20 58/5 62/11 73/1
 75/12 84/5 86/1 87/15 88/25 99/18
 104/13 108/10 112/20 114/4 120/9
 130/12 132/9 136/22 138/9 139/3
ADAM [2] 2/7 4/17
add [9] 20/10 43/18 46/24 77/4 95/24
 99/3 109/14 118/11 128/20
added [1] 110/9
adding [2] 18/15 137/15
addition [6] 6/23 69/22 122/12
additional [9] 36/11 39/21 93/3 99/2
 109/17 110/9 111/18 123/18 136/7
address [21] 12/6 12/14 14/16 19/14
 24/4 33/22 34/10 34/11 34/13 34/21
 45/17 45/20 51/21 51/23 56/17 56/23
 57/10 58/25 94/10 123/15 140/15
addressed [4] 33/12 51/17 87/17 133/3
addressing [2] 11/14 69/2
adequate [2] 7/24 83/7
adequately [1] 87/24
adhere [1] 78/7
Adida [1] 13/16
Adida's [2] 81/3 92/22
adjourned [1] 142/16
adjust [1] 21/4
administration [1] 6/13
admissibility [3] 67/25 111/23 132/3
admissible [2] 108/22 120/5
admission [3] 6/23 69/21 137/23
admit [2] 17/2 29/19
admitted [1] 66/17
adopt [1] 67/24
adopts [1] 67/23
advance [8] 10/24 11/7 12/15 18/15
 32/5 37/13 50/17 130/2
adverse [8] 6/17 58/1 59/9 59/14 59/21
 66/23 67/15 68/1
advise [1] 135/24
advised [1] 10/13
advisement [3] 53/7 57/18 122/8
advocate [1] 118/13
AEO [2] 91/10 91/10
affect [1] 101/9
affidavit [1] 92/22
affirmative [1] 84/11
affirmatively [2] 19/9 117/2
afield [1] 53/4
after [18] 1/6 11/18 32/10 47/4 56/9
 56/10 56/12 72/11 74/12 76/8 76/19
 78/25 82/5 84/24 93/4 96/24 118/14
 138/16

**B**
afternoon [1] 12/8
again [31] 9/5 15/9 15/11 16/16 24/4
 24/5 27/8 28/6 34/11 45/16 46/3 49/6
 51/4 53/23 68/25 85/13 85/14 85/14
 96/18 98/7 98/20 99/6 99/9 101/25
 104/10 118/9 119/21 121/8 122/9
 123/25 124/1
against [1] 66/23
agenda [3] 6/11 56/24 122/9
agents [2] 76/13 76/14
ago [2] 54/9 54/10
agree [9] 8/12 8/15 8/25 23/1 31/2
 67/24 80/17 114/7 120/24
agreement [9] 22/2 30/12 30/22 31/8
 39/9 95/8 95/13 95/14 122/22
agreements [1] 118/3
ahead [6] 12/16 12/20 23/18 41/3 97/1
 141/8
AIDED [1] 1/21
air [1] 28/13
al [4] 1/4 1/6 4/7 4/7
alarm [1] 73/12
alert [1] 78/25
aligned [1] 104/25
all [123] 4/6 6/10 6/11 7/16 11/9 14/11
 15/10 15/17 15/25 16/13 18/21 19/24
 21/6 21/24 22/1 22/16 23/1 24/12 24/13
 28/5 28/21 29/18 31/7 31/8 32/5 33/20
 34/14 35/13 39/16 43/3 43/4 46/4 46/22
 47/12 49/17 50/15 51/5 51/10 52/9 53/6
 53/14 53/18 54/11 56/9 57/17 60/21
 61/2 61/19 62/3 63/16 63/23 64/7 65/20
 68/12 70/5 71/18 73/22 76/11 77/10
 79/19 82/10 83/8 83/10 84/1 84/4 84/23
 85/17 87/2 87/12 87/23 88/14 89/10
 89/22 90/8 92/25 92/25 94/17 95/7
 95/19 95/19 97/1 100/1 100/9 101/11
 103/21 104/13 104/23 106/6 107/1
 108/23 108/25 108/25 112/7 116/11
 116/23 117/14 117/16 117/25 118/4
 118/6 118/13 118/22 119/18 121/6
 121/20 122/7 122/10 123/3 123/9 126/6
 126/20 134/10 136/2 137/9 138/20
 140/5 141/4 141/6 141/11 141/13
 141/14 141/25 142/15
allegations [1] 124/13
allow [9] 46/24 57/25 69/23 75/4 83/11
 83/14 84/21 119/25 124/11
allowed [5] 21/12 52/6 53/5 89/20
 130/14
allowing [2] 90/5 121/14
ALLOY [1] 3/6
alone [1] 142/1
along [3] 16/4 63/10 88/11
already [20] 8/3 22/16 28/2 31/24 56/6
 66/9 68/18 70/3 70/25 75/1 91/23 104/8
 111/23 113/23 119/8 119/14 122/11
 132/4 132/5 139/9
alter [1] 66/3
altered [1] 113/3
alternative [1] 115/18

**alternatively** [2] 22/5 80/24
although [3] 74/16 95/7 119/21
altogether [1] 71/17
always [11] 11/5 18/6 21/12 27/22 39/3
 44/18 47/22 70/14 83/14 102/12 112/20
am [16] 30/17 32/24 34/18 75/20 82/8
 83/10 87/19 88/12 108/1 109/6 111/21
 118/21 119/20 123/12 139/19 140/10
Amazing [2] 114/13 114/14
ambush [1] 16/22
amend [2] 30/16 121/12
amended [1] 47/5
Amendment [17] 6/17 33/18 60/10
 60/12 60/14 60/16 60/18 60/20 64/24
 67/19 68/1 68/13 97/21 108/11 121/15
 124/15 141/9
amendments [1] 34/16
AMERICA [1] 143/3
amicable [2] 114/4 114/9
among [2] 8/19 114/5
amount [4] 4/5 100/22 102/23 111/1
analysis [3] 67/23 67/24 68/6
analyze [2] 88/3 88/4
Anderson [2] 76/4 76/24
Anderson-Burdick [2] 76/4 76/24
ANDREU [2] 2/9 10/21
ANDREU-VON [1] 2/9
Annie [1] 129/5
announce [2] 4/9 138/25
announced [1] 117/17
annoyed [2] 114/3 132/5
another [16] 11/1 14/6 19/12 22/23
 27/25 43/9 43/22 49/21 53/15 79/10
 93/15 115/18 129/3 129/17 130/8 135/6
answer [3] 63/20 64/13 110/18
answered [2] 63/18 130/18
answering [2] 18/10 108/17
answers [3] 67/10 127/23 130/12
anticipate [10] 13/24 26/6 42/10 45/10
 48/13 49/6 51/13 62/18 118/7 118/10
anticipated [3] 14/21 31/22 32/2
anticipating [3] 25/11 26/8 29/18
anticipation [1] 25/3
Antrim [2] 115/6 115/7
any [64] 1/8 6/3 6/18 9/9 13/17 17/6
 19/25 25/3 27/16 28/4 29/4 29/9 33/12
 34/25 36/15 39/4 39/6 39/22 45/16 46/6
 48/8 49/7 52/3 54/6 56/22 65/10 65/16
 67/15 67/15 67/16 69/6 69/13 75/6 75/6
 76/2 78/11 83/20 84/15 86/7 87/7 89/23
 90/10 92/24 94/11 94/13 94/17 94/22
 97/13 98/8 101/8 104/9 108/22 109/7
 110/17 113/17 114/18 118/8 122/24
 129/10 129/19 130/22 131/3 138/4
 142/2
anybody [2] 19/2 59/1
anyone [15] 20/25 21/2 26/21 26/24
 39/4 46/16 53/14 56/22 78/23 80/15
 83/11 87/3 88/16 94/12 94/15
anything [30] 7/23 27/2 28/19 31/23
 33/23 37/5 53/4 55/4 55/5 55/7 55/10
 61/14 65/5 78/22 85/15 86/5 89/23
 92/15 94/23 109/13 109/15 118/7
 126/10 126/18 135/11 136/17 140/15
 141/11 141/13 141/24
anyway [1] 111/1
anywhere [2] 85/10 115/1

**A**

**apex [2]** 123/23 126/5
**apologies [1]** 70/14
**apologize [1]** 25/15
**apparently [2]** 19/5 56/19
**appeal [7]** 65/15 85/8 85/9 97/9 115/12 119/21 122/6
**appealable [4]** 65/10 97/6 98/8 99/20
**Appeals [1]** 73/25
**appear [9]** 38/24 47/17 99/20 100/6 120/1 121/11 121/14 121/17 134/18
**appearance [8]** 5/23 5/24 6/4 95/1 97/14 98/3 99/16 111/9
**appearances [1]** 4/11
**appeared [1]** 132/1
**appears [3]** 78/5 103/18 115/1
**application [1]** 67/4
**applied [2]** 71/14 73/18
**apply [2]** 68/14 68/15
**appreciate [4]** 86/10 88/10 109/11 112/6
**approach [3]** 17/18 46/19 88/10
**appropriate [4]** 17/18 95/4 120/6 140/1
**are [273]**
**area [1]** 79/5
**aren't [3]** 19/13 71/1 124/5
**argued [2]** 36/14 83/8
**arguing [2]** 62/18 82/10
**argument [4]** 77/11 84/25 85/21 141/7
**arguments [1]** 65/15
**arise [3]** 76/24 111/10 111/22
**arisen [1]** 48/19
**arises [1]** 58/10
**arising [2]** 74/6 74/10
**armed [1]** 87/5
**arms [1]** 93/5
**around [12]** 28/12 30/16 33/1 33/2 35/25 37/4 40/21 41/19 43/1 83/24 93/5 96/17
**arranged [2]** 54/24 139/22
**article [1]** 54/13
**articulate [2]** 74/7 123/8
**articulating [1]** 117/17
**as [197]**
**as-applied [1]** 73/18
**aside [3]** 73/21 99/18 133/9
**ask [20]** 9/6 15/10 17/20 23/17 26/17 63/15 65/9 65/16 67/9 84/15 100/12 115/15 119/8 126/7 126/23 126/24 127/22 130/12 131/21 134/10
**asked [18]** 12/10 16/25 44/16 57/25 59/10 63/2 79/13 84/14 89/2 89/3 111/7 118/23 120/15 120/15 126/21 126/23 134/3 135/5
**asking [26]** 12/13 18/21 19/4 19/5 57/12 57/20 58/18 59/8 59/21 59/25 63/23 64/1 64/4 64/5 70/16 71/13 72/1 72/2 95/24 103/10 103/14 103/15 106/5 111/18 131/2 134/4
**aspersions [1]** 79/16
**assessment [1]** 20/17
**assigned [3]** 93/15 110/2 110/3
**assistant [1]** 63/8
**assisted [1]** 91/4
**associate [1]** 93/23
**associated [1]** 110/14
**assume [3]** 9/9 10/9 21/17 104/19

**assuming [3]** 67/25 70/6 102/10
**ATLANTA [5]** 1/2 7/25 4/2 143/8 143/10
**attached [1]** 1/4
**attaching [1]** 1/7
**attachments [1]** 33/7
**attack [1]** 87/10
**attempted [2]** 72/23 123/25
**attempting [1]** 90/24
**attend [2]** 106/10 106/10
**attended [1]** 19/8
**attention [1]** 21/17
**attenuated [1]** 67/3
**attorney [7]** 72/8 81/1 94/8 94/14 98/12 108/12 119/2
**attorney-client [4]** 94/8 94/14 108/12 119/2
**attorneys [2]** 93/2 93/9
**audience [2]** 72/10
**auditing [1]** 81/19
**authority [7]** 78/3 98/15 98/16 99/7 99/14 112/11 139/15
**authorization [1]** 138/20
**authorizations [1]** 137/9
**authorize [3]** 58/1 80/1 137/8
**authorizing [2]** 58/16 81/14
**authors [1]** 137/24
**available [9]** 39/16 80/16 89/15 90/20 96/1 106/25 122/14 142/2 142/7
**avoid [2]** 97/6 98/8
**aware [3]** 49/13 49/14 139/19
**awfully [1]** 82/1

**B**

**B-E-L-L-E-W [1]** 39/22
**B-O-R-E-N [1]** 36/12
**babies [1]** 116/5
**baby [3]** 27/25 28/8 28/11
**back [18]** 20/11 32/14 46/23 62/4 70/7 70/10 70/13 82/3 82/4 94/3 94/4 97/8 116/20 123/16 139/4 139/15 141/5 142/8
**backache [1]** 30/20
**background [3]** 118/16 137/25 137/25
**backs [1]** 136/13
**backup [1]** 129/20
**backward [1]** 83/14
**backwards [3]** 32/15 87/19 131/25
**bad [1]** 98/2
**balance [1]** 37/11
**ball [1]** 79/7
**ballot [2]** 44/1 105/9
**bandwidth [1]** 53/2
**bare [2]** 24/11 24/11
**Barnes [6]** 13/18 43/15 44/6 44/7 44/22 51/18
**Barnes' [2]** 41/24 43/8
**based [7]** 15/2 59/14 59/24 68/12 88/7 109/23 111/10
**baseline [1]** 75/19
**basically [2]** 62/15 123/3
**basis [9]** 50/11 68/3 71/23 79/18 79/18 97/18 98/5 124/17 135/1
**be [263]**
**Beaver [3]** 35/21 38/20 38/23
**Beavers' [1]** 38/9
**became [1]** 91/1
**because [110]** 10/2 10/12 12/3 12/17

13/15/20 14/25 15/11 15/24 19/7 19/18 22/20 22/22 23/10 26/14 27/7 27/22 28/11 28/22 29/8 29/11 34/7 38/6 40/21 41/14 42/16 44/3 44/12 44/24 47/6 47/21 48/13 48/24 51/17 52/1 53/18 54/16 55/20 56/21 57/13 57/14 58/6 58/25 59/7 63/16 63/17 64/14 65/14 67/9 67/18 71/7 71/25 72/13 74/10 74/22 76/13 79/15 81/3 81/9 82/15 82/25 85/1 85/9 89/18 90/3 90/17 98/18 100/24 103/5 105/13 108/6 108/12 108/12 108/23 110/5 110/8 110/10 110/25 111/9 111/16 112/24 113/12 113/23 114/15 114/21 116/8 116/12 116/16 116/21 117/4 117/6 118/16 118/16 119/22 121/16 122/21 123/12 124/12 127/10 128/5 128/6 128/7 128/21 132/1 133/15 133/25 135/18 135/21 138/12 140/3
**becomes [3]** 48/23 49/25 82/25
**becoming [1]** 96/7
**BEDARD [5]** 3/6 5/21 96/14 96/20 115/11
**Bedard's [1]** 119/20
**been [73]** 4/5 8/13 11/5 15/3 34/15 34/20 34/23 36/15 36/20 38/13 39/3 39/23 41/22 41/23 42/5 42/19 42/25 43/1 43/5 47/1 47/18 47/20 48/9 50/6 50/18 54/11 56/7 58/21 61/16 64/14 65/6 73/2 79/11 79/12 80/22 81/5 81/18 90/14 92/2 95/6 95/13 95/16 98/1 100/16 100/20 100/24 101/1 101/5 101/12 103/21 104/2 104/20 108/15 108/23 109/23 110/1 110/1 110/2 111/16 113/5 113/16 115/5 116/20 117/6 117/22 117/23 120/12 120/15 121/9 123/2 133/7 138/19 139/8
**before [50]** 1/11 7/12 9/12 10/9 10/14 11/9 15/21 16/10 16/25 17/7 21/22 21/23 21/25 22/4 22/18 27/20 31/18 33/13 34/1 34/6 36/11 37/13 40/19 41/6 42/2 47/18 54/1 68/5 68/6 68/6 72/9 80/22 87/18 95/21 96/24 97/5 98/17 109/16 109/18 112/4 115/21 118/2 120/6 125/25 128/25 133/13 134/21 138/19 141/17 143/10
**beforehand [2]** 29/6 139/17
**began [1]** 10/10
**begin [3]** 30/16 40/9 141/20
**beginning [3]** 10/12 29/14 136/5
**behalf [11]** 3/11 4/14 4/16 5/24 6/5 74/4 95/1 100/4 111/9 115/19 137/9
**being [26]** 9/3 12/10 15/13 29/4 44/2 58/6 63/21 73/6 73/14 80/19 81/11 81/15 86/1 88/2 88/4 106/11 110/9 111/19 122/14 128/13 132/19 132/21 138/11 139/3 139/19 141/8
**belated [2]** 8/4 98/18
**belatedly [1]** 116/23
**belief [1]** 9/16
**believe [21]** 6/8 13/15 14/12 14/13 15/8 29/17 31/14 33/16 34/17 34/19 34/24 37/1 40/13 86/23 91/2 101/15 111/23 114/11 122/18 130/11 133/14
**believes [4]** 103/24 110/23 118/15 136/9
**BELINFANTE [1]** 3/6
**Bellew [4]** 39/22 41/24 43/7 44/21

**B**

**bells [1]** 73/12
**belongs [1]** 120/9
**Ben [2]** 13/6 101/13
**bench [2]** 70/22 71/23
**bend [2]** 83/14 87/19
**Bernhard [8]** 40/3 40/3 43/19 44/4 44/6 44/7 45/16 140/24
**beside [1]** 126/9
**best [1]** 7/18
**better [9]** 12/1 19/22 26/22 59/24 62/4 70/20 80/23 87/12 127/5
**between [14]** 21/20 40/24 52/3 56/11 64/10 64/23 67/5 93/18 99/10 104/20 118/1 127/19 129/14 133/18
**beyond [12]** 13/22 39/11 42/12 48/15 53/15 55/4 78/8 88/16 88/18 89/16 97/20 115/12
**bigger [1]** 142/11
**biggest [1]** 91/6
**bit [13]** 15/18 15/18 15/19 15/19 24/7 29/7 73/3 73/5 87/9 101/7 105/17 111/25 132/17
**blanche [1]** 59/13
**blocked [1]** 27/12
**blood [2]** 19/16 19/20
**BMD [13]** 6/18 69/7 69/14 72/6 72/18 73/15 124/7 124/21 125/16 130/16 133/6 133/18 133/22
**BMDs [5]** 38/3 40/5 89/24 91/2 133/17
**board [1]** 67/1
**boat [1]** 53/21
**bomb [1]** 101/7
**Boren [4]** 36/12 36/18 36/20 37/19
**Boring [1]** 140/11
**both [17]** 8/21 9/15 9/16 31/15 36/19 46/17 48/9 48/9 49/2 76/23 77/1 91/21 91/23 115/3 115/15 127/19 129/25
**bottom [2]** 31/15 85/22
**bound [1]** 24/9
**bounds [2]** 48/3 48/16
**BRAD [2]** 1/6 4/7
**brain [1]** 28/22
**Brands [1]** 78/4
**bravely [1]** 136/14
**breach [5]** 59/11 61/6 61/7 62/10 113/24
**breaching [1]** 139/22
**break [11]** 24/3 38/5 52/14 56/20 65/19 70/11 127/9 127/9 127/10 127/13 127/14
**breathed [1]** 10/1
**bridge [1]** 100/22
**brief [14]** 9/15 31/12 31/15 32/7 46/11 58/25 65/18 67/21 77/6 79/3 100/10 127/14 130/8 130/9
**briefing [2]** 124/4 138/18
**briefly [3]** 47/1 72/15 123/15
**briefs [3]** 31/11 63/25 101/4
**bring [9]** 21/16 31/4 38/25 85/6 86/2 88/2 89/12 134/6 134/24
**broader [2]** 15/6 76/20
**brought [2]** 79/13 104/11
**BROWN [12]** 2/13 2/14 4/21 46/12 74/3 94/22 111/9 115/16 120/24 121/17 132/13 133/4
**Brown's [2]** 77/10 122/2

**BRUCE [3]** 3/4 4/21 37/17 74/3
**BRYAN [5]** 3/7 3/8 5/9 5/15 11/3
**Buell [2]** 84/24 85/6
**built [2]** 88/25 89/6
**bulk [1]** 74/18
**burden [7]** 67/13 74/19 76/3 76/4 77/7 131/14 133/16
**burdened [1]** 133/16
**burdens [1]** 124/8
**burdensome [2]** 11/15 88/19
**Burdick [2]** 76/4 76/24
**burned [1]** 100/25
**business [7]** 2/9 5/3 10/9 11/6 21/21 22/4 61/22
**busy [5]** 32/20 32/22 32/23 33/2 123/9

**C**

**calendar [1]** 77/25
**call [63]** 8/23 9/1 10/17 10/18 11/12 12/11 12/21 12/25 13/8 13/11 13/14 14/2 14/6 14/7 14/12 15/17 15/25 16/19 17/6 17/11 17/21 18/1 18/12 18/14 18/18 19/2 19/3 19/15 19/17 20/4 20/6 20/6 20/7 20/9 21/3 21/3 22/19 24/14 35/11 35/23 37/12 37/13 40/8 41/18 43/13 46/14 46/17 48/12 48/12 48/22 49/10 50/22 51/12 51/19 51/19 51/22 51/22 54/17 101/12 102/7 102/9 105/13 118/24
**called [13]** 8/17 8/21 9/3 10/7 10/8 10/14 42/11 43/19 44/5 44/7 45/23 103/21 105/8
**calling [17]** 6/22 8/19 9/3 10/9 11/14 14/15 14/21 15/4 15/21 16/11 18/25 19/9 37/8 39/4 49/18 49/20 69/20
**calls [11]** 9/15 12/5 12/5 12/23 12/23 13/1 15/24 20/12 20/22 20/22 25/19
**came [6]** 29/21 44/22 72/25 77/24 89/18 91/4
**camera [1]** 72/14
**campaign [1]** 124/13
**can [97]** 7/18 9/18 9/21 9/22 11/21 12/2 12/21 17/16 18/19 19/23 20/11 20/11 20/13 20/18 20/22 21/4 21/16 21/18 23/1 30/5 30/10 31/25 34/4 37/14 42/22 45/7 47/9 47/21 51/14 51/17 51/20 55/21 56/23 57/10 57/15 58/25 62/2 62/5 62/6 62/6 62/16 62/23 64/13 65/21 66/20 67/21 67/21 70/6 70/6 70/6 70/14 77/11 80/16 82/13 82/21 83/15 83/19 83/21 86/10 91/10 91/19 91/21 92/9 94/4 94/16 96/17 97/25 99/15 100/3 105/18 106/1 106/4 107/24 109/10 114/10 114/21 114/21 115/21 117/11 120/3 120/4 121/11 121/12 122/24 125/23 130/4 130/23 134/21 137/11 139/12 139/13 141/15 141/25 142/2 142/13 142/15 142/17
**can't [29]** 5/25 19/2 28/20 36/22 38/6 39/19 53/1 53/5 53/10 59/6 59/13 64/21 65/2 65/6 65/23 67/8 67/8 74/22 80/18 86/2 86/5 87/13 92/9 92/12 90/9 92/4 113/11 117/4 118/9 139/11
**candidly [1]** 85/7
**cannot [5]** 48/7 86/21 124/23 125/16 138/13
**capacity [3]** 35/3 99/24 120/1
**care [5]** 34/4 69/23 97/3 98/7 112/14

**career [1]** 18/20
**careful [3]** 44/24 91/19 135/24
**carefully [1]** 104/7
**CAREY [3]** 3/5 5/13
**CARLOS [1]** 3/16
**Carr [1]** 78/4
**carried [2]** 130/16 133/5
**carrying [1]** 133/11
**carte [1]** 59/13
**CARY [3]** 2/19 4/24 106/16
**case [150]**
**cases [9]** 16/17 32/3 32/4 65/22 67/22 76/10 76/11 115/6 115/7
**cast [3]** 79/16 80/18 80/18
**causation [1]** 75/18
**cause [2]** 30/16 30/23
**caused [1]** 63/12
**cautious [1]** 71/25
**Center [1]** 43/8
**central [3]** 43/5 79/11 123/1
**centrally [1]** 97/5
**cents [1]** 112/8
**cert [1]** 74/1
**certain [3]** 102/23 108/17 111/24
**certainly [10]** 34/8 53/14 99/7 103/19 114/17 115/12 118/10 121/25 122/24 123/12
**certify [1]** 143/8
**CES [2]** 40/2 43/14
**cetera [1]** 137/16
**challenge [5]** 12/24 16/16 27/24 73/18 73/19
**challenged [1]** 105/17
**challenging [5]** 7/17 10/18 11/7 82/25 117/8
**chambers [1]** 46/2
**chance [6]** 17/25 18/1 28/1 51/16 104/12 117/3
**Chaney [1]** 63/9
**change [3]** 48/25 67/5 119/13
**changed [3]** 22/8 22/8 49/25
**charged [1]** 58/21
**checks [2]** 45/23 125/12
**cheeky [1]** 131/5
**chief [6]** 8/24 9/2 25/12 35/1 43/11 76/9
**choice [6]** 80/23 81/22 97/22 98/1 98/7 106/23
**choose [2]** 81/1 122/3
**choosing [1]** 81/2
**CHRISTIAN [3]** 2/9 5/3 10/21
**Christopher [2]** 39/22 44/21
**CIO [1]** 41/25
**Circuit [3]** 67/24 78/3 97/10
**circumstance [3]** 66/21 86/15 98/4
**circumstances [5]** 8/22 51/3 71/21 97/24 139/25 140/2
**cite [2]** 1/4 138/15
**cited [5]** 62/7 65/22 76/9 85/10 138/17
**citing [2]** 139/11 139/14
**City [1]** 143/10
**civil [3]** 4/7 8/6 98/1
**claim [15]** 69/16 72/24 73/4 73/13 74/6 74/10 75/8 108/5 108/23 124/15 129/15 131/4 131/16 133/21 133/25
**claims [11]** 73/14 74/12 76/21 76/21 76/22 77/1 125/7 125/14 126/17 135/3

