EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

    Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.*,

    Defendants.

CIVIL ACTION NO.
1:17-cv-2989-AT

## **ORDER**

The Court held a pretrial conference in this case on December 15, 2023, and issued a series of rulings on pending motions and matters. This Order outlines and supplements those rulings.

### A. Motion to Intervene [Doc. 1706]

On November 8, 2023 — over six years after the case was removed to this Court and over four years since the relevant claims were first asserted — Deborah Davis moved to intervene in this action. As explained by the Court at the pretrial conference, Ms. Davis's Motion [Doc. 1706] is **DENIED** because it is untimely, because granting it would certainly delay trial in this action and therefore prejudice the existing parties, and because Ms. Davis does not represent an interest not already represented in this action.

### B. Defendants' Omnibus Motion in Limine [Doc. 1723]

Defendants raise five issues in their omnibus motion. The Court addresses each issue below.

Case 1:17-cv-02989-AT Document 1749-1 Filed 12/22/23 Page 2 of 13
Case 1:17-cv-02989-AT Document 1754-1 Filed 12/27/23 Page 2 of 13
EXHIBIT 10

1. **Whether witnesses' invocations of the Fifth Amendment are relevant and whether those invocations warrant adverse inferences**

The testimony of Ms. Hampton, Ms. Latham, Mr. Chaney, and Ms. Riddlehoover concerning the Coffee County breach is plainly relevant and admissible in this case. In their Motion, Defendants ask the Court to preemptively issue a blanket ruling that it will not draw adverse inferences based on these individuals' invocations of the Fifth Amendment. At the pretrial conference, Plaintiffs represented that they seek to introduce a "small discrete set" of exchanges and request that the Court infer particular facts based on the Fifth Amendment invocations in those exchanges. (Pretrial Conference Transcript ("PTC Tr."), Doc. 1747 at ECF 66.) While Defendants present a strong argument that the Court should decline to draw such inferences under the prevailing legal authority, the Court will defer ruling until presented with the specific testimony and inference requested, especially under present circumstances of a bench trial. At that time, the Court will consider whether each particular adverse inference is appropriate in light of the factors outlined in *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir. 2014). Defendants' request is therefore **DEFERRED**.

2. **Whether the enactment of HB 316 and the BMD system's compliance with state law is relevant**

As discussed at the pretrial conference, both sides have raised issues concerning the BMD system's compliance with state law, whether as a defense or a rejection of the State's defenses asserted in this case. The topic is therefore

Case 1:17-cv-02989-AT Document 1749-1 Filed 12/02/23 Page 3 of 13
Case 1:17-cv-02989-AT Document 1754 Filed 12/07/23 Page 3 of 13
EXHIBIT 10

relevant. (*See* PTC Tr., Doc. 1757 at ECF 75–78.) At trial, Defendants may object to specific evidence or testimony as irrelevant, and the Court will address those objections as they arise. Defendants' request to exclude testimony on this topic is **DENIED** at this time.

### 3. Whether Plaintiffs can call Secretary Raffensperger as a witness

In order to protect high-level officials "from the constant distraction of testifying in lawsuits, courts have required that [parties] show a special need or situation compelling such testimony." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993). A party can demonstrate such special need by showing that high ranking officials "have direct personal factual information pertaining to material issues" and that the information "is not available from any other sources, such as lower-level officials." *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 693, 696–97 (N.D. Ga. 2019) (internal quotations omitted) (allowing deposition of Governor Kemp where only he could "explain what he actually meant" when he made certain statements or why he made certain decisions). A party can also establish such special need or extraordinary circumstances where the high-level official is personally involved in the implementation or oversight of a challenged law or policy. *See, e.g., Atl. J & Const. v. City of Atl. Dep't of Aviation*, 175 F.R.D. 347, 348 (N.D. Ga. 1997) (finding that the mayor was likely to possess pertinent, admissible, information which could only be obtained from him based on his involvement with the implementation of the ordinance at issue); *Greater Birmingham Ministries v.*

3

*Merrill*, 321 F.R.D. 406, 413 (N.D. Ala. 2017) (allowing deposition of Alabama's Secretary of State about photo ID law where secretary was involved with, appeared in advertising, and made statements about challenged photo ID law).

