EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*, | : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION NO. 1:17-cv-2989-AT |
| BRAD RAFFENSPERGER, *et al.*, | : |
| Defendants. | : |

# **ORDER**

Before the Court is Plaintiff Ricardo Davis's Notice of Withdrawal and Substitution of Counsel, which was filed on the docket as a Motion to Substitute Attorney [Doc. 1718].[1] The Curling Plaintiffs, the Coalition Plaintiffs, and the State Defendants filed responses to this Motion indicating their respective positions and concerns about a change of counsel on the eve of trial (set for January 9, 2024). (Docs. 1719, 1720, 1721.) Mr. Davis's putative new counsel has also filed a reply in support of his request to substitute in as counsel for Mr. Davis (Doc. 1722).

For more than six years, Mr. Davis has been represented by the same counsel, Cary Ichter. Now, a month before trial, Mr. Davis seeks to have Mr. Ichter withdraw as his counsel and have new counsel, Todd Harding, represent him.

---

[1] The Notice of Withdrawal and Substitution was filed by Todd Harding who seeks to represent Mr. Davis — not by Mr. Davis's current counsel, Cary Ichter, though Mr. Ichter's signature is included in the filing.

EXHIBIT 12

## I. Legal Standard

Under Local Rule 83.1(E), where a client consents to the withdrawal of current counsel, that counsel may withdraw by filing a Certificate of Consent with the Court that has been signed by the client, the withdrawing attorney, and, as relevant here, the replacement attorney. LR 83.1(E)(3). The Certificate of Consent must demonstrate that the client has been advised on a number issues, including: the client's obligation to prepare for trial; the dates of any scheduled proceedings (including trial); that these dates will not be affected by the withdrawal of counsel; and more. *See* LR 83.1(E)(2)(b). "The Court may reject the withdrawal by consent . . . *when withdrawal would delay trial* of the case, *or for other good cause*." LR 83.1(E)(3). (emphases added). As a matter of policy, "[u]nder ordinary circumstances, counsel will not be permitted to withdraw . . . when withdrawal would delay trial of the case." LR 83.1(E)(1). Courts in this district and elsewhere have rejected requests to withdraw where a change of counsel would delay trial. *See, e.g., Fears v. Keystone Petroleum Transport, LLC*, 2012 WL 12835497, at *2 (N.D. Ga. Feb. 21, 2012) (finding it likely that new counsel would ask for a continuance and thus finding that allowing withdrawal would "almost certainly result in this case's delay"); *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, 2014 WL 1087934, at *3 (S.D.N.Y. Mar. 19, 2014) (rejecting request to substitute counsel where the trial was less than a month away, under that court's local rules).

In addition, district courts hold inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own

2

Case 1:17-cv-02989-AT Document 1754-3 Filed 2/27/23 Page 3 of 8
Case 1:17-cv-02989-AT Document 1724 Filed 12/22/23 Page 3 of 8
EXHIBIT 12

affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)); *see also Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court has inherent authority to manage its own docket"). This inherent authority includes "the power to control admission to its bar," among other things. *Chambers*, 501 U.S. at 43. While these inherent powers should be exercised with caution, they are nevertheless incidental to all courts. *Id.* (internal quotation omitted).

## II.  Discussion

Under the circumstances here, the Court will not allow Mr. Ichter to withdraw as counsel for Mr. Davis and be substituted by Mr. Harding.[2] To start, the Notice of Withdrawal and Substitution of Counsel, filed by Mr. Harding, does not comply with the procedural requirements of Local Rule 83.1 because the Notice/Certificate of Consent did not "demonstrate that the client has been advised of the items set forth in LR 83.1(E)(2)(b)(B) through (H)." *See* LR 83.1(E)(3). This procedural noncompliance warrants denial of the request. *See, e.g., Sellers v. Sage Software Inc.*, 2018 WL 5631104, at *1 (N.D. Ga. July 11, 2018) (denying substitution of counsel request where attorneys did not comply with procedural requirements of Local Rules).

