## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## <u>MOTION FOR ADVERSE INFERENCES</u>

# TABLE OF CONTENTS

I.     Introduction ................................................................................................. 1

II.    Plaintiffs' Proposed Adverse Inferences ..................................................... 2

III.   The *LiButti* Factors Support Plaintiffs' Requested Adverse Inferences. ............................ 8

       A.   The Coffee County Witnesses' Relationship to the State Supports the Adverse
            Inferences .......................................................................................... 9

       B.   Defendants Exercise Sufficient Control Over the Coffee County Witnesses
            Regarding the Conduct at Issue .................................................... 12

       C.   The Coffee County Witnesses' Interests are Compatible with the State's ................ 14

       D.   The Coffee County Witnesses are Central to this Litigation ...................................... 15

       E.   Corroborating Evidence Supports the Requested Inferences ...................................... 16

IV.    Conclusion ................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Coquina Invs. v. TD Bank, N.A.*,
  760 F.3d 1300 (11th Cir. 2014) .................................................................... 7, 8, 16

*Curtis v. Perkins*,
  781 F.3d 1262 (11th Cir. 2015) ............................................................................3

*Fair Fight Action, Inc. v. Raffensperger*,
  599 F. Supp. 3d 1337 (N.D. Ga. 2022) ...............................................................13

*LiButti v. United States*,
  107 F.3d 110 (2d Cir. 1997) ....................................................................... passim

*N.H. Ins. Co. v. Blue Water Off Shore, LLC*,
  2009 WL 792530 (S.D. Ala. Mar. 23, 2009)................................................ 10, 12

*Wilkinson v. Carnival Cruise Lines, Inc.*,
  920 F.2d 1560 (11th Cir. 1991) ...........................................................................13

## Statutes

Ga. Code § 21-2-300(a)(1)..........................................................................................9

## Rules

Fed. R. Evid. 801(d)(2)(D) .......................................................................................13

## I.     INTRODUCTION

Plaintiffs respectfully request the Court to draw a small set of narrow adverse inferences based on the deposition testimony of Misty Hampton, Cathy Latham and Eric Chaney (the "Coffee County Witnesses") and corroborating evidence in the record.  Each witness invoked the Fifth Amendment privilege against self-incrimination in response to specific questions about their involvement in the Coffee County breaches in January 2021.  The inferences Plaintiffs seek concern specific, concrete *facts* for which the invocations are the only available proof.  Plaintiffs are *not* seeking an inference of Defendants' liability.

At the December 15, 2023 pretrial conference, the Court ruled that "[t]he testimony of [the Coffee County Witnesses] concerning the Coffee County breach is plainly relevant and admissible in this case," but deferred a decision on whether adverse inferences were warranted until presented with the specific testimony and inferences requested.  Dkt. 1749 at 2.  While the Coffee County Witnesses invoked their Fifth Amendment privilege broadly in response to some or many questions about the breaches—including who was there, what was done, on whose actual or apparent authority, when the State found out, and what the State did in response—Plaintiffs seek to admit only a very small fraction of their Fifth Amendment invocations to support a narrow set of specific adverse inferences.  The Court can determine what weight it will assign to the requested inferences—if any—in

rendering a judgment on Plaintiffs' claims when it has the benefit of the full evidentiary record.

## II.   PLAINTIFFS' PROPOSED ADVERSE INFERENCES

Misty Hampton, Eric Chaney, and Cathy Latham were each integrally involved in the Coffee County breaches. The record establishes that all three were present on January 7, 2021, when Sullivan Strickler improperly obtained forensic images of election equipment in Coffee County. *See* Ex. 1 (PX-493); Ex. 2, Trial Vol. 6A Tr. at 142:24-143:5, 158:2-25, 137:23-138:2. It also establishes that Ms. Latham coordinated the January 7 breach with Sullivan Strickler, and that Ms. Hampton and Mr. Chaney participated directly in providing Sullivan Strickler— and others—unauthorized access to the Coffee County voting equipment in its operational environment. Ex. 2 at 135:22-136:5, 158:2-25; 159:18-25.

