# EXHIBIT 4

Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
2                     ATLANTA DIVISION
3      DONNA CURLING, ET AL.,        )
                                     )
4          Plaintiffs,               )
                                     )
5      vs.                           )    CIVIL ACTION NO.
                                     )
6      BRAD RAFFENSPERGER, ET        )    1:17-CV-2989-AT
       AL,                           )
7                                    )
           Defendants.               )
8
9
10
11
12
13      VIDEOTAPED 30(b)(6) DEPOSITION OF ERIC B. CHANEY
14                  (Taken by Plaintiffs)
15                   August 15, 2022
16                    10:20 a.m.
17
18
19
20
21
22
23
24
25      Reported by:   Debra M. Druzisky, CCR-B-1848

Page 17

1       A.    I notified the commissioner when I moved.

2       Q.    And that was a couple months ago?

3       A.    Yes.

4       Q.    Okay.  And then when did you first hear

5    from the commissioner that you needed to live in

6    the district?

7       A.    Friday.

8       Q.    Okay.  So you heard the same day and

9    resigned that day?

10      A.    That's correct.

11      Q.    Who else is current -- well, strike that.

12            Who is currently on the board right now

13   for Coffee County?

14      A.    Our chairperson is Ms. Ernestine

15   Thomas-Clark.  Co-chair I believe is either Wendell

16   Stone or Matthew McCullough.  I'm not 100 percent

17   sure of that at this time.

18            Matthew McCullough is a board member,

19   Wendell Stone is a board member, and Andy Thomas is

20   a board member currently.

21      Q.    Did you ever serve as chair?

22      A.    No.

23      Q.    Co-chair?

24      A.    No.

25      Q.    Did you ever have any position on the

1   board other than just a board member?

2         A.    No.

3         Q.    What were your responsibilities generally

4   as a member of the Coffee County election board?

5         A.    Just a board member.

6         Q.    Right.  But what does the Coffee County

7   board do with respect to elections in the county?

8         A.    The board basically is in charge of hiring

9   the supervisor of elections and the assistant

10  supervisor of elections and making sure they

11  fulfill their duties and conduct elections and make

12  sure that people are able to register to vote in

13  Coffee County.

14        Q.    Okay.  And do I understand right that the

15  elections supervisor and the assistant elections

16  supervisor in Coffee County, they report to the

17  board?

18        A.    They do.

19        Q.    Have you served on any other election

20  boards?

21        A.    No.

22        Q.    Have you had any other official positions

23  with respect to Georgia elections?

24        A.    No.

25        Q.    What did you do, if anything, to prepare

Page 19

```
 1    for the deposition today?

 2            MR. DELK:  And I'll instruct the

 3        witness, don't divulge anything that you

 4        and I discussed in our meetings.

 5            THE REPORTER:  I'm sorry.  I don't

 6        know who was speaking.

 7            MR. DELK:  That was Stephen Delk.

 8            THE REPORTER:  Okay.  Can you restate

 9        that, please?

10            MR. DELK:  Sure.  I was just

11        instructing the witness to not divulge

12        anything from my communications with him,

13        because that would be privileged

14        information.

15            But subject to that, you can respond.

16    BY MR. CROSS:

17        Q.  So apart from talking with your counsel,

18    what, if anything, did you do to prepare for today?

19        A.  On the advice of counsel, I respectfully

20    decline to answer on the basis of my rights and

21    privilege under Article I, Section 1, Paragraph 16

22    of the Georgia Constitution, the Fifth Amendment of

23    the United States and Georgia law.

24            As the United States Supreme Court has

25    stated, privilege against testifying protects
```

Page 20

1    everyone, including innocent people, from answering

2    questions if the truth might be used to help create

3    a misleading impression that they were somehow

4    involved in improper conduct.

5            So I hereby follow the advice of my

6    counsel and respectfully decline to answer.

7        Q.   You're taking the Fifth Amendment in

8    response to a question of what you did to get ready

9    for today?

10       A.   Yes.

11       Q.   Okay.

12           MR. CROSS:  And Mr. Delk, just for

13       ease, if he's going to take the Fifth in

14       response to any other questions, if he

15       just says Fifth Amendment.

16           MR. DELK:  That's fine, as long as we

17       stipulate that in -- by stating so, it

18       encompasses the entirety of the statement.

19           MR. CROSS:  Yes.

20           MR. DELK:  That's agreeable.

21           MR. CROSS:  Yeah.  Okay.  You tell

22       me.

23           MR. DELK:  Moving forward all you

24       need to do is say "Fifth Amendment," and

25       it saves you from having to read the whole

1      statement.

2              THE WITNESS:  Yes.

3              MR. CROSS:  Yeah.

4            (Whereupon, a discussion ensued

5         off the record.)

6    BY MR. CROSS:

7       Q.   All right.  Let me hand you what's been

8    mark -- what's going to be marked as Exhibit 1.

9            MR. CROSS:  Mr. Delk, if you want to

10         take a look at it, it's a copy of the

11         document subpoena that we -- that my

12         client served.

13                      (Whereupon, Plaintiff's

14                       Exhibit 1 was marked for

15                       identification.)

16   BY MR. CROSS:

17      Q.   And sorry, disregard that red X.  I wasn't

18   going to use that particular copy, but it's the

19   only one we have.  Otherwise, it's exactly the

20   same.

21      A.   Sure.

22      Q.   But just tell me, do you recognize Exhibit

23   1?

24      A.   Yes.

25      Q.   Okay.  And so you recognize this as a

Page 33

1   question.  Can you --

2        Q.    Sure.

3        A.    -- rephrase that?

4        Q.    You have been inside the Coffee County

5   election office; right?

6        A.    Yes.

7        Q.    And was there ever a point where you were

8   inside the Coffee County elections office in any

9   capacity other than as a member of the board?

10       A.    No.

11       Q.    Just so I understand, when you're invoking

12  the Fifth Amendment today, are you doing that on

13  your personal behalf or on behalf of the Coffee

14  County Board of Elections?

15            MR. DELK:  Object to the form.  You

16        know that's not legally proper to do it on

17        behalf of the board.  And this deposition

18        is noticed for individual, not a 30(b)(6),

19        so I object to the entire format of that

20        question being improper.

21            MR. CROSS:  I mean, it seems like

22        we're agreeing, but I just want to make

23        sure that he's asserting the Fifth

24        personally, not on behalf of the board.

25            MR. DELK:  He's only providing

Page 34

```
 1       testimony personally.
 2             MR. CROSS:  Okay.
 3    BY MR. CROSS:
 4       Q.   Do you disagree with your counsel?
 5       A.   I do not.
 6       Q.   Okay.
 7                       (Whereupon, Plaintiff's
 8                       Exhibit 4 was marked for
 9                       identification.)
10    BY MR. CROSS:
11       Q.   So Mr. Chaney, I've handed you what's been
12    marked as Exhibit 4.  Just take a moment to read
13    through it, and tell me if you recognize it.
14            (Whereupon, a discussion ensued
15         off the record.)
16            (Whereupon, the document was
17          reviewed by the witness.)
18            THE WITNESS:  Yes, sir, I do.
19    BY MR. CROSS:
20       Q.   And what do you recognize Exhibit 4 as?
21       A.    It's just an investigation summary where
22    there was a complaint -- or complaints filed I
23    guess through the Secretary of State's office.  And
24    I see the findings and the potential violation on
25    the back of the page.
```

1   Q. Okay. So Exhibit 4 is an official summary

2 from the Secretary of State's office about an

3 investigation involving Coffee County; is that

4 fair?

5   A. Yes.

6   Q. And what involvement, if any, did you have

7 with this investigation?

8   A. None that I recall.

9   Q. So did anybody from the State interview

10 you as a member of the board?

11   A. Not that I recall.

12   Q. Did anyone from the State provide a report

13 to any -- to you as a member of the board other

14 than what's written here?

15   A. Not that I recall.

16   Q. Okay. So if we look at Exhibit 4, look at

17 complaint two on Page 1. Do you see that?

18   A. I do.

19   Q. And it reads:

20    "A video surfaced on YouTube where

21  it showed Coffee County election

22  supervisor Misty Martin discussing the

23  ways in which the election software

24  could be manipulated."

25    Do you see that?

1       A.    I do.

2       Q.    And Misty Martin is the same person as

3    Misty Hampton?

4       A.    Yes.

5       Q.    Okay.  So we're talking about the, at this

6    time, the Coffee County election supervisor; right?

7       A.    Yes.

8       Q.    Okay.  And are you familiar with that

9    YouTube video?

10      A.    Yes.

11      Q.    You filmed that video; right?

12      A.    Fifth Amendment.

13      Q.    The video that's referenced there, that

14   was filmed during an official meeting of the Coffee

15   County election board in the Coffee County

16   office -- election office; right?

17      A.    Fifth Amendment.

18      Q.    All right.  Turn to the third page, if you

19   would.  Do you see where it has Findings at the

20   top?

21      A.    Yes, sir.

22      Q.    And then Complaint Two referencing that

23   same complaint.  Do you see that?

24      A.    Yes.

25      Q.    And under the findings here, the State

Page 37

```
 1    reports:

 2              "Ms. Martin, along with Coffee

 3          County Board of Election member Eric

 4          Chaney, made two videos claiming the

 5          Dominion system election software

 6          could be manipulated."

 7              Do you see that?

 8     A.    I do.

 9     Q.    Do you disa -- dispute that finding?

10     A.    Fifth Amendment.

11     Q.    It then goes on, if you come to the third

12    sentence, four lines down in the middle, do you see

13    where it reads, "Ms. Martin never"?

14     A.    I do.

15     Q.    And it -- and the finding here is:

16              "Ms. Martin never once during the

17          videos explained the intended use of

18          the adjudication process.

19              "The video was very misleading and

20          seemed its purpose was simply to

21          create doubt and public mistrust in

22          the Dominion Voting System."

23              Do you see that?

24     A.    Yes.

25     Q.    Was it your purpose in creating this video
```

1    to create doubt and public mistrust in the Dominion

2    Voting System?

3              MR. DELK:  Object to the form.

4              THE WITNESS:  Fifth Amendment.

5    BY MR. CROSS:

6         Q.   What was the purpose of the video?

7         A.   Fifth Amendment.

8         Q.   As you sit here, do you have any reason to

9    believe creating the video was criminal?

10        A.   Fifth Amendment.

11        Q.   Do you believe that video being released

12   to the public was criminal?

13        A.   Fifth Amendment.

14        Q.   If you come down to the second paragraph,

15   do you see where there's discussion of a password

16   that was taped to the bottom of the computer screen

17   Ms. Martin was using?

18        A.   Yes.

19             (Whereupon, a discussion ensued

20          off the record.)

21                       (Whereupon, Plaintiff's

22                        Exhibit 5 was marked for

23                        identification.)

24   BY MR. CROSS:

25        Q.   I'll hand you Exhibit 5.  And just tell me

Page 97

1   E-mail, do you see the sentence that begins "I have
2   no knowledge whether"?
3        A.   I do.
4        Q.   And you wrote to Ms. Herzog:
5             "I have no knowledge whether or
6        not Misty allowed anyone without
7        authorization to access the server
8        room (which remains locked).  And
9        because of the layout of the elections
10       office, which is very small, you have
11       to walk through Misty's office to
12       access that room.
13            "Therefore, it is highly unlikely,
14       if not impossible, for her not to know
15       who did or did not enter the server
16       room."
17            Do you see that?
18       A.   Yes.
19       Q.   You then go on:
20            "I have no personal knowledge that
21        anyone without authorization accessed
22        the server room..."
23            Do you see that?
24       A.   Yes.
25       Q.   That was a lie; right?

1            MR. DELK:  Object to the form.

2            THE WITNESS:  No.

3     BY MR. CROSS:

4        Q.   So that's a true statement, that you have

5     no personal knowledge that anyone without

6     authorization accessed the server room?

7        A.   Fifth Amendment.

8        Q.   Well, is it a lie or is it a true

9     statement?

10       A.   Fifth Amendment.

11       Q.   Well, you just said it's not a lie.

12       A.   Fifth Amendment.

13       Q.   Okay.  And you go on in that same sentence

14    to say that you also have no "knowledge of any

15    other statements or allegations in Ms. Brown's

16    letter."

17            Do you see that?

18       A.   That's correct.

19       Q.   That also was a lie; right?

20       A.   Fifth Amendment.

21            MR. DELK:  Object to the form.

22    BY MR. CROSS:

23       Q.   And you wrote this E-mail specifically for

24    the purpose of Ms. Herzog providing it as the

25    response to the Washington Post inquiry; right?

Page 99

1      A.    Correct.

2      Q.    Did you convey the truth of what happened

3   to your counsel or did you lie to your counsel,

4   too?

5           MR. DELK:  Object to the form.

6       That's privileged.

7           THE WITNESS:  Fifth Amendment.

8   BY MR. CROSS:

9      Q.    Why did you write this dishonest E-mail in

10  response to the inquiry from the Washington Post?

11          MR. DELK:  Object to the form.  Asked

12      and answered.

13          THE WITNESS:  Fifth Amendment.

14  BY MR. CROSS:

15     Q.    In the days leading up to January 7 of

16  2021, you reached out to Misty Hampton and asked if

17  she'd be willing to work with folks to get access

18  to the voting equipment in her elections office;

19  right?

20          MR. DELK:  Object to the form.

21          THE WITNESS:  Fifth Amendment.

22  BY MR. CROSS:

23     Q.    You had multiple conversations with her

24  about that; right?

25     A.    Fifth Amendment.

1     Q.   You told her specifically that one of

2     those individuals would be a man named Scott Hall;

3     right?

4     A.   Fifth Amendment.

5     Q.   Cathy Latham was one of the key

6     individuals who helped organized this with Scott

7     Hall; right?

8     A.   Fifth Amendment.

9     Q.   You and Ms. Latham worked together to

10    organize this; correct?

11    A.   Fifth Amendment.

12    Q.   On the morning of January 7, 2021, you

13    were aware that Scott Hall and others arrived in

14    the Coffee County election office specifically for

15    the purpose of copying ballots and copying data

16    from the voting equipment; right?

17    A.   Fifth Amendment.

18    Q.   Did you send any text messages about that?

19    A.   Fifth Amendment.

20    Q.   Do you use Signal?

21    A.   Fifth Amendment.

22    Q.   It's incriminating whether you use Signal

23    at all?

24    A.   Fifth Amendment.

25    Q.   I take it you use Signal only to commit

1    crimes?

2         A.   Fifth Amendment.

3              MR. DELK:  Object to the form.

4    BY MR. CROSS:

5         Q.   You were in the Coffee County elections

6    office on January 7, 2021 yourself; right?

7         A.   Yes.

8         Q.   Ms. Latham was also there; right?

9         A.   Fifth Amendment.

10        Q.   You were there when Scott Hall walked into

11   the door; right?

12        A.   Fifth Amendment.

13                        (Whereupon, Plaintiff's

14                        Exhibit 9 was marked for

15                        identification.)

16   BY MR. CROSS:

17        Q.   All right.  Mr. Chaney, I've handed you

18   what's been marked as Exhibit 9.  Take a moment to

19   read through it.  But do you recognize that these

20   are text messages that you exchanged with Misty

21   Hampton?

22             (Whereupon, the document was

23          reviewed by the witness.)

24             THE WITNESS:  I recognize this as a

25        text thread, but I'm not -- I mean, I

Page 102

1         can't testify to them.
2      BY MR. CROSS:
3         Q.    Text thread with Misty Hampton?
4         A.    Fifth Amendment.
5         Q.    All right.  Do you see at the bottom
6      there's pagination 24 pages, if you look on the
7      bottom right corner?
8         A.    Yes, sir.
9         Q.    Go to Page 12 of 24 in the text thread
10     with Ms. Hampton.  You see the date November 12th,
11     2020 --
12        A.    Yes.
13        Q.    -- 10:08 p.m.?
14              And she wrote to you:
15              "Did you like that post?  Was that
16       okay?"
17              You said:  "I did.  Very good."
18              She writes:  "Thank you."
19              Do you see that?
20        A.    I do.
21        Q.    Do you recall what this was about, what
22     this post was about?
23        A.    Fifth Amendment.
24        Q.    Okay.  And then you write back:
25              "Thanks for your hard work."

Page 121

1     County.

2          Q.    And you're aware that, during at least one

3     election, Ms. Hampton's daughter was able to use a

4     poll pad to watch Netflix during the election;

5     right?  Ms. Hampton conveyed that to you?

6          A.    Fifth Amendment.

7          Q.    Then if you come down to the bottom,

8     there's still -- just so you can see, we're still

9     on December 30 of 2020.  That spills over to the

10    top of Page 20, and there's an additional photo.

11             So this is still December 30.  Do you see

12    that?

13         A.    Yes.

14         Q.    And there's a card game that's depicted on

15    a computer screen in that one; right?

16         A.    Yes.

17         Q.    And here Ms. Hampton wrote to you:

18             "This is the computer that the

19         I.C.C. scanner is connected to."

20             Right?

21             MR. DELK:  Object to the form.

22             THE WITNESS:  Fifth Amendment.

23    BY MR. CROSS:

24         Q.    And then she sends you another photo.  Do

25    you see that below?

1       A.   Yes.

2       Q.   And there she writes:

3            "This is the E.M.S. server

4        computer."

5            Do you see that?

6       A.   Fifth Amendment.

7       Q.   Then on December 31 of 2020 at 7:46 p.m.,

8   you wrote to her:

9            "Did you get the letter sent?"

10           Do you see that?

11      A.   Yes.

12      Q.   What letter?

13      A.   Fifth Amendment.

14      Q.   Sent to whom?

15      A.   Fifth Amendment.

16      Q.   About what?

17      A.   Fifth Amendment.

18      Q.   For what purpose?

19      A.   Fifth Amendment.

20      Q.   Who wrote it?

21      A.   Fifth Amendment.

22      Q.   What was your involvement?

23      A.   Fifth Amendment.

24      Q.   Who else was involved?

25      A.   Fifth Amendment.

Page 123

```
 1      Q.   She responds to you:
 2           "No.  I am going to finish it
 3       tomorrow."
 4           Do you see that?
 5      A.   I do.
 6      Q.   And then you responded with an E-mail
 7   address for Preston Haliburton.  Do you see that?
 8      A.   I do.
 9      Q.   Why did you give her Preston Haliburton's
10   E-mail address?
11      A.   Fifth Amendment.
12      Q.   Okay.  Are you aware that Mr. Haliburton
13   represents Cathy Latham?
14      A.   Fifth Amendment.
15      Q.   All right.  Come to Page 22 of 24.  If you
16   come down in the middle, do you see there's a text
17   January 6th of 2021 at 4:26 p.m.?
18      A.   I do.
19      Q.   And on that day, Ms. Hampton wrote to you:
20           "Scott Hall is on the phone with
21       Cathy about wanting to come scan our
22       ballots from the general election like
23       we talked about the other day.  I am
24       going to call you in a few."
25           Do you see that?
```

Page 124

1        A.    I do.

2        Q.    "Cathy" refers to Cathy Latham; right?

3        A.    Fifth Amendment.

4        Q.    So you were aware, at least as of January

5   6th of 2021, that Scott Hall was coming in to the

6   Coffee County election office at least to access a

7   copy, to scan ballots; right?

8        A.    Fifth Amendment.

9        Q.    So when you testified earlier that your

10  only familiarity with Scott Hall was through an

11  open records request, that was a lie; right, sir?

12            MR. DELK:  Object to the form.

13            THE WITNESS:   Fifth Amendment.

14  BY MR. CROSS:

15       Q.    Are you aware that lying under oath is a

16  felony?

17       A.    Fifth Amendment.

18       Q.    Do you know who Javier represents?

19       A.    I do.

20       Q.    The Secretary of State's office; right?

21       A.    I do.

22       Q.    Do you understand the Secretary of State's

23  office has a lawyer sitting in this room in which

24  you just lied?

25            MR. DELK:  Object to the form.

Page 125

1    BY MR. CROSS:

2        Q.    Right?

3        A.    Fifth Amendment.

4        Q.    She then writes back later that same day,

5    8:54 p.m.:

6            "I found out tonight that there is

7         another way to change the ballots in

8         R.T.R."

9            Do you see that?

10       A.    I do.

11       Q.    What's R.T.R.?

12       A.    I don't know.

13       Q.    And you write back:  "What?"

14            She writes:  "Yelp."

15            You say:  "How?"

16            She says:  "I found a manual on Dominion."

17            And then you say:  "Wow."

18            Do you see that?

19            MR. DELK:  Object to the form.

20            THE WITNESS:  I do.

21   BY MR. CROSS:

22       Q.    What was this other way to change ballots?

23       A.    I'm not sure.

24       Q.    Then on January 7, 2021, 10:18 a.m., she

25   writes to you:

1           "Hey, are you coming to the

2        office?  I need a board member to be

3         here when we transfer ballots."

4           Do you see that?

5      A.   I do.

6      Q.   Why did a board member need to be there to

7   transfer ballots?

8      A.   Fifth Amendment.

9      Q.   And by "transfer ballots," she's talking

10   about copying the ballots for Scott Hall and

11   others; right?

12           MR. DELK:  Object to the form.

13           THE WITNESS:  Fifth Amendment.

14   BY MR. CROSS:

15      Q.   And you wrote:

16           "I'll be there at 11:00."

17           Right?

18      A.   I did.

19      Q.   And you don't dispute that you were in the

20   Coffee County election office on January 7, 2021;

21   right?

22      A.   Fifth Amendment.

23      Q.   And when you were in the office that day,

24   you saw Scott Hall come in with others right?

25      A.   Fifth Amendment.

Page 127

1      Q.    And you don't dispute that Ms. Latham was

2   in the office that day; right?

3      A.    Fifth Amendment.

4          (Whereupon, Ms. Curling joined the

5       deposition.)

6   BY MR. CROSS:

7      Q.    You don't dispute that Jil Ridlehoover was

8   in the office that day; right?

9      A.    Fifth Amendment.

10      Q.    If you come to the top of the next page,

11   January 7 of 2021 at 7:24 p.m., you send a phone

12   number to Ms. Hampton.

13          Do you see that?

14      A.    I do.

15      Q.    Whose phone number is that?

16      A.    I don't know.

17      Q.    Why did you send her that number?

18      A.    I don't know.

19      Q.    Nothing you can tell me about that phone

20   number?

21      A.    Fifth Amendment.

22      Q.    That phone number is for Robert Sinners,

23   S-I-N-N-E-R-S; right?

24      A.    I'm not sure.

25      Q.    You sent a phone number to Ms. Hampton on

1    January 7, 2021 and you have no idea whose number

2    it is?

3        A.    Fifth Amendment.

4        Q.    I'm going to ask you again, Mr. Chaney.

5    You are aware that that phone number is registered

6    to Robert Sinners; right?

7        A.    Fifth Amendment.

8            MR. DELK:  Object to the form.

9    BY MR. CROSS:

10       Q.    What was Mr. Sinners' involvement in a

11   team coming into the Coffee County elections office

12   on January 7, 2021 to copy ballots and copy

13   proprietary data off of the Dominion voting

14   equipment?

15           MR. DELK:  Object to the form.

16           THE WITNESS:  Fifth Amendment.

17   BY MR. CROSS:

18       Q.    Did you personally communicate with

19   Mr. Sinners?

20       A.    Fifth Amendment.

21       Q.    Were you asking Ms. Hampton to communicate

22   with Mr. Sinners about those events?

23       A.    Fifth Amendment.

24       Q.    Who in the Secretary of State's office to

25   your knowledge was aware of what happened on

Page 129

1    January 7th, 2021 involving Mr. Hall and Mr. Maggio

2    and others?

3         A.   Fifth Amendment.

4              MR. DELK:  Object to the form.

5    BY MR. CROSS:

6         Q.   When did they become aware?

7         A.   Fifth Amendment.

8         Q.   Immediately after you send her this phone

9    number, you write to her:

10             "Let's switch to Signal."

11             Right?

12        A.   Fifth Amendment.

13        Q.   Well, it's written here in front of us.  I

14   mean, we can get that much right.  You wrote to

15   her:

16             "Let's switch to Signal."

17             Right?

18             MR. DELK:  Object to the form.  Asked

19        and answered.

20             THE WITNESS:  Fifth Amendment.

21   BY MR. CROSS:

22        Q.   You wanted to switch to Signal because you

23   wanted to make sure you could delete the messages

24   you guys were exchanging; right?

25        A.   Fifth Amendment.

Page 130

1      Q.    Maybe if you'd thought of that sooner, we
2    wouldn't have all these texts, would we?
3      A.    Fifth Amendment.
4            MR. DELK:  Object to the form.
5    BY MR. CROSS:
6      Q.    Thought of it a little bit too late.
7            MR. DELK:  Argumentative.
8            Don't -- you don't have to respond.
9        That's not even a question.
10   BY MR. CROSS:
11     Q.    I gathered from going through the document
12   requests earlier where you wrote "denied" that you
13   have no responsive Signal messages to produce to
14   us; is that right?
15     A.    Fifth Amendment.
16     Q.    In fact, you've recently told people
17   associated with the Coffee County board that you
18   deleted those messages; right?
19           MR. DELK:  Object to the form.
20           THE WITNESS:  Fifth Amendment.
21   BY MR. CROSS:
22     Q.    On January 8th of 2021 at 11:52 a.m., she
23   writes to you:
24           "Did you check Signal?"
25           Right?

```
 1                    C E R T I F I C A T E

 2

 3    UNITED STATES OF AMERICA

 4    NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7    the United States District Court, for the Northern District of

 8    Georgia, Atlanta Division, do hereby certify that the foregoing

 9    264 pages constitute a true transcript of proceedings had

10    before the said Court, held in the City of Atlanta, Georgia, in

11    the matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13    16th day of January, 2024.

14

15

16    _____
      SHANNON R. WELCH, RMR, CRR
17    OFFICIAL COURT REPORTER
      UNITED STATES DISTRICT COURT
18

19

20

21

22

23

24

25
```