# EXHIBIT 14

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3

 4    DONNA CURLING, ET AL.,           :
                                       :
 5           PLAINTIFFS,                :
      vs.                              :   DOCKET NUMBER
 6                                     :   1:17-CV-2989-AT
      BRAD RAFFENSPERGER, ET AL.,      :
 7                                     :
             DEFENDANTS.                :
 8

 9

10        TRANSCRIPT OF BENCH TRIAL - VOLUME 3 PROCEEDINGS

11            BEFORE THE HONORABLE AMY TOTENBERG

12            UNITED STATES DISTRICT SENIOR JUDGE

13                     JANUARY 11, 2024

14

15

16

17

18

19

20

21   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                   TRANSCRIPT PRODUCED BY:

23
     OFFICIAL COURT REPORTER:      SHANNON R. WELCH, RMR, CRR
24                                 2394 UNITED STATES COURTHOUSE
                                   75 TED TURNER DRIVE, SOUTHWEST
25                                 ATLANTA, GEORGIA  30303
                                   (404) 215-1383
```

1  **Q.**   Is your cell number
2  **A.**   Yes, sir.
3  **Q.**   Okay.  Do you have any reason to understand why Eric
4  Chaney might be providing that number to Misty Hall on
5  January 7th?
6              MR. TYSON:  Objection, Your Honor.  I don't think we
7  have a foundation for Mr. Chaney providing anything to Ms. Hall
8  at this point, or Ms. Hampton at this point.  I would also
9  request that for purposes of the transcript, Mr. Sinners' cell
10 phone not be made part of the public transcript.
11             THE COURT:  That request as to the -- we'll make sure
12 that the transcript does not reflect his number.
13             Do you want to lay a foundation?  Do you have
14 anything to lay a foundation for the question?  I'm sorry.  I
15 didn't speak loud enough.
16             Mr. Tyson's objection was, in part, that you hadn't
17 laid a foundation for asking about whether -- this provision of
18 the telephone number.
19             MR. KNAPP:  Okay.  Let me see here.
20             THE COURT:  So you would need to address it.
21 BY MR. KNAPP:
22 **Q.**   Is there also, in your notebook, an exhibit beyond the
23 complaint?
24             THE COURT:  Number 6, are you saying?
25             MR. KNAPP:  Number 6.

```
1   BY MR. KNAPP:
2   Q.   And this is -- appears to be a series of text messages.
3   Would you turn to -- let's see.
4          MR. KNAPP:  May I approach, Your Honor?
5          THE COURT:  Yes.
6          THE WITNESS:  There's an Amazon order.
7   BY MR. KNAPP:
8   Q.   All kinds of important stuff.
9        Let's see.  If you turn to Page 23 of 24.
10       Do you see that?
11  A.   Sure.
12  Q.   At the top there is -- in a text bubble is a phone number.
13         MR. TYSON:  Your Honor, I'm just going to object to
14  this line of questions.  We're looking at a document that does
15  not indicate Mr. Sinners was a participant in this
16  conversation.  To ask questions about this, it is not clear who
17  the conversation --
18         THE COURT:  Why don't we let him try to lay a
19  foundation for it before you start saying what is wrong with
20  it.  All right?
21         MR. KNAPP:  Exactly, Your Honor.
22  BY MR. KNAPP:
23  Q.   Okay.  And did you observe, on this exhibit, which is
24  Defendants' 270 and Plaintiffs' 110, any notations which would
25  indicate to you whose text messages these are?
```

```
1              MR. TYSON:  Your Honor, objection.  I just don't see
2    how we can put a document in front of a witness and say do you
3    see something that would tell you what this is.  The witness
4    knows what it is or he doesn't.
5              THE WITNESS:  I mean, I see what is highlighted.
6    BY MR. KNAPP:
7    Q.   Let's ask Mr. Tyson's question.
8         Do you understand what this -- Defendants' Exhibit 270 is?
9    A.   Can you say that again?  Sorry.
10   Q.   Do you understand what the document is that is before you
11   as Defendants' Exhibit 270?
12   A.   It seemed like text messages to or from Eric Chaney.
13   Q.   Okay.
14   A.   Based on the highlighting.
15   Q.   Did you ever provide your personal cell number to Eric
16   Chaney?
17   A.   I believe so.
18   Q.   And during your deposition, were you asked whether or not
19   you would provide your cell phone records to Mr. Cross?
20   A.   Was I -- I believe he asked me.
21   Q.   Were you asked to give your cell phone records for
22   January 7, 2021, or the month of January to the plaintiffs and
23   Mr. Cross in your deposition?
24   A.   I think he asked if I would or could or should.  I don't
25   know.  I don't think it is relevant.  I had no involvement in
```

1  this.
2  **Q.** And your response was you declined to provide your
3  personal telephone records for that date, January 7, 2021?
4  **A.** Yes. I would decline that.
5  **Q.** And you didn't bring those records with you here to the
6  court today either, did you?
7  **A.** No.
8  **Q.** Okay. Now -- and on February 1st, 2021, you began your
9  work officially with the Secretary of State's office?
10 **A.** Yes, sir.
11 **Q.** Okay. And have you ever been interviewed by the Secretary
12 of State or any of their investigators about your dealings with
13 Misty Hampton in November and December of 2020?
14 **A.** I would say I've been interviewed regarding the 2020
15 election significantly and probably by every investigative body
16 you could think of.
17 **Q.** Were those investigations prior to being hired by the
18 Secretary of State on February 1st, 2021?
19 **A.** No.
20 **Q.** Okay. And were you interviewed by these investigators or
21 the Secretary of State about your flight with Alex Kaufman to
22 Coffee County in December of 2020?
23 **A.** I think at some point it has come up.
24 **Q.** Was that communication prior to being hired by the
25 Secretary of State's office?

1  **A.**   Can you rephrase?
2         Was which -- the question -- can you rephrase?  Sorry.  I
3  don't understand your question.
4  **Q.**   You were going to work -- I assume you applied for this
5  position?
6  **A.**   I discussed it with the office.
7  **Q.**   And who did you discuss a potential position in the
8  Secretary of State's office?
9  **A.**   The first was Jordan Fuchs.
10 **Q.**   Okay.  And where did it go from there?
11 **A.**   I interviewed.  I then interviewed, I think, with the
12 whole office.  And -- yeah.  Started.  They needed help.  They
13 needed a Trump whisperer, if you will.
14 **Q.**   When you say you interviewed with the whole office, did
15 you interview with the Secretary of State Raffensperger?
16 **A.**   I am not sure.
17 **Q.**   Had you met Secretary of State Raffensperger by the time
18 you were retained by the Secretary of State in February of
19 2021?
20 **A.**   Yes.
21 **Q.**   On how many occasions?
22 **A.**   Once or more than that.
23 **Q.**   And did you advise the people you were talking to in the
24 Secretary of State's office that you had had dealings in the
25 Shawn Still suit by notarizing affidavits that were attached to

1  that suit which was filed against Secretary of State
2  Raffensperger?
3              MR. TYSON:  Objection, Your Honor.  This has gone on
4  for a little while.  I still fail to see the relevance here of
5  the hiring of Mr. Sinners related to his functioning as a
6  notary for an affidavit.
7              MR. KNAPP:  In a lawsuit pending against the
8  Secretary to decertify the election results of Coffee County.
9              THE COURT:  I'm going to allow it.
10             Go ahead.
11             THE WITNESS:  What is your question?  Did I discuss
12 being a notary --
13 BY MR. KNAPP:
14 **Q.**   Right.
15 **A.**   -- on an affidavit with the Secretary's office?
16 **Q.**   Right.
17 **A.**   No.
18 **Q.**   You were interviewing for a job with the Secretary of
19 State who is responsible for elections, who's had this
20 publicity about the election of 2020 and all the controversy
21 about it, and you are about to go into their employment.
22      Do you think it is appropriate for you to disclose that,
23 hey, I might have some background here you need to know about
24 before I come work for y'all so I don't cause embarrassment?
25             MR. TYSON:  Again, Your Honor, same relevance

```
1   objection and asked and answered.  He has already testified he
2   didn't provide that information.
3           THE COURT:  I think that is sufficient.  I think you
4   need to move on.  I mean, there may be other things you want to
5   ask about that.  But now you're asking about did he think about
6   it.  I mean, that takes us off on another route.
7           MR. KNAPP:  One final question, Your Honor.
8           THE COURT:  Okay.
9   BY MR. KNAPP:
10  Q.  This phone number we've been talking about, was that your
11  phone number on January 7, 2021?
12  A.  The one at the doc -- yes, that is my phone number.
13          MR. KNAPP:  I have no further questions, Your Honor.
14          THE COURT:  Thank you.
15          MR. TYSON:  We have no questions for Mr. Sinners,
16  Your Honor.
17          THE COURT:  All right.  Is this witness excused, or
18  is he subject to re-call?
19          MR. TYSON:  He may be subject to re-call in our case,
20  Your Honor.
21          THE COURT:  All right.  So please don't discuss your
22  testimony with anyone in the event you're going to be re-called
23  and don't -- or somebody else that you know may be called as a
24  witness here.  All right.
25          THE WITNESS:  Thank you, Your Honor.  I appreciate
```

1   it.
2              THE COURT: Who is your next witness?
3              MR. SPARKS: Your Honor, the plaintiffs call Michael
4   Barnes.
5              COURTROOM DEPUTY CLERK: If you would please raise
6   your right hand.
7                          **(Witness sworn)**
8              COURTROOM DEPUTY CLERK: Please have a seat.
9              If you would please state your name and spell your
10  full name for the record.
11             THE WITNESS: It is Michael Barnes. Michael,
12  M-I-C-H-A-E-L. Barnes, B-A-R-N-E-S.
13     Whereupon,
14                          MICHAEL BARNES,
15     after having been first duly sworn, testified as follows:
16                         CROSS-EXAMINATION
17  BY MR. SPARKS:
18  **Q.**   Good morning, Mr. Barnes.
19  **A.**   Good morning.
20  **Q.**   My name is Adam Sparks. I'm an attorney for plaintiffs.
21  It is nice to see you in the courtroom again.
22  **A.**   Nice to see you.
23             MR. SPARKS: Your Honor, to clarify for the record,
24  this will be an adverse direct examination.
25             THE COURT: Okay. Thank you.

```
 1  BY MR. SPARKS:
 2  Q.   Mr. Barnes, you're the director for the Center for
 3  Election Systems at the Secretary of State's office.  Do I have
 4  that right?
 5  A.   Yes, sir.
 6  Q.   And if I refer to the Center for Election Systems as CES,
 7  will you understand what I mean?
 8  A.   Yes, sir.
 9       But for clarification purposes, there are -- there have
10  been multiple CESs.  So we want to make sure that we're
11  speaking of the right one in the right way.
12  Q.   Yes, sir.  Let's clarify that now.
13       Up until December 31st, 2017, CES was housed at Kennesaw
14  State University; is that correct?
15  A.   Yes.
16            THE COURT:  Just slow down.
17            MR. KNAPP:  Slow down.
18            MR. SPARKS:  My apologies, Your Honor.
19            My apologies, Madam Court Reporter.
20  BY MR. SPARKS:
21  Q.   From January 1st, 2018, forward to the present day, CES is
22  housed within the Secretary of State's office for the state of
23  Georgia; is that correct?
24  A.   That is correct.
25  Q.   All right.  Now, while I'm at it, if I refer to a Dominion
```

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 286 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

In testimony whereof, I hereunto set my hand on this, the 11th day of January, 2024.

_____
SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT