## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING DOMINION DEMOCRACY SUITE 5.17

### I.   INTRODUCTION

Defendants intend to offer evidence pertaining to the State's efforts to adopt a fundamentally new version of the Dominion Voting Systems Democracy Suite software, Version 5.17, and claim that it somehow mitigates some of the vulnerabilities Dr. Halderman identified that that the Cybersecurity Infrastructure Security Agency ("CISA") validated.   Evidence regarding both the mitigation methods and Version 5.17 is inadmissible and should be excluded.

Defendants have never provided any discovery concerning Version 5.17, even though it is responsive to Plaintiffs' discovery requests and even though Defendants had a duty to supplement under Rule 26(e), even after the close of fact discovery.

On multiple occasions, Plaintiffs affirmatively asked if Defendants would supplement their responses, and Defendants chose not to.

If Defendants intended to introduce evidence about Version 5.17 as part of its defense, they needed to disclose it in discovery, so that Plaintiffs' experts could evaluate whether and to what extent it mitigates the serious security vulnerabilities in the current version of the Dominion software used by Georgia. Plaintiffs' experts would also have needed to examine whether Version 5.17 introduces any new vulnerabilities that could be as bad or worse than the ones they identified in the current version. Plaintiffs must also be entitled to take discovery into the costs and administrative burdens of upgrading to Version 5.17, which likely are far greater than those associated with the relief Plaintiffs are seeking in this case. Defendants' failure to provide any discovery on Version 5.17 was not substantially justified, and permitting them to introduce such information at trial would substantially prejudice the Plaintiffs, who would be learning about the evidence for the first time during trial. That is precisely the type of trial by ambush that the discovery rules are intended to prevent.

Further, the State's supposed efforts to implement Version 5.17 is irrelevant to the case at hand. Plaintiffs are seeking relief for the upcoming 2024 elections in Georgia. The State has made clear—including during the course of this trial—that the State will not adopt Version 5.17 in time for the 2024 election cycle. Version

5.17, in addition to never being disclosed during discovery, will not provide the relief that Plaintiffs are seeking, and is therefore irrelevant for the purposes of this case.

## II.    BACKGROUND

On July 9, 2021, Curling Plaintiffs served their third Requests for Production on the State Defendants (the "3rd RFPs").  (Ex. A).  Within these requests, Curling Plaintiffs asked Defendants to produce "Documents reflecting any actual, anticipated, or contemplated plans to replace Georgia's current voting software or equipment with different voting software or equipment, such as BMDs that do not generate bar codes for tabulation, and any communications regarding such plans." *Id*. at 10-11.  State Defendants provided their objections and responses to the 3rd RFPs on July 26, 2021. (Ex. B).  Documents related to Dominion Suite 5.17 were not included in the State's response and related production.

Such documents are plainly responsive.  On June 21, 2023, Michael Barnes appeared at a State Election Board meeting and described his understanding of how 5.17 differs from the current Dominion Suite 5.5-A used in Georgia.  As he put it, "it's really not an upgrade."  Ex. F, 80:14.  He explained that it will "require us to fully rebuild the system and that means the election management systems have to be completely rebuilt." *Id.* at 80:16-19.  He explained that "an additional amount of hardware has got to be procured for county use." *Id.* at 80:24-25.  With respect to BMDs in particular, he explained that the transition to 5.17 "will require

3

not just a simple install and update," but that they will need to broken down "all the way back down to the BIOS level." *Id.* at 81:16-25.

Later in July 2021, Curling Plaintiffs served their third set of Interrogatories on the State Defendants (the "3rd ROGs"). (Ex. C). Curling Plaintiffs' 3rd ROGs contained one request, asking Defendants to "Identify and describe with specificity all measures taken to investigate, evaluate, remedy, mitigate, or otherwise address each of the Security Vulnerabilities and problems with the Current Election System identified in Dr. J. Alex Halderman's declarations, reports, and testimony in this matter." *Id*. at 9. State Defendants responded to this request on October 1, 2021, indicating that because Dr. Halderman's report was designated Attorneys' Eyes Only, they "do not have knowledge of the Security Vulnerabilities and problems with the Current Election System identified in Dr. Halderman's report." (Ex. D at 4).

Subsequently, nearing the close of fact discovery, Plaintiffs emailed Defendants inquiring into Defendants' plans to supplement their discovery responses and document productions, as they had neglected to do so during the duration of the discovery period. (*See* Ex. E, Nov. 15-16, 2022 email thread between D. Cross, B. Tyson and J. Belinfante). Defendants replied that they would review "the pending requests and see if there is anything to supplement." Defendants did not supplement their responses to add information about Version

4

5.17 or any steps taken to mitigate the vulnerabilities identified by Dr. Halderman, nor did they produce documents regarding these issues.

At the time of Plaintiffs' request for supplementation, Defendants were aware of, and were considering Version 5.17.  During his 30(b)(6) deposition on October 12, 2022, Gabriel Sterling mentioned Version 5.17, testifying that Georgia was "looking at moving to 5.17 on Democracy Suite from Dominion." *See* Ex. G, Oct. 12, 2022 Dep. of G. Sterling (SoS 30(b)(6) at 152:25-153:1.  Nevertheless, Defendants did not supplement discovery responses and productions that were clearly related to the Version 5.17, which Georgia was contemplating before Plaintiffs inquired into Defendants' plans to supplement.

### III.   ARGUMENT

Evidence relating to the State's mitigation measures and implementation of Version 5.17 is inadmissible and should be excluded.  Defendants did not produce documents or provide discovery responses pertaining to these issues, despite requests clearly relating to it; Defendants failed to supplement their responses or productions in light of mitigation efforts and Version 5.17; Defendants have no justification for these failures; introducing this evidence prejudices Plaintiffs; and it is not relevant to the case at hand.

### A.    Defendants did not produce documents or provide discovery responses about the State's mitigation measures or Version 5.17.

The Federal Rules of Civil Procedure 37(c)(1) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  *Canon, Inc. v. Color Imaging, Inc.*, 227 F. Supp. 3d 1303, 1311 (N.D. Ga. 2016) ("Rule 26(e) requires a party to supplement its discovery responses…in a timely manner when it learns of additional or corrective information).  *See also C&H Liquor Store, Inc. v. Harleysville Preferred Ins. Co.*, 413 F. Supp. 3d 1238, 1244 (N.D. Ga. 2019) (same).

Courts in this jurisdiction routinely preclude evidence that should have been supplemented pursuant to Rule 26(e).  *See Canon, Inc. v. Color Imaging, Inc.*, 227 F. Supp. 3d at 1313.  This evidence can only be introduced at trial if the party demonstrates that its failure to supplement was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).  In *Canon*, this Court held that the Defendants had not met their Rule 37 burden, as Defendants did not provide a sufficient reason for waiting to introduce evidence, and that a seven-month delay in doing so was not substantially justified or harmless. *Id*. at 1312-1313.  *See also*, *Paul v. Aramark Healthcare Support Servs., LLC*, 2016 WL 7888045, at *4 (N.D. Ga. Jun. 2, 2016) (holding that a failure to supplement is not harmless when the late disclosure

6

deprives the non-producing party the ability to perform discovery related to the document in question).

Here, Defendants have failed to meet the requirements of 26(e) both with regards to the State's efforts to mitigate the vulnerabilities highlighted by Dr. Halderman, and the State's intended use of Version 5.17.  Curling Plaintiffs served discovery requests on Defendants which clearly would encompass evidence relating to these issues. *See* Exs. A at 10-11 and C at 9.  Defendants, as evidenced through Gabriel Sterling's deposition, were aware of the 5.17 Software, and had discussions to implement the software, as late as October of 2022.  Despite this, Defendants, after an inquiry by Plaintiffs, did not supplement any of their discovery responses or productions to account for Version 5.17.  Defendants themselves have recently discussed the importance of Rule 26, arguing that components of Dr. Halderman's report should be excluded.  Here, however, Plaintiffs affirmatively requested that Defendants supplement their responses and productions more than 15 months ago, despite the obligation to do so lying with Defendants.  (Defendants, on the other hand, neglected to request extraneous source code from Dr. Halderman until the eve of trial, despite orders from the Court to seek this discovery more than 18 months ago).  As such, Defendants have not met their Rule 26(e) requirements.

**B.    Defendants' failure to supplement their discovery responses is neither justified nor harmless.**

Defendants cannot demonstrate that their failure to supplement in light of Version 5.17 was justified or harmless.  Defendants waited until trial to introduce this evidence, despite having years to amend a number of their responses.  As established through Mr. Sterling's October 2022 deposition, the State was considering internally whether to adopt Version 5.17, yet Defendants failed to produce any documents or provide a single discovery response pertaining to this.  Similarly, despite having access to Dr. Halderman's report for over 2.5 years, Defendants have failed to identify any mitigation measures undertaken by the State.

In an attempt to explain these omissions, Defendants told the Court:

> In terms of things that were not produced during discovery, discovery ended as to everything but Coffee County effectively last year, and I don't think it is fair for the State to be judged on what it was doing in some cases a year or two ago when we're talking about current threats now.  The State does move on, and these things have to be able to be provided for them to use as a fact-finder.

Trial Tr. Vol. 5A, 221:17-222:2.  There are two problems with that statement.  First, it is factually incorrect.  As explained below, there is no timeline for Version 5.17's implementation.  The Court can only "judge" the state for the election security measures it has in place to protect Plaintiffs' constitutional rights today, not what it might do at some unknown point in the future.  Second, it fails to

acknowledge that regardless of when discovery concluded, the state's duty to supplement its responses was ongoing.  If they intended to use this evidence at trial, it needed to be disclosed.

The failure to do so is highly prejudicial to Plaintiffs.  As an initial matter, Defendants, by flouting the discovery process, have deprived Plaintiffs the opportunity to test their claims.  As officials of the Secretary's office have made clear, Version 5.17 is a fundamentally new version of the software.  Michael Barnes stated to the SEB that it "will require not just a simple install and update," but that they will need to be broken down "all the way back down to the BIOS level."  Ex. F at 81:16-25.  Defendants have not identified, what, if any vulnerabilities they have addressed, and have no expert that can adequately address this during trial.  Further, additional discovery would almost certainly establish new, dangerous vulnerabilities within the State's election equipment.  Given that the State's last software upgrade introduced new vulnerabilities, as well as the overall lack of sophistication and accountability within the State's election-facing officials, Plaintiffs are skeptical that additional upgrades would be free from vulnerabilities.  Time and time again, the State has demonstrated that they are unable to implement sound election software, as emphasized by the DRE system and Democracy Suite Version 5.5-A.

In addition, Plaintiffs should be entitled to take discovery into the cost and administrative burdens of upgrading the voting machines in all 159 counties to Version 5.17.  Defendants have argued in favor of the current system and opposing changes that the cost and administrative burdens of making such changes would be too great.  Plaintiffs must therefore be able to take discovery and show that the relief they are seeking very likely costs far less than the cost of upgrading to Version 5.17, and that Plaintiffs' requested relief would impose a far lesser burden on officials responsible for administering elections than implementing Version 5.17.  Moreover, Version 5.17 is unlikely to be the last major software change the State will need to make if it continues using BMDs.  As long as the State uses BMDs, the software and devices will have to be continuously upgraded, creating massive costs and logistical burdens that dwarf those of the relief sought by Plaintiffs.  *See* Ex. F at 92:21-93:11 (Mr. Barnes explaining how when a new version comes out "there might be another version coming right behind it").

This Court recently ruled that Defendants were not permitted to introduce seven untimely witnesses, one of whom, Nick Ikonomakis, was slated to discuss Version 5.17. (*See* Dkt. 1749).  In its ruling, the Court held that Defendants did not demonstrate how their failure to timely introduce these witnesses was justified or harmless.  Dkt. 1749 at 9.  Similar to his appearance as a witness, the subject of Mr. Ikonomakis' testimony would prejudice Plaintiffs. Plaintiffs have had no

opportunity to review Version 5.17 or the pilot test that the State recently conducted in five counties (which failed in three of those counties, according to Mr. Sterling's testimony in this trial) and to structure its strategy accordingly. *See* Trial Tr. Vol. 5A, 219:19-24.

Defendants have not demonstrated how their failure to supplement with the State's mitigation measures and Version 5.17 was justified or is harmless. As such, Defendants should not be permitted to introduce and rely on this evidence during trial.

### C. Version 5.17 will not be implemented during the 2024 election cycle, and is therefore not relevant to the relief sought by Plaintiffs.

Throughout their case, Plaintiffs have argued that the relief they are seeking is for the Court to enjoin the BMD system prior to the 2024 election cycle. Meanwhile, the State has made it clear that Version 5.17 will not be implemented in time for the 2024 election.

Under the Federal Rules of Evidence, "evidence is relevant if it has any tendency to make a fact more or less probable and that fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is inadmissible." Fed. R. Evid. 402. "To determine whether a fact is of consequence, we look to the elements of the cause of action." *Johnson v. Jennings*, 772 Fed. Appx. 822, 825 (11th Cir. 2019).

As stated, Plaintiffs seek an injunction against Georgia's continued use of the BMD system.  Particularly, Plaintiffs seek an injunction prior to the 2024 election cycle, lest they risk further disenfranchisement.  Georgia has made it clear, however, that Version 5.17 will not be implemented in 2024.  Speaking at a November 1, 2023 Senate Ethics Committee meeting, Charlene McGowan, legal counsel for Georgia's Secretary of State's office, stated that implementing Version 5.17 would require the State "to physically touch every single piece of election equipment," and that Georgia has "approximately 40,000 pieces of equipment that we must go in and physically touch and install 5.17 on each piece of equipment."[1] McGowan further commented that implementing Version 5.17 ahead of the 2024 election cycle would be a "rushed process."  Ex. H.

Vague statements such as the above emphasize the fact that Georgia has no immediate plans to implement any sort of upgrade or update, and any evidence pertaining to Version 5.17 is wholly irrelevant to the relief that Plaintiffs are seeking.

## IV.    CONCLUSION

Defendants did not supplement their discovery responses and productions in light of the State's purported efforts to mitigate the vulnerabilities identified by Dr

---

[1] A recording of the hearing is available at https://www.youtube.com/watch?v=RgINIFZho0E.

Halderman and to implement Version 5.17.  Defendants' failure to supplement deprived Plaintiffs of the ability to test Defendants' claims and to expose additional vulnerabilities, which is especially prejudicial considering the timing of the introduction of this material.  Evidence pertaining to Version 5.17 is also irrelevant, as the State has demonstrated it will not implement this software until at least after the 2024 election cycle.  As Plaintiffs' relief pertains to the 2024 elections, Version 5.17 is not a fact of consequence.  Exclusion is necessary to enforce the Federal Rules of Civil Procedure and Evidence, jurisdictional precedent, and to prevent severe prejudice to Plaintiffs.

Respectfully submitted this 24th Day of January, 2024.

*/s/ David D. Cross*
David D. Cross (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Matthaeus Martino-Weinhardt
(*pro hac vice*)
Ramsey Fisher (*pro hac vice*)
Aaron Scheinman (*pro hac vice*)
Benjamin Campbell (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
dcross@mofo.com

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
(404) 888-9700
hknapp@khlawfirm.com

/s/ Christian G. Andreu-von Euw
Christian G. Andreu-von Euw
(*pro hac vice*)
THE BUSINESS LITIGATION GROUP, PC
150 Spear Street
San Francisco, CA 94105
(415) 765-6633
christian@blgrp.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

/s/ Robert A. McGuire, III
Robert A. McGuire, III
Admitted Pro Hac Vice
 (ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*Counsel for Plaintiff Coalition for Good Governance*

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Counsel for Plaintiffs Laura Digges, William Digges III & Megan Missett*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

<u>/s/ David D. Cross</u>
David D. Cross

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER , ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024 , a copy of the foregoing **PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING DOMINION DEMOCRACY SUITE 5.17** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross