IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** ) | |
| **PLAINTIFFS,** ) | |
| ) | |
| **v.** ) | Civil Action No. 1:17-CV-2989-A |
| ) | |
| **BRAD RAFFENSPERGER, ET AL.,** ) | |
| **DEFENDANTS.** ) | |
| ) | |

**NOTICE OF**

**PLAINTIFF RICARDO DAVIS' 2nd PROFFER OF EVIDENCE**

In January of 2024, Plaintiff Ricardo Davis requested to be allowed to question several material witnesses, including Frances Watson, Dr. Alex Halderman and Dr. Philip Stark. All individuals were disclosed by Plaintiffs in the Pre-Trial Order (Dkt. 1728), adopted by the Court in its Order on Pretrial Issues (Dkt. 1749), as witnesses who would be called to testify in this action.[1] The Court denied Plaintiff's request, but granted Plaintiff's subsequent request to make a proffer to perfect the record. Plaintiff Davis made an oral proffer on the record concerning this evidence (Transcript Vol. 10A, p. 67) and submits this written proffer to perfect the record of the case.

---

[1] This Court denied Davis' motion to amend the Proposed Pre Trial Order and issued an Order adopting the Proposed Pre Trial Order. (Dkt. 1749)

1

Plaintiff Davis contends that as a result of the Court's Order, he was denied an opportunity to present evidence at trial, which he has been waiting six years to present, and that such action has substantially decreased his odds of success in this action. Plaintiff Davis shows that this evidence was relevant and material to the issues to be decided at trial, namely whether the current Dominion BMD voting system employed by the State of Georgia infringes upon his right to Equal Protection of Law extended to citizens of Georgia under the 14th Amendment to the United States Constitution, and his fundamental right to vote in violation of the 14th Amendment's guarantee of Due Process to citizens of Georgia. (Dkt. 1728, p. 4).

As a result of this Court's Order (Dkt. 1749), Plaintiff Davis was not allowed to tender certain evidence at trial, including the following:

**FRANCES WATSON**

After agreeing that the duplicate ballot issue is within scope of the trial, the court limited Attorney David Oles' (representing Ricardo Davis) ability to question adverse witness Frances Watson, allowing him just one question about duplicate ballots.

The court did not allow Plaintiff to ask any questions about Frances Watson's Coffee County 2020 recount investigation; however the Court allowed other co-Plaintiffs to ask questions about the same investigation.

Had Plaintiff been able to ask Frances Watson questions that are within the scope of trial issues in the same manner that other co-plaintiffs were allowed to ask, it would have likely shown:

- Frances Watson was not truthful about her Coffee County investigation findings that claimed there were no problems with the Dominion system recount;

- Frances Watson was not truthful in claiming that Coffee Co. recount problems were attributable to human error of not having batches properly separated;

- There is no corroborating evidence in the record to support any of Frances Watson's findings about Coffee County recount;

- Frances Watson was not truthful about claiming to have found no duplicate pristine ballots that were accepted in the Fulton Co. 2020 election;

- Mr. Germany was not truthful when he claimed Eric Chaney made false statements about Dominion recount problems and the lack of support from the SOS office.

### DR. PHILIP STARK

Dr. Philip Stark was qualified as an expert in election audits.  Plaintiff Davis was permitted to ask Dr. Stark only one question and some limited follow-up.  Dr. Stark is a key eye witness whose deposition testimony is supportive of Mr. Davis' claims. Plaintiff Davis contends that, had he been permitted to question Dr. Stark, the testimony would tend to show that:

1. A digital backup a digital ballot image is required by the Dominion voting system to produce tabulated votes for the ballot.
2. Dr. Stark believes digital ballot images are election records that should be retained according to federal and state.
3. Dr. Stark is not aware that those ballot images are retained for either the period of 22 months under state law or 24 months under federal law consistently.
4. Dr. Stark would have confirmed that it is technically impossible to have more certified votes than ballot images if the election processes are followed

4

correctly. We believe he would have confirmed that there were 17,852 certified 2020 Fulton County votes that had no original ballot image files.

5. Dr. Stark would be able to confirm that votes with missing ballot images are an indication of electronic vote tampering.

6. Dr. Stark would be able to confirm that the missing original ballot images would have made it impossible to accurately audit the 2020 election.

In support of this proffer, we would ask the Court to admit into the record what is Docket Number 1346-1, which is Dr. Stark's amended declaration of March 9, 2022.

## DR. ALEX HALDERMAN

Dr. Alex Halderman was qualified as an expert in election systems. Plaintiff Davis was not permitted by the Court to ask Dr. Halderman any questions. Dr. Halderman is a key witness whose deposition testimony is supportive of Mr. Davis' claims. Plaintiff Davis contends that, had he been permitted to question Dr. Stark, Plaintiff Davis contends the testimony would tend to show that:

1. Dominion has no available patch that is proven to address all of the security concerns in Dr. Halderman's Security Analysis.

2. The irregular access that occurred in Coffee County poses a threat to the entire Dominion voting system.

5

3. Intruders could attack and infect either the ICX BMD or the ICP scanner that reads the QR codes for all in-person voting.

4. Intruders could also attack and infect the county Election Management Server not just the BMD.

5. Both the ICP in-person scanners and ICC mail-in ballot scanners cannot detect photocopied ballots.

6. Malware could reside on either the ICX Precinct scanners, the ICC central absentee ballot scanner or even the Election Management Server.

7. Dr. Halderman would agree with Dr. Stark that Georgia's audit procedures are wholly inadequate.

8. The only way to rule out malware-based fraud is with hand counted results or very comprehensive audits for each race on the ballot.

9. All Dominion system components were developed without sufficient attention to security during design, software engineering, and testing.

10. Any Election Management Server spreading malware could also become infected.

11. Malware could also be programmed to infect ICP in-person voting scanners not just the BMDs.

12. Malware could also be programmed to infect ICC absentee ballot scanners.

13. He was not given the opportunity to examine the server that prepares election projects for the current or previous Dominion system despite claims by the SOS that he could do so.

14. He would likely have found similar security deficiencies in the Dominion server's election projects and other components if he had been given that opportunity to examine them.

15. He could have explained why Paul Maggio was able to image copy every Dominion Voting System component except the BMD.

This proffer is made in good faith to preserve Plaintiff Davis' rights in the event of an appeal.

Respectfully submitted this the 31st day of January, 2024.

**OLES LAW GROUP**

/s/*David E. Oles*

David E. Oles, Esq.
Attorney for Plaintiff Ricardo Davis
GA Bar No. 551544
5755 North Point Pkwy, Ste. 25
Alpharetta, GA 30022
(770) 753-9995
firm@deoleslaw.com

## **CERTIFICATION**

Pursuant to Local Rule 5.1, the foregoing document has been prepared with Times New Roman 14 point font.  I have served a copy of the document on all counsel of record on the date listed below via CM/ECF system, which provides a service copy to all attorneys of record.

This 31st day of January, 2024.

                                      **OLES LAW GROUP**

                                      */s/ David E. Oles*
                                      David E. Oles
                                      GA Bar No. 551544