# Curling v. Raffensperger

## Plaintiffs' Closing Argument

# The Right to Vote Is Fundamental and Sacred

"Voting is the beating heart of democracy. It is a fundamental political right, because it is preservative of all rights."

*Democratic Exec. Comm. of Fla. v. Lee,* 915 F.3d 1312, 1318 (11th Cir. 2019)

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."

*Purcell v. Gonazlez,* 549 U.S. 1, 4 (2006)

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."

*Reynolds v. Sims,* 377 U.S. 533, 555 (1964)

# Federal Courts Must Protect the Right to Vote

"There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted."

*Reynolds v. Sims,* 377 U.S. 533, 562 (1964)

"Since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."

*Reynolds v. Sims,* 377 U.S. 533, 562 (1964)

"State and local laws that unconstitutionally burden [the right to vote] are impermissible"

*Curling v. Raffensperger,* 397 F. Supp.3d 1334, 1402 (N.D. Ga. 2019)
(citing *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 451 (2008))

# Defendants Would Render the Right to Vote Meaningless

*There is no legally protected interest in "verifying" one's vote or in voting on a "reasonably secure" system.*

Dkt. 1649, State Defendants' Reply Brief at 6.

# This Court Has Already Recognized the Unconstitutional Burden on Plaintiffs

"The Plaintiffs' voting claims go to the heart of a functioning democracy. As the Court commented in its Order last year, '[a] wound or reasonably threatened wound to the integrity of a state's election system carries grave consequences beyond the results in any specific election, as it pierces citizens' confidence in the electoral system and the value of voting.' ==The reality and public significance of the wounds here should be evident – and were last year as well.=="

*Curling v. Raffensperger,* 397 F. Supp. 3d 1334,1411 (N.D. Ga. 2019)
(quoting *Curling v. Raffensperger,* 334 F. Supp. 3d 1303, 1328 (N.D. Ga. 2018))



# Three Burdens

**1**

Burden of voting with a BMD

**2**

Burden of duplicate review

**3**

Burden of voting with this particular ballot format

# Three Burdens



Burden of voting with a BMD

## Constitutional Amendment #1

Authorizes dedication of fees and taxes to their intended purposes by general state law. House Resolution 164. Act No. 597

"Shall the Constitution of Georgia be amended so as to authorize the General Assembly to dedicate revenues derived from fees or taxes to the public purpose for which such fees or taxes were intended?"  (Yes / No)

YES

NO

# Three Burdens



# Three Burdens

**3**

Burden of voting with this particular ballot format



**FAYETTE COUNTY**
**OFFICIAL BALLOT**
**GENERAL AND SPECIAL ELECTION**
**OF THE STATE OF GEORGIA**
**NOVEMBER 3, 2020**

*"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]*

376-Shakerag East

## For Sheriff  (Vote for One) (NP)
## Vote for Chris Pigors (Dem)

For President of the United States  (Vote for One) (NP)
   Vote for Donald J. Trump (I) (Rep)

For United States Senate (Perdue)  (Vote for One) (NP)
   Vote for David A. Perdue (I) (Rep)

For United States Senate (Loeffler) - Special  (Vote for One) (NP)
   Vote for Kelly Loeffler (I) (Rep)

For Public Service Commissioner  (Vote for One) (NP)
   Vote for Jason Shaw (I) (Rep)

For Public Service Commissioner  (Vote for One) (NP)
   Vote for Nathan Wilson (Lib)

For U.S. Representative in 117th Congress From the 3rd Congressional District of Georgia  (Vote for One) (NP)
   Vote for Drew Ferguson (I) (Rep)

For State Senator From 16th District  (Vote for One) (NP)
   Vote for Marty Harbin (I) (Rep)

For State Representative In the General Assembly From 72nd District  (Vote for One) (NP)
   Vote for Josh Bonner (I) (Rep)

For Judge of the Probate Court  (Vote for One) (NP)
   Vote for Ann S. Jackson (I) (Rep)

For Clerk of Superior Court,  (Vote for One) (NP)
   Vote for Sheila Studdard (I) (Rep)

For Sheriff  (Vote for One) (NP)
   Vote for Kristie King (I) (Rep)

For Tax Commissioner  (Vote for One) (NP)
   Vote for W. Bea Huddleston (I) (Rep)

For Coroner  (Vote for One) (NP)
   Vote for James K. Inagawa (I) (Rep)

For County Commissioner District 1  (Vote for One) (NP)
   Vote for Eric K. Maxwell (I) (Rep)

For County Commissioner District 5  (Vote for One) (NP)
   Vote for Charles W. Oddo (I) (Rep)

For County Board of Education District 1  (Vote for One) (NP)
   Vote for Randy Hough (Rep)

For County Board of Education District 5  (Vote for One) (NP)
   Vote for Brian Anderson (I) (Rep)

Constitutional Amendment #1 (NP)
   Vote for YES

Constitutional Amendment #2 (NP)
   Vote for NO

Statewide Referendum A (NP)
   Vote for NO

Fayette Co School District Homestead Exemption - Special  (Vote for One) (NP)
   Vote for NO

1/1

## Constitutional Amendment #1 (NP)
## Vote for YES



## FULTON COUNTY
813-01A

### OFFICIAL ABSENTEE/PROVISIONAL/EMERGENCY BALLOT

**OFFICIAL GENERAL AND SPECIAL ELECTION BALLOT
OF THE STATE OF GEORGIA
NOVEMBER 3, 2020**

**WARNING**
Do NOT use red ink or felt tip pen to mark ballot
Do NOT circle, underline or mark through choices
Do NOT use check mark or X to mark ballot
Do NOT mark more choices per race than allowed
Do NOT sign, sort, tear or damage the ballot

| For President of the United States (Vote for One) | SPECIAL ELECTION | For Public Service Commissioner (To Succeed Jason Shaw) (Vote for One) |
|---|---|---|
| ○ Donald J. Trump - President<br>Michael R. Pence - Vice-President<br>(Incumbent) Republican | **For United States Senate**<br>(To Fill the Unexpired Term of Johnny Isakson, Resigned)<br>(Vote for One) | ○ Jason Shaw<br>(Incumbent) Republican |
| | | ○ Robert G. Bryant<br>Democrat |
| ○ Joseph R. Biden - President<br>Kamala D. Harris - Vice-President<br>Democrat | ○ Al Bartell<br>Independent | ○ Elizabeth Melton<br>Libertarian |
| ○ Jo Jorgensen - President<br>Jeremy "Spike" Cohen - Vice-President | ○ Allen Buckley<br>Independent | Write-in |
| | ○ Doug Collins | |

---

## FAYETTE COUNTY

### OFFICIAL BALLOT

**GENERAL AND SPECIAL ELECTION
OF THE STATE OF GEORGIA
NOVEMBER 3, 2020**

*"I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law." [O.C.G.A. 21-2-284(e), 21-2-285(h) and 21-2-383(a)]*

376-Shakerag East



**For President of the United States** (Vote for One) (NP)
  Vote for Donald J. Trump (I) (Rep)

**For United States Senate (Perdue)** (Vote for One) (NP)
  Vote for David A. Perdue (I) (Rep)

**For United States Senate (Loeffler) - Special** (Vote for One) (NP)
  Vote for Kelly Loeffler (I) (Rep)

**For Public Service Commissioner** (Vote for One) (NP)
  Vote for Jason Shaw (I) (Rep)

**For Public Service Commissioner** (Vote for One) (NP)
  Vote for Nathan Wilson (Lib)

**For U.S. Representative in 117th Congress From the 3rd Congressional District of Georgia** (Vote for One) (NP)
  Vote for Drew Ferguson (I) (Rep)

**For State Senator From 16th District** (Vote for One) (NP)
  Vote for Marty Harbin (I) (Rep)

**For State Representative in the General Assembly From 72nd District** (Vote for One) (NP)
  Vote for Josh Bonner (I) (Rep)

**For Judge of the Probate Court** (Vote for One) (NP)
  Vote for Ann S. Jackson (I) (Rep)

**For Clerk of Superior Court** (Vote for One) (NP)
  Vote for Sheila Studdard (I) (Rep)

**For Sheriff** (Vote for One) (NP)
  Vote for Chris Pigors (Dem)

**For Tax Commissioner** (Vote for One) (NP)
  Vote for Kristie King (I) (Rep)

**For Coroner** (Vote for One) (NP)
  Vote for W. Bee Huddleston (I) (Rep)

**For Solicitor-General** (Vote for One) (NP)
  Vote for James K. Inagawa (I) (Rep)

**For County Commissioner District 1** (Vote for One) (NP)
  Vote for Eric K. Maxwell (I) (Rep)

**For County Commissioner District 5** (Vote for One) (NP)
  Vote for Charles W. Oddo (I) (Rep)

**For County Board of Education District 1** (Vote for One) (NP)
  Vote for Randy Hough (Rep)

**For County Board of Education District 5** (Vote for One) (NP)
  Vote for Brian Anderson (I) (Rep)

**Constitutional Amendment #1** (NP)
  Vote for YES

**Constitutional Amendment #2** (NP)
  Vote for NO

**Statewide Referendum A** (NP)
  Vote for NO

**Fayette Co School District Homestead Exemption - Special** (Vote for One) (NP)
  Vote for NO

1/1





# The State Has Moved to Cellular-Based Poll Pads



**Gabriel Sterling**

COO

"[W]e've gone to our cellular-based Poll Pads that can guarantee that each voter is getting the correct ballot style."

Trial Tr. Vol. 16B at 8:8-13

# The Court Used Its Equitable Powers to Enjoin DREs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

　　Plaintiffs,

v.                                                   CIVIL ACTION NO.
                                                     1:17-CV-2989-AT
BRAD RAFFENSPERGER, *et al.*,

　　Defendants.

**ORDER**

I.   Introduction ............................................................. 3

II.  Joinder of Municipalities Conducting November 2019 Elections............ 12

III. Continuing Vulnerability and Unreliability of Georgia's GEMS/DRE
     System and Voter Registration System and Database......................... 21

     A.  Georgia's DREs operate on outdated and vulnerable software...... 21

     B.  The DREs work in tandem with the Global Election
         Management System ("GEMS") interface, which poses
         additional problems for election integrity and security ............... 25

     C.  The DRE/GEMS system is particularly susceptible to
         manipulation and malfunction............................................. 33

     D.  The State's expert Dr. Shamos essentially agrees that Georgia's
         DRE/GEMS system is not reliably secure.............................. 42

     E.  "What's Past is Prologue." .............................................. 62

     F.  The experience of voters in the 2018 election demonstrates
         serious problems and failures in the State's DRE/GEMS and
         ExpressPoll systems....................................................... 90

[T]he State Defendants are **DIRECTED:**

(1) To refrain from the use of the GEMS/DRE system in conducting elections after 2019.

Dkt. 579 at 147-148

14

# The Burden on the Right to Vote Has Only Become More Severe

"No voters could verify whether their intended votes for particular candidates were actually cast."



Failure to implement critical software patches to address cybersecurity vulnerabilities



**Dr. J. Alex Halderman**

Slow and ineffective response to KSU data breach



**Gabriel Sterling**
**"It didn't happen."**

Insufficient remedial action



Dkt. 579 at 92; 22, 25; 65-69; 70-82

# Roadmap

| Standing | Merits |
|---|---|
| • Injury in fact<br>  - Cognizable<br>  - Particularized<br>  - Non-speculative<br><br>• Traceable<br><br>• Redressable | • Causation<br><br>• *Anderson-Burdick*<br>  - Character and magnitude of burden<br>  - Justifying State interests<br><br>• Irreparable Harm<br><br>• Balance of the burdens |

# Legal Standard: Traceability

"[A] plaintiff need only demonstrate, as a matter of fact, a fairly traceable connection between the plaintiff's injury and the complained of conduct of the defendant."

*Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1116 (11th Cir. 2022) (citation omitted)

# The State Controls the Manner of Voting

[A]ll federal, state, and county general primaries and general elections as well as special primaries and special elections in the State of Georgia shall be conducted with the use of scanning ballots marked by ==electronic ballot markers==....

O.C.G.A. § 21-2-300(a)(2)

# The State Controls the Manner of Voting



Georgia

**MASTER SOLUTION PURCHASE AND SERVICES AGREEMENT**

**BY AND BETWEEN**

**DOMINION VOTING SYSTEMS, INC.**
as Contractor,

and

**SECRETARY OF STATE OF THE STATE OF GEORGIA**
as State

Dated as of July 29, 2019

Contract No. [●]

Curling Pl. Ex. 47

# The State Controls the Manner of Voting



**Gabriel Sterling**

COO

Q. How did that decision [to choose the Dominion BMD voting system] get made?

A. …**Ryan Germany and I went to negotiate with the teams from both Dominion and ES&S….And at the end…Dominion was declared the winner of the bid…**

Trial Tr. Vol. 5A at 233:23, 235:5-235:19

# The State Dictates When Equipment Can Be Changed

**From:** Evans, Blake <bevans@sos.ga.gov>
**Sent:** Wednesday, August 18, 2021 9:08 AM
**To:** Kimberly Slaughter <Kslaughter@spaldingcounty.com>
**Cc:** Germany, Ryan <rgermany@sos.ga.gov>; Beck, Sarah <sbeck@sos.ga.gov>; Barnes, Michael <mbarnes@sos.ga.gov>; Thomas, Breanna <bthomas@sos.ga.gov>
**Subject:** RE: Spalding County Equipment

Kimberly,

I want to follow up on our phone conversation with additional details.

First, I am attaching to this email State Election Board Rule 183-1-12-.05, which states that election equipment cannot be modified, changed, or upgraded without authorization from the Secretary of State.

Second, please [...]
you have stored [...]
equipment to d [...]
explanation to [...]
that point, Mic [...]
determine next [...]
able to certify t [...]
elections. The d [...]

Again, please send your concerns to Michael and me. Once we receive your concerns, we will take the necessary steps on our end to address them.

Blake Evans
*Elections Director*
Georgia Secretary of State
**Direct: 470-312-2777**
**Cell: 470-701-6901**
<image003.jpg>

Curling Pl. Ex. 194

# The State Decides When Counties May Switch to HMPBs



## Office of the Secretary of State

**Brian P. Kemp**
SECRETARY OF STATE



**Chris Harvey**
DIRECTOR OF ELECTIONS

August 1, 2018

Dear County Commissioners and Officials,

I am writing to you as the State of Georgia's Elections Director, a position I have held since July 2015. From August 2007 until July 2015, I was the Chief Investigator and Deputy Inspector General for the Secretary of State's office, investigating, among other items, potential violations of state election law. For over a decade, it has been my job to be intimately familiar with both Georgia election law, systems, processes, and procedures.

There is a provision of Georgia law that allows the state to move to paper ballots in the event that the machines are "inoperable or unsafe." If we ever reach a point where our office feels that these machines cannot be trusted to accurately deliver election results, we will invoke this statutory provision. To this day, there is no credible evidence that our election process is anything except secure and accurate.

Curling Pl. Ex. 406

22

# The State Dictates How Counties Run Elections



Def. Ex. 1242

# The State Dictates How Counties Run Elections



## 104 Pages

Def. Ex. 1242

# The State Dictates How Counties Run Elections



**Blake Evans**

Director of Elections

Q. And we have walked through the poll worker manual that we'll come back to. One of the things this does is explain the steps that the counties are supposed to take to set up an election using the BMDs; right?

**A. Correct. It has suggested layouts and that kind of thing.**

Trial Tr. Vol. 11 at 186:15-20

# The State Controls the Manner of Voting

| Message | |
|---|---|
| **From:** | Evans, Blake [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A09E743410F9426790AE196AA7F44DB8-EVANS, BLAK] |
| **Sent:** | 3/24/2021 2:22:16 PM |
| **To:** | Harvey, Chris [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=3f1f603ca29f4e62874ad7949bcd384b-Harvey, Chr]; Thomas, Breanna [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8e47f66259114436abb067250d58d949-Thomas, Bre] |
| **Subject:** | Notes for Review |
| **Attachments:** | Challenges to Not Having a Uniformed Voting System.docx |

## Challenges to Not Having a Uniformed Voting System

1. The SOS could not have as much control over the process of counties unless the SOS Elections Division was expanded dramatically.
   a. Different systems each require their own unique skillsets and knowledge bases for people to use them. The SOS staff is currently equipped to assist counties with conducting elections using the Dominion system. If the state was using multiple vendors, then the SOS would need to drastically expand its staff to continue providing the same services to counties. Allowing counties to have different systems requires that counties have more autonomy, which makes it more difficult for the SOS to step in if a county is underperforming.

Curling Pl. Ex. 607

26

# Counties Follow the State's Instructions



**Gabriel Sterling**

COO

"And, generally speaking, [if] the Secretary of State's Office says to do something, [the counties] **generally do it** because they don't want to go before the State Election Board for **having done something wrong**."

# The State Controls the Election System

| Topic | Supporting Evidence |
| --- | --- |
| State owns and certifies voting equipment | Sterling 10/12/22 Dep. Tr. at 199:9-18 |
| State instructs counties on operation of voting equipment | Michael Barnes<br>• Trial Tr. Vol. 12 at 38:15-39:5<br>Coalition Pl. Ex. 55 |
| State provides seals for BMDs | James Barnes 7/20/22 Dep. Tr. at 73:2-75:9 |
| State penalized Athens-Clarke County for switching to HMPBs | Matthew Mashburn<br>• Trial Tr. Vol. 6A at 63:7-63:16, 65:16-66:5 |
| Counties rely on State for cybersecurity of equipment | James Barnes 7/20/22 Dep. Tr. at 69:11-18 |
| Counties rely on State to investigate election security issues | James Barnes 7/20/22 Dep. Tr. at 121:15-122:2<br>Wendell Stone 9/1/22 Dep. Tr. at 133:21-134:2<br>Blake Evans<br>• Trial Tr. Vol. 11 at 257:9-25<br>Curling Pl. Ex. 194 |

# Multiple Actors Do Not Defeat Traceability

"The presence of multiple actors in a chain of events that lead to the plaintiff's injury does not mean that traceability is lacking with respect to the conduct of a particular defendant. If the facts alleged are taken as true, and if the validity of Dr. Garcia-Bengochea's claim is assumed, the claimed trafficking injury is fairly traceable to Carnival and Royal Caribbean, even if they had some help from the Cuban government along the way."

*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023)

# Roadmap

| Standing | Merits |
|---|---|
| • Injury in fact<br>  - Cognizable<br>  - Particularized<br>  - Non-speculative<br><br>• Traceable<br><br>• Redressable | • Causation<br><br>• *Anderson-Burdick*<br>  - Character and magnitude of burden<br>  - Justifying State interests<br><br>• Irreparable Harm<br><br>• Balance of the burdens |

# Legal Standard: *Anderson-Burdick* test

"When deciding whether a state election law violates the due process rights guaranteed by the Fourteenth Amendment, the Court must weigh the <mark>character and magnitude of the burden</mark> the States rule imposes on those rights against the interests the State contends justify that burden."

*Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1272 (N.D. Ga. 2020)

"A law that severely burdens the right to vote must be narrowly drawn to serve a compelling state interest.... 'And even when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden'"

*Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1273 (N.D. Ga. 2020)
(quoting *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019))

# Georgia's BMDs Burden Plaintiffs' Right to Vote

There is no "litmus test" for measuring the severity of the burden.

"[B]urdens 'are severe if they go beyond the merely inconvenient'"

*Fair Fight Action, Inc. v. Raffensperger*, 634 F.Supp.3d 1128, 1209 (N.D. Ga. 2022)
(quoting *Crawford v. Marion Cnty. Election Bd.,* 553 U.S. 181, 205 (2008) (Scalia, J., concurring)

Plaintiffs do "not have to await the consummation of the threatened injury to obtain preventative relief"

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (citation omitted)

Plaintiffs have standing upon a finding that there is a "substantial risk" that the harm will occur.

*See Clapper v. Amnesty Int'l USA*, 568 US 398, 414 (2013)

# SOS Falls Far Short of Its Own "Election Security" Standard



**Gabriel Sterling**

COO

Q. Mr. Sterling, what are some of the factors or aspects that go into what you consider to be election security?

A. **Physical security**. **Chain of custody** of the equipment and ballots and ballot paper. The transport of paper from the manufacturer to the counties. Inspections of facilities that hold them. **Cybersecurity. Training around cybersecurity**. **Cyber hygiene**…

Trial Tr. Vol 15 at 228:2-228:8

33

# Georgia's ICX Can Be Hacked With a Pen




# Georgia's ICX Can Be Hacked Via Unsecured Printer Cable



# Georgia's ICX Access Cards Can Be Easily Counterfeited



# Voter or "Insider" With No Computer Science Background Can Hack Georgia's ICX in Mere Minutes: *Super User Access*

Case 1:17-cv-02989-AT Document 1844 Filed 02/02/24 Page 37 of 161



**Dr. J. Alex Halderman**

**Jeff Schoenberg**

Q. How long did it take you to teach him?

A. **Just a very – handful of tries at most, and he had completely mastered it.**

Q. How does the time it took him to implement your hack compare to the time it took him to vote an ordinary ballot?

A. **He is faster at hacking than voting the ballot, normally.**

# CISA and Dr. Gilbert Confirmed Dr. Halderman's Findings



**Dr. J. Alex Halderman**

### Security Analysis of Georgia's ImageCast X Ballot Marking Devices

Expert Report Submitted on Behalf of Plaintiffs Donna Curling, et al.
*Curling v. Raffensperger*, Civil Action No. 1:17-CV-2989-AT
U.S. District Court for the Northern District of Georgia, Atlanta Division

Prof. J. Alex Halderman, Ph.D.

With the assistance of Prof. Drew Springall, Ph.D.

July 1, 2021



**Juan Gilbert**



Curling Pl. Ex. 425; Curling Pl. Ex. 89; Juan Gilbert 10/29/21 Dep. Tr. at 218:16-245:22

# CISA Confirmed Malware Can Spread via EMS and Media



## ICS Advisory (ICSA-22-154-01)

More ICS-CERT Advisories

### Vulnerabilities Affecting Dominion Voting Systems ImageCast X

Original release date: June 03, 2022

---

2.2.1   IMPROPER VERIFICATION OF CRYPTOGRAPHIC SIGNATURE CWE-347

The tested version of ImageCast X does not validate application signatures to a trusted root certificate. Use of a trusted root certificate ensures software installed on a device is traceable to, or verifiable against, a cryptographic key provided by the manufacturer to detect tampering. An attacker could leverage this vulnerability to install malicious code, which could also be spread to other vulnerable ImageCast X devices via removable media.

---

2.2.5   PATH TRAVERSAL: '../FILEDIR' CWE-24

The tested version of ImageCast X can be manipulated to cause arbitrary code execution by specially crafted election definition files. An attacker could leverage this vulnerability to spread malicious code to ImageCast X devices from the EMS.

Curling Pl. Ex. 89

# Georgia's ICX Fails Any Meaningful Security Standard



**Dr. J. Alex Halderman**

Q. And you didn't quantify what sufficient security is in your report; right?

A. I don't quantify it. But again, Mr. Tyson, I basically hacked into it with a pen yesterday in front of you. I mean, we could talk about – we can talk about sufficient. But I think wherever you are going to reasonably draw the line, this is not on the sufficient side of it.

Trial Tr. Vol. 8A at 41:1-7

# Dr. Wenke Lee – SAFE Commission Cybersecurity Expert—Advised State the System Must Be *Software Independent*



**Wenke Lee**

SAFE Commission
Cybersecurity Expert

## Basic Security Requirements for Voting Systems

*Wenke Lee, Ph.D.*
*Secure, Accessible & Fair Elections Commission*

*October 8, 2018*

The most critical cybersecurity risk in a voting system is that votes are not counted accurately as a result of cyberattacks. Therefore, a voting system must be "strong software independent," that is:

- an undetected change or error (including cyberattack) in software cannot cause an **undetectable** change or error in an election outcome; and
- a detected change or error (due to poor software performance or cyberattack) can be corrected without re-running the election.

Defs. Ex. 1224

41

# State's Expert, Dr. Gilbert, Agrees Software Independence Is Needed for Georgia's Voting System



**Juan Gilbert**

State's Expert

Q. Can you describe to the Court the meaning of the term software independence as it relates to voting systems?

A. **Essentially what it says in laymen's terms is an ==undetectable change in the software==, whether it is intentional or error or accidental, ==cannot cause an undetectable change in the outcome== of the election.  If that is the case, you are software independent.**

# Software Independence *Requires* Voter Verification



**Juan Gilbert**

State's Expert

Q. And why does voter verification matter?

A. **It matters, because without voter verification, we essentially are in a world where ballots could be manipulated and you lose software independence, essentially.**

# RLAs Do Not Protect the Individual Right to Vote



**Ben Adida**

State Contractor

Q. If you come to the last paragraph, do you see that you explain the role of the RLA is to ensure that ==paper ballots that have been verified by the voter are properly counted as the voter saw them==?

A. They are.

Trial Tr. Vol. 12 at 245:9-13

# Voters Cannot Verify Georgia's ICX Ballots: QR Codes and Inscrutable "Human-Readable" Text



**Aileen Nakamura**

"So after you finish checking your ballot on the BMD and you have done the, you know, going back and forth and making sure that all the buttons were correct … when you push print, ==the BMD goes blank== … So when the printout comes out … you have nothing to compare it against. And ==you have to have memorized the entire content== and remember how many races there were, see if there is any races missing. I know that ==I could never catch that==."

Trial Tr. Vol. 2 at 56:8-17

# Voters Cannot Verify the "Human-Readable" Text



**Dr. Philip Stark**

Q. Does the scholarship say anything about how much of a burden … it is on voters to have to check BMD-printed ballots for accuracy?

A. **The scholarship suggests that is a cognitively non-trivial task that relatively few voters would be able to recall all of their selections or even the name of every contest that they voted in without some kind of written prompt.**

# Voters Cannot Verify the "Human-Readable" Text



**Political Science**
*School of Public & International Affairs*
**UNIVERSITY OF GEORGIA**

► **More than 50%** of voters undertook an "**insufficient check**" of their ballots

► **More than 80%** check their ballots for **less than 5 seconds**

Table 1. Voter Behavior Observed at the Voting Booth

| Category | Percentage |
| --- | --- |
| Did not check | 20.0% |
| Brief glance | 31.3% |
| Short time | 29.9% |
| Long time | 18.8% |

# Voters Cannot Verify the "Human-Readable" Text



02:41:20 PM - October 29, 2021

**Dr. Juan Gilbert**

University of Florida

State's Retained Expert

## **18 seconds** to verify part of a ballot

For President of the United States (Vote for One) (NP)
 Vote for Donald J. Trump (I) (Rep)

For United States Senate (Perdue) (Vote for One) (NP)
 Vote for David A. Perdue (I) (Rep)

For United States Senate (Loeffler) - Special (Vote for One) (NP)
 Vote for Kelly Loeffler (I) (Rep)

For Public Service Commissioner (Vote for One) (NP)
 Vote for Jason Shaw (I) (Rep)

**For Public Service Commissioner (Vote for One) (NP)**
 **Vote for Nathan Wilson (Lib)**

For U.S. Representative in 117th Congress From the 3rd Congressional District of Georgia (Vote for One) (NP)
 Vote for Drew Ferguson (I) (Rep)

For State Senator From 16th District (Vote for One) (NP)
 Vote for Marty Harbin (I) (Rep)

For State Representative In the General Assembly From 72nd District (Vote for One) (NP)
 Vote for Josh Bonner (I) (Rep)

For Judge of the Probate Court (Vote for One) (NP)
 Vote for Ann S. Jackson (I) (Rep)

For Clerk of Superior Court (Vote for One) (NP)
 Vote for Sheila Studdard (I) (Rep)

**For Sheriff (Vote for One) (NP)**
 **Vote for Chris Pigors (Dem)**

For Tax Commissioner (Vote for One) (NP)
 Vote for Kristie King (I) (Rep)

For Coroner (Vote for One) (NP)
 Vote for W. Bee Huddleston (I) (Rep)

For Solicitor-General (Vote for One) (NP)
 Vote for James K. Inagawa (I) (Rep)

For County Commissioner District 1 (Vote for One) (NP)
 Vote for Eric K. Maxwell (I) (Rep)

For County Commissioner District 5 (Vote for One) (NP)
 Vote for Charles W. Oddo (I) (Rep)

For County Board of Education District 1 (Vote for One) (NP)
 Vote for Randy Hough (Rep)

For County Board of Education District 5 (Vote for One) (NP)
 Vote for Brian Anderson (I) (Rep)

**Constitutional Amendment #1 (NP)**
 **Vote for YES**

**Constitutional Amendment #2 (NP)**
 **Vote for NO**

**Statewide Referendum A (NP)**
 **Vote for NO**

**Fayette Co School District Homestead Exemption - Special (Vote for One) (NP)**
 **Vote for NO**

Trial Tr. Vol. 14A at 99:10-23; Curling Pl. Ex. 425 at 15 (July 1, 2021 Halderman Report)

48

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Gabriel Sterling**

COO

Q. [I]f you have a bad human being who makes decisions that are obviously against the law, that is the same for every system. That threat remains the same regardless.

A. **Which is why it is so critically important to have ballots that are ==verified by the voter==; right, sir?**

Q. That is one of the reasons, yes.

Trial Tr. Vol. 65:20-66:7

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Michael Barnes**

Director of CES
Deputy Director of Elections

Q. As director of CES, you have no responsibility for cybersecurity; right?

**A. That is correct.**

Trial Tr. Vol. 12 at 76:23-25

50

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Michael Barnes**

Director of CES
Deputy Director of Elections

Q. Well, are you, in fact, the person <mark>who is responsible for determining what security measures need to be taken to protect the election system</mark>, or is that somebody else?

A. **That is <mark>somebody else.</mark>**

Q. And, in fact, you're not involved in it at all, you're sort of kept out of it; is that right?

A. **Yes, ma'am.**

Trial Tr. Vol. 3 at 159:16-22

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Michael Barnes**

Director of CES
Deputy Director of Elections

Q. And so <mark>who are the folks who make those decisions</mark>?

A. **The people that maintain for the Secretary of State's office their infrastructure security measures are the <mark>Secretary of State's IT division</mark>.**

Q. And who there, historically, in the last ten years has been responsible for that?

A. **<mark>Merritt Beaver</mark> has been our CIO.  He just recently retired.**

Trial Tr. Vol. 3 at 159:23-160:5

52

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Merritt Beaver**

Former CIO

Q. Are you saying that you had no responsibility for the cybersecurity for the Dominion voting system?

A. <mark>We have outsourced that to them</mark>.  I do not have responsibility for county equipment.  Dominion is county equipment.

Q. And who have you outsourced that to?

A. <mark>Dominion</mark>.

Trial Tr. Vol. 5A at 109:13-19

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Merritt Beaver**

Former CIO

Q. And would it be your practice then that anything that Dominion handled as to security, <mark>you would not have been involved in</mark>?

A  Correct.

Trial Tr. Vol. 5A at 128:9-12

# Who Is Responsible For Cybersecurity of Georgia Elections?



**David Hamilton**

Former CISO

Q. The security of Georgia's voting equipment fell outside the scope of your work?

**A. Correct.**

\* \* \*

Q. All of that was handled by the vendor Dominion; is that right?

**A. Correct.**

Trial Tr. Vol. 11 at 125:2-13

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Gabriel Sterling**

COO

Q. …[I]s there somebody – who is that somebody in the State who – in your office or in some other one that is responsible for oversight of security in the election system to the extent that it is the State's responsibility?

A. Again, from my point of view, ==most of this lies in the county level==. For the system itself, we have a contract with ==Dominion==….

Trial Tr. Vol. 5A at 217:25-218:7

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Blake Evans**

Director of Elections

Q. But the manual that was provided to Georgia with the machines by <mark>Dominion recommends not to do it the way you're doing</mark>; right?

A. **Correct.**

Q. So <mark>you disagree with Dominion</mark> on how this – at least this security measure should be handled; right?

A. <mark>**For our state**</mark>, yes.

Trial Tr. Vol. 13 at 99:7-23

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Blake Evans**

Director of Elections

Q. And you don't – who made that decision?

A. **I know that we have discussed it internally, and so, collectively, that is the decision that has – that we have come to.**

Q. And you have not identified anyone with cybersecurity training as having been involved in that decision, have you, sir?

A. **I do not remember the – anybody with that specific training being involved.**

Trial Tr. Vol. 13 at 99:24-100:7

58

# Who Is Responsible For Cybersecurity of Georgia Elections?



**James Barnes**

Former Coffee County
Election Supervisor

Q. Did you ever have any communications with any Dominion techs, folks who come out and help with the equipment and machines?

A. No, we didn't have a Dominion tech assigned to us.

Q. So any time you have an issue, performance and operation issue with any of the election equipment, you go to CES for that?

A. Yes, that's correct.

James Barnes 7/20/22 Dep. Tr. at 78:7-15

# Who Is Responsible For Cybersecurity of Georgia Elections?



**Michael Barnes**

Director of CES
Deputy Director of Elections

Q. As director of CES, you have no responsibility for cybersecurity; right?

A. **That is correct.**

Trial Tr. Vol. 12 at 76:23-25

# Who Is Responsible For Cybersecurity of Georgia Elections?



# SOS Is Indifferent and Reckless Toward Election Security



 **Mark Niesse**
@markniesse

**Follow** 

Gov. Brian Kemp weighs in:
SoS Raffensperger "should immediately gather all relevant information regarding this report, thoroughly vet its findings, and assure Georgians he is doing everything possible to ensure the system, procedures and equipment are completely secure." #gapol

 **Mark Niesse** @markniesse · Jan 26, 2022
A confidential report alleges that hackers could flip votes if they gained access to Georgia's touchscreens, but there's no sign that state election officials have done anything about the vulnerability. bityl.co/Af81 #gapol

12:40 PM · Jan 26, 2022

January 27th, 2022

(Atlanta) – Today, Georgia Secretary of State Brad Raffensperger calls on J. Alex Halderman to ask the judge to publicly release his "secret report" and pre-election testimony that is generating misleading media articles about the Dominion voting equipment used in Georgia.

Curling Pl. Ex. 85

# SOS Is Indifferent and Reckless Toward Election Security



**Ryan Germany**

Former General
Counsel

Q. [A]s of January '22 when this – when Secretary Raffensperger made the decision to call for the release of this report, the only person who in his office could have advised him having read it would be you without any computer science training; is that right?

\* \* \*

A. **I would have been the only person who read the complete report.  There are other people who, of course, had read media accounts of what was in the report.**

Trial Tr. Vol. 4 at 127:5-22

63

# SOS CIO Calls SOS Release of Halderman Report "Ignorant of Cybersecurity"



**Merritt Beaver**

Former CIO

Q. Do you have a view from a <mark>cybersecurity perspective</mark> on whether this [Halderman] report, which purports to identify numerous vulnerabilities with the voting system, whether it should be <mark>released publicly</mark>?

A. **Anything that can adversely [a]ffect security, in my opinion, shouldn't be released. You are only reducing Georgia's ability to secure their equipment and systems whenever security information about an existing system is released. In my mind, it's <mark>bad practice</mark> and just, you know, being <mark>ignorant of cybersecurity</mark>.**

Merritt Beaver 3/10/22 Dep. Tr. at 379:4-15

64

# State Experts Keep Disappearing....



Dr. Wenke Lee



Dr. Michael Shamos



Teresa Payton



Jack Cobb

# SOS Disregarded Advice of Computer Science Professionals


Dr. J. Alex Halderman


Kevin Skoglund


Dr. Phillip Stark


Dr. Andrew Appel


Dr. Richard DeMillo


Dr. Wenke Lee


Teresa Payton


Dr. Michael Shamos


Dr. Ben Adida


Dr. Juan Gilbert


David Hamilton


Merritt Beaver




## So, Who's Making the Decisions?


Brad Raffensperger


Gabriel Sterling


Ryan Germany


Blake Evans


Chris Harvey


Michael Barnes

66

# State Has Not Maintained Chain of Custody



**Michael Barnes**

Director of CES
Deputy Director

Q. [Y]ou did not have any chain of custody paperwork for the removal of the EMS and the ICC from Coffee County in 2021; correct?

**A. At that time, we did not….**

Trial Tr. Vol. 3 at 144:10-13

# State Has Not Maintained Chain of Custody



**James Barnes**

Q. The County wouldn't keep a copy of their own chain of custody documents so that there's a record of replacing the ICC and the EMS?

A. **I'm not aware of any documentation about it being taken, but then again, it was the state employees coming to get it, so...**

Q. And you don't recall them handing you paperwork to sign?

A. **I don't recall, no.**

James Barnes 7/20/22 Dep. Tr. at 132:8-16

# State Has Not Maintained Chain of Custody



**Ryan Germany**

Former General
Counsel

Q. You testified that Chris Bellew going down to potentially replace the EMS server was something that CES responds to regularly; right?

\* \* \*

A. …[F]rom what I have learned from Michael [Barnes], they do, as a matter of course, bring a spare server with them on these types of calls just so they can make sure they leave the county with a working server.

Trial Tr. Vol. 4 at 28:8-29:2

# State Training Is Grossly Inadequate For Election Security



# State Training Is Grossly Inadequate For Election Security

From: Watson, Frances <fw...
Sent: Thursday, November ...
To: Germany, Ryan <rgerm...
Subject:

Name: Laura Jones
Phone:
Address:
City: Atlanta
State: GA
Zip Code:
County: Fulton
E-mail:

Location of Violation: Temp...

Description of Violation: Wh...
of the voting machines "elec...
number. Seals were already...
bullots on the printer. We d...
know where those ended u...
machines did show 1 ballot...
had the "elections database...
cabinets and starting up the...
be compared with the serial...
seen them not match so we...
zip ties with serial numbers...

Confidential

**Description of Violation:** When we opened the large cabinets containing the voting machines, we discovered that most of the voting machines "election database" doors were wide open and not secured with a zip tie with serial number. Seals were already broken or a zip tie was put on but was not put through the door. Also, we found two paper ballots on the printer. We did not scan these ballots. Our Poll Manager, Kaira Bell, put these on her clipboard. I don't know where those ended up. Also, all of the machines are supposed to show "0" ballots cast upon opening. One of our machines did show 1 ballot had been cast on it. We did not use this machine, but we did use all the other machines that had the "elections database" door open. Last but not least, we did not follow the protocol for opening the large cabinets and starting up the machines. In training, I was instructed that all serial numbers on zip ties on doors were to be compared with the serial numbers written down on a form. We did not do this. My Poll Manager said, "I've never seen them not match so we don't need to do this. I can always check it at the end of the day." So, we clipped off all the zip ties with serial numbers without checking them for a match. I also know that the Poll Manager did not check them at the end of the day because I was given the job of putting zip ties on to close up the machines and the Manager was packing up equipment. It as disheartening not to see the security measures followed. Laura Jones

Curling Pl. Ex. 100

# State Training Is Grossly Inadequate For Election Security

On Jul 9, 2020, at 1:52 PM, "clinchelections@clinchcountyga.gov"
<clinchelections@clinchcountyga.gov> wrote:

**EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

<image001.gif>

*Michael,*

*My tech is doing L&A testing and discovered that 2 of our BMDs Election Data Seals were missing, (poll workers). Do we need to send these back to be resealed ? If so my regional tech has offered to take them back to Atlanta and drop them off on his way back home. Please let me know what we need to do.*

Laina Ballance
Clinch County Elections Supervisor
25 Court Sq. Suite A
Homerville Ga. 31634
912-487-3656 Office
912-487-5162 Fax
clinchelections@clinchcountyga.gov

# State Training Is Grossly Inadequate For Election Security



**Michael Barnes**

Message

| | |
|---|---|
| From: | Barnes, Michael [/O=SOS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D4F658ED134C4A6D91A27F28A0572934-BARNES, MICHAEL] |
| Sent: | 7/9/2020 5:54:46 PM |
| To: | clinchelections@clinchcountyga.gov |
| Subject: | Re: Data Seals |

==No, just please put your own seal on the equipment== and document the seal number attached.

Sent from my iPhone
Michael Barnes
470-316-2884

On Jul 9, 20
<clinchelect

EXTER
the cont

<image
*Michae
My tech

*were missing, (poll workers). Do we need to send these back to be resealed ? If so my regional tech has offered to take them back to Atlanta and drop them off on his way back home. Please let me know what we need to do.*

Laina Ballance
Clinch County Elections Supervisor
25 Court Sq. Suite A
Homerville Ga. 31634
912-487-3656 Office
912-487-5162 Fax
clinchelections@clinchcountyga.gov

Curling Pl. Ex. 104

73

# Cathy Latham Opened the Door to Georgia's Voting System



Curling Pl. Ex. 359

# Unauthorized Access Is a "Huge Security Breach"

**From:** Germany, Ryan <rgermany@sos.ga.gov>
**Sent:** Tuesday, December 22, 2020 2:59:04 PM
**To:** Barnes, Michael <mbarnes@sos.ga.gov>; Harvey, Chris <wharvey@sos.ga.gov>; Gabe_ Sterling <sterlinginnovative@gmail.com>; Evans, Blake <bevans@sos.ga.gov>; Fuchs, Jordan <jfuchs@sos.ga.gov>
**Subject:** RE: Butts County

This would be against the law. They are not allowed to give an unauthorized person access to their EMS server. That would be a huge security breach.

---

Butts County just called me.  Tina is saying that Senator Burt Jones has talked to her election board chairman and wants to bring a "forensic analyst" to inspect their election management computer.  I told Tina to immediately contact Chris to make him aware of this effort.

**Michael Barnes**
*Director – Center for Election Systems*

# Unauthorized Access Is a "Huge Security Breach"





Curling Pl. Exs. 37, 493

## Sullivan Strickler Forensic Hard Drive Contents

1.  **Coffee County EMS**

2.  **Coffee County ICC**

3.  **18 CompactFlash cards**

4.  **7 USB drives, including ICX install file**

5.  **Mobile Ballot Printing Laptop**

6.  **Partial data from 20 Poll Pads**

Curling Ex. 471 at 16-19









# Uncontrolled Distribution

**Kevin Skoglund**



# State Ignored—And Then Obscured—Coffee County Concerns

| Topic | Supporting Evidence |
|---|---|
| State is responsible for elections investigations | Curling Pl. Ex. 597<br>Frances Watson<br>• Trial Tr. Vol. 7B at 16:22-25 |
| State investigated suspected remote access of one Fulton County laptop | Curling Pl. Exs. 254, 294 |
| State investigated "I bet I can hack your electronic voting machines" email from "random guy" | Curling Pl. Ex. 587<br>Ryan Germany<br>• Trial Tr. Vol. 4 at 79:2-80:12 |
| State investigated Spalding County plan to hire SullivanStrickler to image equipment | Curling Pl. Ex. 194<br>Blake Evans<br>• Trial Tr. Vol. 11 at 257:9-25<br>Michael Barnes<br>• Trial Tr. Vol. 12 at 47:6-25 |
| State investigated and replaced Treutlen County EMS after Treutlen hired Misty Hampton | Michael Barnes<br>• Trial Tr. Vol. 12 at 134:3-7 |



**November 2020:**
Misty Hampton YouTube Video.
PX495

**December 2020:** Open Coffee County investigation re certification and YouTube video / Chaney identified as dishonest.
PX521, PX522, PX493

**December 2020:**
Notice of attempted forensic image of equipment in Butts County.
PX 632

**Circa Early 2021:**
Joseph Kirk alerts SOS to unauthorized access request in Bartow County.
Vol. 13 183:19-184:13

**January 2, 2021:**
Trump asks SOS to "find" votes.

**January 26, 2021:**
Agent Blanchard encounters Jeffrey Lenberg in Coffee County elections office connected to EMS server room.
PX493

**February 2021:**
SOS hires Robert Sinners after he coordinates Coffee County lawsuit and potential contact on 1/7/21.
Vol. 3, 50:8-10

**February 25, 2021:**
Misty Hampton and Jill Ridlehoover forced to resign for allegedly falsifying time sheets.
PX125

**April 2021:**
James Barnes contacts CES about issues accessing EMS.
July 20, 2022 Depo, 106: 13-22

**May 6, 2021:**
Dominion sends notice to counties warning about firms seeking to conduct "forensic audits."
PX143

**May 6, 2021**
James Barnes reports finding a Cyber Ninjas card on Misty Hampton's desk.
PX78

**May 11, 2021:**
Frances Watson and Michael Barnes look into Chris Harvey's "worst fear": potential unauthorized access to voting equipment, on "simultaneous tracks."
Vol. 7B 52:15-18

**May 11, 2021:**
Blanchard claims brief outreach to James Barnes who denies any SOS outreach. No follow-up by SOS.
PX145

**June 8, 2021:**
CES replaces EMS and ICC in Coffee County and puts them in a closet. ICC worked fine. Concerned about potential "compromise."
Vol. 12 117:10-15

**July 2021:**
Plaintiffs serve interrogatory regarding potential unauthorized access.
PX579



**November 2020:**
Misty Hampton YouTube Video.
PX495

**December 2020:** Open Coffee County investigation re certification and YouTube video / Chaney identified as dishonest.
PX521, PX522, PX493

**December 2020:**
Notice of attempted forensic image of equipment in Butts County.
PX 632

**Circa Early 2021:**
Joseph Kirk alerts SOS to unauthorized access request in Bartow County.
Vol. 13 183:19-184:13

**January 2, 2021:**
Trump asks SOS to "find" votes.

**January 26, 2021:**
Agent Blanchard encounters Jeffrey Lenberg in Coffee County elections office connected to EMS server room.
PX493

**February 2021:**
SOS hires Robert Sinners after he coordinates Coffee County lawsuit and potential contact on 1/7/21.
Vol. 3, 50:8-10

**February 25, 2021:**
Misty Hampton and Jill Ridlehoover forced to resign for allegedly falsifying time sheets.
PX125

**April 2021:**
James Barnes contacts CES about issues accessing EMS.
July 20, 2022 Depo, 106: 13-22

**May 6, 2021:**
Dominion sends notice to counties warning about firms seeking to conduct "forensic audits."
PX143

**May 6, 2021**
James Barnes reports finding a Cyber Ninjas card on Misty Hampton's desk.
PX78

**May 11, 2021:**
Frances Watson and Michael Barnes look into Chris Harvey's "worst fear": potential unauthorized access to voting equipment, on "simultaneous tracks."
Vol. 7B 52:15-18

**May 11, 2021:**
Blanchard claims brief outreach to James Barnes who denies any SOS outreach. No follow-up by SOS.
PX145

**June 8, 2021:**
CES replaces EMS and ICC in Coffee County and puts them in a closet. ICC worked fine. Concerned about potential "compromise."
Vol. 12 117:10-15

**July 2021:**
Plaintiffs serve interrogatory regarding potential unauthorized access.
PX579



AXIS M3045-V Network Camera (10.20.62.51) - Camera 1 - 1/7/2021 2:43:26.846 PM



# SOS Declared Coffee County Breaches "Didn't Happen"

April 29, 2022



**Gabriel Sterling**



Curling Pl. Ex. 493

# SOS Did Not Actually Investigate Coffee County Breaches



**April 2022**



**Joshua Blanchard**

Investigator

Q. You didn't have enough – you didn't have enough information to do much of an investigation in April of [] 2022.

A. <mark>I was told to hold off</mark> moving forward with an investigation.

Q. And who told you to hold off?

A. That came from our supervisors. It would have been Glenn Archie and above.

Trial Tr. Vol. 6A at 234:12-19

# SOS Did Not Actually Investigate Coffee County Breaches



**Joshua Blanchard**

Investigator

Q. So is it fair to say that you were never actively investigating the Coffee County breaches?

**A. Not the actual – no, sir.**

Q. That is not a true statement?

**A. No. No, sir. I never investigated the breaches -- actively investigated.**

Q. Okay. Thanks. And to your knowledge, did anyone else in the Secretary of State's office actively investigate the Coffee County 2021 breaches?

**A. Not that I'm aware of.**

Trial Tr. Vol .6A at 261:2-15

# Roadmap

| Standing | Merits |
|---|---|
| • Injury in fact<br>  - Cognizable<br>  - Particularized<br>  - Non-speculative<br><br>• Traceable<br><br>• Redressable | • Causation<br><br>• *Anderson-Burdick*<br>  - Character and magnitude of burden<br>  - Justifying State interests<br><br>• Irreparable Harm<br><br>• Balance of the burdens |

# The Coffee County Breaches Greatly Increased Risk



**Kevin Skoglund**

"[I]f you have a virtual machine, it is like … being at the keyboard of that computer wherever it is. … You can, you know, ==experiment with the features, see what the menu options are, see what the settings are==.  And then you can also do ==investigations on how to overcome defenses== that the machine has or ways that you might manipulate the machine.  It becomes sort of like a ==little laboratory==."

# The Coffee County Breaches Greatly Increased Risk



**Merritt Beaver**

Former CIO

"I think anytime you reveal any security information about an organization, you give a road map to bad actors."

Merritt Beaver 2/2/22 Dep. Tr. at 192:16-193:6

# The Coffee County Breaches Greatly Increased Risk



**Merritt Beaver**

Former CIO

Q. Can you explain what are the reasons that election software is not released to the public? I think you've already touched on this quite a bit in your earlier testimony?

A. **It's pretty obvious. You don't expose your – basically your system to the public because they – basically you're giving them a road map to how to basically get in and access the system. So the best defense of any system is keeping everything secret about that system.**

Merritt Beaver 3/10/22 Dep. Tr. at 417:6-15

# Coffee County Actors Took the "Keys to the Software Kingdom" for Georgia Voting System *Three Years Ago*



**Russell David Willard**

Attorney for
the State

"It poses a ==security risk for Ms. Powell's minions to go in and image everything, download the software, and figure out for future elections a way to hack in== so that their preferred candidates can win … [Y]ou cannot allow … a third party to come in and get the ==proverbial keys to the software kingdom.=="

Coalition Pl. Ex. 12

95

# "Ms. Powell's Minions" Effectuated Coffee County Breaches



**Sidney Powell**



# Effective Detection by Voters Is Extremely Unlikely



**Dr. Andrew Appel**

Plaintiff's Expert

"And the first consequence is that if you multiply five percent times seven percent, you find that one out of every 300 voters approximately will notice and perhaps inform the poll worker that what is on the paper is not what they selected on the screen"

\* \* \*

"[I]t is inappropriate for an election official to, you know, cancel the results of an election because a few voters indicate that what they read on the paper is not what was marked on the screen."

Trial Tr. Vol. 16B at 180:17-182:2

# Effective Detection by Voters Is Extremely Unlikely



**Dr. Andrew Appel**

Plaintiff's Expert

"So even though it may be the case that some voters did detect the hack, ==they have no way of proving it to anyone and there is no consequence==, there is no way to correct the outcome of the election."

\* \* \*

"And a risk-limiting audit or any inspection of the paper ballots will not correct it either. Because the fraudulent votes are already marked onto the paper ballots, except for those small portion of voters who are careful enough to inspect their ballots."

Trial Tr. Vol. 16B at 182:3-10

98

# Detection May Be The Goal — To Cause Chaos and Disenfranchise Voters



**Dr. J. Alex Halderman**

"What keeps me up at night is, what if some fanatics on the internet, you know, recruit a few dozen people to go around a state like Georgia on election day and program BMDs even in a simple way that will really visibly swap votes? ... **It would be chaos**, and it would take tremendous work to figure out the full scope of that chaos."

# Detection May Be The Goal – To Cause Chaos and Disenfranchise Voters



**Gabriel Sterling**
COO

Q. Do you agree that the main thing that a bad actor may want to do to affect elections in Georgia is simply to just cause chaos?

A. **That would be a – if you're – it depends on the intentions of a bad actor. A chaos actor would be something that could be done, yes. That could be a goal.**

# Detection Is Not Enough—Voting System Must Recover



**Dr. Ben Adida**

State Contractor

"[T]he final safety net of a good voting system is one where even if the computers were infected with malware, we would have a way to <mark>detect and recover</mark>."

# Georgia Is "Unprepared" to Protect the Right to Vote



**Gabriel Sterling**

COO

"[N]ormally, they would just take [the BMD] out of service…. [and if that happens on 20 BMDs] [p]ull those 20 BMDs, and then you would probably have to do a deeper investigation….

What would happen then, if we saw a lot of that happening and all over the place or in a particular county, at that point you may move to other emergency procedures which would be use, unfortunately, hand-marked paper ballots…."

Trial Tr. Vol. 5A at 201:19-207:14

# Georgia Is "Unprepared" to Protect the Right to Vote



**Gabriel Sterling**

COO

Q. Is Georgia prepared or unprepared to use the legally mandated hand-marked paper ballot backup system if only the BMDs and printers cannot be used on election day 2024 for any reason?

**A. I would refer to my earlier answer, but basically . . . Given the wild hypothetical, no. I don't believe any state could be.**

Q. Okay. Thank you. Sorry. The no is prepared or unprepared?

**A. . . . No. There is – given the hypothetical with everything breaking down, unless there was – with the number – it would depend on what time of day. I mean, there's too many hypotheticals there. I'm going to say no in general because anything I answer you'll have an answer to. So that is – I am going to sit with that for right now.**

Q. Okay. So unprepared.

**A. Correct.**

Trial Tr. Vol. 16B at 117:17-118:13

103

# Georgia Is "Unprepared" to Protect the Right to Vote



**Matthew Mashburn**

Former Chair
State Election Board

Q.  That is the emergency procedure that the board has in place; correct?

A.  **That the Court has in place?**

Q.  That the board has in place.

A.  **The board – it is available in an emergency situation, but the state of Georgia is not prepared to handle 8 million paper ballots. We don't have the infrastructure. We haven't done the testing. We haven't put it in place. Georgia is nowhere near ready for that.**

Trial Tr. Vol. 6A at 97:3-11

# Legal Standard: Irreparable Harm

"Courts routinely deem ==restrictions on fundamental voting rights irreparable injury== . . . [because] once the election occurs, ==there can be no do-over and no redress==. The injury to these voters is real and completely irreparable if nothing is done to enjoin [the] law."

*League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)

# The Inevitable Result Is Chaos



**Dr. Kevin Skoglund**

Plaintiff's Expert

"[Northampton county] said that two precincts of 156 notified them of the problem. . . And keep in mind, this was a countywide error that all precincts were experiencing on every single ballot, not an intermittent issue."

Trial Tr. Vol. 16B at 157:19-158:4

# The Inevitable Result Is Chaos



**Dr. Kevin Skoglund**

Plaintiff's Expert

"So the way that some of the polling places had to deal with the problem, some shut down voting entirely. And we don't know if those voters returned or not. Some were told to vote against their preference so that the printed ballot would be correct. That turned out to be tragic because it was later determined that the issue was that the barcodes were correct and the human text was wrong. So those voters voted a vote against their preference."

Trial Tr. Vol. 16B at 158:14-21

# This Impending Disenfranchisement Is Unconstitutional

"For the purposes of this case, we can assume that if excessive wait times result in many voters leaving their polling places before voting, and doing so with a likelihood that they will not return to vote, that may well rise to the level of a severe burden."

*Curling v. Raffensperger,* 50 F.4th 1114, 1123 (11th Cir. 2022)

# Roadmap

| Standing | Merits |
|---|---|
| - Injury in fact<br>  - Cognizable<br>  - Particularized<br>  - Non-speculative<br><br>- Traceable<br><br>- Redressable | - Causation<br><br>- *Anderson-Burdick*<br>  - Character and magnitude of burden<br>  - Justifying State interests<br><br>- Irreparable Harm<br><br>- Balance of the burdens |

# Plaintiffs' Injury Can Be Redressed By the State

The injury, or threat of injury, must be "likely...redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)

"Significantly, for standing purposes the relief sought need not be complete."

*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023)

# Courts Have Broad Power to Remedy Constitutional Violations

"Federal courts 'possess broad discretion to fashion an equitable remedy.'"

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015)

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible."

*Brown v. Plata*, 563 U.S. 493, 542 (2011)

"When federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake."

*Kansas v. Nebraska*, 574 U.S. 445, 456 (2015)

"Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."

*Miller v. Carson*, 401 F. Supp. 835, 891 (M.D. Fla. 1975)

# The Court Used Its Equitable Powers to Enjoin DREs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, et al.,

    Plaintiffs,

v.                CIVIL ACTION NO.
                   1:17-CV-2989-AT
BRAD RAFFENSPERGER, et al.,

    Defendants.

### ORDER

I.    Introduction .................................................................. 3

II.   Joinder of Municipalities Conducting November 2019 Elections ......... 12

III.  Continuing Vulnerability and Unreliability of Georgia's GEMS/DRE
     System and Voter Registration System and Database ........................ 21

    A.   Georgia's DREs operate on outdated and vulnerable software ...... 21

    B.   The DREs work in tandem with the Global Election
        Management System ("GEMS") interface, which poses
        additional problems for election integrity and security ............... 25

    C.   The DRE/GEMS system is particularly susceptible to
        manipulation and malfunction. ......................................... 33

    D.   The State's expert Dr. Shamos essentially agrees that Georgia's
        DRE/GEMS system is not reliably secure. .......................... 42

    E.   "What's Past is Prologue." ............................................... 62

    F.   The experience of voters in the 2018 election demonstrates
        serious problems and failures in the State's DRE/GEMS and
        ExpressPoll systems .................................................... 90

[T]he State Defendants are **DIRECTED:**

(1) To refrain from the use of the GEMS/DRE system in conducting elections after 2019.

Dkt. 579, Order  at 147-48

112

# The 2019 Order Also Required the State to Plan For HMPBs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

Plaintiffs,

v.                                          CIVIL ACTION NO.
1:17-CV-2989-AT
BRAD RAFFENSPERGER, *et al.*,

Defendants.

## ORDER

I.      Introduction ............................................................. 3
II.     Joinder of Municipalities Conducting November 2019 Elections........... 12
III.    Continuing Vulnerability and Unreliability of Georgia's GEMS/DRE
        System and Voter Registration System and Database..................... 21
        A.  Georgia's DREs operate on outdated and vulnerable software...... 21
        B.  The DREs work in tandem with the Global Election
            Management System ("GEMS") interface, which poses
            additional problems for election integrity and security ......... 25
        C.  The DRE/GEMS system is particularly susceptible to
            manipulation and malfunction..................................... 33
        D.  The State's expert Dr. Shamos essentially agrees that Georgia's
            DRE/GEMS system is not reliably secure........................... 42
        E.  "What's Past is Prologue." ...................................... 62
        F.  The experience of voters in the 2018 election demonstrates
            serious problems and failures in the State's DRE/GEMS and
            ExpressPoll systems ............................................. 90

[T]he State Defendants are **DIRECTED**:

(2) To ==develop a default plan== for use in the 2020 elections … and ==provide, as part of that contingency plan, for the use of hand-marked paper ballots for voting====….==

Dkt. 579, Order at 148

113

# Georgia Law Requires HMPBs as Backup

In any primary or election in which the use of voting equipment is impossible or impracticable, for the reasons set out in Code Section 21-2-334, the primary or election may be conducted by paper ballot in the manner provided in Code Section 21-2-334.

O.C.G.A. § 21-2-281

# The State Was Unprepared For HMPBs in 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

    Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.*,

    Defendants.

CIVIL ACTION NO.
1:17-CV-2989-AT

## ORDER

I.   Introduction ......................................................... 3

II.  Joinder of Municipalities Conducting November 2019 Elections ........... 12

III. Continuing Vulnerability and Unreliability of Georgia's GEMS/DRE
System and Voter Registration System and Database ...................... 21

   A.  Georgia's DREs operate on outdated and vulnerable software ..... 21

   B.  The DREs work in tandem with the Global Election
Management System ("GEMS") interface, which poses
additional problems for election integrity and security ........ 25

   C.  The DRE/GEMS system is particularly susceptible to
manipulation and malfunction .................................. 33

   D.  The State's expert Dr. Shamos essentially agrees that Georgia's
DRE/GEMS system is not reliably secure ........................ 42

   E.  "What's Past is Prologue." ..................................... 62

   F.  The experience of voters in the 2018 election demonstrates
serious problems and failures in the State's DRE/GEMS and
ExpressPoll systems ........................................... 90

Despite this provision [providing for the use of paper ballots if machines are inoperable or unsafe], ==the Secretary of State's officials have testified (twice) before this Court that the State does not have adequate resources or the necessary procedures in place to make the switch== [to paper ballots]....

Dkt. 579, Order at 148

115

# The State's Shifting Defense

| 2019 | Curling and Coalition Plaintiffs' respective Complaints are devoid of any allegations that hacking, security vulnerabilities, or other problems have been identified or exploited in Georgia's BMD voting system. <br><br> Slate Defendants' Motion to Dismiss Reply Brief, at 5, Dkt.653 |
|---|---|
| 2020 | Curling Plaintiffs do not point to any new identified, active security risk or hacking potential the use of BMDs poses... <br><br> State Defendants' Opposition to Preliminary Injunction Motion, at 7, Dkt. 821 |
| 2021 | Plaintiffs here do not allege an actual breach of the BMD system—but in *Tsao*, there had been an actual compromise of the point-of-sale system. <br><br> State Defendants' Brief on Standing, at 12, Dkt. 1066 |
| 2023 | There is no evidence that their ballots or any ballots cast using a BMD were not accurately counted or that any vote has been changed or will be altered as a result of the use of the BMD system. <br><br> State Defendants' Motion for Summary Judgment, at 3, Dkt. 1567-1 |

# Déjà Vu All Over Again . . . All Over Again

[T]he State Defendants have also stood by for far too long, given the mounting tide of evidence of the inadequacy and security risks of Georgia's DRE voting system and software. **The Court is gravely concerned about the State's pace in responding to the serious vulnerabilities of its voting system.**

*Curling v. Kemp*, 334 F. Supp. 3d 1303, 1327 (N.D. Ga. 2018)

"The past may here be prologue anew – it may be *"like déjà vu all over again*." The Defendants have previously minimized, erased, or dodged the issues underlying this case."

*Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1412 (N.D. Ga. 2019) (citation omitted)

# State Engages in Campaign of False Character Assault



**Mike Hassinger**

Spokesperson
Secretary of State

"If the PhDs don't like being put in the same category as the Pillow salesman, tough noogies. They should stop saying similar things."

# State Engages in Campaign of False Character Assault



**Gabriel Sterling**

COO

Q. What is an election denier?

A. **In general, a person who denies the outcome of an election based not necessarily on fact but on theory and not evidence.**

# State Engages in Campaign of False Character Assault



**Gabriel Sterling**

COO

Q. Do you know who made the decision to respond to Dr. Halderman's findings by characterizing him and the plaintiffs as election deniers?

A. **No sir, I can't say specifically who. It was an internal communications decision.**

\* \* \*

Q. Fair to say that the people speaking on behalf of the Secretary would not make those statements without his knowledge and authorization?

A. **Fair to say that.**

Trial Tr. Vol. 5A at 192:23-193:11

# Court Is the Ultimate Fact-check



**Brad Raffensperger**

Secretary of State

"[The] ==ultimate fact-check== in the United States occurs in courts of law, where witnesses swear to tell the truth or risk imprisonment and where lawyers must also tell the truth or risk disbarment.

==If you want to know the truth, watch what happens in court.=="

# Legal Standard: Plaintiffs' Cognizable Interest

As the Supreme Court has recognized, "**all qualified voters have a constitutionally protected right to vote**," and that right necessarily encompasses "the right of qualified voters within a state to cast their ballots **and have them counted**."

*Reynolds v. Sims*, 377 U.S. 533, 554-555 (1964) (emphasis added)

# Legal Standard: Plaintiffs' Particularized Injury

"The Supreme Court has 'long recognized that a person's right to vote is individual and personal in nature' and **'voters who allege facts showing disadvantage to themselves as individuals have standing to sue'** " as they have alleged a concrete and particularized injury."

*Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinett Cnty. Bd. of Registration & Elections,* 36 F.4th 1100, 1114 (11th Cir. 2022) (quoting *Gill v. Whitford*, 585 U.S. ---, 138 S. Ct. 1916, 1929 (2018)(other quotation marks omitted))

Requiring a voter either to endure a burden to vote in person or cast an absentee ballot is an injury sufficient for standing.

*See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009)

123

# Legal Standard: Organizational Standing

"Organizations may have standing under a 'diversion-of-resources' theory **when they divert financial resources or personnel time to counteract unlawful acts of a defendant**, thereby impairing the organizations' ability to engage in typical projects."

*Fair Fight Action, Inc. v. Raffensperger*, 634 F.Supp.3d 1128, 1177 (N.D. Ga. 2022) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)) (emphasis added)

# Legal Standard: Organizational Standing

**An organizational plaintiff has standing to challenge <u>election laws</u> if it has diverted time, personnel or other resources from its usual projects to assist voters whose ability to vote is affected by state action.**

*Fair Fight Action, Inc. v. Raffensperger*, 634 F.Supp.3d 1128, 1178 (N.D. Ga. 2022)

## This may include:

- Diverting from one activity aimed at achieving an organization mission to a different activity at aimed at the same mission.
  - *See, e.g., Common Cause/Georgia v. Billups,* 554 F.3d 1340, 1350 (11th Cir. 2009)

- Diverting resources to achieve the organizations' typical goal in a different or amplified manner.
  - *See Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cty. Bd. of Registration,* 36 F.4th 1100, 1115 (11th Cir 2022)

# Legal Standard: One Plaintiff Rule

"The law is abundantly clear that so long as at least one plaintiff has standing to raise each claim [] we need not address whether the remaining plaintiffs have standing."

*Fla. ex rel. Att'y Gen. v. U.S. Dep't of Health & Human Servs.*, 648 F.3d 1235, 1243 (11th Cir. 2011) (collecting cases)

"**If this Court finds that one Plaintiff has standing** with respect to a challenged practice, **there is standing** sufficient for the Court to consider the challenge, regardless of whether any other Plaintiff has standing with respect to that challenged practice. *See Town of Chester, NY v. Laroe Ests., Inc.* 137 S. Ct. 1645, 1651 (2017)."

*Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1178 (N.D. Ga. 2022)

# BMD Ballots Are Not Voter Verified



**Donna Price**

Curling Plaintiff

Q. And when you voted on a BMD, did you know whether your ballot accurately reflected the selections you made?

A. **I didn't know if the ballot that went – was scanned, the choices that were scanned, I didn't know if those reflected my choices.**

Trial Tr. Vol. 2 at 37:24-38:3

# BMD Ballots Are Not Voter Verified



**Megan Missett**

Coalition Plaintiff

"And there was, you know, a certain amount of pressure and anxiety because people had been waiting a long time. So when I went out after I finished voting to get to the scanner to feed my ballot card, I was just – I was creating a log jam. And it takes me like three minutes to really go through. So I had to keep people from coming in or going out, and I just – I couldn't do it."

Trial Tr. Vol. 8 at 156:19-25

# Voters Can Make Mistakes on the Touchscreen



**Dr. Ben Adida**

State Contractor

"Voters can make mistakes through the process on touch screens especially. We've certainly seen it in the development of our own machines at VotingWorks and all the testing we have done. It is really easy to make a mistake."

Trial Tr. Vol. 12 at 288:15-18

# RLAs Require Voter Verification



**Joseph Kirk**

Election Supervisor
Bartow County

"We need them to review their ballots in order for my audits to have any meaning."

Trial Tr. Vol. 13 at 162:16-17

# Roadmap

| Standing | Merits |
|---|---|
| • Injury in fact<br>  - Cognizable<br>  - Particularized<br>  - Non-speculative<br><br>• Traceable<br><br>• Redressable | • Causation<br><br>• *Anderson-Burdick*<br>  - Character and magnitude of burden<br>  - Justifying State interests<br><br>• Irreparable Harm<br><br>• Balance of the burdens |

# Even One Disenfranchised Voter Is Too Many

"It is a basic truth that even one disenfranchised voter—
let alone several thousand—is too many."

*League of Women Voters of N. C. v. North Carolina,* 769 F.3d 224, 244 (4th Cir. 2014)

"This test requires the Court to weigh the character and
magnitude of the burden that the State's rule imposes on
Plaintiffs' voting rights against the interests that the State
contends justify that burden, and consider the extent to
which the State's concerns make the burden necessary."

*Dkt. 1705 at 111 (citing Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997)

132

# The State's Articulated Interest Is Uniformity



**Gabriel Sterling**

COO

Q. Does the State have an interest in using the current Dominion BMD equipment?

**A. Yes.**

Q. What is that interest?

A. Again, <mark>the uniformity brings a lot of advantages,</mark> for training and for usage, I mean – and, frankly, to protect voters....

Trial Tr. Vol. 15 at 246:11-246:17

# The State Owns and Certifies Voting Equipment



**Gabriel Sterling**

COO

Q. So the EMS server that was taken and the ICC in the summer of last year from Coffee County, that is and has always been owned by the Secretary's Office or by the State?

**A. Once it was purchased and accepted, yes.**

Gabriel Sterling 10/12/22 Dep. Tr. at 199:9-13

# The State Instructs Counties on Operation of Voting Equipment



**Michael Barnes**

Deputy Director
of Elections
Director of CES

"Any type of functional error. If it is during an election, <mark>we tell the county immediately</mark> to turn their devices off, seal the device … If it is a device during testing … then <mark>we're going to advise the county</mark> again, probably best not to use that device for the upcoming election. Any device in which they have a malfunction … then <mark>we would recommend that they submit</mark> … a repair to manufacturer submission with the vendor, and then make sure that that device is transferred to the vendor for repair."

Trial Tr. Vol. 12 at 38:15-39:5

# State Instructs Counties on Operation of Voting Equipment

From: Rachel Roberts <Rachel.Roberts@coffeecounty-ga.gov>
Sent: Wednesday, June 1, 2022 12:53 PM
To: Barnes, Michael <mbarnes@sos.ga.gov>; Patel, Pratik <ppatel@sos.ga.gov>
Subject: ICC MEMORY CARDS

EXTERNAL EMAIL: Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Where do I get more memory cards from for the ICC's?

I do not have enough to hold the runoff unless we can clear the c

Thanks

Rachel Roberts

Coffee County Georgia

Elections Supervisor

| | |
|---|---|
| From: | "Barnes, Michael" <mbarnes@sos.ga.gov> |
| To: | Rachel Roberts <Rachel.Roberts@coffeecounty-ga.gov>,"Patel, Pratik" <ppatel@sos.ga.gov> |
| Addressed To: | rachel.roberts@coffeecounty-ga.gov |
| Subject: | Re: ICC MEMORY CARDS |
| Date: | Wednesday, June 01, 2022 17:27 GMT |
| Attachments: | Outlook-muc5cpkj.png (18.5 KB) |

You may use the cards you used in May.

Michael Barnes

Director – Center for Election Systems

Georgia Secretary of State

# The State Provides Seals For BMDs



**James Barnes**

*Former Coffee County
Election Supervisor*

Q. Did you ever have any briefings at those meetings from the Secretary of State or otherwise on security of the system?

**A. No. Mostly it was – there's one tab on there that's a secure tab.  We were always told that if you mess up and take that off, it immediately has to get sent back to CES.**

\* \* \*

Q. Are you talking about the seals that go on there?

**A. It's a – it's a braided metal and then clamped in plastic seal.**

James Barnes 07/20/22 Dep. Tr. at 73:2-16

# The State Penalized Athens-Clarke County For Switching to HMPBs

Case 1:17-cv-02989-AT Document 1814-1 Filed 02/06/24 Page 138 of 161



**Matthew Mashburn**

Former Chair
State Election Board

Q. [W]hat were they doing different from everyone else?

A. **They wanted to do away with the BMDs.**

\* \* \*

Q. And the SEB, do you recall, imposed a civil penalty of $5000 until they did switch back [to BMDs]?

A. **That's correct... they did do it the next day.**

# Counties Rely on State For Cybersecurity of Equipment



**James Barnes**

Former Coffee County
Election Supervisor

Q. In the time that you were at Coffee County, are you aware of any cybersecurity testing that was done on any of the election equipment there?

A. **No, sir. When it comes to us, it's certified by the State.**

Q. So you rely on the State for that; is that fair?

A. **Yes.**

# Counties Rely on State to Investigate Election Security Issues



**James Barnes**

Former Coffee County
Election Supervisor

Q. Were you concerned that the fact that the password never – no longer worked, that maybe that was an indication that someone had done something they weren't supposed to do on that server and on the ICC?

A. **Like I said, I don't get paid to speculate and investigate. That's why the State has investigators.**

James Barnes 7/20/22 Dep. Tr. at 122:10-16

140

# Counties Rely on State to Investigate Election Security Issues



**Wendell Stone**

Coffee County
Elections Board

Q. Are you aware of any measures by the State or the County to deal with any risk associated with unnecessary software on the ICC and EMS computers?

A. **Not aware.**

Q. Fair to say that's something that the County would rely on the State to deal with?

A. **Yes.**

Wendell Stone 09/01/22 Dep. Tr. at 133:21-134:2

# Broken or Missing Seals

**From:** Hall, Adrick
**Sent:** Tuesday, November 10, 2020 11:18 AM
**To:** Watson, Frances <fwatson@sos.ga.gov>
**Subject:** RE:

I spoke with Austin and he explained that when he went to vote by Absentee-In-Person, the security seals on the BMDs were broken. He brought it to a poll worker's attention and she went and got a man (possibly a tech) who said they leave them open while the polls are open so they can fix the machines if necessary. He informed Austin that they were sealed when the polling location closed.

Austin said, out of concern, he photographed the BMDs in the front and back to capture the broken seals in pictures. I asked that he send me copies of the photos and he said he would email them to me.

# Broken or Missing Seals

**From:** Susan Gray <sgray@jeffersoncountyga.gov>
**Sent:** Wednesday, February 26, 2020 8:22 AM
**To:** Barnes, Michael <mbarnes@sos.ga.gov>
**Subject:** Jefferson County Board of Elections

**EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Michael,

These are the BMD serial numbers that I took the State of Georgia Seal from by mistake.
I have the seals but I am unsure of the serial number which SOS seal came off.

BMD        New Seal

# 270870  - 0783766
# 300492  - 0582158
# 300494  - 0373662
# 171100  - 0783758
# 300493  - 0783743
# 171101  - 0119665
# 300495  - 0582162

Seal numbers that were removed:
307303; 307305; 307330; 307367; 307370; 307713; 356953

Curling Pl. Ex. 103

143

# Wide Access to Locations Storing Election Equipment



**Aileen
Nakamura**

**"[T]he BMDs that are left in the room are sleeping over. They are staying over that night or that weekend.  And because a lot of these locations that are being used as polling places are also public locations, you know, libraries, churches, universities, there are – there is a lot of foot traffic. …[W]ith the BMDs, what they found is it takes so many van loads to get all of the equipment into the polling places that they are left sometimes on a Friday, sometimes on a Saturday, sometimes on a Sunday for an election that is happening on Tuesday."**

Trial Tr. Vol. 2 at 95:24-96:18

# State Is Responsible For Elections Investigations



**Frances Watson**

Former Chief Investigator
of Investigations Division

Q. And you said you had – your division had responsibility for investigation specifically into election issues; is that right?

A. **Yes.**

Trial Tr. Vol 7B at 16:22-25

# State Investigated Suspected Remote Access of One Fulton County Laptop



**From:** Hall, Adrick <ahall@sos.ga.gov>
**Sent:** Thursday, October 29, 2020 4:16 PM
**To:** Callaway, James <jcallaway@sos.ga.gov>
**Cc:** Watson, Frances <fwatson@sos.ga.gov>
**Subject:** RE:

Braun is there. He is obtaining written statements from the poll manager, the poll worker and the IT personnel who looked at the laptop. The general statement is that the laptop was a Fulton County laptop. The used it to access ElectioNet and Easy Vote and process the AB applications for voters. The laptop was on wifi mode and the cursor began to move from icon to icon on its own. The laptop kept kicking the poll worker off of Easy Vote and he would have to continuously logon. The poll manager called the IT person who simply told Braun the cursor was methodically moving from icon to icon as if the laptop was remotely accessed. The IT person told Braun that no program and no information appeared to have been deleted.

**From:** Germany, Ryan <rgermany@sos.ga.gov>
**Sent:** Thursday, October 29, 2020 4:46:34 PM
**To:** Evans, Blake <bevans@sos.ga.gov>; Watson, Frances <fwatson@sos.ga.gov>; Harvey, Chris <wharvey@sos.ga.gov>; Fuchs, Jordan <jfuchs@sos.ga.gov>; Beaver, Merritt <mbeaver@sos.ga.gov>; Hamilton, Dave <dhamilton@sos.ga.gov>
**Subject:** RE:

Looping in Merritt and Dave. Should we have Fortalice or someone do some forensics on this laptop? Or Fulton could have someone do it.

Curling Pl. Ex. 254

# State Investigated Suspected Remote Access of One Fulton County Laptop



**Fⓧrtalice**

### Executive Summary

In October of 2020, Fulton County observed erratic mouse movement on a laptop, potentially consistent with the behavior that would occur if a remote user and a local user were both attempting to use the mouse simultaneously. After attempting to troubleshoot the issue as operational and due to concerns of malicious activity on a sensitive system, Fulton County engaged Secretary of State Georgia (SoSGA) for assistance.

Fortalice Solutions (Fortalice) was engaged by SoSGA as they are a trusted advisor and have extensive experience in incident response events and digital forensics. SoSGA requested

# State Investigated "I Bet I Can Hack Your Electronic Voting Machines" Email From "Random Guy"



**Ryan Germany**

*Former General Counsel*



Q. And you tell Mr. Rayburn, please alert Secretary, Jordan, and Gabe; right?

A. **Yes.**

Q. Secretary is Secretary Raffensperger?

A. **Yes.**

Q. Jordan is Jordan Fuchs?

A. **Yes.**

Curling Pl. Ex. 587; Trial Tr. Vol. 4 at 79:2-80:12

148

# State Investigated Spalding County Plan to Hire Sullivan Strickler to Image Equipment

Kimberly,

I want to follow up our phone conversation with additional details.

First, I am attaching to this email State Election Board Rule 183-1-12-.05, which states that election equipment cannot be modified, changed, or upgraded without authorization from the Secretary of State.

Second, please send me a written explanation of your concerns. Since the equipment you have stored is state owned equipment, we must follow protocols to examine the equipment to detect possible issues. The proper procedure is to send a written explanation to Michael Barnes, Director of the Center for Election Systems, and me. At that point, Michael and his team will travel to Spalding to assess the equipment and determine next steps. Any deviation from the procedures could lead to us not being able to certify the equipment, which would mean it could not be used in future elections. The county would be required to purchase new equipment.

Again, please
we will take th

Blake Evans
Elections Direc
Georgia Secret
**Direct: 470-31**
**Cell: 470-701-**
<image003.jpg



**Blake Evans**

*Director of Elections*

First, I am attaching to this email State Election Board Rule 183-1-12-.05, which states that election equipment cannot be modified, changed, or upgraded without authorization from the Secretary of State.

# State Investigated Spalding County's Plan to Hire Sullivan Strickler to Image Equipment



**Michael Barnes**

Director of CES
Deputy Director of Elections

Q. Are you aware of an incident involving Dominion equipment in Spalding County in 2021?

A. **I'm – I'm aware that their elections board reached out to the Secretary of State's office. I believe it was after they had made a decision to sever ties with the previous election supervisor in Spalding County.**

\* \* \*

Q. Do you recall if the election management server was replaced?

A. **I believe . . . that a decision was finally made to provide Spalding County with a new election management server.**

Trial Tr. Vol. 12 at 47:6-15

150

# State Investigated And Replaced Treutlen County EMS After Treutlen Hired Misty Hampton

Case 1:17-cv-02989-AT Document 1834-4 Filed 02/16/24 Page 153 of 161



**Michael Barnes**

Director of CES
Deputy Director of Elections

Q. Mr. Barnes, your office replaced the EMS server in Treutlen County after you learned that Misty Hayes had been employed by Treutlen County after the Coffee County incident; right?

A. Yes.

Trial Tr. Vol. 12 at 134:3-7

151

# Halderman's Findings Are the Real World



**Dr. J. Alex Halderman**

Ph.D in Computer Science,
Princeton University

Bredt Family Professor
of Computer Science &
Engineering,
University of Michigan

Q. You mentioned a normal nontechnical person. Have you seen a Georgia voter without a computer science background implement any of the hacks you identified?

A. **Yes.**

Q. Who?

A. **Jeff Schoenberg.**

Trial Tr. Vol. 8A at 121:7-122:3

# Halderman's Findings Are the Real World



**Dr. J. Alex Halderman**

Q. How long did it take you to teach him?

A. **Just a very – handful of tries at most, and he had completely mastered it.**

Q. How does the time it took him to implement your hack compare to the time it took him to vote an ordinary ballot?

A. **He is faster at hacking than voting the ballot, normally.**

Trial Tr. Vol. 8A at 137:12-138:20

"Yet the vital issues identified in this case will not disappear or be appropriately addressed without ==focused State attention, resources, ongoing serious evaluation by independent cybersecurity experts, and open-mindedness==. And at very least, the Court cannot fathom why, post-election, the State and Dominion would not at least be moving toward consideration of the software upgrade option Dominion originally promised, ==allowing voters to cast ballots that are solely counted based on their voting designations== and not on an unencrypted, humanly unverifiable QR code that can be subject to external manipulation and does not allow proper voter verification and ballot vote auditing. ==Time will tell whether Act V here can be still avoided or at least re-written==."

*Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1342 (N.D. Ga. 2020)

# Election Procedures Can Be So Flawed They Violate Due Process

"Federal courts have properly intervened *when the attack was, broadly, upon the fairness of the official terms and procedures under which the election was conducted.* The federal courts were not asked to count and validate ballots and enter into the details of the administration of the election. Rather they were *confronted with an officially-sponsored election procedure which, in its basic aspect, was flawed.* Due process, representing a profound attitude of fairness between man and man, and more particularly between individual and government, is implicated in such a situation." (emphasis added)

*Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1404 (N.D. Ga. 2020)

# Voters Can't Verify QR Codes



**Dr. Michael I. Shamos**

Ph.D *Carnegie Mellon University*

Former State Expert

"I'll say, first, I'm not a fan of bar codes…"

# Not If, But When



**Teresa Payton**
Fortalice

Q. And going into the midterm elections of last year, you had grave concerns about election interference; correct?

A. **I did, yes. Still do.**

Q. In fact, going into the midterms of last year, you believe that one thing that we can be sure of is that a U.S. election will be hacked, no doubt about it; right?

A. **Yes.**

# Logic & Accuracy Testing Is Not a Fix



**James Barnes**

Coffee County Elections
Supervisor

Q.  [I]f you have a virtual machine … it is like being at the keyboard of that computer wherever it is. … [I]n the case of like an election management system from a county, it is like being in that county sitting in front.

A.  **Logic and accuracy is not really about cybersecurity. They're supposed to be closed systems that are not networked out and supposed to be in a locked door with only minimal access to – of a few people to them.  So unless there's user error, there shouldn't be cybersecurity issues.**

Trial Tr. Vol. 9 at 44:9-21

# Logic & Accuracy Testing Is Not a Fix



**Dr. Juan Gilbert**

State Expert

Q. Just below the heading 7.5, the bolded language, "Defeating Logic and Accuracy Testing."

**A. I see it … "It can be defeated by ICX malware."**

Q. You don't dispute that finding in your declaration, right?

**A. I did not dispute that in my declaration.**

Juan Gilbert 10/29/21 Dep. Tr. at 223:19-224:22

# RLAs Are Not a Fix



**Dr. Juan Gilbert**

State Expert

Q. Isn't it true that a risk-limiting audit can never audit what the BMD device showed to the voter?

A. **That's correct.**

Juan Gilbert 10/29/21 Dep. Tr. at 223:19-224:22

# RLAs Are Not a Fix



**Dr. J. Alex Halderman**

Ph.D in Computer Science,
Princeton University

Bredt Family Professor
of Computer Science &
Engineering,
University of Michigan

Q.  Is it your opinion that Georgia cannot conduct an actual risk-limiting audit as long as it is using BMDs with QR codes; correct?

A.  **Yes. A risk-limiting audit needs as an input to the audit an accurate representation of voters' selections.**

Trial Tr. Vol. 8A at 14:25-15:2