# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> FILE NO. 1:17-CV-2989-AT |

**JOINT STATEMENT PURSUANT TO COURT ORDER,
[DOC. 1713], CONCERNING EXPERT DISCLOSURES**

**DEFENDANTS' POSITION**

The Court is, of course, aware that Curling Plaintiffs' expert, Dr. Halderman, prepared a sixty-page report reflecting his opinions which the Curling Plaintiffs plan to offer at trial, as required by FRCP 26(a)(2), [Doc. 1681]. This report, however, lacks disclosure of all "facts or data considered by the witness in forming" those opinions or otherwise lacks all "exhibits that will be used to summarize or support" those opinions, which is also required by FRCP 26(a)(2)(B)(ii–iii). Specifically, Dr. Halderman prepared at least four different "proof-of-concept attacks" that, he opines "could be used to change the personal votes of individual Georgia voters," Rpt. at 5, along with other "attacks" focused on the manipulation of ICX smart cards, Rpt. at 26–31. Dr. Halderman has not fully disclosed the facts or data undergirding these "attacks" and further has not fully disclosed the exhibits—*i.e.*, the demonstration(s)—that Plaintiffs intend to have him offer at trial. Notwithstanding that this disclosure is a mandatory obligation of Plaintiffs, Defendants have repeatedly sought to obtain this information through discovery to no avail. Under these circumstances, this Court must compel disclosure and afford Defendants an adequate opportunity to prepare for trial or otherwise exclude any opinion testimony or demonstration of these "attacks" from introduction at trial. FRCP 37(c)(1).

***Timeline of the Dispute***. Following the Court-ordered provision of Dominion Election Equipment to Plaintiffs on September 2, 2020, [Doc. 858], Dr. Halderman

1

created a demonstration attack which was offered at the September 2020 preliminary-injunction hearing over Defendants' objection. Sep. 10, 2020 Hrg. Tr. at 94:13–18. 99:02–100:12, 111:13–112:17. Over the next 10 months, Dr. Halderman developed additional "proof-of-concept attacks" upon which his opinions rely, summarizing them (and the attack demonstrated in September 2020) in his July 1, 2021, Report, but not disclosing their underlying substance.

Notwithstanding that Defendants believe the data and information sought is within the scope of mandatory expert disclosures under Rule 26, Defendants—within the expert discovery period, [Doc. 1236]—served a specific request for this information within their notice to take the deposition of Dr. Halderman. **Ex. A**. Curling Plaintiffs objected to all requests on timeliness and other grounds not recognized under the Federal Rules of Civil Procedure, on December 3, 2021, supplementing those objections on December 6, 2021. *See* **Exs. B and C**, respectively. The parties then conferred regarding this request and other disputes on December 7, 2021, but were unable to resolve the dispute. On January 6, 2022, a joint discovery statement concerning the matter was filed. [Doc. 1246].[1]

Subsequent to filing the discovery dispute statement, the Court ordered the parties to identify specific "disputes that will require resolution," [Doc. 1272], and

---

[1] Throughout December, counsel continued to correspond regarding other discovery disputes raised during the same timeframe, conferring again on January 5, 2022, though focused on those other disputes. *See* [Doc. 1250].

2

Defendants identified this matter among others in their January 26, 2022 filing, [Doc. 1280]. The Court then convened a conference regarding such disputes on January 26, 2022, during which Defendants explained that the requested discovery was needed not for summary judgment but would be necessary for trial. Jan. 27, 2022, Conf. Tr. 35:18–22, 36:11–14. During the conference, the Court recognized the need for this disclosure prior to trial and appeared to reject Curling Plaintiffs' timeliness objections, Jan. 27, 2022 Conf. Tr. 31:01–32:05, the Court further directed Defendants to provide to the Court a timeline of the issue, *id.* at Tr. 40:05–41:14, which was provided via electronic mail on January 31, 2022. **Ex. D**.

While the issue remained unresolved, Defendants provided to Curling Plaintiffs a proposed protocol as directed by the Court. **Ex. E**. Defendants received no response. As noted in the message to counsel, *id.*, Defendants moved to stay the proceedings in this matter pending resolution of the appeals, noting various issues that made the then-existing summary judgment deadline un-workable. [Doc. 1327]. While considering that motion, the Court directed the parties to confer and provide a consolidated list of discovery disputes. Therein, Defendants noted they had:

> proposed the same protocol be utilized as was for Dr. Halderman's inspection of BMD equipment, provided that the video recording would not be produced to opposing counsel unless State Defendants intend to offer testimony on the inspection at trial. State Defendants do not believe this discovery issue impacts the summary judgment timeline as they do not intend to elicit any testimony on the inspection for summary judgment purposes.

3

[Doc. 1340 at 16 (citing Jan. 27, 2022, Conf. Tr. 31:21–32:3)]. Thereafter, on April 6, 2022, the Court ordered the parties to state whether various disputes (including this one) were resolved and whether it was necessary to be resolved prior to summary judgment. [Doc. 1359]. Both Defendants and Plaintiffs indicated the dispute remained unresolved and that resolution was not required prior to summary judgment. [Docs. 1361 & 1362]. On April 17, 2022, this Court stayed the proceedings in this case but required all discovery which did ***not*** require resolution of the Court be completed then. [Doc. 1346 at n.6]. At no time have Defendants retreated from their consistent position that this disclosure is necessary for trial.

***The Parties' Recent Conferral.*** Defendants submitted the synopsis of this dispute to the Court on November 17, 2023, as directed by the Court during the November 15, 2023, conference. Conf. Tr. at 10:03–06, 11:02–03. The parties again conferred regarding this dispute on November 20, 2023, as ordered by the Court. Defendants understood Curling Plaintiffs offered to forego any new demonstration and instead rely upon their 2020 Hearing demonstration. The Defendants responded the next day, noting that while such a proposal would obviate the original issue, disclosure of the details of the "hack" demonstrated in the 2020 Hearing would still be required for trial. Curling Plaintiffs' response indicates their intent to present Dr. Halderman's attacks "with the aid of one or more video demonstratives." **Ex. F**.

***Argument and Citation to Authority.*** Rule 26(a)(2)(B) unequivocally states

4

what an expert report must contain, including the "facts or data considered" in forming those opinions and all "exhibits that will be used to summarize or support" those opinions. FRCP 26(a)(2)(B)(i)–(iii). Such disclosure must be made at the time ordered by the Court for expert disclosures or otherwise at least ninety days prior to trial. FRCP 26(a)(2)(D). As another court in this District recently stated, "Rule 26(a)(2)(B) is not a procedural hurdle . . . [i]n fact, this rule 'serves the purpose of providing the other party with the substance of the proposed testimony, an opportunity to analyze the expert and the methodology, and a chance to seek out its own expert.'" *Merchant v. Allstate Fire & Casualty Ins. Co.*, 2023 WL 6518866, at *2 (N.D. Ga. Sept. 20, 2023) (quoting *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1318 (N.D. Ga. Aug. 13, 2002)). In turn, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence…at a trial, unless the failure was substantially justified or is harmless." FRCP 37(c)(1).

When addressing whether a failure to comply with FRCP 26(a) is "substantially justified" or "harmless" pursuant to FRCP 37(c)(1), courts in this circuit often analyze the issue under a five-factor test:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

5

*See Merchant*, 2023 WL 6518866, at *3-4 (citing *Ables-Thomas v. MV Contract Transportation, Inc.*, 2020 WL 10485727, at *4 (N.D. Ga. Dec. 21, 2020)) (excluding expert report). A party is prejudiced by a late disclosure when it "deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Paul v. Aramark Healthcare Support Servs., LLC*, 2016 WL 7888045, at *4 (N.D. Ga. June 2, 2016).

Here, Plaintiffs allege that Georgia's BMD system "imposes a severe constitutional burden on their right to have their votes accurately counted as cast." [Doc. 1705 at 120]. Dr. Halderman's opinion and the data he relied on in forming that opinion is central to Plaintiffs' case. *See generally* [Doc. 1705]. Indeed, the Court relied heavily on Dr. Halderman's opinions concerning his alleged "seven primary vulnerabilities" in its summary judgment order, *id.* at 40, in determining that "appropriate evidence and expert analysis have been provided to support the seven outlined vulnerability findings," *id.* at 41. The data underlying Dr. Halderman's opinion is thus important evidence in this case.

Additionally, the Court previously recognized that Defendants have "a legitimate interest in being able to understand the way in which Dr. Halderman proceeded in his analysis…" Jan. 27, 2022, Conf. Tr. 28:13–22. The Court also previously stated that this issue was not untimely raised by Defendants: "I don't think it is untimely from that perspective that they are entitled to know what the data

6

is that is the – and programming that is the basis of [Dr. Halderman's] analysis." *Id.* at 30:22-32:5. And when Plaintiffs raised concerns about producing Dr. Halderman's underlying data, the Court suggested that Plaintiffs make a proposal to Defendants' for how the data could be handled alternatively. *Id.* at 38:10-39:15. But Plaintiffs never made any such proposal. Under these circumstances, the Defendants reserved all rights, and acted with sufficient diligence pursuant to this Court's directives. The Curling Plaintiffs have simply not responded.

There is no excuse for Plaintiffs' failure to disclose the data considered by Dr. Halderman in forming his opinions and all exhibits used to support or summarize those opinions. Contrary to Plaintiffs' prior assertions, Rule 37 places the burden on *them* to demonstrate why their non-disclosure is justified and does not harm Defendants—not on Defendants to show they diligently pursued Plaintiffs' Rule 26 obligations. Regardless, Defendants nonetheless *did* timely raise this issue on several occasions. Due to the prejudice to Defendants resulting from Plaintiffs' failure to make the required disclosures under Rule 26(a)(2)(B), and their continued refusal to make such disclosures, the harm to Defendants can only be cured by excluding evidence that relies on the undisclosed data underpinning Dr. Halderman's opinions or demonstratives concerning such undisclosed data. Otherwise, this Court must compel disclosure and afford Defendants adequate time to evaluate and understand this belated disclosure.

## PLAINTIFFS' POSITION

Only six weeks before trial, Defendants suddenly claim they need expansive discovery regarding Dr. Alex Halderman's *July 1, 2021* Report. They admit they willfully disregarded *every* deadline to obtain that discovery in the last *two and a half years*. They did this because, in their words, "no trial was imminent." Ex. 1. But the very purpose of discovery deadlines is to complete anticipated discovery *well before trial becomes imminent*—and this is precisely why courts, including the Eleventh Circuit, require parties to diligently pursue discovery before the deadlines expire. Having *chosen* not to do so for some *two years*—despite numerous discovery extensions by this Court, no less—Defendants long ago waived the requests at issue. And because of Defendants' nonfeasance, the parties have never discussed a protocol for the discovery sought here. The protocol they proposed is woefully inadequate for that discovery—Dr. Halderman's vote-stealing malware cannot leave his possession under any circumstances. The Court should deny Defendants' improper requests.

## BACKGROUND

### A. Defendants' original requests were untimely

On September 2, 2020, the Court ordered Fulton County to provide certain components of Georgia's Dominion voting system to Plaintiffs for analyses. Dkt. 858 at 5. Plaintiffs received the equipment two days later. Dkt. 964 at 24. In the September 2020 preliminary injunction hearing, Dr. Halderman testified at length

about his initial analyses of the equipment, including presenting key aspects of his findings in video clips that were provided to the Court and Defendants. Dkts. 904-906. Defendants and their experts never sought to examine that equipment.[2]

On July 1, 2021, Plaintiffs served Dr. Halderman's report. Dkt. 1131. Dr. Juan Gilbert, Defendants' expert, responded without any need *or request* for any discovery regarding Dr. Halderman's work. Dkt. 1136. *Four months later*, on November 11, 2021—only six days before Dr. Halderman's November 17 deposition and only about three weeks before the December 6, 2021 expert discovery deadline[3]—Defendants suddenly requested source code and computer programs in Dr. Halderman's deposition notice. Plaintiffs' response was due *after* discovery closed. Fed. R. Civ. P. 34(b)(2)(A). Plaintiffs objected to the requests as untimely and improper. Dkt. 1246-1; Dkt. 11 at 13.

**B.     Defendants chose not to diligently pursue the requests**

On November 24, 2021, the Court extended the expert discovery deadline to February 15, 2022. Dkt. 1238. On January 6, 2022, the parties filed a joint discovery dispute on this issue. Dkt. 1246. As Defendants admit, in a January 27, 2022 teleconference "[t]he Court directed the State Defendants to send a proposed

---

[2] Defendants' experts have not examined any voting equipment or software currently used in Georgia. And Defendants outright ignored Dr. Halderman's findings for years, even concealing them from senior state officials. Dkt. 1625 at 6-9.

[3] The expert discovery deadline was extended from September 3, 2021. Dkt. 1093.

9

protocol to the Plaintiffs for Dr. Halderman's data and software underlying his analysis." Ex. 1. The Court directed this to happen "ASAP." Dkt. 1295 at 37:16.

*But Defendants waited six weeks*, until March 4, 2022, to finally provide the required proposal. Ex. 2. Importantly, Defendants *chose* to send the proposal *nearly three weeks after* the *extended* February 15, 2022 expert discovery deadline, rendering the request willfully untimely and too late (again). Dkt. 1238.

Before Plaintiffs could respond, Defendants noted the issue in a joint status report on March 11, 2022. Dkt. 1340 at 16. On April 7, 2022, the parties informed the Court that the issue was unresolved. Dkts. 1361, 1362. *Defendants requested no action from the Court in either filing*. On April 17, 2022, the Court issued a limited stay of discovery. Importantly, Defendants admit that they "understood that the issue of Dr. Halderman's discovery was ***not*** subject to the stay." Ex. 1 (emphasis added). Yet Defendants did nothing to pursue it until nearly two years later when they raised it, without any prior notice to Plaintiffs, in the November 15, 2023 pretrial conference with the Court. Dkt. 1714 at 8:7-25.

In the *nearly 20 months* since Defendants last mentioned this discovery, the parties engaged in extensive additional fact and expert discovery, including the Court allowing Defendants to take discovery regarding Dr. Halderman's work with CISA and its July 2022 advisory confirming his findings. Dkt. 1424 at 39:19-40:3. Defendants chose not to do that. The Court also allowed the parties to produce

10

supplemental expert reports in November 2022. Dkt. 1529. Defendants chose not to do that either. But they did depose Dr. Halderman again, on January 3, 2023. Dkt. 1564. At no point did Defendants pursue the requested discovery.[4]

C.  **Defendants reversed course and now demand even more**

Defendants represented to the Court that "the reason this arose is that [Defendants] noticed on [Plaintiffs'] recent exhibit list that there was, you know, equipment to be coming in." Dkt. 1714 at 9:6-8; *see also* Ex. 1 ("[W]hen Plaintiffs put the election equipment on their trial exhibit list recently, that brought this issue to light once again."). Defendants explained that "[i]f [Plaintiffs] are not planning on doing that kind of demonstration, then maybe it is not an issue." Dkt. 1714 at 9:9-11. Defendants have not claimed—and could not claim—any surprise about a possible live in-court demonstration given Plaintiffs did it with the DRE equipment in the September 2018 preliminary injunction hearing. Dkt. 307 at 76:19-81:22.

Nevertheless, to resolve the dispute, Plaintiffs offered to resolve Defendants' stated concern by proposing to remove the equipment at issue from the exhibit list and refrain from a live in-court demonstration, despite the substantial prejudice to

---

[4] Defendants' recent suggestion that they were "waiting on the Court" to address this issue is neither credible nor consistent with their admission that they were *waiting for trial*, per their persistent silence in *numerous* filings and conferences. The Court resolved their only request for relief (Dkt. 1246) in the January 27, 2022 conference, as they admit (Ex. 1). But they did not comply with the Court's directive before the February 15, 2022 expert discovery deadline and went silent for nearly two years.

11

Plaintiffs from forgoing such a helpful tutorial for the Court. Ex. 3. But Defendants abandoned their prior representation and demanded even more than they previously sought, including limiting any video demonstration only to the *very-preliminary-and-truncated* demonstration played in the September 2020 injunction hearing *and* to produce essentially the same discovery—including malware—for Dr. Halderman's 2020 demonstration. It is unclear just what Defendants are seeking since there are no live discovery requests before the Court.

## ARGUMENT

Defendants bear the high burden to establish good cause to reopen discovery at this very late stage, including by showing that they were *unable* to obtain the discovery at issue *despite their diligence*. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013). This is a critically important requirement to avoid exactly this situation, where a party chooses to sit silently for years in discovery and then proclaim some entirely foreseeable discovery "need" on the eve of trial. Courts routinely deny requests where the movant fails to show diligence in pursuing the discovery sought. *See, e.g., Olds v. Cracker Barrel Old Country Store, Inc.*, 2015 WL 13776588, at *2 (N.D. Ga. Apr. 2, 2015) (denying plaintiffs' motion to reopen discovery because they had not moved to compel and thus had not been diligent in pursuing discovery); *Robinson v. McNeese*, 2021 WL 232672, at *6 (M.D. Ga. Jan. 22, 2021) (finding lack of diligence where plaintiffs served requests

12

that opposing counsel ignored).

Defendants *unequivocally* fail to meet their burden. The many opportunities Defendants *chose to forgo* to pursue this discovery *for 2.5 years* is damning. For example, they could have (i) timely served proper requests in the four months between receiving Dr. Halderman's July 2021 report and the expert discovery deadline (*see* Dkt. 11 at 13); (ii) timely proposed the Court-ordered discovery protocol after the January 27, 2022 conference and *before* the February 15, 2022 expert discovery deadline; (iii) sought relief from the Court when they requested— and received—permission in July 2022 for discovery regarding Dr. Halderman's work with CISA concerning the same analyses at issue now; and (iv) pursued the discovery before the November 22, 2022 deadline for supplemental expert reports.

But Defendants did none of this, instead *choosing*—as they admit—to do *nothing* for some two years because they "did not need Dr. Halderman's discovery except for trial and no trial was imminent." Ex. 1. Defendants' admission is fatal to their requests, as parties are not free to forgo anticipated discovery *until trial becomes imminent*—that is the *opposite* of what is required. Recognizing this, they now argue, for the first time, that Plaintiffs were required to produce the requested discovery under Rule 26 without any requests from Defendants. Ex. 1. But even were this correct—and it is not—Defendants still would fail to meet the diligence requirement since receiving Plaintiffs' expert disclosures in *July 2021*.

Defendants' requests are improper for additional reasons that Plaintiffs previously briefed, which are incorporated here—including, *inter alia*, their failure to identify any missing facts or data owed under Rule 26 despite *two* depositions of Dr. Halderman; their own prior insistence that source code is not discoverable here; their inability to use the discovery at trial; and the extreme public risk of granting access to vote-stealing malware (which CISA, Dr. Gilbert, and MITRE did not need for their analyses) . Dkt. 1246 at 3-5. Defendants' argument during the meet-and-confer that they could use the discovery with their experts on "rebuttal" betrays their improper intentions to backdoor untimely expert analyses at trial. And their claim that they could use it on cross examination equally fails since they cannot examine a witness with non-public facts or evidence they did not timely disclose during discovery. Ex. 4. The trial-by-ambush they intend is improper. And even were the discovery proper, to devise and implement an appropriate protocol (that keeps the dangerous software in Dr. Halderman's possession under surveillance) would take weeks and significant resources Plaintiffs and Dr. Halderman simply do not have as they hurry to prepare for trial.[5] Defendants chose to do nothing for nearly two years, as they admit. They must live with that choice.

---

[5] The Court may recall Defendants proposed very restrictive limitations for Plaintiffs' analysis of the GEMS database used with the DREs—even though the database was publicly available. Defendants cannot in good faith propose less restrictive measures for analysis of confidential, highly sensitive vote-stealing software. Yet they have.

Respectfully submitted, this 27th day of November 2023.

/s/ *Vincent R. Russo*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
ROBBINS ALLOY BELINFANTE
LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

| | |
|---|---|
| */s/ David D. Cross* | */s/ Halsey G. Knapp, Jr.* |
| David D. Cross (*pro hac vice*) | Halsey G. Knapp, Jr. |
| Mary G. Kaiser (*pro hac vice*) | GA Bar No. 425320 |
| Matthaeus Martino-Weinhardt | Adam M. Sparks |
| (*pro hac vice*) | GA Bar No. 341578 |
| Ramsey Fisher (*pro hac vice*) | Jessica G. Cino |
| Aaron Scheinman (*pro hac vice*) | GA Bar No. 577837 |
| Benjamin Campbell (*pro hac vice*) | KREVOLIN & HORST, LLC |
| Wail Jihadi (*pro hac vice*) | 1201 West Peachtree Street, NW |
| Oluwasegun Joseph (*pro hac vice*) | Suite 3250 |
| MORRISON & FOERSTER LLP | Atlanta, GA 30309 |
| 2100 L Street, NW, Suite 900 | (404) 888-9700 |
| Washington, DC 20037 | hknapp@khlaw.com |
| (202) 887-1500 | |
| dcross@mofo.com | */s/ Christian G. Andreu-von Euw* |
| | Christian G. Andreu-von Euw |
| | (*pro hac vice*) |
| | THE BUSINESS LITIGATION GROUP, PC |
| | 150 Spear Street |
| | San Francisco, CA 94105 |
| | (415) 765-6633 |
| | christian@blgp.com |

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

18

*/s/ Bruce P. Brown*
Bruce P. Brown Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III Admitted Pro Hac Vice
(ECF No. 125)
ROBERT MCGUIRE LAW FIRM
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530


*/s/ Russell T. Abney*
Russell T. Abney
Georgia Bar No. 000875
WATTS GUERRA, LLP
4 Dominion Drive, Building 3
Suite 100
San Antonio, TX 78257
(404) 670-0355

*Counsel for Plaintiff Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for Plaintiffs William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DONNA CURLING, *et al.* *Plaintiffs*, v. BRAD RAFFENSPERGER, *et al.*, *Defendants*. | CIVIL ACTION FILE NO. 1:17-CV-2989-AT |

**CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

/s/ *Vincent R. Russo*
Vincent R. Russo