# EXHIBIT 9

The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF GEORGIA
 2                           ATLANTA DIVISION

 3

 4   DONNA CURLING, ET AL.,             :
                                        :
 5           PLAINTIFFS,                :
     vs.                                :   DOCKET NUMBER
 6                                      :   1:17-CV-2989-AT
     BRAD RAFFENSPERGER, ET AL.,        :
 7                                      :
             DEFENDANTS.                :
 8

 9

10         TRANSCRIPT OF BENCH TRIAL - VOLUME 7B PROCEEDINGS

11                BEFORE THE HONORABLE AMY TOTENBERG

12              UNITED STATES DISTRICT SENIOR JUDGE

13                         JANUARY 18, 2024

14

15

16

17

18

19

20

21    *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

22                    *TRANSCRIPT PRODUCED BY:*

23
     *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
24                                     *2394 UNITED STATES COURTHOUSE*
                                       *75 TED TURNER DRIVE, SOUTHWEST*
25                                     *ATLANTA, GEORGIA  30303*
                                       *(404) 215-1383*
```

```
1                THE COURT:  You're getting very soft.
2                MR. ANDREU-VON EUW:  Excuse me.
3                THE COURT:  That's all right.  I heard it, but just
4    warning.
5                Cybersecurity and forensics elements of election
6    security, as I understood what you were saying.
7                MR. ANDREU-VON EUW:  Dr. Halderman?
8                THE COURT:  Dr. Halderman, yes.
9                THE WITNESS:  Yes.
10               THE COURT:  Yes.  Okay.
11               And there was one thing you added?
12               MR. ANDREU-VON EUW:  Yes.  Within election security
13   system, that includes physical security.
14               THE COURT:  And do you agree with that,
15   Dr. Halderman?
16               THE WITNESS:  Yes.
17               THE COURT:  Thank you.
18                        VOIR DIRE EXAMINATION
19   BY MR. TYSON:
20   Q.   Good afternoon, Dr. Halderman.
21   A.   It is nice to see you again, Mr. Tyson.
22   Q.   Good to see you as well.  It is a little bit warmer in
23   Georgia than I think it was in Michigan last week when we
24   were -- or week before when we were together.
25        Dr. Halderman, do you have any specialized training in the
```

1   analysis of risks outside of the context of cybersecurity?
2   **A.**   No.  My training is in cybersecurity.
3   **Q.**   Do you have any specialized training regarding the
4   administration of elections in Georgia?
5   **A.**   No.  Although I've reviewed election training material for
6   elections in Georgia.
7   **Q.**   And in forming your opinions or the areas of discussion in
8   this case, did you rely on the functioning of the malware that
9   you designed in your expert capacity?
10  **A.**   Can you repeat the question?
11       I'm not sure I understood.
12  **Q.**   Certainly.  In forming the opinions, your expert opinions
13  in this case, was one of the things that you relied on the
14  malware that you designed and put on to the Dominion
15  ballot-marking devices?
16  **A.**   I would -- I would say no.  The malware is a -- the
17  malware is a way of confirming and demonstrating the results
18  that I relied on with my testing.
19       MR. TYSON:  So, Your Honor, at this time, we would
20  not object to Dr. Halderman testifying as an expert in
21  cybersecurity.  We would object to any expert testimony
22  regarding the administration of elections in Georgia.
23       And at this time, we would also renew our prior
24  objection based on Rule 26 for lack of disclosure regarding the
25  malware and the software involved in Dr. Halderman's opinions.

1       And as we discussed, we provided a sealed declaration
2  to you and plaintiffs' counsel furthering the basis for that.
3       We understand the Court has ruled previously on this
4  issue.  But for purposes of perfecting the record, we wanted to
5  renew our objection before Dr. Halderman began offering
6  opinions.
7       THE COURT:  All right.  I will note for the record
8  that I received your sealed additional memorandum only today,
9  and, as agreed, I was not going to look at it until -- unless
10 you were actually offering it formally.  So I have not, and I
11 can't really address that.
12      MR. CROSS:  Your Honor, just to respond to the
13 Rule 26 objection, couple of quick points.  One, that objection
14 was waived.  So in the pretrial order, we identified the voting
15 equipment as Exhibit 487.
16      Your Honor might recall that what got us back to the
17 issue of them needing access to some of Dr. Halderman's source
18 code -- or to his source code, I guess, in general, was the
19 idea that when they saw that Exhibit 487 was there with the
20 equipment, they said, oh, it looks like you're going to do a
21 demonstration in court.  We said, yes, that is the plan.  They
22 said that's the reason they suddenly needed access to the
23 source code.
24      They do not have a Rule 26 objection to Exhibit 487,
25 even though they knew it was coming in for a demonstration, so

1  the objection is waived, first and foremost, Your Honor.
2           I'll also just note, Your Honor, of course, recalls
3  we also told them again on January 9th when we were going to do
4  a demonstration with Mr. Schoenberg, we were going to do this.
5  There was no Rule 26 objection or any objection, as I recall,
6  to Mr. -- Dr. Halderman doing a demonstration.
7           Your Honor may recall we learned about a case from
8  them just this morning.  State's counsel left out some
9  important parts of that decision, Your Honor.
10          First and foremost, the Court there, while it does
11 discuss about --
12          THE COURT:  What is the name --
13          MR. CROSS:  Oh, I'm sorry.
14          THE COURT:  For the record, can you tell us the name
15 of the --
16          MR. CROSS:  Yes, Your Honor.
17          This was the case Mr. Tyson cited, *Estate of Thompson
18 v. Kawasaki Heavy Industries*, and the citation is -- looks like
19 291 F.R.D. 297, and it is out of the District of Iowa in March
20 of 2013.
21          What Mr. Tyson did not share this morning is that the
22 court, over the objection that the demonstrative for expert
23 purposes was untimely, allowed the demonstrative to go in.  To
24 the extent there was even an issue, it was justified or
25 harmless.

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

    I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 246 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

    In testimony whereof, I hereunto set my hand on this, the 18th day of January, 2024.

_____
SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT