# EXHIBIT 12

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 2 of 17

In re SFPP Right-of–Way Claims, Not Reported in Fed. Supp. (2017)

> KeyCite Yellow Flag - Negative Treatment
> Distinguished by [Walker v. Life Insurance Co. of the Southwest,](#) C.D.Cal., December 14, 2018

2017 WL 2378363
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

IN RE SFPP RIGHT-OF–WAY CLAIMS

Case No. SACV 15–00718 JVS (DFMx)
|
SACV 15–00986 JVS (DFMx),
SACV 15–01362 JVS (DFMx)
|
CV 15–07492 JVS(DFMx)
|
Filed 05/23/2017

**Attorneys and Law Firms**

[Elizabeth A. McCulley](#), Pro Hac Vice, [Thomas S. Stewart](#), Pro Hac Vice, Stewart Wald and McCulley LLC, [Barrett J. Vahle](#), Pro Hac Vice, [Ethan M. Lange](#), Pro Hac Vice, [Norman E. Siegel](#), Pro Hac Vice, [Ethan M. Lange](#), [Norman E. Siegel](#), Stueve Siegel Hanson LLP, [Angela M. Higgins](#), Pro Hac Vice, [John W. Cowden](#), Pro Hac Vice, Baker Sterchi Cowden and Rice LLC, [Andrew D. Carpenter](#), [David Brenton Dwerlkotte](#), Pro Hac Vice, [Joseph M. Rebein](#), Shook Hardy and Bacon LLP, Kansas City, MO, [Jason S. Hartley](#), Stueve Siegel Hanson LLP, [Catherine Joseph O'Connor](#), [M. Ray Hartman, III](#), [Steven M. Strauss](#), Cooley LLP, [Summer J. Wynn](#), Cooley Godward Kronish, San Diego, CA, [Steven M. Wald](#), Pro Hac Vice, Stewart Wald and McCulley LLC, [John R. Sears](#), Pro Hac Vice, Baker Sterchi Cowden and Rice LLC, St. Louis, MO, [Bradley K. King](#), [Robert Ahdoot](#), [Theodore W. Maya](#), [Tina Wolfson](#), Ahdoot and Wolfson PC, West Hollywood, CA, [Andrew G. Giacomini](#), [John T. Cu](#), Hanson Bridgett LLP, [Tammy B. Webb](#), [John K. Sherk, III](#), Shook Hardy and Bacon LLP, San Francisco, CA, [Francis A. Bottini, Jr.](#), Bottini and Bottini Inc, La Jolla, CA, [Naoki S. Kaneko](#), Shook Hardy and Bacon LLP, Irvine, CA, for In re SFPP Right-of–Way Claims.

**Proceedings: (IN CHAMBERS) ORDER : DENYING Plaintiff's Motion for Class Certification (Dkt. No 235); DENYING Plaintiff's Motion to Strike Expert Kelly Melle Response to Opposition to Motion (Dkt. No. 251); DENYING Defendant Union Pacific Railroad Company's Motion to Exclude Cindi Straup (Dkt. No. 241); and GRANTING Kinder Morgan Defendants' Motion to Exclude Expert C. David Matthews (Dkt. No. 243).**

[James V. Selna](#), United States District Judge

 **\*1** Before the Court are four motions: one motion for class certification and three related Daubert motions.

First, Plaintiffs Martin and Susan Wells, as trustees of the Martin and Susan Wells Revocable Trust, and Sandra L. Hinshaw, as trustee of the Sandra L. Hinshaw Living Trust (collectively, "Plaintiffs") moved for class certification. Mot., Docket No. 235. Defendants Union Pacific Railroad Company ("Union Pacific") and Kinder Morgan G.P. Inc., Kinder Morgan L.P. "D", and SFPP L.P. (collectively, "Kinder Morgan") opposed. Docket Nos. 242 ("Union Pacific Opp'n"), 245. ("Kinder Morgan Opp'n"). Plaintiffs replied. Reply, Docket No. 255. [1]

For the following reasons, the Court **denies** the motion.

Second, Union Pacific moved to exclude Plaintiffs' expert Cindi Straup ("Straup"). Docket No. 241. Kinder Morgan joined the motion. Docket No. 244. Plaintiffs opposed. Docket No. 252. Union Pacific replied. Docket No. 258.

For the following reasons, the Court **denies** the motion.

Third, Kinder Morgan moved to exclude Plaintiffs' expert C David Matthews ("Matthews"). Docket No. 243. Union Pacific joined the motion. Docket No. 246. Plaintiffs opposed. Docket No. 253. Kinder Morgan replied. Docket No. 256.

For the following reasons, the Court **grants** the motion.

Fourth, Plaintiffs moved to strike the declaration of Kinder Morgan's expert, Kelly Melle ("Melle"). Docket No. 251. Kinder Morgan opposed. Docket No. 254. Plaintiffs replied. Docket No. 257.

For the following reasons, the Court **denies** the motion.

For the following reasons, the Court **denies** the motion for class certification. It **denies** Union Pacific's motion to exclude Ms. Straup and Plaintiffs' motion to exclude Mr. Melle. The Court **grants** Kinder Morgan's motion to exclude Mr. Matthews.

## BACKGROUND

This case's facts are well-known to the parties. The following background is based on the Consolidated Complaint and is therefore based solely on allegations.

The Wells Trust owns land in Riverside County and San Bernardino County. Consol. Compl. ¶ 5, Exs. A–B. In Riverside County, the land is "lying Northeasterly of the Northeasterly line of the 200 foot right-of-way of the Southern Pacific Railroad company." Id. Ex. A. In San Bernardino County, the land is "lying Northeasterly of the right of way of the Southern Pacific Railroad." Id. Ex. B.

The Hinshaw Trust owns land in San Bernardino County. Consol. Compl. ¶ 6. That land adjoins Union Pacific's right-of-way. Id. Additionally, the Hinshaw Trust formerly owned land in San Bernardino adjoining Union Pacific's right-of-way. Id.

Plaintiffs are successors in title to land that was once public land through which Union Pacific's rights-of-way now pass. Id. ¶ 21.

Union Pacific operates a railroad running tens of thousands of miles. Id. ¶ 22. Union Pacific's predecessor acquired its right-of-way easement to operate this railroad by 19th century Congressional acts and by private grants. Id. ¶¶ 15–23.

*2 Beginning in the 1950s, Union Pacific's predecessor constructed a pipeline system throughout the Southwest (including in California), and over half of that pipeline runs beneath Union Pacific's right-of-way. Id. ¶¶ 24, 26. Union Pacific and its predecessor purported to lease easements to this pipeline system and related real property interests to Kinder Morgan and its predecessors. Id. ¶¶ 28, 37–39.

Beginning in August 1994, Union Pacific leased access to this pipeline system to Kinder Morgan with rents based on court judgments determining the fair market value for the purported easements. Id. ¶¶ 40–43. But on Kinder Morgan's appeal from one such judgment, the California Court of Appeals allegedly found that Union Pacific could not collect rent for Kinder Morgan's continued use of the subsurface of Union Pacific's right-of-way. Id. ¶¶ 44–46. The court held that only fee owners of the right-of-way could grant the rights Kinder Morgan needed to operate the pipeline. Id.

Plaintiffs allege that they are among those fee owners and represent a class of similarly-situated fee owners. Id. ¶¶ 51–53, 69. They now seek to certify the following class:

> [A]ll landowners who, from January 1, 1983 to the date of class certification, own or have owned land in fee adjoining and underlying the railroad right-of-way granted under the Land Grants, or through condemnation, under which the pipeline is located within the State of California.

Docket No. 235 at 1. Plaintiffs further ask the Court to certify the following Current Owner Sub–Class:

> [A]ll landowners who, as of the date of class certification, own land in fee adjoining and underlying the railroad right-of-way granted under the Land Grants, or through condemnation, under which the pipeline is located within the State of California.

Id. Alternatively, Plaintiffs ask the Court to certify for class treatment common questions. Id. Finally Plaintiffs ask the Court to appoint Sandra L. Hinshaw, Martin Wells, and Susan Wells, as class representatives, and appoint Norman E. Siegel and Thomas S. Stewart as Class Counsel. Id.

## LEGAL STANDARD

A motion for class certification involves a two-part analysis. First, the plaintiffs must demonstrate that the proposed class satisfies Rule 23(a)'s requirements: (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the class interest. Fed. R. Civ. P. 23(a). The plaintiffs may not rest on mere allegations, but must provide facts to satisfy these requirements. Doninger

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 4 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) (citing Gillibeau v. Richmond, 417 F.2d 426, 432 (9th Cir. 1969)).

Second, the plaintiffs must meet the requirements for at least one of Rule 23(b)'s subsections. Under Rule 23(b)(1), plaintiffs may certify a class if there is either (1) a risk of prejudice from separate actions establishing incompatible standards of conduct or (2) judgments in individual lawsuits would adversely affect the rights of other members of the class. Under Rule 23(b)(2), a plaintiff may maintain a class where the defendant has acted in a manner applicable to the entire class, making injunctive or declaratory relief appropriate. Finally, under Rule 23(b)(3), a plaintiff may certify a class only if "questions of law or fact common to class members *predominate* over any questions affecting only individual members," and if "a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

**\*3** The plaintiffs must show that the class satisfies Rule 23. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (2001). A district court must rigorously analyze whether the plaintiffs have met Rule 23's prerequisites. Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504–05 (2005).

## ANALYSIS

### I. EVIDENTIARY MOTIONS

On a motion for class certification, courts apply Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993) to expert testimony. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011). Expert testimony is admissible if the party offering such evidence shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert, 509 U.S. at 590–91. Federal Rule of Evidence 702 permits expert testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A expert can be qualified "by knowledge, skill, experience, training, or education." Id.

While the parties agree that district courts apply Daubert to class certification, they disagree on the precise scope of that analysis. Defendants argue that a full-fledged analysis is necessary, while Plaintiffs argue the Court should only apply a "tailored approach." Docket Nos. 253 at 3, 256 at 2.

The confusion comes from the Supreme Court's statement in Dukes: "the district court concluded that Daubert did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so ...." 564 U.S. at 354. Initially, many district courts assumed that this statement required them to conduct a full-fledged Daubert inquiry at class certification. Reply at 2 (citing Cholakyan v. Mercedes–Benz, USA, LLC, 281 F.R.D. 534, 541 (C.D. Cal. 2012); Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 514 (C.D. Cal. 2012) Shiferaw v. Sunrise Senior Living Mgmt., Inc., No. LACV1302171JAKPLAX, 2014 WL 12585796, at \*25 (C.D. Cal. June 11, 2014), on reconsideration in part, No. LACV1302171JAKPLAX, 2016 WL 6571270 (C.D. Cal. Mar. 21, 2016)). But Tait v. BSH Home Appliances Corp., after exhaustively analyzing Dukes, Ellis, and extra-circuit precedent, determined that Dukes does not require a complete Daubert analysis and that Ellis suggests district courts only have to apply a tailored approach. 289 F.R.D. 466, 490–95 (C.D. Cal. 2012). Since Tait, other Ninth Circuit district courts have adopted its analysis. See, e.g., Senne v. Kansas City Royals Baseball Corp., 315 F.R.D. 523, 587 (N.D. Cal. 2016), on reconsideration in part, No. 14–CV–00608–JCS, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017); Spann v. J.C. Penney Corp., 307 F.R.D. 508, 516 (C.D. Cal. 2015), modified, 314 F.R.D. 312 (C.D. Cal. 2016). The Court agrees with Tait's discussion of the standard and applies it as set forth below.

**\*4** At class certification, district courts do not have to conduct a full Daubert analysis. Tait, 289 F.R.D. at 495. Instead, "district courts must conduct an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance." Id. For this tailored analysis, district courts apply Daubert's relevance and reliability requirements as "useful guideposts but the court[s] retain[ ] discretion in determining how to test reliability as well as which expert's testimony is both relevant and reliable." Id. (quoting Ellis v. Costco Wholesale Corp., 240 F.R.D. 627, 635 (N.D. Cal. 2007 affirmed on this point by Ellis, 657

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 5 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

F.3d at 982 (holding the district court "correctly applied the evidentiary standard set forth in Daubert"). But courts still must "resolve any factual disputes necessary to determine" whether the putative class satisfies Rule 23. Id. (quoting Ellis, 657 F.3d at 982.

**A. Union Pacific's Motion to Exclude Plaintiffs' Expert Cindi Straup**

Union Pacific seeks to exclude Ms. Straup as an expert because "(1) she lacks the qualifications needed to reach her opinions, (2) her opinions are the product of unreliable methods applied to insufficient data, and (3) her opinions will not help the trier of fact." Docket No. 241–1 at 2.

Plaintiffs hired Ms. Straup to identify parcels of land adjacent to those segments of Union Pacific's right-of-way beneath which a Kinder Morgan pipeline exists. Mot., Ex. 14 ("Straup Report") at 2. Ms. Straup used a multi-step process: (1) identify the Union Pacific right-of-way at issue; (2) identify a master list of landowner parcels adjacent to either side of the right-of-way; (3) label the right-of-way segments according to the particular source of conveyance; (4) identify which side of the centerline the Kinder Morgan pipelines lay on; (5) identify parcels that are adjacent to the same side of the right-of-way of center as where a pipeline is buried; (6) identify the owner(s)' of these parcels via county tax assessors' data. Id. at 2–12.

*1) Ms. Straup is sufficiently qualified.*

First, Union Pacific argues that Ms. Straup lacks the qualifications "needed to unearth (1) the location of parcels of land adjoining the railroad right of way under which the pipeline is located and (2) the legal owners of those parcels." Docket No. 241–1 at 2. In particular, Union Pacific argues that Ms. Straup lacks a land surveyor's license, which California law requires to determine property line boundaries. Id. at 3. It further argues that she lacks experience in title examination. Id. Plaintiffs argue that Ms. Straup's qualifications as land surveyor or title expert are irrelevant because she serves as a mapping expert. Docket No. 252 at 4.

The Court rejects Union Pacific's challenge. Ms. Straup is a well-qualified mapping expert. See Straup Report, Addendum 1 (Ms. Straup's CV). Although title examination may be necessary to determine legal ownership of the land, such challenges go to whether Ms. Straup's methodology can support the Plaintiffs' certification arguments—not her qualifications.

*2) Ms. Straup's data is sufficiently reliable.*

Second, Union Pacific argues that Ms. Straup's methodology is unreliable because none of her secondary sources—county assessors' GIS data, the Southern Pacific valuation maps, and the Kinder Morgan alignment sheets—can substitute for a land title survey. Docket No. 241–1 at 7. Plaintiffs argue that counties throughout California regularly use such data and that such data is reliable. Docket No. 252 at 5.

The Court finds that Ms. Straup's data sources are sufficiently reliable. Union Pacific does not contest that California counties use the GIS data. Reply at 2–3. Union Pacific argues that counties do not generally use this data to determine property rights. Reply at 3. But that goes towards the weight of Ms. Straup's testimony—to survive a Daubert challenge it is sufficient that Ms. Straup's data and method simply produce a consistent result. Furthermore, Ms. Straup suggests that the GIS data can be cross-checked via other data. Straup Report ¶ 3.d. Union Pacific also argues against Ms. Straup's use of the Southern Pacific valuation maps, which the railroad prepared for the Interstate Railroad Commission ("ICC") to evaluate railroad properties. Id. ¶ 4.b. Union Pacific relies on its own expert report to argue that these maps "are only a general indicator of the location of the pipeline and do not identify its actual location." Docket No. 241–1 at 6. But this again goes to the weight of the testimony. Moreover, Ms. Straup uses multiple sources to reduce the margin of error.

*3) Ms. Straup's report is helpful to the trier of fact.*

**\*5** Third, Union Pacific argues that Ms. Straup's method will not help the trier of fact because it does not identify the current owners of each parcel. Docket No. 242–1 at 8–10. Union Pacific argues that the Ms. Straup's method is useless because a "full title search is the only way to reliably determine the legal ownership of parcels." Docket No. 241–7 at 8. This bleeds into the Court's later inquiries; even if a title search is the best practice, that does not disqualify Ms. Straup's method.

In sum, the Court **denies** Union Pacific's motion to strike Ms. Straup's declaration.

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 6 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

**B. Kinder Morgan's Motion to Exclude Plaintiffs' Expert David C. Matthews**

A trial court has a "gatekeeping" obligation to admit expert testimony only when it is both reliable and relevant. Daubert, 509 U.S. at 589; Kumho Tire Co., 526 U.S. at 147–149. "In Daubert, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002). The Supreme Court later held that "a trial court may consider one or more" of the Daubert factors in determining the reliability of nonscientific expert testimony. Kumho Tire Co., 526 U.S. at 141 (emphasis in original). Furthermore, the court has "broad latitude" to decide how to determine the reliability of the testimony and whether the testimony is in fact reliable. Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1064 (9th Cir. 2002); see Kumho Tire Co., 526 U.S. at 141. The "test of reliability is flexible, and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Id. (internal citations omitted).

Here, Mr. Matthews bases his report off of a 2004 appraisal, which was authored by Kinder Morgan's expert (Richard Marchitelli ("Marchitelli")) in the rent value litigation between Union Pacific and Kinder Morgan. Docket No. 243, Ex. 1 ("Matthews Report") ¶¶ 1, 2. After adjustments and his own investigations, Mr. Matthews determined that this 2004 appraisal represents the value of the proposed class's fee interest in the California pipeline easement. Id.

The 2004 appraisal, and thus Mr. Matthews' Report, rely on the Across the Fence valuation method ("ATF Method"). Docket No. 243, Ex. 2 ("Marchitelli Report") at 5. The ATF method values complete transportation "corridors." Id. at 8; Matthews Report at 25. It consists of four elements:

> (1) the total value of the land occupied by the easement within the transportation corridor, determined by examining the value of unimproved properties "across the fence" from the corridor [ (the "ATF Value") ];
>
> (2) the enhancement factor, or corridor factor, if any, which is applied on the theory that long, narrow corridors containing railroad tracks are worth more than the land hypothetically "across the fence" that was used to determine land value;
>
> (3) the easement percentage of fee, or use factor, which is the portion of the fee interest that is occupied or affected by the particular easement within the corridor; and
>
> (4) the rental rate of return reflecting the fair market rate of return on unimproved land.

*6 Id. at 8–9 (alterations to paragraph format). These elements are then multiplied together.[2] Id. at 9.

Kinder Morgan challenges Mr. Matthews' report on the basis that the 2004 appraisal does not provide a reliable basis to appraise the putative class members' interests. Plaintiffs argue that the ATF Method was appropriate in the underlying action; therefore it is appropriate now. Docket No. 253 at 6.

The Court finds that Mr. Matthews' method is unreliable because (1) significant differences exist between the rent dispute and the dispute here, (2) Mr. Matthews does not sufficiently account for the twelve-year time-gap between the 2004 appraisal and his appraisal, (3) Mr. Matthews admits that he lacks proficiency in this methodology, and (4) he developed this methodology for litigation.[3]

First, the 2004 appraisal concerned completely different property than the dispute here. Mr. Matthews admits that the method's primary purpose is to value corridors, yet he does not address that there is no corridor here.[4] See Matthews Report at 25. While the 2004 appraisal involved a lengthy transportation corridor, this case involves hundreds of separate parcels. These parcels also cannot provide the administrative benefit of dealing with a single landowner. Therefore, the method cannot value the individual easements at issue here because it would improperly value the parcels as one aggregate unit. Marchitteli Report at 9–11. This would confer a greater value on the parcels than they would receive in separate transactions. Id. As a result, other courts have rejected an aggregate-valuation method. See, e.g., Calhoun v. Kansas City S., No. 3–03CV1511, 2004 WL 7321942, at *3 (W.D. La. June 10, 2004), report and recommendation adopted sub nom. Calhoun v. Southern, No. 3–03CV1511, 2004 WL 7321943 (W.D. La. July 12, 2004); Hebert v. Doyle Land Servs., Inc., No. 2:00 CV 1851, 2002 WL 35633227, at *2 (W.D. La. Mar. 5, 2002), report and recommendation adopted, No. CV 00–1851, 2002 WL 35633226 (W.D. La.

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 7 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

Apr. 24, 2002); Corley v. Entergy Corp., No. 1:98–CV–2006, 2004 WL 5627176, at *3 (E.D. Tex. Apr. 14, 2004).

Second, Mr. Matthews does not adjust the 2004 appraisal for 12 years of market changes. Although Mr. Matthews updates the ATF value, he does not explain why no update is necessary for the other three factors. Matthews Report ¶¶ 44, 66. This is particularly concerning because the California Court of Appeals found that both the use and corridor factors shifted over time. Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc., 231 Cal. App. 4th 134, 183–85 (2014).

 *7  Third Mr. Matthews' method has never been used before and lacks any independent evidence of reliability. At his deposition, Mr. Matthews testified that he could not recall any previous times he had based his appraisal off of a decade-old appraisal. Docket No. 243–6. Ex. 4 ("Matthews Depo.") at 46–48. Even more problematically, Mr. Matthews testified that he has never performed a reverse ATF analysis. Id. 171:14–172:13.

Although Mr. Matthews stated that the methodology itself is common, he admitted that he was unique among appraisers in applying it to ATF. Id. 173:10–174:12. No matter how common the basic principle, Mr. Matthews' application to this type of valuation is unique and untested. Yet, despite his lack of past experience, Mr. Matthews could not identify any peer-reviewed literature discussing a reverse ATF analysis. Id. 172:25–173:10; 173:24–174:5. Likewise, Mr. Marchitelli confirms that his methodology was never intended to value adjoining properties and cannot be reversed to do so. Marchitteli Rebuttal Report at 7, 9.

Fourth, Mr. Matthews developed this method specifically for litigation. See Daubert, 43 F.3d at 1317 ("[I]n determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office."). While the term "junk science" may be unduly pejorative, the fact is that Mr. Matthews invented this methodology for this case. See Clausen v. M/V NEW CARISSA, 339 F.3d 1049, 1056 (9th Cir. 2003) (opinions prepared for litigation are unreliable, particularly absent any proof of peer review or publication); Feduniak v. Old Republic Nat'l Title Co., No. 13–CV–02060–BLF, 2015 WL 1969369, at *4 (N.D. Cal. May 1, 2015) (fact that new property valuation method was created for purposes of litigation undermined court's confidence in its reliability). And he has not offered any other objective, verifiable evidence that the testimony is based on scientifically valid principles. The indices of peer review or publication are absent.

At the hearing, Plaintiffs stressed that these criticisms impact the testimony's weight, not its admissibility. But even under class certification's tailored Daubert standard, the Court may only admit testimony that satisfies a threshold of reliability. Here, because Mr. Matthews' method "has never been used to value property before and likely never will be used again" Feduniak, 2015 WL 1969369, at *5, it is not sufficiently reliable under Rule 702.

Therefore, even under the tailored Daubert standard, Mr. Matthews' opinion fails because it is not sufficiently reliable. The Court **grants** Kinder Morgan's motion.

### C. Plaintiffs' Motion to Strike Kinder Morgan Expert Kelly Melle

Plaintiffs moved to strike Kinder Morgan's Declaration of Kelly Melle ("Melle Declaration") and its attached exhibits (Docket Nos. 245–32, 245–313, 245–30) on the basis that Kinder Morgan did not provide his timely expert disclosures under Federal Rule of Civil Procedure 26(a)(2). Docket No. 242 at 1. Specifically, Plaintiffs argue that the Court's September 20, 2016, order required the parties to serve expert disclosures by November 28, 2016. Id. Plaintiffs argue that the Court should strike Mr. Melle's declaration because Kinder Morgan did not provide any such disclosures. Id. In response, Kinder Morgan argues that Mr. Melle is not an expert witness and that his declaration merely authenticates two exhibits that demonstrate existing expert opinion in the record. Docket No. 254 at 1.

 *8  Mr. Melle's declaration explains that Kinder Morgan asked him to "map and assess a sample portion of Union Pacific's right-of-way in terms of the different methods by which Union Pacific purports to have obtained its property interests in the right-of-way." Melle Decl. ¶ 3. Exhibit G depicts Union Pacific's parcels containing the right-of-way and the pipeline's location in the right-of-way. Id. ¶ 10. Exhibit V "depicts in general terms the beginning and ending points of the pipeline segment adjacent to Hinshaw's property, as it was identified and valued by Kinder Morgan's appraisal expert, Richard Marchitelli, during the 2004 Rent Litigation." Id. ¶ 12. Kinder Morgan states that these two exhibits support the opinions already proffered by its title expert, Lawrence Lacombe ("Lacombe"), and its valuation expert, Mr. Marchitelli. Docket No. 254 at 2.

Federal Rule of Civil Procedure 26(a)(2)(B) provides that parties must disclose their expert witnesses' identities, along with written reports that "must contain ... any exhibits that will be used to summarize or support them ...." But here, Mr. Melle did not offer expert testimony. Instead, he created demonstrative exhibits to support Kinder Morgan's experts' analysis. This does not fall within Rule 26(a)(2)(B)'s scope.

In sum, the Court **denies** the motion to strike these declarations.

## II. RULE 23(a) PREREQUISITES

The Court finds that Plaintiffs satisfy Rule 23's numerosity and commonality requirements, but cannot satisfy Rule 23's typicality and adequacy requirements.

### A. Numerosity

Rule 23(a)(1) requires that a class be sufficiently numerous such that it would be impracticable to join all members individually. To determine whether a proposed class is sufficiently numerous, a court must examine the specific facts because the numerosity requirement "imposes no absolute limitations." Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 330 (1980).

The Court notes that Judge Campbell recently denied class certification in the related Arizona litigation. Valenzuela v. Union Pac. R.R. Co., 2017 WL 679095, at *1 (D. Ariz. Feb. 21, 2017) ("Valenzuela"), vacated in part pending consideration of Rule 23(c)(4) certification (Mar. 3, 2017). Yet Judge Campbell still found the numerosity requirement satisfied because the evidence suggested "that there are several hundred parcels of property adjacent to portions of the right-of-way acquired through the 1875 Act and containing the pipeline." Id. at *3.

Here, Plaintiffs argue that the class comprises "at least" several hundred adjacent landowners. Mot. at 13. In support, Plaintiffs submit an attorney declaration based on a review of valuation maps, alignment sheets, taxlot shapefiles, assessor ownership information, and Kinder Morgan's Geographic Information System ("GIS") data. Mot., Ex. B, Decl. of Michael Smith ("Smith Decl.") ¶¶ 8–11. The declaration states that there are 100 parcels and landowners "adjacent to Union Pacific railroad right of way acquired pursuant to condemnation proceedings on the same side of the center line of the right of way where a Kinder Morgan petroleum pipeline is located ..." Id. ¶¶ 11–12. The declaration also states that there are at least several hundred parcels and landowners "that are adjacent to Union Pacific railroad right of way acquired pursuant to one or more of the Land Grants on the same side of the center line of the right of way where a Kinder Morgan petroleum pipeline is located." Id. ¶¶ 11, 13.

Kinder Morgan argues that Plaintiffs have not identified the number of landowners who "own under right-of-way acquired by pre–1871 or 1875 Act, or condemnation ...." Kinder Morgan Opp'n at 15. Therefore, they cannot satisfy numerosity. Id. Union Pacific does not contest numerosity. Union Pacific Opp'n.

The Court finds that the proposed class satisfies the numerosity requirement. Although Plaintiffs have not precisely identified the number and makeup of proposed class members, that inquiry goes more towards typicality. At this stage, it is sufficient that Plaintiffs have shown the proposed class likely includes several hundred members. See In re Badger Mountain Irrigation Dist. Sec. Litig., 143 F.R.D. 693, 696 (W.D. Wash. 1992) ("A reasonable estimate of the number of purported class members satisfies the numerosity requirement ...").

### B. Commonality

 *9 Rule 23(a)(2) requires some questions of law or fact common to the class. A common question must be "capable of classwide resolution." Dukes, 564 U.S. at 350. This means that "the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id. Furthermore, mere pleading of common issues is insufficient—the moving party must show proof that a common question exists. Id. at 351, 359.

Here, Plaintiffs have proposed eight common issues:

- whether Union Pacific lacks sufficient property interests in the subsurface of its right-of-way to convey property rights in that subsurface to Kinder Morgan;

- whether the commercial pipeline underneath Union Pacific's right-of-way is a railroad purpose under the federal land grants or condemnation;

- whether Defendants knew or had reason to know that Union Pacific did not possess a sufficient ownership interest in the subsurface underneath its right-of-way

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 9 of 17

- to grant easements or other property rights to Kinder Morgan;

- whether Union Pacific attempted to grant easements in the subsurface of its right-of-way to Kinder Morgan;

- whether Union Pacific collected rent from Kinder Morgan for these easements;

- whether Union Pacific lacks property interests in the subsurface of its right-of-way to convey property rights in the subsurface beneath its right-of-way to Kinder Morgan;

- whether Defendants concealed their actions;

- whether Defendants acted with malice and reckless indifference to the rights of Plaintiffs and the members of the Class; and

- whether Defendants have profited or been unjustly enriched by their collection of rents or profits derived from property owned by Plaintiffs and members of the Class.

Mot. at 13–14.

Union Pacific does not challenge commonality. Union Pacific Opp'n. Kinder Morgan argues that courts routinely find commonality absent in right-of-way cases because significant factual and legal variations exist as to (1) the extent of the railroads' rights in the disputed right-of-way and (2) the putative class members' rights. Kinder Morgan Opp'n at 16.

In analyzing the same proposed common issues, Judge Campbell found the commonality requirement satisfied with respect to the first three questions. Valenzuela, 2017 WL 679095, at *4. He also found that Defendants did not dispute the next two questions—whether Union Pacific attempted to grant easements in the subsurface to Kinder Morgan, and whether Union Pacific collected rent for Kinder Morgan. Id. at *3 n.4. He found that the last three questions required class-member-specific inquiries into Defendants' relationships with particular class members. Id.

The Court agrees with Judge Campbell that Plaintiffs' first three proposed issues—whether Union Pacific acquired rights in the subsurface, whether Kinder Morgan's pipeline fulfills a railroad purposes, and whether Union Pacific's knew its rights were limited—are common issues capable of class-wide resolution. These threshold issues must be answered in connection with every class member's claims; therefore, class resolution would "generate common answers apt to drive the resolution of the litigation." Dukes, 564 U.S. at 350 (emphasis and internal quotations omitted). Furthermore, Plaintiffs have presented significant proof that these issues exist. The California Court of Appeals decision raises questions about the first two issues. See Union Pac. R.R., 231 Cal. App. 4th at 209–10. And Plaintiffs have submitted Union Pacific letters that show Union Pacific may have known that it lacked the right to convey subsurface rights to Kinder Morgan. See Mot., Exs. 4–7.

*10 Therefore, the Court finds that commonality is met.

**C. Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To meet the typicality requirement, the plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984. Claims must be "reasonably co-extensive with those of absent class members" but do not need to "be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiffs may satisfy their burden through pleadings, affidavits, or other evidence. See Lewis v. First Am. Title Ins. Co., 265 F.R.D. 536, 556 (D. Idaho 2010).

Here, Defendants argue that numerous individualized inquiries mean that neither the Wells nor Ms. Hinshaw are typical plaintiffs. Each one has unique title histories, levels of notice, and susceptibility to affirmative defenses. Kinder Morgan Opp'n at 16–19; Union Pacific Opp'n at 3–7. The Court addresses the chain-of-title argument here, but discusses notice and affirmative-defense in its Rule 23(b)(3) analysis.

Defendants argue that the Wells are atypical plaintiffs because their deed cuts off any interest in the right-of-way and a prior owner conveyed any interest in the right-of-way to Union Pacific via a quitclaim deed. First, they argue that the Wells' deed "cuts off any interest in the right-of-way." Kinder Morgan Opp'n at 18. They rely on deed language that their properties lie "northeasterly" of the right-of-way. Kinder Morgan Opp'n, Ex. F. ("Lacombe Report") at 24, Ex. 9; see also Warden v. S. Pasadena Realty & Imp. Co., 178 Cal. 440, 442, 174 P. 26 (1918) (deed that conveyed property "along the southerly line" of a right of way did not convey to center).

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

Case 1:17-cv-02989-AT    Document 1816-12    Filed 02/06/24    Page 10 of 17

Second, one of the Wells' predecessors in title conveyed land to the railroad via a quitclaim deed. Id. at 24, Ex. 11. The deed's language suggests that the Wells' predecessor gave up any title it may have had to the right-of-way. [5] Although Mr. Wells testified that he believed the quitclaim deed was invalid, his subjective, lay assessment cannot overcome the evidence. See Kinder Morgan Opp'n, Ex. I, Deposition of Martin Wells ("Wells Depo.") at 266–68. Furthermore, such dispute strengthens the argument against typicality because it shows that the Wells are unique among putative class members. If this quitclaim deed is valid—an assertion that Plaintiffs do not challenge—then the Wells never acquired any interest in the land underlying the right-of-way.

**\*11** Defendants similarly argue that Ms. Hinshaw's claims are atypical because "her property originates from a grant that conveyed only an interest in the land outside the right-of-way." Kinder Morgan Opp'n at 18 (citing Lacombe Report at 25–26). Defendants' expert argues that the April 4, 1879, grant to Ms. Hinshaw's predecessor did not include any interest within the right-of-way. Lacombe Report at 25 (citing Lacombe Report, Ex. 12). The Court does not decide this argument, but it does note that whether Ms. Hinshaw's predecessor received any interest in the right-of-way is unique to her claims.

In response, Plaintiffs argue that Defendants' ability to raise defenses does not defeat typicality or deprive the Court of jurisdiction. Reply at 11–12. But these title issues are more than defenses—they are prerequisites to class membership, which requires that class members "own land in fee adjoining and underlying the railroad right-of-way ...." Docket No. 235 at 1; see also Kirkman v. N. Carolina R. Co., 220 F.R.D. 49, 53 (M.D.N.C. 2004) (in railroad right-of-way case, no typicality when "each potential class member would have to establish individual property rights"). Defendants' evidence suggests that Plaintiffs cannot show that the Wells and Ms. Hinshaw "have the same or similar injury" as other class members. See Ellis 657 F.3d at 984.

Furthermore, similar cases have declared plaintiffs' claims atypical of the proposed class. Most recently, in the related Arizona litigation, Judge Campbell found that "it is likely that many class members will face unique facts" that Plaintiffs' "equally unique circumstances" would not reflect. Valenzuela, 2017 WL 679095, at \*8. Other right-of-way cases have likewise determined that "the necessary differences between the proof of the various class members' claims so overwhelm the common issues as to make it unlikely that any individual or group of individuals could have claims typical of the class." Sustainable Forest, 2005 WL 8146267, at \*8 (internal quotations omitted); see also Kirkman, 220 F.R.D. at 53 ("individual property interest questions" defeated typicality, particularly in the absence of evidence that the named plaintiff's "deed [was] similar to the deeds held by other potential class members, or that there [was] a limited range of possible deed language"); Chambers v. MCI Worldcom Network Serv., Inc., No. 00–C–348–C, 2001 WL 37114660, at \*7 (W.D. Wis. Mar. 2, 2001) ("Even if the railroad is limited to railroad purposes for the entire length of the right-of-way, each class member must demonstrate that he or she possesses the underlying interest in the right-of-way. The proposed class member obtained their property interests through such a large number of instrument that plaintiffs are not typical of the class."). [6]

Plaintiffs rely on Koyle v. Level 3 Commc'ns, Inc., No. CV–01–286–S–BLW, 2005 WL 8145917, (D. Idaho Dec. 1, 2005). Koyle certified a class of railway-adjacent property owners alleging that the defendant improperly laid fiber-optic cable over their properties. Id. at \*1. Koyle found that the named plaintiffs were typical of the proposed class because "the named plaintiffs all own land in fee simple that is subject to a Union Pacific easement. The named plaintiffs are thus in the same position as the proposed class members, and will be seeking the same relief." Id. at \*1. Here, in contrast, Defendants' evidence shows that Plaintiffs may not own the land necessary to bring their claims.

Therefore, the Court finds that Plaintiffs have not shown by a preponderance of the evidence that their claims are typical of the proposed class. Defendants have put forward credible evidence that suggests Plaintiffs do not own the necessary interest to bring typical claims.

**D. Adequacy**

**\*12** Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is grounded in constitutional due process concerns: 'absent class members must be afforded adequate representation before entry of a judgment which binds them.' " Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting Hanlon, 150 F.3d at 1020). Representation is adequate if (1) the named plaintiffs and their counsel are able to prosecute the action vigorously; (2) the named plaintiffs do not have conflicting interests with the unnamed class members; and (3)

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 11 of 17

the attorney representing the class is qualified and competent. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

The adequacy requirement often merges with the commonality and typicality requirements. See Amchem, 521 U.S. at 626 n.20. This is because the other requirements "serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n. 13 (1982)). Then the adequacy requirement additionally factors in competency and conflicts of interest. Id.

Because of this overlap, similar cases have found that an atypical plaintiff cannot be an adequate one. For instance, Judge Campbell held that the named plaintiffs' claims were "not sufficiently typical of the class claims to represent the class adequately." Valenzuela, 2017 WL 679095, at *8. Kirkman and Chambers reached identical conclusions. 220 F.R.D. at 53; 2001 WL 37114660, at *7–8.

Therefore, because the Court finds that Plaintiffs' claims are atypical of the proposed class, it also finds that Plaintiffs are inadequate representatives. The Court need not question the diligence of the Plaintiffs, nor the demonstrated experience and capability of counsel.

In sum, the Court finds that Plaintiffs cannot meet Rule 23(a)'s requirements.

### III. RULE 23(b)(3) REQUIREMENTS

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975). This subdivision permits certification where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. Proc. 23(b)(3).

The Court finds that, even if the proposed class satisfied Rule 23(a), the putative class does not meet Rule 23(b)(3)'s requirements: despite the presence of some commonality, individual issues—particularly land ownership and affirmative defences—will inevitably predominate over common ones. As a result, the putative class cannot satisfy Rule 23(b)(3)'s predominance or superiority requirements.

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). This requires courts to carefully scrutinize the relationship between a case's common and individual questions. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016). An individual question requires putative class members "to present evidence that varies from member to member ...." Id. In contrast, "a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. (alterations in original).

*13 The test "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (internal quotations omitted). The test is met when "one or more of the central issues" are common to the class and predominate over the individual issues. This requirement is "far more demanding" than Rule 23(a)'s commonality requirement. Keegan, 284 F.R.D. at 526 (quoting Amchem Prods., 521 U.S. at 623–24).

The predominance inquiry begins "with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809, (2011). Here, Plaintiffs bring claims for declaratory judgment, trespass, quiet title, ejectment, inverse condemnation, quasi-contract (unjust enrichment), unlawful competition, and accounting. Consol. Compl. at 19–32. Plaintiffs argue that three already-discussed common issues will dominate the litigation: (1) whether Union Pacific lacked sufficient rights to the subsurface, (2) whether Kinder Morgan's pipeline fulfills a railroad purposes, and (3) whether Union Pacific's knew its rights were limited. Mot. at 20. Plaintiffs argue that these predominant issues will focus on Defendants' conduct, thus making common resolution preferable. Defendants argue that the issues of individual ownership and affirmative defenses will dwarf any common issues. Kinder Morgan Opp'n at 20–27; Union Pacific Opp'n at 8–25.

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 12 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

*1) Common issues do not predominate because each of Plaintiffs' claims require an inquiry into individual ownership and the source of Union Pacific's ownership.*

Each of Plaintiffs' claims requires that class members own the subsurface beneath the railroad's right-of-way. For instance, the declaratory judgement claim asks the Court to determine the parties' "respective rights and duties to real property situated in the subsurface beneath the Railroad's right-of-way." Consol. Compl. ¶ 80. Likewise, trespass, quiet title, ejectment, and inverse condemnation all require ownership See Whittaker v. Otto, 248 Cal. App. 2d 666, 672 (1967) (trespass); Delino v. Platinum Cmty. Bank, 628 F. Supp. 2d 1226, 1237 (S.D. Cal. 2009) (quiet title); Baugh v. Consumers Assocs., Ltd., 241 Cal. App. 2d 672, 675 (1966) (ejectment); City of Los Angeles v. Superior Court, 194 Cal. App. 4th 210, 221 (2011) (inverse condemnation). Finally, quasi-contract and accounting both rely on class members' ownership of subsurface rights to the right-of-way. Consol. Compl. ¶¶ 141–42, 162–63, 170–71.

Plaintiffs argue that their claims for declaratory judgment, quiet title, ejectment, accounting are all suitable for class resolution because they challenge Defendants' conduct towards the whole class. Mot. at 22. But this ignores the claims' ownership requirements: unless the putative class members own the property at issue, Defendants cannot have violated their rights.

Not only do Plaintiffs' claims require individual ownership, but each class member's ownership is an individual issue that is not susceptible to class-wide proof. To determine whether a putative class member owns an underlying interest—and thus falls within the class—the Court would need to perform a chain-of-title analysis that examined the source of each owner's interest. See Lacombe Report at 7–8. This would be necessary to determine whether the landowner or any of its predecessors granted an easement to Union Pacific. See Lacombe Report at 27–28. It would also be necessary to uncover any potential "cut-off" language in the deed or if there was a prior grant to Union Pacific. Finally, the Court might have to analyze whether California's centerline presumption applied. The Court's analysis of the Wells' and Hinshaw's interests shows that a chain-of-title analysis and subsequent legal determinations will often be necessary to determine ownership interests.

**\*14** Furthermore, the Court would not only have to conduct an individual inquiry into putative class members' parcels—it would also need to analyze the source of Union Pacific's interest. Putative class members "own land in fee adjoining and underlying the railroad right-of-way granted under the Land Grants, or through condemnation." Docket No. 235 at 1. But Union Pacific also alleged in its counterclaim that it "may have also acquired small portions of its railroad right-of-way adjacent to the Alleged Plaintiff Parcels by private conveyance(s)." Docket No. 133, Counterclaims, ¶ 28. And the Court's prior order did not dismiss Union Pacific's quiet title claim for those parcels it acquired by private conveyance. Docket No. 175 at 14. Therefore, the Court would also have to consider the source of Union Pacific's interest to determine whether a putative class member's ownership interest fell within the class definition.

The following matrix further illustrates the complexity of the ownership issue. It tracks Union Pacific's interest versus that of adjacent owners:

| Source of Union Pacific's Interest / Landowner's Interest | Pre-1875 Grant | 1875 Grant | Condemnation | Private Grant Deed/License |
|---|---|---|---|---|
| Dual License | | | | |
| Cut-Off Language | | | | |
| Centerline Presumption | | | | |
| Prior Grant to Union Pacific | | | | |

For each parcel in the putative class, to assess whether it is within the class definition, the Court would have to determine where the parcel falls in the matrix. The answer could involve multiple cells depending on a given owner's title history. Plainly, this determination could not be made on a class basis. Moreover, as discussed below, there is a further overlay that would entail defenses, including statute of limitations, waiver, and laches, unique to each owner. And the foregoing does not even attempt to chart all of the factors affecting ownership, nor all the factors that could stand as a defense.

Furthermore, Plaintiffs cannot use Ms. Straup's expert testimony to defeat this individualized inquiry. Ms. Straup purports to identify "specific owners of specific land ...." Reply at 6. To do so, she primarily relies on GIS data, valuation maps, and tax assessor data. But Defendants present evidence that these sources do not accurately represent legal boundaries and ownership. See Lacombe Report at 15–17; Geographic Information Services, County

Case 1:17-cv-02989-AT Document 1816-12 Filed 02/06/24 Page 13 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

of San Bernardino (Aug. 2011), http://cms.sbcounty.gov/gis/Disclaimer.aspx (disclaiming the use of GIS data for non-tax purposes). They also present expert testimony that her method was inaccurate with respect to the Wells' property. Lacombe Report at 22–23. While the Court does not rule that Ms. Straup's method is so unreliable as to be inadmissible, Defendants' contrary evidence shows that her testimony is only a starting point—she does not engage in the chain-of-title analysis necessary to conclusively determine individual ownership. Therefore, even crediting her testimony, Defendants could still "contest that evidence with property-specific facts showing that her opinion on a particular parcel is incorrect. Individual issues would still predominate." Valenzuela, 2017 WL 679095, at *12; see also Chambers, 2001 WL 3711460, at *5 (extensive factual inquiry required despite use of valuation maps, and property tax data).

The Court also rejects Plaintiffs' argument that its finding improperly injects an ascertainability requirement into this case. See Mot. at 11; Reply at 4–5. The Ninth Circuit recently held that "the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification." Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126 (9th Cir. 2017). Plaintiffs, citing Briseno, characterize the individual ownership issues as a manageability concern that can be addressed via claims administration. Mot. at 11. Briseno concerned a class action for false advertising of cooking oil. 844 F.3d at 1121–24. The court held that defendants could individually challenge the claims of absent class members through the claims administration process. Id. at 1131. But here, as Judge Campbell found, property ownership is a threshold liability concern that requires a legal determination. See Valenzuela, 2017 WL 679095, at *18. Therefore, the Court itself—not claims administrators—must rule on them.[7] There is nothing administrative about the findings of ownership required here.

*15 The inescapable conclusion is that the parcel-specific issues—in terms of both Union Pacific's ownership and the owner's rights—dwarf any issue that might cut across all parcels and qualify as a common issue. This is especially true because the Court has already determined as a matter of law that Union Pacific could only convey rights in the subsurface if they furthered a railroad purpose. Docket No. 175. Thus, as Judge Campbell found, the effort to litigate the property-specific issues of individual class members" will greatly outweigh "the relatively modest amount of trial time and effort required for the three common issues ...." Valenzuela,

2017 WL 679095, at *11. Other courts analyzing this issue have reached similar conclusions. See, e.g., Kirkman, 220 F.R.D. at 54 (common issues did not predominate on claims for trespass, unjust enrichment, and reverse condemnation because individualized property inquiries would be necessary to establish liability); Sustainable Forest, 2005 WL 8146267, at *10–11 (need for transaction-specific inquiry into source of railroad rights-of-way precluded predominance).

*2) Plaintiffs cannot rely on the centerline presumption to establish class-wide ownership because the presumption requires reference to the conveyance itself.*

Plaintiffs argue that California's centerline presumption permits class treatment of ownership. Reply at 7–9. Union Pacific argues that Plaintiffs cannot rely on the presumption because it is not always applicable.

California law recognizes a rebuttable centerline presumption, under which "[a]n owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." Cal. Civ. Code § 831. The general rule is that "[i[n the absence of any qualifying term the designation in a conveyance of any physical object or monument as a boundary implies the middle or central point of such boundary." Faus v. Nelson, 241 Cal. App. 2d 320, 323–24 (1966). The presumption applies to railroad easements. Id. at 324.

To apply, the conveyance must designate the object itself as a boundary. Millyard v. Faus, 268 Cal. App. 2d 76, 83 (1968). Millyard rejected plaintiffs' attempts to apply the centerline presumption when their deed's metes and bounds did not designate the railroad right-of-way as a boundary. Id. at 84–85. Therefore, the presumption does not apply merely because the property abuts a right-of-way. Id. at 83.

Here, the presumption does not allow class-treatment of ownership because the presumption requires individualized reference to the conveyance itself. Furthermore, even if the Court were to apply the presumption class-wide, the presumption would remain rebuttable. Therefore, Defendants could contest its application to individual class members. Individual issues would inevitably predominate. See Valenzuela, 2017 WL 679095, at *12 (rejecting contention that Arizona's centerline presumption could substitute for individualized inquiry).

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 14 of 17

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

The named Plaintiffs demonstrate how the centerline presumption rapidly becomes an individualized issue. For instance, Mr. Lacombe identified several ways in which Ms. Straup's report does not accurately represent the boundaries of the Wells' parcels. Lacombe Report at 22–23. Furthermore, the Wells' deed states that their property lies "northeasterly" of the right-of-way. Kinder Morgan Opp'n, Ex. F. ("Lacombe Report") at 24, Ex. 9. Thus, under Millyard, their deed may not be subject to the centerline presumption because their deed's metes and bounds did not designate the railroad right-of-way as a boundary. Likewise, Mr. Lacombe suggests that Ms. Hinshaw's predecessor-in-interest did not receive an interest in land adjoining the right of way. Id. at 25–26. Hence, the centerline presumption would not apply to her. Therefore, even a brief analysis of the named Plaintiffs' claims shows that an individualized inquiry will be necessary with respect to the centerline presumption.

Plaintiffs' contrary argument rests on inapplicable case law. First, they cite a previous decision by this Court's that an individualized inquiry would not defeat predominance. Reply at 8 (citing Walker v. Life Ins. Co. of the Sw., No. CV 10–9198 JVS RNBX, 2012 WL 7170602, at *15 (C.D. Cal. Nov. 9, 2012)). But Walker concerned claims for fraudulent concealment and violation of California's Unfair Competition Law with respect to insurance policies. Id. at *1. The Court noted that case law conclusively establishes the presumption that "reliance may be presumed where materiality is found ... especially in connection with material omission cases." Id. at *15. Likewise, "under the UCL, California law unequivocally does not require individualized proof of deception, reliance and injury." Id. at *14. In contrast, here case law suggests that an individualized inquiry is necessary. See, e.g., Melton ex rel. Dutton v. Carolina Power & Light Co., 283 F.R.D. 280, 298–99 (D.S.C. 2012) ("[A] title search is the only reliable way to determine the relevant class members."); Chambers, 2001 WL 37114660, at *5 ("It is not sufficient that a person own land adjacent to the cable side of the right-of-way: that person must establish also that he or she owns the underlying (or superior) interest in the right-of-way.").

*16 Plaintiffs also rely on two Court of Federal Claims cases. Reply at 8–9 (citing Thompson v. United States, 101 Fed. Cl. 416, 431 (2011); Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 720 (2011)). But the Thompson plaintiffs dropped their class allegations. 101 Fed. Cl. at 422. Furthermore, they "proffered warranty or quitclaim deeds ... to establish fee simple absolute ownership of the property underlying and abutting the Line." 101 Fed. Cl. at 430.

Therefore, although Thompson held that a full chain-of-title analysis was unnecessary, it did so because the plaintiffs had already proffered individual deeds for each property at issue. Id. at 428–30. Therefore, Thompson supports the Court's holding that an individualized inquiry is necessary.

Macy Elevator is similarly unavailing because it concerned Indiana's centerline presumption. Macy Elevator held that, under Indiana law, where "no known deed includes a description of the right-of-way, those landowners holding property abutting a railroad right-of-way have a present fee interest to the center of the right-of-way, subject to the railroad's easement." 97 Fed. Cl. at 720. In contrast, Millyard explicitly held that California law requires the deed to designate the right-of-way as a boundary. 268 Cal. App. 2d at 83–85. Therefore, Macy Elevator does not apply because it contradicts settled California law.

Plaintiffs argue that Union Pacific, in the underlying rent litigation, previously argued "that only title and possession is necessary to establish a *prima facie* case of ownership ...." Reply at 9. But even if the Court were to accept that argument, ownership does not automatically trigger the centerline presumption. See Millyard, 268 Cal. App. 2d at 84–85. Furthermore, Defendants would still need an opportunity to rebut the presumption.

Finally, at the hearing, Plaintiffs argued that an individualized inquiry flips the burden onto them and renders the presumption meaningless for class certification. But there is no special centerline presumption for class-certification purposes: class certification neither changes the requirement that a conveyance designate the right-of-way as a boundary, nor does it alter the presumption's rebuttable nature.

In sum, the Court holds that Plaintiffs cannot use the centerline presumption to overcome the need for individualized inquiries.

*3) Defendants' affirmative defenses also require individualized determinations as to whether each class member granted Kinder Morgan a dual easement or had notice of the pipeline.*

Finally, individual issues predominate over common ones because the relevant defenses apply individually. Although the mere existence of affirmative defenses does not defeat certification, "a class cannot be certified on the premise that

[Defendants] will not be entitled to litigate [their] statutory defenses to individual claims." Dukes, 564 U.S. at 367.

Kinder Morgan argues that dual easements, statute of limitations, consent, acquiescence, waiver, estoppel, and laches all require individual inquiry. Kinder Morgan Opp'n at 25–27. Plaintiffs argue that these defenses raise common issues and that Plaintiffs' claims of fraudulent concealment will rebut any knowledge-based defenses class wide. Mot. at 25–26.

First, Kinder Morgan asserts that Defendants' dual-easement defenses will require individualized inquiry. Kinder Morgan Opp'n at 25. Because of ambiguities in Union Pacific's right-of-way under the 1875 Act, Kinder Morgan also entered into easements with adjacent landowners. Kinder Morgan Opp'n, Ex. D at 113–115. [8] These easements expressly permit a pipeline under the right-of-way. Lacombe Report at 27–28, Exs. 17, 18. Kinder Morgan states that it does not keep a separate database of dual easements; therefore, it would need to identify these easements via a property-by-property process. See Kinder Morgan Opp'n, Wynn Decl. ¶¶ 5–6, Ex. D. Plaintiffs argue that the Court should manage this issue as a subclass because the dual-easement defense only covers the 1875 Act land. Reply at 10. But identification of such a subclass would itself be a factually-intensive effort. Therefore, while the dual-easements defense cannot alone defeat certification, it weighs against certification.

 *17  Second, Kinder Morgan argues that the statute of limitations raises individualized issues because it runs against the land and any application of the discovery rule would also require an individualized inquiry. Kinder Morgan Opp'n at 26. Kinder Morgan likewise argues that consent, acquiescence, waiver, estoppel, and laches are all notice-based defenses. Id. at 27. Hence, these too require an individualized inquiry. Plaintiffs argue that Defendants concealed that the pipeline did not serve a railroad purpose; because Defendants took this action with respect to the class as a whole, the statute of limitations issue can be adjudicated on a class-wide basis. Repl at 14–15. They rely on Nitsch v. Dreamworks Animation SKG Inc., which found predominance satisfied when the plaintiffs offered generalized evidence of concealment and the defendants responded with generalized evidence. 315 F.R.D. 270, 311–12 (N.D. Cal. 2016). Although the defendants offered some individualized evidence, Nitsch concluded that "the relatively small number of individual inquiries which might be required do not defeat predominance." Id. at 312.

But here, in contrast to Nitsch, Defendants' evidence of notice will likely be highly individualized. The discrepancies between the Wells and Ms. Hinshaw's notice illustrate this point. Mr. Wells has known about the pipeline for a long time, including its location underneath the right-of-way adjacent to his property. Wells Depo. 67:1–9. Yet Ms. Hinshaw only learned of the property when she received a letter from Plaintiffs' counsel in this case. Union Pacific Opp'n, Ex. E ("Hinshaw Depo.") 43:3–47:1; 122:13–17. This contrast shows that notice of the pipeline—as well as any notice of its purpose—will likely vary between class members. Unlike in Nitsch, which focused on class-wide proof, the defenses here will likely require individualized proof of notice. Therefore, this Court agrees with Judge Campbell's conclusion:

> When one class member learned of the pipeline or of her rights in the right-of-way will not determine when other class members acquired such knowledge. And an individual property owner's knowledge will depend on a host of individual facts: what disclosures of the easement and pipeline is found in her chain of title, what posting of the easement and pipeline is found on or near her property, what if anything she observed when Defendants performed installation or maintenance on the right-of-way adjacent to her property, whether there are above-surface pipeline structures on or near her property, whether she inhabited the property continuously or visited it only occasionally, and what other communications she had or information she acquired that might have informed her of the pipeline's presence. What is more, some of these defenses apply against the land, not the landowner, requiring an inquiry into what a class member's predecessors on the property knew and did.

Valenzuela, 3027 WL 679095, at *15.

In re SFPP Right-of-Way Claims, Not Reported in Fed. Supp. (2017)

Case 1:17-cv-02989-AT   Document 1816-12   Filed 02/06/24   Page 16 of 17

At the hearing, Plaintiffs argued that individual defenses should not defeat class certification per se.[9] But the Court does not find that individual defenses necessarily defeat class certification—rather it finds that the existence of numerous individual defenses overwhelm Plaintiffs' theories. Furthermore, these individual defenses remain even under the Plaintiffs' theory of concealment; some class members may be subject to notice-based defenses regarding when they learned that the pipeline did not constitute a railroad purpose.

**\*18** In sum, the Court finds that the presence of affirmative defenses further show that individual issues predominate over common ones. This finding—combined with need for an individualized ownership inquiry—demonstrates that individual issues predominate over common issues. Therefore, the Court finds that Plaintiffs have not met their burden to show that the proposed class satisfies Rule 23(b)(3)'s predominance requirement.

### B. Superiority

A court considers whether a class action would be superior to individual suits. Amchem, 521 U.S. at 615. This requires that the court evaluate alternative options. Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis that includes "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s non exclusive factors are: (A) class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties involved in the management of a class action.

Here, the Court finds that common issues do not predominate. Therefore, given the scope and complexity of the individual issues, it necessarily follows that a class prosecution of the claims here would not be a superior vehicle.

### IV. ISSUE CLASS CERTIFICATION

Rule 23(c)(4) allows a district court to certify a "class action with respect to particular issues." In such "issue class" certification, the district court "isolate[s] the common issues ... and proceed[s] with class treatment of these particular issues." Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). But this is appropriate only if the proposed issue class meets Rule 23's other requirements and would "materially advance" the litigation. Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc., 308 F.R.D. 630, 633 (N.D. Cal. 2015).

Plaintiffs alternatively request issue-class certification under Rule 23(c)(4) with respect to each of the common issues. Mot. at 33–34. They argue that this will streamline individual adjudications. Id. at 34.

The Court denies Plaintiffs' request. Although an issue class might resolve the common issues already outlined, it would not advance the litigation. The Court has already resolved two of the three common issues as a matter of law. Therefore, as discussed, the thrust of this case is now individual ownership. An issue class would not help resolve this.

### CONCLUSION

For the foregoing reasons, the Court **denies** Plaintiffs' motion to certify. It also **denies** Union Pacific's motion to exclude Ms. Straup and Plaintiffs' motion to exclude Mr. Melle. The Court **grants** Kinder Morgan's motion to exclude Mr. Matthews.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2378363

---

### Footnotes

| | |
|---|---|
| 1 | The Court refers to the class certification briefing as motion, opposition, and reply. The Court refers to the other motions by their docket numbers. |

| | |
|---|---|
| 2 | The formula is Rent = Land Value x Corridor Factor x Use Factor x Rate of Return. Marchitelli Rebuttal Report at 9. |
| 3 | Because the Court excludes Mr. Matthews' testimony, it does not consider the parties arguments related to class-wide proof of damages. |
| 4 | Plaintiffs argue that the pipeline itself does not follow a continuous railroad corridor. Docket No. 253. Regardless of whether this is true, this argument critiques the appropriateness of the ATF method in the rent litigation—it does not strengthen its applicability here. |
| 5 | The July 15, 1936 quitclaim deed conveyed a Riverside and a San Bernardino parcel: [I]n the County of Riverside ... a strip of land, 100 feet in width, lying northeasterly of and contiguous to the center line of the Southern Pacific Railroad Company's main track .... ... [I]n the County of San Bernardino ... a strip of land, 100 feet in width, lying northeasterly of and contiguous to the center line of the Southern Pacific Railroad Company's main track .... Lacombe Report, Ex. 11. |
| 6 | Judge Campbell likewise found these cases persuasive. Valenzuela, 2017 WL 679095, at *7. |
| 7 | Plaintiffs' reliance on Koyle is similarly unpersuasive. Reply at 3. Unlike in Koyle, the Court has already determined the key common issues. See 2005 WL 8145917 at *3–4. This reduces the prominence of these issues moving forward. |
| 8 | The Court refers to the exhibit pagination for this exhibit. |
| 9 | Plaintiffs rely on Williams v. Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975). Reply at 17, 19. Williams held that "[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones." 539 F.2d at 1388. But Williams is easily distinguishable as securities-fraud case. Furthermore, Williams' finding relied on "a sufficient nucleus of common questions." Id. In contrast to Williams, here multiple affirmative defenses exist. Thus, these overwhelm common issues. |

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.