# EXHIBIT 17

535 F.Supp.3d 202
United States District Court, S.D. New York.

Derek RODRIGUEZ, Plaintiff,

v.

VILLAGE OF PORT CHESTER and Police
Officer Ken Manning, Shield No. 126, Defendants.

19 Civ. 04728 (JCM)

|

Signed 04/26/2021

**Synopsis**
**Background:** Arrestee brought action under § 1983 against
municipality and police officer, alleging excessive force.
Municipality and police officer moved in limine to exclude
evidence.

**Holdings:** The District Court, Judith C. McCarthy, United
States Magistrate Judge, held that:

[1] municipality and police officer were not sufficiently
apprised during discovery of fact that physician would testify
about cause of arrestee's injuries;

[2] physician had to be barred from converting his
opinion regarding arrestee's treatment into rebuttal testimony
expressly explaining why testimony from municipality's
expert on causation was wrong;

[3] physician could present expert testimony regarding his
reasoning why arrestee's being "stepped on" caused his
injuries, rather than his "jump[ ]" from porch;

[4] disclosure of medical illustration of arrestee's injuries was
timely;

[5] demonstrative illustration could be admissible for purpose
of illustrating treating physician's oral testimony which would
be highly relevant to issue of causation;

[6] arrestee did not abandon all categories of pain and
suffering damages by stating in his interrogatory responses
that he was not claiming any emotional injury or mental
suffering as result of defendants' actions; and

[7] arrestee's history of arrests and interactions with police
was not admissible for purpose of proving that he acted in
accordance with particular character trait on date in question.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion in Limine.

West Headnotes (48)

**[1]**    **Federal Civil Procedure**  🔑  Motions in
Limine

A trial court's inherent authority to manage the
course of its trials encompasses the right to rule
on motions in limine.

**[2]**    **Federal Civil Procedure**  🔑  Motions in
Limine

An in limine motion is intended to aid the trial
process by enabling the court to rule in advance
of trial on the relevance of certain forecasted
evidence, as to issues that are definitely set for
trial, without lengthy argument at, or interruption
of, the trial.

**[3]**    **Federal Civil Procedure**  🔑  Motions in
Limine

Because a ruling on a motion in limine is
subject to change as the case unfolds, this
ruling constitutes a preliminary determination in
preparation for trial.

**[4]**    **Federal Civil Procedure**  🔑  Motions in
Limine

A court considering a motion in limine may
reserve judgment until trial so that the motion is
placed in the appropriate factual context.

**[5]**    **Federal Civil Procedure**  🔑  Depositions and
Discovery

The purpose of the rule requiring a party
to supplement or correct its disclosure if the

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

party learns that in some material respect the disclosure is incomplete or incorrect is to prevent the practice of "sandbagging" an opposing party with new evidence. Fed. R. Civ. P. 26(a), 26(e).

2 Cases that cite this headnote

[6] **Federal Civil Procedure** 🔑 **Failure to respond; sanctions**

The party that fails to comply with Federal Rule of Civil Procedure governing expert witness disclosure bears the burden of proving both that its non-compliance was substantially justified, and that it was harmless. Fed. R. Civ. P. 26(a), 26(e).

3 Cases that cite this headnote

[7] **Federal Civil Procedure** 🔑 **Failure to respond; sanctions**

Municipality and police officer were not sufficiently apprised during discovery of fact that physician would testify about cause of arrestee's injuries, and therefore court had to determine whether he had to be barred from converting his opinion regarding arrestee's treatment into rebuttal testimony expressly explaining why testimony from defense expert on causation was wrong, in action under § 1983 alleging excessive force; although physician's report stated that being "stepped on" was cause of arrestee's injury, initial report was devoid of any reasoning, facts, or data to explain that conclusion and his deposition testimony and belated addendum containing required analysis could not correct deficiencies in original report or enlarge scope of his testimony. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 26(a)(2)(B).

More cases on this issue

[8] **Federal Civil Procedure** 🔑 **Failure to respond; sanctions**

An expert report is deficient under the Federal Rule of Civil Procedure governing expert witness disclosure if it fails to include any of the underlying conclusions on which the expert's ultimate opinions are based; bald conclusions

on the ultimate issues do not alone amount to a detailed and complete written report of the expert's expected testimony. Fed. R. Civ. P. 26(a)(2)(B).

[9] **Federal Civil Procedure** 🔑 **Failure to respond; sanctions**

An expert's deposition testimony cannot cure a party's failure to include opinions in his expert's report. Fed. R. Civ. P. 26(a)(2)(B).

[10] **Federal Civil Procedure** 🔑 **Depositions and Discovery**

Despite litigants' ongoing obligation to timely supplement or correct a disclosure that is incomplete or incorrect, experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions. Fed. R. Civ. P. 26(a), 26(e).

[11] **Federal Civil Procedure** 🔑 **Depositions and Discovery**

An expert's supplemental report that does not rely on any information that previously was unknown to him or her is not an appropriate supplemental report. Fed. R. Civ. P. 26(e).

1 Case that cites this headnote

[12] **Federal Civil Procedure** 🔑 **Depositions and Discovery**

**Federal Civil Procedure** 🔑 **Effect**

Rebuttal reports were due 30 days after service of expert report from municipality and police officer, in arrestee's action under § 1983 alleging excessive force, although court's scheduling orders were silent on that issue. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 26(a)(2)(D)(ii).

More cases on this issue

**Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)**

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

**[13]**    **Federal Civil Procedure** 🔑 Failure to respond; sanctions

In deciding whether to exercise its discretion to determine whether preclusion of expert testimony is warranted, courts consider: (1) the parties' explanation for their failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. Fed. R. Civ. P. 26(a)(2)(B).

1 Case that cites this headnote

**[14]**    **Federal Civil Procedure** 🔑 Failure to respond; sanctions

Physician had to be barred from converting his opinion regarding arrestee's treatment into rebuttal testimony expressly explaining why testimony from defense expert on causation was wrong, in action under § 1983 alleging excessive force, for not sufficiently apprising municipality and police officer during discovery of fact that physician would testify about cause of arrestee's injuries; although physician's opinion as to cause of arrestee's injury was integral to arrestee's case, arrestee's counsel intended to offer him as specially retained expert, and impending trial date, fact that discovery has been closed for over five months, and difficulty in rescheduling trial all weighed against possibility of continuance. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1).

1 Case that cites this headnote
More cases on this issue

**[15]**    **Federal Civil Procedure** 🔑 Failure to respond; sanctions

Physician could present expert testimony regarding any matter within scope of arrestee's treatment, including arrestee's treatment, condition, diagnosis, causation and prognosis, as well as his reasoning why arrestee's being "stepped on" caused his injuries, rather than his "jump[ ]" from porch, in action under § 1983 alleging excessive force; although physician

as specially retained expert could not provide rebuttal testimony expressly explaining why testimony from defense expert on causation was wrong due to lack of disclosure that he would testify about cause of arrestee's injuries, report and disclosure contained numerous facts derived from arrestee's medical records that described how he came to be injured as well as nature of his injuries. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 26(a)(2)(B), 26(a)(2)(C).

1 Case that cites this headnote
More cases on this issue

**[16]**    **Federal Civil Procedure** 🔑 Failure to respond; sanctions

Where expert witness disclosure is lacking, a treating physician may still testify in limited fashion, solely as to that information the physician acquired through observation during treatment and limited to the facts obtained during treatment. Fed. R. Civ. P. 26(a)(2)(B).

1 Case that cites this headnote

**[17]**    **Federal Civil Procedure** 🔑 Evidentiary matters

Treating physician testimony can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation; (2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was retained or specially employed to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(B).

3 Cases that cite this headnote

**[18]**    **Federal Civil Procedure** 🔑 Evidentiary matters

Treating physicians who do not make expert witness disclosures are considered fact witnesses who testify solely as to their personal knowledge of their patient's treatment; testimony limited to such personal knowledge may include the physician's opinions regarding the patient's

Case 1:17-cv-02989-AT   Document 1816-17   Filed 02/06/24   Page 5 of 21

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)
109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

condition, diagnosis, treatment and prognosis based on his or her observations of the patient during the period of consultation. Fed. R. Civ. P. 26(a)(2).

1 Case that cites this headnote

[19]    **Federal Civil Procedure** 🔑 **Failure to respond;  sanctions**

To answer the question of compliance with the Federal Rule of Civil Procedure requiring the disclosure of the subject of the testimony and a summary of the facts and opinions to which an expert, such as a treating physician, who was not specially retained for litigation, was expected to testify, a court considers whether the subject disclosure helps the opposing party and the court understand what the physician will offer specifically on the subject matter, in terms of facts and medical opinions, for which they were disclosed; the disclosure must provide the subject matter of the physician's intended testimony, coupled with specific facts and more than bare-minimum details of opinions formed therefrom. Fed. R. Civ. P. 26(a)(2)(C).

3 Cases that cite this headnote

[20]    **Federal Civil Procedure** 🔑 **Failure to respond;  sanctions**

To the extent a treating physician testifying as an expert intends to comment on matters beyond the factual scope of his or her patient's treatment, the basis for that testimony must be readily apparent from the disclosure and summary under the Federal Rule of Civil Procedure requiring that disclosure; however, such disclosure is considerably less extensive than the report required by Rule for retained experts. Fed. R. Civ. P. 26(a)(2)(B), 26(a)(2)(C).

1 Case that cites this headnote

[21]    **Federal Civil Procedure** 🔑 **Failure to respond;  sanctions**

Disclosure of medical illustration of arrestee's injuries was timely, in action under § 1983 against municipality and police officer alleging excessive force, where illustration had been made available over five months previously and timely disclosed as exhibit per court's trial order. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

More cases on this issue

[22]    **Federal Civil Procedure** 🔑 **Failure to respond;  sanctions**

Were arguments waived for failure to bring it to court's attention until after discovery closed? **Yes** Arguments on eve of trial about use of illustration as deposition exhibit, refusal to answer questions about it, or refusal to allow further discovery about its origins were waived by failing to bring them to court's attention until after discovery had been closed for five months, in arrestee's action against municipality and police officer under § 1983 alleging excessive force. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 37.

More cases on this issue

[23]    **Federal Civil Procedure** 🔑 **Failure to respond;  sanctions**

Unreasonable delay may render a motion for discovery sanctions untimely, although governing Federal Rule of Civil Procedure does not establish any time limits within which a motion for sanctions has to be filed. Fed. R. Civ. P. 37.

[24]    **Federal Civil Procedure** 🔑 **Proceedings to obtain**

Where party seeks to make discovery motion after close of discovery, that party must show good cause.

[25]    **Federal Civil Procedure** 🔑 **Failure to respond;  sanctions**

Although pretrial disclosure of demonstrative exhibits at a specific time is not required, a district court has discretion to require parties to make pretrial disclosures of such materials by specific deadlines to enable the opposing party

**Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)**
Case 1:17-cv-02989-AT   Document 1816-17   Filed 02/06/24   Page 6 of 21
109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

to raise timely objections to the admissibility of potential exhibits. Fed. R. Civ. P. 26, 34.

3 Cases that cite this headnote

**[26]** **Evidence** 🔑 Necessity in General

Authentication is a condition precedent to admitting evidence. Fed. R. Evid. 901(a).

1 Case that cites this headnote

**[27]** **Evidence** 🔑 Form and Sufficiency in General

The requirement of authenticating or identifying an item of evidence is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification; this standard is not particularly high. Fed. R. Evid. 901(a).

More cases on this issue

**[28]** **Federal Civil Procedure** 🔑 Evidentiary matters

Designation of particular witness to authenticate demonstratives in pretrial disclosures was not required, in arrestee's action against municipality and police officer under § 1983 alleging excessive force, since arrestee could elicit testimony from his treating physician that demonstrative was illustration of his scan, provided that the doctor had knowledge of scan. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Evid. 901(a).

More cases on this issue

**[29]** **Evidence** 🔑 Medical imaging

Treating physician could authenticate medical illustration of scan of arrestee's injuries, in arrestee's action against municipality and police officer under § 1983 alleging excessive force, provided that doctor had knowledge of scan. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Evid. 901(a).

**[30]** **Evidence** 🔑 Exhibits and illustrative evidence in general

Although demonstrative exhibits do not have any probative value in themselves, they may be admissible for the purpose of illustrating oral testimony.

1 Case that cites this headnote

**[31]** **Evidence** 🔑 Physical appearance and identity of persons

Demonstrative illustration pairing enlarged black-and-white medical images of arrestee's injured ankle with colored drawings of human ankle indicating bones and fractures impacted by that injury could be admissible for purpose of illustrating treating physician's oral testimony which would be highly relevant to issue of causation, in arrestee's action against municipality and police officer under § 1983 alleging excessive force; even if illustrations were different from scans, any inaccuracies in illustration could be explored through cross-examination and defendants could offer their own illustration of arrestee's injuries to support their expert's testimony. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

More cases on this issue

**[32]** **Evidence** 🔑 Weighing or Balancing Against Probative Value in General

In determining the admissibility of demonstrative exhibits illustrating witness testimony, a court must carefully weigh whether the exhibits are unduly prejudicial because the jury will interpret them as real-life recreations of substantive evidence that they must accept as true.

**[33]** **Evidence** 🔑 Tendency to mislead or confuse in general; prejudicial effect in general

**Federal Civil Procedure** 🔑 Necessity and subject matter

Concerns about undue prejudice from a demonstrative exhibit illustrating witness

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

Case 1:17-cv-02989-AT   Document 1816-17   Filed 02/06/24   Page 7 of 21

testimony may be alleviated through a limiting instruction explaining that the exhibit is not substantive evidence, and simply because it was presented through a doctor does not replace the jurors' obligations to judge the facts themselves. Fed. R. Evid. 403.

More cases on this issue

[34]  **Evidence** 👈 Necessity in General

The propriety of a demonstrative exhibit will depend on whether it is properly authenticated and accurately reflects the testimony and opinion of the witness whose testimony it is meant to explain, allowing a court to reserve its ruling on its admissibility until trial. Fed. R. Evid. 901(a).

[35]  **Civil Rights** 👈 Monetary Relief in General

Arrestee could seek and present evidence regarding compensatory damages for past and future pain and suffering and loss of enjoyment of life related to his ankle injury, punitive damages, and nominal damages, in his action against municipality and police officer under § 1983 alleging excessive force; although arrestee did not provide computation of those damages, they were inherently difficult to compute, their determination was within province of jury, and he substantiated his alleged pain and suffering damages by providing all relevant medical records and submitting to deposition. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 26(a)(1)(A)(iii).

1 Case that cites this headnote
More cases on this issue

[36]  **Civil Rights** 👈 Monetary Relief in General

Damages for § 1983 cases ordinarily are determined according to principles derived from the common law of torts, and encompass compensatory damages, nominal damages, punitive damages and presumed damages. 42 U.S.C.A. § 1983.

[37]  **Civil Rights** 👈 Grounds and subjects; compensatory damages

**Civil Rights** 👈 Mental suffering, emotional distress, humiliation, or embarrassment

In an action under § 1983, compensatory damages may comprise compensation for (1) out-of-pocket losses; and (2) pain and suffering as well as emotional and mental distress. 42 U.S.C.A. § 1983.

[38]  **Civil Rights** 👈 Measure and amount

Whereas out-of-pocket losses can be tied to a dollar amount, pain and suffering as well as emotional distress damages are not easily translated into a monetary figure, and there is not a precise formula for measuring them in an action under § 1983. 42 U.S.C.A. § 1983.

[39]  **Civil Rights** 👈 Measure and amount

In an action under § 1983, measure of damages for pain and suffering or emotional distress is fair and reasonable compensation to be fixed by trier of fact in light of all evidence in case. 42 U.S.C.A. § 1983.

[40]  **Federal Civil Procedure** 👈 Depositions and Discovery

**Federal Civil Procedure** 👈 Failure to respond; sanctions

Even where a litigant is not certain of its economic damages when disclosure is due, it still has the responsibility to provide each category of required disclosures based on the information it has at the time, and to supplement those disclosures as more information is gained. Fed. R. Civ. P. 26(a)(1)(A)(iii).

[41]  **Federal Civil Procedure** 👈 Failure to Answer; Sanctions

Arrestee did not abandon all categories of pain and suffering damages in his action against municipality and police officer under § 1983

Case 1:17-cv-02989-AT Document 1816-17 Filed 02/06/24 Page 8 of 21

**Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)**
109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

alleging excessive force by stating in his interrogatory responses that he was not claiming any emotional injury or mental suffering as result of defendants' actions, since response was not sufficiently clear, especially because neither interrogator nor response contained term "pain and suffering" as used in traditional tort law, and arrestee's failure to calculate pain and suffering damages he wished to pursue did not cause any prejudice. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 26(a)(1)(A)(iii).

1 Case that cites this headnote
More cases on this issue

[42] **Civil Rights** 🔑 Criminal law enforcement; prisons

**Evidence** 🔑 Particular crimes, wrongs, or acts

Arrestee's history of arrests and interactions with police was not admissible for purpose of proving that he acted in accordance with particular character trait on date in question, in his action against municipality and police officer under § 1983 alleging excessive force; that evidence also was not admissible to rebut emotional distress damages stemming from his interactions with police because arrestee did not plan on offering any evidence at trial regarding damages for emotional distress stemming from his interactions with police officer. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Evid. 403, 404(b).

More cases on this issue

[43] **Evidence** 🔑 Tendency to mislead or confuse; prejudicial effect

Evidence of "bad acts" is admissible unless it is introduced for the sole purpose of showing bad character or unless it is overly prejudicial or not relevant. Fed. R. Evid. 402, 403, 404(b).

[44] **Evidence** 🔑 Tendency to mislead or confuse; prejudicial effect

To be properly admitted, evidence of other crimes, wrongs, or acts must be (1) offered

for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. Fed. R. Evid. 404(b).

[45] **Evidence** 🔑 Other Crimes, Wrongs, or Acts

The probative value of proffered evidence of other crimes, wrongs, or acts depends largely on whether or not there is a close parallel between the crime charged and the acts shown. Fed. R. Evid. 404(b).

[46] **Witnesses** 🔑 Prejudicial effect

Arrestee's misstatements to police officers regarding his home address were not admissible on cross-examination for impeachment purposes, in his action against municipality and police officer under § 1983 alleging excessive force; any minimal probative value of arrestee's character for truthfulness was far outweighed by prejudicial effect of those statements insofar as they might prevent jury from fairly considering merits of his claims due to his history of arrests and other interactions with police when there was no evidence before court that he ever had been convicted of any crime, and he did not make subject statements under oath and testified during his deposition that reason he misrepresented his home address was to avoid self-incrimination. U.S. Const. Amends. 4, 5; 42 U.S.C.A. § 1983; Fed. R. Evid. 403, 404(b), 608(b).

More cases on this issue

[47] **Witnesses** 🔑 Particular Acts or Facts in General

Evidence of prior "bad acts" is admissible when they legitimately bear on the witness's credibility. Fed. R. Evid. 404(b).

More cases on this issue

[48] **Witnesses** 🔑 Particular Acts or Facts in General

Evidence of specific instances of conduct of a witness is generally permitted on cross-

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)
109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

examination for the purpose of attacking or supporting the witness's character for truthfulness. Fed. R. Evid. 608(b).

More cases on this issue

**Attorneys and Law Firms**

**\*208** Francis Xavier Young, Law Offices of Francis X. Young, PLLC, White Plains, NY, for Plaintiff.

Vernee Ciara Pelage, Brian S. Sokoloff, Sokoloff Stern LLP, Carle Place, NY, for Defendants.

**MEMORANDUM & ORDER**

JUDITH C. McCARTHY, United States Magistrate Judge

Trial in this case is scheduled to begin on May 19, 2021. Presently before the Court are motions *in limine* submitted by Derek Rodriguez ("Rodriguez" or "Plaintiff") and Police Officer Ken Manning ("Officer Manning") and the Village of Port Chester ("Defendants"). (Docket Nos. 41-43, 48-50). Together, the motions *in limine* raise five issues. The Court will summarize the legal standard generally applicable to motions *in limine* and then discuss each issue in turn. Familiarity with the procedural history and facts of the case is assumed.

**I. LEGAL STANDARD**

[1] [2] [3] [4] A trial court's "inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)) (internal quotation marks omitted). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09 CR 1153( ), 2011 WL 1431985, at *1 (S.D.N.Y.

Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139). "A court considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context." *New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*, 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016) (citing *Wechsler v. Hunt Health Systems, Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003)).

**II. DISCUSSION**

**A. Defendants' Motions *in Limine***

Defendants argue that Plaintiff should be precluded from offering into evidence (1) expert witness testimony regarding the cause of Plaintiff's injuries; (2) medical artwork illustrating Plaintiff's injuries; and (3) any testimony regarding Plaintiff's alleged **\*209** compensatory damages. (Docket No. 43 at 6-16).

**1. Expert Testimony Regarding Causation**

Defendants seek to preclude Plaintiff from offering expert testimony regarding the cause of Plaintiff's injuries, including any testimony regarding Defendants' expert's opinion on this topic. (Docket Nos. 43 at 6-11; 53 at 2-7). Specifically, Defendants claim that such testimony should be precluded because Plaintiff's expert, Dr. Richard Weinstein ("Dr. Weinstein"), did not sufficiently disclose any opinion regarding causation in his original 3.5-page report served during discovery on July 27, 2020 (the "Report") pursuant to Federal Rule of Civil Procedure 26(a)(2). (*Id.*; *see generally* Docket No. 19-1). Moreover, Defendants argue that the addendum Plaintiff served in response to their motion on March 24, 2021 (the "Addendum") cannot serve as a basis for such testimony because it is both untimely and deficient under Federal Rule of Civil Procedure 26(a)(2). (Docket Nos. 53 at 8; 46-2). Plaintiff counters that Dr. Weinstein's status as his treating physician obviates the requirement that his Report include his opinion on causation, and that any failure to comply with Federal Rule of Civil Procedure 26(a)(2) does not warrant preclusion because Defendants have long been on notice of this aspect of Dr. Weinstein's anticipated testimony. (Docket No. 47 at 6-16).

Rule 26(a) of the Federal Rules of Civil Procedure sets forth two types of expert disclosure. Federal Rule of Civil Procedure 26(a)(2)(B) requires that for any witness "retained or specially employed to provide expert testimony," the disclosure be served with a written report containing:

(i) a *complete* statement of all opinions that the witness will express and *the basis and reasons for them*; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). On the other hand, for an expert witness that has not been "retained or specially employed," a party need only submit a disclosure stating "(i) the subject matter on which the witness is expect to present evidence ...; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

 **[5]**    **[6]**    Further, under Federal Rule of Civil Procedure 26(e), "[a] party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure ... if the party learns that in some material respect the disclosure ... is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Federal Rule of Civil Procedure 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The purpose of this rule is "to prevent the practice of 'sandbagging' an opposing party with new evidence." *Fleming v. Verizon New York, Inc.*, No. 03 Civ. 5639(WHP), 2006 WL 2709766, at *7 (S.D.N.Y. Sept. 22, 2006) (quoting *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)). "The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance **\*210** was substantially justified, and that it was harmless." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012).

Dr. Weinstein's Report, attached to an "Expert Witness Disclosure" (the "Disclosure") prepared by Plaintiff's counsel, details the history of his treatment of Plaintiff's ankle injury between August 2018 and June 2020. (*See* Docket Nos. 19, 19-1). The Report traces several medical visits, summarizing the results of various physical examinations, X-rays and CAT scans, as well as Plaintiff's complaints and symptoms, and Dr. Weinstein's observations and recommendations. (*See* Docket No. 19-1). However, it provides little information regarding how Plaintiff was injured, stating only that Plaintiff "was first seen ... on 8/22/2018 ... complaining of left ankle pain after he was stepped on 8/1/2018." (*Id.* at 3). The last page contains a short paragraph titled "CONCLUSION" stating:

Patient is status post injury to left ankle after he was stepped on [o]n 8/1/2018. He sustained an intra-articular comminuted fracture of the talus, non-displaced medial malleolus fracture, non-displaced calcaneus fracture. When last seen the patient still had continued loss of motion with continued pain and difficulty with ambulation. Because there is an intra-articular fracture, the patient is at very high risk for developing arthritis. If symptoms do persist he will require surgery including fusion of the ankle joint.

(*Id.* at 6). Plaintiff's Disclosure served alongside the Report asserts that Dr. Weinstein will "testify that the injuries sustained by [Plaintiff] were sustained as a result of an assault by Police Officer Ken Manning and not as a result of [Plaintiff] jumping down from a porch onto [the] ground several feet below him." (Docket No. 19 at 1). The Disclosure also attaches Dr. Weinstein's qualifications, fee schedule and a list of cases in which he testified in the prior four years. (Docket Nos. 19, 19-2, 19-3, 19-4).

During Dr. Weinstein's deposition, he explicitly testified that based on his discussions with Plaintiff, he believed the injury was caused by "being stepped on." (Docket No. 42-2 at 10). Upon further questioning, he engaged in a lengthy colloquy with Plaintiff's counsel regarding the reasons why Plaintiff's fractures were consistent with that conclusion, rather than

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

"a low jump," including the level of force required to cause the number and types of fractures Plaintiff sustained. (*Id.* at 10, 15-17). Dr. Weinstein also explained that during the course of his treatment, Plaintiff did not tell Dr. Weinstein that he "jumped, and ... was wearing socks when he was injured," but the doctor became aware of this information from a conversation with Plaintiff's counsel after submitting his Report, and it did not change his original opinion as to causation. (*Id.* at 9-13).

The Court will first address whether Dr. Weinstein's original submission complies with Federal Rule of Civil Procedure 26(a)(2)(B) for a specially retained expert, as well as whether his Addendum renders it sufficient pursuant to Federal Rule of Civil Procedure 26(e). The Court will then analyze whether the original submission complies with Rule 26(a)(2)(C), for an expert not specially retained.

**(a) Sufficiency of Disclosure Under Federal Rule of Civil Procedure 26(a)(2)(B)**

[7]    [8] The Court agrees with Defendants that the Report does not sufficiently explain Dr. Weinstein's opinion regarding causation as required by Federal Rule of Civil Procedure 26(a)(2)(B). (*See* Docket Nos. 43 at 7; 53 at 6). Although the Report **\*211** conclusorily states that being "stepped on" was the cause of Plaintiff's injury, it is devoid of any reasoning, facts or data which explain that conclusion. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). An expert report should be "detailed and complete ... stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26 advisory committee's note to 1993 amend. Under this standard, an expert report is deficient if it "fails to include any of the *underlying conclusions* on which the expert's ultimate opinions are based[;] [b]ald conclusions on the ultimate issues do not alone amount to a detailed and complete written report of the expert's expected testimony." *Giladi v. Strauch*, No. 94 Civ. 3976(RMB)(HBP), 2007 WL 415365, \*7 (S.D.N.Y. Feb. 6, 2007) (quoting *St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, 91 Civ. 0748(MJL), 1996 WL 19028 at \*11–12 (S.D.N.Y. Jan. 17, 1996)) (internal quotation marks omitted).

[9] Beyond reciting Plaintiff's treatment history, the Report conclusorily states that Plaintiff sustained numerous fractures "after being stepped on," and that due to these fractures, Plaintiff has a "high risk of developing arthritis" and will require surgery if his symptoms do not improve. (*See* Docket No. 19-1 at 6). Although it appears "that it is Dr. [Weinstein]'s

belief" that there was a causal connection between the fractures and Plaintiff "being stepped on," there is no analysis explaining "the basis and reasoning" for such a link, such as the amount of force required to cause the particular types of fractures Plaintiff sustained. *See Robinson v. Suffolk Cty. Police Dep't*, No. CV 08-1874(AKT), 2011 WL 4916709, at \*2 (E.D.N.Y. Oct. 17, 2011), *aff'd*, 544 Fed. App'x 29 (2d Cir. 2013); *see also Bermudez v. City of New York*, 15-CV-3240 (KAM)(RLM), 2018 WL 6727537, at \*2–3 (E.D.N.Y. Dec. 21, 2018); (Docket No. 19-1 at 6). Moreover, although Dr. Weinstein's deposition testimony contains this very analysis, "it is well-settled ... that an expert's deposition testimony cannot cure a party's failure to include opinions in their expert's report under Rule 26." *See Clayton v. Katz*, No. 1:10-cv-575 (ALC), 2015 WL 1500248, at \*5 (S.D.N.Y. Mar. 31, 2015).

[10]    [11] Furthermore, Plaintiff's belated Addendum filed in response to Defendants' motion to preclude is insufficient to correct these deficiencies or enlarge the scope of Dr. Weinstein's testimony. (*See* Docket No. 46-2). Despite litigants' ongoing obligation to timely supplement or correct a disclosure that is incomplete or incorrect, "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (quoting *Sandata Technologies, Inc. v. Infocrossing, Inc.*, Nos. 05 Civ. 09546(LMM)(THK), 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at \*6 (S.D.N.Y. Nov. 16, 2007)). Therefore, an expert's supplemental report that "does not rely [on] any information that was previously unknown" to him or her is not an appropriate supplemental report under Federal Rule of Civil Procedure 26(e). *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253(BSJ)(HPB), 2009 WL 4907201, at \*5–6 (S.D.N.Y. Dec. 18, 2009). Furthermore, absent any court order stating otherwise, expert rebuttal evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" must be disclosed "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii).

**\*212** Here, the Addendum is clearly an attempt to bolster and correct deficiencies in Dr. Weinstein's original Report. *See Cedar Petrochemicals*, 769 F. Supp. 2d at 278. The Addendum states that based on a CAT scan from August 23, 2018 demonstrating "severe comminution of the talus with multiple fragments with significant displacement" –

Case 1:17-cv-02989-AT   Document 1816-17   Filed 02/06/24   Page 12 of 21

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)
109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

which is cited in Dr. Weinstein's Report – Plaintiff's injury was "unlikely to be caused from a jump or a fall from a height." (Docket No. 46-2 at 2; *see also* Docket No. 19-1 at 4). According to the Addendum, this is because the "level of comminution" shown in the CAT scan "requires significant amount of force being applied directly to the talus which would occur if someone else stepped directly on the patient's ankle." (Docket No. 46-2 at 2). This reasoning is absent from the original Report even though it is obvious that Dr. Weinstein was aware of the CAT scan and the extent of the fractures at the time it was served, and discovery closed on November 10, 2020, after numerous extensions. (*See* Docket Nos. 19-1 at 4, 6; 22; 46-2 at 2; April 1, August 6 and October 1, 2020 Minute Entries). Furthermore, although Dr. Weinstein was not aware of Plaintiff's "jump" at the time of the Report, the record is clear that he learned of this information before he issued the Addendum. (Docket No. 42-2 at 11-12). In addition, the Addendum describes the talus fracture as "significant[ly]" displaced, while the Report describes it as "[o]nly mild[ly]" displaced. (*Compare* Docket No. 19-1 at 4 *with* Docket No. 46-2 at 1). These substantial differences show that the Addendum is "designed to fill a significant and logical gap" in Dr. Weinstein's original Report, and therefore, is inappropriate. *See Cedar Petrochemicals*, 769 F. Supp. 2d at 279 (quoting *United States v. City of New York*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009)) (internal quotation marks omitted).

Plaintiff is also not allowed to use material previously known to Dr. Weinstein to cure any deficiency. *See Levinson v. Westport Nat'l Bank*, Nos. 3:09-cv-1955(VLB), 3:10-cv-261(VLB), 2013 WL 3280013, at *4–5 (D. Conn. June 27, 2013). Although the August 23, 2018 CAT scan is "briefly mentioned" in the original Report, "it is only in the [Addendum] that [Dr. Weinstein] fully presents his theory as to why" this same evidence supports causation. *See Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*, No. 09 Civ. 2085 (LTS), 2012 WL 13069913, at *4 (S.D.N.Y. Dec. 10, 2012); *see also Morritt v. Stryker Corp.*, No. 07-CV-2319 (RRM)(RER), 2011 WL 3876960, at *5–8 (E.D.N.Y. Sept. 1, 2011). Furthermore, Dr. Weinstein's prior description of the extent of the talus fracture is materially different from this description in the Addendum, yet he cites no reason why his impression changed. (*See* Docket No. 19-1 at 4; 46-2 at 1). Dr. Weinstein's new testimony demonstrates that the original Report did not comply with Federal Rule of Civil Procedure 26(a)(2)(B)'s requirement of "a complete statement of all [Dr. Weinstein's] opinions ... and the basis and

reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *see also Foley v. United States*, 294 F. Supp. 3d 83, 99–101 (W.D.N.Y. 2018). Plaintiff is not permitted to use the Addendum to correct this issue.

**[12]**  The Addendum also directly addresses the conclusion of Dr. Chaiyaporn Kulsakdinun, Defendants' expert, that Plaintiff's symptoms will be mild. (Docket No. 46-2 at 2). Dr. Weinstein explains that contrary to Dr. Kulsakdinun's opinion, Plaintiff's "severe fracture with multiple fragments that are intra-articular" makes it "extremely likely that [he] will develop severe arthritis and require further treatment **\*213**  including fusion." (*Id.*). To the extent this portion of the Addendum was intended to put Defendants on notice that Dr. Weinstein will explicitly "explain, repel, counteract or disprove" Dr. Kulsakdinun's opinion on the same subject matter by referencing that opinion directly, it constitutes rebuttal evidence. *See S.W. v. City of New York*, No. CV 2009-1777(ENV)(MDG), 2011 WL 3038776, at *2 (E.D.N.Y. July 25, 2011). Although the Court's scheduling orders were silent as to rebuttal reports, under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), they were due thirty days after service of Defendants' report, a deadline that is long past. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2013 WL 211303, at *1 (D. Vt. Jan. 18, 2013). "[Federal] Rule [of Civil Procedure] 26(e) ... provides no authority for filing [such a] report after the deadline for the exchange of ... rebuttals." *Gyllenhammer v. Am. Nat'l Red Cross*, No. 3:15-cv-1143 (BKS/DEP), 2018 WL 1956426, at *5 (N.D.N.Y. Jan. 23, 2018). Accordingly, Plaintiff cannot use the Addendum for purposes of expressly rebutting Dr. Kulsakdinun's theory of the case, either. [1]

**[13]   [14]**  In light of Plaintiff's failure to disclose Dr. Weinstein's opinion regarding causation in compliance with Federal Rule of Civil Procedure 26(a)(2)(B), the Court must determine whether preclusion is warranted. In deciding whether to exercise its discretion to do so, courts consider: "(1) [the parties'] explanation for their failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).

All but one of these factors weigh in favor of precluding Dr. Weinstein from providing expert testimony regarding

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

causation or for rebuttal as a retained expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). *See* Fed. R. Civ. P. 26(a)(2)(B). Plaintiff's only explanation for his failures to adhere to this rule is that this case was removed from state court, and "Dr. Weinstein's original report was in the style of a 'medical narrative' that is familiar and routinely accepted in state courts from treating physicians." (Docket No. 47 at 11). As this case was removed on May 22, 2019, over a year before Plaintiff served Dr. Weinstein's Report, (Docket No. 1), this excuse is insufficient. Moreover, the Court is not convinced by this explanation because Plaintiff's original Disclosure of Dr. Weinstein as a witness clearly contains numerous components of a Federal Rule of Civil Procedure 26(a)(2)(B) disclosure, including his qualifications and fees, indicating that Plaintiff's counsel intended to offer him as a specially retained expert even though he was also Plaintiff's treating physician. (*See* Docket No. 19).

**\*214** In addition, although Dr. Weinstein's opinion as to the cause of Plaintiff's injury is integral to Plaintiff's case, Defendants will suffer significant prejudice if the subject testimony is permitted under Federal Rule of Evidence 26(a) (2)(B). Trial is set to commence in less than a month and discovery closed on November 10, 2020. (Docket Nos. 22, 38). Even if the Court were to reopen discovery to permit Defendants time to respond to this testimony, there is insufficient time for Dr. Weinstein to be deposed on his new opinions, or to allow Defendants to prepare their own rebuttal report. *See Five Star Dev. Resort Communities*, 2012 WL 13069913, at \*4. Moreover, rescheduling this trial during a pandemic when limited courtrooms are available to conduct jury trials would cause undue hardship on the judicial system. Thus, the impending trial date, the fact that discovery has been closed for over five months and the difficulty in rescheduling the trial, all weigh against the possibility of a continuance. *See Morritt*, 2011 WL 3876960, at \*7. Accordingly, Dr. Weinstein cannot offer the subject testimony as a specially retained expert under Federal Rule of Civil Procedure 26(a)(2)(B) because it is precluded under Federal Rule of Civil Procedure 37(c)(1).

### (b) Sufficiency of Disclosure Under Federal Rule of Civil Procedure 26(a)(2)(C)

[15]  [16] Nevertheless, the fact that Dr. Weinstein is precluded from offering the subject testimony as a retained expert under Federal Rule of Civil Procedure 26(a)(2)(B) does not foreclose him from testifying as to his opinion on causation. "Where the Rule 26 disclosure is lacking, [a treating] physician may still testify in limited fashion,

solely as to that information the physician acquired through observation during treatment and limited to the facts obtained during treatment." *Manzone v. Wal-Mart Stores, Inc.*, No. 17-CV-277 (SIL), 2020 WL 5411483, at \*7 (E.D.N.Y. Sept. 9, 2020).

[17]  [18] Indeed, "treating physician testimony can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation; (2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was 'retained or specially employed to provide expert testimony.' " *Ali v. Connick*, 11-CV-5297 (NGG) (VMS), 2016 WL 3002403, at \*9 (E.D.N.Y. May 23, 2016) (quoting Fed. R. Civ. P. 26(a)(2)(B)). Whereas the third category requires compliance with Federal Rule of Civil Procedure 26(a)(2)(B), the first "requires no Rule 26 disclosure" and "[t]he second falls under the purview of Rule 26(a)(2)(C)." *Pierce v. City of New York*, 16 Civ. 5703 (BMC), 2017 WL 2623857, at \*3 (E.D.N.Y. June 16, 2017). This distinction stems from the fact that treating physicians offered under Federal Rule of Civil Procedure 26(a)(2)(B) and (C) are considered experts under Federal Rules of Evidence 702 and 703, whereas treating physicians who make no Federal Rule of Civil Procedure 26(a)(2) disclosures are considered fact witnesses who testify solely as to their personal knowledge of their patient's treatment. *See Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-CV-0445 (PKC), 2013 WL 4046263, at \*3 (E.D.N.Y. Aug. 8, 2013). Testimony limited to such personal knowledge may include the physician's opinions regarding the patient's condition, diagnosis, treatment and prognosis based on his or her observations of the patient during the period of consultation. *See Robinson*, 2011 WL 4916709, at \*4–6. Furthermore, despite Defendants' contentions, (*see* Docket No. 53 at 3-4), it is well-established **\*215** that testimony in all three categories can address causation based on a treating physician's treatment of his or her patient, including in Section 1983 cases such as this one. *See, e.g.*, *Olutosin v. Gunsett*, No. 14-cv-00685 (NSR), 2019 WL 5616889, at \*6 (S.D.N.Y. Oct. 31, 2019); *Puglisi*, 2013 WL 4046263, at \*7; *Robinson*, 2011 WL 4916709, at \*5–6. This case is distinguishable from *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, No. 06-CV-1520, 2014 WL 5757713, at \*4 (S.D.N.Y. Nov. 5, 2014), cited by Defendants, where the court required expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(B) because "the issue of causation invoke[d] complex issues of toxicology, epidemiology, and occupational medicine," and

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

the treating physicians intended to rely on evidence that was not apparent from the medical records. (*See* Docket No. 53 at 3-4). Therefore, the question for the Court is whether Dr. Weinstein's original Report and the accompanying Disclosure satisfy Federal Rule of Civil Procedure 26(a)(2)(C) such that he can present facts learned outside the scope of Plaintiff's treatment in support of his opinions on causation as well as Plaintiff's condition, diagnosis, treatment and prognosis. *See Olutosin*, 2019 WL 5616889, at *6.

**[19]** **[20]** To answer this question, courts consider whether the subject disclosure "helps the [opposing party] and the Court understand what the physician 'will offer specifically on the subject matter for which they were disclosed, in terms of facts and medical opinions.'" *See id.* at *5 (quoting *McAfee v. Naqvi*, No. 3:14-cv-410 (VAB), 2017 WL 3184171, at *4 (D. Conn. July 26, 2017)). To satisfy this requirement, the disclosure must provide the subject matter of the physician's intended testimony, coupled with "specific facts" and more than "bare-minimum details of opinions formed therefrom." *See id.*; *see also Benn v. Metro-N. Commuter R.R. Co.*, 3:18-cv-737 (CSH), 2019 WL 6467348, at *5–6 (D. Conn. Dec. 2, 2019); Fed. R. Civ. P. 26(a)(2)(C). The disclosure must be sufficient to give the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amend. Therefore, to the extent a treating physician testifying as an expert intends to comment on matters beyond the scope of his or her patient's treatment, the basis for that testimony must be readily apparent from the Federal Rule of Civil Procedure 26(a)(2)(C) disclosure and summary. *See Geary v. Fancy*, 12-CV-796W(F), 2016 WL 1252768, at *3 (W.D.N.Y. Mar. 31, 2016) (noting no "need to limit the scope of the treating physician's expert opinion to plaintiff's treatment, by excluding therefrom matters beyond plaintiff's course of treatment, ... *provided* the basis for the testimony is within Rule 26(a)(2)(C)'s required summary report, and such disclosure complies with Rule 26(a)(2)(C)") (emphasis added). On the other hand, such a disclosure "is considerably less extensive than the report required by Rule 26(a)(2)(B)," and the advisory notes to Federal Rule 26 of Civil Procedure's 2010 amendment warn against requiring "undue detail," as witnesses testifying under Rule 26(a)(2)(C) generally "have not been specially retained and may not be as responsive to counsel as those who have." *See* Fed. R. Civ. P. 26 advisory committee's note to 2010 amend.

Here, taken together, the Disclosure and Dr. Weinstein's original Report pass muster under Federal Rule of Civil Procedure 26(a)(2)(C) with respect to his opinion regarding whether Plaintiff's "jump[ ]" from the porch caused Plaintiff's injuries. (*See* Docket No. 19 at 1). Even though the original Report lacks the requisite analysis to tender Dr. Weinstein as a specially retained **\*216** expert, the Report and Disclosure sufficiently put Defendants on notice that Dr. Weinstein will testify regarding his theory of causation in light of Plaintiff's "jump[ ]" from a porch, and summarize the facts and other opinions which he is expected to discuss. *See* Fed. R. Civ. P. 26(a)(2)(C); (*id.*). The Disclosure expressly states that Dr. Weinstein will testify that Plaintiff's injuries "were sustained as a result of an assault by Police Officer Ken Manning and not as a result of [Plaintiff] jumping down from a porch onto [the] ground several feet below him." (Docket No. 19 at 1). Although the Report lacks the clarity and depth to meet the more rigorous standards of Federal Rule of Civil Procedure 26(a)(2)(B), it does contain numerous facts derived from Plaintiff's medical records that describe Plaintiff's rendition of how he came to be injured as well as the nature of his injuries. (*See generally* Docket No. 19-1). The Disclosure further explains that this Report "set[s] forth" "[t]he grounds for Doctor Weinstein's opinions and the substance of his findings." (Docket No. 19 at 1). Viewed as a whole, this information provided an adequate basis for Defendants to anticipate expert testimony not only regarding the scope of Dr. Weinstein's treatment of Plaintiff, but his opinion that Plaintiff's "jump[ ]" off of the porch did not cause Plaintiff's injuries, (Docket No. 19 at 1), even though Dr. Weinstein became aware of the "jump" over the course of this litigation, *see Geary*, 2016 WL 1252768, at *3; *Maxwell v. Becker*, No. 12-CV-00864S, 2015 WL 4872137, at *4 W.D.N.Y. Aug. 13, 2015, *report and recommendation adopted*, 2015 WL 5793403 (W.D.N.Y. Sept. 30, 2015); (Docket No. 42-2 at 12).

However, because neither the Disclosure nor the Report reference any other topics or facts gleaned outside of Dr. Weinstein's role as a treating physician, Dr. Weinstein's testimony may not exceed the parameters set forth in those materials. *See Geary*, 2016 WL 1252768, at *3. The Court therefore grants Defendants' motion to preclude testimony from Dr. Weinstein that expressly addresses Dr. Kulsakdinun's report, or the opinions of any other physicians, as those subjects are beyond the scope of both Dr. Weinstein's Federal Rule of Civil Procedure 26(a)(2)(C) disclosure and his treatment of Plaintiff. *See Ali*, 2016 WL 3002403, at *7; Fed. R. Civ. P. 26(a)(2)(C). Furthermore, Dr. Weinstein cannot explicitly opine on whether Plaintiff's interaction

with Officer Manning constituted an "assault," (Docket No. 19 at 1), as that constitutes inappropriate expert testimony regarding a legal conclusion central to the heart of this case. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *Olutosin*, 2019 WL 5616889, at *3.

Accordingly, Defendants' motion to preclude Dr. Weinstein from offering expert testimony regarding causation is granted in part and denied in part. Dr. Weinstein may not testify as to why Dr. Kulsakdinun's specific conclusions or expert opinions offered in this case are incorrect. However, he may present expert testimony as a treating physician regarding (1) any matter within the scope of Plaintiff's treatment, including Plaintiff's treatment, condition, diagnosis, causation and prognosis; as well as (2) his reasoning why Plaintiff's being "stepped on" caused his injuries, rather than his "jump[ ]" from a porch. (*See* Docket Nos. 19, 19-1 at 6). Because Dr. Weinstein's Addendum is improper for purposes of rebuttal or supplementing his initial Report and Disclosure, (*see* Docket No. 46-2), his testimony at trial must be limited to the topics set forth in the original Report and Disclosure, (*see* Docket Nos. 19, 19-1).

**2. Disclosure of Medical Illustrations of Plaintiff's Injuries**

 [21] Next, Defendants seek to preclude evidence of a medical illustration of Plaintiff's **\*217** injuries, as well as a letter from Chris Rufo, the illustrator, which Plaintiff filed as an exhibit to his opposition to Defendants' motion. (Docket Nos. 43 at 11-14; 46-4; 47 at 17; 53 at 8-10). Defendants contend that Plaintiff's production of the illustration on November 6, 2020, days before the close of discovery, was untimely in that (1) it constitutes a document in Plaintiff's possession, custody or control that Plaintiff is using to support his claims and was obliged to disclose under Federal Rule of Civil Procedure 26; and (2) is responsive to two of Defendants' document requests under Federal Rule of Civil Procedure 34. (Docket No. 43 at 11-12). Defendants further complain that Plaintiff never disclosed a trial witness to authenticate the illustration, and that its use as demonstrative evidence would be inappropriate because it constitutes an "interpret[ation]" of Plaintiff's injuries by an artist. (Docket Nos. 43 at 14 n.2; 53 at 9-10). Plaintiff responds that the illustration does not fall within the ambit of Federal Rules of Civil Procedure 26 or 34 because it constitutes "demonstrative evidence." (Docket No. 47 at 16-18). Plaintiff also asserts that rather than withholding the illustration, he produced it the day after it was finalized. (*Id.* at 17).

 [22]  [23]  [24] As a preliminary matter, the Court rejects Defendants' argument that the illustration's production was untimely and/or a violation of the relevant discovery rules. (*See* Docket No. 43 at 11-12). To the extent Defendants object to Plaintiff's use of the illustration as a deposition exhibit, refusal to answer questions about it, or refusal to allow further discovery about its origins, (*id.* at 13-14), Defendants have waived those arguments by failing to raise them until this late stage of the litigation. "While Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y. 1999). "Where a party seeks to make a discovery motion after the close of discovery, that party must show good cause," *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 43–44 (S.D.N.Y. 2014), yet Defendants made no attempt to do so. Nor does the record indicate that Defendants made any formal demands for the information they now seek. Discovery has been closed for five months and Defendants did not previously bring this issue to the Court's attention. (Docket No. 22). Moreover, this case is on the eve of trial. At this stage of the proceedings, it is "simply ... too late to raise [these issues] now." *See Tri-Cty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007), *aff'd*, 301 Fed. App'x 11 (2d Cir. 2008).

 [25] In addition, the illustration was never subject to production under Federal Rules of Civil Procedure 26 or 34. *See* Fed. R. Civ. P. 26, 34. Plaintiff intends to use it as "demonstrative evidence" to "help the jury understand the anatomy of the ankle and exactly which bones were broken and how the injury affected the entirety of the ankle." (Docket No. 47 at 17). Demonstrative exhibits "do[ ] not fit comfortably within the disclosure requirements" of either of these rules, "since [they] would not normally exist at the outset of the case." *See Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 130 (S.D.N.Y. 2015), *objections overruled*, 325 F.R.D. 55 (S.D.N.Y. 2018); *see also Griffith v. Goodyear Dunlop Tires N. Am. Ltd.*, 11-CV-761S, 2018 WL 4658721, at *2 (W.D.N.Y. Sept. 28, 2018). The Second Circuit has noted the "great desirability" of making demonstrative evidence "available [to the opposing party] a reasonable time before trial," *United States v. Dioguardi*, 428 F.2d 1033, 1038 (2d Cir. 1970), but there is no requirement for pretrial disclosure of **\*218** such materials at a specific time, *see United States v. Rodriguez*, 19 CR. 779 (AKH), 2020 WL 5819503, at *12 (S.D.N.Y. Sept. 30, 2020). It is within the district court's discretion to require parties to make pretrial disclosures of such materials by specific deadlines "to

Case 1:17-cv-02989-AT   Document 1816-17   Filed 02/06/24   Page 16 of 21

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

enable [the opposing party] to raise timely objections to the admissibility of potential exhibits." *See id.*; *see also United States v. Jasper*, No. 00 CR. 825( ), 2003 WL 221740, at *2 (S.D.N.Y. Jan. 31, 2003). Given that the subject illustration was made available to Defendants over five months ago and timely disclosed as an exhibit per this Court's trial order, (Docket Nos. 31; 35 at 4), Plaintiff did not run afoul of any deadlines.

**[26]  [27]  [28]  [29]** As to the illustration's authenticity, Defendants are correct that it will need to be authenticated by one of Plaintiff's witnesses to be admitted into evidence. (Docket No. 43 at 14 n.2). Authentication is "a condition precedent to admitting evidence." *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014) (quoting *United States v. Sliker*, 751 F.2d 477, 497 (2d Cir. 1984)). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In turn, "[that] requirement is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (quoting *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991)). This standard "is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). The Court is not aware of any caselaw requiring litigants to designate a particular witness to authenticate demonstratives in pretrial disclosures, as Defendants contend. (*See* Docket No. 43 at 14 n.2). Furthermore, Plaintiff has indicated that the demonstrative will "assist a doctor to educate [the] jury" as to Plaintiff's injuries and is "entirely based upon a CT scan of [P]laintiff's ankle," (*see* Docket No. 47 at 17). Therefore, at this juncture, the Court sees no reason why Plaintiff could not meet the threshold showing of authenticity by eliciting testimony from "a doctor" – namely, Dr. Weinstein, Plaintiff's treating physician – that the demonstrative is an illustration of his scan, provided that the doctor has knowledge of the scan. *See* Fed. R. Evid. 901(a)-(b)(1); (Docket Nos. 19; 19-1; 47 at 17).

**[30]  [31]** Defendants' complaint that the illustration is inappropriate because it constitutes the artist's "interpretive ... spin to verbal descriptions of x-rays and CT scans" is meritless as well. (Docket No. 53 at 10). Although demonstrative exhibits "ha[ve] no probative value in [themselves]," they may be admissible for the purpose of "illustrat[ing] oral testimony." *See Giles v. Rhodes*, No. 94 Civ. 6385(CSH), 2000 WL 1425046, at *3 (S.D.N.Y. Sept.

27, 2000) (quoting *Maiocco v. Greenway Capital Corp.*, No. Civ.A. 97-MC-0053, 1998 WL 48557, at *9 (E.D. Pa. Feb. 2, 1998)). Therefore, "[i]t is appropriate and fairly commonplace for an expert witness to use demonstrative exhibits to make his testimony more understandable to a lay jury." *Giles*, 2000 WL 1425046, at *3; *see also Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203(WHP), 2012 WL 2574717, at *4–6 (S.D.N.Y. June 20, 2012). Of course, such testimony must meet the threshold requirement of relevance and be otherwise admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be with the evidence; and (b) the fact is of consequence in determining the **\*219** action." Fed. R. Evid. 401. Here, the demonstrative pairs enlarged black-and-white medical images of Plaintiff's injured ankle with colored drawings of a human ankle indicating the bones and fractures impacted by the injury. (*See* Docket No. 46-3). It also includes a "[m]edial [v]iew" of a "[n]ormal [f]oot" in the same position as Plaintiff's ankle in one of the images. (*See id.*). Defendants' argument that the illustrations are different from the scans "is not a reason to prevent [their] use ... to explain [Dr. Weinstein's] opinion," which will be highly relevant to the issue of causation. *See Giles*, 2000 WL 1425046, at *3; Fed. R. Evid. 401; (Docket No. 53 at 9-10). Any inaccuracies in the illustration can be explored through cross-examination, and there was nothing stopping Defendants from offering their own illustration of Plaintiff's injuries to support their expert's testimony. *See Giles*, 2000 WL 1425046, at *3.

**[32]  [33]** In determining the admissibility of demonstrative exhibits illustrating witness testimony, courts must carefully weigh whether the exhibits are unduly prejudicial because the jury will interpret them as real-life recreations of substantive evidence that they must accept as true. *Cf. Bauta v. Greyhound Lines, Inc.*, No. 14-cv-3725 (RER), 2019 WL 8060183, at *18 (E.D.N.Y. Jan. 4, 2019); *see also* Fed. R. Evid. 403. A court is permitted to exclude relevant evidence if "its probative value is substantially outweighed by," among other things, "a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. However, the Court can readily alleviate such concerns through a limiting instruction explaining that the demonstrative exhibit is not substantive evidence, and simply because it was presented through a doctor does not replace the jurors' obligations to judge the facts themselves. *See, e.g., Nat'l Ass'n for Advancement of Colored People v. A.A. Arms, Inc.*, Nos. 99 CV 3999(JBW), 99 CV 7037(JBW), 2003 WL 2003797, at *1 (E.D.N.Y. Apr. 11, 2003); *Giles*, 2000 WL 1425046, at *3;

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

*Datskow v. Teledyne Cont'l Motors Aircraft Prod., a Div. of Teledyne Indus., Inc.*, 826 F. Supp. 677, 685 (W.D.N.Y. 1993).

[34] The Court therefore declines to preclude use of this illustration as demonstrative evidence. However, the Court reserves ruling on its admissibility until trial, as its propriety as an exhibit will depend on whether it is properly authenticated and accurately reflects the testimony and opinion of the witness whose testimony it is meant to explain. See *Giles*, 2000 WL 1425046, at *3; (Docket No. 47 at 17). With regard to Defendants' motion to preclude use of Mr. Rufo's letter at trial, as Plaintiff has not indicated that he will be offering it into evidence, the Court will not address its admissibility. (*See generally* Docket Nos. 35 at 4-5; 47 at 16-19; 56).

**3. Evidence Regarding Compensatory Damages**

[35] Defendants also seek preclusion of any evidence of compensatory damages and/or pecuniary loss at trial under the rationale that Plaintiff failed to provide a computation of this category of damages as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). (Docket Nos. 41 at 1; 43 at 14-16; 53 at 10-12). They also request that Plaintiff be barred from seeking such damages at trial. (Docket No. 41 at 1). Plaintiff responds that these damages are "not calculable" and "can[not] be supported with documentary evidence," yet claims that Defendants were not sandbagged because they received all of Plaintiff's medical records and deposition transcripts during discovery. (Docket No. 47 at 19). Plaintiff also argues that it is inappropriate to suggest a monetary figure for *220 pain and suffering to the jury, and "the jury alone will ... arrive at a monetary figure to compensate [P]laintiff fairly and reasonably for his injuries and pain and suffering." (*Id.*).

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires that litigants provide to the opposing party "a computation of each category of damages claimed" and make available for inspecting and copying "the documents or other evidentiary material ... on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). As already noted, "[w]here a party 'without substantial justification fails to disclose information required by Rule 26(a),' she 'is not, unless such failure is harmless, permitted to use as evidence at trial' the information not disclosed." *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 306–07 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 37(c)).

Plaintiff's complaint (the "Complaint") alleges that on August 1, 2018, he was "threatened, wrongfully restrained, retained, assaulted and battered, handcuffed, arrested and processed" by Officer Manning without probable cause, "result[ing]" in "physical, mental, economic and emotional damages" for "personal injuries, ... mental and emotional trauma," and "physical and emotional pain and suffering." (Docket No. 1-1 ¶¶ 11, 14, 16, 40-44). The Complaint further alleges that these actions constitute both excessive force under the Fourth and Fourteenth Amendments and assault and battery, for which Plaintiff seeks, *inter alia*, compensatory damages, actual damages and punitive damages. (*Id.* at 14, ¶¶ 18-19, 40-44; *see also* Docket No. 29).

During discovery, on January 7, 2020, in response to Defendants' interrogatories, Plaintiff asserted that he had incurred "[n]o financial loss" as a result of Defendants' alleged actions to date. (Docket No. 42-5 at 2). Although he sustained several physical injuries to his left ankle, he stated that "[t]he amount of monetary damages [for such injuries] [i]s to be determined at a later date when it is better known what the future physical consequences will be for the Plaintiff." (*Id.* at 2-3). As to damages for "mental suffering" and "emotional injur[ies]," when asked for "a description of [each such injury's] nature and the monetary amount," Plaintiff stated that he was "[n]ot claim[ing]" such damages or injuries. (*Id.* at 3). Further, in response to a document request for "all medical expenses incurred by [P]laintiff because of the alleged actions or omissions of any Defendant," Plaintiff asserted that he was "requesting this information from [the] insurance company." (*Id.* at 7). When asked for "any and all documents that evidence or reflect all damages claimed by Plaintiff," Plaintiff referred Defendants to his medical records being produced in response to another request. (*Id.*). There is no indication that Plaintiff provided the subject insurance information or any other documentation of his expenses, and Plaintiff admits that he never provided a monetary damages amount. (*See* Docket No. 47 at 18).

Despite Plaintiff's failure to provide financial information substantiating his damages, in the proposed Joint Pre-Trial Order (the "Proposed Order"), Plaintiff has indicated that he is seeking "[d]amages for personal injuries to [his] left foot and ankle." (Docket No. 35 at 2). These injuries include several types of fractures, joint widening and disruption, effusion, swelling and bone fragments, as well as permanent loss of ankle motion, continued pain and difficulty ambulating. (*Id.* at 2-3). The Proposed Order further indicates that due to these injuries, Plaintiff "is at a high risk of developing arthritis" and "[i]f symptoms do persist, [he] will need future *221 surgery including fusion of the ankle joint." (*Id.* at 3). At the final

Case 1:17-cv-02989-AT   Document 1816-17   Filed 02/06/24   Page 18 of 21

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

pretrial conference on April 21, 2021, Plaintiff represented that he is not seeking damages for (1) pecuniary losses such as medical expenses, lost wages or insurance co-pays; or (2) emotional distress relating to his interactions with police officers on the date of the incident. (*See* April 21, 2021 Minute Entry). However, Plaintiff still wishes to pursue damages for pain and suffering and loss of enjoyment of life relating to his ankle injury. (*See id.*).

[36]  [37]  [38]  [39] Damages for Section 1983 cases such as this are "ordinarily determined according to principles derived from the common law of torts," and encompass compensatory damages, nominal damages, punitive damages and presumed damages. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–11, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In turn, compensatory damages may comprise of compensation for (1) out-of-pocket losses; and (2) pain and suffering as well as emotional and mental distress. *See id.* at 307, 106 S.Ct. 2537; *see also Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Pain and suffering include compensation for physical pain, emotional pain and loss of enjoyment of the pleasurable activities of life. *Sales v. Republic of Uganda*, 828 F. Supp. 1032, 1044 (S.D.N.Y. 1993). Whereas out-of-pocket losses can be tied to a dollar amount, pain and suffering as well as emotional distress damages are not "easily translated" into a monetary figure, and there is not "a precise formula" for measuring them. *See Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 308 (S.D.N.Y. 2001); *see also Mileski v. Long Island R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974). Therefore, "[t]he measure of damages for pain and suffering or emotional distress is the fair and reasonable compensation to be fixed by the trier of fact in the light of all the evidence in the case." *See Sulkowska*, 129 F. Supp. 2d at 308.

[40] Plaintiff effectively concedes that he failed to provide a computation of his claimed damages as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). (*See* Docket No. 47 at 18-19). His excuse is that these damages are still unknown. (*See id.* at 19). Courts have declined to preclude evidence of damages for pain and suffering and punitive damages solely because such information was not provided under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), as "any calculation that might be provided would not be of much use to anyone." *See Jackson v. The Scotts Co.*, No. 08 Civ.1064(LAK), 2008 WL 4355349, at *1 (S.D.N.Y. Sept. 24, 2008); *see also Williams v. Boulevard Lines, Inc.*, No. 10 Civ. 2924(DF), 2013 WL 5652589, at *6 (S.D.N.Y. Sept. 30, 2013). However, even where a litigant is not certain of its economic damages

when disclosure is due, "[it] still has the responsibility to provide each category of required disclosures based on the information it has at the time, and to supplement those disclosures as more information is gained." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, Nos. 12 Civ. 6811 (CM)(JCF), 13 Civ. 1580(CM)(JCF), 2013 WL 5495542, at *3 (S.D.N.Y. Oct. 3, 2013); *see also Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 30 (W.D.N.Y. 2014); *Jackson*, 2008 WL 4355349, at *1–2. Although Plaintiff offers no reason why his past and future medical expenses – including the surgery he "will need" if his symptoms persist – are impossible to quantify now, he has clearly indicated that he will not be seeking such damages at trial. (Docket No. 35 at 3; April 21, 2021 Minute Entry). Thus, the Court need not rule on this issue.

[41] Plaintiff, however, is not barred from offering evidence of compensatory damages for past and future pain and suffering **\*222** as well as loss of enjoyment of life as they relate specifically to his ankle injury. (*See* Docket No. 41 at 1). At oral argument, Defendants contended that Plaintiff should be precluded from seeking these damages because, on top of failing to provide a computation of them, he stated in his interrogatory responses that he is not claiming any emotional injury or mental suffering as a result of Defendants' actions. (*See* April 21, 2021 Minute Entry; *see also* Docket No. 42-5 at 3). Plaintiff clarified that the subject interrogatory response was only intended to encapsulate claims for emotional distress resulting from his interactions with police officers on the date in question – such as fear of the police, nightmares, *etc.* – but was not intended to waive his claims for past and future pain and suffering related to his ankle injury. (*See* April 21, 2021 Minute Entry). The Court finds that the response was not sufficiently clear to abandon all categories of pain and suffering damages, especially because neither the interrogatory nor the response contains the term "pain and suffering" as used in traditional tort law. *See Tray-Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993) ("[T]he conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred."); *see also Est. of Smith v. Cash Money Recs., Inc.*, 14-cv-2703, 2018 WL 2224993, at *10 (S.D.N.Y. May 15, 2018); (Docket No. 42-5 at 3). Moreover, Defendants cannot claim that Plaintiff's failure to calculate the pain and suffering damages he wishes to pursue caused any prejudice, because these are inherently difficult to compute and their determination is within the province of the jury. *See, e.g., Williams*, 2013 WL 5652589, at *6. Plaintiff also substantiated his alleged pain and suffering damages by

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)

109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

providing all the relevant medical records and submitting to a deposition. (*See* Docket Nos. 42-5 at 7; 47 at 19).

Furthermore, Plaintiff has made a strategic decision not to pursue emotional distress damages as they relate to his encounters with the police on the date of the incident and, therefore, may not do so at trial. *Cf. Melo-Fernandez v. Bearden*, CV 20-0081 SCY/JHR, 2020 WL 7353880, at *2–4 (D.N.M. Dec. 15, 2020) (directing plaintiff to submit factual response to interrogatories regarding alleged pain and suffering to preserve right to pursue such damages). Plaintiff also cannot pursue compensatory damages for medical expenses, lost wages or co-pays. However, Plaintiff may seek and present evidence regarding (1) compensatory damages for past and future pain and suffering and loss of enjoyment of life related to his ankle injury; (2) punitive damages; and (3) nominal damages. *See Stachura*, 477 U.S. at 306–11, 106 S.Ct. 2537.

### B. Plaintiff's Motions *in Limine*

Plaintiff moves to preclude Defendants from offering evidence of (1) any interactions between Plaintiff and the Port Chester Police Department predating the incident on which this lawsuit is based; and (2) Plaintiff's prior arrests and/or convictions. (Docket No. 50 at 5).

### 1. Interactions Between Plaintiff and the Port Chester Police Department

 **[42]** Plaintiff requests that the Court prevent testimony regarding numerous prior interactions between him and Port Chester police officers for two reasons. (*Id.* at 5-16). First, Plaintiff argues that this evidence would constitute impermissible propensity evidence under Federal Rule of Evidence 404(b). (*See id.*). Plaintiff also contends that under Federal Rule of Evidence 403, such evidence is minimally probative of his credibility and/or the reasonableness of the force used by Officer Manning, and is substantially outweighed **\*223** by the potential for unfair prejudice. (*See id.* at 11-12, 15). Defendants have represented that they only intend to offer evidence regarding Plaintiff's past interactions with Port Chester police, including his "multiple arrests and detentions," for two purposes: (1) to rebut any testimony presented by Plaintiff regarding emotional distress damages stemming from his interactions with Officer Manning, *i.e.*, fear of the police; and (2) as evidence of Plaintiff's character for truthfulness. (Docket No. 55 at 3-5; *see also* April 21, 2021 Minute Entry). Regarding the second purpose, Defendants specifically seek to present evidence that Plaintiff lied to

police officers on prior occasions, telling them that he was homeless in lieu of providing his home address. (Docket No. 55 at 5).

 **[43]** Federal Rule of Evidence 404(b) prohibits admission of prior or subsequent "bad acts" – *i.e.*, "crimes, wrongs, or acts" other than those charged in a criminal defendant's indictment – to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Fed. R. Evid. 404(b)(1); *see also United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011). The Second Circuit follows an "inclusionary" approach to this rule, directing that evidence of such "bad acts" is "admissible unless it is introduced for the sole purpose of showing ... bad character, ... or unless it is overly prejudicial under Fed.R.Evid. 403 or not relevant under Fed.R.Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996).

 **[44]  [45]** "Even under this approach, however, district courts should not presume that such evidence is relevant or admissible." *Curley*, 639 F.3d at 56. To be properly admitted under Federal Rule of Evidence 404(b), "evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial." *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002). "[T]he probative value of ... proffered [Federal Rule of Evidence 404(b)] evidence depends largely on whether or not there is a ' "close parallel" between the crime charged and the acts shown.' " *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (quoting *United States v. Corey*, 566 F.2d 429, 431 (2d Cir. 1977)).

The Court agrees that Defendants are not permitted to present evidence of Plaintiff's prior interactions with police officers to argue that Plaintiff acted in accordance with a particular character trait on the date in question. *See* Fed. R. Evid. 404(b). Regarding Defendants' argument that these interactions may be relevant to Plaintiff's alleged damages, that issue is moot. As Plaintiff specifically explained during oral argument, he does not plan on offering any evidence at trial regarding damages for emotional distress stemming from his interactions with Officer Manning. (*See* April 21, 2021 Minute Entry). Of course, this issue can be revisited at trial if Plaintiff unwittingly opens the door to it during direct examination.

 **[46]  [47]  [48]** As to Plaintiff's misstatements to police officers regarding his home address, this evidence is not admissible for impeachment purposes.[2] Although evidence of prior "bad acts" is admissible under Federal Rule of

Case 1:17-cv-02989-AT Document 1816-17 Filed 02/06/24 Page 20 of 21

Rodriguez v. Village of Port Chester, 535 F.Supp.3d 202 (2021)
109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

Evidence 404(b) when they "legitimately bear on [the witness's] credibility," that is not the case here. *See* **\*224** *Tomaino v. O'Brien*, 315 Fed. App'x 359, 361 (2d Cir. 2009); *see also Outley v. City of New York*, 837 F.2d 587, 593 (2d Cir. 1988). Federal Rule of Evidence 608, which generally permits evidence on cross-examination of "[s]pecific [i]nstances of [the] [c]onduct" of a witness, for the purpose of "attack[ing] or support[ing] the witness's character for truthfulness," is inapplicable as well. *See* Fed. R. Evid. 608(b); (Docket No. 55 at 4-5). Plaintiff did not make the subject statements under oath and testified during his deposition that the reason he misrepresented his home address was to avoid self-incrimination. (*See* Docket No. 50 at 10). Here, any minimal probative value of Plaintiff's character for truthfulness is far outweighed by the prejudicial effect of these statements insofar as they may prevent the jury from fairly considering the merits of Plaintiff's claims due to his history of arrests and other interactions with the police, when there is no evidence before the Court that he has ever been convicted of any crime. *See* Fed. R. Evid. 403; *see also Stephen v. Hanley*, No. 03-CV-6226(KAM)(LB), 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) (finding "unproven charges and prior arrests" inadmissible for impeachment because they did not result in convictions or sufficiently bear on character for untruthfulness) (citing *Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ("Arrest without more does not ... impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.")).

Therefore, Defendants will not be permitted to elicit evidence of these misstatements from Plaintiff on cross-examination for impeachment purposes. They also cannot introduce evidence of Plaintiff's history of arrests and interactions with the police for the purpose of proving that he acted in accordance with a particular character trait on the date in question. Moreover, Defendants' request to utilize such evidence to rebut Plaintiff's emotional distress claims is moot because Plaintiff does not intend to elicit testimony on this topic.

**2. Plaintiff's Convictions and/or Arrest Record**

Plaintiff's second motion *in limine* for exclusion of evidence of any criminal convictions and arrests is also moot. Defendants do not indicate that they wish to introduce evidence of prior convictions pursuant to Federal Rule of Evidence 609, nor is there any evidence that Plaintiff has even been convicted of a crime. (*See generally* Docket Nos. 50 at 5 n.1, 8-11, 14; 55 at 4). Defendants have also stated that they "do not inten[d] to introduce Plaintiff's ... multiple arrests and detentions as part of their case in chief," (Docket No. 55 at 4), and represented during oral argument that they only intend to use them for impeachment purposes, which the Court already addressed, *supra*, in Section II.B.1, (*see* April 21, 2021 Minute Entry). Therefore, this issue is moot.

**III. CONCLUSION**

For the foregoing reasons, Defendants' three motions *in limine* are granted in part and denied in part. Plaintiff's first motion is granted and his second motion is denied as moot.

The Clerk of the Court is respectfully requested to close the pending motions (Docket Nos. 41, 48, 49, 50).

**SO ORDERED.**

**All Citations**

535 F.Supp.3d 202, 109 Fed.R.Serv.3d 1103, 115 Fed. R. Evid. Serv. 501

## Footnotes

1    The Court notes, however, that Dr. Weinstein's original Report expressly disclosed his opinion that Plaintiff is at a very high risk for developing arthritis and will require surgery if his symptoms persist due to the specific fractures Plaintiff sustained. (*See* Docket No. 19-1 at 6). As explained below, in light of this disclosure and his status as a treating physician, Dr. Weinstein is not barred from expressing such an opinion at trial. *See infra* Section II.A.1(b). He is only barred from converting this opinion into rebuttal testimony by expressly explaining

why Dr. Kulsakdinun's testimony on this topic is wrong, as Defendants were not sufficiently apprised of the fact that he would do so during discovery. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

2      Because Defendants do not indicate that they intend to offer evidence of any other prior interactions between Plaintiff and police officers for this purpose, the Court does not address the admissibility of evidence of the remaining incidents noted by Plaintiff. (*Compare* Docket Nos. 55 at 4-5 *with* 50 at 8-11).

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.