# EXHIBIT 22

2015 WL 5772201
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Tramain ANDREW, Plaintiff,
v.
BELLEVUE HOSPITAL, et al., Defendants.

No. 13–cv–08531 (TPG).
|
Signed Sept. 29, 2015.

## OPINION

THOMAS P. GRIESA, District Judge.

**\*1** *Pro se* plaintiff Tramain Andrew brings this action under 42 U .S.C. § 1983 alleging that defendants denied him adequate medical treatment. Plaintiff moves for counsel and for default judgment, while defendant Bellevue Hospital moves to dismiss. The court denies all three motions. Plaintiff also requests a stay and an extension of time to serve a recently named defendant. The court grants these requests.

### The Complaint

The operative complaint is the Second Amended Complaint, which plaintiff filed on September 15, 2014. The complaint names thirty defendants and contains numerous allegations against various healthcare providers, including Bellevue. (Dkt. No. 40, Second Am. Compl. at 3–12.)

Plaintiff, a prisoner at Rikers, claims he suffers from obstructive sleep apnea, for which he requires a Continuous Positive Airway Pressure(CPAP) machine as part of his treatment. He claims "the procedure used to deal with CPAP patients" is inadequate. (*See id.* at 11.)

After plaintiff was arrested, he went to Bellevue, a hospital operated by the New York City Health and Hospitals Corporation. He spent five days in the Respiratory unit where he received CPAP treatment before being transferred to the Mental Health unit for four days. He alleges that, while he was at Bellevue, Dr. Melanie Farakas[1] told him he could not receive both CPAP treatment and mental-health treatment in the same location at that hospital and so he would be returned to North Infirmary Command at Rikers where he could receive both treatments concurrently. But once corrections officers regained custody of plaintiff, they placed him in the C–95 facility at Rikers, allegedly due to the doctor's order. (*Id.* at 8.) Defendant admits that the C–95 facility "could not provide CPAP treatment" to plaintiff. (Dkt. No. 57, Mot. to Dismiss ¶ 1.) Finally, plaintiff alleges that this denial of CPAP treatment exacerbated his sleep apnea, leading to headaches, depression, choking, and vomiting blood.

As defendant concedes, the complaint is best construed as alleging a claim under 42 U.S.C. § 1983 that defendant showed deliberate indifference to plaintiffs medical needs in violation of the Eighth Amendment. (*See id.* at ¶ 11.)

### *Defendant's Motion to Dismiss*

Defendant Bellevue now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.

The court must accept as true all factual allegations and draw all reasonable inferences in plaintiffs favor. *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008). This already-liberal pleading standard "applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d. Cir.1998). The court must therefore interpret plaintiffs claims as raising the strongest arguments they suggest. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006).

**\*2** Under 42 U.S.C. § 1983, "a person acting under color of law who 'subjects, or causes to be subjected any citizen of the United States' to deprivation of his constitutional rights is liable to the party injured." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Municipal liability exists where the "execution of a government's policy or custom ... inflicts the injury." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Where, as here, defendant is a municipal entity, plaintiff must therefore show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista,* 702 F.2d at 397.

To establish a violation of the Eighth Amendment due to inadequate treatment, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The official must have had a "sufficiently culpable state of mind" because "only the unnecessary *and wanton* infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (internal quotation marks and citations omitted). Deliberate indifference therefore "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). Instead, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837. In short, the official must know of and disregard an excessive risk to inmate health or safety. *Id.*

Plaintiffs *pro se* complaint is at times imprecise. But the court —applying a liberal gloss—finds his allegations sufficient. As discussed above, plaintiff alleges that he initially received CPAP treatment at Bellevue but that a Bellevue doctor, despite promising that plaintiffs CPAP treatment would continue, then ordered his transfer to a different location where the treatment was unavailable. The court must draw reasonable inferences in plaintiffs favor, particularly in light of his *pro se* status. *Goldstein,* 516 F.3d at 56; *Chance,* 143 F.3d at 701. Although plaintiff does not use the phrase "policy or custom," it is implicit that he is alleging that the "doctor's order" was according to policy or custom. (*See* Dkt. No. 40, Second Am. Compl. at 8). There is certainly no allegation that the doctor's order was unauthorized, and plaintiff ultimately seeks to "correct[ ] ... the procedure used to deal with CPAP patients." (*Id.* at 11.)

Plaintiff also sufficiently pleads deliberate indifference to his medical needs. Defendant admits that deliberate indifference "entails ... *something less than* acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." (Dkt. No. 57, Mot. to Dismiss ¶ 13 (quoting *Farmer,* 511 U.S. at 835) (emphasis added).) And yet defendant then argues that the complaint fails to state a claim because "there is no way to read the Allegations to state that any of the treatment described was undertaken 'for the very purpose of causing harm or with the knowledge that harm will result.' " (*Id.* at ¶ 15.) Defendant therefore misapplies its own rule. Plaintiff need not allege a purpose to cause him harm-he need claim only knowledge and disregard of the risk of that harm. *See Kearsey v. Williams,* No. 99–cv– 8646, 2005 WL 2125874, at *4–5 (S.D.N.Y. Sept. 1, 2005). Again, after drawing all reasonable inferences, the complaint is adequate. Plaintiff alleges that he initially received CPAP treatment at Bellevue but then, pursuant to a Bellevue doctor's order, he was transferred to a facility where he could not get the treatment. These allegations imply knowledge that the treatment was necessary and, despite that knowledge, disregard of the risk involved in ordering a transfer that would deprive plaintiff of that treatment. Plaintiff will ultimately have to substantiate his allegations with evidence, but the claims he now makes are sufficient at this early stage.

*3 In sum, plaintiff sufficiently alleges a cause of action. Defendant's motion to dismiss is denied. [2]

### *Plaintiff's Motion for Counsel*

On December 3, 2014, the court granted plaintiffs motion for counsel, noting the "scarcity of volunteer attorneys" and that there was "no guarantee" that one would take the case. (Dkt. No. 61, Order at 5.) Plaintiff renewed this motion on December 18, 2014.

Plaintiff need not file additional motions for counsel. The court has already granted his request and the *pro se* office continues to seek counsel willing to take the case. Unfortunately for plaintiff, the *pro se* office has so far been unable to find a volunteer.

Because the court has already granted plaintiffs request for counsel, his outstanding motion is denied as moot. The court reiterates, though, that appointment of counsel is appropriate in this case. (*See id.*)

### *Plaintiff's Motion for Default Judgment*

On September 17, 2014, plaintiff moved for default judgment against defendants Bellevue and Dr. Farakas. (Dkt. No. 42.) Defendant Bellevue filed a notice of appearance just one week later and responded to plaintiff's motion and complaint by the court-ordered deadlines. (Dkt.Nos.52, 55.) Attempts to serve Dr. Farakas have so far failed. (Dkt. No. 78.)

Pursuant to Federal Rule of Civil Procedure 55(a) and Local Rules 55.1 and 55.2(b), a party must obtain entry of default from the Clerk before seeking a default judgment. Because plaintiff has failed to follow these steps as to either defendant, his motion is procedurally deficient and must be denied.

### *Service of Defendant Farakas*

Plaintiff also seeks an extension of time to serve Dr. Farakas. The court grants his request and reminds him that the operative complaint is the Second Amended Complaint (Dkt. No. 40)-not the Third Amended Complaint (Dkt. No. 72), which the court already dismissed (Dkt. No. 73).

To allow plaintiff, who is proceeding *in forma pauperis,* to effect service on Dr. Farakas through the U.S. Marshals Service, the Clerk of Court is instructed to send plaintiff another U.S. Marshals Service Process Receipt and Return form ("USM–285 form") for her. Plaintiffs new mailing address is 1274 Pacific Street, Apt. 12, Brooklyn, N.Y. 11216.

The court also grants plaintiff's request to stay proceedings until his release on October 21, 2015. Accordingly, within sixty days of that date that is, by December 20, 2015–plaintiff must complete the USM–285 form for Dr. Farakas and return it to the court. Dr. Farakas should be served at the following address:

> Melanie Farakas, M.D.
>
> *Attn: Risk Management*
>
> Bellevue Hospital
>
> 462 1st Avenue
>
> New York, N.Y. 10016

If plaintiff does not wish to use the Marshals Service to effect service, he must notify the court in writing by December 20, 2015, and request that a summons be issued directly to him. If plaintiff fails to return the USM–285 form or request a summons, the court may dismiss Dr. Farakas as a defendant due to plaintiffs failure to prosecute.

 **\*4** Upon receipt of the completed USM–285 form, the Clerk of Court shall issue a summons and deliver to the Marshals Service all of the paperwork necessary for the Marshals Service to effect service upon Dr. Farakas.

No matter what method of service plaintiff chooses, he must effect service within 120 days of the date the summons is issued. It is plaintiffs responsibility to inquire of the Marshals Service as to whether service has been made and, if necessary, to request an extension of time for service. *See Meilleur v. Strong,* 682 F.3d 56, 63 (2d Cir.2012). If plaintiff has not made service or requested an extension within 120 days of issuance of the summons, the court may dismiss Dr. Farakas as a defendant due to plaintiffs failure to prosecute. *See* Fed.R.Civ.P. 4(m) and 41(b).

### *Conclusion*

The court denies defendant's motion to dismiss, plaintiffs motion for counsel, and plaintiffs motion for default judgment. The court also grants plaintiffs request for a stay and an extension of time to serve Dr. Farakas. The clerk may close the motions listed at docket numbers 42, 55, 67, and 80.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5772201

---

### Footnotes

1     The complaint refers to Dr. Farakas as "John Doe Doctor," but she was later identified. (Dkt. No. 51.)

2     Defendant also seeks to dismiss any "pendant" state-law claims "[i]f the Court grants a dismissal of the federal claims." (Dkt. No. 57, Mot. to Dismiss ¶ 19.) Because the court does not dismiss the federal claims, defendant's argument is moot.

End of Document     © 2024 Thomson Reuters. No claim to original U.S. Government Works.