# EXHIBIT 30

Case 1:17-cv-02989-AT   Document 1816-30   Filed 02/06/24   Page 2 of 6

U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc., Not Reported in F.Supp.2d...

2009 WL 92826
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

UNITED STATES of America
ex rel. Ben BANE, Plaintiff,
v.
BREATHE EASY PULMONARY
SERVICES, INC., et al., Defendants.

No. 8:06–cv–40–T–33MAP.
|
Jan. 14, 2009.

West KeySummary

1    **Federal Civil Procedure** 🔑 Failure to
Respond; Sanctions

Relator, who sued medical service providers
pursuant to the Federal Civil False Claims Act
(FCA), was substantially justified in failing to
disclose a portion of information received from
a non-party, and its use of that evidence did
not significantly prejudice a medical equipment
company. The failure to disclose was partial
and inadvertent. Therefore the drastic solution
of exclusion of the undisclosed evidence was
unwarranted. False Claims Act, § 2, 31 U.S.C.A.
§ 3729; Fed.Rules Civ.Proc.Rule 37(c)(1), 28
U.S.C.A.

**Attorneys and Law Firms**

Barry A. Cohen, Christopher P. Jayson, Kevin J. Darken,
Cohen, Jayson & Foster, PA, Tampa, FL, for Plaintiff.

Stephen Vincent Iglesias, Law Office of Stephen V. Iglesias,
PA, Donald H. Whittemore, Jessica Kirkwood Alley, Jolee
Land, Lawrence Phillip Ingram, Phelps Dunbar, LLP, Tampa,
FL, Ralph L. Marchbank, Jr., Dickinson & Gibbons, PA,
Sarasota, FL, for Defendants.

*ORDER*

VIRGINIA M. HERNANDEZ COVINGTON, District
Judge.

 **\*1**  This matter comes before the Court upon Defendant
Lincare's Motion to Strike or Exclude Portions of Composite
Exhibits 1 and 2 to Relator's Response to Lincare's Motion
for Summary Judgment (Doc. # 211), filed on December 10,
2008. Relator filed a response (Doc. # 213) on December
23, 2008, and Lincare filed a reply (Doc. # 238) on January
12, 2009. For the reasons stated below, Lincare's motion is
denied.

**I. Background**
On July 24, 2007, Relator filed his Second Amended
Complaint (Doc. # 35) against Breathe Easy Pulmonary
Services, Inc., and Premier Cardio Pulmonary Medical,
Inc., (collectively "Breathe Easy"), along with Lincare
Holdings, Inc, and Lincare, Inc. (collectively "Lincare"),
seeking to recover damages and civil penalties pursuant to
the Federal Civil False Claims Act ("FCA"), 31 U.S.C.
§§ 3729, *et seq.* Relator alleges that Lincare, a durable
medical equipment company (DME), conspired with Breathe
Easy, two independent diagnostic testing facilities (IDTFs),
and other IDTFs around the country to submit fraudulent
claims for payment to Medicare for medically unnecessary
and redundant additional services performed in conjunction
with pulse oximetry testing. Lincare is alleged to have
participated in the conspiracy by obtaining and forwarding
to Breathe Easy order forms and prescriptions for pulse
oximetry with knowledge that Breathe Easy was going to
perform additional, unauthorized tests.

On March 20, 2008, Relator notified Lincare and Breathe
Easy of its intent to serve First Coast Service Options,
a Florida Medicare carrier, with a subpoena duces tecum
requesting medical claims forms and related documentation
concerning claims submitted by Breathe Easy during the
years 2000–2007. (Doc. # 213 at 2, 34–43.) On March 27,
2008, Lincare requested that Relator provide it with "copies
of any documents received in response to Relator's Notice
of Production ... directed to First Coast Service Options,
Inc." (Doc. # 211–3.) Relator then served First Coast with the
subpoena duces tecum on March, 31, 2008. (Doc. # 213 at 2.)

Breathe Easy filed a motion to quash or modify the subpoena duces tecum (Doc. # 107) on April 3, 2008, arguing that the subpoena was too broad and that it would compel First Coast to reveal patients' protected health information. First Coast and Relator then filed a motion for a Privacy Act Protective Order (Doc. # 117), which was granted and the Protective Order entered on May 7, 2008 (Doc. # 125). Thereafter, Relator and Breathe Easy reached an agreement as to the information to be released by First Coast to Relator, thereby mooting the motion to quash. (Doc. # 213 at 4.) Counsel for Lincare was copied on the letter from Breathe Easy to Relator that memorialized the terms of this agreement. (*Id.*)

Shortly after receiving this letter, on May 14, 2008, Lincare contacted Relator indicating that it understood that Relator would soon be receiving the requested documents from First Coast and reminding Relator to provide Lincare with copies of those documents once they were received. *(Id.;* Doc. # 219 at 18.) On May 20, 2008, Relator received from First Coast a disc containing claims history data, however, it was discovered that the disc did not contain patient names as was specifically requested by Relator. (Doc. # 213 at 5.) First Coast then sent a second CD to Relator which included a patient names field as well as the same information contained in the first CD. (*Id.*) Counsel for Relator instructed an assistant to copy both CDs and deliver them to Lincare. (*Id.*) On May 23, 2008, two CDs were hand delivered to Lincare. (*Id.*)

 **\*2**  On November 3, 2008, Lincare filed its motion for summary judgment (Doc. # 199) arguing, among other things, that Relator's claims must fail because he has offered no evidence of a single specific fraudulent claim submitted by Breathe Easy to Medicare. Relator's response included two Composite Exhibits containing documents that Relator alleges establish both Breathe Easy's fraudulent Medicare claims and Lincare's participation in the fraudulent conduct. (Doc. # 210 at 17–18.)[1] The Composite Exhibits include copies of Breathe Easy Order Forms, doctors' prescriptions, test results, and Medicare claims history reports reflecting payments for tests that were allegedly performed by Breathe Easy without physicians' consent. Courtesy copies of these Composite Exhibits were delivered to Lincare on December 1, 2008. (Doc. # 211 at 4.)

After reviewing the Composite Exhibits and noting that patient names were included as part of Medicare claims history data, Lincare contacted counsel for Relator on December 2, 2008, and informed him that the Composite

Exhibits contained "numerous documents that were not previously disclosed or provided to our firm." (*Id.;* Doc. # 211–6.) Relator's responsive letter denied Lincare's assertions and detailed the three sources of information from which the Composite Exhibits had been drawn, as well as how those sources had previously been made available to Lincare. (Doc. # 211–7.) It was ultimately discovered that neither of the two CDs provided by Relator to Lincare on May 23, 2008, contained the names of the patients whose claims had been paid by Medicare. (Doc.211 at 4; 213 at 8.)

Upon discovering that Lincare had not been provided with the second First Coast CD, Relator copied the CD containing patient names and delivered it to Lincare on December 5, 2008. (Doc. # 213 at 4.) Lincare contends that the December 5, 2008, CD still did not exactly "match" the documents detailing Medicare claims history data that were contained in the Composite Exhibits. (Doc. # 211 at 5.) Relator concedes that it created the Medicare claims history report entries in the Composite Exhibits by sorting the data contained on the First Coast CDs. (Doc. # 213 at 6–8.)

Lincare now asks that the undisclosed portions of the Composite Exhibits be stricken or excluded and that all reference to those exhibits be stricken from Relator's response. Lincare asserts that Relator was obligated under procedural rules to provide these documents to Lincare before the close of discovery and that Lincare had no reason to know of these documents' existence before receiving them on December 1, 2008. In addition, Lincare contends that the Medicare claims history data contained in the Composite Exhibits should be excluded because it does not match the data on the First Coast CDs and cannot be authenticated.

## II. Legal Standard
Lincare seeks the requested relief pursuant to Federal Rule of Civil Procedure 37(c)(1), which provides in pertinent part:

> **\*3**  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Case 1:17-cv-02989-AT   Document 1816-30   Filed 02/06/24   Page 4 of 6

U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc., Not Reported in F.Supp.2d...

"A party failing to comply with Rule 26 bears the burden of showing that its actions were substantially justified or harmless." *Murdick v. Catalina Marketing Corp.,* 496 F.Supp.2d 1337, 1347 (M.D.Fla.2007) (citation omitted).

The district court has broad discretion in deciding whether a failure to disclose evidence is substantially justified or harmless under Rule 37(c)(1), and it is suggested that the court be guided by the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Two Men & a Truck Int'l Inc.,* Case No. 4:08–cv–67–WS/WCS, 2008 WL 5235115, at * 2 (N.D.Fla.2008) (citing *S. States Rack & Fixture, Inc. v. Sherman–Williams Co.,* 318 F.3d 595, 597 (4th Cir.2003)).

### III. Analysis

As far as the Court can ascertain from reviewing Lincare's motion and supporting documentation, the only information that Lincare was not provided during discovery was the names of the patients listed on the Medicare claims history reports produced by First Coast. Other than patient names, all of the data included in the Medicare claims reports that Relator submitted as part of his Composite Exhibits was also contained on the CDs that Relator provided to Lincare on May 23, 2008. Therefore, the Court will analyze wether Lincare's failure to disclose the disc containing patient names was substantially justified or harmless under the five factors cited in *Two Men.*

As to the first factor, Lincare claims that it was surprised by the information in the Composite Exhibits because patient names were not included on the original CDs and "there was no reason for Lincare to believe that the Non–Disclosed Documents even existed." (Doc. # 211 at 3.) The Court finds this assertion to be unsupported by the record in this case. Although the First Coast discs provided to Lincare on May 23, 2008, left off patient names, Lincare was fully aware that Relator was seeking such information from First Coast in order to establish Medicare payments for unnecessary tests on certain Breathe Easy's clients. Relator's Notice of Production, which Lincare confirms it received, broadly requested all medicare claims and explanation of benefits related to Breathe Easy testing.

In addition, although Lincare asserts that it had no reason to know that the scope of Relator's subpoena duces tecum directed to First Coast had been narrowed and included a request for patient names, Lincare was copied on several letters between counsel for Breathe and Relator pertaining to just this issue. [2] For example, a May 9, 2008, letter from Breathe Easy's attorney suggested that Relator obtain from First Coast a list of patient files that Breathe Easy could then match with Lincare-related oxygen referrals. (*See* Doc. # 219, Ex. 11.) A subsequent letter discussed Breathe Easy's understanding that First Coast was going to produce claims histories containing nine different categories of information, one of which was patient names. (*See* Doc. # 219, Ex. 12.) It is evident that Lincare received and reviewed those letters because shortly afterward, Lincare wrote to Relator and reminded him to provide Lincare with copies of those documents once they were received from First Coast. Those letters referencing Relator's intent to obtain patient names as part of its discovery from First Coast undermine Lincare's claim of surprise.

**\*4** Relator's possession of patient names was also evidenced in an affidavit attached to Relator's response to Defendants' emergency motion for protective order, which referred to Relator's sorting of the data produced by First Coast by various categories and then identifying those beneficiaries that had claims paid under the relevant procedure codes. (Doc. # 156–4.) Relator could not have identified beneficiaries who had particular Medicare claims paid unless it had been provided with patient names by First Coast. Thus, this affidavit also provided notice to Lincare that Relator possessed the names of Medicare beneficiaries. Furthermore, Lincare knew that Relator had received copies of patient records, including order forms and prescriptions produced by Lincare and Breathe Easy, showing the names of patients who received the pertinent testing and evaluation by Lincare. (Doc. # 211 at 2.) Thus, even if Lincare was unaware that the First Coast documents received by Relator contained patient names, it knew that Relator possessed testing order forms and prescriptions with patient names and that he was seeking claims information from the Florida Medicare carrier pertaining to those patients' treatments. Thus, Relator's filing of Exhibits that compiled information matching patients with Medicare claims could not have been surprising, as Lincare claims.

Because Lincare has not established that it had no reason to know of Relator's possession of this information, the Court is not persuaded that Lincare will be significantly prejudiced

by the inclusion of patient names in Relator's Composite Exhibits. In its motion to strike, Lincare asserts no prejudice other than the fact that "Relator ... relies heavily upon these documents and the inferences that he attempts to draw from them." (*Id.* at 11.) However, Lincare concedes that "the Non–Disclosed documents should not affect the ruling on Lincare's Motion for Summary Judgment." (*Id.*)

In its subsequent reply, Lincare raises new claims of prejudice based on its inability to conduct discovery regarding the contents of the Composite Exhibits or the second First Coast CD. (Doc. # 238 at 5.) The majority of the discovery that Lincare asserts that it would have conducted as to this evidence concerns the reliability and authenticity of the First Coast data. (*Id.* at 5, n. 11.) The Court does not find this argument particularly persuasive, as Lincare had ample opportunity to determine the reliability and authenticity of the data on the first CD produced by First Coast, which was identical to the non-produced disc other than the missing patient names. Evidently, Lincare did not find it necessary to conduct such discovery regarding the CD it received on May 23, 2008. Therefore, the Court is not convinced that Lincare is prejudiced by its inability to do so now.

As to the second factor, Lincare's ability to cure the surprise, Lincare simply argues that reopening discovery would not serve to cure the prejudice because it would pose a significant burden on Lincare and would allow Relator to benefit from his failure to comply with discovery rules. (*Id.* at 11–13.) Although it is true that discovery cannot be reopened at this point in the proceedings, the Court does not believe that further discovery is needed based on the limited nature of the undisclosed information. As stated above, any prejudice to Lincare caused by the missing patient names on the First Coast CD is minimal at best.

 **\*5**  Third, the Court cannot see, and the parties have not raised, any possible disruption of the trial that would result from inclusion of this evidence. Regarding the fourth factor, the Court finds that the importance of this evidence weighs in favor of allowing it. Without the names of the Medicare beneficiaries, it would be extremely difficult, if not impossible, for Relator to link Medicare payments for certain tests to the corresponding Breathe Easy clients. As the documents in the Composite Exhibits represent Relator's only evidence of specifically identifiable false claims, the Court finds that the need for this evidence outweighs any prejudice to Lincare. [3]

The final factor goes to whether Relator has shown substantial justification for his failure to disclose. For purposes of Rule 37, a party's discovery conduct is substantially justified "if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *Devaney v. Cont'l Am. Ins. Co.,* 989 F.2d 1154, 1163 (11th Cir.1993) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Lincare has provided ample evidence to support its assertion that its failure to provide Lincare with the First Coast CD containing patient names was nothing more than an innocent mistake.

Relator has shown that it copied and hand-delivered the CDs to Lincare as soon as they were received from First Coast. Relator received one CD from First Coast on May 20, 2008, and then a second CD on May 21, 2008, a fact that is established by letter and email correspondence between Relator and First Coast, and then it made several copies of those CDs to supply to different entities. Under those circumstances, it is plausible that counsel for Relator might have mistakenly provided to Lincare two copies of the May 20, 2008, disc rather than one copy each of the May 20 and May 21 discs.

There is no evidence that Relator was attempting to conceal the fact that he possessed Medicare claims information that included patient names. Nor does the Court discern any particular benefit to Relator in failing to disclose that information to Lincare, especially when the undisclosed information was clearly provided to the other defendants. As discussed above, Relator on several occasions made reference to his intention to obtain patient names and other information regarding Medicare claims from First Coast, as well as to his subsequent sorting of that information to match beneficiaries to specific Breathe Easy claims. Under these circumstances, the Court believes that reasonable people could differ as to the appropriateness of Relator's conduct. The Court finds that Relator has provided substantial justification for his failure to provide Medicare claims histories containing patient names to Lincare.

After due deliberation and consideration of the parties submissions, the Court concludes that Relator's failure to disclose a portion of the information received from non-party First Coast Service Options is substantially justified and Relator's use of that evidence does not significantly prejudice Lincare. Especially where, as here, the failure to disclose was partial and inadvertent, the drastic sanction of exclusion is

Case 1:17-cv-02989-AT   Document 1816-30   Filed 02/06/24   Page 6 of 6

U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc., Not Reported in F.Supp.2d...

unwarranted. Thus, the Court declines to strike any portions of Relator's Composite Exhibits.

**\*6** Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

Defendant Lincare's Motion to Strike or Exclude Portions of Composite Exhibits 1 and 2 to Relator's Response to Lincare's Motion for Summary Judgment (Doc. # 211) is **DENIED.**

**DONE** and **ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 92826

## Footnotes

1    Because the Exhibits contain protected information, they were filed under seal and courtesy copies were delivered to Lincare on December 1, 2008. (Doc. # 211 at 4.)

2    These letters were exchanged in an effort to resolve Breathe Easy's motion to quash the subpoena directed to First Coast, filed on April 3, 2008. (Doc. # 107.)

3    Lincare seeks to have every Medicare claims history report stricken in its entirety from the Composite Exhibit, even though it acknowledges that only the patient names were not disclosed on the CDs they received from Relator. Lincare contends that the entire claims histories should be considered non-disclosed because they are not identical to the documentation on the CDs produced by First Coast and therefore they cannot be authenticated. The Court rejects this argument. It is not improper for Relator to create a document that compiles data from other sources, as long as the data itself is accurate and verifiable. Here, each entry on the claims reports is also included on the records produced by First Coast and is therefore capable of verification.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.