# EXHIBIT A

24                                                          LC 47 3110S

Senate Bill 189

By: Senators Burns of the 23rd, Dolezal of the 27th, Brass of the 28th, Anavitarte of the 31st,

Moore of the 53rd and others

**AS PASSED**

A BILL TO BE ENTITLED

AN ACT

1  To amend Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to

2  elections and primaries generally, so as to remove the Secretary of State from the State

3  Election Board; to provide additional conflict of interest provisions for state-wide and local

4  election officers, officials, and employees relating to businesses providing goods and services

5  related to voting equipment or any other equipment related to the tabulation, auditing,

6  processing, or scanning of ballots; to provide for ballot access to certain political parties or

7  political bodies relating to nomination of presidential electors and candidates; to provide for

8  definitions; to revise provisions for determining residency for election purposes; to revise

9  provisions related to challenging electors; to provide that the text portions or machine marks

10  on ballots produced by ballot marking devices shall be counted for vote tabulation and

11  recount purposes instead of any machine coding; to authorize the use of physical ballots in

12  certain circumstances; to provide for chain of custody and related procedures for absentee

13  ballots; to provide timelines for the tabulation of absentee ballots and ballots cast by advance

14  voting; to provide procedures for requesting high resolution scanned images of ballots; to

15  provide for a pilot program to audit paper ballots using optical character recognition; to

16  revise a timing limitation on holding certain special elections in conjunction with certain

17  state-wide primaries or elections; to provide for related matters; to provide effective dates;

18  to repeal conflicting laws; and for other purposes.

24                                                                LC 47 3110S

19         BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

20                                    **SECTION 1.**

21    Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to elections and

22    primaries generally, is amended in Code Section 21-2-30, relating to creation, membership,

23    terms of service, vacancies, quorum, bylaws, meetings, and executive director, by revising

24    subsections (d) and (f) as follows:

25    "(d)  ~~The Secretary of State shall be an ex officio nonvoting member of the board.~~  Three

26         voting members of the board shall constitute a quorum, and no vacancy on the board shall

27         impair the right of the quorum to exercise all the powers and perform all the duties of the

28         board.  The board shall adopt a seal for its use and bylaws for its own government and

29         procedure."

30    "(f)  If any member of the board~~, other than the Secretary of State,~~ shall qualify as a

31         candidate for any public office which is to be voted upon in any primary or election

32         regulated by the board, that member's position on the board shall be immediately vacated

33         and such vacancy shall be filled in the manner provided for filling other vacancies on the

34         board."

35                                    **SECTION 2.**

36    Said chapter is further amended in Code Section 21-2-35, relating to emergency rules and

37    regulations, imminent peril requirement, and procedures, by revising paragraph (2) of

38    subsection (a) as follows:

39    "(2)  Immediately upon the setting of the date and time of the meeting at which such

40         emergency rule or regulation is to be considered give notice by email of its intended

41         action to:

42         (A)  The Governor;

43         (B)  The Lieutenant Governor;

44      (C)  The Speaker of the House of Representatives;

45      (D)   The chairpersons of the standing committees of each house of the General

46      Assembly tasked with election matters;

47      (E)  The Secretary of State;

48      (E)(F)  Legislative counsel; and

49      (F)(G)   The chief executive officer of each political party registered pursuant to

50      subsection (a) of Code Section 21-2-110; and"


51                                    **SECTION 3.**

52  Said chapter is further amended by adding a new Code section to read as follows:

53  "21-2-19.

54  (a)  As used in this Code section, the term:

55  (1)  'Business' means any corporation, partnership, proprietorship, firm, enterprise,

56  franchise, association, organization, self-employed individual, trust, or other legal entity.

57  (2)  'Family' means spouse and dependents.

58  (3) 'Full-time' means 30 hours of work for the state per week for more than 26 weeks per

59  calendar year.

60  (4) 'Part-time' means any amount of work other than full-time work.

61  (5) 'Substantial interest' means the direct or indirect ownership of more than 5 percent

62  of the assets or stock of any business.

63  (6)  'Transact business' or 'transact any business' means to sell or lease any personal

64  property, real property, or services on behalf of oneself or on behalf of any third party as

65  an agent, broker, dealer, or representative and to purchase surplus real or personal

66  property on behalf of oneself or on behalf of any third party as an agent, broker, dealer,

67  or representative.

68  (b)  In addition to and notwithstanding any contrary provisions of Chapter 10 of Title 45,

69  it shall be unlawful for any member of the State Board of Elections, the Secretary of State,

70  a county or municipal superintendent or registrar, or any full-time, part-time, or contractual

71  employee of such officer or official, for himself or herself or on behalf of any business, or

72  for any business in which such officer, official, or employee or member of his or her family

73  has a substantial interest to transact any business with a business that has contracted with

74  the state, or any county or municipal government, to provide goods or services related to

75  voting equipment or any other equipment related to the tabulation, auditing, processing, or

76  scanning of ballots."


**SECTION 3.1.**

78  Code Section 21-2-172 of the Official Code of Georgia Annotated, relating to nomination

79  of presidential electors and candidates of political bodies by convention, is amended by

80  adding a new subsection to read as follows:

81  "(g)  Notwithstanding any provision of law to the contrary, any political party or political

82  body which has obtained ballot access in no fewer than 20 states or territories for the office

83  of presidential elector shall be allowed to qualify candidates for presidential elector and

84  receive access to the general election ballot for the purpose of election of the office of

85  presidential elector."


**SECTION 4.**

87  Said chapter is further amended by revising Code Section 21-2-217, relating to rules for

88  determining residence, as follows:

89  "21-2-217.

90  (a)  In determining the residence of a person desiring to register to vote or to qualify to run

91  for elective office, the following rules shall be followed so far as they are applicable:

92  (1)  The residence of any person shall be held to be in that place in which such person's

93  habitation is fixed, without any present intention of removing therefrom;

94    (1.1)  The mailing address for election purposes of any person of this state who is

95    homeless and without a permanent address shall be the registrar's office of the county in

96    which such person resides;

97    (2) A person shall not be considered to have lost such person's residence who leaves such

98    person's home and goes into another state or county or municipality in this state, for

99    temporary purposes only, with the intention of returning, unless such person shall register

100    to vote or perform other acts indicating a desire to change such person's citizenship and

101    residence; provided, however, that:

102    (A)  If a person registers to vote in another state, county, municipality, or legislative

103    district of any type or sort, that person shall be deemed to have changed his or her

104    residency;

105    (B) If a person returns to his or her original or new residence after voting or registering

106    to vote in a different or separate jurisdiction, such person shall update their voter

107    registration with their current residency jurisdiction in order to be deemed a valid

108    registered elector and resident of such jurisdiction for voting purposes; and

109    (C) Proof of ownership or rental of a post office box or private mailbox service address

110    within a particular jurisdiction shall not constitute sufficient grounds to establish a

111    person's residency within that particular jurisdiction;

112    (3)  A person shall not be considered to have gained a residence in any county or

113    municipality of this state into which such person has come for temporary purposes only

114    without the intention of making such county or municipality such person's permanent

115    place of abode;

116    (4)  If a person removes to another state with the intention of making it such person's

117    residence, such person shall be considered to have lost such person's residence in this

118    state;

119    (4.1)  If a person removes to another county or municipality in this state with the
120    intention of making it such person's residence, such person shall be considered to have
121    lost such person's residence in the former county or municipality in this state;

122    (5)  If a person removes to another state with the intention of remaining there an
123    indefinite time and making such state such person's place of residence, such person shall
124    be considered to have lost such person's residence in this state, notwithstanding that such
125    person may intend to return at some indefinite future period;

126    (6)  If a person removes to another county or municipality within this state with the
127    intention of remaining there an indefinite time and making such other county or
128    municipality such person's place of residence, such person shall be considered to have
129    lost such person's residence in the former county or municipality, notwithstanding that
130    such person may intend to return at some indefinite future period;

131    (7)  The residence for voting purposes of a person shall not be required to be the same as
132    the residence for voting purposes of his or her spouse;

133    (8)  No person shall be deemed to have gained or lost a residence by reason of such
134    person's presence or absence while enrolled as a student at any college, university, or
135    other institution of learning in this state;

136    (9)  The mere intention to acquire a new residence, without the fact of removal, shall
137    avail nothing; neither shall the fact of removal without the intention;

138    (10)  No member of the armed forces of the United States shall be deemed to have
139    acquired a residence in this state by reason of being stationed on duty in this state;

140    (11)  If a person removes to the District of Columbia or other federal territory, another
141    state, or foreign country to engage in government service, such person shall not be
142    considered to have lost such person's residence in this state during the period of such
143    service; and the place where the person resided at the time of such person's removal shall
144    be considered and held to be such person's place of residence;

145    (12)  If a person is adjudged mentally ill and is committed to an institution for the

146    mentally ill, such person shall not be considered to have gained a residence in the county

147    in which the institution to which such person is committed is located;

148    (13)  If a person goes into another state and while there exercises the right of a citizen by

149    voting, such person shall be considered to have lost such person's residence in this state;

150    (14)  The specific address in the county or municipality in which a person has declared

151    a homestead exemption, if a homestead exemption has been claimed, shall be deemed the

152    person's residence address; and

153    (15)  For voter registration purposes, the board of registrars and, for candidacy residency

154    purposes, the Secretary of State, election superintendent, or hearing officer may consider

155    evidence of where the person receives significant mail such as personal bills and any

156    other evidence that indicates where the person resides.

157    (b)  In determining a voter's qualification to register and vote, the registrars to whom such

158    application is made shall consider, in addition to the applicant's expressed intent, any

159    relevant circumstances determining the applicant's residence.  The registrars taking such

160    registration may consider the applicant's financial independence, business pursuits,

161    employment, income sources, residence for income tax purposes, age, marital status,

162    residence of parents, spouse, and children, if any, leaseholds, sites of personal and real

163    property owned by the applicant, motor vehicle and other personal property registration,

164    National Change of Address program information sponsored by the United States Postal

165    Service, and other such factors that the registrars may reasonably deem necessary to

166    determine the qualification of an applicant to vote in a primary or election.  The decision

167    of the registrars to whom such application is made shall be presumptive evidence of a

168    person's residence for voting purposes."

LC 47 3110S

169                                  **SECTION 5.**

170  Said chapter is further amended by revising subsection (b) of Code Section 21-2-230, relating

171  to challenge of persons on list of electors by other electors, procedure, hearing, and right of

172  appeal, and by adding a new subsection to read as follows:

173  "(b)  Upon the filing of such challenge, the board of registrars shall immediately consider

174   such challenge and determine whether probable cause exists to sustain such challenge.  If

175   the registrars do not find probable cause, the challenge shall be denied.  If the registrars

176   find probable cause, the registrars shall notify the poll officers of the challenged elector's

177   precinct or, if the challenged elector voted by absentee ballot, notify the poll officers at the

178   absentee ballot precinct and, if practical, notify the challenged elector and afford such

179   elector an opportunity to answer.  Probable causes shall include, but not be limited to, an

180   elector who is deceased; an elector voting or registering to vote in a different jurisdiction;

181   an elector obtaining a homestead exemption in a different jurisdiction; or an elector being

182   registered at a nonresidential address  as confirmed or listed by or in a government office,

183   data base, website, or publicly available sources derived solely from such governmental

184   sources.  If a challenged elector's name appears on the National Change of Address data

185   base, as maintained by the United States Postal Service, as having changed such elector's

186   residence to a different jurisdiction, the presence of such elector's name on such data base

187   shall be insufficient cause to sustain the challenge against the elector unless additional

188   evidence would indicate that the elector has lost his or her residency as determined

189   pursuant to Code Section 21-2-217; provided, however, that:

190   (1)  Any challenge of an elector within 45 days of a primary, run-off primary, election,

191    or run-off election shall be postponed until the certification of such primary, election, or

192    runoff is completed; and

193   (2)  Any challenge of an elector who is determined eligible pursuant to the residency

194    determinations provided for in paragraph (8), (10), or (11) of subsection (a) of Code

195    Section 21-2-217 shall be deemed insufficient to sustain such challenge."

196    "(k)  Any challenge of an elector that occurs during a primary or general election shall

197    continue through the run-off primary or run-off election of such primary or general

198    election."


199                                                    **SECTION 6.**

200    Said chapter is further amended in Code Section 21-2-300, relating to provision of new

201    voting equipment by state, uniform system for all elections to be conducted with the use of

202    scanning ballots marked by electronic ballot markers, pilot programs, county responsibilities,

203    education, and county and municipal contracts for equipment, by adding a new subsection

204    to read as follows:

205    "(f)(1)  Notwithstanding any provision of this Code section to the contrary, provided that

206    the county election superintendent has petitioned and received the approval of the State

207    Election Board at least 10 days prior to the beginning of advance voting, in any election

208    with less than 5,000 registered electors, such superintendent may provide the electors

209    physical ballots on the same type of ballot that is used for absentee ballots pursuant to

210    subsection (a) of Code Section 21-2-383 and allow electors to mark their ballot using a

211    pen, pencil, or similar non-electronic writing tool as an alternative to using electronic

212    ballot marking devices.

213    (2)  Such physical ballots may only be used to conduct:

214    (A)  Special primaries, special elections, or runoffs thereof for county offices; or

215    (B)  Special elections to present a question to the voters of a county.

216    Furthermore, such primary, special primary, election, or special election shall occur

217    independently and apart from a presidential preference primary, state-wide general

218    primary, state-wide special primary, state-wide general election, or state-wide special

219    election."

24                                                                 LC 47 3110S

220                              **SECTION 7.**

221  Said chapter is further amended in Code Section 21-2-379.23, relating to requirements for

222  ballot display, role of Secretary of State, and printed paper ballot controls during recount, by

223  revising subsection (d) as follows:

224   ″(d)  The <u>text portion of the</u> paper ballot marked and printed by the electronic ballot marker

225   <u>indicating the elector's selection</u> shall constitute the official ballot and shall ~~be used for, and~~

226   ~~govern the result in,~~ <u>constitute the official vote for purposes of vote tabulation,</u> any recount

227   conducted pursuant to Code Section 21-2-495<u>,</u> and any audit conducted pursuant to Code

228   Section 21-2-498.  <u>The official tabulation count of any ballot scanner shall be based upon</u>

229   <u>the text portion or the machine mark, provided that such mark clearly denotes the elector's</u>

230   <u>selection and does not use a QR code, bar code, or similar coding, of such ballots and not</u>

231   <u>any machine coding that may be printed on such ballots.</u>″

232                              **SECTION 8.**

233  Said chapter is further amended in Code Section 21-2-386, relating to safekeeping,

234  certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to

235  location designated by superintendent, duties of superintendent and managers, precinct

236  returns, report of returns of verified and accepted absentee ballots cast as soon as possible

237  following closing of polls, notification of challenged elector, and unlawful disclosure of

238  tabulation results, by revising paragraph (3) of subsection (a) as follows:

239   ″(3)  A county election superintendent may, in his or her discretion, after 7:00 A.M. on

240   the day of the primary, election, or runoff begin tabulating the absentee ballots<u>; provided,</u>

241   <u>however, that all absentee ballots that have been verified and accepted pursuant to</u>

242   <u>subparagraph (a)(1)(B) of this Code section by the Monday prior to the day of the</u>

243   <u>primary, election, or runoff  shall be tabulated and the results reported by no later than</u>

244   <u>8:00 P.M. on the day of such primary, election, or runoff or within one hour of the</u>

245   <u>closing of all polls in such county, whichever occurs later.</u>  If the county election

246    superintendent chooses to open the inner envelopes and begin tabulating such ballots
247    prior to the close of the polls on the day of the primary, election, or runoff, the
248    superintendent shall notify in writing, at least seven days prior to the primary, election,
249    or runoff, the Secretary of State of the superintendent's intent to begin the absentee ballot
250    tabulation prior to the close of the polls.  The county executive committee or, if there is
251    no organized county executive committee, the state executive committee of each political
252    party and political body having candidates whose names appear on the ballot for such
253    election in such county shall have the right to designate two persons and each
254    independent and nonpartisan candidate whose name appears on the ballot for such
255    election in such county shall have the right to designate one person to act as monitors for
256    such process.  In the event that the only issue to be voted upon in an election is a
257    referendum question, the superintendent shall also notify in writing the chief judge of the
258    superior court of the county who shall appoint two electors of the county to monitor such
259    process."

## SECTION 9.

260
261    Said chapter is further amended by revising Code Section 21-2-386, relating to safekeeping,
262    certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to
263    location designated by superintendent, duties of superintendent and managers, precinct
264    returns, report of returns of verified and accepted absentee ballots cast as soon as possible
265    following closing of polls, notification of challenged elector, and unlawful disclosure of
266    tabulation results, as follows:
267    "21-2-386.
268        (a)(1)(A)  The board of registrars or absentee ballot clerk shall keep safely, unopened,
269        and stored in a manner that will prevent tampering and unauthorized access to and shall
270        document authorized access to all official absentee ballots received from absentee

271   electors prior to the closing of the polls on the day of the primary or election except as
272   otherwise provided in this subsection.
273   (B)  Upon receipt of each ballot, a registrar or clerk shall write the day and hour of the
274   receipt of the ballot on its envelope.  The registrar or clerk shall then compare the
275   number of the elector's Georgia driver's license number or state identification card
276   issued pursuant to Article 5 of Chapter 5 of Title 40 and date of birth entered on the
277   absentee ballot envelope with the same information contained in the elector's voter
278   registration records.  If the elector has affirmed on the envelope that he or she does not
279   have a Georgia driver's license or state identification card issued pursuant to Article 5
280   of Chapter 5 of Title 40, the registrar or clerk shall compare the last four digits of the
281   elector's social security number and date of birth entered on the envelope with the same
282   information contained in the elector's voter registration records.  The registrar or clerk
283   shall also confirm that the elector signed the oath and the person assisting the elector,
284   if any, signed the required oath.  If the elector has signed the elector's oath, the person
285   assisting has signed the required oath, if applicable, and the identifying information
286   entered on the absentee ballot envelope matches the same information contained in the
287   elector's voter registration record, the registrar or clerk shall so certify by signing or
288   initialing his or her name below the voter's oath.  Each elector's name so certified shall
289   be listed by the registrar or clerk on the numbered list of absentee voters prepared for
290   his or her precinct.  <u>All accepted absentee ballots shall be securely stored in either a</u>
291   <u>sealed container or appropriately secured in an access controlled room that will prevent</u>
292   <u>tampering or unauthorized access prior to the scanning of such ballots.</u>
293   (C)  If the elector has failed to sign the oath, or if the identifying information entered
294   on the absentee ballot envelope does not match the same information appearing in the
295   elector's voter registration record, or if the elector has failed to furnish required
296   information or information so furnished does not conform with that on file in the
297   registrar's or clerk's office, or if the elector is otherwise found disqualified to vote, the

298   registrar or clerk shall write across the face of the envelope 'Rejected,' giving the reason

299   therefor.  The board of registrars or absentee ballot clerk shall promptly notify the

300   elector of such rejection, a copy of which notification shall be retained in the files of

301   the board of registrars or absentee ballot clerk for at least two years.  Such elector shall

302   have until the end of the period for verifying provisional ballots contained in

303   subsection (c) of Code Section 21-2-419 to cure the problem resulting in the rejection

304   of the ballot.  The elector may cure a failure to sign the oath, nonmatching identifying

305   information, or missing information by submitting an affidavit to the board of registrars

306   or absentee ballot clerk along with a copy of one of the forms of identification

307   enumerated in subsection (c) of Code Section 21-2-417 before the close of such period.

308   The affidavit shall affirm that the ballot was submitted by the elector, is the elector's

309   ballot, and that the elector is registered and qualified to vote in the primary, election,

310   or runoff in question.  If the board of registrars or absentee ballot clerk finds the

311   affidavit and identification to be sufficient, the absentee ballot shall be counted.

312   (D)  An elector who registered to vote by mail, but did not comply with subsection (c)

313   of Code Section 21-2-220, and who votes for the first time in this state by absentee

314   ballot shall include with his or her application for an absentee ballot or in the outer oath

315   envelope of his or her absentee ballot either one of the forms of identification listed in

316   subsection (a) of Code Section 21-2-417 or a copy of a current utility bill, bank

317   statement, government check, paycheck, or other government document that shows the

318   name and address of such elector.  If such elector does not provide any of the forms of

319   identification listed in this subparagraph with his or her application for an absentee

320   ballot or with the absentee ballot, such absentee ballot shall be deemed to be a

321   provisional ballot and such ballot shall only be counted if the registrars are able to

322   verify current and valid identification of the elector as provided in this subparagraph

323   within the time period for verifying provisional ballots pursuant to Code

324   Section 21-2-419.  The board of registrars or absentee ballot clerk shall promptly notify

325     the elector that such ballot is deemed a provisional ballot and shall provide information

326     on the types of identification needed and how and when such identification is to be

327     submitted to the board of registrars or absentee ballot clerk to verify the ballot.

328     (E)  Three copies of the numbered list of voters shall also be prepared for such rejected

329     absentee electors, giving the name of the elector and the reason for the rejection in each

330     case.  Three copies of the numbered list of certified absentee voters and three copies of

331     the numbered list of rejected absentee voters for each precinct shall be turned over to

332     the poll manager in charge of counting the absentee ballots and shall be distributed as

333     required by law for numbered lists of voters.

334     (F)  All absentee ballots returned to the board or absentee ballot clerk after the closing

335     of the polls on the day of the primary or election shall be safely kept unopened by the

336     board or absentee ballot clerk and then transferred to the appropriate clerk with the

337     documentation provided for in subparagraph (a)(1)(A) of this Code section for storage

338     in a manner that will prevent tampering for the period of time required for the

339     preservation of ballots used at the primary or election and shall then, without being

340     opened, be destroyed in like manner as the used ballots of the primary or election.  The

341     board of registrars or absentee ballot clerk shall promptly notify the elector by

342     first-class mail that the elector's ballot was returned too late to be counted and that the

343     elector will not receive credit for voting in the primary or election.  All such late

344     absentee ballots shall be delivered to the appropriate clerk and stored as provided in

345     Code Section 21-2-390.

346     (G)  Notwithstanding any provision of this chapter to the contrary, until the United

347     States Department of Defense notifies the Secretary of State that the Department of

348     Defense has implemented a system of expedited absentee voting for those electors

349     covered by this subparagraph, absentee ballots cast in a primary, election, or runoff by

350     eligible absentee electors who reside outside the county or municipality in which the

351     primary, election, or runoff is held and are members of the armed forces of the United

352   States, members of the merchant marine of the United States, spouses or dependents of

353   members of the armed forces or merchant marine residing with or accompanying such

354   members, or overseas citizens that are postmarked by the date of such primary, election,

355   or runoff and are received within the three-day period following such primary, election,

356   or runoff, if proper in all other respects, shall be valid ballots and shall be counted and

357   included in the certified election results.

358   (2)(A)  Beginning at 8:00 A.M. on the third Monday prior to the day of the primary,

359   election, or runoff, the election superintendent shall be authorized to open the outer oath

360   envelope of absentee ballots that have been verified and accepted pursuant to

361   subparagraph (a)(1)(B) of this Code section, remove the contents of such outer

362   envelope, open the inner envelope marked 'Official Absentee Ballot,' and scan the

363   absentee ballot using one or more ballot scanners.  At least three persons who are

364   registrars, deputy registrars, poll workers, or absentee ballot clerks ~~must~~ shall be present

365   before commencing; and three persons who are registrars, deputy registrars, or absentee

366   ballot clerks shall be present at all times while <u>the sealed containers containing verified</u>

367   <u>and accepted absentee ballots are unsealed and verified for integrity, while</u> the absentee

368   ballot envelopes are ~~being~~ opened<u>,</u> and <u>while</u> the absentee ballots are ~~being~~ scanned.

369   However, no person shall tally, tabulate, estimate, or attempt to tally, tabulate, or

370   estimate or cause the ballot scanner or any other equipment to produce any tally or

371   tabulate, partial or otherwise, of the absentee ballots cast until the time for the closing

372   of the polls on the day of the primary, election, or runoff except as provided in this

373   Code section.  Prior to beginning the process set forth in this paragraph, the

374   superintendent shall provide written notice to the Secretary of State in writing at least

375   seven days prior to processing and scanning absentee ballots.  Such notice shall contain

376   the dates, start and end times, and location or locations where absentee ballots will be

377   processed and scanned.  The superintendent shall also post such notice publicly in a

378   prominent location in the superintendent's office and on the home page of the county

379     election superintendent's website, if the county election superintendent maintains such

380     a website.  The Secretary of State shall publish on his or her website the information

381     he or she receives from superintendents stating the dates, times, and locations where

382     absentee ballots will be processed.

383     (B)  The proceedings set forth in this paragraph shall be open to the view of the public,

384     but no person except one employed and designated by the superintendent shall touch

385     any ballot or ballot container.   Any person involved in processing and scanning

386     absentee ballots shall swear an oath, in the same form as the oath for poll officers

387     provided in Code Section 21-2-95, prior to beginning the processing and scanning of

388     absentee ballots.  The county executive committee or, if there is no organized county

389     executive committee, the state executive committee of each political party and political

390     body having candidates whose names appear on the ballot for such election shall have

391     the right to designate two persons and each independent and nonpartisan candidate

392     whose name appears on the ballot for such election shall have the right to designate one

393     person to act as monitors for such process.  In the event that the only issue to be voted

394     upon in an election is a referendum question, the superintendent shall also notify in

395     writing the chief judge of the superior court of the county who shall appoint two

396     electors of the county to monitor such process.   While viewing or monitoring the

397     process set forth in this paragraph, monitors and observers shall be prohibited from:

398     (i)  In any way interfering with the processing or scanning of absentee ballots or the

399     conduct of the election;

400     (ii)  Using or bringing into the room any photographic or other electronic monitoring

401     or recording devices, cellular telephones, or computers;

402     (iii)  Engaging in any form of campaigning or campaign activity;

403     (iv)  Taking any action that endangers the secrecy and security of the ballots;

404     (v)  Touching any ballot or ballot container;

405        (vi)  Tallying, tabulating, estimating, or attempting to tally, tabulate, or estimate,
406        whether partial or otherwise, any of the votes on the absentee ballots cast; and
407        (vii)  Communicating any information that they see while monitoring the processing
408        and scanning of the absentee ballots, whether intentionally or inadvertently, about any
409        ballot, vote, or selection to anyone other than an election official who needs such
410        information to lawfully carry out his or her official duties.
411    (C)     The State Election Board shall promulgate rules requiring reconciliation
412        procedures; prompt and undelayed scanning of ballots after absentee ballot envelopes
413        are opened; secrecy of election results prior to the closing of the polls on the day of a
414        primary, election, or runoff; and other protections to protect the integrity of the process
415        set forth in this paragraph.
416        (D)  At the conclusion of the scanning of ballots, such scanned ballots shall be stored
417        in tamper-resistant containers sealed with numbered seals, the number of which shall
418        be recorded on the chain of custody document specified by the Secretary of State, and
419        such forms shall be signed by the person storing the ballots and the date and time of
420        storage shall be entered on such forms.
421    (3) A county election superintendent may, in his or her discretion, after 7:00 A.M. on the
422        day of the primary, election, or runoff begin tabulating the absentee ballots; provided,
423        however, that all absentee ballots that have been verified and accepted pursuant to
424        subparagraph (a)(1)(B) of this Code section by the Monday prior to the day of the
425        primary, election, or runoff  shall be tabulated and the results reported by no later than
426        8:00 P.M. on the day of such primary, election, or runoff or within one hour of the
427        closing of all polls in such county, whichever occurs later.  If the county election
428        superintendent chooses to open the inner envelopes and begin tabulating such ballots
429        prior to the close of the polls on the day of the primary, election, or runoff, the
430        superintendent shall notify in writing, at least seven days prior to the primary, election,
431        or runoff, the Secretary of State of the superintendent's intent to begin the absentee ballot

432    tabulation prior to the close of the polls.  The county executive committee or, if there is

433    no organized county executive committee, the state executive committee of each political

434    party and political body having candidates whose names appear on the ballot for such

435    election in such county shall have the right to designate two persons and each

436    independent and nonpartisan candidate whose name appears on the ballot for such

437    election in such county shall have the right to designate one person to act as monitors for

438    such process.  In the event that the only issue to be voted upon in an election is a

439    referendum question, the superintendent shall also notify in writing the chief judge of the

440    superior court of the county who shall appoint two electors of the county to monitor such

441    process.

442    (4)    The county election superintendent shall publish a written notice in the

443    superintendent's office of the superintendent's intent to begin the absentee ballot

444    tabulation prior to the close of the polls and publish such notice at least one week prior

445    to the primary, election, or runoff in the legal organ of the county.

446    (5)  The process for opening absentee ballot envelopes, scanning absentee ballots, and

447    tabulating absentee ballots on the day of a primary, election, or runoff as provided in this

448    subsection shall be conducted in a manner to maintain the secrecy of all ballots and to

449    protect the disclosure of any balloting information before 7:00 P.M. on election day.  No

450    absentee ballots shall be tabulated before 7:00 A.M. on the day of a primary, election, or

451    runoff.

452    (6)  All persons conducting the tabulation of absentee ballots during the day of a primary,

453    election, or runoff, including the vote review panel required by Code Section 21-2-483,

454    and all monitors and observers shall be sequestered until the time for the closing of the

455    polls.  All such persons shall have no contact with the news media; shall have no contact

456    with other persons not involved in monitoring, observing, or conducting the tabulation;

457    shall not use any type of communication device including radios, telephones, and cellular

458    telephones; shall not utilize computers for the purpose of email, instant messaging, or

LC 47 3110S

459   other forms of communication; and shall not communicate any information concerning

460   the tabulation until the time for the closing of the polls; provided, however, that

461   supervisory and technical assistance personnel shall be permitted to enter and leave the

462   area in which the tabulation is being conducted but shall not communicate any

463   information concerning the tabulation to anyone other than the county election

464   superintendent; the staff of the superintendent; those persons conducting, observing, or

465   monitoring the tabulation; and those persons whose technical assistance is needed for the

466   tabulation process to operate.

467   (7)   The absentee ballots shall be tabulated in accordance with the procedures of this

468   chapter for the tabulation of absentee ballots.  As such ballots are tabulated, they shall be

469   placed into locked ballot boxes and may be transferred to locked ballot bags, if needed,

470   for security.  Such boxes or bags shall be sealed and witnessed and verified by each

471   person taking custody of such items by each such person's signature and date and time

472   of taking custody.  The persons conducting the tabulation of the absentee ballots shall not

473   cause the tabulating equipment to produce any count, partial or otherwise, of the absentee

474   votes cast until the time for the closing of the polls except as otherwise provided in this

475   Code section.

476   (b)   When requested by the superintendent, but not earlier than the third Monday prior to

477   a primary, election, or runoff, a registrar or absentee ballot clerk shall deliver the official

478   absentee ballot of each certified absentee elector, each rejected absentee ballot, applications

479   for such ballots, and copies of the numbered lists of certified and rejected absentee electors

480   to the location designated by the superintendent in secure, sealed containers with the chain

481   of custody documents as specified by the Secretary of State and the signature and date and

482   time of the person taking custody, and the superintendent or official receiving such

483   absentee ballots shall issue his or her receipt therefor.

484   (c)  The superintendent shall cause the verified and accepted absentee ballots to be opened

485   and tabulated as provided in this Code section.  A manager shall then open the outer

486    envelope in such manner as not to destroy the oath printed thereon and shall deposit the

487    inner envelope marked 'Official Absentee Ballot' in a ballot box reserved for absentee

488    ballots <u>with an accompanying chain of custody documentation.  Such ballot box shall be</u>

489    <u>securely sealed if it is not in the direct control of the poll officers or if it is transferred to</u>

490    <u>a different room or facility for tabulation</u>.  In the event that an outer envelope is found to

491    contain an absentee ballot that is not in an inner envelope, the ballot shall be sealed in an

492    inner envelope, initialed and dated by the person sealing the inner envelope, and deposited

493    in the ballot box and counted in the same manner as other absentee ballots, provided that

494    such ballot is otherwise proper.  Such manager with two assistant managers, appointed by

495    the superintendent, with such clerks as the manager deems necessary shall count the

496    absentee ballots following the procedures prescribed by this chapter for other ballots,

497    insofar as practicable.

498    (d)  All absentee ballots shall be counted and tabulated in such a manner that returns may

499    be reported by precinct; and separate returns shall be made for each precinct in which

500    absentee ballots were cast showing the results by each precinct in which the electors reside.

501    The superintendent shall utilize the procedures set forth in this Code section to ensure that

502    the returns of verified and accepted absentee ballots cast are reported to the public as soon

503    as possible following the closing of the polls on the day of the primary, election, or runoff.

504    Failure to utilize these procedures to ensure that the returns of verified and accepted

505    absentee ballots are reported as soon as possible following the close of polls shall subject

506    the superintendent to sanctions by the State Election Board.  If a superintendent fails to

507    report the returns of verified and accepted absentee ballots by the day following the

508    election at 5:00 P.M., the State Election Board may convene an independent performance

509    review board pursuant to Code Section 21-2-107.

510    (e)  If an absentee elector's right to vote has been challenged for cause, a poll officer shall

511    write 'Challenged,' the elector's name, and the alleged cause of challenge on the outer

512    envelope and shall deposit the ballot in a secure, sealed ballot box <u>for which there shall be</u>

513   a chain of custody document as specified by the Secretary of State on which is recorded

514   and witnessed the name and signature of each person taking custody of such ballots; and

515   it shall be counted as other challenged ballots are counted.  Where direct recording

516   electronic voting systems are used for absentee balloting and a challenge to an elector's

517   right to vote is made prior to the time that the elector votes, the elector shall vote on a paper

518   or optical scanning ballot and such ballot shall be handled as provided in this subsection.

519   The board of registrars or absentee ballot clerk shall promptly notify the elector of such

520   challenge.

521   (f)  It shall be unlawful at any time prior to the close of the polls for any person to disclose

522   or for any person to receive any information regarding the results of the tabulation of

523   absentee ballots except as expressly provided by law."

524                            **SECTION 10.**

525   Said chapter is further amended in Code Section 21-2-493, relating to computation,

526   canvassing, and tabulation of returns, investigation of discrepancies in vote counts, recount

527   procedure, pilot program for posting of digital images of scanned paper ballots, certification

528   of returns, and change in returns, by revising subsection (a) and adding a new subsection to

529   read as follows:

530   "(a)  The superintendent shall, after the close of the polls on the day of a primary or

531   election, at his or her office or at some other convenient public place at the county seat or

532   in the municipality, of which due notice shall have been given as provided by Code

533   Section 21-2-492, publicly commence the computation and canvassing of the returns and

534   continue until all absentee ballots received by the close of the polls, including those cast

535   by advance voting,; provided, however, that such votes cast by advance voting shall be

536   tabulated and the results reported by no later than 8:00 P.M. on such day or within one hour

537   of the closing of all polls in such county, whichever occurs later, and all ballots cast on the

538   day of the primary or election have been counted and tabulated and the results of such

539   tabulation released to the public and, then, continuing with provisional ballots as provided
540   in Code Sections 21-2-418 and 21-2-419 and those absentee ballots as provided in
541   subparagraph (a)(1)(G) of Code Section 21-2-386 from day to day until completed.  For
542   this purpose, the superintendent may organize his or her assistants into sections, each of
543   whom may simultaneously proceed with the computation and canvassing of the returns
544   from various precincts of the county or municipality in the manner provided by this Code
545   section.  Upon the completion of such computation and canvassing, the superintendent
546   shall tabulate the figures for the entire county or municipality and sign, announce, and
547   attest the same, as required by this Code section."
548   "(j.2)(1)  On or after January 1, 2025, in the event that a superintendent receives a request
549   pursuant to Code Section 50-18-71 for scanned ballot images at a resolution higher than
550   the ballot images available from the Secretary of State pursuant to subsection (j.1) of this
551   Code section, and such request is received following the final certification of the results
552   of the election in which such ballots were created, the superintendent shall, consistent
553   with Code Section 50-18-71, produce digital scans of the requested ballots at a resolution
554   of no less than 600 dots per inch and deliver such scans to the requestor.  A person
555   making a request pursuant to this subsection may observe the scanning and related
556   handling process, but under no circumstances shall anyone other than an authorized
557   election official touch or handle a physical ballot.
558   (2)  Notwithstanding any seal provided for by Code Section 21-2-500, a superintendent
559   shall have access to the ballots cast within its jurisdiction so as to comply with the
560   provisions of this subsection.  Upon receiving a request pursuant to this subsection, the
561   superintendent shall notify the clerk of the superior court or, if designated by the clerk of
562   the superior court, the county records manager or other office or official under the
563   jurisdiction of a county governing authority which maintains or is responsible for
564   maintaining such sealed ballots, and such official or office that maintains such requested
565   ballot shall provide the superintendent access to such ballot without the need for

566    obtaining a court order.  All ballots provided to a superintendent pursuant to this
567    paragraph shall be immediately returned by such superintendent to the official or office
568    that maintains such ballots upon the scanning of such ballot."


569                                    **SECTION 11.**

570  Said chapter is further amended by adding a new Code section to read as follows:

571    "21-2-498.1.

572    The Secretary of State shall create a pilot program for the auditing of paper ballot images

573    using optical character recognition technology or other related technology which shall

574    verify the human-readable text portion of the ballot.  Such auditing program shall not be

575    based on or tabulate any QR code, bar code, or similar machine coding that may be printed

576    on such ballots.  Such audits shall include all ballot types, and the audit findings shall be

577    reported prior to final certification of the election."


578                                    **SECTION 12.**

579  Said chapter is further amended in Code Section 21-2-540, relating to conduct of special

580  primaries and special elections generally, by revising subsection (b) as follows:

581    "(b)  At least 29 days shall intervene between the call of a special primary and the holding

582    of same, and at least 29 days shall intervene between the call of a special election and the

583    holding of same.  The period during which candidates may qualify to run in a special

584    primary or a special election shall remain open for a minimum of two and one-half days.

585    Special ~~primaries and special~~ elections to present questions to the voters which are to be

586    held in conjunction with the presidential preference primary, a state-wide general primary,

587    or state-wide general election shall be called at least 90 days prior to the date of such

588    presidential preference primary, state-wide general primary, or state-wide general election;

589    provided, however, that this requirement shall not apply to ~~special primaries and~~ special

590    elections to present questions to the voters held on the same date as such presidential

591   preference primary, state-wide general primary, or state-wide general election but

592   conducted completely separate and apart from such state-wide general primary or

593   state-wide general election using different ballots or voting equipment, facilities, poll

594   workers, and paperwork."

595                     **SECTION 13.**

596   (a) This section and Sections 12 and 14 of this Act shall become effective upon its approval

597   by the Governor or upon its becoming law without such approval.

598   (b) Sections 1, 2, 3, 3.1, 5, 8, 10, and 11 of this Act shall become effective on July 1, 2024.

599   (c) Sections 4, 6, and 9 of this Act shall become effective on January 1, 2025.

600   (d) Section 7 of this Act shall become effective on July 1, 2026.

601                     **SECTION 14.**

602    All laws and parts of laws in conflict with this Act are repealed. All laws and parts of laws

603   in conflict with this Act are repealed.