# EXHIBIT A

(Slip Opinion)　　　　　OCTOBER TERM, 2024　　　　　1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LACKEY, COMMISSIONER OF THE VIRGINIA DEPARTMENT OF MOTOR VEHICLES *v.* STINNIE ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23–621.　Argued October 8, 2024—Decided February 25, 2025

Drivers whose licenses were suspended under a Virginia statute for failure to pay court fines sued the Commissioner of the Virginia Department of Motor Vehicles under 42 U. S. C. §1983, challenging the statute as unconstitutional. The District Court granted a preliminary injunction prohibiting the Commissioner from enforcing the statute. Before trial, the Virginia General Assembly repealed the statute and required reinstatement of licenses suspended under the law. The parties then agreed to dismiss the pending case as moot.

Section 1988(b) allows an award of attorney's fees to "prevailing parties" under §1983. The District Court declined to award attorney's fees to the drivers under that section on the ground that parties who obtain a preliminary injunction do not qualify as "prevailing part[ies]." A Fourth Circuit panel affirmed, but the Fourth Circuit reversed en banc. The en banc court held that some preliminary injunctions can provide lasting, merits-based relief and qualify plaintiffs as prevailing parties, even if the case becomes moot before final judgment.

*Held*: The plaintiff drivers here—who gained only preliminary injunctive relief before this action became moot—do not qualify as "prevailing part[ies]" eligible for attorney's fees under §1988(b) because no court conclusively resolved their claims by granting enduring judicial relief on the merits that materially altered the legal relationship between the parties. Pp. 4–13.

(a) Under the "American Rule," a prevailing litigant is ordinarily not

entitled to collect attorneys' fees from the loser absent express statu-
tory authorization. See *Alyeska Pipeline Service Co.* v. *Wilderness So-
ciety*, 421 U. S. 240, 249. Congress has provided that in actions
brought under certain civil rights statutes—including 42 U. S. C.
§1983—"the court, in its discretion, may allow the prevailing party,
other than the United States, a reasonable attorney's fee as part of the
costs." §1988(b).

    To determine whether the drivers here qualify as "prevailing
part[ies]" under §1988(b), the Court begins with the statute's text. The
Court has recognized "prevailing party" as a legal term of art. *Buck-
hannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and
Human Resources,* 532 U. S. 598, 603. When §1988(b) was adopted,
contemporary dictionaries defined a prevailing party as one who suc-
cessfully maintains its claim when the matter is finally resolved. See
Black's Law Dictionary 1352 (4th ed. 1968); Ballentine's Law Diction-
ary 985 (3d ed. 1969).

    Preliminary injunctions do not make a party "prevailing" because
they do not conclusively decide the case on the merits. Such injunc-
tions only determine if a plaintiff is *likely* to succeed, along with factors
such as  irreparable harm, the balance of equities, and the public in-
terest. See *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U.
S. 7, 20. The purpose of a preliminary injunction is to preserve the
status quo until a trial can occur, see *University of Tex.* v. *Camenisch,*
451 U. S. 390, 395, and external events that render a dispute moot do
not convert that temporary order into a conclusive adjudication.
Pp. 4–7.

    (b) The Court's precedents interpreting §1988(b) establish that a
plaintiff "prevails" when a court grants enduring judicial relief that
materially alters the legal relationship between the parties. Two re-
cent decisions emphasize that this change must be both judicially sanc-
tioned and enduring. In *Buckhannon*, the Court rejected the "catalyst
theory"—the theory that a plaintiff may receive attorney's fees under
§1988(b) when he "achieves the desired result because the lawsuit
brought about a voluntary change in the defendant's conduct." 532
U. S., at 601. The Court explained that the plaintiff was not a "pre-
vailing party" because there had been "no judicially sanctioned change
in the legal relationship of the parties." *Id.*, at 605. And in *Sole* v.
*Wyner*, 551 U. S. 74, the Court decided that a plaintiff initially granted
a preliminary injunction after an abbreviated hearing, but denied a
permanent injunction after an adjudication on the merits, did not qual-
ify as a "prevailing party" within the meaning of §1988(b) because the
plaintiff gained no *enduring* change in the legal relationship between
herself and the defendants. *Id.*, at 77, 78, 86. The Court's holding in

Cite as: 604 U. S. ____ (2025)            3

Syllabus

this case—that the enduring nature of that change must itself be judicially sanctioned—follows naturally from *Sole* and *Buckhannon.* A plaintiff who wins a transient victory on a preliminary injunction does not become a "prevailing party" simply because external events convert the transient victory into a lasting one. Pp. 7–9.

(c) The rule established serves the interests of judicial economy. A straightforward, bright-line rule is easy to administer, reducing the risk of significant litigation over attorney's fees. Concerns that government defendants who have lost at the preliminary injunction stage will strategically moot litigation are speculative, and such a risk could arise in only a small number of contexts. The judicial role here is limited. Congress may amend the statutory language to empower courts to award attorney's fees to plaintiffs who have enjoyed some success but have not prevailed in a judgment on the merits. Pp. 10–11.

(d) The drivers' remaining arguments are unpersuasive. The argument that §1988(b) was enacted against a historical backdrop that favored awarding interim costs at equity, including for preliminary injunctions, was rejected by the Court in *Alyeska Pipeline.* 421 U. S., at 241, 247. The drivers also contend that the availability of fees in some cases while litigation is ongoing suggests that §1988(b) includes no finality requirement, but the Court's decisions simply indicate that attorney's fees may be awarded when conclusive, enduring judicial relief is meted out on an incremental basis. Finally, the availability of fees after a court-ordered consent decree is consistent with the rule announced here. While the decree reflects the parties' own resolution of the merits, it is approved and given force of law by a court, and it may grant enduring relief that materially alters the legal relationship between the parties. The dissent conflates preliminary judicial relief that becomes *irreversible* by way of mootness with relief that is *permanent* by virtue of a judicial order. Pp. 11–13.

77 F. 4th 200, reversed and remanded.

ROBERTS, C. J., delivered the opinion of the Court, in which THOMAS, ALITO, KAGAN, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. JACKSON, J., filed a dissenting opinion, in which SOTOMAYOR, J., joined.

Cite as: 604 U. S. \_\_\_\_ (2025)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

———————

No. 23–621

———————

GERALD F. LACKEY, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE VIRGINIA DEPARTMENT OF MOTOR VEHICLES, PETITIONER v. DAMIAN STINNIE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[February 25, 2025]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Respondents are Virginia drivers whose licenses were suspended due to their failure to pay court fines or costs. The drivers sued the Commissioner of the Virginia Department of Motor Vehicles under 42 U. S. C. §1983, arguing that the Virginia statute requiring suspension of their licenses was unconstitutional. The District Court preliminarily enjoined the Commissioner from enforcing the statute. But before the case reached final judgment, the Virginia General Assembly repealed the challenged law, rendering the action moot. The question presented is whether the drivers are "prevailing part[ies]" who qualify for an award of attorney's fees under §1988(b).

I

Until recently, a Virginia statute directed the state courts to suspend the license of any driver who failed to pay "any fine, costs, forfeitures, restitution, or penalty lawfully assessed against him" for violation of a federal, state, or local law. The suspension remained in force until the amount

Opinion of the Court

due was paid in full or the driver entered into a court-approved payment plan.  Va. Code Ann. §46.2–395(B) (2016) (repealed 2020).  Virginia drivers—whose licenses were suspended under the law and who asserted that they could not afford to pay the fines or costs or keep up with a payment plan—sued the Commissioner of the Virginia Department of Motor Vehicles on their own behalf and on behalf of a putative class.  The drivers alleged that the statute facially violated the Due Process Clause by "failing to provide sufficient notice or hearing to any driver before license suspension" and violated both the Due Process and Equal Protection Clauses "as applied to people who cannot afford to pay due to their modest financial circumstances."  First Amended Class Action Complaint in *Stinnie* v. *Holcomb*, No. 3:16‑cv‑00044 (WD Va., Sept. 11, 2018), ECF Doc. 84, pp. 2–3; see also *id.*, at 37–43.  The drivers sought declaratory relief, preliminary and permanent injunctive relief, and attorney's fees under 42 U. S. C. §1988(b).

In December 2018, the District Court granted a preliminary injunction, prohibiting the Commissioner from enforcing the statute against the drivers or future class members.  See *Stinnie* v. *Holcomb*, 355 F. Supp. 3d 514, 520 (WD Va. 2018).  The court explained that the drivers had made "a clear showing that [they were] likely to succeed" on their procedural due process claim, though it noted that they need not "establish a certainty of success."  *Id.*, at 527 (quoting *Di Biase* v. *SPX Corp.*, 872 F. 3d 224, 230 (CA4 2017)).  The court also determined that the remaining preliminary injunction factors—the risk of irreparable harm, the balance of equities, and the public interest—weighed in the drivers' favor.  *Stinnie*, 355 F. Supp. 3d, at 532; see *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. 7, 20 (2008).  The Commissioner did not appeal the grant of the preliminary injunction.

In April 2019, about four months before a bench trial was scheduled to begin, the Commissioner moved to dismiss as

Opinion of the Court

moot or, in the alternative, stay the case.  See *Stinnie* v. *Holcomb*, 396 F. Supp. 3d 653, 656 (WD Va.).  The Virginia General Assembly had recently adopted Budget Amendment No. 33, which "eliminate[d] the suspension of drivers' licenses for failure to pay court fines and costs through July 1, 2020, but [did] not repeal §46.2–395." *Ibid.*  The Commissioner represented that the General Assembly was likely to repeal the law during the next legislative session. The District Court granted a stay, reasoning in part that doing so served the interests of judicial economy and enabled the court to avoid "weigh[ing] in on sensitive constitutional questions about license suspension schemes about which other courts ha[d] disagreed." *Id.*, at 660.

In April 2020, the Virginia General Assembly repealed §46.2–395 and required the permanent reinstatement of licenses suspended under the law.  See 2020 Va. Acts ch. 965. As a result, the parties agreed that the action had become moot and stipulated to dismissal.  The drivers, however, asserted that they were entitled to attorney's fees under §1988(b), so the parties jointly requested that the court retain jurisdiction to resolve that dispute.  The District Court declined to award attorney's fees, following *Smyth* v. *Rivero*, 282 F. 3d 268 (CA4 2002).  See *Stinnie* v. *Holcomb*, 2021 WL 2292807 (WD Va., June 4, 2021).  In *Smyth* the Fourth Circuit held that a plaintiff awarded a preliminary injunction is not a "prevailing party" within the meaning of §1988(b).  282 F. 3d, at 277.  A Fourth Circuit panel affirmed, again relying on *Smyth*.  *Stinnie* v. *Holcomb*, 37 F. 4th 977 (2022).  Judge Harris concurred, suggesting that the Circuit may wish to reconsider that precedent.  *Id.*, at 983.

The Fourth Circuit did so, rehearing the case en banc and overturning its decision in *Smyth*.  *Stinnie* v. *Holcomb*, 77 F. 4th 200 (2023).  It observed that *Smyth* had become the "outlier" among the courts of appeals.  77 F. 4th, at 209.  It

reasoned that some preliminary injunctions "provide en-
during, merits-based relief that satisfies all the requisites
of the prevailing party standard." *Id.*, at 203. And it ex-
plained, in light of this Court's decision in *Winter* v. *Natural
Resources Defense Council*, that a plaintiff could no longer
prevail on a preliminary injunction for reasons that "had
virtually nothing to do with the merits of her claim." 77 F.
4th, at 208−209; see *Winter*, 555 U. S., at 20 (clarifying that
a finding of *likely* success on the merits is a prerequisite to
preliminary injunctive relief). Finally, it noted that Con-
gress had enacted §1988(b) in the interest of facilitating the
redress of civil rights grievances. 77 F. 4th, at 210.

The en banc court articulated a new standard: "When a
preliminary injunction provides the plaintiff concrete, irre-
versible relief on the merits of her claim and becomes moot
before final judgment because no further court-ordered as-
sistance proves necessary, the subsequent mootness of the
case does not preclude an award of attorney's fees." *Ibid*.
Applying that standard, the en banc court vacated and re-
manded the case to allow the District Court to determine a
reasonable fee. *Id.*, at 218. Judge Quattlebaum dissented,
arguing that a preliminary injunction does not constitute a
judicial decision on the merits and that a fee award on the
basis of such an injunction therefore conflicts with both the
text of §1988(b) and this Court's precedents. See *id.*, at 225,
227, 231.

We granted certiorari to determine whether the term
"prevailing party" in §1988(b) encompasses a party who is
awarded a preliminary injunction, if the case becomes moot
before the court reaches a final judgment. 601 U. S. ___
(2024).

## II

Since 1796, this Court has maintained that "the Judici-
ary itself would not create a general rule, independent of
any statute, allowing awards of attorneys' fees in federal
courts." *Alyeska Pipeline Service Co.* v. *Wilderness Society*,

421 U. S. 240, 249 (1975) (citing *Arcambel* v. *Wiseman*, 3 Dall. 306 (1796)). The principle that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser" became known as the "American Rule." *Alyeska Pipeline*, 421 U. S., at 247. Federal courts may depart from this rule only when "there is express statutory authorization" to do so. *Hensley* v. *Eckerhart*, 461 U. S. 424, 429 (1983).

In 1976, Congress adopted the Civil Rights Attorney's Fees Awards Act. 90 Stat. 2641. The law provides that, in actions brought under certain civil rights statutes—including 42 U. S. C. §1983—"the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." §1988(b). The question is whether the drivers in this case qualify as "prevailing part[ies]" within the meaning of §1988(b).

A

When interpreting a statute, we begin with the text. As we have previously recognized, the phrase "prevailing party" in §1988(b) is a "legal term of art." *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 603 (2001). We assume that "when Congress 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word.'" *United States* v. *Hansen*, 599 U. S. 762, 774 (2023) (quoting *Morissette* v. *United States*, 342 U. S. 246, 263 (1952)).

At the time §1988(b) was adopted, Black's Law Dictionary defined "prevailing party" as the party "who successfully prosecutes the action or successfully defends against it." Black's Law Dictionary 1352 (rev. 4th ed. 1968). It explained that prevailing party status "does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the

Opinion of the Court

party who has made a claim against the other, has success-fully maintained it." *Ibid.*; accord, Ballentine's Law Dictionary 985 (3d ed. 1969). A prevailing party, in other words, is "[t]he party ultimately prevailing when the matter is finally set at rest." Black's Law Dictionary 1352.

Preliminary injunctions, however, do not conclusively resolve legal disputes. In awarding preliminary injunctions, courts determine if a plaintiff is *likely* to succeed on the merits—along with the risk of irreparable harm, the balance of equities, and the public interest. *Winter*, 555 U. S., at 20. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *University of Tex.* v. *Camenisch*, 451 U. S. 390, 395 (1981), and "to balance the equities as the litigation moves forward," *Trump* v. *International Refugee Assistance Project*, 582 U. S. 571, 580 (2017) (*per curiam*). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Id.*, at 579. Such relief is also "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Camenisch*, 451 U. S., at 395. As a result, we have previously cautioned against "improperly equat[ing] 'likelihood of success' with 'success'" and treating preliminary injunctions as "tantamount to decisions on the underlying merits." *Id.*, at 394.

The transient nature of preliminary injunctions is most apparent when a court reaches a different conclusion upon full consideration of the merits. For example, in one of our more recent cases interpreting §1988, *Sole* v. *Wyner*, 551 U. S. 74, 78–79 (2007), protesters sought a preliminary injunction against a state regulation of beach attire in order to assemble nude in the form of a peace sign. The day after the complaint was filed, the District Court held a hearing and granted the preliminary injunction. *Id.*, at 79. The

Opinion of the Court

preliminary injunction permitted the protest to occur and thus preserved the participants' rights until a final determination could be made on the merits of their claim. Ultimately, however, the court declined to award a permanent injunction, ruling that the regulation was no more burdensome than necessary to protect the public. *Id.*, at 80−81.

Because preliminary injunctions do not conclusively resolve the rights of parties on the merits, they do not confer prevailing party status. A plaintiff who secures a preliminary injunction has achieved only temporary success at an intermediary "stage[ ] of the suit." Black's Law Dictionary 1352. It cannot yet be said that he will "ultimately prevail[ ] when the matter is finally set at rest" or that he will have "successfully maintained" his claim "at the end." *Ibid.* And external events that render a dispute moot do not convert a temporary order designed to preserve the status of the parties into a conclusive adjudication of their rights.

The Fourth Circuit en banc was persuaded that "*Winter*'s stringent merits requirement" avoided the "risk" that "a plaintiff may prevail, and thus be entitled to fees, based on a preliminary injunction that had virtually nothing to do with the merits of her claim." 77 F. 4th, at 209. But it is not enough that *Winter* guarantees a preliminary injunction award has at least *something* to do with the merits. The plaintiff must succeed on the merits.

B

This conclusion is consistent with our precedents interpreting §1988(b). We have held that, for the purposes of §1988(b), a plaintiff "prevails" when a court grants enduring judicial relief that constitutes a "material alteration of the legal relationship of the parties." *Texas State Teachers Assn.* v. *Garland Independent School Dist.*, 489 U. S. 782, 792−793 (1989). For example, we have ruled that a plaintiff may qualify as a "prevailing party" based on an award of nominal damages, *Farrar* v. *Hobby*, 506 U. S. 103, 112

Opinion of the Court

(1992), or a final victory on a material even if not predominant claim, *Texas State Teachers Assn.*, 489 U. S., at 791–793. By contrast, a party does not qualify as a "prevailing party" when a court of appeals overturns directed verdicts and discovery orders entered against him, *Hanrahan* v. *Hampton*, 446 U. S. 754, 756 (1980) (*per curiam*), or when a court enters a declaratory judgment but does not modify the defendant's behavior toward the plaintiff, *Rhodes* v. *Stewart*, 488 U. S. 1, 3–4 (1988) (*per curiam*) (holding that no fees were available under §1988 when the judgment afforded no relief to the plaintiff due to mootness).

Two of our more recent decisions highlight the requirements that the change in legal relationship be judicially sanctioned and enduring. In *Buckhannon Board & Care Home, Inc.* v. *West Virginia Department of Health and Human Resources*, we rejected the "catalyst theory"—the theory that a plaintiff may receive attorney's fees under §1988(b) when he "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U. S., at 601; see *id.*, at 600. In that context, we explained that the plaintiff was not a "prevailing party" because there had been "no judicially sanctioned change in the legal relationship of the parties." *Id.*, at 605. The defendant's voluntary actions "lack[ed] the necessary judicial *imprimatur*." *Ibid.* We were not persuaded that §1988(b) "authorizes federal courts to award attorney's fees to a plaintiff who" filed a "potentially meritless lawsuit" and "reached the 'sought-after destination' without obtaining any judicial relief." *Id.*, at 606 (quoting *id.*, at 634 (Ginsburg, J., dissenting)).

In *Sole* v. *Wyner*, we decided that "a plaintiff who gain[ed] a preliminary injunction after an abbreviated hearing, but [was] denied a permanent injunction after a dispositive adjudication on the merits," did not qualify as a "prevailing party" within the meaning of §1988(b). 551 U. S., at 77; see

*id.*, at 78. That plaintiff, we explained, "gained no *enduring* change in the legal relationship" between herself and the defendants. *Id.*, at 86 (emphasis added; alterations and internal quotation marks omitted). Although we left open the question presented in this case, see *ibid.*, we described the plaintiff's success at the preliminary injunction stage as "a transient victory at the threshold of an action," a "fleeting success" that "did not establish that [the plaintiff] prevailed on the gravamen of her plea for injunctive relief," one "tentative [in] character, in view of the continuation of the litigation to definitively resolve the controversy," *id.*, at 78, 83, 84.

We recognize that neither opinion resolves this case, but our holding today follows naturally from these precedents. In *Sole*, we established that the change in the legal relationship between the parties must be "enduring." *Id.*, at 86. In *Buckhannon*, we established that the change must be "judicially sanctioned." 532 U. S., at 605. Today, we establish that the enduring nature of that change must itself be judicially sanctioned. A plaintiff who wins a transient victory on a preliminary injunction does not become a "prevailing party" simply because external events convert the transient victory into a lasting one. Rather, a plaintiff "prevails" under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties.*

————————
*A different body of caselaw addresses when a *defendant* is a "prevailing party" for the purposes of other fee-shifting statutes. Our decision today should not be read to affect our previous holding that a defendant need not obtain a favorable judgment on the merits to prevail, nor to address the question we left open of whether a defendant must obtain a preclusive judgment in order to prevail. See *CRST Van Expedited, Inc.* v. *EEOC*, 578 U. S. 419, 431−434 (2016). As we have explained, "[p]laintiffs and defendants come to court with different objectives." *Id.*, at 431.

Opinion of the Court

### C

The rule we establish today also serves the interests of judicial economy. A straightforward, bright-line rule is easy to administer, reducing the risk of "a second major litigation" over attorney's fees. Cf. *Hensley*, 461 U. S., at 437. The drivers, however, suggest that our rule promotes simplicity at the cost of creating perverse incentives. They fear that government defendants who have lost at the preliminary injunction stage will strategically moot litigation rather than risk a fee award were they to ultimately lose on the merits. See Brief for Respondents 42−47. We found similar concerns to be "entirely speculative" when we rejected the catalyst theory in *Buckhannon*, 532 U. S., at 608. We reiterate that such risk could arise in only a small number of contexts. After all, if a plaintiff "has a cause of action for damages, a defendant's change in conduct will not moot the case." *Id.*, at 609. And even if the plaintiff seeks only injunctive relief, voluntary cessation of the challenged conduct does not moot an action "unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Ibid.* (quoting *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 189 (2000)); see also *FBI* v. *Fikre*, 601 U. S. 234, 241 (2024) (characterizing this burden as "formidable" (quoting *Friends of the Earth*, 528 U. S., at 190)). A survey asking public interest organizations to self-report on the impact of *Buckhannon* does not change our minds. See *post*, at 17–18 (JACKSON, J., dissenting).

It is Congress's job to craft policy and ours to interpret the words that codify it. "Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske* v. *Klemm*, 589 U. S. 8, 14 (2019). Congress has shown that it knows how to empower courts to award attorney's fees to plaintiffs who have enjoyed some success but have not prevailed in a judgment on the merits. In the

Freedom of Information Act, for example, Congress authorized courts to assess attorney's fees when a complainant has "substantially prevailed," even if through "a voluntary or unilateral change in position by the agency." 5 U. S. C. §552(a)(4)(E). If Congress determines that the rule we adopt today is unwise, it may amend the statutory language—just as it enacted §1988(b) itself in response to our decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society.* 421 U. S. 240; see *Hensley,* 461 U. S., at 429. Until then, "it is of course our job to apply faithfully the law Congress has written." *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. 79, 89 (2017).

## D

The drivers urge the opposite conclusion, but we find their arguments unpersuasive.

First, the drivers, joined by the dissent, argue that the dictionary definitions support them. But they assume that the favorable resolution of a *dispute* is tantamount to success on a *claim* in a legal *action.* A "prevailing party," however, is defined in the latter sense—one who "successfully prosecutes the action," who has "made a claim" against another and "has successfully maintained it." Black's Law Dictionary 1352.

Second, the drivers and dissent contend that §1988(b) was enacted against a historical backdrop that favored awarding interim costs at equity, including for preliminary injunctions. See Brief for Respondents 19−21. The dissent in *Alyeska Pipeline* similarly invoked "the well-established power of federal equity courts to award attorneys' fees when the interests of justice so require." 421 U. S., at 272 (Marshall, J., dissenting). We rejected that argument, however, and determined that the American Rule supplied the default rule at law and equity, subject to narrow historical exceptions not at issue here. See *id.*, at 241, 247 (majority opinion).

Next, the drivers argue that the availability of fees while

litigation is ongoing suggests that §1988(b) includes no finality requirement. See Brief for Respondents 40−42. The dissent likewise points to our statement in *Buckhannon* that a "'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits." 532 U. S., at 607 (quoting H. R. Rep. No. 94–1558, p. 7 (1976)); see *post*, at 15. We have recognized that "Congress contemplated the award of fees *pendente lite* in some cases." *Hanrahan*, 446 U. S., at 757. For example, we have explained that, in school desegregation cases, "many final orders may issue in the course of the litigation" because injunctive relief "must prove its efficacy . . . over a period of time and often with frequent modifications." *Bradley* v. *School Bd. of Richmond*, 416 U. S. 696, 723 (1974). Our decisions simply indicate that attorney's fees may be awarded when conclusive, enduring judicial relief is meted out on an incremental basis. *Hanrahan*, 446 U. S., at 758 ("Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims."). Key language on which the dissent relies—our statement that a party prevails when it "succeed[s] on any significant claim affording it some of the relief sought," including relief on the merits *pendente lite*—explained our rejection of the "central issue test," which would have required a party to prevail on its central claim in order to be awarded attorney's fees. *Texas State Teachers Assn.*, 489 U. S., at 791; see *post*, at 4. It did not refer to preliminary relief.

The availability of fees following the entry of a court-ordered consent decree is fully consistent with the rule we announce today. A consent decree reflects the parties' own resolution of the merits, but it is approved and given force of law by the court. See *Firefighters* v. *Cleveland*, 478 U. S. 501, 523 (1986). Violation of a consent decree is enforceable by a citation for contempt. *Ibid.* So a consent decree is like

a final judgment in the relevant ways: It conclusively resolves the claim, bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between the parties. That is why "[w]e have only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree." *Buckhannon*, 532 U. S., at 605 (citation omitted). For its part, the dissent conflates preliminary judicial relief that becomes *irreversible* by way of mootness with relief that is *permanent* by virtue of a judicial order. See *post*, at 10−11. That a preliminary order may sometimes "function[ ] . . . like" a final order due to external circumstances, see *post*, at 11 (citation omitted), is not dispositive of the nature of the order.

\*     \*     \*

Section 1988(b) permits courts to award attorney's fees to a "prevailing party." A party "prevails" when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties. Critically, both the change in relationship and its permanence must result from a judicial order. A preliminary injunction, which temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merits, does not render a plaintiff a "prevailing party." Nor do external events that moot the action and prevent the court from conclusively adjudicating the claim. Because the drivers in the present case gained only preliminary injunctive relief before this action became moot, they do not qualify as "prevailing part[ies]" eligible for attorney's fees under §1988(b).

The judgment of the Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Cite as: 604 U. S. ____ (2025)          1

JACKSON, J., dissenting

# SUPREME COURT OF THE UNITED STATES

———————

No. 23–621

———————

GERALD F. LACKEY, IN HIS OFFICIAL CAPACITY AS THE
COMMISSIONER OF THE VIRGINIA DEPARTMENT
OF MOTOR VEHICLES, PETITIONER *v.* DAMIAN
STINNIE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[February 25, 2025]

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR joins,
dissenting.

Congress has authorized courts to award attorney's fees
to the "prevailing party" in certain civil rights cases. 42
U. S. C. §1988(b). Today, the Court holds that a plaintiff
who secures a preliminary injunction does not "prevail" un-
der this fee-shifting statute, even when the preliminary in-
junction provides meaningful relief and is never reversed
on the merits. The Court maintains that this holding "fol-
lows naturally from" our precedents. *Ante,* at 9. But that
will come as a surprise to the eleven Courts of Appeals that
have previously considered this issue; all of them agree that
at least *some* preliminary injunctions trigger fee eligibility
under §1988(b).

Stated simply, the majority's categorical preclusion of fee
awards for any plaintiff who successfully obtains prelimi-
nary injunctive relief is unwarranted. It lacks any basis in
the text of §1988(b) and is plainly inconsistent with that
statutory provision's clear objective, which is to encourage
attorneys to file civil rights actions on behalf of the most
vulnerable people in our society. The Court has now elimi-
nated fee eligibility for *all* preliminary injunctions—even
those that effectively resolve the case. But if Congress had

meant for "prevailing party" status to hinge entirely on the "conclusive" nature of a judicial order, it could easily have said so. It is the role of Congress, not this Court, to weigh concerns about administrative ease against the benefits of guaranteeing individuals an opportunity to vindicate their civil rights.

There is no persuasive reason to believe that Congress meant to preclude fee awards for every plaintiff who secures preliminary injunctive relief but not a final judgment, no matter the context. Therefore, I respectfully dissent.

## I

### A

Nothing in §1988(b)'s text compels the conclusion that a plaintiff who obtains preliminary injunctive relief is *never* eligible for a fee award. Section 1988(b) states simply that, in actions to enforce certain civil rights statutes, including 42 U. S. C. §1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." §1988(b). The majority recognizes that "prevailing party" is a legal term of art and begins its analysis by asserting that this term means what legal dictionaries said it meant at the time that §1988(b) was enacted.

According to the majority's preferred dictionary, a "prevailing party" is one "'who successfully prosecutes the action or successfully defends against it.'" *Ante,* at 5 (quoting Black's Law Dictionary 1352 (rev. 4th ed. 1968)). Thus, prevailing party status turns on "'whether, at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it.'" *Ante,* at 6 (quoting Black's Law Dictionary, at 1352). Reasoning from this definition, the majority holds that preliminary injunctions, which provide interim relief by their nature, can never confer prevailing party status because they do not "conclusively resolve the rights of parties on the merits."

*Ante,* at 7.

But the majority's analysis inexplicably conflates the requirement for success *when the suit ends* (which is what the dictionary definition says) with a requirement that the suit end *by virtue of* a "conclusive" judicial ruling on the merits of the plaintiff's claims (which is nowhere in *Black's Law Dictionary* or anywhere else). In other words, the majority's reasoning elides the fact that a suit can end in various ways—including through acts of the defendant or others that moot the legal action. *Black's Law Dictionary* and its contemporaries simply require a court determining eligibility for a fee award to take stock of where things stand at the end of the lawsuit. A prevailing party for §1988(b) purposes is one who has successfully maintained his claim (in the manner I describe below, see Part II–A, *infra*) "when the matter is finally set at rest." Black's Law Dictionary, at 1352.

In essence, then, the majority errs by assuming that the only kind of resolution to a suit that can precipitate a fee award is a "conclusive" final judgment on the merits. See, *e.g., ante,* at 6–7, 9, 12. That assumption is unfounded. The text of the fee statute does not require a final judgment in the party's favor, "conclusive" or otherwise. Nor does any dictionary definition of "prevailing party" to which the majority cites. Rather, according to *Black's Law Dictionary*, a "prevailing party" is simply a "part[y] to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of his original contention." Black's Law Dictionary, at 1352. *Ballentine's Law Dictionary* is substantially similar; it defines "prevailing party" as "[t]he party who is successful or partially successful in an action, so as to be entitled to costs." Ballentine's Law Dictionary 985 (3d ed. 1969).

Significantly for present purposes, both dictionaries further emphasize that "[t]o be [a prevailing party] does not depend upon the degree of success at different stages of the

4                    LACKEY *v.* STINNIE

JACKSON, J., dissenting

suit, but whether, at the end of the suit . . . the party who
has made a claim against the other, has successfully main-
tained it." Black's Law Dictionary, at 1352; accord, Ballen-
tine's Law Dictionary, at 985. Yet, today, the majority de-
mands that, in order to prevail, the party must have
achieved a certain degree of success at a certain point in the
case: a conclusive final judgment in his favor at the end of
litigation.

B

This Court has not previously linked prevailing party sta-
tus to securing a conclusive final judgment. Quite to the
contrary, we have held that a prevailing party for fee-
shifting purposes is one who has "succeeded on any signifi-
cant claim affording it some of the relief sought, either *pen-
dente lite*"—*i.e.*, pending the suit—"or at the conclusion of
the litigation." *Texas State Teachers Assn.* v. *Garland In-
dependent School Dist.*, 489 U. S. 782, 791 (1989). That is,
a plaintiff prevails when he accomplishes his lawsuit's "ob-
jectiv[e]," which is to achieve "a material alteration in the
legal relationship between the parties." *CRST Van Expe-
dited, Inc.* v. *EEOC*, 578 U. S. 419, 431 (2016). This is be-
cause, for a plaintiff, "[a]t the end of the rainbow lies not a
judgment, but some action (or cessation of action) by the
defendant that the judgment produces—the payment of
damages, or some specific performance, or the termination
of some conduct." *Hewitt* v. *Helms*, 482 U. S. 755, 761
(1987).

A plaintiff who secures a preliminary injunction award-
ing actual relief on the merits of his claim that is never re-
versed by a final decision of the court has "successfully
maintained" his claim "at the end." Black's Law Dictionary,
at 1352. Such a plaintiff has achieved what he has "come

JACKSON, J., dissenting

to court" for—the desired "alteration in the legal relationship between the parties." *CRST*, 578 U. S., at 431.[1]

Take this case, for example. At the point it ended—when the District Court dismissed the litigation as moot—respondents had secured a preliminary injunction against the Commissioner of the Virginia Department of Motor Vehicles. That order enabled respondents to drive their cars on Virginia's highways for sixteen months, over the Commissioner's objection. And, because the District Court's interim award had facilitated respondents' access to the road as licensed drivers, they had prevailed on the merits of their claim in every meaningful sense. Put another way, "at the end of the litigation," respondents did not "leav[e] the courthouse emptyhanded." *Sole* v. *Wyner*, 551 U. S. 74, 78 (2007). Instead, they departed having accomplished exactly what they had sought to achieve. The fact that respondents achieved their goal via a preliminary court ruling, as opposed to a final judgment, is irrelevant, for "[n]othing in the language of §1988 conditions the District Court's power to award fees on *full* litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." *Maher* v. *Gagne*, 448 U. S. 122, 129 (1980) (emphasis added).

Juxtapose that reality with the text of other statutes that make "prevailing party" status expressly dependent on the entry of a final order. For example, the Emergency School Aid Act of 1972—enacted just four years before §1988(b)—states that, "*[u]pon the entry of a final order*," a court hearing a school desegregation case may "allow the prevailing party, other than the United States, a reasonable attorney's

_____

[1] There are, of course, other kinds of preliminary injunctive orders, including orders that maintain the status quo. All that is necessary to reject the majority's categorical rule is the recognition that at least some preliminary injunctions afford the type of material change that confers prevailing party status.

JACKSON, J., dissenting

fee as part of the costs." 20 U. S. C. §1617 (repealed) (emphasis added). Several statutes enacted after §1988(b) are similarly explicit about when a fee award must be fastened to a final judgment. See, *e.g.*, 28 U. S. C. §2412(d)(2)(H) (defining "prevailing party" in eminent domain proceedings to "mea[n] a party who obtains a final judgment" of a certain amount); 15 U. S. C. §6104(d) (authorizing courts hearing actions under the Telemarketing and Consumer Fraud and Abuse Prevention Act to award "reasonable fees . . . to the prevailing party" upon "issuing any final order"). The fact that §1988(b) lacks any such language confirms that a conclusive ruling from the court in the form of a final judgment is not a prerequisite for a fee award under that statute.

## C

The majority disregards these important context clues and focuses instead on a provision of the Freedom of Information Act (FOIA) that authorizes fee awards for a "complainant" who "has substantially prevailed" by "obtain[ing] relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency." 5 U. S. C. §552(a)(4)(E). The term "prevailing party" appears nowhere in this FOIA provision. But, no matter: The majority nevertheless suggests that *this* is how Congress authorizes fee shifting for "plaintiffs who have enjoyed some success but have not prevailed in a judgment on the merits." *Ante,* at 10.

The problem is that Congress had a much more targeted objective when it enacted §552(a)(4)(E). It sought merely to repudiate this Court's decision in *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources,* 532 U. S. 598, 606 (2001), which had held

JACKSON, J., dissenting

that a plaintiff must obtain some "judicial relief" to be eligible for a fee award in FOIA cases.[2]  Since the point of §552(a)(4)(E) was to "abrogat[e] the rule of *Buckhannon* in the FOIA context and reviv[e] the possibility of FOIA fee awards in the absence of a court decree," *Brayton* v. *Office of U. S. Trade Rep.*, 641 F. 3d 521, 525 (CADC 2011), that statutory provision sheds no light whatsoever on whether the term "prevailing party" requires a plaintiff to secure a conclusive ruling on the merits to qualify as a prevailing party for purposes of §1988(b).

In short, while the majority insists that obtaining a preliminary injunction can never suffice for a fee award under §1988(b) "[b]ecause preliminary injunctions do not conclusively resolve the rights of parties on the merits," *ante*, at 7, the text of §1988(b), contemporary dictionary definitions, and our precedents require far less.  All of the Courts of Appeals to consider the question—eleven in total—understood this and thus correctly held that, for fee-shifting purposes, it is possible for a party to prevail based on a preliminary ruling.[3]  The majority's reading of "prevailing party" in

_____

[2] Congress enacted 5 U. S. C. §552(a)(4)(E) because *Buckhannon* had empowered Government agencies to "stonewall valid FOIA claims" and then prevent an award of attorney's fees by "disclosing the documents at the last moment before judgment," thereby mooting the case.  *Brayton* v. *Office of U. S. Trade Rep.*, 641 F. 3d 521, 525 (CADC 2011).  Under *Buckhannon*, such plaintiffs were not eligible for fee awards because they had not obtained any judicial order—preliminary, final, or otherwise.  This strategic behavior ensured that FOIA plaintiffs never became eligible for fee awards despite incurring significant costs, so Congress intervened. 641 F. 3d, at 525.

[3] See, *e.g.*, *Haley* v. *Pataki*, 106 F. 3d 478, 484 (CA2 1997); *Singer Mgmt. Consultants, Inc.* v. *Milgram*, 650 F. 3d 223, 229–230, and n. 4 (CA3 2011) (en banc); *Stinnie* v. *Holcomb*, 77 F. 4th 200, 210 (CA4 2023) (en banc) (case below); *Dearmore* v. *Garland*, 519 F. 3d 517, 524 (CA5 2008); *Planned Parenthood Southwest Ohio Region* v. *Dewine*, 931 F. 3d 530, 534 (CA6 2019); *Dupuy* v. *Samuels*, 423 F. 3d 714, 723, and n. 4 (CA7 2005); *Rogers Group, Inc.* v. *Fayetteville*, 683 F. 3d 903, 909–910 (CA8 2012); *Higher Taste, Inc.* v. *Tacoma*, 717 F. 3d 712, 717–718 (CA9

8          LACKEY *v.* STINNIE

JACKSON, J., dissenting

§1988(b) makes obtaining a court's conclusive final judg-
ment the hallmark of that status in a manner that is both
novel and in many ways anathema to the legal term of art
that Congress actually chose.

II

A

So what *does* it take to qualify as a "prevailing party" for
purposes of this fee-shifting statute?  In *Farrar* v. *Hobby*,
506 U. S. 103 (1992), we explained that a plaintiff "'pre-
vails'" if he receives (1) "actual relief on the merits of his
claim" in a manner that (2) "materially alters the legal re-
lationship between the parties by modifying the defendant's
behavior in a way that directly benefits the plaintiff."  *Id.*,
at 111–112; see also *Lefemine* v. *Wideman*, 568 U. S. 1, 4
(2012) (*per curiam*).  This test is well established, and it
leads inexorably to the conclusion that, in some circum-
stances, an unreversed preliminary injunction can confer
prevailing party status.

Start with the requirement of a "'material alteration of
the legal relationship of the parties,'" which we have re-
peatedly called the "'touchstone'" of the prevailing party
inquiry.  *Sole*, 551 U. S., at 82 (quoting *Garland*, 489 U. S., at
792–793).  A plaintiff need not obtain *all* of the relief he has
requested in the lawsuit to satisfy this requirement.  In-
stead, under our precedents, a plaintiff who has achieved
even "'*some* of the benefit'" he sought has secured the
change in the parties' legal relationship necessary to
"cros[s] the threshold to a fee award of some kind."  *Id.*, at
791–792 (quoting *Nadeau* v. *Helgemoe*, 581 F. 2d 275, 278–

_____

2013); *Kansas Jud. Watch* v. *Stout*, 653 F. 3d 1230, 1232, 1238–1239
(CA10 2011); *Common Cause Ga.* v. *Georgia*, 17 F. 4th 102, 107 (CA11
2021); *Select Milk Producers, Inc.* v. *Johanns*, 400 F. 3d 939, 942, 948–
949 (CADC 2005).  The First Circuit has not yet considered the issue.
See *Sinapi* v. *Rhode Island Bd. of Bar Examiners*, 910 F. 3d 544, 552
(2018).

279 (CA1 1978); emphasis added).

A permanent injunction—just like a declaratory judgment or a damages award—"will usually satisfy that test," *Lefemine*, 568 U. S., at 4, because permanent injunctive relief generally "affects the behavior of the defendant toward the plaintiff," *Rhodes* v. *Stewart*, 488 U. S. 1, 4 (1988) (*per curiam*). At least some preliminary injunctions also qualify. The preliminary injunction in this case, for example, provided respondents with actual relief by reinstating their suspended licenses, allowing them to drive without fear of sanction for failing to repay their fines and fees. For the roughly sixteen months that the preliminary injunction was in place, "that ruling worked the requisite material alteration in the parties' relationship" by permitting respondents to engage in conduct that would have been prohibited otherwise. *Lefemine*, 568 U. S., at 5.

It is indisputable that the preliminary injunction the District Court issued provided a "direc[t] benefit" to respondents. *Farrar*, 506 U. S., at 111. That relief was also awarded "'on the merits.'" *Lefemine*, 568 U. S., at 4 (quoting *Farrar*, 506 U. S., at 111–112). We have long taken a "practical" approach to the merits inquiry in this context. *Hanrahan* v. *Hampton*, 446 U. S. 754, 758 (1980) (*per curiam*). Under that approach, relief is granted "on the merits" when it provides "a resolution of the dispute which changes the legal relationship between [the plaintiff] and the defendant." *Garland*, 489 U. S., at 792 (internal quotation marks omitted).

Notably, for prevailing party status, we have not required that a court actually determine whether a legal claim is meritorious. The majority acknowledges our holding that the entry of a consent decree following "the parties' own resolution of the merits" counts. *Ante,* at 12; see *Farrar*, 506 U. S., at 111 (recognizing that a consent decree satisfies the requirement that the plaintiff "obtain at least some relief on the merits of his claim"). Indeed, in *Maher*, we upheld a

JACKSON, J., dissenting

fee award based on a consent decree that "did not purport to adjudicate" the plaintiff's claims at all. 448 U. S., at 126, n. 8, 129. We have also suggested that default judgments, which do not involve any assessment of the merits of the plaintiff's claims, "almost invariably give rise to fee awards." *Kirtsaeng* v. *John Wiley & Sons, Inc.*, 579 U. S. 197, 208, n. 3 (2016).

A court's entry of a preliminary injunction—which *does* require a judge to make a preliminary assessment of the merits—provides a basis for prevailing party status that is at least as strong as a consent decree or a default judgment. Plaintiffs seeking the "extraordinary remedy" of a preliminary injunction must make a "clear showing" that they are "likely to succeed on the merits." *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. 7, 20, 22 (2008). And the court's decision to order preliminary injunctive relief often involves "searching" proceedings, *Sole*, 551 U. S., at 84, even though the "evidence . . . is less complete than in a trial on the merits," *University of Tex.* v. *Camenisch*, 451 U. S. 390, 395 (1981).

In this case, the District Court thoroughly assessed the merits of respondents' claims and granted their request for preliminary injunctive relief after extensive briefing and an evidentiary hearing during which multiple witnesses testified. It blinks reality to suggest that the District Court's order requiring the Commissioner to give respondents their licenses back *now*—based on the court's conclusion that respondents were likely to succeed if this matter proceeded to trial—was "not the stuff of which legal victories are made." *Hewitt*, 482 U. S., at 760.

It is no answer to simply declare by *ipse dixit* that preliminary injunctions are materially different from consent decrees because "a consent decree is like a final judgment in the relevant ways"—*i.e.,* "[i]t conclusively resolves the claim, bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between

the parties." *Ante,* at 12–13.  The very question before us is the relevance of this kind of finality to the prevailing party determination.   And, luckily, that question has already been answered: Neither the text of §1988(b) nor any of this Court's past cases make fee eligibility dependent on the entry of a conclusive final judgment, as I explained above.

In any event, if a plaintiff need only obtain an order that is "like a final judgment" to prevail, *ibid.*, it is not at all clear why at least some preliminary injunctions would not count.  Consider, for example, a dispute in which the district court reviews the evidence and the parties' arguments and enters the type of preliminary injunction that changes the legal relationship of the parties.  The case proceeds but then becomes moot such that the litigation ends; the preliminary injunction is not—and can never be—reversed by a subsequent order of the court.  In this scenario, all the purportedly "relevant" characteristics of a consent decree exist, because the parties' legal relationship was materially altered by judicial *imprimatur*, and that preliminary relief is conclusive insofar as the case has ended and the ruling cannot be undone by a later determination.  In this circumstance, the preliminary injunction "functions much like the grant of an irreversible partial summary judgment on the merits," *Northern Cheyenne Tribe* v. *Jackson*, 433 F. 3d 1083, 1086 (CA8 2006), which all appear to agree would suffice to confer fee eligibility under §1988(b).

## B

Our decisions in *Buckhannon*, 532 U. S. 598, and *Sole*, 551 U. S. 74, are not to the contrary.  The majority cites these two decisions to support its view that obtaining a preliminary injunction is never sufficient to qualify the recipient for a fee award under §1988(b).  *Ante,* at 8–9.  But those cases hold no such thing.  Instead, they simply clarify that, for a plaintiff to prevail, the requisite "change in the legal

12                    LACKEY *v.* STINNIE

JACKSON, J., dissenting

relationship of the parties" must be both "judicially sanc-
tioned," *Buckhannon*, 532 U. S., at 605, and "enduring,"
*Sole*, 551 U. S., at 86. Neither case mandates the majority's
categorical rule.

In *Buckhannon*, this Court rejected the so-called "cata-
lyst theory," under which a plaintiff could collect a fee
award as a "prevailing party" without securing any judicial
relief so long as the lawsuit produced "a voluntary change
in the defendant's conduct." 532 U. S., at 601. We held that
such a voluntary change, "although perhaps accomplishing
what the plaintiff sought to achieve by the lawsuit, lacks
the necessary judicial *imprimatur* on the change" to trigger
fee eligibility. *Id.*, at 605. In *Sole*, we considered whether
a plaintiff who obtains a preliminary injunction but is sub-
sequently denied a permanent one prevails for fee purposes
under §1988(b). 551 U. S., at 77. We explained that when
a plaintiff's "initial victory" at the preliminary injunction
stage is "superseded" by a non-favorable final "ruling on the
merits," he does not qualify as a "prevailing party," because
the relief he received was not "enduring." *Id.*, at 84–86.

A preliminary injunction that mandates a judicially sanc-
tioned legal change in the parties' relationship and is never
reversed by a final ruling on the merits satisfies both *Buck-
hannon* and *Sole*. A court that issues interim injunctive re-
lief unquestionably gives its "judicial *imprimatur*" to the
change afforded, as *Buckhannon* requires. 532 U. S., at
605. For its part, *Sole* stands merely for the proposition
that a party can be *divested* of "prevailing party" status if
his "success rested on a premise the District Court ulti-
mately rejected." 551 U. S., at 84–86. But *Sole* is inappo-
site when a subsequent final decision does not thwart the
judge-sanctioned basis for the preliminary injunction. In-
deed, *Sole* expressly said so, by specifically reserving the
question "whether, in the absence of a final decision on the
merits of a claim for permanent injunctive relief, success in
gaining a preliminary injunction may sometimes warrant

JACKSON, J., dissenting

an award of counsel fees," *id.*, at 86—the precise issue that is before the Court today.

The majority thus overreads our precedents to support its blanket rule that preliminary injunctions can never support fee awards. *Ante,* at 7–9. With respect to *Sole* in particular, it is true that we characterized the preliminary injunction at issue there as "fleeting" and "tentative." 551 U. S., at 83–84; see also *ante,* at 9 (contrasting interim relief with relief that "last[s]"). But the *Sole* Court did not tie the requirement for "enduring" relief to the inherent permanence of the relevant judicial order. Instead, we made crystal clear that "[o]f controlling importance to our decision" was the fact that "the eventual ruling on the merits for defendants, after both sides considered the case fit for final adjudication, *superseded* the preliminary ruling." 551 U. S., at 84–85 (emphasis added); see also *id.*, at 78 (observing that a plaintiff does not prevail if "at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded").

At the end of the day, *Sole* should be taken to mean only what it expressly holds: Preliminary injunctive relief that is subsequently superseded by a final judgment reversing the ruling does not endure for fee-shifting purposes. Here, the preliminary injunction provided actual relief to respondents for more than sixteen months, and there was no *Sole*-like supplanting of that preliminary relief by a subsequent court order.

### III
### A

In addition to misinterpreting the text of §1988(b) and misconstruing our precedents, the majority ignores Congress's clear intent to expand access to justice. It is puzzling, to say the least, that the majority seems to go out of its way to adopt a rule that categorically prohibits fee shifting while interpreting a statute that expressly authorizes

fee awards.

There is no dispute that Congress enacted §1988(b) "for a specific purpose": to respond to this Court's decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240 (1975), which had rejected the "former equitable practice of awarding attorney's fees to the prevailing party in certain civil rights cases." *Farrar*, 506 U. S., at 118 (O'Connor, J., concurring). The *Alyeska* Court held that, absent statutory authorization, courts should not depart from the "'American Rule,'" under which litigants ordinarily bear their own attorney's fees. 421 U. S., at 247. Congress swiftly enacted §1988(b) in *Alyeska*'s wake to codify a civil rights exception to the American Rule. The majority does not, and cannot, dispute that Congress's intent was "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley* v. *Eckerhart*, 461 U. S. 424, 429 (1983) (quoting H. R. Rep. No. 94–1558, p. 1 (1976)).

Consistent with that "clear congressional intent," this Court has previously recognized that fee awards should be available to "partially prevailing civil rights plaintiffs." *Garland*, 489 U. S., at 790. This principle is, in fact, readily apparent from the statute's enactment history. See *Buckhannon*, 532 U. S., at 607. The history demonstrates that the question of awarding fees for success based on interim orders was not overlooked by the legislature; to the contrary, Congress specifically "contemplated the award of fees *pendente lite*," at least where a party "has established his entitlement to some relief on the merits of his claims." *Hanrahan*, 446 U. S., at 757 (citing S. Rep. No. 94–1011, p. 5 (1976); H. R. Rep. No. 94–1558, at 7–8).

The majority says that Congress merely wanted §1988(b) to authorize fee awards when "conclusive, enduring judicial relief is meted out on an incremental basis." *Ante,* at 12. But that is not what the historical record establishes, and

JACKSON, J., dissenting

*Buckhannon* flatly rejects this contention. There, we specifically observed that, per §1988(b)'s legislative history, "'"prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits.'" 532 U. S., at 607 (quoting H. R. Rep. No. 94–1558, at 7); see also *Hanrahan*, 446 U. S., at 756–757. The legislative history is likewise unequivocal that a prevailing party for §1988(b) purposes should "also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury." H. R. Rep. No. 94–1558, at 7.

### B

Nor could a Congress that wished to authorize fee awards for civil rights victories have intended the absurdities that will result from the majority's categorical preclusion of preliminary injunctive relief from §1988(b). To state the obvious, the majority's bright-line rule lacks the nuance that is needed to account for the various circumstances in which a preliminary injunction may be "preliminary" in name only.

One example is the plaintiff who requests a preliminary injunction to achieve an interim result, given the timeframe at issue. "When protestors seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will give them all the court-ordered relief they need and the end of the parade will moot the case." *McQueary* v. *Conway*, 614 F. 3d 591, 599 (CA6 2010). Thus, the Courts of Appeals regularly hold that plaintiffs who successfully obtain a preliminary injunction that permits them to engage in the otherwise prohibited conduct "prevail" for fee-shifting purposes. See, *e.g.*, *Young* v. *Chicago*, 202 F. 3d 1000, 1000–1001 (CA7 2000) (*per curiam*) (awarding fees to plaintiffs who obtained a preliminary injunction to protest a political convention even though the "suit became moot before a definitive determination of its merits" could be

JACKSON, J., dissenting

made).

In its rush to carve preliminary injunctions out of §1988(b), the majority also overlooks situations in which courts have, in fact, conclusively resolved the merits of a plaintiff's claims at the preliminary injunction stage. A trial court might definitively determine that a law is "'"facially unconstitutional"'" in the course of granting preliminary relief, for example. *Singer Mgmt. Consultants, Inc.* v. *Milgram*, 650 F. 3d 223, 229–230, and n. 4 (CA3 2011) (en banc) (quoting *People Against Police Violence* v. *Pittsburgh*, 520 F. 3d 226, 229 (CA3 2008)). But the majority nonetheless adopts a sweeping rule under which preliminary injunctions can *never* be the basis for fee eligibility.

And to what end? The majority seeks to justify its broad holding on the grounds that it discourages fee disputes and thereby "serves the interests of judicial economy." *Ante,* at 10. But concerns about judicial administration cannot supplant Congress's clear intent to promote access to justice via fee shifting in civil rights cases.

What is more, it is actually the majority's categorical rule that will promote wasteful litigation and incentivize litigants to manipulate fee liability. Under the majority's rule, a plaintiff who has incurred substantial attorney's fees in order to secure a preliminary injunction that provides all the relief he needs will face a choice: He may either concede that the litigation has run its course and pay his own fees, or he may seek to litigate the case to final judgment in order to secure a fee award. No one would blame a plaintiff with a strong case for choosing the latter option. But such additional litigation is an inefficient waste of judicial resources if the plaintiff has already achieved his objective at an earlier part of the case.

Worse still, the majority's rule appears to preference conservation of judicial resources over the maintenance of meritorious civil rights lawsuits, to the extent that excluding preliminary injunctive relief from §1988(b) facilitates the

JACKSON, J., dissenting

strategic mooting of cases by defendants to avoid paying attorney's fees. This case illustrates precisely that problem. After a robust evidentiary hearing, the District Court issued a comprehensive opinion that preliminarily enjoined the Commissioner from enforcing the challenged law against respondents. Seeing the writing on the wall, the Commissioner sought and obtained a stay of the case—over respondents' objections—based on his representation that the legislature was likely to repeal the challenged law. The Commissioner then successfully lobbied the legislature to repeal the legislation, emphasizing that doing so would, in his words, "result in [respondents'] pending litigation being dismissed, relieving the Department from continuing to incur costly legal fees." App. 409.

As the Fourth Circuit observed, precluding fee shifting in this scenario is manifestly inequitable, because it leaves respondents "holding the bag" for considerable litigation fees despite—and largely because of—their having succeeded in obtaining preliminary relief. *Stinnie* v. *Holcomb*, 77 F. 4th 200, 210 (2023) (en banc). Ironically, it was the strength of respondents' challenge as verified by the court's preliminary order that prompted both the change in law and the Commissioner's robust effort to stiff the plaintiffs with respect to attorney's fees. Moreover, it is hardly a revelation that lawyers who would otherwise be willing to litigate meritorious civil rights cases (*i.e.,* matters in which interim relief is critical due to ongoing civil rights violations) will likely be discouraged from taking on such representations if fee awards can be so easily thwarted.

The majority dismisses concerns about strategic mooting as both "'entirely speculative'" and likely to "arise in only a small number of contexts." *Ante,* at 10 (quoting *Buckhannon*, 532 U. S., at 608). But, as I have shown, the facts of this very case belie the majority's nonchalance, particularly in light of the *Buckhannon* experience. Research suggests that the Court's rejection of the catalyst theory in that case

18                    LACKEY *v.* STINNIE

JACKSON, J., dissenting

had the predictable practical effect of discouraging public interest organizations and private attorneys from taking on civil rights actions. C. Albiston & L. Nielsen, The Procedural Attack on Civil Rights: The Empirical Reality of *Buckhannon* for the Private Attorney General, 54 UCLA L. Rev. 1087, 1092 (2007); cf. n. 2, *supra.* Similarly, a multitude of legal advocacy groups have filed *amicus* briefs in this case to explain that losing the ability to recoup fees for securing interim relief will jeopardize their missions. See, *e.g.,* Brief for Alliance Defending Freedom et al. as *Amici Curiae* 7–10; Brief for American Civil Liberties Union et al. as *Amici Curiae* 28–30; Brief for Lawyers' Committee for Civil Rights Under Law et al. as *Amici Curiae* 17–18.

There is thus every reason to believe that the net result of today's decision will be less civil rights enforcement in the long run. Without irony, the majority reads a statute that was "enacted to [e]nsure that private citizens have a meaningful opportunity to vindicate their [civil] rights," *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546, 559 (1986), as if Congress meant to make private civil rights enforcement harder to achieve.

\*    \*    \*

The majority holds that obtaining a preliminary injunction never entitles a plaintiff to fees under §1988(b). In doing so, it overrules the decisions of every Court of Appeals to consider the issue, relies on an atextual "conclusive judgment" requirement, and ignores both our precedents and Congress's intent.

It is quite true that Congress has demonstrated its ability to fix our mistakes in this realm. *Ante*, at 11. But, in my view, rather than relying on Congress to check our work, we should give full effect to the plain text and remedial purpose of §1988(b) in the first instance. This Court should have held that, when a court hearing a civil rights lawsuit

JACKSON, J., dissenting

issues a preliminary injunction that materially alters the
relationship between the parties and is never reversed, the
requesting party "prevails" for fee-shifting purposes and is
thus eligible for a fee award under §1988(b).