## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>　　　　**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>　　　　**Defendants.** | **Civil Action No. 1:17-cv-02989-AT** |

## CURLING PLAINTIFFS' BRIEF CONCERNING *LACKEY v. STINNIE*

COME NOW Donna Curling, Donna Price, and Jeffrey Schoenberg (the "Curling Plaintiffs") and pursuant to this Court's March 4, 2025 Order (ECF No. 1864), state the following concerning the effect of *Lackey v. Stinnie,* 604 U.S. ----, 145 S. Ct. 659 (2025) on pending motions for attorneys' fees related to the Court's order of August 15, 2019. *See Curling v. Raffensperger,* 397 F. Supp. 3d 1334 (N.D. Ga. 2019) (ECF No. 579) ("Order").

1.　　The primary reason the Order made Plaintiffs prevailing parties for purposes of their pending fees motions is that substance of an order controls over its form. Courts tend to "look at a finding or a conclusion in its true light, regardless of the label that the [] court may have placed on it." *Bircher Tr. of Bircher Living Tr. v. Metro. Life Ins. Co.*, 859 Fed. App'x 827, 828 (9th Cir. 2021) (quoting *Tri-Tron Int'l v. Velto*, 525 F.2d 432, 435 (9th Cir. 1975)). The fact that the Court issued its Order after motions and a two-day evidentiary hearing seeking a preliminary

injunction does not alter the unequivocally permanent nature of one aspect of judicial relief granted: the total prohibition on the use of the GEMS/DRE system in Georgia elections after December 31, 2019. This relief was permanent, full, and final: the Court found in its order that the GEMS/DRE system was

> shown to operate on unsecure, unreliable and grossly outdated technology that jeopardizes their ability to cast votes that reliably and accurately will be counted or counted on the same basis as someone using another voting method. Plaintiffs have shown that the corrosion of the accuracy and reliability of the mandated electronic voter registration database and Express Poll system used at the polls in tandem with the DRE/GEMS voting system has seriously aggravated the arbitrary and unlawful character of Defendants' implementation of the State mandated voting system, in derogation of their First and Fourteenth Amendment rights.

Order at 1403. These are fundamentally merits determinations about the unconstitutionality of the challenged system.

Unlike the Supreme Court's invocation of *University of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) reminding us that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," this specific relief granted by the Court would endure beyond any "trial on the merits," and certainly beyond trial in this case. *Lackey,* 145 S. Ct. at 667. Regardless of how the Court ultimately finds and enters judgment, and regardless of whether the Secretary of State proceeds to maintain (or to modify, or to suspend or replace) Georgia's current voting system, *see* O.C.G.A. § 21-2-300, he is not free to revert to the GEMS/DRE system in any

2

circumstance. This is a direct and necessary consequence of the Court's Order granting Plaintiffs' demands for relief. That judicially sanctioned, enduring, and material change in the relationship between Plaintiffs and the State Defendants is permanent – not a mere "fleeting success." *Lackey,* 145 S. Ct. at 669; *see also Disability Rights New Mexico v. Lucero,* No. 22-CV-954-WJ-JFR, 2025 WL 623493, at *2 n.4 (D.N.M. Feb. 25, 2025) (quoting *Lackey* in finding plaintiff to be a "prevailing party" due in part to judicially sanctioned and enduring material change in the parties' legal relationship, "rather than an unawardable 'fleeting success'").

To be sure, in crafting the Order, the Court "exercise[d] [its] discretion and judgment" and expressly deferred to "the equities of" the case in declining to enjoin the GEMS/DRE system for the municipal and special general elections scheduled in a few months' time. Order at 1405-07. These are common equities for considering whether to institute *preliminary* relief aimed at preserving the status quo.[1] Here, too, the Court applied them in denying certain temporary measures Plaintiffs sought. But that ordinary function of judicial discretion in crafting preliminary relief or its denial, *intended to protect Defendants and the public interest,* does not diminish the

---

[1] For discussion of the constraints on the issuing of preliminary injunctive relief based on its traditional, general objective of preserving the *status quo ante*, *see generally O Centro Espírita Beneficente União Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012–18 (10th Cir. 2004) (McConnell, J., concurring), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006).

enduring nature of the relief granted to *Plaintiffs* in fully and finally enjoining the GEMS/DRE system after 2019. *That* relief "conclusively resolve[] [Plaintiffs'] claim by granting enduring judicial relief on the merits that alter[ed] the legal relationship between the parties." Defs.' Not. Of Supp. Authority and Resp. to Court's Order on Mots. for Interim Attorneys' Fees," ECF No. 1861 at 2 (brackets in original) (quoting *Lackey,* 145 S. Ct. at 669). And courts have granted de facto permanent relief in the guise of a preliminary injunction before, or later converted such midstream relief formally into a permanent injunction without the need for an express recitation that the defendants violated the law. *E.g., Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 513 (7th Cir. 2000), *cert. denied*, 533 U.S. 949, 121 S. Ct. 2590 (2001).

    **2.**    Importantly, the Court's Order is the mechanism that provided this enduring merits-relief to Plaintiffs. The Court explained at the time (in 2019) that it "view[ed] the continuation of the GEMS/DRE voting system as imposing a genuine threat to Plaintiffs' constitutionally protected voting rights that cannot be allowed to persist ad infinitum." Order at 1407. Unlike in *Lackey*, the Court expressly distinguished the unique circumstances of the 2019 off-year election from its injunction permanently prohibiting the State from using its then-current election system: "[c]ontinued use of the GEMS/DRE system past this 2019 cycle of elections is indefensible" *Id.* at 1409.

4

The Court acknowledged the passing of legislation, the appropriation of funds, and the selection of a new election system had all occurred, *before* it issued its relief prohibiting the Secretary from mandating use of the GEMS/DRE voting system – and still found it essential to enjoin State Defendants from using it at any time after the 2019 election cycle. *Id.* at 1408-10.

To wit: House Bill 316 did not require the state to discontinue use of GEMS/DRE at the end of 2019, but only "[a]s soon as possible." O.C.G.A. § 21-2-300(a)(2) (2019). Only the Court's Order set that deadline, well after the legislation was enacted and signed into law, after the Secretary solicited bids for, vetted, and awarded a new system. The Order was necessary to provide relief not provided by these external events. And State Defendants have repeatedly acknowledged that the Court's Order caused their timely implementation of the current voting system.[2]

This is another distinguishing characteristic from *Lackey*, and from the scenarios the Supreme Court therein contemplated in which external events, such as

---

[2] *See, e.g.,* Curling Pls.' Not. Of Joinder, ECF Nos. 1188 at 2 n.1 (citing public statements); 1630-27 at 8 (Nov. 30, 2021 Congressional Select Committee testimony) (Secretary Raffensperger: "We were on a fast track because we had to get this in place for the first election, the Presidential primary of 2020, because of court order."); 1630-28 at 12 (Secretary Raffensperger: "We stood up a new voting system, new voting machines in less than six months. And that was really because we had an activist federal judge that said you can't use the old DRE machines. And so we had to do that for the first primary that we had coming up."); 1630-30 at 4-5 (State Defendants: "the Order prevents the GEMS/DRE system from being used in 2020 elections")

subsequent legislation amending or repealing a statute earlier found substantially likely to be unconstitutional, may render a dispute moot months or years after preliminary relief has already issued. 145 S. Ct. at 665. The "external events that render a dispute [over use of the GEMS/DRE system] moot" did not here "convert a temporary order designed to preserve the status of the parties" at all. *Id.* at 667-68. Rather, the sunsetting of the GEMS/DRE system in the Order was designed to provide, and did provide, the Court's judicial imprimatur by granting enduring, indefinite, permanent (and un-appealed) relief on that portion of Plaintiffs' claims. External events played no part in bestowing permanence on the relief enjoining use of the GEMS/DRE system; the permanence was conferred "by virtue of a judicial order." *Id.* at 671.

The Supreme Court in *Lackey* disclaimed that a prevailing party must prevail on either the "central issue" of an action or on every claim in an action – just on a "claim [through] granting enduring judicial relief on the merits." *Id.* at 669. Conclusive resolution on the claim to prohibit any future use of the GEMS/DRE voting system in Georgia through the granting of enduring relief on the merits that altered the relationship between the parties should permit Section 1988 fees even under *Lackey*. And, of course, this was not the only enduring judicial relief granted in the Order: the Court likewise directed the State to take other steps with permanent effect, like developing a default plan to use hand-marked paper ballots, conducting

pilot HMPB elections in November 2019, and to furnish each precinct location with at least one hard-copy printout of the voter registration list for that precinct. Order at 1410-11.

3.    This Court's May 26, 2020 Order (ECF No. 733) denied without prejudice Plaintiffs' first motions for attorneys' fees as "prevailing parties" under 42 U.S.C. § 1988 (ECF Nos. 595, 596). The Court therein permitted Plaintiffs to "renew their request[s] once a final judgment has been entered on their claims or if circumstances change that would support an interim award." Order, ECF No. 733 at 7. Notwithstanding Plaintiffs' contentions that circumstances have long supported these awards as expressed through *inter alia* their renewed and pending motions for attorneys' fees (*see* ECF Nos. 967, 998), and continue to provide that support both before and after *Lackey*, upon entry of a final judgment in their favor Plaintiffs respectfully submit that the Court should award Plaintiffs fees incurred in litigating their claims throughout the case, including those incurred while litigating motions leading to the Court's Order. Nothing in *Lackey* prohibits the Court from affirming the final, enduring, permanent nature of the relief enjoining Defendants from using the GEMS/DRE system after 2019 that it granted in the Order.

Moreover, though that State Defendants' footnote their assertion to the contrary, Defs.' Not., ECF No. 1861 at 2-3, nothing in *Lackey* prohibits the Court from awarding fees to Plaintiffs related to the relief the Court granted in the Order

itself. For reasons discussed *supra*, the order enjoining the GEMS/DRE system is not "temporary," but permanent, such that the relief granted by that order was not mooted due to "external events" such as the General Assembly's passage of HB 316 and the Secretary's noticing of his intent to award a new contract to Dominion. Order at 1407-08.

In any event, those actions occurred before this Court issued its Order, not after, and so cannot not be characterized as subsequent external events mooting the (permanent) relief the Court awarded to materially change the relationship of the parties. It cannot be that the enduring quality of this relief came from the General Assembly, rather than the Court, as Coalition Plaintiffs have already explained in their Response. Coalition Pls.' Resp., ECF No. 1862 at 2-3 (quoting Reply Br. in Supp. of Coalition Pls.' Mot. for Fees, ECF No. 705). And as Coalition Plaintiffs have previously described, in the alternative nothing bars this Court at this late stage of litigation from reconsidering its non-final dismissal of the GEMS/DRE claims, severing them, granting final judgment (again) on the terms of the Order, and granting the pending fee motions. *Id.; see also* Br. in Supp. of Coalition Pls.' Mot. to Sever [and for Other Relief], ECF No. 1182-1 at 2, 8, 14; Curling Pls.' Not. Of Joinder, ECF No. 1188.

\*   \*   \*

In its Order, the Court granted enduring judicially sanctioned merits relief that materially altered the legal relationship between Plaintiffs and Defendants. Accordingly, and for at least the foregoing reasons, the Court may and should grant Plaintiffs' pending motions for attorneys' fees and expenses incurred in obtaining the relief granted in that Order, most notably the permanent prohibition on the use of the GEMS/DRE system after 2019.

Respectfully submitted, this 24th day of March 2025.

<table>
<tr><td>

David D. Cross (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
Telephone: (202) 346-4000
DCross@goodwinlaw.com
MKaiser@goodwinlaw.com

Benjamin E. Campbell (*pro hac vice*)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (415) 813-8800
benjamincampbell@goodwinlaw.com

</td><td>

*/s/ Adam M. Sparks*
Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3500
Atlanta, GA 30309
(404) 888-9700
hknapp@khlawfirm.com
sparks@khlawfirm.com

</td></tr>
</table>

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-cv-02989-AT** |

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

<u>*/s/ Adam M. Sparks*</u>
Adam M. Sparks

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-cv-02989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2025, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Adam M. Sparks*
Adam M. Sparks