IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:17-cv-2989-AT |

**DEFENDANTS' SUPPLEMENTAL BRIEF
ON IMPACT OF *LACKEY V. STINNIE***

**INTRODUCTION**

On March 4, 2025, this Court authorized the parties to file supplemental briefs addressing the impact of *Lackey v. Stinnie*, 604 U.S. ___, No. 23-621, 2025 WL 594737 (U.S. Feb. 25, 2025) on Plaintiffs' pending attorney's fee motions. [Doc. 1864]. As discussed below, *Stinnie* requires that both motions be denied. Plaintiffs here are in the same situation as the plaintiffs in *Stinnie*: they brought claims that resulted in a district court entering a preliminary injunction, the specific claims on which the injunction was based became moot before final judgment, and, as a result, they cannot obtain attorneys' fees for the preliminary injunction. There is no alternative basis for which Plaintiffs can be awarded fees, either. This Court cannot enter final judgment against the State on moot claims—especially when Plaintiffs knew their DRE claims

were already mostly moot in 2019 and agreed they were completely moot by 2021. As a result, Plaintiffs cannot be awarded any fees for the 2019 DRE preliminary injunction, even if they prevail at the trial on their BMD claims.

## THE *STINNIE* DECISION

On February 25, 2025, the Supreme Court released its opinion in *Stinnie*, which involved a Virginia law that provided for suspension of driver's licenses when a driver had unpaid legal financial obligations. 2025 WL 594737 at *2. A group of Virginia drivers sued, claiming the law violated the U.S. Constitution. *Id*. The district court entered a preliminary injunction barring state officials from enforcing the statute. *Id*. at *3. About four months after the injunction, the Virginia legislature took a preliminary step of suspending the challenged law. *Id*. The district court then stayed the case and about a year later, the Virginia legislature fully repealed the challenged law. *Id*. The parties agreed that the drivers' claims had become moot and stipulated to dismissal. *Id*.

Following dismissal, the drivers sought attorney's fees, which the district court denied under then-binding Fourth Circuit precedent. *Id*. On appeal, the Fourth Circuit eventually reversed, determining that the preliminary injunction could form the basis for an award of attorney's fees. *Id*. at *4.

The Supreme Court reversed, explaining that a "prevailing party . . . is 'the party *ultimately prevailing* when the matter is *finally* set at rest.'" *Id*. at *4 (quoting Black's Law Dictionary 1352) (emphasis added). The Court further

explained that "[b]ecause preliminary injunctions do not conclusively resolve the rights of parties on the merits, *they do not confer prevailing party status*. A plaintiff who secures a preliminary injunction has achieved only temporary success at an intermediary 'stage[] of the suit.'" *Id.* at \*5 (quoting Black's Law Dictionary 1352) (emphasis added).

## ARGUMENT

### I.  The 2019 preliminary injunction.

The 2019 preliminary injunction in this case was exclusively focused on the State's prior DRE-based voting system: "The Curling and Coalition Plaintiffs seek to (1) ***enjoin Defendants from using the Diebold AccuVote direct recording electronic ("DRE") voting system to conduct further elections*** in Georgia, including providing programming and machine configurations employing the DRE voting system." *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1392 (N.D. Ga. 2019) (emphasis added). This Court found Plaintiffs had a likelihood of success on the merits of their claims that the "Georgia GEMS/DRE voting system" violated the U.S. Constitution. *Id.* at 1402. But at the same time it entered that order, this Court recognized that the State had *already* adopted legislation to replace the DRE system with the new BMD-based system "as soon as possible." *Id.* at 1405 (quoting O.C.G.A. § 21-2-300(a)(2)). The injunction only granted Plaintiffs' motions in part, denying relief as to the 2019 elections, but rooting its requirements for future

elections on the Court's "doubt" that the State could successfully roll out the Dominion system in time for the 2020 Presidential Preference Primary. *Id.* at 1407. As a result, the Court directed the State to "refrain from the use of the GEMS/DRE system in conducting elections after 2019," among other listed relief. *Id.* at 1410. The key point of the scope of the relief was "to ensure that the GEMS/DRE system is not resorted to as a stopgap default system in the event the Secretary of State and its contractor are unable to fully and properly rollout the new BMD system in time for the 2020 Presidential Preference Primary or any of the ensuing elections." *Id.* at 1412.

## II. The 2019 preliminary injunction became moot, depriving this Court of jurisdiction.

Following the 2019 injunction, this Court permitted Plaintiffs to amend their Complaints to add new counts against the new Dominion system. [Doc. 626]. At the time, Defendants suggested Plaintiffs should file a new case against the Dominion system, which Plaintiffs chose not to do. [Doc. 607 at 8].

The State successfully implemented the Dominion system for the 2020 elections and continued using it successfully in 2022 and 2024. Recognizing the DRE portions of the case were over, in a 2021 hearing, Curling Plaintiffs' counsel agreed the DRE claims were moot. [Doc. 1234 at 73]. In 2023, as this case moved toward trial, this Court noted that all Plaintiffs either agreed or did not dispute that their DRE claims were moot. [Doc. 1705 at 109].

Recognizing this reality, this Court dismissed Counts I and II of Curling and Coalition Plaintiffs' respective complaints as moot at summary judgment. *Id*. Those were the entirety of the counts of Plaintiffs' Complaints on which the 2019 preliminary injunction were based. *See Curling v. Kemp*, 334 F. Supp. 3d 1303, 1312–13 (N.D. Ga. 2018), *aff'd in part, appeal dismissed in part sub nom. Curling v. Sec'y of Georgia*, 761 F. App'x 927 (11th Cir. 2019) (describing claims). At that time, the Court recognized that mootness was not a matter of mere convenience—instead it "is a jurisdictional question because the Court 'is **not empowered to decide** moot questions or abstract propositions.'" [Doc. 1705 at 108] (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal quotations omitted) (emphasis added)); *see also Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). The Court recognized in its summary-judgment order that when the State "fully transitioned" to a new voting system without the possibility of returning to the old system, it no longer had any jurisdiction over the DRE claims. [Doc. 1705 at 109–10]; *see also Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

This case then proceeded to trial exclusively on claims that were not part of this case when this Court entered the 2019 preliminary injunction. *See* [Docs. 627, 628] (BMD claims); [Doc. 1705] (summary-judgment order).

### III. Application of *Stinnie* to Plaintiffs' 2019 injunction.

Because the 2019 injunction this Court entered did not "conclusively resolve[] [Plaintiffs'] claim by granting enduring judicial relief on the merits that alters the legal relationship between the parties," *Stinnie,* 2025 WL 594737 at *6, Plaintiffs are not and cannot be prevailing parties for purposes of 42 U.S.C. § 1988 based on the entry of that injunction. At this point in the case, Plaintiffs have not obtained a "change in legal relationships" that is "judicially sanctioned and enduring." *Id.* at *5. The mere fact that the State is no longer using DREs does not mean that Plaintiffs are prevailing parties "because external events" eliminated DREs. *Id.* at *6.

Further, under *Stinnie*, Plaintiffs also can *never* be prevailing parties as a result of the entry of the 2019 preliminary injunction. The 2019 preliminary injunction was based on counts of both Plaintiffs' Complaints that this Court dismissed as moot due to actions of the State. Thus, the Curling and Coalition Plaintiffs are in the same position as the drivers in *Stinnie*, where the Virginia General Assembly repealed the challenged law after entry of the preliminary injunction and the case was dismissed. *Id.* at *3. Because "external events that render a dispute moot do not convert a temporary order . . . into a conclusive adjudication of their rights," *id.* at *5, the drivers could *never* obtain fees because they never obtained a final order on the merits before the legislature repealed the challenged law.

- 6 -

The same rule applies directly here: Curling and Coalition Plaintiffs can never receive fees for the 2019 preliminary injunction because it was based on claims that later became moot due to the State's actions before Plaintiffs obtained a non-preliminary order or final judgment. Because Plaintiffs "must succeed on the merits" of a claim to obtain fees, *id.* at *5, and they did not do so on the counts of their complaints on which the 2019 injunction was entered, they can never be awarded fees for that injunction.

Thus, based on the decision in *Stinnie*, this Court must deny the interim motions, [Docs. 967, 998], and Plaintiffs are limited to an award of fees for the remaining BMD claims only in the event they ultimately prevail at trial. But *Stinnie* forecloses any award of interim fees related to DREs. To conclude otherwise would be reversible error.

## IV. Coalition Plaintiffs' attempts to avoid the application of *Stinnie* are unavailing.

Faced with the reality that they cannot recover any fees related to the 2019 preliminary injunction, Coalition Plaintiffs attempt several arguments that fall flat. They cannot resuscitate the interim fee motions.

First, Coalition Plaintiffs try to distinguish the relief in *Stinnie* from the relief here, claiming that the legislature acted in *Stinnie* while the Court acted here. *See* [Doc. 1862 at 3]. Coalition Plaintiffs also point to the additional elements beyond HB 316 that were included in the Court's 2019 preliminary

injunction. *Id*. But Coalition Plaintiffs' arguments miss the point. This Court's additional requirements were ordered solely as a "stopgap default system" in the event the State was not able to roll out its new voting system in time for the 2020 Presidential Preference Primary. *Curling*, 397 F. Supp. 3d at 1411–12. The entirety of the injunction was based on *counts* of Plaintiffs' complaints that became moot after the rollout of the Dominion system was complete, which made any further use of DREs entirely unnecessary. [Doc. 1705 at 109]. Coalition Plaintiffs cannot avoid the application of *Stinnie* by pointing to areas where the Court went beyond the legislature in crafting temporary relief on claims that later became moot. There is no other relief this Court can order regarding DREs, especially because the Court later authorized the State to completely dispose of all DREs. [Doc. 1830].

Second, Coalition Plaintiffs misquote Justice Scalia in an attempt to claim that a "capitulat[ion] before final judgment" can be enduring judicial relief. [Doc. 1862 at 4]. But the quoted portion of the concurrence was Justice Scalia discussing the *dissent's* position and explaining that the majority's decision was "[t]o the contrary" and is not applicable here. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 616 (2001) (Scalia, J., concurring).

Third, Coalition Plaintiffs artfully attempt to avoid the reality of Article III by labeling the dismissal for mootness a "non-final dismissal." [Doc. 1705

at 4]. They then propose that this Court take claims it is barred from considering by Article III as moot, [Doc. 1705 at 108], designate them as essentially "un-mooted," and enter final judgment. [Doc. 1862 at 4–5]. This type of action is beyond the power of a federal court, which must dismiss a case when it can no longer order further relief—as is true of the old DRE claims at this point, because this Court cannot order the State to do or not do anything with a system it has stopped using and to which it cannot return. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001).

Fourth, Coalition Plaintiffs claim this Court can somehow enter final judgment on the DRE claims despite dismissing them more than a year ago and well before the trial of the BMD claims. [Doc. 1862 at 5]. This also makes little sense. This Court already entered judgment on the DRE claims when it dismissed them from the case at summary judgment. [Doc. 1705 at 109]. It cannot enter further relief at this point without acting beyond its constitutional powers. *Al Najjar*, 273 F.3d at 1335–36.

### V.  Other plaintiffs have recognized the application of S*tinnie* and dismissed their fee motion.

One last point to illustrate how clear *Stinnie* is in its application to Plaintiffs' motions for fees: they are not the only plaintiffs facing a successful preliminary injunction without corresponding "enduring judicial relief." *Stinnie,* 2025 WL 594737 at *6. In *Ga. Coalition for the People's Agenda v.*

*Raffensperger*, Case No. 1:18-cv-04727-ELR (N.D. Ga.), plaintiffs successfully obtained a preliminary injunction in 2018 that the General Assembly later mooted through legislation. *See Ga. Coal.* Doc. 268 at 1–2. After failing to prevail at trial on their remaining claims, plaintiffs moved for attorney's fees on the preliminary-injunction order. While those motions were being briefed, the U.S. Supreme Court decided *Stinnie*. In response, the plaintiffs in *Ga. Coalition* voluntarily dismissed their attorney-fee motion, recognizing that it was foreclosed by *Stinnie*. *Ga. Coal*. Docs. 302, 303.

## CONCLUSION

Plaintiffs have not achieved prevailing-party status in this case. The Court entered a preliminary injunction based on a *likelihood* of success—not a *guarantee* of success. When the State introduced a new voting system, they chose to amend their complaints rather than file a new case. But in the meantime, Plaintiffs' DRE claims became moot and were dismissed. *Stinnie* controls and this Court must deny Plaintiffs' motions for attorney's fees.

Respectfully submitted this 17th day of March, 2025.

                Vincent R. Russo
                Georgia Bar No. 242628
                vrusso@robbinsfirm.com
                Josh Belinfante
                Georgia Bar No. 047399
                jbelinfante@robbinsfirm.com

Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
Clark Hill PLC
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30326
678.370.4377 (phone)

*Counsel for Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Supplemental Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Bryan P. Tyson*
Bryan P. Tyson