IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br><br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

COALITION PLAINTIFFS' SUPPLEMENTAL BRIEF ON
THE IMPACT OF *LACKEY v. STINNIE* OPINION

In compliance with this Court's March 4, 2025 Order (Doc. 1864), Coalition Plaintiffs file this Supplemental Brief on the impact of the Supreme Court's decision in *Lackey v. Stinnie,* 604 U.S. \_\_\_\_ (2025) (Slip. Op.).

The *Lackey* decision supports this Court granting Plaintiffs an award of attorney's fees for the DRE portion of the case under Section 1988. Plaintiffs obtained exactly the kind of "conclusive, enduring judicial relief" *Lackey* held to be necessary for "prevailing party" status when this Court enjoined Defendants from using DREs after 2019 and granted additional relief that the Coalition Plaintiffs had sought.

*Lackey* addressed a narrow issue that had been left undecided in prior Supreme Court Section 1988 cases. In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 603 (2001), the Court held that, to prevail under Section 1988, a plaintiff had to obtain a ***judicially sanctioned*** change in the legal relationship of the parties. In *Sole v. Wyner,* 551 U.S. 74 (2007), protestors won a preliminary injunction against a state regulation but then lost on the merits. The Court held that the plaintiffs were not entitled to fees because they "gained no ***enduring*** change in the legal relationship." 551 U.S. at 86 (emphasis added). These two holdings left open the issue of whether the enduring nature of the change in the legal relationship between the parties must itself be judicially sanctioned—meaning whether events external to the case that

1

made a plaintiff's temporary success permanent, through no action of the court, sufficed to give the plaintiff "prevailing party" status. All of the courts of appeal had ruled "yes." In *Lackey,* the Court disagreed, holding:

> A plaintiff who wins a transient victory on a preliminary injunction does not become a 'prevailing party' simply because external events convert the transient victory into a lasting one. Rather, a plaintiff 'prevails' under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties.

*Lackey,* Slip Op. at 9.

Plaintiffs' pending fee claims never depended on the pre-*Lackey* state of the law. Indeed, the arguments from **both** sides have assumed all along what *Lackey* has now affirmed—that, for Plaintiffs to be entitled to fees, the enduring character of the DRE relief must have been resulted from the Court's 2019 Order, and not from any "external event," such as the passage of HB 316. *Lackey* does not affect any of the arguments that were already before the Court in the briefings of the DRE fee motions.

Defendants argue that the success Plaintiffs obtained in 2019 is only "enduring" because action by the Legislature led Defendants to comply with, rather than appeal, the Order. Plaintiffs rebutted this argument five years ago in their January 21, 2020 Reply Brief in Support of the Motion for Fees, saying:

2

> The passage of HB 316 does not affect Plaintiffs' prevailing party status. Most importantly, HB 316 did not direct the State Defendants to stop using DREs. Instead, HB 316 authorized the purchase of a new system and left it to the Defendant to determine when the new system might be deemed "safe and practicable for use." O.C.G.A. § 21-2-300(a)(2).

(Doc. 706 at 4-5).[1] But for the Court's August 15, 2019 Order, the State Defendants remained free (even after HB 316's enactment) to use DREs in all upcoming elections in 2020, including the presidential primary and general presidential election. Only the Court's Order constrained Defendants from doing so, stating: "[M]ost specifically, the Court's ruling prohibits any continued use of the GEMS/DRE system past the completion of the 2019 election cycle." Doc. 579 at 142; *see also id.* at 148 (requiring Defendants "(1) To refrain from the use of the GEMS/DRE system in conducting elections after 2019.").

This Order unequivocally changed the legal relationship between the parties. Without it, Defendants still could have used the DREs for elections in 2020 and beyond. The Order was not merely "a temporary order designed to preserve the status of the parties," *Lackey*, Slip. Op. at 7, but instead granted relief that **changed** the status of the parties—relief that endures under the terms of the Order itself. The Order's flat prohibition on Defendants ever using DREs in elections

---

[1] Citations are to PACER-stamped pagination.

3

after 2019 is a quintessential grant of judicially sanctioned, enduring relief. This granted relief did not start out temporary and then become permanent only because of external events. It was born permanent. What made the Order's adjudication of the parties' rights ***conclusive*** was when it became indefeasible upon Defendants' acquiescence to it by complying and refraining from pursuing an appeal, not any "external events" outside this case.

Importantly, the Court also granted ***other*** enduring relief in the same Order, as Plaintiffs explained in their 2020 Reply Brief:

> Further, the lengthy injunction entered by this Court goes far beyond anything HB 316 required by requiring a back-up plan using hand marked paper ballots and addressing a pilot program, electronic pollbooks, provisional ballots, audit procedures, and errors in the voter registration database. *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1410–11 (N.D. Ga. 2019).

(Doc. 705 at 5). All this additional relief was "judicially sanctioned," and none of it was even arguably the result of a mandate in HB 316. Like their acceptance of the Order's prohibition on using DREs after 2019, Defendants also acquiesced to this other relief and complied with the related requirements without appealing—making the relief indefeasible. No ***external*** event caused this, only Defendants' acceptance that they had lost.

HB 316's passage is irrelevant for another reason. *Lackey* only addressed the narrow situation in which "external events convert the

4

transient victory into a lasting one" *after* preliminary injunctive relief is granted. *Lackey*, Slip. Op. at 9. Here, HB 316—the "external event" Defendants rely upon—was already enacted *before* this Court's Order. The Court not only was fully aware of HB 316's provisions but even addressed them while granting relief. (Doc. 579 at 139, 146.) The Order itself thus establishes that HB 316 cannot be regarded as an "external event" that "converted" supposedly temporary relief into enduring relief after the fact.

On the contrary, to repeat, no "external events" were ever required to make Plaintiff's 2019 victory a lasting one. Plaintiffs obtained "enduring judicial relief on the merits that materially alter[ed] the legal relationship between the parties" as to the conduct challenged by the DRE claims. *Lackey,* Slip Op. at 9.

Nor does the lack of a formal final judgment change this result. The *Lackey* Court explicitly acknowledged the propriety of awarding fees without entry of a final judgment: "[w]e have recognized that 'Congress contemplated the award of fees pendente lite in some cases.'" Slip Op. at 12 (quoting *Hanrahan v. Hampton,* 446 U.S. 754, 757 (1980), and citing *Buckhannon,* 532 U.S. at 607; *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 723 (1974); H.R. Rep. No. 94-1558, p. 7 (1976)). Rather than conditioning a plaintiff's entitlement to fees upon the formal disposition of the claim or case, Chief Justice Roberts

5

acknowledged that fees were available pendete lite and reiterated the essential test: "Our decisions simply indicate that attorney's fees may be awarded when conclusive, enduring judicial relief is meted out on an incremental basis." Slip Op. at 12. To be sure, a final judgment will often be the mechanism by which conclusive, enduring judicial relief is conferred, but *Lackey* demonstrates that such relief (and prevailing-party status) can be obtained without the formality of a final judgment.

Though citing legislative history is superfluous since *Lackey* supports Plaintiffs' DRE fee claims, it is worth noting that Section 1988's legislative history supports the award of fees before judgment. As Chief Justice Rehnquist observed in *Buckhannon,* the "House Report to § 1988 states that 'the phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits,' H. R. Rep. No. 94-1558, p. 7 (1976), while the Senate Report explains that 'parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief,' S. Rep. No. 94-1011, p. 5 (1976)." 532 U.S. at 607-608.

The Supreme Court's decision in *Bradley v. School Bd. of Richmond*, 416 U. S. 696, 723 (1974), cited with approval in *Lackey,* provides further authority for granting fee awards prior to final judgment in long-running cases like this one. In *Bradley,* the Court stated:

6

> Since most school cases can be expected to involve relief of an injunctive nature that must prove its efficacy only over a period of time and often with frequent modifications, many final orders may issue in the course of the litigation. To delay a fee award until the entire litigation is concluded would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional intent to the contrary evidenced by the passage of § 718. A district court must have discretion to award fees and costs incident to the final disposition of interim matters.

415 U.S. at 722-23. Just as interim fees are warranted in lengthy school cases under *Bradley*, so too are they appropriate in multi-cycle-spanning election cases like this one, for all of the same reasons.

Still another line of cases explicitly recognizes the propriety of granting fees when a defendant loses on an issue and accepts defeat. This fact pattern is addressed by Justice Scalia in his concurring opinion in *Buckhannon*. In *Buckhannon,* the Court rejected the "catalyst" theory, under which a plaintiff could prevail if the defendant voluntarily changed its conduct in response to litigation, but before plaintiffs obtained a court order. The Court instead required that a plaintiff must obtain a ***judicially sanctioned*** change in the legal relationship between the parties. In his concurring opinion, Justice Scalia refuted the dissent's argument that rejecting the catalyst theory would prevent parties in Plaintiffs' situation from recovering fees, writing:

> As the dissent would have it, by giving the term [prevailing party] its normal meaning the Court today approves the practice of denying attorney's fees to a plaintiff with a proven claim of discrimination, simply because the very *merit* of his claim led the

7

defendant to capitulate before judgment. That is not the case. To the contrary, the Court *approves* the result in *Parham* v. *Southwestern Bell Tel. Co.*, 433 F.2d 421 (CA8 1970), where attorney's fees were awarded "after [a] finding that the defendant had acted unlawfully," *ante*, at 9, and n. 9.

532 U.S. at 616-17 (Scalia, J., concurring) (emphasis in original).

In this case, the Court, based on its findings, unequivocally ordered Defendants to change their conduct, which Defendants then did without further objection and without appealing. In other words, Defendants capitulated. Their capitulation made further litigation unnecessary and uneconomical for both sides and left Plaintiffs with conclusive, judicially sanctioned, enduring relief. Whether the Court's Order is to be **blamed** for[2] **or credited** with[3] the Defendants' capitulation is immaterial to the fees question. What matters is Defendants capitulated **after** this Court ordered a change of conduct.

Requiring the parties to engage in litigation theater to produce a final judgment as a formality under such circumstances would have violated Fed. R. Civ. P. 1's directive to construe and administer the rules "to secure the ***just, speedy, and inexpensive*** determination of every action and proceeding." (emphasis added). *Lackey* held that a formal final judgment is

---

[2] Defendant Raffensperger stated that the reason the BMD system was deployed "was really because an activist judge that said you can't use the old DRE machines."  Doc. 1182-1 at 8 n. 2.

[3] Defendant Raffensperger, after the Presidential election, stated that replacing the DRE system, which had no paper trail at all, was a "tremendous godsend."  *Id.*

8

not required, only a judicial order that, like a consent decree, "conclusively resolves the claim, bears a judicial imprimatur, and may grant enduring relief that materially alters the legal relationship between the parties." *Lackey*, Slip. Op. at 13. That exists here. Other federal courts considering identical arguments from defendants who lost a preliminary injunction, complied, and then opposed a fee award for lack of a final judgment, rightly noted—even before *Lackey*—that, "as a practical matter, waiting for a final judgment would elevate form over substance" where it is already "clear from the parties' papers that they both consider this case to effectively be over." *See, e.g.*, *Where Do We Go Berkeley v. Cal. DOT (Caltrans)*, No. 21-cv-04435-EMC, 2023 U.S. Dist. LEXIS 108941, at *10 (N.D. Cal. June 23, 2023).

In any event, even if a final judgment for Plaintiffs on the DRE claims ***were*** required to permit the DRE fee award, the Court may now simply enter that final judgment, notwithstanding the previous summary dismissal of the DRE claims as no longer disputed. Under Rule 54(b),

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Court thus has authority right now to reconsider and vacate its summary dismissal. Having done so, the Court has at least three ways to deal with the revived DRE claims: <u>*First*</u>, grant summary judgment for Plaintiffs on the

9

existing record, *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999) (sua sponte summary judgment "entirely appropriate"); <u>Second</u>, sever the revived claims and resolve them as Plaintiffs requested in October 2021, (Doc. 1182); or <u>Third</u>, since the rest of the case has by now been tried, enter final judgment on all claims in the case, including the revived DRE claims.

Each of these solutions provides a final judgment and negates *Lackey*'s relevance for the DRE fee claims, since *Lackey* has no application to fees awarded after a final judgment. Due to the significant passage of time since Plaintiffs moved four and a half years ago for an interim award of their DRE fees, strong considerations of fairness and due process now likely favor entering a final judgment on all claims in the case, instead of artificially designating the DRE fee award as an "interim" award so near the termination of proceedings.

Respectfully submitted this 24th day of March, 2025.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 386-6856 | (253) 267-8530 |
| | |
| *Counsel for Coalition for Good Governance,* | *Counsel for Coalition for Good Governance* |
| *William Digges III, Laura Digges, and Megan Missett* | |

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,
Ricardo Davis & Megan Missett*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, ET AL.,
Plaintiffs,

v.

BRAD RAFFENSPERGER, ET AL.,
Defendants.

Civil Action No. 1:17-CV-2989-AT

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that (a) pursuant to LR 7.1(D), the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Century Schoolbook and a point size of 13 and (b) a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

This 24th day of March, 2025.

*/s/ Bruce P. Brown*
Bruce P. Brown

12