IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.*,<br><br>　　*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>　　*Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:17-cv-2989-AT |

**DEFENDANTS' RESPONSE TO CERTAIN PLAINTIFFS' OBJECTIONS TO DEFENDANTS' BILL OF COSTS AND MOTION TO DEFER RULING PENDING APPEAL**

**INTRODUCTION**

Following the entry of judgment, Defendants filed their bill of costs on April 29, 2025. [Doc. 1889]. Fourteen days later, the Curling and Coalition Plaintiffs (but not Plaintiff Davis) filed a document that (1) moved to defer the taxation of costs until after the appeals are complete and (2) provided notice about future objections but did not seek to quash the bill of costs. As discussed below, Defendants do not oppose deferring taxation of costs until after the conclusion of appeals in this case. And Plaintiffs' other arguments regarding the proposed costs are not yet ripe for consideration under the rules and controlling precedent. This Court should either grant the motion to defer taxation of costs or deny the motion and instruct Plaintiffs to file a proper motion for the Court to review after costs have been taxed by the clerk.

## ARGUMENT AND CITATION OF AUTHORITY

Because Defendants are the prevailing party as to all of Plaintiffs' claims, the taxpayers of Georgia are entitled to recover some costs of this litigation.[1] Fed R. Civ. P. 54(d)(1). Rule 54 and the Local Rules set out the process, which begins with Defendants filing a bill of costs within 30 days. L.R. 54.1. Not every cost is recoverable, because 28 U.S.C. § 1920 defines the types of costs that are recoverable. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42, (1987). The clerk may then tax the costs on 14 days' notice. Fed. R. Civ. P. 54(d)(1). Following the taxation of costs, a party may file a motion allowing for the Court to review the clerk's taxation. *Id.*

Plaintiffs filed one document that included a motion to defer a ruling on costs and provided general notice of their (partial and apparently incomplete) objections once the clerk taxes costs. [Doc. 1894]. Plaintiffs did not move to quash the bill of costs or otherwise take action that would place the issue of taxation of costs before the Court prior to taxation by the clerk. *See, e.g., Nelson v. Darragh Co.*, 120 F.R.D. 517, 518 (W.D. Ark. 1988) (motion to quash). Thus,

---

[1] The taxpayers cannot recover all of their costs of defending against this case, which ran to more than $5.7 million of tax dollars from the taxes paid by Georgia voters. *See* https://www.ajc.com/politics/georgia-election-security-lawsuit-dismissed-by-judge-after-7-year-case/FGE6VJ5XQVFCBPBC7IHNYYLASE/ (April 1, 2025).

the only *motion* before the Court is the motion to defer ruling on costs and the remaining issues must be addressed at a later time.

## I. Response to Plaintiffs' motion to defer ruling on costs.

A notice of appeal does not divest the Court of jurisdiction to consider a request for fees or costs. *Teagan v. City of McDonough, Georgia*, No. 1:15-CV-00607-ELR, 2018 WL 10455935, at *1 (N.D. Ga. May 9, 2018). Plaintiffs correctly note that this Court often defers claims about costs until after an appeal is complete. [Doc. 1894 at 8].

Defendants do not oppose this Court deferring a ruling on costs and addressing any costs after appeals in this case are complete.

## II. Plaintiffs incorrectly object to costs prior to taxation.

Under the Federal Rules, objections to costs come after taxation through a motion from the party being taxed for the Court to consider—because "an objection to the award may be made only 'on motion served within 5 days thereafter.'" *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007) (quoting Fed. R. Civ. P. 54(d)(1)); *see also Morisseau v. DLA Piper*, 255 F.R.D. 127, 128 (S.D.N.Y. 2008) (review through motion). This is because "nothing normally can come before the court until the clerk has acted and an objection has been made." § 2679 *Procedure for the Taxation of Costs by the Clerk and Judicial Review Thereof*, 10 Fed. Prac. & Proc. Civ. § 2679 (4th ed.); *see also* §

51:110. *Taxation of costs by clerk*, 21A Fed. Proc., L. Ed. § 51:110 (noting taxation by clerk prior to review by district court).

Instead of following this procedure, Plaintiffs argue (without filing a motion) that this Court should impose no costs, [Doc. 1894 at 3–7], and then object to specific costs, while acknowledging that they do not have full information about many of their objections, *id.* at 8–14. All of this should be addressed in a motion to the Court following the Clerk's taxation, not prior to it. While Defendants respond to those arguments here, they also reserve the right to further respond and make additional objections once the Clerk taxes costs and Plaintiffs make a proper motion for review.

### III. Plaintiffs should be required to pay costs.

Plaintiffs acknowledge that they carry the burden of demonstrating that costs should not be imposed, because the presumption is that Defendants, as prevailing parties, are entitled to recoverable costs. [Doc. 1894 at 3]. While Plaintiffs are correct that the Court has some discretion in awarding costs, the "discretion not to award the full amount of costs incurred by the prevailing party is not unfettered," because denying costs is "in the nature of a penalty," *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) (quoting *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir.1977)). To deny full costs, as Plaintiffs seek here, "a district court must have and state a sound basis for doing so." *Id.*

While Plaintiffs list a variety of factors a court can consider in denying or reducing costs, they rely primarily on the supposed chilling effect on future plaintiffs bringing claims.[2] [Doc. 1894 at 4–7]. This factor does not weigh in favor of denying or reducing fees here for several reasons.

First, over the last six years, Coalition Plaintiffs in particular have never hesitated to file lawsuits regarding elections. *See, e.g., Coal. for Good Governance v. Kemp*, No. 1:21-CV-2070-JPB, 2025 WL 848462, at *10 (N.D. Ga. Mar. 18, 2025); *Coal. for Good Governance v. Raffensperger*, 706 F. Supp. 3d 1374, 1380 (N.D. Ga. 2020); *Martin v. Fulton Cnty. Bd. of Registration & Elections*, 307 Ga. 193, 195 (2019); *Coal. for Good Governance v. Coffee Cnty. Bd. of Elections & Registration*, No. 5:23-MC-1 (S.D. Ga.); *Coal. for Good Governance v. Gaston*, Case No. 20CV00077(S) (Southwest Ga. Superior Ct.). Even if theoretically some future plaintiff might hesitate, the parties here have not.

Second, costs are regularly imposed on unsuccessful plaintiffs in civil rights and voting-related cases in this district—and Defendants are still

---

[2] Indeed, many of the other bases do not apply. The case was not close: this Court decided the case *after trial* on jurisdiction only without reaching the merits. Plaintiffs do not allege any misconduct by Defendants in their notice. And a court cannot consider a losing party's financial resources without "substantial documentation of a true inability to pay." *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 291 F. Supp. 3d 1345, 1349 (N.D. Ga. 2017) (quoting *Chapman*, 229 F.3d at 1039).

regularly sued regarding the administration of elections. *See, e.g.*, *Coal. for Good Governance v. Kemp*, No. 1:21-CV-2070-JPB (N.D. Ga. Doc. 168) (taxing entirety of sought costs of $29,172.95)[3]; *Ga. Coalition for the People's Agenda v. Raffensperger*, No. 1:18-cv-04727-ELR (N.D. Ga. Doc. 269) (taxing entirety of sought costs of $33,629.62); *Fair Fight Action v. Raffensperger*, No. 1:18-CV-05391-SCJ (N.D. Ga. Doc. 919) (taxing entirety of sought costs of $231,303.71). Like the speculative nature of their injuries in this case, Plaintiffs cannot cite to any actual discouragement of civil rights claims brought against the State. Instead, they just cite their fears about potential discouragement, while ignoring the reality that Georgia is regularly defending any number of suits brought by a variety of nonprofit organizations regarding state policy.

Third, this case was decided on grounds raised at every stage by Defendants, not some unexpected or novel argument. From the very first motion, Defendants have explained that Plaintiffs did not have standing to bring this case. *See* [Doc. 8-1 at 3–6]; [Doc. 1868 at 2] (noting Defendants "long-running argument that the Court lacks jurisdiction over Plaintiffs' claims"). Plaintiffs were on notice that, at trial—the first time in this case where the Court could weigh evidence of their standing on the merits—they bore the

---

[3] In this case, the Coalition for Good Governance did not object to the costs taxed nor did it file a motion seeking review of the taxation of those costs.

burden of showing they had standing. *See* [Doc. 1705 at 71–108]; [Doc. 1868 at 3] (noting higher standard at trial). This Court determined that "Plaintiffs failed to establish at trial that Georgia's continued use of the BMD system will likely cause them to suffer a legally cognizable injury." [Doc. 1868 at 32]. While Plaintiffs say their claims were "strong and viable," [Doc. 1894 at 6], they did not bring forward evidence that properly invoked this Court's jurisdiction, meaning they failed at the very outset. The fact that they "met standing requirements . . . at every prior stage of litigation," *id.*, is also not relevant because Plaintiffs had the benefit of a far-more-favorable standard at those stages. [Doc. 1868 at 3].

Finally, Plaintiffs gloss over the reality that the hardworking taxpayers of the State of Georgia paid for defending against their claims in this case. The repayment of costs goes back to the State treasury, where Georgians' tax dollars are kept. As this Court is aware, Coalition Plaintiffs have successfully engaged in fundraising over the years, relying on this case to do so. Requiring Plaintiffs to make some reimbursement to the taxpayers is reasonable—especially when there is no shortage of civil rights groups ready to sue the State of Georgia at any given point in time.

### IV.  Plaintiffs' objections are invalid.

Moving to the specific objections, Plaintiffs do not contest $ 73,374.29 of the costs sought by Defendants. [Doc. 1894 at 8]. While they admit that their

objections are not complete (*see, e.g., id.* at 10–12), they make several objections that do not consider the full context of this case. Further, Plaintiffs do not itemize their specific objections, but make objections by category, which makes it difficult to respond—and further emphasizes why Plaintiffs' objections should be considered by motion after taxation of costs by the clerk and not at this stage.

### A.   *Deposition transcript costs.*

Plaintiffs object to several categories of transcripts, none of which are valid. First, on rough drafts. While Plaintiffs do not identify the rough drafts they challenge, they miss the point that rough drafts can be "necessarily obtained for use in the case," 28 U.S.C. § 1920(2), depending on the context. *See Andrews v. Autoliv Japan, Ltd.*, No. 1:14-CV-3432-WSD, 2017 WL 2805868, at \*2 (N.D. Ga. June 29, 2017). This Court is aware that, given the expeditious nature of the consideration of much of this case, rough drafts were necessary to prepare briefs and argument. *See, e.g.*, [Doc. 1194 at 9–11] (both sides utilizing rough transcript in hearing); [Doc. 1342 at 19–20] (noting need to utilize rough draft to prepare brief). Plaintiffs have not identified the specific rough drafts to which they object and rough drafts were consistently utilized in the expedited nature of this case, especially during the preliminary injunction phase.

Second, the other fees related to the transcript, such as appearance fees, are "directly related to preparing the transcript" and thus taxable. *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 950 F. Supp. 2d 1254, 1259 (S.D. Fla. 2013) (collecting cases). Plaintiffs' sole citation does not match the decisions of other courts on appearance fees.

Third, the costs of video for a deposition that is noticed as a video deposition are taxable. *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996). This is because, in the Eleventh Circuit, "[w]here a party notices a deposition to be recorded by both stenographic and non-stenographic means, and no objection is raised at that time as to the method of recordation, pursuant to Fed.R.Civ.P. 26(c), a court can award the cost of conducting the deposition in the manner noticed." *Watson v. Lake Cnty.*, 492 F. App'x 991, 997 (11th Cir. 2012). Plaintiffs cite no authority to the contrary, depositions were noticed as video depositions, and these costs should be taxed.

Fourth, while Plaintiffs are correct about shipping and handling costs, *Joseph*, 950 F. Supp. 2d at 1259, they do not specify which shipping and handling costs they are objecting to and do not explain why ancillary technical services were not "obtained for use in the case," especially when Zoom depositions in the age of COVID required many additional technical components (that court reporting agencies often charged for) to be successful. The full costs of depositions should be taxed.

Finally, Plaintiffs claim that, despite their extensive efforts to depose individuals in this case, that any number of deposition costs were for the convenience of counsel only. Defendants submitted all the documentation in their possession and a detailed index. Plaintiffs apparently have run some kind of calculation that they do not share. Without more specific objections, there is no basis to deny any of the costs sought related to depositions.

    B.    *RealTime at trial.*

Unlike the deposition costs objection, Plaintiffs do specify the exact amount and line item to which they object regarding the use of RealTime transcription costs at trial. [Doc. 1894 at 10]. They do not cite any authority for not taxing the costs of RealTime, beyond just claiming it is not a transcript. But this ignores the reality that the definition of transcripts for purposes of depositions includes video. See *Morrison,* 97 F.3d at 465. Further, this was an extremely complex and lengthy trial, requiring daily transcripts to prepare witnesses, references to the RealTime during the trial to resolve disputes, and motions during the course of the trial. In this district, to "determine whether daily transcripts are indispensable, the court considers three factors: (1) the complexity of the issues tried; (2) the length of trial; and (3) whether the parties were required to submit briefs or proposed findings to the court during trial." *Currie v. Chevron U.S.A. Inc.*, No. 1:05-CV-1610-BBM, 2007 WL 9747456, at *4 (N.D. Ga. Jan. 30, 2007). All three are met here. The Court itself has

acknowledged the complexity of the issues, the trial lasted five weeks, and the parties regularly were required to submit briefs and other information to the Court during the trial, including using the RealTime to resolve issues during witness examination. As a result, all real-time and daily transcript expenses were necessary for the case.

### C. Printing costs.

Plaintiffs admit that the printing costs sought were for the trial itself. [Doc. 1894 at 12]. They just question why a vendor was required. During the trial, both firms representing the state did not have the resources of larger law firms with internal printing operations. Further, the course of the trial required preparation of unanticipated documents and exhibits, as the Court is aware. Often the necessity of certain printed documents would only become clear during the course of direct examination in the Plaintiffs' case. Counsel for Defendants would then have to quickly obtain copies in time to begin cross-examination, including delivery to the Court, which led to higher-than-usual costs. Plaintiffs do not dispute that Defendants actually paid these rates nor do they propose what rate might be appropriate. Further, the invoices demonstrate that the documents were not demonstratives, models, or charts—they were primarily 8.5x11 documents needed for cross-examination of witnesses. If more documentation is required at the time Plaintiffs present

their motion following taxation of costs, Defendants will provide that information.

D. *Other costs.*

Plaintiffs object to $595 of a $600 filing fee at the Eleventh Circuit and correctly note that this is not a recoverable expense. Defendants withdraw $595 of the $600 fee sought for filing the writ of mandamus in the Eleventh Circuit.

Finally, Plaintiffs seek to eliminate the costs of transcripts associated with DRE claims. Plaintiffs ignore the fact that Defendants fully prevailed on the DRE claims in this case on summary judgment when they were dismissed and are entitled to recover costs as a result. *See* [Doc. 1705 at 110]. The "adverse order" they reference was an interim order pending the final resolution of this case because it was not a permanent injunction. [Doc. 579 at 152]. There is no basis to disallow claims for the DRE portion of the case.

E. *Lack of specificity in objections*

Defendants provided both a detailed summary of the costs they seek along with all documentation in their possession. Plaintiffs did not specifically object to individual line items or invoices, beyond Dr. Shamos, so Defendants are unable to fully respond. When this Court considers Plaintiffs' objections, it should require a detailed specification of the items to which Plaintiff is objecting to allow Defendants to make a full response.

## CONCLUSION

The taxpayers of Georgia incurred significant expenses defending against claims in a case where this Court lacked jurisdiction. While the taxpayers cannot recover all of those expenses, including attorney fees and significant e-discovery expenses, the U.S. Code authorizes recovery of specific items. Defendants have shown that each item is recoverable, with the exception of $ 595 in filing fees at the Eleventh Circuit. If this Court considers the bill of costs prior to the appeal, it should award the full amount and require Plaintiffs to file their motion after taxation of costs detailing the basis for their objections to particular costs with specific enough information to allow a response rather than the current non-motion objection process they seek to utilize.

Respectfully submitted this 27th day of May, 2025.

>Vincent R. Russo
>Georgia Bar No. 242628
>vrusso@robbinsfirm.com
>Josh Belinfante
>Georgia Bar No. 047399
>jbelinfante@robbinsfirm.com
>Carey A. Miller
>Georgia Bar No. 976240
>cmiller@robbinsfirm.com
>Alexander Denton
>Georgia Bar No. 660632
>adenton@robbinsfirm.com
>Robbins Ross Alloy Belinfante Littlefield LLC
>500 14th Street, N.W.

Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
Clark Hill PLC
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30326
678.370.4377 (phone)

*Counsel for Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Bryan P. Tyson*
Bryan P. Tyson