**C**

**claims... [1]** 135/4
**clarification [13]** 6/19 7/4 70/1 78/12 78/13 78/17 93/4 129/3 130/6 131/2 131/21 134/3 140/17
**clarified [1]** 29/11
**clarify [3]** 19/14 90/23 128/1
**clarifying [1]** 9/6
**clarity [5]** 55/16 69/18 73/23 131/3 138/22
**class [3]** 18/5 18/6 45/6
**clause [3]** 76/10 76/23 76/23
**clean [5]** 24/6 48/18 79/20 79/20 137/11
**clear [27]** 9/19 13/23 16/3 17/18 45/9 53/19 58/5 59/2 65/6 69/9 91/9 92/10 92/14 95/25 96/4 97/8 108/1 112/15 112/19 121/10 123/8 130/11 130/22 131/14 136/5 139/6 140/4
**clearly [7]** 11/13 12/4 40/10 61/20 77/13 112/12 129/14
**clerks [2]** 32/4 140/11
**client [18]** 94/8 94/14 103/22 104/11 105/19 106/7 106/14 106/17 106/24 107/19 108/12 109/1 117/21 118/17 118/19 119/2 119/6 121/4
**client's [4]** 35/12 104/24 105/23 118/13
**clients [2]** 46/13 109/1
**clients' [1]** 95/5
**close [12]** 12/3 12/11 12/14 15/16 16/19 79/8 82/21 83/25 101/6 117/10 120/2 141/19
**closed [2]** 41/8 82/16
**closer [1]** 70/12
**clutter [1]** 137/14
**CM [2]** 1/2 1/3
**CM/ECF [2]** 1/2 1/3
**co [6]** 34/2 38/6 52/15 104/5 117/3 118/1
**co-counsel [2]** 38/6 52/15
**co-lead [1]** 34/2
**co-plaintiff [1]** 104/5
**co-plaintiffs [2]** 117/3 118/1
**COALITION [14]** 2/11 4/21 5/7 34/3 37/9 40/4 40/6 74/3 76/22 102/20 107/6 112/24 113/19 129/9
**code [8]** 42/15 43/24 43/25 86/8 88/8 93/18 108/4 108/7
**coding [1]** 48/15
**Coffee [16]** 58/20 58/22 59/11 60/9 60/15 60/23 61/17 62/9 66/8 70/19 70/19 101/21 105/8 113/18 126/11 126/13
**cofounded [1]** 42/21
**coincidentally [1]** 77/15
**collaboration [1]** 111/14
**colleagues [4]** 28/10 32/21 33/2 62/3
**collectively [1]** 127/21
**college [1]** 83/23
**color [1]** 75/19
**Colorado [4]** 39/6 49/16 50/21 51/4
**come [30]** 10/3 30/13 40/14 43/5 43/11 43/15 46/14 48/13 48/25 49/6 49/8 49/10 49/11 62/4 66/18 77/20 80/3 89/25 94/3 96/17 100/15 105/17 107/9 107/16 112/15 113/7 116/22 117/10 119/12 120/21

**comes... [1]** 8/12
**comfortable [1]** 96/6
**coming [16]** 11/5 11/10 12/20 31/3 42/24 47/7 48/17 50/7 52/2 52/3 52/4 66/18 82/3 82/4 83/2 140/25
**comment [2]** 109/16 135/1
**Commission [2]** 73/1 73/22
**common [2]** 95/8 95/13
**communicating [1]** 11/5
**communication [2]** 47/19 94/8
**company [1]** 43/22
**comparable [1]** 58/19
**compelled [1]** 70/23
**compelling [4]** 76/2 102/12 103/25 118/15
**competent [1]** 135/2
**complain [1]** 74/17
**complaining [1]** 130/2
**complaint [3]** 72/22 73/15 78/5
**complaints [1]** 47/5
**complete [2]** 11/18 14/22
**completely [9]** 13/24 17/10 19/6 28/7 38/7 97/15 117/19 117/20 117/20
**complex [1]** 16/17
**complexity [1]** 25/25
**compliance [10]** 6/19 69/7 69/14 72/6 72/18 72/21 73/9 74/20 74/21 77/3
**complying [4]** 74/14 76/5 77/8 77/12
**component [1]** 130/18
**compulsion [1]** 39/12
**computer [3]** 1/21 32/24 86/6
**COMPUTER-AIDED [1]** 1/21
**computers [1]** 79/24
**concern [19]** 23/13 45/21 45/25 47/20 47/21 47/23 63/24 72/16 81/15 81/20 85/25 86/19 86/20 86/21 88/12 92/7 97/4 121/14 125/18
**concerned [5]** 38/8 44/10 83/10 99/17 122/5
**concerning [1]** 65/24
**concerns [7]** 12/6 81/3 81/6 81/7 83/19 99/21 100/7 139/10 139/13
**concise [1]** 9/18
**concluded [1]** 142/18
**conclusions [3]** 93/10 102/20 112/23
**concomitant [1]** 68/1
**conduct [4]** 50/21 58/16 61/5 61/20
**conducted [1]** 126/13
**confer [5]** 11/9 21/25 22/6 23/16 52/15
**conference [2]** 1/10 47/4
**conferences [1]** 139/20
**conferral [1]** 73/8
**conferred [1]** 29/11
**confers [1]** 46/21
**confidence [1]** 15/23
**confidences [2]** 94/11 94/15
**confidential [2]** 78/23 137/6
**confidentiality [1]** 139/23
**configuration [1]** 115/19
**conflict [1]** 98/4
**conflicting [1]** 44/9
**confused [1]** 76/21
**confuses [1]** 116/16
**confusing [3]** 30/7 136/24 137/7
**confusion [2]** 69/10 75/14
**connected [5]** 58/1 129/23 132/20 132/21 135/3

**connection [5]** 29/2 70/18 94/23 96/9 101/6
**conservative [2]** 65/11 65/12
**consider [3]** 59/17 61/23 68/25 118/18
**considerable [1]** 106/7
**considered [3]** 68/2 82/5 83/6
**consistent [3]** 106/24 120/5 134/14
**consolidated [1]** 9/18
**constitute [1]** 143/9
**constitutional [4]** 97/22 98/9 121/15 124/8
**constitutionally [1]** 97/20
**consult [1]** 12/2
**consumed [1]** 56/25
**contemplating [1]** 90/17
**contending [1]** 129/12
**contention [3]** 105/21 105/23 105/24
**contentions [1]** 6/4
**context [9]** 6/15 49/5 56/18 77/24 81/8 90/25 131/23 133/15 139/6
**contingent [1]** 49/5
**continue [5]** 48/25 48/25 104/24 106/17 136/10
**continues [2]** 106/16 123/4
**control [3]** 32/3 98/23 99/7
**conversation [2]** 94/7 96/7
**conversations [1]** 49/15
**conveyed [1]** 39/15
**Coomer [6]** 34/23 35/3 49/13 54/7 54/12 54/15
**coordinate [1]** 114/22
**coordinating [1]** 58/11
**copies [3]** 86/8 89/10 89/21
**copy [1]** 89/1
**copying [1]** 58/23
**Coquina [1]** 67/23
**core [1]** 87/20
**corner [3]** 115/25 116/1 116/2
**corollary [1]** 77/14
**correct [7]** 10/19 29/23 40/20 101/19 107/20 107/23 120/19
**corrected [1]** 34/18
**correction [1]** 34/1
**correctly [1]** 123/22
**corresponding [1]** 22/5
**corroborates [2]** 102/19 112/23
**corroborating [1]** 59/12
**Cotton [13]** 101/13 101/16 103/8 105/5 107/14 107/24 108/1 108/3 108/3 108/7 113/16 115/3 120/14
**couched [1]** 133/5
**could [62]** 6/1 9/6 11/13 14/16 17/6 17/21 17/25 20/1 22/19 23/6 24/1 24/1 24/14 26/25 27/1 32/1 32/8 41/21 46/23 50/10 50/17 50/19 51/23 52/1 54/1 54/17 57/14 60/2 62/14 63/16 63/20 64/25 65/5 66/11 68/8 71/11 72/15 80/1 82/8 86/16 86/16 87/13 87/15 87/16 88/16 89/9 91/22 103/12 108/7 108/8 110/21 110/23 111/15 111/25 119/17 119/25 119/25 123/6 123/10 130/11 132/8 137/9
**couldn't [5]** 27/1 88/19 92/8 110/24 131/10
**counsel [55]** 7/4 8/5 23/3 34/2 36/9 38/6 39/14 49/15 52/15 55/1 55/16 55/19 57/7 66/22 72/15 82/2 86/4 88/6 93/8 93/21 94/6 95/6 95/20 96/10 97/22

**C**

counsel... [30]  97/25 98/6 98/19 99/8 100/17 101/8 105/1 106/16 107/2 109/5 110/9 110/12 111/18 116/19 116/25 118/21 118/21 119/5 120/8 120/21 122/3 123/13 125/5 128/21 134/11 136/8 139/12 139/13 139/17 139/18
counsel's [2]  136/7 142/5
counties [1]  89/22
county [26]  4/2 36/21 36/21 37/6 58/20 58/22 59/4 59/11 60/9 60/15 60/23 61/17 62/9 63/8 66/8 66/24 66/25 67/1 67/3 70/19 70/19 101/21 105/8 113/18 126/11 126/13
couple [2]  60/6 112/13
course [21]  7/10 12/19 18/20 30/14 31/17 41/21 58/4 62/6 75/19 87/13 89/19 91/14 97/23 100/13 104/22 106/23 107/25 112/14 115/17 122/20 142/8
court [70]  1/3 1/6 1/9 1/1 1/23 6/21 22/7 30/13 31/17 32/10 37/24 39/11 40/24 41/19 43/1 49/13 51/25 53/5 55/12 58/19 59/6 59/16 59/17 59/20 59/24 61/8 61/23 62/7 64/7 64/19 65/21 66/4 67/21 68/6 69/19 73/25 74/1 79/13 85/11 86/9 86/10 89/20 90/24 94/15 94/16 97/25 98/15 98/23 99/6 99/12 99/13 104/19 105/18 106/4 106/21 111/7 111/23 114/8 114/12 117/6 121/2 130/4 132/2 133/10 134/4 143/6 143/7 143/10 143/17 143/17
Court's [6]  99/10 119/8 128/2 131/3 137/19 138/14
courthouse [2]  1/24 128/14
courtroom [4]  6/9 57/5 57/20 73/24
courts [7]  39/19 53/3 65/6 68/2 74/13 76/10 84/20
covered [3]  15/1 44/17 46/4
covering [1]  23/21
crazy [1]  32/19
create [5]  65/10 66/11 85/9 98/3 99/20
creates [1]  121/15 122/5
creation [2]  66/10 139/21
credit [2]  46/13 46/13
criminal [5]  27/15 59/4 61/14 61/15 64/15
critical [2]  27/25 81/11
cross [27]  2/4 4/13 9/10 13/7 16/1 19/7 20/3 25/6 25/8 25/10 25/13 26/3 26/8 53/21 88/7 93/9 93/14 93/16 97/5 112/8 115/16 117/16 118/9 121/17 130/1 137/24 140/1
Cross' [1]  122/2
cross-examination [7]  13/7 16/1 19/7 25/13 26/3 118/9 137/24
cross-examinations [1]  9/10
cross-examine [3]  88/7 93/16 140/1
cross-examining [2]  93/9 93/14
crossed [1]  15/3
crosses [1]  25/2
CRR [3]  1/23 143/6 143/16
crucial [1]  75/25
culpability [3]  62/15 62/21 62/24
CURLING [14]  1/4 2/2 4/7 4/14 4/16 4/18 4/20 5/2 5/4 55/8 76/22 102/20 107/5 112/23

currently [2]  40/25 42/21
currently [2]  40/25 42/21
customer [1]  42/12
cut [1]  100/24
cutoff [1]  49/2
CV [2]  1/6 4/8
cybersecurity [5]  80/5 80/21 81/5 81/17 81/19

**D**

data [15]  6/14 6/15 26/19 41/16 58/23 69/3 69/4 72/12 78/21 78/23 79/25 87/6 101/21 101/24 135/6
database [8]  70/1 89/3 89/4 89/8 89/15 89/21 130/17 133/23
databases [1]  89/22
date [4]  23/2 30/3 32/15 120/21
dates [6]  26/18 29/24 29/25 82/1 82/14 82/15
DAVID [6]  2/4 3/12 3/13 4/13 5/5 75/17
DAVIS [43]  2/18 2/20 3/11 4/25 5/5 5/24 6/5 6/7 7/20 7/21 7/24 8/4 55/14 56/2 94/8 95/7 95/25 96/5 96/8 97/3 97/20 98/6 98/9 99/16 99/20 100/17 104/21 109/1 109/4 109/8 110/11 110/22 111/1 113/2 113/20 115/19 116/21 120/12 121/12 121/16 122/4 128/21 136/7
Davis' [7]  7/10 7/11 42/20 70/4 94/24 105/5 113/15
day [44]  11/6 11/10 11/15 11/23 12/1 12/16 13/25 15/21 16/7 16/7 16/10 17/7 21/23 22/1 22/4 22/7 22/9 22/20 22/23 23/14 23/22 24/2 24/10 25/11 25/24 26/3 26/8 27/6 28/22 29/10 32/18 41/15 53/15 79/19 80/6 80/7 80/16 82/4 82/4 84/1 87/25 90/6 141/23 143/13
days [24]  1/4 10/3 10/9 10/12 10/25 11/6 16/9 21/20 21/21 23/5 24/15 24/24 25/5 25/8 26/1 26/2 26/7 27/7 29/6 30/14 32/10 88/1 90/6 93/22
deadline [4]  12/17 84/25 85/13 138/16
deadlines [2]  22/2 46/21
deal [22]  6/3 7/11 7/12 16/7 29/21 31/9 37/14 53/17 55/12 55/21 57/22 72/8 72/11 80/5 87/14 91/6 92/22 93/4 97/10 114/23 115/6 140/6
dealing [4]  18/5 56/18 71/22 78/1
dealt [5]  48/23 70/3 77/15 77/23 112/4
death [1]  8/13
debate [1]  84/4
Deborah [1]  7/20
DECEMBER [3]  1/13 4/2 143/13
decide [8]  16/18 24/1 52/20 65/5 75/25 106/21 120/4 142/14
decided [6]  31/24 72/20 73/25 85/15 92/14 103/18
deciding [2]  65/20 120/9
decision [6]  46/5 70/23 82/11 128/6 130/25 142/6
decisions [4]  52/11 84/2 84/20 96/10
declarations [2]  36/13 42/23
deduced [1]  106/2
defeated [1]  135/14
defend [2]  45/24 77/11
defendant [6]  9/4 9/5 55/10 62/22 74/14 79/6
defendants [27]  1/7 3/3 5/10 5/12 5/14

5/18 5/20 5/21 6/16 10/17 10/23 21/9 22/3 30/4 58/2 58/5 63/15 64/1 66/23 74/16 75/18 75/24 76/13 76/20 79/12 129/3
defendants' [17]  6/17 6/21 6/25 8/23 8/25 9/4 9/13 10/23 30/1 30/23 69/6 69/13 69/19 69/25 75/25 80/20 116/19
defense [8]  13/15 16/20 45/21 46/1 50/13 83/11 95/8 95/8
defer [1]  70/20
deferred [1]  55/25
definitely [6]  12/1 19/2 19/5 19/23 39/11 71/24
degree [5]  15/23 83/9 91/7 93/17 116/10
delivered [2]  54/24 88/17
democracy [1]  92/18
demonstrably [1]  115/9
denial [1]  128/23
denied [2]  65/25 131/22
denigrating [1]  118/21
deny [5]  8/8 97/25 98/6 99/12 119/25
denying [5]  97/13 97/15 99/17 99/19 100/6
department [1]  123/2
depending [3]  14/2 15/25 25/24
depends [2]  49/22 106/15
deploying [1]  124/22
deponents [1]  39/8
depose [7]  39/13 39/18 45/10 122/22 125/25 126/1 126/8
deposed [11]  36/20 36/24 37/2 38/3 39/23 84/14 101/12 108/9 108/18 115/3 117/23
deposing [1]  108/21
deposition [29]  6/23 28/25 29/3 33/7 33/14 40/17 41/25 42/19 44/22 45/1 47/22 50/11 50/17 51/3 52/19 60/7 68/10 68/17 69/21 84/17 102/8 102/24 118/25 120/18 122/12 123/17 123/18 124/12 125/25
depositions [7]  36/23 44/13 44/15 52/24 57/25 58/4 109/22
deputy [3]  41/25 42/3 43/8
deriving [1]  93/10
describe [2]  103/1 105/3
described [2]  107/15 138/5
describing [1]  16/18
description [2]  37/23 131/5
designate [1]  87/3
designated [4]  28/24 29/4 80/3 91/24
designations [12]  6/23 29/13 29/17 33/15 59/8 59/18 68/10 68/17 68/21 69/22 121/1 122/12
designed [1]  87/11
desire [1]  118/20
desires [1]  118/17
desperately [1]  141/19
despite [1]  109/5
details [2]  41/19 42/12
determine [2]  74/13 76/11
determined [2]  76/17 132/6
determining [3]  76/17 114/18 132/2
developed [4]  14/19 46/22 114/5 116/17
devices [1]  105/22
devise [1]  24/13
DIANE [2]  3/8 5/17

**D**

**dice [1]** 82/9
**did [45]** 7/20 15/16 15/17 15/19 35/3 35/20 38/8 41/7 44/19 47/3 50/1 55/19 56/8 56/10 60/11 60/13 60/15 60/17 60/19 63/19 64/16 64/18 66/2 66/3 84/7 84/8 84/10 85/4 85/18 90/22 93/1 96/5 106/1 108/10 108/10 108/22 118/24 124/11 126/12 132/4 136/4 136/22 138/15 138/25 140/18
**didn't [34]** 12/22 14/23 20/24 25/7 25/16 31/16 31/17 34/12 34/12 36/8 40/16 41/14 44/15 53/18 79/17 79/18 84/11 84/15 84/15 101/21 109/17 110/10 110/15 111/4 116/21 122/11 122/22 126/8 126/10 126/16 131/11 135/13 136/4 140/24
**die [4]** 53/11 53/12 53/13 53/14
**difference [10]** 8/19 40/24 54/2 54/6 86/18 93/17 99/10 103/9 117/25 133/18
**differences [2]** 92/11 118/4
**different [16]** 23/2 23/2 29/9 43/12 58/14 68/16 75/17 91/12 93/8 93/9 93/25 95/16 109/24 111/24 117/1 117/19
**differently [2]** 37/6 133/22
**difficult [2]** 94/12 120/20
**difficulties [1]** 109/6
**difficulty [2]** 73/5 109/7
**digested [1]** 6/1
**DIGGES [6]** 2/11 2/12 2/17 2/17 4/22 4/25
**diligence [1]** 84/6
**dinner [1]** 24/6
**direct [3]** 9/10 105/12 118/11
**directed [1]** 134/19
**directly [6]** 7/2 44/8 49/24 90/3 112/20 113/7
**disagree [6]** 86/23 98/14 121/19 121/20 122/4 131/2
**disagreed [1]** 79/6
**disagreement [6]** 28/25 29/24 30/2 30/6 64/10 65/4
**disagreements [1]** 118/3
**disappear [2]** 83/23 135/16
**disappointing [1]** 126/3
**disclose [6]** 10/24 21/22 21/24 22/5 30/11 108/22
**disclosed [10]** 17/3 38/14 48/21 49/14 50/16 54/4 54/8 85/23 91/1 115/3
**disclosing [5]** 14/1 86/17 88/5 94/12 94/14
**disclosure [7]** 21/19 22/9 28/24 29/21 42/7 85/22 90/24
**disclosures [9]** 26/19 34/15 34/16 37/24 37/25 39/23 45/5 45/8 85/2
**discovering [1]** 104/4
**discovery [35]** 17/1 28/4 34/15 37/24 38/15 39/6 41/7 42/6 43/5 44/13 44/23 44/25 45/4 45/6 45/11 45/14 45/19 45/24 46/5 47/2 47/3 47/4 47/8 47/19 49/16 50/21 52/7 52/11 84/25 95/18 104/8 117/22 119/14 134/19 138/16
**discrete [6]** 64/11 64/11 65/2 109/25 119/24 130/5
**discretion [2]** 82/23 119/22
**discrimination [1]** 124/14

**discuss [4]** 16/2 21/25 51/11 55/2 55/6 56/6
**discussed [4]** 37/14 41/24 61/20 110/6
**discusses [1]** 31/22
**discussing [1]** 54/25
**discussion [6]** 54/21 57/6 104/16 104/20 106/7 121/9
**discussions [4]** 43/23 85/8 105/19 107/17
**dismissed [2]** 125/9 131/4
**dispute [3]** 84/5 84/5 114/18
**disputed [2]** 84/8 85/4
**disputes [5]** 7/16 22/7 24/19 26/18 114/3
**disputing [1]** 43/2
**dissemination [1]** 87/8
**distinction [3]** 124/10 129/13 132/10
**distracted [1]** 28/18
**distribution [1]** 108/6
**DISTRICT [7]** 1/1 1/1 1/12 143/4 143/7 143/7 143/17
**diverge [1]** 103/23
**division [3]** 1/2 64/23 143/8
**do [127]** 7/18 9/16 9/18 9/21 9/22 11/6 11/22 11/23 14/9 15/14 15/17 16/17 16/20 17/20 19/7 19/23 19/25 20/1 20/13 20/13 20/18 24/1 24/20 25/3 25/18 27/1 27/1 29/22 31/16 31/19 31/21 31/25 34/9 39/19 44/12 47/14 50/6 52/1 52/20 52/25 53/2 53/10 55/24 56/1 56/4 56/15 58/3 59/25 60/3 60/8 63/11 63/12 65/6 65/21 65/23 67/21 68/6 72/5 74/7 75/8 81/14 82/24 83/2 83/3 83/3 83/5 83/7 83/17 84/11 84/15 85/6 85/9 85/15 90/12 95/6 98/22 98/22 99/8 99/17 99/18 100/19 100/20 101/10 102/10 103/14 103/15 103/19 103/21 104/10 104/17 105/4 106/9 107/9 107/14 108/19 108/21 109/24 110/16 111/7 111/11 112/11 112/16 112/19 113/12 116/22 117/18 118/13 119/9 120/24 121/13 122/18 123/24 125/1 126/24 127/1 127/3 128/18 130/1 130/3 130/21 134/15 134/23 135/11 137/11 137/14 140/18 143/8
**docket [7]** 1/5 1/5 78/9 88/25 89/4 136/17 138/19
**Docket 440 [1]** 88/25
**doctrine [1]** 123/23
**document [7]** 1/8 8/18 11/2 29/3 55/5 138/13 139/2
**Document 1728 [1]** 8/18
**documents [2]** 43/12 88/5
**Doe [3]** 71/8 71/8 71/9
**does [24]** 9/2 12/6 13/13 16/17 25/1 25/8 35/10 54/20 61/24 63/22 63/24 64/20 74/8 80/17 88/22 90/2 90/2 90/8 96/25 98/14 106/17 125/6 130/20 130/21
**doesn't [32]** 4/9 8/2 10/4 17/9 31/25 32/7 46/24 47/12 49/10 49/19 50/21 53/12 54/6 59/7 71/1 73/16 74/11 91/22 92/8 92/22 92/23 93/1 97/2 109/24 112/24 120/8 132/8 134/13 136/1 138/12 139/10 139/24
**doing [13]** 11/21 13/21 29/5 68/4 71/16 81/12 83/13 87/6 88/5 89/10 93/25 136/17 141/6

**Dominion [25]** 17/4 34/19 34/22 34/25 39/3 39/4 39/6 39/7 49/14 49/14 49/19 49/20 49/23 49/23 50/5 50/7 54/5 92/5 124/21 137/19 138/20 138/22 139/20 139/21 140/23
**Dominion's [4]** 39/14 49/15 54/4 105/8
**don't [142]** 4/4 6/8 7/23 8/1 9/16 10/24 10/24 11/8 12/15 12/21 13/9 13/20 14/11 14/13 16/18 17/2 17/11 18/9 19/13 20/16 21/14 24/17 24/17 25/10 26/24 27/2 27/9 29/17 30/19 31/14 31/20 32/17 33/16 34/24 36/16 38/5 38/21 38/25 40/4 40/8 42/10 43/9 45/17 45/20 46/9 46/18 49/6 50/12 51/13 52/25 53/2 53/11 53/13 53/13 55/3 56/2 57/24 58/2 58/7 58/17 59/1 59/15 59/16 61/2 61/18 61/22 62/1 62/10 63/20 64/18 64/21 65/10 65/13 66/1 67/22 68/14 69/17 70/8 70/18 71/20 72/5 74/10 75/21 77/12 79/9 79/14 79/15 79/21 80/6 80/15 83/11 83/22 84/1 84/3 84/21 86/23 90/12 91/16 91/18 93/21 94/7 96/15 96/23 97/13 97/18 98/7 101/3 102/21 103/5 107/4 107/9 108/20 114/7 114/12 115/12 116/7 117/12 118/10 119/1 119/11 120/7 125/23 127/6 128/10 128/21 130/22 130/23 131/17 132/7 133/13 135/10 135/22 136/17 136/20 136/23 137/14 137/25 138/4 139/24 140/9 141/17 142/13
**done [14]** 11/4 22/16 26/14 61/13 68/24 83/17 87/18 95/17 97/8 97/9 109/10 111/5 116/20 127/17
**DONNA [1]** 1/4 2/2 2/2 4/6
**door [3]** 116/20 139/4 139/15
**doors [1]** 46/16
**doubts [1]** 71/1
**down [7]** 13/5 54/23 63/4 79/7 82/21 89/8 100/24
**downloading [1]** 101/21
**Dr [3]** 27/24 81/3 102/15
**Dr. [37]** 6/14 34/23 35/3 40/3 43/21 49/13 50/1 54/7 54/12 54/15 54/16 57/9 69/3 72/12 78/21 80/23 82/15 83/19 84/14 84/16 87/16 88/7 89/10 89/16 89/16 90/7 90/17 90/18 90/25 91/3 91/3 91/15 92/22 93/14 102/15 125/9 139/15
**Dr. Adida's [1]** 92/22
**Dr. Bernhard [1]** 40/3
**Dr. Coomer [6]** 34/23 35/3 49/13 54/7 54/12 54/15
**Dr. Drew [1]** 90/17
**Dr. Gilbert [2]** 80/23 84/14
**Dr. Halderman [17]** 43/21 50/1 54/16 57/9 82/15 83/19 84/16 87/16 88/7 89/10 89/16 90/7 90/18 91/3 93/14 102/15 139/15
**Dr. Halderman's [5]** 6/14 69/3 72/12 78/21 125/9
**Dr. Springall [4]** 89/16 90/25 91/3 91/15
**draw [2]** 58/19 61/25
**drawing [2]** 68/1 70/12
**drawn [3]** 65/24 70/17 71/12
**DRE [6]** 37/23 40/4 86/12 130/16 133/6 133/8
**DREs [4]** 36/13 36/14 45/17 89/23
**drew [2]** 90/17 129/14

**D**

**drive [2]** 1/24 32/19
**due [11]** 27/25 28/8 35/17 46/13 76/18 76/23 84/23 97/22 98/9 116/11 121/15
**DUMA [1]** 3/9
**Duncan [2]** 84/23 85/6
**duration [1]** 106/19
**during [6]** 25/13 37/23 47/8 78/16 89/11 140/8
**duties [1]** 128/12
**duty [1]** 24/9
**duty-bound [1]** 24/9
**dying [1]** 53/9

**E**

**each [23]** 8/20 8/23 9/1 21/18 22/7 22/15 22/21 23/25 24/4 24/5 32/4 32/8 42/8 68/4 76/21 79/16 101/6 114/3 118/5 120/18 122/9 126/20 138/1
**earlier [5]** 79/13 87/17 93/2 105/4 116/20
**earliest [1]** 39/17
**early [6]** 20/14 47/3 82/1 87/15 128/18 137/2
**earnestness [1]** 116/14
**easier [2]** 57/13 75/22
**easy [5]** 7/23 8/11 57/22 57/24 72/5
**ECF [5]** 1/2 1/3 8/14 8/19 78/9
**Ed [3]** 5/21 96/14 96/20
**EDWARD [1]** 3/6
**effect [1]** 120/12
**effectively [1]** 136/2
**efficiency [1]** 26/15
**efficient [2]** 19/21 24/10
**efficiently [1]** 136/3
**efforts [1]** 139/18
**eight [3]** 18/17 24/24 26/1
**either [24]** 8/5 14/9 30/22 31/16 36/19 79/20 91/20 94/15 97/9 101/13 103/7 103/20 112/5 115/20 116/18 119/7 130/5 133/25 134/16 135/13 135/23 136/6 136/10 142/1
**election [10]** 36/21 37/3 43/8 63/2 66/24 66/25 76/10 113/3 113/18 115/2
**elections [3]** 37/7 76/10 123/11
**electronic [3]** 70/1 86/3 89/12
**electronically [1]** 100/25
**electronics [1]** 88/3
**elements [2]** 25/6 130/16
**eleventh [4]** 67/23 78/3 97/10 100/15
**eleventh-point-nine [1]** 100/15
**elicit [1]** 106/20
**Elliott [4]** 36/12 36/18 36/25 37/20
**else [24]** 27/2 32/22 51/1 51/22 52/16 54/23 55/1 55/5 55/7 56/12 56/14 71/16 87/3 94/15 103/5 110/25 111/17 116/11 117/2 122/21 132/25 140/15 141/11 141/24
**else's [1]** 26/24
**email [3]** 45/1 45/5 95/24
**emphasize [1]** 84/13
**emphasized [1]** 125/12
**emphatically [1]** 36/14
**employed [2]** 60/22 67/2
**employee [4]** 14/20 40/1 60/22 63/8
**employees [2]** 41/20 67/1
**EMS [1]** 60/8

**enabling [1]** 61/19
**encapsulated [1]** 72/24
**end [11]** 13/25 14/7 15/22 24/2 24/19 28/6 46/7 55/20 66/5 81/17 135/21
**ended [2]** 7/15 15/4
**endlessly [1]** 82/9
**endorse [1]** 70/24
**ends [2]** 15/13 18/13
**eNet [8]** 40/12 40/25 42/25 43/1 43/3 43/4 44/10 48/7
**engage [1]** 87/5
**engaged [1]** 108/15
**engineer [1]** 35/1
**ENGLISH [1]** 3/9
**enjoined [1]** 48/8
**enormous [4]** 71/7 83/19 100/22 100/23
**enormously [1]** 98/17
**enough [3]** 17/13 131/7 141/22
**ensued [1]** 54/21
**ensure [2]** 103/21 104/5
**enter [3]** 64/24 89/18 128/20
**entered [4]** 34/2 47/4 55/17 128/17
**enters [2]** 32/10 133/10
**entire [4]** 21/13 106/10 129/22 135/6
**entirely [1]** 45/22
**entirety [1]** 96/1
**entitled [5]** 59/14 67/15 125/18 125/25 126/24
**entry [1]** 1/5
**equal [3]** 76/23 133/21 133/24
**equipment [5]** 66/3 66/8 86/3 89/13 91/9 105/11
**Eric [1]** 63/8
**especially [4]** 14/14 67/18 79/22 80/3
**essence [1]** 86/25
**essential [2]** 66/4 86/7
**essentially [4]** 30/5 100/14 110/20 128/13
**establish [1]** 75/7
**establishing [1]** 66/12
**estimated [1]** 71/6
**et [5]** 1/4 1/6 4/7 4/7 137/15
**ether [1]** 135/17
**EUW [2]** 2/9 5/3
**evaporating [1]** 19/9
**eve [2]** 103/12 106/22
**even [29]** 10/2 24/13 28/22 39/17 48/20 53/2 60/22 61/3 64/21 66/25 67/3 71/2 72/23 77/12 77/20 80/21 81/3 82/3 86/11 90/7 91/16 92/18 111/19 114/2 117/3 128/14 131/11 137/6 138/14
**evening [1]** 105/6
**event [4]** 6/3 49/10 122/24 136/11
**events [1]** 70/19
**ever [15]** 29/9 53/5 60/8 60/11 60/13 60/17 60/19 64/25 84/25 89/15 123/25 126/4 126/14 126/18 138/9
**every [1]** 85/15
**everybody [1]** 49/13 95/3 109/22 109/24
**everyone [13]** 4/9 23/23 24/3 24/9 32/19 54/12 70/7 79/16 82/17 82/20 84/8 110/25 140/7
**everyone's [2]** 63/25 82/8
**everything [10]** 7/19 15/7 24/19 37/11 42/25 51/1 56/12 89/12 109/10 109/24
**evidence [71]** 6/18 7/5 59/13 61/7

61/14 61/12 62/7 62/9 64/8 66/7 66/17 66/21 67/13 69/6 69/14 70/2 75/3 78/11 83/15 87/20 87/20 98/2 98/25 99/1 99/2 99/8 99/18 100/3 101/2 102/19 102/21 102/25 103/17 103/24 105/3 105/25 106/3 106/12 106/18 112/11/24 112/22 115/2 116/17 116/21 117/2 117/7 117/21 118/1 118/15 119/14 119/24 120/3 121/24 124/14 129/16 129/19 129/21 130/2 130/3 130/5 130/13 130/15 130/20 131/4 131/15 132/9 132/12 134/11 134/24 135/2 138/15
**evidentiary [5]** 31/21 31/22 32/2 131/23 134/21
**evolves [1]** 21/16
**ex [3]** 48/3 78/4 78/8
**exactly [11]** 6/20 34/9 41/12 52/9 84/20 106/4 111/4 121/23 125/2 130/3 132/19
**examination [10]** 13/7 14/22 16/1 19/7 25/13 26/3 93/25 106/12 118/9 137/24
**examinations [2]** 9/10 25/1
**examine [7]** 12/22 86/14 88/7 93/16 125/18 126/4 140/1
**examined [2]** 8/21 108/8
**examiner [1]** 108/4
**examining [3]** 93/9 93/14 139/13
**example [19]** 14/19 15/24 20/8 33/18 35/18 48/5 49/21 60/2 60/7 61/3 63/1 64/16 66/2 93/13 111/22 129/23 129/24 132/13 133/20
**examples [1]** 61/8
**exceed [2]** 10/4 31/25
**except [5]** 18/24 33/16 71/20 104/23 119/12
**exception [1]** 51/14
**exceptions [1]** 138/13
**excessive [1]** 128/11
**exchanges [1]** 46/20
**exciting [1]** 28/14
**exclude [11]** 6/18 7/3 67/11 67/14 68/23 69/6 69/13 69/24 72/6 75/5 75/5
**excluded [2]** 75/8 131/18
**excuse [5]** 40/17 123/17 125/23 129/7 136/25
**exercise [1]** 77/21
**exhausted [1]** 22/22
**exhaustive [1]** 88/16
**exhibit [5]** 22/12 23/6 23/15 23/17 37/12
**exhibits [12]** 13/7 21/19 21/22 22/1 22/5 22/15 23/22 24/16 33/6 33/20 33/21 34/8
**Exhibits 400 [1]** 23/22
**existing [1]** 130/18
**exists [1]** 12/22
**expect [5]** 27/23 43/14 53/18 59/22 127/17
**expected [2]** 66/19 104/4
**expecting [2]** 33/7 106/11
**expedited [1]** 47/8
**experience [1]** 29/12
**expert [21]** 21/6 40/3 43/19 54/16 81/17 84/25 85/13 85/23 87/14 91/10 92/2 92/22 93/1 93/16 99/24 103/11 105/16 108/15 113/12 138/25 139/4
**expertise [1]** 113/13
**experts [10]** 21/8 21/13 21/18 26/19 80/21 81/15 91/21 91/24 99/23 115/5

**E**

**explain [6]** 29/8 61/3 62/3 94/25 113/11 128/7
**explanation [1]** 14/17
**explicitly [3]** 77/8 113/21 138/24
**explore [1]** 87/24
**explored [1]** 108/25
**exposed [1]** 64/15
**expressed [2]** 70/25 96/11
**expression [1]** 100/21
**extend [1]** 118/8
**extended [2]** 85/13 121/9
**extent [17]** 12/21 20/12 23/19 23/20 33/16 35/14 36/1 37/4 43/3 48/14 71/15 71/25 73/18 78/16 94/11 103/22 134/4
**extra [3]** 90/6 105/13 141/23
**extrapolated [1]** 106/2
**extremely [1]** 103/12
**eye [1]** 72/2

**F**

**facial [1]** 73/19
**fact [27]** 18/24 19/15 40/23 41/14 42/20 48/17 50/20 62/14 64/19 66/4 66/11 67/17 73/16 74/16 79/25 80/4 80/20 98/15 102/3 104/3 107/4 113/10 118/2 118/17 126/5 128/5 134/13
**fact-finder [2]** 118/2 118/17
**factors [7]** 59/18 63/17 66/21 66/22 67/5 68/14 77/2
**facts [14]** 61/23 64/5 64/6 66/22 68/16 71/1 77/2 84/4 84/4 84/6 84/7 85/4 108/22 117/7
**factual [6]** 49/25 64/6 66/7 103/15 105/25 126/17
**factually [2]** 71/21 120/19
**faculty [1]** 82/17
**failed [1]** 78/6
**fair [9]** 14/17 15/4 16/8 48/24 50/13 77/16 77/24 78/9 124/11
**fairly [2]** 47/25 104/19
**fairness [1]** 81/21
**faith [5]** 18/11 18/11 18/25 21/11 98/2
**fall [2]** 31/8 35/9
**fallback [2]** 22/19 22/24
**falls [2]** 21/1 108/18
**familiar [1]** 110/24
**family [3]** 83/2 90/13 104/17
**far [10]** 9/13 49/22 53/4 79/11 89/9 93/5 98/5 105/20 111/12 116/10
**fast [1]** 116/7
**fault [2]** 79/10 79/17
**favor [1]** 66/22
**Favorito [1]** 113/2
**fear [2]** 10/2 117/18
**February [1]** 28/1
**federal [7]** 8/6 72/24 74/12 74/13 74/22 76/10 117/6
**feeding [1]** 135/6
**feel [3]** 14/23 51/22 70/23
**felt [3]** 11/7 82/10 119/11
**few [5]** 72/5 72/17 78/24 118/8 140/6
**Fifth [19]** 6/17 33/18 59/12 60/10 60/12 60/14 60/16 60/18 60/20 63/16 63/17 64/24 67/19 67/25 68/12 97/21 108/10 121/15 141/9
**Fight [8]** 14/17 15/4 16/8 48/24 77/16

**7/2 43/3 94/9**
**fighting [1]** 37/15
**figure [5]** 13/1 60/23 65/2 92/9 123/1
**file [7]** 8/13 9/17 9/20 31/10 32/17 130/8 137/8
**filed [17]** 1/2 1/6 1/8 4/5 5/24 42/6 47/5 73/6 73/7 73/23 89/3 109/18 110/5 110/5 110/7 138/20 138/22
**files [1]** 115/7
**filing [2]** 73/5 111/18
**filings [3]** 7/1 7/15 113/20
**final [4]** 62/5 97/8 114/1 128/2
**Finally [2]** 67/20 139/5
**finals [1]** 141/23
**find [9]** 15/13 45/6 56/24 64/8 66/11 84/19 90/6 122/9 135/17
**finder [2]** 118/2 118/17
**finding [3]** 9/22 133/7 137/22
**findings [7]** 102/15 112/25 115/2 125/10 128/9 137/18 138/7
**fine [6]** 18/16 20/14 20/20 29/22 51/10 142/17
**firm [2]** 2/15 30/4
**firmness [2]** 29/25 30/3
**firms [1]** 87/4
**first [18]** 6/13 28/9 32/18 41/5 45/25 56/23 65/20 67/8 74/6 91/8 92/9 93/13 94/5 101/11 107/6 133/3 134/10 138/17
**fish [2]** 59/1 134/19
**FISHER [3]** 2/5 5/1 58/25
**five [5]** 15/5 16/10 32/3 32/4 127/13
**five-minute [1]** 127/13
**flagged [1]** 139/10
**flexibility [3]** 17/6 91/7 127/22
**fly [2]** 51/4 51/5
**focus [2]** 18/19 80/22
**FOERSTER [5]** 2/6 4/13 4/15 5/1 86/13 63/11 91/11 93/9 138/8
**folks [16]** 16/22 16/24 17/3 17/4 38/2 63/11 91/11 93/9 138/8
**follow [1]** 84/11
**following [4]** 1/1 26/22 27/5 74/22
**football [2]** 141/21 141/22
**foregoing [1]** 143/8
**forensic [5]** 66/8 102/19 108/4 112/22 113/24
**forever [1]** 56/19
**forget [1]** 71/16
**forgot [1]** 56/11
**form [3]** 9/18 47/19 48/9
**formalities [1]** 110/14
**formalize [1]** 128/5
**formally [1]** 128/21
**former [2]** 67/1 92/3
**Fortalice [1]** 86/13
**forth [1]** 66/9 66/10 73/14
**forthcoming [1]** 126/15
**forward [10]** 42/24 48/8 51/8 64/21 65/12 66/18 89/25 109/11 133/6 133/11
**found [4]** 75/1 91/4 103/1 115/2
**foundation [3]** 59/17 75/7 131/14
**four [7]** 10/17 13/4 13/22 14/12 16/10 19/10 25/24
**fourth [1]** 13/18
**frame [5]** 19/25 79/22 80/4 80/16 88/18
**framework [1]** 76/24
**frankly [5]** 13/25 51/5 56/11 81/8 86/11
**fraud [1]** 114/18
**free [1]** 100/13

**frequently [1]** 66/10
**front [8]** 10/3 27/9 59/8 59/16 59/20 59/22 68/18 71/20
**frustrated [1]** 134/7
**full [4]** 1/8 8/21 21/20 106/18
**fully [2]** 14/21 108/18 135/14 135/14
**Fulton [2]** 4/2 59/4
**functional [1]** 82/21
**fundamentally [1]** 121/19
**funding [1]** 44/3
**further [2]** 28/4 79/15
**future [1]** 50/7

**G**

**Gabe [1]** 40/17
**Gabriel [1]** 13/16
**game [2]** 103/12 104/3
**Garland [1]** 113/2
**GARViS [19]** 35/11 35/14 40/13 40/14 40/25 41/7 41/9 41/19 42/13 42/19 42/24 43/4 44/13 48/6 48/9 48/13 49/7 131/20 133/11
**gasp [1]** 115/23
**gather [1]** 70/13
**gave [3]** 82/1 89/21 132/13
**GBI [3]** 80/25 92/3 92/3
**GEMS [5]** 89/2 89/4 89/8 89/20 89/21
**general [4]** 33/4 67/14 68/5 126/1
**generally [3]** 18/19 21/12 111/16
**generic [1]** 71/23
**gentleman [2]** 80/25 92/3
**genuine [2]** 18/4 18/11
**GEORGIA [10]** 1/1 1/25 3/3 4/2 76/3 78/4 105/8 143/4 143/8 143/10
**Georgia's [2]** 102/16 113/1
**germane [3]** 7/2 129/22 131/16
**get [87]** 8/11 9/12 10/10 11/18 12/2 12/3 12/4 12/18 13/2 15/22 17/16 17/16 17/17 18/19 19/13 20/25 23/6 23/6 23/17 24/6 24/7 26/4 26/14 28/3 28/3 28/23 28/23 30/16 33/22 39/6 39/13 44/24 45/11 45/21 51/21 52/7 52/8 53/25 54/23 55/16 56/21 59/19 62/11 62/11 65/9 66/13 67/21 69/8 73/23 76/6 77/21 78/16 78/16 79/19 84/22 85/6 85/7 86/7 86/10 87/12 88/6 93/4 94/4 96/16 98/3 100/5 100/8 108/5 108/7 114/3 114/8 116/10 120/2 120/8 122/9 124/23 126/3 127/5 127/17 127/23 128/25 130/21 137/1 139/15 139/20 140/9 142/5
**gets [3]** 42/12 45/20 114/1
**getting [8]** 25/23 69/17 77/18 87/18 96/19 109/8 121/4 137/5
**Gilbert [4]** 13/18 49/24 80/23 84/14
**give [13]** 13/3 17/21 30/23 31/2 37/12 46/13 60/2 63/1 75/10 78/25 83/13 91/16 105/18
**given [13]** 15/7 19/10 50/23 51/1 56/11 79/22 79/25 80/3 80/20 81/18 139/7 139/16 139/17
**gives [2]** 81/20 141/23
**giving [4]** 30/5 30/24 51/15 81/17
**go [27]** 11/10 20/11 22/12 27/12 28/5 32/4 46/23 47/10 49/1 50/21 62/20 64/21 65/12 72/9 79/15 90/8 97/1 97/8 109/11 110/12 116/2 116/16 117/4 119/1 127/10 135/7 141/5
**goes [8]** 11/17 16/1 24/17 72/20 90/3

EXHIBIT 9

**G**

goes... [3]  97/9 108/6 115/12
going [156]
gone [6]  16/20 73/17 82/17 82/17
82/18 82/20
GONZALEZ [3]  3/16 141/16 142/1
good [27]  2/11 4/3 4/17 4/21 5/7 5/9
5/11 5/13 5/15 5/17 8/9 14/17 18/11
18/11 18/25 21/11 22/10 30/15 30/23
34/3 40/7 46/12 89/17 92/18 108/11
127/2 141/22
got [36]  14/5 15/14 17/5 17/19 18/17
24/6 24/6 24/20 27/11 27/15 30/15
42/23 46/25 54/7 60/23 65/7 66/7 73/12
79/7 82/1 83/2 85/1 92/13 93/3 93/23
96/21 108/4 116/3 116/21 117/2 122/9
133/25 136/2 141/5 142/8 142/11
gotten [2]  82/22 114/9
gourmet [1]  54/23
GOVERNANCE [5]  2/11 4/22 5/7 34/3
40/7
governmental [1]  76/12
Governor [2]  73/2 124/12
grad [1]  83/1
graduate [2]  83/22 83/22
grand [1]  64/7
granted [1]  69/5
granting [2]  8/7 129/19
gravamen [2]  72/22 78/5
great [8]  20/19 73/18 80/5 82/19 90/14
93/23 101/2 123/4
greater [2]  86/19 92/18
greatly [1]  99/21
grenade [1]  114/15
ground [2]  89/17 134/5
grounds [1]  7/24
group [7]  2/9 5/4 24/19 35/19 109/2
118/20 142/9
guess [20]  16/16 18/3 22/14 25/9
25/24 29/1 29/7 49/19 82/12 84/13
86/18 92/8 93/11 106/9 106/15 110/19
116/24 118/4 125/17 131/7
guilt [7]  58/19 59/3 62/15 62/25 64/2
64/4 70/17
guilty [1]  61/16
guy [1]  42/11

**H**

hack [1]  87/10
hacked [1]  64/21
hacks [1]  84/18
had [59]  14/20 16/8 29/9 29/12 29/12
34/7 38/3 39/5 39/9 39/10 40/20 41/10
42/2 44/19 45/16 45/24 46/13 50/21
50/24 55/20 56/13 63/12 66/9 70/13
73/1 73/10 80/21 81/16 82/2 85/8 88/20
89/9 89/15 106/6 108/15 108/23 109/15
110/5 110/11 111/23 111/24 112/5
115/6 116/19 119/11 120/12 120/15
123/20 126/14 130/7 131/11 134/12
135/9 135/13 135/13 138/9 138/19
140/6 143/9
Halderman [21]  17/17 27/24 43/21
50/1 52/10 54/16 57/8 57/9 82/15 83/19
84/16 87/16 88/7 90/10 89/16 90/7
90/18 91/3 93/14 102/15 139/15
Halderman's [5]  6/14 69/3 72/12 78/21

half [4]  24/3 33/22 85/3 104/15
Hallman [2]  14/20 14/22
hallway [1]  142/12
HALSEY [2]  2/7 4/19
Hampton [3]  63/3 63/6 108/15
Hampton's [1]  63/8
hand [3]  70/14 129/15 143/12
handful [1]  15/5
handle [2]  47/6 86/22
handled [1]  83/21
handling [1]  110/1 110/2
handwritten [1]  88/4
happen [11]  17/9 28/1 41/14 51/2
71/22 92/16 109/15 112/5 114/20 118/4
126/16
happened [4]  14/18 31/4 47/13 54/11
happening [5]  19/8 33/11 49/4 60/5
110/10
happens [2]  92/25 97/7
happy [4]  20/13 28/12 61/9 110/18
hard [7]  13/15 17/13 17/15 23/15 26/20
95/17 114/11
Harding [3]  110/7 110/14 112/17
harm [1]  50/24
Harry [3]  27/1 34/4 142/4
has [113]  1/6 5/23 7/15 7/24 8/13 12/20
13/16 18/19 27/25 34/20 34/23 36/14
36/14 38/13 38/23 39/3 40/14 42/5 42/5
42/19 42/25 43/5 44/1 45/16 46/17 48/9
48/24 49/3 49/5 49/13 49/25 50/7 51/1
52/8 53/5 56/6 56/14 56/22 61/23 68/6
68/10 68/12 68/18 72/1 73/2 74/25 75/1
79/16 80/22 81/4 81/18 82/15 82/22
82/23 83/21 83/24 85/22 85/24 88/24
89/15 90/14 90/14 91/14 95/17 96/8
96/9 96/10 96/10 97/5 97/21 98/1 98/15
98/23 99/7 100/20 100/25 101/1 103/23
104/2 104/12 104/19 107/5 107/16
110/5 110/20 111/14 112/11 112/17
113/5 114/5 114/9 114/25 117/5 117/22
118/5 119/7 121/9 123/2 123/3 123/11
124/7 125/3 125/9 125/10 125/10
125/11 126/14 126/17 133/7 136/9
140/1 141/18 141/18
hasn't [2]  43/5 81/18
have [381]
haven't [13]  41/6 47/18 53/21 67/10
85/10 92/14 98/5 102/22 109/22 111/6
111/6 112/4 124/23
having [7]  23/9 24/4 43/23 73/7 82/5
95/10 105/17
HB [1]  73/16
he [173]
he's [8]  19/4 19/5 43/9 83/2 83/2
113/12 123/1 125/6
head [4]  12/25 100/25 112/18 123/2
heads [2]  73/3 132/17
health [3]  45/23 53/8 125/11
hear [8]  26/21 30/20 96/23 107/2 107/6
123/12 125/5 126/10
heard [8]  16/25 34/12 36/11 44/22
45/18 113/11 115/23 134/21
hearing [9]  5/25 6/2 23/10 47/7 71/6
79/13 91/8 95/10 125/15
hearings [1]  37/1
hearsay [1]  138/13
heated [1]  114/8

held [1]  143/10
help [4]  19/21 62/23 83/1 137/1
helped [1]  60/24
helpful [4]  16/14 89/1 110/24 132/13
her [4]  8/7 8/7 60/7 108/15
here [80]  4/6 4/24 7/8 17/18 19/2 22/25
23/13 28/10 29/24 30/6 30/18 32/6 35/5
38/23 39/12 40/11 42/10 45/12 47/24
48/2 52/24 53/14 55/1 60/6 65/19 68/23
70/7 70/10 72/10 72/16 73/13 74/15
76/7 76/7 76/7 77/8 77/20 78/10 79/19
81/8 82/9 83/12 84/1 85/8 85/11 85/22
85/25 87/8 87/20 93/13 94/12 100/12
103/9 106/18 108/19 109/6 110/20
110/25 111/4 117/25 118/6 118/13
119/12 121/5 121/19 127/2 127/11
128/8 128/22 133/15 134/9 134/23
135/21 136/21 140/11 141/16 142/8
142/8 142/12 142/16
hereby [1]  143/8
hereunto [1]  143/12
high [2]  15/23 123/9
high-level [1]  123/9
higher [1]  51/16
highlight [1]  112/13
highly [4]  74/11 75/1 76/17 116/16
him [57]  14/23 35/23 39/18 39/24
41/14 41/18 42/2 42/4 42/11 43/10
45/17 48/22 50/11 50/10 54/8 54/13
54/17 84/14 90/14 91/4 92/17 93/15
96/2 96/9 98/7 98/12 99/17 99/19 100/6
102/7 102/9 103/1 105/18 106/22 108/9
108/18 109/6 114/21 114/22 114/22
120/1 121/14 121/17 122/12 122/15
122/22 123/7 125/18 125/21 126/4
126/7 126/8 126/24 136/23 137/2
141/17 142/3
himself [2]  107/19 113/20
hire [1]  60/24
hired [2]  54/16 60/24
his [57]  6/4 35/5 37/23 40/14 43/10
44/5 44/22 50/1 50/10 54/16 55/16
55/19 80/22 81/4 82/21 82/21 83/1
84/17 90/13 92/7 92/24 97/22 98/6
102/7 102/24 103/22 104/12 108/14
108/19 109/8 113/22 115/20 116/13
116/13 116/13 118/16 118/16 118/19
118/20 119/7 120/8 120/25 121/12
121/19 122/3 123/9 124/21 125/5 125/7
125/12 125/15 126/7 126/8 126/10
128/12 128/12 128/13
history [1]  81/16
hit [2]  12/25 112/17
hold [1]  65/23
holiday [2]  20/19 140/8
holidays [3]  13/6 17/14 27/8
home [1]  96/21
honest [1]  63/20
honestly [6]  41/20 53/1 53/8 63/18
65/11 116/12
Honor [164]
Honor's [3]  52/8 88/10 109/11
HONORABLE [1]  1/11
hope [4]  90/21 104/22 119/13 141/14
hoping [1]  135/19
HORST [3]  2/8 4/18 4/19
Horst's [1]  91/3
host [1]  42/22

154

**H**

**hosted [1]** 42/16
**hot [2]** 116/1 116/2
**hour [4]** 24/3 100/15 127/18 127/22
**hours [3]** 25/11 81/10 118/8
**how [52]** 11/17 11/20 12/23 14/18 15/3 16/1 24/21 25/17 34/13 40/22 45/1 49/5 52/12 52/12 52/20 55/6 56/22 61/4 61/18 61/23 62/3 62/22 63/24 66/14 71/25 72/17 72/17 73/15 75/7 84/6 88/6 90/2 93/5 95/3 96/6 102/15 103/17 108/18 109/11 111/5 111/21 111/24 118/9 125/23 127/1 129/8 131/3 133/16 139/6 140/25 141/9 142/14
**however [5]** 1/7 106/21 111/7 111/13 129/20
**huge [2]** 6/1 119/10
**hundreds [1]** 45/3
**hurts [1]** 72/3

**I**

**I'll [23]** 7/18 16/24 17/14 17/14 19/11 23/19 28/6 29/10 32/20 34/18 46/3 53/18 57/17 58/25 65/18 71/16 74/4 82/12 84/13 84/22 85/18 125/20 127/25 131/25
**I'm [90]** 4/4 7/11 9/21 12/8 12/13 14/11 15/14 18/10 21/20 22/16 23/9 24/9 25/14 26/2 26/21 28/14 28/21 29/6 30/7 32/5 33/2 34/7 34/9 34/18 35/5 36/4 38/8 38/16 40/2 43/17 52/22 52/23 52/23 53/20 54/12 56/14 58/5 60/3 61/1 61/14 62/2 62/13 62/19 63/23 69/1 69/11 70/6 70/6 70/12 75/16 78/22 80/6 81/1 81/2 81/7 81/11 81/12 81/12 81/14 81/14 81/20 83/7 83/13 85/21 86/24 87/7 90/5 90/10 90/11 91/21 94/9 95/10 96/18 100/4 100/5 100/12 100/24 103/7 104/11 105/2 105/16 115/15 118/13 123/24 127/10 136/19 137/22 138/3 140/21 141/6
**I've [6]** 21/12 27/11 92/13 93/3 122/9 141/5
**I-K-O-N-O-M-A-K-I-S [1]** 39/2
**i.e [3]** 31/24 42/13 67/24
**ICC [1]** 60/15
**ICHTER [18]** 2/19 2/20 4/24 94/7 94/22 95/17 97/17 99/11 99/12 106/16 106/21 107/7 109/5 109/8 109/13 115/16 123/20 136/9
**Ichter's [1]** 136/19
**idea [9]** 12/1 17/5 17/10 17/24 22/10 38/2 52/2 60/3 110/15
**ideas [1]** 95/8
**identifications [1]** 55/6
**identified [34]** 10/25 17/3 20/25 34/15 39/22 40/7 40/18 41/3 41/6 41/14 41/22 41/23 42/4 42/6 44/23 44/25 45/4 47/18 47/20 50/10 67/10 77/7 87/14 92/2 98/15 99/3 102/17 103/8 104/23 122/19 126/7 137/24 139/2 139/9
**identify [19]** 11/13 12/4 12/20 12/21 15/16 16/12 16/23 24/40 41/5 44/20 46/5 49/18 67/13 68/22 72/16 75/12 97/1 102/21 106/4
**III [3]** 2/12 2/15 2/17
**Ikonomakis [9]** 35/2 39/2 39/16 49/12

**image [1]** 66/8
**imagine [1]** 6/1
**immediately [1]** 56/10
**imminence [1]** 90/3
**impact [2]** 72/1 107/5
**impeachment [1]** 139/5
**impetus [1]** 44/5
**implementation [3]** 35/13 37/5 138/9
**implemented [2]** 41/8 44/3
**importance [1]** 123/13
**important [12]** 15/12 22/18 40/24 52/17 64/19 67/18 76/1 104/6 112/18 118/18 123/10 138/12
**importantly [2]** 39/5 59/16
**impose [1]** 127/3
**imposed [1]** 76/3
**imposing [1]** 74/19
**improper [1]** 76/1
**improperly [1]** 78/6
**inaccurate [1]** 47/11
**inappropriate [1]** 60/1
**Inc [1]** 78/4
**ince [1]** 22/15
**incentive [1]** 26/13
**incident [1]** 61/19
**inclination [1]** 52/8
**include [4]** 10/24 25/5 25/8 103/15
**included [2]** 33/17 103/25
**including [4]** 25/10 25/12 77/2 85/14
**inclusive [2]** 26/2 26/3
**inconsistent [2]** 116/9 116/9
**inconvenient [1]** 121/16
**indeed [1]** 19/15
**indicate [4]** 61/11 96/5 102/14 111/5
**indicated [2]** 96/8 110/11
**indication [3]** 36/15 39/23 138/8
**individual [15]** 7/8 7/9 16/11 20/8 35/1 35/4 43/9 54/3 62/21 80/3 95/2 111/8 124/18 128/22 138/1
**individually [1]** 100/17
**individuals [13]** 6/16 35/17 43/25 51/12 51/16 58/20 61/6 69/5 70/18 81/1 81/9 93/15 105/25
**inefficient [1]** 98/18
**infer [11]** 63/15 63/17 64/1 64/4 64/5 64/17 64/18 65/5 66/4 71/8 71/8
**inference [29]** 6/17 58/1 58/15 58/19 59/9 59/14 61/4 61/5 61/7 61/22 61/24 61/24 62/15 62/16 62/21 62/24 63/21 64/13 64/24 65/24 65/25 66/1 66/6 66/7 66/10 66/15 66/23 67/15 71/4
**inferences [14]** 59/3 59/21 62/1 64/7 65/16 67/9 67/17 68/2 70/17 70/25 71/5 71/11 71/13 72/3
**inferred [1]** 65/14
**inferring [2]** 58/14 66/23
**inform [2]** 22/7 92/12
**informality [1]** 77/22
**information [4]** 43/12 138/4 139/7 139/25
**informed [1]** 77/1
**inherent [2]** 137/20 137/21
**initial [8]** 8/10 37/24 39/23 45/5 45/8 84/24 85/2 85/21
**initially [1]** 112/17
**initiated [1]** 102/17
**injunction [4]** 37/1 47/6 77/25 78/3

**injective [2]** 48/4 49/4
**ink [1]** 57/23
**insertion [1]** 98/18
**insist [1]** 37/11
**insisted [3]** 39/7 89/8 124/14
**inspect [1]** 92/12
**inspection [3]** 6/15 69/4 89/20
**install [1]** 66/2
**instance [3]** 9/3 10/10 87/1
**instances [2]** 49/22 74/25
**Instead [1]** 67/14
**intend [5]** 43/9 62/8 98/22 134/16 134/24
**intended [1]** 138/16
**intending [2]** 103/19 129/10
**intends [1]** 22/5
**intent [1]** 138/25
**intention [5]** 102/24 104/22 106/19 117/18 119/4
**intentional [1]** 124/14
**intentions [1]** 124/14
**interest [2]** 8/2 97/3
**interested [2]** 106/14 121/4
**interests [8]** 76/1 76/2 76/6 76/12 77/7 92/24 95/5 104/24
**interface [1]** 135/11
**interfere [1]** 96/2
**internet [3]** 129/24 132/20 132/21
**interpreted [1]** 78/6
**intervene [8]** 7/7 7/12 7/21 7/25 8/4 8/8 70/3 128/22
**intervention [1]** 128/23
**interview [1]** 126/12
**interviewed [1]** 126/15
**interworkings [1]** 49/23
**introduce [13]** 29/18 62/8 96/18 98/24 99/19 100/3 102/25 103/11 103/18 106/20 121/25 134/11 134/16
**introduced [2]** 7/5 58/6
**introducing [1]** 116/21 117/7
**introduction [2]** 99/7 106/13
**intrusion [1]** 58/23
**invade [1]** 128/12
**investigation [2]** 113/25 126/13
**investigations [2]** 113/17 113/22
**invocation [4]** 33/18 67/25 68/5 73/10
**invocations [1]** 68/14
**invoked [1]** 67/18
**involved [15]** 41/11 54/11 58/22 60/23 60/25 61/6 61/10 79/23 80/4 80/5 81/3 81/16 91/1 102/1 139/20
**involvement [2]** 59/11 59/13 59/15 80/21 104/2 123/20
**involving [2]** 107/14 130/17
**irregular [2]** 102/17 105/6
**irrelevant [1]** 135/23
**is [854]**
**island [1]** 114/21
**isn't [5]** 29/24 32/18 90/7 103/19 138/3
**issue [75]** 6/17 6/18 6/22 8/17 8/19 9/13 12/11 12/22 20/2 23/5 29/12 30/17 30/22 33/22 34/9 36/11 37/4 38/13 43/6 48/15 48/18 49/25 53/9 55/3 55/4 55/25 57/22 58/2 59/3 65/20 66/6 69/7 69/12 72/23 73/9 74/24 75/17 75/19 77/13 77/14 77/23 78/10 79/17 83/12 85/8 86/10 87/14 90/14 96/25 97/12 98/8

155

EXHIBIT 9

**I**

**issue... [18]** 99/20 99/25 100/2 115/12 119/21 121/15 124/12 128/15 128/23 129/2 132/4 132/23 133/2 133/12 134/8 136/5 140/7 141/1
**issued [2]** 57/4 84/24
**issues [43]** 6/4 6/12 21/1 28/23 30/7 31/23 32/2 33/4 35/9 35/25 36/1 40/21 46/4 53/17 65/10 69/2 72/12 72/20 75/12 75/24 80/5 81/19 81/20 82/9 85/9 92/23 96/11 97/6 101/2 107/14 111/10 114/24 116/23 121/11 122/5 122/19 123/23 124/3 124/25 130/5 132/16 132/18 139/12
**it [532]**
**It's [1]** 17/3
**IT-related [1]** 36/1
**item [2]** 129/4 129/5
**items [1]** 8/11
**its [10]** 8/24 9/1 55/6 66/4 99/14 112/18 137/23 137/23 138/9 138/25
**itself [7]** 61/7 69/23 138/6 138/21 138/21 139/12 139/14

**J**

**JACOUTOT [2]** 3/8 5/16
**James [4]** 36/12 36/18 36/25 37/20
**Jane [3]** 71/7 71/8 71/9
**January [11]** 26/14 27/2 27/10 28/2 28/8 32/18 35/22 39/17 53/24 105/6 138/17
**January 15th [1]** 39/17
**January 2nd [1]** 32/18
**JAVIER [2]** 3/5 5/19
**JEFFREY [2]** 2/2 101/14
**Jill [3]** 63/3 63/6 63/7
**joined [1]** 109/4
**joint [1]** 47/3
**Jones [2]** 78/2 124/11
**Jones' [1]** 131/10
**Juan [1]** 13/17
**judge [22]** 1/12 4/17 6/8 25/9 28/7 53/19 55/23 68/8 74/21 74/22 77/14 78/2 93/3 98/3 102/23 112/6 117/16 120/24 124/11 128/1 131/10 131/25
**judgment [13]** 31/24 50/19 61/21 62/8 62/18 65/24 74/9 77/6 116/18 122/20 129/21 132/1 138/18
**judgments [1]** 11/24
**July [1]** 50/1
**jump [2]** 100/17 115/22
**juncture [8]** 21/15 47/14 61/17 79/14 79/20 88/18 94/24 122/17
**jurisdiction [1]** 73/11
**jury [2]** 58/8 70/22
**just [188]**
**Justice [1]** 76/9
**justification [1]** 74/19
**justify [1]** 76/2

**K**

**KAISER [2]** 2/5 4/15
**keep [5]** 27/22 54/19 59/1 82/21 137/4
**keeping [1]** 97/18
**Kemp [1]** 124/12
**key [1]** 105/21
**kicked [1]** 79/7
**kids [1]** 96/21

**kill [2]** 100/21 115/16
**kind [18]** 47/10 11/17 11/20 13/5 14/18 34/20 35/2 35/8 35/24 37/4 42/11 51/5 98/10 114/18 134/5 134/19 141/9 142/9
**kinds [1]** 118/3
**king [1]** 121/7
**KNAPP [2]** 2/7 4/19
**knew [6]** 22/10 37/25 58/12 63/18 71/9 139/3
**know [162]**
**knowing [1]** 16/21
**knowledge [11]** 42/18 42/19 48/16 105/12 105/15 106/2 106/3 116/13 116/13 124/17 126/7
**knowledgeable [1]** 50/22
**known [6]** 38/4 44/18 48/9 48/9 91/14 117/22
**knows [6]** 22/15 30/13 43/1 109/23 121/2 128/24
**KREVOLIN [4]** 2/8 4/18 4/19 91/3

**L**

**L-Y-S-I-N-G-E-R [1]** 38/18
**lab [2]** 82/21 82/21
**lack [1]** 116/13
**lacks [1]** 131/3
**laid [3]** 84/8 95/21 112/12
**large [8]** 14/4 16/17 19/18 23/16 47/5 48/14 68/21 132/22
**LAROSS [2]** 3/8 5/17
**last [21]** 4/5 24/22 37/18 37/19 39/20 45/15 69/12 79/4 84/22 85/14 95/1 98/11 98/11 99/10 104/14 114/6 114/25 123/19 125/20 125/24 129/1
**late [9]** 7/25 41/17 51/2 103/11 104/3 104/10 120/21 120/21 121/18
**later [7]** 10/8 47/7 68/15 91/5 93/4 140/20 140/25
**Latham [1]** 60/7 60/21
**LAURA [2]** 2/11 2/17
**law [35]** 2/14 2/15 3/13 6/19 32/4 37/6 69/7 69/15 69/16 72/6 72/18 72/22 72/22 73/4 73/9 74/7 74/11 74/11 74/12 74/13 74/14 74/18 74/20 74/21 74/23 74/25 75/13 75/19 76/11 77/2 77/9 77/12 87/3 97/24 104/17
**lawyer [3]** 81/23 91/20 95/16
**lawyer's [1]** 125/15
**lawyers [4]** 18/6 18/6 87/2 114/5
**lay [1]** 113/9
**lays [1]** 67/21
**lead [2]** 34/2 93/21
**lean [1]** 30/19
**leap [1]** 71/7
**learn [1]** 10/11
**learned [4]** 118/20 138/2 138/11 139/1
**least [17]** 5/24 18/16 19/12 22/18 45/12 50/19 52/6 53/21 60/22 61/1 79/1 86/15 87/20 91/22 96/25 99/23 120/8
**leave [5]** 34/7 46/3 64/7 89/11 122/6
**leaving [2]** 37/22 140/12
**left [1]** 135/11
**legal [5]** 31/23 66/10 75/12 98/16 104/18
**legislature [1]** 76/16
**legitimate [2]** 62/14 134/21
**Lenberg [15]** 101/14 101/18 101/20 102/2 102/4 103/8 105/5 105/14 107/15

**Lenberg's [1]** 107/25
**length [6]** 25/11 61/21 106/8 118/8 118/12 125/10
**less [2]** 108/1 108/1
**let [23]** 7/13 15/10 17/20 21/3 23/11 26/17 29/10 34/21 47/10 47/13 57/22 62/23 63/1 79/1 85/18 110/12 113/6 115/11 127/11 134/10 141/14 141/24 142/3
**let's [10]** 9/22 10/13 32/19 36/17 52/13 54/19 54/22 59/19 78/13 91/18
**lets [1]** 18/16
**letting [1]** 82/9
**level [6]** 59/3 89/9 90/9 97/4 111/13 123/9
**liability [3]** 64/4 64/15 64/17
**liable [2]** 63/15 64/8
**LiButti [7]** 59/18 66/21 66/22 67/4 67/23 67/24 68/14
**life [2]** 90/3 138/10
**lifting [1]** 95/17
**light [1]** 125/7
**like [65]** 10/10 11/7 13/4 13/14 15/11 15/24 16/3 16/8 18/11 19/20 20/5 22/14 24/10 26/7 26/10 27/10 31/11 31/17 37/13 46/14 51/2 51/22 52/15 53/15 54/2 55/7 56/23 57/16 58/7 61/8 63/3 63/11 64/16 65/6 69/8 72/5 72/8 72/16 73/22 77/15 79/23 82/4 82/10 82/20 83/4 87/4 91/22 95/23 106/22 108/7 109/15 115/6 115/7 115/7 115/8 116/20 119/11 120/23 123/15 128/2 129/19 136/23 136/25 137/4 141/9
**likely [6]** 18/12 19/17 23/21 38/9 41/10 106/18
**limine [7]** 6/14 33/17 33/19 67/12 68/5 75/4 134/18
**limit [1]** 127/4
**limitation [2]** 93/7 93/10
**limited [7]** 9/10 59/22 82/23 91/14 97/24 130/5 138/6
**limits [1]** 122/25
**line [4]** 1/6 79/7 85/1 85/22
**lines [4]** 63/10 120/17 120/17 121/3
**list [59]** 12/22 13/2 14/4 14/25 15/11 15/25 16/15 16/25 17/21 18/4 18/11 18/14 19/1 19/3 19/9 20/4 20/6 20/6 20/11 22/12 23/5 23/6 23/14 23/15 23/18 23/18 34/12 35/5 35/12 35/15 35/23 36/3 36/5 36/22 37/12 42/2 42/3 43/13 45/7 47/18 49/10 51/12 51/19 51/23 52/2 52/18 69/5 72/25 73/2 78/1 81/9 87/1 90/24 91/20 92/1 101/13 104/5 125/21 125/21 135/9
**listed [8]** 6/16 34/2 34/20 34/23 34/24 35/1 48/12 101/13
**listen [2]** 21/18 87/4
**listening [1]** 100/16
**listing [2]** 32/1 44/5
**lists [2]** 55/5 55/5
**literally [1]** 114/15
**litigate [1]** 39/6
**litigating [2]** 72/21 73/24
**litigation [3]** 2/9 5/3 118/5
**little [18]** 11/7 24/7 27/23 29/7 32/20 47/2 62/4 73/3 73/5 77/21 87/8 95/10

**L**

little... [6]  105/17 127/22 132/17 134/8 136/24 137/7
LITTLEFIELD [1]  3/6
live [6]  6/24 46/25 52/11 53/15 69/22 122/12
lived [1]  10/1
lives [1]  35/24
living [4]  46/21 83/24 133/8
LLC [1]  3/6
LLP [1]  2/6
loads [1]  59/10
local [3]  97/13 97/18 99/13
location [1]  128/13
log [1]  115/7
logic [1]  125/12
long [12]  23/6 23/15 24/21 25/17 52/1 68/20 91/15 118/9 127/7 127/23 131/7 137/5
long-winded [1]  127/23
longer [4]  27/23 35/22 92/24 116/16
look [18]  13/4 13/14 14/14 15/11 32/5 32/5 43/25 56/8 56/10 65/7 74/13 75/11 76/11 87/24 89/2 89/23 91/22 121/16
lookahead [1]  23/7
looked [1]  108/4
looking [11]  19/1 26/7 27/3 27/10 75/17 75/20 90/1 91/2 91/7 108/16 136/19
lose [3]  26/14 27/23 122/10
losing [2]  27/7 35/5
lost [3]  18/9 84/23 124/16
lot [26]  9/24 10/17 13/10 14/25 15/8 16/17 16/22 18/5 25/5 28/12 33/6 46/23 50/9 51/8 55/21 57/23 77/1 77/2 79/16 80/21 95/17 108/11 116/5 135/19 137/3 137/13
lots [7]  46/20 85/8 114/3 121/2 121/2 121/3 136/24
louder [1]  30/20
love [1]  54/15
lunch [8]  52/14 56/9 56/10 56/20 59/1 68/25 70/11 141/10
Lysinger [4]  35/18 36/2 38/9 38/18

**M**

ma'am [1]  34/5
macro [2]  45/20 64/9
made [18]  5/23 46/5 52/11 63/19 71/21 72/3 84/20 85/17 87/21 94/25 95/25 96/4 96/10 111/2 111/9 122/21 123/3 125/3
made-up [1]  87/21
magazine [1]  54/13
magnitude [2]  58/15 100/16
main [2]  80/22 135/3
maintenance [1]  78/1
major [2]  47/23 105/3
majority [1]  59/12
make [68]  9/19 9/22 10/2 10/3 11/24 12/9 16/24 19/20 19/21 20/17 24/9 30/19 30/24 32/14 33/25 38/7 45/9 50/19 53/20 54/6 59/17 60/4 62/5 62/14 62/16 66/14 66/20 70/23 72/7 73/18 75/22 80/17 82/9 82/11 83/20 84/1 85/18 87/19 89/10 90/21 93/1 95/2 95/25 98/3 99/16 100/13 100/14 103/24

10/12 13/1 13/6 21/6 21/7 111/7 115/8 116/3 118/14 120/3 121/10 122/25 123/24 125/20 128/2 130/24 133/15 133/24 136/5 137/18 142/2 142/6
makes [4]  46/12 80/5 94/13 116/15
making [5]  58/14 62/21 96/10 97/14 137/22
malware [17]  63/11 64/17 66/3 71/8 71/9 80/1 86/12 86/19 86/21 86/22 87/8 87/10 89/15 89/23 91/25 93/8 133/8
mammoth [1]  100/18
manage [2]  70/6 98/16
manager [1]  36/21
mandatory [3]  32/1 34/15 34/16
manifested [4]  102/15 112/25 113/3 115/2
many [6]  12/23 54/13 58/21 70/9 77/15 141/16
March [1]  85/5
margins [1]  16/22
Marks [1]  40/14
Martin [2]  95/24 142/2
MARY [2]  2/5 4/15
massive [1]  98/19
massively [1]  84/23
MASTER [1]  3/15
match [2]  131/10 131/11
Matt [1]  39/14
matter [11]  22/23 47/12 73/16 73/17 81/21 95/3 124/7 124/9 136/13 137/6 143/11
matters [7]  27/15 55/21 56/23 81/5 104/23 106/8 119/2
Matthew [1]  40/3
maximum [1]  26/15
may [77]  1/2 1/4 9/12 10/17 11/12 12/5 12/23 13/8 14/2 14/6 15/2 15/8 15/25 16/1 16/2 16/6 16/12 16/21 17/23 18/14 19/3 19/6 20/6 20/7 20/11 20/12 20/22 21/3 28/1 30/14 32/14 33/25 34/7 34/24 35/11 35/12 36/2 40/1 41/18 43/11 43/13 48/12 48/18 48/22 49/10 50/6 51/12 51/15 51/20 51/22 63/14 65/15 72/9 72/9 73/21 81/16 83/13 89/2 92/16 92/17 94/10 94/12 99/8 99/20 103/22 104/14 104/19 107/1 111/10 114/11 117/9 121/23 125/22 132/25 135/16 135/16 135/17
maybe [20]  8/9 11/13 16/2 22/25 26/10 29/8 30/7 33/3 37/2 56/4 58/17 63/25 64/18 64/18 71/4 92/3 93/4 114/8 127/22 136/18
McGUIRE [5]  2/15 2/15 5/6 34/2 39/14
me [71]  7/8 7/13 10/3 15/10 16/6 17/20 19/7 23/11 26/17 26/20 27/10 29/8 33/9 40/17 47/13 48/20 50/15 52/16 53/12 56/11 57/22 57/25 58/7 58/18 60/2 62/23 63/1 64/1 70/13 70/20 71/20 75/22 75/23 78/25 78/25 79/1 79/15 81/20 82/9 90/23 93/20 96/8 96/11 104/11 104/20 106/5 106/18 107/6 107/6 107/24 110/2 110/5 110/6 110/7 110/8 110/11 110/11 111/5 111/8 111/15 111/18 111/19 123/17 127/11 129/7 133/1 134/10 136/25 137/15 141/12 141/24
meal [1]  54/23
mean [81]  11/1 12/19 14/8 15/15 17/21

me [71]  1/23  19/1 20/24 21/12 23/23 24/17 25/9 25/22 26/2 28/3 28/25 29/22 30/1 32/18 37/19 37/22 42/5 44/6 47/14 49/19 50/9 50/12 50/12 50/14 50/20 50/21 51/5 53/2 53/3 53/5 55/3 55/20 56/24 58/4 61/10 61/11 62/16 62/16 64/20 69/17 70/8 71/1 72/10 74/11 75/21 79/15 80/18 86/9 91/19 92/8 92/21 92/21 93/20 105/3 107/4 115/21 116/8 116/9 118/24 127/19 128/4 128/7 129/11 132/9 132/25 134/12 134/13 135/7 136/1 136/13 136/23 137/9 137/14 139/10 139/12
meaning [3]  45/4 77/25 113/16
means [11]  9/9 12/19 39/17 44/24 64/13 77/21 78/8 88/3 105/5 136/1 138/12
measure [1]  83/15
MECHANICAL [1]  1/21
media [1]  72/1
medically [1]  134/10
meet [9]  21/25 22/6 46/21 130/20 130/23 131/17 138/13 141/21 141/25
meeting [2]  24/13 46/1
meetings [1]  139/19
MEGAN [3]  2/12 2/17 4/22
members [1]  67/1
memory [1]  13/18
mentioned [7]  16/5 17/2 20/5 42/9 44/25 97/5 118/19
menu [3]  16/8 16/13 22/11
mere [1]  131/11
merely [1]  125/17
meritless [1]  125/14
merits [2]  97/10 124/16
Merritt [2]  35/21 38/20
mess [1]  51/6
messier [1]  24/18
messy [1]  78/16
met [2]  61/15 63/17
method [1]  139/16
methods [1]  138/7
mic [1]  96/16
Michael [3]  13/18 41/24 43/8
Michigan [1]  80/3
microphone [4]  23/11 70/12 117/11 119/19
middle [4]  39/18 39/19 52/4 60/4
might [21]  11/14 13/18 14/12 15/12 26/21 31/8 45/10 46/1 50/18 51/14 56/20 57/13 57/13 63/20 69/5 72/13 83/1 93/15 116/19 122/4 129/16
MILLER [8]  3/5 5/13 44/11 44/11 46/10 47/10 51/11 125/24
mind [7]  6/20 24/7 34/7 108/2 119/7 134/12 135/9
minimum [2]  24/11 24/11
minor [3]  99/23 99/25 119/13
minute [3]  39/20 85/19 127/13
minutes [6]  70/7 70/10 78/24 127/25 128/13 128/14
misinterpreted [1]  115/7
misread [1]  63/25
missed [1]  140/5
MISSETT [4]  2/12 2/18 4/22 4/25
missing [1]  28/9
Misty [4]  63/3 63/6 63/7 108/15
misunderstanding [2]  30/18 40/11

**M**

**misunderstood [2]** 29/25 31/6
**MITRE [11]** 7/3 69/24 128/25 137/17 137/20 138/3 138/8 138/15 138/21 139/2 139/21
**MLK [1]** 27/6
**modification [1]** 131/22
**modify [1]** 30/10
**moment [5]** 26/20 28/11 85/15 108/2 131/15
**Monday [7]** 13/13 20/23 21/4 26/22 27/6 136/6 141/1
**month [1]** 27/15
**more [37]** 10/2 11/9 11/13 12/10 13/20 19/21 20/25 22/10 22/11 25/23 26/7 28/15 34/25 38/8 49/17 59/16 63/1 67/3 71/5 71/5 77/21 80/5 86/11 87/9 87/17 91/14 99/5 101/1 102/12 104/14 116/5 123/10 127/17 127/22 130/11 134/19 138/4
**morning [10]** 4/3 4/17 5/9 5/11 5/13 5/15 5/17 5/19 56/12 141/20
**morph [1]** 117/19
**MORRISON [5]** 2/6 4/13 4/15 5/1 86/13
**most [7]** 18/6 51/17 52/16 71/13 87/2 101/4 103/25
**motion [54]** 6/14 6/25 7/3 7/4 7/7 7/12 7/20 8/4 8/7 8/8 31/24 33/17 33/18 47/7 56/1 56/5 56/5 56/5 56/6 59/5 59/6 62/18 67/12 67/14 68/5 68/24 69/24 69/25 70/3 70/15 70/16 71/19 71/21 73/7 73/23 74/8 75/4 99/11 102/23 104/24 109/18 110/4 110/7 116/18 118/19 119/25 120/3 122/20 128/20 129/21 130/6 131/21 133/3 137/17
**motions [4]** 7/1 73/5 111/18 134/18
**motivated [1]** 96/9
**movant [2]** 65/25 66/1
**movants [1]** 67/12
**move [7]** 28/12 29/14 57/14 78/13 88/11 91/18 121/25
**moved [1]** 92/24
**moves [1]** 16/3
**moving [2]** 12/18 42/13
**Mr [16]** 20/2 53/21 92/21 94/22 97/5 97/20 101/16 102/4 107/25 112/8 115/16 117/16 121/17 122/2 130/1 136/23
**Mr. [169]**
**Mr. Barnes [4]** 43/15 44/6 44/7 51/18
**Mr. Beaver [1]** 38/23
**Mr. Beavers' [1]** 38/9
**Mr. Bedard [1]** 115/11
**Mr. Bedard's [1]** 119/20
**Mr. Bellew [2]** 41/24 43/7
**Mr. Ben [1]** 101/13
**Mr. Bernhard [6]** 43/19 44/4 44/6 44/7 45/16 140/24
**Mr. Brown [7]** 46/12 111/9 115/16 120/24 121/17 132/13 133/4
**Mr. Brown's [2]** 77/10 122/2
**Mr. Cary [1]** 106/16
**Mr. Cotton [8]** 103/8 105/5 107/14 107/24 108/1 108/3 108/3 113/16
**Mr. Davis [30]** 5/24 6/5 55/14 56/2 94/8 95/25 96/5 96/8 97/3 98/6 98/9 99/16 99/20 100/17 104/21 109/1 109/4 109/8

**Mr.** 110/21 110/23 111/6 111/8 112/3 113/20 116/21 116/24 121/12 121/16 122/4 128/21 136/7
**Mr. Davis' [6]** 7/10 7/11 42/20 70/4 94/24 113/15
**Mr. Gonzalez [2]** 141/16 142/1
**Mr. Hallman [2]** 14/20 14/22
**Mr. Harding [3]** 110/7 110/14 110/17
**Mr. Ichter [14]** 94/7 94/22 95/17 97/17 99/11 99/12 106/21 107/7 109/5 109/8 109/13 115/16 123/20 136/9
**Mr. Ichter's [1]** 136/19
**Mr. Ikonomakis [7]** 39/16 49/12 50/3 51/13 52/16 54/3 92/5
**Mr. Lenberg [11]** 101/18 101/20 102/2 103/8 105/5 105/14 107/15 108/21 108/21 113/16 118/24
**Mr. Martin [2]** 95/24 142/2
**Mr. McGuire [1]** 34/2
**Mr. Miller [6]** 44/11 44/11 46/10 47/10 51/11 125/24
**Mr. Ney [1]** 136/20
**Mr. Oles [23]** 5/23 6/1 96/24 97/18 98/21 99/15 100/3 107/15 110/4 110/20 111/10 111/12 111/13 111/24 112/15 113/11 114/20 115/17 115/19 116/12 120/1 120/11 121/11
**Mr. Oles' [1]** 109/17
**Mr. Penrose [1]** 108/5
**Mr. Raffensperger [1]** 123/19
**Mr. Ricardo [1]** 6/7
**Mr. Russo [7]** 34/21 37/22 42/9 44/11 44/17 44/23 51/11
**Mr. Sterling [4]** 44/16 48/14 49/8 51/18
**Mr. Tyson [3]** 13/24 16/5 20/5
**Mr. Whitney [7]** 40/18 41/3 41/10 42/9 48/11 48/21 49/9
**Ms [1]** 40/14
**Ms. [7]** 7/20 7/21 7/24 8/4 60/7 60/21 140/11
**Ms. Boring [1]** 140/11
**Ms. Davis [3]** 7/21 7/24 8/4
**Ms. Deborah [1]** 7/20
**Ms. Latham [2]** 60/7 60/21
**MTX [2]** 42/17 42/18
**much [15]** 5/8 15/6 20/16 28/17 47/21 53/25 65/9 71/22 86/19 99/17 100/9 121/17 122/4 127/1 142/11
**mud [2]** 135/19 135/19
**multiple [6]** 38/14 96/4 118/5 123/13 123/17 127/8
**municipal [1]** 37/3
**municipality [1]** 37/5
**Muscogee [1]** 36/21
**must [2]** 21/24 89/10
**mutual [3]** 22/2 30/11 30/22
**my [66]** 6/11 7/18 8/7 13/5 13/18 16/16 16/21 18/5 21/17 28/22 29/1 32/4 32/21 32/24 35/5 39/25 53/12 56/24 56/25 57/10 61/3 62/20 69/1 70/13 71/1 78/25 79/5 81/15 96/1 96/2 98/11 100/25 101/22 101/25 102/9 103/22 104/2 104/11 104/22 104/22 104/24 105/18 105/19 105/23 106/17 106/19 106/24 106/24 108/1 109/16 110/15 115/5 117/21 118/13 118/19 119/2 119/6 121/3 122/9 123/6 128/4 128/6 131/11 140/10 141/20 143/12

**myself [5]** 33/14 50/21 95/25 106/23 106/24
**mysteries [1]** 76/25
**mystery [1]** 15/12

**N**

**name [9]** 7/7 7/8 7/9 35/5 38/16 43/10 44/22 135/8 136/19
**named [4]** 14/20 19/10 97/21 139/8
**names [1]** 44/1
**Nancy [4]** 36/11 36/18 36/20 37/19
**narrow [4]** 11/17 11/19 15/8 59/23
**narrowing [1]** 23/17
**naturally [1]** 88/3
**nature [3]** 86/1 102/25 128/6
**near [1]** 119/19
**necessarily [9]** 11/8 44/2 51/13 56/10 58/7 66/7 91/23 93/1 98/6
**necessary [10]** 8/16 9/16 21/21 22/6 22/17 48/21 106/18 122/16 128/10 130/9
**need [40]** 8/12 13/12 13/20 14/1 14/23 15/2 16/2 18/11 19/6 23/8 29/8 31/15 31/20 33/12 38/8 42/11 43/10 43/14 45/20 51/22 52/18 58/7 63/4 69/8 72/9 83/3 87/8 90/6 90/8 96/16 106/9 122/1 122/18 123/24 125/22 126/7 126/18 127/1 127/5 140/14
**needed [3]** 50/16 52/24 82/10
**needing [1]** 126/4
**needs [1]** 141/21
**negative [1]** 64/13
**neither [2]** 36/24 138/21
**never [35]** 13/10 16/20 16/25 17/2 17/2 17/3 17/8 18/7 34/12 36/11 36/15 38/14 39/3 39/23 40/18 45/24 65/5 67/2 81/5 91/1 95/6 96/8 107/21 109/15 109/18 109/20 109/21 112/5 113/5 116/17 116/21 117/5 123/25 124/1 124/1
**new [25]** 28/11 35/10 38/25 40/23 44/17 44/18 45/18 45/22 54/13 98/18 98/24 99/1 99/22 101/8 102/25 103/11 117/24 120/3 121/24 122/10 131/19 131/19 131/20 134/17 140/19
**news [1]** 126/12
**next [19]** 8/17 10/6 11/6 11/10 15/21 16/9 20/13 20/14 22/1 22/20 33/2 56/21 80/10 80/13 87/25 128/18 136/5 136/19 140/7
**Ney [3]** 136/20 136/20 136/23
**nicely [1]** 116/12
**Nick [8]** 35/2 35/5 38/11 38/17 39/2 40/10 40/16 44/20
**night [8]** 11/9 15/20 21/25 22/18 56/13 64/4 79/4 95/1
**nine [2]** 18/17 100/15
**no [66]** 6/8 8/5 8/12 10/8 15/2 17/24 24/18 24/19 35/22 37/17 38/2 39/12 39/23 42/5 46/15 50/24 52/2 52/23 53/20 55/9 57/8 57/8 64/24 65/2 66/6 66/21 66/21 66/21 68/16 68/16 74/6 75/3 76/6 76/25 78/12 83/6 86/24 89/15 95/3 99/5 100/1 102/22 106/23 110/5 111/12 113/6 114/21 114/21 114/22 117/2 117/3 117/14 118/21 119/12 120/7 124/7 124/25 126/20 127/4 127/17 127/21 132/3 133/7 133/24 137/24 138/8

Case 1:17-cv-02989-AT Document 1750-10 Filed 12/27/23 Page 160 of 170

EXHIBIT 9

## N

**nominal [1]** 119/21
**non [1]** 21/24
**non-offering [1]** 21/24
**noncompliance [1]** 74/17
**none [5]** 54/10 84/16 114/25 115/3 135/21
**nonelection [1]** 76/11
**nonetheless [1]** 43/3
**nonparties [1]** 66/24
**nonparty [1]** 138/22
**nonparty's [1]** 67/25
**normal [1]** 17/13
**normally [1]** 29/1
**NORTHERN [1]** 1/1 143/4 143/7
**not [295]**
**note [1]** 29/20
**noted [2]** 88/14 140/3
**notepad [1]** 88/4
**notes [4]** 86/17 86/17 88/6 89/10
**nothing [7]** 18/23 56/14 56/16 56/16 89/25 96/11 122/21
**notice [13]** 6/4 10/6 10/8 13/3 30/5 30/23 30/24 31/1 37/13 95/1 123/17 123/18 137/10
**notices [1]** 137/5
**notified [1]** 15/20
**noting [1]** 88/12
**notion [1]** 115/1
**November [2]** 13/13 85/14
**now [60]** 6/11 13/3 14/10 15/14 19/4 24/14 24/15 29/17 36/17 36/23 40/10 40/13 43/14 43/22 44/3 45/13 45/20 52/3 52/5 52/6 52/13 56/20 56/24 57/10 57/23 58/20 59/6 59/25 64/6 66/20 67/5 67/21 68/12 68/15 69/3 70/5 73/4 73/24 73/25 78/25 80/15 80/17 81/21 85/3 87/25 89/7 97/23 113/5 119/23 120/7 123/3 125/15 126/6 129/23 134/14 136/15 141/5 141/18 141/19 141/21
**Nth [1]** 83/8
**number [21]** 1/5 1/6 1/5 4/8 14/2 17/6 33/2 47/23 64/11 78/9 79/22 79/24 79/24 83/20 100/12 100/23 105/4 123/4 136/15 136/16 142/2
**Number 188 [1]** 78/9
**Number 2 [1]** 105/4
**numerous [1]** 84/14

## O

**object [3]** 132/4 134/6 140/2
**objecting [2]** 58/6 89/7
**objection [5]** 88/12 88/14 133/15 134/21 140/3
**objectionable [1]** 139/23
**objections [12]** 21/24 22/15 23/7 23/25 29/4 33/6 33/15 34/8 68/11 68/12 68/20 121/24
**objectively [1]** 97/12
**obligation [2]** 45/8 84/11
**obligations [1]** 106/24
**obtained [1]** 139/17
**obvious [2]** 50/14 50/15
**obviously [30]** 7/1 11/18 12/14 12/18 15/6 17/23 22/17 23/1 24/18 27/23 28/3 54/4 58/7 60/24 61/16 61/20 66/16 75/6 79/5 90/13 94/5 97/4 101/3 118/24

**occasions [1]** 96/4
**occur [2]** 30/14 106/1
**occurred [3]** 31/16 105/6 111/14
**odd [1]** 14/6
**odds [4]** 112/20 113/8 114/16 114/18
**off [15]** 7/13 20/4 20/8 20/9 20/22 37/12 54/21 68/12 73/3 73/12 86/5 88/7 88/25 89/6 137/2
**offer [5]** 22/5 36/15 38/22 68/8 115/8
**offered [3]** 13/16 46/20 114/25
**offering [10]** 10/7 10/7 21/22 21/22 21/24 22/4 22/4 125/5 125/17 138/24
**office [13]** 3/13 14/20 35/17 35/19 37/7 40/1 41/21 42/1 48/16 49/1 63/8 89/11 91/3
**official [7]** 1/1 1/2 1/3 1/7 1/23 143/6 143/17
**officials [5]** 58/12 58/15 66/25 67/1 123/9
**oftentimes [1]** 29/14
**okay [33]** 5/22 7/10 7/22 11/22 18/18 20/15 26/10 28/21 31/6 33/4 33/23 34/4 44/12 68/7 70/5 74/2 78/14 78/20 79/2 89/4 96/5 96/13 97/2 107/1 116/4 117/18 127/12 132/11 132/21 133/2 141/2 141/25 142/16
**old [1]** 134/16
**OLES [26]** 3/12 3/13 3/15 5/5 5/23 6/1 96/24 97/18 98/21 99/15 100/3 107/15 110/4 110/20 111/10 111/12 111/13 111/24 112/15 113/11 114/20 115/17 115/19 116/12 120/1 120/11 121/11
**Oles' [1]** 109/17
**omissions [1]** 71/2
**omnibus [2]** 6/13 6/25
**once [7]** 8/18 8/21 11/19 15/22 16/20 85/5 120/2
**one [102]** 9/6 9/17 10/6 11/14 11/15 11/23 16/7 16/24 20/2 21/23 22/4 22/9 24/10 27/18 27/22 28/10 28/15 29/6 30/8 31/19 33/25 34/6 35/18 36/25 37/1 39/22 39/25 41/15 43/20 47/21 47/22 51/14 57/1 58/10 62/5 62/16 66/25 67/1 67/22 68/8 69/23 73/2 74/5 74/7 74/8 75/12 75/24 77/4 77/8 79/9 79/22 80/6 80/7 80/20 80/25 81/15 82/3 82/15 83/1 84/13 85/18 87/25 89/15 90/18 90/19 90/23 91/2 91/4 91/20 91/22 92/4 93/3 93/14 94/25 95/16 99/10 101/15 103/4 110/5 110/19 111/2 111/3 112/13 114/21 115/22 117/2 120/7 120/20 123/13 125/20 126/17 129/15 129/24 130/5 131/20 132/13 133/3 135/4 137/5 140/17
**one-day [2]** 11/23 16/7
**ones [6]** 36/10 36/11 72/5 91/23 104/23 121/3
**only [38]** 1/2 1/6 8/18 8/21 8/22 10/17 14/12 14/13 15/4 15/17 15/19 22/2 22/3 29/1 29/24 30/2 30/6 30/9 30/17 30/21 34/17 37/23 48/11 54/2 82/1 84/24 84/25 87/2 92/22 95/23 96/18 97/14 102/25 104/2 105/18 125/5 126/14 126/17
**open [6]** 11/5 42/19 46/16 94/16 135/11 142/13

**operable [2]** 133/9 133/10
**operating [1]** 48/25
**operation [1]** 132/15
**operational [1]** 132/18
**opinion [9]** 106/3 118/4 118/20 124/4 124/6 124/9 124/24 125/17 126/11
**opinions [3]** 115/8 125/5 125/6
**opportunity [5]** 9/17 82/19 90/1 103/24 130/7
**oppose [1]** 130/8
**opposed [2]** 11/8 18/1 81/19
**opposing [2]** 9/2 94/5
**opposition [1]** 59/5
**opt [1]** 30/5
**option [1]** 119/12
**oral [1]** 56/5
**order [59]** 4/6 6/12 8/10 8/10 9/14 21/7 24/23 29/3 30/15 30/16 31/18 33/5 34/1 55/6 55/12 55/15 55/15 57/12 56/2 56/18 57/4 57/16 61/21 62/8 66/4 68/11 68/19 69/2 73/6 73/10 74/8 75/11 78/3 78/8 89/6 91/9 98/11 99/4 99/10 112/12 120/17 121/13 128/2 128/4 128/15 128/17 128/20 129/14 130/11 130/15 130/22 131/3 131/6 131/8 132/1 132/14 133/11 134/4 136/6 137/19
**ordered [3]** 37/24 85/24 89/20
**ordering [1]** 86/9
**orders [2]** 38/14 140/6
**ordinarily [1]** 82/25
**ordinary [2]** 112/14 115/10
**organization [2]** 42/20 138/4
**organize [1]** 82/16
**organized [1]** 56/21
**other [67]** 7/19 9/17 11/4 15/1 15/2 17/4 19/1 21/18 24/4 24/5 27/24 28/10 28/23 29/9 30/9 31/19 32/9 33/12 36/8 38/10 41/20 42/22 47/19 52/16 52/17 54/3 55/21 56/25 60/24 61/8 65/24 69/16 71/4 71/11 72/3 72/21 73/21 77/15 79/16 81/1 87/6 92/4 92/4 93/15 93/23 95/1 101/6 103/23 104/17 107/1 109/7 109/9 110/2 111/3 114/4 115/6 115/7 116/24 121/13 124/24 128/9 129/5 131/5 137/13 139/25 141/14
**other's [1]** 23/25
**others [11]** 35/4 35/16 52/19 54/14 61/13 78/4 85/1 101/23 101/24 105/19 113/2
**otherwise [6]** 21/17 23/1 70/17 76/1 99/13 110/22
**our [94]** 9/19 11/4 11/18 12/12 13/3 13/20 14/21 15/7 15/24 15/25 17/15 18/19 18/20 18/20 18/24 18/24 19/3 20/5 20/7 20/11 23/13 25/1 25/11 25/12 26/8 28/9 28/10 31/17 33/17 34/1 35/12 35/12 35/15 36/3 36/5 36/22 42/15 43/13 44/5 46/13 46/19 48/18 49/9 51/15 51/18 59/5 59/19 67/21 68/12 68/20 73/3 73/7 74/12 75/2 75/8 76/21 76/21 85/25 87/5 87/24 88/6 88/12 88/25 89/6 90/21 90/23 93/5 93/11 95/3 95/4 95/15 102/24 107/17 108/5 108/23 108/25 113/5 113/7 114/8 115/5 117/4 117/17 120/3 121/14 125/14 129/21 131/16 132/17 133/3 135/18 135/25 139/19 139/19 142/8

**O**

**ours [2]** 25/5 89/18
**ourselves [1]** 84/19
**out [48]** 13/1 13/24 14/5 16/10 21/1 24/7 27/12 30/5 35/24 37/22 43/14 45/6 48/6 48/7 50/8 50/21 51/4 54/7 55/15 65/2 65/13 67/2 67/22 81/2 84/8 87/25 88/5 91/4 92/9 93/22 95/4 95/21 97/19 111/21 111/25 112/12 113/9 123/22 124/1 124/3 124/16 124/23 124/24 129/20 133/4 134/19 136/1 142/12
**outcome [2]** 113/4 114/18
**outline [8]** 8/13 9/13 9/15 9/21 31/11 31/15 31/17 31/20
**outlined [2]** 8/13 104/25
**outlines [1]** 13/7
**outside [3]** 94/13 104/7 104/7
**outstanding [1]** 7/4
**over [24]** 13/8 18/20 26/19 27/12 35/6 37/15 42/14 42/21 53/22 68/20 68/25 72/21 73/3 75/13 77/25 79/4 81/7 83/14 87/19 89/24 108/23 114/6 115/25 130/16
**overall [2]** 29/1 131/16
**overblown [1]** 117/20
**overbroad [1]** 17/21
**overinclusive [1]** 45/7
**overseeing [1]** 124/22
**overused [1]** 100/21
**overwhelming [1]** 7/15
**own [10]** 8/24 9/1 46/13 97/22 98/1 98/6 99/3 122/3 125/21 131/11

**P**

**P.M [14]** 10/9 11/24 11/25 12/16 12/17 16/12 21/21 21/23 21/25 22/4 22/9 22/19 22/22 22/24
**Pad [1]** 135/7
**Pads [15]** 7/5 7/6 70/1 129/6 129/7 129/11 129/15 129/16 129/23 129/25 131/1 131/18 132/15 135/5
**page [6]** 1/5 75/12 75/18 75/20 75/21 84/17
**Page 16 [2]** 75/12 75/18
**Page 25 [1]** 84/17
**pages [10]** 8/14 8/18 10/4 21/7 31/25 68/20 121/3 131/10 131/12 143/9
**Pages 18 [1]** 8/18
**Pages 19 [1]** 21/7
**paper [6]** 7/14 9/25 10/3 86/7 100/24 129/19
**papers [3]** 114/8 129/21 137/1
**Paragraph [4]** 105/4 112/22 113/9 113/15
**Paragraph 2 [1]** 112/22
**Paragraph 4 [2]** 105/4 113/9
**Paragraph 5 [1]** 113/15
**Paragraphs [1]** 112/18
**Paragraphs 2 [1]** 112/18
**parallel [1]** 129/1
**part [29]** 10/16 23/4 23/13 31/8 33/18 43/2 45/14 45/19 45/19 47/5 48/14 55/15 58/18 62/21 73/4 93/24 98/21 100/25 107/16 108/5 108/23 109/1 113/23 117/6 117/7 129/17 133/14 133/24 139/18
**parte [2]** 48/4 78/8

**participate [1]** 59/7
**particular [17]** 23/22 23/22 38/22 43/10 48/3 48/15 49/21 53/3 66/2 66/5 82/15 91/25 96/9 97/3 101/11 131/15 137/25
**particularly [6]** 95/18 98/7 114/6 129/8 133/20 135/14
**particulars [1]** 49/11
**parties [12]** 8/12 21/10 21/20 21/25 22/2 22/6 31/10 48/10 79/5 83/10 114/2 118/5
**parties' [6]** 6/14 69/4 72/13 78/21 78/24 103/13
**parts [1]** 19/8
**party [8]** 9/2 10/8 21/22 21/24 22/4 104/9 135/13 138/21
**party's [3]** 79/10 79/10 101/13
**pass [3]** 108/8 108/8 108/8
**passage [2]** 62/20 128/7
**passed [1]** 137/19
**passing [2]** 44/25 64/3
**past [2]** 9/13 134/13
**pause [3]** 46/11 79/3 100/10
**PDF [1]** 1/1
**pending [1]** 74/1
**Pennhurst [1]** 78/7
**Penrose [2]** 108/5 108/7
**people [61]** 7/16 14/14 15/2 15/17 16/11 16/14 17/1 17/7 17/15 17/24 18/7 19/1 19/9 19/10 19/17 20/3 20/5 20/8 20/21 24/19 36/8 37/12 45/4 45/9 46/4 46/14 47/23 48/25 50/18 50/20 51/18 52/9 52/17 58/16 58/22 60/25 61/16 63/2 64/21 70/9 72/4 79/23 80/19 81/22 81/23 83/14 83/24 87/4 90/24 91/24 103/4 109/24 110/2 126/15 126/15 136/16 136/22 136/24 137/4 139/7 142/10
**per [2]** 26/3 95/16
**percent [4]** 17/25 18/1 20/12 51/16
**perfectly [1]** 62/14
**perhaps [4]** 40/2 80/22 91/22 110/13
**period [7]** 1/4 38/22 74/7 106/25 109/4 122/16 123/3
**permission [5]** 31/19 82/22 82/24 119/8 137/20
**permit [1]** 106/22 119/13
**persistent [1]** 139/18
**person [22]** 18/15 24/15 24/15 36/2 37/7 38/10 38/14 39/13 41/6 47/21 47/22 49/18 50/23 52/17 100/24 102/7 102/10 102/13 103/1 133/22 134/2 140/23
**personal [6]** 97/4 105/15 111/12 119/3 124/6 124/9
**personally [5]** 86/22 109/20 109/21 123/19 139/19
**personnel [1]** 113/18
**perspective [3]** 15/7 18/24 123/6
**persuading [1]** 83/4
**persuasiveness [1]** 118/1
**Ph.D [1]** 81/17
**phase [6]** 13/17 36/16 37/23 37/25 38/1 40/4
**phone [1]** 139/20
**phrased [1]** 73/14
**physical [1]** 105/10

**PICO [2]** 3/5 3/19
**PICO-PRATS [1]** 3/5
**picture [1]** 79/20
**piece [6]** 31/4 105/3 116/17 119/24 130/10 131/15
**pieces [1]** 62/9
**pin [1]** 52/13
**place [2]** 35/10 92/9
**places [1]** 43/24
**plain [1]** 132/2
**plainest [1]** 133/1
**plainly [2]** 131/4 132/8
**plaintiff [13]** 4/22 4/25 5/5 6/21 9/3 12/20 22/12 69/9 95/16 97/21 101/5 104/5 105/4
**plaintiff's [1]** 122/3
**plaintiffs [74]** 1/5 2/2 2/11 2/17 4/14 4/16 4/18 4/20 4/23 5/2 5/4 6/20 7/2 10/7 11/18 14/3 15/20 15/25 20/8 21/21 23/20 24/21 24/22 29/10 29/16 29/22 31/16 33/23 43/20 49/22 57/25 65/22 66/6 66/13 69/20 70/16 73/17 74/4 74/4 74/6 74/20 76/22 76/22 77/16 83/17 89/22 95/2 95/15 95/20 99/2 102/21 103/18 103/23 107/5 107/7 109/7 109/9 111/8 112/20 112/24 113/19 117/3 118/1 122/17 123/23 124/8 124/14 124/22 127/21 127/21 129/9 133/16 135/17 135/24
**plaintiffs' [34]** 7/3 8/20 11/20 12/3 13/25 14/19 14/22 15/1 15/9 15/17 15/22 16/9 21/8 26/6 30/1 35/23 37/10 42/14 42/23 43/11 69/25 73/14 80/2 82/2 85/25 86/4 88/6 104/25 107/2 121/20 122/1 127/20 134/11 139/18
**plan [4]** 40/8 102/9 134/14 141/20
**planning [6]** 35/22 57/5 101/10 102/6 105/13 106/10
**play [1]** 38/23
**played [2]** 95/4 101/20
**plays [1]** 40/22
**plead [1]** 133/16
**pled [2]** 61/16 63/17
**plenty [1]** 83/18
**PM [2]** 127/14 142/19
**point [64]** 7/25 12/4 14/5 14/17 15/8 15/24 16/24 19/15 24/21 30/8 39/25 41/17 42/25 43/20 45/20 46/12 49/2 49/6 51/14 51/21 51/21 52/3 53/9 54/18 56/17 59/5 62/5 62/10 63/21 64/9 70/23 71/23 73/2 73/10 73/12 73/13 77/10 77/16 78/22 79/7 84/22 86/17 87/15 90/23 91/5 91/6 93/3 93/19 100/15 102/5 105/17 107/3 111/14 114/1 116/6 118/18 119/20 120/5 122/22 125/20 126/9 127/11 133/7 134/23
**pointed [8]** 13/24 67/2 78/3 123/22 124/1 124/3 129/20 133/4
**pointing [2]** 75/4 81/2
**points [5]** 51/23 67/7 84/13 93/16 125/20
**political [1]** 60/23
**Poll [16]** 7/5 7/5 70/1 129/6 129/7 129/11 129/15 129/16 129/22 129/23 129/25 131/1 131/18 132/15 135/5 135/7
**pollbook [1]** 129/19
**polling [1]** 43/24

**P**

**Pop [1]** 121/7
**Pop-up [1]** 121/7
**portion [3]** 1/4 68/21 86/7
**portions [1]** 29/19
**poses [1]** 68/23
**position [26]** 8/20 8/23 8/25 9/14 9/19 10/23 10/25 21/8 30/1 30/23 37/16 59/19 59/25 62/13 75/2 77/11 84/19 96/24 96/25 100/4 107/13 109/8 112/21 119/6 123/11 140/4
**positions [4]** 82/8 114/17 116/9 120/6
**positive [1]** 123/7
**possible [8]** 23/24 24/10 50/19 58/9 69/5 79/24 87/10 128/17
**possibly [1]** 89/24
**potential [2]** 16/9 48/17
**potentially [3]** 3/11 48/1 132/8
**power [1]** 39/11
**practice [2]** 17/9 104/17 104/18
**pragmatic [1]** 93/21
**PRATS [1]** 3/5
**precaution [1]** 90/10
**precise [1]** 71/16
**precisely [1]** 79/9
**preclude [5]** 6/21 9/2 69/19 70/16 78/11
**preemptively [1]** 140/3
**prefer [5]** 6/3 18/2 27/22 28/15 77/22
**preferable [1]** 79/1
**prejudice [4]** 85/1 104/9 119/25 131/22
**prejudicial [1]** 103/13
**preliminary [6]** 37/1 47/4 47/6 77/24 78/2 79/1
**premature [2]** 60/1 130/24
**prep [1]** 18/19
**preparation [1]** 111/1
**prepare [3]** 17/5 19/18 86/2
**prepared [6]** 12/13 24/3 50/11 50/18 78/22 87/14
**preparing [1]** 13/6
**presence [1]** 4/9
**present [18]** 3/11 6/7 6/8 7/21 56/4 64/12 102/7 102/11 103/1 104/12 109/3 114/7 117/2 120/23 130/3 130/12 130/15 139/19
**presentation [4]** 94/24 101/9 103/13 104/25
**presented [13]** 8/7 61/12 67/14 71/2 72/18 100/12 104/4 108/25 116/12 116/13 123/16 130/14 135/14
**presenting [3]** 9/5 17/8 49/20
**presently [3]** 42/10 43/9 133/9
**preserve [2]** 87/23 94/2
**preserved [1]** 34/8
**preserving [2]** 33/10 33/21
**pressure [1]** 61/2
**presumptuous [1]** 117/13
**pretrial [33]** 1/10 4/6 6/12 8/9 8/10 9/14 9/15 21/7 24/23 29/2 29/22 30/15 31/18 33/5 34/1 41/5 47/2 55/5 55/11 55/15 55/17 56/2 56/18 66/12 68/11 68/19 73/6 73/9 74/7 75/11 99/4 120/17 121/12
**pretty [1]** 59/22
**prevent [1]** 98/17
**previous [1]** 107/16

previously [1] 46/8 34/23 34/25 35/5 49/13 66/17 103/3
**PRICE [1]** 2/2
**prior [10]** 9/18 13/25 22/7 29/12 30/14 34/15 42/25 65/21 73/5 139/20
**prioritize [1]** 18/16
**private [1]** 72/10
**privilege [5]** 68/1 108/13 108/14 114/22 119/2
**pro [1]** 7/25
**probably [11]** 13/2 20/9 26/5 41/2 44/4 45/3 87/2 100/25 101/5 115/10 125/4
**problem [14]** 41/6 48/23 58/13 62/12 66/5 68/23 78/7 84/19 105/9 111/15 112/1 116/8 116/15 127/4
**problematic [1]** 111/20
**problems [2]** 24/16 111/13
**procedural [1]** 57/1
**procedure [4]** 8/6 31/6 47/2 119/14
**procedures [1]** 117/6
**proceed [7]** 6/6 54/22 82/11 96/7 115/21 129/10 142/14
**proceeding [4]** 7/25 11/20 55/6 137/22
**proceedings [7]** 1/10 1/21 46/11 79/3 100/10 142/18 143/9
**proceeds [1]** 15/9
**process [12]** 19/21 28/24 41/11 41/15 76/18 76/23 97/13 97/14 97/22 98/9 117/5 121/15
**produce [3]** 39/10 112/23 132/9
**produced [3]** 1/22 91/9 139/3
**product [4]** 93/11 108/13 108/14 137/18
**productive [1]** 79/14
**productively [1]** 22/22
**professional [3]** 114/4 114/9 118/16
**proffer [6]** 66/14 66/16 66/20 67/5 70/21 120/3
**progress [1]** 72/8
**prohibited [1]** 1/7
**project [1]** 130/4
**proper [1]** 56/3
**properly [1]** 63/13
**proposal [13]** 18/22 18/23 25/11 26/8 79/21 80/2 83/20 86/11 88/15 88/25 89/3 89/6 111/2
**proposals [5]** 6/15 21/19 72/13 78/21 78/24
**propose [5]** 21/21 22/3 51/8 80/6 101/11
**proposed [12]** 8/10 9/22 10/7 29/2 34/1 73/6 75/11 80/8 80/19 82/14 85/25 128/11
**proposing [1]** 81/9
**proposition [2]** 65/23 78/5
**prosecution [1]** 95/13
**prospective [4]** 41/1 48/4 49/3 113/8
**protected [1]** 94/8
**protection [3]** 76/23 133/21 133/24
**protective [2]** 91/9 137/19
**protocol [3]** 82/14 86/1 89/3
**protocols [3]** 69/4 83/8 83/20
**provide [6]** 10/8 12/10 20/23 31/1 39/8 90/24
**provided [4]** 78/13 78/15 78/17 98/16
**provides [3]** 91/10 138/6 138/6
**provision [1]** 69/4
**PTO [4]** 8/14 8/14 32/11 33/8

**public [3]** 7/2 113/1 125/5
**publication [1]** 138/2
**publicly [2]** 89/14 125/10
**published [4]** 138/1 138/2 138/11 139/1
**pull [2]** 36/22 77/5
**pulled [1]** 73/3
**pulling [1]** 135/8
**punt [2]** 13/5 13/9
**purely [1]** 125/24
**purpose [5]** 45/5 45/5 48/11 95/2 95/5
**purposes [9]** 5/25 6/2 41/1 93/11 106/12 124/15 137/21 137/23 139/7
**put [34]** 14/3 16/14 24/23 25/12 26/1 33/1 40/4 45/7 46/15 48/18 49/22 52/13 54/15 55/20 63/11 64/16 66/9 66/9 71/8 73/14 77/12 81/8 83/19 102/22 113/13 117/22 118/2 119/8 119/24 120/3 122/25 125/21 126/22 137/1
**putative [1]** 55/19
**puts [1]** 26/5
**putting [8]** 19/16 31/18 49/9 49/9 62/2 71/9 74/24 81/9

**Q**

**QR [3]** 43/23 43/25 45/18
**qualify [1]** 103/10
**quantities [1]** 117/24
**quasi [1]** 99/24
**question [34]** 7/19 9/7 18/10 29/1 34/6 51/8 57/2 60/8 64/8 64/16 65/7 65/7 67/10 67/20 72/16 75/6 84/10 92/7 93/12 93/20 98/21 99/15 100/5 112/10 120/15 122/11 127/2 129/1 130/12 130/19 130/23 135/12 136/6 138/11
**questions [21]** 31/22 35/14 43/1 44/9 44/12 59/10 63/2 63/10 63/14 64/11 64/12 67/16 100/13 107/2 108/17 110/17 110/19 111/22 126/21 126/24 131/23
**quick [6]** 34/6 36/5 57/1 67/7 75/10 77/4
**quickly [1]** 112/9
**quite [6]** 11/15 41/19 61/18 62/19 129/18 132/5
**quote [2]** 67/22 130/15

**R**

**Race [1]** 105/7
**RAFFENSPERGER [10]** 1/6 4/7 6/22 69/20 122/14 122/18 123/19 124/5 124/19 126/23
**Raffensperger's [2]** 124/6 124/9
**raise [6]** 70/14 73/8 79/17 85/5 133/1 139/13
**raised [10]** 6/12 20/3 35/16 45/25 55/3 107/21 133/13 139/11 140/19 141/5
**raises [2]** 64/19 125/17
**raising [3]** 56/17 69/16 131/22
**rampant [1]** 70/25
**RAMSEY [3]** 2/5 5/1 58/24
**range [1]** 62/17
**ranging [1]** 15/6
**rather [4]** 24/4 26/22 29/15 134/20
**reach [2]** 114/12 138/7
**reachable [2]** 140/10 140/14
**reached [1]** 64/25
**read [8]** 54/13 56/12 56/13 58/6 58/7

**read...** [3] 75/22 79/4 109/22
**reader** [1] 4/4
**reading** [3] 29/15 56/12 62/19
**reads** [1] 58/18
**ready** [6] 17/16 24/7 28/5 97/10 109/3 109/6
**real** [8] 36/5 53/17 61/23 81/6 87/21 90/3 118/8 138/10
**realistic** [1] 79/22
**realistically** [1] 88/17
**reality** [2] 47/17 48/24
**realize** [6] 9/24 12/7 14/8 104/10 107/4 138/24
**really** [50] 11/23 12/4 13/1 13/12 14/11 21/3 22/21 23/7 23/16 26/20 27/21 32/13 38/7 38/7 40/2 50/13 59/6 64/9 65/4 70/7 71/17 72/22 73/23 75/4 81/5 81/18 83/6 87/9 87/13 88/16 91/24 92/22 101/3 102/25 104/2 105/2 106/9 110/20 111/21 117/3 117/25 118/6 118/11 119/6 132/22 133/20 135/9 136/1 136/17 141/13
**realm** [2] 78/8 92/24
**reason** [19] 8/5 10/16 21/14 23/4 23/13 30/25 31/2 36/3 37/24 39/10 43/4 48/12 49/17 53/20 103/16 110/23 112/16 119/3 135/22
**reasonable** [4] 19/19 80/7 87/17 89/5
**reasonably** [1] 25/22
**reasons** [4] 103/16 103/17 120/20 126/6
**rebuttal** [1] 8/22
**recall** [9] 8/22 14/23 15/2 16/2 34/24 89/2 108/19 108/20 108/21
**recalls** [1] 38/12
**received** [2] 23/15 29/2
**recent** [1] 76/9
**recently** [2] 95/18 101/4
**reckless** [1] 72/3
**recognition** [1] 49/3
**recognize** [1] 14/4
**recollection** [1] 139/6
**recommendations** [1] 56/22
**reconfigured** [1] 105/10
**reconsider** [2] 69/1 134/4
**record** [34] 4/10 6/2 7/24 46/21 54/21 59/20 65/3 65/8 65/13 68/6 71/3 71/11 72/16 79/4 85/18 95/6 95/20 98/19 100/8 100/15 100/16 103/25 104/6 110/25 113/14 115/1 120/9 120/11 120/17 120/18 120/19 126/22 139/17 140/4
**recorded** [1] 89/12
**records** [1] 97/8
**recuse** [1] 98/3
**refer** [1] 113/22
**referee** [1] 12/16
**reference** [3] 73/10 75/11 75/18
**referenced** [2] 51/12 62/7
**referencing** [1] 1/5
**referring** [1] 30/18
**refreshing** [1] 139/5
**regard** [2] 104/23 111/19
**regarding** [12] 6/15 6/20 8/19 33/5 36/13 44/10 45/15 62/9 72/12 96/10 105/9 131/4

**register** [1] 129/7
**registered** [1] 33/25
**registration** [29] 35/7 35/9 35/10 38/12 38/13 40/11 40/21 41/16 42/15 42/22 44/10 48/5 48/6 78/1 129/2 130/1 130/10 130/13 130/17 131/19 131/19 133/4 133/9 133/14 133/23 134/17 134/25 135/5 135/8
**regular** [1] 18/16
**regulatory** [3] 76/1 76/6 76/12
**rehash** [1] 85/21
**rehashing** [1] 31/23
**rejection** [1] 105/9
**rel** [1] 78/4
**related** [4] 31/23 36/1 43/7 124/13
**relating** [3] 6/18 69/6 69/14
**relationship** [3] 114/5 114/9 114/10
**relative** [1] 43/11
**relatively** [2] 64/11 72/5
**relevance** [8] 44/19 124/7 124/25 125/23 132/2 132/6 133/16 134/9
**relevancy** [2] 131/15 131/17
**relevant** [25] 31/22 36/2 36/14 38/3 38/22 39/3 58/5 71/2 74/12 75/1 75/7 76/17 84/16 123/3 123/4 124/5 129/12 129/16 131/4 132/8 132/8 132/9 132/12 132/15 135/15
**reliable** [1] 64/20
**relief** [4] 41/1 48/4 49/4 129/15
**rely** [6] 39/24 45/6 45/10 91/10 138/16 139/14
**relying** [1] 124/21
**remain** [1] 136/16
**remainder** [1] 119/5
**remaining** [1] 130/23
**remember** [5] 27/2 92/4 107/25 122/1 141/8
**remind** [1] 107/24
**reminded** [2] 16/6 90/23
**reminding** [1] 141/12
**remote** [2] 105/6 105/25
**remotely** [2] 102/16 105/22
**render** [1] 125/14
**repair** [1] 19/13
**repetitive** [1] 9/23
**replace** [3] 35/20 110/11 122/21
**replacement** [3] 38/9 41/11 41/15
**replacing** [1] 38/19
**replicate** [1] 84/18
**report** [21] 7/3 47/4 50/1 69/24 84/24 128/25 137/17 137/18 137/21 137/22 138/1 138/6 138/15 138/25 139/7 139/11 139/11 139/14 139/16 139/21 139/21
**Reporter** [5] 1/3 1/6 1/23 143/6 143/17
**represent** [8] 8/2 96/2 98/12 99/16 109/6 109/6 110/22 120/1
**representation** [11] 7/11 7/12 19/11 56/1 70/4 72/9 95/8 95/13 96/12 107/17 136/7
**representations** [1] 98/21
**representative** [5] 34/19 34/22 40/6 54/4 86/4
**represented** [2] 8/4 95/3
**representing** [1] 4/24
**represents** [2] 97/3 98/7
**reputable** [2] 138/2 138/3
**request** [12] 6/18 6/21 9/17 21/9 23/14

61/4 69/6 69/13 69/19 69/25 86/6 128/16
**requested** [1] 12/7
**requesting** [1] 31/19
**requests** [2] 70/25 72/6
**require** [2] 66/10 110/25
**required** [4] 9/21 39/13 59/17 126/1
**residual** [1] 138/13
**resisted** [1] 108/17
**resolve** [14] 7/18 7/23 22/1 22/17 51/20 59/6 84/6 86/10 88/11 92/6 94/5 114/12 120/7 141/15
**resolved** [3] 51/15 52/8 116/19
**resolving** [1] 33/9
**respect** [30] 9/13 30/9 33/14 42/9 43/7 49/12 55/11 55/14 59/18 65/20 66/12 68/4 70/15 84/23 88/13 93/7 94/15 109/8 110/4 110/14 111/8 116/11 117/16 124/10 129/25 132/24 133/2 133/20 134/16 137/17
**respected** [1] 126/4
**respects** [1] 88/10
**respond** [3] 79/18 117/9 125/1
**responding** [3] 12/8 49/24 84/16
**response** [5] 42/4 76/5 78/25 126/20 130/8
**responsibility** [3] 90/15 93/24 139/23
**responsible** [1] 87/7
**responsive** [2] 32/8 55/2
**rest** [3] 27/9 27/10 74/18
**restricted** [1] 1/3
**restriction** [1] 88/13
**restrictive** [2] 86/1 86/12
**restroom** [1] 127/11
**retained** [1] 139/22
**reverse** [1] 133/3
**reversible** [2] 83/13 83/13
**review** [6] 72/12 78/20 86/3 86/4 89/4 89/11
**revisit** [2] 28/6 78/17
**revocations** [1] 27/19
**RICARDO** [7] 2/18 3/11 4/24 5/5 6/7 95/7 115/19
**Richard** [4] 35/18 36/2 38/8 38/17
**Riddlehoover** [2] 63/3 63/7
**right** [89] 4/6 6/10 6/11 7/23 9/11 10/14 12/13 13/19 14/10 15/10 16/13 17/10 18/16 19/24 21/6 24/14 25/14 25/19 28/21 31/7 31/8 33/20 34/14 36/17 36/23 37/21 38/21 41/2 43/14 44/3 45/2 47/12 50/14 51/10 52/9 53/6 56/9 57/17 57/23 59/25 60/21 64/18 64/22 65/17 68/12 69/3 70/5 76/5 80/9 82/22 85/17 87/12 87/25 88/14 91/12 94/17 94/18 97/1 97/22 97/23 97/25 98/6 98/9 98/17 100/9 103/9 103/12 104/13 106/6 107/1 112/7 112/14 114/14 117/14 119/18 121/6 122/3 122/7 122/10 124/8 125/3 125/8 132/22 133/17 137/3 141/4 141/6 141/11 141/13
**risk** [2] 90/4 104/9
**RMR** [3] 1/23 143/6 143/16
**road** [1] 13/5
**Rob** [1] 5/6
**ROBBINS** [1] 3/6
**ROBERT** [2] 2/15 2/15
**Roberts** [1] 76/9
**role** [3] 45/16 101/20 106/17

**R**

**roles [1]** 95/15
**rolling [2]** 8/11 54/19
**rollout [3]** 20/19 44/16 44/18
**room [7]** 86/3 86/4 86/13 86/16 142/5 142/8 142/11
**rooms [2]** 142/2 142/7
**ROSS [1]** 3/6
**roughly [1]** 70/5
**rub [1]** 48/2
**rule [6]** 46/8 46/24 78/22 85/22 126/1 140/19
**Rule 26 [1]** 85/22
**ruled [5]** 111/23 122/11 129/11 132/4 141/4
**rules [6]** 8/6 8/6 97/13 97/18 99/13 134/5
**ruling [7]** 64/24 70/20 79/1 131/2 140/2 140/25 141/1
**run [12]** 11/9 18/7 32/3 46/17 47/15 47/15 47/15 47/15 47/16 47/16 54/7 83/4
**running [2]** 36/4 61/2
**runoff [1]** 102/16 113/1
**RUSSO [9]** 3/4 5/11 34/21 37/22 42/9 44/11 44/17 44/23 51/11

**S**

**sabotages [1]** 117/4
**sad [1]** 54/12
**sadly [1]** 141/22
**SAFE [2]** 73/1 73/22
**safety [1]** 83/8
**said [26]** 16/10 27/13 44/8 44/9 44/11 44/11 44/23 44/24 46/14 54/2 65/19 82/7 84/16 88/1 91/20 106/7 110/13 120/12 120/16 123/23 126/12 126/14 126/18 126/22 126/24 143/10
**sake [1]** 11/4
**same [18]** 12/22 14/5 23/14 28/25 29/12 31/13 33/24 35/3 39/15 43/19 48/23 52/10 53/20 73/24 74/15 90/25 91/7 140/8
**sat [3]** 52/9 85/3 86/13
**satisfaction [1]** 19/14
**satisfy [1]** 19/6
**save [1]** 37/10
**saw [5]** 19/7 19/8 19/9 88/8 98/11
**say [74]** 5/25 7/13 10/13 10/16 15/10 15/14 15/23 18/3 19/11 22/24 23/19 23/23 24/9 24/13 27/5 32/4 33/1 38/2 38/11 39/1 39/19 40/5 44/15 45/15 47/13 59/14 63/18 63/20 64/12 64/21 65/11 66/1 66/19 67/22 71/7 71/15 71/16 71/22 74/21 75/24 76/6 78/23 78/24 84/4 88/15 89/17 90/1 90/9 90/10 91/21 93/21 94/23 98/20 100/1 101/7 102/19 107/14 111/13 112/7 112/22 112/25 113/11 113/15 113/23 114/2 117/3 125/5 127/7 127/25 131/3 134/18 134/20 136/4 140/18
**saying [33]** 9/21 10/20 14/11 14/14 19/16 19/17 24/8 26/2 31/3 38/19 41/15 61/14 64/1 65/1 65/4 65/6 67/14 69/9 70/24 73/22 76/5 81/12 86/23 86/24 103/5 107/21 112/25 118/23 119/23 120/8 131/5 134/20 138/3

**says [6]** 5/19 9/25 63/14 81/4 84/17 87/1 125/15 130/15
**scanner [3]** 43/24 45/23 105/10
**scanners [1]** 45/18
**scanning [1]** 105/9
**scattering [1]** 140/7
**schedule [3]** 24/13 26/24 28/10
**scheme [1]** 64/7
**SCHOENBERG [1]** 2/3
**science [1]** 115/9
**scope [9]** 9/10 14/2 72/20 104/8 107/25 132/12 133/12 134/5 134/9
**Scott [1]** 105/8
**scrambling [1]** 47/6
**scratching [2]** 73/3 132/17
**se [1]** 7/25
**seal [3]** 57/5 57/14 57/15
**sealed [1]** 57/5
**sealing [1]** 57/19
**season [1]** 140/8
**seat [1]** 4/3
**second [9]** 21/23 46/9 74/10 82/4 115/20 115/21 132/11 132/24 133/2
**Secretary [20]** 6/22 35/17 35/19 40/1 41/20 42/1 48/16 69/20 122/14 122/18 123/11 123/18 124/5 124/6 124/9 124/19 124/24 125/3 126/5 126/23
**Secretary's [3]** 14/20 89/11 127/16
**section [2]** 30/9 56/21
**sections [1]** 30/9
**secure [2]** 86/22 125/14
**securely [1]** 83/21
**security [5]** 90/9 102/17 125/7 125/11 129/22
**see [35]** 11/17 11/20 12/12 15/15 19/2 24/4 24/11 24/16 31/2 32/2 32/2 37/14 43/25 53/15 55/19 55/21 58/2 60/13 60/19 62/23 69/1 70/20 71/17 83/12 88/6 92/17 97/12 97/13 97/14 97/18 109/17 119/12 130/22 137/11 141/6
**seeing [1]** 52/10
**seek [1]** 27/10
**seeking [11]** 6/19 17/22 48/4 59/2 62/24 65/25 77/17 78/11 117/21 129/18 129/20
**seeks [1]** 129/15
**seem [6]** 8/12 22/14 31/7 92/23 122/10 129/11
**seemed [1]** 50/15
**seems [6]** 16/1 22/18 48/20 51/2 69/8 107/5
**seen [9]** 17/8 97/24 98/5 98/5 101/4 102/13 105/25 113/23 123/7
**sees [1]** 42/13
**segregated [1]** 115/20
**select [1]** 29/18
**selectively [1]** 67/18
**self [1]** 131/11
**Senate [4]** 102/16 105/7 108/20 113/1
**Send [1]** 29/12
**SENIOR [1]** 1/12
**sense [11]** 32/14 38/7 60/4 76/20 80/5 80/17 82/6 94/13 111/7 127/5 133/24
**sensibility [1]** 87/12
**sensitive [2]** 119/20 136/13
**sensitivities [1]** 107/13
**sensitivity [1]** 80/4
**sent [1]** 95/24

**sentences [1]** 72/17
**sentencing [1]** 27/18
**sentencings [1]** 27/16
**separate [7]** 40/13 55/13 64/8 100/2 116/25 121/11 125/18
**Separately [1]** 75/3
**separation [1]** 93/17
**September [1]** 138/23
**sequestered [2]** 21/9 21/10
**sequestration [1]** 21/6
**server [4]** 60/8 60/11 60/13 105/11
**service [1]** 38/23
**services [1]** 87/5
**serving [1]** 123/21
**set [6]** 32/15 59/23 65/2 68/16 141/21 143/12
**setting [4]** 55/13 73/21 99/17 133/8
**seven [7]** 14/13 18/17 32/10 45/12 109/5 140/22 140/23
**several [1]** 78/4
**shall [4]** 21/22 22/5 22/6 87/3
**SHANNON [3]** 1/23 143/6 143/13
**shape [2]** 26/22 48/8
**share [1]** 92/15
**shared [2]** 95/7 95/12
**sharing [4]** 79/24 81/20 101/23 101/23
**she [5]** 7/8 7/25 8/2 60/23 128/24
**ships [1]** 64/3
**Shocking [2]** 121/22 121/23
**shooting [1]** 24/24
**short [3]** 9/17 72/7 128/8
**shortly [1]** 65/19
**should [30]** 6/5 6/16 8/17 8/21 8/23 9/1 10/8 13/13 16/3 22/11 22/25 28/4 30/4 31/10 34/2 49/19 56/4 65/21 68/2 68/24 70/9 71/8 71/24 93/20 106/21 107/16 109/7 109/11 110/13 141/4
**shoulders [1]** 61/3
**shouldn't [2]** 52/7 104/9
**show [9]** 17/1 30/15 39/17 76/4 102/15 105/6 106/1 115/11 115/11
**showed [2]** 45/1 45/4
**showing [4]** 30/22 115/13 123/25 131/14
**shown [2]** 17/1 124/23
**shows [1]** 111/17
**side [11]** 8/23 9/1 22/15 24/25 42/13 42/24 83/11 95/3 97/9 118/5 127/20
**sides [3]** 7/16 8/21 48/9
**sign [2]** 33/1 89/23
**significance [2]** 61/19 141/14
**significant [7]** 47/25 71/13 72/2 102/25 105/18 122/15 123/20
**significantly [3]** 11/17 11/19 118/11
**similar [2]** 23/5 77/23
**Similarly [1]** 44/21
**simpler [3]** 88/20 88/22 88/24
**simply [13]** 4/10 62/20 69/8 72/7 88/15 90/1 115/20 116/24 135/1 135/4 135/11 139/2 139/24
**since [18]** 8/2 11/6 13/17 22/8 38/13 45/16 50/1 54/7 57/4 57/23 85/5 85/18 92/6 96/18 110/15 123/25 130/6 135/5
**single [1]** 85/10
**sir [1]** 94/21
**sit [7]** 21/13 23/11 98/10 104/14 113/6 115/22 124/19
**site [1]** 105/7

Case 1:17-cv-02989-AT Document 1750-10 Filed 12/22/23 Page 165 of 170

**S**

sits [1] 40/12
sitting [4] 42/9 91/2 108/19 134/23
situation [10] 34/20 52/5 54/12 54/18 66/21 83/16 91/12 91/13 96/1 142/4
situations [2] 53/4 111/22
six [12] 15/5 19/12 24/24 45/13 100/21 101/9 109/4 111/17 118/14 119/7 128/13 140/22
sleep [2] 53/23 140/9
sleeping [1] 53/9
slept [2] 17/15 53/21
slew [1] 65/14
slight [1] 54/2
slightly [1] 50/1
slow [1] 63/4
slower [1] 24/18
small [4] 14/25 64/11 65/2 142/9
smaller [1] 13/2
so [207]
so-called [1] 45/23
society [1] 92/18
software [6] 101/24 108/4 108/5 108/6 108/16 138/10
soldier [1] 136/14
soldiering [1] 136/16
solely [1] 100/5
solution [1] 119/17
some [66] 8/10 12/6 14/6 16/21 17/7 23/6 23/9 23/17 27/15 28/1 37/3 35/25 37/10 37/13 39/9 40/10 40/21 42/14 44/19 47/25 48/15 49/2 51/23 52/7 52/7 56/25 58/10 58/16 60/3 63/2 65/1 69/10 71/1 71/2 72/7 73/19 75/14 79/6 79/7 81/3 81/6 83/15 84/1 84/10 87/12 87/20 88/9 90/8 91/5 93/17 96/1 96/25 98/2 98/4 103/15 110/23 113/24 119/24 120/25 120/25 124/7 127/11 128/12 134/5 134/18 134/21
somebody [18] 9/3 12/21 18/13 21/1 32/22 42/6 51/22 58/10 86/15 87/15 92/11 97/14 97/15 97/25 98/2 103/5 111/17 141/18
somebody's [1] 135/8
somehow [2] 63/25 117/18
someone [4] 38/25 39/12 60/22 108/7
something [42] 14/9 16/6 16/12 21/16 27/19 31/21 42/14 49/23 49/24 49/25 55/1 58/10 58/12 63/19 71/24 75/17 75/20 78/25 79/1 80/1 84/11 87/21 87/21 88/20 88/22 88/24 91/13 92/12 93/25 110/13 116/11 117/1 117/19 120/12 128/8 128/23 132/25 135/19 135/22 137/8 140/5 141/18
sometimes [2] 21/1 114/8
somewhat [3] 43/19 103/23 111/19
soon [2] 23/24 128/17
sorry [20] 10/21 25/7 25/14 31/5 37/17 38/16 43/17 52/21 52/22 63/5 63/5 69/11 77/19 81/7 90/11 96/17 103/7 140/17 140/21 140/22
sort [26] 6/11 7/22 22/8 23/7 23/17 24/10 29/5 31/11 42/14 51/2 52/7 60/3 62/17 71/12 84/10 87/4 98/4 98/8 111/21 115/25 116/20 127/15 129/1 131/5 137/14 139/4
sorts [2] 92/23 104/17

sought [2] 118/19 138/12
124/1 128/22 129/3
sound [1] 8/5
sounds [2] 26/10 115/8
source [6] 42/14 86/8 88/8 93/18 132/20 139/2
SOUTHWEST [1] 1/24
spared [1] 122/15
SPARKS [2] 2/7 4/17
speak [5] 19/20 29/11 30/20 74/4 118/9
speaker [1] 123/8
speaking [5] 21/12 97/12 99/9 111/16 136/15
speaks [1] 96/24
SPECIAL [1] 3/15
specific [29] 59/7 59/15 59/18 59/21 63/1 63/10 67/13 68/22 71/5 71/21 75/3 77/7 122/19 123/24 124/2 124/7 124/12 124/17 125/3 125/6 125/13 126/7 126/8 126/17 126/21 129/15 129/19 130/2 139/6
specifically [10] 12/7 62/24 67/9 107/17 120/4 125/9 130/17 134/12 134/15 134/24
specificity [1] 86/6
specifics [2] 102/22 126/14
speech [1] 124/13
speed [1] 4/4
spend [2] 13/6 18/5
spending [2] 51/7 93/22
spent [2] 105/18 118/14
spilled [1] 57/23
splice [1] 82/9
split [1] 93/24
spoke [1] 39/14
spoken [2] 102/4 130/1
sponsoring [1] 21/23
spot [1] 62/2
spring [3] 44/16 44/17 123/16
Springall [5] 89/16 90/18 90/25 91/3 91/15
SR [1] 3/12
staff [3] 35/12 124/21 124/23
stage [4] 59/15 72/25 103/12 121/18
stand [3] 46/15 54/16 109/3
standard [8] 9/14 53/3 76/21 84/6 126/5 130/21 130/24 131/17
standards [1] 61/15
standing [1] 55/19
standpoint [1] 37/10
stands [1] 66/20
Starks' [1] 102/15
start [9] 7/13 7/23 8/9 22/7 27/20 28/1 38/13 57/13 131/25
started [4] 26/22 31/18 125/2 125/24
starting [1] 133/7
starts [1] 111/18
state [87] 3/3 6/19 12/10 35/6 35/6 35/10 35/22 36/14 37/6 39/15 40/12 40/13 40/25 41/8 42/1 42/13 42/15 42/22 43/23 43/23 44/2 44/8 48/24 49/1 58/11 58/12 58/15 62/22 69/7 69/15 69/16 71/9 71/20 72/6 72/15 72/18 72/22 72/22 73/4 73/9 73/15 74/7 74/11 74/11 74/13 74/14 74/18 74/18 74/20 74/21 74/23 74/25 74/25 75/13 75/19 76/11 76/14 76/14 76/15 77/2 77/9 77/12 77/25 78/6 78/7 86/21 88/15

96/14 96/20 96/23 98/25 97/2 98/14
100/5 103/19 112/10 114/3 114/16
123/7 123/11 123/19 125/6 138/15
138/17 138/24 140/1 140/24
state's [15] 35/17 35/19 40/1 41/21 42/1 48/16 70/16 76/12 79/21 96/24 97/4 101/15 101/16 105/23 126/21
State's concern [1] 97/4
State's contention [1] 105/23
State's position [1] 96/24
State's proposal [1] 79/21
stated [2] 7/24 143/11
statement [1] 100/14
statements [9] 113/2 122/20 123/4 124/4 124/25 125/3 126/8 126/11 126/11
STATES [6] 1/1 1/12 1/24 143/3 143/7 143/17
status [2] 55/14 139/16
statute [3] 73/20 78/1 78/7
stay [3] 28/9 97/17 142/15
STENOGRAPHY [1] 1/21
step [1] 88/9
Sterling [5] 13/16 44/16 48/14 49/8 51/18
Sterling's [1] 40/17
stick [2] 115/18 137/9
sticks [1] 135/19
still [16] 14/1 35/22 35/24 36/1 40/1 47/17 64/19 91/2 92/6 96/6 100/24 119/11 129/12 135/25 136/1 136/21
stipulations [1] 30/10
stop [3] 17/19 36/17 110/10
straight [1] 83/12
strategically [1] 101/6
strategy [3] 87/18 93/6 103/17
straying [1] 76/16
street [1] 14/8
stringently [1] 86/22
strong [2] 21/14 26/13
strongly [1] 27/21
struck [1] 137/15
struggle [1] 107/10
students [5] 82/17 83/1 83/22 83/22 83/23
studied [2] 82/5 138/9
stuff [2] 50/9 99/3
subject [4] 91/10 104/20 116/18 122/10
subjects [1] 45/13
submitted [6] 10/3 36/13 56/7 68/19 68/20 88/15
subpoena [2] 38/23 39/11
subsequently [1] 89/21
substantial [1] 130/4
substantive [2] 114/16 121/24
substitute [1] 99/11
substituting [2] 97/16 137/15
such [5] 26/18 50/24 79/20 98/18 134/6
suddenly [1] 52/4
sufficient [1] 76/2
sufficiently [2] 18/15 90/2
suggest [6] 20/24 58/12 90/7 113/10 119/17 127/3
suggested [2] 45/25 110/20
suggesting [2] 20/25 57/19
suggestion [1] 39/4

**S**

suggests [1] 111/14
suing [1] 42/21
summarizes [1] 76/9
summary [12] 31/24 61/21 62/8 62/18
65/24 74/9 77/6 116/18 122/20 129/21
132/1 138/18
supervised [1] 89/9
supervisor [1] 37/3
supplement [2] 45/9 56/1
supplemental [3] 42/7 47/5 73/11
supplementary [1] 128/9
supplementation [1] 47/18
support [2] 77/7 138/17
supported [1] 90/18
supposed [1] 16/15
supposedly [1] 99/24
Supreme [1] 74/1
sure [38] 10/4 10/4 12/8 12/10 18/13
19/11 21/20 22/16 28/14 34/7 34/9
34/18 35/8 40/2 54/12 56/14 56/17
58/24 60/6 62/5 62/19 70/6 73/18 80/6
83/21 87/19 95/3 96/20 98/20 103/24
104/12 105/2 108/3 111/21 116/3
118/14 122/25 128/2
surely [2] 13/22 19/12
surprise [1] 110/5 110/8
surprised [2] 25/23 29/7
surprising [2] 125/4 125/4
surrounding [1] 6/4
sustained [1] 76/13
system [62] 35/7 35/9 35/10 35/11
35/14 38/12 38/13 40/11 40/13 40/22
40/23 41/9 41/16 41/21 42/15 42/22
42/24 44/17 44/19 45/23 48/5 48/7 50/5
58/23 63/12 63/12 63/19 64/17 64/20
73/15 73/17 73/19 87/10 87/10 105/9
105/22 108/24 124/8 124/21 125/7
125/11 125/14 125/16 129/2 129/23
130/13 130/16 130/17 130/18 131/19
133/5 133/6 133/6 133/8 133/9 133/14
133/22 133/23 134/17 135/5 135/6
135/6
system's [4] 6/19 69/7 69/14 74/17
Systems [1] 43/8

**T**

tactical [2] 46/5 52/11
tailored [1] 76/2
take [34] 20/7 20/16 20/22 24/3 25/12
27/23 29/15 34/4 38/5 50/10 50/17 51/3
52/24 53/6 56/20 57/15 57/17 65/19
69/23 82/12 83/4 86/5 86/16 86/17 88/5
90/14 93/23 108/10 118/10 122/7 127/9
127/9 127/10 127/13
taken [14] 8/3 20/9 37/12 61/11 61/12
70/11 95/16 112/21 113/8 113/17 120/6
122/13 127/14 137/2
taking [3] 20/3 87/5 100/4
talk [22] 12/15 22/17 22/21 22/22 23/8
24/4 38/6 62/3 62/3 86/16 91/25 114/10
114/21 116/25 117/1 125/12 125/16
127/5 127/6 130/7 141/19 142/6
talked [9] 50/20 62/17 102/2 109/18
109/20 109/21 125/10 125/11 141/17
talking [29] 22/20 22/25 25/17 26/11
26/17 29/5 32/11 52/21 52/23 52/23

02/15 52/25 61/15 67/10
91/13 91/16 99/22 113/3 117/25 118/6
118/7 126/19 127/6 127/15 128/12
134/6 137/15
talks [1] 125/13
target [1] 127/23
tasks [2] 95/17 109/25
TAYLOR [1] 3/9
team [2] 13/21 141/22
teams [1] 101/5
technical [9] 34/1 35/14 41/19 42/12
48/15 51/23 105/16 113/12 113/13
technician [1] 105/7
TED [1] 1/24
tell [14] 7/8 17/7 17/12 17/14 18/15
22/11 24/14 52/3 52/16 67/8 85/7
109/16 113/5 135/20
telling [2] 81/15 111/19
ten [2] 18/1 128/14
ten percent [1] 18/1
tend [1] 27/22
terms [7] 12/23 14/24 25/9 95/20 130/6
133/5 142/5
terrible [1] 54/18
terrific [1] 87/5
territory [1] 71/12
testified [4] 36/20 37/23 49/13 107/25
testify [20] 35/13 35/23 36/2 37/25
38/4 39/13 41/21 42/16 43/10 45/13
85/23 92/9 92/11 122/15 122/19 123/8
124/20 125/22 126/1 139/8
testifying [8] 35/2 50/3 50/5 50/7 51/13
51/16 81/4 92/7
testimony [36] 6/24 13/17 19/13 21/13
25/25 28/25 29/3 33/7 36/15 40/14
42/20 43/14 48/13 49/7 69/22 70/18
70/21 81/18 102/7 102/20 103/16
106/13 106/20 108/19 118/11 120/13
120/16 120/18 120/25 121/3 122/12
126/22 127/16 138/25 139/4 143/12
testing [1] 125/13
Texas [1] 35/24
than [27] 10/9 24/4 25/23 26/22 27/23
28/15 29/9 29/15 42/22 52/5 52/16
58/14 71/5 79/15 86/12 86/19 99/5
101/1 104/14 117/19 123/10 124/24
127/18 127/22 131/5 134/20 138/5
thank [29] 5/8 10/22 19/24 21/5 51/10
53/15 56/16 57/20 68/7 75/9 78/19
85/20 95/22 96/13 100/9 107/11 109/12
112/3 115/14 117/12 117/15 119/16
122/18 122/18 123/14 128/16 128/17
131/24 141/12
Thanks [1] 121/8
that [907]
that's [19] 10/4 25/14 26/6 29/21 31/8
41/12 53/18 58/17 59/19 61/19 64/3
65/4 100/2 101/22 107/20 107/23
108/16 117/14 132/22
their [55] 4/9 9/4 13/15 14/7 17/8 17/11
18/14 19/13 20/4 20/6 20/9 24/22 25/2
25/13 26/8 31/18 34/11 43/13 46/1 51/4
52/18 58/6 59/11 59/13 59/14 64/1
76/18 77/2 77/6 79/17 82/5 84/25 89/6
93/22 98/1 99/3 101/9 105/15 106/20
109/22 114/16 120/16 124/4 124/15
125/21 125/21 133/16 137/9 139/22

there [1] 11/19
them [84] 9/5 10/13 12/13 13/3 13/12
16/2 17/1 17/2 17/3 17/3 19/15 19/17
19/21 20/7 20/10 20/23 21/3 22/17
24/16 31/1 31/2 32/3 32/4 32/5 32/5
32/6 36/19 37/12 37/13 38/3 39/9 41/5
45/9 45/10 45/11 46/6 46/15 46/15
46/15 47/25 50/25 51/2 51/13 52/12
52/22 58/7 58/21 59/12 64/8 64/15 67/2
76/24 81/2 85/18 86/6 87/2 88/25 89/11
89/14 89/18 89/22 90/18 90/19 91/11
91/22 91/23 101/15 103/10 109/20
109/21 110/3 110/18 113/19 113/20
114/7 115/3 115/6 115/11 118/23
120/18 125/10 127/6 135/20 142/5
themselves [2] 74/16 74/21
then [67] 6/13 6/17 7/2 9/5 9/9 11/23
12/3 13/10 16/10 18/13 18/18 20/10
21/3 21/6 22/11 23/11 24/3 24/7 27/14
29/16 30/20 31/3 31/7 31/10 31/24 32/3
32/11 34/24 37/14 39/2 40/6 41/3 46/17
47/15 48/6 49/12 50/19 51/4 51/21 52/4
54/1 54/22 59/24 60/24 62/20 69/24
70/3 72/6 72/8 72/11 78/16 82/4 90/10
92/3 92/3 102/14 106/17 106/19 106/22
111/3 120/8 121/12 123/25 132/24
135/20 136/12 139/22
theoretical [1] 93/19
theory [10] 70/24 108/14 113/7 113/7
113/8 116/17 117/7 117/17 121/19
121/21
there [155]
there's [9] 47/1 75/14 92/1 98/2 102/23
121/2 121/10 121/11 137/3
thereby [1] 142/18
therefore [1] 8/8
therein [1] 143/11
these [52] 16/10 17/1 19/17 22/2 23/21
24/15 28/23 30/11 32/2 34/14 38/2
39/20 42/8 45/9 45/18 46/4 51/3 51/12
51/16 51/23 52/9 53/4 53/17 54/11
58/20 59/10 61/23 63/2 63/11 66/24
67/16 82/9 92/23 103/4 105/24 105/24
106/7 106/20 113/10 114/24 117/22
117/23 119/4 120/25 124/4 124/24
125/6 125/15 126/11 137/18 139/25
140/2
they [275]
thing [19] 8/9 11/1 17/17 29/1 31/13
45/15 51/25 52/10 68/8 71/4 73/24 77/4
87/21 94/25 95/23 107/6 114/25 116/24
129/1
things [40] 4/5 16/3 27/22 30/11 30/13
39/20 44/9 44/24 46/23 48/25 49/20
62/17 63/11 65/14 73/22 77/15 78/16
83/21 87/6 89/7 89/8 93/1 96/11 97/7
97/9 98/10 109/23 110/1 110/2 112/13
114/7 114/10 114/11 115/7 116/16
121/13 125/13 134/20 137/13 141/14
think [173]
thinking [7] 20/18 24/21 24/22 26/21
71/15 92/15 127/7
thinks [1] 104/6
third [1] 21/24
this [334]
thorough [1] 68/11
those [42] 20/7 27/16 28/13 29/18
29/19 33/4 33/9 33/10 33/17 36/10

**T**

**those... [32]** 36/17 37/11 44/15 50/8 59/18 63/14 64/6 64/6 77/1 77/8 82/14 84/6 88/9 91/21 94/12 107/15 108/25 109/18 110/1 110/2 110/23 116/23 118/3 123/21 126/15 126/16 126/23 135/4 137/9 139/7 139/12 140/5

**though [21]** 26/18 28/14 43/5 56/16 57/22 60/2 61/15 61/16 70/24 71/9 71/19 72/23 77/21 79/10 91/21 97/4 100/2 103/19 110/24 136/4 139/5

**thought [10]** 22/10 41/13 52/21 57/10 88/17 89/4 106/8 110/8 126/16 134/13

**thoughts [1]** 109/16

**thousands [1]** 45/3

**three [17]** 16/9 25/5 25/8 25/11 25/23 25/24 26/2 26/2 26/8 27/13 39/21 47/7 50/18 52/24 66/24 67/7 83/22

**three-day [2]** 25/11 26/8

**through [22]** 8/15 20/11 20/25 21/7 23/6 23/16 24/2 25/23 26/4 36/5 51/17 51/18 56/24 102/16 104/14 109/8 114/10 117/5 126/3 136/10 139/15 141/25

**throughout [4]** 42/19 95/9 95/12 123/2

**throwing [2]** 101/7 135/18

**Thursday [2]** 57/4 140/12

**tie [2]** 32/14 136/2

**time [64]** 13/25 14/5 14/21 18/5 19/25 20/17 22/8 22/21 23/2 23/18 26/4 26/9 27/23 29/15 37/10 38/22 41/4 41/5 41/8 51/8 54/20 55/17 56/3 56/11 56/12 65/7 73/7 73/10 76/11 77/16 79/6 79/22 80/4 80/16 88/18 90/8 90/9 91/8 91/15 93/22 96/22 105/18 106/25 111/4 118/4 118/8 121/25 122/9 122/16 122/25 123/22 127/1 127/4 127/15 128/8 128/11 131/16 133/10 135/18 135/25 137/19 140/8 140/16 141/5

**timelines [1]** 30/10

**timely [3]** 50/11 79/18 79/18

**times [4]** 54/13 83/18 84/14 92/25

**tired [1]** 24/2

**today [10]** 7/19 17/19 28/10 32/11 42/10 52/8 64/24 65/5 115/1 130/7

**together [5]** 81/10 114/2 136/2 142/1 142/6

**told [6]** 13/12 45/13 46/15 85/11 120/12 132/5

**tomorrow [1]** 16/11

**ton [1]** 16/20

**too [6]** 9/12 15/20 85/18 88/9 90/15 112/8

**took [3]** 59/11 63/16 89/14

**topic [2]** 132/2 132/7

**topics [3]** 123/18 139/10 140/6

**torture [1]** 116/7

**total [3]** 25/18 26/10 100/6

**totally [3]** 47/11 90/16 126/8

**TOTENBERG [1]** 1/11

**touch [5]** 60/11 60/17 74/22 90/10 94/4

**towards [4]** 11/21 26/15 55/20 120/2

**town [1]** 54/7 83/3 140/12

**tracks [1]** 44/1

**transcript [7]** 1/1 1/5 1/7 1/8 1/10 1/22 143/9

**transcripts [2]** 1/2 29/15

**translate [1]** 9/24

**translate [3]** 61/4 61/24 63/24

**translates [1]** 61/18

**transparency [1]** 46/19

**transparent [1]** 18/7

**transpired [1]** 84/5

**treated [2]** 37/6 133/22

**treatise [3]** 138/2 138/12 139/1

**treatment [1]** 133/18

**trees [1]** 100/24

**trial [88]** 6/13 9/18 10/10 13/9 14/17 16/9 16/21 16/22 17/5 17/13 19/8 21/1 21/13 22/7 24/17 24/24 25/17 25/18 26/7 28/5 28/9 29/9 29/14 30/13 31/10 32/15 32/15 33/13 33/22 39/18 39/19 45/7 52/4 59/19 60/4 61/2 61/14 65/3 65/21 66/5 66/13 67/6 68/5 70/22 70/22 71/23 72/20 72/21 73/13 78/16 79/8 85/12 86/2 86/7 86/11 93/5 93/13 96/1 96/3 97/7 98/17 98/22 99/8 99/18 103/12 103/16 104/1 104/12 104/14 106/8 106/11 106/22 113/6 115/21 116/15 118/8 118/12 120/2 120/9 124/25 126/6 126/25 131/23 132/3 132/16 134/7 134/22 136/10

**trials [5]** 11/4 16/17 18/20 52/12 116/4

**tried [5]** 13/1 13/3 75/13 113/10 126/3

**triggered [1]** 104/3

**trouble [5]** 23/9 32/25 70/13 95/10 141/4

**true [5]** 15/20 32/7 44/14 139/16 143/9

**truly [1]** 116/9

**truncate [1]** 50/12

**trusted [1]** 86/23

**truth [1]** 82/20

**Truthfully [1]** 28/8 72/25

**try [20]** 7/22 22/17 24/9 24/12 24/20 29/14 48/18 51/20 58/25 77/5 82/12 88/4 88/10 94/5 98/3 102/6 102/9 103/21 110/10 128/18

**trying [24]** 11/6 12/4 28/2 45/24 53/20 53/25 55/1 55/2 60/4 61/25 62/13 73/4 82/8 86/10 87/19 94/9 97/5 98/2 100/5 103/11 103/11 104/11 118/13 132/14

**Tucker [1]** 105/8

**tucking [1]** 28/21

**Tuesday [7]** 20/18 26/23 80/10 80/13 81/25 136/6 141/3

**turn [1]** 111/25

**turned [1]** 124/16

**TURNER [1]** 1/24

**turnover [1]** 35/18

**TV [1]** 5/7

**two [63]** 4/22 10/9 10/25 11/6 12/1 13/25 14/8 16/7 16/9 17/7 21/20 21/21 23/5 23/14 24/15 27/18 28/22 29/6 29/20 30/14 37/18 37/19 44/8 50/18 52/17 76/22 80/16 81/1 81/23 82/13 83/22 84/13 84/24 85/3 87/25 88/1 90/6 90/18 90/19 92/2 92/10 93/22 96/21 99/22 101/5 101/12 103/7 104/14 105/12 105/24 105/24 106/20 109/17 110/21 110/23 112/7 116/4 119/4 121/10 125/20 133/21 137/20 140/23

**two-day [5]** 12/1 16/7 23/14 29/20 80/16

**two-way [1]** 14/8

**type [3]** 62/1 113/6 132/12

**type [1]** 63/14

**typical [1]** 47/3

**TYSON [6]** 3/7 5/9 11/3 13/24 16/5 20/5

**U**

**U.S [3]** 102/16 105/7 113/1

**ultimately [3]** 65/16 81/22 115/17

**unauthorized [1]** 113/24

**unbelievable [1]** 111/1

**unclear [1]** 134/8

**under [20]** 8/6 37/6 51/3 53/6 57/17 66/22 74/6 74/11 75/18 76/4 76/23 76/24 95/7 95/13 97/13 97/18 100/22 122/7 139/24 140/2

**underlying [1]** 84/7

**understand [42]** 12/10 24/8 25/7 27/7 28/7 33/10 33/10 39/12 39/15 40/24 47/14 55/12 58/17 61/19 61/22 62/12 62/13 63/22 63/23 81/11 81/13 81/25 82/7 82/7 83/15 83/18 84/12 87/8 92/13 100/11 100/19 103/20 103/10 106/9 107/12 122/17 129/18 131/17 131/20 132/14 136/9 136/12

**understandable [1]** 71/19

**understanding [12]** 19/6 39/25 70/13 101/22 101/25 105/19 115/5 119/3 119/9 127/24 138/7 138/14

**understood [5]** 29/16 68/16 84/3 90/16 92/20

**undertake [1]** 110/16

**undertaking [1]** 100/18

**undisputed [1]** 85/5

**unfair [1]** 86/23

**unforeseeable [1]** 8/22

**unfortunately [2]** 28/9 36/22

**unhelpful [1]** 64/14

**UNITED [6]** 1/1 1/12 1/24 143/3 143/7 143/17

**universe [3]** 29/17 68/17 85/10

**University [3]** 82/16 82/23 82/24

**unjustified [1]** 117/20

**unless [8]** 22/10 25/10 29/25 30/17 75/16 93/2 140/5 141/18

**unlikely [2]** 16/1 48/20

**unnecessarily [1]** 13/21

**unquestionable [1]** 112/11

**unsympathetic [1]** 115/24

**until [9]** 17/7 39/16 54/22 65/2 85/14 116/22 138/16 140/11 141/10

**untrustworthy [1]** 137/23

**unworthiness [1]** 137/21

**up [59]** 7/15 11/6 11/10 14/3 15/4 15/13 17/1 18/13 28/13 29/15 30/13 36/22 39/17 40/14 42/14 43/5 43/11 43/12 44/22 45/1 45/4 47/7 48/18 49/6 49/10 49/11 51/24 55/19 66/13 72/25 73/8 77/5 77/20 77/24 80/3 81/17 84/12 86/12 87/21 91/17 92/1 97/8 97/9 107/9 107/16 111/14 111/17 115/11 115/11 115/13 115/22 116/22 117/10 121/7 134/6 135/8 137/12 140/11 142/13

**updated [2]** 50/6 81/5

**upfront [1]** 134/8

**upon [5]** 44/3 106/22 109/23 111/10 132/4

**us [42]** 15/20 17/1 17/7 17/12 18/15 18/16 20/16 26/1 29/12 29/22 30/5

## U

**us... [31]** 30/23 30/24 33/21 37/13 46/14 51/15 52/3 54/10 64/10 64/23 74/17 74/22 86/5 86/16 86/17 92/25 93/1 94/4 95/7 95/19 99/21 100/7 113/23 120/13 121/16 123/21 132/1 132/5 134/7 135/21 141/14
**use [11]** 40/12 50/16 86/7 88/19 91/21 93/5 100/21 119/4 120/13 137/23 139/1
**used [9]** 40/12 40/12 48/8 66/16 80/25 88/21 93/11 138/7 139/7
**useful [3]** 10/2 16/6 92/17
**uses [3]** 40/13 73/21 139/6
**using [1]** 120/16
**usual [1]** 7/14
**utilizing [1]** 102/17

## V

**variety [1]** 62/9
**various [5]** 43/4 43/12 70/18 95/5 95/15
**vast [1]** 59/12
**vendor [5]** 35/6 42/17 42/18 42/21 54/5
**verbatim [1]** 44/10
**verifiability [1]** 133/17
**versions [2]** 50/6 50/7
**versus [4]** 12/23 16/7 31/11 92/12
**very [41]** 5/8 8/3 16/3 16/17 17/18 18/12 23/6 23/15 28/17 44/23 47/2 48/2 51/2 60/23 71/16 71/21 72/2 72/15 89/7 90/11 91/12 99/16 100/9 104/7 104/20 112/15 116/12 116/22 119/13 122/5 123/7 123/8 124/12 125/3 125/6 125/13 126/14 130/22 135/24 137/2 137/2
**vetting [1]** 117/5
**via [1]** 139/11
**view [24]** 75/15 79/5 89/5 92/8 103/22 111/24
**viewing [1]** 93/7
**VINCENT [2]** 3/4 5/11
**violate [1]** 76/18
**violated [1]** 74/25
**violates [1]** 76/18
**violation [1]** 137/18
**visibility [1]** 13/20
**visit [1]** 12/11
**volume [7]** 6/1 7/14 11/12 23/16 101/2 109/23 139/25
**voluminous [1]** 120/20
**von [2]** 2/9 5/3
**vote [3]** 76/5 133/17 134/1
**voter [32]** 35/1 37/5 39/5 35/10 38/12 38/13 40/11 40/21 41/16 42/15 42/22 44/10 48/5 48/6 70/1 78/1 129/2 129/25 130/10 130/13 130/17 131/19 131/19 133/4 133/9 133/14 133/19 133/22 133/23 134/17 134/24 135/5 135/8
**voters [4]** 43/25 76/3 77/8 133/19
**voting [3]** 130/18 134/1 134/1
**vs [1]** 1/5
**vulnerabilities [3]** 43/4 102/18 108/24

## W

**W-H-I-T-N-E-Y [1]** 38/17
**wait [1]** 46/9
**waive [1]** 22/2
**walk [2]** 24/2 33/2
**walking [1]** 128/14

**wang [3]** 8/24 8/25 9/8
14/9 17/11 17/20 18/3 18/9 13/20 14/5
22/21 29/22 30/4 30/22 31/4 31/16
31/17 31/21 32/8 32/13 34/12 34/13
45/17 46/17 46/18 50/12 51/8 52/25
53/2 53/11 53/12 53/13 53/13 53/19
55/16 55/20 57/11 59/1 62/2 64/23
65/10 65/13 66/1 67/10 67/13 68/23
78/24 84/3 85/9 85/12 87/23 90/9 90/22
92/14 92/21 93/16 93/21 93/22 94/23
96/15 96/23 97/7 98/8 98/24 99/3 99/8
100/14 100/15 102/14 107/2 107/9
109/13 111/11 112/16 112/19 112/23
113/12 113/13 115/11 115/12 116/2
117/2 117/12 119/1 119/23 120/4
121/10 123/23 124/24 125/1 127/6
134/5 134/8 141/14 135/21 135/22
136/5 140/15 141/17 141/18 141/25
142/6 142/14
**wanted [17]** 9/19 65/19 66/8 68/22
78/12 90/23 94/2 94/25 96/6 100/8
110/11 112/7 112/13 112/15 116/22
116/25 128/1
**wanting [1]** 33/9
**wants [10]** 26/21 34/10 34/10 55/12
78/23 99/12 104/5 115/19 118/17
121/24
**warrant [1]** 8/7
**was [139]** 8/17 8/19 8/20 8/23 10/6
14/22 15/5 15/6 15/19 16/8 16/8 17/13
20/25 22/9 22/10 24/24 30/8 30/17
34/23 36/24 36/25 37/1 37/2 38/14 39/3
39/25 40/3 41/8 41/24 41/24 43/3 43/3
43/18 43/19 44/4 44/5 44/16 44/23
44/25 46/11 47/7 50/14 53/25 54/25
55/1 56/11 57/5 57/12 57/20 58/13
61/15 62/14 63/7 67/2 69/11 70/11 71/5
71/9 73/25 77/5 79/3 79/5 79/11 83/20
84/16 86/12 87/11 87/14 88/16 88/18
89/10 89/14 90/25 91/1 91/3 91/9 95/2
95/3 95/4 95/5 96/6 96/6 99/10 99/10
100/10 101/25 104/8 105/10 105/14
108/3 108/3 108/11 108/11 108/16
109/18 110/5 110/5 110/8 110/8 111/2
111/3 112/17 113/24 116/17 116/24
118/19 118/20 119/4 119/6 122/16
122/22 123/16 123/19 123/20 124/17
125/24 127/2 127/14 128/25 129/1
129/4 129/5 129/8 133/1 133/1 133/5
135/9 136/20 137/2 138/8 138/19
138/22 139/1 139/3 140/22 140/23
140/24 140/25 141/9
**wasn't [10]** 30/8 37/2 57/10 84/17
84/25 85/1 86/15 110/15 120/15 131/7
**waste [1]** 119/7
**wasting [2]** 135/18 135/25
**watch [1]** 89/9
**water [1]** 100/22
**way [31]** 7/15 11/14 14/8 16/18 29/21
30/9 48/8 50/23 50/24 51/8 51/20 58/2
58/17 65/7 65/12 65/24 73/14 87/7
87/16 93/25 101/8 113/3 113/6 115/12
116/20 125/2 127/3 129/10 133/25
137/5 141/8
**ways [9]** 16/23 46/17 58/16 82/13 95/4
113/23 114/17 127/24 128/12
**we [456]**
**we'll [23]** 11/18 12/11 15/15 15/23

27/25 28/9 28/22 30/20 31/8 32/6 52/14
54/22 56/9 56/17 71/17 78/16 79/19
90/21 116/5 121/25 122/6 127/13 130/9
**we're [102]** 4/6 10/12 11/8 11/20 12/3
14/1 14/25 16/11 17/14 18/15 18/21
18/25 19/2 20/13 24/14 24/24 25/10
25/23 26/10 26/17 27/7 28/2 28/4 28/12
30/11 31/6 31/19 35/24 37/11 43/10
45/21 45/23 46/16 49/9 49/9 51/7 51/19
52/4 52/10 53/4 53/9 53/9 55/6 56/18
57/12 57/19 59/2 59/14 59/21 64/4 64/5
65/1 65/5 65/9 65/11 67/9 67/15 69/1
73/22 74/22 78/10 79/25 85/11 85/15
88/7 90/1 91/7 91/13 91/16 93/2 93/5
93/8 99/9 99/16 99/22 101/8 101/8
102/10 103/9 103/13 107/13 113/6
114/22 115/23 117/21 117/25 118/6
118/7 125/15 125/18 125/25 126/1
126/24 127/7 128/12 129/18 129/20
132/17 134/4 134/19 141/19 141/21
**we've [14]** 11/9 17/19 24/20 27/15
46/20 95/16 103/8 109/10 113/18 116/3
126/6 130/6 134/3 142/11
**Wednesday [4]** 80/10 80/13 81/25 82/4
**week [12]** 4/5 20/14 27/11 28/9 28/16
53/21 82/17 87/25 93/13 128/19 136/6
140/7
**weeks [7]** 17/15 27/13 33/3 47/7 84/24
104/15 135/21
**weigh [1]** 103/17
**WELCH [3]** 1/23 143/6 143/16
**welcome [2]** 9/20 77/20
**welcoming [1]** 28/11
**well [70]** 4/4 5/14 7/10 7/22 8/5 11/12
11/21 11/22 12/15 13/22 13/23 14/7
14/11 17/20 17/25 21/4 22/8 22/13
23/19 26/17 28/21 31/7 31/20 33/1
35/21 37/16 41/7 41/7 50/2 53/11 54/19
56/20 57/17 61/10 64/20 70/5 70/15
82/6 87/4 89/5 90/5 91/18 94/22 98/11
98/24 99/1 99/14 99/22 100/23 105/2
106/6 106/17 107/1 107/4 110/19 111/3
113/10 114/2 114/5 115/15 115/16
116/8 119/1 122/7 123/7 127/24 132/7
132/19 134/10 136/13
**went [8]** 49/15 56/24 73/15 86/12
117/5 126/12 126/12 127/3
**were [61]** 15/21 20/10 24/12 33/4 35/9
36/8 36/9 38/4 39/4 39/7 39/8 39/12
44/12 44/15 45/4 45/14 46/4 47/5 47/6
50/14 50/16 50/18 50/23 52/21 54/25
55/1 55/4 57/13 58/16 58/22 59/10
61/10 63/2 63/10 70/22 73/3 77/17
80/19 81/8 81/9 84/20 90/17 108/17
111/22 115/3 117/7 120/13 124/13
124/14 126/15 129/10 136/15 136/16
137/15 140/5 140/18 140/19 140/19
140/22 141/7 142/18
**weren't [2]** 35/8 130/7
**what [189]**
**whatever [15]** 9/20 32/8 43/4 48/18
52/19 54/23 57/15 61/24 97/7 99/19
100/13 101/10 103/16 120/1 139/13
**when [54]** 12/2 14/14 24/13 28/3 28/23
29/11 30/10 32/15 33/22 34/10 38/5
41/6 42/12 45/7 45/25 48/17 51/24 52/2
56/2 56/18 59/15 61/1 62/4 66/5 73/1
77/6 78/5 84/7 84/9 84/24 89/2 89/20

# W

**when... [22]** 89/21 97/8 97/25 98/1 104/11 105/7 110/4 110/7 111/16 112/25 113/22 117/1 118/4 121/25 122/16 127/9 127/10 134/6 135/7 136/24 137/15 142/16

**where [43]** 12/12 14/10 17/1 17/6 29/20 30/4 35/8 40/9 40/11 40/25 45/24 46/13 51/21 57/25 65/13 65/25 66/6 69/1 71/13 73/8 78/18 79/5 84/12 84/20 85/11 86/2 89/9 91/13 91/13 98/10 106/4 111/22 114/10 114/16 114/19 114/23 115/10 124/11 125/24 126/22 127/3 132/14

**whereof [1]** 143/12

**wherever [1]** 54/23

**whether [41]** 7/18 8/17 12/22 17/24 22/21 29/6 31/10 42/21 43/2 55/14 56/25 58/5 58/21 61/15 64/6 64/6 64/20 67/20 71/17 74/13 75/25 76/12 76/17 80/15 84/5 92/9 92/11 94/7 99/15 100/2 105/21 106/16 107/15 120/9 121/11 121/12 124/7 131/18 134/1 135/10 141/17

**which [54]** 8/14 10/9 11/5 20/6 23/7 29/21 37/5 38/18 39/17 40/13 44/13 44/17 45/20 46/20 48/3 48/17 52/6 52/24 56/19 57/23 59/8 61/3 64/19 65/9 66/22 67/23 69/17 72/9 74/25 75/19 75/21 77/16 78/7 81/4 81/22 81/23 81/23 83/20 90/25 97/24 99/2 103/4 105/5 108/11 108/11 113/8 114/1 114/5 119/10 128/25 129/4 133/15 138/21 140/21

**while [3]** 26/17 63/14 81/16

**Whitney [12]** 35/5 38/11 38/17 40/10 40/18 41/3 41/10 42/9 44/20 48/11 48/21 49/9

**who [103]** 6/16 7/20 9/4 10/20 11/13 12/4 12/8 12/20 12/21 13/1 13/14 13/16 14/21 14/24 15/12 15/21 15/23 16/21 17/11 17/24 18/11 18/12 18/25 19/2 19/3 19/5 21/9 27/24 34/14 34/20 35/1 35/4 35/12 35/17 35/18 35/20 36/9 37/25 38/10 38/11 40/7 40/8 42/6 43/19 44/16 45/6 49/19 50/16 50/18 50/22 51/22 52/16 54/10 55/16 58/10 58/20 58/21 58/22 60/22 60/23 61/16 63/6 63/7 64/21 69/5 79/17 79/17 79/18 80/18 80/25 83/24 84/7 84/8 87/2 87/5 87/5 87/14 91/11 91/19 91/24 92/2 92/4 93/23 97/3 97/20 98/7 98/12 101/12 101/12 103/2 103/4 103/6 115/5 126/14 126/17 128/22 128/22 134/11 136/16 137/24 138/8 139/3 139/7

**whole [19]** 6/25 7/19 11/1 13/15 16/6 19/21 40/23 46/19 62/22 65/3 65/14 71/4 73/19 80/18 92/18 111/4 125/18 135/7 137/22

**wholesale [1]** 65/5

**whom [2]** 66/24 66/25

**why [35]** 4/9 6/5 14/24 20/6 21/20 32/17 35/11 35/15 38/5 39/19 40/16 41/3 41/17 43/13 46/9 46/20 48/12 48/21 49/18 53/3 64/3 64/9 72/5 84/14 84/15 84/20 90/5 108/16 108/16 112/19 120/20 121/5 122/17 126/16 142/13

# X

**X [1]** 1/8 9

**wide-ranging [1]** 15/6

**wife [3]** 28/15 53/12 116/7

**will [117]** 1/3 5/25 7/5 8/8 9/10 10/2 10/18 11/16 11/19 12/5 12/11 12/21 12/23 12/25 13/1 13/2 13/14 14/6 14/12 15/17 15/24 16/2 16/18 17/11 17/17 17/21 18/1 19/14 19/17 20/4 20/6 20/9 20/22 21/3 22/25 24/22 25/12 25/19 26/1 26/15 28/8 31/2 31/3 32/22 32/23 32/24 33/3 34/21 35/23 38/24 41/22 43/15 44/7 45/13 45/15 48/12 50/4 50/5 51/4 51/5 51/18 53/6 59/8 59/20 59/20 59/24 64/12 65/11 65/9 68/25 69/23 71/5 72/11 75/7 75/8 75/8 76/4 83/3 83/14 84/1 85/7 88/15 90/19 93/14 94/14 95/25 104/24 105/5 105/25 109/16 113/5 114/2 122/7 128/5 128/7 128/8 128/11 128/15 128/18 128/20 128/22 130/3 130/4 131/18 132/9 133/10 133/15 135/1 135/20 136/5 136/14 137/1 137/4 137/11 140/11 140/14 141/1

**WILLIAM [3]** 2/12 2/17 136/20

**willing [4]** 10/23 21/10 109/3 123/12

**winded [1]** 127/23

**window [3]** 25/2 52/7 80/17

**winds [1]** 140/8

**winning [1]** 141/7

**wireless [1]** 105/22

**wisdom [1]** 109/11

**wish [2]** 46/23 54/16

**withdraw [9]** 99/11 99/12 106/22 110/8 110/15 111/6 111/8 136/22 137/1

**withdrawal [1]** 110/15

**withdrawing [1]** 97/15

**withdrawn [1]** 136/18

**withdrew [1]** 111/4

**withheld [1]** 108/11

**within [10]** 7/1 26/9 48/3 49/1 68/17 72/24 88/8 99/13 99/14 104/8

**without [10]** 72/10 86/17 88/5 105/10 111/18 119/25 126/4 127/6 131/22 135/22 137/20 138/20 141/22

**witness [44]** 6/22 8/20 9/4 10/14 16/7 16/15 16/25 18/14 21/23 22/6 23/5 23/14 23/18 23/23 27/25 34/11 37/2 39/10 39/10 40/19 42/15 48/17 48/22 54/3 55/5 64/14 66/19 69/20 72/25 73/2 75/6 101/13 102/13 103/10 106/13 106/13 118/24 122/15 122/17 122/18 123/17 125/21 125/21 128/10

**witness' [1]** 25/25

**witnesses [71]** 8/17 8/20 8/24 9/1 10/6 10/8 10/17 10/18 10/24 11/5 11/13 12/11 13/1 13/8 13/10 13/14 14/2 14/6 14/7 14/12 15/1 15/5 15/5 16/9 16/19 16/21 17/11 18/18 21/7 21/9 22/9 22/20 25/24 25/24 26/3 26/6 34/11 34/14 39/21 42/8 45/12 47/17 52/2 54/25 59/10 67/16 67/18 70/18 73/1 92/2 99/23 101/12 103/7 105/5 105/13 106/20 109/17 109/19 110/22 110/23 113/11 113/15 117/23 117/23 119/4 120/25 125/25 126/2 126/21 140/19 140/23

**won't [3]** 20/9 31/3 93/13

**wondering [1]** 57/12

**words [4]** 35/15 69/16 72/21 125/16

**work [28]** 11/21 13/10 13/21 16/18 16/20 18/14 19/21 23/16 26/15 28/2 32/15 32/18 35/17 52/12 53/20 63/13 63/19 80/25 87/2 90/2 90/2 90/19 90/21 93/11 108/13 108/14 110/21 114/2

**workable [1]** 17/12

**worked [6]** 18/20 43/20 95/19 101/9 117/4 138/8

**workers [1]** 63/3

**working [10]** 15/14 17/15 35/24 43/22 58/11 91/11 92/23 101/5 111/12 111/16

**workings [2]** 124/20 125/16

**works [5]** 35/6 43/22 45/2 52/12 66/15

**world [3]** 61/2 91/6 127/25

**worry [1]** 13/5

**worse [1]** 52/5

**worst [1]** 51/25

**worth [2]** 37/14 71/22

**would [141]** 6/3 8/1 8/7 10/10 10/11 11/7 15/10 16/11 16/14 16/14 17/13 18/2 18/3 20/10 20/19 21/13 22/12 22/14 22/24 23/17 23/23 24/12 25/5 25/22 26/6 27/5 27/21 28/15 31/1 35/2 36/15 36/16 37/7 37/7 37/25 38/3 38/21 39/13 39/17 39/18 39/24 40/5 41/10 41/13 41/13 46/14 50/15 50/15 51/25 52/1 52/1 52/15 52/18 53/15 54/15 56/2 56/23 57/16 58/8 58/12 60/3 61/1 61/4 61/5 61/6 61/8 61/9 61/11 62/18 63/18 64/14 64/14 64/18 66/9 69/22 70/20 70/23 71/7 71/15 72/7 72/8 75/4 79/10 79/12 79/23 80/17 80/23 81/6 82/5 83/4 84/4 88/17 88/21 89/17 89/23 90/7 90/12 90/19 92/8 95/23 98/20 100/1 102/9 102/24 106/18 106/19 106/23 108/22 109/16 110/17 110/21 110/22 110/25 111/3 111/5 111/7 111/13 111/21 111/25 115/10 116/11 117/10 119/12 120/16 120/23 123/14 127/7 127/17 127/22 127/23 128/2 131/9 131/21 132/3 132/5 133/23 134/18 136/25 137/1 137/8 139/7

**wouldn't [7]** 41/3 54/11 63/15 64/17 66/10 110/24 112/14

**wrap [1]** 74/20

**write [1]** 128/8

**writing [2]** 128/23 135/22

**written [6]** 22/2 30/11 30/22 56/5 56/6 140/4

**wrong [5]** 18/22 18/23 34/18 113/18 115/9

**wrongdoing [3]** 113/17 113/19 113/21

# Y

**y'all [2]** 25/19 90/6

**Yeah [10]** 20/24 25/21 26/16 36/19 41/2 49/17 54/6 54/19 80/15 131/13

**year [4]** 77/25 85/14 96/22 114/6

**years [15]** 17/9 54/9 54/10 54/11 80/22 85/3 90/14 93/2 100/21 101/10 109/4 109/5 111/17 118/14 119/7

**yes [31]** 4/12 9/8 9/24 10/15 21/5 23/3 25/14 31/14 34/5 36/6 55/23 57/3 60/6 62/6 63/18 68/9 72/19 82/22 90/12 94/19 94/21 98/13 101/17 104/21 117/10 128/4 128/18 129/13 138/19 140/13 142/17

EXHIBIT 9

**Y**

**yesterday [1]** 95/24
**York [1]** 54/13
**you [498]**
**you'll [3]** 75/22 87/12 127/1
**you're [41]** 9/20 11/22 12/18 21/10
 22/20 22/22 23/20 23/21 24/1 29/5
 32/11 49/18 52/19 52/19 53/23 57/15
 58/18 64/1 71/12 71/13 71/15 72/1 72/2
 76/6 76/7 76/7 76/7 77/18 77/20 81/23
 81/23 89/17 100/13 101/10 117/6 120/8
 129/18 134/1 134/7 136/10 136/12
**you've [7]** 15/14 24/6 24/6 55/25 93/23
 106/6 136/2
**you-all [6]** 24/12 50/15 51/5 82/10 83/8
 138/20
**young [3]** 78/8 96/21 115/25
**your [225]**
**yourself [2]** 60/8 96/18

**Z**

**zone [1]** 136/23