Here, Plaintiffs have demonstrated a special need to call Secretary Raffensperger as a witness at trial. In their brief, Plaintiffs cite numerous statements made by Secretary Raffensperger about this case, Dr. Halderman and his findings, the Coffee County data system breach, and the resulting implications for the security of the election system in Georgia. (*See* Resp. to Omnibus Mot., Doc. 1733 at ECF 24–27.) Some of the Secretary's statements are inconsistent with other public statements from the Secretary of State's Office about when they State knew of the Coffee County breach and the steps it took to investigate the breach.[1] Other statements made by the Secretary involve the steps the State has taken to ensure the security of the voting system.[2] These comments, and others, make clear that the Secretary — as the final decision maker and head of the department — has direct personal factual information pertaining to material issues.

In addition, Plaintiffs cite evidence supporting their contention that testimony surrounding the Secretary's statements and final decisions cannot be

---

[1] (*See, e.g.,* 11Alive Article, Doc. 1633- 16) (indicating that the Secretary initially stated that the State knew of the breach in January of 2021, but within minutes of so stating, an aide corrected the Secretary of State's response off camera and offered May of 2021 as the correct date, and later, a representative of the Secretary's Office stated that the office did not know about or began investigating the Coffee County breach until July 2022).

[2] (*See e.g.*, Secretary Brad Raffensperger, Remarks to the General Assembly: Setting the Election Security Record Straight (June 20, 2023), available at: https://sos.ga.gov/news/setting-election-security-record-straight (in which the Secretary explains that "[w]e have layers of security protocols and procedures to physically protect ballots, the system, the software, and the results. We have tests and audits to verify results.").

obtained from lower-level officials. Certainly, only the Secretary himself can explain what he meant when he made statements that are directly relevant to this case, such as those related to Dr. Halderman's findings about the security of the voting system or the breach in Coffee County. *See Fair Fight Action*, 333 F.R.D. at 693. The Rule 30(b)(6) testimony cited by Plaintiffs further indicates that the Secretary was directly involved and was the final decision maker concerning specific issues of election security. (*See, e.g.*, 30b6 Barnes Dep., Doc. 1733-6 at ECF 25) (testifying that decision of whether to conduct a forensic exam of old system would be made by the Secretary and Barnes was unaware if such an exam was ever considered). In short, Plaintiffs have established a special need to call Secretary Raffensperger as a witness. That said, the Court is cognizant that the Secretary has "greater duties and time constraints than other witnesses," *In re United States*, 985 F.2d at 512, and will therefore limit Plaintiffs' direct examination of the Secretary to no more than 75 minutes, absent serious reason to extend this timeframe. Further, only one counsel on Plaintiffs' side may examine the Secretary. The Court will determine the length of any re-direct permissible after hearing what, if any testimony, defense counsel elicits from the Secretary. With these conditions and caveats, Defendants' request to preclude Plaintiffs' from calling Secretary Raffensperger is **DENIED**.

Case 1:17-cv-02989-AT Document 1754-1 Filed 2/27/23 Page 6 of 13
Case 1:17-cv-02989-AT Document 1549-1 Filed 2/2/23 Page 6 of 13
EXHIBIT 10

### 4. Whether the Court should exclude evidence and testimony underlying Dr. Halderman's Report for failure to disclose

Having thoroughly reviewed the timeline of events surrounding this dispute, it appears to the Court that both parties bear some responsibility for the failure to address this dispute sooner. At this juncture, the Court **DENIES** Defendants' request to exclude testimony and evidence related to Dr. Halderman's proof-of-concept attacks. However, the Court has authorized the inspection of the relevant data and methods, albeit with the appropriate and necessary protocols as discussed at the pretrial conference and as outlined by the Court's separate Order. (Doc. 1745.) That said, the Court clarifies here that Defendants' anticipated inspection and review of this data and evidence is permitted only to allow Defendants to adequately cross examine Dr. Halderman. Defendants are not permitted to proffer additional expert testimony based on this review as such testimony has never been subject to any form of disclosure.

### 5. Whether Plaintiffs should be precluded from calling individuals as live witnesses where they have offered the 30(b)(6) deposition testimony from those same witnesses

Under the Federal Rules, Plaintiffs are clearly permitted to introduce 30(b)(6) deposition testimony regardless of the adversary's availability to testify live at trial. See Fed. R. Civ. P. 32(a)(2); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978); *Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc.*, 2018 WL 10690250, at *1 (M.D. Fla. Apr. 5, 2018); *Redd v. N.Y. State Div. of Parole*, 923 F.

Case 1:17-cv-02989-AT Document 1749-1 Filed 12/02/23 Page 7 of 13
Case 1:17-cv-02989-AT Document 1754 Filed 12/07/23 Page 7 of 13
EXHIBIT 10

Supp. 2d 393, 408 (E.D.N.Y. 2013). Defendants' request to preclude Plaintiffs' from calling witnesses on this basis is **DENIED**. However, Defendants are free to raise objections based on cumulative or repetitious presentation of evidence during trial.

For all of the above reasons, Defendants' Omnibus Motion in Limine [Doc. 1723] is **DENIED IN PART** and **DEFERRED IN PART**.

### C. Defendants' Motion for Clarification [Doc. 1727]

Defendants next requested clarification concerning the relevance and admissibility of evidence related to the PollPads and the electronic voter registration system. The Court and the parties discussed at the pretrial conference the limited ways in which these topics remain relevant to Plaintiffs' overall constitutional claims about voting security (e.g., the PollPads' connectivity to the internet). (PTC Tr., Doc. 1747 at ECF 130–36.) Plaintiffs acknowledged their burden to establish that any evidence presented on these topics is relevant and material to the due process and equal protection claims that remain in the case. (*Id.* at ECF 132.) Defendants may raise relevance objections as the evidence is presented at trial. In light of Plaintiffs' counsel's representations and the discussion at the pretrial conference, the Court believes the necessary clarification has been provided and thus the Motion [Doc. 1727] is **GRANTED** and is deemed to have been fully addressed by the discussion at the pretrial conference.

Case 1:17-cv-02989-AT Document 1749-11 Filed 12/22/23 Page 8 of 13
Case 1:17-cv-02989-AT Document 1754-1 Filed 1/2/23 Page 8 of 13
EXHIBIT 10

**D. Plaintiffs' Motion to Exclude the MITRE Report [Doc. 1725]**

As articulated at the pretrial conference, there are numerous problems with the Defendant' efforts to seek the admissibility of the MITRE Report. These include, but are not limited to the following: the MITRE Report was the product of a violation of the Court's protective order; there is no evidence of the names of the individuals who authored the Report or these individuals' professional and educational backgrounds; it is not a published report or learned treatise (as relevant to the hearsay exception); and, Defendants did not assert that they intended to rely on the Report as evidence until after the close of discovery. While the Report is not offered as expert testimony, the Defendants' introduction, reference, or reliance on the Report would effectively function as backdoor expert testimony,[3] considering its mode of presentation and content. (PTC Tr., Doc. 1747 at ECF 138–140.) For all of these reasons, the Court **GRANTS** Plaintiffs' Motion to Exclude the MITRE Report [Doc. 1725] for all purposes.

**E. Witnesses Not Previously Disclosed by Defendants**

Federal Rule of Civil Procedure 37(c)(1) provides that: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

---

[3] *See, e.g., Sweet Additions Ingredient Processors, LLC, v. Meeluine America, Inc.,* 2023 WL 3600628, *2-3 (S.D. Fla. Mar. 20, 2023) (finding that evidence proffered as lay witness testimony was in reality expert testimony in disguise and excluding such evidence for failure to comply with expert disclosure deadlines and requirements).

at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

At the pretrial conference, Plaintiffs identified seven witnesses on Defendants' witness list who have never been identified or disclosed by Defense counsel as witnesses in this case (Nick Ikonomakis, Nick Whitney, Richard Lysinger, Nancy Boren, James Elliot, Chris Bellew, and Matthew Bernhard). Defendants do not appear to dispute that they never identified or disclosed these individuals as potential witnesses. As to Mr. Ikonomakis (who is Vice President of Engineering for Dominion), Defendants suggest that he is simply a replacement representative for Dominion who will testify in the same capacity as Dr. Coomer previously did. (PTC Tr., Doc. 1747 at ECF 36.) But, Dr. Coomer has not been involved or provided testimony in this case for several years. Defendants have had ample time to supplement their initial disclosures to add another individual from Dominion such as Mr. Ikonomakis — and yet failed to do so.

Now, weeks before trial, it is simply too late for Defendants to disclose witnesses never before identified. Defendants have not demonstrated that these failures to disclose were substantially justified or harmless. Indeed, Plaintiffs' counsel represented that, had counsel known of these individuals, they would have sought to depose them. (PTC Tr., Doc. 1747 at ECF 39.) And while the Court always strives to allow parties to present their cases on the merits, arranging for depositions of the undisclosed individuals at this late hour — and during the

holidays — appears virtually impossible.[4] Under these circumstances, Plaintiffs' request to preclude Defendants from calling the seven unidentified and undisclosed witnesses is **GRANTED**.

### F. Ricardo Davis's Motion to Amend the Proposed Pretrial Order [Doc. 1740]

Finally, the Court addresses the issue of Mr. Davis's putative new counsel and Mr. Davis's related request to amend the pretrial order. Having considered the parties' positions on this issue, the Court will permit Mr. Oles to appear and represent Mr. Davis, in conjunction with Mr. Ichter. Mr. Ichter has not requested to withdraw (*see* PTC Tr., Doc. 1747 at ECF 112) and, considering the complexity of the record/issues here, the Court believes that Mr. Ichter's continued representation of Mr. Davis is necessary.

However, having considered and allowed Mr. Davis new additional counsel, the Court will not permit Mr. Davis to amend the pretrial order to add two witnesses (Ben Cotton and Jeffrey Lenberg) to the Plaintiffs' witness list at this extremely late date. Mr. Davis asserts that these two witnesses would provide new "factual forensic evidence" concerning "remotely initiated irregular access" to the Coffee County election system in the 2021 Senate runoff election on January 5, 2021. (Motion to Amend PTO, Doc. 1740 ¶¶ 1–2, 4.) Yet, when asked by the Court, Mr. Oles could not confirm that the two requested witnesses had any direct actual

---

[4] Plaintiffs' counsel represented to the Court that Mr. Ikonomakis has advised that he would not be available for any deposition until January 15, 2024 — six days after the trial is set to begin. (PTC Tr., Doc. 1747 at ECF 40.)

10

knowledge of such purported "irregular access." (PTC Tr., Doc. 1747 at ECF at 106–07.) And, a review of Mr. Cotton's and Mr. Lenberg's depositions demonstrates that any knowledge about the alleged "irregular access" on January 5, 2021 was decidedly *not* based on their own actual knowledge. (*See, e.g.*, Lenberg Dep., Doc. 1613 ("This is all secondhand from Misty, by the way. I was not there for the runoff. So everything I know about this was given to me from Ms. Hampton.")). As such, the witness testimony Mr. Davis seeks to introduce appears to be inadmissible hearsay.

Beyond this problem, counsel for the Curling and Coalition Plaintiffs have, up to this point, assembled the evidence and built their theories of the case with great care over many years. One primary narrative of Plaintiffs' case is that the individuals involved in the Coffee County caper engaged in wrongdoing in breaching the election system. Mr. Davis's new (and belated) efforts to proffer new testimony from two of those individuals — who were themselves involved in the breach of the data system and disclosure of confidential data and software — would constitute a significant prejudicial detour in Plaintiffs' presentation of their case. It would also be prejudicial to Defendants, since this new theory of irregular access on January 5, 2021 was not presented at summary judgment or otherwise, and allowing such testimony now would inject a new narrative for Defendants to defend against. *See Childress v. Long*, 2014 WL 12607859, at *1 (N.D. Ala. Jan. 3, 2014) (noting that where the plaintiff sought to advance a new theory on the eve of

Case 1:17-cv-02989-AT Document 1749-1 Filed 12/22/23 Page 12 of 13
Case 1:17-cv-02989-AT Document 1754-1 Filed 1/2/24 Page 12 of 13
EXHIBIT 10

trial, Defendants had no notice of such theory and "no opportunity to gather evidence to defend against it").

For similar reasons, the Court will not allow Mr. Davis to amend the pretrial order to include deposition designations not previously included. A review of the portions cited in Mr. Davis's motion shows that the requested additions are all in pursuit of new theories, narratives, or presentations of evidence that the Court has already rejected as improper at this stage — such as, for example, the presentation of Mr. Cotton and Lenberg as expert, technical witnesses. (*See* Order Doc. 1724 at 6) (rejecting request to add in these individuals as expert witnesses a month before trial). Indeed, although Mr. Davis's motion indicates that he does not now seek to introduce new "expert testimony" from Mr. Cotton or Lenberg, his proposed deposition designations concern, for example, Mr. Cotton's purported cybersecurity credentials and technical certifications as well as his overall opinions about QR codes. (*See* Motion to Amend PTO, Doc. 1740 ¶ 6 (citing Cotton Dep., Doc. 1607 at ECF 16–17, 21–23, 26–28, 269)). Other requested deposition designations concern the purported "irregular access" on January 5, 2021, a theory never pursued, noticed, or tested at summary judgment — and one at odds with the Curling and Coalition Plaintiffs' narrative that was presented on a timely basis. (*See* PTC Tr., Doc. 1747 at ECF 113–14.)

Accordingly, for the reasons articulated herein, Mr. Oles may appear and represent Mr. Davis in this case along with Mr. Ichter, but the Motion to Amend

Case 1:17-cv-02989-AT Document 1754-1 Filed 12/27/23 Page 13 of 13
Case 1:17-cv-02989-AT Document 1749 Filed 12/20/23 Page 13 of 13
EXHIBIT 10

the Pretrial Order [Doc. 1740] to include new witnesses and deposition designations is **DENIED**.

### G. Conclusion

To summarize, for the reasons articulated at the pretrial conference and detailed herein, the Court rules as follows:

- Deborah Davis's Motion to Intervene [Doc. 1706] is **DENIED**.
- Defendants' Omnibus Motion in Limine [Doc. 1723] is **DENIED IN PART** and **DEFERRED IN PART**.
- Defendants' Motion for Clarification [Doc. 1727] is **GRANTED** and has now been fully addressed.
- Plaintiffs' Motion to Exclude the MITRE Report [Doc. 1725] is **GRANTED**.
- Plaintiffs' oral request to preclude Defendants from calling the seven previously unidentified and undisclosed witnesses is **GRANTED**.
- Mr. Davis's Motion to Amend the Pretrial Order [Doc. 1740] is **DENIED**.

Further the Court **ADOPTS** the Proposed Pretrial Order [Doc. 1728] as amended by the Court's rulings on matters related to the administration of trial (issued at the pretrial conference and in this written Order).[5]

**IT IS SO ORDERED** this 20th day of December, 2023.

_____
**Honorable Amy Totenberg**
**United States District Judge**

---

[5] The Court also notes that Coalition counsel requested that the pretrial order be amended to reflect that Mr. McGuire is co-lead counsel along with Mr. Brown. The Court granted this request. (PTC Tr., Doc. 1747 at ECF 35.)