---

[2] Mr. Ichter's Notice of Appearance indicates that he represents all the Coalition individual plaintiffs as well as the Coalition for Good Governance ("Coalition") as an organization. (Doc. 155.) Of course, there are other lawyers who are members of the Coalition legal team.

3

Case 1:17-cv-02989-AT Document 1742-13 Filed 12/27/23 Page 4 of 8
Case 1:17-cv-02989-AT Document 1754-3 Filed 1/2/23 Page 4 of 8
EXHIBIT 12

More importantly, however, Mr. Harding's substitution for Mr. Ichter at this juncture is simply unworkable. First, this substitution would undoubtedly cause delay. This highly complex case has been litigated for *over six years*. Trial is a month away. Mr. Ichter has ably represented Mr. Davis for *the entirety* of this case and Mr. Davis has never sought to change counsel before this point. The Court acknowledges that Mr. Harding claims that he can abide by the current trial schedule, will not request a continuance, and does not *intend* to delay trial. (Reply, Doc. 1722 ¶¶ 1, 13.) But good intentions do not change the reality here that Mr. Harding's insertion in this case would (and already has) cause(d) delay and the redirection of the parties' and the Court's time and resources away from pretrial preparations.

To start, considering the complexity of this case, the sprawling record, and the imminence of trial, the Court seriously questions whether new counsel would be able to prepare for trial in such a short time while adequately fulfilling his duties under the Georgia Rules of Professional Conduct to provide competent representation. Indeed, as discussed more below, Mr. Harding's request to proffer two new expert witnesses long after the close of expert discovery (and on the eve of trial) indicates to the Court a lack of familiarity with both the Federal Rules (surrounding expert rules, disclosures, and evidence), as well as the record in this case, since the Court, over a year-and-a-half ago, disallowed other proffered expert testimony as untimely. (*See* February 23, 2022 Order, Doc. 1322) (finding that the

Coalition Plaintiffs failed to comply with expert disclosure and discovery deadlines as to Dr. Buell).

In addition, Mr. Harding's highly belated insertion would likely cause serious discord amongst the Plaintiffs and Plaintiffs' counsel, given the concerns identified in the responses of Plaintiffs' counsel. This discord would thereby complicate, disrupt, and cause major time inefficiencies in the handling of the trial of this case. Both the Curling and Coalition Plaintiffs (who have litigated this case cohesively for six years) raise serious concerns and objections to Mr. Harding's late appearance. Specifically, they raise concerns that Mr. Harding, in representation of Mr. Davis, would attempt to take positions or pursue theories "at odds with those [Mr. Davis] and the [Plaintiffs] have taken in this case to date." (Coalition Pl. Resp., Doc. 1719 at 2) (*see also* Curling Pl. Resp., Doc. 1721 at 16–17) (arguing that Mr. Harding's appearance "would deeply divide what has been for years a well-coordinated and mutually beneficial group of Plaintiffs" and further noting that a divided strategy amongst the Plaintiffs would negatively impact all aspects of trial "from coordinating pretrial filings, to allocating trial time, resolving disputes about witness exams and evidentiary objections, participating in openings and closings, offering evidence at trial, and ultimately determining fundamental case strategy").

This concern, that Mr. Harding would (on behalf of Mr. Davis) take positions contrary to the ones Plaintiffs have asserted, for years, is supported by documents attached to the Curling Plaintiffs' response *and* by Mr. Harding's own reply filing. First, as the attached documents demonstrate, Mr. Harding has, in other cases,

5

represented clients who have taken positions totally contrary to the positions propounded by Plaintiffs — including Mr. Davis — in this case.[3] This includes positions that concern a core event and focus of this case, the breach of the Coffee County Elections System and its broader ramifications for technology security in the State's election system. (*See infra* n.2.) Mr. Harding's reply brief only reinforces this concern. In reply, Mr. Harding states that he (on behalf of Mr. Davis) would seek to add *as expert witnesses* two individuals who were — according to the evidence presented by the other Plaintiffs — *directly involved* in the Coffee County breach. (Reply, Doc. 1722 ¶ 8–9.)[4] Beyond the fact that expert discovery has long since closed and a party cannot simply add new expert witnesses on the eve of trial (let alone without expert disclosures, reports, and the like), this request is fundamentally at odds with the other Plaintiffs' longstanding position that the individuals involved in the Coffee County breach engaged in wrongdoing that endangered the security and integrity of Georgia's voting system. And any such new "experts" Mr. Harding has in mind would not be equipped at this late date to satisfy the host of requirements for reports and depositions associated with expert testimony. Such presentation would also disrupt existing counsel's trial

---

[3] In this case, Plaintiffs have argued and presented evidence that certain individuals and entities engaged in wrongful acts that constituted an unlawful breach of the Coffee County Election System and were politically motivated in doing so. (*See* Plaintiffs' SOMF, Doc. 1626 ¶¶ 253, 268, 269, 344.)

[4] The reply also indicates that Mr. Harding (on behalf of Mr. Davis) would seek to call other new witnesses directly involved in the Coffee County breach to provide "supporting evidence to corroborate" this alleged expert testimony. (*Id.*)

preparations and the conduct of the trial. (And that does not even touch the issues presented by other new potential witnesses.)

This example alone indicates that Mr. Harding's putative appearance would result in efforts to assert new stances or pursue different strategies. This would, in turn, require serious time and energy of behalf of the Court and parties to address and resolve which, if any, new stances and evidentiary explorations are permissible — all amidst significant, already busy pretrial preparations. Besides expending the Court's and parties' scarce time and resources (in a time period that includes the Christmas and New Year holidays), any putative presentation of new experts, witnesses, legal positions, or theories would be fundamentally unfair both to the other Plaintiffs as well as the State Defendants — all of whom have assiduously litigated this case based on the arguments presented thus far. The presentation of new or refashioned arguments would also likely prejudice the other Plaintiffs, who have streamlined their case and collaborated in their presentation of the case over the last years.

Under the best of circumstances, trial in this case is going to be highly demanding and complex. The volume of evidence in the record is gargantuan. There are significant evidentiary and legal disputes between the Plaintiffs and Defendants. To allow Mr. Harding to appear and effectively disrupt or confuse current counsel's presentation of the evidence and legal arguments developed with care over many years is to invite chaos and would delay the efficient administration of the trial. The Court has the inherent authority — as well as a duty — to manage

7

Case 1:17-cv-02989-AT Document 1754-3 Filed 12/27/23 Page 8 of 8
Case 1:17-cv-02989-AT Document 1724 Filed 12/07/23 Page 8 of 8
EXHIBIT 12

its own docket to achieve the orderly conduct and disposition of cases (at least as much as is possible). *Chambers*, 501 U.S. at 43. For the reasons above, Mr. Harding's late announced attempted role in the case would prevent an orderly and expeditious trial in this case.

### III. Conclusion

In short, the Court concludes that there is good cause to disallow Mr. Ichter's withdrawal and substitution by Mr. Harding because such substitution would seriously delay, complicate, and disrupt the trial of this case; would cause discord among the Plaintiffs; and would prejudice the other Plaintiffs and likely the Defendants, too. As such, the Court, under LR 83.1(E)(3) and in exercising its inherent authority to manage its own docket, *see Chambers*, 501 U.S. at 43, **DENIES** the Motion to Substitute [Doc. 1718].[5]

**IT IS SO ORDERED** this 7th day of December 2023.

**Honorable Amy Totenberg**
**United States District Judge**

---

[5] Mr. Davis has made no request for a separate trial under Fed. R. Civ. P. 42(b). If Mr. Davis feels that the current situation — after 6 years with no complaints — is truly impossible, he may request a separate trial. However, if Mr. Davis does so request, he should indicate: whether he would seek to pursue theories or arguments different from those presented at summary judgment; why he should be allowed to pursue any such different arguments at this late juncture; why he should be allowed to present previously unnamed experts and other witnesses; whether he believes he would be permitted to rely on the record evidence amassed by the other Plaintiffs in this case and, if so, why; and any other issues implicated by a separate trial.