There are specific facts, however, for which the witnesses' Fifth Amendment invocations are the only available proof, despite Plaintiffs' diligent efforts to conduct broad discovery into the Coffee County breaches. Those specific factual inferences are supported, however, by corroborating evidence.

The specific adverse inferences Plaintiffs seek are as follows:

| Witness | Dep. Tr. | Testimony | Adverse Inference |
|---------|----------|-----------|-------------------|
| Latham | Ex. 3 at 67:3-14, 69:4-11 | Q. You were in Washington DC on or around December 17 of 2020, correct? A. I don't remember what days I went.  Q. Do you recall being in DC in December of 2020, right? A. Yes. Q. And you spent some time at the Willard Hotel while you were there? A. That's where I slept, yes.<br><br>***<br><br>Q. Ms. Latham, my question to you is, you were aware that there was a war room set up by individuals associated with the Trump campaign at the Willard Hotel purportedly looking for election fraud, right?<br>A. Fifth Amendment.<br>Q. Were you ever in that war room?<br>A. Fifth Amendment. | Ms. Latham was aware that a war room was set up by individuals associated with the Trump campaign at the Willard hotel purportedly looking for election fraud.[1]<br><br>Ms. Latham was in that war room. |

---

[1] *See* Sarah D. Wire, *Prosecuters are focused on a rural Georgia county in Trump's 2020 election case. Here's why*, L.A. Times (Oct. 26, 2023), https://www.latimes.com/politics/story/2023-10-26/prosecuters-are-focused-on-a-rural-georgia-county-in-trumps-2020-election-case-heres-why.  The Court may rely on inadmissible evidence in evaluating the admissibility of evidence.  *See*, *e.g.*, *Curtis v. Perkins*, 781 F.3d 1262, 1268 (11th Cir. 2015) ("'The court must decide any preliminary question about whether . . . evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege.'" (quoting Fed. R. Evid. 104(a)).

| Witness | Dep. Tr. | Testimony | Adverse Inference |
|---|---|---|---|
| Latham | Ex. 3 at 69:22-70:3 | Q. So you were in DC staying at the Willard Hotel on or around December 17, 2020, the same day that one of the two executive order -- draft executive orders was drafted and you're saying today that you can't tell us anything about your involvement with that; is that right? A. Fifth Amendment. | Ms. Latham was in DC staying at the Willard Hotel on or around December 17, 2020. |
| Chaney | Ex. 4 at 35:16-36:12 | Q. Okay. So if we look at Exhibit 4, look at complaint two on Page 1. Do you see that? A. I do. Q. And it reads: "A video surfaced on YouTube where it showed Coffee County election supervisor Misty Martin discussing the ways in which the election software could be manipulated." Do you see that? A. I do. Q. And Misty Martin is the same person as Misty Hampton? A. Yes. Q. Okay. So we're talking about the, at this time, the Coffee County election supervisor; right? A. Yes. Q. Okay. And are you familiar with that YouTube video? A. Yes. Q. You filmed that video; right? A. Fifth Amendment. | Eric Chaney filmed the YouTube video posted to the internet on or around November 10, 2021, introduced as PX-496. |
| Chaney | Ex. 4 at 99:15-19, 99:21-100:11 | Q. In the days leading up to January 7 of 2021, you reached out to Misty Hampton and asked if she'd be willing to work with folks to get access to the voting | Eric Chaney had multiple conversations with Misty Hampton about getting Scott Hall and others |

| Witness | Dep. Tr. | Testimony | Adverse Inference |
|---------|----------|-----------|-------------------|
|  |  | equipment in her elections office; right? THE WITNESS: Fifth Amendment. BY MR. CROSS: Q. You had multiple conversations with her about that; right? A. Fifth Amendment. Q. You told her specifically that one of those individuals would be a man named Scott Hall; right? A. Fifth Amendment. Q. Cathy Latham was one of the key individuals who helped organized this with Scott Hall; right? A. Fifth Amendment. Q. You and Ms. Latham worked together to organize this; correct? A. Fifth Amendment. | access to voting equipment in the Coffee County Elections Office in the days leading up to January 7, 2021.<br><br>Eric Chaney worked with Cathy Latham to organize getting Scott Hall access to voting equipment in the Coffee County Elections Office. |
| Chaney | Ex. 4 at 123:15-124:13 | Q. All right. Come to Page 22 of 24. If you come down in the middle, do you see there's a text January 6th of 2021 at 4:26 p.m.? A. I do. Q. And on that day, Ms. Hampton wrote to you: "Scott Hall is on the phone with Cathy about wanting to come scan our ballots from the general election like we talked about the other day. I am going to call you in a few." Do you see that? A. I do. Q. "Cathy" refers to Cathy Latham; right? A. Fifth Amendment. Q. So you were aware, at least as of January 6th of 2021, that | Eric Chaney was aware as of January 6, 2021, that Scott Hall was coming to the Coffee County Elections Office to scan ballots. |

| Witness | Dep. Tr. | Testimony | Adverse Inference |
|---------|----------|-----------|-------------------|
|  |  | Scott Hall was coming in to the Coffee County election office at least to access a copy, to scan ballots; right? A. Fifth Amendment. Q. So when you testified earlier that your only familiarity with Scott Hall was through an open records request, that was a lie; right, sir? THE WITNESS: Fifth Amendment. |  |
| Chaney | Ex. 4 at 127:10-128:7 | Q. If you come to the top of the next page, January 7 of 2021 at 7:24 p.m., you send a phone number to Ms. Hampton. Do you see that? A. I do. Q. Whose phone number is that? A. I don't know. Q. Why did you send her that number? A. I don't know. Q. Nothing you can tell me about that phone number? A. Fifth Amendment. Q. That phone number is for Robert Sinners, S-I-N-N-E-R-S; right? A. I'm not sure. Q. You sent a phone number to Ms. Hampton on January 7, 2021 and you have no idea whose number it is? A. Fifth Amendment. Q. I'm going to ask you again, Mr. Chaney. You are aware that that phone number is registered to Robert Sinners; right? A. Fifth Amendment. | Misty Hampton and Eric Chaney communicated by phone with Robert Sinners on the evening of January 7, 2021, concerning the copying of voting software and data that occurred that day in the Coffee County Elections Office. |

| Witness | Dep. Tr. | Testimony | Adverse Inference |
|---------|----------|-----------|-------------------|
| Hampton | Ex. 5 at 119:2-5 | And did he [Jeffrey Lenberg] ask you to make any copies of any of the equipment or the software or the thumb drives or anything else in there? A: I'm going to plead the Fifth on that. | Jeffrey Lenberg asked Misty Hampton to make copies of equipment or software or thumb drives in the Coffee County Elections Office. |
| Hampton | Ex. 5 at 124:5-11, 124:13-14 | Q Okay. Do you recall referring to the activities of Mr. Lenberg and Mr. Logan as, quote, measuring your desk? Do you recall that? A: I do. Q And why did you use that code to describe the work that they were doing? THE WITNESS: I plead the Fifth on that. | Misty Hampton used "measuring your desk" as a code to disguise the activities of Jeffrey Lenberg and Doug Logan in the Coffee County Elections Office improperly accessing election equipment. |
| Hampton | Ex. 5 at 244:16-245:4 | Q. Did you inform anyone at the Secretary of State's office before Mr. Lenberg and Mr. Logan came to the Coffee County Office, as you described in your testimony, in late January of 2021? A. I did not. Q And why did you not let the Secretary's office know? [A:] I take the Fifth | Misty Hampton did not tell the Secretary of State's office that Mr. Lenberg and Mr. Logan were coming to the Coffee County Elections Office in January 2021 because she wanted to conceal what they were doing. |

## III.    THE *LIBUTTI* FACTORS SUPPORT PLAINTIFFS' REQUESTED ADVERSE INFERENCES

The inferences the Court may draw hinge on the application of four non-exclusive factors.  *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir. 2014) (citing *LiButti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997)).  Under these factors, the Court is to evaluate the connection between the non-party witness and the opposing party, considering: (1) "the nature of the relevant relationships," (2) "the degree of control of the party over the nonparty witness," (3) the "compatibility" of their interests in the litigation, and (4) "the role of the non-party witness in the litigation."  *Coquina*, 760 F.3d at 1311.  Ultimately, the Court is to assess the "overarching concern" of "whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth."  *Id.*  This analysis is highly fact specific.  The factors need to be "applied flexibly" and on a case-by-case, *question-by-question* basis.  *Id.*

Plaintiffs can—and will—establish all elements of their claims even if the Court declines to draw the requested adverse inferences so the Court need not rely on any of the requested inferences to enter a judgment for Plaintiffs and award the relief sought.  But the requested inferences are nonetheless supportive of Plaintiffs' claims and should be considered by the Court.  All four of the *LiButti* factors support admitting the Coffee County Witnesses' invocations and drawing adverse inferences, which are "trustworthy under all of the circumstances and will advance

the search for the truth," regarding the Coffee County breaches and their

implications for the security of Georgia's voting system in future elections. *Id*. at

1311.

### A.    The Coffee County Witnesses' Relationship to the State Supports the Adverse Inferences

The first *LiButti* factor is the "nature of the relevant relationships."

*Coquina*, 760 F.3d at 1311.  The relationship between the State and these witnesses

does not create reason to doubt the sincerity of the witnesses' Fifth Amendment

invocations.  Rather, there is an unrefuted connection between Defendants in this

case and county election officials like Mr. Chaney and Ms. Hampton.  *See* Ex. 6,

Trial Vol. 5A Tr. at 216:10-15 ("Then the cybersecurity overall is State-owned

equipment but counties play a vital role throughout.  So it is sort of a -- I don't

want to call it a partnership necessarily because the legal authority to protect the

equipment I believe lies with the county. . . . I just know that we kind of work

together as a team.").    As the Court has already found, Defendants are responsible

for selecting the uniform voting system in Georgia, maintaining its functionality,

and ensuring that any vulnerabilities to the system are mitigated.  Dkt. 1705 at 98.

Under Georgia law, the State provides the counties with the election equipment

which the State runs.  Ga. Code § 21-2-300(a)(1).  And it depends in part on the

counties for the "physical security of their own voting equipment."  Dkt. 1705 at

98; Ex. 6 at 135:20-136:1. Ms. Hampton and Mr. Chaney were entrusted with the

voting equipment owned by the State to administer at the State's direction—and the equipment is so important and sensitive as to be deemed critical infrastructure. Ex. 7, Hamilton Dep. Tr. at 97:5-10.

The State also controls how the counties operate the equipment during elections. *See* Ex. 8 (PX-406); Ex. 11, Oct. 12, 2022 SOS 30b6 (Sterling) Dep. Tr. at 198:25-199:18. County officials frequently contact the State for direction on how to handle issues relating to election equipment. *See, e.g.*, Ex. 9 (PX-103); Ex. 10 (PX-104). *And the State has told Georgia counties that they may not take any actions related to the voting system that are not authorized by Defendants.* Ex. 8; Ex. 6 at 166:23-167:13. The evidence shows that counties answer to the State regarding election security and procedures. Ex. 11 at 205:14-206:1 ("[G]enerally speaking, [if] the Secretary of State's Office says to do something, [the counties] generally do it, because they don't want to go before the State Election Board for having done something wrong.").

Defendants argue that this factor weighs against an adverse inference because the Coffee County Witnesses were not employed by the Secretary of State. Dkt. 1723 at 3. But their superficial analysis sidesteps the thrust of this factor. The closeness of the relationship of the party and non-party witness is merely a *proxy* for the likelihood that the non-party would render testimony to *purposefully damage* the objecting party. *LiButti*, 107 F.3d at 123. This factor turns on whether

10

the relationship between the non-party and the objecting party evidences a likelihood that the non-party would "*falsely claim the Fifth Amendment in order to torpedo [the party's] case.*" *N.H. Ins. Co. v. Blue Water Off Shore, LLC*, 2009 WL 792530, at *8 (S.D. Ala. Mar. 23, 2009) (emphasis added)*.*

Defendants offer no evidence suggesting that is likely here—because they cannot. At the time of their depositions, each Coffee County Witnesses' involvement in the breach was documented in the press as well as surveillance video.[2] *See* Ex. 1 (PX-493). Each of the Coffee County witnesses faced real criminal exposure at the time of their testimony arising from the conduct they were questioned about—as the ensuing investigations and indictments by the Fulton County District Attorney soon confirmed.[3] Every witness invoked the Fifth Amendment on the advice of counsel. Ex. 4, Chaney Dep. Tr. at 19:17-20:4; Ex. 5, Hampton Dep. Tr. at 54:20-55:6; Ex. 3, Latham Dep. Tr. at 18:2-18:18. Both Ms. Hampton and Ms. Latham have been indicted for their involvement. Ex. 2 at

---

[2] Emma Brown & Amy Gardner, *Georgia county under scrutiny after claim of post-election breach*, Washington Post, (May 13, 2022), https://www.washingtonpost.com/investigations/2022/05/13/coffee-county-misty-hampton-election/; Jose Pagliery, *Texts Reveal GOP Mission to Breach Voting Machine in Georgia*, Daily Beast (June 5, 2022), https://www.thedailybeast.com/how-a-coffee-county-gop-chair-coordinated-a-voting-machine-breach.

[3] *See* Tamar Hallerman, *Why Fulton Prosecutors Are Interested in Coffee County Data Breach,* Atlanta Journal-Constitution (Sept. 8, 2022), https://www.ajc.com/politics/why-fulton-prosecutors-are-interested-in-a-coffee-county-data-breach/QDZMSXCAGBHLPLLBEVL4W7FSMM/.

212:20-213:2; *see also Georgia v. Trump*, No. 23SC188947 (Fulton Cnty. Super. Ct. Aug. 14, 2023); Dkt. 1705 at 69.

The witnesses had nothing to gain from false invocations of the Fifth Amendment, nor is there any evidence whatsoever suggesting they took the Fifth to torpedo Defendants' case.  Every indication is that they invoked the Fifth Amendment because they were genuinely concerned about incriminating themselves—*and for good reason*.  Those invocations are inherently trustworthy, as are the narrow inferences Plaintiffs seek.  *See N.H. Ins. Co.*, 2009 WL 792530, at *8 (adverse inference was trustworthy because witness's invocation was made on advice of counsel and on concern of real prosecution, not "fanciful future prosecution").  This factor supports admissibility of the invocations and Plaintiffs' requested inferences.

## B.    Defendants Exercise Sufficient Control Over the Coffee County Witnesses Regarding the Conduct at Issue

For the same reasons that the nature of the relationship between the Coffee County Witnesses and the State supports admissibility of the Fifth Amendment invocations, Defendants had sufficient control over Mr. Chaney and Ms. Hampton to attribute their statements to the State.[4]  The pertinent question under the second

---

[4] Plaintiffs do not contend here that Defendants exercised control over Ms. Latham, who was not employed by Coffee County.  Nevertheless, the *LiButti* factors must be applied flexibly and no one factor is dispositive.  The underlying question for *each* of the factors is whether the invocation of privilege is trustworthy.  Each of

*LiButti* factor is "[t]he degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation." *LiButti*, 107 F.3d at 123.  The question is intended to inform "the trial court whether the assertion of the privilege should be viewed as akin to testimony approaching admissibility under Fed. R. Evid. 801(d)(2) and may accordingly be viewed … as a vicarious admission."  *Id.*

Defendants set the parameters within which county officials, including Mr. Chaney and Ms. Hampton, are required to operate regarding their handling of Georgia's voting system and its components, and relied on them to execute their duties according to Defendants' rules and direction.  In other words, the State exercised a high degree of control over Ms. Hampton and Mr. Chaney regarding an issue at the core of this case: the physical security of election equipment.  That satisfies the second factor for admissibility of their invocations here.  *Cf. Fair Fight Action, Inc. v. Raffensperger*, 599 F. Supp. 3d 1337, 1341 (N.D. Ga. 2022) (the "relevant inquiry" for whether a non-party should be considered a party's "agent" under Rule 801(d)(2)(D) "is whether [the witness] was authorized to act for his principal … concerning the mater about which he allegedly spoke." (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991))).

---

the other factors suggests so with respect to Ms. Latham.  And the fact that she was subsequently indicted for her conduct in Coffee County further establishes that her invocation was no sham and can be trusted.

**C.    The Coffee County Witnesses' Interests are Compatible with the State's**

The interests of the Coffee County Witnesses and Defendants are compatible.  Instead of arguing this factor, Defendants merely offer the conclusory remark that "[i]f any alignment of interests with respect to the outcome of the litigation is present between these non-party witnesses and the parties to this case, it is an alignment with Plaintiffs' interests in prohibiting use of the Dominion BMD System."  Dkt. 1723 at 5.  That claim is nonsensical and irrelevant.  This factor assesses whether *the assertion of privilege* advances the interests of both the non-party witness and the affected party in the outcome of the litigation—not whether the party and non-party are theoretically aligned on a potential *outcome* of the litigation.  *LiButti*, 107 F.3d at 123.

Here, Defendants and the Coffee County Witnesses are indeed aligned with respect to the Fifth Amendment invocations.  Mr. Chaney, Ms. Hampton, and Ms. Latham would have little reason to take the Fifth Amendment if their actions were truly beyond legal scrutiny.  Their exposure to criminal liability for their breach of the voting system is in lockstep with Defendants' own exposure to civil liability for their failure to secure the system against that and similar breaches, both before the breach occurred and after by failing to hold the offenders accountable or to implement critical mitigation measures to protect against similar or worse breaches in the future.  Ex. 2 at 234:12-23; 261:2-15.  By asserting the privilege and limiting

their exposure to criminal liability, the Coffee County Witnesses also limited the scope of evidence that could be used to prove Defendants' failure to properly safeguard Georgia's elections and the breaches confirming that ongoing failure.  In other words, the Coffee County Witnesses deprived Plaintiffs of admissions that would help prove up Plaintiffs' claims, thereby establishing the compatibility of their interests with the Defendants in this case.  This strongly supports admissibility of the invocations and drawing Plaintiffs' requested inferences.

**D.     The Coffee County Witnesses are Central to this Litigation**

The fourth *LiButti* factor asks the Court to consider whether the non-party witnesses are "key figures" playing "controlling role[s] in respect to any … underlying aspect[]" of the case.  107 F.3d at 123-24.  This is indisputable.  In denying Defendants' summary judgment motions, the Court described the Coffee County breaches as "[p]erhaps the most significant development since the 2020 PI phase of this case."  Dkt. 1705 at 49.  Indeed, the breaches were a watershed moment in confirming Defendants' ongoing failure to adequately safeguard Georgia elections.  They have featured prominently at trial for that reason.  And Mr. Chaney, Ms. Hampton, and Ms. Latham are key actors in the breaches.  This factor also strongly supports admissibility of their invocations and Plaintiffs' requested adverse inferences.

### E.    Corroborating Evidence Supports the Requested Inferences

All four *LiButti* factors strongly support the admissibility of the Coffee County Witnesses' invocations and the trustworthiness of Plaintiffs' proposed adverse inferences, but there are also numerous other assurances that an adverse inference from specific questions about the Coffee County breaches directed at these witnesses will be trustworthy and will advance the search for the truth. *See Coquina*, 760 F.3d at 1311 (the "overarching concern" is "whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth."). The inferences are supported by direct evidence that each witness took part in an unlawful breach. For example, there is security footage confirming the breaches and the Coffee County Witnesses' direct involvement, as well as logs showing that data was actually exfiltrated from Coffee County and provided to other unauthorized persons. *See, e.g.*, Ex. 1 (PX-493); Ex. 12 (PX-166); Ex. 13 (PX-115). Sidney Powell engaged the Sullivan Strickler team and signed the Statement of Work covering their unauthorized forensic collection of Coffee County data. Ex. 2 at 105:16-25. Scott Hall coordinated Sullivan Strickler's unauthorized access to the Coffee County Elections Office. *Id*. at 136:12-25. Both Ms. Powell and Mr. Hall have pleaded guilty in the criminal case brought by the Fulton County District Attorney regarding their direct involvement in the Coffee

County breaches.[5]  Dkt. 1728 at 10-11.  Robert Sinners confirmed that he provided

his phone number to Eric Chaney, the phone number Eric Chaney texted to Misty

Hampton on the night of January 7, 2021, is his, and that he refused to provide his

phone records for January 2021 to the Plaintiffs.  Ex. 14, Trial Vol. 3 Tr. at 49:15-

50:7, 53:10-12.  Text messages and emails confirm many of the details regarding

the planning and execution of the breaches.  As the Court concluded on summary

judgment, Mr. Hall, Ms. Latham, Ms. Hampton, and others "directed" the work

done by Sullivan Strickler, and Sidney Powell paid for it.  Dkt. 1705 at 52.  The

specific adverse inferences Plaintiffs seek are trustworthy under all of the

circumstances, corroborated by voluminous evidence, and will advance the search

for the truth regarding the Coffee County breaches and their implications for future

Georgia elections.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to admit

the Coffee County Witnesses' Fifth Amendment invocations and draw the narrow

corresponding set of adverse inferences.

---

[5] Kenneth Chesebro and Jenna Ellis also have pleaded guilty in the Fulton County Case.  Tamar Hallerman & David Wickert, *Disavowing Trump, a tearful Jenna Ellis pleads guilty in Fulton election probe*, Atlanta Journal-Constitution (Oct. 24, 2023), https://www.ajc.com/politics/fourth-defendant-negotiates-plea-deal-with-fulton-prosecutors/S3SO4MZ3MBGCJD6YD47ZE4MYQE/.

Respectfully submitted this 22nd day of January, 2024.

*/s/ David D. Cross*
David D. Cross (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Matthaeus Martino-Weinhardt
(*pro hac vice*)
Ramsey Fisher (*pro hac vice*)
Aaron Scheinman (*pro hac vice*)
Benjamin Campbell (*pro hac vice*)
Wail Jihadi (*pro hac vice*)
Oluwasegun Joseph (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
dcross@mofo.com

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
Jessica G. Cino
GA Bar No. 577837
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
(404) 888-9700
hknapp@khlawfirm.com

*/s/ Christian G. Andreu-von Euw*
Christian G. Andreu-von Euw
(*pro hac vice*)
THE BUSINESS LITIGATION GROUP, PC
150 Spear Street
San Francisco, CA 94105
(415) 765-6633
christian@blgrp.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*/s/ Russell T. Abney*
Russell T. Abney
Georgia Bar No. 000875

WATTS GUERRA, LLP
4 Dominion Drive, Building 3
Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Plaintiff Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for Plaintiffs William Digges III, Laura Digges, & Megan Missett*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2024, a copy of the foregoing PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR ADVERSE INFERENCES was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross